| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,079 |
| 15299 | Hodge v. Serv. Mach. Co., 438 F.2d 867 | 13+61 | A cause of action accrues when a suit may be maintained upon it. Black's Law Dictionary 37 (4th ed. 1951). A suit may not be brought upon a cause of action until it exists. A cause of action does not exist until all its elements coalesce in one of these instances, a cause of action (1) which cause before a cause of action can exist: (a) a breach of some legally recognized duty owed by the defendant to the plaintiff; (b) which causes the plaintiff some legally cognizable damage. | Can a suit be brought upon a cause of action before it exists? | Action - Memo #175 - C-CS.docx | ROSS00311272-ROSS-00311274 | Condensed, SA | 0.72 | | | | 1 | 9,079 |
| 15300 | Claworth v. Pfizer, 49 Cal. 4th 758 | 2971-290 | That a party may ultimately be unable to prove a right to damages or restitution does not demonstrate that the party lacks standing to argue for his entitlement to them, under Unfair Competition Law (UCL) standing provision. West's Ann.Cal.Bus. & Prof.Code S 17204. | Does claim for damages for overcharge by carriers arise at time extra charge was paid? | Alternative Dispute Resolution - Memo #78 - C-LK.docx | LEGALEASE-00124084-LEGALEASE-00124085 | Condensed, SA, Sub 0.82 | | | | 1 | 1 | |
| 15300 | In re Marriage of Riag, 150 Cal. App. 4th 1389 | 13+61 | A cause of action is a legal obligation for the plaintiff seeks to enforce against the defendant, and does not come into existence or arise until all the elements have been established. | Is a cause of action an obligation the plaintiff seeks to enforce against the defendant? | Action - Memo #78 - C-LK.docx | ROSS00302247-ROSS-00302248 | Condensed, SA, Sub 0.75 | | | | 1 | | 1 |
| 15300 | El Hoss Eng & Transp. Co. v. Am. Indep. Oil Co., 183 F. Supp. 394 | 25T+140 | The arbitration clause here, as in Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, was a separable part of the contract. Neither an allegation of fraud in the inducement of the entire contract nor an arbitration clause. Robert Lawrence Co. v. Devonshire Fabrics, Inc. | Neither an alleged breach nor a repudiation of a contract precludes arbitration under an arbitration clause, and illegality of contract in whole or in part does not operate to nullify an agreement to arbitrate. 9 U.S.C.A. SS 1, 2, 4. | Does an illegal clause in a contract preclude arbitration? | Alternative Dispute Resolution - Memo 405 - RK.docx | ROSS-00328999-ROSS-00328000 | Condensed, SA, Sub 0.77 | | | | 1 | | 1 |
| 15300 | Koreleske v. SBC Capital Markets, 167 F.3d 361 | 25T+420 | Finally, Koreleske's Equal Pay Act and New York Human Rights Law claims are arbitrable. Koreleske does not argue that the FAA precludes arbitration of these claims, nor does she argue that the New York Human Rights Law are exempted from the FAA. Therefore, these claims must be arbitrated. See Koreleske v. SBC, as amended, 29 U.S.C.A. S 206; N.Y.McKinney's Executive Law S 296. | Securities industry employee's Equal Pay Act and New York Human Rights Law claims were arbitrable pursuant to arbitration agreement in securities registration application. Fair Labor Standards Act of 1938, S 6, as amended, 29 U.S.C.A. S 206; N.Y.McKinney's Executive Law S 296. | Are claims regarding violations of the Equal Pay Act (EPA) subject to arbitration? | 007140.docx | LEGALEASE-00123932-LEGALEASE-00123933 | Condensed, SA, Sub 0.58 | | | | 1 | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13504 | Tehan v. Disend, 140 A.D.3d 1731 | 129×107 | We reject respondent's contention that the evidence did not support the finding that he committed the family offense of disorderly conduct because he did not intend to create a public disturbance. A person is guilty of disorderly conduct "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [h]e engages in fighting or in violent, tumultuous or threatening behavior" (Penal Law § 240.20(1)). The conduct does not have to take place in public, as long as the person recklessly creates a risk of a public disturbance (see Matter of McLaughlin v. McLaughlin, 104 A.D.3d 1315, 1315*1316; 961 N.Y.S.2d 838). Here, the testimony presented at the fact-finding hearing established that respondent, in the parties' home, threw petitioner against a wall, forced his fingers in her mouth and caused bleeding, dragged her face, punched her legs, forcibly touched her vagina, and grabbed her by the hair when she tried to get away, all within sight of the parties' three children, thereby sufficiently establishing a risk of public disturbance (see Matter of Kaya v. Kaya, 134 A.D.3d 1036, 1037*1038; 22 N.Y.S.3d 520; Matter of Dayton v. Dayton, 117 A.D.3d 1357, 1357*1358; 979 N.Y.S.2d 156). That testimony also supports, by a preponderance of the evidence, the court's conclusion that respondent committed the family offenses of reckless endangerment in the second degree. | Conduct does not have to take place in public in order for a person to be found guilty of disorderly conduct, as long as the person recklessly creates a risk of a public disturbance. McKinney's Penal Law § 240.20(1). | When is a person guilty of disorderly conduct? | 06364.docx | LEGALEASE 00085346-LEGALEASE 00085347 | Condensed, Order, SA, Sub | 0.86 | 1 | 1 | 1 | 1 | 1 |
| 13505 | Holy Land Found. for Relief & Dev. v. Ashcroft, 219 F. Supp. 2d 57 | 148×2 | Whilst it is very doubtful that the Court's jurisdiction, if even if it did, the takings claim would fail. The law is clear that blocking under Executive Orders are temporary deprivations that do not vest the assets in the Government. Therefore, blockings do not, as a matter of law, constitute takings within the meaning of the Fifth Amendment. Accordingly, court's have consistently rejected these claims in the IEEPA and TWEA context. See Clark v. Allen, 331 U.S. 503, 514, 67 S.Ct. 1431; 91 L.Ed. 1483 (1949) (blocking is not a taking because it is a temporary action); Tran Qui Than v. Regan, 658 F.2d 1296, 1304 (9th Cir.1981) (rejecting takings claim because blocking is temporary, not a vesting); Global Relief Foundation, Inc. v. O'Neill, 207 F.Supp.2d 779, 802*803 (N.D.Ill.2002) (finding no merit to plaintiff's contention that blocking of its assets constituted an IEEPA taking because blocking is temporary). IPT Co., Inc. v. Dep't of Treasury, 299 F.Supp.2d 110 (denying plaintiff's takings claim in IEEPA blocking because blocking is temporary deprivation). Accordingly, it is clear that, as a matter of law, the blocking order in this case is a temporary deprivation that does not constitute a constitutionally cognizable taking. | Blocking of Muslim charitable foundation's assets by Office of Foreign Asset Control (OFAC) under International Emergency Economic Powers Act (IEEPA) did not constitute taking of foundation's property without just compensation, as would violate foundation's Fifth Amendment rights, since blocking was temporary deprivation that did not vest assets in government. U.S.C.A. Const.Amend. 5; International Emergency Economic Powers Act, § 202 et seq., 50 U.S.C.A. § 1701 et seq. | Does blocking under Executive Orders constitute takings within the meaning of the Fifth Amendment? | 017471.docx | LEGALEASE 00122789-LEGALEASE 00122790 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 13506 | Glob. Relief Found. v. O'Neill, 207 F. Supp. 2d 779 | 148×2 | In addition, even if this Court had jurisdiction, Global Relief's takings claim would fail. Takings jurisprudence does not constitute a taking because it is a temporary action and not a vesting of property in the United States. See, e.g., Tran Qui Than v. Regan, 658 F.2d 1296, 1304 (9th Cir.1981); Tran Qui Than ... As the Tran Qui Than court held, "[w]e recognize that blocking involves a deprivation of the enjoyment of a property interest. That deprivation is temporary, however, and is not equivalent to vesting." Tran Qui Than ... | A temporary blocking of assets under the International Emergency Economic Powers Act (IEEPA) does not constitute a "taking" because it is a temporary action and not a vesting of property in the United States. U.S.C.A. Const.Amend. 5; Emergency Economic Powers Act, § 202 et seq., 50 U.S.C.A. § 1701 et seq. | Does a temporary blocking of assets constitute taking? | Eminent Domain - Memo 212 - GP.docx | ROSS-003294159-ROSS-003294160 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 13507 | In re Fresh & Process Potatoes Antitrust Litig., 834 F. Supp. 2d 141 | 221×142 | Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves." Credit Suisse v. U.S. Dist. Court for Cent. Dist. of Cal., 130 F.3d 1342, 1346 (9th Cir.1997) (Citing Underhill, 168 U.S. at 252, 18 S.Ct. 83). The doctrine is "meant to facilitate the foreign relations of the United States," Republic of Philippines v. Marcos, 862 F.2d 1355, 1360 (9th Cir.1988). It recognizes "the thoroughly sound principle that on occasion individual litigants may have to forgo decision on the merits of their claims because the involvement of the courts in such a decision might frustrate the conduct of United States foreign policy." Spectrum Stores Inc. v. Citgo Petroleum Co., 632 F.3d 938, 954 (5th Cir.2011) (internal quotations and citation omitted). | The act of state doctrine is meant to facilitate the foreign relations of the United States; it recognizes thoroughly sound principle that on occasion individual litigants may have to forgo decision on the merits of their claims because involvement of the courts in such a decision might frustrate the conduct of United States foreign policy. | Is the act of state doctrine meant to facilitate the foreign relations of the United States? | International Law - Memo #49 - C - LK.docx | ROSS-003283893-ROSS-003283894 | Condensed, SA, Sub | 0.6 | 1 | 1 | 1 | 1 | 1 |
| 13508 | Anderson v. Gladden, 188 F. Supp. 466 | 221×136 | Even if the Provisional government of Oregon was "de facto" only, it was constituted while Oregon was still an American territory and the government "de jure." Lehigh Valley R. Co. v. State of Russia, 2 Cir., 1927, 21 F.2d 396, certiorari denied 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432; Thorington v. Smith, 8 Wall. 1, 75 U.S. 1, 19 L.Ed. 361. The jurisdiction of a nation (Oregon) within its own territory is exclusive and absolute and is susceptible to no limitation not imposed by itself. The Schooner, 7 Cranch 116, 11 U.S. 116, 3 L.Ed. 287; Dunn v. Hubbart, 2 Cranch S8*, 6 U.S. 187, 2 L.Ed. 249. Therefore, the jurisdiction of the courts of the Provisional government of Oregon was exclusive and absolute until that time. Therefore, the jurisdiction of the courts of the Provisional government of Oregon was exclusive and absolute until that government was succeeded by the government within the Territory of Oregon and the government of the United States. | The jurisdiction of a nation within its own territory is exclusive and absolute and is susceptible to no limitation not imposed by itself. | Is the jurisdiction of a nation within its own territory exclusive and absolute? | 017962.docx | LEGALEASE 00122350-LEGALEASE 00122351 | Condensed, SA | 0.84 | | 1 | 0 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15309 | Mannington Mills, v. Congoleum Corp, 595 F.2d 1287 | 221+395 | The court [of] equity should decide to which the more traditional application of the act of state doctrine. The grist of concern is quite different from an act of expropriation by a government. See Banco Nacional de Cuba v. Sabbatino, supra; American Banana Co. v. United Fruit Co., supra; Hunt v. Mobil Oil Corp., 550 F.2d 68 (2d Cir.), Cert. denied, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). In those instances, moreover, the crucial acts occurred as a result of a considered policy determination by a government to give effect to its political and public interests matters that would have significant impact on American foreign relations. See Restatement (Second) of Foreign Relations Law, Supra s 41. Those situations may be distinguished from the facts here, in an ordinary commercial debt, Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 695-97, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) (plurality opinion for the determination of a security interest in litigation between private parties in a foreign nation's court. Timberlane Lumber Co. v. Bank of America, supra at 615-06. In each of the foregoing instances, an act of state defense was denied. A See also United States v. Imperial Chemical Industries, Ltd., 100 F.Supp. 504 (S.D.N.Y.1951) (patent rights. | In determining whether extraterritorial jurisdiction should be exercised in antitrust action between American companies, the grist of concern is quite different from an act of expropriation by a government. See Banco Nacional de Cuba v. Sabbatino, supra; American Banana Co. v. United Fruit Co., supra; Hunt v. Mobil Oil Corp., 550 F.2d 68 (2d Cir.); consider factors including, degree of conflict with foreign law or policy; nationality of parties; relative importance of alleged violation of conduct compared to that abroad; availability of remedy abroad and pendency of litigation there; existence of intent to harm or affect American commerce and its foreseeability; possible effects upon foreign relations if court exercises jurisdiction and grants relief, whether, if relief is granted, party will be placed in position of being forced to perform an act illegal in either country or be under conflicting requirements of both countries, whether court can make order that effective, whether order for relief would be acceptable in this country if made by foreign agent under similar circumstances, and whether treaty with affected nations is addressed to issue. | | 020060.docx | LEALEASE-00128119-LEALEASE-00128120 | Condensed, SA, Sub | 0.26 | 0 | | 1 | | 1 |
| 13330 | In re Philippine Nat'l Bank, 397 F.3d 768 | 221+342 | The class plaintiffs next argue that the act of state doctrine is inapplicable because the judgment of the Philippine Supreme Court did not concern matters within its own territory. Generally, the act of state doctrine applies to official acts of foreign sovereigns "performed within [their] own territory." Credit Suisse, 130 F.3d at 1346 (internal quotations omitted). The act of the Philippine Supreme Court was not wholly external, however. Its judgment, which the district court described invalid, was based on the Philippine judiciary, and much of its force upon the Philippine Bank arose from the fact that the Bank is a Philippine corporation. It is also arguable that the Bank was enforcing a judgment and within the Philippines, although they apparently were carried on the books of bank branches there. See Callejo v. Bancomer, S.A., 764 F.2d 1101, 1121-25 (5th Cir.1985) (discussing differing theories of situs of intangibles). Even if we assume for purposes of decision that the assets were located in Singapore, we do not find that this fact does not wholly deprive the Philippine judgment as an act of state in the extraordinary circumstances of this case. "[T]he [act of state] doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations." Credit Suisse, 766 F.2d 1333, 1337 (9th Cir.1985). Thus, even where an act of a foreign state affects property outside of its territory, "the considerations underlying the act of state doctrine may still be weighed in the judicial balance." Id. The act of state doctrine may not apply if the act is challenged in the present "[a]bsent some relationship at no extraterritorial as a such, the fact that the escrow funds were deposited in Singapore does not preclude the application of the act of state doctrine. The paramount governmental interest of the Republic supports treatment of the judgment as an act of state. | Act of state doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations. | Should act of state doctrine be applied pragmatically and flexibly? | International Law - Memo 315 - RK.docx | ROSS-003237056+ROSS-003237058 | Condensed, SA | 0.94 | 0 | 1 | | | |
| 13331 | Aguilar Chacala Chabad of U.S. v. Russian Fed'n, 528 F.3d 934 | 221+387 | Russia invokes the act of state doctrine, under which "the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). The doctrine rests on a view that such judgments might hinder the interrelationships by the branches of government empowered to deal with such matters. Nevgosudarstvy, Id. at 427-33, 84 S.Ct. 923; see also W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). The burden of proving an act of state falls on the party asserting the defense. See Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 691, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). | Under the act of state doctrine, the burden of proving an act of state rests on the party asserting the defense. | Does the burden of establishing that the conduct of a foreign government amounts to an Act of State rest with the party asserting the defense? | International Law - Memo 337 - RK.docx | LEALEASE-00013465-LEALEASE-00013470 | SA, Sub | 0.89 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 15312 | Daniel v. Daniel, 166 So. 581 | 302+192(2) | Appellants insist that the trial court erred in overruling their general demurrer to the bill… (long text) | Where a petition states a cause of action, a general demurrer will not lie because of indefiniteness in the statement of facts; the remedy being by motion to make the petition more specific, under Civ. Code Prac. § 134. | Will a demurrer lie when there is indefiniteness in the statement of facts? | Pleading_Memo 144 - RMN.docx | ROSS-003189342-ROSS-003189343 | Condensed, SA, Sub 0.9 | 0 | | | | |
| 15313 | Chicago Motor Bus Co. v. Chicago Stage Co., 287 Ill. 320 | 317A+194 | It appears from remarks made by one of the then commissioners… (long text) | Under Public Utilities Act, Laws 1913, p. 495, §48, it is not sufficient to justify reversal of a certificate order of Public Utilities Commission to make the state… | Is the Public Utilities Commission given arbitrary powers under the statute? | 042221.docx | LEGALEASE-00122585-LEGALEASE-00122587 | Condensed, SA | 0.89 | 0 | 0 | | | |
| 15314 | Broadnax CUD v. AT&T Corp., 184 F. Supp. 3d 592 | 317A+111 | "Tariffs are the means by which … telephone companies file their… (long text) | When a plaintiff is clear and unambiguous on its face, no construction by the court is necessary, and the parties are bound by its terms. | Are parties bound by the terms of a tariff if it is unambiguous? | Public Utilities_Memo 128 - AM.docx | ROSS-003296611-ROSS-003296612 | Condensed, SA | 0.86 | 0 | 0 | | | |
| 15315 | Maryland Cas. Co. v. NSTAR Elec. Co., 471 Mass. 416 | 317A+111 | c. Enforceability of the limitation of liability clause. In Massachusetts, a public utility's "liability for damages may be limited by properly filed and approved tariffs." Sola "N" Elec, Inc. v. AT & T Communications, 815 Mass. 886, 888, 616 N.E.2d 76 (1993)… (long text) | A public utility's liability for damages may be limited by properly filed and approved tariffs. | Can a public utility limit its liability in its tariff? | 042221.docx | LEGALEASE-00123580-LEGALEASE-00123581 | Condensed, SA | 0.8 | 1 | 1 | 1 | | |
| 15316 | Shenker v. Lockheed Sanders, 919 F. Supp. 55 | 13+61 | The trier applies to "claims, complaints or courses [sic] of action of any nature that may be asserted by one party to the date of any agreement…" Under New Hampshire law (as opposed to federal law), a cause of action "arises"… (long text) | Under New Hampshire law, a cause of action "arises" when all of the necessary elements are present. | "Does a cause of action ""arise"" when all of the necessary elements are present?" | Action - Memo # 213 - C NO.docx | ROSS-003282225-ROSS-003282226 + NO.docx | Condensed, SA | 0.84 | 1 | 0 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15317 | Daw v. Dept of Corr., 249 Mich. App. 49 | 31+41 | A cause of action becomes a vested right when it accrues and all the facts become operative and known. | In this case, plaintiff's claim is vested right in their cause of action under the PWDCRA, because all of the facts that are necessary to establish a vested right and all the facts become operative and known. Plaintiffs' cause of action accrued when all the facts became operative and known, as the effective date of 1999 PA 202. Retroactive application of the amended definition of "public service" would impair plaintiff's cause of action under the PWDCRA, because prisons would be excluded as places of public service prohibited from discriminating on the basis of disability. Accordingly, we conclude that the new statute is within the general proscription of ex post facto. | Does a cause of action become a vested right when it accrues? | Action - Memo # 226 - C - ND.docx | ROSS0031118604ROSS-003111887 | Condensed, SA | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 15318 | Green v. W.R.M. & Associates, Ltd., 1744 F. Supp. 2d 439 | 25T+125 | Discrimination claims under Title VII can be subjected to compulsory arbitration. | The Fifth Circuit has made clear that discrimination claims under Title VII can be subjected to compulsory arbitration under the Federal Arbitration Act. Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229 229 (5th Cir. 1991). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983)) (emphasis added). As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S. Ct. 1801, 1805 (5th Cir 1998). | Can Title VII claims be subject to compulsory arbitration? | Alternative Dispute Resolution - Memo 413 - RK.docx | ROSS-003285864-ROSS-003285887 | Condensed, SA, Sub | 0.79 | | 1 | 1 | 1 | 1 |
| 15319 | Genesco v. T. Kakiuchi & Co., 815 F.2d 840 | 25T+133(2) | Party may be bound by agreement to arbitrate even absent signature. | As to the assigned forms it is well established that a party may be bound by an agreement to arbitrate even absent a signature. See, e.g., McAllister Brothers, Inc. v. A & S Transportation Co., 621 F.2d 519, 524 (2d Cir.1980); further, while it is true that arbitration is a writing, it does not require that the writing be signed by the parties. See 9 U.S.C. * 3; Medical Development Corp. v. Industrial Molding Corp., 479 F.2d 345, 348 (10th Cir.1973); Fisher v. A.G. Becker Paribas, Inc., Cal. Corp. at 211. Thus, the district court did not err in finding that in this leg standing and on-going relationship Genesco agreed to arbitrate disputes arising under the assigned sales confirmation forms as well. See Impro International Corp. v. Loral Inc., 623 F.Supp. 1172 (S.D.N.Y.1985). In each, Genesco agreed to arbitrate all disputes arising from purchase agreements with Kakiuchi. We turn now to examine the scope of that agreement. | Can parties be bound by an agreement to arbitrate even absent a signature? | 007171.docx | USGA1DE-0025568-USGA1DE-0025569 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15320 | Stone Investments v. Am. Third Mkt. Corp., 981 F. Supp. 378 | 25T+141 | Though Federal Arbitration Act requires that the arbitration agreement be in writing, party may be bound by an agreement to arbitrate even absent a signature to that agreement, and in the absence of a signed agreement, court must apply ordinary contract principles to determine whether the party can be bound by the contract. | The Federal Arbitration Act requires that the arbitration agreement be in writing, party may be bound by an agreement to arbitrate even absent a signature to that agreement. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987); McAllister Bros., Inc. v. A & S Transp. Co., 621 F.2d 519, 524 (2d Cir.1980). In the absence of a signed agreement, a court must apply ordinary contract principles to determine whether the party can be bound by the contract. | Can parties be bound by an agreement to arbitrate even absent a signature? | Alternative Dispute Resolution - Memo 411 - RK.docx | ROSS003289958-ROSS-003289999 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 15321 | Snyder v. Smith, 7361 F.2d 409 | 25T+134(5) | Courts must give effect to freely negotiated forum selection clauses in arbitration agreements. | Courts must give effect to such freely negotiated forum selection clauses. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15"29, 92 S.Ct. 1907, 1916"18, 32 L.Ed.2d 513 (1972). "The choice of [] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." Id. at 12, 92 S.Ct. at 1914. See also Scherk v. Alberto-Culver Co., 417 U.S. 506, 519"20, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974) (holding enforceable forum selection clauses in arbitration agreements); Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 680"81 (5th Cir. 1976). | Do courts have to give effect to freely negotiated forum selection clauses? | 007381.docx | USGA1DE-0025576-USGA1DE-0025577 | Condensed, SA | 0.86 | | 1 | 0 | 1 | 1 |
| 15322 | United States v. Dimora, 750 F.3d 619 | 63+1(1) | Efforts to buy favor or generalized goodwill do not necessarily amount to bribery. | Gabor and Dimora both claim that the court failed to instruct the jury sufficiently on the difference between gifts given in friendship and bribes given in exchange for official acts. No error occurred. The jurors heard that "official[s] to buy favor or generalized goodwill" do not necessarily amount to bribery. This instruction may come in response to the gamut of formal and informal influence, and that gifts exchanged solely to cultivate friendship are not bribes. Id. at 634 (As McCormick, however, the side of this coin, the jurors heard that bribery and kickbacks involve "the intent to ... exchange ... money or other thing[] of value in return for official action." Id. at 641. These instructions fairly trace the line between permissible gifts and impermissible bribes. See United States v. Terry, 707 F.3d 607, 612"14 (6th Cir.2013). | Do efforts to buy favor or generalized goodwill amount to bribery? | Bribery - Memo #5 - TH.docx | ROSS002208165-ROSS-002208166 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15323 | Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina"), 313 F.3d 70 | 221+388 | We also agree with other Courts of Appeals that have suggested that a foreign sovereign's view regarding its own laws merit, although they do not command some degree of deference. See, e.g., Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 714 (5th Cir. 1999), cert. denied, 531 U.S. 917, 121 S. Ct. 275, 148 L.Ed.2d 200 (2000) ("Recognizing the difficulty of interpreting foreign law, courts may, in appropriate cases, defer to the interpretation of the foreign government's interpretations."); see also In re Oil Spill by the Amoco Cadiz, 954 F.2d 279, 312 (7th Cir. 1992) ("A court of the United States does not substantial weight to a party's interpretation of its own law... Indonesia here urges on us a construction of its own domestic law that is likewise."). [remainder cut off] | Foreign sovereign's views regarding its own laws merit, although they do not command, some degree of deference. | Does a foreign sovereign's view regarding its own laws merit some degree of deference? | International Law - Memo #185 - C-TI.docx | ROSS-003311077-ROSS-003311078 | Condensed, SA | 0.94 | | | | 1 | | |
| 15324 | World Wide Minerals Ltd. v. Republic of Kazakhstan, 116 F. Supp. 2d 98 | 221+342 | The act of state doctrine bars consideration of claims when the resolution of a case requires the court to pass judgment on the official acts of a foreign sovereign in its own territory. See W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., 493 U.S. 400, 406, 110 S. Ct. 701, 107 L.Ed.2d 816 (1990). The rule is connected to the separation-of-powers and intended to avoid burdening the conduct of foreign affairs... [remainder cut off] | Act of state doctrine does not demonstrate a lack of jurisdiction, but rather functions as a doctrine of abstention. | Does the act of state doctrine demonstrate a lack of jurisdiction or a lack of function as a doctrine of abstention? | International Law - Memo #329 - TH.docx | ROSS-003314164-ROSS-003314165 | Condensed, SA, Sub 0.9 | 0.91 | | | | 1 | |
| 15325 | Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, 268 F.3d 103 | 221+387 | Sabbatino, 376 U.S. at 423, 84 S.Ct. 923. The revenue rule appears to show these interpretings, under the act of state doctrine, the assessment of the validity of foreign law is limited to those foreign acts within the sovereign's territory, under the revenue rule, United States courts decline to examine the application of a foreign sovereign's tax laws in the United States. Both approaches enable courts to avoid entanglement with questions about the underlying validity of a foreign sovereign's laws. | Under "act of state doctrine," court presumes validity of foreign state's laws within the state's territory. | "Under the act of state doctrine, are courts precluded from inquiring into validity of public acts of recognized sovereign power committed within its own territories?" | 02558.docx | USGA1 65E 00124228-USGA1 65E 00124230 | Condensed, SA, Sub 0.9 | 0.77 | | | | 1 | |
| 15326 | The Hall Firearg Fund v. Longview Energy Co., 682 S.W.3d 184 | 302+3491 | There is no contention by Longview that it express or is specifically stated in its text that all of the contract must be 'a legal action' - Claim., Denied, Longview asserts (via the claim because "competition" was a "compressed theme" to its complaint statement of the cause of action sufficient to give fair notice of the claim involved..." Tex. R. Civ. P. 47(a). When a party raises an exception, we may find, we construe the petition liberally in favor of the pleader. Basham v. Allen, 633 S.W.2d 868, 880 (Tex. 1982). We will uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged.. See id. In determining whether a pleading is adequate, we examine whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and the basic issues of the controversy. Boyles v. Kerr, 855 S.W.2d (8th Cir.) (Tex. App. Houston [14th Dist.] 2006, pet. denied) | Where special exceptions are not filed, court construes the petition liberally in favor of the pleader when there are no special exceptions? | Will a petition be construed liberally in favor of the pleader when there are no special exceptions? | 02993.docx | USGA1 65E 00125411-USGA1 65E 00125412 | Condensed, SA | 0.91 | | | | 1 | |
| 15327 | Keith v. Cmt'l Fin., 463 S.W.3d 508 | 302+3421 | When determining whether a pleading properly includes an allegation, we examine if the pleadings from the perspective of the person against whom the pleading is made. Wilson v. Rhea, 169 S.W.3d 364, 369 (Tex.App.-Austin 2005, pet. denied) (citing Entman v. Thompson, 1467se, 361 S.W.3d 241 (Tex. 2011)). In the absence of special exceptions, we construe the petition liberally in favor of the pleader. Moreno v. Sterling Drug, Inc., 787 S.W.3d 348, 355 (Tex. 1990). When construing a pleading, we must look at what is stated within the petition, even if an element of the cause of action is not specifically alleged.. (c f remainder cut) | In the absence of special exception, courts must construe the pleadings liberally in favor of the pleader? | Are pleadings construed liberally in favor of the pleader? | 02993.docx | USGA1 65E 00125417-USGA1 65E 00125418 | Condensed, SA | 0.91 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 15328 | In re Commitment of Kirby, 2012 IL App (1st) 102240 | 307A=3 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. People v. Nelson, 235 Ill.2d 386, 420, 337 Ill.Dec. 479, 922 N.E.2d 1056 (2009). An abuse of discretion occurs only when the trial court's ruling is "arbitrary, fanciful, or unreasonable or where no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted) People v. Santos, 211 Ill.2d 395, 401, 286 Ill.Dec. 102, 813 N.E.2d 159 (2004). | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of its discretion. | When will ruling on a motion in limine be reversed? | Pretrial Procedure Memo #372 - C - SB.docx | ROSS-003124919 ROSS-003124919 | Condensed, SA | 0.73 | 0 | 1 | | 1 | |
| 15329 | Smith v. Polsky, 796 S.E.2d 354 | 307A=3 | It is well established that (a) motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. The trial court has wide discretion in making the advance ruling. Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion in limine is subject to modification during the course of the trial. Heatherly v. Industrial Health Council, 130 N.C.App. 616, 619, 504 S.E.2d 102, 105 (1998) (internal citation and quotation marks omitted). When this Court reviews a decision to grant or deny a motion in limine, the determination will not be reversed absent a showing that the trial court abused its discretion. Id. | Trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature; therefore, trial court's ruling on a motion in limine is subject to modification during the course of the trial. | Are the court's ruling on a motion in limine final? | Pretrial Procedure Memo #376 - C - SB.docx | ROSS-003008972 ROSS-003008973 | Condensed, SA, Sub | 0.67 | | | 1 | | |
| 15330 | Kinsky v. Ohio Edison Co., 2019-Ohio App 3d 32 | 307A=3 | The motion in limine was granted with respect to items (3), (4), (5), and (7) The granting of a motion in limine is a preparatory order and makes no determination as to the ultimate admissibility of the evidence. In Riverside Methodist Hosp. Assn. v. Guthrie (1982), 3 Ohio App.3d 308, 310, 444 N.E.2d 1358, the court stated: "Properly utilized, a motion in limine, when sustained, requires a two-stage procedure. First, a consideration of the motion in limine as to whether or not evidence will be allowed; ..." | Granting of motion in limine is preparative order and makes no determination as to ultimate admissibility of evidence. | Are motions in limine prospective and dispositive as to the final admissibility of evidence? | Pretrial Procedure Memo #315 - C - LK.docx | LEGALEASE-00031172 LEGALEASE-00031173 | Condensed, SA | 0.77 | 0 | 1 | | | |
| 15331 | Bahl v. Bahl, 483 S.W.3d 512 | 307A=3 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. Fuerst Hotel Ltd. of Ariz. v. Fuerst Grp., 977 S.W.2d 786, 757 (The App. Tex.) 1998, cited.] The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. Weathers v. Sanchez, 14 S.W.3d 353, 363 (Tex App. "Houston [14th Dist.] 2000, no pet.). Eisenrich corp., 973 S.W.2d at 757. The granting or denial of a motion in limine is not a ruling on the evidence. Hartnett v. Hampton Inns, Inc., 870 S.W.2d 162, 165 (Tex. App.-San Antonio 1993, writ denied). And it preserves nothing for appellate review. We must review the trial court and, as an appellate court, will not reverse a trial court's sanctions absent a clear abuse of discretion. Landon v. Jean-Paul Budinger, Inc. 724 S.W.2d 931, 934 (Tex.App.-Austin 1987, no writ). A sanction for violating a court order must, however, be appropriate to the circumstances of the case. Id. We must also keep in mind that repeated violations of limine orders may result in mistrials or reversals. Weidner, 14 S.W.3d at 363. | Repeated violations of limine orders may result in mistrials or reversals. | Do repeated violations of limine orders result in a mistrial or reversals? | Pretrial Procedure Memo #437 - C - VK.docx | ROSS-003130434 ROSS-003130435 | Condensed, SA | 0.93 | 0 | 1 | | | |
| 15332 | Auchan USA v. Houston Lighting & Power Co., 961 S.W.2d 197 | 317A=131 | Unless found to be unreasonable, tariffs carry the dignity of statutory law. Southwestern Bell Tel. Co. v. Nash, 586 S.W.2d 647, 649 (Tex.Civ.App.-Amarillo 1979), reh denied). A public utility's tariffs are presumed reasonable, and reasonableness, but that determination is usually a question for the trier of fact. Southwestern Bell Tel. Co. v. Reeves, 578 S.W.2d 795, 799 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). The Public Utility Commission, which approves the tariffs, states that the tariff is "subject to review for reasonableness by the courts in actual damage or tort claim." CFRL. Decision at *10. Because a tariff is presumed reasonable, the burden to prove unreasonableness is on the customer. Vickers, 855 S.W.2d at 428. A lost issue of reasonableness of a tariff can be raised by the person for a long time even though it is on a point in public. Galardo v. Southwestern Bell Tel. Co., 725 S.W.2d 304, 306 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). Reeves, 578 S.W.2d at 799. | Unless found to be unreasonable, public utility tariffs carry dignity of statutory law; Vernon's Ann.Texas Civ.St. art. 1446c(1), § 5.002. | Do tariffs carry the dignity of statutory law? | Public Utilities Memo 150 - AM.docx | ROSS-002877888 ROSS-002877889 | Condensed, SA, Sub-Diff | 0.88 | | | 1 | | 1 |
| 15333 | First Assembly of God v. Texas Utilities Elec. Co., 52 S.W.3d 482 | 317A=131.1 | T.U. is an electric utility as that term is defined in section 31.002(1) of the Texas Utility Code. Tex. Util.Code Ann. § 31.002(1) (Vernon Supp.2001). A tariff is a document filed by a public utility to which provides the rates for those services. Henderson v. Cent. Power & Light Co., 977 S.W.2d 439, 441 (Tex.App.-Corpus Christi 1998, pet. denied). Unless found to be unreasonable, filed tariffs govern a utility's relationship with its customers and have the force and effect of law. Id. at 446/57. Because a tariff is presumed reasonable, the burden to prove unreasonableness is on the customer. Southwestern Bell Co. v. Vollmer, 805 S.W.2d 825, 827 (Tex.App.-Corpus Christi 1991, writ denied). In this case, section 4.5.3.2 of the Tariff provides that the customer assumes full responsibility for electric energy furnished to the customer at or past the point of delivery and agrees to indemnify and hold T.U. harmless from all claims for damages occurring against the customer's premises arising from electric power and energy delivered by the utility to the customer, unless such damages are the result of the utility's negligence or willful conduct. Section 4.5.3.2 also provides that T.U. is not responsible for the condition or maintenance, operation, and maintenance of electrical facilities beyond the point of delivery and is responsible for instilling and maintaining protective devices necessary to protect the customer's equipment and process during irregular or interrupted service. | Unless found to be unreasonable, filed tariffs govern a utility's relationship with its customers and have the force and effect of law. | Is the burden to prove the unreasonableness of a tariff on the customer? | Public Utilities Memo 151 - AM.docx | ROSS-002385423 ROSS-002385423 | Condensed, SA | 0.92 | | | | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,079 |
| 15534 | Natl Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So. 2d 328 | 366+1 | Further, equitable subrogation arises when the person discharging the debt is entitled to... | The right to subrogation is not absolute, but depends upon the equities and proofing facts of each case | Is a party's entitlement to subrogation dependent upon the attendant facts of each case? | Subrogation - Memo 1012 - C - CAT.docx | ROSS-00328203 & ROSS-00328204 | Condensed | 0.92 | 0 | 1 | | | |
| 15535 | Argonaut Ins. Co. v. C & S Bank of Pima, 140 Ga. App. 807 | 366+1 | "A surety who has paid the debt of his principal shall be subrogated both at law and in equity to all the rights of the creditor..." | Subrogation is not founded upon contract, express or implied, but upon principles of equity and justice. | Is the right of subrogation founded upon express or implied contract? | 04310.docx | LEGALEASE-00124826 - LEGALEASE-00124827 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 15536 | In re Jones, 134 B.R. 506 | 366+1 | This brings the Court's focus to the fourth group, whether the subrogation would work an injustice on other parties. In the instant case... | Under Vermont law, application of equitable subrogation is not based simply on whether a lender paid another's debt; rather, it contemplates a paid another's debt? | Is equitable subrogation a remedy available to a lender that paid another's debt? | 04316.docx | LEGALEASE-00125094 - LEGALEASE-00125095 | Condensed, Order, SA, Sub | 0.86 | 1 | 1 | 1 | 1 | |
| 15537 | In re Transp4h, 552 B.R. 817 | 366+1 | Once the refinancing was completed, any subsequent financing was outside the realm of paying off a higher priority lien. In that context... | Wisconsin does not follow either the majority or minority rules that require actual or constructive knowledge of other liens to defeat subrogation; Wisconsin instead has adopted the "Restatement Approach" to subrogation, which gives courts freedom in weighing the equitable concerns each individual case, such that, in Wisconsin, equitable concerns reign supreme. | What is Restatement Approach in relation to subrogation? | 04A615.docx | LEGALEASE-00125361 - LEGALEASE-00125362 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | |
| 15538 | Com. v. Johnston, 446 Mass. 555 | 203+228 | Discussion. Conviction of assault with intent to murder requires proof of assault and a specific intent to kill that equates with malice. "In this malice Commonwealth v. Henson, 394 Mass. 584, 590*591, 476 N.E.2d 947 (1985). "Malice" in this context "means only the absence of justification, excuse, and mitigation." Id. at 591, 476 N.E.2d 947. Malice necessarily exists when specific intent to kill is proved and there is no evidence of justification, excuse, or mitigation. See Commonwealth v. Nardone, 406 Mass. 123, 132, 546 N.E.2d 359 (1989). Justification and excuse more than the actual nonexistence; while mitigation reduces the crime from assault with intent to murder to assault with intent to kill. Id. at 130*131, 546 N.E.2d 359. Mitigation traditionally involves circumstances where we understand a defendant's intent to kill to arise from the frailty of human nature in the face of certain circumstances... | Conviction of assault with intent to murder requires proof of assault and a specific intent to kill that equates with malice; in this context, means only the absence of justification, excuse, and mitigation. M.G.L.A. c. 265, § 18(b) | Does intent to murder means intent to kill with malice? | 03078.docx | LEGALEASE-00125746 - LEGALEASE-00125747 | Condensed, SA, Sub, Order | | 0 | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15339 | McGowan v. McGowan, 4 Misc. 2d 165 | 302+9 | The action is in equity to impress a trust upon real property and to declare that the parties to the action own said property as tenants in common. Plaintiffs and defendants are brothers and sisters. The relief is sought on the claim that the defendants received the property upon a trust for the benefit of the parents of the parties hereto and that upon the death of the parents, intestate, title to said property vested in the surviving children. The complaint also contains allegations of partial performance by plaintiffs. The answer consists of denials and four affirmative defenses. The first defense is predicated upon the Statute of Frauds. This defense may not be sustained. The Statute of Frauds cannot be used as a defense against fraud or the abuse of a confidential relationship in the acquisition and retention of real property. Waters v. Hall, 218 App.Div. 149, 218 N.Y.S. 31; Gallagher v. Gallagher, 135 App.Div. 457, 120 N.Y.S. 18, affirmed 202 N.Y. 572, 96 N.E. 1115; Goldsmith v. Goldsmith, 145 N.Y. 313, 39 N.E. 1067; Wood v. Rabe, 96 N.Y. 414, 48 Am.Rep. 640; Wheeler v. Reynolds, 66 N.Y. 227; McKenna v. Meehan, 248 N.Y. 206, 161 N.E. 472; Wittner v. Burr Avenue Development Corp., 222 App.Div. 285, N.Y.S. 124. The second defense alleges that the cause of action abated by reason of the death of the parents prior to the commencement of this action. No citation of authority is required to show the insufficiency of that defense. See Decedent Estate Law, " 83. The third defense is to the effect that the complaint fails to state a cause of action. This is a mere conclusion and does not constitute new matter. New Amsterdam Casualty Co. v. National Union Fire Ins. Co., 236 App.Div. 494, 260 N.Y.S. 71. Such a defense cannot be taken by answer. Falk v. MacMasters, 197 App.Div. 357, 188 N.Y.S. 795; Duke v. Wasserman, 191 Misc. 849, 79 N.Y.S.2d 582. The fourth defense alleges the illegality of the agreement set forth in the complaint. The defense is insufficient for | In action to impress trust upon realty and to declare that parties owned property as tenants in common on ground that defendants received property upon a trust for benefit of parents of parties to action and upon death of parents, intestate, title to property vested in surviving children, defense alleging illegality of agreements set forth in complaint which did not plead supporting facts was insufficient and would be stricken. Rules of Civil Practice, rule 109. | Is an allegation of illegality without supporting facts sufficient? | 023003.docx | LEGALEASE-00125598-LEGALEASE-00125599 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15340 | Chapman v. DePuy Orthopedics, 760 F. Supp. 2d 1310 | 241+55(1) | Having found Virginia law to be applicable, the Court finds further that Chapman's claims fail as Virginia's two-year statute of limitations bars Chapman's action. Va.Code Ann. " 8.01"243(A). Under Virginia law, the cause of action accrues under tort law on the date that the injury is sustained. Smith v. Danek Med., Inc., 47 F.Supp.2d 698, 701 (W.D.Va.1998) ("the limitations period begins to run when the injury, no matter how slight, is sustained"). The date that the plaintiff discovers the injury is immaterial to the running of the statute. Id. The latest possible date that Chapman's claims accrued is December 4, 2006, when x-rays noted the fatigue fracture in the femoral stem. Chapman did not file suit until June 22, 2009. As a result, her claims are time barred. | Under Virginia law, cause of action accrues under tort law on date that injury is sustained. West's V.C.A. S 8.01-243(A). | Does a tort cause of action accrue until an injury is sustained? | Action - Memorandum - 272 - SK.docx | LEGALEASE-00015819-LEGALEASE-00015821 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 15341 | Schwaner v. Dep't of Army, 370 F. Supp. 2d 408 | 34+2 | Army regulations must be in accord with directives promulgated by the Department of Defense. Casey v. United States, 8 Cl.Ct. 234, 239 (1985). "To the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way." Id. Moreover, the Army, no less than any other federal agency, is obligated to follow its own regulations. Ft. Stewart Schs. v. FLRA, 495 U.S. 641, 654, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990); see also United States v. Green, 22 M.J. 711, 718 (A.C.M.R.1986) ("[A] local regulation ... cannot conflict with or detract from ... Department of the Army provisions on the same subject."). | Army regulations must be in accord with directives promulgated by the Department of Defense. | Do army regulations have to be in accord with the directives promulgated by the Department of Defense? | 008878.docx | LEGALEASE-00126297-LEGALEASE-00126298 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 15342 | United States v. Hill, 279 F.3d 731 | 221+331 | "Extraterritorial jurisdiction is also proper under the nationality theory, which permits country to apply its statutes to extraterritorial acts of its own nationals." Because Charlie and Hill are both citizens of the United States, their criminal acts outside the United States may be punished in the United States. | Extraterritorial jurisdiction is proper under the "nationality theory," which permits a country to apply its statutes to extraterritorial acts of its own nationals. | "Is extraterritorial jurisdiction proper under the ""nationality theory""?" | 020932.docx | LEGALEASE-00126170-LEGALEASE-00126171 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 15343 | Anderson v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. Louisiana State Univ. Health Sci. Ctr., 943 So. 2d 1198 | 307A+3 | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. Heller v. Nobel Insurance Group, 00-261 (La.2/2/00), 753 So.2d 841; Scott v. Dauterive Hosp. Corp., 02-1364 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, 1164, writ denied, 03-2005 (La.10/31/03), 857 So.2d 487. Considering the record before us, we find that the trialcourt did not abuse its discretion by granting defendant's motion in limine, and this assignment of error is without merit. | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. | Do trial courts have the discretion to defer a ruling on a motion in limine? | 037908.docx | LEGALEASE-00126108-LEGALEASE-00126109 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 15344 | Mid West Comm Tn Sys v Am Tel & Tel Co, 615 F.2d 1372 | 372k433 | In the FCC's determination of the "public interest" question under the Act, there is no doubt that competition is a relevant factor. FCC v. RCA Communications, Inc., 346 U.S. 86, 94, 73 S.Ct. 998, 1003, 97 L.Ed. 1470 (1953). Competition per se, however, is not the sole touchstone for decision since competition is not the only consideration. RCA, supra, 346 U.S. at 93, 73 S.Ct. at 1003; Hawaiian Telephone Co. v. FCC, 498 F.2d 771-77 (D.C.Cir.1974). Rather, the FCC must consider all factors relating to the "public convenience and necessity." Hawaiian Telephone, 498 F.2d at 776. In general, the public interest standard requires the overall purpose of the Communications Act "to make available, so far as possible, to all the people of the United States a rapid, efficient, Nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges ...." 47 U.S.C. s 151. As decisions under section 201(a) reveal, the FCC considers a number of specific noncompetition related factors in determining the public interest in interconnection cases. See, e.g., Oklahoma Telephone Co. v. Southwestern Bell Telephone Co., 6 F.C.C. 898 (1939) (adequacy of existing service); In the Matter of Western Union Telegraph Co., 17 F.C.C.2d 152, 173-75 (1952) (lack of evidence of public necessity resulting in a "blank check" for competitor to serve most profitable routes if interconnection was ordered). Since an analysis of competition affects is not decisive, the FCC may not adequately safeguard antitrust interests. Thus, in the absence of a clear conflict between the antitrust laws and the power permitted to operate AT&T urges that the Supreme Court's decision in the antitrust case of Otter Tail Power Co. v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), controls the question of Bell's implied immunity here, in that case, Otter Tail Power Company, an electric utility that operated and controlled electric power lines, was held to have violated the antitrust laws. | In determining the "public interest" question under the Federal Communications Commission's determination of the "public interest" question under the Communications Act, there is no doubt that competition is a relevant factor, but competition per se is not the sole touchstone for decision since competition is not the only consideration; rather, the FCC must consider all factors relating to the "public convenience and necessity." Communications Act of 1934, SS 1 et seq., 201(a), 47 U.S.C.A. SS 151 et seq., 201(a). | Is competition a relevant factor in weighing the public interest? | 0423b0.docx | LEGALEASE-00125988 - LEGALEASE-00125990 | Condensed, SA, Sub 0.85 | | 1 | 1 | 1 | 1 | 9,029 |
| 15345 | Peddicord v. Tri-City Gas Co., 210 Ala. 465 | 313k+111 | It is clear enough that the utility may require the deposit as a condition precedent to the installation of service. | Public utility company may require deposit by customer to guarantee payment which as a condition precedent to installation of service. | Does a utility require a deposit as a condition precedent to the installation of service? | 0423b5.docx | LEGALEASE-00126054 - LEGALEASE-00126055 | Condensed, SA, Sub 0.14 | | 0 | 1 | 1 | | |
| 15346 | (Scottsdale) 313 N+111 | 313+111 | Scottsdale also asserts that the trial court erred in concluding that an excess insurer cannot raise a bad faith refusal to settle claim against a primary insurer by way of conventional subrogation. Subrogation is the substitution of another in the place of a creditor "so that the party in whose favor subrogation is exercised succeeds to the rights of the creditor." Mosser v. Am. Union Ins. Co., 118 S.W.3d 644, 648 (Mo.App.2003); see also 16 Couch 3d, section 222.5. Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract. Kroeker v. State Farm Mut. Auto. Ins. Co., 466 S.W.2d 105, 110 (Mo.App.1971). Scottsdale asserts it has a right to subrogation arising out of its policy with Wells | Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract. | By subrogation rights arise by contract or by operation of law? | Subrogation - Memo 972 - C - ES.docx | ROSS000298949-ROSS-000298950 | SA, Sub 0.82 | | 0 | | | 1 | |
| 15347 | CompuServe Inc. v. Cyber Promotions, 962 F. Supp. 1015 | 386+7 | Defendants, citing Restatement (Second) of Torts " 221, which defines "dispossession", assert that not every interference with the personal property of another is actionable and that physical dispossession or substantial interference with the chattel is required. Defendants then argue that they did not, in this case, physically dispossess plaintiff of its equipment or substantially interfere with it. However, the Restatement (Second) of Torts " 218 defines the circumstances under which a trespass to chattels is actionable: One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest. | Harm to personal property or diminution of its quality, condition, or value as result of defendant's use can be predicate for liability for trespass to chattels. Restatement (Second) of Torts " 218(b). | When will a trespass to chattels be actionable? | Trespass - Memo 200 - RK.docx | ROSS-000286858-ROSS-000286859 | Condensed, SA, Sub 0.8 | | 0 | 1 | 1 | | |
| 15348 | Ford Motor Credit Co. v. Dillon, 52 Ala. App. 510 | 386+6 | The gist of the action of trespass is an injury to the possession of personal property by use of unlawful force. Construction of an injury to the right of actual possession of the res, Cora v. Stuart, 229 Ala. 409, 157 So. 460; Webb v. Dickson, 276 Ala. 553, 165 So.2d 103. Such force may be either actual or implied, and in ordinary trespass force need not be actual but may be constructive or implied. There need be no actual force defined in a general way as that sort, such as threats or intimidation, to compel the submission of plaintiff against his will to be an appropriation of what he assert to be his property. Jones v. America I Inc., supra. The threats or intimidation referred to are those which will cause the unlawful amount to a breach of peace or if resisted would tend to promote a breach of peace. We have found no case in which trespass as a result of threats, etc. was in the present where plaintiff would have the time of the taking. We can conceive of circumstances where such constructive force could have been applied by either or phrase, etc. However, in the taking, but such are not the facts in this case. We find in the evidence no threat or intimidation committed by the agent of defendant during the conversation with plaintiff against whom he left the property three days prior to the taking. The statement made by the agent, Skeen, that the car cannot be continued to amount to a threat or intimidation to compel plaintiff to submit to a taking by unlawful force which would have to "go," that since repossession was refused by plaintiff, the attempted (surely at a time and place where plaintiff was not present. | Gist of the action of trespass is an injury to the possession of personal property by use of unlawful force which is an essential element of action. | What is the gist of the action of trespass? | Trespass - Memo 205 - RK.docx | ROSS-000300584-ROSS-000300587 | Condensed, SA, Sub 0.91 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 13349 | Norton v. Stanfield, 86 Ariz. 516 | 134d1 | If appellants' pleading would entitle them to the relief sought if the Company's creditors would file a suit for the collection of their indebtedness or undoubtedly enforce its collection for three years, appellants' cause of action would unquestionably have accrued upon the commencement of proceedings by the Fidelity Savings & Loan Association but such was not his undertaking. Under the guaranty the maker is not necessary that he fail to prevent the enforced collection of his indebtedness, nor merely that he see to it that an action looking to that end should not be filed, before he should be held responsible for existing it. This being true, if appellants had to await the commencement of the action by the Fidelity Savings & Loan Association as a breach of the undertaking afterwards filed suit upon the guaranty the complaint would have been good; for the reason that there had been no breach, since it was within his power to perform his agreement any time before said foreclosure by paying the mortgage the amount due either before or after judgment. Until a breach had actually occurred there was nothing upon which appellants could base a suit and necessarily the statute of limitations could not be set in motion prior to the accrual of a cause of action. It is elementary that 'whenever one person may sue another a cause of action has accrued and the statute begins to run.' 37 C. J. 810. | Statute of limitations could not be set in motion before accrual of cause of action | Can statute of limitations be set in motion before accrual of cause of Action? | 001501.docx | LEGALEAE-00136444 LEGALEAE-00136445 | Condensed_SA, Sub 0.94 | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 13350 | In re Trans World Airlines, 261 B.R. 103 | 134d1 | Second, TWA's attempted injection of the Ticket Agreement is a post-confirmation act. Karabu therefore cannot rely on the res judicata effect of the 1995 Confirmation Order because it could not have brought any claim based on the Ticket Agreement that it could not brought during the TWA I confirmation proceedings; i.e., Karabu's present claims not based on a cause of action did not exist in 1995. Accord Nahkani, 223 F.3d at 137 ('Claim preclusion bars claims arising from the same cause of action previously raised, not every conceivable claim that could have been brought in the previous plus bankruptcy case') Hruska, 176 F.3d at 255 (a claim exists even if based on a different legal theory, so long as 'both suits arise from the same nucleus of operative facts'). A cause of action only arises when a party has been wronged, one only then only here has been injured... here has been breached, or an injury has been inflicted." In re Insolhares, Inc., 338 B.R. at 705. | Generally, one has right to institute suit, so that cause of action will have accrued, when a wrong has been done, a duty has been breached, or an injury has been inflicted. | When does one have a right to institute suit? | 001568.docx | LEGALEAE-00136485 LEGALEAE-00136486 | Condensed_SA, Sub 0.86 | 0.86 | 1 | 1 | | 1 | |
| 13351 | Law Project for Psychiatric Rights v. Stans, 239 P.3d 1252 | 30+3126 | We review de novo whether a party has standing to sue, as the issue raises a question of law. We review a superior court's ruling on a motion to dismiss for an abuse of discretion. A dismissal for lack of standing 'when we are left with a definite and firm conviction after reviewing the whole record that the [superior] court erred in its ruling.' (We also review matters of statutory interpretation, like whether an attorney's fees award to Law Project for Psychiatric Rights was an attorney's fees award if it is "arbitrary, capricious, manifestly unreasonable, or stems from an improper motive") | Supreme Court reviews de novo whether a party has standing to sue, as the issue raises a question of law. | Is a party's standing to sue a question of law? | Action - Memo #120_C-NA.docx | ROSS-003298290-ROSS-003298291 | Condensed_SA, Sub 0.81 | 0.81 | 0 | 1 | | 1 | |
| 13352 | Hartley v. Stovr, New Orleans Barge Lines, 247 F. Supp. 1055 | 134d1 | Respecting to the Court's decision, the legislature amended the Pennsylvania Bankruptcy Corporation Law in 1963, by adopting the language suggested by the Court: "In any action arising within this Commonwealth." It is apparent that the legislature intended to make clear that the second requirement for service under the Act must be that the cause of action be one arising within this Commonwealth. In this case, in Electrosonics International, Inc. v. Wurlitzer Co., 234 F.Supp. 913 (E.D.Pa.1964) It is elementary that a cause of action does not arise upon the starting of an action in court; instead the cause of action must have arisen at some time prior to the commencement of the action in court. | Cause of action does not arise upon starting of the action in court; instead the cause of action must have arisen before the commencement of the action. | Does cause of action arise upon the starting of the action in court? | 001687.docx | LEGALEAE-00136518 LEGALEAE-00136519 | Condensed_SA, Sub 0.83 | 0.83 | 0 | 1 | | 1 | |
| 13353 | Blue Cross of N. New York v. Bd. of Co-op. Educ. Servs., 2 Misc.2d 193 | 134d1 | The court properly denied defendant's motion for summary judgment. Generally, a cause of action on a contract accrues when the extent of damages can be ascertained (Matter of Board of Educ. of Ogdensburg City School Dist. [Wager Constr. Corp.], 37 N.Y.2d 283, 372 N.Y.S.2d 43, 333 N.E.2d 513; Cardiffer Gordon v. City of Oneonta, Inc. v. Board of Co-op. Educ. Servs., No. 1, v. Reddick & Sons of Governeur v. Lidge, Wm. Schmitt, Inc. v. Penfield Cent. School Dist., 54 A.D.2d 1100, 388 N.Y.S.2d 62). The record establishes that defendant's damages accrued when plaintiff under the insurance contracts, but disputed the amount owed, and arose out of... under the circumstances, the court properly found that the issue of the date of accrual of the claim was a question of fact (see, Schwartz v. Public, 99 A.D.2d 882, 472 N.Y.S.2d 39; Vitale v. Weaver, 51 A.D.2d 1108, 439 N.Y.S.2d 919). A question of fact also exists regarding whether defendant should be estopped from asserting the Statute of Limitations based upon its conduct in lulling plaintiff into believing that the matter would be resolved (see, Cardinale v. Genesee Vol. Med. Care, 94 A.D.2d 966, 463 N.Y.S.2d 972). | Generally, a cause of action on contract accrues when extent of damages can be ascertained, and where there is likelihood of setoffs and debts, a cause of action does not accrue. | Does a cause of action on contract accrue when extent of damages can be ascertained? | Action - Memo #147_C-SPB.docx | ROSS-003298853-ROSS-003298854 | Condensed_SA, Sub 0.88 | 0.88 | 0 | 1 | | 1 | |
| 13354 | State ex rel. Teamsters Local Union 377 v. City of Youngstown, 50 Ohio St. 24200 | 134d1 | Normally, a cause of action does not accrue and such time as the infringement of a right arises. It is at this point that the time within which a cause of action is to be commenced begins to run. The statute runs forward from that date, not in the opposite direction, and because when one's conduct is wrongful before it may give rise to an actionable injury, our decisions have recognized that a cause of action will not accrue to run against an action for consequential injuries resulting from such act only from the time that actual damage ensues. | Normally, a cause of action does not accrue and such time as the infringement of a right arises. | Does a cause of action accrue until such time as the infringement of a right arises? | 001723.docx | LEGALEAE-00136554 LEGALEAE-00136555 | Condensed_SA, 0.79 | 0.79 | | 1 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13355 | Greene & Co. v. Raymond Bros., 2 Neb. 295 | 11h41 | It is only in the exceptional cases of fraud mentioned in Code Civ. Proc., 237, relating to attachments, that an action can properly be commenced on a claim before it is due. | Was the action below prematurely brought? This is the first question, and if the principal one is to be answered. It is only in the exceptional case of fraud found on the part of the debtor, mentioned in section 237 of the Code of Civil Procedure, that an action can be properly brought on a claim before it is due. This case is not within the exception. It was commenced on the 24th day of March, 1878, to recover upon two alleged causes of action: the first for the sum of $50.45, on an account for goods sold and delivered, and the second for the sum of $109.87, on a certain draft drawn by the defendants upon the plaintiffs in error, dated January 19, 1878, payable ten days after date, to the order of the York county bank, and "accepted, payable March 1, 1878." | When can an action be properly commenced on a claim before it is due? | 005366.docx | LGALEX42 00135397 LGALEX42 00135398 | Condensed, SA, Sub | 0.77 | 0 | | | 1 | 1 |
| 13356 | Lumbermen Mut. Cas. Co. v. Shaw, 484 S.W.2d 195 | 11h41 | Legal injury must be sustained before any cause of action in any case arises. | Appellee argues that the statute does not mandate that the interested party be dissatisfied with the Board award. We do not agree. A legal injury must be sustained before any cause of action in any case arises. Texas Employers Insurance Association v. Spann, 470 S.W.2d 908, 913 (Tex.App.-Fort Worth 1981, writ ref'd n.r.e.). In Spann, the court was faced with the same problem we have in the instant case. The insurance company in Spann provided in the board level and still filed an appeal. Up to the point of the appeal, the insurance company had prevailed in all respects. The Spann court held that: There can be no appeal from a ruling which gave one party everything it seeks. An appeal of necessity must be based on a claimed legal wrong. The court found the only loss suffered was to the claimant who had been denied any recovery and upheld the overruling of the appellant's insurance carrier's plea in abatement, as well as a plea of privilege. There being no merit to the filing by the appellant insurance carrier was an attempt to prevent the filing by the appellee claimant. | Should legal injury be sustained before any cause of action in any case arises? | Action - Memo #271 - C-SN.docx | ROSS-003156584 ROSS-003156585 | Condensed, SA | 0.93 | 0 | | 1 | | |
| 13357 | Gilchrist v. United States, 33 Fed. Cl. 791 | 34h2 | Department of Defense (DOD) directive is controlling authority over Army regulation. | Plaintiff also argues that AR 635*200 conflicts with DOD Directive 1332.14.The DOD Directive is the controlling authority over the Army regulation. "[T]o the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way." Carey v. United States, 8 Cl.Ct. 234, 239 (1985); see Pesht v. Nixos, 773 F.Supp. 1546, 1565 (D.Col. 1991) ("Department of Defense regulations control when they conflict with regulations promulgated by the Air Force.") (citation omitted). If no such conflict exists, that is, if DOD Directive 1332.14 does not conflict with AR 635*200, i.e. that plaintiff did have a right to a hearing, the DOD Directive would control. Plaintiff asserts that the directive provides for a hearing prior to discharge for convenience of the government. Defendant rejoins that the provision on discharge concerning Secretarial Authority, which is the reason for the discharge on plaintiff's DD214, appears in a different section of the directive than plaintiff does not address. The section of the directive cited by plaintiff, part 3, "C," does not cover discharge through Secretarial Authority, which is part 4. Plaintiff's case, and must be cross-referenced to another section of the Directive, part 4, "C." | Do Department of Defense (DOD) directives control when they conflict with regulations promulgated by the Army? | 005085.docx | LGALEX42 00135375 LGALEX42 00135376 | Condensed, SA, Sub | 0.93 | 0 | | 1 | 1 | |
| 13358 | Garcia v. Featherson, 321 B.3041v199 Ariz. 421 | 79h1 | Although underlying contract concerned sale of realty, Uniform Commercial Code's commercial paper provisions applied to promissory note which appeared on its face to be negotiable and was governed, in part, arguments by the negotiable. A.R.S. 51-402, 47-3-104. | The promissory note, as a negotiable instrument, fails within the provisions of Article 3 of the Uniform Commercial Code, A.R.S. 44-2501 to 2575. | Does a promissory note fall within the provisions of Article 3 under the Uniform Commercial Code (UCC)? | Bills and Notes-Memo-32#-ANC.docx | ROSS-003288441-ROSS-003288442 | Condensed, SA, Sub | 0.44 | 0 | | | 1 | 1 |
| 13359 | Clerk v. City of Topeka, 232 Kan. 334 | 79h1 | A clerk of a court is a ministerial officer, and without statutory authority, cannot exercise a judicial function. | A clerk of a court is a ministerial officer, 14 Am.Jur.2d, Clerks of Courts 34, page 243, 67 P. 948 (1896), and without statutory authority cannot exercise judicial functions (14 C.J.S. 13, 14 at 407; 21 C.J.S. 13, 14 at 407; 21 Am.Jur.2d, Criminal Law 327 (1989). See also 14A Am.Jur. 2d, Clerks of Court " 21, p. 155. | Can a clerk of a Court exercise judicial functions? | 01X418.docx | LGALEX42 00135766 LGALEX42 00135767 | Condensed, SA | 0.61 | 0 | | 1 | | |
| 13360 | Fertit v. State, 380 So. 2d 1118 | 79h2 | A clerk of court acts in purely ministerial capacity, and has no discretion to pass upon sufficiency of documents presented for filing. | Moreover, we think that even more literal adherence is required when a statute spells out the steps to be taken before the clerk of a court is authorized to enter a judgment. A clerk acts in a purely ministerial capacity, and has no discretion to pass upon the sufficiency of documents presented for filing. Allen v. Rhoden Fla. Pub.Co., v. Atlantic Coast Line R. Co., 302 Fla. 1117, 135 So. 888 (1931) (enforcing decree 102 Fla. 1117, 135 So. 141; Cordne v. State ex rel. Slaughter, 324 So.2d 104 (Fla. 1st DCA 1976). His power must clearly appear from a particular statute and the record to which it applies. Pan American-World Airways v. Gregory, 96 So.2d 669 (Fla. 3d DCA 1957). | Does a court clerk exercise any discretion? | 01d444.docx | LGALEX72 00135772 LGALEX72 00135773 | Condensed, SA | 0.8 | 0 | | 1 | | |
| 13361 | State ex rel. McClure v. Marion Superior Court, 239 Ind. 472 | 79h7 | Clerk of circuit court is not a county officer but is a circuit officer, and the appellative power to fill vacancies in the office resides in the Governor and not on a board of county commissioners. Burns' Ann.St. §§ 49-201, 49-404, 49-4405; Const. art. 6, §§ 2, 8, art. 7, §§ 1, 9. | With the foregoing precedents before us we have no alternative but to hold that the clerk of a circuit court is not a county officer but is a circuit officer, and that the appointive power to fill vacancies in this circuit office, under the long standing precedent in this State, observed by the legislative and executive divisions of the government, as well as the judicial... | Is a clerk of the circuit court a circuit officer? | 01d45d.docx | LGALEX42 00135782 LGALEX42 00135783 | Condensed, SA, Sub | 0.34 | 0 | | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 13362 | Bailey v. United States, 516 | 149+166 | Property owner is free to attempt to invalidate government decision and may seek compensation if the alleged decision resulted in taking. U.S.C.A. Const.Amend. 5. | A claim in our court for just compensation due to a taking is not defeated merely because it is property is being... [opinion text] | Who is entitled to compensation of a taking under the law? | 017617.docx | USGAEXE 00155526 / USGAEXE 00155529 | Condensed, SA, Sub 0.89 | 0.89 | 0 | | | 1 | |
| 13363 | Kramer v. Cleveland & P. R. Co., 5 Ohio St. 140 | 929+134(3) | Under Const. art. 8, § 4, providing that private property shall be inviolate, but subservient to the public welfare, if compensation is paid to the owner, benefits conferred by the use of land for railroad purposes may be set off against the damages occasioned thereby. | In both these particulars, which are premised upon our attention with sureness and ability, it is said to violated the 4th section of the 8th article of that instrument, which provided that, "Private property might and shall ever be held inviolate, but always subservient to the public welfare, when private provision occasioned thereby." | Is a private property subservient to the public welfare, under the taking law? | 017621.docx | USGAEXE 00235563 / USGAEXE 00235563 | Condensed, SA, Sub 0.21 | 0.21 | 0 | | | 1 | |
| 13364 | Lightwater Corp. v. Republic of Argentina, 2003 WL 1878420 | 221+357 | Failure of Republic of Argentina to make payments on bonds that it issued which were held outside the Republic was not an act of the Republic dealing with property located within its territory, for purposes of act of state doctrine, which thus did not apply to bar recovery for non-payments; the Republic defaulted on its bond payments on bonds. | The Republic asserts that all three plaintiffs are barred from recovery, because the Republic's actions in failing payments on the bonds constituted "acts of state", which this court must defer to. However, the Republic basically concedes that its argument runs contrary to the decision in United Bank Intl v. Banco Credito Agricola, 757 F.2d 516 (2d Cir.1985). Recognizing that act of state doctrine applies only to actions of a nation within its territory... | Does the act of state doctrine apply only to actions of a nation within its territory? | International Law-Memo #194 - ABR.docx | ROSS-003300063-ROSS-003300064 | Condensed, SA, Sub 0.64 | 0.64 | 0 | | | 1 | |
| 13365 | Rollandeather v. Soc'y for Sav. in City of Cleveland, 148 Ohio St 649 | 237+234 | A charge by one that another intended or attempted to commit a crime does not constitute slander, since mere intention is not a violation of law. | The petition alleging merely that defendant said that the plaintiff was attempting to use certain funds without authority to use them, or setting forth that such attempt was for any of the purposes of... | Does charging someone with intent to commit a crime constitute an extortion slander? | 021116.docx | USGAEXE 00235379 / USGAEXE 00235380 | Condensed, SA, Sub 0.88 | 0.88 | 0 | | | 1 | |
| 13366 | Richland Gas Co. v. Hale, 169 La 300 | 190+6 | Grantee of gas franchise from municipal corporation need not secure from Public Service Commission certificate of public convenience or necessity. Act No. 33 of 1898, as amended by Acts No. 189 of 1920. Const § 911, art. 6, § 5. | There is no law of this state requiring the grantee of a municipal franchise to secure from the commission a certificate of public convenience or necessity before entering upon the enjoyment of a franchise granted to it by the franchise. | Does a grantee of a franchise from a municipality need not secure certificate of convenience and necessity? | 042614.docx | USGAEXE 00235580 / USGAEXE 00235581 | Condensed, SA, Sub 0.06 | 0.06 | 0 | | | 1 | |
| 13367 | Snell v. Town of Sharon, 206 Minn. 437 | 114+3 | "Laches" is strictly equitable defense, distinguished from the absolute defense afforded by a statute of limitations. | "Laches," as defined as "unreasonable delay" in seeking relief or asserting one's right in equity. "The path of the doctrine of laches is unreasonable delay in enforcing a known right," Briggs v. Buzzell, 164 Minn. 116, 117, 204 N.W. 548, 549. "It is a strictly equitable defense, distinguished from the absolute defense of the statute of limitations," Duxbell, Minn.Dig. (2 ed.) 1 [950], and cases under notes 67 and 68. | Is laches a strictly equitable defense, distinguished from the absolute defense afforded by a statute of limitations? | 000411.docx | USGAEXE 00236834 / USGAEXE 00236835 | Condensed, SA, Sub 0.72 | 0.72 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15568 | Moseley v. Sun Constructors, 541 F.3d 218 | 25T+136(3) | Sun also asserts that the District Court improperly applied a heightened standard of "knowing consent" to the agreement's arbitration clause because of the variable rights entrapped/used under the provision. Sun contended that, contrary to ordinary contract law principles, the District Court required that Moseley have knowledge and understanding of the arbitration clause before it could be enforced against him. While it is unclear whether the District Court indeed took such action, we reiterate our holding in Sena v. John Nuveen & Co., Inc., 146 F.3d 175 (3d Cir.1998), even fraud no otherwise prohibits Sharp v. Downey et al. Cr. 1998), overruled on other grounds by Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), that applying a heightened "knowing and voluntary" standard to arbitration agreements would be inconsistent with the FAA. See Sena, 146 F.3d at 183-84 (requiring that a "knowing and voluntary" standard being entered and without fraud or duress, should not be applied to arbitration agreements). Moseley entered into the agreement with Sun without fraud or duress, and he is bound by its arbitration clause. | Heightened "knowing and voluntary" standard does not apply to arbitration agreements under Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 et seq. | Is applying a 'knowing and voluntary' standard does not apply to arbitration agreements under Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 et seq. | Alternative Dispute Resolution - Memo 416 - RR.docx | ROSS-003300074-ROSS-003300075 | Condensed; SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15569 | Bowers v. Vista, Bank of Chicago, 58 Ill. App. 698 | 8.30T+29 | Every endorsement of bill may be considered as a new bill drawn by the indorser and must be understood ... | Every endorsement of bill may be considered as new bill drawn by indorser and must be understood. | Should every endorsement of bill may be considered as a new bill? | 06/0912.docx | ROSS-002380633-ROSS-002380634 | Condensed; SA | 0.6 | 1 | 1 | 0 | 1 | 1 |
| 15570 | In re Lahr Inc. Corp., 156 B.R. 102 | 83T+473 | Moreover, there is no basis in UCC § 3-150(1), relied on by the bank, for modifying the negotiable character of an instrument that is negotiable ... | Whether instrument is negotiable is question of law to be determined solely from face of instrument, without reference to intent of parties. U.C.C. § 3-104(1)(b). | How should it be determined if an instrument is negotiable? | Bits and notes - Memo 107 - ANG.docx | LEGALEASE-00126882-LEGALEASE-00126883 | Condensed; SA, Sub | 0.84 | 1 | 1 | 1 | 1 | 1 |
| 15571 | Hale on Int. Rubbeldisch v. Elizabethtown Area Sch. Dist., 833 A.2d 364 | 141T+31 | It is true that a court is not supposed to be a "super" school board and substitute its own judgment for that of the school district ... | A court is not supposed to be a "super" school board and substitute its own judgment for that of school district, and therefore, in the absence of gross abuse of discretion, courts will not second-guess school policies; however, courts can intervene if schools act outside their statutory authority. | Can the courts intervene when schools act outside their statutory authority? | Education - Memo 424 - C - SU.docx | ROSS-003079969-ROSS-003299972 | Condensed; SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 15572 | Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 | 148+2.1 | The Court of Appeals determined that " 828 serves the legitimate public purpose of "rapid development of and maximum penetration by a means of communication which has important educational and community aspects," ... | A permanent physical occupation authorized by government is a "taking" without regard to the public interest that it may serve. U.S.C.A.Const.Amends. 5, 14. | What does the term permanent physical occupation encompasses under the law? | Eminent Domain - Memo 307 - GP.docx | ROSS-003305199-ROSS-003305201 | Condensed; SA, Sub | 0.84 | 1 | 1 | 1 | 1 | 1 |
| 15573 | Wray v. Fish, 95 Ohio App.3d 348 | 148+2.2 | To be considered part of the "taking" in an appropriation case, so that abutting landowner would be entitled to compensation, landowner's interference with access to or from the property must be substantial ... | To be considered part of the "taking" in an appropriation case, so that abutting landowner would be entitled to compensation, material or unreasonable; that is, "substantial" occurs where owner is prevented from enjoying continued use to which property had been previously devoted. | When does a Substantial interference occur under the law? | 017667.docx | LEGALEASE-00127074-LEGALEASE-00127075 | Condensed; SA | 0.62 | 0 | 1 | 1 | 1 | 1 |

2713

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 13374 | Harris v. Missouri Dept of Conservation, 755 S.W.2d 726 | 148-2.1 | The United States Supreme Court has long recognized regulation which goes too far is a taking. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Police power actions which test the end of private property are within the law's constitutional ambit … (long legal text) … Kaiser Aetna v. … | There is no litmus test for determining whether there has been a taking of private property by government; rather, each determination must be made on case by case basis. | Does a the determination whether government action constitutes a taking is made under the law? | 01.7669.docx | LEGALEASE 00127087-LEGALEASE 00127088 | Condensed, SA, Sub 0.89 | | 0 | | | 1 | 1 |
| 13375 | Hudson v. Am. Oil Co., 152 F. Supp. 757 | 200=158 | As complaints are not abutting landowners, it is difficult to conceive how any special injury may be shown, as contrasted with an injury to the general public. Unless such special injury is established, only the public authorities may abate any public nuisance brought about by the obstruction of a public highway … (long legal text) … | Only public authorities may abate any public nuisance brought about by the obstruction of public highway unless "special" injury to individual exists, and difference between such injury and injury to public must be one of kind rather than merely one of degree. | Who can abate public nuisance in a highway? | 01.8670.docx | LEGALEASE 00126986-LEGALEASE 00126987 | Condensed, SA, Sub 0.88 | | 0 | | | 1 | |
| 13376 | Garard S.S. Co. v. Melton, 262 U.S. 103 | 221=138 | The jurisdiction of nations, so far as it concerns merchant ships outside the waters of the United States, whether on the high seas or in foreign waters. But it does not follow that because a ship or vessel is deemed a part of the territory of the country to which she belongs, that therefore the jurisdiction of the country whose flag the vessel flies … (long legal text) … | The jurisdiction of a country over a ship flying its flag pertains more of the characteristics of personal than of territorial sovereignty, and has little application in foreign territorial waters beyond what is afforded by the local sovereign. | Does the jurisdiction of law a the flag the private parties over of personal than of territorial sovereignty? | International Law - Memo #1025 - C - RF.docx | ROSS-003298/97-ROSS-003286999 | Condensed, SA, Sub 0.85 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,029 |
| 15377 | Laplaca v. Eidos LP Laplaca ex rel. Laplaca, 230 Fed.Appx. 69 | 289n302 | Although it is clear that ROPA sets forth default rules that are not immutable (except in certain instances not relevant here), Appellants make the purported agreement. One footnote in plaintiffs' "Fair value" provision" does not that" reserves that a buyout for a "fair"-value" they rendering should the $100,000 buyout provisions. In the LLC agreement... Section 14.5142.2A.4(c), 42.2A.34. | "Where a partner is dissociated from a partnership, will his interest be purchased for a 'buyout price'?" | 02196.l.docx | LEGALEASE 0027281 LEGALEASE 0027282 | Condensed, SA, Sub 0.61 | | 0 | 1 | 1 | 1 | |
| 15378 | In re Monaco, 514 B.R. 477 | 361n41(6) | The party seeking to establish a right to equitable subrogation bears the burden of proof to show that the right exists. Babu, 340 S.W.3d at 517.59. Placing the burden on the party seeking to invoke the doctrine is consistent with the concept that the party seeking to invoke a court's jurisdiction has the burden of proof. See Alvarado Independ. Sch. Dist., 111... v., Sewell (In re Sewell), 413 B.R. 562, 564 (Bankr. E.D.Tex 2009). Thus, Tag had the burden to demonstrate that SAMMIDZ(11) involuntarily (3) paid a debt primarily owed by another (3) in a manner that fosters equitable relief to prevent unjust enrichment. See Frymir, 259 S.W.3d at 141. | "Who bears the burden of proving the applicability of the "equitable subrogation" doctrine?" | 04426b.docx | SA, Sub 0.79 | | 0 | | 1 | 1 | |
| 15379 | Ling v. Nissan N. Am., 170 611n2064 S.W.3d 564 | | Further, recognizing hedonic damages as a basis for recovering benefits would run counter to the exclusive-remedy principle which reinforces the policy balance of workers' compensation law. One of the fundamental purposes of workers' compensation law is to compensate employees for work-related injuries irrespective of fault. See Tex.Code Ann. § 50.'8' 200(a) (1999). However, in exchange for no-fault recovery, employees have limited recovery and relinquish certain common-law rights of action against their employers which they might otherwise have had. A delicate compromise between the interests of common law workers' compensation law. As the Supreme Court of this state has put it, "Clanton v. Can'Stan Co., 677 S.W.2d 441, 441 (Tenn.1984). In order to prevent an employee from both recovering common-law benefits and a complete substitute for previous remedies in court on the part of an employer." Liberty Mut. Ins. Co. v. Steveson, 212 Tenn. 178, 368 S.W.2d 760, 762 (1963). Consequently, with few exceptions, workers' compensation law is the exclusive remedy for the work-related injuries which fall under its scope. See Tenn.Code Ann. § 50-'6'-108(a) (1999); Liberty Mut. Ins. Co., 368 S.W.2d at 762. The delicately balanced quid pro quo involving no-fault liability in exchange for immunity from tort claims and limited in the amount of worker's compensation liability becomes illusory without a viable exclusive remedy rule." Joseph H. King, Jr., The Exclusiveness of an Employer's Workers' Compensation Remedy Against his Employer, 55 Tenn. L.Rev. 405, 417 (1988). | "What is at the heart of a workers' compensation law?" | 04843b.docx | Condensed, SA, Sub 0.81 | | 0 | 1 | 1 | 1 | |
| 15380 | Perrine v. Montana, 7N F.R.D. 444 | 13n45 | Despite the error just recited in the charge and in bearing point, plaintiff contends a new trial is not required. First she argues that there was no real assignment during the trial that her transfer emanated from anything other than her letter to the retrial judge and, while it is true that most of the allegations plaintiff's defense was devoted to showing that he could satisfy as who plaintiff on the basis of that which because she did make it manifest that there were other reasons for the transfer, plaintiff's inability to follow orders, her need for close supervision, and his desire to be present so she could report on a further incident at hand, have included difficulty work. Healthy decision, I would have altered my charge and interrogatory No. 2. See Henderson v. S.C. Schwendman, 133 U.S.C. 1978 § 2703, 461, 462 (N.D.Fla.1975). Secondly, plaintiff contends that, "while admittedly neither the parties nor the Court was aware of IWI, Healthy [until] after the trial, the risk of this ignorance should fall on plaintiffs and who seeks to assert the applicability of the case." I cannot accede to this reasoning. There is in no sense a question of retroactivity involved here. The pertinent rule is that a case will be decided on the basis of the law in effect at the time of the decision and not at the time the case arose, unless though neither the parties nor the Court were aware of it, that law included Mt. Healthy, I can see no reason for penalizing the defendant for failing to bring this in day-old decision to the court's attention. See Bradley v. Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 43 L.Ed.2d 221, 233 (8th Cir. 1987); cf. Henderson, supra at 660-61. | "Will a case be decided on basis of law in effect at the time of the decision?" | 00065.docx | LEGALEASE 0027440 LEGALEASE 0027441 | Condensed, SA, Sub 0.95 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,564 | 14,873 | 23,876 | 9,029 |
| 13381 | First Nat. Bank of Kansas City v. Fevurly, 364 Mo. 847 | 1145 | However, it has been held that a lessor, who has conveyed his land before the expiration of the term, can recover under an unlawful detainer statute… (long opinion text) | The right to judgment depends on the facts as they existed at the time of the commencement of the action and not at the time of the trial. | Must a judgment be supported by facts as they existed at the time of the commencement of an action or at the time of the trial? | 000047.docx | LEGALEASE-00127635 – LEGALEASE-00127660 | Condensed, SA, Sub 0.91 | 0.91 | 0 | | 0 | 1 | 1 |
| 13382 | Wright v. Smith, 124 N.J.2d 563 | 1145 | It is obvious from an examination of the record that the conclusion of the Court below that there was no substantial distinction by defendant from the essential facts of the issue that church as it existed at the time of its origin… | Rights of parties in equity are properly determined as of the date of the entry of the decree. | Will the rights of the parties in equity be determined as of the date of the entry of the decree? | 006201.docx | LEGALEASE-00127519 – LEGALEASE-00127521 | Condensed, SA, Sub 0.85 | | | 1 | 1 | 1 | |
| 13383 | Town of Mooresgrove v. Mascucdi, 133 Conn. 146 | 1145 | In so far as the plaintiff might require relief, its right to it should have been determined at the time of trial. Lowe Enterprises, Inc. v. International Alliance of T.S.E., 127 Conn. 413, 419, 17 A.2d 525. An action for a declaratory judgment, plaintiff is proper and equitable. Sillerman v. McLaughlin, 129 Conn. 273, 276, 27 A.2d 634; nevertheless, it is intrinsic in its nature the rights should be determined upon the facts. It is extreme and mere when the case is tried, and particularly so it is when it is sought as a basis for injunctive relief. While the Liquor Control Act makes certain distinctions as to applications for original permits and applications for renewal permits, the controlling provision is that a permit may be in force one year after issuance. General Statutes, Cum. Sup. 1935, 730b; Sup. 1941, § 4529 a renewal is not an extension of the term of the original permit, but the issuance of a new permit; and if an applicant cannot legally qualify for the permit when he applies for a renewal it is of no consequence that he could legally qualify when the original permit was issued. This action was brought after the issuance of the 1943 permit. | In action for declaratory judgment and for an injunction, plaintiff's right be determined as of the date of trial? | Action - Memo #301 - C.TM.docx | ROSS-000328673-ROSS-000328674 | Condensed, SA, Sub 0.88 | | | 1 | 1 | 1 | |
| 13384 | State v. Hoh, 368 P.3d 605 | 67+2 | Our burglary statute protects the "right to exclude," a right that has been described as perhaps the most fundamental of all property interests." State v. Dickerson, 313-MDC-023, 41, 285 P.3d 623 (internal quotation marks and citation omitted). The right to exclude "implies some notion of privacy interest." Id. at 42 (citation omitted). "It is the invasion of privacy and the victim's feelings of being personally violated that distinguishes burglary from the modern burglary." and that makes burglary a crime serious in context. Though broader than, the security of habitation." Id. 43. That privacy interest extends to all enclosed, private, prohibited spaces. See id. 44-45. Thus, an "entry," for purposes of the breaking-and-entering statute, occurs whenever there is an invasion into an enclosed, private, prohibited space. See Section 10-148(4). But still we must ask how do we define the boundaries of these spaces. | Privacy interest that modern burglary statute protects is intended to, though broader than, the security of habitation. West's RMSA 5:30-16-3. | What is the interest that the burglary statute protects? | Burglary - Memo 14 - RK.docx | ROSS-000290064-ROSS-000290067 | Condensed, SA, 0.87 | | | 1 | 1 | 1 | |
| 13385 | Cty. Bd. of Educ. of Iowa Cty. v. Smith, 239 Miss. 53 | 1411+31 | The plain intent of the legislature cannot be ignored. Courts must enforce the school laws in accordance with the mandate from the legislature. Wisner v. Board of Education, 23 N. W. 2d 863, 161, 33 L.R.A. 351. The considerations which must govern the board in making assignments are as follows: "Considerations in making assignments in making assignments of children to schools… board of trustees and welfare of the child involved; the welfare and best interest of all the pupils attending the school or schools involved; the availability of school facilities, sanitary conditions and facilities of the schools' schools involved; health of the child involved… community involved, and all other factors which the board of trustees may consider pertinent, relevant or material in their effect on the welfare and best interest of the child involved; and in making such assignment, the board of trustees shall not be limited or circumscribed by the boundaries of any attendance area which may have been established by such board of trustees. | Should the courts enforce the school laws in accordance with the mandate from the legislature? | Education - Memo #52 - C - SU.docx | ROSS-000285088-ROSS-000285089 | Condensed, SA 0.94 | 0.94 | 0 | | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15386 | Poorbaugh v. United States, 27 Fed. Cl. 628 | 148+2.2 | Plaintiffs allege that they are entitled to just and fair compensation for the unnecessary cutting of live trees growing on their property. "Both personal and real property are within the protection of the Fifth Amendment." King v. United States, 427 F.2d 767, 769, 192 Ct.Cl. 548 (1970). However, no taking of trees can occur unless the government has taken the underlying property. See Barnes, 538 F.2d at 874; Baird v. United States, 5 Cl.Ct. 324, 330"31 (1984). Destruction of trees without the taking of the underlying land is characterized as a tortious invasion or conversion and not compensable in this court. Baird, 5 Cl.Ct. at 330"31; see also Barnes, 538 F.2d at 874; United States v. Weyerhaeuser Co., 392 F.2d 448 (9th Cir.1967), cert. denied, 393 U.S. 836, 89 S.Ct. 112, 21 L.Ed.2d 107 (1968). Because the court finds that defendant's allegedly negligent actions did not amount to a taking of the underlying property, plaintiffs' "takings" claim for the trees must also be denied. | No taking of trees can occur unless government has taken underlying property; destruction of trees without taking of underlying land is characterized as tortious invasion or conversion and is not compensable in Court of Federal Claims. U.S.C.A. Const.Amend. 5. | Can taking of trees occur if the government hasnt taken the underlying property? | 017692.docx | LEGALEASE-00127374-LEGALEASE-00127375 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 15387 | Harris Cty. v. Felts, 881 S.W.2d 866 | 148+2.19(1) | The second element, whether the actions of the County constituted a taking, is the paramount issue addressed here. Texas courts have considered this element before. In Westgate, 843 S.W.2d at 450, the Supreme Court was asked to consider whether the government appropriated Westgate's property during the period between the announcement of the project and when the government actually acquired the property by (1) failing to warn of the expansion project which would affect its newly constructed shopping center and (2) unreasonably delaying acquisition after the project was announced. The Court held that a landowner could not recover damages for inverse condemnation under Article I, Section 17 of the Texas Constitution where the government had not physically appropriated, denied access to, or otherwise directly restricted the use of the landowner's property. "Direct restriction", as used in that case, referred to an actual physical or legal restriction on the property's use, such as a blocking of access or denial of a permit for development. Id. at 452. Appellees in this case are claiming the government appropriated their property by (1) building the Parkway in close proximity to their property, (2) by increasing the noise at their property due to the construction activities and (3) by increasing the dust on their property also due to the construction activities. Under the reasoning of the Westgate case, appellees cannot recover damages for inverse condemnation under Article I, Section 17 of the Texas Constitution because no land was physically appropriated. Appellees were never denied access to their property, nor was there any direct restriction on the use of their property. | Construction of parkway in close proximity to plaintiffs' property, increasing noise at plaintiff's property due to construction activities, and increasing dust on their property, did not warrant recovery of damages for inverse condemnation where no land was physically appropriated, plaintiffs were never denied access to their property, and there was no direct restriction on use of their property; fact that property decreased in value as result of parkway project did not constitute "taking." Vernon's Ann.Texas Const. Art. 1, S 17. | What does the term direct restriction encompasses under the taking law? | 017698.docx | LEGALEASE-00127481-LEGALEASE-00127482 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 15388 | Warminster Twp. Mun. Auth. v. Pennsylvania Pub. Util. Comm'n, 185 Pa. Super. 431 | 317A+113 | It is fundamental that the burden was upon Hartsville to establish a public need for the proposed service, the lack or inadequacy of existing facilities, as well as its own ability to render the proposed service. Modern Transfer Company v. Pennsylvania Public Utility Commission, 179 Pa.Super. 46, 51, 115 A.2d 887. What may constitute a need for service depends upon the locality involved and the particular circumstances of each case. Noerr Motor Freight, Inc., v. Pennsylvania Public Utility Commission, 181 Pa.Super. 322, 330, 124 A.2d 393. There is no legal requirement that the commission's order must be supported by any particular type of evidence as long as the evidence is legally sufficient. Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission, 170 Pa.Super. 411, 420, 85 A.2d 646. If the testimony is competent, its weight is for the commission. H. J. Gongaware & Sons v. Pennsylvania Public Utility Commission, 163 Pa.Super. 9, 10, 60 A.2d 364. The evidence may come from public witnesses, from prospective customers, from the applicant, or from other sources. On the question of necessity, Hartsville produced four of its incorporators as witnesses; they were also the four real estate developers. They testified that they propose to build approximately one thousand eight hundred houses, one hundred to three hundred of which will be built in the first year; that the area at present is essentially rural with a few houses; that there are no existing sewerage facilities; and that it is necessary that the sewerage system and disposal plant be built concurrently with the developments in order to avoid the additional expense and inconvenience of later tearing up the streets. (Even the chairman of the Authority testified that it was "necessary and desirable" that the sewerage system and disposal plant be constructed concurrently with the developments.) There were no public or other witnesses called by Hartsville as to the need for service. The reason for the absence of any | What may constitute a need for service justifying issuance of a certificate of public convenience depends upon locality involved and particular circumstances of each case. | What does the constitution of a need for a service depend on? | Public Utilities - Memo 228 - AM.docx | LEGALEASE-00017688-LEGALEASE-00017689 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 15389 | Hanson v. Blum, 53 N.D. 526 | 366+35 | Where a juniorlienholder, in order to save the property on which he claims his lien from foreclosure under a superiorlien, pays such superiorlien claim, and thereafter forecloses on and sells the property under his juniorlien, he will be held thereby to have waived any rights that he might have acquired as equitable assignee of the superiorlien by reason of his payment thereof.] | Junior lienholder selling under junior lien waives rights acquired by payment of superior lien. | Does a junior lienholder selling under a junior lien waive rights acquired by payment of the superior lien? | 043384.docx | LEGALEASE-00127988-LEGALEASE-00127989 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 15390 | Travelers Indem. Co. of Connecticut v. Losco Group, 204 F. Supp. 2d 639 | 366+35 | Losco urges this Court to adopt the holding of Behr v. Hook, 787 A.2d 499 (Vt.2001). In Behr, the court held that, under the circumstances of that case, the waivers of subrogation provision in a construction contract for a private residence precluded claims for gross, as well as ordinary, negligence. This case is not controlling, however. It is the law in New York that claims for gross negligence are not precluded by waivers of subrogation provisions. See Federal Ins. Co. v. Honeywell, Inc., 243 A.D.2d 605, 606, 663 N.Y.S.2d 247, 248 (2d Dep't 1997) (citing cases). Thus, the remaining question is whether Travelers has raised a genuine issue of fact on its claim for gross negligence. | Under New York law, claims for gross negligence are not precluded by waivers of subrogation provisions. | Can a subrogation waiver bar a claim for gross negligence? | 043430.docx | LEGALEASE-00127740-LEGALEASE-00127741 | Order, SA, Sub | 0.85 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 13591 | Fireld.Am v. KK & J, 60 A.D.3d 461 | 217+1512 | However, the record does an issue of fact whether KK & J satisfied its responsibility as a procurement responsibility as to whether the risk allocation scheme under the lease agreement. A LIU that points out, waiver of subrogation clause are "necessarily premised on the procurement of insurance by the parties" (Liberty Mut. Ins. Co. v. Perfect Knowledge, 299 A.D.2d 524, 726; 752 N.Y.S.2d 677 [2002]). Although the plain language of the subject lease agreement does not require any party other than the Duane Reade to procure fire insurance, defendants submitted an undertaking third-party liability insurance policy to demonstrate that KK & J was covered for the risk of fire, and since the lease agreement does not require that the subrogation the portion of the waiver of the risk provision, it may be that this policy satisfies KK & J's obligation to procure the type of insurance necessary to the enforcement of the waiver clause. A visible issue is raised by the fact that the policy identifies "Hospitality and Leisure Services, Inc.," and not KK & J, as the named insured. | Waiver of subrogation clauses are necessarily premised on the procurement of insurance by the parties. | Is waiver of subrogation clauses premised on the procurement of insurance by the parties? | Subrogation - Memo # 1191 - C - BP.docx | ROSS-003190474-ROSS-003190475 | Condensed, SA | 0.91 | | 839 | 0 | | 1 | |
| 13592 | Travelers Indem. Co. of Connecticut v. Losco Group, 204 F. Supp. 2d 639 | 366+15 | Losco urges this Court to adopt the holding of Behr v. Hook, 787 A.2d 499 (Vt 2001). In Behr, the court held that, under the circumstances of that case, the waiver of subrogation provision in a construction contract for a private residence precluded claims for gross, as well as ordinary, negligence. This case is not controlling, however: it is the law in New York that claims for gross negligence are not precluded by waiver of subrogation provisions. See Federal Ins. Co. v. Honeywell, Inc., 243 A.D.2d 605, 606, 663 N.Y.S.2d 247, 248 (2d Dep't 1997) (citing cases). Thus, the remaining question is whether Travelers has stated a genuine issue of fact on its claim for gross negligence. | Under New York law, claims for gross negligence are not precluded by waiver of subrogation provisions. | Does a waiver of subrogation for claims of negligence or gross negligence? | 043665.docx | LEGALEASE-00227639-LEGALEASE-00227640 | Condensed, Order, SA, Sub | 0.85 | | | 0 | | 1 | |
| 13593 | Colonial Properties Realty Ltd. P'Ship v. Lowder Const. Co., 256 Ga. App. 106 | 366+15 | In its next enumeration of error, Colonial argues that the subrogation provision is an excusable because it provides for liability clause exculpation for the contractor's negligence, thereby violating OCGA ¶ 13-8-2(b). We disagree. As we noted in Greer v. Caesars Walkers, [OCGA ¶ 13-8-2(b) ] provides that an agreement relative to the construction or maintenance of a building which purports to indemnify the promisee for damages resulting from the promisee's negligence is unenforceable as a matter of public policy. However, our Supreme Court has recognized that parties to building related contract ... can agree to look solely to insurance to cover their losses without violating this statute; and that an intent to do so is the "well-recognized meaning" of a "waiver of subrogation" clause. See Tuxedo Plumbing & Htg. Co. v. Nelson, Such an agreement does not violate the statute because it does not indemnify the promisee, but instead "shifts the risk of loss to the insurance company regardless of which party is at fault.OCJ E. Id. at 292(1), 282 S.E.2d 204. | Waiver of subrogation clause in construction contract did not violate statute prohibiting indemnification of promisee against its own negligence, where clause did not indemnify property owner, but shifted risk to insurer, whether owner or construction company was at fault. O.C.G.A. S 13-8-2(b). | "Can parties to a building related contract agree to look solely to insurance to cover their losses without violating the statute, and does such an intent of the parties recognized as a waiver of the subrogation clause?" | 043678.docx | LEGALEASE-00227562-LEGALEASE-00227563 | Condensed, SA, Sub | 0.73 | | | | 1 | | |
| 13594 | Holm. Risk Insurers v. Port Auth. of New York & New Jersey, 387 F. Supp. 2d 299 | 217+1512 | Parties to commercial leases often provide for waivers of subrogation implicitly. In the case of Kaf*Kaf, Inc. v. Rodless Decorators, 90 N.Y.2d 654, 665 N.Y.S.2d 47, 687 N.E.2d 1330, (1997), the Court of Appeals found that there was a waiver of subrogation when a lease required building from flooding. The standard form lease contained a waiver of subrogation clause. After a fire of unknown origin, KafKaf's insurer paid the claim, and instituted a subrogation action against Rodless for its negligence in maintaining the sprinkler system. In response, Rodless's insurer instituted a subrogation action against KafKaf for also negligence in the claim. The trial court dismissed both actions based on the waiver of subrogation clause, and the Court of Appeals affirmed the dismissal, holding that agreements for waivers insured. | Under New York law, waivers of subrogation contained in commercial leases are enforceable. | Are waivers of subrogation rights contained in commercial leases enforceable? | 043512.docx | LEGALEASE-00227606-LEGALEASE-00227607 | Condensed, SA, Sub | 0.89 | | | 0 | | 1 | |
| 13595 | Sec. Ins. Co. of New Haven v. Old Dominion Freight, The Connecticut Ins., Co. v. Mangan, 250 Md. 241 | 366+15 | There are important differences between conventional subrogation and legal subrogation. A conventional subrogee is ordinarily a complete stranger to the transaction and, while a conventional subrogee, by such agreement, the volunteer or intermeddler never figures in conventional subrogation; so long as the conventional subrogee continues himself to his legal obligation. A conventional subrogee may maintain an action for a party merely recovers, which is legal subrogee, who must pay in full in order to establish his right, can recover. Neptune Fire Engine Co. v. Disney, 3 Md.Ch. 134 (1855). The conventional subrogee is not an interesting equities. Reconstruction Finance Corp. v. Maryland Casualty Co., 23 F.Supp. 1008 (D.Md.1938), and his rights may be limited or denied by his agreement. Maryland Third & Third ... v. Knisley, supra 245 Md. at 21, 225 A.2d 47.9 F.C. 5, op. cit. 19 at 58.4 565; or subrogated by his privilege by subrogation. Beiswanger German Fire Ins. Co. of Baltimore, 51 Md. 511, 46 A. 1064 (1900). | Rights of conventional subrogee may be limited or denied by him by the terms of his agreement. | Can rights of a conventional subrogee be limited or denied to him by the terms of his agreement? | Subrogation - Memo # 1273 - C - SK.6.docx | ROSS-003290402-ROSS-003290404 | Condensed, SA, Sub | 0.92 | | | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 13396 | Roman v. W.C.A.B. (Nolen & Hass), 616 Pa. Cmwlth. 307 | 412+1 | We disagree with Mrs. Roman's assertion first, that Article II, Section 18 of the Pennsylvania Constitution requires that every employer receive compensation for work-related injury or disease suffering from work-related injury or disease, but does not mandate that every injured or diseased worker receive compensation, and thus does not prohibit the legislature from placing time limitations within which to file for occupational disease compensation claims or Occupational Disease Act's four year limitation period. 77 P.S. §§ 1411(1), 1401(c) Const. Art. III, § 18. | State Constitution authorizes state to enact laws to compensate workers suffering from work-related injury or disease, but does not mandate that every injured or diseased worker receive compensation, and thus does not prohibit Workers' Compensation Act for occupational disease compensation claims or Occupational Disease Act's four year limitation period. 77 P.S. §§ 1411(1), 1401(c) Const. Art. III, § 18. | Does the constitution prohibit a 200-week limitation period for occupational disease compensation claims or the occupational disease act four year limitation period? | 040516.docx | LEGALEASE-00127415-LEGALEASE-00127416 | Condensed, SA, Sub 0.7 | 0.7 | | 1 | 1 | | |
| 13397 | Champion Spark Plug Co. v. Reich, 121 F.2d 769 | 13+65 | Plaintiff's claim that it is entitled to a permanent injunction against the firing prop of practices referred to above is without merit. That contention assumes that its right to trial of equity is not restricted to an adjustment of the rights of the parties as they existed when suit was brought, but will give relief appropriate to events occurring pending the suit. | Equity is not restricted to an adjustment of rights of parties as such rights existed when suit was brought, but will give relief appropriate to events occurring pending the suit. | Does equity act in the present tense and mold its decree to when action was begun. | 003986.docx | LEGALEASE-00128271-LEGALEASE-00128272 | Condensed, SA, Sub 0.7 | 0.7 | | | 1 | | |
| 13398 | Lester v. Buer, 74 Cal. App. 2d Supp. 984 | 13+65 | While we have minute limitation law because of a certain restriction respecting decision to be sought. In defense rental matters, and in provisions must be given a construction which will effectuate their purpose, we also recognize that the purpose of the statute. The language must be read upon the right of an owner of property to enjoy the benefits of that ownership, and that these claims should not be given an interpretation which will operate as a restriction upon the right of an owner to use his own property beyond that clearly imposed by its terms. That which section 6 prohibits is the removal of a tenant from his rental by the owner, so that otherwise, except when one of the enumerated grounds exists. There is no provision which declares that a notice to quit may not be served upon and until the owner's necessity has become immediate. In the eviction that must await that crisis. The notice that is required to state the ground upon which "such removal or eviction is sought" is a notice "of the proposed removal or eviction." The removal is not brought about by the service of the notice, but is accomplished thereafter by court action or self action, or in those states where that option is permitted. It is by that notice that the tenant learns that more than ten days have a landlord proposed to evict a tenant. If the tenant does not heed the notice, can only take the ground upon which the removal will be, the owner is, sought. It is evident that, although a substantial obligation of its tenancy. But if other happens that an owner of property who, at the moment he learns of the existence of a disposal, can clearly foresee that by the time he has complied with the notice's period a similar cause for removal or eviction will exist. | A plaintiff's right of action must exist when he commences his suit, since the rights of the parties are to be judged by the conditions existing when action was begun. | Can a plaintiff's right of action exist when he commences his suit. | 005993.docx | LEGALEASE-00128287-LEGALEASE-00128288 | Condensed, SA, Sub 0.95 | 0.95 | | 1 | | | 1 |
| 13399 | Dunn Indus. Grp. v. City of Sugar Creek, 2002 WL 31548615 | 25+112.3 | Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). A surety may be a guarantor who is not a signatory to a contract containing an arbitration clause is generally not bound by the arbitration clause. Grundstad v. Ritt, 166 F.3d 261, 264 (5th Cir.1999)(quoting Radian Tree Expert Co. v. Oregon); including Missouri. Co. of the strong federal policy in favor of arbitration, arbitration agreements are enforced against guarantor or surtee where the arbitration agreement is incorporated by reference into the guaranty or performance bond. Sheffield Assembly of God Church Int. v. Am. Ins. Co., 870 S.W.2d 926, 933 (Mo.App.W.D. 1994); Colorate Mirror v. Stevens Co. Court (Mo.App.) 120541(1999). | Guarantor who is not signatory to contract containing arbitration clause is generally not bound by arbitration clause, but in most state courts, including Missouri, because of the strong federal policy in favor of arbitration agreements are enforced against guarantor or suretee where the arbitration agreement is incorporated by reference into the guaranty or performance bond. | Is a guarantor who is not a signatory to a contract containing an arbitration clause bound by the arbitration clause? | 007271.docx | LEGALEASE-00128672-LEGALEASE-00128673 | Condensed, SA, Sub 0.64 | 0.64 | | | 1 | | 1 |
| 13400 | United States v. McGee, 432 F. Supp. 557 | 34+1 | There are functions of necessity and convenience that a municipal corporation may render for its inhabitants. It should provide the public health, safety, welfare and morals of its inhabitants. It should be entrusted to assess its citizens and those who owe the benefit of its services and appropriate charges by virtue of the tax for services is real. It is not, however, charged with providing for the common defense. This is the obligation of the national sovereign. The military establishment exists to all citizens irrespective of location. The City of Denton, Ohio and the tangible benefits accruing to it from the size of a particular location are abstract and non-state. Propriety alone should be the full justification for interference or the potential for interference in the constitutional mandate imposed upon the military. | Providing for the common defense is the obligation of the national sovereign. The military establishment exists to all citizens irrespective of location. U.S.C.A.Const. art. 1, § 8. | Is providing for the common defense an obligation on the military? | Armed Forces - Memo 11 - RK.docx | LEGALEASE-00003123-LEGALEASE-00003124 | Condensed, SA, Sub 0.78 | 0.78 | | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 859 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15401 | Linn Brodie, 128 F. 665 | 1642 | Before pointing out the other and modifying regulation, some predatory observations may properly be made. The law governing in this respect is found in the statutory enactments of Congress ("particularly in the articles of war), in regulations prescribed by the executive authority, and in military usage and procedure. Carter v. McClaughry, 183 U.S. 365, 386, 22 Sup.Ct. 181, 46 L.Ed. 236. Subject to the Constitution and to the laws of Congress, the President, as commander in chief, is authorized to establish and enforce such rules and regulations for the government of the army as he may deem essential to the maintenance of a high state of efficiency, discipline, and honor, and, as a means to this end, may properly provide for the trial of accusations against persons in the military service, and for the punishment of offenses by them. "The power of establish implies necessarily the power to modify or repeal, or to create anew. The Secretary of War is the regular constitutional organ of the President, for the administration of the military establishment of the nation, and rules and orders publicly promulgated through him must be received as the acts of the executive, and as such, binding upon all within the sphere of his legal and constitutional authority. Such regulations cannot be questioned or denied because they may be thought unwise or mistaken." United States v. Eliason, 16 Pet. 291, 302, 10 L.Ed. 968; Kurtz v. Moffitt, 115 U.S. 487, 503, 6 Sup.Ct. 148, 29 L.Ed. 458. Nor is it necessary for the Secretary of War in promulgating such rules or orders to state that they emanate from the President, for the presumption is that the secretary is acting with the President's approbation and under his direction. Parker v. United States, 1 Pet. 293, 297, 7 L.Ed. 150; Wilcox v. Jackson, 13 Pet. 498, 512, 10 L.Ed. 264; Williams v. United States, 1 How. 290, 297, 11 L.Ed. 556, 561; Confederated Cas, 20 Wall. 92, 109, 22 L.Ed. 320; United States v. Farden, 99 U.S. 10, 19, 25 L.Ed. 267; Wolsey v. Chapman, 101 | Rules and orders promulgated by the Secretary of War for the government of the army are presumed to be issued by the Secretary with secretary of war but treated as the acts of the president? | Should rules and orders publicly promulgated through the secretary of war be treated as the acts of the president? | Armed Forces - Memo 29-49.docx | LEGALEASE-00035316 / LEGALEASE-00035319 | Condensed, SA, Sub 0.88 | 0.88 | 0 | 1 | | 1 | |
| 15402 | Shuka v. Dzizbonk, 185 N.J. Super 91 | 307.H.515.1 | Our prior experiences with R. 4:37-1(b) in Mack Auto and Fetrol, as well as the guidance provided by the reasons of the federal courts under the parties that precedes its entry. Our review of the order in question is further illuminated by the rule ... when we consider the present or these rule changes is of the parties that precedes its entry. Our review of the order in question is further illuminated by the rule changes ... known as "Best Practices." Indeed, the presence of these rule changes is of critical importance because it undoubtedly was out of a concern for the effect of the discovery end-date, which the "Best Practices" rule changes have given far greater rights than before, that led plaintiff to pursue his present course. | When a party moves to voluntarily dismiss an action, whether to dismiss with or without prejudice, whether to impose terms, and the crafting of terms that are fair and just in the circumstances, are all matters that lie within the court's sound discretion, in exercising that discretion, the court is chiefly required to protect the rights of the defendant. R. 4:37-1(b). | Does an examination into the propriety of a voluntary dismissal without prejudice require an investigation into the reasons for seeking the order as well as the actions or inactions of the parties that proceeded its entry? | 039202.docx | LEGALEASE-00128316 / LEGALEASE-00128317 | Condensed, SA, Sub 0.55 | 0.55 | 0 | 1 | | 1 | |
| 15403 | Commonwealth Tel. Co. v. Carley, 192 Wis. 464 | 317.H+112 | Section 196.01 of the Statutes defines the term "public utility," and under this definition the distinguishing and important feature which stamp a business as a public utility consists of the furnishing of those things specifically embodied within the term. It is for the public, in determining whether a corporation is a public utility, and therefore subject to the control of the Railroad Commission. Go as public utility, control Stats v. Public Service Commission, 275 Wis. 483, 205, S.W. 16, 184 L. 9, 716. Chippewa Power Co. v. Railroad Commission, 188 Wis. 246, 205 N. W. 900, it was held that the legislative definition of a public utility was intended to include all corporations that were furnishing as public utility under the provisions of chapter 196, that, applying the holding of the Chippewa Case above referred to, to the existing instant case, it is not the purpose of the legislature that the company is held to render service to public utilities, even though they were not engaged in private corporations, where in fact they operated as public utilities, and notwithstanding the fact that they had not complied with the provisions of the Public Utility Act, which includes the anticipation statute. | Whether corporation is public utility, subject to control of Railroad Commission, is determined by its acts. | Should the rules on what a charter of a corporation says it does, while determining whether it is a public entity? | 043683.docx | LEGALEASE-00128295 / LEGALEASE-00128296 | Condensed, SA, Sub 0.91 | 0.91 | 0 | 1 | | 1 | |
| 15404 | Cent.Tr. Co. v. Cumant Co., 26 F.2d. App. 410 | 317.H+101 | We cannot agree with the contention that the Cumant Company must be regarded as engaged in a public utility business because at the time the instant mortgage was made it had the charter power to engage in this business and proposed to do so, as an adequate statute. It provides that Company authorizing it to engage in the cold storage business. It has subsequently held that the fact that under its articles of incorporation a company might have engaged in a public utility business does not ipso facto make it so. The charter merely gives a naked authority to do the business, but until it engages in actual operation it does not make the company a public utility. DeRoux University v. Public Serv. Comm., 253 Fed 848; State v. Public Serv. Comm., 275 Mo. 483, Del. Max Motor, Light & Power Co. v. Echterman, 167 Cal. 666, McCullagh v. Railroad Comm., 195 Cal. 21. Terminal Taxicab Co. v. District of Columbia, 241 U.S. 252, the court said on this question: "The important thing is what it does, not what it may by charter says." To be same effect is United States v. Brooklyn Eastern Dist. Terminal, 249 U. S. 296. | The fact that articles of incorporation authorize company to engage in public utility business, within purview of state statute requiring public utilities commission to authorize mortgage by public utility, does not make corporation a public utility and mortgage by public utility within state statute operated. S.H.A. ch. 111/2/321, §27. | Is a charter created authority to do business its companies? | 043685.docx | LEGALEASE-00128299 / LEGALEASE-00128301 | Condensed, SA, Sub 0.71 | 0.71 | 0 | 1 | | 1 | |

2720

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15405 | In re Rebel Rents, 307 B.R. 171 | 366+38 | Like other equitable remedies, a right to subrogation may be lost by waiver, laches, or estoppel. See Jack v. Wong Shee, 33 Cal.App.2d 402, 92 P.2d 449, 454 (1939) (holding that party waived right to subrogation by asserting an inconsistent legal theory, and thereby depriving other creditors of opportunity to protect their interests). See generally, 73 Am.Jur.2d Subrogation " 131"133, at 684"85 (1974). There are four basic elements to the defense of equitable estoppel: (a) the party to be estopped must know the facts; (b) the party to be estopped must either intend that its conduct will be acted upon or act in a manner that the party asserting estoppel has a right to believe it is so intended; (c) the party asserting estoppel must be ignorant of the true facts; and (d) the party asserting estoppel must rely on the conduct to its injury. Associated Vintage Group, 283 B.R. at 567; Kelley v. South Bay Bank (In re Kelley), 199 B.R. 698, 705 (9th Cir. BAP 1996); Heritage Hotel Ltd. P'ship I v. Valley Bank of Nev. (In re Heritage Hotel P'ship I), 160 B.R. 374, 378 (9th Cir. BAP 1993). | Like other equitable remedies, right to subrogation may be lost by waiver, laches, or estoppel. | "Can you lose subrogation rights by waiver, laches, or estoppel?" | 043266.docx | LEGALEASE-00128401-LEGALEASE-00128402 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 15406 | Wright v. Smith, 124 N.E.2d 363 | 13+65 | It is obvious from an examination of the record that the conclusion of the Court below that there was no substantial departure by defendants from the essential faith of the local church as it existed at the time of its origin, is sustained by the record. The evidence fails to support plaintiffs contention that the church property was being devoted to doctrines, tenets, or practices contrary to the purposes of the founder. The rights of the parties in equity were properly determined as of the date of the entry of the decree. Darmstadt v. Horwitz, 298 Ill.App. 523, 19 N.E.2d 105; Town of Kaneville v. Meredith, 361 Ill. 556, 198 N.E. 857. | Rights of parties in equity are properly determined as of the date of the entry of the decree. | Are the rights of parties in equity determined as of the date of the entry of the decree? | 006181.docx | LEGALEASE-00128737-LEGALEASE-00128738 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 15407 | Henson v. Bank of Am., 935 F. Supp. 2d 1128 | 83E+417 | If an instrument is payable to bearer, it may be negotiated by transfer of possession alone. "[E]vidence that the Note itself has been indorsed [sic] in blank and that the Defendant is the holder of that Note is sufficient evidence of the Defendant's interest in the Deed of Trust." "Whether or not [the original lender] executed any separate assignment of the Deed of Trust to the Defendant is not relevant because proof that the Defendant is the holder of the Note is conclusive as to Defendant's interest in the Deed of Trust." | Under Colorado law, if an instrument is payable to the bearer, it may be negotiated by transfer of possession alone. | Can an instrument payable to bearer be negotiated by transfer of possession alone? | Bills and Notes - Memo 157 - RK.docx | ROSS-003312636-ROSS-003312637 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 15408 | Bank of New York v. Raftogianis, 418 N.J. Super. 323 | 83E+426 | The negotiation of the instrument, on the other hand, requires both a transfer of possession and an endorsement by the holder. An instrument which is payable to bearer may be negotiated by transfer alone. Put otherwise, an instrument payable "to order" can be negotiated by delivery with an endorsement, while an instrument payable "to bearer" can be negotiated by delivery alone.N.J.S.A. 12A:3"201. To enforce the note at issue here, as a holder pursuant to N.J.S.A. 12A:3"301, plaintiff would have to establish that it received the note, through negotiation, at the appropriate time. That would require that the note be endorsed prior to or at the time of delivery, either in favor of plaintiff or in blank. | A note initially made payable "to order" that becomes a bearer instrument by being endorsed in blank can be both transferred and negotiated by delivery alone. N.J.S.A. 12A:3-109(c). | Can an instrument payable to bearer be negotiated by transfer of possession alone? | 009364.docx | LEGALEASE-00129016-LEGALEASE-00129017 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 15409 | Colt v. Mt. Princeton Trout Club, 78 P.3d 1115 | 101+1526(2) | In a closely held corporation, the relationship between directors and shareholders is akin to a relationship among partners. Directors owe the highest degree of loyalty and trust to the other shareholders, are required to exercise good faith, and may not use their power to harm the other shareholders. Pueblo Bancorp. v. Lindoe, Inc., 37 P.3d 492 (Colo.App.2001), aff'd, 63 P.3d 353 (Colo.2003). | In a closely held corporation, the relationship between directors and shareholders is akin to a relationship among partners; directors owe the highest degree of loyalty and trust to the other shareholders, are required to exercise good faith, and may not use their power to harm the other shareholders. | Is the relationship between shareholders in a closely held corporation analogous to that of partners? | 022046.docx | LEGALEASE-00128972-LEGALEASE-00128973 | Condensed, SA | 0.24 | 0 | 1 | 0 | 1 | |
| 15410 | Goedmakers v. Goedmakers, 520 So. 2d 575 | 401+5.1 | Clearly, many in personam actions involve real property. However, the presence of real property as an issue does not make it a local action. Whether or not the action is local or transitory depends upon the underlying major question in the case. Lakeland Ideal Farm & Drainage District v. Mitchell, 97 Fla. 890, 122 So. 516 (1929). As the Fourth District explained in Sales v. Berzin, 212 So.2d 23, 24 (Fla. 4th DCA 1968), when a plaintiff seeks to compel a change in the title to real property, the local action rule requires the suit to be brought in the county where the land is situated. However, when the suit is merely for payment of money, such as the purchase price of the property, there is no "property in litigation" and the third alternative location specified in the venue statute is not available to the plaintiff. Id. at 25. See also Coon v. Abner, 246 So.2d 143 (Fla. 3d DCA 1971) (in suit for cancellation of note on real property located in Dade County, venue proper in Orange County where note was executed and made payable, not in Dade County); Royal v. Parado, 462 So.2d 849 (Fla. 1st DCA 1985) (action for rescission or cancellation of contract for sale or exchange of land is transitory, not local action required to be brought where the land is located); Jutagir v. Marlin, 453 So.2d 503 (Fla. 3d DCA 1984) (complaint to rescind agreement to sell land to which there was counterclaim for specific performance is purely an in personam action and not a local action which had to be heard where the land was located); St. Laurent v. Resort Marketing Associates, Inc., 399 So.2d 362 (Fla. 2d DCA 1981) (in suit for breach of sales marketing agreement for sale of ownership units at condominium resort located in Monroe County, no property in litigation, as such). | When suit is merely for payment of money, such as purchase price of property, there is no "property in litigation" and venue cannot be asserted on that basis. West's F.S.A. S 47.011. | When a lawsuit is for payment of money such as the purchase price of the property can the action come under the mandatory venue statute? | 047492.docx | LEGALEASE-00128879-LEGALEASE-00128880 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,873) | Selection & Arrangement (21,876) | Multiple Differences (9,029) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15411 | Residential Sav. Mortg. v. Keesling, 73 So. 3d 285 | 401=8.2 | | Venue on mortgagor's action against mortgagee for fraud and negligence (said in italics) in this county where the "corporation has...or in reality means...in effect for transaction of its customary business." [2] "where the cause of action accrued." ... | Can real property be considered in litigation for venue purposes (based on prior litigation)? | 047560.docx | LEGALEASE 00328893 - LEGALEASE 00328894 | Condensed, SA, Sub 0.54 | | 0 | | | 1 | |
| 15412 | Champion Auto Sales v. Polaris Sales, Inc., 943 F. Supp. 2d 346 | 25T=139 | | he FAA expresses a strong federal policy favoring arbitration. Ragone v. Atl. Video Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010). ... | How do courts enforce privately negotiated arbitration agreements? | Alternative Dispute Resolution - Memo 489 - JK.docx | LEGALEASE 00358876 - LEGALEASE 00358877 | Condensed, SA, Sub 0.66 | | 0 | | | 1 | |
| 15413 | Consol. Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson, 645 F. Supp. 884 | 25T=138 | | The claim in Court I, which CBL alleges arises under paragraph 44 of the charter party, seems to fall squarely within the scope of the arbitration clause quoted above. ... | Should arbitration clauses are to be generally construed and if doubts resolved in favor of arbitration? | 007312.docx | LEGALEASE 00125033 - LEGALEASE 00129104 | Condensed, Order, SA, Sub 0.72 | | 0 | | | 1 | |
| 15414 | Sea Pines Ass'n for Prot. of Wildlife v. S.C. Dep't of Nat. Res., 345 S.C. 594 | 307=6(2) | | To have standing, one must have a personal stake in the subject matter of the lawsuit. In other words, one must be a real party in interest. Charleston County Sch. Dist. v. Charleston County (Harleston Comm.) 384 S.C. 174, 533 S.E.2d 266 (2000). "A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action... | Who is a real party in interest? | Appeal and error - Memo 33 - RK.docx | ROSS 000300703-ROSS-000300705 | Condensed, SA | | 0 | | | 1 | |
| 15415 | Landers v. Joerger, 15 Ariz. 480 | 30=13 | | The tight to have the case reviewed by this court upon one or the other proceeding is evident. But, as we understand the law, while a valid, subsisting judgment is pending in the court on the other proceeding as the... | Can a writ of error be preserved when a valid subsisting appeal is pending? | Appeal and error - Memo 16 - RK.docx | ROSS 000330002-ROSS-000330003 | Condensed, SA, Sub 0.59 | | 0 | | | 1 | |
| 15416 | Delta Acceptance Corp. v. Goldman, 388 So. 2d 85 | 83T=417 | | Defendant's contention that plaintiff has no right of action is based upon the fact that the note was endorsed conditionally (Beers v. Creditors Corporation with recourse by plaintiff. The low prior to January 1, 1975 was that a note made payable to "myself" and endorsed in blank by the maker became payable to bearer upon delivery... | Does an instrument which is originally bearer paper remain so after special endorsements? | Bills and Notes - Memo 161 - RK.docx | ROSS 000297926-ROSS-000297929 | Condensed, SA, Sub 0.82 | | 0 | | | 1 | |
| 15417 | Sierra Club, Inc. v. U.S. Forest Serv., 897 F.3d 582 | 149E=679 | | Our standard of review is a deferential one, and we will reverse the Forest Service's action only if it is "arbitrary, capricious, otherwise not in accordance with the law, or not supported by substantial evidence... | What standard of review is used in reviewing the Forest Services' actions? | 047564.docx | LEGALEASE 00129117 - LEGALEASE 00129118 | Condensed, SA, Sub 0.64 | | 0 | | | 1 | |

2722

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 15418 | Island Wetlands & Watercourses Comm'n of Town of Washington v. Andrews, 137 Conn. App. 359 | 30-4 | The court properly determined that, in the circumstances of this case, the defendants could not appeal the dismissal of their mandamus action because the orders of the commission had become final. The defendants did not appeal from the commission's determination denying their request for an exemption from the act, nor did they appeal from either of the commission's cease and desist orders. The proper way to vindicate a legal position is not to disobey the orders, but rather to challenge them on appeal. See Avalonbay Communities, Inc. v. Orange, 256 Conn. 557, 567, 775 A.2d 284 (2001) … | Proper way to vindicate a legal position is not to disobey the court orders, but rather to challenge them on appeal. | What is the proper way to vindicate a legal position? | Appeal and error - Memo 38 - RK.docx | ROSS-003134171-ROSS-003134172 | Condensed, SA, Sub 0.91 | 0.91 | 0 | | | 1 | |
| 15419 | Serio Co. v. Childs Europe, 199 Ga. App. 846 | 30-14(6) | Although under OCGA § 5-6-34(a), a cross-appeal may survive the dismissal of the main appeal, "this is true only where the cross-appeal can stand on its own merit." Jones Roofing & Const. Co. v. Roberts, 179 Ga. App. 169, 170, 345 S.E.2d 618 (1986) … | Although cross appeal may survive dismissal of main appeal, this is true only where cross appeal can stand on its own merit. O.C.G.A. § 5-6-48(e). | When can a cross appeal survive dismissal of the main appeal? | Appeal and error - Memo 76 - RK.docx | ROSS-003134194-ROSS-003134197 | Condensed, SA 0.9 | 0.9 | 0 | 1 | 0 | 1 | |
| 15420 | Corona v. Lenh, 357 F. Supp. 1357 | 34-3(1) | Complete judicial review, however, does not automatically follow a finding of subject matter jurisdiction. If an army ruling are found to be discretionary, then absent unusual circumstances, they are beyond the power of review of civilian courts … | If army ruling are found to be discretionary they are beyond power of review of civilian courts in absence of unusual circumstances. | Are discretionary rulings of an army be subject to judicial review? | 00879.docx | USA4EX 00129350 USA4EX 00129351 | Condensed, SA, Sub 0.57 | 0.57 | 1 | | | 1 | 1 |
| 15421 | People v. Borgen, 282 Ill. App. 3d 116 | 67+2 | According to the supreme court, the offenses of residential burglary and burglary are mutually exclusive, i.e., residential burglary can be committed only in a dwelling place, whereas burglary cannot. People v. Childress, 158 Ill. 2d 275, 302, 198 Ill. Dec. 794, 633 N.E.2d 635 (1994) … | Offenses of burglary and residential burglary are mutually exclusive, i.e., residential burglary can be committed only in dwelling place, whereas burglary cannot. S.H.A. 720 ILCS 5/19-1(a), 19-3(a). | Are burglary and residential burglary mutually exclusive offenses? | Burglary - Memo 43 - RK.docx | ROSS-003129318-ROSS-003129320 | Condensed, SA, Sub 0.3 | 0.3 | 1 | 1 | | 1 | |
| 15422 | People v. Mooney, 145 Cal. App. 3d 502 | 67+2 | At common law no burglary could be accomplished without a "breaking" accompanied by the entry into the object to be burgled. [People v. Holt,] 190 Cal.App.3d 60, 64, 236 Cal.Rptr. 261, 240. By statute, the "breaking" element … | In order to commit a auto burglary, the vehicle must be locked and entry made without consent of the owner. West's Ann.Cal.Penal Code § 459. | How is auto burglary committed? | Burglary - Memo 65 - RK.docx | ROSS-003127204-ROSS-003127205 | SA, Sub 0.92 | 0.92 | 0 | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 15423 | United States v. Stinson, 2281 F.Supp.3d 739 | 350H+1263 | In Taylor, 495 U.S. at 598, 110 S.Ct. 2143, the Supreme Court defined generic burglary. The plurality first looked to the various ways burglary is defined under the enumerated clause of the ACCA or "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." … | "Generic burglary," as enumerated predicate prior violent felony, as basis for sentence enhancement under the Armed Career Criminal Act (ACCA), "is an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime. 18 U.S.C.A. § 924(e)(2)(B)(ii)." | What is a generic burglary? | 031315.docx | LEGALEASE-00129656-LEGALEASE-00129658 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 15424 | D.S.S. v. State, 806 So. 2d 554 | 67+7 | Ownership for the purposes of charging burglary is not the same as ownership in property law since burglary is a disturbance to habitable security and not to the fee. [Actual ownership is not required, rather] ownership means any possession which is rightful as against the burglar and is satisfied by proof of special or temporary ownership, or possession, or control. West's F.S.A. § 810.02. | Ownership for the purposes of charging burglary is not the same as ownership in property law since burglary is a disturbance to habitable security and not to the fee; actual ownership is not required, rather ownership means any possession which is rightful as against the burglar and is satisfied by proof of special or temporary ownership, or possession, or control. West's F.S.A. § 810.02. | Is burglary a disturbance to habitable security? | Burglary - Memo 50 PK.docx | ROSS-000300893-ROSS-000300894 | SA, Sub | 0.07 | 0 | | 1 | | |
| 15425 | Bagarty, Unified Sch. Dist. No. 298 of Lincoln Cty., Kansas, 432 F. Supp. 895 | 141F+194 | Plaintiff's tenure was dismissed mid-year while under contract with defendant. Kansas law holds "the property interest in a teacher's contract obligates the government agency (the school board) to grant the teacher notice of a proposed dismissal and a hearing at which she can fairly be informed of the reasons for dismissal and challenge their sufficiency." Weitt v. Sch. Dist., 459 F.2d at 838, page 840, 41 L.Ed.2d 401. See also, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Furthermore, Kansas "continuing contract" law indicates that "the Kansas legislature, as a matter of public policy, recognized a valuable interest by a public school teacher in the expectancy of continued employment… The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectable interest." Endicott v. Van Petten, 330 F.Supp. 878, 882 (D.Kan. 1971). Therefore, at the time of plaintiff's dismissal, Kansas law provided a teacher with a property right not only in his current contract but also in future "continuing" contracts. | The purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectable interest. | What is the purpose of tenure and continuing contract laws? | Education - Memo # 76 - C M.docx | LEGALEASE-00293770-LEGALEASE-00293771 | Condensed, SA, Sub 0.88 | 0.88 | | 1 | | | |
| 15426 | Wood v. Strickland, 420 U.S. 308 | 141E+795 | Given the fact that there was evidence supporting the charge against respondents, the contrary judgment of the Court of Appeals is improvident. It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal-court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. See Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968); Tinker, supra, 393 U.S. at 507, 89 S.Ct. at 736. | It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. | Do public high school students have substantive and procedural rights while at school? | 010078.docx | LEGALEASE-00129275-LEGALEASE-00129276 | Condensed, SA | 0.88 | 0 | 0 | 1 | | |
| 15427 | Quick v. Anderson, 238 Or. 453 | 228+197 | A nonsuit is a judgment (ORS 18.230) is voluntary if made pursuant to plaintiff's motion. In the absence of a counterclaim it must be granted as a matter of right, if made before the issues have been joined. It is discretionary with the court if the issues have been joined and the refusal has commenced. A judgment of nonsuit is the only method of "dismissing" an action, as distinguished from a suit in equity. Mallory v. Day, 48 Or. 312, 314, 86 P. 432 (1907). | A judgment of nonsuit is the only method of dismissing an action, as distinguished from a suit in equity. | Is judgment of nonsuit the only method of dismissing an action at law? | Pretrial Procedure - Memo # 1163 - C BP.docx | ROSS-000301093-ROSS-000301094 | Condensed, SA | 0.76 | | | | | |
| 15428 | Robinson v. Gen. Mills Restaurants, 110 N.C. App. 633 | 307A+513 | Rule 41 of the North Carolina Rules of Civil Procedure of North Carolina. Specifically, N.C. Gen. Stat. § 1A-1, Rule 41 (1990), require that a motion to dismiss of intention or party actually to dismiss and that a summons contains the title of the cause, the name of the court and the county, specifies the action has been commenced. With respect to the requirements for a notice of voluntary dismissal, however, the rules are silent. Indeed, a party may take a voluntary dismissal by oral declaration in open court Danielson v. Cummings, 300 N.C. 175, 179, 265 S.E.2d 161, 164 (1980). The crucial element in a voluntary dismissal is the intention of the party actually to dismiss the case. See Thompson v. Newman, 331 N.C. 709, 189 S.E.2d 407 (1993), vacated in part on other grounds, 331 N.C. 709, 417 S.E.2d 224 (1992). | Crucial element in notice of voluntary dismissal is intention to dismiss case. | Is the "crucial element" of a voluntary dismissal the intention of the party actually to dismiss the case? | 024700.docx | LEGALEASE-00129233-LEGALEASE-00129234 | Condensed, SA | 0.89 | | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15429 | Toscano v. Delgado, 506 S.W.2d 317 | 307A+501 | We recognize that, save in exceptional circumstances, the right of plaintiff, on timely demand, to take a nonsuit is unlimited. 4 McDonald, Texas Civil Practice, Judgments, Section 17.16.1"17.16.3 (1971 rev.). However, in this case plaintiff at no time moved to take a nonsuit before rendition of judgment. He did indicate to the court that if his motion for leave to reopen were denied, he would appreciate it if the court would delay rendering judgment until plaintiff had time to file a motion for a nonsuit. We know of no authority to support the contention that the court is under any obligation to delay rendition of judgment in order to allow plaintiff time to file a nonsuit. The record does not disclose that plaintiff ever made a timely Demand that he be allowed to voluntarily dismiss his action. | Save in exceptional circumstances, the right of plaintiff, on timely demand, to take a nonsuit is unlimited. | Is a plaintiff's right to take a nonsuit unlimited? | 024706.docx | LEGALEASE-00129251-LEGALEASE-00129253 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 15430 | First Am. Nat. Bank of Iuka v. Alcorn, 361 So. 2d 481 | 307A+502 | Although the right of a complainant to take a nonsuit is large, it is not unlimited and lies within the discretion of the court. Mitchell v. Film Transit Co., 194 Miss. 550, 13 So.2d 154 (1943). Griffith, Mississippi Chancery Practice, section 534 (2d Ed. 1950), states that a bill may not be dismissed when the defendant has secured some substantial right which will be destroyed by the dismissal. It further states that what constitutes a sufficient right in the defendant justifying a refusal of dismissal has never been embraced by any definite rule and illustrates with the following:. . . Where a bill has made a tender or other certain offers and a defendant by his answer has availed of the same, and thereupon joins in the prayer of the bill, or where the rights of infants would be prejudiced by a dismissal; or where interlocutory decrees have already been made adjudging some rights to the defendants upon the merits of some of the issues in the case; or where a motion to dissolve an injunction has been made. But the defendant acquires no rights by the mere fact that he has been put to the inconvenience or expense of a defense . . . . (s 534, p. 551) | Although right of a complainant to take a nonsuit is large, it is not unlimited and lies within discretion of court. Code 1972, S 11-7-125. | Is a plaintiff's right to take a nonsuit unlimited? | Pretrial Procedure - Memo # 1031 - C - KI.docx | LEGALEASE-00019272-LEGALEASE-00019274 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15431 | Alvarado v. Hyundai Motor Co., 885 S.W.2d 167 | 307A+501 | Tex.R.Civ.P. 162. The rule is designed to allow a plaintiff to avoid unexpected emergencies. 5 Roy W. McDonald, Texas Civil Practice " 27:39 (John S. Covell ed., 1992). The importance of the right to nonsuit was discussed by our supreme court in Hoodless v. Winter, 80 Tex. 638, 16 S.W. 427 (1891), as follows:The right of a plaintiff to take a nonsuit upon his own cause of action was considered of sufficient importance by the legislature to be given express recognition. Owing to unexpected contingencies that may occur during a trial, it is a privilege which it may become necessary for the most careful and diligent litigant to exercise, and it is important that the substance, and not the shadow alone, of the right shall be preserved. Id. 16 S.W. at 428. The current supreme court has recently reconfirmed the importance of the rule by stating that the plaintiff's right to a nonsuit is "important and firmly rooted in the jurisprudence of our state," and rule 162 is to be liberally construed in favor of that right. Aetna Casualty & Sur. Co. v. Specia, 849 S.W.2d 805, 806 (Tex.1993, orig. proceeding). The plaintiff's right to take a nonsuit, at any time before he has introduced all of his evidence other than rebuttal evidence, has been described as unqualified and absolute unless the defendant has filed pleadings seeking affirmative relief prior to the filing of the nonsuit. BHP Petroleum Co., Inc. v. Millard, 800 S.W.2d 838, 840 (Tex.1990, orig. proceeding); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982); KT Bolt Mfg. Co. v. Texas Electric Coops., Inc., 837 S.W.2d 273, 275 (Tex.App."Beaumont 1992, writ denied). In the case before us, Hyundai had not filed any pleadings seeking affirmative relief prior to the appellants' filing of the nonsuit. Hyundai did file and had been granted a partial summary judgment | Rule concerning nonsuits was designed to allow plaintiff to avoid unexpected emergencies. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Is the nonsuit rule designed to allow the plaintiff to escape from unexpected emergencies? | Pretrial Procedure - Memo # 1032 - C - KI.docx | LEGALEASE-00019275-LEGALEASE-00019276 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 15432 | Anderson v. Sonoco Prod. Co., 112 Ohio App. 3d 305 | 307A+501 | Thus, a plaintiff is the party who brings the action, and, pursuant to Civ.R. 41(A)(1), the plaintiff may voluntarily dismiss the action once, without prejudice, at any time prior to the commencement of trial. Anderson contends that he is a plaintiff in this action, and he should therefore be permitted to file a voluntary notice of dismissal pursuant to Civ.R. 41(A)(1), since the statutory provision that requires him to file a petition, R.C. 4123.512(D), provides further that after the filing of his petition, "[f]urther pleadings shall be had in accordance with the Rules of Civil Procedure." | "Plaintiff" is the party who brings action for purposes of rule providing that action may be dismissed by "plaintiff" without order of court by filing notice of dismissal before commencement of trial. Rules Civ.Proc., Rule 41(A)(1). | "Can a plaintiff voluntarily dismiss the action once, without prejudice at any time prior to the commencement of trial?" | Pretrial Procedure - Memo # 1167- C-BP.docx | ROSS-003326519-ROSS-003326520 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15433 | Judge of Prob. v. Abbot, 13 N.H. 21 | 307A+506.1 | At any time before the plaintiff opens his case to the jury, he may become nonsuit, as a matter of right. The entry of his action does not oblige him to proceed with it. Even if issue be joined, this does not entitle the defendant to a verdict, if the plaintiff elect to abandon his action. 12 Mass. R. 48, Haskell vs. Whitney. | Before opening his case, plaintiff may become nonsuit as a matter of right; after the opening and before verdict, he may, with consent of the court. | "Before opening his case, can a plaintiff become nonsuit as a matter of right?" | Pretrial Procedure - Memo # 1328 - C - RY.docx | ROSS-003300478-ROSS-003300479 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 15434 | Guglielmoni v. Diamond, 263 A.D. 1012 | 307A+501 | The case comes within the exceptions to the general rule that a plaintiff is entitled to discontinue an action upon appropriate terms, as a consequence of the appellant's being entitled to affirmative relief because of the counterclaim. Hayes v. 255"79th Realty Corp., 257 App.Div. 1048, 13 N.Y.S.2d 605. | Generally, a plaintiff is entitled to discontinue an action upon appropriate terms. | Is a plaintiff entitled to discontinue an action upon appropriate terms? | 039530.docx | LEGALEASE-00129374-LEGALEASE-00129375 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 15435 | Aucoin v. Fell, 779 So. 2d 1087 | 317A+114 | The appellant's argument is misplaced. We find no implied right to a utility easement or right-of-way in the provisions of Article 689, which simply provides a servitude of passage to an enclosed estate. This article has never been interpreted to allow for a utility right-of-way across a servient estate for the benefit of a dominant estate. We will not give it such a strained interpretation. | Articles providing means for owner of enclosed estate to access property by foot or vehicle through servitude of passage do not allow owner right of servitude of passage for utilities. LSA-C.C. arts. 689, 705. | Is an enclosed estate granted the right of servitude of passage for utilities? | Public Utilities - Memo 254 - AM.docx | LEGALEASE-00019503-LEGALEASE-00019504 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15436 | Mintz (Rotiks v. Alticor), 453 F.3d 695 | 25T=141 | An agent is subject to the same contractual provisions, including the arbitration contracts, to which the principal is bound | Next, Amway argues that the plaintiffs are bound by the arbitration agreement because they are agents of the principals/brokers. An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound. ... Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir.1993). Amway, however, has pointed to no evidence that the plaintiffs are agents for those companies because it has not demonstrated that they had actual or apparent authority to act on behalf of the products businesses. Amway cannot plausibly assert that it reasonably believed the plaintiffs had the authority of an agent when Amway's own Rules of Conduct mandate the terms of distributorship without input from potential entities. | Is an agent subject to the same contractual provisions, including arbitration contracts, to which the principal is bound? | 007346.docx | LEGALEASE 00130203-LEGALEASE-00130204 | Condensed, SA | 0.84 | 0 | | 1 | | |
| 15437 | Alcaraz v. Amex, 333 F. Supp. 1005 | 25T=146 | Employee's claims of national origin, age, and sex discrimination were not subject to arbitration, despite the fact that the arbitrator was authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages. | As noted above, the Agreement entered into by the parties contains the following language: "The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages." An arbitration clause ... prevents a party from excluding statutory claims from the scope of an agreement to arbitrate. Mitsubishi, 473 U.S. at 628, 105 S.Ct. at 3354. By including the above language in the Agreement, Avnet has done just that. If, by the terms of the Agreement, the arbitrator has no authority to award statutory damages under Title VII or the ADEA, then the parties could not intend to submit Title VII or ADEA claims to arbitration. An employee can only be required to arbitrate federal employment discrimination claims if s/he has contracted to do so. Armijo, 72 F.3d at 797 (citing Gilmer, 500 U.S. at 35, 111 S.Ct. at 1655*576). | Can an arbitrator exclude statutory claims from the scope of an arbitration agreement? | 007376.docx | LEGALEASE 00130215-LEGALEASE-00130216 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | |
| 15438 | Holder v. Wines Motor Co., 282 Motor 270 | 307A=743 | Pretrial order serves to present surprise, simplify the issues, and permit counsel to prepare their case for trial. | The State of arguments in relevant authority to support its argument that the State Court's review of the facts presented on the trial court must not be limited to the uncontested facts in a pretrial order. A pretrial order serves to "prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order." King v. Zimmerman (1994), 266 Mont. 54, 64, 878 P.2d 895, 901(citing Zimmerman v. Robertson (1995), 259 Mont. 105, 111, 854 P.2d 338, 342). It lists such facts as an uncontested, and if a party admits to a fact by allowing its inclusion in an uncontested part of a pretrial order, the party should not be allowed to raise that particular factual issue on appeal. Whitehawk v. Clark (1989), 238 Mont. 14, 19, 776 P.2d 484, 487 (citing Morrow v. Bank (1981), 200 Mont. 71, 647 P.2d 365). The pretrial order, however, includes only such facts as are uncontested. It does not preclude a party from seeking a trial on additional facts which remain in dispute. Nor does the pretrial order in and of itself limit the scope of this Court's review. On appeal, this Court may consider any aspect of a case in the record. Johnson, 884 P.2d at 273; even if it was not included in a pretrial order. Accordingly, if the dispositions in question will facilitate our review and consider them, just as are free to consider the entirety of the record not presented on appeal. | What does a pretrial order serve to do? | 010308.docx | LEGALEASE 00100038-LEGALEASE-00100041 | Condensed, SA | 0.92 | | 1 | 0 | | |
| 15439 | King v. Zimmerman, 266 Mont. 54 | 307A=743 | Purpose of pretrial orders is to prevent surprise, simplify issues, and permit counsel to prepare their case for trial on basis of pretrial orders. | The purpose of pretrial orders is to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order. Zimmerman, 854 P.2d at 342. In Zimmerman, under the unique facts present in that case, we held that permitting the introduction of a new factual matter which had never been raised in any of the pleadings, but rather was first raised during trial, would undermine the purpose of pretrial orders are intended to serve. Here, however, after reviewing the pretrial order, we find the defendants' arguments without merit. The pretrial order adequately sets forth the contentions as contained in the initial pleadings. Furthermore, no theories were advanced at trial which had not already been well established in the pleadings. There is no basis for the defendants to claim that they were "surprised" by the issues raised and had not been able to prepare for trial. | What is the purpose of pre-trial orders? | ROSS-003287920-ROSS-003287921 | ROSS-003287920-ROSS-003287921 | Pretrial Procedure - Memo # 1554 - C - CK.docx | | 0 | | | | |
| 15440 | Malette v. Gent, Reserve Life of N. Am. Ins. Co., 235 Neb. 541 | 307A=742.1 | Pretrial conferences are conducted to simplify issues, amend pleadings, and avoid unnecessary proof of facts at trial. | Pretrial conferences are conducted to simplify issues, amend pleadings, and avoid unnecessary proof of facts at trial. Bump v. Firemen's Ins. Co., 221 Neb. 678, 380 N.W.2d 268 (1986). They are also considered to avoid traps and surprises at trial. Fricke v. McConnell, 219 Neb. 328, 363 N.W.2d 272 (1985). | What are Pretrial conferences conducted for? | 024609.docx | LEGALEASE 00130019-LEGALEASE-00130020 | Condensed, SA, Sub | 0.84 | 0 | | 1 | 1 | 1 |
| 15441 | Frank v. Am. Gen. Fin., 23 F. Supp. 2d 1346 | 25T=143 | Existence of an arbitration agreement between a plaintiff and a defendant does not necessarily mean that all of the plaintiff's claims against the defendant are arbitrable under the agreement. | Second, the existence of an arbitration agreement between a plaintiff and a defendant does not necessarily mean that all of the plaintiff's claims against that defendant are arbitrable under the agreement. See e.g., Volt, supra, 489 U.S. at 478, 109 S.Ct. at 1253 ("The FAA does not require parties to arbitrate when they have not agreed to do so ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement."). Citing Dean Witter Reynolds v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 | Does the existence of an arbitration agreement between a plaintiff and a defendant mean that all of the plaintiff's claims against the defendant are arbitrable? | 007425.docx | LEGALEASE 00131386-LEGALEASE-00131388 | Condensed, Sub | 0.67 | 1 | 0 | 0 | 1 | |
| 15442 | People v. Beauchamp, 241 Ill.2d 1 | 65=2 | Under the statute, a person commits burglary when without authority he knowingly enters a motor vehicle, or any part thereof, with intent to commit therein a felony or theft. S.H.A. 720 ILCS 5/19-1(a). | Under the statute, a person commits burglary when without authority he knowingly enters a motor vehicle, or any part thereof, with intent to commit therein a felony or theft. 720 ILCS 5/19-1(a) (West 2006). The purpose of the burglary statute is "to protect the security and integrity of certain specified enclosures, including motor vehicles." People v. Bradford, 106 Ill.2d 492, 499, 88 Ill.Dec. 415, 478 N.E.2d 1341 (1985). A burglary is complete upon entering with the requisite intent, irrespective of whether the intended felony or theft is accomplished. People v. Clark, 30 Ill.2d 216, 219, 195 N.E.2d 641 (1964); People v. Beauchamp, 241 Ill.2d 1, 348 Ill.Dec. 461, 944 N.E.2d 319 (2011); People v. Pankey, 94 Ill.2d 12, 67 Ill.Dec. 804, 445 N.E.2d 284 (1983); People v. Palmer, 83 Ill.App.3d 732, 734, 39 Ill.Dec. 262, 404 N.E.2d 853 (1980). | What is the purpose of the burglary statute? | Burglary - Memo 32 - RK.docx | ROSS-003314342-ROSS-003314344 | SA, Sub | 0.79 | 1 | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15443 | Morris v. State, 166 Ga. App. 137 | 67+22 | Code Ann. " 27"701 provides that "every indictment of accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may easily be understood by the jury." A good indictment must state the offense charged in detail sufficient to give the defendant ample opportunity to prepare a defense. State v. Green, 135 Ga.App. 622, 218 S.E.2d 456 (1975); Allen v. State, 120 Ga.App. 533, 171 S.E.2d 380 (1969). More specifically, where the defendant is charged with burglary, the indictment must specify the location of the burglary, and contain some allegation regarding ownership of the burglarized premises. State v. Ramos, 145 Ga.App. 301, 243 S.E.2d 693 (1978); State v. Green, supra; Chester v. State, 110 Ga.App. 733, 140 S.E.2d 52 (1964). | Indictment for burglary must specify location of burglary, and contain some allegation regarding ownership of burglarized premises. Code, S 27-701. | Does a burglary indictment have to specify the location of the burglary? | 013296.docx | LEGALEASE-00131413-LEGALEASE-00131414 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15444 | People v. Tatem, 62 Cal. App. 3d 655 | 210+815 | By statutory definition, petty theft (or theft of any kind) is not a necessarily included offense of burglary because burglary can be committed without committing theft (see People v. Epps, 34 Cal.App.3d 146 and cases cited at p. 164, 109 Cal.Rptr. 733). Nor is petty theft a necessarily included offense under the accusatory pleading in this case, since the information nowhere alleges Tatem stole or took away the property of another. | By statutory definition, petty theft, or theft of any kind, is not a necessarily included offense of burglary, because burglary can be committed without committing theft. West's Ann.Pen.Code, SS 459, 484(a). | Is theft a lesser included offense of burglary? | Burglary - Memo 87 - JK.docx | ROSS-003286753-ROSS-003286754 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 15445 | State ex rel. Butte-Los Angeles Mining Co. v. Dist. Court of Second Judicial Dist., 103 Mont. 140 | 307A+501 | Other provisions of 18 Corpus Juris, where it treats of the subject of dismissal and nonsuit, we think are quite pertinent to this controversy. In section 5, page 1148, volume 18, it is said: "Plaintiff had no absolute right at all times and under all circumstances to discontinue, dismiss, or take a nonsuit, but such right is often dependent upon the effect it has on the rights of defendant, or upon the application being made at the proper time. | Plaintiff has no absolute right at all times under all circumstances to discontinue, dismiss, or take a nonsuit. | "Does a plaintiff have no absolute right to discontinue, dismiss or take a nonsuit?" | Pretrial Procedure - Memo # 1236 - C - UG.docx | ROSS-003327964-ROSS-003327965 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 15446 | Hutchison v. Seariver Mar., 22 So. 3d 989 | 307A+742.1 | After reviewing the correspondence between counsel, we find the defense- oriented jurisprudential exception to the abandonment rule applicable to this case. By virtue of the September 6, 2007 letter, counsel for SeaRiver specifically requested dates from counsel for Mr. Hutchison so that a scheduling order could be filed with the trial court. The ultimate purpose of a scheduling order is to hasten the matter to judgment by selecting deadlines for the parties to conclude all pretrial matters. Therefore, requesting a scheduling order is an act inherently inconsistent with an intent to treat a case as abandoned. Thereafter, on November 7, 2007, counsel for Mr. Hutchison provided to counsel for SeaRiver a signed scheduling order on the form provided by the trial court, which set proposed discovery cutoff dates and pre-trial deadlines. Mr. Hutchison's action in this regard clearly demonstrates his intent not to abandon his case. However, for reasons that are not disclosed in this record, the scheduling order was never filed with the trial court. | The ultimate purpose of a scheduling order is to hasten the matter to judgment by selecting deadlines for the parties to conclude all pretrial matters. | What is the purpose of a scheduling order? | Pretrial Procedure - Memo # 1432 - C - SKG.docx | ROSS-003299652-ROSS-003299653 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 15447 | In re Ashcroft, 888 F.2d 546 | 307A+742.1 | The most serious matter raised by the petition is the charge that the District Court attempted to coerce a settlement, by stating that the Governor would be dismissed as a defendant if he paid $500 in settlement to the plaintiff. The law does not countenance attempts by courts to coerce settlements. Kothe v. Smith, 771 F.2d 667 (2d Cir.1985); Del Rio v. Northern Blower Co., 574 F.2d 23 (1st Cir.1978). Pretrial-conference discussion of settlement is designed to encourage and facilitate settlement as early as possible, but it is not designed to impose settlement upon unwilling litigants. See Fed.R.Civ.P. 16(c)(7), Advisory Committee Note, 1983. | Pretrial conference discussion of settlement is designed to encourage and facilitate settlement as early as possible, but is not designed to impose settlement on unwilling litigants. Fed.Rules Civ.Proc.Rule 16 note, 28 U.S.C.A. | When is the encouragement of settlement a valid subject for consideration in pretrial conference? | 026489.docx | LEGALEASE-00131135-LEGALEASE-00131136 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15448 | LaRose v. Curoe, 343 N.W.2d 153 | 307A+742.1 | The rationale of the pretrial procedure, like that of the immunity rule itself, is to promote efficient and effective disposition of litigation. Effective pretrial conferences advance the same goal. Increasing court congestion, and the present emphasis on extensive pretrial conferences apparent in both the federal rule, Fed.R.Civ.P. 16, and our own, Iowa R.Civ.P. 66, suggest that full participation in such conferences should be encouraged. We conclude that Curoe's attendance at the pretrial conference was a sufficient basis for granting immunity from service of notice. | Rationale of pretrial conference is to promote efficient and effective disposition of litigation, and thus full participation in such conferences should be encouraged. Rules Civ.Proc., Rule 66; Fed.Rules Civ.Proc.Rule 16, 28 U.S.C.A. | What is the rationale of pretrial conference? | 027030.docx | LEGALEASE-00130946-LEGALEASE-00130947 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 15449 | Atkins v. Atkins, 177 Cal. App. 2d 207 | 307A+750 | The purpose of a pre-trial order is to make specific the legal theories on which each party is proceeding and to crystallize and formulate the issues to be litigated at the trial. Beckwith v. Rossi, 157 Me. 532, 175 A.2d 732 (1961). If the order did not control the ensuing proceedings, it would be rendered meaningless. However, this does not mean that there must be unswerving and rigid adherence to every provision; the pre-trial order was not intended to become "hoops of steel to bind the parties to frozen issues". Case v. Abrams, 352 F.2d 193, 195 (10th Cir. 1965). Indeed, M.R.Civ.P. 16(c) provides that the order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice " (emphasis added), thus sanctioning a certain degree of flexibility and adaptability to changing circumstances. | Purpose of pretrial order is to make specific legal theories on which each party is proceeding and to crystallize and formulate issues to be litigated at trial; however, this does not mean that there must be unswerving and rigid adherence to every provision. Rules of Civil Procedure, rule 16(c). | What purpose do pre-trial orders serve? | Pretrial Procedure - Memo # 2022 - C - SKG.docx | ROSS-003301326-ROSS-003301327 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15450 | Silicon Valley Taxpayers Ass'n v. Santa Clara Cty. Open Space Auth., 44 Cal. 4th 431 | 371+2061 | "A tax, on the other hand, is very different. Unlike a special assessment, a tax can be levied " "without reference to peculiar benefits to particular individuals or property."" [Citations.] Indeed, "[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied." [Citations.]. | Unlike a special assessment, a tax can be levied without reference to peculiar benefits to particular individuals or property. | Is special assessment similar to tax? | 044724.docx | LEGALEASE-00130853-LEGALEASE-00130854 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 15451 | Silverstein v. New York State Tax Appeals Tribunal, 106 A.D.3d 1146 | 371v2301 | A special assessment levy is defined to cover "charges... imposed upon lands for municipal purposes to defray the cost, including operation and maintenance, of a specific district improvement or service" (RPTL 102 [14]). A special assessment is a charge for similar purposes that is "imposed upon benefited real property in the same manner as such property" (RPTL 102 [15]). The Sanitary District meets the definition of a special district (see RPTL 102 [16]), and was created to maintain and operate the sewer systems within the properties that it serves. "Taxes are public burdens imposed generally for governmental purposes benefiting the entire community, whereas an ad valorem levy is an assessment imposed for specific municipal improvements which confer a special benefit on the property assessed beyond the general benefit conferred generally" (Matter of Crystal Vale Transm. Co. v. City of Elmira [N.Y. 2d 634, 638, 641, 627 N.Y.S.2d 100 [1995]; see Watergate II Apts. v. Buffalo Sewer Auth., 46 N.Y.2d 52, 58, 412 N.Y.S.2d 821, 385 N.E.2d 560 [1978]). All parcels within a special district are generally deemed to receive, at least to some extent, some actual benefit from the district's services or improvements, rendering all such parcels assessable by the district (see Skinner v. Village of Svan Beach, 133 A.D.2d 1000, 1001, 494 N.Y.S.2d 650 [1985]; see also Matter of Palmer v. Town of Richland, 191 A.D.2d 465, 721 N.Y.S.2d 814 [2001]; compare New York Tel. Co. v. Supervisor of Town of Oyster Bay, 4 N.Y.3d 387, 795 N.Y.S.2d 328, 828 N.E.2d 964 [2005]). The resolution creating the Sanitary District states that any costs of maintaining and operation of the district are "derived from sewer use rates... and other charges... shall be assessed, levied and collected from the several lots and parcels of land in said District in the same manner and as provided for District assessments..." | Taxes are public burdens imposed generally for governmental purposes | Are taxes generally imposed for governmental purposes? | 04269.docx | LEGALEASE-00130066-LEGALEASE-00130068 | Condensed, SA | 0.96 | | | | | | 1 |
| 15452 | Unite Here Local 217 v. Sage Hosp. Res., 217 F. Supp. 2d 616 | 231H+154(97) | The termination of a labor contract does not necessarily extinguish the duty to arbitrate disputes arising under it. Even if a dispute arises under [a] contract" construing an "arbitration" arbitration clause, the conflict "is subject to arbitration even in the postcontract period", Litton Fin. Printing, 501 U.S. at 205, 111 S.Ct. 2215, The First Circuit's opinion in South Bay-Boston Mgmt., Inc. v. UNITE HERE, Local 26, describes the standard for "post-expiration" disputes: "we must determine if the particular dispute has its real source in the contract, and if so, we must consider whether postexpiration arbitration of the issue was negated with respect to that dispute", 587 F.3d at 35, 42 (quoting United Paperwork. v. Union De Tronquista, 426 F.3d 640, 673 (1st Cir.2005)). | Even if court rather than arbitrator were to determine length of collective bargaining agreement between hotel and union, and their dispute over which requires status among hotel employees might be arbitrable after agreement had expired, controversy had its real source in that agreement, which neither expressly nor by clear implication include postexpiration arbitration of issues that legitimately arose under contract during effective dates. | What is the two-prong analysis which governs post expiration arbitrability of disputes? | Alternative Dispute Resolution - Memo 565 - RK.docx | LEGALEASE-00021308-LEGALEASE-00021309 | Condensed, SA, Sub 0.46 | 0.46 | | | | 1 | |
| 15453 | United States v. Panarella, 288 F. Supp. 2d 664 | 63+1(1) | Section 201(b) prohibits bribery, while "201(c) prohibits illegal gratuities. Bribery under "201(b) is punishable by imprisonment in prison for a term of not more than fifteen years, while payment or acceptance of illegal gratuities under "201(c) is probably by a term of imprisonment of up to two years. See 18 U.S.C. "201(b), (c). Therefore, for purposes of " 201(b), it matters whether a jury finds a defendant guilty of giving or receiving gratuities as opposed to giving or receiving bribes. Whether a payment is bribe or illegal gratuity under " 201 depends on the intent of the payor. A bribe requires that the payment be corrupt and be made to influence an official act or omission or a specific official act, while a gratuity "to a partisan made is a reward intended "corrupt" influence is connected with bribery under "201, "To convict a defendant of bribery, the government must prove a specific quid pro quo, that is, with "corrupt intent," somewhat, 66(3) (at 673). To convict a defendant of bribery an official act for omission) that the payee expected to occur in or event. No corrupt intent is otherwise required. The payor simply must make the payment "for or because of" some official act." Id. (quoting " 201(c)). | To convict a defendant of bribery, the defendant must have engaged in a quid pro quo. 18 U.S.C. A. 201(b). | Must quid pro quo be present for a bribery conviction? | 01225.docx | LEGALEASE-00132014-LEGALEASE-00132016 | Condensed, SA | 0.91 | | 1 | 0 | | 1 |
| 15454 | United States v. O'Brien, 994 F. Supp. 2d 167 | 63+1(1) | One of the elements that the government must prove under " 666 is that a bribe was paid more specifically, that "anything of value" with a purpose "with intent to influence or reward" that person. See generally United States v. Fernandez, 722 F.3d 1, 23 (1st Cir.2013). The phrase "anything of value" is construed broadly in federal bribery statutes and benefits. 18 U.S.C.A. § 666. The precise meaning of "anything of value," as used in several federal statutes that both broadly, as United States v. Robinson, 663 F.2d 265, 274 (7th Cir.2014). | Phrase "anything of value" in bribery statute is construed broadly, and includes intangible rights and benefits. 18 U.S.C.A. § 666. | "How should the phrase "anything of value" in the bribery statute be construed?" | Bribery - Memo #92 - C - ROSS-001283795-ROSS-001283796 | ROSS-001283795-ROSS-001283796 | Condensed, SA, Sub 0.74 | 0.74 | | | | 1 | |
| 15455 | Pritchard v. Sec. Tr. Co., of Rochester, 188 N.Y.S. 548 | 307A+411 | The Code of Civil Procedure provides that the court may compel a party to produce and discover, or to give to the other party an inspection and copy, or permission to take a photograph, of a book, document, or other paper, or to make a discovery or inspection of property in his possession or his control "relating to the merits of the action or of the defense." Code Civ. Proc. "803 The rule provides, among other things, that the plaintiff may be compelled to make a discovery which may be necessary to enable the defendant to answer the pleadings, and that either party may be compelled to make a discovery which may be necessary to enable the defendant to prepare for trial. (Code Civ. Proc. "803) Discovery extends to record, article, or property, relating to the merits of the controversy or issue, or some motion application therein, or a "competent evidence on the subject of the matter, and its discovery is necessary to enable the party to prepare for trial." (see. Rules of Practice, rule 14. The Code further provides that upon a hearing upon an order to show cause the court may make such an order with respect to the discovery and inspection prayed for "as justice requires." Code Civ. Proc. "807 These provisions should not be enforced unless it clearly appears that the case with the provisions relating to examination before trial. | The provisions of Code of Civil Procedure, §§ 803 and 807, and of General Rules of Practice, Rule 14, relating to discovery, should not be construed away by technical construction. | "Should the provisions relating to Discovery, be construed away by technical construction?" | 02769.docx | LEGALEASE-00130567-LEGALEASE-00130568 | Condensed, SA, Sub 0.87 | 0.87 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 15456 | Huangfu Chin v. Dist. Court of Fourth City, 283 Iowa 615 | 307A=331 | Whether a rule will be entered for the production of books and papers rests in the sound legal discretion of the court. Section 11316, 1931 Code; Allison v. Vaughn, 40 Iowa 421; Davis v. District Court, 195 Iowa 688, 192 N.W. 852. The statutes providing for the production of books and papers are remedial and should be liberally exercised on… [text continues] | The statutes providing for the production of books and papers are remedial and should be liberally construed. | "The statutes providing for the production of books and papers are remedial and should be liberally construed?" | 027483.docx | USLA.EX.00132364 USLA.EX.00132365 | Condensed, SA, Sub 0.84 | 0.84 | 0 | | | 1 | 1 |
| 15457 | Shelter Mut. Ins. Co. v. Vulgamott, 96 S.W.3d 96 | 307A=517.1 | Rule 67.02(a) provides that "a civil action may be dismissed by the plaintiff without order of the court any time prior to the introduction of evidence…" [text continues] "Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence it is as if the suit were never brought." In re Estate of Klaas, 8 S.W.3d 906, 909 (Mo.App. S.D.2000) (quoting Garrison v. Jones, 557 S.W.2d 247, 249-250 (Mo.App. E.D.1976)). | Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. | "Once a plaintiff files a voluntary dismissal of a claim, is it as if the suit had never been brought?" | Pretrial Procedure - Memo #2199 - C - DA.docx | ROSS-003327418-ROSS-003327419 | Condensed, SA | 0.86 | 1 | 0 | | 1 | |
| 15458 | Dse. v. Missouri Dept of Soc. Servs., 476 S.W.3d 359 | 307A=517.1 | Rule 67.02(a) provides that "a civil action may be dismissed by the plaintiff without order of the court…" [text continues] After a voluntary dismissal is filed, the circuit court may take no further steps as to the dismissed action, and any step attempted is viewed as a nullity. Mo. Sup. Ct. R. 67.02(a). | After a voluntary dismissal is filed, the circuit court may take no further steps as to the dismissed action, and any step attempted is viewed as a nullity. Mo. Sup. Ct. R. 67.02(a). | "Does a voluntary dismissal without prejudice render that cause of action a nullity?" | 028090.docx | USLA.EX.00132231 USLA.EX.00132232 | Condensed, SA, Sub 0.77 | 0.77 | 0 | 1 | 1 | 1 | |
| 15459 | Schmeer v. Cty. of Los Angeles, 151 Cal. Rptr. 3d 352 | 371=2001 | The term "tax" in ordinary usage refers to a compulsory payment made to the government or entity for the government. [text continues] | The term "tax" in ordinary usage refers to a compulsory payment made to the government or entity for the government. | "What does the term 'tax' in ordinary usage refer to?" | Taxation - Memo #157 - C - MJ.docx | ROSS-003309410-ROSS-003309411 | Condensed, Order, SA | 0.89 | 1 | 0 | 1 | 1 | |
| 15460 | Hac Fire Dist. v. U.S. Home of Arizona Const. Co., 213 Ariz. 489 | 371=2001 | The entity that imposed the assessment here, the fire district, is not the legislature or the electorate but, rather, a quasi-municipal agency enabled by the legislature to perform a specific function. [text continues] | Assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class. | "Is an assessment imposed on a broad class more likely to be a tax?" | 044809.docx | USLA.EX.00131522 USLA.EX.00131523 | Condensed, Order, SA | 0.89 | 1 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 15461 | Amalgamated Transit Union Local 587 v. State, 142 Wash. 2d | 371v2001 | Language in an initiative should be construed as the average informed voter voting on the initiative would read it. Amalgamated Transit, 142 Wn.2d 183, 11 P.3d at 764... | "Tax" is a pecuniary burden laid upon individuals or property to support the government, and is a payment exacted by legislative authority... | What are the essential characteristics of a tax? | 048818.docx | LEGALEASE 00131545-LEGALEASE 00131550 | Condensed, SA | 0.8 | 0 | 1 | 1 | 1 | |
| 15462 | City of Carrollton, to Use of Rauter v. Frost, 38 Mo. 125 | 371v2001 | "A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens or subjects, for the support of the State... | A tax, in its essential characteristics, is not a debt, nor in the nature of a debt, but is an impost levied by the government on its citizens for the support of the state. | Is a debt in its essential characteristics? | 048820.docx | LEGALEASE 00131551-LEGALEASE 00131552 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | | |
| 15463 | Deneen v. City of Seattle, 150 Wash. 2d 540 | 371v2001 | Because providing streetlights is a governmental function of the city, we must next determine if Ordinance 121947 imposes a tax or a fee to pay for those costs. Determining what is a tax or a fee... | Generally speaking, taxes are imposed to raise money for the public treasury. | Are taxes generally imposed to raise money for the public treasury? | 048827.docx | LEGALEASE 00131572-LEGALEASE 00131573 | Condensed, SA | 0.89 | 0 | 1 | 0 | | |
| 15464 | Griffin v. Dep't of Local Gov't Fin., 761 N.E.2d 716 | 371v2001 | This Court must support the State Board's argument that the tax is a "22 local tax because the legislature made mention to it under section (b)... | The nature of a tax must be determined by its operation and incidence, rather than by its title or designation made by the legislature. | Is it the manner of operation which determines the nature of a tax? | 049001.docx | LEGALEASE 00131899-LEGALEASE 00131900 | Condensed, SA | 0.8 | 0 | 1 | 0 | | |
| 15465 | Moro v. Coyle, 137 N.W.2d 290 | 371v2001 | This court has defined "tax" as an enforced contribution for public purposes and is in no way dependent upon the will or express consent of the person taxed... | A "tax" is an enforced contribution for the public purposes which dependent upon the will or consent of person or entity taxed? | Is tax in any way dependent upon the will or contract of the person or entity taxed? | 048944.docx | LEGALEASE 00131021-LEGALEASE 00131022 | Condensed, SA | 0.75 | 0 | 1 | 0 | | |
| 15466 | Swanson v. State, Dep't of Educ., 249 Neb. 466 | 371v2001 | Swanson also argues that he should be absolved of the burden and that liability for the penalty of which the Court imposed on him because his children in school district 1. This argument is no more effective than an argument that a homeowner should pay no property tax at all to support public schools if he or she has no school-age children... | Tax laws represent legislature's definition of measure of every citizen's duty in support of public burdens. | What do tax laws represent? | 048982.docx | LEGALEASE 00131947-LEGALEASE 00131948 | Condensed, SA | | 0 | 1 | 0 | | |
| 15467 | State ex rel. & to Use of Mooney v. Wabash R. Co., 357 Mo. 860 | 371v2001 | Taxation, which is taking of private property for public use, requires strict compliance with the law... | Taxation, which is taking of private property for public use, requires strict compliance with the law. A tax may be levied only when the proceeding therefor are wholly within the terms of a statute which authorizes it... Does taxation require a strict compliance with law? | Does taxation require a strict compliance with law? | 049092.docx | LEGALEASE 00131563-LEGALEASE 00131564 | Condensed, SA, Sub | 0.6 | 0 | 1 | 0 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 15468 | Clear Channel Outdoor v. Mayor & City Council of Baltimore, 153 F. Supp. 3d 865 | 371v2001 | The reduction line between tax and fee is determined by federal law." Bolt v. City of Birmingham, 2013 WL 398098, at 13 (No. 134-3 3d pt 1217). As a general matter, when evaluating whether a particular charge is a tax or a fee, a court should ask: "Whether the charge is for revenue raising purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee'." Valero Territorial Corp v. Caffrey, 205 F.3d 130, 134 (4th Cir 2000). All charges fall on a spectrum with a "classic tax" on one end and a "classic fee" on the other. San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of P.R., 967 F.2d 683, 685 (1st Cir 1992). "The 'classic tax' is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large." Valero, 205 F.3d at 134 (quoting San Juan Cellular, 967 F.2d at 685). "The 'classic fee' is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise 'money placed in a special fund to defray the agency's regulation-related expenses.'" Id. (quoting San Juan Cellular, 967 F.2d at 685) | The 'classic tax' is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large. | On whom is a "classic tax" imposed upon? | 04554.docx | USA/LEASE-00131909-USA/LEASE-00131910 | Condensed, SA | 0.88 | | 0 | | | |
| 15469 | Martin v. Insta. Comm'n, 75 Ariz. 403 | 413v3 | Our Workmen's Compensation Law does not provide for a general Health and accident coverage, hence every accidental death of an employee is not compensable. | Workmen's Compensation Law does not provide for general Health and accident coverage, and therefore every accidental death of an employee is not compensable. | What types of acts are not compensable under workmens compensation laws? | 04781.docx | USA/LEASE-00131717-USA/LEASE-00131718 | Condensed, SA, Sub | 0.01 | | 1 | | 1 | |
| 15470 | Louisiana State Bar Ass'n v. Pilard, 462 So. 2d 178 | 63v1(1) | One of the essential elements of public bribery is conscious knowing intent to influence a person's conduct. LSA R.S. 14:118 is a conscious knowing intent to influence a person's conduct. In this case, although there is no such showing, one of the essential elements of the crime of conspiracy to violate a criminal law is specific intent. The issue of intent of the respondent's intent is relevant to this Court in affirming his conviction. This Court said, "although Pilard may not have had thought his actions were criminal, both he and DeMaria clearly intended to influence the conduct of potential witnesses." Pilard v. DeMaria, LSA 40 (at 123). | One essential element of public bribery is conscious knowing intent to influence a person's conduct. LSA-R.S. 14:118. | Is intent an element of bribery? | 01344.docx | USA/LEASE-00131846-USA/LEASE-00131847 | Condensed, SA | 0.8 | | 1 | | 1 | |
| 15471 | People v. Jordan, 15 Ill. App. 3d 672 | 63v1(1) | This statute clearly indicates that a person's receipt of property is not alone enough to sustain a bribery conviction. Receipt of such property must not merely be legally authorized but additionally must be accepted. "Knowing that such property * * * was * * * tendered with intent to cause him to influence the performance of any act related to the employment or function of a public officer, agent or public employee or juror * * *." In this case cited by the State, People v. Gralewski, 132 Ill App 2d 755, 270 NE 2d 566, the evidence was clear that the defendant solicited and accepted a remuneration in order to keep a witness from testifying. In the instant case, no evidence was produced at trial regarding any criminal purpose or intent on the part of defendant nor was there any evidence that defendant summoned that particular ambulance as alleged in the indictment. In those circumstances the mere fact (at 123) that defendant may have accepted a gratuity, however, the acceptance of a gratuity without more will not sustain a conviction for bribery. | A person's receipt of property is not alone enough to sustain a bribery conviction. S.H.A. ch. 38, § 33-1(d). | Is a persons receipt of property enough to sustain a bribery conviction? | 01405.docx | USA/LEASE-00131318-USA/LEASE-00131319 | Condensed, SA, Sub 0.9 | 0.9 | | 1 | | 1 | |
| 15472 | United States v. Hyde, 448 F.2d 815 | 63v1(1) | It is the wrongful use of an otherwise valid power that converts dutiful action into extortion. What the prosecutor and other enforcement actions to make the action constitutes extortion. If another way, it is the right to impose legal determination of the issue between the parties as to whether to enforce the laws or whether to police or strike) that the victim is deprived of when those actions are taken for the purpose of coercing him into paying. The distinction from ordinary bribery is therefore the initiative and purpose on the part of the official and the fear and lack of voluntariness on the part of the victim. | Distinction between extortion by public official and acceptance of bribery is initiative and purpose on part of official and fear and lack of voluntariness on part of victim. 18 U.S.C.A. § 1951. | What is the distinction between extortion by public official and acceptance of bribe? | 01430.docx | USA/LEASE-00131383-USA/LEASE-00131384 | Condensed, SA | 0.69 | | 1 | | 1 | |
| 15473 | U.S. v. Cohn, 1281-651 | 283v1331 | Upon the making of a law that the learned counsel for the government is understood to have admitted orally that substantially the only evidence connecting Cohn with the conspiracy was to be found in the last of his replies to Buckner in L.A. S. Rosenthal & Co., and his duties in the business of such firm. While this seems to us much narrow the evidence against Cohn, yet after a most careful consideration of the evidence, it is thought that counsel brought the discussion to the very essential and crucial point of the inquiry. The argument against Cohn may be stated thus: Cohn was at the head of the sales agency or firm which had the sale of the prices of goods. To do this he must have known the cost of the goods, and therefore was bound to know the firm that ought him, one of which was the duty paid upon them, and thereby learned, if he had not obtained notice of it. Therefore from other sources, that there was a fraud against the government, in the depriving the government of proper duties. Moreover, as a partner, he could not but have known of the large savings of duty and of disbursements to corrupt the examiners. It is a rule of criminal cases that a partner is not charged by the criminal acts of his copartners, or others acting in his behalf of the firm, without his knowledge thereof. The law is based for all acts done in obedience to the law, to which there are authorities cases and liabilities for fraudulent acts or representations done or made by a partner or an agent for the purpose of affecting the firm's business is not considered that, in the absence of some special statute bearing upon the particular acts of a firm, whereby each member of the firm is made liable for the acts of his copartner, found guilty of crime unless some partner or agent has done any thing that would justify his or their punishment. However, there would be very strong presumption that, if a person were a member of a firm regularly | A partner is not chargeable with criminal acts of his copartner or others, acting in behalf of the firm, unless he has knowledge thereof. | If a partner possess guilty knowledge of the criminal acts of his copartner, can he be criminally liable? | 02133.docx | USA/LEASE-00131541-USA/LEASE-00131542 | Condensed, SA | 0.97 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15474 | Brown v. Bateh, 331 So.2d 671 | 289+715 | We would emphasize, however, that the right to partition in partnership dissolution does not arise until after the creditors have been satisfied. Obviously the creditors have a right to have their demands satisfied out of partnership property.But also, as Brown forcefully urges and Bateh admits somewhat obliquely, a partner has a right to demand that the partnership property first be applied to the satisfaction of partnership debts. Granted, a partnership creditor can sue any partner individually for the payment of all of part of a partnership debt. A partnership debt is, admittedly, the joint and several obligation of the partners. Yet Title 43, s 31 plainly gives a partner the right to require that the partnership property be applied to the payment of partnership debts. If his individual property has been used to satisfy such debts, he has the right to indemnification from partnership property. The policy behind Title 43, s 31 was that partnership property be used to pay partnership debts; separate individual property, to pay private debts. A partner has a right to protect his private property from the demands of partnership creditors, if there is partnership property that can satisfy the partnership debts. | A partner has a right to protect his private property from the demands of partnership creditors, if there is partnership property that can satisfy the partnership debts. Rules of Civil Procedure, rule 65(d). | Can the private property of individual partners be used to pay off partnership debts? | Partnership - Memo 301 - RK.docx | ROSS-003290539-ROSS-003290540 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 15475 | King v. Mississippi Power & Light Co., 244 Miss. 486 | 302+8(17) | This Court, in the case of City of Hattiesburg v. Hillman, Adm'x, 222 Miss. 443, 76 So.2d 368, in quoting from 65 C.J.S. Negligence " 21b, pp. 432"433, said that an act "which may be prevented by the exercise of ordinary care is not an act of God." It is nevertheless true that the allegation of negligence set out in the declaration in the case now before the Court is not sufficient to establish a cause of action showing negligence of appellee prior to the electrocution of the cattle. A mere charge of negligence does not demonstrate actionable negligence. Brown et al. v. City of Vicksburg et al., 108 Miss. 510, 66 So. 983. Moreover, the pleadings will be construed most strongly against the pleader. Sharp v. Learned, 182 Miss. 333, 181 So. 142, 182 So. 122. It is not sufficient to allege negligence as a mere conclusion of the pleader, but facts must be pleaded showing actionable negligence. Horton v. Lincoln County, 116 Miss. 813, 77 So. 796; Perry v. Standard Oil Company, 15 F.Supp. 563 (D.C.Miss.); Stokes v. Great Southern Lumber Company, 21 F.2d 185 (D.C.Miss.); 71 C.J.S. Pleading " 13, p. 34. | It is not sufficient to allege negligence as mere conclusion of pleader, but facts must be pleaded showing actual negligence. | Is it sufficient to allege negligence as a mere conclusion? | 022897.docx | LEGALEASE-00133352-LEGALEASE-00133353 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 15476 | Schowalter v. Washington Mut. Bank, 275 Ga. App. 182 | 307A+750 | To analyze this contention, we start with premise that "[a] claim or issue, though previously raised in pleadings, is waived when it is omitted from the pretrial order." (Punctuation omitted.) Williams v. Safeway Ins. Co.2 The rationale is that the purpose of the pretrial order "is to determine which of the claims pleaded will actually be tried. The claims, issues, and evidence are limited by the order and the course of the action is thereby narrowed to expedite the proceeding." (Punctuation omitted.) Id. Where a court excludes claims due to their omission from the pretrial order, we will reverse that ruling only if the trial court abused its discretion. Jamal v. Hussein.3 | Claim or issue, though previously raised in pleadings, is waived when it is omitted from the pretrial order. | Is it a waiver if a claim or issue is omitted from the pretrial order even if it appeared in the complaint? | Pretrial Procedure - Memo # 1858 - C - SHB.docx | LEGALEASE-00022693-LEGALEASE-00022694 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 15477 | Ned v. Union Pac. Corp., 2014-1310 (La. App. 3 Cir. 4/15/15) | 307A+747.1 | Pretrial conferences are governed by La.Code Civ.P. art. 1551, which provides that the trial court may, "in its discretion[,] direct the attorneys for the parties to appear before it for conferences to consider any of the following[,]" including "[t]he control and scheduling of discovery[.]" La.Code Civ.P. art. 1551(A)(6). "A trial court has wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced." Succession of Harrell v. Erris"Omega Plantation, Inc., 12"696, p. 5 (La.App. 3 Cir. 12/5/12), 104 So.3d 751, 755, writ denied, 13"438 (La.4/5/13), 110 So.3d 595. | A trial court has wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced. LSA-C.C.P. art. 1551. | Does a trial court have the discretion to enter a pretrial order? | Pretrial Procedure - Memo # 1863 - C - VA.docx | ROSS-003287283-ROSS-003287286 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 15478 | Singer Mfg. Co. v. Bowne, 81 N.J. Eq. 157 | 307A+331 | The question asked at the trial was the number of the car and the names, respectively, of the conductor and motorman in charge thereof at the time of the collision, and the court held in its decision that the admission of the company that the motorman and conductor were its employ"s, and that the car in collision was its car, is an acknowledgment of its ability to secure an answer to the question by one who has the requisite knowledge. The case is important, and suggestive in the present inquiry in showing the length to which a court of law will go under an application of this character, although the statutory authority is not very broad. Upon the argument in this matter in hand, the question as to the extent of the power of this court to direct inspection was raised. This question is well settled. There is an inherent power in the court of equity wherever letters or papers are evidential in a cause, and are in the possession of either party to the proceedings to order an inspection. "The power to direct either party to give to the other an inspection and permission to take copies of any books or papers in his possession is inherent in a court of equity, and can be exercised in the absence of any statute conferring such right." Lawless v. Fleming, 56 N. J. Eq. 815, 40 Atl. 638. By further decisions of our courts it has been firmly established that, where letters or papers in the possession of either party are relevant to the matters in question in a suit in the court of equity, their inspection can be obtained upon petition of the opposing party. Fuller v. Hollander & Co., 61 N. J. Eq. 651, 47 Atl. 646, 88 Am. St. Rep. 456; Copper King v. Robert, 76 N. J. Eq. 251, 253, 74 Atl. 292. | Wherever letters or papers are evidential in a cause and relevant, and are in the possession of either party, the court of equity has the inherent power to order the production of such papers for inspection by the other party. | Is the power to require a party to permit his opponent to inspect the documents in his possession inherent in the court? | 027133.docx | LEGALEASE-00133200-LEGALEASE-00133202 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | 839 | 15,944 | 14,973 | 22,876 | 5,073 |
| 15479 | Thomann v. James, 48 Mass. 235 | 3074+0(0) | It appears in the case before us that he suit had been dismissed by consent of parties, and the record fails to show, except inferentially, that the order of dismissal had been set aside. The dismissal had the effect of a discontinuance of the action, and as we conceive, the substitution of another judgment, after an actual trial or submission, shall be affected by any subsequent discontinuance of the suit... [text continues] | In practice, the words "discontinuance" and "dismissal" import the same thing; namely, that the cause is sent out of court. | 027703.docx | LEGALEASE 00132064 LEGALEASE 00132065 | Condensed, SA, Sub | 0.9 | 0 | | | | |
| 15480 | Travelers Ins. Co. v. Joachim, 315 S.W.3d 860 | 3074+317.1 | "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may ... take a nonsuit, which shall not prejudice the rights of an adverse party to be heard ... The nonsuit's effect on a case is to render the merits of the case moot..." [text continues] | A nonsuit extinguishes a case or controversy from the moment the motion is filed or an oral motion is made in open court, and the only requirement is the mere filing of the motion with the clerk of the court. | 027905.docx | LEGALEASE 00132582 LEGALEASE 00132583 | SA, Sub | 0.87 | | 0 | | 1 | |
| 15481 | Bardales v. Duarte, 181 Cal.App.4th 1262 | 3074+317.1 | Bardales contends that Duarte's voluntary dismissal of her federal Convention petition renders this case moot. Although Duarte has not entered the United States, we conclude for two reasons ... the issue becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief." (In re Esperanza C. (2008) 165 Cal.App.4th ... [text continues] | By definition, a voluntary dismissal without prejudice is not a final judgment on the merits. | 028072.docx | LEGALEASE 00132646 LEGALEASE 00132647 | Condensed, SA | 0.91 | | 0 | | 1 | |
| 15482 | Estate of Barksdale ex rel. Farthing v. Duke Univ. Med. Ctr., 175 N.C.App. 100 | 3074+317.1 | The effects of a Rule 41(a) voluntary dismissal are well settled in our state. " 'A Rule 41(a) dismissal strips the trial court of authority to enter further orders in the case, except as provided by Rule 41(d), which authorizes the court to enter specific orders apportioning and taxing costs.'" Brisson, 351 N.C. at 593, 528 S.E.2d at 570 (quoting Walker Frames v. Shively, 123 N.C.App. 643, 646, 473 S.E.2d 776, 778 (1996)). A Rule 41(a) voluntary dismissal " 'leave[s] the plaintiff exactly where he [or she] was before the action was commenced.'"... [text continues] | Does a voluntary dismissal of action leaves the plaintiff exactly where he was before the action was commenced? | 028202.docx | LEGALEASE 00132775 LEGALEASE 00132776 | Condensed, SA, Sub | 0.83 | 1 | 0 | | 1 | |
| 15483 | Internorth v. Iowa State Bd. of Tax Review, 333 N.W.2d 471 | 171+2001 | Accrual is a legal concept distinct from ability to pay. A tax ... A tax levied to pay the cost of [government] ... amount is transmitted to government, and does not accrue when it is neither charged nor owed. | A "tax" is charge levied to pay the cost of [government]. Nowmann v. City of Indanolo, 232 N.W.2d 568, 573 (Iowa 1975). Under the cases holding against Nowmann's position, a tax is not paid unless the amount is transmitted to the government, and a tax does not accrue when it is neither charged nor owed. | 043001.docx | LEGALEASE 00132920 LEGALEASE 00132921 | Condensed, SA | 0.43 | 1 | | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15484 | Sautz v. L. & F. Const. Co., 113 N.J.L. 249 | 413+1 | Employer argues that since our workmen's compensation act "essentially an enforcement and not a compulsory scheme of compensation" (J. W. Ferguson Co. v. Seaman, 119 N.J. 576, at page 577, 197 A. 290, 246), and since "it varies from the master concept of the parties" (Young's Rubber Dye Works, Inc. v. Galasso, 118 N.J.L. 257, at page 261, 191 A. 874, 876), the provisions of the New Jersey Workmen's Compensation Act sustained the accident, became part and parcel of the contractual relationship between it and its employee, that, by virtue of such relationship, its liability for compensation to its employee was "extinguished and released" when the employee received a sum in excess of the gross amount awarded ($12,000 from third parties not here sued), and that the employee had no right to deduct $4,200 for "attorney's fee" and "expenses of suit" [cites]. Under the N.J.L. 375, 189 A. 61. The theory of this argument, as we see it, is that the employer erroneously fixes the day on which the employee sustained the accident as the day on which the right to recover the full amount of $12,000 without any deduction whatsoever. But the right of the respective parties under our workmen's compensation law, as consistently interpreted by our courts, are determined as of the date of the award and not as of the date of the accident McLaughlin v. Hahne & Co., 109 A. 542, 12 N.J. Misc. 8, affirmed 11 A.2d 11, 121, 127 A. 566; Granata v. S. G. A. Grande, 11 N.J. Super. 181, 78 A. 106, J. W. Ferguson Co. v. Seaman, supra; Woresky v. Lafferty, 121 N.J. 130, 4 A.2d 185. | When are the rights of the parties determined under the workmens compensation law? | 047977.docx | LEGALEASE 00133466-LEGALEASE 00133467 | Condensed_SA_Sub | 0.9 | 0 | | | 1 | 1 |
| 15485 | Khalsa v. Weinberger, 779 F.2d 1393 | 34+81() | Minutes test for determining reviewability of military decision applies to statutory claims against military. | Appellant also claims that the district court erred in not addressing his statutory claim under the Administrative Procedure Act. However, the Minutes test also applies to statutory claims against the military. The only substantial difference between the district court's analysis of appellant's constitutional claims and the proposed analysis of the APA claim is that constitutional claims give rise to weight to a judgment for reviewability. See Mindes v. Seamax, 453 F.2d 197, 201. If the court did err in not addressing the issue, it was harmless error. | Does the Minutes test for determining reviewability of military decision apply to statutory claims against military? | 008372.docx | LEGALEASE 00133486-LEGALEASE 00133487 | Condensed_SA_Sub | 0.8 | 0 | | | 1 | 1 |
| 15486 | Auto. Tire Serv. v. First Nat. Bank of Ariz., Phoenix, 102 Ariz. 512 | 8.30(+76 | A check is merely the drawer's order to pay the named payee the amount specified and can be countermanded any time before payment or certification. Section 6-216, A.R.S. (1956) specifically states "A revocation, countermand or stop-payment order relating to the payment of a check or draft against the account of a depositor in a bank doing business in this state shall not be effective unless made in writing and shall not bind the bank unless it is received at a time thereof on the bank, unless it is renewed in writing. The renewal shall not be in effect for more than six months from date of service thereof on the bank, but from time to time is renewed." | A check is merely the drawer's order to pay the named payee the amount specified and can be countermanded any time before payment or certification. Section 6-216, A.R.S. (1956) specifically states "A revocation, countermand or stop-payment order relating to the payment of a check or draft against the account of a depositor in a bank doing business in this state shall not be effective unless made in writing and shall not bind the bank unless it is received at a time thereof on the bank, unless it is renewed in writing. The renewal shall not be in effect for more than six months from date of service thereof on the bank, but from time to time is renewed." | Can a check be countermanded? | 010213.docx | LEGALEASE 00133590-LEGALEASE 00133591 | Condensed_SA_Sub | 0.74 | 0 | | | 1 | |
| 15487 | United States v. Corrigan, 144 F.3d 763 | 92+2035 | Military officials need not demonstrate actual harm before implementing a regulation restricting speech and may act to forestall reasonably anticipated harm to execute or to the orderly functioning of the base. U.S.C.A. Const. Amend. 1. | There is no question, and the appellants do not dispute, that fort Benning is a nonpublic forum that, like virtually all military installations, has never been opened or dedicated as a public forum. In response to the appellants' First Amendment arguments see United States v. Albertini, 472 U.S. 675, 686, 105 S.Ct. 2897, 2905, 86 L.Ed 2d 536 (1985) ["Military bases generally are not public fora."], 1.80 A.2d 1281, 1817, 91 L.Ed2d 535 (1976) ["The notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is... historically and constitutionally false.") 763, 838, 1472 (11th Cir.1988). As the Supreme Court has stated, it is "the business of a military installation ... to train soldiers, not to provide a public forum." Greer v. Spock, 424 U.S. 828, 838, 96 S.Ct. at 1217. Accordingly, military officials are free to ban speech on such a forum as long as the regulations are reasonable and content-neutral. See Ethredge v. Hail, 56 F.3d 1324, 1327 (11th Cir.1995). | Do military officials demonstrate actual harm before implementing a regulation restricting speech and may act to forestall reasonably anticipated harm to execute or to the orderly functioning of the base? | 009386.docx | LEGALEASE 00133756-LEGALEASE 00133757 | Condensed_SA_Sub | 0.8 | 0 | | | 1 | 1 |
| 15488 | Mom v. Bardoff, 147 Ariz. 599 | 260+78.6 | It is evidence of gate and not how continuously it is closed that the road is established but when a gate is maintained for more than 7 years across a road in which the public has a prescriptive easement, then it is claimed that the public has abandoned the road and the landowner has the right to close it permanently and restrict the road to permissive use. Brooks v. Reedy, 241 Ariz. 271, 407 S.W.2d 378 (1966); Nelms v. Steelhammer, 223 Ariz. 429, 283 S.W.2d 218 (1955); Mour's v. Dilley, 200 Ark. 133, 138 S.W.2d 93 (1946); Porter v. Huff, 162 Ark. 52, 257 S.W. 393 (1924). In these cases we recognized the rule that the installation of the gate or other bars indicates that the road is being used by permission and not as a matter of right. It is the existence of the gate and not how continuously it is closed that constitutes notice in Brooks v. Reedy, supra, we said that it is well established that when the gates were maintained for the statutory period, the statute presumes that the travelers within a 7-year period, then it must be shown that the important fact is that the roads and gate were placed there by the statutory period, the roads under the language in Mourn's, Dillon, supra, the fact that the gates were not always closed does not make any difference. | What constitutes an notice to the public that they are using the road as permission and not a right? | 019010.docx | LEGALEASE 00133768-LEGALEASE 00133769 | Condensed_SA_Sub | 0.87 | 0 | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15489 | Newera v. United States, 133 Fed. Cl. 196 | 34+0.5) | Finally, LT Ruiz argues that the constructive service doctrine should be applied in his case. It is Mot. at 27. According to this doctrine, "military personnel who have been illegally or improperly separated from service are deemed to have continued in service until their final separation" and are therefore "entitled to back pay and benefits for the intervening period . . ." Christian v. United States, 337 F.3d 1338, 1347 (Fed. Cir. 2003). Referring again to the linchpin of the Government's argument, LT Ruiz was not improperly separated from service. The Constructive Service Doctrine applies to improper terminations from active service. M.J. Dilley, 627 F.2d at 413. Constructive service is a fiction courts allow because when a service member is actively serving and improperly terminated, there is a degree of certainty that but for the improper separation the service member would have continued to actively serve under the status quo. When, as it is here, the service member has never been in active service but seeks back pay as if he were, the court is not returning the service member to his status quo. Instead, it would be creating double-layered fiction "first, that the service member actively served for the time-period his is alleging and second that the service member would have served in active service in the first place. The Constructive Service Doctrine should not be used, and has not been used, to ease this double-layered fiction. Therefore, LT Ruiz may not invoke the Constructive Service Doctrine. | The constructive service doctrine only applies to improper terminations from active military service. | Does the constructive service doctrine apply only to improper terminations from active military service? | 008446.docx | LEGALEASE-00136525-LEGALEASE-00136526 | 5A, 5ab | 0.93 | 0 | | 1 | 1 | |
| 15490 | Wright v. United States, 81 Fed. Cl. 369 | 34+0.5) | Plaintiff bases his right to recovery pursuant to the Military Pay Act on the constructive service doctrine. See Pl.'s Mot. at 11-13, 20-24, 37-75. The constructive service doctrine embodies the concept that "members in the military who have been improperly discharged are treated as having continued in service until they are properly discharged; they are therefore entitled to back pay and allowances for that period of constructive service." Christian v. United States, 337 F.3d 1338, 1347 (Fed.Cir.2003) In order to recover under the constructive service doctrine, plaintiff must prove that he was "improperly separated from service." Id. at 1347. A servicemember cannot invoke the constructive service doctrine if he voluntarily retires from the military. See Smith v. Sec'y of Army, 384 F.3d 1288, 1295 (Fed.Cir.2004) ("Of course a member's separation from the service is voluntary, such as pursuant to a voluntary retirement, the Military Pay Act does not apply.") Furthermore, a decision to retire is not rendered involuntary merely because the servicemember is faced with an undesirable choice. Conv. v. Dep't of Navy, 914 F.2d 1240, 1243 (Fed.Cir.1991) ("This court has repeatedly held that the imminence of less desirable alternative does not render involuntary the choice made."). | A servicemember cannot invoke the constructive service doctrine if he voluntarily retires from the military. | Can a service member invoke the constructive service doctrine if he voluntarily retired from the military? | 008448.docx | LEGALEASE-00136070-LEGALEASE-00136071 | Condensed, 5A | 0.92 | | 0 | | | |
| 15491 | Thomas v. United States, 42 Fed. Cl. 449 | 34+18.5 | No one has a right to enlist or re-enlist in the armed forces unless specially granted such right by statute or regulation. Maier v. Orr, 754 F.2d 973, 980 (Fed.Cir.1985). A serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired. Id. at 980. Consequently, plaintiff's request for reinstatement (or re-enlistment) must be denied for failure to state a claim upon which relief can be granted. | No one has a right to enlist or re-enlist in the armed forces unless specially granted such a right by statute or regulation. | Does a servicemember have the right to enlist or reenlist in the armed forces? | Armed Services - Memo 147-.15.docx | ROSS-003303767-ROSS-003303768 | Condensed, 5A | 0.75 | | 1 | | | |
| 15492 | Citizens' Tr. Co. v. Ward, 195 Mo. App. 223 | 83E+429 | Following the defendant's [appellant's] reasoning, it must be admitted that if the indorsement made the words "Pay to any bank or banker" is an indorsement for collection, and that an indorsement for collection does not transfer title as per Bank of America Territory v. First National Bank, 105 Mo. App. 645, 83 S. W. 537. National Bank of Rolla v. First National Bank of Salem, 141 Mo. App. 719, 125 S.W. 513. | The indorsement of words "Pay to any bank or banker," is an indorsement for collection, and does not transfer title. | Does the indorsement given by any bank or banker an indorsement for collection and does not transfer title? | Bills and Notes - Memo 281-VP.docx | ROSS-000291563-ROSS-000291564 | Condensed, 5A, Sub 0.7 | 0.7 | | 0 | 1 | | |
| 15493 | Shaw v. Sullivan, 106 Cal. 208 | 83E+405 | Action by the plaintiff as the indorsee of a promissory note executed by the defendants. A copy of the note is set out in the complaint, and upon its execution is not denied by the defendants, but in their answer they deny the indorsement to the plaintiff, and in a separate answer allege certain matters impeaching the consideration of the note. The case was tried without a jury, and the court found that the note had been indorsed to the plaintiff for value prior to its maturity, and rendered judgment in his favor. The defendants moved for a new trial upon the ground that the evidence was insufficient to justify these findings, and that the court erred in denying their motion, and also from the judgment, they have appealed. At the trial the plaintiff introduced in evidence the promissory note set forth in the complaint; upon the face of the note, at the left-hand end thereof, was written the names of the payees. No objection was made to the introduction of the note in evidence, and it appeared in the statement that the whole of the face of the paper was read in evidence. No other evidence was offered by either party, except the computation of the amount of interest due upon the note, and the court rendered its decision as aforesaid. The failure to deny the execution of the note in evidence was not necessary to make any proof thereof, and that the defendants offered no evidence in support of the matters alleged in their special defense, the plaintiff was entitled to recover upon the note, if the evidence to the plaintiff. The appellate to denying he note as indorsee may be made upon the back thereof, but the indorsement may be made upon the face as well as the back. The indorsement appears upon the back, Bijoux, 88§ & N. 135; Young v. Glover, 3 Jones, 88§ & N. 22§; Harmon-Wooldridge, Chit. Bills, 227; Herring v. Woodhull, 29 III. 92; Partridge v. Davis, 20 Vt. 499; Haines v. Dubois, 30 N. J. Law 259. In the case last cited the payee wrote his name under that of the maker, and it was held to be a | An indorsement may be made upon the face of a note with the same effect as if made upon the back. | Does the indorsement made upon the face of the note has the same effect as if made upon the back? | 009464.docx | LEGALEASE-00134582-LEGALEASE-00134584 | Condensed, 5A, Sub 0.97 | 0.97 | | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,029 |
| 15494 | United States v. Jacobs, 431 F.2d 754 | 63+1(1) | The evil sought to be prevented by the deterrent effect of 18 U.S.C. § 201(b),(c) is the attempt by the public actor to influence the deliberative processes of public officials. [...] | Statute appears to envisage giving, offering, or promising anything of value to public official with intent to influence any official act or to influence such official to commit fraud or make opportunity for commission of any fraud on United States or to induce such official to do or omit to do any act in violation of his lawful duty aims to prevent a them with suffered by public when official is corrupted and thereby perfunctorily fails to perform his public service and duty, and purpose of statute is to discourage one from seeking an advantage by attempting to influence public official to depart from conduct deemed essential to public interest. 18 U.S.C.A. § 201(b). | What is the evil sought to be prevented by the deterrent effect of 18 U.S.C. 201(b), 201(c) 201(b) concerning bribery? | Bribery - Memo #310 - C-CS.docx | ROSS-003290353-ROSS-00320354 | Condensed, SA, 0.26 | | | 1 | 1 | 1 | |
| 15495 | State v. Com. v. Beneficial Fin. Co., 360 Mass. 188 | 63+34 | Household, barber, and that also claim error in the judge's charge to the jury that if defendant was a member of the State Board of Appraisal Supervisor of Loan Agencies, then each was an "officer" within the meaning of the statute, as matter of law. [...] | Court's instructions as to Commonwealth's burden in establishing that person allegedly bribed was an officer. | Is the burden of proof on the Commonwealth in establishing that a person allegedly bribed was an officer? | | LEGALEASE-00134808-LEGALEASE-00134809 | Condensed, SA, Sub 0.9 | | | 1 | 1 | 1 | |
| 15496 | Tom Green Cty. v. Moody, 116 Tex 299 | 203+21 | The case of Edbrook litigation District v. Bradley, 164 U.S. 576, 17 S. Ct. 173, 41 L. Ed. 519 [...] | Legislature has full discretion to adopt method of taxing all properties in county at assessed values for cost of Highway to be improved within it. | What are the powers of legislature with respect to taxation? | Highway - Memo 99 08.docx | ROSS-003290614-ROSS-00320611 | Condensed, SA, Sub 0.3 | | | 1 | | 1 | |
| 15497 | Hoare v. State, Dept of Treasury, Consol. Police & Firemen's Pension Fund Comm'n, 95 N.J. Super. 196 | 296+1 | A pension is a bounty springing from the appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. Ballew v. Castellito, 294 I.Super. 383, 389, 102 A.2d 662 [...] | A "pension" is a bounty springing from appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. | Is pension an inducement to honorable service? | Pension - Memo 1 - M5.docx | ROSS-003317984-ROSS-00317987 | Condensed, SA, Sub 0.86 | | | 1 | | 1 | |
| 15498 | Hoare v. State, Dept of Treasury, Consol. Police & Firemen's Pension Fund Comm'n, 95 N.J. Super. 196 | 296+2 | A pension is a bounty springing from the appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. [...] | One fundamental purpose of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service. | What is a pension? | Pension - Memo 8 58.docx | ROSS-003319743-ROSS-00320744 | Condensed, SA, Sub 0.96 | | | 1 | | 1 | |
| 15499 | Polansky v. Barney, 393 S.W.2d 362 | 307k+517.1 | Under Texas Rule of Civil Procedure 162, "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." [...] | A non-suit is effective when it is filed; it extinguishes a case or controversy from the moment the motion is filed or an oral motion is made in open court. Vermont's Ann Texas Rules Civ.Proc., Rule 162. | When is a motion effective upon the date of its filing? | Pretrial Procedure Memo #2739 - C-PC.docx | LEGALEASE-00016989-LEGALEASE-00016990 | Condensed, SA, Sub 0.81 | | | 1 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,079 |
| 15500 | Farm Credit Bank of Omaha v. McLaughlin, 474 N.W.2d 883 | 307A:483 | We believe that the district court in this case should have treated Mary's brief and affidavit in opposition to the motion for summary judgment and its motion to withdraw or amend her deemed admissions. We have previously noted in a similar case involving application of Rule 36 that "technical considerations should not be allowed to prevail to the detriment of substantial justice and that the rule is to be liberally construed." Farmers Elevator Co. of Horace v. Nagel, 307 N.W.2d 565, 566 (N.D.1981); see also Wright & Miller, Federal Practice and Procedure Civ.2 2132 (1970). In this case, Mary was obviously challenging the truthfulness of the deemed admissions. She had attempted to respond to the requests for admissions when she filed a resistance thereto, and denied each allegation therein. When served with the motion for summary judgment, she again challenged the deemed admissions and asserted material issues of fact. Under these circumstances, a liberal, non-technical application of Rule 36 required that the district court treat Mary's response as a motion to withdraw or amend her deemed admissions. | In applying rule governing deemed admissions, technical consideration should not be allowed to prevail to the detriment of substantial justice, and rule should be liberally construed. Rules Civ.Proc., Rule 36. | Is the rule allowing withdrawal of admissions to be construed liberally? | 028928.docx | LEGALEASE 00138329-LEGALEASE 00138330 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 15501 | State v. Owen, 133 N.C. App. 543 | 35.3H:136 | An aider or abettor is defined as a "person who is actually or constructively present at the scene of the crime and who aids, abets, counsels, instigates or encourages another to commit the offense." State v. Barnette, 304 N.C. 447, 458, 284 S.E.2d 238, 300 (1981). A person who is present, aiding and abetting in a rape actually perpetrated by another is equally guilty with the actual perpetrator of the crime. State v. Martin, 17 N.C.App. 317, 318, 194 S.E.2d 60, 61 (1973). Even though women's physically incapable of committing rape upon another woman, she may still be convicted of rape if she aids and abets a male assailant in the rape of another woman. | A person who is present, aiding and abetting in a rape actually perpetrated by another, is equally guilty with the actual perpetrator of the crime. G.S. § 14-27.2(a)(1). | Is aiding and abetting in a rape equally guilt as rape? | Sex Offense - Memo 49 - SB.docx | LEGALEASE 00024576-LEGALEASE 00024577 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | 1 |
| 15502 | Com. v. Eastman Kodak Co., 385 Pa. 607 | 371:1991 | The Corporation Income Tax Law of 1951 states that it imposes a property tax on net income of certain corporations. While this declaration is entitled to weight, the nature of a tax depends upon its incidence, and not upon its label; and therefore, in reality, i. e., in its practical operation and effect, the tax is not what it purports to be, the realities control. Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421, 184 A.2d 37, 344; Commonwealth v. McCarthy, 332 Pa. 465, 3 A.2d 267; Spector Motor Service, Inc., v. O'Connor, 340 U.S. 602, 608, 71 S.Ct. 508, 95 L.Ed. 573; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 292, 41 S.Ct. 272, 65 L.Ed. 638; Interstate Transit, Inc., v. Lindsey, 283 U.S. 183, 190, 51 S.Ct. 380, 71 L.Ed. 953; Memphis Steam Laundry Cleaner v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436; Ray Steam Transfer Corp. v. Meisner, 377 Pa. 234, 103 A.2d 700, supra; Murray v. City of Philadelphia, 364 Pa. 157, 71 A.2d 280; Armour & Co. v. City of Pittsburgh, 363 Pa. 109, 112, 69 A.2d 405; In re Arrott's Estate, 322 Pa. 367, 185 A. 697; National Biscuit Co. v. City of Philadelphia, 374 Pa. 604, 615, 623. | While a statutory declaration as to the kind of tax imposed is entitled to weight, the nature of a tax depends upon its incidence, and not upon its label, and therefore, if a tax in its practical operation and effect is not what its purports to be? | Do the realities control when a tax in its practical operation and effect is not what it purports to be? | 043015.docx | LEGALEASE 00134493-LEGALEASE 00134494 | Condensed, SA, Sub 0.76 | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15503 | Kaufman v. City of Tucson, 6 Ariz. App. 429 | 238:735(9) | Appellants' final contention is that the tax is invalid because the increase in rate of taxation is not reasonable. While we disagree with this because we feel that the evidence at the hearing showed that the tax was reasonable and in line with previous increases, we do not decide this question on those grounds. Reasonableness is not the test of the validity of a tax. Once it has been found to bear a legally required, the test becomes whether or not the tax is prohibitory. While, if the purpose is to raise revenue, the tax cannot be prohibitory, this power to prohibit is conferred to the tax by A.R.S. s 4-223, subsec. B) the test is whether the rates will annihilate the whole business, not just any given firm. State v. Jacobson, 80 Ariz. 411, 298 P.2d 1087, 1091 (1956) (quoting 51 Am.Jur. 814, s 909). | Test of whether license tax is prohibitory is whether rates will annihilate whole business not just any given firm. A.R.S. § 4-223, subsecs. A, B. | Can tax be prohibitory if its purpose is to raise revenue? | Taxation - Memo # 351 - C - SU.docx | ROSS-003291214-ROSS-003291215 | Condensed, SA, Sub 0.82 | 0.82 | 0 | 1 | 0 | 1 | 1 |
| 15504 | City of Columbus v. Atlanta Cigar Co., 111 Ga. App. 774 | 371:1991 | The merit test that the tax imposed by Ordinance No. 64-9 is designated as a "license tax" is not controlling, as the basic nature of a tax must be determined by what it does and not by the name given it by the taxing authority. Home Ins. Co. of New York v. City of Augusta, 50 Ga. 530, Publix Cigar Co. v. City of Brunswick, 206 Ga. 236, 215 S.E.2d 214. Ordinance No. 64-9 by its express terms applies to every person now or artificial who sells, stores or delivers cigarettes in the City of Columbus and a tax at four cents per pack on all cigarettes which is sold, stored or delivered within the municipality. Under the terms of the ordinance, it is immaterial whether the person is engaged in the business or occupation of selling, storing or delivering cigarettes, and anyone who has had possession within the city limits for more than six hours of a pack of cigarettes upon which the taxes have not been paid is subject to the penal provisions of the ordinance. | Basic nature of tax must be determined by what it does and not by name given it by the taxing authority. | Should the basic nature of tax be determined by what it does and not by the name given to the taxing authority? | 045102.docx | LEGALEASE 00133938-LEGALEASE 00133939 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13505 | U.S. Steel Corp. v. State, 65 Wash. 2d 385 | 371v2763 | A tax is not a debt and does not bear interest unless specifically imposed by statute. City of New Winslow v. Jemtes, 22 Wash. 570, 575, 61 P. 767 (1900); Henry v. McKay, 164 Wash. 526, 531, 3 P.2d 145, 77 A.L.R. 1025 (1931). In State v. Carefree Telephone and Telegraph Co., 195 Wash. 246, 252, 80 P.2d 797, 783 (1938), this court said: "The general rule of practically all jurisdictions is well stated in Ruling v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596, as follows (page 425): 'The cyclopedias and textbooks state the general rule to be that in the absence of a statute expressly so directing, taxes bear no interest. This principle is thus announced in 37 Cyc. p. 1155: "Delinquent taxes do not bear interest unless it is expressly so provided by statute. But it is competent for the legislature to provide for the payment of interest as a penalty for delays in the payment of taxes, and regulate its rate. This, however, can be affected only by an act explicitly manifesting the legislative intention so as the right to recover interest, its amount, and the date from which it shall begin. An act the statement of interest... to be the decided cases in nearly all of the state courts of last resort. (Italics ours.) | Tax is not a "debt" and does not bear interest unless specifically imposed by statute. | Does a tax bear interest unless specifically imposed by a statute? | 041014.docx | LEGALEASE 00133942-LEGALEASE 00133943 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 13506 | City of Palestine v. N. Illinois Gas Co., 279 F. Supp. 3d 734 | 386v10 | In Illinois, a trespass is "an invasion in the exclusive possession and physical condition of land." Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co., 282 Ill.App.3d 129, 218 Ill.Dec. 60, 668 N.E.2d 223, 230 (1996) (citing Dial v. City of O'Fallon, 81 Ill.2d 548, 445, 4 Ill.Dec. 638, 411 N.E.2d 217, 221 (1980)). Trespass occurs or through an act that is either negligent or intentional. Hawking v. Medtronic, Inc., 406 Ill.App.3d 639, 346 Ill.Dec. 789, 941 N.E.2d 947, 367 (2010). Dial v. City of O'Fallon, 81 Ill.2d 548, 445, 4 Ill.Dec. 638, 411 N.E.2d 217, 221 (1980). | In Illinois, a "trespass" is an invasion in the exclusive possession and physical condition of land? | Is trespass an invasion in the exclusive possession and condition of land? | 047960.docx | LEGALEASE 00134902-LEGALEASE 00134903 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13507 | State ex rel. Green v. Gibson Circuit Court, 246 Ind. 446 | 386v11 | Addressing ourselves to the first of the above-mentioned propositions, we find it to be noted. Traditionally, it has been held that an action for trespass quare clausum fregit (trespass to real estate) cannot be maintained for an invasion of a right of way or easement. Comm v. The President and Trustees of New Albany (1836), 3 Blackf. 88, 27 Am.Jur. Ind.Law Pesq., Trespass, "1, p 517 (12 Am.Jur., Trespass, 728, p 877. 87 C.J.S., Trespass, "11 p. 969). This rule is based on the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of land (property will as held.) Haffner v. Fulton (1908), 23 Ind.App. 33, 56 N.E. 688 Thus, since an action for trespass quare clausum fregit cannot be maintained for entry upon a right of way, the defendant cannot maintained for the entry of land. The defendant entered upon the plaintiff's right of way he no other legal effect. Consequently, it is not clear that the plaintiff had an exclusive possession of the pipe line at the time it was damaged by the defendants. Moreover, the wording of the plaintiff's complaint does not sustain the relator's contention that the action alleged is one for trespass to an easement since nowhere does the plaintiff allege in his complaint any damage to his right of way, nor entry upon the same. | An action for trespass quare clausum fregit (trespass to real estate) cannot be maintained for invasion of right of way or easement? | Can an action for trespass be maintained for an invasion of a right of way or easement? | 047401.docx | LEGALEASE 00134804-LEGALEASE 00134805 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13508 | Bloomingdale v. New York City Transit Auth., 13 N.Y.3d 61 | 386v11 | The essence of trespass to real property is injury to the right of possession, and such trespass may occur under the surface of the ground. A person need not have title to the property, but may simply have sufficient property rights to maintain an action for trespass (see 87 C.S., Trespass " 30). Although Bloomingdale did not have exclusive possession of the area of the No.1 subway tracks, it still had legal rights to the right-of-way afforded by its unlawful encroachment to its right-of-way. We have held that a trespass occurs in common/at an easement, are subject to it, and common/at right to the exclusive possession (see 87 C.J.S., Trespass " 30). New York City Tr. Auth., 13 N.Y.2d 68, 255 N.Y.S.2d 83, 31 N.E.2d 243 (1965). Thus, the question of the statute of limitations, and only at one time-barred by the expiration of such time as would render it an easement by prescription or change of title by operation of law (id.). | The essence of trespass to real property is injury to the right of possession, and such trespass may occur under the surface of the ground? | Can trespass occur under the surface of the ground? | 047405.docx | LEGALEASE 00134813-LEGALEASE 00134814 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13509 | Swain v. Standard Acc. Ins. Co., 81 S.W.2d 258 | 413v1 | The Workmen's Compensation Act provides for compensation to the employee for injury resulting in his disability only, and its legal beneficiaries for injuries resulting in his death. The two statutes are separate and distinct, although flowing from the same accident, or injury.And those immediate may or part concur, in this, that "in case death occurs as a result of the injury after a period of total or partial incapacity, for which compensation has been paid, the period of incapacity shall be deducted from the total period of compensation and the benefits paid thereunder from the maximum allowed for the death." Section 8b, art. 8306. | Workmen's Compensation Act which provides for compensation to employee for injury resulting in his disability only, and to legal beneficiaries for injuries resulting in his death, creates two distinct remedies, although flowing from same accident or injury. Vernon's Ann.Civ.St. art. 8306 et seq. | To whom does the workmen's compensation act provide compensation? | 047965.docx | LEGALEASE 00134914-LEGALEASE 00134915 | Condensed, SA, Sub 0.55 | | 0 | 1 | 1 | 1 | |
| 13510 | Harrington v. Dep't of Labor & Indus., 252 Mich. 87 | 413v1 | Compensation is not a private matter between employer and employee. The public is interested. The act declares a state policy, that the number of industrial accidents and injuries shall not borne by the injured alone, but by the general public. To effectuate this policy, the act provides for frequent regular payments, weekly or monthly, of specific minimum amounts. It imposes payments to prior or in lump sum, except in certain "special circumstances." Subject to its limitations, it contemplates weekly payments of compensation during disability, no more, no less. | Compensation for injuries is not private matter between employer and employee, but one wherein public is interested. | Is the compensation for injuries a private matter between employer and employee? | 047993.docx | LEGALEASE 00134972-LEGALEASE 00134973 | Condensed, SA, Sub 0.8 | | 0 | 1 | 1 | 1 | |

2738

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15531 | United States v. Gatling, 96 F.3d 1511 | 63+1(1) | Finally, there was also sufficient evidence for the jury to find that Weber conspired to accept money for performing official acts, since "[p]ayments to a public official to ... corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person ... in return for ... (A) being influenced in the performance of any official act ... ." 18 U.S.C. 201 (1994). This court has noted that "[p]ayments to a public official for acts that would have been performed in any event ... are probably illegal gratuities rather than bribes" and that bribery implies a quid pro quo. United States v. Campbell, 684 F.2d 141, 148 (D.C.Cir.1982); United States v. Brewster, 506 F.2d 62, 72 (D.C.Cir.1974). A bribe of some influence between accepting a bribe and accepting a gratuity is the degree of culpable intent on the part of the recipient: to corrupt the defendant's interest ... | "corrupt" ... whereas gratuity is ... given to the defendant as "knowingly and willingly." Likewise, for a bribe to be consummated the briber must find that the defendant ... knowingly and willingly ... accepting a bribe is the degree of culpable intent on the part of the recipient: to convert a defendant's ... with a quid pro quo, "corruptly" in the corner of the bribery statute would appear to mean that the defendant was aware of the bribery and accepts money with the specific intent of performing an official act in return. | What does the term corruptly in bribery statute mean? | 01518.docx | LEGALEASE-00135495-LEGALEASE-00135497 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 | |
| 15532 | People v. Dieguanti, B N.Y.2d 260 | 164T+4 | The suggestion made by Mohamua's attorney at the trial and apparently adopted by the Appellate Division majority that defendants were restricted for the wrong reason, i.e., that the defendants committed was for solicitation or acceptance of a bribe by a labor representative (Penal Law, s 380, subd. 2, and s identity 380, 2) rather than extortion (Penal Law, s 850, subd. 1(b), 609), need not trouble us. Bribery of a labor representative and extortion have been held to be mutually exclusive crimes (People v. Feld, 262 App.Div. 909, 28 N.Y.S.2d 796), and that is undoubtedly correct, since section 380 of the Penal Law makes the payor equally as guilty as the payee, which could never be the case with extortion. | Bribery of labor representative and extortion are mutually exclusive crimes, and essence of "bribery" is the voluntary giving of something of value to influence the performance of official duty, whereas the essence of "extortion" is duress, Penal Law, S 380 and subd. 2. | Are bribery and extortion mutually exclusive crimes? | 01633.docx | LEGALEASE-00135975-LEGALEASE-00135977 | Condensed, SA, Sub 0.6 | | 0 | 1 | 1 | 1 | |
| 15533 | Santos v. State, 158 Ind. App. 516 | 67+2 | In the case of O.D. by Stirn the court appeared to... (citing N.C. G.S. s 14-2... section 14-3-70 (1971, 15-1-6-1, etc., being and entering of a building is a penal element of such a burglary are (1) a breaking and entering of a (2) with an intent to commit a felony, and (3) the taking of or an attempt to enter a safe. | The essential elements of "safe burglary" are breaking and entering of a building, with intent to commit a felony, and intent to commit or enter a safe, IC 1971, 35-1-6-1, Burns' Ind.Stat. S 10-702a. | What are the elements of burglary of a safe? | 02217.docx | LEGALEASE-00135124-LEGALEASE-00135125 | Condensed, SA, Sub 0.84 | | 0 | 1 | 1 | 1 | |
| 15534 | Fleck v. Cablevision VII, 763 F.Supp. 622 | 289+923 | Iowa law recognizes that partners may supplement their statutory and common law obligations by agreement. See, e.g., Iowa Code 544.18 (1991) ("subject to the rights of third parties may be varied by agreement among the partners"); Anderson v. Baxter, 19 F.Supp. 622 (1991) ... dissolution agreement superseded general partner's common law rights and obligations); Iowa Code 544.30 (West 1992). Thus, when a partnership agreement governs both a public policy, partners may create such relations as they see fit.[?]. Furthermore, under Iowa law, the terms of partnership agreement govern both a dissolution of partnership, and a sale of partnership's assets to one of partners. | Under Iowa law, terms of partnership agreement governed both a dissolution of partnership, and a sale of partnership's assets to one of partners. | Is the partnership agreement relevant in governing dissolution of partnership? | 02217.docx | ROSS-002905644-ROSS-002905650 | Condensed, SA 0.95 | | 0 | 1 | 1 | | |
| 15535 | Krug v. Meehan, 109 Cal. App. 2d 274 | 302+4(16) | Undue influence consists "1. in the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; 2. in taking an unfair advantage of another's weakness of mind; or, 3. in taking a grossly oppressive and unfair advantage of another's necessities or distress." Civ.Code, "1575. We are concerned with the first clause only, there is no allegation that Chevy was an old man; that he lacked understanding or that the transaction was involuntary on his part but only the conclusion of the pleader. Of course a mere averment of an unfair advantage is insufficient to plead undue influence is not a conclusion of law, Estate of Stoddart, 174 Cal. 606, 610, 163 P. 1010. An averment of a conclusion of law is ordinarily deemed to be unpleaded and will be disregarded in considering the sufficiency of a pleading. Olm v. City and County of San Francisco, 92 Cal. 437, 448 P.2d, 28 P. 580. Callahan v. Broderick, 124 Cal. 80, 679... 80, 82, 179 P.2d 781. In Stoddart the court... allege unfairness, no evidentiary facts or conclusion of law. The rule that undue influence... evidence facts where undue influence, is a clear one that is not required to plead the ultimate facts to be pleaded... facts which constitute a cause of action are averred in the complaint or pleaded, although the allegations of these facts are intermingled with... | A mere averment that instrument, such as deed, was procured by undue influence, is statement of conclusion of law. | Is the mere averment of undue influence a conclusion of law? | Pleading - Memo 308 - RMM.docx | ROSS-002905684-ROSS-002905659 | Condensed, SA | | 0 | 1 | 1 | 1 | |
| 15536 | Logan v. S. Cal. Rapid Transit Dist., 136 Cal. App. 3d 116 | 302+193(5) | If the PTO had not denied plaintiff leave without a pleading a legal cause of action to sue without any proof of a proper legal... plaintiff in the case with a UTU representative present a hearing, the notice had with a UTU representative present Logan's plea for legal conclusion facts as to how his due process rights were violated at the hearing. A party is bound by an admission in his pleadings, and a general demurrer, a complaint must allege ultimate facts, not evidentiary facts, nor conclusions of law (Krug v. Meehan (1952) 109 Cal.App.2d 274, 277, 240 P.2d 732.) Because a complaint must allege ultimate facts to state a legal cause of action to sue without... | To withstand demurrer, complaint must allege ultimate facts, not evidentiary facts or conclusions of law. | Must a complaint allege evidentiary facts? | 02399.docx | LEGALEASE-00135210-LEGALEASE-00135211 | Condensed, SA | | 0 | 0 | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15517 | Hambleton v. Hartman, 160 Pa. Super. 447 | 302+8(16) | n moving to have the judgment opened, defendants also offered an amendment to their affidavit of defense in which they alleged that the condition imposed on their agreement to sell was omitted from the written contract "by fraud, accident or mistake." The bald averment of the omission on such ground is but a conclusion of law and is not enough. Where fraud or accident or mistake is set up in a pleading as a ground for relief, the facts which constitute it must be averred. Levine et al. v. Pittsburgh State Bank et al., 281 Pa. 477, 127 A. 68; Ashland Towson Corp. v. Kasunic, 110 Pa.Super. 496, 508, 168 A. 502. Silberman et al. v. Crane, 158 Pa.Super. 186, 44 A.2d 598, has much in common with the present case. Defendants proposed amended affidavit of defense does not allege facts which if proven would constitute fraud, or accident or mistake. The amendment recites an oral agreement on March 28, 1945 under which plaintiffs agreed "to list defendants' property for sale" subject to the proviso now contended for by the defendants. But this alleged understanding must be regarded merely as part of the negotiations which merged in the written agreement three days later. The written contract was more than an undertaking to list the property for sale, it was an exclusive sales agreement. The proposed amendment avers that when the contract "signed by the defendants' was delivered by them to plaintiffs, it was again brought to plaintiffs' attention "that defendants would not sign any agreement of sale unless and until they had secured a new house for themselves." It is not averred that plaintiffs agreed to that condition and defendants, on reading the contract which they had signed, must have noted that the writing was unconditional except as to terms set forth therein. No facts are alleged from which fraud, accident or mistake can be inferred. This is a case that is clear and free from doubt (Silberman v. Crane, supra) and the court is chargeable | The facts which constitute alleged fraud, accident or mistake must be averred in order to rely thereon as a ground for relief. | Should facts constituting fraud be averred where it is set up as a ground of relief? | Pleading - Memo 316 - RMM.docx | ROSS-003302922-ROSS-003302923 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 15518 | Rust v. Rust, 88 S.W.2d 787 | 302+8(16) | In the case of Parker v. Allen, 33 Tex.Civ.App. 206, 76 S.W. 74, 78 (writ refused), the court had before it a pleading that was general and not specific as to want of consideration of, and fraud in the execution of, the instruments involved in the suit, which pleading set up the purported consideration and sought to deny it in general terms. The opinion states: "The existence of the several instruments by which plaintiff conveyed and released to the defendants all of his interest in the subject-matter of this suit being admitted in his petition, it follows that, unless the facts alleged in said petition are sufficient to avoid each and all of said instruments upon the ground of fraud, duress, or want of consideration, the petition fails to state a cause of action, and the general demurrer was properly sustained. A general allegation of fraud or duress is not sufficient to present such issue, but the facts relied on to show same must be pleaded. There is no allegation of fact in this petition from which fraud could be presumed. No misstatements of fact by any of the defendants is alleged by which plaintiff was misled or deceived, and no concealment of the truth or deceitful act of any kind is charged against any of the defendants. We think it clear that the petition is fatally defective in its attempt to avoid the instruments above mentioned on the ground of fraud. * * * The petition alleges in general terms that said contracts and agreements were without consideration, but the facts stated in the petition show a valuable consideration for each of said contracts." | Facts relied on to show duress must be pleaded, and general allegation thereof is insufficient to present such issue. | Should facts relied on to show duress be pleaded? | 023313.docx | LEGALEASE-00135455-LEGALEASE-00135456 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 15519 | Mayo v. New York Tel. Co., 175 A.D.2d 390 | 307A+716 | Engagement of counsel in another court has long been recognized as a valid ground for an adjournment (Matter of Poole v. Mayer, 112 A.D.2d 853, 854, 492 N.Y.S.2d 765; Merit Oil Heating Corp. v. Morfesis, 91 A.D.2d 604, 456 N.Y.S.2d 424; Ziv Intl. v. Pathe News, 90 A.D.2d 753, 456 N.Y.S.2d 55; Ansani v. Osnato, Sup., 25 N.Y.S.2d 806; see also, Rules of Chief Administrator of Courts " 125.1[a] ). Here, there is no reason to believe that the situation brought to Supreme Court's attention was not as plaintiffs' counsel represented. In addition, the merits of plaintiffs' action are sufficiently apparent: plaintiffs were passengers in a two-car collision from which each of them assertedly suffered serious injuries within the meaning of Insurance Law " 5102(d). Nor does it appear in the record that any of the parties to this litigation would have been prejudiced had the requested adjournment been granted. Under these circumstances, it was an improvident exercise of discretion for the court to refuse to honor counsel's affirmation of engagement. | Trial court abused its discretion by refusing to honor plaintiffs' counsel's affirmation of engagement in another court as valid ground for adjournment; there was no reason to believe that situation brought to Supreme Court's attention was not as counsel represented, merits of plaintiffs' action were sufficiently apparent, and none of the parties to the litigation would have been prejudiced had adjournment been granted. | Is engagement of counsel in another court been recognized as a valid ground for an adjournment? | Pretrial Procedure - Memo # 3358 - C - VP.docx | ROSS-003290890-ROSS-003290891 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15520 | Cotton States Life Ins. Co. v. Edwards, 74 Ga. 220 | 307A+716 | The continuance of cases on account of the absence of counsel is not favored, and such absence is no cause for postponement, unless in cases of necessity or misconception. Absence without leave, to attend trials of cases pending in other courts, is no ground for continuance. (a.) The judges of the superior courts are invested with discretion as to the continuance of cases for the term, or their postponement during the term, and unless such discretion is flagrantly abused in overruling a showing for a continuance, this court will not interfere with its exercise. | The continuance of cases on account of the absence of counsel is not favored, and such absence is no cause for postponement, unless in cases of necessity or misconception. Absence without leave, to attend trials of cases pending in other courts, is no ground for continuance. | Is the absence of counsel is cause of postponement? | 029524.docx | LEGALEASE-00135675-LEGALEASE-00135676 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 15521 | Locklear v. Sellers, 126 So. 3d 978 | 307A+483 | With regard to Mississippi Rule of Civil Procedure 36 admissions: "A matter that is deemed admitted does not require further proof. Any admission that is not amended or withdrawn cannot be rebutted by contrary testimony or ignored by the court even if the party against whom it is directed offers more credible evidence." Young v. Smith, 67 So.3d 732, 742"43 (Miss.2011) (citation omitted). "Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted.." Id. at 743 (22) (citation omitted). | Admissions pursuant to discovery rule governing admissions, whether express or by default, are conclusive as to the matters admitted. Rules Civ.Proc., Rule 36. | "Are admissions, whether express or by default, conclusive as to the matters admitted?" | Pretrial Procedure - Memo # 3531 - C - SK.docx | ROSS-003290478-ROSS-003290479 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15522 | Watson v. Geren, 483 F. Supp. 2d 226 | 34+5(4) | While late application for CO status may be the basis for suspicion as to petitioner's sincerity, this alone cannot provide a basis in fact for denial of petitioner's application. See Ferrand, 488 F.2d at 1390. Indeed, "it is universally the law that late crystallization of conscientious objector convictions is not a sufficient basis in fact to reject the claim." Hager, 938 F.2d at 1455. See also Shaffer v. Schlesinger, 531 F.2d 124, 130 (3d Cir.1976) ("cases are legion which hold that the timing of an application for conscientious objector status is not a sufficient basis in fact to support a finding of insincerity"). To the contrary, "a sincere conscientious objector is entitled to release from his service obligations whether his views crystallize late or early." Lobis v. Sec'y of the United States Air Force, 519 F.2d 304, 307 (1st Cir.1975). | While late application for conscientious objector status may be the basis for suspicion as to petitioner's sincerity, this alone cannot provide a basis in fact for denial of petitioner's application. | Is a late application alone enough to justify the Army's rejection of an individuals application? | 008489.docx | LEGALEASE-00137041-LEGALEASE-00137042 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 15523 | United States v. Smith, 196 F.3d 1034 | 63+1(1) | Smith raises an argument that has been rejected by every circuit that has considered it. See, e.g., United States v. Hunte, 193 F.3d 173 (3d Cir.1999); United States v. Stephenson, 183 F.3d 110 (2d Cir.1999); United States v. Lara, 181 F.3d 183 (1st Cir.1999); United States v. Condon, 170 F.3d 687 (7th Cir.1999); United States v. Johnson, 169 F.3d 1092 (8th Cir.1999); United States v. Lowery, 166 F.3d 1119 (11th Cir.1999); United States v. Singleton, 165 F.3d 1297 (10th Cir.1999) (en banc); United States v. Ramsey, 165 F.3d 980 (D.C.Cir.1999); United States v. Haese, 162 F.3d 359 (5th Cir.1998); United States v. Ware, 161 F.3d 414 (6th Cir.1998). Recently, we ruled that the government's promise of leniency to a cooperating witnesses does not violate 18 U.S.C. " 201(c)(2). See United States v. Mattarolo, 191 F.3d 1082, 1089 (9th Cir.1999). | Government's grant of immunity to government witness and its agreement to notify relevant authorities of witness's cooperation did not amount to giving of something of value for testimony in violation of statute criminalizing bribery of witnesses. 18 U.S.C.A. S 201(c)(2). | Is government's promise of leniency to a cooperating witness amount to giving of something of value for testimony in violation of 18 U.S.C. 201(c)(2)? | Bribery - Memo #472 - C-JL.docx | ROSS-003303885-ROSS-003303886 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 15524 | People v. Harper, 75 N.Y.2d 313 | 63+1(1) | The gist of the crime is not the payment of money, but rather the "agreement or understanding" under which a witness accepts or agrees to accept a benefit (see, People v. Arcadi, 79 A.D.2d 845, 846, 434 N.Y.S.2d 507, affd 54 N.Y.2d 981, 446 N.Y.S.2d 39, 430 N.E.2d 915; see also, Penal Law " 10.00[17] ).Consequently, all that is required for the completed crime is that a witness solicit, accept or agree to accept a benefit in exchange for a promise either that his testimony will be affected or that he will absent himself from or otherwise avoid appearing at the action or proceeding. There is no requirement that the benefit actually be conferred, that the testimony actually be influenced, or that the witness actually absent himself (see, People v. Shaffer, 130 A.D.2d 431, 432"433, 515 N.Y.S.2d 470). | The gist of the crime of bribe receiving by a witness is not the payment of money, but the agreement or understanding under which the witness accepts or agrees to accept benefit, and thus crime is completed when the witness solicits, accepts or agrees to accept the benefit in exchange for a promise either that his testimony will be affected or that he will absent himself from or otherwise avoid appearing at the action or proceeding, regardless of whether the benefit is actually conferred. McKinney's Penal Law S 215.05. | What is the gist of the crime of bribery of witness? | 011860.docx | LEGALEASE-00136024-LEGALEASE-00136025 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 15525 | Com. v. Ohle, 291 Pa. Super. 110 | 63+1(1) | Pa.C.S. s 4701. Once the offer to confer the proscribed benefit, or once the agreement is made, the crime is complete. There need be no waiting for the benefit actually to be conferred. Cf. United States v. Davis, 576 F.2d 1065 (3rd Cir., 1978), cert. denied, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978). Instantly, it is clear from the indictment itself, as well as from the evidence at trial, that the agreement to confer the proscribed benefit upon Trucco was reached no later than February of 1973, fully five months before the June 6, 1973 effective date of the Crimes Code provision. See Act of December 6, 1972, supra. | Under section of Crimes Code proscribing bribery in official and political matters, once offer to confer proscribed benefit, or once agreement is made, crime is complete, and there need be no waiting for benefit actually to be conferred. 18 Pa.C.S.A. S 4701. | Can a defendant be charged with bribery before the benefit is actually conferred? | 011877.docx | LEGALEASE-00136175-LEGALEASE-00136176 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 15526 | Fulton v. Baxter, 596 P.2d 540 | 289+1009 | This Court has consistently held that good faith is most especially required where one partner is trying to oust another partner. Waller v. Henderson, 135 Okl. 231, 275 P. 323 (1929); Thomas v. Mathis, supra. The statutes and cited cases compel us to the conclusion throughout the period in question, the defendant was bound to exercise good faith relative to partnership transactions and property. | Good faith is required when one partner is trying to oust another partner. | Is it necessary to observe good faith in a partnership when one partner is trying to oust and get rid of another? | 022283.docx | LEGALEASE-00136405-LEGALEASE-00136406 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 15527 | Farrands v. Melanson, 438 A.2d 910 | 307A+483 | The Plaintiffs contend that the fifteen points raised in their request for admissions, to which the Defendant never responded, must be taken as facts admitted. M.R.Civ.P. 36. They further contend that the same facts established title in the Plaintiffs. It is true that following a failure to answer a request for admissions, the facts in the request are deemed admitted. Salamone v. City of Portland, Me., 398 A.2d 49, 51 (1979). The Plaintiffs, however, failed to introduce these facts, so admitted, into evidence at trial, nor were they even mentioned in the Plaintiffs' pre-trial memorandum. At oral argument, counsel for the Plaintiffs conceded this issue. | Following a failure to answer a request for admissions, facts in the request are deemed admitted. Rules Civ.Proc., Rule 36. | Are the facts in a failure to answer a request for admissions deemed admitted? | Pretrial Procedure - Memo # 3946 - C - SB.docx | ROSS-003317943-ROSS-003317944 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 15528 | Verkin v. Sw. Ctr. One, Ltd., 784 S.W.2d 92 | 307A+723.1 | Finally, plaintiff argues that defendant did not attach any discovery request or deposition notices to the motion. We know of no rule of procedure, no case law, nor any theory of appeal that states that a motion for continuance on the grounds of discovery must be accompanied by a request for discovery. Because the statements regarding discovery were uncontroverted, we must accept them as true.Garza v. Serrato, 699 S.W.2d at 281. | There is no requirement that motion for continuance on grounds of discovery must be accompanied by request for discovery. Vernon's Ann.Texas Rules Civ.Proc., Rule 166a(f). | Should a motion for continuance on the grounds of discovery must be accompanied by a request for discovery? | 030232.docx | LEGALEASE-00136430-LEGALEASE-00136431 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15529 | Snider v. Cincinnati Car Co., 27 Ohio Dec. 212 | 307A+723.1 | The court is of the opinion that the custom of withdrawing a juror is without reason and is obsolete in this age of practical progressive law. If there be a right to continue a case, and a jury be in the way, clearly the better-the only aboveboard -method is to discharge the entire jury. The absurd fiction that a purposely withdrawn juror is lost, mislaid or destroyed and thus there is a mistrial, is only a deceit and should never be used. Both sides will as readily consent to the discharge of the entire jury-a more manly course and one understood and better appreciated by the parties and the men on the jury. No custom can override the written code. | Where there is a right to continue a case the better method would be, instead of withdrawing a juror, to discharge the entire jury. | Would the better method be to discharge the entire jury where there is a right to continue a case? | Pretrial Procedure - Memo # 3981 - C - MS.docx | ROSS-003289911-ROSS-003289912 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15530 | State ex rel. Pfeiffer v. Taylor, 19 Wis. 566 | 307A+723.1 | This is an application for a rule to show cause why a writ of mandamus should not issue to the judge of the fourth judicial circuit, commanding him to vacate an order made by him at chambers in the case of Pfeiffer against The Fond du Lac Railroad Company, staying proceedings under a previons order made in the same case by the circuit court of Sheboygan county appointing a receiver of the property of the railroad corporation. Due notice of the motion to stay proceedings was given. The defendant had previously appealed from the order appointing a receiver, to this court, and given the usual undertaking to pay costs and damages; and was required as a condition of a stay of proceedings to give another bond or undertaking to pay the judgment mentioned in the order appealed from. The circuit judge clearly had the power to make the order to stay proceedings, at chambers. Sec. 29, ch. 140, R. S.; Laws of 1860, ch. 264, sec. 18. Nor has he in any way abused the power given to him, but has amply protected the judgment creditor against loss by requiring ample security to pay the judgment if the order appealed from shall be affirmed. But if the order staying proceedings had been wrongly or erroneously made, the remedy was not by mandamus. That writ cannot be made to perform the office or take the place of a writ of error or appeal. | A circuit judge at chambers has power to make an order for a stay of proceedings under a previous order appointing a receiver, etc., made by the circuit court. | Does a circuit judge have power to make an order for a stay of proceedings? | 030429.docx | LEGALEASE-00136183-LEGALEASE-00136184 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15531 | Matter of Estate of Berth, 157 Wis. 2d 717 | 307A+91 | Whether a statute is ambiguous is a question of law. Hemerley v. American Family Mut. Ins. Co., 127 Wis.2d 304, 307, 379 N.W.2d 860, 862 (Ct.App.1985). Insofar as discovery is concerned, neither sec. 867.07 nor 867.17, Stats., creates an ambiguity. Section 867.07 authorizes the appointment of a special administrator if it appears that a cause of action exists. Section 867.17 authorizes the court to grant the special administrator the powers necessary to accomplish the purpose for which he is appointed. The purpose of the administrator is the enforcement of an existing claim; the plain language of the probate code so declares. The language of the statute itself is conclusive as to legislative intent absent a clearly expresed legislative purpose to the contrary. Leonard v. Warden, 631 F.Supp 1403, 1407, (1986), aff'd, 819 F.2d 1143 (E.D.Wis.1987). The power to take depositions rests entirely upon statute because this power did not exist at common-law.Feldstein v. Harrington, 4 Wis.2d 380, 385, 90 N.W.2d 566, 569 (1958). | Power to take depositions rests entirely upon statute, as power did not exist at common law. | Does the power to take depositions rest entirely upon statute? | Pretrial Procedure - Memo # 4437 - C - MS.docx | ROSS-003302143-ROSS-003302144 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 15532 | First Nat. Acceptance Co. v. Bishop, 187 S.W.3d 710 | 308+143(2) | An agent need not disclose his or her principal's identity in order to act on behalf of that principal. Latch v. Gratty, Inc., 107 S.W.3d 543, 546 (Tex.2003). An agent may make a contract for an undisclosed principal in his own name, and the latter may sue or be sued on the contract. Id. (citing First Nat'l Bank of Wichita Falls v. Fite, 131 Tex. 523, 115 S.W.2d 1105, 1109"10 (1938); Restatement (second) of Agency " 186 cmt. c). | An agent may make a contract for an undisclosed principal in his own name, and the latter may sue or be sued on the contract. | Can an agent acting on behalf of undisclosed principal sue on his own name? | Principal and Agent - Memo 96 - KC.docx | ROSS-003290918-ROSS-003290919 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 15533 | Comerford v. Pryor Foundry, 987 P.2d 434 | 371+2027 | In Special Indemnity Fund v. Weber, 1995 OK 43, 895 P.2d 292, the Oklahoma Supreme Court determined that the contributions to the Special Indemnity Fund required by " 173 constitute a tax imposed against the successful workers' compensation claimant and the insurer for the claimant's employer. As with all statutes, the primary consideration in considering tax statutes is that legislative intent be ascertained and given effect. In re Holt, 1997 OK 12, 932 P.2d 1130. The Legislature will not be presumed to have intended an absurd result. TXO Production Corp. v. Oklahoma Corporation Commission, 1992 OK 39, 829 P.2d 964. Where the language of a tax statute is plain and there are no inconsistent provisions, ambiguities, or uncertainties, the rules of construction will not be applied. In re O'Carroll, 1998 OK 6, 952 P.2d 45. | The primary consideration in considering tax statutes is that legislative intent be ascertained and given effect. | Is the pivotal question in ascertaining the tax statutes imposed by statute that concerning legislative intent? | Taxation - Memo # 468 - C - NA.docx | ROSS-003291816-ROSS-003291817 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 15534 | Shada v. Whitney, 172 Neb. 220 | 413+2 | Whitney here overlooks the fact that: The Workmen's Compensation Act creates new remedies, new rights, and new liabilities. The manner in which it operates is to be found in the legislation itself. Fidelity & Casualty Co. v. Kennard, 162 Neb. 220, 75 N.W.2d 553. | The Workmen's Compensation Act creates new remedies, new rights and new liabilities and manner in which it operates is to be found in legislation itself. R.R.S.1943, SS 48-173, 48-176, 48-178, 48-181. | Where are rights found under the workers compensation? | Workers Compensation - Memo #343 ANC.docx | ROSS-003290185-ROSS-003290186 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 15535 | Funai Elec. Co. v. Daewoo Elecs. Corp., 616 F.3d 1357 | 24+133 | The district court held that because the transfer between the Korean corporations was by a "contract entered in Korea" that is governed by Korean law, the "outgrowth" transfer between the United States corporations was also governed by Korean law. The district court apparently placed some weight on the fact that the Funai entity that owns the infringed patents is itself a foreign company, for the court stated:While New Jersey law on successor liability protects third parties seeking to assert claims against successor corporations, New Jersey's interest in advancing that policy is not involved under the facts here. First, as [Daewoo] point[s] out, the plaintiff in this action is not Funai"USA, but rather Funai Electric Company, Ltd., a Japanese company. Thus, New Jersey has no interest in applying its law to protect Funai. Nor does New Jersey have an interest in having its law applied to Daewoo, as New Jersey law is less advantageous to Daewoo than Korean law.Id. at 14"15. However, it is fundamental to the rule of law that the courts are open to native and alien alike, when affected by a violation of United States law. See Disconto Gesellschaft v. Umbreit, 208 U.S. 570, 578, 28 S.Ct. 337, 52 L.Ed. 625 (1908) ("Alien citizens, by the policy and practice of the courts of this country, are ordinarily permitted to resort to the courts for redress of wrongs and the protection of their rights."). We take incidental note that Funai states that its United States subsidiary that handles Funai's business in the United States, Funai Corporation, Inc., is a New Jersey corporation with its principal place of business in Rutherford, New Jersey. | Courts are open to native and alien alike, when affected by a violation of United States law. | Are the courts of the United States open to aliens? | 007011.docx | LEGALEASE-00137545-LEGALEASE-00137546 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15536 | Corretti, Stella & Savannah Oak, Co. v. Gooch, 113 Miss. 50 | 8.307+76 | The written order given appellee by the Newell Construction Company was a "bill of exchange," under section 4002, Code of 1906, which is as follows: "Bills of Exchange Defined.—When any person or body politic draws an order, by his order in writing, signed by such person or by a proper agent, direct the payment of a sum of money by any other person, the sum therein specified not but due, by virtue thereof, to the person in whose favor the order is drawn, and may be put in suit against the drawer thereof, or against the drawee, if accepted, and the amount recovered. | A written order drawn by a company in favor of creditor for payment of money due company from another was a "bill of exchange" under the definition of Code 1906, § 4002. | What does the term bill of exchange encompass? | Bills and Notes- Memo 211.of.docx | ROSS003035059-ROSS-003035010 | Condensed, SA, Sub 0.71 | | 0 | 1 | | 1 | |
| 15537 | Carter Steel Supply & Fabrication v. Iowa Mid, Ins. Co., 174 N.W.2d 647 | 8.307+76 | When payment is stopped on a check it becomes a promissory note due on demand. Pedersen v. Nielsen, 191 Iowa 599, 181 N.W. 198, 14 A.L.R. 555. Thus the check imports its own consideration. Section 537.2, Code, 1966; Kirby v. Porter, 242 Iowa 805, 48 N.W.2d 860; Burton v. Curran, Co. v. J. A. Whitmer & Sons, 254 Iowa 883, 119 N.W.2d 801. The presumption of consideration is rebuttable but "absence of consideration" and "partial failure of consideration" are affirmative defenses which must be pled and proved. Hart v. Hart (Iowa), 160 N.W.2d 438. Mutual installed thus an affirmative defense which must be pled and proved by the pleader. It admits the facts of the adverse pleading but seeks to avoid its effect. Rule 101, Rules of Civil Procedure. | If payment is stopped on check, check becomes a promissory note due on demand and impairs its own consideration. I.C.A. § 537.2 | Does a check becomes a promissory note on demand when payment is stopped? | Bills and Notes-Memo 129.09.docx | ROSS003189154-ROSS-003189155 | Condensed, SA, Sub 0.83 | | 0 | 1 | | 1 | |
| 15538 | People v. Rittick, 159 Mich. 359 | 63+13 | Corrupt intent is, of course, a necessary element in the crime of bribery. If we are to inquire, however, as we are pointed out in People v. Vinokurow, 321 Mich. 26, 30, 31, 33 N.W.2d 647, 649, "that there be direct testimony as to the intent required in the statute. If such was the case it would be almost a rarity where a conviction could be obtained under this kind of statute. The intent is to be gathered from the acts done and the circumstances under which they were done. Had the crime is alleged to have been committed in the Olds Hotel. The testimony of what was said and done there is flatly barred of an intimation of previous bad relations. The defendant was an experienced business man, trained in the law, and well versed in the uses of the law, as his various antitrust such amply demonstrate. That this man, resisting the transaction by his own agents, would have made no reference in its lengthy discussion, with the board members, of the price and value of at least one of their number, evidence of which he claimed to be gathering, is inherently incredible. That his reluctance to also give a tangible form any reason to legal explates over making such criminality a matter of record is, itself, equally incredible. He was blunt and to the point respecting his payments. "In return for the money I want you to avail on this item. Get this back case a withdraw of." He would also dismiss the antitrust suit which he had instituted against the board members and the Michigan Optometric Association. | Corrupt intent is a necessary element in crime of bribery but it is not necessary that there be direct testimony as to intent required, and intent is to be gathered from the acts done and circumstances under which they were done. | Is it necessary that there be direct testimony as to the intent required in the bribery statute? | 01791.docx | LEGALEASE-00137995-LEGALEASE-00137997 | Condensed, SA, Sub 0.85 | | 0 | 1 | | 1 | |
| 15539 | People v. Smith, 128 Misc. 24733 | 67+46(2) | Defendant contends that the trial court, sua sponte, should have given CALJIC Instruction No. 3.31 that requires a finding that there must exist a concurrence of the act in the commission of the burglary and the specific intent involved. In a crime such as burglary that requires a specific intent, it is essential that the court give an instruction "defining the required concomitant intent." (People v. Ford (1964) 60 Cal.2d 772, 792, 36 Cal.Rptr. 620, 388 P.2d 892.) Emphasis in original.) But there is no requirement that the concurrence of act and intent instruction be phrased in any particular way. Here CALJIC Instructions 14.50 and 14.59 made clear that the requisite specific intent to commit a larceny as assault by means had to produce great bodily injury had to exist at the moment of the defendant's entry into a San's apartment in order for the offense of burglary to occur. | In a crime such as burglary that requires a specific intent, it is essential that court give an instruction defining required concomitant intent. West's Ann Pen Code, § 459. | Does burglary require specific intent? | Burglary - Memo 161-36.docx | ROSS-003290453-ROSS-003290455 | Condensed, SA, Sub 0.81 | | 0 | 1 | | 1 | |
| 15540 | Glenn v. State, 609 S.W.2d 438 | 67+46(2) | Although the statute for burglary does not expressly provide for a culpable mental state, Sec. 30.02(a)(1), supra, it has been held that a culpable mental state is nevertheless required in the prosecution for burglary. V.T.C.A., Penal Code Sec. 6.02(b) and (c); Day v. State, 532 S.W.2d 302 (Tex.Cr.App.1975); Clark v. State, 558 S.W.2d 887(1) (Tex.Cr.App.1977). In this case where the State alleged that an omission of the essential element of the culpable mental state from part of the burglary charge to the jury. The indictment alleged that an omission of an essential element of culpable mental state from jury charge was fundamental error requiring reversal. West's State, 567 S.W.2d 515. | Omission of essential element of culpable mental state from jury charge on burglary constituted fundamental error requiring reversal. V.T.C.A., Penal Code §§ 6.02(b), c), 30.02(a)(1). | Is a culpable mental state required for burglary? | Burglary - Memo 98-35.docx | ROSS-003311587-ROSS-003311589 | Condensed, SA 0.72 | | 0 | 1 | | 1 | |
| 15541 | State ex rel. Rucker v. Feltz, 174 Mo. App. 456 | 200+158 | There can be no reasonable question of the soundness of our decision of the criminal case that the public highway consisted of the entire strip of 60 feet between the fences but that the erection of the post and wire fence upon that strip constituted an unlawful obstruction of the rights of the public. It is a public nuisance, a purpresture that should be abated, and its only question we should further consider is whether or not the end of equity may properly be invoked for its suppression. | The erection and maintenance of a post and wire fence upon a part of the public highway constituting an unlawful obstruction thereof was a public nuisance and should be abated. | Can the unlawful obstruction of a highway interfere with the rights of the public? | Highways - Memo 66-PR.docx | ROSS003330824-ROSS-003302825 | Condensed, SA, Sub 0.69 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 15542 | Withrow v. Withrow, 278 Ga. 325 | 307Ar716 | Counsel must move that a continuance due to the conflicts, a need for further discovery, or in some other basis. See Jagar v. Hicks, 236 Ga.App. 86, 82S(1), 511 S.E.2d 194 (1999); Atlanta West Enterprises v. Cobb County Bank, supra; Moreman v. "[T]he absence of a party's counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement. [Cit.]" Davis v. Barnes, 158 Ga.App. 89, 90, 279 S.E.2d 330 (1981). See also Cotton States Life Ins. Co. v. Edwards, 74 Ga. (2001) (1886); Lewis v. Daryland Ins. Co., 249 Ga.App. 265(1), 212 S.E.2d 165 (1983). Although a continuance was not requested in this case, the trial court did postpone the case until the afternoon, and we find no abuse of discretion in the trial court's refusal to delay the commencement of trial any further. Davis v. Barnes, supra. | The absence of a party's counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement. | Will postponement be allowed for absence of one of several counsels unless the opposite party consents? | 03014 1.docx | LEGALEASE 00173667-LEGALEASE 00173668 | Condensed_SA | 0.84 | | 0 | | | |
| 15543 | Spaulding v. Hotchkiss, 42 N.Y.S.2d 151 | 307Ar644 | The granting of an order for examination before trial is in the discretion of the Court. Granatino, Bank & Trust Co. of Binooville v. Sagamore Apartments, 243 App.Div. 840, 27 S.N.Y.S. 331; Palmyra v. First National Bank & Trust Co. of Lisalon, New York, 194 App.Div. 797, 225 N.Y.S. 896; Public National Bank v. Prudence Co., 260 App.Div. 395; 395. It may not be availed of to annoy or harass the adverse party or for the purpose of a fishing expedition. Yanks v. American Locomotive Co., 241 App.Div. 295, 40 page 271, 198 N.Y.S. 994, at page 996, Hagdan v. New York Stock Co., 137 App.Div. 821, 122 N.Y. 465; Martin v. Rubin, 145 Misc. 859, at page 860, 261 N.Y.S. 65, at page 66. The Court in its discretion denies the defendant's motion for examination of persons | Examination of persons not parties to action before trial may not be availed of to annoy or harass adverse party or for purpose of fishing expedition. | Will examinations before trial which are calculated to harass and annoy the opponent not be granted? | 03101 1.docx | LEGALEASE 00173705-LEGALEASE 00173706 | Condensed_SA, Sub 0.78 | | 0 | 1 | 1 | |
| 15544 | Broome v. Perlman, 178 Misc. 873 | 307Ar911 | In Baldfer v. Rush, 203 App.Div. 206, 191 N.Y.S. 848, 849, the Court pointed out that: 'The intent and purpose of the [civil] practice Act is to remove from proceedings of this character all unnecessary formality, and to permit examinations of adverse parties with as few restrictions as possible.' It this was not here thinking but thought the trial and to breach v. Enbousing Company, Inc., 253 App.Div. 175, 176, 177, N.Y.S.2d 595, 597: 'The time has come when courts of this state, in their definitely understood that the practice of examining an adverse party before trial should not be hampered by technical requirements so long as the inquiry is directed to relevant issues. The trend of present day thought is to permit great liberality in such examinations.' | The practice of examining an adverse party before trial should not be hampered by technical requirements so long as the inquiry is directed to relevant issues. Civil Practice Act, § 288 et seq. | Is the privilege of examining defendants before trial permitted? | 03101 1.docx | LEGALEASE 00173715-LEGALEASE 00173717 | Condensed_SA, Sub 0.75 | | 0 | 1 | 1 | |
| 15545 | Memphis Pub. Co. v. City of Memphis, 871 S.W.2d 681 | 307Ar186 | However ambivalent these considerations may be in the abstract, they are not present in this case because a discovery deposition cannot be classified as attorney work product. The work product protection is designed to prevent one party from discovering materials prepared in anticipation of litigation by the opposing party's attorney; the rule thereby prohibits the party from learning of the adversary's mental impressions, conclusions, and legal theories of the case. Boch v. Davidson, 5 S.W.2d 2, 3d (1965); Chelsea A. Wright and Arthur Miller, Federal Practice and Procedure '' 2024 (1970 and 1993 Supp.). Because the work product doctrine is grounded on the attorney's right to conduct litigation with a certain degree of privacy, these materials are cloaked with a veil of confidentiality. A deposition, by contrast, is inherently a public event, at least in the sense that the opposing party is present when the testimony is taken. And there is nothing, other than a protective order, to prevent the opposing party from disseminating the information he or she learns at the deposition. Therefore, a discovery deposition does not carry with it the requisite attribute of confidentiality needed to classify it as attorney work product. Because we hold that the deposition records within the meaning of the Act, and because they are not excepted by '' 10-7-504, the Court of Appeals' holding on this issue is reversed. | Deposition is inherently public event, at least in sense that opposing party is present when testimony is taken and there is nothing, other than protective order, to prevent opposing party from disseminating information he or she learns at deposition; thus, discovery deposition does not carry with it requisite attribute of confidentiality needed to classify it as "attorney work product." Rules Civ.Proc., Rule 26.02(3). | Is a deposition an inherently public event? | 03358.docx | LEGALEASE 00187464-LEGALEASE 00187465 | Condensed_SA, Sub 0.73 | | 0 | 1 | 1 | |
| 15546 | Mercer v. Andersen, 715 N.W.2d 114 | 30+1208 | The parties or the court may extend the statutory expert review deadlines for good cause. Minn. Stat. § 145.682, subd. 4(b) (2004). The statutory provision permitting extensions, however, must be read in conjunction with rule 6.02 of the Minnesota Rules of Civil Procedure. See Stern v. Dill, 442 N.W.2d 323, 324 (Minn.1989). Rule 6.02 gives the district court discretion to extend deadlines previously set in an order. Minn. R. Civ. P. 6.02. Because a district court has already passed, however, the court may only grant an extension when the failure to act resulted from excusable neglect. Id. 6.02(2). Excusable neglect exists when the plaintiff has a reasonable claim on the merits, has a reasonable excuse for not complying with the section 145.682 time limits, acted with due diligence after learning of the time limit, and will not prejudice the defendant by extending the time limits. Anderson, 608 N.W.2d at 850. The district court has broad discretion to amend scheduling order deadlines, and we review its decision for an abuse of discretion. Broome, 690 N.W.2d at 727. | District court has broad discretion to amend scheduling order deadlines, and appellate courts review its decision for an abuse of discretion. | Does a court have discretion to amend scheduling order deadlines? | 03364.docx | LEGALEASE 00187592-LEGALEASE 00187593 | Condensed_SA | 0.87 | | 0 | | 1 | |

2744

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15547 | Friday v. MAC, A83 So.2d 1269 | 3076+720 | The right of a party to substantially amend pleadings during trial is a matter within the discretion of the presiding judge. LsA C.P. art. 1151; McCall v. United Brokerage Insurance Co., 197 So.2d 490 (La.App. 4th Cir. 1967). Generally, where an amendment presents a new claim or defense which takes the opposing party by surprise, a continuance must be allowed. The record shows that a year-and-a-half elapsed between the filing of the original petition and the date of the trial in this case and that Mrs. Friday was represented by the same attorney throughout this period and that she was entitled to full discovery before trial. Under these circumstances, we find no abuse of discretion in the Trial Judge's refusal to grant Mrs. Friday a continuance. | Generally, where amendment presents new claim or defense which takes the opposing party, by surprise, continuance must be allowed. LSA-C.P. art. 1151. | Does the fact that a complaint is amended in itself entitle the defendant to a continuance? | 031372.docx | LEGALEASE 0037660 LEGALEASE 0037661 | SA, Sub | 0.81 | 0 | | 1 | 1 | |
| 15548 | Uchiu v. Bridges, 255 S.E.2d 659 | 3076+747.1 | The application as one cited in this area is at Hoven's Chapter 212 Ga. 597, 207 S.E.2d 53.3 (1974) as follows: "A pre-trial order should be liberally construed to allow the consideration of all questions fairly within the ambit of contested issues, and where the question of law precluding issues is raised, the matter is within the discretion of the trial judge. Where, as here, the question of law precluding issues is raised in the court's consideration of the matter involved in the ruling, we will not conclude that the court abused its discretion under the pre-trial order..." | Pretrial order should be liberally construed to allow consideration of all questions fairly within ambit of contested issues, and where question of law precluding issues is raised, matter is within discretion of trial judge. Code, § 81A-16. | Should a pretrial order be construed liberally? | Pretrial Procedure - Memo #4762 - C - SK.docx | ROSS-003117784-ROSS-003117787 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | |
| 15549 | Brown v. Gage, 519 S.W.2d 190 | 3076+726 | It is only on the first application that it is not necessary to show that the absent testimony cannot be procured from any other source; on all subsequent applications, this must be shown. Each of the above requirements of rule 252 must be complied with by the defendants before they can complain of the order of the court in overruling their motion for continuance. | It is only on the first application for continuance that it is not necessary to show that the absent testimony cannot be procured from any other source; on all subsequent applications, this must be shown. Rules of Civil Procedure, rule 252. | Should the showing on all subsequent applications for continuance that the absent testimony cannot be procured? | 031711.docx | LEGALEASE 0038075- LEGALEASE 0038076 | SA, Sub | 0.34 | 0 | | 1 | 1 | |
| 15550 | Bolandich v. Dementis, 10 Wash. App. 718 | 3076+726 | In the instant case the action was commenced on August 1967, plaintiffs had been represented by various counsel and six continuances had been granted. The sixth continuance was granted on July 29, 1971 to January 12, 1972, a date suggested by plaintiff husband. In granting the continuance, however, the court imposed the condition that "Plaintiffs shall have no more continuances for any reason." Viewed against the totality of the circumstances brought to the trial court's attention on plaintiff's motion for a seventh continuance, we cannot say the court's exercise of discretion was "upon a ground, or to an extent, clearly untenable or manifestly unreasonable." Friedlander v. Friedlander, 80 Wash.2d 293, 294 494 P.2d 208, 211 (1972). | Where action had been commenced on August 1967, plaintiffs had been represented by various counsel and six continuances had been granted. The sixth continuance was granted on July 29, 1971 to January 12, 1972, a date suggested by plaintiff husband, in granting continuance, court imposed condition that plaintiffs should have no more continuances for any reason, denial of seventh sought by plaintiff was not unreasonable. | Can the court grant the last continuance by imposing a condition that plaintiff should have no more continuances for any reason? | Pretrial Procedure - Memo #4933 - C - RIM.docx | ROSS-003201783-ROSS-003201786 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | |
| 15551 | E. Bank Realty v. Robert, 411 So. 2d 500 | 308+101(1) | An option is considered an offer to sell, irrevocable for the term of the agreement. Goodman Tire & Rubber Co. v. Ruiz, 367 So.2d 793 (La.App. 4th Cir. 1979). In the instant, the power must be express and special when it relates to selling or buying property. LsA C.C. art. 2997. A power of attorney to make a contract to buy or sell real estate must be in writing just as the contract itself must be. | In a mandate, the power must be express and special when it relates to selling or buying property. LSA-C.C. art. 2997. | Should the mandate to buy or sell property be express and special? | 041115.docx | LEGALEASE 0037816- LEGALEASE 0037817 | SA, Sub | 0.72 | 0 | | 1 | 1 | |
| 15552 | Farmers v. Citigroup Inc., 827 F. Supp. 2d 294 | 25T+151 | In sum, a waiver of the right to proceed collectively under the FLSA's unenforceable as a matter of law in accordance with the Gilmer Court's recognition that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute." Gilmer, 500 U.S. at 26, 111 S.Ct. 1647. See also Chen-Oster v. Goldman, Sachs & Co., 785 F.Supp.2d 394 (S.D.N.Y. 2011) (holding arbitral provision waiving right to proceed as a class unenforceable as to Title VII pattern and practice claim). | Although waiver of Fair Labor Standards Act (FLSA) collective action was unenforceable and therefore had to be severed, court could not order arbitration where arbitration policy expressly provided that any claim brought on a class, collective or representative action basis must be filed in a court of competent jurisdiction in the event waiver was found to be unenforceable; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b). | Is a waiver of Fair Labor Standards Act (FLSA) collective action enforceable? | Alternative Dispute Resolution - Memo 648 - SB.docx | ROSS-003300484-ROSS-003300485 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | |
| 15553 | U.S. ex rel. Flannery v. Commanding Gen., Second Army Command, 697 Supp. 661 | 34+22(1) | An individual's military status is established by his contract of enlistment (United States v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636) and his status as such continues until such time as he is terminated by his discharge which apparently was unconditioned. When the appellant claimed to serve out his enlistment and may be tried for his fraud." The manual was approved in 1927 by the Executive Committee of the United States of America Congress (United States v. Williams, D.C., 302 F.2d 201). He has no obligation under his enlistment to do any of the powers vested in him as President and pursuant to Chapter 7 of the Act of June 4, 1920, 41 Stat. 759. This early retirement provision that a soldier obtains discharge by fraud, the discharge may be canceled and the soldier arrested and returned to military control. He may be tried for his fraud." The manual was approved in 1927 by the Executive Committee of the President and Congress. If he had not received such discharge nor been dismissed, "Not." The statement is that there is no constitutional or statutory provision in Articles 3 and other prescribed feeds as it was support. The prescription that the conscription must be just as valid even before Congress and presumably they | Is an individuals military status established by enlistment? | 000937.docx | LEGALEASE 0038679- LEGALEASE 0038680 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | |

2745

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 15554 | Adams Ins. Co. v. Brinkcraft Dev., Ltd., 921 P.2d 591 | 8.307+10 | Designation in promissory note that the note is to be governed and controlled by the law of a particular state... | A choice of law provision specifies that the note is to be governed and controlled by the law... | Which law would govern the promissory note if there is no choice of law provision? | 009403.docx | LEGALEASE 00138816 - LEGALEASE 00138819 | Condensed, SA, 0.31 | 0.31 | 0 | | | | 1 |
| 15555 | Dishman v. Hill, 578 N.E.2d 654 | 83.619+99 | In order for drawer of check who issues stop payment order to avoid statutory penalties in excess of amount of check... | Appellee Hill's position has been the same as the conclusion reached by the Court of Appeals, that "valid legal cause" is an objective concept... | Can a payment on check be stopped when the drawer has a legal right? | 010167.docx | LEGALEASE 00138238 - LEGALEASE 00138239 | Condensed, SA, 0.71 | 0.71 | | | | 1 | |
| 15556 | Bank of New York Mellon v. Deane, 41 Misc. 3d 494 | 83.I+17 | Whenever the rights of a person to enforce an instrument by reason of delivery or assignment are in issue... | Perhaps as a result, the meaning of terms that have particular effect in negotiable instrument law can become blurred... | Who is a holder of an instrument? | 010312.docx | LEGALEASE 00138866 - LEGALEASE 00138867 | Condensed, SA, 0.75 | 0.75 | 1 | 0 | | 1 | |
| 15557 | Heard v. Rizzo, 281 F. Supp. 720 | 129+110 | Used, boisterous and unseemly noise or disturbance must all be present to constitute a noise or disturbance prohibited by the Pennsylvania disorderly conduct statute. 46 P.S.Pa. § 5158, subd. 1. | The Pennsylvania Statutory Construction Act, 46 P.S. 558(1) provides that a penal provision... | What are the elements that constitute disorderly conduct? | Disorderly Conduct Memo #3- PR.docx | ROSS 003292313-ROSS-003292314 | Condensed, SA, Sub 0.71 | 0.71 | | | 1 | | |
| 15558 | Biddle v. Martin, 992 F.2d 673 | 129+103 | Whether particular conduct is disorderly depends not only on conduct itself but also on conduct's unreasonableness in relation to surrounding circumstances. | The facts the officers possessed also were sufficient to establish probable cause to arrest the plaintiff for disorderly conduct... | Whether unreasonableness of the conduct depends upon the conduct and the circumstances in which it occurs? | 014420.docx | LEGALEASE 00138693 - LEGALEASE 00138694 | Condensed, SA, 0.91 | 0.91 | 1 | 0 | 0 | 1 | |
| 15559 | Summit Twp. Rd. Dist. v. Hayes Freight Lines, 44 Ill. App. 2d 274 | 200+182 | Absolute statutory liability may be imposed against any person who damages a highway structure as result of illegal operation upon a highway. | Under Section 15 plaintiff filed this action. Under this section it is clear to us that absolute statutory liability may be imposed against a person who... | Can a person be held liable for damages arising from an illegal operation upon a highway? | 010981.docx | LEGALEASE 00138718 - LEGALEASE 00138719 | Condensed, SA, Sub 0.58 | 0.58 | | | | | 1 |

2746

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,079 |
| 15560 | Work v. W. Nuckler, 462 U.S. 16 | 260v2 | Congress' purpose in severing surface estate from mineral estate in lands gained under Stock-Raising Homestead Act was to encourage concurrent development of both the surface and subsurface of those lands. Stock-Raising Homestead Act, § 9, 43 U.S.C. (1976 Ed.) § 299. | Although neither the dictionary nor the legal understanding of the term "mineral" that prevailed in 1916 sheds much light on the question before us, the purposes of the SRHA strongly support the Government's contention that the mineral reservation in the Act includes gravel. As explained below, Congress' underlying purpose in severing the surface estate from the mineral estate was to facilitate the concurrent development of both surface and subsurface resources. While Congress expected that homesteaders would use the surface of SRHA lands for stock-raising and raising crops, it sought to ensure that valuable subsurface resources would remain subject to disposition by the United States, under the general mining laws or otherwise, to persons interested in exploiting them. It did not wish to entrust the development of subsurface resources to ranchers and farmers. Since Congress could not have expected that stock-raising and raising crops would entail the extraction of gravel deposits from the land, the congressional purpose of facilitating the concurrent development of both surface and subsurface resources is best served by construing the mineral reservation to encompass gravel. | What was the Congress purpose in severing the surface estate from the mineral estate? | 02155.docx | LEGALEASE 00138374-LEGALEASE 00138375 | Condensed, SA, Sub 0.78 | | 0 | 1 | | 1 | |
| 15561 | Stoddum v. Gurnham, 35 Tex. 385 | 307A+722.1 | Where a continuance is asked on account of the absence of a witness who lives in the county and has been subpoenaed, a continuance will be denied when the name of the witness is not shown. | Most of the questions raised by the assignment in this cause have been decided in the case How, Wm. and 197 W. Goddard et al. v. 3. & McMahon, at this term, and which need not now be noticed. We think the court did not err in overruling the motion for continuance. It was the duty of the defendant. Stego, after having been served with a notice to produce a certain paper, to but when the same cause was, or was not, that the paper we entitled to a continuance for the non-production of a writing in his own possession. The affidavit for a continuance is also defective in not setting out the name of the witness for whose testimony the continuance was sought. If it were less manifest that the court did not err in overruling the motion for a continuance, and had not given in the requisite diligence had been used to procure the testimony of the absent witness. We think that under all the proof of this case, the charge asked by the defendant was properly refused by the court and that nothing required that the verdict of the jury and the judgment of the court were manifestly against the weight of evidence or the law of the case, we do not feel authorized to disturb either; and the judgment is therefore affirmed. | Where a continuance is asked on account of the absence of a witness who lives in the county and has been subpoenaed, when the name of the witness is not shown? | 01988.docx | LEGALEASE 00138677-LEGALEASE 00138678 | Condensed, SA, Sub 0.86 | | 0 | 1 | | 1 | |
| 15562 | Flynn v. Royal Dev. Co., 54 N.Y.S.2d 581 | 307A+461 | Where answer contains no affirmative defense and only general denials, plaintiff may examine plaintiff before trial. | The policy of the courts is to allow plaintiff all latitude in permitting examination before trial of the parties to an action. It is discretionary with the court to permit an examination of a party who has the entire burden of proof. A defendant may, in a proper case, examine a plaintiff where the answer contains no affirmative defense and only general denials. Public National Bank v. National City Bank, 261 N.Y. 316, 185 N.E. 395. | Is a party entitled to examine the other party concerning allegations in the complaint or an answer which the party must prove and which are controverted by a general denial? | 01635.docx | LEGALEASE 00138483-LEGALEASE 00138483 | Condensed, SA, Sub 0.69 | | 0 | 1 | | 1 | |
| 15563 | Douglas v. Burley, 134 So. 3d 692 | 307A+747.1 | Rule 4.04 requires that: All discovery must be completed within ninety days from service of an answer to the applicable defendant. Additional discovery time may be allowed with leave of the court upon written motion setting forth good cause for the extension. Absent special circumstances the court will not allow testimony of any expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial. The plaintiffs argue that the rule's designation was proper they complied with Rule 4.04. However, compliance with Rule 4.04 does not excuse a party's failure to adhere to a scheduling order. The plaintiffs' suggestion that Rule 4.04 granted them the right to designate an expert as long as it was sixty days before trial is incorrect. | Compliance with the practice rule providing timelines for completion of discovery does not excuse a party's failure to adhere to a scheduling order. Uniform Circuit and County Court Rule 4.04(A). | 01615.docx | LEGALEASE 00138649-LEGALEASE 00138650 | Condensed, SA, Sub 0.76 | | 0 | 1 | | 1 | |
| 15564 | Coffee v. Spalding, 495 S.W.2d 735 | 307A+691 | The signature of the witness goes to the form, rather than the substance, of the deposition and is not in all events indispensable, as Rule 57.22 by its terms provides otherwise when the witness is unavailable to sign his deposition. BS Davis 1899. In the circumstances of this case, where the defendant has offered offered his own deposition and by the attorney himself in position of vouching for its accuracy we see effectively than his signature could possibly have done'... A deposition was used, or attorneys' disposition because of the informality which results from the absence of his signature. Will Docter Moot Co. v. Hotel Kingsway, supra. (c. 825B). Nor will the deposition be denied the stamp of efficacy as legal evidence because it has been accorded without the signature of the witness because it lacks the signature of the officer by whom the witness was taken. | Deponent's signature to his deposition goes to the form, rather than the substance, of the deposition and is not in all events indispensable. V.A.M.R. Civil Rule 57.22. | 01703.docx | LEGALEASE 00138350-LEGALEASE 00138351 | Condensed, SA, Sub 0.82 | | 0 | 1 | | 1 | |
| 15565 | Barber Mut. Ins. Co. v. Friedlander, 262 A.2d 666 | 307A+726 | Where two continuances covering period of approximately a year had been granted in tenant's insurer's action to recover amount paid after fire, denial of third continuance to locate witness was not abuse of discretion. | On his appeal the plaintiff contends that the denial in this cause of the trial court abused its discretion in denying a further continuance in order that a further effort could be made to locate Federman. Two continuances, covering a period of approximately a year, having been granted, and had no abuse of discretion in denying a third continuance. | Would the denial of defendants' third motion for continuance if suit be an abuse of discretion? | 01734.docx | LEGALEASE 00138340-LEGALEASE 00138341 | Condensed, SA, Sub 0.18 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15566 | Holmes v. Crane, 167 N.Y.S. 735 | 307k+91 | It is unnecessary to make specific reference to many of the grounds urged in support of the motion; … | Where a fiduciary relation exists, the rules prescribed for the examination of a party before trial are relaxed. | Where a fiduciary relation exists, are the rules prescribed for the examination of a party before trial relaxed? | Pretrial Procedure Memo # 1087 - C - 58.docx | ROSS-003291188-ROSS-003291189 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 15567 | Collier Servs. Corp. v. Salinas, 812 S.W.2d 372 | 307k+91.1 | The terms of a settlement agreement are property discoverable to extent Tex.R.Civ.P. 166A(2)(b)(2) … | Terms of settlement agreement are properly discoverable to extent they are relevant. Vern.Ann.Tex.Rules Civ.Proc., Rule 166b, subd. 2, par. 9(2). | Are the terms of a settlement agreement properly discoverable to the extent they are relevant? | 032074.docx | USA4A4CE-0018486 USA4A4CE-0018487 | Condensed, SA, Sub 0.74 | 0.74 | | 1 | 1 | 1 | 1 |
| 15568 | Walbey v. Gentry, 60 Md. App. 350 | 307k+74 | Looking at the notice, caption, and certificate of the notary to the conclusion that the depositions were taken in conformity to the notice. … | The certificate of a notary to depositions taken before him, "that in pursuance of the annexed notice (naming the witnesses) were sworn before me and were severally aware to testify the whole truth, etc., touching the matter in controversy, and that they were examined and their examination reduced to writing and duly taken by them respectively, in his presence, on the day between the hours, and at the place in that behalf aforesaid, etc." is sufficient to show that the depositions were taken in conformity to the notice, and it was not necessary for the notary to state the manner of performing the notice. | The certificate of a notary to depositions taken before him, "that in pursuance … to the notice? | Pretrial Procedure Memo # 1341 - C - RBM.docx | ROSS-003285794-ROSS-003285795 | Condensed, SA, Sub 0.05 | 0.05 | 1 | 1 | 1 | 1 | 1 |
| 15569 | United States v. Prejean, 494 F.2d 495 | 47+25 | Removal is required for yet another reason. Under Texas law the general rule is that one cannot be convicted of burglary unless he entered the premises without the owner's consent. Even if he commits theft once inside … art. 1391(1958), 14 Tex.Jur.2dBurglary "80 (1959). Supp. 1973. | Under Texas law, one cannot be convicted of burglary unless he entered the premises without the owner's consent; even if he commits theft once inside, if the owner consented to his entry, he cannot be convicted of burglary. Vernon's Ann.Tex.P.C. arts. 1389, 1391. | Does burglary require proof of entry without consent? | 032825.docx | USA4A4CE-00190125- USA4A4CE-00190126 | Condensed, SA 0.54 | 0.54 | | 0 | 1 | 1 | 1 |
| 15570 | Myers v. United States, 17 7.3d 890 | 316F+934 | In Raymer v. United States, 660 F.2d 1136, 1139 (6th Cir.1981), cert. held that the Federal Coal Mine Health and Safety Act of 1969 … justify a departure from our decision in Raymer, and we reaffirm that holding now. | Mine Safety and Health Administration (MSHA) inspectors could not be held individually liable for failure to monitor miners' compliance with safety regulations; Tennessee law provided no special duty of care toward individual coal miner like circumstances would owe duty if care to miners or their survivors, and FTCA did not create private cause of action for federal tort … Federal Mine Safety and Health Act of 1977, § 2 et seq., 30 U.S.C.A. § 801. | Is there a private right of action under the mine safety act? | 032637.docx | USA4A4CE-00190353- USA4A4CE-00190357 | Condensed, SA, Sub 0.22 | 0.22 | | 1 | 1 | 1 | 1 |
| 15571 | Weaver v. Jock, 717 S.W.2d 654 | 307k+508 | At the time of the trial, Rule 164 provided that a plaintiff could, at any time before the defendant has taken a nonsuit or a motion for a claim for … recovery, then that right to a non-suit is absolute. It … | Defendant's pleading did not constitute claim for affirmative relief because he was doing nothing more than resisting plaintiff's recovery for work performed; therefore, plaintiff had an absolute right to nonsuit. Vernon's Ann.Texas Rules Civ.Proc., Rule 164. | If defendant is doing nothing more than resisting plaintiff's recovery, is a plaintiff's right to nonsuit absolute? | Pretrial Procedure Memo # 1145 - C - TI.docx | ROSS-003201154-ROSS-003201155 | Condensed, SA, Sub 0.74 | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 15572 | Bivens v. Bivens, 131 Misc. 515 | 307k+501 | The withdrawal of the counterclaim would be equivalent to the discontinuance of the action. No such thing as a party who commences an action may terminate the litigation. Application for leave to discontinue is "addressed to the legal discretion of the court and should not be arbitrarily denied Matter of Butler, 101 N.Y. 307 … | As a general rule, a party who commences an action may terminate the litigation, unless circumstances exist affording basis for exercise of legal discretion authorizing their denial, such in intervention of adverse party's substantial rights. | Can a party who commences an action may terminate the litigation, unless circumstances exist that discretion authorizing their denial, such in intervention of adverse party's discontinuance of the action? | Pretrial Procedure Memo # 1396 - C - SHR.docx | ROSS-003302753-ROSS-003302754 | Condensed, SA, Sub 0.71 | 0.71 | | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15573 | In re Ashcroft, 888 F.2d 546 | 307A+742.1 | The most serious matter raised by the petition is the charge that the District Court attempted to coerce a settlement, by stating that the Governor would be dismissed as a defendant if he paid $500 in settlement to the plaintiff. The law does not countenance attempts by courts to coerce settlements. Kothe v. Smith, 771 F.2d 667 (2d Cir.1985); Del Rio v. Northern Blower Co., 574 F.2d 23 (1st Cir.1978). Pretrial-conference discussion of settlement is designed to encourage and facilitate settlement as early as possible, but it is not designed to impose settlement upon unwilling litigants. See Fed.R.Civ.P. 16(c)(7), Advisory Committee Note, 1983. | Pretrial conference discussion of settlement is designed to encourage and facilitate settlement as early as possible, but is not designed to impose settlement on unwilling litigants. Fed.Rules Civ.Proc.Rule 16 note, 28 U.S.C.A. | What is pretrial conference discussion of a settlement designed to do? | Pretrial Procedure - Memo # 1399 - C - SHB.docx | ROSS-003289070-ROSS-003289071 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15574 | White v. Ballon, 149 N.Y.S.2d 82 | 307A+91 | As to the examination sought, defendants object that plaintiff has failed to state that it is "material and necessary", but the court finds otherwise. While the plaintiff fails to specify the items of inquiry except in a general way, such examinations, however, are favored by the courts and they are not inclined to thwart them on technicalities.Donaldson v. Brooklyn Heights R. Co., 119 App.Div. 513, 514, 104 N.Y.S. 178, 179. It is within their power themselves to define the scope where an examination at all is warranted. Gass v. Nelson, 275 App.Div. 669, 87 N.Y.S.2d 218; Scheuren brand v. Ferrizz, 262 App.Div. 1035, 30 N.Y.S.2d 356. | Examinations of defendants by plaintiffs prior to trial are favored by the courts and are not to be thwarted on technicalities, and it is within their power themselves to define the scope where an examination is warranted. Civil Practice Act, S 296. | Are examinations of defendants by plaintiffs prior to trial favored by the courts and are not to be thwarted on technicalities? | 030972.docx | LEGALEASE-00139169-LEGALEASE-00139170 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 15575 | Richardson v. United States, 38 Ct. Cl. 182 | 34+13.1(13) | Section 1261 of the Revised Statutes provides that the officers of the Army "shall be entitled to the pay therein stated after their respective designations." In those designations we find first and second lieutenants "mounted" and "not mounted," thereby recognizing a condition applicable to officers of that class dependent upon whether they belong to the cavalry or the infantry service. A lieutenant in the cavalry is presumed to be mounted, a lieutenant in the infantry is presumed not to be mounted, and the classification of "mounted" and unmounted pay was intend"d in a general way to mark a distinction between the pay of an officer engaged in the cavalry and an officer engaged in the infantry service. The "mounted pay" was not an allowance, but a part of the officer's pay proper, and the purposes of the personnel act of March 3, 1899, was to fix an equality of pay proper between the officers of the Navy and the Army corresponding in rank, where such pay is not qualified or changed, in the rate of pay of an officer in the Army. | Act March 3, 1899, c. 413, S 13, 30 Stat. 1007, 34 U.S.C.A. S 1158a, provides that commissioned officers of the line of the navy and of the medical and pay corps shall receive the same pay and allowances, except forage, as may be provided by law for officers of corresponding rank in the army. Rev.St. S 1261, 10 U.S.C.A. S 692, provides that officers of the army shall be entitled to the pay therein stated after their respective designations, and designates first and second lieutenants mounted and not mounted; and section 1168 provides that the medical department of the army shall consist of a surgeon general, with rank of brigadier general, and assistant surgeons, with the rank of lieutenant of the cavalry for the first three years of the service, and the rank of captain of cavalry after three years' service. Held, that an assistant surgeon in the navy, with rank of lieutenant, was entitled to the mounted pay given to a lieutenant in the army, as mounted pay is not an allowance, but a part of the officer's pay proper, and the officer to whom it is assigned by statute receives it, whether or not he is actually mounted. | What is the primary objective of the Navy Personnel Act? | 008588.docx | LEGALEASE-00139520-LEGALEASE-00139521 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 15576 | Dixon v. Koplar, 102 F.2d 295 | 289+530 | There is no individual ownership of partnership property until, at least, the partnership has ceased activity and all its debts have been paid. Brindle v. Hiatt, 8 Cir., 42 F.2d 212; United States v. Kaufman, 267 U.S. 408, 45 S.Ct. 322, 69 L.Ed. 685. Under the Bankruptcy Act, 11 U.S.C.A. " 1 et seq., a partnership is a distinct entity, a person separate from the partners who compose it. In re Bertenshaw, 8 Cir., 157 F. 363, 17 L.R.A., N.S., 886, 13 Ann.Cas. 986; Liberty National Bank v. Bear, 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536. | There is no individual ownership of partnership property until partnership has ceased activity and its debts have been paid. | Can a partner claim individual ownership of partnership property only after the partnership has ceased and the debts are paid off? | 022315.docx | LEGALEASE-00139566-LEGALEASE-00139567 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 15577 | L. Fullam & Co. v. Abrahams & Epstine, 29 Kan. 725 | 289+723 | The only question involved in this case is as follows: As between a creditor of an insolvent partnership firm, (the individual members, as well as the firm, being insolvent,) and a creditor of a member thereof, who has the prior right to a fund belonging to such member and in the hands of his debtor,--the creditor of the firm, who has first garnished the debtor, or the creditor of the member, who has subsequently garnished the debtor,--where neither creditor has yet obtained the possession of the fund? This question must be answered in favor of the partnership creditor. But before we proceed further we think it will be proper to state some preliminary matters. In this state "all contracts which by the common law are joint only, shall be construed to be joint and several;" and "in all cases of joint obligations and joint assumptions of copartners or others, suits may be brought and prosecuted against any one or more of those who are liable." Comp. Laws 1879, p. 209, "" 1, 4. And "judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants." Civil Code, " 396. See, also, Alvey v. Wilson, 9 Kan.; Williams v. Muthersbaugh, post, . And the garnishment lien attaches when the garnishee is served with notice of garnishment. Civil Code, " 206. As between creditors of a partnership firm and creditors of the individual members thereof, we suppose that the rule is well settled, where other things are equal, that the property of the partnership must first be applied to the payment of partnership debts, and that the property of the individual members must first be applied to the payment of the debts of such individual members. Switzer v. Smith, 35 Iowa, 269; Rodgers v. Meranda, 7 Ohio St. 179; Glass Co. v. Ludlum, 8 Kan.; Northern Bank of Kentucky v. Keizer, 5 Amer. Law Reg. 75; Davis v. Howell, 33 N. J. Eq. 72; Toombs v. Hill, 28 Ga. 371; Kuhne v. Law, 14 Rich. Law, 20; McCulloh v. Dashiell, 1 Harr. & G. 96; McCormick's Appeal, 55 Pa. St. 252; | The general rule that the property of an individual partner is to be first applied to his individual debts, before it can be resorted to by partnership creditors, does not apply as against partnership creditors who have obtained a prior lien on the property of an individual partner by garnishment or other appropriate judicial proceedings. | Will the property of the individual partners be first applied to the payment of the debts of the individual partners before it is applied to the partnership debts? | 022362.docx | LEGALEASE-00139459-LEGALEASE-00139460 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 15578 | Gray v. City of Opelika, 316 So. 3d 431 | 307k483.1 | We next find that "[w]hether evidentiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction. Rules Civ.Proc., Rule 12..." | Evidentiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction. | Can a party submit evidentiary matters to support a motion to dismiss that attacks venue? | Pretrial Procedure - Memo #1600 - C - SK.docx | ROSS 000218896-ROSS-000218897 | Condensed, SA, Sub 0.92 | | 0 | 1 | 1 | 1 | |
| 15579 | Shrayv. Norra v. United States, 140 F.2d 696 | 24+156 | It is a civil court trying an alien enemy for a crime committed in peacetime, protected by the constitutional provisions in question... | In a civil court trying an alien enemy for a crime committed in peacetime, constitutional safeguards of accused must be maintained... | Are constitutional safeguards available to an alien enemy under criminal prosecution? | 000857.docx | LEGALEASE 00140445-LEGALEASE-00140446 | Condensed, SA, Sub 0.34 | | | 1 | | 1 | |
| 15580 | Williams v. Mason, 10 Mo. 141 | 83I+481 | In the case of Mullanphy v. Riley, 10 Mo. 489, it was held that no written assignment was necessary in order to enable the holder of a promissory note to sue thereon in his own name... | The holder of a negotiable promissory note may sue thereon without any written assignment thereof. | Can the holder of a negotiable promissory note sue without a written assignment? | 007922.docx | LEGALEASE 00140613-LEGALEASE-00140614 | Condensed, SA, Sub 0.76 | | | 1 | | 1 | |
| 15581 | Ramex v. Schterlehs, 15 B.301+266 (Iowa 437) | B.301+266 | We have suggested that this is in most, but an agreement not to sue for a limited time. The mere satisfaction of one, however, is, even at a time of payment, the note made and reduced... | After the maturity of a promissory note the parties made and reduced thereon the following agreement... When is the note payable when no time is fixed for payment? | When is the note payable when no time is fixed for payment? | 005945.docx | LEGALEASE 00140576-LEGALEASE-00140577 | Condensed, SA, Sub 0.34 | | 0 | 1 | | 1 | |
| 15582 | Liberty Nat. Bank & Tr. Co. v. Dvorak, 199 N.W.2d 414 | B.301+266 | "A note is "renewed", within the meaning of that term as used in chapter 91, L. 1931, where a new evidencing the Same obligation is executed and delivered by the maker to the holder of old note..." | A note is "renewed" when a new note evidencing the same obligation is executed and delivered to the holder of old note. | Is there renewal of a note when there is a new note evidencing the same obligation? | 007542.docx | LEGALEASE 00140580-LEGALEASE-00140581 | Condensed, SA | | 0.74 | 1 | | 1 | |
| 15583 | Gross v. Lamm, 77 Rev. 200 | 83I+578 | Although the Findings of Fact and Conclusions of Law do not expressly refer to the Sections 92.059 and 92.089... | Lack of consideration is a defense available to maker as defense against holder in due course, unless holder is a holder in due course. N.R.S. 92.002, 92.031, 92.059, 92.041, 92.065. | Is lack of consideration a defense against a holder in due course? | 003016.docx | LEGALEASE 00140003-LEGALEASE-00140004 | Condensed, SA, Sub 0.86 | | 0 | 1 | | 1 | |
| 15584 | Williams v. Alphonse Mong. Co., 146 So. 2d 600 | 83I+481 | As observed hereinabove, the note was payable to the order of the maker and by her endorsed. Thus, the note is payable to order and by her endorsed was, in fact, payable to bearer and transferable by assignment... | Note payable to order of maker and endorsed by her was payable to bearer and transferable by assignment. | "Does a note payable to order of maker and endorsed by her, payable to bearer and transferable by assignment delivery?" | 010312.docx | LEGALEASE 00140245-LEGALEASE-00140246 | Condensed, SA, Sub 0.5 | | 1 | 1 | | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WBNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15585 | Sohn v. Felter, 589 So.2d 383 | 48A+12 | The clear and unambiguous language of La.R.S. 32:296 proscribes parking on the highway shoulder "[I]t shall be unlawful to park... any vehicle on the shoulder of any highway..." | Broken down vehicle awaiting repair was legally parked on highway shoulder where vehicle did not obstruct flow of traffic, was not hazard to public safety, and was not in an area designated as no parking area, LSA-R.S. 32:123, 32:141, 32:144, subd. B, 32:296, 48:442. | Under what circumstances are parking of a vehicle on the shoulder of the highway proscribed? | 028084.docx | LEGALEASE 0019811 / LEGALEASE 0019812 | Condensed, SA, Sub 0.74 | | 0 | | | 1 | 1 |
| 15586 | Hunnint v. Gaynor, 144 N.Y.S. 123 | 92+170 | It is also claimed for the plaintiff that the payment of these pensions would involve the taking of the taxpayer's property without due process of law contrary to the provisions of the federal and state Constitutions... | The use of public revenue to pay pensions is not a taking of the property of the taxpayer without due process of law. | The use of public revenue to pay pensions is not a taking of the property of the taxpayers without due process of law? | 022764.docx | LEGALEASE 0019910 / LEGALEASE 0019911 | Condensed, SA, Sub 0.9 | | 1 | | 1 | 1 | 1 |
| 15587 | Jones v. Cheney, 253 Ark., 926 | 92+2632 | Technically, a pension constitutes a "mere gratuity" subject to modification or repeal as opposed to a vested right not subject to such impairment... | Technically, pension constitutes mere gratuity subject to modification or repeal as opposed to vested right not subject to such impairment. | Is pension a mere gratuity? | Pension - Memo 18 58.docx | ROSS-003289225 | Condensed, SA 0.88 | | 1 | 0 | | 1 | |
| 15588 | Jack Doe 1 v. Lake Oswego Sch. Dist., 242 Or. App. 605 | 92+632 | As noted, in evaluating whether a complaint states a claim for relief, we look at the facts pleaded, but "disregard any allegations that state conclusions of law."... | Complaint must allege ultimate facts from which the required conclusion, that either plaintiff is or is not entitled to relief, can be drawn; where conclusion is one that may be reasonably inferred from well-pleaded facts, complaint need not allege the ultimate facts. | What is a complaint's stage ultimate facts? | 024615.docx | LEGALEASE 0019983 / LEGALEASE 0019984 | Condensed, SA, Sub 0.81 | | 0 | | 0 | 1 | |
| 15589 | Boyles v. Kerr, 855 S.W.2d 559 | 92+2+6(3) | A pleading should contain "a short statement of the cause of action sufficient to give fair notice of the claim involved..."... | In absence of special exception, petition should be construed liberally in favor of pleader; court should uphold petition as to cause of action that may be reasonably inferred from what is specifically stated, even if element of cause of action is not specifically pleaded. | Should pleadings be construed liberally in favor of the pleader in the absence of special exceptions? | Pleading - Memo 180 - RMM.docx | ROSS-003291164 ROSS-003291169 | Condensed, SA 0.75 | | 1 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,029 |
| 15590 | StandardAir, Inc. Co. v. Pelecanta, 204 A.2d 298 | 95k1 | "While it is abstractly purely equitable origin and nature, it is now settled that, when the right to subrogation itself is practically conceded
and there remains to be enforced only the right of tracking the value of the subject matter, recovery will be enforced in the law courts; it is only the cognizance of a court of law. *** But the right of subrogation will not be recognized at law unless the right of action made the subject thereof is legal in its nature, and is cognizable at law." Baker v. Cleaver, 114 N.J.L. 346, at page 355, 176 A., at page 992 (E. & A.1935) The right does not arise out of contract but instead exists without the consent of the insured (see text omitted) ... Baker v. Cleaver, supra, 114 N.J.L. 346, 354, 176 A. 989. | Although subrogation is of equitable origin and is enforced on equitable principles, recovery is generally sought at law, but right of subrogation will not be recognized at law unless the right of action made the subject thereof is legal in its nature, and is cognizable at law. | Can parties waive or limit a right of subrogation by agreement? | Subrogation - Memo # 1261 - C - SJ.docx | ROSS-003310618 ROSS-003310619 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | | 1 | |
| 15591 | Hartwell v. Iowa State Bd. of Tax Review, 333 N.W.2d 471 | 371v2001 | A tax is a charge levied to pay the cost of government. Nowhere is City of Indianola, 232 N.W.2d 568, 573 (Iowa 1975). Under the cases holding against Hartwell's position, a tax is not paid unless the amount is transmitted to the government, and it may be said that an excise tax is neither charged nor owed. | A "tax" is charge levied to pay cost of government; tax is not paid unless amount is transmitted to government, and does not accrue when it is neither charged nor owed. | Is tax considered as paid if the amount is transmitted to government? | Taxation - Memo # 251 - C - MA.docx | ROSS-003289961 | Condensed, SA 0.43 | 0.43 | 0 | | 0 | 1 | |
| 15592 | United States v. Peskin, 527 F.2d 71 | 63v34 | In determining whether the defendant was a victim of entrapment, such as to negate his alleged criminal intent to bribe, it is relevant, but not controlling, whether the Federal or other state agents instructed or directed the actions of the informant. Unless the evidence is so overpowering as to negate the criminal intent of solicitation, it is not a total defense to bribery charges. 18 U.S.C.A. § 1952. | In Travel Act prosecution of attorney for allegedly bribing village officials for favorable zoning action, trial court properly instructed jury that unless alleged extortion of payments by village officials in return for zoning decision was so overpowering as to negate criminal intent of solicitation, it was not total defense to bribery charges. 18 U.S.C.A. § 1952. | Can extortion be a total defense to bribery charges? | D1442.docx | LEGALEASE-00141997 LEGALEASE-00141998 | Condensed, SA, Sub 0.14 | 0.14 | 0 | | 1 | 1 | |
| 15593 | United States v. Buenrostro, 783 F.3d 864 | 63v31J | The $5,000 element of "666 pertains to "the subject matter of the bribe," which "must be valued at $5,000 or more." United States v. Robinson, 663 F.3d 265, 271 (7th Cir.2011). In other words, the "?business" or "transaction" sought to be influenced must have a value of $5,000 or more." Id. quoting 18 U.S.C. " 666(a)(2). In this case the business or transaction sought to be influenced (the subject matter of the bribe) was the Petrobras pharmaceutical dispensing contract. | The $5,000 element of federal bribery statute pertains to subject matter of bribe, which must be valued at $5,000 or more; in other words, the business or transaction sought to be influenced must have value of $5,000 or more. 18 U.S.C.A. § 666(a)(2). | Is it the subject matter of the bribe that must be valued at $5,000 or more? | Bribery - Memo #634 - C - OS.docx | ROSS-003292900 ROSS-003290904 | Condensed, SA, Sub 0.47 | 0.47 | 0 | | 1 | 1 | |
| 15594 | State v. Winifel, 621 N.W.2d 767 | 63v2 | Appellant was no longer "employed by" the county, and whether he was "acting for" the county or "exercising the functions of a public officer," is ambiguous and unclear. As a criminal statute, Minn.Stat. "609.42 subd. 1(2), must be construed in favor of defendant and against the state. See Corbin, 343 N.W.2d at 875?76. Because the statute of public office (text omitted) ... A conviction that rests upon a material evidentiary ambiguity must be reconsidered such evidence cannot provide proof beyond a reasonable doubt of a defendant's guilt. See State v. Auchampach, 540 N.W.2d 808, 816 (Minn.1995) (citations omitted). | As criminal statute, law prohibiting bribery by public officer or employee, had to be construed in favor of defendant and against state. M.S.A. § 609.42, subd. 1(2), 609.63. | "Where the statute prohibiting bribery by a public officer or public employee's unclear, which side should it be construed in favor of?" | D1965.docx | LEGALEASE-00141626 LEGALEASE-00141627 | Condensed, SA 0.78 | 0.78 | 0 | | 1 | 1 | |
| 15595 | United States v. Bigler, 907 F. Supp. 401 | 63v2 | As several federal courts have recognized, Congress, in enacting Section 666, intended to safeguard those federal resources from misconduct and to police those with control of federal funds. "U.S. v. Rooney, 37 F.3d 847, 851 (2d Cir. 1994) "pursuant the integrity of the vast sums of money distributed through federal programs from theft, fraud, and undue influence by bribery."; see also U.S. v. Frega, 933 F. Supp. for the ... general Welfare." This power, in conjunction with the necessary and proper clause (text omitted) ... Congress can spend money for the general welfare, and, in so doing, its, Congress did not violate the principle of federalism, nor did it violate the tenth amendment. | Congress' power to provide for general welfare in conjunction with necessary and proper clause of United States Constitution which makes it federal offense to corruptly pay anything of value to any person, with intent to influence or reward agent of local government. U.S.C.A. Const. Art. 1, § 8, cl. 18; 18 U.S.C.A. § 666(a)(2). | What is the source of Congress power to control bribery statutes? | D1967.docx | LEGALEASE-00141079 LEGALEASE-00141080 | Condensed, SA, Sub 0.62 | 0.62 | 0 | | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15596 | Pankey v. Atchison, T. & S.F. Ry. Co., 180 Mo. App. 185 | 113+3 | The next charge of negligence is that the engineer should have stopped when Pankey, in moving from the main line over to the house track, passed out of the line of his vision. There was no rule to that effect shown. Nor was any practice or custom requiring the engineer to stop, when the light disappeared from a known cause, shown to be in existence on the Santa F". While it was shown that the same signals were in use on all the roads, yet the testimony all showed that each road had its own rules governing the management of trains and what to do under a given set of circumstances. The witnesses for plaintiff, who testified that the engineer should have stopped when Pankey passed out of the line of the engineer's vision, were not able to state and did not know whether such was the rule and custom in force on the Santa F". And all of defendant's evidence was that such was not the rule nor custom when the reason for the light being no longer seen was known and understood. To make a custom effective it must be shown to have been general, uniform, certain, and notorious, known to the parties, or so general and universal in its character that knowledge must be presumed. Shields v. Railway, 87 Mo. App. 637; Boyd v. Graham, 5 Mo. App. 403; Sweet v. Leach, 6 Ill. App. 212; C., M. & St. P. Ry. Co. v. Lindeman, 143 Fed. 946, 75 C. C. A. 18. | To make a custom effective, it must be general, uniform, certain and notorious, and known to the parties, or so general and universal that knowledge must be presumed. | Under what circumstances will a custom be effective? | 014169.docx | LEGALEASE-00141823-LEGALEASE-00141824 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15597 | Pankey v. Atchison, T. & S.F. Ry. Co., 180 Mo. App. 185 | 113+3 | The next charge of negligence is that the engineer should have stopped when Pankey, in moving from the main line over to the house track, passed out of the line of his vision. There was no rule to that effect shown. Nor was any practice or custom requiring the engineer to stop, when the light disappeared from a known cause, shown to be in existence on the Santa F". While it was shown that the same signals were in use on all the roads, yet the testimony all showed that each road had its own rules governing the management of trains and what to do under a given set of circumstances. The witnesses for plaintiff, who testified that the engineer should have stopped when Pankey passed out of the line of the engineer's vision, were not able to state and did not know whether such was the rule and custom in force on the Santa F". And all of defendant's evidence was that such was not the rule nor custom when the reason for the light being no longer seen was known and understood. To make a custom effective it must be shown to have been general, uniform, certain, and notorious, known to the parties, or so general and universal in its character that knowledge must be presumed. Shields v. Railway, 87 Mo. App. 637; Boyd v. Graham, 5 Mo. App. 403; Sweet v. Leach, 6 Ill. App. 212; C., M. & St. P. Ry. Co. v. Lindeman, 143 Fed. 946, 75 C. C. A. 18. There was no custom shown binding on the parties which made the engineer's act in obeying the deceased's "easy" or "slow" signal, given just before he passed out of sight, instead of stopping, a violation thereof. Plaintiff in effect concedes this, but says she is not relying upon proof of a custom. | To make a custom effective, it must be general, uniform, certain and notorious, and known to the parties, or so general and universal that knowledge must be presumed. | When will a custom be effective? | 014171.docx | LEGALEASE-00141825-LEGALEASE-00141826 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 15598 | Strong v. Grand Trunk R. Co., 15 Mich. 206 | 113+3 | Before any custom can be admitted into the law, it must appear that the usage has been general and uniform, the custom peaceably acquiesced in, and not subject to contention and dispute: Broom's Legal Maxims (5th Am. ed.), 828; see Oelricks v. Ford, 23 How., 49. It is not very clear that the evidence in this case establishes any such custom. The testimony of witnesses shows that the question of shortage is frequently the subject of dispute. Capt. Elsie says: "The custom is sometimes acquiesced in by the captains of vessels, and sometimes disputed. If the shortage is small, they generally pay it; if it is large, they generally dispute it, and leave it to be settled by the owners." Mr. Stephenson, the general freight agent of the defendants, says: "I have known captains refuse to pay the shortage, but we always have the freight in our own hands before we settle. We invariably refuse to pay the captains until the two principals are agreed." Capt. Montgomery, after testifying that the custom is universal, says: "I have known the question of shortage disputed at least a hundred times." Several other witnesses give evidence that the custom is general, but the impression which the whole evidence leaves upon our minds is, that the deduction of shortage is submitted to when the carrier concedes that it is his fault, or where the amount is not beyond what is usual and incident to transportation; but that it is disputed in other cases. A custom varying the common law must be clearly proved; but we do not find clear evidence in this case that ship-owners concede their liability to have deductions made from freight earned, for the value of property receipted for by mistake. That the railway companies assert the right, is fully shown; but it must be generally assented to, as well as asserted, before the custom can be established. | Before any custom can be admitted into the law, it must appear that it has been general, and uniformly and peaceably acquiesced in, and not subject to contention and dispute. | Does a customs usage have to be general and established to be admitted into the law? | 014210.docx | LEGALEASE-00141902-LEGALEASE-00141903 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15599 | Caffroy v. Fremlin, 198 Cal. App. 2d 176 | 260+47 | The owner of land does not have an absolute title to the oil and gas in place as corporeal real property, but rather has the exclusive right to drill for oil and gas upon his premises. (LaLaguna Ranch Co. v. Dodge, 18 Cal.2d 132, 135, 114 P.2d 351, 135 A.L.R. 546.) [As stated in Dabney-Johnston Oil Corp. v. Walden, 4 Cal.2d 637 at page 649, 52 P.2d 237 at page 243: "The owner of land has the exclusive right on his land to drill for and produce oil. This right inhering in the owner by virtue of his title to the land is a valuable right which he may transfer. The right when granted is a profit " prendre, a right to remove a part of the substance of the land. A profit " prendre is an interest in real property in the nature of an incorporeal hereditament." The owner may convey fractional interests in his right to drill for and produce oil, and such a conveyance may pass a vested property interest. (LaLaguna Ranch Co. v. Dodge, supra, 18 Cal.2d 132, 137"140, 114 P.2d 351, 135 A.L.R. 546.) | Landowner does not have absolute title to oil and gas in place as corporeal realty but has exclusive right to drill for oil and gas upon his premises. | Does the owner of land have the exclusive right on his land to drill for1 and produce oil? | 021168.docx | LEGALEASE-00140947-LEGALEASE-00140948 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15600 | Sabandal v. Brundale, 941 So.2d 1542 | 353+1091 | The object of statutory construction is to ascertain and give effect to the intent of the legislature. Barberton v. City of Marden, 78 N.D. 184, 298 N.W. 34; Klingensmith v. Siegel, 37 N.D. 738, 234 N.W. 680; City of Dickinson v. Thress, 69 N.D. 748, 290 N.W. 653. In construing a statute consideration must be given to the entire sense of the words used, their context and the purpose sought to be accomplished. Starks v. City of Dickinson, 76 N.D. 71, 13 N.W.2d 626; Ophaug v. Hildre, 77 N.D. 221, 42 N.W.2d 438; Asbestos v. Bluefield, N.D., 82 N.W.2d 388. In construing the word "minerals" in the instant statute, we cannot do so according to the classifications of animal, vegetable or mineral nor according to the classifications of organic and inorganic substances. To do so would include within the definition of "minerals" a varying degree of many cases a very substantial part of the soil itself and exclude from the definition all those items substances which would be classified as organic substances including oil, gas and coal, which in least in this locality are commonly regarded as "minerals"; see Adams v. City of Dickinson, 76 N.D. 621, 23 N.W.2d 873, wherein we found that a reservation of oil, natural gas and/or minerals should be interpreted and applied as a statutory requirement, included in the statute; see also MacMaster v. Onstad, N.D., 36 N.W.2d 36, | In construing a statute, consideration must be given to ordinary sense of words used, their context, and purpose sought to be accomplished. | "Can the court construe the word ''minerals'' according to the classifications of animal, vegetable or mineral or according to the classifications of organic and inorganic substances?" | 021304.docx | LEGALEASE 00141517 LEGALEASE 00141529 | Condensed, SA | 0.9 | | | | | 9,029 |
| 15601 | Huff Oil v. R.R. Comm'n of Texas, 717 S.W.2d 905 | 260+92.54 | In the purview of this Court, *96.002, by its unambiguous terms, provides that natural gasoline is not crude petroleum oil for purposes of well classification."Oil" is defined as "crude petroleum oil." An oil well is one which produces oil above crude, whereas a gas well produces more than 100,000 cubic feet of gas to each barrel of oil. The definitions of "oil well" and "gas well" in the statute are applicable to wells producing "oil" in its narrow definition, natural gasoline, while a gas well is one which produces more than 100,000 cubic feet of gas to each barrel of oil. The definitions of "oil well" and "gas well" in the statute are applicable to wells producing petroleum oil. | Under statute defining petroleum products for purposes of well classification, natural gasoline is not "crude petroleum oil." V.T.C.A., Natural Resources Code § 86.002. | For the purposes of well-classification is natural gasoline crude petroleum oil? | 021286.docx | LEGALEASE 00141519 LEGALEASE 00141520 | Condensed, SA, Sub (D) | 0.68 | | | 1 | 1 | |
| 15602 | Appeal of Slemmer, 58 Pa. 168 | 289+927 | One partner may at any time withdraw and cause a technical dissolution of the firm, subject to liability to his co-partners if the act is wrongful. | A partner may at any time withdraw and cause a technical dissolution of the firm, subject to liability, to his co-partners if the act is wrongful. | Can a partner withdraw from the partnership at any time? | 027399.docx | LEGALEASE 00141904 LEGALEASE 00141905 | Condensed, SA, Sub (D) | 0.82 | | | | 1 | |
| 15603 | Price v. Hunt, 59 Mo. 258 | 289+663 | This is the evidence in the payment of the note; and when taken in connection with other undisputed facts in the case, shows that if such an amount of the payment it was made at the time of the formation of the partnership, if any, had ceased to exist and the evidence above copied, clearly shows that Mitchell was a mere dormant partner, and to show that of his individual obligation or debt, and there is no evidence to show that either Mitchell or plaintiff consented to such an arrangement. It is settled that a mere member of a firm cannot appropriate the partnership property, without the consent of his co-partners, to the payment of his individual debts, either with or without the knowledge of the creditor that the property belonged to the firm. (Ackley vs. Staehlin, 56 Mo., 558.) | One member of a firm cannot appropriate its property or assets, without the consent of his copartners, to the payment for effect the payment in individual partner debts? | Is mutual consent of all the partners required in a partnership to individual partner debts? | 024064.docx | LEGALEASE 00141945 LEGALEASE 00141946 | SA, Sub | 0.2 | | | | 1 | |
| 15604 | Anzano Ins. Serve, v. Altona Ins & Fin Cty, of Maricopa, 251 Ariz. 48 | 302+11 | Because Arizona is a notice pleading state, extensive factual recitations are not required in complaint. 16 A.R.S. Rules Civ.Proc., Rule 8. Pursuant to Rule 8(a), a complaint must "contain (1)a short and plain statement of the claim showing that the pleader is entitled to relief." Ariz. R. Civ. P. 8(a)(2). Performing analyzing the "short and plain" requirement in a similar context, and our research confirmed, this case is in line the Federal rule, however, is identical to ours. See Fed.R.Civ.P. 8(a)(2). "Because Arizona has substantially adopted the Federal Rules of Civil Procedure, we give great weight to the federal interpretations of the rules." Edward v. Young, 107 Ariz. 283, 284, 486 P.2d 181, 182 (1971). | Because Arizona is a notice pleading state, extensive factual recitations are not required in complaint. 16 A.R.S. Rules Civ.Proc., Rule 8. | Are extensive factual recitations required in a notice pleading state? | Pleading - Memo 195 RMM.docx | RDSS 002189048 RDSS 002189049 | SA | 0.81 | | | | 1 | |
| 15605 | Pepper v. Bentley, 59 So. 3d 6846 | 307A+726 | The Bentleys requested and were granted a continuance of the original trial setting in this case. Neither the Bentleys nor Pepper objected to the second trial setting. On March 29, 2007, the Bentleys filed a response to the trial setting. See Rule 40(a)(1). Pepper and her attorney had notice of the trial setting, and an opportunity to be heard, but Pepper and her attorney's concerns. See Isler v. Isler, 870 So.2d 730 (Ala.Civ.App.2003). Additionally, as in Menendez, Pepper's counsel did not request a continuance. at any time before the March 29, 2007, trial. We therefore presume that the trial court exceeded its discretion by conducting the trial on the scheduled date and entering a judgment for the plaintiff. | Trial court did not exceed its authority by setting a second trial date, after an initial grant of continuance, that left fewer than 60 days before start of date after an initial grant of continuance? | Will the court exceed its authority by setting a second trial date after an initial grant of continuance? | 013324.docx | LEGALEASE 00140768 LEGALEASE 00140769 | Condensed, SA, Sub | 0.48 | | | | 1 | |
| 15606 | Barilla, Waterfront Bank & Loan Co., 51 Barb. 105 | 307A+74 | More formal objections to the return of a commission will not, in general, be regarded at the trial; and I think the practice is a good one which requires the party objecting on such ground, to move the court, before trial, to suppress the deposition on such ground. | More formal defects in the return of a commission for the examination of witnesses will not be regarded on the trial? | Will more formal defects in the return of a commission for the examination of witnesses not be regarded on the trial? | 023543.docx | LEGALEASE 00141963 LEGALEASE 00141964 | Condensed, SA, Sub | 0.6 | | | 1 | | |
| 15607 | Thorpe v. Colbounds, 951 So. 2d 656 | 307A+554 | Initially, a plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts, but the plaintiff contesting jurisdiction on the basis of a motion to dismiss does nothing more than raise the legal sufficiency of the pleadings. To support the motion, "it is the defendant's burden to raise a contention of minimum contacts, the defendant must file affidavits in support of his position. This burden then shifts to the plaintiff to prove, by affidavit, the basis upon which jurisdiction may be obtained. Id. at 660. | A defendant contesting personal jurisdiction has a motion to dismiss. | Can a defendant contesting personal jurisdiction file a motion to dismiss? | Pretrial Procedure - Memo #1617 - C - SAG.docx | RDSS 002389733 RDSS 002389716 | Condensed, SA | 0.89 | | | | 1 | |

2754

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15608 | S. Serv. Co. v. Los Angeles City, 23 Cal. 2d 1 | 371+2001 | The general relationship of sovereign and taxpayer is not founded on nor does it create by any contractual rights. | The foregoing discussion and review leads to the conclusion that the plaintiff possessed no right or remedy arising in contract for which the Political Code which existed apart from the statute itself and which the legislature could not cut off by repeal. The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. Henry v. Washburn, 24 Cal. 318, 390; Spurrier v. Neumiller, 37 Cal.App. 461, 174 P. 338. | Is the general relationship of sovereign and taxpayer founded on or does it create any contractual rights? | Taxation - Memo #426 C - 5-6.docx | ROSS/00238797-ROSS-00238798 | Condensed, SA | 0.76 | 0 | 1 | | 1 | |
| 15609 | S. Serv. Co. v. Los Angeles City, 23 Cal. 2d 1 | 371+2001 | The general relationship of sovereign and taxpayer is not founded on nor does it create by any contractual rights. | The foregoing discussion and review leads to the conclusion that the plaintiff possessed no right or remedy arising in contract for which the Political Code which existed apart from the statute itself and which the legislature could not cut off by repeal. The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. Henry v. Washburn, 24 Cal. 318, 390; Spurrier v. Neumiller, 37 Cal.App. 461, 174 P. 338. | Does the general relationship of sovereign and taxpayer create any contractual rights? | 043189.docx | LEGALEASE-00141154 / LEGALEASE-00141155 | Condensed, SA | 0.83 | 1 | | 0 | | |
| 15610 | Witzenburg v. State ex rel. Wyoming Cmty. Dev. Auth., 575 P.2d 1100 | 263+956(1) | Taxing power of State is practically without limit, but narrowly drawn, not only by the State Constitution but also by the legislature, having only those limited powers of taxation authorized by the legislature. | As expressed in 16 McQuillin, Municipal Corporations (3d Ed.), s 44.05, p. 11: "One of the most essential powers of government is the right to raise revenue to support the government and maintain itself without such power. The power to tax inheres in the state as an attribute of its sovereignty, and is not dependent upon any grant of power in the constitution. Constitutional provisions relating to taxation are not grants of power, but limitations upon the exercise of a power necessarily possessed by every sovereign state. Except as restrained by such provisions, the power of the state to tax is unlimited. Unless it has been delegated, the taxing power is vested in the state legislative department. | Is the political subdivision's taxing power limited to those powers authorized by the legislature? | 043355.docx | LEGALEASE-00141320 / LEGALEASE-00141321 | Condensed, SA, Sub | 0.84 | 0 | 1 | | 1 | 1 |
| 15611 | Heisey v. Sex, 38 Cal. 2d 21 | 371+2003 | The state's taxing power is derived, from its sovereign authority, and not from any contract between taxing authority and the taxpayer. | The state's taxing power is derived from its sovereign authority, not from any contract, but the power of the property. A property tax is based on the ownership of the property. Acklin v. Woodside, 9 Cal. App. 2d 402, 408, 49 P.2d 846; City and County of San Francisco v. County of San Mateo, 17 Cal. 2d 814, 5 P.2d 743, 4 P.2d 849; In re Taxation, 935. The tax bound the taxpayer, and the question between the state and the taxpayer and the owner. | Is a state's power to tax derived from its sovereign authority? | 043360.docx | LEGALEASE-00141338 / LEGALEASE-00141339 | SA, Sub | 0.86 | 0 | | | 1 | 1 |
| 15612 | Gen'l Motors Corp. v. Muskegon Twp., 385 Mich. 576 | 371+2005 | The Constitution authorizes only two general methods of taxation; ad valorem and specific, Const. art. 10, S. 3. | In the Constitution of 1908, art. 10, " ad valorem and specific." The tax here involved was levied by the township pursuant to authority claimed to be found in the general property tax and before its amendment by P.A. 1959, No. 266. The first section of the act declares that all property in the state, real and personal, unless expressly exempted, shall be subject to taxation. The next section sets out what classes of property are exempt. Section 13 provides that the taxable price of all property, with certain exceptions hereafter noted, shall be the township to which the owner resides. | Are ad valorem and specific the only two general methods of taxation? | 043520.docx | LEGALEASE-00141795 / LEGALEASE-00141796 | Condensed, SA, Sub | 0.86 | 0 | 1 | | 1 | 1 |
| 15613 | Casey v. Richland Cty. Council, 282 S.C. 387 | 371+2060 | "Taxes" are imposed on all property for maintenance of government, as opposed to assessments which are placed only on property to be benefited by proposed improvements. | Appellant argues the final judge erroneously held the surcharge was a tax rather than an assessment. We disagree. A tax is an enforced contribution to be levied under the law of the state. Taxes are imposed on all property for the maintenance of government and assessments are placed only on the property to be benefited by the proposed improvements. Colonial | Are "taxes" imposed on all property for maintenance of government? | 043553.docx | LEGALEASE-00142001 / LEGALEASE-00142002 | SA | 0.58 | 0 | | | 1 | |
| 15614 | Vill. of Lombard v. Illinois Bell Tel. Co., 405 Ill. 209 | 371+2160 | "Taxes" are generally defined as burdens or charges imposed by legislative authority on persons or property to raise money for public purposes, or, more briefly, the enforced proportional contribution of persons and property, levied by authority of the state for the support of the government, and for all public needs. | Taxes are generally defined as contribution burdens or charges imposed by the legislative authority upon persons or property to raise money for public purposes, or, more briefly, the enforced proportional contribution of persons and property, levied by the authority of the state for the support of the government and for all public needs. People ex rel. Harding v. Chicago & N.W.R. Co., 331 Ill. 544, 163 N.E. 355; and "licenses," which are generally imposed in the exercise of the police power are such other imposts as are not really taxes. The term "tax," in its broad meaning, includes both general and special taxes, or special assessments, occupational taxes, and privilege or license or franchise or occupation taxes, although broadly speaking the tax here mentioned comes within the term "taxation." These are often imposed upon the exercise of one of the general power to tax, inherent in the sovereignty, vests in the General Assembly. People v. Deep Rock Oil Corp., 343 Ill. 388, 7 N.E.2d 288, 290; In re Swift, 137 Ill. 77, 27 N.E. 354. | Are "excise taxes" charges for privilege arising from use of property? | 043566.docx | LEGALEASE-00141601 / LEGALEASE-00141602 | Condensed, SA, Sub | 0.82 | 0 | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15615 | Lee v. Grandcor Med. Sys., 702 F. Supp. 252 | 25T+182(2) | Furthermore, courts applying federal law have held that a general arbitration clause covers a claim that the plaintiff was fraudulently induced to enter into the underlying agreement. See, e.g., Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967) ("where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud"); Willis v. Shearson/American Express, Inc., 569 F.Supp. 821, 824 (M.D.N.C.1983) (arbitration clause covered claim for fraudulent inducement). | Buyers of hospital did not waive any rights they might have under arbitration clause in transfer agreement by petitioning for removal, filing answer, and requesting jury trial, in action asserting state law claims against buyers for breach of contract, fraudulent inducement, and tortious interference with business relations; plaintiffs did not allege or demonstrate any material prejudice as a result of delay caused by buyers' conduct. | Can a general arbitration clause cover a claim that the plaintiff was fraudulently induced to enter into the underlying agreement? | Alternative Dispute Resolution - Memo 595 - RK.docx | ROSS-003290702-ROSS-003290703 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 15616 | Recognition Equip. v. NCR Corp., 532 F. Supp. 271 | 170A+1264 | The Court is persuaded that Judge Coleman's opinion in Mississippi Power accurately reflects the law with respect to discovery under the Federal Rules pending arbitration under the Federal Arbitration Act. Perhaps the greatest distinction between the Mississippi Power case, and Leona Lee, is that the latter case was brought under section 301 of the LMRA, 29 U.S.C. s 185. There is nothing in the opinion to indicate that the arbitral forum which would hear the claim in Leona Lee had any discovery powers. Thus, "dual discovery" may not have been an issue there and this aspect of the case could be the "factor not made clear" of which Judge Coleman spoke. Therefore, the Court is of the opinion that Leona Lee is not binding precedent for the instant case. In addition, for the reasons set forth so persuasively in Mississippi Power, the Court is of the opinion that, on the facts of this case, discovery under the Federal Rules should not proceed pending arbitration. Time and again courts have concluded that the purposes of arbitration under the Federal Arbitration Act are to facilitate and expedite the resolution of disputes, ease court congestion, and provide disputants with a less costly alternative to litigation. E.g. Portland Const. Co. v. Weiss Pollution Control Corp., 532 F.2d 1009 (5th Cir. 1976); Trade Arbed, Inc. v. S/S Ellispontos, 482 F.Supp. 991 (S.D.Tex.1980). It can hardly be said that discovery under the Federal Rules of Civil Procedure pending arbitration in this case would further those goals. Cf. Order of the Supreme Court, Amendments to the Federal Rules of Civil Procedure, 85 F.R.D. 521, 522 (Powell, J., dissenting); Rosenberg, Discovery Abuse, 7 ABA Journal of the Section of Litigation No. 3 (Spring 1981); Lundquist, In Search of Discovery Reform, 66 ABA J. 1071 (September 1980); Ebersole, Discovery Problems: Is Help on the Way?, 66 ABA J. 50 (January 1980); Umin, Discovery Reform: A New Era or Business as Usual? 65 ABA J. 1050 (July 1979). | Seller, which alleged that it provided buyer with goods and related parts but received payment from buyer erroneously based upon wrong price list, was not entitled to discovery pending arbitration of parties' dispute, as discovery under the Federal Rules of Civil Procedure pending arbitration would not further purposes of arbitration under the Federal Arbitration Act of facilitating and expediting resolution of disputes. 9 U.S.C.A. S 3. | Is providing disputants with a less costly alternative to litigation a purpose of the Federal Arbitration Act? | 007488.docx | LEGALEASE-00143105-LEGALEASE-00143106 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 15617 | In re Marriage of Dorsey, 2014 COA 19, 15, 342 P.3d 491 | 25T+135 | A division of this court affirmed the district court's ruling that the parties' dispute was arbitrable, citing Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F.3d 278, 284 (2d Cir.2005), which held that an arbitration clause is not nullified by a later agreement containing a forum selection clause unless the forum selection clause specifically precludes arbitration, and that if the two agreements can be interpreted to permit arbitration, the court must choose that interpretation. Ahluwalia, 226 P.3d at 1099; see also Pers. Sec. & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 396 n. 11 (5th Cir.2002); UBS Fin. Servs., Inc. v. Carilion Clinic, 880 F.Supp.2d 724, 732 (E.D.Va.2012); Glencore Ltd. v. Degussa Engineered Carbons L.P., 848 F.Supp.2d 410, 435 (S.D.N.Y.2012). | Separation agreement's forum selection clause, which stated that certain state court had exclusive and continuing jurisdiction over matters relating to interpretation and enforcement of agreement, did not preclude arbitration pursuant to agreement's arbitration clause regarding post-marital dissolution dispute as to amount of final property division payment; there was no indication that parties intended for forum selection clause to supersede or revoke arbitration clause, and arbitration clause would have essentially been rendered meaningless if forum selection clause exempted any issue involving interpretation of agreement from arbitration. | Can an arbitration clause be nullified by a forum selection clause? | 007490.docx | LEGALEASE-00143146-LEGALEASE-00143147 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 15618 | Sanford v. H.A.S., 136 F. Supp. 2d 1215 | 25T+145 | Admittedly, the McCarrell decision rested on the existence of a merger clause in the second contract, which barred the enforcement of previous agreements between the parties, see 695 So.2d at 618, and here there does not appear to be a merger clause in any of the documents signed on May 9 by Sanford.Nevertheless, defendants' argument must still fail because it amounts to establishing an exception to the parol evidence rule for arbitration agreements. The parol evidence rule provides "that when the parties reduce a contract to writing intended to be a complete contract regarding the subject covered by the contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter or contradict such writing." Bussey v. John Deere Company, 531 So.2d 860, 862 (Ala.1988). In other words, if the parties considered the May 9 agreement to be a complete understanding between them for the purpose of purchasing the car, then nothing signed by the parties on May 4 can have effect. | Under Alabama law, arbitration agreement between car buyer and seller, which was signed by the buyer on May 4, did not apply to a purchase transaction on May 9, even though the May 4 agreement purported to apply to "all disputes between (the parties) concerning the vehicle," and the buyer purchased the same vehicle on May 9 that was the subject of the May 4 agreement; what was contemplated on May 4 was the May 4 sale, and under the parol evidence rule, the subsequent agreement discharged the prior one, regardless of when the subsequent agreement was made, and the documents signed on May 9 became the fully integrated understanding between the parties when they were signed. | Can parties create an exception to the parol evidence rule through their arbitration agreements? | 007501.docx | LEGALEASE-00143161-LEGALEASE-00143162 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 15619 | In re Cotton Yarn Antitrust Litig., 2005 WL 3274372 | 25T+134(1) | Moreover, numerous cases have noted that arbitration of disputes is standard in the textile industry. See Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 296 (2d Cir.1999) ("We believe that a textile buyer is generally on notice that an agreement to purchase textiles is not only likely, but almost certain, to contain a provision mandating arbitration in the event of disputes, and must object to such a provision if it seeks to avoid arbitration."); Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 733 (4th Cir.1991) (" "[I]n industries such as fabrics and textiles ... the specialized nature of the product has led to the widespread use of arbitration clauses and knowledgeable arbitrators." " (quoting Pervel Indus., Inc. v. T M Wallcovering, Inc., 871 F.2d 7, 8 (2d Cir.1989))); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987) ("[T]he widespread use of arbitration clauses in the textile industry puts a contracting party ... on notice that its agreement probably contains such a clause."); Helen Whiting, Inc. v. Trojan Textile Corp., 307 N.Y. 360, 121 N.E.2d 367, 370 (1954) ("[W]e can almost take judicial notice that arbitration clauses are commonly used in the textile industry....").We conclude that this evidence is sufficient to establish that arbitration is a usage of trade in the textile industry. | Under North Carolina law, arbitration of disputes was well-established custom in textile industry, and thus arbitration was automatically part of agreements reached between yarn manufacturers and purchasers, even though parties' oral agreements did not provide for arbitration, and purchasers contended that they were unaware that arbitration was standard practice, where "Yarn Rules" incorporated in sales contracts and confirmations indicated that arbitration of disputes was standard practice, and numerous cases noted that arbitration of disputes was standard in textile industry. West's N.C.G.S.A. SS 25-1-201(b)(3), 25-1-303(c), 25-2-207(2)(b). | Will the widespread use of arbitration clauses in an industry put a contracting party on notice that its agreement contains an arbitration clause? | 007503.docx | LEGALEASE-00143163-LEGALEASE-00143165 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15620 | United States v. Smith, 124 F. Supp. 406 | 34+20 (11) | This brings me to the proposition as to whether Congress could enact a draft law which would include such notion as work and service under the Thirteenth Amendment. Congress has the constitutional power to compel Mr. Smith to perform military service in spite of his conscientious objection to military service or his religious convictions. Brooks v. United States, 2 Cir., 147 F.2d 134; Warren v. United States, 6 Cir., 177 F.2d 596; Tyrrell v. United States, 9 Cir., 200 F.2d 8, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346. Under the conditions which justify a selective service statute, it is the duty of Congress to provide an armed force to preserve the nation. Warren v. United States, 10 Cir., 177 F.2d 596. It is within the grant of Congress that Mr. Smith must be compelled to do civilian work, rather than required to bear arms. Roodenko v. United States, 10 Cir., 147 F.2d 752; Richter v. United States, 9 Cir., 181 F.2d 591; United States v. Henderson, 7 Cir., 121 F.2d 933. Congress has allowed Mr. Smith to claim a classification as a conscientious objector thereby excusing him from all work connected in any way with the armed forces. This is in fact a privilege and not in lieu of a duty and a necessity to defend our country by bearing arms. The Thirteenth Amendment reduces the duties of our citizens, nor be deprived our government of it's war powers, nor its power to provide for the Judicial Defense. Butler v. Perry, 240 U.S. 328, 337 ff, 36 S.Ct. 258, 60 L.Ed. 672. Since a draftee in the armed forces is not forced into involuntary servitude in violation of the Thirteenth Amendment, surely a conscientious objector who asked for and has been granted the privilege of not bearing arms, is not in involuntary servitude when assigned to perform work. Congress had the power and the authority to adopt the statute quoted above, and Sections 16601 of Selective Service Regulations properly included provisions of the statute. | Congress has the constitutional power to compel military service in spite of one's religious convictions or conscientious objection to perform military service. | Does Congress have the power to compel a conscientious objector to perform military service? | 000613.docx | LEGALEASE 00142160 - LEGALEASE 00142161 | Condensed_SA, Sub 0.95 | | 0 | 1 | 1 | 1 | |
| 15621 | Lancaster v. State, 21 Ala. App. 140 | 34+36 | The fact that this defendant and those with whom he is alleged to have conspired were in a campaign passes over tell the fact that the National Guard of the state, and stationed in or the state near the place where this crime was committed, was relevant as preliminary proof. Such evidence could not and should not be taken as a fact in itself to establish the conspiracy. The voluntary service of the citizen soldier is the highest type of patriotism. The sacrifice of private interests, of the time, property, and even of life itself, to maintain the sovereignty of the state. Such service should not be rewarded by the application of a rule that would make any act of citizen soldier a necessity suspected and a professed aim establishing his guilt in the commission of a crime, even though that crime may have been committed by some of those individuals engaged in a similar service. On the other hand, the fact of his being a soldier in the service of the state cannot exempt him from crime or change rules of evidence. | Fact of defendant's being a soldier does not exempt him from crime or change rules of evidence. | Does the fact that the defendant is a soldier exempt him from a crime? | 000825.docx | LEGALEASE 00142227 - LEGALEASE 00142228 | Condensed_SA, Sub 0.91 | | 0 | 1 | 1 | 1 | |
| 15622 | Brown v. Patella, 24 Cal. App. 2d 362 | 83E+481 | The defendant places much importance upon the fact that there was no consideration passing from the plaintiff to the bank. It was not necessary that plaintiff prove any consideration passing from him to his assignor for assignment, the assignment, especially where the evidence shows that the assignment was made for collection. Anderson v. Wickliffe, 178 Cal. 120, 122, 172 P. 381; Anderson v. Gall, 174 Cal. App. 188, 193, 57 P.2d 1120. | In action on note assigned to plaintiff, it was not necessary that plaintiff prove any consideration passing from him to his assignor for assignment, especially where evidence showed that assignment was made for collection. | Is it necessary to prove consideration for an assignment? | Bills and Notes - Memo 560 - RK.docx | ROSS-003204301 | Condensed_SA, Sub 0.47 | | 0 | 1 | 1 | 1 | |
| 15623 | Allen v. Commercial Credit Co., 155 Ga. 545 | 83E+481 | Where a promissory note is payable to some particular person or bearer, the holder can sue thereon in his own name, even where he has no beneficial interest in the paper whatsoever. Lynch v. Lott, 125 Ga. 275; Hawkins v. Central R. 43 Ga. 415; Greer v. Wardlaw, 60 Ga. 613. In such a case the title to the instrument by its terms is put in the holder thereof. When the note is payable to a named person or order, the holder thereof, other than the payee, cannot sue thereon in his own name, even where he has beneficial interest in the note, unless the legal title to the paper has been vested in him by proper assignment in writing of the note is necessary to put the legal title in the holder. Atkinson v. Bennett, 103 Ga. 65; 12 Atlantic 322; 327; North v. Kizer, 101 Ga. 224; 28 S.E. 621; 74 Am.Dec. 282; 41 S.E. 113; Arnold v. Smith, 109 Ga. 424; 34 S.E. 805; Herring v. First Nat. Bank, 13 Ga. App. 492; 79 S. E. 359. The assignment in writing of such an instrument need not be in the form of an allegation attached thereto, to pass the legal title to the holder; and an allegation that the instrument has been assigned in writing is sufficient as against a general demurrer. Citizen's First National Bank v. Wilson, 155 Ga. 321; 116 S. E. 316. Without such indorsement or assignment in writing, the holder takes the paper as a mere chose in action, and he cannot recover thereon in his own name. | Assignment in writing of note payable to named person or order need not be in manner provided or be indorsed thereon or attached thereto to pass legal title to the holder? | Is an assignment in writing necessary to pass legal title to the holder? | Bills and Notes - Memo 572 - RK.docx | ROSS-003208060+ROSS-003208061 | Condensed_SA, Sub 0.9 | | 0 | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15624 | United States v. Leyva, 282 F.3d 623 | 63+1(1) | Use of an official position was not an element of the bribery offense, plain language of statute required only that the public official accept a thing of value in exchange for perpetrating a fraud, and absence of any official act requirement in particular pointed in light of explicit "official act" or "official acts" language in other subsections of statute. 18 U.S.C.A. § 201. See "201(a)(3)" defining "official act"); "201(b)(1)(A) (prohibiting paying an official "with intent to influence any official act"); "201(b)(2)(A) (prohibiting a public official from accepting payment in return for "the performance of any official act"); "201(c)(1)(B) (prohibiting giving or receiving value for or because of official act) "official", duty of a public official); see also Section"(Heart v. United States, 498 U.S. 192, 404, 111 S.Ct. 840, 112 L.Ed.2d 993 (1991) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted) (alteration in original)). Although the government... | Here, the plain language of "201(b)(2)(B) requires only that the public official accept a thing of value in exchange for perpetrating a fraud. The absence of any official act requirement is particularly pointed in light of explicit "official act" or "official acts" language in other subsections of 201. See "201(a)(3) defining "official act"); "201(b)(1)(A) (prohibiting paying an official "with intent to influence any official act"); "201(b)(2)(A) (prohibiting a public official from accepting payment in return for "the performance of any official act"); "201(c)(1)(B) (prohibiting giving or receiving value for or because of official act) "official", duty of a public official); see also Section"(Heart v. United States, 498 U.S. 192, 404, 111 S.Ct. 840, 112 L.Ed.2d 993 (1991) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted) (alteration in original)). Although the plain language of "201(b)(2)(B) may not square with Leyva's personal understanding of bribery, application of the subsection as it stands does not lead to an unreasonable or impossible result. We therefore hold that the use of an official position is not an element of the offense under " 201(b)(2)(B). | Is the use of an official position an element of the bribery statute? | 01561.docx | LEGALEASE-00142455-LEGALEASE-00142456 | Condensed, SA, Sub 0.72 | 0.72 | 0 | 1 | 1 | 1 | |
| 15625 | United States v. Synowiec, 333 F.3d 786 | 63+1(1) | Statute prohibiting bribery of a public official is satisfied if a defendant expresses an ability and a desire to pay the bribe. 18 U.S.C.A. § 201(b). | Synowiec's view of what is necessary for an "offer" under the bribery statute is too rigid and formalistic. It is not necessary for a briber to be familiar with Williston on Contracts in order to make an illegal offer. Under the statute, it is sufficient that a defendant expresses an ability and a desire to pay the bribe." United States v. Rasco, 853 F.2d 501, 505 (7th Cir.1988). This can be done in the offeror's use of the circumstances of conversation with a simple work and an illustrated offer of the corruption with intent to bribe and nothing stands in the offer's way, then the offer is made. A clear that something of value will pass to a public official if he takes improper, or wishes to pursue, action. And we think Synowiec's actions and statements, both on February 24 and in the earlier discussion with his brother when he handed his made forms together in a universally understood gesture implying money, pass the test. The requirement that a defendant expresses "an ability and desire to pay a bribe" in order to satisfy the bribery statute serves a useful purpose in that... | Is the offering of a bribe complete when a defendant expresses an ability and a desire to pay the bribe? | 01612.docx | LEGALEASE-00142812-LEGALEASE-00142813 | Condensed, SA, Sub 0.89 | 0.89 | | 1 | 1 | 1 | |
| 15626 | State v. Balderston, 156 Conn. App. 65 | 63+1(1) | Under federal law, a bribery conviction must be based on more than evidence of mere preparation; it must progress to the point that the defendant made an offer that constituted an expression of a desire and an ability to pay the public official for performing a proscribed act. 18 U.S.C.A. § 201(b). | Under federal law, a bribery conviction must be based on more than evidence of mere preparation; it must progress to the point that the defendant made an offer that constituted an expression of a desire and an ability to pay the public official for performing a proscribed act, 18 U.S.C. § 201(b), and federal cases interpreting an "offer" under 18 U.S.C. § 201(b), and... | "Under bribery statute, can a bribery conviction be based on evidence of mere preparation? | 02263.docx | LEGALEASE-00142354-LEGALEASE-00142355 | Condensed, SA | 0.38 | | 1 | 0 | 0 | |
| 15627 | Louisiana Sav. Ass'n v. Trahan, 415 So. 2d 592 | 113+8 | Defendants contend the Association's prior practice of permitting sale and acceleration constitutes a "custom" within the contemplation of LSA-C.C. Article 3 and therefore prevented the enforcement of the "due on sale" clause in this mortgage. Jurisprudence construing Civil Code Article 3 is to the effect that a "custom" or "usage" of a particular locality or "practice" may prevent the enforcement of an express statutory provision. See LSA-C.C. art. 3; Provident Credit Corp. v. Gautreau, 158 La. 375, 104 So. 127 (1925). In the present case, we have an express statutory and unmistakable contractual provision. Clearly, neither custom, usage nor practice can prevent the enforcement of the statute or the contract which authorizes the exercise of the option. | Defendants contend the Association's prior practice of permitting sale and acceleration constitutes a "custom" within the contemplation of LSA-C.C. Article 3 and therefore prevented the enforcement of the "due on sale" clause in this mortgage. Jurisprudence construing Civil Code Article 3 is to the effect that a "custom" or "usage" of a particular locality or "practice" may prevent the enforcement of an express statutory provision. See LSA-C.C. art. 3; Provident Credit Corp. v. Gautreau, 158 La. 375, 104 So. 127 (1925). In the present case, we have an express statutory and unmistakable contractual provision. Clearly, neither custom, usage nor practice can prevent the enforcement of the statute or the contract which authorizes the exercise of the option. | "May custom, usage or practice may prevent enforcement of an express statutory provision? | 04254.docx | LEGALEASE-00142816-LEGALEASE-00142817 | Condensed, SA, Sub 0.86 | 0.86 | | 1 | 1 | 1 | |
| 15628 | Bank v. Sherman, 282 A.2d 289+950 | | Once dissolution occurs, wind up begins. See McCollum Am., Corps. & Ass'n, "§756 (effect of dissolution on authority of partner.) After dissolution, a partner can bind the partnership to any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution. See Beckham, supra, 379 A.2d at 406; McCollum Am., Corps. & Ass'n, § 791 ("after dissolution partners can bind the firm by dissolution bring prior to termination on completion of the winding up of partnership affairs, since the wind up includes the satisfaction of partnership debts owed to third parties and payment to partners.) More dissolution prior to winding up." See SPA Am. Jur.2d Partnership (1991) 706 (1995). Thus, wind up entitles a partner to settle the partnership affairs after dissolution. See McCollum Am., Corps. & Ass'n, § "§901, 602, 604. | Once dissolution occurs, wind up begins. See McCollum Am., Corps. & Ass'n, "§756 (effect of dissolution on authority of partner.) After dissolution, a partner can bind the partnership to any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution. See Beckham, supra, 379 A.2d at 406; McCollum Am., Corps. & Ass'n, § 791 ("after dissolution partners can bind the firm by dissolution bring prior to termination on completion of the winding up of partnership affairs, since the wind up includes the satisfaction of partnership debts owed to third parties and payment to partners.) More dissolution prior to winding up." See SPA Am. Jur.2d Partnership (1991) 706 (1995). Thus, wind up entitles a partner to settle the partnership affairs after dissolution. See McCollum Am., Corps. & Ass'n, § "§901, 602, 604. | "Under Maryland law, after dissolution, partner can bind partnership by any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution. McCollum, Corporations and Associations, 379-404. | Partnership - Memo 4542 - I5.docx | ROSS-003292893-ROSS-003293894 | Condensed, SA, Sub 0.74 | 0.74 | | 0 | 1 | 1 | |
| 15629 | Stubbs v. Fleming, 50 Ga. 354 | 307A+74 | A direct interrogatory, added, without notice to the other party, after the interrogatories were crossed, should be disregarded, and including the answer to that interrogatory... | A direct interrogatory, added, without notice to the other party, after the interrogatories were crossed, should be disregarded, and excluding the answer to the interrogatory... | "Should a direct interrogatory, added without notice to the other party, be disregarded? | Pretrial Procedure - Memo 8 5412 - C - P8.docx | ROSS-003288819 | Condensed, SA, Sub 0.29 | 0.29 | | | 1 | 1 | |

2758

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 15630 | Steiner Transcation Intl. v. Efremov, 459 So. 3d 871 | 307A+582 | As a general rule, when considering a motion to dismiss, a trial court is limited to the allegations within the four corners of the complaint and any attachments. However, there are several exception to this general rule. For example, a court is permitted to consider evidence outside the four corners of the complaint where the motion to dismiss challenges subject matter jurisdiction of personal jurisdiction, or where the motion to dismiss is based upon forum non conveniens or improper venue. A motion to dismiss based on a contractual forum-selection clause is similar, in that respects, to a motion to dismiss for improper venue. We can discern no reason for treating them differently for purposes of applying the exception to the "four corners" rule. This is especially so because, in Florida, forum-selection clauses are presumptively valid and it is the burden of the party seeking to avoid that contractual agreement to establish that trial on the contractual forum should be so patently unfair and inconvenient that he set for all practical purposes be deprived of his day in court." Cornec, S.L. v. VMC Interv. Franchising, LLC, 909 So. 2d 845, 847 (Fla. 3d DCA 2005) (quoting Manrique v. Fabbri, 493 So.2d 437, 440 (Fla. 1986)). Accordingly, we reverse the trial court's order denying Steiner's motion to dismiss, and remand for proceedings consistent with this opinion. | "When considering a motion to dismiss, is a trial court limited to the allegations within the four corners of the complaint and any attachments. | Pretrial Procedure - Memo #3425_C - RE.docx | ROSS-003189813-ROSS-003189813 | Condensed_SA | 0.88 | | | | 23,876 | |
| 15631 | M.L. v. Elkmont Health/ Mohawk Mental Health CMHC, 859 L.Ed.129 | 134-6 | In their respective appellate briefs, Elkmont advocates and M.L. concede that the case is most likely moot. See of Commitment expired on March 5, 2017. Therefore, this court cannot render effective relief to M.L. See In re: Commitment of D.K., 691 N.E.2d 248 (Ind. Ct. App. 2023). The case is, therefore, moot. "Where a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." Id. However, although moot cases are usually dismissed, Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of "great public interest." Id. Typically, cases falling on the "great public interest" exception "contain issues that are likely to recur. Id. | Will a case that is rendered moot be dismissed? | Pretrial Procedure - Memo #3425_C - SK.docx | ROSS-003189913-ROSS-003189918 | Condensed_SA | 0.86 | | | | 1 | |
| 15632 | Marsh v. H & Bloom & S., 307A+552 Harris v. Ind., 731 | | Once a controversy has become moot, a trial court should enter an order of dismissal. We do not decide otherwise in cases where, as here, a question of great public interest is at stake. Id. | Should a trial order an order of dismissal once a controversy has become moot. | | ROSS-003189801-ROSS-003189803 | Condensed_SA | 0.56 | | 0 | | 1 | |
| 15633 | State v. W.R., Jr., 181 Wash. 2d 757 | 352H+191 | Seizing upon this logic, W.R. argues that our recent precedent. We have analyzed the burden of proof for consent in rape cases two in the past 25 years. State v. Gregory, 158 Wash.2d 759, 807 P3d, 147 P.3d 1201 (2006); Camara, 113 Wash.2d 631 807 N.E. 781 P.2d 483 both here, we concluded that under the current rape laws, the State has the burden of proving forcible compulsion and that consent is an affirmative defense that can be raised and proved by the defendant. Gregory, 158 Wash.2d at 807x34, 147 P.3d 1201; Camara, 113 Wash.2d at 647x41, 781 P.2d 483 I disagree with the majority's decision to discard this recently confirmed precedent, particularly in light of the decision's real world consequences for rape victims seeking justice. The majority overlooks the harm that its holding will cause to the victims of rape, who will now face a trial centered around their conduct. | Does the State bear the burden of proof in rape cases involving forcible compulsion and provides sufficient evidence to support the defense, the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion. West's RCWA 9A.44.050(1)(a). | | LEGALEASE-00016466-LEGALEASE-00016467 | Condensed_SA, Sub 0.67 | | 0 | | 1 | |
| 15634 | People v. Kuntila, 132 Ill. App. 3d 248 | 211+1724 | In oral argument, counsel for defendant has waived the claim that proof of age was insufficient to meet the burden of proof. Because the burden of proof for consent in rape cases is charged, defendant has the burden of the offense and the evidence. The People (Salt, 266 Ill. 15, 397 NG, 303 N.E. 1041 (1915)). The People v. Mazur, 364 Ill. 516, 517, 182 N.E. 608 (1932). People v. Wilson, 244 N.E.2d 492, 409 N.W (8 App.1970). The same reasoning should apply to the forcible compulsion of assault, in our opinion. | When forcible rape for forcible vince sexual assault is charged, defendant has the burden of proving that he is under age and does not have to allege or prove the fact. | 041607.docx | LEGALEASE-00014546-LEGALEASE-00014567 | Condensed_SA, Sub 0.78 | | | | 1 | |
| 15635 | Winnebago Tribe of Nebraska v. Stovall, 341 Kan. 64 | 371+2055 | KDR argues we should apply the doctrine of operative construction and adopt KDR's interpretation of K.S.A. 79-3703 et seq. KDR proceeds to enumerate various rules of construction thus applied to construing the statutes which we have previously held to apply. However, as we have previously stated, for that reason, we cannot give KDR's interpretation deference. As we previously explained, the court in K.S.A. 79-3703 et seq. are unambiguous. We therefore interpret the language of that statute without the deposition language of 79 T1408(b), a fair interpretation of the taxpayer's language and lead to the same conclusion. We find the right to paid only once. The Act does not impose the tax on any other entity. We need go no further to hold that the imposition of the tax should give effect to their intent as clearly expressed in 79-3408(b). Absent uncertainty or ambiguity as the definite of operative construction is not applicable. Where a statute is plain and unambiguous we must ascertain the legislature's intent from the statute, for that reason, we cannot give KDR's interpretation of K.S.A. 79-3703 et seq. deference. As we previously explained, the court in K.S.A. 79-3703 et seq. are unambiguous. We therefore conclude that the language of the statute, when reasonable doubt as to the meaning of a taxing act exists, it must be construed most favorably to the taxpayer. | Is the right to tax a penal in nature? | | LEGALEASE-00014585-LEGALEASE-00014586 | Condensed_SA | 0.91 | | | | 1 | |

2759

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15636 | Cherokee State Bank of St. Paul v. Wallace, 203 Minn. 582 | 371v2955 | The power of taxation is inherent in sovereignty and under our system of government reposes with the legislature; and with such limitations as are fixed by our State and federal Constitutions. To be remembered also, the state constitutional provisions are not a grant of power but only limitations thereon, Reed v. Bjornson, supra that is to say the power to tax, the taxing power, these being the agencies of the state and to the state government, no such power resides in the state. It must necessarily in the exercise of this power be limited to and conform with the restrictions fixed by constitutional provisions. Hence the state may not go beyond the power organized as that would necessarily bring about nothing but deprive individuals. 103A. of Anastasia v. First Nat. Bank, 164 Minn. 235, 204 N.W. 874, 205 N.W. 375, affirmed 271 U.S. 561, 47 S.Ct. 463, 71 L.Ed. 774. Obviously, then our legislature could go no further than constitutional by Rev. Ch.15-1, § 231, as amended, 12 U.S.C.A. 548. But we think it must be equally clear that limitation of power to tax shares in national banks does not limit, much less deprive, the state of its constitutional power to tax corporations of its own character. We must remember then that the legislative power to select proper subjects of taxation and to classify them rests within state jurisdiction. Congress having plenary authority respecting national banks could well deem it proper to leave the law undisturbed so as to avoid its instrumentalities of the government might be locally taxed, or not taxed at all. This, however, does not detract from the power the right of this state to provide for a system of taxation as to its own citizens, whether individual or corporate. | The state constitutional provisions relating to power of taxation are not a grant of power but only a limitation thereon. Const.Minn. art. 9, § 1. | Are the state constitutional provisions relating to power of taxation a grant of power or only a limitation? | 040564.docx | LEGALEASE-00142152-LEGALEASE-00142153 | Condensed, SA, Sub3 | 0.92 | 0 | | 1 | | |
| 15637 | Rogers Park Post No. 108, Am. Legion v. Brenza, 8 Ill. 2d 286 | 371v2366 | It is the well settled rule of law in the State of Illinois that all property is subject to taxation, unless exempted by statute, in conformity with the constitutional provisions relating thereto. Taxation is the rule tax exemption is the exception. | In Illinois, all property is subject to taxation unless exempt by statute, in conformity with constitutional provisions relating thereto. S.H.A.Const. art. 9, § 1; Ill.Rev.Stat.1953, ch. 120, § 500(7). | Is all property presumed to be subject to taxation? | Taxation - Memo # 654 - C - AF.docx | ROSS-003137083-ROSS-003137084 | Condensed, SA, Sub 0.19 | 0.19 | 0 | | | 1 | |
| 15638 | De Blois v. Commr of Corps. & Taxation, 276 Mass. 437 | 371v2960 | The word "business" as used in said section 5 is a word of wide import. It may include a large field of activity underlies for gain and profit. Whipple v. Commissioner of Corporations & Taxation, 263 Mass. 476, 485, 480, 161 N.E. 593. It is not employed in any abstract sense but in a highly practical signification. It must be taken to be limited by the specific implications of section 22(a) to the effect that no return is required of income derived from real estate by one who is not engaged in any business in so returns by inhabitants subject to an income tax are explicit. They are designed to afford to the taxing official complete and accurate information on which the tax can be accurately levied. White of course that official is not bound by the return, the purpose of the statute is to give him through the return adequate data as to the amounts and sources of the income of the inhabitants. It cannot rightly be thought that the legislature, in providing for a report on the income tax return from any trade, business of the taxpayer, would thereby intend that such income on which profit specified that no return be made of income of that nature, that is to say, income from real estate. The income here obtained comes from the rental of real estate. That is imposed by G. L. c. 62, a property tax and not an excise tax. Harris v. Commissioner, 241 Mass. 37, 135 N.E. 122, Opinion of the Justices, 220 Mass. 613, 623, 624, 108 N. E. 570. It is common knowledge that, in this Commonwealth, real estate has been subject to direct taxation at its fair cash value for many years. Being always exposed and subject to inspection by the assessors, it cannot escape taxation. To contrast the net income earned in it business with the net income derived from real estate would be much simpler taxation. | Tax imposed by statute on income derived from profession, employments, trade, or business is "property tax" rather than "excise tax." | Is a tax imposed by statute on income derived from a profession, employment, trade, or business a "property tax" or "excise tax"? | 040655.docx | LEGALEASE-00143007-LEGALEASE-00143008 | Condensed, SA, Sub 0.92 | 0.92 | 0 | | 1 | | |
| 15639 | Whitaker v. Robinson, 981 S.W.2d 118 | 413v44 | The word "wage" as used in said section 5 is a word of wide import. "income benefits" is to compensate the victims of industrial injury for a loss of income and to prevent an ongoing stream of income in order to meet their essential needs and those of their dependents. Workers' compensation legislation does not create a quasi-tort or seek to compensate an injured worker for his or her entire loss; instead, income benefits are awarded on the basis of occupational disability which is equated to decrease in the injured worker's capacity to earn wages. In other words, to how much less money the worker could command in the labor market. KRS 342.0011 (11); Osborne v. Johnson, Ky., 432 S.W.2d 800, 803 (1968). Here, claimant suffers no decrease in his wage earning capacity which was reflected in a lower post-injury pay rate; it was for that reason that he was entitled to receive income benefits despite the fact that he earned a greater income from work after his injury. | Workers' compensation legislation does not create a quasi tort or seek to compensate an injured worker for his or her entire loss; instead, income benefits are awarded on the basis of occupational disability which is equated to decrease in the injured worker's wage earning capacity. KRS 342.0011(11)(1995). | Does workers compensation create a quasi tort? | 040114.docx | LEGALEASE-00140984-LEGALEASE-00140985 | Condensed, SA, Sub 0.69 | 0.69 | 0 | | | 1 | |
| 15640 | Panzino v. Steelman Transp., 315 S.W.3d 616 | 413v45 | "The Missouri Workers' Compensation Law is entirely a creature of statute." Schoemehl v. Mo. Dept. of Corrections, 959 S.W.2d (Mo.App.2005) (quoting Simpson v. Scandinavian Group, 96 S.W.2d 889, 903 (Mo.App. 1998)). "This is to be guided by the general rules of statutory construction in interpreting it." Id. | The Court of Appeals is guided by the general rules of statutory construction in interpreting the Workers' Compensation Law. V.A.M.S. § 287.010 et seq. | "A workers compensation law entirely a creature of statutes, and this the court guided by when interpreting it?" | Workers Compensation - Memo #583 AK.docx | ROSS-003103895-ROSS-003103896 | Condensed, SA, Sub 0.54 | 0.54 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15641 | RoadTechs v. MJ Highway Tech., Ltd., 79 F. Supp. 2d 637 | 25T+156 | The decisional law supports the plain meaning of the FAA that it is within the district court's discretion whether to dismiss or stay an action after referring it to arbitration. The Fourth Circuit, albeit in an unpublished opinion, reached that conclusion in Silkworm Screen Printers, Inc. v. Abrams, et al., 978 F.2d 1256 (table), 1992 WL 317187 (4th Cir. November 4, 1992), which involved an action that was covered by the Convention. The issue in Silkworm Screen Printers was whether there was a contractual agreement between the parties compelling them to arbitrate any disputes. The Fourth Circuit remanded the case for further factual findings, with the instruction: If the district court finds that Silkworm agreed to arbitrate, it should enter an order directing arbitration in accordance with the agreement. It may either dismiss Silkworm's complaint for lack of subject matter jurisdiction or stay its proceedings pending arbitration and consideration of the award pursuant to Article V of the Convention. Id. at 6 (emphasis added); accord Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro, 712 F.2d 50, 54 (3d Cir.1983) (concluding that granting a stay pending arbitration is permissible in Convention cases); Filanto, S.p.A. v. Chilewich Intern. Corp., 789 F.Supp. 1229 (S.D.N.Y.1992), appeal dismissed, 984 F.2d 58 (2d Cir.1993) (holding that retaining jurisdiction but staying action pending arbitration is consistent with commands of Convention on Recognition and Enforcement of Foreign Arbitral Awards); Tennessee Imports, Inc. v. Filippi, 745 F.Supp. 1314 (M.D.Tenn.1990) (reviewing cases and holding that stay and dismissal are both permissible methods of referral under the Convention); Restatement (Third) of the Foreign Relations Law of the United States " 487(2) (1980) (same). Thus, the decisional law teaches quite clearly that whether to dismiss or stay an action which falls under the Convention after referral to arbitration is a | District court has discretion whether to dismiss or stay action after referring it to arbitration. 9 U.S.C.A. S 3. | Do courts have the discretion to dismiss or stay action after referring it to arbitration? | 007664.docx | LEGALEASE-00144684-LEGALEASE-00144685 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 15642 | McCarney v. Nearing, Staats, Prelogar & Jones, 866 S.W.2d 881 | 25T+182(1) | Although the right to arbitrate under the FAA can be waived, the facts of each case determine whether waiver has occurred. Berhorst v. J.L. Mason of Missouri, Inc., 764 S.W.2d 659, 662 (Mo.App.1988). A finding that arbitration has been waived is not favored and there is a presumption against waiver. Id. Both Missouri and federal courts have adopted the same three-factor test to establish waiver of the right to arbitrate. The test requires that the party seeking to establish waiver bear the burden of demonstrating that the alleged waiving party: "(1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that existing right; and (3) prejudiced the party opposing arbitration by such inconsistent acts." Id.; Stifel, Nicolaus & Co. Inc. v. Freeman, 924 F.2d 157, 158 (8th Cir.1991). In considering this three-factor test, any doubts as to whether waiver has occurred must be resolved in favor of arbitration. Freeman, 924 F.2d at 158. Whether the party opposing arbitration has been prejudiced by acts inconsistent with arbitration is a determination to be made on a case-by-case basis. Id. at 159. "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." Id. | Whether party opposing arbitration has been prejudiced by acts inconsistent with arbitration, such that right to arbitrate may have been waived, is determination to be made on case-by-case basis. 9 U.S.C.A. S 1 et seq. | Do courts determine whether inconsistent actions constitute prejudice on a case by case basis? | 007711.docx | LEGALEASE-00144826-LEGALEASE-00144827 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15643 | Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, 502 F.3d 740 | 95+206 | We agree with both parties that this dismissal by the district court was improper.Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional; it is a waivable defense that Vanguard, in fact, waived. Although the district court did not address the summary judgment motions, they are properly before this court. Because the dispositive issue is one of contract interpretation, our review is de novo, and nothing prevents us from addressing this lone question, we hold that Vanguard is entitled to summary judgment. The agreements do not give the Funds the authority to raise the contribution rates until a "renewed term" has been ushered in by the signing of a new CBA. | Enforcement of a forum selection clause, including an arbitration clause, is not jurisdictional; it is a waivable defense. | Is enforcement of the forum selection clause of an arbitration agreement jurisdictional? | 007739.docx | LEGALEASE-00144983-LEGALEASE-00144984 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15644 | United States v. Bryan, 263 F. Supp. 895 | 34+20.8(1) | In considering whether the unexhausted administrative remedies available to a registrant have been forfeited it should be borne in mind that the classification process is not an adversary proceeding between a board and a registrant in which the slightest misstep will penalize a registrant. United States v. Greene, 220 F.2d 792 (7th Cir. 1955). | Classification process is not adversary proceeding between board and registrant in which slightest misstep will penalize registrant. | Is the classification process an adversary proceeding between the board and a registrant? | 008680.docx | LEGALEASE-00144662-LEGALEASE-00144663 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 15645 | Becker v. Hershey, 309 F. Supp. 487 | 34+20.8(2) | Only the several plaintiffs' respective local boards have the power to classify these plaintiffs. The boards are not parties to this proceeding. Only they have the responsibility for making classifications; that is their statutory function. 50 App. U.S.C. " 460(b)(3). neither the courts nor the Director of Selective Service have the power of supervision over draft boards, nor may they assume it; nor may the boards abdicate it. Cf. Eagles v. United States ex rel. Samuels, 329 U.S. 304, 315, 67 S.Ct. 313, 91 L.Ed. 309 (1946). This court does not have jurisdiction over these local boards. | Neither the courts nor the National Director of the Selective Service System has the power of supervision over local draft boards, nor may they assume it; nor may the boards abdicate it. Military Selective Service Act of 1967, S 10(b) (3), 50 U.S.C.A. App. S 460(b) (3). | Do local boards have the sole responsibility for classification? | 008695.docx | LEGALEASE-00144680-LEGALEASE-00144681 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 15646 | Perrin v. United States, 444 U.S. 37 | 63+1(1) | We hold that Congress intended "bribery . . . in violation of the laws of the State in which committed" as used in the Travel Act to encompass conduct in violation of state commercial bribery statutes. Accordingly, the judgment of the Court of Appeals is | Bribery of private employee prohibited by state criminal statute violates the Travel Act which makes it a federal offense to travel or to use any facility in interstate commerce to commit "bribery * * * in violation of the laws of the State in which committed." 18 U.S.C.A. S 1952. | Does conduct violating state commercial bribery statute also violate Travel Act? | 012228.docx | LEGALEASE-00143840-LEGALEASE-00143841 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 15647 | United States v. Brecht, 540 F.2d 45 | 164T+19 | The government does not charge that the appellant used or threatened to use force or violence, or that he acted under color of official right. The charge is that he induced fear in his victim, i. e., a fear of economic loss in that unless the victim paid $1,000 to the appellant, the victim would not be able to compete successfully for the subcontract. The difference between the commercial bribe taking charge and the unlawful activity of extortion is that only the latter involves initiative on the part of the defendant and coercion on the part of the victim. See United States v. Hyde, 448 F.2d 815, 833 (5 Cir. 1971). | Difference between commercial bribe taking and extortion is only that extortion involves initiative of defendant and coercion of victim. 18 U.S.C.A. S 1951; Penal Law N.Y. SS 155.05, subd. 2 (e)(ix), 180.05. | What is the difference between commercial bribe taking and extortion? | Bribery - Memo #852 - C - LB.docx | ROSS-003287331-ROSS-003287332 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15648 | State v. Lopez, 897 N.W.2d 295 | 67+4 | We are mindful of the fact that the legislature modified the definition of "building" for the crime of burglary in 1983 and, in doing so, did not expressly provide that a separate unit "shall be deemed a separate building," as it did for arson. Minn. Stat. " 609.556, subd. 3. We are also mindful that our holding means that both a motel and a rented room within the motel qualify as a "building" for the purposes of the burglary statute. But inartful language is not necessarily ambiguous language. And we conclude that the statute as written unambiguously defines a motel room as a "building." We therefore need not engage in further statutory construction. See Christianson v. Henke, 831 N.W.2d 532, 538 (Minn. 2013) ("Concluding that the statute is unambiguous is determinative for the present question."). | Statutory definition of "building," for purposes of the crime of burglary, encompasses subunits, such as a motel room, and thus, a motel and a rented room within the motel both qualify as a "building" for the purposes of burglary statute; motel room is intentionally constructed from the component parts of walls, a ceiling, and a door, for the express purpose of affording shelter for guests. Minn. Stat. Ann. SS 609.581(2), 609.582(1). | Does a motel room qualify as a building under a burglary statute? | Burglary - Memo 226 - SB.docx | ROSS-003315200-ROSS-003315203 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 15649 | Helmerich & Payne v. State ex rel. Comm'rs of the Land Office, 935 P.2d 1179 | 260+5.2(1) | The term "market value," as used in the royalty clauses in the leases at issue, means the gas purchase contract price. Wood v. TXO Production Corp., 854 P.2d 880, 882 (Okla.1992). In TXO Production Corp. v. Commissioners of the Land Office, 903 P.2d 259 (Okla.1994), we construed the same royalty clause as appears in the leases at issue in this case. The issue in TXO Production Corp. was whether the lessee may deduct certain post-production costs from the royalty payment. We held that such costs may not be deducted. We also determined, relying on Wood, supra, that "market value" as used in the CLO leases means contract price. The gas purchase contract price, as set forth in the contracts, was stated as a cash payment per Mcf of gas. That is the price upon which the CLO's royalty was calculated. | Under royalty clauses in oil and gas leases issued by Commissioners of the Land Office, which based royalty on "market value," state was not entitled to additional royalty payments from lessees in sum equal to its fractional share of value of all gross production and excise taxes that were assessed against gas production and which were paid by purchaser, but which were not deducted from payments to lessees or state. | "Does market value or market price, as used in royalty clauses, mean the gas purchase contract price?" | 021387.docx | LEGALEASE-00144215-LEGALEASE-00144216 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 15650 | Harvey E. Yates Co. v. Powell, 98 F.3d 1222 | 260+5.2(1) | As we have noted, the duty to pay royalty under a lease which conditions royalty payments on "production" is not triggered unless and until gas is physically extracted from the leased premises. Diamond Shamrock, 853 F.2d at 1168; Pennzoil, 752 P.2d at 979. Thus, proceeds received by the lessee in settlement of the take-or-pay provision of a gas supply contract (for either accrued take-or-pay deficiencies or to abrogate future take-or-pay obligations) are not royalty bearing because they are payments for non production. Mandell, 822 S.W.2d at 164; Killam Oil, 806 S.W.2d at 268. Although it does not appear here that any portion of the settlement payment for reduced volume of gas taken was, or will be, recoupable by future production, if there is such a recoupment tied to actual production, at that point any payments so recouped would be royalty-bearing. IPAA, 92 F.3d at 1259"60. | Under New Mexico law, duty of lessee which entered into statutory gas lease with state to pay royalty on that portion of take-or-pay settlement which is attributable to future price reductions is not triggered until that future production is actually taken by settling purchaser and, thus, when lessee negotiates buy-down payment in exchange for reduced future price term, state has no right to royalty up front on that portion of settlement proceeds; however, when future production under purchase contract is taken at newly "bought-down" price, state should receive royalty based on both proceeds obtained by lessee from sale of gas at bought-down price and commensurate portion of settlement proceeds that is attributable to price reductions applicable to future production under renegotiated gas sales agreement as production occurs. NMSA 1978, S 19-10-4.1. | When is the duty to pay a royalty under a lease which conditions royalty payments on production triggered? | Mines and Minerals - Memo #190 - C - EB.docx | ROSS-003287522-ROSS-003287523 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 15651 | State v. NV Sumatra Tobacco Trading Co., 403 S.W.3d 726 | 307A+683 | It is important to note, however, that the manner in which the trial court chooses to proceed will affect the standard of review for the motion to dismiss. If the trial court determines that it is appropriate to decide the motion without an evidentiary hearing, then "[d]ismissal is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction." Id. If the trial court conducts an evidentiary hearing, then it may assess the credibility of any witnesses that testify to determine if the plaintiff has established personal jurisdiction under a preponderance of the evidence standard. Id.; see also Chenault, 36 S.W.3d at 56. | Proper question on a motion to dismiss for lack of personal jurisdiction is whether, taking the plaintiff's factual allegations as true and resolving all reasonably disputed facts in the plaintiff's favor, the plaintiff has shown, by a preponderance of the evidence, that state's courts may properly exercise jurisdiction over defendant, rather than the summary judgment standard of whether a genuine issue as to any material fact exists and whether moving party is entitled to judgment as a matter of law. Rules Civ.Proc., Rules 12.02(2), 56.01 et seq. | "If trial court determines that it is appropriate to decide motion to dismiss, is then dismissal proper only if all the specific facts alleged by plaintiff collectively fail to establish a prima facie case?" | 032669.docx | LEGALEASE-00144381-LEGALEASE-00144382 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 15652 | Concerned Citizens of Sterling v. Town of Sterling, 204 Conn. 551 | 15A+2161 | Because the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiffs' claim. The issue of subject matter jurisdiction can be raised at any time including on appeal. "Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." Cahill v. Board of Education, 198 Conn. 229, 238, 502 A.2d 410 (1985) (Cahill II ); East Side Civic Assn. v. Planning & Zoning Commission, 161 Conn. 558, 559, 290 A.2d 348 (1971); Carten v. Carten, 153 Conn. 603, 610, 219 A.2d 711 (1966). "Moreover, " "whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings." " Chzrislonk v. New York, N.H. & H.R. Co., 101 Conn. 356, 358, 125 A. 874 (1924)." Cahill II, supra. If the trial court had no jurisdiction because the plaintiffs had failed to exhaust their administrative remedies, the action must be dismissed. | Issue of subject matter jurisdiction, arising from alleged failure to exhaust administrative remedies, can be raised at any time, including on appeal; if trial court had no jurisdiction because plaintiffs failed to exhaust their administrative remedies, action must be dismissed. | Can a party challenge a court's subject matter jurisdiction at any time? | 033037.docx | LEGALEASE-00143755-LEGALEASE-00143756 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 15653 | State v. Langley, 232 S.W.3d 363 | 307A+554 | Sovereign immunity from suit bars an action against the State unless the State consents to the suit. Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.1999). Absent the State's consent to suit, a trial court lacks subject matter jurisdiction. Id. The absence of subject matter jurisdiction may be raised by a plea to the jurisdiction. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000). Whether a court has subject matter jurisdiction is a question of law reviewed de novo. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.2004). If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. See Thomas v. Long, 207 S.W.3d 334, 339 (Tex.2006). When a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002). | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | Do the court retain the power to dismiss claims over which it does not have jurisdiction? | 033062.docx | LEGALEASE-00143957-LEGALEASE-00143958 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,973 | Selection & Arrangement 21,876 | Multiple Differences 9,073 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15654 | St. Louis Police Leadership Org. v. St. Louis Bd. of Police Commissioners, 465 S.W.3d 501 | 30THA474 | "A threshold question in any appellate review of a controversy is the mootness of the controversy." Kinsky v. Steiger, 109 S.W.3d 194, 195 (Mo.App.Ct. 2003) (quoting State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001)). It is well settled that the Court should not determine moot cases. Kinsky, 109 S.W.3d at 195. "A moot case raises the issue of justiciability, and therefore the courts may dismiss it sua sponte. Id. "A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose." Id. (citing Local Union 1287 v. Kansas City Power and Light, 883 S.W.2d 341, 343 (Mo. banc 1994)). "When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." Kinsky, 109 S.W.3d at 195 (citation omitted). | A moot case raises the issue of justiciability, and therefore courts may dismiss it sua sponte. | "Should a court dismiss a moot suit supposedly if it raises the issue of justiciability?" | 03425.docx | USA4EAE 00146743 / USA4EAE 00146744 | Condensed, SA | 0.89 | 0 | 1 | | | |
| 15655 | Boston v. Rivera, 135 So. 3d 599 | 30THA563 | To support a dismissal for fraud on the court, the movant must establish, by clear and convincing evidence, that a party has wantonly set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense. | Although District Court of Appeal reverses a dismissal for fraud on the court under an abuse of discretion standard, such standard of review is somewhat narrowed to take into account that the dismissal must be established by clear and convincing evidence. | "To support a dismissal for fraud on the court, should the movant establish, by clear and convincing evidence, that a party has wantonly set in motion some unconscionable scheme?" | Pretrial Procedure - Memo #783 - C - 55.docx | ROSS-000321949-ROSS-000321950 | Condensed, SA | 0.36 | | 1 | | | |
| 15656 | Chappetta v. LeBlind, 544 A.2d 759 | 102+2 | Contrary to Chappetta's contentions, the trial court does possess inherent authority to sanction parties and attorneys for abuse of litigation process. See Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89, 8 L.Ed.2d 734 (1962); see also Mathieu v. Gopher, 334 A.2d 522, 1222 (Me.1987); Westbrook v. Wallace, 478 A.2d 687, 689 (Me.1984); M.R.Civ.P. 16(f)(3). We review such actions by the trial court under an abuse of discretion standard. Bowers v. Traveles Ins. Cos., 421 A.2d 47, 50 (Me.1980). Such authority should be sparingly used and exercised with restraint, and only when the abuse of process by parties or counsel is clear. Westbrook, 478 A.2d at 689.90. Although the court cannot force a settlement on the parties, Ketha v. Smith, 771 F.2d 667 (2d Cir.1985), the failure to negotiate in good faith may lead to an abuse of the litigation process and be sanctionable. | Trial court possesses inherent authority to sanction parties and attorneys for abuse of litigation process. Rules Civ.Proc., Rule 16(f)(3). | "Does a trial court have an inherent power to sanction?" | 03425.docx | USA4EAE 00144227 / USA4EAE 00144228 | Condensed, SA, Sub | 0.84 | 0 | 1 | | | |
| 15657 | Magruder v. Sapphire, 316 U.S. 394 | 371+2060 | The view of the court below that the part for contractual arrangement for apportionment of the tax burden was exercising its taxing power cannot change the incidence of local taxes by their agreement. And it is misleading to speak of real estate taxes as 'applicable to the fractional part of use period following the purchase.' Such taxes are simply one form of raising revenue for the support of government. They are not like rent, nor are they a kind of property for which a separate charge can be made for any given period of time. | Really 'taxes' are merely a form of raising revenue for support of government and are not like 'rent', and are not a kind of property for which a separate charge can be made in respect of occupying property for any given period of time. | "Are really 'taxes' merely a form of raising revenue for support of government?" | 04587.docx | USA4EAE 00144464 / USA4EAE 00144465 | Condensed, SA, Sub | 0.64 | 0 | 1 | | | |
| 15658 | Michigan Land & Iron Co. v. L'Anse Twp., 63 Mich. 700 | 371+2005 | It appearing that the township of Crystal Falls when before us to decision, that these taxes were not laid for any existing roads, or in contemplation of any intended to be opened, and that it would be impossible to use them at all in the road district where they were levied. This doting the presumption which we thought ought to stand in these cases. We do not think it lawful to raise taxes for the remote future, where the roads and the necessities are both contingent. We pointed out in Mallieu v. Beaconsines, 39 Mich. 634, the illegality of raising taxes to be indefinitely funded. It is the policy of our laws to raise taxes no faster than they are likely to be needed. It is not only important to avoid cautions burdens, but the practice leads to carelessness in handling funds, and to complications when charges are made in districts and officers and purposes are mingled. All reasonable presumptions may be made in favor of the necessities of a new region, but no presumption can stand when overthrown by facts. | It is the policy of the law to raise taxes no faster than they are likely to be needed, and, while all reasonable presumptions may be made in favor of the necessities of a new region, no presumption can stand when overthrown by facts. | "Is the policy of the law to construe taxes no later than if they are likely to be needed?" | Taxation - Memo # 715 - C - DVA.docx | ROSS-000313192-ROSS-000313924 | Condensed, SA, Sub | 0.78 | | 1 | | | |
| 15659 | Commonwealth v. Union Pac. R. Co., 214 Pa. 339 | 371+2005 | In exercising its right to tax, the state is exercising one of its attributes of sovereignty. It follows then that the state may tax only those persons and things which are subject to its sovereignty. Its said by the author field in its form is on charge; read-bounds, 3 Wall. 300, 21 L. Ed. 170: "The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property, and business." | State, in exercising its right to tax, exercises attributes of sovereignty, and may tax only things and persons subject thereto. | "Which attributes to a state exercising in its right to tax?" | Taxation - Memo # 768 - C - VA.docx | USA4EAE 00098716 / USA4EAE 00098717 | Condensed, SA, Sub | 0.75 | 0 | 1 | | | |
| 15660 | Nadeau v. Equity Residential Properties Mgmt. Corp., 251 F. Supp. 3d 637 | 25T+136(1) | he FAA provides that otherwise-valid arbitration agreement can be rendered unenforceable based "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, a party seeking to avoid enforcement of an arbitration agreement can ... invoke a defense that would otherwise be available to the party seeking to avoid the enforcement of any contract." Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005) (explaining that state law-related specifically to defenses applicable to arbitration agreements are not a valid basis on which to render an arbitration agreement unenforceable). Under New York law, where a party to a contract substantially breaches that contract, the law will enforce that contract against it. See, e.g., Inter Langton, 714 F.Supp. 3d 872 (S.D. 2003). A breach is material when it "substantially defeats the purpose of that contract." Id. | Under the Federal Arbitration Act (FAA), a party seeking to avoid enforcement of an arbitration agreement can invoke a defense that would otherwise be available to a party seeking to avoid the enforcement of any contract. 9 U.S.C.A. § 2. | "Can an arbitration agreement be avoided by a defense that is only applicable to arbitration agreements?" | 00756.docx | USA4EAE 00246427 / USA4EAE 00246428 | Condensed, SA, Sub | 0.73 | | 1 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15661 | MT Pippel Co. v. Schraubendom Maschinen & Anlagen GMBH, 298 F.3d 411 | 156+1(3) | We believe that the doctrine of equitable estoppel applies here. Equitable estoppel precludes a party from asserting rights "he otherwise would have had against another" when his own conduct renders assertion of those rights contrary to equity. First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters.), Inc.) 81 F.3d 1310, 1317 (4th Cir.1996); see also Lawyers v. Street, 817 F.2d 31, 32 (4th Cir. 1992). In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." Avila Group, Inc. v. Norma J of California, 426 F.Supp. 537, 542 (S.D.N.Y.1977). | "Equitable estoppel" precludes a party from asserting rights he otherwise would have had against another, when his own conduct renders assertion of those rights contrary to equity. | What does the doctrine of equitable estoppel mean in the context of arbitration? | Alternative Dispute Resolution - Memo 228 - Sk.docx | LEGALEASE 00306868 - LEGALEASE 00306869 | Condensed, SA, 0.82 | | 0 | 1 | 0 | 1 | |
| 15662 | Curtis v. United States, 33 Fed. Cl. 586 | 34+30 | With regard to Mr. Curtis's request that the court order the Air Force to award him back wages which were received by other servicemen who served in Desert Storm, the court must advise plaintiff that its powers are derived from the Tucker Act, 28 U.S.C. * 1491. The Tucker Act provides jurisdiction for monetary claims against the United States, founded either upon the Constitution, a statute, a regulation, or an express or implied contract right. Id. Generally speaking, therefore, this court is empowered to order the payment of money damages for an infringement of a protected right, or to return property improperly taken [Fed.Cir.1992). A claim for a military discretionary, however, is not a claim for money damages, and, accordingly, does not meet the standards of the Tucker Act. Further, the defendant also points to the lack of a decision by the President or his deputies to award a particular medal is a decision not within the court's jurisdiction to review. See Voge v. United States, 28 Ct.Cl. 844 (1992), and the cases cited therein. | Decision by President or his deputies to award particular medal is discretionary act which is not reviewable by court of federal claims. | Is the decision to award a medal reviewable by the court? | Armed Services - Memo 153 - Sb.docx | ROSS 000301355-ROSS-000302956 | Condensed, SA, Sub 0.87 | | 0 | 1 | 1 | 1 | |
| 15663 | United States v. Brecht, 540 F.2d 45 | 164T+4 | Since the main purpose of Congress in enacting the Hobbs Act was to combat labor racketeering, it is not surprising that most of the cases arising under the Hobbs Act concern the extortion of union officials of their power to order picketing or strikes to exact money from employers for their own benefit. See, e. g., Hulahan v. United States, 214 F.2d 441 (8 Cir.), cert. denied, 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675 (1954); Bianchi v. United States, 219 F.2d 182 (8 Cir.), cert. denied, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955); United States v. Varlack, 225 F.2d 665 (2 Cir. 1955); United States v. Palmiotti, 254 F.2d 491 (2 Cir.), cert. denied, 354 U.S. 913, 77 S.Ct. 1296, 1 L.Ed.2d 1435 (1957); United States v. Tolub, 309 F.2d 286 (2 Cir. 1962); United States v. Kemble, 198 F.2d 889 (3 Cir.), cert. denied, 344 U.S. 893, 73 S.Ct. 362 (1952); vacated and remanded in part, 349 U.S. 910, 75 S.Ct. 599, 99 L.Ed. 1246 (1955); United States v. Iozzi, 420 F.2d 512 (4 Cir. 1970), cert. denied, 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971). Another line of Hobbs Act cases involves the use of generic public officials, from mayors to policemen, to shake down persons by extorting from them the right to do business unless they pay tribute. See, e. g., United States v. Sopher, 362 F.2d 523 (7 Cir.), cert. denied, 385 U.S. 928, 87 S.Ct. 286, 17 L.Ed.2d 210 (1966); United States v. Hyde, 448 F.2d 815 (5 Cir.), cert. denied, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972); United States v. Kenny, 462 F.2d 1205 (3 Cir.), cert. denied, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); United States v. Addonizio, 451 F.2d 49 (3 Cir.), cert. denied, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); United States v. Kahn, 472 F.2d 272 (2 Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); United States v. Crowley, 504 F.2d 992 (2 Cir. 1974); United States v. Hathaway, 534 F.2d 386 (1 Cir.), cert. denied, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). | Main purpose of Congress in enacting Hobbs Act was to combat labor racketeering. 18 U.S.C.A. § 1951. | What was the main purpose of Congress in enacting the Hobbs Act? | 01215.docx | LEGALEASE 00165072-LEGALEASE 00165074 | Condensed, SA, Sub 0.95 | | 0 | 1 | 1 | 1 | |
| 15664 | Ronnes v. Commonwealth, 1427+25(11) 144 Ky. 134 | 1427+25(11) | It is insisted, however, for the commonwealth, that the evidence of Will Bottoms was introduced and was sufficient corroboration. But, if the competency of this evidence should be assumed, it did not corroborate at all the evidence of Don Ramsey. The general reputation of appellant may have been bad all of at the same time, and he may have been accepted by the thieves for whom he stole the stolen mule as the man who would handle the stolen property, and yet had nothing to do with the stealing of it, and having no connection with, the offense charged, and not knowing or anticipating an accusation of guilt to warrant a conviction for a specific offense. | Proof of general reputation of the accused as a bribe taker or thief would not be admissible to prove his guilt for accepting the bribe for which he is being prosecuted. | Can evidence of the general reputation of the accused as a bribe taker or thief be introduced in evidence of his having being prosecuted? | 012277.docx | LEGALEASE 00145184-LEGALEASE 00145185 | Condensed, SA, Sub 0.86 | | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13665 | State v. Hoxie, 33 Utah 166 | 67 v23 | Section 4334, Rev. St. 1898, so far as material to this case, provides that "every person who, in the nighttime, forcibly breaks and enters, or shall without force enters through any open door, window, or other aperture, any house, room, apartment, with intent to commit larceny or any felony ... is guilty of burglary." In 1905 the Legislature amended the sections of the statute defining burglary and housebreaking (Sess. Laws 1905, p. 14, c. 19), and, under the law as amended, we have burglary in the first and second degrees instead of burglary and housebreaking. Before amended, section 4334 made burglary for a person to break and enter etc. "with intent to commit larceny or any felony." As amended, the section reads "with intent to commit larceny or any other felony." The only difference in the language of section 4334 as it formerly stood and as it is now amended is the word "other." | Under Rev. St. 1898, 14334, as amended by Sess. Laws 1905, p. 14, c. 19, making it burglary for a person to break and enter a building with intent to commit a larceny or any other felony, an information charging the breaking and entering a building at night with intent to steal goods without stating their value, sufficiently charges a burglary in the first degree, as larceny within such section, though larceny of less than a felony, and the words "or any other felony" are equivalent to "or any felony other than that embraced within the larceny." | Does burglary involve intent to commit any felony? | 01285.docx | USALEX-00140414 - USALEX-00140417 | Condensed, SA, Sub | 0.37 | 0 | | | 1 | 1 |
| 13666 | Wagshal v. Rigler, A.2d 112 | 3074+560 | We here interpreted Cameron to define the proper scope of the trial court's discretion in Rule 41(b) dismissals: A trial court, under Rule 41(b) ... acknowledged that "the principal factor to be considered in the good cause inquiry is the reason for the plaintiff's failure to comply with the rule. We also take into account prejudice to the plaintiff and lack of prejudice to the defendant." (Citation omitted.) Pursuant to American Operations Corp. v. 673 A.2d 659, 661, n. 7 (D.C.1996) Rigler v. Adelman, 672 A.2d 1283 ... In determining whether a Rule 41(b) dismissal is proper, the principal factor is the reason for the plaintiff's failure to comply with the rule, with prejudice to the plaintiff and lack of prejudice to the defendant being secondary considerations. | In determining whether plaintiff has shown good cause why action should not be dismissed for untimely service, court considers reasons for the plaintiff's failure to comply with the rule, prejudice to the plaintiff and lack of prejudice to the defendant accruing from the delay, and whether plaintiff has made some showing of reasonable diligence in attempting to comply with the rules. Civil Rules 41(b). | Is the reason for the plaintiff's failure to comply with the rule the principal factor to be considered in the good cause inquiry? | 03404A.docx | USALEX-00145156 - USALEX-00145159 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | |
| 13667 | Harples v. Lamb, 291 So. 2d92 | 3074+552 | Under these circumstances, the trial court had the right to dismiss the plaintiff's action for failure to prosecute ... See Ashwood v. Patterson, Fla.1951, 49 So.2d 848; Kaiser v. Patterson, Durwood, 278 F.2d 554 (8th Cir. 1960). We think that the trial court ... | Court has right to dismiss a cause with prejudice when collusion appears between plaintiff and a principal defendant. | Does court have right to dismiss a cause with prejudice when collusion appears between plaintiff and a principal defendant. | 03472A.docx | USALEX-00146268 - USALEX-00146269 | Condensed, SA, Sub | 0.69 | 0 | 1 | | 1 | |
| 13668 | Ballard v. Wood, 121 N.C. App. 391 | 3074+560 | Had the plaintiff's claims remained alive, but they were made in the summary judgment order were entered on 18 October 1994. Romsure's claims were included in the summary judgment hearing held during the 9 September 1994 session. The record shows that Romsure's motion was entered into (18 October 1994, twelve days before the court's order was entered on 18 October 1994. ... at the time the summary judgment order was entered, the claims of both Romsure and Bairre were moot and the cases should have been dismissed at that time. | Cases should have been dismissed where plaintiff's claims were moot at time summary judgment order was entered? | Should a case be dismissed if plaintiff's claims were moot at time summary judgment order was entered? | 03480D.docx | USALEX-00145712 - USALEX-00145713 | Condensed, SA, Sub | 0.82 | 0 | 1 | | 1 | |
| 13669 | Schlagel v. Tosta, 99 Nev. 35 | 3074+560 | The court may dismiss a complaint for failure to prosecute or for violation of a court order. Moore v. Cherry, 90 Nev. 390, 395, 528 P.2d 1019, 1023 (1974). The district court had the power to order postponement of Tosta's scheduled foreclosure sale ... have complied with the rules for an injunction, or secured the stipulation of the other party. As there was no effort to comply with the notice and other requirements for an injunction, see NRCP 65, we must conclude whether a wild stipulation existed. | Court may dismiss a complaint for failure to prosecute or for violation of a court order? | Can a court dismiss a complaint for failure to prosecute or for violation of a court order? | 03868.docx | ROSS-000329507-ROSS-000308608 | Condensed, SA | 0.84 | 0 | 1 | | 1 | |
| 13670 | Texas Employers' Ins. Ass'n v. Bragg, 670 S.W.2d 712 | 3074+483 | No motion to deem unanswered requests for admissions admitted must be filed ... Court of Appeals ... See Texas Rules Civ.Proc., Rule 169. | No motion to deem unanswered requests for admissions admitted must be filed. Vernon's Ann. Texas Rules Civ.Proc., Rule 169. | Should no motion to deem unanswered requests for admissions admitted be filed? | Pretrial Procedure - Memo # 7227 - C - R.docx | | SA, Sub | 0.82 | | | 1 | | |
| 13671 | Demons, T.D.C.J-I.D., 63 S.W.3d 454 | 3074+552 | A trial court may dismiss a claim as frivolous when it has no arguable basis in law or fact. See Tex.Civ.Prac. & Rem.Code Ann. 14.003(a)(2), 14.004 (Vernon Supp.2001); Hector v. Thaler, 862 S.W.2d 176, 178 (Tex.App.-Houston [1st Dist.] 1993, no writ). ... the trial court did not abuse its discretion in dismissing a case that arguably has a basis in law or fact? | Trial court may dismiss a claim as frivolous when it has no arguable basis in law or fact. V.T.C.A., Civil Practice & Remedies Code § 14.003(a)(2), 14.004 (Vernon Supp.2001). | Is it an abuse of discretion to dismiss a case that arguably has a basis in law or fact? | 03329D.docx | USALEX-00145543 - USALEX-00145544 | SA, Sub | 0.84 | 0 | | 1 | | |

2765

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15672 | Kistler v. Quast, 376 N.W.2d 892 | 307H+552 | Where a case becomes moot, only a proper judgment is one dismissing the case... | Where a case becomes moot, only proper judgment is one dismissing the case | Is the only proper judgment to dismiss the case when a case becomes moot? | 035311.docx | LEGALEASE 00146151-LEGALEASE 00146152 | Condensed, SA | 0.73 | | | | 1 | |
| 15673 | City of Philadelphia Water Revenue Bureau v. Frempong, 744 A.2d 822 | 307H+741 | A party is under the same duty to appear at a scheduled conciliation or a pre-trial conference as to appear for trial. Anderson v. Financial Responsibility Assigned Claims Plan, 452 Pa.Super. 54, 627 A.2d 659 (1993)... | Party is under the same duty to appear at a scheduled conciliation or pre-trial conference as to appear for trial | Is a party under the same duty to appear at a scheduled pre-trial conference as to appear at trial? | 035381.docx | LEGALEASE 00145385-LEGALEASE 00145386 | Condensed, SA | 0.71 | | | | 1 | |
| 15674 | People ex rel. Wolff v. Wheeler, 60 Ill. App. 3d 1 | 307H+552 | Courts do not sit for the purpose of entering judgment in matters about which there is no live controversy, nor do courts sit for adjudicating a moot court may, sua sponte, dismiss a suit which appears to be a mere moot contention... | Cara court sua sponte, dismiss a suit which appears to be a mere moot contention? | | 035464.docx | LEGALEASE 00146323-LEGALEASE 00146324 | SA, Sub | 0.03 | | | 1 | 1 | |
| 15675 | In re D.W., 260 N.C. App. 624 | 307H+724 | Respondent appeals from the trial court's order terminating her parental rights. Respondent contends that the trial court abused its discretion when it thereafter refused to continue the termination hearing... | Courts are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it | Does a party seeking a continuance have the burden of showing sufficient grounds for granting the motion? | 035044.docx | LEGALEASE 00146321-LEGALEASE 00146322 | Condensed, SA | 0.88 | | | | 1 | |
| 15676 | Dudica v. Workers' Comp. Appeal Bd., 5 Cal. 4th 382 | 413+2 | Pursuant to the "primary power" the Constitution has granted to the Legislature... | Right to workers' compensation benefits is wholly statutory and is not derived from common law. West's Ann.Cal. Const. Art. 14, S 4. | "For workers' compensation, is the right to benefits wholly statutory?" | 048241.docx | LEGALEASE 00145553-LEGALEASE 00145554 | Condensed, SA, Sub | 0.87 | | | | 1 | |
| 15677 | Verein v. New England Tel. Co., 821 F. Supp. 851 | 413+2 | The exclusivity provisions of the Connecticut Worker's Compensation Act provides that: An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees... | Under Connecticut Worker's Compensation Act, employee generally surrenders his or her right to bring common law action against employer. | "Under the Workers' Compensation Act, what does the employee surrender?" | 048270.docx | LEGALEASE 00145655-LEGALEASE 00145656 | Condensed, SA, Sub | 0.84 | | | | 1 | |
| 15678 | Alvarez v. Meadow Lane Mail Ltd. P'ship, 560 N.W.2d 698 | 307H+560 | Under Iowa rule of civil procedure 48 a civil action is commenced by filing a petition with the court 5. The petition, original notice, and directions for service must then be promptly delivered to the clerk for the sheriff, or to another "appropriate person" for service on the defendant. Iowa R. Civ. P. 49(b). Service can also be made by anyone who is neither a party nor the attorney of a party to the action. See Iowa R. Civ. P. 52. Although the Iowa rules of civil procedure do not specify when service must be made... | Dismissal of action is required if there is "abuse delay" in completing service. Rules Civ.Proc., Rule 49. | "Is a dismissal of action required if there is "abuse delay" in completing service?" | Pretrial Procedure - Memo # 7067 - C - AP_58530.docx | ROSS-002294054-ROSS-002294056 | Condensed, SA, Sub, UQ | 0.81 | | | | 1 | |
| 15679 | Emerson v. McWhirter, 133 Cal. 510 | 260+25 | Defendant contends that Coyle's location was forfeited because he was located within fifty feet from the mouth of a mining claim to be posted that one notice on the claim, whereas the local regulation required that at each end thereof, and notice was posted at only one end, all other Conclusion being located with posting being complied with, the failure to post at both ends did not work a forfeiture, in the absence of a rule so providing... | Cara failure to comply with the local mining rules and customs work a forfeiture? | 021578.docx | LEGALEASE 00147750-LEGALEASE 00147751 | Condensed, SA, Sub, UQ | 0.83 | | | | 1 | |

Appendix D                                                                                                                                                                                      2766

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,973 | 22,876 | 9,029 |
| 15680 | Sheridan v. Mulligan, 278 N.Y. 59 | 268+200(10) | Assuming that the death of petitioner's husband February 22, 1936 resulted from injuries sustained by him at a fire February 1, 1936, does section 79-1 impose a mandatory duty upon the Fire Commissioner to grant a pension in excess of $600 to any one in event. A person "shall" be not be less than $600, but, in the case of death resulting from active duty, the Commissioner "shall have the power" to award it sum not indefinite in amount but not more than half the salary of the deceased fireman. Concededly, if we assume, that the fireman's death resulted from injury while actively engaged in the performance of his duty. The most that can be said is that the Fire Commissioner has the power to award a pension in an amount not to exceed one-half of his salary, This provision is vested in the statute, indicates in the later instance a legislative determination that the Commissioner's decision shall be final. The language is merely permissive and, therefore, petitioner has failed to show a clear legal right. | Under provision of Greater New York Charter relating to the annual allowance to the representative of the member of the uniformed force who shall die during his term of service, the discretion to award a pension not to exceed one-half of the salary of deceased fireman is vested in the Fire Commissioner as trustee of the relief funds and is not reviewable by the courts. Greater New York Charter, § 791, as amended by sec Laws 1930, p. 84. | Are actions taken by city officials relating to pensions reviewable by courts? | 02888.docx | LEGALEASE 0018160-LEGALEASE 0018161 | Condensed, SA, Sub | 0.64 | 0 | | 1 | 1 | 1 |
| 15681 | In re Baxter's Estate, 48 Misc.2d 132 | 296+10 | Here the United States has not vested upon the Administrator's determination but has offered proof in support of that conclusion. It has been established that the Administrator's initial determination awarding benefits to the decedent was premised upon the decedent's representation that she was living with justice as his wife. Had this representation been made, the establishment of the marital relationship with justice was established by documentary proof and oral statements in this proceeding, it is held that the proofs received by the decedent from the Veterans Administration were procured upon false representations and, for this reason, the claim of the United States for recovery of the payments, with interest, is sustained. | United States could recover from decedent's estate the pension benefits paid to her or widow of World War I veteran, where benefits were premised on her representation that she had terminated her purported marital relationship with another man and this representation was false. 38 U.S.C.A. § 101(3). | Does the United States have the ability to recover benefits received by a decedent from the Veterans Administration that were procured by false representation? | Revision - Memo 67 - IK_37655.docx | ROSS-00029187FA-ROSS-00029187 | Condensed, SA, Sub | 0.69 | 0 | | 1 | 1 | 1 |
| 15682 | Bond v. Dunmire, 129 Ill. App.3d 796 | 302+11 | In reviewing the dismissal of a complaint, the facts as stated therein are accepted as true. (Wreath v. Porter Dain S.A. Co. (1985); 79 Ill.2d 56, 37 Ill.Dec. 304, 450 N.E.2d 314.) Section 2-603(b) of the Illinois Code of Civil Procedure provides a test for defects of substance where a pleading is attacked. (Ill.Rev.Stat. 1983, ch. 110, par. 2-612(b).) (formerly Ill.Rev.Stat. 1979, ch. 110, par. 42(2)). According to this test, allegations of legal conclusions and allegations of evidence constitute merely formal defects, (Curtis v. Birdsell (1957), 11 Ill.2d 163, 140 N.E.2d 819) as exhibits have become part of complaint by attachment and reference, the general rule is whether the complaint states a cause of action, People v. Washington Bank & Trust Co. (1982), 110 Ill.App.3d 569, 66 Ill.Dec. 222, 442 N.E.2d 644. | Allegations of legal conclusions and allegations of evidence constitute merely formal defects in complaint, and not defects of substance. S.H.A. ch. 110, ¶ 2-612(b). | Do allegations of legal conclusions constitute defects of substance? | 02965.docx | LEGALEASE 0018477-LEGALEASE 0018478 | Condensed, SA, Sub | 0.81 | 0 | | 1 | 1 | 1 |
| 15683 | In re Bustamante, 510 S.W.3d 732 | 302+16 | Texas follows a "fair notice" standard for pleading. Low v. Henry, 221 S.W.3d 609, 612 (Tex. 2007); see also Tex. R. Civ. P. 47(a) (stating that pleading setting forth claim for relief must contain short statement of the cause of action sufficient to give fair notice of claim involved). A pleading is sufficient when "an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." Low, 221 S.W.3d at 612. Bustamante's petition for sale alleged that Rojas was the individual who struck Fernandez with her vehicle. The complaint also alleged that El Paso was the general contractor who hired the engineers and architects who prepared the plans for the buildings on the premises, was the general contractor for the construction of the buildings on the premises, and was thus responsible for any failings in the design and construction. These pleadings satisfy the requirement of the Texas Rules of Civil Procedure. | A pleading is sufficient when an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy. Tex. R. Civ. P. 47(a). | When is a pleading sufficient? | 02973.docx | LEGALEASE 0018737)-LEGALEASE 0018737)2 | SA, Sub | 0.8 | 0 | | 1 | 1 | 1 |
| 15684 | Pla Hall Energy Fund v. Longview Energy Co., 482 S.W.3d 184 | 302+34(6) | There is no contention by Longview that it expressly or specifically stated in its last five petition that it was raising a "Competition" Claim. Indeed, Longview has framed both of its claims where it seeks "compensation" or a "pervasive theme" in its petition. A pleading should contain "a short statement of the cause of action sufficient to give fair notice of the claim involved..." Tex. R. Civ. P. 47(a). When, as here, special exceptions are not filed, we construe the petition liberally in favor of the pleader. Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982). We will uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. Id. In determining whether a pleading is adequate, we examine whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and the basic issues of the controversy. Bowen v. Robinson, 227 S.W.3d 86, 91 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). | Where special exceptions are not filed, court construes the pleader liberally in favor of the pleader. | Should a petition be construed liberally in favor of the pleader when there are no special exceptions? | 02975.docx | LEGALEASE 0018742-LEGALEASE 0018743 | Condensed, SA, Sub | 0.9 | 0 | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15685 | Savory v. First Nat. Bank of Chicago, 154 Ill. App. 3d, 1050 | 316H+125 | A dismissal for want of prosecution in Illinois is not considered to be an adjudication on the merits, nor does it prejudice the case of the party against whom it was entered, or act as a bar to the subsequent litigation of the same issue against the same party. (Citations omitted.) Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1189, 1189 n.7. | Dismissal for want of prosecution is not considered adjudication on merits, such dismissal does not prejudice party against whom dismissal was entered, nor does such dismissal receive as judicial effect, and therefore subsequent litigation of that same issue does not constitute another action. | Will suit dismissed for want of prosecution decide any issues in controversy? | 11154.docx | LEGALEASE 00056057; LEGALEASE 00056058 | Condensed, SA, Sub D 0.76 | | | | 1 | | |
| 15686 | Manuel v. Lacurbo, 554 So. 2d 174 | 307A+590.1 | The plaintiffs' motion and order for dismissal of LP & L constituted such a step. Ms. v. Piston, 540 So.2d 1310 (La. App. 2nd Cir. 1989). The motion was filed on March 17, 1986, but the only subsequent action was a motion to substitute counsel on March 22, 1989. That motion did not stop the running of five years because the dismissal would have been effective March 17, 1989. | Enrollment or substitution of counsel is not a step in prosecution for defense of suit for purpose of avoiding dismissal of suit for failure to take prosecution or defense of any action in trial court for period of five years. LSA-C.C.P. art. 561. | Is enrollment or substitution of counsel not a step in defense of suit? | 11173.docx | LEGALEASE 00094613; LEGALEASE 00094614 | Condensed, SA 0.61 | | | | | 1 |
| 15687 | Allied Gas & Chem. Co. v. Federated Mut. Ins. Co., 365 N.W.2d 26 | 307A+476 | A case such as this, however, must be distinguished. If there is an appeal, or if other rule 215.1 grounds for exemption are established, rule 215.1 is inapplicable. Thus, where a notice under rule 215.1 must be sent anew after the grounds for exemption are removed. Here, where an appeal has prevented the applicability of rule 215.1, the statutory two- or three-year notice must be sent by the district court clerk after issuance of the procedendo. In that case, the defendant moved again to withdraw its answer in the district court. | If there is an appeal, or if other grounds for an exemption are established, the automatic dismissal rule is inapplicable, and is not renewed until a notice under rule is again sent after grounds for exemption are removed. Rules Civ.Proc., Rule 215.1. | If there is an appeal, or if other grounds for an exemption are established, is the automatic dismissal rule inapplicable? | Pretrial Procedure - Memo #7795 - C - TM.docx | LEGALEASE 00037600; LEGALEASE 00037601 | Condensed, SA, Sub D 0.77 | | | | | 1 |
| 15688 | People v. Willis, 79 A.D.3d 1239 | 110+132 | Defendant argues that the evidence is legally insufficient to support a finding that he engaged in forcible touching for the purpose of degrading or abusing the victim. People v. Bleakley, 69 N.Y.2d 490, 515 N.E.2d 509 (1987). Defendant contends that the evidence is legally insufficient to support the forcible touching conviction because the People failed to establish the "for the purpose of degrading or abusing" the victim "or for the purpose of gratifying the actor's sexual desire." | Because the question of whether a person was seeking sexual gratification is generally a subjective inquiry, it can be inferred from the conduct of the perpetrator. | Can sexual gratification be inferred from the defendants action? | 04268.docx | LEGALEASE 00147939; LEGALEASE 00147941 | Condensed, SA | 0.92 | | | 1 | | |
| 15689 | In re J.B.M., 157 S.W.3d 823 | 352H+190 | In a case where the charge is attempted sexual assault, intent may be inferred from the defendant's actions, words, and conduct. Lindsey v. State, 764 S.W.2d 376, 378 (Tex.App.-Texarkana 1989, no pet.). In the instant case, J.B.M. assisted R.S. in his apartment under the guise of retrieving a cigarette after R.S. attempted physical advances. R.S. testified that J.B.M. kept pulling her to him, kissing and touching her, pulled her to the ground, and touched her chest, and as she tried to get up spread R.S. also testified that she thought J.B.M. was trying to have sex with her. | In a case where the charge is attempted sexual assault, intent may be inferred from the defendant's actions, words, and conduct. V.T.C.A., Penal Code §5.15.01(a), 22.011(a)(1). | How is intent for sexual assault inferred? | | LEGALEASE 00147970; LEGALEASE 00147971 | Condensed, SA 0.71 | | | | | 1 |

Appendix D

2708

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15690 | Rector v. Dept of Labor & Indus. of State of Wash., 61 Wash. App. 385 | 413=2 | In addition, Rector argues that under the common law of torts his cause of action accrued and his claim for relief became actionable... Industrial insurance claim is governed by explicit statutory directives and not by the common law. West's RCWA 51.04.010 et seq. | Is an industrial insurance claim governed by common law? | Workers Compensation - Memo #663 AK.docx | ROSS-003186866-ROSS-003186867 | Condensed, SA | 0.87 | 0 | | | 1 | |
| 15691 | Milwaukee Am. Ass'n v. Landis, 491 | 257=163 | It is asserted that this wide grant of jurisdiction of the commissioner is an attempt to deprive the court of its jurisdiction and that such a provision as is contained in these agreements, rules, and regulations contrary to public policy... Good faith submission to arbiter is proper, and decision is binding, unless supported by evidence, or without legal foundation. | Is a submission to arbiter controverted question considered proper and binding? | Alternative Dispute Resolution - Memo 760 RK.docx | LEGALEASE-00037873-LEGALEASE-00037874 | Condensed, SA | 0.87 | 0 | | | 1 | |
| 15692 | Baker v. Conoco Pipeline Co., 280 F. Supp. 2d 1285 | 257=182(1) | "The mere passage of time cannot be relied upon as a waiver of the right to arbitrate." See Cotton's Point Co. v. Weber & Co., 194 F. Supp 2d 224, 229 (D.R.I. 2002)... The mere passage of time cannot be relied upon as a waiver of the right to arbitrate. | Can passage of time be relied upon as a waiver of the right to arbitrate? | Alternative Dispute Resolution - Memo 790 RK_58313.docx | ROSS-003291664-ROSS-003291667 | Condensed, SA | 0.9 | 0 | | | 1 | |
| 15693 | Galloway v. United States, 319 U.S. 372 | 34=72(1) | Judged by this requirement, or by any standard other than bare speculation, we are unable to conclude the trier whose burden... Total and permanent disability, within war risk insurance statutes, means something more than incapacity or occasional disability. War Risk Insurance Acts, 1917-1940, 40 Stat. 405, 409 § 13, 43 Stat. 555. | Does the meaning of the term Total and permanent disability mean something more than incapacity or occasional disability? | 000774.docx | LEGALEASE-00148314-LEGALEASE-00148315 | Condensed, SA | 0.85 | 0 | | | 1 | |
| 15694 | Gostola v. Wallace, 154 Ky 196 | 83I=430 | The purpose of an indorsement "without recourse" is to transfer the title to the instrument of writing to the purchaser, without creating any personal liability on the part of the one so transferring and indorsing it... The purpose of an indorsement without recourse is to transfer the title to the instrument without creating any personal liability on the part of the indorser. | What is the effect or purpose of indorsement of a note without recourse? | Bills and Notes - Memo 640 - AWM_18192.docx | ROSS-003212361-ROSS-003212362 | Condensed, SA, Sub | 0.77 | 0 | | | 1 | |

Appendix D

2769

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15695 | In re Onstad's Estate, 224 Wis. 332 | 366+4 | The appellant, though a maker of the note, was an accommodation maker and was a surety for Onstad. As surety he is entitled by subrogation to whatever security the bank had for the enforcement of its claim against Onstad. Arrant, Suretyship, p. 364; Stearns, Suretyship, p. 449; Clifford v. West Hartford Creamery Co., 103 Vt. 229, 153 A. 205; 79 University of Pa.Law Rev. 976; Fox v. Kroeger, 119 Tex. 511, 35 S.W.(2d) 679, 77 A.L.R. 663. The Negotiable Instrument Law (Stat. 1929) " 116.01, which declares a person absolutely liable to pay the instrument "primarily" liable, does not change the law of suretyship. 10 Texas Law Rec. 519; Windhorst v. Bergendahl, 21 S.D. 218, 111 N.W. 544, 130 Am.St.Rep. 715; O'Neal v. Stuart (C.C.A.) 281 F. 715; Wakonda State Bank v. Fairfield, 53 S.D. 268, 220 N.W. 515; Clifford v. West Hartford Creamery Co., supra; State Bank of La Crosse v. Michel, 152 Wis. 88, 139 N.W. 748, 1131; Mueller v. Jagerson Fuel Co., 203 Wis. 453, 233 N.W. 663, 72 A.L.R. 1059. | Both under common law and suretyship and provision of Negotiable Instrument Law declaring person absolutely liable to pay instrument primarily liable, an accommodation maker of a note, as surety, is entitled by subrogation to whatever security payee has for enforcement of claim against principal maker (St.1929, S 116.01). | Does Negotiable Instrument Law change the law of suretyship? | 010505.docx | LEGALEASE-00148145-LEGALEASE-00148146 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 15696 | Standard Fed. Sav. & Loan Ass'n v. Citizens Ins. Co. of Am., 99 Mich. App. 338 | 8.30E+05 | Defendant's contention that the term "acceptance" must be construed within the narrow parameters of the UCC is not persuasive. Recognition that "(t) echnical construction of negotiable instrument law should not be favored," was the standard before the adoption of the UCC. Peoples National Bank of Ypsilanti v. Dicks, 258 Mich. 441, 444, 242 N.W. 825 (1932). In view of the policy of the UCC "to encourage the free circulation of negotiable paper," Official Comment 1 to M.C.L. s 440.3118, M.S.A. s 19.3118, we feel this strict construction is still disfavored. | Standard that technical construction of negotiable instrument law is not to be favored remains applicable standard notwithstanding adoption of Uniform Commercial Code. M.C.L.A. SS 440.3105, 440.3112(1), 440.3118 comment. | Should technical construction of negotiable instrument law be favored? | 010509.docx | LEGALEASE-00148113-LEGALEASE-00148114 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 15697 | Ricketts v. Harvey, 106 Ind. 564 | 8.30E+162 | The first instruction asked by the appellant was properly refused. If the consideration of a promissory note is in part illegal, and in part legal, and is indivisible, there can be no recovery upon the note. There are cases where the consideration may be separated, and the legal severed from the illegal, but upon the facts assumed in the instruction under immediate mention this cannot be done; for upon those facts the legal conclusion is that the taint of illegality permeates the entire consideration, fatally poisoning it. Where the illegal and the legal are so blended that they cannot be separated, the whole consideration is corrupted. If it was legally possible to separate the good from the bad, the instruction ought to have done so, and not have asked a recovery for the entire consideration. In cases where a severance is proper there can only be a recovery pro tanto, and it was therefore error to ask, as the instruction before us does, a recovery upon the whole consideration on which the cause of action rested. | If the consideration of a promissory note is in part legal and in part illegal, and is indivisible, there can be no recovery upon such note. | Can there be a recovery if the consideration of a promissory note is in part illegal? | 010531.docx | LEGALEASE-00148420-LEGALEASE-00148421 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 15698 | Commercial Trading Co. v. Trade Bank & Tr. Co., 207 Misc. 510 | 8.30E+05 | It is axiomatic in a business society such as ours that the free circulation of negotiable paper is to be encouraged and the law must be interpreted in that light.Graham v. White-Phillips Co., 296 U.S. 27, 31, 56 S.Ct. 21, 80 L.Ed. 20. | The free circulation of negotiable paper is to be encouraged and the law must be interpreted in that light. | Should negotiable instrument law be interpreted in view of free circulation of negotiable paper? | 010544.docx | LEGALEASE-00148462-LEGALEASE-00148463 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 15699 | Vinyard v. United States, 335 F.2d 176 | 110+382 | Even if we assume, arguendo, that the initial arrest for refilling of liquor bottles was unlawful, the legality of that arrest is immaterial in a prosecution for the subsequent bribery of the arresting officer. | Legality of initial arrest for refilling of liquor bottles was immaterial in prosecution for subsequent bribery of arresting officers. 18 U.S.C.A. S 201(b)(3); 26 U.S.C.A. (I.R.C.1954) S 5301(C). | Is the legality of the arrest material for bribery subsequent to arrest? | 012448.docx | LEGALEASE-00148286-LEGALEASE-00148287 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 15700 | People v. DeRouen, 38 Cal. App. 4th 86 | 67+6 | As this case vividly illustrates, the societal interests present in one's second or vacation home are equally as important as those present in one's primary residence. Each of the victims testified they resided in their Armstrong Road residences sporadically. The potential danger of an unexpected intruder into these dwellings, surprising the occupants and inciting violence is the same potential danger a burglar poses to occupants of their primary residence. The seriousness of the crime does not turn on the fortuity of whether the occupant chose one home or the other on a particular day. The hundreds of items taken from the Edwards' vacation home included the victim's mother's antique piano and his wife's hope chest she had treasured since she was 12. Presumably safe within the "most secret zone of privacy" these are the very heirlooms, mementos, and items of personal history we spoke of in People v. Guthrie, supra, 144 Cal.App.3d at p. 847, 193 Cal.Rptr. 54. As we acknowledged in Brown, the reasonable expectation of the occupant in protection from unauthorized intrusions is determinative. We conclude the occupant of a vacation home reasonably expects the same protection from unauthorized intrusions as the occupant of any other residence. There was ample evidence to support the jury's findings the vacation or second homes were inhabited dwellings to sustain defendant's convictions for multiple burglaries in the first degree. | Defendant could be convicted of burglary in the first degree based on his theft of property from vacation homes, notwithstanding his claim that homes were not "inhabited dwellings" within meaning of burglary statutes because no one lived at homes at time of commission of offense and there was no evidence that any of the victims intended to return to homes for more than overnight visit in the future; occupant of a vacation home reasonably expects same protection from unauthorized intrusions as occupant of any other residence. West's Ann.Cal.Penal Code SS 459, 460. | Is a vacation home considered a dwelling under the burglary statute? | 013026.docx | LEGALEASE-00148800-LEGALEASE-00148801 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15701 | State v. Schneider, 36 Wash. App. 237 | 67+6 | The law of burglary was designed to protect the dweller, and, hence, the controlling question here is occupancy rather than ownership. See R. Perkins, Criminal Law 206 (2d ed. 1969). The law in Washington has long reflected this principle:"The test, for the purpose of determining in whom the ownership of the premises should be laid in an indictment for burglary, is not the title, but the occupancy or possession at the time the offense was committed." | Law of burglary is designed to protect the dweller and, hence, controlling question is occupancy rather than ownership. West's RCWA 9A.52.010(3), 9A.52.030(1). | Does the law of burglary protect the dweller? | Burglary - Memo 268 - RK_58150.docx | ROSS-003321035-ROSS-003321036 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15702 | Rosette Inc. v. United States, 277 F.3d 1222 | 260+2 | We conclude that the geothermal process as a whole is inorganic within the definition set forth in Western Nuclear, and thus may be classified as generally mineral in character. | Geothermal process as a whole was inorganic, and therefore geothermal resources were properly classified as generally mineral in character for purposes of determining whether such resources qualified as "mineral" under reservation of mineral rights mandated by Stock Raising Homestead Act (SRHA). 43 U.S.C.A. S 299. | Is the geothermal process as a whole inorganic to be classified as mineral in character? | Mines and Minerals - Memo # 25 - C - EB_57974.docx | ROSS-003293155-ROSS-003293156 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15703 | Sutton v. SM Energy Co., 421 S.W.3d 153 | 260+78.1(1) | A typical Texas mineral lease contains a habendum clause that defines the duration of the lease, generally providing a relatively short fixed term of years as the primary term and then a secondary term for "as long thereafter as oil, gas or other mineral is produced." Anadarko, 94 S.W.3d at 554. During the primary term, production on any part of the land covered by the lease continues the lease in effect as to all land covered by the lease. Ridge Oil, 148 S.W.3d at 149. A lease that states its secondary term lasts for "as long as oil or gas is produced" automatically terminates if actual production during the secondary term ceases other than temporarily. Anadarko, 94 S.W.3d at 554; Amoco Prod. Co. v. Braslau, 561 S.W.2d 805, 808 (Tex.1978). Here, the habendum clause contained in the 1966 lease provides as follows:2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of (10) years from the date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days. [Emphasis added.] | Although habendum clause in oil and gas lease typically controls mineral estate's duration, other clauses may extend habendum clause's term. | Does a lease's habendum clause define the mineral estate's duration? | 021584.docx | LEGALEASE-00148223-LEGALEASE-00148224 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15704 | Clifton v. Koontz, 160 Tex. 82 | 260+68(1) | The lease instrument involved in this suit provides by its terms that it shall continue in effect after commencement of production, "as long thereafter as oil, gas, or other mineral is produced from said land." While the lease does not expressly use the term "paying quantities', it is well settled that the terms "produced" and "produced in paying quantities' mean substantially the same thing. Garcia v. King, 139 Tex. 578, 164 S.W.2d 509, 511. | In a mineral lease, the terms "produced" and "produced in paying quantities" mean substantially the same thing. | Do the terms produced and produced in paying quantities mean substantially the same thing? | Mines and Minerals - Memo #308 - C - CSS_57759.docx | ROSS-003291838-ROSS-003291839 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 15705 | Leabo v. Leninski, 2 Conn. App. 715 | 302+34(1) | A formalistic or highly technical construction of pleadings is contrary to a proper view of pleading requirements O'Brien v. Seyer, 183 Conn. 199, 210-11, 439 A.2d 292 (1981). "[S]light linguistic ambiguity" does not serve to nullify a cause of action which is sufficiently raised to notify the defendant of its existence. Schenck v. Pelkey, 176 Conn. 245, 255, 405 A.2d 665 (1978); Buckley v. Lovallo, 2 Conn.App. 579, 587, 481 A.2d 1286 (1984). "Justice is not served by accepting a claim of variance [between allegations and proof] from a party who at all times has been in a position of knowing the true state of facts." Schaller v. Roadside Inn, Inc., 154 Conn. 61, 67, 221 A.2d 263 (1966). | A formalistic or highly technical construction of pleadings is contrary to a proper view of pleading requirements. | Is a formalistic or highly technical construction of pleadings required? | Pleading - Memo 463 - RMM_58011.docx | ROSS-003296060-ROSS-003296061 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 15706 | Mueller v. N. Broward Hosp. Dist., 403 So. 2d 581 | 307A+590.1 | It makes no difference that the subject order granting leave to appellant to file an amended complaint was not the result of a motion served on appellee, the motion having been served only on the district. The record activity need not be directed to or instituted by the party who seeks dismissal. Biscayne Construction Co. v. Metropolitan Dade County, 388 So.2d 329 (Fla.3d DCA 1980); Phillips Petroleum Co. v. Heimer, 339 So.2d 284 (Fla.3d DCA 1976), cert. denied 348 So.2d 948 (Fla.1977). | Record activity, as would preclude dismissal for failure to prosecute, need not be directed to or instituted by party who seeks dismissal. 30 West's F.S.A. Rules of Civil Procedure, Rule 1.420(e). | Should record activity not be directed to or instituted by a party who seeks dismissal? | 036427.docx | LEGALEASE-00149041-LEGALEASE-00149042 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15707 | Perrin v. Papa John's Int'l, 114 F. Supp. 3d 707 | 170A+2554 | Affirmative defenses are assertions by a defendant raising new facts and arguments that, if true, will defeat a plaintiff's claim, and a defendant therefore bears the burden of proof with respect to its affirmative defenses. PNC Bank, Nat. Ass'n v. El Tovar, Inc., No. 4:13"CV"1073 CAS, 2014 WL 538810, at (E.D.Mo. Feb. 11, 2014). As with any motion for summary judgment, a movant seeking summary judgment on an affirmative defense must first "inform[ ] the district court of the basis for its motion and identify[ ] those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir.1992) (citing Celotex, 477 U.S. at 323, 106 S.Ct. 2548). There is no requirement that the movant support its motion with materials negating the affirmative defense. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548. | Defendants raising affirmative defense of statute of limitations in five class actions asserting minimum wage claims under state laws and FLSA collective action did not meet their burden of proof to produce facts showing that some or all of plaintiffs' claims fell outside applicable limitations period, where they had not identified applicable statute of limitations or put forth facts which supported their defense and their opposition brief did not respond to, or even mention, plaintiffs' motion for partial summary judgment on that defense. Fair Labor Standards Act of 1938, S 1 et seq., 29 U.S.C.A. S 201 et seq. | Does a defendant bear the initial burden to prove the affirmative matter defeating the plaintiff's claim? | 036585.docx | LEGALEASE-00148780-LEGALEASE-00148781 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 15708 | Smith v. SunTrust Bank, 554 B.R. 344 | 308+166(1) | "Ratification is defined as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." " Am. Travel Corp. v. Cent. Carolina Bank & Tr. Co., 57 N.C.App. 437, 442, 291 S.E.2d 892, 895 (1982) (quoting Restatement (Second) of Agency " 82 (1958)). In order to ratify an agreement, a party must have "full knowledge of all material facts relative to the unauthorized transaction." Carolina Equip. & Parts Co. v. Anders, 265 N.C. 393, 400"01, 144 S.E.2d 252, 258 (1965). | In order to ratify an agreement, under North Carolina law, a party must have full knowledge of all material facts relative to the unauthorized transaction. | Can an agreement/transaction be ratified without full knowledge? | 041361.docx | LEGALEASE-00148520-LEGALEASE-00148521 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 15709 | In re J.B.M., 157 S.W.3d 823 | 352H+190 | In a case where the charge is attempted sexual assault, intent may be inferred from the accused's actions, words, and conduct. Lindsey v. State, 764 S.W.2d 376, 378 (Tex.App.-Texarkana 1989, no pet.). In the instant case, J.B.M. isolated R.S. in his apartment under the guise of retrieving a cigarette after R.S. earlier denied his physical advances. R.S. testified that J.B.M. kept pulling her to him, kissing and touching her, pulled her to the ground, restrained her, reached under her shirt, and caused her legs to spread. R.S. also testified that she thought J.B.M. was trying to have sex with her. | In a case where the charge is attempted sexual assault, intent may be inferred from the defendant's actions, words, and conduct. V.T.C.A., Penal Code SS 15.01(a), 22.011(a)(1). | How is an accuseds intent for sexual assault inferred? | Sex Offence - Memo 117 - RK_58168.docx | ROSS-003283099 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 15710 | In re Manion, 2008 WL 4180294 | 92+1229 | Manion cites no authority in support of an asserted constitutional right to privacy, and it has previously been determined there is no constitutionally protected privacy right in one's personal financial records. Martin v. Darnell, 960 S.W.2d 838, 844"45 (Tex.App.-Amarillo 1997, no writ); Miller v. O'Neill, 775 S.W.2d 56, 59 (Tex.App.-Houston [1st Dist.] 1989, no writ) ("[T]he supreme court has allowed such discovery, despite the inevitable intrusion."). | The trial court did not abuse its discretion in ordering discovery of financial records in a contract and tort suit involving the care and breeding of horses. The record contained no indication that the documents were confidential or privileged, and the party seeking to avoid discovery failed to cite any authority in support of a constitutional privacy right in one's personal financial records. | Do financial records have a constitutional right to privacy? | Bills and Notes - Memo 759 - KC_58510.docx | ROSS-003282409-ROSS-003282410 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,973 | 22,876 | 5,029 |
| 15711 | Lambeye v. Bank of Am., N.A., 714 F.Supp. 2d 562 | 172H+1344 | Plaintiff is correct that 15 U.S.C. § 1602(u), and the interpretive regulation published at 12 C.F.R. 226.14(g), currently referred to as Reg Z, which requires a creditor to disclose "the total of payments, the number and amount of payments [and] the due dates or periods of payments scheduled." Plaintiff also draws the Court's attention to a number of reported cases adopting an objective standard in determining violations of TILA and rejecting the notion that deception, confusion, or actual injury are necessary to demonstrate an actionable claim for rescission. Smith v. Chex Systems, LLC, 510 F.3d 1311 (11th Cir. 1999); McGowan v. King, Inc., 569 F.2d 845, 849 (5th Cir.1978). The sufficiency of the disclosure is a question of law. | Is a creditor required to disclose the due dates or periods of payments scheduled under the federal law? | Consumer Credit - Memo 61 - KC_56578.docx | ROSS 003388218-ROSS-003388219 | Condensed, SA, Sub 0.38 | | 0 | 1 | 1 | 1 | |
| 15712 | Caracey v. PNC Mortg., 795 F. Supp. 2d 1098 | 172H+32 | Cousins generally hold that lenders do not owe their borrowers a duty of care sounding in negligence. McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *3 (June Nov. 17, 2010) (citing Champlaie v. BAC Home Loans Servicing, LP, 706 F.Supp.2d 1029 (E.D.Cal.2009)) ("[A]s a matter of law, [a] lender [does] not owe a duty to negligence not to place borrowers in a loan even where they have a likelihood of borrowers would be unable to repay." [Some citations omitted]. Plaintiffs only dealt with the PNC Defendants in a borrower and lender capacity. This Court therefore FINDS that Plaintiffs have not, and cannot, allege the PNC Defendants owed them a duty of care sounding in negligence. Plaintiffs' Complaint fails to allege a plausible NIED claim, and they cannot cure the defects in that claim by any amendment. The PNC Defendants' Motion is therefore GRANTED as to Count XII insofar as Plaintiffs' NIED claim is DISMISSED WITH PREJUDICE. | Does the lender owe borrower a duty of care sounding in negligence? | Creditors' Remedies - Memo 12 - RK_56614.docx | ROSS 003318465-ROSS-003318466 | Condensed, SA, Sub 0.91 | | 0 | 1 | 1 | 1 | |
| 15713 | Newcomb v. Peck, 17 Vt. 302 | 108H+8 | As to the place of trial record: record is precisely as described in the declaration, and the issue is proved. The omission of the given name of one of the parties in the declaration is matter of form, of which a party could only avail himself by taking advantage of by a plea in abatement. Mann v. Carley, 4 Cow. 198. Waterbury v. Mather, 16 Wend. 611, 613. Also in Lowe v. Champ, 5 & 6 Love Cory, Movance. p 18. Stafford v. Roberts, 1 Stra. 16 & 4 Co. Morris v. Hedges, 1 & 4 Mod. 11, 5 & 4 P. 463. In this case the defendants did appear; on the record shows, as to which the pleadings described decided, by the highest authority, that in debt is not a good plea to a declaration upon a judgment from another state. This is, here, no longer an open question. Mills v. Duryee, 7 Cranch 481; Hampton v. M'Connell, 3 Wheat. 234; Boston v. E. Factory v. Hoyt, 14 Vt. 92. | Is indebt a good plea to an action founded on a judgment of another state? | 01407.docx | LEGALEASE 00149874-LEGALEASE 00149875 | Condensed, SA, Sub 0.91 | | 0 | 1 | 1 | 1 | |
| 15714 | Cake v. State, 80 S.D. 232 | 200+40 | In the present case the option agreement specifically stated the purpose of acquiring the plaintiff's property was to secure a right-of-way for the state highway purposes only". An easement was all that state could acquire regardless of the form of the instrument of conveyance. Highway 51 was not relocated as contemplated. The state has never taken possession of the property. Its use by plaintiff has never been disturbed. It has never been put to any highway purpose. The use, however, of the state may have acquired in the property by virtue of the option agreement and deed reverted to plaintiff, by operation of the law, upon abandonment of the project by the State Highway Commission. In contracting with the Commission plaintiff was charged with notice of its limited power and authority. Under the circumstances, he does not have a vested right to payment for property not necessary and never useful for highway purposes. | Can state acquire easement regardless of the form of the instrument of conveyance? | Highway - Memo 254 - DB_56543.docx | ROSS 003292426-ROSS-003292427 | Condensed, SA, Sub 0.71 | | 0 | 1 | 1 | 1 | |
| 15715 | Almand v. Atlanta Consol. St. Ry. Co., 108 Ga. 417 | 268+647 | The record discloses that the county has expended a large sum of money in improving the street in this town, and that this was done with the consent of the town authorities. The county authorities, being interested in securing an improved highway from the city of Atlanta to the county line, in their discretion saw proper to continue the improvement through this municipality; and no doubt the question presented to the county authorities was whether they should improve this highway in a uniform manner; or leave to the authorities of the towns and cities along the line unconstructed, that portion which would make an improvement within their limits similar to the improvement the county was making just another. Did the improvement made by the county authorities within the limits of the town of Oakland City have the effect of giving to the county authorities such jurisdiction over that street as to take the exclusive control of the town? Before the town was incorporated, the highway in question was in the control of the public roads of the county, and prior to the action of the charter of the municipal corporation the county, of course, had exclusive jurisdiction over this highway. The moment that the legislative created the municipal corporation, and gave it authority over its streets, and thereby within the limits of the corporation was to embrace therein, as a matter of law, a part of what before was a county highway, the jurisdiction of the county over this part of the highway ceased, and the same became subject to the control and jurisdiction of the municipal authorities. Elliot, Roads & S. p. 332 et seq.; Brown v. Hines (Ind.App.) 64 E. 655. | When a municipal corporation is created, it becomes vested with jurisdiction over the territory embraced within its limits, and the mere fact that there has been a valuable improvement made by the county authorities on a part of an improved street, before the incorporation by the city, does not oust the municipality of its jurisdiction over such street notwithstanding the improvement through the municipality may be adjacent to the street improved area, before the incorporation of the city, a part of an established public road of the county. | 01920.docx | LEGALEASE 00149495-LEGALEASE 00149496 | Condensed, SA, Sub 0.73 | | 0 | 1 | 1 | 1 | |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 15,544 | 14,873 | 23,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | 839 | | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15716 | Noel Canning v. N.L.R.B., 705 F.3d 490 | 92+465 | It is the difference between the word choice "recess" and "the Recess" that first draws our attention. When interpreting a constitutional provision, we must look to the natural meaning of the text as it would have been understood at the time of the ratification of the Constitution. ... | When interpreting a constitutional provision, court must look to the natural meaning of the text as it would have been understood at the time of the ratification of the constitution. | How should a statute or constitutional provision be interpreted? | 021793.docx | LEGALEASE 00169110 – LEGALEASE 00169111 | Condensed, SA, Sub 0.8 | 0.8 | 0 | | | 1 | 1 |
| 15717 | Gayev v. McCarthy, 252 U.S. 171 | 221+212 | The word "retain" is used in the statute as an alternative to "hire" and more commonly than different from the usual employment relation in money. One may be retained, in the sense of a foreign people, uses "retain" as an alternative to "hire," but its meaning, something different from the usual employment with payment in money, and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a promise for advancement or payment in the future. | Can retain be used as an alternative to hire? | Neutrality Laws - Memo 29 - ANM_SA916.docx | ROSS 00330964 ROSS-000330965 | Condensed, SA, Sub 0.4 | 0.4 | | | | 1 | 1 |
| 15718 | Hamilton v. Williams, 298 S.W.3d 334 | 110+134 | In conducting our review, we take as a true the allegations in an inmate's petition and review the type of relief and remedy... cause of action the person failed to exhaust ... 347 (Tex. App. 2009, no pet.). A claim has no arguable basis in law if it relies on an indisputably meritless legal theory. ... 14.005, FindLaff, 94 S.W.3d at 653. | Are inmate's claims no arguable basis in law, and may thus be dismissed if frivolous, where claims rely on an indisputably meritless legal theory. V.T.C.A. Civil Practice & Remedies Code § 14.003. | Does a claim have any arguable basis in law if it relies on an indisputably meritless legal theory? | 035362.docx | LEGALEASE 00190249 - LEGALEASE 00190250 | Condensed, SA, Sub 0.81 | 0.81 | 0 | | | 1 | 1 |
| 15719 | Whipps v. Ryan, 2014 WL 4725800 | 307A+561 | When considering whether dismissal with prejudice under Civ.R. 41(B)(1) is appropriate, court are guided by ... Harmatz, 78 Ohio St.3d 368, 371, 678 N.E.2d 519 (1997). "Proper factors for consideration in a Civ.R. 41(B)(1) dismissal with prejudice include the drawn-out history of litigation, including a plaintiff's failure to respond to interrogatories until threatened with dismissal, and other evidence that a plaintiff is deliberately proceeding in dilatory fashion or has done so in a previously filed, and voluntarily dismissed, action." Id. ... Quaranta, 10th Dist. No. 11AP-573, 2012 WL 1094... | Property owner failed to show good cause why his claims against various parties in consolidated actions involving several parcels of real property should not be dismissed for failure to prosecute, despite contention that owner was denied the opportunity to pursue his claims while other matters in the case were pending, and that trial court had entered a vexatious litigator; owner provided no examples of an instance in which he sought to pursue his claims, and asserted that in the consolidated case owner never filed a motion to compel additional discovery or instituted proceeding for judgment as a matter of law. Rules Civ. Proc., Rule 41(B)(1). | Do proper factors for consideration in a dismissal with prejudice for failure to prosecute include the drawn-out history of the litigation? | Pretrial Procedure - Memo # 8022 - C - DMA.docx | LEGALEASE 00039364 – LEGALEASE 00039365 | Condensed, SA, Sub 0.42 | 0.42 | 0 | | | 1 | 1 |
| 15720 | Bazan v. OneWest Bank, 5 S.B., 176 Wash. App. 675 | 307A+622 | Under CR 12(b)(6), a motion to dismiss for failure to state a claim "should be granted only sparingly and with care. CR 12(b)(6)... | Property owner failed to state a claim against guaranty for failure to prosecute under CR 12(b)(6). | Should motions to dismiss for failure to state a claim be granted only sparingly and with care? | Pretrial Procedure - Memo #1193 - C - KBM.docx | LEGALEASE 00039550 – LEGALEASE 00039551 | Condensed, SA, Sub 0.73 | 0.73 | | | | 1 | 1 |
| 15721 | Testa v. Roberts, 44 Ohio App. 3d 161 | 30844 | A power of attorney is a written instrument authorizing an agent to perform specific acts on behalf of his principal. Trenoch v. Molnoma (1951), 124 N.E.4, 489, 227 P.2d 90. Because a power of attorney is controlled by statute and must conform to its provisions to be valid. See R.C. 1337.01. The creation of a power of attorney requires that the principal be mentally competent at the time the power is created... ability of the principal to understand the nature, scope and the extent of the business she is about to transact. Sandrik, Inc. v. Ancora (1959), 110 Ohio App. 37, 64, 12 O.O.2d 232, 164 N.E.2d 343, 418. | Creation of power of attorney requires that the principal be mentally competent at time power is created? | 041355.docx | LEGALEASE 00149625– LEGALEASE 00149606 | Condensed, SA | | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15722 | Bullock v. Texas Monthly, 731 S.W.2d 160 | 371+2288 | It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Equal protection does not impose on a state any rigid equality of taxation. Inequalities which result from singling out one particular class for taxation or exemption infringe no constitutional limitation. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). Like considerations govern exemptions from the operation of a tax imposed on the members of a class. The legislature is not bound to tax every member of a class or none at all. The legislature may make rational distinctions of degree having a rational basis. Carmichael v. Southern Coal & Coke Co., supra; Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937); American Transfer & Storage Co. v. Bullock, 525 S.W.2d 918 (Tex.Civ.App.1975, writ ref'd). | It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. | Is the government free to select the subjects of taxation? | Taxation - Memo # 853 - C - JL_58481.docx | ROSS-003294150-ROSS-003294151 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 15723 | Elston v. Dewes, 28 Ill. 436 | 83E+675 | As to days of grace previous to the act of Assembly of 1861, it has never been conceded they could be claimed by the maker of a promissory note. | Prior to the act of the general assembly of 1861, Laws 1861, p. 119, days of grace could not be claimed by the maker of a note. | Did days of grace exist as a right prior to the passing of the act of 1861 with regard to promissory notes? | 010004.docx | LEGALEASE-00150240-LEGALEASE-00150241 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 15724 | Petit v. U.S. Dept. of Educ., 756 F.Supp.2d 11 | 141E+867 | The IDEA entitles children with disabilities to special education and "related services" that are "designed to meet their unique needs and prepare them for further education, employment, and independent living. 20 U.S.C. "" 1400(d)(1)(A), 1414(d). The IDEA defines "related services" to include such developmental, corrective, and other supportive services (including ... audiology services ... and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children. | Department of Education regulation excluding cochlear implant mapping as service covered under Individuals with Disabilities Education Act (IDEA) did not contravene IDEA, since mapping was not "related service" designed to meet disabled students' unique needs and prepare them for further education, employment, and independent living; regulation was necessary for agency's compliance with IDEA and did not substantively alter protections embodied in prior regulations, and agency properly determined that fitting of hearing devices did not include technical adjustments. Individuals with Disabilities Education Act, S 602(26), 20 U.S.C.A. S 1401(26); 34 C.F.R. S 300.34(b). | What is the IDEA designed to do? | 017032.docx | LEGALEASE-00150146-LEGALEASE-00150147 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 15725 | Woldert v. Skelly Oil Co., 202 S.W.2d 706 | 156+25 | Furthermore, a stranger to a deed, on the theory of estoppel may not establish his title by recitals in such deed. Hart v. Meredith, 27 Tex.Civ.App. 271, 65 S.W. 507; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818; 31 C.J.S., Estoppel, " 37, p. 213, " 46, p. 226. The following pertinent excerpt is taken from Gilcrease Oil Co. v. Cosby, 5 Cir., 132 F.2d 790, 793:"As to this, it is well settled that title to real property cannot be acquired by estoppel, especially where it is alleged to flow from deeds and transactions to which the one pleading it was not a party. * * * Plaintiff must stand or fall upon the strength of its own title. (Authorities cited.)" | A stranger to a deed, on the theory of estoppel may not establish his title by recitals in such deed. | Can a stranger to a deed establish his title by recitals in such deed on the theory of estoppel? | 018004.docx | LEGALEASE-00150454-LEGALEASE-00150455 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 15726 | Gorby v. McEndarfer, 135 Ind. App. 74 | 200+80 | Generally speaking whena street or highway is vacated or abandoned the title tothe land reverts to the abutting property owners. 11 C.J.S. Boundaries " 35, p. 589. This ruleexists by virtue of the fact that the abutting land owner owns to the center of the street orhighway subject only to an easement of the public to the use of the street or highway.Street, Indiana Title to Real Property, " 789. | Abutting owner owns to center of street or highway, subject only to easement of public to use of street or highway. | Do abutting owners own the center of the street or highway? | Highways -Memo 264 - DB_58962.docx | ROSS-003326185 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 15727 | JLG Trucking v. Garza, 466 S.W.3d 157 | 302+20 | Further, JLG did not rule out the relevance of the second accident by presenting expert testimony that Garza's injuries were degenerative and not trauma-induced. Parties may plead conflicting claims and defenses in the alternative so long as they have a "reasonable basis in fact [and] law." Low v. Henry, 221 S.W.3d 609, 615 (Tex.2007). In turn, parties may present evidence of alternative, and even inconsistent, theories of relief, leaving to the jury to "choose the theory that it believes based upon its resolution of the conflicting evidence." Wilson v. Whetstone, No. 03"08"00738"CV, 2010 WL 1633087, at *10 (Tex.App."Austin April 20, 2010, pet. denied) (mem. op.) (holding that the plaintiff's claim and evidence of the parties' acquiescence to the alleged property boundary line were not fatal to her adverse possession claim, even assuming that the claims were mutually exclusive); see also In re Arthur Andersen LLP, 121 S.W.3d 471, 482 n.32 (Tex.App."Houston [14th Dist.] 2003, orig. proceeding) (noting that a defendant could deny liability for conspiracy while simultaneously alleging that third parties were also liable for conspiracy). But the burden still falls on the plaintiff to establish the elements of her cause of action | Parties may plead conflicting claims and defenses in the alternative so long as they have a reasonable basis in fact and law. | Can alternative defenses be pleaded? | 023654.docx | LEGALEASE-00150462-LEGALEASE-00150463 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 15728 | Lemlem v. Adams, 2004-0281 (La. App. 1 Cir. 2/11/05) | 307A+581 | The jurisprudence has uniformly held that article 561 is to be liberally construed in favor of maintaining a plaintiff's suit. Abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions that clearly have been abandoned. Clark, 00-3010 at 8-9, 785 So.2d at 785-786. | Rule on abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions that clearly have been abandoned. LSA-C.C.P. art. 561. | Is the rule on abandonment meant to dismiss actions on mere technicalities or to dismiss actions that clearly have been abandoned? | Pretrial Procedure - Memo # 8071 - C - SKG_58748.docx | ROSS-003279232-ROSS-003279233 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 15729 | Steinberger v. McVey ex rel. Cty. of Maricopa, 234 Ariz. 125 | 307A+622 | The "plausibility," or sufficiency of Steinberger's evidence, is not, as Respondents suggest, at issue in determining the legal sufficiency of her complaint. Moretto, 190 Ariz. at 346, 947 P.2d at 920. In addition, Steinberger has alleged sufficient facts to establish a violation of A.R.S. " 39"161. Steinberger alleges that Respondents violated A.R.S. " 39"161 by: (1) recording a Notice of Trustee's Sale dated February 17, 2009, that was signed without authority by Jim Montes; (2) recording the February 2009 and May 2010 Assignments, with the knowledge that both Assignments were made on behalf of non-existent entities, by persons who had no authority to execute the assignments, and were notarized by persons who did not witness the signatures; and (3) recording the February 2009 Notice of Substitution of Trustee, with the knowledge that it was executed by a person who did not have authority to execute the Notice, by and on behalf of entities that did not have the authority to execute the Notice. See supra, 28"35. See Deering v. Carter, 92 Ariz. 329, 333, 376 P.2d 857, 860 (1962) ("In establishing [negligence per se], the jury need only find that the party committed the specific act prohibited, or omitted to do the specific act required by the statute or ordinance."). | The plausibility or sufficiency of plaintiff's evidence is not at issue in determining the legal sufficiency of a complaint. | Is the plausibility or sufficiency of plaintiffs evidence not at issue in determining the legal sufficiency of a complaint? | 036874.docx | LEGALEASE-00150272-LEGALEASE-00150273 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15730 | McMillan v. Wells, 924 S.W.2d 33 | 30TH=381 | Missouri law disfavors dismissal of causes because of failure to prosecute; law favors trial on merits. | In Missouri the law disfavors the dismissal of causes because of failure to prosecute. Hoestra v. Mueller, 828 S.W.2d 842, 846 (Mo.App.1992), see also Waddell Co. v. Farris, 918 S.W.2d 915 (Mo.App.1996). "[T]he law favors trial on the merits." Kralik v. Mortgage... | Does law disfavor dismissal of cases because of failure to prosecute? | 03703.docx | LEGALEASE 00150634-LEGALEASE 00150636 | Condensed, SA | 0.87 | 0 | 1 | | 1 | |
| 15731 | G.H. State Cnm. Cnn. v. NPW, 706 N.E.2d 1044 | 30TH=381 | It is a party's responsibility to keep informed of hearing dates through its attorney or its own initiative. | We make our observations on this other point. First, the record shows that two weeks before June 6, 1996, the court sent the municipalities notice by certified mail advising them of the rescheduled trial date, for reasons not clear from the record the municipalities did not receive their mail from the post office until August. It is a party's responsibility to keep informed of hearing dates through its attorney or its own initiative. Langston v. Langston, 641 N.E.2d 379, 679 (Ind.Ct.App.1994). Second, the record is clear that on June 14 the trial court orally advised the municipalities that a trial on the merits of NPW's claim would be conducted June 6. Rather the municipalities nor anyone representing State Construction appeared in court and as a result someone so appeared Who would have known the date had been rescheduled to June 6. In sum, contrary to State Construction's argument, the municipalities were given notice of a June 6 trial date. They simply failed to appear. | Is it a party's responsibility to keep informed of hearing dates through its attorney or its own initiative? | Pretrial Procedure - Memo #3525 - C-TJ_59204.docx | R056-00029442-R056-00029443 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 15732 | Green v. Gruber, 2A La. Ann. 694 | 371=2001 | Are taxes debts in the ordinary sense of that word, but forced contributions for the support of the body politic. | Taxes are not debts in the ordinary sense of that word, but forced contributions for the support of the body politic, and to say whether this right of preference shall exist, and for what length of time. The right of taxation is one of the attributes of sovereignty, and the fundamental law of the State provides that it shall be equal and uniform throughout the State, and when its judgment to estimate the property on which to impose that burden which is to be taxed, and it is immaterial to the State whether it belongs to A or to B. So long as the tax is paid the State has the right to enforce it, and no justice to the other property holders the State is bound to exact it. | Are taxes debts in the ordinary sense of that word? | 04964.docx | LEGALEASE 00150590-LEGALEASE 00150591 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15733 | Plum Creek Timber Co. v. Washington State Forest Practices Appeals Bd., 99 Wash. App. 579 | 149E=596(37) | Does the Forest Practices Act authorize the Forest Practices Board to adopt forest practice rules? | The Forest Practices Act, RCW 76.09, is designed to "foster the commercial timber industry while protecting the environment." Sodowsky v. Forest Practices Bd., 77 Wash. App. 1995 (quoting Department of Natural Resources v. Marr, 54 Wash.App. 589, 593, 779 P.2d 1085 (1989)). The Forest Practices Act authorizes the Forest Practices Board (FPB) to adopt forest practice rules, and to the extent that the rules relate to water quality, the Department of Ecology (Ecology) must also promulgate those rules. RCW 76.09.040. The Department of Natural Resources (DNR) administers and enforces the forest practice rules. RCW 76.09.050. The Forest Practices Appeals Board (FPAB) hears appeals arising from DNR's actions under the Act. RCW 76.09.210. | Does the Forest Practices Act authorize the Forest Practices Board to adopt forest practice rules? | 04757A.docx | LEGALEASE 00150556-LEGALEASE 00150557 | Condensed, SA, Sub D | 0.26 | 0 | 1 | 0 | 1 | 1 |
| 15734 | Jernigan v. Bank One, Texas, N.A., 803 S.W.2d 774 | 83H=413 | Will negotiation of commercial paper takes place when an indorsement is made? | Negotiation is the transfer of an instrument in such a manner that the transferee becomes holder and, if the instrument is payable to order, negotiation is completed by delivery with any necessary indorsement. Tex.Bus. & Com.Code Ann. º 3.202(a) (Vernon 1968). Negotiation of commercial paper takes place only when an endorsement is made, and until then there is no presumption that the transferee is the owner." Leavings v. Tex. Commerce Bank, 3.203(a) Leavings v. Finance America Private Brands, Inc., 537 S.W.2d 483, 483 (Tex.Civ.App.1976 writ ref'd n.r.e.). The indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become part thereof." Tex.Bus. & Com.Code Ann. º 3.202(b) (Vernon 1968). | Will negotiation of commercial paper takes place when an indorsement is made? | Bills and Notes - Memo 206-15_59300.docx | R055-00028208-R055-00028209 | Condensed, SA, Sub D 7 | 0.7 | 0 | 1 | 0 | 1 | 1 |
| 15735 | Livonia Prop. Holdings v. 12840-12976 Farmington Road, 717 F.Supp. 2d 724 | 83H=435 | Can an allonge effectively negotiate an instrument? | Thus, regardless of a purported majority rule, an allonge affixed to a Note effectively negotiates the instrument without regard to space remaining on original instrument. M.C.L.A. § 440.3204(3). | Can an allonge effectively negotiate an instrument? | Bills and Notes Memo 3000 -6_59198.docx | R055-00029447-R055-00029474 | Condensed, SA, Sub D 05 | 0.05 | 0 | 1 | 0 | 1 | 1 |
| 15736 | Citizens Tr. Co. v. Ward, 195 Mo. App. 223 | 83H=429 | To pay to any bank or banker is an indorsement for collection and that such an indorsement, under the general rule did not transfer title? | Following the defendant's (appellant's) reasoning, it must be admitted that the indorsement on the note, "Pay to any bank or banker," is an indorsement for collection, and that an indorsement for collection does not transfer title. Bank of Indian Territory v. First National Bank, 109 Mo. App. 665, 83 S. W. 537; National Bank of Rolla v. First National Bank of Salem, 141 Mo. App. 719, 125 S. W. 513. | To pay to any bank or banker is an indorsement for collection, and does not transfer title? | 03861.docx | LEGALEASE 00150824-LEGALEASE 00150825 | Condensed, SA, Sub D 0.7 | 0.7 | 0 | 1 | 0 | 1 | 1 |
| 15737 | Inn Ke-W. Rea. & Loungn, 54 B.R.978 | 217=1971 | Is an insurance policy a negotiable instrument? | An insurance policy is not a negotiable instrument since it does not contain an unconditional promise to pay sums certain in money, is not negotiable instrument; therefore, transfer of policy is not covered by Article 3 of Uniform Commercial Code. U.C.C. § 3-101 et seq. | Is an insurance policy a negotiable instrument? | 03861.docx | LEGALEASE 00150794-LEGALEASE 00150795 | Condensed, SA, Sub D 0.52 | 0.52 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 13738 | Mraz v. Motta, Inc., Registration No. 6, 82 A.3d 527 | 83E+426 | The plaintiff challenges the validity of DMC's endorsement of the note to IndyMac on the grounds that the endorsement was not made on the blank... | Under Rhode Island's version of Uniform Commercial Code (UCC), endorsement need not be dated, and endorsements in blank are made only by the signature of the endorser are valid. Gen Laws 1956, § 6A-3-205. | Is validity of endorsement in blank recognized? | 0180G.docx | LEGALEASE-00151359-LEGALEASE-00151360 | Condensed, SA, Sub 0.86 | 0.86 | 0 | | 1 | 1 | |
| 13739 | Sahr v. Felter, 589 So.2d 583 | 48A+12 | The clear and unambiguous language of La R.S. 32:296 prescribes parking "any unmetered vehicle on any state highway or shoulder when such... | Broken down vehicle awaiting repair was legally parked on highway shoulder where vehicle did not obstruct flow of traffic, was not hazard to public safety, and was not so close to highway as parking area. LSA-R.S. 32:2, 32:34:3, 32:144, subd. B, 32:296, 48:342. | Is parking on the shoulder of a highway permitted? | 0180H_Memo 52 - 6.docx | LEGALEASE-00040724-LEGALEASE-00040725 | Condensed, SA, Sub 0.75 | 0.75 | 1 | | 1 | 1 | |
| 13740 | Missouri Pac. R. Co. v. Izard Cnty. Highway Imp. Dist. No. 1, 243 Ark. 263 | 200+132 | [The assessment for local improvements is not a tax in the ordinary sense of that term, as used in the Constitution and in statutes... | The assessment for local improvements is not a "tax" in the ordinary sense of that term, as used in the Constitution and in statutes generally. | Is the assessment for local improvement a tax? | 0190J.docx | LEGALEASE-00151016-LEGALEASE-00151017 | Condensed, SA, Sub 0.75 | 0.75 | 1 | | 1 | 1 | |
| 13741 | Martin Cty. v. Wachovia Bank & Tr. Co., 178 N.C. 26 | 200+121 | The rule to be deduced from this authorities may be thus summarized: The construction and maintenance of roads and bridges is a matter of general public concern... | The construction and maintenance of roads and bridges is a matter of general public concern. The whole body of the people of this state is benefited by them. The Legislature may call the expense of such public improvements of this type a tax, or a part, as the case may be... | Is the construction of roads a matter of general public concern? | 0190K_Memo 368 - DB_59193.docx | ROSS-003280244 | Condensed, SA | 0.28 | 1 | | 0 | 1 | |
| 13742 | De La Garza v. Ryals, 239 S.W.2d 854 | 302+38.5 | We will consider first the fifth point raised by appellant. The motion for a summary judgment was filed on September 18th, 1950, and a hearing... | A petition is principally a recital of facts which give rise to a cause of action. | Is a petition a recital of facts which give rise to a cause of action? | 0190L_Memo 504 RMM_554129.docx | ROSS-003279202-ROSS-003279203 | Condensed, SA, Sub 0.96 | 0.96 | 1 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 13545 | Golden Valley Elec. Ass'n v. Cell Enterprises, 495 P.2d 215 | 302n20 | It is elementary, as appellant states, that a litigant may plead in the alternative and advance inconsistent claims or rules does not relieve either party of the obligation of setting forth its alternative or inconsistent claims in its pleadings in order to give notice to the opposite side of what it must meet at the trial. Where pleadings have been held the issues will be determined within the pretrial order and under Civil Rule 16(e). The order when entered shall control the subsequent course of the action unless modified by the judge to prevent manifest injustice. | It is elementary, as appellant states, that a litigant may plead in the alternative and advance inconsistent claims or defenses? | Can a litigant plead in the alternative and advance inconsistent claims or defenses? | Pleading - Memo (056) RMM_3_9.30.docx | RDSS-00028445-RDSS-00028464 | Condensed, SA, Sub 0.47 | 0.47 | 0 | 1 | 1 | 1 | |
| 13544 | Lyons v. Lindsey Morden Claims Mgmt., 985 S.W.2d 86 | 302n16(1) | An alternative statement in a pleading in conflict with other allegations in the same pleading does not constitute a judicial admission. Vernon's Ann.Texas Rules Civ.Proc., Rule 48. | We think plaintiff's allegation that Lindsey Morden was the agent of EFIC falls within this rule, and does not constitute a judicial admission for three reasons. First, the allegation is found only in a single pleading setting out plaintiff's first cause of action... Within a single court, allegation must be consistent, but theories of different courts may be contradictory. Thus, contentions that would destroy a petition if urged in a single statement are appropriately separated into different courts. Second, when a pleading as a whole shows that alternative theories are advanced, failing to specifically state that a claim is made in the alternative is not strictly necessary. Tellingly, plaintiff alleged a conspiracy theory in count two. As a matter of law, the acts of an agent and its principal are the acts of a single entity and cannot constitute a conspiracy. Thus, the agency allegation in count one and conspiracy allegation in count two are clearly inconsistent, and we conclude from the context that they are pleaded in the alternative. An alternative statement in a pleading in conflict with other allegations in the same pleading does not constitute a judicial admission. Finally, we think it is worth repeating that in some pleadings are to be liberally construed. Alternative pleading falls within that philosophy. | Does an alternative statement in a pleading in conflict with other allegations in the same pleading constitute a judicial admission? | Pleading - Memo (056) RMM_5.9.18.docx | RDSS-00029409/2-RDSS-00028493 | SA, Sub 0.87 | 0.87 | 0 | 0 | 1 | 1 | |
| 13545 | Price v. Holmes, 198 Kan. 100 | 302n10 | It is permissible for pleader to allege a cause of action in the alternative, provided the alternatives are not repugnant. | "Can a pleader allege a cause of action in the alternative, provided that the alternatives are not repugnant?" We pause here to note that we had held it permissible to allege a cause of action in the alternative, provided the alternatives are not repugnant (Sisk v. Wesley Hospital & Nurse Training School, 188 Kan. 325; 362 P.2d 841), it being elementary, of course, that the pleader will be limited to but a single recovery. Our decisions have also upheld the right of all plaintiff to plead two causes of action arising out of a single transaction, the one sounding in tort and the other being in contract for breach of implied warranty (Nichols v. Nold, 174 Kan. 613, 258 P.2d 317, 38 A.L.R.2d 887; McCroy v. Wesley Hospital & Nurse Training School, supra.) | Is it permissible for pleader to allege a cause of action in the alternative, provided the alternatives are not repugnant? | 02.0683.docx | LEGALEASE-00151238-LEGALEASE-00151239 | Condensed, SA 0.82 | 0.82 | 0 | 1 | 0 | 1 | |
| 13546 | Carlson v. Hannah, & N.J., 202 | 308n92(1) | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | Attorneys in fact created the formal letter of attorney are merely agents and their authority and the manner of its exercise are governed by the principles of the law of agency (2 Am.Jur. [Agency], s 23, p 25). The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. Restatement, Agency, Second, s 7; Mechem on Agency, s 714 (Mut. Benefit H. & A. Ass'n v. A.J. Wood, 53 Ariz. 224; 87 P.2d 412 [1939]). In the actual exercise of the authority conferred, however, the extent of an agent's authority may be expressly or impliedly conferred from the character or extent of the function to be performed, the general course of conducting the business, or from the particular circumstances of the case. Implication is but another term for meaning and intent; express authority given to an agent includes by implication, whether the agency be general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purpose for which the agency was created. Sibley v. City Service Trust Co., 2 N.J. 458, 66 S., A.2d 844 [1949]; 2 Am.Jur. [Agency], s 86, p 70. Accordingly it is well settled that, unless otherwise agreed, the authority of an agent to manage a business extends no further than the direction of the ordinary operations of the business, including authority to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it. But Prima facie, authority to manage a business does not include authority to dispose of it in whole or in part. Restatement [Agency], s 73, 74 p 1. | Is the power of an agent to bind its principal limited? | 041857.docx | LEGALEASE-00151256-LEGALEASE-00151257 | Condensed, SA 0.93 | 0.93 | 0 | 1 | 0 | 1 | |

2777

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15747 | MT Bldr. of Elec. Workers, 213 F.3d 591 | 231H+1591 | It is true that an arbitrator is "not free to reinterpret the parties' dispute and frame it in his own terms; nevertheless, where the parties refuse to stipulate to the issues at arbitration, the arbitrator is empowered to frame and decide all the issues in the grievance as he sees them. | Is an arbitrator free to reinterpret the parties' dispute and frame it in his own terms? | Alternative Dispute Resolution - Memo 809 RK_59449.docx | ROSS-000278395-ROSS-000278396 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | 1 |
| 15748 | Faulkenbury v. CB Frachelle Inc., JA 637 F.3d 801 | 257+182(2) | A party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue. Fed.Rule.Civ.Proc.Rule 12(b)(3). | Does a motion to transfer venue constitute a waiver of the right to arbitrate? | Alternative Dispute Resolution - Memo 833 RK_56518.docx | ROSS-000294128-ROSS-000294129 | SA, Sub | 0.8 | 0 | | 1 | | |
| 15749 | Nw. Adjustment Co. v. Payne, 173 Or. 229 | 8.30T+235 | When an accommodation maker is required to pay note, he may recover from the party accommodated. | When is the maker of an accommodation note able to recover from the party accommodated? | Bills and Notes - Memo 637 - RK_59549.docx | ROSS-000282264-ROSS-000282268 | Condensed, SA | 0.9 | 0 | 1 | 0 | | 1 |
| 15750 | County Corner, 118 Miss. 374 | 8.30T+12 | This note is uncertainty between an assignor and an assignee were payable in Mississippi was immaterial to their rights where the assignment was governed by the law of Louisiana. | Does the law of the place where the note is payable govern its interpretation? | 009794.docx | LEGALEASE-00151615-LEGALEASE-00151616 | Condensed, SA, Sub 0.45 | | 0 | 1 | | 1 | |
| 15751 | Jacobsen v. Bunker, 699 P.2d 1208 | 8.30T+10 | Legal effect of promissory note where they are executed and delivered. | Which law governs the legal effect of a promissory note? | Bills and Notes - Memo 865 - RK_59548.docx | ROSS-000293153-ROSS-000293156 | Condensed, SA, Sub | 0.71 | | 1 | 1 | 1 | 1 |

2778

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15752 | Tharp, Smith & Reichert v. Craig, 10 Haw 460 | 83E+475 | It is urged by the appellant that the evidence did not justify the instructions of the court to find a verdict, and under the objection that several questions presented which demand the consideration of this court... | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Which law governs the days of grace with respect to a bill of exchange? | 007098.docx | LEGALEASE 00151619-LEGALEASE 00151621 | Condensed, SA, Sub 0.94 | 0.94 | 0 | | 1 | 1 | 1 |
| 15753 | Biloxi Bldg. v. Morrissey, 254 So. 2d 455 | 83D+12 | Relying strongly upon Louisiana LSA Civil Code Article 10, counsel for appellants declare then since the notes indicate they were payable or delivered in Mississippi and provided for payment in Mississippi... | Obligation of endorser or accommodation party is governed by lex contractus. | Is the obligation of an accommodation party governed by lex loci contractus? | 009068.docx | LEGALEASE 00151602-LEGALEASE 00151603 | Condensed, SA 0.97 | 0.97 | 0 | | 0 | 1 | |
| 15754 | State ex rel. Little Prairie Special Rd. Dist. of Pemiscot Cty. v. Thompson, 315 Mo. 56 | 200+121 | A road district, being a municipal corporation, has power to levy general taxes upon property within its boundaries for purposes of the district... | Road district, being municipal corporation, can levy general taxes on property within its boundaries for purposes of district. | Are road districts municipal corporations? | 018761.docx | LEGALEASE 00151672-LEGALEASE 00151673 | Condensed, SA, Sub 0.81 | 0.81 | 0 | | 1 | 1 | 1 |
| 15755 | United States v. Story, 16 F. Supp. 571 | 296+10 | (1) Subsequent indorsers, where the prior endorsement is forged on a pension check, are liable to the government... | Where a prior indorsement is forged on a pension check, which is 'commercial paper', subsequent indorsers are liable to the government. | Are subsequent indorsers liable to the government when prior indorsement is forged on a pension check? | 022875.docx | LEGALEASE 00151552-LEGALEASE 00151553 | Condensed, SA, Sub 0.39 | 0.39 | 0 | | 1 | 1 | 1 |
| 15756 | Int'l Tantine Serv. v. Lovitt, 881 S.W.2d 805 | 21+3 | Rule 14 governs the filing of a special appearance "for the purpose of objecting to the jurisdiction of the court over the person ... of the defendant on the ground that such party ... is not amenable to process issued by the courts of this State."... | Affidavit verified by notary public ... 'true and correct to the best of his knowledge' is insufficient as an affidavit unless authorized by statute. | Is an affidavit insufficient if not authorized by statute? | Affidavits - Memo 37 - _1_ppw4aHzOpjo4ESrbGdF0tSipkjc5_r.docx | ROSS-000001704 ROSS-00000211 | Condensed, SA 0.89 | 0.89 | 0 | | 0 | 1 | |

| ROW | Judicial Opinion | WVNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,079 |
| 15757 | Abney v. Abreg, Bloc. Registration Nos. 334 S.W.3d 161 | 21+3 | The Abney did not object to this Calbort testimony, but Ray Abney testified in his affidavit that, "[b]ased upon my information and belief, [MERS] is not the owner of the note in question and does not have authority to bring suit on the note and therefore under the deed of trust." On appeal, the Abney argue that Calston had no personal knowledge of any of the underlying documents and thus they were created by a third party company. Because they did not object to Calston's affidavit, they may not challenge her personal knowledge on appeal. See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex.1979) (a party must object in writing to formal deficiencies in the summary judgment proof or waive the objection). Form defects include the affiant's lack of personal knowledge. Stewart v. Sanmina Tex. L.P., 156 S.W.3d 198, 207 (Tex.App.–Dallas 2005, no pet.). Moreover, the mere fact that Calston was employed at Interim does not preclude her from testifying. See Houston Shell & Concrete Co. v. Kingsley Constructors, Inc., 987 S.W.2d 184, 186 (Tex.App.–Houston [14th Dist.] 1999, no pet.) (Tex.R. Evid. 602(b) does not require the affiant to be the creator of the document or even an employee of the company keeping the record but requires that the affiant establish that they or others in their company know of the events recorded on the third party documents). | Form defects in an affidavit include the affiant's lack of personal knowledge. | Do form defects in an affidavit include the affiant's lack of personal knowledge? | Affidavits - Memo 45 -_SCH465#mCCmH6aD_m5vV2eZ1_32aR_1X.doc × | ROD5-00000197-ROD5-00000288 | SA, Sub | 0.94 | 0 | 0 | | 1 | |
| 15758 | Matthews v. Diaz, 426 U.S. 67 | 24+116 | The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification. For a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded the other and the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country. | A legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other. | Is there a legitimate distinction between aliens and citizens? | "Aliens, Immigration and Citizenship - Memo 40 - M_60127.docx" | ROD5-00328153?-ROD5-003281558 | Condensed, SA | 0.8 | 0 | 1 | 0 | | |
| 15759 | Sterling & Seapp v. Bender, 7-PA. 201 | 83+4426 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. Ch3. unhs. In such case the parties' delivery divests himself of the legal interest in the bill or note, and it is vested by the delivery in the holder. Bar. Ad. The endorsement in blank constitutes a complete and perfect transfer of the interest in the bill or note, and without the addition of any other words, will vest the right of action and all other rights in the transferee and subsequent holders; though if the transferee be a mere agent, his principal may interfere; and a blank indorsement is now considered as prima facie a transfer of the interest until the contrary is established by showing that it was a mere deposit, and of itself sufficient to transfer the right of action to any bona fide holder. Ch3rq, unhs. 215.1 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | What happens when an instrument or note is indorsed in blank? | 010018.docx | LEGAL458-00132345-LEGAL458-00132346 | Condensed, SA | 0.82 | 1 | 0 | 0 | | |
| 15760 | Corrollo, Shlolo & Savannah Tpk. Co. v. Gooch, 113 Misc. 50 | 8,301+76 | The written order also appealed to the Newell Construction Company was a "bill of exchange," under section 4002, Code of 1906, which is as follows: "A bill of exchange is a written order whereby one person shall, by order in writing, signed by such person or by a proper agent, direct the payment of a sum of money by a party other than himself on demand or at some stated time in favor the order is drawn, and may be put in suit against the drawer if accepted by the person in whose favor the same is drawn." The written order comes within this definition, and cost ... | A written order drawn by a company in favor of creditor for payment of money due company from another was a "bill of exchange" under the definition of Code 1906, § 4002. | What is a bill of exchange? | Bills and Notes - Memo 211-DB_59960.docx | ROD5-00109696 | Condensed, SA, Sub 0.7 | | | 1 | 1 | | |
| 15761 | In re Rournive, 330 B.R. 166 | 51+240(1) | Because the policy behind the Bankruptcy Code is to give the debtor a fresh start, the plaintiff has the burden of proving that a debt is nondischargeable. Bank R. 4005. Such burden under section 523(a)(2)(A) requires a showing of fraud by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Furthermore, "[s]tatutory exceptions to dischargeability are narrowly construed in favor of the debtor." In re Brunard, 203 B.R. 836, 84 (Bankr.E.D.N.Y.1996); ... | Because the policy behind the Bankruptcy Code is to give the debtor a fresh start, the plaintiff has the burden of proving that the debt is excluded from discharge. | Who bears the burden of proof that the debt is excluded from discharge? | 010278.docx | LEGAL458-00132321-LEGAL458-00132322 | Condensed, SA, Sub | 0.67 | | | 0 | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15762 | In re Application, Jan. 23 B.R. 6.04 | 65T+135 | Broward admits that the notes in question meet the requirements under sections (a), (c) and (d)... [long opinion text] | "Under New York law, promise to pay in promissory note is not negotiable. 'Unconditional,' as negotiable instrument statute states that it is subject to governed by any other agreement. N.Y.McKinney's Uniform Commercial Code 3-104(2)(a)." | "Is it necessary for a promissory note to be unconditional, if the instrument states that it is subject to governed by any other agreement?" | D10693.docx | LEGALEASE 00152576-LEGALEASE 00152577 | Condensed, SA, Sub 0.84 | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 15763 | Kinsig v. First Fed. Bank, N.A., 277 N.J. Super. 291 | 172H+591 | What does the regulation signify?You court concludes that out of a single permits payment to either of the payees listed on a check... [long opinion text] | Virjudic, is used to give payee portion of check, permitted payment to either of the two payees listed and required endorsement of only one payee. N.J.S.A. 12A:3-116; 13 Pa.Cons.Stat.Ann.; 71105 § 3116. | Can payment be made by either payee if only one is paid? | D10755.docx | LEGALEASE 00152469-LEGALEASE 00152470 | Condensed, SA, Sub 0.69 | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 15764 | NEBCO v. Adams, 270 Neb. 464 | 195+1 | We have provided that a guaranty is an obligation... [long opinion text] | A "guaranty" is a contract by which the guarantor makes payment if the principal debtor defaults. | When the principal debtor defaults can the guarantor make payment? | D10838.docx | LEGALEASE 00152443-LEGALEASE 00152444 | Condensed, SA, 0.82 | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 15765 | Valencia v. Anderson Bros. Ford, 617 F.2d 1278 | 172H+1322 | The Notice of Valencia argues [long opinion text] | Truth in Lending Act is to be literally construed to achieve goal of meaningful disclosure of terms and conditions of credit before consummation of consumer credit transaction. Truth in Lending Act, §§ 102, 128(a)(3), 15 U.S.C.A. §§ 1601, 1638(a)(3). | Is the objective of the Truth in Lending Act to ensure that does not substantively regulate consumer credit? | D14038.docx | LEGALEASE 00152523-LEGALEASE 00152524 | Condensed, SA, Sub 0.64 | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 15766 | Twp. of Jefferson v. Div. of Tax'n of State of N.J., Dept. of Treasury, 26 N.J. Tax 1 | 371+2102 | It is well established that equalized true value... [long opinion text] | For purposes of determining the validity of the average ratio of assessed valuations promulgated by Director of Taxation for the apportionment of school aid, equalized true value is not required to be actual or accurate representation of true market value, but rather the equalization table is a practical approximation. N.J.S.A. 54:1-35.1 et seq. | Does equalized true value actually or accurately represent true market value? | Exchange Of Property Memo 57 KK_60081.docx | ROSS-003289172-ROSS-003289274 | Condensed, SA, Sub 0.37 | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 15767 | Jones v. Gould, 141 F.2d 220 | 260+70.1 | Jones claims that the public established a road on the property by adverse possession. He argues that because the United States has the property subject to all easements for roads... [long opinion text] | Once one claiming establishment of a road by adverse possession establishes title by adverse possession landowner has the burden of showing abandonment. | Who has the burden of showing abandonment when title by adverse possession is established? | D10687.docx | LEGALEASE 00152501-LEGALEASE 00152502 | Condensed, SA, Sub 0.64 | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 15768 | Weseko v. Cont. Cmty. Coll., 269 Neb. 114 | 307A+563.1 | It is common practice under the federal rules of civil procedure to allow an affirmative defense to be asserted in a rule 12(b)(6) motion when, on the face of the complaint... [long opinion text] | An affirmative defense may be asserted in a 12(b)(6) motion filed pursuant to the Nebraska Rules of Pleading in Civil Actions when the defense appears on the face of the complaint. | Will an affirmative defense be asserted in a motion when the defense appears on the face of the complaint? | Pretrial Procedure Memo # 8857 - C - MS_58654.docx | ROSS-003283113-ROSS-003283114 | Condensed, SA, Sub 0.8 | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 13769 | State v. Tedesco, 175 N.C. App. 296 | 808+3(1) | It is true that a principal may delegate to an agent all that he himself can do would with respect to "personal property" or acts regulated by statute which are required to be performed personally. | A principal may delegate to an agent all that he himself can do except as to precludes personal or acts regulated by statute which are required to be performed personally. | "Can a principal delegate all acts, that he can do himself?" | 04150D.docx | LEGALEASE 00152305-LEGALEASE 00152270 | Condensed, SA | 0.75 | 0 | | | 1 | |
| 13770 | Whitlock v. Gaskill, 110 N.C. App. 790 | 808+100(5.5) | The sole issue on appeal is whether a power of attorney must expressly confer the authority to grant a gift of real property. This opportunity to be a case of first impression in North Carolina. We hold that a power of attorney must expressly confer the authority to give a gift of real property. | Power of attorney must expressly confer authority to grant gift of real property. | Should authority be expressly conferred in a Power of Attorney? | Principal and Agent Memo-64 HC_60271.docx | ROSS 00283331 | Condensed, SA | 0.76 | | 0 | | 1 | |
| 13771 | Duskum v. Ullman, 74 Wis. 474 | 38+97 | Were the defendants concluded by the judgment in the foreclosure case on the question as to the payment of the notes which they said the plaintiff? It is contended that the defendants had sold these notes to the plaintiff for all that appeared on their face to be due upon them. This being so, there was surely a warranty implied in law that they had not been paid, for it is the settled law in this state that, in the assignment of an instrument or contract in writing, even not negotiable, for a full and fair price, the assignor impliedly warrants that it is valid, and that the maker is able upon it; and it is unfair to charge this in the parties... | By the assignment of a contract in writing of its face value, the assignor impliedly warrants that the maker is liable, unless the contrary clearly appears. | Does the assignor of an instrument impliedly warrant validity? | Bills and Notes - Memo-343 - 96.docx | LEGALEASE 00042550-LEGALEASE 00040351 | Condensed, SA, Sub | 0.85 | | 1 | 1 | 1 | 1 |
| 13772 | Mariner's Bank v. Abbott, 28 Me. 280 | 157+433(8) | Parol evidence is not admissible to vary the effect of a promissory note. If the promise is jointly and severally to pay, it cannot be shown to be otherwise. But when the creditor makes an arrangement with one of several debtors the others may prove by parol that they are sureties merely, and that the extension was injurious to them. | Though, if a promise is in a note is jointly and severally to pay, it cannot be shown to be otherwise, when the creditor makes an arrangement with one of several debtors the others may prove by parol that they are sureties merely, and that the extension was injurious to them. | Is parol proof admissible to show that a part is a surety? | 00982B.docx | LEGALEASE 00153549-LEGALEASE 00153550 | Condensed, SA, Sub | 0.33 | | | 1 | 1 | |
| 13773 | Perrone v. Gen. Motors Acceptance Corp., 232 F.3d 433 | 172H+1537 | We also take guidance from the Eleventh Circuit. In Adiel v. Chase Federal Savings & Loan Assoc., 810 F.2d 1051 (11th Cir. 1987), a class of mortgagors prevailed in a lawsuit to recover damages from Chase Federal Savings and Loan Association ("Chase") for Chase's failure to present them with truth-in-lending documents. Id. at 1053. The district court adopted a "but-for" test as well to determine reliance in its determination of whether to award actual damages. Adiel v. Chase Federal Savings & Loan Assoc., 630 F.Supp. 131, 133 (1986). The Eleventh Circuit affirmed the award of statutory damages and the district court's denial of actual damages, Adiel, 810 F.2d at 1055. Indeed, the majority of district courts hold have been made that detrimental reliance is an element of actual damages. | Detrimental reliance is element of claim for actual damages under either the Truth in Lending Act (TILA), or statutory damages. Truth in Lending Act, §5 130(a)(1), 3.85, 15 U.S.C.A. §§ 1640(a)(1), 1607.4 | Is detrimental reliance an element of Truth in Lending Act claims for actual damages? | 00983J.docx | LEGALEASE 00153555-LEGALEASE 00153556 | Condensed, SA, Sub 0.74 | 0.74 | | 1 | | 1 | |
| 13774 | Pope & Ballance v. Register, 834+134 | 834+134 | Revival, 2151, specifies the requirements of a negotiable instrument. The second of these requirements is that it "must contain an unconditional promise or order to pay a sum certain in money." This note contains the following condition: "And subject to the provisions of said deed." The note thus conditional on an uncertain fact and dependent on the outstanding deed debt upon an outside paper referred to therein was nonnegotiable and its honor properly scheduled. There is nothing in the provisions of Revival, 2153 or 2154, which cures the defect or makes the note negotiable, and Sherron took it subject to all equities. | Under Revival 1905, § 2151, providing that a negotiable instrument must contain an unconditional promise to pay a sum certain in money, a note which recited that it was subject to the provisions of deed of payment and not negotiable, sections 2153, 2154, defining an unconditional promise not specifying what facts do not affect negotiability, not curing the defect. | What are the requirements of a negotiable instrument? | Bills and Notes - Memo 918 - HC_60714.docx | ROSS 00229634-ROSS 00295633 | Condensed, SA, Sub 0.09 | | | | 1 | 1 | |
| 13775 | Boyd Printing Co. v. Whitaker Paper Co., 155 N.Y. 686 | 831+768 | A bank check is a contract, by the execution and delivery of which the drawer contracts with the payee that the bank will, on presentation, pay the face of the check as designated. It is not "merely a request upon a third party to pay. "Where the payee of such check brings suit against a third person to whom the consideration for which the check was given, or to set forth any further showing in declaration action does not make the plaintiff in a real action in the check, and that it has been presented for payment and the same initiation." | A bank check is a contract in writing, by the execution and delivery of which the drawer contracts with the payee that the bank will, on presentation, pay the face of the check as designated, and is not a mere request upon a third person to pay, and in a suit by the payee thereon a third person to whom the check was given or to set forth any further showing than that plaintiff was named as payee, and that the check had been presented for payment, and payment refused. | Is a check a contract? | 00991A.docx | LEGALEASE 00153668-LEGALEASE 00153669 | Condensed, SA, Sub 0.12 | | | 1 | | | |
| 13776 | Taylor v. Domestic Remodeling, 97 F.3d 96 | 172H+1581 | We would affirm, holding that the filing of the complaint constitutes statutory notice of rescission pursuant to 12 C.F.R. § 226.23(a)(5), and we concur with the magistrate judge's reasoning that this affords a common sense solution to a problem which might be otherwise unworkable because of the many difficulties a plaintiff might have in completing service on a creditor without substantial delay. Therefore, finding that the magistrate judge's opinion was well-reasoned and carefully considered, the judgment is AFFIRMED. | By commencing this district court action to exercise their rescissory rights under the TILA prior to expiration of extended three-year period for rescinding loan transaction, consumers gave defendants statutory notice of rescission, though consumers did not mail copy of their summons and complaint to defendant until after time later [filing of complaint did constitute statutory notice of rescission under TILA]. Truth in Lending Act, §125(d), 15 U.S.C.A. § 1635(f); 12 C.F.R. § 226.23(a)(5). | Does filing of a complaint constitute statutory notice of rescission? | 01367I.docx | LEGALEASE 00152969-LEGALEASE 00152970 | Condensed, SA, Sub 0.04 | | | | 1 | |

2782

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15777 | Caldwell v. Bd. of Trustees of Broward Cmty. Coll., 836 So.2d 1199 | 141I+990 | We agree with the reasoning of those Attorney General Opinions finding that Florida's public community colleges operated under Chapter 240 are not part of the executive branch of state government. [citations omitted] Public community colleges are not part of the executive branch and therefore are not state agencies. The status of community colleges as political subdivisions does not serve to disable or terminate the existing community college districts or change the nature of such entities or their governing boards of trustees. Neither does it convert those districts into state agencies so the areas that the districts or their governing boards become part of the Executive Branch of state government or the offices of such districts become state officers. | Public community colleges are not part of the executive branch of state government. West's F.S.A. § 1004.65 | Are community colleges part of the executive branch of state government? | 03705.docx | LGUALEAE 00152786 / LGUALEAE 00152789 | Condensed, SA, Sub 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15778 | Ray v. Wilmington Coll., 106 Ohio App.3d 707 | 141I+990 | Private schools have broad discretion in making rules and setting up procedures to enforce those rules. See Sergerie v. Franklin Univ. (1967), 11 Ohio App.2d 60, 62, 40 O.O.2d 229, 228 N.E.2d 334, 336. Courts do not interfere with the administration of the school, with its rules and regulations, or the manner in which it is conducted unless there is a clear showing that the institution's governing body in making a rule or applying the rule acted unreasonably or in an arbitrary manner. [citations omitted] Private schools have broad discretion in making rules and setting up procedures to enforce those rules. Courts do not interfere with the administration of the school, with its rules and regulations, or the manner in which it is conducted unless there is a clear showing that the school in making a rule or applying the rule acted unreasonably or in an arbitrary manner. | Private schools have broad discretion in making rules and setting up procedures to enforce those rules. | Does a private school have broad discretion in making rules? | 03706.docx | LGUALEAE 00152834 / LGUALEAE 00152835 | Condensed, SA 0.88 | | 1 | 0 | 1 | 0 |
| 15779 | Martin-Trigona v. Univ. of New Hampshire, 685 F. Supp.23 | 141I+990 | Universities have traditionally possessed broad discretion in administration of their internal affairs. Downing v. LeBritton, 550 F.2d 689, 691 (1st Cir.1977). In light of the special characteristics of the educational environment, it has been early stated University differs in significant respects from public forums such as streets or parks or even municipal theatres. A university's mission is education, and decisions of this Court have been denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities. We have not held, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings. Widmar v. Vincent, 454 U.S. 263, 268 n. 5, 102 S.Ct. 269, 273 n. 5, 70 L.Ed.2d 440 (1981). | Traditionally, universities possess broad discretion in administration of their internal affairs. | Do universities possess broad discretion in administration of internal affairs? | 03707.docx | LGUALEAE 00152868 / LGUALEAE 00152869 | Order, SA 0.89 | | 1 | | 1 | |
| 15780 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525 | 205+181 | The present case does not come within the rule above stated. None of the railroad's negligence acts caused injury to the railway company, or to be known to any others than the witnesses themselves. Evidence of the particular accident in question is not admissible for the purpose of showing a presumption that the particular accident in question happened, or that the place was defective and dangerous, or that the accident was of such a character that the occurrence resulting in the injury complained of might well have taken place. The facts are that the negligent conduct of the injured party, and not the same place where the plaintiff's horse was injured. We are aware that the point to be established by deduction from the evidentiary facts must appear more probable than the conclusion to the contrary. The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | Is there a natural and causal connection between the violation of a statute, and the frightening of a horse? | Highway_Memo 352-SB_QD744.docx | ROSS-000313607-ROSS-000313609 | Condensed, SA, Sub 0.95 | 0 | 1 | 1 | 1 | 1 |
| 15781 | Hawkeye Foodservice Distributors v. Iowa Educators Corp., 812 N.W.2d 600 | 307H+481 | U.S. supp. The district court, not the merits of the district's claims, when considering a motion to dismiss is the "petitioner's right of access to the district court. [citations omitted] The court cannot rely on evidence to support, or defeat the motion, but can rely on facts not alleged in the petition, to determine whether the petitioner is so plead that the petition would be entitled. | The only issue when considering a motion to dismiss [a plaintiff's] right of access to the district court, not the merits of the allegations. | What is the only issue when considering a motion to dismiss? | Pretrial Procedure - Memo #3121 - C - PC_cb46f.docx | ROSS-000329634 ROSS-000329604 | Condensed, SA 0.76 | | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 15782 | Hynosky, Am. v. Smugglers Textile Co., 264 F. Supp. 570 | 308x8 | An agency relationship is typically established by "a written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to so to act on the principal's account." Reid Container Int'l Corp. v. Abbott (etc (Eamax Service Ltd., 909 F.2d 698, 70124 (Cir 1990) (quoting Restatement (Second) of Agency § 26 (1958)). The elements of an agency relationship are: (1) "a manifestation by the principal that the agent shall act for him," (2) "accept[ance] of the undertaking" by the agent, and (3) "an understanding between the parties that the principal is to be in control of the undertaking." In re Rubin Bros. Footwear, Inc., 119 B.R. 416, 422 (S.D.N.Y.1990). Of those, the critical element is control of the agent by the principal. In re Shulman Transp. Enterprises, Inc., 744 F.2d 293, 295 (2d ... | Under New York law, elements of agency relationship are manifestation by principal that agent shall act for him, acceptance by interpreted agent, and understanding between parties that principal is to be in control of undertaking, of these, critical element is control of agency principal | What are the elements of agency? | Principal Agent Memo 27- AM, 0014.docx | ROSS-003292293 ROSS-003292920 | Condensed, SA, 0.67 | 0.67 | 0 | | 1 | 1 | 1 |
| 15783 | Advanced Neurological Care, P.C. v. State Farm Mut. Auto. Ins. Co., 38 Misc. 3d 750 | 308x47 | However, it does not necessarily follow that such a mistake requires a decision granting plaintiff's motion and denying defendant's cross motion. As a general rule, when notice is given to a person's designated agent, that notice is legally imputed to the agent's principal. The premise for this general rule is that an agent owes a duty to his principal to forward the notice. While this no-fault matter presents the opposite situation, where notice was given to the principal instead of the agent, the same general rule should apply, inasmuch as an agent is deemed to owe a duty of notices to his principal, the principal has an implied duty to forward notices to his agent, to ensure that the principal intends to forward it on agent's behalf. "Every contract of agency carries with it an implied obligation on the part of the principal to do nothing that would thwart the effectiveness of the agency." Diskin Export Corp. v. Kisiner, 273 App Div 499, 492 [1st Dept 1948]. "A party cannot insist upon a condition precedent, ..., when its nonperformance has been caused by himself." (Id.) | Every contract of agency carries with it an implied obligation on the part of the principal to do nothing that would thwart the effectiveness of the agency | Does the principal have any implied duty in an agency? | Principal Agent Memo 31-AM_0016.docx | ROSS-003281319 ROSS-003281320 | Condensed, SA | 0.86 | 1 | | 0 | 1 | |
| 15784 | Pelley v. Plarisun Corp., 7 Misc. 2d 695 | 308x47 | There is an exception to this principle where the hindrance is due to some action which the terms of the contract permitted the promisor to take. (Williston on contracts, § 1295a, p. 3684.) Thus, as against them, defendants were free to cancel the lease on "[60,8,6] of 15, 1935 since that right was not reserved for them by the contract and they would not thereby incur any liability to lessee on the implied promise not to prevent or hinder performance, but as against the plaintiffs defendants cannot claim that their exercise of the right of cancellation did not constitute an affirmative act of prevention or, at least, of hindrance. One "may not take advantage of a condition precedent the performance of which he himself has rendered impossible." Stern v. Gepo Realty Corp., 289 N.Y. 274, 277; 45 N.E.2d 440, 441. "Every contract of agency carries with it an implied obligation on the part of the principal to do nothing that would thwart the effectiveness of the agency." Diskin Export Corp. v. Rosen, 273 App Div ... | Every contract of agency carries with it an implied obligation on the part of the principal to do nothing that would thwart the effectiveness of the agency | Does the principal have any implied duty in an agency? | 041301.docx | LEGALEASE-00153125-LEGALEASE-00153126 | Condensed, SA | 0.85 | 0 | | 1 | 1 | |
| 15785 | Swindell v. Latham, 145 N.C. 144 | 308x921 | It seems to us that the providing judge went too far, under the facts and circumstances of this case, in the fourth instruction given to the jury which was as follows: "If it appears from a preponderance of the evidence that the defendant, as his principal's agent, had authority to pay for goods, he is directed to buy for cash with money advanced by the principal, and the latter fails to furnish the cash, and the agent, for the purpose of promoting his principal's business and in order to procure the goods for his principal, and the goods on such credit as he could obtain on the basis of his principal's liability as an undisclosed borrowed." "We presume that his honor, in giving this instruction, was attempting to follow the principle which he laid down, in another reason, he erred in the instruction given to the jury because it broadened the scope of the agent's authority as there defined. There was undoubtedly one expression in that case, as reported in 135 N. C. 492, 47 S. E. 634, which, when considered by itself, might, perhaps, have led the judge into this error. but when considered in connection with the context and reference to the facts of the particular case then under investigation, and the purpose of promoting the business to buy goods on credit for the had done so, and his agent, instead of using the funds for that purpose, bought the goods on his principal's credit, and the latter afterwards received and appropriated them, knowing that homeward, his agent, had violated his instructions to buy only for cash with money supplied to him and had bought on credit, With reference to these questions, we stated | An agent can only contract for his principal within the limits of his authority, and one dealing with an agent with limited powers must generally inquire as to the extent of his authority. | Can an agent contract for his principal? | Principal and Agent Memo 29 k HC_AD027.docx | ROSS-003291364 ROSS-003291366 | Condensed, SA, Sub 0.55 | 0.55 | 1 | | 1 | 1 | 1 |
| 15786 | Emmons v. Dowe, 2 Wis. 322 | 308x9211 | "Qui facit per alium, facit per se." An estoppel in pais, or by the conduct of a party, may be created in this way, for his reason, because an agent necessarily acts in the name of the principal; but such conduct of the agent, to conclude his principal, must be within the scope of his authority. | It ticipant in pais created by the act of an agent? | | | 041550.docx | LEGALEASE-00150489-LEGALEASE-00150490 | Condensed, SA, Sub 0.17 | 0.17 | 0 | | | 1 | |

2784
Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15787 | Messenger Courier Ass'n of Americas v. California Unemployment Ins. Appeals Bd., 175 Cal. App. 4th 1074 | 303k9(1) | From these authorities, we glean that our Supreme Court's and other court's application of both primary and secondary common law employment determinations are in the process of becoming part of the California law of the regulatory scheme... | Relationship of agency usually contemplates three parties: the agent, the principal, and third parties with whom the agent interacts in some manner. | How many parties does the relationship of agency contemplate? | Principal and Agent Memo 294 - KC_60587.docx | ROS5-00324414/ROS5-00331470 | Condensed, 5A, 0.91 | | 0 | 1 | 1 | 1 | 0.029 |
| 15788 | In re Lasco, 114 B.R. 296 | 303k9(1) | A principal-agent relationship is established when a party expressly or implicitly authorizes another to act for him or subsequently ratifies the action. Southern Exposition Management Co. v. Genmar, 250 Ga. App. 702, 551 S.E.2d 888, 552 (2001)... | Under Georgia law, a person acting as agent has no ability to create obligations for the principal to third parties. | Can an agent create obligations for the principal to third parties? | Principal and Agent Memo 289 - KC_60562.docx | ROS5-00328264/ROS5-00328267 | Condensed, 5A, Sub 0.86 | | 0 | 1 | 1 | 1 | |
| 15789 | Germer v. Com., 410 Mass. 445 | 371k2001 | The Justices have defined a tax as, "a revenue-raising exaction imposed through taxation of general applicability to most of the public. Opinion of the Justices, 393 Mass. 1209, 1214, 473 N.E.2d 1063 (1984)... | "Tax" is revenue-raising exaction imposed through generally applicable rates to defray public expense; nature of monetary exaction will be decided by studying its operation rather than how it has been characterized by legislature. | Is tax imposed through generally applicable rates? | 040998.docx | LEGALEASE-00151269-LEGALEASE-00151270 | Condensed, 5A, Sub 0.74 | | 0 | 1 | 1 | 1 | 1 |
| 15790 | Peay v. N. Liberties, 13 Pa. 65 | 371k2001 | This is a claim filed by the Commissioners of the Northern Liberties under the Act of 1840, for laying out, grading, &c. the gutters for a new street... | A tax is generally understood to mean the proportion of a duty or impost laid for the support of the government; but tax is understood in law in an enlarged sense that includes whatever the worldower an contractual obligated from a mere municipal or corporate charge for improvement of property within the corporation or municipal bounds. | Is tax an imposition of a duty or impost for the support of government? | 040045.docx | LEGALEASE-00153390-LEGALEASE-00153391 | Condensed, 5A, 0.77 | | 1 | 0 | 1 | 1 | |
| 15791 | Wyeth v. Levine, 555 U.S. 555 | 360k1k165 | In order to identify the "purpose of Congress," it is appropriate briefly to review the history of federal regulation of prescription drugs. In 1906, Congress enacted its first significant public health law, the Federal Food and Drug Act, ch. 3915, 34 Stat. 768. The Act, which prohibited the manufacture or interstate shipment of adulterated or misbranded drugs... | Drug user's state-law failure-to-warn claims against manufacturer of anti-nausea drug was not pre-empted by federal law on theory that labeling that accompanied drug... | Does any act prohibit against the manufacture or shipment in interstate commerce of any adulterated or misbranded food or drug? | Adulteration - Memo 8_1/ADAM/001361/Intl Money/Delgado is.docx | ROS5-00000114/ROS5-00000015 | Condensed, 5A, Sub 0.04 | | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 13792 | Kerns v. Thornton Golf Club, 21+9 433 S.W.2d 215 | 21+9 | Though Rule 14, T.R.C.P., provides that an affidavit may be made by an attorney for a party, it is nevertheless necessary for the affidavit to set out the authority by which such affidavit is made. Gen. v. Texas Co., Tex.Civ.App., 317 S.W.2d 83; on rehearing 337 S.W.2d 443. This rule is applicable to an affidavit who is an attorney. Marr v. Cariglia, 55 S.W.2d 1039, 1042 (Tex.Civ.App.). See also Smith v. Crockett Production Credit Ass'n., Tex.Civ.App., 372 S.W.2d 954, no writ; Montgomery v. Gibbens, Tex.Civ.App., 245 S.W.2d 311, no writ; Mauldin v. Hester, Tex.Civ.App., 248 S.W.2d 484, no writ. | Even though affidavit may be made by attorney for party it is necessary that affidavit set out authority by which it is made. Rules of Civil Procedure, rule 14. | Affidavits - Memo 74 _1N4GqR2sNUZTzdB5 grqVFCdV7Vpq.docx | ROSS-000000243-ROSS-000000245 | Condensed, SA, Sub 0.75 | | 0 | | 1 | | |
| 13793 | Riggs v. Price, 3 Greene 334 | 83E+341 | Independent of our statute, we believe it to be the uniform practice in the commercial world that a note payable to bearer, may be sued in the name of the holder of the note. And it may be said that independent of our statute, and as conform to the rule, that the possession of a note payable to bearer, or indorsed in blank, is prima facie proof of title. 6 Mass. 524, Sto. Prom. Notes, 289, 15 Ves. 314. | A note for a certain sum in property is not negotiable at common law. But can a note payable to bearer be sued in the name of the holder? | Bills and Notes - Memo 941 - PK_i40R5.docx | ROSS-003279942 | Condensed, SA, Sub 0.55 | | 0 | | 1 | | |
| 13794 | Pasker v. Roberts, 134 I.D. 9 | 83E+341 | Conceding, for the sake of argument, that the question of whether the suit is properly brought in the name of the payee of the note "for having previously to the bringing of the suit, executed a valid pledge of assignment to an assignee") depends, in the main, upon the affirmative, upon the authority of Ryan v. May, 14 Ill. 49; Chickering v. Raymond, 15 Ill. 362; Barnes v. Lloyd, 1 Doll. 23; McIntire v. Yates, 104 Ill. 491; and Barnett v. Hinckley, 124 Ill. 32, 14 N. E. Rep. 863, "to which it is held that a note cannot be assigned by separate instrument so as to vest the legal title in the assignee by a separate instrument, but that it can only be done by indorsement on the note itself. The judgment is affirmed. | Note cannot be assigned by separate instrument, and where payee has deed of assignment, duly assigned all his property, legal title to note is not thereby transferred to assignee so as to preclude payee from suing thereon in his own name for use of assignee. | 009945.docx | LEGALEASE-00154002-LEGALEASE-00154003 | Condensed, SA, Sub 0.64 | | 0 | | 1 | | |
| 13795 | Frank Rudolph Realty & Mortg. v. First Nat. Bank of Atlanta, 196 Ga. App. 114 | 83E+341 | We find no error in the trial court's grant of summary judgment to appellee on appellant's counterclaim. Contrary to appellant's argument, the record establishes the merger of appellant's predecessor-in-interest into appellee, and we further find that the evidence established that to be produced. See State Bank, etc., Co. v. Weeks, 170 Ga. App. 860, 861(1), 318 S.E.2d 784 (1984). Appellants' argument regarding the novelistic theory of non-merger is unsound, since there was required in 1980 with the principal amount of the loan exceeding $5,000 to controlled interest by former OCGA § 7-4-4 (in effect when the note was executed) and Finlay v. Oxford Constr. Co., 139 Ga.App. 801, 802(1), 210 S.E.2d 689 (1976). Appellant's argument regarding the future of consumer interest is controlled adversely to them by OCGA § 7-2-408 and J.M. Tull Indus. v. Reed, 160 Ga.App. 89, 90, 286 S.E.2d 25 (1981). As to appellants' remaining arguments, we note that the evidence produced sufficient evidence to allow its entitlement to summary judgment and appellants, in rebuttal, having proffered only appellant's own affidavit which concedes principle of merger statement and the bare allegations presented in appellant's answer, we held the trial court correctly granted summary judgment in favor of appellee. See Bank Bros. v. Tattnall Bank, 170 Ga. App. 821, 818 S.E.2d 780 (1989). See generally Coleman v. McDonald's Corp., 185 Ga.App. 628, 629, 365 S.E.2d 281 (1988). | Because there was a merger of the holder's predecessor-in-interest into the holder, no written assignment of promissory note was required to be produced in order for holder to recover on the note. | 009957.docx | LEGALEASE-00153780-LEGALEASE-00153781 | Condensed, SA, Sub 0.87 | | 0 | | 1 | | |
| 13796 | Totten v. Dewind, 140 A.3d 1731 | 129+107 | We regret respondent's contention that the evidence did not support the finding guilty of disorderly conduct, since he was charged with this offense because he did not intend to create a public disturbance. A person is guilty of disorderly conduct "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." [the engages in fighting or in violent, tumultuous or threatening behavior" (Penal Law § 240.20(1)). The conduct takes place in a public place in public, as long as the person recklessly creates a risk of a public disturbance (see Matter of McLoughlin v. McLoughlin, 30A A.3d 34 315, 1315*1316, 961 N.Y.S.2d 681). Here, the testimony presented at the fact-finding hearing established that respondent, in the particular "home, threw petitioner against a wall, forced his finger in her mouth and caused bleeding, slapped her face, punched her legs, forcibly touched her vagina, and grabbed her by the hair while she was forced to hold their children, all while ultimately resulted in petitioner leaving the home with her three children. thereby sufficiently establishing the risk of public disturbance (see Matter of Allen v. Cuoro, 133A.3d 319, 1030, 1307*1308, 32 N.Y.S.3d 450 Matter of Determan v. Deterann, 112 A.3d 1370, 1370, 978 N.Y.S.2d 56). That testimony also supports, by a preponderance of the evidence, the court's conclusion that respondent committed the family offenses of reckless endangerment in the second degree, forcible touching, and harassment in the second degree. | Is person guilty of disorderly conduct if he causes annoyance? | Disorderly Conduct - Memo 198 - PL_5235.docx | ROSS-003381215-ROSS-003381216 | Condensed, SA, Sub 0.86 | | 0 | | 1 | | |
| 13797 | Alabama Great S. R. Co. v. Gilbert, 6 Ala. App. 372 | 302+26 | "Common or popular words are to be construed in their popular sense, common law words according to their common law meaning, and technical words according to their technical sense; and in general the words are to be taken in their ordinary or popular sense which it plainly appears that they were used in a different sense." Maxwell v. Doe, & Co. v. City of Mobile, 146 Ala. 186, 40 South. 205, 3 L. R. A. 5,182, 2 Ann. Cas. 1228; 1 Mayfield's Dig. p. 943." 16. | In a pleading, in a general rule, words are to be taken in their ordinary and popular sense, unless it plainly appears that they were used in a different sense. | Pleading - Memo 555 - RMM_6323.docx | ROSS-003381747-ROSS-003381748 | Condensed, SA, Sub 0.66 | | 0 | | 1 | | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15798 | Koon v. Ray, 414 S.W.2d 705 | 302+72 | Prayer for relief is not part of pleading, and omission thereof does not oust court of jurisdiction of subject matter. | | Is the prayer for relief a part of the pleading? | 02374?.docx | LEGAL24 DE-00165777 LEGAL24DE-00154378 | Condensed, SA, Sub 0.88 | | 0 | | | 1 | 1 |
| 15799 | Packer v. Taylor, 828 N.W.2d 595 | 307A+560 | Good cause for failure to timely accomplish service of process requires an examination of all of the surrounding facts to determine if they reveal excusable neglect; in determining existence of good cause, for purposes of a motion to dismiss, C.C.A. Rule 1.302(5). | | When the grounds for the motion to dismiss are based on an alleged failure to provide timely service within the required time frame, is a court permitted to consider facts outside the pleading? | Pretrial Procedure - Memo #9367 - C - TL_V1205.docx | ROSS-003203064-ROSS-003203065 | Condensed, SA, Sub 0.69 | | | | | 1 | 1 |
| 15800 | Dubois v. Gentryn & Black Corp., 12 Cal. App. 4th 1889 | 307A+560 | Although public policy regards with favor trial on the merits, that policy is not absolute. The countervailing, albeit subordinate principle underlying Code of Civil Procedure section 583.420 is to discourage unreasonable delay and compel diligent prosecution of litigation, in a proper case, will take precedence. The evidence here of a lengthy, unexplained lack of activity marks this as such a case. Accordingly, we affirm, holding that the trial court, after issuing notice of its intent to dismiss the case under section and the absence of home credible and unhampered excuse for delay, reasonably exercised its broad discretion to dismiss the action such, in the present circumstances, the case including the factors enumerated in rule 373(e) of the California Rules of Court. | | Is a public policy regards with favor trial on merits absolute? | Pretrial Procedure - Memo #9441 - C - ML_v0938.docx | ROSS-003298124-ROSS-003293127 | Condensed, SA, Sub 0.64 | | | | | 1 | 1 |
| 15801 | Schlagge v. Testa, 99 Nev. 83 | 307A+560 | Court may dismiss a complaint for failure to prosecute or for violation of a court order. | | Can court dismiss a complaint for failure to prosecute or for violation of a court order? | Pretrial Procedure - Memo #9478 - C - TL_V1089.docx | ROSS-003298133&ROSS-003293139 | Condensed, SA 0.84 | | | | | 1 | |
| 15802 | United States v. Malik, 16 F.3d 45 | 305+513 | Absence of explicitly threatening language does not preclude finding of "threat," for purposes of federal statute making it offense to mail threatening communications. 18 U.S.C.A. § 876. | | Does the absence of explicitly threatening language preclude the finding of a threat? | Threats - Memo #64 - C - LR_6326.docx | ROSS-003298014-ROSS-003280617 | Condensed, SA, Sub 0.85 | | | | | 1 | 1 |
| 15803 | Natixi Ecosystems Council 43 I.v4 v. Weldon, 697 F.3d 1043 | 43 I.v4 | Forest plans are designed to manage forest resources by balancing the consideration of environmental and economic factors. National Forest Management Act of 1976, §6, 12(a), 16 U.S.C.A. § 1604. | | How are forest plans designed to manage forest resources? | Woods and Forests - Memo 82 - RK_6133R.docx | ROSS-003323668-ROSS-003313669 | SA, Sub 0.78 | | | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15804 | Wren v. Lawrence Cotton Mills, 138 N.C. 89 | 157=43(58) | The Negotiable Instrument Law was ratified on March 8, 1899. Pub. Laws 1899, c. 733. Before this law our decisions were not agreeable to the effect that when third persons wrote their names on the back of a negotiable instrument before delivery to the payee, the original parties, as between themselves could show their intent and the nature of their obligation — whether they had affixed their signatures as joint makers, as guarantors, or as indorsers. Lacy v. Baker, 38 N.C. 151; Barden v. Homithal, 32 N.C. 635 S.L. 513. But a complete change was wrought by the enactment of the new law, which in express terms now writes his name an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. C. S. 3084 Sec. also C. S. 3045. These sections supersede the former law. Dawson's Negotiable Instruments (6th Ed) 86, Brannan's Neg. Instruments Law (4th Ed) 588. In Fourth Nat. Bank v. Wilson, 168 N.C. 557, 84 S. E. 866, the court, after pointing out the change effected by this remarked that the purpose of these sections is to fix the status of the defendant as indorser. | Persons writing names on back of notes are secondarily liable as indorsers, in absence of words clearly indicating different intent, and parol evidence of indorsement thereof as comakers, guarantors, or sureties is inadmissible (C. S. 3084, 3045). | Can a person be deemed to be an indorser unless he clearly indicates by appropriate words? | Bills and Notes Memo 1214-PB.docx | LGEAEASE 00060666-LGEAEASE 00060667 | Condensed, SA, Sub 0.8 | | 0 | | | 1 | |
| 15805 | Radcliff v. Fifth Third Bank, 522 F.2d 243 | 172H=1341 | The statute clearly does not require the debtor to tender first. See Universe v. M.I.C. Properties, Inc., 561 F.2d 156, 164 (9th Cir. 1978); 172K. Palmer v. Wilson, 502 F.2d 860, 861 (9th Cir. 1974). It contemplates the creditor tendering first. But upon the creditor fulfilling this obligation under the statute, the debtor then must tender. Canada v. Indiana National Bank, 559 F.2d 580, 584 (6th Cir. 1978). Mitchell v. Jacobs Investment Corp. of Palm Beaches, 464 F.Supp. 663 (S.D.Fla.1979). Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of the property to the creditor. See Powers v. Sims & Levin, 547 F.2d 1216, 1220-22 (4th Cir. 1976); LaGrone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976); Palmer v. Wilson, 502 F.2d 860, 862 (9th Cir. 1974). | Rescission under provision of Truth in Lending Act is an equitable remedy in re rescission or return of property to creditor; Truth in Lending Act, § 125 as amended 15 U.S.C.A. § 1635. | Is rescission an equitable remedy? | 03746.docx | LGEAEASE 00105629-LGEAEASE 00105630 | Condensed, SA, Sub 0.73 | | 0 | | | 1 | |
| 15806 | In re Gunn, 387 B.R. 856 | 172H=1241 | Under Alabama law, a pawn transaction is governed by the Alabama Pawnshop Act. See Ala. Code §§ 5-19-1 et seq. A pawn transaction is defined as "[a] loan on the security of pledged goods or any purchase of pledged goods against security that in exchange for a pledged to its holder in consideration of a fixed price or rate to be redeemed or repurchased by the seller for a fixed price within a fixed period of time." Ala. Code § 5-19-1(2). The pawn ticket terms provided that Gunn would receive a $500 loan due in 30 days at a specified interest rate in exchange for granting Thirkfa a security interest in her automobile. The terms further provide for redemption of the pledged automobile for a fixed price after a fixed period of time. Thus, the loan provided under the pledged automobile was in fact a pawn transaction, making the Alabama Pawnshop Act applicable. | Under Alabama law, loan transaction in which terms of pawn ticket executed by pledgor and pawnbroker provided that pledgor would receive $500.00 loan due in 30 days at specified interest rate in exchange for granting pawnbroker security interest in her automobile, which was provided for redemption of the pledged automobile for a fixed price after a fixed period of time, was a "pawn transaction." Ala.Code 1975, § 5-19A-2(2). | What is a pawn transaction? | Consumer Credit - Memo 6 AM_61528.docx | ROSS 003390937-ROSS-003390938 | Condensed, SA, Sub 0.51 | | 0 | | | 1 | |
| 15807 | Wright v. State of Ga., 373 282=160 U.S. 284 | 282=160 | Three possible bases for petitioners' convictions are suggested. First, it is suggested that they were guilty of a violation of police officers' constitutional rights. It was obviously based, upon the testimony of the arresting officers themselves, upon their intention to enforce racial discrimination in the park. So it is argued that this Equal Protection Clause of the Fourteenth Amendment. See New Orleans City Park Improvement Ass'n v. Detiege, 358 U.S. 54, 79 S.Ct. 99, 3 L.Ed.2d 46, affirming 5 Cir., 252 F.2d 122. This command was plainly unconstitutional and cannot constitutionally be a basis because, as will be seen, the other asserted basis for the order was invalid. However, we need not rest petitioners from the park. | One cannot be punished for failing to obey the command of a police officer if that command is itself violative of Constitution. | Can a person be punished for failing to obey the command of a police officer if that command is itself a violation of Constitution? | 01437.docx | LGEAEASE 00155496-LGEAEASE 00155497 | Condensed, SA, Sub 0.88 | | 0 | | | 1 | |
| 15808 | Martin v. Powers, 505 217=1301 S.W.2d 512 | 217=1301 | This issue contains two sub-issues. First, what is a "self insurer"? The Policy does not define this term. However, the basic concept of insurance involves an insurer who, in exchange for a premium, assumes certain risks that otherwise would be the obligation of the insured. The opportunity to insure who, in exchange for a premium, "assumes certain risks that otherwise would be the obligation of the insured." Allstate Insurance Co. v. Texas Instruments, Inc., 306 S.W.2d 223, 231 (Minn. 1986). If the insured does this, it remains legally liable to it. Thus a self-insured chooses to assume the financial burden of the loss or liability, up to the limits of coverage. Thus, a resort company establishes a policy of liability insurance that covers the risk of the motorist negligently causing an accident that results in the injury or death of one's damages. In the risk of liability for damages that the motorist is incurring himself against. | The basic concept of insurance involves an insurer who, in exchange for a premium, assumes certain risks that otherwise would be the obligation of the insured. | What is the basic concept or principle of insurance? | 01961J.docx | LGEAEASE 00154966-LGEAEASE 00154967 | Condensed, SA | 0.83 | 0 | | | 1 | |
| 15809 | Dep't of Soc. Servs. v. 30T=4002 Romero, 609 P.2d 1323 | 30T=4002 | Defendant's Points 2 and 3, relating to undue delay and lachec are closely related, and insofar as applicable here, are based upon the same considerations. This court must ordinarily, determine in determining the lapse of time. Whether delay is a ground for the dismissal of an action by reason of the plaintiff's failure to prosecute it diligently depends upon the particular facts and circumstances of each case and in those cases where there has been no prejudice to the other party by the delay, and most importantly, whether it appears that any injustice has resulted. | Whether delay is a ground for the dismissal of an action by reason of the plaintiff's failure to prosecute it diligently depends upon the particular facts and circumstances of each case, and in those cases where there has been no prejudice to the other party, and most importantly, whether it appears that any injustice has resulted. | Should delay as a ground for the dismissal of an action be determined on totality of circumstances? | Pretrial Procedure Memo 8 R688 - C - M_61589.docx | ROSS 003242164-ROSS-003242165 | Condensed, SA | 0.38 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 15910 | O'Donnell v. Union Pump Co., 12 F.3d, Super. 68 | 302+2314 | "If the principal holds the agent to the world, as a general agent in the transaction of the business, any contract made by him, within the scope of that business, will bind the principal, although there may be, as between the principal and agent, a restriction upon the general authority of the latter; if the person with whom the contract is made has no notice of such restriction." Williams v. Getty, 31 Pa. 461, 72 Am Dec. 757 | Corporation retaining manager with general supervision of particular branch of its business; any contract made by him, within the scope of the business will bind the principal. Although there may be, as between the principal and agent a restriction entrusted to his care, and should bind his contracts on a belief made within apparent scope of authority. | "If the principal holds the agent to the world as a general agent, would any contract made within the scope of the business bind the principal?" | 041818.docx | LEGALEASE 00155665-LEGALEASE 00155666 | Condensed, SA, 0.39 | | 0 | | | 1 | |
| 15911 | Drews Fish Co. v. Dep't of Labor & Indus. of State of Washington, 141 Wash. 95 | 413+101 | | If we correctly grasp the meaning of what has been quoted from Miller's Indemnity Underwriters v. Braud, supra, and Cullen Railway Co. v. Dept. of Labor and Industries, supra, those cases point out the course to be followed and are plain that an obligation has been imposed to hold that the humane and beneficent purposes of our industrial act are to hold the humane and beneficent purposes of our industrial act are not to be restricted to injuries received within the state... | Does the Act apply within the territorial jurisdiction of the state? | 040814.docx | LEGALEASE 00155526-LEGALEASE 00155527 | Condensed, SA, Sub 0.68 | | 0 | | | 1 | |
| 15912 | Scott v. City of Seymour, 659 N.E.2d 585 | 21+9 | When affiant makes conclusion of fact, it must appear that affiant had opportunity to observe and did observe matters about which he or she testifies. | Affidavits supporting or opposing summary judgment motion must be made upon personal knowledge of the affiant and must show that the affiant is competent to testify upon the matters stated therein. Trial Rule 56(E). (Affidavits, Ind.App., 601 N.E.2d 379, 378. When an affiant makes a conclusion of fact, it must appear that the affiant had an opportunity to observe and did observe the matters about which he or she testifies. LeMaster, 601 N.E.2d at 377. The facts or data upon which... | Is it necessary that the affiant had an opportunity to observe the matters about which he or she testifies? | Affidavits - Memo 72-_1n7xd1m5AinYHSGsQ-qWpbOEA+Gg9hfii.docx | ROSS-000002319-ROSS-000003216 | Condensed, SA | 0.82 | | 0 | | | 1 | |
| 15913 | Seeley v. Johnson, 175 F. Supp.2d 661 | 156+5231 | Equitable estoppel in Mississippi is an extraordinary remedy and should only be invoked to prevent unconscionable results. | Starting with the basics, equitable estoppel in Mississippi "is an extraordinary remedy [that] should only be invoked to prevent unconscionable results."Harrison Enters., Inc. v. Trilogy Commc'ns, Inc., 818 So.2d 1088, 1095 (Miss. 2002). It should be applied cautiously and only when equity clearly requires it to "...prevent the injustice." (citing PMZ Oil Co., v. Lucroy Corp., 449 So.2d 1211 (Miss. 1984))... | Should equitable estoppel only be invoked to prevent unconscionable results? | 017767.docx | LEGALEASE 00155861-LEGALEASE 00155862 | Condensed, SA, Sub 0.69 | | 0 | | | 1 | |
| 15914 | Major League Baseball v. Morsani, 790 So. 2d 1071 | 156+5211 | Prime purpose of doctrine of equitable estoppel is to prevent a party from profiting from his or her wrongdoing. | Third, the fundamental purposes served by the statute of limitations and the doctrine of equitable estoppel are congruent. On the one hand, the basic purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims. A prime purpose of the doctrine of equitable estoppel, on the other hand, is to prevent a party from profiting from his or her wrongdoing. Logic dictates that a defendant cannot be taken by surprise by the filing of a suit when the defendant's own conduct is responsible for the lateness of the filing... | Is equitable estoppel meant to prevent a party from profiting from his or her wrongdoing? | Estoppel - Memo #121-C-COL_5O203.docx | ROSS-000294059-ROSS-000294060 | Condensed, SA, 0.84 | | 0 | | | 1 | |
| 15915 | Maryland Paving Co. v. First Bank, 217 N.C. App. 16 | 30+156(2) | Where both general and specific allegations are made respecting the same matter, latter control. | Plaintiff alleged that First Bank received the benefit of its services by receiving the proceeds from the sale of the properties, as evidenced by the certificate of satisfaction. Although plaintiff also generally alleged that it provided a valuable service to First Bank, it did not allege that First Bank profited from its services in any way other than from the 26 October transaction. "Where both general and specific allegations are made respecting the same matter, the latter control." Burns v. Burns, 4 N.C.App. 426, 430, 167 S.E.2d 82, 85 (1969)... | "Where both general and specific allegations are made respecting the same matter, which controls?" | 027893.docx | LEGALEASE 00156082-LEGALEASE 00156083 | Condensed, SA | | | 0 | | | 1 | |
| 15916 | Gonzalez, Wife of Paradise III, 149 So. 3d 69 | 30+3438 | Once a court has dismissed a complaint with leave to amend, it cannot subsequently dismiss with prejudice for failure to timely amend unless amended complaint still suffers from same problem as original. | Once a court has dismissed a complaint with leave to amend, it cannot subsequently dismiss with prejudice for failure to timely amend unless (1) fourth amended complaint, condominium unit owner's declaratory judgment action seeking to determine whether private docks were built upon common property of the condominium association, without considering the least factor for determining if the ultimate sanction of dismissal should be imposed for an attorney's neglect; trial court gave no reason for the dismissal other than failure to timely amend the complaint which, alone, was insufficient to warrant dismissal with prejudice; and could not review trial court's discretionary decision. | "Once a court has dismissed a complaint with leave to amend, it cannot subsequently dismiss with prejudice for failure to timely amend unless amend unless what?" | 020648.docx | LEGALEASE 00155900-LEGALEASE 00155901 | Condensed, SA, Sub 0.39 | | 0 | | | 1 | |
| 15917 | Patel v. Home Depot USA, Inc., 30-2 or Appl (on) J.01117 | 302+308 | If a claim is based on a written document, the document itself must be attached to the pleading or incorporated by reference into the pleading for purposes of a motion to dismiss. S.P.A. 785 615 V2 615. | Moreover, if a claim is based on a written document, the document itself must be attached to the pleading or incorporated by reference into the pleading for purposes of a motion to dismiss. If there is an inconsistency, the exhibit controls over the factual allegations in the pleading. F.A. Prince & Co. v. Towers Financial Corp., 275 Ill.App.3d 792, 797, 211 Ill.Dec. 950, 656 N.E.2d 142 (1995)... | "If a claim is based on a written document, should the document itself must be attached to the pleading or be incorporated by reference into the pleading for purposes of a motion to dismiss?" | Pretrial Procedure - Memo 1-_AC_42310.docx | ROSS-000180141 | Condensed, SA, 0.48 | | 0 | | | 1 | |
| 15918 | Country Meadows Convalescent Ctr. v. Utah Dept of Health, Div of Health Care Fin., 851 P.2d 1212 | 198H+511 | Nursing home operator's petition for review of decision by Utah Department of Health (UDOH) denying Medicaid reimbursement for entire calendar year for actions of contractor that built facility was rendered moot, was subject to dismissal for failure to prosecute as result of operator's failure to act in case for over five years, despite UDOH's own failure to move review proceeding forward and prejudice that dismissal was cause to operator's other pending reimbursement claims. Rules Civ.Proc., Rule 41(b), U.C.A.1953, 26-2-2-1... | "Should court consider what each party has done to move the case forward, when determining whether to dismiss an action for failure to prosecute?" | 025371.docx | LEGALEASE 00156405-LEGALEASE 00156406 | Condensed, SA, Sub 0.31 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15819 | People v. DeRouen, 38 Cal. App. 4th 86 | 67+6 | As this case vividly illustrates, the societal interests present in one's second or vacation home are equally as important as those present in one's primary residence. Each of the victims testified they resided in their Armstrong Road residences sporadically. The potential danger of an unexpected intruder into these dwellings, surprising the occupants and inciting violence is the same potential danger a burglar poses to occupants of their primary residence. The seriousness of the crime does not turn on the fortuity of whether the occupant chose one home or the other on a particular day. The hundreds of items taken from the Edwards' vacation home included the victim's mother's antique piano and his wife's hope chest she had treasured since she was 12. Presumably safe within the "most secret zone of privacy" these are the very heirlooms, mementos, and items of personal history we spoke of in People v. Guthrie, supra, 144 Cal.App.3d at p. 847, 193 Cal.Rptr. 54. As we acknowledged in Brown, the reasonable expectation of the occupant in protection from unauthorized intrusions is determinative. We conclude the occupant of a vacation home reasonably expects the same protection from unauthorized intrusions as the occupant of any other residence. There was ample evidence to support the jury's findings the vacation or second homes were inhabited dwellings to sustain defendant's convictions for multiple burglaries in the first degree. | Defendant could be convicted of burglary in the first degree based on his theft of property from vacation homes, notwithstanding his claim that homes were not "inhabited dwellings" within meaning of burglary statutes because no one lived at homes at time of commission of offense and there was no evidence that any of the victims intended to return to homes for more than overnight visit in the future; occupant of a vacation home reasonably expects same protection from unauthorized intrusions as occupant of any other residence. West's Ann.Cal.Penal Code SS 459, 460. | Are vacation homes considered dwellings under burglary statutes? | 013024.docx | LEGALEASE-00156409-LEGALEASE-00156410 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15820 | McEver v. State, 352 So. 2d 1213 | 67+9(0.5) | At the outset, we have considerable doubt whether the appellants could have been convicted of burglary since the only evidence on the subject indicates that the entry into the Haber home was with the consent of Mrs. Haber. Though nonconsent is not a separate element of the crime of breaking and entering with a felonious intent, it must be proven as part of the element of breaking. State v. Jackson, 281 So.2d 353 (Fla.1973). | Though nonconsent is not a separate element of crime of breaking and entering with a felonious intent, it must be proven as part of element of breaking. | Is nonconsent an element of breaking? | Burglary - Memo 299 - RK_62301.docx | ROSS-003308165 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 15821 | Cartey v. State, 337 So. 2d 835 | 67+9(1) | In view of these authorities, we hold that the breaking of an inner door or structure within an open building constitutes a breaking for purposes of the burglary statute. While the information filed in this case was not as clear as it might have been, it did not wholly fail to charge a crime. Consequently, the court could properly find him guilty upon his plea of no contest. Hand v. State, Fla.1976, 334 So.2d 601 | Breaking of an inner door or structure within open building constituted a "breaking" for purposes of burglary statute. West's F.S.A. S 810.05. | Does breaking of an interior door constitute burglary? | 013127.docx | LEGALEASE-00156524-LEGALEASE-00156525 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15822 | State v. Goble, 5 Ohio App. 3d 197 | 37+144 | It is important to note at the outset that we are addressing the definition of "physical harm," as that phrase is used in the felonious assault statute. By the clear language of R.C. 2901.01(C), the gravity or duration of the "injury, illness, or other physiological impairment" is not a factor for consideration. Where a knife has been held so tightly, and with such pressure, that a red indentation remains after the knife is no longer present, has the victim suffered "physical harm?" The aforementioned language of R.C. 2901.01(C) mandates that any injury, regardless of its gravity or duration, may constitute physical harm. This being so, there was sufficient evidence presented in the instant cause to allow the trial jury to determine that physical harm was done by defendant to Mrs. Randolph. See Judge Whiteside's concurrence/dissent in State v. Conliff (1978), 61 Ohio App.2d 185, at 195"196, 401 N.E.2d 469 [15 O.O.3d 309]; see, also, State v. Tate (1978), 54 Ohio St.2d 444, 377 N.E.2d 778 [8 O.O.3d 441]. | Under felonious assault statute, any injury, regardless of its gravity or duration, may constitute physical harm. R.C. S 2901.01(C). | "What type of injury constitutes ""physical harm"" under the menacing statute?" | 046675.docx | LEGALEASE-00156492-LEGALEASE-00156493 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 15823 | E.L. Husting Co. v. Coca-Cola Co., 194 Wis. 311 | 106+8 | It must be here conceded that by no process or proceedings by plaintiff or the court below could the Western Company against its will, be made a party here because of its absence from the state. Wisconsin legislation has no extraterritorial force, the presumption being, for purposes of statutory construction, that, unless the contrary clearly appears, a state statute is presumed to be for the regulation and control of property or persons within such state. Pries v. Ashland L. & St. R. Co., 143 Wis. 606, 608, 128 N. W. 281; N. Y. Cent. R. R. v. Chisholm, 268 U. S. 29, 31, 45 S. Ct. 402, 69 L. Ed. 828, 38 A. L. R. 1048; Frick v. Pennsylvania, 268 U. S. 473, 489, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316; 25 R. C. L. 781. The same subject was quite fully discussed in Anderson v. Miller Scrap Iron Co., 169 Wis. 106, 111, 170 N. W. 275, 171 N. W. 935. | Until contrary appears, state statute is presumed to be for regulation and control of persons and property within such state. | Is a legislation presumed to only regulate the inhabitants or persons within that state or country? | Aliens Immigration and_1AReyZ3Z0Kyc1eg mVHyWfoYSswUIFRIXn.docx | ROSS-000000274-ROSS-000000275 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 15824 | Thrall v. Newell, 19 Vt. 202 | 95+82 | The words "for value received" forming a part of the contract of assignment, they must be held to furnish sufficient evidence, prima facie at least, of a consideration for the assignment. Lapham v. Barrett, 1 Vt. 247. Brooks v. Page, 1 D. Ch. 340. Whitney v. Stearns, 4 Shepley 394. Parish v. Stone, 14 Pick. 198. | The defendant executed to the plaintiff a written assignment in these words: "I hereby assign to R., a note in my favor against W. and H. dated 13th Nov., 1838, for one hundred and fifty dollars, payable in one year from date, with use, for value received." Held, that the words "for value received" were not merely descriptive of the note assigned, but that, prima facie at least, they imported a sufficient legal consideration for the assignment. | "Do the words ""value received"" furnish evidence of consideration for an assignment?" | Bills and Notes - Memo 1255 - RK_62544.docx | ROSS-003307537-ROSS-003307538 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 15825 | Bodnar v. Matheron, 154 N.Y.S.2d 596 | 83E+426 | Checks drawn to a named payee and endorsed by him in blank are payable to bearer. | Checks drawn to named payee and endorsed by him in blank are payable to bearer. Negotiable Instruments Law, S 64. | "Whether checks drawn to a payee and endorsed by him in blank, payable to bearer?" | Bills and Notes-Memo 1276-ANM_63202.docx | ROSS-003323620 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |
| 15826 | Bank of U.S. v. Tyler, 29 U.S. 366 | 8.30E+10 | As this note was drawn, assigned, and payable in Kentucky, the obligations and rights of the parties must depend on the laws of that state. | Where a note was made and signed and payable in Kentucky, the obligations and rights of the parties must depend on the laws of that state. | Which law governs the obligations and rights of the parties to a note? | 010928.docx | LEGALEASE-00157938-LEGALEASE-00157939 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 15827 | Freedman v. Lynn Lake M.K. Church, 37 Mich. 476 | 156+1(1) | Estoppel is never arise from ambiguous facts, but must be established by evidence which is not susceptible of two constructions. | In the court below, the corporate existence of the defendant in error was in dispute, and they sought to establish this by evidence that the associates held the ordinary meetings of a religious society, and that they elected officers, and kept what is called a religious book or treasury. This evidence was held to be sufficient. But, regarding this evidence is provided, by the original charter of the society... | Does estoppel arise from ambiguous facts? | Estoppel - Memo #154 C - CSL, 56168.docx | ROSS 000291555 & ROSS-000291556 | Condensed, SA, Sub | 0.9 | 0 | | | 1 | 1 |
| 15828 | Marrero v. McDonnell Douglas Capital Corp, 200 Mich. App. 438 | 156+1(3) | Plaintiff also argues that promissory estoppel applies to continuing his employment with defendant after the December 1987 meeting. A prior relationship between the parties alone, however, cannot support a claim of promissory estoppel; see State Bank of Standish, 439 Mich. at 426, 474 N.W.2d 639. Plaintiff claims that he forsook other employment to remain with FMC in 1987, but he has not produced any evidence that would raise a question of fact regarding this issue. The doctrine of estoppel should be applied only where the facts are unquestionable and the wrong to be prevented undoubted. Plaintiff's claims based on promissory estoppel were properly dismissed. | Should estoppel be applied only where facts are unquestionable and the wrong to be prevented undoubted? | Estoppel - Memo #190 - CSL, 56214.docx | ROSS-000291521 & ROSS-000291522 | Condensed, SA | 0.84 | | 1 | 0 | | |
| 15829 | Adams v. First Nat. Bank of Bells/Savoy, 154 S.W.3d 859 | 322H+44 | A conveyance of an interest in real property must be in writing, signed by the grantor, and delivered to the grantee. See Tex. Prop.Code Ann. § 5.021 (Vernon 2003). It is well established that there must be proper delivery of a deed to convey interest. Thornton v. Rains, 157 Tex. 65, 299 S.W.2d 287, 288 (1957); Burris v. McDougald, 832 S.W.2d 707, 709 (Tex.App.-Corpus Christi 1992, no writ). A conveyance is effective and title is transferred when the following has occurred (1) execution of the deed, and (2) delivery of the deed. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W.2d 290, 292 (1923)... | A conveyance of an interest in real property [is in writing], signed by the grantor, and delivered to the grantee. V.T.C.A., Property Code 5.021; | Should conveyance of an interest in real property be in writing? | 018365.docx | LEGALEASE 00156923-LEGALEASE 00156924 | SA, Sub | 0.8 | | 1 | 1 | | |
| 15830 | Minnesota Humane Soc. v. Minnesota Federated Humane Societies, 611 N.W.2d 587 | 307A+690 | We review a district court's dismissal of a claim with prejudice under an abuse of discretion standard. Firoved v. General Motors Corp., 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967). A trial court may dismiss a case for failure to prosecute. Minn. R. Civ. P. 41.02(a). Because a dismissal with prejudice is the most punitive sanction that can be imposed for failure to prosecute, it should be granted only under exceptional circumstances. Firoved, 277 Minn. at 283, 152 N.W.2d at 368. | Because a dismissal with prejudice is the most punitive sanction that can be imposed for failure to prosecute, it should be granted only under exceptional circumstances. | Should a dismissal with prejudice be granted only under exceptional circumstances? | 027121.docx | LEGALEASE 00156941-LEGALEASE 00156942 | Condensed, SA | 0.65 | | 0 | 1 | 0 | |
| 15831 | Riose v. APV Anderson Bros., 714 S.W.2d 922 | 307A+690.1 | A dismissal for improper venue is not an appealable order because the dismissal is not a final judgment on the merits disposing of all issues in the case. Rogers v. National Engineering Company, 695 S.W.2d 617, 618 (Tex.App.-Dallas 1985); Gilmore v. Mercantile Trust Company, 629 S.W.2d 441, 444 (Tex.App.-Beaumont 1982). The party is not precluded from filing his action in the proper forum by dismissal for improper venue. | Dismissal for improper venue does not preclude party from filing action in a proper forum. V.A.M.R. 67.03. | Does dismissal for improper venue not preclude a party from filing action in a proper forum? | 032322.docx | LEGALEASE 00157311-LEGALEASE 00157312 | Condensed, SA, Sub | 0.79 | | 1 | 1 | | |
| 15832 | Baker v. Aetna Mayflower Transit Co., 144 A.D.2d 407 | 307A+690.1 | However, the Supreme Court improperly denied the plaintiff's cross motion in court. CPLR 3019(d) provides, in pertinent part, that "[a] cause of action contained in a counterclaim shall be treated, as far as practicable, as if it were contained in a complaint." Thus, in cases where the plaintiff's action against a defendant is dismissed on the merits, the court may still entertain counterclaims against the plaintiff (Jack P. Weinstein-Korn-Miller, NY Civ Prac, 3019.31; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3019:20, at 220; cf. Brennan v. Mead, 73 A.D.2d 926, 423 N.Y.S.2d 678). Since a common-carrier's liability for the value of goods destroyed or lost prior to delivery is distinct from the shipper's liability for freight charges (see Aloe Steamship Co. v. United States, 338 U.S. 411, 421, 70 S.Ct. 190, 191, 94 L.Ed. 217... | Counterclaims against a plaintiff may be adjudicated after a plaintiff's action against a defendant is dismissed on merits. | Can counterclaims against a plaintiff be adjudicated after a plaintiff's action against a defendant is dismissed on merits? | Pretrial Procedure - Memo # 11011 - C - TM_54130.docx | ROSS-000306864-ROSS-000306865 | Condensed, Order, SA, Sub | 0.91 | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 15833 | St. Clair Intermediate Sch. Dist v. Intermediate Educ. Ass'n/Michigan Educ. Ass'n, 458 Mich. 540 | 308+1 | Under the common law of agency, in determining "[w]hether an agency has been created," we consider "the existence of the parties as they in fact exist under their agreements or acts" and note that in its broadest sense agency "includes every relation in which one person acts for or represents another by his authority." Saums. v. Parfet, 270 Mich. 165, 170-171, 258 N.W. 235 (1935). We further recognized elements that "[t]he characteristics of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons." 172, 258 N.W. 235. Also fundamental to the existence of an agency relationship is the right to control the conduct of the agent. Capitol City Lodge No. 141, FOP v. Meridian Twp., 90 Mich. App. 533, 541, 282 N.W.2d 383 (1979), with respect to the matters entrusted to him. See In re Employment Agency, 41 L.R.A. N.S. 918, 43 L.Ct. Apps DC 241, 249, 56 F.3d 1005 (1995), citing I Restatement, Second, Agency " 14, p. 60, and cases analyzing agents in detail. | Under the common law of agency, in determining "[w]hether an agency has been created," we consider "the existence of the parties as they in fact exist under their agreements or acts" and note that in its broadest sense agency "includes every relation in which one person acts for or represents another by his authority." Saums. v. Parfet, 270 Mich. 165, 170-171, 258 N.W. 235 (1935). We further recognized the characteristics of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons, 172, 258 N.W. 235. Also fundamental to the existence of an agency relationship is the right to control the conduct of the agent with respect to the matters entrusted to him. Restatement (Second) of Agency § 14. | What is fundamental to the existence of an agency relationship? | Principal and Agent Memo 451's RK_45315.docx | ROSS-003107434-ROSS-003107437 | Condensed, SA, 0.83 | 0.83 | 0 | | 1 | 1 | |
| 15834 | Hickman v. Barclay's Int'l Realty, 5 So. 3d 804 | 308+1 | The key element in establishing actual agency is the control by the principal over the actions of the agent. See 979 So.2d at 990 (citing State v. Am. Tobacco Co., 707 So.2d 851, 854 (Fla. 4th DCA 1998)); Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., 694 So.2d 827, 830 (Fla. 4th DCA 1997). And it is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship Parker v. Domino's Pizza, Inc., 629 So.2d 1026, 1027 (Fla. 4th DCA 1993). | It is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship | Does the right of control determine an agency relationship? | 04 1815.docx | LEGALEASE-00157956-LEGALEASE-00157957 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 15835 | Rubin v. Islamic Republic, 138 S. Ct. 816, 1301 | 308+1 | Under Illinois law, a "principal-agent relationship is a legal concept founded upon a consensual and fiduciary relationship between two parties." Anaya v. 191, 276 Ill.App.3d 176, 182, 212 Ill. Dec. 719, 657 N.E.2d 1068, 1071 (1st Dist 1995). The central question is "whether the principal had the right to control the activities of the agent." Agents also owe duties of good faith, fidelity, and loyalty to the principal. ARC Tiers Nat. Transport, Inc. v. Aerostar Int'l, Inc., 4274 App.3d 671, 20 Ill.Dec. 561, 379 N.E.2d 1239 (1st Dist 1978). | Under Illinois law, a "principal-agent relationship is a legal concept founded upon a consensual and fiduciary relationship between two parties; central question is determining such relationship is whether principal had the right to control the activities of agent | Is the principal-agent relationship a consensual relationship? | Principal and Agent Memo 451's RK_45373.docx | ROSS-003280694-ROSS-003280697 | Condensed, SA | 0.52 | 0 | 1 | 1 | 1 | |
| 15836 | Jackson v. Searcy, 628 So. 2d 887 | 308+1 | For an agency relationship to exist, there must be a right of control by the principal over the agent. Bay Shore Properties, Inc. v. Drew Corp., 565 So.2d 32 (Ala.1990). The right of control need not be exercised, but long as the right actually exists. Bay Shore Properties. Furthermore, there must be a meeting of the minds of both the parties as to the scope of the agent's employment. | For agency relationship to exist, there must be a right of control by principal and agent as to scope of agent's employment. | Should there be meeting of minds as to the scope of the agent's employment? | 04 1855.docx | LEGALEASE-00157556-LEGALEASE-00157557 | Condensed, SA | 0.69 | 0 | 0 | 1 | 0 | |
| 15837 | Helps. Gin Co. v. Parker, 19 Ariz. App. 413 | 308+1 | The defendant's position was that it was merely Lang's agent, and that its entry on and possession of the leased premises was merely in such capacity. However, the existence of an agency relationship is but the burden of proving it. Myers Lumber Sign Co. v. Weinrich, 2 Ariz.App. 534, 410 P.2d 491 (1966); Collins v. Dobar Ranch, Inc., 459 P.2d 1124 (Marr.1972). A person is not an agent for another unless the other had a right to control the transaction in question and to have it done for his benefit. Seavey, Law of Agency (11 1964). Agency is a question of the intention of the parties, is evidenced by their acts, and is not dependent upon what the particular person in question is called. Arizona State Tax Commission v. Lawrence-Justin Co., v Ariz.App. 560, 4671 P.2d 686 (1967). The thrust of the trial court's factual finding is that Lang had relinquished all control and dominion over the subject matter of the purported agency; the farming operations, the leased premises, and the machinery used in the operations. He never asserted any claim until the summer of 1969 when he attempted to obtain the government allotment. The defendant's conduct in commencing litigation to prevent this can be construed, as apparently the trial court did, as conduct negating an agency relationship. | "Agency" is the relationship which results from the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act. Oral acts is subject to this control, and consent by the other to so act. One acts as agent for another unless the other had a right to control the transaction in question and to have the right to control the physical conduct of the agent in the performance of the service; a "servant" is a agent employed by a master to perform a service in his affairs whose Physical control, in the performance of the service is controlled or is subject to the right to control by the master. Restatement (Second), Agency (101) and (2). | Is agency a question of the intention of the parties? | Principal and Agent Memo 497's KK_43278.docx | ROSS-003590131-ROSS-00130322 | Condensed, SA | 0.89 | 0 | 0 | 1 | 1 | |
| 15838 | Turley v. Kotter, 263 Pa. Super. 523 | 231H+23 | "Agency" is the relationship which results from the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act. Chalupiak v. Stahlman, 368 Pa. 83, 81 A.2d 577 (1951). A "Master" is a principal who employs an agent to perform a service in his affairs and who controls or has the right to control the physical conduct of the agent in the performance of the service. A "servant" is a agent employed by a master to perform a service in his affairs whose Physical conduct in the performance of the service is controlled or is subject to the right to control by the master. Restatement (Second), Agency (101) and (2). | "Servant" is agent employed by master to perform service in his affairs whose physical conduct in performance of service is controlled or is subject to right to control by master | Is a servant an agent? | Principal and Agent Memo 502's RK_43381.docx | ROSS-003056464-ROSS-003305449 | Condensed, SA | 0.74 | 0 | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15839 | Freelance v. Preikszas, 124 Cal. App. 216 | 308-1 | "Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act... The one for whom action is to be taken is the principal... The one who is to act is the agent... The authority of the... agent [is] defined by the terms of the power of attorney." Long v. Scott, 184 Cal.App.2d 209, 214, 8, 39 P.3d [1981]; "[A] fiduciary relationship has always demanded a high degree of scrutiny... [W]e have held ... that [a]nd of a fiduciary relationship... imposes a bond of trust and further requires the principal on whom the fiduciary relationship is found to exist, the burden of proving fair dealing property beyond any suspicion of unfairness or overreaching. In establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof... by clear and convincing evidence." Estate of Sanders, 40 Cal.App. 365, 388, 216 A.2d 111, cert. denied, 247 Conn. 904, 720 A.2d 511 [1998]; see also Gordon v. Bialystoker, Center, 118 Conn.App. 730, 907, 900 A.2d 371 [2010]; Stuart v. Stuart, 112 Conn.App. 160, 171 n. 5, 962 A.2d 641 [2009], rev'd in part on other grounds, 297 Conn. 26, 996 A.2d 260 [2010]. | "Agency" is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. | "Is the one for whom an action is to be taken, a principal?" | Principal and Agent Memo 001+ KK_65282.docx | ROSS 000107769-ROSS-000107870 | Condensed_SA | 0.83 | 0 | 1 | | | 1 |
| 15840 | Leavy v. Johnson, 139 Conn. 191 | 308-1 | The factual question was also presented whether a agency relation existed between the plaintiff and the defendants in this case. The court was authorized to employ Hicks as a subagent and employee of the defendants, Ochs & Crook Petroleum Corporation, 154 Conn. 461, 465, 58 A.2d 380. An essential ingredient of agency is that the agent is doing something in the behest of and for the benefit of the principal. Comkr v. Jewish Home for Aged, Inc., 156 Conn. 193, 195, 239 A.2d 606; Botsford v. Crown Petroleum Corporation, supra; Amento v. Mortensen, 130 Conn. 682, 686, 37 A.2d 231; Barnett v. Mortensen, 136 Conn. 137, 315, 32 A.2d 640. Restatement (Second), 1 Agency s 1; comment a. | An essential ingredient of agency is that agent is doing something in the behest and for the benefit of the principal. | "Is doing something in the behest and benefit of the principal an essential ingredient of Agency?" | Principal and Agent Memo 004+ SB_63584.docx | ROSS-000108806-ROSS-000108864 | Condensed_SA | 0.83 | | 1 | | | 1 |
| 15841 | In re Grubs, 474 B.R. 699 | 308-1 | The relationship of principal and agent arises when (1) the principal manifests consent to the agent that the agent shall act on the principal's behalf, and subject to the principal's control, and (2) the agent consents so to act. See Restatement (Second) of Agency, T. CIS.awa thereoff's agent to a proprietor of dealership WalCode 5 acts and (2) it was authorized out to CIS to do this on her behalf, and subject to her control, and (2) CIS agreed to do so. This actual manifestation between plaintiff and CIS. consists of the terms of service and related documents governing the relationship between Plaintiff and CIS. | Under New York law, relationship of principal and agent arises when (1) principal manifests consent to agent that agent shall act on principal's behalf, and subject to principal's control, and (2) agent consents so to act. Restatement (Second) of Agency S 1. | How does the relationship of principal and agent arise? | Principal and Agent Memo 371 SB_63593.docx | ROSS 000318967 | Condensed_SA, Sub 0.58 | 0.58 | | 1 | | | 1 |
| 15842 | White v. Corn. Med. Prof'l Liab. Christopher Loss Ford, 134 Pa. Cmwlth. 567 | 371+2002 | The first issue to be resolved is whether the surcharge is in actually a tax. Petitioner argues it is essentially that the surcharge should be considered a fee enacted under the police power of the state or a special assessment for goods and services and if the surcharge is a tax it must be a tax. The question of whether an enactment is a tax or regulatory measure is determined by the purpose for which it is enacted not by its title... City of Wilkes-Barre v. Dept. of Pub Assistance) 156, 158 A2d 320 [1971]. If the primary purpose makes the claim that the evidence shows Software did not feel terrified. Again, Saltman misconstrues the terroristic threats statute... | Question of whether enactment is tax or regulatory measure is determined by purposes for which it is enacted and not by its title. | What determines whether an enactment is a tax or regulatory measure? | 044557.docx | LEGALEASE 00157229-LEGALEASE 00157230 | Condensed_SA | 0.75 | | 1 | | 0 | 1 |
| 15843 | State v. Saltman, 133 So. 3d 1300, 1092 | 3.771+12 | ... [A]bove reasonably makes the claim that the evidence shows Software did not feel terrified. Again, Saltman misconstrues the terroristic threats statute. The statute requires not that the recipient of the terroristic threat actor have the intent to terrorize another as a result of the threat. The statute makes clear that the actor have the requisite intent. Therefore, there is sufficient evidence to support Saltman's conviction on this count as well. | Terroristic threats statute does not require that recipient of threat be terrorized but, rather, requires that actor have intent to terrorize as result of threat. | Does the terroristic threats statute require that the recipient of the threat be terrorized? | 044714.docx | LEGALEASE 00157341-LEGALEASE 00157342 | Condensed_SA, Sub 0.72 | 0.72 | | 1 | | 0 | 1 |
| 15844 | State v. Reynolds, 1998 (Ohio 27) | 3.771+24 | "Personal contact" is defined in section 708.7(1)(b) to mean "in encounter in which two or more people are in visual or physical proximity to each other." Id. * 708.7(1)(b). The statute specifically provides that "[p]ersonal contact" does not require physical touching or oral communication although it may include these types of activities. "Id. The defendant claims that the "personal contact" that occurred here was in the recorder's clerk's office because the parties were not in proximity because the victim testified this incident alone was not threatening to her behavior, adjust the encounters that were alarming from the trailing of her in his SUV did not constitute personal contact because Cottrell did not know who was following her. | "Personal contact," as used within harassment statute, merely requires visual or physical proximity, it does not require that the victim recognize the offender or know the identity of the person harassing her, nor does it require that the victim actually feel threatened, intimidated, or alarmed, only that the defendant act with the intent to cause such a reaction. I.C.A. S 708.7, subd. 1, par. b. | "Does personal contact as used in the harassment statute, require a physical touching or oral communication?" | 044718.docx | LEGALEASE 00157363-LEGALEASE 00157364 | Condensed_SA, Sub 0.46 | 0.46 | | 1 | | | 1 |
| 15845 | Thomas Contract Const. v. Indus. Comm'n of Arizona, 2009 WL 1735080 | 413+124 | Thomas's first argue the ALJ erred in finding they were employer's subject to the Worker's Compensation Act. Under A.R.S. * 23-902(A) [ ], employers subject to the workers' compensation... "every person who employs any workers or operators regularly employed in the same business..." "[R]egularly employed" includes all employments whether continuous or throughout the year, or for only a portion of the year in the usual trade, business, profession or occupation of an employer." This term refers to "whether it is in the employer's regular or customary business to employ persons to perform the task." A worker in the employee's usual trade." Donahue v. Value, Comm'n, 178 Ariz. 173, 176, 871 P.2d 700, 723 (App.1993). | Evidence supported ALJ's determination that landowner and his marital community were employers regularly employed as workers, or whether the employee is performing a task in the employer's usual trade? | "In the Workers' Compensation Act, does the term regularly employed refer to whether the employer regularly employs workers, or whether the employee is performing a task in the employer's usual trade?" | 047691.docx | LEGALEASE 00157499-LEGALEASE 00157499 | Condensed_SA, Sub 0.16 | 0.16 | | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 15846 | Mocek v. City of Albuquerque, 813 F.3d 912 | 129+106 | The district court held the facts known to the officer justified stopping Mocek under New Mexico law, disorderly conduct consists of conduct that (1) is "violent, abusive, profane, boisterous, unreasonably loud or otherwise disorderly" and (2) tends to disturb the peace. Fajerdo v. Gallegos, 529 F.3d 1139, 1151 (10th Cir. 2008) (see also N.M. Stat. Ann. § 30-20-1(A). "Conduct, which tends to disturb the peace is that conduct which is inconsistent with the peaceable and orderly conduct of society." State v. Correa, 147 N.M. 291, 222 P.3d 1, 7 (2009) (internal quotation marks omitted). This includes an act that "disturbs the peace and tranquility of the community." (internal quotation marks omitted). | Conduct which tends to disturb the peace, as element for disorderly conduct under New Mexico law, is conduct which is inconsistent with the peaceable and orderly conduct of society, and this includes an act that disturbs the peace and tranquility of the community. | What are the necessary elements of a valid disorderly conduct charge? | 014303.docx | LEGALEASE 00158597 LEGALEASE 00158598 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | |
| 15847 | Commercial Credit Corp. v. Taylor, 448 S.W.2d 190 | 154+241 | The general rule in this respect is that one who is entitled to wages may work for his father but can recover only when he has failed to do that which he had a duty to do, and cannot be invoked because of failure to do that which he owed no duty to do. Liberty Nat. Bank v. Campbell & Lee Mach., 70 Tex. 162, 7 S.W.2d 641, 7 Tex. 131, 94 S.W.2d 643 | Estoppel in pais may be invoked against a party only when he has failed to do that which he had a duty to do, and cannot be invoked because of failure to do that which he owed no duty to do. | Can estoppel in pais be invoked when a party has failed to do that which he had a duty to do? | Estoppel - Memo (#17) - C - CSS_54179.docx | ROSS-003306874 ROSS-003306875 | Condensed, SA | 0.39 | 0 | 1 | 1 | 1 | |
| 15848 | Ingram v. Deere, Cause 2010+76 & Clark Cty., 194 Mont. 43 | 205+76 | We must examine the basis of county commissioners is given the discretion to do so whatever is necessary for the best interests of county roads. This discretion is contained in section 7-14-2102, MCA, which states: "Each board of county commissioners may in its discretion do whatever may be necessary for the best interest of the county roads and | Board of county commissioners is given discretion to do whatever is necessary for best interests of county roads. MCA 7-14-2102, 7-14-2103(1), 7-14-2901 et seq. | Does the Board of County Commissioners have discretion to act in matters related to county roads? | Highway - Memo 77 - ANM_54049.docx | ROSS-003303899-ROSS-003303900 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 15849 | Evanston Ins. Co. v. Dillard Dept. Stores, 602 F.3d 610 | 464+144 | A partner in a registered limited liability partnership is not individually liable, directly or indirectly, by way of indemnification, contribution, or otherwise, for debts and obligations of the partnership arising from errors, omissions, negligence, incompetence, or malfeasance committed while the partnership is a registered limited liability partnership and in the course of the partnership business by another partner or a representative of the partnership not working under the supervision or direction of the first partner unless the first partner (A) was directly involved in the specific activity in which the errors, omissions, negligence, incompetence, or malfeasance were committed by the other partner or representative; or (B) had notice or knowledge of the errors, omissions, negligence, incompetence, or malfeasance by the other partner or representative at the time of occurrence and then failed to take reasonable steps to prevent or cure the errors, omissions, negligence, incompetence, or malfeasance. Tex.Rev.Civ. Stat. Ann., art 6132b-3.08, Rapid[illegible] argue that 7-106(a)(1) insulates them from liability because of LLP's debt was incurred when they were working under the supervision or direction of the first partner [illegible]. At the time, LLP was still a registered limited liability partnership. [illegible]'s meanwhile, further debt was not incurred when liability judgment was entered on November 2, 2004, at which time the erstwhile LLP had lost its liability-shielding attributes. | "A partner in a limited liability partnership is individually liable for debts and obligations arising from errors, omissions, negligence, incompetence, or malfeasance committed in the course of the partnership business by another partner?" | Is a partner in a limited liability partnership individually liable for debts and obligations arising from errors, omissions, negligence, incompetence, or malfeasance committed in the course of the partnership business by another partner? | 02268.docx | LEGALEASE 00158610- LEGALEASE 00158611 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | |
| 15850 | Mahar v. Gen. Transistor Corp., 27 Misc. 2d 275 | 24+83 | The court of the opinion that the complaint herein contains no allegation sufficient to warrant an affirmative relief for stock option can be obtained. True, in paragraph "7" of the prayer, a permanent and temporary injunction is sought restraining GTC from exercising its option on plaintiff's shares of stock but a complaint is not tested by the prayer for relief. (Johnson v. Johnson, 206 N.Y. 561, 568, 100 N.E. 408, 410; Just on "Asking 'too' much to get 'less' does not spoil a complaint" [Wagon Axle Power Co. v. White, 293 N.Y. 472, 480, 55 N.E.2d 742, 746], it does not, moreover, necessarily follow from the fact that plaintiff furnishes a basis for a dismissal on the ground of the pendency of another action between the same parties for the same cause of action that in New York County herein mentioned in December 1960, the plaintiff Arnold Mahar seeks relief to which he, individually, deems himself entitled. No complaint is this particular instance seeking relief as to contractual violations by the individual defendants of their fiduciary and other obligations. As constituted in the present procedural action, no relief is requested in the action for the same cause which would per se suit was brought. This branch of the defendant's motion is accordingly denied. | Prayer for permanent and temporary injunction restraining corporation from exercising its option to buy stockholder's shares of stock did not render complaint subject to dismissal on ground that there was a prior action pending in which the stockholder sought to have corp option agreement rescinded and nullified, when complaint contained no allegation upon basis of which affirmative relief with respect to stock option could be obtained. | Is a complaint tested by the prayer for relief? | 02382.docx | LEGALEASE 00158498- LEGALEASE 00158499 | Condensed, SA | 0.64 | 0 | 1 | 1 | 1 | |
| 15851 | Williams v. Nash, 428 So. 2d 996 | 307A+561.1 | The matters raised in Nash's motion, since they were an affirmative defense, should have been raised by answer to the complaint. Our supreme court has taken the strict view that an affirmative defense can be raised only by answer and not by motion for dismissal, unless the defense is a bar to the action. In those instances in which the face of the complaint fails to show that the action is barred by the affirmative defense, it may not be raised by a motion (12(b)), A.R.Civ.P., motion but must be raised by an answer under rule 8(c), A.R.Civ.P. | In those instances in which face of complaint fails to show that action is barred by affirmative defense, such affirmative defense may not be raised by motion to dismiss but must be raised by an answer. | Will an affirmative defense be raised by a motion to dismiss or by an answer? | Pretrial Procedure - Memo 4 (0779) - C - NC_63646.docx | ROSS-003324697 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | |
| 15852 | McHaddin v. Doctors Billing & Mgmt. Sols., 196 Md.App. 630 | 307A+693.1 | The trial court may revisit this second problem if the dichotomy between the appellants and Co-Plaintiff [illegible] in dismissing a claim permits a refiling; the words "with prejudice" or mean nothing at all. The words "without prejudice" permit a refiling; the words "with prejudice" prohibit a refiling. The distinction between dismissal "with prejudice" and "without prejudice" is ordinarily a matter of some legal significance, affecting, commonly, that does not engage the merits of res judicata and that can be readily rectified on the next try by pleading something the appellants neglected to plead in this cause's first or default pleading. | A court's words "without prejudice" in dismissing a claim permit a refiling? | Does a court's words "without prejudice" in dismissing a claim permit a refiling? | 02733.docx | LEGALEASE 00158556- LEGALEASE 00158557 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | |

| | | | | | | | | | | | | | | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 9,079 |
| | | | | | | | | | | | | | Selection & Arrangement | |
| | | | | | | | | | | | | | 23,876 | |
| | | | | | | | | | | | | Substantive Additions | | |
| | | | | | | | | | | | | 14,973 | | |
| | | | | | | | | | | | Condensed | | | |
| | | | | | | | | | | | 15,944 | | | |
| | | | | | | | | | Order | | | | | |
| | | | | | | | | | 939 | | | | | |
| ROW | Judicial Opinion | WVKS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 13853 | Briggs v. Toyota Mfg. of Texas, 337 S.W.3d 275 | 307A=563.1 | As a preliminary matter, we need to address the unique procedural posture of this case. The exclusive remedies provision of the Texas Workers' Compensation Act ("TWCA") is an affirmative defense. Farers v. Eldridge Elec. Co., 270 S.W.3d 464, 468 (Tex.App.—San Antonio 2008, no pet.); Morales v. Martin Res., Inc., 183 S.W.3d 469, 471 (Tex.App.—Eastland 2005, no pet.). An affirmative defense should be raised through a motion for summary judgment or proven at trial. In re D.K.M., 242 S.W.3d 863, 865 (Tex.App.—Austin 2007, no pet.); In re K.B.S., 172 S.W.3d 152, 155 (Tex.App.—Beaumont 2005, pet. denied). ... the exclusive remedies affirmative defense through a summary judgment motion, Toyota's filing of an amended answer raising the defense and proceeded a partial dismissal of Briggs suit. While the procedure followed by Toyota in the trial court is problematic and not to be encouraged, Briggs has not raised an appellate complaint challenging the propriety of vehicle used by Toyota in connection with its affirmative ... | Affirmative defense should be raised through a motion for summary judgment or proven at trial. Vernon's Ann.Texas Rules Civ.Proc. Rule 166a. | Can an affirmative defense be used through a motion for summary judgement or proven at trial? | Pretrial Procedure Memo # 1871 - C - RE_6545B.docx | ROSS-000291644 ROSS-000292845 | Condensed, SA, Sub 0.84 | 0.84 | 0 | 1 | 14,973 | 23,876 | |
| 13854 | Van Milligan v. Dep't of Employment Sec., 373 Ill. App. 3d 532 | 30=3200 | A motion to dismiss pursuant to section 2-619 of the Code admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim (Delaney v. Burnett, 228 Ill.2d 49, 54, 309 Ill.Dec. 126, 367 N.E.2d 232 (2008); "Section 2-619 motions present a question of law, and we review the trial court's ruling de novo." Lucas v. Taylor, 349 Ill.App.3d 159, 163, 285 Ill.Dec. 483, 812 N.E.2d 72 (2004). | Motions to dismiss based upon certain defects or defenses present a question of law, and appellate courts review ruling thereon de novo. S.H.A. 735 ILCS 5/2-619. | Would motions to dismiss present a question of law? | 02956.docx | LEGALEASE-00158274 LEGALEASE-00158275 | Condensed, SA, Sub 0.63 | 0.63 | 0 | 1 | 1 | 1 | |
| 13855 | Jewett v. Town of Alton, 7 N.H. 253 | 308=9231 | With respect to matters on which this suit is founded, the rule is that when an authority is given by law to three or more persons, to whom it is so delegated, but where corporation or individuals give an authority jointly to three or more persons, in order to bind the principals, all the agents must act. | Does authority is given by law to three or more persons, it may, in general, be executed by a major part of the persons to whom it is so delegated, but where corporation or individual give an authority jointly to three or more persons, in order to bind the principals, all the agents must act. | Does authority have to be exercised by a majority when it is given to three or more people? | Principal and Agent Memo 371 - RK_65923.docx | ROSS-000132974 ROSS-000133055 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |
| 13856 | Violette v. Shoup, 16 Cal. App. 4th 611 | 308=3(1) | A person does not become the agent of another simply by offering help or making a suggestion. As the court stated in Edwards v. Freeman (1949) 34 Cal.2d 589, 591, 212 P.2d 883: "To permit a finding of agency upon this evidence would be, in effect, to hold that one who performs a mere favor for another, without being subject to any legal duty of service or left to his own discretion as to how it shall be done, and receives no compensation therefor, may become the agent of the other. This is not the law." | A person does not become the agent of another simply by offering help or making a suggestion. | Will a person become the agent of another by offering help? | Principal and Agent Memo 384 - RK_65942.docx | ROSS-000132955 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13857 | White v. Renzo Disc. Drug Centers, 33 S.W.3d 713 | 231H=15 | This well-settled and argument may arise two masters simultaneously, so long as the objectives of one master are not contrary to the objectives of the other. See Moravce County Motor Co. v. Tennessee Odor Inc., 333 S.W.3d 197, 213 Tenn.App. 201, 231, 355 S.W.2d 24 886, 894 (1959). As section 220 of the Restatement (Second) of Agency 1.226, provides: "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." In so doing, The person serving two masters "may caused both employers to be responsible for an act ... if the act is within the scope of employment for both." * 226 cmt. a. | An agent may serve two masters simultaneously, so long as the objectives of one master are not contrary to the objectives of the other. Restatement (Second) of Agency § 226. | When can an agent serve two masters simultaneously? | Principal and Agent Memo 467 - PK_65790.docx | ROSS-000307908 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13858 | Ferrentino v. Dime Sav. Bank of New York, 1 A.D., 159 Misc. 2d 690 | 308=1 | With respect to the Power of Attorney, an attorney-in-fact is merely a special type of agent and the death of the principal revokes the authority of the agent and the power of attorney (see Eberle v. Excelsior Ins. Co. of New York, 70 A.D.2d 66, 628 N.Y.S.2d 95 (1992) New York Life Ins. Co. v. Estate of Hunter, 137 Misc.2d 639, 521 N.Y.S.2d 972 (1987). Upon the death of Christina Ferrentino, therefore, the Power of Attorney in favor of Mary Jones was revoked by operation of law, and the Mary Jones had no authority to act on behalf of the decedent. At the time of the transfer, the money in Christina's account ($25 S.A.) had not changed. Upon the death of Christina Ferrentino, Mary Jones had no authority over the accounts of Christina Ferrentino in The Dime. | Attorney-in-fact is merely special type of agent, and death of principal revokes authority of agent and power of attorney. | Is an attorney-in-fact a special type of agent? | Principal and Agent Memo 483 - RK_65968.docx | ROSS-000285275 ROSS-000285276 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13859 | Mossenwall Sec. Co. v. United Kingdom Int'l Inc., 476 F. Supp. 2d 414 | 308=1 | The principal's power to control the agent is an essential element of an agency relationship; the essence of control is the right to direct. Dep't of Pub. Welfare, 388 F.Supp.2d 292, 301 (S.D.N.Y.) 2005); E.I.A. Wholesale Corp., v. I-B. Mercantil Corp., 127 A.D.2d 777, 512 N.Y.S.2d 181, 183 (N.Y.App.Div.1987). "The essence of control in an agency sense is in the necessity of the consent of the principal to act upon matters." Maurag Inc. We, 2000 WL 1103833. The principal's consent may be manifested by written or a verbal words or any other conduct of the principal. Conduct of the agent in the case of actual authority, or at third person in the case of apparent authority. See Shoara, Inc. v. TimeWarner, Inc., 34.6 f.3d 64, 69 (2d Cir.) 2011) stating that the principal's manifestations to the agent may reasonably infer from the words and conduct of the principal that the principal has consented to the agent's performance of a particular act", while "apparent authority arises from the written or spoken words or any other conduct of the principal to third persons to believe that the principal consents to have [an] act done on his behalf" (quotations omitted). "Control alone is insufficient to establish the existence of an agency relationship, however." | Under New York law, the principal's power to control the agent is an essential element of an agency relationship; the essence of control in an agency sense is in the necessity of the consent of the principal on a given matter. | Is the principal's power to control the agent essential to an agency relationship? | 04195.2.docx | LEGALEASE-00159007 LEGALEASE-00159008 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 5,029 |
| 13960 | Simbaina v. Bunay, 221 Md. App. 440 | 24-101 | The requirement were further amended in 2008 to expand "eligibility for immediate relative status only for noncitizen minors who have been declared dependent on an individual or entity appointed by a state or juvenile court." A precondition of long-term foster care was removed and replaced with the "requirement that the juvenile court find that reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." | Immigration and Nationality Act (INA), which requires that a state juvenile court make specific factual findings before a minor can petition the United States Citizenship and Immigration Services for special immigrant juvenile (SIJ) status, directs the state court to enter factual findings that are advisory to a federal agency determination, but does not affect adjudicatory powers over State constitutional, federal government has exclusive jurisdiction with respect to immigration, but state juvenile courts play an important and indispensable role in the SIJ application process, and federal government relegated this power to state juvenile courts because these courts are the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests. Immigration and Nationality Act, § 101(a)(27)(J), 8 U.S.C.A. § 1101(a)(27)(J); West's Ann.Md. Const.Declaration of Rights, Art. 8. | "Did Congress require that a court must find that reunification is not possible because of abuse, neglect, or abandonment?" | 006858.docx | LEGALEASE 00180462-LEGALEASE 00180463 | Condensed, SA 0.49 | | 0 | | | 1 | |
| 13961 | Lehndorff Geneva v. Warren, 74 Wis. 2d 369 | 24-116 | We are mindful that the power of a state to apply its laws exclusively to aliens is exceedingly narrow. Takahashi v. Fish and Game Commission (1948), 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478, and the issue decided here is the question of whether a statute forbidding large land purchases by aliens not residents of this nor any other state or territory of the U.S. | Power of state to apply its laws exclusively to aliens is exceedingly narrow. | "Is the power of a state to apply to its own laws narrow?" | "Aliens, Immigration and Citizenship - Memo 63 - RK_ARTF.docx" | ROSS 003296451-ROSS-003296452 | Condensed, SA 0.8 | | 1 | 0 | | 1 | |
| 13962 | Arizona v. United States, 567 U.S. 387 | 24-H60 | The Government of the United States has broad, undoubted power over subject of immigration and status of aliens, resting, in part, on its constitutional power to "establish an uniform Rule of Naturalization," and its inherent power as sovereign to control and conduct relations with foreign nations, U.S.C.A. Const. Art. 1, § 8, cl. 4; Toll v. Moreno, 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982), see generally S. Legomsky & C. Rodriguez, Immigration and Refugee Law and Policy 115713 159 nd. 2000). This authority rests, in part, on the National Government's constitutional power to "establish an uniform Rule of Naturalization," Art. I, § 8, cl. 4, and on its inherent power as sovereign to control and conduct relations with foreign nations, see Toll v. Moreno, 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982). | Government of United States has broad, undoubted power over subject of immigration and status of aliens, resting, in part, on its constitutional power to "establish an uniform Rule of Naturalization," and its inherent power as sovereign to control and conduct relations with foreign nations. U.S.C.A. Const. Art. 1, § 8, cl. 4. | Does the federal government of United States have the power to regulate immigration? | "Aliens, Immigration and Citizenship - Memo 83 - RK_6483d.docx" | ROSS-003318863-ROSS-003318864 | Condensed, SA, Sub 0.52 | | 1 | 0 | 1 | 1 | |
| 13963 | Patent Title Co. v. Stratton, 89 F. 174 | 8-301+10 | That the instrument used on is a negotiable promissory note, and, having been made in Colorado, is to be governed by the statute of Colorado, is not controverted. But the plaintiff was the bona fide holder; that is, he received the paper from a bona fide holder; acquired a good title | The rights of the parties to a negotiable note made in Colorado are governed by the law of the state (Mills' Ann.St. 1-2344, 2441), rather than by the general principles of the law merchant. | Does the state law govern the rights of parties to a negotiable instrument? | 009644.docx | LEGALEASE 00160431-LEGALEASE 00160432 | Condensed, SA 0.36 | | 0 | 1 | | 1 | |
| 13964 | Jacobson v. Fed. Deposit Ins. Corp., 407 F. Supp. 821 | 83-E+442 | Under Iowa law, "a negotiable instrument is discharged when the principal debtor becomes the holder thereof at or after maturity in his own right." Hamilton v. Bethel, 250 Iowa 597, 91 N.W.2d 445 (1958). See s 554.3601, Code of Iowa (1971), which replaced, and is "in accord with" § 541.135(5) of the Iowa's negotiable instrument law, which law applied in Bethel. Further, Iowa law provides that if the holder consents, payment of an instrument before its maturity also may discharge it. 554.3601, Code of Iowa (1971). In this case, though, acting for Iowa Bank, accepted the note. | Under Iowa law, a negotiable instrument is discharged when the principal debtor becomes the holder thereof at or after maturity in his own right. I.C.A. §§ 541.135(5), 554.3601 554.3606. | When is a negotiable instrument discharged? | 010458.docx | LEGALEASE 00160421-LEGALEASE 00160422 | SA, Sub 0.74 | | 0 | | 1 | | |
| 13965 | Net'l Leasing Corp. v. Williams, 837 P.2d 416 | 8-301+10 | In reaching this conclusion, plaintiff is a Pennsylvania corporation with its principal place of business in Paoli, Pennsylvania. In 1985, the defendant was entered into a lease with the Hoeganaes Corp. covered note from the operation of its principal place of business in Paoli, Pennsylvania. This, negotiated the note. Also, the performance of the agreement was to be in Pennsylvania, so the plaintiff's choice of Pennsylvania law to be applied in this case is determined by the law of the state designated in the instrument as the place of payment. Restatement (Conflicts of Law, § 124. | Obligations of maker of note are determined by law of state designated in instrument as place of payment. | By what law are the obligations of the maker of a note determined? | 010910.docx | ROSS-003109739 | Condensed, SA | 0.81 | 1 | | 0 | 1 | |
| 13966 | Jacobson v. Bunker, 699 P.2d 1208 | 8-301+10 | "[W]here a contract is entered into and is to be performed in a foreign jurisdiction the law of that jurisdiction should be applied." Morris v. Sykes, Utah, 624 P.2d 681, 683? M (1981). The rule is the same for promissory notes. The question of where the instrument is payable is a question of interpretation of payment. Plaintiff's claim must also be determined by the law of the jurisdiction where they are executed and delivered. Bologna Brothers v. Morrissey, La.App., 154 So.2d 455, 457 (1963). | Legal effect of promissory notes is determined by the law of jurisdiction where they are executed and delivered. | What law governs the legal effect of a promissory note? | 010810.docx | LEGALEASE 00160354-LEGALEASE 00160355 | SA | 0.71 | 1 | | | 1 | |
| 13967 | Levin-Richmond Terminal Corp. v. Int'l Longshoremen's & Warehousemen's Union, Local 10, 751 F. Supp. 2d 1 | 15+0-1261 | For purposes of determining whether the broad-brush that plaintiff's equitable estoppel from claiming that the MOU was entered into because, according to it defendants, Iowa plaintiff: federal because they agreed to the "[she]" payment arrangement. Plaintiff labels this defense insufficient and unavailing. Plaintiff's contention is rejected and its legal theory is persuasive. Baker-Hack v. DesignEd Daily Foods, Co., 753 F.2d 1086, 1099 (9th Cir.1985). According to plaintiff's estoppel principle doctrine by which a person may be precluded by his act or conduct... from asserting a right which he otherwise would have had. The effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. | Equitable estoppel principles are applicable to actions arising under federal law. | Are estoppel principles applicable to actions arising under federal law? | 017870.docx | LEGALEASE 00159913-LEGALEASE 00159914 | Condensed, SA | 0.91 | 0 | | | 1 | |
| 13968 | Commercial Bank & Tr. Co. v. Caraux, 450 So. 2d 761 | 15+0-1261 | By application of the general equitable principle just discussed, we are involved operating to because they bar the normal assertion of rights. See Wilkinson v. Wilkinson, La.App., 323 So.2d 120 (1975), and numerous similar cases. | Equitable estoppel is not favored and is invoked sparingly because it bars normal assertion of rights. | Does equitable estoppel bar the normal assertion of rights? | 017933.docx | LEGALEASE 00159992-LEGALEASE 00159993 | Condensed, SA, Sub 0.61 | | 0 | 1 | | 1 | |
| 13969 | Succession of Valdez, 44 S. 2d 151 | 15+0-4 | The doctrine of estoppel is applicable only to ignorance of a matter of fact, and not to acknowledgments or statements of propositions of law. Strauss v. City of New Orleans, 166 La. 1035, 118 So. 125. | The doctrine of estoppel is applicable only to ignorance of matter of fact, and not to acknowledgments or statements of propositions of law. | Does the doctrine of estoppel apply only to ignorance of matters of fact? | 017998.docx | LEGALEASE 00160071-LEGALEASE 00160074 | SA, Sub | 0.28 | | 0 | | 1 | |

2796

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15970 | Tolins v. Franklin Equities, 377 v2233, 198 S.W.2d 96 | 371v2233 | The parties recognize that the corporate franchise tax is an excise or privilege tax, that is to say, a tax on the privilege of engaging in business or exercising franchise in this state. See Court Enterprises, Inc. v. Woods, 576 S.W.2d 148, 149 (Tenn.1979); it is a levied upon the net worth or capital of the corporation. Memphis Peabody Corp. v. MacFarland, 211 Tenn. 384, 365 S.W.2d 40 (1963). | Corporate franchise tax is not an ad valorem property tax but is a tax levied upon privilege of engaging in business in incorporated form in state, and is levied upon net worth or capital of the corporation. T.C.A. § 67-2906. | What is corporate franchise tax? | 01853.docx | LEGALEASE 00159062 - LEGALEASE 00159063 | Condensed,SA, Sub | 0.42 | 0 | 1 | | 1 | 1 |
| 15971 | Claro Inc. v. Com., 513 Pa. 74 | 371v2256 | A franchise tax is purely a tax on the right and privilege to conduct business within the Commonwealth. See Commonwealth v. National Biscuit Company, 390 Pa. 642, 136 A.2d 821 (1957); Commonwealth v. Columbia Gas and Electric Corporation, 336 Pa. 209, 8 A.2d 404 (1939). ... | Franchise tax is purely tax on right and privilege to conduct business within Commonwealth, and thus foreign corporation is not necessarily exempt from franchise tax merely because it possesses nontaxable property within Commonwealth. 72 P.S. § 7601 et seq. | Is franchise tax a tax on the right or privilege to conduct business? | 01856.docx | LEGALEASE 00159477 - LEGALEASE 00159478 | Condensed, SA, Sub | 0.52 | 0 | 1 | | 1 | 1 |
| 15972 | Kermann v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883 | 217v2990 | The essence of an insurance policy is a promise by the insurer to compensate the insured for the loss of something of value that is covered under the policy, thereby shifting the risk of loss from the insured to the insurer. See, e.g., Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 229, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). ... | Essence of an insurance policy is a promise by the insurer to compensate the insured for the loss of something of value that is covered under the policy, thereby shifting the risk of loss from the insured to the insurer. | What is the essence of an insurance policy? | 01902.docx | LEGALEASE 00159656 - LEGALEASE 00159659 | Condensed, SA | 0.85 | 0 | | | 1 | |
| 15973 | Fortin v. Keene, 23 Mac 35 | 289v956 | A copartner, with power to settle and adjust the affairs of the copartnership, has the authority to use the name of the firm in such settlements to create new contracts or liabilities. ... | A power to one partner to settle the affairs of the partnership, after a dissolution, does not authorize him to contract debts in the name of the firm, so as to bind his copartners; and the fact that the contract is for the liquidation of prior debts makes no difference. | Does the power to settle and adjust the affairs of the partnership authorize a partner to use the partnership name for that purpose? | 02353.docx | LEGALEASE 00160244 - LEGALEASE 00160245 | Condensed,SA, Sub | 0.36 | 0 | 1 | | 1 | 1 |
| 15974 | Prime Locations of CT v. Rocky Hill Dev., 167 Conn. App. 786 | 822v38.5 | "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. ... A complaint should fairly put the defendant on notice of the claims against him. ... The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. ..." | The purpose of a complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. | Is limiting the issues at trial the purpose of a complaint? | 02385.docx | LEGALEASE 00159938 - LEGALEASE 00159939 | Condensed,SA, Sub | 0.93 | 0 | 1 | | 1 | 1 |
| 15975 | 474 W. 159th St. Realty Corp. v. Lewis, 166 Misc. 2d 954 | 307v4699 | A motion to restore may be treated by a court as a motion to vacate a dismissal for abandonment (CPLR 5015 [a] [1], [c]; Syndicate Bldg. Corp. v. Lorber, 128 A.D.2d 506, 507, 597 N.Y.S.2d 721 [1st Dept.1993]). In order to have such a dismissal vacated, and the action restored to the trial calendar, the movant must show "... a reasonable excuse for the delay, a lack of prejudice to the opposing party, and the merits of the action" (Sullivan v. McCabe, 234 A.D.2d 464, 465, 651 N.Y.S.2d 567 [2d Dept.1996]). ... | Motion to restore proceeding to trial calendar may be treated by court as motion to vacate dismissal for abandonment. McKinney's CPLR 5015(a)(1), (c). | Can a court properly treat a motion to restore action dismissed for abandonment as a motion to vacate dismissal? | 03903.docx | LEGALEASE 00159726 - LEGALEASE 00159727 | Condensed,SA, Sub | 0.76 | 0 | 1 | | 1 | |
| 15976 | D.U.C. v. Finlay, 832 S.W.2d 158 | 307v4699 | The Walker opinion identified certain orders that the trial court must reduce to writing, even if the court announces its ruling in open court, and the order is transcribed in the statement of facts by the court reporter. For example, a trial court may not orally rule that a case ... the court held that an oral order attempting to reinstate a case that was dismissed for want of prosecution was ineffective. | Trial court may not orally reinstate a case that was dismissed for want of prosecution. | Can a trial court orally reinstate a case that was dismissed for want of prosecution? | 03916.docx | LEGALEASE 00159740 - LEGALEASE 00159741 | Condensed, SA | 0.83 | 0 | | | 1 | |

2797

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 15877 | Sturm Custom Homes v. Ross, 388 Ill. App. 3d 739 | 307A-561.1 | On appeal, the plaintiff argues that the trial court erred in dismissing (1) its claim for breach of the Disclosure Act and breach of contract contained in its amended complaint; and (2) its claim for common-law fraud contained in its original complaint. With regard to the plaintiff's claims in its amended complaint for breach of the Disclosure Act and breach of contract, a motion to dismiss under section 2-619(a)(9) should be granted only where the claim asserted by the plaintiff is barred by an affirmative matter defeating the claim. 735 ILCS 5/2-619(a)(9) (West 2006). The purpose of a section 2-619 dismissal "is to dispose of issues of law and easily proved issues of fact early in the litigation." Czarobski v. Lata, 227 Ill.2d 364, 369, 317 Ill.Dec. 656, 882 N.E.2d 536 (2008). We review section 2-619 dismissals de novo. Czarobski, 227 Ill.2d at 369, 317 Ill.Dec. 656, 882 N.E.2d 536. | Purpose of a dismissal based on other affirmative matter is to dispose of issues of law and easily proved issues of fact early in the litigation. S.H.A. 735 ILCS 5/2-619(a)(9). | What would be the purpose of a dismissal based on other affirmative matter? | 039925.docx | LEGALEASE 00159565 - LEGALEASE 00159566 | Condensed, SA, Sub3 0.81 | | 0 | 1 | 1 | 1 | 1 |
| 15878 | Lloyd Noland Found. v. Health South Corp., 979 So. 2d 784 | 307A-561.1 | [However, a party can obtain a dismissal under Rule 12(b)(6), Ala. R. Civ. P., on the basis of an affirmative defense when "the affirmative defense appears clearly on the face of the pleading.'" Jones v. Alfa Mut. Ins. Co., 875 So.2d 1189, 1193 (Ala.2003) (quoting Sheldon L. Jones v. Alfa Mutual Insurance Co., supra, the face of the plaintiff's complaint did not indicate that the statutory limitations period applicable to their bad-faith refusal to pay insurance benefits claim had expired before they sued; therefore, the insurer was not entitled to a dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., on the affirmative defense of the statute of limitations. | Dismissal for failure to state a claim can be obtained on the basis of an affirmative defense when the affirmative defense appears clearly on the face of the pleading. Rules Civ.Proc., Rule 12(b)(6). | When can a dismissal for failure be obtained on the basis of an affirmative defense? | 039936.docx | LEGALEASE 00159617 - LEGALEASE 00159618 | Condensed, SA, Sub3 0.72 | | | 1 | | 1 |
| 15879 | State v. Carlos, 266 Or. App. 390 | 5-771+38 | With respect to the substance of defendant's contention that the trial court erroneously instructed the jury on an irrelevant issue and, therefore, erred, as noted, defendant "bears primarily on the Supreme Court's decision in Oliphant." In that case, the defendant was charged with, among other things, resisting arrest. He requested that the trial court instruct the jury on self-defense. Over the defendant's objection, the trial court instructed the jury that "[a] peace officer may use physical force in arresting or preventing an escape, and to the extent that the officer reasonably believes it necessary to make an arrest." 347 Or. at 187, 218 P.3d 1281 [emphasis omitted]. The Supreme Court concluded that the jury instruction was erroneous given the text of ORS 161.209, in particular, the court explained that "[t]he plain wording of the statute makes clear that, in general, a person's right to use force in self-defense depends on the person's own reasonable belief in the necessity for such action, and not on whether that force used is about to be used or from what actually was unlawful." Id. at 191, 218 P.3d 1281 [first emphasis in original; second emphasis added]. According to the court, the self-defense statute "makes the defendant's reasonable belief that unlawful force was being used (or about to be used) against the person" relevant. Id. at 191, 218 P.3d 1281. Thus, the court concluded that it was error for the trial court to give an instruction that described another person's right to use force, rather than the defendant's, in a self-defense case, because doing so "would have led the jury to apply the wrong standard when it assessed the validity of defendant's self-defense claim." Id. at 191, 218 P.3d 1281. | At assault and harassment trial arising from fight between defendant and his brother at sister's home, validity of defendant's claim of self-defense did not depend on whether victim (who lived together with defendant at sister's home) had a right to attempt to remove defendant from home, but on whether defendant had a reasonable belief that her own actions in response to later were necessary. | Does a defendant's use of force in a claim of self-defense depend on the right to use the land? | 047068.docx | LEGALEASE 00160190 - LEGALEASE 00160191 | Condensed, SA, Sub 0.82 | | | | | 1 |
| 15880 | Forest Pres. Dist. of Cook Cty. v. Miss, 16 Ill. 4234 | 149+41 | As to the second point, it appears from the briefs that, while a petite amended its petition to get the benefit of proof that these lots are lands connecting parts of a natural forest, the ground has been abandoned. There is no evidence beyond the fact that they are adjacent lots, surrounded on three sides by property owned by appellee to show that they form a connecting part of a natural forest. Since by Public Act amendment of 1921 (Laws 1921, p. 467) the Forest Preserve Act (Laws 1913, p. 385) did not authorize a forest preserve district to acquire lands which formed connecting parts of forests. But the amendment of 1921 did. It is clear to our minds that the amendment of 1921 was enacted. The power to acquire land connecting natural forests implies that such land is to be taken over though the entire corporation failed to carry him in its payroll and make report to Department of Labor and Industries for the manager was cited on the payroll. Item No.18 at 732, 74, 76, 75, 76, 76. | Even if private district could not condemn land as connecting parts of natural forest, where adjoining property of district was contiguous with Forest Preserve Act, as amended by Laws 1921, p. 467, Smith-Hurd Stats. c. 73 (72), 2, 5 1 et seq. | Does the Forest Preserve District (1913) have the authority to acquire lands? | 047615.docx | LEGALEASE 00159595 - LEGALEASE 00159696 | Condensed, SA, Sub 0.72 | | 0 | 1 | 1 | 1 | 1 |
| 15881 | Kerelis v. Seattle Hardware Co., 17 Wash. 2d 421 | 413+21.59 | We held in Denny v. Department of Labor & Ind., 172 Wash. 631, 21 P.2d 275, that no entitle one to compensation under the Workmen's Compensation Act, for the accident must have developed from classified extra-hazardous and the injuries sustained must have been received by the employee while engaged in the work classified as such. | Where electric motor service corporation, which was within extrahazardous employment classification, contracted to repair machinery of hardware company, not classified as extra-hazardous, for which compensation is claimed, be received by an employee while engaged in the course of extra-hazardous work classified as such?" | "For the Workmen's Compensation Act to apply, must the business of the corporation in which the employers are engaged in the course of extra-hazardous, and the injuries sustained... for which compensation is claimed, be received by an employee while engaged in the course of extra-hazardous work classified as such?" | Workers Compensation - Memo 863 - C_ANC_64386.docx | ROSS-003279.529 ROSS-003279524 | Condensed, SA, Sub 0.54 | | | 1 | 0 | | 1 |
| 15882 | Nat'l Leasing Corp. v. Williams, 857 A.2d 416 | 8.30+10 | It appears that plaintiff is a Pennsylvania corporation with its principal place of business in the former state. The promissory note agreed to by the defendant was executed in Pennsylvania, and the Pennsylvania Uniform Commercial Code. Thus, Pennsylvania law was chosen to apply to the note. Under Pennsylvania law, the maker of a note is obligated to pay the note, and the designated place of payment. The obligations of the maker of a note are determined by the law of the state designated on the face of the note the payment. Restatement Conflicts of Laws, s 214. | Obligations of maker of note are determined by the law of state designated on instrument as place of payment. | Which law determines the obligations of the maker of a note? | Bills and Notes - Memo 63 GB_60496.docx | ROSS-003296.239 | Condensed, SA 0.81 | | 1 | 0 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 13583 | Com. v. Knapp, 9077a. Super. 355 | 350H+50 | Before sentencing an individual in a term of more than one year in prison, or in a pre-sentence investigation report should be made. 42 Pa.C.S.A. § 9731.5 The contents of this report are to include a history of delinquency or criminality, and any other matters that the person preparing the report deems relevant. 42 Pa.C.S.A. * 9732.6 The statute permits reference to the mode in all arrests and the probation of the case. Accordingly, supra, 42 Pa.C.S.A. *9731 et seq. The information used by a judge, in imposing sentence, need not necessarily meet the standards of admissible evidence at trial. Johnson, supra; Williams, supra. In imposing sentence, the sentencing court must consider the particular circumstances of the offense and the character of the defendant in reaching its determination. Commonwealth v. Giffin, 279 Pa.Super. 264, 420 A.2d 134 (1980); Commonwealth v. Goldberg, 279 Pa.Super. 193, 415 A.2d 161 (1980). In addition, the sentencing judge must make a brief statement of his reasons for the sentence being imposed and the factors that he considered in reaching his determination. Commonwealth v. Allen, 287 Pa.Super. 88, 429 A.2d 1113 (1981); Commonwealth v. Andrews, 282 Pa.Super. 155, 422 A.2d 855 (1980); Cempski, supra. | In imposing sentence, sentencing court must consider particular circumstances of offense and the character of defendant. 42 Pa.C.S.A. §§ 9731 et seq, 9732. | Should the sentencing court consider the character of the defendant in reaching its determination? | DI2551.docx | LEGALEASE 00161503-LEGALEASE 00161504 | Condensed, SA, Sub 0.88 | | 0 | | | 1 | |
| 13584 | United States v. Real Prop. Identified as Parcel 03179-0008, 287 F. Supp. 2d 45 | 170K+25 | The Court explained that "Congress [has] long ... authorized the Government to bring particular criminal procedures and civil forfeiture proceedings, and this Court has consistently found forfeitures not to constitute punishment under the Double Jeopardy Clause." Id. at 28738, 119-120. | Civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause. U.S.C.A. Const. Amend. 5. | "Does civil forfeiture not constitute "punishment" for purpose of a double jeopardy clause?" | Double Jeopardy Memo 32 - C - M.docx | LEGALEASE 00050424-LEGALEASE 00050425 | Condensed, SA | 0.6 | | | | | 1 |
| 13585 | State v. Nunez, 129 N.M. 63 | 130H+25 | Forfeiture is also ascribed the remedial objective of removing harm from society and from the stream of commerce. Thus, social betterment and not individual punishment is the state's interest. When a forfeiture of harmful substances, confiscates dangerous instrumentalities, abates nuisances, and impacts illegal profits. These is no showing that the removal of these is an aspect of forfeiture under the Controlled Substances Act. But this aspect, by itself, does not render forfeiture a predominantly remedial | Removal of harm to the public is an aspect of forfeitures under the Controlled Substances Act. | Is removal of harm to the public is an aspect of forfeitures under the Controlled Substances Act? | Double Jeopardy Memo 8 - C - SS.docx | ROSS 000295307 | Condensed, SA, Sub 0.47 | | | | 1 | | |
| 13586 | Cairo v. Horne, 220 Ariz. 77 | 141E+914 | First, the text of the Aid Clause encompasses more than does the Religion Clause. The Aid Clause prohibits the use of public funds for private or sectarian schools, but to aid public corporations as well. Ariz. Const. art. IX, * 10. Thus, unlike the Religion Clause, the Aid Clause extends to aid a private corporation engaged exclusively in secular activities might be prohibited, such a statute would pose no difficulties under the Religion Clause. To this end, Arizona courts have analyzed the Supreme Court's Establishment Clause jurisprudence. Likewise, the Religion Clause would extend to invalidate an appropriation to a secular private school, but the Aid Clause would not encompass that because such an appropriation would not be among the forbidden recipients of appropriations under the | Clause of State Constitution prohibiting state aid to private schools [Aid Clause] also affects a construction independent of the clause of State Constitution prohibiting appropriations for religious purposes (Religion Clause); for purpose of determining constitutionality of school voucher program through which state-authorized a public school student's transfer to a private or secular school of the student's choice and subsidized that choice, with the Aid Clause encompassed more than did the Religion Clause, with the Aid Clause prohibiting the use of public funds not only to aid private or sectarian schools, but to aid public corporations as well. A.R.S. Const. Art. 2, § 12; Art. 9, § 10. | Does the Religion Clause prohibit an appropriations to pay for religious instruction in public schools? | DI7266.docx | LEGALEASE 00161094-LEGALEASE 00161095 | Condensed, SA, Sub 0.12 | | 0 | | | 1 | |
| 13587 | Johnson v. Structured Asset Servs., 148 S.W.3d 731 | 156+53.10(2) | Contractual rights can be waived. Alaxna Petroleum Corp. v. Hamburg, 20 S.W.3d 741, 790 (Tex.App.-El Paso 2000, no pet.). A party can waive almost any right, including one arising from a law, a provision of a contract, or a rule. First United Pentecostal Church v. Lundip Enterp, 556 S.W.2d 316, 400 S.W.2d 740 (Tex.App.-Corpus Christi 1996, no writ). A waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. In re Epic Holdings, Inc., 985 S.W.2d 41, 57 (Tex.1998); Sun Exploration and Production Co. v. Benton, 728 S.W.2d 35, 37 (Tex.1987); see also Texas Development Co., 139 S.W.3d at 884. Essentially, a waiver is a unilateral instrument; it results in a loss of a consequence from a party; it is for another party, which operates, and it need not be given in effect, where there it needs to necessary to complete it. U.S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353, 359 (Tex.1971); Massachusetts Bonding & Ins. Co., 416 S.W.2d at 401. A waiver does not need to be founded upon a new agreement, supported by consideration, or based upon estoppel. U.S. Fidelity, 464 S.W.2d at 358. However, a waiver presupposes full knowledge of an existing right. Massachusetts Bonding & Ins. Co., 416 S.W.2d at 401. In order to establish a waiver of rights under a contract, there must be proof of an intent to relinquish a known right. See Pluguez v. Upson Co., 515 S.W.2d 220 at 574, 580 (Tex.1976); see also Alaxna, 255 W.3d at 750. A party's express renunciation of a known right, either verbal or written, can establish a waiver. Tenneco, Inc. v. Enterprise Products Co., 925 S.W.2d at 640, 643 (Tex.1996); see also Texas Development Co., 139 S.W.3d at 884. A party's silence or inaction, for a period of time long enough to show an intention to yield the known right, is also enough to prove a waiver. Tenneco, Inc., 925 S.W.2d at 643. As to an assignment clause can be waived and the laws governing the waiver of contractual | A waiver does not need to be founded upon a new agreement, supported by consideration, or based upon estoppel. | Does a waiver need to be founded on a new agreement? | Estoppel - Memo 228 - C - CSS_65204.docx | ROSS 000292654-ROSS-000292657 | Condensed, SA | 0.95 | | 0 | | | 1 | |

| ROW# | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15888 | Taranis Amusement Co. v. Mitchell Amoco, 408 So. 2d 726 | 156+53.10(2) | "1.3. Under Mississippi case law, a "waiver" presupposes a full knowledge of a right existing, and an intentional surrender or relinquishment of that right. It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and conditions of a contract. It is the voluntary surrender of a right. To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived... Ewing v. Adams, 573 So.2d 1364, 1369 (Miss.1990) (quoting Ballard v. Law Dictionary 1354 (1st ed.1980) (citations omitted)). The chancellor found it significant that each of the renewal options separately set forth in individually numbered sections of the lease and amendment. The terms and conditions are repeated in each section. The chancellor held that not following the correct procedure under the option for the third renewal term did not constitute a waiver of the requirements under the separately listed options." | A waiver presupposes a full knowledge of a right existing, and an intentional surrender or relinquishment of that right. | Does waiver presuppose a full knowledge of a right existing? | Estoppel - Memo 281 - CDL_0521.docx | ROSS-003291524 ROSS-003291525 | Condensed_SA | 0.89 | | | | 1 | |
| 15889 | Close v. Crossland, 47 Minn. 500 | 315+613 | In this case, however, the action based upon the alleged rescission is for the recovery of the consideration,"the hens given in exchange for the ponies, or its value, if a recovery of the specific property cannot be had, and if there could be--in law, no recission upon which to predicate a suit; there was no note in the suit, nor was it had. There is no doubt that a warranty of title may be implied in a contract of exchange, as upon a sale of personal property. In the case of a warranty of quality of personal property, and where the subject matter is capable of delivery and acceptance of the property, the rule is that the vendee cannot entitled to return the same and rescind the contract for a breach of the warranty, except in cases of fraud, or unless it is stipulated in the contract. Kimbrough v. Konocahohok, 28 Minn. 303, (10. 272.) There the title passes, and though there is a breach of the contract, there is a breach of warranty, the consideration for the purchase, and that is the ground upon which the plaintiff must rely to right to rescind in this action. | A warranty of title may be implied in a contract of exchange as upon a sale of personal property. | Can a warranty of title be implied in a contract of exchange? | 030880.docx | LEGALEASE-00161793 LEGALEASE-00161794 | Condensed_SA | 0.91 | | | | 1 | |
| 15890 | United States v. Landes, 704 F.2d 515 | 184+9 | We find that a false writing can be made by any number of artificial means and still fall within ambit of common-law forgery. The appellant reproduced the signatures of the judge and the Clerk artificially, by use of a photocopy machine, as a part of a fraudulent scheme. Fundamentally, there is no distinction between the activities of the appellant in the instant case and those of the appellant in Benson. The fact that the appellant was able to employ modern means of reproducing the signatures directly from copies of original offers no material distinction between the activities here... Whether the photocopying machines in 1983 or impression plates in 1886, the technology is unimportant. The bottom line is that, in both cases, false writings of the nature of others were used in an attempt to defraud. This is the heart of common-law forgery, and in this instance, such activity is proscribed by §505. | False writing can be made by any number of artificial means and still fall within ambit of common-law forgery. | Can forgery be made by artificial means including photocopy machines? | 010441.docx | LEGALEASE-00161841 LEGALEASE-00161842 | Condensed_SA | 0.88 | | | | 1 | |
| 15891 | Spencer v. Frantz, 195 Wis. 69 | 200+80 | It has long been the established law in Wisconsin that the abutting owner has title to the center of the highway is an easement. And adjoins owners subject to the public easement. It is equally clear that the conveyance of abutting property transfers the legal title to the lands to the center of the adjacent street or highway, in the absence of a clear intent to the contrary, even where the conveyance names the highway as the boundary line. See 26 A.L.R. 1491; 47 C.J. 1306; ... | Does the abutting owner have title to the center of the highway or street subject to public easement? | Highways - Memo 480 - RK_61069.docx | ROSS-003325323 ROSS-003325324 | Condensed_SA, Sub | 0.82 | | | | 1 | |
| 15892 | Commercial Union Assur Companies v. Kaplan, 152 N.J. Super. 273 | 217+1001 | We held the plaintiff has taken an umbrella position and, in effect, is making a power of its named insured in order that it might avoid payment under its umbrella coverage as an injured insured under its policy, if in fact that coverage is disclosed. This is so notwithstanding that the other underwriter. The rule that plaintiff's insurance as an injured insured... State which recognizes insurance as an instrument of social policy and a means by which innocent victims of negligence are compensated. See Cooper v. Gov't Employees Ins. Co., 51 N.J. 86, 237 A.2d 870 (1968). | Insurance law recognizes insurance as an instrument of social policy and a means by which innocent victims of negligence are compensated. | Is insurance an instrument of social policy? | Insurance - Memo 121 - SNJ_65788.docx | ROSS-003280664 ROSS-003280662 | Condensed_SA | 0.73 | | | | 1 | |
| 15893 | Fort Walton Lumber & Supply Co. v. Parr, 142 So. 2d 346 | 307A+607 | The good cause necessary under statute to reinstate an action dismissed for failure to prosecute must initially be made to appear by the party petitioning for reinstatement; and good cause cannot be said to be present where there is no showing to the court that the party determine to sufficiency, assuming all facts and pleaded to be true. Jurisdiction to reinstate a dismissed action depends upon the allegations of a petition which fails to allege facts showing good cause for reinstatement. We are not confronted with any question of the procedure to be followed where there is a showing of good cause, for in such situation, the party is disclosed to which situation the clients could have medicated... | Statute respecting the dismissal of actions for failure to prosecute and for reinstatement upon 'good cause' shows does not contemplate such a nullification as a judicial determination and makes it essential that the party petitioning for reinstatement essentially be made to appear by petition for reinstatement? | Should the good cause necessary under statute to reinstate a dismissed action for failure to prosecute essentially be made to appear by petition for reinstatement? | 040014.docx | LEGALEASE-00160745 LEGALEASE-00160746 | Condensed_SA, Sub | 0.6 | | | | 1 | |
| 15894 | Braddock v. Zimmerman, 906 A.2d 776 | 307A+695 | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissal complaint. It constitutes a judicial determination that the original complaint was not well-pleaded and makes a derivative action or did not satisfy the legal test for demand excusal. Following such a dismissal, for purposes of a Rule 23.1 demand inquiry, the complaint is rendered a nullity. Consequently, when a complaint is amended with permission following a dismissal without prejudice, even where the amendment is unrelated to the same context that was challenged in the original dismissed complaint, the Board decides not to consider the action dismissed by reference to the standard required at the time of the original complaint. | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint? | "Is a complaint that is dismissed without prejudice with express leave to amend, a dismissed complaint?" | Pretrial Procedure - Memo 11388 - C - RK_65984.docx | ROSS-003281521 ROSS-003281522 | Condensed_SA | 0.85 | | | | 1 | |

Appendix D

2800

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15895 | Finlan v. Peavy, 205 S.W.3d 647 | 307A+583 | A trial court has broad discretion in determining whether to dismiss a lawsuit. See e.g., Trevino v. Houston Orthopedic Center, 831 S.W.2d 341, 343 (Tex.App.-Houston [14th Dist.] 1992, writ denied). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. Mercedes"Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex.1996). For the following reasons, we find that the trial court did not abuse its discretion in dismissing the case. | A trial court has broad discretion in determining whether to dismiss a lawsuit. | Does a court have broad discretion in determining whether to dismiss a lawsuit? | 040457.docx | LEGALEASE-00161160-LEGALEASE-00161161 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 15896 | Lake Meredith Reservoir Co. v. Amity Mut. Irr. Co., 698 P.2d 1340 | 307A+583 | The district courts have the inherent power to dismiss a claim for failure to prosecute. Rudd v. Rogerson, 152 Colo. 370, 374, 381 P.2d 995, 998 (1963); Cervi v. Town of Greenwood Village, 147 Colo. 190, 193, 362 P.2d 1050, 1052 (1961). This power is reinforced by C.R.C.P. 41(b)(1), which recognizes that a court may dismiss a claim on a defendant's motion for failure to prosecute, and by C.R.C.P. 41(b)(2), which provides that a court upon reasonable notice and pursuant to rules may dismiss actions not prosecuted or brought to trial with due diligence. The procedures for effecting dismissal for failure to prosecute are detailed in C.R.C.P. 121(b), section 1"10. | District courts have inherent power to dismiss claim for failure to prosecute. Rules Civ.Proc., Rule 41(b)(1, 2). | Do courts have inherent power to dismiss claim for failure to prosecute? | 040544.docx | LEGALEASE-00160953-LEGALEASE-00160954 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15897 | Holcomb v. Com., 58 Va. App. 339 | 3.77E+11 | "A threat, in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property." Perkins v. Commonwealth, 12 Va.App. 7, 16, 402 S.E.2d 229, 234 (1991). We "must consider a communication in its particular context when determining whether a speaker's words constitute a true threat." Wise, 49 Va.App. at 355, 641 S.E.2d at 140. | A "threat," in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property. | How is a threat recognized in the criminal context? | 046940.docx | LEGALEASE-00160915-LEGALEASE-00160916 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 15898 | Mayor & City Council of Baltimore v. Trunk, 172 Md. 35 | 413+105 | There can be no controversy that the injury suffered was accidental and was sustained in the course of his employment. This much is patent and is not disputed. Three questions, however, are raised by the action of the court on the prayers. It is not enough that the injury be accidental and be suffered in the course of the servant's employment by his master, since for the award of compensation the statute further requires, as defined and contemplated by its terms, a workman, an employer and an extra-hazardous employment. The contention is made that the husband of the claimant was an orderly, who was the head orderly of his group, at a wage of $1,200 a year, payable in installments of $50 every half month, and, so, was not a workman for wages within the meaning of the enactment. | That injury suffered by employee was accidental, and was sustained in course of his employment, is not sufficient to entitle employee to compensation, since there must exist a "workman" and "employer" and an "extrahazardous employment," within definition of compensation statute. Code Pub.Gen.Laws Supp.1935, art. 101, S 35. | "What else is required for an award of compensation, besides the injury being suffered in the course of employment?" | 048698.docx | LEGALEASE-00161231-LEGALEASE-00161232 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 15899 | Moore v. Indus. Acc. Fund, 80 Mont. 136 | 413+105 | The provisions of section 3 of chapter 121, supra, went no further than to bring paid public officers, who are connected with or are engaged in hazardous occupations, within the protection of the act. It must be held that a hazardous occupation, as contemplated by the Compensation Act, is limited to those occupations enumerated in the act and to others of the same general character. | Occupation, to be hazardous within Compensation Act, must be one of those enumerated or of same general character (Rev.Codes 1921, S 2852). | "Under the Compensation Act, are hazardous occupations limited to those enumerated and to others of the same general character?" | 048707.docx | LEGALEASE-00161339-LEGALEASE-00161340 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 15900 | State v. Bayles, 121 Wash. 215 | 92+2432 | It is plain that by this amendment the Legislature has expressly authorized the department, after a hearing as provided by the statute, to find and declare any occupation not already included within the Workmen's Compensation Act to be extrahazardous. We must hold, therefore, that the statute authorized the department to find and decide that employees in retail fuel yards were engaged in extrahazardous occupations. | Workmen's Compensation Act, Rem.Code 1915, S 6604-2, as amended by Laws 1919, p. 340, S 1, and Laws 1920-21, p. 719, S 1, giving the labor department power, after hearing had on its own motion, or on the application of any person interested, to declare any occupation to be extrahazardous, and be under the act, is not unconstitutional, as delegating legislative authority. | "Who can declare an occupation not already included in the Workmens Compensation Act, as extra hazardous?" | 048716.docx | LEGALEASE-00160817-LEGALEASE-00160818 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 15901 | Nat'l Leasing Corp. v. Williams, 80 F.R.D. 416 | 8.30E+10 | It appears that plaintiff is a Pennsylvania corporation with its principal place of business in the forum state. The promissory note agreed to by the defendant was entered into pursuant to the Pennsylvania Uniform Commercial Code. Thus, Pennsylvania law was chosen to apply to the note. Also, the performance of the agreement was to be in Pennsylvania, the designated place of payment. The obligations of the maker of a note are determined by the law of the state designated on the instrument as the place of payment. Restatement Conflicts of Law, s 214. | Obligations of maker of note are determined by law of state designated on instrument as place of payment. | Which law determines the obligation of the maker of a note? | Bills and Notes - Memo 1346 - RK_66249.docx | ROSS-003293680 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 15902 | Clark v. United States, 913 F. Supp. 441 | 135H+25 | Upon carefully weighing the competing arguments, this Court is convinced that the arguments presented in Tilley best interpret the Supreme Court's Double Jeopardy analysis established in Halper and utilized in Austin. Therefore, the forfeiture of drug proceeds under " 881(a)(6) is never disproportionate to the cost to the government and society of drug-related crime, is never "punishment" under Halper, and, therefore, never causes a violation of Double Jeopardy. In the alternative, the forfeiture of drug proceeds does not involve any element of "property" legally vested in the defendant, and therefore does not constitute punishment for Double Jeopardy purposes. | Civil forfeiture of drug proceeds is not punishment for double jeopardy purposes. U.S.C.A. Const.Amend. 5; Tariff Act of 1930, S 602 et seq., 19 U.S.C.A. S 1602 et seq.; Comprehensive Drug Abuse Prevention and Control Act of 1970, S 511(a)(6), 21 U.S.C.A. S 881(a)(6). | Is the civil forfeiture of drug proceeds not punishment for double jeopardy purposes? | 014847.docx | LEGALEASE-00162166-LEGALEASE-00162167 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15903 | Zettel v. Paschen Contractors, 100 Ill. App. 3d 614 | 217+1701 | We agree with Gateway that section 3 of the act is not applicable. An agreement to obtain insurance is not an agreement of insurance; a person promising to obtain insurance does not by that promise become an insurer although he may assume the liabilities of one if he breaches the agreement. (Connor v. Thompson Construction and Development Co. (Iowa 1969), 166 N.W.2d 109; Midwest Lumber Co. v. Dwight E. Nelson Construction Co. (1972), 188 Neb. 308, 196 N.W.2d 377; 4 Appleman Insurance Law and Practice s 2261.) Even more clearly, however, a promise to obtain insurance is not the same as a promise to indemnify. (See for example, Zadak v. Cannon (1974), 59 Ill.2d 118, 319 N.E.2d 469; Vandygriff v. Commonwealth Edison Co. (1980), 87 Ill.App.3d 374, 408 N.E.2d 1129, 42 Ill.Dec. 420; Rome v. Commonwealth Edison Co. (1980), 81 Ill.App.3d 776, 401 N.E.2d 1032, 36 Ill.Dec. 894, leave to appeal denied; Marshall Field and Co. v. J. B. Noelle Co. (1967), 81 Ill.App.2d 409, 226 N.E.2d 454; Hooks v. Southeast Construction Corp. (1976), 176 U.S.App.D.C. 83, 538 F.2d 431.) | An agreement to obtain insurance is not agreement of insurance; person promising to obtain insurance does not by that promise become insurer although he may assume liabilities of one if he breaches agreement. | Is an agreement to obtain insurance an agreement of insurance? | 019516.docx | LEGALEASE-00162356-LEGALEASE-00162357 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15904 | Gerbino v. Isle of Paradise B, 149 So. 3d 69 | 118A+328 | The court dismissed appellant's complaint with prejudice without notice and after a hearing in which the court denied the appellant's motion to extend the time for filing the fourth amended complaint.Once a court has dismissed a complaint with leave to amend, it cannot subsequently dismiss with prejudice for failure to timely amend unless (1) separate notice is given to plaintiff of the hearing on the motion to dismiss with prejudice, or (2) the order dismissing the complaint with leave to amend specifically provides that on failure to amend within the stated time, the cause will be dismissed without further notice. | Trial court could not dismiss with prejudice, for failure to timely file fourth amended complaint, condominium unit owner's declaratory judgment action seeking to determine whether private docks were built on common property of the condominium association, without considering the Kozel factors for determining if the ultimate sanction of dismissal should be imposed for an attorney's neglect; trial court gave no reason for the dismissal other than failure to timely amend the complaint which, alone, was insufficient to warrant dismissal with prejudice, and without trial court's analysis of the Kozel factors, District Court of Appeal could not review trial court's discretionary decision. | "Once a court has dismissed a complaint with leave to amend, can it subsequently dismiss with prejudice for failure to timely amend?" | 040148.docx | LEGALEASE-00162158-LEGALEASE-00162159 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 15905 | S.S. White Dental Mfg. Co. v. Com., 212 Mass. 35 | 371+2127 | It has been said many times, through the years since the adoption of the Constitution, that any property tax in order to be valid under the Constitution must be proportional, and any such tax assessed upon certain property, at a rate different from that upon other property, is disproportionate. Oliver v. Washington Mills, 11 Allen, 268, 275; Cheshire v. County Commrs., 118 Mass. 386, 389; Northampton v. County Commrs., 145 Mass. 108, 109, 13 N. E. 388; Opinion of Justices, 195 Mass. 607, 84 N. E. 499; Opinion of Justices, 208 Mass. 616, 94 N. E. 1043. The policy of the commonwealth relative to the taxation of corporations, both domestic and foreign, has been founded upon this distinction between a property tax and an excise. It was established in 1862 as to savings banks, and in 1864 as to business corporations. The constitutionality of these acts was attacked. The excise upon the commodity of exercising the business of a savings bank was based upon the amount of its deposits, and upon that of being a business corporation on the market value of its capital stock after deducting its real estate and machinery, if any taxed locally. | Property tax is not proportional upon all inhabitants of commonwealth if it be assessed upon certain property at different rate from that assessed upon other similar property. | Can any tax be assessed upon certain property at a rate different from that upon other property? | Taxation - Memo 1189 - C -JL_65999.docx | ROSS-003308084-ROSS-003308085 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 15906 | Domenech v. Nat'l City Bank of New York, 294 U.S. 199 | 371+2008 | Puerto Rico, an island possession, like a territory, is an agency of the federal government, having no independent sovereignty comparable to that of a state in virtue of which taxes may be levied. Authority to tax must be derived from the United States. But like a state, though for a different reason, such an agency may not tax a federal instrumentality. A state, though a sovereign, is precluded from so doing because the Constitution requires that there be no interference by a state with the powers granted to the federal government. A territory or a possession may not do so because the dependency may not tax its sovereign. True the Congress may consent to such taxation; but the grant to the island of a general power to tax should not be construed as a consent. Nothing less than an act of Congress clearly and explicitly conferring the privilege will suffice. Not only do we find no such statutory consent, but we are confronted by Rev. St. s 5219 as amended, which proprio vigore extends to territories, and the congressional declaration that it, like other statutes of the United States, shall, if not locally inapplicable, apply to Puerto Rico. | Puerto Rico is an agency of the federal government without independent sovereignty, whose authority to tax must be derived from the United States. | Can a Territory tax a federal instrumentality? | 046387.docx | LEGALEASE-00162112-LEGALEASE-00162113 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 15907 | Hunt v. Standart, 15 Ind. 33 | 8.30E+12 | If this proposition can not be maintained, but if, on the contrary, the contract of the drawer of a bill, is governed by the law of the place where it is drawn, rather than by that of the place where it is payable, the argument advanced proves conclusively that the case was wrongly decided. The authorities must test this question. Story says (Conflict of Laws, " 360): "By the common law, the protest must be made at the time, in the manner, and by the persons prescribed in the place where the bill is payable. But as to the necessity of making a demand and protest, the circumstances under which notice may be required or dispensed with, these are incidents of the original contract, which are governed by the laws of the place where the bill is drawn. They constitute implied conditions upon which the liability of the drawer is to attach according to the lex loci contractus, and, if the bill is negotiated, the responsibility attaches upon each successive indorser according to the law of the place of his indorsement; for each indorser is treated as a new drawer." | The contract of indorsers is to pay a note generally on certain conditions, not at any particular place, and is governed by the lex loci contractus; and hence the statute placing bills payable at a bank on the same footing as bills of exchange has no application to indorsers, and therefore, if their liability is not fixed by the exercise of due diligence to collect it from the maker, they are discharged. | Does the liability of drawer attach according to the lex loci contractus? | 009151.docx | LEGALEASE-00162811-LEGALEASE-00162812 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 15908 | In Interest of Doe, 7 Haw. App. 582 | 3.77E+24 | Words and hand gestures are not essential elements of the crime of harassment as proscribed by HRS " 711"1106(1)(b). The fact that FGF and Mother were scared and nervous and did not respond with violence is irrelevant. With respect to the likelihood of provoking a violent response, the relevant test is objective, not subjective. Persons who respond as appropriately as FGF and Mother responded to Doe's actions and facial expressions are accorded at least as much protection by HRS " 711"1106(1)(b) as those who respond violently. | Words and hand gestures are not essential elements of crime of harassment. HRS S 711-1106(1)(b). | Are words and hand gestures essential elements of the crime of harassment? | "Threats, Stalking and Harassment - Memo 227 - C - LB_67078.docx" | ROSS-003308091-ROSS-003308092 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 15909 | White v. Bethlehem Steel Corp., 222 F.3d 146 | 413+186 | While the LHWCA does not explicitly adopt the borrowed servant doctrine, the word "employer" in 33 U.S.C. " 905(a) encompasses both general employers and employers who "borrow" a servant from that general employer. See Huff v. Marine Tank Testing Corp., 631 F.2d 1140 (4th Cir.1980); Peter, 903 F.2d at 938-39; Gaudet v. Exxon Corp., 562 F.2d 351 (5th Cir.1977). A person can be in the general employ of one company while at the same time being in the particular employ of another "with all the legal consequences of the new relation." See Standard Oil Co. v. Anderson, 212 U.S. 215, 220, 29 S.Ct. 252, 53 L.Ed. 480 (1909). In order to determine whether an employee is a borrowed servant, courts "must inquire whose is the work being performed ... by ascertaining who has the power to control and direct the servants in the performance of their work." Id. at 221-22, 29 S.Ct. 252. The Supreme Court noted, however, the importance of "distinguish [ing] between authoritative direction and control, and mere suggestion as to details or the necessary cooperation." Id. at 222, 29 S.Ct. 252. | While the LHWCA does not explicitly adopt the borrowed servant doctrine, the word "employer," as used in the LHWCA section providing that an employer's LHWCA liability shall be exclusive, encompasses both general employers and employers who borrow a servant from that general employer. Longshore and Harbor Workers' Compensation Act, S 5(a), 33 U.S.C.A. S 905(a). | Does employer encompass employers who borrow from a general employer? | 048729.docx | LEGALEASE-00162699-LEGALEASE-00162700 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 22,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | | | | |
| 19910 | Zurowski v. Superior Court, 44 Cal.3d 14 167 | 104v13 | Therefore, while we agree with petitioner that article I, section 26... | Local rule directing transfer of assets-related duties, and civil service employees performing them, from county of court to superior court unconstitutional. | In assigning court related duties from the county clerk to the superior court unconstitutional? | 013543.docx | LEGALEASE 0016410 / LEGALEASE 0016411 | Condensed, SA, Sub 0.61 | 0.61 | | 1 | | 1 | 1 |
| 19911 | Ex parte Hayes, 591 S.W.2d 721 | 110++59 | A jury is not selected in the trier of fact, and a defendant is not placed in jeopardy of a conviction until the jury has been impaneled. A Texas jury is considered impaneled... | For purposes of double constitutional double jeopardy prohibition, jury is not selected as trier of fact, and defendant is not placed in jeopardy of conviction, until jury has been impaneled. Vernon's Ann.Texas Const. Art. 1, § 14. | Will defendant be deprived of jeopardy if conviction when jury has been impaneled? | 014806.docx | LEGALEASE 0016056 / LEGALEASE 0016057 | Condensed, SA, Sub 0.63 | 0.63 | | 1 | | | |
| 19912 | United States v. Ham, 58 J 78 | 110++96 | However, a defendant's failure to object does not constitute implied consent... | Defendant's failure to object to mistrial does not constitute implied consent to mistrial, if defendant had no opportunity to object, U.S.C.A. Const.Amend. 5. | Does a defendant's failure to subject to mistrial not constitute implied consent to mistrial, if defendant had no opportunity to object? | 015305.docx | LEGALEASE 0016058 / LEGALEASE 0016059 | Condensed, SA, Sub 0.83 | 0.83 | | | | 1 | |
| 19913 | People v. Burgess, 206 Cal. App. 3d 762 | 110++95.1 | The jeopardy clause has been interpreted as affecting three basic protections or guarantees: "It protects against a second prosecution for the same offense after acquittal..." | Double jeopardy clause protects against retrial after improper declaration of mistrial. U.S.C.A. Const.Amend. 5; West's Ann.Cal. Const. Art. 1, § 15. | Does a double jeopardy clause protect against a retrial after an improper declaration of mistrial? | 015493.docx | LEGALEASE 0016501 / LEGALEASE 0016502 | Condensed, SA, Sub 0.86 | 0.86 | | | | 1 | |
| 19914 | Miller v. Charolais Corr. facility, 791 F.3d 831 | 110++134 | As relevant to the state statute in its case... The Double jeopardy Clause of the United States Constitution ensures that the total punishment a defendant has received does not exceed that authorized by the legislature... | When defendant has been charged with multiple offenses under same statute and arising out of same transaction, court must look to whether state legislature intended facts underlying each count to constitute separate acts of prosecution; and if intent of prosecution is intended by legislature prescribes multiple punishments under same statute and conviction arising from same incident, the Double Jeopardy Clause is not violated. U.S.C.A. Const.Amend. 5. | Does a double jeopardy clause ensure a defendant that he will not suffer more than one punishment or necessart prosecutions for a same breach of law? | 015508.docx | LEGALEASE 0016543 / LEGALEASE 0016544 | Condensed, SA, Sub | | | | | 1 | |
| 19915 | Jessica v. Fremont Motors Corp, 2003 WY 171, 58 P.3d 322 | 156+51.10(3) | We have defined waiver as the intentional relinquishment of a known right that must be manifested in an unequivocal manner... | While intent for waiver of a right may be implied from conduct, the conduct should speak the intent clearly. | While intent for waiver may be implied from conduct, the conduct should speak the intent clearly? | (Estoppel - Memo s 279 - C-FCS 0032619329 ROGS+ - CSL 66554.docx) | ROGS 0032619329 ROGS+ - CSL 00382971 | SA, Sub | 0.89 | | | | 1 | |

2803

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15936 | Black v. Delaware & R. Canal Co., 24 N.J. Eq. 455 | 148v45 | In the exercise of the right of eminent domain, the legislature may authorize chosen in corporations, and corporate franchises, to be taken for public use upon just compensation. The title to this species of property is no more sacred against invasion when the public uses require it, than is the ownership of real estate. Under this paramount right in the public, subject to which all private property is held, the franchises of one corporation have been, and may be taken and bestowed upon another. | The legislature, in the exercise of the right of eminent domain, may take the shares of stock in a corporation and the corporate franchise for public use, on providing for just compensation. | Can franchise be taken for public use? | Franchises Memo doc RNR_04459.docx | ROSS-003183193 ROSS-003183192 | Condensed, S/A, Sub 0.62 | | 0 | 1 | 1 | 1 | |
| 15937 | El Paso Refinery v. Scurlock Permian Corp., 77 S.W.3d 374 | 398v126 | That Texas usury law protects only the obligor from usury instead of the guarantor is internally logical. The only risk for the guarantor is to insure the debt in case the event the debtor is not able to repay it, the borrower's payment performance. In contract, only the obligor receives the benefit of the principal obligation, in this case a continuing supply of SPV crude necessary to keep JP's operation afloat. The benefit of the original transaction in this case unambiguously and personally flowed to JP, not SPV. This conclusion comports with Texas law which holds that "[u]sury is a personal defense and may not be asserted by a guarantor unless the contract with the guarantor also contains the usurious provision." Ginsberg, 1965, 39 F.3d at 534 (quoting FSLIC v. Griffin, 935 F.2d 691, 700 (5th Cir.1991)) (construing Texas law).The Guaranty intrinsically recognizes this rule of law because it contains a usury savings clause. In this regard, it is important to note that EPR has never alleged that the Guaranty violated any Texas usury law. | Usury is a personal defense and may not be asserted by a guarantor unless the contract with the guarantor also contains the usurious provision. | Can an individual guarantor assert a defense of usury? | 01B620.docx | LEXALEXIE-00165573 LEXALEXIE-00165574 | Condensed, S/A, Sub 0.86 | | 0 | 1 | 1 | 1 | |
| 15938 | Rubinfeld v. Mappa, 42 Misc. 2d 644 | 302v49 | The mere fact that the word "reality" or similar words are used in the complaint or that one of the prayers for relief seeks a transfer of title to reality, is not determinative unless supported by appropriate allegations. It is not the title of the action, nor the prayer for judgment, but the facts set out in the complaint which determine the kind and character of the action (Weinberg v. Rao, 28 A.D.2d 526, 280 N.Y.S.2d 10, p. 17, et seq.). The gravamen of the complaint herein is unsound of contract to convey certain realty other than the two-party within the meaning of CPLR § 503 (Grace v. Price, 28 A.D.2d 1037, 284 N.Y.S.2d 124, et seq.; Hejtv. Everett Sand & Co., 17 Misc.2d 375, 190 N.Y.S.2d 914; Weinberg v. Rao.) | It is not title of action or prayer for judgment but facts set out in complaint which determines kind and character of action. CR 8 § 503.01 | Does the title of a complaint constitute the character of the action? | 01T997.docx | LEXALEXIE-00165479 LEXALEXIE-00165480 | Condensed, S/A, Sub 0.62 | | 0 | 1 | 1 | 1 | |
| 15939 | Davidov v. State Farm Ins. Co., 135 Cal. App. 4th 499 | 302v43 | Davidov's and the Abadi''Mousihs'' reliance on the inclusion of the names of the parties in the caption to support the complaints adequately informed State Farm of the necessary elements of their disputes is unpersuasive. As we explain post, the allegations in the body of the complaint, not the caption, control the cause of action against the defendant. (Fabrik v. Korda, 2005) 132 Cal.App.4th 3, 20 (Ca.).Cal.Rptr.3d 104 [reiterate allegation in complaint that each defendant was the agent of the other was insufficient to state allegations in a complaint that each defendant was the agent of the other).The allegations in the body of the complaint, not the caption, determines the cause of action against the defendant. "[...]referring to the named defendant in the complaint is insufficient to trigger any real duty against individual not mentioned in body of complaint, adding that an individual's name is insufficient to trigger any real duty against an individual whose "the caption of the complaint constitutes no part of the statement of the cause of action."')(Monroe v. Savoye, 200 Cal.App.4th 375, 409 (Ca.).Cal.Rptr.3d 84, although it is true the degree of specificity required in a pleading can depend on the extent to which the defendant needs information (Semole v. Sansoucie 1972) 28 Cal.App.3d 714, 719, 104 Cal.Rptr 891) an authority regards merely identifying the names of the parties in the caption affords no adequate information to apprise any defendant of the nature of the dispute against it. | Do the allegations in the body of the complaint, not the caption, constitute the cause of action against the defendant? | 01T943.docx | LEXALEXIE-00165547 LEXALEXIE-00165548 | Condensed, S/A | 0.91 | | 0 | 1 | 1 | 1 | |
| 15940 | Hunter v. Gang, 132 New Adv Op. 22 | 30v1206 | Because the inherent authority to dismiss an action for want of prosecution is incidental to the duties required for the administration of justice and the courts' management of its case before it, a district judge... Before a court resort to its inherent authority to dismiss an action for want of prosecution, the generally Mohawk-Tang[.]Med. Ctr. v. Second Judicial Dist. Court, 130 Nev.*** , 335 P.3d 199 (2014) (analyzing the district court's exercise of inherent authority to enter summary judgment sua sponte without disturbing into whether any of the circumstances set forth in [references omitted]. Nonetheless, "[b]ecause of their very nature, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 | Should a court demonstrate that some specific circumstance exists before it may resort to its inherent authority to dismiss an action for want of prosecution? | 04086I.docx | LEXALEXIE-00163865 LEXALEXIE-00163866 | Condensed, S/A, Sub 0.7 | | 0 | 1 | 1 | 1 | |
| 15941 | In re Ryan D., 100 Cal. App. 4th 854 | 3.77E+11 | Section 422 does not require that a threat be personally communicated to the victim by the person who makes the threat. West's Ann.Cal.Penal Code § 422.Although Penal Code section 422 does not require that a threat be personally communicated to the victim by the person who makes the threat, it targets only those who try to instill fear in others." (People v. Felix (2001) 92 Cal.App.4th 905, 913, 112 Cal.Rptr.2d 311.) In other words, section 422 does not punish such things as "mere angry utterances or ranting soliloquies, however violent." (People v. Teal (1998) 61 Cal.App.4th 277, 281, 71 Cal.Rptr.2d 644 Accordingly, where the accused did not personally communicate a threat to the victim, it must be shown that he specifically intended that the threat be conveyed to the victim. (People v. Felix, supra, 92 Cal.App.4th at p. 913, 112 Cal.Rptr.2d 311.) In re David L., supra, 234 Cal.App.3d at p. 1659, 286 Cal.Rptr. 398.) | Criminal threat statute does not require that threat be personally communicated to the victim by the person who makes the threat? | 04700I.docx | LEXALEXIE-00163423 LEXALEXIE-00163424 | Condensed, S/A, Sub 0.84 | | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15932 | Salvatierra v. Calderon, 836 So.2d 149 | 135+2 | Residence of itself does not constitute domicile, but it has been one of the important elements in determining question of domicile. | Residence of itself does not constitute domicile, but it has been one of the important elements in determining question of domicile. … Gladney, 213 La. 993, 1002, 97 So. 16, 19 (1923). "A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain." | Is residence one of the important elements in determining question of domicile? | Domicile - Memo 71 - C NFC_67250.docx | ROSS 000292873 | Condensed, SA | 0.65 | 0 | 1 | 1 | 1 | |
| 15933 | State v. Schubert, 212 N.J. 295 | 135H+1 | A core principal of the jurisprudence of England and America is that no man can be twice lawfully punished for the same offense. | An individual's right against being placed in jeopardy twice for the same offense is both a common law and a constitutional right. State v. Laird, 25 N.J. 298, 303, 135 A.2d 859 (1957). A core principal of "The jurisprudence of England and America … is that no man can be twice lawfully punished for the same offense…" A guarantee against double jeopardy is contained in both the Fifth Amendment to the United States Constitution and Article I, paragraph 11 of the New Jersey Constitution. There is no distinction in the protections afforded by one provision as opposed to the other … and thus "[o]ur State's double-jeopardy jurisprudence mirrors federal law." State v. Kelly, 201 N.J. 471, 484, 992 A.2d 776 (2010)… | Can a man be twice lawfully punished for the same offense? | 01638.docx | LEGALEASE 00165383-LEGALEASE 00165384 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 15934 | 28 Mott St. Co. v. Summit Imp. Corp., 59 Misc. 2d 559 | 185+12(12) | Where entry on leased premises was pursuant to an informal oral agreement, which was barred by Statute of Frauds, the tenancy created was a "tenancy at will". | After the abandonment by the parties of any attempt to close the lease, there is no question that the subsequent course of conduct resolved into a tenancy agreement. The entry on the premises was in pursuance of an informal oral agreement, barred by the Statute of Frauds. The tenancy created in such circumstances is a tenancy at will (Laughran v. Smith, 75 N.Y. 205, Clark v. Jones…) | Is a tenancy created by a oral agreement treated as a tenancy at will? | 02026.docx | LEGALEASE 00164967-LEGALEASE 00164968 | Condensed, SA, Sub | 0.62 | 0 | 1 | 0 | 1 | |
| 15935 | In re AG, 21 N.J.2d 355 | 135H+5.1 | The state constitution provides the same double jeopardy protections as the federal constitution, proscribing both successive prosecution and successive punishment for the same offense. | Accordingly, the Clause serves the function of preventing both successive prosecutions and successive punishment for the same offense. United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) citing Pearce. The Ohio Constitution also provides the same double jeopardy protections as the United States Constitution for proscribing both successive prosecution and successive punishment for the same offense. Article I, Section 10; State v. Moss, 69 Ohio St.2d 515, 518, 433 … | What are the constitutional protections double jeopardy provides? | 04104.docx | LEGALEASE 00164451-LEGALEASE 00164452 | Condensed, SA, Sub | 0.55 | 0 | 1 | 0 | 1 | |
| 15936 | Gwinn v. State, 144 A.3d 717 | 360+4.1(2) | The Double Jeopardy Clause of the Fifth Amendment is fully applicable to state criminal proceedings; the double jeopardy prohibition is also part of the common law of Maryland. | Our conclusion that an objection to legally inconsistent verdicts must be lodged before the verdicts become final and the jury has been discharged is completely consistent with the prohibition on double jeopardy of the Fifth Amendment to the United States Constitution and Maryland common law. See, e.g., Maryland case. The Double Jeopardy Clause prohibits unequivocally the retrial of a criminal defendant following the judgment of acquittal. State v. Hemple, 441 Md. 549, 554, 64 A.3d 630, 593 (2015) (emphasis added) (citation omitted); see also Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). If the innocence of the [defendant] has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." (Emphasis added.) | Is the double jeopardy prohibition part of the common law? | 04104.docx | LEGALEASE 00164459-LEGALEASE 00164460 | Condensed, SA, Sub | 0.77 | 0 | 1 | 0 | 1 | |
| 15937 | Independent Technical Services v. Campoli Eqp., 812 A.2d 1238 | 307A+563 | To court, an all judiciary, has a duty to encourage the timely resolution of all disputes. | An order terminating a action for inactivity will not be reversed absent the court has abused its discretion. See, e.g., Gonzales, 645 Pa.Super. 237, 645 A.2d 28 (1984), appeal denied, 539 Pa. 680, 632 A.2d 1325 (1994). The trial court, as all judiciary, has a duty to encourage the timely resolution of all disputes. It is the policy of the unified judicial system to bring each pending matter to a final conclusion as promptly as is possible consistently with the character of the matter and the resources of the system. Where a matter has been inactive for an unreasonable period of time, the trial court, in its own motion, shall enter an order terminating the matter. | "Do courts, an all judiciary, have a duty to encourage the timely resolution of disputes? | Pretrial Procedure - Memo 21217 - C - DHA_67311.docx | ROSS 000294715 | Condensed, SA | 0.86 | 0 | 1 | 1 | 1 | |
| 15938 | Johnson-Snodgrass v. KTAD, 75 S.W.3d 684 | 307A+76.76 | A party that be provided with adequate notice of the trial court's intent to dismiss for want of prosecution under its inherent authority, i.e., for failure to diligently prosecute case, instead of for a violation of rules of civil procedure governing dismissal for want of prosecution. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | A trial court has the inherent authority to dismiss a case that has not been diligently prosecuted. See, e.g., Tex. R. Civ. P. 165a. However, a party must be provided with adequate notice of the trial court's intent to dismiss for want of prosecution under its inherent authority. See also Texas Mut. Ins. Co. v. Olivas, 195 S.W.3d 704 (1999) (Jones, J.). Notice that a case may be dismissed for inherent failure to diligently prosecute by rule 165a, does not constitute adequate notice that the trial court may exercise its inherent authority to dismiss a case for want of prosecution. | Does a court have the inherent authority to dismiss a case that has not been diligently prosecuted? | 04 0909.docx | LEGALEASE 00164898-LEGALEASE 00164899 | Condensed, SA, Sub | 0.5 | 0 | 1 | 0 | 1 | |
| 15939 | Skipper v. State, 257 Ga. 802 | 353H+76 | Other than penetration of the female sex organ by male sex organ, infliction of physical injury is not element of offense of rape. O.C.G.A. § 16-6-1. | Other than the penetration of the female sex organ by the male sex organ, the inflection of physical injury is not element of offense of rape. OCGA *16971; Seeney v. State, 326 Ga.App. 528(2), 288 S.E.2d 161 … | Is physical injury an element of rape? | Sex Offenses - Memo 22 86_67514.docx | ROSS 000294514-ROSS-000294515 | Condensed, SA, Sub | 0.35 | 0 | 1 | 0 | 1 | |
| 15940 | Ex parte Ortiz, 973 S.W.2d 560 | 135H+47 | Jeopardy attaches in a jury trial when the jury is empaneled and sworn; in a bench trial in federal court, jeopardy attaches when the judge begins to receive evidence against the defendant. | In state court, jeopardy attaches in bench trial when the defendant pleads to the indictment. U.S.C.A. Const.Amend. 5. Jeopardy attaches in a jury trial when the jury is empaneled and sworn; in a bench trial in federal court, jeopardy attaches when the judge begins to receive evidence. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). … | Will jeopardy attach in case of bench trial when the defendant pleads to the indictment? | 03467.2.docx | LEGALEASE 00165067-LEGALEASE 00165068 | Condensed, SA, Sub | 0.85 | 0 | 1 | 0 | 1 | |

2805

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,673 | 22,876 | 9,029 |
| 119131 | State v. Juarez, 133 Wash. App. 881 | 135H+59 | | Jeopardy attaches after a jury is selected and sworn. It is not necessary that argument or testimony be presented. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, § 9. | Is it necessary to present testimony or argument once jeopardy attaches? | 014764.docx | USGAEAE-00160020 USGAEAE-00160021 | Condensed, SA, | 0.78 | 0 | 1 | | 1 | 1 |
| 119132 | U.S. ex rel. Rogers v. LaVallee, 517 F.2d 1330 | 135H+100.1 | | Verdict of acquittal, though not followed by judgment, is bar to subsequent prosecution for the same offense even though acquittal may appear to be based on erroneous charge. | Is a verdict of acquittal a bar to a subsequent prosecution for the same offense? | 016142.docx | USGAEAE-00165889 USGAEAE-00165890 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 119133 | Peavy v. State, 794 N.E.2d 892 | 135H+99 | | "Necessity," for purposes of manifest necessity for a mistrial, such that double jeopardy does not attach, is not to be interpreted literally; there need be only a "high degree" of necessity before concluding that a mistrial is appropriate. U.S.C.A. Const.Amend. 5. | Is a "high degree" of necessity sufficient to conclude that a mistrial is appropriate? | Double Jeopardy Memo 837 - C MO_07912.docx | R055-00100709 R055-00100702 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 119134 | State v. Lotell, 103 So. 3d 1129 | 135H+5.1 | | Double Jeopardy Clause protects the accused against multiple punishments for the same offense as well as a second prosecution for the same offense after acquittal or conviction. U.S.C.A. Const.Amend. 5. | Do federal and state constitutions provide that no person shall be put in jeopardy twice for the same criminal offense? | Double Jeopardy Memo 959 - C - SK.docx | USGAEAE-00055583 USGAEAE-00055584 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 119135 | Bies v. Bagley, 519 F.3d 324 | 135H+1 | | Double Jeopardy Clause does not allow a state to prevent relitigation of an issue. U.S.C.A. Const.Amend. 5. | Does double Jeopardy Clause allow a state to prevent relitigation of an issue? | 016559.docx | USGAEAE-00165359 USGAEAE-00165360 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 119136 | In re Commercial Money Ctr., 350 B.R. 465 | 34SK+10 | | Labels cannot change the true nature of underlying transactions as sales or loans for security. | Can labels change the true nature of underlying transactions as sales or loans for security? | 042811.docx | USGAEAE-00160350 USGAEAE-00160351 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 119137 | People v. Crane, 308 Ill. App. 3d 675 | 135H+100.1 | | Where the defendant is acquitted of an offense, the bar of double jeopardy prevents a person from being tried or prosecuted a second time for the same offense. U.S.C.A. Const.Amend. 5, S.H.A. Const. Art. 1, § 10. | Regardless of whether it is the state or the defendant seeking a mistrial, does double jeopardy principles preclude the state from reprosecuting the defendant? | 015668.docx | USGAEAE-00164407 USGAEAE-00164408 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

2806

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15938 | Simmonds v. State, 799 P.2d 1210 | 135H+1 | The double jeopardy provisions of the Fifth Amendment to the United States Constitution and Article I, §§ 7 and 14 of the Wyoming Constitution have the same meaning and are coextensive in application. Lauthern v. State, 769 P.2d 350, 353 (Wyo.1989); Sigma v. State, 764 P.2d 1344, 1350 (Wyo.1977). Each provision affords three distinct protections to the accused. Each protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. Lauthern, 769 P.2d at 353; Howard v. State, 762 P.2d 28, 30 (Wyo.1988); Jerome v. State, 752 P.2d 1030; Thomas, 491 U.S. 376, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). It is the third of these protections which appellant claims was denied him. | Double jeopardy provision of State and Federal Constitutions have same meaning and are coextensive in application; each protects against second prosecution for same offense after acquittal, second prosecution for same offense after conviction, and multiple punishments for same offense. U.S.C.A. Const.Amend. 5; Const. Art. 1, § 11. | Do the federal and the state double jeopardy provision have the same meaning? | Double Jeopardy Memo 639 - C - PC_68416.docx | ROSS 000192044 ROSS-000192045 | Condensed, SA, Sub 0.7 | | 0 | 1 | | 1 | 1 |
| 15939 | Teulton Ins. Co. v. Berry, 901 F. Supp. 322 | 13+27(1) | The crux of the issue in this case hinges first on ascertaining the nature of a bad faith cause of action against an insurer for failure to settle and then discerning the Florida choice of law rule applies. Beatty v. College Centre, 613 So.2d 52, 53 (Fla. 4th DCA 1992) (citing Acme Circus Operating Co., Inc. v. Kuperman, 711 F.2d 1538, 1540 (11th Cir.1983)). Upon review of the case law, the court determines that the nature of a cause of action against an insurer for bad faith failure to settle is an contracts. Particularly, the Florida Supreme Court's decision in Government Employees Ins. Co. v. Grounds, 332 So.2d 13 (1976) makes it clear that because an insurer's duty to its insured to act in good faith in settling a third party insurance claim is bottomed on the insurance contract between the parties, and that Florida law has long accepted that a cause of action in bad faith, for choice of law purposes, is an action ex contractu rather than tort. | Under Florida law, nature of cause of action against insurer for bad faith failure to settle is ex contractu and, thus, sounds in contract, not tort. | Is a bad faith claim against an insurer an action ex contractu? | Action - Memo 961 - C - JP4EoUCY9-qPCi2OxvqXsUsWiMPFs_Ob0B-.docx | ROSS-000000536 ROSS-000000004 | Condensed, SA, Sub 0.84 | | | 1 | | 1 | 1 |
| 15940 | State v. Ambrose, 598 P.2d 354 | 135H+98 | In State v. Whitman, the trial court became incensed at counsel for defendant, and discharged the jury over defendant's objection. This court held the state had a duty to protect defendant from the discharge operated in an acquittal, declaring: There are cases where a jury may be discharged before rendering a verdict and defendant again be put upon trial, but this case is not one of them. Here there was no apparent reason for declaring a mistrial and discharging the jury, except that the court was displeased with the verdict the jury was about to render. Under such circumstances, to hold that a mistrial and discharging the jury were a manifest necessity and not properly precluded a retrial, would be but to offer a direct encouragement to judicial tyranny and oppression, and an opportunity to the state to perfect its case against a defendant. [914] Applying the foregoing principles to the case at hand, we believe the jury was unnecessarily discharged. Here, as in State v. Whitman, the record does not reveal a determination that discharging the jury was the only reasonable alternative to insure justice under the circumstances. | "Ought a defendant not to be once tried before a jury of competent officers when, once defendant's objection, a jury has been attempted hasty mis-prosecution on basis of comments made by prosecutor or inquired to examine the jury and discharged because a court did not like counsel's conduct?" | Can a dismissal may be conditioned upon the refilling of the action in an alternate forum? | Double Jeopardy Memo 579 - C - 5Rtll.docx | LEGALEASE-00056362 LEGALEASE-00056363 | Condensed, SA, Sub 0.49 | | | 1 | | 1 | 1 |
| 15941 | United Capital Ins. Co. v. Brunswick Ins. Agency, 144 Ohio App. 3d 595 | 307A+692 | The Ohio Supreme Court has stated that a dismissal may be conditioned upon the refilling of the action in the alternate forum. (Emphasis added.) Chambers v. Merrell-Dow Pharmaceuticals, Inc. (1988), 35 Ohio St.3d 123, 127, 519 N.E.2d 370, 373-374. Other conditions may also be imposed. (d.) Other courts, both state and federal, have used this to attach specific conditions to their orders of dismissal. See, e.g., Watson v. Driver Mgt., Inc. (1994), 97 Ohio App. 3d 509, 512, 646 N.E.2d 1187, 1188 (1986); the defendant's explicit agreement to not assert a statute of limitations defense if the action is refiled in Nebraska within 60 days from the date of this Order. | A dismissal may be conditioned upon the conditions may also be imposed. | Can a dismissal be conditioned upon the refilling of the action in an alternate forum? | 040B50.docx | LEGALEASE-00107083 LEGALEASE-00107084 | Condensed, SA, Sub 0.8 | | | 1 | | 1 | 1 |
| 15942 | Mountain View/Evergreen Imp. & Serv. Dist. v. Brooks Water & Sewer Dist., 896 P.2d 1355 | 371+2016 | The primary reason for describing such districts as political subdivisions is to justify the exclusion of taxes for those parts of improvements. In its convenient to denominate such districts as "governmental subdivisions," as in order to validate those statute provisions which provide for taxation of the residents of the district. This is noted simply to point out the specific different officials of a state, a county, or a municipality can authorize taxation for public as a whole. | Only duly elected government officials of state, county, or municipality can authorize taxation for public as a whole. | Who can authorize taxation for public as a whole? | Taxation - Memo 1324 - C - AD_68518.docx | ROSS-000194205 ROSS-000194206 | Condensed, SA | | 0.76 | | 1 | | 1 | 1 |
| 15943 | State ex rel. Bd. of Health Ctr. Trustees of Clay Cty. v. City, Comm'r of Clay Cty., 394 So.2d 427 | 371+2016 | Article 4, section 1, of the Missouri Constitution gives the power to tax. In addition to the general assembly, to "counties and other political subdivisions when power granted to them by the general assembly for legislative purposes." In other words, Article X, section 1, gives the power to tax political subdivisions which have power to tax. Whereas political subdivisions' power to tax is contingent upon a grant of authority to tax by the legislature, and section 205 (Art X such as a grant. Thus taxing power of the board is therefore within the taxing power of the constitution. The Commission's point is denied. | Political subdivision's power to tax is contingent upon a grant of authority to tax by the legislature. V.A.M.S. Const. Art. 6, § 7; Art. 10, § 5, 1, 15. | What is contingent upon grant of authority to tax by the legislature? | Taxation - Memo 1325 - C - AD_68518.docx | ROSS-000194209 ROSS-000194210 | Condensed, SA | | 0.78 | | 1 | | 1 | 1 |
| 15944 | Greater Poughkeepsie Library Dist. v. Town of Poughkeepsie, 81 N.Y.2d 574 | 371+2016 | The taxing power may be delegated to legislative bodies of municipalities and quasi-municipal corporation. Matter v. City of Rochester, 99 N.Y.2d 247, 253, 491 N.Y.S.2d 128, 490 N.E.2d 717; Matter of United States Steel Corp. v. Gerosa, 7 N.Y.2d 454, 459, 199 N.Y.S.2d 45, 166 N.E.2d 489, supra; Gautier v. Ditmar, 204 N.Y. 20, 24, 97 N.E. 464, see also, 16 McGuffie, Municipal Corporation " 44.07, at 26 [3rd ed.]. The power to tax may not, however, be delegated to administrative agencies or other governmental departments (Gautier v. Ditmar, 204 N.Y. at 27-28, 97 N.E. 464; Matter of Brooklyn Hts. R. Co. v. New York, 69 N.Y. 851, 855, 141 N.E. 911; Matter of Ingersoll v. Nassau Elec. R. Co., 157 N.Y. 453, 464, 52 N.E. 545, 43 L.R.A. 236, 312 N.Y. 309 N.E.2 564). | Power to tax may not be delegated to administrative agencies or other governmental departments. McKinney's Const. Art. 3, § 1; Art. 16, § 1. | Can the power to tax be delegated to administrative agencies or other governmental departments? | Taxation - Memo 1326 - C - AK_68522.docx | ROSS-000191477 ROSS-000191478 | Condensed, SA, Sub 0.8 | | | 1 | | 1 | 1 |

Appendix D

2867

| ROW# | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13945 | City of Camden v. Byrne, 82 N.J. 133 | 371>2016 | Even "an impost for county and township purposes is a State tax, it can be imposed by no other authority." Camden & Amboy R. Co. v. Comm'rs of Appeal, 18 N.J. 71, 72 (Sup.Ct.1860) (emphasis added); see Robinson v. Cahill, 62 N.J. 473, 487, 303 A.2d 273 (1973), Cert. den. Robinson v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973) (Robinson I ); see also City v. Martin, 126 N.J.L. 353, 360-361, 19 A.2d 40 (E. & A. 1941). | Even an impost for county and township purposes is a state tax, it can be imposed by no other authority. | Is an impost for county and township purposes a state tax? | 04589.docx | LEGALEASE 00166619-LEGALEASE 00166620 | Condensed, SA, SA0.6 | 0.76 | 0 | 1 | | 1 | |
| 13946 | Welch v. Town of Ludlow, 136 Vt. 83 | 371>2016 | In Vermont, where we have no home rule constitutional provision, a town has only those powers specifically authorized by the legislature. Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484, --- 380 A.2d 64, 66 (1977). The legislature, having the power to tax, can confer that power upon the towns in such measure as it pleases Cavanty-Gould Co. v. Village of Springfield, 83 Vt. 396, 401, 76 A.2d 82 (1910). Clearly the power to tax cannot be denied unless the legislature has given it to the town. | The legislature, having the power to tax, can confer that power upon towns in such such measure as it pleases; a town has only those powers specifically authorized by the legislature, and it cannot deny unless the legislature has granted the power. | Can the legislature confer the power to tax upon towns in such such measure as it pleases? | 04693.docx | LEGALEASE 00166623-LEGALEASE 00166624 | Condensed, SA, SA0.57 | 0.57 | 0 | 1 | | 1 | |
| 13947 | Smith v. State Indus. Comm'n, 1938 OK 167 | 377(>121) | Jimmy Lewis Smith argues that the statements he made to the deputy sheriff are actionable he were nothing but "drunken ramblings." The statements resulted in his arrest and conviction for the offense of corruption to threat against a public servant. The offense of corruption by threat involves a threat made with an intent to influence a public servant to do, or not do, some discretionary act ... | The offense of corruption by threat against a public servant involves a threat made with an intent to influence a public servant to do, or not do, some discretionary act. | "What does the offense of ""corruption by threat"" mean? | Threats - Memo #62 - C. (8_16)b3.docx | ROSS 00227812-LEGALEASE 00227812 | Condensed, SA, SA0.62 | 0.62 | 0 | 1 | | 1 | |
| 13948 | Matter of R.O., 496 S.W.3d 130 | 3.77H>D | In point of this said point, R.O. argues that there is no evidence to support a finding that R.O. intended to or was capable of carrying out his threat to bring said harm to school and shoot people, and thereby he did not commit the offense whether the accused had the capability or the intention to carry out his threat." Walker v. State, 327 S.W.3d 790, 794 (Tex.App.-Fort Worth 2010, no pet.) (citing Olivas v. State, 203 S.W.3d 341, 349 (Tex.Crim.App.1982)). Thus, we overrule this portion of R.O.'s point. | Is termaterial to a threat offense whether the accused had the capability or intention to carry out his threat? | Is it material to a threat offense whether the accused has the capability or intention to carry out his threat? | 04811.docx | LEGALEASE 00167371-LEGALEASE 00167372 | Condensed, SA, SA0.77 | 0.77 | 0 | 1 | | 1 | |
| 13949 | Caldwell v. Corbin, 152 Ga. App. 153 | 39274(41) | The statute under consideration as well as that of the Administrative Procedure Act are in derogation of the common law and must be strictly construed and followed in accordance with numerous decisions of our appellate courts. See Watson v. Thompson, 185 Ga. 402, 407, 195 S.E. 190; Foster v. Vickery, 202 Ga. 55, 65, 42 S.E.2d 117; Bank v. City of Albany, 125 Ga.App. 558, 561, 188 S.E.2d 245; Owens v. Rateree Farms No., 127 Ga.App. 68, 195 S.E.2d 18 [1]. In here noted that under the Administrative Procedure Act in the case of judicial review of contested cases (Code Ann. s 3A-120(a)(b), 1964, pp. 338, 354, 1975, pp. 404, 410, 1975 p. 130, 1978, p. 1962), that if application is made to the court for leave to present additional evidence, "and it is shown to the satisfaction of the court that the additional evidence... The court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and may file that evidence and any modifications, new findings, or decision with the reviewing court" (emphasis supplied) it is also here noted (Code Ann. s3A-120(g)) thereof that the court shall conduct a review without a jury and shall be confined to the record. and in cases of alleged irregularities in procedure before the agency, not shown in the record "proof thereon may be taken in the court." However, this last section of the judicial review statute does not authorize a consideration of evidence which goes to the merits as was done here by the court. | Administrative Procedure Act statute governing review of findings of Board of Review of Employment Security Agency is in derogation of common law and must be strictly construed. Code, §3-A-101 et seq., 3-A-120. | Is Administrative Procedure Act construed strictly? | 04773.docx | LEGALEASE 00077128-LEGALEASE 00077129 | Condensed, SA, SA0.87 | 0.87 | 0 | 1 | | 1 | |
| 13950 | Cole v. State, 92 Okla. Crim. 316 | 349>105.1 | We do not believe that an affidavit can be made by proxy, for it must do some unequivocal act in the presence of the magistrate showing an indication that he intended to take the oath. Farrow v. State, supra. (Louisiana v. Sopo, 45 So.2d 314.) | An affidavit to support a warrant cannot be made by proxy, for affiant must do some unequivocal act in presence of magistrate showing an indication that he intended to take oath. | Can an affidavit be given by a proxy? | 04620.docx | LEGALEASE 00077933-LEGALEASE 00077934 | Condensed, SA, SA0.31 | 0.31 | 0 | 1 | | 1 | |
| 13951 | Creative Ventures v. Jim Ward & Assocs., 195 Cal. App. 4th 1430 | 38>100 | It follows that, when one negotiates an instrument, one transfers the instrument itself. An assignment, on the other hand, usually refers to the transfer of a cause of action or right or interest in property (Comm'l Discount Co. v. Cowen (1941) 18 Cal.2d 610, 614, 116 P.2d 599) or, in the case of assignment, the assignor's rights are simply passed to the assignee, and the assignee may have them. Thus, the general rule is that the assignee is subject to all equities and defenses existing against the assignor at the time of, or before, the assignment. (See Cal. Jur., Bills & Notes " 316, citing McGarvey v. Hall (1861) 23 Cal. 140, 1863 WL 837; Civ.Code, " 1459.) An assignee " "'stands in the shoes' " " of the assignor, taking his or her rights and remedies subject to any defenses the obligor has against the assignor prior to notice of the assignment. (Boyd Bros. Export Financial Co. v. Broadway Real Estate & Bank Corp. (1981) 174 Cal.App.3d 794, 800, 220 Cal.Rptr. 355; Music Acceptance Corp. v. LoFing (1995) 32 Cal.App.4th 610, 622, 39 Cal.Rptr.2d 159; Nex 126; Contracts " 335.) | The general rule is that the assignee takes subject the same footing with regard to the defenses existing in favor of the maker. West's Ann.Cal.Code § 1459. | Does the assignee stand on the same footing with regard to the maker? | 06466.docx | LEGALEASE 00077767-LEGALEASE 00077768 | Condensed, SA, SA0.68 | | 0 | 1 | | 1 | |

2808

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15952 | Henderson v. U.S Patent Comm'n, Ltd., 188 F. Supp. 3d 798 | 25T+112 | "An agreement to arbitrate is treated like any other contract," and a "party can be forced to arbitrate only those matters that he or she has agreed to submit to arbitration." Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc., 800 F.3d 853, 857 (7th Cir.2015). Accordingly, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Oxford Health Plans LLC v. Sutter, """ U.S. """", 133 S.Ct. 2064, 2067, 186 L.Ed.2d 113 (2013) (quoting Stolt"Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (7th Cir.2010)) (internal quotation marks omitted). The FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the] court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. " 4. | A party may not be compelled under the Federal Arbitration Act (FAA) to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so. 9 U.S.C.A. S 4. | Can parties be forced to arbitrate on a class-wide basis? | 05001.docx | LEGALEASE-00078087-LEGALEASE-00078088 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15953 | State v. Yell, 104 N.H. 87 | 146+27 | The word "fraudulent" in an indictment charging embezzlement includes an "intent" to do the act and is descriptive of the motive. See 17A Words & Phrases, "Fraudulently," intent (p. 164); People v. Swenson, 127 Cal.App.2d 658, 274 P.2d 229. | Word "fraudulent" in indictment charging embezzlement includes "intent" to do act and is descriptive of motive. | What does the word fraudulent imply in an indictment charging embezzlement? | 05821.docx | LEGALEASE-00080903-LEGALEASE-00080904 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 15954 | United States v. Henry, 111 F.3d 111 | 24+769 | The Ninth Circuit analyzed the legislative history of " 1326 in Pena"Cabanillas and found nothing to support the proposition that the government must prove specific intent. The power of Congress to control immigration is plenary and vests Congress with broad discretion in defining offenses in the area. "The right to exclude or to expel all aliens or any class of aliens, absolutely or upon certain conditions, is an inherent and inalienable right which is essential to the safety, independence and welfare of every sovereign nation. Section 1326 is not based upon any common law crime but is a regulatory statute enacted to assist in the control of unlawful immigration by aliens. Thus, the Ninth Circuit concluded that the offense was a typical mala prohibita offense, and since it denounces the doing of an act as criminal, if a defendant voluntarily does the forbidden act, the law implies the intent. Moreover, several other provisions of the same statute prohibit "wilful" or "knowing" actions. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in excluding the particular language." | Power of Congress to control immigration is plenary and vests Congress with broad discretion in defining offenses in the area. | Does Congress have plenary power over immigration? | Aliens Immigration and Citizenship - Memo 1 - RK.docx | ROSS-003324348-ROSS-003324349 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 15955 | Marshall v. Wait, 628 F.2d 1255 | 216+3 | The rationale of the Biswell-Colonnade doctrine relates back to our fundamental inquiry in all fourth amendment cases: the individual's reasonable expectation of privacy. An individual who enters into a particular industry is put on notice of the likelihood of unannounced nonconsensual warrantless inspections by both the history and degree of regulation. By accepting the benefits of the trade, the entrepreneur also accepts the burden of regulation and thereby consents to the necessity of inspection. See Almeida-Sanchez v. United States, 413 U.S. 266, 270, 271, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Consequently, there can be no reasonable expectation of privacy, at least as to administrative inspections. | An individual who enters a particular industry is put on notice of the likelihood of unannounced nonconsensual warrantless inspections by both the history and degree of regulation and, by accepting the benefits of the trade, he also accepts the burden of regulation and thereby consents to the necessity of inspection; consequently, there can be no reasonable expectation of privacy at least as to administrative inspections. U.S.C.A.Const. Amend. 4. | Is an individual operating within a highly regulated industry bound to administrative inspection? | 00827.docx | LEGALEASE-00083971-LEGALEASE-00083972 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 15956 | Levine v. 418 Meadow St. Assocs., 163 Conn. App. 701 | 30+1 | The right to an appeal is not a constitutional one. It is but a statutory privilege available to one who strictly complies with the statutes and rules on which the privilege is granted." Chanosky v. City Building Supply Co., 152 Conn. 449, 451, 208 A.2d 337 (1965). However, our Supreme Court stated in Pritchard v. Pritchard, supra, 281 Conn. at 275, 914 A.2d 1025, that "the forms for appeals and amended appeals do not in any way implicate appellate subject matter jurisdiction. They are merely the formal, technical vehicles by which parties seek to invoke that jurisdiction. Compliance with them need not be perfect; it is the substance that matters, not the form." Cf. Rocque v. DeMilo& Co., supra, 85 Conn.App. at 527, 857 A.2d 976 (claim not listed on appeal form but raised initially in appellate brief distinguished from technical defect and considered "a defect of substantive dimension that implicates this court's jurisdiction to entertain the claim"). | The right to an appeal is not a constitutional one; rather, it is but a statutory privilege available to one who strictly complies with the statutes and rules on which the privilege is granted. | Is right to appeal constitutional? | 05111.docx | LEGALEASE-00084197-LEGALEASE-00084198 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 15957 | Wilmington Tr. Co. v. Clark, 289 Md. 313 | 368+1 | Under the English common law, suicide was a felony punishable by ignominious burial on the highway and forfeiture of the suicide's goods and chattels to the king. R. Perkins, Criminal Law 82 (2d ed. 1969). Suicide is no longer a crime either in England or the majority of American jurisdictions, and no American jurisdiction punishes a suicide through forfeiture of goods or any other means. See Comment, The Punishment of Suicide A Need for Change, 14 Vill.L.Rev. 463 (1969); 7 N.C. Central L.J. 156 (1975). Whatever justifications are advanced for deeming suicide an unlawful act, it seems unlikely that protection of a former wife who was not physically present when the act occurred would be included. The State may have an interest in preserving the lives of its citizens, but it does not confer automatically a tort cause of action upon those persons who believe they have been injured by the illegal act. We hold that Ruth cannot premise a tort cause of action on the mere fact that suicide is an unlawful act, and the trial court was in error in concluding that John owed Ruth a duty not to commit an unlawful act suicide. | Under the English common law, suicide was a felony punishable by ignominious burial on the highway and forfeiture of the suicide's goods and chattels to the king. | Is suicide a felony? | 05164.docx | LEGALEASE-00084199-LEGALEASE-00084200 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 22,876 | 9,073 |
| 15958 | State v. Final Exit Network, 889 N.W.2d 296 | 92 1207 | The Minnesota Supreme Court concluded in Melchert-Dinkel that the statute's "assist" prohibition is a content-based restriction and survives strict scrutiny under the First Amendment. 844 N.W.2d at 21723. The court concluded that the government has a compelling interest in preserving human life and in preventing suicide. Id. at 22 (citing Washington v. Glucksberg, 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). The court further concluded that the statute is narrowly tailored to effectuate this compelling interest. By its reference to assisting another, the statute only reaches the "targeted speech aimed at a specific individual." Id. at 22. In addition, "assist" further narrows the statute because by criminalizing only speech that "enable[s] the person to commit suicide" or "instruct[s] another on suicide methods," Id. at 23. For these reasons, the Minnesota Supreme Court concluded that the statutory prohibition against assisting suicide, combined with the statutory limitation that such enablement must be targeted at a specific individual, makes the state's narrowly tailored and limited to the point's compelling interest in the preservation of life. That statute's "assist" provision thus survives strict scrutiny and Final Exit's facial challenge to the statute. Id. | Statute criminalizing assisting suicide was narrowly tailored to serve the government's compelling interest in preventing suicide and therefore survived strict scrutiny in challenge to statute as content-based restriction violating the First Amendment, as applied right to organization's actions of advising members who committed suicide as to suicide methods, observing member's connection of suicide device, and removal and disposal of suicide equipment; state had a compelling interest in the preservation of member's life and the prevention of her suicide, despite fact that she had an incurable condition and suffered from chronic pain, and organization's argument that statute was unconstitutional because the individual suffering from speech aimed at a specific individual despite wide availability of same information from other sources was foreclosed by precedent from state supreme court that found the statute narrowly tailored. U.S. Const. Amend. 1; Minn. Stat. Ann. § 609.215(1). | Does the state have a compelling interest in preventing suicide? | 05168.docx | LEGALEASE 00084220-LEGALEASE 00084221 | Condensed_SA_Sub 0.24 | | 0 | | | 1 | |
| 15959 | Davis v. Kraft, 405 Ill. App. 3d 20 | 307A4 | Both of Ms. Davis's contentions concern whether ruling by the circuit court, which is not subject to an abuse of discretion review. ¶ "Whether a motion in limine should be granted is subject to the trial court's discretion." (Citation.) "A reviewing court will not reverse a trial court's order allowing or excluding evidence in limine absent a clear showing of an abuse of that discretion." (Citation.) Petraski v. Thedos, 382 Ill.App.3d 22, 26, 320 Ill.Dec. 244, 887 N.E.2d 24 (2008). Likewise, the decision to admit expert testimony falls within the discretion of the trial court. Petraski, 382 Ill.App.3d at 27, 320 Ill.Dec. 244, 887 N.E.2d 24. The abuse of discretion standard is "the most deferential standard of review available with the exception of no review at all." ¶ People v. Coleman, 183 Ill.2d 366, 387, 233 Ill.Dec. 789, 701 N.E.2d 1063 (1998), quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence, 13.3 § 1, at 485, 480 (1988). "An abuse of discretion occurs where no reasonable person would agree with the position adopted by the trial court." Schwartz v. Cortelloni, 177 Ill.2d 166, 176, 226 Ill.Dec. 416, 685 N.E.2d 871 (1997). Thus, a "trial court cannot be said to have abused its discretion if reasonable persons could differ as to its decision." In re Adoption of D., 317 Ill.App.3d 155, 160, 250 Ill.Dec. 648, 739 N.E.2d 395 (2000). We limit our analysis to whether the circuit court erred in allowing the defense experts to testify over Ms. Davis's objection at trial. If the circuit court erred in so instructing the jury on the use of statutory rules, logic dictates that those errors were not pretrial motions in limine could not amount to reversible error. See Magna Trust Co. v. Illinois Cent. R. Co., 313 Ill.App.3d 375, 395, 245 Ill.Dec. 715, 728 N.E.2d 797 (2000) ("Violation of a motion in limine is not per se reversible error"). | Whether a motion in limine should be granted is subject to the trial court's discretion. | 05214.docx | LEGALEASE 00084898-LEGALEASE 00084899 | Condensed_SA 0.95 | | 0 | | 1 | | |
| 15960 | Doe v. Unocal Corp., 110 F. Supp. 3d 1294 | 24+78.3 | Actionable violations of international law must be of a norm that is specific, universal, and obligatory. Id. at 1475 (citing Filártiga, 630 F.2d at 781 (2d Cir.1980). To"Even a Libyan-Aeta defines specific when it is clear that the ATCA was enacted, but as it has standard restriction of the world body. Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir.1995) (citing Filártiga, 630 F.2d at 881). The ambit of the law of nations the view also in 1789 the year the ATCA was enacted, but as it has evolved and exists among the nations of the world today. Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir.1995) (citing Filártiga, 630 F.2d at 881). | Violations of international law actionable under Alien Tort Claims Act (ATCA) must be of a norm that is specific, universal, and obligatory. 28 U.S.C.A. § 1350. | "Should a ""norm of international law"" be specific, universal, and obligatory?" | 06529.docx | LEGALEASE 00085048-LEGALEASE 00085049 | Condensed_SA_Sub 0.8 | | 0 | | | 1 | |
| 15961 | Bonetti v. MillerCorro, 2011 IL App (1st) 120431 | 307A487 | Plaintiff contends the trial court, upon reconsideration, erred in granting the summary judgment based on the terms of the parties' agreement. A section 2-619 motion to dismiss admits the sufficiency of the claim but asserts affirmative matter that defeats the claim. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, ¶ 31, 364 Ill.Dec. 40, 976 N.E.2d 318. The motion takes as true all well-pleaded facts and all reasonable inferences taken from those facts. Coghlan v. Kosharsky, 2014 IL 115506, 385 Ill.Dec. 876, 609 N.E.2d 1523 (1991). An 2-619 (West 2010). Furthermore, the court views all the pleadings and supporting documents in the light most favorable to the nonmoving party. DeGreef v. County of Rock Island, 2014 IL App (4th) 130011, 16, 385 Ill.Dec. 496, 888 N.E.2d 1523 (2014). A motion to dismiss pursuant to a section 2-619 must raise a question more. DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006). | On the motion consider all well-pleaded facts and all reasonable inferences taken from those facts as true? | 11080.docx | LEGALEASE 00094289-LEGALEASE 00094290 | Condensed_SA_Sub 0.71 | | 0 | | | 1 | |
| 15962 | Holzenbeck v. Akins, 134 So.3d 724 (La. App. 543) | 162+221(4.1) | Appellant's strongest contention is that the check was given in consideration of the relinquishment of his share of the father's estate, a consideration that was formed with decedent which is binding on her estate. This contract obligation is not revoked by the promisor's death. Code of Civil Procedure art. 1897, supra; Litvinoff, 6 Louisiana Civil Law Treatise (2001) § 77.8(1), 40.9 E. 782; Young v. Lewis, 70 La.App. 627, 219 S.2d 267. In such cases "the check is not considered as evidence in support of the payee's claim of indebtedness against the stepmother but not as evidence of the indebtedness itself, 5 113-1525. | Where a check was given by payee's stepmother in consideration of payee's relinquishment of his share of his father's estate, a contract was formed with stepmother which was binding on her estate and which was not revoked by stepmother's death, and in such case the check might be used in support of payee's claim of indebtedness against the stepmother but not as evidence of the indebtedness itself, § 113-1525. | Can a check be used as evidence in support of the payees claim of indebtedness? | 00950S.docx | LEGALEASE 00125076-LEGALEASE 00125077 | Condensed_SA_Sub 0.42 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,079 |
| 13963 | Champion Auto Sales v. Polaris Sales Inc., 943 F. Supp. 2d 346 | 2571-139 | The FAA expresses a strong federal policy favoring arbitration. Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir.2010). The FAA states that arbitration agreements are valid, enforceable and irrevocable, unless grounds exist for their revocation of any contract. 9 U.S.C. § 2; see also Ragone, 595 F.3d at 121. In keeping with this policy, the Court resolves doubts in favor of arbitration and enforces privately negotiated arbitration agreements in accordance with their terms. See Collins & Aikman Prod. Co. v. Maq. Sev., Inc., 58 F.3d 16, 19 (2d Cir.1995). | Under the Federal Arbitration Act (FAA), the Court resolves doubts in favor of arbitration and enforces privately negotiated arbitration agreements in accordance with their terms. 9 U.S.C.A. § 2. | How do courts enforce privately negotiated arbitration agreements? | 007003.docx | LEGALEASE 0029063 LEGALEASE 0029084 | Condensed, SA, Sub 0.67 | | 0 | | | 1 | 1 |
| 13964 | Wyoming Sawmills Inc. v. U.S. Forest Serv., 383 F.3d 1241 | 1456-679 | Our standard of review is a deferential one, and we will reverse the Forest Service's action only if it is "arbitrary, capricious, otherwise not in accordance with the law, or not supported by substantial evidence." Citizens' Comm. to Save Our Canyons v. United States Forest Service, 297 F.3d 1012, 1021 (10th Cir.2002) (quoting Hoyt v. Babbitt, 129 F.3d 1377, 1382 (10th Cir.1997)). No deference is due to the district court's decision because we consider the matter anew. | United States Forest Service's action will be reversed only if it is arbitrary, capricious, otherwise not in accordance with the law, or not supported by substantial evidence. | What is the standard of review for reviewing the Forest Services action? | 047588.docx | LEGALEASE 0019139 LEGALEASE 0019160 | Condensed, SA, Sub 0.64 | | 0 | | | 1 | 1 |
| 13965 | Ellis v. Gilbert, 19 Utah 2d 189 | 303d-742.1 | Capiotis in the thought just expressed is the fact that among the purpose of the proceedings prior to trial is the exploration of the possibility of resolving the dispute without trial. It seems indisputable that the purpose of such a hearing cannot be all of the instant of facts bearing upon both of the essential aspects of the total lawsuit just mentioned, so that there can be a more realistic and meaningful discussion concerning any prospect of settlement. This view and the fact that considerations as concern of our Rules 16, which provide with respect to pretrial procedure: "The court may direct the attorneys for the parties to appear before it for a conference to consider (duct other matters as may aid in the disposition of the action. | Among the proper purposes in proceedings before trial is exploration of possibility of resolving dispute without trial. | What is among the proper purposes in proceedings before trial? | 024321.docx | LEGALEASE 0029915 LEGALEASE 0029912 | Condensed, SA, Sub 0.85 | | 0 | | | 1 | 1 |
| 13966 | E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187 | 2571-141 | Under the first theory, courts present a non-signatory from embracing a contract, and then turning its back on the portion of the contract, such as an arbitration clause, that it finds distasteful. See, e.g., American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir.1999) (non-signatory bound by contract under which it receives the direct benefit of lower insurance rates and the ability to sail under the French flag); Thomson-CSF, S.A., 64 F.3d at 778 (holding only indirect benefit insufficient to bind non-signatory against signatory). As the fourth Circuit explained, "in the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir.2000). | When the non-signatory to an arbitration agreement knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement, courts prevent a non-signatory from embracing a contract, and then turning its back on the portion of the contract, such as an arbitration clause, that it finds distasteful. 9 U.S.C.A. § 1 et seq. | Is a non-signatory to an arbitration agreement precluded from embracing a contract? | 007861.docx | LEGALEASE 0019319 LEGALEASE 0019219 | Condensed, SA, Sub 0.72 | | 0 | | | 1 | 1 |
| 13967 | Carter v. Muehlenbeck Exec. Bldg. Corp., 37 Kan. App. 2d 392 | 303d-742.1 | A similar problem was addressed by our Supreme Court in Boaldin v. Kansas Board of Regents, 242 Kan. 94, 100-01, 744 P.2d 806 (1987): "The unsettled and confused state of this case on the day of trial was due in large part to the failure to hold a pretrial conference and the subsequent pretrial order. Counsel failed to agree on the proposed pretrial order prior to trial. Both plaintiff and defendant must share the responsibility for the breakdown in the pretrial procedure and resulting confusion. Counsel, for not complying with the pretrial procedure, may have undermined the proposed pretrial order issued for the day of trial. The primary purpose of a pretrial conference is to reduce, if not eliminate, surprise and uncertainty at trial to determine exactly what issues are to be tried and what procedures are to be followed [(in Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists, Local 1304, 227 Cal.App.2d 675, 678, 39 Cal.Rptr. 64, 80 (1964), the court said: "The primary purpose of a pretrial conference is to simplify the issues, amend the pleadings where necessary, and to avoid unnecessary proof of facts at the trial. (Then, the pretrial conference is the order issued therein... is an important part of the procedural process. They are provided to acquaint each party in advance of trial to hold a position and contentions of the other parties as to matters in dispute... In all but the simplest cases, reason and common sense require that a pretrial conference be held with an opportunity for preparation by counsel. Surprise can be avoided and, as required by Supreme Court Rule 104 [199 Kan.Ct.R.Annot. 115]." | Primary purposes of pretrial conference are to reduce, if not completely remove, uncertainty from trial, to determine exactly what issues are involved, and to establish what procedures are to be followed. | What is the primary purpose of a pretrial conference? | Pretrial Procedure - Memo # 1480 - C - E5.docx | ROSS-003143519 ROSS-003314511 | Condensed, SA, Sub 0.87 | | 0 | | | 1 | 1 |
| 13968 | Wisniski v. Miles, 2002 WL 31429005 | 46H-427 | An attorney representing a partnership owes a duty of care to the partnership as an entity but ordinarily does not owe a duty of care to the individual partners. (Skarbrevik v. Cohen, England & Whitfield (1991) 231 Cal.App.3d 692, 703, 282 Cal.Rptr. 640, Responsible Citizens, et al. 231 Cal.App.3d 692, 703, 282 Cal.Rptr. 640, 647 (1993). 20 Cal.Rptr.2d 756.) A duty of care to an individual partner arises only if the partner establishes an attorney-client. | Attorney and law firm representing online must partnership in negotiations concerning its acquisition owed no duty to minority partner who, knowing them the acquisition were underway, sold his partnership interest before the acquisition occurred; minority partner beloved firm owed him duty of care individually, given the small size of the partnership, and had represented the firm on some matters since its inception, but nothing about the nature and scope of the legal representation and he having been unaware that acquisition was imminent, but neither the attorney nor the firm had actual contact with him, professionally or otherwise. West's Ann.Cal.Corp. Code § 16201; Prof.Conduct Rule 3-600(A). | Does the duty of care owed by an attorney to a partnership extend to the individual partners? | 022114.docx | LEGALEASE 0013321 LEGALEASE 0013322 | Condensed, SA, 0.29 | | 0 | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15969 | Candelario Del Moral v. UBS Financial Services Inc. of Puerto Rico, 81 F.Supp.3d 143 | 253+753 | Such processes follow an orderly sequence linked to the nature of the issues they must address, prior to a ruling. Those issues derive from the particular characteristics of the economic regimes to which the estate is subject during marriage, and following divorce. In the absence of a valid pre-nuptial agreement, the legal conjugal partnership governs the spouses' economic relationship during marriage.The partnership lasts while the marriage lasts, beginning on the day of marriage and ending on the day marriage concludes. At that point, it dissolves, giving way to a regime of community property. Montalv"n v. Rodr"guez, 161 D.P.R. 411, 420"423 (2004); Asociaci"n de Residentes v. Arsuaga, 160 D.P.R. 289, 305"306 (2003). | Under Puerto Rico law, in absence of valid pre-nuptial agreement, legal conjugal partnership governs spouses' economic relationship during marriage. | Do conjugal partnerships end when the marriage is dissolved? | 022173.docx | LEGALEASE-00133574-LEGALEASE-00133575 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15970 | Maharishi Sch. Vedic Scis. v. Connecticut Constitution Assocs. Ltd. P'ship, 260 Conn. 598 | 308+99 | Having set forth the applicable standard of review, we turn to the merits of the plaintiff's claim. It is well settled that a corporation can act only through its agents. See, e.g., Lieberman v. Reliable Refuse Co., 212 Conn. 661, 673, 563 A.2d 1013 (1989). Furthermore, it is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal, and within the scope of the agent's employment. See Connecticut National Bank v. Giacomi, 242 Conn. 17, 70, 699 A.2d 101 (1997); Hartford Accident & Indemnity Co. v. South Windsor Bank & Trust Co., 171 Conn. 63, 70, 368 A.2d 76 (1976). An agent's authority may be actual or apparent. Hallas v. Boehmke & Dobosz, Inc., 239 Conn. 658, 674, 686 A.2d 491 (1997). Actual authority exists when "[an agent's] action [is] expressly authorized by resolution of the board of directors ... [is] impliedly authorized by the board of directors or although not authorized, [is] subsequently ratified by the board of directors." Czarnecki v. Plastics Liquidating Co., supra, 179 Conn. at 268, 425 A.2d 1289. Apparent authority is that semblance of authority that a principal, through its own acts or inadvertences, causes or allows third persons to believe the principal's agent possesses. See Hallas v. Boehmke & Dobosz, Inc., supra, at 674, 686 A.2d 491. | "Apparent authority" is that semblance of authority that a principal, through its own acts or inadvertences, causes or allows third persons to believe the principal's agent possesses. | What is an apparent authority in a principal-agent relation? | 042134.docx | LEGALEASE-00133740-LEGALEASE-00133741 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 15971 | Tippett v. United States, 185 F.3d 1250 | 34+5(3) | An otherwise voluntary resignation or request for discharge is rendered involuntary if it is submitted under duress or coercion, or results from misrepresentation or deception on the part of government officers. See Scharf v. Department of the Air Force, 710 F.2d 1572, 1574 (Fed.Cir.1983); Covington v. Department of Health & Human Servs., 750 F.2d 937, 942 (Fed.Cir.1984); Christie v. United States, 207 Ct.Cl. 333, 518 F.2d 584, 588 (Ct.Cl.1975).2 Tippett asserts that his discharge was involuntary because it resulted from misrepresentations on the part of his second lawyer. Misrepresentation can be caused by providing misleading information or by failing to provide relevant information. See Covington, 750 F.2d at 943. Information is considered misleading if a reasonable person would have been misled by the representation. See id. at 942. "The misleading information can be negligently or even innocently provided; if the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary." Id. | Information is considered misleading, for purpose of claim that provision of information amounted to misrepresentation that rendered discharge involuntary, if a reasonable person would have been misled by the representation; the misleading information can be negligently or even innocently provided, and, if the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary. | Is a decision of a member of the military to resign or retire presumed to be voluntary? | 008450.docx | LEGALEASE-00134076-LEGALEASE-00134078 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15972 | Soliz v. State, 163 Tex. Crim. 508 | 110+507(7) | We observe, however, that a prosecutrix in a rape case is not an accomplice witness and a conviction for statutory rape can be sustained upon her uncorroborated testimony. Branch's P.C., Sec. 1774; Cook v. State, 88 Tex.Cr.R. 659, 228 S.W. 213; and Gill v. State, 107 Tex.Cr.R. 115, 295 S.W. 190. | A prosecutrix in a statutory rape case is not an accomplice witness and a conviction for statutory rape can be sustained upon her uncorroborated testimony. | Can a prosecutrix become an accomplice in a rape case? | 043019.docx | LEGALEASE-00134764-LEGALEASE-00134765 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 15973 | Robbins v. Allstate Ins. Co., 362 Ill. App. 3d 540 | 307A+483 | Supreme Court Rule 216(a) provides that any party "may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request." 134 Ill.2d R. 216(a). The rule continues:"Each of the matters of fact is admitted unless, within 28 after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part." 134 Ill.2d R. 216(c).Quite simply, the failure to respond to a request for admission results in the admission of the facts contained in the request. Walker v. Valor Insurance Co., 314 Ill.App.3d 55, 61, 246 Ill.Dec. 835, 731 N.E.2d 363 (2000). Such an admission may properly form the basis of a grant of summary judgment. Glasco v. Marony, 347 Ill.App.3d 1069, 1074, 283 Ill.Dec. 819, 808 N.E.2d 1107 (2004). A party having admitted a fact under Rule 216 may not later deny it at trial. In re Yamaguchi, 118 Ill.2d 417, 424, 113 Ill.Dec. 928, 515 N.E.2d 1235 (1987). Indeed, an admission made pursuant to the rule is considered a judicial admission and is thus incontrovertible, even at the summary judgment stage. Moy v. Ng, 341 Ill.App.3d 984, 988, 276 Ill.Dec. 160, 793 N.E.2d 919 (2003); see also Ellis v. American Family Mutual Insurance Co., 322 Ill.App.3d 1006, 1010, 255 Ill.Dec. 902, 750 N.E.2d 1287 (2001) ("Admissions pursuant to requests to admit constitute judicial admissions, which are binding upon the party making them; they may not be controverted at trial or in a motion for summary judgment"). | A deemed admission for failing to respond to a request for admission is a judicial admission and is thus incontrovertible, even at the summary judgment stage. Sup.Ct.Rules, Rule 216(a). | "Where a party fails to properly respond to a request to admit facts, will those factual matters in the request be deemed judicial admissions which cannot later be controverted by any contrary evidence? " | 029661.docx | LEGALEASE-00135083-LEGALEASE-00135084 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15974 | Sayers v. Artistic Kitchen Design LLC, 280 Ga. App. 223 | 307A+742.1 | | Purpose of requests for admissions to be used as a tactical device to trap unwary party or litigant? | May requests for admissions not be used as a tactical device to trap unwary party or litigant? | 029993.docx | LEGALEASE 0019171.2 LEGALEASE 0019171.3 | Condensed, SA | 0.81 | | 1 | | 1 | |
| 15975 | Morris v. McElroy, 219 Ne. 369 | 307A+735.1 | | Authority to grant or refuse continuance resides in court, not trial judge | Does the authority to grant or refuse continuance reside in court, not a trial judge? | 010073.docx | LEGALEASE 0017881 LEGALEASE 0017882 | Condensed, SA, Sub 0.79 | 0.79 | | 1 | | 1 | |
| 15976 | Tandaha v. City of Chicago, 792 F. Supp. 2d 978 | 129+150 | | Loudness, by itself, is not enough to constitute disorderly conduct under Illinois law; instead, surrounding circumstances must be considered | Is loudness, by itself, enough to constitute disorderly conduct? | 014020.docx | LEGALEASE 0018360 LEGALEASE 0018361 | Condensed, SA, Sub 0.88 | 0.88 | | 1 | 1 | 1 | |
| 15977 | Scott Re & Through Scott v. Flynt, 704 So. 2d 998 | 307A+36.1 | | Under no circumstances should a court order require plaintiff in medical malpractice or other action to release medical information unconditionally. | Should a court order or require a person to release medical information unconditionally? | Pretrial Procedure - Memo #4865 - C - VA.docx | ROSS-003291145 ROSS-003291146 | Condensed, SA, Sub 0.78 | 0.78 | | 1 | | 1 | |
| 15978 | Crapo v. Wekelegari, 207 Ga. 67 | 307A+742.1 | | In the encouragement of settlement at a pretrial conference, it is not proper to coerce or compel a litigant to make a settlement | Can a court compel a litigant to make a settlement during a pretrial conference? | 036351.docx | LEGALEASE 0019504 LEGALEASE 0019504 | Condensed, SA, Sub 0.43 | 0.43 | | 1 | | 1 | |
| 15979 | Dubois v. Workers' Comp. Appeal Bd., 4 Cal. 4th 182 | 413+2 | | Right to workers' compensation benefits is wholly statutory and is not derived from common law. | Is the right to benefits from workers compensation entirely or wholly statutory? | Workers Compensation - Memo #264-AK .docx | ROSS-003303797 ROSS-003303798 | Condensed, SA, Sub 0.81 | 0.81 | | 1 | | 1 | |
| 15980 | Mueller v. Brunn, 105 Wis. 2d 231 | 405+5.1 | | Person's interest in water is not inherent in real property and not riparian right for purposes of statute establishing venue in cases involving injury to real property. W.S.A. 801.50(1)(d); 990.01(15). | Is the contamination of water an injury to real property with respect to the venue rules? | 047510.docx | LEGALEASE 0014916 LEGALEASE 0014917 | Condensed, SA, Sub 0.6 | 0.6 | | 1 | | 1 | |
| 15981 | Hayes v. Midland Credit Co., 173 Minn. 554 | 83T+42 | | Person making commercial paper to accommodate another may limit use by special agreement, which party may limit the use for a specific purpose? | Can the accommodation party limit the use of accommodation paper for a specific purpose? | Bills and Notes- Memo 617 AK_57607.docx | ROSS-003320882 | Condensed, SA, Sub 0.85 | 0.85 | | 1 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15992 | Thomas v. Jarrard Truck Lines, ? So. 2d 758 | 15[+15] | Since the amendment to the pleadings was properly allowed, the plea of estoppel perforce must fail. It has no basis upon which to stand. In addition to this, a pleader is not estopped by judicial allegations which have neither deceived nor damaged anyone. | A pleader is not "estopped" by judicial allegations which have neither deceived nor damaged anyone. | Is a pleader estopped by judicial allegations which have neither deceived nor damaged? | 01808.docx | LEGAL0A0E-00180111-LEGAL0A0E-00180112 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 15993 | Behrman v. Louisiana Ry. & Nav. Co., 127 La. 775 | 15[+15] | The answer to the first ground of estoppel here urged is that a party is not estopped by allegations of law unsuccessfully made in a former suit. | A party is not estopped by allegations of law unsuccessfully made in a former suit. | Is a party estopped by allegations of law unsuccessfully made in a former suit? | 09905.docx | ROSS-000279910-ROSS-000279917 | Condensed, SA | 0.71 | 0 | 1 | 1 | 1 | |
| 15994 | LYNV Funding v. Masonga, 527 S.W.3d 128 | 18/90 | Credit One was the original creditor. LYNV Funding purchased Masonga's account in January 2013. When it did so, it stepped into Credit One's shoes. "As an assignee stands in the shoes of its assignor, it acquires no greater rights than those held by the assignor at the time of the assignment." Feldman v. Sparks, 509 S.W.2d 252, 258 (Mo. App. S.D. 2015) (quoting Adams v. Cain, 264 S.W.3d 153, 165 (Mo. App. E.D. 2008)). The only rights or interest an assignee acquires are those the assignor had at the time the assignment was made. Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 128 (Mo. banc 2010). As such, LYNV Funding had only those rights that Credit One, as the original creditor and assignor, had. In other words, LYNV Funding was entitled to collect interest only to the extent that Credit One was entitled to collect interest from the Masonga. | An assignee steps into the shoes of its assignor; it acquires no greater rights than those held by the assignor at the time of the assignment. | Can an assignee acquire greater rights than which the assignor has? | 09905.docx | LEGAL0A0E-00157093-LEGAL0A0E-00157094 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | 1 |
| 15995 | Stiles v. Farrar, 18 Vt. 444 | 435+484 | The society court having adjudged the defendant's reprobate insufficient and rendered judgment for the plaintiff, the case is brought to this court for revision; and the question raised by the bill of exceptions is, whether the exception is sufficient. The note declared upon is negotiable, yet the payee's interest in it might well be assigned, and, upon notice of the assignment to the maker, the equitable interest of the assignee would be protected at law. This principle is too well settled to admit of controversy. It is not longer an open question. Sewall v. Adams, 1 Mass. Strong v. Strong, 2 Aik. 373; 1 12 Vt. 345; 344 13 Vt. 585; 16 Vt. 1. | The interest of the payee in a note not negotiable may be assigned, and if assigned, and notice thereof is given to the maker, and an action is commenced upon the note in the name of the payee for the benefit of the assignee, the equitable interest of the assignee will be protected at law. This is not now an open question. | Can a note which is not negotiable be assigned? | 09103.docx | LEGAL0A0E-00157169-LEGAL0A0E-00157170 | Condensed, SA, Sub | 0.51 | 1 | | | 1 | |
| 15996 | Indiana Nat. Bank of Indianapolis v. Gras, 208 ? 2d 619 | 8.30I+10 | Defendant is partially correct that the law of the forum governs in this action. Inasmuch as this suit was filed and tried in Illinois we must apply the conflicts of law principles of Illinois Courts. The Illinois courts have held that the law of the place of performance of a contract, or the place of payment of a note, is the law which will govern the validity, interpretation, and effect of the obligation. Interpretation and effect of the obligation. George v. Haas, 311 Ill. 382; 143 N. E. 54; Hurtt v. Stevens, 333 Ill.App. 181, 77 N.E.2d 204.2 These notes were all payable in Indianapolis, Indiana; and we must turn to the Indiana law in determining the merits of the defendant's contentions. In diversity cases we are bound to take judicial notice of the law of Indiana, without the necessity of pleading or proof of the applicable laws and statutes. 28 U.S.C.A. § 1652; Petersen v. Chicago, Great Western Ry. Co., 2 IC.Neb., 3 F.R.D. 346, affirmed 8 Cir., 138 F.2d 304, 149 A.L.R. 755. | Under Illinois law, the law of place of payment of note is the law which will govern the nature, validity, interpretation, and effect of the obligation. | Which law governs the nature and validity of a contract? | Bills and Notes - Memo 1396 - IK_6483b.docx | ROSS-003229548-ROSS-003256464 | Condensed, SA, Sub | 0.85 | 1 | | | 1 | |
| 15997 | John Hancock Mut. Life Ins. Co. v. Val. Baltimore Nat. Bank & Tr. Co., 212 Md. 506 | 8.30I+10 | Questions relative to negotiable instruments arising upon a conflict of laws are not always free from difficulty. The Negotiable Instruments Act, Code 1951, Art. 13, § 16, states, "every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto." This section governs bills and notes in a case of conflict of laws, and, in determining this question, it is necessary to consider certain factors. Some of these are: (1) that the law relating to what law governs contracts in general is applicable to bills and notes only insofar as it is not inconsistent with the specific statements in the decisions should be controlled by the specific statements of law in regard to the validity of a negotiable instrument often includes many contracts, each several signature is make, drawer, acceptor, guarantor, surety or indorser being a separate contract; (3) and that each separate contract may bring into question a different place and law, since each contract involves a place of contract and a place of payment which may be governed by different laws. It is thus manner, one law may determine the validity of a contract, while other laws regulate its form or its performance or the rules of law taken for its maintenance or enforcement. 10 C.J.S., Bills and Notes, "47. It seems generally to be conceded that the proper law governing a bill or note is the law which the parties to the instrument intended to be governed by the law of a particular state, those laws govern. Accordingly, if the bill or note contains express provision that it shall be governed by the laws of a particular state, those laws govern. | Generally, law governing a bill or note is the law which the parties to the instrument intended the for proper law governing a bill or note? | Bills and Notes - Memo 1353 - RK_6425e.docx | ROSS-003212835-ROSS-003212852 | Condensed, SA, Sub DJS | 0.85 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 15988 | Jackson v. United States, 1984 1 Supp. 607 | 34v79(1) | Although the demand Jackson with respect to plaintiff's right to recover an still in effect, the United States does not direct a contesting that, irrespective of the eventual outcome of the dispute, the United States has breached its duty or obligation under the policy issued to the decedent. As the Fifth Circuit has recognized, Shannon v. United States, 417 F.2d 2561 Cir. 1969), the responsibilities of the United States under the Servicemen's Group Life Insurance Act, 38 U.S.C. * 765 et seq., are not those of an insurer. Under the Act, the government is authorized to purchase group life insurance policies from one or more private insurance companies for the benefit of servicemen on active duty, who receive coverage unless they elect not to be insured. The private companies are the insurers, and they alone are responsible for issuing the policy to the serviceman and for paying the benefits prescribed by the Act. No contract of insurance is created between the insured and the United States. Thus, actions for nonpayment or other breach of the policy lie against the private insurer, and not the government. Ross v. United States, 444 F.2d 5481/0. O.1971). | Under Servicemen's Group Life Insurance Program, responsibilities of the United States are not those of insurer, and that actions for nonpayment or other breach of policy lie against private insurer, and not the government. 38 U.S.C.A. v 775. | Are the responsibilities of the United States under the Servicemen's Group Life Insurance Program those of an insurer? | 000869.docx | LEGALEASE 00160330 - LEGALEASE 00160331 | Condensed, SA, 0.79 | | 0 | | | 1 | |
| 15989 | Chiriani v. Porter, 103 Cal. App. 2d 397 | 413v186 | The statutes relating to workmens' compensation derive their validity from section 21, Article XX of the constitution. That section directs the legislature to enact legislation which would create the employer's liability to make "adequate provision for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment," etc. regardless of the cause of the death or injury. Nothing in section 21 or in the act adopted pursuant thereto was intended to be a condition precedent against an employed whose enforcement of his claims against another who is not his employer. Section 21 was essential to the validity of the statutory act. Without that section the Employer's Liability Act would have been invalidated by the doctrine of freedom of contract which is ingrained in all organic laws. Such act was adopted as an expression of this state's policy for preservation of the manpower of the toiling masses and to minimize the losses resulting to them in industry. Insofar as any section of the Labor Code attempts to coerce an industrial employee or his dependent to desist from making contracts with others who are not his employers, such act exceeds the authority conferred by section 21 and is therefore void. But no judicial interpretation can erase that the liability of one who is not the employer to an employee of another is governed by the statutes enacted pursuant to section 21. | Workmen's Compensation Act and Labor Code do not govern liability of one who is not the employer to an employee of another. West's Ann. Labor Code, 55 3201 et seq.; 3870; West's Ann. Const. art 20, 5 21. | Can the liability of one who is not the employer to an employee be governed by workmens compensation? | 040563.docx | LEGALEASE 00164605 - LEGALEASE 00164606 | Condensed, SA, Sub 0.87 | | | 1 | | | |
| 15990 | Hackler v. Swisher Mower & Mach. Co., 284 S.W.2d 55 | 413v1709 | So much for the facts. Since the material facts relating to claimant's status are not disputed, the question of whether claimant was an employee comes within one of law. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 915. The word "employee" is defined in the workmen's compensation law, Section 287.020 RSMo 1949, V.A.M.S., as: "every person in the service of any employer * * * under any contract of hire, express or implied, oral or written, or under any appointment or election"; and the word "employer" has been defined, Sec. 287.030, as: "every person * * corporation * * * using the service of another for pay." See Sharpe v. Flatonia, 345 Mo. 1159, 86 S.W.2d 709, 712. In this case the court said: "These definitions as well as the whole of the Workmen's Compensation Law should be broadly and liberally construed by the courts in order to effectuate the legislative intent to afford compensation" | "How should the definition of employer, as well as the whole of the Workmens Compensation law be construed?" | 040802.docx | LEGALEASE 00164667 - LEGALEASE 00164668 | Condensed, SA, Sub 0.78 | | 0 | | | | |
| 15991 | State ex rel. Pub. Welfare Comm'n v. Multnomah Cty. Cir. Court, 185 Or. 392 | 371v2013 | Since the tax required to be levied is a county tax, and since the levy will be uniform within each county, there is a sufficient compliance with the provisions of the Constitution requiring uniformity of taxation. Again, having found that the statute provides for a county tax, it follows that there is no unconstitutional delegation of the power to tax the Welfare Commission so far as the levy is concerned, for the Commission makes no levy. The power to levy a legislative power which cannot be delegated to an administrative body. Authorities to the power to levy a tax is a county court is a governmental body to which both the power and the duty to levy has been delegated. Stanfield v. Multnomah County, 71 Or. 60, 141 P. 1031. As said in Multnomah County v. Luihn, supra, there is no obligation as funds made for the tax upon the state, or upon its political subdivisions, to furnish relief for the poor. | The power to tax is a legislative power which cannot be delegated to an administrative body, but a county court is a governmental body to which both the power and the duty to tax may be delegated. | Can the legislature delegate the power to tax to an administrative board | 040559.docx | LEGALEASE 00166514 - LEGALEASE 00166515 | Condensed, SA, Sub 0.78 | | | | | 1 | |
| 15992 | Bennett v. Van Doren Indus., 262 Kan. 426 | 307Hv680 | Pursuant to K.S.A. 60712.3(b)(1), the legal sufficiency of employees' claim is to be determined on the well-pled facts of their petition. Thus, if the district court accepts as true the allegations of the petition, the court's decision whether to dismiss the action would have been based on construction of the state appropriations bill. | Legal sufficiency of claim is determined from well pled facts in petition. Kan. Civ. Proc., K.S.A. 60-212(b)(6). | Is the legal sufficiency of claim determined from well pled facts in a petition? | Pretrial Procedure - Memo #3288 - C - 5A_63044.docx | ROSS 000279061 | Condensed, SA, Sub 0.68 | | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15993 | Wake Tru. v. Hotels.com, 235 N.C. App. 633 | 307k485 | Here, Judge Diaz was presented with a challenge to plaintiff's claim for collected back rent and remitted taxes in the form of defendants' motion to dismiss. When the motion was denied, defendants subsequently challenged the same claim in the form of a motion for summary judgment before Judge Murphy. The fact that 12(b)(6) [motion] (whether the pleading is legally sufficient) The test on a motion for summary judgment made under Rule 56 and supported by matters outside the pleadings is whether on the basis of the materials presented to the court there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. Therefore, the standard of an order to dismiss made under Rule 12(b)(6) does not prevent the court, whether in the person of the same or a different superior court judge, from hereafter allowing a subsequent motion for summary judgment made and supported as provided in Rule 56. Barbour v. Little, 37 N.C. App. 686, 692, 247 S.E.2d 252, 256 (1978). "[T]he Rule 12(b)(6) motion is addressed solely to the sufficiency of the complaint..." Indus., Inc. v. Constr. Co., 42 N.C. App. 259, 263, 257 S.E.2d 152, 159 (1979) (citation omitted). | Motion to dismiss for failure to state a claim addressed solely to the sufficiency of the complaint | Is a motion to dismiss for failure to state a claim addressed solely to the sufficiency of the complaint? | Pretrial Procedure - Memo #321_C - SL_54996.docx | ROSS.00278315-ROSS-00278316 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 15994 | Miami Photographic v. Livejournal, 874 F.3d 1045 | 398k1 | Whether an agency relationship exists also depends on the level of control a principal exerts over the agent. See Nationsvation v. Perry, "'u.s.''' at 133 S.O. 2652, 2657'*6, 186 L.Ed.2d 768 (2013) (referring to control as one of the basic elements of an agency relationship); United States v. Bonds, 608 F.3d 495, 505 (9th Cir. 2010) (explaining that the "'the essential of control' merely buttr the employee" is the "essential ingredient" in determining an agency relationship) (quoting NLRB v. Friendly Cab Co., 512 F.3d 1090, 1096 (9th Cir. 2008).) Evidence presented by Mavrix showed that LiveJournal had transferred significant control over ONTD and its moderators. Deiter gives the moderators substantive supervision and selects and removes moderators on the basis of their performance, thus demonstrating control. Deiter also exercises control over the moderator's work schedule. For example, he added a moderator from Europe so that there would be a moderator who could handle the moderators' performance, thus demonstrating LiveJournal's control over the moderators. Any moderator's screening criteria derive from rules ratified by LiveJournal. | Whether an agency relationship exists also depends on the level of control a principal exerts over the agent. | Does an agency relationship exist depends on the level of control a principal exerts over the agent. | Principal and Agent - Memo 56 - 58_65980.docx | ROSS.00281213-ROSS-00281214 | Condensed, SA | 0.91 | 0 | | | 1 | |
| 15995 | Expedia v. City of New York Dept of Fin., 22 N.Y.3d 121 | 371k1016 | The State Constitution places fundamental limitations on such delegations. The legislature must describe with specificity the taxes authorized by the enabling statute. N.Y. Const., art. XVI, *1; Gautier Corp., 89 N.Y.2d 243, 63.3 N.S.2d 88; 673 N.E.2d 643. Dissatisfaction by one of the parties. As we explain only after the winding up of the affairs of the partnership. Iowa Code" 48.6.30; Gibbons v. Smith, 251 N.W.2d 612, 614 (Iowa 1977) (Subject matter (dissolution effect) is a change in a partner's interest in specific partnership property. A partner does not obtain a direct interest in partnership property upon dissolution of the partnership. Such property remains property of the partnership pending the winding up of partnership affairs. Rieben v. Gibbons, 251 N.W.2d 612, 614 (Iowa 1977) (interpreting Iowa Code)" 486.30, 486.31); see also In re Estate, No. 8470068W (Bankr. N.D.Iowa Aug. 13, 1986) (unpublished). A partner may obtain the partnership property when partnership has not terminated. | Legislature's delegation of taxing power to local governments is fundamentally limited by the constitution, as the legislature must describe with specificity the taxes authorized by any enabling statute. | "Should the legislature describe with specificity the taxes authorized by the enabling statute? " | Taxation - Memo 1318 - C - PA_58512.docx | ROSS.00283384-ROSS-00283387 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | |
| 15996 | In re Magoon, 223 B.R. 177 | 289k953 | Dissolution by itself effects only after the winding up of the affairs of the partnership. Iowa Code" 486.30; Gibbons v. Smith, 251 N.W.2d 612, 614 (Iowa 1977). (Subject matter (dissolution effect) is a change in a partner's interest in specific partnership property. A partner does not obtain a direct interest in partnership property upon dissolution of the partnership. Such property remains property of the partnership pending the winding up of partnership affairs. Rieben v. Gibbons, 251 N.W.2d 612, 614 (Iowa 1977) (interpreting Iowa Code)" 486.30, 486.31); see also In re Estate, No. 8470068W (Bankr. N.D.Iowa Aug. 13, 1986) (unpublished). A partner may obtain the partnership property when partnership has not terminated. | Under Iowa law, dissolution does not effect changes in a partner's interest in specific partnership property. | Does dissolution effect a change in a partner's interest in partnership property? | Partnership - Memo142 - RM_64601.docx | ROSS.00283402-ROSS-00283403 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | |
| 15997 | In re K.N., 356 S.W.3d 92 | 211k2006 | "[A] motion in limine is a preliminary ruling by a trial court." Onstad v. Wright, 54 S.W.3d 799, 805 (Tex. App.-Houston (1st) Dist., 2001, pet. denied) A [trial] "procedural rulings that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make so as to prevent the asking of prejudicial questions and to prevent making prejudicial statements in the presence of the jury." Id. (citing Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex. 1963)), allegation on other grounds by Bay Area Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231 (Tex.2007) (for Worth Health, July 2, 2009). A motion in limine is thus to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. Id (citing Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex.App.-Houston (14th) 2000, no pet)). Where a trial court issues an order granting a motion in limine, it does not by itself preserve error for appeal. Id. | Trial court did not abuse its discretion, in proceeding for termination of parental rights, by taking judicial notice that jury's motion to dismiss without cross-examination by child protective services to father's criminal history, in violation of order granting a motion in limine; testimony was sufficient to show that father's testimony would tend to instruct jury to disregard it, and trial court could have concluded the violation was insufficient to warrant the severe sanction of a mistrial, or could also have determined that any prejudice could have been cured by an instruction to the jury to disregard had such a request been made. | "Where a trial court issues an order granting a motion in limine, does the trial court abuse its discretion with that order and to instruct the witnesses to do the same?" | Pretrial Procedure - Memo #321 - C - SDB.docx | ROSS.00283855-ROSS-00283862 | Condensed, SA, Sub | 0.69 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15998 | Hinojosa v. Dep't of Nat. Res., 263 Mich. App. 537 | 149=156 | He has caused of action are differentiated by their sources and by the damages recoverable ("the Legislature has the constitutional authority to modify or abolish the common-law tort of trespass-nuisance. See Philips Desophilnia v. Alpena Power Co., 460 Mich. 241, 236, n. 14, 596 N.W.2d 574 (1999). But an action that establishes an unconstitutional taking may not be limited except as provided by the Constitution because of the preeminence of the Constitution. Const. Art. 10, § 2; M.C.L.A. § 691.1407(1).") Buckeye v. Michigan, 166 Mich. App. 406, 408, 421 N.W.2d 601 (1988) ("Governmental immunity is not available to defeat a claim that the state has violated a right conferred by the Michigan Constitution."). Thus, available damages in a "taking" case of action are limited to "just compensation." See Silver Creek Drain Dist. v. Extrusions Div., Inc., 468 Mich. 367, 374-375, 663 N.W.2d 436 (2003) (discussing the historical development of the term "just compensation" and construing it as "the proper amount of compensation for property [that] takes into account all factors relevant to market value"). | Cause of action of trespass-nuisance and unconstitutional taking are differentiated by their sources and by the damages recoverable; legislature has the constitutional authority to modify or abolish the common-law tort of trespass-nuisance, but an action that establishes an unconstitutional taking may not be limited except as provided by the Constitution because of the preeminence of the Constitution. M.C.L.A. Const. Art. 10, § 2; M.C.L.A. § 691.1407(1). | Can an action that establishes an unconstitutional taking be limited? | Eminent Domain - Memo 161 - GP.docx | ROS5-00328403 ROS5-00328404 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | |
| 15999 | Dale City, Sch. Bd. v. Radoz, 66 Va. App. 3, 17 | 366=1 | The doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationship of the parties. The doctrine of equitable subrogation is not created in almost every conceivable type of transaction where one party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience ought to have been paid by the latter party. See, Centreville Car Care & Export Co. v. Columbia Cas. Co., 115 Fla. 941, 151, 156 So. 116, 120 (1934). | Doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationship of the parties. | Is "equitable subrogation" or "legal subrogation" broadly applied in every conceivable type of transaction in which the party invoking the doctrine has been required to pay a debt for which another is primarily answerable? | Subrogation - Memo 229 - VCC.docx | ROS5-00328472 ROS5-00328473 | Condensed, SA | 0.72 | 0 | 0 | 1 | 1 | |
| 16000 | Simmons v. Brown, 497 F.3d Supp. 173 | 16=2 | Plaintiff points out that the regulations of the various branches of the service must be in accord with those of the Department of Defense, but the Army's regulation that the challenges does not conflict with any Defense regulation to which he has referred the court. It seems very likely to this court that each of the major elements in the reasoning of the Department of Defense's in its decision to provide a hearing in situations covered by 32 C.F.R. ss 41.7(a)(2) and 41.11(d)(2) was that the affected member is subject to a possible discharge and, as such, no more desirable discharge in chapter IV of AR 635-200; however, only an honorable discharge is permitted by AR 635-200 and provides that "Members discharged under this chapter must receive honorable discharge certificates." | Regulations of the various branches of the service must be in accordance with those of the Department of Defense. | Should regulations of various branches of the service be in accordance with those of the Department of Defense? | Armed Forces - Memo 48 - RK.docx | ROS5-00328602 ROS5-00328603 | Condensed, SA, Sub 0.86 | 0.86 | 1 | 1 | 1 | 1 | |
| 16001 | In re Jones, 544 B.R. 692 | 172H=1247 | A pledgor shall have no obligation to redeem pledged goods or make any payments on a loan transaction. It held pledged, and redeemed within 30 days following the original fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." Ala. CODE "C" 18A-1c. The 30-day redemption period starts at the date the pawn contract matures, not at the date the vehicle is repossessed; Buttke v. Am. Motors Corp., 126 Ariz. 472, 616 P.2d 1115 (Ct. App. 1980). A pawnbroker becomes legal owner of the pledged goods and the statutory redemption period only expires until then, the pawnbroker is merely a lienholder. State ex rel. Morgan v. Thompson, 791 So.2d 977, 978 (Ala. Civ. App. 2001). | Under Alabama law, the 30-day redemption period for pledged goods starts at the date the pawn contract matures, not at the date the vehicle is repossessed. Ala. Code § 5-19A-6. | When does the 30-day redemption period start in a pawn context? | Consumer Credit - Memo 135 - RK.docx | ROS5-00328795 ROS5-00328796 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 16002 | Uber v. City of Raymond, 51 Wash. 2d 241 | 38=243 | In Hubbard v. Embassy Theatre Corp., 1938, 196 Wash. 115, 82 P.2d 153 [a car with a sweet-driving and crossing street prior decision], the court held that [in instruction that requested defendant "to exercise a greater degree of diligence" over someone injured because the prudent man's rate was a "prudent man" rate. In Frew v. Johnson, the trial judge instructed that one driving an automobile into a cloud that "must exercise a very high degree of care." This court noted the instruction as one subjecting the jury "* * * as to the amount of care which a careful and prudent man would exercise under all the circumstances when entering into a cloud that "* * *" it did in all. This court determined that the jury was not misled nor the basic rule violated. | In action against city for wrongful death of decedent who was driving automobile which went into pool of water, instructions that one driving through fog must exercise a very high degree of care and prudently and diligently "at all times to avoid injury" were properly and "prudent man" rate. | Is it the degree of care to be exercised while driving fixed? | Highway - Memo 161 - B.docx | ROS5-00328843 ROS5-00328844 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | |
| 16003 | Rumlow v. United States, 199 F.2d 644 | 63=(1)2 | Graft means an advantage which one person by reason of his peculiar position of superiority, influence or trust, exacts from another. Craig v. Warton, 78 Wash. 246, 139 N.W. 231. It also includes the fraudulent obtaining of public money by the corruption of public officials. Smith v. Port Orange, 174 Pa. 431, 128 So.W.2d 501. (Bolen Ch. 1916). Smith v. Port Orford, 174 Pa. 465, 128 S.W.2d 501. (Bolen Ch. 1916), c. 461, 1183, W. 919. The acts of 4 est in receiving the payments from appellant were acts by which he received an advantage owing to his position of trust with his Government. The acts of appellant to making the payments resulted in the fraudulent obtaining of public money by the corruption of a public official. | "Graft" means an advantage which one person by reason of his peculiar position of superiority, influence or trust, exacts from another; and also includes the fraudulent obtaining of public money by the corruption of public officials. | "What is the meaning of the word "graft"?" | Bribery - Memo 856 J - C CSS.docx | ROS5-00328903 ROS5-00328905 | Condensed, SA | 0.64 | 0 | 0 | 1 | 1 | |
| 16004 | Bonin v. Vannamen, 261 Kan. 199 | 13=27(1) | In a pleading in question, this court submit "The nature of a claim "whether s sounds in tort or contract" is determined from the pleadings [citations omitted] and from the real nature and substance of the facts therein alleged." Bonin v. Vannamen, 261 Kan. 199. | Nature of a claim, whether it sounds in tort or contract, is determined from pleadings and from real nature and substance of facts therein alleged. | "Is the nature of a claim, whether it sounds in tort or contract, determined from the pleadings?" | Action - Memo 979 - C MV_68602.docx | ROS5-00329473 ROS5-00329474 | Condensed, SA | 0.45 | 0 | 0 | 1 | 1 | |

2817

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16005 | Lozada v. Dale Baker Oldsmobile, 91 F. Supp. 2d 1087 | 25T+134(6) | A few courts have held that arbitration clauses are unenforceable as to TILA claims because they contravene the clear Congressional intent to encourage compliance with TILA through availability of class actions. See Johnson v. Tele"Cash, Inc., 82 F.Supp.2d 264, 270 (D.Del.1999) (holding that inherent conflict existed between TILA right to class action and arbitration clause and refusing to enforce); Baron I, 75 F.Supp.2d at 1370"71 (holding that arbitration clause that defeats purpose of TILA is unenforceable); Powertel, 743 So.2d at 573 (prohibition on class relief renders arbitration agreement unenforceable under TILA); cf. Bantolina v. Aloha Motors, Inc., 419 F.Supp. 1116, 1120 (D.Haw.1976) (recognizing that Congress concluded that class actions were "necessary to elevate truth-in-lending lawsuits from the ineffective "nuisance category" to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance.") (quoting Federal Reserve Board, 1972 Annual Report on Truth in Lending). The Northern District of Illinois, in contrast, has on several occasions rejected the contention that waiver of class relief undermines the remedial purpose of TILA, holding that Congressional intent to encourage class actions is not sufficiently clear to override general policy of encouraging arbitration established by the FAA. See Lopez v. Plaza Fin. Co., No. 95"C"7567, 1996 WL 210073 (N.D.Ill. April 25, 1996); Thompson v. Illinois Title Loans, Inc., No. 99C 3952, 2000 WL 45493 (N.D. Ill. Jan. 11, 2000) (citing Lopez and subsequent cases in Northern District of Illinois) (citations omitted). | Arbitration clause in retail installment sales and security agreements involving sales of automobiles, providing for waiver by buyers of right to proceed by way of class action, was substantively unreasonable and unconscionable under Michigan law, due to failure to confer on arbitrator authority to provide injunctive and declaratory relief available to buyers under federal Truth in Lending Act (TILA) and state consumer protection act. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq.; M.C.L.A. S 445.911(3). | Are arbitration clauses enforceable as to TILA claims? | Alternative Dispute Resolution - Memo 362 - RK.docx | ROSS-003297732-ROSS-003297733 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 16006 | Haitian Centers Council v. McNary, 969 F.2d 1350 | 24+490 | Congress has already resolved the first problem for us, for in " 101(a)(3) of the INA, 8 U.S.C. " 1101(a)(3), it has provided that, as used in the INA, "the term "alien" means any person not a citizen or national of the United States." The plain language of this provision makes clear that aliens are aliens, regardless of where they are located. Since the words of the statute are unambiguous, ""judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, In light of this congressional definition, the plaintiffs in this case, who are citizens of Haiti, not of the United States, are plainly designated by the term "any alien", used by congress in " 243(h)(1).Since the plain language of " 243(h)(1) and " 101(a)(3) appears to resolve the first statutory problem before us, we may turn to other canons of construction only to determine whether there is a "clearly expressed legislative intention" contrary to that language, which would require us to question the virtually-conclusive presumption that congress meant what it said. | Haitian refugees intercepted in international waters are "alien(s)" for purposes of Immigration and Nationality Act provision prohibiting deportation of alien to country where his life or freedom would be threatened on account of his race, religion, nationality, social group membership, or political opinion; as used in Act, term "alien" means any person not citizen or national of United States. Immigration and Nationality Act, SS 101(a)(3), 243(h)(1), as amended, 8 U.S.C.A. SS 1101(a)(3), 1253(h)(1). | What does the term alien mean? | Aliens_ Immigration and citizenship- Memo 2 - RK.docx | ROSS-003298390-ROSS-003298391 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 16007 | McCabe v. Braunstein, 439 B.R. 1 | 366+1 | Looking to the five factors, there is no dispute that the first four factors aresatisfied in this case. Karren McCabe argues that the fifth factor is not satisfied because the McCabe Group already had benefitted from the reduction of Holdings' debt as a 99% member and that recovery by the Trustee would result in an unwarranted windfall. Karren McCabe Mem. at 9-10. One of the primary purposes of subrogation is to avoid unwarranted windfalls. Frost, 386 Mass. at 428, 436 N.E.2d 387. | Under Massachusetts law, one of the primary purposes of equitable subrogation is to avoid unwarranted windfalls. | Is one of the primary purposes of equitable subrogation to avoid unwarranted windfalls? | Subrogation - Memo 181 - ANG C.docx | ROSS-003299244-ROSS-003299246 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 16008 | State Bd. of Ret. v. Bulger, 446 Mass. 169 | 79+8 | As enunciated by G.L. c. 211, " 4, and by our case law, the standard for removing a Clerk-magistrate from office, where required by the "public good," is broad. In contrast, the standard for pension forfeiture based on dereliction of duty is more narrow and specific. A clerk-magistrate's pension is forfeited for misappropriation of governmental funds or property, G.L. c. 32, " 15(1) and (3), after a final conviction of certain offenses set forth in G.L. c. 32, " 15(3A), or after a final conviction of a criminal offense involving "violation of the laws applicable to his office or position," G.L. c. 32, " 15(4). See Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 3, 665 N.E.2d 998 (1996). Depending on the misconduct at issue, there may be instances when removal of a clerk-magistrate from office is mandated by G.L. c. 211, " 4, because it serves the public good, but pension benefits are not concomitantly terminated because the misconduct at issue does not fall within the purview of G.L. c. 32, " 15. For example, a member may be convicted of a criminal offense that does not involve any violation of the laws applicable to his office or position. In those circumstances, according to G.L. c. 32, " 15(4), the member does not forfeit his entitlement to a retirement allowance. This is not one of those cases. | The standard for removing a clerk-magistrate from office, where required by the "public good," is broad, and in contrast, the standard for pension forfeiture based on dereliction of duty is more narrow and specific. M.G.L.A. c. 211, S 4; c. 32, S 15(4). | What is the standard for pension forfeiture of a clerk based on dereliction of duty? | Clerks of court - Memo 123 - RK.docx | ROSS-003300233-ROSS-003300234 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 16009 | United States v. Wechsler, 392 F.2d 344 | 63+1(1) | The statute was enacted on September 13, 1961; on September 15, Cotten caused the check from Leigh to be deposited in his bank account, and the jury could have found that his check was in payment for Cotten's vote. Depositing that check in a bank for collection was the use of a "facility in interstate or foreign commerce.' On July 25, 1962, Cotton voted in favor of the re-zoning. Thus, he used a facility in interstate commerce to facilitate the carrying on of bribery and thereafter performed the carrying on of bribery, squarely within the terms of the statute, after the statute was enacted. As applied to Cotten, then, the statute had no ex post facto effect. | Deposit in bank by member of zoning board of check allegedly received in payment for his vote on application for re-zoning was "use of facility in interstate or foreign commerce" within meaning of statute prohibiting use of such facility for unlawful activity. 18 U.S.C.A. S 1952. | Does depositing a check constitute the use of a facility in interstate or foreign commerce? | Bribery - Memo #327 - CSS.docx | ROSS-003303972-ROSS-003303973 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 16010 | F.D.I.C. v. Skotzke, 881 F. Supp. 364 | 83E+335 | The note is a negotiable instrument. Ind.Code " 26"1"3"104; Payne v. Mundaca Investment Corp., 562 N.E.2d 51, 55 (Ind.App.1990) ("[a] promissory note is a negotiable instrument under Indiana's version of the Uniform Commercial Code"). That the note is collateralized by a mortgage does not change its status as a negotiable instrument. Payne, 562 N.E.2d at 55; Smith v. Union State Bank, 452 N.E.2d 1059 (Ind.App.1983). Therefore, the note and mortgage are governed by Article 3 of the Uniform Commercial Code, as codified in Ind.Code "" 26"1"3"101 et seq. Payne, 562 N.E.2d at 55. | Mere fact that promissory note was collateralized by mortgage did not affect its status as negotiable instrument. | Does the mere fact that a note is collateralized by a mortgage affect its status as a negotiable instrument? | Bills and Notes-Memo 1034 - SB_60159.docx | ROSS-003305748-ROSS-003305749 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 16011 | Dodge Data & Analytics LLC v. XXXX, 183 F. Supp. 3d 855 (Ohio App 2015) | 386+6 | "A trespass to chattels occurs when one intentionally dispossesses another of their personal property." Martin v. Heinbaugh, 48 S.E. 34 329, 1217 (Ohio App. 2015) | Under Ohio law, a trespass to chattels occurs when one intentionally disposes another of their personal property. | Is the intentional dispossession of another's personal property considered a trespass to chattel? | Trespass - Memo 117 RE.docx | ROSS-003103860-ROSS-003103861 | Condensed, SA, Sub 0.29 | | 0 | 1 | 1 | 1 | 1 |
| 16012 | Scheibinger v. Trans Int'l Airlines, 59 Misc. 2d 478 | 50+21(1) | Negligence of the bailor which contributes to the loss of a bailed item will generally exonerate the bailee (Osborn v. Cline, 263 N.Y. 434, 189 N.E. 483). The burden of proving such contributory negligence is upon the defendant (CPLR 1412). TIA contends that by leaving money in her carry-on luggage and in taking it to claim area upon the bailee. | Negligence of bailor which contributes to loss of bailed item will generally exonerate bailee, and burden of proving such contributory negligence is upon the bailee. CPLR 1412. | Will the negligence of the bailor, contributing to the loss, exonerate the bailee from liability?" | Bailment - Memo 38 RE.docx | ROSS-003118189-ROSS-003113893 | Condensed, SA, Sub 0.16 | | 0 | 1 | 1 | 1 | 1 |
| 16013 | Enns v. First Union Nat. Bank of Maryland, 376 B.R. 481 | 366+1 | Founded on principles of natural reason and justice, subrogation is a highly favored doctrine and equitable applied. Of Angelo v. Cornell Paperboard Products Co., 19 Wis. 2d 390, 120 N.W.2d 70 (1963); 1000. Grand Corp. v. New York, 288 N.Y. 178, 42 N.E.2d 475, 477 (1942); see also Compania Anonima Venezolana de Navegacion v. A.J. Perez Export Co., 303 F.2d 692 (5th Cir. 1962), cert. denied, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962) ("These principles [of subrogation and seawell established that to cover it would be an affectation"). Indeed, subrogation has been consistently upheld by courts in each of the states in which the subsidiaries' assets are located "(Maryland, Delaware, and Virginia)" and thus whether laws control this proceeding. See, e.g., Collins v. Blue Cross of Virginia, 213 Va. 540, 193 S.E.2d 782, 785 (1973) ("The general right of subrogation has long been recognized"); Busch v. United Virginia"), Bachmann v. Glazer, 316 Md. 405, 559 A.2d 65 (1985); Willis v. Continental Cas. Co., 649 F.Supp. 707 (1986) (Delaware) ("The court's clear long recognized that [?] subrogation is a creature of equity, historically equitable in our [courts]"). | Founded on principles of natural reason and justice, subrogation is highly favored doctrine and equitably applied. | Is the doctrine of subrogation expansively applied? | Subrogation - Memo 194 - RM.docx | ROSS-003103714-ROSS-003103743 | Condensed, SA 0.9 | | 0 | 1 | | 1 | |
| 16014 | City of Columbus v. Anglin, 120 Ga. 785 | 13+41 | In determining whether an amendment added a new and distinct cause of action, this court had been uniform in its decisions as to what the new cause from a comparison of Harris v. Central Railroad, 78 Ga. 525, 3 S.E. 355, and Ga. R.Co. v. Hughes, 109 Ga. 604, 34 S.E. 1035. It is irreconcilable conflict in the decisions, we ought tested the present case with managed upon this question, and gave permission for the review of all the Georgia cases bearing upon the subject as to whether the rescission of the decisions might be corrected, and the reconsideration removed. The question now to be determined consideration of the amendment of the "cause of action." The abstract and primary rights and duties of men are determined by the substantive law, which is ever in operation, but no action can be based upon substantive law alone. When there is an invasion of primary rights, then, and not until then, the adjective or remedial law becomes operative, under the which may of these laws, a cause of action can be so right of action until there has been a wrong—a violation of a legal right and it is then given by the adjective law. Upon the Commission of the wrong a right of action springs up by the adjective law. "For every violation of a contract expressor implied, and for every injury done by another to person or property, the law gives a right to recovery and a remedy to enforce it." Civ. Code 3895, ∼3076. Thus, "relatively to the law of pleading, a cause of action is perhaps the legal duty or right to be deduced from the standpoint of rights each exactly the same violation of the defendant's primary duty, [?] though is an invasion of the plaintiff's primary right. A right of action is the right to prosecute an action with a certainty right a "cause of action" is the right to prosecute an action with a certainty right. This right to the right of pleading is a right "to redress the particular right of the defendant's wrong and the plaintiff's injury for which the action is brought. | The abstract and primary rights and duties of men are determined by the substantive law, which is ever in operation but no action can be based upon substantive law alone. When there is an invasion of primary rights, then, and not until then the adjective or remedial law becomes operative and when a cause of right of action. | When does remedial law become operative in a cause of action? | Action - Memo # 363.docx | ROSS-003122081-ROSS-003103883 | Condensed, SA 0.91 | | 0 | 0 | | 0 | |
| 16015 | Countrywide Corp. v. Harry A. Koch Co., 280 Neb. 795 | 366+2 | Generally, "subrogation" is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other. It is the substitution of another person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. The doctrine of subrogation applies whenever a party is compelled to pay the debt of a third person to protect his or her own rights or interest, or to save his or her own property. To be entitled to subrogation, one must pay a debt for which another is liable. | Generally, "subrogation" is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other? | Subrogation - Memo 341 - KE.docx | ROSS-003124053-ROSS-003124054 | Condensed, SA 0.79 | | 0 | 1 | | 1 | 1 |
| 16016 | River Bar Farms v. Moore, 83 Ark. App. 130 | 401+4 | However, in this case, venue was proper in the Conway Circuit Court because a transitory claim. The request for an injunction prohibiting appellants from interfering with appellees' use of the property in Conway County was included in the complaint. In actions such as this, venue is determined by the essential character of an action. In Moore Publications v. Burrough/Welting Theusall Consulting Engineers, Inc., 275 Ark. 135, 138, 628 S.W.2d 9, 11 (1982), the supreme court stated that, where a transitory cause of action is combined with a local cause of action, by its principal purpose is determined by the principal right being asserted. According to Rogers & Co. v. Whitmore, 275 Ark. 324, 629 S.W.2d 293 (1982), in this case, the principal right being asserted was a request for injunctive relief prohibiting appellants from interfering with appellees' right to use the bridge and gate in Conway County. Therefore, the essential character of this action, as demonstrated by the complaint, established venue in Conway County, appellees' later concession of the injunctive relief issue did not retroactively divest venue once established. Accordingly, the trial court's refusal to dismiss on the basis of venue was correct. | In an action combining a transitory cause of action with a local cause of action, venue is determined by the essential character of the action. | How is venue determined when a transitory cause of action is combined with a local cause of action in a complaint? | Venue - Memo 59 - ANS.docx | ROSS-003123178-ROSS-003103179 | Condensed, SA, Sub 0.89 | | | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16017 | Bruton v. Craig, 463 S.W.3d 446 | 59+48(1) | The theories of boundary by acquiescence and adverse possession are separate and distinct legal doctrines. Shoemaker v. Houchen, 994 S.W.2d 40, 44 (Mo.App. 1999). Therefore, even if Bunker failed to properly plead boundary by acquiescence as Craig asserts, the could still claim title to the disputed parcel by adverse possession. In that case, "the boundary to which there was claimed to be have been an acquiescence or agreement merely defined the outer edge of the land [Bunker] claimed to have adversely possessed." Tucker v. Hudson, 38 S.W.3d 83, 88 (Mo.App. 2012) (examples are in original). | The theories of boundary by acquiescence and adverse possession are separate and distinct legal doctrines. | Are the doctrines of boundary by acquiescence and adverse possession one and the same? | Adverse Possession - Memo 10 - BM.docx | ROS5-00328.358,ROS5-ROS5-00328.0208 | Condensed, SA | 0.83 | 0 | 1 | | 1 | |
| 16018 | Lawrence v. Cooper Indep. Theatres, 177 Kan. 125 | 233+730 | Restrictions against assignment constitute prohibitions against the right of alienation. They are not favored by the courts, and are to be strictly construed, and are not implied. 32 Am.Jur., Landlord and Tenant, ™ 325. Restrictions against assignment are strictly construed against the lessor, and are given a construction which will prevent the restraint from going beyond the express stipulation. The rule requires that what is claimed to be within the restriction shall be clearly and manifestly so, and that if it is fairly doubtful as to being within it, the restriction shall be excluded therefrom. 32 Am.Jur., Landlord and Tenant, ™ 327. Similarly, it has been said "A covenant or restriction against assignment or subletting is to be construed strictly against the lessor in favor of the lessee and contrary to the lessee, and against a forfeiture, and will not be extended by implication." 51 C.J.S., Landlord and Tenant, ™ 33, p. 541. | Restrictions against assignment of lease constitutes prohibitions against the right of alienation, and they are not favored by court and are to be strictly construed, and are not implied. | Are restrictions on assignments strictly construed? | Assignments - Memo 2 - MS.docx | LEGALEASE-00000110-LEGALEASE-00000111 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | |
| 16019 | State v. Longo, 132 N.J.L. 515 | 181+1 | The indictment charges, in the language of the statute, that the act was committed with intent to prejudice. It was held by the Court of Errors and Appeals in Hart v. State, 60 N.J.L. 576, 38 A. 673, 675, that under our statute a forgery indictment need not set out in the indictment the name of the person intended to be defrauded, nor on the trial to prove an intent on the part of the defendant to defraud a particular person. It is sufficient to allege and prove that the defendant did the act charged with an intent to defraud. We think an intent to prejudice or defraud is also involved in the situation presented in this case. The legislature has, by the various laws, provided for the office of Commissioner of Registration and has provided that the registers of voters can by citizens in primary elections be kept, are incident of which is a notation of the party ballot voted by each such voter. It is the established public policy that such record be kept and that the law honestly and accurately. The altering or falsification of such a record is at least prejudicial to and fraud upon the State. The "person" defrauded, within the meaning of our forgery statutes, can be a state, county or other governmental unit. 26 C.J. 905; 37 C.J.S., Forgery, ™ 4. | The "person" defrauded, within the meaning of our forgery statutes, can be a state, county, or other governmental unit. | Does the person defrauded within the forgery statutes include government or other authorities? | 000144.docx | LEGALEASE-00155522-LEGALEASE-00155523 | Condensed, SA | 0.91 | 0 | 1 | | 0 | |
| 16020 | State v. Spence, 133 Or. App. 392 | 181+1 | Thus, one is guilty of forgery when one makes an instrument which purports to be an authentic creation of its ostensible maker, but is not authentic because "the ostensible maker is fictitious." Here, the checks purported to be authentic creations of William Trust, which they were not because William Trust was deceased. The amalgamation created by defendant, a person with defendant's face and William Trust's name, was clearly fictitious. Defendant intended to defraud the bank and the stores when he opened the account and signed the checks using the Trust's name, to prove that view, defendant was endeavoring to represent his signature as that of William Trust, and by the endeavor was endeavoring to represent himself as William Trust. That is clearly forgery, because it involves the making of a false instrument. | One is guilty of forgery when one makes instrument which purports to be authentic creation of its ostensible maker, but is not authentic because ostensible maker is fictitious. ORS 165.002(4), 165.007. | When is one guilty of forgery? | 000150.docx | LEGALEASE-00151417-LEGALEASE-00151419 | Condensed, SA | 0.76 | 0 | 1 | | 1 | |
| 16021 | Cattle National Bank & Trust Co. v. Watson, 880 N.W.2d 906 | 195+1 | A guaranty is a contract by which the guarantor promises to make payment if the principal debtor defaults. A guaranty is interpreted using the same general rules as are used for other contracts. To determine the obligations of the guarantor, an appellate court relies on general principles of contract and guaranty law. | A "guaranty" is a contract by which the guarantor promises to make payment of the principal debtor defaults. | Will a promise to make payment for the default of another amount to guaranty? | 03636.docx | LEGALEASE-00077213-LEGALEASE-00077214 | Condensed, SA | 0.65 | 0 | 1 | | 0 | |
| 16022 | Concierge Nursing Centers v. Antex Roofing, 433 S.W.3d 37 | 217+1000 | The Surrides (an insurance activity ought to be served" by the policies. Fred Fall Bank, 165 S.W.3d at 312. In other words, the insurer's interpretation of the subrogation provision. The primary purpose of an insurance contract is to protect the insured from loss, thereby placing the risk of loss on the insurer. "Lakaros v. Scott and Whetton Health Plan, 900 S.W.2d 428, 431 (Tex.App.-Austin 1995, writ denied) (citing Ortiz v. Great S. Fire and Cas. Ins. Co., 597 S.W.2d 342, 344 (Tex. 1980)). In an insurance arrangement, the insurer assumes the risk that a loss may occur in exchange for a premium paid by the insured. In re The. Ach'd of Sch. Bds., Inc., 169 S.W.3d 653, 660 (Tex. Sup. Ct.) (orig. proceeding) (citing BARRON ON CONTRACTS ™ 1056(1), at 616 (4th ed. 2001)). In this way, insurance companies are in the business of spreading losses across the premiums they receive. See id. | "In an insurance arrangement, the insurer assumes the risk that a loss may occur in exchange for a premium paid by the insured. In this way, insurance companies are in the business of spreading losses across the premiums they receive. | "In an insurance arrangement, what is the risk that the insurer assumes?" | 003316.docx | LEGALEASE-00115430-LEGALEASE-00115432 | Condensed, SA, Sub 0.74 | | 0 | 1 | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16023 | Blaw v. Lennox, 798 F.3d 253 +546 | 253+228 | We begin by setting forth the overarching substantive principles that must guide our analysis. The Supreme Court has held that federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protection of the Constitution." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (citation omitted). The Constitution protects a prisoner's fundamental right to marry; individuals do not lose this constitutional protection simply because they are imprisoned. See id. at 95-96, 107 S.Ct. 2254; see also Obergefell v. Hodges, ___ U.S. ___, 135 S.Ct. 2584, 2598, 192 L.Ed.2d 609 (2015) (recognizing that "[o]ver time and in other contexts, the Court has reiterated that the right to marry is fundamental under the Due Process Clause"). That protection, however, "is subject to substantial restrictions as a result of incarceration." Turner, 482 U.S. at 95, 107 S.Ct. 2254. | The Constitution protects a prisoner's fundamental right to marry, and individuals do not lose this constitutional protection simply because they are imprisoned. | Do prisoners have a fundamental right to marry? | 001244.docx | LEGALEASE-00115472-LEGALEASE-00115473 | Condensed_SA_0.84 | 0.84 | 0 | | 1 | 1 | |
| 16024 | Anderson v. Gorris, 187 S.W.2d 415 | 322H+189 | If appellant's point is to be regarded as one challenging appellee's cause of action and the transaction reflected by the testimony as a "marriage brokerage contract," we would, we think, be constrained, following the same must be overruled. It is true, as stated in the annotation under Brawn v. Potter Title & Trust Co., 72 A.L.R. 1092 (1131), "such contracts were not at an early date placed under the ban of the law on consideration of public policy. This ban has never been lifted and today there appears no reason to doubt from the view that no agreement by which one is to benefit from consent to or promotion of marriage between third persons is void. No distinction was made on principle between what is agreed for that purpose between one person and... But it is further stated that such agreements will render execution either in the United States or in England; that an agreement by a parent or a guardian is to benefit from consent to the marriage of a minor child is a marriage brokerage contract and void against public policy. The reason for the rule is that such agreements divert attention from consideration affecting the welfare of the minor to the selfish interest of the parent or guardian." (Italics ours.) | A deed conveying realty to minor girl in consideration of her agreement to marry grantor, who placed deed with grantor's mother for delivery to grantee after marriage, was void and against public policy, and in rule pertaining to marriage brokerage contracts, as mother obtained no benefit or promise of reward from grantor for consenting to marriage. | Will the courts consider marriage brokerage contracts as void? | Marriage and Cohabitation - Memo 1 BK.docx | LEGALEASE-00000256-LEGALEASE-00000259 | Condensed_SA_Sub 0.72 | 0.72 | | 1 | | 1 | |
| 16025 | AT&T Mobility LLC v. Concepcion, 563 U.S. 333 | 36D+35.15 | Contrary to the dissent's view, our cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as "embod[ying] [a] national policy favoring arbitration," Buckeye Check Cashing, 546 U.S., at 443, 126 S.Ct. 1204, and "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," Moses H. Cone, 460 U.S., at 24, 103 S.Ct. 927; see also Hall Street Assocs., 552 U.S., at 345, 128 S.Ct. 1396. Thus, our cases hold that the FAA preempted state law rules requiring exhaustion of administrative remedies before arbitration, even though "the prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results,'" which objective would be "frustrated" by requiring a dispute to be heard by an agency first. 563 U.S., at 357-358, 128 S.Ct. 978. That rule, we said, would "'at the least, hinder speedy resolution of the controversy.'" Id. at 358, 128 S.Ct. 978. | The Federal Arbitration Act (FAA) preempts California's judicial rule stating that a class arbitration waiver is unconscionable under California law if it is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and if it is alleged that the party with superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, because the rule stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FAA, which includes enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings; abrogating Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100. 9 U.S.C.A. § 2; West's Ann.Cal.Civ.Code § 1668, 1670.5(a). | What is the prime objective of an agreement to arbitrate? | 004121.docx | LEGALEASE-00115523-LEGALEASE-00115525 | Condensed_SA_Sub 0.1 | 0.1 | | 1 | | 1 | |
| 16026 | Bates v. Northwestern Human Services, 466 F. Supp. 2d 69+1 | 9+1 | An accounting is "a detailed statement of the debts and credits between parties arising out of a contract or a fiduciary relation." Krosnar, 739 A.2d 544. While an accounting can be a legal or equitable remedy, Ins. Co. v. Crosby, 870 So.2d 575, 579 n.2 (Ala.2003), see also P.V. Props., Inc., v. Rock Creek Vill. Assocs., 77 Md.App. 77, 549 A.2d 403, 409 (Md.App.1988) (stating that "[a]n accounting may be had when a fiduciary relationship exists between the parties and the records which are kept and maintained exclusively by the party to whom the obligation is owed" [citation omitted]). Such relief may be obtained at law or in equity. A party seeking an accounting at law must first make an allegation of fraud, especially where there is an additional ground for equity jurisdiction, such as the existence of a fiduciary relationship," and as long as the plaintiff is able to show "that the remedy at law is inadequate." J Am.Jur.2d Accounts and Accounting" 59 (2006) (citations omitted). While an accounting is admittedly "an extraordinary remedy," it may nevertheless be appropriate when a plaintiff is unable "to determine how much if any, money is owed to them by another." Bradshaw v. Thompson, 454 F.2d 75, 79 (6th Cir.1972), cert. denied, 409 U.S. 425, 93 S.Ct. 218 (1972). The plaintiff's complaint adequately alleges supporting the potential need for such a remedy. See Compl. ¶ 107 (alleging that "[t]he accounts and records maintained by the [defendant] as corporate and accounting records remains to be seen whether the plaintiffs will be entitled to an accounting, the complaint adequately alleges facts supporting the potential need for such a remedy. Indeed, the defendant has maintained that the plaintiffs' payments are complicated, and all records relating to them have been in the [defendant's] exclusive control, making it impossible for the [plaintiff's] to determine [the amounts they are owed, which, without discovery and judicial intervention]." Accordingly, the Court denies the defendants' motion to dismiss the plaintiff's request for an accounting at this stage in the litigation. | While accounting is extraordinary remedy, it may nevertheless be appropriate when plaintiff is unable to determine how much, if any, money is due him from another. | What is accounting? | Account Memo 2 - VP.docx | LEGALEASE-00000388-LEGALEASE-00000389 | Condensed_SA 0.92 | 0.92 | | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 16027 | Eaberly v. First Nat. Bank of Bethany, 919 S.W.2d 130 | 195+1 | Lindsey's affidavit fails to state an issue of material fact regarding irregularities in the execution of the guaranty agreement. A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform (Republic Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 114 (Tex.1978); Davis v. Texas Bank, 788 S.W.2d 182, 183 (Tex.App.-Dallas 1990, no writ). By definition, it is an undertaking by a third person to another to answer for the payment of a debt or the performance of a duty in the event that the named person fails to pay. (Sam, 788 S.W.2d at 183)… Pitenger v. Southwestern Paper Co., 156 S.W.2d 942, 936 (Tex.Civ.App.Fort Worth 1941, no writ). In other words, by creating a secondary obligation to the creditor, the first guarantor guarantees the performance of a primary obligation owed by another. (Sam, 788 S.W.2d at 183) Yet, we also found that Lindsey has not been given for a period of time different than the free due prescribed by the rule, the question then is whether the proceeding under… | Guaranty creates secondary obligation whereby guarantor promises to answer for debt of another and may be called upon to perform once primary obligor has failed to perform. | How does a guaranty create a secondary obligation on the guarantor? | Guaranty - Memo 3 RM.docx | LEGALEASE-00000515 - LEGALEASE-00000520 | Condensed, SA | 0.83 | | 1 | 1 | 1 | |
| 16028 | Jenkins v. Jenkins, 784 S.W.2d 640 | 277+1 | Reasonable notice is a prerequisite to court's power to order notice of a proceeding for a period of time different than that prescribed by rule governing notice. V.A.M.R. 44.01(d). | Reasonable notice is a prerequisite to court's power to order notice of a proceeding for a period of time different than that prescribed by rule governing notice. V.A.M.R. 44.01(d). | What is a prerequisite to the lawful exercise of the courts power? | Notice - Memo 5 - VP.docx | LEGALEASE-0000621- LEGALEASE-0000623 | Condensed, SA, Sub | 0.55 | | 1 | 1 | 1 | |
| 16029 | In re Enron Bioscience Securities Litigation, 235 F.R.D. 428 | 170H+429 | Relying on Rose, the Western District of New York complaint in Marphy v. Cadilac Radio & Plastics, Inc., 246-F.Supp.2d 198 (W.D.N.Y.1996), that plaintiff's affidavits and their attorney's affirmation were not "written instruments" within the meaning of the definition. The court ruled to the definition of "written instrument" contained in Black's Law Dictionary, and determined that a "written instrument" is a "document evidencing legal rights or duties or giving formal expression to a legal act or agreement," such as a deed, will, bond, lease, insurance policy or security agreement" id. at 1515. Because the plaintiff does not fall into this category, the court determined that it could not properly be considered part of a pleading. To support the "written instrument" basis for the distinction between pleading. To hold otherwise would blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief may be granted * * * id. (quoting Rose). | Where securities fraud complaint in action brought pursuant to the Private Securities Litigation Reform Act (PSLRA) was otherwise based on substantive allegations, attached affidavit provided by plaintiffs' counsel, which contained evidentiary support for the above allegations, was not a "written instrument" within meaning of rule providing that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," and thus it could not be considered by court in support of complaint. Securities Exchange Act of 1934, § 21D, as amended, 15 U.S.C.A. § 78u-4; Fed.Rules Civ.Proc.Rule 10(c), 28 U.S.C.A. | Can affidavit be considered as pleadings? | 0736.docx | LEGALEASE-00077340- LEGALEASE-00077381 | Condensed, SA, Sub | 0.28 | | 1 | 1 | 1 | |
| 16030 | State v. Hamilton, 291 Or. 283 | 181+10 | "Maker" has many meanings, depending upon the context in which it is used. See e.g. Black's Law Dictionary, 5th edition at 861, defines it as follows: "One who makes, frames or ordains; as a "law maker." One who makes or executes; as the maker of a promissory note. One who signs a note to borrow. One who signs a check, in this context, synonymously with drawer." We do not believe that the legislature meant to limit the definition of "maker" to the specialized meaning in commercial instruments, since with this definition there could be no maker of a deed, will or codicil, and they are all included under ORS 165.013. Rather, we believe that "maker" has its ordinary meaning in the broad context and findsthat in a case such as this Illinois courts would side with the weight of authority and hold that a narrow scope of written "maker" would… | Word "maker", as used in statute concerning false alteration of written instrument is to be understood in broad sense, as one who makes or executes, and in such sense, endorser is also maker, since endorser is executing instrument. ORS 165.002 et seq., 165.002(1), 6, 8), 165.013. | Should the term maker be legally understood in a broad sense? | Forgery - Memo 20 - 8.docx | ROSS-003288474-ROSS-003288475 | Condensed, SA, Sub | 0.65 | | 1 | 1 | | |
| 16031 | Mit & Partners Real, Ltd. P'ship v. Zadkoff, 10 F. Supp. 2d 922 Supp. 24 922 | 379+396 | Once this distinction is understood, Zadkoff's argument that only Justin could assert a claim of misappropriation must fail. Since the tort of misappropriation is premised on a person's economic interest in publicity rights, the value of plaintiffs who are creating or, may a misappropriation claim expands to the extent that such publicity rights are assignable. Thus, whether one licenses the exclusive rights in publicity rights to exploit a celebrity's name, likeness or personality has a property interest in those rights that is assignable protects a license the property interest under the original licensing agreement. Id. at 1281, see also, Factors Laboratories, Inc. v. Topps Chewing Gum, 210 F.2d866 (2d Cir.1954), cert. denied, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed.343 (1953). We agree and find that in a case such as this Illinois courts would side with the weight of authority and hold that a narrow scope of a celebrity's name may state a cause of action for misappropriation of the right to publicity. | Under Illinois law, as predicted by district court, exclusive licensee of the right to exploit a celebrity's name, likeness, or personality may state a cause of action for misappropriation of the right to publicity. | Is the right to exploit ones name or likeness assignable? | 003065.docx | LEGALEASE-00115939- LEGALEASE-00115940 | Condensed, SA, Sub | 0.79 | | 1 | | | |
| 16032 | Kelly v. Kenafic Coal Co., 135 W. Va. 594 | 260+8 | A profit a prendre, also called "right of common" is a right exercised by one man in the land of another with the additional right to participate in the profits of the soil of Washington, a right to take part of the produce of the land. See Black's Law Dictionary, 3rd edition, page 1460; 3 Bouvier's Law Dictionary, Rawle's 3rd Revision, page 2739. At common law the right of common was treated as an incorporeal hereditament consisting chiefly of four kinds, common of pasture, of piscary, of turbary and of estovers. 1 Minor's Institutes, Fourth Edition, 1892-93, page 93; Minor on Real Property, 2d Edition, Ribble, Section 70; 14 Words and Phrases, Profit a Prendre, 238. In this jurisdiction the law seems settled and clearly applicable to the right to go upon land and take designated substances therefrom, such as oil and gas, is a profit a prendre. Some courts have classified the right as a profit a prendre, as in the case of Eastern Kentucky River Coal Corporation, 235 Ky. 611, 31 S.W.2d 947. In the Findlay case, a profit a prendre is something in the nature of an easement and is an estate or interest in land other than a possession, and is distinguishable from an easement by reason of the doctrine relating to profits a prendre. A profit a prendre is an incorporeal right, and is to be classified as an interest or estate in land rather than a mere easement, and is assignable and inheritable. See King v. Elston, 1 S.W.2d 228; 123 N.E.326, 120 L.R.A.; the dominant tenant or owner of the dominant estate. Profits a prendre, not being in their nature of the term, is an easement. See Hanson v. Sandvik, 38 N.C.2d 203; and Ann.Cas.1917D, 93. See Howard v. Clanton, 3, Scholle on Real Estate, 3247; and the annotation to the same volume at page 553. | A profit a prendre in gross "is in the nature of an estate in land rather than a mere easement and is assignable and inheritable. | Is profit a prendre in gross assignable and heritable? | Assignments - Memo28 MS.docx | ROSS-003302274-ROSS-003302278 | Condensed, SA | 0.92 | | 1 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,029 |
| 16033 | Andrews v. Jackson Cty., 43 Mich. App. 160 | 1,491+63 | There is no right to picket, but local government may take reasonable regulatory action under the police power to prevent pollution. | In the case of owner, one additional factor must be considered. There is no right to picket, and local government may take a reasonable regulatory action under the police power to place or prevent pollution. If it is established that an agent has a right to go to a source of pollution, the detriment to the lands of others must be weighed against the disproportion between the benefits and the assessment. | Is there a right to picket? | 00004.docx | LEGALEASE-00160011-LEGALEASE-0016013 | Condensed, SA, 0.68 | 0.68 | 0 | 1 | 1 | 1 | |
| 16034 | Glens Falls Ins. Co. v. Consol. Freightways, 242 Cal. App. 2d 774 | 48A+144.1(4) | Proof of financial responsibility required for Automobile Financial Responsibility Law may be given by written certificate of insurance carrier authorized to do business in California that motor vehicle liability policy had been issued and is in effect, by deposit with motor vehicle department of $25,000, or by written certificate of self-insurer holding certificate of self-insurance. West's Ann.Vehicle Code, SS 16051, 16451, 16430, 16436. | In the instant case, Glens Falls attempts to invoke and to apply against Consolidated the theory of "self-insurance." The theory which has developed only in cases involving automobile liability insurance policies. The authorities which bear on this case deal specifically with such situations. Defendant Consolidated is not an insurance carrier. Nor does this case involve a written certificate of self-insurance as provided by the statutory sections referring to self-insurance (ss 16035, 16036) nor any other species of dual code insurance against liability provisions that could constitute a policy of motor vehicle liability insurance or that said certificate shall be deemed to incorporate or embrace provisions required in such policies (s 16451). Indeed the Vehicle Code nowhere intimates any connection between section 16451 and sections 16035, 16036. A certificate of self-insurance is not a motor vehicle liability policy of insurance. In a word, it is not an insurance policy at all and plaintiff has no method of authority that it is. As we previously mentioned, it is merely one of three several methods provided by statute for establishing the proof of financial responsibility... As set forth in 16430, Glens Falls attempts to transmute and classify the certificate of "self-insurance" or "self" to the magical word "self", to assure that the resultant product is "insurance" and thereafter to engraft on such "insurance" all of the rules dealing with liability insurance. No authority, statutory or decisional, supports such a construction. | Is a certificate of self-insurance a motor vehicle liability policy? | 03839.docx | LEGALEASE-00078135-LEGALEASE-00078137 | Condensed, SA, Sub 0.75 | 0.75 | 0 | 1 | 1 | 1 | |
| 16035 | Hallock v. Bushaoer, 133 N.J. Eq. 102 | 277+12 | Second purchaser, chargeable with notice of vendor's previous contract, be compelled to convey to a former purchaser holding such previous contract, and to whom it is sufficient to cite two cases wherein the point decided. | The law is well settled that a second purchaser, having notice of a previous contract, will be compelled to convey to a former purchaser holding such previous contract. As to this it is sufficient to cite two cases wherein the point decided is squarely made. Wagner v. Mallory, 169 N.Y. 501, 62 N.E. 584 (1902). The law is well settled that a purchaser with notice of a previous contract to sell is bound to perform it, that is, the responsibility for a waste of whatever character." Tauls v. Crosby, 258 So.2d 135, 137 (Fla. 1st DCA 1972). It is well settled that life tenants are bound in equity as well as at law to take ordinary care to preserve the property, maintaining the life of the property and that no inconsiderable waste would result in damage to the corpus of the property or to the reversion or the remainder persons. If done in a manner inconsistent with good husbandry and not done as would a reasonable proprietor of the land, it is liable for damages." J.R. Boyce Florida Real Estate Transactions, S 16.07 (1) [1987] (citing Tauls, 258 So.2d 135 (Fla. 1st DCA 1972)). The vested remainderman is the instant case properly brought an action for waste against Andrew's heirs. Camp, 26A So.2d 25 (Fla. 4199 [1946] (vested remaindermen has right to protect real property and maintain an action for waste or injury to the inheritance). The trial court was correct in holding that no reversion inconsistent with this form of unpaid real property taxes for the years 1984, 1985, and 1986. | "Can a second purchaser, chargeable with notice of vendor's previous contract be compelled to convey to a former purchaser holding such previous contract?" | Notno-Mtn-31-15.docx | ROSS-000282721-ROSS-000282722 | Condensed, SA, Sub 0.77 | 0.77 | 0 | 1 | 1 | 1 | |
| 16036 | Chapman v. Chapman, 526 So.2d 131 | 315+134 | Duty owed by the tenant to remaindermen is comparable to that of a trustee or quasi-trustee, as the tenant cannot injure the property to the detriment of the rights of the remainderman. | Duty owed by the tenant to remaindermen is comparable to that of a trustee or quasi-trustee, as the tenant cannot injure the property to the detriment of the rights of the remainderman. | What is the nature of relationship between a life tenant and a remainderman? | 00425.4.docx | LEGALEASE-00115995-LEGALEASE-00115996 | Condensed, SA, Sub 0.88 | 0.88 | 0 | 1 | 1 | 1 | |
| 16037 | Barton v. Milling Gen Chry., 253A+202 | 253A+202 | When determining whether an agency has been clearly vested with the authority to interpret a provision of law, reviewing court does not focus its inquiry on whether the agency does or does not have the broad authority to interpret the act as a whole, instead, each case requires a careful look at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes. (C.A. 5 17A.19(10)(c, l)) | When determining whether an agency has been clearly vested with the authority to interpret a provision of law, reviewing court does not focus its inquiry on whether the agency does or does not have the broad authority to interpret the act as a whole, instead, each case requires a careful look at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes. (C.A. 5 17A.19(10)(c, l)) | Is it required that an agency be vested with express authority to interpret a statute? | Administrative Law_M_3-V0ORgZMoD_O6FfhQ3d R26rA3ht.docx | ROSS-000000094-ROSS-000000097 | Condensed, SA, Sub 0.56 | 0.56 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16038 | Oltarsh v. Turf Broadway, 12 Misc. 2d 984 | 25+5(2) | Section 206, Negotiable Instruments Law, sets forth what constitutes a material alteration. The only part applicable to the note here at issue is the last overall clause, "or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."There is ample law that changing a non-negotiable instrument to one that is negotiable is a material alteration. (Booth v. Powers, supra, 56 N.Y. 29; Hauswald v. Katz, supra; Aamoth v. Hunter, 33 N.D. 582, 157 N.W. 299; 10 C.J.S. Bills and Notes " 486, p. 1073) but I could find no case that would apply to the situation at issue. Here, a note was duly endorsed by the payee to one Blau who endorsed it to the plaintiff. The alteration in the note is between these two endorsements. Blau crossed out what defendant Turf had written. That writing was in furtherance of an agreement between Turf and Blau. The latter crossed it out after a disagreement with Turf, the maker of the note. This was done after the note was executed, delivered to the payee and endorsed by the payee to Blau. The note as originally issued by the maker was not altered to change its effect. The insertion by the maker after delivery and negotiation, which was obliterated by the then holder, was only evidence of a collateral agreement between the parties and did not alter the underlying agreement. | Changing a nonnegotiable instrument to one that is negotiable is a "material alteration" invalidating the note as against a holder in due course. Negotiable Instruments Law, SS 91, 205, 206. | Is a change of a writing from a non-negotiable instrument into a negotiable instrument a material alteration of the original instrument? | Forgery - Memo 31 - JS.docx | LEGALEASE-00001264- LEGALEASE-00001265 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 16039 | Cislo v. City of Shelton, 35 Conn. Supp. 645 | 268+63.1 | General Statutes s 7-422 allows, but does not require, any town, city or borough to create a personnel appeals board as set out in that statute. General Statutes s 7-193(b) provides in part that "(e)very town, city or borough shall have such other . . . boards, commissions and agencies as are provided by the general statutes or by the charter." Section 5.3.3 of the Shelton city charter expressly provides for a public employees appeals board. The city of Shelton was expressly authorized by statute to set up this appeal board, and it properly did so under the rule that a municipality can exercise only such power as the state grants it. Moreover, the courts must search for statutory authority for the enactment rather than searching for a statutory prohibition against it; Avonside, Inc. v. Zoning & Planning Commission, 153 Conn. 232, 236, 215 A.2d 409; and the statute authorized the establishment of the PEAB in Shelton. | Courts must search for statutory authority for municipal enactment rather than search for a statutory prohibition against it. | Do the courts to search for a statutory prohibition for an enactment while determining whether a regulation was enacted within the authority of the enactor? | Zoning and Planning - Memo 26 - JS.docx | ROSS-003288135-ROSS-003288137 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 16040 | Omega Protein v. Samson Contour Energy E&P LLC (In re Omega Protein), 548 F.3d 361 | 354+208 | Under the Limitation of Liability Act, a vessel owner may limit its liability for maritime casualties to "the value of the vessel and pending freight." 46 U.S.C. " 30505(a). "However, if the vessel's negligence or unseaworthiness is the proximate cause of the claimant's loss, the plaintiff-in-limitation must prove it had no privity or knowledge of the unseaworthy conditions or negligent acts." Trico Marine, 332 F.3d at 789 (citing Cupit v. McClanahan Contractors, Inc., 1 F.3d 346, 348 (5th Cir. 1993)); see " 30505(b). We have stated that "privity or knowledge" "implies some sort of 'complicity in the fault that caused the accident.'" Brister v. A.W.I., Inc., 946 F.2d 350, 355 (5th Cir. 1991) (quoting Nuccio v. Royal Indem. Co., 415 F.2d 228, 229 (5th Cir. 1969)).The owner has privity "if he personally participated in the negligent conduct or brought about the unseaworthy condition." Trico Marine Assets, 332 F.3d at 780 (quoting Pennzoil Producing Co. v. Offshore Express, Inc., 943 F.2d 1465, 1473 (5th Cir. 1991)). A corporate owner is assumed to know what the corporation's managing officers knew or "should have known with respect to conditions or actions likely to cause the loss." Id. at 789-90 (quoting Pennzoil, 943 F.2d at 1473-74). "The question of 'privity or knowledge must turn on the facts of the individual case.'" Brister, 946 F.2d at 355-56 (quoting Gibboney v. Wright, 517 F.2d 1054, 1057 (5th Cir. 1975)). | Vessel owner has "privity" or knowledge of the unseaworthy conditions or negligent acts, such that owner may not limit its liability for maritime casualties, if he personally participated in the negligent conduct or brought about the unseaworthy condition. 46 U.S.C.A. S 30505(a). | "In maritime law, does privity and knowledge mean that a shipowner knew or should have known that a certain condition existed?" | Admiralty Law - Memo 13 - JS.docx | LEGALEASE-00001477- LEGALEASE-00001479 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 16041 | United States v. Nueci-Pe[illegible]a, 711 F.3d 191 | 110+1030(2) | The MDLEA makes it unlawful for an individual to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board . . . a vessel of the United States or a vessel subject to the jurisdiction of the United States." 46 U.S.C. " 70503(a)(1). That prohibition "applies even though the act is committed outside the territorial jurisdiction of the United States." Id. " 70503(b). A vessel "subject to the jurisdiction of the United States" includes "a vessel without nationality." Id. " 70502(c)(1)(A). "A vessel without nationality" in turn is defined, as relevant here, as "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." Id. " 70502(d)(1)(C). The MDLEA does not require a nexus between a defendant's conduct and the United States. See id. " 70502(c). Focusing on that, Nueci contends the Piracies and Felonies Clause does not authorize Congress to punish drug trafficking on the high seas under the MDLEA without requiring a nexus between the unlawful conduct and the United States. We need not delve into the merits of Nueci's argument because even assuming his conviction under the MDLEA was error on that basis, the error was certainly not plain. | There was no plain error in defendant's conviction for possession with the intent to distribute over 1140 pounds of cocaine and heroin while on board a vessel in violation of the Maritime Drug Law Enforcement Act (MDLEA), on grounds that in enacting the MDLEA Congress exceeded its authority under the Piracies and Felonies Clause to define and punish piracies and felonies committed on the high seas by not requiring a nexus between the charged conduct and the United States; other circuit courts of appeal had held that the MDLEA was a constitutional exercise of Congress' power under the Piracies and Felonies Clause, and there was no Supreme Court precedent holding otherwise. U.S.C.A. Const. Art. 1, S 8, cl. 10; 46 U.S.C.A. SS 70502(c), 70503(a)(1), (b). | "How is ""a vessel without nationality"" defined under admiralty law?" | 004071.docx | LEGALEASE-00116142- LEGALEASE-00116143 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16042 | Sav v. Cadillac Auto. Co. of Boston, 263 F. Supp. 1350 | 257+167 | Appeal, even from formal state or federal court adjudication, is a right which conferred by statute. Cortez v. Beneficial Loan Corp., 268, 1337 U.S. 541, 545-66, 69 S. Ct. 1221, 1225, 93 L.Ed. 1528. It is well established that "[n]o one is required by the Federal Constitution to oppose appellate review at all." Griffin v. Illinois, 1956, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891. Likewise, arbitration is informal adjudication; quasi judicial in nature, Cortez v. Washington Fire and Marine Ins. Co., D.S.C., 1968, 278 F.Supp. 391, 396-97, and the right of appeal is conferred by statute. This inference does not affect the arbitration as a balanced result. 9 U.S.C. ss 1-14 (1976) is statutory authority which they claim requires this court to review the arbitration award; that is the controlling matter in the context. We find to the contrary in the circumstances of this case. | Appeal is not required by Federal Constitution but is rightfully conferred by statute, and right of appeal from arbitration, which is informal adjudication, quasi-judicial in nature, is conferred by statute. 9 U.S.C.A. SS 1-14. | What is the nature of arbitration? | 004000.docx | LEGALEASE 00152635 / LEGALEASE 00152670 | Condensed, SA, 0.74 | | 0 | 1 | 1 | 1 | 1 |
| 16043 | Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp., 244 B.R. 209 | 51+2422 (54.1) | Subsequent decisions have only reinforced Conard's essential holding that a United States court may defer to a foreign bankruptcy proceeding, even where a domestic creditor joins an enforceable arbitration clause. See In re Hourani, 288 B.R. at 874 (rejecting creditor's claim of unfettered entitlement to arbitrate and observing that "bankruptcy sometimes causes changes in contractual rights necessary to benefit the estate as a whole," and that "as Conard demonstrates, the potential for modifying contractual rights is inherent in (and sacrosanct in [creditor's]) right") (citations omitted). In such cases, the right to litigate is not a substantive right than the contractual right to arbitrate, as the Second Circuit pointed out in Conard... The purpose of the FAA was not to enforce arbitration rights over litigation rights, but rather to remedy centuries of judicial hostility to arbitration agreements ... and to place arbitration agreements "on the same footing as other contracts." (Scherling Schenk v. Alberto-Culver Co., 417 U.S. 506, 517 n 1, 94 S. Ct. 2449, 41 L.Ed.2d 270 (1974)). Vesta Steamship also cites the Cronin & Co. case, 618 F. 2d 661 (2d Cir.) at 664-668 (3d Cir.) for the proposition that if we English court had not entered a judgment against Sales, this case would be automatically stayed from Conard Conard...and that the English court had not entered a judgment against Sales, this case that would be mandatorily stayed pending the foreign proceeding. Here, the bankruptcy proceeding where arbitration could be granted summarily, and arbitral award issued in favor of creditor is not... | While bankruptcy court supervising domestic insolvency may grant relief from automatic stay to allow creditor to commence or continue arbitration, the considerations involved in granting exception from injunction entered in ancillary proceedings concerning foreign debtors are markedly different, as such proceedings do not permit bankruptcy court to make any determination of debtor's property interests, or to make any determination concerning timing of liquidation or manner in which validity of creditor's claims are assessed. Bankr Code, 11 U.S.C.A. S 304. | Is the right to litigate more substantial than the contractual rights in arbitrate? | 00421.docx | LEGALEASE 00152380 / LEGALEASE 00152382 | Condensed, SA, Sub 0.81 | | 0 | 1 | 1 | 1 | 1 |
| 16044 | Maersk v. Neewra, 687 F. Supp. 2d 300 | 16+17.1 | The district court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, which gives district courts exclusive jurisdiction of all cases of other remedies to which they are otherwise entitled." Under Ruhl v. Corp. of Practical 9(h)... "whether a claim for relief falls within the admiralty or maritime jurisdiction and also within the court's subject matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 ... A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated." Rule 38(e) expressly provides that whether there is a jury trial on a claim brought in admiralty (and arising out of a claim that is in admiralty or maritime form). | A tort claim falls within a federal court's admiralty jurisdiction if (1) the alleged tort occurred in navigable water (the "location" or "situs" requirement), and (2) the activity giving rise to the incident had a substantial relationship to traditional maritime activity, such that the incident had a potentially disruptive influence on maritime commerce (the "connection" or "status" requirement). | What happens when a claim for relief falls within the federal court's admiralty jurisdiction and also within the court's subject matter jurisdiction? | 00081.docx | LEGALEASE 00116314 / LEGALEASE 00116316 | Condensed, SA, Sub 0.59 | | 0 | 1 | 1 | 1 | 1 |
| 16045 | City of San Antonio v. Public Util. Comm'n of Texas, 906 S.W.3d 660 | 154+1262 | In general, a reviewing court must construe administrative rules, which have the same force as statutes, in the same manner as statutes. Center for Economy Disputes Inc., LLC, 488 S.W.3d at 814 (We interpret administrative rules, like statutes, under traditional principles of statutory construction.). When an administrative rule or statute is unambiguous, it must be interpreted based on its plain language, unless that interpretation would produce an absurd result. Rodriguez v. Service Lloyds Ins. Co., 997 S.W.2d 248, 254 (Tex. 1999); see also Combs v. Energy Houston Elec., LLC, 488 S.W.3d at 814 ("[T]he framing thrust of Tex. Gov't Code § 311.023... 361 (Tex. 1999) (noting 361 S.W.3d 811, 817). If an agency has failed to follow the clear, unambiguous language of its own regulation, we must reverse its action as arbitrary and capricious. Rodriguez, 997 S.W.2d at 255; see also Center for Energy Disputes Commodities Grp., Inc., 353 S.W.3d 588, 593 (Tex. App.-Austin 2011, pet. denied). | An administrative rules construed like statutes? | Are administrative rules construed like statutes? | 00541.docx | LEGALEASE 00116370 / LEGALEASE 00116371 | Condensed, SA, 0.87 | | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16046 | Framlau Corp. v. Dembling, 360 F. Supp. 806 | 15A+1622 | The government first moves to dismiss on the ground that plaintiff has failed to cite a valid jurisdictional basis for the complaint. In its complaint, plaintiff avers subject matter jurisdiction based on 5 U.S.C. " 702, governing appeals from administrative decisions, and 28 U.S.C. " 2202, providing further relief based on a declaratory judgment. Since the Administrative Procedure Act, 5 U.S.C. " 701 et seq. is remedial and not jurisdictional it cannot serve as an independent basis for jurisdiction here. Zimmerman v. United States Government, 422 F.2d 326, 330 (3rd Cir. 1970); Local 542, International Union of Operating Engineers v. N.L.R.B., 328 F.2d 850, 854 (3rd Cir. 1964), cert. denied, 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964); Pan American World Airways, Inc. v. C.A.B., 129 U.S.App.D.C. 159, 392 F.2d 483, 494 (1968); Twin Cities Chippewa Tribal C. v. Minnesota Chippewa Tribe, 370 F.2d 529, 532 (8th Cir. 1967); Ove Gustavsson Contracting Company v. Floete, 278 F.2d 912, 914 (2nd Cir. 1960), cert. denied, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960). Similarly, the Declaratory Judgment Act, 28 U.S.C. "" 2201, 2202, is not a jurisdictional statute and does not confer subject matter jurisdiction where none otherwise exists. This enactment merely creates a specific type of relief available in actions where the federal district court already has jurisdiction. Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970); Ragoni v. United States, 424 F.2d 261, 264 (3rd Cir. 1970); Langston v. United States Attorney General, 293 F.2d 316, 317 (3rd Cir. 1961); Venson v. State Board of Parole and Probation, 384 F.2d 238, 239 (9th Cir. 1967); Mattingly v. Elias, 325 F.Supp. 1374, 1375 (E.D.Pa.1971); Conover v. Montemuro, 304 F.Supp. 259, 261 (E.D.Pa.1969); Jones v. Board of Parole, Commonwealth of Pa., 281 F.Supp. 62, 63 (E.D.Pa.1968); North Allegheny J. Sch. Sys. v. Secretary of Health, etc., 196 F.Supp. 144, 147 (W.D.Pa.1961); Ambassade Realty Corporation v. Winkler, 83 F.Supp. 227, | Administrative Procedure Act, being remedial and not jurisdictional, cannot serve as an independent basis for jurisdiction. 5 U.S.C.A. S 701 et seq. | Is Administrative Procedure Act a jurisdictional statute? | 004271.docx | LEGALEASE-00116562-LEGALEASE-00116564 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 16047 | United States v. Miller, 317 U.S. 369 | 148+122 | The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken. | "Just compensation," within constitutional provision requiring that just compensation be given for private property taken for public use, means the full and perfect equivalent in money of property taken, so that owner will be put in as good position pecuniarily as he would have occupied if his property had not been taken. U.S.C.A.Const. Amend. 5. | What does the term just compensation imply under the law? | Eminent Domain - Memo 9 - AKA.doc | LEGALEASE-00002128-LEGALEASE-00002129 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 16048 | Merrill v. Davis, 100 N.M. 552 | 253+201 | Initially, we note that common-law marriage is not acknowledged in New Mexico. In re Estate of Lamb, 99 N.M. 157, 655 P.2d 1001 (1982); Dominguez, 95 N.M. 1, 617 P.2d 1322; In re Gabaldon's Estate, 38 N.M. 392, 34 P.2d 672 (1934). For a marriage to be valid, it must be formally entered into by contract and solemnized before an appropriate official. Hazelwood v. Hazelwood, 89 N.M. 659, 556 P.2d 345 (1976); NMSA 1978, "" 40"1"1 and "2. | For a marriage to be valid, it must be formally entered into by contract and solemnized before an appropriate official. NMSA 1978, SS 40-1-1, 40-1-2. | Is a marriage valid without solemnization? | Marriage and Cohabitation - Memo 10 - MS.docx | LEGALEASE-00002203-LEGALEASE-00002204 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 16049 | Bibiano v. Lynch, 834 F.3d 966 | 24+385 | We have yet to decide whether the venue provision in " 1252(b)(2) is jurisdictional, i.e., whether improper venue strips us of subject matter jurisdiction, requiring dismissal or transfer of the case. We join the noncontroversial holding"shared by the nine other circuits which have addressed this issue in detail"that " 1252(b)(2)'s venue provision is not jurisdictional. As a result, we have subject matter jurisdiction over Bibiano's claim even if venue is not proper here. Because of the unique circumstances of this case discussed below, we keep Bibiano's petition in the Ninth Circuit in the interests of justice. We remand to the BIA for further proceedings. | Given unique circumstances of case in which alien, a Mexican citizen and transgender woman who returned to United States unlawfully following her removal pursuant to in absentia removal order issued by immigration judge (IJ) in the Ninth Circuit, petitioned for review of Board of Immigration Appeals (BIA) order upholding the denial of her request for withholding of removal by IJ in the Eleventh Circuit, the interests of justice favored keeping petition in the Ninth Circuit, as opposed to transfer pursuant to court's inherent authority; the government acknowledged that alien's confusion over venue was understandable, as case spanned multiple decision-makers and three jurisdictions, one of which was the Ninth Circuit where alien originally filed for asylum, there were no allegations of gamesmanship or forum shopping, case had been pending for more than a year and had been fully briefed under Ninth Circuit law, and transfer would waste judicial resources and cause unnecessary delay. | Can a court have jurisdiction even if it is not the proper venue? | 004464.docx | LEGALEASE-00116471-LEGALEASE-00116472 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 16050 | Noell v. City of Carrollton, 431 S.W.3d 682 | 148+1 | Finally, the Order is not valid based on the City's power to abate nuisances. Homeowners complained CPSB ordered the airport closed based on violations at the airport that did not concern aviation safety on the landing strip. Furthermore, Homeowners, Noell, and the Zoning Committee had taken numerous steps to address the City's safety concerns, including hiring an AAAE approved airport manager, drafting rules and regulations for the airport's operation, and obtaining insurance. At the CPSB hearing, the City readily admitted it was "immaterial" whether any violations had been corrected by anyone other than the owner because "[o]bviously you have to take the ordinance as you find it" and the ordinance required the "owner" of the airport to take the steps to bring the airport in compliance. Contrary to the City's suggestion, although it has the power to abate nuisances, it does not have the power to declare or define them, at least to the extent it seeks to utilize a nuisance determination to destroy property rights. In other words, the State may not by declaration transform private property into public property under the police power. Cf. Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1031, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (explaining that if the government seeks to justify a zoning ordinance that has effect of what would otherwise be a taking under its power to abate nuisances, the government must do more than merely proffer a legislative declaration). Here, the Ordinance allowed CPSB to do just that by purporting to declare that any violation of its provisions, regardless of any actual effect on safety, constituted a nuisance. Because the Order operated to destroy Homeowner's easements, without due process of law, the trial court did not err in reversing the Order. | Under state constitution's provision governing taking of property, state may not by declaration transform private property into public property under the police power. Vernon's Ann.Texas Const. Art. 1, S 17. | Can a state transform private property into public property? | Eminent Domain - Memo 13 - AKA.doc | LEGALEASE-00002343-LEGALEASE-00002344 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16051 | In re Estate of Stonie, 902 So. 2d 515 | 253+255 | A valid marriage according to the law of a foreign nation will be recognized as such in the United States. | At the beginning of the allocation hearing, the probate court noted that Melissa had the burden of proving the existence of the disputed marriage and... | Are foreign marriages recognized in the United States? | Marriage and Constitution - Memo 13 - AK.docx | LEGALEASE 00003360 LEGALEASE 00003361 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |
| 16052 | Dep't of Envt. Prot. v. Lambeck Enterprises, 9 So. 3d 434 | 148+4 | Simply put, the ERP, as a creature of statute, is governed by statute. It can exercise only the power granted to it by the legislature. It is not empowered to act as a receiver for an abandoned wastewater treatment facility, despite its superficial... | Finally, the Jury reserved the following instruction "to constitute vehicular homicide, the state must prove a causal connection between the depth of human being and the criminal conduct of a defendant so that the causal connection between criminal conduct... | Is the Department of Environmental Protection (DEP) limited to exercise those powers vested in it by the General Assembly? | Environmental law - Memo 7 - B.docx | LEGALEASE 00002387 LEGALEASE 00002388 | Condensed, SA, Sub 0.64 | 0.64 | | 1 | | 1 | |
| 16053 | State v. Sanchez, 42 Wash. App. 309 | 110+1367(1) | Finally, the Jury reserved the following instruction "to constitute vehicular homicide, the state must prove a causal connection... | Information alleging that defendant, while under the influence, or by operation of vehicle in reckless manner or with disregard for safety of others, did drive vehicle injuring a victim, whose death was proximate result... | Is death considered to be an essential element in vehicular homicide? | Homicide - Memo 6 - BM.docx | LEGALEASE 00002315 LEGALEASE 00002316 | Condensed, SA, Sub 0.16 | 0.16 | | 1 | | 1 | |
| 16054 | Fountain Park Co. v. Hensler, 199 Ind. 95 | 148+1 | The second of the principal questions involved here concerns the validity of the act, dependent upon whether it attempts to confer the power of eminent domain upon a private corporation... | Constitutional provisions relating to eminent domain are not grants of power, but limitations on use of power inherent in sovereignty. | Do eminent domain provisions grant or limit the governments exercise of power? | Eminent Domain - Memo 23 - AKA.doc | LEGALEASE 00002815 LEGALEASE 00002816 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | | 1 | |
| 16055 | State ex rel. Earhold v. Superior Court of State, Magiststs, 44 Wash. 2d 607 | 148+1 | The power of eminent domain does not depend for its existence on a specific grant in the Constitution. It is inherent in sovereignty and exists as a sovereign state without any recognition thereof in Constitution. It is founded on the law of necessity... | Power of eminent domain does not depend for its existence on specific grant in Constitution. It is inherent in sovereignty and exists as a sovereign state without any recognition thereof in Constitution. | Does the power of eminent domain depend for its existence upon any constitutional provisions? | Eminent Domain - Memo 28 - AKA.doc | ROSS-003284319 ROSS-003284340 | Condensed, SA, Sub 0.62 | 0.62 | 1 | 1 | | 1 | |
| 16056 | Head v. Head, 714 So. 2d 231 | 253+798 | Until also argues in brief that goodwill should have been considered in connection with evaluating the value of business. Goodwill is not regarded as property right in connection with commercial businesses. Its value may properly be included in the valuation... | Goodwill is recognized as incidental property right in connection with commercial businesses and it is value may properly be included in valuation of commercial-owned commercial business, in contrast to one-person "professional" corporation where goodwill results solely from... | Is goodwill an incidental property in connection with commercial business? | 004758.docx | LEGALEASE 00130999 LEGALEASE 00137000 | Condensed, SA, Sub 0.05 | 0.05 | | 1 | | 1 | |
| 16057 | Cafferty v. State, Dep't of Transp., Div. of Motor Vehicle Servs., 144 Idaho 324 | 302+1 | Our Rules of Civil Procedure establish a system of notice pleading. Cook v. Skyline Corp., 135 Idaho 26, 33, 13 P.3d 857, 864 (2000). A complaint need only contain "a concise statement of the facts constituting the cause of action and a demand for relief. I.R.C.P. 8(a)(1); Clark v. Olsen, 110 Idaho 323, 325, 715 P.2d 993 (1986)... | The Rules of Civil Procedure establish a system of notice pleading. Rules Civ.Proc., Rule 8(a)(1). | Does the Rules of Civil Procedure establish a system of notice pleading? | 004844.docx | LEGALEASE 00159363 LEGALEASE 00159365 | Condensed, SA, Sub 0.93 | 0.93 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16058 | Stapleman v. State, 680 P.2d 73 | 50+16 | Conversion of property by bailee may be committed by refusing to redeliver to bailor at expiration or completion of bailment. | Conversion of property by bailee may be committed by refusing to redeliver to bailor at expiration or completion of bailment | What acts of the bailee constitute conversion of property?? | 00980.docx | LEGALEASE-00117091-LEGALEASE-00117092 | Condensed, SA | 0.25 | 0 | | | 1 | |
| 16059 | Wucasia Ins. Co. v. All Chicago-land Moving & Storage Co., 333 Ill. App. 3d 1116 | 50+31(1) | | A prima facie case of bailment creates a rebuttable presumption that the defendant acted negligently | Is the presumption of negligence rebuttable in a bailment? | Bailment - Memo 51-8K.docx | ROSS-003010293-ROSS-003010293 | Condensed, SA | 0.89 | 1 | 1 | 0 | 1 | |
| 16060 | Grootemaat v. United Air Lines, 939 F.2d 1100 | 25+112 | | Although party is bound by arbitral award only where it has agreed to arbitrate, agreement may be implied from party's conduct. | Is an arbitral award binding only where a party has agreed to arbitrate? | Alternative Dispute Resolution - Memo 84-15.docx | ROSS-003001329-ROSS-003001331 | Condensed, SA | 0.93 | | | | 1 | |
| 16061 | Dresch v. Hoffman, 165 Cal.App. 3d 152 | 310+111 | | Statutes relating to civil death or suspension of civil rights are penal in nature and are to be strictly construed. | How should civil death statutes be construed? | 00969.docx | LEGALEASE-00117195-LEGALEASE-00117196 | Condensed, SA, Sub | 0.83 | | | | 1 | |
| 16062 | Caplan v. Keystone Weaving Mills, 431 Pa. 407 | 307+D(5) | | Order changing venue was not appealable where lower court exercised its discretion and made a choice between two courts which were of equal competence in the action, and the appeal did not question the jurisdiction of court of county where suit was instituted, nor did it dispute that such county was one of proper venue. Pa.R.C.P. No. 1006(d, e), 12 P.S. | "For procedural purposes, do the courts treat an objection to venue the same way as raising a question of jurisdiction? | 00332.docx | LEGALEASE-00117267-LEGALEASE-00117269 | Condensed, SA, Sub | 0.59 | | | | 1 | |
| 16063 | 20th Century Ins. Co. v. Garamendi, 8 Cal. 4th 216 | 15A+1057 | | Adoption of regulation by administrative agency is action that is, in nature, quasi-legislative rather than quasi-adjudicative. West's Ann.Cal.Gov.Code §§ 11342(b), 11346. | Is adoption of a regulation by an administrative agency a quasi-legislative act? | Administrative Law - Memo 182-1-M.docx | ROSS-003287512-ROSS-003287513 | Condensed, SA, Sub | 0.77 | | | | 1 | |

2828

Appendix D

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,564 | 14,873 | 23,876 | 9,029 |
| ROW | Judicial Opinion | WNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 16064 | Com. v. Kocsis, 4179a. Super. 534 | 207v2 | In addressing this argument, the trial court first relied on the principle of construction set forth in section 105 of the Crimes Code. That section provides the provision of this title that be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted it further the general purposes stated in this title and the special purposes of the particular provision involved... 18 Pa.C.S. * 105. Applying this principle, the trial court determined that most includes anal and oral intercourse between a father and his son, for the following reasons, with which we agree first of all, the definition of sexual intercourse found in Webster's Ninth New Collegiate Dictionary, (1987), includes "intercourse involving genital contact between individuals other than the penetration of the vagina by the penis." Furthermore, as has been previously stated, the purpose of the statutory prohibiting incest, as concealed in the Superior Court, can not only guaranty integrity but also to protect children from parental sexual abuse and to promote the family unit. Therefore the Court construed to a statute a construction that would promote all of the purposes of the statute. Such a construction requires that the Court find that most of the crime of incest, as defined in Chapter 43 of the Crimes Code, includes anal and oral intercourse between a father and his sons. Trial Court Opinion (Caruso, J.), 10/29/02, at 6-7. | Most statute protects children from parental or familial sexual abuse and then sexual intercourse under most situates? | Does oral intercourse amount to sexual intercourse under incest statute? | 000468.docx | LEGALEASE 00217430-LEGALEASE 00217431 | Condensed, SA, 0.88 | | 839 | 1 | 1 | 1 | 1 |
| 16065 | Calvert & Marsh Coal Co. v. Pass, 393 So. 2d 955 | 386v1 | This case involves numerous, separate acts of trespass on plaintiffs' land. While the initial entries may have been negligent, subsequent entries could well have been wanton. The record reveals that when plaintiff first learned of the trespass, it could well have been a negligent action. After plaintiff's had notified defendant the next day that it was trespassing, a subsequent entry on the following days could be construed as wanton. Wantonness in a trespass action is established by the mere knowledge on the part of the defendant of his invasion of the plaintiff's rights. Ex parte Birmingham Realty Co., 183 Ala. 444, 63 So. 67 (1913). | Wantonness in a trespass action is established by mere knowledge on the part of the defendant of his invasion of the plaintiff's rights. | What is the meaning of wantonness in a trespass action? | Trespass - Memo 45 - RK.docx | ROSS-003109015-ROSS-003109017 | Condensed, SA, 0.79 | | 1 | 0 | 1 | 1 | 0 |
| 16066 | In re Succession of Dysart, 206 So. 3d 357 | 253v33 | The mere mixing of separate funds and community funds in the same account does not of itself convert an entire account into community property. Civ. Code Ann. art 2341. Id. In this case, the separate funds are comingled with community funds indiscriminately so that the separate funds cannot be identified or distinguished from the community funds and all the funds characterized as community funds. Id. When separate funds can be traced with sufficient certainty to establish the separate ownership of property paid for with those funds, the separate status of such property will be upheld. Id. Further, there is a presumption that all funds in an account in which community and separate funds are comingled are presumed to come first from separate funds. Reinhardt v. Reinhardt, 31,174 La.App.2 Cir. 12/09/96, 728 So.2d 503, writ denied, 99*0883 (La. 6/18/99), 745 So.2d 612, and writ denied, 99*0721 (La. 6/18/99), 745 So.2d 669, and off in part, rev'd in part on other grounds, 97*0723 (La. 3/25/99), 968 So.2d 1136; King & Cortez v. Cutting, 625 So.2d 1112 (La.App. 3d Cir 1993), writ denied, 631 So.2d 453 (La.1994) | More mixing of separate funds and community funds in the same account does not of itself convert an entire account into community property. La. Civ. Code Ann. art 2341. | Will it become a community property if separate funds and community property is in one account? | 001107.docx | LEGALEASE 00217321-LEGALEASE 00217322 | Condensed, SA, 0.85 | | 1 | 1 | 1 | 1 | 1 |
| 16067 | Schlosare v. Elec. Data Sys., 0.456 F.Supp.2d 633 | 91v516 | Here, Schlosare's statutory conspiracy claim fails because Schlosare has not made factual allegations to show that Defendants acted "willfully and maliciously." "Legal malice" requires "that the defendant acted intentionally, purposefully, and without legal justification" to injure the plaintiff. Plaintiff need not prove that the defendant's primary and overriding purpose was to injure the plaintiff's reputation, trade, or business, but he need prove only that he acted at least one of purposes of conspiracy. Wet'f. V.C.A. 5.1.8.2-499, 18.2-500. As mentioned above, Defendants went free to terminate Schlosare's employment at any time. Moreover, the purchase orders did not prohibit Defendants from soliciting Schlosare employees. Consequently, there is no factual support for the allegation that Defendants terminated the purchase orders "willfully and particularly injure Schlosare in its business. Hence, the conspiracy claims fails. | Legal malice required for claim of statutory conspiracy under Virginia law requires that defendant acted intentionally, purposefully, and without lawful justification to injure plaintiff; plaintiff need not prove that defendant's primary and overriding purpose was to injure plaintiff's reputation, trade, or business, but, importantly, plaintiff must prove that defendant acted to accomplish at least one of purposes of conspiracy. West's V.C.A. 5.1.8.2-499, 18.2-500. | What does the term legal malice mean? | 000568.docx | LEGALEASE 00217462-LEGALEASE 00217463 | Condensed, SA, Sub 0.57 | | 1 | 0 | 1 | 1 | 0 |
| 16068 | Stevo v. Blume, 906 F.Supp.2d 743 | 386v2 | Stevo is liable for trespass if his entry onto the Property was "wrongful and unlawful." Ali Am. Foods, Inc., 266 N.W.2d at 705. Stevo has not presented evidence, much less undisputed evidence, that his entry onto the Property was rightful or lawful. Stevo presented evidence that the in the fall of 2011 he was a part owner of the Property. Instead, Stevo claims his testimony shows that the bad sight to the on the Property was held in good faith, and therefore cannot form the basis of a trespass claim. Bad, "because trespass is an intentional tort, expenditures cannot be part of the defendant is not a danger to the Property" evidence. Johnson, 837 N.W.2d at 701 (citing H. Christiansen & Sons, Inc. v. City of Duluth, 225 Minn 475, 31 N.W.2d 270, 277 (1948)). Because Stevo has not presented evidence establishing that he is entitled to summary judgment on Henson's claim for trespass, the Court will deny Stevo's motion. | Because trespass is an intentional tort, expenditures cannot be part of the defendant... | Is reasonableness on the part of the defendant is a defense for trespass? | Trespass - Memo 40 - RK.docx | ROSS-003110328 ROSS-003113029 | Condensed, SA, Sub 0.85 | | 1 | 1 | 1 | 1 | 1 |

2829

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 14069 | Daniel v. Morris, 181 So.3d 195 | 386r14 | The injury caused by trespass to real property is the loss of the use and enjoyment of the land or injury to the land. Restatement (Second) of Torts § 158. | Here, BankFirst, as the creditor, had a nondelegable duty to ensure that the repossession did not breach the peace. See 47 C.F.R. § 493.296(3) § Jla. 3d; Sammons, 599 So.2d at 1026 (citing Nichols, 455 N.W.2d at 6497-9). BankFirst's nondelegable duty was allegedly breached when Associated Investigators, through Morris, entered Daniel's property on March 6, 2012, to repossess the bus resulting in physical injury to Daniel. As BankFirst owed a nondelegable duty, it was directly liable for all damages resulting from the actions of Associated Investigators and Morris. Although this situation is similar to the initial and subsequent tortfeasor doctrine in that BankFirst was liable for all of the damages, it differs because BankFirst had to fault and would have been permitted to seek indemnification against Associated Investigators and Morris. See Montg. Lbr. Co., Stewart, 427 So.2d 776, 779r80 (Fla. 347r). In the 1983). If BankFirst had been the initial tortfeasor, then it would not have been held to be indemnified by a subsequent tortfeasor, but rather would have been the primary wrongdoer and subject to indemnification against the subsequent wrongdoer. See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 707r9 (Fla.1980), Sammons v. W.L. Guy, 13 So.2d 703, 705r9 (Fla.1977). This distinction is significant and indicates that BankFirst and, collectively, Associated Investigators and Morris, were not initial and subsequent tortfeasors. See Daniel v. Sammons, 599 So.2d at 208. Nevertheless, we will address the merits of Associated Investigators' and Morris' argument that Daniel's continued physical injury inflicted on Daniel on March 6, 2012, aggravated the previous trespass to land before March 6, 2012. Trespass to real property is an unlawful entry onto another's land causing injury to that person or property. Restatement (Second) of Torts § 158, Gen. Law Sec.1963. The injury caused by trespass to land is the loss of the use and enjoyment of the land or injury to the land. | When does a trespass occur? | Trespass - Memo 18 - IN.docx | ROSS-003297657-ROSS-003297659 | SA, Sub | 0.95 | 0 | | 1 | 1 | 1 |
| 14070 | State ex rel. Spiker v. W. Virginia Racing Comm'n, 135 W. Va. 512 | 3157r16 | Under the statute conferring power on the West Virginia Racing Commission to prescribe rules, regulations and conditions under which horse races should be conducted in the State, Commission has the authority to promulgate and enforce rules which provide that a horse owned by any person may be suspended when the same is run in the presence of any narcotic, stimulant or drug, and that the purse won by a horse found to have been so stimulated should be returned and redistributed. Code 19-23-12 to 19-23-23. | The rules under consideration in the Morris case, which, as above indicated, are substantially the same as the rules being tested herein in the subject matter, would in this opinion were upheld as valid and do not violate of any provision of the Constitution of the United States or of the Constitution of the State. Though the writer of this opinion dissented from the decision of this Court in the Morris case, he and the other members of this Court are now bound by the holding of the majority of the members of the Court in that case. The writer of this opinion reached the decision in that case and consider it applicable to, and adversely decisive of, the contentions of the petitioner that the rules of the Commission, assailed in the instant proceeding, are invalid because not authorized by the statute and because the provisions of the due process of law provision of the Constitution of the United States and the Constitution of West Virginia. In that case, in sustaining the power of the Commission, under the statute which has created it, to promulgate the rules and regulations, considered and then under consideration, and in rejecting the contention of the person dismissed from the Morris case, in his favor the rules, the writer of this opinion, therefore, that the grant of regulatory power under the statute to the West Virginia Racing Commission by the Legislature, in the exercise of its police power, was legal and valid, and that in consideration of all the circumstances surrounding the establishment and operation of race tracks, and the racing of horses thereon, the Racing Commission, in the promulgation of Rules No. 245 to 249 Fr, both inclusive, did not exceed the power so granted. Administering the police power conferred by statute in this proceeding, under which some cannot be found for the grant, in the circumstances, under which some cannot be determined or valid exercise of power. As stated above, the power to secure fairness in racing must be required, and statutory standards shall be prescribed, if any practicable means may be applied. *** Making the power to issue or the certificate of racing as appointed **. | Can the legislature grant regulatory power over horse racing to a State Racing Commission? | 000310.docx | LEGALEASE-00117682-LEGALEASE-00117684 | Condensed, SA, Sub 0.84 | | 0 | 1 | | | |
| 14071 | Conner v. Joe Hatton, 216 So.2d 209 | 376r17 | Sections of statute authorizing Commissioner of Agriculture to include in a sweet corn marketing order provisions for grading, inspecting and preparing perishable commodities for market, and regulating marketing practices in sweet corn industry, the establishment of plans and programs for advertising and sales promotion, and for carrying on research studies in production and distribution and for expenditure of money for such purposes, did not constitute an unlawful delegation of legislative power. F.S.A. § 573.17(3)(j), (k), (d). | The rule upheld in Conner in which no standards whatsoever to guide is a sweet corn marketing order. The court held that the standards of 'is reasonable pricing' was too much the detail of the legislative power to vest in an administrative body. And the validity of such statutes has been upheld in various situations. An agency provision that there be an unlawful delegation of legislative authority. See Mayo v. Rosenbury, 1942, 152 Fla. 16, 10 So.2d 715 (reasonable packing and/or standards of quality). See High v. Nalley, Inc., 1939, 137 Fla. 338, 188 So.2d 206 (standards and specifications of citrus and juices); Hutchins v. Mayo, 1940, 143 Fla. 707, 197 So.2d 495, 121 A.L.R. 1393 (grading and marking of citrus | Is the authority to vest in an administrative agency to regulate the grading and labeling of fruit an unlawful delegation of legislative authority? | 000347.docx | LEGALEASE-00117689-LEGALEASE-00117700 | Condensed, SA, Sub 0.49 | | 0 | 1 | | | |
| 14072 | U. S. Gypsum Co. v. Schiavo Bros., 668 F.2d 172 | 233r494 | A holdover tenant is one who unlawfully holds possession of a leasehold premises at the end of the term of the lease. | Sec. 1. supra, Restatement (Second) of Property, Landlord and Tenant, § 14.1. The landlord may sue a holdover for possession and to recover whatever damages it suffered as a result of the tenant's actions. Taylor v. Kaufhold, 368 Pa. 538, 84 A.2d 347, 350 (1951). Schiavo chose, as a tenant, to sublet the property to subtenants, and their presence after January 1, 1974 was properly attributable to Schiavo. Schiavo's wrongfully intended possession of some part of the leasehold property for some period of time after the termination of the lease | What is a holdover tenant? | Landlord and Tenant - Memo 27 - TN.docx | LEGALEASE-00004415-LEGALEASE-00004416 | Condensed, SA, Sub 0.79 | | 0 | 1 | | | |

2830

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16073 | Folgueras v. Hassle, 331 F. Supp. 615 | 233+513 | The migrants living in Joseph Hassle's labor camps are tenants within the meaning of Michigan law. Their tenancy entitles them, their guests, and representatives of assistance organizations to full rights of ingress and egress to and from their dwellings. It is commonly understood that a portion of the migrant's compensation for his work is his housing. The "Clearance Order" by which the grower secures his labor force states that housing is provided and that "rent is free." The crew leader then uses the rent-free aspect to muster up the necessary crew, and the "free rent" dwellings are one justification for the low wage paid migrant laborers. The migrant, therefore, pays the grower for the housing provided. New Jersey v. Shack, supra.The clearance order also requires the housing provided to meet specified minimum standards. These requirements are found at 20 CFR "" 620.1-620.17Once the migrant reaches the camp he takes exclusive possession of the dwelling so long as he works for the grower. In Folgueras v. Hassle, Garza specifically told his crew this and Hassle said it was true in his deposition. | Migrants living in labor camps were tenants within meaning of Michigan law and their tenancy entitled them, their guests, and representatives of assistance organizations to full rights of ingress and egress to and from their dwellings, and one of rights of tenancy with which landlord might not interfere was right to invite and associate with guests of tenant's own choosing. 42 U.S.C.A. SS 2809, 2861, 2862; Elementary and Secondary Education Act of 1965, SS 101, 103(6), 105(c), 20 U.S.C.A. SS 241a, 241c(6), 241e(c). | Are migrants living in labor camps considered tenants? | 000512.docx | LEGALEASE-00117635-LEGALEASE-00117636 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 16074 | Zimmerman v. Al Jazeera Am., 246 F. Supp. 3d 257 | 237+32 | The next element of a defamation claim"publication"requires a defendant to have "published or knowingly participated in publishing the defamation." Tavoulareas v. Piro (Tavoulareas I), 759 F.2d 90, 136 (D.C. Cir. 1985) (emphasis in original), vacated in part on other grounds on reh'g, 763 F.2d 1472 (D.C. Cir. 1985) (Tavoulareas II), and on reh'g, 817 F.2d 762 (D.C. Cir. 1987) (TavoulareasIII ) (en banc). "Publication" is the communication of defamatory matter "intentionally or by a negligent act to one other than the person defamed." Restatement (Second) of Torts " 577(1) (1977); see also id. cmt. a ("Any act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication."). A valid claim for defamation also requires a showing of legal harm (i.e., defamation per se) or special harm as a result of the publication. As relevant here, a statement constitutes defamation per se when it "imput[es] to a person a ... matter affecting adversely a person's fitness for trade, business, or profession[.]" Carey v. Piphus, 435 U.S. 247, 262 n.18, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). | Under District of Columbia law, a valid claim for defamation requires a showing of legal harm, that is, defamation per se, or special harm as a result of the publication. | Is harm a necessary element of a defamation claim? | Libel and Slander - Memo 70 - RK.docx | ROSS-003298598-ROSS-003298599 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 16075 | Funkhouser v. Ford Motor Co., 285 Va. 272 | 313A+133 | In his amended complaint, Funkhouser proceeded on a theory that Ford failed to warn users of a known fire hazard in its Windstar vans. It is well established that, "[a] manufacturer is not an insurer of its product's safety, and a manufacturer has a duty to warn only if it knows or has reason to know that its product is dangerous." Owens"Corning Fiberglas Corp. v. Watson, 243 Va. 128, 134, 413 S.E.2d 630, 634 (1992). Thus, in bringing a failure to warn claim, a party must prove that the manufacturer:(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.Featherall v. Firestone Tire & Rubber Co., 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979) (quoting Restatement (Second) of Torts " 388 (1965)). | Manufacturer is not an insurer of its product's safety, and a manufacturer has a duty to warn only if it knows or has reason to know that its product is dangerous. | Does a manufacturer have a duty to warn about the product even if it is unaware of the dangerous nature of its product? | 000647.docx | LEGALEASE-00117896-LEGALEASE-00117897 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 16076 | Allberry v. Parkmor Drug, 834 N.E.2d 199 | 313A+225 | In Ingram, 476 N.E.2d at 885, another panel of this Court determined that a pharmacist has no duty to warn a consumer of the possible side effects associated with a prescription drug prescribed by a physician. The Ingram court concluded that physicians, not pharmacists, are in the better position to weigh the potential risks and rewards of particular medications for specific patients and, thus, declined to impose a duty upon pharmacists to warn customers about the potential side effects of medication unless such warnings were included in the prescription received from the physician. Id. at 886-87; see also Hooks SuperX, Inc. v. McLaughlin, 642 N.E.2d 514, 518 (Ind.1994) (affirming that the responsibility of warning patients about drug side effects lies with physicians but imposing a duty where the pharmacist had personal knowledge that the customer was taking medication more quickly than prescribed). Indeed, the Ingram court reasoned:[T]he duty to warn of hazards associated with prescription drugs is part and parcel of the physician-patient relationship because it is best appreciated in this context. The decision of weighing the benefits of a medication against potential dangers that are associated with it requires an individualized medical judgment. This individualized treatment is available in the context of a physician-patient relationship which has the benefits of medical history and extensive medical examinations. It is not present, however, in the context of a pharmacist filling a prescription for a retail customer. The injection of a third-party in the form of a pharmacist into the physician-patient relationship could undercut the effectiveness of the ongoing medical treatment. We perceive the better rule to be one which places the duty to warn of the hazards of the drug on the prescribing physician and requires of the pharmacist only that he include those warnings found in the prescription.Id. at 886-87. | When filling prescription for drug used to treat impotence, pharmacist had no duty to warn customer of drug's side effects or to give customer manufacturer's product information. | Does a pharmacist have a duty to warn a consumer of possible side effects associated with a prescription drug prescribed by a physician? | Products Liability - Memo 19- TH.docx | ROSS-003284483-ROSS-003284485 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16077 | Adkins v. Mong, 168 Mich. 349 App. 726 | 313A+225 | | Pharmacist had no duty to warn patient of potential side effects of substances it was dispensing, in accordance with a prescription submitted by licensed physician, all of which were valid on their face. | Does a pharmacist have a duty to warn a consumer of possible side effects associated with a prescription drug prescribed by a physician? | 00061.docx | LEGALEASE 00117907- LEGALEASE 00117908 | Condensed, SA, Sub 0.79 | 0.79 | 0 | 1 | | 1 | 1 |
| 16078 | Welfie v. Lewisburg Tr. & Safe Deposit Co., 205 Pa. 593 | 322+3 | | Questions respecting transfer of title to land are governed by the law of the place where lands are situated. | Is the transfer of title to land governed by the law of the place where lands is situated? | Property - Memo 22 JS.docx | ROSS 000331289 2 ROSS- 000312894 | Condensed, SA, Sub 0.86 | 0.86 | | 1 | | 1 | 1 |
| 16079 | Smith v. State Indus. Comm'n, 1938 OK 167 | 92+4450 | | Defendant's asserted "right" to participate in a sixth consensual incest was not a fundamental liberty interest protected by State Constitution. Const. Art. 1, § N, art. 11, § N; F.C.A. S 39-10-302. | Does a person have a fundamental liberty to engage in incest? | 007393.docx | LEGALEASE 00117848- LEGALEASE 00117849 | Condensed, SA, Sub 0.86 | 0.86 | 0 | 1 | | 1 | 1 |
| 16080 | Cherokee Indian Tribe v. Jewell, 767 F.3d 900 | 209+151 | | Goal of Indian Nonintercourse Act is to ensure that tribal lands remain in tribal hands. 25 U.S.C.A. S 177. | What is the goal and purpose of the Indian Nonintercourse Act? | Indians - Memo 18 NS.docx | LEGALEASE 00064768- LEGALEASE 00064769 | Condensed, SA, Sub 0.85 | 0.85 | 0 | 1 | | 1 | 1 |
| 16081 | London v. Sears, Roebuck & Co., 619 F. Supp. 2d 854 | 237+211 | | Under California law, "publication" of a defamatory statement, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made; publication to a single individual is sufficient to satisfy the publication element of a defamation claim. | Can communication to a single individual mean publication under defamation? | 000813.docx | LEGALEASE 00117915- LEGALEASE 00117915 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | 1 |
| 16082 | Poulos v. Kamperos, 189 Ark. 44 | 104+5908 | | Where counterclaim was validly pleaded in municipal court, it was within discretion of circuit court to allow defendant to embody counterclaim in amended answer in circuit court. | Are oral pleadings permitted? | 000962.docx | LEGALEASE 00117915- LEGALEASE 00117912 | Condensed, SA, Sub 0.74 | 0.74 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16083 | Wall St. Assocs. v. Becker Paribas, 818 F. Supp. 679 | 25T+113 | We note at the outset the oft-stated federal policy, embodied in the Federal Arbitration Act, 9 U.S.C. " 1 et seq., favoring the enforcement of arbitration agreements and the confirmation of arbitration awards. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). With this mandate in close focus, we first address the argument advanced only by Wise and Friedman, and then the other two arguments which are advanced on behalf of Wise, Friedman and Becker. | Federal policy favors enforcement of arbitration agreements and confirmation of arbitration awards. 9 U.S.C.A. S 1 et seq. | Does federal policy favor the confirmation of arbitration awards? | 001015.docx | LEGALEASE-00118018-LEGALEASE-00118019 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 16084 | State in Interest of H.R.V., 906 P.2d 913 | 76D+921(1) | "Juvenile court determinations regarding the custody of children are equitable in nature." State ex rel. T.H. v. R.H., 860 P.2d 370, 373 (Utah App.1993). In reviewing these " "equitable proceedings[,] we must do our own weighing and make our own decision based on the facts in the record." " Id. (quoting State ex rel. A.H. v. Mr. & Mrs. H., 716 P.2d 284, 286 (Utah 1986)). Nevertheless, the juvenile court is allowed a considerable latitude of discretion in child custody matters, and its judgment will not be disturbed unless we determine the juvenile court has exceeded the scope of permitted discretion or has acted contrary to law. Id. | On review of juvenile court determination regarding child custody, Court of Appeals performs its own weighing of evidence and makes its own decision based on facts in record; however, juvenile court is allowed considerable latitude of discretion, and its judgment will not be disturbed unless Court determines that it exceeded scope of permitted discretion or acted contrary to law. | Are matters involving the custody or best interests of a child equitable in nature? | 000890.docx | LEGALEASE-00118150-LEGALEASE-00118151 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 16085 | Emerson Enterprises v. Kenneth Crosby New York, 781 F. Supp. 2d 166 | 13+3 | Article 37 of the ECL, " 37"0107, states: "No person shall store or release to the environment substances hazardous or acutely hazardous to public health, safety or the environment in contravention of rules and regulations promulgated pursuant hereto." The list of hazardous substances covered by ECL Art. 37 includes PCBs, 1,1,1"TCA [trichloroethane], acetone, and petroleum. 6 NYCRR " 597.1(a)(3)(vi) & (ix). However, as this Court has previously found, there is no private right of action under ECL " 37"0107 to recover damages. See, Kalden Const. Co., Inc. v. Hanson Aggregates New York, Inc., 634 F.Supp.2d 319, 322 (W.D.N.Y.2009) ("[T]he weight of authority in New York is that the ECL does not provide a private right of action."); see also, Geysir Sales Corp., Inc. v. Arctic Glacier, Inc., 78 A.D.3d 653, 653, 909 N.Y.S.2d 668, 669 (2d Dept.2010) ("The ECL did not create a private cause of action to recover damages for violations of this provision," referring to ECL " 37"0107) (citations omitted); but see, DiBuono v. Abbey, LLC, 69 A.D.3d 670, 891 N.Y.S.2d 656 (2d Dept.2010) (denying a motion to dismiss a claim for damages under ECL " 37"0107). Consequently, the Court finds that Plaintiff cannot maintain this cause of action. Even assuming arguendo that Plaintiff could sue for money damages under ECL " 37"0107, there is no evidence that Brodie stored or released hazardous substances. Therefore Brodie is entitled to summary judgment on Plaintiff's claim under ECL " 37"0107. | New York Environmental Conservation Law (ECL) does not provide a private cause of action. N.Y.McKinney's ECL S 37-0107. | Does the Environmental Conservation Law (ECL) create a private cause of action? | 000920.docx | LEGALEASE-00118221-LEGALEASE-00118222 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 16086 | State v. Martin, 102 N.J.L. 388, 400, 132 A. 93, 98 (1926) | 405+1156 | In Ohio, the power to pass laws for the conservation of natural resources has been specifically granted by the framers of the Constitution. Thus, it is provided in Section 36, Article II of the Constitution that: "Laws may also be passed * * * to provide for the conservation of the natural resources of the state * * *." | Statute providing that any person who for hire drills a well shall keep a log, a copy of which shall be furnished to the division of water upon forms prescribed by the chief of division of water, constituted a reasonable exercise of the power of the General Assembly to pass laws for the conservation of the natural resources of the state, and was not violative of either the state or the federal constitution. R.C. S 1521.05. | Does conservation of natural resources come under the state constitution? | 05358.docx | LEGALEASE-00080825-LEGALEASE-00080826 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 16087 | Thorne v. Ornauer, 8 Colo. 353 | 231+90 | Counsel's argument concerning the filing of written pleadings in such case is inapplicable. Written pleadings are only required to be filed in causes originally begun in courts of record; and while cases appealed from justices of the peace are pending for trial de novo they are not governed by the Code provisions relating to written pleadings; moreover, such pleadings are expressly dispensed with by statute. Section 1987, Gen. St. There is, in our judgment, no repeal, either expressed or implied, of the latter statutory provision. | Written pleadings are only required to be filed in causes originally begun in courts of record. | Are written pleadings required in courts of record? | Pleading - Memo 32 - TH.docx | ROSS-003283564-ROSS-003283565 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 16088 | Asahi Glass Co. v. Toledo Eng'g Co., 262 F. Supp. 2d 839 | 25T+193 | A court has discretion to stay an action brought by a signatory to an arbitration agreement against a nonsignatory to the agreement, based on its inherent powers, and a stay may be appropriate "where the pending proceeding is an arbitration in which issues involved in the case may be determined."Nederlandse Erts"ankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir.1964). The Supreme Court has stated:[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. | Even though a nonsignatory may not invoke Federal Arbitration Act's mandatory stay provision in moving to stay an action pending arbitration, a district court has discretion to stay third party litigation involving common questions of fact within the scope of an arbitration agreement to which the third party is not a signatory. 9 U.S.C.A. S 3. | When are arbitration proceedings against a signatory and a non-signatory stayed? | Alternative Dispute Resolution - Memo 178 - RK.docx | LEGALEASE-00005432-LEGALEASE-00005434 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 16089 | Javitch v. First Union Sec., 315 F.3d 619 | 25T+199 | A written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. To enforce this dictate, the Federal Arbitration Act (FAA) provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. 9 U.S.C. "" 3 and 4. The district court's decision whether to compel arbitration under the FAA is reviewed de novo. Burden v. Check Into Cash, LLC, 267 F.3d 483, 487 (6th Cir.2001), cert. denied, 535 U.S. 970, 122 S.Ct. 1436, 152 L.Ed.2d 380 (2002). | Before compelling an unwilling party to arbitrate under Federal Arbitration Act (FAA), the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. 9 U.S.C.A. S 1 et seq. | When does the Federal arbitration Act (FAA) provide for a stay of proceedings? | 001143.docx | LEGALEASE-00118380-LEGALEASE-00118381 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16090 | Barrett v. Manufacturers Ry. Co., 453 F.2d 1305 | 25T+376 | The NRAB award in the instant case refused to consider the merits of plaintiff's grievance (an alleged wrongful discharge) on the grounds that the dispute had not been timely filed before that body. Gunther clearly established that proceedings before the NRAB are to be considered as compulsory arbitration and that the decision of the Board is as final as that of an arbitrator. In the context of arbitration under " 301 of the Labor Management Relations Act, 29 U.S.C. " 185, the Court has held that ""procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964); Local 198, United Rubber Workers v. Interco, Inc., 415 F.2d 1208, 1210 (8th Cir. 1969). The decision of the NRAB in the instant case that the dispute was not timely filed before it should not be disturbed by us on the basis of this record. Arbitration is favored by the law and the decision of the arbitrators is final and not subject to review on either the merits or procedural issues. Saxis Steamship Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 581-582 (2d Cir. 1967); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969); Kroger Co. v. Teamster Union Local 661, 380 F.2d 728, 730 (6th Cir. 1967). | Arbitration is favored by the law and the decision of the arbitrators is final and not subject to review on either the merits or procedural issues. Labor Management Relations Act, 1947, S 301, 29 U.S.C.A. S 185. | Is the arbitrators decision final? | 001145.docx | LEGALEASE-00118382-LEGALEASE-00118384 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 16091 | Bache Halsey Stuart v. French, 425 F. Supp. 1231 | 25T+178 | By its terms, Section 4 of the Arbitration Act provides for the judicial enforcement of arbitration agreements so long as the "making of the agreement for arbitration" and the "failure to comply therewith" are not "in issue." 9 U.S.C. s 4 (1970). As such, Section 4 of the Arbitration Act embodies a federal policy favoring the arbitration of disputes between parties who have contractually agreed to arbitrate. This policy, however, is not without judicial exception. Where compelling the arbitration of disputes conflicts with other important federal policies, the courts have frequently refused to order arbitration. The leading case is Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that case, the Supreme Court recognized "the desirability of arbitration," yet nevertheless held that an agreement to arbitrate future disputes between a customer and his securities brokerage firm was not enforceable under the Arbitration Act where arbitration interfered with a conflicting federal policy reflected in the Securities Act of 1933. Id. at 431, 74 S.Ct. at 185, 98 L.Ed. at 173. That policy was to make the federal and state courts the primary forums for settling disputes involving violations of the Securities Act. Id. To the same effect is American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821 (2d Cir. 1968). There, the policy of the Arbitration Act favoring arbitration was found to be insufficient to override the policy of the federal antitrust laws favoring the judicial resolution of disputes raising antitrust claims. Id. at 826-27. As stated in American Safety, "In some situations Congress has allowed parties to obtain the advantages of arbitration if they "are willing to accept less certainty of legally correct adjustment," (citing Wilko), but we do not think that this is one of them." Id. at 828. | Federal Arbitration Act embodies federal policy favoring arbitration of disputes between parties who have contractually agreed to arbitrate, but such policy is not without judicial exception, and where compelling arbitration conflicts with other important federal policies, courts may refuse to order arbitration. 9 U.S.C.A. S 4. | Can courts refuse to order arbitration? | 001155.docx | LEGALEASE-00118392-LEGALEASE-00118394 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 16092 | Hagstrom v. Breutman, 572 F. Supp. 692 | 25T+113 | In Romnes v. Bache & Co., 439 F.Supp. 833 (W.D.Wis.1977), plaintiffs had entered into a partnership agreement with a day trader at Bache. The purpose of the partnership was to trade commodities future contracts. The agreement contained an arbitration clause similar to the one at issue here. As here, the Romnes plaintiffs claimed that to require arbitration would be contrary to public policy and they analogized the CEA to the federal securities acts. However, the court found no specific provision in the CEA which provides that arbitration shall not be available as a method of resolving disputes under the Act. Thus, "[n]o national policy reason exists for precluding arbitration of claims arising under the CEA." Id. at 838. Absent an indication from Congress that arbitration should not be permitted, the federal policy in favor of arbitration should be enforced. Barron v. Tastee Freez International, Inc., 482 F.Supp. 1213, 1216 (E.D.Wis.1980), citing Romnes. | Absent an indication from Congress that arbitration should not be permitted, federal policy in favor of arbitration should be enforced. | When will the federal policy in favor of arbitration not be enforced? | 001158.docx | LEGALEASE-00118395-LEGALEASE-00118396 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 16093 | Marchetto v. DeKalb Genetics Corp., 711 F. Supp. 936 | 25T+113 | The Federal Arbitration Act ("the Arbitration Act"), 9 U.S.C. " 1 et seq., governs the enforcement, interpretation and validity of arbitration clauses in commercial contracts. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); Snyder v. Smith, 736 F.2d 409, 417 (7th Cir.1984); Zell v. Jacoby"Bender, Inc., 542 F.2d 34, 37 (7th Cir.1976). The Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. " 2. This language creates a presumption in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); Moses H. Cone Memorial Hospital, 460 U.S. at 24"25, 103 S.Ct. at 941"42; Snyder, 736 F.2d at 417; In re Oil Spill by Amoco Cadiz, 659 F.2d 789, 795 (7th Cir.1981). This means courts must vigorously enforce arbitration clauses in commercial contracts. Id. Any doubts regarding the validity of an arbitration clause must be resolved in favor of arbitration. Id. | Courts must vigorously enforce arbitration clauses in commercial contracts. 9 U.S.C.A. S 1 et seq. | Should courts enforce arbitration clauses in commercial contracts? | 001160.docx | LEGALEASE-00118397-LEGALEASE-00118399 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16094 | Brady v. Williams Capital Grp., 64 A.D.3d 127 | 25T+140 | Garnon, like Spinelli, presents the same question on the facts of this case. Thus, too, the employer contended that the invalidity of a provision in the arbitration agreement "a provision that limited punitive damages (216 F.3d at 479, n. 2) should be severed from the agreement and the employee, Garnon, "should be compelled to arbitrate her claims [of sexual harassment and discrimination and retaliation] under the remaining terms of the agreement" (id. at 476. Garnon, however, "argue[d] that the invalid provision renders the entire agreement unenforceable, as a matter of public policy" (id. at 476). The Eighth Circuit reversed the district court's conclusion that "the invalid provision rendered the entire arbitration agreement unenforceable" (id. at 478), relying in part on a severability clause in the agreement, but also on "Missouri contract law [that] favors severance by the proper parts.. instance" (id. at 480). The Court thus ruled that: "The punitive damages clause represents only one aspect of their agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes. "[W]here one provision is a contract, which does not constitute its main or essential feature or purpose is void in but is plainly severable and severable from the other part's which are relied upon, such other part's are not affected by the invalid provision, and may be enforced as if no such provision had been incorporated in the contract" (Garnon, 216 F.3d at 480)(Brackets and ellipsis in original). | Appropriate remedy for invalid and unenforceable fee-splitting provisions in arbitration agreement between employee and employer was to sever provisions, rather than to void entire arbitration agreement and force employee to pursue her employment discrimination claims in state or federal court, since agreement contained clause providing that rendering of any provision void or unenforceable "shall not affect the validity of the remainder of the Agreement." | Can a partial damage clause be severed from an arbitration agreement? | Alternative Dispute Resolution - Memo 194 - 001173.docx | RDG5-0028153-RDG5-002815157 002815157 | Condensed; Order; SA | 0.71 | 1 | | 1 | 1 | |
| 16095 | CompuCredit Corp. v. Greenwood, 565 U.S. 95 | 25T+113 | The background law governing the issue before us is the Federal Arbitration Act (FAA), 9 U.S.C. * 1 et seq., enacted in 1925 as a response to judicial hostility to arbitration. AT&T Mobility LLC v. Concepcion, 563 U.S. ___, ___, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). As relevant here, the FAA provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. * 2. This provision establishes "a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)(1983). See Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). It requires courts to enforce agreements to arbitrate according to their terms. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been "overridden by a contrary congressional command." Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Respondents contend that the CROA contains such a command. | Federal Arbitration Act (FAA) provision requiring enforcement of contracts containing arbitration provisions establishes a liberal federal policy favoring arbitration agreements. 9 U.S.C.A. * 2. | Does the Federal Arbitration Act establish a liberal federal policy favoring arbitration agreements? | 001173.docx | LEG4;EASE-00118413 LEG4;EASE-00118415 | Condensed; SA; Sub ID,B | 0.88 | | | | 1 | |
| 16096 | People v. Swanson, 127 Cal. App. 2d 658 | 145+27, 149+1 | As to whether the word "fraudulent" is synonymous with the phrase "intent to defraud," it may be observed that when an act is alleged to have been done fraudulently, it is by the same process equivalent to alleging that it was done with intent to defraud. | Allegation that an act was done fraudulently implies that such act was done with intent to defraud. | Does an allegation that an act was done fraudulently imply that such act was done with intent to defraud? | 002229.docx | LEG4;EASE-00118348 LEG4;EASE-00118349 | Condensed; Order; SA | 0.56 | 1 | | | 1 | |
| 16097 | United States v. 2,606.84 Acres of Land in Tarrant Cty., Tex., 309 F. Supp. 887 | 148+1 | The Fifth Amendment to the Constitution of the United States guarantees that "No person shall be * * * deprived of life, liberty, or property, without due process of law * * * [n]or shall private property be taken for public use, without just compensation." While it is not issue was Richardson's to enjoy until he chose to dispose of it voluntarily or until he was divested of it for a purpose and in the manner provided by law. The unauthorized taking of this property was a violation of his right under this due process clause. United States v. Carmack, supra (19 Sweet lands hereof Co.), 329 U.S. at 311-312, 67 S.Ct. 252, 91 L.Ed. 209. Citing O'Neill v. Learner, 239 U.S. 244, 36 S.Ct. 54, 60 L.Ed. 249. The government cannot take the property except by the due process guaranty. It says that the Secretary's certification of the purpose of the taking cannot be reviewed. This is true as a general rule but as here indeed, if it could be defeated by the improper quality of a power grant. The federal courts have not hesitated to review administrative certifications, to prevent them from being utilized of any truth to quarantee whether the other two due process guaranties were being violated. There is no reason why the rule should be any different where it is property other than liberty, as it is the obvious purpose of the Constitution to set up the fundamental safeguard of due process for all three clauses. If against Congress, not the Gross of Engineers, to decide the purposes for which private property shall be taken under eminent domain. Such a proceeding assures that the decision will be made publicly, by elected representatives of the people, after an open hearing to be held, instead of at a staff level as by the Corps here, confirmed as privately. | Power of eminent domain should be exercised only within framework of the law. | Should the power of eminent domain be exercised within the framework of the law? | 001271.docx | LEG4;EASE-00118348 LEG4;EASE-00118349 | Condensed; SA | 0.97 | | | 1 | 1 | |
| 16098 | Landau v. Superior Court, 81 Cal. App. 4th 191 | 92+1134 | The Remedy court reasoned: "[T]here is no fundamental constitutional right to work for, or to have continued employment with, a particular public or private employer. * * * [A]ssuming that a protected liberty or property interest actually exists in public or private employer." [Citations.]" (Kennedy v. Medical Board, supra, 77 Cal.App.4th at p. 196, 92 Cal.Rptr.2d 504.) | No one has fundamental constitutional right to work for, or to have continued employment with, a particular public or private employer. U.S.C.A. Const.Amend. 14; West's Ann.Cal. Const. Art. 1, 3 7(a); Art. 4, 5 16(a). | Is there a fundamental right to work for a particular employer? | 001389.docx | LEG4;EASE-00118443 LEG4;EASE-00118443 | Condensed; SA; Sub ID,2 | 0 | | | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Headnote | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,073 |
| 14099 | Sea Borough of Blakely, 215 A.3d 658 | 148e277 | Property owner's claims of injury and substantial deprivation of the use of his property due to borough's construction of storm-water drainage facilities which cut off vehicular access to adjacent coal-vere speculative and conjectural, and thus borough was not liable for inverse condemnation of property. | Conversely, in Petition of 1301 Filbert Limited Partnership for Approval of Private... | Does the law of eminent domain provide a remedy for a speculative and conjectural claim of de facto taking? | 00 1466.docx | LEGALEASE 00118651-LEGALEASE 00118652 | Condensed, SA, Sub 0.18 | | 0 | 1 | 1 | 1 | 1 |
| 16100 | In re K.A. Monoch Corp., 147 Vt. 167 | 149I445 | Environmental Board rule defining "substantial change" so as to necessitate acquisition of permit could not be used to define regular or undermine legislature's intent, but rather, simply defined parameters of statutory exemption afforded preexisting uses. 10 V.S.A. S5 6081, 6086(a). | In re Ornd, 145 Vt. 155, 160, 491 A.2d 1011, 1016 (1985), this Court upheld the Board's authority to promulgate a rule defining substantial change as "any change in a development or subdivision which may result in significant impact with respect to any of the criteria specified in 10 V.S.A. section 6086(a)(1) through (a)(10)." See Rule 2(G), A-130... | How Environmental Board Rule define substantial change? | 00 1466.docx | LEGALEASE 00118614-LEGALEASE 00118615 | Condensed, SA, Sub 0.45 | | 0 | 1 | 1 | 1 | 1 |
| 16101 | Cox v. Ocean View Hotel Corp., 533 F.3d 1114 | 25T=113 | Federal Arbitration Act (FAA) creates a policy favoring enforcement of agreements to arbitrate. 9 U.S.C. S 2. | Section 2 of the FAA creates a policy favoring enforcement of agreement to arbitrate. 9 U.S.C. "2. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443-44, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Under that provision, arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. The Supreme Court has recently clarified that contract-based challenges to the validity of arbitration agreement come in two types: "(t)he type challenges specifically the validity of the agreement to arbitrate ... (and)(t)he other challenges the contract as a whole, either on a ground that directly affects the entire agreement ... or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Buckeye Check Cashing, 546 U.S. at 444, 126 S.Ct. 1204 Challenges to the contract's validity are considered by the arbitrator in the first instance. Id. at 445-46, 126 S.Ct. 1204. Where, however, "the crux of the complaint is ... the arbitration provision itself, then the federal courts ... must decide whether the arbitration provision is invalid and unenforceable..." Davis v. MainStay, Inc., 469 F.3d 1172, 1204 (9th Cir.2006) (en banc)). In sum, our case law makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself. See, e.g., Nagrampa, 469 F.3d at 1293-94 (holding that courts should address the generalized contract defense to the enforcement of an arbitration provision). Brown, 430 F.3d at 1032, 1033 (considering plaintiff's breach of contract and waiver defenses to enforcement of an otherwise valid arbitration agreement). | Which Federal Arbitration Act (FAA) provision favors enforcement of agreements to arbitrate? | 00 0704.docx | LEGALEASE 00118748-LEGALEASE 00118749 | Condensed, SA, Sub 0.94 | | 0 | 1 | 1 | 1 | 1 |
| 16102 | U.S. for Use & Benefit of Intuit, Mfg & Metal Fabricators v. First Elevator Corp., 214 F. Supp. 247 | 25T=134 | In general, provisions of Federal Arbitration Act are applicable to suits under Miller Act. 9 U.S.C.A. S 9; Miller Act, S 2, 40 U.S.C.A. S 270b. | It seems clear, and plaintiff appears to agree, that in general the provisions of the Federal Arbitration Act, 9 U.S.C.A. " 1 et seq., are applicable to suits under the Miller Act. The language of the Arbitration Act is clearly broad enough to include Miller Act suits within its scope and nothing in the language of the Miller Act itself precludes a party to arbitrate. In general, parties can agree to submit to arbitration rights created by statute as well as those arising under common law... when the right is one of a character inappropriate for enforcement by arbitration. Miller Act cases have been pointed out as typical of those as to which arbitration is not only appropriate but useful. Wilko v. Swan, 346 U.S. 427, 432, 436, 74 S.Ct. 182, 98 L.Ed. 168, and the courts uniformly appear to have held that the provisions of the Arbitration Act are ordinarily applicable to them. United States for Use and Benefit of Am. Civ. ... A-Con Development Corp., A.C., 271 F.2d 854, United States for Use and Benefit of Frank A. Trucco & Sons Co. v. Bregman Construction Corp., 7 Cir., 256 F.2d 851; Agostini Bros. Bldg. Corporation v. United States on Behalf of and for Use of Virginia-Carolina Electrical Works, Inc., 4 Cir., 142 F.2d 854. | Does the Federal Arbitration Act is applicable to suits brought under the Miller Act? | Alternative Dispute Resolution - Memo 235 - RK.docx | ROSS-000285078-ROSS-000285079 | Condensed, Order, SA 0.88 | | 1 | 1 | 0 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16103 | Frisa v. Waite, 27 Conn. Supp. 292 | 157n12 | The fact that the defendant was a charitable corporation must be specially pleaded, as it is wholly consistent with the complaint's allegation that it "was a hospital corporation maintaining a hospital." See Practice Book 120. The allegation stated that the defendant was a charitable corporation by virtue of an act of the General Assembly does not aid the defendant at this time. The doctrine of judicial notice has to do with proof; it has nothing to do with pleading. It serves the function of establishing facts to which no offer of evidence would normally be directed. Ginsberg v. Ginsberg, 133 Conn. 365, 368. 23 A.2d 626. Where appropriately used, judicial notice dispenses with the necessity of proof of facts. 1 Jones Evidence (5th Ed.) 129. Facts cannot be proven by evidence or established by judicial notice until and unless they are properly pleaded, and the circumstance that judicial notice may be taken of a particular fact, such as a special act of the legislature (see New York, N.H. & H.R. Co. v. Offield, 78 Conn. 1, 2, 60 A. 740), does not relieve the party asserting such fact of the requirement of pleading it in accordance with the customary rules of pleading. | Doctrine of judicial notice serves function of establishing facts to which no offer of evidence would normally be directed. | Is judicial notice a matter of pleading? | 00157.9.docx | LEGALEASE 00159050-00159050 | Condensed, SA | 0.9 | 0 | 1 | | 1 | |
| 16104 | E & M Liquors v. Pub. Serv. Mut. & Cas. Co., 288 N.J. Super. 566 | 317n+101 | Immunity from wrongful acts is not favored, see e.g., Merenoff v. Merenoff, 76 N.J. 535, 541, 388 A.2d 951 (1978); and public utilities do not enjoy a general tort immunity, Weinberg, supra, 106 N.J. at 472, 524 A.2d 366; see Malloy v. DTV, Inc., 132 N.J. Super. 546, 548, 334 A.2d 100 (App. Div. 2000), 64 Am Jur 2d "Public Utilities," 1 14, p. 656 (2001). We see no basis to extend the limited immunity for subrogation claims against public utilities to claims for damages for negligent actions except private property damages claims. | Immunity from wrongful acts is not favored and public utilities do not enjoy a general tort immunity. | Do public utilities enjoy tort immunity? | 00360.9.docx | LEGALEASE 00159050-00159060 | Condensed, SA, Sub 0.81 | 0.81 | | 1 | 0 | 1 | |
| 16105 | Cura Cruz v. CenterPoint Energy Houston Elec., 522 S.W.3d 565 | 317Ak101 | Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care is commensurate with the danger, for purposes of a negligence action. "Commensurate with the danger" standard does not raise a higher duty of care; rather, it more fully defines and ordinary care under the facts presented. See I.G. Courts also examine the danger of the inherent in the instrumentality or utility company involved, turn to determine if additional duties or limitations of duties are | Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care is commensurate with the danger, for purposes of a negligence action. | What is the duty of a public utility? | Public utilities - Memo 18 - FM.docx | ROSS-003289437-ROSS-003289438 | Condensed, Order, SA | 0.74 | 1 | | 1 | | |
| 16106 | Law v. S.C. Dep't of Corr., 368 S.C. 424 | 249n32 | Third, Appellants did not establish Respondent's malice in instituting the original proceedings. Malice is defined as "the deliberate intentional doing of an act without just cause or excuse." Eaves, 277 S.C. at 479, 288 S.E.2d at 416. Malice does not necessarily mean a defendant's intent of spite, revenge, or some malevolent disposition, although such an attitude certainly may indicate malice. Malice also may proceed from an ill-regulated mind which is not sufficiently cautious before causing injury to another person. Moreover, malice may be implied where evidence reveals a disregard of the consequences of an injurious act, without reference to any special injury that may be inflicted on another person. Malice also may be implied in the doing of an illegal act for one's own gratification or purpose without regard to the rights of others or the injury which may be inflicted on another person. In an action for malicious prosecution, malice is instituting the prosecution. Margolis v. Telech, 309 S.C. 232, 122 S.E.2d | In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution. | When is malice inferred in a malicious prosecution claim? | 00180.1.docx | LEGALEASE 00118918-00118919 | Condensed, SA | 0.89 | | 1 | 0 | 1 | |
| 16107 | Croft v. Grand Casino Tunica, 910 So. 2d 66 | 249n38(6) | Strong v. Nicholson, 580 So.2d 1288, 1294 (Miss.1991). The probable cause issue is determined from the facts apparent to the observer when the the time the prosecution is initiated. See v. Grand Casinos of Mississippi, Inc., 767 So.2d 1016 (2007 (¶ 6) (Miss.2000). The tort of malicious prosecution can most easily be seen as a vehicle by which the enforcement of the law is regulated, and the individuals who institute the prosecution are held responsible for their action. Id. | In malicious prosecution actions, probable cause to initiate prosecution is determined from the facts apparent to the observer person at the time the prosecution is initiated. | How is probable cause in the context of malicious prosecution evaluated? | 00180.7.docx | LEGALEASE 00118935-00118960 | Condensed, Order, SA | 0.52 | | 1 | | 1 | |
| 16108 | Arciniaga v. Gen. Motors Corp., 460 F.3d 231 | 25T+114 | Decline to show days when the English written opposed any innovation that would deprive them of their jurisdiction." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 26 (2d Cir.1995); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)(Congress passed the FAA to overcome arbitration agreements. al. Now, it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we "have often and emphatically applied." Leadertex, 67 F.3d at 25. | Congress passed the Federal Arbitration Act (FAA) to overcome antipathy to any innovation that would deprive them of their jurisdiction. | Has the Federal Arbitration Act affected the hostility courts once held towards arbitration agreements? | 00369.9.docx | LEGALEASE 00159329-00159310 | Condensed, SA, Sub 0.76 | 0.76 | | 1 | 0 | 1 | |
| 16109 | Merritt v. Mountain Laurel Chalets, 96 F. Supp.3d 651 | 289n+321 | "Whether a partnership exists in a given case depends upon applicable state law. "Matter of Special Grand Jury No. 1, Impaneled December 1977 Term, 465 F.Supp. 800, 805 (D.Md.1978) (citing Kelley v. United States, 417 U.S. 69, 76, 78, 94 S.Ct. 2170, 41 L.Ed.2d 68 (1974)). In Tennessee, the applicable law is Tenn. Code Ann. * 61-1-101 et seq., Tennessee's Revised Uniform Partnership Act. Under section 101(11), the term "person" as used in the Act includes a partnership; see id. * 61-1-202(c)(1), which provides that a partnership is thus possible under Tennessee partnership law. | Whether a partnership exists in a given case depends upon applicable state law. | Is the existence of a partnership decided by state law? | 00302.docx | LEGALEASE 00159158-00159159 | Condensed, SA | 0.88 | | 1 | | 1 | |

2837

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16110 | Hayes v. State, 341 S.W.3d 293 | 401+2 | Venue is either local or transitory, and refers to the "locality in which a court of competent jurisdiction may adjudicate an action." Hawkins v. TN Dept. of Correction, 127 S.W.3d 749, 753 (Tenn.Ct.App.2002). A civil rights claim is typically a transitory action. Howse v. Campbell, M1999"1580"COA"R3"CV, 2001 WL 459106 at *4 (Tenn.Ct.App.2001). A transitory cause of action may become local "when a statute prescribes a particular county in which they must be brought." Hawkins, 127 S.W.3d at 753. One can not waive or consent to venue when a cause of action has been localized by statute. Howse, 2001 WL 459106 at *4. When venue is localized by statute, it becomes jurisdictional and is part of the court's authority to adjudicate the case before it. Hawkins, 127 S.W.3d. at 754. | A civil rights claim is typically a transitory action in terms of evaluating venue; a transitory cause of action may become local when a statute prescribes a particular county in which they must be brought. | Is a claim for violation of civil rights a transitory action? | 002114.docx | LEGALEASE-00119336-LEGALEASE-00119337 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 16111 | State v. Buck, 92 Or. App. 130 | 207+2 | Defendant argues that the statute does not prohibit sexual intercourse between a stepfather and a stepdaughter over the age of eighteen. We disagree. ORS 163.525(1) provides:"A person commits the crime of incest if the person marries or engages in sexual intercourse or deviate sexual intercourse with a person whom the person knows to be related to the person, either legitimately or illegitimately, as an ancestor, descendant or brother or sister of either the whole or half blood."ORS 163.505(1) provides:""Descendant" includes persons related by descending lineal consanguinity, step-children and lawfully adopted children."A stepchild is a "descendant" for the purposes of ORS 163.525, whether or not the child has reached the age of majority. Unlike other statutes which make consensual sexual conduct criminal, the scope of ORS 163.525(1) is not limited to persons under a certain age. The victim's age is not an element of the crime. The relationship to the defendant is an element. | Difference in treatment accorded by incest statute to those who engage in intercourse with person while married to that person's parent as opposed to those who engage in sexual intercourse with person without being married to that person's parent was rationally related to legitimate governmental purpose of protection of family, and did not deny equal protection of the laws to stepfather who was convicted of incest with adult stepdaughter. ORS 163.505(1), 163.525, 163.525(1); U.S.C.A. Const.Amend. 14; Const.Art. 1, S 20. | Does incest prohibit sexual relationships between step-children and step-parents? | 002255.docx | LEGALEASE-00119243-LEGALEASE-00119244 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 16112 | Pyburn v. State, 301 Ga. App. 372 | 207+5 | "A person commits the offense of incest when the person engages in sexual intercourse with a person to whom he or she knows he or she is related either by blood or by marriage as follows: ... Father and daughter...." OCGA " 16"6"22(a). Pyburn argues that the state failed to prove that he knew D.P. was his biological daughter. We disagree inasmuch as the evidence shows that Finley informed him of this fact. Furthermore, as the jury was charged, adoptive children enjoy the rights and privileges of a biological child, including protection from incest. Edmonson v. State, 219 Ga.App. 323, 324(3), 464 S.E.2d 839 (1995), overruled on other grounds, Collins v. State, 229 Ga.App. 658, 495 S.E.2d 59 (1997). Based on the evidence at trial, the jury was authorized to conclude that Pyburn took the necessary legal steps to adopt D.P. and that he therefore knew of the adoptive relationship.2 The evidence was sufficient to enable any rational trier of fact to find Pyburn guilty beyond a reasonable doubt of the crime of incest.Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). | Adoptive children enjoy the rights and privileges of a biological child, including protection from incest. West's Ga.Code Ann. S 16-6-22(a). | Are adoptive children protected from incest? | Incest - Memo 47 - JS.docx | ROSS-003324360-ROSS-003324361 | Condensed, Order, SA | 0.87 | 1 | 1 | 0 | 1 | 1 |
| 16113 | Bradford v. Com., 345 S.W.3d 245 | 207+5 | Because this is an issue of first impression, we have also looked for guidance in other states. In State v. Handyside, 42 Wash.App. 412, 711 P.2d 379 (1985), the Washington appellate court declined to include any "step" relationships other than stepparent and stepchild in its interpretation of that state's incest statute. RCW 9A.64.020(1)(a) and (2)(a) define the crime of incest as sexual intercourse or sexual contact "with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood." Descendant is then defined to include "stepchildren and adopted children under eighteen years of age[.]" RCW 9A.64.020(3)(a).In declining to extend the reach of the statute, the court stated that "[t]o include the relationship of step-grandparent and step-grandchild in the incest statute would write a term into the statute not included by the Legislature. This we cannot do." Handyside, 42 Wash.App. at 414, 711 P.2d 379. | As a matter of first impression, incest statute, while prohibiting sexual intercourse of deviate sexual intercourse between certain persons known to be ancestors, descendants, or family members, did not include a step-grandfather/step-grandchild relationship and thus, defendant could not be convicted of incest for sexual conduct with step-grandchild. KRS 530.020. | Does sexual intercourse between step-grandfather and step-grandchild amount to incest? | 002272.docx | LEGALEASE-00119270-LEGALEASE-00119271 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 16114 | Petition of Boston & Maine Corp., 109 N.H. 324 | 15A+1058 | Implicit in the dual character of administrative boards is that some of their acts are within the legislative or administrative area and others have the effect of a judgment. "The judicial quality inherent in a finding or verdict by such a body does not necessarily signify a justiciable inquiry." Cloutier v. State Milk Control Board, 92 N.H. 199, 203, 28 A.2d 554, 557. When in fact the decision of a board affects only public matters essentially legislative then the Legislature may properly override their decision. Farnum's Petition, 51 N.H. 376. If private rights are affected by the board's decision the decision is a judicial one. A valid administrative judgment made by an administrative tribunal properly created by the Legislature has "the same force of obligation and finality as a judicial one." Opinion of the Justices, 8m N.H. 492, 494, 179 A. 344, 346; Petition of New Hampshire Gas & Electric Co., 88 N.H. 50, 184 A. 602; Maine-New Hampshire Interstate Bridge Authority v. Ham's Estate, 92 N.H. 277, 30 A.2d 7; Pomponio v. State, 106 N.H. 273, 275, 209 A.2d 733. | If private rights are affected by an administrative board's decision, that decision is a judicial one. | Are decisions of administrative boards considered judicial when they affect private rights? | Administrative Law - Memo 169 - RK.docx | LEGALEASE-00007890-LEGALEASE-00007891 | Condensed, Order, SA | 0.91 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 16115 | Reyes v. Com., 379 S.W.3d 152 | 207v5 | Thus, the question becomes whether the statutory inclusion of certain relationships, and the failing to specify age, is significant in a situation where the General Assembly's purpose in enacting the statute. First, we observe that all the relationships specifically delineated in the statute are without age constraints. Certainly, Raines is not arguing that sexual intercourse between those with a parent and child relationship, or either the whole or half-blood or those with a parent and child relationship through adoption would be noncriminal even if both parties were adults. Since, the plain meaning of the statute does not specify the victim's age as an element of the crime of incest, our interpretation of the statute is that the primary element for incest is the relationship of the parties. Undoubtedly, the legislative intent is to prohibit sexual intercourse between persons with such relationships, including stepparents and stepchildren. | Age of victim was not element of crime of incest, and statute was properly applied to defendant who engaged in sexual relations with his adult stepdaughter; primary element for incest was relationship of the parties, "relationship of stepparent and stepchild" was specifically set forth in incest statute as prohibited relationship, and no relationship listed in statute had an age constraint. KRS 530.020. | Is victim's age an element of the crime of incest? | 00475.docx | LEGALEASE 00159466-LEGALEASE 00159467 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 16116 | Schisler v. Interstate Power Co., 596 N.W.2d 145 | 317H+101 | The Schisler urge us to adopt a rule of strict liability against power companies regarding stray voltage. Strict liability does not arise merely because a public utility is involved. Northwestern Nat'l Ins. Co. v. Rioli Ins. Co., 248 N.W.2d 663, 665 (Iowa 1977) (stating that a reckless insurer for injuries resulting from escape of gas). It seems apparent that we would abolish the defendant-based legislature if we were to adopt strict liability regarding stray voltage. As Iowa statute, Iowa Code section 469.16 (1966), formerly provided injury to Person or Property. In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof. | Strict liability does not arise merely because a public utility is involved. | Does strict liability arise merely because a public utility is involved? | 00364.docx | ROSS-003285273-ROSS-003285274 | Condensed, SA | | 0 | 0 | 0 | 1 | |
| 16117 | Rasin v. S. Union Gas Co., 317H+101 472 F.2d 707 | | The commercial duty of relation appears also to have been based on a standard of reasonable care in requiring a showing that the defendant was negligent. The appellant here argues that defendant knew or should have known that its supplied gas was dangerous and distribution system were not adequate, and it was thereby negligent. It is true that the New Mexico law recognizes that there is a common law duty on the part of a utility to exercise reasonable care to render service to its customers. This was recognized by the New Mexico Supreme Court in Garner v. Public Service Co., 77 N.M. 292, 422 P.2d 766 (1966), wherein the court stated that the defendant also had the duty to properly maintain its lines to avoid injury to persons and property, including the plaintiffs. In Garner v. Public Service Co., supra, this duty was actionable as a common law tort. See Zamora v. Middle Rio Grande Conservancy Dist., 44 N.M. 384, 102 P.2d 670; Archuleta v. Carn, 130 N.M. 105 (Iowa 1997). A public utility, like anyone else, is responsible for damages resulting from its wrongful conduct. See Crespin v. Albuquerque Gas & Elec. Co., 39 N.M. 473, 50 P.2d 259; Montoya v. New Mexico Public Serv. Co., 42 N.M. 473, 82 P.2d 257; Southwestern Public Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 353 P.2d 62. | A public utility is responsible for damage resulting from its wrongful conduct. | Are public utilities responsible for damages resulting from their wrongful conduct? | 00384.docx | LEGALEASE 00159682-LEGALEASE 00159683 | Condensed, Order, SA | 0.94 | 1 | 1 | 0 | 1 | 1 |
| 16118 | Greene v. Maxwell, 251 Ill. 335 | 312H+165 | It is not enough to sustain this conveyance that the grantor comprehended that he was making a deed of the property. The mental capacity required to execute a deed of land is of a higher degree than that required to enable a testator to make a will. For the latter purpose it is sufficient for the testator to understand the business in which he is engaged, the property he means to dispose of, and the persons to whom, and the manner in which, he wishes to distribute it among them. To make a valid deed, the grantor must be able to understand in a reasonable way the nature and effect of the act in which he is engaged, the business he is transacting and the disposition of his property in the transaction. To sustain a deed, however, it is not enough that the testator has no adequate to meet, but it ordinary business transactions are entered into, and understand the nature and consequence of the act. The law requires, in the execution of a deed or will, the exercise of judgment, reason, and understanding of property. Mental strength to compete with an antagonist and understanding to protect his own interest are essential in the transaction of ordinary business. Ring v. Lawless, 190 Ill. 520, 60 N. E. 881. One may be capable of making a will and incapable of disposing of his property by contract or of managing his estate. Greene v. Greene, 145 Ill. 264, 33 N. E. 941. Henry Trood had not the mental strength to resist the demands of his cousin, or to protect his own interest in dealing with him. He had not the capacity to comprehend the nature of what he was conveying, or whether he would be benefited or injured by the conveyance. | The mental capacity required of a grantor to sustain his deed is greater than that required of a testator to sustain his will. It is not enough that the grantor comprehends that he is making a deed of the property, but he must have the ability to transact ordinary business. | Can the mere comprehension of the grantor sustain a transaction? | 00779.docx | LEGALEASE 00083396-LEGALEASE 00083398 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 16119 | State v. Huston, 64 Ariz. 72 | 207v4 | The commission of the crime of rape in the instant case necessarily carries with it the commission of the crime of incest and in support of the judgment of the court below we may say as was done in Territory v. Pierce, 16 N.M. 10, 113 P. 591 and State v. Rennick, 127 Iowa 294 where the court said: "The undoubted weight of modern authority is that to show a completed sexual offense it is not essential to show an emission, whether the offense be rape, adultery, incest, or other carnal knowledge." | Proof of an emission is not essential to show a completed sexual offense of rape, adultery, incest, or other carnal knowledge. Code 1939, 55-43-405, 43-4901; 53-1507A-55 13-4101, 13-1411 (2); 13-1405, 43-1405 (2-101). | Is emission an essential element of incest? | 00376.docx | LEGALEASE 00159763-LEGALEASE 00159765 | Condensed, Order, SA | 0.69 | 1 | 1 | 0 | 1 | 1 |

2839

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16120 | Mahurin v. St. Luke's Hosp. of Kansas City, 809 S.W.2d 418 | 37+704 | This argument misconstrues both the pleading and the opinion. The opinion points out that Mrs. Hershley pleaded that the operation to which she consented was a cauterization and cutting of the fallopian tubes. She alleges this operation was not performed but an operation was performed by which the Wolfe ring was inserted. The opinion treats the operation to which Mrs. Hershley consented and the one actually performed as being different operations in conformity with the pleading. In Wall v. Brim, 138 F.2d 478, 481 (5th Cir.1943), the court held that an operation performed without the patient's consent is a battery or trespass. The court stated:[T]hat if a physician advises his patient to submit to a particular operation and the patient weighs the dangers and results incident to its performance and finally consents, he thereby in effect enters into a contract authorizing his physician to operate to the extent of the consent given but no further. The same principle which supports the holding that a surgeon performing an operation without his patient's consent, express or implied, commits a battery or trespass for which he is liable in damages, also supports the holding that a surgeon many not perform an operation different in kind from that consented to or one involving risks and results not contemplated. | An operation performed without a patient's consent is a battery or trespass. | Can an operation performed without a patient's consent be considered as a battery or trespass? | Trespass - Memo 86 - TH.docx | LEGALEASE-00008368-LEGALEASE-00008370 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 16121 | Fowler v. S. Wire & Iron, 104 Ga. App. 401 | 386+4 | We are of the opinion that in determining the definition of the word "accident" it is necessary to return to the historical distinction that existed between the actions of trespass and case. At common law a trespass was a wrongful act done with force and immediately injurious to the person of another. Keigwin, Cases on Common Law Pleading, p. 100. It was "the only remedy for a menace to the plaintiff attended with consequent damages. * * *; and for an illegal assault, battery, and wounding * * *" 1 Chitty on Pleading, p. 167. If the injury was not forcible, or not direct and immediate on the act done, but only consequential, then the remedy was by action on the case. 1 Chitty on Pleading, p. 124. While trespass to the person was originally available even when bodily injury was not intended, if it was immediate and direct, "Modern law has almost completely abandoned the artificial classification of injuries as direct and indirect, and looks instead to the intent of the wrongdoer [trespass] or to his negligence [case]." Prosser on Torts, p. 38; Harper, Torts, Vol. 1, p. 213, " 3.1; Vol. 2, p. 747, " 122. See also 6 C.J.S. Assault and Battery " 9, p 802; 4 Am.Jur. 137"143, " 18"25. | At common law, "trespass" was wrongful act done with force and immediately injurious to person of another. | Can trespass be committed against the person of another? | 002976.docx | LEGALEASE-00119790-LEGALEASE-00119791 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16122 | City of Fairhope v. Raddcliffe, 48 Ala. App. 224 | 386+3 | It seems to be commonly accepted among the bar that a count alleging a willful or wanton act is always a charge in trespass. Such is not literally true. To be a trespass there must be an act of direct force producing injury or damage. A wanton omission of duty to act is not a trespass. There is no direct force applied and the injury is not produced by application of force, but is consequential of an omission of a duty to act. | To be a trespass there must be an act of direct force producing injury or damage. | Is direct force producing injury or damage required to constitute a trespass? | 05276.docx | LEGALEASE-00082119-LEGALEASE-00082121 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 16123 | Int'l Union, United Auto. Aircraft v. Benton Harbor Malleable Indus., 242 F.2d 536 | 25T+115 | In the absence of a statute so providing, a party to a contract cannot as a matter of right have his differences or disputes with the other contracting party under the contract submitted to arbitration. There is no common-law right of arbitration. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 43 S.Ct. 630, 67 L.Ed. 1103; Mengel Co. v. Nashville Paper Products & Specialty Workers Union, 6 Cir., 221 F.2d 644, 647.In some states he may acquire the right by such a provision in the contract, although in other states a provision requiring arbitration, while still executory, is not enforceable. Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876, 881; Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 120-121, 44 S.Ct. 274, 68 L.Ed. 582. See: Bernhardt v. Polygraphic Co., 350 U.S. 198, 203-205, 76 S.Ct. 273, 100 L.Ed. 199. Appellants' right to arbitrate the question of liability under the no-strike provision in the contract accordingly must depend upon the provisions of the contract. If the contract gives the right of arbitration, it is enforceable under the provisions of Sect. 3 of the United States Arbitration Act, Sect. 3, Title 9 U.S, Code. Sect. 3 of the Act provides: | In absence of a statute so providing, a party to a contract cannot as a matter of right have its differences or disputes with the other contracting parties under the contract submitted to arbitration, since there is no common-law right of arbitration. | Is there a common law right of arbitration? | 002786.docx | LEGALEASE-00119721-LEGALEASE-00119722 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 16124 | Christenbury Eye Ctr., P.A. v. Medflow, 802 S.E. 2d 888 | 13+1 | It is well settled that "where the right of a party is once violated the injury immediately ensues and the cause of action arises." Sloan v. Hart, 150 N.C. 269, 274, 63 S.E. 1037, 1039 (1909). A cause of action is complete and the statute of limitations begins to run upon the inception of the loss from the contract, generally the date the promise is broken. See Jewell v. Price, 264 N.C. 459, 461, 142 S.E.2d 1, 3 (1965) ("Where there is ... a breach of an agreement ... the statute of limitations immediately begins to run against the party aggrieved...." (citing, inter alia, Shearin, 246 N.C. 363, 98 S.E.2d 508)). | Where the right of a party is once violated the injury immediately ensues and the cause of action arises. | When does an injury ensue and a cause of action arise? | 002502.docx | LEGALEASE-00120083-LEGALEASE-00120086 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 16125 | United States v. Cronenweth Dairy Co., 102 F. Supp. 364 | 317A+101 | It appears to the court that it is more plausible that Congress had in mind the case of Nebbia v. New York, 1933, 291 U.S. 502, at page 531, 54 S.Ct. 505, at page 513, 78 L.Ed. 940, which dealt directly with the dairy industry and in which the Supreme Court, states "We may as well say at once that the dairy industry is not, in the accepted sense of the phrase, a public utility." The Nebbia case upheld the statute regulating the dairy industry as a valid exercise of police power over an industry affected with a public interest but it does not necessarily follow that if the industry is affected with a public interest it becomes a public utility. | Mere fact that industry is affected with public interest and may be regulated under police power does not give such industry character of public utility. | Is an industry affected with public interest given the character of a public utility? | 003487.docx | LEGALEASE-00119860-LEGALEASE-00119861 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 16126 | Rock River Lumber Corp. v. Universal Mortg. Corp. of Wisconsin, 82 Wis. 2d 235 | 366+1 | Although such conventional subrogation has been said to rest on contract, it is a doctrine of equity, and is applied or denied upon equitable principles. American Ins. Co. v. Milwaukee, 51 Wis.2d 346, 351, 353, 187 N.W.2d 142 (1971). The object of subrogation is ". . . to do substantial justice independent of form or contract relation between the parties . . . ." Hughes v. Thomas, 131 Wis. 315, 319, 111 N.W. 474, 476 (1907). | Conventional subrogation is a doctrine of equity, and is applied or denied upon equitable principles. | Is subrogation applied or denied on equitable principles? | 002547.docx | LEGALEASE-00119979-LEGALEASE-00119980 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16127 | Jinks v. Credico (USA) Flooring, 183 Wis. 2d 579 | 366e27 | There are two types of subrogation: conventional subrogation (or contractual subrogation) and equitable subrogation (allowed by equity). The burden of proof analysis applies to these two types of subrogation as follows: When seeking to impose subrogation under an express contractual provision, the proof is presumably the existence, see. Assurance, 83 Wis.2d at 582, 264 N.W.2d 139; Rimes v. Fruehauf Corp., 82 Wis.2d 793, 807, 264 N.W.2d 264 (1978); Koritz v. Employers Ins of Wausau, 79 Wis.2d 284, 102, 254 N.W.2d 233 (1977), and also applicability of the provision. Am. Ch. 1, Employers Health Ins. v. General Cas. 161 Wis.2d 937, 956, 469 N.W.2d 121 (1991). Rock Rover Lumber v. Universal Mining Corp., 83 Wis.2d 285, 242, 262 N.W.2d 214 (1978). Clearly, the mere fact that there may be a subrogation clause somewhere in the contract does not mean that all payments made by the insurer to its insured must invoke the subrogation clause to the exclusion of all other applicable provisions. It also follows that when there are two or more different provisions under which the payment by the insurer may have been made, the burden would be upon the one seeking to impose subrogation on the payor to demonstrate that the payment had to have been made under the subrogation clause and not some other clause. | When seeking to impose subrogation on another party under express contractual provision, proof is presumably existence and also applicability of provision. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Issue: What types of subrogation exist? | Subrogation - Memo 91 ANG.docx | LEGALEASE 00008866- LEGALEASE 00008867 | Condensed, SA, SA | 0.82 | 0 | | 1 | 1 | 9,029 |
| 16128 | Olinger v. Smith, 892 N.W.2d 775 | 13+25(2) | "Actions to enforce the open meetings law are ordinary, not equitable, actions." Hachmann v. Breil, 639 N.W.2d 222, 229 (Iowa 2016). "As such actions, we accord a trial court's factual findings the same degree of deference we accord a jury's special verdict." Id. (citing Iowa R. App. P. 6.907). "Thus, factual findings by the trial court are binding if [ substantial evidence supports them." Id. "Substantial evidence supports a factual finding when the fact-finding 'may be reasonably inferred from the evidence presented.' " Id. at 229-30 (quoting Vaughan v. Must, Inc., 542 N.W.2d 533, 538 (Iowa 1996)). Our review is for correction of errors at law. See Tel Aerial, Inc. v. City of Dubuque, 297 N.W.2d 529, 533 (Iowa 1980). | Actions to enforce the open meetings law are ordinary, not equitable, actions. Iowa Code Ann. § 21.6. | Are actions to enforce the open meetings law equitable actions? | Administrative Law - Memo 184 - RK.docx | ROSS-000134516-ROSS-000134519 | Condensed, Order, SA | 0.86 | | 1 | 1 | 1 | |
| 16129 | Cooper v. WestEnd Capital Mgmt., 832 F.3d 534 | 25T+116 | The Court of Appeals permits arbitration under non-Federal Arbitration Act (FAA) rules if a contract expressly references state arbitration law. 9 U.S.C.A. § 1 et seq. As we have previously explained, "FAA rules apply absent clear and unambiguous contractual language to the contrary." 816 F.2d, Cv. v. Alst om Transp., Inc., v. U.S. Fid. & Guar. Co., 858 F.3d 317, 341 (9th Cir. 2004)). "[T]his Court permits arbitration under non-FAA rules if a contract expressly references state arbitration law..." Id. (citation omitted). "[A] choice-of-law provision is insufficient by itself, to demonstrate the parties' clear intent to depart from the FAA's default rule." Action Indus., 358 F.3d at 342. The Operating Agreement here does not expressly reference California arbitration law, but only a choice-of-law provision. This is insufficient to compel the application of California's arbitration standards. See 858 F. Sup., 777 F.3d at 790; Action Indus., 358 F.3d at 342. | The Court of Appeals permits arbitration under non-Federal Arbitration Act (FAA) rules if a contract expressly references state arbitration law. 9 U.S.C.A. § 1 et seq. | When do courts permit arbitration under non-FAA rules? | 00564.docx | LEGALEASE 00120026- LEGALEASE 00120027 | Condensed, Order, SA | 0.82 | | 0 | 1 | 1 | |
| 16130 | Cooper v. WestEnd Capital Mgmt., 832 F.3d 534 | 25T+116 | The Court of Appeals permits arbitration under non-Federal Arbitration Act (FAA) rules if a contract expressly references state arbitration law. 9 U.S.C.A. § 1 et seq. As we have previously explained, "FAA rules apply absent clear and unambiguous contractual language to the contrary." 816 F.2d, Cv. v. Alst om Transp., Inc., v. U.S. Fid. & Guar. Co., 858 F.3d 317, 341 (9th Cir. 2004)). "[T]his Court permits arbitration under non-FAA rules if a contract expressly references state arbitration law..." Id. (citation omitted). "[A] choice-of-law provision is insufficient by itself, to demonstrate the parties' clear intent to depart from the FAA's default rule." Action Indus., 358 F.3d at 342. The Operating Agreement here does not expressly reference California arbitration law, but only a choice-of-law provision. This is insufficient to compel the application of California's arbitration standards. See 858 F. Sup., 777 F.3d at 790; Action Indus., 358 F.3d at 342. | The Court of Appeals permits arbitration under non-Federal Arbitration Act (FAA) rules if a contract expressly references state arbitration law. 9 U.S.C.A. § 1 et seq. | When will a court permit arbitration under non-FAA rules? | 00367.docx | LEGALEASE 00120049- LEGALEASE 00120051 | Condensed, Order, SA | 0.82 | | 1 | 1 | 1 | |
| 16131 | Volt Info. Scs. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468 | 960+14.15 | The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. See Barnhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (upholding application of state arbitration law to a contract provision in contract not covered by the FAA). But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The question before us, therefore, is whether application of Cal Civ Proc Code Ann. ? 1281.2(c) to stay arbitration under this contract in interstate commerce, in accordance with the terms of the arbitration agreement itself, would undermine the goals and policies of the FAA. We conclude that it would not. | Federal Arbitration Act contains no express preemption provision nor does it reflect congressional intent to occupy entire field of arbitration. 9 U.S.C.A. § 1 et seq. | Does the Federal Arbitration Act (FAA) pre-empt state law that conflicts with federal law? | Alternative Dispute Resolution - Memo 305 - RK.docx | ROSS-000285474-ROSS-000285477 | Condensed, Order, SA | 0.84 | | 1 | 0 | 1 | |

2841

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 16132 | Evans v. Faught, 231 Cal. App. 2d 698 | 233m80 | In the light of the foregoing principles it is clear that the lease in question was conveyed subject to encumbrances. Viewed as a whole, the compass of the foregoing definitions the powder-house, the road leading to it, and the general lessee area sans encumbrances, it is obvious that the powder magazine and the road, because of their physical presence on the land, would constitute a burden thereon which actors could or they will use. Insofar as the lease is concerned, it is a settled principle that a leasehold estate is an estate in land and an interest in real property [Callahan v. Martin, 3 Cal.2d 110, 118, 43 P.2d 788, 101 A.L.R. 871]; is primarily a conveyance in that it transfers an estate to the lessee [Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 418, 132 P.2d 457; Dexter v. City of Paris Dry Goods Co., 14 Cal.2d 633, 636, 96 P.2d 132.] Accordingly, the lease constituted a conveyance to the County of an interest in the land, and, as such, was the location or operation of the interest which could serve to impede the transfer of the land and thus diminish its value. Our inquiry, however, is not whether these burdens were encumbrances within the generally accepted definitions of the term, but whether they constituted encumbrances within the meaning of section 1113. | "Leasehold" is an estate in land and an interest in real property and lease    is a leasehold as estate in land? | is primarily a conveyance in that it transfers an estate to lessee. | Landlord and Tenant Memo 74 - 74.docx | ROS5:00328953 ROS5-00328958 | Condensed, Order, SA | 0.89 | 1 | 1 | 1 | 1 | |
| 16133 | In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377 | 145v1 | We agree with the Appellate Division that "there is nothing in [EDECA] to prohibit deferred accounting." In re PSE & G, supra, 330 N.J.Super. at 114, 748 A.2d 1161. Although there are statutory provisions in relation to the required level of rate reductions, supra at 116 P.2d, 167 N.J. at 387-98, and as for "the manner in which they apply rate reductions," N.J.S.A. 48:3 P.2d, the Legislature has not specified the funding source for those reductions. However, as also pointed out by the Appellate Division, In re PSE & G, supra at 114, 748 A.2d 1161, N.J.S.A. 48:3 P.2d provides that [t]he board may device an alternative accounting or cost recovery process that would permit an electric public utility to purchase power from a related competitive business segment of its public utility holding company, or otherwise, to provide basic generation service to its customers during the period that the electric public utility is providing for sustainable rate reductions..., if the board determines that such process is necessary to mitigate the impacts of market price fluctuations and to sustain rate reductions. | Nothing in the Electric Discount and Energy Competition Act (EDECA) prohibit deferred accounting, N.J.S.A. 48:3-57, subd. b(3) | Does the Electric Discount and Energy Competition Act (EDECA) prohibit deferred accounting? | Electricity - Memo 40 - 36.docx | ROS5-00323932 ROS5-00323933 | Condensed, SA, Sub 0.89 | 0 | 1 | 1 | 1 | 1 | |
| 16134 | Matter of Cajun Elec. Power Co-op., 109 F.3d 248 | 145v1 | Assuming appendix, however, that the RE Act impliedly authorizes and empowers the Secretary, under some circumstances, to pre-empt the jurisdiction of a state public utilities commission and exercise ratemaking power over an RE Act borrower's rates, we conclude that the Act does not authorize the Secretary to pre-empt and ratemake. In the present case. The uncontested primary purpose of the RE Act is to "bring[] abundant, low cost electric energy to rural America." Alabama Power Co. v. Alabama Elec. Co-op., Inc., 394 F.2d 672, 677 (5th Cir.1968), cert. denied, 393 F.2d 808 (1969) (quoting from S.Rep. No. 588, 74th Cong., 1st Sess. 3 (1935)); accord, Morgan City v. South Louisiana Elec. Coop Ass'n, 31 F.3d 319, 324 (5th Cir.1994), cert. denied, 49 F.3d 1074 (5th Cir.), cert. denied, 516 U.S. 955, 115 S.Ct. 271, 133 L.Ed.2d 206 (1995)(federal purpose of providing low cost, reliable electric service to rural areas). Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin., 988 F.2d 1480, 1490 (7th Cir.1993)(the REA promotes and supports rural electrification by providing low cost electricity to those regions); see also United States v. 1,629.6 Acres of Land, 360 F.2d 155, 160 (3d Cir.1966), Jersey Central Power & Light Co. v. FPC, 319 U.S. 61, 63 S.Ct. 953, 87 L.Ed. 1258 (1943). In order to promote that purpose, the statute's broad rate-making authority must be found to profit by service. 7). The rate-making process requires the fixing of just and reasonable rates and balances the interests of the consumer interests. See Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944); La.-wise Cent. Power & Light Co., 7, 852 F.3d 266 (2002), 197 738. DECC v.1367 gen See p.3. See also, Wabash Valley Power Ass'n, Inc. v. | Primary purpose of Rural Electrification Act (RE Act) is to bring abundant, low-cost electric energy to rural America. Rural Electrification Act of 1936, 5:1 et seq., as amended, 7 U.S.C.A. § 901 et seq. | What is the Primary purpose of the Rural Electrification Act? | Electricity - Memo 65 - 65.docx | ROS5-00321469 ROS5-00324661 | Condensed, SA, Sub 0.91 | 0 | 1 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16135 | United States v. Baer, 235 F. 1d6+5 | 38+5 | If a body of men be actually assembled for the purpose of effecting a treasonable purpose by force, that is levying war. But it must be a warlike assemblage, carrying the appearance of force, a military assemblage in a condition to make war or practice hostility... | The first requisite is in levying war the present operation of the present question is... | Must there be an actual assemblage of men to meet the levy war element of treason? | 003664.docx | LEGALEASE 00120274 – LEGALEASE 00120275 | Condensed, SA, Sub 0.92 | 0.92 | 0 | 1 | 1 | 1 | |
| 16136 | Hedra v. Diedrich Flooring, 181 Wis. 2d 579 | 366+27 | When seeking to impose subrogation on another party under express contractual provision, proof of personable existence and its applicability of provision. (Re: Tau 1, with two justices concurring and two justices concurring in result.) | There are two types of subrogation: conventional subrogation (or contractual subrogation) and equitable subrogation... | What types of subrogation exist? | 002623.docx | LEGALEASE 00120311 – LEGALEASE 00120312 | Condensed, SA, Sub 0.82 | 0.82 | 0 | | 1 | | |
| 16137 | Anonymous v. Anonymous, 44 Misc. 2d 14 | 221+180 | In contradistinction to ambassadors, consuls are commercial representatives and, as such, their diplomatic immunity is limited at the most to their official acts. | It appears clear, however, that Boganci dealt only with the extent of the exclusive jurisdiction of a suit against a consul by virtue of federal statutes... | Is the immunity of consuls limited in contradistinction to ambassadors? | 002999.docx | LEGALEASE 00120311 – LEGALEASE 00120312 | SA, Sub | 0.7 | 0 | | | 1 | |
| 16138 | An-para v. Paez, 145 F. Supp. 464 | 221+180 | A consul is not immune from suit except when action in suit based upon acts which he has committed within the scope of his duties, but an ambassador or minister is absolutely immune from suit even though if he based upon personal transaction. | On the question of immunity, a consul is not immune from suit except when the action is based upon acts which he has committed within the scope of his duties... | Does an ambassador enjoy absolute immunity? | 05300.docx | LEGALEASE 00120519 – LEGALEASE 00120520 | Condensed, SA, Sub 0.62 | 0.62 | 0 | 1 | | | |
| 16139 | Start Int'l Co. v. United States, 121 Fed. Cl. 428 | 149+2 | The same government action cannot be both an unauthorized illegal exaction and an authorized taking without just compensation in violation of Fifth Amendment. U.S. Const. Amend. 5. | As the Court indicated at the beginning of closing arguments on April 22, 2015, Start's illegal exaction and taking claims under the Fifth Amendment leading... | Can the same government action be both an unauthorized illegal exaction and an authorized taking? | 000581.docx | LEGALEASE 00120339 – LEGALEASE 00120340 | Condensed, SA, Sub 0.84 | 0.84 | 0 | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16140 | TrinCo Inv. Co. v. United States, 722 F.3d 1375 | 148+2.1 | While there is no case law on point for TrinCo's case, the existing precedent indicates that there are certain prerequisites that must be met before the doctrine of necessity can be applied to absolve the Government of a duty to compensate a party for lost property. The Supreme Court has consistently held that the doctrine of necessity may be applied only when there is an imminent danger and an actual emergency giving rise to actual necessity. See Bowditch, 101 U.S. at 16"19; Ralli v. Troop, 157 U.S. 386, 405, 15 S.Ct. 657, 39 L.Ed. 742 (1895); Caltex, 344 U.S. at 151"56, 73 S.Ct. 200; Mitchell v. Harmony, 54 U.S. 115, 135, 13 How. 115, 14 L.Ed. 75 (1851). | There are certain prerequisites that must be met before the doctrine of necessity can be applied to absolve the Government of a duty to compensate a party for lost property under the Fifth Amendment's Takings Clause, including that the doctrine of necessity may be applied only when there is an imminent danger and an actual emergency giving rise to actual necessity. U.S.C.A. Const.Amend. 5. | What factors gives rise to actual necessity under the law? | 003089.docx | LEGALEASE-00120351-LEGALEASE-00120352 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 16141 | Naples v. United States, 344 F.2d 508 | 203+520 | Sections 22-2401-02, District of Columbia Code (1961), define first degree murder.16 Section 22-2403 provides: "Whoever with malice afore thought, except as provided in sections 22-2401, 22-2402, kills another, is guilty of murder in the second degree." (Emphasis supplied.) This makes it clear that a single offense cannot be both both first and second degree murder. In Goodall v. United States, we said an instruction on both first and second degree murder. | Single offense cannot be both first and second degree murder. D.C.Code 1961, SS 22-2401 to 22-2403; 18 U.S.C.A. S 1111. | Can an offense be both first and second degree murder? | 003170.docx | LEGALEASE-00120479-LEGALEASE-00120480 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 16142 | Ballou v. Walker, 400 P.3d 234 | 289+445 | An existing partnership agreement controls the rights and duties of partners in a partnership. In re Estate of Bolinger, 1998 MT 303, " 50, 292 Mont. 97, 971 P.2d 767; see also " 35-10-106, MCA. "A partnership agreement is essentially a contract between the partners ... to be interpreted and applied in accordance with principles of contract law." Bolinger, " 54. A contract must be interpreted in such a way that it is lawful, operative, definite, reasonable, and practicably effectual without contravening the intention of the parties. Section 28-3-201, MCA. The language of a contract governs its interpretation when the language is clear, explicit, and without absurdity. Whary v. Plum Creek Timberlands, L.P., 2014 MT 71, " 10, 374 Mont. 266, 320 P.3d 973. | A partnership agreement is essentially a contract between the partners to be interpreted and applied in accordance with principles of contract law. | Are the principles of contract law applicable in partnership? | 003441.docx | LEGALEASE-00120650-LEGALEASE-00120651 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 16143 | Dix Mut. Ins. Co. v. LaFramboise, 149 Ill. 2d 314 | 366+1 | The doctrine of subrogation is a creature of chancery. It is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid. (34 Ill.L. & Prac. Subrogation " 2 (1958).) The right of subrogation is an equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. (34 Ill.L. & Prac. Subrogation " 2 (1958).) Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. (34 Ill.L. & Prac. Subrogation " 6 (1958).) There is no general rule which can be laid down to determine whether a right of subrogation exists since this right depends upon the equities of each particular case. See 34 Ill.L. & Prac. Subrogation " 6 (1958). | There is no general rule to determine whether right of subrogation exists since right depends upon equities of each particular case. | When is subrogation not allowed? | Subrogation - Memo 58 - RM C.docx | ROSS-003315910-ROSS-003315911 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 16144 | In re Stambaugh, 532 B.R. 572 | 366+1 | The court in Heller noted that equitable subrogation is a widely recognized exception to the "first in time" rule. Heller, 863 A.2d at 1156. The Heller court recites the four criteria which must be met for equitable subrogation to apply:(1) the claimant paid the creditor to protect his own interests;(2) the claimant did not act as a volunteer;(3) the claimant was not primarily liable for the debt; and(4) allowing subrogation will not cause injustice to the rights of others.Id. at 1158. Ultimately, the court in Heller found that the appellant, Ameriquest Mortgage Company, did not qualify for equitable subrogation. It noted that Ameriquest was seeking to be subrogated to earlier mortgage positions which its title search "did not reveal." The Superior Court held that the appellant's interest remained subordinate to the foreclosing appellee and quashed the appeal. | Four criteria must be met in order for equitable subrogation to apply as exception to Pennsylvania's "first in time" lien priority rule: (1) claimant must have paid creditor to protect his own interests; (2) claimant must not have acted as volunteer; (3) claimant must not have been primarily liable for debt; and (4) allowing subrogation must not cause injustice to the rights of others. | Is equitable subrogation an exception to the first in time lien priority rule? | Subrogation - Memo 68 - VP C.docx | ROSS-003283881 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 16145 | Nationwide Mut. Fire Ins. Co. v. T & N Master Builder & Renovators, 2011 IL App (2d) 101143 | 366+1 | We further note that this is an action in subrogation. As the supreme court explained in Dix, subrogation is an action in chancery. Dix, 149 Ill.2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622. It is "designed to place the ultimate responsibility for the loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is compelled to pay." Reich v. Tharp, 167 Ill.App.3d 496, 500"01, 118 Ill.Dec. 248, 521 N.E.2d 530 (1987). As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. Dix,149 Ill.2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622. Subrogation is not allowed against a tenant where the tenant is considered a coinsured under the landlord's insurance policy. Reich, 167 Ill.App.3d at 501, 118 Ill.Dec. 248, 521 N.E.2d 530. With these principles in mind, we now turn to the issues raised by plaintiff. | As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. | When is subrogation not allowed? | 003578.docx | LEGALEASE-00120374-LEGALEASE-00120375 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 16146 | Peters v. ContiGroup, 292 S.W.3d 380 | 279+1 | "An action for private nuisance rests on tort liability...." Vermillion v. Pioneer Gun Club, 918 S.W.2d 827, 831 (Mo.App.1996). "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property." Frank v. Envtl. Sanitation Mgmt., Inc., 687 S.W.2d 876, 880 (Mo. banc 1985). The focus is on the defendant's unreasonable interference with the plaintiff's use and enjoyment of his land. Id. The law of nuisance recognizes the inherent conflict between the rights of neighboring property owners. Id. The unreasonable use element seeks to balance those rights. Id. | "Nuisance" is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property; the focus is on the defendant's unreasonable interference with the plaintiff's use and enjoyment of his land. | What does nuisance entail? | Eminent Domain - Memo 144 - RK.docx | ROSS-003283003-ROSS-003283004 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16147 | Bentley v. Northshore Dev., 935 F. Supp. 500 | 249+45 | Restatement (Second) of Torts " 674 cmt. a, (1976). Finally, the Restatement explains the "procurement of civil proceedings" as: "[O]ne who procures the initiation of civil proceedings is liable under the same conditions as the one who initiates them." Id. Based upon " 674, if the counterclaim arose at the behest or initiation of the principals of the corporation, the principals would be the proper parties to a malicious prosecution suit. The Restatement clearly provides that the defendants need not be the parties who actually brought the counterclaim. Restatement (Second) " 674. | Principals of corporation whose requests precipitated initiation of previous suit against plaintiff were the proper parties to plaintiff's malicious prosecution suit even though it was corporation, and not principals, who actually brought prior suit. Restatement (Second) of Torts S 674. | Who are proper parties to a plaintiffs malicious prosecution? | Malicious Prosecution - Memo 89 - AKA.docx | ROSS-003283858-ROSS-003283859 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 16148 | Consol. Water Utilities, Ltd. v. Arizona Corp. Comm'n, 178 Ariz. 478 | 317A+124 | The Commission has the "full power" to "prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made ... by public service corporations within the State ..." Ariz. Const. art. XV, " 3. Many cases have recognized the Commission's broad power to set rates for public service companies. See Tucson Elec. Power Co., 132 Ariz. at 242, 645 P.2d at 233; Arizona Pub. Serv. Co., 113 Ariz. at 370"71, 555 P.2d at 328"29; Tucson Gas, 15 Ariz. at 299, 138 P. at 783. In the present case, we recognize an equally broad power to "prescribe just and reasonable classifications to be used" in setting rates under article fifteen, section three. See also State ex rel. Corbin v. Arizona Corp. Comm'n, 174 Ariz. 216, 218, 848 P.2d 301, 303 (App.1992) ("The commission has the exclusive power to exercise the duties given it in art. 15, " 3."). | State Constitution required Arizona Corporation Commission to calculate rates for public service corporation by calculating "fair value rate base" from fair value of corporation's properties within state at time rate is fixed. A.R.S. Const. Art. 15, SS 1 et seq., 14. | Does the Corporation Commission have the right to prescribe just and reasonable rates to be made by the public service corporation within the State? | Public Utilities - Memo 48 - JS.docx | ROSS-003282281-ROSS-003282283 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 16149 | In re Houston, 409 B.R. 799 | 366+1 | Subrogation has been allowed in South Carolina cases only upon fact intensive inquiry and a balancing of equity. Only a handful of the equitable subrogation cases deal with mortgages and judgments and none discuss the doctrine in connection with the rights of a bona fide purchaser of real property. The relevant South Carolina cases allow subrogation cutting off the rights of other creditors, never a bona fide purchaser; and in the case of creditors only when the original expectation and priority of the creditor vis-"-vis the collateral is not changed by allowing equitable subrogation. See Kuznik v. Bees Ferry Assoc., 342 S.C. 579, 538 S.E.2d 15 (S.C.App.2000) (reversing the decision of a Master"in"Equity granting reimbursement under the doctrine of equitable subrogation when the underlying obligation was a nonrecourse note); Dodge City of Spartanburg, Inc. v. Jones, 317 S.C. 491, 454 S.E.2d 918 (S.C.App.1995) (finding equitable subrogation appropriate when creditor's original expectations are preserved); United Carolina Bank v. Caroprop, Ltd., 316 S.C. 1, 446 S.E.2d 415 (1994) (finding that no injustice is imposed in allowing equitable subrogation when creditor's original expectations are preserved); Dedes v. Strickland, 307 S.C. 155, 414 S.E.2d 134 (1992) (finding that a creditor is not entitled to equitable subrogation where they were not mislead as to the existence of a subsequent mortgage). See also First Carolinas Joint Stock Land Bank of Columbia v. DuBose, 181 S.C. 40, 186 S.E. 514 (1936); South Carolina Ins. Co. v. Kohn, 108 S.C. 475, 95 S.E. 65 (1918). | Subrogation is allowed under South Carolina law only upon fact intensive inquiry and a balancing of equity. | Is the decision whether to grant equitable subrogation necessarily a fact intensive inquiry? | 003545.docx | LEGALEASE-00120677-LEGALEASE-00120678 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 16150 | Leitner v. United States, 92 Fed. Cl. 220 | 148+2.4 | In certain instances this Court can construe and adjudicate a claim for "actual, presently due money damages from the United States," or offer equitable relief ancillary to such a claim. See Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed.Cir.1998). Here, however, the Court cannot adjudicate Mr. Leitner's property claim even if it is construed as a demand for money damages under the Fifth Amendment's Takings Clause. A Fifth Amendment takings claim is not a vehicle for challenging a government action. What he actually is asking for is a return of property and damages. This is not a valid takings claim. Specifically, Mr. Leitner disputes that the government lawfully seized his property in the raids. See McNeil v. United States, 78 Fed.Cl. 211, 236 (2007) (holding that the government action must have been lawful to have a valid takings claim). In addition, taxation is not the taking of private property for public purpose, under the Fifth Amendment. See, e.g., Russell v. United States, 78 Fed.Cl. 281, 289 (2007) (quoting Mobile County v. Kimball, 102 U.S. 691, 703, 26 L.Ed. 238 (1880)). While taxation clearly deprives a citizen of property, there is presumably some reciprocal benefit that takes it out of the takings category. Certain very focused taxes, however, may indeed constitute takings. See E. Enters. v. Apfel, 524 U.S. 498, 522"37, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). | Taxation is not the taking of private property for public purpose, under the Fifth Amendment. U.S.C.A. Const.Amend. 5. | Is taxation a taking of private property for public purpose? | 017368.docx | LEGALEASE-00120939-LEGALEASE-00120940 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16151 | Reardon v. Keating, 980 F. Supp. 3d 100 | 92+2051 | However, for constitutional purposes this is a limited concept. The mere violation of a state law does not automatically give rise to a violation of federal due process rights. U.S.C.A. Const. Amend. 14. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. 2701. The Second Circuit's analysis of this factor "focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision," a standard which "appropriately balances the need for local autonomy, with recognition of constitutional protection at the very outer margins of municipal behavior," Zahra, 48 F.3d at 680 (emphasis added). In the Second Circuit's view, that approach to land use regulation cases, such as the instant one represents an acknowledgment that decision on matters of local concern should ordinarily be made by those whom local residents select to represent them in municipal government, not by federal courts. It also recognizes that the Due Process Clause does not function as a general overseer of arbitrariness in state and local land use decisions; in our federal system, that is the province of the state courts. Id. | The mere violation of a state law does not automatically give rise to a violation of federal due process rights (implied constitutional claims) | Do violations of state eminent domain statutes give rise to federal constitutional claims? | 037370.docx | LEGALEASE 00120941 LEGALEASE 00120943 | Condensed, SA, Sub (I) 0.91 | 0.91 | 0 | | | 1 | 1 |
| 16152 | In re Certain Homes, 411 N.J. Super. 244 | 317k+145.1 | Generally speaking, the BPU's power to regulate utilities is broad. "Our courts have consistently held that the Legislature in Title 48 intended to delegate the widest range of regulatory power over public utilities to the [BPU]." Deptford v. Woodbury Terrace Sewerage Corp., 54 N.J. 418, 424, 255 A.2d 737 (1969). The Court has further stated that BPU's powers extend beyond those expressly granted by statute "to include incidental powers that the agency needs to fulfill its statutory mandate." In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, Stranded Costs & Restructuring Filings, 167 N.J. 377, 384, 771 A.2d 1163 (2001)(quoting In re Valley Rd. Sewerage Co., supra, 154 N.J. at 235, 712 A.2d 653); cert. denied, 534 U.S. 813, 122 S.Ct. 37, 151 L.Ed.2d 11 (2001). | Generally speaking, the power of the Board of Public Utilities (BPU) to regulate utilities is broad. N.J.S.A. 48:2-13 to 48:2-23(a). | Are the powers concerning regulation of public utilities delegated to the Board of Public Utility Commissioners (BPU) broad? | 042568.docx | LEGALEASE 00120946 LEGALEASE 00120950 | Condensed, SA, Sub (I) 0.83 | 0.83 | 0 | 1 | | | 1 |
| 16153 | St. Lawrence Cty. Nat. Bank of Canton v. Watkins, 153 A.D. 551 | 302+68(4) | It says held by this court in First National Bank of Towanda v. Robinson, 105 App. Div. 193, 94 N. Y. Supp. 767, affirmed 188 N. Y. 45, 80 N. E. 567, that an averment "is an answer" "that there was no consideration given for the instrument sued upon" was a good allegation in an answer. The learned counsel for the respondent urges that this decision is not controlling upon us; the reason being that a different rule exists with respect to pleading matters with regard to an affirmative allegation than governs a negative allegation which may be alleged in general terms. We may concede this to be true, and assume that on our decision relates only to a negative allegation, and is not controlling with respect to an affirmative allegation. still we are of the opinion that the allegation that a written instrument was executed and delivered "for a valuable consideration" is an allegation of fact and not a conclusion of law, and the term "for a valuable consideration" is so commonly used, and has such a well-known meaning in commercial and legal usage, that it is illegal to say that it expresses a conclusion of law, rather than a statement of fact, or conclusion of fact, which latter is permissible in a pleading as against a demurrer. | An allegation that a written instrument was executed and delivered "for a valuable consideration" is an allegation of fact, and not a conclusion of law. | Is an allegation for a valuable consideration a statement of fact? | 023908.docx | LEGALEASE 00120977 LEGALEASE 00120978 | Condensed, SA | 0.88 | 0 | 1 | | | 1 |
| 16154 | Vincent v. Christian Cty. Health Dep't, 502 S.W.3d 738 | 25+1 | As statutorily created above, Vincent's constitutional farming rights, whatever they may be, are subject to local government powers duly authorized and conferred by article VI of Missouri's constitution. Mo. Const. art. I, ? 35. As construed in this article to require that county commission[s] "shall manage all county business prescribed by law" (? 7) and possesses proprietary powers as well. | Constitutional farming rights are subject to local government powers duly authorized and conferred by the state constitution. Mo. Const. art. I, ? 35, art. 5, 5:1 et seq. | What government powers are constitutional farming rights subject to? | 006055.docx | LEGALEASE 00121743 LEGALEASE 00121744 | Condensed, SA, Sub 0.58 | 0.58 | 0 | | | | 1 |
| 16155 | Kingsway Cathedral v. Iowa Dep't Of Transp., 711 N.W.2d 6 | 92+3855 | The Fifth Amendment to the Federal Constitution provides in relevant part that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment to the Federal Constitution makes the Fifth Amendment applicable to the states and their political subdivisions. Chicago, Burlington & Quincy R.R. v. City of Chicago, 166 U.S. 226, 233-34, 17 S.Ct. 581, 585, 41 L.Ed. 979, 983-84 (1897). | Fourteenth Amendment to the Federal Constitution provides in relevant part Amendment applicable to the states and their political subdivisions. U.S.C.A. Const. Amends. 5, 14. | How is Fifth Amendment made applicable to the states? | 037394.docx | LEGALEASE 00121499 LEGALEASE 00121500 | Condensed, SA, Sub 0.68 | 0.68 | 0 | | | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 16156 | Ferrari v. United States, 73 Fed. Cl. 219 | 148v2.2 | In Arkhuss, the Court found this type of hybrid taking, where the Government may not be required to take possession "propounded to resort to acquire the plaintiffs' land by eminent domain," threatened to do so at least "to take the need for only one first of its fair market value. The Arkhuss Court found as fact that the NPS' superintendent in charge of acquiring lands "sought to compel the landowners to sell the government their lands for 10 percent of their fair market value." 7 Cl.Ct. at 692. Such Government conduct in the words of the Arkhuss Court "paralyzed" plaintiffs' use of and ability to sell the property and prevented the plaintiffs from developing the property. Arkhuss, 7 Cl.Ct. at 695-97. There is no evidence of similar egregious government conduct in attempting to compel plaintiffs to sell their property for a fraction of its value. Nor is there a deprivation of plaintiffs' ability to use or develop their property as in Arkhuss. Rather, it appears that there was simply a breakdown in negotiations without Plaintiffs ever obtaining their own appraisal. As this Court has recognized, a failed negotiation between the Government and a property owner is not enough to constitute a taking. Pi Alpine Coal Co. v. United States, 29 Fed.Cl. 669, 680 (1993), aff'd, 36 F.3d 1116 (Fed.Cir.1994); see also Caldwell v. United States, 391 F.3d 1226, 1237 (Fed.Cir.2004) (bargaining of a possible sale or entry into a lease and a plan, but it is not a fixed, ripe, and compensable taking."). | Owners of tracts within national monument did not establish that their Government was constructively taken because the government's offering price for purchase of the tracts was below owners' estimation of market value, as failed negotiation between government and owner is distinct constitutes a "taking". | Does a failed negotiation between the Government and a property owner constitute a taking? | 037606.docx | LEGALEASE-00121495-LEGALEASE-00121496 | Condensed, SA, Sub 0.81 | | 0 | 1 | | 1 | |
| 16157 | Residential VAC Consumer 317Hv124 | | The Commission's plenary power over ratemaking, though, is not unfettered. Among other things, our constitution requires the Commission to "ascertain the fair value of property" when it sets rates. Ariz. Const. art. 15, § 14, Section 14 mandates: "In determining fair value the commission is charged with an affirmative duty to act." US West Communic. Inc. v. Ariz. Corp. Comm'n, 201 Ariz. 242, 245, ¶ 11, 34 P.3d 351, 354 (2001) ("US West "). "[A]scertaining the fair value of property of public service corporations is a necessary step in prescribing just and reasonable classifications, rates, and charges." Simpson v. Kenmore Int'l, Inc. v. Ariz. Corp. Comm'n, 170 Ariz. 165, 169, ¶ 15, 823 P.2d 1325, 1329 (1991) ("[T]he Commission is required to find the fair value of the company's property and use such finding as a rate base for the purpose of determining what are just and reasonable rates."). | The constitutional requirement that the Corporation Commission determine the fair value of a utility's property when setting rates is intended to avoid the harsh extremes of the rate spectrum and to ensure that both consumers and public service corporations are treated fairly, A.R.S. Const. Art. 15, § 14. | Is ascertaining the fair value of a utility property a prerogative of public service corporations? | 042600.docx | LEGALEASE-00121420-LEGALEASE-00121421 | Condensed, SA, Sub 0.67 | | | 1 | 1 | 1 | |
| 16158 | State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A., 143 Cal. App. 4th 1098 | 217v151(84) | "Subrogation has its source in equity and arises by operation of law [citing cases] or express agreement [citation]. It is an equitable remedy or the contractual language of the insurance policy (conventional subrogation) [Citation.] The subrogation provisions of most insurance contracts typically are general and add nothing to the rights of subrogation that arise as a matter of law [Citation.]" (Progressive, supra, 135 Cal.App.4th at p. 272, 37 Cal.Rptr.3d 454.) For example, the standard form fire insurance policy, contained in Insurance Code section 2071, includes a provision for subrogation, which the effect the insurer may require from the insured an assignment of all rights of recovery against any loss to the extent that payment is made in full by the insurer. | While subrogation has its source in equity and arises by operation of law, it may also arise out of the contractual language of an insurance policy; subrogation provisions of most insurance contracts typically are general and add nothing to the rights of subrogation that arise as a matter of law. | From what sources can subrogation arise? | 043602.docx | LEGALEASE-00121102-LEGALEASE-00121103 | Condensed, SA, Sub 0.62 | | | 1 | | 1 | |
| 16159 | Wordev v. Smith, 378 Wash. App. 360 | 366v1 | Equitable subrogation "includes every instance in which one person has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter." 73 Am.Jur.2d Subrogation § 5 (2013). "Subrogation applies in many contexts, and while the overall purpose of preventing unjust enrichment is the same, many times the appropriate rule is determined by the particular nuances of the situation." " Columbia Cmty. Bank v. Newman Park, LLC, 177 Wash.2d 566, 574 n. 7, 304 P.3d 472 (2013) (quoting Bank of Am., NA v. Prestance Corp., 160 Wash.2d 560, 574, 160 P.3d 17 (2007)). The purpose of the doctrine is " 'to avoid a person's receiving an unearned windfall at the expense of another.' " Prestance, 160 Wash.2d at 567, 160 P.3d 17 (quoting Restatement (Third) of Property § 7.6 cmt. a). In the most recent decision dealing with equitable subrogation, our Supreme Court observed that equitable subrogation is a flexible and robust tradition of applying the doctrine of equity." Newman Park, 177 Wash.2d at 572. | The purpose of the doctrine of equitable subrogation is to avoid a person's receiving an unearned windfall at the expense of another. | Is equitable subrogation a remedy to avoid an unearned windfall? | 043718.docx | LEGALEASE-00121320-LEGALEASE-00121304 | Condensed, SA 0.88 | | 0 | 1 | 0 | 1 | |
| 16160 | Bainbridge v. Travelers Cas. Co. of Connecticut, 159 F.3d 748 | 366v1 | Furthermore, because it is an equitable doctrine, no additional actions are needed before equitable subrogation can occur. Thus, unlike in an assignment, a subrogor need not intend to equitably subrogate the claims to a subrogee. 1 Louis Mourdier, Priestley & Mr. Homeowners' Ass'n v. Viewpoint Assocs., 80 P.2d 70, 73 (Colo.App.1993) (intent required for an assignment); (See also Sommer's Inc. v. Lloyd, 81 P.3d 528, 1110 (Colo.App.2003) (same). It arises "because it is imposed by courts to prevent unjust enrichment" Cedar Lane Invs. v. Am. Roofing Supply, Inc., 919 P.2d 879 (Colo.App.1996); "[A]n action for [restitution-based subrogation] creates a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." In re Estate of Reed, 937 P.2d 1073, 1077 (Colo.App.1996) (quoting Leonard Sec. Ins. Co. v. Sciarrotta, 888 P.2d 278, 277 (Colo.App.1994) 16 Couch, supra, § 61:18). | Because it is an equitable doctrine, no additional actions before equitable subrogation can occur, and unlike in an assignment, a subrogor need not intend to equitably subrogate the claims to a subrogee, A action because it is imposed by courts to prevent unjust enrichment. | Are additional actions needed before equitable subrogation can occur, as it is an equitable doctrine? | Subrogation - Memo 4 496 - C - NO.docx | ROSS-003127993-ROSS-003127903 | Condensed, SA, Sub 0.72 | | 0 | 1 | 1 | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 16161 | Worden v. Smith, 178 Wash. App. 309 | 366+1 | Equitable subrogation "includes every instance in which one person ... has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter." ... (footnote omitted) ... but Worden fails to explain what equity is being served here. ... Thus, the Court rejects the doctrine of equity, "Newman Park, LLC, 178 Wash.2d 354, 374 n. 7, 309 P.3d 401 (2013) (quoting Bank of Am., NA. v. Prestance Corp., 160 Wash.2d 560, 574 n. 7, 160 P.3d 17 (2007)). The purpose of the doctrine is "'to avoid a person's receiving an unearned windfall at the expense of another.'" Prestance, 160 Wash.2d at 567, 160 P.3d 17 (quoting Restatement (Third) of Property 7.6 cmt. a). In its most recent decision dealing with equitable subrogation, our Supreme Court ... continued applying the doctrine of equity. "Newman Park, 17 Wash.2d 354, 309 P.3d 401. | The purpose of the doctrine of equitable subrogation is to avoid a person's receiving an unearned windfall at the expense of another. | Is the purpose of subrogation to avoid an unearned windfall? | Subrogation - Memo # 559 - C - SU.docx | ROSS-003037629-ROSS-003037630 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | 1 |
| 16162 | In re Big Idea Prods., 372 B.R. 388 | 366+1 | Second, the Creditor Trust argues that granting Safeco the right of subrogation would be unjust. The Court rejects this argument. Subrogation is an equitable right that will not be granted when it would serve an injustice. In re Yale Towers Co., No. 907-67072, 2009 WL 3958989, at...(footnote omitted)... (E.D.N.Y. 2009) U.S. Dist. LEXIS 43974, at (S.D.Ind. Aug. 8, 2005). The Court finds that Safeco should not be granted the right of subrogation for three reasons. First, Safeco did not exercise all its rights under the Indemnity Agreement. By failing to appear for the final orders, and failing to point a supersedeas bond when the district court ruled in the judgment, Safeco did not contract for the right to be reimbursed upon reversal of the judgment. Third, Safeco did not appeal the judgment on its own behalf of the Creditor Trust successfully prosecuted the appeal so Safeco should not reap the benefit. | Under Texas law, subrogation is an equitable right that will not be granted when it would serve an injustice. | Is subrogation an equitable right that will not be granted when it would serve an injustice? | 043865.docx | LEG4524E-00121373 LEG4524E-00121373 | Condensed, SA, Sub D | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 16163 | In re Big Idea Prods., 372 B.R. 388 | 366+1 | As to the first reason, while Safeco certainly could have been protected itself had it taken certain steps and thereby breached its duty under the Indemnity Agreement. As to Safeco's other rights under the Indemnity Agreement, Safeco was under no obligation to undertake such tasks. These points do not demonstrate that Safeco breached any of its duties under the Indemnity Agreement. On the contrary, it paid out the full amount it contracted to pay under the Indemnity Agreement. As to the second reason, the right of subrogation does not depend on the provisions of the contract between the parties; it is implied in equity. Ware First Bank Dallas, N.A., 774 S.W.2d at 397. Moreover, general subrogation principles do not require that the surety guarantee a given contract and that the other party to the contract perform its portion of the contract ... a subrogation would have a $10,000,000 claim against the estate, leaving more of the remaining estate assets for other creditors. Safeco, if subrogated, would be a general unsecured creditor ... failed to perform its obligation under the Bond and Safeco performed for Big Idea and paid in full, and the contract ... therefore bears Safeco in this situation. Thus, the Court rejects the Creditor Trust's argument. ... Finally, the City argues that subrogation rights based on the performance bond. Instead, it argues that upon its payment under the performance bond, it right to withhold the contract payments for the city might have retained funds to protect itself from liability to the unpaid subcontractors in support of against real harm. | Under Texas law, the right of subrogation does not depend on the provisions of the contract between the parties; it is implied in equity. | Does the right of subrogation depend on the provisions of the contract between the parties? | Subrogation - Memo # 555 - C - DA.docx | ROSS-003038723-ROSS-003038724 | Condensed, SA, Sub D | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 16164 | In re V. Pangori & Sons, 53 B.R. 711 | 366+(1) | ... Although the above analysis is broadly applicable to all of the contested rights, and regardless of whether they are denied, this argument deserves further comment. It is well-established that a surety in subrogated to the rights of only those creditors which it pays on the principal's behalf. Pearlman, supra; United States v. Municipal Sur. Co., 352 U.S. 234, 67 S.Ct. 1595, 93 L.Ed. 2022 (1947); American States Ins. Co. v. Young, 255 Ky. 87 (Bankr.E.D.Mich.1972). If Continental had been required to pay for completion, that statute would give it subrogated to the city's rights, since the performance bond is established for the benefit of the government. Mich Const.Laws 129.202. ... subrogation rights based on the performance bond. Instead, it argues that upon its payment under the performance bond ... right to withhold the contract payments for their payment, upon Continental's performance of those duties, they were able to become subrogated to the retainage. The underlying assertion is that the city might have retained funds to protect itself from liability to the unpaid subcontractors in support of against real harm. | A surety is subrogated to the rights of only those creditors whom it pays on the principal's behalf. | Does a surety subrogate to the rights of only those creditors whom it pays on the principal's behalf? | Subrogation - Memo # 610 - AMLC.docx | ROSS-003038583-ROSS-003038583 | Condensed, SA, Sub D | 0.93 | | 1 | | 1 | 1 |

2848

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16165 | Elec. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 146 F. Supp. 2d 958 | 366=17 | ContEd has an accrued breach of contract claim against National Union (assuming the behavior constitutes a breach) or, in the alternative, if National Union has not indemnified ContEd. Plaintiffs, however, can only recover damage loss from this breach of contract if they are subrogated to ContEd's breach of contract claim, i.e., if they have the right to bring ContEd's breach of contract claim on their own behalf. See 84 Couch on Ins. 3d § 222:5 (2000). Plaintiffs can have this right through contractual or equitable subrogation. Union Mutual Bank, N.A. v. TTI Mortgage Co., 341 B. App. 34 911, 37 (Fed. Cir. 945, 794 N.E. 2d 860, 864 (2001). Contractual subrogation arises out of a contract while equitable subrogation arises out of... Plaintiffs are contractually or equitably subrogated to ContEd's breach of contract claim and National Union had a duty to indemnify ContEd, they would be entitled to damages under a breach of contract theory. | Under Illinois law, contractual subrogation arises out of a contract, while equitable subrogation arises out of the court's equitable powers. | "Does contractual subrogation arise out of a contract, while equitable subrogation arises out of the court's equitable powers?" | Subrogation - Memo # 670 - C - S4.docx | ROSS-003135668-ROSS-003135670 | SA_Sub | 0.85 | 0 | | 1 | 1 | |
| 16166 | First Am. Title Ins. Co. v. First Alt. Title, 738 F. Supp. 2d 669 | 366=7(1) | While it is uncontroverted that a surety who pays a principal's creditor is typically subrogated to the creditor's claims against the principal, see, e.g., Dickenson, 13 Vet. App. 415, 418, 41,427... authority for the proposition that FATIC should have been precluded from seeking the full sum of its recovery beyond the limited amount of the Bond simply because the full sum would encompass recovery that only under the amount to which it would exceed. First American was released simply in light of the surety, if anything, and as noted above, the law generally prefers a bona fide creditor before creditors in situations of surety subrogation rights. See Restatement ¶ 27 cmt. b; furrow, 160 Va. at 342, 168 S.E. 354. | Under Virginia law, a surety who pays a principal's creditor is typically subrogated to the creditor's claims against the principal. | Is a surety who pays a principal's creditor typically subrogated to the creditor's claims against the principal? | 044896.docx | LEGALEASE-00121636-LEGALEASE-00121637 | SA_Sub | 0.8 | 0 | | 1 | 1 | |
| 16167 | State Nd. Morg. Co. v. Varner, 740 S.W.2d 477 | 366=7(1) | However, the trial court erroneously concluded that it had no assignable interest in the promissory note. Once Mrs. Ford, as answerer of property, pledged (or, "secured") portion of the property as surety, in the event of another, she secured the particular of a surety to the extent of the property pledged as security. Prete v. Medori, 787 S.W. 130, 135 (Tex. 1990). 94211 (2006); Jack M. Finley, Inc. v. Longview Bank & Trust, 705 S.W.2d 206, 209 (TexApp. 1985) n. It... who has paid the debt of the principal is subrogated to right of action against the principal for the debt so paid. See Brunnel v. First American... 86 (Tex.App "Houston (1st Dist.) 1984, no writ); Jones v. Hubbard, 302 S.W.2d 493 (Tex.Civ.App.) Waco 1957, writ ref'd n.r.e. Accordingly, when Ford discharged Varner's debt through the compelled foreclosure sale of her certificate of deposit, she had a right of action against the principal, Varner, for the value of the deposit applied to pay the debt. | Surety who has paid debt of principal is subrogated to right of action against principal for debt so paid. | Is a surety who has paid the debt of a principal subrogated to a right of action against the principal for debt so paid? | Subrogation - Memo # 692 - C - SA.docx | ROSS-003187543-ROSS-003187544 | SA_Sub | 0.9 | 0 | | 1 | 1 | |
| 16168 | Guilford v. IHa, 838 S.W.2d 230 | 366=31(1) | Generally, rights conferred by subrogation are entirely derivative of the subrogee's interests, to which the subrogee merely succeeds. 16 George I. Couch et al., Cyclopedia of Insurance Law 2d ¶¶ 16,76:32-37 (rev. ed. 1983); 1 Rowland H. Long, The Law of Liability Insurance ¶ 13.02[8] (a) (1991); see Fidel's Fire Furniture v. Fair, 916 S.W.2d 135, 141 (Tex.Civ.App. "Houston (14th Dist.) 1973, writ ref'd nr.e); Insurance Co. of North America v. Fredonia State Bank, 469 S.W.2d 248, 251 (Tex.Civ.App. "Tyler 1971, writ ref'd n.r.e.). International Ins. Co. v. Medical Professional Bldg., 405 S.W.2d 867, 869 (Tex.Civ.App. "Corpus Christi 1966, writ ref'd n.r.e.); Hoda v. Wright, 564 S.W.2d 278, 780 (Tex.Civ.App. "Tyler 1978, writ ref'd n.r.e.); Panes v. Brantly Helicopter Corp., 396 T.Supp. 446, 450, 452 (S.D.Tex.1975). This is first of a surety's subrogation rights under the Workers' Compensation Act. See Perry v. Hinojosa, 307 S.W.2d 515, 532 (Tex.Civ.App. "Houston 1957, writ ref'd n.r.e.). There is but one of action against the third party to the insurance carrier to recoup itself for compensation paid." Plemel v. Roach, 989 S.W.2d 612, 615 (Tex.App.-Dallas 1998, no pet.); Fort Worth v. Usque, 511 Tex. 149, 246 S.W.2d 865, 868 (1952). | Generally, rights conferred by subrogation are entirely derivative of the subrogee's interests, to which subrogee merely succeeds. | As subrogation rights derivative? | Subrogation - Memo # 727 - C - SA.docx | ROSS-003185527-ROSS-003185529 | Condensed_SA | 0.91 | 0 | 1 | | 1 | |
| 16169 | Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wash. 2d 411 | 366=1 | "Subrogation" is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." Black's Law Dictionary 1467 (8th ed. 2004). Subrogation has two distinct types: conventional subrogation, which arises by contract; and legal subrogation, which arises by operation of law. Mahler v. Szucs, 135 Wash.2d 398, 411, 957 P.2d 632, 966 P.2d 305 (1998) (citing Roos v. Lents, 174 Wash. 205, 216, 24 P.2d 622 (1933)); see also Black's Law Dictionary, supra. | Subrogation has two distinct types: conventional subrogation, which arises by contract, and equitable subrogation, which arises by operation of law. | Is subrogation of two distinct types? | Subrogation - 585 - S4.docx | ROSS-003183473-ROSS-003183474 | Condensed_SA | 0.76 | 0 | 1 | | 1 | |
| 16170 | Voss v. Grossmyer, 107. Supp. 3d 175 | 366=16 | An individual commits the tort of trespass to chattels by intentionally dispossessing another person of a chattel or intermeddling with a chattel in another person's possession (the intermeddling with a chattel in another person's possession being...  BBDA-2d 150, 158 (cmt.ed. 2.2005). If the interference with the owner's right of possession is sufficiently severe to permanently deprive hime or her of the right, the trespass culminates in a conversion. Baram v. Farugia, 606 F.2d 42, 47,44 (3d Cir. 1979). A conversion can occur even if the original defendant later reacquires possession of the property for his or her own use. Central Transport, LLC v. Atlas Towing, Inc., 684 F.Supp.2d 207, 218 "19 (E.D.Pa. 2012). Tataka alleges that the arresting officers committed the tort of trespass by intentionally depriving ("attack" and taking of the  window, clothing, groceries, and medicines. (ECF No. 1 ¶¶ "17 "23, "24.) These claims are derived primarily from her arrest (except the arrest when she allegedly "ordered" and "effected the instruction" of a lost property. (Id. ¶ 7.2). | Under Pennsylvania law, an individual commits the tort of trespass to chattels by intentionally dispossessing another person of a chattel or intermeddling with a chattel in another person's possession (the interference with the owner's right of possession is sufficiently severe to permanently deprive him or her of that right, the trespass culminates in a conversion. | When does a trespass culminate into a conversion? | Trespass - Memo 122 - AAA.docx | ROSS-003183777-ROSS-003183778 | SA_Sub | 0.44 | 0 | | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16171 | Installit v. Carpenters 46 N. California Ctys. Conference Bd., 214 F. Supp. 3d 855 | 231H+1549(7) | Plaintiff next suggests that the Court must find language in the arbitration agreement showing the parties' intent to arbitrate statutory claims. Plaintiff relies on Old Dutch Farms for the proposition that "absent a clear, explicit statement" in the agreement that parties intended to arbitrate tort claims, it must be assumed that they did not. Opp'n at 8-9; Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union No. 584, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 359 F.2d 598, 603 (2d Cir. 1966). This is simply not the law. Since Old Dutch, the Supreme Court has repeatedly held that statutory claims may be the subject of arbitration agreements even where those agreements do not contain "a clear, explicit statement" to that effect. See e.g., Gilmer, 500 U.S. at 26, 111 S.Ct. 1647; Mitsubishi, 473 U.S. 614, 625"27, 105 S.Ct. 3346. The Second Circuit itself has disavowed Plaintiff's reading of Old Dutch. See Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550, Int'l Bhd. of Teamsters, 167 F.3d 764, 769 (2d Cir. 1999) (declining to follow Old Dutch's requirement of a "clear and explicit statement"). | Employer's unfair labor practice claim under the LMRA against union was arbitrable under the Federal Arbitration Act (FAA), even though arbitration agreement did not explicitly state that statutory claims could be resolved through arbitration and the LMRA established a right to sue for damages resulting from unfair labor practice; arbitration agreement was not required to contain clear, explicit statement that parties intended to arbitrate statutory claims, and fact that LMRA established a right to sue for unfair labor practices did not mean that federal courts retained exclusive jurisdiction over those suits. 9 U.S.C.A. S 1 et seq.; National Labor Relations Act S 8(b)(4), 29 U.S.C.A. S 158(b)(4); Labor Management Relations Act, 1947 S 303, 29 U.S.C.A. S 187. | Can statutory claims be the subject of an arbitration agreement? | 007056.docx | LEGALEASE-00122400-LEGALEASE-00122401 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 16172 | Nat'l Leasing Corp. v. Williams, 80 F.R.D. 416 | 8.30E+10 | It appears that plaintiff is a Pennsylvania corporation with its principal place of business in the forum state. The promissory note agreed to by the defendant was entered into pursuant to the Pennsylvania Uniform Commercial Code. Thus, Pennsylvania law was chosen to apply to the note. Also, the performance of the agreement was to be in Pennsylvania, the designated place of payment. The obligations of the maker of a note are determined by the law of the state designated on the instrument as the place of payment. Restatement Conflicts of Law, s 214. | Obligations of maker of note are determined by law of state designated on instrument as place of payment. | How are the obligations of the maker of the note determined? | Bills and Notes - Memo 49 - KC.docx | ROSS-003310982-ROSS-003310983 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 16173 | Universal Premium Acceptance Corp. v. York Bank & Tr. Co., 69 F.3d 695 | 83E+342 | One of the requirements for negotiability under 13 Pa.Cons.Stat.Ann. " 3104(a)(3) is that an instrument must be "payable to order or to bearer." How the parties regard or characterize the instrument is immaterial. "The negotiability of an instrument cannot be established by waiver.... [W]here the statute requires certain elements, it is not for private persons to dispense with or waive them." 5A Ronald A. Anderson, Uniform Commercial Code " 3-104:13 (3d ed. 1994). See also Anderson " 3-112:1 (official code comment). The drafts here did not meet the terms of " 3104. | One requirement for negotiability is that instrument must be "payable to order or to bearer." 13 Pa.C.S.A. S 3104(a)(3). | Is it obligatory for a negotiable instrument to be payable to order or to bearer? | Bills And Notes-Negotiability-Memo 27-AM.docx | ROSS-003328795-ROSS-003328796 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 16174 | City of Austin v. Travis Cty. Landfill Co., 73 S.W.3d 234 | 148+2.8 | A landowner has no right to exclude overflights above its property, because airspace is part of the public domain. Causby, 328 U.S. at 266, 66 S.Ct. 1062. Rather, a property owner is entitled to compensation if its property is taken by overflights that immediately and directly interfere with the property's use and enjoyment. Id. This inquiry requires a more extensive factual showing than the mere existence of overflights. As one federal court has noted, "an invasion of airspace above surface land does not per se constitute a taking." Brown v. United States, 73 F.3d 1100, 1104 (Fed.Cir.1996); see also Ronald C. Bodine v. U.S., 210 Ct.Cl. 687, 688, 1976 WL 23873 (1976) ("[T]here are no cases concerning the wrongful use of airspace only."). That civilian aircraft overflew TCLC's property, without more, does not establish that an unconstitutional taking occurred. | Landowner has no right to exclude overflights above its property, because airspace is part of the public domain, and thus a property owner is only entitled to compensation if its property is taken by overflights that immediately and directly interfere with the property's use and enjoyment, which inquiry requires a more extensive factual showing than the mere existence of overflights. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, S 17. | Do a landowner have right to exclude overflights above its property? | Eminent Domain - Memo 200 - GP.docx | ROSS-003287300-ROSS-003287301 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 16175 | MetroplexCore v. Parsons Transp., 743 F.3d 964 | 226H+14 | "First, Texas defines a "community of interest" as "a commonly shared incentive between the parties as to the progress and goals of the joint venturers." " Ballard v. United States, 17 F.3d 116, 118 (5th Cir.1994) (quoting Hasslocher v. Heger, 670 S.W.2d 689, 693 (Tex.App."San Antonio 1984, writ refused n.r.e.) (in turn citing W.H. Hodges & Co. of Alexandria, Inc. v. Donley Cnty. State Bank, 407 S.W.2d 221, 224 (Tex.1966))). MetroplexCore produced evidence of a community of interest in the venture at least in Phase I, and arguably in Phase II, because the parties had a mutual interest and "commonly shared incentive" in obtaining the METRO contract. Id. This factor is met. Cf., e.g., S. Sur. Co. v. Tex. Emp'rs' Ins. Ass'n, 2 S.W.2d 310, 312 (Tex.Civ.App."Waco 1927, writ ref'd) (holding there existed a genuine issue of material fact as to whether a construction venture was intended as a partnership or whether it was intended as a general contractor-subcontractor relationship); Westside Wrecker, 361 S.W.3d at 166 (assessing whether construction project participants formed a community of interest); Ben Fitzgerald Realty, 846 S.W.2d at 122 (same). However, this factor alone is not sufficient to create a partnership or joint venture; more indicia are required. See Tex. Bus. Org.Code " 152.052(b), (b)(3). | For purpose of determining whether a joint venture exists, Texas defines a "community of interest" as a commonly shared incentive between the parties as to the progress and goals of joint venturers. | What is a community of interest? | Partnership - Memo 155 - RK.docx | ROSS-003284261-ROSS-003284262 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 16176 | In re Copeland, 291 B.R. 740 | 289+453 | Partnership status is created by either an express or implied contract of partnership, but there is no requirement that the parties actually intended to become partners. Bass, 814 S.W.2d at 41 (citing Wyatt, 281 S.W.2d at 67). When there is no written contract, the intent to form a partnership may be derived from the parties' actions. Wyatt, 281 S.W.2d at 67. When determining whether a partnership exists, courts must consider the totality of all relevant facts and circumstances "where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." Pettes, 912 S.W.2d at 715 (quoting Bass, 814 S.W.2d at 41). "It is not necessary that the parties intend to actually form a partnership or even that they know the legal result of their actions is to create a partnership." Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 45 S.W.3d 588, 605 (Tenn.Ct.App.2001). The pooling of "money, assets, labor, or skill ... [results in] a partnership whether or not the parties understood that it would be so." Bass, 814 S.W.2d at 41 (citing Pritchett v. Thomas Plater & Co., 144 Tenn. 406, 232 S.W. 961, 969"70 (1921)). | Under Tennessee law, it is not necessary that parties intend to actually form a partnership or even that they know the legal result of their actions is to create a partnership. | Can a partnership be unintentionally formed by contract? | 022751.docx | LEGALEASE-00122469-LEGALEASE-00122470 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16577 | Sizzle & Bialek v. Advent, 109 A.D.2d 159 | 30+123 | We address first the issue of appealability. Defendants cite the oft-repeated propositions that "an appeal lies from an order adjudicating in advance of trial the admissibility of evidence" (Zeppieri v. Wormser, 283 A.D.2d 633, 638, 725 N.Y.S.2d 561; see Radisson Free School Dist., 304 A.D.2d 808, 810, 758 N.Y.S.2d 394; Chateau Rive Corp. v. Enclave Dev. Assoc., 283 A.D.2d 537, 725 N.Y.S.2d 215; Brennan v. Mabey's Moving & Stor., 226 A.D.2d 938, 640 N.Y.S.2d 688), and that such an evidentiary ruling, "even when made "in motion papers constitutes, at best, an advisory opinion which is neither appealable as of right nor by permission" (Cotgreave v. Public Adm'r of Imperial County, 91 A.D.2d 600, 601, 456 N.Y.S.2d 412; see, Swanson v. City of N.Y. v. Hoos, Auth., 172 A.D.2d 560, 509, 547 N.Y.S.2d 655; Pelegrino v. New York City Tr. Auth., 142 A.D.2d 705, 1278 N.Y.S.2d 1047 [Chateau Rive Corp., 283 A.D.2d at 537, 725 N.Y.S.2d 215...] | No appeal as of right lies from an evidentiary ruling, whether made in advance during trial, where ruling has not been embodied in formal order. McKinney's CPLR 5512. | Does an order ruling on motion in limine, even when made in motion papers, constitute an advisory opinion, that is neither appealable as of right nor by permission? | Pretrial Procedure Memo # 180 - RM C.docx | ROSS-000284317/ROSS-000284318 | Condensed, SA, Sub 0.83 | 0.83 | 0 | | | 1 | |
| 16578 | Jackson v. Jayne, 309 S.W.3d 910 | 307k+1 | We begin our consideration of the parties' arguments by noting that, as Mr. Jackson points out, this Court recently opined that a motion in limine should not be used as a substitute to preclude evidence, and should be a substitute for a motion for summary judgment. Durán v. Hyundai Motor America, Inc., 271 S.W.3d 178, 192 (Tenn.Ct.App.2008). Rather, a motion in limine procedure means by which a party may seek guidance from the trial court regarding an evidentiary question in order to formulate their trial strategy... It is essentially substitute for an evidentiary objection which may be made at trial. Id. A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial ... | A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. | Is a motion in limine subject to the same safeguards as a motion for summary judgment or for partial summary judgment? | 024031.docx | LEGALEASE 00122273-LEGALEASE 00122274 | Condensed, SA | 0.83 | | | 0 | | |
| 16579 | Florida-Georgia Chem. Co. v. Nat'l Labs., 153 So. 2d 752 | 308+39 | Agency may be revoked or terminated in any manner showing the intention of the principal to withdraw the authority. Such revocation, as far as the agent is concerned, becomes operative from the time he has actual notice thereof, but notice to third parties will not effect revocation as to agent. | Revocation of agency becomes operative as to agent from time he has actual notice thereof, but notice to third parties will not effect revocation as to agent. | Should revocation of agency be communicated to the agent? | 041205.docx | LEGALEASE 00122280-LEGALEASE 00122281 | Condensed, SA, Sub 0.48 | 0.48 | 0 | | | 1 | |
| 16580 | Illinois Commerce Comm'n v. Chicago Res. Co., 362 Ill. 559 | 70+10 | The principal question involved in this proceeding is, whether the order of the Commerce Commission directing the extension of the lines of the Chicago Railways Company by the construction of certain extensions, limits observes the United Motor Coach Company of its property contrary to the due process provisions. The company has no vested rights in the highway or street and has no financial investment over any right of use in the public highway. Its rights, if any, are such as it may have acquired by reason of the compact which it proposed to do. Before the enactment of the Public Utilities Act such highways and streets were devoted to use of certain companies which sought to carry passengers, provided it had the proper highway consent. The purpose of the Public Utilities Act was to control this competition so that such service would not be destroyed because of ruinous competition, but would be protected under proper regulation. The regulation, however, is not for the benefit of the carrier alone, but convenience and need of the public is of primary importance and was accommodated by the legislature in the enactment of the Public Utilities Act. City of Chicago v. Alton Railroad Co., 355 Ill. 65, 188 N.E. 851; Palme's Telephone Co. v. Modesto Telephone Co., supra; Wabash, Chester & Western Railway Co. v. Commerce Comm., 109 Ill. 412, 141 N.E. 212. The act contemplates actual supervision of every public utility, not an intermittent, sporadic, adequate, uniform, and satisfactory service shall be rendered to the public at reasonable rates and without discrimination. City of Chicago v. Alton Railroad Co., supra. | Regulation provided by Public Utilities Act is not for benefit of carrier alone, but convenience and need of public is of prime importance and was accommodated by legislature in enactment of the act (Smith-Hurd Stats., c.111/2/321 § 50. | Why does the Public Utilities Act contemplate supervision of every public utility? | Public Utilities - Memo 106 - AM.docx | LEGALEASE 00022359-LEGALEASE 00022361 | Condensed, SA, Sub 0.86 | 0.86 | 0 | | | 1 | |
| 16581 | McDonald v. Rentfrow, 176 Neb. 796 | 92+2403 | However, the intervenor on appeal devotes almost its entire argument to another attack on the constitutionality of this statute. This argument is that the statute is unconstitutional, the Constitution of the State of Nebraska, because it is an attempt to delegate and impose legislative functions upon the judiciary. The position of the intervenor appears to be that the question of a statute is in terms which... It is based on the holdings in Winkler v. City of Hastings, 85 Neb. 212, 122 N.W. 858, and Searle v. Yensen, 118 Neb. 835, 226 N.W. 464, 69 A.L.R. 257. The argument is that the discretion to establish boundaries of districts is to be exercised under the statute, "whenever the power is just and proper and for the best interest of the adjacent territory..." This is to say that such a standard is not a reasonable one and that it is so vague and indefinite as to not constitute any ascertainable fact standard at all. It is, therefore, claimed that a constitutional legislative function is vested in the board, that the appeal section referred to previously in this opinion provides for trial de novo in the district court and that upon such appeal may be taken even when there is no decision by the board, and that therefore the design and scheme of the statute, and what the statute authorizes, are a complete delegation of legislative power to the courts. In the Searle case, supra, the court struck down as unconstitutional a provision in a statute as power district boundaries which provided for a creation of districts... determine, "whether or not the district should be incorporated"... "whether the suggested boundaries are reasonable and proper for the public convenience and welfare" and to change after and fix the boundary lines * * * with the end in view of promoting the interest * * * This court held that that provision was an unconstitutional attempt to vest legislative in that section." These determine a proposition in an exhaustive discussion of the principle involved behind the proposition... legislation in that nature." This case contains an exhaustive discussion of the powers of the judicial department of our government to exercise any power properly belonging | The legislature may confer judicial power upon public boards or courts to determine facts and equities under which legislation authorizes changes in school district boundaries, and in delegating such power legislature must condition determination by court or board upon reasonable fact standards. | What is the function of determining whether the suggested boundaries for utilities are reasonable for public convenience and welfare legislative in nature? | 042211.docx | LEGALEASE 00122319-LEGALEASE 00122320 | Condensed, SA, Sub 0.70 | 0.70 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,564 | 14,973 | 22,876 | 9,029 |
| 16182 | In re Eldridge 55, 378 B.R. 893 | 366+1 | "Conventional" or "contractual" subrogation rights arise from an express or implied agreement between the subrogor and subrogee. Michael Scott Co., In. Co. v. Elizabeth State Bank, 265 F.3d 601, 624 (7th Cir.2001). "Equitable subrogation is a legal fiction which permits a party who satisfies another's obligation to recover from the party "primarily liable" for the extinguished debt or obligation. In re Thomas v. Air Crash at Lexington, Kentucky, 501 F.3d 611, 616 (6th Cir.1996). The right of "legal" or "equitable" subrogation arises as a "creature of equity" not "conferred solely for the purpose of accomplishing the settlement... between the creditors and debtors." ... Doe v. 20 U.S. 287, 302, 7 S.Ct. 482, 301 Ed. 591 (1887). Statutory subrogation, as one might expect, arises by virtue of a right created by statute. See, e.g., Carter v. Oswinski, 987 F.2d 651, 654 (9th Cir.1993) | "Statutory subrogation" occurs by virtue of a right created by statute. | Does statutory subrogation occur by virtue of a right created by statute? | Subrogation - Memo # 551 - C - MA.docx | ROSS-003012456-ROSS-003314357 | Condensed, SA | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 16183 | United States v. Smith, 740 F. Supp. 2d 1111 | 4114+8 | The very plain language of the statute prohibits the former Forest Service from charging a fee for entering, i.e., accessing, a National Forest. The statute also clearly and specifically prohibits charging an amenity fee solely for parking a vehicle in an undeveloped parking lot. It is apparent that Mr. Smith would not have been asked to pay, and had not in fact parked a vehicle, i.e., had a fee delivered to him in the trailhead and retrieved him the following day. Accordingly, what Mr. Smith received was actually a ticket for parking, clearly prohibited by the plain language of the statute. | Under Chevron analysis, Forest Service's interpretation of "area" under Federal Lands Recreation Enhancement Act (FLREA), to include parking lots and undeveloped campsites was contrary to the clear language of the statute, which authorized charging of an amenity fee at national forest, but prohibited fee for undeveloped "areas" of forest; FLREA set out six specific listed amenities which were required before a land could be considered "area," and parking lot and campsite did not have any of these requisite amenities. Federal Lands Recreation Enhancement Act, Div. 1, § 803(d)(1), 16 U.S.C.A. § 6802(d)(1). | Can an amenity fee be charged for parking in an undeveloped site? | Woods and Forest - memo 20 - DM.docx | ROSS-003325504-ROSS-003325505 | Condensed, SA | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 16184 | Ryan v. Gifford, 935 A.2d 258 | 30k+31k(6) | The continuing wrong doctrine is a narrow one. Against this backdrop and given the allegations at issue, even Plaintiffs' claim to proceed with Ervin v. American Airlines, I reject plaintiffs' argument that passively receiving, holding, and allowing to vest allegedly backdated stock options constitutes a continuing wrong that might impact pre-January 1, 2004 conduct impairment. Where this is the only alleged misconduct, section 115(8) bars plaintiffs' recovery. However, this is not the only alleged misconduct as plaintiffs were allowed to continue to hold and exercise the stock options and allowed them to vest. Instead, if I find that the allegation it looks at the mere grant of the stock options, which may have been granted. As to all moving defendants except those who were plaintiffs allege only that they received, held, and allowed to vest backdated options. Plaintiffs do not allege that they were engaged in any post-January 1, 2004 conduct that rises above the mere passive holding of allegedly backdated options. Rejecting plaintiffs' invocation of the continuing wrong doctrine, I therefore conclude that plaintiffs' allegations do not permit this Court to use section 115(8)(b) as a basis for exercise of jurisdiction over the moving defendant, except Beck and Hood. As to Beck, Hood, and Jasper, however, plaintiffs allege more than just these acts; they allege that these individuals exercised already backdated options and that these exercises occurred after January 1, 2004. Plaintiffs aver that, among other alleged misconduct, Jasper swore the Company's backdating conduct be evidenced by an e-mail he sent to directors in January 2005, and resigned in 2007 because of this involvement in the Company's options granting practices. These allegations are sufficient to satisfy the post-January 1, 2004 conduct requirement necessary to invoke the continuing wrong doctrine. | The passive receipt, holding and allowing to vest of allegedly backdated stock options by corporate officers of Delaware corporation did not constitute a "continuing wrong," and thus personal jurisdiction could not be asserted, in derivative action brought by shareholder alleging that officers breached their fiduciary duties in regards to backdated stock options, over nonresident officers who received stock options prior to effective date of amendment to long-arm statute, passively allowed options to vest after statute's effective date, but did not exercise the options; 10 West's Del.C. § 3114(b). | Is the continuing wrong doctrine a narrow one? | 005440.docx | LEG421A30-00122797-LEG421A30-00122798 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 16185 | Dinkar v. Borden, 602 N.W.2d 348 | 13+61 | The legislature may not extinguish a right of action that has already accrued to a claimant. Thorp v. Casey's Gen. Stores, Inc., 446 N.W.2d 457, 461 (Iowa 1989). A cause of action accrues when an aggrieved party has a right to institute and maintain a lawsuit. Id. at 460. When a cause of action has accrued, the party owning the action has a vested interest in it. | When a cause of action has accrued, the party owning the action has a vested interest in it. | Does the party owning the action have a vested interest when a cause of action has accrued? | Action - Memo # 127 - C - CS.docx | ROSS-003027537-ROSS-003027538 | Condensed, SA | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 16186 | Gremere v. Med. Eng'g Corp., 991 F.Supp. 2d 755 | 13+61 | There is an alternative and equally persuasive reason why this Court must apply the LPLA to this case's timeliness concern: prescription. Under Louisiana law, a prescription barred claim would have prescribed the right to sue. Zachery v. Dow Corning Corp., 884 F.Supp. 1061, 1064 (M.D.La.1995). The prescriptive elements for assertion of a cause of action (Louisiana art. (1) defining a wrongful act by the defendant; and (2) declaring damages resulting from said act. In re Asbestos Plaintiffs Inc., 86,052-3 (La.App. 4 Cir. 10/21/98) 726 So.2d 926, 939. See Knippers, 320 So.2d 1172. As such, to be entitled to the application of Hadpen, the plaintiff's action would have to have accrued before the LPLA was enacted in 1988. As they defend the suit until 1994, their cause of action would have been protected. See generally La. Civ. Code Ann. art. 3492 (West 1996) delictual actions subject to a one-year prescriptive period. | Under Louisiana law, cause of action arises when plaintiff has right to sue. | Does a cause of action arise when plaintiff has right to sue? | Action - Memo # 135 - C - CS.docx | ROSS-003315465-ROSS-003315466 | Condensed, SA | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 16187 | Kotzur v. Wood, 211 Ill. App. 3d 70 | 13+61 | We turn next to plaintiff's argument regarding accrual of the Survival Act cause of action. It is well settled that both a personal injury action arises when all the elements are present: duty, breach, and resulting injury or damage. West v. Deere & Co. 145 Ill.2d 177, 180, 164 Ill.Dec. 122, 582 N.E.2d 685 (1991). 69 Ill.2d 326, 330, 12 Ill.Dec. 893, 370 N.E.2d 694.) In a personal injury action arising out of negligence, the cause of action arises at the time of the injury, provided there is a wrongful act and resulting injury at the same time. El Doc. 89 I, 370 N.E.2d 804.) Said another way, a cause of action or right to bring the action accrues when the negligent injury to the plaintiff, either changing the recovery thereupon. See generally La. Civ. Code Ann. art. 3492; Schreiber v. Hackett (1988), 173 Ill.App.3d 129, 131, 123 Ill.Dec. 514, 527 N.E.2d 412. | In personal injury action arising out of negligence, cause of action accrues at the time of injury, in at the time of injury. | Does the cause of action accrue at the time of injury, in personal injury action? | Action - Memo # 141 - C - CS.docx | ROSS-003277880-ROSS-003277881 | Condensed, SA | 0.87 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16188 | Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324 | 241x43 | Brown could recover under pre-1954 law if there were evidence that his cause of action accrued before September 1, 1998. A cause of action accrues when a plaintiff may bring a lawsuit. Cole v. Ladbroke Racing Michigan, Inc., 241 Mich. App. 1, 614 N.W.2d 169... | Under Louisiana law, cause of action "accrues" when plaintiff may bring a lawsuit. | Does a cause of action accrue when plaintiff may bring a lawsuit? | 005569.docx | LEGALEASE 00121892 LEGALEASE 00121893 | Condensed, SA 0.84 | 0.84 | 0 | | | 1 | |
| 16189 | Shuck v. Bank of Am., N.A., 862 So. 2d 20 | 11x62 | All elements of a cause of action must exist and be complete before an action may properly be commenced. See e.g., Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607 (Fla. 4th DCA 1975)... | All elements of a cause of action must exist and be complete before an action may properly be commenced. | Should a cause of action must exist and be completed before an action may properly be commenced? | Action - Memo # 17 - C-Cls.docx | ROSS-003042283 ROSS-003042285 | Condensed, SA 0.87 | 0.87 | 0 | 1 | | | |
| 16190 | In re Mueller, 39 Misc. 3d 536 | 11x61 | It is the character of the claim which governs the accrual time for a cause of action. Here, the cause of action arises out of respondent's breach of his fiduciary duty... | It is the character of the claim which governs the accrual time for a cause of action. | Is it the character of the claim which governs the accrual time for a cause of action? | Action - Memo # 41 - C-U.docx | ROSS-003213973 ROSS-003213974 | Condensed, SA 0.89 | 0.89 | 0 | | | 1 | |
| 16191 | Spicewood Summit Office Condominiums Ass'n v. Am. First Lloyd's Ins. Co., 287 S.W.3d 461 | 11x61 | Civil practice and remedies code section 16.070(a) does not explicitly limit what event can trigger a contractual limitations period... A party is unable to bring suit until the party's cause of action has accrued. | A party is unable to bring suit until the party's cause of action has accrued. | Is party unable to bring suit until the party's cause of action has accrued? | 005901.docx | LEGALEASE 00121388 LEGALEASE 00121389 | Condensed, SA 0.95 | 0.95 | 0 | | | 1 | |
| 16192 | O'Hara v. Mt. Vernon Bd. of Educ., 16 F. Supp. 2d 868 | 231H+15H(14) | Although the FMLA, unlike the ADA, contains no explicit provision that encourages arbitration, see 42 U.S.C. * 12212, the section of the FMLA that codifies private rights of action, 29 U.S.C. * 2617(a), contains nothing to suggest that agreements to arbitrate are unenforceable... | Teacher was not required to submit to arbitration under collective bargaining agreement (CBA) her claims under the Family Medical Leave Act (FMLA), and could not instead assert claims in district court, where CBA did not purport to require arbitration of any and all grievances... | Are contractual agreements to arbitrate Family and Medical Leave Act (FMLA) claims enforceable? | Alternative Dispute Resolution - Memo 388 - IW.docx | ROSS-003285804 ROSS-003285805 | Condensed, SA, Sub 0.05 | 0.05 | 0 | | | 1 | |
| 16193 | Arrigo v. Blue Fish Commodities, 704 F. Supp. 2d 299 | 25T+131 | [H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer, 1949, 114 S.Ct. at 1647, 114... | Are Fair Labor Standards Act (FLSA) claims arbitrable? | | 007107.docx | LEGALEASE 00121774 LEGALEASE 00121775 | Condensed, SA, Sub 0.81 | 0.81 | 0 | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16194 | Parisi v. Goldman, Sachs & Co., 710 F.3d 483 | 25T+124 | Parisi asserts Title VII claims and, as a general matter, "[c]ourts have consistently found that such claims can be subject to mandatory arbitration." Ragone v. Atl. Video, 595 F.3d 115, 120 (2d Cir.2010). Congress specifically approved arbitration of Title VII claims in the Civil Rights Act of 1991, expressly stating that the "use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." Civil Rights Act of 1991, Pub. L. No. 102"166, " 118, 105 Stat. 1071 (1991). Moreover, Parisi does not claim that prohibitive costs of individual arbitration would effectively prevent her from bringing her Title VII claims, nor does she claim that arbitration would interfere with her access to statutorily authorized damages. | As a general matter, Title VII claims can be subject to mandatory arbitration. Civil Rights Act of 1964, S 701 et seq., 42 U.S.C.A. S 2000e et seq. | Can Title VII claims be subjected to mandatory arbitration? | 007132.docx | LEGALEASE-00123888-LEGALEASE-00123889 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 16195 | State v. Pierre, 131 So. 3d 319, 324 | 110+312 | In this case, Defendant was charged with second degree murder, which is defined as the killing of a person "[w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1(A)(1). Attempt is defined as:Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.La.R.S. 14:27(A). Specific intent may be inferred from the circumstances surrounding the accused's actions. State v. Thomas, 10"269 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, writ denied, 10"2527 (La.4/1/11), 60 So.3d 1248, cert. denied, """ U.S. """", 132 S.Ct. 196, 181 L.Ed.2d 102 (2011). Louisiana jurisprudence holds that pointing and firing a gun at a person indicates an intent to kill. Id. | Specific intent may be inferred from the circumstances surrounding the accused's actions. | Can the specific intent be established by the circumstances surrounding an accused's actions for murder? | 019345.docx | LEGALEASE-00123556-LEGALEASE-00123557 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 16196 | State v. Wrenn, 279 N.C. 676 | 203+540 | Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. s 14-17; State v. Lamm, 232 N.C. 402, 61 S.E.2d 188 (1950). Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. State v. Foust, 258 N.C. 453, 128 S.E.2d 889 (1963). Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. State v. Benge, 272 N.C. 261, 158 S.E.2d 70 (1967). Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, And without intention to kill or inflict serious bodily injury. State v. Foust, supra; State v. Honeycutt, 250 N.C. 229, 108 S.E.2d 485 (1959); State v. Satterfield, 198 N.C. 682, 153 S.E. 155 (1930 | Murder in first degree is unlawful killing of human being with malice and with premeditation and deliberation. G.S. S 14-17. | What constitutes murder in the first degree? | 019352.docx | LEGALEASE-00123652-LEGALEASE-00123653 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 16197 | Omar v. Geren, 689 F. Supp. 2d 1 | 221+136 | In Munaf, the Supreme Court held that "[t]hose who commit crimes within a sovereign's territory may be transferred to that sovereign's government for prosecution." 128 S.Ct. at 2224"25 (reasoning that the "same principles of comity and respect for sovereigns that preclude judicial scrutiny of foreign convictions necessarily render invalid attempts to shield citizens from foreign prosecution"); see also Neely v. Henkel, 180 U.S. 109, 125, 21 S.Ct. 302, 45 L.Ed. 448 (1901) (holding that habeas corpus was not available to prevent the petitioner's extradition to Cuba, despite the fact that he would not be afforded the full panoply of rights afforded to him by the U.S. Constitution in a Cuban criminal proceeding). As the Munaf Court explained, [t]he jurisdiction of a nation within its own territory is necessarily exclusive and absolute. This is true with respect to American citizens who travel abroad and commit crimes in another nation whether or not the pertinent criminal process comes with all the rights guaranteed by our Constitution. When an American citizen commits a crime in a foreign country he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people. Munaf, 128 S.Ct. at 2222 (quoting Schooner Exch. v. McFaddon, 11 U.S. (7 Cranch) 116, 136, 3 L.Ed. 287 (1812); Neely, 180 U.S. at 123, 21 S.Ct. 302) (internal citations and quotation marks omitted). | Jurisdiction of a nation within its own territory is necessarily exclusive and absolute. | Is jurisdiction of a nation within its own territory necessarily exclusive and absolute? | International Law - Memo # 11- C - LK.docx | ROSS-003285279-ROSS-003285280 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 16198 | Doe v. Exxon Mobil Corp., 69 F. Supp. 3d 75 | 221+387 | The act of state doctrine "requires American courts to presume the validity of an official act of a foreign sovereign performed within its own territory." Republic of Austria v. Altmann, 541 U.S. 677, 713, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (internal quotation marks omitted). The doctrine must be considered when "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." McKesson Corp. v. Islamic Republic of Iran, 672 F.3d 1066, 1073 (D.C.Cir.2012) (quoting W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., 493 U.S. 400, 405, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). It provides a "rule of decision" requiring a court to deem legal the official act of a foreign sovereign when the legality of that act is at issue in a case. W.S. Kirkpatrick & Co., 493 U.S. at 406, 110 S.Ct. 701. On the other hand, the act of state doctrine is not an "exception for cases and controversies that may embarrass foreign governments." Id. at 409, 110 S.Ct. 701. The burden of proving that an act of state occurred lies with the party asserting the defense. Agudas Chasidei Chabad of U.S. v. Russian Fed'n, 528 F.3d 934, 951 (D.C.Cir.2008) | Burden of proving that an act of state occurred lies with the party asserting the defense. | Who bears the burden of proving that an act of state occurred? | 020776.docx | LEGALEASE-00123590-LEGALEASE-00123591 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16199 | Doe v. Qi, 349 F. Supp. 2d 1258 | 221v342 | Act of state doctrine is not compelled by international law and is not constitutionally compelled either. As the Court noted in Sabbatino, "the act of state doctrine is applicable even if international law has been violated." 376 U.S. at 421, 84 S.Ct. 923. The fact that the challenged action of the foreign state violates clear international custom informs the doctrinal analysis (i.e. the first Sabbatino factor), not the threshold question of whether there is an act of state. Id. at 428, 84 S.Ct. 923. The Sabbatino analysis presupposes a violation of international law. The act of state doctrine is not compelled by international law. Sabbatino, 376 U.S. at 427, 84 S.Ct. 923. As a corollary, neither is it constitutionally compelled. As previously discussed, Sosa made clear that specific deference to the political branches, as the act of state doctrine inspires, may be warranted even when the alleged international law violation meets the clear definition test. 124 S.Ct. at 2766, n. 21. | Is the act of state doctrine compelled by international law or not | 02D801.docx | LEGALEASE 00123725-LEGALEASE 00123726 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | |
| 16200 | Access Telecom, MCI Telecommunications Corp., 197 F.3d 694 | 221v388 | Recognizing the difficulty of interpreting foreign law, courts may defer to foreign government interpretations. | Recognizing the difficulty of interpreting foreign law, courts may defer to a foreign government interpretation. The Seventh Circuit reached this conclusion in deferring to an administrative agency in France, a civil law country. See In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1312 (7th Cir.1992) ("A court of the United States should hesitate before reaching a construction of French places upon its domestic law. Giving the conclusions of a sovereign nation less respect than those of a U.S. administrative agency is unjustifiable.") | Can courts defer to a foreign government interpretation? | International Law - Memo 358-38.docx | ROSS 003334453-ROSS-003334455 | Condensed, SA | 0.79 | | 1 | 1 | 1 | |
| 16201 | Century v. Rosenblat, 291 So.3d 425 | 289v701 | Members of an ordinary partnership are not bound in solido for partnership debts; each partner in such a partnership is bound only for his virile share of the debt. LSA-C.C. arts. 2872, 2873. | The partners of an ordinary firm are bound in solido for article, with the result that members of an ordinary partnership are not bound in solido for partnership debts; each partner in such a partnership is bound only for his virile share of the debt. | Is each partner bound for his share of partnership debt? | 01889.docx | LEGALEASE 00122829-LEGALEASE 00122830 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | |
| 16202 | Speakes v. Prewitt, 6 So. 252 | 289v474 | A dormant partner is one who participates in the profits of the partnership, but whose name is not mentioned in the firm, or embraced under general terms in the firm name. | A dormant partner, in the legal acceptation of the term, is one who participates in the profits of the trade but conceals his name. A partner is considered dormant whose name is not mentioned in the name of the firm or embraced under general terms in the firm name. 1 Barr, 31; 2 Hart. & Gill. R., 159; 3 Caw. R., 534.1 A dormant partner differs from an actual, ostensible partner, in that he is not being held out and openly concealed from the firm, his interest is consequently not apparent. (3 Kent., L. 7); but he is just as much a partner as anybody, and in the latter action. His name was not suppressed or withheld from the firm. On the contrary, he is presented by the parties in no other character than as an actual, apparent, ostensible partner; one who was known both to himself and to the world as a person connected with the partnership, and as forming a component member of the firm. He must be therefore regarded in the character and of a dormant but of an ostensible partner. As such, he was a necessary party plaintiff in the suit. | Who is a dormant partner? | 02902.docx | LEGALEASE 00123770-LEGALEASE 00123772 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | |
| 16203 | Mauldin v. Branch Bank of Mobile, 2 Ala. 502 | 289v980 | Actual notice of the dissolution of a partnership must be given to persons who have had dealings with the firm, while constructive notice to others who had dealings with the firm is sufficient. | But, as to persons who have had dealings with the firm, during its continuance, the result must be different, for actual notice, or that which has been taken, as is issued under the inference, that it was received by the creditor. 3 Bacon's Com. 184; n40. Motive art. Part. 284; Collyer on Part. 311; Coty on Part. 18.1.1 This is most usually done, by addressing the correspondents individually, and by transmitting them a circular | Is it necessary to give actual notice of dissolution of partnership to the persons who had dealings with the firm? | 02905.docx | LEGALEASE 00122329-LEGALEASE 00122330 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | |
| 16204 | Martino v. W. Coast Macaroni Mfg. Co., 90 Cal. App. 2d 106 | 302v19(2) | The law applicable to such an appeal is well settled: "A plaintiff who has declined to amend his complaint, after a demurrer sustained, which includes both general and special, must stand upon his pleading as against both grounds of demurrer." Aalwyn v. Cobe, 168 Cal. 165, 171, 142 P. 79, 81. see, also, California Trust Co. v. Cohn, 214 Cal. 619, 7 P.2d 297; Blumer v. Claybaugh, 10 Cal.App.2d 46, 51 P.2d 910; Craig v. City of Los Angeles, 44 Cal.App.2d 71, 111 P.2d 977. This does not mean, however, that every ambiguity in a complaint will justify a trial court in sustaining a special demurrer upon that ground. A demurrer for uncertainty will not lie where the ambiguous facts alleged are peculiarly within the knowledge of the demurring party. Carson v. Hartford Acc. & Indem. Co., 67 Cal.App.2d 889, 155 P.2d 710; Semrau v. Calonico, 7 Cal.App.2d 315, 46 P.2d 70. A special demurrer should not be sustained if the allegations are sufficiently clear to apprise the defendant of the issues that must be met. nor if the allegations of the complaint may not be as clear and as detailed as might be desired. People v. Lim, 18 Cal.2d 872, 118 P.2d 472. Moreover, a demurrer for uncertainty will not lie to even uncertain and ambiguous allegations, if such allegations refer to immaterial matters, in such event, they will be treated as surplusage and disregarded. Semrau v. Ekmark, supra; Aronson v. Bank of America Nat. Trust & Sav. Ass'n, 42 Cal.App.2d 710, 109 P.2d 1005; Paulsen v. Western American Finance Co., 130 Cal. App. 578, 24 P.2d 501. Tested by these standards, we think it was error to have sustained the demurrer. | Does a demurrer for uncertainty lie as to immaterial matters? | 02967.docx | LEGALEASE 00123515-LEGALEASE 00123516 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 16205 | Boos v. Gary, 843 N.E.2d 952 | 302v43 | Boos argues that the trial court erred in denying his motion in limine. It is well settled, however, that the granting of a motion in limine does not determine the ultimate admissibility of the evidence. Howard v. State, 816 N.E.2d 948, 960 (Ind.Ct.App.2004). The purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule upon its admissibility in the context of the trial itself. Id. at 960. It is of final court error by admitting evidence, the exclusion of which was sought by the motion in limine, then the error is waived by admitting the evidence at trial in violation of an evidentiary rule, not in denying the motion in limine. Id. | Does the granting of a motion in limine determine the ultimate admissibility of the evidence? | 02A064.docx | LEGALEASE 00122985-LEGALEASE 00122986 | Condensed, SA | 0.86 | | 1 | 1 | 1 | |

2855

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,344 | Substantive Additions 14,873 | Selection & Arrangement 21,876 | Multiple Differences 9,079 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16206 | Neer v. Nonnecke, 135 US App. 3d 684 | 307A+3 | Real and obvious that the trial court's ruling to grant defendant's motion in limine, seeking to prevent her from testifying DeCourt and Pelayan on the discharge issue, was untimely because the motion was made during the trial instead of before trial. As counsel... | May a motion in limine to exclude inadmissible evidence either before or during trial? | 03276.docx | LEGALEASE 0012356-LEGALEASE 0012358 | Condensed_SA, Sub 0.91 | | 0 | | | 1 | |
| 16207 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | Motions in limine serve fundamentally different purposes than motions for summary judgment. They are not subject to the same procedural safeguards. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990). Thus, a motion in limine should not be used as a substitute... | Should a motion in limine be used as a substitute for a dispositive motion such as a motion for summary judgment? | Pretrial Procedure - Memo 274 - RK.docx | ROSS 003138497-ROSS-003298808 | Condensed_SA 0.89 | | 1 | | | 1 | |
| 16208 | State v. Grubb, 28 Ohio St. 3d 199 | 110+1016(2) | One commentator has described the use of a motion in limine in Ohio as follows (3) may be used as a means of raising objection to an area of potential prejudicial questions and statements until the... | Is a motion in limine a means of raising objection to an area of inquiry to prevent prejudicial questions and statements until the admissibility of the questionable evidence can be determined during the course of the trial? | Pretrial Procedure - Memo 383 - RK.docx | LEGALEASE 0013972-LEGALEASE 0013973 | Condensed_SA 0.62 | | 1 | 0 | 1 | | |
| 16209 | Brakey v. Mercy Hosp. Anderson, 132 Ohio App. 3d 850 | 307A+3 | A motion in limine "is a tentative, interlocutory, precautionary ruling by a trial court reflecting its anticipatory treatment of an evidentiary issue... | "Motion in limine" is a tentative, interlocutory, precautionary ruling by the trial court when the motion is granted? | 04120 4.docx | LEGALEASE 0012366-LEGALEASE 0012367 | Condensed_SA 0.27 | | 1 | | 1 | 1 | |
| 16210 | City of Pasadena v. R.R. Comm'n of California, 183 Cal. 526 | 317H+145.1 | This is in harmony with the interpretation heretofore given to this provision of the statute. In Pacific, etc., Co. v. Duncan, Code Civ. App. 691, 137 Pac. 1119, 50 L. R. A. 1N, 51. 632; Ann. Cas. 1914C.622, the court speaking through the Commission... | Are the powers conferred on the Railroad commission cognate and germane to the purpose for which it was created? | 04223.docx | LEGALEASE 0012813-LEGALEASE 0012815 | Condensed_SA, Sub 0.57 | | 1 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16211 | State v. Lone Star Gas Co., 86 S.W.2d 484 | 190+14.5(6) | The rate fixed by the commission is presumed to be valid, reasonable, and just until it is declared otherwise by a court of competent jurisdiction. R. R. Com. v. Uvalde Construction Co. (Tex. Civ. App.) 49 S.W. (2d) 1113. In order to overcome this presumption in favor of the validity of the rate on the constitutional ground of confiscation, the burden of proof rests heavily upon appellee. Dayton P. & L. Co. v. Pub. Utilities Comm., 292 U. S. 290, 54 S. Ct. 647, 78 L. Ed. 1267. And in order to set aside the rate as being unreasonable and unjust, article 6059 requires that appellee show by clear and satisfactory evidence that such rate is unreasonable and unjust as to it. A controversy immediately arises as to the proper interpretation to be given these rules and statutory requirements as to the burden and quantum of proof. The commission contends that the rate must be sustained against the attack that it is confiscatory and unreasonable and unjust, because it does not allow a reasonable return on the fair value of the property, when it is shown to be based upon substantial evidence adduced before the commission, and that only the evidence adduced before the commission on the rate hearing may be considered on appeal to the court. On the other hand, appellee contends that the hearing on appeal to the court of such issues is de novo, and that "due process of law requires submission to a judicial tribunal for determination upon its own independent judgment as to both law and facts, according to the settled rules governing judicial action and decision." Otis Elevator Co. v. Indus. Comm., 302 Ill. 90, 134 N. E. 19, 21; Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 363, 14 S. Ct. 1047, 38 L. Ed. 1014. As regards the rate-making power of the commission, the Texas courts have adopted this wider scope of review. R. R. Comm. v. H. & T. C. R. R. Co., 90 Tex. 340, 352, 38 S. W. 750; R. R. | Statutory appeal to determine whether natural gas rate is confiscatory or unreasonable and unjust is merely corrective, and question to be decided by court is not whether court would make same order as was made by Railroad Commission, but is whether commission acted reasonably upon sufficient evidence, and whether any substantial right of party appealing from order had been infringed. Vernon's Ann.Civ.St. art. 6059. | Is ratemaking delegated only to the Railroad Commission? | Public Utilities - Memo 123 - AM.docx | LEGALEASE-00013999-LEGALEASE-00014000 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 16212 | Broadvox-CLEC v. AT&T Corp., 184 F. Supp. 3d 192 | 317A+111 | Thus, the court may interpret a tariff by reference to sources other than the language in the tariff itself only when it " "is ambiguous, so that a literal reading is impossible." " D.S. Swain, 911 F.2d at 867 (quoting W. Transp. Co. v. Wilson & Co., 682 F.2d 1227, 1231 (7th Cir. 1982)). Then, "the court must construe the tariff by examining the intent of the parties and "[t]he practical application of [the tariff] by interested persons." " Id. (quoting Nat'l Van Lines, Inc. v. United States, 355 F.2d 326, 333 (7th Cir. 1966)). Typically, the court should construe any ambiguity against the drafter. XO Commc'ns, 144 F.Supp.3d at 857"58. But, "[a]n ambiguity should not be construed against the drafter "when such construction ignores a permissible, reasonable construction which conforms to the intention of the framers of the tariff, avoids possible violations of the law, and accords with the practical application given by shippers and carriers alike," " because " "a tariff should be interpreted to avoid unjust, absurd, or improbable results." " D.S. Swain, 1990 WL 112071, at *2 (quoting Nat'l Van Lines, 355 F.2d at 332"33) | A court may interpret a tariff by reference to sources other than the language in the tariff itself only when it is ambiguous, so that a literal reading is impossible. | Does the language of a tariff have different possible interpretations if it is unambiguous? | 042248.docx | LEGALEASE-00123484-LEGALEASE-00123485 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 16213 | PECO Energy Co. v. Twp. of Upper Dublin, 922 A.2d 996 | 317A+111 | Moreover, as PECO and the PUC point out, PECO's Tariff currently provides, "[i]n accordance with the requirements set forth in the [NESC], [PECO] shall have the right to trim, remove, or separate trees, vegetation or any structures therein which, in the opinion of [PECO], interfere with its aerial conductors, such that they may pose a threat to public safety or to system reliability." PECO Elec. Serv. Tariff Rule 10.9; R.R. at. 582a. "It is well settled that public utility tariffs must be applied consistently with their language." PPL Elec. Utils. Corp. v. Pa. Pub. Util. Comm'n, 912 A.2d 386, 402 (Pa.Cmwlth.2006). "Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility." Id. | Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility. | Are public utility tariffs binding on the customer and the utility? | Public Utilities - Memo 137 - AM.docx | ROSS-003283879-ROSS-003283880 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 16214 | Ray v. Leader Fed. Sav. & Loan Ass'n, 40 Tenn. App. 625 | 368+1 | Does death by contemplated suicide by a person who is presumed to be physically and mentally well, as in the instant case, arise from an apprehension due to a peculiar sickness, peril or danger? Black's Law Dictionary, Second Edition at page 1121 defines suicide as follows:"Suicide is the wilfull and voluntary act of a person who understands the physical nature of the act, and intends by it to accomplish the result of self termination. Suicide is the deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties. Self killing by an insane person is not suicide." | "Suicide" is the willful and voluntary act of a person who understands the physical nature of the act, and intends by it to accomplish the result of self termination. | Is suicide a voluntary crime? | 044460.docx | LEGALEASE-00122550-LEGALEASE-00122551 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16215 | Aven v. State, 102 Tex. Crim. 478 | 368+3 | Appellant chiefly complains in this motion that we erred in our original opinion in holding the indictment sufficient, and he again insists that we were wrong in not following the case of Sanders v. State, 54 Tex. Cr. R. 101, 112 S. W. 68, 22 L. R. A. (N. S.) 243. We are not in accord with the position in that case as to the sufficiency of the indictment, and, in so far as same holds the indictment insufficient, it is overruled. We are in accord with those parts of the opinion which assert that, if the party furnishing the poison to a suicide, knowing the purpose of said suicide, and the party himself gives the medicine or poison by placing it in the mouth or other portion of the body of said suicide, which would lead to destruction of life, then it would be the criminal act of the party giving, and he would not be permitted to defend against the result of such act; also we are in accord with the statements in said opinion that, if a party, knowing the purpose of another to destroy her own life, at her request, prepared the medicine, and himself placed it in her mouth, and she swallowed it, then this would be an administration of such poison and the party giving it would be punished in case of death as a murderer. We observe that, if proof of such facts would make out the state's case, it would follow that the allegation need not go beyond the proof needful. It is not required by any of the authorities that more be alleged that is necessary to prove. Referring to the Sanders Case, supra, could it be said that, if the indictment had charged that Sanders with malice aforethought, intending to kill Pearl Baxter at her request, prepared certain poison, to wit, carbolic acid, and at her request placed same in her mouth and same was then and there swallowed by her, from the effects of which she did then and there die, that this would be to charge that the poison was administered by force, threats, or fraud or without the knowledge of said Pearl Baxter? The question answers itself in the negative. No case can be | One placing poison in mouth of suicide, at suicide's request, knowing intent, guilty of murder. | Is a person guilty of murder if he places poison inside the victims mouth with the intent to help the victim commit suicide? | 044485.docx | LEGALEASE-00122740-LEGALEASE-00122741 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 16216 | Davidson v. Bugbee, 227 Mich. App. 264 | 13+61 | The period of limitation applicable to this action is six years from the date the cause of action accrued. M.C.L. " 600.5813; M.S.A. " 27A.5813. A cause of action accrues when all the elements of the claim have occurred and can be alleged in a proper complaint. Lumley v. Regents for the Univ. of Michigan, 215 Mich.App. 125, 130, 544 N.W.2d 692 (1996). A cause of action for conversion accrues when dominion is wrongfully asserted over another's personal property. Miller v. Green, 37 Mich.App. 132, 138, 194 N.W.2d 491 (1971). | Cause of action accrues when all the elements of claim have occurred and can be alleged in proper complaint. | Does a cause of action accrue only when all the necessary elements have occurred? | Action - Memo # 181 - C PHS.docx | ROSS-003283804-ROSS-003283805 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 16217 | Patterson v. Tenet Healthcare, 113 F.3d 832 | 25T+121 | Thus, we agree with those post-Gilmer decisions which have ruled that Title VII claims, like ADEA claims, are subject to individual consensual agreements to arbitrate. See Cole, 105 F.3d at 1481"82; Austin v. Owens"Brockway Glass Container, Inc., 78 F.3d 875, 882 (4th Cir.), cert. denied, 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1487 (10th Cir.1994); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700 (11th Cir.1992) (per curiam); Mago v. Shearson Lehman Hutton, Inc., 956 F.2d 932, 935 (9th Cir.1992); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 308 (6th Cir.1991); and Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir.1991) (after remand for reconsideration in light of Gilmer ). Gilmer necessarily rejected " "[a]ny broad public policy arguments against such a conclusion." " Metz, 39 F.3d at 1487 (quoting Alford, 939 F.2d at 230).""Congress closely modeled the ADEA upon Title VII," " and " "[t]he statutes are similar both in their aims and in their substantive prohibitions." " Metz, 39 F.3d at 1487 (quoting Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1553"54 (10th Cir.1988)). Moreover, the arbitrability of Title VII claims finds support in the Civil Rights Act of 1991, which states that "the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of federal law amended by this title." Pub.L. No. 102"166, " 118, 105 Stat. 1071, 1081 (1991). | Title VII claims are subject to individual consensual agreements to arbitrate. Civil Rights Act of 1964, S 701 et seq., 42 U.S.C.A. S 2000e et seq. | Are Title VII claims subject to arbitration agreements? | 007101.docx | LEGALEASE-00124914-LEGALEASE-00124915 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 16218 | In re Kaplan, 143 F.3d 807 | 25T+130 | First Options, however, now asks us to hold that, although it has already been conclusively adjudicated that Kaplan withheld consent to be bound personally by the arbitration award or the prior judgment confirming the arbitration award against MKI, he is nevertheless bound because he controlled the prior litigation on MKI's behalf. We reject First Options' argument. Generally applicable res judicata rules must sometimes be adapted to fit the arbitration context. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 222"23, 105 S.Ct. 1238, 1243"44, 84 L.Ed.2d 158 (1985); NLRB v. Yellow Freight Systems, Inc., 930 F.2d 316, 319"21 (3d Cir.1991); General Comm. of Adjustment v. CSX Railroad Corp., 893 F.2d 584, 593 n. 10 (3d Cir.1990) ( "traditional principles of stare decisis and res judicata are given significantly less weight in arbitration proceedings"); Leddy v. Standard Drywall, Inc., 875 F.2d 383, 385 (2d Cir.1989); Kovats v. Rutgers, 749 F.2d 1041, 1048 (3d Cir.1984). Moreover, we believe that First Options' argument is inconsistent with the rule that the scope of the obligation to arbitrate"and to accept arbitral decisions"is defined by contract. An arbitration agreement may limit its preclusive effects. See Restatement (Second) of Judgments " 84(4). Where, as in this case, a corporation agrees to arbitration but the corporation's principal and sole shareholder withholds such consent, we presume, in the absence of any contractual provision addressing the issue of res judicata in so many words, that the parties agreed that the principal and sole shareholder, who would necessarily control the corporation's participation in any arbitration proceeding or litigation, would not be bound by any arbitral award or judgment based on the theory that he or she controlled the relevant proceeding. Any other rule would render essentially meaningless the principal and sole shareholder's withholding of consent to be bound personally by the arbitral award or | Arbitration agreement may limit its preclusive effects. Restatement (Second) of Judgments S 84(4). | Can an arbitration agreement limit its preclusive effect? | Alternative Dispute Resolution - Memo 416 - RK.docx | ROSS-003300666-ROSS-003300667 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,079 |
| 14219 | Adams v. Suozzi, 433 F.3d 220 | 25T+132 | If the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist. See Specht v. Netscape Communications Corp., 306 F.3d 17, 26 (2d Cir.2002); Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir.1972). The Court now asks us to carve out an exception to this general rule, arguing that an arbitration clause is severable from the rest of a potential contract when a condition precedent to formation fails to occur. | If the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist | How do courts construe an arbitration agreement if the contract embodying the purported arbitration agreement never existed? | Alternative Dispute Resolution - Memo 417- RK.docx | ROSS0002184978-ROSS-002184979 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 14220 | Samura v. Coop. Ass'n, 2917. Supp. 345 | 25T+132 | The arbitration agreement in the case at bar is a single clause or provision, general in its terms, embodied in the written contract covering the whole "transaction" dealer representation of meat products involved in the dispute. It is an unlimited clause providing for the arbitration of difference eventually arising from the contract. Plaintiffs contend that the words used in the present clause are not labeling upon them. They quarrel with the words contained therein because they feel it is very unlikely this this dispute could ever be arbitrated to a "[mutual] understanding". As for the word "perfect" it is argued in their brief that "mass religious and philosophical thinkers doubt perfection can exist in our temporal existence on this earth." Thus the arbitration clause is characterized as "vague" and "unreasonable." An arbitration agreement however, need not follow a particular form or phraseology. I think it is clear that the parties intended to settle their difference by arbitration and did agree upon the arbitration clause mentioned earlier as one of the terms and conditions of the contract entered into on October 1, 1960. | Arbitration agreement need not follow particular form or phraseology. | Does an arbitration agreement need to follow any particular form or phraseology? | Alternative Dispute Resolution - Memo 422- RK.docx | ROSS0002184593-ROSS-002184596 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14221 | Saptra v. VeriSign, 310 F. Supp. 2d 208 | 25T+134(2) | Although the Court is troubled by the fact that the Arbitration Agreement and the Dispute Resolution Guide bear the "SAIC" insignia, it seems clear that a reasonable person would have understood that the intent of the Agreement was to bind plaintiff and employer. This is especially true if the reasonable person is a highly-skilled attorney, as this plaintiff is... While plaintiff is correct that the Dispute Resolution Guide was distributed to plaintiff without the disclaimer that steps 1-3 no longer apply, looking at the four corners of the Arbitration Agreement, the parties expressly agreed to resolve by arbitration "any claim ... involved in the "Mutual Agreement to Arbitrate Claims", was the provision written, in relevant part that "EMPLOYEE AGREES THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN SAIC AND EMPLOYEE RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT. EMPLOYEE HAS VOLUNTARILY ENTERED INTO THE AGREEMENT WITHOUT RELIANCE ON ANY PROVISION OR REPRESENTATION BY SAIC OTHER THAN THOSE CONTAINED IN THE AGREEMENT." (def's Mot. Attach. 4, Ex. 1 at 8'). Because, the Arbitration Agreement does not mention the other three steps in the Dispute Resolution Guide, the four corners of the Agreement unambiguously bind the parties to arbitrate. In addition, despite plaintiff's contention, there was valid consideration for plaintiff's agreement to arbitrate: in consideration for plaintiff's agreement to employ her, and the ability to enforce the Arbitration Agreement was mutual. Mutual agreements to arbitrate are independently sufficient forms of consideration to arbitrate an agreement. See Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 667 (6th Cir.2003). Therefore, regardless of the reliance plaintiff may have placed on Dispute Resolution Guide, the Agreement speaks only to arbitration and should be enforced. | Mutual agreements to arbitrate are independently sufficient forms of consideration. | Are mutual agreements to arbitrate an independently sufficient forms of consideration? | Alternative Dispute Resolution - Memo 414- RK.docx | ROSS0002185723-ROSS-002185730 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14222 | City of New York v. Consol. Edison Co. of New York, 274 A.D.2d 189 | 148+2.1 | Not every regulatory intrusion on property rights amounts to a taking (Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472). Keystone upheld a statute requiring coal mine owners to leave a small percentage of their coal in the ground in order to prevent surface subsidence. Though the regulation had an inevitable economic impact on the mine owners, it was not a taking because it did not deprive the owners of all economically valuable use of their property (compare, Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798), nor was it a permanent physical occupation of their property (compare, Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868). Keystone stands for the principle that where the property owner's claim out of the land would endanger the public, the property owner, other than the public, should bear the cost of averting that crisis. | Not every regulatory intrusion on property rights amounts to a taking. U.S.C.A. Const. Amend. 5. | Does every regulatory intrusion on property rights amount to a taking? | Eminent Domain - Memo 251 - GP.docx | ROSS0002183873-ROSS-002183874 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16233 | Commonwealth Edison Co. v. United States, 46 Fed.Cl. 29 | 149v2.2 | However, consistent with [and internally] Konop's concurrence in Eastern, as well as Buhl doesn't dissent, the courts have generally imposed an additional government-imposed obligation to pay "money", is not susceptible to a taking analysis. These cases have reasoned that the tax imposed by the statute [reject holding an imposition of the Takings Clause; see the regulatory statute reference to the application to a takings analysis to the tax imposed by the Coal Act]. Commonwealth Edison Co. v. United States, 893 F.2d 745, 756 [Fed.Cir. 1990]... As a general matter, when a government imposes an obligation to pay money, it is not susceptible to a taking analysis. | A government-imposed obligation to pay "money" is not susceptible to a taking analysis | Eminent Domain Memo 231-1 QF.docx | ROSS-003298799 ROSS-003298800 | Condensed, SA | 0.96 | | 1 | 1 | 1 | 1 |
| 16234 | Doe v. Qi, 349 F. Supp. 2d 1258 | 221v342 | As noted above, the act of state doctrine is not rendered inapplicable simply because international law or jus cogens norms are implicated. As the Court noted in Sabbatino, "the act of state doctrine is applicable even if international law has been violated" 376 U.S. at 431, 84 S.Ct. 923. The fact that the challenged action of the foreign state involves clear international consensus informs the doctrinal analysis [i.e. the first Sabbatino factor... the threshold question of whether there is an act of state. Id. at 428, 84 S.Ct. 923. The Sabbatino analysis presupposes a violation of international law. The act of state doctrine is not compelled by international law. See Sabbatino, 376 U.S. at 427, 84 S.Ct. 923. As a corollary, neither is it controlled by international law. Moreover, as discussed above, [the] federal common law that the act of state doctrine implies, may be warranted even when the plaintiff international law violations meets the clear international... 84 S.Ct. 923. | Act of state doctrine is not compelled by international law and is not controlled by international law | International Law Memo 412 - C - El.docx | ROSS-003298983-ROSS-003298986 | Condensed, SA, Sub 0.9 | 0 | | 1 | 1 | |
| 16235 | Agostini v. Textaco, 1417 Supp. 2d 534 | 1700v1971 | First, the specific claim plaintiffs pursuant to bring under the ATCA that the Consortium's oil extraction activities violated evolving environmental norms of customary international law, see, e.g., No. 12:00 Civ. 1999 (ECF) 1999, Mem. at 44 ("Facts are meaningful precedential support and appears extremely unlikely to survive a motion to dismiss"), see Flores v. So. Peru Copper Corp., No. 341 F.3d 140, 117 F.Supp. 868, 071 (S.D.N.Y.1995), In the Fifth Circuit Court of Appeals noted in denying a substantially similar claim in federal courts. "The [ATCA] "applies only to shockingly egregious violations of universally recognized principles of international law." See Zapata v. Quinn, 707 F.2d 691, 692 [2d Cir.1983] [per curiam]. [Federal courts should exercise extreme caution when adjudicating environmental claims under international law to insure that environmental policies of the United States do not displace environmental policies of other governments. Thus. 1417 at 417. | Does the Alien Tort Statute (ATS) apply only to shockingly egregious violations of universally recognized principles of international law? | 02/024.docx | LEGALEASE-00124699-LEGALEASE-00124701 | Condensed, SA, Sub 0.57 | 0 | | 1 | 1 | |
| 16236 | Banti Tejware v. Vauche-tou, 723 F. Supp. 516 | 221v357 | The act of state doctrine is based on the notion that a government should not adjudicate a politically sensitive dispute which would require the courts to judge the legality of an act of foreign state completed within that state's territory, see First National City Bank v. Banco Nacional de Cuba, 406 U.S. Ct.], cert denied, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 [1983]; "the purpose of the doctrine is to keep the judiciary from embroiling the courts and the country in the affairs of the foreign nations which are ... are challenged." Republic of the Philippines v. Marcos, 862 F.2d 1355, 1360 [9th Cir.1988] [en banc], cert. denied, 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d [1989]. A court that passes on the validity of an act of state invades a province which, according to this judicial doctrine, there are "constitutional underpinnings" to the doctrine. In adding Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 [1964]. The burden of establishing the applicability of the doctrine rests on the proponent. Gulf+Western Air Co., Ltd. [263 (S.D.N.Y.)]. | Does the burden of establishing applicability of an act of state doctrine rests on its proponent. | International Law Memo 412 - C - MG.docx | ROSS-003298913-ROSS-003298974 | Condensed, SA, Sub 0.93 | 0 | | 1 | 1 | |
| 16237 | Honduras Aircraft Registry Ltd. v. Gov't of Honduras, 883 F. Supp. 685 | 221v342 | Under the act of state doctrine, United States courts generally will refrain from ruling on the validity of a foreign sovereign's acts. See Restatement (Third) of Foreign Relations Law of the United States § 443 [1] [1987]. The United States Supreme Court has held that the act of state doctrine reflects "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder ... the conduct of foreign affairs. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 938, 11 L.Ed.2d 804 [1964]; see also Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 697 n.11, 96 S.Ct. 1854 [1976]. The act of state doctrine is primarily designed to avoid impairment of foreign policy by the judiciary upon the conduct of foreign policy by the Executive Branch.] | Exceptions to act of state doctrine include those acts by foreign state that are purely commercial or for which no foreign policy goal or impairment by judiciary upon conduct of foreign policy by branch is impeded. | 02/024.docx | LEGALEASE-00124767-LEGALEASE-00124768 | Condensed, SA, Sub 0.78 | 0 | | 1 | 1 | |

2860

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,673 | 21,876 | 9,029 |
| 16228 | Interamerican Ref. Corp. v. Texaco Maracaibo, 307 F. Supp. 1291 | 221+151 | Anticompetitive practices compelled by foreign nations are not restraints of commerce, as commerce is understood in the Sherman Act, 15 U.S.C.A. §§ 1, 2. | Defendants rely on data in Continental Ore, supra, and United States v. Sisal Sales Corp., 274 U.S. 268, 47 S.Ct. 592, 71 L.Ed. 1095 ... requires no precedent, however, to acknowledge that 'sovereignty' includes the right to regulate commerce within the nation. When a nation compels a trade practice, firms there have no choice but to obey. Acts of business become effectively acts of the sovereign. The Sherman Act does not confer jurisdiction on United States courts over acts of foreign sovereigns. By its terms, it forbids only anticompetitive practices of private combinations and corporations. ... | Are anticompetitive practices compelled by foreign nations violations of the Sherman Act? | 020560.docx | LEGALEAZE 00124476 LEGALEAZE 00124479 | SA, Sub | 0.67 | 0 | | 1 | 1 | |
| 16229 | Dominicus Americana Bohio v. Gulf & W. Indus., 473 F. Supp. 680 | 221+151 | Conduct related to commercial endeavors is not immunized by the act of state doctrine. | The allegations that involve acts by Dominican authorities performing a quasi-commercial function present a more difficult problem. In order to trigger application of the act of state doctrine, the government act concerned must be a public one such as a legislative enactment, regulatory decree, or executive use of the police power... See McKeel v. Islamic Republic of Iran, Supra, at 136–37; Cf. Continental Ore, supra, at 706–07 (corporation acting through agents of foreign government but without government's official approval, act of taint inapplicable). Four members of the Supreme Court concluded in Alfred Dunhill of London, Inc. v. Republic of Cuba, supra, 425 U.S. at 695–706, 96 S.Ct. 1854, that conduct related to commercial endeavors is not immunized by the doctrine, and the Second Circuit adopted this position in Hunt v. Mobil Oil Corp., supra, at 73. It is problematic whether closing the Lafemana airport to the plaintiffs, ordering their marina to be removed, and requiring them to relinquish would serve Dominican act of state interests; but even if all of these acts would serve Dominican sovereign interests, the government act concerned must be a public one such as a legislative enactment... To injure Dominican business were acts engaged in pursuant to the police power of the authorities. The non-commercial act in our judgment, it would be inappropriate to make such determinations on the present record without permitting discovery. | Is conduct related to commercial endeavors immunized by the act of state doctrine? | 020555.docx | LEGALEAZE 00124358- LEGALEAZE 00124359 | Condensed, SA | 0.93 | | 1 | | 1 | 0 |
| 16230 | R.M.S. Titanic v. Haver, 171 F.3d 943 | 221+334 | Beyond territorial waters on the high seas, over which no nation can exercise sovereignty. | Navigable waters that lie beyond a nation's borders are within the nation's control over as a whole as are waters within its borders. See id.; see also Skiriotes v. McelLadden, 15 U.S. 1 (Chisholm &, C.J.) (stating that the "jurisdiction of the nation within its own territory is necessarily exclusive and absolute"). Likewise within the margin separating waters of one nation from territorial waters, defined as those navigable waters lying up to 12 nautical miles beyond a nation's shoreline. See Uniated States v. California, 332 U.S. 19, 35, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947) (stating that the outer limit of territorial jurisdiction "a lack a recognition of the necessity that a government need come to and bring within its territory ... incident to its location"). And beyond the territorial waters lie the high seas, over which no nation can exercise sovereignty. See The Western Maid, Law of the Sea, Dec. 10, 1982, 21 I.L.M. 1245, 1280 ("8 arts. 87-89 (providing that the high seas shall be open to all nations and that "no State may validly purport to subject any part of the high seas to its sovereignty"). | Can a nation exercise sovereignty over the high seas? | International Law - Memo #807 - C - AMC.docx | ROSS 0001283-91 ROSS-00128355 | Condensed, SA | 0.95 | | 0 | | 0 | |
| 16231 | Johnson v. Citmortgage, 351 F. Supp. 2d 1368 | 237+7(1) | Under Georgia law, "libel per se" is publication charging that one is guilty of crime, dishonesty or immorality. West's Ga. Code Ann. § 51-5-1. | Under Georgia law, no proof of special damages is necessary in the case of libel per se where some damages are recoverable. West's Ga. Code Ann. §§ 51-5-1, 84 S.E. 139 (1915). However, where the defamatory words do not constitute libel per se, special damages, such as loss of employment, income, or profits, must be pleaded. Hoods v. Dun & Bradstreet, Inc., 486 F.2d 25 (5th Cir.1973), cert. denied, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 881 (1974). Libel per se is a publication charging that one is guilty of crime, dishonesty or immorality. Bourne v. Playboy Enterprises, Inc., 41 F.Supp. 646, 445 (S.D.Ga.1976), aff'd, 580 F.2d 859 (5th Cir.1978). "To be actionable, the statement must be both false and malicious. Mathews v. Atlanta Newspapers, Inc., 116 Ga App. 337, 340, 157 S.E.2d 300 (1967). Malice is presumed from the nature of the defamation. Rouireus, 411 F.Supp. at 445. | Is charging someone with immorality or dishonesty libel per se? | 021083.docx | LEGALEAZE 00124926- LEGALEAZE 00124927 | SA, Sub | 0.84 | 0 | | 1 | | |
| 16232 | Story v. Lanier, 166 S.W.3d 167 | 289+507 | What will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is one of fact. West's T.C.A. § 61-1-101(6). | "What will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is a question of fact." Wyatt v. Brown, 39 Tenn.App. 28, 281 S.W.2d 64, 68 (Tenn.Ct.App. 1955); see also Gresham Motor, Inc. v. Crutech of Kingsport, Inc., 415 W.3d 588, 605 (Tenn.Ct.App.2001). Accordingly, since we have nothing before us to review the Trial Court's determination (concerning a partnership) between the parties, no question is raised on the record, accompanied by a record of evidence that the parties to the finding of fact (in the Trial Court... unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); Alexander v. Inman, 974 S.W.2d 689, 692 (Tenn.1998). The Trial Court's conclusions of law are subject to a de novo review with no presumption of correctness. Campbell v. Florida R. Co., 985 S.W.2d 273, 296 (Tenn.1997); Kuhnmuench v. Hoths, No. E2006-01315-COA-R3-CV,2001 WL 862018, at *7 (Tenn.App. 13 Oct. 18, 2011). | Is the existence of a partnership a question of fact of law? | 021821.docx | LEGALEAZE 00124846- LEGALEAZE 00124847 | SA, Sub | 0.84 | | | 1 | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 16233 | Davis v. Quality Pest Control, 641 S.W.2d 324 | 302k90 | Rule 47 of the Texas Rules of Civil Procedure requires that a pleading contain "... a short statement of the cause of action in plain and concise language sufficient to give fair notice of the claim involved..." This has been characterized by McDonald as a thoroughly practical test: "does the pleading give adequate notice?" J. R. McDonald, Texas Civil Practice * 5.05 (rev. 1982). The test is whether an "opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." Roark v. Stallworth, 655 S.W.2d 200 (Tex.Civ.App.-Tyler 1979), aff'd in part and | If opposing party is not rested and if no special exceptions have been filed, petition may meet allege legal conclusions. | Can a legal conclusion be proof? | 022976.docx | LEGALEASE 00125374-LEGALEASE 00125375 | Condensed, SA | 0.83 | 0 | 1 | 1 | 1 | |
| 16234 | Brown v. Am. Transfer & Storage Co., 601 S.W.2d 931 | 30+k251 | Variance between pleadings and proof has only been the source of harm to error. To be harmful the variance must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleadings. Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183 (Tex.1977); Gulf, C. & S. F. Ry. Co. v. White, 68 Tex. 250, 4 S.W. 468 (1887); Chapin v. Baller, 478 S.W.2d 610 (Tex.Civ.App.-Austin 1972, no writ); McPherson v. Billington, 399 S.W.2d 186 (Tex.Civ.App.-Amarillo 1966, no writ); Carriers Falls Ins. Co. v. Vervara, 347 S.W.2d 789 (Tex.Civ.App.-Houston 1961, no writ); Lumbermen's Ins. Corp. v. Jones, 311 S.W.2d 873 (Tex.Civ.App.-Fort Worth 1958, writ ref'd n.r.e.). We agree that the proof is substantial, "we are not to be understood as holding that a broad submission of an issue will be reversed simply because once or more such which contributed to the injury was not particularly pleaded or proved." | To be reversible, variance between pleadings and proof must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleadings. | When will a variance between the pleading and the proof of claim be fatal? | 022999.docx | LEGALEASE 00125373-LEGALEASE 00125274 | Condensed, SA, Sub | 0.83 | | 1 | | 1 | |
| 16235 | Connecticut Light & Power Co. v. Gilmore, 289 Conn. 88 | 307Ak3 | Our standard of review is well established. "A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. Practice Book 1998, 5 42-15. [T]he court may determine whether the nature of the ruling is an abuse of discretion. [The trial court] has broad discretion in the relief sought in the motion or other relief at it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding. Practice Book '42-15... [T]he motion in limine... has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial... The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion... Thus, our standard of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. Even where a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial... In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the ... ruling likely affected the result. Despite this deferential standard, the trial court's discretion is not absolute. Provided the defendant demonstrates that substantial prejudice or injustice resulted, evidentiary rulings will be overturned and reversed [where] the record reveals that the trial court could not reasonably conclude as it did." [Citations omitted; internal quotation marks omitted.] Carlson v. Waterbury Hospital, 280 Conn. 125, 140 (2006). | A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. Practice Book 1998, § 42-15. | Has the motion in limine generally been used in courts to invoke a trial judge's inherent discretionary powers to prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial? | 024348.docx | LEGALEASE 00125308-LEGALEASE 00125310 | Condensed, SA | 0.92 | | | 0 | 1 | |
| 16236 | Winkle v. Grand Plains Gas, 255 Iowa 587 | 307Ak3 | The practice of trial courts, which the trial court adopted in this case, is to apply a two-fold test of the admissibility to the evidence in the merits. This is a sacred feudalism of the law, and its operation is comparable to criticizing Holy Writ. Yet we think it requires some qualification. Criteria are to be applied in the decision of cases according to the extent of the trial judge, agreement of men and the court is the procedural conviction not wholly, or technical. They represent the best means of trying lawsuits by orderly procedures so that at any know what any and what may not be done, by establishing the result of the court's power over the two hands in. As development is time "the law's delay" was cited as one of the things that caused Hamlet's question "To be or not to be." Many efforts have been made to expedite litigation, our Rules of Civil Procedure have this as one of their chief objectives. The rules that courts have should be qualified to meet that court's favor expeditious trials on the merits, unider settled rules of procedure. It should not be stretched to the point where it works injustice when the petition, the counsel, has ignored plain mandates of the rules and has not toward negligence or inattention. | To expedite litigation is one of the chief objectives of the rules of civil procedure. 58 I.C.A. Rules of Civil Procedure, rules 215.1, 252, 253. | What is one of the chief objectives of the rules of civil procedure? | Pretrial Procedure - Memo # 475 - C - HkM.docx | ROSS-003207413-ROSS-003207416 | Pretrial Procedure, SA, Sub | 0.89 | | 1 | 1 | 1 | |
| 16237 | Lamb v. Georjan, 165 Vt. 375 | 307Ak3 | A trial court has broad discretion in its pretrial evidentiary rulings. Batt v. Mutual Corp., 161 Vt. 85, 42.633 A.2d 765, 711 (1993). We will affirm its ruling absent a showing that the court has with held or granted a discretion on clearly untenable or unreasonable grounds. State v. Powers, 163 Vt. 98, 105, 655 A.2d 712, 716 (1995); State v. Cohen, 157 Vt. 654, 655 v. 599 A.2d 330 , 331 c. (1991) (mem). | Trial court has broad discretion in its pretrial evidentiary rulings. | Does a trial court have broad discretion in its pretrial evidentiary rulings? | Pretrial Procedure - Memo # 506 - C - LK.docx | ROSS-003298354-ROSS-003298355 | Condensed, SA | 0.83 | | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 16238 | Campbell v. Litska, 353 Ill. App. 3d 863 | 307A+3 | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting a question raising such evidence during argument. The moving party will thereby be protected from any prejudicial impact from the comment and the making of objections in front of the jury. However, a court is disadvantaged in ruling on a motion in limine because it is considered in a vacuum, before the presentation of the full evidence at trial that may justify admission or require exclusion. That judge should attempt to enter an order, where appropriate, that is as specific as possible, so that all parties concerned have an accurate understanding of their limitations. An unclear order in limine is worse than no order at all, even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. Cunningham v. Millers General Insurance Co., 227 Ill.App.3d 201, 205, 169 Ill.Dec. 200, 591 N.E.2d 80 (1992). It is well settled that both the motion in limine and the resulting order should be in writing to prevent confusion and misunderstanding during trial, both the motion in limine and the resulting order should be in writing. Reidelberger v. Highland Body Shop, Inc., 83 Ill.2d 545, 550, 48 Ill.Dec. 237, 416 N.E.2d 499 (1981); Cunningham, 227Ill. App.3d at 205, 169 Ill.Dec. 200, 591 N.E.2d 80. | To prevent confusion and misunderstanding during trial, both the motion in limine and the resulting order should be in writing. | Should both the motion in limine and the resulting order be in writing? | Pretrial Procedure - Memo # 845 - C - KA.docx | ROSS.0002987950-ROSS-0002987977 | Condensed, SA | 0.91 | 0 | | | 1 | |
| 16239 | Pink Dot v. Teleport Comms. Co. of NY, 89 Cal. App. 4th 407 | 317A+11 | Moreover, Teleport's suggestion to superimpose that the vague language in its tariff precluding liability for damages 'including, but not limited to representation' could be construed to preclude liability for intentional misconduct and tortious acts is not well taken. Although the language in Teleport's tariff could be so construed, 'The rule has been stated many times that if there is an ambiguity in a tariff any doubt in its interpretation is to be resolved in favor of the [rate]payer and against the [utility]. (Civ.Code, ' 1654.)' [Transmix Corp. v. Southern Pac. Co. (1960) 187 Cal.App.2d 257, 267, 9 Cal.Rptr. 714; see Masonite Corp. v. Pacific Gas & Electric Co. (1976) 65 Cal.App.3d 1, 9 9, 135 Cal.Rptr. 170.] | If there is an ambiguity in a tariff, any doubt in its interpretation is to be resolved in favor of the ratepayer and against the utility. West's Ann.Cal. Civil Code 4 1654. | Should the interpretation of an ambiguous tariff be resolved in favor of the non-drafter and against the utility? | Public Utilities - Memo 145 - AM.docx | ROSS.0002987714-ROSS-0002987715 | SA, Sub | 0.76 | | | 1 | | |
| 16240 | Bank of New York v. Nally, 820 N.E.2d 644 | 366+1 | We agree with Obstman that application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case. 714 N.E.2d at 737. We also agree with the result in Osterman, where a lender purchaser a mortgage with an explicit reference to a 'new judgment against' the seller. The lender was held culpably negligent for failure to identify a lien that was recorded before the lien closed but after the purchaser performed a title search. Id. at 739. We think, however, that the important fact in Osterman was not the degree of negligence by the lender. Subrogation, if allowed, would have elevated the mortgagee's lien over an intervening creditor who had properly perfected its lien on an apparently unencumbered property. | Application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case. | On what does the application of equitable subrogation depend? | 043404.docx | LEGALEASE-00125107-LEGALEASE-00125108 | Condensed, SA | 0.83 | | 1 | | | |
| 16241 | Conn., Dep't of Health v. Hayes, 78 A.3d 676 | 253+236 | Hayes also contends that because he must determine whether to issue marriage licenses, 'he provided by law,' he has the discretion to determine whether the Marriage Equality Act is constitutional and that it would be unconstitutional as applied in same-sex couples. With respect to whether marriage clerk's across all of the Orphans' Court of Montgomery County give him discretion to determine whether an act is constitutional, our Supreme Court, albeit in relation to prothonotaries and clerk of courts, has noted it is 'well settled' in the regional appellate courts of this Commonwealth that the role of the prothonotary of the court of common pleas, while unduly important, is purely ministerial. As such, a purely ministerial office, any authority exercised by the prothonotary must derive from either statute or rule of court and ...Further, in that case the prothonotary is merely the clerk of the court of Common Pleas [.] [He] has no judicial powers, or does he have power to act as attorney for others by virtue of his office. Constant v. ... 'The prothonotary is not '... an administrative officer who has discretion to interpret statutes.'' Thus, while playing an essential role in our court system, the prothonotary's powers do not include the judicial role of statutory interpretation. As the prothonotary and the clerk of courts are created by the same constitutional provisions and have substantially identical statutory grants of authority, we conclude that the well-accepted limitations that the court of common pleas have recognized in the prothonotary's role are equally applicable to the clerk of courts....In re Administrative Order No. 1 MAP 2009, 594 Pa. 346, 360, 936 A.2d 1, 9 (2007). | Official duty of clerk of Orphans' Court of issuing marriage licenses did not give clerk discretion to determine whether provision of state marriage laws, defining marriage as being between one man and one woman, was constitutional; clerk was not an administrative officer with discretion to interpret statutes, and marriage license statute did not authorize clerk to exercise any discretion or judgment with respect to its provisions. 23 Pa.C.S.A. §§ 1302, 1302(a, b); 42 Pa.C.S.A. § 2757. | Is a prothonotary an administrative officer who has the discretion to interpret statutes? | 013516.docx | LEGALEASE-00125681-LEGALEASE-00125683 | Condensed, SA, Sub | 0.71 | | 1 | | 1 | |
| 16242 | Clerk v. City of Topeka, 232 Kan. 334 | 79+1 | A clerk of a court is a ministerial officer. Eldridge v. Davis, 4 Kan.App. 241, 243, 45 P. 948 (1896); and without statutory authority cannot exercise judicial functions. In re Terrill, 52 Kan. 29, 31, 34 P. 457, 39 Am.St.Rep. 327 (1893). See also 15A Am.Jur.2d, Clerks of Court ? 1, p. 155. | A clerk of court is a ministerial officer and, without statutory authority, cannot exercise a judicial function. | Is a clerk of the court a ministerial officer? | Clerks of court - Memo3 - ROSS.0002915960-ROSS-0002915981 - VP.docx | ROSS.0002915960-ROSS-0002915981 | Condensed, SA | 0.61 | | 1 | | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16243 | Foster v. Shubert Holding Co., 316 Mass. 470 | 302+234(4) | It is a general rule of pleading that one who asserts a claim that he was injured through the established assumed maintenance of a monopoly either at common law or under a statutory act both definitely and specifically set forth… | Conclusions of fact, unless they are necessary inferences from the particular facts alleged are not admitted by a demurrer. | Are necessary inferences from facts admitted by a demurrer? | 020003.docx | USALEXE 00125252 / USALEXE-00125264 | Condensed, SA | 0.94 | | 1 | | 1 | 1 |
| 16244 | Natl Fuel Gas Distribution Corp. v. Pennsylvania Pub. Util. Comm'n, 76 Pa. Cmwlth. 102 | 317A+113 | The Commission has only those powers expressly provided in the Code… | As general matter, utility management is in hands of utility and Public Utility Commission may not interfere with such management decisions, including decisions related to necessity and propriety of operating expenses, unless, on basis of record evidence, it finds abuse of utility's discretion. | Does the Public Utilities Commission have the power to interfere with the general management decisions of the public utilities without express legislative authority? | 042312.docx | USALEXE 00125642 / USALEXE-00125643 | Condensed, SA, Sub 0.58 | | 0 | 1 | 1 | 1 |
| 16245 | Petition of New England Tel. & Tel. Co., 115 Vt. 494 | 317A+111 | The state complains about excessive salaries paid company officials and managerial expenditures for advertising… | The function of a public service commission is that of control and not of management, and regulation should not obtrude itself into the place of management. | Is management the function of the Public Service Commission? | Public Utilities - Memo 164 - AM.docx | USALEXE 00015621 / USALEXE-00015622 | Condensed, SA | 0.81 | | 0 | 1 | 1 | 1 |
| 16246 | Bagott v. Hawk'n Packard Co., 584 F. Supp. 2d 1261 | 386+6 | This case is similar to the eBay case. In eBay, defendants programmed the web crawlers to invade eBay's website and consumers to storage resources… | Allegation that mass diversion of printers and ink toner cartridges programmed to store in tiny printing when ink cartridges were not empty, thus depriving consumers of the remaining ink, were sufficient to state claim for trespass to chattels. | Does the law recognize trespass committed by programming a technological or electronic entry? | Trespass / Memo 162 - RK.docx | USALEXE 00015716 / USALEXE-00015717 | Condensed, SA, Sub 0.49 | | 0 | 1 | 1 | 1 |
| 16247 | eBay v. Bidder's Edge, 100 F. Supp. 2d 1058 | 386+6 | Trespass to chattels "lies when an intentional interference with the possession of personal property has proximately caused injury." Thrifty-Tel v. Bezenek, 46 Cal.App.4th 1559, 1566… | Under California law, claim for "trespass to chattels" lies where intentional interference with possession of personal property has proximately caused injury. | What constitutes a valid trespass to chattels claim? | 047220.docx | USALEXE 00125824 / USALEXE-00125825 | Condensed, SA, Sub 0.78 | | 0 | 1 | 1 | 1 |
| 16248 | Hawkins v. Hawkins, 101 N.C. App. 529 | 386+6 | Other torts, however, do not include actual damage as an essential element. These torts include, among others, conversion, Spinks v. Taylor & Richardson v. Taylor Co., 303 N.C. 256, 278 S.E.2d 501 (1981)… | Actual damage is not essential element of cause of action for trespass to chattels, except by dispossession. | Does the issue of action for trespass to chattels require actual damage? | 047247.docx | USALEXE 00125835 / USALEXE-00125839 | Condensed, SA, Sub 0.82 | | 0 | 1 | 1 | 1 |

| | | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Copied Headnote | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | | | | | |
| 16249 | Gattis v. Williams, 218 So. 2d 499 | 13n41 | Cause of action in slander accrues at time of alleged publication. | It appears from the record that the suit was barred by the statute of limitations. Florida Statutes s 95.11(6), F.S.A. requires that an action for slander must be brought within two years from the date the cause of action accrued. Cause of action in slander accrues at the time of the alleged publication. From the record it appears that the suit was filed three years and five months after the alleged publication. Therefore, the summary judgment entered by the trial judge's affirmed. | Does a cause of action in slander accrue at the time of alleged publication? | Cause of action in slander accrues at time of alleged publication. | Action - Memo # 137 - C MR.docx | ROSS-003125708;708 ROSS-003125709 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 16250 | Lathrop v. McBride, 209 Neb. 351 | 241x15\|1 | Cause of action for slander or libel accrues on date of publication of defamatory matter. Neb. Rev. St. § 25-208. | Section 25-208 provides that actions for libel, slander, and certain other causes of action must be brought within 1 year. This court and, as far as we have been able to ascertain, all other courts have held that a cause of action for slander or libel accrues on the date of publication of the defamatory matter. Patterson v. Renstrom, 188 Neb. 78, 195 N.W.2d 193 (1972); Tennyson v. Werthman, 167 Neb. 208, 92 N.W.2d 559 (1958); Reller v. Ankeny, 160 Neb. 47, 68 N.W.2d 860 (1955). In the case of slander, the publication takes place when the words are spoken; and understanding a third person to pertain to the person slandered. 53 C.J.S. Libel and Slander § 82 (1948). Ignorance of the publication by the evidence probative of the plaintiff's claim does not postpone the operation of the statute. Patterson v. Renstrom, supra; Gross v. The Luppke Company, 14 Ariz. App. 202, 481 P.2d 909 (1971); Brown v. Chicago, Rock Island & Pacific Railroad Co., 323 F.2d 420 (8th Cir. 1963); Harmsen v. Tilove, 44 N.J. 571, 210 A.2d 897 (1965). Although there are exceptions, the above is the general rule applying to many types of causes of action. See Karl School District, Inc. # 2 v. Celotex Corp., 203 Neb. 559, 279 N.W.2d 827 (1979). | Does a cause of action in slander accrue at the time of alleged publication? | Cause of action for slander or libel accrues on date of publication of defamatory matter. | 005357.docx | LEGALEASE-00126134-LEGALEASE-00126135 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16251 | Williams Companies v. Durkheipol, 2012 OK 96, 299 P.3d 1107 | 13n41 | Cause of action accrues when plaintiff could have first maintained an action. | A cause of action accrues when the plaintiff could have first maintained an action. See gen., Sneed v. Cravens v. Page Aircraft Corporation, 1988 OK 66, 660 P.2d 333. It is when a litigant's compensation comes due. The claim accrues on the date of the injury. King Manufacturing v. Meadows, 2005 OK 78, 127 P.3d 584, 126 OK 23. 24 311. Jpn. Ind. mfct v. Micht, 1993 OK 201, 162 P.3d 891, and General Electric Co. v. State of New York, 1958 OK 270, 332 P.2d 956. The day of injury in question must be determined because of whatever circumstances. In particular claimant. Independent School District No. 89 v. McReynolds, 1974 OK 156, 528 P.2d 1127. A Spec. Ind v. Cravens v. McReynolds, supra. The date of injury has long been the point in time in workers' compensation cases when rights of the parties become established, including when a claim must be filed, which gives to use for determining benefits, and a claimant's entitlement to compensation. We stated in King Manufacturing v. Meadows, 127 P.3d at 589: | Does a cause of action ordinarily accrue when plaintiff could first maintain an action or a successful result? | Cause of action accrues when plaintiff could have first maintained an action. | 005359.docx | LEGALEASE-00126341-LEGALEASE-00126342 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 16252 | Martin v. Sarm & Home Sav. & Loan Ass'n of Missouri, 81 S.W.2d 279 | 13n41 | Cause of action to recover debt does not mature until debt matures or becomes due. | Appellee, (?) has a cause of action against Martin, must, of necessity, have one for debt, and a cause of action to recover a debt does not mature until the debt matures or becomes due. Wood v. Meadows, 127 F.3d at 589. | Can a cause of action to recover debt mature until debt matures or becomes due? | Cause of action to recover debt does not mature until debt matures or becomes due. | Action - Memo # C-306 - OG.docx | ROSS-003033321;ROSS-003033322 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 16253 | Farmers Mississippi Publishers Corp., 195 Miss. 90 | 13n41 | A cause of action "accrues" when it comes into existence as an enforceable claim. | A cause of action for an enforceable claim.", Grenada Bank v. Petty, 174 Miss. 415, 164 So. 316, 318. A cause of action for libel comes into existence, and is published. A libel has been published when, but not until, is delivered to the instance of its author or publisher and, and read by, or read by, one other than the person defamed. "Every publication of a libel is a distinct and separate act and a distinct and separate cause of action for the whole he will publish a libel he may know it or hard it to as many or as few as he pleases, and each time that he chooses to publish it he commits a fresh tort." Odgers, Libel and Slander, 5:5 d. 158. | A cause of action "accrue" when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. | Action - Memo # C-338 - SRB.docx | ROSS-003013826;ROSS-003013810 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 16254 | McKinley v. United States, 249 U.S. 397 | 3M+1 | Congress has authority to make rules and regulations for protection of the health and welfare of those composing the armies raised by it. | That Congress has the authority to raise and support armies and to make rules and regulations for the protection of the health and welfare of those composing the armies, is too well settled to require more than the statement of the proposition. Arver v. United States, 245 U.S. 366, 38 Sup. Ct. 159, 62 L. Ed. 349, L.R.A. 1918C, 361, Ann. Cas. 1918B, 856. | Does the congress have the authority to raise and support armies? | Congress has authority to make rules and regulations for protection of the health and welfare of those composing the armies raised by it. | 008726.docx | LEGALEASE-00126284-LEGALEASE-00126285 | Condensed, SA, Sub:0.61 | 0.61 | 0 | 1 | 1 | 1 | |
| 16255 | Nat'l Westminster Bank, USA v. State, 76 N.Y.2d 507 | 310+14b | As clerk of courts, county clerk is state officer for whom State is responsible, but when performing general duties, county clerk acts as local officer, and local government must answer for actions taken. | The County Clerk serves both the State and local governments (Olmsted v. Meahl, 219 N.Y. 270, 114 N.E. 393). As a clerk of the courts, the County Clerk is a State officer for whom the State is responsible. But when performing general duties the County Clerk acts as a local officer, and the local government must answer for actions taken. In the City of New York, the office of County Clerk is now wholly a part of the Unified Court System (Bucholtz v. Evans, 94 A.D.2d 341, 464 N.Y.S.2d 244, affd. 62 N.Y.2d 771, 476 N.Y.S.2d 828, 465 N.E.2d 367), but that clerk still performs some local functions for which the State is not liable (Rooeland Equities Co. v. Clerk of N.Y. County, 110 A.D.2d 60, 493 N.Y.S.2d 133). The essence of petitioner's argument is that the County Clerk should be treated as a State officer for whose acts the State must answer when the acts are sui I challenge. No conduct dependent upon the nature of the specific act which is at issue, and "the inquiry must be whether the act which performs a local function, the County Clerk is acting in his capacity as a state officer except as he performs an act in themselves a part of the judicial system." (Olmsted v. Meahl, supra, 219 N.Y. at 275, 114 N.E. 393.) | Are state governments responsible for the actions of a county clerk? | | 013428.docx | LEGALEASE-00126282-LEGALEASE-00126283 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16256 | Bormans v. Bd. of Sup'rs Ina N. for Klwn-Cty, 384 N.W.2d 609 | 148v45 | Is an easement a protected property right subject to the requirement of the just compensation clause of the Federal and State constitutions? Easements are property interests subject to the just compensation requirements of the Fifth Amendment to the United States constitution... | Easements are property interests subject to the just compensation requirements of state and federal constitutions. U.S.C.A. Const.Amend. 5; I.C.A. Const. Art. 1, § 18. | Are easements subject to the just compensation requirements of the Fifth Amendment to the Federal Constitution? | 017584.docx | LEGALEASE 00125014-LEGALEASE 00125015 | Condensed, SA | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 16257 | K & K Const. v. Dep't of Nat. Res., 456 Mich. 570 | 148v221 | Determining the size of the denominator parcel is inherently a factual inquiry... | Determining size of denominator parcel to be analyzed in takings analysis is inherently a factual inquiry. U.S.C.A. Const.Amend. 5; M.C.L.A. Const. Art. 10, § 2. | Is determining the size of the denominator parcel a factual inquiry under the taking law? | 017599.docx | LEGALEASE 00126179-LEGALEASE 00126180 | Condensed, SA, Sub 0.78 | 0.78 | | 1 | 1 | 1 | 1 |
| 16258 | United States v. Bergson-Mosquera, 654 F.2d 1370 | 221v134 | The international law principles, however, only apply to laws that govern the conduct of flagged vessels... | Objective, protective and territorial principles of international law only apply to laws that govern the conduct of flagged vessels. | Do objective, protective and territorial principles of international law only apply to laws that govern the conduct of flagged vessels? | International law - Memo #791 - C - MS.docx | ROSS-002295367-ROSS-002295368 | Condensed, SA, Sub 0.91 | 0.91 | | | | 1 | 1 |
| 16259 | United States v. Lulu, 46 F.3d 961 | 221v321 | Under international law, a nation may generally assert jurisdiction over its citizens... | Under international law, nation generally assert jurisdiction over its citizens. | Under international law, does a nation generally assert jurisdiction over its citizens? | International law - Memo #790 - C - BP.docx | ROSS-002298617-ROSS-002298618 | Condensed, SA | 0.93 | | | | 1 | |
| 16260 | R.M.S. Titanic v. Haver, 171 F.3d 943 | 221v134 | Beyond territorial waters lie the high seas, over which no nation can exercise sovereignty... | Beyond territorial waters lie the high seas, over which no nation can exercise sovereignty. | Can any nation exercise sovereignty over the high seas? | 020672.docx | LEGALEASE 00126058-LEGALEASE 00126059 | Condensed, SA | 0.95 | | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16261 | City of Cadillac v. Pub. Util. Comm'n of Mass., 626 S.W.2d 488 | 405n1096 | It is unreasonable to conclude that the Legislature intended the construction of Section 55 of the PWA, because it deprives cities of the protection from encroachment afforded to public utilities under the Act. Rather, the language of the statutes indicates that the intent, as the above construction is unreasonable, we hold that the term "public utility" used in Section 55 includes "mere" public utility" as defined in Section 49(a). This holding is consistent with the Commission action. In its findings and its conclusions of law, the Commission does not mention that Cadillac is not a public utility for Section 55 purposes. The order, however, grants Cadillac a Section 53 Certificate for the area within the city limits, if Cadillac is a "public utility" for the area within the city limits, then it is a "public utility" for all the area it services. | Term "public utility" used in "grandfather certificate" section of the Public Utilities Regulatory Act, includes "retail public utility," as defined in section providing that for purpose of article dealing with certificates of convenience and necessity, "retail public utility" means any person, corporation, water supply or sewer service corporation, or municipality operating facilities for providing retail utility service. Vernon's Ann.Civ.St. art. 1446a, §§ 1 et seq., 3, 3(b, c), 49 et seq., 53. | Does the term public utility include retail public utility? | 042379.docx | LEGALEASE_00150319-LEGALEASE_00150329 | Condensed_SA, Sub 0.41 | 0.41 | 0 | | 1 | | |
| 16262 | State v. Campbell Cty. Sch. Dist., 2907 WY 19 | 352H119 | This court has held that consent or reasonable mistake as to the age of the victim is not a defense to first degree sexual assault on a child under Wyoming statutes, have expressly rejected the "California Rule," allowing a defendant a | Consent or reasonable mistake as to age of victim is no defense to charge of first-degree sexual assault on child. Neb.Rev.St. § 28-319(1)(c). | Is consent a defense to first degree sexual assault on a child? | See Offence - Memo 34 BP.docx | LEGALEASE_00035168-LEGALEASE_00035169 | Condensed_SA, Sub 0.37 | 0.37 | 0 | | 1 | | |
| 16263 | U.S. Fid. & Guar. Co. v. First State Bank of Salina, 208 Kan. 738 | 366n8 | This holding is squarely applicable here, reading "Pay" for "the Government" and "Mide Contractor" for "the Contractor." While the holding itself would appear to resolve the surety's rights against all three the Government, the laborers and materialmen and the contractor three of the members of the holder of the reliance on the right of the surety to insist on the strict performance, rather than in favor of the laborers and materialmen before the surety on the under which they read the majority rationale to be. Either way, the result is the same, and it is the surety and laborers and materialmen are paid, as a surety the rights of all in priority even | When a surety on a construction contractor's bond is required to remedy default of its principal, it is subrogated to rights of contractor, laborers and materialmen, assure the rights of its principal? | 044243.docx | LEGALEASE_00125476-LEGALEASE_00125477 | Condensed_SA, Sub 0.7 | 0.7 | 0 | | 1 | | |
| 16264 | City of Amsterdam v. Daniel Goldreyer, Ltd., 882 F. Supp. 1273 | 388n64 | A trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another. Restatement (Second) of Torts § 217, 218, 220, 221 (1965). See also 75 N.Y. Jur. Trespass, 76. Spera v. Vela Records, 16 N.Y 2d 482, 481, 482 N.Y.S.2d 413, 448 N.E.2d 1324 (1983). The Restatement further defines trespass to | Trespass to chattel occurs when party intentionally damages or interferes with use of property belonging to another. Restatement (Second) of Torts §§ 217-221. | When does a trespass to chattel occur? | Trespass - Memo 102 RK.docx | ROSS-003912719-ROSS-003127335 | Condensed_SA | 0.17 | 0 | | 1 | | |
| 16265 | People, In Use of Finch v. Cramer, 15 Colo. 155 | 13n43 | Where a contract, express or implied, is violated, a cause of action at once accrues. The same is true in torts, constituting a trespass of one person or property, also of torts in connection with which an accrues of tort from would arise might have accrued at the common law. | When a contract, express or implied, is violated, a cause of action at once accrues. The same is true in torts constituting a trespass upon person or property, also of torts in connection with which an accrued might have been from without the common law. | Does a cause of action when a contract, express or implied, is violated? | 005455.docx | LEGALEASE_00126808-LEGALEASE_00126809 | Condensed_SA, Sub 0.3 | 0.3 | 0 | | 1 | | |
| 16266 | Anderson v. Gupta, 682 F.E.2d827 | 92n2111 | When a plaintiff's injuries are permanent, "12 does not require that every plaintiff have a remedy for injuries suffered. Our court's have long recognized that "there may be a claim or demand without any right to its recovery." State v. Henderson, 603 N.E.2d 1031, 1337 | Court decision does not require that every plaintiff have remedy for injuries suffered, and there may be claim or demand without any right to sue for its recovery. West's A.I.C Const. Art. 1, § 12. | Can there be a claim or demand without any right to sue for its recovery? | 005465.docx | LEGALEASE_00126402-LEGALEASE_00126403 | Condensed_SA, Sub 0.23 | 0.23 | 0 | | 1 | | |
| 16267 | Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. Rick, Marks & Assoc., 545 S.W.3d 716 | 13n43 | Notably, a legal malpractice claim does not accrue until "facts have come into existence that authorize a plaintiff to seek a judicial remedy." Apex Towing Co. v. Tolin, 41 S.W.3d 118, 120 (Tex 2001). This means a legal malpractice claim does not arise "until the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." Id. at 121. Reliance damages are an element of the legal malpractice claim, the claim does not accrue until the client discovers or should have discovered it was legally harmed. Vacek Group, Inc. v. Clark, 95 S.W.3d 439, 443 n.2 (Tex.App.-Houston [1st Dist.] 2002). injuries suffered, a cause of action may not accrue until and that facts including to the malpractice have surfaced. See e.g. Zidell v. Bird, 692 S.W.2d 550, 557 (Tex.App. Austin 1985, no writ). In the present case, the malpractice claim accrued before the client discovered or when defendant learned of potential claim during deposition but only after defendant had asserted the same position in the office. S.1 S.12. | Because damages are an element of a legal malpractice claim, the claim does not accrue until the client discovers, or should have discovered, it was legally injured. | Does a legal malpractice claim accrue when the client discovers or should have discovered that he was legally injured? | 007557.docx | LEGALEASE_00126526-LEGALEASE_00126537 | Condensed_SA | 0.88 | 0 | | 1 | | |
| 16268 | Broyles v. Cam., 309 Ky. 837 | 13n43 | No action can be maintained if it is commenced before the accrual of the cause of action which is sought to be enforced. 1 Am. Jur., Actions, Sec. 61; Hutton v. Jackson, 1844 p. 559, 213 SW 587; Bates v. Crane, 309 Ky. 793, 218 S.W.2d 947. No cause of action should exist and cannot be maintained when a suit warrants proceeding is commenced. If in a suit is premature, who merely has a claim to the office. The term must have begun and the defendant have seasoned, not claimed a right has accrued at the office. S.1 C.J. 229; 48 Am.Jur., Quo Warranto, Secs. 24, 61. | An action cannot be maintained if commenced before accrual of cause of action sought to be enforced? | Action - Memo # 133 - C Eu.docx | ROSS-000128739-ROSS-002385940 | Condensed_SA | 0.82 | 0 | | 1 | | |
| 16269 | Highline Sch. Dist. No. 401, King Cty. v. Port of Seattle, 87 Wash. 2d 6 | 13n43 | A cause of action accrues on the occurrence of the last element essential to the cause. White v. Johns-Manville Co., 103 Wash 2d 215, 348 P.2d 838 (1985). To maintain an inverse condemnation suit for damages attributable to aircraft operations, the property owner must allege interference with the use and enjoyment of his land, a resulting loss in market value (Martin v. Port of Seattle, supra 64 Wash2d at 320, 391 P.2d 540), or in a proper case, an interest directly requiring him to undertake modifications. A new cause of action then accrues with each measurable or inverse decline in market value. While it is true that "where a user which meaningfully deprives adjacent property in particular case marks its effect upon the market value of that property is also undertaken" (Cheskov v. Port of Seattle, supra 55 Wash2d at 420, 348 P.2d at 376, this theory of damages is inapplicable where the intensity of the interference changes over time. | Cause of action accrues on occurrence of last element essential to the action? | 003756.docx | LEGALEASE_00126587-LEGALEASE_00126588 | Condensed_SA, Sub 0.92 | 0.92 | 0 | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16270 | Kane Stu. v. Carlson, 116 Ill. 2d 186 | 79+1 | The circuit clerk is a nonjudicial officer of the judicial branch of government. 5 H.A. Const. art. 6, § 18(b). [...] | Circuit clerk is nonjudicial officer of judicial branch of government. S.H.A. Const. art. 6, § 18(b). | Are circuit clerks non-judicial officers of the judicial branch of the government? | 01.9413.docx | LEGAL4540 00135760 / LEGAL4540 00135761 | Condensed, SA, Sub 0.92 | | | 1 | | 1 | |
| 16271 | Raybon v. Pima City, 106 Ariz. 249 | 79+1 | It is the opinion of this Court that in light of the fact that the office of Clerk of the Superior Court is created in the constitution, which work is concurrent with [...] | Clerk of superior court is part of judicial branch of government. A.R.S. § 11-401; A.R.S Const. art. 3, art. 6, § 23. | Is a clerk of a superior court a part of the judicial branch of the government? | Clerks of Court - Memo 31 - RK.docx | RO55 0202986664 RO55 0202986667 | Condensed, SA, Sub 0.57 | | 0 | | | 1 | |
| 16272 | Raybon v. Pima City, 106 Ariz. 249 | 79+1 | We assume, therefore, that the legislature in enacting § 11-401 and 11-409 did so with the inherent powers of the Court. We believe that it was not the intent of the legislature [...] | Judiciary has power to supervise operation of office of clerk of superior court. A.R.S. § 11-401; A.R.S Const. art. 3, art. 6, § 23. | Does the judiciary have the power to supervise the operations of the office of the clerk of a superior court? | Clerks of Court - Memo 32 - RK.docx | LEGAL4540 00500480 / LEGAL4540 00500481 | Condensed, SA, Sub 0.79 | | 0 | | | 1 | |
| 16273 | Heyward v. Ryan, 85 N.J. L. 116 | 129+108 | Section 3 of the act above referred to declares that persons who shall loiter or assemble in the streets or public places of any city during the night [...] | Act Concerning Disorderly Persons, § 3, applies only to such persons as loiter about or obstruct or interfere with the movement of persons lawfully on the street. | Is a person who obstructs or interferes with any person lawfully in streets or public places a disorderly person? | 03.7633.docx | LEGAL4540 00005538 / LEGAL4540 00005519 | Condensed, SA, Sub 0.8 | | 0 | | | 1 | |
| 16274 | Long Island Water Supply Co. v. City of Brooklyn, 166 U.S. 685 | 148+51 | The vice of this argument is twofold. First, it ignores the fact that the contract is a mere incident to the tangible property; that it is the latter which, being thus taken, is condemned. And while the [...] | A contract is property which may be taken by condemnation proceeding for public use. | Can a contract be taken under condemnation proceeding for public use? | 02.7633.docx | LEGAL4540 00326503 / LEGAL4540 00326460 | Condensed, SA, Sub 0.55 | | 0 | | | 1 | |
| 16275 | Kelley v. Mallory, 202 Or. 690 | 302+12 | It is this defense of res judicata which challenges our interest. When we examine the complaints in the two suits, we are immediately struck by their similarity. Both are between the same parties and both plead the [...] | When instrument relied on is set out in full in the pleading, it prevails over allegations as to its legal effect? | Will an instrument prevail over allegations as to its legal effect. | 02.7050.docx | LEGAL4540 00130703 / LEGAL4540 00130703 | Condensed, SA, Sub 0.91 | | 0 | | | 1 | |

Appendix D

2868

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16276 | Lenhy v. Yeadon, 199 S.C. 363 | 113+63 | In the case of Edwards v. Johnson, 90 S.C. 90, 72 S.E. 638, 644, the Court said: "In order to constitute laches, there must be shown, not merely a neglect for a time to enforce a legal or equitable right, where such neglect is for so short a period as to work no disadvantage or injury to the other, or for some legal or equitable right, where such neglect operates, by reason of the statute of limitations, but it must further be made to appear that such delay was accompanied either by a failure to perform some legal duty, whereby prejudice has resulted to the person pleading such neglect, or that such delay was accompanied by some act on the part of the person so negligent, which operated to mislead the person pleading such neglect, to his prejudice to such an extent that it would be unjust and inequitable thereafter to permit such negligent party to enforce such right." | "Laches" ordinarily involves not only neglect to enforce a legal or equitable right but also such a change in conditions as to prejudice the right of one of the parties in making its defense and render inequitable the enforcement of the claim sought to be asserted. | Does there neglect for a time to enforce a legal right constitutes laches? | 005400.docx | LEGALEASE 00126266-LEGALEASE 00126370 | Condensed, SA, SA(x) 0.65 | | 0 | | 1 | | |
| 16277 | D.E.O. v. Lauchburg Area Sch. Dist. Bd. of Sch. Directors, 868 A.2d 28 | 141+51 | However, we must also recognize that "... a school district does not have inherent power to implement any policy they deem fit in the name of school safety. A school district's rulemaking authority is limited by that which is expressly or necessarily implied by power granted by the General Assembly, regardless of how worthy the purported goal." Harris v. Elizabethtown School District, 846 A.2d 394, 55 (Pa.Cmwlth.2002) (citing 22 Pa.Code § 12.3; Moreover, when schools act outside their statutory authority courts can intervene. | When schools act outside their statutory authority, courts can intervene. | 016794.docx | LEGALEASE 00127058-LEGALEASE 00127059 | Condensed, SA | 0.86 | | 0 | | 1 | | |
| 16278 | Ira Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65 | 279+59 | A public nuisance in New York is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency. Copart Indus. v. Consolidated Edison Co. of N.Y., 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977). To prevail on a public nuisance claim under New York law, a plaintiff must show that the defendant's conduct "amounts to a substantial interference with the exercise of a common right of the public," thereby "endangering or injuring the property, health, safety or comfort of a considerable number of persons." 513 McKinnon Ave. Gourmet Foods v. Finlandia Ctr., 96 N.Y.2d 280, 292, 727 N.Y.S.2d 49, 750 N.E.2d 1097 (2001). | Under New York law, a public nuisance is an offense against the state and is subject to abatement or prosecution on application of the proper governmental agency. | Who can abate public nuisance in a highway? | Highway - Memo 11 - BP.docx | LEGALEASE 00016892-LEGALEASE 00016893 | Condensed, SA, Sub 0.76 | | 0 | | 1 | | |
| 16279 | Carlson v. Landauer, 119 Cal.App. 20 250 | 302+611(1) | On a suit to quiet title, general allegations or denials of ownership are, as a rule, sufficient. But when a party undertakes to plead his title specifically, and denials must be supported to prove title, specifically as well as generally, and the special allegations reveal the weakness of his title, and he has no title, then effect is nullified by the more general allegations and denials. Martin v. Hall, 219 Cal. 334, 337*338, 26 P.2d 288; See also Ephraim v. Metropolitan Trust Co., 28 Cal.2d 824, 833, 172 P.2d 501. Where an allegation of ownership is expressly predicated on specific averments, the allegation of ownership is a mere conclusion of law and may be disregarded; the plaintiffs... Peninsula Props. Co. v. County of Santa Cruz, 34 Cal.2d 634, 639*640, 213 P.2d 489. Since the answer and the cross-complaint disclose... [such] allegations as to ownership... where defendant's Claim of ownership of the estate in the soil and gas is predicated; if those allegations show that defendants are not the owners... the demurrers were properly sustained and the motion for judgment on the pleadings was correctly granted. | Where an allegation of ownership is expressly predicated on specific facts, the allegation of ownership is a mere conclusion of law and is a mere conclusion of law and may be disregarded to quiet title, allegation of ownership is a mere conclusion of law and may be disregarded. | Should an allegation of ownership be disregarded? | 023087.docx | LEGALEASE 00127154-LEGALEASE 00127155 | Condensed, SA, Sub | 0.83 | | 0 | | 1 | | |
| 16280 | Pub. Serv. Comm'n v. Formal Complaint of WWC Co., 64 P.2d 163 | 317A+113 | We hold that a private sewage disposal company is not a public utility within § 3-103 (a)(iii) of the 1977, and that the order of the PSC dismissing appellant's complaint for lack of jurisdiction was proper. | A private sewage disposal company does not fall within the statute defining a public utility "within the jurisdiction of the Public Service Commission as including every person that owns, operates, leases, controls, or has power to operate, lease or control any plant, property or facility for the supply, storage, distribution or furnishing to or for the public of water for manufacturing, municipal agricultural or domestic uses, except and excluding any such plant, property or facility owned by a municipality. W.S. 1977, 37-1-101(a)(viii); 37-2-127. | Is a disposal company or its operation thereof a public utility? | 042418.docx | LEGALEASE 00126859-LEGALEASE 00126860 | Condensed, SA, Sub 0.63 | | 0 | | 1 | | |
| 16281 | Gen. Comm'rs Fa. Sys. v. State Corp. Comm'n, 216 Kan. 410 | 317A+113 | We considered the meaning of the word "necessity" as used in cases dealing with the regulation of public utilities in the case of Central Kansas Power Co. v. State Corporation Commission, 206 Kan. 670, 482 P.2d 1, wherein Mr. Justice Fromme speaking for the court said "... Public necessity does not necessarily mean there must be a showing of absolute need. As used, the word "necessity" means a public need without which the public is inconvenienced to the extent of being handicapped. 1pp. 674-675 of 216 Kan., 482 P.2d 1. | The word "necessity", as used in public utility law generally means a public need without which a public is inconvenienced to the extent of being handicapped. K.S.A. 66-131 et seq. | What does the word necessity imply in reference to public utilities? | 042426.docx | LEGALEASE 00126936-LEGALEASE 00126937 | SA, Sub | 0.65 | | 0 | | 1 | | |
| 16282 | Teacher Valley Grain Growers v. Dep't of Water & Gen. Const., 119 Wash. 2d 334 | 366+5 | Subrogation is an equitable doctrine, the purpose of which is to avoid unjust enrichment. General Ins. Co. of Am. v. Deen, Motors, 67 Wash.2d 973, 976, 410 P.2d 904 (1966). Usually, subrogation allows an insurer to recover what it pays to its insured under the policy by suing the wrongdoer. The insurer steps "into the shoes" of its insured. R. Keeton & A. Widiss, Insurance Law § 3.10(b)(1) (1988). The insurer, the "subrogee", has rights equal to, but no greater than, those of the insured party. William of Wash., Inc. v. Wrecker Carpet Serv., Inc., 44 Wash.App. 400, 404, 722 P.2d 636 (1986); R. Keeton & A. Widiss, supra. Parties to contract may waive their subrogation rights and, absent fraud, the waiver will be valid and enforceable. Miltican. | Parties to contract may waive their subrogation rights and, absent fraud, the waiver will be valid and enforceable. | Are anti subrogation waivers valid and enforceable? | 043266.docx | LEGALEASE 00127078-LEGALEASE 00127079 | Condensed, SA | 0.86 | | 0 | | 1 | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16283 | Albany Ins. Co. v. United Alum Chem., 194 F. Supp. 2d 87 | 366+15 | A contractual waiver of subrogation rights is enforceable if, by this standard, if between is clear and unambiguous. It is a rule which is often cited by Connecticut courts in the context of subrogation actions, the Connecticut Supreme Court described subrogation as follows... | Contractual waiver of subrogation rights is enforceable if the waiver is clear and unambiguous. | Is a contractual waiver of subrogation rights enforceable if the waiver is clear and unambiguous? | Subrogation - Memo # 1239 - C 96.docx | ROSS0026054140-ROSS-0026054141 (LEGALEASE-00335617) | Condensed, SA, Sub | 0.95 | 0 | | 1 | 1 | 1 |
| 16284 | S.-Mut. Church Ins. Co. v. AKS Mech., 106 Ga. App. 748 | 29+49(90) | The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply. | The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine, under law? | "Who bears the burden of showing the inapplicability of the voluntary payment doctrine, under law?" | Subrogation - Memo # 971 - C 71.docx | LEGALEASE-00017090-LEGALEASE-00017091 | Condensed, SA | 0.73 | | 0 | | 1 | |
| 16285 | Day Cruises Mar., L.L.C. v. Christian Spahn Health Sys., 267 S.W.3d 42 | 366+4(16) | Equitable subrogation "is a legal fiction" whereby "an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person... | Burden is on the party claiming equitable subrogation to establish he is entitled to it. | Is the burden on the party claiming equitable subrogation to establish he is entitled to it? | Subrogation - Memo # 982 - C 04C.docx | ROSS0026294314-ROSS-0026294416 | Condensed, SA | 0.93 | 0 | 0 | 1 | 1 | |
| 16286 | In re Galwell Estate, 3 A.D.2d 280 | 13+65 | In the meantime, the appeal from the interlocutory decree was prosecuted, and, a rested course, it was affirmed. The essential holding... | Equity need not speak with finality until the decree, and when it does, it does with reference to the facts, the law, and equities then existing. | Does equity need not speak with finality until the decree? | 000063.docx | LEGALEASE-00127884-LEGALEASE-00127886 | Condensed, SA | 0.89 | 0 | 0 | | 1 | |

2870

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 5,073 |
| 16287 | Jose v Lemas, 316 Mass. 271 | 13+63 | The findings of the judge would not support the conclusion that the petitioner ever acquiesced in the acts of power exerted by his respondent co-executors and not disclosed by them to the petitioners. Compare Greenberg v. H. W. Downs Co., 165 Mass. 402, 405, 43 N.E. 195, 52 Am.St.Rep. 515. The valid petitioner did not know of the real character of the transaction in question until a date when it had taken place, and the respondents' contention that they had been guilty of laches is disposed of by the findings of the judge as to that fact, and also by his finding that the petitioner was misled within a reasonable time. We see no reason to disagree with that conclusion. See Dodge v. Anna Jaques Hospital, 301 Mass. 431, 434, 437, 17 N.E.2d 308. That the real facts were communicated to a guardian ad litem appointed to represent the interests of the minors and that he assented to the account does not preclude them from seeking a revision and restoration of the account. Laches is not to be imputed to a minor, and no exception is made of infants under guardianship. Dunham v. McDonald, 34 Mass. 441, 442, 443, 19 N.E. 551, 12 Am.St.Rep. 574, and cases cited. | Laches is not to be imputed to a minor and no exception is made of infants under guardianship. | Is laches to be imputed to a minor and no exception is made of infants under guardianship? | Action - Memo # 878 -C-R.docx | ROSS-003281858/63-ROSS-003281864 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 16288 | Jones v. Forte, 165 Conn. 516 | 13+63 | The issuance of an injunction, which is an extraordinary remedy, requires, in a proceeding under General Statutes s 4-61, obligations and proof that the plaintiff's are aggrieved and that their aggrievement constitutes a justiciable interest in the controversy in question, and fact of which is founded on the nonexistence of substantial and irreparable injury. Berkeley v. Johnson, 153 Conn. 46, 51, 212 A.2d 199. The granting of an injunction rests in the sound discretion of the court and cannot be demanded as a matter of right. Ginsberg v. Mascia, 149 Conn. 502, 505, 182 A.2d 4. The unattacked findings of fact, including those that the plaintiffs had successfully completed their schooling, had graduated and had been licensed by the state, support the conclusion of the court that they did not suffer irreparable injury. A court will grant equitable relief, injunctive or otherwise, only on the situation as it exists at the time of trial. Grievance Committee v. Dacey, 154 Conn. 129, 153-154, 222 A.2d 339, appeal dismissed, 386 U.S. 683, 87 S.Ct. 1325, 18 L.Ed.2d 404; Edward Balf Co. v. East Granby, 152 Conn. 319, 322, 207 A.2d 58; Holt v. Wissinger, 145 | A court will grant equitable relief, injunctive or otherwise, only on situation as it exists at time of trial. | Does equity deal only with the situation existing at the time of trial? | Action - Memo # 894 - C-V4.docx | ROSS-003281851-ROSS-003281853 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16289 | Perpich v. U.S. Dep't of Def., 880 F.2d 11 | 34+1 | The authority given to Congress by the army clause is plenary and exclusive. Tarble's Case, 80 U.S. 113 Wall.) 397, 408, 20 L.Ed. 597 (1872). In United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). In the Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918), the Court observed that "complete authority" over the "army sphere," was "conferred in all its plenitude" to Congress, with the exertion of that power "solely left to [that] body's discretion in the exercise of the expenses which would call it in part or in whole into play." 245 U.S. at 382-83, 38 S.Ct. at 163. More recently, the Court has observed that "the constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). | Authority given to Congress by the army clause is plenary and exclusive. | Is the authority given to Congress by the army clause plenary and exclusive? | 00065.docx | LEGALEASE-00228099/LEGALEASE-00228100 | LEGALEASE, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 16290 | Sch. Dist. No. One Fractional, in Twp. v. Sch. Dist. No. Two Fractional, Chesterfield | 141E+13 | The act does not require a consent vote when property is detached from one district and added to another: it is merely that, under the laws of this State, school matters are subject to the control of the legislature and are matters of State concern. In MacQueen v. Port Huron City Commission, 194 Mich. 328, at page 336, 160 N.W. 627, at page 629, we said: "Fundamentally, provision for and control of our public school systems is a state matter, delegated to and lodged in the state legislature by the Constitution in a separate article entirely distinct from that relating to local government. The general policy of the state has been to retain control of schools, its management, and the geographical, the state under state law by local/state agencies organized with always powers independent of the local government with which, by the location and geographical boundaries, they are necessarily closely associated and to a greater or less extent authorized to co-operate. "Education belongs to the state. It is no part of the local self-government inherent in the township or municipality except so far as the Legislature may choose to make it such. The general school laws were enacted and are enacted to guard that distinction, provision was made for organization in the common school districts, with officers elected at school meetings by electors with defined qualifications, and who as a school board exercised given legislative powers and control of school matters, practically independent from the local government of municipalities in which the schools were situated." | Under Michigan laws and constitution, school matters are subject to state legislature's control and are matters of state concern. | Is education a matter of interest and concern for the state and subject to the control of the legislature? | Education - Memo # 38 - C-GI.docx | LEGALEASE-00017170/LEGALEASE-00017172 | Condensed, Order, SA, Sub | 0.92 | 1 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 16291 | People ex rel. Buffalo Co. v. Vill. of Buffalo Grove, 85 Ill. App. 2d 382 | 183+5 | We recognize that if a public utility seeking to supply a new area not then being serviced, were required to petition a certificate from the Illinois Commerce Commission, an already certified public utility serving an adjacent area would be given the first choice to show its desire and willingness to provide service for the new area. Citizens Valley View Co. v. Illinois Commerce Commission. However, municipal utility systems are specifically excepted from the provisions of the Public Utilities Act. Ill.Rev.Stat., 1965, ch. 111 2/3, s 10.3. Furthermore, this act declares that a certificate issued by the Commission 'shall not be construed as granting a monopoly or an exclusive privilege.' … And there is nothing to prevent a municipally owned utility from competing directly in the same area of operation with a privately owned utility. See Illinois Public Service Co. v. City of Bushnell, Ill., 1997 2d 26, 281 Ill. 1846. | There is nothing to prevent municipally owned utility from competing directly in same area of operation with privately owned utility. S.H.A. ch. 111 2/3 s 10.3, 55 & 56. | Can municipal businesses compete with private utility businesses? | 04967.docx | LEGALEASE 00128066-LEGALEASE-00128087 | Condensed, SA, Sub 0.87 | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 16292 | R.I. Ins. Co. v. S. Union Co., 163 SW 3d 451 | 366+55 | The General Conditions to the AIA Contract describe an identifiable class of persons intended to benefit from the waiver of subrogation provision, utility's activities as a construction contractor in a mechanism for reducing litigation by preventing claims from arising. The waiver and contractual provision of insurance for the uncertain forth in paragraph 11.3.7 — A waiver of subrogation provision releases a party to a construction contract from liability … (Emphasis added.) | Natural gas utility could seek protection under waiver of subrogation clause in contract between construction contractor and owner of gas plant that was partially destroyed in natural gas explosion while it was under construction; utility was not listed within the identifiable class of persons covered by the waiver of subrogation provision, utility's activities as construction contractor for the gas service line to the plant were essential to the plant's ultimate operation, and utility could not have transported natural gas to the plant without undertaking these construction activities. | Is a waiver of subrogation provision in a contract a mechanism for reducing litigation by preventing claims? | 04339.docx | LEGALEASE 00127941-LEGALEASE-00127942 | Condensed, SA, Sub 0.11 | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 16293 | Agostinelli v. Stein, 17 A.D.3d 982 | 366+55 | We conclude that Supreme Court erred in denying those parts of the motion of the Navigle defendants seeking summary judgment dismissing the complaints in action Nos. 3 and 8 against the Board, the complaints in actions Nos. 5 through 7 against Griffo, and the Board, and the amended complaint in action No. 4 against Westage at the Pinder, and we therefore modify the order accordingly. Those actions were commenced … "The bylaws are, 'in essence, an agreement among all of the individual unit owners … which set forth the respective rights and obligations of unit owners' (Schulenger, v. Tuckers Kook Homeowners' Assn., 134 A.2d 1, 6, 523 N.Y.S.2d 521) … Letizia v. Overlook It, 264 A.D.2d 869, 871, 701 N.Y.S.2d 728). | Waiver of subrogation clause cannot be enforced beyond scope of specific context in which it appears. | Can a waiver of subrogation be enforced beyond the scope originally intended? | 04342.docx | LEGALEASE 00127738-LEGALEASE-00127739 | Condensed, SA | 0.94 | 0 | 1 | | 1 | 1 |
| 16294 | Price v. High Pointe Oil Co., 294 Mich. App. 42 | 366+7 | Furthermore, contrary to defendant's assertion, the law has historically distinguished between personal property and real property for purposes of liability for trespass to land does not require any actual showing of damage: "Any intentional and unprivileged entry on land is a trespass without a showing of damage, since there who own land have an exclusive right to its use Address v. Thomas-Sebert Co., 463 Mich. 253, 384, 481 N.W.2d 751 (1992), quoting Prosser & Keeton, Torts (5th ed.), s 87, p.622. Liability for a trespass to chattel, however, generally requires some showing of damages. Section for 219. Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 171; 102 A.2d 587 (1954). | Liability for a trespass to chattel generally requires some showing of damages. | Does liability for a trespass to chattel generally require some showing of damages? | Trespass - Memo 228 - 86.docx | ROSS-003303945-ROSS-003303946 | Condensed, SA | 0.88 | 0 | 1 | | 1 | 1 |
| 16295 | Batcheldor v. Tweedie, 294 A.2d 443 | 13+65 | After judgment where in defendant it sought to vacate a new condition in suit where the facts, his actions could negative the considered incident to reconsideration and final adjudication of a suit already prosecuted to judgment. We believe that authorities which holds that as a matter of right defendant was entitled to the relief it sought in these motions, and denial of them by the circuit judge is not approved for that purpose. Procedural statutes are, however, ordinarily applicable to pending actions. Assurance Co., 227 Mich. 104, 198 N.W. 715, wherein a hardware dealer. A litigant may not sue first and obtain his right of action afterwards. | Substantive rights are fixed at the date on which the cause of action accrues; however, procedural statutes are ordinarily applicable to pending actions. | Are substantive rights fixed at the date on which the cause of action accrues? | 00982.docx | LEGALEASE 00128249-LEGALEASE-00128250 | Condensed, SA | 0.71 | 0 | 1 | | 1 | 1 |
| 16296 | Frankad Trailer Co. v. City of Detroit, 216 Mich. 407 | 13+65 | After judgment where in defendant it sought to vacate a new condition in suit where the facts … A litigant may not sue first and obtain his right of action afterwards. | A litigant may not sue first and obtain his right of action afterwards. | Can one sue first and obtain his right of action afterwards? | Action - Memo 4 731 - C-ES.docx | ROSS-003184864-ROSS-003184867 | Condensed, SA | 0.9 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WNKS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 14297 | Orra v. Bd. of Appeals of Town of Bethlehem, 1 A.D.3d 698 | 13+65 | Generally, court must apply law as it exists at time of decision. | As a general rule, since this Court must apply the law as it exists at the time of a decision [citations] ... | Should a court apply a law as it exists at the time of a decision? | 000003.docx | LEGALEASE-00128341 / LEGALEASE-00128342 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | |
| 14298 | Archer v. Utah State Land Bd., 15 Utah 2d 321 | 361+1551 | Ordinarily, facts and law in given lawsuit are to be applied as of date of filing of original complaint. | There are two additional matters that need to be mentioned. It is suggested that the Land Board is prevented from ... | Since equity always speaks as of the date of its decree, are facts about the filing date of the complaint relevant and material to the main issue? | Action - Memo #794 - C KBM.docx | LEGALEASE-00028022 / LEGALEASE-00028023 | Condensed, SA | 0.91 | | 1 | 0 | 1 | |
| 14299 | Bates v. Davis, 309 Ky. 703 | 307A+551 | An action cannot be maintained if commenced before the accrual of cause of action, which is sought to be enforced. Such an action should be dismissed without prejudice to plaintiff's right to begin a new action in case of nonexistence of a cause of action when suit was started in a fatal defect which cannot be cured by accrual of cause pending suit. | The case presents a rather unusual situation. A motion to stay a proceeding on a minor matter ... | Can an action be maintained if commenced before the actual of the cause which is sought to be enforced? | Action - Memo #321 - C 5.docx | ROSS-003286357-ROSS-003286358 | Condensed, SA, Sub 0.6 | | | 1 | | 1 | |
| 16500 | Dumais v. Am. Golf Corp., 299 F.3d 1216 | 25T+135 | Arbitration agreement that bound employee but gave employer unfettered right to alter agreement or its scope was illusory and unenforceable. | We join other circuits in holding that an arbitration agreement allowing one party the unfettered right ... | Is an arbitration agreement giving one party the unfettered right to alter the arbitration agreements existence or its scope illusory? | 007241.docx | LEGALEASE-0028842 / LEGALEASE-0028844 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | | |
| 16501 | int'l Bhd. of Elec. Workers, Local No. 367, AFL-CIO v. Graham City. Elec. Corp., 783 F.2d 497 | 25T+135 | Obligation to arbitrate a new contract, i.e., "interest arbitration," may survive the termination of an old contract. | In Nolde, the Supreme Court held that the obligation to arbitrate a severance pay dispute ("grievance arbitration") survived the termination ... | Can interest arbitration survive the termination of a contract? | 007248.docx | LEGALEASE-0028849 / LEGALEASE-0028850 | Condensed, SA, Sub 0.81 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16102 | Gogri v. Jack In The Box Inc., 166 Cal. App. 4th 255 | 170A+508 | Plaintiff's voluntary dismissal was timely filed under statute granting a plaintiff an absolute right by timely voluntary dismissal, and thus trial court lacked discretion to vacate dismissal or grant defendant's motion for summary judgment, even though trial court had entered demurrer without leave to amend as to some of plaintiff's causes of action, and both parties had moved for summary judgment by submitting notices of such action, where trial court had issued no tentative ruling on summary judgment motions, and plaintiff had submitted admissible evidence in support of its motions; there had been no public and formal relinquishment by court regarding merits of case, and plaintiff had not committed any procedural dereliction that rendered judgment against him inevitable or even formality. West's Ann.Cal.C.C.P. § 581. | ... | Is a voluntary dismissal available to the plaintiff as a matter of right? | 038741.docx | LEGALEASE 00128263 LEGALEASE 00128264 | Condensed, SA, Sub 0.34 | | 0 | 1 | | 1 | |
| 16103 | In re legal, 527 B.R. 85 | 51+2260 | The right to voluntarily dismiss a Chapter 7 case is not absolute; the debtor must establish cause for dismissal under 11 U.S.C.A. § 707(a). | ... | Is the right to a voluntary dismissal not absolute? | 038812.docx | LEGALEASE 00128281 LEGALEASE 00128282 | Condensed, SA 0.82 | | | 1 | 0 | 1 | |
| 16104 | City of Milwaukee v. Pub. Serv. Comm'n, 11 Wis. 2d 111 | 268+57 | Existence as a public utility does not result in the grant of an indeterminate permit. W.S.A. 195.03(3) | ... | Does the existence as a public utility result in the grant of an indeterminate permit? | Public Utilities - Memo 235 - AM.docx | ROSS-003289454 ROSS-003289046 | Condensed, SA, Sub 0.31 | | | 1 | | 1 | |
| 16105 | US Airways v. Qwest Corp., 238 Ariz. 413 | 372+840 | Telecommunication utility owed common law duty, as an underground facilities operator under Blue Stake Law, to data center operator, which experienced economic loss... | ... | Is a telecommunication utility against a utility for service interruption or other economic loss part of the common law? | Public Utilities - Memo 246 - AM.docx | ROSS-003285327 ROSS-003285328 | Condensed, SA, Sub 0.75 | | 0 | 1 | | 1 | |
| 16106 | In re Latbar Corp., 177 B.R. 49 | 366+55 | Surety can waive right of equitable subrogation in favor of another creditor. | ... | Can a surety waive right of equitable subrogation in favor of another creditor? | 043315.docx | LEGALEASE 00128114 LEGALEASE 00128115 | Condensed, SA, Sub 0.88 | | | 1 | | 1 | |
| 16107 | Hull v. Windsor Sav. Bank, 97 Vt. 125 | 366+55 | The right of subrogation is unaffected by the conduct of another. | ... | Is the right of subrogation unaffected by the conduct of another? | Subrogation - Memo 1117 - C - ES.docx | ROSS-003500044 ROSS-003500444 | Condensed, SA, Sub 0.85 | | 0 | 1 | | 1 | |

| ROW | WKNS Topic + Key Number | Judicial Opinion | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16508 | Stidberg v. Caldwell, 175 Conn. 586 | 141/1+13 | It is evident from the extensive legislation relating to the furnishing of education to the general public that it is a state function and duty under our law. West Hartford Education Assn., Inc. v. DeCourcy, 162 Conn. 566, 573, 295 A.2d 526; Board of Education v. D'Aulisa, 133 Conn. 414, 418, 52 A.2d 636. Since early times the state has had a continuous interest in education; the duty of providing for the education of children was always regarded as a duty resting on the state, and there was no question but the legislature had the plenary power to create, consolidate and abolish school districts. State ex rel. Walsh v. Hine, 59 Conn. 50, 60, 21 A. 1024. Without distributing and dividing the powers of government so as to create separate, distinct fields for operation, the state cannot achieve broad, sovereign power in legislating concerning educational matters. The Connecticut education system has developed from the small, practically independent school district through a consistent legislative policy of consolidating and centralizing schools and their administration. Thus, "[t]he determination of the State's policy in the management of the public educational system rests with the legislature." Fowler v. Enfield, 138 Conn. 521, 530, 86 A.2d 662; Groton & Stonington Traction Co. v. Groton, 115 Conn. 151, 156, 160 A. 902. | Furnishing of education for general public is state function and duty. | Is furnishing of education for the general public a state function and duty? | 01801.docx | LEGALEASE 00135778-LEGALEASE 00135780 | Condensed, SA | 0.94 | 0 | 1 | | 1 | |
| 16509 | Damon v. Carey, 33 Pa. Cmwlth. 614 | 141/1+13 | The common school system as we know it today finds its genesis in the common school article of the Constitution of 1874, which made education firmly fundamental. The power of the state over education falls into that class of powers which are fundamental to our government. Art. April 1, 1834, P.L. 102, ... | The power of the state over education falls into that class of powers which are fundamental to the government. | Does the power of the state over education fall into that class of powers which are fundamental to the government? | Education - Memo # 57- C - YG.docx | RISDS 00203867779-RISDS 00203878 | Condensed, SA, Sub | 0.77 | | 1 | | 1 | |
| 16510 | Brown v. Bd. of Ed. of City of Chicago, 386 F. Supp. 110 | 141/1+13 | Under the facts of the instant case this Court has determined that injunctive relief is inappropriate. As the intent of their decorations, the Board of Education has undertaken a series of comprehensive programs to correct the funding disparities between the various school districts... | Local control over public education should be maintained wherever possible. | Should local control over public education be maintained wherever possible? | 01.0010.docx | LEGALEASE 00135783-LEGALEASE 00135784 | Condensed, SA | 0.93 | 0 | 1 | | 1 | |
| 16511 | State Auto. and Cas. Underwriters v. Johnson, 766 S.W.2d 113 | 289+950 | Appellant's argument ignores the difference between dissolution of a partnership and the winding up of a partnership. Section 359.250, RSMo 1986, provides: "The "dissolution" of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Section 358.300, RSMo 1986, provides: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." The term "winding up" means the administration of the assets for the purpose of terminating the business and discharging the obligation of the partnership to its members. Smith v. Kennebeck, 502 S.W.2d 290, 293 (Mo.1973). Even though a partnership is dissolved, it has a continued existence until its affairs are completed and the winding up of partnership affairs is completed. Hagan v. Asa, 241 S.W.2d 181, 184 (Mo.1951). | Term "winding up" means administration of assets for purpose of terminating partnership business and discharging obligation of partnership to its members. | What is the winding up of partnership? | 02.0978.docx | LEGALEASE 00135900-LEGALEASE 00135901 | Condensed, SA | 0.84 | 0 | 1 | | 1 | |
| 16512 | Weber & Co. v. Nerdis, 669 P.2d 1046 | 289+421 | The dissolution of a partnership does not of itself discharge the existing liability of any partner. Section 7-60-134(1), C.R.S.1973. A partner is discharged from existing liability by an agreement to that effect between the dissolving partner, the continuing partners, and the person or partnership continuing the business. Because the dissolution of a partnership does not of itself discharge the existing liability of any partner, such an agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business." Section 7-60-136(2), C.R.S.1973. Thus, under § 7-60-134(3), a partner is not discharged from liability by a partner whose obligations have been assumed. | Agreement to discharge a withdrawing partner from existing liability may be inferred from course of dealing between creditor having knowledge of dissolution and person or partnership continuing business, C.R.S.1973, 7-60-134(3). | Does the dissolution of a partnership discharge the existing liability of a partner? | Partnership - Memo 212 - KK.docx | RISDS 003300777-RISDS 003300778 | Condensed, SA | 0.66 | | 1 | | 1 | |
| 16513 | Inre Western-World Funding, 52 B.R. 743 | 289+429 | All partners have equal rights in the management and control of partnership business. Nev.Rev.Stat." 87.180, sub. 5. The defendants did in fact exercise joint control as partners. They may have performed different services, and to a great extent Vogel delegated management decisions to Rosenich, but this is not unusual in a partnership. Partners have an equal legal right to manage, but the actual management may be delegated to a single partner or co-adventurer without destroying their relationship as partners. The fact that Rosenich, supra, 67 Nev. at 11, 12 P.2d 319; Northern Lights Motel, Inc. v. Sweaney, 561 P.2d 1176, 1187 (Alaska 1977) (rehearing denied, 563 P.2d 256 1977). Furthermore, Vogel personally delegated management decisions to Buckuiner, and held him out as her personal agent. Therefore, she was well aware of her legal right to manage. | Partners have an equal legal right to manage, but actual management may be delegated to a single partner or coadventurer without destroying their relationship as coadventurers or partners. | Can the management and control of the partnership be delegated? | 02.0011.docx | LEGALEASE 00135956-LEGALEASE 00135959 | Condensed, SA | 0.79 | 0 | 1 | | 1 | |

2875

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 16314 | Peels v. Pedro, 463 N.W.2d 285 | 101+1262(1) | The jury awarded respondent $500,000 as damages based solely on its finding that the other owed the other a fiduciary duty. ... | Relationship between shareholders in a closely held corporation is analogous to that of partners, in that each shareholder owes the others a fiduciary duty. | Is the relationship between shareholders in a closely held corporation analogous to that of partners? | Partnership - Memo 244 RK.docx | ROSS 003002956-ROSS-003002957 | Condensed, SA, Sub 0.68 | | 0 | 1 | | 1 | |
| 16315 | In re Christenberry, 336 B.R. 353 | 101+1501 | Under Tennessee law, "sole proprietorship" is a form of business in which one person owns all assets of a business, in contrast to a partnership... | Under Tennessee law, "sole proprietorship" is a form of business in which one person owns all assets of a business, in contrast to a partnership and corporation, and the sole proprietor is solely liable for all debts of the business. | Is a sole proprietorship different from a partnership? | 02052.docx | LEGALEASE-00128978 LEGALEASE-00128979 | Condensed, SA, Sub 0.82 | | 0 | 1 | | 1 | |
| 16316 | Rikansrud v. Bütiny, 719 S.W.2d 180 | 307A+605 | The right to take a non-suit is governed by Tex.R.Civ.P. 164, and this rule is construed liberally in favor of the right to the non-suit... | Rule governing nonsuits is liberally construed in favor of a right to nonsuit. | Is a trial governing nonsuits liberally construed in favor of a right to nonsuit? | 041337.docx | LEGALEASE-00128789-LEGALEASE-00128790 | Condensed, SA, Sub 0.8 | | 0 | 1 | | 1 | 1 |
| 16317 | Drenthe v. Louisiana Dept of Wildlife & Fisheries, 580 So. 2d 1083 | 360+200 | Plaintiffs next argue that venue is proper in Plaquemines Parish pursuant to La.C.C.P. art 80(A)(3) which provides: Article 80. Action involving immovable property... | Statute which governs suits against Department of Wildlife and Fisheries is specific statute which supersedes general venue statute for suits brought against State, LSA-R.S.13:5104, subd A, 36:602. | Do statutes which govern specific agencies supersede general venue statutes? | Venue - Memo 113 - RK.docx | ROSS 003281564-ROSS-003281568 | Condensed, SA, Sub 0.76 | | 0 | 1 | | 1 | |
| 16318 | Greene v. A.G.B.B. Hotels, 505 So. 2d 666 | 401+1.1 | We further said in Chobain that the local action rule is a rule of subject matter jurisdiction and that the revenue statute, section 42:2-11, accommodates this jurisdictional requirement by providing that actions... | Not every action that concerns real property involves property in litigation for purpose of determining venue. West's F.S.A. § 47.011. | Does every action that concerns real property involve the property in the litigation? | Venue - Memo 117 - RK.docx | ROSS 003281938538-ROSS-003281939 | Condensed, SA, Sub 0.66 | | 0 | 1 | | 1 | |
| 16319 | Liethala v. Superior Court, 2 Cal. 4th 744 | 413+1 | The touchstone of the workers' compensation system is industrial injury which results in occupational disability or death. (Shoemaker v. Myers, supra, 52 Cal.3d at 1016, 276 Cal.Rptr. 303, 801 P.2d 1054...) | Touchstone of workers' compensation system is industrial injury which results in occupational disability or death. West's Ann.Cal.Labor Code § 3201 et seq. | What is the touchstone of the workers compensation system? | 047723.docx | LEGALEASE-00128726-LEGALEASE-00128727 | Condensed, SA, Sub 0.85 | | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 16320 | Jordan v. Hornmeyer, 552 N.E.2d 1194 | 30+125 | Turning to the substance of the appeal from that order, Family Court denied the mother's objection to the Support Magistrate's order upon the proposition that she could not challenge an order entered upon consent. While "[i]t is well settled that no appeal lies from an order (sought by) consent" (Matter of O'Sullivan v. Schebilski, 138 A.D.3d 1170, 1172, 30 N.Y.S.3d 653 [2016]; see Matter of Cohen v. Cohen, 2 A.D.3d 1446, 1446, 769 N.Y.S.2d 411 [2003]), that rule does not apply where the order "differs from or exceeds the consent" (Farkas v. Natsis, 122 A.D.2d 131, 131, 504 N.Y.S.2d 508 [1986]). The arguments advanced by the mother fall within the exception to the rule barring appeals from consent orders and, accordingly, Family Court's order may be reviewed. | While no appeal lies from an order issued on consent, that rule does not apply where the order differs from or exceeds the consent. | Can an appeal lie from an order issued on consent? | Appeal and error - Memo 27 - RK.docx | LEGALEAGLE-00028866-LEGALEAGLE-00028887 | Condensed, SA | 0.83 | | 1 | | 1 | 1 |
| 16321 | Moreno v. Murphy, 230 Mass. 5 | 30+6 | This court comes before us at apparent leisure of the defendant. Its an action at law. An appeal in an action at law under R.L. c. 173... brings before the full court for examination errors "founded upon matters of law apparent on the record." The only declarations, answer, finding in favor of defendant, motion for judgment and allowance thereof, and the appeal of the plaintiff, in this case, constitute the record. Manifestly they disclose no error of law. There is printed as a part of this appeal the material to be a copy of all the evidence. This is no part of the record. The only way to bring the material evidence before this court, is on action at law, is by exception or by report. No exceptions appear to have been taken. There is no report by the judge who tried the case. Green v. Johnson, 213 Mass. 251, 100 N. E. 541; Parrot v. Lyons, 213 Mass. 290, 99 N. E. 690; Chinery v. Chinery, 213 Mass. 135, 99 N. E... | Only a way to bring material evidence before full court on appeal in action at law is by exception or report. | How can material evidence be brought before the court in an action at law? | Appeal and error - Memo 44 - RK.docx | ROSS-003113474-ROSS-003113479 | Condensed, SA, Sub | 0.89 | | 1 | 1 | 1 | 1 |
| 16322 | Beebe v. St. Helens, 124 Or. 638 | 110+260.4 | Appellant has no attest of record. However, the one filed by respondent discloses that the appeal is still pending in the circuit court. No motion was made to dismiss the same. It is well settled in this jurisdiction that, while appeal and writ of review were concurrent remedies, they cannot be prosecuted at the same time (State v. City of Marin, 65 Or. 87, 131 P. 1005; Nehl v. Duncan, 174 Or. 295, 148 P.2d 235)... | Writ of review proceeding in recorder's court could not be prosecuted at time appeal to circuit court from conviction was pending. | Can a party prosecute an appeal from a judgment while a writ of review to the same court is pending? | Memo 51 - RK.docx | ROSS-003287053-ROSS-003287054 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 16323 | Colburn v. Williams, 36 Ariz. 73 | 30+13 | The judgment was entered January 17, 1913. Motion for new trial was overruled February 21, 1913, on which day defendant gave notice of appeal to this court. Bond for costs on appeal was filed and approved March 4, 1913. April 18, 1913, an order was made extending the time for preparing and filing the reporter's transcript 60 days from that date. June 17, 1913, defendant filed in the office of the clerk of the superior court of Cochise county the reporter's transcript of the evidence as part of the record on appeal. The defendant took no further steps in said appeal, but on September 11, 1913, she sued out a writ of error. The record was caused to be filed in this court October 16, 1913, in support of the writ of error. From the record of the facts it will be seen that the appeal was perfected by giving the notice of appeal and filing the bond, and the court having lost jurisdiction, by reason thereof, lost jurisdiction to entertain the writ of error when, on September 11, 1913, it was attempted to be sued out. The writ of error, therefore, should be dismissed. Lawton v. Jonge, 140 Pac. 209. | Where defendant in the overruling of a new trial gave notice of appeal and a few days later filed a bond for costs, which was approved, the appeal was perfected and the trial court lost jurisdiction and could not entertain an application for a writ of error. | Can a writ of error be prosecuted when a valid subsisting appeal is pending? | 008216.docx | LEGALEAGLE-00129117-LEGALEAGLE-00129118 | Condensed, SA | 0.77 | | 1 | | 1 | 1 |
| 16324 | Stockmen's Co. v. State, 69 Wash.App. 655 | 411+7 | As an agency created by statute, the Appeals Board has only those powers expressly granted or necessarily implied from statute (Anderson, Leech & Morse, Inc. v. Washington State Liquor Control Bd., 89 Wash.2d 688, 575 P.2d 221 [1978]). It is unnecessary to decide whether the court is granted the authority by the APA to review the validity of rules. RCW 34.05.570(2)(a) provides that "[a] rule may be reviewed by petition for declaratory judgment pursuant to the context of the rule-review proceeding under this section." There is no similar express grant of authority to the Appeals Board, nor does any party contend that there is. | As an agency created by statute, forest practices appeals board has only those powers expressly granted or necessarily implied from statute. | What kind of powers do agency appeals have? | Woods and Forest - Memo 38 - RK.docx | ROSS-003296650-ROSS-003296651 | Condensed, SA | 0.71 | | 1 | 0 | 1 | 1 |
| 16325 | Huntington Alloys v. United Steelworkers of Am., 623 F.2d 335 | 25+151 | It is significant, we think, that orally the parties made no mention of any departure from the language of the agreement within a prescribed time and providing that an untimely decision is not "conclusive and binding"; on the parties. Short of some specific agreement that this provision be waived, we think that no waiver of this provision can be found... because it would require the arbitrator to alter its mandate. Thus "[a]rbitration deprives the judiciary of jurisdiction over the particular controversy and the courts have long said that there must be strict adherence to the essential terms of the agreement to arbitrate." Brotherhood of Railway and Steamship Clerks v. Norfolk Southern Ry. Co., 143 F.2d 1015, 1017 [4 Cir. 1943]. | There must be strict adherence to the essential terms of an agreement to arbitrate. | Must there be strict adherence to the essential terms of an agreement to arbitrate? | 007914.docx | LEGALEAGLE-00129193-LEGALEAGLE-00129196 | Condensed, SA | | | 1 | | 1 | 1 |
| 16326 | Farr v. Fort, 130 So. 2d 69 | 30+140.51 | Lastly, we are urged to treat the petition here as an interlocutory appeal under F.S. 59.45, 59 5A, which provides that an appeal may be taken from an interlocutory order... The order appealed from is clearly one that would not authorize the reverse; that is, we are not authorized to treat an improper petition for writ of certiorari as an appeal. Therefore, notwithstanding this court's disposition to lean its decision toward the merits whenever possible, rather than technicalities of procedure, we must hold that in the instant case a lack of jurisdiction prevents us from doing so. | An interlocutory petition for a writ of certiorari may not be treated as an appeal. | Is an interlocutory petition for a writ of certiorari treated as an appeal? | Appeal and error - Memo 58 - RK.docx | ROSS-003311484-ROSS-003311487 | Condensed, SA, Sub | 0.84 | | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16327 | Rice v. Steele, 295 S.W.3d 453 | 30+322 | "An indispensable party is one whose absence prevents the Court from granting complete relief among those already parties." Milligan v. Schenley Distillers, Inc., 584 S.W.2d 751, 753 (Ky.App.1979) (overruled on other grounds). The trial court had already determined James and Bobby were indispensable parties, and it wrongfully ruled on a motion that failed to serve necessary parties. Hence, it is necessary to vacate the partial summary judgment in favor of Sonia with directions to join the necessary parties in any further motion for summary judgment on the limited issue of restitution relief for funeral expenses. All other issues of the motion for summary judgment have been dismissed per our analysis above. | An "indispensable party" is one whose absence prevents the Court of Appeals from granting complete relief among those already parties. | What constitutes an indispensable party? | 008275.docx | LEGALEASE-00129585-LEGALEASE-00129586 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 16328 | People v. Kerestes, 38 Ill. App. 3d 681 | 67+28(1) | Supreme Court Rule 402, which pertains to pleas of guilty, requires that the trial court ascertain that a defendant understands the nature of the charge to which he is pleadingguilty and to determine that there is a factual basis for the plea(Ill. Rev.Stat., 1975, ch. 110A, s 402). It appears from the record that defendant's understanding of Count V to which we have referred and the State's factual basis therefor rested on the charge of burglary with intent to commit theft, while the language of the indictment charged burglary with intent to commit criminal damage to property. Defendant actually pleaded guilty to a crime equivalent to, but different from the crime charged, and the evidence showed that he did commit such crime. The issue appears to be rather insignificant in itself, particularly in the context of the four other guilty pleas to similar burglary charges which are not under attack. The element of intent is an essential part of the crime of burglary which must be properly alleged and proved. The general term 'burglary' covers several different crimes, each one an unauthorized breaking and entering with intent to perform a different felony or theft. | Element of intent is an essential part of the crime of burglary which must be properly alleged and proved. | Is intent an essential part of burglary? | Burglary - Memo 63 - RK.docx | ROSS-003300697-ROSS-003300698 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16329 | Crooks v. Maynard, 112 Idaho 312 | 79+65 | However, the right of the district court clerk to exercise discretion in hiring deputies must be balanced against the constitutional mandate of a unified and integrated judicial system. To further the orderly administration of the courts, judges must be able to set"and require the clerks to follow"hiring guidelines for deputy clerks performing judicial functions. For example, the judge can require the clerk to hire only people who have certain minimum educational or experience qualifications. Of course, the best policy is for the clerks and judges to work closely together and cooperate in the hiring process to ensure efficiency and effectiveness in the operation of the district courts and county auditor and recorder offices. | District judge in exercise of supervisory power over clerical activities of district court clerk may set guidelines for hiring deputy clerks that perform judicial functions, control assignment of persons hired by clerk, and refuse assignment of personnel considered unacceptable for judicial function. Act March 3, 1863, 12 Stat. 808; Const. Art. 2, S 1; Art. 5, SS 1 et seq., 16; Art. 18, S 6; I.C. SS 1-1002, 31-3107. | Can a judge set guidelines for hiring deputy clerks? | 013367.docx | LEGALEASE-00129686-LEGALEASE-00129687 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 16330 | Sublett v. Dist. Sch. Bd. of Sumter Cty., 617 So. 2d 374 | 141E+421 | A county school board is a state agency falling within Chapter 120 for purposes of quasi-judicial administrative orders. Canney v. Board of Public Instruction of Alachua County, 222 So.2d 803, 804 (Fla. 1st DCA 1969). Sublett had a contractual property interest in his job because he could only be terminated for just cause. E.g., McCracken v. City of Chinook, 652 F.Supp. 1300 (D. Montana 1987). Under Florida law, a school board's decision to terminate an employee is one affecting the employee's substantial interests; therefore, the employee is entitled to a formal hearing under section 120.57(1) if material issues of fact are in dispute.See French v. School Board of Polk County, 568 So.2d 497 (Fla. 2d DCA 1990); Taylor v. School Board of Seminole County, 538 So.2d 150 (Fla. 5th DCA 1989). Certainly there were material issues of fact concerning whether there was just cause to discharge Sublett. Under these circumstances, appellee is not correct that appellant got "the process he was due". We conclude Sublett is entitled to relief and that the appropriate remedy based on the pleadings is to enter judgment in favor of Sublett ordering the School Board to afford Sublett a formal hearing before a hearing officer pursuant to Chapter 120 to determine whether he is subject to discharge from employment. | School employee had contractual property interest in his job in maintenance department because he could only be terminated for just cause. | Does a teacher or a contractual employee who can only be terminated for cause have a contractual property interest in his job? | 016980.docx | LEGALEASE-00129277-LEGALEASE-00129278 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 16331 | State v. Hackley, Hume & Joyce, 124 La. 854 | 302+8(1) | A pleader is not required to allege the evidentiary or intermediate facts; but he must at least allege the ultimate facts. Otherwise how can his adversary know what facts he must come prepared to disprove. In the instant case, the evidentiary or intermediate facts are all the circumstances from which the state seeks to draw the conclusion that the defendants and their several predecessors in title acquired the lands without valuable consideration, or else with notice of the alleged fraud. The ultimate fact is their having acquired the lands without valuable consideration, or else with notice of alleged fraud. This ultimate fact needed to be stated, because until it was stated there was nothing to show that the said titles, constituting the alleged chain of title of defendants, were not good. 'Ultimate facts of necessity are conclusions drawn from intermediate and evidentiary facts; but legal conclusions cannot be pleaded as ultimate facts.' 31 Cyc. 70. | Ultimate facts of necessity are conclusions from intermediate and evidentiary facts; but legal conclusions cannot be pleaded as ultimate facts. | "Are ultimate facts of necessity, conclusions drawn from intermediate and evidentiary facts?" | Pleading - Memo 214 - RMM.docx | ROSS-003287365-ROSS-003287366 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 16332 | State v. Hackley, Hume & Joyce, 124 La. 854 | 302+228.19 | The said allegation of the defendants being holders in bad faith, or in other words, of their title being vicious or defective and their knowing it, being nothing more than the allegation of a conclusion of law, is no allegation at all, since the allegation of a conclusion of law is no allegation. It "does not aid a pleading." 31 Cyc. 51. "Facts, not conclusions of law, must be alleged in pleadings." Id.An exception of no cause of action admits the well-pleaded facts, not the conclusions of law, contained in the petition. 6 Eng. Pl. & Proc. 336; 31 Cyc. 333; Fertilizer Co. v. Wolf, 48 La. Ann. 631, 19 South. 558; State ex rel. v. Judge, 50 La. Ann. 266-273, 23 South. 839. | Exception of no cause of action admits well-pleaded facts, but not conclusions of law. | Does an exception of no cause of action admit well-pleaded facts? | 023105.docx | LEGALEASE-00129191-LEGALEASE-00129192 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 16333 | Morley v. Wilson, 261 Mass. 269 | 302+8(3) | The general allegation of arbitrary and capricious conduct states merely a legal conclusion. Silberschein v. United States, 266 U. S. 221, 225, 45 S. Ct. 69, 69 L. Ed. 256. | Allegation of arbitrary and capricious conduct states legal conclusion. | Does a general allegation of arbitrary and capricious conduct state a mere legal conclusion? | 023112.docx | LEGALEASE-00129237-LEGALEASE-00129238 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16334 | Ethicon Endo-Surgery v. Gillies, 343 S.W.3d 205 | 307A+501 | As noted above, appellee informed the trial court that she had dropped her manufacturing, and thus, assembly defect claims. Appellee also non-suited her design defect claims during a jury recess when her counsel stated, "Plaintiff"s going to nonsuit its design defect claim." The right to a non-suit has a long and well-established tradition in Texas jurisprudence. Rule 162 provides that a non-suit may be taken until all the evidence has been presented. See Tex.R. Civ. P. 162. To take a non-suit the party can file either a written motion to dismiss or make an oral announcement of the non-suit in open court. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). The movant may choose to take a non-suit as to some claims and parties without non-suiting the rest of the claims or parties. See Tex.R. Civ. P. 162, 163. See also Cook v. Nacogdoches Anesthesia Grp. LLP, 167 S.W.3d 476, 482 (Tex.App.-Tyler 2005, no pet.).The party requesting a non-suit has an absolute right to a non-suit at the moment the motion is filed. Greenberg, 640 S.W.2d at 872; McGowen v. Huang, 120 S.W.3d 452, 461 (Tex.App.-Texarkana 2003, pet. denied). The granting of a non-suit is merely ministerial and gives the trial court no discretion. Greenberg, 640 S.W.2d at 872; McGowen, 120 S.W.3d at 462. | The party requesting a non-suit has an absolute right to a non-suit at the moment the motion is filed. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a plaintiff generally have an absolute right to nonsuit at the moment a motion is filed with a clerk? | 024439.docx | LEGALEASE-00129533-LEGALEASE-00129534 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 16335 | Greenberg v. Brookshire, 640 S.W.2d 870 | 307A+501 | "The right to take a non-suit is governed by Rule 164." Corder v. Corder, 189 S.W.2d 100, 101 (Tex.Civ.App."El Paso 1945, writ ref'd). The rule is plain. Kidd v. McCracken, 105 Tex. 383, 150 S.W. 885 (1912). Until 1975, Rule 164 represented a verbatim adoption of what had been Art. 2182 and its predecessors dating back to 1853. 1853 Tex.Gen.Laws, ch. 11, " 99, at 19; 3 H. GAMMEL, LAWS OF TEXAS 1303 (1898). See Historical Note, Tex.R.Civ.Pro.Ann. Rule 164 (Vernon 1979). In Hoodless v. Winter, 80 Tex. 638, 16 S.W. 427 (1891), this Court construed a predecessor to Rule 164, stating:The right of a plaintiff to take a non-suit upon his own cause of action was considered of sufficient importance by the legislature to be given express recognition.... [I]t is important that the substance, and not the shadow alone, of the right shall be preserved.... It is only when the defendant, by a counter-claim, seeks some "affirmative relief," that the right of the plaintiff to discontinue the entire cause is forbidden.... The defendant must not only pray for affirmative relief, but he must state facts showing that he has a cause of action....80 Tex. at 641, 16 S.W. at 428. The 1975 amendment to Rule 164 (effective January 1, 1976) did nothing but change the time when the plaintiff could take a non-suit. Rule 164 has never and does not now prescribe any procedure for the taking of a non-suit. Moreover, Rule 164 is "construed liberally in favor of the right" to non-suit. Smith v. Columbian Carbon Co., 145 Tex. 478, 198 S.W.2d 727 (1947); Corder v. Corder, supra. | Rule governing right to take nonsuit is construed liberally in favor of right to nonsuit. Vernon's Ann.Rules Civ.Proc., Rules 164, 164 note. | Should the nonsuit rule be construed liberally in favor of the right to take a nonsuit? | 024711.docx | LEGALEASE-00129256-LEGALEASE-00129258 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 16336 | Smith v. Columbian Carbon Co., 145 Tex. 478 | 307A+501 | So long as the rule recognizes the right of a plaintiff to take a nonsuit we see no good reason why it should be given strict or technical application. In fact, it is generally held that the rule is to be construed liberally in favor of the right granted. 15 Tex.Jur. 237; 27 C.J.S., Dismissal and Nonsuit, s 8, p. 161; Vincent v. Bell, Tex.Civ.App., 22 S.W.2d 753 (writ dismissed); Houston & T. C. R. Co. v. McDade, Tex.Civ.App., 295 S.W. 318 (writ refused); Kelly v. National Bank of Denison, Tex.Civ.App., 233 S.W. 782 (writ dismissed); Clement v. Producers' Refining Co., Tex.Civ.App., 270 S.W. 206; Weil v. Abeel, Tex.Civ.App., 206 S.W. 735. | Rule giving plaintiff right to take a nonsuit should be liberally construed. Rules of Civil Procedure, rule 164. | Should the rule recognizing the right of a plaintiff to take a nonsuit be liberally construed? | Pre-trial Procedure - Memo # 1051 - C - KG.docx | ROSS-003287656-ROSS-003287657 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 16337 | Bedgood v. Stevens, 200 Ga. 244 | 388+14 | After a plea of set-off or otherwise shall have been filed, the plaintiff may not dismiss his action so as to interfere with such plea, unless by leave to the court on sufficient cause shown, and on terms prescribed by the court, Code, " 3-510. As shown by the statement of facts, the only affirmative relief sought by the defendant was the appointment of a receiver in the event that the court granted a temporary injunction, and an injunction restraining the plaintiff from interfering with the defendant's right to gather the crops he had produced. In Nicholson v. Cook, 76 Ga. 24, it was held: "Where two parties entered into a written contract, whereby one of them was to let the other have fifty acres of land, and was to furnish sufficient stock to cultivate it, and the other was to furnish the labor, and they were to divide the crops, if the former failed to furnish the necessary plow-stock and took charge of the crops, in the absence of any allegations of insolvency, there was an ample remedy at law, and a resort to equity was unnecessary." The same principle was applied in Casey v. McDaniel, 154 Ga. 181, 113 S.E. 804, where it was held that the court did not err in refusing an injunction. Unquestionably the court considered this principle of law in determining whether sufficient cause had been shown for the dismissal of the entire case. "As between the parties an order of dismissal, when signed by the judge, is immediately effective." Hayles v. Southern Ry., D.C.S.D.Ga., 25 F.2d 758(3). A motion to dismiss a pending cause should be construed as a motion to strike the case from the docket. Brightwell v. Brightwell, 161 Ga. 89, 129 S.E. 658. The judgment in this case, which was granted on August 25, 1945, and was not excepted to, dismissed the entire case and was immediately effective, and the subsequent proceedings were a complete nullity. Cf. Davenport v. Hardman, 184 Ga. 518, 192 S.E. 11, The court, therefore, did not err in refusing to allow the proffered | A motion to dismiss a pending cause should be construed as a motion to strike the case from the docket. | Can a motion to dismiss construed as a motion to strike a case from a docket? | 026237.docx | LEGALEASE-00129216-LEGALEASE-00129217 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16338 | Wright v. Steers, 179 N.E.2d 721 | 371+2001 | It is contended that although the Act in question calls the tax an "excise" and "license" tax, at no place therein does it define the use or privilege for which the tax is levied. It does not fix the purpose for which the proceeds from the tax shall be applied. It is further pointed out that the amount of tax in each instance is based upon the value of the property, and not related to the extent of the use made. It is true that the nature of the tax must be determined by its operation and incidence, rather than by its title or designation made by the legislature. In other words, the legislature may not change a factual situation by giving it a different name or designation. However, none of these factors are decisive of the question here. 51 Am.Jur., Taxation, " 28, pp. 56, 57; Miles v. Dept. of Treasury, supra; Flint v. Stone Tracy Co. (1911), 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389; Nicol v. Ames (1899), 173 U.S. 509, 19 S.Ct. 522, 43 L.Ed. 786. | The nature of tax must be determined by its operation and incidence, rather than by its title or designation made by the legislature. | How is the nature of a tax determined? | 044786.docx | LEGALEASE-00129537-LEGALEASE-00129538 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 16339 | InterGen N.V. v. Grina, 344 F.3d 134 | 25T+141 | We begin with first principles: "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). We have interpreted this precept to mean that "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims." McCarthy v. Azure, 22 F.3d 351, 354"55 (1st Cir.1994) (emphasis in original). The upshot is that courts should be extremely cautious about forcing arbitration in "situations in which the identity of the parties who have agreed to arbitrate is unclear." Id. at 355; accord Bel"Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir.1999). | Courts should be extremely cautious about forcing arbitration in situations in which identity of parties who have agreed to arbitrate is unclear. | When should the courts be cautious about forcing arbitration? | 007359.docx | LEGALEASE-00130216-LEGALEASE-00130217 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 16340 | United States v. Walgreen Co., 846 F.3d 879 | 170A+636 | In addition to satisfying the False Claims Act's requirements, qui tam plaintiffs must meet the heightened pleading standards of Civil Rule 9(b). U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 503 (6th Cir. 2007). In all averments of "fraud or mistake," the plaintiff must state with "particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The identification of at least one false claim with specificity is "an indispensable element of a complaint that alleges a [False Claims Act] violation in compliance with Rule 9(b)." Bledsoe, 501 F.3d at 504. Adherence to this requirement not only respects Civil Rule 9(b), but it also helps in determining whether the public-disclosure bar applies. | In addition to satisfying the False Claims Act's requirements, qui tam plaintiffs must meet the heightened pleading standards of the rule stating that, in all averments of fraud or mistake, the plaintiff must state with particularity the circumstances constituting fraud or mistake. 31 U.S.C.A. S 3729; Fed. R. Civ. P. 9(b). | Should circumstances constituting mistake be stated with particularity? | 023158.docx | LEGALEASE-00129911-LEGALEASE-00129912 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 16341 | Huth v. Wisconsin Pub. Serv. Corp., 82 Wis. 2d 102 | 307A+502 | The issue here is whether the condemnor (appellant) who appealed to the circuit court from the condemnation commission's award has the right to abandon or discontinue the appeal over the objection of the condemnee. The trial court denied appellant's motion to abandon the appeal. The appeal from the commission's award was taken April 12, 1969. The motion for leave to abandon the appeal was filed May 29, 1973, and was denied August 9, 1973. Appellant's motion was in the nature of a motion for a voluntary nonsuit.At common law and early under the code the right to discontinue an action was absolute. Bertschy v. McLeod, 32 Wis. 205 (1873). However, the rule now is that leave to discontinue may be denied in the court's discretion, if the rights of the opposing party will be substantially prejudiced by discontinuance. | At common law and early under the code, the right to discontinue an action was absolute; however, the rule now is that leave to discontinue may be denied in the court's discretion, if the rights of the opposing party will be substantially prejudiced by discontinuance. | Is the right to discontinue an action absolute under common law? | 026140.docx | LEGALEASE-00129905-LEGALEASE-00129906 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 16342 | Griffin v. Miles, 553 S.W.2d 933 | 307A+501 | It is well settled that the right of the plaintiff to take a voluntary nonsuit is absolute and cannot be denied. State v. Gary, 359 S.W.2d 456, 458-59 (Tex.Sup.1962); Brooks v. O'Connor, 39 S.W.2d 22, 24 (Tex.Sup.1931); Chicago, R. I. & P. Ry. v. Southern Pacific Co., 458 S.W.2d 234, 235 (Tex.Civ.App. Houston (1st Dist.) 1970, writ ref'd n. r. e.). This right, however, is not without limitation; for example, where the right of an adverse party to be heard on his claim for affirmative relief is prejudiced. Tex.R.Civ.P. 164 (as amended to permit taking a nonsuit up to time plaintiff rests his case). | Right of plaintiff to take voluntary nonsuit is absolute and cannot be denied; however, this right is not without limitation, e. g., where right of adverse party to be heard on his claim for affirmative relief is prejudiced. Rules of Civil Procedure, rule 164. | Is the right of a plaintiff to take a voluntary nonsuit absolute and cannot be denied? | 026142.docx | LEGALEASE-00129925-LEGALEASE-00129926 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 16343 | Lanco v. Dir., Div. of Taxation, 21 N.J. Tax 200 | 371+2001 | Nevertheless, if physical presence were no longer a necessary element for nexus, retroactive application of a rule permitting a finding of nexus without physical presence would appear problematical. Regulations interpreting the terms of a tax statute do not by their own force impose taxes, and by their nature they are ordinarily retroactive to the statute's effective date. Sharps, Pixley, Inc. v. Director, Div. of Taxation, 16 N.J.Tax 626, 640 (Tax 1997); General Bldg. Prods. Corp. v. Director, Div. of Taxation, 14 N.J.Tax 232, 247 (Tax 1994) aff'd, 15 N.J.Tax 213 (App.Div.1995). Where, however, a tax regulation is premised on a perceived change in federal constitutional law, the same considerations do not necessarily apply. New Jersey has settled precedent, antedating Quill and Geoffrey, that bases nexus on physical presence. Avco Fin. Servs. Consumer Disc. Co. One, Inc. v. Director, Div. of Taxation, 100 N.J. 27, 38, 494 A.2d 788 (1985) (finding "substantial physical presence"); Chemical Realty Corp. v. Director, Div. of Taxation, 5 N.J.Tax 581, 612 (Tax 1983), aff'd 6 N.J.Tax 448 (App.Div.1984). A finding of nexus without physical presence would clearly reflect a change in applicable law. In these circumstances, this court could reasonably conclude that the novelty of the change and the reliance interests of taxpayers under the former interpretation justify confining the new rule to application only after the effective date of the amendment to the regulation. Cf. State Troopers Fraternal Ass'n of N.J., Inc. v. State, 149 N.J. 38, 692 A.2d 519 (1997). | Regulations interpreting the terms of a tax statute do not by their own force impose taxes. | "Do regulations interpreting the terms of a tax statute by their own force, impose taxes?" | 044784.docx | LEGALEASE-00130162-LEGALEASE-00130163 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 859 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16044 | Camping Const Co v. Dist. Council of Iron Workers, 915 F.2d 1333 | 231H+154(9) | An interstate Distributor makes clear, the pre-Defense parties contract exception is limited to questions of arbitration and does not apply to questions of termination. When a collective-bargaining agreement contains the usual broad arbitration clause, any dispute over contract termination is arbitrable, regardless of whether a prior contract's involved. The court's role is to decide whether the parties referred to in interstate Distributor. If so, the dispute is arbitrable, and the arbitrator rather than the court must examine the facts, construe the termination provision of the contract, and decide whether the contract has in fact been terminated. The threshold. Usually, the arbitration clauses are broad enough to cover disputes over termination. E.g., Interstate Distributor, 832 F.2d at 151; George Day Const. Co. v. United Bhd. of Carpenters & Joiners, Local 354, 722 F.2d 1471 (9th Cir.) 1984). An agreement to arbitrate "any differences that may arise regarding the meaning and enforcement of this Agreement," or any standard broad arbitration clause, such as "any dispute arising out of this Agreement," ordinarily requires us to hold that the parties have provided for arbitration of disputes regarding termination and repudiation as well, except where the pre-Defense exception for prima contract applies. | Disputes over termination of prebase collective bargaining agreement was arbitrable under agreement to arbitrate any differences that may arise regarding meaning and enforcement of agreement. | With broad arbitration clauses cause a court to hold that the parties have provided for arbitration of disputes regarding termination? | 007397.docx | LEGALEASE-00131316 LEGALEASE-00131355 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 | 1 |
| 16045 | Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 | 25T+143 | Next, potential complexity should not suffice to ward off arbitration. We might well have some doubt that even the courts following American Safety subscribe to the view that antitrust matters are inherently insusceptible to resolution by arbitration, as these same courts have agreed that an undertaking to arbitrate antitrust claims entered into after the dispute arises is acceptable. See, e.g., Cobb v. Lewis, 488 F.2d 41, 48 (5th Cir. 1974); Coenen v. R. W. Pressprich & Co., 453 F.2d 1209, 1215 (CA2), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 317 (1972); Cobb v. Lewis, 488 F.2d 41, 48 (CA5 1974). See also, in the present cases, 723 F.2d, at 162, n. 12 (Denying on the same basis). And the vertical restraints with most frequently give birth to antitrust claims covered by arbitration agreement will be often associated the monotonous proceedings that have given antitrust litigation an image of intractability. In any event, adaptability and access to expertise are hallmarks of arbitration. The anticipated subject matter of the dispute may be taken into account when the arbitrators are appointed, and arbitral rules typically provide for participation of experts either employed by the parties or appointed by the tribunal. Moreover, it is often a judgment that streamlined proceedings and expeditious results will best serve their needs that causes parties to agree to arbitrate their disputes; it is typical of a desire to keep the effort and expense required to resolve a dispute within manageable bounds that prompts them mutually to forgo access to judicial remedies. In sum, the factor of potential complexity alone does not persuade us that an antitrust dispute could not properly handle an antitrust matter. | Potential complexity of antitrust matters does not suffice to ward off arbitration nor does arbitration panel pose too great a danger of innate hostility to constraints on business conduct that antitrust law imposes. (15 U.S.C.A. § 1 et seq) | Can potential complexities of antitrust matters suffice to ward off arbitration? | 007421.docx | LEGALEASE-00131393 LEGALEASE-00131395 | Condensed, SA, Sub 0.86 | | | | | 1 | 1 |
| 16046 | State v. Hardy, 156 So. 3d 67+2 785 | 67+2 | However, to establish the crime of simple burglary, it is not required that an actual theft or a taking occur. State v. Jones, 97 2593, p. 8 (La.App. 4 Cir. 9/17/9), 744 So.2d 165, 169 ("The State need not prove that a theft occurred; it is only that theft was intended."). Additionally, the use of tools is not necessary to commit simple burglary. See State v. Holmes, 08-0168, p. 6 (La.App. 4 Cir. 12/17/08,) 5 So.3d 42 (holding that the use of tools was not a requirement of the crime of attempted simple burglary" and finding that the evidence was sufficient to support the jury's conviction of the defendant for attempted simple burglary even though defendant had no crime lab was called to the scene, where two witnesses identified the defendant as the perpetrator of the crime, the crime itself, see also, State v. Burrell, 2012 T-5, p. 8 (La.App. 5 Cir. 11/27/12), 105 So.3d 1046, 1053 (there is no requirement that the state produce physical evidence in order to sustain a conviction). Thus, the fact that no tools were found on Hardy or in his possession when he was apprehended, and the fact that Belvedere could not state whether his iron and copper tubing found in Hardy's possession was removed from the laundry room apartment building, and whether the evidence shows that Hardy intended unauthorized entry into the building, establishes Hardy's intent to commit a theft or felony. Hardy's argument in this regard is therefore without merit. | To establish the crime of simple burglary, it is not required that an actual theft or a taking occur. LSA-R.S. 14:62. | Does simple burglary require theft or taking? | 012888.docx | LEGALEASE-00131292 LEGALEASE-00131293 | Condensed, SA 0.92 | | 1 | 0 | 0 | 1 | 1 |
| 16047 | Hood v. State, 860 S.W.2d 97+411(1) 931 | 97+411(1) | The State next contends that Hood's control and management of the stolen property, as evidenced by his involvement in cutting items taken in the burglaries, demonstrates that he had exclusive personal possession of the items, soon after the burglary occurred. When there is independent evidence of a burglary, the unexplained possession of recently stolen property can constitute sufficient evidence of guilt to sustain a conviction. Chavez v. State, 843 S.W.2d 9, 22 (Tex.App.—Dallas 1992, no pet.). The Garza opinion does not require that the independent evidence demonstrate that the defendant committed the burglary when the defendant is found in recent, unexplained possession of property taken in the burglary. | When there is independent evidence of burglary, unexplained possession of recently stolen property can constitute sufficient evidence of guilt to support conviction. | When there is independent evidence of burglary, unexplained possession. Is possession of goods evidence of guilt? | 013144.docx | LEGALEASE-00131315 LEGALEASE-00131316 | SA, Sub 0.76 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 16648 | Armentrout v. People, 864 P.2d 576 | 67+83(5) | Under the second degree burglary statute, a person commits second degree burglary if he knowingly breaks an entrance into, or enters into, or (1) remains unlawfully in a building or occupied structure [18 VT 2015.11]. After we construe the "any" that statutes refer to to alternative ways of committing the same crime, it is apparent that proof of a breaking is not essential. As in the case of first degree burglary, a defendant may be convicted of second degree burglary simply by entering or remaining unlawfully in the building or occupied structure. Therefore, second degree burglary is a lesser included offense of first degree burglary, even though one may commit the crime of second degree burglary in additional ways. | Words "or" in statute providing that person commits second degree burglary if he knowingly breaks an entrance into, "or" enters, "or" remains unlawfully in building or occupied structure, should be construed in the disjunctive to refer to alternative ways of committing same crime. West's C.R.S.A. § 18-4-203(1). | What is burglary in the second degree? | 03188.docx | LEGAL0148 00131327 – LEGAL0148 00131328 | Condensed_SA, Sub 0.57 | | 0 | 1 | 1 | 1 | 0.079 |
| 16649 | State v. Gatewood, 169 Kan. 679 | 67+9(1) | We previously indicated the outside screen door entrance to this porch was unlocked. Appellant was charged with burglary for forcibly pulling open a closed outer door. This court early held proof of that precise charge is sufficient to establish the offense and that it was not necessary there should be any additional breaking to constitute burglary. State v. Moore, 63 Kan. 801, 64 P. 609. Pushing open a closed door constitutes an actual breaking and the opening of a closed outer door with felonious intent is sufficient to constitute burglary—a breaking. State v. Moore, supra, 63 Kan. at pages 806, 807, 64 P. 609, and cases there cited. State v. Inscho, 63 Kan. 116, 120, 64 P. 235. This principle is in harmony with well established doctrine 9 Am. Jur., Burglary, '*8 12, sec[.] 12 C.J.S., Burglary, '*8b 2, 3 Wharton's Criminal Law, 12th ed. '* 973, and annos 23 A.L.R. 112, 118. | Pushing open closed door of dwelling house constitutes actual breaking into it, and opening of closed outer door moved with felonious intent is sufficient to constitute "burglarious breaking." G.S.1935, 21-513. | What constitutes burglarious breaking? | 03292.docx | LEGAL0148 00131415 – LEGAL0148 00131416 | Condensed_SA, Sub 0.76 | | 0 | 1 | 1 | 1 | 1 |
| 16650 | Bates v. State, 582 S.W.2d 210+437 34 | 210+437 | This Court, speaking through Judge Oliver, said in Preston v. State, 530 S.W.2d 910 ('*1975) [We conclude and hold that the law of this State now is that larceny and attempt to commit larceny are not essential elements of burglary and, hence, are not lesser included offenses of that crime. | Larceny and attempt to commit larceny are not essential elements of burglary and, hence, are not lesser included offenses of that crime. | Is larceny an element of burglary? | Burglary - Memo 88 JR.docx | ROSS 000318 062-ROSS-000316803 | Condensed_SA | 0.54 | 0 | 1 | 0 | 1 | |
| 16651 | People v. Owens, 164 Misc. 2d 663 | 67+41(9) | It is well established that for the charge of possession of burglar's tools the element of intent to use a tool unlawfully may be established by circumstantial evidence. People v. Borrero, 26 N.Y.2d 430, 434, 311 N.Y.S.2d 475, 259 N.E.2d 902 (1970); People v. Smith, 23 N.Y.2d 955, 298 N.Y.S.2d 792, 246 N.E.2d 519 (1969); People v. Diaz, 23 N.Y.2d 821, 297 N.Y.S.2d 611, 244 N.E.2d 876 (1969). There is no requirement that the tools actually be observed being used in, or upon, either the premises or the act of committing a larceny. See, People v. Smith, supra; People v. Diaz, supra | Intent to use burglar's tool unlawfully may be established by circumstantial evidence. McKinney's Penal Law § 140.35. | Can intent be proved by circumstantial evidence for the charge of possession of burglars tools? | Burglary - Memo 89 JR.docx | ROSS 000327750-ROSS-000317751 | Condensed_SA | 0.8 | 0 | 1 | 0 | 1 | |
| 16652 | McReynolds v. Hartley, 251 Ill. App. 3d 1088 | 79+6 | Also, a deputy clerk has no independent authority as deputy and may only perform duties under the direction of the clerk of the circuit court. (Ill. Rev. Stat. 1977, ch. 25, par. 13 [*now, 705 ILCS 105/13]); Daggett v. Ford Motor Co. (Apr. 3, 1977), 184 Ill. App. 561.) Here, the hours of the clerk's office were properly set by rule and the deputy clerk refused to accept the petition for filing after 4:30 p.m. Under these circumstances, we cannot say that the deputy clerk should have accepted the petition for filing or acted improperly in refusing to do so. | Deputy clerk has no independent authority as deputy and may only perform duties under direction of clerk of circuit court. | Does a deputy clerk have independent authority? | 03515.docx | LEGAL0148 00131270 – LEGAL0148 00131271 | Condensed_SA, Sub 0.76 | | 0 | 1 | 1 | 1 | |
| 16653 | Elstop v. Commissioners of Boundary Cty., 132 Idaho 345 | 79+6 | Adhering to our reasoning in Cook, we reject the Commissioners' argument. The filling of a felony vacancy in the office of district court is clerked by the clerk of the district court as a judicial officer. Under art. 5 of the Idaho Constitution. Essay, as a judicial officer, is not governed by an order of the Commissioners to assist him in filing positions. The peremptory writ shall issue concurrently with this opinion. | Constitutional provision that clerk of district court shall be empowered to county commissioners to appoint deputy and clerical assistants who shall receive compensation fixed by commissioners does not authorize commissioners to order hiring policies to govern clerk, but authorizes clerk to hire deputy clerks. Const. Art. 18, § 6. | Is a clerk of the district court governed by the county commissioners' order? | 03559.docx | LEGAL0148 00131276 – LEGAL0148 00131277 | Condensed_SA, Sub 0.2 | | 0 | 1 | 1 | 1 | |
| 16654 | Blankenship v. Kerr[e]ma[n] Cty., 123 Idaho 101 | 79+66 | The administrative judge's duty to supervise the clerks and bailiffs in their performance of judicial functions is not discussed at I.C.T. § 1-907. The clerk of the district court is a judicial officer while performing judicial clerical duties for the court. Cook v. [*]Massey, 35 Idaho 132, 204 P. 1088 (1922). Idaho 132, 201 P.24 201 (1987). Crosby v. Idaho 112 Idaho 132, 730 P.2d 281 (1987). While performing clerical judicial functions for the court, the clerk and the bailiffs are subject to the control and direction of the administrative court Judge. Id., 112 Idaho at 117, 730 P.2d at 286. The destruction of evidence is a clerical function of the court and must be performed by order of the administrative court judge. I.C.A.R. 37. | Clerk of court is judicial officer while performing judicial clerical duties for court. I.C. § 1-907. | Is a clerk of the district court a judicial officer while performing judicial clerical duties for the court? | 03560.docx | LEGAL0148 00131278 – LEGAL0148 00131279 | Condensed_SA, Sub 0.86 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16355 | Bradley v. Graham, 250 Miss. 244 | 307A+501 | The right of a complainant to take without prejudice a voluntary dismissal, said to have been an original right in equity, is now placed beyond all question by our statute. Sec. 1538, Miss.Code 1942; Griffith, Miss. Chancery Practice, 2d ed. 1950, Sec. 534. The appellant dismissed the defendants, appellees here, from the chancery suit to modify. The father is not a party to this suit. Thus the decision here is confined to a situation where a parent has invoked the aid of a court other than that which made the original custodial decree awarding her custody. The defendants were not parties to the divorce suit, being collateral relatives whose aid was doubtless enlisted by the court in an effort to promote the welfare of the child. This is the only claim of right they can project as to their custody of the child as against a natural parent of good moral character, reasonably able to provide for the child. Moore v. Christian, 56 Miss. 408; Bassett v. Sims, et al., 220 Miss. 210, 70 So.2d 530. The appellees not being parties to the original suit, the rule announced in Neal, et al. v. Neal, 238 Miss. 572, 119 So.2d 273, applies here and distinguishes this case from Hinman v. Craft, 204 Miss. 568, 37 So.2d 770, relied upon by appellee. Neal, et al. v. Neal, supra, states, among other things, as follows: "The general rule is well summarized in 25 Am.Jur., Habeas Corpus, Section 82: "The decree rendered in a divorce suit, awarding custody of a child, must be recognized and given effect in a subsequent habeas corpus proceeding between the same parties, involving the right to the custody of that child, but such decree is not absolutely controlling in the subsequent proceeding, since the court may disregard it upon proof of circumstances and disregard it upon proof of circumstances and conditions arising since the date of its rendition which shows that the party awarded custody thereby is unfit to exercise such right or has forfeited it. If, since the decree granting a divorce and | Complainant has right to take without prejudice a voluntary dismissal. Code 1942, S 1538. | Does a complainant have a right to take without prejudice a voluntary dismissal? | 026093.docx | LEGALEASE-00131085-LEGALEASE-00131086 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 16356 | Progressive Ins. Companies v. Hartman, 788 S.W.2d 424 | 307A+501 | Kinser argues that relators' petition for interpleader admits that there are conflicting claims. Kinser maintains that the very nature of an interpleader establishes the existence of adverse claims for affirmative relief and that the defendants can obtain relief without having to file any further pleadings. Kinser cites no authority for these propositions. The existence of adverse claims is not sufficient to deprive a plaintiff of its right to nonsuit. Greenberg and rule 162 require that the adverse claims actually be filed and pending at the time plaintiff files its motion to nonsuit. Furthermore, rule 43 of the Texas Rules of Civil Procedure expressly requires a defendant to interplead its claims. Tex.R.Civ.P. 43 ("Persons having claims against the plaintiff may be joined as defendants and required to interplead ... their claims....").A defendant cannot force a plaintiff to prosecute a suit against the plaintiff's own best interests. See Ex parte Helle, 477 S.W.2d at 384. We decline to treat an interpleader differently from other petitions. | Defendant cannot force plaintiff to prosecute suit against plaintiff's own best interests. | Can a defendant force a plaintiff to prosecute a suit against a plaintiff's own best interests? | Pretrial Procedure - Memo # 1266 - C - PC.docx | ROSS-003300967-ROSS-003300968 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16357 | Crystal Lake Golf Course v. Kalin, 252 So. 2d 379 | 307A+746 | We cannot condone counsel's failure to comply with an order of the court for a pretrial conference; but neither can we approve the entry of a final judgment for such failure where the record is devoid of any evidence reflecting a persistent refusal to attend or a wilful disregard of an order of court. The pretrial conference was designed to expedite the disposition of litigation and not to serve as a substitute for a trial on the merits. The failure of counsel to attend while subjecting him to judicial sanctions ought not in this case serve as a predicate upon which to punish the litigant. (Beasley v. Girten, supra). The record is also devoid of any response by the plaintiff to or refutation of defendant's sworn motion and affidavit in support of his motion to vacate. | Failure of defendant's counsel to attend pretrial conference, while possibly subjecting him to judicial sanctions, should not serve as a predicate upon which to punish defendant where record was devoid of any evidence reflecting a persistent refusal to attend or a wilful disregard of an order of the court, and where record was also devoid of any response by plaintiff to or refutation of defendant's sworn motion and affidavit in support of his motion to vacate. 30 & 31 F.S.A. Rules of Civil Procedure, rules 1.200, 1.540(b). | What is a pretrial conference designed to do? | Pretrial Procedure - Memo # 1469 - C - SK.docx | ROSS-003314729-ROSS-003314730 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 16358 | Maudsley v. Pederson, 676 N.W.2d 8 | 307A+747.1 | Here, both parties and the district court acknowledge that although the motion was labeled as a "motion in limine," it was, in fact, a dispositive motion to dismiss, and it did not comply with the notice requirements of either Minn. R. Gen. Pract. 115.03 or the court's pretrial/settlement conference order. But nothing in Minn.Stat. " 145.682 prevents the district court from hearing an untimely motion. And whether or not to enforce its own scheduling order is clearly within the district court's discretion. Moreover, in the comments to Minn. R. Gen. Pract. 115, the advisory task force explained that "[t]he time limits of [the rules of general practice] may be readily modified by the court." Minn. R. Gen. Pract. 115.03, 1997 advisory comm. note. Accordingly, we conclude that the district court did not err by hearing Pederson's motion to dismiss. | Whether or not to enforce its own scheduling order is clearly within the district court's discretion. | Does the court have discretion in enforcing its own scheduling order? | 026635.docx | LEGALEASE-00130289-LEGALEASE-00130290 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 16359 | Wilson Foods Corp. v. Turner, 218 Ga. App. 74 | 307A+747.1 | In view of our holding in Division 1 above, and it being unlikely that such error will recur in the event of retrial, we will not address appellant's claim that the trial court erred in failing to allow it to introduce the deposition testimony of Mr. Moore on the grounds the witness had not been named in the pretrial order. However, a pretrial order is ineffective for any purpose until it is signed by the trial judge. Roman v. Terrell, 195 Ga. App. 219(1), 393 S.E.2d 83. Moreover, the harsh sanction of precluding the calling of witnesses not listed in a valid pretrial order cannot be upheld if less harsh sanctions are available and appropriate. See generally, Ambler v. Archer, 230 Ga. 281, 289(1), 196 S.E.2d 858. | Pretrial order is ineffective for any purpose until it is signed by trial judge. | Is a pretrial order ineffective for any purpose until it is signed by a trial judge? | Pretrial Procedure - Memo # 1601 - C - PC.docx | ROSS-003314789-ROSS-003314790 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16360 | Ekberg, v. Sharp, 2003 WY 123 | 307A+742.1 | Wyoming Rule of Civil Procedure 16 is also applicable in this instance as the district court set particular deadlines in this matter. That rule authorizes the district court to set certain dates, including the setting of pretrial conferences, deadlines for pretrial motions, and deadlines for the completion of discovery and to address any other appropriate matters. The objectives of the rule are to allow the district court to expedite the disposition of actions, establish early and continuing control over actions, and facilitate settlement of the case. In addition, under this rule, the dates set by the district court may not be modified except "upon a showing of good cause." See also Carroll v. Bergen, 2002 WY 166, 20, 57 P.3d 1209 (recognizing that adherence to scheduling orders is critical in maintaining the integrity of judicial proceedings; that pretrial orders control the issues to be litigated, allowing the parties to rely on the pretrial order exhibit and witness lists to prepare their cases; and holding that the trial court is vested with extensive authority to enforce such pretrial orders). | The objectives of the civil procedure rule allowing the district court to set pretrial deadlines are to allow the district court to expedite the disposition of actions, establish early and continuing control over actions, and facilitate settlement of the case. Rules Civ.Proc., Rule 16. | What are the objectives of the civil procedure rule in setting pre-trial deadlines? | 026753.docx | LEGALEASE-00130285-LEGALEASE-00130286 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 16361 | In re Carton, 48 N.J. 9 | 307A+747.1 | As we have already said, appellant was correct in asking that the disposition of the separate defense be noted in the pretrial order. We think, too, that a trial court should not order counsel to sign a pretrial order he questions. The Manual of Pretrial Practice (Rev.1959), prepared by the Administrative Office of the Courts, which was not cited before the trial court, reads (p. 3): "The pretrial order is, of course, a step in the cause with the full force of other orders of the court. However, it is also a stipulation of the parties. The parties are, therefore, entitled to have included therein any legal or factual contention deemed important to their claim or defense and covered by the pleadings. This right must be recognized by the pretrial judge and Counsel should never be required to sign an order not considered by them adequate to cover their position." (Italics added.) | A trial court should not order counsel to sign a pretrial order counsel questions. R.R. 4:29-1(b). | Should a trial court order a counsel to sign a pretrial order counsel questions? | 026761.docx | LEGALEASE-00130303-LEGALEASE-00130304 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 16362 | Sobolewski v. State, 889 N.E.2d 849 | 110+629(1) | "With respect to rebuttal witnesses, nondisclosure is excused when that witness was unknown and unanticipated." eauchamp v. State, 788 N.E.2d 881, 892 Ind.Ct.App.2003). "A 'known' witness refers to knowledge of the existence of the witness." Carrigg v. State, 696 N.E.2d 392, 398 (Ind.Ct.App. (quoting McCullough v. Archbold Ladder Co., 605 N.E.2d 175, 179 (ind. trans. denied. "An 'anticipated' witness is one which a party or her counsel anticipates the need for at trial." Id. (quoting McCullough, 605 N.E.2d at 179). | Nondisclosure of a rebuttal witness is excused when that witness was unknown and unanticipated; in this context, a "known" witness refers to knowledge of the existence of the witness, and an "anticipated" witness is one which a party or her counsel anticipates the need for at trial. | "Does ""known witness"" refer to knowledge of the existence of that witness?" | Pretrial Procedure - Memo # 1700 - C - DA.docx | ROSS-003300645-ROSS-003300646 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 16363 | Unruh v. Purina Mills, 289 Kan. 1185 | 307A+749.1 | Under notice pleading, the petition is not intended to govern the entire course of the case. Rather, the pretrial order is the ultimate determinant as to the legal issues and theories on which the case will be decided. Halley v. Barnabe, 271 Kan. 652, 656"57, 24 P.3d 140 (2001). The pretrial conference order, filed June 14, 2006, stated as the first issue of fact: "Did the defendant engage in deceptive acts or practices under the Kansas Consumer Protection Act?" The pretrial order supersedes any pleadings and has the effect of amending the pleadings to conform to it. K.S.A.2008 Supp. 60"216(e); Bob Eldridge Constr. Co. v. Pioneer Materials, Inc. 235 Kan. 599, 606, 684 P.2d 355 (1984); Knowles v. Fleetwood Motorhomes of California, Inc., 40 Kan.App.2d 573, 578, 194 P.3d 38 (2008); | The pretrial order supersedes any pleadings and has the effect of amending the pleadings to conform to it. West's K.S.A. 60-216(e). | Does the pretrial order supersede any pleadings and have the effect of amending the pleadings to conform to it? | 026843.docx | LEGALEASE-00130806-LEGALEASE-00130807 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | 1 |
| 16364 | Misle Chevrolet Co. v. Kometscher, 225 Neb. 804 | 30+199 | Kometscher further alleges the court erred in failing to dismiss the case for the reason that Misle's petition fails to state a cause of action and fails to specifically set forth the applicable federal statute. Kometscher argues that to recover under the Motor Vehicle Information and Cost Savings Act, Misle must show a violation of the act coupled with intent to defraud while committing the violation. Additionally, Kometscher relies on Neb.Rev.Stat. "12,104 (Reissue 1985), which requires reasonable notice be given to an adverse party, either in the pleadings or otherwise, when a party wishes to offer evidence of the law of other jurisdictions. In the case at bar, it is true that Misle's petition does not conform with this state's rules of pleading and does not set forth an allegation of Kometscher's intent to defraud. Furthermore, there is no mention of the specific section of the Motor Vehicle Information and Cost Savings Act under which any liability of the appellant would arise. However, both of these contentions must fail for the same reason. The record shows that on February 20, 1985, a pretrial conference was held. The purpose ofa pretrial conference is to simplify the issues, amend the pleadings, and avoid traps and surprises at trial. Malerbi v. Central Reserve Life, 225 Neb. 543, 407 N.W.2d 157 (1987). The order from the pretrial conference specifically states: "The central issue in the case is the matter of intent under the statute." The pretrial order also states that the action arises out ofa violation of 15 U.S.C. "" 1981 et seq., and particularly 15 U.S.C. " 1988, and that damages would come under 15 U.S.C. " 1989. We have held that issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. Malerbi v. Central Reserve Life, supra; Bump v. Firemens Ins. Co, 221 Neb. 678, 380 N.W.2d 268 (1986). The issues set out in the pretrial order supplant the issues raised in the pleadings. Failure to object to the | Failure to object to specification of issues in pretrial orders waives error claimed in that regard on appeal. | Do issues set out in a pretrial order supplant the issues raised in the pleadings? | Pretrial Procedure - Memo # 1807 - C - SN.docx | ROSS-003287263-ROSS-003287264 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 16365 | Estate of Cooper, 11 Cal. App. 3d 1114 | 307A+743 | The principal purpose of pretrial is to determine what the lawsuit is about, to simplify and define the issues, and to give notice of matters not necessarily revealed by the pleadings where such matters are issues in the case. (Universal Underwriters Ins. Co. v. Superior Court, 250 Cal.App.2d 722, 728, 58 Cal.Rptr. 870; Pulse v. Hill, 217 Cal.App.2d 301, 304, 31 Cal.Rptr. 765.) The pretrial order determines the issues to be tried; issues that are not designated as being in dispute are no longer issues in the case. (Universal Underwriters, Inc. v. Superior Court, Supra, 250 Cal.App.2d at p. 727, 58 Cal.Rptr. 870; Feykert v. Hardy, 213 Cal.App.2d 67, 74, 28 Cal.Rptr. 510.) | The pretrial order determines issues to be tried; issues that are not designated as being in dispute are no longer issues in the case. | Do pretrial orders determine the issues to be tried? | Pretrial Procedure - Memo # 1812 - C - SB.docx | ROSS-003287988-ROSS-003287989 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 14566 | Clark v. Randalls Road, 317 S.W.3d 351 | 307Ax331 | To prevail on the first prong, Clark suggests he has shown Randalls knew or reasonably should have known there was a substantial chance that Clark would seek a premises liability claim. See id. A party can anticipate litigation before it receives actual notice of potential litigation. Nat'l Tank Co. v. Brotherton, 851 S.W.2d 193, 204 (Tex.1993). "[C]ommon sense dictates that a party may reasonably anticipate being filed… [even] before the Plaintiff manifests an intent to sue." Id. Clark points to Randalls's answer to the following interrogatory, which asks "when did Randalls first believe that there was a substantial chance that id." would file a claim? Randalls answered, "[a]fter [Clark] fell, it was known that he was injured and needed care." This is consistent with Randalls's business, customer accidents result in the substantial chance of a claim in each occurrence." Because Randalls acknowledges it knew that there was a "substantial chance" a claim would be filed, we conclude the anticipated evidence shows Clark established the first prong. See Johnson, 106 S.W.3d at 722. | For purposes of determining whether there exists a duty to preserve evidence, a party can anticipate litigation before it receives actual notice of potential litigation. | Can a party anticipate litigation before it receives actual notice of potential litigation? | Pretrial Procedure - Memo # 218 - C - PC.docx | ROS5.003313413.ROS5-00313412 | Condensed, SA, Sub 0.65 | | 0 | | | 1 | |
| 14567 | Emblery v. City of Chicago, 319 Ill. App. 3d 1009 | 371+2001 | In the instant case, it is our view that all merits clause, which is a limitation on taxation, does not extend to tolls. "Taxes are an enforced proportional contribution levied by the State by virtue of its sovereignty for the support of the government." People ex rel. County of Du Page v. Smith, 21 Ill.2d 572, 583, 173 N.E.2d 485 (1961). Tolls are, on the other hand, contractual in nature rather express or implied and are compensation for the use of another's property, and their amount is determined by the cost of the property or improvement and the consideration of the property is for the improvement and the consideration of the revenue that is to be expended through that project. Smith, 21 Ill.2d at 583, 173 N.E.2d 485; People ex rel. Curren v. Schommer, 392 Ill. 17, 22, 63 N.E.2d 744 (1945). | "Taxes" are an enforced proportional contribution levied by the State, by virtue of its sovereignty, for support of the government. | "By virtue of what, are taxes leveled by the State?" | Taxation - Memo # 125 - C - EX.docx | ROS5.003301583.ROS5-003301585 | Condensed, SA | 0.83 | | 0 | | | 1 | |
| 14568 | Town of Hilton Head Island v. Morris, 324 S.C. 30 | 371+2001 | Appellant first contends "4.7.2V.2 violates "[all article II of our State constitution which provides that '[p]roperty tax levies shall be uniform'" since the State does not control the amount of the transfer fee imposed, A statutory scheme a tax because the amount or rate is not imposed; rather. Moore v. Patterson, 55 S.C. 298, 483 S.2d 841 (1991). Section 4.7.2V.2 is not a tax within the meaning of article II § 6. | Statute levies tax when it fixes amount or rate to be imposed. | Does a statute levy a tax when it fixes amount or rate to be imposed? | Taxation - Memo # 81 - C - EX.docx | LEGALEASE 00190833 - LEGALEASE 00190832 | Condensed, SA | 0.85 | | 0 | | | 1 | |
| 14569 | Alabama Power Co. v. Fed. Power Comm'n, 134 F.2d 602 | 405+2417 | In proceeding by Federal Power Commission to determine power company's actual legitimate cost of construction of dam for development of water power, taxes are allowable as a cost only from date that property is included in project is definitely committed to and cannot be otherwise used, use Federal Power Act § 4(b) as amended 16 U.S.C.A. § 797(b). | In proceeding by Federal Power Commission to determine power company's actual legitimate cost of construction of dam for development of water power, taxes are allowable as a cost only from date that property is included in project is definitely committed to and cannot be otherwise used; use Federal Power Act § 4(b) as amended 16 U.S.C.A. § 797(b). | Is a tax paid to the government? | Taxation - Memo # 81 - C - KBM.docx | LEGALEASE 00021198 - LEGALEASE 00021199 | Condensed, SA, Sub 0.64 | | 0 | | | 1 | |
| 14570 | Alabama Power Co. v. Fed. Power Comm'n, 134 F.2d 602 | 371+2001 | Turning to construction costs, those expended by interstate taxes prior to July 1, 1922 were allowed and are not in dispute. Property taxes during construction, and for a year preceding, commencement of work, were allowed as part of the cost of the project, pursuant to the system of accounting of the Commission period. In 1922, it is contended that taxes for the time before that, during which interstate were and was holding the lands, ought to be added. Taxes are the annual compensation paid to government for annual protection and for the current support of government, and are generally an expense and not an investment. Only from the date that property included in a project is definitely committed to it and cannot be otherwise used, are taxes fairly a cost of the project under construction. They are certainly not a part of the original price paid for the land. No principal of law requires a more generous allowance of taxes than was made. | "Taxes" are annual compensation paid to government for annual protection and for the current support of government and are generally an "expense" and not an "investment". | To whom is the tax paid to? | Taxation - Memo # 81 - C - KBM.docx | LEGALEASE 00021200 - LEGALEASE 00021201 | Condensed, SA | 0.82 | | 0 | | | 1 | |
| 14571 | Mississippi Power Co. v. Mississippi Pub. Serv. Comm'n, 168 So. 3d 905 | 371+2001 | Turning to construction costs, those expended by interstate taxes prior to July 1, 1922 were allowed and are not in dispute. Property taxes during construction, and for a year preceding, commencement of work, were allowed as part of the cost of the project, pursuant to the system of accounting of the Commission period. In 1922, it is contended that taxes for the time before that, during which interstate were and was holding the lands, ought to be added. Taxes are the annual compensation paid to government for annual protection and for the current support of government, and are generally an expense and not an investment. Only from the date that property included in a project is definitely committed to it and cannot be otherwise used, are taxes fairly a cost of the project under construction. They are certainly not a part of the original price paid for the land. No principal of law requires a more generous allowance of taxes than was made. | A tax is paid to the government, not a privately-owned corporate entity which is not an arm of the State. | Is a tax paid to a privately-owned corporate entity which is not an arm of the State? | Taxation - Memo # 81 - C - KBM.docx | ROS5.00328 804-ROS5-003283807 | Condensed, SA | 0.84 | | 0 | | | 1 | |
| 14572 | Dean v. Lehman, 143 Wash. 2d 12 | 371+2002 | Election first asks this Court to declare its DWP assessment an illegal tax, seizure, and unlawful use of state funds, it itself is prohibited under State law. Business revenue for the Government's, and that revenue is intended "for the use and benefit of all and government." Nat'l Fed. of Indep. Business v. Sebelius, __ U.S. __, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012); Austin v. Centerpoint Energy Arkla, 165 Ark. 138, 226 S.W. 839 (2000); A tax is not a penalty "to raise revenue for the public treasury, Not all demands for payment made by a governmental body are taxes. We have pointed out that "if the primary purpose of legislation is to raise revenue rather than to remedy a subject matter." | In ascertaining whether a governmentally-imposed charge is a fee or a tax, the court applies a three factor test, the first factor being whether the primary purpose of the state is to accomplish desired public benefit which costs money, or whether the primary purpose is to regulate; the primary purpose of the charges is to raise revenue the charges are a tax, but if the primary purpose is regulatory, the charges are properly characterized as "fees of regulation" rather than taxes. | Is an imposed charge? | Taxation - Memo # 82 - C - KBM.docx | LEGALEASE 00190561 - LEGALEASE 00190563 | Condensed, SA, Sub 0.14 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18373 | Maryland Theatrical Corp. v. Brennan, 180 Md. 377 | 371k1 | The question whether a particular enactment is primarily a revenue measure, or is in reality a regulation, measured by its burden upon the matter regulated… in relation to the purpose of the act. A revenue measure, on the other hand, may also provide regulations, but if the raising of revenue is the primary purpose, the amount of the tax is not reviewable by the courts. There is no set rule by which to be determined to which category a particular act primarily belongs. In general, if the principal purpose appears from the act itself that revenue is its main objective, and the amount of the tax supports that theory, the act is a revenue measure. "In general, where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but when it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax." 33 Am Jur, Licenses, Paragraph 19, Page 340. | Generally, when it appears from an act itself that revenue is its main objective, and amount of the tax imposed thereby supports such theory, the act is a "revenue measure", not a "regulatory measure". | When is an enactment a "revenue measure"? | 04d001.docx | LEGALEASE 00130716-LEGALEASE 00130718 | Condensed, SA | 0.84 | | | | 1 | 1 |
| 18374 | Enerquip Conical Corp. v. Bluepoint, 674 F. Supp. 2d 993 | 371k12001 | Characterizing the Acts as imposing a tax for TIA purposes is consistent with the Court's broad reading of the concept of a tax, which has held that an assessment is a tax if it is "for revenue raising purposes," regardless of whether the assessment is also used to raise funds for transportation purposes, including highway construction, is a tax for TIA purposes), see also Wright v. McClain, 835 F.2d 143, 145 (6th Cir. 1987) (collecting cases). The assessment on the prisoners could also have a revenue that the Illinois legislature chose to devote to assisting the Illinois Prisoner Review Board. Because the purpose is to raise revenue, the Court concludes that the racetracks have shown that the assessments imposed by the 2006 and 2008 Racing Acts are taxes for purposes of the TIA. | An assessment is a tax if it is for revenue raising purposes, regardless of whether the proceeds go to a general fund or are devoted to a more specialized purpose. | When is an assessment a tax? | 04d099.docx | LEGALEASE 00130726-LEGALEASE 00130728 | Condensed, SA | 0.83 | | 1 | | | |
| 18375 | Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623 | 388k1 | We first turn to the law of civil trespass. It is elementary that "trespass is a wrongful invasion of the possession of another." State ex rel. Bruton v. Flying "W" Enters., Inc., 273 N.C. 399, 413, 160 S.E.2d 482, 493 (1968). "Furthermore, a claim of trespass requires: (1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." Jordan v. Foust Oil Co., 116 N.C. App. 155, 166, 447 S.E.2d 491, 498 (1994); see also Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952). The interest protected is the possession of property, not legal title; thus, the plaintiff need only have de facto possession to maintain an action in trespass. Although trespass is an action of "wrongful invasion." See also Kiva v. Walker, 39 N.C. App. 155, 157, 249 S.E.2d 790, 791 (1978); 361, Ala. rev. denied, 310 N.C. 743, 315 S.E.2d 700 (1984); Travers v. Gordon Ave. Owners Assn., 37 N.C. App. 565, 570, 246 S.E.2d 503, and Sample v. Roper Lumber Co., 150 N.C. 161, 166, 63 S.E. 731, 732 (1909). | A claim of trespass requires: (1) possession of the property by plaintiff when the alleged trespass was committed, (2) an unauthorized entry by defendant, and (3) damage to plaintiff. | What are the requisites for a claim of trespass? | 04T003.docx | LEGALEASE 00131346-LEGALEASE 00131347 | Condensed, SA | 0.84 | 1 | | | | |
| 18376 | Rediv., Dae Bun Res. Corp., 701 F.3d 840 | 25Tk179 | A nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory. We have repeatedly recognized the distinction between these two applications, noting that while the former establishes only that a nonsignatory that "seeks to bind a signatory to the terms of an arbitration agreement may do so in some circumstances," Thomson/CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995); "D.R Partners, LLC v. Giraldo, 424 F.3d 795, 799 (8th Cir. 2005), quoting Merrill Lynch v. Eckert v. PaineWebber, Inc., 201 F.3d 1321, 1327 (11th Cir. 2000). Those two theories are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. Thomson/CSF, 64 F.3d at 776. | A nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory. | Is a nonsignatory attempting to bind a signatory to an arbitration agreement distinct from a signatory attempting to bind a nonsignatory? | 00T470.docx | LEGALEASE 00132389-LEGALEASE 00132390 | Condensed, SA | 0.82 | | | | 1 | |
| 18377 | Reed v. United States, 47 Fed. Cl. 641 | 343k1(1) | The courts have historically accorded substantial deference to military decisions, including those relating to decisions. See Orloff v. Willoughby, 345 U.S. 83, 93, 73 S. Ct. 534, 97 L. Ed. 842 (1953); Voge v. United States, 844 F.2d 776, 779 (Fed Cir. 1988), cert. denied, 488 U.S. 941, 109 S. Ct. 365, 102 L. Ed. 2d 355 (1988); Cabiran v. United States, 33 Fed Cl. 154, 163; 156 no. (1994), aff'd, 48 F.3d 1239 (Fed Cir. 1995) (table); Sato v. Norris, 801 F.2d 1151, 1161 (9th Cir. 1986); Mora v. Walsh, 777 F.2d 437, 439 (8th Cir. 1985); Schlanger v. United States, 586 F.2d 667, 677 (7th Cir. 1978), cert. denied, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979), however, the deference accorded is not unlimited. See, e.g., United States, 121 U.S. 361, 381, 24 S.Ct. 458, 1370 (Fed Cir. 1994); "Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979); However, although the deference accorded to military actions by the judiciary is substantial, it is not unlimited. | Although the deference accorded to military actions by the judiciary is substantial, it is not unlimited. | Is the deference accorded to military actions by the judiciary unlimited? | 00894.docx | LEGALEASE 00132467-LEGALEASE 00132468 | Condensed, SA | 0.92 | | | 1 | | |
| 18378 | Weiner v. Green, 585 S.W.2d 370 | 289k306 | Dissolution of the partnership is governed by the Texas Uniform Partnership Act, Tex. Rev. Civ. Stat. Ann. § 6132b, § 30(1), et seq. (Vernon 1970). A partnership exists solely because the partners choose to place personal confidence in one another. Burleson, 375 S.W.2d at 547.47 A partner can be expelled, without a breach of duty, over disagreements about policy or personal confidence. The right to withdraw exists because of the fundamental nature of the partnership, and does not encompass a duty to remain partners. Id. | Partner can be expelled from partnership, without any breach of duty, over disagreements about policy or management, when fundamental reason to the fiduciary duty partners owe one another does not encompass a duty to remain partners. M | Can a partner be expelled from the partnership? | 02103.docx | LEGALEASE 00132495-LEGALEASE 00132496 | Condensed, SA, Sub | 0.53 | | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16379 | Webber v. Green, 985 S.W.2d 170 | 289v366 | Partners are charged with a fiduciary duty. [Bohatch v. Butler & Binion, 977 S.W.2d 543, 544-55, 41 Tex. Sup. Ct. J. 308 (Tex. 1998); Adi Rea Mgmt., Inc. v. Metod Operating L.P., 965 S.W.2d 301, 304 (Tex. App.—Houston [1st Dist.] 1997, no pet.)]. The misappropriation by one partner for his own use of the property of the partnership is constructive fraud. Hawn v. Hines, 415 S.W.2d 95, 101 (Tex. App.—Corpus Christi 1967, writ ref'd n.r.e.). A fiduciary owes to principal a strict duty of good faith and candor, as well as the general duty of full disclosure respecting matters affecting the principal's interests. There is a general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal, regarding all material facts. Hawthorne v. Guenther, 917 S.W.2d 924, 934 (Tex. App.—Beaumont 1996, writ denied); see also Texas Bank & Trust Co. v. Moore, 595 S.W.2d 502, 508 (Tex. 1980); Chien v. Chen, 759 S.W.2d... | Managing partners owe their partners the highest fiduciary duty, recognized in the law. | Do the managing partners owe their partners the highest fiduciary duty? | 02201.docx | LEGALEASE 00132481-LEGALEASE 00132482 | Condensed, SA | 0.96 | 0 | 1 | | 1 | |
| 16380 | Juengain v. Tervalon, 223 So. 3d 1274 | 307Ak117.1 | Based on the record on appeal, the trial court did not err in dismissing this action as abandoned under La. C.C.P. art. 561. As we have noted, we recognize that the trial court's judgment is partially in error in that it orders this action be dismissed with prejudice. An action may be dismissed on abandonment pursuant to La. C.C.P. art. 561 only if the action has not been prosecuted or disposed of within three years. (confecting cases) [A dismissal without prejudice is considered as if the suit has never been filed.] | A dismissal without prejudice is considered as if the suit has never been filed. | Is a dismissal without prejudice considered as if the suit has never been filed? | 02754.docx | LEGALEASE 00131775-LEGALEASE 00131776 | Condensed, SA | 0.91 | 0 | 0 | | 1 | |
| 16381 | Washburn v. Teminal R. Assn of St. Louis, 114 Ill. App. 2d 95 | 307Ak15 | A determination of the issue presented does not require us to decide the status of the examining physician. The purpose of discovery is the ascertainment of truth and the expedition of the disposition of litigation. Monier v. Chamberlain, 35 Ill.2d 351, 221 N.E.2d 410, 18 A.L.R.3d 471.To this end the ascertainment of limits of liability insurance have been made discoverable, People ex rel. Terry v. Fisher, 12 Ill.2d 231, 145 N.E.2d 588, but the information elicited is not admissible in evidence. The nature and extent of a plaintiff's injuries are at least as relevant, and their disclosure to the litigants is at least as likely to effect settlement, as the existence of liability insurance. For this reason it appears to us that a defendant should be in a position to use discovery procedures to obtain the information without delaying the trial or forcing the examining physician may be admitted into evidence. | Purpose of discovery is ascertainment of truth and expedition of disposition of litigation. | Is the purpose of discovery ascertainment of truth and expedition of litigation? | 02768.docx | LEGALEASE 00131320-LEGALEASE 00131321 | Condensed, SA | 0.93 | 0 | 0 | | 1 | |
| 16382 | Wichcreie SRK Lendings Kraft, 166 Wash. 2d 441 | 266v131(2) | The case law cited by Kraft does not lend meaning to the term "final judgment." Neither in the term defined in RCW 4.84.330. "[I]n the absence of a statutory definition this court will give the term its plain and ordinary meaning...." Watson v. Emerald Downs, 145 Wash.2d 654, 57 P.3d 63.66. In ordinary usage, a "final judgment" is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy...." Black's Law Dictionary 859 (8th ed.2004). By this well accepted definition, a "voluntary dismissal" is not a final judgment. A voluntary dismissal leaves the parties as if the action had never been brought. Beckman v. Wilcox, 96 Wash. App. 355, 359, 979 P.2d (1999); Stateis. Taylor, 150 Wash.3d 599, 602, 857 P.2d2d 455 (2003). No substantive issues are resolved, and the plaintiff may refile the suit. Because a voluntary dismissal is not a final judgment, the Court of Appeals correctly concluded that Kraft cannot be considered a prevailing party under RCW 4.84.330. | Debtor's wife, against whom creditor had brought deficiency action following foreclosure of premises mortgage secured by deed of trust on debtor's and wife's home, was not "prevailing party" entitled to award of attorney fees on creditor's motion for dismissal of action without prejudice, under statute providing for prevailing party attorney fees in actions on contract or lease, where action permitted by prevailing party, as creditor's voluntary dismissal without prejudice was not a "final judgment" rendered in wife's favor; abrogating Marassi v. Lau, 71 Wash. App. 912, 859 P.2d 605, Alpha-in v. Carter, Subaru, 78 Wash. App. 518, 897 P.2d 413, West's RCWA 4.84.330. | Is a voluntary dismissal a final judgment when it leaves the parties as if the action had never been brought? | Pretrial Procedure - Memo # 3336 - C - R2.docx | ROSS 000236582-ROSS-000286583 | Condensed, SA, SUB-ISA | 0.36 | 0 | 1 | 1 | 1 | |
| 16383 | Wichcreie SRK Lendings v. Kraft, 166 Wash. 2d 441 | 307Ak17.1 | The case law cited by Kraft does not lend meaning to the term "final judgment." Neither is the term defined in RCW 4.84.330. "[I]n the absence of a statutory definition this court will give the term its plain and ordinary meaning...." Watson v. Emerald Downs, 145 Wash.2d 654, 57 P.3d 66. In ordinary usage, a "final judgment" is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy...." Black's Law Dictionary 859 (8th ed.2004). By this well accepted definition, a "voluntary dismissal" is not a final judgment. A voluntary dismissal leaves the parties as if the action had never been brought. | A voluntary dismissal leaves the parties as if the action had never been brought. | Does a voluntary dismissal leave the parties as if the action had never been brought? | Pretrial Procedure - Memo # 1380 - C - TM.docx | LEGALEASE 00021961-LEGALEASE 00021962 | Condensed, SA | 0.93 | 0 | 1 | | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 22,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | |
| 16584 | Price v. Wyeth Holdings Corp., 505 F.3d 624 | 307H+317.1 | Based on this same theory of a continuing pleading lawsuit, Price also maintains that the defendants had a duty to reconstruct notice of the docket and therefore should be charged with constructive notice of the reinstated proceedings. This argument badly misconstrues basic principles of voluntary dismissal under Indiana law. "[O]nce a suit is voluntarily dismissed, whether plaintiff, the suit has never been filed."Barnett v. Camden, 253 Ind. 354, 254 N.E.2d 199, 201 (1970). A voluntary dismissal of suit may be reinstated pursuant to Rule 41(F) of the Indiana Rules of Trial Procedure, and "[w]hen a case is dismissed and then reinstated, it stands as if it had not been dismissed." Watts v. Watt, 429 N.E.2d 1 (1st Ind.App.1981) (holding that a party who received a notice for a charge of venue within 30 days of receiving the initial complaint was not entitled to a new 30 day time limit when the case was reinstated after voluntary dismissal). | Under Indiana law, once a suit is voluntarily dismissed, the situation is just as though the suit has never been filed. | "Once a suit is voluntarily dismissed, is the situation just as though the suit has never been filed?" | Pretrial Procedure - Memo # 469 - C - MS.docx | ROSS-003075137 ROSS-003075158 | Condensed, SA | 0.88 | 0 | 1 | | 1 | 1 |
| 16585 | Rivers v. State, 327 S.C. 271 | 371+2001 | Under ordinary taxing law, in order for Act 171 to have effected a taking, Taxpayers would have to have had a vested right to the money at issue. E.g., Tenn. Feed & Grain, Inc. v. City of New York, 461 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). However, this rule does not apply in the context of taxing legislation. First, case law from the United States Supreme Court runs throughout the country; they conclusively make clear that taxpayers have no vested interest in tax laws remaining unchanged. "Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." United States v. Carlton, 512 U.S. 26, 33, 114 S.Ct. 2018, 2023, 129 L.Ed.2d 22 (1994), accord Carrey v. Collins v. United States, 799 F.2d 16, 20 (2d Cir.1986) (finding that retroactive circumstances to the benefit of retroactivity of a tax statute or regulation."); Guindi v. Bank v. Commonwealth, 163 Pa.Cmwlth. 524, 641 A.2d 452, 460 n. 14 (1994) (citing Carlton for proposition that tax legislation is not a promise and taxpayer has no vested right in a particular treatment). | Taxpayers have no vested interest in tax laws remaining unchanged? | Do taxpayers have vested interest in tax laws remaining unchanged? | Taxation - Memo # 129 - C - CK.docx | ROSS-003301169-ROSS-003301170 | Condensed, SA | 0.96 | 0 | 0 | | 1 | |
| 16586 | Weddle v. City of San Diego, 176 Cal. App. 4th 1022 | 371+2001 | Proposition 218 provides that "[a]ll taxes imposed by any local government shall be deemed to be either general taxes or 'special taxes'" (art. XIII C, § 2, subd. (a)) and defines a "general tax" as "any tax imposed for general governmental purposes" (id., " 1, subd. (a)). "A tax is general only when its revenues are placed into the general fund and are available for expenditure for any and all governmental purposes. [Citation.]" (Howard Jarvis Taxpayers Assn. v. City of Roseville (2002) 106 Cal.App.4th 1178, 1185, 132 Cal.Rptr.2d 1 (City of Roseville); Code of Regulations [§ 28.] " [A] local government that imposes, extends, or increases any general tax shall... be submitted to the electorate and passed by a majority vote." (Art. XIII C, §, subd. (b)).

Second, the service charge limitation in subdivision (b) of Government Code section 29143 applies to "[taxes] covering all purposes of such district, " the service charge limitation in... this provision of this class of the governmental entity are general taxes and include ad valorem property taxes; (See Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 232, 45 Cal.Rptr.2d 207, 902 P.2d 225.) Taxes that provide revenue for a special governmental purpose are special taxes. (Ibid.) Government Code section 29506, rather than Government Code section 29142, gives a county the general authority to recoup expenses for collecting special taxes and special assessment taxes. Moreover, a county's ability to recoup expenses for collecting special taxes that it has imposed itself may be established in another specific provisions of law. For example, Health and Safety Code section 13911 authorizes such a district to levy a voter-approved special tax pursuant to Government Code provisions and Article XIII section 50075. Government Code section 50077, subdivision (b), permits a county to deduct its reasonable costs when it collects a voter-approved special tax. Likewise, Health and Safety Code section 13913 permits a fire protection district to levy a special tax for fire protection services pursuant to Government Code provisions commencing with section 50075. Government Code section 53978, subdivision (e), permits a county and other public agencies to recoup expenses with respect to special taxes levied under this division. We conclude from these provisions of law, then, that the Government Code section 29142, it appears that the incorporation of that section in Health and Safety Code section 13899 was not intended to apply to... | Taxes that provide revenues that are available for all purposes of the governmental entity are "general taxes" and included ad valorem property taxes; whereas, taxes that provide revenue for a specific or limited purpose are "special taxes." | "Is a tax considered as a general tax" when its revenues are placed into the general fund?" | 04464.docx | LEGALEASE-00131480-LEGALEASE-00131481 | Condensed SA, Sub 0.73 | | 0 | | | 1 | 1 |
| 16587 | Arbuckle-Calif. City Fire Prot. Dist. v. City of Colusa, 105 Cal. App. 4th 1155 | 371+2001 | | Taxes that provide revenues that are available for all purposes of the governmental entity are "general taxes" and included ad valorem property taxes; whereas, taxes that provide revenue for a specific or limited purpose are "special taxes." | "Is a tax considered as a general tax" when its revenues are placed into the general fund?" | Taxation - Memo # 131 - C - KBM.docx | LEGALEASE-00202057-LEGALEASE-00202058 | Condensed SA, Sub 0.87 | | 1 | | | 1 | 1 |
| 16588 | Sanford v. Walther, 467 S.W.3d 139 | 371+763 | Taxes and interest are not the same. "Taxes are enforced contributions exacted pursuant to statutory authority," Milam v. Gordon, 234 Ark. 525, 529, 353 S.W.2d 157, 160 (1962). Interest is a charge for the use of money. See Leonv. United States, 237 Ark.842, 401 [U.S. 1971] see also Owens v. United States, 277 Ark.227, 267 S.W. 1941 (stating that interest is intended to compensate the government for delay in payment of the tax, or the "time value" of the exaction; and to compensate the State for the delay in the payment of the tax. | Taxes and interest on tax delinquencies are not the same, for purposes of reviewing illegal exaction claims, in that taxes are enforced contributions exacted pursuant to statutory authority, whereas interest is a charge for the use of tax money that the government was deprived of using due to late payment. | "Are taxes, enforced contributions exacted pursuant to statutory authority?" | Taxation - Memo # 152 - C - NA.docx | ROSS-003288424-ROSS-003288425 | Condensed, SA, Sub 0.52 | | 0 | | | 1 | |

Appendix D

2888

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Copied Headnote | Judicial Opinion Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 16389 | City of Lebanon Junction v. Cellco P'ship, 80 S.W.3d 761 | 371v2001 | While Section 181 of the Kentucky Constitution speaks of license fees, KRS 92.281 and KRS 136.120 speak in terms of taxes. However, "The character of any tax is to be determined by its incidents, and the name by which it is described in the legislation imposing it is without significance." | The character of any tax is to be determined by its incidents, and the name by which it is described in the legislation imposing it is without significance. | Is the character of a tax determined by its incidents? | | | Taxation - Memo # 206 - C - 4.docx | ROSS-003180043 ROSS-003180044 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | 1 |
| 16390 | City of Lebanon Junction v. Cellco P'ship, 80 S.W.3d 761 | 371v2001 | While Section 181 of the Kentucky Constitution speaks of license fees, KRS 92.281 and KRS 136.120 speak in terms of taxes. However, "The character of any tax is to be determined by its incidents, and the name by which it is described in the legislation imposing it is without significance." | The character of any tax is to be determined by its incidents, and the name by which it is described in the legislation imposing it is without significance. | Is the character of a tax determined by its name? | | | Taxation - Memo # 207 - C - 4.docx | ROSS-003188024 ROSS-003188025 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | 1 |
| 16391 | Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216 | 371v2001 | Taxation always has been a matter of concern to all people, rich and poor alike. In some form or other the need of government must necessarily be met by taxation. It is a burden or charge imposed by legislative power upon persons or property to raise money for public purposes. 61 C.J. p. 65. | "Taxation" is a burden or charge imposed by legislative power upon persons or property to raise money for public purposes. | What is "Taxation"? | | | 048848.docx | LEGALEASE-00131638-LEGALEASE-00131639 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | 1 |
| 16392 | Pub. Advocate & Consumers Educ. & Protective Ass'n v. City of Philadelphia, 662 A.2d 686 | 371v2001 | Second, as noted by the Third Circuit in Appellants, the Pennsylvania Supreme Court held in Ortiz v. Lancaster, 313 Pa. 215, 169 A. 557 (1933), that a municipal utility is legally entitled to a fair return including a reasonable profit on its investment. | Necessary predicate to finding of unlawful tax is direct taking of customer funds. | What is the necessary predicate to finding of unlawful tax? | | | Taxation - Memo # 262 - C - 5d.docx | ROSS-003031938-ROSS-003031939 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | 1 |
| 16393 | Mayor & City Council of Ocean City v. Purnell-Jarvis, Ltd., 86 Md. App. 390 | 371v2001 | Whether a particular act is a regulatory measure or a revenue raising measure determines which rules of construction apply. Brennan, 180 Md. at 181, 24 A.2d 911. | Act is "revenue raising" measure when it appears from act itself that revenue is its main objective. | "Is an Act a "revenue raising" measure when it appears from the act itself that revenue is its main objective?" | | | 049053.docx | LEGALEASE-00131957-LEGALEASE-00131958 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 16394 | Gartner v. Com., 410 Mass. 445 | 371+2001 | The Justices have defined a tax as "a revenue-raising exaction imposed through government's sovereign taxing power to defray public expenses." Opinion of the Justices, 393 Mass. 1209, 1216, 471 N.E.2d 1363 (1984). When the characterization of a monetary exaction is in doubt, "the intention of the Legislature, as it may be expressed in part though its characterization, deserves judicial respect, especially as the question of the constitutionality of the exaction depends on its proper characterization." Emerson College v. Boston, 391 Mass. 415, 424, 462 N.E.2d 1098 (1984), quoting Associated Industries of Mass. Inc. v. Commissioner of Revenue, 378 Mass. 657, 667 768, 393 N.E.2d 812 (1979). In the final analysis, however, the nature of a monetary exaction will be determined by studying its operation rather than how it has been characterized by the Legislature. Emerson, supra 391 Mass. at 426, 462 N.E.2d 1098. | "Tax" is revenue-raising exaction imposed through government's sovereign taxing power to defray public expenses; nature of monetary exaction is determined by studying its operation rather than how it has been characterized by the Legislature. | Does the Supreme Judicial Court look to proposed operation of the exaction, to determine whether a monetary exaction will be imposed is a tax? | Taxation - Memo # 292 - C - RM.docx | LEGALEASE 00022233 LEGALEASE 00022234 | Condensed, SA, 0.74 | 0.74 | 0 | | | 1 | 1 |
| 16395 | Faber v. Lovelass, 249 Iowa 593 | 371+2001 | Section 3, Article VII, Constitution of Iowa, provides "Such laws shall be passed by the Legislature for the collection of direct annual tax, while the same name given a tax by the Legislature is not determinative, such legislative designation is an important factor in determining the character of the tax. I.C.A. Section 7.3 b, Section 11 of the Act definitely states the tax, as to both classes of property, is a direct tax. A direct tax is one which is imposed directly on property according to its value and is frequently called a property or ad valorem tax. It is taxation based on assessment of taxes on property and is certainly one upon which a tax is based. It is an invariably based upon ownership. Powell v. Gleason, 50 Ariz. 542, 74 P.2d 47, 114 A.L.R. 838; Commonwealth ex rel. Dept. of Justice v. Overholt & Co., s. 331 Pa. 182, 200 A. 849; 51 Am. Jur., Taxation, Secs. 20, 84 C.J.S. Taxation s. Section 618, C.J.S. 1954, C.A., requires a listing of taxable property, moneys and credits, etc., with the assessor, and Section 482.2 requires such to be taxed at the mills on the dollar of actual valuation, which is direct tax on tangible property (Secs. 11, Ch. 64, Acts of 1954.) The name with all definitions of a direct tax and we hold it to be such. | While the name given a tax by the legislature is not determinative, such legislative designation is an important factor in determining the character of the tax. | Is the legislative designation of a particular tax determinative as to its nature? | 049950.docx | LEGALEASE 00132037 LEGALEASE 00132038 | Condensed, SA 0.87 | 0.87 | | | 1 | | |
| 16396 | United States v. Potato, 527 F.2d 71 | 63+1(1) | Although the Travel Act, 18 U.S.C. s 1952,2 was enacted to combat organized crime, United States v. Nardello, 393 U.S. 286, 292 s, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), its language and scope are not so limited. United States v. Perrin, 484 F.2d 635, 637 (5th Cir. 1973); United States v. Phillips, 433 F.2d 1364, 1367 (8th Cir. 1970), cert. denied, 401 U.S. 917, 91 S.Ct. 900, 27 L.Ed.2d 818 (United States v. Revell, 430 F.2d 879, 885 (5th Cir. 1970), cert. denied, 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 814. Nevertheless, we are mindful that Congress did not intend ''(T)o broaden the scope of the statute.'' Rewis v. United States, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). | Although language and scope of Travel Act are not limited to organized crime, congressional purpose of combating organized crime does not justify broad reading interpretation of Act. 18 U.S.C.A. § 1952. | Is the Travel Act enacted to combat organized crime? | Bribery - Memo #223 - C - CSS.docx | ROSS-003237382-ROSS-003237383 | Condensed, SA, Sub 0.71 | 0.71 | 0 | | | 1 | |
| 16397 | State v. Ferro, 128 N.J. Super 353 | 63+1(1) | Applying these principles, the statute in question must be given its root meaning evident and reasonably meaningful construct with legislative intent. Light Equally, N.J.S.A. 2A:93-5 applies to "any person," who offers (solicits), promises or actually receives (or accepts in return if being the recipient of a bribe. Clearly the recipient of the bribe must be directed toward the giver, and the offeror, as even in the context of being the recipient of the bribe. Such a construction would require reading into the statute, after the word "person," the modifying qualifying phrase, "who being a public official" or "who is a public official." The modifying or limiting terms embodied in the statute are evident as the "person" with whom the public official is "connected" and is "connected with or appertaining to any office of government." Clearly if the language in its most natural evident meaning was not intended to cover such officials. The fact that the official's duties may require an off the recipient of the bribe, may influence matters in connection with an official duty whether the bribe is be offered or accepted. To construe it otherwise, Cf. State v. Sherwin, 127 N.J.Super. 370, 317 A.2d 414 (App.Div. 1974). | Phrase "any person" as used in statute providing that any person who offers to or gives or receives any money or thing of value as bribe or reward in connection with his discharge of duty as public official includes both person who accepts or offers bribe to a government official, even in context of being the recipient of a bribe and one who gives or offers bribe, must only have or create an understanding with the briber that he can influence matters in connection with an official duty, whether he be capable of actually effecting such an act is irrelevant. N.J.S.A. 2A:93-6. | Does the phrase "any person" within the bribery statute mean any government official? | 01375.docx | LEGALEASE 00131308 LEGALEASE 00131309 | Condensed, SA, Sub 0.54 | 0.54 | 0 | 1 | | | |
| 16398 | Robertson v. Meadores, 694 F. Supp. 36 64 | 13+5 | The language of the statute and relevant case law support Defendants' position that the Anti-Kickback Act provides only criminal penalties for its violation and provides no private right of action. See West Allis Memorial Hosp. Inc. v. Bowen, 852 F.2d 251, 255 (7th Cir.1988); United States ex rel. Barrett v. Columbia/HCA Health Care Corp., 251 F.Supp.2d 28, 37 (D.D.C.2003); Donovan v. Rothman, 106 F.Supp.2d 513, 516 (S.D.N.Y.2000). Accordingly the statute neither expressly nor impliedly authorizes actions for failure to state a claim upon which relief can be granted. | Federal Anti-Kickback Act provides only criminal penalties for its violation and provides no private right of action. Social Security Act, § 1128B, 42 U.S.C.A. § 1320a-7b. | Does the Anti-Kickback Act provide a private cause of action? | 01434.docx | LEGALEASE 00131389 LEGALEASE 00131390 | Condensed, SA, Sub 0.71 | 0.71 | 0 | | | 1 | |
| 16399 | Warnecke v. Webb's of Modesto, 8117 F.Supp. 1402 | 46++421 | The underlying rationale is that Defendants fraudulently concealed their true loyalties and interests in inducing Plaintiff to sign the limited partnership agreement. To support liability for fraudulent concealment, an affirmative duty of disclosure is required. Goodman v. Kennedy, 18 Cal.3d 335, 347, 134 Cal.Rptr. 375, 556 P.2d 737. Plaintiff has not made such allegations of disclosure of material fact to support their own fiduciary duties to limited partners. Kaplan v. State Bar of California, 44 Cal.3d 173, 192, 242 Cal.Rptr. 156, 745 P.2d 917 (1987). Attorney, unless hired only to provide legal services, to represent plaintiffs' interests with whom the client deals in an arm's length sales transaction. Goodman, 18 Cal.3d at 347, 134 Cal.Rptr. 375, 556 P.2d 737. Because Plaintiff has failed to allege the existence of a duty, Plaintiff's claim for professional negligence fails to state a claim upon which relief can be granted. | Under California law, attorney for limited partnership owes fiduciary duties to limited partner and no duty to volunteer advice for benefit of limited partner. | Does the duty of loyalty owed by an attorney to a limited partnership extend to the individual partners? | 02216.docx | LEGALEASE 00131523 LEGALEASE 00131524 | Condensed, SA, Sub 0.83 | 0.83 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16400 | In re Nantucket Island Associates Ltd. Partnership Unitholders Litigation, 810 A.2d 351 | 289v1099 | Where a limited partnership agreement is ambiguous, the interpretive principle of construction against the drafter tends to be implicated. | Where a limited partnership agreement is ambiguous, the interpretive principle of construction against the drafter tends to be implicated. Unlike negotiated bilateral agreements in which this principle is of more limited utility, most limited partnership agreements are drafted almost exclusively by that funding general partner ("or perhaps more accurately, by the lawyers for that general partner"). For this reason, there is usually no drafting history that could shed light on the shared intentions of the contracting parties. The general partner and the limited partners As a result, the court is required to resolve ambiguities against the drafting general partner and in favor of the reasonable expectations of the limited partners. | How will an ambiguous limited partnership agreement be construed? | 022124.docx | LEGALEASE 00131525-LEGALEASE 00131550 | Condensed, SA | 0.81 | 0 | 1 | 1 | 1 | |
| 16401 | Carroll v. Caldwell, 12 Ill. 2d 487 | 302v4151 | Statements by way of general conclusions of fraud are not sufficient in a pleading. | It is immediately apparent, however, that plaintiff cannot succeed on a theory of fraud. We do not find, nor have we been informed, wherein plaintiff's complaint makes any allegations of actual fraud. It charges, rather, only that "the defendant Caldwell did not believe" the original lease on tract B was in full force and effect when he solicited plaintiff's signature to the sublease agreement, nor defendant is to secure such signature by fraudulent representations. Fraud is never presumed and can be alleged or proved, both at law and in equity, only by allegation and proof of facts constituting the fraud. Roberson v. Anderson, 138 Ill. 400, 21 N.E. 504, 19 L.E. v. Fraud, sec. 16. Statements by way of general conclusions of fraud are not sufficient in a pleading. The allegations relied upon by the plaintiff, construed as they are on which the defendant may or may not have believed... amount to no more than an argument or conclusion of fraud and are thus not sufficient to charge the actual fraud necessary to state a cause true tract. Moreover, on oral argument before this court, plaintiff's counsel conceded the deficiency in his complaint when he acknowledge defendant was merely "mistaken" as to the status of the lease but tract B at the time he procured plaintiff's signature on the unit sublease agreement. | Are statements by way of general conclusions of fraud sufficient in a pleading? | 022247.docx | LEGALEASE 00131042-LEGALEASE 00131043 | Condensed, SA | 0.94 | 0 | 1 | 1 | 1 | |
| 16402 | Hamilton v. City of Shreveport, 180 So. 2d 30 | 302v4171 | General allegation of negligence is merely the pleader's conclusion of law. | For instance, it was held in the Patterson case that it is not necessary to plead the specific acts of negligence relied upon if the facts are set out so as to constitute contributory negligence, and in the Mundy case thus, to recover on a fire insurance policy, it is not necessary to plead to avoid succession, the insurer was not required to specifically allege fraud, but that allegations of fact sufficient to establish fraud were adequate. Moreover, it is well established that a general allegation of negligence is merely the pleader's own conclusion of law. | Is a general allegation of negligence merely the pleaders own conclusion of law? | 023257.docx | LEGALEASE 00131310-LEGALEASE 00131311 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 16403 | Makaskew v. Tangipan, 50 Haw. 491 | 307Av747.1 | After a pre-trial conference, a trial judge should commence with the trial until a pre-trial order has been signed | After a pre-trial conference, a trial judge should commence with the trial until a pre-trial order has been signed. Otherwise, a pre-trial conference will be meaningless because unless the attorney cannot be held bound by the provisions of an unsigned pre-trial order. | After a pre-trial conference, should a trial judge commence with the trial until a pre-trial order has been signed? | Pretrial Procedure - Memo # 1865 - C - VA.docx | ROSS 002286391-ROSS-002286393 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 16404 | Host Properties v Post Res. Grp., 738 N.W.2d 566 | 307Av517.1 | A district court has discretion to determine whether a voluntary dismissal should be with prejudice. | The district court has wide discretion in determining whether to grant a plaintiff's motion to dismiss without prejudice. 48 M.S.A., Rules Civ.Proc., Rule 41.01(a), 624, 628, 279 N.W. 553, 554 (1938). The court also has discretion to determine whether the dismissal should be with prejudice. Fahnestock v. Braulhaus, 251 Minn. 444, 621, 88 N.W.2d 484, 499 (1958). The district court did not explain the reasons for its dismissal of the amended claims. Because the district court did not address the merits of Post's claims, however, we may reasonably assume that the court accepted Post's argument that the dismissal of Post's claims with prejudice was necessary to obtain an appealable final judgment. This determination is contrary to the rules of civil procedure. | Does a district court have discretion to determine whether a voluntary dismissal should be with prejudice? | Pretrial Procedure - Memo # 2541 - C - PR.docx | ROSS-003281662-ROSS-003281663 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | 1 | 1 | |
| 16405 | Wells Fargo Bank, Nat. Assn v. Voorhees, 194 So.3d 448 | 307Av443 | The use of admissions obtained through a technicality should not form a basis to preclude adjudication of a legitimate claim. West's F.S.A. RCP Rule 1.370(b). | This liberal standard for relief "reflects the strong preference that genuinely disputed claims be decided upon their merits rather than a technical rules of default." PennyMac Corp. v. Labeau, 180 So.3d 1216, 1219 (Fla. 1st DCA 2015); Spring Trading v. City of West Palm Beach, 595 So.2d 284, 285 (Fla. 4th DCA 1992). "The use of admissions obtained through a technicality should not form a basis to preclude adjudication of a legitimate claim." 595 So.2d at 286. | Should the liberal standard for relief from a technical admission be decided upon their merits rather than technical rules of default? | 020569.docx | LEGALEASE 00132700-LEGALEASE 00132701 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 16406 | Williar v. Bennett, 925 S.W.2d 338 | 307Av517.1 | Trial court lacked discretion after nonsuit to sua sponte impose sanctions on attorneys who filed action; no claim for affirmative relief or for sanctions had been filed at the time relators filed their notice of nonsuit. Nor had the trial court before that time announced its intention sua sponte to consider or impose sanctions. | In the present case, no claim for affirmative relief or for sanctions had been filed at the time relators filed their notice of nonsuit. Nor had the trial court before that time announced its intention sua sponte to consider or impose sanctions. Accordingly, the trial court had no discretion after the nonsuit to take any affirmative action to consider or impose sanctions, and a trial court which it intervened jurisdiction and authority to perform merely the ministerial act of ordering dismissal. We hold the trial court lacked jurisdiction to impose sanctions and its order is void. | Does trial court lack discretion after nonsuit to impose sanctions? | 020937.docx | LEGALEASE 00132796-LEGALEASE 00132797 | Condensed, Order, SA, Sub | 0.44 | 1 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 14407 | Young v. City of Visalia, 687 F. Supp. 2d 1155 | 97Cv115 | As for Defendants' argument that the conversion claim fails because there is no allegation that any defendant used the property for their own use, the argument is not persuasive. Using the second property for their own use "is not an element of conversion or trespass to chattels. See CACI Jury Instruction No. 2100; see also Spates, 114 Cal.App.4th at 221, 7 Cal.Rptr.3d 597; Thrifty-Tel, 46 Cal.App.4th at 1556, 1567, 54 Cal.Rptr.2d 468. Defendants rely exclusively on Oakdale Village Group v. Fong, 43 Cal.App.4th 539, 547 (4th Dist., 50 Cal.Rptr.2d 810 (1996). However, Oakdale actually states, "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." Id. (emphasis added). Oakdale's discussion of applying the property to one's own use is in the disjunctive. Thus, contrary to Defendants' argument, Oakdale does not require an application of the chattel for the tortfeasor's own use. Given the argument made by Defendants, dismissal of Plaintiffs' common law conversion claim will be denied.11 | Can the use of seized property by officers be classified as an element of conversion under California law or trespass to chattels | 04703.docx | LEGALEASE 00131414-LEGALEASE 00131415 | SA_Sub | 0.87 | 0 | | | | 1 |
| 14408 | Jaynes v. Com, 276 Va. 443 | 386v1 | Trespass is the unauthorized use of an entry onto another's property. See e.g., Vines v. Branch, 244 Va. 185, 190, 418 S.E.2d 890, 894 (1992) ("Where a person has illegally seized the personal property of another and converted it to his own use, the owner may bring an action in trespass, trover, detinue or assumpsit." (quoting Gaskill v. Gaskill, 136, 137, 141, 143, 71 (1893))). | Is the unauthorized use of or entry onto another's property a trespass? | Trespass - Memo 247 - 86.docx | LEGALEASE 00023281-LEGALEASE 00023282 | Condensed_SA | 0.8 | 1 | 0 | | 1 | |
| 14409 | Smith v. Colorado Interstate Gas Co., 794 F. Supp. 1035 | 413v2064 | Compensation under the Workmen's Compensation Act is intended to be an employee's exclusive remedy against an employer for job-related injuries. Curtis v. CIGNA Co. of Colorado, 774 P.2d 873, 874 (Colo.1989). A right to compensation under the Workmen's Compensation Act exists where (1) at the time of the injury, both the employee and employer are subject to the provisions of the act and its terms where the employer has complied with the provisions thereof regarding insurance; (3) at the time of the injury, the employee is performing services arising out of and in the course of his employment; and (4) the injury or death is proximately caused by injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted (Popovich v. Irlando, 811 P.2d 379, 387,738) (Colo.1991). | Is compensation under the Workmen's Compensation Act intended to be an employee's exclusive remedy against an employer for job-related injuries? | Workers Compensation - Memo #103.14AC.docx | LEGALEASE 00022285-LEGALEASE 00022286 | Condensed_SA_Sub | 0.62 | 1 | 0 | 1 | | |
| 14410 | Perrov v. VTT Wine & Cable Du., 189 R.I. 336 | 413v1 | The workmen's compensation act is social legislation remedial in nature.Beaudry v. United States.Ruttier Co., 88 R.I. 162, 143 A.2d 301 (1958). An injured employee is entitled to a physician or surgeon of his choice. G.L.1956, s 28-33-8, as amended, and submission in good faith to a course of treatment prescribed by the doctor of his choice is in the interest of curing or relieving a work-connected injury establishes any involuntary refusal by the employee to accept and follow the treatment recommended does ... | Is the Workmen's Compensation Act a social legislation remedial in nature. | 04784T.docx | LEGALEASE 00132877-LEGALEASE 00132879 | Condensed_SA | 0.86 | 1 | 0 | | 1 | |
| 14411 | Wit'k v. Travelers Indem. Co. of Illinois, 240 S.W.3d 220 | 413v52 | The Workmen's Compensation Act ("Act"), codified at Tennessee Code Annotated Section 50-6-101 et seq., is legislatively created quid pro quo system where an injured worker forfeits any potential common law rights for recovery against his employer in return for a system that provides compensation completely independent of any fault on the part of the employer. See Pruss Code Ann.'s 50-6-116(d). A liability Miller Ins. Co. of Tenn. v. Shockly, 247 Tenn. 195, 368 S.W.2d 736, 738 (1963). However, this liberal construction requirement does not subvert the intent or alter or weaken the statute's meaning. West, T.C.A. S 50-6-101 et seq. | Is Workmen's compensation law a social welfare statute? | 04788.docx | LEGALEASE 00132970-LEGALEASE 00132971 | Condensed_SA_Sub | 0.68 | 1 | 0 | 1 | | |
| 14412 | Gray v. Williams, 91 Vt. 111 | 25+10 | The position of the writing on the note is not important, for upon the question of the materiality of matter written in the margin of a negotiable instrument, 93 V.T. 1, the effect of the contract is to be gathered from the four corners of the instrument. Warrington v. Early, 2 E. & B. 763, 79 E. C. L. 763. The question is whether a memorandum written on an instrument in the margin at the top is made before or at the time of its execution. It is considered part of it, and its effect is the same as though it were interlined in the body of the instrument, it is a material part of it. Fletcher v. Blodgett, 16 V. 26, 42 Am. Dec. 487; Henry v. Coleman, 5 Vt. 402; 1 Dan. on Neg. Inst. s. 150 (64) 1; C. J. 1220; Fenn v. Jones, 6 E. & B. 818, 191 E. C. L. 219. The cases including our own are reviewed in an extended note to Barnes v. Van Keuren, Ann., 1 Kans. 154, 22 L. R. A. (N. S.) 612, at 127 Am. St. Rep. 432. It follows that words written by a party upon the margin of an instrument after the execution and delivery constitute no part of it, unless ratified or consented to after the making of the instrument, and they would have such effect if there were the instrument was executed. | Are the memoranda at the side of the note a part of it? | 03224.docx | LEGALEASE 00133662-LEGALEASE 00133663 | Condensed_SA | 0.81 | 1 | 0 | | 1 | |

2892

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16413 | Brees v. Breukhoff, 327 F.3d 225 633 7 | 229=633 7 | When, as here, the dismissal is voluntary, Wisconsin law provides that the dismissal is not on the merits "(g)iven the express provision that the order…" Wis.Stat. §805.04(2). See also Marshall-Wisconsin Co. v. Juneau Square Corp., 139 Wis.2d 112, 406 N.W.2d 764, 772 (1987)(18 U.S. undoubtedly the law of this state that a reasonable voluntary dismissal by plaintiff of the case for action or claim against a party… | Under Wisconsin law of res judicata, does court's dismissal of former employee's petition for review of administrative decision rejecting his discrimination claim did not bar federal court from hearing employee's Title VII claims, although dismissal was without prejudice and thus tantamount to judgment on the merits with respect to further proceedings regarding his discrimination claim to any right employee might have to pursue claims in federal or state court under Title VII, Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq. | Is dismissal with prejudice tantamount to a judgment on the merits? | Pretrial Procedure - Memo #3161 - C - KE.docx | RDS5/00298318-RDS5-00298382 | Condensed, SA, Sub 0.56 | | 0 | 1 | | 1 | 1 |
| 16414 | Kelty v. Cent. Bank & Tr. Co. of Denver, 794 P.2d 1037 | 8314452 | Central Bank's second argument also fails. Negotiation of order paper requires the authorized indorsement of the named payee. See C.R.S. 4-3-202. C.R.S. The question of whether the payee's indorsement is authorized, however, does not arise unless there is a negotiation in the first place… | Negotiation of order paper requires authorized endorsement of named payee, C.R.S. 4-3-202. | Does a negotiation of an order paper require the authorized indorsement of the named payee? | 00951.docx | LEGALEASE-00133772-LEGALEASE-00133773 | Condensed, SA 0.88 | | 0 | 1 | 0 | 1 | |
| 16415 | Imm-Gobbo Rev. Villas S., 161, 259 F.3d 390 | 8314481 | The right to enforce a negotiable instrument is not a strictly personal obligation, and therefore may be assigned to an individual that HOLDS has validly been assigned all of its rights under the note to Real Bank. That assignment included transfer of all rights of enforcement that HOLD had… | Under Louisiana law, right to enforce negotiable instrument is not strictly personal obligation, and thus may be assigned. GAI-C.C. arts. 1764, 2642. | Can the right to enforce a negotiable instrument be assigned? | 00943.docx | LEGALEASE-00133780-LEGALEASE-00133781 | Condensed, SA, Sub 0.85 | | 0 | 1 | 1 | 1 | 1 |
| 16416 | Roberson v. Medtronic, 494 F. Supp. 2d 864 | 1345 | The language of the statute and relevant case law support Defendants' position that the Anti-Kickback Act provides only criminal penalties for its violation and provides no private right of action… | Federal Anti-Kickback Act provides only criminal penalties for its violation and provides no private right of action. Social Security Act, § 1128B, 42 U.S.C.A. § 1320a-7b. | Does the Anti-Kickback Statute provide for a private right of action? | 01200.docx | LEGALEASE-00133848-LEGALEASE-00133849 | Condensed, SA, Sub 0.71 | | 0 | 1 | | 1 | 1 |
| 16417 | City of Houston v. Rowe, 896 S.W.2d 317 | 3070x486 | Based on this uncontroverted evidence, we conclude the City established that its failure to answer the request for admission was the result of an accident or mistake; it was not intentional or the result of conscious indifference. Further, the Rowes made no specific suggestion as to how they might be prejudiced by the withdrawal of the deemed admission… | Mere fact that trial on merits will be necessary is not sufficient to carry "prejudice" prong that will warrant denying request to withdraw deemed admissions. Vernon's Ann.Texas Rules Civ.Proc., Rule 169, subd. 2. | | 02885.docx | LEGALEASE-00133920-LEGALEASE-00133921 | Condensed, SA, Sub 0.76 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 16418 | State v. Ray, 122 W. Va. 19 | 211H1658 | The instant indictment, it seems to us, is defective also because it does not allege that the defendant is a person over sixteen years of age. Such facts, of course as much an element of the statutory crime, by reason of its inclusion in the definition of a 'person of bad character'; and the failure to allege it renders the indictment demurrable. In State v. Wright, 91 W.Va. 500, 113 S.E. 944, and State v. Yates and Medley, 91 W.Va. 324, 113 S.E. 751, this court held that an indictment for statutory rape was defective simply because it failed to allege that defendant was of more than sixteen years of age. The apt requirement that defendant be over sixteen years of age is in the body of section 15 of Chapter 144, Sec. 15. The present requirement that defendant be over sixteen years of age is in the body of Code, 61-2-15, while the age requirement contained in Barnes Code 1918 is embraced in a proviso of that section. The Barnes Code 1918 is embraced in a proviso of that section, Barnes Code statute is here construed into the statute by way of proviso. State v. Wright, supra, 91 W.Va. at page 502, 113 S. E. 944, State v. Kisparick, 88 W. Va. 381, 106 S.E. 887; Stockton v. Morris, 39 W.Va. 432, 19 S.E. 531; State v. Lawson, 32 W.Va. 402, 11 S.E. 9 S.E. 361, 1 S.E. A. 795, See, also, Commonwealth v. Hill, 5 Grat. 682, 46 Va. 682. For discussion of the operation of proviso clauses in penal statutes, see Lindsey v. Cunningham, 90 W.Va. 435, 111 S.E. 835, and 40 West Virginia Law Quarterly, 64. | An indictment for statutory rape was demurrable where it failed to allege that the defendant was over 16 years of age. Code 1931, 61-2-15, 62-9-7. | Does an indictment for statutory rape require to state the defendant's age? | Sex Offence - Memo 65 bis.docx | LEGALEASE-00025720-LEGALEASE-00025721 | Condensed, SA, Sub 0.91 | | | 1 | 1 | 1 | 1 | 1 |
| 16419 | People v. Hartsaw, 400 Ill. 361 | 353H+155 | The argument that the indictment is faulty in not averring the purpose it to warn the wife of plaintiff in error, it is without avail. In an indictment for forcible rape need not aver that the female was not the wife of the accused. People v. Stowers, 254 Ill. 588, 98 N.E. 986; People v. Dowdles, 191 Ill. App. 123, 94 N.E. 52. | Indictment for forcible rape need not aver that the female was not the wife of accused. | Does an indictment for forcible rape require that the female not be the wife of the accused? | 043855.docx | LEGALEASE-00133832-LEGALEASE-00133833 | Condensed, SA 0.73 | | | 1 | 0 | 0 | 1 | 1 |
| 16420 | United States v. Foley, 740 F.3d 1079 | 110+368.37 | The production of child pornography is a federal crime under 18 U.S.C. § 2251(a). A person commits this crime by employing, using, persuading, induces, enticing, or coerces any minor to engage in... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." The statute criminalizes commercial production of such material but also extends production for noncommercial purposes. This means element requires the government to show either that the images traveled in or were produced using materials that traveled in interstate or foreign commerce, or that any material used to produce the images traveled in or affecting interstate or foreign commerce. Id. The broadest interpretation is that even the first steps by proving that the visual depiction of Minor Male X engaging in sexual conduct were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce." Id. The defendant argues that the "materials" Foley used were the iPad and drives. | Although defendant was not charged with sexual assault, his charged crimes of child pornography production, distribution and possession, as well as transporting a minor across state lines to engage in sex act, involved sexual acts by adults with minors between 12 and 19 years old, which qualified as sexual assault under rule allowing admission, in a case in which defendant was accused of sexual assault, of evidence that defendant committed another sexual assault, where victim's testimony that several years earlier, when he was between 13 and 13 years old, he had been sexually fondled by defendant in a particular room was admissible; focus of the rule was on the conduct itself rather than how the charges were drafted. 18 U.S.C.A. 55 2251(a), 2423(a), 2252A; Fed.Rules Evid.Rule 413, 28 U.S.C.A. | Is the production of child pornography a crime? | 041115.docx | LEGALEASE-00133810-LEGALEASE-00133811 | Condensed, SA, Sub 0.2 | | | 1 | 1 | 1 | 1 | 1 |
| 16421 | House v. United States, 99 Fed.Cl. 342 | 34+5(6) | Where a member of the military resigns or retires, his decision is presumed to be voluntary. See, e.g., Moyer v. United States, 190 F.3d 1314, 1320 (Fed.Cir.1999) Tippett v. United States, 185 F.3d 1250, 1255 (Fed.Cir.1999); Moody v. United States, 58 Fed.Cl. 522, 524 (2003). It is a plaintiff's burden to demonstrate otherwise, and in the plaintiff's decision was not freely made. That proof may consist of evidence that the resignation or retirement: (1) resulted from deception or misrepresentation by the government, Moyer, 190 F.3d at 1320; Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574-75 (Fed.Cir.1983); (ii) was made under duress, Moody, 58 Fed.Cl. at 524; or (iii) was made on a legal error or misinformation of the plaintiff's rights, Tippett, 185 F.3d at 1255; Christian v. United States, 337 F.3d 1338 (Fed.Cir.2003). The presumption of voluntariness is not rebutted by merely showing that the service member faced an inherently difficult situation, or where his choice was limited to two unpleasant alternatives... There is, in the past says, between... "Scylla and Charybdis." Christie, 518 F.2d at 587 (Sedlens, J., dissenting.) See also Dumas v. Dep't of Labor, 515 F.3d 1375, 1381 (Fed.Cir.2002); Covington v. Dep't of Health & Human Servs., 750 F.2d 937, 943 (Fed.Cir.1984). Under this view, a resignation is deemed voluntary even where the offered to avoid a court-martial or other serious discipline. | Where a member of the military resigns or retires, his decision is presumed to be voluntary, for purposes of invoking Military Pay Act. 37 U.S.C.A. 1204. | Is a decision of a member of the military to resign or retire presumed to be voluntary? | Armed Services - Memo 138 - 25.docx | ROSS-003303762-ROSS-003303764 | SA, Sub 0.9 | | 0 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| | | | | | | | | | | 0 | | | | |
| 16422 | Kies v. United States, 47 Fed. Cl. 493 | 34+(13) | Plaintiff had a reasonable alternative in requesting reinstatement. Although he may not have subjectively believed the Army had a mechanism but to retire, the fact remains that Plaintiff had the option of challenging the discharge of the retirement action, as well as the process available... | A choice between two unpleasant alternatives does not make the decision to retire from the military involuntary. | Does a choice between two unpleasant alternatives yield a voluntary decision to retire? | 000866.docx | LEGALEASE-00136183-LEGALEASE-00136184 | SA, Sub | 0.93 | | | 1 | 1 | |
| 16423 | Thomas v. United States, 42 Fed. Cl. 449 | 34+18.5 | Given our finding that plaintiff's retirement was voluntary, it follows as a matter of law that his claim for separation pay was not justified and, consequently, he is not entitled to reinstatement to active duty. Further, even if the retirement were involuntary, this court does not have the authority to order the reinstatement of a serviceman beyond the date on which his term of enlistment would have expired. Dodson v. United States, 988 F.2d 1199, 1204 (Fed Cir.1993) | Court of Federal Claims does not have the authority to order the re-enlistment of a serviceman beyond the date on which his term of enlistment would have expired. | Does a court have authority to order reinstatement? | Armed Services - Memo 148 - JS.docx | ROSS-003289976-ROSS-003289977 | Condensed, SA, Sub | 0.66 | 0 | | | 1 | |
| 16424 | United States v. Mariano, 983 F.2d 1150 | 350H+654(4) | The essential difference between bribe and illegal gratuity is the intention of the briber. To effect a bribe, payor must intend an offer or payment to influence an official action "quid pro quo." See United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 119 S.Ct. 1402, 1405, 143 L.Ed.2d 576 (1999). While no court order is required to effectuate a corrupt purpose as an element of the offense. See U.S.S.G. ' 2C1.1, comment. (bkdg(d), 2) | Essential difference between bribe and illegal gratuity is intention of briber to effect illegal payment quid pro quo in bribery offense; illegal gratuity applies when transfer of money has corrupt purpose, such as inducing public official to participate in fraud or to influence his official actions. U.S.S.G. § 2C1.1, comment. (bkdg(d), 2) | What is the distinction between a bribe and an illegal gratuity? | 011603.docx | LEGALEASE-00134030-LEGALEASE-00134031 | Condensed, SA, Sub 0.39 | | 0 | | | 1 | |
| 16425 | Kirby v. Guab, 75 S.W.3d 916 | 307A+517.1 | Rule 67 (F 1001) provides "a civil action may be dismissed by the plaintiff without an order of the court and at any time prior to the introduction of evidence at the trial." Once a plaintiff files a voluntary dismissal pursuant to this rule, the trial court loses jurisdiction as there is nothing before the court upon which it can act. State ex rel. Fisher v. McKenzie, 754 S.W.2d 557, 560 (Mo.banc 1988). A voluntary dismissal is effective on the date it is filed with the court. Thornton v. Deaconess Medical Center-West, 929 S.W.2d 872, 873 (II.Mo.App. 1996). While no court order is required to effectuate... as therewith regard to the assessment of costs. Garrison v. Jones, 557 S.W.2d 247, 249 (Mo.banc 1977); Liberman v. Liberman, 844 S.W.2d 79, 80(II.Mo.App. 1992). Other actions taken by the trial court after a party files his or her voluntary dismissal are considered nullities. McKenzie, 754 S.W.2d at 560. | Is voluntary dismissal of civil action in effect on date it is filed with court, as when plaintiff files it (filed via court)? V.A.M.R. 67.01. | Is voluntary dismissal of civil action in effective on date it filed with court? | 024411.docx | LEGALEASE-00134027-LEGALEASE-00134028 | Condensed, SA, Sub 0.9 | 0 | | | 1 | |
| 16426 | State ex rel. McCulloch v. Taylor, 268 Mo. 312 | 307A+493.1 | While people power has been conferred on the courts to require, on the application of a litigant, the production by the adverse party of books and papers (articles 12, c. 21, R. S. 1909) and by the provisions of a rule "he desires to have the inspection and copying of them, and this procedure of the part Multhnd(d), 20 Mo. 493) it was held that a notary public had no power to commit a witness for refusing to produce books and papers under a rule to require his own... person. Increasing identifying that the power conferred to take depositions is purely of statutory creation and its terms must be substantially complied. This ruling, mode more than half century ago, has never been questioned, and the statute (now section 638, R. S. 1909.) forms the basis of the section 6344, R. S. 1909.) declaring that it has now changed of removal of 18.85, except in other sections to authorize the appointment in cities of... the broad discretion of the court, and the statute (now section 6334, R. S. 1909...)the prescriptions as to taking depositions, who... taking of testimony offered, are given no greater authority than that conferred on officers authorized to take depositions. | Does any statute authorize the requirement that a witness produce books and papers on giving deposition? | Pretrial Procedure - Memo 4 2989 - C - IG.docx | ROSS-003300054-ROSS-003300055 | Pretrial Procedure Memo 4 2989 - C - IG.docx | Condensed, SA, Sub 0.88 | 0 | | | 1 | |
| 16427 | Mobil v. Collins Colliery Co., 46 W. Va. 625 | 307A+493.1 | It is a general rule that a deposition taken without leave of court cannot be retaken without the leave of the court, which will always be granted whenever justice seems to require it. Carter v. Edwards, 16 Va. 58. | Are depositions retain same without an order of court properly excluded? | 028806.docx | LEGALEASE-00134489-LEGALEASE-00134490 | Condensed, SA, Sub 0.34 | 0 | | | 1 | |
| 16428 | Sidwain v. Cubin, 791 P.2d 581 | 307A+983.1 | A pretrial order is the control mechanism for action in a civil case. Rule 16, W.R.C.P., cited and approved in Oukrop v. Spiral Tord, Inc., 5327 2d 1360 (Wyo.1976). This order has the effect in that, whether or not the parties in a particular case are required to abide with this provision in W.R.C.P., is a matter of broad discretion with the trial judge, Oukrop v. Spiral Tord, 9 P.2d 231, 237 (Wyo.1986), and any claims of error in that regard are examined under that standard. See also McCabe v. R. A. North Construction Company, Inc., 674 P.2d 699 (Wyo.1983) to this effect. | Does the pretrial order controls the subsequent course of action? | Pretrial Procedure Memo 2 3889 - C - AP.docx | ROSS-003291663-ROSS-003291664 | Condensed, SA, Sub 0.55 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,073 |
| 16429 | Evans v. Rothschild, 54 Kan. 747 | 307A+633.1 | A reasonable construction of the statute, in the light of its evident purpose, constrains us to hold that a party giving notice to take depositions at different places must so arrange the times as to allow the adverse party to be present at, and participate in, all of them at least once after the conclusion of the taking of one deposition to allow the party at least time sufficient to reach the next place where they are to be commenced. Weeks, Dep. * 244; Fant v. Miller, 17 Grat. 187. As the testimony included in the deposition taken at Chicago is of vital importance to the plaintiff's case, and he had no opportunity to appear and cross-examine the witnesses, the error in refusing to suppress the deposition compels a reversal of the case. | The adverse party has a right to be personally present at the taking of any deposition pursuant to notice. Cited, § 582. | Does the adverse party have a right to personally present at the taking of any deposition pursuant to notice? | 02B951.docx | LEGALEASE 00136212-00136213 | Condensed_SA_Sub 0.84 | | 0 | | | 1 | |
| 16430 | Wells Fargo Bank, Nat. Assn. v. Summerow, 194 So.3d 448 | 307A+486 | It appears the trial court was under the false impression that it was required to uphold the prior order ruling. Wells Fargo withdrew from technical admissions. But rule 1.370(b) gives the court the flexibility to change a ruling or permit a party to amend or withdraw admissions. And because the record reveals no contrary intention to those admissions and nowhere failed to show prejudice, we conclude that the trial court abused its discretion in denying Wells Fargo relief from technical admissions. Accordingly, we reverse the final order of involuntary dismissal and remand for a trial on the merits. | Rule allowing withdrawal of admissions gives the court the flexibility to change a ruling or permit a party to amend or withdraw admissions. West's F.S.A. RCP Rule 1.370(b). | Can a party reset that an admission be withdrawn or amended? | 02N085.docx | LEGALEASE 00134575-00134576 | Condensed_SA_Sub 0.72 | | 0 | | | 1 | |
| 16431 | 32nd Ave. LLC v. Angelo Holding Corp., 134 A.D.3d 696 | 307A+472 | CPLR 3132(a) authorizes the service of a notice to admit upon a party, and provides that if matters set forth in the notice are not, the matters of fact contained therein be deemed admitted for all purposes. [...] Certain items in notice to admit, served upon plaintiff LLC by individual third-party defendant in foreclosure action, improperly sought concession of served matters that went to very heart of controversy between the parties and involved matters that were in controversy [...] McKinney's CPLR 3132(a). | Certain items in notice to admit, served upon plaintiff LLC by individual third-party defendant in foreclosure action, improperly sought concession of served matters that went to very heart of the controversy between the parties and involved matters that were in controversy, because individual third-party defendant could not have reasonably believed that admissions he sought were not in substantial dispute, and thus plaintiff LLC was not obligated to respond to notice. McKinney's CPLR 3132(a). | "Does the rule governing admissions authorize the service of a notice to admit upon a party, and provides that if a timely response thereto is not served, the contents of the notice are deemed admitted?" | 02I021.docx | ROSS-003317812-ROSS-003317813 | Condensed_SA_Sub 0.54 | | 0 | | | 1 | |
| 16432 | Santos v. Dean, 96 Wash. App 849 | 307A+472 | The impracticality and unfairness of adopting the standard suggested by Mr. Santos is apparent. The practical effect of denying an extension for filing the admissions to that conclusion would be to put ask Ms. Boone to admit legal conclusions and reach factual issues central to the dispute. The purpose of CR 36 is to eliminate from controversy matters that will not be disputed at trial. [...] Moreover, a party is not required to admit legal conclusions under CR 36. [...] Angeletti reasonably relied under the normal rigor of trial preparation. | Purpose of rule governing requests for admissions is to eliminate from controversy matters that will not be disputed at trial. CR 36. | "Is the purpose of rule, providing that if party fails to admit truth of any matter as requested in request for admissions the court may award reasonable expenses including attorney fees, to eliminate from controversy matters which will not be disputed?" | 03O021.docx | LEGALEASE 00134857-LEGALEASE 00134858 | Condensed_SA_Sub 0.84 | | 0 | | | 1 | |
| 16433 | City of New Orleans v. Christian, 229 La 855 | 371+2011 | He tax in question is referred to in the Ordinance and the statute as a "license" tax but that is immaterial. The conclusion that the tax is an excise or license tax rather than a property tax is determining whether a tax is excise or property is not the name of the tax but its true characteristics. The power of the legislature to levy a license or excise tax is unlimited, except as restricted by the constitution, and its character must be determined by its incidents. Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 292, 41 S.Ct. 272, 274, 65 L.Ed. 638, 645; Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. | Character of a tax must be determined by its incidents, and the name by which a tax is described in the statute is immaterial. | "Is the name by which a tax is described in the statute immaterial?" | Taxation - Memo # 338 - C McAdoo | LEGALEASE 00024664-LEGALEASE 00024665 | Condensed_SA_Sub 0.79 | | 0 | | | 1 | |
| 16434 | St. Luke Estates v. Ashley, 105 Ha. 534 | 371+2763 | In its pragmatic application, a tax is not a debt in the ordinary sense of that term, it is not predicated on contract, and can, under no circumstances, be discharged by insolvency proceedings, and when legally assessed taxing officers are totally without power to compromise or release the amount of such taxes. Continuing, the tax shall be due and payable... Our statute contains that "such taxes, or the unpaid portion thereof, shall then become delinquent..." The purpose of the legislature in adding the interest charge is not stated, but was it necessary to have interpolated the words "as compensation to the state" to indicate a clear and express legislative intent? Construing the statute, taxes shall be added to the company so that the delinquent taxpayer would be so tardy in his remittances and would be detained. | When legally assessed, taxing officers are powerless to compromise or release tax except as specifically authorized by statute, which must be rigidly pursued (Cmst. art. 9, 5.5). | Is a tax predicated on contract? | 04O015.docx | LEGALEASE 00134280-LEGALEASE 00134281 | Condensed_SA_Sub 0.56 | | 0 | | | 1 | |
| 16435 | Willett v. Hendrickson, 119 N.J. Eq 447 | 371+2763 | It must be understood that interest does not inhere in a tax as a legal incident, but may be attached by statute. Our statute enacts that a tax, when delinquent, does not bear a statutory rate of interest. Interest added on a tax where none existed at common law; interest is purely statutory, and is in the nature of a penalty for non-payment, and therefore, where no provision is made therefor, but is an incident which should include both the amount of tax which is the principal, and the interest added as a penalty for nonpayment. [...] can be added when the company so that the state for which is an action at law such interest can be maintained, and shall bear a preferred debt in case of insolvency? R.S. 54:27:4, N.J.S.A. 54:27:4. | Interest does not inhere in a tax as a legal incident, but may be attached by statute. | Can interest be attached for tax by legislative enactment? | Taxation - Memo # 440 - C.Sls.docx | ROSS-003303662-ROSS-003303663 | Condensed_SA 0.87 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16436 | Martin Marietta Corp. v. Ins. Co. of N. Am., 40 Cal. App. 4th 1113 | 217+2310 | Further, it is established that trespass and nuisance claims may include wrongful entry or invasion by pollutants. Trespass may be " "by personal intrusion of the wrongdoer or by his failure to leave; by throwing or placing something on the land; or by causing the entry of some other person...." " A trespass may be on the surface of the land, above it, or below it. (5 Witkin, Summary of Cal. Law (9th ed. 1990) Torts, " 604, p. 704.) The migration of pollutants from one property to another may constitute a trespass, a nuisance, or both. (Cassinos v. Union Oil Co., supra, 14 Cal.App.4th 1770, 1778, 18 Cal.Rptr.2d 574; Resolution Trust Corp. v. Rossmoor Corp. (1995) 34 Cal.App.4th 93, 99, 40 Cal.Rptr.2d 328.) To agree with INA that "wrongful entry" does not include trespass and nuisance claims would fly in the face of this long-standing law. | Personal injury coverage for wrongful entry or eviction or other invasion of right of private occupancy under broad form comprehensive general liability (CGL) endorsement is not limited to landlord-tenant claims, but encompasses trespass and may encompass nuisance claims arising from pollution, whether or not defendant entered plaintiff's land with force and violence or threats thereof and with intent to oust plaintiff from possession. | Can a trespass claim include wrongful entry or invasion by pollutants? | 047396.docx | LEGALEASE-00134795-LEGALEASE-00134796 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 16437 | Builders First Source-S. Texas, LP v. Ortiz, 515 S.W.3d 451 | 25T+363(1) | In challenging the trial court's order setting aside the sanctions orders and appointing a new arbitrator, Builders First relies heavily on the Fifth Circuit decision in Gulf Guaranty Life Insurance Co. v. Connecticut General Life Insurance Co., 304 F.3d 476 (5th Cir. 2002). In Gulf Guaranty, the Fifth Circuit held that the FAA does not provide for intervention or removal of arbitrators in an arbitration proceeding before the final award is issued. See 304 F.3d at 487 ("The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award ...."); see also id. at 490 ("[T]he FAA appears not to endorse court power to remove an arbitrator for any reason prior to issuance of an arbitral award."); In re Ihi, 324 S.W.3d 891, 894 (Tex. App."Houston [14th Dist.] 2010, orig. proceeding) ("If the FAA applies, as here, a trial court does not have the power to review any interlocutory ruling by an arbitration panel.") (citing Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980)). We find these authorities inapposite because Batista had nonsuited his claims in arbitration, thereby making the sanctions orders final for purposes of trial court review. | Arbitrator's sanctions orders against employee, who allegedly suffered on the-job injuries, for discovery violations in arbitration proceedings on negligence claims against employer were final, rather than interlocutory, orders, and thus were subject to review by district court for evident partiality by the arbitrator, in light of worker's voluntary nonsuit of his claims without prejudice; when worker voluntarily nonsuited claims, only remaining claims for affirmative relief were sanctions motions, and once those motions were adjudicated, no further issues remained before arbitrator. 9 U.S.C.A. S 10(a)(2); Tex. R. Civ. P. 162. | Does Federal Arbitration Act (FAA) provide for any court intervention prior to issuance of arbitral award? | Alternative Dispute Resolution - Memo 632 - SB.docx | LEGALEASE-00024786-LEGALEASE-00024788 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 16438 | United States v. Cogan, 266 F. Supp. 374 | 91+283 | In denying this motion we adopt the able opinion of Judge Bryan in United States v. Barash, 266 F.Supp. 126, 65 Cr. 243 (D.C., Dec. 8, 1966). As stated by Judge Bryan, Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) and Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) do not compel us to order an election. In United States v. Umans, 368 F.2d 725 (2d Cir. 1966) our Court of Appeals upheld the conviction of a person charged both with paying a bribe to Internal Revenue agents in violation of 18 U.S.C. " 201 and with aiding and abetting the agents' violations of 26 U.S.C. " 7214(a)(2). See also United States v. Kenner, 354 F.2d 780 (2d Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966). | Indictment charging conspiracy, bribery and aiding and abetting receipt of bribes and alleging that internal revenue agents received fees not provided by law, that defendant offered agent's fees other than provided by law in recognition of acts performed by agents and that defendant through his employee offered money to agents to influence their official actions, and bill of particulars were sufficient to apprise defendant of charges against him, enable him to prepare his defense, avoid double jeopardy and avoid prejudicial surprise at trial. 18 U.S.C.A. SS 201, 371; 26 U.S.C.A. (I.R.C.1954) S 7214(a)(2). | Is a person convicted for aiding and abetting an agents violation under 26 U.S.C. 7214(a)(2) of the bribery statute? | Bribery - Memo #325 - C-EB.docx | ROSS-003290355-ROSS-003290356 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 16439 | United States v. Kummer, 89 F.3d 1536 | 63+1(1) | Although " 1954 does not use the term "bribe" or "gratuity," the courts have noted that the language "because of, or with intent to be influenced" corresponds with a "bribe/gratuity dichotomy." United States v. Lopreato, 83 F.3d 571, 575 (2d Cir.1996). The "with intent to be influenced" language prohibits a bribe, which involves a quid pro quo.Id.; see also United States v. Mariano, 983 F.2d 1150, 1159 (1st Cir.1993) (a bribe involves intention of briber to gain quid pro quo); United States v. Muldoon, 931 F.2d 282, 287 (4th Cir.1991) (payer's intent to influence recipient's actions distinguishes bribe from gratuity). The "because of" language prohibits a gratuity, which involves no quid pro quo, but is a payment made "because of the act." Muldoon, 931 F.2d at 287. | "With intent to be influenced" language of statute prohibiting offer, acceptance, or solicitation to influence operations of employee benefit plan prohibits bribe, which involves quid pro quo. 18 U.S.C.A. S 1954. | Does Section 1954 of the statute concerning bribes prohibit bribes and gratuities? | 011525.docx | LEGALEASE-00135461-LEGALEASE-00135462 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 16440 | Lamar v. State, 603 So. 2d 1113 | 63+1(1) | A material element of the crime of bribery is the defendant's intent at the time he attempted to bribe the witness. Maddox v. State, 520 So.2d 143 (Ala.Cr.App.1986). The evidence in this case is insufficient to prove intent to corruptly influence the testimony of Jennifer Larkins. The record is silent as to whether Larkins testified in Case No. 89-324. But, her testimony in this case is clear that had she been called she would have testified, as she put it, "I told him (Lamar) Yeah I would go, but it would be on things that I was sure on. I made that specifically clear." We note that the trial judge was quite apprehensive about the sufficiency of the evidence to sustain a prima facie case. He had reservations about a social history between Lamar and Larkins. Yet the record shows that they had known each other for four or five years-both in Samson and in Opp. That does not prove a social history, but it does show that they were not strangers. | Material element of crime of bribery is defendant's intent at time he attempted to bribe witness. Code 1975, S 13A-10-121. | What is a material element of the crime of bribery? | Bribery - Memo #387 - C - LB.docx | ROSS-003303599-ROSS-003303600 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 16441 | United States v. Arnone, 973 F. Supp. 206 | 350H+736 | At trial, the defendants were convicted of conspiracy and violating 18 U.S.C. " 215, the bank bribery and gratuity statute. The statute provides that whoever: (1) corruptly gives, offers or promises anything of value to any person, with intent to influence or reward an officer, director, employee, agent, or attorney of a financial institution in connection with any business or transaction of such institution; (2) As an officer, director, employee, agent, or attorney of a financial institution, corruptly solicits or demands for the benefit of any person, or corruptly accepts or agrees to accept anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution ... shall be fined not more than $1,000,000 or three times the value of the thing given, offered, promised, solicited, demanded, accepted, or agreed to be accepted, whichever is greater, or imprisoned not more than thirty years or both, but if the thing given, offered, promised, solicited, demanded, accepted, or agreed to be accepted does not exceed $1,000, shall be fined under this title or imprisoned not more than one year, or both. | Loan used to finance building construction was not proper element of the improper benefit sentencing computation with respect to convictions for conspiracy and violation of bank bribery and gratuity statute; loan, with or without favorable modifications, represented real benefit to bank, real estate market was booming at time bank extended loan to one defendant and her partners, and deal with third party indicated in loan proposal submitted to bank's board of investment was not a complete illusion. 18 U.S.C.A. S 215; U.S.S.G. S 2B4.1, 18 U.S.C.A. | What is bank bribery? | Bribery - Memo #478 - C-JL.docx | ROSS-003303626-ROSS-003303627 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 21,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16442 | Davenport v. State, 27 Ga. App. 304 | 110v29(1) | The only contention of the defendant that warrants any discussion is that the asserted fact that the plaintiff in error was in no way coupled with legally convicted of burglarizing a public building. Section 146 of the Penal Code of 1910 defines burglary to be "The breaking and entering into the dwelling, mansion, or storehouse, or other place of business of another, where valuable goods, wares, produce, or any other article of value are contained or stored, with intent to commit a felony or larceny." [Italics ours]... | That defendant is breaking and entering the sheriff's office in the courthouse may have been guilty of burglary from the house under Penal Code 1910, § 146, does not prevent his trial and conviction for burglary from a place of business. | Is breaking and entering a place of business considered a burglary? | 012617.docx | LEGALEASE 00135783-LEGALEASE 00135784 | Condensed, SA, Sub 0.55 | 0.55 |  | 1 | 1 | 1 | 1 |
| 16443 | United States v. Andriolo, 350++1262 | 350++1262 | Section 924(e) provides, in pertinent part, that a person who is convicted of existing "922(g) and who has three or more prior convictions "for a violent felony," "each such count being from any count being committed different from one another, is to be sentenced to a prison term of at least 15 years. 18 U.S.C. § 924(e)(1). A "violent felony" is "a felony... the term "violent felony" includes "burglary" expressly and includes any other felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(ii). Burglary, for purposes of a "924(e) enhancement, means any crime that includes the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime. Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). Burglary was made a basis for enhanced punishment for the sequence of offenses covered by "922(g) because it inherently involves risk of injury to persons who may be in or near the building during the burglary. See Taylor v. United States, 495 U.S. at 585, 110 S.Ct. at 2151 ... "even though injury is not an element of the offense, it is a potentially very dangerous offense, because when one breaks into a residential burglary or even your professional commercial burglary, there is a very serious danger to people who might be inadvertently present in the premises." [quoting Hearing on H.R. 4639 and H.R. 4768 before Subcommittee of the Judiciary, 99th Cong., 2d Sess. (1986)). Taylor v. United States, 495 U.S. at 588, 110 S.Ct. at 2152 ("[T]he fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate."). The risk of injury to persons is thus one generally identified as a violent felony in "924(e)(2)(B)(ii). Trevino conduct that... | For purposes of statute providing sentence enhancement for defendant who is convicted of unlawful possession of firearm and who has three prior convictions for violent felony, the matter of whether crime other than one specifically identified as a violent felony in sentence enhancement statute involves conduct that presents serious potential risk of physical injury to another is question to be answered by reference to general definition of crime of which defendant was convicted. 18 U.S.C.A. § 924(e)(2)(B)(ii). | Is burglary a violent felony? | Burglary - Memo 129-JS.docx | ROSS-003318561-ROSS-003318563 | Condensed, SA, Sub 0.77 | 0.77 |  | 1 | 1 | 1 | 1 |
| 16444 | Coughlin v. City of Milwaukee, 227 Wis. 357 | 302+6(16) | A mere averment of duress, without setting out facts justifying such averment, is a conclusion of law. Murphy v. Mitchell, 31 C.B.R. 4999; Hately v. Kemp. 73 Colo. 251, 215 P. 140, 48 C.J. 795, pp. 63, 62, and cases cited under note 58, Schmidt v. Maitland, 282 Ill.App. 221; Pomeroy, Code Remedies, 5th Ed., p. 514, "564. | A mere averment of duress, without setting out facts justifying such averment, is a conclusion of law. | Is the mere averment of duress a conclusion of law? | Pleading - Memo 317-RMM.docx | ROSS-000290072-ROSS-000290073 | Condensed, SA 0.71 | 0.71 |  | 1 |  | 1 |  |
| 16445 | Matter of Wong, 352 Mont. 111 | 307+716 | The City of Billings argues that the Police Commission's denial of the continuance was not an abuse of discretion. Wong argues that the City of Billings overlooks his request for continuance, made without legal counsel, and denies a continuance due to lack of representation does not ensure the grant of a continuance. Gruetzmacher, Inc. v. Merchant's Mut. Pacific Nat'l Co. (9th Cir.1964), 335 F.2d 898). M.D. Rutledge v. Electric Hose and Rubber Co. (9th Cir.1975), 511 F.2d 668. In making its decision on a requested continuance due to lack of counsel, a court or agency must assess whether the party performing the continuance has acted diligently in seeking counsel. 17 Am.Jur.2d. 13. If the party did not act diligently in procuring representation, a tribunal does not abuse its discretion in denying the continuance. | Seeking a continuance due to lack of representation does not ensure the grant of continuance. | Does seeking a continuance due to lack of representation not ensure the grant of a continuance? | 012035.docx | LEGALEASE 00135340-LEGALEASE 00135341 | Condensed, SA 0.89 | 0.89 |  | 1 |  | 1 |  |
| 16446 | Amaro v. Mulloy, 180 Misc. 2d 664 | 134+8 | The matrimonial court has often applied the substance of §§12(1) to cases where an attorney makes an application to withdraw. The basis for this accommodation to the parties is to permit the matters to proceed with counsel in new prosecution/matters of time, but sound... and need for the reasoned hand of counsel is often more important than in the speed flow of other litigation. Moreover, a close reading of the statute indicates that the matrimonial party has no court for the matter, or need not find the existence of an automatic stay upon the granting of withdrawal of counsel. The statute applies only to a "Death, removal or disability" of an attorney. The statute does not specifically apply to cases in which an attorney withdraws with leave of the court. Moreover, it should/does not apply to cases in which the party discharges their attorney (see, Gross Construction Corp. v. William of others, 123 A.D.2d 376, 648 N.Y.S.2d 132); (arrow and others, 211 A.D.2d 78, 659 N.Y.S.2d 533; Bronx v. Maliner, 91 A.D.2d 1001, 459 N.Y.S.2d 193). In the present case a plaintiff's counsel made an application to withdraw in which plaintiff consented. This is akin to a discharge of counsel and thus, plaintiff should not receive the benefit of an automatic stay as provided for in CPLR 321(c). | Plaintiff, whose counsel applied to withdraw, was not entitled to automatic stay of proceedings, upon attorney's application to withdraw. In event of death, removal, or disability of attorney, since plaintiff had consented to withdrawal, attorney's application and stay did not apply to discharges. McKinney's CPLR 321(c). | Will the withdrawal of counsel entitle a party to an automatic continuance? | 012975.docx | LEGALEASE 00135455-LEGALEASE 00135456 | Condensed, SA, Sub 0.74 | 0.74 |  | 1 | 1 | 1 | 1 |
| 16447 | Sanda v. State Through Louisiana State Med. Ctr., Sch. of Dentistry, 458 So. 2d 960 | 307+716 | We deem it beyond question that a continuance is not due on a naked showing that a client has discharged his or her lawyer. To discharge one's lawyer, even without any cause, would going to trial forever. It would be fundamentally unjust to allow a plaintiff never to have to answer that the cause for asserting requires that plaintiff is unable to supply proof of damages because the plaintiff shall be open to provide remedies for example, La. Const. art. 1, 72 protected by certain... The constitutional guarantees that a client has close the courts to a plaintiff, and it equals assures implicitly that a plaintiff cannot, by continuance and such, foreclose the plaintiff/defendant by making a charge, never bringing it to trial, and forever avoiding its dismissal as unproven. | Is a continuance not due on a naked showing that a client has discharged his or her lawyer? | 029212.docx | LEGALEASE 00135903-LEGALEASE 00135904 | Condensed, SA 0.75 | 0.75 |  | 1 |  | 1 |  |

2896

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16448 | Miller v. Marina Mercy Hosp., 157 Cal. App. 3d 765 | 307A+483 | A request for admissions is not discovery device. (Internal citation omitted.) Cal. Super. Court 1.9680.173 Cal.App.3d 652, 655, 78 Cal.Rptr. 515.) Requests for admissions are primarily aimed at setting at rest a triable issue so that it will not have to be tried. (Ibid; 1 Witkin, Cal.Proc. (3d ed.), §424, 15 Cal.Rptr. 127, 364 P.2d 430.) The most important objective of the request for admissions is to narrow the issues and save the time and expense of preparing unnecessary proof. (Witkin, Cal Procedure (2d ed. 1966) Discovery and Production of Evidence, "1094; Hillman v. Stults (1968) 263 Cal.App.2d 848, 865 [70 Cal.Rptr. 293].) As a discovery device, a request for admissions differs fundamentally from the other discovery tools... | Failure to answer a request for admissions is deemed an admission of matters contained in the request? | Pretrial Procedure - Memo #1541_C - SK.docx | ROSS-000296923-ROSS-000296883 | Condensed, SA | 0.91 | | 0 | | 1 | 1 |
| 16449 | Robbins v. Alstate Ins. Co., 362 Ill. App. 3d 540 | 307A+483 | The failure to respond to a request for admission results in the admission of the facts contained in the request. Sup.Ct.Rules, Rule 216(a). | Does the failure to respond to a request for admission result in the admission of the facts contained in the request? | 02TI10.docx | LEGALEASE-00135453 LEGALEASE-00135454 | Condensed, SA, Sub | 0.87 | | 1 | | 1 | 1 |
| 16450 | Tennessee Dept of Human Servs. v. Barbee, 714 S.W.2d 263 | 307A+736 | We granted Defendant's Rule 11 Application only as to the issue pertaining to the failure of Defendant to respond to Requests for Admissions under Tenn.R.Civ.P.36. As a useful tool in the preparation of a lawsuit, for it provides a procedure by which a party may request another party to admit the truth of any matters within the scope of Rule 26.02, T.R.C.P. within either items of discovery, requests to admit under Rule 36 primarily involve the elimination of undisputed matters... | Purpose of requests for admissions is to eliminate undisputed matters in order to reduce trial time by narrowing issues; such requests which are conclusively established. Rules Civ. Proc., Rule 36.02. | 02XT16.docx | LEGALEASE-00135568 LEGALEASE-00135569 | Condensed, SA, Sub | 0.76 | | 1 | | 1 | 1 |
| 16451 | Pandozy v. Shamis, 254 S.W.3d 596 | 307A+736 | Generally, the court should grant a continuance if a party has no attorney through no fault of their own. See Cmk, 666 S.W.2d at 94. Compare St. Matthews, 769 S.W.2d at 234 [The App. from judgment [3rd Dist.] 1998... | Generally, the court should grant a continuance if a party has no attorney through no fault of its own. Vernon's Ann.Texas Rules Civ.Proc., Rule 251. | 030122.docx | LEGALEASE-00135956 LEGALEASE-00135957 | Condensed, SA | 0.82 | | 1 | | 1 | 1 |
| 16452 | Wilton v. Hendrickson, 133 N.J. Eq. 447 | 371+2763 | It must be acknowledged that interest does not where in a tax as a legal incident, but it may be attached to a tax by legislative enactment. Our statute states that "such taxes, or the unpaid portion thereof, shall thereafter bear interest..." | Interest does not where in a tax as a legal incident, but may be attached to a tax by legislative enactment. | 04321.docx | LEGALEASE-00135944 LEGALEASE-00135945 | Condensed, SA, Sub | 0.87 | | 1 | | 1 | 1 |
| 16453 | Friedman v. Am. Sur. Co. of New York, 137 Tex. 149 | 371+2001 | Section 17 of Article I of our State Constitution deals primarily with eminent domain, that is, with the taking of private property for a public use. This is a long statute. Taxes are imposed in the exercise of the legislative power of the state to raise money for public purposes... | The exercise of the power of "eminent domain" takes property and not money, whereas the exercise of the power to "tax" takes money alone. | Taxation - Memo #441 - C - SS.docx | ROSS-003212164-ROSS-003191247 | SA, Sub | 0.61 | | 0 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (14,573) | Substantive Additions (14,873) | Selection & Arrangement (22,876) | Multiple Differences (9,079) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14454 | Linley v. DeMoss, 88 Ohio App. 3d 554 | 388e10 | A common-law tort trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters private premises of another whereby damages directly ensue, even though such damages may be insignificant. See, generally Ohio Jurisprudence 3d (1989) 579, 581, Trespass, Sections 17. The act of noncommercial entry may be intentional or negligent. While the trial court correctly determined that Sgt. Hammerschmidt commit a 'technical trespass' by virtue of his unauthorized entry into Linley's home, it concluded that this conduct was 'painless' but neither wanton, reckless, nor done with a malicious purpose and, therefore, amounted only to 'negligence.' The... | Common-law tort in 'trespass' upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters private premises of another whereby damages directly ensue, even though such damages may be insignificant, and of noncommercial entry may be intentional or negligent. | Can a noncommercial entry to another's property, irrespective of whether intentional or negligent, cause a trespass? | 04737.2.docx | LEGALEASE-00135256-LEGALEASE-00135257 | SA, Sub | 0.56 | | | | 1 | 1 |
| 14455 | Kahn v. Tumminelli, 366 N.J. Super 431 | 83l+503 | We disagree that an authorized endorsement can become unauthorized by a subsequent unauthorized use of the check. Rather, we view the circumstances as constituting two acts, the endorsement necessary to obtain the funds and the subsequent use of the funds. These acts are not inseparable. The misappropriation of the funds is unauthorized, but does not convert an authorized endorsement into a forgery. Jones v. Van Norman, 513 Pa. 572, 522 A.2d 503, 507(Pa.), appeal denied, 513 Pa. 561, 522 A.2d 561 (1987). | The misappropriation of funds from a check is unauthorized, but does not convert an authorized endorsement into a forgery? | If misappropriation of the funds is unauthorized, does that convert an authorized endorsement into a forgery? | Bills and Notes- Memo 234 VP.docx | ROSS-003289118-ROSS-003289119 | SA, Sub | 0.76 | | | | 1 | |
| 14456 | President, etc. of Springfield Bank v. Merritt, 14 Mass. 322 | 8,301+186 | The ruling which was in this case submitted to the jury, as evidence of the promise destined upon, must, with the accompanying testimony, be taken to be an engagement to pay facilities, to the amount of three hundred dollars in nominal value, for that was the consideration of the note, and it was the understanding of the parties that the contract should have that effect. But evidence tending to give that character to the promise was legally admitted, is proved by the case of James vs. Fales, cited in the argument; in which case the words foreign bills, at the foot of a note, otherwise negotiable, were considered capable of being made to, by evidence of the intent of the parties, an essential part of the contract, so as to affect its negotiability. | And the words 'foreign bills,' written underneath the body of a note, may be made to control it, and restrains its otherwise negotiable character. | Do the words 'foreign bills' at the foot of a note otherwise negotiable limit its negotiability? | Bills and Notes- Memo 218 VP.docx | ROSS-003130496-ROSS-003130497 | Condensed, SA, Sub | 0.8 | | 1 | | 1 | |
| 14457 | Seven v. Allen Co., Ry & Through RA Fiscal Court, 583 S.W.2d 40 | 260+105(1) | Though the statute which provides that 'County roads' are public roads which have been established by the fiscal court of the county as part of the county road system'... 'County roads' were public roads before they were accepted as county roads, it is not necessary that this be so; a county is statutorily empowered to lay out and establish a county road before acquiring the necessary right-of-way from the owners of the property over which it will be opened. KRS 178.010, 178.010(b), 178.080. | Though the statute which provides that 'County roads' are public roads which have been established by the fiscal court of the county as part of the county road system'... county roads were public roads before they were accepted as county roads, it is not necessary that this be so; a county is statutorily empowered to lay out and establish a county road before acquiring the necessary right-of-way from the owners of the property over which it will be opened. KRS 178.010, 178.010(b), 178.080. | Are county roads accepted as public roads? | 01942.docx | LEGALEASE-00136745-LEGALEASE-00136746 | Condensed, SA, Sub | 0.51 | | 1 | | 1 | |
| 14458 | Hodges v. Raigel, 409 S.W.3d 237 | 289+1161 | A limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest; that right of recovery belongs to the general partnership, though a limited partner may maintain an action if he has an individual right of recovery distinct from the share of profits from operation and value of the limited partnership. As a limited partner, he has the right of recovery belongs to the general partnership, though a limited partner may maintain an action if he has an individual right of recovery distinct from the share of profits of other limited partners. | A limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest; that right of recovery belongs to the general partnership, though a limited partner may maintain an action if he has an individual right of recovery distinct from the share of profits from operation and value of the limited partnership. | Do limited partners have a cause of action for damages to their interest in limited partnership? | 07217.docx | LEGALEASE-00136285-LEGALEASE-00136286 | Condensed, SA, Sub | 0.64 | | 1 | | 1 | |
| 14459 | State Matter of Camp Curson Mines, Ltd., 36 Ill. 554 | 289+1206 | In order to form a limited partnership in Florida, two or more persons must sign and swear to a certificate. There is no statutory or case law in Florida which deals with the issue of whether a certificate may be formed on behalf of another partner, and when partner signed for himself and for another, requirements that it be signed 'by and before' each partner are satisfied. | Certificate of limited partnership may be executed by general partner or some other person on behalf of another partner, and when partner signed for himself and for another, requirements that it be signed 'by and before' each partner are satisfied. Bank Code, 11 U.S.C.A. S 101(30) | Do two or more persons need to sign and swear to a certificate in order to form a limited partnership? | 02264.docx | LEGALEASE-00136353-LEGALEASE-00136354 | Condensed, SA, Sub | 0.42 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 14460 | Alford v. Zeigler, 65 Ga. App. 264 | 30/1+18 | The trial court judgment overruling the demurrers to the petition... | Reasonable definiteness and certainty in pleading is all that is required, and fictitious demands by special demurrer should not be encouraged | Is reasonable definiteness all that is required to a pleading? | 021338.docx | LEGALEASE 00136484-LEGALEASE 00136495 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | 1 |
| 14461 | He v. Certified Lloyds Plan, 34,545 (La. App. 2 Cir. 4/4/01) | 307A+483 | This court has previously recognized "That failure to timely answer a request... | Failure to timely answer a request for admissions should not automatically result in admission of the facts. LSA-C.C.P. arts. 1467, 1468. | Does a party's failure to timely respond to a request for admission result in matters being automatically admitted? | 029857.docx | LEGALEASE 00136876-LEGALEASE 00136877 | Condensed, SA, Sub O, B | | 0 | 1 | | 1 | 1 |
| 14462 | Schwan's Sales Enterprises v. Idaho Transp. Dept., 142 Idaho 826 | 30+1532 | The last issue we must decide in this appeal is whether the district court erred... | Trial court's decision to award attorney fees as sanction under rule governing failure to admit during discovery genuineness of documents or truth of any matter requested to be admitted is reviewed under the abuse of discretion standard. Rules Civ. Proc. Rule 37(c). | Is court's decision to award attorney fees as sanction, discretionary? | 029975.docx | LEGALEASE 00136459-LEGALEASE 00136460 | Condensed, SA, Sub O, 7,7 | | 0 | 1 | | 1 | 1 |
| 14463 | Gonzalez v. Surplus Ins. Servs., 863 S.W.2d 96 | 92+4011 | Again, in the instant case, "under the circumstances," once the admissions were deemed admitted... | Defendant's failure to respond to plaintiff's request for admissions for no good reason amounted, in practical terms, to procedural default as to plaintiff's motion for summary judgment and case law completely prohibited the admission of any contradictory summary judgment evidence. Whitworth v. Kuhn, 734 S.W.2d 108, 111 (Tex. App. Austin 1987 no writ). We held that a complete properly admitted admission has to answer request, defendant failed to file motion to file answer's late, notice of summary judgment hearing was therefore essentially moot, since defendant was legally precluded from introducing evidence controverting deemed admissions, trial court was essentially performing ministerial act in granting summary judgment motion, and defendant's explanation and reasons of failure to timely answer amounted to no notice for new trial. Vernon's Ann. Texas Rules Civ. Proc., Rules 21a, 166a, 169; U.S.C.A. Const.Amend. 14. | Can deemed admissions not be contradicted by other summary judgment evidence? | 020187.docx | LEGALEASE 00136696-LEGALEASE 00136697 | Condensed, SA, Sub O, 54 | | 0 | 1 | | 1 | 1 |
| 14464 | H. Richards Oil Co. v. W. S. Luckie, 391 S.W.2d 135 | 157+212(10) | It was error for the court to allow the admissions of one defendant as against all defendants... | An admissions directed to one defendant, whether answered, or admittedly reason of failure to answer, evidence against other defendants in the same case? | Are admissions directed to one defendant, whether answered, or admittedly reason of failure to answer, evidence against other defendants in the same case? | 010024.docx | LEGALEASE 00136355-LEGALEASE 00136356 | Condensed, SA, Sub O, 35 | | 0 | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16465 | Henke Grain Co. v. Keenan, 658 S.W.2d 343 | 307A+483 | Appellant, in his seventh point of error, complains that the trial court erred in deeming admitted appellees' request for admissions numbers 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, 19, 22, 23, 24, 25, 26, and 27 because such requests were not limited to seeking admission of the truth of relevant facts. Apparently, appellant is asking this Court to strike the admissions because of the possibility that they could be answered in such a way as to entail more than relevant matters of fact. It is not necessary that we set forth each of the above numbered requested admissions. We have examined each of the contested requests and find that only number 10 calls for other than a factual answer on the part of appellant. Requested Admission number 10 states "David W. Henke and Henke Grain company (sic) owe Plaintiffs $71,545.03 for Plaintiff's grain," and calls for a conclusion of law, however, this statement finds support in the record in the affidavit accompanying the Motion For Summary Judgment and in other admissions. Accordingly, the erroneous admission by the trial court of requested admission number 10 does not by itself constitute reversible error. Appellant also contends that the deemed admissions are not proper evidence to support the granting of the summary judgment. We disagree. Deemed admissions can be used to support the granting of a summary judgment. Elkins v. Jones, supra; and Freudenmann v. Clark and Associates, Inc., 599 S.W.2d 132 (Tex.Civ.App."Corpus Christi 1980, no writ). Appellant's fifth, sixth and seventh points of error are overruled. | Deemed admissions can be used to support granting of summary judgment. | Can deemed admissions be used to support granting of summary judgment? | 030228.docx | LEGALEASE-00136373-LEGALEASE-00136374 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 16466 | California Viking Sprinkler Co. v. Pac. Indem. Co., 213 Cal. App. 2d 844 | 307A+749.1 | The basis for the court's instruction that Gittinger's authority was established, as a matter of law, is a stipulation in the joint pretrial statement which recites: "At all times material to the Complaint, James A. Gittinger was an agent and employee of Pacific Indemnity Company. The duties of James Gittinger at times material to the matter set out in the Complaint encompassed the receipt, examination, negotiation, investigation, defense, and/or payment of fidelity and surety claims." If this were all that touched on the question of Gittinger's authority there would be justification for the premise of the court's instruction that this stipulation established the scope of Gittinger's authority. But it is not "all." In its answer the defendant, while admitting the agency of Gittinger, denied that he was acting within the scope of his authority so that an issue had been raised by the pleadings. Then we find the defendant, in the pretrial proceedings, reserving as an issue to be tried: "Whether or not the agent of plaintiff [sic] was authorized to enter into the agreement alleged by plaintiff." It can hardly be doubted that this was meant to make sure that the question that remained open was whether or not defendant's agent was authorized. In any event the parties litigated the question as though it were it issue. When the president of the defendant was asked about the extent of Gittinger's authority an objection was interposed, not on the ground that it was irrelevant to any issue, but on the sole ground that it called for his conclusion. He was permitted to answer and the jury should have been permitted to take his answer into consideration, for where the pretrial definition of an issue is not clear, (as here) the parties by their conduct at the trial may make it clear. See discussion in Ragusano v. Civic Center Hospital Foundation, 199 Cal.App.2d 586, 590, 19 Cal.Rptr. 118. | Parties by their conduct could make clear an issue which pretrial definition did not make clear. | Can parties by their conduct make clear an issue which pretrial definition did not make clear? | Pretrial Procedure - Memo # 4081 - C - NS.docx | ROSS-003317627-ROSS-003317628 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 16467 | Gen. Acc. Fire & Life Assur. Corp. v. Cohen, 203 Va. 810 | 307A+483 | Matters admitted for want of an answer to a request for admissions are admitted only as stated in the request. Woods v. Robb (5th Cir., 1948), 171 F.2d 539; Ark-Tenn Distributing Corp. v. Breidt (3rd Cir., 1954), 209 F.2d 359. | Matters admitted for want of answer to request for admissions are admitted only as stated in the request. Code 1950, S 8-111.1. | Are matters admitted for want of answer to request for admissions admitted only as stated in the request? | 030451.docx | LEGALEASE-00136345-LEGALEASE-00136346 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 16468 | D. H. v. State, 76 Wis. 2d 286 | 211+2990 | The granting of a continuance is a matter for the discretion of the court. This court has indicated that failure to grant a continuance is not improper where no request therefor was made. D.H."s claims of inadequate notice must be rejected. | Failure to grant continuance in juvenile court waiver proceedings is not improper where no request therefor was made. W.S.A. 48.18. | Is failure to grant continuance not improper where no request was made? | 030813.docx | LEGALEASE-00136838-LEGALEASE-00136839 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 16469 | Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co., 696 F.3d 647 | 308+101(2) | An intermediary's authority to act as the cargo owner's agent is narrowly tailored; it would be unsustainable to recognize an intermediary as an agent for the cargo owner in "every sense" because of the potential to expose the owner to unauthorized liability. Kirby, 543 U.S. at 33, 125 S.Ct. 385. As the Supreme Court has recognized, "intermediaries, entrusted with goods, are "agents' only in their ability to contract for liability limitations with carriers downstream." Id. at 35, 125 S.Ct. 385. As we recently explained: The idea is that if A engaged B to handle a shipment, among other things, A has delegated to B the choice between a lower price with a strict limitation of liability and a higher price without one, when B engages the services of Carrier C.Nipponkoa Ins. Co. v. Atlas Van Lines, Inc., [687] F.3d [780], [2012 WL 2580120] (7th Cir.2012). Though appellants urge us to classify World as Plano's agent under this non-traditional Kirby theory, thereby rendering Plano liable under the K"Line bill of lading, we must pause to consider whether the application of this non-traditional theory is appropriate. Upon review, we agree with the district court that it is not. | Intermediaries entrusted with goods are cargo owners' agents only in their ability to contract for liability limitations with carriers downstream. | "Are intermediaries entrusted with goods, agents?" | Principal and Agent - Memo 98 - KC.docx | ROSS-003304685-ROSS-003304686 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 16470 | Shinyu Noro v. United States, 148 F.2d 696 | 24+136 | It was said in argument that in time of war alien enemies are not protected by the constitutional provisions in question. It may be true that they may be executive power be summarily arrested and interned and their property sequestered. Nevertheless we think that in a civil court trying an alien enemy for a crime committed in peace time, the constitutional safeguards of the accused ought to be maintained. | In a civil court trying an alien enemy for a crime committed in peacetime, constitutional safeguards of accused must be maintained, notwithstanding that it may be true that accused, by executive power, may be summarily arrested and interned and his property sequestered. | Are constitutional safeguards available to an alien? | 007003.docx | LEGALEASE-00137533-LEGALEASE-00137534 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential Between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16471 | Nichols & Shepard Co. v. Dedrick, 61 Minn. 513 | 8.367+126 | There is evidence tending to prove that, as a consideration for the making of the new note by defendant and Paul, Paul agreed to extend the time of payment of the original note made by Paul alone. This is a sufficient consideration for the execution of the new note by defendant. 1 Brandt, Sur. (2d Ed.) * 13. In this respect this case differs from that of Bank v. Bell, 32 Minn. 409. | An agreement to extend the time of payment of a debt is sufficient consideration for the execution by a third party of his note to the creditor as collateral security for the payment of such debt. | Whether an agreement to extend the time of payment of debt constitutes sufficient consideration? | Bits and Notes - Memo 314-R-N.docx | ROSS-003103813-ROSS-003103814 | Condensed, SA, Sub 0.51 | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 16472 | United States v. Blackwood, 768 F.2d 131 | 164T+28(4) | The court gave the following instructions to the jury concerning the element of "under color of official right": "Extortion under color of official right means the obtaining of money or property by a public employee through the wrongful use of his position wherein the money or property, obtained was not lawfully due and owing to him or to his position which he held. It includes the misuse of one's position of employment in order to induce payments. The government must prove beyond a reasonable doubt that it was reasonable for the person described in Count I through III to believe that the defendant had power to obtain favorable results in the file created case. I further instruct you that in determining whether extortion under color of official right was committed, it does not matter who induced the payment. If the public employee knows that the motivation of the alleged victim named in the indictment focused on the employee's public position and that the money or property that was allegedly paid by the victim was motivated by duty and owing to the employee or to the office which he held, that is sufficient to satisfy the requirement of the law of extortion under color of official right so long as I have said the government also proved that it was reasonable for the persons described in counts 3 through 9 to believe that the defendant had the power to obtain favorable results in the files created cases. | Public official's use of his office to obtain money not due him or his office is use of Hobbs Act requirement that official extort property from another "under color of official right". 18 U.S.C.A. § 1951, 1951(b)(2). | What is extortion under color of official right? | 01184.docx | LEGALEASE-00137598-LEGALEASE-00137599 | Condensed, SA, Sub 0.84 | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16473 | Knox Coll. v. Celotex Corp., 85 Ill. App. 3d 714 | 302+53(1) | Although the circuit court struck Count V and VI because they did not meet the requirement of section 33(2) of the Civil Practice Act and, most specifically, contained conclusions, we are of the opinion that no fatal defect of substance is apparent in either count. While we agree with the finding that Count V and VI contain allegations which are conclusionary, this court, in Browning v. Heritage Insurance Co. (1975), 33 Ill.App.3d 943, 338 N.E.2d 1009, 1013, stated "Section 42(2) of the Civil Practice Act provides a test for defects of substance where a pleading is attacked, i.e., that no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim which he is called upon to meet. Under this test, allegation of legal conclusions and allegations of evidentiary matter merely conclude formal defects and defects of substance." (Record; People v. Northbrook Sports Club (1975), 53 Ill.App.3d 311, 185 N.E.2d 193, 194(6)) Further, assuming Count V and VI in light of Sections n, 33(1) and 42(2) of the Civil Practice Act, as well as Section 33(2) (See Adams v. J.I. Case Co.), we are of the opinion that those counts reasonably inform the defendant C-Dac of the claims it is to meet. The circuit court should have allowed the plaintiff's Count V and VI to stand. Our holding with regard to Counts V and VI is equally applicable to Counts VII and VIII, brought against Traveler's Indemnity Company, the surety of C-Dac's performance bond. | Although pleading combined several causes of action in one count, allegations of count were specific enough to reasonably inform defendant of claims it was to meet end, therefore, count was not bad in substance and should not have been stricken. SHA ch. 110, § 33(1). | Is a pleading which reasonably informs the opposite party of the nature of the claim which it is called upon to meet, bad in substation? | Pleading - Memo 145 - BNM.docx | ROSS-003102340-ROSS-003102341 | Condensed, SA, Sub 0.82 | 0.82 | | | | 1 | |
| 16474 | Lamberto v. Bargar Corp., 169 So. 2d 207 | 307A+716 | The Court is qua was in error when it entered notice to trial after being informed that its trial counsel was in the hospital on the day of trial after undergoing surgery operation previous. This is described by the attention of the Court by the production of proper medical certificates from Dr. Frank G. Adams with Dr. who was treating physicians, certifying, forth the condition of relator's counsel, Merry C. Youkem. The cause are numerous in our jurisprudence that illness of principal counsel in trial of a case is good and sufficient ground for a continuance. See LSA-C.C.P. art. 1601; Sneisen v. Williams, 10 Nab. 97 (1887); Succession of Moore v. LSA 49 La. Ann. 399 (1897); Weirbach, S. & F. Ry. Co. v. Scott, 47 LaAnn. 706, 17 So. 249 (1895); Marrero v. Nunez, 3 La.App. 54 (1923) | Illness of principal counsel in trial of case is good ground for continuance. (14-A.C.P. art. 1601). | Is the sickness of the principal counsel of the defendant, the other not being prepared to go on trial, good ground for a continuance at the cost of the defendant? | 010212.docx | LEGALEASE-00137390-LEGALEASE-00137391 | Condensed, SA 0.88 | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 16475 | Bienenfeld v. Mordg. Comm'n, 161 Misc. 911 | 307A+741 | Before an examination will be ordered, the complaint must allege a cause of action. Goldstein v. Valentine, 246 App.Div. 625, 284 N.Y.S. 373. As the complaint fails to set forth the essential facts necessary to constitute a cause of action, an examination before trial will not be permitted. The conclusion reached makes it unnecessary to pass upon the other objections urged by the defendants in opposition to the granting of this motion. Motion denied. Order filed. | Before an examination will be ordered, complaint must allege a cause of action. | Before an examination will be ordered, must a complaint allege a cause of action? | Pretrial Procedure - Memo # 4459 - C - NC.docx | ROSS-003429604-ROSS-003429601 | Condensed, SA 0.83 | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16476 | In re Einhorn's Estate, 138 N.Y.S.2d 840 | 307A+91 | Letters rogatory may be issued in a case "where a party is entitled to take testimony by deposition pursuant to" article 29 of the Civil Practice Act, and where the ends of justice will be better promoted by the issuance of letters rogatory than by the other methods for taking testimony by deposition. C.P.A. " 309. It is not disputed that the only available method of taking testimony in the Soviet Union is through letters rogatory. See Ecco High Frequency Corp. v. Amtorg Trading Corp., 196 Misc. 405, 406, 94 N.Y.S.2d 400, 402. The only question, therefore, is whether contestants have shown that they are entitled to have their testimony taken by deposition. Section 288, Civil Practice Act, authorizes any party to an action to cause to be taken by deposition his own testimony "which is material and necessary in the prosecution or defense of the action." The courts have given a very liberal interpretation to the terms "material and necessary", and are inclined to favor examinations before trial whenever in good faith they are legitimately sought. Dorros, Inc., v. Dorros Bros., 274 App.Div. 11, 80 N.Y.S.2d 25.The courts will be all the more liberal toward taking the testimony of a party to the proceeding who cannot conveniently attend the trial, a court may not ignore the requirement that the examination be legitimately sought and that the party seeking it act in good faith. The contestants are here challenged on both grounds. | An examination of party before trial must be legitimately sought, and the party seeking it must act in good faith. Civil Practice Act, SS 288 et seq., 309. | Should an examination of a party before trial be legitimately sought? | Pretrial Procedure - Memo # 4487 - C - SK.docx | ROSS-003331152-ROSS-003331153 | Condensed, Order, SA, Sub | 0.89 | 1 | 1 | 1 | 1 | 1 |
| 16477 | Vaughan v. John Hancock Mut. Life Ins. Co., 61 S.W.2d 189 | 307A+720 | But this record wholly fails to show anything in this connection of which appellant should complain. The rule which he says the trial court adopted is no more than the courts of this state have always required. The prime purpose of pleadings is to put the adversary on notice of what he must meet and inevitably it follows that such adversary has a right to time to examine them if same are allowed by the court. If on examination the adversary can say justly that he is not ready against such new pleading he should ask for a continuance, and, if wrongfully denied such, he will find ready redress on appeal. Appellant asked no continuance and hence cannot complain of the action of the trial court. Moreover, we doubt if the record, which shows only that the prepared bill was handed to the trial court, is sufficient to show any denial of his rights. The court may have wished time to examine it. Many things could intervene entirely consistent with his intention to act on the request. Appellant in argument says that the judge did not refuse to sign it or say anything about it one way or the other, and that he (counsel) never spoke to him about it again. Neither does the affidavit make any statement whatsoever about the facts which appellant desired to have his bill of exceptions show. Thus we have no one who says of record that the bill of exceptions stated the truth | Adversary has right to time to examine pleadings allowed by court. | Does the adversary have the right to time to examine pleadings allowed by court? | 031302.docx | LEGALEASE-00137408-LEGALEASE-00137409 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 16478 | State ex rel. Spring River Elec. Power Co. v. Thurman, 232 Mo. 130 | 307A+725 | In discussing the power of the court to impose conditions on granting continuances, the author, in volume 9, Cyc. p. 151, says:"A. The court may in its discretion, where the justice of the case so demands, impose terms or conditions upon the granting of a continuance. Thus it may require that the applicant give security for carrying out the judgment or decree rendered, that the adverse party be allowed to take depositions of a witness for which the court is without authority to issue a commission, that the death of the applicant (whose health is in a precarious condition) before the term to which the cause is continued shall not abate the suit, that the applicant give bail in the action, that the applicant confess judgment for a sum admitted to be due, that the opposite party be allowed to take depositions without making a preliminary affidavit, that a deposition may be read, although informally taken, or that a rule be granted to try the cause at the next term or the applicant suffer a non prosequitur | The circuit court has power to impose, as a condition to the granting of a continuance of a cause which has stood on the docket for about five years and has been repeatedly continued, that the plaintiff pay the accrued costs at least 10 days before the beginning of the next term, and in default of such payment that the cause stand as dismissed. | Is the trial court vested with the power to impose terms as the condition for granting a continuance? | 031354.docx | LEGALEASE-00137410-LEGALEASE-00137411 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 16479 | Wolosin v. Campo, 256 A.D.2d 332 | 307A+726 | We find no merit to the plaintiff's claim that the Supreme Court erred in directing the parties to proceed to trial on the defendant's counterclaim in June 1997. A request for an adjournment is addressed to the sound discretion of the trial court, and its determination will not be disturbed absent an improvident exercise of that discretion (see, Bay Ridge Fed. Sav. & Loan Assn. v. Morano, 199 A.D.2d 354, 605 N.Y.S.2d 377; Matter of Alario v. DeMarco, 149 A.D.2d 587, 540 N.Y.S.2d 270). Although the plaintiff maintains that she was not ready to proceed to trial on June 19, 1997, because she had anticipated that the defense counsel would need additional time to complete her deposition, the court afforded the plaintiff and her attorney a reasonable opportunity to prepare by postponing jury selection to June 23, 1997, and delaying the commencement of the trial to July 14, 1997. Moreover, the action had appeared on the Trial Assignment Part calendar on nine previous occasions. Under these circumstances, the Supreme Court did not improvidently exercise its discretion in denying the plaintiff's request for a lengthier adjournment. | Plaintiff was not entitled to lengthier adjournment prior to trial on defendant's counterclaim, where trial court postponed jury selection and trial at plaintiff's request, and action had appeared on trial assignment part calendar on nine previous occasions. | When would a plaintiff not be entitled to lengthier adjournment prior to trial on defendant's counterclaim? | 031454.docx | LEGALEASE-00137594-LEGALEASE-00137595 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 16480 | In re Frank A. Smith Sales, 32 S.W.3d 871 | 307A+36.1 | Settlement agreements, including the amount of the settlement, are discoverable where they are shown to be relevant. tex.R.Civ.P .166b(2)(f)(2); Ford Motor Co. v. Leggat, 904 S.W.2d 643, 649 (Tex.1995). Generally, the party resisting discovery has the burden to plead and prove the basis of its objection. State v. Lowry, 802 S.W.2d 669, 671 (Tex.1991); General Elec. Co. v. Salinas, 861 S.W.2d 20, 23 (Tex.App."Corpus Christi 1993, no writ); see also In re Continental Ins. Co., 994 S.W.2d 423, 428 (Tex.App."Waco 1999, orig. proceeding) (party resisting discovery of settlement agreement had burden to show settlement was not relevant). | Settlement agreements, including the amount of the settlement, are discoverable where they are shown to be relevant. Vernon's Ann.Texas Rules Civ.Proc., Rule 166b, subd. 2, par. f(2) (Repealed). | "Are settlement agreements, including the amount of the settlement, discoverable where they are shown to be relevant?" | 031969.docx | LEGALEASE-00138091-LEGALEASE-00138092 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16481 | Moore v. Zieve, 715 N.D. 222 | 369+103(2) | Where a duly licensed attorney at law acts in an action or proceeding, it is presumed that he authority to appear for the person for whom he assumes to act. Bozovic v. Mitchell, 14 N.D. 456, 106 N.W. 129, 4 L.R.A. N.S. 244; ... Gray, 184 Iowa 111, 168 N.W. 222; Keenan v. Scott, 64 W.Va. 137, 61 S.E. 806. The employment of an attorney need not be made directly by the client. An agent with proper authority may employ an attorney to bring suit in the name of his principal. Swartz v. D. S. Morgan & Co., 163 Pa. 195, 29 A. 914, and cases cited. | Employment of attorney need not be directly by client, but agent with proper authority may employ attorney to bring suit in principal's name. | Can an agent employ an attorney for his/her principal? | Principal and Agent Memo 75 - KC.docx | ROSS-003291210-ROSS-003291211 | Condensed, Order, SA | 0.87 | 1 | 1 | 1 | 1 | 1 |
| 16482 | Cromwell v. United States, 372 422 S. Ct. 432 | 34+13 (13) | We held in Rice Federal Terry's case that the measure of compensation is that fixed by the statute embracing the navy personnel act of March 3, 1899 (30 Stats., 1005), and the amendatory act of June 7, 1900 (31 Stats., 687), Section 1556. It does not follow, however, that the pay of the naval officers in service at the time the navy personnel act was enacted... The contention is again urged that the amendatory act to it was to secure to officers who were in the Navy when the former act was passed, their pay at the rates which it established by the former act as to those who should be in the service at a later date. | The navy personnel act as amended by Act June 7, 1900, c. 859, 31 Stat. 697, 34 U.S.C.A. 5 231, is not incompatible with Rev.St. 5 1556, fixing the pay of a naval admiral. The earlier statute continues operative as regards the pay which officers in service when the new personnel act was enacted. | Though they pay of object of the navy personnel act was to equalize army and navy pay, did the act operate to reduce any previously fixed for naval officers? | Armed Services - Memo 221 - SA.docx | ROSS-003287098-ROSS-003287099 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 16483 | Maryland Tr. Co. v. Gregory, 129 W. Va. 35 | 83+375 | The note, being payable "To The Order of the Citizens Bank, was negotiable in its origin. Code, 46-1-1. Such an instrument "continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise." Code, 46-3-37. The indorsement of the Citizens Bank containing, as it does, the words "Protest" did not serve to alter the negotiability of the note, and the fact that note was hypothecated with the Maryland Trust Company to secure a loan with a concomitant collateral agreement did not render it non-negotiable. Code, 46-5-5(a). But the indorsement of the Maryland Trust Company of the note "For Collection" was a restrictive indorsement within the meaning of Code, 46-3-7. Curl v. Ingram, 121 W.Va. 763, 6 S.E.2d 483. That indorsement barred any further negotiation of the note, and constituted the indorsee the agent of the Maryland Trust Company to collect the amount of the note and to account therefor. See, subject, the indorsee by effectual transfer passed title to the proceeds of the note. National Bank of Commerce v. Bossemeyer, 101 Neb. 96, 162 N.W. 503, L.R.A. 1917 E, 374. | An endorsement of negotiable note "For collection" was a "restrictive indorsement" which barred any further negotiation of the note and vested title in indorsee for use of indorser. Code, 46-3-7. | Whether restrictive indorsement can be negotiable? | 009439.docx | LEGALEASE-00138326-LEGALEASE-00138327 | Condensed, SA | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16484 | Flynn v. Currie, 130 Me. 461 | 8.30G+76 | Where the drawer of a check stops payment thereon, he is liable to the holder of the check for the consequences of his conduct. In such event the situation is the same as if the check had been dishonored by notice thereof given to the drawer. The effect, so far as the drawer is concerned, is to stop the conditional liability that he will pay the check according to its tenor of the drawer (bank) does not, to come free from the condition. His position becomes the final of the maker of a promissory note due on demand, except as to delay in presentment. he must exercise his option prior to acceptance by the bank, at liberty to stop payment or to withdraw his funds from the bank. Thus the check secures no one. | Where drawer of a check stops payment thereon, he is liable to holder of check for consequences of his conduct. | Can a drawer be liable for the consequences of stopping a payment? | 010133.docx | LEGALEASE-00138800-LEGALEASE-00138801 | Condensed, SA | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16485 | In re Wilhoric v Wirt, 231 N.C. 443 | 8.30G+76 | A bank on which a draft or bill of exchange drawn on bank, G.S. 25-192, until it has accepted or paid, acquires no right in the funds of the drawer to the credit of a drawer with the bank until it is presented to and accepted by the bank on which it is drawn, and the drawer may at any time before the bill is presented for payment or before acceptance by the bank stop payment or to withdraw his funds from the bank, G.S. 25-192, 25-197. | A "check" is nothing more than a bill of exchange drawn on a bank and is payable on demand, and does not operate as an assignment of any part of funds to the credit of drawer with the bank until it is presented to and accepted by the bank on which it is drawn and drawer may at any time before the bank stop payment or withdraw his funds from the bank, G.S. 25-192, 25-197. | Does the drawer have authority to withdraw his funds or stop the payment from the bank anytime? | 010150.docx | LEGALEASE-00138816-LEGALEASE-00138817 | Condensed, SA, Sub 0.14 | | 0 | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16486 | Smith v. McKeller, 638 So. 3d | 300-556 | At the time the document was executed, LA R.S. 13:3720(13)(b) provided that "(a) 'promise' is an undertaking to pay and may be made in an acknowledgement of an obligation". However, Louisiana jurisprudence provides that the word "promise" does not have to be used chiastically to confect a promissory note. Faila v. Werner Enterprises, Inc., 442 So.2d 515, 518 (La.App. 4th Cir.), writ denied, 415 So.2d 953 (La.1982). Instead, the words "to be paid on demand" are sufficient to confect a promissory note. 410 So.2d at 158. | Does the word promise have to be ritualistically used to confect a promissory note? | 01025.docx | USGAEXAE-0018416-USGAEXAE-0018417 | Condensed, SA | 0.67 | 0 | 1 | | 1 | |
| 16487 | Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111 | 83 k481 | We are not aware of any "controlling precedent of the Court of Appeals" 23 N.Y.C.R.R. 7 500.2 23(a). On the one hand, New York law is clear that specific incantation of "assignment" are unnecessary to perfect it in New York toward adopting principles of free assignability of claims, including those of fraud. Banque Arabe, 57 F.3d at 153 (citing N.Y. Gen. Oblig. Law § 13:105 & 13:107(McKinney 1978); ACLI of Commodity Servs., Inc. v. Banque Populaire Suisse, 609 F.Supp. 434, 440 (1984) [S.D.N.Y.1984]). However, there is also a strain of New York law that treats "tort and contractual claims in a particular instrument separately. See Fox v. Hirschfeld, 157 A.D. 132, 142 N.Y.S. 261, 262 3(1 st Dep't 1913) (assignment of all rights "to and to the written contract" did not include breach of warranty. | Under New York law, specific incantations of "assignment" are necessary to perfect a transfer of a note. | Bills and Notes - Memo 385 VP.docx | ROSS-003291519-ROSS-003291560 | Condensed, SA, Sub | 0.89 | 0 | 1 | | 1 | |
| 16488 | United States v. Forst, 655 F.2d 101 | 63 k311) | Defendant's first argument is that the Government failed to prove that the payments he received from Guy Office Equipment Company were intended to influence him in the discharge of his official duties, is that the district court erred in denying his request for judgment of acquittal. A defendant correctly states, "In relation to the solicitation or the receiving of money by an official to influence him with respect to his official duties that is the gravamen of the offense of bribery" (Br. 2-3). Williams v. United States, 168 F.2d 261, 269 (1976); Graves v. State, 109 Ind. 191, 19 N.E. 241, 1889. Accordingly a defendant, however, does not show that the payments he received from Guy Office Equipment Company were partial contributions, yet does. However, even if we were to accept his argument that the Indiana Bribery Act should be discussed" (Br. 6). "However, we have reviewed the record in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, and conclude that it amply supports the jury's finding of Indiana bribery. | Is relevant is soliciting or receiving of money by official to influence him with respect to his official duties that is gravamen of offense of bribery? What is the gravamen of the offense of bribery? | 01879.docx | USGAEXAE-0018064-USGAEXAE-0018065 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | |
| 16489 | State v. Kahriu, 53 Haw. 646 | 67 k411) | We recognize that intent in a burglary case can be established by inference from the surrounding circumstances, and accompanying and attendant acts of the person accused. Such circumstances might include, among others, evidence of burglary tools, stolen property, an entry by force. See State v. Hale, supra, 45 Haw. at 277-278, 367 P.2d 81. However, evidence of forcible entry alone has been held insufficient to generate an inference of intent to commit larceny. The Hawaii burglary statute does not contain the common law requirement of breaking and entering which in itself would be sufficient to infer the intent element. See State v. Reed, 11 Ariz.App. 102, 462 P.2d 399 (1969). | Intent to commit larceny or any felony may be inferred from inference from the surrounding circumstances and accompanying and attendant acts of the person accused. HRS 5 726-1. | Burglary - Memo 167 - KNH.docx | ROSS-003312284-ROSS-003312288 | Condensed, SA | 0.74 | 0 | 1 | | 1 | |
| 16490 | United States v. Moritz, 35 F. Supp. 34 1167 | 363 k295 | The parties agree that there was no evidence that the regulation in question was posted. For a conspiracy to exist under 40 U.S.C. § 1315(c) and 41 C.F.R. 102-74.365, The North Circuit has held, however, that "because of the actual notice to the conspirators a regulation need not be posted or published as long as the conspirators or arrest fulfills the rationale behind the compliance posting requirement," and assure compliance with the public posting regulations. United States v. Richard, 195 F.3d 103, 106 9th Cir. 2001; is defined. In the event that a conspiracy was a protester who chained himself to a Federal courthouse. A Federal Protective Service officer ordered that he "had to take the chain off" so that the courthouse doors could be opened. When Richard refused, the officer informed him that he had until noon to unchain himself, or he would be arrested. Richard, 195 F.3d at 104. Because Richard must have known at that point that his conduct was illegal, there was no need for the Government to have posted before arresting him, id. at 1057. | Actual notice fulfills the purpose of conspicuous posting requirement? Will actual notice fulfills the statutory mandate that conspicuous posting in federal property required that law officers give a potential arrestee notice that he will be arrested if he continues his objectionable conduct. 40 U.S.C.A. S 1315(c); 41 C.F.R. S 102-74.365. | Disorderly Conduct - Memo 16 PR.docx | ROSS-003329046-1-ROSS-003329062 | Condensed, SA, Sub | 0.7 | 0 | | 1 | 1 | |
| 16491 | Steuben Twp. of Steuben Cty. v. Lake Shore & M.S. Ry. Co., 58 Ind.App. 329 | 64 k27 | We have thus concluded that in a proceeding such as this the right of a party plaintiff to recover must be predicated upon a duty to repair the structure that has been damaged. We have heretofore stated that where such injuries occasion situations. Proceeding with our discussion, we do so doubt that in case of neglect on the part of the railroad company to build or maintain a bridge spanning a highway crossing, where the highway has been injured, in such a place, or where such damage as is caused by the reason thereof, such a highway action is maintainable, for such duty is and they the township may maintain an action to recover damages for the negligent destruction of an ordinary public, and action to recover such damages therefor, and the cause of action has accrued whenever the injury has been received. Pittsburgh, etc., R. Co. v. Muncie, 28 Ind.App. 504, 63 N. E. 112. In that case, however, under the facts the question of the proper plaintiff, as between the township and the county, and as respecting the bridge and culvert destroyed, was not presented. | Highways, including bridges, forming part thereof, belong to state, and action for destruction of bridge is maintainable by township or county, where it is destroyed; township may sue therefor, unless the county must restore it; and where township fails to repair such bridge, the township may could sue for injury. Can the township or town recover damages from the wrong doer for the injury to the roads and bridges? | 01890.docx | USGAEXAE-0018830-USGAEXAE-0018831 | Condensed, SA, Sub | 0.64 | 0 | 1 | | 1 | |

Appendix D

2906

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,079 |
| 16492 | Beseke v. Duncan, 77 Cal. App. 2d 145 | 350+183 | Plaintiff's argument, in support of their contention that the evidence does not support the verdict, is to the effect that the evidence shows defendant was negligent. The defendant pleaded contributory negligence. The driver of an automobile had yielded the right of way to a pedestrian crossing the roadway within any unmarked crosswalk at an intersection. (Vehicle Code [1941], sec. 560.) The evidence was sufficient to support a finding that defendant was negligent and that his negligence was a proximate cause of the collision. It is the duty of a pedestrian crossing the roadway within a crosswalk to exercise reasonable care at all times. O'Brien v. Schellberg, 59 Cal.App.2d 764, 765, 140 P.2d 159. Whether plaintiff exercised reasonable care under the circumstances was a matter to be determined by the jury. There was evidence that defendant's automobile was in clear view; that plaintiff observed the approach of defendant's automobile in the middle of the block; that she was turning, and that she proceeded for a distance of approximately 18 feet on into the street before the approaching automobile, without again looking in its direction. The evidence is sufficient to support an implied finding that plaintiff's own negligence proximately contributed to the collision. | A pedestrian crossing a roadway within a crosswalk has duty to exercise reasonable care? | Does a pedestrian have the duty to exercise reasonable care? | Highway- Memo 123-KC.docx | ROSS-003102283-ROSS-003102284 | Condensed, SA | 0.92 | | 0 | | 1 | 1 | |
| 16493 | Bell v. Nat'l Life & Acc. Ins. Co., 41 Ala. App. 94 | 302+9 | This contention is without merit. "It is sometimes permissible and necessary for a pleader to draw conclusions where facts are alleged that tend to support this conclusion. Gandy v. Wilson, 257 Ala. 400, 59 So.2d 625; McMahon v. Baroni, 41 Ala. App. 515, 138 So.2d 551, and cases cited. But Corpus Juris Secundum, Vol. 71, section 14, gives the rule thusly: "Such conclusions, unless supported by facts, are not available for any other use. State v. Whitehurst, 212 N.C. 300, 193 S.E. 657. It is axiomatic that unless the conclusion deduced is supported by the facts it states, it is a mere factum. Adams v. Seaboard A.L. Ry., 280 N.C. 483, 157 S.E. 431." | It is sometimes permissible and necessary for a pleader to draw conclusions where facts are alleged that tend to support such conclusion, and it is only "mere conclusions" or "bald conclusions" without supporting facts which are objectionable in pleading. | When is it necessary for the pleader to draw conclusion? | Pleading - Memo 554 - RMM.docx | ROSS-003290593-ROSS-003290594 | Condensed, SA | 0.65 | | 0 | | 1 | 1 | |
| 16494 | Bowen v. Mewborn, 218 N.C. 423 | 302+6(1) | The effect of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of the factual averments well stated and such relevant inferences of fact as may fairly deducible therefrom, and the facts alleged are deemed true. If facts sufficient to constitute a cause of action, whether apparent on the face of the complaint or to be inferred therefrom by construction, are alleged, the complaint may not be overthrown by a demurrer. | A conclusion induced by the pleader in mere factum, unless supported by facts stated in pleading. | Is a deduced conclusion a mere factum further? | 021480.docx | LEGALEASE-00018786-LEGALEASE-00018787 | Condensed, SA, Sub 0.35 | 0.85 | | 0 | | 1 | 1 | |
| 16495 | Center v. Sampere, 22 So.3d+72.1 | 307A+723.1 | The application for a continuance is defective in this, that it does not disclose that the party had reasonable diligence in procuring the witness. If the application had not appeared before the trial, to enable him to be present at the trial. The point was decided at Tate [1898], that it must appear from the affidavit, unless it otherwise appear of record, that reasonable diligence has been used by the witness to make necessary preparations to attend the court at the time of the trial; otherwise the party could not be held to have used due diligence to procure his attendance. What this reasonable time is, must depend upon the distance of the witness from the court, and other surrounding circumstances. A party should be prepared, when his witnesses are served with a subp'na before the commencement of the court if, however, he relies upon having them at the term, he must show that he has been done a reasonable time before trial. | An application for a continuance for the absence of a witness must show that the witness has had a reasonable time to have the witness notice by subpoena? | Must an application for a continuance for the absence of a witness show that the witness had a reasonable notice by subpoena? | 010873.docx | LEGALEASE-00018752-LEGALEASE-00018753 | Condensed, SA, Sub 0.77 | | | 0 | | 1 | 1 | |
| 16496 | Humburg v. Namura, 13 Haw. 702 | 23.1+56(1) | Was the order made in this case appealable? It has been held by this Court that an appeal lies from an order declining to set aside a judgment because it is erroneous—not because of the failure to take a ruling upon some matter of law. Govern v. Nakamura, ante, p. 652. It has also been held that where a District Magistrate enters an order declining to dismiss for want of jurisdiction and can do nothing further in the case. Republic v. Pedro, 11 Haw., 287. Pursuing the same course of reasoning by which the order appealed from was equivalent to a discontinuance or a dismissal of the case, we reach the conclusion that the correctness of such cases have arisen in jurisdictions where the statute prescribes the terms upon which a cause may continue. The statute of this jurisdiction provides that "the statute does not prescribe any time. This cannot be construed to pay the magistrate unlimited and uncontrolled power over continuance. The effect of a continuance, we take it for an indefinite time would be the same in this jurisdiction as where the terms of definitely prescribed by statute. It has been held, "If a cause in a justice's Court be discontinued there has been a day, but to such day as counsel shall agree upon, and the defendant's counsel refuse to meet, the plaintiff cannot be present and takes no notice thereof to the defendant. The cause is out of Court, and must be commenced anew." 1 Woodfrd's Wolverton, 2d N.Y. 282, 17 Wis., 490; Telephone Co. v. Border, et al., 86 Iowa, 96; 4 Encyd. Pl. & Pr. p. 896. | A district magistrate's order continuing an action for rent until the termination of a bankruptcy cause in the federal court, that is to say, for an indefinite and uncertain time, is equivalent to an order of dismissal and is a "final order," and is appealable. | Is an indefinite continuance by a magistrate equivalent to an order of dismissal? | 011405.docx | LEGALEASE-00018264-LEGALEASE-00018265 | Condensed, SA, Sub | 0.86 | | | | 1 | 1 | |

Appendix D

2907

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 14497 | Stigner v. Albright, 219 A.D. 7-66 | 307k+91 | Under attorney-defendant's theory in cause of defamation and false trial and directing defendant to appear for examination under oath as modified, reversal upon the facts in the exercise of the discretion of the court, without costs to either party, and motion granted, without costs. In our opinion the examination is not sought in good faith to be used upon the trial. Examinations before trial in this class of litigation are rarely necessary, and are not favored by the courts. Wessel v. Schwarzler, 144 App. Div. 587, 129 N.Y.S. 521. | An examination before trial that is not sought in good faith to be used upon the trial is not favoured by the courts? | Are examinations before trial that is not sought in good faith to be used upon the trial not favoured by the courts? | D3710.docx | LEGALEASE 00138393-LEGALEASE 00138394 | Condensed, Order, SA, Sub | 0.81 | 1 | 1 | 1 | 1 | 1 |
| 14498 | Stevenson v. Illinois Cent. R. Co., 157 N.Y. 561 | 307k+74 | Again, this deposition was not filed in this action at any time, nor offered to be used by plaintiff before the commencement of the trial, as required by section 583, Civil Code. Under this provision of the Code, before a deposition can be read in evidence, it must be filed before, or at least at the commencement of the trial. See Ketelsen v. Lovely, 113 Ky. 295, 61 S. W. 272, 22 Ky. Law Rep. 1762. And our Fabric v. Prewitt Coal Co., 119 Ky. 394, 395, 84 S. W. 316, 27 Ky. Law Rep. 159. So far as the record shows, at the close of the other evidence in chief for plaintiff, this deposition for the first time made its appearance in this action and was offered to be read as against appellee company, and the court properly refused to permit it to be so read. | Under Civ. Code Prac. § 585, a deposition cannot be read in evidence unless it is filed with the papers of the case before the commencement of the trial? | Can a deposition be read in evidence unless it is filed with the papers of the case before the commencement of the trial? | D3790.docx | LEGALEASE 00138110-LEGALEASE 00138111 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14499 | Capra v. Phillips Ins. Co., 302 S.W.2d 614 | 307k+74 | Section 492-140 effected changes for the taking and admission in evidence of depositions, attorney permitting for the witness to make changes the desire and a statement of the witness' reasons by the officer and has signing of the witness; unless with stated reasons the deposition is not signed and the officer stating said fact, with the reasons, on the record, the section provides, "and the deposition may then be used as fully as though signed, unless on a motion to suppress the court holds that the reasons given for the change is signed requires rejection of the deposition in whole or in part." The section affords a necessity, and the notary testified that she did not remember any reasons being given by the witness for the changes made in the deposition. A witness at the trial may correct his deposition testimony and give reasons for so doing, where the question might bear offered in evidence prohibiting a witness signing the deposition and correcting the deposition, and if the correction be made for alleged error in transcribing the deposition, the officer taking the deposition may still be called as a witness to confirm the original transcription. Consult Hester v. Kansas City Pub. Serv. Co., Mo., 201 S.W.2d 66, 66[6]. | A witness at trial may correct his deposition testimony and give reasons for so doing. Sections 492-140; 492-150 Webb's 1949 K.A.M.E. | Can a witness at trial correct his deposition testimony and give reasons for so doing? | Pretrial Procedure - Memo 81089 - C - SB.docx | ROSS-003334667-ROSS-003334668 | Condensed, Order | 0.92 | 1 | | 1 | 1 | |
| 14500 | Escoriba v. S. Bldg. & Loan Ass'n, 5 SF.App. 17 | 307k+71 | The motion to suppress the deposition of Cruse, on the grounds stated therefore, was properly overruled. There is no rule or statute that requires the commissioner, himself, to take down the answers of a witness in his own hand writing. It is the duty of the commissioner to have the answers of the witness in writing, or cause it to be done by the witness himself, or some impartial person, as near as may be, in the language of the witness." Ibid, 1241. | Under Code 1896, § 1841, making it the duty of a commissioner to reduce the answers of a witness to writing, he cannot reduce them to writing in his own handwriting but he can require the questions to be reduced to himself or some impartial person, a commissioner is not required to take down the answers of a witness in the commissioner's own handwriting. | Should the commissioner require the questions to be reduced to writing? | D2455.docx | LEGALEASE 00138906-LEGALEASE 00138907 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14500 | United States v. Fernandez, 722 F.2d 1 | 63+3 | At the outset, we reject any notion that state legislatures are categorically exempt from prosecution under the federal bribery statute; the plain language of the statute includes "a representative of a government," 18 U.S.C. § 666(b), and there is no serious basis for argument that the federal government's "representative" than a legislative branch official. 18 U.S.C.A. § 666(d)(1). 18 U.S.C.A. § 201(a)(1). (Congress clearly sought to apply "666 to legislation programs." 18 U.S.C. 666(b) to legislators under § 666. Indeed, the plain language of the statute includes a "representative" of a government. Defendant's more nuanced argument is that the government failed to allege and prove that he was the entity for which Mari was an agent. They maintain that Mari "may only be appropriately classified as a representative, public or defined program." 18 U.S.C. § 666(b). If the $10,000 threshold is met, then the statute provides that non-qualifying organization, government, or agency "or the actions of others with respect to those agents" cannot implicate "666. | State legislators are not categorically exempt from prosecution under the federal bribery statute? | Are state legislators categorically exempt from prosecution under the federal bribery statute? | Bribery - Memo 451 C - C - RK.docx | ROSS-003313429-ROSS-003313430 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14502 | People v. Nichols, 196 Cal. App. 2d 223 | 67+29 | Here, the evidence unquestionably established an unlawful and forcible entry of the Lawton school. From this alone, burglarious intent could be reasonably established (People v. Michaels, 193 Cal.App.2d 194, 13 Cal.Rptr. 560; People v. Stewart, 113 Cal.App.2d 687, 688, 248 P.2d 768) When coupled with escaping, and flight therefore is sufficient to justify a reasonable inference that such intent existed, the verdict will not be disturbed on appeal. (People v. Jordan, 204 Cal.App.2d 313 P.2d 662; People v. Smith, 84 Cal.App.2d 509, 512.) 190 P.2d 941. | Burglarious intent could be justifiably inferred from evidence of unlawful and forcible entry. West's Ann Pen Code, § 459. | Can intent to commit burglary be inferred from forcible entry? | D12810.docx | LEGALEASE 00139097-LEGALEASE 00139098 | Condensed, SA, Sub 0.73 | | 1 | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,973 | 21,876 | 9,029 |
| 16503 | Hofly v. Strickhouser, 2008 WI 96 | 307k747.1 | Litigants are expected to follow circuit court (scheduling orders. Failure to do so is subject to sanctions at the discretion of the circuit court. Wis. Stat. § 802.10(7). Indus. Roofing, 299 Wis.2d 81, ¶1, 726 N.W.2d 898. We acknowledge that a circuit court has broad discretion to sanction a party for the failure to comply with a court order, including a scheduling order. See Johnson, 181 Wis.2d at 471, 512 N.W.2d 655. There is no question that the hefly's counsel failed to fully review the court's scheduling order and that hefly's untimely submission flowed directly from that deficiency. Failure to fully review the court's scheduling order presents from either challenging or complying with the order, instead of violating it. | Litigants are expected to follow circuit court scheduling orders. | Are litigants expected to follow circuit court scheduling orders? | Pretrial Procedure - Memo #3306 - C - KBM.docx | ROSS-003912775-ROSS-003912776 | Condensed, SA | 0.91 | 0 | 0 | 1 | 1 | |
| 16504 | Guy v. Arthur H. Thomas Co., 55 Ohio St. 2d 183 | 413+1 | We are not persuaded that the purpose of either R.C. 4123.74 or Section 35, Article II of the Ohio Constitution, is to grant to each plaintiff a cause of action against appellee-hospital for its negligent treatment. The genesis of workers' compensation in the United States and Ohio was the inability of the common law remedies to cope with modern industrialization and its inherent injuries to workers. See State ex rel. Mundhey v. Indus. Comm. (1931), 92 Ohio St. 434, 111 N.E. 299, Insofar therefore as this concept that workers' compensation statutes mitigate generally to the legal connection or relationship between employer and employee. Perhaps best expressed by the real "dual theory" of workers' compensation as essentially stated in the following comment by the Supreme Court of the United States, in Cudahy Packing Co. v. Parramore (1931), 263 U.S. 418, at page 423, 44 S.Ct. 153, at page 154, 68 L.Ed. 366: "Workmen's compensation legislation rests upon the idea of status not upon that of implied contract, that an injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operation he contributes his work as he contributes to its capital the one for the sake of the wages and the other for the sake of the profits. The act is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured." | Genesis of workers' compensation was the inability of the common law remedies to cope with modern industrialization and its inherent injuries to workers, R.C. § 4123.01 et seq. | What is the genesis of worker compensation? | 047792.docx | LEGALEASE-00180239-LEGALEASE-00180240 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 |
| 16505 | Ewer v. Johnson, 44 Wash. 2d 746 | 48A+204(1) | "One driving into a dust cloud must exercise a very high degree of care. Dust is not a latent or concealed danger; it gives ample notice of its presence. The precautions attending driving through dust must not only as all motions which must be considered from the standpoint of the maintaining of due regard for his own safety and that of others." If you find from the evidence that the driver of the automobile truck was obstructed by a cloud of dust at the time and place in question, and you further find that such driver of [the] automobile truck used that degree of care and caution in passing through said cloud of dust as a careful and prudent person would exercise under such circumstances, then such driver of [the] automobile truck would not be considered negligent. | Instruction, in action for injuries sustained in severe automobile head and tail collision in dust storm, on duty of drivers driving in dust clouds, was not subject to exception that it required exercise of degree of care greater than that which should be exercised by careful and prudent person. | What is the degree of care to be exercised while driving through dust? | Highway - Memo 161-B.docx | LEGALEASE-00020253-LEGALEASE-00020254 | Condensed, SA, Sub 0.6 | | 0 | 1 | 1 | 1 |
| 16506 | Durham v. Andrew, 41 Vt. 466 | 307k74 | It is not contested, with the alteration, that the statutory cause is not substantially set forth, but it is claimed that the magistrate had no right or authority to make the alteration. After a deposition has been once used, or after the party taking it has caused it to be filed as one of the papers in the cause, the magistrate taking it has no further power to amend or alter it. In this case the deposition was not proved to be made without the permission of the court. The court say in their opinion, and in which the court, and no amendment can properly be made without the permission of the court. The court may then amend. It is not correspond with the facts as they appeared at the time of taking the deposition. But in a fit time, the alteration in this matter, before it was used, or before the party taking it has caused it to be filed as one of the papers in the cause, the magistrate from the power to grant leave to amend; although it is not stated in the exceptions that this county court approved of the amendment, it must be presumed the court did approve of it from the fact the deposition was admitted. We therefore find no error in the court below in admitting the deposition. | After a deposition is filed, does the magistrate who took it have no authority to amend the caption? | After a deposition is filed, does the magistrate who took it have no authority to amend the caption? | 032267.docx | LEGALEASE-00019423-LEGALEASE-00019424 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 |
| 16507 | Bishop v. Hilliard, 227 Ill. 382 | 307k74 | The defendant offered in evidence before the master certain depositions, to which complainant objected upon the ground that they were not accompanied by a certificate of the officer showing his official character or the officer before whom they were taken, as required by statute. We think that the evidence that the statute does not apply to depositions, it may be produced in court at the hearing and the official character of the officer of the court so before whom established, and the actual character of the officer who made the deposition should be established before it is used in evidence. Scott v. Bassett, 186 Ill. 98, 57 N.E. 835. Before the master can properly consider the deposition upon the hearing before the master it is necessary that the proper certificates were obtained and accompanied the deposition. The object of requiring a certificate showing the official character of the officer is nothing to identify the officer before whom the depositions were taken with the officer's name mentioned in the certificates produced. There is no merit in this contention. | Is it necessary that certificates of the official character of the officer before whom depositions are taken accompany the depositions, but they may be produced in court at hearing and the notary's official character there be established? | Is it necessary that certificates of the official character of the officer before whom the depositions are taken accompany the deposition? | Pretrial Procedure - Memo #3276 - C - TM.docx | ROSS-003278809-ROSS-003278811 | Condensed, SA, Sub 0.77 | | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16508 | Purdy & Fitzpatrick v. State, 71 Cal. 2d 566 | 24+116 | Labor Code section 1850 discriminates on the basis of alienage, and such classification invokes a strict standard of review. Moreover, the state may not arbitrarily foreclose to any person the right to pursue an otherwise lawful occupation. Any limitation on the opportunity for employment impedes the achievement of economic security, which is essential for the pursuant to life, liberty and happiness; courts sustain such limitations only after careful scrutiny. Finally, a special mandate compels us to guard the interests of aliens: "(P)rejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry." ( *580 United States v. Carolene Prod. Co. (1938) 304 U.S. 144, 153 & fn. 4, 58 S.Ct. 778, 784, 82 L.Ed. 1234.) We note that particular alien groups and aliens in general have suffered from such prejudice. Even without such prejudice, aliens in California, denied the right to vote, lack the most basic means of defending themselves in the political processes. Under such circumstances, courts should approach discriminatory legislation with special solicitude | Discrimination on basis of alienage invokes strict standard of review. | Does discrimination on the basis of alienage invoke a strict standard of review? | "Aliens, Immigration and Citizenship - Memo 6 - RK.docx" | ROSS-003287919-ROSS-003287920 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 16509 | Matter of Spangler, 56 B.R. 990 | 343+517(1) | Whether an agreement is a lease or sale requires, at the threshold, a determination of the intent of the parties to the transaction. Crest, 252 Md. at 289, 250 A.2d 246; In re O.P.M. Leasing Services, Inc., 23 B.R. 104, 115"116 (Bankr.S.D.N.Y.1982). Reservation of title, in and of itself, does not necessarily mean that a sale is intended. Crest, 252 Md. at 289, 250 A.2d 246. However, when the insurance, default, and remedy provisions resemble those in a typical security agreement, that may dictate the conclusion that a sale is intended. International Paper Credit Corp. v. Columbia Wax Products Co., 102 Misc.2d 738, 424 N.Y.S.2d 827 (Sup.Ct.1980), rev'd on other grounds, 79 A.D.2d 700, 434 N.Y.S.2d 270 (1980).Further it is relevant to look at such facts as the purchase option price as compared to the aggregate of the rental, the list price, the capital cost, and the fair market value of the collateral at the end of the lease term. In In re Oak Manufacturing, Inc., 6 U.C.C.Rep.Serv. 1273 (Bankr.S.D.N.Y.1969), an agreement was held to constitute a sale with reservation of a security interest in an instance in which the purchase option price under the lease was 9% of the aggregate rentals and 13% of the fair market value of the goods at the end of the lease. Id. at 1277. See also National Equipment Rental v. Priority Electronics, 435 F.Supp. 236, 239 (E.D.N.Y.1977) in which Judge Platt, applying New York law, noted, inter alia, the total rentals exceeded the purchase price by 46% under one agreement and 30% under another and concluded that a security interest and not a true lease was intended; In re Washington Processing Co., 3 U.C.C.Rep.Serv. 475 (Bankr.S.D.Cal.1966), in which the purchase option was less than 10% of aggregate rentals and between approximately 13% and 18% of fair market value, id. at 477, and in which Referee Kinnison held that the agreement was a sale and that the parties intended to create a security interest, id. at 478; Crest, 252 Md. at 289, 250 A.2d 246. | Whether an agreement is a lease or sale under U.C.C. S 1-201(37) requires, at the threshold, determination of intent of parties to the transaction. | Does the intent of the parties determine the transaction? | 009397.docx | LEGALEASE-00140191-LEGALEASE-00140192 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 16510 | Slutsky v. Blooming Grove Inn, 147 A.D.2d 208 | 83E+415 | Blooming Grove Inn's present contention that the plaintiff is without standing to maintain this action (cf., Merritt v. Bartholick, 36 N.Y. 44; Kluge v. Fugazy, 145 A.D.2d 537, 536 N.Y.S.2d 92) is without merit (cf., Allen v. Brown, 44 N.Y. 228; Gellens v. 11 West 42nd St., 259 App Div 435, 19 N.Y.S.2d 525). The note secured by the mortgage is a negotiable instrument (see, UCC 3"104) which requires indorsement on the instrument itself "or on a paper so firmly affixed thereto as to become a part thereof" (UCC 3"202[2] ) in order to effectuate a valid "assignment" of the entire instrument (cf., UCC 3"202[3], [4] ). No such indorsement is included with the note as reproduced in Blooming Grove Inn's appendix and it thus appears that the note was never validly transferred from the plaintiff. | Valid transfer of note required endorsement on note or firmly affixed paper. McKinney's Uniform Commercial Code SS 3-104, 3-202(2-4). | Whether a valid transfer of note requires endorsement on note or firmly affixed paper? | 010309.docx | LEGALEASE-00139907-LEGALEASE-00139909 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 16511 | Marshall v. Staley, 528 P.2d 964 | 83E+481 | The executor claims that there was no consideration for the assignment of the note. We disagree. The record reveals that there was a very close family relationship between the decedent and the defendants. The love and affection between them, as shown by the record, was sufficient consideration to support the assignment of the note from decedent to defendants. Dawley v. Dawley's Estate, 60 Colo. 73, 152 P. 1171. | Love and affection between decedent and his stepdaughters was sufficient consideration to support assignment of note from the decedent to his stepdaughters. | Are love and affection sufficient consideration required for an assignment of the note? | Bills and Notes -Memo 419 -DB.docx | ROSS-003290848 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 16512 | Neal v. Bradley, 238 Ark. 714 | 83E+481 | The general rule is that recordation statutes do not apply to assignment of notes unless specifically so stated by statute. In 4 Am.Jur. p. 300, "Assignments' " 88, in speaking of recordation, the text states: "Ordinarily, however, the recording statutes are inapplicable to assignments." In 45 Am.Jur. p. 444, "Records and Recording Laws' " 43, cases are cited to sustain this textual statement: "Notes secured by a mortgage may be effectively transferred as to all persons without recording if there is no requirement in the recording act that the transfer be recorded." Again, in 11 Am.Jur.2d p. 348, "Bills and Notes' " 326, the text reads: "General recording acts do not apply to assignments of choses in action, and recordation is not required in absence of a statute specifically applicable to them. A note secured by a mortgage may be effectively transferred as to all persons without recording if there is no requirement in the recording act that the transfer of the note be recorded." We find no authority that would support a holding that the prior unrecorded assignment of a note may be defeated by a subsequent recorded assignment. | Generally, recordation statutes do not apply to assignments of notes unless specifically so stated. | Do recordation statutes apply to assignment of notes? | 010350.docx | LEGALEASE-00140187-LEGALEASE-00140188 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16513 | Ingram v. Earthman, 993 S.W.2d 611 | 8.30E+06 | The first step in suits like this one is to identify the body of law applicable to the dispute. See Richard B. Hagedorn, The Law of Promissory Notes. This case presents two issues in this regard. The first issue concerns which version of the Uniform Commercial Code should be used to determine whether Mr. Earthman's October 14, 1980 note is a negotiable instrument. The second issue concerns whether the note is a negotiable instrument under the applicable version of the Uniform Commercial Code. If the note is a negotiable instrument, the parties' rights are governed by Article 3 of the Uniform Commercial Code; if it is nonnegotiable, we must look to the common law of contracts to define the parties' rights and remedies. | Note that was not negotiable was not governed by Uniform Commercial Code (UCC), and thus, rights and liabilities of parties to note had to be found in common law of bills and notes and in contract law. | Are nonnegotiable instruments governed by common law? | Bills and Notes -Memo 431 -DB.docx | LEGALEASE-00029694-LEGALEASE-00029695 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 16514 | People's Bank of Mobile v. Moore, 201 Ala. 411 | 83E+316 | It is well settled by the authorities that instruments drawn upon, or payable out of, a particular fund, are not negotiable bills or notes, because they do not carry the general personal credit of the obligor, and payment is contingent upon the sufficiency of the fund referred to. 8 C.J. p. 121, " 214; Waters v. Carleton, 4 Port. 205; West v. Foreman, 21 Ala. 400; Gliddon v. McKinstry, 28 Ala. 408; Blackmon v. Lehman & Co., 63 Ala. 550, 35 Am.Rep. 57; Heflin Co. v. Hilton, 124 Ala. 365, 27 South. 301; First Nat. Bk. v. Lightner, 74 Kan. 736, 88 Pac. 59, 8 L.R.A. (N.S.) 231, 118 Am.St.Rep. 353, 11 Ann.Cas. 596, 599; First Nat. Bk. v. Sullivan, 66 Wash. 375, 119 Pac. 820, Ann.Cas. 1913C, 930, and note 932; Kimpton v. Studebaker, 14 Idaho, 552, 94 Pac. 1039, 125 Am.St.Rep. 185, and note 196, 14 Ann.Cas. 1126. | Instruments drawn upon, or payable out of a particular fund, are not negotiable. | Are instruments drawn upon or payable out of a particular fund negotiable? | Bills and Notes- Memo 523-PR.docx | ROSS-003327678-ROSS-003327679 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 16515 | United States v. Allen, 10 F.3d 405 | 63+1(1) | As the law has evolved, extortion "under color of official right" and bribery are really different sides of the same coin. "Extortion "under color of official right" equals the knowing receipt of bribes.... [I]t is extortion if the official knows that the bribe ... is motivated by a hope that it will influence him in the exercise of his office and if, knowing this, he accepts the bribe." United States v. Holzer, 816 F.2d 304, 311 (7th Cir.), vacated on other grounds, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987); see also Evans v. United States, 504 U.S. 255, """", 112 S.Ct. 1881, 1888, 119 L.Ed.2d 57 (1992) ("the wrongful acceptance of a bribe establishes all the inducement the [Hobbs Act] requires" for extortion under color of official right). Because of the realities of the American political system, and the fact that the Hobbs Act's language did not justify making commonly accepted political behavior criminal, the Supreme Court in McCormick added to this definition of extortion the requirement that the connection between the payment and the exercise of office"the quid pro quo"be explicit. Given the minimal difference between extortion under color of official right and bribery, it would seem that courts should exercise the same restraint in interpreting bribery statutes as the McCormick Court did in interpreting the Hobbs Act: absent some fairly explicit language otherwise, accepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an explicit promise to perform or not perform an official act. Vague expectations of some future benefit should not be sufficient to make a payment a bribe. | Extortion under color of official right and bribery are really different sides of the same coin; extortion under color of official right equals the knowing receipt of bribes and it is extortion if the official knows that the bribe is motivated by a hope that it will influence him in the exercise of his office and if, knowing that, he accepts the bribe. | Are extortion and bribery different sides of the same coin? | Bribery - memo #587 - C-CSS.docx | ROSS-003301621-ROSS-003301622 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 16516 | Second Measure v. Kim, 143 F. Supp. 3d 961 | 289+560 | Under California law conversion refers to "an actual interference with [the plaintiff's] ownership or right of possession." Moore v. Regents of Univ. of Cal., 51 Cal.3d 120, 136, 271 Cal.Rptr. 146, 793 P.2d 479 (1990). To establish a claim of conversion, the plaintiff must show "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." In re Emery, 317 F.3d 1064, 1069 (9th Cir.2003) (citing Burlesci v. Petersen, 68 Cal.App.4th 1062, 1065, 80 Cal.Rptr.2d 704 (1998)). One partner can be liable to another for conversion of partnership property. Oakdale Vill. Grp. v. Fong, 43 Cal.App.4th 539, 546, 50 Cal.Rptr.2d 810 (1996), as modified on denial of reh'g, (Apr. 10, 1996). Further, intangible property such as corporate shares and bonds may be the proper subject of a conversion claim. See Am. Bankers Mortgage Corp. v. Fed. Home Loan Mortgage Corp., 75 F.3d 1401, 1411 (9th Cir.1996) (collecting California cases); see also Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal.App.4th 97, 125, 55 Cal.Rptr.3d 621 (2007) (holding that a business's net operating loss is the proper subject of conversion because it is a definite, recordable amount). However, more abstract intangible property, such as business goodwill and business strategies are not proper subjects of conversion. See Fremont, 148 Cal.App.4th at 123, 55 Cal.Rptr.3d 621. | Under California law, one partner can be liable to another for conversion of partnership property. | Can one partner be liable to another for conversion of partnership property? | 022337.docx | LEGALEASE-00139763-LEGALEASE-00139764 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16517 | Firemen's Relief Ass'n of Washington v. Minehan, 430 Pa. 66 | 296v2 | It cannot be gainsaid that the Act of 1895 nowhere defines a pension fund or by what it which. | A "pension" is merely a bounty for past services, designed to provide recipient with his daily wants; [the Robert's]... with two justices concurring and one justice concurring in result; 737 A.S.2262. | Is a pension a bounty for past services? | 02774.docx | LEGALEAGLE-00160510 / LEGALEAGLE-00160511 | Condensed, SA, Sub 0.84 | | 0 | 1 | | 1 | |
| 16518 | Mourn v. Trustees of Pub. Emp. Ret. Sys. of New Jersey, 193 N.J. Super. 72 | 316P+385 | Public employee / pension rights and benefits are based upon and fall within scope of statutes governing Public Employees' Retirement System, N.J.S.A. 43:15A-6 et seq. | Public employee / pension rights and benefits are based upon and fall within scope of statutes governing Public Employees' Retirement System, N.J.S.A. 43:15A-6 et seq. | Does a right to pension depend on a granting statute? | 02784.docx | LEGALEAGLE-00160542 / LEGALEAGLE-00160543 | Condensed, SA, Sub 0.63 | | 0 | 1 | | 1 | |
| 16519 | Liebeth v. Bankers Life Ins. Co., 356 Neb. 107 | 296v2 | A pension, granted for services previously rendered, fully paid for when rendered, and giving rise to no legal obligation for further compensation, is a gratuity. | A pension, granted for services previously rendered, fully paid for when rendered, and giving rise to no legal obligation for further compensation, is a gratuity. | When can a pension be regarded as a gratuity? | 02774.docx | LEGALEAGLE-00160554 / LEGALEAGLE-00160555 | Condensed, Order, SA | | | 1 | 0 | 1 | |
| 16520 | Caterpillar Indus. v. Knates, 659 So. 2d 1129 | 307A+35.1 | | Substantial similarity must be established before similar accidents or incidents are discoverable. | Must substantial similarity be established before similar accidents or incidents are discoverable? | 03290.docx | LEGALEAGLE-00160384 / LEGALEAGLE-00160385 | Condensed, SA, Sub 0.86 | | 0 | 1 | | 1 | |
| 16521 | Harvey v. Osborn, 55 Ind. 535. | 307A+74 | | Where a deposition is taken before the "clerk of a court of record," must certify by the same under the seal of such court? | Where a deposition is taken before the "clerk of a court of record," must certify by the same under the seal of such court? | 02347.docx | LEGALEAGLE-00160474 / LEGALEAGLE-00160475 | Condensed, SA, Sub 0.71 | | | | | 1 | |
| 16522 | Terry v. Cmty. Health Network, 174 F.3d 389 | 30+1212 | | "In ruling on a motion to dismiss for lack of subject matter jurisdiction, can the trial court consider the complaint?" | "In ruling on a motion to dismiss for lack of subject matter jurisdiction, can the trial court consider the complaint?" | Pretrial Procedure - Memo # 5086 - C - SN.docx | LEGALEAGLE-00200336 / LEGALEAGLE-00200337 | Condensed, SA, Sub 0.51 | | | | | 1 | |

Appendix D

2912

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,564 | 14,973 | 21,876 | 9,079 |
| 163.23 | Knight v. Nichols, 34 Me. 208 | 307A+74 | The plaintiff's bill of sale was accompanied by a delivery of the articles included in it, and was given in payment to the defendant of an amount which was evidence tending to show that the plaintiff's bill of sale was given for a security for a debt due from Bailey to him, and that Court was requested to instruct the jury that if the bill of sale was given as security for a prior debt, that it could not have the consideration, though paid in fact, would be a mortgage, and should be recorded. This request was declined and the jury were instructed that the bill of sale being absolute, need not be recorded to become effectual against the attachment; if the transaction was in good faith. To this instruction the plaintiff excepted. Of the different kinds of this instruction the plaintiff excepted. Mortgages of personal property are alone within the provisions of R.S. chap. 125, " 32. Bills of sale, for whatever purposes intended, yet not mortgages in form, need not be recorded. Whether the adoption of this course might or might not be considered indicative of fraud, would be a question properly to be submitted to a jury. Indebtedness, and an intention to secure merely, would not be a sufficient consideration for an absolute bill of sale, when the debt remained outstanding and the vendee was under no obligation to pay it. Whether the transaction would constitute an equitable mortgage, which upon being proof of the facts would be within the statute, the object of which was to protect the respective rights of mortgagor and mortgagee and to give notice to creditors and purchasers, seeking to enforce his rights, might know where and to whom to apply for the purpose of redemption. | A deposition is admissible though in the not stated in the caption at whose instance request it was taken? | Is a deposition admissible though in the not stated in the caption at whose instance request it was taken? | 033476.docx | LEGALEASE 00180460-LEGALEASE-00180468 | Condensed_SA, Sub 0.96 | | 939 | 1 | | 1 | |
| 163.24 | Covington v. Int'l Bus. Mach. Corp., 7107-34 314 | 308+5391 | Covington asserts that NGWA, JABBS, and CVC are vicariously liable for the acts of Wright's fraudulent actions. "An agency relationship is created when the one party consents to have another act on its behalf with the principal controlling and directing the acts of the agent." " A F & T Co. v. Winbush & Consumer Progress, Inc., 67 Cal 1.421, 144 (1984) (1) 1211 (1) " cf. Mette, D 144A (0) (1941) 6 (quoting Starr v. Ross, 134 N.J. 316, 634 A.2d 74, 70 (1993)). Vicarious liability can exist under an agency relationship can be shown and actual agency to whom the agent has actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act." Restatement (Third) of Agency " 2.01 (2006). Vicarious liability can also be based on apparent authority. "Apparent authority arises in those situations where the principal causes persons with whom the agent deals reasonably to believe that the agent has authority." Winbush, 42 F.3d at 1439 (quoting Bartchord v. Hartford Accident & Indem. Co., 107 Wash. 2d 409, 729 P.2d 726, 147 P.3d 73 (1980)). | Vicarious liability due to an agency relationship can be based on apparent authority, "apparent authority" arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship. | Can Vicarious Liability be based on Actual Authority? | Principal and Agent Memo 103 - GP.docx | ROSS-003329359-ROSS-003329206 | Condensed_SA, Sub 0.76 | | 0 | 1 | | 1 | |
| 163.25 | First Ins. Co. of Hawaii v. Jackson, 67 Haw. 165 | 366+64(61) | Although the statutory section says that the insurer is "subrogated" in this case, it cannot be recovery of one half of the no-fault benefits paid. In a subrogation action the insurer stands in the position of the position of his subrogor, and not against the other drivers insurance company, whose stands in the position of debtor. See 73 Am.Jur.2d, Subrogation " 129 (1974) and compares Smith v. Columbia Ins. Group, 32 P.3d 1185) and Ramsey v. Wilson, 51 Haw. 398, 459 P.2d 685 (1971). In a classical subrogation action, the burden of proof, of course, is upon the party claiming subrogation to show that he is entitled to it. 73 Am.Jur.2d, Subrogation " 141 (1974) See where a difference in an action such as this, which is brought by an insurer to enforce its claimed rights under Hawaii R.27. On remand, the insurer must prove factually that the settlement duplicated, in whole or in part, the no-fault benefits it had already paid. | In classical subrogation action, burden of proof is upon party claiming subrogation to show that he is entitled to it. | Who has the burden to prove an entitlement while claiming subrogation? | 043355.docx | LEGALEASE 00339715-LEGALEASE-00339716 | Condensed_SA | | 0 | 1 | | 1 | |
| 163.26 | Wilkins v. Gibson, 113 Ga. 31 | 366+62(1) | But the defendants further insist that Gibson has waived his right to subrogation by electing to enforce his right's under the security held by him; that this is conclusive evidence that he elected to rely on his security rather than to his right to subrogation. We do not think that this contention is maintainable. Gibson thought he was getting & first lien on the property. On the other there would have been the semblance of a right to subrogation. If the security had been sufficient, no reason for it to be invoked to his protection would have been necessary to claim the benefit of an equitable assignment of the amount defective, but this was not definitely ascertained until he made an effort to enforce his security, and when he came to find that his claim, thereafter this effort, to claim the benefit of subrogation, this is not think he necessarily waived his equitable right by endeavoring to enforce his legal right. See Shelton's Law of Subrogation, " 42. So far as the doctrine of subrogation is applicable only to the enforcement of a claim, the prosecution of one does not necessarily constitute a waiver of the other, and where a party has two remedies for enforcing a claim, unless, which are inconsistent, he may, at pleasure, resort to the other. It is true that electing an unreasonable length of time to claim subrogation will sometimes amount to a waiver of the right. Gibson 5 3 Ga. 40, 2 Am. & Eng. Enc. 1.411 (2d ed. & note). But this, we think, is not applicable in a case like the present. Gibson had a right, as we think, to enforce his security, and when the right was not disputed, as soon as his efforts in this behalf had been found ineffectual to enforce, his legal right, he had a right to endeavor to enforce it. This being so, and it appearing that he did not delay an unreasonable length of time in asserting it at the earlier, we do not think of proof amount to a waiver of the right. | Where an adverse claims to pay off an incumbrance on realty under an agreement that the advance made is to be secured by a lien on the property, delays on the part of an intervening encumbrancer to prosecute to his legal rights does not estop the debtor, brought absolutely the fact that the lien to which subrogation is asked had been canceled on the record, will, when accompanied by substantial damage to the rights of the intervening encumbrancer, constitute a bar to a court of equity to refuse the person advancing the money the right of subrogation and to such charge, when the claim of subrogation is not asserted within a reasonable time after knowledge that the prior incumbrance has been canceled of record. | Will subrogation be allowed if the person claiming the right of subrogation has unreasonably delayed in asserting such right? | 043558.docx | LEGALEASE 00339917-LEGALEASE-00339918 | Condensed_SA, Sub 0.57 | | 0 | 1 | | 1 | |

Appendix D

2913

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16527 | Sanford v. Walther., 467 S.W.3d 139 | 371+2763 | Unlike taxes, interest on state-tax delinquencies is not levied generally on all taxpayers for the purpose of raising revenue. Although the proceeds of any interest paid on delinquent tax debts are characterized as general revenue by the Revenue Stabilization Law, Arkansas Code Annotated sections 19"5"101 through "1254 (Repl. 2007 & Supp. 2013), the interest is not levied to pay for maintaining traditional government functions and services. And while interest is assessable and collectable as a part of the tax, see, e.g., Ark. Code Ann. " 26"18"208(8), "the interest on a tax is not a tax, but is something in addition to the tax," see Penrose v. United States, 18 F.Supp. 413, 415 (E.D. Pa. 1937). | Unlike taxes, interest on state-tax delinquencies is not levied generally on all taxpayers for the purpose of raising revenue, for purposes of reviewing illegal exaction claims. | Are interest on tax delinquencies the same as taxes? | 044676.docx | LEGALEASE-00140165-LEGALEASE-00140166 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 16528 | Sciscoe v. Enbridge Gathering (N. Texas), 519 S.W.3d 171 | 386+12 | A trespass does not have to be committed in person but may be caused by allowing or causing something to cross the boundary of the property in question.Villarreal, 136 S.W.3d at 268 (citing Gregg, 344 S.W.2d at 416). A property owner's right to pursue an action for trespass occurs when there has been a physical unauthorized entry upon either the surface of his property of the airspace immediately adjacent thereto. See Villarreal, 136 S.W.3d at 269 (holding that a trespass of aerial space above the complainant's property may be committed by causing something to physically enter or crossover the land, such as the discharge of pollutants, soot, or carbon). | A trespass does not have to be committed in person but may be caused by allowing or causing something to cross the boundary of the property in question. | Does a trespass need to be committed in person? | 047429.docx | LEGALEASE-00140623-LEGALEASE-00140624 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 16529 | Fields v. Blake, 349 F. Supp. 2d 910 | 34+28(2) | Captain Blake's only action with respect to Fields involved issuing a letter barring her from NAS Willow Grove. Civilians have no constitutional right to enter a military base. See Greer v. Spock, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). The commanding officer of a military base has wide discretion as to whom he can exclude from the base. Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 893, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). It is well recognized that a that a base commander can summarily bar civilians from a military establishment and is not required to afford notice and a hearing prior to barring a civilian from the base. Serrano Medina v. United States, 709 F.2d 104, 109 (1st Cir.1983) (finding that district court did not err in finding "no protected interest" by civilians' summary debarment from military base, stating that "the power to exclude civilians summarily has been acknowledged by almost every court to consider the matter"); Tokar v. Hearne, 699 F.2d 753, 756 (5th Cir.1983); United States v. Gourley, 502 F.2d 785, 786"87 (10th Cir.1973). | Commanding officer of a military base has wide discretion as to whom he can exclude from the base. | Does the Commanding officer of a military base have wide discretion as to whom he can exclude from the base? | Armed Services - Memo 243 - TB.docx | ROSS-003287110-ROSS-003287111 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16530 | Bradford v. Union Tr. Co., 242 Ky. 709 | 83E+868 | The Negotiable Instruments Law of Florida contains a like provision. Comp. Gen. Laws Florida 1927, " 6872; Rev. Gen. St. Florida 1920, " 4786. In Williams v. Peninsular Grocery Co., 73 Fla. 937, 75 So. 517, 523, it was said: "A mere agreement to delay the day of payment without consideration will not bind the holder, and will not discharge the other parties." | Evidence held not to show binding agreement between maker and purchaser of note to extend time for payment so as to discharge indorser from liability. Ky. St. S 3720b-120, subd. 6; Comp. Gen. Laws Fla. 1927, S 6872. | Can an agreement to delay the day of payment without consideration bind the holder? | 010467.docx | LEGALEASE-00141543-LEGALEASE-00141544 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 16531 | Jacobs v. Pierce, 132 Ill. App. 547 | 83E+498 | Pierce appears to have assigned the note and in his indorsement guaranteed the payment of the note at maturity. His executors had taken up the note, and holding it, had the right to erase the indorsement and maintain an action upon it without showing any re-transfer. If the payee or any assignor of a promissory note has been under the necessity of taking up the note his right of action revives. Campbell v. Humphries, 2 Scam. 478; 4 Am. & Eng. Ency. of Law 279 (2nd ed.). It was unnecessary for the court to hear any evidence if there was no plea. The order setting aside the order staying the proceedings was all that was necessary to permit the collection of the judgment. | Where a payee or assignor of a promissory note has been required to take up note, his right of action revives. | When does the right of action revive to the payee of a promissory note? | 010483.docx | LEGALEASE-00140814-LEGALEASE-00140815 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16532 | Baker Bank & Tr. Co. v. Behrnes, 217 So. 2d 461 | 83E+412 | According to R.S. 7:191, the possessor of a note payable to bearer is a "bearer", and a bearer is a "holder". The transfer of its possession to the pledgee is the only formality required to pledge a negotiable note. Article 3158, Civil Code. The pledgee of a bearer note is, therefore, a holder thereof by definition. If he satisfies the requirement of R.S. 7:52, he is a holder in due course of the note. | The pledgee of a bearer note is a "holder" and if he satisfies statutory requirements, he is a "holder in due course". LSA-C.C. art. 3158; LSA-R.S. 7:52. | Can a pledgee of a note be a holder in due course? | 010496.docx | LEGALEASE-00141067-LEGALEASE-00141068 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 16533 | People v. Manfredi, 166 A.D.2d 460 | 63+3 | A person who pays a coerced bribe is not guilty of criminal conduct and cannot be an accomplice of the bribe receiver (see, People v. Court, supra ). In addition, unlike the situation in Court (supra), where illegal gambling operators paid police officers to refrain from enforcing the law, Novick was forced to pay bribes to receive a lawful entitlement"timely payment for work satisfactorily completed (see, General Municipal Law " 106"b). Under these circumstances, the court was correct in not charging that the jury could find Novick to have been an accomplice-in-fact. | Person who pays coerced bribe is not guilty of criminal conduct and cannot be accomplice of bribe receiver. McKinney's Penal Law S 200.05; McKinney's CPL S 60.22. | Should a person be an accomplice of bribery if he was coerced to pay the bribe? | 012108.docx | LEGALEASE-00140786-LEGALEASE-00140787 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 16534 | People v. Woodruff, 9 Ill. 2d 429 | 63+1(2) | We are unable to agree with these contentions. It is our opinion that the correct rule is that offering, giving, soliciting or accepting a bribe constitutes bribery where the one solicited, soliciting, or accepting the bribe, though not an officer de jure, was acting under the color of title of the office involved.In other words, an officer de facto is punishable for accepting or soliciting a bribe in the same manner as if he were an officer de jure. Likewise it is a crime to offer or to give him a bribe. 8 Am.Jur. sec. 15, p. 895. | A de facto officer is punishable for accepting or soliciting a bribe in the same manner as if he were an officer de jure, and it is likewise bribery to offer or to give him a bribe. | Is an officer de facto punishable for accepting or soliciting a bribe? | 012113.docx | LEGALEASE-00140826-LEGALEASE-00140827 | Condensed, Order, SA, Sub | 0.66 | 1 | 1 | 1 | 1 | 1 |
| 16535 | Shields v. Blue Grass Ordnance Depot, 308 Ky. 496 | 231H+2380(4) | These uncertain statements fall far short of sufficiently pleading a custom or practice.To properly do so, facts must be alleged which show that such custom or practice was certain, general, uniform, and recognized. Aulich et al. v. Craigmyle et al., 248 Ky. 676, 59 S.W.2d 560. | Where overtime compensation is sought under Fair Labor Standards Act in a Portal-to-Portal suit on ground that claim is not barred by the Portal-to-Portal Act because within exception dealing with custom and practice, facts must be alleged showing that such custom or practice was certain, general, uniform, and recognized. Portal-to-Portal Act of 1947, S 1 et seq., 29 U.S.C.A. S 251 et seq.; Fair Labor Standards Act of 1938, S 16(b), 29 U.S.C.A. S 216(b). | "In order to establish a custom, must it be proven that it is uniform and recognized by the law as essential?" | 014131.docx | LEGALEASE-00141720-LEGALEASE-00141721 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1636 | Rosenberg Bros. & Co. v. U.S. Shipping Bd. Emergency Fleet Corp., 7 F.2d 893 | 113+190(1) | It is elementary that a custom or usage, to be binding, must be definite, uniform, and well and satisfactorily proven... | It is elementary that a custom or usage, to be binding, must be definite, uniform, and well and satisfactorily established... | How should the existence of usage be established? | 014144.docx | LEGALEASE 00141734-LEGALEASE 00141735 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 1637 | Baker v. J.W. McMurry Contracting Co., 282 Mo. 685 | 113+3 | A custom, to be binding, must, among other requisites, be certain, uniform, and of long existence... | A custom, to be binding, must, among other requisites, be certain, uniform, general, and of long existence... | Does a custom have to be of long existence in order to be binding? | 014145.docx | LEGALEASE 00141779-LEGALEASE 00141780 | Condensed, Order, SA | 0.68 | 1 | 1 | | 1 | 1 |
| 1638 | Cont'l Coal Co. v. Birdsall, 108 F. 882 | 113+3 | The existence of such a custom as would control the charter party; that is to say, that would be uniform... | The existence of such a custom as would control the charter party, that is to say, that would be uniform and notorious... | Does a custom have to be uniform and notorious to be presumed to be understood by parties? | 014196.docx | LEGALEASE 00141876-LEGALEASE 00141879 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 1639 | Padilla-Mangual v. Pavia Hosp., 516 F.3d 29 | 115+1 | Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states... | Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states... | What is a person's domicile? | 014669.docx | LEGALEASE 00141813-LEGALEASE 00141814 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | 1 |
| 1640 | No. 3 Dallas/d Suburban Heights v. Beilenstein, 54 Ill. App. 3d 67 | 200+735.1 | Under the statutes in question, which are similar to historic provisions for establishing and vacating highways... | Under the statutes in question, which are similar to historic provisions for establishing and vacating highways... | When is the assertion or assessment of damages jurisdictional in reference to the vacation of a highway? | Highway-Memo 164 AMM.docx | ROSS-003301829-ROSS-003301831 | Condensed, SA, Sub | 0.68 | 1 | 1 | 1 | 1 | 1 |
| 1641 | Textile v. McLoughlin, 173 Cal. App. 4th 156 | 302+11 | Citing Lynn v. Security Pacific Nat. Bank (1995) 40 Cal.App.4th 1001, 1014, 48 Cal.Rptr. 2d 174... | A complaint measures the materiality of the facts asserted as a cause of action. It ordinarily does not assert an evidentiary fact. | Does a complaint measure the materiality of the facts asserted as a cause of action? | 023460.docx | LEGALEASE 00141364-LEGALEASE 00141365 | Condensed, SA | 0.82 | 1 | 1 | | 1 | 1 |

2915

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16542 | Barrow v. Bement, 239 S.W. 273 | 307A+723.1 | We will only consider the question whether the court erred in overruling the motion, in so far as it sought a continuance to enable appellant to get personal service upon defendant Huber, as the assignment complains of the action of the trial court in this respect only. However, as the propositions under the assignment urge error in refusing a continuance to procure the testimony of Huber, it is proper to say that the motion seems to be fatally defective as a statutory motion, for the failure to allege that appellant has used "due diligence," which is a positive statutory requirement. Crawford v. Saunders (Tex. Civ. App.) 79 S. W. 102; Patton v. Williams (Tex. Civ. App.) 79 S. W. 357, and cases cited. Moreover, the motion was addressed to the sound discretion of the the court, and a careful consideration. | A motion for a continuance to procure testimony which fails to allege due diligence as required by the statute is fatally defective. | "Is an application for a continuance bad which fails to state that the party has used due diligence, although the facts stated may seem to show diligence?" | Pretrial Procedure - Memo # 4296 - C - TM.docx | LEGALEASE-00031122-LEGALEASE-00031123 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16543 | Skelton v. Gen. Candy Co., 539 S.W.2d 605 | 307A+720 | Plaintiff's testimony as to the precise distance she was from the defendant's store when she fell was merely an estimate, and the transcript as a whole readily establishes that plaintiff had great difficulty in estimating distances. It is undoubtedly for just such reason that the rule has evolved that a party is not conclusively bound by estimates of time, speed or distance. Vaeth v. Gegg, 486 S.W.2d 625 (Mo.1972). | A party is not conclusively bound by estimates of time, speed or distance. | "Is a party not conclusively bound by estimates of time, speed or distance?" | 030717.docx | LEGALEASE-00141487-LEGALEASE-00141488 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 16544 | Vega v. State, 898 S.W.2d 359 | 110+603.2 | Motions for continuance are addressed to the court's discretion and will not be reversed on appeal unless it is shown that the court abused its discretion. Tex.Code Crim.P.Ann. art. 29.06 (Vernon 1989); Coleman v. State, 481 S.W.2d 872, 873 (Tex.Crim.App.1972). Motions for continuance must be in writing. Tex.Code Crim.P.Ann. art. 29.03 (Vernon 1989). It is not an abuse of discretion to deny an oral motion for continuance. Hightower v. State, 629 S.W.2d 920, 926 (Tex.Crim.App.1981); Gonzalez v. State, 470 S.W.2d 700, 701 (Tex.Crim.App.1971). Vega's motion for continuance was oral. Therefore, the trial court did not abuse its discretion in denying his motion. | Trial court did not abuse its discretion in refusing to grant defendant's oral motion for continuance on the third day of trial; defendant was required to make written motion. Vernon's Ann.Texas C.C.P. art. 29.03. | Is an oral motion for continuance insufficient to constitute a basis of reversal for refusing to continue? | 030739.docx | LEGALEASE-00141563-LEGALEASE-00141564 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 16545 | Home Ins. Co. v. Gonzalez, 648 So. 2d 291 | 307A+91 | We find that the trial court properly denied Home Insurance's petition for two reasons. First, Rule 1.290(a)(1) requires a petition filed pursuant to it to set out "the facts which the petitioner desires to establish by the proposed testimony." This is because the rule is intended to be used only for the preservation of evidence, and not as pre-suit discovery. See 30 Fla.Stat.Ann. 428 (1985) (1967 author's comment to Rule 1.290: "The rule is intended only for the perpetuation of testimony; it is not a discovery procedure. It is not to be used for the purpose of discovery before action is commenced."); see also Henry P. Trawick, Jr., Florida Practice and Procedure, " 17-1 (1993 ed.) ("Perpetuation of testimony is not discovery.") | Rule governing depositions before action or pending appeal is intended to be used only for preservation of evidence and not for presuit discovery. West's F.S.A. RCP Rules 1.290(a)(1), 1.290 comment. | Is Rule 1.290(a)(1) intended to be used only for preservation of evidence and not for pre-suit discovery? | 031327.docx | LEGALEASE-00140726-LEGALEASE-00140727 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 16546 | Miller v. McDonald, 13 Wis. 673 | 30+3914 | In the second place, the magistrate certifies that "the plaintiff attended at the taking of the deposition." This was a fact to which he was authorized by statute to certify, and when he has done so his certificate becomes prima facie evidence of its existence. The statute (sec 17, ch. 137, R. S.,) declares that he shallannex to the deposition a certificate containing, among other things, a statement in substance, that the opposite party, or his attorney, attended at the taking, or that a notice, of which the annexed is a copy, was served upon him on a day named. This provision indicates that the legislature intended that when there was an attendance in fact, no proof of service of notice would be necessary. By the word "attended," as here used, the legislature undoubtedly meant something more than mere personal presence. It signifies that the party was present and participated in the examination of the witnesses. This is the sense in which it must be understood, and in which we must presume the magistrate used it. And we cannot, for the sake of excluding the deposition, presume that he misapprehended its legal signification, and used it as signifying personal presence only. On this ground, also, I think the court was right in admitting it. | Where it appears from the deposition that a portion of the testimony favorable to the party taking it, "was objected to," it will be presumed that the objection was made by the adverse party, it being certified by the officer that such party attended at the taking of the deposition. The word "attended," as used in the statute prescribing the form of certificate to be annexed to a deposition, means some thing more than mere personal presence; it signifies participation in the examination of the witness. | Should the certificate stating the non-attendance of a party at the taking of the deposition be annexed to the certificate of the taking? | 032528.docx | LEGALEASE-00142053-LEGALEASE-00142054 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 16547 | Doe v. Roe, 24 Ga. 384 | 307A+74 | The objection to these was, that the case stated at the head of the answers, was not the same as the case on trial. The difference being, that in the case on trial, the tenant was Colbert, in the case as stated at the head of the answers, the tenant was Brooks. But the Judge certifies that there was evidence appearing on the answers, that they belonged to the case on trial. | Interrogatories are not necessarily vitiated by the fact that the case stated at the head of the answers is not the same as the case on trial. | Are interrogatories not necessarily vitiated by the fact that the case stated at the head of the answers is not the same as the case on trial? | 032552.docx | LEGALEASE-00141712-LEGALEASE-00141713 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 16548 | Ft. Worth & D.C. Ry. Co. v. Walker, 48 Tex. Civ. App. 86 | 307A+74 | It is contended by appellee that the indorsements on the envelope are a part of the deposition, and the entire deposition, including the envelope with its indorsements, constituted a filed paper in the case, and was admissible in evidence. The return on the envelope serves the purpose only to preserve the purity of the return of the deposition.It is a matter properly for the court, and not for the jury, as evidence. In the case of Blum v. Jones, 86 Tex. 495, 25 S. W. 694, the legality of the taking of the deposition was challenged in the trial before the jury by proof that the officer taking the deposition was, by reason of relationship, not legally authorized to take it. Railway v. Long (Tex. Civ. App.) 65 S. W. 883, was where testimony was offered in the trial to impeach the notary who took the deposition. | The return on a deposition envelope serves the purpose only to preserve the purity of the return of the deposition, and is a matter properly for the court, and not for the jury, as evidence. | Does return on a deposition envelope serve the purpose to preserve the purity of the return? | 032570.docx | LEGALEASE-00141698-LEGALEASE-00141699 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 16549 | Jenkins v. Tobin, 31 Ark. 306 | 307A+74 | The second ground of objection is, that the court erred in suppressing the deposition of Laura B. Cooper. The deposition was taken before a justice of the peace, in the State of Pennsylvania, and was suppressed because there was no certificate of authentication, showing that the person who took the deposition and styled himself justice of the peace, was in fact such. | Where depositions are taken before a justice of the peace in another state, a certificate of authentication of his official character should accompany the deposition. | Is a certificate of authentication required from a justice of the peace of a state to take a deposition of another state? | 032607.docx | LEGALEASE-00141328-LEGALEASE-00141329 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,673 | 22,876 | 9,029 |
| 16550 | Dworkin v. Quantum Capital Network, 929 So. 2d 1184 | 302+843(1) | The appellant's argument that Florida Rule of Civil Procedure 1.590(b) allowed the parties to agree between themselves to extend the period within which to respond to the complaint is unpersuasive for two reasons. First, Dworkin did not file a motion for an untimely motion to dismiss. A motion to dismiss is not a "response" because it is not a "pleading" under the rule. See Fla. R. Civ. P. 1.100(a) (designating permissible pleadings and providing that "[n]o other pleadings shall be allowed"); Boca Burger, Inc. v. Forum, 912 So.2d 561 (Fla.2005) (citing In Vendever v. Jaco, 798 So.2d 200, 201 (Fla.4th DCA 2001) (noting that a motion to dismiss is not a pleading)). | "Is an untimely motion to dismiss for forum non conveniens a "pleading"?" | 03386A.docx | LEGALEASE 00140351 - LEGALEASE 00140352 | Condensed, SA, Sub 0.64 | 0.64 | 0 | | 1 | 1 |
| 16551 | Gay v. Kendig, 2 Neb. (Lit) 472 | 307A+726 | This case presents only one question: whether the defendant is entitled to obtain a third continuance, upon the production of a third affidavit showing the absence of the same witness. The affidavit seems to us insufficient. The defendant does not state that he ever expects to obtain the evidence of the witness, nor does he show that he has made any effort; and if he did use any such effort, the affidavit does not state what efforts were made. The case had been continued twice on the same showing, and we think that it fully established a prima facie defense on the ground, if the defendant should have shown that he had used, every time, ordinary diligence to obtain the testimony; and that there was a reasonable probability of obtaining the testimony. Not having done so, we are satisfied that the continuance was properly refused. 17 La 151; 19 N. 298. | To obtain a third continuance on the ground of the absence of the same witness, the materiality of the testimony must be shown, and such extraordinary diligence as to satisfy the court that it was absolutely impossible to procure the evidence. | 03387.docx | LEGALEASE 00141640 - LEGALEASE 00141644 | Condensed, SA, Sub 0.8 | 0.8 | 0 | | 1 | |
| 16552 | Ivie Custom Contractors, 439 B.R. 544 | 371+2905 | This Court, however, discerns no anomaly in refusing to apply a doctrine conceived to protect state law refunds in a wholly unrelated context. The doctrine, contrary to the argument of the Defendant, this result does not offend the doctrine of intergovernmental immunity. "[I]ntergovernmental tax immunity ba[s] only those laws that impose directly on one sovereign by the other or that discriminate against a sovereign or those with whom it deals." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 815, 109 S. Ct. 1500, 103 L.Ed.2d 891 (1989). The Supreme Court's interpretation of the doctrine does not discriminate against the federal government because federal law itself, rather than the State of Nevada, determines whether or not circumstances under which a taxpayer may seek a refund from the IRS. This Order merely recognizes that state law is inapplicable to support or restrict those prerequisites. See WF Cohn v. Maryland, 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819). State statutes have no power, by taxation or otherwise, "to retard, impede, burden, or in any manner control the operation of the constitutional laws enacted by Congress"). Therefore, the Defendant's argument that the VPA bars the Trustee's action fails. | Doctrine of intergovernmental tax immunity bars only those taxes that are imposed directly on one sovereign by the other or that discriminate against a sovereign or those with whom it deals. | 04341.docx | LEGALEASE 00141014 - LEGALEASE 00141016 | Condensed, SA, Sub 0.85 | 0.85 | 0 | | 1 | |
| 16553 | Callanan v. City of Overland Park, 313 Kan. 646 | 371+2060 | The term "excise tax" has come to have an indistinct and indicate particularity any tax which is not an ad valorem tax. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation or the employment of a privilege. (See CSA-Wools and Phrases, p. 155.) In our own case there is no tax on the sale or other... taxes. (Wichita Produce Co. v. City of Wichita, 172 Kan. 20, 239 P. 647.) The term "privilege tax" has been used by this court to denote a tax which is determined by the legislature purpose designated the tax; it is pointed out in Duff v. Garden City, supra, 132 Kan. p. 393, 251 P. 1091, the particular term used in naming a governmental tax exaction is not controlling in determining the legislative purpose because "excise tax" is not a precise term covering the entire field. Therefore it would appear the imposition on intended cannot... be applied only to the nature of an excise tax. | "Is an "ad valorem tax" a tax imposed on the basis of the value of the article or thing taxed?" | Taxation - Memo # 688 - C.docx | ROSS 00202334-ROSS-00303336 | Condensed, SA | 0.91 | 0 | | 1 | |
| 16554 | Summit Claims Mgmt. v. Lawyers Exp. Trucking, 913 So. 2d 1182 | 413+2 | "Workers' compensation is a branch of law which is entirely statutory in origin." Shaw v. Cambridge Integrated Servs. Group, Inc., 888 So.2d 58, 61 (Fla. 4th DCA 2004). Its creation "involved a legislative balancing of competing interests, creating a system of shared benefits and burdens for its participants." Sun Bank/South Fla., N.A. v. Baker, 632 So.2d 669, 672 (Fla. 4th DCA 1994). Given the legislature, "workers' compensation" was unknown to the common law." Shaw, 888 So.2d at 61. The only subrogation rights available to an employer are set out in those delineated in the statute. See Fla. Stat. Ch. ... So.2d 489, 491 (Fla.1952). As such, "in order to avail itself of the benefits conferred by statute, the party seeking must comply with the terms and conditions stated therein." Cont'l Ins. Co. v. Indus. Fire & Cas. Ins. Co., 427 So.2d 792, 793 (Fla. 3d DCA 1983). | Is workers compensation a branch of law which is entirely statutory in origin? | 04822.docx | LEGALEASE 00141353 - LEGALEASE 00141353 | Condensed, SA | 0.91 | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,873) | Selection & Arrangement (21,876) | Multiple Differences (9,079) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16555 | First Allmerica Fin. Life Ins. Co. v. Minnesota Life Ins. Co, 188 F. Supp. 2d 351 | 25T=145 | The omission of any reference to "interpretation" of the Agreement supports the limited application of the arbitration clause. | Under Minnesota contract law, arbitration clause of asset acquisition agreement requiring binding arbitration of any dispute with respect to operation of acquiring agreement applied only to disputes as to operation of agreement, and not to disputes concerning interpretation of agreement... | Does the omission of an express reference to 'interpretation of the agreement' support the limited application of the arbitration clause? | 007497.docx | LEGALEDGE 00161317 LEGALEDGE 00161318 | Condensed, SA, Sub 0.14 | | 0 | | 1 | 1 | |
| 16556 | United States v. Apple, 927 F. Supp. 1119 | 63=1(2) | After Morgalli, another New York Court interpreted section 666(a)(2) in Vitria, the defendant owed a water bill and bribed an official to reduce the bill... | Bribery statute prohibiting attempts to influence state governmental agency receiving federal funds in connection with any business or transaction of agency involving "anything of value of $5,000 or more"... | In ruling on the filing of value element, does the statute require either the gain to the defendant or the loss to the victim to be $5,000 or more, or is it sufficient the overall transaction or target of the bribe is valued at $5,000 or more? | 011578.docx | LEGALEDGE 00143314 LEGALEDGE 00143315 | Condensed, SA, Sub 0.12 | | | | 1 | 1 | |
| 16557 | United States v. Medeiny, 5127.3 d 1486 | 63=13 | Therefore, we hold that whether an individual is a public official within the meaning of the statute is a question of law, and as such, a matter for judicial resolution. United States v. Loschiavo, 119 F.3d 1557, 197 (D.C.Cir.1954)... | Whether individual is public official within meaning of bribery statute is question of law. 18 U.S.C.A. S 201(a)(1). | In a bribery case, who should decide whether an individual is a public official? | 012181.docx | LEGALEDGE 00142433 LEGALEDGE 00142434 | Condensed, SA, Sub 0.5 | | | | | 1 | |
| 16558 | United States v. Labonte, 251 F.2d 935 | 63=1(1) | On the one hand, to reduce unlawful action will apply the culpability which the statute requires. The reason for this is obvious, it is a major constitutional guarantee that the community bear the benefit of objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions... | Under statute making it a crime to offer money to any person acting for United States with intent to influence his decision or action on any matter before him in his official capacity or to induce him to do or omit to do any act in violation of his lawful duty, either an intention to influence official behavior or an intention to induce unlawful action will supply required culpability. 18 U.S.C.A S 201. | According to the face of the statute, when will the culpability be satisfied for the offense of bribery? | 013194.docx | LEGALEDGE 00142465 LEGALEDGE 00142466 | Condensed, SA, Sub 0.42 | | | | | 1 | |
| 16559 | Orr v. Calicott, 2009 Ark. App 837 | 30TA=554 | A dismissal for improper venue does not go to the merits of whether the plaintiff can recover, and thus venue determined is that the plaintiff brought suit in the wrong county. Under Arkansas Rule of Civil Procedure 41(b) (2009), an involuntary dismissal, such as Orr suffered here, on Barnett's motion to dismiss for improper venue... | A dismissal for improper venue does not go to the merits of whether the plaintiff can recover; all that is determined is that the plaintiff brought suit in the wrong county. | Does a dismissal for improper venue does not go to the merits of whether the of whether the plaintiff can recover? | 013427.docx | LEGALEDGE 00142768 LEGALEDGE 00142769 | Condensed, SA 0.72 | | 0 | | 0 | | |
| 16560 | State ex rel. TRI-Local Co. v. Vincent, 239 S.W.3d 158 | 30TA=554 | "Prohibition to prevent circuit courts from exercising jurisdiction over actions where workers' compensation provides the exclusive remedy, subject matter jurisdiction over such matters properly lies in the Labor and Industrial Relations Commission." State ex rel. Taylor v. Wallace, 73 S.W.3d 620, 621 (Mo. banc 2002)... | Question of proof necessary for a circuit court to decline an action when it appears that the circuit court lacks subject matter jurisdiction is too high; it must appear by a preponderance of the evidence that the circuit court is without jurisdiction. V.A.M.R. 55.27(g)(3). | Should a motion to dismiss be granted where it appears that the Plaintiff in the circuit court lacks subject matter jurisdiction? | Pretrial Procedure - Memo #4302 - C - AP.docx | LEGALEDGE 00030324 LEGALEDGE 00030325 | Condensed, SA | | | | | 1 | |
| 16561 | In re Paul's Estate, 303 Pa. 171=2005 | 171=2005 | And in Matter of Swift, 137 N.Y. 77, 86; 32 N.E. 1096, 1098; 181, R.A. 789, this Court enunciated the rule that the question of the jurisdiction of the state to tax is one of fact, and cannot turn upon theories or fictions, which, as it has been observed, have no place in a well-ordered system of jurisprudence... | Question of jurisdiction of state to tax cannot turn on theories or fictions. | Can questions on jurisdiction of state to tax turn on theories or fictions? | Pretrial Procedure - Memo #4291 - C - OR.docx | ROSS-003294094 ROSS-003319610 | | | 0 | | 0 | | |
| 16562 | Mabee v. Urmaz, 211 Ariz. 543 | 30=230 | Mabee lastly argues that "trial court erred or abused its discretionary authority" in denying his motions under the Comprobar under the statute. "We review a trial court's grant or denial of relief under" ARCAP for an abuse of discretion. Adams v. Valley Nat'l Bank, 139 Ariz. 340, 345, 678 P.2d 525 710, 737 (1996); Copeland, 176 Ariz. at 91, 859 P.2d at 200... | Court of Appeals reviews a trial court's grant or denial of relief from dismissal of complaint for untimely service under standard of abuse of discretion, and court will not disturb the exercise of the trial court's discretion if it is supported by any reasonable evidence. A.R.S. S 12-504 | Will a dismissal for untimely service be reviewed upon an abuse of discretion standard? | 013803.docx | LEGALEDGE 00142312 LEGALEDGE 00142313 | Condensed, SA, Sub 0.47 | | | | | 1 | |
| 16563 | Hamilton v. Morris Res., Ltd., 225 S.W.3d 336 | 30TA=746 | As to exhibit 4, one of the objections raised to the admission of this exhibit was that it was not disclosed pursuant to the trial court's Rule 166 pre-trial order. However, a court is without authority to enforce these orders. See Tex.R. Civ. P. 166. The exclusion of this exhibit is only a partial order not an impermissible sanction. Vernon's Ann.Texas Rules Civ.Proc., Rule 166(a). (The Court noted in its opinion at pg.9 that by pg.1 Therefore, the trial court did not err in excluding exhibit 4.) | The exclusion of an exhibit not listed in a pretrial order is not an impermissible sanction. Vernon's Ann.Texas Rules Civ.Proc., Rule 166(a). | Is the exclusion of an exhibit not listed in a pretrial order not an impermissible sanction? | 013900.docx | LEGALEDGE 00142290 LEGALEDGE 00142291 | SA, Sub 0.74 | | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16564 | Rucker v. Taylor, 828 N.W.2d 595 | 307A+560 | We review decisions by the district court to grant a motion to dismiss for correction of errors at law. Crall v. Davis, 714 N.W.2d 616, 619 (Iowa 2006); see also Iowa R.App. P. 6.907. Ordinarily, the pleadings in the case form the outer boundaries of the material subject to evaluation in a motion to dismiss. Wilson v. Ribbens, 678 N.W.2d 417, 418 (Iowa 2004). As a consequence, district courts generally do not consider facts outside the pleadings in evaluating a motion to dismiss. Id. An exception to this rule exists when the grounds for the motion are based on an alleged failure to provide timely service within the required time frame. Carroll v. Martir, 610 N.W.2d 850, 856 (Iowa 2000). In such a case, like this case, a court is permitted to consider facts outside the pleadings. See id. | Good cause for failure to timely accomplish service of process requires an examination of all of the surrounding facts to determine if they reveal understandable mitigating circumstances, for purposes of a motion to dismiss. I.C.A. Rule 1.302(5). | "Is a court permitted to consider facts outside the pleadings, when the grounds for motion to dismiss are based on alleged failure to provide timely service?" | 033948.docx | LEGALEASE-00142664-LEGALEASE-00142665 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 16565 | Berger v. United States, 295 U.S. 78 | 91+293 | It is settled by the great weight of authority that, although an indictment charges a conspiracy involving several persons and the proof establishes the conspiracy against some of them only, the variance is not material. But several circuit courts of appeals have held that if the indictment charges a single conspiracy, and the effect of the proof is to split the conspiracy into two, the variance is fatal. Thus it is said in Telman v. United States (C.C.A.) 67 F.(2d) 716, 718: "Where one large conspiracy is charged, proof of different and disconnected smaller ones will not sustain a conviction." In support of that statement the various decisions upon which petitioner here relies are cited. This view, however, ignores the question of materiality; and should be so qualified as to make the result of the variance depend upon whether it has substantially injured the defendant. | Variance is not "material" where indictment charges a conspiracy involving several persons, and the proof establishes conspiracy against only some of them. | Is a variance material when the indictment and proof correspond? | Sex Offence - Memo 77 - RK.docx | LEGALEASE-00033054-LEGALEASE-00033055 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 16566 | Campbell v. State, 125 So. 3d 46 | 211+1724 | Another essential element that must be proven for a defendant to be convicted under Section 97"5"23(2) is that the defendant was over the age of eighteen at the time the crime occurred. The State bears the burden of proving a defendant's age as "an affirmative fact." Campbell, who does not claim that he was under the age of eighteen at the time of the crime and was in fact forty-two years old, argues that the State failed to prove this element at trial. Specifically, Campbell argues that the only evidence presented to the jury regarding his age is Lauren's testimony that she "believed" Campbell to be forty-two years old at the time of the crime, and that such testimony is not credible. | The State bears the burden of proving a defendant's age as an affirmative fact in a prosecution for fondling a minor over whom defendant held a position of trust or authority. West's A.M.C. S 97-5-23(2). | Does the State bear the burden of proving a defendants age? | 043109.docx | LEGALEASE-00143468-LEGALEASE-00143469 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 16567 | Pourier v. Bd. of Cty. Comm'rs of Shannon Cty., 83 S.D. 235 | 371+2005 | The nonexemption of Indians from federal income taxation is without significance on the power of a state to tax personal property owned by tribal Indians and located within Indian reservations. Taxation of Indians by the Federal Government does not impliedly authorize taxation by the state. Taxation or exemption of Indians by either the Federal Government or by the State is a matter for Congressional resolution. For this reason, the contentions made by the county should properly be directed to the Congress of the United States. As the court observed in United States v. Rickert, supra, "It is said that the state has conferred upon these Indians the right of suffrage and the other rights that ordinarily belong only to citizens, and that they ought, therefore, to share the burdens of government like other people who enjoy such rights. These are considerations to be addressed to Congress. It is for the legislative branch of the government to say when these Indians shall cease to be dependent and assume the reponsibilities attaching to citizenship. That is a political question, which the courts may not determine. | Taxation of Indians by federal government does not impliedly authorize taxation by the state. | Does the taxation of Indians by federal government impliedly authorize taxation by the state? | 045291.docx | LEGALEASE-00142820-LEGALEASE-00142821 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 16568 | Commonwealth Edison Co. v. Montana, 453 U.S. 609 | 371+2005 | This Court has indicated that States have considerable latitude in imposing general revenue taxes. The Court has, for example, consistently rejected claims that the Due Process Clause of the Fourteenth Amendment stands as a barrier against taxes that are "unreasonable" or "unduly burdensome." See, e. g., Pittsburgh v. Alco Parking Corp., 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974); Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934); Alaska Fish Salting & By-Products Co. v. Smith, 255 U.S. 44, 41 S.Ct. 219, 65 L.Ed. 489 (1921). Moreover, there is no requirement under the Due Process Clause that the amount of general revenue taxes collected from a particular activity must be reasonably related to the value of the services provided to the activity. Instead, our consistent rule has been:"Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied. | States have considerable latitude in imposing general revenue taxes. | Do states have considerable latitude in imposing general revenue taxes? | Taxation - Memo # 492 - C - NS.docx | ROSS-003315784-ROSS-003315785 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 16569 | United States v. City of Roanoke, 258 F. Supp. 415 | 371+2005 | This statute is broader than 15 U.S.C. " 646, and, if anything, a comparison of the two would indicate that Congress clearly intended to limit its waiver of immunity exactly as provided in the statute, i.e. when the land is held "as security for a loan." If it were not so intended by Congress, it would have been a simple matter to have drafted, in the case of the Small Business Administration, as broad a statute as that which allows local taxation of land held by the Federal Housing Administration. And if Congress did not intend to limit the imposition of local taxes upon land held by the Small Business Administration to land held "as security for a loan", it would be a simple matter for Congress to expressly indicate otherwise in the future. It should be remembered that a waiver of immunity from taxation must not only be express but it must also be strictly construed. Reconstruction Finance Corp. v. State of Texas, 229 F.2d 9 (5th Cir. 1956), cert. den. 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956). | Waiver of immunity from taxation must not only be express but it must also be strictly construed. | Should the waiver of immunity from taxation be express and strictly construed? | 045322.docx | LEGALEASE-00142581-LEGALEASE-00142582 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 16570 | Collier Cty. v. State, 733 So. 2d 1012 | 371v2955 | Power of state and local governments to levy taxes is governed by the constitution. West's F.S.A. Const. Art. 7, § 1(a). | An overview of the extent of the local government's authority to levy taxes is essential to a proper understanding of the issues in this case and to provide the backdrop for the reasons the County passed the ordinance. The power of state and local governments to levy taxes is governed by the constitution. Article VII, section 1(a), Florida Constitution, provides that no tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted to the state except as provided by general law. | Is the power of state and local governments to levy taxes governed by the Constitution? | Taxation - Memo # 501-C - 566.docx | ROSS-003924793-ROSS-003924971 | SA, Sub | 0.8 | 0 | | 1 | 1 | |
| 16571 | Conf Motors Corp. v. Muskegon Twp., 198 Mich. 170 | 371v1349 | A tax upon possessory rights is an "excise tax" and not an "ad valorem property tax." | That a tax upon possessory rights, such as are involved here, is an excise and not an ad valorem property tax seems to us too clear for substantial debate. Just two years ago, in Donlea v. City of Detroit, 370 Mich. 394, 121 N.W.2d 725, we had occasion to consider the nature of excises for the purpose of determining the validity of a city ordinance imposing an income tax. In that case, at p. 208 of xxx, 121 N.W.2d at p. 729, we again defined a tax as follows: "A tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege", citing 26 R.C.L., Taxation, § 209, at p. 236, which had been relied upon in earlier decisions of this Court. While the legislature in imposing the new tax has utilized the language of ad valorem taxation, the tax nonetheless in its operation and practical effect is a tax upon the privilege of possession and use for profit of another's tax-exempt property and, therefore, it is an excise and not an ad valorem property tax. The importance of this distinction lies in the fact that whatever legislative power may be exercised over subject matter of the tax, it not, unless the law is too broad enough to include within its scope the new tax or, if not, unless the new tax is intended to enlarge its scope. | "A tax upon possessory rights is an 'excise tax' and not an 'ad valorem property tax'?" | Taxation - Memo # 446-C - 514.docx | ROSS-003935378-ROSS-003935379 | Condensed, SA, Sub 0.93 | | 0 | 1 | 1 | 1 |
| 16572 | Collector of Taxes of City of Boston v. Revere Bldg., 276 Mass. 576 | 371v2960 | "Tax" on realty, in its nature, is not "debt", but monetary burden for support of government laid on owner and secured by lien on realty. M.G.L.A. c. 60 § 55. | A tax upon real estate is primarily a pecuniary imposition upon the owner. The tax upon the real estate is simply an money established by statute of which the tax collector may avail himself in default of payment. The Apart from statute no such lien exists. The lien is the creature of statute and is upon the land itself, and not against the owner in person. The purpose of granting the lien is to allow the land to be taken or sold for nonpayment of taxes. Richards v. Cole, 209 Mass. 413, 414, 95 N.E. 852; Donovan v. Haverhill, 247 Mass. 69, 72, 141 N.E. 564, 30 A. L. R. 358; Abbott v. Frost, 185 Mass. 398, 400, 70 N.E. 478; Hereford v. Meserve Co. v. Learned (Mass.) 175 N. E. 73. It was said by Hammond, J. in Carleton v. Sheffield, 213 Mass. 239, 244, 100 N.E. 341, 365 Ann. Cas. 1914A, 1. R. A. (N.S.) 482, Ann. Cas. 1914A, 1: "The tax lien must be commensurate with the tax; it covers the thing for which the tax is assessed and it covers nothing else." A tax on real estate is in nature, is not a debt but a monetary burden for the support of government laid upon the owner and secured by lien upon the realty. It does not arise out of contract, express or implied, it operates in invitum, and the consent of the owner is not required. Boston v. Turner, 201 Mass. 190, 194, 87 N.E. 634. It was said in Richardson v. Boston, 148 Mass. 508, 509, 20 N.E. 166, 167, touching the effect of exercise of eminent domain on the real estate so taken: "The taking, of course, put an end to the city's lien upon the land and right to assess and collect of taxes on to be strictly continued on that all doubts are raised in favor of the taxpayer. If the right upon a strict hold of interest in, or its collection is not clear, it must be denied. It must appear plainly from the words of the statute and cannot be sustained as within its spirit. | Is a "tax" on realty a "debt"? | 045415.docx | LEGALEASE-00142794 - LEGALEASE-00142795 | Condensed, SA, Sub 0.91 | | 1 | | | 1 |
| 16573 | Flynn v. City of San Francisco, 18 Cal. 2d 210 | 371v2960 | Tax levied by reason of ownership of property is a "property tax" rather than "occupation tax." | The character of a tax must be determined by its incidents, and from the natural and legal effect of the language employed in the act. Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 292, 41 S.Ct. 272, 273, 65 L.Ed. 638; Flynn v. Wiss, 5 Cal.2d 154, 159, 53 P.2d 939, 103 A.L.R. 1. The nomenclature is of minor importance, for the court will look beyond the mere title or the bare legislative assertion that the procedure for a tax license in one and determine the real object, purpose and result of the enactment. Ingels v. Riley, 5 Cal.2d 154, 159, 53 P.2d 939, 103 A.L.R. 1. 294. A tax levied by reason of ownership of property is a tax on property rather than an occupation tax. Carley & Hamilton v. Snook, 281 U.S. 66, 71, 50 S.Ct. 204, 74 L.Ed. 911, 68 A.L.R. 194, and cases cited. It is generally held that if the tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the taxed privileges may be enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise or license tax. In re McConnell, 18 Cal.2d 210, 212, 114 P.2d 554; Western States Packing Co. v. Fisher, 20 Cal.App.2d 319, 324; Ingels v. Riley, supra, 5 Cal.App.2d 154, 157, 53 P.2d 939, and reasonably follows that where a tax is levied on the ownership of property during a certain period, based each time upon the ownership of the same property, and each time based on the same general factors, this tax is a property tax. Under some circumstances these so-called license taxes clearly fall within the terms of section 1607 of the Political Code, which provides that double taxation of property shall not be permitted. | Is a tax levied by reason of ownership of property a "property tax" rather than "occupation tax"? | 045637.docx | LEGALEASE-00142798 - LEGALEASE-00142799 | Condensed, SA 0.94 | | 0 | | 1 | |

2920

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16574 | Ortho Pharm. Corp. v. Amgen, 882 F.2d 806 | 25T+156 | In sum, courts invoke the phrase "preservation of the status quo" as a summary explanation of the need to protect the integrity of the applicable dispute resolution process. Thus, the court granting an injunction has the power"and indeed is required"to make all factual findings necessary to "set forth the reason for ... issuance [of injunctive relief]." Fed.R.Civ.P. 65(d). Moreover, because the district court must focus on preservation of the integrity of the arbitration process, the relief granted need not be limited to restoring the parties precisely to their pre-litigation position without regard to the irreparable injury that movant faces. If the existing "status quo" is currently causing one of the parties irreparable injury and thereby threatens to nullify the arbitration process, then it is necessary to alter the situation to prevent the injury. See Canal Auth. of the State of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir.1974) (in remanding case to district court, appellate court cautioned that "focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo."). | In regard to district court's decision as to request for injunctive relief in arbitrable dispute, if existing status quo is currently causing one of parties irreparable injury and thereby threatens to nullify arbitration process, then it is necessary to alter situation to prevent injury. 9 U.S.C.A. S 3. | Is the relief granted by the court when there is an arbitration process limited to restoring the parties precisely to their pre-litigation position? | Alternative Dispute Resolution - Memo 682 - RK.docx | ROSS-003288657-ROSS-003288658 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 16575 | Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co., 815 F.2d 338 | 231H+1549(6) | The present case involves an issue of timely compliance with grievance procedures. Questions of timeliness are ones of procedural, not substantive, arbitrability. Local No. 406, Int'l. Union of Operating Engineers, AFL"CIO v. Austin Co., 784 F.2d 1262, 1264 (5th Cir.1986).As such, John Wiley instructs that the question of timeliness should be decided by an arbitrator if the underlying substantive claim is arbitrable. The parties in this case agree that the substantive claim in the Glenn grievance, wrongful dismissal, is arbitrable. Thus, the timing issue is also arbitrable. | In view of the fact that there was legitimate dispute as to union's compliance with procedural time requirements for filing grievance, question of timeliness of grievance did not fit within rare group of cases where court could decide issue of procedural arbitrability if it could confidently be said not only that claim was strictly procedural, but that claim could operate to bar arbitration altogether, and thus procedural question involving timeliness of grievance was properly decided by arbitrator. | Is the question of timeliness of the request for arbitration considered as a procedural arbitrability? | 007690.docx | LEGALEASE-00144793-LEGALEASE-00144794 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 16576 | United States v. Bishton, 463 F.2d 887 | 63+1(1) | The remaining claims of error are without merit. Appellant first argues that the second count of the federal indictment, charging him with receiving a bribe, fails to state a crime under 18 U.S.C. " 201(g) because, in his submission, that section only prohibits receiving money for actions which are currently or may in the future be pending before a public official, and does not apply to acts already completed. Although his precise line of reasoning is difficult to follow, we have no doubt that Congress intended to reach demands for and acceptances of money for acts already performed, and that the statutory prohibition is not so vague that men must necessarily guess at its meaning. The statute prohibits the receipt of money "for or because of any official act performed or to be performed," 18 U.S.C. " 201(f) (emphasis added). So defined, the statute clearly reaches the alleged transaction here. See United States v. Irwin, 354 F.2d 192, 196 (2d Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966). | Under statute prohibiting receipt of money "for or because of any official act performed or to be performed," prosecution is not limited to receiving money for actions which are currently or may in the future be pending before a public official, asopposed to acts already completed; and, as so construed, statute is not unconstitutionally vague. 18 U.S.C.A. S 201(f, g). | Can an official accept a bribe for acts already performed? | 011418.docx | LEGALEASE-00143973-LEGALEASE-00143974 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 16577 | People v. Gaio, 81 Cal. App. 4th 919 | 63+1(1) | At bottom, this contention too derives from the premise that the offense of bribery requires, and includes as an element, that a specific, identified act, be the intended subject of influence by the bribe. Once more, that is incorrect. Bribery involves a "payment[ ] designed to alter the outcome of any matter that could conceivably come before the official...." (Diedrich, supra, 31 Cal.3d at p. 276, 182 Cal.Rptr. 354, 643 P.2d 971.) A large number of such matters may provide alternative predicates for the offense. (See id. at pp. 276"277, 182 Cal.Rptr. 354, 643 P.2d 971.) It is the payment, or the agreement to provide payment, that constitutes the criminal act, and that, not the possible object of influence, is what must be found unanimously. | Bribery involves a payment designed to alter the outcome of any matter that could conceivably come before the official, and a large number of such matters may provide alternative predicates for the offense. West's Ann.Cal.Penal Code SS 67.5, 68. | What type of payments does bribery involve or prohibit? | 012196.docx | LEGALEASE-00143635-LEGALEASE-00143636 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 16578 | People v. Zayas, 89 A.D.3d 610 | 67+10 | Defendant was guilty of burglary because, with intent to steal, he knowingly and unlawfully entered the nonpublicarea of a public building (see Penal Law "" 140.00[5]; 140.20; People v. Quinones, 18 A.D.3d 330, 795 N.Y.S.2d 47 [2005], lv. denied 5 N.Y.3d 809, 803 N.Y.S.2d 38, 836 N.E.2d 1161 [2005]). The element of "intent to commit a crime therein" is assessed at the moment of unlawful entry into the particular area. Where a crime requires a particular intent, that intent need only exist at the moment of the prohibited conduct (People v. Muhammad, 17 N.Y.3d 532, """", 935 N.Y.S. 2d 526, 959 N.E.2d 463, 2011 N.Y. Slip Op. 07302, 8 [2011] ). Here, the entry into the building only became unlawful at the moment when defendant crossed from the public area to the nonpublicarea. Therefore, only his intent at the time he entered the nonpublicarea was relevant. | To obtain burglary in the third degree conviction against defendant, who had entered a coffee shop, jumped over a counter into a nonpublic area, tried unsuccessfully to open a cash register, and was promptly arrested, the People were not required to prove that defendant entered the shop itself with larcenous intent, since defendant's entry into the building only became unlawful at the moment when defendant crossed from the public area to the nonpublic area. McKinney's Penal Law S 140.00(5). | Does theft in a nonpublic area constitute a burglary? | 012872.docx | LEGALEASE-00144841-LEGALEASE-00144844 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 16579 | People v. Lymore, 25 Ill. 2d 305 | 67+2 | As to the contention of the defendant that there is no proof that what the defendant was charged with taking was in fact taken, he argues that he was not searched either at the scene of the alleged crime or at the police station to which he was taken, and that none of the goods allegedly stolen were on his person. Burglary is the entry of a building with felonious intent. When such an entry and requisite intent are shown, the crime of burglary is complete and further allegation or proof that specificitems were taken is not essential. (People v. Urbana, 18 Ill.2d 81, 163 N.E.2d 511; People v. Iannacco, 11 Ill.2d 55, 142 N.E.2d 8.) In any event, the police officers testified that the defendant, when first observed, had bottles of liquor in his hand. Whether he actually secreted any stolen property upon his person is immaterial | "Burglary" is entry of building with felonious intent, and when such entry and intent are shown, crime is complete and further allegation or proof that specific items were taken is not essential. | Does burglary require specific items to be taken? | 012876.docx | LEGALEASE-00144845-LEGALEASE-00144848 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 16580 | Glenn v. State, 659 S.W.2d 436 | 0734622 | Although the statute refers to the culpable mental state of the accused as being for a culpable mental state is nowhere else required by the provisions of V.T.C.A., Penal Code Sec. 6.02(b) (1)-(3); Harris v. State, 520 S.W.2d 302 (Tex.Cr.App.1975); Dowden v. State, 547 S.W.2d 666 (Tex.Cr.App.1977). | Division of essential element of culpable mental state from jury charge on a charge constituted fundamental error requiring reversal. V.T.C.A., Penal Code SS 6.02(b)-c), SS 02(b)(3). | Does burglary require a culpable mental state? | 012880.docx | LEGALEASE 0034857; LEGALEASE 0034860 | Condensed, SA 0.72 | | 0 | 1 | 1 | 1 | 1 |
| 16581 | Thompson v. Halls, 12 Tex. 139 | 3034+74 | Where the officer before whom a deposition is taken fails to certify that the same was signed by the witness, the deposition cannot be received in evidence, if the objection be properly taken. | Where an officer taking a deposition does not certify that it was signed by the witness, it is not admissible in evidence? | 012931.docx | LEGALEASE 0034171; LEGALEASE 0034172 | Condensed, SA-Sub 0.84 | | 0 | 1 | 1 | 1 | 1 |
| 16582 | Hipp v. Hackett, 4 Tex. 20 | 3034+74 | Applications for continuances have been held by the courts in some of the States to be addressed to the discretion of the court, and their action on such applications is not the subject of revision. | Can a third application for continuance is addressed to the sound discretion of the trial court. | 012932.docx | LEGALEASE 0034094; LEGALEASE 0034095 | Condensed, SA-Sub 0.91 | | 0 | 1 | 1 | 1 | 1 |
| 16583 | Hulk v. Benson, 6 Ark. 396 | 79+6 | The deposition on the part of the plaintiff in error was excluded because the official character of the judge before whom they were taken was authenticated by the "deputy clerk," without disclosing the name of his principal. | An authentication of the official character of a judge, before whom depositions were taken, by a deputy clerk, not disclosing the name of his principal, is insufficient | According to the requisitions of the statute, is it essential to authenticate the official character of the officer before whom depositions were taken without which it would be consequently rejected by the court? | Pretrial Procedure - Memo 8764 - C - NC.docx | ROSS 003291348-ROSS 003291349 | Condensed, SA 0.83 | | 0 | 1 | 1 | 1 | 1 |
| 16584 | Hoof'l Gardens v. Young, 976 N.E.2d 80 | 413+2884 | A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the trial court's power to act. Curry v. D.A.L.L. Anesthesics, Inc., 966 N.E.2d 91, 95 (Ind.Ct.App.2012). | Exclusively provision of the Workers' Compensation Act did not deprive trial court subject matter jurisdiction to consider declaratory judgment action concerning whether the company exposed customer to workers' compensation liability for injury. | Does a motion to dismiss for lack of subject matter jurisdiction present a threshold question concerning the trial court's power to act? | Pretrial Procedure - Memo 8774 - C - KG.docx | ROSS 003310837 | Condensed, SA-Sub 0.32 | | 0 | 1 | 1 | 1 | 1 |
| 16585 | All S. Win Storage No. 2 Ltd v. Woodstock Constr. Servs., 205 Ga. App. 193 | 3034+690 | We first address appellants' argument that the trial court erred in dismissing their countercomplaint for lack of prosecution. | Trial court erred in dismissing defendants' counterclaim with prejudice for failure to appear at scheduled pretrial conference, although trial court has discretion to dismiss complaint or counterclaim for failure to appear. | Does a court have the discretion to dismiss the complaint in the event of a plaintiff's failure to appear? | 034481.docx | LEGALEASE 0034393; LEGALEASE 0034394 | Condensed, SA 0.52 | | 0 | 1 | 1 | 1 | 1 |
| 16586 | Chin v. Glob. Med. Review, 160 Misc. 2d 368 | | Improper Venue. Improper venue is not a jurisdictional defect requiring dismissal of the action (State By Abrams v. Cohen, 123 Misc.2d 51, 473 N.Y.S.2d 658). | Improper venue is not a jurisdictional defect requiring dismissal of the action. | Is improper venue not a jurisdictional defect requiring dismissal of an action? | 034608.docx | LEGALEASE 0034091; LEGALEASE 0034092 | Condensed, SA 0.8 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16587 | M.L. v. Eskenazi Health / Midtown Mental Health CMHC, 80 N.E.3d 219 | 1346 | In their respective appellate briefs, Eskenazi advocates and M.L. concedes that the case is moot because the Order of Commitment expired on March 5, 2017. Therefore, this court cannot render effective relief to M.L. See In re Commitment of T.S., 981 N.E.2d 234 (Ind. Ct. App. 2013). trans. denied. "Where a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." Id. However, although moot cases are usually dismissed, Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of "great public interest." Id. Typically, cases falling in the "great public interest" exception "contain issues that are likely to recur." Id. | Where a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | Should moot case be dismissed? | Pretrial Procedure – Memo #1347 – C-SK.docx | ROSS-003102214 ROSS-003102215 | Condensed, SA | 0.86 | | 839 | 0 | 1 | 1 | |
| 16588 | Sadler v. Creekmur, 354 Ill. App. 3d 1029 | 40:94:512 | Further, Sadler failed to establish waiting to the Creekmur' building permit or their intent to build a second residence on their lot became moot early on in the proceedings. As moot is moot if the parties' interests and rights are no longer in controversy and the resolution of the issue will have no practical effect. Adkins Energy, LLC v. Delta'T' Corp., 347 Ill.App.3d 373, 376, 282 Ill.Dec. 685, 806 N.E.2d 1273 (2004). An action will be dismissed as moot once the plaintiff has secured what was originally sought. Dunscombe v. Roehm, 304 Ill.App.3d 778, 782, 237 Ill.Dec. 566, 710 N.E.2d 1281 (1999). | An action will be dismissed as moot once the plaintiff has secured what was originally sought. | Will an action be dismissed a moot once the plaintiff has secured what was originally sought? | 033409.docx | LEGALEASE-00144997 LEGALEASE-00144998 | Condensed, SA | 0.85 | | 0 | 1 | | |
| 16589 | State ex rel. Saebye bh M. Linn fl. Co. v. Guy, 160 Fla. 445 | 371r2445 | It has been supplied by the respondent, in connection with this ground of its motion, that if the statutes cannot be construed as imposing a tax on the mortgage, then such may be construed as imposing a tax on the privilege of recording the mortgage, and that with such a construction placed upon the statutes its demand for the tax refund must necessarily be denied. The answer to this proposition is that no obligation of a citizen to pay taxes being purely of statutory creation, taxes can be lawfully levied, assessed, and collected only in the manner and mode pointed out by statute. 51 Am.Jur., Taxation, Sec. 611, p. 617. An act, therefore, may not be construed to impose a tax unless its terms definitely so provide. The controlling statutes involved in the proceeding at bar are entirely devoid of any clear or express words of an intent to impose a tax for the privilege of recording the mortgage. See Jefferson Realty Co. v. Board of Comm., 156 Fla. 141, 23 So.2d 274; Florida Industrial Commission v. Growers Equipment Co., 152 Fla. 595, 12 So.2d 889, 152 So.2d 138. | Obligation to pay taxes is purely statutory, and taxes can be levied, assessed, and collected only in express method pointed out by statute, and statute may not be construed to impose a tax unless its terms definitely so provide. | Is payment of taxes a statutory liability on the owner of property? | 045688.docx | LEGALEASE-00144474 LEGALEASE-00144475 | Condensed, SA, Sub | 0.79 | | 0 | 1 | 1 | 1 |
| 16590 | Harsha v. City of Detroit, 261 Mich. 586 | 371r2005 | The power to impose taxes is vested exclusively in the legislative department of government and cannot be exercised except or pursuance of its authority. The state has no power, standing alone, Michael, cannot by legislation. 37 Cor. 714. Subject to constitutional restrictions, "it must be taken as generally that the power to tax is limited in extent. In purpose, and in methods only by the will of the state as expressed in the laws." 1 Cooley on Taxation (3d Ed.) 178, 2 Smith, Modern Law of Mun. Corp. 1472. | Generally, subject to constitutional restrictions, power of taxation is limited only by will of state as expressed in legislation. | Is the power of taxation limited by the will of state as expressed in legislation? | 047343.docx | LEGALEASE-00144389 LEGALEASE-00144390 | Condensed, SA | 0.75 | | 0 | 1 | 1 | |
| 16591 | In re Frick's Estate, 277 Pa. 242 | 371r2005 | Upon the question of "due process of law," we have not been favored with a single specification regarding either the act, or its practice under it. The property being distributed in this proceeding is all in this state. The appellants are our citizen and duly appeared and contested the claim of the commonwealth; all the facts upon which the tax is based have been passed upon by the orphans' court, all of whose judges are learned in the law, is now under review in this court; and, appealing from the record and the suggestion in the brief, will subsequently be scrutinized by the Supreme Court of the United States. Where, then, have these appellants been deprived of 'due process of law?' We agree that "a tax can only be imposed by the state when it has either jurisdiction over a person or a jurisdiction over his property." Here it has jurisdiction over both, decedent having been and appellants being residents of this state, the estate appearing in this state, all the property now in course of distribution being within the state, and a valid state statute lawfully imposing the tax. Under such circumstances, it is only where the state does not "provide a fair opportunity for submitting the issue to a judicial tribunal for determination upon its own independent judgment as to both law and fact," that the constitutional guaranty "such is provided in conflict with the due process clause." Ohio Valley Water Co. v. Ben Avon Borough, 25 U.S. 1:287; 280, 40 Sup. Ct. 527; 128 (Ed. I. Ed. 900). | A tax can only be imposed by the state when it has either jurisdiction over the person or over his property. | Can a tax be imposed by the state when it has either jurisdiction over the person or over his property? | Taxation – Memo # 774 – C-VA.docx | LEGALEASE-00036726-LEGALEASE-00036728 | Condensed, SA | 0.97 | | 0 | 1 | 1 | |

2923

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,364 | 14,573 | 21,876 | 9,079 |
| 16592 | Davis Plumbing Co v. Burns, 967 So. 2d 94 | 413=2 | Davis Plumbing essentially asks this court to construe the Act to establish a right to have of employees that is not expressly granted to them in the Act... (lengthy text) | An action brought under the Alabama workers' compensation laws is purely statutory. | Is an action brought under the Alabama workers' compensation laws a purely statutory? | 040074.docx | LEGALEASE 0014147 / LEGALEASE 0014148 | Condensed, SA | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 16593 | Rankin v. Allstate Ins. Co., 336 F.3d 8 | 25T=13(2)(1) | Yet an arbitration provision to be invoked in a timely manner or the option is lost. See, e.g., Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 222 (2d Cir.1995)... (lengthy text) | The components of waiver of an arbitration clause by inaction are undue delay and a medium of prejudice to the other side. | What are the components of waiver of an arbitration clause? | 007743.docx | LEGALEASE 0014507? / LEGALEASE 0014507? | Condensed, SA, Sub 0.82 | 0.82 | | 1 | 1 | 1 | 1 |
| 16594 | Sheridan v. Superior Court, 11(=576(1)), 91 Ariz. 211 | 1145=1 | Without regard to the powers pertaining to his judicial office, a judge when exercising the functions of a magistrate has only the jurisdiction and power conferred by law on a magistrate... (lengthy text) | Proceedings against accused brought in the superior court should have been dismissed upon accused's application, even though he was arrested under warrant issued by the superior court judge, acting as magistrate, where no information was filed against accused within 30 days after he was held to answer for offense, and no good cause for not dismissing the prosecution was shown by affidavit. 17 A.R.S. Rules of Criminal Procedure, rule 236. | Does a justice of the peace, when exercising the powers of a magistrate, have equal authority with the justices of the superior court when acting in a similar capacity? | 011146.docx | LEGALEASE 0014(6)100 / LEGALEASE 0014(6)101 | Condensed, SA, Sub 0.6 | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 16595 | United States v. Sorrow, 732 F.2d 176 | 1645=24(5) | Sorrow's argument that compulsion was a necessary element for his Hobbs Act conviction, 18 U.S.C.A. * 1951, fails under decided cases. A private person can commit extortion under the Hobbs Act absent threatened force, violence, or fear." 18 U.S.C.A. * 1951. If the property is obtained under color of official right, however, no showing of the use of violence is necessary... (lengthy text) | Compulsion is not element in Hobbs Act prosecution of a public official. 18 U.S.C.A. § 1951. | Is compulsion an element in Hobbs Act prosecution of a public official? | Bribery - Memo #855 - C - LB.docx | ROSS-003276067-ROSS-003276068 | Condensed, SA | 0.91 | 0 | 0 | 1 | 1 | 1 |
| 16596 | United States v. Mosberg, 866 F.Supp. 275 | 63=4(1) | 655 F.3d 212 n.182 (3d Cir.2011) (emphasis added) (quoting United States v. Tomblin, 46 F.3d 1369, 1379) (quoting Sun-Diamond, 526 U.S. 398, 404)... (lengthy text) | Indictment of defendant for honest services fraud sufficiently alleged quid pro quo bribery, where the indictment alleged the elements of honest services fraud, and apprised defendant of the sort of bribery scheme that had to be defended against, favorably recounting Planning Board matters and Township litigation. Fed Rules Cr.Proc.Rule 7(c)(1), 18 U.S.C.A., 18 U.S.C.A. § 1341. | The purpose of jury instructions, can the word in return for sufficiently communicate the quid pro quo element of bribery? | 012305.docx | LEGALEASE 0014503 / LEGALEASE 0014504 | Condensed, SA, Sub 0.5 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16597 | People v. Ramirez, 112 Cal. App. 507 | 67+3 | As relevant here, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with the intent to commit a crime therein, and when ... [t]he building is a dwelling" (Penal Law "" 140.25[2]). When burglary is predicated on an unlawful entry, a defendant must have had the intent to commit a crimeotherthan criminal trespass at the time of entry (see People v. Gaines, 74 N.Y.2d 358, 363, 547 N.Y.S.2d 620, 546 N.E.2d 913 [1989]; see also People v. Lewis, 5 N.Y.3d 546, 551"553, 807 N.Y.S.2d 1, 840 N.E.2d 1014 [2005] ). While intent "may be inferred from the circumstances of the entry" (People v. Gaines, supra at 362 n. 1, 547 N.Y.S.2d 620, 546 N.E.2d 913), defendant insisted during the plea colloquy, albeit in a confused and rambling manner, that he had permission to enter the residence through an open door and retrieve the items that he took. These statements explaining defendant's presence in the house effectively negated his admission to the elements of knowingly entering unlawfully and intent to commit a crime therein at the time of entry (see Penal Law "" 140.25[2] ), triggering a duty on the part of County Court to "inquire further to ensure that defendant's guilty plea [was] knowing and voluntary" (People v. Lopez, 71 N.Y.2d 662, 666, 529 N.Y.S.2d 465, 525 N.E.2d 5 [1988], supra ). | When burglary is predicated on an unlawful entry, a defendant must have had the intent to commit a crime other than criminal trespass at the time of entry; intent may be inferred from the circumstances of the entry. McKinney's Penal Law $ 140.25(2). | Does burglary require proof of a crime other than trespass? | 012864.docx | LEGALEASE-00145523-LEGALEASE-00145526 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 16598 | Mineral Policy Ctr. v. Norton, 292 F. Supp. 2d 30 | 260+92.5(1) | Plaintiffs challenge the Solicitor's interpretation and argue that, based upon FLPMA's statutory language, it is clear that Congress intended to prevent "unnecessary degradation" as well as "undue degradation." Thus, according to plaintiffs, under FLPMA "BLM must prevent undue degradation, even though the cause of the degradation may be necessary for mining." Pls.' Mot. for Summ. J. at 18. Upon careful consideration, the court agrees with plaintiffs' view. The court finds that the Solicitor misconstrued the clear mandate of FLPMA. FLPMA, by its plain terms, vests the Secretary of the Interior with the authority-and indeed the obligation-to disapprove of an otherwise permissible mining operation because the operation, though necessary for mining, would unduly harm or degrade the public land. | Provision of FLPMA requiring Bureau of Land Management (BLM) to prevent "undue or unnecessary degradation" of public lands required prevention of otherwise permissible mining operations that, although necessary for mining, would unduly harm or degrade public land. Federal Land Policy and Management Act of 1976, $ 302(b), 43 U.S.C.A. $ 1732(b). | Should the Bureau of Land Management (BLM) prevent undue degradation? | Mines and Minerals - Memo #232 - C - EBn++.docx | ROSS-003291099-ROSS-003291100 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 16599 | Shea v. Nilima, 133 F. 209 | 260+12 | In McKinley M. Co. v. Alaska M. Co., supra, the court said:"The meaning of Manuel v. Wulff is that the location by an alien, and all the rights following from such location, are voidable, not void, and are free from attack by any one except the government." | The fact that a mining claim is located by an alien does not render the location illegal or void, but, at most, it is only voidable at the instance of the government; and a subsequent declaration of intention to become a citizen by a locator, or one having an interest in the claim, prior to the inception of any adverse rights, relates back to the date of the location or acquisition of the alien's interest, and validates the transaction. | Are the location of a mining claim by an alien and all the rights following from such location voidable or void? | 021505.docx | LEGALEASE-00145056-LEGALEASE-00145057 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 16600 | Beckman v. Farmer, 579 A.2d 618 | 289+950 | Absent a contrary agreement, the general rule is that "[a]ll of the partners of the dissolved firm ... are ... entitled to share in fees for pre-dissolution work in process paid after dissolution to the dissolved partnership or to withdrawing partners." A. Bromberg & L. Ribstein, supra " 7.08(e), at 7:81"82 (citations omitted). Such fees, however, may lose their status as assets subject to distribution by an agreement of the partners to divide them upon dissolution when one or more partners wants to continue the business. See, e.g., Hudson v. Kemper, 153 A.2d 316, 318 (D.C.1959). Winding up can be contemporaneous with dissolution when the partners expressly or impliedly agree to transfer their shares of the business to the continuing partner. Gibson v. Deuth, 270 N.W.2d 632, 635 (Iowa 1978), citing Wolf v. Murrane, 199 N.W.2d 90 (Iowa 1972). The transfer is for a sum which may include the out-going partner's percentage of profits from unfinished business earned before the date of dissolution, id., at 635, and can take the form of an agreed-upon accounting concurrent with dissolution. The sole case from the District of Columbia cited by appellants is in harmony with this approach. In Hudson v. Kemper, supra, this court recognized: Generally, it is the rule that a partner, who, after dissolution of the firm, makes profits from continued operations shall be accountable to his coadventurer.... Here, we have, however, an agreement in which a settlement or balance was struck disposing of the partnership assets, such as the trade name, money in the bank, office furniture, catalogs, etc.... Apparently the parties intended, with the dissolution agreement, a complete severance of their relationship, for appellant had knowledge of the [disputed] contingent building contracts and made no provision for them. 153 A.2d at 318. Accord, Griffeth, supra, 61 Cal.App.2d at 606, 143 P.2d at 525 ("[i]n the instant action there was ... a dissolution proved and an accounting agreed | Winding up can be contemporaneous with dissolution when partners expressly or impliedly agree to transfer their shares of business to continuing partner; transfer is for sum which may include outgoing partner's percentage of profits from unfinished business earned before date of dissolution, and take form of agreed-upon accounting concurrent with dissolution. | Can winding up and settling of partnership affairs be contemporaneous with dissolution? | 022472.docx | LEGALEASE-00146376-LEGALEASE-00146377 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 16601 | Bedford v. White, 106 Colo. 439 | 296+2 | That pensions are not granted primarily for the benefit of the recipients thereof, but for the benefit of the state, in other words for the public good, may be admitted. If a pension has no reasonable relation to the public good, it is of course a mere private grant and void. But if it serves a present public purpose it is not a mere private grant even though as an incident to the accomplishment of the public purpose the recipients thereof may be personally benefited. | A pension having no reasonable relation to public good is void as a mere "private grant", but a pension serving a present public purpose is not void as a mere private grant, even though, as an incident to the accomplishment of the public purpose, the recipients thereof may be personally benefited. | Does a grant of pension serve a public good or public purpose? | 022808.docx | LEGALEASE-00145368-LEGALEASE-00145369 | Condensed, Order, SA, Sub | 0.36 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16602 | Hefferman v. Bass, 467 F.3d 596 | 170A+673 | Rule 8(a) requires only "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." As the Supreme Court pointed out in Swierkiewicz, 534 U.S. at 511"14, 122 S.Ct. 992, and as we reiterated in McDonald, "This is a notice pleading standard, not a fact pleading standard." 425 F.3d at 427. The point of a notice pleading standard is that the plaintiff is not required to plead either facts or legal theories. See Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2006); Bartholet v. Reishauer A.G. (Z"rich), 953 F.2d 1073, 1078 (7th Cir.1992) (complaints do not need to match facts to "elements" of a legal theory). See also Cler v. Ill. Educ. Ass'n, 423 F.3d 726, 729 (7th Cir.2005) ("In this regard, the Supreme Court has cautioned that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." ") (quoting Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). | The point of the notice pleading standard under the federal rules of procedure is that the plaintiff is not required to plead either facts or legal theories. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A. | Does notice pleading require pleading of facts? | 023537.docx | LEGALEASE-00145450-LEGALEASE-00145451 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 16603 | M Series Rebuild v. Town of Mount Pleasant, 222 N.C. App. 59 | 307A+554 | Although the language of this statement is similar to the standard for summary judgment, see Belcher v. Fleetwood Enters., Inc., 162 N.C.App. 80, 84"85, 590 S.E.2d 15, 18 (2004) (stating the review for a ruling on a motion for summary judgment), an examination of the trial court's order shows that its ultimate ruling was based on defendant's "fourth defense" in its answer. Defendant's answer raised as its "fourth defense" that "[t]he alleged contract upon which this action is based is illegal in that it does not comply with the pre[-]audit certificate requirements contained in N.C. Gen.Stat. " 159"28, as required by law. The alleged contract is thus invalid and unenforceable and this action is barred." The trial court dismissed plaintiff's claims because there was no allegation of a valid contract between the parties, based on plaintiff's failure to comply with the requirements of N.C. Gen.Stat. " 159"28; without an allegation of a valid contract, plaintiff did not demonstrate that defendant had waived its sovereign immunity; and therefore, the trial court lacked jurisdiction over defendant. See Arrington v. Martinez, """ N.C.App. """", """", 716 S.E.2d 410, 417 (2011) (stating that "[w]aiver of immunity must be established at the outset of a lawsuit."). Also, the parties' briefs address the issue of sovereign immunity. A motion to dismiss based on sovereign immunity is a jurisdictional issue; whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina. N.C. Gen.Stat. " 1A"1, Rule 12(b)(1) permits a party to move for dismissal based on "[l]ack of jurisdiction over the subject matter [,]" and Rule 12(b)(2) permits dismissal based on "[l]ack of jurisdiction over the person[.]" | A motion to dismiss based on sovereign immunity is a jurisdictional issue. Rules Civ.Proc., Rule 12(b)(1, 2), West's N.C.G.S.A. S 1A-1. | Is a motion to dismiss based on sovereign immunity a jurisdictional issue? | Pretrial Procedure - Memo # 5859 - C - CK.docx | ROSS-003302444-ROSS-003302445 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 16604 | Haddix v. Am. Zurich Ins. Co., 253 S.W.3d 339 | 307A+554 | Haddix next argues that the trial court erred because it signed an order of dismissal rather than provide him with an opportunity to amend his petition. Texas Courts have signaled a preference for allowing a plaintiff an opportunity to amend before dismissing a suit in response to a plea to the jurisdiction. The general rule is that, if the plaintiff's pleadings do not demonstrate incurable defects, the plaintiff should be given an opportunity to amend. See Sepulveda v. County of El Paso, 170 S.W.3d 605, 616"17 (Tex.App.-El Paso 2005, pet. denied). If, however, the pleadings affirmatively negate the existence of jurisdiction, dismissal is appropriate. See Harris County v. Sykes, 136 S.W.3d 635, 639 (Tex.2004). | If the pleadings affirmatively negate the existence of jurisdiction, dismissal is appropriate. | "If the pleadings affirmatively negate the existence of jurisdiction, is dismissal appropriate?" | Pretrial Procedure - Memo # 5876 - C - VP.docx | ROSS-003288109-ROSS-003288110 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 16605 | Martinez v. Bank of New York Mellon, 198 So. 3d 911 | 266+1793 | This court reviews the trial court's sanction order "under a "somewhat narrowed" abuse of discretion standard." Faddis v. City of Homestead, 121 So.3d 1134, 1135 (Fla. 3d DCA 2013). It is well-settled in Florida "that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding is not permitted to continue to employ the very institution she has subverted to achieve her ends." Austin v. Liquid Distributors, Inc., 928 So.2d 521, 521 (Fla. 3d DCA 2006) (quoting Hanono v. Murphy, 723 So.2d 892, 895 (Fla. 3d DCA 1998)). Accordingly, a trial court has the authority to impose sanctions on a party that perpetrates a fraud on the court, which includes striking that party's pleadings and entering a default judgment against that party. See Faddis, 121 So.3d at 1135. However, and importantly for our purposes, the power of the court to impose sanctions under these circumstances "should be exercised with great restraint" and should be used " "only upon the most blatant showing of fraud, pretense, collusion, or other similar wrongdoing." " | Trial court's finding that mortgagor committed fraud on the court during testimony at foreclosure trial was not support by sufficient evidence, and therefore, striking of mortgagor's pleadings and entering default judgment against her during middle of trial was not warranted; trial court did not allow parties to conclude presentation of their respective cases, and did not make factual findings as to mortgagor's alleged lies and perjury in which she claimed that she never signed mortgage nor wrote letter stating that she had moved out of premises. | "While a trial court has the inherent power to impose sanctions on a party who destroys evidence or perpetrates a fraud on the court, should that power be exercised with great restraint?" | 034060.docx | LEGALEASE-00145166-LEGALEASE-00145167 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 16606 | Tomlinson-McKenzie v. Prince, 718 So. 2d 394 | 307A+746 | Excluding the testimony of a witness is a harsh remedy which should be invoked sparingly." Aguila-Rojas v. City Management Group Corp., 606 So.2d 765, 766 (Fla. 3d DCA 1992)(holding that the trial judge erred in excluding the testimony of a witness not disclosed on the party's original witness and exhibit list). The surveillance tape of Ms. Prince sitting in a car for extended periods of time and sitting on bleachers at her son's soccer matches goes to the very heart of this case-the extent of her injuries. The surveillance tape provides a direct challenge to Ms. Prince's assertions that the injuries sustained in the accident diminished her capacity to earn a living because she could not sit for extended periods of time as required by her job. Under the circumstances, the trial judge's omission of the surveillance tape was not harmless error. | Excluding the testimony of a witness is a harsh remedy which should be invoked sparingly. | Is excluding the testimony of a witness a harsh remedy which should be sparingly invoked? | 034090.docx | LEGALEASE-00145286-LEGALEASE-00145287 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16607 | Uthe v. Baker, 629 N.W.2d 121 | 307A+560 | "Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of process must be satisfied." Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). Service of process is "the procedure by which a court having venue and jurisdiction of the subject matter of the suits asserts jurisdiction over the person of the party served." Id. (quoting Mississippi Publ'g Corp. v. Murphree, 326 U.S. 438, 444-45, 66 S.Ct. 242, 245-46, 90 L.Ed. 185 (1946)). Where service is insufficient, a district court must dismiss an action where service of process is insufficient. Lewis v. Contracting Northwest, Inc., 413 N.W.2d 154, 156 (Minn.App.1987). The existence of personal jurisdiction is a question of law that we review de novo. Patterson v. Wu Family Corp., 608 N.W.2d 863, 866 (Minn.2000). | District court must dismiss an action where service of process is insufficient. | "Should a district court dismiss the action, absent proper service of process or a waiver thereof?" | 034110.docx | LEGALEASE-00145340-LEGALEASE-00145341 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16608 | Flores v. Cooper Tire & Rubber Co., 218 Ariz. 52 | 307A+552 | The decision to dismiss a case based on mootness is largely discretionary. Bilagody v. Thorneycroft, 125 Ariz. 88, 90, 607 P.2d 965, 967 (App.1979). Arizona courts have shown a willingness to hear moot due process challenges when the issues raised are of public importance. See Salas v. Ariz. Dep't of Econ. Sec., 182 Ariz. 141, 143 n. 2, 893 P.2d 1304, 1306 n. 2 (App.1995) (examining a possibly moot issue because it was "of statewide importance and ... might otherwise elude review"); State v. Helffrich, 174 Ariz. 1, 5, 846 P.2d 151, 155 (App. 1992) ("Regardless of whether the issue is moot, we will consider the merits because the issue is of significant public importance and is likely to recur."). | The decision to dismiss a case based on mootness is largely discretionary. | "Is the decision to dismiss a case based on mootness, largely discretionary?" | Pretrial Procedure - Memo # 6672 - C - ES.docx | ROSS-003304891-ROSS-003304892 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 16609 | Wilder v. Wilder, 146 N.C. App. 574 | 307A+581 | Rule 41(b) provides that a claim may be dismissed for one of three reasons: failure to comply with the rules, failure to comply with a court order, or failure to prosecute. Most of the cases cited in the plaintiff's brief specifically concern dismissals under Rule 41(b) for failure to "comply with these rules or any order of court," and not dismissals for failure to prosecute. See Foy v. Hunter, 106 N.C.App. 614, 418 S.E.2d 299 (1992)(consideration of lesser sanctions than dismissal with prejudice under Rule 41(b) for violation of Rule 8(a)(2)); Daniels v. Montgomery Mut. Ins. Co., 81 N.C.App. 600, 344 S.E.2d 847 (1986) (consideration of lesser sanctions than dismissal for failure to comply with court order). These cases require that a trial court consider lesser sanctions before dismissing a claim pursuant to Rule 41(b). Although the general rule stated in Goss supports this Court's holding, no North Carolina cases specifically state that lesser sanctions must be considered by a trial court before dismissing a claim pursuant to Rule 41(b) for failure to prosecute. Because we believe that the cases on Rule 41(b) point most logically in this direction, we hold that the trial court must also consider lesser sanctions when dismissing a case pursuant to Rule 41(b) for failure to prosecute. | Three factors that the trial judge must address before dismissing claim for failure to prosecute are: (1) whether the plaintiff acted in a manner which deliberately or unreasonably delayed the matter; (2) the amount of prejudice, if any, to the defendant; and (3) the reason, if one exists, that sanctions short of dismissal would not suffice. Rules Civ.Proc., Rule 41(b), G.S. S 1A-1. | "Under the rule of procedure governing dismissals of actions, can a claim be dismissed for one of three reasons?" | Pretrial Procedure - Memo # 6682 - C - SS.docx | ROSS-003288430-ROSS-003288431 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 16610 | Davis v. DND/Fidoreo, 317 N.J. Super. 92 | 307A+560 | In sum, we are satisfied that under the circumstances of this case the notice given was reasonably calculated to advise defendants of the pendency of the action. Furthermore, defendants have never sought a dismissal of the action, the appropriate relief when there is a claim of improper service. See Baron Holding Corp., supra, 224 N.J.Super. at 488, 540 A.2d 1307. Therefore, we turn to defendants' primary claim that the judge erred in denying their motion to vacate the default judgment. | Dismissal of the action is the appropriate relief when there is a claim of improper service. | Is dismissal of the action the appropriate relief when there is a claim of improper service? | 034670.docx | LEGALEASE-00145407-LEGALEASE-00145408 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 16611 | Christianson By & Through Christianson v. Educ. Serv. Unit No. 16, 243 Neb. 553 | 307A+563 | The plaintiffs elected to stand on their pleadings. Courts have the inherent power to dismiss an action for disobedience of a court order. Bert Cattle Co. v. Warren, 238 Neb. 638, 471 N.W.2d 764 (1991). The plaintiffs set forth their allegations of negligent hiring and retention of employees by E.S.U. and the violation of the plaintiff civil rights under 1983 in uncertain and indefinite terms. The plaintiff petitions do not comply with Nebraska rules of pleading. | Courts have inherent power to dismiss action for disobedience of court order. | Do courts have the inherent power to dismiss action for disobedience of a court order? | 034824.docx | LEGALEASE-00145993-LEGALEASE-00145994 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 16612 | Meadow Fresh Farms v. Utah State Univ. Dep't of Agric. & Applied Sci., 813 P.2d 1216 | 307A+596 | In Westinghouse, the Utah Supreme Court reviewed a Rule 41(b) dismissal for failure to prosecute. The court noted that a trial court has discretion to dismiss a case in the event that a party fails to prosecute "without justifiable excuse. at 879. In Westinghouse, the court cautioned that while expeditious handling of calendars is commendable, it is "even more important to keep in mind that the very reason for the existence of courts is to afford disputants an opportunity to be heard and to do justice between them." | Corporation failed to establish excusable neglect for its failure to prosecute sufficient to demonstrate that it was abuse of discretion for trial court to deny corporation's motion to set aside judgment dismissing action for failure to prosecute; while corporation claimed that lack of communication with counsel resulted in confusion as to counsel's continued representation which resulted in counsel's nonappearance at order to show cause hearing, action based on same facts had previously been dismissed for failure to prosecute, and corporation offered no excuse for counsel's neglect in failing to attend hearing. Rules Civ.Proc., Rule 60(b). | Can a trial court dismiss an action pursuant to rule permitting dismissal for failure to prosecute? | 035167.docx | LEGALEASE-00145808-LEGALEASE-00145809 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 16613 | Bert Cattle Co. v. Warren, 238 Neb. 638 | 307A+563 | Applicable to this case is the following language from Rosnick, supra at 761, 316 N.W.2d at 767 (quoting Scudder v. Haug, 197 Neb. 638, 250 N.W.2d 611 (1977)):" "[I]t has almost universally been held or recognized that courts have the inherent power to dismiss an action for disobedience of a court order.... Without this right, a court could not control its dockets; business before it would become congested; its functions would be impaired; and speedy justice to litigants would largely be denied." "In this case, the trial court had ample reason to dismiss Bert's petition for failure to comply with the court's order. The court granted Bert 2 weeks to amend its second amended petition. Instead, Bert waited well over 4 months to file its motion to file what would have been its fourth petition. The trial court did not abuse its discretion in dismissing Bert's action for disobedience of its order. See Vodehnal v. Grand Island Daily Independent, 191 Neb. 836, 218 N.W.2d 220 (1974) (it is within the discretion of the trial court to dismiss a petition for disobedience). | Courts have the inherent power to dismiss an action for disobedience of a court order. | Do courts have inherent power to dismiss action for disobedience of a court order? | Pretrial Procedure - Memo # 7214 - C - SU.docx | LEGALEASE-00035875-LEGALEASE-00035876 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 16614 | Briscoe v. Kusmit-Forest Prod., 769 So. 2d 881 | 13+70 | As noted, prior to the 1997 amendment of art. 561, filing a notice of deposition in the record was considered a step in the prosecution. West, supra; Highlands, supra. Article 561 now treats any formal discovery as a step in the prosecution, whether or not filed in the record, provided that it has been served on all parties. A notice of deposition served on the adverse party by mail is formal discovery. The District Court was plainly wrong in finding that Conductor's failure to file the 1996 notice of the deposition into the record amounted to abandonment. In point of fact, Zachry's reply of August 22 shows that the notice was sufficiently served on Zachry to satisfy article 1313. Moreover, failure to file the certification of the manner service was not deemed fatal to the validity of the notice. In Chapentier, supra. The letter with the notice, received by Zachry, clearly expressed Conductor's intent to hasten the matter to judgment. | Notice of deposition, served on adverse party, was a step in the prosecution, for purposes of abandonment, even though notice was not filed in the record. LSA-C.C.P. art. 561. | "Is any formal discovery a ""step"" in the prosecution that can preclude dismissal for abandonment?" | 035192.docx | LEGALEASE 00165752-LEGALEASE 00165753 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | | 1 | 1 |
| 16615 | Cutler v. Paw, Suburban Cmty. Hosp., 405 Ill. App. 3d 1052 | 307A+46 | The defendants argue that dismissal of the plaintiff's complaint was a proper sanction for the plaintiff's continued refusal to produce Dr. Faso for deposition despite repeated court orders. It is true that a trial court has the inherent authority to dismiss a cause of action with prejudice for failure to comply with court orders. Sander v. Dow Chemical Co., 166 Ill.2d 48, 62, 209 Ill.Dec. 613, 651 N.E.2d 1071 (1995). However, dismissal of a cause of a complaint is a drastic sanction and "is justified only when the party so dismissed has shown a deliberate and contumacious disregard for the court's authority." Sander, 166 Ill.2d at 6768, 209 Ill.Dec. 613, 651 N.E.2d 1071. The plaintiff's conduct in the present case did not warrant that sanction. | Trial court in medical malpractice action should have granted plaintiff's request to hold in contempt for failing to produce doctor, who authored physician report, for a deposition rather than dismissing the plaintiff's complaint with prejudice, when the plaintiff filed its complaint, there was confusion over whether statute required the disclosure of the appropriate medical reviewing health professional's identity, and a contempt proceeding was the appropriate method of testing the correctness of discovery order. 735 ILCS 5/2-622 (2004 Bar Ed.) | Does a trial court have the inherent authority to dismiss a cause of action with prejudice for failure to comply with court orders? | Pretrial Procedure - Memo # 7283 - C - RV.docx | ROSS-000198464-ROSS-000198643 | Condensed, SA, Sub 0.29 | 0.29 | 0 | | 1 | 1 | |
| 16616 | Brown v. Diaz, 184 Ga. App. 909 | 307A+552 | The dismissal of a frivolous action is appropriate to prevent an abuse of process. Brown v. Frac Solutions, 441 & Apps 381 F.3d 1325, 1371 n. 9 (11th Cir.) without opinion, 589 F.2d 1133 (5th Cir. 1979). "[T]he standard for determining the legal sufficiency of a complaint is the same under either Fed.R.Civ.P. 12 or 28 USC 1915(e)[. ]Cts.7 Spears v. McCotter, 766 F.3d 179, 182 | Dismissal of frivolous action is appropriate to prevent abuse of process. | Is dismissal of frivolous action appropriate to prevent abuse of process? | Pretrial Procedure - Memo # 7285 - C - SW.docx | LEGALEASE 00206000-LEGALEASE 00206001 | Condensed, SA | 0.81 | 0 | | 1 | | |
| 16617 | Duncan Pub. v. City of Chicago, 304 Ill. App. 3d 778 | 13+6 | A claim is moot when no actual controversy exists or events occur which make it impossible for a court to grant effectual relief. Dixon v. Chicago & North Western Transportation Co., 151 Ill.2d 108, 116, 176 Ill.Dec. 6, 601 N.E.2d 704 (1992). La Salle National Bank v. Chicago, 3 Ill.2d 175, 378773, 123 N.E.2d 366 (1954). Actions will be dismissed as moot once plaintiffs have secured what was originally sought. Katherine M. v. Ryder, 254 Ill. App. 3d 479, 486, 391 Ill.Dec. 881, 627 N.E.2d 642 (1996). | A claim is "moot" when no actual controversy exists or events occur which make it impossible for a court to grant effectual relief. | Will actions be dismissed as moot once plaintiffs have secured what was originally sought? | Pretrial Procedure - Memo # 7309 - C - NC.docx | LEGALEASE 00206024-LEGALEASE 00206025 | Condensed, SA | 0.73 | 0 | | 1 | | |
| 16618 | Sattler v. Creextrear, 354 Ill. App. 3d 1029 | 307A+552 | Further, Sattler's claims relating to the Cmehmar's building permit or their interim in the building or their interest in the ... An issue is moot if the parties' interests and rights are no longer in controversy and the resolution of the issue will have no practical effect. Adkins Energy, LLC v. Emhc7 Corp., 347 Ill.App.3d 373, 376, 282 Ill.Dec. 685, 806 N.E.2d 1222 (2004). An action will be dismissed as moot once a plaintiff has secured what was originally sought. Duncan Publishing, Inc. v. City of Chicago, 304 Ill.App.3d 778, 782, 237 Ill.Dec. 568, 709 N.E.2d 1281 (1999). While the mere voluntary cessation of allegedly unlawful conduct cannot moot a case unless it is clear that the wrongful behavior could not reasonably be expected to recur (City of Chicago v. Airline Canteen Serv., Inc., 64 Ill.App.3d 417, 425, 21 Ill.Dec. 565, 383 N.E.2d 16 (2005)) (supplemental opinion), a court should not review a question just to establish precedent or provide guidance for future actions (People ex rel. Ulrich v. Stukel, 294 Ill.App.3d 193, 228 Ill.Dec. 447, 689 N.E.2d 319 (1997)). | An action will be dismissed as moot once the plaintiff has secured what was originally sought. | Will actions be dismissed as moot once plaintiffs have secured what was originally sought? | 035344.docx | LEGALEASE 00145814-LEGALEASE 00145815 | Condensed, SA | 0.92 | 0 | | 1 | | |
| 16619 | Johnson v. Allstate Ins. Co., 410 So. 2d 978 | 92+20 | A party may not ignore a valid order of court except at its peril. There are avenues of redress to be available to those to whom orders which may be erroneous, but so long as such orders are entered by a court which has jurisdiction of both the subject matter and the parties, they cannot be completely ignored without running the risk that an appropriate sanction may be imposed. The court had the authority to dismiss the action under the circumstances presented here. We find no error with regard to the appellant's contention that the trial court granted the appellants' motion to dismiss, the only proper judgment is one dismissing the cause. Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (1946). This point is overruled. Appellant's fourth and fifth points, although the instant case complain about the trial court's "finding" that the challenged rules were invalidly enacted. Appellants argue in these brief that in this court, however, that no written ruling to this effect exists, the trial court simply dismissed the cause. These points are overruled. | A party may not ignore a valid order of court at its peril. | Does a party ignore a valid order of court at its peril? | 035305.docx | LEGALEASE 00145677-LEGALEASE 00145678 | Condensed, SA | 0.87 | 0 | | 1 | | |
| 16620 | Methodist Hosps. of Dallas v. Texas Workers' Comp. Comm'n, 874 S.W.2d 144 | 307A+552 | Our conclusion after reviewing the Commission's order was that Rule 42.10 was invalidly enacted because it was not adopted in substantial compliance with APTRA § 5(c)(1)(D). Methodist Hosps. 798 S.W.2d at 605. Our conclusion on a question of law constitutes the law of the case binding the trial court and the Commission and rendering further orders unnecessary, when this trial court's order of dismissal dismissed the cause as moot, however, it lost the power to grant appellants' motions, and decide on the merits of the issue before it. When a cause becomes moot, the only proper judgment is one dismissing the cause. Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (1946). These points are overruled. | When cause becomes moot, only proper judgment is one which dismisses the cause. | When a cause becomes moot, is the only proper judgment one which dismisses the cause? | 035365.docx | LEGALEASE 00140096-LEGALEASE 00140099 | Condensed, SA | 0.93 | 0 | | 1 | | |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 16621 | Norwin v. Ryan, Jeffrey & Roseveld, 1118 App.3d 687 | 307A+552 | Rowan contends that the circuit court erred in dismissing that part of its complaint which alleges that the HSCA uses the inherent power to protect its members from having to pay money awards to which claimants his himself are rightfully entitled. The record here too support for such an accusation. A court has inherent power to protect itself from frivolous and vexatious litigation. (Patterson v. Northern Trust Co. (1998), 286 Ill. 564, 567, 122 N.E. 51.) The circuit court here properly dismissed this portion of Rowan's complaint as well. | A court has inherent power to protect itself from frivolous and vexatious litigation. | Does a court have inherent power to protect itself from frivolous and vexatious litigation? | Pretrial Procedure - Memo #1544 - C - 548.docx | ROSS/D02/R0017-R0055-00192818 | Condensed, SA | 0.85 | 0 | 1 | | 1 | 1 |
| 16622 | Howard v. Risch, 959 So. 2d 308 | 307A+226 | As stated above, the trial court did not conduct an evidentiary hearing on this portion of the motion to dismiss, but it chose to "lay labor and convincing evidence" that Mr. Howard evidenced a deliberate and purposeful attempt to deceive the court by failing to disclose the three above-described convictions. We would observe, however, that the only "evidence" before the trial court appears to have been the certified copy of the 1991 judgment and sentence and Mr. Howard's affidavit explaining why he thought he was being honest when he answered the standard interrogatory as to his prior felony. Nor did Mr. Howard submit any pleadings, but nothing in the nature of admissible evidence, to prove fraud. Before a trial court can make a discretionary decision regarding the dismissal of a case for fraud, it must have an evidentiary basis on that decision. Here, the trial court had no evidence to support findings of fact based upon the heightened clear and convincing evidence standard regarding the allegation of fraud. | Even if trial court had an evidentiary basis on which to conclude that driver intentionally misrepresented his medical history in his deposition, a section of dismissal on the basis that driver perpetrated a fraud upon the court was not warranted in driver's personal injury action against two other motorists; driver revealed three motor accidents or injuries in his deposition, and there was no evidentiary support that the medical matters driver failed to disclose made any difference in the case. | "For the trial court to properly exercise its discretion to dismiss a claim for fraud on the court, should there be an evidentiary basis to dismiss the case?" | Pretrial Procedure - Memo #7463 - C - S.docx | LEGAL/LK 00146020 - LEGAL/LAG 00146021 | Condensed, SA, Sub | 0.51 | 0 | 1 | | 1 | 1 |
| 16623 | Port Auth. of Allegheny Cty. v. Div. 85, Amalgamated Transit Union, 34 Pa. Cmwlth. 71 | 307A+552 | Although the parties have not raised the issue, it appears to us that these proceedings are technically moot. A case will be dismissed if at any stage of the judicial process it is rendered moot. Moot cases are generally ones in which the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. Anticipatory Movers of Pennsylvania, 339 Pa. 192, 178 A. 446 (1935). A recognized exception to this doctrine is illustrated by cases in which technically moot issues were nevertheless decided on the merits because they were of a recurring nature, capable of repeatedly avoiding review and involving issues of important public interest. Association of Street, Electric Railway and Motor Coach Employees of America, Division 998 v. Wisconsin Employment Relations Board, 340 U.S. 416, 71 S.Ct. 373, 95 L.Ed. 389 (1951); Weaver v. King, 310 Pa. 120, 164 A. 914 (1933). The instant case does not appear to fall within the exception for the collective bargaining process applicable to PAT and the collective bargaining representative of its members, which is sequentially and continue to be the subject of disputes and will arise in future negotiations unless now resolved. Accordingly, we shall review these issues on their merits. | A recognized exception to the doctrine that a case will be dismissed if at any stage of the judicial process it is rendered moot is illustrated by cases in which technically moot issues were nevertheless decided on the merits because they are of a recurring nature, capable of repeatedly avoiding review, and involve issues of important public interest. | Will a case be dismissed if at any stage of the judicial process it is rendered moot? | Pretrial Procedure - Memo #7403 - C - S.docx | ROSS/D02/R0019-R0055-00192863 | Condensed, Order, SA, Sub | 0.69 | 1 | 1 | 1 | 1 | |
| 16624 | Hill v. Roberts, 142 Tenn. 215 | 371+2005 | No constitutional restriction upon a state's power to tax will be inferred... no one to whom the legislature may not require a particular tax by county authorities or by city authorities for county or city purposes. We do not think that article 2, section 29, expresses any prohibition against such a provision by the legislature, and we have recently held that no constitutional restriction upon the state's power to tax will be inferred. Verhein v. State Board of Elections, 141 Tenn. 645, 214 S. W. 737. | No constitutional restriction upon a state's power to tax will be inferred. | Can any constitutional restriction upon a state's power to tax be inferred? | 04385.docx | LEGAL/LK 00145938 - LEGAL/LAG 00145939 | Condensed, SA | 0.84 | 0 | 1 | | 1 | 1 |
| 16625 | People ex rel. Stafford v. Travis, 213 N.Y. 139 | 371+2005 | The tax imposed by the act of 1910 upon and with respect to the net income from every business carried on in this state by a person not residents of the state is not for the privilege of carrying on a legitimate business within the boundaries of the state, for that is a business guaranteed by the federal Constitution. It is the imposition of a tax upon business done by a nonresident in this state to business which is... It is imposed upon the conduct of such a business by a resident of the state, but it is a tax just and constitutional. The authority of a state to lay a tax is dependent on jurisdiction over either the person or the property carried on by the nonresident doing business within the state in respect to which the tax is imposed, and may, as a necessary consequence, levy a duty of like character, and not more onerous in this, effect, upon income accruing to nonresidents from their property or business within the state, as their occupations carried on within, enforcing payment, so far as it can, by the seizure of past control over persons and property within its borders." 232 U. S. 52, 40 Sup. Ct. 235, 64 L. Ed. 445. | The authority of a state to lay a tax is dependent on jurisdiction over either the person or property. | Is the authority of a state to lay a tax dependent on jurisdiction of the subject of the tax? | 04385.docx | LEGAL/LK 00146279 - LEGAL/LAG 00146280 | Condensed, SA, Sub 0.87 | | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 16626 | N. Carolina Chiropractic Ass'n v. Aetna Cas. & Sur. Co., 89 N.C. App. 1 | 413+2 | Although the conduct of which plaintiffs complain may have violated provisions of the Act and may initially be governed by the Act, plaintiffs are also asserting rights under the common law and G.S., Chap. 75. Those rights of action are separate issues that will not be determined by the Act and the jurisdiction of the Industrial Commission. The Act does not take away common law rights that an employer and its employee-employer relationship. See Bryant v. Dougherty, 267 N.C. 545, 148 S.E.2d 548, 28 A.L.R.3d 1037 (1966).(Commission did not have jurisdiction over employer's negligence claim against physician who treated employer's compensable injury). Clark v. Ice Cream Co., 261 N.C. 230, 134 S.E.2d 154 (1964).(Commission had no jurisdiction to reform workers' compensation policy where the rights of the employee were not involved). | Workers' Compensation Act does not take away common law rights that are unrelated to the employer-employee relationship. | Does the Act take away common law rights that are unrelated to the employer-employee relationship? | 11472.docx | USAGE4E-00046005 USAGE4E-00046010 | Condensed, SA, Sub 0.84 | | 0 | | | 1 | 1 |
| 16627 | Carraway v. City of Alexandria, 693 So. 2d 314 | 307A+590.1 | Having concluded that the October 22, 1990 deposition constituted a "step" sufficient to interrupt abandonment, we next determine if Carraway completed another "step" within the years of October 22, 1990. On October 17, 1995, Carraway filed its amended petition. This action, while outside the three-year period of October 17, 1995, was nevertheless completed before the full five years had accrued. Carraway's amended petition contained items not originally alleged and, as such, did more than simply restate the original petition. We agree with the Fourth Circuit that the filing of an amended petition is a "step" within the meaning of Article 561 if the amended petition is more than a restatement of the original petition. Guarino v. Pendleton Memorial Methodist Hosp., 94-1264, 94-1265 (La.App. 4 Cir. 2/23/95), 650 So.2d 1143. | Filing of amended petition is "step" which precludes dismissal for abandonment, if amended petition is more than restatement of original petition. LSA-C.C.P. art. 561. | "Is filing of an amended petition a ""step"" which precludes dismissal for abandonment?" | Pretrial Procedure - Memo # 7908 - C - PC.docx | ROSS-003190292-ROSS-003190293 | Condensed, SA, Sub 0.79 | | 0 | | | 1 | 1 |
| 16628 | Morris's Nat. Bank of Attleboro v. Commonwealth Life Ins. Co., 33 Mass. App. 598 | 34+20.10(2) | Induction is completed upon acceptance by the government of the draftee. United States ex rel. Dunlap v. Schofield, 6 F.2d 148, states refer to an Ex parte Billings, D.C., 46 F.Supp 663, 668. | Induction into the armed forces is completed upon acceptance by the government of the draftee. | Is induction into the armed forces completed upon acceptance by the government of the draftee? | Armed Services - Memo 331 - IN_57420.docx | ROSS-003183754 | Condensed, SA, Sub 0.49 | | 0 | | | 1 | 1 |
| 16629 | Com. v. Dowe, 315 Mass. 217 | 63+3 | We think that the words "executive officer" within statute relating to the request of officer of the executive branch of the state government, and not to a municipal officer having executive duties. The words "executive officer" of the city of Lawrence," used in the indictment, mean a "municipal officer" of Lawrence, in either context, though unnecessary to the executive in nature. Without doubt that unnecessary allegation was true. The prisoner in Mr. Jenkins, 146 Mass. 585, 15 N.E. 699. In substance the indictment alleges that the defendant was a municipal officer of Lawrence. The evidence supported that allegation. The fact that the judge permitted the jury to clearly find defendant was municipal officer or some other kind of officer, instead of ruling on the question as matter of law, did not prejudice the defendant. Commonwealth v. Truffini, 254 Mass. 45, 446, 149 N.E. 912. | The words "executive officer" within statute relating to the request of acceptance by executive officer of a bribe, refers to an officer of the executive branch of the state government, and not to a municipal officer having executive duties. G.L.(Ter.Ed.), 268, § 8 (M.G.L.A.). | "To whom do the words ""executive officer"" refer to in regards to bribery of an executive officer?" | 10776.docx | USAGE4E-00004416- USAGE4E-00004417 | Condensed, SA, Sub 0.68 | | 0 | | | 1 | 1 |
| 16630 | People v. Elsey, 81 Cal. App. 4th 948 | 67+9(1) | Since the 1858 amendment of the burglary statute, California cases have concluded that any entry into any type of room within the requisite intent constitutes a burglary. (See People v. Young (1884) 65 Cal. 225, 226, 3 P. 813 [burglary by entry into a travel office in a railroad station separated by a swinging door from the ticket-selling agent's room]; People v. Mackabee (1989) 1 Cal.App. 3, 63, 83 P. 716 [burglary by entry of room of inmate of hotel, jail or house]; People v. Carlsneth (1939) 35 Cal.App.2d 495, 502, 99 P.2d 1113 [entry into an office within a building is burglary]; People v. Wilson (1989) 208 Cal.App.3d 611, 615, 256 Cal.Rptr. 422 [entry into a locked rented room in a house was entry of a separate residence within the meaning of section 460]; People v. Mackabee (1989) 214 Cal.App.3d 1250, 1255, 263 Cal.Rptr. 199 [entry into an inner office by a public building, separated from the lobby by a waist high counter, is a burglary]; People v. Williams (1992) 5 Cal.App.4th 1441, 1446, 7 Cal.Rptr. 511 [burglary by entry into women's restroom at hospital by rifle purse]; People v. Wilson (1989) 208 Cal.App.3d 611, 256 Cal.Rptr. 422 [entry into a locked rented room in a house was entry of a separate residence within the meaning of section 460]; People v. Thomas, supra, 235 Cal.App.3d at p. 906, 1 Cal.Rptr 24 434 ["any person who enters a house or an inhabited dwelling, or a room in such dwelling, with the intent to commit larceny, is guilty of burglary of a dwelling, separated from the lobby by a waist-high counter, is a burglary"]. | Term "other building," within statute relating to the meaning of the burglary statute, is intended to expand the definition of burglary to cover structures beyond those listed; statute was not meant to impose multiple counts of burglary based on multiple entries into separate offices, apartments, or rooms, simply because they happen to be inside a larger structure. West's Ann.Cal.Penal Code § 459. | Can a room within a building be subject to burglary? | Burglary - Memo 245 - 58_57622.docx | ROSS-003292464-ROSS-003292648 | Condensed, SA, Sub 0.81 | | 0 | | | 1 | 1 |
| 16631 | Sasnett v. State, 693 So. 2d 650 | 110+1910 | The trial court finds that what adults that trial she not attaches facts to show that appellant is not entitled to relief, and we agree. Appellant has stated a legally sufficient claim of ineffective assistance of counsel by alleging his counsel failed to determine the elements of burglary of a dwelling or pursue lesser offenses, including that of burglary of a structure. Moreover, appellant has alleged that prejudice resulted from burglary of a third-degree felony, whereas burglary of a dwelling is a second-degree felony, and the record below us shows that appellant burglarized a detached garage, and nothing in the record below disclosed that it was enclosed by a fence. Pertinent case law establishes that burglary of a detached garage not enclosed together with a house by fence does not constitute burglary of a dwelling under the 1993 burglary statute. See Martinez v. State, 700 So.2d 142 (Fla. 5th DCA 1997). | Defense counsel's failure to determine the elements of burglary of a dwelling or pursue lesser offenses, including that of burglary of a structure, prejudiced defendant, as element of ineffective assistance, in prosecution for burglary of a dwelling, where record showed defendant burglarized detached garage, nothing in record disclosed that it was enclosed by a fence, and burglary of detached garage not charged together with home by fence did not constitute burglary of a dwelling under the under statute in effect at time. U.S.C.A. Const.Amend. 6. | Is burglary of a detached garage a burglary of a dwelling? | Burglary - Memo 254 - 58_57632.docx | ROSS-003211817-ROSS-003211875 | Condensed, SA, Sub 0.42 | | | | | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 166.32 | Ione Aebert S., 33 Cal. App. 4th 185 | 67+4 | "Building" under California's burglary statute is any structure that has walls on all sides and is covered by roof... | Aebert correctly contends the structure at issue here within the scope of Penal Code section 459, which applies to "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building"... | Do building structures under burglary law require four walls and/or a roof? | 013004.docx | LEGALEASE-00147972 / LEGALEASE-00147973 | Condensed, SA, Sub 0.79 | | 0 | 1 | | 1 | 1 |
| 166.33 | Henderson v. C-K, 261 Or. 15 | 20+75 | Obedience is required only to stop signs installed or authorized by public bodies or officials. ORS 483.318. | Our statutes require obedience only to stop signs which are installed or authorized by public bodies or officials... | Is a person required to obey only stop signs installed by officials? | Highways_Memo 174 B_57450.docx | ROSS-003291951-ROSS-003291952 | Condensed, Order, SA, Sub 0.84 | | 1 | 1 | | 1 | |
| 166.34 | Morton v. Solano, Copper Mining Co., 26 Cal. 527 | 260+26 | If a discoverer of a mineral lode locates the same in accordance with the mining customs of the district, by placing upon the lode a notice with the names of the discoverers... | The custom provides that any person who has discovered a vein or lode and desires to locate a mining claim upon it for himself, or for himself and others, may do so by giving notice... | Can a person locate a mining claim for others? | 021576.docx | LEGALEASE-00147754-LEGALEASE-00147755 | Condensed, SA, Sub 0.59 | | 0 | 1 | | 1 | 1 |
| 166.35 | Rush v. French, 1 Ariz. 99 | 260+25 | Failure of a mining locator to comply with the local miners' rules, under which the location was made, does not work a forfeiture, unless the rules themselves so provide. | The law makes the discoverer of a mine the agent of those for whom he chooses to act, and his act becomes their act, regardless of the fact whether the party for whose benefit the location is made buys... | Can a failure to comply with the local mining rules and customs work a forfeiture? | Mines and Minerals_Memo #256 - C - EN_57488.docx | ROSS-003296014/ROSS-003296015 | Condensed, SA, Sub 0.76 | | 1 | 1 | | 1 | |
| 166.36 | Kaunan v. Benda Home, 167 S.W. 147 3-4975 | 302+72 | A prayer for relief should be consistent with the facts stated as a basis for relief. | The prayer for general relief is of no assistance because a prayer must be consistent with the facts stated as a basis for relief... | Should a prayer be consistent with the facts stated as a basis for relief? | Pleading_Memo 432 BMM_57503.docx | ROSS-003201459-ROSS-003201510 | Condensed, SA, Sub 0.48 | | 0 | 1 | | 1 | |
| 166.37 | Tillett Bros. Const. Co. v. Dep't of Transp., 210 Ga. App. 84 | 307A+1361 | It is not necessary for an order to advance or resolve a litigation matter for the order to be an order within the meaning of OCGA 9-7"-60. See Lythe v. Hudnall Prop., Inc., Inc. 159 Ga. App. 514, 488 S.E.2d 521 (1989)... | It is not necessary for an order to advance or resolve a litigation matter for order to be "order" within meaning of statute pursuant to which action is subject to automatic dismissal when no written order is taken for period of five years. O.C.G.A. § 9-7-60(b)... | Is it not necessary for an order to advance or resolve a litigation matter? | Pretrial Procedure Memo #771B - C - NE.docx | ROSS-003300056-ROSS-003300066 | Condensed, SA, Sub 0.59 | | 0 | 1 | | 1 | |
| 166.38 | Clemens v. Nissan R. Am., 2013 IL App (4th) 120963 | 307A+641.1 | A party moving for involuntary dismissal based on certain defects or defenses has the burden of proof on the motion, and the concomitant burden of going forward. | The movant of motion for involuntary dismissal based on certain defects or defenses has burden of proof on motion and the concomitant burden of going forward. S.H.A. 735 ILCS 5/2-619(a)... | Will a party moving for involuntary dismissal have the burden of proof on the motion? | 016217.docx | LEGALEASE-00147531 / LEGALEASE-00147532 | Condensed, SA, Sub 0.3 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16639 | U.S. ex rel. Barrie v. Maxfield, 318 F.Supp.163 | 361+1598 | The apparent contention of the petitioner, as found in his petition, was that his deportation would not be just because he was illegally in this country, because to entrust entrquested legislation in that year to be passed at the Immigration and Naturalization Act § 241(a)(4), (b), 8 U.S.C.A. § 1251(a)(4), (b) ... | Legislation affecting aliens is not invalid merely because it is retrospective in operation. U.S.C.A Const. art. 1, § 9, Amend. 5., Immigration and Nationality Act, § 241(a)(4), (b), 8 U.S.C.A. § 1251(a)(4), (b). | Is legislation affecting aliens invalid merely because it is retrospective in operation? | Aliens_Immigration and_124JW990s34nCNcomM856sO99Zs.doc | RO155-00000282-RO155-00000283 | Condensed, SA, Sub 0.81 | | 0 | 1 | | 1 | |
| 16640 | Katov v. Immigration & Naturalization Serv., 562 F.2d 866 | 24+459 | Assuming arguendo that the arrest was unlawful, it is established in this circuit that the illegal arrest of an alien unlawfully in the United States does not void a subsequent deportation order based on the alien's admission at the deportation hearing... Immigration and Naturalization Service, 525 F.2d 66[4,6](Cir. 1975), relying upon Lavoie Abrams v. Immigration and Naturalization Service, 413 F.2d 968, 442 U.S.C.A 681 ... | Illegality of arrest of alien would not bar deportation proceedings or void deportation order based on alien's admission at deportation hearing of his illegal status in this country. Immigration and Nationality Act, §§ 101 et seq., 236(a), 242(a), 244(a); 8 U.S.C.A §§ 1101 et seq., 1186(a)(001), 1251(a)(1), 1254(a), 1304(b). | Does a defect or irregularity in arrest of an alien invalidate a deportation proceeding? | Aliens_Immigration and_174ZaqDHH9Q5uFBKHP_UgBsfbwd.doc | RO155-00000284-RO155-00000285 | Condensed, SA, Sub 0.64 | | 0 | 1 | | 1 | |
| 16641 | Ditlcoff v. Assoc/Tech Farming Sys. Env't Wayne, 179 F. Supp. 2d 896 | 25T+133(2) | First, Ditlcoff admits that her initial employment application, signed on January 9, 1996, clearly provided for individual arbitration of disputes solely through "Mediation, and if unsuccessful, Arbitration..." (Employment Application Form). Defendant contends she has not read... | Exceptions to general rule, under relative rule, that party to contract is bound by provisions regardless of failure to read, apply to employee who signed documents at time of acceptance for hire that she signed as employee was that notice could be given to payroll department did not constitute a waiver... | Do courts consider an arbitration agreement invalid if a party has not read the arbitration agreement before signing? | Alternance Dispute Resolution Memo 751 RK_58088.docx | RO155-00182456-RO155-00182458 | Condensed, SA, Sub 0.7 | | 0 | 1 | | 1 | |
| 16642 | Collins & Aikman Prod. Co. v. Bldg. Sys., 58 F.3d 16 | 25T+137 | We have stated that a court should decide at the outset whether "the arbitration agreement [is] broad or narrow." Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir.1983). If broad, there is a presumption that the claims are arbitrable... | Arbitration clause which submitted to arbitration any claim or controversy arising out of or relating to the agreement was the paradigm of a broad clause. | What is the paradigm of a broad arbitration clause? | 007860.docx | USG4014X-0014891-USG4014X-0014916 | Condensed, SA, Sub 0.71 | | 0 | 1 | | 1 | |
| 16643 | Nicholas v. KBB, 565 F.2d 904 | 25T+182(2) | In addition to invocation of the judicial process, the party opposing arbitration must demonstrate prejudice before we will find a waiver of the right to arbitrate. Prejudice in the context of waiver of arbitration rights may take several forms, and is assessed by delay, expense and damage to a party's legal position... | Widow of former employee prejudiced former employer by bringing suit alleging that employer's failure to pay life insurance provide breached several agreements, in required to support a finding of waiver of agreement's arbitration clause; delay in asserting clause was substantial, as 10 months, was unexplained and caused widow to incur significant expenses in case, including removal to federal court, unsuccessful motion to remand, filing of answer, discovery requests, depositions, and opposing party's beginning preparation of its summary judgment motion. | Where a party fails to demand arbitration and engages in pretrial activity inconsistent with intent to arbitrate, can the party opposing arbitration show that its position has been prejudiced? | 007800.docx | USG4014X-0014891-USG4014X-0014893 | Condensed, SA, Sub 0.54 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Copied Headnote | Judicial Opinion Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  | 839 | 15,344 | 14,873 | 23,876 | 9,075 |
| 11644 | United States v. Felton, 4017 2 64-62 | 14+20 (63) | Congress did grant various exemptions from military service such as conscientious objectors and ministers of religion but such exemptions were matters of legislative grace. United States v. McKennon, T Cir., 1961, 288 F.2d 1 (e, 268.7 2nd s... | Exemptions from military service for conscientious objectors and ministers of religion are matters of legislative grace. United States v. McKennon, T Cir., 1961, 288 F.2d 1 (et seq.), as a amended 50 U.S.C.A. App. § 451 et seq.; U.S.C.A.Const. art. 1, § 8. | Is ministerial exemption a matter of legislative grace? |  |  | 000759.docx | LEALEAD 0016820 / LEALEAD 0016821 | Condensed, SA, Sub 0.15 |  | 0 |  |  | 1 |  |
| 11645 | United States v. La Favor, 957.2d 425 | 14+7(5)) | The pursuit of vocational training is inconsistent with the claim of permanent disability. Blair v. U.S., R Cir., 47 F.2d 109; O'Quinn v. U.S., 5 Cir., 757.2d 501 | The pursuit of vocational training is inconsistent with the claim of "permanent disability" within the contemplation of a war risk policy. | Is the pursuit of vocational training inconsistent with the claim of permanent disability? |  |  | 000780.docx | LEALEAD 0016840 / LEALEAD 0016841 | Condensed, SA, Sub 0.16 |  | 0 |  |  | 1 |  |
| 11646 | Carly v. Shepard, L.2 Wis., 639 | 813+401 | Where a promissory note is indorsed by the payee, and also by another party, the legal inference from the instrument itself is that the payee is the first indorser... | Where a promissory note is indorsed by the payee, and also by another party, the legal inference from the instrument itself, is that the payee is the first indorser. | Whether the payee is the first indorser? |  |  | 010564.docx | LEALEAD 0016805 / LEALEAD 0016806 | Condensed, SA, Sub 0.83 | 1 | 0 |  |  |  |  |
| 11647 | Northwestern National Life Insurance Co. v. Laurel Federal Savings Bank, 979 F. Supp. 354 | 813+452 | The more dispositive question is whether the endorsements placed upon the checks were unauthorized or forged. Under § 3-419 as now only when the endorsement is "forged." There is no definition of "forgery" in the U.C.C... | "Forged endorsement" under Maryland Uniform Commercial Code (UCC) is one made without actual, implied, or apparent authority. Md.Code, Commercial Law § 3-201(41). | What is a forged indorsement? |  |  | Bills and Notes Memo 474-PR.docx | LEALEAD 00038158 / LEALEAD 00038159 | Condensed, SA, Sub 0.82 | 1 | 0 |  |  |  |  |
| 11648 | United States v. Olsson, 551 F.3d 152 | 14k+21 | Olsson's argument is in tension with the statute, which takes as its "agent" in the case of an organization or government, includes a servant or employee... | Plain language of statute prohibiting theft or bribery by agent of organization receiving federal funds does not distinguish between "high-level" and "low-level" employees. 18 U.S.C.A. § 666(a)(1), (b)(1). | Does the federal bribery statute distinguish between different types of employees? |  |  | 012023.docx | LEALEAD 0016847 / LEALEAD 0016848 | Condensed, SA, Sub 0.8 | 1 | 0 |  |  |  |  |
| 11649 | U.S. v. Jackson, 504 F. Supp. 118 | 282+74(1) | Appellant contends the trial court erred in denying his motion for judgment of acquittal on the grounds that the actions of the appellant did not fall within the scope of 18 U.S.C. § 1503... | In prosecution for corruptly endeavoring to influence and impede petit juror, court properly instructed jury as to essential elements by instructing that, to find guilt, jury must find that defendant contacted specific juror who had been selected to serve on panel from which petit juror were to be selected in pending criminal action, that juror must find the defendant endeavored to influence and impede such prospective jurors in discharge of their duties as members of the jury and that jury must find that defendant's actions were done corruptly. 18 U.S.C.A. § 1503. | Can a person be convicted for endeavoring to corruptly influence a petit juror even though the person being influenced was not yet selected or sworn? |  |  | 012805.docx | LEALEAD 0016838 / LEALEAD 0016839 | Condensed, SA, Sub 0.38 | 1 | 0 |  |  |  |  |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16650 | United States v. Condon, 170 F.3d 687 | 110+392.2(47) | Forgoing criminal prosecution (or securing a lower sentence) is not a "thing of value" within the meaning of § 201(c)(2). Economically, the gains recovered would be avoided. A cash payment of $500, and avoiding a fine of $500, come to the same thing. But Congress did not treat "thing of value" in this mirror-image sense. All of § 201 speaks of valuable things "received" by the recipient... the exculpation of a private debt could be a "thing of value" in the statutory sense, payment of a "debt to society" by providing testimony is a different animal altogether... treating testimony as a promise to forgo prosecutorial promise that would lead to a lower sentence as a "thing of value" would put § 201(c)(2) in significant tension with a long line of judicial rulings requiring witnesses to testify in exchange for grants of immunity from prosecution... As a matter of ordinary language, treating testimony in exchange for a promise of immunity from prosecution (or even a lighter sentence) as the receipt of a "thing of value" within the meaning of the statute, 18 U.S.C. § 201(c)(2), specifies | Criminal statute punishing whoever gives, offers, or promises anything of value for or because of the testimony of any witness under oath, and exacting obtained through promise of immunity or lowered sentence, as statute creates neither payment of cash nor exculpation of debt, and since any event, statute is not violated by such conduct because forgoing criminal prosecution, or securing a lower sentence, is not a "thing of value" within the meaning of statute. 18 U.S.C.A. § 201(c)(2). | Could payment of a debt to society by providing testimony be a value for because of a different animal because a cancellation of a private debt is a thing of value in the statutory sense? | D12407.docx | USGALEXE 00148540 / USGALEXE 00148541 | Condensed, SA, Sub 0.75 | 0.75 | 0 | 1 | | 1 | 1 |
| 16651 | Hertz Corp. v. City of New York, 559 U.S. 1 | 318H+62 | Our precedent makes clear, moreover, that "the compensable injury flowing from a [RICO] violation ... 'necessarily is the harm caused by [the] predicate acts.'" Id., at 457, 126 S.Ct. 1991 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). In a RICO statement, the City alleged that it was injured by the Antitrust Act reports constituted the predicate act of mail and wire fraud. Record 466c. The statement was that the alleged injury flowing from a RICO violation 'necessarily is the harm to the City by fraudulent conduct alleged here and are not legally cognizable before us. The only claim alleged in the statement of the City is not concluded here on any legal ground of § 1962, predicate offense, because the conduct directly causing the harm to its injury. That it cannot do. | Assuming that alleged violation of Jenkins Act by out-of-state online seller of cigarettes, in failing to file a required report with the State taxing authorities, and in failing to identify purchasers from the online seller by name, address, and quantity of cigarettes purchased from online seller by state residents, could constitute a predicate offense under the Racketeer Influenced and Corrupt Organizations Act (RICO), such violation was not proximate cause of city's alleged injury from loss of tax revenues based on unpaid cigarette taxes, where out-of-state purchases from online seller, as required for a RICO civil claim based on the plaintiff being injured in its business or property by reason of RICO predicate offense; the purchasers' failure to pay use taxes to city, not distinct activities by the online seller's failure to file reports with the State (the only activities that the online seller undertook concerning sales to city residents, with respect to which neither online seller nor city was injured). Racketeer Influenced and Corrupt Organizations Act, § 1962(c), (1964(c)). | What is the compensable injury flowing from a Racketeer Influenced and Corrupt Organizations Act violation? | D12417.docx | USGALEXE 00148258 / USGALEXE 00148259 | Condensed, SA, Sub 0.24 | 0.24 | 0 | 1 | | 1 | 1 |
| 16652 | United States v. Kemmel, 188 F. Supp. 736 | 63+1(1) | Although an actual tender of the bribe is not necessary to perfect the offense, mere acts of preparation will not suffice. 8 Am. Jur. Bribery, § 10 (1937). Here the defendant did not suffice. 9 Am. Jur. Bribery, 2950, 13 Pa.Super. 247, 8 A.L.R. 1342 §§ 751 (State v. Lowery, 265 P. Pa.Super. 292 A.2d 766, and See State v. Bribery, 1950, 179 N.W. 240, 54 N.W.2d 165, 266.267, where case was pending, the intent was transferred, which did constitute a preparation did not and not question of law was involved. | Under statute prohibiting the promising, offering or giving of money to a government officer or employee with intent to influence him in the discharge of his lawful duties, an actual tender of the bribe is not necessary to perfect the offense, but mere acts of preparation will not suffice. 18 U.S.C.A. § 201. | Are mere acts of preparation enough to suffice for a charge of bribery? | D12461.docx | USGALEXE 00148640 / USGALEXE 00148641 | Condensed, SA, Sub 0.32 | 0.32 | 0 | 1 | | 1 | 1 |
| 16653 | State v. Corra, 430 So. 2d 1323 | 67+6 | The argument, properly understood, is that the defendant, under La.R.S. 14:62.2 and 14:62, 14:62 are that it is not necessary for a person to be present in the house at the time of the burglary in order to satisfy the "inhabited dwelling" requirement of La.R.S. 14:62.2... La.1973; State v. Hicks, 286 So.2d 331 (La.1973). The fact that the White-May duplex was unoccupied at the time of the burglary was committed would have no relevance to a charge under the statute. | It is not necessary for a person to be present in the house at the time of the burglary in order to satisfy the "inhabited dwelling" requirement of the burglary statute. LSA-R.S. 14:62.2. | Is it necessary for a person to be present in the house at the time of the burglary to conclude burglary? | D13015.docx | USGALEXE 00148794 / USGALEXE 00148795 | Condensed, SA, Sub 0.61 | 0.61 | 0 | 1 | | 1 | 1 |
| 16654 | Compton v. State, 607 S.W.2d 246 | 23+7 | Thus, it is clear that the three ways ownership may be alleged are that the named individual had title to the property, possession, or a greater right to possession than the defendant. Though the evidence clearly shows the title owner to be individual Waters, we have ample evidence that the title owner to be individual Waters, we have long held that the term "dwelling house" in burglary means "special" ownership in a natural person acting for the corporation. Eaton v. State, 533 S.W.2d 33 (Tex.Cr.App.1976), Castillo v. State, 487 S.W.2d 272 (Tex.Cr.App.1972). Ownership is in burglary. 13 Tex.Cr.R.Ct. 145 S.W. 928 (1922). In McEvoy v. State, supra, this Court held that the "greater right to actor held joint interest in the property | Three ways that ownership of stolen property may be alleged are that named individual had title to the property, possession, or a greater right to possession than defendant, and proof that title owner held title to the property, possession, or a greater right to possession does not apply only in cases where both owner and actor have joint interests in the property overruling McEvoy v. State, 571 S.W.2d 723. V.T.C.A., Penal Code § 1.07(a)(24, 28). | How is the ownership of the burglarized premises proven? | D13045.docx | USGALEXE 00148806 / USGALEXE 00148807 | Condensed, SA, Sub 0.49 | 0.49 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16655 | Stottemyre v. Cranston, 235 Md. 118 | 260=167 | The author has no account that the driving of cattle to pasture along a public road is not in itself lawful and does not constitute a nuisance per se. "Under this right (to use public roads), a person may use the highway for the purpose of leading or driving cattle" 40 C. J. S. Highways * 233, h is sald in Restatement, Torts, sec. 385, comment a, that "a part of his privilege to use a public highway, one in possession of livestock is privileged to drive them on it like any legitimate purpose such as bringing them to market or taking them to pasture". The right of a possessor of livestock to drive his animals along public highways was recognized and protected by the courts at common law. See Mills v. Stark, 4 N.H. 512; Jackson v. Rutland & Burlington Railroad Co., 25 Vt. 150 (1855); Avondale v. Gartner, 102 Mass. 28; Hood v. Snider, 100 N.Y. 70, 29 highers, The Law of Animals, sec. 75, p. 276; 2 Harper and James, The Law of Torts, sec. 14, p. 424; Cooley, Torts (4th ed.) sec. 560. | Can cattle be driven in public highway? | Highway - Memo 249-8.docx | LEGAEASE 00038361 LEGAEASE 00038363 | Condensed_SA_Sub 0.89 | | 0 | 1 | | 1 | 1 |
| 16656 | Amold Fred. Co. v. Gwild Tr., 684 P.2d 261 | 260=55(5) | When there are no controlling state decisions providing clear precedent, the views of the resident district judge on matters of state law carry extraordinary force on appeal, (Budd v. Campbell Soup Co., 637 F.2d 868, 870 (10th Cir. 1980); Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 884, 889 (10th Cir. 1980); Rasmusson Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1148 (10th Cir. 1978), cert. denied, 439 U.S. 862, 99 S.Ct. 183, 54 L.Ed.2d 171 (1978). We agree with the District Court's conclusion that, in Wyoming, the reservation of "coal and other minerals" is unambiguous and includes oil and gas. The District Court's analysis of the issue is adopted by this Court Professor Heinrigues in "The Law of Oil and Gas" (3 J. 1971) states that proposals "to expand the meaning of the term statute, a conveyance or reservation of the "minerals" will include oil, gas and petroleum products, and while such products are not specifically on the face of the instrument." See also, 1A Summers, The Law of Oil and Gas s 134 (1954). "It is a general rule adhered to by a majority of the courts, that a conveyance or exception of minerals includes oil and gas unless from the language of the instrument, or from the facts and circumstances surrounding the parties at the time of the execution, it is found that the term was used in a more restricted sense." | "Does the reservation of "coal and other minerals" include oil and gas?" | 02193.docx | LEGAEASE 00148239 LEGAEASE 00148219 | Condensed_SA_Sub 0.81 | | 0 | 1 | | 1 | 1 |
| 16657 | Silverdohl v. E. Ohio Gas Co., 38 Ohio St. 3d 244 | 260=55(6) | In sum, then, we hold that the right to strip mine is not incident to mineral estate. Where the mineral estate is deemed to be totally incompatible with the enjoyment of a surface estate, a heavy burden rests upon a party seeking to demonstrate that such a right exists. This is especially true when the deed relied upon was executed prior to the time coal mining was considered practicable. ... [text] | Under Wyoming law, reservation of "coal and other minerals" in 1909 railroad deed conveying surface of land grants from United States Governmental was unambiguous and included oil and gas, notwithstanding reference to "mineral" or "mining" in the reservation.

Right to strip mine is not incident to ownership of a severed mineral estate. | 02561.docx | LEGAEASE 00148079 LEGAEASE 00148080 | Condensed_SA_Sub 0.83 | | 0 | 1 | | 1 | 1 |
| 16658 | Welcome v. Jennings, 780 P.2d 1039 | 260=92 | A person acquires the exclusive right to possess and extract minerals in state lands by obtaining a location, performing labor worth $100 annually, and claim before extraction; the locator must perform the exclusive right of possession and extraction. the locator must perform annual labor and record an annual affidavit of labor. AS 38.05.210. | In order to preserve exclusive right of possession and extraction of minerals from mining claim, locator must perform annual labor and record annual affidavit of labor. AS 38.05.210. | 02914.docx | LEGAEASE 00148173 LEGAEASE 00148174 | Condensed_SA_Sub 0.36 | | 0 | 1 | | 1 | 1 |
| 16659 | General Elec. Credit Corp. v. Stover, 708 S.W.2d 355 | 289=145 | It is so that the Revised Uniform Limited Partnership Act enacted the Kansas for effect in January 1, 1984, provides that a limited partner does not participate in the control of the business (so as to incur liability) merely by reason of the power of the agency on behalf of the partnership, but the Non-Recourse Plan and Security Agreement were executed prior to the effective date of that Act. A limited partner was without authority to act for or to bind the partnership if the general partners under the scheme of that enactment. Tomlin v. Ceres Corp., 507 F.2d 442, 648 (5th Cir 1975); Bernston v. Harrison, 213 Kan. 659, 518 F.2d 644 (1974) (No Civ. 1980), cert. denied 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 350; Milliken v. Stromberg 70, Code 2d 624, 26 N.Y.S.2d 528 (1941). ... formulated conformly to the provisions of the 1967 Act. It provided that the partnership was "formulated under the Uniform Limited Partnership Act." See K.S.A. 56-101 to 56-151 (Repealed). | Under the Uniform Limited Partnership Act of 1987, a limited partner was without authority to act for or to bind the partnership per general partners. K.S.A. 56-101 to 56-151 (Repealed). | 02901.docx | LEGAEASE 00148949 LEGAEASE 00148050 | Condensed_SA_Sub 0.42 | | 0 | 1 | | 1 | 1 |
| 16660 | Argonne v. Box Opportunities, 95 So. 3d 139 | 307A=681 | ... dismissal of a complaint, we note that the trial court erred by ordering the dismissal of Argonne's suit with prejudice. A dismissal on grounds of abandonment is only the case without prejudice. State, Dept. of Transp. Group, 06 0635, p. 4 (La.App. 4 Cir. 1/7/99) 1 So.3d 562, 563, citing Delisle v. Wagenblast, 18 774 (La App. 4th Cir 1966). See La. C.C.P. art. 3463. | Can dismissal of an action on grounds of abandonment be made without prejudice? | 03(073).docx | LEGAEASE 00148776 LEGAEASE 00148777 | Condensed_SA_Sub 0.69 | | 0 | 1 | | 1 | 1 |
| 16661 | Jaffe v. Huffman, 273 Cal. App. 2d 512 | 308=182 | The (Laws of the NLC,d) that they were strangers to the transaction and were purely in good faith, having paid full fair value for the premises without notice of any interest therein, is not determinative of the action. They were close relatives of appellant Huffman, and who were charged with knowledge of the terms of the agreement ... presumption that an agent performed his duty in communicating knowledge or information to his principal. Morris v. Duncan, 56 Cal.App.2d 88, 267 P.2d 857; Wolff, California Evidence, p. 124. | Has an agent performed his duty in communicating knowledge or information to principal? | 04136d.docx | LEGAEASE 00148500 LEGAEASE 00148551 | Condensed_SA_Sub 0.85 | | 0 | 1 | | 1 | 1 |
| 16662 | LaBombard v. Peck Lumber Co., 141 Vt. 619 | 413=2 | This plaintiff could have applied for workers' compensation benefit in either Connecticut or Vermont. His (than Connecticut), his election is conclusive as to his proceeding. This right to workers' compensation benefit is wholly statutory, not existing except under the circumstances provided in the act. | The right to workers' compensation is fully statutory, now existing except under the circumstances provided in the act? | 04(080).docx | LEGAEASE 00148240 LEGAEASE 00148241 | Condensed_SA_Sub 0.47 | | 0 | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16663 | Matter of Zlimen, 643 P.2d 632 | 411=2 | As a general rule of construction, we have said that the Workmen's Compensation Law is to be liberally and reasonably construed so that the industry and not the worker will bear the burden of injuries suffered… | Workers' compensation is a statutory responsibility and any charge or addition to the law is a function of the legislature and not the courts. | Is workers compensation a statutory responsibility? | 043583.docx | LEGALEASE-00188250-LEGALEASE-00188251 | Condensed, SA, Sub | 0.88 | 0 | | 1 | 1 | 1 |
| 16664 | Commonwealth v. Hufnal, 185 Pa. 376 | 18=7 | We are constrained to hold, therefore, that skimmed milk is not adulterated milk, even within the very broad and popular meaning of the word "adulteration" in the act of 1895. Undoubtedly, if sold as "whole milk" or even as "milk," without any description printed, it would be… | Act June 26, 1895, P.L. 317, "An act to provide against the adulteration of food," though providing: "An article shall be deemed to be adulterated… (a) In the case of food: * (1) If any valuable or necessary constituent or ingredient has been wholly or in part abstracted therefrom."… does not authorize conviction of one who, under the description of "skimmed milk," sells milk from which the cream has been taken by separating process, known as the "centrifugal method," though thereby more cream is extracted than by the old-fashioned skimming process. | Is skimmed milk an exempting clause or not prohibited under adulteration? | 000543.docx | LEGALEASE-00249335-LEGALEASE-00249336 | Condensed, SA, Sub | 0.27 | 0 | | 1 | 1 | 1 |
| 16665 | D.C. v. Lynham, 16 App. D.C. 85 | 199H=992 | In the trial of a person upon this statute, it is incumbent upon the District of Columbia, in whose name the prosecution is conducted, to prove the sale and delivery of the adulterate as drug by the defendant… | It is no defense for a druggist who is prosecuted for selling an adulterated drug in violation of Act Cong. Feb. 17, 1898 (30 Stat. 246), relating to the adulteration of foods and drugs in the District of Columbia, to show simply that he was at the time of sale, ignorant of the fact that the drug was adulterated, as he must know what he sells, or proposes to sell, and that it conforms to the standard prescribed by law. | Can a defendant take up a defense of ignorance of adulteration? | Adulteration Memo 1/3 _1lHl6YxSJ0x4e9jsZ-D9Ww6- kYKMPkcJ2.doc | ROSS-000003119-ROSS-000003140 | Condensed, SA, Sub | 0.79 | 0 | | 1 | 1 | 1 |
| 16666 | United States v. Zenon, 182 F.Supp. 2d 211 | 34+4(2) | An individual may be convicted of violating a statute prohibiting trespassing on a military installation only where the government does not own the property in question, when the government does not own the land, statute requires only that government demonstrate either control or custody over the area reserved by the military… | An individual may be convicted of violating statute prohibiting trespassing on a military installation when the government does not own the property in question; statute requires only that government demonstrate either control or custody over the area reserved by the military; 18 U.S.C. § 1382. | Is government ownership of the property in question a requisite for a conviction under 18 U.S.C. 1382? | 000783.docx | LEGALEASE-00140762-LEGALEASE-00140763 | Condensed, SA, Sub | 0.02 | 0 | | 1 | 1 | 1 |
| 16667 | Ex parte Bunois, 615 S.W.2d 192 | 34+101 | The important fact which distinguishes this case from those cited above is that Bunois, after the divorce decree, made no voluntary act to have his force disability benefits and to receive instead the disability benefits from the Veterans Administration… | Veterans Administration benefits, unlike air force disability retirement benefits, are not divisible or assignable; they are not property; 38 U.S.C.A. § 3101. | Are Veterans Administration (VA) benefits divisible? | Armed Services - Memo 336 i IR_SMJ09.docx | ROSS-000294404-ROSS-000294405 | SA, Sub | 0.86 | 0 | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 5,029 |
| 16668 | Neely v. Comm'r for Lawyer Discipline, 302 S.W.3d 331 | 92+1228 | Neely objected to production of these records, claiming it would violate a constitutional right to privacy protected by their medical records. However, there are no constitutional rights to privacy affected by the disclosure of banking records or personal financial records. See United States v. Miller, 425 U.S. 435, 442, 96 S. Ct. 1619, 1624, 48 L. Ed. 2d 71 (1976); see also In re Morris, 98 S.W.3d 513, 516 (Tex. App.—Amarillo Sept. 11, 2008, no pet.); see also State v. Hardy, 963 S.W.2d 516, 524 (Tex. Crim. App. 1997) (discussing that a person has no reasonable expectation to privacy in personal information entrusted to a third party and banking information is subject to the discretion of the third party as to having no expectation of privacy in bank records as in Miller). Miller v. U.S., 425 U.S. 435, 442, 96 S. Ct. 1619, 1624; (Tex. App.—Houston [1st Dist.] 1995, no writ) (discussing that banks reports intrusion upon privacy of financial records is permitted and is not an invasion of privacy). | There are no constitutional rights to privacy affected by the disclosure of banking records or personal financial records. | Do financial records have a constitutional right to privacy? | 009649.docx | LEGALEASE-00168503 LEGALEASE-00168504 | Condensed_SA | 0.89 | 0 | 1 | | 1 | |
| 16669 | Robinson v. Lair, 31 Iowa 9 | 83+1789 | Defendant answered under oath, denying the indorsement of the note from payee to plaintiff. Chapter 28, laws of 1862, provides that, when an action is founded on a written instrument, and the original or a copy thereof, is annexed thereto, signed by the maker or makers thereon, and denied, unless the party whose signature it purports to be shall deny the same under oath. In his pleading, or in a writing to be filed at the same time with his pleading. It is to be observed that this section provides that the signature shall be deemed genuine and admitted, unless the party whose signature it purports to be shall deny the same under oath. It is plain that the denial by the maker of a note, of the genuineness of the signature of an indorser, is not provided for in this section, and hence a denial, not under oath, is the same in its effects upon the proof as a denial under oath. Rev. * 2915. | In order to put upon the plaintiff in an action upon a promissory note, or other written instrument, the burden of proving the genuineness of the signature of the maker or indorser thereof, the same must, under our present statute, Chap. 28, Laws of 1862, be denied under oath by the party whose signature it purports to be. It is accordingly held, that a denial by the maker of the genuineness of the signature of the indorser is not sufficient to throw such onus upon the plaintiff. | Till when shall a signature be deemed genuine and admitted? | Bills and Notes - Memo 777 r5_58423.docx | ROSS-003296610/ROSS-003296611 | Condensed_SA, Sub | 0.49 | | 1 | | 1 | |
| 16670 | Colthurst v. Calzarno Marine Nat. Bank of Lake Charles, 599 So. 2d 568 | 83+426 | 8.3.7.4D provides: Where an instrument, Payable to bearer, is indorsed specially, it may thereafter be further negotiated by delivery, but the person indorsing specially is liable under section 3-110.5, on his indorsement. However, under R.S. 7:90.5, an instrument payable to bearer on "the endorsement in blank" in indorsement or blank, * and under R.3 7:34 the endorsement of a special endorsee is necessary to the further negotiation of the instrument. | Negotiable instruments Law provision that, where an instrument, payable to bearer, is indorsed specially, it may nevertheless be further negotiated under only the make the third through his indorsement. However, under R.S. 7:90.5, an instrument payable to bearer on the endorsement in blank and subsequently converted to bearer paper by a blank endorsement. LSA R.S. 7:90.5; 7:34; 7:90. | What happens when an instrument payable to bearer is to bearer, is indorsed specially? | Bills and Notes - Memo 977 r28.docx | LEGALEASE-00038984 LEGALEASE-00038985 | Condensed_SA, Sub | 0.37 | | 1 | | 1 | |
| 16671 | Elston v. Deweese, 28 Ill. 436 | 83+675 | As to days of grace previous to the act of assembly of 1861, it has never been allowed by any decision of our courts, so far as we are aware; and none cited, and none, perhaps, can be found. | Prior to the act of the general assembly of 1861, Laws 1861, p. 119, days of grace had not been allowed in this state. | Did days of grace exist as a right prior to the passing of the Act of grace? | Bills and Notes - Memo 959 r16_58722.docx | ROSS-003296367/ROSS-003296368 | Condensed_SA, Sub | 0.12 | 0 | 1 | | 1 | |
| 16672 | Stephens v. Chosen Cty, 796 S.E.2d 827 | 184+2311 | Similarly, in Stephens, Rivers Edge Golf Club & Plantation, Inc., 303 Ga. 460, 76 S.E.2d 11 (2015), the Court relied on Dalton to affirm the dismissal of the plaintiff's negligent misrepresentation claim pursuant to Rule 12 (b)(6). Id. at 472 (11,712 S.E.2d at 475). The Court explained "Reliance is not reasonable if a plaintiff fails to make any independent investigation or fails to demonstrate he was prevented from doing so." Id. at 45, 735 S.E.2d at 469 (citations omitted) (internal quotation marks omitted). Rather, "to establish justifiable reliance a plaintiff must exercise ordinary care and diligence to make an independent misrepresentation and allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." Id. at 454, 785 S.E.2d at 111 (citations omitted) (internal quotation marks omitted). Because the plaintiff did not allege that they made any independent investigation or were prevented from making such inquiry, their approval of information, they failed to establish justifiable reliance. Id. at 451, 735 S.E.2d at 9 (citing Stephens, 303 Ga. at 472, 785 S.E.2d at 426). See also Kaiser v. Infinity Partners, LLC, 233 M. Cap. 233, 241, 782 S.E.2d 127 (2016) (affirming summary judgment in favor of defendant lender where the plaintiff failed to forecast evidence that they conducted an independent inquiry into the value of fats in planned performance of an action). | Reliance is not reasonable if a plaintiff induced into asserting a reliance on reliance a representation that new position with county would not jeopardize his eligibility for retirement benefits was not justified, and thus did not support negligent misrepresentation claim, administrator did not make a reasonable inquiry into county's alleged representation and was not denied the opportunity to investigate, administrator was aware that rules governing his benefits were available in the state employee retirement handbook and had consulted the handbook for other benefits information, and administrator did not consult with anyone regarding the eligibility requirements before coming out of retirement and accepting the new position. | Does a plaintiff's negligence claim fail if he fails to make any independent investigation or fails to demonstrate he was prevented from doing so? | 014074.docx | LEGALEASE-00148951 LEGALEASE-00148952 | Condensed_SA, Sub | 0.51 | | 1 | | 1 | |
| 16673 | State v. Nesbit, 79 Idaho 1 | 200+163(3) | In a supplemental brief appellant assigns an error the refusal of the court to give instruction No. 2, which is to the effect that if appellant believed the road led to or connected with a public road, he was not guilty of obstructing a public highway. Nor is intent essential as an ingredient of the crime charged. Such is not the law. Wicked, willful or criminal intent to violate the statute, under which appellant was prosecuted is not an essential ingredient of the crime. The criminal act complained of by the State is not an intent prohibition. The only inquiry in "the law been violated?". State v. Keller, 8 Idaho 699, 70 P. 1051, 1059. See also State v. Sterrett, 35 Idaho 580, 207 P. 1071. A willful act, an intentionally done, cannot in reason, because the appellant believed, if he did, that the road was a private one. Further, the testimony sustains the finding of the trial court to the effect that appellant knew, or should have known, that the obstruction complained of was placed on a public highway. | Wicked, willful or criminal intent to violate statute is not an essential ingredient of crime of obstructing a public road. I.C. § 18-3907. | Is intent essential in a crime of obstructing a public highway? | 019007.docx | LEGALEASE-00149270 LEGALEASE-00149294 | Condensed_SA, Sub | 0.86 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 16,873 | 23,876 | 9,079 |
| 16674 | Goodyear v. Vermilion Co., 27 S.E. 316 | 200=121 | Section 57 was not impaired by the passage of the Road and Bridge Law of 1913, but it is still in force, and the power of the county board power to levy a tax to aid in the construction of roads in the county. People v. Jacksonville & S.E. Louis Railway Co., 260 Ill. 530, 107 N.E. 231. This provision gives the county board a discretion to aid any town in the construction of roads and bridges. Section 60 authorizes the board of supervisors to submit to the legal voters of the county the question of issuing bonds whenever they shall deem it necessary to issue bonds to enable them to perform any of the duties imposed upon them by law. | Power of county board to aid in the construction of roads and bridges under County Laws §§ 57, 5-IA-A, 5h, 14-A-5h, 14-A, ch. 121, 5 134. People v. Road and Bridge Act 5 125, 5h A. ch. 121, 5 134. | Does the county board have the power to aid in the construction of roads? | Highways: Memo 283 - DB_5854.docx | ROSS-000328250/ROSS-000328268 | Condensed, SA | 0.72 | | 1 | 1 | 1 | 1 |
| 16675 | Newill v. Cincinnati, N.O. & T.P. Ry. Co., 244 Ky. 628 | 171=241.1 | That payment of illegal taxes may be resisted in a proper proceeding is unquestioned. And it is authority held that the power of the fiscal court to levy a tax are limited by statute and must be strictly construed. Russell County v. Hill, 164 Ky. 360, 175 S.W. 988. The fiscal court is a constitutional executive body, with the legislative, ministerial, and quasi judicial powers which are delegated, vested, and defined by the General Assembly. Kenton v. Marr, 219 Ky. 417, 293 S.W. 229; City of Louisville and Jefferson County Children's Home, 244 Ky. 1, 50 S.W.(2d) | Powers of fiscal court to levy tax are limited by statute, and must be strictly construed. | Can the fiscal court of a county levy taxes? | 103111.docx | LEGALEASE-00185929-/LEGALEASE-00185930 | Condensed, SA | 0.85 | | 1 | 0 | 1 | |
| 16676 | Jackson v. State Highway Dep't of Ga., 164 Ga. 434 | 200=103.1 | In designing and locating a state road in the state highway board is invested with a large discretion. In determining the designation and location of such a road, it must consider many considerations distance, cost of construction, including cost of right of way, topographic and engineering difficulties, expected traffic and maintenance, territory and markets served, as well as all other circumstances affecting its construction and maintenance, and the securing thereby of a main trunk line route through the state. | State highway board has large discretion in locating state road, and should consider costs, difficulties, advantages and markets served in selecting route. Park's Ann Code Supp 3512, 5 828 (ppp) | Does the state highway board have discretion in locating a state road? | Highways: Memo 224 - ANM_5853.docx | ROSS-000328328 ROSS-000328329 | Condensed, SA, Sub | 0.41 | | 1 | 1 | 1 | 1 |
| 16677 | Guyen v. McCarthy, 252 U.S. 171 | 221=212 | The word "retain" is used in the statute as an alternative to "hire" and means something different from the usual employment with a person to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different than the usual employment with payment in money, and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. In the sense of an immediate payment of cash. An islander may be induced to engage in the service of an invitation for a declared or known purpose. If such a statute could be evaded or set at naught by elaborate contrivances to engage without enlisting, to retain without hire, to invite without recruiting, it would be idle to pass acts of Congress for the punishment of this or any other offense. | Cr.Code, 5 10, as amended by Act May 7, 1917, § 3, U.S.C.A. § 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different from the usual employment with payment in money, and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. | Is there a difference between retain and hire? | Neutrality Laws: Memo 28 - ANM.docx | LEGALEASE-00200207-/LEGALEASE-00200208 | Condensed, SA, Sub | 0.44 | | 1 | 1 | 1 | 1 |
| 16678 | Guyen v. McCarthy, 252 U.S. 171 | 221=212 | The word "retain" is used in the statute as an alternative to "hire" and means something different from the usual employment with a person to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different than the usual employment with payment in money, and one may be retained, in the sense of engaged, to render a service by a verbal promise, by a prospect for advancement or payment in the future. In the sense of an immediate payment of cash. An islander may be induced to engage in the service of an invitation for a declared or known purpose. If such a statute could be evaded or set at naught by elaborate contrivances to engage without enlisting, to retain without hire, to invite without recruiting, it would be idle to pass acts of Congress for the punishment of this or any other offense. | Cr.Code, § 10, as amended by Act May 7, 1917, § 3 U.S.C.A. § 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different than the usual employment with payment in money, and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. | Do the terms retain and hire means the same? | Neutrality Laws: Memo 30 - ANM_5857.docx | ROSS-000320780 | Condensed, SA, Sub | 0.4 | | 1 | 1 | 1 | 1 |
| 16679 | Perrin v. Keene, 13 Me. 355 | 289=56 | A power to one partner to settle the affairs of the partnership, after a dissolution, does not authorize him to contract debts in the name of the firm, so as to bind his co-partners, even for the prior debts and on account of the loss of money to pay the partnership debts make no difference. | A power to one partner to settle the affairs of the partnership, after a dissolution, does not authorize him to contract debts in the name of the firm, so as to bind his copartnership, even for the prior debts and on account of the loss of money to pay the partnership debts make no difference. | Does the power to settle and adjust the affairs of the firm, or the dissolution, does not authorize the use of the partnership name for that purpose? | 02351.docx | LEGALEASE-00149891-/LEGALEASE-00149892 | Condensed, SA, Sub | 0.36 | | 1 | 1 | 1 | 1 |
| 16680 | State ex rel. Nixon v. Summit Inc. Co., 186 S.W. 428 | 307A=581 | Although delay in prosecuting an action does not, of itself, justify dismissal for failure to prosecute, it is a factor to be considered. | Although delay in prosecuting an action does not, of itself, justify dismissal for failure to prosecute, it is a factor to be considered. | "Does a delay in prosecuting an action, of itself, justify dismissal for failure to prosecute? | Pretrial Procedure - Memo 8 B026 - C - NS_58388.docx | ROSS-000311215 | SA, Sub | 0.01 | | | | 1 | |
| 16681 | Cotter v. Gist, 130 A.2d 164 | 307A=581 | A mere delay, however, is not enough to warrant a dismissal for lack of prosecution. Sec Harvey, 784 A.2d at 143. There is an additional burden of deliberate delay or lack of good faith. Indeed, after a quantic alternative seek a stay in this Court, plaintiff's counsel stated that he was ready to proceed on the date that this case was originally reached for trial. Several days later, a jury was empaneled and opening statements were made, during which plaintiff's but forth to her discovery. There is nothing in the record to suggest that plaintiff was being disingenuous in order to prejudice defendants. To be sure, the actions of counsel are imputed to try a case — Link v. Wabash R.R., 370 U.S. 626, 633-634 (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1879)); Budinich v. Becton Dickinson and Co., 789 A.2d 678, 688 (R.L. 2002). Nevertheless, we concur with the Third Circuit Court of Appeals that this mere "A long policy favoring the disposition of cases on the merits." Benjamin v. Aroostook Medical Center, Inc., 57 F.3d 101, 107 (1st Cir. 1995) (quoting Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971)) and Zavala Santiago v. Gonzalez, 553 F.2d 1137, 1139 (1st Cir. 1977)). | A mere delay, however, is not enough to warrant a dismissal for lack of prosecution. Sec Harvey, 784 A.2d at 143. There is an additional burden of deliberate delay or lack of good faith. Indeed, after a quantic alternative seek a stay in this Court, plaintiff's counsel stated that he was ready to proceed on the date that this case was originally reached for trial. Several days later, a jury was empaneled and opening statements were made. | Is mere delay is not enough to warrant a dismissal for lack of prosecution? | Pretrial Procedure - Memo 8 B041 - C - NS_58388.docx | ROSS-000328159 ROSS-000328110 | SA, Sub | 0.9 | | | 1 | 1 | |
| 16682 | Smith v. SunTrust Bank, 554 B.R. 344 | 309=164(1) | "Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, acts become as upon its person, is given effect as if originally authorized by him." Town Apr. II. v. S. Carolina Bank & Tr. Co., 57 N.C.App. 417, 441, 291 S.E.2d 892 (1982) (quoting Restatement (Second) of Agency § 82 (1958)). In order to ratify an agreement, a party must have "full knowledge of all material facts relative to the unauthorized transaction." Carolina Equip. & Parts Co. v. Anders, 265 N.C. 393, 400(7), 144 S.E.2d 252, 258 (1965). | In order to ratify an agreement, under North Carolina law, a party must have full knowledge of all material facts relative to the unauthorized transaction. | Is full knowledge required for ratification? | 04187.docx | LEGALEASE-00149843-/LEGALEASE-00149844 | SA, Sub | 0.72 | | | 1 | 1 | |

Appendix D

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 16683 | Citizens' Sav. & Loan Ass'n v. City of Topeka, 87 U.S. 655 | 371v2063 | The power to tax is, therefore, the strongest, the most pervading of all the powers of the government... [opinion text] | The power to tax is the strongest and most pervading of all the powers of government, reaching directly or indirectly to all classes of the people. | Is the power to tax the strongest of all the powers of government? | Taxation - Memo # 843 - C-IL_53473.docx | ROSS-003038105-ROSS-003038106 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | | 1 | 1 |
| 16684 | People v. Byrd, 285 Ill. App. 3d 641 | 1.771v10 | The purpose of the intimidation statute is to prohibit the making of specified threats intended to compel a person to act against the person's will... | Gravamen of offense of intimidation is the exercise of improper influence, the making of a threat with intent to coerce another. S.H.A. 720 ILCS 5/12-6(a). | What is the gravamen of the offense of intimidation? | Threat - Memo #47 - C_IL-5087.docx | ROSS-003319374-ROSS-003319377 | Condensed, SA, Sub 0.88 | 0.88 | 0 | | 1 | 1 | 1 |
| 16685 | Atkinson v. Castle & Cooke, Inc., 419 N.W.2d 324 | 413v9 | The rights offered by the Workers' Compensation Act are incidents of the employment relationship and are contractual in nature... | Rights offered by Workers' Compensation Act are incidents of employment relationship and are contractual in nature. M.S.A. § 176.001 et seq. | Is the right to compensation contractual in nature? | Workers Compensation Memo 90 ANC_58599.docx | ROSS-003281394-ROSS-003281397 | Condensed, SA 0.84 | 0.84 | 0 | 1 | | 1 | |
| 16686 | Urbina v. Homeview Lending, Inc., 681 F. Supp. 2d 1254 | 172H v1584 | The Court dismisses Plaintiffs' 2605 claim, but keeps their § 2607 claim. The Court determines if 2605 plan creates an implied private right of action under this section of the statute... | Generally, RESPA does not create express or implied private right of action; limited exceptions to this rule exist where a statute provision mentions such a right. Real Estate Settlement Procedures Act of 1974, § 2 et seq., 12 U.S.C.A. § 2601 et seq. | Does RESPA create private right of action? | Consumer Credit Memo 90 PL_50996.docx | ROSS-003315014-ROSS-003315015 | Condensed, SA 0.79 | 0.79 | 0 | | | 1 | |
| 16687 | Brown v. Martin, 863 F. Supp. 1377 | 172H v1584 | The structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C. • 2603... | Amorphous goals of Real Estate Settlement Procedures Act (RESPA) of curbing abusive settlement practices in real estate industry did not translate into legislative intent to create private right of action to vindicate those goals... Real Estate Settlement Procedures Act of 1974, § 4, as amended, 12 U.S.C.A. § 2603 et seq. | Does RESPA create private right of action? | 03_0965.docx | LEGALEASE-00150738-LEGALEASE-00150739 | Condensed, SA, Sub 0.18 | 0.18 | 0 | | | 1 | |
| 16688 | Boyd v. Lane, 869 S.W.2d 105 | 302v53Q1 | An express contract and an implied contract may be pleaded in the alternative without the pleading being struck for insufficiency... | Express contract and implied contract may be pleaded in the alternative without the pleading being struck for insufficiency. | Can an express contract and an implied contract be pleaded in the alternative? | Pleading - Memo 489 - RMW_50640.docx | ROSS-003296429-ROSS-003296440 | Condensed, SA 0.87 | 0.87 | 0 | 1 | | 1 | |

2939

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16689 | Stamatiou v. El Greco Studios, 898 S.W.2d 571 | 302+36(1) | El Greco also argues Ms. Stamatiou's alternative pleadings in the unlawful detainer lawsuit establish the existence of a written lease as El Greco claims. Count I alleges an at-will tenancy and Count II alleges the existence of a written lease. However, "alternative fact allegations made in good faith and based on genuine doubt should not be considered admissions against interest." Rauch Lumber Co. v. Medallion Dev. Corp., 808 S.W.2d 10, 12 (Mo.App.1991). The pleader is not admitting anything other than uncertainty when stating facts in the alternative. Id. If alternative fact allegations are not based on genuine doubt, however, they may be considered admissions against interest. Id. (stating that such a holding is consistent with Rule 55.03). | Pleader is not admitting anything other than uncertainty when stating facts in alternative, but if alternative fact allegations are not based on genuine doubt, they may be considered admissions against interest. | "Is the pleader admitting anything other than uncertainty, when stating facts in the alternative?" | 023656.docx | LEGALEASE-00150290-LEGALEASE-00150291 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 16690 | Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP, 68 A.3d 697 | 307A+622 | To determine whether a complaint is legally sufficient, we look to Super. Ct. Civ. R. 8(a), which "sets forth the minimum requirements for pleading a claim for relief." Bolton v. Bernabei & Katz, PLLC, 954 A.2d 953, 963 (D.C.2008) (internal quotation marks omitted). "All that is required when we consider the sufficiency of the complaint is "a short and plain statement of the claim showing that the pleader is entitled to relief." " In re Curseen, supra, 890 A.2d at 193"94 (quoting Super. Ct. Civ. R. 8(a)(2)). Nevertheless, a complaint must tender more than " "naked assertion[s]" devoid of "further factual enhancement." " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also Potomac Dev. Corp. v. District of Columbia, 28 A.3d 531, 544 & n. 4 (D.C.2011) (adopting the plausibility standard articulated in Twombly and Iqbal (citing Mazza v. Housecraft, LLC, 18 A.3d 786 (D.C.), vacated as moot, 22 A.3d 820 (D.C.2011) (per curiam))). That is, "factual allegations must be enough to raise a right to relief above the speculative level." Clampitt v. Am. Univ., 957 A.2d 23, 29 (D.C.2008) (brackets omitted) (quoting Twombly, supra, 550 U.S. at 555, 127 S.Ct. 1955). Ultimately, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Potomac Dev. Corp., supra, 28 A.3d at 544 (citations and internal quotation marks omitted). | A complaint must tender more than naked assertions devoid of further factual enhancement; in other words, factual allegations must be enough to raise a right to relief above the speculative level. Civil Rule 8(a)(2). | Should a complaint tender more than naked assertions devoid of further factual enhancement? | 036668.docx | LEGALEASE-00150129-LEGALEASE-00150130 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 16691 | Otte v. Edwards, 370 S.W.3d 898 | 307A+679 | We review a trial court's decision to grant a motion to dismiss de novo. Coons v. Berry, 304 S.W.3d 215, 217 (Mo.App. W.D.2009). When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we apply the following standard of review: A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. Id., quoting State ex rel. Henley v. Bickel, 285 S.W.3d 327, 329 (Mo.banc 2009). "In order to avoid dismissal, the petition must invoke "substantive principles of law entitling plaintiff to relief and ... ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial." " Coons, 304 S.W.3d at 217"18, quoting Henley, 285 S.W.3d at 329"30. | When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court of Appeals applies the following standard of review: A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition; it assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom; and no attempt is made to weigh any facts alleged as to whether they are credible or persuasive, instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. | "In order to avoid dismissal for failure to state a cause of action, should a petition invoke substantive principles of law entitling plaintiff to relief?" | Pretrial Procedure - Memo # 8328 - C - KI_58841.docx | ROSS-003294591-ROSS-003294592 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 16692 | Ingels v. Riley, 5 Cal. 2d 154 | 371+2001 | It is impossible to lay down any positive rule by means of which the character of any given tax may be ascertained. In each case the character of the given tax must be ascertained by its incidents and from the natural and legal effect of the language employed in the statute. Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638; In re Application of Schuler, 167 Cal. 282, 139 P. 685, Ann.Cas.1915C, 706. | Character of tax must be ascertained by its incidents and from natural and legal effect of language employed in taxing statute. | How should the character of tax be ascertained? | 045972.docx | LEGALEASE-00150212-LEGALEASE-00150213 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 16693 | Dep't of Nat. Res. of State of Wash. v. Marr, 54 Wash. App. 589 | 411+6 | The FPA regulates forest practices on public and private forest lands. The legislative findings which describe the purpose of the FPA show that the Legislature's intent in enacting the FPA was to foster the commercial timber industry while protecting the environment. RCW 76.09.010. Consistent with the underlying policy of protecting the environment, the Legislature gave the FPA broad application by broadly defining forest land:"Forest land" shall mean all land which is capable of supporting a merchantable stand of timber and is not being actively used for a use which is incompatible with timber growing.RCW 76.09.020(6). | Legislature's intent in enacting the Forest Practices Act was to foster the commercial timber industry while protecting the environment. West's RCWA 76.09.010. | What is the purpose of Forest Practices Act (FPA)? | 047573.docx | LEGALEASE-00150540-LEGALEASE-00150541 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16694 | Stoltz v. Aurora Loan Servs., 194 So. 3d 1097 | 83E+426 | At the trial, the second servicer attempted to meet this burden by offering a note bearing an undated indorsement in blank. An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. Focht v. Wells Fargo Bank, N.A., 124 So.3d 308, 310 (Fla. 2d DCA 2013). Because the indorsement in this case was undated and was not attached to the original complaint, however, it was insufficient to prove that the first servicer held the note at the inception of the case absent additional evidence that the first servicer actually possessed the note at the inception of the case. See Sorrell v. U.S. Bank Nat'l Ass'n, """ So.3d """", 41 Fla. L. Weekly D847, 2016 WL 1360758 (Fla. 2d DCA Apr. 6, 2016). The only additional evidence the second servicer presented was the testimony of its representative. That testimony established at most that the first servicer was in fact servicing the mortgage when it filed suit, not that the first servicer held the note when it filed suit. For that reason, the second servicer failed to carry its burden of proving standing at inception, and the borrower's motion for involuntary dismissal, made at the close of the second servicer's case at trial, should have been granted. See Russell, 163 So.3d at 643; May v. PHH Mortg. Corp., 150 So.3d 247, 249 (Fla. 2d DCA 2014). | An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. | What is sufficient to prove that the person in possession of the note is its holder? | Bills and Notes- Memo 1077- ANM_59394.docx | ROSS-003320199-ROSS-003320200 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 16695 | Bank of Indian Territory v. First Nat. Bank, 109 Mo. App. 665 | 83E+429 | An indorsement of a bill for collection is not a transfer of the title of the instrument to the indorsee, but merely constitutes him the general agent of the indorser to present the paper and receive payment and remit the proceeds. Eaton & Gilbert on Com'l Paper, p. 329. As a rule, the title of a negotiable instrument passes by an ordinary indorsement, whether special or general. And if the indorsee holds the instrument merely as an agent, the agency may be annulled at the pleasure of the indorser. The indorsement of plaintiff, "to pay to any bank or banker or order," was not such an indorsement as to pass the title to the bill. It merely authorized any bank or banker into whose hands it might come to collect and remit the proceeds. In other words, it was only authority to collect- therefore a restrictive and not an unconditional indorsement passing the title. We think this is clear. The title remained in the plaintiff, and no subsequent indorsements could affect such title. | An indorsement on a draft by a bank to whom it is made payable as follows, "Pay to any bank or banker or order," is an indorsement for collection, and not a transfer of the title of the draft. | "Is pay to any bank or banker an indorsement for collection and that such an indorsement, under the general rule did not transfer title?" | 010790.docx | LEGALEASE-00151367-LEGALEASE-00151368 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 16696 | Gibson v. Spikes, 143 Ark. 270 | 200+121 | It is next insisted that the Legislature had no power to validate and confirm the assessments which had theretofore been made by the commissioners. Unless the assessment was arbitrary, the Legislature had the power to confirm and validate it. The Legislature had the power in the first instance to have levied the assessment subject only to the right of the landowner to have an arbitrary abuse of that power reviewed by the courts, and it can therefore adopt as correct the assessment made by the commissioners as a reassessment by the Legislature. Coffman v. St. Francis Drainage District, 83 Ark. 54, 103 S. W. 179, and Davies v. Chicot County Drainage Dist., 112 Ark. 357, 166 S. W. 170. | The Legislature has the power to levy road improvement assessments subject only to the right of the owner to have an arbitrary abuse of that power reversed by the courts. | Are the assessments levied by the legislature subjected to the rights of the landowner? | 019160.docx | LEGALEASE-00151006-LEGALEASE-00151007 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 16697 | Matthews v. Simmons, 589 S.W.2d 156 | 302+20 | Section 11.08 of the Family Code provides that the petition in any suit affecting the parent-child relationship must include the statutory grounds on which the request is made. A petition is a recital of facts which give rise to a cause of action. De La Garza v. Ryals, 239 S.W.2d 854, 856 (Tex.Civ.App. Fort Worth 1951, writ ref'd n. r. e.). This is necessary to inform the defendant of what he is called upon to answer and enables him to prepare his defense. Lewis v. Hatton, 86 Tex. 533, 26 S.W. 50, 51 (1894); Rules 45 and 47, Tex.R.Civ.P. The appellee has complied with these requirements concerning her petition. Pleadings can be in the alternative, and a petition using the term "and/or" was not too indefinite to state a claim upon which relief could be granted. Texas Van Lines v. Templeton, 305 S.W.2d 646, 648 (Tex.Civ.App. Dallas 1957, writ ref'd n. r. e.); Albright v. Long, 448 S.W.2d 564, 566 (Tex.Civ.App. Amarillo 1969, no writ). | Pleadings can be in the alternative, and a petition using the term "and/or" is not too indefinite to state a claim upon which relief can be granted. | Can pleadings be in the alternative? | 023674.docx | LEGALEASE-00151323-LEGALEASE-00151324 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16698 | Mechanics' Bank of Alexandria v. Bank of Columbia, 18 U.S. 326 | 308+92(1) | It is by no means true, as was contended in argument, that the acts of agents derive their validity from professing, on the face of them, to have been done in the exercise of their agency. In the more solemn exercise of derivative powers, as applied to the execution of instruments known to the common law, rules of form have been prescribed. But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1. That the act was done in the exercise, and, 2. Within the limits of the powers delegated. These facts are necessarily inquirable into by a Court and jury; and this inquiry is not confined to written instruments, (to which alone the principle contended for couldapply,) but to any act with, or without writing, within the scope of the power or confidence reposed in the agent; as, for instance, in the case of money credited in the books ofateller, or proved to have been deposited with him, though he omits to credit it. | The liability of the principal depends on whether the act of his agent was done in the exercise and within the limits of the powers delegated. The profession on their face that an agent's acts were in the exercise of his agency does not give them their validity. | What does the liability of the principal depend on? | Principal and Agent - Memo 165 - KC_59447.docx | ROSS-003281671-ROSS-003281672 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 16699 | Kasson v. Noltner, 43 Wis. 646 | 308+92(1) | The rule of law which controls the decision of this case is, that "a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to the agent his authority." This rule, says Professor Parsons, may be called the foundation of the law of agency. 1 Pars. on Con., 44. And Judge Story, in his commentaries on the law of agency, lays down the same rule more elaborately, and says it is founded in the maxim of natural justice, that he who has, although innocently, enabled any person to do an act which might be injurious to himself or to another innocent party, shall himself suffer the injury, rather than the innocent party who has placed confidence in him. " 127. | A principal is responsible for the act of his agent when he has either given the agent authority to do the act, or justified the party dealing with the agent in believing that the latter had such authority. | When is a principal responsible for the acts of the agent? | Principal and Agent - Memo 186 - KC_59467.docx | ROSS-003296542-ROSS-003296543 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16700 | In re State of Calcasieu, 479 Mich. 389 | 30(k+3)(1) | It is a longstanding legal principle that a duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted. See, e.g., Cravens v. Sargent Mfg. Co., 141 Mich. 87, 91, 104 N.W. 377 (1905); see also Restatement 1st of Agency §140, and commentary, the agent stands in the shoes of the principal. | A duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted. | Does the agent have the power to act and bind the principal to the same extent as if the principal acted? | 041472.docx | LEGAL045E 00151329-LEGAL045E 00151330 | Condensed, SA | 0.8 | 0 | | 1 | 1 | |
| 16701 | Matter of Penn Compania Naviera S.A., 649 F. Supp. 789 | 25T+171 | Even if an original arbitration clause is not broad enough to cover a particular claim, the parties may "extend by their conduct the subject matter of the agreement which would cover any defect in the arbitration clause." If otherwise, 39 U.S.C. § 2, 387 (1993); 387 F.2d 1, 376, quoted in Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942); see Kulukundis, 126 F.2d at 989. Accord Kamakazi Music Corp. v. Robbins Music Corp., 684 F.2d 228, 231 (2d Cir. 1982). Thus, "the parties' intentions to arbitrate [can be determined not only by the initial arbitration clause, but also by the text of the submission agreement." Island Creek Coal Sales Co. v. Indiana-Kentucky Elec. Corp., 366 F. Supp. 993, 999 (S.D.N.Y. 1973); Accord Textile Workers Union of America v. American Thread Co., 291 F.2d 894, 897 (1st Cir. 1961). | Parties' intention to arbitrate can be determined not only by initial arbitration clause, but also by text of submission agreement. | How do courts determine the parties' intention to arbitrate? | 007951.docx | LEGAL045E 00151414-LEGAL045E 00151415 | Condensed, SA | 0.91 | 0 | | 1 | | |
| 16702 | Am. Sugar Ref. Co. v. The Anaconda, 138 F.2d 765 | 25T+176 | In consonance with that rule, the clause conferring jurisdiction should be given the effect, and that once, of providing that the parties can not, but they were not obliged to resort to arbitration without first proceeding by seizure as provided for in their agreement. An arbitration agreement, binding the parties not to invoke the provisions of law, is as a condition of arbitration, the agreement would be valid, until it withered, and, those parties had completely executed the agreement to arbitrate, it might well be that the waiver of proceedings under the law would have been enforced. But an arbitration agreement can be repudiated, waived or abandoned by one or both of the parties to it. A appellant's act, in electing to sue without advance, and declaring on the original, was an attempted repudiation of the agreement, and a while appellee, if it elected to hold its suit, had the right, to plead the agreement to arbitrate as a defense, it did not do so, but went with the suit, instead, arbitration proceeding were going forward, the agreement did not oust the jurisdiction of the court to entertain the suit. It did not waive the right to have that dismissed. The judgment dismissing the suit was wrong. It is reversed, and the cause is remanded for further and not inconsistent proceedings. | An arbitration agreement may be repudiated, waived, or abandoned by one or both of the parties to it. | "Can the parties to an arbitration agreement repudiate, waive or abandon it?" | 007978.docx | LEGAL045E 00151441-LEGAL045E 00151442 | Condensed, SA | 0.92 | 0 | | 1 | | |
| 16703 | Com. v. Wheeler, 205 Mass. 384 | 179+1 | The offer to prove that the milk was without adulteration, and just as it came from properly fed cows in sound health, is governed by the same considerations. As was said in the opinion in Ferris v. Weeks, 401, 13 Am. St. 595, 10 Am. St. Rep. 619: "The statute tends to discourage the supplying of milk below a certain standard of richness, whatever may be the explanation of the deficiency. The difficulty of guarding against the adulteration of milk may have influenced the Legislature in fixing a standard of richness. Practically it makes no difference whether the milk is adulterated or comes naturally from the cow, or whether it is made worse by giving her such food as will produce milk below a uniform standard. Such a regulation, regarded by the Legislature as excessive, arises from the nature of a particular animal or a particular breed of cattle. The sale of such milk is unexpectedly unknown for a mere question of its value, in a fraud which the statute was designed to suppress. It is a valid exercise by the legislature of the police power in guarding the public health, and as such is constitutional. "Similar principles have been applied in the case of oleomargarine and of other articles, which in themselves, or sold with the adulteration of the milk may have been valuable. Com. v. Huntley, 156 Mass. 236, 30 N.E. 1127, 15 L. R. A. 839; Powell v. Pennsylvania, 127 U.S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253. | Rev Laws, c. 56, 56, 57, as amended by St. 1908, c. 643, providing punishment for selling or having for sale milk below a certain standard of quality, is a proper exercise of the police power for the prevention of fraud and the protection of the public health. | Will the quality of milk depend on food that cows are fed? | Adulteration-Memo-61-_1307-KGzCejlvm8NdYPI-/000000166 KDMbMC-ChptlD.docx | ROSS-000002145-ROSS-000000164 | Condensed, SA, Sub | 0.92 | 0 | | 1 | 1 | |
| 16704 | Hurt's Ex'r v. Hall, 37 Ala. 702 | 8.30(+10 | The note was made payable in Louisiana, and, being silent in respect to the place of payment, was, by legal intendment, payable there (Story on Promissory Notes, 1 John. 53; Story on Conflict of Laws, ª 291; Scofield v. Day, 20 John. 102; Peck v. Mayo, 14 Vermont, 33. It was an admitted fact in the case, that the legal rate of interest in Louisiana is five per cent. It is clear, therefore, that if we look alone to the note itself, in connection with the admitted law of Louisiana, which is silently incorporated into the case of its terms, the defendant was only bound to pay interest at the rate of five per cent., and on that hypothesis, the payments proved satisfied the note. | A note executed in one state, and made payable in another, must bear interest according to the law of the latter state when no rate of interest is expressed. | Which law governs the interest payable on a note? | 009801.docx | LEGAL045E 00151422-LEGAL045E 00151423 | Condensed, SA, Sub 0.78 | | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 14705 | Cottonwood Store, Inc. & Supply Co. v. Bender, 60 Ohio App. 3d 91 | 172H+1349 | Pursuant to Section 1306 of the Truth In Lending Act, effective May 29, 1968, which gave the Federal Reserve Board (Fed) authority to prescribe regulations to carry out the purposes of this sub-chapter." the Board provided that a consumer shall have the right to rescind a credit transaction within three days from the date of its execution where a security interest is or will be retained or acquired in a residence that is used or expected to be used as the principal residence of the consumer. The terms "security interest" and "security" are defined to mean "any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to mortgages, deeds of trust... and similar liens." The validity of these regulations have been judicially upheld on several occasions. See N.C. Freed Co. v. Board of Governors (C.A.2, 1973), 473 F.2d 1210; Gardner and North Roofing and Siding Corp. v. Board of Governors (C.A.D.C.1971), 464 F.2d 838; Dziegiel v. County Savings and Loan Co. (C.A.6, Ohio, 1973), 479 F.Supp. 776; Garzu v. Interstate National Bank (D.C.Ark. 1972), 411 F. Supp. 726; mobile Lumber Co. v. Shield (C.A.8, 1974), 510 F.2d 298. | All possible security interests which are retained or could be acquired in a consumer's residence in any consumer credit transaction must be clearly explained to consumer in separate statement in order to comply with requirement of "meaningful disclosure" under federal Truth In Lending Act. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | Does the consumer have the right to rescind credit transaction which a security interest is or will be retained or acquired in a consumer's home? | 01 B876.docx | LEGAL04E-00155154-LEGAL04E-00155155 | Condensed, SA, Sub 0.69 | | 0 | 1 | 1 | 1 | 1 |
| 14706 | Sims v. First Consumers Nat. Bank, 303 A.D.2d 288 | 95D+18.19 | Plaintiffs pleading does not seek relief for a violation of 23 V.S.A.64, damages are sought; instead, on three separate causes of action arising from alleged deceptive practices, contract breaches and breaches of the duty of good faith and fair dealing. The standard against which defendants pre-answer motion should have been decided is whether or not, "accepting the material allegations as true, and giving plaintiff the benefit of every reasonable inference to be oretold, the complaint sets forth all particulars that constitute a cognizable claim..." (citation omitted) (see Kralic v. Helmsley, 294 A.D.2d 234, 236; 743 N.Y.S.2d 15). The gist of plaintiffs' deceptive practices claim is that the hypothecation and location of the fee disclosures, combined with high pressure advertising, amounted to consumer conduct that was deceptive or misleading in a material way, causing plaintiff's damages. To establish a cause of a claim that a defendant's conduct was deceptive or misleading is a question of fact. The applicable legal standard applies (which) the disclosure statement must be analyzed... the standard by which the disclosure statement must be analyzed is an provided by law (citation omitted), which is derived from federal Truth in Lending Act (15 CFR 226.5, Sage v. First USA Bank, 69 F.Supp.2d 627, 643; see also 209 U.S. Reg. 4284). Plaintiff alleges that on three separate state disclosures be "clearly and conspicuously in setting" and, considering type size and placement, the relevant section of fee(s) (and) undermine a V. Chief Financial Group, 1975 Supp.2d 551) Here, plaintiffs allege, and should be offered an opportunity to prove through discovery, that an average reader could not readily locate the disclosures within the material provided, that such disclosures were combined with high-pressure advertising in a uniquely vulnerable group of consumers, amounting to consumer conduct which was deceptive or misleading in a material way to support a claim. | Regulation Z, which is derived from the federal Truth in Lending Act and which requires that consumer disclosures be clearly and conspicuously in writing, does not preempt state consumer protection law. Truth In Lending Act, § 1.5 102 et seq., 15 U.S.C.A. § 1601 et seq.; 12 C.F.R. § 226.5. | Is Regulation Z derived from the federal Truth In Lending Act? | 03 B880.docx | LEGAL04E-00155388-LEGAL04E-00155389 | Condensed, SA, Sub 0.89 | | 0 | 1 | 1 | 1 | 1 |
| 14707 | Chavero v. Mraz, 2014 IL App (1st) 133081 | 260+79.1 | An established public highway does not lose its character as a public road when it is no longer used by the authorities in the manner prescribed by statute or abandoned. Harris, Town of Shaffer, 348 Il.App.3d 711, 715, 284 Il.Dec. 699, 810 N.E.2d 249 (2004). Nonuse of the road alone is insufficient to establish abandonment; nonuse by the public. Abandonment will be found only where the public has escaped the legal right to another road or where the necessity for the abandoned road has ceased to exist. For the presumed necessity for the road to cease to exist some circumstance must appear. The additional burden imposed on another road or route on an indispensably public necessity that the public would treat abandonment relocating replacing. | "Abandonment" of a road will be found only where the public has acquired the legal right to another road, or where the necessity for another road has ceased to exist. | How can the abandonment of a road be found? | Highway - Memo 204 RK_56593.docx | RODS-03001995 1-RODS-03030954 | Condensed, SA, Sub 0.77 | | 0 | 1 | 1 | 1 | 1 |
| 14708 | Burke City v. Ashin, 291 Ga. 697 | 260+79.1 | Before Askin filed the petition for a writ of mandamus, the Burke County Board of Commissioners adopted a resolution to formally abandon the road. Therefore, France Avenue, and Askin's petition requested an order setting aside the purported abandonment. However, prior to the issuance of the trial court's order, the Board passed a resolution revoking the purported abandonment, and the trial court correctly concluded that the matter was moot. The trial court was also correct in refusing to require the County from abandoning the road, the County's discretionary authority to abandon a portion of a road would not be limited to review of any such exercise of that discretion. Scarborough v. Hunter, 288 Ga. 687, 689^990, 706 S.E.2d 650 (2011). | County had discretion to abandon road and trial court's role was limited to review of any such exercise of that discretion. | Does a County have discretion to abandon roads? | Highway - Memo 201 RK_56594.docx | RODS-03002765 9-RODS-03029770 | Condensed, SA, Sub 0.84 | | 0 | 1 | 1 | 1 | 1 |
| 14709 | Fields v. Webber, 132 Md. 236 | 260+172 | Disobedience of the rule of the road is always material, and often important evidence tending, though not conclusively, to show negligence between which an injury them might, or might not, be on the proof; casual connection. The presence of a traffic statute is a mere item calling for consideration. The violation of a traffic regulation is not necessarily conclusive on the subject of negligence, is only a circumstance for the consideration of fact. Hanly v. Kendall 38 Md. 59, 56 A. 209, 63 L. R. A. 668. Driving to the left of middle of road which bar drunk discloses undisturbed undistructed in not necessarily evidence of negligence. O'Abla v. Thomas, 233 Mo. 246, 226 S. 263, N. A. 272. Nor driver in violation of negligence for a driver to turn to the left. Skeen v. Graham, 114 Me. 229, 95 SO, Id., 114 Me. 202; 100 A. 938. | Driving to left of middle of road which bar obstruction undisturbed is not necessarily evidence of negligence. Rev 31.93811, c 31.92, c 70.7a. | Is driving on the left negligent? | Highway - Memo 206 RK_56603.docx | RODS-03027916-RODS-03027917 4 | Condensed, SA, Sub 0.8 | | 0 | 1 | 1 | 1 | 1 |

Appendix D

2943

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16710 | M.S.P.C. v. U.S. Cust. and Border Prot., 60 F. Supp. 3d 1156 | 24+397 | Petitioner acknowledges in her writ of habeas corpus and complaint that she is subject to an expedited removal order pursuant to 8 U.S.C. § 1225(b)(1). "The scope of judicial review of orders of removal under ... 1225(b)(1) is extremely narrow." Dep't ... [Mokdad, 509 F.3d 1278, 1281 (10th Cir.2007). See also Lorenzo v. Mukasey, 508 F.3d (10th Cir.2007) ("the avenues for review provided for ... limited...")] Despite the very narrow restrictions on jurisdiction set forth in Section 1252(a), Petitioner argues that Section 1252(e)(2)(B)'s jurisdiction to review "whether the petitioner was ordered removed" includes the issue of whether Petitioner should have been given an expedited removal order in the first place. | The scope of judicial review of expedited orders of removal is extremely narrow. Immigration and Nationality Act, § 235(b)(1), 8 U.S.C.A. § 1225(b)(1). | Is the scope of judicial review of orders of removal narrow? | "Aliens, Immigration and Citizenship - Memo 43 - HC_60129.docx" | ROSS-003182794-ROSS-003182795 | Condensed, SA, Sub 0.8 | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 16711 | Bank Josephine v. Conn, 599 S.W.2d 773 | 34H+240 | Although such a question appears to be one of first impression in this jurisdiction, other jurisdictions have held that the secured party, rather than the debtor, should have the burden of proving that § 9a, when ... | In action for deficiency judgment secured party, rather than debtor, had burden of proving that it acted with commercial reasonableness in holding and disposition of collateral. KRS 355.9-504. | Who has the burden to prove the commercial reasonableness of an act under a contract? | 017277.docx | LEGALEASE-00132315-LEGALEASE-00132316 | Condensed, SA, Sub 0.35 | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 16712 | Kagin v. Wattendorff, Co., 294 Minn. 508 | 38+31 | A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim. Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N.E. 154, per... | Valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim. | Is it compulsory to make an assignment? | 010280.docx | LEGALEASE-00152351-LEGALEASE-00152352 | Condensed, SA 0.42 | 0.42 | 0 | 1 | 0 | 1 | 1 |
| 16713 | Bishoff v. Ford, 345 Pa. 539 | 305+190(1) | On payment of the note and not until then the surety is entitled to maintain the common law action of indebitatus assumpsit. 21 R.C.L. 1097. As expressed in Brown's Negotiable Instruments Law, 4th Ed., p. 292: "The payee accommodation indorser of a note may buy the note of the holder and sue the maker thereon. Also, if he has been forced to pay the note, he has a right of action against the maker on an implied contract of indemnity; any may sue thereon within six years after the payment, although an action on the note may be barred, because more than six years have elapsed since its maturity. | On payment of note by surety, and not until such payment, surety may maintain common law action of "indebitatus assumpsit". | When can a surety maintain an action of indebitatus assumpsit? | 010356.docx | LEGALEASE-00152600-LEGALEASE-00152601 | Condensed, SA, Sub 0.79 | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 16714 | Golden Motor Co. v. Johnston, 155 Miss. 328 | 83I+418 | Nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery. Indorsement on nonnegotiable instrument and delivery has legal effect to transfer absolutely all right, title, and interest of indorser therein, but it does not as to paper or maker of paper operate to convert it into negotiable instrument. Where plaintiff indorsed certificate of guaranteed claim against assets of bank and delivered the certificate assigned to another, and thus gave him indicia of absolute ownership to enable him to use it as collateral for security of loan, assignment by him vested in him a good title, as against all ... who in good faith purchased paper against indorser (Chancery Action by Mrs. ... and others. From the decree, defendants appeal. Reversed and ... | Nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery. | Can non-negotiable instruments be assigned by indorsement and delivery? | 010369.docx | LEGALEASE-00152453-LEGALEASE-00152454 | Condensed, SA 0.88 | 0.88 | 0 | 1 | 0 | 1 | 1 |
| 16715 | Chase Plaza Condo. Ass'n v. JPMorgan Chase Bank, N.A., 98 A.3d 166 | 83I+459 | Chase Plaza and Darcy argue that JPMorgan lacks an interest in the unit sufficient to confer standing on JPMorgan. We disagree. JPMorgan alleges, and Chase Plaza and Darcy do not dispute, that JPMorgan has physical possession of the original promissory note, which is a negotiable instrument indorsed in blank. "An indorsement in blank is essentially a stamp that indorses an instrument without specially indorsing it to a specific party. Usually it makes that instrument payable to the bearer and transfers with illegal title to security attached to the instrument." Lasko v. Prendy, 794 F.Supp.2d 254, 256 n. 3 (D.D.C.2011). Under District of Columbia law, the holder of a negotiable instrument indorsed in blank is normally entitled to enforce the instrument, including through foreclosure proceedings. See D.C.Code § 28:3-301.102(a)(9) (holder of negotiable instrument may enforce instrument); 7:2018(4) (2012) (bearer is person in possession of instrument); see also D.C. Official Code, 28:1-201.302 (2012) (finds the negotiable instrument in blank is payable to bearer and may be negotiated by transfer of possession alone); Dist. of Columbia v. BMC Home Loans Servicing, L.P., 31 A.3d 899, 902, 907 (D.C. 2011) ("[A]s the holder of the note ... JPMorgan complys could properly enforce its provisions" through foreclosure and sale proceedings. We therefore conclude that JPMorgan has standing to seek to set aside the foreclosure sale. | An endorsement in blank usually makes an instrument payable to the bearer and transfers with it legal title to security attached to the instrument. D.C. Official Code, 2001 § 28:3-205, 28:3-301. | What is indorsement in blank or blank indorsement? | Bills and Notes-Memo 1168-AMK_59667.docx | ROSS-003291953-ROSS-003291954 | Condensed, SA, Sub 0.88 | 0.88 | 0 | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 14716 | Beve v. Hibernia Bank, 499 F.2d 635 | 172H+1346 | Bank's use of "Rule of 78" for computing finance charge rebates, instead of the actuarial method, did not constitute a prepayment penalty charge required to be disclosed: Truth-in-Lending Act, § 128, 15 U.S.C.A. § 1638. | Bona additionally contends that use of the Rule of 78's for computing finance charge rebates, instead of the actuarial method, constitutes a prepayment penalty charge under 12 C.F.R. § 226.8(b)(6) (see note 2 supra) because the "effective annual percentage rate" varies from the stated rate of 7.51%, depending on the month of prepayment As we have mentioned, there is a slight difference in the amount of the rebate under the Rule of 78's from that of the actuarial method. Although the district court did not rule on this issue, which was stayed in Bona's complaint, we reach the issue here because it is contested... | Does a rebate calculated according to the Rule of 78 constitute a penalty charge for prepayment that must be disclosed? | Consumer Credit-Memo 18-06_4Q645.docx | ROSS-003130330 ROSS-003131004 | Condensed, SA, Sub 0.86 | | 1 | | 1 | 1 | |
| 14717 | Rodriguez v. Members Mortg. Co., 323 F. Supp. 2d 202 | 172H+1521 | The disclosure requirements of Federal Truth in Lending Act (TILA) and its implementing Regulation Z must be strictly applied. Consumer Credit Protection Act, §§ 102 et seq.; 15 U.S.C.A. § 1601 et seq. | In addition to claims brought under TILA, the Plaintiffs also allege that Members and Phycoush violated the disclosure requirements of CCCPA, Mass. Gen. Laws 184 et al... | Does TILA and CCCDA require a separate analysis? | Consumer Credit- Memo 93-58_4Q171.docx | ROSS-003089443 ROSS-003089442 | Condensed, SA, Sub 0.54 | | 1 | | 1 | 1 | |
| 14718 | Phipps v. United States, 116 F.4d Cl. 674 | 200+79.1 | Under Iowa law, in order to prove abandonment of a highway, actual acts shown to be done in order to prove abandonment must be shown. | Under Iowa law, "an established highway may be abandoned by the public and its rights therein lost." Sioux City v. Johnson, 165 N.W.2d 762... | What needs to be shown in order to prove abandonment? | Highways-Memo 239 - RK_4Q182.docx | ROSS-003089419 ROSS-003089440 | SA, Sub | 0.88 | | | | 1 | |
| 14719 | Stephens v. Dunn, 453 S.W.3d 241 | 30+1281 | When reviewing the denial of a motion to dismiss for failure to state a claim, the appellate court reviews the conduct of the agent with respect to the matters entrusted to him. Restatement (Second) of Agency § 14. | We review dismissals for failure to state a claim de novo. Hess v. Chase Manhattan Bank, 220 S.W.3d 758 (Mo. banc 2007). "[I]n reviewing the sufficiency of a petition to survive a motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." Bosch v. St. Louis Healthcare Network, 41 S.W.3d 462, 464 (Mo. banc 2001) (quoting Nazeri v. Missouri Valley College, 860 S.W.2d 303, 306 (Mo. banc 1993))... | When reviewing a motion to dismiss for failure to state a cause of action assume that all of plaintiff's averments are true? | 037529.docx | LEGALEASE-00152124-LEGALEASE-00152125 | Condensed, SA, Sub 0.74 | | | | | 1 | |
| 14720 | St. Clair Intermediate Sch. Dist v. Intermediate Educ. Ass'n/ Mich Educ. Ass'n, 581 N.W.2d 560 | 308+1 | Most fundamental to the existence of an agency relationship is the right to control the conduct of the agent. Capitol City Lodge No. 141 FOP v. Meridian Twp., 90 Mich.App. 533, 541, 282 N.W.2d 383 (1979), with respect to persons employed under his control; AC'O'v. NLRB, 332 U.S. App DC 241, 245-54 F.3d 205 (1995, citing 1 Restatement, Second, Agency, § 14, p. 60, and cases applying this principle. | Most fundamental to the existence of an agency relationship is the right to control the conduct of the agent... | Can a principal control the conduct of an agent? | 043305.docx | LEGALEASE-00153325-LEGALEASE-00153326 | Condensed, SA, Sub 0.57 | | | | | 1 | |
| 14721 | McHenry v. Bowman, 274 Ill. App. 487 | 308+97 | A power of attorney should be construed as to limit the power to the clear and obvious intent of agency theories created. Lumber Co. v. Wolberg, 259 Ill. App. 123. The circuit court was correct in holding that the instrument did not be had to hold the intent of the trust deed in question. | A power of attorney should be construed so as to limit the power to the clear and obvious intent of the agency theories created... | Should a Power of Attorney be strictly limited to the intent of parties? | 042315.docx | LEGALEASE-00152291-LEGALEASE-00152292 | Condensed, SA, Sub 0.65 | | | | | 1 | |

2945

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16722 | Horton v. Fulton, 130 Ga. 466 | 21+7 | The plaintiffs, at the intersection in a hearing where objections of the defendants, were offered and not... | On an interlocutory hearing for injunction, affidavits not "entitled in the cause," and which make no reference to the case or the court where the case is pending, are not admissible in evidence. | What is the consequence of affidavits not entitled in the cause? | Affidavits - Memo 13 - _IAVIP\P\VVOpAxBmD 0639pref_N\R Gidi.doc x | ROS5-00000203 ROS5-00000204 | Condensed, SA | 0.77 | 0 | 1 | | 1 | |
| 16723 | Proctor v. Home Tr. Co., 221 Mo. App. 577 | 83 I+731(1) | A point is attempted to be made of the fact that, at the time the Agees Smith note was left with the bank for collection... | Indorsement is unnecessary to convey title or enable holder to sue on note in his own name as real party in interest. | Is a written assignment necessary for the holder to sue in his own name? | Bills and Notes - Memo 84 I - PK_60294.docx | ROS5-00219381 ROS5-00219382 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 16724 | Jacobsen v. Becker, 699 P.2d 1208 | 8.30I+10 | [W]here a contract is entered into and is to be performed in a foreign jurisdiction the law of that jurisdiction should be applied... | Legal effect of promissory notes is governed by the law of the place where they are executed and delivered. | Are promissory notes governed by the law of the place where they are executed? | Bills and Notes - Memo 898 - PK_60087.docx | ROS5-00326284 ROS5-00326287 | Condensed, SA, Sub 0.72 | 0.72 | 0 | 1 | 1 | 1 | |
| 16725 | Jacobsen v. Becker, 699 P.2d 1208 | 8.30I+10 | [W]here a contract is entered into and is to be performed in a foreign jurisdiction the law of that jurisdiction should be applied... | Legal effect of promissory notes is governed by the law of the place where they are executed and delivered. | Are promissory notes governed by the law of the place where they are delivered? | Bills and Notes - Memo 898 - PK_60087.docx | ROS5-00238434 ROS5-00238442 | Condensed, Order, SA, Sub | 0.71 | 1 | 1 | 1 | 1 | |
| 16726 | Howard v. Branson, 23 La. Ann. 369 | 8.30I+10 | The defendant does not appear to have established by the evidence, but we think there is a serious error... | A note executed in one state, and made payable in another, must bear interest according to the law of the latter state when no rate of interest is payable in another state? | Which law governs interest if a note is dated in one state and payable in another state? | Bills and Notes - Memo 905 - PK_60791.docx | ROS5-00231724 ROS5-00231729 | Condensed, SA, Sub 0.67 | 0.67 | 0 | 1 | 1 | 1 | |
| 16727 | Smith v. Anderson, 70 Vt. 424 | 8.30I+10 | The court charged that whether or not the note had been paid might depend upon whether the fact of making the note's signature... | Where parties to a note, who lived in different states, did not contract with reference to the law of either state, the law of the place in which the contract was made determines the right to recover... | Which law governs the right to recover? | 009897.docx | LEGALEASE-00152649 LEGALEASE-00152650 | Condensed, SA, Sub 0.78 | 0.78 | 0 | 1 | 1 | 1 | |
| 16728 | Matter of McLeod, 158 B.R. 593 | 83 I+481 | Although endorsement of order paper normally is a prerequisite to transfer by negotiation, Parker v. Dudley, 527 So.2d 240, 242 (Fla. 5th DCA 1988)... | Although endorsement of order paper normally is prerequisite to transfer by negotiation, note can also be transferred by assignment. | Is it possible to transfer a note by assignment? | 009995.docx | LEGALEASE-00151722 LEGALEASE-00151723 | Condensed, SA, Sub | 0.55 | 0 | 1 | 0 | 1 | |
| 16729 | Demut & Kirk Co. v. Smart 172 H=193 Stein, 261 N.C. 156 | | Although the bank had a right, at any time prior to acceptance by the bank, to stop its payment, N=nW\W\ns\nms, 239 C. 463... | Drawer of check has right at any time prior to acceptance by bank, to stop payment of check. | Does a drawer of a check has a right to stop its payment? | Bills and notes memo 82 R_6073b.docx | LEGALEASE-00151727 LEGALEASE-00152817 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,344) | Substantive Additions (14,873) | Selection & Arrangement (21,876) | Multiple Differences (9,029) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16730 | McGowan v. King, 569 F.2d 845 | 173H+1581 | We also reject King's contention that the consumer must be misled before he is entitled to enforce the liability provisions of the Act … | There was no requirement that plaintiff himself be deceived in order to sue in public interest under Truth in Lending Act; Truth in Lending Act, § 130(a) as amended 15 U.S.C.A. § 1640(a). | Is it a requirement to be deceived in order to sue in the public interest? | Consumer Credit - Memo 02 - S4_60000.doc | ROSS 000124312-ROSS-000124313 | Condensed, SA | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 16731 | Dunbar v. Cent. Missouri State Coll., 415 F.2d 1077 | 141E+990 | We agree with those courts which have held that a school has inherent authority to maintain order and its discipline students. State ex rel. Sherman v. Hyman, 180 Tenn. 99, 171 S.W.2d 822 … | School has latitude and discretion in its formulation of rules and regulations and of general standards of conduct. | What discretion does a school have in its formulation of standards of conduct? | 02.9726.docx | LEGALEASE-00152953-LEGALEASE-00152954 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | 1 |
| 16732 | Florence Cty. Sch. Dist. Four v. Carter By & Through Carter, 510 U.S. 7 | 141K+863 | Section 1401(a)(18)(A) requires that the education be "provided at public expense, under public supervision and direction," and also … | IDEA was intended to ensure that children with disabilities receive education that is both appropriate and free; Individuals with Disabilities Education Act, § 602(a)(18), as amended, 20 U.S.C.A. § 1401(a)(18). | What ensures appropriate education to children with disabilities? | Education - Memo05535 - C_ BK_60341.docx | ROSS-003282113-ROSS-003282212 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16733 | Anderson v. Nesbitt, 43 Ind. App. 703 | 28+53 | In the case C., C., C. & I. Ry. v. Wynant, supra, the court said: "The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from a fright which the object may have occasioned to horses. There must have been some fault or occasion connection between the violation of the statute and the frightening of the horses. The object, in the situation in which it was left, must have had a necessary or natural tendency to that end, accordingly, to common experience. If one wrongfully allowed his horse or other animal to be at large in the highway, in violation of a statute, and a horse of ordinary gentleness may take fright at such animal … | Owner of cows wrongfully allowing them to run at large on highway is not liable for injuries caused to horse frightened at the cows and running away, there being no special circumstance, such as presence of the cows at large during nighttime, or that they so obstructed the beaten part of highway that a horse would be frightened. | "Does an object in the highway in violation of statute, make the owner liable for damages resulting from fright which may have occasioned to horses?" | 035518.docx | LEGALEASE-00153590-LEGALEASE-00153592 | Condensed, SA, Sub | 0.83 | 1 | 1 | 1 | 1 | 1 |
| 16734 | Bolen v. Woodhams, 68 Educ. 222 | 302+24 | The first question, then, is whether the explanation was a sham. A "sham pleading" is one good in form, but false in fact. The explanation to the first false claim, the "discovery" of the defense consisted of denials. If there was a record of such a judgment as was pleaded, the explanation was false. The court found it was not. Upon sufficient evidence that is not here by bill of exceptions, and in which we must therefore presume was sufficient. | A "sham pleading" is one good in form, but false in fact? | 02700.docx | LEGALEASE-00153257-LEGALEASE-00153258 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16735 | McGuiness, 154 So. 3d 501 | 30+3284 | An order dismissing a complaint for failure to state a cause of action is reviewable de novo. | An order dismissing a complaint for failure to state a cause of action is reviewable de novo. | "Should the party moving for dismissal for failure to state a cause of action is reasonable inferences that can arise from those facts?" | Pretrial Procedure Memo #3083 - C - III.docx | LEGALEASE-00043180 LEGALEASE-00043181 | Condensed, SA | 0.9 | 0 | 1 | | 1 | |
| 16736 | Ellis v. Harland Bartholomew & Assocs., L | 307A+581 | The court can also consider the extent to which the proceedings have been drawn out... | Where there has been a clear record of delay by the plaintiff, dismissal is properly granted. | "Is a dismissal of property granted where there has been a clear record of delay by the plaintiff?" | Pretrial Procedure Memo #3720 - C - 60481.docx | ROSS-003242990-ROSS-003242991 | Condensed, SA | 0.83 | 0 | | | 1 | |
| 16737 | In re Greenfield Direct Response, 171 B.R. 848 | 308+191(1) | Under Illinois law, an agent does not own property transferred to the principal... | Under Illinois law, agent who collects money on behalf of the principal does not become owner of such money. | "Does an agent who collects money on behalf of the principal become the owner of such money?" | 041305.docx | LEGALEASE-00153163 LEGALEASE-00153164 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | | |
| 16738 | Florida Georgia Lines, Co. v. Naft Labs., 153 So. 2d 752 | 308+93 | Agency may be terminated by mutual consent... | Revocation of agency becomes operative as to agent from time he has actual notice thereof, but notice to third parties without effect revocation as to agent. | "When is revocation effective or operative?" | Principal and Agent Memo 212 - SB_62771.docx | ROSS-003388053-ROSS-003388054 | Condensed, Order, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | |
| 16739 | Quon v. O'Connell, 89 Conn. 353 | 308+99 | The "apparent authority" of an agent is to be determined by the acts of the principal and not by the acts of the agent... | The "apparent authority" of an agent is to be determined by the acts of the principal and not by the acts of the agent; the principal's liability being determined merely by what was the apparent authority of the agent, but by what authority a third person, exercising reasonable care, was justified in believing principal had conferred upon the agent. | "Can apparent authority be determined by the acts of the agent's principal?" | 041420.docx | LEGALEASE-00153692 LEGALEASE-00153693 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | | |
| 16740 | Michigan Employment Sec. Comm'n v. Patt, 4 Mich. App. 228 | 371+2001 | "Although the Legislature did not designate the contributions as a tax... | Essential characteristics of a "tax" are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority. | "What is the essential character of a tax?" | 040986.docx | LEGALEASE-00153271-LEGALEASE-00153272 | Condensed, SA | 0.55 | 0 | 1 | | 1 | |
| 16741 | State ex rel. Szabo v. Rowe, 108 Neb. 232 | 371+2001 | "Taxes are levies or acts of government, through its various agents, binding upon the inhabitants... | A tax law is a legislative enactment defining the means of every man's duty in support of public burdens, and a tax thus imposed is not founded on contract... | "What are tax laws?" | Taxation - Memo #897 - C - IL_69604.docx | ROSS-002974173-ROSS-002974174 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,073 |
| 16242 | Weaver v. Prince Georges, 37 s=2360 Ga, 281 Md. 349 | 371+2360 | The consensus of opinion appears to be that a property tax is a charge on the owner of property by reason of his ownership alone without regard to use that might be made of it... | "Property tax" is a charge on the owner of property by reason of its ownership alone without regard to use that might be made of it. | What is property tax? | Taxation - Memo # 807 C - L_Ch01.docx | ROSS000321968 ROSS-003241909 | Condensed_SA | 0.78 | 0 | 1 | 0 | 1 | |
| 16243 | Keane v. Annise Heppold Trevit Support Tr., 285 Ga. App. 155 | 31+5 | On appeal, Keane argues that his "affidavit" reached factual issues regarding whether he was entitled to setoff. We disagree. Under OCGA § 9-11-56(e), a party opposing a motion for summary judgment... | An affidavit must be sworn to in person before a notary public, or other officer empowered to administer oaths. | Is it necessary that the affiant be empowered to administer oaths? | Affidavits - Memo 52 - _15a2AVayekaxdImgl-GFxi9FuNesl.docx | ROSS000000201 ROSS-000000202 | Condensed_SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16244 | Reyes v. Arctic Maggotd Mgmt. Corp., 83 A.D.3d 47 | 31+18 | This Court has held that the absence of a translator's affidavit, required of foreign language witnesses, renders the witness's English... | Absence of translator's affidavit, required of foreign language witnesses, renders witness's English language witness's English language affidavit facially defective and inadmissible. McKinney's CPLR 2101(b). | Should a translated affidavit be accompanied by an affidavit from the translator? | Affidavits - Memo 58 - _3f4aqd9eOYgtzIdzy Mid5vstd_2N-Ng.docx | ROSS000000213 ROSS-000000214 | Condensed_SA | 0.86 | 0 | 1 | 0 | 1 | |
| 16245 | Gormans Ave, Honda Motor Co., 102 Mich. App. 113 | 226+185.1(6) | With respect to the putative affidavit of plaintiff's expert, it was unsworn and unsigned when submitted to the trial court for consideration at the hearing on defendant's motion for summary disposition... | An unsworn, unsigned affidavit may not be considered by the trial court on a motion for summary disposition. MCR 2.116(G)(10). | Can an unsigned affidavit be considered by the court? | Affidavits - Memo 85 - _1jUdihtpfAM7CPKul pHRGVHJMPKWK5.docx | ROSS000000264 ROSS-000000265 | Condensed_SA, Sub | 0.85 | 0 | 1 | 0 | 1 | |
| 16246 | Heinze v. Bank of Am., 658 F.2d 884, Popes Int'l Brokers 114, Ltd., Chute Meridian Bank, N.A., 857 F.2d 863 | 8.30/2+299 | Under Colorado law, a promissory note is a negotiable instrument that is freely assignable. No Puerto Rican court has squarely addressed the issue before this Court. We find support from Rico law Jurisdictions... | Under Colorado law, a promissory note is a negotiable instrument that is freely assignable. | Can a negotiable instrument which is freely assignable be called a note? | 009921.docx | 1EGAEILR-001547531 IEGAEAE-001547512 | SA, SA | 0 | 1 | 0 | 1 | | |
| 16247 | | 373+944 | ... No fraud in fact can be squarely addressed the issue before this Court. We find support from Rico law Jurisdictions. The vast majority of these decisions hold that a payee cannot recover from the collecting bank that pays on a forged endorsement. The reasons given in these decisions are several. First, without delivery the payee can not come into possession of the instrument and thereby acquire the status of a holder. Second, even though the payee cannot recover from the collecting bank, he retains his right to sue the drawer on the obligation underlying the check. Third, when the payee does not receive the check, the forged endorsement is probably the result of the drawer's negligence, an issue not easily litigated in a suit between the payee and the collecting bank. | Can a payee recover from the collecting bank on a forged endorsement if the check was never delivered to the payee? | Bills and Notes - Memo 859 - W_$2.804.docx | ROSS000321869 ROSS-003291870 | Condensed_SA, Sub | 0.71 | 0 | 1 | 0 | 1 | |

Appendix D

2949

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16748 | In re Kellogg Will, 14 Misc. 2d 1014 | 330r+457 | The claim advanced by the executors of the payer of the decedent's promissory note for $1,000 is allowed. The argument that the obligation was released by the will of the payee was rejected by the New York County Surrogate in this instance of decedent's will... against the executors of the present estate who were parties to the New York County proceeding... Insofar as the instrument was negotiable, consideration is presumed. Negotiable Instruments Law, Section 50. If it was not negotiable, the words "value received" constitute an admission of consideration. Owens v. Blackburn, 161 App.Div. 827; 146 N.Y.S. 964. | | Can a note be assignable even if it is not negotiable? | 009915.docx | LEGALEASE 00156014-LEGALEASE 00156015 | Condensed, SA, Sub 0.86 | 0.86 | | 1 | 1 | 1 | 1 |
| 16749 | Brenner v. Walrath, 208 A.D. 754 | 96r4 | The presumption created by the form of the Christmas note is that the four parties signing it were joint and several makers, and became jointly and severally liable. National Surety Co. v. Seaich, 171 App.Div. 414, 157 N.Y. Supp. 422; Negotiable Instruments Law, § 36. Each was liable to pay the whole amount. But, if one paid more than his share, he might have contribution from the others. Morgan v. Smith, 70 N.Y. 537; Appleby v. Swick, 97 N.Y. 191, 337. And in determining the proportion of contribution, regard would be had to only the solvent debtors. Kimball v. Williams, 51 App. Div. 616, 61 N.Y. Supp. 69... at tends to show that Brenner and Alcke were makers, and the other three signers were sureties, who were jointly and severally liable. | If one of several joint and several makers of a note pays more than his share, he may have contribution from the others. | In case of joint liability on a note, can one person seek contribution from others? | 009970.docx | LEGALEASE 00154473-LEGALEASE 00154474 | Condensed, Order, SA, Sub 0.85 | 0.85 | 1 | 1 | 1 | 1 | 1 |
| 16750 | United States v. Ford, 639 F.3d 578 | 174r+1.5 | The district court, however, did not consider Minor's ability to pay in "departing" from the Guidelines; rather, the court properly utilized its discretion to impose a fine within the applicable range by taking into account Minor's financial resources when determining the appropriateness of a fine in the first instance. The district court's reliance on Minor's assets was not in reference to his socio-economic status; instead, it was with regard to his ability to pay a fine and need for the fine to be sufficiently punitive. See 18 U.S.C. § 3572(a)(1)... "in determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider... the defendant's income, earning capacity, and financial resources." [emphasis added]; see also U.S.S.G. § 5E1.2(d)... | It was within district court's discretion to vary from Guidelines when fixing defendant $250,000 per count following conviction of offenses in connection with theft and credit card fraud scheme, by taking into account defendant's assets was not in reference to his socioeconomic status, instead, it was with regard to his ability to pay fine and need for fine to be sufficiently punitive. 18 U.S.C.A. § 3572(a)(1); U.S.S.G. § 5E1.2(d), 18 U.S.C.A. | Should the court consider the defendant's ability to pay when imposing a fine? | 011121.docx | LEGALEASE 00154797-LEGALEASE 00154798 | Condensed, SA, Sub 0.53 | 0.53 | | 1 | 1 | 1 | 1 |
| 16751 | Barnes v. Chase Home Fin., 825 F. Supp. 2d 1057 | 172H+1322 | TILA is a consumer protection law enacted in 1968 to ensure that consumers would receive meaningful disclosures about their credit transactions. See 15 U.S.C. § 1601(a). As a consumer protection statute, TILA is liberally construed in favor of consumers and is strictly enforced against creditors. Rubio v. Capital One Bank, 613 F.3d 1195, 1200 (9th Cir. 2010). TILA requires creditors to make certain disclosures to borrowers, and the failure to disclose gives borrowers certain rights to rescind the loan transaction and to make claims for damages. 15 U.S.C. §§ 1635, 1640. Actions for damages under § 1640 are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). A borrower who has secured a loan with his primary residence has the right to rescind the transaction until midnight on the third business day following consummation of the transaction or from the date of delivery of the forms required by TILA. 15 U.S.C. § 1635(a)... a borrower's rescission remedy expires after three years from the date of the transaction. 15 U.S.C. § 1635(f). | As a consumer protection statute, TILA is liberally construed in favor of consumers and is strictly enforced against creditors. § 102, 15 U.S.C.A. § 1601. | Is TILA strictly enforced against creditors? | 013946.docx | LEGALEASE 00154004-LEGALEASE 00154005 | Condensed, SA 0.86 | 0.86 | | 1 | 0 | 1 | 1 |
| 16752 | Richard v. Perkins, 373 F. Supp. 2d 1211 | 92+42(4) | Student athletes do not have property or liberty interests protected by the Due Process Clause in participating in intercollegiate athletics. U.S.C.A. Const.Amend. 14; Seamons v. Snow, 84 F.3d 1226 (10th Cir. 1996) (no protected property interest in participating in school athletic program); Colo. Seminary v. Nat'l Collegiate Ath'l. Assoc., 417 F.Supp. 885 (D.Colo.1976) (same), aff'd, 612 F.2d 473 (10th Cir.1979); see also Lesser v. Neosho County Community College, 741 F.Supp. 854, 861 (D.Kan.1990) (participation in intercollegiate athletics is a privilege, not a right); Hysaw v. Washburn Univ. of Topeka, 690 F.Supp. 940 (D.Kan.1987) (no right to pursue college football career); In Rowe v. Kansas State High School Activities Association, Inc., 13 Kan.App.2d 71, 763 P.2d 2155, 1295 (1988)... a student's interest in participating in school related activities is "not entirely..." | Student athletes do not have property or liberty interests protected by the Due Process Clause in participating in intercollegiate athletics. U.S.C.A. Const.Amend. 14. | Do student athletes have a constitutional right to participate in athletic programs? | 06608.docx | LEGALEASE 00096597-LEGALEASE 00096598 | Condensed, SA, Sub 0.82 | 0.82 | | 0 | 0 | 1 | 1 |
| 16753 | Frye, Bd. of Regents of Univ. of Wisconsin Sys., 132 F. Supp. 2d 744 | 141I+1371 | To require University of Wisconsin students to pay a fee to subsidize expressive speech without any protection for the rights of students who object to the funded expression is a violation of the First Amendment rights of students. Regents v. Southworth, 529 U.S. 217, 120 S.Ct. 1346, 1347 55, 146 L.Ed.2d 193 (2000). That protection is achieved through the operation of the program upon the principle of viewpoint neutrality. The Supreme Court has held that "when a university requires its students to pay fees to support the extracurricular speech of other students, all in the name of open discussion, it may not prefer some viewpoints to others." Southworth, 120 S.Ct. at 1356. Therefore, the University may not compel its students to pay fees to fund expressive speech if those fees are not distributed to speakers on a viewpoint neutral basis. The University's program must respect and safeguard its students' right to speak... | University's system for allocating mandatory student activity fees funded student groups was not viewpoint neutral, and thus constituted compelled speech in violation of First Amendment rights of students who objected to positions and views of funded groups; system completely delegated funding decisions to student government without objective criteria or effective oversight. U.S.C.A. Const.Amend. 1. | Can a student be required to pay a fee to subsidize expressive speech? | 010798.docx | LEGALEASE 00153861-LEGALEASE 00153862 | Condensed, SA, Sub 0.56 | 0.56 | | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16754 | Larkin v. Adams Cty., 149 Idaho 89 | 200n17 | A public road may be acquired by prescription when (1) the road is publicly used and maintained for a sufficient length of time... the County must prove these elements by a preponderance of the evidence. West's I.C.A. § 40-202(3). | A county may also gain control of a roadway by prescription under I.C. 40-202(3) if the road is publicly used and maintained for a period... West's I.C.A. § 40-202(3). | How can a public road be acquired? | Highways - Memo 2 RK_4208.docx | ROSS-00029659-ROSS-00029657 | SA, Sub | 0.56 | 0 | | | 1 | |
| 16755 | HSBC USA v. Lugo, 127 A.D.3d 502 | 307A×961.1 | Defendant waived the right to seek a dismissal of complaint on abandoned where defendant did not object to plaintiff's treatment of the untimely answer as notice of appearance, and she thereafter sought documents from plaintiff. McKinney's CPLR 3215(c). | This Court is in agreement that defendant waived her right to seek dismissal of the complaint as abandoned pursuant to CPLR 3215(c) and that she has not established the applicability of RPAPL 1304 so as to require the dismissal of the complaint. McKinney's CPLR 3215(c). | Can a defendant waive the right to seek a dismissal? | 030908.docx | LEGALEASE-00154382-LEGALEASE-00154383 | Condensed, SA, Sub | 0.03 | | 1 | 1 | 1 | |
| 16756 | Hopp Lutheran Church v. Chelline, 460 N.E.2d 1244 | 308×1 | As this court has defined actual agency, it is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former... (1980) Ind.App., 410 N.E.2d 1366, Mooney-Mueller-Ward, Inc. v. Woods, (1978) 275 Ind.App. 102, 307, 371 N.E.2d 404, 408. In short, the elements of an actual agency relationship are three: manifestation of consent to the principal, acquiescence by the agent, and control exerted by the principal. | Elements of actual agency relationship are manifestation of consent by principal, acquiescence by agent, and control exerted by principal. | What are the elements of actual agency? | 041511.docx | LEGALEASE-00154103-LEGALEASE-00154104 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 16757 | Bank of New York v. Raffagaroni, 418 N.J. Super. 323 | 83I×426 | The negotiation of the instrument, on the other hand, requires both a transfer of possession and an endorsement by the holder. An instrument which is payable to bearer may be negotiated by transfer alone. Put otherwise, an instrument payable "to order" can be negotiated by delivery with an endorsement, while an instrument payable "to bearer" can be negotiated by delivery alone. N.J.S.A. 12A:3-201. To effectuate the note at issue here, as a holder pursuant to N.J.S.A. 12A:3-201, plaintiff would have to establish that it received the note by negotiation, at the appropriate time. Thus would require both a transfer of possession to or at the time of delivery, either in favor of plaintiff or in blank. | A note initially made payable "to order" that becomes a bearer instrument by being endorsed in blank can be both transferred and negotiated by delivery alone. N.J.S.A. 12A:3-201(c). | Can an instrument payable to bearer be negotiated by transfer? | Bills and Notes Memo 1209-PR_61520.docx | ROSS-000280708 | Condensed, SA, Sub | 0.74 | | | | 1 | |
| 16758 | Billingham v. Bryan, 10 Iowa 317 | 83I×406 | The District Court held: "That the plaintiff to maintain his action must aver and prove that said instrument was due and demanded, and non-payment by the maker at maturity, and there being no evidence of that fact, the plaintiff could not maintain his action." Thus ruling of the court is assigned as error by the appellant, and the question presented in this cause is, whether the indorser of a non-negotiable promissory note is liable to the holder without demand upon the maker, and notice of non-payment. We think this question has been fully settled by this court in the cases of Billon v. Robb, M. & Bro. v. Hawthorne, Watson... those cases following the authority as laid down in the case of Seymour v. Van Slyck, 8 Wend., 421; in which it is held that such an indorsement is equivalent to the making of a new note, and is direct and positive undertaking on the part of the indorser to pay the note to the indorsee, and not a conditional one to pay if the maker does not demand, after due notice. Such indorser is committed to the usual privilege of an indorser of negotiable paper; it is urged by appellee that the plaintiff had averred, in his petition, such demand of the maker and notice of non-payment, but as nothing is proved thereon, it cannot be held, under the decisions of this court. The plaintiff had a right to recover without averring an allegation in his petition, or if made it was not necessary for him to support the same by evidence. | Whether the indorser of a promissory note not negotiable, is liable to suit by the holder, without demand upon the makers, and notice of the non-payment? | 010868.docx | LEGALEASE-00155354-LEGALEASE-00155355 | Condensed, SA, Sub | 0.87 | | | | 1 | |
| 16759 | Ofor v. Ocwen Loan Servicing, 649 F.3d 808 | 1708×361841 | We apply "an objective standard of review" to allegations that a creditor violated TILA. Rand Corp. v. Yer Song Moua, 559 F.3d 842, 845 (8th Cir.2009) (question and citation omitted). Under TILA, a loan is secured by a debtor's primary residence, "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms... whichever is later." 15 U.S.C. § 1635(a). Further, "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." Id. Notice must be provided "on a separate document that identifies the transaction and ... clearly and conspicuously disclose the ... rescind." 12 C.F.R. § 226.23(b)(1). A creditor's failure to comply with these provisions extends the debtor's right to rescind for up to three years following the transaction. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). | Court of Appeals applies an objective standard of review to allegations that a creditor violated TILA, Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | Are alleged violations of TILA subject to an objective standard of review? | Consumer Credit - Memo 20 I RK_61584.docx | ROSS-00032242 I-ROSS-00032 2422 | Condensed, SA, Sub | 0.85 | 0 | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WNRS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16740 | Radcliff v. Fifth Third Bank, 522 Z.d 241 | 172H+1356 | If disclosures required by Truth in Lending Act are not made, debtor has a right to rescind. Truth in Lending Act, § 125 as amended 15 U.S.C.A. § 1635. | TILA provides a right to rescind a transaction involving a security interest on the residence of the debtor until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required regarding the rights to rescind and other material disclosures, whichever is later. 15 U.S.C. § 1635.All the disclosures are made if the debtor's has a continuing right to rescind. See Koss v. Fifth, 493 F.2d 14, 317-18 (Oh Cir. 1976); Eby v. Reb Realty, Inc., 495 F.2d 646, 649 (9th Cir. 1976); Pacific v. Pacific Plan of California, 897 F.Supp. 355, 321 N.D. Cal.1975). The right to rescind is not dependent upon the one-year statute of limitations period for a claim for damages. See Littlefield v. Walt Disney & Co., 488 F.2d 1133, 1134 (5th Cir. 1974.) Thus, appellants may have a right to rescind even though their claim for damages is barred by the statute of limitations in 15 U.S.C. § 1640(e). | Does the debtor have a continuing right to rescind if disclosures required by TILA are not made? | 03.TRI.docx | LEGALEASE 00155512-LEGALEASE 00155513 | Condensed, SA, Sub 0.83 | | 0 | | 1 | 1 | |
| 16741 | Phelps-Ryan v. City of Manchester, Missouri, 738 F.Supp. 2d 947 | 129+111 | City ordinances prohibiting pickets and protests within 300 feet of funeral or burial service was not narrowly tailored to serve significant governmental interest, for purposes of church members' challenge to ordinance, under First Amendment; although ordinance contained complete ban on pickets and protests within 300 feet radius of any funeral, which latter version restricted too much speech due to use of buffer zone. U.S.C.A. Const.Amend. 1. | Plaintiffs first claim that the ordinance violates the First Amendment because the ordinance was not narrowly tailored to serve significant governmental interest...First Amendment. See Carey v. Brown, 447 U.S. 455, 460, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); see also Hill v. Colorado, 530 U.S. 703, 715, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). As part of its protections, the First Amendment generally prevents government from proscribing speech...First Amendment in regulating...Accordingly, content-based regulations of speech are "presumptively invalid." For a state or municipality to enforce a content-based regulation, it must show that its regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Frisby v. Schultz, 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)...states and municipalities may enforce certain neutral regulations of the time, place, and manner of expression so long as they are narrowly tailored to serve a significant governmental interest and leave open ample alternative channels of communication. | Does an ordinance which prohibits protected speech, picketing, and protests on public streets and adjacent to public places violate the free speech clause if it is content neutral and is narrowly tailored and leaves open alternative channels? | Disorderly Conduct - Memo 13.1 - RK_6187.docx | ROSS-003280243-ROSS-003280244 | Condensed, SA, Sub 0.67 | | 1 | | 1 | 1 | 1 |
| 16742 | Com. v. Fitta, 391 Mass. 394 | 92+1323(260) | To convict a defendant of open and gross lewdness and lascivious behavior, the Commonwealth must prove that the defendant committed the crime of open and gross lewdness and lascivious behavior and intended that the lascivious behavior is not required to be reasonable doubt that the defendant "intentionally, indecently, and offensively exposed himself to one of the other sexes that may produce alarm by reason or reasonable excuse, and in such a way as to produce alarm [defendant would be] guilty of open lewdness and lascivious behavior." Commonwealth v. Kinney, 128 Mass. 52, 55 (1860); Commonwealth v. Adams, 389 Mass. 265, 271, 450 N.E.2d 149 (1983); Commonwealth v. Dickinson, 348 Mass. 767, 203 N.E.2d 240 (1964). | State in proscribing open and gross lewdness and lascivious behavior requires proof that defendant's act was committed in such a way as to produce alarm or shock, which is an additional element not required by statute proscribing indecent exposure, thus, the disparity of the sentencing provisions for those two crimes does not make them unconstitutionally vague. M.G.L.A. c. 218, § 26A, c. 272, § 16; U.S.C.A. Const.Amend. 14. | What is required to prove open lewdness? | Disorderly Conduct - Memo 34.2 - Al.docx | LEGALEASE 00046775-LEGALEASE 00046776 | Condensed, SA | | 0 | | 1 | 1 | |
| 16743 | Kinga v. Ithaca Coll., 107 A.D.3d 1015 | 141H+1015 | We conclude that facts have been shown which would permit a jury to find that defendant imposed punishment, in the form of demotion, for conduct of the plaintiff that violated only a portion of the campus that itself is obscene in such cases. Where a college has adopted a rule, the law required substantial compliance [citing to Tedeschi v. Wagner College, 49 N.Y.2d 652, 665, 427 N.Y.S.2d 760, 404 N.E.2d 1302.] The plaintiff, therefore, must establish that the punishment...motion for summary judgment, dismissing the contract cause of action... | Where a college has adopted a rule, the law requires substantial compliance? | Education - Memo # 295 - C - KS_6187.docx | ROSS-003298092-ROSS-003298092 | Condensed, SA | | 1 | | 1 | 1 | 0 |
| 16744 | Studer v. Smith & Aleoff Litton Hock, 968 AA. 295 | 307A+590 | Moreover, it is a well settled rule of law that a dismissal with prejudice is as conclusive of the rights of the parties as judgment as to the plaintiff after a trial. Stuch v. Pac. Hock. Serms., Inc. v. Schulz, Inc., 178, 854 N.W.2d 375 (1993); Hicks v. Albitre Ins. Co., 306 A.N. 311, 785 S.W.2d 890 (1990). The present situation is analogous to this court's opinion in Nazario v. Nazario Paper, Inc., 261 A.N. 797R, 547 S.W.2d 403 (1977). There, we held that the settlement and dismissal with prejudice of the appellant's first action were conclusive of the issue of negligence of appellee's alleged employee. | Is the dismissal of a claim with prejudice conclusive as to the rights of the parties on that claim? | Pretrial Procedure - Memo # 1037 - C - SL_62725.docx | ROSS-003285231-ROSS-003285232 | Condensed, SA | | 1 | | 0 | 1 | 1 |
| 16745 | Watkins Inc. Co. v. William B. Tanner Co., 668 S.W.2d 196 | 307A+581 | As this court observed in Lawrie v. Lord, 595 S.W.2d at 158, whether a claim has been diligently prosecuted must be decided on a case-by-case basis. However, a lengthy period of delay may be enough to warrant dismissal if the party has not exercised the most common level of attention and diligence. | On what basis should it be decided whether a claim has been diligently prosecuted? | Pretrial Procedure - Memo # 20 - C - KS_61389.docx | ROSS-003280624 | Condensed, SA, Sub 0.52 | | 1 | | 1 | 1 | 1 |
| 16746 | City of Waco v. Texas Coffin Co., 472 S.W.2d 800 | 307A+581 | A case should not be dismissed on the ground of abandonment unless such abandonment clearly appears. | Should a case be dismissed on the ground of abandonment unless such abandonment clearly appears? | Pretrial Procedure - Memo # 8721 - C - NE_65410.docx | ROSS-003294583-ROSS-003294584 | Condensed, SA | | 0.7 | | 1 | 1 | 1 |

2952

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16767 | Reynolds v. Jimmy John's Enterprises, 2013 IL App. (4th) 120139 | 30764685 | As the measure of a motion for involuntary dismissal pursuant to section 2-619(a)(9) of the code, the defendant... | A motion for involuntary dismissal of an action based on an affirmative matter admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of action. S.H.A. 735 ILCS 5/2-619(a)(9). | Should an affirmative matter asserted by a defendant moving for mechanical dismissal be apparent on the face of the complaint? | 03955.docx | LEGALEASE 00154986 - LEGALEASE 00154989 | Condensed, SA, Sub 0.76 | | 0 | 1 | | 1 | |
| 16768 | Montgomery Furniture Co. v. Hardaway, 104 Ala. 100 | 30513 | The principal of a special agent is only bound by acts of the agent which are in accordance with its authority... | The authority of a general agent is, as to third parties, which it appears to be, and must be determined by the nature of the business, and is prima facie co-extensive with its requirements. | How is an agent's authority determined? | 043020.docx | LEGALEASE 00156637 - LEGALEASE 00156638 | Condensed, SA, Sub 0.87 | | 0 | 1 | | 1 | |
| 16769 | Ford Motor Co. v. Kentucky Unemployment Comp. Comm'n, 243 S.W.2d 657 | 30549211 | The powers of an agent must be specifically granted or necessarily inferred, and they cannot be created otra tranche? | The powers of an agent must be specifically granted or necessarily inferred, and they cannot be created otra tranche. | Can the powers of an agent be created under license/law? | Principal and Agent KC_6162B.docx | ROSS 003201868 | Condensed, SA, Sub 0.98 | | 0 | 1 | | 1 | |
| 16770 | People ex rel. Curren v. Schommer, 392 Ill. 17 | 371x2001 | There appears to be a clear cut and definite distinction between the legal conception of what a tax... | A "tax" is a mode of raising revenue for public needs for a public purpose. | Is tax a mode of raising revenue for public needs for a public purpose? | 04088.docx | LEGALEASE 00154970 - LEGALEASE 00154971 | Condensed, SA, 0.92 | | 0 | 1 | | 1 | |
| 16771 | United States v. Arbo, 691 F.2d 862 | 411x12 | Ada argues alternatively that because his mixing claim was on state land, the government... | Evidence was sufficient to show that government agents carrying out compliance inspection of defendant's claim were engaged in performance of their official duties as required under section 261.3. | Is it criminal to interfere with a forest official? | 04764.docx | LEGALEASE 00155172 - LEGALEASE 00155173 | Condensed, SA, Sub 0.58 | | 0 | 1 | | 1 | |
| 16772 | Gurica v. City of New York, 222 A.D.2d 192 | 141Ek89(11) | In view of the foregoing, and by the use of plain common sense, we conclude that the school... | School, acting in loco parentis, did not act with prudence in allowing five-year old student to proceed to bathroom alone which gave rise to child's sexual molestation by older student where two memoranda had been circulated in school directing teachers to escort all pupils under third grade to bathroom with partners, and principal testified regarding awareness of risks to unescorted students in school corridors and bathrooms. | Do schools act in loco parentis? | 01884.docx | LEGALEASE 00156317 - LEGALEASE 00156318 | Condensed, SA, Sub 0.19 | | 0 | 1 | | 1 | |

Appendix D

2953

| ROW | Judicial Opinion | WKNS Key + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 16773 | Douglas v. Aztec Petroleum Corp., 695 S.W.2d 312 | 156+32(1) | There are several reasons why the defense of estoppel is not available to Douglas. To invoke the doctrine of estoppel, the necessary elements of estoppel must be present. Clifton v. Ogle, 526 S.W.2d 596 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e.). 31 C.J.S. Estoppel sec. 67 (1964). One of its essential requisites is a reasonable or justified reliance on the conduct or statements of the person sought to be estopped by the person seeking the benefit of the doctrine. Clifton v. Ogle, supra. No estoppel exists in the absence of a showing of the right of reliance. Kuehne v. Denson, 148 Tex. 54, 219 S.W.2d 1006 (1949). 31 C.J.S. Estoppel sec. 71. Douglas was he who entered into the current bargain... the scheme with forgery and misrepresentation. Assuming, for the sake of argument, the existence of such a part, it is impossible to conceive that a jury could find Douglas entry into a reasonable or justified. The purpose of estoppel is for the protection of those who have been misled by that which appeared to be... protection of the innocent, and only the innocent may invoke it. 31 C.J.S. Estoppel sec. 75 (1964). | Purpose of estoppel is for protection of those who have been misled by that which appeared to be fair; and it is for protection of innocent, and only the innocent may invoke it. | Does the purpose of estoppel is the protection of those who have been misled by that which appears to be a fair? | 01793.docx | LEGALEASE-00156236-LEGALEASE-00156237 | Condensed, SA, Sub 0.85 | 0.85 | 0 | | | 1 | 1 |
| 16774 | DWP L.L.C. v. Bleys [Ridge] Botswana de Venezuela, 151 F. Supp. 3d 809 | 156+32(1) | Stein asserts that it reasonably relied upon the August and October 2001 Reports to its detriment in purchasing the Venezuelan papers. (1) that the August and October 2001 Reports were not fraudulent, and therefore Stein was misled by misrepresentations; and (2) that any reliance on the part of Stein therein was not reasonable, due to the issuance of the November and December 2003 Reports, which contradicted the earlier reports. Stein argues that "a knowingly false representation or concealment of material fact" is not an "essential element of estoppel." First Fed. Sav. & Loan Ass'n of Roxborough v. Perry's Landing, Inc., 11 Ohio App.3d 135, 144, 463 N.E.2d 636 (Ohio Ct.App.1983). While Stein is correct that the point of estoppel is to prevent fraud, "estoppel is not actionable fraud and is not treated but actionable fraud. There is usually no need for scienter, an intent to deceive, in estoppel cases.... | While Ohio courts have long espoused that the point of estoppel is to prevent fraud, estoppel is not actionable fraud and is not treated like actionable fraud; there is usually no need for scienter, an intent to deceive, in estoppel cases. | Is estoppel not actionable fraud? | 01780.docx | LEGALEASE-00156274-LEGALEASE-00156275 | Condensed, SA 0.75 | 0.75 | 0 | 1 | | 1 | |
| 16775 | Gootman v. N. Fork Valley Rest., 176 P.3d 640 | 307A+681 | When a court decides to rule on a motion to dismiss for lack of jurisdiction on documentary evidence alone, the plaintiff need only make a prima facie showing of personal jurisdiction. The moving party... 1352. A prima facie showing exists where the plaintiff alleges a reasonable inference that the court has jurisdiction over the defendant. Id. Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties. Id. | Documentary evidence that a court may consider on a motion for a nonexistent defendant to dismiss for lack of personal jurisdiction consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the plaintiff. | Does documentary evidence consist of the allegations in the complaint? | 024760.docx | RDS5-00281888 | Condensed, SA, Sub 0.44 | 0.44 | 0 | 1 | | 1 | |
| 16776 | Pantoja-Cahua v. Ford Motor Credit Co., 375 Ill. App. 3d 49 | 307A+681 | A motion to dismiss filed pursuant to section 2-615 is based on the pleadings rather than the underlying facts. Neppl v. Murphy, 316 Ill.App.3d 581, 584, 249 Ill.Dec. 736, 736 N.E.2d 1118, 1178 (2000). It admits all well-pleaded facts appearing on the face of the complaint and attacks the legal sufficiency of the complaint, alleging only defects on the face of the complaint. Neppl, 316 Ill.App.3d at 584, 249 Ill.Dec. 736, 736 N.E.2d at 1178. Doe v. State Farm Fire & Casualty Co., 290 Ill.App.3d 6, 224 Ill.Dec. 339, 681 N.E.2d 467, 811 (1998). | A motion to dismiss is based on the pleadings rather than the underlying facts. 5 ILCS 735 635 S/2-615. | Is a motion to dismiss based on the insufficiency in the pleading rather than on the underlying facts? | 024760.docx | LEGALEASE-00156206-LEGALEASE-00156207 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | | 1 | |
| 16777 | City of Dallas, Tex. v. F.C.C., 118 F.3d 393 | 371+2002 | Franchise fees are not a tax, however, but essentially a form of rent: the price paid to rent use of public right-of-ways. See, e.g., City of St. Louis v. Western Union Telegraph Co., 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380 (1893) (noting that the fee paid to a municipality for the use of its rights-of-way even rent, not a tax); Post & Tel. Cable Co. v. City of Los Angeles, 44 Cal.2d 72, 281, 282 P.2d 36, 41 (1955)(same); (re. Telecommunications 1 e, 659 F.Supp. 580, 595 (W.D.Pa.1987), affirmed on other grounds, 653 F.2d 1042 (Fed.Cir.1988)(same in cable television context); Furthermore, even if franchise fees were treated as a tax, the result still is treated as a normal... unless the use was imposed directly upon the subscriber. Courts have held that gross revenue generally includes revenues collected for taxes. See, e.g., NSTAL v. Charleston Gas Co. (Ala)(Eng'g), 345 F.2d 428, 430-431 (8th Cir.1966). Lucky Lager Brewing Co. v. Commissioner, 246 F.2d 621, 623 (9th Cir.1957)... | Franchise fees are not a tax, but essentially a form of rent; the price paid to rent use of public right-of-ways. | Are franchise fees a tax? | Taxation - Memo # 983 C - 14_62128.docx | RDS5-00229155; RDS5-00291554 | Condensed, SA 0.89 | 0.89 | 0 | 1 | | 1 | |
| 16778 | Compton v. State, 607 S.W.2d 246 | 234+7 | Thus, it is clear that the three ways ownership may be alleged are that the named individual had title to the property, or (2) greater right to possession than the defendant. Though the evidence established... that... could be said to prove the ownership... (Tex.Cr.App.1971); Osborne v. State, 93 Tex.Cr.R. 54, 245 S.W. 928 (1922); the actor's natural person acting for the corporation has the "greater right to possession" than the defendant, who was the owner of the property. V.T.C.A. Penal Code § 1.07(a)(24, 28). | There are three ways ownership of stolen property may be alleged, that the named individual had title to the property, or that the person had (1) possession than defendant, and greater right to possession than other persons may have joint interests in the property, exercising actual care, custody, control or management of it. V.T.C.A. Penal Code § 1.07(a)(24, 28). | How is the ownership of burglarized premises proven? | 09318.docx | LEGALEASE-00156417-LEGALEASE-00156418 | Condensed, SA, Sub 0.49 | 0.49 | 0 | 1 | | 1 | |

2954

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16279 | Dwight v. Newell, 15 Ill. 333 | 162v124 | The second place raises the question whether one of the executors can assign a promissory note given to the testator, so as to vest the legal interest in the assignee. This question must be answered in the affirmative. It is well settled by authority that one of two or more executors possesses the power of disposing of the personal assets of the testator in as full and ample a manner as all of them united, and entire authority over the personal estate, and the bona fide acts of one in respect to the estate are binding upon the whole. They constitute in law but one person representing the testator, and the act of one is deemed to be the act of all. Thus, a term of years passes by the assignment of one of two or more executors. A release made by one of two executors is valid. So, a chattel by one can transfer the title to his purchaser. And one executor may assign a promissory note made payable to the testator. The act of one is regarded as the act of all. Bacon Abr. Executors and Administrators, D; Williams on Executors, 683; Wheeler v. Wheeler, 9 Cowen, 34; Murray v. Blatchford, 1 Wend. 583; Nagle v. Homet, 4 Hill, 492. | One of several executors or administrator may assign a note made payable to the testator. | Can an executor assign a promissory note made payable to the testator? | Bills and Notes Memo 1234 – JK_62339.docx | ROSS00216447-ROSS-00218348 | Condensed_SA_Sub-0.92 | | 0 | 1 | | 1 | 1 |
| 16280 | In re King (in Hoang), 396 B.R. 757 | 83f1+481 | A fundamental feature of negotiable instruments is that they are transferred by the delivery of possession, not by contract or assignment. The transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument ..." Cal. Com. Code §§ 3201, 3203, 3701 (9b). Thus, the right to enforce a negotiable instrument is only transferable by delivery of the instrument itself. Cal. Com. Code § 3201. | Under California law, a fundamental feature of negotiable instruments is that they are transferred by delivery of possession, not by contract or assignment. West's Ann.Cal.Com. Code §§ 201, 3203. | Can a negotiable instrument be transferred by the delivery of possession? | 09083.docx | LGA4EASE-00156543-LGA4EASE-00156644 | Condensed_SA_Sub-0.54 | | 0 | 1 | | 1 | 1 |
| 16281 | Templeton v. State, 725 So. 2d 764 | 67+8(1) | Similarly, in Minich v. State, 650 So.2d 1186 (Miss. 1995), this Court stated "[a]n effort, however slight, such as the turning of a door knob to enter, constitutes a breaking...". Alford, 656 So.2d at 1190. Additionally, in an earlier case this Court quoted Corpus Juris Secundum for the proposition that constructive breaking can occur where an entry is effected by fraud or intimidation. Nobles v. State, 215 Miss. 564, 570, 61 So.2d 365, 366 (1952). Accord State v. Fuller, 278 S.C. 203, 296 S.E.2d 817 (1982) (holding that entry effected by trickery or deception constitutes breaking and satisfies the breaking element in the definition of burglary); State v. Ortiz, 816 N.W.2d 264 (Iowa 2012) (holding that where consent is erroneous and is similar to constructive breaking and constitutes an unauthorized entry sufficient to sustain a burglary conviction). | Does turning a door knob constitute a breaking? | Burglary - Memo 300- RK_42392.docx | ROSS-002019412-ROSS-002035473 | Condensed_SA_Sub-0.87 | | 0 | 1 | | 1 | 1 |
| 16282 | People v. Henry, 173 Cal. App.4th 550 | 67+9(2) | In keeping with the plain language of section 459 and the legislative intent to treat entry into a locked vehicle more harshly than simple theft, we find that the defendant's act of prying open the hood of the locked Camry constitutes a burglary. | Defendant's acts of forcing open the hood of an automobile and examining objects under the hood constituted "entry" of the automobile, as required for conviction for burglary, where the doors of the automobile were locked, and the hood could normally only be opened from inside the locked passenger compartment. West's Ann.Cal. Penal Code § 459. | Can the opening of a hood constitute burglary? | 01316.docx | LGA4EASE-00156591-LGA4EASE-00156592 | Condensed_SA_Sub-0.34 | | 0 | 1 | | 1 | 1 |
| 16283 | State v. Gotcher, 52 Wash. App. 350 | 67+10 | The State argues two classifications of deadly weapons are defined in RCW 9A.04.110(6). The first class of deadly weapon is specifically defined to include "any explosive or loaded or unloaded firearm". A second class of deadly weapons is defined generally to include any other weapon ... [or] instrument ... which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily injury. The State argues that this classification defines per se dangerous weapons and no analysis of willingness or present ability to use a firearm as a deadly weapon is needed. We agree. For purposes of first degree burglary, the defendant is armed with a deadly weapon if he or she possesses a readily and readily available for use by the defendant for offensive or defensive purpose. State v. Sabala, 44 Wash.App. 444, 7219-2-I; (1986). | Person is "armed" with deadly weapon, within meaning of first-degree burglary statute, when weapon is readily accessible and available for use. West's RCWA 9A.52.020(1). | When is a person armed with a deadly weapon under the burglary statute? | 03166.docx | LGA4EASE-00156577-LGA4EASE-00156578 | Condensed_SA_Sub-0.81 | | 0 | 1 | | 1 | 1 |
| 16284 | People v. Davis, 112 A.3d 959 | 67+9(2) | The Court of Appeal in Ravenscroft appeared to reason that because an entry by means of an instrument is not limited to use of traditional burglar's tools, there are no limitations within the meaning of the burglary statute on what constitutes entry by means of an instrument. It certainly is within the range of a burglary statute to recognize the act of using a cutting torch to breach the walls, doors, or windows of a building constitutes an entry, even where the person using a torch remains outside. Similarly, for example, a laser, and that using an instrument to reach into a building and remove property constitutes burglary even if no instrument is placed in the room, or robot. These are the traditional types of entry prohibited by the burglary statute, even though the entry may be accomplished in new ways. | Entry in burglary be committed using an instrument? | 01378.docx | LGA4EASE-00156589-LGA4EASE-00156590 | Condensed_SA_Sub-0.35 | | 0 | 1 | | 1 | 1 |
| 16285 | Spence v. Spence, 368 S.C. 106 | 158H+107 | Dismissal of a case, "without prejudice" means a request for compliance by serving notice that the dismissal is entered, although is not an "entry," within the meaning of the burglary statute; dismissal of a complaint "with prejudice" is intended to bar mitigation of the same claim. Calhin v. Sigmon, 295 S.C. 464, 467, 385 S.E.2d 835, 837 (1989). | "Is a dismissal of a complaint "with prejudice" intended to bar mitigation of the same claim? | 02027.docx | LGA4EASE-00156647-LGA4EASE-00156668 | Condensed_SA 0.68 | | 0 | 1 | | 1 | 1 |

2955

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,673 | 21,876 | 9,029 |
| 16786 | Nix, Mut. Life Ins. Co. v. State Bd. of Equalization, 73 Cal. App. 2d 548 | 268+405 | There is a broad and well-recognized distinction between a tax levied for general governmental or public purposes and a special assessment levied for improvements made under special laws of a local character. "City of Inglewood v. County of Los Angeles, 207 Cal. 697, 701, [280 P. 360, 361] are, also, San Diego v. Linda Vista Irr. Dist., 108 Cal. 189, 41 P. 291, 35 L.R.A. 33 [City Street Imp. Co. v. Regents etc., 153 Cal. 776, 96 P. 801, 18 L.R.A.N.S., 451; Hailey v. Orange County, supra; "Moreover, the law recognizes a distinction between property impressed with a public purpose and property of a agency not so impressed. In the latter instance the property may be sold for delinquent special assessments levied by the agency, but the agency is not affected with the special possession and other burdens of private property." La Mesa, etc., Irr. Dist. v. Hornbeck, 216 Cal. 730, 738, 17 P.2d 143, 147 "While the power of assessment comes from the general powers of taxation it must not be confounded with it, for as we have seen in Emery v. San Francisco etc., [214 Cal. 343], the words "taxation" and "assessment" are used in the Constitution to represent different modes of exercising the general power of taxation, and also as representing different objects and purposes, in one of which is exacted for the taxing power may be had, in their origin and legal or constitutional constitution they are the same, but in the modes of their exercise, and in the objects of such exercise upon the property of the taxpayer, they are essentially different." Taylor v. Palmer, 31 Cal. 240, 251." A special assessment in so far in the sense that it is a distribution of that which is originally a public burden. | A special assessment is a "tax" in that it distributes what is originally a public burden, but a tax in the sense of use for revenue which is an essential governmental or public purposes, and a special assessment levied under special laws of a local character. "City of Inglewood v. County of Los Angeles, a specific measure for state or public service, whereas special "assessment" is imposed upon property within a limited area for payment of a local improvement to enhance value of all property within that area, and can be levied only upon land, and is ordinarily based wholly upon benefits, and is exceptional both as to time and locality. | An special assessments and taxes both distribution of that which is originally a public burden? | Taxation - March 8 2009 2009-C - IC_42481.docx | ROSS-003291342-ROSS-003291343 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 16787 | Morris Bros. Lumber Co. v. Eakin, 262 F.2d 259 | 414+1 | For the cases upon which the court relied indeed to deals for the conveyances of real estate. These cases do not necessarily apply to a sale of standing timber, which may be regarded as a sale of personalty if the parties so intend. Individual rule the cutting of standing timber sold is to commence at once and be completed within a reasonable time it is to be regarded as personalty. And for years for the removal of trees has been held by the Supreme Court of Pennsylvania to be a reasonable time. Accordingly it was quite proper for the trial judge to submit to the jury as he did, the question whether the parties intended to sell timber (as sale of personalty) or the timber standing on a specific tract of land (a sale of realty). The jury's answer that it was the former is amply supported by evidence and renders wholly inapplicable the cases to the effect that in a deed of realty natural boundaries control over a recital of quantity. We conclude that the verdict of the jury was supported by the facts and the applicable law and that it was error to set it aside and direct judgment for the defendants. | Where a ruling of standing timber sold is to commence at once and be completed within a reasonable time, it is regarded as personalty under Pennsylvania law. | Will standing timber be personalty? | Woods and Forests - Memo 2 - IC_42518.docx | ROSS-003284330-ROSS-003284331 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 16788 | In re Kang [In Hwang], 396 B.R. 757 | 83E+481 | A negotiable instrument is an instrument that it transferred by the delivery of possession, not by contract or assignment. The transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument . . ." Cal.Com. Code § 3203(b); UCC § 3-203(b). Thus, the right to enforce a negotiable instrument is only transferable by delivery of the instrument itself. Cal.Com. Code § 3203. | Under California law, fundamental feature of negotiable instruments is that they are transferred by delivery of possession, not by contract or assignment. West's Ann.Cal.Com. Code §§ 3201, 3203. | Can a negotiable instrument be transferred by the contract or assignment? | Bills and Notes - Memo 1242 - PK_62532.docx | ROSS-003282172-ROSS-003282173 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 16789 | Nelson v. Regions Mortg., 170 S.W.3d 858 | 83E+481 | Nelson argues, however, that he could not possibly have enforced the note had he tried to do so because he lacked possession of the original instrument. Nelson did receive a certified copy of the note and an assignment of the note from Homeowners. We agree that Nelson was not a "holder" of the note within the meaning of the law of negotiable instruments. See Tex. Bus. Com. Code Ann. § 3.301(1) (Vernon 2002) (defining "negotiation" as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder"). In some circumstances, Texas law provides that even if a person is not the holder of a note, he may still be able to prove that he is a person entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment. | Note purchaser who received assignment of mortgage and copies of the note and deed of trust, but who never received the original note, was not "holder" of note within the meaning of the law of negotiable instruments, V.T.C.A., Bus. & C. § 3.301(a). | Is possession of the original instrument necessary to be a holder? | 00988.docx | LEGALEASE-00157117-LEGALEASE-00157118 | Condensed, SA, Sub | 0.69 | 0 | | 1 | | |
| 16790 | McCullough v. Steep, 91 Ga. App. 103 | 83E+426 | In Georgia, indorsements may be special, in blank, restrictive, qualified, or conditional. Code § 14-404. A special indorsement specifies the person indorsed to whom, or to whose order, the instrument is to be payable, and the indorsement of such indorsee is necessary to the further negotiation of the instrument. An indorsement in blank specifies no indorsee, and an instrument indorsed in blank is payable to bearer and may be negotiated by delivery alone. Code, § 14-405. In the present case an indorsee was named and his indorsement was necessary to a further negotiation of the instrument. Therefore the indorsement here was a special indorsement. Chandler v. Smith, 147 Ga. 637, 639(2), 95 S.E. 223; Fay v. White, 77 A... The indorsement being a special indorsement in which the defendant could not enforce the note without having a special indorsement of the indorsee, ... intended to be a qualified one, in the absence of fraud or mistake. Meador v. Dollar Savings Bank, 56 Ga. 605(2); First National Trust Co., 22 Ga.App. 71(1), 97 S.E. 116. The only question presented in this case is the effect of the indorsement, and no questions of conditional delivery or the capacity of the indorsement are involved. | An indorsement in blank specifies no indorsee, and an instrument indorsed in blank is payable to bearer and may be negotiated by delivery. Code, § 14-405. | Does indorsement in blank specifies any indorsee? | Bills and Notes Memo 1277-AMK_10103.docx | ROSS-003107967 | SA, Sub | 0.87 | 0 | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16791 | Ira E Mason's Estate, 194 Misc. 006 | 8,901×11 | A check is a mere order for the payment of money. The authority of the payee as agent of the maker is revoked by the death of the maker prior to the time the check is cashed. [citations] ... Consequently, no claim against the estate can be based on a check itself. However, the general rule is that where the check is evidence may still be enforceable against the estate. [citations] ... Aldes, 78 N.Y. 287. The rule that the validity of a contract is governed by the law of the place where the contract is made is applicable to a check. Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992. | Rule that validity of a contract is governed by law of place where contract is made is applicable to a check. | Is the validity of a contract governed by the place where the contract was made? | Bills and Notes Memo 1419 - /A_65630.docx | ROSS00192219-ROSS-00192220 | Condensed, SA | 0.91 | 0 | | 1 | 1 | 1 |
| 16792 | Vacuum Sys. v. Bridge Const. Co., 632 A.2d 442 | 156×118 | Estoppel prevents a defendant from asserting the statute of limitations when the defendant has acted to induce the plaintiff to reasonably refrain from commencing timely legal action against the plaintiff otherwise would have taken. Dugan v. Mobil, 584 A.2d 744, 746 (Me.1991); Nowacki v. Federal-Mogul Corp., 584 A.2d 634, 636 (Me.1990) ... Estoppel is a doctrine that should be carefully and sparingly applied. It must be asserted in good faith. However ... In re Estate of Hoover, 155 Ill.2d 402, 185 Ill.Dec. 866, 615 N.E.2d 736 (Me.1993). VSI offers no evidence of any action or omission by Arthur, and the evidence against Bridge is insufficient as a matter of law. | Estoppel is a doctrine that should be carefully and sparingly applied and requires clear and satisfactory proof. | Does estoppel require clear and satisfactory proof? | 017887.docx | LEGALEASE-00157765-LEGALEASE-00157781 | Condensed, SA | 0.89 | | | 0 | 1 | |
| 16793 | Campbell v. First Baptist Church of City of Durham, 51 N.C. App 393 | 315×409 | Here, plaintiff originally and expressly sought to have the entire transaction the "exchange" declared void. Defendants insisted on the grounds that it should have been attached to the "exchange" ... procedures governing sales by the Redevelopment Commission under N.C.G.S. 160-464 (now N.C.G.S. 160A-514). Until the action was remanded, none of the parties ... In an "exchange" of property, specific property is given in consideration of property other than money ... See 72 Am.Jur.2d Exchange of Property 671 (defined; rev. 1968). In an exchange, specific property is given in consideration of property other than money, although one of the parties may pay a sum of money in addition to the property ... as the First Baptist Church in this case, is nothing more than a "private sale" of the property ... and that such arrangement with compliance with all of the requirements of G.S. 1-160-464(b)&160, 19 N.C.App. at 126-29, 200 S.E.2d at 74 (emphasis added). | In an "exchange" of property, specific property is given in consideration of property other than money, although one of the parties may pay a sum of money in addition to the property. | What constitutes an exchange? | Exchange of property - Memo 3 - AM_42728.docx | ROSS00192419-ROSS-00192434 | SA, Sub | 0.84 | | | | 1 | |
| 16794 | Rice v. Design Dir. at Floor Concepts, 314 P.3d 681 | 307A×090 | "Typically, subject matter jurisdiction cannot be waived and can be raised at any time." State ex rel. Children, Youth & Families Dep't v. Andree G., 2007 NMCA 156, 18, 143 N.M. 105, 174 P.3d 531. Furthermore, when subject matter jurisdiction is lacking, dismissal of a claim with prejudice is appropriate. See generally Schneider Nat'l, Inc. v. State Taxation & Revenue Dep't, 2006 NMCA 128, 7 12, 140 N.M. 561, 144 P.3d 120 (holding it was proper to reverse a trial court judgment where district court did not have subject matter jurisdiction where complaint was not filed within the allowed time). | "Typically, subject matter jurisdiction cannot be waived and can be raised at any time." | Is dismissal for failure to join indispensable party not an adjudication on the merits and cannot be granted with prejudice? | 024969.docx | LEGALEASE-00156769-LEGALEASE-00156770 | Condensed, SA, Sub | 0.67 | | | 1 | 1 | |
| 16795 | Fairfield Mountain Prop. Owners Ass'n v. Doolittle, 149 N.C. App 486 | 307A×090 | However, we note that the trial court's order conditionally indicating that the matter would be dismissed the necessary parties failed to join. The matter would also be dismissed if the parties were not joined, erroneously indicates that such dismissal would be with prejudice. A "dismissal for failure to join a necessary party is not a dismissal on the merits and may not be with prejudice." Crosrol Carding Developments, Inc. v. Gunter & Cooke, Inc., 12 N.C.App. 448, 453, 183 S.E.2d 834, 838 (1971). | A dismissal for failure to join a necessary party is not a dismissal on the merits and may not be with prejudice. Kan. Civ.Proc., Rule 12(b)(7), West's N.C. G.S.A. § 1A-1. | Is a dismissal for failure to join indispensable party not an adjudication on the merits and cannot be granted with prejudice? | 025021.docx | LEGALEASE-00157744-LEGALEASE-00157745 | SA, Sub | 0.61 | | | 1 | | |
| 16796 | Save Our Springs All. v. City of Austin, 149 S.W.3d 0 | 307A×090 | Because a finding that a claim is not ripe results in dismissal without prejudice, the judgment below does not prevent appellants from litigating the merits of their claims in the future. | A finding that a claim is not ripe results in dismissal without prejudice. | Does a finding that a claim is not ripe result in dismissal without prejudice? | Pretrial Procedure - Memo 8 2954 - C - SN_62443.docx | ROSS00295629-ROSS-00295630 | Condensed, SA | 0.6 | | | | 1 | |
| 16797 | Fraizer v. Progressive Companies, 371 Ark. App 550 | 307A×090 | The general rule is that a dismissal for want of prosecution is a dismissal without prejudice. | The general rule is that a dismissal for want of prosecution is a dismissal without prejudice. | Is the general rule that dismissal for want of prosecution is a dismissal without prejudice? | Pretrial Procedure - Memo 8 2977 - C - DA_62616.docx | ROSS00279262-ROSS-00279263 | Condensed, SA | 0.02 | | | | 1 | |
| 16798 | Rizzo v. Cnty. of DE, 5A App 4N 721 | 307A×090 | The doctrine of retraxit finds its roots in the common law. At common law, a "retraxit" was "an open and voluntary renunciation of the suit in open court." (Stroughton v. Haver (1990) 95 Cal.App.3d 505, 506, 157 Cal.Rptr.3d 17; see also, Wentzley v. Gragg (1871) 5 N.Y. 400, 404; Black's Law Dictionary 408 (10th ed. 2014).) A dismissal with prejudice is the modern name for a common law retraxit. (Boeken v. Philip Morris USA Inc. (2010) 48 Cal.4th 788, 793, Lawr v. Comsat Corp. (1983) 195 Cal.App.4th 99, 64, 17 Cal.Rptr.2d 216.) | Dismissal with prejudice is the modern name for a common law retraxit | Is Dismissal with prejudice the modern name for a common law retraxit? | Pretrial Procedure - Memo 8 2993 - C - DA_62637.docx | ROSS00285155-ROSS-00285052 | Condensed, SA | 0.9 | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Headnote | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 14799 | Osborne v. Osborne, 2 Conn. App. 635 | 307A+593.1 | In her appeal, the plaintiff argues that the trial referee erred "in ruling that a discretionary notice" was entered, when in fact, a notice of record of the case to the referee or counsel was not sent, a time not recorded by the clerk." A failure to comply with an order of the court is good ground for a mistrial. Practice Book 131; Stanley v. Hartford, 140 Conn. 643, 648, 103 A.2d 147 [1954]. An order of nonsuit terminates an action when it is issued and no further proceedings are necessary. Stephenson, Conn.Civ.Proc. (2d Ed.) 156. The ministerial failure of the clerk to enter a judgment of nonsuit does not affect the validity of a judgment of nonsuit. A judgment of nonsuit is a pro forma action of a clerk and "the clerk of the court may nonsuit... a copy of the motion to the party against whom it is directed." Stephenson, Conn.Civ.Proc. (2d Ed.) 156. It is of no consequence that the plaintiff did not receive further notice. The original notice was sufficient. The plaintiff was fully aware that a nonsuit was to enter unless she complied with the order. | An order of nonsuit terminates an action when it is issued and no further proceedings are necessary. | Does an order of nonsuit terminate an action when it is issued and no further proceedings are necessary? | | Pretrial Procedure - Memo # 0844 - C - HE_42440.docx | ROSS-003281950-ROSS-003281951 | Condensed, SA | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14800 | Jose v. Indiana Nat. Bank of Indianapolis, 139 Ind. App. 272 | 228+590 | Capacity can also alter unwillful pursuant to Burns' s.2-2524, 1946 Replacement [1968 Supp.]. Unfortunately, this provision was not in effect at the time this action arose, for if it had been, the question before us now might not have arisen. The plaintiff contends that if judgment by way of a motion to dismiss, and by a motion for a summary judgment are the same, than both the res judicata doctrine and the plaintiff's plea bars at the same time of final determination of controversy at trial level so that the plaintiff wishes to pursue the matter, he has the right to appeal. | The practical effect of a judgment by way of a motion to dismiss and by a motion for summary judgment are the same and they both result in a final determination of controversy at trial level so that the plaintiff is adversely affected has a right to appeal. Burns' Ann.St. §2-1 [1967], §2-1011, 2-2524. | Are the practical effects of a judgment by way of a motion to dismiss and by a motion for summary judgment the same? | | Pretrial Procedure - Memo # 2829 - C - KG_42658.docx | ROSS-003293029-ROSS-003293030 | Condensed, SA, Sub 0.46 | | 1 | 1 | 1 | 1 |
| 14801 | Hehr v. Swendseid, 243 Cal. App. 2d 142 | 307A+593.1 | Concisely, a dismissal obtained "without prejudice" will nevertheless be "with prejudice" if obtained in contravention of a statute. Since it is the instant case, plaintiff's dismissal was obtained "without prejudice" even though a prejudice could have been set out. Hence, a dismissal "with prejudice" and should be modified to so state. | Dismissal obtained "without prejudice" will nevertheless be "with prejudice" if obtained in contravention of statute. West's Ann.Code Civ.Proc. § 581. | "Will a dismissal obtained "without prejudice" nevertheless be "with prejudice" if obtained in contravention of statute?" | | Pretrial Procedure - Memo # 0275 - C - SA_01976.docx | LEGALEASE-00156977-LEGALEASE-00156978 | Condensed, SA, Sub 0.55 | | 1 | 1 | 1 | 1 |
| 14802 | Blake v. Stinson, 5 So. 3d 615 | 307A+561 | "In Alabama, and many federal courts, the interest in disposing of the litigation on the merits is overcome and a dismissal may be granted where there is a clear record of delay, willful default or contumacious conduct by the plaintiff. Smith v. Wilcox County Board of Education, 365 So.2d [659], at 661 [Ala.1978]; Durr v. Boutwell Laboratories, Inc., 1077 So.2d [510] [Ala.Civ.App.2006]; Dobbs v. Boyett Brothers [Inc.], 453 F.2d 347 [5th Cir.1972]; willful default or conduct is a conscious or intentional failure to act. Seton Ins. Co. v. Jackson, 115 Ala.Pub Insur Co. [1971]. "Willful" is used in contradistinction to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct." | "Willful default," as it applies to a dismissal for want of prosecution, is conscious or intentional failure to act; no wrongful motive or intent is necessary to show willful conduct. Rules Civ.Proc., Rule 41(b). | Is wrongful motive or intent necessary to show willful conduct? | | Pretrial Procedure - Memo # 9732 - ROSS- 01272933 | ROSS-003297319-ROSS-003297833 | Condensed, SA, Sub 0.71 | | 1 | 1 | 1 | 1 |
| 14803 | CTL/Thompson Texas v. Starwood Homeowner's Ass'n, 461 S.W.3d 627 | 307A+690 | The plain language of section 150.002(e) provides that a certificate of merit dismissal "may be with prejudice." Tex. Civ. Prac. & Rem.Code Ann. §150.002(e) [West 2011]. This "may" makes clear that this provision is discretionary, not mandatory. Tex. Gov't Code Ann.§ 311.016(1) [West 2013]. A dismissal without prejudice in an adjudication of the parties' rights; a dismissal without prejudice is not. Tex Dep't of Family & Protective Servs., 273 S.W.3d 637, 653 [Tex 2009] (reg. The purpose of a dismissal with prejudice operates to bar the dismissed claims. See, e.g., Travelers Ins. Co. v. Joachim, 315 S.W.3d 860 [Tex. 2010]. But a dismissal without prejudice provides that the same cause may be filed within an entirely new cause. Crux v. Morris, 877 S.W.3d 45 [Tex.App.—Houston [14th Dist.] 1994, no writ] (explaining that "[a] dismissal order is taken to mean that a dismissal prejudice only to refile when in refilling in a new cause of action, not simply filing an amended complaint in the same cause." | A dismissal with prejudice operates as res judicata to bar the dismissed claims; but a dismissal without prejudice means that the same claims may be brought in an entirely new cause. | Does a dismissal with prejudice operate as res judicata to bar the dismissed claims? | | Pretrial Procedure - Memo # 10882 - C - PC_65986.docx | ROSS-003294553-ROSS- 003294554 | Condensed, SA | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 14804 | Metro. Transit Auth. v. Ray Exp. Agency, 323 Md.vs 707 | 307A+517.1 | After the ruling of the judge in the pre-trial session, it was optional with the plaintiff to discontinue its action so far as count 2 was concerned and, while remaining active in the suit with relation to the others, originally brought. It elected to go to trial at once on count 1. Pleadings, orders, and papers filed in court were to be interpreted in accordance with their true character without too much regard to the manner in which they are entitled. N.S. 1.5. Black's Law Dict. 1230 Mass. 15, 15, 165 N.E. 769, 49 A.L.R. 1251; Beaton v. Sentences, 200 Mass. 169, 175, 138 N.E.2d 1009. Eaton Trust Co., 228, Mass. 186, 176 N.E.2d 278. The judge in the present case was justified in treating the offered "waiver" as a discontinuance of count 1 to the maintenance of a subsequent action brought for the same cause. Fannum v. Brady, 269 Mass. 53, 55, 168 N.E. 165. Pontiff v. Alexander, 339 Mass. 514, 516, 70 N.E.2d 75. | A discontinuance is not a bar to the maintenance of a subsequent action brought for the same cause. | Is discontinuance a bar to the maintenance of a subsequent action brought for the same cause? | | Pretrial Procedure - Memo # 13364 - C - NC_43435.docx | ROSS-003305893-ROSS- 003305892 | Condensed, SA, Sub 0.91 | | 1 | 1 | 1 | 1 |
| 14805 | Nordstrom Credit v. Dep't of Revenue, 120 Wash. 2d 935 | 308+1 | Agency requires that both parties consent to the relationship and that the principal exercise control over the agent. Restatement [Second] of Agency § 1, Burns Sh. When both parties consent to the relationship, and that the principal exercise control over the agent, then Nordstrom's business activities, we hold that Nordstrom did not act as Credit's agent during the audit period. | Agency requires that both parties consent to the relationship and that the principal exercise control over the agent. | Does an agency require both parties consenting to the relationship? | | Principal and Agent - Memo #24 - RK_65544.docx | ROSS-003305929-ROSS- 003354270 | Condensed, SA | 0.7 | | 1 | 1 | 1 | 1 |

2958

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16806 | Townsend v. Univ. Hosp.-Univ. of Colorado, 83 S.W.3d 913 | 308+1 | We cannot presume an agency relationship exists. Gutierrez v. Deloitte & Touche, 100 S.W.3d 261, """", No. 04"01"00637"CV, 2002 WL 458898, at 6, 2002 Tex.App. LEXIS 2195, at 18 (Tex.App.-San Antonio Mar.27, 2002, no pet. h.); Johnson v. Owens, 629 S.W.2d 873, 875 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.). An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties. Elite Towing, Inc. v. LSI Fin. Group, 985 S.W.2d 635, 643 (Tex.App.-Austin 1999, no pet.). An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. Neeley v. Intercity Mgmt. Corp., 732 S.W.2d 644, 646 (Tex.App.-Corpus Christi 1987, no writ). An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent. Sendjar v. Gonzalez, 520 S.W.2d 478, 481 (Tex.Civ.App.-San Antonio 1975, no writ). This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task. Johnson, 629 S.W.2d at 875. The evidence clearly shows Weill was not an agent of any of the Colorado defendants. Although at one time he may have been a resident at UCH, the evidence is uncontroverted that, at the time he referred Olivares to UCH, he worked at a hospital in Dallas, Texas, and received no orders or money from any of the Colorado defendants. The evidence is factually sufficient to support the trial court's implied finding that Weill was not an agent of any of the Colorado defendants. | An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties. | Can agency be proven by circumstantial evidence? | Principal and Agent - Memo 441 - RK_63561.docx | ROSS-003293619-ROSS-003293620 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 16807 | Whitley v. Taylor Bean & Whitacker Mortg. Corp., 607 F. Supp. 2d 885 | 308+1 | "Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co., 376 F.3d 664, 672 (7th Cir.2004). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." Chemtool, Inc., v. Lubrication Techs., 148 F.3d 742, 745 (7th Cir.1998); Tribett v. BNC Mortgage Inc., No. 07 C 2809, 2008 WL 162755, 4, 2008 U.S. Dist. LEXIS 3573, at 12 (N.D.Ill. Feb. 17, 2009). The parties must consent to a principal-agent relationship, which may be created by conduct or contract. Chemtool, Inc., 148 F.3d at 745. In the broker-lender context, if the evidence indicates that "the broker had a close relationship or far more authority than that of simply bringing the borrower and lender together," then the Court "may deem the broker to be an agent of the lender." Taylor, Bean & Whitacker Mortgage Co. v. Cebulak, No. 03 C 7425, 2004 WL 2106605, 12, 2004 U.S. Dist. 18803, at 37"38 (N.D.Ill. Sept. 20, 2004). The existence and scope of an agency relationship are questions of fact. Tribett, 2008 WL 162755 at 4, 2008 U.S. Dist. LEXIS 3573 at 13. | The parties must consent to a principal-agent relationship, which may be created by conduct or contract. | Must the parties consent to a principal-agent relationship? | Principal and Agent - Memo 453 - RK_63573.docx | ROSS-003307710-ROSS-003307711 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 16808 | Eyerman v. Mary Kay Cosmetics, 967 F.2d 213 | 308+1 | An agency relationship contains three essential attributes. First, the agent must have the power to alter the legal relations between the principal and third parties. Restatement (Second) of Agency " 12; Funk v. Hancock, 26 Ohio App.3d 107, 498 N.E.2d 490, 493"94 (1985). Second, the agent must be a fiduciary of the principal in matters within the scope of the agency. Restatement (Second) of Agency " 13. Third, the principal must have the right to control the agent's conduct of matters entrusted to her. Restatement (Second) of Agency " 14; Hanson v. Kynast, 24 Ohio St.3d 171, 494 N.E.2d 1091, 1094 (1986). As Eyerman points out, a person may be both an independent contractor and an agent. Restatement (Second) of Agency " 14N. | Agency relationship contains three essential attributes; agent must have power to alter legal relations between principal and third parties, agent must be fiduciary of principal in matters within scope of agency, and principal must have right to control agent's conduct of matters entrusted to her. | Is an agent a fiduciary with respect to matters within the scope of the agency? | Principal and Agent - Memo 455 - RK_63575.docx | ROSS-003307525-ROSS-003307526 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 16809 | Basile v. H & R Block, 563 Pa. 359 | 308+1 | The law is clear in Pennsylvania that the three basic elements of agency are: " "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." " Scott v. Purcell, 490 Pa. 109, 117, 415 A.2d 56, 60 (1980), quoting Restatement (Second) of Agency " 1, Comment b (1958); see also Reid v. Ruffin, 503 Pa. 458, 463, 469 A.2d 1030, 1033 (1983). "[A]gency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." Smalich v. Westfall, 440 Pa. 409, 413, 269 A.2d 476, 480 (1971). The burden of establishing an agency relationship rests with the party asserting the relationship. Scott, 490 Pa. at 117 n. 8, 415 A.2d at 61 n. 8. "An agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit." Sutliff v. Sutliff, 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987), citing Restatement (Second) of Agency " 387 (1958). Thus, in all matters affecting the subject of the agency, the agent must act with the utmost good faith in furthering and advancing the principal's interests, including a duty to disclose to the principal all relevant information. See Sylvester v. Beck, 406 Pa. 607, 610-11, 178 A.2d 755, 757 (1962). | Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary. | Can agency be a result of an agreement for the creation of a fiduciary relationship? | Principal and Agent - Memo 499 - KK_63278.docx | ROSS-003321365-ROSS-003321366 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16810 | Przekopski v. Przekop, 124 Conn. App. 238 | 308+1 | "Agency is the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.... The one for whom action is to be taken is the principal.... The one who is to act is the agent.... The authority of the ... agent [is] defined by the terms of the power of attorney." Long v. Schull, 184 Conn. 252, 256, 439 A.2d 975 (1981). "[A] fiduciary relationship has always demanded a high degree of scrutiny.... [W]e have held ... that [p]roof of a fiduciary relationship ... imposes a twofold burden upon the fiduciary. Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary.... Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof ... by clear and convincing evidence...." Brown v. Villano, 49 Conn.App. 365, 368, 716 A.2d 111, cert. denied, 247 Conn. 904, 720 A.2d 513 (1998); see also Gorelick v. Montanaro, 119 Conn.App. 785, 807, 990 A.2d 371 (2010) ; Stuart v. Stuart, 112 Conn.App. 160, 171 n. 5, 962 A.2d 842 (2009), rev'd in part on other grounds, 297 Conn. 26, 996 A.2d 259 (2010). | "Agency" is the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. | Who is a principal? | 041926.docx | LEGALEASE-00157694-LEGALEASE-00157695 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 16811 | APSB Bancorp v. Thornton Grant, 26 Cal. App. 4th 926 | 308+3(2) | Appellant concedes that it is an independent contractor. However, as independent contractor and agent are not mutually exclusive legal categories, our inquiry does not end here. (City of Los Angeles v. Meyer Bros. Parking System, Inc. (1975) 54 Cal.App.3d 135, 138, 126 Cal.Rptr. 545.) In Meyer Bros. it was held an independent contractor is also an agent when it contracts to act on behalf of a "principal" and is subject to the "principal's" control except with respect to the "agent's" physical conduct. (p. 138, 126 Cal.Rptr. 545.) | Independent contractor and agent are not mutually exclusive legal categories, and independent contractor is also an agent when it contracts to act on behalf of a principal and is subject to the principal's control except with respect to the agent's physical conduct. | Are independent contractors and agents mutually exclusive legal categories? | Principal and Agent - Memo 511 - KK_63289.docx | ROSS-003298508-ROSS-003298509 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 16812 | In re NetBank, 459 B.R. 801 | 308+1 | At a minimum, Plaintiff argues that the language in section 9(c) that each member of the Consolidated Group irrevocably appoints the Debtor as its "agent and attorney-in-fact" does not create a true principal-agent relationship between the Debtor and the Bank such that the Debtor's interest in the Tax Refund is limited to bare legal title held for the benefit of the Bank. As the Court previously noted, the substance of a transaction determines whether a true agency relationship has been created between parties to a contract whether or not one of the parties to the contract is described in the contract as an agent of the other. Shulman Transport, 744 F.2d at 295. An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control. The Court finds that the language in 9(c) does not subject the Debtor to the direction or control of any member of the Consolidated Group and does not establish a principal-agent relationship between the members of the Consolidated Group and the Debtor. | Essential characteristic of agency relationship is that agent acts subject to principal's direction and control. | What is the essential characteristic of an agency relationship? | Principal and Agent - Memo 575- SB_63591.docx | ROSS-003319318-ROSS-003319319 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 16813 | In re Butler, 101 N.Y. 307 | 308+1 | According to the Washington Supreme Court, "an agency relationship results from the manifestation of consent by the [principal] to act on his behalf and subject to his control." Bain, 175 Wash.2d at 106, 285 P.3d 34. Similarly, the Restatement Third of Agency provides that "agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency, " 1.01 (2006). "The ... most crucial factor [in assessing agency] is the right to control the details of the work." Larner v. Torgerson Corp., 93 Wash.2d 801, 804"05, 613 P.2d 780 (1980). | Under Washington law, agency relationship results from manifestation of consent by principal for agent to act on his behalf and subject to his control. | Can actual authority be created by a principal's manifestation of consent? | Principal and Agent - Memo 579- SB_63595.docx | ROSS-003319530-ROSS-003319531 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 16814 | First Jackson Sec. Corp. v. B. F. Goodrich Co., 253 Miss. 519 | 308+3(1) | It is true that Mrs. Ferguson was an employee of appellant, but the word "employee" is not synonymous with the word "agent", because an agent is one who stands in the shoes of his principal; he is his principal's alter ego. In 2 C.J.S. Agency " 1 c., p. 1024 (1936), we find the following:An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do. | "Agent" is one who stands in shoes of his principal, and his principal's alter ego; word "employee" is not synonymous with "agent". | Does an agent stand in the shoes of the principal? | Principal and Agent - Memo 580- SB_63596.docx | ROSS-003281007-ROSS-003281008 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 16815 | First Jackson Sec. Corp. v. B. F. Goodrich Co., 253 Miss. 519 | 308+3(1) | It is true that Mrs. Ferguson was an employee of appellant, but the word "employee" is not synonymous with the word "agent", because an agent is one who stands in the shoes of his principal; he is his principal's alter ego. In 2 C.J.S. Agency " 1 c., p. 1024 (1936), we find the following:An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can d | "Agent" is one who stands in shoes of his principal, and his principal's alter ego; word "employee" is not synonymous with "agent". | Can an agent be his principal's alter ego? | 042083.docx | LEGALEASE-00157804-LEGALEASE-00157805 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 16816 | In re Ricky T., 87 Cal. App. 4th 1132 | 3.77E+11 | Section 422 requires that the threat be "so unequivocal, unconditional, immediate, and specific [that it] convey ... a gravity of purpose and an immediate prospect of execution of the threat...." (Italics added.) It is clear that the nature of the threat cannot be determined only at face value. Section 422 demands that the purported threat be examined "on its face and under the circumstances in which it was made." The surrounding circumstances must be examined to determine if the threat is real and genuine, a true threat. (People v. Bolin (1998) 18 Cal.4th 297, 339"340, 75 Cal.Rptr.2d 412, 956 P.2d 374 (Bolin ); United States v. Kelner (2d Cir.1976) 534 F.2d 1020, 1026"1027.) | Surrounding circumstances must be examined to determine if threat which gives rise to charge of terrorist threat is real and genuine, a true threat. West's Ann.Cal.Penal Code S 422. | Why must the surrounding circumstances of a threat be examined? | "Threats, Stalking and Harassment- Memo #129 - C - LB_63323.docx" | ROSS-003295061-ROSS-003295062 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,073 |
| 158817 | Troxel v. Hazen, 53 N.H. 596 | 323m697 | Upon the authority of Owens v. Owens, 38 N. H. 425, and Plummer v. Prescott, 43 N. H. 277, it would seem to be settled that, as the wood was cut and severed from the soil and within the time stipulated, it became the personal property of the plaintiff, and could not be removed by the purchaser after the time for removal had expired, that they might have entered and removed it by simply making themselves liable for the actual damages done to the defendant in removing the same from his close. | A conveys to B a lot of land, reserving all the wood and timber standing and blown thereon, with ten years to remove the same. Whatever wood and timber A, cuts and severs from the soil within the ten years becomes his personal property, and he may enter and remove the personal property after the time has expired, although he cannot remove the same after the expiration of the year without trespassing upon B. | Can a wood or tree become a personal property? | Woods and Forest - Memo 01- 58_6-8604.docx | ROSS-003277977-ROSS-003277979 | Condensed, SA, Sub 0.21 | 0.21 | | 1 | | | 1 |
| 158818 | Marshall v. Staley, 528 P.2d 964 | 331m481 | The executor claims that there was no consideration for the assignment of the note. We disagree. The record reveals that there was a very close family relationship between the decedent and the defendants. The love and affection between them, as shown by the record, was sufficient consideration to support the assignment of the note from the decedent to defendants. Owens v. Owens's Estate, 60 Colo. 73, 152 P. 117 s. | Love and affection between decedent and his stepdaughters was sufficient consideration to support assignment of note from the decedent to his stepdaughters. | Is love and affection sufficient consideration to support an assignment? | Bills and Notes - Memo 1428 - HK_6-3811.docx | ROSS-003508243 | Condensed, SA, Sub 0.62 | 0.62 | | 1 | | | 1 |
| 158819 | Hawley v. Anchor Motng. Corp., 464 F.3d 760 | 172H+1342 | The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer. Rowe v. Grissinger Autotire, Inc., 314 F. 3d 113, 117 (7th Cir.2001) (citing Smith v. Cash Store Mngt., Inc., 195 F. 3d 325, 327-28 (7th Cir.1999)). As a result, Anchor's argument that "[t]he most illuminating fact demonstrating the clarity of Anchor's Notice is that the plaintiff simply was not confused" misses the point. Whether a particular disclosure is clear for purposes of TILA is a question of law that "depends on the contents of the form, not on how it affects any particular reader." Smith v. Check N Go of Ill., Inc., 200 F.3d 511, 515 (7th Cir.1999). | The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | Is the sufficiency of TILA-mandated disclosures determined from the standpoint of the ordinary consumer? | Consumer Credit - Memo 216 - KL_6404.docx | ROSS-003421869-ROSS-003201894 | SA, Sub | 0.75 | | | | 1 | |
| 158820 | Envin. City of Pittsburgh, 139 Pa. 241 | 156+322 | The doctrine of estoppel is founded on considerations of sound public policy. There are circumstances in which the law will not permit a man to gainsay to the prejudice of another some act or statement of his, in reliance on which the other has acted. In Re Water' Appeal, 30 Pa. 523, 78 Am.Dec. 654, this court quoted with approval the following statement by Lord Denman in Pickard v. Scars, 6 Ad. & Ellis 469, 474: "The rule of law is clear that where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." This court said further, in Water's Appeal: "In Freeman v. Cooke, 2 Exchequer R. 663, Baron Parke approves of the principle as thus defined, cites numerous cases in support of it, and tells us that by the term 'wilfully,' as used by Lord Denman, we are to understand, if not, that the party represents as true what he knows to be untrue, at least that he means his representations to be acted upon, and that it is acted upon accordingly. | The doctrine of "estoppel" is founded on considerations of sound public policy. | Is the doctrine of estoppel founded on considerations of sound public policy? | 03786-6.docx | LEGALEASE 00150210- LEGALEASE 00150211 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | 1 |
| 158821 | Sautloff v. City of San Diego, 35 Cal. App. 4th 697 | 183+1 | The court have delineated factors which are used to evaluate whether or not a government contract creates in the grantee a franchise subject to the franchise tax. Civil Pac v. City of San Diego, supra, 15 Cal.App.3d at page 987, 93 Cal.Rptr. 649 explains that the term franchise, as used in San Diego's Charter, "refers generally to a special privilege conferred upon a corporation or individual by a government duly empowered to grant it. [Citations.] To confer a privilege to conduct a particular operation by a vital public service, state a franchise must pertain to a privilege that only the government can bestow and which is essential to the performance of the general function of the private party) and while the concept of a franchise does not require "continuation in perpetuity, ... [it] involves some degree of permanence and stability." (Id. at p. 989, 93 Cal.Rptr. 649.) | In addition to criteria that privilege conferred upon corporation or individual by government duly empowered to grant it involve vital public service, municipal "franchise" must pertain to privilege that only government can bestow and which is essential to performance of general function of private party, while concept of franchise does not require continuance in perpetuity, it involves some degree of permanence and stability. | Is franchise a privilege available to individuals? | 08575.docx | LEGALEASE 00158761- LEGALEASE 00158762 | Condensed, SA, Sub 0.38 | 0.38 | 0 | 1 | | | 1 |
| 158822 | E.M. Bailey Distrib. Co. v. Conagra, 676 S.W.2d 770 | 183+1 | A franchise is generally defined as a right or privilege granted by a sovereign power, government or governmental entity to party to do some act which such party could not otherwise do without a grant from the government. Mt. Vernon Tel Co. v. Collet of St. Vernon, 333 Ky. 70, 230 S.W.2d 143 (1956); Louis Werner Saw Mill Company v. City of Louisville, 227 Ky. 376, 13 S.W.2d 284 (1929). A franchise is a grant of a right to use public property or at least the property over which the granting authority has control. [Per Wintersheimer, J., Vol.24.141 (1979)] A franchise is a grant of a right to use public property over which the granting authority has control Young v. City of Morehead, 314 Ky. 4, 233 S.W.2d 978 (1950)). | A franchise is a grant of a right to use public property or at least the property over which the granting authority has control. | Is franchise a right to use public property? | 03807.docx | LEGALEASE 00158870- LEGALEASE 00158871 | Condensed, SA, Sub 0.63 | 0.63 | | 1 | | | 1 |
| 158823 | Ford v. Sabin, 19 Idaho, 154 | 289+774 | Where one of two partners subscribes the co partnership name as surety to a note, and the action is on the maker, and the burden of proving the authority or consent of the other partner, lies on the creditor or holder of the note. | Where one of two partners subscribes the partnership name as surety to a note, the burden of proving the authority and consent of the other partner lies on the creditor. | Does the burden of proving that the partner who did not sign consented to be bound lie on the creditor? | 02529.docx | LEGALEASE 00158727- LEGALEASE 00158728 | Condensed, SA, Sub 0.41 | 0.41 | | 1 | | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16824 | Shattuck v. Chandler, 40 Kan. 516 | 289+869 | The second assignment offered in evidence presents a more difficult question. In many of the states the doctrine is held that a surviving partner cannot make a general assignment, and in those states the theory upon which the decisions were rendered is that at the death of one partner the surviving partner becomes trustee of the partnership estate, and that he has no power to transfer the trust so created to another trustee. This seems to be the doctrine held in New York. See Nelson v. Sutherland, 36 Hun, 327; Loeschigk v. Hatfield, 51 N. Y. 660; Cushman v. Addison, 52 N. Y. 628; also Tiemann v. Malliter, 71 Mo. 512; Vosper v. Kramer, 31 N. J. Eq. 420. On the other hand, it has been held by some of the states that the surviving partner may make a general assignment of a partnership; and to this effect are numerous decisions, among which is Emerson v. Senter, 118 U. S. 3, 6 Sup. Ct. Rep. 981, in which case the court held that the surviving partner could make a general assignment. | Comp.Laws 1885, c. 37, art. 2, provides that on the death of a partner the property shall be appraised and remain in the possession of the surviving partner, and if he sees fit to continue its management, and the disposing of the assets, and the payment of the debts, he may do so on giving bond; and the probate court may cite him to an accounting, and adjudicate on his accounts as on those of an administrator; and, in case of his failure to faithfully administer the estate, suit may be brought on his bond; and, if he refuse to give bond and take charge of the property, the deceased partner's administrator shall wind up the business. Held, that these provisions, being ample for their purpose, deprive the surviving partner of the power to transfer his trust by assigning for the benefit of creditors. | Does a surviving partner have the power to make an assignment of the partnership estate? | 022636.docx | LEGALEASE-00158846-LEGALEASE-00158847 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 16825 | Madison County Bank v. Gould, 5 Hill 309 | 289+1145 | If a special partner transact any business on account of the firm--e. g. by negotiating the purchase of real estate for them--he thereby loses his character and protection as a special partner, and becomes liable as a general partner in respect to all the debts of the firm. Per BRONSON, J. | A special partner, transacting any business for the firm, becomes a general partner, and liable for the debts of the firm. | "If a special partner transacts any business on account of a partnership, will he be deemed to be a general partner?" | 022729.docx | LEGALEASE-00158550-LEGALEASE-00158551 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 16826 | Ankeny v. Lockheed Missiles & Space Co., 88 Cal. App. 3d 531 | 302+8(1) | Plaintiff's complaint is also uncertain. In the complaint, he alleges conclusions of law such as "tortiously caused" and "conspired to tortiously cause" acts of an unspecified nature which somehow caused plaintiff to be passed over for promotion and deprived of stewardship in his union. It is settled law that a pleading must allege facts and not conclusions, and that material facts must be alleged directly and not by way of recital.(Vilardo v. County of Sacramento (1942) 54 Cal.App.2d 413, 418-419, 129 P.2d 165.) Also, in pleading, the essential facts upon which a determination of the controversy depends should be stated with clearness and precision so that nothing is left to surmise. (Philbrook v. Randall (1924) 195 Cal. 95, 103, 231 P. 739.) Those recitals, references to, or allegations of material facts which are left to surmise are subject to special demurrer for uncertainty. (Bernstein v. Piller (1950) 98 Cal.App.2d 441, 443-444, 220 P.2d 558.) Such conclusionary allegations as are noted above, without facts to support them, are ambiguous. Plaintiff argues only that defendant complains of insufficient facts, not uncertainty. However, examination of the pleading with reference to these points shows the allegations to be ambiguous, hence uncertain. We conclude, therefore, that the trial court was also correct in sustaining the special demurrer to plaintiff's complaint. | Pleading must allege facts and not conclusions and material facts must be alleged directly and not by way of recital. | Should material facts be alleged by way of recital? | 023813.docx | LEGALEASE-00158326-LEGALEASE-00158327 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 16827 | Cuthburtson v. Harry C. Harter Post No. 839 of the V.F.W., 245 Iowa 922 | 302+17 | We cannot close this phase of the case without expressing our disapproval of the defendant's evasive effort to plead the statute of limitations and then seek to have the case decided on that issue after the plaintiff sought to meet it. It should be kept in mind it was first presented in argument on the original submission. The issues of a law suit should be presented in an open and forthright manner. There is no justification for a pleading by innuendo in our procedure. | The issues of a law suit should be presented in an open and forthright manner, and there is no justification for a pleading by innuendo. | Should the issues of a law suit be presented in an open and forthright manner? | 023833.docx | LEGALEASE-00158810-LEGALEASE-00158811 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 16828 | Matheson v. Am. Carbonics, 867 S.W.2d 146 | 307A+699 | Rule 165a(3) provides that a judge shall set a hearing on a motion to reinstate as soon as practicable and notify all parties or their attorneys of record of the date, time, and place of the hearing. Tex.R.Civ.P. 165a(3). The rule is mandatory, and the trial court has no discretion about whether to set a hearing on the motion. Thordson v. City of Houston, 815 S.W.2d 550, 550 (Tex.1991). An oral hearing is required on any timely filed motion to reinstate. Gulf Coast Inv. Corp. v. Nasa 1 Business Ctr., 754 S.W.2d 152, 153 (Tex.1988). | Oral hearing is required on any timely filed motion to reinstate following dismissal for want of prosecution, absent affirmative waiver of hearing by movant, and trial court has no discretion about whether to set hearing. Vernon's Ann.Texas Rules Civ.Proc., Rules 165a, 165a, subd. 3. | Is an oral hearing required on any timely filed motion to reinstate? | 025561.docx | LEGALEASE-00158092-LEGALEASE-00158093 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 16829 | Munster v. Bill Watson Ford, 970 So. 2d 36 | 307A+690 | In this case, the trial court dismissed with prejudice the non-party defendant that Appellants sought to add to their unprescribed claim, even though the trial court had granted Appellants' motion for leave to amend their petition. Pursuant to the res judicata doctrine and Louisiana case law, a dismissal with prejudice has the effect of a final judgment of absolute dismissal and constitutes a bar on the same cause of action. La.C.C.P. art. 1673; Dean v. The City of New Orleans, 2005-1347, p. 3 (La.App. 4 Cir. 7/12/06), 936 So.2d 851, 852. A dismissal with prejudice is a severe penalty that should be reserved only for extreme circumstances. Allen v. Smith, 390 So.2d 1300, 1301 (La.1980); L & M Hair Products, Inc. v. State, Dept. of Transp. & Dev., 29,998, p. 5 (La.App. 2 Cir. 12/10/97), 704 So.2d 415, 418-19. | A dismissal with prejudice is a severe penalty that should be reserved only for extreme circumstances. | Is a dismissal with prejudice a severe penalty that should be reserved only for extreme circumstances? | Pretrial Procedure - Memo # 10900 - C - PC_63898.docx | ROSS-003281444-ROSS-003281445 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 16830 | Couchman v. Cardona, 471 S.W.3d 20 | 307A+693.1 | A motion to dismiss with prejudice under this chapter is a sanction meant "to deter meritless claims and bring them quickly to an end." CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc., 390 S.W.3d 299, 301 (Tex.2013). A motion to dismiss with prejudice, then, is a motion for sanctions relief. See id. at 300"01. A motion to dismiss with prejudice survives a nonsuit filed by a plaintiff. See id. at 300. Even after a dismissal without prejudice is entered following a plaintiff's nonsuit, the party seeking dismissal with prejudice can appeal the denial of the sanctions relief. See id. at 301. | A motion to dismiss with prejudice survives a nonsuit filed by a plaintiff. | Does a motion to dismiss with prejudice survive a nonsuit filed by a plaintiff? | Pretrial Procedure - Memo # 10943 - C - MS_63708.docx | ROSS-003296388-ROSS-003296389 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 16831 | Dir. of Ins. ret. State v. A & A Midwest Rebuilders, 383 Ill. App. 3d 721 | 170H+292 | The first words are dispositive of federal courts to distinction between dismissing an action and dismissing a complaint… | Federal law shows a distinction between dismissing an action and dismissing a complaint? | Does federal law show a distinction between actions and dismissing a complaint? | 025744.docx | LEGALEASE 00158633-LEGALEASE 00158634 | Condensed_SA | 0.85 | 0 | 1 | | 1 | |
| 16832 | Mobil Oil Corp. v. Bransford, 648 So. 2d 119 | 307A+593.1 | Finally, we address one further aspect of the district court's rejection… | Dismissal of any claim against apparent agent also requires dismissal of same claim against apparent principal. | Does dismissal of any claim against an apparent agent also require dismissal of a same claim against an apparent principal? | Pretrial Procedure - Memo # 13061 - C - RF_64128.docx | ROSS-003242390+ROSS-003242391 | Condensed_SA | 0.89 | | 0 | 1 | | |
| 16833 | Waske v. Welch, 8 So. 2d 128 | 307A+551 | When an action is premature, it must be dismissed, reserving, however, plaintiff the right to bring it in due time. Code Prac. art. 158. | When an action is premature, it must be dismissed, reserving, however, to the plaintiff, the right to bring it in due time. Code Prac. art. 158. | "When an action is premature, it should it be dismissed?" | Pretrial Procedure - Memo # 13060 - C - SA_43497.docx | ROSS-003284050+ROSS-003284551 | Condensed_SA, Sub | 0.03 | 0 | 1 | | 1 | |
| 16834 | Ortega v. Transamerica Ins. Co., 91 N.M. 31 | 307A+593.1 | The first point to consider is what is contained in the order of the district judge. As we noted above, Counts I and II were dismissed "without prejudice"… | Effect of dismissal without prejudice that it ordinarily imports further proceedings. | Is an effect of a dismissal without prejudice that it ordinarily imports further proceedings? | Pretrial Procedure - Memo # 11110 - C - VP_63778.docx | ROSS-003280821-ROSS-003280822 | Condensed_SA | 0.89 | | 0 | 1 | | |
| 16835 | In re D.S.M., 116 S.W.3d 224 | 307A+508 | A claim for affirmative relief is a pleading that states facts showing a cause of action independent of the plaintiff's claim. Bass v. Hoover, Bass & Peeler, 816 S.W.2d 276 (Tex. App.—Houston [14th Dist.] 1991, writ denied). This claim would allow the party to recover benefits, compensation, or relief independent of plaintiff's claim. (A) Pleasants, 873 S.W.2d d 291 (Tex.)… | A "claim for affirmative relief" is a pleading that states facts showing a cause of action independent of the plaintiff's claim and allows defendant to recover benefits, compensation, or relief despite plaintiff's abandonment or failure to establish a claim. | Can a prior pleading be a claim for relief? | 039552.docx | LEGALEASE 00192208-LEGALEASE 00192209 | Condensed_SA | 0.89 | 1 | 1 | | 1 | |
| 16836 | Rucherdam v. Freightliner Corp., 131 Id 1024 | 308+311 | The district judge erred in allowing the case to go to the jury even if we indulge the dubious proposition that Schmeiss's demurrer to R43's that R43 is a premise concerning the horsepower of the wheels… | Automobile dealer or other similar type of dealer who merely buys goods from manufacturers or other suppliers for resale to consuming public is not his supplier's agent. | Can the agent bind his principal with representations made to his supplier's agent. | Principal and Agent RK_63937.docx | ROSS-003213655-ROSS-003213656 | Condensed_SA | | | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 16837 | Kirgan & Co. v. Silvers, 13 Ill. App. 60 | 308+3(1) | Legal difference between agent and servant is that agency implies commercial or contractual dealing between two parties through another, while service refers to action or and concerning things a deals with matter of manual or mechanical execution. | The Kirgans, to whom we are indebted for many of the principles of agency, in his tersely stage of their laws used the terms "mandatum" (to put into one's hand, or confide) to the discretion of another) and "mandatum" (to trust or confide) ... | What does service deal with? | Principal and Agent Memo 393 RK_4394.docx | ROSS-003276964-ROSS-003276961 | Condensed, SA, Sub 0.87 | 0.87 | 0 | 1 | 1 | 1 | |
| 16838 | Amaral v. City of Franklin, 83 Wis. 2d 40 | 308+150(1) | An agent may or may not be a servant; if he is not a servant, his principal is not vicariously liable for his negligent physical conduct except under certain circumstances. | 2 Instruction No. 4000, which was submitted to the jury, asked the jury whether Karaim was the City's agent. Since the doctrine of respondeat superior is called into play only if one who is found to be a agent can be further identified as a servant... | Can an agent be a servant? | Principal and Agent Memo 402 RK_4395.docx | ROSS-003283073-ROSS-003283076 | Condensed, SA, Sub 0.68 | 0.68 | 0 | 1 | 0 | 1 | |
| 16839 | California Real Estate Loans v. Wallace, 18 Cal. App. 4th 1575 | 40+102 | For purposes of liability to third parties for torts, real estate salesperson is agent of broker who employs him or her, and broker is liable as matter of law for all damages caused to third persons by tortious acts of salesperson within course and scope of salesperson's employment. | Such law of Fiduciary duty constitutes a construct is that are ... (Cal Code, § 1573; Barretti v. Bank of America (1986) 183 Cal.App.3d 1362, 1369-1370; Calif. App. ... | "Is a salesperson, the agent of the broker?" | Principal and Agent Memo 473 RK_4396.docx | ROSS-003307912-ROSS-003307913 | Condensed, SA, Sub 0.7 | 0.7 | 0 | 1 | 1 | 1 | |
| 16840 | Tax Matrix Techs. v. Wegmans Food Markets, 154 F. Supp. 3d 157 | 308+48 | Under Pennsylvania law, an agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit. | Similarly, Wegmans' attempt to shoehorn Tax Matrix's debt collection practices into this duty-of-loyalty box is misplaced... | Does an agent have a duty to be loyal to his principal? | 04-3959.docx | LEGALEASE-00100972-LEGALEASE-00100972 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18841 | Gipson v. Davis Realty Co., 215 Cal. App. 2d 190 | 30841 | An real estate salesman agents of the broker? | We are satisfied, accordingly, that while it may be a question of fact whether in each case a real estate salesman is an employee within the common law definition of master and servant, the Legislature has, by virtue of its statutory enactment, made such a salesman an agent of the broker as a matter of law. A consideration of the several statutory provisions applicable to a real estate salesman impels the conclusion that such person can act only for, on behalf of, and in place of the broker under whom he is licensed, and that his acts are limited to those which he does and performs as an agent for such broker. (Gilbane v. Nevada Realty Corp., 58 Cal.App.2d Supp. 900, 906, 136 P.2d 164.) We conclude, therefore, that a salesman, insofar as his relationship with the broker who employs him is concerned, cannot be classed as an independent contractor. Accordingly, any contract which purports to change that relationship from that of agent to independent contractor is invalid insofar as being contrary to the provisions of the Real Estate Law. (See Civ.Code, §§ 1608, 1667.) It was immaterial here for the court, therefore, to instruct the jury that the contract of employment between Shugg and the respondent was "prima facie" evidence of their relationship, or to view the terms of the contract providing that the relationship was that of independent contractor. In the absence of such error it is reasonably probable that a result more favorable to the appellants might have been reached. (See People v. Watson, 46 Cal.2d 818,837 836, 299 P.2d 243.) | Are real estate salesmen agents of the broker? | 04595.docx | LEGALEASE 00150303 LEGALEASE 00150304 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 | 1 |
| 18842 | Matter of Assessment of Additional N. Carolina & Orange Cty. Sales Tax Against V.E. Pack. Corp. for Period from Apr. 1, 1972 through Mar. 31, 1976, 312 N.C. 211 | 371+1662 | Purpose of the state sales and use tax is twofold: The primary purpose is, of course, to generate revenue for the state. N.C.G.S. 105-164.2. The sales tax is, in effect, a tax imposed upon the retail merchant as a privilege tax for the right to engage in that business. Piedmont Canteen Service, Inc. v. Johnson, 256 N.C. 155, 119 S.E.2d 582 (1961). The tax is, however, designed to be placed on the consumer. N.C.G.S. 105-164.7. Manufacturing Co. v. Johnson, 264 N.C. 32, 140 S.E.2d 744 (1965) | Is the purpose of the state sales and use tax to generate revenue for the state? | 04289.docx | LEGALEASE 00150985 LEGALEASE 00150986 | Condensed, SA, Sub 0.69 | | 0 | 1 | 1 | 1 | 1 |
| 18843 | In re Marisol N., 115 A.D.3d 185 | 19048 | In proceeding in which three children petitioned the Family Court for the appointment of their natural mother as their guardian, purpose of Special Immigrant Juvenile (SIJ) status, which is a means to obtain lawful residency status in the United States, was to provide protective custody and safe haven to certain dependent children from abuse, neglect, or abandonment; the children's petitions for the appointment of their mother as their guardian, even though no new purpose of the appointment of the mother as guardian of the children, 8 U.S.C.A. § 1101(a)(27)(J)(i) to (iii), (K), 8 C.F.R. § 204.11(c); McKinney's SCPA 1201(3), 1703. | Does the procedure for the Special Immigrant Juvenile (SIJ) status involve the collaboration of state and federal systems? | 00767.docx | LEGALEASE 00160316 LEGALEASE 00160317 | Condensed, SA, Sub 0.67 | | 0 | 1 | 1 | 1 | 1 |
| 18844 | In re Mario S., 38 Misc. 2d 444 | 24+173 | Alien child, who was brought from Mexico to the United States by his mother to live with his father when he was about six months old, was eligible for special immigrant juvenile (SIJ) status; child was an unmarried person under 21 years of age at the time guardianship petition was filed, and was dependent on a state juvenile court as a result of court order appointing his father as his guardian, under the continuing jurisdiction of the Family Court, child's father had abandoned the alien New York law; it was in the alien child's best interest to remain in the United States, where he had been deported to Mexico, was not possible, child's reunification with his mother was tenuous given her apparent immigration status, and it was not in child's best interests to be returned to Mexico, as he would be a stranger in a foreign land were he to be forced to return there. Immigration and Nationality Act, § 101(a)(27)(J), 8 U.S.C.A. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). | Do eligibility requirements for juvenile immigrants hinge primarily on a reunification determination? | 00085.docx | LEGALEASE 00160474 LEGALEASE 00160475 | Condensed, SA, Sub 0.23 | | 0 | 1 | 1 | 1 | 1 |

2965

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16845 | Lehndorff Geneva v. Warren, 74 Wis. 2d 369 | 24+116 | Aliens within the jurisdiction of the state are unquestionably entitled to the equal protection of its laws. Yick Wo v. Hopkins (1889), 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed.2d 220; Mathews v. Diaz (1976), 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478. It is also beyond doubt that resident aliens enjoy the "heightened judicial solicitude" of a suspect class. Graham v. Richardson (1971), supra, 403 U.S. at 372, 91 S.Ct. 1848; Sugarman v. Dougall (1973), 413 U.S. 634, 642, 93 S.Ct. 2842, 37 L.Ed.2d 853; In re Griffiths (1973), 413 U.S. 717, 721, 93 S.Ct. 2851, 37 L.Ed.2d 910. In considering the applicability of these decisions to nonresident aliens, two points emerge. The first is that these cases deal only with resident aliens; second, the question of whether nonresident aliens constitute a suspect class has not been decided, either in these opinions or in any other jurisdiction. | Resident aliens enjoy the heightened judicial solicitude of a suspect class. | Are resident aliens a class of people who are appropriate for heightened judicial solicitude? | "Aliens, Immigration and Citizenship - Memo 64 - RK_64798.docx" | ROSS-003307202-ROSS-003307203 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 16846 | Sei Fujii v. State of California (1952) supra, 38 Cal.2d 718 | 24+123 | It is well established that all aliens lawfuly in this country have a right "to work for a living in the common occupations of the community". Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 10, 60 L.Ed. 131; Takahashi v. Fish and Game Comm., 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478. Much emphasis has been placed in argument on an asserted distinction between the right to engage in common callings and the right to own or use real property, but an examination of the authorities shows that the distinction has its roots and justification solely in the ancient common law system of feudal tenure,9 and it has no rational basis today. As pointed out above, the United States Supreme Court, in Takahashi v. Fish and Game Comm., 334 U.S. 410, 68 S.Ct. 1138, 1141, held that a California code provision denying commercial fishing licenses to persons "ineligible to citizenship" violated the equal protection clause and conflicted with the federal power to regulate immigration. It was assumed for the purposes of the Takahashi decision that one objective of the licensing law was "to protect California citizens engaged in commercial fishing from competition by Japanese aliens'. The opinion necessarily determined that such a purpose did not justify discrimination against persons ineligible to citizenship. If there is no constitutional basis for such discrimination in regard to work in "ordinary occupations," such as commercial fishing, in what way does the identical type of discrimination become valid where the work involves, as an incident, the ownership or possession of real property? | All aliens lawfully in the United States have right to work for living in common occupations of community. Nationality Act of 1940, SS 303, 701, as amended, 8 U.S.C.A. SS 703, 1001; Immigration Act of 1924, S 13(c), as amended, 8 U.S.C.A. S 213(c). | Do aliens have a right to work for a living in the common occupations of the community? | 006908.docx | LEGALEASE-00160101-LEGALEASE-00160102 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16847 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+292 | On this basis alone the Court of Appeals' decision as to respondent Lopez"Mendoza must be reversed. At his deportation hearing Lopez"Mendoza objected only to the fact that he had been summoned to a deportation hearing following an unlawful arrest; he entered no objection to the evidence offered against him. The BIA correctly ruled that "[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." In re Lopez"Mendoza, No. A22452208 (BIA, Sept. 19, 1979, reprinted in App. to Pet. for Cert. 102a. | Mere fact of illegal arrest had no bearing on subsequent deportation proceeding against alien who had objected only to fact that he had been summoned to a deportation hearing following unlawful arrest, but had entered no objection to receipt in evidence of admission, after arrest, of illegal entry into country. | Does an illegal arrest have bearing on a subsequent deportation proceeding? | "Aliens, Immigration and Citizenship - Memo 78 - RK_64812.docx" | ROSS-003310027-ROSS-003310028 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 16848 | Oates v. First Nat. Bank of Montgomery, 100 U.S. 239 | 83E+524 | In declaring that bills and notes of the former class were negotiable instruments, to be governed by the commercial law, the legislature necessarily intended to throw around such paper the same protection that had previously been given by statute to bills and notes payable at banks or private banking-houses. If such was not its object, then, confessedly, the act of 1873 was both meaningless and illusory. The duty of the court, being satisfied of the intention of the legislature, clearly expressed in a constitutional enactment, is to give effect to that intention, and not to defeat it by adhering too rigidly to the mere letter of the statute, or to technical rules of construction. Wilkinson v. Leland, 2 Pet. 627; Sedgwick, Const. and Stat. Constr. 196. And we should discard any construction that would lead to absurd consequences. United States v. Kirby, 7 Wall. 482. We ought, rather, adopting the language of Lord Hale, to be "curious and subtle to invent reasons and means "to carry out the clear intent of the law-making power when thus expressed. | Act Ala.1873, p. 111, puts "bills of exchange and promissory notes, payable in money at a certain place of payment therein designated," upon the same basis as to immunity from set-off, discount, or equities as bills and notes payable at a bank or private banking house. | What governs the bills of exchange and promissory notes payable in money at banks or private banking house? | 008987.docx | LEGALEASE-00159238-LEGALEASE-00159239 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 16849 | Lowry Nat. Bank v. Fickett, 122 Ga. 489 | 8.30E+266 | As applied to promissory notes, the term "renewal" has been held to mean "the re-establishment of the particular contract for another period of time."Kedey v. Petty, 153 Ind. 179, 54 N. E. 798. It has also been held that there might be such a thing as a renewal where the party was different, provided the obligation was of the same nature; as in a case where a widow gave her note in lieu of the note of her deceased husband for the same amount. Sponhaur v. Malloy, 21 Ind. App. 287, 52 N. E. 245. It has also been said that whether a new note is a renewal of another note depends upon the intention of the parties. Flanagin v. Hambleton, 54 Md. 227. Not only the definition of renewal, but also its application in the cases cited and in similar cases, carries the idea that an obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be. There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. | The term "renewal," as applied to a note, means the re-establishment of the particular contract for another period of time. | What is renewal as applied to a promissory note? | 009636.docx | LEGALEASE-00159893-LEGALEASE-00159894 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 16850 | Schwegmann Bank & Tr. Co. of Jefferson v. Falkenberg, 931 F.2d 1081 | 83E+533 | Under Louisiana law, a party acquires holder in due course status by becoming a holder of a negotiable instrument: (1) for value, (2) in good faith, and (3) without notice that it is overdue, that it has been dishonored, or that any person has a defense against it or a claim to it. See Bricks Unlimited, Inc. v. Agee, 672 F.2d 1255, 1258 (5th Cir.1982); La.Rev.Stat.Ann. " 10:3-302. Caldwell does not dispute the fact that the Bank of Commerce was a holder for value. Instead, his argument-although only vaguely referable to the statutory language-implies that the Bank of Commerce failed to take the note in good faith and without notice of his alleged personal defenses. | In deciding whether holder of negotiable instrument is holder in due course, under Louisiana law, court must examine facts surrounding transaction to determine whether holder took note in subjective good faith. LSA-R.S. 10:3-302. | Can a party acquire holder in due course status by becoming a holder of a negotiable instrument? | 010477.docx | LEGALEASE-00159866-LEGALEASE-00159867 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16851 | Veschi v. Nw. Lehigh Sch. Dist., 772 A.2d 469 | 92+1075 | Parents have constitutionally protected right to decide where child goes to school. The U.S. Supreme Court has held that IDEA was intended to give handicapped children both an appropriate education and a free education, and that its interpretation should not be used to defeat one or the other of those objectives. Each local education agency shall provide special educational services designed to meet the special educational needs of educationally deprived children residing in its district who are enrolled in private schools. Such educationally deprived children shall be provided genuine opportunities to participate therein consistent with the number of such educationally deprived children and the nature and extent of their educational deprivation. | Parents have constitutionally protected right to decide where child goes to school. | Do parents have a constitutional right to decide where their child attends school? | Education - Memo 257 - C - HJ_64174.docx | ROSS-003292819-ROSS-003292820 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 16852 | Collett v. Collett, 217 S.W.2d 60 | 156+54 | "The basis of estoppel is deception. There can be no estoppel in pais in the absence of deception. There can be no deception when the party pleading the estoppel had full knowledge of the truth of the matter." Shear Co. v. Wilson, Tex.Com.App., 294 S.W. 843; Gourley v. Iverson Tool Co. et al., Tex.Civ.App., 186 S.W.2d 726, writ ref. w.m. | There can be no estoppel in pais in absence of deception, which cannot exist when the party pleading estoppel has full knowledge of the truth of the matter. | Can there be no estoppel in pais in the absence of deception? | 017860.docx | LEGALEASE-00159248-LEGALEASE-00159249 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 16853 | Lone Mountain Prod. Co. v. Nat. Gas Pipeline Co. of Am., 710 F. Supp. 305 | 156+87 | The burden of proof and persuasion on issues of estoppel is on the party who asserts it. Corporation Nine v. Taylor, 30 Utah 2d 47, 513 P.2d 417, 420 (1973). Because the test for estoppel is objective in nature, the party asserting it must show that his reliance was reasonable under the circumstances. Big Butte Ranch, Inc. v. Holm, 570 P.2d 690, 691 (Utah 1977); Corporation Nine, 513 P.2d at 420. | Because test for estoppel is objective in nature, party asserting estoppel must show that his reliance was reasonable under the circumstances. | Is the test of estoppel objective? | 017901.docx | LEGALEASE-00159958-LEGALEASE-00159959 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 16854 | State ex rel. Peterson v. Quinlivan, 198 Minn. 65 | 101+1212 | The constitutional perpetuation of "rights, immunities, franchises and endowments' is somewhat redundant because of the inclusive nature as applied to corporations of the word "franchise" which "is generally used to designate a right or privilege conferred by law." Morawetz, Private Corporations, " 922. That being so, the general franchise to be a corporation is necessarily subject to the conditions and limitations expressed by the grant, both as to purpose and manner of exercise of the franchises. The selection of the original grantees and the method of determining who shall succeed them, when fixed by the grant, are of its essence and so a conditioning part of the franchise. | "Franchise" as applied to corporations is generally used to designate right or privilege conferred by law. | Is franchise a privilege conferred by law? | Franchise - Memo 28 - KNR_64624.docx | ROSS-003292654-ROSS-003292655 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 16855 | State ex inf. Shartel, ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337 | 183+2 | "The rule must be considered settled, that no person can acquire a right to make a special or exceptional use of a public highway, not common to all the citizens of the state, except by grant from the sovereign power." Jersey City Gas Co. v. Dwight, 29 N. J. Eq. 242, cited with approval in McQuillin on Municipal Corporations (2d Ed.) s 1745, note 59, vol. 4 pp. 643, 644. The power to grant franchises resides in the state, and a city, in granting a franchise, acts as agent for the state. In an effort to prevent usurpation of such delegated power, it is not improper for a municipality to be relator in a quo warranto proceeding. State ex inf. Jones v. Light & Development Co., 246 Mo. 618, 637, 152 S. W. 67. | Power to grant franchises resides in state, and city, in granting franchise, acts as state's agent. | Does the city act as agent of the state while granting franchises? | 018504.docx | LEGALEASE-00160020-LEGALEASE-00160021 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 16856 | Greenberg v. City of New York, 152 Misc. 488 | 48A+84 | The act of the transit commission in granting the certificate of convenience and necessity is altogether different in its nature from that of the board of estimate in granting the franchise. What the board of estimate does is not subject to any review or appeal; it is a true legislative act. Not so the action of the transit commission, which exercises certain police powers on behalf of the state in addition to quasi judicial functions and, in granting or denying a certificate of convenience and necessity, is subject to judicial review by the court on certiorari. See Matter of City of Long Beach v. Public Service Commission, 249 N. Y. 480, 164 N. E. 553; Matter of Richmond Railways, Inc., v. Gilchrist, 225 App. Div. 371, 233 N. Y. S. 184. | Action of board of estimate in granting bus franchise is not subject to review or appeal, but is true legislative act; but action of transit commission in granting or denying certificate of convenience and necessity is subject to judicial review by court on certiorari. | Is a certificate of convenience and necessity different from a franchise? | 018515.docx | LEGALEASE-00160057-LEGALEASE-00160058 | Condensed, Order, SA, Sub | 0.64 | 1 | 1 | 1 | 1 | 1 |
| 16857 | People ex rel. Roberts & Schaefer Co. v. Emmerson, 305 Ill. 348 | 371+2540 | Section 105, as we have seen, requires each corporation to pay an annual franchise tax on its authorized capital stock. Section 102 provides that each corporation shall make a verified annual report in writing to the Secretary of State on forms to be prescribed and furnished by him. This annual report shall disclose, among other things-- "such facts as are necessary to enable the Secretary of State to ascertain the proportion of its capital stock represented by business transacted and tangible property located in this state, and such other information as may be necessary or appropriate in order to assess the annual license fee or franchise tax." | Corporation Act of 1919, S 105, Similar provisions Corporation Act 1933, see S.H.A. ch. 32, SS 157.131-157.133, 157.138-157.140, requiring each corporation to pay annual franchise tax on its authorized capital stock, is not a property tax dependent on value of corporate assets, but is to be construed with reference to distinction between "capital stock" and "capital," the capital stock being the sum total fixed by the charter as the amount paid in or to be paid in as capital on which the corporation is to do business; capital may be increased by surplus profits or diminished by losses, but not the capital stock. | Is franchise tax paid annually? | 018527.docx | LEGALEASE-00159944-LEGALEASE-00159945 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 16858 | Marcoux v. Shell Oil Prod. Co. LLC, 524 F.3d 33 | 29T+270(4) | The PMPA makes a distinction between a "franchise" and the "franchise relationship." The franchise is a set of definite agreements for 1) lease of the premises, 2) the right to purchase gasoline for resale, and 3) the right to use the franchisor's trademark. 15 U.S.C. " 2801(1). "Franchise relationship" refers to the respective obligations of the franchisor and franchisee created by a franchise. Id. " 2801(2). The legislative history of the PMPA makes clear that "franchise" and "franchise relationship" were distinguished to drive home the fact that the franchise relationship survives the expiration of the agreements underlying the franchise. See S.Rep. No. 95"731, 95th Cong., 2d Sess. 30, 1978 U.S.Code Cong. & Admin.News at 888 ("The term "franchise relationship" is utilized to avoid any contention that because the "franchise" does not exist there is nothing to renew."). The structure and history of the PMPA emphasize Congress's view that the franchisees have a reasonable expectation that the franchises would be renewed and that the relationships would continue. | District court set appropriate threshold for materiality of breach required for constructive termination under PMPA, in instructing jury that it could find constructive termination only if breach of lease was such material change that it effectively ended lease, even though gasoline service station franchisees continued to operate business, and that question was not simply whether lease was breached, but whether breach effectively ended franchise relationship. Petroleum Marketing Practices Act, S 101 et seq., 15 U.S.C.A. S 2801 et seq. | Does the Petroleum Marketing Practices Act make a distinction between franchise and franchise relationship? | Franchise - Memo 57 - ANG_64645.docx | ROSS-003294620-ROSS-003294621 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,029 |
| 18659 | Denault, Georges v. Shell Oil Co., 144 F.3d 846 | 291v297 | On March 6, 2000, the district court granted the defendants' motion for summary judgment, and remanded to judgment the first claim day… [long text] | A petroleum franchisor cannot circumvent the PMPA's prohibition on conditioning renewal of franchise on franchisee's release or waiver of rights under federal or state law by offering to renew the parties' franchise relationship on terms and conditions contained in a prior franchise agreement… 15 U.S.C.A. §§ 2802(a), 2802(b)(3)(A), 2805(f)(1). | When can a franchisor decline to renew a franchise? | 018577.docx | LEGALEASE 00159144-LEGALEASE 00159166 | Condensed, SA, Sub 0.49 | 0.49 | 0 | 1 | | 1 | |
| 18660 | City of Maxwell v. Local No. 1314, Int'l Ass'n of Firefighters, 205 Cal. 53 Mich. App. 547 | 217v1718 | Insurance policies are contracts to indemnify against contingent losses… [long text] | A comprehensive hospital service and care certificate issued under Blue Cross is not a "contract of insurance," so that such certificate would not be "property" in the sense of insurance… | Does a contract entitling certificate holders to medical services or supplies at free or reduced rates amount to insurance? | 019074.docx | LEGALEASE 00159934-LEGALEASE 00159935 | Condensed, SA, Sub 0.72 | 0.72 | | 1 | | 1 | |
| 18661 | Farmers Ins. Exch. v. Enter. Leasing Co., 281 Va. 612 | 217v1001 | Farmers' reliance on this rule is misplaced because the rule applies to insurers, not self-insurers… [long text] | Self-insurance does not involve the transfer of a risk of loss, but rather a retention of that risk, making it the antithesis of insurance. | Does self-insurance involve risk of loss? | 037006.docx | LEGALEASE 00159587-LEGALEASE 00159588 | Condensed, SA | 0.86 | | 1 | 0 | 1 | |
| 18662 | Two In's Golf & Country Club v. Town of Forest Park, 123 P.3d 5 | 371v3602 | The state sales tax is imposed upon sales to consumers in Oklahoma of specific services and of tangible personal property… [long text] | The state sales tax is an excise tax rather than a property tax or an income tax. | Is the state sales tax an excise tax rather than a property tax or an income tax? | 044226.docx | LEGALEASE 00159833-LEGALEASE 00159884 | SA, Sub | 0.72 | | 0 | | 1 | |
| 18663 | Dyno Nobel v. Dir. of Revenue, 75 S.W.3d 24 | 371v3603 | Use tax and sales tax are designed to complement one another. House of Lloyd, Inc. v. Director of Revenue, 884 S.W.2d 272, 274 (Mo. banc 1994). | Use tax and sales tax are designed to complement one another. | Are use tax and sales tax designed to complement one another? | Taxation - Memo 1110-C-VA_845.64.docx | ROSS-000278883-ROSS 000278884 | Condensed, SA | 0.58 | | 0 | 1 | 1 | |
| 18664 | Mr. B's v. City of Chicago, 302 Ill. App. 3d 930 | 371v3602 | An occupational tax is one that is practical effect imposes a tax upon a given occupation or the privilege of particular business… [long text] | A "sales tax" is commonly understood to be a tax on the sale of tangible personal property. | Is a "sales tax" commonly understood to be a tax on the sale of tangible personal property? | Taxation - Memo 1115-C-VA_845.63.docx | ROSS-000329795/ROSS-000290450 | Condensed, SA | 0.88 | | 0 | 1 | 1 | |
| 18665 | Richard v. Connecticut Bar, Mfg. Co., 2004-D 681 | 816v23 | It is contended in behalf of the respondents that these are inland bills of exchange, and that therefore, by virtue of section 189 of the Negotiable Instruments Law, it was not necessary to protest them for nonacceptance… [long text] | Time drafts, payable four months after date, are drawn in New York for acceptance and payment in Japan, held "foreign bills of exchange," under Negotiable Instruments Law, SS 210, 213, the drawer of which was discharged by failure to protest them for nonacceptance and to give notice to him… | What is an inland bill of exchange? | Bills and Notes - Memo 75-KC-00100.docx | ROSS-000281731-ROSS-000381732 | Condensed, SA, Sub 0.52 | 0.52 | | 1 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 16866 | Lambal Banking Co. v. Haney, 9 Wkns. 6313 | 8:307>10 | Under the reported decisions of our state, beginning with the case of Fellows v. Harris, 12 Smedes & M. 461, and ending with the case of Fort v. Everette Co., 72 Miss. 809, 17 South. 765, it has been held that, where a note is made negotiable and payable in another state, it must be governed by the law of that state. This has been the unbroken authority of this court of late years since... Harris, 12 Smedes & M. 462; Miller v. Mayfield, 37 Miss. 688, Emenuel v. White, 34 Miss. 56, 69 Am. Dec. 390; Coffman v. Bank, 41 Miss. 212, 90 Am. Dec. 371; Bank of Louis v. Williams, 46 Miss. 625, 12 Am. Rep. 319; Dalton v. Murphy, 30 Miss. 59; Iken v. Foundry Co., 72 Miss. 809, 17 South. 765... of that state. Emsley Lumber Co. v. Jones, 121 Ala. 54, 25 South. 729. | A note executed within this state, but negotiable and payable in another state, must be governed by the law of that state, though given for the price of property and receiving title to the property until full payment. | What law governs a note which is payable in another state? | Bits and Notes - Memo 137< _K_66273.docx | ROSS-003321142-ROSS-003321143 | Condensed, SA, Sub 0.8 | 0.8 | 0 | 1 | | 1 | |
| 16867 | Garner v. State, 858 1 W.2d 666 | 135>>H6 | Before failure to object constitutes an implied consent to a mistrial, a defendant must have had an adequate opportunity to object to the court's motion. Govt. 367 U.S. at 368, 81 S.Ct. at 1329*25, 6 L.Ed.2d et 900; Litten, 83 S.W.2d at 79,748; Torres, 614 S.W.2d at 441 42. Moreover, consent will not be implied when a silent record... 591 1 Tex. App.-Austin 1993, noph). | In determining whether mistrial the mistrial violates double jeopardy clause, before defendant's failure to object constitutes an implied consent to mistrial, defendant must be given adequate opportunity to object to court's motion. U.S.C.A. Const.Amend. 5. | Will consent to be inferred from a silent record? | 03D891.docx | LEGALEASE-00160747-LEGALEASE-00160748 | Condensed, SA, Sub 0.37 | 0.37 | | 1 | | 1 | |
| 16868 | AeroGlobal Capital Mgmt. v. Cirrus Indus., 871 A.2d 428 | 156>52.10(2) | It is well-settled that where the contractual requirements or conditions may be waived. [II] However, the standards for proving waiver under Delaware law are "quite exacting" because "'waiver' involves the intentional relinquishment of a known right."61 It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights.62 The facts relied upon to prove waiver must be unequivocal. | The facts relied upon to prove waiver must be unequivocal. | Must the facts relied upon to prove waiver be unequivocal? | Estoppel - Memo241_C-CSS_65217.docx | ROSS-003292259-ROSS-003292296 | Condensed, SA 0.87 | 0.87 | | 1 | 0 | 1 | |
| 16869 | Terneco Inc. v. Enter. Prod. Co., 925 S.W.2d 640 | 156>52.10(2) | One theory upon which the Terneco Defendants sought summary judgment was the Contracts forter's waiver of any complaint about the First Transfer. The affirmative defense of waiver can be asserted against a party who intentionally relinquishes a known right. Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex.1987). A waivable right may spring from law or, in this case, from contract. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865 (1958); see also Allard, Monessey & Co. v. Knox, 619 S.W.2d 212, 223 (Tex.Civ.App.-Amarillo 1981, writ ref'd n.r.e.). A party's express renunciation of a known right can establish waiver. Knox, 619 S.W.2d at 213. Silence or inaction, for so long enough is also enough to prove waiver, id... | Party's express renunciation of a known right can establish waiver. | Can a party's express renunciation of a known right establish a waiver? | Estoppel - Memo 250 - C-CSS_65226.docx | ROSS-003281483-ROSS-003281485 | Condensed, SA 0.92 | 0.92 | | 1 | | 1 | |
| 16870 | Fadgry, Kelly, 4 Ga. App. 630 | 315>613 | Whenever the vendor, at the time of the sale, makes an assertion or representation respecting the condition of the thing sold, upon which he intends that the vendee shall rely, and upon which he, in making the purchase, or as in the instant case the exchange of horses, it amounts to a warranty. If, however, the vendor, by what he says, merely intends to express an opinion or belief about the matter, and not to make an affirmation of fact, then the statement will not amount to a warranty. Where doubts exist upon the evidence whether the vendor intended to assert a fact, or merely express an opinion or belief, that question should be left to the jury to decide. See, Snow v. Gragg, 1 Kans. (N.s.) 344, 71 Am.Dec. 489; Tuttle v. Brown, 4 Gray (Mass.) 457, 64 Am.Dec. 82; Kircher v. Mason, 53 Barb. (N.Y.) 601; Blair v. Vail, (Mo.App.) 201 S.W. 945. | More breach of warranty did not authorize the rescission of a horse swap. Capability of the rescission of a horse swap. | Can mere breach of warranty authorize the rescission of a horse swap? | Exchange of Property - Memo 70 - RK_64309.docx | 01338.docx | Condensed, SA, Sub 0.79 | 0.79 | 0 | 1 | | 1 | |
| 16871 | McGuire v. Thompson, 152 Neb. 28 | 343>162(47) | Whenever the vendor, at the time of the sale, makes an assertion or representation respecting the condition of the thing sold, upon which he intends that the vendee shall rely, and upon which he, in making the purchase, or, as in the instant case the exchange of horses, it amounts to a warranty... | An assertion or representation, made by one selling or exchanging personal property at the time of sale, which the purchaser relies upon and which he is induced to make the purchase, amounts to "warranty." | Do assertions or representations respecting the condition of the thing sold at the time of sale amounts to a warranty? | 01888.docx | LEGALEASE-00161797-LEGALEASE-00161798 | Condensed, SA 0.75 | 0.75 | | 1 | | 1 | |
| 16872 | Russell v. Phelps, 73 Vt. 390 | 315>754 | The contract was fully performed on the part of the plaintiff by the delivery of the harrow to the defendant and an acceptance thereof by him; but the contract was thereby ended, the defendant refused to deliver it to him. In this his refusal to deliver the single under the contract, we think, by which he bound himself to deliver, it must be deemed an act of conversion. Trover. A contract of exchange of property is governed by the same rules of law as a contract of sale, and upon breach thereof an action may be maintained for damages for the conversion or the same ratio of the property traded for, as well as an action on the contract for, breach. See, Gregg v. Wells, 10 Adolph & E. 90; Lumb v. Dowdy, 63 Vt. 60. | A contract of exchange of property is governed by the same rules of law as a contract of sale, and upon breach thereof an action may be maintained for damages for conversion of the property traded for, as well as an action on the contract itself. | Is a contract of exchange of property governed by the same rules of law as a contract of sale? | 01890.docx | LEGALEASE-00161799-LEGALEASE-00161800 | Condensed, SA 0.71 | 0.71 | | 1 | | 1 | |
| 16873 | People v. Shaw, 27 Mich. App. 325 | 181>2 | Where the specific card of three charged did not necessarily involve use a credit card to obtain or attempt to obtain goods, property or service credit card statute and took proscute or conviction under the Shaw statute... McCrory v. State (Miss.1968) 210 So.2d 877; People v. Churchill (1967), 255 Cal.App.2d 448, 63 Cal.Rptr. 312; 244 L.R.3d 996. | There is nothing in statute which makes it a misdemeanor to knowingly use a credit card to obtain or attempt to obtain goods, property or service regardless of whether charge is committed, which would preclude defendant, charged with forging credit card ticket, from being prosecuted under the general forgery statute since the two statutes do not cover the same subject matter. M.C.L.A. 55.750.219a, 750.248. | Will a specific credit card statute preclude a prosecution or conviction under the general forgery statutes? | 01M454.docx | LEGALEASE-00161872-LEGALEASE-00161873 | Condensed, Order, SA, Sub 0.02 | 0.02 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16874 | Reynolds v. Jefferson City, Bd. of Comm'rs of Jefferson Cty., 33 Wash. App 239 | 200e77(2) | | "Freeholder," for purpose of statutory requirement that petition to vacate county road be signed by ten freeholders residing in vicinity of road, is one who holds either legal or equitable title to real estate. West's RCWA 36.87.020. | Does a freeholder hold title to real estate? | Highways / Memo 441 - RK_0634.docx | ROSS-003100074 ROSS-00310075 | Condensed, SA, Sub 0.69 | 0.69 | 0 | 1 | 1 | 1 | |
| 16875 | Ingram-Chevigny v. Lewis & Clark Cty., 194 Mont. 43 | 200e73-1 | | General provision related to county roads stating that board of county commissioners shall discontinue or abandon county roads when freeholders properly petition therefor provides that county commissioner shall abandon county roads when sufficient petition is filed, while other requisite investigation is found to be feasible and desirable for use and benefit of public. MCA 7-14-2633(1). | Can freeholders of a road district petition the board of county commissioners for the abandonment of a particular road? | 033843.docx | LEGALEASE-00161739 LEGALEASE-00161740 | Condensed, SA, Sub 0.57 | 0.57 | 0 | 1 | 1 | 1 | |
| 16876 | Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am., 359 U.S. 65 | 217e1001 | | Underwriting of risk is the one earmark of insurance as it has commonly been conceived of in popular understanding and usage. | Can the earmark of insurance be described as the underwriting of risks? | 037012.docx | LEGALEASE-00161583 LEGALEASE-00161584 | Condensed, SA | 0.94 | 0 | 0 | 1 | 1 | |
| 16877 | Berdoko Marine v / V KENNY BOY, 741 F.Supp. 2d 697 | 217e1710 | | Under Louisiana insurance law, act of issuing an insurance policy is distinct from insuring per se; "insurer" is the party to a contract of insurance who assumes the risk and undertakes to indemnify the insured, or pay a certain sum on the happening of a specified contingency, while an "issuer" is one who brings policy into effect for subscribers. | Who is an insurer? | Insurance - Memo 118 - SM_65775.docx | ROSS-003203153- ROSS-003203154 | Condensed, SA, Sub 0.69 | 0.69 | 0 | 1 | 1 | 1 | |
| 16878 | Borwith v. Caravost, 43 U.S. 540 | 289e375 | | Though generally every partnership is dissolved by the death of one of the partners, it is true that it is competent for the partners to provide by agreement for the continuance of the partnership after such death, but then it takes place in virtue of such agreement only, on the will of the parties, and not by mere operation of law. A partner too may by his will provide that his partnership shall continue, notwithstanding his death, and if it is consented to by the surviving partner, it becomes obligatory, just as it would if the testator, being a sole trader, had provided that his continued activity in trade by his executor after his death. | Can a partnership agreement be continued after the death of a partner if the partnership agreement so provides? | 037068.docx | LEGALEASE-00161331 LEGALEASE-00161332 | Condensed, SA, Sub 0.48 | 0.48 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16879 | White v. Mazda Motor of Am., 313 Conn. 610 | 302+38.5 | To put the defendants on notice that the plaintiff intended to pursue an alternative theory of liability under the malfunction theory, the plaintiff needed to plead this theory in his amended complaint. The pleadings determine which facts are relevant and frame the issues for summary judgment proceedings or for trial. See, e.g., Doublewal Corp. v. Toffolon, 195 Conn. 384, 390"91, 488 A.2d 444 (1985); Recall Total Information Management, Inc. v. Federal Ins. Co., 147 Conn.App. 450, 456, 83 A.3d 664, cert. granted, 311 Conn. 925, 86 A.3d 469 (2014). "The principle that a plaintiff may rely only [on] what he has alleged is basic.... It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations [in] his complaint." (Internal quotation marks omitted.) Kaddah v. Commissioner of Correction, 299 Conn. 129, 140, 7 A.3d 911 (2010). "A complaint must fairly put the defendant on notice of the claims ... against him.... The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise.... Only those issues raised by the [plaintiff] in the latest complaint can be tried before the jury." (Internal quotation marks omitted.) Gilbert v. Middlesex Hospital, 58 Conn.App. 731, 734, 755 A.2d 903 (2000), quoting Farrell v. St. Vincent's Hospital, 203 Conn. 554, 557"58, 525 A.2d 954 (1987). | The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise; only those issues raised by the plaintiff in the latest complaint can be tried before the jury. | "Are only those issues, raised by the plaintiffs in the latest complaint, tried before the jury?" | 023869.docx | LEGALEASE-00160549-LEGALEASE-00160550 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 16880 | Langford v. Douglas, 359 S.W.2d 951 | 307A+699 | But, "The policy of the law is, that appellant should have his day in court for the purpose of establishing the alleged wrong perpetrated on him." Smith v. Rawlings, Tex.Civ.App., 25 S.W.2d 622 (623) (W.R.) In view of the narrow language of the trial court's order above quoted, we accordingly hold that plaintiffs' motion to reinstate, considered as a bill of review, is still pending. No doubt plaintiffs will desire to amend it. Its presence in the original suit is an irregularity. Osborn v. Younger (Com.App.), 235 S.W. 558; McDonald, Texas Civil Practice, supra. The trial court could transfer it to an independent place on his docket for trial or other disposition. Wilson v. Ammann & Jordan, Tex.Civ.App., 163 S.W.2d 660. | Motion to reinstate an action dismissed for lack of prosecution could be considered as a bill of review, but as a bill of review, it properly did not belong in original cause. | Can a motion to reinstate an action dismissed for lack of prosecution be considered as a bill of review? | 039684.docx | LEGALEASE-00160654-LEGALEASE-00160655 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 16881 | William A. White & Sons v. Doelger, 232 N.Y.S.2d 1 | 307A+699 | Further, it is essential on an application to vacate a dismissal to submit an affidavit of merits. An officer of one of the plaintiffs has submitted a perfunctory affidavit which fails to satisfy the requirements of factually showing a meritorious cause of action. | It is essential on application to vacate dismissal that affidavit of merits be submitted. | Is it essential on an application to vacate dismissal that an affidavit of merits be submitted? | 039685.docx | LEGALEASE-00160678-LEGALEASE-00160679 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 16882 | Gallucci v. Phillips & Jacobs, 418 Pa. Super. 306 | 307A+695 | Gross, 224 Pa.Super. at 237, 302 A.2d at 372. Appellants here had the same procedure available to them. Further, in Itri the court stated the well-settled rule of procedure that a complaint should not be dismissed where there is a reasonable probability that amendment can be successfully completed. Itri, 281 Pa.Super. at 523, 422 A.2d at 593. Appellants had two options to avoid the running of the statute of limitations. First, appellants could have followed the preferred procedure by filing a praecipe for a writ and proceeding with discovery before preparing a complaint. Second, appellants could have prepared a complaint and later requested leave to amend. | Complaint should not be dismissed where there is a reasonable probability that amendment can be successfully completed. | Should a complaint not be dismissed where there is a reasonable probability that amendment can be successfully completed? | Pretrial Procedure - Memo 11654 - C - KS_65391.docx | ROSS-003284626-ROSS-003284627 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 16883 | Motorcycle Stuff v. Bryant, 182 Ga. App. 554 | 307A+695 | That the original action was dismissed involuntarily is not a bar to the application of the renewal statute. OCGA " 9-2-61 "applies to involuntary as well as voluntary dismissals, where the merits are not adjudicated. [Cits.]" Bowman v. Ware, 133 Ga.App. 799, 800 (2), 213 S.E.2d 58 (1975). However, the renewal statute will apply only if the original action was itself a valid suit. Fowler v. Aetna Cas. &c Co., 159 Ga.App. 190, 192 (3), 283 S.E.2d 69 (1981). Thus, if the original action was void, OCGA " 9-2-61 is inapplicable. Murray v. Taylor, 131 Ga.App. 697 (2), 206 S.E.2d 643 (1974). | Renewal statute, which allows renewal of action either within original applicable period of limitations or within six months after discontinuance or dismissal, will apply only if original action was itself valid suit. O.C.G.A. S 9-2-61. | Will a renewal statute apply only if original action was itself valid suit? | 040331.docx | LEGALEASE-00161096-LEGALEASE-00161097 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 16884 | People v. Sears, 344 Ill. 189 | 371+2003 | The liability of the owner of property for the payment of taxes is purely statutory. The law is well settled that the legislative power of a state to provide for the levy and collection of taxes is unlimited, except as restricted by the state and federal Constitutions. Chambers v. People, 113 Ill. 509. The obligation of the citizen to pay taxes is purely a statutory creation, and taxes can be levied, assessed, and collected only in the mode pointed out by express statute. Cooley on Taxation (2d Ed.) p. 15 | Taxes can be levied, assessed, and collected only in mode pointed out by express statute. | Can taxes be levied in the mode other than pointed out by express statute? | 046312.docx | LEGALEASE-00160743-LEGALEASE-00160744 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 16885 | State v. Clausen, 95 Wash. 214 | 371+2003 | The power of taxation is an incident of sovereignty, and is possessed by the state without being expressly conferred by the people. It is a legislative power, and when the people by their Constitution create the department of government upon which they confer the power to make laws, the power of taxation follows as a necessary part of the more general power. North Missouri R. Co. v. Maguire, 20 Wall. 46, 22 L. Ed. 287; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197. | The power of taxation is incident of sovereignty, possessed by state without being expressly conferred by people, being a legislative power necessarily following the general power to make laws. | Is the power of taxation an incident of sovereignty? | 046329.docx | LEGALEASE-00160843-LEGALEASE-00160844 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 16886 | DiMaria v. State, 12 Ill. Ct. Cl. 1 | 413+105 | This Court has repeatedly held that not every State employee is under the Workmen's Compensation Act. It is only where the employee is engaged in an employment extrahazardous in fact, or employed in a department of the State which is engaged in an enterprise declared to be extra-hazardous by Section 3 of the Workmen's Compensation Act of Illinois, that such employee is under the Act and legally entitled to an award for injuries sustained in the course of and arising out of his employment. It does not appear to this Court that employees of the Old Age Assistance Division of the Department of Public Welfare are engaged in employment declared extra-hazardous by Section 3 of the Workmen's Compensation Act. | The Workmen's Compensation Act does not automatically apply to all employees of the State, but only to those engaged in an employment in a department of the State which is engaged in extra hazardous enterprises, named in the act. | When does a State employee come under the Workmens Compensation Act? | 048687.docx | LEGALEASE-00161152-LEGALEASE-00161153 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 16887 | Smith v. Marine Oil Co., 10 La. App. 674 | 413+105 | There can be no doubt that the only occupations protected by the compensation laws of this state are those which are specifically designated in the act, or which, by agreement made in advance, or by judgment of court obtained in advance, are determined to be hazardous. See Dejan v. Ujffy, 14 Orleans App. 230, and Alexander v. Tharp, C. of App. Par. of Orleans (See So. Rep. Dig.). | Only occupations protected by compensation laws are those specifically designated in act or determined hazardous in advance. | What are the only occupations protected by the compensation laws? | 048706.docx | LEGALEASE-00161335-LEGALEASE-00161336 | Condensed, Order, SA, Sub | 0.68 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16888 | Relowsky v. Gordon, 502 F. Supp. 1314 | 83E+476 | In the first case, in which Nulomata seeks recovery of the $540,000 promissory note, the key legal issues to be adjudicated turn on what body of law applies... (long opinion text) | Demand note is payable at place of residence of maker, if no place of payment is named in the note. | Where is a demand note payable if no place of payment is named in the note? | Bills and Notes : Memo 1312 - RK_64625.docx | ROSS-00276791 & ROSS-00283792 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | 1 |
| 16889 | Lienskof Banking Co. v. Henry, 19 Miss. 614 | 83O+10 | The question in the case is whether or not these notes are to be controlled by the law of Alabama, the defences offered cannot be made under the law... (long opinion text) | A note executed within the state, but negotiable and payable in another state, must be governed by the law of that state, though given for the price of property and receiving title to the property until full payment. | Will a note made payable in another state be governed by the law of that state? | Bills and Notes : Memo 1342 - RK_64626.docx | ROSS-003213070 & ROSS-003213077 | Condensed, SA, Sub 0.87 | | 0 | 1 | 1 | 1 | 1 |
| 16890 | Hongkong & Shanghai Banking Corp. v. Lazard-Godchaux Co. of Am., 207 A.D. 174 | 83O+10 | There is another defense, to the effect that the defendant was released because the drafts were accepted, payable 93 days after sight, instead of 90 days... (long opinion text) | The law of the place of payment as to days of grace on a foreign bill of exchange applies. | Which law applies to the foreign bill of exchange? | Bills and Notes : Memo 1347 - RK_64230.docx | ROSS-00296355 & ROSS-00296356 | Condensed, SA | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 16891 | State v. York, 232 S.W.3d 140 | 135H+96 | Double jeopardy does not attach when a defendant consents to termination of the proceeding. U.S.C.A. Const.Amend. 5... | Double jeopardy does not attach when a defendant consents to termination of the proceeding. | Does double jeopardy not attach when a defendant consents to termination of the proceeding? | Double Jeopardy : Memo 124 - C - NC_65093.docx | ROSS-00278448 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 16892 | United States v. Johnson, 194 F.3d 601 (5th Cir. 1999) | 156+52.10(2) | In dictum we acknowledged that a "defendant's submission that he is knowingly and voluntary," 1897; 3d at 611, but we did not do so to comply with before accepting a stipulation or relying on it as evidence at sentencing. And while we did not create a special rule for a waiver's factual predicate unless its admission are "knowing and voluntary." See, e.g., United States v. Wenbush, 197 F.3d 961 (7th Cir 2003). However, "a specific dialogue with the judge is not a necessary prerequisite to a valid waiver" if there is other evidence in the record demonstrating a knowing and voluntary waiver. See United States v. Agies, 837 3d 882, 884 (7th Cir 1996) (expressly rejecting argument that appellant waiver is valid only when the judge addresses the defendant). *900 Thus, "most waivers are effective when set out in writing and signed." United States v. Wenger, 58 F.3d 280, 282 (7th Cir 1995). Because the stipulation in Garrett was clearly ambiguous, it followed that we could not accept it as a knowing and voluntary waiver of the defendant's claim that the drug he distributed was cocaine base but not crack. But Johnson had the benefit of Adams, and we need not look further to conclude that by entering a clear stipulation, he knowingly and voluntarily waived his rights to contest application of the higher base offense level for crack. | A specific dialogue with the judge is not a necessary prerequisite to a valid waiver by defendant of there is other evidence in the record demonstrating a knowing and voluntary waiver; thus, most waivers are effective when set out in writing and signed. | Are most waivers effective when set out in writing and signed? | 018149.docx | LEGALEASE-00162316-LEGALEASE-00162318 | Condensed, SA, Sub 0.85 | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 16893 | Hall v. Pate, No. 07-08-0151 CV, 2009 WL 1391380 | 323h+1131 | Waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. Zaya Industries, Inc. v. Ranger Ins. Co., 99 S.W.3d 658, 664 (Tex App - Amarillo 2002, import). In the Epo Kappings, Inc., 983 S.W.3d at 241, 53 (Tex 1998). A party's silence or inaction, coupled with knowledge of the right, for such an unreasonable period of time as to indicate an intention to waive that right, turns waiver. See, Tenneco In c. v. Enterprise Prods. Co., 925 S.W.2d 640, 643 (Tex 1996); Alford, Meroney & Co. v. Rowe, 619 S.W.2d 210 (Tex Civ App - Amarillo 1981, writ ref'd n.r.e.). And, once a right is waived, such right is lost forever and cannot be reclaimed without the consent of the other party. Barrios Continental Bank of Commerce of Dallas, 679 S.W.2d 115, 118 (Tex App - Dallas 1984, no writ). Waiver is largely a matter of intent. Thus, the implied waiver to be found in a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. Continental Casing Corp. v. Siderca Corp., 38 S.W.3d 782, 789 (Tex App- Houston [14th Dist.] 2000, no pet). | Evidence was sufficient that a seller waived his contractual right to require the written consent prior to an assignment of an executory contract for the conveyance of real property. The assignee delivered the assignment to the seller and the seller assented to the right for three years and the payments were accepted. During this period, the seller never exercised his right under the executory contract; thus, the seller's silence and inaction for such an unreasonable time, coupled with his knowledge of the assignee's contractual right to written consent. | Once a right is waived, is it lost forever? | Estoppel - Memo 256 - CDs_6608.docx | ROSS-003329413-ROSS-003329415 | Condensed, SA, Sub 0.43 | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 16894 | Lenox v. Town of Marksville, 430 So. 2d 1888 | 413+1061 | We feel that the trial court erred in ruling that the Risk Agency was a "de facto" worker's compensation insurer. La.R.S. 13:13145 specifically provides that an insured under an insurance company or an insurer under the laws of this state. This Court specifically recognized this in Inston v Halter, 454 So.2d 1279 (La App. 3rd Cir 1984), where it determined that the Louisiana Municipal Risk Management Agency was not amenable to direct action under the provisions of La.R.S. 22:6551. Thus, the Risk Agency in this case cannot be held to be a "de facto" insurer and is not liable to the plaintiff for worker's compensation | Interlocal risk management agency is not insurance company or insurer; "de facto" or otherwise, under Louisiana laws, and such agency could not be held liable to claimant for workers' compensation payments. LSA-R.S. 33:1345. | Is an interlocal risk management agency (IRMA) an insurance company? | 019514.docx | LEGALEASE-00162348-LEGALEASE-00162349 | Condensed, SA, Sub 0.65 | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 16895 | Gibbs v. Mayo, 162 N.C. App. 549 | 217+1061 | Plaintiffs assert that the coverage issued by the North Carolina Counties Liability and Property Fund (the "Fund") that Cumberland is a bond contract and makes defendants liable under N.C. Gen Stat. " 1387-10. In North Carolina, "insurance and suretyship are not synonymous terms.. Nye either "involve a legal duty to pay, based upon the default or misconduct of another." "A surety bond is one obligation.. "Henry Angelo & Sons, Inc. v Prop. Development Corp, 63 N.C.App. 569, 574, 305 S.E.2d 332, 339 (1983). "Insurance is "[a] contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils" id. at 574, 305 S.E.2d 339-40 (quoting Black's Law Dictionary 802 (rev. 4th ed.1968)). In contrast, "[A] surety is one "who engages to be answerable for the debt, default or miscarriage of another." Id. (quoting from Treatise on the Law of Suretyship and Guaranty (2) (1951). A contract of suretyship require three parties, the principal, the surety, and the creditor, while the insurance contract require only two parties, the indemnitor and the indemnitee. Casualty Co. v Waltke, 213 N.C. 316, 538, 64 S.E.2d (438,38) (1951). | "Insurance" is a contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils. | What is insurance? | 019644.docx | LEGALEASE-00162045-LEGALEASE-00162046 | Condensed, SA, 0.86 | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 14896 | Walsh v. Elkington Agency, 189 Minn. 367 | 289 e33 | | Partnership may be created for the purchase and sale of real estate | Can a partnership be created for the purchase and sale of real estate? | 02739.docx | LEGALEASE 00162470 LEGALEASE 00162471 | Condensed, SA | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 14897 | Albright v. Hughes, 107 Ind. App. 651 | 289 e32 | | A particular partnership is one where the parties have united to share the benefits of a single individual transaction or enterprise, and particular partnership agreements are not lacking in mutuality or void for want of consideration. | What is a particular partnership? | 02734.docx | LEGALEASE 00162524 LEGALEASE 00162525 | Condensed, SA, Sub 0.81 | 0.85 | 0 | 1 | 1 | 1 | |
| 14898 | Glassbrook v. Bd. of Suptv. of Spotsylvania Cty., 266 Va. 550 | 302 k15(10) | | A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. | Does a demurrer test the legal sufficiency of a pleading? | 02803.docx; Pretrial Procedure - Memo 11816 - C - MPL_60.58.docx | LEGALEASE 00162440 LEGALEASE 00162441; ROSS 003182034 ROSS-003182035 | Condensed, SA | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14899 | Eagle Signal Corp. v. Whtsg, 766 S.W.2d 347 | 307 k44/97 | | If a trial court reinstates a case when it has no authority to do so, the order of reinstatement is void. | If a trial court reinstates a case when it has no authority to do so, is an order of reinstatement void? | 04033.docx | LEGALEASE 00161940 LEGALEASE 00161941 | Condensed, SA | 0.69; 0.42 | 0 | 1 | 1 | 1 | 1 |
| 14900 | Austin v. Aldermen of Boston, 78 U.S. 694 | 371 e2(65) | | The right of taxation, where it exists, is necessarily unlimited in its nature. It carries with it inherently the power to embarrass and destroy. | Does the right of taxation carry with it inherently the power to embarrass and destroy? | 04343.docx | LEGALEASE 00161960 LEGALEASE 00161961 | Condensed, SA | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 14901 | Kenner v. Koshak, 55 Ill. 2d 430 | 371 e2003 | | Power to regulate and power to tax are distinct powers, but each may be exercised by the imposition of a license fee. | Can a tax be exercised by the imposition of a license fee? | | LEGALEASE 00161962 LEGALEASE 00161963 | Condensed, SA | | 0 | 1 | 1 | 1 | |
| 14902 | Reed v. Bjornson, 191 Minn. 254 | 371 e2003 | | Except as limited by Constitution, power of taxation is exhaustive and embraces every conceivable subject of taxation. | Is the constitution a grant of or a limitation upon the power of taxation? | 04341.docx | LEGALEASE 00161964 LEGALEASE 00161965 | Condensed, SA, Sub 0.87 | | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 16903 | S. S. Kresge Co. v. Bowers, 2 Ohio St. 2d 113 | 371+2603 | [opinion text] | Power and right to tax, for any reason, rest with government and give rise to power and right to collect and police the law. | Does the power to tax rest with the government? | Taxation - Memo 1171-C-6_45454.docx | ROSS-003218195-ROSS-003218206 | Condensed, SA | 0.91 | 0 | | | 1 | |
| 16904 | Anderson v. City of Joplin, 646 S.W.2d 727 | 371+2602 | [opinion text] | "Sales tax" is assessed against taxpayer as percentage of price of goods. | Is the "sales tax" assessed against taxpayer as percentage of price of goods? | Taxation - Memo 1216-C-7j_66483.docx | ROSS-003281147-ROSS-003281148 | Condensed, SA | 0.9 | | | | 1 | |
| 16905 | Ragsdale v. Dep't of Revenue, 321 Or. 216 | 371+2066 | [opinion text] | Intergovernmental tax immunity is based on need to protect each sovereign's governmental operations from undue interference by the other. | What is the purpose of intergovernmental tax immunity? | 04j669.docx | LEGALEASE-00162544 LEGALEASE-00162545 | Condensed, SA | 0.69 | | | | 1 | |
| 16906 | United States v. Young, 376 A.2d 809 | 3.77T+12 | [opinion text] | Specific intent to extort is not necessary element of crime of threatening to injure another person. | Is a specific intent to extort is necessary element of the crime of threatening to injure another person? | 04j963.docx | LEGALEASE-00162180 LEGALEASE-00162181 | Condensed, SA, Sub 0.69 | | | | | 1 | |
| 16907 | Midland Sav. & Loan Co. v. Solomon, 71 Kan. 185 | 58+49 | [opinion text] | The fact that the obligor in a bond for the payment of money has issued its negotiable note stated to be brought to enforce it, does not abrogate the stipulation that the bond shall be payable in another state in which it is executed, and the bond must be interpreted by the laws of the state where it is payable. | Does the fact that one of the incidents of the debt consists of a negotiable note that was brought to enforce it change the law that governs a debt? | 007045.docx | LEGALEASE-00162805-LEGALEASE-00162806 | Condensed, SA, Sub 0.47 | | | | | 1 | |
| 16908 | Jones v. Riley, 60 N.Y. 452 | 83j+822 | [opinion text] | A note is presumed to be payable where dated, if no other place of payment is mentioned therein. | Is a promissory note presumed to be payable where dated, if no other place of payment is mentioned in the note? | Bills and Notes - Memo 1350_PA_64253.docx | ROSS-003288325 | Condensed, SA, Sub 0.15 | | | | | 1 | |
| 16909 | John Hancock Mut. Life Ins. Co. v. Hd. Baltimore Nat. Bank & Tr. Co., 212 Md. 506 | 8.30j+10 | [opinion text] | Generally, law governing a bill or note is the law which the parties to the instrument intend to govern, and therefore, if bill or note contains express provision that it shall be governed by law of a particular state, such laws will govern. | Is the law which the parties to the instrument intended the proper law governing a bill or not. | Bills and Notes - Memo 1353-PA.docx | LEGALEASE-00052485-LEGALEASE-00052486 | Condensed, SA, Sub 0.85 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 16930 | John Hancock Mut. Life Ins. Co. v. Yd. Baltimore Nat. Bank & Tr. Co., 212 Md. 506 | 8:361+10 | Questions relative to negotiable instruments arising upon a conflict of laws are not always free from difficulty. The Negotiable Instruments Act, Code 1951, Art. 13, § 54 et seq. makes no provision as to what law governs bills and notes in a case of conflict of laws, and, in determining this question, it is necessary to consider certain factors. Some of these are: (1) that the law relating to what law governs contracts generally is applicable, so far as general principles are concerned; (2) that there is considerable conflict in the decisions relating thereto; (3) that general statements of law in regard thereto; (4) that an ordinary negotiable instrument often includes many contracts, each several signatures of maker, drawer, acceptor, guarantor, surety or indorser being a separate contract; (5) and that each separate contract may bring into question a different place and law, since each contract involves a place of contract and a place of payment which may be governed by different laws. In like manner, one's inquiry may determine the validity of a contract, while other laws regulate its form or construction or the steps to be taken for its maintenance or enforcement. § 52. G.L. bills and Notes, generally is to be conceded that the proper law governing a bill or note is the law which the parties to the instrument intended to govern. Accordingly, if the bill or note contains an express provision that it shall be governed by the law of a particular state, those laws govern. | Generally, law governing a bill or note is the law which the parties to the instrument intend to govern the proper law governing a bill or note? | It is the law that the parties intend to govern the proper law governing a bill or note? | Bills and Notes - Memo 1367 - AK.docx | LEGAE542-00052509-LEGAE542-00052510 | Condensed, SA, Sub 0.65 | | | 1 | | | 1 |
| 16931 | Seymour v. Principi, 245 F.3d 1377 | 34+104.5 | In our previous decisions holding that disability claims did not survive a veteran's death, we explained that under chapter 11's statutory scheme, disability compensation is generally payable only to veterans, while death benefits are payable to survivors. See Richard, 161 F.3d at 722. Haines, 154 F.3d at 1300. Death benefits for service-connected and 1956 deaths are payable to survivors under 38 U.S.C. § 1310. In contrast, a veteran's entitlement to disability payments ends on the last day of the month before the veteran's death. See 38 U.S.C. § 5112(b)(1). The statute does not survive the veteran's death because payment of accrued benefits owed to a veteran at the time of the veteran's death. See 38 U.S.C. § 5121. However, the scope of the accrued benefits provision is limited. It applies only to benefits "due and unpaid" at the time of the veteran's death, and benefits are limited to "a period not to exceed two years" prior to the veteran's death. Id. Moreover, a claim for accrued benefits under section 5121 is separate from a veteran's claim for disability payments "because it is based on a separate statutory entitlement for which an application must be filed to receive benefits." Zevalkink, 102 F.3d at 1241. We have previously held in the context of service-connected death claims that the result of this statutory scheme is that "survivors may not pursue the disability compensation claims of a veteran, even as heirs to the veteran's estate." Haines, 154 F.3d at 1301. | Under statutory scheme for veterans' benefits, disability compensation is generally payable only to veterans, while death benefits are payable to survivors. | Is Veterans Affairs disability compensation payable only to veterans? | Armed Services - Memo 344 - RK_66845.docx | ROSS-003280407 ROSS-003280408 | Condensed, SA, Sub 0.9 | | | 1 | | | 1 |
| 16932 | Pena v. Nicholson, 497 F.3d 1290 | 34+102.1 | Congress has provided separate systems of benefits for veterans and for their surviving family members. Chapter 11 of Title 38 of the United States Code governs claims for disability compensation. Generally, such compensation is payable only to veterans, Seymour v. Principi, 245 F.3d 1377, 1379 (Fed.Cir.2001), and ceases on the last day of the month before the veteran's death, see 38 U.S.C. § 5112(b)(1). A veteran's spouse, children, or dependent parents may obtain unpaid benefits owed by the veteran at the time of the veteran's death. See 38 U.S.C. § 5121. But such "survivors may not pursue disability compensation claims of a veteran, even as heirs to the veteran's estate," Haines v. West, 154 F.3d 1298, 1300 (Fed.Cir.1998). This court repeatedly and consistently has held that a veteran's claim for disability compensation under chapter 11 does not survive the veteran's death. See, e.g., Richardson v. Nicholson, 476 F.3d 883, 886-87 (Fed.Cir.2007). | Veteran's spouse, children, or dependent parents may not pursue disability compensation claims of a veteran, even as heirs to the veteran's estate; 38 U.S.C.A. § 1301 et seq. | Can survivors pursue disability compensation claims of a veteran? | 000824.docx | LEGAE542-00165885-LEGAE542-00165886 | Condensed, SA, Sub 0.82 | | | 1 | | | 1 |
| 16933 | U.S. v. Jackson, 504 F. Supp. 118 | 63+14 | Jackson argues that his interpretation of bribery as standard by the California Supreme Court renders the instructions given hopelessly circular. If "unlawfully" here means the same thing as "corruptly," and the instructions define "corruptly" as meaning "unlawful," then the juror runs, the instructions are circular and provide no real guidance to a jury. See, U.S. v. Jackson, 135 F.3d 688, 689 95 (9th Cir.1994) (Judge Kozinski dissenting) (discussing the circularity of these instructions and their likelihood to confuse a jury). | There was no circularity in bribery instructions which defined "unlawfully" as "corruptly" and defined "corruptly" as "wrongful design." | Was there circularity in bribery instructions which defined "unlawfully" as "corruptly" and defined "corruptly" as "wrongful design"? | 013578.docx | LEGAE542-00165995-LEGAE542-00182366 | Condensed, SA, Sub 0.72 | | | 1 | | | 1 |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 16914 | State ex rel. Corn v. Merrifield, 232 W. Va. 100 | 79+6 | [Judicial opinion text] | A circuit judge can prevent a deputy clerk from being transferred from his courtroom. Const. Art. 8, § 3. | Can a circuit judge prevent a deputy clerk from being transferred from his courtroom? | Clerks of courts - Memo 83 - RK_66655.docx | ROSS-003291149 ROSS-003291150 | Condensed, SA, Sub 0.94 | 0.94 | 0 | | | 1 | |
| 16915 | State ex rel. Corn v. Merrifield, 232 W. Va. 100 | 79+6 | [Judicial opinion text] | Chief judge of county circuit court lacked authority to issue order decreeing that circuit clerk was to increase pay rates for his staff, where personnel policy rules currently in existence which may conflict with the provisions contained herein order exceeded and were necessary for circuit judge to retain proper control over selection and retention of his deputy clerks, and judge lacked power to unilaterally formulate employment policy governing all deputy clerks in circuit clerk's office. Const. Art. 8, § 3; Code, 7-7-7. | Do judges have the power to increase the compensation of their courtroom clerks? | 01357S.docx | LEGALEASE-00164098 LEGALEASE-00164099 | Condensed, SA, Sub 0.34 | 0.34 | 0 | | | 1 | |
| 16916 | Ex parte Hayes, 931 S.W.2d 727 | 135H+15 | [Judicial opinion text] | For purposes of state constitutional double jeopardy prohibition, jury is not selected as trier of fact, and defendant is not placed in jeopardy, until jury has been impaneled. Vernon's Ann.Texas Const. Art. 1, § 14. | Will jury be selected as trier of fact until it has been impaneled? | Double Jeopardy - Memo 1096 - C - NG_66850.docx | ROSS-003281714 ROSS-003281715 | Condensed, SA, Sub 0.69 | 0.69 | 0 | | | 1 | |
| 16917 | United States v. Washington, 69 F.3d 401 | 135H+15 | [Judicial opinion text] | For double jeopardy purposes, jeopardy does not attach when government seizes property. U.S.C.A. Const.Amend. 5. | "For double jeopardy purposes, does jeopardy not attach whenever a government seizes property?" | 011035.docx | LEGALEASE-00163419 LEGALEASE-00163420 | Condensed, SA, Sub 0.87 | 0.87 | 0 | | | 1 | |
| 16918 | Gordon Const. & Land Dev. v. Bona Par. Gov't, 855 So.2d 391 | 183+4 | [Judicial opinion text] | Non-exclusive franchise does not confer upon the franchisee the right to be free of competition, and does not prevent the granting of a similar franchise to others. LSA-R.S. 33:4361.1. | Does a non-exclusive franchise include the right to be free from competition? | Franchises - Memo 50 - KNK_66655.docx | ROSS-003279962 ROSS-003279963 | Condensed, SA, Sub 0.74 | 0.74 | 0 | | | 1 | |
| 16919 | Bailey v. Parker, 34 Ohio App. 207 | 30J+177 | [Judicial opinion text] | Automobile driver exceeding speed limit prescribed by law would be guilty of negligence per se. Gen.Code, § 12603 (repealed 1941. See Gen.Code, § 6307-21). | Is exceeding the speed limit negligence per se? | 01879.docx | LEGALEASE-00165058 LEGALEASE-00165059 | Condensed, SA, Sub 0.69 | 0.69 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16920 | People v. Reese, 491 Mich. 127 | 203+530 | "[T]he elements of voluntary manslaughter are included in murder, with murder possessing the single additional element of malice." Malice itself "evolved from being merely an intent to kill to also evidencing the absence of mitigating circumstances." Afterdescribing several examples of malice, Blackstone explained: [The] general rule [is] that all homicide is malicious, and, of course, amounts to murder, unless where justified by the command or permission of the law; excused on the account of accident or self-preservation; or alleviated into manslaughter, by being either the involuntary consequence of some act, not strictly lawful, or (if voluntary), occasioned by some sudden and sufficiently violent provocation. | Elements of voluntary manslaughter are included in murder, with murder possessing the single additional element of malice. | Are the elements of voluntary manslaughter included in murder? | Homicide - Memo 185 - RK_66928.docx | ROSS-003280195-ROSS-003280196 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 16921 | In re Simasko Prod. Co., 52 B.R. 676 | 260+62.1 | "Production payment" is a term of art. It is defined as a "non-operating interest which is free of the cost of production." Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53, 56 (1937). Production payments, like overriding royalties are interests in real property which are carved out of the lessee's interest. Id. Davis v. Lewis, 187 Okl. 91, 100 P.2d 994 (1940). In fact, production payments are identical to overriding royalties, except that a production payment is limited in amount to a stated volume of production or until a specified sum has been realized from production. Hemingway, The Law of Oil and Gas, 2d Ed. " 9.9, p. 487. In this case, Claimants' so-called production payment is limited to $3,900,000. | "Production payments" are interests in real property which are carved out of lessee's interest; production payments are identical to overriding royalties, except that production payment is limited in amount to stated volume of production or until specified sum has been realized from production. | Is an overriding royalty an interest in real property? | 021701.docx | LEGALEASE-00163327-LEGALEASE-00163328 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 16922 | Winston & Strawn LLP v. Law Firm of John Arthur Eaves, 47 F. Supp. 3d 68 | 302+46 | Eaves also argues that service was improper because W & S named the wrong entity. But the apparent ambiguity over the correct name of the Eaves Law Firm does not warrant a dismissal for failure to name the proper party. A party has a right "to be accurately named in the process and pleadings of the court." United States v. A.H. Fischer Lumber Co., 162 F.2d 872, 873 (4th Cir.1947). The requirement that a party be accurately named in process, however, "does not allow the Defendant to hide behind de minimis or hyper-technical defects in the Complaint." Flynn v. Pulaski Constr. Co., 2006 WL 47304, at *6 (D.D.C.2006). "A misnomer in process is not fatal, where the defendant is actually before the court, has been served, and is not prejudiced by the mistake." Catholic Cemeteries of Archdiocese of Washington, Inc. v. Nordlinger Inv. Corp., 2005 WL 525415, at *2 (D.D.C.2005) (refusing to quash service where complaint named subsidiary of the intended defendant and defendant held itself out as the subsidiary in the contract in question). If the name used in the complaint leaves no doubt as to the defendant's identity, and service is otherwise sufficient, then service is proper regardless of the error. See Flynn, 2006 WL 47304 at *6. | A party has a right to be accurately named in the process and pleadings of the court. | Does a party have the right to be accurately named in the process and pleadings of the court? | 023951.docx | LEGALEASE-00163786-LEGALEASE-00163787 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 16923 | Hunter v. Gang, 132 Nev. Adv. Op. 22 | 30+3206 | Because the inherent authority to dismiss an action for want of prosecution is incidental to the duties required for the administration of justice and the court's management of its day-to-day activities, no justification is required for the court to resort to this inherent authority. See Sparks, 129 Nev. at """", 302 P.3d at 1129. Accordingly, a district court need not demonstrate that some specific circumstance exists before it may resort to its inherent authority to dismiss an action for want of prosecution. See generally Renown Reg'l Med. Ctr. v. Second Judicial Dist. Court, 130 Nev. """", 335 P.3d 199 (2014) (analyzing the district court's exercise of inherent authority to enter summary judgment sua sponte without delving into whether any of the circumstances set forth in Halverson existed). | When reviewing the dismissal of an action for want of prosecution under the district court's inherent authority, in considering the conduct of the parties, the appellate court considers whether the parties behaved in accordance with a reasonable and good-faith belief that no court action was necessary. | Is a justification required for the court to resort to the inherent authority to dismiss an action for want of prosecution? | Pretrial Procedure - Memo 12088 - C - DHA_67063.docx | ROSS-003306883-ROSS-003306884 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 16924 | Compass Dev. v. Blevins, 10 Haw. App. 388 | 307A+674 | Compass and DAX contend that the court had no authority to issue the Order of Dismissal. But the court's inherent power to dismiss a case for want of prosecution cannot be seriously disputed. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion.... The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., Blackstone, Commentaries (1768), 295-296, and dismissals for want of prosecution of bills in equity, e.g., Id., at 451. Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734, 737 (1962). We hold, therefore, that the courts have inherent power to dismiss cases for want of prosecution. See Lim v. Harvis Constr. Inc., 65 Haw. 71, 73 n. 1, 647 P.2d 290, 291 n. 1 (1982). | Civil procedure rule authorizing defendant to move for dismissal for failure of plaintiff to prosecute does not constitute limitation on inherent power of court to sua sponte order dismissal of case for want of prosecution. Rules Civ.Proc., Rule 41(b). | Do courts have the inherent power to dismiss cases for want of prosecution? | Pretrial Procedure - Memo 12141 - C - VP_66718.docx | ROSS-003291976-ROSS-003291977 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 16925 | Binyon v. State of California, 17 Cal. App. 4th 952 | 307A+583 | The fact that a petition for administrative mandamus involves a special proceeding does not, however, place it beyond the reach of dismissal for delay in prosecution. Subdivision (b) of section 583.120 provides: "Notwithstanding subdivision (a), the court may, by rule or otherwise under inherent authority of the court, apply this chapter to a special proceeding ... except to the extent such application would be inconsistent with the character of the special proceeding or the statute governing the special proceeding." (" 583.120, subd. (b).) It is well settled that the trial courts have the inherent authority to dismiss for delay in prosecution. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, " 180, p. 488; Holt v. Pardue (1960) 178 Cal.App.2d 528, 533"534, 3 Cal.Rptr. 225; Romero v. Snyder (1914) 167 Cal. 216, 217"218, 138 P. 1002.). | Trial courts have inherent authority to dismiss for delay in prosecution. | Do trial courts have inherent authority to dismiss for delay in prosecution? | 040964.docx | LEGALEASE-00163278-LEGALEASE-00163279 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 10026 | Jara Rojas 12, 100 Cal. App. 4th 88 A. | 371T=06 | Criminal threat statute was not enacted to punish emotional outbursts... | Criminal threat statute was not enacted to punish emotional outbursts... "In People v. Felix (1st Dept. 2001) 92 Cal.App.4th 905, 913, 112 Cal.Rptr.2d 311; In re David L., supra, 234 Cal.App.3d at p. 1656, 286 Cal.Rptr. 398.) | What was the criminal threat statute not enacted to punish? | 046999.docx | USALEXAE-00163415 USALEXAE-00163416 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10027 | Motin, Patriots Transit, ... Mining Co., 181 Mich. App. 226 | 413=196 | Where workers' compensation benefits are an issue, the economic reality test is applied determining whether worker is employee of another employer | Where workers' compensation benefits are an issue, "economic reality" test is applied in determining whether worker is employee/an individual by the trial court in this case | Where worker compensation benefits are an issue, what test is applied to determine whether an employee of another employer | 048765.docx | USALEXAE-00164148 USALEXAE-00164149 | Condensed, SA, Sub 0.51 | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 10028 | Prince v. Baton Rouge Gen. Hosp., 449 So. 2d 90 | 413=186 | An employer-employee relationship must exist before the provisions of the workers' compensation law apply. | An employer-employee relationship must exist before the provisions of the workers' compensation law apply. Sterling Fibre Glass & Paint Company, Inc., 344 So.2d 1060 (La.App. 1st Cir.1977). | What must exist for workers compensation to apply? | 048773.docx | USALEXAE-00164160 USALEXAE-00164161 | Condensed, SA 0.45 | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 10029 | Ivre Citigroup Inc. Sec. Litig., 597 F. Supp. 2d 90 3420968 | 25T=183 | "If arbitration is invoked in response to a lawsuit, it must be done early in the case. | "If arbitration is invoked in response to a lawsuit, it must be done early in the case... 22 (1st Cir.1990) (Twaiver-a party filing to compel is right to arbitration in a case may lose... any prejudice; thus, Twaiver argues, it did not implicitly waive any of its rights as to the arbitrable claims. We disagree. | "If arbitration is invoked in response to a lawsuit, should it be done as early as possible?" | 006999.docx | USALEXAE-00163063 USALEXAE-00163064 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10030 | Hester v. B.C., 433 F. Supp. 2 471 | 135=2 | Under District of Columbia law, person's residency does not change by virtue of being incarcerated in another state. | The Warden [Officer]... To determine a matter of law A person's residency does not change by virtue of being incarcerated in another state. D.C. Official Code, 2001 Ed. § 1-1001.02(16)(A.). | Does a person's residency not change by virtue of being incarcerated in another state? | 014573.docx | USALEXAE-00164212 USALEXAE-00164213 | Condensed, SA, Sub 0.74 | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10031 | Thomas v. Eighth Judicial Dist. Court & for Cty of Clark, 482 P.3d 619 | 135H=1 | Generally, a state may not put a defendant in jeopardy twice for the same offense. | Generally, a state may not put a defendant in jeopardy twice for the same offense. U.S. Const. Amend. 5; Nev. Const. art. 1, § 8. | Can a state put a defendant in jeopardy twice for the same offense? | 013063.docx | USALEXAE-00165127 USALEXAE-00165128 | Condensed, SA 0.81 | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 10032 | El Marocco Club v. Richardson, 746 A.2d 1228 | 15E=5 | The key element of an estoppel is intentionally induced reliance. | Moreover: "[t]he key element of an estoppel is intentionally induced reliance." Second Trust Assoc. v. R.S.F. Club v. Casa Cranfina Management Council, 118 R.I. 559, 568, 376 A.2d 682, 686 (1977) (citing Providence & Worcester R. Co. v. Exeter, 807 A.2d 723, 819 (1937)). | Is the key element of an estoppel intentionally induced reliance? | Estoppel - Memo 007-C KDSS-0002796810-KDSS-0027980... | KDSS-00027980 KDSS-00027980 | | | 0 | 1 | | 1 | |
| 10033 | Rigor v. B. & Ltd. P'ship, 278 Md. 361 | 233=1859 | Montgomery County rent control law confers no property right, protected by the Fourteenth Amendment. | While the matter is not entirely free of doubt, in the present case we shall assume, arguendo, that the provisions of the Montgomery County rent control law, and the actions of the Montgomery County officials pursuant to the law, constitute "state action" depriving the tenant of an interest... C.f. Geneva Towers Tenants Org. v. Federated Mortgage Inv., 504 F.2d 483, 487-88 (9th Cir. 1974); Joy v. Woodlands, 894 F.Supp. 1173, 1179 (D.Md.1975)... | Do tenants have property interests recognized and protected by the Fourteenth Amendment of the Constitution? | 032014.docx | USALEXAE-00164973 USALEXAE-00164974 | Condensed, SA, Sub 0.69 | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10034 | Mathews v. Fayette Cty., 233 Ga.220 | 302=47 | Insufficiency of process was not urged in the responsive pleadings filed by the appellants, but was only urged apparently in the motion to dismiss, made at the time of the hearing. Therefore, any insufficiency of process must be deemed to have been waived under Sections 12(b) and (h), U.S. of the Civil Practice Act. See Code Ann. § 81A-112(b), (h) (1) The insufficiency of process must be raised by responsive pleading... A prayer for process need not be included in the complaint as a prerequisite to valid service of process. | Insufficiency of process was not urged in the responsive pleadings filed by the appellants, but was only urged apparently in the motion to dismiss... See Code Ann. § 81A-104 (a); Ga. Code Ann. § 81A-104 providing for the Georgia Civil Practice Act complaint forms, without a prayer for process, which are found in Ch. 81A-3. | Should a prayer for process be included in the complaint as a prerequisite to valid service of process? | 020365.docx | USALEXAE-00164383 USALEXAE-00164384 | Condensed, SA, Sub 0.84 | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 16935 | Moore v. Sherman, 269 Or. 189 | 302+2(1) | A statement of fact in a party's pleading is an admission that the fact exists as stated. | | Is a statement of fact in a party's pleadings an admission that the fact exists as stated? | Pending – Memo 661 – BMM_586.56.docx | RODS-000294233-RODS-000294233 | Condensed, SA | 0.85 | 0 | 1 | | 1 | 1 |
| 16936 | Moye v. Frales, 884 NW.2d 11 | 135H+1 | A primary purpose of the Double Jeopardy Clause is to preserve the finality of judgements. | | Is the primary purpose of the Double Jeopardy Clause to preserve the finality of judgements? | 04104 3.docx | USGA1LK4E 00164445-USGA1LK4E 00164446 | SA, Sub | 0.77 | 0 | | 1 | 1 | |
| 16937 | Desmond v. Alaska State Dev. Corp., 376 P.3d 717 | 371+2010 | The phrase "public purpose" within constitutional provision prohibiting the levy of a tax or appropriation of public moneys except for a public purpose represents a concept which is not capable of precise definition. | | "Can the phrase public purpose within the meaning of taxation, be given a precise definition?" | 04442 1.docx | USGA1LK4E 00164955-USGA1LK4E 00164956 | Condensed, SA, Sub | | 0 | 1 | 1 | 1 | 1 |
| 16938 | Hart v. State, 368 N.C. 122 | 371+2010 | In determining whether a specific appropriation is for a public purpose, the term "public purpose" is not to be narrowly construed. | | "Should the term public purpose, within the meaning of taxation, be construed too narrowly?" | 04442 5.docx | USGA1LK4E 00164953-USGA1LK4E 00164954 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 16939 | Index Mines Corp. v. Inda. Comm'n of Colo., 82 Colo. 272 | 413+161 | State providing that any company operating business by leasing shall be liable for injuries to lessee's employees, and that such lessee's employees are themselves employees, Workmen's Compensation Act, § 49. | | Is an employer liable for compensation if the employer is operating its business by leasing? | 04881 8.docx | USGA1LK4E 00164739-USGA1LK4E 00164740 | Condensed, SA, Sub 0.43 | | 0 | 1 | 1 | 1 | |
| 16940 | State v. Dorman, 225 N.C. App. 599 | 135H+59 | Under both the federal and state constitutions, jeopardy does not attach until, among other things, a jury is impaneled and sworn. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. Const. Art. 1, § 19. | | When is a jeopardy attached under the federal and state constitutions? | 04650 0.docx | USGA1LK4E 00165303-USGA1LK4E 00165304 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 16941 | Beard v. State, 2004 WL 1303880 | 135H+50 | Enhancement allegations based on defendant's prior convictions did not constitute double jeopardy. | | Do enhancement allegations based on defendant's prior convictions constitute double jeopardy? | Double Jeopardy Memo 1192 – C – NE.docx | USGA1LK4E 00055106-USGA1LK4E 00055107 | Condensed, SA, Sub 0.78 | | 0 | 1 | 1 | 1 | 1 |
| 16942 | State v. Swofford, 206 W. Va. 399 | 135H+55.1 | Double jeopardy can be implicated where the jury is discharged before the trial court entered a verdict. | | Can double jeopardy be implicated where the jury is discharged before the trial court entered a verdict? | 03 04 8 3.docx | USGA1LK4E 00165791-USGA1LK4E 00165792 | SA, Sub | 0.81 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,873) | Selection & Arrangement (21,876) | Multiple Differences (9,073) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16043 | Sinit v. Strange, 268 F. Supp. 2d 157 | 135H+107.1 | I, too, am unclear on exactly why claim Sinit intends to raise. In the memo, however, there are only two possible claims he could be raising. First, Sinit could be arguing that he had a due process right to be acquitted after his first trial. Second, he could be arguing that he had a due process right to be acquitted after his first trial. Acquittal terminates jeopardy for double jeopardy purposes; reversal of a conviction does not. It is clear, however, that if Sinit is making the second argument, the government is correct that he is simply retrying his double jeopardy claim ... | Acquittal terminates jeopardy for double jeopardy purposes, but reversal of a conviction does not. U.S.C.A. Const.Amend. 5. | "Does acquittal terminates jeopardy for double jeopardy purposes, but reversal of a conviction does not?" | 016061.docx | LEGALEASE 00165307-LEGALEASE 00165868 | SA, Sub | 0.83 | 0 |  |  | 1 | 1 |
| 16044 | State v. Miho, 160 A.3d 23 | 135H+1 | The Double Jeopardy Clause protects three protections for defendants. It protects against (1) a second prosecution for the same offense after acquittal," (2) a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 ... | The Double Jeopardy Clause protects against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. U.S. Const. Amend. 5; N.J. Const. art. 1, par. 11. | What protection does double jeopardy provide under the law? | 016080.docx | LEGALEASE 00165327-LEGALEASE 00165828 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 16045 | Bretz v. Crist, 546 F.2d 1336 | 135H+108.1 | Court I obtaining money and property by false pretenses] of the original information presents a genuine factual issue different from the double jeopardy issue ... | Acquittal on a defective indictment is a bar to subsequent prosecution for the same offense. U.S.C.A. Const. Amend. 5. | Is acquittal on a defective indictment a bar to a subsequent prosecution for the same offense? | 016112.docx | LEGALEASE 00165379-LEGALEASE 00165881 | Condensed, SA, Sub | 0.86 | 0 | 1 |  | 1 |  |
| 16046 | State v. Nappo, 185 N.J. Super. 600 | 135H+95.1 | A defendant is "jeopardy entitled to have a trial proceed to its conclusion [and] to be free from the harassment of successive prosecutions." State v. Lynch, 79 N.J. 327, 340, 399 A.2d 629 (1979). A mistrial, as here, unrelated to guilt or innocence, is the functional equivalent of a mistrial ... | Dismissal unrelated to guilt or innocence is functional equivalent of a mistrial. | Is a dismissal unrelated to guilt or innocence a functional equivalent of a mistrial? | Double Jeopardy Memo 780 - C - NL_57785.docx | ROSS-003007563 & ROSS-003007664 | Condensed, SA | 0.91 | 0 | 1 |  |  |  |
| 16047 | Loney v. Frank, 268 F. Supp. 2d 1065 | 135H+100.1 | Under double jeopardy principles, an unnerved verdict results in defendant's culpability. Thus, acquittals are an absolute bar to appeal or to a new trial, and unnerved convictions are an absolute bar to a new trial. Further, some judicial events other than verdicts determine culpability ... | Under double jeopardy principles, an unnerved verdict results in finality; thus, an acquittal is an absolute bar to a new trial and unnerved convictions are an absolute bar to a new trial. U.S.C.A. Const.Amend. 5. | "Under double jeopardy principle, does an unnerved verdict result in finality?" | Double Jeopardy Memo - C - KI_37797.docx | ROSS-003294126/ROSS-003294127 | SA, Sub | 0.58 | 0 |  |  |  | 1 |
| 16048 | Blake v. State, 65 A.3d 557 | 135H+1 | "The protection against double jeopardy is fundamental to our criminal justice system. It is found in the Fifth Amendment to the United States Constitution, in ... the Delaware Constitution, and in the Delaware criminal statutes. Double Jeopardy prohibits successive prosecution and compulsory service ... | Protection against double jeopardy is fundamental to the criminal justice system. It is found in the Fifth Amendment to the United States Constitution, in the state constitution, and in the state criminal statutes. U.S.C.A. Const.Amend. 5; West's Del.C.Ann. Const. Art. 1, § 8. | Is protection against double jeopardy fundamental to the criminal justice system? | 016045.docx | ROSS-003201193/ROSS-003201202 | Condensed, SA, Sub | 0.21 | 0 | 1 |  |  |  |
| 16049 | People v. Davidson, 159 Cal. App. 4th 205 | 135H+1 | Furthermore, "no plea of double jeopardy can properly be made where the defendant is tried but once." (People v. Tideman (1962) 57 Cal.2d 574, 576, 21 Cal. Rptr. 207, 370 P.2d 1007.) When double jeopardy has been charged was tried, it was the first and only trial of that charge. While the murder charge was subsequently filed and tried, double jeopardy presents no bar to that prosecution as it was within an exception ... | No plea of double jeopardy can properly be made where the defendant is tried but once. U.S.C.A. Const.Amend.5; West's Ann.Cal. Const. Art. 1, § 15. | Can a plea of double jeopardy be properly made where the defendant is tried only once? | 016045.docx | LEGALEASE 00165367-LEGALEASE 00165368 | Condensed, SA, Sub | 0.8 | 0 |  |  | 1 |  |
| 16050 | McGraw v. State, 688 So. 2d 764 | 135H+59 | A double jeopardy right "attaches" when the jury is sworn and empaneled to hear the case. In state, 398 So.2d 1112, 1114 (Miss.1981), in order for double jeopardy right not to be prosecuted for the same offense to accrue, however, the original jeopardy must be "terminated." Richardson v. United States, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984)... | Double jeopardy right attaches when jury is sworn and empaneled to hear case. U.S.C.A. Const. Amend. 5; Const. Art. 3, § 22. | Does a double jeopardy attach when the jury is sworn? | 016622.docx | LEGALEASE 00165439-LEGALEASE 00165440 | Condensed, SA | 0.67 | 0 |  |  |  |  |

| | | | | | | | | | | | 9,029 | 21,876 | 14,973 | 15,944 | 839 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 10951 | People v. Heller, 174 Cal. App. 4th 1080 | 135H+5.1 | In considering the harshness of the penalty, we take into consideration that defendant is a repeat offender whom they could give a much punishment more severely than it punishes a first-time offender. (Seeing, supra, 538 U.S. at pp. 14°Cat, 123 S.Ct. at pp. 1187-1188, 155 L.Ed.2d at pp. 1177-20.) Yet we also have in mind that, because the penalty is imposed for the current offenses, the focus must be on the seriousness of those offenses. (Witte v. United States (1995) 515 U.S. 389, 402°403, 115 S.Ct. 2199, 2200°2206, 132 L.Ct. 81, 361. Currency, supra, 127 Cal.App.4th at p. 1079, 26 Cal.Rptr.3d 365.) The policy of the clause does not themselves justify imposition of an enhanced sentence for the current offense. (Citation.) The double jeopardy clause prohibits a successive punishment for the same offense. (Citation.) The policy of the clause therefore circumscribes the relevance of recidivism. (Citations.) To the extent the "punishment greatly exceeds the one imposed by the aggravated offense, it begins to look very much as if the offender is actually being punished again for his prior offense." (Citation.) (Currency, supra, 127 Cal.App.4th at p. 1080, 26 Cal.Rptr.3d 365.) | The double jeopardy clause prohibits successive punishment for the same offense; the policy of the clause therefore circumscribes the relevance of recidivism. U.S.C.A. Const.Amend.5. | Does the double jeopardy clause prohibit successive punishment for the same offense? | Double Jeopardy Memo 1348 - C - MS_68233.docx | ROSS 000284650-ROSS-000284651 | Condensed, SA - C - MS_68233.docx | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 10952 | State v. Mosley, 55 So. 3d 69 | 135H+30 | Double jeopardy principles are inapplicable to sentence enhancement proceedings. State v. Dorthey, 623 So.2d 1276, 1278 (La.1993). Therefore, they may enter the final judgment being taken to correct an illegal sentence... | Double jeopardy principles are inapplicable to sentence enhancement proceedings. U.S.C.A. Const.Amend.5. | Are double jeopardy principles inapplicable to sentence enhancement proceedings? | 01485S.docx | | SA, Sub | 0.51 | | | | | 1 |
| 10953 | State v. Item, 161 Wash. 2d 256 | 135H+4 | The double jeopardy clause states that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V; Therefore, it provides three separate constitutional protections: "It ... shall ... be twice put in jeopardy for the same offense," WASH. CONST. art. I, § 9. Washington's double jeopardy clause is essentially identical to its federal counterpart and thus affords no greater protection. In re Pers. Restraint of Davis, 142 Wash.2d 165, 171, 12 P.3d 603 (2000), accord State v. Linton, 156 Wash.2d 777, 782 P.3d 138 (2006) (plurality opinion). The double jeopardy clauses prohibit the State from prosecuting a defendant for the same offense after an acquittal. State v. Graham, 153 Wash.2d 400, 404, 103 P.3d 1238 (2005); Linton, 156 Wash.2d at 794, 132 P.3d 127 (If acquittal of an offense terminates jeopardy and prohibits the State from trying the defendant a second time for the same offense.") | Does an acquittal of an offense terminates jeopardy and prohibits the State from trying the defendant a second time for the same offense? U.S.C.A. Const.Amend.5; WASH. CONST. art. 1, § 9. | Does an acquittal of an offense terminates jeopardy and prohibit the State from trying the defendant a second time for the same offense? | 01568S.docx | USGA EASE 00164411-USGA EASE 00164412 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10954 | State v. Prop. Located at No. 70 Oakland St., 727 So. 2d 1249 | 135H+25 | Last, Whalen contends that the forfeiture of his interest in the property constitutes double jeopardy. The United States Supreme Court rejected this issue in U.S. v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In that decision, the Court held that civil forfeitures generally do not constitute "punishment" for purposes of the double jeopardy clause. Previously, Louisiana courts evaluated civil forfeitures by the two part test found in State v. Johnson, 94°2305, 94° (La.App. 4 Cir. 1/19/95), 650 So.2d 1354. Does this part entirely (1) Impose a sanction overwhelmingly disproportionate to the damages the offender has caused; and (2) bear no rational relation to the goal of compensating the government for the cost it was incurred in investigating and prosecuting the violation. But recent jurisprudence recognizes that the two-part test in Johnson has been abrogated by the subsequent United States Supreme Court jurisprudence. See State v. Coler, 94°0501 (La.App. 1 Cir. 12/29/94), 648 So.2d 587; State v. Perry, 95°0144 (La.App. 1 Cir. 11/9/95), 664 So.2d 114. Therefore, the civil forfeiture of Whalen's interest in the property does not constitute double jeopardy. | Civil forfeiture of interest in property does not constitute double jeopardy. U.S.C.A. Const.Amend.5. | Does civil forfeiture of interest in property not constitute double jeopardy? | Double Jeopardy- Memo 531 - C - DH4_68314.docx | ROSS 000283038-ROSS-000283039 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 10955 | Appeal of New York Pub. Co., 12 Kan. App. 2d 428 | 371+2016 | The entire matter of taxation is legislative and does not exist apart from statute. The legislature is empowered to provide the means and agencies for carrying out its responsibilities in matters of taxation. Joseph v. McNabney, 315 Kan. 270, 271, 524 P.2d 79 (1974). Where a statute is clear and unambiguous, the court must give effect to the legislative intent therein expressed (rather than make a determination of what the law should or should not be. Capital Electric Line Builders, Inc. v. Lennen, 232 Kan. 379, 383, 654 P.2d 464 (1982); Randall v. Seemann, 228 Kan. 395, 397, 613 P.2d 1376 (1980). | Entire matter of taxation is legislative and does not exist apart from statute; legislature is empowered to provide the means and agencies for carrying out its responsibilities in matter of taxation. | Entire matter of taxation is legislative and does not exist apart from statute. | Taxation - Memo 1359 - C - NSY.docx | USGA EASE 00056072-USGA EASE 00056073 | Condensed, SA | 0.68 | 0 | 1 | | 1 | 1 |
| 10956 | Great Lakes Gas Transmission Co. v. State Treasurer, 140 Mich. App. 635 | 371+2016 | Nor do we find that any other provision in the franchise tax act provided the state with the authority to levy the use tax. Simply construct, no franchise tax act did not vest the treasury department with any authority over tax collection, which the corporations which refused or failed to pay franchise fees. Inasmuch as taxing authority may not be exercised unless expressly conferred by the Legislature, Borden, Inc. v. Dep't of Treasury, 391 Mich. 495, 218 N.W.2d 667 (1974), Lakeland of Clark Equipment Co. v. Dep't of Treasury, Revenue Division, 394 Mich. 396, 230 N.W.2d 548 (1975), the department was without authority to levy plaintiff to submit to its administrative procedures. | Taxing authority may not be exercised without being expressly conferred by legislature. | Can the taxing authority be exercised without being expressly conferred by the legislature? | 04036S.docx | USGA EASE 00166615-USGA EASE 00166616 | Condensed, SA | 0.88 | 0 | 1 | | 1 | 1 |
| 10957 | Welch v. Town of Ludlow, 136 Vt. 83 | 171+2016 | In Vermont, where we have no home rule constitutional provision, a town has only three powers specifically authorized by the Legislature. Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484, ..., 380 A.2d 64 (1977). The Legislature, having the power to tax, can confer that power on the local town to measure such matters as it pleases. Clearly Union Co. v. Village of Springfield, 83 Vt. 396, 403, 76 A. 91 A2 (1910). Clearly the State has ultimate control over the methods used for local taxation. | Legislature, having the power to tax, can confer that power upon town to tax in such a matter as it pleases; state has ultimate control over methods and for local taxation. | Do states have ultimate control over methods and for local taxation? | Taxation - Memo 1341 - C - AAK_68355.docx | ROSS 000282161 | Condensed, SA | 0.58 | 0 | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 16958 | Edward Gray v. I & S, 647 F. Supp. 2d 884 | 38+1 | Applicability of rights may be limited by operation of law or by public policy. | The applicability of rights may be limited by operation of law or by public policy... See 1843 (1), at *57 (D.N.J. June 30, 2006), aff'd 270 Fed.Appx. 87 (3d Cir. 2008)... | Does the operation of law or public policy limit the applicability of rights? | 06115.docx | LEGALEASE 00077171-LEGALEASE 00077172 | Condensed, SA | 0.94 | 0 | 1 | | 1 | 1 |
| 16959 | Patrick v. Burget, 486 U.S. 94 | 29T+302 | Sherman Act was not intended to restrain state action or official action directed by the state... | The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state... See Parker v. Brown, 317 U.S. 341, 350-351, 63 S.Ct. 307, 87 L.Ed. 315 (1943)... | Can the Sherman Act restrain an official action by the state? | 05041.docx | LEGALEASE 00078488-LEGALEASE 00078489 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | 1 |
| 16960 | Benavidez v. United States, 177 F.3d 927 | 272+201 | Mere allegation of negligence does not turn an intentional tort into negligent conduct. | Of course, a mere allegation of negligence does not turn an intentional tort into negligent conduct. See Rhodes v. United States, 967 F.2d 357, 360 (10th Cir. 1991) Naisbitt v. United States, 611 F.2d 1350, 1350-54 (10th Cir. 1980)... | Can a mere allegation of negligence turn an intentional tort into negligent conduct? | 07407.docx | ROSS-003284553-ROSS-003284554 | Condensed, SA | 0.91 | 0 | 1 | | 1 | 1 |
| 16961 | Wrigley v. Wm. 139 F. Supp. 3d 740 | 272+201 | A mere allegation of negligence does not turn an intentional tort into negligent conduct. | However, "a mere allegation of negligence does not turn an intentional tort into negligent conduct." Benavidez v. United States, 177 F.3d 927, 931 (10th Cir.1999). Conduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor... | Can a mere allegation of negligence turn an intentional tort into negligent conduct? | 07407.docx | LEGALEASE 00079077-LEGALEASE 00079078 | Condensed, SA | 0.87 | 0 | 1 | | 1 | 1 |
| 16962 | Cook v. Winfrey, 975 F. Supp. 1045 | 237+1.6 | Under Illinois conflicts law, when multi-state defamation case arises, the applicable law is that of the victim's domicile. | In Cook I, 151 F.3d 1045, we previously noted that under Illinois choice of law rules, when multi-state defamation case arises, the applicable law is that of a victim's domicile... | What is the law applicable to multi-state defamation cases? | 05380.docx | LEGALEASE 00080834-LEGALEASE 00080835 | Condensed, SA | 0.91 | 0 | 1 | | 1 | 1 |
| 16963 | Domangue v. MacDonald, 378 F. Supp. 51 | 267+4 | Under Massachusetts law, essential elements of crime of incest are sexual intercourse with person within degree of consanguinity wherein marriage is prohibited. | Mr. Domangue was convicted of incest in violation of M.G.L. c. 272, " 17 (1966 ed.) The essential elements of the crime are sexual intercourse with a person within a degree of consanguinity wherein marriage is prohibited. See Commonwealth v. Lynes, 142 Mass. 577, 581, 8 N.E. 408 (1886)... | What are the elements that constitute an incest? | 06687.docx | LEGALEASE 00080936-LEGALEASE 00080937 | Condensed, SA, Sub | 0.37 | 0 | 0 | 1 | 1 | 1 |

2983

Appendix D

| ROW | Judicial Opinion | WSNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,073 |
| 10694 | Caulmeenx v. Smith, 269 S.W.3d 222 | 366+1 | The right of equitable subrogation arises when one pays the debt of another for which the other is primarily liable. For instance, if Customers had paid off the Carrolls' bank note in its entirety, under this theory Customers would step into the position of the bank and could recover from the Carrolls for the amount paid. Here, Customers is not attempting to assert a subrogation right against the Carrolls, but asserts that this right defeats or dilutes the ownership acquired by the Smiths when they acquired the bank's lien. We do not believe this is the purpose of the equitable subrogation doctrine. "Because the doctrine allows the payor to assert rights owned by a creditor against the party primarily liable, in this case, the Carrolls. Equitable subrogation is a legal fiction whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the party primarily liable... Bennett Truck Transport, L.L.C. v. Williams Bros. Constr., 256 S.W.3d 730 (The App. Houston [14th Dist.] 2008, no pet.). The purpose is to prevent the unjust enrichment of the debtor who was primarily liable. Smart v. Tower Land & Inv. Co., 597 S.W.2d 333, 337 (Tex.1980). Here, any right of subrogation owned by Customers could be asserted only against the Carrolls (the parties primarily liable), not against the bank or the Smiths. | The right of equitable subrogation arises when one pays the debt of another for which the other is primarily liable. | Is the purpose of equitable subrogation to prevent the unjust enrichment of the debtor who was primarily liable? | 00836.docx | LEGALEASE-00083975 - LEGALEASE-00083976 | Condensed, SA | 0.92 | 0 | | | 1 | |
| 10695 | Hickey v. United States, Inc., 209+341(1) | 209+341(1) | Thai Congress has the right to impose restrictions on property once freed from present and settled effects can be freed... United States, 244 U.S. 590, 37 S. Ct. 385, 61 L. Ed. 706; Taylor v. Taynie (C. C. A. 10) 51 F. (2d) 884, 887. | Congress has right to impose restrictions on Indian property once freed from present and settled restrictions... (244 U.S. 590, 37 S. Ct. 385, 61 L. Ed. 706; Taylor v. Taynie (C. C. A. 10) 51 F. (2d) 884, 887) | Does the Congress have the right to impose restrictions on Indian property freed? | 05113.docx | LEGALEASE-00084203 - LEGALEASE-00084205 | Condensed, SA, Sub | 0.07 | | | | 1 | |
| 10696 | R.M.W. v. G.M.M., 23 Misc. 3d 711 | 211+1532 | Pursuant to Penal Law * 240.20, a person commits Disorderly Conduct when "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [(] he engages in fighting or in violent, tumultuous or threatening behavior; or (3) in a public place he uses abusive or obscene language, or makes an obscene gesture; or (7) He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose." Family Court * 812(1) adds to this section that, for the purposes of a family offense proceeding, disorderly conduct does not have to occur in a public place. | Biological mother's alleged behavior in appearing at home of biological father, acting verbally abusive, demanding to see their child, grabbing that child, and trying to force child into a car constituted disorderly conduct, as required to establish a family offense in proceedings on petition brought on behalf of that father, son, and minor child with biological father and of subject children. McKinney's Family Court Act § 821(1)(a); McKinney's Penal Law § 240.20. | When is a person guilty of disorderly conduct? | 05729.docx | LEGALEASE-00085378 - LEGALEASE-00085379 | Condensed, SA, Sub 0.21 | | | | | 1 | |
| 10697 | Monster Content v. HOMES.COM, 331 B.R. 438 | 51+2531 | Homes also contends that because Monster Content had actual knowledge of the Homes Bankruptcy, the requirement of formal notice is satisfied. Monster Content does not dispute that it learned from Commerce sometime in the fall of 2002 that Homes was in bankruptcy. North Circuit law, however, rejects the proposition that actual knowledge of a bankruptcy proceeding negates the requirement of formal notice for a known creditor. Id. "Generally, if a debtor's known contingent creditor is not given formal notice, he is not bound by an order discharging the debtor's obligations. The fact that a creditor has actual knowledge of Chapter 11 bankruptcy proceedings going forward involving a debtor does not obviate the need for notice." Id. at 1399. See also Matsia v. In re Hanta America, Inc., (In re Matsia Electronics Co.), 188 B.R. 732 (Bankr.W.D.N.Y.1995). As held by the Supreme Court, "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." City of New York, 344 U.S. at 297, 73 S.Ct. 299. In this case, it is undisputed that no formal notice regarding the Homes Bankruptcy were sent to Monster Content or any of its predecessors-in-interest, even though the actual Monster Content became aware sometime in the fall of 2002 that Homes was in bankruptcy, it was not provided with any notice of the proposed plan of reorganization, any notice of the claims bar date, or any notice of the notice, hearing date or order of confirmation. | Actual knowledge of a bankruptcy proceeding does not supplant the requirement of formal notice for a known creditor. U.S.C.A. Const.Amend. 5; 11 U.S.C.A. § 1141(d). | Will actual knowledge supplant a formal statutory notification? | 10838.docx | LEGALEASE-00089245 - LEGALEASE-00089246 | Condensed, SA, Sub 0.9 | | | 1 | | 1 | |
| 10698 | Pomeroy v Sam Thorpe Min. Co., 37 Ariz. 541 | 277+12 | While a noticeably in compliance with the above provisions of the Arizona statutes may convey to a prospective buyer or incumbrancer of mining claims valuable information concerning the location or description of mining claim, and affiliation is not meant necessarily to impose on the prescription that the delinquent has been cut off. This provision simply may be overcome because it requires the annual work of the record that has been done... that the claim of delinquency was unfounded. The record then provided but is not intended to convince the public that the owner who is being advertised out, of which is happening, as we said was the purpose of the notice provided for in section 2324, supra, in Strobe v. Weeden, 29 Ariz. 463, 242 P. 858, but is a record of what has happened. But, if it could be so construed as a recording statute imparting notice to purchasers and incumbrancers of the property, this reasoning seems to us that he had actual notice from the grantors of the notice and demand for their share of the annual expenditures and of their failure to contribute before they purchased the property... that his grantors had not done any of the assessment work for a number of years and had not contributed thereto, is no satisfactory notice, but the construction of recording laws that notice of an unrecorded instrument is equivalent to the recording of it, with respect to the person having such notice. | Notice of unrecorded instrument is equivalent to recording of it with respect to person having such notice. | Is a notice of unrecorded instrument equivalent to the recording of it, with respect to the person having such notice? | 07330.docx | LEGALEASE-00090383 - LEGALEASE-00090386 | Condensed, SA | 0.93 | | | | 1 | |

2984

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 18069 | United States v. Hall, 424 F. Supp. 508 | 63+3 | Nevertheless, if we accept as valid the premise of the defendant that he cannot be both the victim and perpetrator of mail, it does not follow that the indictment is legally defective. By analogy he has suggested that it is like charging mail with rape and then with prostitution when he solicits a bribe with each other. Extending the analogy further, the court knows of no reason why the rapist and his prostitute could not unlawfully conspire to lure a third party into their bed to seduce him for their mutual profit. Here, regardless of whether we treat the allegations of payment to Hall in Counts I, II and III as "distribution" to a briber, the counts clearly charge the attempt to bribe Rogers. The transactions between Taylor and Hall which constituted both for their in-progress against Rogers, both the giver and the taker of a bribe may be charged as co-conspirators to violate 18 U.S.C. § 1952. United States v. Corallo, 281 F. Supp. 24, 28 (S.D.N.Y.1964). | Both giver and taker of bribe may be charged as co-conspirators to violate Travel Act. 18 U.S.C.A. § 1952. | Can giver and taker of bribe be charged as co-conspirators to violate Travel Act? | 10783.docx | LEGALEASE 0006051-LEGALEASE 0006052 | Condensed, SA, Sub | 0.89 | 0 |  |  | 1 |  |
| 18070 | Edwards v. Vaeger, 357 So. 3d 991 | 307A+563 | Willful difficult or conduct is a conscious or intentional failure to act. Webb v. Automatic Poultry Feeder Co., 439 F.2d 95 (8th Cir.1971). "Willful" is a synonym of such terms as intentional, deliberate, and noncompliance. No wrongful motive or intent is necessary to show willful conduct. | No wrongful motive or intent is necessary to show willful conduct. | Is a wrongful motive or intent necessary to show willful conduct? | 10902.docx | LEGALEASE 0009409-LEGALEASE 0009492 | Condensed, SA, Sub | 0.45 |  | 1 |  |  | 1 |
| 18071 | Kidzhi v. San Mateo Flour & Well, 967 So. 2d 1063 | 307A+563 | While a trial court has the inherent authority to dismiss a complaint for fraud, in Jacob v. Henderson, 840 So.2d 1167, 1169 (Fla. 2d DCA 2003), this court adopted a vigorous standard for determining whether a dismissal for fraud. The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). In determining whether dismissal for fraud should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1118. Because "dismissal sounds the "death knell of the lawsuit," courts must reserve such harsh medicine for the most egregious party's misconduct is correspondingly egregious. *Id.* at 1118. | Circuit court has the inherent authority to dismiss a complaint for fraud | Does a circuit court have the inherent authority to dismiss a complaint for fraud? | 10004.docx | LEGALEASE 00095274-LEGALEASE 00095275 | SA, Sub | 0.93 |  |  | 0 |  |  |
| 18072 | Criter v. Diaz, 130 A.3d | 307A+563 | A mere delay, however, is not enough to warrant a dismissal for lack of prosecution. See Harvey, 784 A.2d at 143. There is no evidence here of dilatory action on the part of plaintiffs. | A mere delay is not enough to warrant a dismissal for lack of prosecution. See Harvey, 784 A.2d at 143. There is no evidence here of Superior Court Rules Civ Proc., Rule 41(b). | Is a mere delay enough to warrant a dismissal for lack of prosecution? | 09852.docx | LEGALEASE 00095730-LEGALEASE 00095731 | SA, Sub | 0.36 |  |  |  | 1 |  |
| 18073 | People ex rel. Price v. Illinois Cent. R. Co., 264 Ill. 636 | 200+2 [7,0] | The approval by the county board of the road and bridge taxes in any town or road district is a mandatory act, and unless so approved the court is held under a similar state statute passed in 1874. Loechner v. Brubaker, 83 Ill. 334, Section 119 of the Roads and Bridges Law of 1874 (Rev. Stat. 1874, p. 921) required the highway commissioners to present to the county board the amount necessary to be raised for roads and bridges, and the rate per cent, which should be "submitted to the board for their action at such September meeting." In the case above cited this court held that this was "the first action" indicated that the board of supervisors was to exercise a supervision over the highway commissioners' action in making the levy, and that, this being so, the requirement of action on the part of the board of supervisors was jurisdictional, and the clerk had no power to extend any taxes without such action. Section 56 of the present Road law now require that the requirement of action on the part of the county board then was section 120 of the Law of 1874. The present case but express requires the approval of the county board, and without such approval the levy cannot be legally made. The doctrine of the Loechner Case has been adhered to in later decisions of this court. Chicago & Northwestern Railway Co. v. People, 184 Ill. 174, 56 N. E. 365; People v. Chicago & Eastern Illinois Railroad Co., 248 Ill. 198, 94 N. E. 1. B. | Under Road and Bridge Law, S. 56, S.H.A. ch. 121, S 62, a resolution of the county board directing the county clerk to extend on the tax books road and bridge taxes, is not an approval by the board of the taxes, to render a levy valid. | Does the county clerk have authority to extend the road and bridge tax? | 09453.docx | LEGALEASE 00095086-LEGALEASE 00095087 | Condensed, SA, Sub | 0.84 | 0 |  | 1 |  |  |
| 18074 | Jangaru v. Yerasham, 213 So. 3d 1174 | 307A+563 | Based on the record on appeal, the trial court did not err in dismissing appellant's abandoned action. La. C.C.P. art. 561. Nevertheless, we recognize that the trial court's judgment is partially in error in that it orders the suit be dismissed with prejudice. When an action has dismissed as abandoned under La. C.C.P. art. 561 only without prejudice. Clark v. State, 2002-1794 (La. 6/21/02), 819 So.2d 1048, 1056. When that this is a sort Lucy's legal malpractice (professional negligence) suit the dismissal of this suit, whether with or without prejudice, produces no different result. Id. A dismissal without prejudice is considered as if the suit has never been filed; hence, any new suit filed. Hence, any new suit filed Mr. Jangaru might file would also be barred. Accordingly, we decline to exercise our authority, pursuant to La. C.C.P. arts. 2164 and 2129, to amend the trial court's judgment. | An action may be dismissed as abandoned under the abandonment statute only without prejudice? | Can an action be dismissed as abandoned under the abandonment statute only without prejudice? | 09778.docx | LEGALEASE 00096410-LEGALEASE 00096411 | Condensed, SA, Sub | 0.86 |  |  |  | 1 |  |
| 18075 | M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La. 7/1/08) | 13+61 | It is axiomatic three elements are necessary for a negligence cause of action to accrue: fault, causation and damages. Austins v. Abney Mills, 01-1598 (La.9/4/02), 824 So.2d 1137, 1148. In fact, "a sine qua non for accrual of a cause of action in damages." *Id.,* quoting Cole v. Celotex, 599 So.2d 1058, 1065 n. 13 (La. 1992). | A sine qua non for accrual of a cause of action in damages. | Are damages a sine qua non for accrual of a cause of action? | Action - Memo #4.1 - C-14.docx | ROSS-003028934/ROSS-003028949 | Condensed, SA | 0.82 |  |  |  | 1 |  |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16076 | United States v. Darnell, 370 F.R.645, 991 F. Supp. 24154 | 221×142 | Assuming that the Afghanistan court did make some assertion of exclusive jurisdiction, it is unclear on what the defendant's court is asserting exclusive jurisdiction over and for what duration. It is not evident from the facts presented that the act of state would need to be invalidated here because the contours of that ostensible act of state have not been defined by this defendant. Even if this court's factual findings must necessarily "cast doubt upon the validity of the foreign sovereign's acts," the act of state doctrine is inapplicable if the foreign overnight's acts… "The act of state doctrine is inapplicable if the foreign sovereign's act does not restrict ones the defendant's conduct. 711.7 Regardless of what the court's factual findings may suggest as to the legality of the Afghanistan court's action, its holding is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires." | Even if the domestic court's factual findings must necessarily cast doubt upon the validity of the foreign sovereign's acts, the act of state doctrine is inapplicable if the foreign act of state would need to be invalidated here. | Under the act of state doctrine, is it not sufficient that a court's factual findings would impugn the foreign state's actions or should the claims call for the invalidation of those actions? | 019661.docx | LEGALEASE 00123465-LEGALEASE 00123466 | Condensed_5A_Sub 0.76 | | 0 | | 1 | 1 | 1 |
| 16077 | Haywood v. Ryan, 85 N.J.L. 116 | 129×108 | Section 3 of the act above referred to declares that persons who shall loiter or wander about in the streets or public places at any day or night under the influence of intoxicating liquor, or who, not being under such influence, shall indulge in or utter loud or indecent language or shall address or make audible otherwise remarks or comment upon any person passing along such streets or public places, or shall obstruct or interfere with any person or persons lawfully being upon such streets or in such public places, shall be deemed and adjudged to be a disorderly person. This act declares persons to loiter or disorderly in the latter portions of other sentences, and therefore to sustain this conviction there must be some evidence that the defendant did obstruct or interfere with persons lawfully upon a public street. | Act Concerning Disorderly Persons, § 3, applies only to such persons as shall by their act obstruct or interfere with person lawfully in the street. | Is a person who obstructs or interferes with person lawfully in streets or public places a disorderly person? | 014399.docx | LEGALEASE 00125603-LEGALEASE 00125604 | Condensed_5A_Sub 0.8 | | | | 1 | 1 | |
| 16078 | State v. Blake, 382 So. 2d 1187 | 110×77×141.1 | La C.C.P. art. 814(A)(44) sets forth the responsive verdicts for a charge of simple burglary. These include guilty, guilty of attempted simple burglary, guilty of unauthorized entry of a place of business, and not guilty. Felony possession of stolen things is not among the responsive verdicts. A lesser included offense must be of the same generic class and need not require proof of any element which is not found in the crime charged. State v. Guidry, 325 So.2d 242, [also the possession of the felony possession of stolen things, simple burglary does not require proof of possession of stolen property.] State v. 382 So.2d Felony possession of stolen things is not among the responsive verdicts. Co. 7(1):206, 709 So.2d 311, 317 Therefore, the pled offense is not a lesser included offense to the charged offense of simple burglary. | Felony possession of stolen property was not responsive verdict for a charge of simple burglary, and thus, State was required to amend information or file recall before trial court could accept defendant's guilty plea to possession of stolen property, where simple burglary did not require proof of possession of stolen property, and thus possession of stolen property was not a lesser included offense. LSA-C.Cr.P. arts. 558, 814; LSA-R. S. art. 44. | Does simple burglary require proof of possession of stolen goods? | Burglary_Memo 15-96.docx | ROSS-003112890-ROSS-003112891 | Condensed_5A_Sub 0.49 | | 0 | | 1 | 1 | 1 |
| 16079 | Burleigh v. Hecht, 22 S.D. 301 | 150×84 | It does set affirmatively appear from this conclusion of the court that upon the record below which the defendant Schnauber claimed upon, it appears that the defendant claimed certain statute based upon the ground of laches on the part of the plaintiff and her grantors, in this case, the decision of the court must have been based upon the ground of laches on the part of the plaintiff and her grantors, in failing to assert their title to the premises for a period of more than 20 years, for the purpose therefore of determining whether this is a legal action or an equitable action the character of the court recital as a matter of law of an equitable action, for, if it is a legal action, the doctrine of laches does not apply, as that doctrine is only applicable to equitable actions. McFarland v. Grieg, 70 Ark 173, 69 S.W. 56, 93 Am. St. Rep. 38; Williams v. Neben, 72 Conn. 173, 43 Atl. 1052; Blake v. Baker, 179 Mass. 294, 57 N. E. 603; Wood, Lim. "46, note "a." | The doctrine of laches is applicable only to equitable actions and does not apply to legal actions. | Is the doctrine of laches applicable only to equitable actions and does not apply to legal actions? | 000335.docx | LEGALEASE 00129760-LEGALEASE 00129761 | Condensed_5A_Sub 0.9 | | 0 | | 1 | 1 | 1 |
| 16080 | Sutton v. Ohio Dept of Edn., 80 N.E.3d 1238 | 316P×871 | In enter that same the parties cited from our district that discussed a nexus between a teacher's conduct and his or her teaching duties predicated the 2007 amendment to R.C. 3319.31. In 2007, R.C. 3319.31 was amended by 2007 H.B. 190, which added requirements that he/list to the creation of a code of conduct for educators. See Robinson at 11:13:March 5 1999, the "1245 Board adopted the Licensure Code of Professional Conduct for Ohio Educators. The Licensure Code serves "in the basis for decision in matters pertaining to licensure that are consistent with applicable laws and provides a guide for conduct in situations that have professional implications for all individuals licensed by the State Board of Education[.]" Licensure Code, p. 1 Robinson at "18. The Licensure Code includes eight principles that define the "fundamental beliefs" required for Ohio educators and to a greater extent explains what constitutes "conduct unbecoming." Licensure Code at 6. Thus, as it serves our purposes, the Licensure Code further supplements the statutory and administrative standards and guides our assessment of "conduct unbecoming." Educators in the state are likewise bound by the principles found in the Licensure Code. | Educators are bound by the principles found in the Licensure Code of Professional Conduct for Ohio Educators. R.C. 3319.31. | Are educators bound by the principles found in the Licensure Code? | 010964.docx | LEGALEASE 00129249-LEGALEASE 00129250 | Condensed_5A_Sub 0.9 | | 0 | | 1 | 1 | 1 |
| 16081 | City of Norfolk v. Norfolk City, 334 Va. 716 | 3036×501 | In the absence of statute or rule of court, the matter of dismissing an action, or of taking a nonsuit, is controlled by the common law. Dominaud and Renault, "4, page 109, 17 Am. Jur.; Dismissal, Discontinuance and Nonsuit, "13, page 64. | In absence of statute or rule of court, matter of dismissing an action, or of taking a nonsuit, is controlled by the common law. | Does the right of a plaintiff to take a voluntary nonsuit come from common law? | 010402.docx | LEGALEASE 00129524-LEGALEASE 00129525 | Condensed_5A 0.51 | | | 0 | | 1 | 1 |

2986

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 16982 | Stein v. Dowling, 867 F. Supp. 2d 1087 | 92+1186 | Speech "on issues of social and political concern ... has been recognized as "the core of what the First Amendment is designed to protect." " United States v. Wilcox, 66 M.J. 442, 446"47 (C.A.A.F.2008). As a result, "members of the military are not excluded from the protection granted by the First Amendment," Parker v. Levy, 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The First Amendment therefore protects speech in the military unless it "interferes with or prevents the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale of the troops." Wilcox, 66 M.J. at 448. To violate Article 134, the government must show a "direct and palpable connection" between the "statements of the military mission" and the statements must be taken in their full context. Id. at 447"48. | Members of military are not excluded from protection granted by First Amendment. U.S.C.A. Const.Amend. 1. | Are military members excluded from the protection granted by the First Amendment? | 008412.docx | LEGALEASE-00130077-LEGALEASE-00130078 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 16983 | In re Nantucket Island Associates Ltd. Partnership Unitholders Litigation, 810 A.2d 351 | 289+1099 | Then, in 1998, the General Assembly provided additional guidance about this issue, by adopting a new subsection (f) of " 17"302, which reads in pertinent part as follows:(f) If a partnership agreement provides for the manner in which it may be amended, it may be amended in that manner or with the approval of all the partners or as otherwise permitted by law. If a partnership agreement does not provide for the manner in which it may be amended, the partnership agreement may be amended with the approval of all the partners or as otherwise permitted by law. | Provision in limited partnership agreement exempting general partner from obtaining limited partners' written consent to amendments admitting additional limited partners did not evidence any authority on the part of general partner to unilaterally amend limited partnership agreement to add a new class of preferred limited partnership units having superior rights to existing units; provision was in section of agreement that would have otherwise required general partner to obtain written unanimousconsent from all the limited partners, and provision only allowed general partner to admit new limited partners upon consent of a majority of the limited partners and include as consenting those partners who did not affirmatively object. | Can a partnership agreement be amended with the consent of the partners? | 022122.docx | LEGALEASE-00133527-LEGALEASE-00133528 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 16984 | Pantano v. State, 124 Nev. 1498 | 211+1594 | Thirteenth, appellant claimed that his trial counsel was ineffective for failing to correct a defective, vague, and unconstitutional criminal complaint. Appellant claimed that the complaint did not specify the exact date and time of the offense. Appellant failed to demonstrate that his trial counsel was deficient or he was prejudiced. Time and date are not essential elements of a sexual offense against a minor.Therefore, the district court did not err in denying this claim. | Complaint charging defendant with sexual assault of a child under 14 that did not specify the exact date and time of offense was not defective, as time and date were not essential elements of a sexual offense against a minor. | Are time and date essential elements of a sexual offense against a minor? | 043045.docx | LEGALEASE-00133852-LEGALEASE-00133853 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 16985 | Fireman's Fund Ins. Co. v. Whirlpool Corp,2002 WL 228208 | 307A+485 | The primary purpose of requests for admissions is to set at rest triable issues so that they will not have to be tried, and to thus expedite trial. (Stull v. Sparrow (2001) 92 Cal.App.4th 860, 865, 112 Cal.Rptr.2d 239 (Stull ).) The basis for imposing sanctions is directly related to that purpose. (Ibid.) Unlike other discovery sanctions, an award of expenses under section 2033, subdivision (o) is not a penalty. (Ibid.) Instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission when any trial would have been expedited or shortened if the request had been admitted. (Ibid.; Brooks v. American Broadcasting Co. (1986) 179 Cal.App.3d 500, 509, 224 Cal.Rptr. 838 (Brooks ); see also Wimberly, supra, 56 Cal.App.4th at p. 634, 65 Cal.Rptr.2d 532 .). | Unlike other discovery sanctions, an award of expenses for failure to respond to request for admission is not a penalty; instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission when any trial would have been expedited or shortened if the request had been admitted. West's Ann.Code Civ.Proc. S 2033(o). | "Is an award of expenses for failure to respond to request for admission, a penalty?" | 030074.docx | LEGALEASE-00135057-LEGALEASE-00135058 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 16986 | McKissick v. Jackson, 15 Kan. App. 2d 508 | 307A+725 | Most jurisdictions allow costs and other expenses incurred in preparation for trial as conditions for a continuance. See Annot., 9 A.L.R.4th 1144 " 3[c]. Awarding expenses in preparing for trial is a reasonable condition for a continuance. E.g., Flea Market, USA, Inc. v. Cohen, 490 So.2d 210 (Fla.Dist.App.1986); Olesen v. Snyder, 277 N.W.2d 729 (S.D.1979). | Awarding expenses in preparing for trial is a reasonable condition for continuance. | Is awarding expenses in preparing for trial a reasonable condition for continuance? | 031558.docx | LEGALEASE-00139203-LEGALEASE-00139204 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 16987 | United States v. Kahn, 472 F.2d 272 | 63+3 | For all these reasons, we agree with Judge Motley that the Pennsylvania courts would not recognize proof of extortion as a complete defense to bribery charges, but would find the defense relevant only on the issues of intent and willfulness. Perhaps foreseeing this result, appellants claim that, even recognizing the validity of the general Barash I principle, Judge Motley's instructions on the extortion defense were erroneous. | Under Pennsylvania law, extortion is not complete defense to bribery charge, but may be relevant on issues of intent and wilfulness. | Is extortion a complete defense to bribery charge? | 012035.docx | LEGALEASE-00139396-LEGALEASE-00139397 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 16988 | People v. Adams, 19 Cal. App. 4th 412 | 352H+184 | "Sodomy is sexual conduct consisting of contact between the penis of one person and the anus of another person...." (" 286, subd. (a).) Both appellant and Ponce denied sodomizing Jamie, and appellant denied seeing Ponce sodomize her. However, penetration may be established by circumstantial evidence. (People v. Singh (1928) 93 Cal.App. 32, 35, 268 P. 958.) Sperm was present in Jamie's rectum as well as her vagina, she was bleeding in the rectum, and there were abrasions a few centimeters inside the rectum as well as injuries to the anal sphincter. The internal injuries had to be made by something scraping or scratching the tissue. There were also injuries to the area between the vagina and the anus which occur "when the penis is going into the vagina or anus." The combination of sperm in the rectum plus injuries is circumstantial evidence from which penetration by a penis may be inferred. (Cf. People v. Morales (1989) 48 Cal.3d 527, 553, 257 Cal.Rptr. 64, 770 P.2d 244.) | Combination of sperm in rectum plus injuries is circumstantial evidence from which penetration by penis may be inferred for purposes of sodomy statute. West's Ann.Cal.Penal Code S 286(a). | Can penetration be proven by circumstantial evidence? | 043094.docx | LEGALEASE-00143434-LEGALEASE-00143435 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 16989 | Roark v. Macoupin Creek Drainage Dist., 316 Ill. App. 3d 835 | 302+11 | A plaintiff is not required to plead evidence in his complaint but is only required to allege ultimate facts. Stinson v. Physicians Immediate Care, Ltd., 269 Ill.App.3d 659, 662, 207 Ill.Dec. 96, 646 N.E.2d 930, 932 (1995); Kling v. Landry, 292 Ill.App.3d 329, 340, 226 Ill.Dec. 684, 686 N.E.2d 33, 41 (1997). In the present case, Roark alleged that (1) defendants had a duty to maintain and repair the drainage system under section 4"15 of the Drainage Code, (2) defendants breached their duty by failing to make necessary repairs, and (3) as a result of defendants' breach, Roark's property was repeatedly flooded and damaged. Roark alleged sufficient facts to state a cause of action. Therefore, the trial court erred by dismissing the portion of Roark's amended complaint requesting injunctive relief. | A plaintiff is not required to plead evidence in his complaint but is only required to allege ultimate facts. | Is a plaintiff only required to allege ultimate facts in his complaint? | 023508.docx | LEGALEASE-00143772-LEGALEASE-00143773 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,079 |
| 16890 | In re WRT Energy Corp., 202 B.R. 579 | 260e47 | The legal term not mentioned in Article XXII is provided by LSA-R.S. 31:6, which declares: Ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form, or of any elements or compounds in solution, emulsion, or association with such minerals. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership [It is thus hornbook law that, in Louisiana, oil and gas are not owned by the landowner, or any other person, until reduced to possession. Succession of Rugg, 399 So.2d 519 (La App. 2 Cir.1978), writ denied 341 So.2d 897. | Under Louisiana law, oil and gas are not owned by the landowner or any other person until reduced to possession. | Are oil and gas not owned until reduced to possession? | 02185.docx | LEGALEASE 0014019-LEGALEASE 0014020 | Condensed, SA, 0.84 | 0.84 | 0 | 1 | 1 | 1 |
| 16891 | Parker v. Standard Oil Co., 250 S.W.2d 671 | 260e56 | A mineral lease is the conveyance of a determinable fee interest in land. The intention of the parties as revealed in the lease is that the minerals shall be produced from the land leased, and shared as therein specified. In construing the lease, the intention of the parties to it, as therein expressed, must prevail. See Summers, Oil & Gas, vol. 3, § 604, pp. 114 S.W.2d 1172. | A mineral lease is the conveyance of a determinable fee interest in land. | Is a mineral lease the conveyance of a determinable fee interest in land? | 02556.docx | LEGALEASE 0014094-LEGALEASE 0014095 | Condensed, SA | 0.8 | | 1 | 0 | 1 | |
| 16892 | Morgan Guar. Tr. Co. of New York v. Sharbo, 428 Pa. Super. 479 | 83E+152 | Every holder of a negotiable instrument is deemed, prima facie, a "holder in due course." Regeland P. to Uses of Grossman v. Morris, 346 Pa. 243, 30 A.2d 93 (1943). A holder in due course is a holder who takes an instrument for value, in good faith and without notice of any defect, default, dishonor, or any claim to it on the part of any person. 13 Pa.C.S.A. § 3302. | Every holder of a negotiable instrument is deemed prima facie holder in due course. | Is a holder of a negotiable instrument is deemed prima facie holder in due course. | Bills and Notes - Memo 64815_57888.docx | ROSS 003293947 | Condensed, SA | 0.78 | | 1 | 0 | 1 | |
| 16893 | Steinhmeyer v. Gramston, 235 Md. 118 | 200e167 | The authorities are in accord that the driving of cattle to pasture along a public road is not in itself negligence nor does it constitute a nuisance such as, "Under this right lie use public roads], a person may use the highway for the purpose of leading or driving cattle" 40 C.i.S. Highways * 233, p. 245. "A drover with cattle or horses, mules, sheep, or any other domestic animals has a right upon the public highway." Anno., 11 A.L.R. 1405. It is said in Restatement, Torts, sec. 505, comment a, that "as part of the privilege to use a public highway, one is possessor of livestock is privileged to drive them upon it for any legitimate purpose such as bringing them to market or taking them to pasture." The possessor of livestock to drive his animals along public highways was recognized and protected by the courts at common law. See Mills v. Stark, 4 N.H. 512; Jackson v. Rutland & Burlington Railroad Co., 25 Vt. 150 (1853); Anderson v. Gardner, 132 Mass. 29; Wood v. Snider, 187 N.Y. 28; Ingham, The Law of Animals, sec. 71, p. 279; 2 Harper and James, The Law of Torts, sec. 14.9, p. 824; 2 Cooley, Torts (4th ed.) sec. 265. | Under right to use public roads, person may use highway for purpose of leading or driving cattle. 40 C.J.S. 640. | Can cattle be driven in public highways? | 01906.docx | LEGALEASE 0014842-LEGALEASE 0014843 | Condensed, SA, Sub 0.89 | 0.89 | | 1 | 1 | 1 | |
| 16894 | Univ. State Bank v. Gifford Hill Concrete Corp., 431 S.W.2d 561 | 302e20 | Quantum meruit, a creature of equity, arises independent of any contract. It is based on the theory that a person performs work, or confers a benefit to another, and such benefit is accepted by the other, non-payment for such benefit would equally enrich the party receiving the benefit by the value of the work done. Although the two theories of recovery are inconsistent, they may be plead alternatively under the provisions of Rules 47 and 48, Texas Rules of Civil Procedure, as the Trusted did in this case. In Cowen v. Broadman, 325 S.W.2d 440 Dan Aderhold v. Hayon Co. App. 1959, no writ hist.) it was said: "Appellant complains that the trial court inconsistently concluded that plaintiff could recover upon contract, and also upon quantum meruit. The trial court concluded that plaintiffs might not on either theory. It is true that an express contract and quantum meruit are distinct and different relationships. The ideas are inconsistent. Nyctra v. Julrs, Tex.Civ.App. 257 S.W. 196, 198. But it is also true that the same record may contain evidence which will support either theory. The plaintiff pleaded alternatives both theories. This is not inconsistent. The plaintiff sought to recover both upon express contract and upon quantum meruit. They might allege both, and recover as the evidence might show." McClanahan v. Boudoin, 432 S.W. 909, 910. While one may not allege the one and recover on the other, one may allege both and recover on either, if it is proved. * * * | Although theories of recovery on contract and on quantum meruit basis are inconsistent, they may be plead alternatively. Rules of Civil Procedure, rules 47, 48. | Can inconsistent theories of recovery be pled in the alternative? | 02368.docx | LEGALEASE 0015160-LEGALEASE 0015261 | Condensed, SA, Sub 0.89 | 0.89 | | 1 | 1 | 1 | |

2868

Appendix D

| ROW | Judicial Opinion | WINS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18695 | Curtis v. Hazen, 56 Conn. 146 | 83f+141 | | | Is a note payable to the order of a person or to the bearer negotiable? | 00778.docx | LEGAL645E 00154733 LEGAL645E 00154734 | Condensed_SA_Sub 0.82 | | 0 | | 1 | | 1 |
| 18696 | Ford Motor Co v. Kentucky Unemployment Comp. Comm'n, 243 S.W.2d 657 | 83f+D311 | | The powers of an agent must be specific or necessarily inferred, and they cannot be created carte blanche. | Should the powers of an agent be specific or necessarily inferred? | 04065.docx | LEGAL645E 00155394 LEGAL645E 00155395 | Condensed_SA_Sub 0.88 | | | | 1 | | 1 |
| 18697 | PJ I for Morgan Stanley Mortg. Capital Holdings v. Kalberg, 392 P.3d 1248 | 83764+90 | | The proper remedy for a lack of standing is dismissal without prejudice. | Is the proper remedy for a lack of standing a dismissal without prejudice? | 02400A.docx | LEGAL645E 00155805 LEGAL645E 00155806 | Condensed_SA 0.89 | | | | 1 | | 1 |
| 18698 | Trent Realty Associates v. First Federal Sav. and Loan Ass'n of Philadelphia, 657 F.2d 29 | 170Bk+1447 | | Limited partnership is an unincorporated association whose citizenship, for diversity purposes, is deemed to be that of persons composing the association. | Is limited partnership a form of unincorporated association? | 02815.docx | LEGAL645E 00158629 LEGAL645E 00158630 | Condensed_SA_Sub 0.75 | | | | 1 | | 1 |
| 18699 | Johnson v. State, 529 S.W.2d 36 | 135H+96 | | Double jeopardy clause does not bar retrial of defendant requests, or consents to, a mistrial. U.S. Const. Amend. 5. | After a mistrial not requested by the defendant, but not objected to by him, can a defendant assert double jeopardy clause does not bar a second trial? | 01328.docx | LEGAL645E 00162213 LEGAL645E 00162214 | Condensed_SA_Sub 0.43 | | | | 1 | | 1 |
| 17000 | State v. Smith, 10 N.J. 258 | 178k+4 | | An indictment charged defendant with willfully and unlawfully having in his possession with intent to sell and exchange, and with having for sale and exchange, certain watered milk, that is, milk, to which defendant's consent, with intent to sell or exchange the same, was not sufficient to convict defendant, and proof that the servant, in not possessing the milk, was acting for and in accordance with the will of the defendant, his master. | Will milk be adulterated if certain foreign substance are added? | Adulteration- Memo158_1of2inRchSWAppGnsD_IP&ICPOZCN.doc | ROSS-000002141-ROSS-000000142 | Condensed_SA 0.41 | | | | 1 | | 1 |
| 17001 | Mississippi Cty. v. City of Osceola, 555 S.W.2d 96 | 371+3710 | | An illegal exaction is a tax that is either not authorized by law or is contrary to law. | Is illegal exaction a tax that is either not authorized by law or is contrary to law? | Taxation - Memo1188-C-+SA_64312.docx | ROSS-003279129-ROSS-003279130 | Condensed_SA 0.86 | | | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 17002 | Anadarko Petroleum Corp. v. Thompson, 94 S.W.3d 550 | 260v73.5 | A lease's habendum clause defines the mineral estate's duration. Gulf Oil Corp. v. Southland Royalty Co., 496 S.W.2d 547, 551 (Tex.1973). For instance, a typical habendum clause states that the lease lasts for a specified term and thereafter as oil, gas or other mineral is produced. | Lease's habendum clause defines the mineral estate's duration. | Does a lease's habendum clause define the mineral estate's duration? | Mines and Minerals - Memo #209 - C - CS5_57716.docx | ROSS000279677-ROSS-000279678 | Condensed, SA | 0.93 | 0 | 1 | | 1 | |
| 17003 | Adam v. Des Peres Hosp., 515 S.W.3d 810 | 307A490 | As a initial matter, our Court must determine whether there is a final judgment sua sponte. Avery Contr., LLC v. Niehaus, 492 S.W.3d 159, 162 (Mo. banc 2016). The motion court's order and judgment did not specify whether it dismissed Appellant's claims with or without prejudice. | If a motion court's order and judgment do not specifically state that a claim is dismissed with prejudice, it is deemed to be dismissed without prejudice. | If a motion to dismiss did not specifically state it is dismissed with prejudice, is it deemed to be dismissed without prejudice? | Pretrial Procedure - Memo # 10415 - C - KQ_61731.docx | ROSS000279742-ROSS-000279743 | Condensed, SA, Sub | 0.65 | 0 | 1 | | 1 | |
| 17004 | Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, P.L.L.C., 177 Wash. App. 828 | 302v48 | A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a). A complaint should adequately alert the defendant of the claim's general nature. | A complaint should adequately alert the defendant of the claim's general nature. CR 8. | Should a complaint adequately alert the defendant of the claim's general nature? | Pleading - Memo # 1865 - MMM_56421.docx | ROSS000280439-ROSS-000280440 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | |
| 17005 | Cornelius v. River Ridge Ranch Landowners Ass'n, 202 P.3d 564 | 307A+590.1 | Second, Cornelius argues that, in response to the motion to dismiss he sought to recover the mineral rights. In response to the motion to dismiss he would have been able to comply with the disclosure requirements. | A unilateral resumption of prosecution should not insulate a plaintiff from dismissal for lack of prosecution. | Should a unilateral resumption of prosecution not insulate a plaintiff from dismissal for lack of prosecution? | Pretrial Procedure - Memo # 1145 - C - VP_58037.docx | ROSS000280773-ROSS-000280774 | Condensed, SA | 0.86 | 0 | 1 | | 1 | |
| 17006 | Tiffany v. Brenton State Bank of Jefferson, 508 N.W.2d 87 | 307A499 | Reinstatement of Action. Upon a full of Civil Procedure 215.1 provides two grounds upon which courts may reinstate an action dismissed under the rule: mandatory reinstatement and discretionary reinstatement. | Reinstatement of case dismissed for want of prosecution may be mandatory or discretionary; however, both types of reinstatement require proof that counsel exercised reasonable diligence in preparing and pursuing the case for trial. | Can reinstatement of a case dismissed for want of prosecution be mandatory or discretionary? | Pretrial Procedure - Memo # 1145 - C - KJ_63881.docx | ROSS000281132-ROSS-000281133 | Condensed, SA, Sub | 0.74 | 0 | 1 | | 1 | |
| 17007 | Ralph v. State Dep't of Natural Res., 171 Wash. App. 262 | 13+1 | The nature of a claim for relief is determined by the facts alleged in the complaint and as deduced thereunder, and by the relief requested. | The nature of a claim for relief is determined by the facts alleged in the complaint and as deduced thereunder, and by the relief requested. | How is the nature of a claim for relief determined? | Action - Memo 5 - MS.docx | ROSS000280480-ROSS-000280482 | Condensed, SA | 0.74 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17008 | Osterman v. Baber, 714 N.E.2d 735 | 366=38 | Equitable subrogation is applicable when a "party, not just as a volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable." Loeng v. Ponderosa Sys., Inc. (1985) Ind., 479 N.E.2d 531, 534 (citing National Mut. Ins. Co. v. Maryland Cas. Co. (1963), 136 Ind.App. 35, 41, 187 N.E.2d 575, 578; trans. denied.). At that time, if equity permits, the party who has paid the creditor, or subrogee, becomes entitled to the legal rights and security originally held by the creditor. "Subrogation depends upon the equities and attending facts and circumstances of each case." Four Star Fin. Inv. Co. v. Quaboin (1991) Ind.App. 578 N.E.2d 1192, 1338, trans. denied In a "highly favored doctrine, which is to be given a liberal application." 73 Am.Jur.2d Subrogation " 2 (1974) (citations omitted). However, while ordinary negligence will not bar the application of subrogation, "[t]he remedy will not be allowed where the party is guilty of culpable negligence." Nat. Ins. Co. at 138. Thus, a party who pays the debt of another may be subrogated in place of the other who was not acting [1] as a mere volunteer and (2) with "culpable negligence." | While ordinary negligence will not bar the application of doctrine of equitable subrogation, the remedy will not be allowed where the party is guilty of culpable negligence. | Is equitable subrogation to be given a liberal application? | Subrogation - Memo 879 - C - MK.docx | ROSS-003284715-ROSS-003284717 | Condensed, SA 0.86 | | 0 | 1 | | 1 | 1 |
| 17009 | In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113 | 89=414 | The Class Settlement in this case "by which, as discussed above, the Releasors purport to release "any and all" claims based upon the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." Stolt-Nielsen, 130 S.Ct. at 1774. It follows that where a party initially consents (in this case, by dint of American's FINRA membership) to arbitrate certain types of claims, but later enters into a settlement agreement that releases claims that had been subject to where investors alleged that defendants failed to invest their funds in the initial consent to arbitrate, the claims that have been released by such a settlement are no longer subject to arbitration. | Investors' claims against financial services company and financial consultant for breach of fiduciary duty, breach of contract, fraud, and negligent misrepresentation included claims settling outside settlement agreement and release in prior class action binding investors, which contained common tort for suitability claims outside common course of conduct that was alleged or could have been alleged in class action, and therefore such claims were subject to parties' agreement to arbitrate, where investors alleged that defendants failed to invest their funds in conservative fashion as agreed, that alleged misrepresentation did not fall within class action's common course of conduct, that investors invested into certain managed programs, investors also alleged cover-up conduct outside scope of release, and investors asserted claims involving conduct that occurred after class period ended. | Can claims which have been released through a settlement agreement be subject to arbitration? | Alternative Dispute Resolution - Memo 566 - JK.docx | ROSS-003285613 ROSS-003285614 | Condensed, SA, Sub 0.2 | | 1 | 1 | | 1 | |
| 17010 | KBJ & Assoc. v. Great Lakes Farm Techs., 295 Mich.App. 666 | 308=43(5) | The law in Michigan is that sales agents are entitled to post-termination commission for sales they procured during their time at the former employer. Stabley v. Huston (1972), 40 Mich.App. 349, 355, 198 N.W.2d 1 (1996), the seminal case in Michigan discussing the procuring cause doctrine, our Supreme Court stated it would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent's or broker's services without compensation and imposing upon the principal, regardless of the type of agency involved, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent. In Michigan, as well as most jurisdictions, the agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. In Michigan the rule goes further to provide that the authority of the agent has been canceled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause. (Id. at 89 N.W.2d 479) (Citations omitted) | Sales agents are entitled to post termination commission for sales they procured during their time at the former employer. | Is an agent entitled to post termination commission for sales they procured? | Principal Agent - Memo 53 - KM.docx | ROSS-003286769-ROSS-003286770 | Condensed, SA 0.91 | | 0 | 0 | | 1 | |
| 17011 | Fabick Mills v. Cocker Mach. & Foundry Co., 125 N.J. Super. 251 | 307H=563 | We now deal with questions raised by defendant Cocker's cross-appeal. They concern rulings made prior to the grant of motion for summary judgment in favor of defendant. Defendant contends that the trial court erred in ousting its prior order dismissing plaintiff's complaint for failure to answer interrogatories in that there was noncompliance with R. 4:23:5 (pursuant to notice of motion was dismissed with prejudice) disqualify plaintiff. However, we decline to dismiss at this juncture because there was noncompliance with other rules can be remedied by other measures, dismissal ordinarily will not be required. Sweza v. K. W. Wordham & Co., 88 N.J.Super. 131, 211 A.2d 214 (App.Div.1965). Plaintiff is hereby ordered to pay $50 to this counsel and... | Where noncompliance with rules can be remedied by other measures, will dismissal ordinarily not be required? | Pretrial Procedure - Memo # 730 - C - KBM.docx | ROSS-003284993-ROSS-003284995 | Condensed, SA, Sub 0.84 | | 1 | 1 | | 1 | |

2991

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 17012 | Keefer v. Spillner, 168 Kan. 331 | 1145 | Appellant's theory that there was a surrender of the premises by operation of law, particularly after the judgment bondholders sold the premises on November 12, 1947, might be of greater force if this were an action concerning the attempt by the tenant to recover stipulated rent from the tenant. But that is not this case. The trial court made findings of fact which have been set forth above and disagrees, indicating that appellant voluntarily gave up possession of the rented premises, that appellees were left without a tenant and expended a substantial sum in traveling from their home in Oklahoma to Wichita to find another suitable tenant. When appellant voluntarily vacated the leased premises on October 8 and filed this action on October 7, he had no right as of that time to recover the unearned portion of the rent and he had no cause in advance. At the trial of this action and when action was commenced. At that time it could only be determined whether or not the rented premises would suffer damage by reason of appellant's vacation of the premises and breach of the oral lease. Even though appellees were bound to make an effort to mitigate their damage, it could not be determined on October 7 whether or not they would do so. On October 7, 1947, the damages were uncertain and could not be determined as of the time this action is commenced. If any, is to be determined as of the time this action is commenced. (Ref.) 28 Kan. 830; Robertson v. Howard [cite], 83 Kan. 453, 112 P. 162; Hennessy v. Volkening, 30 Misc. 527, 62 N.Y.S. 925. 13 A.L.R. 622. Appellant's action was commenced when he filed his petition herein on October 7, 1947, and since he had no right of action against the appellees at this date, his action must fail. | Ordinarily, a plaintiff's right to recover, if any, is to be determined as of the time action is commenced. | Is plaintiff's right to recover to be determined as of the time action is commenced? | Action - Memo # 705 - C NE.docx | ROSS-003219898-ROSS-003219899 | Condensed, SA, Sub 0.94 | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 17013 | Lewis v. Pub. Serv. Comm'n, 463 So. 2d 227 | 145+11.9(1) | The PSC has jurisdiction over the rate structure of municipal electric utilities. § 366.04(2)(b), Fla.Stat. (1983). The rate structure of a utility is "the classification system used in justifying different rates." City of Tallahassee v. Mann, 411 So.2d 162, 163 (Fla.1981). The PSC's jurisdiction over the rate structure of municipal utilities does not include jurisdiction over the actual rates charged by a municipal electric utility. Americus v. Jacksonville Electric Authority, 342 So.2d 433 (Fla. 1st DCA 1977). In determining whether the PSC regulates the rate structure, the PSC regulates the rate structure for municipal utilities rather than the rate itself because that statute only authorizes the PSC to direct refunds of unjustified rates charged by public utilities. By its terms, subsection 366.04(2) does not apply to municipal utilities. Subsection 366.04(5) does not authorize the PSC to hear complaints regarding rates charged by a municipal utility. In City of Tallahassee v. Florida Public Service Commission, 433 So.2d 505 (Fla.1983), we approved the PSC's use of the criterion set forth in subsection 366.04(1) in determining whether the city's surcharge was justified. We do not believe that opinion requires us to ignore the limitation of subsection 366.04(2). Our construction of subsection 366.04(2) is that the PSC's jurisdiction over the rate structure of municipal utilities extends not specifically covered by subsection 717.05(2). That portion clearly overrides the portion of the statute. | Public Service Commission's jurisdiction over rate structure does not include jurisdiction over actual rates charged by municipal electric utility. West's F.S.A. § 366.04(2)(b). | Does the Public Service Commission ("PSC") have jurisdiction over the rate structure of municipal utilities? | Public Utilities - Memo 217 - AM.docx | ROSS-003290304-ROSS-003290307 | Condensed, SA 0.87 | 0.87 | 0 | 1 | | 1 | 1 |
| 17014 | United States v. McGregor, 879 F. Supp. 2d 1308 | 63+1(1) | This example begs the question: when is a campaign contribution a bribe? But, a campaign contribution can give money to politicians that they support. If a campaign contribution transforms into a bribe when it is tied to a specific act, or when there is a quid pro quo or a this for that. | A campaign contribution transforms into a bribe when it is tied to a specific act; in other words, when there is a quid pro quo or a this for that. | When is a campaign contribution a bribe? | Bribery - Memo #210 - C.docx | ROSS-003290343-ROSS-003290344 | Condensed, SA | 0.51 | 1 | 1 | | 1 | 1 |
| 17015 | State v. Voyles, 691 S.W.2d 452 | 210+341 | There are several rules which are well established and which control and govern the sufficiency of the information filed in this case. An indictment or information must allege all elements of the crime intended to be charged and if such elements are missing they cannot be supplied by innuendo or implication. State v. Gilmore, 650 S.W.2d 627, 629(1)(Mo. banc 1983); State v. Brooks, 507 S.W.2d 375, 376 (Mo.1974); State v. Atterberry, 659 S.W.2d 339, 341 (Mo.App.1983.) State v. Charity, 619 S.W.2d 366, 367(2)(Mo.App.1981.) Further, if the statute creating the offense uses generic terms in defining the crime, it is necessary that indictments or informations thereunder recite the conduct constituting the crime with sufficient particularity to inform the accused of the specific offense of which he is accused, so as to enable him to prepare his defense or plead his conviction or acquittal as a bar to further prosecution for the same offense. State v. Anderson, 403 S.W.2d 606, 609(1)(Mo.1966); State v. Ferner, 358 S.W.2d 867, 869*770 (Mo.1962). And, it is clear that to the extent that § 70.030 denounces conduct in the disjunctive, the offense. State v. Edward, 655 S.W.2d 596. | An indictment or information must allege all elements of crime intended to be charged and if such elements are missing they cannot be supplied by innuendo or implication. | Does an indictment require an element of the offense alleged? | Sex Offence - Memo 24 SB.docx | ROSS-003291608-ROSS-003291609 | Condensed, SA | 0.86 | 1 | 1 | 0 | 1 | 1 |
| 17016 | Terry Contracting v. State, 51 Misc. 2d 545 | 13141 | The Court respects the age and care with which the arguments of counsel for both parties on this point of law have been presented. The doctrine to be applied is that date when the claim accrued. Black's Law Dictionary, Fourth Edition, at page 37, states "A cause of action "accrues" when a suit may be maintained thereon." In the instant matter, determination of the date upon which a suit may be maintained upon a consideration of the nature and legal implications involved in the practice of submission of a Final Estimate in the performance of, and payment for construction contracts. | Cause of action "accrues" when a suit may be maintained thereon. | Does a cause of action "accrue" when a suit may be maintained thereon? | Action - Memo #131 - C.docx | ROSS-003291910-ROSS-003291911 | Condensed, SA | 0.89 | 1 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17017 | Rochester Transit Corp. v. Pub. Serv. Comm'n, 271 A.D. 406 | 35+12(11) | We are thus brought to the contention that because the Commission had notice of the jury contract and agreement between the company and street railroad did not constitute implied approval of the contract... | We are thus brought to the contention that because the Commission had notice of the jury contract and agreement between the company and street railroad did not constitute implied approval... | Is the Public Service Commission a delegate of the legislature? | Public Utilities - Memo 88 - AM.docx | ROSS-003276663 & ROSS-003276664 | Condensed, S/A | 0.77 | 0 | | 1 | 1 | 1 |
| 17018 | In re Kisner-Jordan, 626 F.3d 239 | 366+27 | Subrogation is the right of one who has paid an obligation which another should have paid to be reimbursed... Texas recognizes three types of subrogation: equitable, contractual, and statutory... | Subrogation is the right of one who has paid an obligation which another should have paid to be reimbursed... | "Are the three types of subrogation contractual, statutory, and equitable?" | Subrogation - Memo 299 - RM C.docx | ROSS-003283459 & ROSS-003283460 | Condensed, S/A | 0.9 | 0 | | 0 | 1 | |
| 17019 | Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818 | 366+1 | In addition to its right to subrogation arising out of the insurance contract, Scottsdale asserts it has a right to equitable subrogation... | In addition to its right to subrogation arising out of the insurance contract, Scottsdale asserts it has a right to equitable subrogation... | Determination of whether a party has a right to equitable subrogation depends on the facts of the case. | Subrogation - Memo 185 - AM.C.docx | ROSS-003276569 & ROSS-003276991 | Condensed, S/A | 0.87 | 0 | | 0 | 1 | |
| 17020 | S. Farm Bureau Cas. Ins. Co. v. Tallant, 362 Ark. 17 | 366+1 | Subrogation is the substitution of one party for another. With Foods, Inc. v. Chicago Title Ins. Co., 341 Ark. 515, 17 S.W.3d 467 (2000)... | Subrogation is the substitution of one party for another. With Foods, Inc. v. Chicago Title Ins. Co., 341 Ark. 515, 17 S.W.3d 467 (2000)... | "Subrogation" is the substitution of one party for another. | Subrogation - Memo 270 - AM.C.docx | ROSS-003277619 ROSS-003277620 | Condensed, S/A | 0.8 | 0 | | 0 | 1 | |
| 17021 | Energy Transco, Ltd. v. M.V. San Sebastian, 348 F. Supp. 2d 186 | 25+1+39 | Resolving by the merits of the parties' dispute, the Court notes that federal policy seeks to promote arbitration as an alternative means of dispute resolution. See USA Indus. v. Staff Holdings SA, 387 F.3d 565, 571 (5th Cir. 2004)... | Resolving by the merits of the parties' dispute, the Court notes that federal policy seeks to promote arbitration as an alternative means of dispute resolution... | In interpreting arbitration agreement, as in any other instance of contract interpretation, parties' intention control, but those intentions are generously construed as to issues of arbitrability. | Alternative Dispute Resolution - Memo 123 - JS.docx | ROSS-003297682 ROSS-003297684 | Condensed, S/A, Sub | 0.75 | 0 | | 1 | 1 | |

2995

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17022 | Fredette v. Town of Southampton, 95 A.D.3d 940 | 21+13.1 | The Supreme Court erred in denying those branches of the motions of Honda and LICM which were for summary judgment dismissing so much of the first and third causes of action insofar as asserted against them as alleged a failure to warn of a particular danger. While the Supreme Court properly determined that the affirmation of Yasuyuke Tsurumi was not notarized and was otherwise inadmissible as evidence (see Zuckerman v. City of New York, 49 N.Y.2d 557, 562, 427 N.Y.S.2d 595, 404 N.E.2d 718; Friends of Animals v. Associated Fur Mfrs., 46 N.Y.2d 1065, 1067, 416 N.Y.S.2d 790, 390 N.E.2d 298) and also properly rejected the affidavit of Honda's expert, John Frackleton, as lacking probative value since it failed to demonstrate that Frackleton was qualified to render an expert opinion (see Pellechia v. Partner Aviation Enters., Inc., 80 A.D.3d 740, 741, 916 N.Y.S.2d 130; de Hernandez v. Lutheran Med. Ctr., 46 A.D.3d 517, 518, 850 N.Y.S.2d 460; Hofmann v. Toys "R" Us, N.Y. Ltd. Partnership, 272 A.D.2d 296, 707 N.Y.S.2d 641), it improvidently exercised its discretion in excluding from consideration the affidavits of Ken Glaser and Kris Kubly on the ground that the affidavits, while notarized, were not accompanied by a certificate of conformity required by CPLR 2309(c). This Court has previously held that the absence of a certificate of conformity for an out-of-state affidavit is not a fatal defect (see Smith v. Allstate Ins. Co., 38 A.D.3d 522, 523, 832 N.Y.S.2d 587), a view shared by the Appellate Division, First and Third Departments as well (see Matapos Tech. Ltd. v. Compania Andina de Comercio Ltda, 68 A.D.3d 672, 891 N.Y.S.2d 394 [1st Dept.]; Sparaco v. Sparaco, 309 A.D.2d 1029, 1031, 765 N.Y.S.2d 683 [3d Dept.]; Nandy v. Albany Med. Ctr. Hosp., 155 A.D.2d 833, 548 N.Y.S.2d 98 [3d Dept.]; see also Connors, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C2309:3). | Absence of certificate of conformity for out-of-state affidavit is not fatal defect. | Is the absence of a certificate of conformity for a foreign or out-of-state affidavit a fatal defect? | Affidavits - Memo 11 - ANG.docx | ROSS-003298695-ROSS-003298696 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 17023 | State Bd. of Ret. v. Bulger, 446 Mass. 169 | 79+1 | The position of clerk-magistrate is one created and defined by statute. See G.L. c. 218, "" 8, 33, 35A, 58; GL. c. 221, "" 62B, 62C. See also Commonwealth v. Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, 439 Mass. 352, 354, 787 N.E.2d 1032 (2003). "A clerk of a court is 'a public officer clothed with official functions of a highly important nature.' " Massachusetts Bar Ass'n v. Cronin, 351 Mass. 321, 325-326, 220 N.E.2d 629 (1966), quoting O'Connell v. Retirement Bd. of Boston, 254 Mass. 404, 406, 150 N.E. 2 (1926). After being sworn into office, see G.L. c. 218, " 12, a clerk "shall have responsibility for the internal administration of his office, including personnel, staff services and record keeping." G.L. c. 218, " 8. See G.L. c. 218, "" 12, 57A. Pursuant to G.L. c. 218, " 33, a clerk may, among other duties, "receive complaints, administer to complainants the oath required thereto, and issue warrants, search warrants and summonses." See G.L. c. 218, " 59. A clerk also administers oaths to witnesses. See Massachusetts Bar Ass'n v. Cronin, supra at 326, 220 N.E.2d 629. Further, the authority of a clerk includes "the power to grant continuances; to hear and rule on uncontested nonevidentiary motions; to hold pretrial conferences; to mediate, hear and decide small claims; to hold preliminary hearings to determine whether there is probable cause to believe that a probationer has violated the terms of his probation; to conduct show cause hearings on certain applications for criminal complaints; to pass on the appropriateness of applications for warrants; and to set bail in certain circumstances. See G.L. c. 221, " 62C; GL. c. 218, "" 21, 22, 33, 35A; GL. c. 276, "" 57, 58." First Justiceof the Bristol Div. of the Juvenile Court Dep't v. Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't, 438 Mass. 387, 398, 780 N.E.2d 908 (2003). | A clerk of a court is a public officer clothed with official functions of a highly important nature. | Is a clerk of a court a public officer? | Clerks of Court - Memo 43 - RK.docx | ROSS-003299471-ROSS-003299472 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 17024 | Board of County Com'rs of Saguache County v. Flickinger, 687 P.2d 975 | 118A+392.1 | Section 43"2"201(1)(c), 17 C.R.S. (1973), states in pertinent part that "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years" are declared to be public highways. This provision codifies the common law method by which the public can obtain title to roadways by adverse use. Mahnke v. Coughenour, 170 Colo. 61, 67, 458 P.2d 747, 750 (1969); see People ex rel. Mayer v. San Luis Valley Land & Cattle Co., 90 Colo. 23, 5 P.2d 873 (1931). A party seeking to establish a road across private property as a public highway must demonstrate the following: (1) members of the public must have used the road under a claim of right and in a manner adverse to the landowner's property interest; (2) the public must have used the road without interruption for the statutory period of twenty years; and (3) the landowner must have had actual or implied knowledge of the public's use of the road and made no objection to such use. See Silver Plume v. Hudson, 151 Colo. 394, 400, 380 P.2d 59, 62 (1963); People ex rel. Mayer, 90 Colo. at 26"27, 5 P.2d at 874"75; Board of County Commissioners v. Ogburn, 38 Colo.App. 212, 214, 554 P.2d 700, 701 (1976). A party relying on section 43"2"201(1)(c) is aided by a presumption that "the character of the use is adverse where such use is shown to have been made for a prescribed period of time." Shively v. Board of County Commissioners, 159 Colo. 353, 357, 411 P.2d 782, 784 (1966); accord, e.g., Mahnke, 170 Colo. 61, 458 P.2d 747; Martino v. Fleenor,148 Colo. 136, 365 P.2d 247 (1961). The evidence, when viewed in light of these guidelines, provides sufficient support for the district court's determination that the road passing through the Flickinger property was a public highway. | To extent that district court erred in its finding that road passed through private property a distance of approximately three quarters of a mile to one mile, instead of slightly more than six tenths of a mile as shown in centerline survey, such error was clearly harmless in action seeking judicial declaration that road was a public highway acquired through adverse use, in that such error did not affect district court's conclusion that road had become public highway through adverse use by public for at least 20 consecutive years. C.R.S. 43-2-201(1)(c). | When can roads become public highways? | Highways - Memo 6 - RK.docx | ROSS-003299562-ROSS-003299563 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Question Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17025 | Osborne v. Jauregui, 252 S.W.3d 70 | 366+1 | Absent a contractual provision, subrogation is based on equitable principles and we would be inequitable to allow the judgment to stand. "Equora v. Scott & Amp; Health Plan, 597 S.W.2d 548, 552 (Tky App. South 1995), writ denied). If either an insured or an insurer "must to some extent be unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assure." Ortiz v. Great S. Fire & Cas. Ins. Co., 597 S.W.2d 342, 344 (Tex.1980) (quoting Garrity v. Rural Mut. Ins. Co., 77 Wis.2d 537, 253 N.W.2d 512, 514 (1977)). An insurer is not entitled to equitable subrogation until the insured is "made whole" for his loss. Esparza, 905 S.W.2d at 552, Ortiz, 597 S.W.2d at 342. | Absent a contractual provision, subrogation is based on equitable principles. | | Is subrogation based on equitable principles absent a contractual provision? | Subrogation - Memo 538 - AMC.docx | ROS5:00320966318 ROS5:00329635 | Condensed, SA | 0.9 | | | | 1 | |
| 17026 | Padov v. William Penn Insurance Co., 264 Ala. 62 | 366+15 | In Cardin's view the N.... Security N. First National Bank of Boaz, 337 Ala. 632, 117 So. 216, the rule was mentioned that an intentional relinquishment of a known right amounts to a waiver of subrogation rights. | Intentional relinquishment of a known right amounts to a waiver of subrogation rights. | | Does intentional relinquishment of a known right amount to a waiver of subrogation rights? | Subrogation - Memo 1292 - C - SJ.docx | ROS5:00320226 ROS5-00330207 | Condensed, SA | 0.57 | | | | 1 | |
| 17027 | N. Star Water Logic v. Ecosolve, 486 S.W.3d 102 | 307A+501 | Texas Rule of Civil Procedure 162 provides that a plaintiff may nonsuit at any time before introducing all of his evidence other than rebuttal evidence. Tex.R. Civ. P. 162. [T]he plaintiff's right to take a nonsuit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief." BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1st proceeding) (emphasis in original). A nonsuit terminates the case from the moment the motion is filed, but does not affect any pending claim for affirmative relief or motion for attorney's fees or sanctions. Epps v. Fowler, 351 S.W.3d 862, 868 (Tex.2011). | The plaintiff's right to take a nonsuit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief. Tex. R. Civ. P. 162 | | Is the plaintiff's right to take a nonsuit absolute? | Pretrial Procedure - Memo 8 1321 - C - KA.docx | | SA, Sub | 0.75 | | | | | |
| 17028 | Hedwas v. J.P. Morgan Chase Bank, Nat. As's, 921 F. Supp. 2d 654 | 8.30T+282 | In Virginia, notes are negotiable instruments that are freely transferable without impairment of the right to subsequent holders. See, e.g., Daugherty v. Diment, 238 Va. 520, 525, 385 S.E.2d 572 (1989). Virginia law is clear that the negotiability of a note and deed securing the debt of trust or mortgage carries with it that security. Williams v. Gifford, 139 Va. 779, 784, 124 S.E. 401 (1924) ("[I]n Virginia, as in common law securities, the law that from lands deeds of trust and mortgages are regarded in equity as mere securities for the debt and wherever the debt is assigned the deed of trust or mortgage is assigned or transferred which it. Historically been the case in Virginia and, consequently, the transfer of a note carries with it the security interest provided for in the deed of trust. See Va. Housing Dev. Auth. v. Fox Run, 255 Va. 356, 364, 497 S.E.2d 747 (1998); see also Stimpson v. Bishop, 82 Va. 190, 209 101 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). | Under Virginia law, notes are negotiable instruments that are freely transferable without impairment of the rights to subsequent holders. | | Are notes negotiable instruments? | Bills and Notes - Memo 916 - JK_80721.docx | ROS5:00320279 ROS5-00330280 | Condensed, SA, Sub 0.87 | | | | | 1 | |
| 17029 | Advanta Int'l Ins. Co. v. Ibbit, 438 Mich. 512 | 366+1 | Equitable subrogation has been described as a "legal fiction" that permits one party to stand in the shoes of another. The doctrine is eminently applicable under the facts of this case. A rule of law expanding the parameters of the attorney-client relationship in this defense counsel insurer context might well detract from the attorney's duty of loyalty to the client as well as potentially conflict-ridden to completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship. Moreover, defense counsel's immunity from suit by the insurer would place the loss for the attorney's misconduct on the insurer. The only wrinkle produced by an analytical allowing loss for liability would be the mal-practicing attorney. Equity cries out for application under such circumstances. | "Equitable subrogation" is a legal fiction that permits one party to stand in the shoes of another. | | Is equitable subrogation a legal fiction? | Subrogation - Memo 242 - VE.docx | ROS5:00320479 ROS5-00316700 | Condensed, SA | 0.88 | | | | | 1 |
| 17030 | Washington Mut. Bank v. Chiapetta, 584 F. Supp. 2d 961 | 366+1 | Walsh's fallback argument is that Infinity and IDDOT will be unjustly enriched. However, Idaho law does not appear to make a distinction between unjust enrichment and equitable subrogation. Under unjust enrichment under state law is part of the doctrine of equitable subrogation; not a separate doctrine. The doctrine allows an outside party to step into the lender's shoes when paying off a debt of another, preventing parties from receiving that to which they are not entitled. Williams v. Erv Inc. Group (1991), 86 Ohio App.3d 656, 624 N.E.2d 170, 772 ("[I]t is our opinion that the equitable subrogation depends upon the facts and circumstances of each case, and that the claim against an outside debt involved under Ohio law..." 63 Ohio St.3d 602, 35 O.O.3d at 137 134, 99 N.E.2d at 137 12118. State Sav. Bank v. Gunther, 127 Ohio App.3d 338, 346, 713 N.E.2d 7, 13 (Ohio Ct.App. 1984). | Unjust enrichment under Ohio law is part of the doctrine of equitable subrogation, not a separate doctrine. | | Is unjust enrichment under Ohio law a part of the doctrine of equitable subrogation? | Subrogation - Memo 395 - RM-C.docx | ROS5:00320323 ROS5-00315626 | Condensed, SA, Sub 0.87 | | | | | 1 | |
| 17031 | Bel-Air & Binney v. City of Knox, 290 Wash. App. 364 | 366+1 | Subrogation is "an equitable remedy..." and it. "founded in the facts and circumstances of each particular case." Hevener Park, 177 Wash. Wash at 343, 341 So.4 24 472 (quoting, Restatement (Third) of Property Mortgages § 7.6 cmt. a), Credit Bureau Corp v. Roe, 68 Wash.2d 388, 186, 383 P.2d 864 (1963). The doctrine allows an outside party to step into the lender's shoes and mitigate with an equitable assignment of its claim. The party paying off is entitled to the doctrine of subrogation only to the extent needed to prevent unjust enrichment to the party or the debtor; who could otherwise be unjustly enriched. The rule is that when a third party has been subsidized by another to whom the debtor owes no obligation by reason of assignment of rights or other agreement. Id. | Subrogation is an equitable remedy, is founded in the facts and circumstances of each particular case. | | Is equitable subrogation founded in the facts and circumstances of each particular case? | Subrogation - Memo 142 - VF.docx | ROS5:00325731 ROS5-00331792 | Condensed, SA | 0.91 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17032 | Raines v. Com., 379 S.W.3d 152 | 207+5 | Thus, the question becomes whether the statutory inclusion of certain relationships without listing specific ages is significant as to the General Assembly's purpose in enacting the statute. First, we observe that all the relationships specifically delineated in the statute are without age constraints. Certainly, Raines is not arguing that sexual intercourse between those who have blood relationships of either the whole or half blood or those with a parent and child relationship through adoption would be noncriminal even if both parties were adults. Since, the plain meaning of the statute does not include the victim's age as an element of the crime of incest; our interpretation of the statute is that the primary element for incest is the relationship of the parties. Undoubtedly, the legislative intent is to prohibit sexual intercourse between persons with such relationships, including stepparents and stepchildren. | Age of victim was not element of crime of incest, and statute was properly applied to defendant who engaged in sexual relations with his adult stepdaughter; primary element for incest was relationship of the parties, "relationship of stepparent and stepchild" was specifically set forth in incest statute as prohibited relationship, and no relationship listed in statute had an age constraint. KRS 530.020. | Is victim's age as an element of the crime of incest? | Incest - Memo 35 - RM.docx | ROSS-003329309-ROSS-003329310 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 17033 | Mein v. U. S. Car Testing Co., 115 Ohio App. 145 | 106+13.5(14) | In State ex rel. Duffy, Atty. Genl. v. Western Auto Supply Co., 134 Ohio St. 163, 16 N.E.2d 256, 119 A.L.R. 1236, the court said:3.A warranty promises indemnity against defects in an article sold, while insurance indemnifies against loss or damage resulting from perils outside of and unrelated to defects in the article itself." | A so-called "maintenance contract" whereby defendant agreed to maintain listed parts in good repair, "including both labor and parts for a period of one year", indemnifying against loss or damage resulting from perils outside and unrelated to defects in any parts sold and restricting liability by excluding certain named perils was a contract of "insurance" so that Kansas court had jurisdiction over defendant under Kansas statute providing for obtaining jurisdiction over and service upon those engaging in insurance business in state. G.S.Kan.1949, 40-1102(m). | What is the difference between a warranty and insurance? | 000194.docx | LEGALEASE-00115604-LEGALEASE-00115605 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 17034 | Flowers v. Bedford Twp., 304 Mich. App. 661 | 315+147 | A life estate gives the holder the right to possess, control, and enjoy the property during the holder's lifetime. Wengel v. Wengel, 270 Mich.App. 86, 99, 714 N.W.2d 371 (2006). Accordingly, we conclude that the holder of a life estate has an interest in the property and is considered an "owner." Therefore, petitioner is entitled to the PRE because she is a partial owner, along with Richard's children, under MCL 211.7dd(a)(ii ). Further, petitioner is also an owner under MCL 211.7dd(a)(iii ) because she "owns property as a result of being a beneficiary of a will or trust or as a result of intestate succession." The tax tribunal erred by applying the law or adopted a wrong principle when it determined petitioner was not an owner under MCL 211.7dd(a). Mich. Bell, 445 Mich. at 476, 518 N.W.2d 808. | A "life estate" gives the holder the right to possess, control, and enjoy the property during the holder's lifetime. | What interest vests with the holder of a life estate? | Life Estates - Memo 5 - RM.docx | ROSS-003296625-ROSS-003296626 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 17035 | Life Ins. Co. of Georgia v. Smith, 719 So. 2d 797 | 157+129(5) | Forgery is a species of fraud in the factum. First City, Texas"Beaumont, N.A. v. Treece, 848 F.Supp. 727, 738 (E.D.Tex.1994); Bennion Ins. Co. v. 1st OK Corp., 571 P.2d 1339, 1341 (Utah 1977); Commonwealth Land Title Ins. Co. v. Nelson, 889 S.W.2d 312, 320"21 (Tex.App.1994); Akins v. Vermast, 150 Or.App. 236, 945 P.2d 640 (1997). Testimony regarding the Gulf Coast Therapy forgeries clearly was material as evidence of a pattern practiced by Winsett to inflate his sales account through forgery and as closely related examples of fraud in the factum. Forgery and concealment of critical portions of documents are species of fraud in the factum that form the elements in common among the transactions necessary to render the evidence admissible. The Stewart forgery was fraud of this same genre. | Evidence of forgeries by life insurance agent to obtain funds from beneficiary for investment and to inflate sales account were relevant as other wrongs or acts and admissible in suit by employees alleging fraud in sale of life insurance by representing it as cafeteria retirement program or savings plan, even though the alleged other wrongs occurred after the alleged fraud; insurer defended on ground that written material disclosed that employees were purchasing insurance, employees claimed forgery of their signatures on these documents, and forgery and concealment of critical portions of documents were common elements in the transactions. Rules of Evid., Rule 404(b). | Is forgery a species of fraud? | Forgery - Memo 13 - RM.docx | LEGALEASE-00000489-LEGALEASE-00000490 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 17036 | Guthrie v. Nat'l Advert. Co., 556 N.E.2d 337 | 277+2 | Notice is actual where the purchaser is aware of the adverse claim or title or has such information as would lead to knowledge. White v. Foster (1881), 77 Ind. 65. Notice has been held by some courts to be actual when it has been directly and personally given to the person to be notified. However, it is stated to be the general rule that actual notice embraces all degrees and grades of evidence from the most directive and positive proof to the slightest circumstances from which a court or jury would be justified in inferring notice. Willard v. Bringolf, 103 Ind.App. at 29, 5 N.E.2d 315. A purchaser who has notice of facts making it incumbent upon him to make due inquiry is bound by all the knowledge which a reasonable inquiry would have imparted and actual notice may be implied therefrom. Rogers, 437 N.E.2d at 1027; Willard, 103 Ind.App. at 30, 5 N.E.2d 315. See also Smith v. Schweigerer (1891), 129 Ind. 363, 365, 28 N.E. 696. Notice is an ultimate fact. Rogers, 437 N.E.2d at 1027. | Notice is actual where the purchaser is aware of the adverse claim or title or has such information as would lead to knowledge. | When can a notice be inferred as an actual notice? | 10829.docx | LEGALEASE-00089307-LEGALEASE-00089308 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 17037 | Minor v. Minor, 2008 WL 582503 | 20+116(7) | North Carolina recognizes claims for adverse possession of an identified portion of property owned by another. Wallin, 232 N.C. at 373, 61 S.E.2d at 83 ("One may assert title to land embraced within the bounds of another's deed...."). A party seeking to prove adverse possession of a portion of a parcel has the burden of pleading and proving all elements of the claim, including that the possession was under "known and visible lines and boundaries" and that "[the] claim is limited to the area actually possessed." Id.Accordingly, if defendant's counterclaim had specifically identified the portion of the 23.72 acre tract that she was claiming, and if she had presented evidence at trial to support all the elements of the claim, the trial court would have been obligated to give a jury instruction permitting the jury to find defendant adversely possessed that portion. | Evidence on counterclaim to quiet title by way of adverse possession, in action for summary ejectment, was insufficient to warrant giving counterclaimant's requested jury instruction on adverse possession of an identified portion of property; counterclaimant did not plead adverse possession of specified portion of tract in her counterclaim and presented no evidence at trial that she adversely possessed only identified portion thereof, only known and visible line or boundary mentioned in claimant's evidence did not correspond to portion of property claimed, and counterclaimant claimed adverse possession of entire parcel at every opportunity during trial. West's N.C.G.S.A. S 1-40. | Do the Courts recognize claims for adverse possession of an identified portion of property owned by another? | 003868.docx | LEGALEASE-00115864-LEGALEASE-00115865 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,070 |
| 17038 | Wohlrab v. Wadsworth, 100 Conn. App. 29 | 21+17 | In the present case, after the defendant submitted his affidavit, it was incumbent on the plaintiff to dispute the facts contained therein. See Amore v. Frankel, 228 Conn. 358, 368-70, 636 A.2d 786 (1994). The plaintiff, however, merely offered his argument that the burden of proof was on the defendant… they did not dispute the facts set forth in the defendant's affidavit. As a result, the facts detailing the defendant's payments in Connecticut, as set forth in his affidavit, were undisputed. "[A]ffidavits are insufficient to determine the facts unless… they disclose that the genuine issue as to a material fact exists. Shea v. Chase Manhattan Bank, N.A. (In re Chase Manhattan Bank, N.A.), 64 Conn. App. 609, 621, 781 A.2d 214 (2001)." [Emphasis added.] (Internal quotation marks omitted.) Larsen v. Jordan, 222 Conn. App. 330, 642, 599 A.2d 1087 (1991). See also Mantmarbre v. Brittany Farms Health Center, 84 Conn. App. 486, 489 n. 5, 854 A.2d 442 (2004). | Affidavits are insufficient to determine the facts unless they disclose that no genuine issue as to a material fact exists. | Are affidavits insufficient to determine facts? | 00387.docx | USA-LEASE-00115915-USA-LEASE-00115916 | Condensed, SA | 0.86 | 0 | 1 | 1 | 1 | |
| 17039 | Costanzo v. Costanzo, 248 N.J. Super. 116 | 18+4 | Any "specific thing," debt or chose in action may be the subject of an assignment either now or at a later time. An interest that is neither in existence nor can be identified cannot be assigned… (3) In order to effect a legal assignment there must be evidence of an intent to assign or transfer the whole or part of some specific thing, debt or chose in action and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified. (13 Williston, Contracts, 3rd ed. 1957), 1404 (quoting from the case of Russell v. Texas Consolidated Oils, 120 F.2d 531…) | Any "specific thing," debt or chose in action may be the subject of assignment; but that which is not in existence or cannot be identified cannot be assigned. | Can any specific thing be assigned to effectuate a legal assignment? | Assignments - Memo 17 AAA.docx | USA-LEASE-00000899-USA-LEASE-00000900 | SA, Sub | 0.74 | 0 | 1 | 1 | 1 | |
| 17040 | McIntosh v. State, 23 Ga. App. 513 | 181+10 | In People v. coverage, 152 Fl. 332, 96 N. E. 857, Ann. Cas. 1913D, 219, it was held: "Where the forging of a signature of a fictitious person is relied on, the state must correspond with the amount expressed in written words; and is not ambiguous or uncertain is not forgery; as the written words, under section 17 of the Negotiable Instruments Act of 1907, control the amount of the check, and the alteration does not change the legal effect of the instrument." | The figures on a check do not control the words in its body denoting the sum called for in determining the legality and genuine nature of instrument, so that their alteration by raising the figures is not a basis for a prosecution for forgery. | Does alteration of the figures on a negotiable instrument constitute forgery? | 00393.docx | USA-LEASE-00115933-USA-LEASE-00115934 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | |
| 17041 | Tryon v. Masten Lumber & Supply, 44 Md. App. 391 | 277+12 | The judge believed that the notice sent to the Tyron "certainly gives them notice of the intention to file a lien for labor, materials furnished for the construction of their home on this particular lot in Sharon's Tract." We agree. Any fair reading of the letter from Masten's journal to the appellants readily reveals that the notice contains some of the information relative to the lien.[3] The only deficiency argued is that it was not "verified." The all-important does require a mathematical precision. By its very terms, what is needed is substantial compliance. While the verification is missing, the Tyron were not in any way misled or deceived. The fact is that the notice clearly expressed in any way misled or deceived. The notice was clearly expressed in any way misled them on notice that were being served with the petition, thus indicating that they knew full well what the notice contained and were so primed to have a defense. All that seemingly remained to be done was for the petition, that would trigger the litigation, to be filed in order for issues to be joined. Actual knowledge may support formal statutory notification. Clark v. Wohlman, 243 Md. 597, 600, 221 A.2d 243-687, 688 (1966). Accord, Rollo v. Clark, 269 Md. 14, 18, 304 A.2d 231, 233 (1973). See also Mathewson v. Bureau of Natural Resources, 64 Md. App. 224, 407 A.2d 802 (1979). | Actual knowledge may support formal statutory notification. | Will actual knowledge support a formal statutory notification? | Notice - Memo 23 AAQ_02250.docx | ROSS-003235250-ROSS-003235251 | Condensed, SA | 0.95 | 1 | 0 | 1 | 1 | |
| 17042 | Kershaw v. Burns, 91 S.C. 129 | 141+162 | We proceed to consider whether there was error in not adjudging that the plaintiff had a right of way appurtenant. The distinction between rights of way in gross and appurtenant is thus pointed out, in the case of Whaley v. Stevens, 21 S.C. 221: "A right of way may be the grant, or it may be appurtenant or appurtenant to land, and the distinction between the two kinds of right are very essential; the first, as its name imports, is a mere personal privilege, which dies with the person who may have acquired it, while in the latter it inheres in the land is it appurtenant, is assignable, and passes with the conveyance of the land." An essential feature of a right of way appurtenant is that it must have one of its termini on the land to which it is claimed to be appurtenant. There was a second appeal in said case (37 S.C. 549, 4 S. E. 145), and the court, in construing the opinion in the former appeal, said: "The court said in the former appeal, through Mr. Justice McIver, delivering the opinion of the court, that a way in gross is a personal right, which cannot be assigned or transferred. Hence we are of opinion of the law… in order to constitute a right of way appurtenant, there must be a dominant as well as a servient estate, to which the way is appurtenant; for we have held, in several cases, that the principle contended for, is a follows: "A right of way which has neither of its termini on the land of the grantee, and is not appurtenant, but is mere right of way in gross, which is personal to the grantee, and cannot be by him… | "A right of way, in gross, incapable of being transferred?" | Assignments - Memo 38 IS.docx | USA-LEASE-00001183-USA-LEASE-00001184 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | |

Appendix D

2997

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17043 | Chapman v. Chapman, 526 So.2d 131 | 315+155 | The duty owed by life tenants to remaindermen is comparable to that of a trustee or quasi-trustee, because the life tenant cannot injure or dispose of the property to the detriment of the rights of the remaindermen. Wagner v. Moseley, 104 So.2d 49 (Fla. 2d DCA 1958). Ordinarily remainders may not be permanently diminish or alter the value of the remaindermen's future estate, a limitation which places on ordinary life tenant "the responsibility for a waste of whatever character." Sauls v. Crosby, 258 So.2d 326, 327 (Fla. 1st DCA 1972). It is well settled that life tenants are bound to pay property taxes during the life estate. Fla. Stat. Ann. § 196.295. The remaindermen has a reasonable and must ensure that such taxes are paid. [cites] The remaindermen has a right to protect real property and maintain an action for any injury to inheritance. The trial court was correct in holding that waste had been committed to the property in the form of unpaid real property taxes for the years 1984, 1985, and 1986. | Appropriate remedy for life tenants' failure to pay taxes, which resulted in waste, was not an acceleration of rental remaindermen's interest in the real property but, rather, appointment of receiver to collect rents and remaindermen be liable for damages? | 00243.docx | LEGALEASE-00115909-LEGALEASE-00115911 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | 1 |
| 17044 | AT & T Techs. v. Commc'ns Workers of Am., 475 U.S. 643 | 25T+112 | The first principle gleaned from the Trilogy is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Warrior & Gulf, supra, 363 U.S., at 582, 80 S.Ct., at 1353; [cites]. This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration. Gateway Coal Co. v. Mine Workers, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). | Arbitration is a matter of contract and party cannot be required to submit to arbitration any dispute which he has not agreed to submit. | 00372.docx | LEGALEASE-00116077-LEGALEASE-00116079 | Condensed, SA | 0.78 | 0 | 1 | | 1 | |
| 17045 | Bazemore v. Jefferson Capital Sys., 827 F.3d 1325 | 25T+112 | If there is an arbitration agreement governing this dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. " 1 et seq., which "embodies a liberal federal policy favoring arbitration agreements." Coley v. Gulfstream Aerospace Corp., 438 F.3d 1309, 1387 (11th Cir. 2005) (quotation marks omitted). Indeed, we have recognized that the FAA "creates a 'presumption of arbitrability' such that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Dasher v. RBC Bank (USA), 745 F.3d 1111, 1115-16 (11th Cir. 2014) (quotation marks omitted); see also, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Before the court can compel the parties to settle their dispute in an arbitral forum, "[a]s a preliminary matter, we must first decide whether the parties agreed to arbitrate the dispute." Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). | Absent agreement to arbitrate dispute, court cannot compel parties to settle their dispute in arbitral forum, 9 U.S.C. A. 1 et seq. | 00372.docx | LEGALEASE-00116089-LEGALEASE-00116091 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | |
| 17046 | United States Aviation Underwriters v. Pilatus Bus. Aircraft, LTD., 582 F.3d 1131 | 34+27.1 | The Supreme Court first addressed the question of admiralty jurisdiction over aviation accidents in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S. Ct. 493, 34 L. Ed. 2d 454 (1972). In Executive Jet, an airplane took off from an airport in Cleveland, Ohio, bound to pick up passengers in Portland, Maine for a charter flight. Right in New York, N.Y. at 250. Shortly after takeoff, the plane's engines ingested seagulls, causing a loss of total engine power. Id. The plane crash-landed and came to a stop on the surface of Lake Erie. Id. The question before the Court was whether admiralty jurisdiction existed in this case because of the negative. Id. at 272-74. It began by noting that admiralty jurisdiction traditionally depended upon whether the wrong occurred or navigable waters. Id. at 253. The Executive Jet Court rejected the strict locality test for aviation torts because under that test the jurisdictional result would turn on the "wholly fortuitous" question of whether the plane happened to be flying over water at the time of the accident. Id. at 266-68. As a consequence, the Court concluded that in order to apply admiralty jurisdiction to aviation torts unless the harm occurs on or over navigable waters and the "wrong bear[s] a significant relationship to traditional maritime activity" the alleged wrong must be to a traditional maritime activity, when a plane is land-based and [cites]. 268. The Court went on to conclude there is no relationship to a traditional maritime activity where a plane is land-based and the plane is [cites]. 268. The Court left open the question whether aviation torts could ever sound in admiralty. Id. at 273. | Can admiralty jurisdiction be invoked for aviation torts? | 00049.docx | LEGALEASE-00116118-LEGALEASE-00116119 | Condensed, SA, Sub | 0.64 | | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17047 | Kevin Messina v. John A. White (In re Kevin Messina), 574 F.3d 119 | 354+209(3) | The phrase "privity or knowledge" is a "term of art meaning complicity in the fault that caused the accident."Blackler v. F. Jacobus Transportation Co., 243 F.2d 733, 735 (2d Cir. 1957) ; see, e.g., Tug Ocean Prince, Inc. v. United States, 584 F.2d 1151, 1159 (2d Cir. 1978) ("Tug Ocean Prince"), cert. denied, 440 U.S. 959, 99 S. Ct. 1499, 59 L. Ed. 2d 772 (1979); The 84-H, 296 F. 427, 431 (2d Cir. 1923), cert. denied, 264 U.S. 596, 44 S. Ct. 454, 68 L. Ed. 867 (1924); see also Potomac Transport, Inc. v. Ogden Marine, Inc., 909 F.2d 42, 46 (2d Cir. 1990) ("Privity and knowledge under the statute have been construed to mean that a shipowner knew or should have known that a certain condition existed." (internal quotation marks omitted)). "In the case of individual owners, it has been commonly held or declared that privity as used in the statute means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury." Coryell v. Phipps, 317 U.S. 406, 411, 63 S. Ct. 291, 87 L. Ed. 363 (1943) (citing The 84-H, 296 F. 427). "Where the owner's negligent act caused the alleged injury . . . all of the requirements of 'privity' are satisfied." Tug Ocean Prince, 584 F.2d at 1159 (other internal quotation marks omitted). The effect of the Act and its predecessors is "to enable the vessel owner to limit his risk to his interest in the ship in respect to all claims arising out of the conduct of the master and crew . . ., while leaving him liable for his own fault [ and] neglect." The 84-H, 296 F. at 431; see, e.g., In re City of New York, 522 F.3d 279, 283 (2d Cir. 2008) ("Instead of being vicariously liable for the full extent of any injuries caused by the negligence of the captain or crew employed to operate the ship, the owner's liability is limited . . . unless the owner himself had 'privity or knowledge' of the negligent acts."). | In considering a vessel owner's petition for exoneration or limitation of liability under Limitation of Liability Act, the district court will normally be required to conduct a two-step inquiry: first, it must determine whether the accident was caused by conduct that is actionable, for if there was no fault or negligence for the shipowner to be privy to or have knowledge of within meaning of the Act, there is no liability to be limited and the owner would then be entitled to exoneration; if the claimant carries his burden of proving the accident was caused by actionable conduct, the owner then has the burden of proving that the actionable conduct or condition was without his privity or knowledge. 46 U.S.C.A. S 30505(a, b). | "In maritime law, does privity and knowledge mean that a shipowner knew or should have known that a certain condition existed?" | 004051.docx | LEGALEASE-00116127-LEGALEASE-00116129 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 17048 | Canton Port Servs. v. M/V Snow Bird, 690 F. Supp. 2d 405 | 252+23 | The FMLA provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." 46 U.S.C. " 31342. The statute defines "necessaries" as "repairs, supplies, towage and the use of a dry dock or marine railway,"46 U.S.C. " 31301(4), but this definition is not preclusive, and "what is a 'necessary' is to be determined relative to the requirements of the ship." Equilease Corp. v. M/V Sampson, 793 F.2d 598, 603 (5th Cir. 1986); see also Newport News Shipbuilding & Dry Dock Co. v. S.S. Independence, 872 F. Supp. 262, 265 (E.D. Va. 1994) (stating that the term "has been interpreted broadly to include any goods and services necessary for a vessel's continued operation.") "Several courts have imposed maritime liens for docking, wharfage, or storage fees, particularly when some repairs were being performed on the boats as well." American Eastern Dev. Corp. v. Everglades Marina, Inc., 608 F.2d 123, 125 (5th Cir. 1979). Mr. Ramkissoon has not argued that dockage is not a "necessary" in this case, but rather that the fee is excessive and amounts to an unenforceable penalty. He also argues that the failure to properly invoice the fee means no enforceable lien was created. | Docking services provided to vessel at its owner's order were "necessaries" under Federal Maritime Liens Act (FMLA), and thus port services company automatically acquired maritime lien on vessel from time it began providing docking services, regardless of whether owner received invoices from company or whether he offered to settle his debt, where owner never forwarded check or otherwise paid company any fees, and never posted any security following vessel's arrest. 46 U.S.C.A. SS 31301(4), 31342. | How can one establish a maritime lien on a vessel? | 06309.docx | LEGALEASE-00078369-LEGALEASE-00078371 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 17049 | In re Holt, 28 A.D.2d 201 | 38+18 | While the proceeds assigned were to be paid in the future they could not be considered as those "future rights' which have defeated holders of an equitable assignment as against a judgment creditor. The "future rights' which give rise to concern in this area are those Rights which arise in the future; or, more aptly stated in its most precise definition, a Right which the assignor does not have at the time of the assignment but which he expects to have under some arrangements he is About to enter. Neither the assignment to Saugerties nor that to First Trust concerned itself with any such rights in the future, but each did concern itself with a right (to proceeds) which he already possessed and a right which in that sense had already matured. A right to future performance under an obligation existing at the time of assignment is an existing right as opposed to a future right. Indeed, the court in Grossman v. Schlosser, 19 A.D.2d 893, 244 N.Y.S.2d 749, in discussing the landmark case of Williams v. Ingersoll, 89 N.Y. 508, acknowledged the assignability of "proceeds' and went on to say, "Nevertheless, the court held that the assignment of the proceeds of such a cause of action, prior to its settlement or adjudication, was valid and effectual as an equitable assignment against the assignor And his attaching creditor, and that such assignment was not against public policy" (emphasis supplied). | A right to future performance under an obligation existing at time of assignment is an "existing right" as opposed to a "future right". | Can a right to future performance of an obligation be assigned? | Assignments - Memo 42 JS.docx | ROSS-003284939-ROSS-003284940 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 17050 | Hoye v. Like, 958 S.W.2d 234 | 50+1 | Like contends that Barclay v. Burge, 245 S.W.2d 1021 (Tex.Civ.App."Beaumont 1952, no writ), is controlling. Although Barclay may express the proper rule of accountability of a bailee, because the existence of a bailment contract was not questioned in Barclay, our analysis will follow the rules announced in Rust regarding the formation of a bailment contract. Under Rust, even though a bailment contract may arise by implication, it cannot arise from nothing, nor from a mere conjecture or possibility. Rust, 228 S.W.2d at 936. | Even though bailment contract may arise by implication, it cannot arise from nothing, nor from mere conjecture or possibility. | When does a bailment arise? | 07378.docx | LEGALEASE-00079079-LEGALEASE-00079080 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 17051 | Pringle v. Builders Transp., 298 S.C. 494 | 413+1165 | Respondent argues the appeals provision of the Workers' Compensation Act is controlling rather than the APA and therefore his original notice of appeal was sufficient. This is incorrect. Where provisions of the APA and the Workers' Compensation Act conflict, the APA controls. Williams v. South Carolina Department of Wildlife, 295 S.C. 98, 367 S.E.2d 418 (1987). | Where provisions of Administrative Procedures Act and Workers' Compensation Act conflict, APA controls. Code 1976, SS 1-23-310 et seq., 42-1-10 et seq., 42-17-60. | "When there is a conflict between the Administrative Procedure Act and the Workers' Compensation Act, which shall prevail over the other?" | 004039.docx | LEGALEASE-00116360-LEGALEASE-00116361 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 17952 | Consumers Power Co. v. Pub. Serv. Comm'n, 189 Mich. App. 151 | 15A+1104 | We begin our analysis by noting that the PSC possesses no "common-law" powers; it is instead a creature of the Legislature, and all of its authority must be found in statutory enactments. Generally, a statute which grants power to an administrative agency is to be strictly construed. Administrative authority must be affirmatively or plainly granted, for doubtful power does not exist. Miller Bros. v. Public Service Comm., 180 Mich.App. 227, 232, 446 N.W.2d 640 (1989). | Generally, statute which grants power to administrative agency is to be strictly construed; administrative authority must be affirmatively or plainly granted, for doubtful power does not exist. | Is strict construction applied to statutes that grant power to administrative agencies? | 00285.docx | LEGALEASE-00116316 LEGALEASE-00116319 | Condensed, SA | 0.58 | 0 | 1 | | 1 | |
| 17953 | State v. Greathouse, 113 Wash. App. 889 | 146+1 | By its statutory definition, "exerts unauthorized control" means that one who holds possession, custody, or control of property of another by virtue of a position of trust (such as that of attorney, agent or employee violates that trust and uses the property to his or her own use or the use of any person other than the true owner or person entitled thereto. See RCW 9A.56.010(19)(b); State v. Joy, 121 Wash.2d 333, 851 P.2d 654, 851 P.2d 1195 (1993)(relied held in taking of embezzlement involves a violation of trust and abuse and report proof of intent to permanently deprive the owner of the property taken). The information in this case adequately informed Greathouse that he was required to defend against the charge of theft as an unauthorized control over another's personal property by deception. The State was only required to allege that the defendant appropriated against multiple counts of embezzlement, not multiple counts of theft by taking. Theft under 9A.56.010(19)(a), by contrast, occurs when a defendant obtains "[t]o take the property or services of another[.]" The information in this case proves the first prong of the Kyron test | Unlike theft by taking, which requires a trespass in the taking, theft by embezzlement involves a violation of trust. West's RCWA 9A.56.010(19)(b), 9A.56.020(1)(a). | Does embezzlement involve violation of trust? | 00309.docx | LEGALEASE-00116503 LEGALEASE-00116504 | SA, Sub | 0.85 | | | | 1 | |
| 17954 | United States v. Evans, 572 F.2d 455 | 146+4 | As a general proposition, when the question of ownership of property depends upon the construction or existence of a statute, it is a matter of law for the court's determination. United States v. Lavender, 602 F.2d 639, 641 (4th Cir. 1979); United States v. Schultz, 333 F.2d 40, 48 (8th Cir. 1941); Thompson v. United States, 256 F. 616, 619-20 (2nd Cir.); Cert. denied, 249 U.S. 617, 39 S.Ct. 391, 63 L.Ed. 804 (1919). On the other hand, in a criminal case the question of ownership of property in the government context is often a factual one for the jury. United States v. Cohen, 464 F.2d 1163, 1165 (9th Cir. 1972). | In prosecution for embezzling or stealing public money, property, or records, government must establish that it had ownership interest in actual property involved in violation of 18 U.S.C.A. s 641. | Is it essential to establish some property loss by the government (in a violation of 18 U.S.C.A s 641? | 00315.docx | LEGALEASE-00116355 LEGALEASE-00116356 | Condensed, SA, Sub | 0.73 | | 1 | | 1 | |
| 17955 | In re Ampson, 34 F.3d 980 | 253+1081 | However, the other spouse (petitioner), one spouse is liable for a tort of the other only if the spouse authorizes the tortious act and the act furthers a commonly held purpose. United States v. Overman, 424 F.2d 1142, 1145; 56, 367 P.2d 758, 762 (1962). Defritas v. Provident Sec. Life Ins. Co., 374 F.2d 50, 52 (9th Cir. 1967) (Arizona Law). Criticism and replies were either separately or divorced during the time of the occurrence, or in New Mexico property. Courts of Appeals through VII and Courts VIII through XI. Because Crinzie operated on a evidence that the instructions in the corporation, benefited the marital community, the magistrate judge correctly refused to hold Haley jointly liable for Crinzie's tortious conduct. | Under Idaho law, one spouse is liable for tort of the other only if spouse authorizes tortious act and act furthers community purpose. | Is a spouse liable for the torts of the other spouse? | Marriage and Cohabitation - Memo 16 - AA4.docx | LEGALEASE-00202205 LEGALEASE-00202206 | Condensed, SA, Sub | 0.81 | | 1 | | 1 | |
| 17956 | Aramco Coal Co. v. Conn., Dep't of Envtl. Res., 505 Pa. 198 | 260+93.17 | The statutory remedy prescribed by the state Surface Mining Conservation and Reclamation Act, supra, 52 P.S. 1396.4, subsection (b), specifically contemplates resort to the Environmental Hearing Board upon the requirements set forth in the Administrative Code of 1929, supra, 71 P.S. * 510-21(a). The Environmental Hearing Board shall have the power and its duties shall be to hold hearings and issue adjudications under the 'Administrative Agency Law,' on any order, permit, license or decision of the Department of Environmental Resources... notwithstanding any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the Department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board, provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified 71 P.S. ** 510-21(a) and (c) (emphasis supplied) Pre-enforcement review, however, is not only available to challenge the authority of the Environmental Hearing Board and in the exercise of any suit arising under the statutory or administrative strained and unrealistic construction of the language of the Code. There appears no reason or inference to power the Hearing Board (EHB) on application of allegedly illegal regulation, that Board enjoys only jurisdiction over validity of regulations. 52 P.S. 1396.4(b); 71 P.S. 55 510-21, 510-21(a, c), 2 Pa.C.S.A. 5 703(a). | Pre-enforcement review is not within authority of Environmental Hearing Board | Is pre-enforcement review within the authority the Environmental Hearing Board (EHB)? | Environmental Law - Memo 52 - AA4.docx | ROSS-002381113-ROSS-002381114 | Condensed, SA, Sub 0.74 | | | 1 | | 1 | |

Appendix D
3000

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | **15,944** | **14,873** | **23,876** | **9,079** |
| | | | | | | | | | | **839** | | | | |
| 17057 | Leigh v. Chevron U.S.A. Inc., 544 U.S. 528 | 148v70 | The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, see Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), provides that private property shall not "be taken for public use, without just compensation." As is true when the government directly condemns private property, the "just compensation" required by the Fifth Amendment… | The Takings Clause does not prohibit taking of private property, but instead places condition on exercise of that power; in other words, it is designed not to limit governmental interference with property rights per se, but rather to secure compensation in event of otherwise proper interference amounting to a taking. U.S.C.A. Const.Amend. 5. | What purpose does the Takings Clause serve? | Eminent Domain - Memo 1 - AAA.doc | LEGALEASE 00000421-LEGALEASE-00000453 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | |
| 17058 | Lindsey v. Lindsey, 392 P.3d 968 | 253v422 | The presumption is that marital property will be divided equally while separate property will not be divided at all. See Utah 2015 UT 75, ¶ 121, *** P.3d ***. Dues, 807 P.2d at 1323. Married persons have a right to separately own and enjoy property, and their right does not dissipate upon divorce. Sodderholm, 790 P.2d at 308. Thus, equity generally requires that "each party retain the separate property they brought into the marriage, including any appreciation" Peeters Dunn, 802 P.2d at 1328. 1321. accordDahl 2015 UT 79, ¶ 145, *** P.3d *** Morrowson, 790 P.2d 1319 | Married persons have a right to separately own and enjoy property, and that right does not dissipate upon divorce. | Can a married person own separate property during marriage? | 004793.docx | LEGALEASE 00100735-LEGALEASE-00100736 | Condensed, SA | 0.81 | 0 | 1 | | | |
| 17059 | Bramlett v. Owenby Transp., 103 N.C. App. 77 | 50v12 | A bailment is created when a third person acquires, through an express or implied contract, the possession of personal property of another to be returned to the bailor or otherwise disposed of according to the bailor's instructions. N.C. 264, 347 S.E.2d 445 (1986). North Carolina recognizes three types of bailments: (1) bailments for the sole benefit of the bailor, (2) bailments for the sole benefit of both parties (3) bailments for the sole benefit of the bailee. Clott v. Greyhound Lines, Inc. 278 N.C. 378, 180 S.E.2d 102 (1971). Where both parties have an interest or benefit pecuniary interest served by the creation of the bailment, such bailment is for mutual benefit. Clark v. Western Auto Parts… | North Carolina recognizes three types of bailments: bailments for sole benefit of bailor; bailments for sole benefit of both parties; and bailments for sole benefit of bailee. | What are the different types of bailment? | 004625.docx | LEGALEASE 00100905-LEGALEASE-00100906 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | |
| 17060 | Hadfield v. Gilchrist, 343 S.C. 88 | 50v2 | A gratuitous bailment is, by definition, one in which the transfer of possession or use of the bailed property is without compensation. 8A Am.Jur.2d Bailments § 5 (1997). For instance, a gratuitous bailment arises when the bailment is undertaken as a personal favor or is involuntary. See United States v. Atwater-Brown, 744 F.2d 1362, 1367 (11th Cir.1984). (a personal favor); Clott v. Greyhound Lines, Inc. 278 N.C. 378, 180 S.2d 102 (1971). (gratuitous bailment of carrier through accident or mistake). McLaughlin v. Bucs, 234 S.C. 169, 107 S.E.2d 39 (1959)… | A gratuitous bailment, by definition, is one in which the transfer of possession or use of the bailed property is without compensation. | What is a gratuitous bailment? | Bailment - Memo 24 - ANG.docx | ROSS-003295277-ROSS-003295278 | Condensed, SA | 0.86 | 0 | 1 | | | |
| 17061 | Motors v. United States, 963 F.Supp. 1051 | 50v2 | A bailment for mutual benefit arises whenever it appears both parties receive benefit from the transaction. Global Motors, 209 Neb. at 336, 307. P.2d 1292. It is not necessary for the bailee to receive compensation from the bailee, so long as the bailee, so long as the bailment is an incident to the business from which the bailee makes a profit. Id. Under both theories, where the bailed shows the property was delivered to the bailee and the bailee failed to return it, the bailee has made a prima facie case of negligence and the burden shifts to the bailee to come forward with evidence to explain the failure to redeliver the property. See M. Bruenger & Co. v. Dodge City Truck Stop, Inc. 234 Kan. 682, 687, 675 P.2d 864 (1984)… | Under Kansas law, "bailment for mutual benefit" arises whenever it appears that both parties receive benefit from transaction; it is not necessary for bailee to receive compensation from bailor, so long as bailment is incident of business from which bailee makes a profit. | When does a bailment for mutual benefit arise? | Bailment - Memo 45 - W.docx | ROSS-003283497-ROSS-003283498 | Condensed, SA | 0.65 | 0 | 1 | 1 | 1 | |
| 17062 | Command Cinema Corp. v. VCA Labs, 464 F. Supp. 2d 191 | 50v16 | To maintain a claim for conversion, "a plaintiff must show: (1) "legal ownership or an immediate superior right of possession to a specific identifiable thing" and (2) that the defendant "exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." "The determination as to whether the relationship is one of bailor and bailee turns on whether there is a relinquishment of exclusive possession, control and dominion over the property," "In addition, there must be 'either actual or constructive delivery of the bailed item to the bailee as well as actual or constructive acceptance by the bailee.' Constructive delivery does not require that a formal transfer of physical property take place, merely the loss of possession of the physical property by one party, the mistake of a bailed good, whether made in a good faith or not, results in liability of the bailee for conversion if bailee mischaracterized as a common carrier, it has satisfied its duty to deliver the goods to the proper… | Any misdelivery of a bailed good, whether made in a good faith or not, results in liability of the bailee for conversion under New York law. | Does the misdelivery of goods constitute conversion? | Bailment - Memo 43 - W.docx | ROSS-003241494-ROSS-003241510 | SA, Sub | 0.87 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17063 | United States v. Dial, 757 F.2d 163 | 184v15 | It is true that none is dispositive," because, a smart manager might have been the only thing jacking up the price, the price would have collapsed when the MKC account was liquidated" and it did not (even between November 1979 and February 1980, the average monthly price of silver rose to $59.27 per ounce. We don't find the analysis persuasive. The defendants' customers did lose money"the additional profit they would have made if the defendants had paced their customers' orders ahead of rather than behind their own orders and Clayton was subjected to this risk of having to make good what might have been $25 million in trading losses in the MKC account. The risk did not materialize, but just as it is embezzlement if an employee takes money from his employer and replaces it before it is missed, see, e.g., United States v. Bailey, 734 F.2d 296, 304 (7th Cir. 1984), so it is fraud to impose an enormous risk of loss even on an involuntary and uncomprehending creditor by deliberate misrepresentation even if the risk does not materialize. See, e.g., United States v. Feldman, 711 F.2d 758, 767-69 (7th Cir. 1983). Finally, the defendants confused the market by signaling the presence of big buyers who had not in fact just put up money (MKC and Multi Projects), and to underwrite the confidence on which successful futures trading depends) to burn the exchanges, and the society at large. The evidence that the defendants' misrepresentations were deliberate was overwhelming, beginning with the establishment of an offshore trading operation in an unidentified owner, continuing with the timing of the defendant's purchases for their own and their friends' accounts ahead of the block order and the MKC orders, all carefully orchestrated over the months of trading. | It is fraud to impose an enormous risk of loss on an involuntary and uncomprehending creditor even if the risk does not materialize. | Can an act come under the offense of embezzlement if the risk did not materialize? | Embezzlement - Memo 34 - RK.docx | ROSS-003288318 & ROSS-003288319 | Condensed, Memo | 0.94 | 0 | | | 1 | |
| 17064 | People v. Muttarava, 383 Ill. 81 | 164Tv20 | The purpose of the act, as disclosed by the title, was to prevent actions conducive to breaches and blackmail that tends to disrupt in the synonymous terms. 1 Words and Phrases, Perm ed., page 529; Blackmail implies an extortion of hush money. Ex parte Algae, 74 Neb. 351, 104 N.W. 751. Sending letters through the mails threatening to expose one's past for the purpose of extorting money is blackmail. Extortion through threats to expose one as a former convict is commonly considered a form of blackmail. Bodermening of various sorts has been so considered. Innumerable methods of blackmail and extortion have blackened the pages of history from the earliest civilizations. The ingenuity in which a person of intelligence would read the title to the act in question which all these terms are defined. The use in evidence of various synonymous terms would be included in the act by the words "cause of action," but the extortion of the title, leads the mind to the subject of blackmail. | Sending letters through the mails threatening to expose one's past for the purpose of extorting money is "blackmail". | Are the terms blackmail and extortion synonymous? | SRM005.docx | LEGALEASE-00117209-LEGALEASE-00117211 | Condensed, SA | 0.88 | 0 | | | 1 | |
| 17065 | Raden v. Share Builder Corp., 773 F. Supp. 2d 599 | 377v436 | Blackmail and extortion are, in almost all jurisdictions, crimes, not civil causes of action. See Scheidler v. National Organization for Women, Inc., 537 U.S. 393, 405, 123 S. Ct. 1057, 154 L. Ed. 2d 991 (2003) ("The Model Penal Code and a majority of States recognize the crime of extortion...") (emphasis added); for instance, Raden cites to the federal Hobbs Act, 18 U.S.C. § 1951, which is a criminal statute. See also 11 Mo. C. Rev. "Although there are a "handful" of reported cases which consider the existence of the tort, none has found for the proposition that extortion at common law." See Second & Ashbourne Assocs. v. Cheltenham Twp., 1989 WL 86492, at *8 (July 13, 1999 U.S. Dist. LEXIS 6663, at *21-22 (E.D. Pa. July 28, 1989) (granting summary judgment on civil extortion claim and noting, "neither the Restatement nor Prosser on Torts delineates a cause of action for extortion."). See also Bell Atlantic Business Systems Services, Inc. v. Hitachi Data Systems Corp., 849 F. Supp. 702 (N.D. Cal. 1994) (dismissing civil extortion claim under California Penal Code § 518 et seq.) ; 2009 WL 1381882, 2009 U.S. Dist. LEXIS 16 (S.D. Fla. May 20, 2009) ("noting the California state court's refusal to recognize a private civil cause of action); Pegasus Blue Star Fund, LLC v. Canton Prods., 2009 WL 1246656, 2009 U.S. Dist. LEXIS 89080 (9th Cir. 20, 2009) (noting that New Jersey does not recognize the tort of civil extortion). | Blackmail and extortion are, in almost all jurisdictions, crimes, not civil causes of action. | Can extortion and blackmail create civil causes of action? | SRD021.docx | LEGALEASE-00117112-LEGALEASE-00117114 | Condensed, SA | 0.93 | 0 | | | 1 | |
| 17066 | Viacom Int'l Inc. v. Icahn, 747 F. Supp. 205 | 164Tv19 | There are two elements to a Hobbs Act violation: wrongful means and wrongful objective. As the Second Circuit explains, "Extortion as defined in the Hobbs Act involves two of wrongdoing who must combine to achieve a wrongful objective." United States v. Clemente, 640 F.2d 1069, 1076 (2d Cir. 1981) (citing United States v. Enmons, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973)). The wrongful objective must be met. The wrongful objective is achieved when the defendant employs "wrongful means" not necessarily by employing means that are illegal in themselves. See Clemente, 640 F.2d at 1076. Thus, even if the stated "actual or threatened force, violence, or fear" to obtain property (which "the defendant threatened") has an unlawful objective, i.e. to obtain property to which (the defendant) had no lawful claim," 410 U.S. at 400, 93 S.Ct. at 1010), Clemente, the means (i.e., exploitation of fear) is also wrongful. Stated another way, both elements of extortion occur whenever one exploits fear to obtain property to which one has no lawful claim. | Hobbs Act extortion violation has two elements: wrongful means and wrongful objective, 18 U.S.C.A. § 1951(b)(2). | What are the elements which constitute a violation under the Hobbs Act? | Extortion - Memo 4 - RK.docx | LEGALEASE-00000001-LEGALEASE-00000003 | Condensed, Order, SA, Sub | | 1 | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 17067 | Ostoff v. Athena Healthcare Corp., 433 F.Supp. 2d 538 | 25T+112 | A court cannot direct parties to arbitration unless the agreement to arbitrate is valid. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003); Before Chug, 331 F.Supp.2d at 121. "An agreement to arbitrate is unenforceable based on generally applicable contractual defenses, such as unconscionability." Alexander, 341 F.3d at 264. The power of courts to declare arbitration provisions unconscionable does not contradict the FAA or its liberal policy favoring arbitration. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" 2[of the FAA]. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 1655 (1996); Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir.1999). So long as state law defenses, including unconscionability, are generally applicable to all contracts, and not just to arbitration clauses, federal courts may enforce them under the FAA. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 937 (9th Cir. 2001)... the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." Caja Gomita Ernst & Young, U.S., L.L.C. v. Nestel, 346 F.3d 160, 364 (2d Cir 2003)(emphasis original)(internal quotations and citations omitted). | Court cannot direct parties to arbitration unless the agreement to arbitrate is valid. | Can a court direct parties to arbitrate if the agreement to arbitrate is not valid? | Alternative Dispute Resolution - Memo 215-JS.docx | RGS05/0207899 RGS5-00207900 | Condensed, SA | 0.94 | 0 | 1 | 1 | 1 | |
| 17068 | Marcus v. Masucci, 118 F. Supp. 2d 453 | 25T+131(1) | In determining whether there is a contractual provision mandating arbitration of dispute, courts are to employ ordinary contract principles. In making such determinations, a court is to employ ordinary contract principles, see Genesco v. Joint & Co., 787 F.Supp. 340, 344 (S.D.N.Y.1990); Young v. Morrey Pace Inc., 424 F.Supp. 368, 369 (S.D.N.Y.1981), and "to with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors, 473 U.S. at 626, 105 S.Ct. 3346. There is a strong federal policy to construe arbitration clauses broadly. See Threlkeld, 923 F.2d at 250, Communication Workers v. Utah International, Inc., 743 F.2d 190, 194 (2d Cir. 1984). AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed. 2d 648 (1986) (citation omitted). | In determining whether there is a contractual provision mandating arbitration of dispute, courts are to employ ordinary contract principles. | Is it determined based on ordinary contract principles whether parties have agreed to arbitrate? | 00487B.docx | USG4/ILKSE-00117338 USG4/ILKSE-00117340 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | |
| 17069 | Rockfield Chemicals v. Illinois Pollution Control Bd., 284 Ill. App. 3d 674 | 148E+400 | The Environmental Protection Act has been held to authorize the Pollution Control Board to conduct rehearings by virtue of its authority to conduct "such other proceedings as the Agency or the Board by regulation ... may prescribe" (Ill Rev. Stat. 1987, c. 111 1/2, par. 1005(d)), as implemented by specific rules providing for motions for rehearing or modification of orders. (Motion Manufacturing Co. v. Pollution Control Board (1979), 69 Ill.App.3d 498, 393 N.E.2d 875.) However, no such authority to modify or reconsider its decision had been granted by statute to the Agency, and no such procedures have been provided by rule. | Illinois Environmental Protection Agency had no authority to reconsider or modify its earlier decision denying application for permit to operate polyester resin manufacturing plant based on possible violation of Environmental Protection Act, and State Pollution Control Board had statutory duty to review permit denial within 35 days of applicant's filing of petition for review after Agency did not reply to its letter requesting reconsideration of denial and erred in dismissing that petition on ground that request for reconsideration was pending with Agency. S.H.A. ch. 111 1/2 ¶ 1005(d). | Is the Pollution Control Board empowered with the authority to hear rehearing requests? | 00507.docx | USG4/ILKSE-00117221 USG4/ILKSE-00117223 | Condensed, SA | 0.02 | 0 | 1 | 1 | 1 | |
| 17070 | In re Masonite Corp., 997 S.W.2d 194 | 401+1.5 | Texas venue law is established. The plaintiff has the first choice to fix venue in a proper county, this the plaintiff does by filing the suit in the county of his choice. If a defendant, through a proper motion, objects to the plaintiff's venue choice, the plaintiff must prove that venue is proper in the county of suit. Where there is no specific venue provision in a single suit, each plaintiff, independently of the others, must establish proper venue. With some exceptions not relevant here, "[a]ny person who is unable to establish proper venue may not join or maintain venue for the suit as a plaintiff." 15 If the plaintiff fails to establish proper venue, the trial court must transfer venue to the county specified in the defendant's motion to transfer, provided that the defendant has requested transfer to another county of proper venue.3 id.this point, the defendant has the first... | Plaintiff has the first choice to fix venue in a proper county by filing the suit in the county of his choice. | Is the plaintiff or the defendant given the first choice of venue? | 00517.docx | USG4/ILKSE-00117262 USG4/ILKSE-00117264 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |
| 17071 | Dreiheimer v. CDS, 104 Wash. App. 464 | 233+1110 | A tenant's common law claim is also limited. A tenant may recover from his or her landlord for injuries caused by a latent defect known to the landlord but not disclosed. RCW 4.52.110 & 115. Here, the landlord's duty to warn only to warn of the latent defect, there is no common law duty to repair. Appar. 62 Wash. App. at 824-27, 815 P.2d 751. Here, the jury was given no instruction on the common law duty. Instruction 16. That instruction tracked the Dreiheimer's Complaint and was therefore proper. | Under the common law, a landlord's duty with respect to a latent defect is only to warn of its existence; there is no common law duty to repair. | Is the landlord under a common law duty to repair rental property? | Landlord and Tenant Memo 06 - RK.docx | USG4/ILKSE-00003709 USG4/ILKSE-00003710 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17072 | Robertson v. Southwestern Bell Yellow Pages, 190 S.W.3d 899 | 237+21 | In her first issue, appellant contends the trial court erred in granting Smithee's motion for summary judgment. Smithee filed a traditional motion for summary judgment asserting, as a matter of law, that he made no statement about appellant. Viewed in the light most favorable to appellant, the summary judgment record shows that Smithee made repugnant and offensive remarks about African"Americans in general. Smithee's remarks were not directed specifically toward any specific persons or person. Indeed, in her deposition, appellant admitted the only statements Smithee made were about "blacks in general." Likewise, in her petition, appellant acknowledged that these preliminary statements were directed generally toward African"Americans. For a defamatory statement to be actionable, it must refer to an ascertainable person. See Newspapers, Inc. v. Matthews, 161 Tex. 284, 339 S.W.2d 890, 897 (1960); Austin v. Inet Technologies, Inc., 118 S.W.3d 491, 496 (Tex.App.-Dallas 2003, no pet.); see also Padilla v. Carrier Air Conditioning, 67 F.Supp.2d 650, 663 (E.D.Tex.1999). For this reason, statements about very large groups generally will not support an action for defamation. See, e.g., Alvord"Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1015 (3d Cir.1994); Michigan United Conservation Clubs v. CBS News, 665 F.2d 110, 112 (6th Cir.1981). In this case, Smithee's statements could not reasonably be construed to refer specifically to appellant. Thus, the trial court properly granted his motion for summary judgment. | Statements about very large groups generally will not support an action for defamation. | Can statements against large groups of people support an action for defamation? | Libel and Slander-Memo 48 - RK.docx | ROSS-003297238-ROSS-003297239 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 17073 | In re Masonite Corp., 997 S.W.2d 194 | 250+4(4) | The trial court, in ordering these cases transferred to counties other than that proved to be proper venue, ignored the pleadings, the facts, and the law. This was a clear abuse of discretion. Functionally, the nonresident plaintiffs asked the trial court to fix their mistake and transfer their claims to another county of their choice, not Masonite's. The trial court had no discretion to, in effect, grant the plaintiffs a transfer of venue; the plaintiffs had the first choice, but not the second, of a proper venue. | Trial court's abuse of its discretion in ordering transfer of venue for claims of non-resident plaintiffs to their counties of residence on its own motion, instead of granting defendants' motion to transfer venue of such claims to proper county of defendants' choice, presented exceptional circumstances rendering appellate remedy inadequate and thus warranting mandamus relief, where effect of trial court's disregard for parties' pleadings, facts, and law would be that claims of hundreds of plaintiffs would be tried in multiple improper forums, all with automatic reversible error. | Does the plaintiff get second choice of venue? | 005180.docx | LEGALEASE-00117265-LEGALEASE-00117266 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 17074 | Hall v. Citizens Ins. Co. of Am., 141 Mich. App. 676 | 237+119 | "Citizens concedes on appeal that plaintiff established all the elements of this tort except the existence of "special harm". Although the terms "special harm" or "special injury" have different meanings in different contexts, we believe that, in Michigan's law of defamation, the terms merely refer to actual harm resulting from the defamatory statement. Actual harm includes not only out-of-pocket losses, but also damages for mental and emotional suffering. See Peisner v. The Detroit Free Press, Inc., 421 Mich. 125, 364 N.W.2d 600 (1984); 3 Restatement Torts, 2d, Comments to "" 620, 621, pp. 316"321; M.C.L. " 600.2911; M.S.A. " 27A.2911. We find that plaintiff in the instant case presented sufficient evidence of actual damages to warrant submission of the defamation claim to the jury. | For purposes of element of defamation action requiring proof of "special harm" or "special injury" caused by publication, "special harm" or "special injury" merely refers to actual harm resulting from defamatory statement; "actual harm" includes not only out-of-pocket losses, but also damages for mental and emotional suffering. | What constitutes actual harm in the context of defamation? | 000550.docx | LEGALEASE-00117327-LEGALEASE-00117328 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 17075 | Biondo v. Biondo, 769 So. 2d 94 | 253+953 | Under Louisiana law, property of married persons is generally characterized as either community or separate. LSA"C.C. art. 2335. The classification of property as separate or community is fixed at the time of its acquisition. Smith v. Smith, 95"0913 (La.App. 1st Cir.12/20/96), 685 So.2d 649, 651. In proving whether an asset is community or separate, the parties are guided by the following principles.LSA"C.C. art. 2338 provides that community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property. Things in the possession of a spouse during the existence of the community are presumed to be community, but either spouse may prove that they are separate property.LSA"C.C. art. 2340.Regarding the classification of property as separate, LSA"C.C. art. 2341 provides, in part, that a spouse's separate estate comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime. | By matrimonial agreement, wife and husband could have provided for contribution to the expenses of the marriage, for apportionment of community property according to fixed shares, or for the reservation of fruits as separate property, and they could have provided that their existing or future property would be subject to something other than the legal regime. LSA-C.C. art. 2330. | How is a property classified as separate and community? | Marriage and Cohabitation- Memo 51 - JS.docx | LEGALEASE-00003900-LEGALEASE-00003901 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 17076 | Turner v. Mullins, 162 S.W.3d 356 | 315+22 | In determining the ownership of property, we apply the law of the jurisdiction in which the land is located. See Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328, 335"36 (1943) (indicating that title to realty can be affected only by the law of the jurisdiction in which it is situated); Toledo Soc. for Crippled Children v. Hickok, 152 Tex. 578, 261 S.W.2d 692, 696 (1953) (indicating that the validity of an instrument conveying realty is determined by the laws of the jurisdiction in which it is located). Thus, in deciding who owns the Disputed Land today, we must apply Texas law. | In determining the ownership of property, courts apply the law of the jurisdiction in which the land is located. | What law is applied in determining the ownership of a property? | Property - Memo 19 - JS.docx | ROSS-003311200-ROSS-003311201 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WNIS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 17077 | Johnson v. Paynesville Farmers Union Co-op Oil Co., 817 N.W.2d 693 | 388+14 | We have not specifically considered the question of whether particulate matter can result in a trespass. The Spirit Rock line of trespass... | Entry upon the land that interferes with the landowner's right to exclusive possession results in trespass whether that interference was reasonably foreseeable or whether it caused damages. | Does the right to exclusive possession of the property from another's act[,] is an important role in the law of trespass? | Trespass - Memo 20 - RK.docx | LEGALEASE_00006116-LEGALEASE_00006118 | Condensed,SA | 0.89 | 0 | 1 | 0 | 1 | 1 |
| 17078 | Aguilar v. Trujillo, 162 S.W.3d 839 | 388+12 | The Aguilars' pleadings include a claim for continuing trespass and a request for injunctive relief. Every unauthorized entry is a trespass even if no damage is done... | A trespass can be either by entry of a person on another's land or by causing or permitting a thing to cross the boundary of the premises. | Are actual damages an element of the tort of trespass? | Trespass - Memo 16 - RK.docx | LEGALEASE_00006243-LEGALEASE_00006244 | Condensed,SA | 0.81 | 0 | 1 | 0 | 1 | 1 |
| 17079 | State v. Huston, 64 A.2d 72 | 207+6 | The conclusion of the crime of rape in the instant case necessarily carries with it the conclusion that sexual intercourse occurred and that statement we quote from State v. Warner, Utah, 291 P. 307, 309... | Proof of an emission is not essential to show a completed sexual offense of rape, sodomy, incest, or other carnal knowledge. Code 1935, 55-33-8, 405, 43-6901, 63-107 (A.S. 55-13-47), 13-611 to 13-614, 25-101). | Is committing the crime of incest the same as committing the crime of rape? | 000455.docx | LEGALEASE_00017720-LEGALEASE_00017721 | Condensed,SA,Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 17080 | People v. Womack, 167 Cal. App. 2d 130 | 207+5 | It has been held generally that prohibition against incestuous relationships apply to illegitimate blood relatives, whether by half-blood or the whole blood. State v. Lamb, 1929, 209 Iowa 132, 227 N.W. 830, 831; State v. Wyman, 1887, 59 Vt. 527, 8 A. 900... | Prohibition against incestuous relationships apply to designated near relations, whether by the half blood or the whole blood. West's Ann.Civ.Code, § 59. | Are half-blood relationships included within the incest prohibition? | Incest - Memo 21 - TH.docx | LEGALEASE_00004007-LEGALEASE_00004009 | Condensed,SA,Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 17081 | Hetas Gas & Oil Producers v. Union Oil Co. of California, 669 F.2d 624 | 268+1 | Oklahoma recognizes the common law rule against perpetuities as operative in the state. Melcher v. Camp, 435 P.2d 107, 112 (Okla. 1967). The doctrine traditionally voids any property right which may vest more than twenty-one years after some life in being at the creation of the interest... | Doctrine of perpetuities voids any property right which may vest more than twenty-one years after some life in being at the creation of the interest. | What violates the rule against perpetuities? | 000514.docx | LEGALEASE_00017633-LEGALEASE_00017634 | Condensed,SA,Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 17082 | Lasher v. Redevelopment Auth. of Allegheny Cty., 211 Pa. Super. 408 | 233+704 | In the relationship of landlord and tenant, Smith v. Royal Ins. Co., 111 F.2d 667, 671, 130 A.L.R. 812 (9th Cir. 1940); Trickett, Landlord & Tenant (2d ed. 1904). Where a grantor remains in possession... | When grantor remains in possession after a conveyance of the premises, he is a "tenant at will," especially where he has no consent of the grantee. | Do grantors who continue to remain in possession after a deed hold possession as tenant at will? | 000552.docx | LEGALEASE_00017617-LEGALEASE_00017618 | Condensed,SA,Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 17083 | In re Byrd, 546 B.R. 434 | 315+782 | Under Idaho law, ownership of a motor vehicle is usually determined by reference to the certificate of title, but the motor vehicle title laws provide that "no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to it that vehicle..." Idaho Code § 49-503. This Court has had several occasions to construe and apply this statute, holding that, for bankruptcy purposes, the owner of a vehicle is the party whose name appears on the title certificate. See, e.g., In re Woods, 386 B.R. 758, 762 (Bankr. D. Idaho 2008); Hopkins v. Shradley (In re Shradley), 03-1, 865 T.E. 8 (Bankr. D. Idaho 2003). Based upon this statute and case law, Defendant argues that, because there is no title certificate showing Byrd as the owner of the Vehicle, and because the only document that is "title-like", the Certificate of Origin(s), shows Defendant as the owner, the Court's inquiry ends, and Defendant owns the Vehicle. | Under Idaho law, ownership of motor vehicle is generally determined by reference to title certificate. | How is ownership of a motor vehicle determined? | Property - Memo 26 - TH.docx | ROSS-00313224 ROSS-00313225 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17084 | Jones v. Marsh, 148 Fed. Appx. 342 | 23H+46(3) | Section 18 of the Firemen's and Policemen's Civil Service Act, Acts Regular Session, 50th Legislature, Chapter 325, Article 1269m (Vernon's Annotated Civil Statutes), permits a fireman or policeman dissatisfied with the decision of the Firemen's and Policemen's Civil Service Commission established by the Act in certain cities to file a petition in the district court asking that the order of suspension or dismissal be set aside, and that he be reinstated, and provides that "such case shall be tried de novo." Although the certified case file in the District Court of Fort Worth, City of Fort Worth, 147 Tex. 505, 217 S.W.2d 644, that the extent of the judicial review of the order of the administrative agency, the Commission, is limited to an ascertainment of whether there is substantial evidence reasonably sufficient to support the challenged order. | The statute providing for trial de novo under same rules as ordinary civil suit on appeal to district court from county judge's order denying application for license to sell beer at retail contemplates only limited review of adequacy of district court is whether county judge's fact findings are reasonably supported by substantial evidence. Vernon's Ann.P.C. arts. 666-3, 667-6. | What is the standard of review a district court should use when hearing an appeal from the Firemen's and Policemen's Civil Service Commission? | 00313.1.docx | LEGALEASE-00117971 LEGALEASE-00117972 | Condensed, SA, Sub 0.14 | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 17085 | State v. Bale, 512 N.W.2d 164 | 207+5 | Statutes of other states extend the crime of incest to sexual relations between relatives by affinity, relationships by consanguinity in part to the decision by the Iowa courts. 208 Minn. 330, 2 N.W.2d 419 (1942.). See Model Penal Code *230.2 (Proposed Official Draft 1962). In South Dakota, however, SDCL 22-22-19.1 specifically limits the crime of incest to sexual penetration between those related by consanguinity. The statute could have easily prohibited sexual relations between relatives by affinity and by adoption, but did not do so. SDCL 22-22-19.1. This Court will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning. State v. Heisinger, 252 N.W.2d 899, 903 (S.D.1997). Consequently, the information did not describe a public offense and was properly dismissed pursuant to SDCL 23A.8-2. | Sexual penetration between adoptive parent and child did not constitute incest under statute limiting crime of incest to sexual penetration between those related by consanguinity, and thus relationship between the legal consanguinity and legal consanguinity between adoptive parent and child. SDCL 22-22-19.1. | Do incest laws prohibit sexual intercourse between people who are related by affinity? | 000457.docx | LEGALEASE-00117967 LEGALEASE-00117968 | Condensed, SA, Sub 0.67 | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 17086 | Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., 598 F.3d 257 | 115+380(2.10) | For purposes of determining the proper scope of "punitive damages" as underlying parties when the damages are liquidated when the amount in question is either agreed upon by the parties or is readily ascertainable by reference to the contract. General Elec. Co., 612 S.W.2d 138, 141 (Ky.1981). If damages are unliquidated, the court has discretion whether to award pre-judgment interest. Nucor Corp. v. General Elec. Co., 812 S.W.2d at 143, 149 (Ky.1991). | Damages are "liquidated damages", under Kentucky law, for purposes of award of prejudgment interest, when the amount in question is either agreed upon by the parties or is fixed by operation of law or the parties. | When are damages liquidated? | Libel and Slander - Memo 86 - TH.docx | ROSS-00328573 ROSS-00328575 | Condensed, SA, Sub 0.55 | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 17087 | Thompson v. TCI Prod. Co., 81 F. Supp. 3d 257 | 313A+119 | Plaintiff has brought a claim for manufacturer's products liability, and the amended complaint sets forth both design defect and failure to warn theories of recovery. See Part IV.3, at B. In Kentucky, a manufacturer was not liable for products liability under design defect theory when consumer of burned fuel oil-based solvent identified and used product based on knowledge that product had dangers. Ky-App.3 2015 liability. A claim for manufacturer's products liability has three elements:(1) the product was the cause of the injury; 2) the defect existed at the time the product left the manufacturer's possession and control; (and 3) the defect made the product unreasonably dangerous to the plaintiff's person. Clark v. Hauck Mfg. Co., 910 S.W.2d 247, 251 (Ky.1995). To qualify as "unreasonably dangerous," a product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Swift v. Serv. Chem., Inc., 310 F.3d 1127, 1131 (Ohio Civ.App.2013 | Under Oklahoma law, manufacturer's commercial solvent was not unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer, even assuming that manufacturer was not liable for products liability under design defect theory since consumer of burned fuel oil-based solvent (in which explosion allegedly caused by ignition of solvent residue in barrel when consumer was attempting (as) into it with a torch, where it was known generally to, and especially to the person who welded barrel tops who welded barrel tops who where the intended consumers, that solvents such as manufacturer's were extremely flammable and that vapors from such solvents could ignite explosively. | What are the elements to prove a claim of manufacturer's product liability? | Products Liability - Memo 12 - TH.docx | ROSS-00328475 ROSS-00328754 | Condensed, SA, Sub 0.33 | 0.33 | 0 | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17088 | Kennedy v. City of New York, 196 N.Y. 19 | 233+695(3) | A tenant who holds over after the expiration of a definite term for a year or years may be treated by his landlord as a trespasser, or as a tenant from year to year. If the landlord elects to treat the tenant as holding over for another year, the conditions of the original lease apply, except as to duration. Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, 28 Am. St. Rep. 636; Adams v. City of Cohoes, 127 N. Y. 175, 28 N. E. 25. Under such a holding over a tenant is bound for another year, not by virtue of an express contract, but by implication of law springing from the circumstances. Herter v. Mullen, 159 N. Y. 28, 43, 53 N. E. 700, 44 L. R. A. 703, 70 Am. St. Rep. 517. The only logical deduction from the choice thus given to the landlord of treating a hold-over tenant either as a trespasser or as a tenant for another year is that each holding over, where acquiesced in by the landlord, constitutes a new term, separate and distinct from those which preceded it, and related to each other only in the conditions of the original lease which the law reads into the new tenancy. Some of the text-writers and a few of the earlier decisions seem to have confused the subject by referring to tenancies from year to year, arising by operation of law, as continuations of the original terms, when it would have been more correct to characterize them as new tenancies, subject to the original conditions. The later decisions in this court have, however, defined this species of tenancy with a precision that admits of no misunderstanding. In the case of United M. Realty & Impr. Co. v. Roth, 193 N. Y. 570, 576, 86 N. E. 544, 545, it was held, upon the opinion of Chief Judge Cullen, that "the right of the landlord to treat the hold-over as a tenant for a new term does not spring from the contract of the parties, but is the penalty imposed by law upon the trespassing tenant." The same view was expressed in Judge Vann's dissenting opinion in the following language: "Owing to the previous relations between the parties, the law | A tenant holding over after the expiration of a definite term for a year, or years, may be treated by the landlord as a trespasser, or as a tenant from year to year, holding under the conditions of the original lease except as to duration. Order (1908) 111 N.Y.S. 61, 127 App.Div. 89, reversed. | Is a tenant who holds over considered a tenant from year to year? | Landlord and Tenant - Memo 38 - ANG.docx | LEGALEASE-00004776-LEGALEASE-00004779 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 17089 | Bellows v. Ziv, 38 Ill. App. 2d 342 | 233+695(3) | Where a tenant holds over after the expiration of a lease for a year or years, the landlord may elect to accept and treat him as a tenant from year to year. 24 I.L.P. Landlord and Tenant " 65; Eppstein v. Kuhn, 225 Ill. 115, 80 N.E. 80. The election to treat the tenant as a holdover tenant is exclusively that of the landlord, and the presumption of law, in the absence of a preponderance of evidence establishing a contrary agreement, is that there is a holding over upon the terms of the original lease. The terms of the new tenancy from year to year is subject to all the terms and conditions contained in the original lease so far as they are applicable. Cottrell v. Gerson, 296 Ill.App. 412, 16 N.E.2d 529, affirmed 371 Ill. 174, 20 N.E.2d 74; 24 I.L.P. Landlord and Tenant " 67. The holding over does not renew or extend the lease but it creates a new tenancy from year to year. Such tenancies are the creation of judicial decisions based upon principles of policy and justice and are indefinite as to duration. Such a tenancy has many of the qualities of a tenancy for a definite term of years, but substantially it is a tenancy at will except that it cannot be terminated without notice to quit. In Bell v. Groom, 224 Ill.App. 58, the court states:"In some jurisdictions it has been held that a tenant who occupies demised premises for several years after the termination of his lease creates each year a new term expiring at the close of the current year and requiring no notice for its termination, but such rule is not in force in Illinois, where it has been repeatedly held that if a tenant under a demise for a year or more holds over at the end of his term without any new agreement with the landlord, he will be treated as a tenant from year to year. (Hunt v. Morton, 18 Ill. 75; Goldsborough v. Gable, 140 Ill. 269, 29 N.E. 722, 15 L.R.A. 294.) And it seems to us that the Illinois rule is according to the great weight of authority on the subject. The Appellate Court of the First District in a well-considered case, Hately | Where a tenant holds over after expiration of a lease for a year or years, landlord may elect to accept and treat him as a tenant from year to year. | Is a tenant who holds over considered a tenant from year to year? | 000806.docx | LEGALEASE-00117787-LEGALEASE-00117790 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 17090 | White v. Croft, 1918 WL 3198, 47 Pa.C.C. 161 | 233+710 | Where a lease is made for a year and so from year to year, as long as both parties please, there must be notice to quit in due time before the end of the year; otherwise the law implies a new lease for a year. So where a lease is made to one to hold during the pleasure of the lessor, there must be due notice to quit, because it would be unreasonable, if a man who has gone to the expense of cultivating land and making preparations for a crop while his estate was uncertain, should be turned off at a moment's warning. But where the lease is to expire at a certain time the law is different because each party knows what he has to trust to. There can be no occasion to give notice to quit where the lessee has agreed to quit at a certain time": Bedford v. McElherron, 2 S. & R. 50. "A tenant holding over is a tenant at sufferance (C. Lit. 57 b. Jackson ex dem) Anderson v. McLeod (12 Johns 182) a mere tortfeasor; Pike v. Hassen (3 Leon 233; Boggs v. Black (1 Binney 335) incapable of a release, as standing in no privity to his landlord, Finch's Case (2 Leon. 145, Co. Litt. 270 b.). The cases to this effect are innumerable." Gibson, J., Logan v. Herron, 8 S. & R. 459. "A lease for years is a lease for a period that is definite and prefixed, and if the tenant have bound himself to quit and surrender up possession of the demised premises at that definite fixed period, the landlord may, without notice to him, set him out of possession, if it can be done without breach of the peace": Rich v. Keyser, 54 Pa. 86. "Where a lease expires at a fixed date, the tenant holding over is strictly a tenant at sufferance": William v. Ladew, 171 Pa. 369. See also Overdeer v. Lewis, 1 W. & S. 90. "A lease was made for a specified time with an express covenant to deliver up possession at the expiration of the term without further notice, and with a reservation of the right of the landlord to enter and repossess the premises at the end of the period or at any time thereafter." It was held that the landlord could maintain ejectment at any time after the | When lease is made for specified time without provision for renewal and tenant holds over after expiration of term, he becomes tenant at sufferance and may be dispossessed at any time, without notice, or may vacate leased premises and be liable for rent only for time he was in possession. | Is a tenant by holding over also a tenant by sufferance? | Landlord and Tenant - Memo 39 - ANG.docx | LEGALEASE-00004780-LEGALEASE-00004783 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 13091 | Brown v. Johnson, 118 Tex. 143 | 233+125 | It is our opinion that the question propounded must be answered in the affirmative under the facts stated in the certificate. The relation of landlord and tenant is a question of fact like that of possession, and may be proved by parol evidence. Likewise, the adverse relation may be thus disproved. To sustain an action for rent, the relation of landlord and tenant must exist. Brown v. Chancellor, Co. Civ. Ct, App. To create the relation of landlord and tenant, no particular words are necessary, but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises and of the other to occupy them. According to the certificate, the legal rights of the parties, I. A. Johnson, and J. A. Brown... The statement in the petition does not contain a denial of the consent having been obtained. Without this, the denial is an improper pleading, is a trespasser and occupies the attitude of a stranger to the landlord. Sternberg v. Dorsey, 2 Willson, Civ. Cas. Ct. App. 723; Brown v. landlord... | Relation of landlord and tenant is question of fact, and may be proved by parol evidence. | Is the existence of a landlord tenant relationship a question of fact? | Landlord and Tenant Memo 40 - ANG.docx | LEGALEASE 00000784-LEGALEASE-00000785 | Condensed, SA, Sub 0.95 | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 13092 | Roberts v. Casey, 36 Cal. App. 2d Supp. 767 | 233+125 | "Ordinarily the landlord furnishes the lodger with a furnished room or rooms where over time he may occupy the same. The tenant has the exclusive possession of the rooms, while the lodger has merely the use without the actual or exclusive possession which remains in the lessor. It is a mixed question of law and fact." | The determination of whether a person is a lodger or a tenant presents a mixed question of law and fact. | Is determination of a tenant and a lodger a mixed question of law and fact? | 000811.docx | LEGALEASE-00117955-LEGALEASE-00117956 | Condensed, SA, Sub 0.75 | 0.75 | | 1 | 1 | 1 | 1 |
| 13093 | Fuqua v. Graber, 158 S.W.3d 635 | 249+57 | The narrow issue before us in the present case is whether the trial court erred in: (1) holding that it lacked jurisdiction over Fuqua's claim for malicious prosecution because such claims are preempted by federal bankruptcy law; and (2) dismissing his claim. As noted above, Fuqua's malicious prosecution claim was not discharged in bankruptcy. Relying on our holding in Dunn, we have concluded that Fuqua's malicious prosecution claim could not have been interfered with by the bankruptcy court's jurisdiction and that the trial court's jurisdiction is therefore not precluded. Thus, the state court has jurisdiction over Fuqua's malicious prosecution claim unless we determine that it is preempted by the bankruptcy code. | As a matter of first impression, debtor's state law claim for malicious prosecution against attorney and attorney's law firm, in which he alleged that attorney and law firm, acting on behalf of a client, wrongfully filed an adversary proceeding in debtor's then-pending bankruptcy case, was not preempted by federal bankruptcy law; debtor's malicious prosecution claim did not accrue until five years after he was discharged in bankruptcy. | Does state claims for malicious prosecution preempted by a federal proceeding in the bankruptcy court? | Malicious Prosecution - Memo 3 - MS.docx | LEGALEASE-00004809-LEGALEASE-00004811 | Condensed, SA, Sub 0.42 | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 13094 | Stephan v. United States, 319 U.S. 423 | 384+2 | The phrase "in levying War against them," ¶ not here involved. This definition is meticulously exclusive and that it was so intended was indicated by the makers of it. Story, "The Constitution left no room for constructive treason and Congress could not and has not defined it..." art. 3, § 3, cl. 1. | The constitutional definition of treason has left no room for constructive treason, and Congress could not and has not undertaken to restrict or enlarge the constitutional definition. U.S.C.A. Const. art. 3, § 3, cl. 1. | Is the doctrine of constructive treason adopted in the United States? | Treason - Memo 4 - ANG.docx | LEGALEASE-00004850-LEGALEASE-00004851 | Condensed, SA, Sub 0.29 | 0.29 | | 1 | 1 | 1 | 1 |
| 13095 | Davis v. Houston Lighting & Power, 1967- Supp. 315 | 25T+200 | At the outset, the Court observes that there is a strong federal policy favoring arbitration of disputes. Southland Corp. v. Keating, 465 U.S. 1, 10, 25, 104 S.Ct. 852, 857 S.Ct. 2332, 2337, 81 L.Ed.2d 185 (1987) (observing that there is a strong national policy favoring the use of arbitration); Life of America Ins. Co. v. Aetna Life Ins. Co., 744 F.2d 409, 417 (5th Cir. 1984); see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238 (1985)... When confronted with the question of arbitrability, a district court must determine, as a threshold matter, whether the grievance before it is subject to arbitration. | When confronted with question of arbitrability, a district court must determine, as a threshold matter, whether grievance before it is subject to arbitration. | Does national policy favor arbitration? | 000987.docx | LEGALEASE-00117985-LEGALEASE-00117986 | Condensed, SA | | | 0.89 | | 0 | 1 |

Appendix D

3508

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17096 | Hopi Tribe v. U.S. Fed. Prot. Agency, 851 F.3d 957 | 205=105 | The principal issue before us is whether the Hopi's exclusion from the TWG negotiations violated duties on the part of the government to consult with the Tribe. The United States has a general trust relationship with the Indian tribes. See Seminole Nation v. United States, 316 U.S. 286, 296, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942). The Hopi ask us to treat this as a duty to consult, stemming from the trust relationship, and binding on the United States as a single entity. No authority allows us to do that, however, and appears are required to be raised individually as parties to a lawsuit. Fed. R. App. P. 3(a)(2)(B), (E). The record shows that the EPA did, in fact, consult with the Hopi Tribe throughout the rulemaking process. The Hopi were invited to a series of consultations before the rulemaking and at the hearing on their interaction and all parties were aware at all times of the Hopi's exposure. Consultation could play out before and after the EPA Agreement. Therefore, regardless of the scope of enforceability of any duty to consult on part of the EPA, the EPA surely complied. | United States has a general trust relationship with Indian tribes. | Does the United States owe a general trust responsibility to Indian tribes? | Indians - Memo 7 - J5_42233.docx | R055.0002791319.R055-00327814 | Condensed, SA | 0.94 | | | | | 1 |
| 17097 | Zucía v. Quindos, 193 So. 155=158 | 65=71 | It is further observed that both of the above described lease contracts involved the same issue, namely, D. Golding, a co-partnership, notwithstanding the fact that a slight change in the membership of that entity occurred between the dates of execution of the first and last instruments. The following phraseology found in Brisco v. Monroe Automobile & Supply Co., et al., 190 La. 1004, 158 So. 558, 561, 84 A.L.R. 1206, sustains this observation: "Apprenticeship, once formed and put into action, becomes, of consideration of law, an entity being distinct from the persons who compose it. It is a unit person which has peculiar rights and attributes. The partners are not the owners of the partnership property; listening to the deal lively, which has the control and administration thereof, to enable it to fulfill its legal duties and obligations. The partners own only the residuum." | On question whether a certain lease was the renewal of a prior lease upon the execution of which additional brokerage commissions were due, both leases, which named a partnership as lessee, involved the same lessee, notwithstanding that a change in membership of partnership occurred between dates of execution of leases, since a "partnership" once formed and put into action becomes in contemplation of law a most being distinct from the persons who compose it. | Is a partnership a civil person having civil rights? | Partnership - Memo 40 - J5_42233.docx | R055.0002321304.R055-00328509 | Condensed, SA, Sub O-48 | 0.48 | | 1 | | 1 | |
| 17098 | Heritage Bank v. Assoc, 835 N.W.2d 868 | 289=501 | The existence of a partnership is a question of fact under Nebraska law. In re Estate of Severtson, 310 Neb. 396, 744 N.W.2d 449 (2008). The party asserting the partnership relationship exists has the burden of proving that relationship by a preponderance of the evidence. See id. If the parties' voluntary actions form a relationship in which they carry on as co-owners of a business for profit, then they may inadvertently create a partnership despite their expressed subjective intention not to do so. Id. Intent of the parties to form a partnership is ascertained objectively rather than subjectively, from all the evidence and circumstances. See id. | Party asserting that a partnership relationship exists has the burden of proving that relationship by a preponderance of the evidence. | Who has the burden of proving the existence of a partnership? | 000615.docx | LEGAL0-E-00118260-LEGAL0-E-00118291 | Condensed, SA, Sub O-8 | 0.8 | | 1 | | 1 | |
| 17099 | Boyer v. First Nat. Bank of Kearns, 476 N.E.2d 895 | 232=H-17 | A joint venture is a relation of two or more persons formed to carry out a single business enterprise for profit, through the combination of their property, money, knowledge, skills, experience, or time. [Barker v. Whittington (1975), 165 Ind.App. 565, 570, 333 N.E.2d 295, 298.] Baker v. Billingsley (1956), 126 Ind.App. 703, 708, 132 N.E.2d 273, 275 "To, trans. denied. A joint venture exists only when there is an express or implied contract to that effect, providing for (1) a community of interests, and (2) joint or mutual control, that is, an equal right in the direction and government of the undertaking, is binding the parties to such an agreement. Neither criterion is dispositive of the point, however. See, Stallings v. Dick (1965), 139 Ind.App. 118, 124, 210 N.E.2d 82, 91. See also, 48A.L.S. Joint Venture s 7 (1983). This section agreement must provide for sharing of profits but it need not distribute them equally. Lafayette Bank & Trust Co. v. Price (1982), Ind.App., 440 N.E.2d 755, 762. 48A C.J.S. Joint Venture s 13 (1981). Sharing of losses, if the losses resolve only time-wise and does not define a venture in the joint agreement. Lafayette Bank, 440 N.E.2d 762. [Hera v. Whitehill (1964), 136 Ind.App. 280, 295, 198 N.E.2d 883, 887. Distribution of other taxes and expenses may be implied from the manner in which profits are to be shared. 48A C.J.S. Joint Ventures ''15, 20 (1981). Where (1) is the intent of the parties for all presumptions to subjects in that the business, is a joint venture exist even though one co-venturer contributes capital and secures his contribution with a note. See, 48A C.J.S. Joint Ventures '6 (1981). Finally, a joint venture is similar to a partnership except a joint venture contemplates only a single business transaction. A partnership, on the other hand, is formed for general business of a particular kind. Lafayette Bank, supra, 440 N.E.2d at 762; Beck v. Indiana Surveying Co. (1981), Ind.App., 429 N.E.2d 264, 268. | Joint venture is similar to a partnership except a joint venture contemplates only a single business transaction; partnership, on the other hand, is formed for general business of a particular kind. | Is a joint venture limited to a single transaction? | 000627.docx | LEGAL0-E-00118277-LEGAL0-E-00118279 | Condensed, SA | 0.9 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17100 | Xcel Energy Servs. Inc. v. F.E.R.C., 815 F.3d 947 | 145+1 | It is long-established that the "primary aim [of the FPA] is the protection of consumers from excessive rates and charges." Mun. Light Bds. of Reading & Wakefield v. FPC, 450 F.2d 1341, 1348 (D.C.Cir.1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972). Consistent with this purpose, the Commission has a general policy of providing refunds in the exercise of its remedial discretion. Cf. Towns of Concord, Norwood, & Wellesley v. FERC, 955 F.2d 67, 76 (D.C.Cir.1992). In the context of section 205, the Commission implements these policies during its initial review of rate filings. Typically, where initial review has not shown the proposed rates are just and reasonable, the Commission will suspend the rates and make them subject to refund while it conducts a section 205 review through hearing and settlement proceedings. W. Tex. Utils. Co., 18 FERC "" 61,189, at 61,374 (1982); Boston Edison Co., 12 FERC " 61,211, at 61,516 (1980); see Conn. Light & Power Co. v. FERC, 627 F.2d 467, 471 (D.C.Cir.1980). When a regional organization, such as an RTO, includes a non-jurisdictional entity and seeks a tariff revision based on that entity's ATRR, the Commission has followed the same procedure where a voluntary refund commitment is submitted with the RTO's proposed tariff revision. See supra note 1 and accompanying text. Here, the Commission has acknowledged that it erred as a matter of law in allowing SPP's proposed rates to take effect, contrary to section 205, without voluntary refund protection despite the acknowledged need for further section 205 review. The Commission nonetheless concluded that it was powerless to do more than order SPP, pursuant to section 206, to ensure prospective refunds because section 2.4(a) of its regulations barred suspension once SPP's rates took effect. See Order III at P 28. The Commission appears, from the record before the court, to have misapprehended its remedial powers and thus arbitrarily declined to | Primary aim of the Federal Power Act (FPA) is the protection of consumers from excessive rates and charges. Electric Utility Companies Act, S 205(a), 16 U.S.C.A. S 824d(a). | What is the primary aim of Federal Power Act? | Electricity - Memo 1 - RM.docx | ROSS-003283488-ROSS-003283490 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 17101 | Wilson v. Texas Parks & Wildlife Dep't, 886 S.W.2d 259 | 401+17 | Venue selection presupposes that the parties to the lawsuit have choices and preferences about where their case will be tried. See Tex.Civ.Prac. & Rem.Code Ann. "" 15.001"15.040 (Vernon 1986 & Supp.1994); Maranatha Temple, Inc. v. Enterprise Prod. Co., 833 S.W.2d 736, 741 (Tex.App."Houston [1st Dist.] 1992, writ denied) (recognizing that the plaintiff has the right to file suit in any permissible county). Venue may be proper in many counties under general, mandatory, or permissive venue rules. See Tex.Civ.Prac. & Rem.Code Ann. "" 15.001"15.040. The plaintiff is given the first choice in the filing of the lawsuit. See Tieuel v. Southern Pac. Transp. Co., 654 S.W.2d 771, 775 (Tex.App."Houston [14th Dist.] 1983, no writ). If the plaintiff's venue choice is not properly challenged through a motion to transfer venue, the propriety of venue is fixed in the county chosen by the plaintiff. Tex.Civ.Prac. & Rem.Code Ann. " 15.063 (Vernon 1986); Tex.R.Civ.P. 86"1. If a defendant objects to the plaintiff's venue choice and properly challenges that choice through a motion to transfer venue, the question of proper venue is raised. Tex.R.Civ.P. 86. The burden is on the plaintiff to prove that venue is maintainable in the county of suit. Id. 87"2(a). If the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another specified county of proper venue. Tex.Civ.Prac. & Rem.Code Ann. " 15.063(1) ("The court ... shall transfer an action to another county of proper venue if ... the county in which the action is pending is not a proper county...."); Tieuel, 654 S.W.2d at 775 (recognizing that if the plaintiff files suit in a county where venue does not lie, the plaintiff waives the right to choose and the defendant may have the suit transferred to a proper venue). If the plaintiff meets the burden, the trial court must maintain the lawsuit in the county where it was filed. Tex.R.Civ.P. 87"3(c) ("If a claimant has adequately pleaded and made prima facia proof that venue is proper in the county of suit ... then | If plaintiff's venue choice is not properly challenged through motion to transfer venue, propriety of venue is fixed in county chosen by plaintiff. V.T.C.A., Civil Practice & Remedies Code S 15.063; Vernon's Ann.Texas Rules Civ.Proc., Rule 86, subd. 1. | Does a plaintiff have the right to choose venue? | 001112.docx | LEGALEASE-00118110-LEGALEASE-00118112 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 17102 | Estate of Prather v. Sherman Hosp. Sys., 2015 IL App (2d) 140723 | 401+52(1) | That said, the record contains undisputed evidence indicating that the circuit court of Cook County did not abuse its discretion in transferring the action to Kane County. When Jaclyn filed the original complaint in Cook County, the forum was neither her residence nor the site of the alleged medical negligence. A plaintiff's right to select the forum is substantial, and unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed. Fennell, 2012 IL 113812, " 18, 369 Ill.Dec. 728, 987 N.E.2d 355. However, the plaintiff's choice is not entitled to the same weight in all cases. When the plaintiff chooses his home forum or the site of the accident or injury, the choice of forum is most likely convenient. Fennell, 2012 IL 113812, " 18, 369 Ill.Dec. 728, 987 N.E.2d 355. When the plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's choice of forum is accorded less deference. Fennell, 2012 IL 113812, " 18, 369 Ill.Dec. 728, 987 N.E.2d 355; see also Langenhorst v. Norfolk Southern Ry. Co., 219 Ill.2d 430, 442"43, 302 Ill.Dec. 363, 848 N.E.2d 927 (2006) ("the plaintiff's interest in choosing the forum receives somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum" (internal quotation marks omitted)). Plaintiff argues that the transfer was an abuse of discretion because plaintiff was denied its choice of venue. However, when she filed the original complaint, Jaclyn resided in Kane County, which was also the site of the incident. Because Jaclyn was foreign to the chosen forum and because the action giving rise to the litigation did not occur there, her choice of forum is accorded less deference. | When a plaintiff chooses his home forum or the site of the accident or injury, the choice of forum is most likely convenient; however, when a plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's choice of forum is accorded less deference. | Is the plaintiffs choice of venue entitled to the same weight in all cases? | Venue - Memo 31 - TH.docx | ROSS-003311933-ROSS-003311935 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17010 | Mile, Ref. v. Randau, 166 Misc. 247 | 379v210 | "The right to carry on business" "be it called 'liberty' or 'property,' has … To interfere with this right without just cause is unlawful." Cornely v. Dugan (citing, the same of Kansas, 272 U.S. 306, 311, 47 S.Ct. 88, 87, 71 L.Ed. 248, quoted by Benedin…) And the value of such right does not inhere in the facts presented to the court in a plain dispute freedom to conduct a business, freedom to engage in business, each constituting a right to be protected against unjustified interference with either while will be prevented. Exchange Bakery & Restaurant, Inc., v. Rifkin, 245 N.Y. 260, 265, 157 N.E. 130. It has been universally accepted for many years, and recent amendment have not changed this, that "the individual cannot injure the property right of another by the means of threats or coercion…" The acts of this defendant, which produce the injury" "Auburn Draying Co. v. Wardell, 227 N.Y. 1 9 22, 124 N.E.77 128, 6 A.L.R. 361. It is difficult to operate or classify in these so-called unfair labor conduct which is lawful and which is unlawful. There may be isolated acts which cannot be interpreted as unlawful or wrong, but the cumulative effect of many of such acts may together create a situation which passes the bound of patience … Under the circumstances of this particular situation, the only object of which can be to impair the one upon whom pressure is exerted to "bend the pregnant fingers of his knee that thrift may follow fawning." | The right to carry on business is not unlawful value. To interfere with this right without just cause is unlawful. | Does the right to carry on business has value? | 001379.docx | LEGALEASE-00118373 LEGALEASE-00118374 | Condensed, SA, Sub 0.9 | | 0 | | | 1 | 1 |
| 17104 | Winslow Rock Unified Sch. Dist. v. Reeves, 858 F.3d 894 | 209v106 | The federal government may, however, limit a tribe's power either by treaty or by statute. See Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 18, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). In interpreting the extent of such limits, courts do not "lightly assume that Congress … intended to undermine Indian self-government." Michigan v. Bay Mills Indian Comty., ___ U.S. ___, 134 S.Ct. 2024, 2032, 188 L.Ed.2d 1071 (2014). Thus, "[c]ivil jurisdiction over … activities [of non-Indians on tribal land] presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." Iowa Mut. Ins. Co., 480 U.S. at 18, 107 S.Ct. 971. On the other hand, criminal jurisdiction over non-Indians for offenses committed on tribal land does not presumptively lie in the tribal courts. See Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 195, 202, 98 S.Ct. 1011, 1011, 55 L.Ed.2d 209 (1978). The Supreme Court has made clear that this distinction rests largely on the difference between Congress's traditional approach to tribal criminal jurisdiction, which Congress has historically limited, and its approach to tribal civil jurisdiction, which it has not so limited. See Nat'l Farmers, 471 U.S. at 855 n.15, 105 S.Ct. 2447. | Federal government may limit tribe's power either by treaty or by statute. | How does the federal government limit a tribe's power either by treaty or by statute. | Indians - Memo 11 - MS_62211.docx | ROSS-003107653-ROSS-003307656 | Condensed, SA 0.94 | | 0 | 1 | 1 | | |
| 17105 | Dauphin Cty. Indus. Dev. Auth. v. Pennsylvania Pub. Util. Comm'n, 123 A.3d 1124 | 145v1 | The Alternative Energy Act is focused on the electric utility's purchase of excess electricity from customer generators. The purpose of the Alternative Energy Act is to encourage growth and investment in renewable sources of energy. The Alternative Energy Act achieves this goal by requiring that "[e]xcess generation from net metered customer-generators shall receive full retail value for all energy produced on an annual basis." 73 P.S. § 1648.5 (emphasis added). Moreover, the statute tasks the Commission with developing "technical and net metering interconnection rules for customer-generators intending to operate renewable energy generation in parallel with the electric utility grid." 73 Pa. § 1648. | The purpose of the Alternative Energy Act is to encourage growth and investment in renewable sources of energy. 73 P.S. § 1648.1-1648.8. | What is the purpose of Alternative Energy Act? | Electricity - Memo 4 - RM.docx | ROSS-003286177-ROSS-003286178 | SA, Sub | 0.81 | 0 | | 1 | 1 | |
| 17106 | Nat'l Bd. Bank of Chicago v. Citizens Utilities Co. of Illinois, 150 Ill. App. 3d 992 | 315v34 | Fixtures are by definition real property because they are incorporated in or attached to the realty. (Wolf v. Electro Spark & Maintenance Co. v. Chicago Title & Trust Co. (1938), 368 Ill. 482, 14 N.E.2d 895.) Chattels become real estate when annexed to the freehold when such circumstances that it appears clearly from an inspection of the property itself, taking into consideration the character of the annexation, the nature and adaptation of the articles annexed to the uses and purposes of the freehold at the time of the annexation, and the relation of the annexing party to the property so annexed as to make the article a permanent annexation to the freehold was intended. (Galena Iron Works Co. v. McDonald (1911), 160 Ill.App. 211, 19 Ill. Note Law and Practice. Fixtures" 2-3. The water and sewer mains are normally considered real property as shown by the fact they are subject to the imposition of mechanic's liens. (Berry v. Blackard Construction Co. (1973), 13 Ill.App.3d 768, 300 N.E.2d 627), although such may be imposed only on realty. Dual Temp Installations, Inc. v. Chicago Title & Trust Co. (1976), 41 Ill.App.3d 415, 354 N.E.2d 131. Items to which defend … v. Randall v. Baird Land Developers, Inc. (1971), 130 Ill.App.2d 378, 266 N.E.2d 149.85, 6 Ill.Dec 379, 41, 82, | Normally, water and sewer mains are considered real property. | Is water and sewer mains are considered as real property? | Property - Memo 34 - RM.docx | ROSS-003283927-ROSS-003283928 | Condensed, SA, Sub 0.95 | | 1 | 1 | | 1 | 1 |
| 17107 | Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan., 347 U.S. 483 | 92v327B(1) | Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms. | The opportunity of an education, where the state has undertaken to provide it, is a right which must be made available to all on equal terms. U.S.C.A.Const. Amend. 14. | Is education a core function of the state government? | Education - Memo 1 - JS.docx | LEGALEASE-00005952 LEGALEASE-00005953 | Condensed, SA, Sub 0.81 | | 0 | 1 | 1 | 1 | 1 |

3011

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17108 | Bidau v. Bailey, 566 F. Supp. 296 | 237+1 | The gravamen of an action for defamation is the damage to one's reputation in the community caused by the defamatory statement(s). | The gravamen of an action for defamation is the damage to one's reputation in the community caused by the defamatory statements. | What is the gravamen of an action for defamation? | 001314.docx | LEGALEASE 00118495-LEGALEASE 00118500 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17109 | Home Builders Ass'n of Greater Chicago v. City of Chicago, 213 F. Supp. 3d 1019 | 148+2.1 | Mere diminution in the value of property, however serious, is insufficient to demonstrate a taking. U.S. Const. Amend. 5. | The allegation that the ARO will have some impact on the property value is not sufficient to allege a regulatory taking. "Mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." | Is diminution in the value of property, however serious, is insufficient to demonstrate a taking? | 001864.docx | LEGALEASE 00118669-LEGALEASE 00118670 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17110 | Smith v. Luther, 979 F. Supp. 601 | 249+47 | Conclusory allegation that special agent of Mississippi State Tax Commission and colleague "further participated in prosecuting" plaintiff was insufficient to state a claim for malicious prosecution. | Plaintiff's only allegation against Sotrack is that he and Luther "further participated in prosecuting them unfounded charges against Mr. Smith at trial." This conclusory allegation fails to state a claim for malicious prosecution, and therefore Sotrack, too, should be dismissed as a defendant. | Is conclusory allegation sufficient to state a claim of malicious prosecution? | Malicious Prosecution - Memo 37 - ANG.docx | ROSS-003285218-ROSS-003285219 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 17111 | Hornstein v. Wolf, 109 A.D.2d 129 | 249+50 | Conclusory, unsubstantiated allegations of malice were not sufficient to state claim of malicious prosecution. | Not for plaintiff sufficiently alleged that appellant acted with malice, defined a "conscious falsity" (Munro v. City of New York, 136 N.Y.2d 6, 9, ... ) As such conclusory allegation fails to state a claim of malicious prosecution. | Is conclusory allegation sufficient to state a claim of malicious prosecution? | 001497.docx | LEGALEASE 00118657-LEGALEASE 00118658 | Condensed, Order, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17112 | Tennant v. Chase Home Fin., 187 So. 3d 1172 | 302+34(1) | Under modern rules of civil procedure, pleadings are to be liberally construed in favor of the pleader. Rules Civ. Proc., Rule 8. | The Tennants stated four counterclaims: trespass to real estate, trespass to chattel, invasion of privacy, and negligence. "The Tennants' claims for trespass to chattel claim and the damage to chattel claim are actually the same claim." | How are pleadings construed under the modern pleading rules? | 001505.docx | LEGALEASE 00118562-LEGALEASE 00118564 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,973 | 23,876 | 9,029 |
| 17113 | In Re Mountainside Area Joint Sanitary Auth., 146 A.3d 553 | 148v2.1 | The Pennsylvania Constitution provides that private property cannot be taken for public use without just compensation. Pa. Const. art. I, 10. "[A] de facto taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of its property." In re De Facto Condemnation and Taking of Lands of WBF Associates, L.P., ex rel. Lehigh-Northampton Airport Authority, 588 Pa. 242, 903 A.2d 1192, 1199 (2006). A property owner carries a heavy burden of proof in de facto condemnation proceedings and must show that (1) the condemnor has the power to condemn the land under eminent domain procedures; (2) that exceptional circumstances have substantially deprived him of the use and enjoyment of his property; and (3) the damages sustained were the immediate, necessary, and unavoidable consequences of the exercise of the eminent domain power. Genter v. Blair County Convention and Sports Facilities Authority, 805 A.2d 51, 56 (Pa. Cmwlth. 2002). Finally, when determining whether a de facto taking has occurred, we focus on the governmental action in question. Appeal of Jacobs, 55 Pa.Cmwlth. 142, 423 A.2d 442, 443 (1980). | When determining whether a de facto taking has occurred, court focuses on the governmental action in question | Does occurrence of a de facto taking focus on the governmental action in question? | 001448.docx | LEGALEASE 00118905-LEGALEASE 00118906 | Condensed, SA, Sub/O 0.91 | | 0 | 1 | | 1 | 1 |
| 17114 | Maylefski v. National Transp. Safety Bd., S.W.2d 185 | 21Hk+783 | One appellate court, however, has held that Sabine Pilot encompasses a claim by an employee who attempts to determine if certain actions the ee is required to do are illegal. See Johnston, 776 S.W.2d at 771. In Johnston, the plaintiff was instructed by his employer to pull off a sticker on a package "Michigan gas." The plaintiff thought that this action was illegal and that he could subject himself to criminal liability by a mislabeled shipping documents. Consequently, she sought advice from the Bureau of Alcohol, Tobacco & Firearms. Id. at 769. She was terminated several days later and sued her former employer for retaliating against her for her inquiry. Id. The trial court granted summary judgment for the employer, but the appellate court reversed the judgment, holding that an action under Sabine Pilot, an employee cannot discharge an employee who in good faith attempts to find out if an act he is required to do is illegal. Id. at 771. The appellate court reasoned that if the public policy concerns enunciated in Sabine Pilot dictate that an employer cannot coerce an employee to commit criminal acts, those concerns also protect the employee against the discharge of an employee for inquiring into the legality of the act cd. There is no reason for the employee to not have extended Sabine Pilot in this matter. | Exception to at-will employment doctrine that recognizes wrongful termination action against employer who discharges employee for making good faith attempts to determine legality of his actions did not apply to firms employee's wrongful termination action against engineering company, where employee alleged that he was laid off solely for giving up pursuit of criminal claims against another employee's use of word "fictitious" in connection with financial reports that were required under contract with National Aeronautics and Space Administration (NASA), and employee did not make as the legality of actions he was asked to do for employer. | Does the public policy prohibit the discharge of an employee who in good faith attempts to find out if the requested act is illegal? | 001424.docx | LEGALEASE 00118941-LEGALEASE 00118942 | Condensed, SA, Sub 0.48 | | 0 | 1 | | 1 | 1 |
| 17115 | Vodis v. United States, 112 Fed. Cl. 204 | 148v2.1 | To succeed under the Fifth Amendment takings clause, a plaintiff must show that the government took a private property interest for public use without just compensation. See Adams v. United States, 391 F.3d 1212, 1218 (Fed.Cir.2004), cert. denied, 546 U.S. 811, 126 S.Ct. 330, 163 L.Ed.2d 44 (2005); Arbelaez v. United States, 94 Fed.Cl. 753, 762 (2010); Gallegos v. United States, 72 Fed.Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377-78 (Fed.Cir.), cert. denied, 555 U.S. 1045, 129 S.Ct. 631, 172 L.Ed.2d 608 (2008). The government must be operating in its sovereign, rather than its proprietary capacity, when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed.Cir.2008). | The government must be operating in its sovereign, rather than its proprietary capacity, when it initiates a taking. U.S. Const. Amend. 5. | Under what capacity does the government act when it initiates a taking? | Eminent Domain ROSS-74-VP.docx | ROSS 000285225-ROSS-000285226 | SA, Sub | 0.84 | | | 1 | 1 | 1 |
| 17116 | McSwtards v Entergy Mississippi, 793 So. 2d 866 | 317Hk+101 | McFarland argues the facts in this case are sufficient to impose a duty upon Entergy. Though a utility company only bears a duty to eliminate a foreseeable danger," Mississ. Power & Light v. Lumpkin, 725 So.2d 721, 728-29 (Miss.1998). "In a typical case involving electrical wire, harm caused to individuals who come into contact with the wire is foreseeable. Here, they did not have knowledge that this particular line was sagging and caused a potential hazard to drivers. The Court has stated that 'there is a duty on a utility company [not] to take an action to be reasonable.' See in McFarland Roberts v. Miss. Power & Light, 193 Miss. 627, 10 So.2d 542, 543 (1942). Whether Entergy owed a duty to McFarland turns on the question of whether Entergy had notice of the dangerous condition. | Public utility companies only have a duty to eliminate foreseeable danger. | Do public utility companies have a duty to eliminate foreseeable danger? | Public utilities - Memo 17 RM.docx | ROSS-000311264-ROSS-000311265 | Condensed, SA, Sub 0.89 | | 0 | 1 | | 1 | 1 |
| 17117 | Cassidy v. State, 85 S.So. 2d 594 | 342v26 | Cassidy claims that the pocketknife he carried could not have been a deadly weapon. The jury was instructed that "[a] weapon is a "deadly weapon" in a case where it was used or was likely to produce death or great bodily harm." Cassidy displayed the open pocketknife to the store clerk and threatened to use it against her. See Turner v. State, 74 So.2d 777 (Fla. 1st DCA 1999) (affirming conviction for robbery with a deadly weapon where the defendant held the open blade of a pocketknife to the victim's throat). We conclude that there was sufficient evidence to make a jury question whether the pocketknife wielded by defendant in robbery was deadly weapon, to support conviction for robbery with a deadly weapon. When State, 705 So.2d 1045, 1047 (Fla.1997) (whether a particular weapon is in fact deadly is a jury question). | There was sufficient evidence to make a jury question whether pocketknife wielded by defendant in robbery was deadly weapon, to support conviction for robbery with a deadly weapon, where evidence indicated displayed open pocketknife to store clerk and threatened to use her threat. | Can a pocketknife be considered a deadly weapon? | 001721.docx | LEGALEASE 00118876-LEGALEASE 00118877 | Condensed, SA, Sub 0.65 | | | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17118 | State v. Myers, 171 W. Va. 277 | 203+1174 | We note that evidence that proves one charge of involuntary manslaughter in this case is not sufficient to prove the second. In any case of homicide there must be proof of the identity of the deceased and the causation of death. In such a case as this, a defendant's proof that one of the victims died of a heart attack prior to the collision would be a complete defense to the charge of involuntary manslaughter. This difference in proof between the two charges, permits multiple punishment in such a case. What we have described is essentially the "same evidence" test, see Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), applied to the double jeopardy bar against multiple punishments for the same offense. Therefore, in consonance with our holding in State ex rel. Johnson v. Hamilton, 164 W.Va. 682, 266 S.E.2d 125, cert. denied, 449 U.S. 1036, 101 S.Ct. 613, 66 L.Ed.2d 498 (1980), and State ex rel. Watson v. Ferguson, supra, we hold today that where there is legislative intent to permit multiple punishments arising from the same act, multiple punishments are permissible as long as each charge meriting punishment requires at least one piece of evidence that is not needed to prove other charges. Applying this rule to the case before us, we hold that when charged under either the negligent homicide statute W.Va.Code, 17C-5-1 [1981], or the involuntary manslaughter statute, W.Va.Code, 61-2-5 [1923], for multiple deaths resulting from a single act, a defendant may receive as many consecutive sentences as there were deaths. | In any case of homicide, there must be proof of the identity of the deceased and the causation of death. | Is proof of causation of death required in a case of homicide? | Homicide - Memo 43 - TH.docx | ROSS-003284827-ROSS-003284829 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 17119 | Elk v. United States, 87 Fed. Cl. 70 | 209+121 | A treaty with an Indian tribe is a contract and should be interpreted to give effect to the intent of the signatories. Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 675, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979) ("A treaty ... is essentially a contract between two sovereign nations."); Santovincenzo v. Egan, 284 U.S. 30, 40, 52 S.Ct. 81, 76 L.Ed. 151 (1931); Tsosie v. United States, 825 F.2d 393, 397 (Fed.Cir.1987). More specifically, in Hebah I, the Court of Claims held that the 1868 Treaty's "bad men" provision created an individual third-party contractual right through which an individual claimant could directly pursue a suit against the United States. Hebah I, 428 F.2d at 1338; see also Chippewa Cree Tribe of Rocky Boy's Reservation v. United States, 73 Fed.Cl. 154, 159 (2006). While principles of contract interpretation aid in discerning the intent of treaty partners, see Air France v. Saks, 470 U.S. 392, 397, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), those principles are not applied to treaties in precisely the same way they are used to construe private contracts. Thus, the Supreme Court has made clear that while the court should look to the parties' "choice of words," it should also consider the "larger context that frames the Treaty," including its "history, purpose and negotiations." Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 196"203, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999); see also Medellin v. Texas, 552 U.S. 491, 128 S.Ct. 1346, 1357, 170 L.Ed.2d 190 (2008); El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 167, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). In this fashion, treaties are construed "to give effect to the terms as the Indians themselves would have understood them." Minnesota, 526 U.S. at 196, 119 S.Ct. 1187; Choctaw Nation v. Oklahoma, 397 U.S. 620, 631, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1970). Owing to the special relationship between the United States and the tribes, "Indian treaties are to be interpreted liberally in favor of the | Treaty with Indian tribe is a contract and should be interpreted to give effect to intent of signatories. | Is a treaty with an Indian tribe a contract? | Indians - Memo 28 - TH.doc | LEGALEASE-00006862-LEGALEASE-00006863 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 17120 | Elk v. United States, 87 Fed. Cl. 70 | 209+121 | A treaty with an Indian tribe is a contract and should be interpreted to give effect to the intent of the signatories. Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 675, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979) ("A treaty ... is essentially a contract between two sovereign nations."); Santovincenzo v. Egan, 284 U.S. 30, 40, 52 S.Ct. 81, 76 L.Ed. 151 (1931); Tsosie v. United States, 825 F.2d 393, 397 (Fed.Cir.1987). More specifically, in Hebah I, the Court of Claims held that the 1868 Treaty's "bad men" provision created an individual third-party contractual right through which an individual claimant could directly pursue a suit against the United States. Hebah I, 428 F.2d at 1338; see also Chippewa Cree Tribe of Rocky Boy's Reservation v. United States, 73 Fed.Cl. 154, 159 (2006). While principles of contract interpretation aid in discerning the intent of treaty partners, see Air France v. Saks, 470 U.S. 392, 397, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), those principles are not applied to treaties in precisely the same way they are used to construe private contracts. Thus, the Supreme Court has made clear that while the court should look to the parties' "choice of words," it should also consider the "larger context that frames the Treaty," including its "history, purpose and negotiations." Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 196"203, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999); see also Medellin v. Texas, 552 U.S. 491, 128 S.Ct. 1346, 1357, 170 L.Ed.2d 190 (2008); El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 167, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). In this fashion, treaties are construed "to give effect to the terms as the Indians themselves would have understood them." Minnesota, 526 U.S. at 196, 119 S.Ct. 1187; Choctaw Nation v. Oklahoma, 397 U.S. 620, 631, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1970). Owing to the special relationship between the United States and the tribes, "Indian treaties are to be interpreted liberally in favor of the | Treaty with Indian tribe is a contract and should be interpreted to give effect to intent of signatories. | How should a treaty between the United States and an Indian tribe be interpreted? | Indians - Memo 32 - TH.docx | LEGALEASE-00006870-LEGALEASE-00006871 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17121 | Leibos v. Celebrity Cruises, 426 F. Supp. 2d 1298 | 25T+146 | This inquiry hinges on whether the agreement between the seamen and the employer, whether contractual or not, is considered commercial. See Bautista, 396 F.3d at 1294. The United States Supreme Court, in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), established that employment contracts qualify a "contracts evidencing a transaction involving interstate commerce" under the FAA. Id. at 113, 121 S.Ct. 1302. Therefore, as a general matter, the FAA covers arbitration agreements in employment contracts. Id. While the Supreme Court reaffirmed that "§ 1 of the FAA exempts contracts of employment of seamen from the general rule, it addressed the likely reasons for the exclusion by Congress: By the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employers (citations omitted) ... It is reasonable to assume that Congress excluded "seamen" ... from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers. | Provision of Federal Arbitration Act (FAA) stating that contracts of employment of seamen are not covered by the Act prevents arbitration clauses in employment contracts between U.S. seafarers and their U.S. employers from being enforceable. 9 U.S.C.A. § 1. | Does the Federal Arbitration Act (FAA) cover arbitration provisions contained in employment contracts? | 003154.docx | USAGEASE 00150504-USAGEASE 00150506 | Condensed, SA, Sub 0.77 | | 839 | 1 | | 1 | 1 |
| 17122 | Buckeye Check Cashing v. Cardegna, 546 U.S. 440 | 25T+134(3) | In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), we addressed the question of who must decide whether a claim of fraud in the inducement of the entire contract was "a 'whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." Id., at 402, 87 S.Ct. 1801. Guided by " 4 of the FAA, we held that "if the claim is fraud in the inducement of the arbitration clause itself"—an issue which goes to the making of the agreement to arbitrate the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id., at 403-404, 87 S.Ct. 1801 (internal quotation marks and footnote omitted). We rejected the view that the question of "severability" was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court. See id., at 400, 402 "403, 87 S.Ct. 1801. | Challenges to the validity of arbitration agreements that are made "upon such grounds as exist at law or in equity for the revocation of any contract," within meaning of Federal Arbitration Act provision stating that arbitration provisions are valid, irrevocable, and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract," include specific challenges to the validity of the agreement to arbitrate, as well as challenges to the entire contract, either on a ground that directly affects the entire agreement, such as fraudulent inducement, or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. 9 U.S.C.A. § 2. | Do courts or arbitrators adjudicate claims of fraud in the inducement? | 003164.docx | USAGEASE 00193124-USAGEASE 00193125 | Condensed, SA, Sub 0.36 | | 0 | 1 | 1 | 1 | 1 |
| 17123 | Regions Bank v. Britt, 642 F. Supp.2d 584 | 25T+134 | Contrary to Britt's suggestion, the reach of the FAA is not limited to transactions "involving commerce." Instead, the Supreme Court has interpreted the term "involving commerce" in the FAA "as the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power[.]" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-58, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 1414 (2003), and held that "[b]ecause the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" that is, 'within the flow of interstate commerce,'" id. (citations omitted). Thus, in Alafabco, the Court held that the required nexus was present notwithstanding the absence of proof that any "portion of the restructured debt was actually attributable to interstate transactions" or that the loans "originated out of state" or that "the restructured debt was inseparable from any out-of-state projects." | Bank loan affected commerce such that arbitration clause in loan terms was subject to Federal Arbitration Act (FAA) as long as arbitration of customer's claims against bank, even though customer claimed transaction was wholly intrastate, bank involved electronic communications and funds crossing state lines, and commercial lending, taken in the aggregate, had broad impact on national economy. 9 U.S.C.A. § 2. | What are transactions in commerce under the Federal Arbitration Act? | 003772.docx | USAGEASE 00193131-USAGEASE 00193132 | Condensed, SA, Sub 0.59 | | 0 | 1 | 1 | | 1 |
| 17124 | Hayes v. State, 341 S.W.3d 417 | 401+17 | Venue is either local at transitory, and refers to the "locality in which a court of competent jurisdiction may adjudicate an action." Hawkins v. TN Dept. of Correction, 127 S.W.3d 749, 753 (Tenn.Ct.App.2002). A civil action is either "local" or "transitory" action. Howse v. Campbell, M/1997/03807 COR.R0.V.V. 2000, WL 456506 at *4 (Tenn.Ct.App.2001). A transitory cause of action is one where the cause arose "where a plaintiff's particular county in which they must be brought." Hawkins, 127 S.W.3d at 753. On the other hand, actions that are "local" are those that can only be brought in the county where the cause of action has been localized by statute. Id., Howse, 2001 WL 693266 at *4. When venue is localized by statute, it becomes jurisdictional and is part of the county's authority to adjudicate the case before it. Hawkins, 127 S.W.3d at 754. | Party cannot waive or consent to venue when a transitory action is localized by statute. | Can one waive or consent to venue when a transitory action is localized by statute? | Venue - Memo 56 - AAG.docx | KOSS 0002959594-KOSS-0002999595 | Condensed, SA, Sub 0.88 | | 0 | 1 | | 1 | 1 |
| 17125 | Stow Mun. Elec. Dep't v. Dep't of Pub. Utilities, 426 Mass. 341 | 145+11.3(4) | Stranded costs are prudently incurred fixed costs, recovery of which is jeopardized by the transition of the industry from cost-based regulation to competition. See Mkt., supra at 858, n.4, 684 N.E.2d 585. Stranded costs can include existing contractual obligations for power purchases above current market rates. Id. Any company in any industry may, of course, seek to recover its fixed costs by charging more for its products. But utility companies, under monopoly regulation, the department approves rates based on the cost of service. As the electric utility industry becomes competitive, the companies set the rates themselves. New utilities set prices that are lower than the incumbent's because the rate service provide better service or operate more efficiently, but because of the incumbent's fixed costs, which cannot be recovered when competition drives rates down. | Electric utility's "stranded costs" can include existing contractual obligations for power purchases above current market rates. | What are Stranded costs? | Electricity - Memo 11 - JS.docx | KOSS-00018230.0 KOSS-00018230.4 | SA, Sub | 0.88 | | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17126 | State v. Angulo, 148 Wash. App. 642 | 110>563 | Just as evidence of death is required for the corpus delicti of homicide, sexual intercourse or penetration has been recognized as the "central non-corpus"? In the body of the crime to which the term corpus delicti refers… (long text) | "Prima facie," in the context of the "corpus delicti rule," appears to mean that the evidence must proponderate in favor of the existence of a criminal act or agency; if the evidence could equally point to both a criminal or non-criminal cause, then the state has not met its burden of establishing the corpus delicti. | What is the corpus delicti of incest? | 00261.docx | LEGAEASE-00105257; LEGAEASE-00105258 | Condensed, SA, Sub 0.82 | 0.82 | 0 | | 1 | |
| 17127 | Kaplan v. Inc. Vill. of Lynbrook, 12 A.D.3d 410 | 386>10 | The plaintiffs also failed to raise a triable issue of fact with respect to their sixth cause of action alleging trespass. It is well settled that "a person entering upon the land of another without permission… (long text) | Person entering upon the land of another without permission, whether innocently or by mistake, is a trespasser. | Can a trespass occur by mistake? | 00310.docx | LEGAEASE-00109206; LEGAEASE-00109209 | Condensed, SA | 0.93 | 0 | | 1 | |
| 17128 | Gill v. LIN, 59 S. Supp. 2d 1388 | 386>2 | Defendants argue it is a question of fact whether they intended to cause a release of silt and clay. This argument misconstrues the law of trespass. The law does not require that the invasion or trespass itself be intentional; it is sufficient that the act… (long text) | Under Washington law, a trespass claim does not require that the invasion or trespass itself be intentional, and it is sufficient that the act resulting in the trespass is intentional. | Does the law require that the invasion or trespass itself be intentional? | Trespass - Memo 89-5.docx | ROSS-003284552-ROSS-003284553 | Condensed, SA, Sub 0.54 | 0.54 | 0 | | 1 | |
| 17129 | ASA Investerings Partnership v. C.I.R., 7:3d 505 | 223>3913 | Petitioner views Moline as establishing a two-part test, under which a taxpayer is entitled to chose the tax form of a transaction so long as… (long text) | Partnership, through which corporation allocated capital gains to foreign entities, was not a bona fide partnership for tax purposes; there was no genuine "business activity," was tax avoidance, foreign entities were controlled by foreign bank, and any risks inherent to foreign bank's investments were de minimis. | Does an activity whose sole purpose is tax avoidance considered a "business activity"? | Partnership - Memo 7 1.78.docx | ROSS-002281752-ROSS-002281753 | Condensed, SA, Sub 0.78 | 0.78 | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,079 |
| 17130 | J.E.S. Realty v. City of Nashua, 164 N.H. 238 | 149-2.1 | While "[i]nverse condemnation may be effected through either physical act or regulation," Pennichuck Corp. v. City of Nashua, 152 N.H. 729, 731, 886 A.2d 1018 (2005), "[t]he right to recover for inverse condemnation... is one of degree and its resolution is governed by no set test. J.E.S. Realty... we are not... compensable taking has occurred. Id. | When determining whether a governmental taking has occurred, the question is one of degree and its resolution is governed by no set test. | Does the facts and circumstances of each case determine a taking? | 001896.docx | LEGALEASE-00135664 LEGALEASE-00135665 | Condensed, SA 0.83 | 0.83 | 0 | | | | 1 |
| 17131 | Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, 170 F.3d 1 | 170B+1053 | Similarly, the question of the scope of an arbitration agreement under the FAA is a matter not just of state law, but of general federal arbitration law. 9 U.S.C.A. § 1 et seq... | Question of scope of arbitration agreement under Federal Arbitration Act (FAA) is neither not just of state law, but of general federal arbitration law: 9 U.S.C.A. § 1 et seq. | How do courts determine the scope of an arbitration agreement? | 002811.docx | LEGALEASE-00135746 LEGALEASE-00135747 | Condensed, SA, Sub 0.75 | 0.75 | 0 | | | | 1 |
| 17132 | Selby v. State, 76 Md. App. 201 | 203+53 | In Maryland, murder is a common law crime, the proof of which requires a showing that a criminally responsible human being, with malice, killed another human being. Campbell v. State, 293 Md. 438, 441-42, 444 A.2d 1034 (1982)... 565 A.2d 110, 111 (1989). | Murder is common law crime, proof of which requires showing that criminally responsible human being, with malice, killed another human being. | Is murder a common law crime? | Homicide - Memo 68 RK.docx | ROSS-003284157+ROSS-003284159 | Condensed, SA | 0.92 | 0 | 1 | | | 1 |
| 17133 | People v. Duszkiewicz, 27 Ill.2d 257 | 352H+2.1(1) | Force and lack of consent are essential elements of the charge of rape upon which the defendant was convicted...The common denominator is the element of unlawful carnal knowledge. | The common denominator of forcible rape and incest is element of unlawful carnal knowledge. | What is the common denominator of forcible rape and incest? | Incest - Memo 61 JS.docx | ROSS-003284182 | Condensed, SA, Sub 0.79 | 0.79 | 0 | | | 1 | 1 |
| 17134 | Bucca v. State, 43 N.J. Super. 315 | 207+5 | If an uncle and niece marry in New Jersey, they are guilty of the crime of incest...together commit fornication or adultery, are guilty of incest, and each shall be punished...not more than $2,000, or by imprisonment... | Where uncle, who was New Jersey resident, married his niece, who was daughter of uncle's sister, in Italy under dispensation authorized by Italian law...entitled to full recognition of such Italian marriage under New Jersey law... | Is marriage between uncle and niece a crime of incest? | 000078.docx | LEGALEASE-00108979 LEGALEASE-00108980 | Condensed, SA, Sub 0.07 | 0.07 | 0 | | | | 1 |
| 17135 | Robinson v. Bros, 894 S.W.2d 525 | 213+3(62.6) | The statute, however, plainly requires written notice of an accident and resulting injuries, but also written notice of a claim. The legislature is presumed to intend what it says and ... construe it according to its ordinary meaning. Tex.Gov't Code Ann. ... § 312.002(a) (West 1988); Hopkins v. Spring Indep. Sch. Dist., 736 S.W.2d 617, 619 (Tex.1987). The word "claim" ordinarily means a demand for compensation or an assertion of a right to be paid. Although the accident report noted that plaintiff and co-worker had been injured, it was not notice of a demand for payment or compensation by Brice or on Brice's behalf, and thus was not notice of a claim. | Term "claim," as used in provision of prejudgment interest statute which requires plaintiff to provide written notice of claim in order for claim for prejudgment interest to accrue, ordinarily means a demand for compensation or an assertion of right to be paid. Vernon's Ann.Texas Civ.St. art. 5069-1.05, § 6(a). | What is a "claim"? | Action - Memo 35 - ANG.docx | ROSS-003284888+ROSS-003284899 | Condensed, SA, Sub 0.58 | 0.58 | 0 | | | 1 | 1 |

3017

Appendix D

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | 839 | 15,564 | 14,873 | 22,876 | 9,073 |
| 17136 | Kisor v. R.W. Chesterton Co., 20 Vo. 11 J | 13+1 | The second partrent principles have explained in 1885 when the General Assembly added subsection to this Code... | A "right of action" is the remedial right accorded to a person to enforce a cause of action and arises only where a person's rights are infringed; consequently, a right of action cannot arise until there is a cause of action. | "When does a "right of action" arise?" | 0036b6.docx | LEGALEAGL-00130301 LEGALEAGL-00130303 | Condensed, SA, 0.8 | | 0 | 1 | 0 | 1 | 1 |
| 17137 | Parker v. Town of Milton, 169 Vt. 74 | 13+13 | Vermont has adopted a three-part test to determine whether a plaintiff has standing. A plaintiff must, at a minimum, show (1) injury in fact, (2) causation, and (3) redressability... | To have standing, plaintiff must, at minimum, show (1) injury in fact, (2) causation, and (3) redressability. | What must a plaintiff show for standing to bring a case? | 0034b5.docx | LEGALEAGL-00130306 LEGALEAGL-00130307 | Condensed, SA 0.85 | | 0 | 1 | 0 | 1 | 1 |
| 17138 | Pawley v. Stolz, 2175o,3d 128 | 44H+1291 | When pro se parties must be afforded a genuine and adequate opportunity to exercise their constitutional right of access to the courts, that right is not unfettered. No party, whether represented or pro se, has the "right" to file frivolous claims... | No party, whether represented or pro se, has the "right" to file frivolous claims. | Does a party have the right to file a frivolous claim? | 0029c8.docx | LEGALEAGL-00130123 LEGALEAGL-00130124 | Condensed, SA 0.92 | | 0 | 1 | 0 | 1 | 1 |
| 17139 | Chamber of Commerce of U.S. v. N.L.R.B., 879 F. Supp. 2d 18 | 15A+1062 | As a preliminary matter, while electronic voting is relatively new, the idea that parties may be called together to arbitrate a dispute is not new... | Quorum of administrative agency acting per matter need not be physically present together at any particular time. | "For a board to conduct its proceedings, is it required that the forum needs to be physically present at any one time?" | 0033c6.docx | LEGALEAGL-00130176 LEGALEAGL-00130177 | Condensed, SA, Sub 0.83 | | 0 | 1 | 1 | 1 | 1 |
| 17140 | Bodas Roofing Co. v. Sunchase/V Homeowners Ass'n, 494 S.W.3d 231 | 30+14.15 | ...Although Plaintiffs allege that there was a valid Federal Arbitration Act (FAA) did not preempt appropriate relations between contractor and condominium homeowner association to submit their dispute over payment to arbitration... | When does the Federal Arbitration Act (FAA) supersede state laws regarding primary jurisdiction? | 0029c8.docx | LEGALEAGL-00130087 LEGALEAGL-00130088 | Condensed, SA, Sub 0.67 | | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WVHS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17141 | Luster v. Retail Credit Co., 575 F.2d 609 | 237v119 | In a related case plaintiff contends that the trial court erred in allowing the plaintiff to testify that he suffered humiliation and embarrassment because he feared that the report was being circulated to unknown persons. Defendant states that there was no evidence produced that the report was so circulated. In a defamation case mental anguish and embarrassment are proper elements of damages. See Bantam v. Walthall, 215 Ark. 582, 235 S.W.2d 341 [1949]. Whether such mental anguish was a natural and probable consequence of the actions of defendant was a jury issue. The fact that the report was contained in the files of defendant, a large supplier of commercial credit reports, coupled with the testimony by defendant that there were additional reports are requested, such files are used as a source for the re-reintegrators, provide sufficient evidence from which the jury could properly find that plaintiff's mental anguish and embarrassment were a natural and probable consequence of the release of the credit report. | In defamation case mental anguish and embarrassment are proper elements of damages. | Can mental anguish be an element of damages in defamation? | 002911.docx | LEGALEASE-00193885-LEGALEASE-00193886 | Condensed, SA | 0.92 | 0 | 1 | | 1 | |
| 17142 | Com. v. De Peti, 302 Pa. 229 | 203v520 | In all those cases the court emphasized that in fixing the penalty for first degree murder a jury is given a discretion which the jury alone may exercise. But by the character of the crime as by the character of the criminal and that if his record showed that he was an habitual offender against society he would not be entitled to any clemency, merciful exercise of the jury's prerogative of imprisonment. We find nowhere in the opinion of this court discussing the Act of 1925 any intimation to the accomplished misconduct of twice distinct murders in the first degree. Every willful and deliberate and premeditated murder is murder in the first degree, but murder in the first degree murder. It is now sometimes difficult for juries to comprehend the difference between first degree murder and second degree murder ... it would certainly add to their confusion if the court was obliged to tell the jury that after it decided the defendant guilty of murder in the first degree, it should then decide whether that "murder in the first degree" was murder in the first degree of the first degree, or murder in the first degree of the second degree, for the purpose of fixing the appropriate penalty. | Every willful and deliberate and premeditated murder is a "heinous offense." | "Is every willful, deliberate and premeditated murder a heinous offense?" | 003174.docx | LEGALEASE-00120485-LEGALEASE-00120486 | Condensed, SA | 0.94 | 0 | | 0 | 1 | |
| 17143 | In re Credithrift Corp., 283 B.R. 826 | 227v112(2) | In Ohio, it has been held that "[a] cause of action for defamation consists of five elements: (1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff." Gosden v. Louis, 116 Ohio App.3d 195, 206, 687 N.E.2d 481, 488 (1996). The plaintiff in a defamation suit must prove the fourth element, that of fault, by clear and convincing evidence. Lansdowne v. Beacon Journal Pub. Co., 32 Ohio St.3d at 180-181, 512 N.E.2d at 987-985. "For all prima facie elements [of defamation], including the fourth element of fault, the proper burden of proof is the preponderance standard." Davis v. Jacobs, 126 Ohio App.3d 580, 585, 710 N.E.2d 1185, 1189 (1998) (citing Embers Supper Club, Inc. v. Scripps-Howard Broadcasting Co., 9 Ohio St.3d at 24*25, 457 N.E.2d at 1362 n.1187). "Fault is established by determining whether the defendant acted reasonably in attempting to discover the truth or falsity or defamatory character of the publication." * Franks v. The Lima News, 109 Ohio App.3d 408, 411, 672 N.E.2d 343 (1996), quoting Embers, 9 Ohio St.3d at 25, 457 N.E.2d at 1367. This Court has already divided credit must of fault in connection with the plaintiff's claim under the FCRA, it is equally clear that Krauss has failed to prove fault according to the Ohio standard of clear and convincing evidence | Under Ohio law, plaintiff in defamation suit must prove fault on part of defendant in publishing defamatory statement by clear and convincing evidence. | Is the plaintiff required to prove fault in a defamation claim? | 003314.docx | LEGALEASE-00120599-LEGALEASE-00120601 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | | |
| 17144 | Log Creek v. Kessler, 717 F. Supp. 2d 1239 | 237v4 | Florida law ordinarily requires a defamation plaintiff to prove fault. See Jews for Jesus, Inc. v. Rapp, 997 So.2d 1098, 1106 (Fla.2008) (citing Restatement (Second) of Torts 558A, 580A, 580B, including the requirement to prove fault). Thomas v. Jacksonville Television, Inc., 699 So.2d 800, 803*04 (Fla. 1st DCA 1997) (same); see also Brown v. Suncoast Beverage Sales, LLP, No. 2:09-CV-498, 2010 WL 550875, at *2 (M.D.Fla. Feb. 12, 2010) (listing the elements of defamation, including fault); Johnson v. Clark, 484 F.Supp.2d 4, 6-7 (M.D.Fla. 2007) (citing elements of defamation, including fault), Axiom Worldwide, Inc. v. Becerra, No. 8:08cv-1918, 2009 WL 1347398, at *7 (M.D. Fla. May 13, 2009) (same). But see In re Standard Jury Instructions in Civil Cases, 35 So.3d 666, 716*716 (Fla. 2010). | Florida law ordinarily requires a defamation plaintiff to prove fault. | Is the plaintiff required to prove fault in a defamation claim? | Libel and Slander - Memo 148 - RK.docx | ROSS-003287058 ROSS-003287010 | SA, Sub | 0.85 | 0 | | 1 | 1 | |
| 17145 | Hillner v. Chastain, 75 S.W.3d 315 | 289v425 | A partnership agreement may be implied from conduct and circumstances of the parties and the parties are not required to know all the legal implications of partnership. Griswold v. Wilson, 504 S.W.2d 23, 25-26. The relationship property that is held only as an individual name does not affect the partnership status. Id. at 87 The filing or non-filing of a partnership income tax return is not sufficient alone to prove or disprove the existence of a partnership. Brotherton v. Kissinger, 550 S.W.2d 904, 907*08 (Mo.App. 1977). A voluntary association for the purpose of carrying on a business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors are all indicia of a partnership. Arnold v. Erkmann, 934 S.W.2d 621, 630 (Mo.App. 1996). | Partnership property that is held only in an individual name does not affect the partnership status. | Does it affect the partnership status if the partnership property is held only in the name of one partner? | Partnership - Memo 293 - RK.docx | ROSS-003283897 ROSS-003283899 | Condensed, SA | 0.87 | 0 | 1 | | 1 | |

Appendix D

3039

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17146 | Houston v. Bank of Am. Fed. Sav. Bank, 119 Nev. 485 | 366v1 | The second approach bars the application of equitable subrogation when a lien holder possesses either actual or constructive notice of an existing lien. However, precluding equitable subrogation when a mortgagee discovered or could have discovered a junior lien holder runs contrary to the purposes underlying the doctrine. Equitable subrogation is an equitable remedy to avoid a person's receiving an unearned windfall at the expense of another. If there were no subrogation, a junior lien holder would be promoted in priority, giving that creditor/lien holder an unwarranted and unjust windfall. Neither negligence nor constructive notice of an existing lien is relevant as to whether the junior lien holder will be subrogated or precluded. Thus, the focus of the inquiry in the mortgage context is the lender's justified expectation of receiving [a] security interest in the property. Even a lender with knowledge of an existing lien on the property ordinarily expects to step into the shoes of the creditor it paid off. Therefore, we also decline to adopt this approach. | 'Equitable subrogation' is an equitable remedy to avoid a person's receiving an unearned windfall at the expense of another. | Is equitable subrogation a remedy? | Subrogation - Memo 87 - BM-C.docx | ROSS-003103461-ROSS-003103463 | Condensed, SA | 0.88 | 0 | | | 1 | |
| 17147 | Hampton v. Metro. Water Reclamation Dist. of Greater Chicago, 2016 IL 119861 | 148v2-17(5) | Consistent with this conclusion, the United States Supreme Court in Arkansas Game & Fish Comm'n held that temporary flooding can give rise to a takings claim, when the flooding directly and immediately interferes with the owner's enjoyment and use of the land, 568 U.S. at ___, 133 S.Ct. at 519. In Arkansas Game & Fish Comm'n, the United States Army Corps of Engineers released upstream water in such a way that the Commission's property was flooded during the peak growing season for timber. Id. at ___, 133 S.Ct. at 515. The flooding was temporary but recurred occasionally over a period of six years. Id. at ___, 133 S.Ct. at 516. The Commission owned the property for the purpose of growing timber and recognized it as wildlife habitat. Id. at ___, 133 S.Ct. at 517. The flooding made it impossible for timber to grow productively on the property, and, as a result, the wildlife habitat was destroyed. Id. at ___, 133 S.Ct. at 517. The Commission filed suit against the government, claiming the temporary but recurring flooding was a taking. Id. at ___, 133 S.Ct. at 516. The Supreme Court noted that it had previously held that government-induced flooding can constitute a taking (Pumpelly v. Green Bay Co., 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557 (1871)), that seasonally recurring flooding could constitute a taking (United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917)), and that "[A] temporary taking claim could be maintained as well where government action occurring outside the property gave rise to 'a direct and immediate interference with the enjoyment and use of the land.'" Arkansas Game & Fish Comm'n, 568 U.S. at ___, 133 S.Ct. at 519 (quoting United States v. Causby, 328 U.S. 256, 266, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)). Thus, the Court concluded that "government-induced flooding of limited duration may be compensable." Id. at ___, 133 S.Ct. at 519. | Temporary flooding could constitute a compensable taking under both the federal and state constitutions, and courts were required to look to the facts of each case to determine whether the property owner's use and enjoyment of the property has been diminished or destroyed overruling Lapres v. County of Du Page, 366 Ill.App.3d at 89, 303 Ill.Dec. 528, 637 N.E.2d 02264. | Does seasonally recurring flooding constitute a taking? | Eminent-Domain - Memo 133 - JS.docx | ROSS-003314242-ROSS-003314244 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 17148 | Chapman v. United States, 107 Fed. Cl. 47 | 148v2.2 | The factual underpinnings of TrinCo are almost identical to those in the case at bar. In TrinCo, the government-setters' property, in national forest, was burned intentionally in a number of fires proximate to the landowners' private property to reduce the fuel, i.e., unburned trees. 722 F.3d at 1371. After the fires the properties burned anyway, but the landowners claimed a taking of their timber and other property, which were destroyed by the fire. Id. The court held that based on a review of Supreme Court of the United States' takings jurisprudence, observing that "[t]he recognition that no compensation is due when property is destroyed to stop a fire from spreading is not new." Id. at 101. Examining takings cases involving fires, the court concluded that "[t]he government is not liable for the destruction of private property when it destroys property to prevent the spreading of a fire." Id. at 101 (quoting Bowditch v. City of Boston, 101 U.S. 16, 18, 25 L.Ed. 980 (1880)). Because the complaint in TrinCo alleged that the Government intentionally had set the fires as part of its fire management efforts, the court held that the landowners had failed to state a takings claim. Id. at 102-03. | The government is not liable for a taking under the Fifth Amendment when it destroys property to prevent the spreading of a fire. U.S.C.A. Const.Amend. 5. | Is the government liable for the destruction of property when it acts to prevent the spreading of a fire? | Eminent-Domain - Memo 137 - RK.docx | ROSS-002285362-ROSS-002285927 | SA, Sub | 0.87 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17149 | Stern v. MacLean-Hunter 217k5 Ltd., 46 F.R.D. 76 | 217k5 | We doubt that the Times with its extreme aspiration to monitor defamation statements with respect to persons accused of events in the "public interest," is distinguished from those who are themselves "public officials" or "public figures." Certainly the balance weighs in favor of First Amendment rights of the press against the right of the individual to be protected against defamation in the case of articles about persons who are not themselves newsworthy figures, and it is urged that HE, as some language in the Court's decision indicates, must be strictly limited to such a basis. On reason of right of privacy, it is unnecessary to decide that issue here, however, for the reason that assuming the applicability of the doctrine, it must in any event be limited to those defamations which are the subject of the newsworthy events of public interest, i.e. distinguished from third parties' such as private persons, etc. who are defamed incident to an article or public event. Even if the plaintiff were a "public figure" and plaintiff sues for defamatory attacks upon the plaintiff, as an author writing about them. Such claims would appear to be governed by standards governing the ordinary private libel suits rather than to the test involving the events of public interest, etc. Accordingly, defendant's motion must be denied on the ground that proof of malice is not essential element of the claim. Thus proof of malice were required, defendant's contention that the complaint is deficient for failure to allege malice with particularity must be rejected for the reasons herein after stated. | Proof of malice is not essential element of private libel suit. | Is proof of malice essential in private libel suit? | 003348.docx | LEGALEASE-00120017-LEGALEASE-00120028 | Condensed, SA, Sub 0.97 | | 839 | | | 1 | 1 |
| 17150 | Abramson v. Georgetown Consulting Grp., 766 F. Supp. 255 | 317H-I:45.1 | In conjunction with its legislative mandate to regulate public utilities, the PSC is authorized to conduct investigations of the operations of public utilities and, in doing so, has broad investigatory and fact-finding powers. The PSC may appoint its written order, pursuant to section 34 of title 30, agents to assist in its investigation of a public utility. The agents so appointed by the PSC share the same investigatory powers as those granted to the PSC by the legislature. The expenses incurred in investigating a particular public utility is assessed to the utility investigated. 30 V.I.C. ' 23. Under long-standing PSC administrative practice, the PSC has appointed financial consultants, hearing examiners, court reporters, and other agents necessary to assist the PSC with its investigations of public utilities. | Virgin Islands Public Services Commission (PSC) has authority, independent of the Commissioner of Property and Procurement, to procure the services of agents to assist the PSC in its investigation of public utilities operating within the territory of the United States Virgin Islands. 30 V.I.C. § 18, 31 V.I.C. §§ 230-265. | Can a Public Service Commission (PSC) appoint agents to assist in investigating public utilities? | 003506.docx | LEGALEASE-00120723-LEGALEASE-00120724 | Condensed, SA, Sub 0.59 | | 0 | | | 1 | |
| 17151 | Luthern v. Hazel, 21210, 249H:61 App. 399 | 249H:61 | On the question whether the signature to the note in dispute was appellant's signature, appellee told merely how witnesses and appellant had fifteen. It was clearly a question of fact for the jury to determine whether appellant did or did not sign the note which was the basis of the finding of the jury on that point should not be disturbed. It is claimed by appellant that the court erred in admitting in evidence, without special limitation, a copy of the order of indictment in the Criminal Court in Cook county. It has been held that the copy of the order, of indictment, entered in a case which was the basis of an action for malicious prosecution was error. Gardam v. N.M. Houker Co., 173 Ill. App. 127. It is always competent, however, to show a discharge in such a case for the purpose of showing the termination of the suit. Turnilty v. Porter, 10000, App. 182, 9-31 Chicago v. Ellison, 119 Ill. App. 411. But here the only previous record referred to was not entered in the case which was the basis of this suit but was one of a series of transactions which tended to show that notice actuated the appellee. The fact that, on the note principle was entered in said case, appellant did not cease to prosecute appellee, was proper reason considering the note as controlling the appellee, was one of a series of advances and the appellant's acts actuated by malice in the various proceedings he instituted and the steps he took to prosecute appellee. It appears that appellant consulted and followed the advice of an attorney, whose reputation and ability are not questioned. That alone does not establish the fact that he acted in good faith, without malice, and that there was no probable cause. In considering this case we must have constantly in view the question of an abuse of legal process in the prosecution of appellee, and the act of the plaintiff in instituting the note was an actionable one. Not that it alone was necessary for appellant to commit to prove malice in the various proceedings he instituted. | In action for malicious prosecution and for false arrest, it is always competent to show a discharge for purpose of showing termination of the prosecution for malicious prosecution action? | Is discharge in a case sufficient to show termination of the prosecution for malicious prosecution action? | 021124.docx | LEGALEASE-00120999-LEGALEASE-00121000 | Condensed, SA, Sub 0.96 | | 0 | | | 1 | |
| 17152 | Stone v. Washington Reg'l 75+10 Med. Ctr., 515 S.W.3d 104 | 75+10 | When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. Covenant Presbyterian v. First Baptist Church, 2016 Ark. 138, 489 S.W.3d 153. This court has stated that in creating a charitable trust, the writer must describe a purpose of substantial public interest. Kelm v. Phelan, 282 Ark. 418, 670 S.W.2d 279 (1984). "The settlor of a charitable trust, moreover, may maintain a proceeding to enforce the trust." Ark. Code Ann. ' 28-72-406(a). | When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. | What happens when a charitable trust is created? | 01107.docx | LEGALEASE-00088152-LEGALEASE-00088153 | Condensed, SA, 0.76 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17153 | Covenant Presbytery v. First Baptist Church, 489 S.W.3d 153 | 75+10 | The Arkansas Trust Code defines a charitable trust as "a trust, or portion of a trust, created for a charitable purpose." Ark.Code Ann. " 28"73"103(4). It is a "fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with property for a charitable purpose." Restatement (Second) of Trusts " 348, Westlaw (database updated May 2014). In a charitable trust, "the beneficial interest is not given to individual beneficiaries, but the property is devoted to the accomplishment of purposes beneficial to the community." Id. " 365 cmt a. In other words, when a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. Charitable purposes include "the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community." Ark.Code Ann. " 28"73"405. As we have previously stated, "[i]n creating a charitable trust the settlor must describe a purpose of substantial public interest." Kohn v. Pearson, 282 Ark. 418, 420, 670 S.W.2d 795, 796 (1984). | When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. Ark. Code Ann. S 28-73-103(4). | What happens when a charitable trust is created? | 013328.docx | LEGALEASE-00121753-LEGALEASE-00121754 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 17154 | Delta Sales Yard v. Patten, 870 P.2d 554 | 241+4(2) | In conclusion, we hold that a brand inspector is a "law enforcement authority" which requires the application of a one year statute of limitations pursuant to 13"80"103(1)(c). Accordingly, we affirm the decision of the court of appeals. | Statute of limitations applicable to civil lawsuits against sheriffs, coroners, police officers, firefighters, national guardsmen and any other law enforcement authorities was not unconstitutionally vague for failing to define term "law enforcement authority"; statute was sufficiently clear to permit persons of ordinary intelligence to ascertain meaning of "law enforcement authority" by reference to peace officer classification statute that explicitly included brand inspectors. West's C.R.S.A. SS 13-80-103(1)(c), 18-1-90(3)(I )(IV). | Is a brand inspector a law enforcement authority? | Inspection - Memo 27 - SH.docx | ROSS-003283960-ROSS-003283961 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 17155 | Delta Sales Yard v. Patten, 870 P.2d 554 | 316P+985 | Section 18"1"901(3)(I )(IV) defines a level III peace officer to include "a brand inspector pursuant to section 35"53"128, C.R.S." Correspondingly, " 35"53"128(2), C.R.S. (1987 Repl.Vol. 14) provides that brand inspectors "in the exercise of their statutory duties are vested with all the powers of arrest, with or without a warrant, conferred upon peace officers as set forth in section 16"3"101, C.R.S." (emphasis added). | Peace officer classification for brand inspectors was not limited to brand inspector's power of arrest, but encompassed all of inspector's statutory duties to enforce all laws of state pursuant to peace officer classification statute; thus, one-yearstatute of limitations for civil actions against sheriffs, coroners, police officers, firefighters, national guardsmen, and any other law enforcement authority applied to suit against brand inspector alleging willful and wanton negligence in permitt ing resale of cattle without proper title clearance. West's C.R.S.A. SS 13-80-103(1)(c), 18-1-901, 18-1-901(3)(I )(IV), 35-53-128, 35-53-128(2). | Are brand inspectors vested with the power to arrest? | 019479.docx | LEGALEASE-00121278-LEGALEASE-00121279 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 17156 | Cornette v. State, 295 Ga. App. 877 | 2.31E+12 | Kidnapping occurs when a person abducts or steals away any person without lawful authority or warrant and holds that person against his or her will. Here, the evidence shows that Cornette moved Gentry to the back of Green's vehicle, then took her into the Danners' house, tied her hands behind her back with string, and escorted her to the car where she would be placed in the trunk. Either the movement of Gentry from the car to the house or from the house to the garage against her will by Cornette was sufficient to support his conviction for kidnapping. This same evidence supports Cornette's conviction for false imprisonment, which occurs "when one person detains another in violation of that person's personal liberty and without legal authority. OCGA " 16-5-41(a)." Gentry testified that Cornette took her into the house and tied her hands against her will. This evidence, alone, sufficiently supported Cornette's conviction for false imprisonment. | Kidnapping occurs when a person abducts or steals away any person without lawful authority or warrant and holds that person against his or her will. West's Ga.Code Ann. S 16-5-40(a). | When does kidnapping occur? | Kidnapping - Memo 2 - TH.docx | ROSS-003297059-ROSS-003297060 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 17157 | McGuire v. State, 266 Ga. App. 673 | 2.31E+12 | In its charge on kidnapping, the trial court explained that "a person commits the offense of kidnapping, which is count two of the indictment, when he abducts or steals away any person without lawful authority or warrant or holds such person against his or her will." We discern no error. | A person commits the offense of "kidnapping" when he abducts or steals away any person without lawful authority or warrant or holds such person against his or her will. West's Ga.Code Ann. S 16-5-40(a). | When does kidnapping occur? | 020995.docx | LEGALEASE-00121705-LEGALEASE-00121706 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 17158 | Reagan v. Baird, 140 Ill. App. 3d 58 | 302+312 | We finally consider Omalee's contention that the circuit court properly dismissed Reagan's amended complaint because it does not adequately state Omalee's knowledge of, or participation in the alleged fraudulent conveyance. Although Reagan's amended complaint contains a statement that the conveyance was without consideration, the deed conveying the real estate from Glenn and Wanda Baird to Omalee, a copy of which is attached to the complaint as an exhibit, recites the payment of $10 "and other valuable consideration." Since facts set forth in exhibits attached to a complaint control over the allegations of the complaint itself (Sangamon County Fair & Agricultural Association v. Standard (1956), 9 Ill.2d 267, 137 N.E.2d 487; McCormick v. McCormick (1983), 118 Ill.App.3d 455, 74 Ill.Dec. 73, 455 N.E.2d 103), Reagan's amended complaint in effect states that there was consideration in the amount of $10 for the transfer. The recitation of "other valuable consideration" is, however, a mere conclusion (Betty v. Knapp (1935), 5 Cal.App.2d 512, 43 P.2d 325; see also Everett v. Gainer (1967), 269 N.C. 528, 153 S.E.2d 90; Tuttle v. Tuttle (1978), 38 N.C.App. 651, 248 S.E.2d 896), which may be disregarded in determining whether Reagan's amended complaint states a cause of action. Velle Transcendental Research Association, Inc. v. Esquire, Inc. (1976), 41 Ill.App.3d 799, 354 N.E.2d 622 . | Facts set forth and exhibits attached to complaint control over allegation of complaint itself. | Will exhibits attached to a complaint control over the allegations of the complaint? | 022912.docx | LEGALEASE-00121509-LEGALEASE-00121511 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 21,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17159 | Greisdal v. Wright, 54 S.W.3d 799 | 46H+747 | First, as we correctly state, a motion to intervene is a preliminary ruling by a trial court. A motion to intervene is defined as a procedural device that permits a party to indirectly, before trial, certain evidentiary rulings that the trial court may be asked to make so as to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury. Bartlett Auld, & Austen, Co. v. McCluskey, 369 S.W.2d 331-336 (Tex.1963); Fort Worth Hotel Ltd. P'drys. Enserth Corp., 977 S.W.2d 746, 757 (Tex.App.-Fort Worth 1998, no pet.). The purpose of a motion in limine is thus to prevent the asking of prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. Weinberg v. Sanchez, 14 S.W.3d 353, 360 (Tex.App.-Houston [14th Dist.] 2000, no pet.). | The news fact that the order on the motion in limine was a preliminary ruling did not defeat the trial court's authority to sanction counsel for his failure to comply with the ruling. | Is a motion to strike a preliminary ruling by a trial court? | Pretrial Procedure - Memo # 57 - C - AP.docx | ROSS-003392232-ROSS-003393233 | Condensed, SA, SoB 0.79 | | 0 | | | 1 | 1 |
| 17160 | Cty. of Imp'v. Pub. Utilities Com., 26 Cal. 3d 154 | 405+2881 | The county also asserts that City of Pasadena v. Railroad Commission, supra, 183 Cal. 526, 192 P. 25, was decided before art. XII, sec. 23, was adopted, and should be read in light of Los Angeles Met. Transit Authority v. Public Util. Com. (1963) 59 Cal.2d 863, 31 Cal.Rptr. 463, 382 P.2d 583. In the latter case, we upheld the constitutionality of a provision conferring upon the PUC authority over the safety standards of the Metropolitan Transit Authority. Noting that section 23 authorized PUC jurisdiction over "[e]very private corporation ... owning, operating, managing, or controlling any common carriers, including those owned by a municipal government. Our opinion emphasized disapproval of statements in City of Pasadena to the effect that the Legislature is prohibited by the California Constitution from conferring regulatory authority over municipally owned public utilities. (59 Cal.2d at p. 870, 31 Cal.Rptr. at p. 467, 382 P.2d at p. 587.) But Los Angeles Met. Transit Authority relies upon, and emphasizes, the explicit language of section 23 which confers jurisdiction over "every common carrier" and does not involve itself in the question whether the term "private corporation and person" in section 23 encompasses a municipally owned utility. The conclusion of City of Pasadena that the language of section 23 does not include such a utility is therefore not affected by the Transit Authority case. | Section of constitutional provision grants legislature power to confer additional authority and jurisdiction on Public Utilities Commission consistent with scope of constitutional article, which is not limited to common carriers and transportation companies, over which Commission had had jurisdiction since 1879, but deals with public utilities in all forms, and thus possible legislation conferring Commission jurisdiction over municipally owned water companies, selling beyond municipal borders or even within such borders, would be within scope of such section of such present article, disapproving language in City of Pasadena v. Railroad Commission, 183 Cal. 526, 192 P. 25, insofar as contrary to reasoning of opinion. West's Ann.Const. art. 12, § 5. | Is the Public Utilities Commission given the authority to regulate public utilities under Section 23 of Article XII of the Constitution? | 042587.docx | LEGALEASE-00121162-LEGALEASE-00121163 | Condensed, SA, SoA 0.44 | | 0 | | | 1 | |
| 17161 | Velasquez v. Serrano, 43 So. 3d 82 | 366+1 | We review an order granting summary judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Equitable subrogation is generally defined as follows: Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law, when one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916). Subrogation "is not allowed if it works any injustice to the rights of others." Fed. Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883, 885 (1933); see also Boynes v. Hilts, 111 Fla. 491, 149 So. 556, 557 (1933). [Jackson Nat'l Bank v. Smyth, 109 Fla. 393, 147 So. 576, 577 (1933)]. A party's entitlement to subrogation therefore depends upon the equities and attending facts of each case. See Eastern Nat'l Ins. Fla Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999). | Equitable subrogation is not allowed if it works any injustice to the rights of others; a party's entitlement to subrogation therefore depends upon the equities and attending facts of each case. | Is equitable subrogation not allowed if it works any injustice to the rights of others? | 05611.docx | LEGALEASE-00084313-LEGALEASE-00084314 | Condensed, SA, SoB 0.83 | | 0 | | | 1 | |
| 17162 | Osborne v. Jauregui, 252 So+4774 | | Absent a contractual provision, subrogation is based on equitable principles and we will classify a trial court's balancing of the equities unless, "it would be inequitable to allow the judgment to stand." Guyton v. Farm Credit Mid-Am., F.S.B. 2012 WL 6061402 (Ky. App. 2012) [Ky.App.2012, not reported]. If either an insured or an insurer "must hold an unpaid" unpaid, the loss should be borne by the insurer for that is a risk the insured has paid the insurer to assume. Chandri v. Stoltz Corp., 537 S.W.2d 142, 144 (Tex.1983) [quoting Cputri v. Rural Mut. Ins. Co.,77 Wis.2d 537, 253 N.W.2d 512, 514 (1977)]. An insurer is not entitled to equitable subrogation until the insured is "made whole" for his loss. Esparza, 999 S.W.2d at 552 [Ariz., 997 S.W.2d at 84]. | Appellate court will not disturb a trial court's balancing of the equities with respect to subrogation claim unless it would be inequitable to allow the judgment to stand. | Is subrogation based upon equitable principles? | Subrogation - Memo # 467 - C - SA.docx | ROSS-003282213-ROSS-003282214 | Condensed, SA, SoB 0.78 | | 0 | | | 1 | |
| 17163 | Levy v. HLI Operating Co., 924 A.2d 210 | 366+33(1) | Subrogation differs from contribution because its operation relies on concepts of primary and secondary liability among obligors. Thus, it acts to place an entire loss, not just a portion, on another party, in contrast to indemnification, subrogation allows an insurer to succeed to a right of payment flowing to its insured, while an entity seeking indemnity must do so in its own right. | Subrogation differs from contribution because its operation relies on concepts of primary and secondary liability among obligors. Thus, it acts to place an entire loss, not just a portion, on another party. | Are "contribution" and "subrogation" distinct? | 047213.docx | LEGALEASE-00121397-LEGALEASE-00121398 | Condensed, SA 0.47 | | 0 | | | 1 | |
| 17164 | In re McGrath's Estate, 159 Pa. Super. 78 | 366+1 | Subrogation is an equitable doctrine and must depend upon inherent justice and some principle of equity jurisprudence, to apply to public policy, or where it accomplishes by indirection that which a statute forbids to be done directly. In cases where there is some principle of equity jurisprudence, "it"; where the enforcement or allowance of the right to subrogation would violate the principles of the right of another, the doctrine will not be applied. Subrogation, in the broad and primary acceptation of the term, is consonant with right and justice, and then only in a clear case. It will not be allowed where it would be contrary to public policy, or where it would accomplish by indirection that which a statute forbids to be done by direction." (Emphasis supplied.) | Subrogation will not be applied if it can be predicated upon some inherent justice and some principle of equity jurisdiction; subrogation, in broad and primary acceptation of term, is ready to invoke and his consonant with right and justice, and then only in a clear case. | Is subrogation an equitable doctrine and one that must depend upon inherent justice and some principle of equity jurisprudence, usually unjust enrichment? | Subrogation - Memo # 862 - RM C.docx | ROSS-003284112-ROSS-003284113 | Condensed, SA, SoB 0.72 | | 0 | | | 1 | |

Appendix D
3023

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 23,876 | 9,029 |
| 17165 | Lin-e-App Online.com, 321 B.R. 6 (14) | 8.30(+)-10 | The general rule is that the law of the state where a note is executed and payable governs the interpretation of that note. See United States v. Guaranty Trust Co., 293 U.S. 340, 347, 55 S. Ct. 221, 79 L.Ed. 415 (1934); Union Nat'l Bank v. Lamb, 337 U.S. 38, 50, 70 S. Ct. 25, 93 L.Ed. 1107 (1949); 6B.C. (U.S.N.Y. May 18, 1987). When a note is executed in one state and payable in another it is generally presumed that ... the parties intended the note would be governed by the laws of the state where it is made payable. Id. (citing Restatement [Second] of Conflict of Laws, 194). | Under New York's choice of law rule, general rule is that laws of state where note is executed and payable govern the interpretation of that note. | Which law governs the interpretation of a note? | 007057.docx | LEGAL-EAE-00122345-LEGAL-EAE-00122350 | Condensed, SA, Sub 0.82 | 0.82 | 0 | | | | |
| 17166 | Bankers Tr. (Delaware) v. 236 Bethany Inc., 865 F. Supp. 1186 | 8.30(+)-282 | Virginia requires in effect prior to 1993 ... | Just as separate agreements cannot destroy instrument's negotiability under Virginia law, neither can they render negotiability. Va.Code 1950, § 8.3-119(1) (Repealed). | Does a separate agreement destroy or affect the negotiability of a note? | Bills And Notes - Negotiability-Memo 26 - AM.docx | ROSS-003288147-ROSS-003288148 | Condensed, SA, Sub 0.89 | 0.89 | 0 | | | | |
| 17167 | McBob's v. Gen. Credit Corp., 164 Neb. 526 | 398+76 | The evidence shows Kenny paid eight monthly installments of either $422.10 or $522.23 ... | Where charge for loan made to finance purchase of truck was in excess of maximum rate of interest allowable by statute, note given as evidence of such loan was void from its inception and maker was entitled to have the same canceled as well as a return of installment payments previously made thereon. R.S.Supp. 1953, § 45-138. | Are loans made in violation of installment loan statutes void and uncollectible? | Consumer Credit - Memo 39 - IS VP.docx | ROSS-003283813-ROSS-003283814 | Condensed, SA, Sub 0.73 | 0.73 | 0 | | | | |
| 17168 | Davis v. May, 135 S.W.3d 747 | 148+307(2) | The ultimate question of whether the facts constitute a taking is a question of law ... | The ultimate question of whether the facts constitute a taking is a question of law, not a question of fact. | Is the ultimate question of whether the facts constitute a taking a question of law, not a question of fact? | Eminent Domain - Memo 201 - GP.docx | ROSS-000281959-ROSS-000301994 | Condensed, SA, 0.81 | 0.81 | 0 | | | | |
| 17169 | Thomas v. Lloyd, 17 S.W.3d 177 | 289+633 | In attempting to demonstrate that the parties intended ... | Evidence that the land is used by the firm, of itself insufficient to rebut the presumption that title was not held by a partnership does little to show the land is owned by the partnership. | Does use of land by a partnership make it partnership property? | 021828.docx | LEGAL-EAE-00122489-LEGAL-EAE-00122490 | Condensed, SA, Sub 0.84 | 0.84 | 0 | | | | |

3024

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17170 | Sorenson v. Bowen, 199 Or. 607 | 302+8(5) | This doctrine was restated with approval by Harris, J., in Gorsline v. Gore, 90 Or. 389, 391, 176 P. 603, and may be regarded as the settled law of this state. See, also, 1 C.J.S., Account Stated " 54, p. 734; Rogers v. Buck Creek Oil Co., 32 Wyo. 283, 231 P. 410. The answer under examination is entirely wanting in "precise allegations' of any error in the settlement. It alleges no particular error at all. It consists of a mere generality that the computation was "erroneous' and a bare conclusion that plaintiff is indebted to the defendant in a named amount. A general averment of indebtedness without any statement of facts supporting it is a mere conclusion of law. 71 C.J.S., Pleading " 16, p. 41. In some circumstances the defect is waived by answering over. See Creecy v. Joy, supra, 4 Or. at page 33, 66 P. 295. But it would seem too obvious to require argument or citation of authority that no doctrine of waiver can be invoked to help the pleading when the general allegation of indebtedness contradicts the settlement which the defendant himself has alleged, and no attack which the law recognizes has been made on the settlement. | A general averment of indebtedness without any statement of facts supporting it is a mere "conclusion of law." | Is an allegation of indebtedness a conclusion of law? | 022925.docx | LEGALEASE-00122123-LEGALEASE-00122124 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 17171 | Dubecky v. Horvitz Co., 64 Ohio App. 3d 726 | 30+4179 | In her fourteenth assignment of error, appellant argues that the court erred when it denied her motion in limine to suppress evidence of Lee's and Dubecky's blood-alcohol content. Evidence was introduced that Lee and Dubecky had blood-alcohol contents of .129 and .223 respectively. The granting of a request for a motion in limine lies in the power and discretion of the trial court. Riverside Methodist Hospital Assn. v. Guthrie (1982), 3 Ohio App.3d 308, 3 OBR 355, 444 N.E.2d 1358. This court will not disturb the trial court's ruling unless there had been an abuse of discretion. | Court of Appeals will not disturb trial court's ruling on request for motion in limine unless there has been abuse of discretion. | Is a trial court's ruling on a motion in limine left to the sound discretion of the trial court and reversal at the appellate court is only in cases of abuse? | Pretrial Procedure - Memo # 91 - C - JTB.docx | LEGALEASE-00012176-LEGALEASE-00012177 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 17172 | Vega v. La Movida, 294 Ga. App. 311 | 307A+3 | The Vegas contend that the trial court erred in denying their motion for mistrial after the court excluded the evidence of prior criminal activity discussed in Division 1(a) above. Because the trial court had earlier denied La Movida's pre-trial motion in limine as to this same evidence, the Vegas assert that they were prejudiced by the court's subsequent exclusion of this evidence after the Vegas had referred to it in their opening statement. This argument fails, however, because a trial court may modify a ruling on a motion in limine. | Trial court may modify a ruling on a motion in limine. | Can a trial court modify a ruling on a motion in limine? | Pretrial Procedure - Memo # 957 - C - MLS.docx | ROSS-003287068-ROSS-003287069 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 17173 | State ex rel. AG Processing v. Pub. Serv. Comm'n of State of Missouri, 2003 WL 1906385 | 190+4.1 | Section 393.190.1 does not set forth a standard or test for the PSC's approving a proposed utility merger. However, the Missouri Supreme Court in State ex rel. City of St. Louis v. Public Service Commission of Missouri, 335 Mo. 448, 73 S.W.2d 393, 395 (1934), involving a merger subject to approval by the PSC under " 5195, RSMo 1929, a predecessor to " 393.190, recognized that the standard for the PSC's approval was whether the merger "would be detrimental to the public." Id. at 400. In so holding, the Court rejected the proposition that a merger should only be approved if it "benefited" the public, quoting from a Maryland Supreme Court decision, Electric Public Utilities Co. v. Public Service Commission, 154 Md. 445, 140 A. 840, 844 (Md.App.1928), addressing an identical merger approval statute:To prevent injury to the public, in the clashing of private interest with the public good in the operation of public utilities, is one of the most important functions of Public Service Commissions. It is not their province to insist that the public shall be benefited, as a condition to change of ownership, but their duty is to see that no such change shall be made as would work to the public detriment. In the public interest, in such cases, can reasonably mean no more than "not detrimental to the public."City of St. Louis, 73 S.W.2d at 400 (emphasis added). The standard of "not detrimental to the public" adopted by the Court in City of St. Louis balances the rights of private investors to transfer their interests in a regulated utility against the right of the public served by the utility not to be harmed by such a transfer. Id. In 1975, the detriment standard was codified by the PSC in 4 CSR 240"2.060(8)(D), requiring that applicants seeking approval to merge under " 393.190 include in their applications "[t]he reasons the proposed merger is not detrimental to the public interest." | Gas and electric utilities that filed application with Public Service Commission (PSC) for merger were not required to submit a market power study as part of their application as proof that merger was not detrimental to public; instead customer that challenged proposed merger had burden to show on appeal that Public Service Commission (PSC) erred by failing to order the utilities to submit a market power study as part of their application for approval of their merger. V.A.M.S. S 393.150, subd. 2, 4 Mo.Code of State Regulations 240-2.060(7)(D), (8)(D) . | Should Public Service Commissions ensure that a change in the ownership of a public utility is not detrimental to the public? | 042206.docx | LEGALEASE-00122147-LEGALEASE-00122148 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 17174 | Am. Ins. Co. v. Ohio Bur. of Workers Comp., 62 Ohio App. 3d 921 | 366+7(1) | A surety is traditionally subrogated to the rights of the one it pays, the obligee. Maryland Casualty, supra; Dempsey v. Bush (1868), 18 Ohio St. 376] Thus, in Maryland Casualty the court explained that when a surety discharges the principal's debt, the debt is not extinguished in equity, and the obligee continues to hold those rights for the benefit of the surety. Nevertheless, the principles of subrogation previously discussed do not necessarily limit the surety's right of subrogation to only the rights of the obligee. As a creature of equity, subrogation is not limited by arbitrary legal rules. Its applicability depends on the particular facts and circumstances of a given case. 10 Williston On Contracts (3 Ed.1967) 844, Section 1265. The tendency of the law is to expand, not restrict, the classes of cases to which subrogation will be applied. Seward v. National Surety Co. (1929), 120 Ohio St. 47, 51, 165 N.E. 537, 538. Ultimately, the doctrine will be invoked where necessary to prevent injustice. | Surety is traditionally subrogated to rights of the one it pays, the obligee. | Is a surety traditionally subrogated to the rights of the one it pays? | 044206.docx | LEGALEASE-00122111-LEGALEASE-00122112 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 17175 | City of Cleveland, Ohio Civil Rights Comm'n, 41 Ohio App. 3d 153 | 131e61 | The Staff Notes to the July 1, 1971 amendment to Civ.R. 3(C) state in pertinent part: "As a result of the amendment of Rule 3(C) the Civil Rules will be applicable to special statutory proceedings except 'to the extent that they would by their nature be clearly inapplicable.' Certainly the Civil Rules will not be applicable to those many special statutory proceedings which are nonadversary in nature. On the other hand, the Civil Rules will be applicable to special statutory proceedings adversary in nature where there is a good and sufficient reason not to apply the rules." Accord Price v. Westinghouse Electric Corp. (1982), 70 Ohio St.2d 131,124 O.O.3d 217, 435 N.E.2d 1114; Cuyahoga Metro. Housing Authority v. Jackson (1981), 67 Ohio St.2d 129, 21 O.O.3d 81, 423 N.E.2d 177. Therefore, the Civil Rules apply unless there is a good and sufficient reason not to apply them (Longo v. Dolston (1978), 61 Ohio App.2d 59, 15 O.O.3d 147, 91, 399 N.E.2d 1211; 123 | Civil rules pertaining to commencement of civil action apply unless there is a good and sufficient reason not to apply them. | When civil rules pertaining to commencement of civil action apply? | 007014.docx | LEGALEASE-00123810 LEGALEASE-00123811 | Condensed, SA, Sub | 0.87 | | 0 | | | | |
| 17176 | Matter of Estate of Musgrove, 144 Ariz. 168 | 24243 | The parties disagree as to when the cause of action accrued on the oral contract and thus triggered the running of the statute of limitations. The general rule is that a cause of action accrues whenever one party may sue another. Cheatham v. Sahuaro Collection Service, Inc., 118 Ariz. 452, 577 P.2d 790 (App.1978); Rogers v. Smith Kline & French Laboratories, 5 Ariz.App. 553, 429 P.2d 1 (1967). Brown characterizes the agreement as one which contemplated that demand would not be made until long into the future and therefore the statute did not begin to run until demand was made. The estate characterizes the agreement to be payable on demand or an agreement which was silent as to payment. The estate's position is that the principal would become due immediately upon the execution of the agreement, that the decedent owed claimant $8,984 and that he would make payments on this indebtedness from time to time. It was also agreed that the principal would bear interest at the rate of 6% per annum. In 1972 decedent agreed to pay 8% interest on the principal balance. There was ample consideration for each of these agreements. | The general rule is that a cause of action accrues whenever one person may sue another. | Does cause of action arise when party has a right to file suit? | 005053.docx | LEGALEASE-00123884 LEGALEASE-00123885 | Condensed, SA | 0.92 | | 0 | 0 | 1 | |
| 17177 | Cooper Indus. v. City of St. Bend, 899 N.E.2d 1274 | 241+951.5) | Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a plaintiff knows or in the exercise of ordinary diligence should have known of the injury. Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840 (Ind.1992). The determination of when a cause of action accrues is generally a question of law. Barnes v. A.H. Robins Co., 476 N.E.2d 84 (Ind.1985). For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable but only that some ascertainable damage has occurred. Pflanz, 888 N.E.2d of 759 (quoting Doe v. United Methodist Church, 673 N.E.2d 839 (Ind.Ct.App.1996)). In addressing a recent claim for contribution based on an indemnity obligation, this Court held there is a two-year statute of limitation for such and property, this Court described the statute of limitation begins to run when the elements of a cause of action can be shown to put of how we determine when a cause accrues. "Id. at 758. | For an action to accrue for limitations purposes, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. | Does a cause accrue before damages are ascertainable? | 005607.docx | LEGALEASE-00125996 LEGALEASE-00125997 | SA, Sub | 0.81 | | 0 | 1 | | |
| 17178 | In re Santiago, 563 B.R. 457 | 131e61 | Dr. Cora, however, does not have standing to bring this claim. Section 541(a) provides that the commencement of a bankruptcy case creates an estate consisting of "all legal or equitable interests of the debtor in property" as of that date. 11 U.S.C. § 541(a)(1). While not explicitly defined by this Code, courts have construed the term "legal or equitable interests" to include "Applications, whether based on state or federal law." U.S. ex rel. Spicer v. Westbrook, 751 F.3d 354, 361 (5th Cir. 2014) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205-9, S 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). Whether a debtor has a legal claim or cause of action is a matter of state law. See Butner v. United States, 440 U.S. 48, 54-56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). Under Puerto Rico law, a breach of contract claim accrues at the moment of its breach, P.R. Laws Ann. tit. 31 § 3018 ("Those who in fulfilling their obligations are guilty of, negligence, or delay and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby.") | Under Puerto Rico law, a breach of contract claim accrues at the time of the breach. 31 L.P.R.A. 3 3018. | Does a breach of contract claim accrue at the time of the breach? | Action - Memo # 55 - C LR.docx | ROSS-003315892-ROSS-003315893 | Condensed, SA | 0.52 | | 0 | 1 | 1 | 1 |
| 17179 | N. Carolina Farm Bureau Mut. Ins. Co. v. Paul, 795 S.E.2d 620 | 241+46(6) | "The statute of limitations for breach of contract action is three years, and accrues at the moment of the breach." Ludlum v. State, 227 N.C.App. 92, 94, 742 S.E.2d 580, 581 (2013) (quoting Penley v. Penley, 332 N.C. 51, 62, 332 S.E.2d 1, 49 N.C.App. 339, 335, 560 S.E.2d 858, 603 (2003)). | Claim for breach of contract claim accrue at the time of the breach. | Does a breach of contract claim accrue at the time of the breach? | 005822.docx | LEGALEASE-00123065 LEGALEASE-00123066 | Condensed, SA, Sub | 0.52 | | 1 | 1 | 1 | 1 |

Appendix D

3026

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17180 | Rex v. CSA-Credit Sols. of Am., 507 F. Supp. 2d 788 | 25T+121 | Section 1679g(a) does not contain any language indicating that claims under the CROA are nonarbitrable. The language in " 1679g(a) is not materially distinguishable from the language in other federal statutes that the Supreme Court has held are arbitrable. Randolph, 531 U.S. at 88"92, 121 S.Ct. 513 (Truth in Lending Act); Gilmer, 500 U.S. at 35, 111 S.Ct. 1647 (Age Discrimination in Employment Act); Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 479"86, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act of 1933); McMahon, 482 U.S. at 227"40, 107 S.Ct. 2332 (Securities Exchange Act of 1934, Racketeer Influenced and Corrupt Organization Act); Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, 473 U.S. 614, 628"40, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Act). The Supreme Court's decision in Mitsubishi Motors is of particular relevance to the language in the CROA. In Mitsubishi Motors the Supreme Court held that the language in 15 U.S.C. " 15(a) was insufficient to render antitrust claims nonarbitrable. 473 U.S. at 635"37, 105 S.Ct. 3346. In relevant part, 15 U.S.C. " 15(a) provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States...." 15 U.S.C. " 15(a) (1982 & Supp. IV) (emphasis added). The Supreme Court did not find 15 U.S.C. " 15 to evidence a congressional intent to preclude Sherman Act claims from being arbitrable. Mitsubishi Motors, 473 U.S. at 635"37, 105 S.Ct. 3346; see also Rodriguez de Quijas, 490 U.S. at 482, 109 S.Ct. 1917 (describing Mitsubishi Motors as having held that 15 U.S.C. " 15 does not preclude the arbitration of claims under the Sherman Act). The language in the CROA evidences no greater congressional intent to preclude arbitration than the word "sue" and the reference to district courts present in 15 U.S.C. " 15. In consideration of these Supreme Court cases, this Court | Text of the Credit Repair Organization Act (CROA) did not evidence a congressional intent for claims under the CROA to be nonarbitrable. Credit Repair Organizations Act, SS 405(a), 409(a), 15 U.S.C.A. SS 1679c(a), 1679g(a). | Did Congress intend for Credit Repair Organization Act (CROA) claims to be nonarbitrable? | 007114.docx | LEGALEASE-00123788-LEGALEASE-00123789 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 17181 | Howard v. Anderson, 36 F. Supp. 2d 183 | 25T+121 | Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444; see Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at 26, 111 S.Ct. 1647. "So long as the prospective litigant effectively may vindicate [her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at 28, 111 S.Ct. 1647.Accordingly, pre-dispute agreements to arbitrate Title VII claims are enforceable.See e.g., Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 364"65 (7th Cir.1999); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc., 163 F.3d 53, 59 (1st Cir.1998); Seus v. John Nuveen & Co., 146 F.3d 175, 182 (3d Cir.1998); Austin v. Owens"Brockway Glass Container, Inc., 78 F.3d 875, 882 (4th Cir.1996); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1487 (10th Cir.1994); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700 (11th Cir.1992); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 308 (6th Cir.1991); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir.1991); Rand v. J.C. Bradford & Co., No. 98 Civ. 4906 (DLC), 1998 WL 872421, (S.D.N.Y. Dec.15, 1998) (collecting Second Circuit cases); but see Duffield v. Robertson Stephens & Co., 144 F.3d 1182 (9th Cir.1998), cert. denied, 525 U.S.996, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998) (refusing to enforce pre-dispute agreement to arbitrate employment discrimination claim). | Pre-dispute agreements to arbitrate Title VII claims are enforceable. Civil Rights Act of 1964, S 701 et seq., 42 U.S.C.A. S 2000e et seq. | Are agreements to arbitrate Title VII claims enforceable? | 007118.docx | LEGALEASE-00123844-LEGALEASE-00123845 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 17182 | Marchese v. Shearson Hayden Stone, 734 F.2d 414 | 25T+121 | These cases are consistent with the concept that "non-waivable statutory rights", Amaro, 724 F.2d at 752, are best left to judicial interpretation. Essentially, courts have engaged in a "balancing process" to determine which statutory rights should be left to the judiciary to interpret and apply. Waits v. Weller, 653 F.2d 1288, 1292 & n. 9, (9th Cir.1981). We agree with Shearson that arbitrators, in appropriate cases, may decide questions of law. See Lundgren v. Freeman, 307 F.2d 104, 109 (9th Cir.1962); see also Wilko, 346 U.S. at 431"32, 74 S.Ct. at 184"85 (expressed hope for use of arbitration in disputes based on statutes). In some situations, however, it has been determined that for policy reasons the balance as a matter of law weighs against arbitration of certain disputes. E.g. Wilko, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (Securities Act of 1933); Power Replacements, Inc. v. Air Preheater Co., 426 F.2d 980 (9th Cir.1970) (antitrust claims). We have not foreclosed the possibility that in other situations the balance may swing in favor of arbitration if there is an express provision, fairly bargained for, that provides for arbitration of the statutory question. See Leyva, 593 F.2d 857, 863 (9th Cir.1979). It is up to case-by-case interpretation to determine which statutes are such that an arbitrator can consider the statutory claim.] | It is up to case-by-case interpretation to determine which statutes are such that an arbitrator can consider a claim thereunder. | Do courts use a case by case interpretation to determine which statutes allow an arbitrator to consider a statutory claim? | 007126.docx | LEGALEASE-00123867-LEGALEASE-00123868 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17183 | State ex rel. Atty. Gen. v. Vela, 987 N.E.2d 722 | 75+6 | "[T]he manifestation of intention to create a trust may be by written or spoken words or by conduct. No particular form of words or conduct is necessary for the manifestation of intention to create a trust." Brown v. Holloway (1981), 2nd Dist. No. CA 6689, 1981 WL 2853, citing Restatement of Trusts 2d Section 24, Restatement of Trusts 2d, Section 351, comment b, applied to charitable trusts. The plain language of NFP's Articles contemplates a fiduciary relationship between NFP and the children and families for whom the non-profit was created to serve. | No particular form of words or conduct is necessary for the manifestation of intention to create a charitable trust. R.C. S 109.23. | What form is required to create a charitable trust? | 013342.docx | LEGALEASE-00122674-LEGALEASE-00122675 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17184 | City of Des Plaines v. Redella, 365 Ill. App. 3d 68 | 148+2.19(1) | While no case in Illinois has directly addressed this issue, courts in other states have determined compensation is not required when a private road is converted to a public highway by prescriptive easement. See e.g., Algermissen v. Sutin, 133 N.M. 50, 61 P.3d 176, 185 (N.M.2002) ("The general rule is that acquisition of an easement by prescription is not a taking and does not require compensation to the landowner"); Board of County Commissioners of Saguache County v. Flickinger, 687 P.2d 975, 984 (Colo.1984). But see Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d 206, 217"27 (D.R.I.2002). | Property owners were not entitled to just compensation from city after private road owned by owners was converted into a public highway by prescriptive easement; statute allowed city to convert private road to a public highway by prescription, and conversion by prescription did not constitute a governmental taking for which compensation was required. U.S.C.A. Const.Amend. 5; S.H.A. Const. Art. 1, S 5; S.H.A. 605 ILCS 5/2-202. | Is acquisition of an easement by prescription a taking? | 017459.docx | LEGALEASE-00122590-LEGALEASE-00122591 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 17185 | United States v. Rojas, 812 F.3d 382 | 221+391 | Extraterritorial application must also be consistent with international law. See id. at 394. "The law of nations permits the exercise of criminal jurisdiction by a nation under five general principles [:]. the territorial, national, protective, universality, and passive personality principles." Id. (citation omitted). The government argues that the criminalization of the defendants' conduct is justified under the protective and territorial principles. | Extraterritorial application of United States law must also be consistent with international law. | Must extraterritorial application be consistent with international law? | 019707.docx | LEGALEASE-00123760-LEGALEASE-00123761 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 17186 | United States v. One (1) 43 Foot Sailing Vessel Winds Will, License O.N. 531317/U.S. & Equip., 405 F. Supp. 879 | 221+138 | The United States has a duty under international law to "effectively exercise its jurisdiction and control in administrative, technical and social matters over ships flying its flag." Article 5, Convention on the High Seas, 15 United States Treaties 2313 (hereafter C.H.S.). On the high seas, only the vessels of the United States Government may exercise jurisdiction over United States flag vessels. Article 6, C.H.S. Since no nation may exercise sovereignty over the waters of the high seas, Art. 1, C.H.S., the maintenance of public order on the world's oceans depends upon effective control in accordance with their treaty obligations by the nations of the world over vessels flying their flag. Throughout history, governments have had a direct and special interest in the conduct and operation of their citizen's vessels and the immunity of such vessels on the high seas from interference by foreign governments. One method of ensuring that foreign governments do not interfere with the exercise of traditional freedoms of the seas by United States vessels requires the United States to exercise them as required by international law. Article 5, C.H.S. | No nation may exercise sovereignty over the waters of the high seas. | Can any nation exercise sovereignty over the waters of the high seas? | 020585.docx | LEGALEASE-00123330-LEGALEASE-00123331 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 17187 | In re Funneman, 155 B.R. 197 | 289+559 | Under the Uniform Partnership Act, S.H.A. 805 ILCS 205/1"43, a partner's interest in a partnership is a personal property interest consisting of "his share of the profits and surplus." Id. " 26. See, e.g., In re Pentell, 777 F.2d 1281, 1285 (7th Cir.1985). Although partners hold specific partnership property as tenants in partnership, S.H.A. 805 ILCS 205/25, the incidents of this tenancy are so limited that a partner has no right to possess partnership property except for partnership purposes and creditors of a partner cannot reach partnership property. Id; see, e.g., In re Minton Group, Inc., 46 B.R. 222, 224"25 (S.D.N.Y.1985); In re Manning, 37 B.R. 755, 758 (Bankr.D.Colo.1984), aff'd, 831 F.2d 205 (10th Cir.1987). Moreover, partners' rights in partnership property are secondary to the rights of partnership creditors. S.H.A. 805 ILCS 205/40. " "Until the creditors of the partnership are satisfied, each partner has no right to any distribution from the partnership." " In re Olszewski, 124 B.R. 743, 746 (Bankr.S.D.Ohio 1991) (quoting Johnson v. Investment Leasing, Inc. (In re Johnson), 51 B.R. 220, 222 (D.Colo.1985)). | Under Illinois law, partner has no right to possess partnership property except for partnership purposes. | Do partners have a right to possess partnership property for non partnership purpose? | Partnership - Memo 168 - BP.docx | ROSS-003289403-ROSS-003289405 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17188 | Deford v. Reynolds, 36 Pa. 325 | 289+804 | The rule doubtless is, that an unknown dormant partner may retire from the firm without giving notice of his retirement, and thenceforth be no longer liable for debts which the firm may incur. Having ceased to be a partner in fact, he is not a party to the contract which creates the debt; and, being unknown, he has not encouraged the creditor to rely upon his responsibility. But was Reynolds a dormant partner? And could the court, as matter of law, instruct the jury that he was, if they believed he was not known by the plaintiffs to be a partner? Does the mere fact that one selling goods to a firm is unacquainted with the names of all the persons who compose it, establish that those are dormant partners as to him whose names are unknown? It is perhaps not easy to define what constitutes a dormant partner in all cases. The word is sometimes used in opposition to active, and, at other times, as contradistinguished from ostensible or known. This case does not require us to attempt a precise definition. McCulloh and Reynolds were in partnership, it is admitted, until April 7th 1853. They were the only partners. They transacted business under a firm name that represented to those dealing with them that some other than R. McCulloh was responsible. The vendor of goods, of course, gave credit, not to McCulloh alone, but to him and whatever other persons were embraced within the company. He may not have known the name of the person included under the description "& Co.," and yet have known that the partner not named was the most responsible. Indeed, he might have been the active partner, and yet unknown by name to the creditor. Now suppose that the Messrs. Deford had known that there was a partner of Robert McCulloh, an open partner, known as such to the community at Chambersburg. Suppose they had known that he was the active agent in transacting most of the business of the firm, and that he alone was a man of property, but had not been | A dormant partner may retire from the firm without giving notice of his withdrawal; but where A and B trade as A & Co., B is not a dormant partner, though a creditor be ignorant of the name of the other partner. | Does a dormant partner need to give notice of his retirement? | Partnership - Memo 182 - BP.docx | ROSS-003301567-ROSS-003301568 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17189 | Vega v. La Movida, 294 Ga. App. 311 | 307A+3 | The Vegas contend that the trial court erred in denying their motion for mistrial after the court excluded the evidence of prior criminal activity discussed in Division 1(a) above. Because the trial court had earlier denied La Movida's pre-trial motion in limine as to this same evidence, the Vegas assert that they were prejudiced by the court's subsequent exclusion of this evidence after the Vegas had referred to it in their opening statement. This argument fails, however, because a trial court may modify a ruling on a motion in limine. | Trial court may modify a ruling on a motion in limine. | Can trial court modify a ruling on a motion in limine? | 029169.docx | LEGALEASE-00123079-LEGALEASE-00123080 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17190 | S. Life & Health Ins. Co. v. Wynn, 29 Ala. App. 207 | 369r1 | The appellee cites the case of Penn Mutual Life Ins. Co. v. Cobbs, 23 Ala. App. 205, 123 So. 94, 97. In the Cobbs case this court held, in line with the pronouncement in the Ainsworth case, that "Suicide was a felony at common law, and in Alabama is a crime involving moral turpitude." | The appellee owes that the case of Penn Mutual Life Ins. Co. v. Cobbs, 23 Ala. App. 205, 123 So. 94, 97. In the Cobbs case this court held, in line with the pronouncement in the Ainsworth case, that "Suicide was a felony at common law, and in Alabama is a crime involving moral turpitude." For the reason that a suicide may not be punished, it is argued that this common law offense is now obsolete and serves no practical purpose for the protection of society. We do not agree. Since suicide is a crime, one who aids and abets another in, or is accessory before the fact to, self-murder is amenable to the law. Const. art. 11.51; G.S. S 14-1. | Does suicide involve moral turpitude? | 04465.docx | LEGALEASE_00122546-LEGALEASE_00122547 | Condensed, SA, Sub 0.52 | 0.52 | 0 | 1 | 1 | 1 |
| 17191 | State v. Willis, 255 N.C. 473 | 369r3 | Suicide is a crime, and one who aids and abets another in, or is accessory before the fact to self-murder is amenable to the law. Const. art. 11.51; G.S. S 14-1. | Suicide is a crime, and one who aids and abets another in, or is accessory before the fact to self-murder is amenable to the law. Const. art. 11.51; G.S. S 14-1. | Is aiding and abetting a suicide a crime? | Suicide - Memo 41 - JS.docx | ROSS-003287331-ROSS-003287333 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | | 1 |
| 17192 | In re Extradition of Kacz, 527 F. Supp. 2d 766 | 166r5 | Court would deny extradition demand made by authorities of Ireland, seeking contents of accused charged with aiding, abetting, and counseling commission of suicide; there was no comparable offense under federal law or law of West Virginia, where accused was found, and 23 states either had no relevant law or had aiding or abetting suicide statutes that were not substantially analogous to Ireland law, precluding necessary conclusion that crime of which accused was charged was felonious under law of preponderance of states. | Court would deny extradition demand made by authorities of Ireland, seeking contents of accused charged with aiding, abetting, and counseling commission of suicide; there was no comparable offense under federal law or law of West Virginia, where accused was found, and 23 states either had no relevant law or had aiding or abetting suicide statutes that were not substantially analogous to Ireland law, precluding necessary conclusion that crime of which accused was charged was felonious under law of preponderance of states. | Is aiding and abetting a suicide a crime? | 04483.docx | LEGALEASE_00122729-LEGALEASE_00122731 | Condensed, SA, Sub 0.89 | 0.89 | 0 | 1 | 1 | 1 |
| 17193 | Midland Tar Distillers v. M/T Lotos, 362 F. Supp. 1311 | 25T r13(3) | Agreement to arbitrate need not be embodied in any single document. | Agreement to arbitrate need not be embodied in any single document. | Does an arbitration agreement have to be embodied in a single writing or document? | Alternative Dispute Resolution - Memo 426 - RK.docx | ROSS-003286611-ROSS-003286612 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | 1 | 1 |
| 17194 | CubaFarms, United States, 116 Fed. Cl. 179 | 148r2 | Physical taking under the Fifth Amendment occurs when government encroaches upon or occupies private land for its own proposed use. U.S. Const. Amend. 5. | Physical taking under the Fifth Amendment occurs when government encroaches upon or occupies private land for its own proposed use. U.S. Const. Amend. 5. | Under which category of takings does the government seize property? | 01787.docx | LEGALEASE_00124300-LEGALEASE_00124304 | Condensed, SA, Sub 0.93 | 0.93 | 0 | 1 | 1 | 1 |

3029

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17195 | State v. Berrios, 185 N.C. 795. | 203=547 | Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. State v. Lipscomb, 134 N. C. 495, 47 S. E. 44; State v. Fuller, 114 N. C. 885, 19 S. E. 797. | Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. | What is murder in second degree? | 03054.docx | LEGALEASE 00192273-LEGALEASE 00192274 | Condensed, SA | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 17196 | Sampson v. Fed. Republic of Germany, 975 F. Supp. 1108 | 221=342 | The United States Supreme Court established the act of state doctrine in 1897 when it held that "[e]very sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). The act of state doctrine presumes that the official public acts of a foreign country are valid. W.S. Kirkpatrick & Co. v. Tectonic Corp., 493 U.S. 400, 409, 110 S.Ct. 701, 706 707, 107 L.Ed.2d 816 (1990). Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Although the act of state doctrine presumes that the official public acts of a foreign country are valid, it does not apply to the commercial activities of a sovereign State. Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976); furthermore, the act of state doctrine is concerned if the act does not have any subject matter jurisdiction. Sdemeso, 965 F.2d at 706. Therefore, if the FSIA precludes subject matter jurisdiction, the act of state doctrine does not create a cause of action, id. | Act of state doctrine, prohibiting courts of one country from sitting in judgment on acts of the government of another done within its own territory, does not apply to commercial activities of a sovereign state. | Does the act of state doctrine apply to commercial activities of a sovereign state? | 03058.docx | ROSS-003301213-ROSS-003301215 | Condensed, SA, Sub 0.86 | | 0 | 1 | 1 | 1 | 1 |
| 17197 | Intercontinental Ref. Corp. v. Texas Maracaibo, 307 F. Supp. 1291 | 221=351 | The position has two defects. It ignores defendants' right to show that particular conduct is reasonable even if it is otherwise an illegal boycott by acquiescence in the order of a foreign government Secondly, it overlooks the practical difficulties in the event that a national of the United States... For a showing of a bona fide compulsion by a foreign government immunizes an otherwise illegal boycott in restraint of trade... The rationale of the preclusion defense is set forth above. That the holding in Act of State is thus limited in its area... | Federal jurisdiction being present, a showing of bona fide compulsion by a foreign government immunizes an otherwise illegal boycott in restraint of trade by acquiescence in the order of a foreign government Secondly... Anti-Trust Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2; Clayton Act, § 4, 15 U.S.C.A. § 15. | Is part jurisdiction in what might otherwise be an illegal boycott immunized by acquiescence in the order of a foreign government? | 03059.docx | LEGALEASE 00124432-LEGALEASE 00124433 | Condensed, SA, Sub 0.66 | | 0 | 1 | 1 | 1 | 1 |
| 17198 | United States v. Laden, 92 F. Supp. 2d 189 | 221=370(5); 110=370(5) | Third, the relevance of the defendant's nationality to the Bowman rule is reinforced by a consideration of the relationship between this rule and the principle of extraterritorial jurisdiction recognized by international law. Under international law... the primary basis of jurisdiction is the "subjective territorial principle," under which "a state has jurisdiction to prescribe law with respect to... conduct that, wholly or in substantial part, takes place within its territory." Restatement (Third) of the Foreign Relations Law of the United States ("Restatement") § 402(1)(a)(1987); see also Christopher L. Blakesley, Extraterritorial Jurisdiction, in 2 M. Cherif Bassiouni (ed.), International Criminal Law 47*50 (2d ed.1999). International law recognizes five other bases of jurisdiction by which a state may reach conduct outside its territory: (1) the objective territorial principle, (2) the nationality principle, (3) the nationality principle, (4) the passive personality principle, and (5) the universality principle. See id. at 53*74. The objective territoriality principle provides that a state has jurisdiction to prescribe law with respect to "conduct that, wholly or in substantial part takes place outside its territory, but (a) is intended to have substantial effect within its territory... Restatement § 402(1)(c). The nationality principle provides that a state has jurisdiction to prescribe law with respect to "the activities, interests, status, or relations of its nationals outside as well as within its territory," id. § 402(2). The passive personality principle provides that a state may, under certain circumstances, "apply law particularly criminal law to an act committed outside its territory by a person not its national where the victim of the act was its national." id. § 402(g). | Rule of family did not prohibit extraterritorial application of statute prohibiting killing or attempted killing of a foreign official, official guest, or internationally protected person and use of weapon of mass destruction against a national of the United States while such national is outside the United States or against any property owned or used by the United States for conduct of foreign relations or foreign policy... 18 U.S.C.A. §§ 1116, 2332a(a). | Does the United States recognize principles of jurisdiction under international law by which a nation may reach conduct outside its territory? | 03M23.docx | LEGALEASE 00125069-LEGALEASE 00125071 | Condensed, SA, Sub 0.89 | | 0 | 1 | 1 | 1 | 1 |
| 17199 | White v. Manchester Enter., 871 F. Supp. 934 | 237=1 | Because public figures assume the risk of closer public scrutiny than private individuals and have access to media to effectively rebut any false statements made about them, public figures must establish "actual malice," i.e., that the publication was made with knowledge of or reckless disregard for the falsity of the statements, to recover for defamation. Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); McCurdy v. Hughes Herald/Tander Co., 789 S.W.2d 758 (Ky.1990). In contrast, private individuals need only establish simple negligence to recover for defamation. Warford, 789 S.W.2d at 763; McCall v. Courier Journal & Louisville Times Co., 623 S.W.2d 882 (Ky.1981), cert. denied, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982). | Private individuals need only establish simple negligence to recover for defamation under Kentucky law. | Is it sufficient for a private individual to prove only negligence to recover for defamation? | 021593.docx | LEGALEASE 00125150-LEGALEASE 00125151 | SA, Sub | 0.87 | 0 | | 1 | 1 | 1 |
| 17200 | Organ v. Butler, 478 S.W.2d 610 | 302=198 | Whatever appellees pleaded as to conversion may be regarded as surplusage, since, taken as a whole, the petition clearly set out all necessary elements to recover for damages on a theory that they had performed under the lease contracts which had expired, thus they pleaded a cause of action, regardless of the same appellee had notice... of money... For a variance between the pleading and proof to be fatal, the variance must be substantial, misleading, and a prejudicial departure. Glens Falls Insurance Company v. Peters, 386 S.W.2d 529 (Tex.Civ.App. Houston 1965, no writ). Even a sworn denial... | For a variance between pleadings and proof to be fatal, the variance may be regarded as surplusage, since, taken as a whole, the petition clearly set out all necessary elements to recover on a theory that they had performed under the lease contracts which had expired, thus they pleaded a cause of action... to be substantial, misleading, and a prejudicial departure. | When will a variance between the pleading and the proof of claim be fatal? | Pleading_Memo 162_RMM.docx | ROSS-003303369-ROSS-003303881 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17200 | Winkle v. Great Plains Gas, 215 Iowa 587 | 229×343 | The plaintiff in his reach, with citation of many authorities, upon the legal application that courts have broad power to assure the orderly administration of justice ... | Courts favor expeditious trials on the merits, but under settled rules of appellate practice and judgment will not be set aside for plain error, through counsel, has ignored plain mandates of rule with ample opportunity to abide by them. See, e.g., M.I.C.A. Rules of Civil Procedure, rules 123.1, 252, 253 | Do courts favor expeditious trials on the merits? | Pretrial Procedure - Memo #476 - C - HAM.docx | ROSS-003298193 ROSS-003298192 | Condensed, SA, Sub 0.79 | 0.79 | 0 | 1 | | 1 | 1 |
| 17202 | Jackson v. Joyner, 309 S.W.3d 910 | 307A×1 | We begin our consideration of the parties' arguments by noting that, as Mr. Jackson points out, this Court recently opined that a motion in limine should not be used as a substitute for a motion for summary judgment ... | A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. | Is a motion in limine subject to the same safeguards as a motion for summary judgement? | Pretrial Procedure - Memo #423 - C - M.docx | ROSS-003295219 ROSS-003295220 | Condensed, SA 0.83 | 0.83 | 0 | 1 | | 1 | 1 |
| 17203 | Matter of Valley Rd. Sewerage Co., 154 N.J. 224 | 268×731 | We first address Valley Road's contention that the BPU lacks authority to revoke its franchise and to seek the appointment of a custodial receiver with the power to operate and control the company ... | Evidence supported Board of Public Utilities (BPU) rejection of proposed business plan of sewer utility opposing revocation of franchise rights and appointment of custodial receiver with power to operate all public utilities and their property rights, equipment and franchises? | Does the Board of Public Utilities (BPU) have the power to supervise and regulate all public utilities and their property rights, equipment and franchises? | 042283.docx | LEGALEASE-00125061 LEGALEASE-00125062 | Condensed, SA, Sub 0.55 | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 17204 | Sw. Bell Tel. Co. v. Vollmer, 805 S.W.2d 825 | 372×931 | Unless found to be unreasonable, these tariffs carry the dignity of statutory law. Western Union Tel. Co. v. Esteve Bros. & Co., 256 U.S. 566, 572, 41 S.Ct. 584, 65 L.Ed. 1094 ... | Unless found to be unreasonable, telephone company tariffs carry the dignity of statutory law, and, conversely, if a tariff is proved reasonable, Vernon's Ann.Texas Civ.St. art. 1446c, § 1 et seq. | Do tariffs carry the dignity of statutory law? | 042283.docx | LEGALEASE-00125294 LEGALEASE-00125295 | Condensed, SA, Sub 0.7 | 0.7 | 0 | 1 | | 1 | 1 |
| 17205 | Smith v. Safeguard Mut. Ins. Co., 212 Pa. Super. 83 | 224×271 | The prothonotary is merely the clerk of the Court of Common Pleas. He has no judicial powers before court and he may be authorized to act for others by virtue of his office, as prothonotary it is his duty to record all judgments entered to appear ... | Prothonotary has duty to record all judgments entered by court or confessed by parties before court and he may be authorized to act for others by virtue of his office; as prothonotary it is his duty to record all judgment powers are derived from instrument under which he acts and not from his office, 12 P.S. § 739. | Who is a prothonotary of a Court? | 013664.docx | LEGALEASE-00125617 LEGALEASE-00125619 | Condensed, SA, Sub 0.72 | 0.72 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17206 | State ex rel. Harvey v. Second Judicial Dist. Court, 117 Nev. 754 | 79+1 | We conclude that the designation of the county clerk as ex officio clerk of the district court reflects nothing more than an effort by the constitution's drafters to increase efficiency by allowing the county clerk to perform court-related duties. Therefore, we find no inherent, inalienable, or unbridled right of the county clerks to perform the office of court clerk without direction from the courts in their districts. Rather, we conclude that the district courts have the authority to supervise the county clerks when they are acting in the capacity of court clerk. When acting as court clerk, the county clerk is performing duties for the judicial system and is an arm of the court. "It is entirely contrary to the centralized, hierarchial, and well organized structure of the state judiciary for the court clerk to be a "loose cannon sliding around on the county's judicial deck." " | District courts have the authority to supervise county clerks when they are acting in the capacity of court clerk; when acting as court clerk, the county clerk is performing duties for the judicial system and is an arm of the court. Const. Art. 4, S 32. | Is a district court clerk an arm of the court? | 013505.docx | LEGALEASE-00125673-LEGALEASE-00125674 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 17207 | Sweeney v. Philadelphia Record Co., 126 F.2d 53 | 237+10(1) | Was there libel of the plaintiff as a congressman? The gist of the publication was that the basis of the appellant's opposition to the proposed judicial appointee was that he was a foreign born Jew. We can find no decision in Pennsylvania squarely in point, but Reed v. Patriot Co., 45 Dauph.Co.Rep., Pa., 1, a decision of the Court of Common Pleas of Dauphin County, indicates that the same rule of libel applies in respect to a member of the state senate, a member of the Bar of Pennsylvania, as applies to other public officers.Under the law of Pennsylvania it is libel per se to charge a public officer with a crime or misdemeanor in office. See Rowand v. DeCamp, 96 Pa. 493. In the cited case the libel charged that a borough burgess was "a damned thief". It is also actionable per se under the law of Pennsylvania to impute criminality to the official conduct of a judge. See Briggs v. Garrett, 111 Pa. 404, 2 A. 513, 56 Am.Rep. 274, and Mulderig v. Wilkes-Barre Times, 215 Pa. 470, 64 A. 636, 114 Am.St.Rep. 967. It is libelous in Pennsylvania to say of a judge that he "has done that which will remove him from his seat." See Hook v. Hackney, 16 Serg.& R.,Pa., 385. In short under the law of Pennsylvania in order to constitute libel per se the misconduct asserted in the published matter must be of a criminal nature or at least such as would warrant the removal of the public officer from his office or render him an improper person to hold public office. The misconduct alleged by the libel must really be in derogation of the oath of office taken by the public officer. | Under Pennsylvania law, it is "libel per se" to charge a public officer with a crime or misdemeanor in office and to impute criminality to the official conduct of a judge. | Is it libel per se to charge a person with misdemeanor? | 021110.docx | LEGALEASE-00125610-LEGALEASE-00125611 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 17208 | Muchnick v. Post Pub. Co., 332 Mass. 304 | 237+97 | The point that the article was a fair comment upon a matter of public interest and therefore privileged is a matter of defence not open on demurrer.]\| Robinson v. Coulter, 215 Mass. 566, 571, 102 N.E. 938; Peck v. Wakefield Item Co., 280 Mass. 451, 457, 183 N.E. 70; Ingalls v. Hastings & Sons Publishing Co., 304 Mass. 31, 34-35, 22 N.E.2d 657. | In libel action, contention that newspaper editorial had been a fair comment upon matter of public interest and therefore privileged was matter of defense not open on demurrer to declaration. | Are matters of defence open on demurrer? | Pleading - Memo 169 - RMM.docx | ROSS-003300096-ROSS-003300097 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 17209 | State ex rel. Steere v. Franklin Cty. Farm Bureau, 172 Kan. 179 | 23+4(2) | It will be noted we did not say the farm bureau was a municipal corporation but we said it was a public organization, somewhat similar to a school district, or other municipality. Coupled with the language immediately following it, the statement undoubtedly means the farm bureau once properly organized had all the power and authority given it by the statute and was a legal entity in and of itself. A corollary of such a statement must of necessity be that it has only those powers which are conferred on it by statute. This is a rule we have announced many times with reference to school districts, cities, drainage districts and similar organizations, that is, this organization is a creature of the state and has only the powers conferred on it by the statutes, and such incidental powers as are necessary to carry the statutory powers into effect. See State ex rel. Mitchell v. City of Coffeyville, 127 Kan. 663, 274 P. 258, 63 A.L.R. 610; Kansas Gas & Elec. Co. v. City of McPherson, 146 Kan. 614, 72 P.2d 985; and Trimble v. City of Topeka, 147 Kan. 111, 75 P.2d 241. | County Farm Bureaus were governmental agencies and once properly organized had all power and authority given by statute and were legal entities in and of themselves, but such organizations, being creatures of state, had only powers conferred on them by statutes, and such incidental powers as were necessary to carry statutory powers into effect. G.S.1949, 2-601 to 2-607, 17-1601 to 17-1631. | What powers does a public organization have? | 006721.docx | LEGALEASE-00125784-LEGALEASE-00125785 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 17210 | Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 805 So. 2d 835 | 386+6 | We affirm the dismissal of the trespass count, because a bank account is not a chattel which can be the subject of a trespass. "Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." Coddington v. Staab, 716 So.2d 850, 851 (Fla. 4th DCA 1998). The word "chattels" is defined as:Every species of property, movable or immovable, which is less than a freehold. * * * Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another. | Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification. | Can a bank account be regarded as chattel and the subject of a trespass? | 047213.docx | LEGALEASE-00125816-LEGALEASE-00125817 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17211 | Craigslist Inc. v. 3Taps Inc., F.42.7 Supp. 2d 942 | 386+7 | Plaintiff moves to dismiss Craigslist's trespass claim on the grounds that it does not adequately allege injury. Under California law, the tort of trespass to chattel encompasses unauthorized access to a computer system where "[1] defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." eBay, Inc. v. Bidder's Edge, Inc., 100 F.Supp.2d 1058, 1069-70 (N.D.Cal.2000); see also Intel Corp. v. Hamidi, 30 Cal.4th 1342, 1347, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003) (citing eBay as "the leading case"); Thrifty-Tel, Inc. v. Bezenek, 46 Cal.App.4th 1559, 1566 & n. 6, 54 Cal.Rptr.2d 468 (1996) ("among the first cases to apply this tort in an electronic context"). For such a claim to lie, the defendant's access to the system must cause "actual damage," "such as impairment to the condition, quality, or value" of the computer system or "depriv[ation of] its use." Hamidi, 30 Cal.4th at 1357, 1 Cal.Rptr.3d 32, 71 P.3d 296 (citations omitted). "[T]he tort does not encompass ... an electronic communication that neither damages the recipient computer system nor impairs its functioning." Id. at 1347, 1 Cal.Rptr.3d 32, 71 P.3d 296. | Under California law, tort of trespass to chattel does not encompass electronic communication that neither damages recipient computer system nor impairs its functioning. | What must a plaintiff establish to prevail on a claim for trespass to chattels based on access to a computer system? | 04720.docx | USAGE45E 00125660 USAGE45E 00125661 | Condensed, SA | 0.87 | 0 | 1 | | 1 | |
| 17212 | Johnson v. Martin, 423 So. 2d 868 | 18464 | The measure of damage for injury to real property is the difference in the reasonable market value of the property immediately before the injury and its reasonable value after the property was immediately after the injury. McCall v. Roses, 244 So. 2d 152, 155 (La.App. 4 Cir. 1971). In the absence of actual damages to property resulting from trespass, the owner of the property is entitled to nominal damages. Foust v. Kinney, 202 Ala. 392, 80 So. 474 (1918). Damages to personal property may also be recovered in a trespass action. Jastram v. McAuliffe, Inc., 29 Ala. 56, 300 So.2d 94 (1974). In the instant case there was no proof of actual damages to the land or any personal property. Nominal damages could then be awarded because the trespass was admitted. | Damages to personal property may be recovered in a trespass action. | Can damages to personal property be recovered in an action for trespass? | Trespass - Memo 201-RK.docx | ROSS-003299883 ROSS-003299884 | Condensed, SA | 0.91 | 0 | 1 | | 1 | |
| 17213 | St. John v. Superior Court, 87 Cal. App. 3d 80 | 106+55 | Article VI, section 4 provides that the county clerk is ex officio clerk of the superior court of that court of California in its particular county. This simply means that the county clerk is also the clerk of the superior court, but it makes no difference whether the law declares in terms that the county clerk shall also be the office clerk of the superior court. (See People v. Durick (1862) 20 Cal. 94, 95.) The clerk of the superior court therefore is by article VI, section 4 a constitutional officer, and not subject to appointment or removal by the court. (See Houston v. Williams (1859) 13 Cal. 24, 26.) Nevertheless, as important reading on, the power of the court to provide for such clerk, which creates the office also empowers the Legislature to "provide for the officers and employees of each superior court", and in article VI, section 4, subdivision (b) is provided that "[t]he Legislature or the governing body" may provide for county officers other than the governing body. | The section of the Government Code which authorizes a superior court to transfer from the county clerk to the court's executive officer certain "powers, duties and responsibilities of and services performed or performed by the county clerk in connection with judicial actions, proceedings and records" simply authorizes the superior court to transfer from the county clerk to the court's executive officer functions performed by the county clerk, as county clerk, in connection with judicial actions and records; therefore, the enactment of the section did not violate the provision of the State Constitution which provides that the county clerk is ex officio clerk of the superior court. West's Ann.Const. art. 6, § 4; West's Ann.Gov.Code, § 69898(b). | Is a county clerk also the clerk of the superior court? | 01349.docx | USAGE45E 00126321 USAGE45E 00126322 | Condensed, SA, Sub | 0.27 | 0 | 1 | | 1 | |
| 17214 | Irshe v. Nugent, 321 F.3d 35 | 237+49 | The fair report privilege protects publishers of arrests by police. Jones v. Taibbi, 400 Mass. 786, 796, 512 N.E.2d 140 (1987) ("An arrest by an officer is an official action, ... a report of the fact of the arrest or the charge of crime made by the officer or by the other making or entering the arrest is therefore within the [fair report privilege]."). Thus, a newspaper's "publication of the fact that one has been arrested, and upon what accusation, is not actionable, if true." Thompson v. Globe Newspaper Co., 279 Mass. 176, 188, 181 N.E. 249 (1932). Therefore, so long as a newspaper's "rough and ready summary of the arrest is reasonably correct," the newspaper's report is protected by the privilege. Cf. M6G, Inc. v. Gannett Mass. Broadcasters, Inc., 23 Mass.App.Ct. 394, 396, 513 N.E.2d 283 (1988). | Fair report privilege under Massachusetts law protects published reports of arrests by police from liability for defamation; thus, newspaper's "publication of fact that one has been arrested, and upon what accusation," is not actionable, if true. | Does the publication of an arrest constitute defamatory action? | 02114.docx | USAGE45E 00126303 USAGE45E 00126304 | Condensed, SA, Sub | 0.7 | 0 | 1 | | 1 | |
| 17215 | Couture v. Lowery, 122 Vt. 239 | 385+13(3) | Heretofore, the Statute of Frauds could be avoided of by a seasonal objection without a showing specially pleaded. Tuplin v. Vreeland Florist, Inc., 99 Vt. at pages 187, 123 A. at pages 427; Lafayette v. Eastman, 118 Vt. 220, 227, 226 105 A.2d 265. Under 12 V.S.A. "1024, the defendant in Frauds and now the affirmative defense and the specific is pleaded, this defense is no longer available as a rule of evidence. When once asserted as a matter of defense the plaintiff must then assume the burden of proof, as in the side of waiver. The purpose of 12 V.S.A. "1024, which was derived from Rule 8(c) of Federal Rules of Civil Procedure, 28 U.S.C.A., requiring that the statute be pleaded, is to prevent surprise. By reason of this statute the burden is cast upon the pleader to give fair notice of his affirmative defense so that the opposing party may know what defenses, did not mean to be, if appropriate pleading they spoke when the statute required them to do so. Therefore, under this statute an affirmative defense must now be specially pleaded. This follows that mere failure to object, if the statute is pleaded, is not a waiver. | Statute of Frauds is an affirmative defense which must be specially pleaded and when once asserted as a matter of defense, plea or answer is then inconsistent with that of waiver. 12 V.S.A. § 1024; Fed.Rules Civ.Proc. rule 8(c), 28 U.S.C.A. | Should an affirmative defense be specially pleaded? | 02305s.docx | USAGE45E 00126232 USAGE45E 00126233 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17216 | Kaufman v. Comm'n for Lawyer Discipline, 197 S.W.3d 867 | 46H+1156 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. See Harford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex. 1963). A motion in limine seeks to prevent the opposing party from asking certain prejudicial questions and introducing prejudicial evidence in front of the jury without first seeking leave of court. Weidner v. Sanchez, 14 S.W.3d 353 (Tex. App.-Houston [14th Dist.] 2000, no pet.); Fort Worth Corp, 377 S.W.3d at 792. The granting of the motion is not a final ruling on the evidence. Bifano v. Young, 665 S.W.2d 536, 541 (Tex. App.-Corpus Christi 1983, writ ref'd n.r.e.). A ruling on a motion in limine preserves nothing for review. Hartford, 369 S.W.2d at 335 ("to neither case [1] question not asked or evidence not offered, or (2) questions asked or evidence offered that the trial court is overruling the motion in limine be regarded as harmful or reversible error."); Caterpillar Tractor Co. v. Bierl, 674 S.W.2d 782, 792 (Tex.App.-Corpus Christi 1984, no writ) ("A trial court's actions in granting or denying a motion in limine preserves nothing for appellate review. The court is not required to exclude the evidence in the offered, nor is the party required to offer the evidence during the trial to preserve error. Rather, to complain on appeal that the trial court erroneously excluded evidence, Kaufman must have offered the evidence during trial and obtained a ruling from the trial court. Ulogo v. Villanueva, 377 S.W.3d 496, 501 (Tex. App.-Houston [1st Dist.] 2009, no pet.). | Attorney did not proffer during trial evidence of this substantive defense, which was included by motion in limine, or obtain an adverse ruling from evidence, which preserves nothing for review? | Pretrial Procedure - Memo 8364 - C-T1.docx | ROS5-00328664ROS5-00328661 | Condensed, SA, Sub | 0.81 | 0 | | | 1 | 1 |
| 17217 | Gen. Tel. Co. of Sw. v. City of Perryton, 552 S.W.2d 888 | 92+2426 | A city has no inherent power to regulate a utility. Southwestern Bell Telephone Company v. Houston Independent School District, 397 S.W.2d 419, 421 (Tex.1965.) Fixing and regulating utility rates is a governmental function inherent in the state. The function is legislative in character, and the legislature may delegate the power to rate making governmental agencies or to municipal corporations to utilize in exercising authority the limits of such municipal corporations. Kosa v. Texas Power & Light Co., 147 Tex. 491, 1 S.W.2d 228 (1947). | Fixing and regulating utility rates is a governmental function inherent in the state; the function is legislative in character, and legislature may delegate power through rate-making governmental agencies or to municipal corporations as to utilities operating within limits of such municipal corporations. | Public Utilities - Memo 178 - AM.docx | ROS5-00328672,ROS5-00328673 | SA, Sub | 0.65 | | 0 | | 1 | |
| 17218 | Russell v. Am. Real Estate Corp., 89 S.W.3d 204 | 386+6 | Trespass to personalty is an injury to, or interference with, possession of the property, unlawfully, with or without the exercise of physical force. Mountain States Tel. & Tel. Co. v. Vowell Constr. Co., 161 Tex. 432, 341 S.W.2d 148, 150 (1960). Jamison v. Nat'l Loan Investors, L.P., 4 S.W.3d 465, 469 n. 2 (Tex.App.-Houston [14 Dist.] 1999, pet. denied). Destruction of, or injury to, personal property, regardless of negligence, may be a trespass. Mountain States, 341 S.W.2d at 150; Jamison, 4 S.W.3d at 469. | Trespass to personalty" is an injury to, or interference with, possession of the property, unlawfully, with or without the exercise of physical force. | 04721.docx | LEGALEX-00120999 LEGALEX-00120600 | Condensed, SA | 0.7 | | 0 | | 1 | |
| 17219 | Wecht v. Suburban Newspapers of Greater St. Louis, 13 S.W.3d 502 | 386+6 | Personal property is defined as a any "movable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary 1233 (7th ed.1999). A trespass to personal property is defined as a "wrongful taking of chattels." Id. at 1509. Chattels is defined as "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject of real property. "Personal chattels is defined as a "Tangible goods or an intangible right." Id. | A "trespass to personal property" is defined as a wrongful taking of chattels. | 04721-B.docx | LEGALEX-00120308 LEGALEX-00120609 | Condensed, SA | 0.81 | | 0 | | 1 | |
| 17220 | Poff v. Hayes, 763 So. 2d 234 | 386+6 | Trespass to real property is similar to trespass to chattels in that trespass, generally, "is a wrong against the right of possession." Jefferson v. Bush, 668 So.2d 1341, 1363 (Miss.1996) (Banks, J.). A trespass to land occurs when a person wrongfully enters into the the landkeeper's office,was an interference which corporate property. Because a process enters the landkeeper's office, corporation that owned and possessed the property, see Part III A., supra, Hayes's not entitled to prosecute this claim. To the extent the judgment relates to his claim regarding trespass to real property, the judgment is reversed. A judgment is rendered for Poff on that claim. | Is trespass a wrong against the right of possession? | Trespass - Memo 182 - RK.docx | ROS5-00328428 | Condensed, SA | 0.79 | | 1 | | | 1 |
| 17221 | Fairbairn v. Eason, 351 N.C. 151 | 386+6 | The basis of a trespass to chattel cause of action lies in "injury to possession," Morley v. Thompson, 259 N.C. 612, 617, 131 S.E.2d 247, 251 (1963). A successful action for trespass to chattel requires the actor of the trespass, see White v. Morris, 8 N.C. 301, 303 (1821); Carson v. Noblet, 6 N.C. 117, 118 (1812); and, the unauthorized interference or dispossession of the property, see Binder v. General Motors Acceptance Corp., 222 N.C. 512, 515, 23 S.E.2d 894, 896 (1943); Kirkpatrick v. Crutchfield, 178 N.C. 348, 350, 100 S.E. 602, 604 (1919); Reader v. Moody, 48 N.C. 372, 377 (1856). | What is the basis of a trespass to chattel cause of action? | 04727.docx | LEGALEX-00120028- LEGALEX-00120629 | Condensed, SA | 0.89 | | 0 | | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17222 | Galloway v. McHugh, 170 F. Supp. 2d 243 | 11n11 | In order to determine whether a debtor had property interest for cause of action at the time he filed for bankruptcy, we look to state law. State Farm Ins. Co. v. Swift, 129 F.3d 792, 795 (5th Cir. 1997). In Connecticut, a cause of action accrues when plaintiff suffers actionable harm. Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, 521, 562 A.2d 1100 (1989). The fact that this accrual date may be different from the date on which the statute of limitations begins to run is irrelevant. As the Fifth Circuit discussed in Swift, We are determining when the [cause] of action accrued for purpose of ownership in a bankruptcy. The time of discovery of the injury is not relevant to this inquiry. A cause of action can accrue for bankruptcy purposes before the statute of limitations for that cause of action has begun to run. 129 F.3d at 798, see also In re Alpour, 252 B.R. 230, 235 (Bankr. M.D.Fla.2000) (holding that the "accrual" of a cause of action for purpose of determining the trigger date for the statute of limitations may be different from the "accrual" of the action for purpose of determining whether the claim constitutes property of a bankruptcy estate under "541 of the Bankruptcy Code.). In these cases, we must determine whether the claim is the kind of claim that is necessary to look to state law on statute of limitations to determine when a cause of action accrues because accrual is rarely discussed apart from that issue, yet cautioning that it is important to note that accrual principles only aid our analysis of discovery and tolling). In the Alpour case, the court held that the accrual test for purposes of "541 was whether all of the elements of the cause of action had accrued at the time the bankruptcy case was commenced, so that the claim was "sufficiently rooted in the debtor's prebankruptcy past." 252 B.R. at 235. | Does cause of action accrue when plaintiff suffers an actionable harm? | Action - Memo #124 - C USAG-00.docx | ROSS-00313356-ROSS-00313357 | Condensed_SA | 0.96 | 0 | | 1 | 1 | |
| 17223 | In re Estate of Vitocco, 214 S.W.3d 213 | 30+3226 | Standing is an implicit part of subject-matter jurisdiction. M.O. Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 708 (Tex.2001). Whether a party has standing to sue is a question of law, which we review de novo. Hobbs v. Van Stavern, No. 01-07-00644-CV, — S.W.3d —, 2006 WL 3059433, at *2 (Tex.App.-Houston [1st Dist.] Dec. 2, 2006, no pet.) (citing Tex.Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex.2004)). Standing focuses on whether a party has a sufficient relationship with the lawsuit. Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist., 925 S.W.2d 659, 662 (Tex.2000), and can be based on either statutory or common-law authority. Everett v. TK-Taito, L.L.C., 178 S.W.3d 844, 850 (Tex.App.-Fort Worth 2005, no pet.). | Whether a party has standing to sue is a question of law that the Court of Appeals reviews de novo. | 00565.docx | LEGALEASE-00.00573-LEGALEASE-00.00573 | Condensed_SA, Sub 0.86 | | 1 | | 1 | 1 | 1 |
| 17224 | Bealer v. Real Homes, 103 S.W.3d 487 | 241+43 | Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. Moreno v. Sterling Drug, Inc., 787 S.W.2d at 351 (Tex.1990). Exceptions to this rule, are recognized only when the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objective. Id. The discovery rule exception is a very narrow exception to the legal injury rule, which determines when the cause of action accrued where plaintiff could not have known of his injury when it occurred. | Is occurrence of an injury essential for a cause of action? | 00736.docx | LEGALEASE-00.00676-LEGALEASE-00.00677 | Condensed_SA, Sub 0.75 | | 0 | | 1 | 1 | |
| 17225 | Nationwide Ins. Co. v. Ohio Dep't of Transp., 61 Ohio Misc. 2d 761 | 13+1 | Turning now to those considerations governing defendant's motion, the law is clear that a cause of action which has accrued is a vested and substantial property right; it need not be [New Const. art IV, sec. 16 16(B), sec. 16(B); Ohio App. 401, 412... | Can a cause of action be taken away or diminished after it has accrued? | Action - Memo # 102 - C VAd.docx | ROSS-00.02289867 | Condensed_SA | 0.42 | 0 | | 1 | 1 | |
| 17226 | Pastore-A v. Robin, 51 1 F.2d 529 | 13+40 | As an additional basis for denying plaintiff's claims, the trial court held that the doctrine of laches applied. But the doctrine is inapplicable here. Melendez, short of the running of the applicable statute of limitations, the reason for the running of the applicable statutory time limitation. The fact that defendant's financial condition improved during this period is no evidence to plaintiff's action on the notes. | More delay, short of the running of the applicable statute of limitations, does not in and of itself constitute "laches." | 00022.docx | LEGALEASE-00.00648-LEGALEASE-00.00649 | Condensed_SA | 0.76 | | 1 | | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17227 | Memphis & C. Ry. Co. v. Pace, 282 U.S. 241 | 200+121 | The construction and maintenance of serviceable roads in any community is a matter in which the whole community have an interest and is a typical purpose for which property may be taxed by the state. Missouri Pacific R. R. Co. v. Western Crawford Road District, 266 U. S. 187, 190, 45 S. Ct. 31, 69 L. Ed. 237. Whether the tax shall be state wide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing unit, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment. County of Mobile v. Kimball, 102 U. S. 691, 703, 26 L. Ed. 238; Spencer v. Merchant, 125 U. S. 345, 355-356, 8 S. Ct. 921, 31 L. Ed. 763; Houck v. Little River District, 239 U. S. 254, 262, 265, 36 S. Ct. 58, 60 L. Ed. 266; Valley Farms Co. v. West chester, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Missouri Pacific R. R. Co. v. Western Crawford Road District, supra; Kansas City Southern Ry. Co. v. Road Improvement District No. 3, 266 U. S. 379, 386, 45 S. Ct. 136, 69 L. Ed. 335. | Construction and maintenance of serviceable roads is public purpose for which property may be taxed by state. | Can highways or serviceable roads be taxed by the state? | 018918.docx | LEGALEASE-00126620-LEGALEASE-00126621 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 17228 | Tectrade Int'l Ltd. v. Fertilizer Dev. & Inv., B.V., 258 A.D.2d 349 | 302+8(7) | Plaintiffs' recasting of their previously dismissed breach of contract claim into a breach of an oral joint venture agreement was properly rejected by the motion court as an improper attempt to rewrite the parties' existing agreements in the face of substantial contradictory documentary evidence. The provisions of the parties' contract "prevail over [the] conclusory allegations of the complaint" (805 Third Ave. Co. v. M.W. Realty Assocs., 58 N.Y.2d 447, 451, 461 N.Y.S.2d 778, 448 N.E.2d 445), and although, on a motion addressed to the sufficiency of a complaint, the facts pleaded are presumed to be true and accorded every favorable inference, "allegations consisting of bare legal conclusions, as well as factual claims inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration" (Caniglia v. Chicago Tribune"New York News Syndicate, 204 A.D.2d 233, 233"234, 612 N.Y.S.2d 146). | Provisions of the parties' contract prevail over conclusory allegations of the complaint. | Do provisions of a contract prevail over conclusory allegations of the complaint? | 022893.docx | LEGALEASE-00126692-LEGALEASE-00126693 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 17229 | Kelley v. Mallory, 202 Or. 690 | 302+8(1) | It is this defense of res judicata which first challenges our interest. When we examine the complaints in the two suits, we are immediately struck by their similarity. Both are between the same parties and both plead the entire agreement of April 2, 1948, as the basis for plaintiff's claim for relief. In both suits the relief sought is for an accounting between Kelley and Mallory predicated upon the theory that the agreement created a fiduciary relationship between them. In the first suit, however, plaintiff pleads as a conclusion of law that the agreement creates a partnership in the business known as Mallory Chevrolet Company; but a conclusion of law is not issuable, requires no denial and does not aid the pleading. Almada v. Vandecar, 94 Or. 515, 519, 185 P. 907. It amounts to a nullity, and a pleader's construction of the legal character of the contract is not binding on the court. Young v. Evans, 104 Or. 619, 624, 208 P. 741; Dickenson v. Henderson, 90 Or. 408, 411, 176 P. 797. When the instrument relied upon is set out in full in the pleading, as in both the Kelley suits, it prevails over the allegations as to its legal effect. Young v. Evans, supra, 104 Or. at page 625, 208 P. 741. | Conclusion of law in pleading is not issuable, requires no denial, does not aid the pleading, and amounts to a nullity. | Does a conclusion of law require denial? | 023052.docx | LEGALEASE-00126704-LEGALEASE-00126705 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17230 | Benavides v. E. New Mexico Med. Ctr., 338 P.3d 1265 | 413+1 | The rights of workers and the rights of employers must be subject to the same standards. See Section 52"5"1; Delgado v. Phelps Dodge Chino, Inc., 2001"NMSC"034, 131 N.M. 272, 34 P.3d 1148. Section 52"1"10(A) provides that a worker's benefits shall be decreased by ten percent if an injury results from the worker's "failure to use a safety device provided by [the] employer." When Subsection (A) and (B) are read together, if a worker's failure to "use" a safety device results in a 10% decrease in benefits, then an employer's failure to "supply" a safety device should likewise result in a 10% increase in benefits. | Rights of workers and rights of employers must be subject to same standards under Workers' Compensation Act. West's NMSA S 52-1-1 et seq. | Should the rights of workers and rights of employers be subject to same standards under Workers' Compensation Act? | 048593.docx | LEGALEASE-00126712-LEGALEASE-00126713 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 17231 | Boynton v. Renwick, 46 Ill. 280 | 83E+481 | We are referred to the case of Ryan v. May, 14 Ill. 49, and Keeler v. Campbell, 24 ib. 287, in support of this view. The first case was a case where the assignee of the Bank of Illinois, appointed by the legislature, brought suit on a note which had been executed to the bank. The defendant pleaded in abatement, that Ryan was not the assignee of the bank, and had no legal interest in the note sued on, because he, with others (his co-assignees) had, by a certain deed of indenture, conveyed and transferred the note to William Thomas. To this plea a replication was filed, averring that Ryan did not by endorsement on the note assign it to Thomas, so as to vest the legal title in him. To this replication there was a demurrer, which was sustained by the court, and judgment rendered for the defendant on the plea in abatement. The point of the case is, that by our statute, the legal title to a note cannot be transferred by a separate instrument in writing. | The legal title to a note cannot be transferred by assignment by a separate instrument. | Can the legal title to a note be transferred by assignment by a separate instrument? | 009092.docx | LEGALEASE-00126920-LEGALEASE-00126922 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17232 | Warnick v. Warnick, 133 P.3d 997 | 289+816 | The buyout price of a dissociated partner's interest is the amount that would have been distributable to the dissociating partner under W.S. 17"21"808(b) if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership were wound up as of that date. In either case, the sale price of the partnership assets shall be determined on the basis of the amount that would be paid by a willing buyer to a willing seller, neither being under any compulsion to buy or sell, and with knowledge of all relevant facts. Interest shall be paid from the date of dissociation to the date of payment. | Assuming the trial court valued the partnership using liquidation value, for purposes of determining the buyout cost of dissociating partner's interest, partnership was not entitled to a deduction of the hypothetical costs of sale, given that "liquidation value" was the fair market value of its assets sold separately, and deduction of hypothetical costs of sale would result in a value less than the fair market value of the assets. Wyo.Stat.Ann. S 17-21-701(b). | What is a buyout price in a partnership? | 021957.docx | LEGALEASE-00127277-LEGALEASE-00127278 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17233 | Miller v. Madison Motor Co. of Glendale, 107 Cal. App. 38 | 302+8(10) | It is first contended that the complaint does not state sufficient facts to constitute a cause of action, in that waiver is not properly pleaded; in this respect the complaint alleges: "That after the execution of said contract, said defendants waived that part of the contract wherein time was made the essence thereof, and agreed to, and did accept from this plaintiff payments on account of the purchase price of said automobile, long after the same were due and payable." We believe, upon general demurrer, that these allegations sufficiently comply with the rule that where a waiver is relied upon, in the action, facts constituting waiver must be set forth. | Where waiver is relied upon, in bringing action, facts constituting waiver must be set forth. | Should facts constituting waiver be pleaded if a waiver is relied upon? | 023066.docx | LEGALEASE-00126950 LEGALEASE-00126893 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | |
| 17234 | Chase Manhattan Mortg. Corp. v. Cook, 141 S.W.3d 709 | 366+1(01) | A party claiming subrogation must plead and prove the right to subrogation. Page Equipment Company v. I.C.S., Inc., 737 S.W.2d 897, 601 (Tex.App.–Houston (14th Dist.) 1987, no writ); Interstate Fire & Cas. Co. v. Catholic Diocese of Dallas, 693 S.W.2d 789, 787 (Tex.App.–Dallas 1985, writ ref'd n.r.e.). Chase did not allege a subrogation claim in its pleadings or attempt to present this as an issue for the court, but rather that it was not seeking equitable subrogation. In its appeal, Chase distinguishes contractual subrogation from equitable subrogation. However, Chase did not make any mention of a contractual subrogation claim during trial. We find that Chase waived its subrogation theory by failing to plead it in the trial court. Page Equipment Company v. I.C.S., Inc., supra; Moe's v. Dallas Brake & Clutch Service Co., supra. | A party claiming subrogation must plead and prove the right to subrogation. | Should a party claiming subrogation plead and prove the right to subrogation? | Subrogation - Memo # 983 - C - 04.docx | ROSS-003312316+ROSS-003312317 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 17235 | Haynes v. Williams Fence & Aluminum, 805 So. 2d 215 | 413+1 | LUBA also contests payment for the February 1, 2000 test on the basis that Haynes should not have sought prior approval for the test. La.R.S. 23:1121(B) protects the employer from the employee's doctor shopping. The workers' compensation judge specifically made a finding that Haynes was not doctor shopping when he chose Dr. Getroff as his treating physician. LUBA obviously did not disagree with Dr. Getroff's expertise or with his involvement in the case since the doctor became involved in the case at LUBA's request. Dr. Getroff recommended the arthroscopy in addition to the surgery, and LUBA does not want Haynes being treated by Dr. Getroff. The premise is the employer's choice as provided for in the Workers' Compensation Act, specifically La.R.S. 23:1121 and 23:1203, which require the employer to furnish the remedial and not superfluously litigious in nature. We would think that an employer/insurer should be more than willing to have an employee agree to treatment with a physician in which it placed confidence. In any event, we find no error that an employer/insurer has already invested money would prohibit an employee from undergoing surgery with the physician of the employer's choice to have examined the employee. We have held that La.R.S. 23:1121 does not grant the employer/insurer the right to select the physician to conduct diagnostic testing. See Louisiana Clinic v. Patin's Tire Serv., 98-1973 (La.App. 3 Cir. 5/5/99); 731 So.2d 525. Likewise, we have found nothing in La.R.S. 23:1121 granting the employer/insurer the right to conduct the physician who performs the surgery that has already been conducted at the discretion of the employee's physician, Dr. Getroff. | The Workers' Compensation Act is intended to be remedial and not superfluously litigious in nature. | Is the workers compensation act remedial in nature? | 040693.docx | LEGALEASE-00126959 LEGALEASE-00126961 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 17236 | Tampa Aluminum Prod. Co. v. Watts, 132 So. 2d 414 | 413+1 | Under the facts of the Dicks case the deputy found no basis for the loss once other benefits may have to be determined later and an additional loss to the workmen as found by the deputy commissioner. We find three objections to the fee awarded: (1) It is based on an abstract formula that we cannot relate to the testimony or the record in the case. (2) Workmen's compensation cases, like other lawsuits, must generally be determined by their peculiar facts and the facts in these cases do not warrant the amount allowed. (3) Tampa Aluminum Products Company, Inc. is a small company, employing a small force, not exceeding five men and the amount allowed impose an excessive burden on the company. (4) We fail to find support in the record for the addition of the (Dicks), representing $150 per hour for hearing time and $600.00 in incidentals to the Company, and the fee allowed, which was as for the settlement. (5) The fee of $500 allowed the attorney was excessive in that the benefits were shown to not exceed $1,500, liability to Watts was automatic, there the cases were not particularly controlled by the same testimony, as well as other factual circumstances. (6) In awarding the fees in this case it is quite evident that the deputy commissioner did not take into consideration the factors present at this juncture. (7) The workmen's compensation act recognizes the theory that the claimant was not compensation so nearly as well aware that in many cases this is not practical; the Dicks case is in this class but the record does not exceed 375 pages to wit fair in these factors that would warrant the fee allowed. (8) Another thing, workmen's compensation deals with the problems of the laboring man and his relation to society. Attorney's fees are incident to benefits and if not measured by the factors pointed out herein, they are liable to grow and grow until they kill the goose that laid the golden egg. | Workmen's compensation cases, like other lawsuits, must generally be determined by their peculiar facts. | Should each workers compensation case turn on its facts? | 040244.docx | LEGALEASE-00126909 LEGALEASE-00126910 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17237 | S. Belt v. MacDonald, 671 So. 2d 207 | 413+1 | An employer must offer or furnish workers' compensation benefits when the employer knows, or should know, that benefits are due. [...] | Employer must offer or furnish workers' compensation benefits when the employer knows or should know that benefits are due. | Should an employer offer or furnish workers' compensation benefits when the employer knows or should know that benefits are due? | 048493.docx | LEGALEASE 00135822 LEGALEASE 00135823 | Condensed, SA, Sub 0.91 | 0.91 | 0 | 1 | | 1 | |
| 17238 | Benjamin v. Jacobson, 172 F.3d 144 | 92+2185 | The proposition that a court has the authority to alter the prospective effect of an injunction in light of changes in the law or the circumstances is, of course, well established. [...] | In requiring termination of consent decrees that are not supportable by requisite findings, Prison Litigation Reform Act (PLRA) termination provision does not violate constitutional separation of powers principle by requiring courts to reopen final judgments, since PLRA's termination provision does not require termination of any relief other than prospective relief, courts would have inherent authority to modify or terminate forward-looking injunctive provisions in light of changes in law or circumstances, and statutory definition of prospective relief expressly excludes compensatory monetary damages. 18 U.S.C.A. § 3626(b)(2). | Do a court of equity have the power to modify an injunction in adaptation to changed conditions, though it was entered by consent? | 000900.docx | LEGALEASE 00127615 LEGALEASE 00127617 | Condensed, SA, Sub 0.68 | 0.68 | 0 | 1 | | 1 | |
| 17239 | Pillow v. Pillow, 13 Tenn. 420 | 134+154 | The rule is that if there be a prayer for particular relief, and also a prayer for general relief, the particular relief prayed for will be first sought, the decree should follow the special relief; but if the evidence do not justify the special relief ... [...] | When the prayer for relief includes a particular relief, a general decree according to the prayer for particular relief, it must be made; but if not, the court will proceed in the general prayer. | When a bill or petition for divorce in chancery contains a prayer for special relief, and special relief is sought, the decree according to the prayer for particular relief, it must be made; but if not, the court will proceed in the general prayer? | 006081.docx | LEGALEASE 00127616 LEGALEASE 00127617 | Condensed, SA, Sub 0.65 | 0.65 | 0 | 1 | | 1 | |
| 17240 | Hamdi v. Rumsfeld, 296 F.3d 278 | 34+1 | The authority to capture those who take up arms against the United States belongs to the Commander in Chief under U.S.C.A. Const. Art. 2, § 2, cl. 1. [...] | The authority to capture those who take up arms against the United States belongs to the Commander in Chief. U.S.C.A. Const. Art. 2, § 2, cl. 1. those who take up arms against America? | Does the Commander in Chief have the authority to capture those who take up arms against America? | Armed forces - Memo & RISS-00328395 S+RISS-00328596k.docx | RISS 00328395 S+RISS 00328596 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | | 1 | |
| 17241 | People v. Burrows, 73 Mich. App. 51 | 48A+159 | We thus conclude that the essential elements of the crime are (1) breaking or entering into a motor vehicle, (2) breaking, tearing, cutting or otherwise damaging of the motor vehicle in breaking or entering, and (3) the specific intent at the time of breaking or entering of stealing or removing from the motor vehicle any goods, chattels or property regardless of the value thereof. | Legislature, which intended to punish breaking and entering of motor vehicle with purpose to steal, determined that such conduct would be felonious if there was to steal property of more than $5 in value or if person in course of removing goods or property from motor vehicle, and thus defendant, who seized hood and entered engine compartment within hands and then removed battery cables and removed battery, was guilty of violating statutory provision pertaining to breaking or entering motor vehicle despite fact that damage to vehicle occurred after entering of motor vehicle had been completed. M.C.L.A. § 750.356a. | What are the elements of breaking and entering into a motor vehicle? | 013566.docx | LEGALEASE 00130062 LEGALEASE 00130063 | Condensed, SA, Sub 0.39 | 0.39 | 0 | 1 | | 1 | |

Appendix D

3038

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17242 | People v. Sherow, 196 Cal. App. 4th 1296 | 67+2 | Case law establishes that the lack of consent to enter the building at issue is not an element of burglary. (Felix, supra, 23 Cal.App.4th at p. 1397, 28 Cal. Rptr.2d 860 ["Lack of consent-by itself-is not an element of the offense."]; People v. Barry (1892) 94 Cal. 481, 483, 29 P. 1026 [defendant was properly convicted of burglary of a store during business hours regardless of the fact that the proprietor allowed the defendant to enter the store along with the general public].) Therefore, state law governs the issue of whether the defendant or the prosecution has the burden of proof on the affirmative defense of consent to burglary as described in Felix, supra, at pages 1397-1398, 28 Cal.Rptr.2d 860. | The lack of consent to enter the building at issue is not an element of burglary. West's Ann.Cal.Penal Code S 459. | Is lack of consent to enter a building an element of burglary? | Burglary - Memo 18 - RK.docx | ROSS-003327130-ROSS-003327131 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17243 | State v. White, 115 Wis. 2d 696 | 67+9(0.5) | The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein. State v. Litchford, 78 N.C.App. 722, 338 S.E.2d 575 (1986). Defendant contends that there is no evidence of a larcenous intent on the part of himself or Adams. We do not agree. | Essential elements of felonious breaking or entering are breaking or entering, that such breaking or entering was of any building, and that such breaking or entering was with intent to commit any felony or larceny therein. | What are the elements of breaking and entering? | Burglary - Memo 2 - RK.docx | LEGALEASE-00017524-LEGALEASE-00017525 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 17244 | Hawkins v. City of La Grande, 315 Or. 57 | 148+81.1 | Our cases support application of that statement to the facts of this case. Personal property, such as the livestock and crops at issue here, can be taken; there is no requirement that the realty on which the personal property is located must be taken, too. See Coos Bay Oyster Co-op. v. Highway Com., 219 Or. 588, 348 P.2d 39 (1959) (oysters are personal property, and allegations that oysters were taken will support inverse condemnation action). | Personal property, such as livestock and crops, can be "taken" for purposes of takings clause of State Constitution, even if realty on which such personal property is located is not taken. Const. Art. 1, S 18. | "Can personal property, such as the livestock and crops be taken under the taking laws?" | Eminent Domain - Memo 323 - GP.docx | LEGALEASE-00017626-LEGALEASE-00017627 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 17245 | Thomson v. Iowa State Commerce Comm'n, 235 Iowa 469 | 317A+113 | In Wisconsin Tel. Co. v. Railroad Commission, 162 Wis. 383, 156 N.W. 614, 617, L.R.A.1916E, 748, 754, the words "public convenience and necessity" are defined as follows:"The words are not synonymous, and effect must be given both. The word "convenience" is much broader and more inclusive than the word "necessity." Most things that are necessities are also conveniences, but not all conveniences are necessities. * * * The word "necessity" has been used in a variety of statutes, * * *. It has been generally held to mean something more nearly akin to convenience than the definition found in standard dictionaries would indicate. So it is said the word will be construed to mean not absolute, but reasonable, necessity.' | "Public convenience and necessity" are not synonymous, convenience being much broader and more inclusive than necessity, but effect must be given to both; necessity meaning reasonably necessary but not absolutely imperative. | Are the words public convenience and necessity synonymous and should effect be given to both? | 042464.docx | LEGALEASE-00127746-LEGALEASE-00127748 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 17246 | Jindra v. Diederich Flooring, 181 Wis. 2d 579 | 366+35 | Second, one may waive subrogation. One may waive subrogation explicitly in writing, or one may be held to have waived subrogation by conduct. See Lambert, 135 Wis.2d at 118, 399 N.W.2d 369. Waiver here means that a subrogation claim may no longer be sought by the waiving party. In the present case A & F would be held to have waived subrogation in favor of the reimbursement clause owing to the representations it made before the court that it was relying upon a reimbursement claim against the Jindras. | One may waive subrogation explicitly in writing, or one may be held to have waived subrogation by conduct. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Can anyone waive subrogation explicitly in writing or by conduct? | 043516.docx | LEGALEASE-00127627-LEGALEASE-00127628 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 17247 | Davis v. Gerstenslager Co., 302 F. Supp. 742 | 366+1 | We agree that plaintiff may not recover twice for the same injury under these circumstances. Kite v. Jones, 389 Pa. 339, 132 A.2d 683 (1957) states: 'The law is clear that if a plaintiff receives his regular compensation during the period of his incapacity he may not recover for his loss of salary or wages unless he affirmatively shows that these payments were a gratuity from his employer.' (p. 351, 132 A.2d p. 689.). These payments were not a gratuity but were paid to plaintiff as part of his employment benefits. It is immaterial that the policy did not specifically reserve a right of subrogation. Subrogation is a legal right but it may be waived as part of the insurance contract. In Kite v. Jones, supra, the Supreme Court of Pennsylvania struck the sum of $10,000 from a verdict on a finding that plaintiff had been paid for his wage loss on a prior occasion. We believe it is immaterial whether this sum was paid by the employer as Workmen's Compensation required by law, or as a health and accident benefit required by the employment contract. Philadelphia v. Phila. Rapid Transit Co., 337 Pa. 1, 10 A.2d 434 (1939): 'The sums here paid by the city to the firemen were not strictly speaking wages. They were in the nature of disability compensation, similar to workmen's compensation payments and payments under an accident insurance policy and should be treated in the same manner.' (p 4, 10 A.2d p. 435). | Subrogation is legal right, but it may be waived as part of insurance contract. | Can subrogation be waived as part of an insurance contract? | Subrogation - Memo # 1273 - C - SKG.docx | ROSS-003287057-ROSS-003287058 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 17248 | Labarre v. Rateau, 210 La. 34 | 157+89 | The laches doctrine addresses itself exclusively to the evidentiary effect of delay. Thus, as stated in section 116b of the above mentioned authority: 'Long lapse of time in asserting a claim, when unexplained, operates by way of evidence against the justice of the right asserted, and not only subjects plaintiff's case to severer scrutiny than it would otherwise receive, and exacts of him a higher degree of proof than would otherwise be required, but moves the court to look with more indulgence on the evidence adduced by defendant. Long lapse of time, if unexplained, may create or justify a presumption against the existence or validity of plaintiff's right and in favor of the adverse right of defendant; or a presumption that, if plaintiff was ever possessed of a right, it has been abandoned or waived, or has been in some manner satisfied; or that plaintiff has assented to, or acquiesced in, the averse right of defendant; or a presumption that the evidence of the transaction in issue has been lost or become obscured, or that conditions have changed since the right accrued; or a presumption that the adverse party would be prejudiced by the enforcement of plaintiff's claim. The presumption of laches arising from lapse of time may be rebutted and overcome by competent testimony.' | The presumption of laches arising from lapse of time may be rebutted by competent testimony. | Can the presumption of laches be overcome by competent testimony? | Action - Memo # 728 - C ES.docx | ROSS-003289894-ROSS-003289895 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 17249 | Aguas v. Swanson Ann. Enc., 764 F.2d 598 | 25T+135 | Aspers first claims that this action does not arise out of her employment or in relation to the contract occurred after her contractual relationship with Swanson had been severed. Although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated. In either Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court concluded that the parties' obligations under an arbitration clause that was part of a collective bargaining agreement "survived contract termination when the dispute was over an obligation arguably created by the expired agreement." Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 252, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300 (1977) (discussing John Wiley) (emphasis added). In Nolde, the Supreme Court determined that an employer had a continuing duty to arbitrate a severance pay dispute. [b] In the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract. | Although created by contract, duty to arbitrate does not necessarily end when contract is terminated | Does the duty to arbitrate end when the contract terminates? | Alternative Dispute Resolution - Memo 467 - RK.docx | ROSS-003803870/ROSS-003803871 | Condensed, SA | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17250 | United States v. Scholz, 19 M.J. 837 | 258A+509 | Among other things, the purpose of DoD Directive 1010.1 is to establish guidelines for quality control, laboratory operation, testing methodologies, and the use of the analysis result. Government agencies, including those of the military must comply with their own regulations. Hammond v. Lenfest, 398 F.2d 705 [2d Cir. 1962]; Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States v. Leahey, 434 F.2d 7 [1st Cir. 1971]; The Navy is obligated to comply with Department of Defense directives. United States ex rel. Cooke v. Lord, 454 F.2d 706 (4th Cir.1974). | Government agencies, including the Navy, must comply with their own regulations, and the Navy is obligated to comply with Department of Defense directives. | "Do government agencies, including the Navy, have to comply with the regulations they promulgate?" | Armed forces - Memo 44 - RK.docx | LEGALEASE-00028162-LEGALEASE-00028163 | Condensed, SA, 0.68 | | | | | | 1 |
| 17251 | In re Sheena B., 83 A.D.3d 1056 | 307A+563 | CPLR 3217(b) provides that an action or proceeding may be discontinued "upon order of the court and upon terms and conditions, as the court deems proper." "[O]rdinarily a party cannot be compelled to litigate and, absent special circumstances, discontinuance should be granted. Particular prejudice to the [child] or other improper consequences flowing from discontinuance may be particular prejudice to the defendant or others" (Tucker v. Tucker, 55 N.Y.2d 378, 383, 449 N.Y.S.2d 649, 434 N.E.2d 1050); Matter of Burnham v. Brandt, 48 A.D.3d 1068, 853 N.Y.S.2d 656; Christenson v. Gutman, 249 A.D.2d 805, 671 N.Y.S.2d 835; Matter of Commissioner of Franklin County Dept. of Social Servs. v. Terry M., 178 A.D.2d 881, 577 N.Y.S.2d 730); Courts may deny discontinuance to protect the interests of the parties (see Matter of Cooke, 22 A.D.2d 885, 370, 253 N.Y.S.2d 160, affd 17 N.Y.2d 567, 268 N.Y.S.2d 577, 215 N.E.2d 509). In matters involving the welfare of a child, not only the parties to the action, but also the public, has an interest in the continuation of the proceeding (see Winans v. Winans, 124 N.Y. 140, 26 N.E. 293; Matter of Rich v. Kaminsky, 254 App.Div.6, 3 N.Y.S.2d 689; People ex rel. Irwin v. Sortes, 14 Misc.2d 640, 166 N.Y.S.2d 12; Matter of Riley v. 103 Misc.2d 48 PR) 427 N.Y.S.2d 564; Material Juste r. Edwin A., 86 Misc.2d 882, 383 N.Y.S.2d 994; Palmer v. Palmer, 62 Misc.2d 73, 78, 308 N.Y.S.2d 453), and concern for the welfare of the child justifies denial of the motion (see Matter of Houck v. Garraway, 293 A.D.2d 782, 739 N.Y.S.2d 499; People ex rel. Wasserman v. Wasserman, 50 A.D.2d 389, 376 N.Y.S.2d 684; Matter of Irene D. v. Anthony O., 113 Misc.2d 561, 564, 449 N.Y.S.2d 564). | Courts may deny discontinuance to protect the interests of the parties. McKinney's CPLR 3217(b). | Can the courts deny discontinuance to protect the interests of the parties? | Pretrial Procedure - Memo #932 - C - RK.docx | ROSS-003313121-ROSS-003313122 | Condensed, SA, 0.95 | | | | | | 1 |
| 17252 | In re Rebel Rents, 307 B.R. 171 | 366+39 | Like other equitable remedies, a right to subrogation may be lost by waiver, laches, or estoppel. See Jack v. Wong, Chen, 33 Cal.App.2d 402, 91 P.2d 445 (1939), (holding that a party waives the right to subrogation by asserting an inconsistent legal theory, and thereby depriving other creditors of opportunity to protect their interests). See generally, 73 Am.Jur.2d Subrogation § 116 (2002) et seq. The presence of any of the following factors is important: (a) the party to be estopped must know the facts; (b) the party to be estopped must either intend that its conduct will be acted upon or act in a manner that the party asserting estoppel has a right to believe it is so intended; (c) the party asserting estoppel must be ignorant of the true facts; and (d) the party asserting estoppel must rely on the conduct to its injury. Associated Vintage Group, 283 B.R. at 567; Valley v. Bank of Am., 1999 B. 499, 700 (9th Cir. BAP 1996); Heritage Hotel Ltd. Ptshp v. Valley Bank of Nev. (In re Heritage Hotel Ptshp.), 160 B.R. 374, 378 (9th Cir. BAP | Like other equitable remedies, right to subrogation may be lost by waiver, laches, or estoppel. | Can a right to subrogation be lost? | 04310/.docx | LEGALEASE-00120541-LEGALEASE-00120543 | Condensed, SA | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 17253 | Factory Mut. Ins. Co. v. Citizens Ins. Co. of Am., 2006 WL App 16 | 366+55 | Two preliminary considerations can be quickly addressed. First, there is no dispute that a party to a contract may waive subrogation explicitly in writing. See Justice Diederich Flooring, 181 Wis.2d 579, 596, 511 N.W.2d 854 (1994). Second, Factory Mutual argues both parties preserved "any rights of recovery" which are "expressly waived" by an insured prior to a loss; therefore, the international had the ability to waive subrogation on the expiration of the policy. The insurance writes: CIR defendants a Bankers Life A. Cas. Co. 280 Wis.2d 324, 351, 58 N.W.2d 530 [Cal.App. (citation omitted)] a policy that "functionally restrains" the insurer of the property can preclude subrogation. In this case... over subrogation exclusion language in a conflicting contract). As a result, Factory Mutual could determine that it is otherwise entitled to assert its subrogation claim. A party seeking to apply subrogation has the burden of proving the right to subrogation exists, 181 Wis.2d at 595, 511 N.W.2d 854. | A party to a contract may waive subrogation explicitly in writing. | Can a party to a contract waive subrogation explicitly in writing? | Subrogation - Memo # 1223 - C - NE.docx | ROSS-003286793/ROSS-003286794 | Condensed, SA | 0.93 | | | | | | 1 |
| 17254 | FireSticker v. XK & J, 69 A.D.3d 481 | 366+55 | Finally, contrary to Dr. Paul's contentions, a waiver of subrogation may bar a claim for gross negligence (Great Am. Ins. Co. of N.Y. v. Simplexgrinnell LP, 60 A.D.3d 456, 874 N.Y.S.2d 465 [2009] ). | A waiver of subrogation may bar a claim for gross negligence. | Can a waiver of subrogation bar a claim for gross negligence? | Subrogation - Memo # 1055 - C - NE.docx | ROSS-003317329-ROSS-003317330 | Condensed, SA | 0.69 | | | | | | 1 |

3040

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17255 | Jindra v. Diederich, Flooring, 181 Wis. 2d 579 | 217×1522 | In the case of waiver, however, the techniques benefits by receiving the assurance that a no longer need fear a claim for subrogation from the waiving party. If, as here, a party does not bring a subrogation claim because it relinquished against a performance/restitution claim, it will be held to have waived subrogation in favor of the reimbursement action and will be precluded from bringing the subrogation claim in a subsequent action against the tortfeasor. Accordingly, Continental will be obliged to pay full damages, but it will not be forced to answer twice in damages. | Understood motorist insurer waived any potential right to subrogation under subrogation clause of policy and noted reimbursement agreement (sub by paying insured over amount of settlement agreed upon between underinsured motorist insurer and driver and thus, underinsured motorist insurer had claim for reimbursement of amount paid against driver and did not have to bring subrogation claim against insurer of underinsured motorist's employer for such recovery in driver's action against underinsured motorist and his employer. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Can an entity waive a subrogation right for reimbursement? | 04204.docx | LEGALEASE-00235373 LEGALEASE-00235374 | Condensed, SA, Sub | 0.09 | 0 | 1 | | 1 | |
| 17256 | Klarr v. Pennsylvania Pit. Responsibility Assigned Claims Plan, 742 A.2d 1082 | 366×55 | The goal of subrogation is "to place the burden of the debt upon the person who should bear it." Daley-Sand v. West Am. Ins. Co., 387 Pa.Super. 630, 564 A.2d 965 (1989) (quoting Allstate Ins. Co. v. Clarke, 364 Pa.Super. 196, 527 A.2d 1021, 1023 (1987)). Thus, through subrogation the insurer is granted the right "to stand in the shoes of the claimant and assert the claimant's rights against the tortfeasor." Dyers v. Travelers, 392 Pa.Super. 202, 572 A.2d 762 (1990) (citing Daley-Sand v. West Am. Ins. Co., supra). Exercising these rights helps preserve the ACP fund and prevents double recovery by a claimant. McGee, supra, 721 A.2d at 1242. Thus, extinguishing a subrogee's statutory right to be reimbursed is generally disfavored. Pennsylvania Fin. Responsibility Assigned Claims Plan v. English, 541 Pa. 424, 664 A.2d 84 (1995). However, the insurer, as subrogee, can only recover damages when its subrogor has a legally cognizable cause of action against a third party. Hagan, supra, (citing Smith v. Yellow Cab Co., 288 Pa. 85, 135 A. 858 (1927), making the right to subrogation contingent on the ACP claimant having a cause of action against a known tortfeasor. Id at 1152. | Extinguishing a subrogee's statutory right to be reimbursed is generally disfavored. | Is extinguishing a subrogee's statutory right to be reimbursed disfavored? | Subrogation - Memo # 1112 - C - ES.docx | ROSS-003319364-ROSS-003319365 | Condensed, SA | 0.93 | 0 | 1 | | 1 | |
| 17257 | Flett v. Wenger Mixer Mfg. Co., 189 Kan. 80 | 366×55 | The right to subrogation may be waived or the subrogee may be estopped to assert its right thereto. It is said in 83 C.J.S. Subrogation * 13, pp. 650, 651: "Subrogation is being an equity springing from the relation of the parties, and created and enforced for the benefit and protection of the one in whose favor it is originated, may be modified or extinguished by contract, and may be waived or lost by the party entitled to invoke it, or it may be waived either expressly or by implication. The ordinary doctrine of estoppel applies to the subrogee's right to subrogation...." In practice, the reasonably pronounce to take advantage of his right at a proper time, and its neglect to do so will be considered as a waiver. Thus, it has been held any positive act done by the subrogee at the time of or subsequent to payment which is inconsistent with the enforcement of the right, will be considered as a waiver. (Davidson v. McEuJn, 137 Kan. 117, 19 P.2d 423, 116 L.R.2d) and as Shohoal v. Belhop Ins. Bank, 63 Kan. 443, 65 P. 643.) | Right to subrogation may be waived or subrogee may be estopped to assert right. | Can a right to subrogation be waived or subrogee may be estopped to assert it right? | Subrogation - Memo # 1115 - C - ES.docx | ROSS-003312264-ROSS-003312247 | Condensed, SA | 0.92 | 0 | 1 | | 1 | |
| 17258 | Fairfield Dev. Co. v. Jackson, 438 So. 2d 664 | 13×42 | A suit is premature if it is brought before the right to enforce it has accrued. LSA.C.C.P. art. 423. Prematurity is determined by the facts existing at the time suit is filed. Watkins v. Republic Bank, 434 So.2d 1161 (La.App. 2d Cir 1982). "On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections therein pleaded, when the grounds thereof do not appear from the petition...." LSA.C.C.P. Art. 930. In short, evidence may be considered in assessing prematurity. Superior Oil Co. v. Humble Oil and Refining Co., 257 La. 207, 241 So.2d 911, per curiam rehearing, 241 So.2d 914 (La.1970). We are thus at liberty to consider the documents adduced into evidence filed herein which indicate that first occupancy in Northside Villa Apartments occurred on November 8, 1982, and is more conclusive evidence that the documents submitted, and that evidence herein. As for this, from the things submitted, that final endorsement of the HUD mortgages had not | Suit is premature if it is brought before right to enforce it has accrued and such prematurity is determined by fact existing at time suit is filed. | When does an action become premature? | 005335.docx | LEGALEASE-00128774 LEGALEASE-00128775 | Condensed, SA, Sub 0.8 | | 0 | 1 | 1 | 1 | |
| 17259 | Esch, Mut. Ins. Co. v. Haskell Co., 742 F.2d 274 | 217×141 | Although in the case at bar, the surety is not the party seeking arbitration, the same principles apply, because that actual contracts that it cannot be compelled to arbitrate because it was not a signatory to the general contract. Here is the court said in the Transtesi case, a party does not have to be a signatory to the contract to be bound if the contract is specifically incorporated by reference in the surety bond. Here, the performance bond specifically refers to and incorporates the subcontract. The subcontract provides that the same obligations and responsibilities apply in the subcontract as apply in the general contract. And, finally, the general contract provides that there is a duty to arbitrate. Thus, the performance bond incorporates by reference the subcontract, the subcontract incorporates by reference the general contract and hence the duty to arbitrate. | Surety on performance bond was bound by arbitration clause where performance bond incorporated by reference the terms of subcontract, the subcontract incorporated by reference the terms of general contract and the general contract imposed obligation to submit all unresolved disputes to arbitration, and same was true though there was surety, which did not sign general contract, that sought to avoid arbitration. | Can performance bonds incorporate a duty to arbitrate by referencing a subcontract? | Alternative Dispute Resolution - Memo #78 - RE.docx | LEGALEASE-00018569 LEGALEASE-00018570 | Condensed, SA, Sub 0.54 | | 0 | 1 | | 1 | |
| 17260 | DiYo v. Lonsdale, 49 Ind. 521 | 269×468 | After a careful comparison and consideration of the instructions, we are of the opinion that the court did not commit any error in refusing to give the instructions asked by the defendants. Partners are ordinarily divided into, 1. Ostensible partners, or those whose names are made known and appear to the world as partners, and who in reality are such; 2. Nominal partners, or those who appear or are held out to the world as partners, but who have no real interest in the firm or business; 3. Dormant partners, or those whose names are not known, or do not appear as partners, but who, nevertheless, are silent partners, and partake of the profits, and thereby become partners, either absolutely so in all intents and purposes or, at all events, in respect to third persons. Story Partnership, Sec. 80. | Nominal partners are those who appear, or are held out to the world, as partners, but who have no real interest in the firm or business. | Does a nominal partner have any interest in the firm? | 02179.7.docx | LEGALEASE-00128902 LEGALEASE-00128903 | Condensed, SA, Sub 0.83 | | | 1 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 27,876 | 9,079 |
| 17261 | Hazel Phelps Const. Co. v. C.C.H., 793 F.2d 646 | 289+62 | The first question before us is whether on these facts the Tax Court properly found that the interest in the partnership was received after May 31, 1973. The intent of the parties is a critical factor in determining when the partnership began. See Commissioner v. Tower, 327 U.S. 280, 287 (1946), 66 S.Ct. 532, 537 (36, 90 L.Ed. 670 (1946)). This is a question of fact, and the findings of the Tax Court will be sustained unless clearly erroneous or unsupported by substantial evidence. Id. at 287, 66 S.Ct. at 536. Barron v. Commissioner, 193 F.2d 414, 418 (10th Cir. 1951). The evidence as to the intent of the parties is conflicting. Phelps alleges that the intent of the parties is shown by the letters spelling out the agreement ... the substantive evidence. | Intent of parties is critical factor in determining when partnership begins. | Is the intent of the parties a critical factor in determining when a partnership shall commence? | Partnership - Memo 232 - RK.docx | LEGALEASE-00028700 LEGALEASE-00028701 | Condensed, SA | 0.96 | 0 | | | 1 | |
| 17262 | Baden v. Cox, 701 S.W.2d 677 | 289+92(1) | First, the files are undergirded by binding contracts and, thus, constitute more than a mere unrealized future expectancy. Second, dissolution does not change the status of firm assets. Zimmerman v. Harding, 227 U.S. 489, 33 S.Ct. 387, 57 L.Ed. 608 (1913). As stated earlier, a partnership does not terminate upon dissolution but continues until the winding up is completed. Art. 6132b, § 30; Shannon v. Marsolo, 833 S.W.2d 946, 966 (Tex.App.-Waco 1992, no writ). Woodruff, 8 Wisk S.W.2d 535, 539 (Tex.Civ.App.-Corpus Christi 1977, writ ref'd n.r.e.). The surviving partners are required to wind up the partnership business with reasonable dispatch and distribute the residue of the assets among the surviving partners and heirs of the deceased partner in proportion to their respective interests. Art. 6132b, § 37; Collins v. Yazoo, 192 S.W.2d 332, 334 (Tex.Civ.App.-Fort Worth 1946, no writ). This duty to wind up generally includes the duty to complete all of the firm's executory contracts. See Woodruff v. City of Dallas, 165 Conn. 283, 333 A.2d 714, 718 (1973); Pratt v. Henderson, 227 Or. 212, 361 P.2d 9, 82 (1961). A contractual obligation for the performance of services in existence at the dissolution of a partnership is unfinished business of the dissolved partnership, and the partners owe a fiduciary duty to wind up that business. If possible, and to refrain from taking any action for purely personal gain. See Rosenfeld, Meyer & Susman v. Cohen, 146 Cal.App.3d 200, 194 Cal.Rptr. 281, 290 (1983). Therefore, we conclude that the contingent fee contracts were, as a matter of law, assets of the partnership. | A partnership does not terminate upon dissolution but continues until winding up is completed. Vernon's Ann.Texas Civ.St. art. 6132b, § 30. | Does a partnership continue after dissolution for the purpose of winding up? | 02/2024.docx | LEGALEASE-00028950 LEGALEASE-00028951 | Condensed, SA | 0.91 | 0 | | | 1 | |
| 17263 | King Cty. Council v. King Cty. Pers. Bd., 307A Wash. App. 317 | 307A+561 | The writ of certiorari is a special proceeding authorized by RCW Ch. 7.16. RCW 7.16.040 empowers courts to whom application for a writ is made. The provision of the code of procedure concerning civil actions are applicable to and constitute the rule of practice in the proceedings in this chapter. There is no other provision in Chapter 7.16 governing voluntary dismissal of these special proceedings. CR 41(a) makes the Superior Court Civil Rules applicable to special proceedings except where they are inconsistent with other rules or statutes governing such actions. Under the civil rules of superior court the Superior Court has applied the predecessor to CR 41(b) to certiorari proceedings. See State ex rel. J. L. Bachaus & Co. v. Wash. Pub. Serv. Comm'n, 39 Wash.2d Pac. 237 P.2d 233 (1951). A plaintiff in a civil action has an absolute right to dismissal under CR 41. Gunn v. Gunn, 8 Wash.App. 801. | Plaintiff in civil action has absolute right to voluntary dismissal under CR 41. | Does a plaintiff in a civil action have an absolute right to a voluntary dismissal? | Pretrial Procedure - Memo # 1147 - C 71.docx | ROSS-003538649-ROSS-003538650 | Condensed, SA | 0.92 | 0 | | | 1 | |
| 17264 | Tomko v. City of Colorado Springs, 656 P.2d 815 | 413+1 | We also reject Tomko's final contention that the stress statute is unconstitutional because it deprives her of her federal civil rights under 42 U.S.C.§ 1981 (1988) without due process. There is no constitutionally protected civil right in workers' compensation benefits. As such, there can be no violation of due process. See Rose v. Warner Electrical Contracting Supply. | There is no constitutionally protected civil right in workers' compensation benefits. 42 U.S.C.A. § 1981. | Is there a constitutionally protected civil right to workers' compensation? | 04717.docx | LEGALEASE-00028722 LEGALEASE-00028723 | SA, Sub | 0.72 | 0 | | | 1 | |

Appendix D

3042

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17265 | T.N. v. I.B., 188 So. 3d 675 | 30+4 | In the underlying juvenile court proceedings, in which T.N. and C.N. were not parties, the juvenile court entered a judgment on April 21, 2014, granting custody of the child to D.C. and amended that judgment on May 16, 2014, pursuant to a postjudgment motion filed by the Montgomery County Department of Human Resources ("DHR"). On May 9, 2014, the guardian ad litem for the child filed a motion for a temporary restraining order in the juvenile court seeking to enjoin T.N. and C.N. from taking action to enforce the judgment entered by the probate court granting T.N. and C.N.'s petition to adopt the child. On the same day, the juvenile court entered a temporary restraining order directing T.N. and C.N., their agents, and law enforcement to refrain from removing the child from D.C.'s custody. The juvenile court amended the restraining order on May 12, 2014, and set the matter for a hearing on May 20, 2014. On May 16, 2014, T.N. and C.N. filed a petition for a writ of mandamus with this court. On May 20, 2014, the juvenile court entered an order canceling the hearing scheduled for that day and indefinitely extending the restraining order. The juvenile court's order cited T.N. and C.N.'s filing of the petition for a writ of mandamus as good cause to extend the injunctive relief granted in the temporary restraining order. See Rule 65(b), Ala. R. Civ. P. ("Every temporary restraining order ... shall expire by its terms within such time after entry not to exceed ten (10) days ..., unless within the time so fixed the order for good cause shown is extended...."). On the same day, T.N. and C.N. amended their petition with this court asserting that the juvenile court's May 20 order converted the temporary restraining order into a preliminary injunction that was entered without proper notice to T.N. and C.N. and without providing T.N. and C.N. with a right to be heard. | The proper method to challenge an injunction is by direct appeal. Rules App.Proc., Rule 4(a)(1). | Is a direct appeal the proper method to challenge an injunction? | 008188.docx | LEGALEASE-00129070-LEGALEASE-00129071 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 17266 | Meckler v. Hecht Rubber Corp., 190 So.2d 186 | 73+5(1) | 'Our research has failed to reveal any authority, and none has been cited by petitioner, which authorizes the granting of certiorari to review an order denying summary judgment in an action at law. It is indisputable that the necessity of defending any legal action can be burdensome and vexatious. Such, however, is one of the hazards of living and doing business under a system of free enterprise in which one who conceives himself to be injured is privileged to seek redress in a court of law. | A writ of certiorari would not be issued to review order of circuit court setting aside summary final judgment previously entered in favor of petitioner in absence of showing of any material injury for which petitioner would have no adequate remedy by appeal, since, even if grounds recited in order setting aside summary final judgment were insufficient in law, other meritorious grounds might be shown on appeal from final judgment. | Will courts grant certiorari to review an order denying summary judgment? | Appeal and error - Memo 41 - RK.docx | ROSS-003326079-ROSS-003326080 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 17267 | Burney v. Hargraves, 264 Ark. 680 | 30+10 | Neither mandamus nor prohibition nor certiorari can be used as a substitute for appeal. Mandamus: Calloway v. Harley, 112 Ark. 558, 166 S.W. 546 (1914).Prohibition: Harris Distributors, Inc. v. Marlin, Judge, 220 Ark. 621, 249 S.W.2d 3 (1952).Certiorari: Ark. State Hwy. Commn. v. Ponder, Judge, 239 Ark. 744, 393 S.W.2d 870 (1965).Mandamus cannot be used to correct an erroneous decision already made. Mobley v. Scott, County Judge, 236 Ark. 163, 365 S.W.2d 122 (1963). | Neither mandamus nor prohibition nor certiorari can be used as a substitute for appeal. Supreme Court Rules, rule 16. | "Can mandamus, prohibition, or certiorari be used as a substitute for appeal?" | Appeal and error - Memo 42 - RK.docx | ROSS-003327744-ROSS-003327745 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 17268 | Ebenstein & Ebenstein, P.C. v. Smith Thibault Corp., 20 Conn. App. 23 | 30+21 | It is rudimentary that the right of appeal is limited to parties aggrieved by final judgments. General Statutes "" 51-197a, 52-263; Practice Book " 4000; State v. Audet, 170 Conn. 337, 342, 365 A.2d 1082 (1976); Stroiney v. Crescent Lake Tax District, 197 Conn. 82, 84, 495 A.2d 1063 (1985). Absent a statutory exception, an order granting or denying a temporary injunction is considered interlocutory and therefore is not an appealable final judgment. Doublewal Corporation v. Toffolon, 195 Conn. 384, 392, 488 A.2d 444 (1985). The parties argue that the judgment was final because it was rendered pursuant to their stipulation, which clarified their intention that the trial court's order be considered an order denying a permanent injunction. Neither the parties nor the trial court, however, can confer jurisdiction upon this court. Stroiney v. Crescent Lake Tax District, supra; Doublewal Corporation v. Toffolon, supra, at 390, 488 A.2d 444. We must therefore determine whether the trial court's judgment denying injunctive relief was, in fact, an appealable final judgment. | Neither the parties nor the trial court can confer jurisdiction upon the Appellate Court. | Can a trial court confer jurisdiction upon an appellate court? | 008263.docx | LEGALEASE-00129546-LEGALEASE-00129547 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 17269 | Hughes v. York Cty. Dep't of Soc. Servs., 36 Va. App. 22 | 30+322 | An appellate court cannot adjudicate an appeal unless all necessary parties are properly before the court. Asch v. Friends of the Community of the Mount Vernon Yacht Club, 251 Va. 89, 91, 465 S.E.2d 817, 818 (1996). A necessary party is one whose interests are likely to be defeated or diminished by a successful appeal. See id. at 90, 465 S.E.2d at 818.In Asch, the Supreme Court explained that " "[a necessary party's] interests in the subject matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit, when these parties cannot be subjected to its jurisdiction." " | A "necessary party" to an appeal is one whose interests are likely to be defeated or diminished by a successful appeal. | Who is a necessary party for the purpose of an appeal? | 008278.docx | LEGALEASE-00129587-LEGALEASE-00129588 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 17270 | Diaz v. State, 699 S.W.2d 683 | 67+3 | In the case before us, the State sufficiently established that appellant entered the building without the effective consent of the owner. The padlocked door through which appellant entered the building was an enclosure designed to exclude intruders which provided notice that entry to the building was forbidden. Entry with the intent to commit theft is the element that distinguishes burglary from criminal trespass. Intent is a fact question for the jury. Robles v. State, 664 S.W.2d 91 (Tex.Crim.App.1984). | Entry with intent to commit theft is element that distinguishes burglary from criminal trespass. V.T.C.A., Penal Code SS 30.02, 30.05. | How is burglary distinguished from criminal trespass? | 013249.docx | LEGALEASE-00129659-LEGALEASE-00129660 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17271 | Bibb v. State, 352 So. 2d 840 | 67+3 | Intent to steal or commit a felony is an essential part of the gravamen of the crime of burglary. Wicks v. State, 44 Ala. 398, 400; Holland v. State, 247 Ala. 53, 22 So.2d 519; Aiola v. State, 39 Ala.App. 215, 96 So.2d 816. In the other case to which we have referred and in which appellant herein was convicted of burglary, the intent charged and claimed was the intent to steal, the same intent that formed an essential element of the crime of larceny of which he was convicted in the instant case. In Yelton v. State, 56 Ala.App. 272, 321 So.2d 234, cert. denied, 294 Ala. 745, 321 So.2d 237, it was held that a final judgment of conviction of murder that was the immediate product of a burglary precluded a subsequent trial for and conviction of the burglary, wherein it was charged that defendant broke and entered with intent to murder. On application for rehearing, the State interposed Gordon v. State, 71 Ala. 315, in which it was held that a conviction of the larceny that one intended to commit at the time of the breaking and entry of a burglary is not a bar to a prosecution for the burglary. It was concluded, however, that whatever disharmony there may be between Gordon and what was held on original deliverance in Yelton, Code 1940, T. 15, s 287, controls. We are not called upon, and we do not here attempt, to decide, under every one of a variety of assumed situations, whether a conviction or an acquittal of the charge of burglary with intent to steal would constitute a bar to a prosecution for a closely related larceny, or the conviction or an acquittal of larceny would constitute a bar to a prosecution for a closely related burglary. For instance, we do not here hold in effect that an acquittal of one charge on the basis of failure of proof of some essential element of that charge which is not an essential element of the other charge would preclude a prosecution for the other charge, furthermore, we do not here hold in effect that there can never be a logical line of demarcation between the | Intent to steal or commit a felony is an essential part of the gravamen of the crime of burglary. | Is intent an essential part of burglary? | 013251.docx | LEGALEASE-00129661-LEGALEASE-00129662 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 17272 | O'Leary v. Shipley, 313 Md. 189 | 79+6 | In the present case, it is clear that the trial court applied the Elrod-Branti political patronage test in adjudicating O'Leary's claim. That this test was not appropriate is equally clear. Indeed, the Elrod-Branti test is a narrow and somewhat rigid one, see Jones v. Dodson, supra, 727 F.2d at 1334 n. 6, and is aptly applied only to a set of facts that, as a threshold matter, show political patronage as the sole motive of a discharge. The facts here pointed to no such threshold conclusion. Despite the seeming obfuscation created by proceeding at trial on the erroneous premise that the Elrod-Branti test was controlling, it was apparent from the outset that O'Leary was alleging that her overt expressive conduct in challenging Shipley in the election was considered by Shipley and played a role, if not the sole role, in Shipley's employment decision. The appropriate test, therefore, was either Pickering alone or the combined Pickering-Mt. Healthy procedure, depending on whether permissible motives were involved in the discharge along with the allegedly impermissible ones. Once evidence was adduced of both permissible and impermissible motives, it became manifest that the Mt. Healthy procedure was the proper one. | Trial court improperly applied Supreme Court's Elrod-Branti political patronage test in adjudicating deputy clerk's claim that she had not been reappointed by clerk of court after unsuccessfully running against clerk in general election; trial court should have applied Pickering-Mt. Healthy test, as deputy clerk had alleged that her overt expressive conduct in challenging clerk in election was considered by clerk and played a role in her dismissal. | Is the Elrod-Branti political patronage test used to show political patronage as the sole motive of a discharge? | 013354.docx | LEGALEASE-00129673-LEGALEASE-00129674 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 17273 | Wiltz v. Esso Standard Oil Co., 126 So. 2d 649 | 302+11 | In construing this petition, it is well to bear in mind that technical objections and hard rules of pleadings are not favored under our system of law and that the general tendency is to be reasonable, and even liberal, in interpreting pleadings with a view to hearing the case on the merits providing the petition fairly informs the defendant of the nature of plaintiff's claim. Gomez v. Pope Park, La.App., Orleans, 1952, 56 So.2d 229. It is true where a petition does not set forth any facts but simply conclusions of the pleader it fails to state a cause of action. Succession of Stafford, 191 La. 855, 186 So. 360. Further, a plaintiff is not required to set forth the details of the proof or of the evidence which he relies on to support his case. Neilson v. Haas, La.App., 199 So. 202; Honeycutt v. Carver, La.App., 25 So.2d 99. The only allegations of fact that are required in a petition are those of ultimate facts which are the conclusions drawn from the evidentiary facts. State v. Hackley, Hume and Joyce, 124 La. 854, 50 So. 772. | A plaintiff is not required to set forth details of proof or of evidence which he relies on, and only allegations of fact that are required in a petition are those of ultimate facts which are conclusions drawn from evidentiary facts. | Are ultimate facts conclusions drawn from evidentiary facts? | 023103.docx | LEGALEASE-00129169-LEGALEASE-00129170 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 17274 | Washington-Youree Hotel Co. v. Union Indem. Co., 146 So. 342 | 302+228.19 | An exception of no cause of action admits the facts well pleaded, but not conclusions of law. Ultimate facts of necessity are conclusions from intermediate and evidentiary facts. The facts from which the conclusion is drawn are what must be pleaded. State v. Hackley, Hume & Joyce, 124 La. 854, 50 So. 772; Arent v. Liquidating Com'rs, 133 La. 134, 62 So. 602; Hart v. Standard Oil Co., 168 La. 183, 121 So. 737. | Exception of no cause of action admits well-pleaded facts, but not conclusions of law. | Does an exception of no cause of action admit conclusions of law? | 023109.docx | LEGALEASE-00129243-LEGALEASE-00129244 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 17275 | Perdue v. Cruse, 38 So. 3d 1235 | 141+36(3) | This issue has come before this court before. In Aucoin v. Fell, 00"1254 La.App. 3 Cir. 2/7/01), 779 So.2d 1087, we held that there was no implied right to a utility easement or right of way in the right of passage. "Civil Code articles 689 and 705 provide a means for the owner of an enclosed estate to access his property by foot or vehicle.... We find no provision in the Civil Code which grants an enclosed estate the right of a servitude of passage for utilities." Id., at 1089. Also, this court, in Salvex, Inc. v. Lewis, 546 So.2d 1309 (La.App. 3 Cir.1989), held that the right of passage afforded a mineral lessee did not extend to placing a pipeline within its legal servitude of passage. In that case, the right of passage allowed the lessee the right to pass over the servient estate with tanker trucks. | Evidence that enclosed estate had long been used as a residence was insufficient to support trial court's finding that a predial servitude existed such as to allow the placement of a water service line across servient tenement holders' property, outside of original right of passage, in servient tenement holders' action for trespass, where no evidence was presented that indicated a predial servitude had been created by convention or acquired by prescription. LSA-C.C. art. 689 et seq. | Is an enclosed estate granted the right of servitude of passage for utilities? | 042519.docx | LEGALEASE-00129231-LEGALEASE-00129232 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17276 | Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347 | 25T+141 | Given the language and structure of the JVA, these evidentiary findings are insufficient to support an agency determination. First, typically a guarantor cannot be compelled to arbitrate on the basis of an arbitration clause in a contract to which it is not a party. Interocean Shipping Co. v. Nat'l Shipping & Trading Co., 523 F.2d 527, 539 (2d Cir.1975). Accord Hester, 879 F.2d at 176, 180"81 (holding that an instrumentality of Nigeria was not the government's agent for purposes of an agreement between the instrumentality and an American corporation despite a guarantee by the Nigerian government for all loans necessary for offshore financing). Second, a statement of representation, such as that in Article 22.3, in the midst of a provision regarding oral modifications of the agreement, is not remarkable. "All corporations to some degree represent their owners," and Turkmenneft is an oil company wholly owned by Turkmenistan. Hester Intern. Corp v. Federal Republic of Nigeria, 879 F.2d 170, 180 (5th Cir.1989). As we have held in the past, such a statement does not establish an agency relationship. Id. at 180. And third, the 1996 letter from the Ministry, while probative of how the Government conceived of its role in JVK in 1996, does not overcome the fact that the preamble to the JVA defines the Turkmenian Party as Turkmenneft"a "legal entity within the meaning of the laws of Turkmenistan""not the Government or the Ministry. The JVA was signed in 1993, before the Ministry penned the letter that Bridas claims demonstrates that Turkmenneft signed the JVA as an agent. | Typically, a guarantor cannot be compelled to arbitrate on the basis of an arbitration clause in a contract to which it is not a party. 9 U.S.C.A. S 1 et seq. | Can a guarantor be compelled to arbitrate based on an arbitration clause in a contract? | 007340.docx | LEGALEASE-00130197-LEGALEASE-00130198 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17277 | Nationwide Mut. Ins. Co. v. Home Ins. Co., 330 F.3d 843 | 25T+141 | An arbitration panel may not determine the rights or obligations of non-parties to the arbitration. See Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1256 (7th Cir.1994); Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Elec. Co., 793 F.2d 214, 216 (8th Cir.1986); Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, 312 F.2d 299, 301 (2d Cir.1963). In NCR Corp. v. Sac-Co., Inc., 43 F.3d 1076 (6th Cir.1995), we held that an arbitrator exceeded his authority by ordering payment of punitive damages to non-parties. In that case, the arbitrator erred by creating legal rights in the recipients of the punitive damage award, all of whom were non-parties to the arbitration. In the instant case, Home and Nationwide agree that CIGNA and its affiliate, AISUK, are non-parties to the contract and to the arbitration. Thus, the arbitration award exceeds the panel's authority. | Arbitration panel may not determine rights or obligations of non-parties to arbitration. 9 U.S.C.A. S 1 et seq. | Can an arbitration panel determine the rights or obligations of non-parties to arbitration? | 007348.docx | LEGALEASE-00130205-LEGALEASE-00130206 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 17278 | Besemer v. Bd. of Cty. Comm'rs, Brown Cty., 357 N.W.2d 365 | 79+33 | The district court has broad discretion to adjust the disputed salaries under this statute. Busse v. Board of Commissioners, Sibley County, 308 Minn. 184, 189, 241 N.W.2d 794, 797 (1976). Unless they are clearly erroneous we must accept trial court findings characterizing the action of the county board. Amdahl v. County of Fillmore, 258 N.W.2d 869, 874"75 (Minn.1977). | District court has broad discretion under statute allowing review of salary set for clerk of court and deputy clerks to adjust disputed salaries. M.S.A. SS 485.018, subd. 7, 487.13. | Does the district court have the discretion to adjust salaries? | Clerks of court - Memo 112 - RK.docx | LEGALEASE-00019608-LEGALEASE-00019609 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 17279 | Messmer v. State Farm Cty. Mut. Ins. Co. of Texas, 972 S.W.2d 774 | 307A+501 | An order for separate trials leaves the lawsuit with all its issues intact even though they will be resolved at different times. Hall, 450 S.W.2d at 838. The effect of a non-suit is dismissal of the entire suit. Alvarado v. Hyundai Motor Co., 885 S.W.2d 167, 174 (Tex.App."San Antonio 1994), reversed on other grounds, 892 S.W.2d 853 (Tex.1995); Merrill Lynch Relocation Management, Inc. v. Powell, 824 S.W.2d 804, 806 (Tex.App."Houston [14th Dist.] 1992, orig. proceeding); see Tex.R. Civ. P. 162; 5 McDonald Texas Civil Practice " 27:37 (1992). It is not an appropriate means of discontinuing proceedings only on certain issues. See 5 McDonald Texas Civil Practice " 27:37. A party wishing to exclude certain issues in his suit from trial without terminating the entire suit should abandon those claims. See id. " 27.38 (emphasis added); see also Tex.R. Civ. P. 165; Matter of R.G., Jr., 865 S.W.2d 504, 508 (Tex.App."Corpus Christi 1993, no writ) (Rule 162 permits dismissal of entire suit but particular claims may be abandoned before trial of cause in accordance with Rule 165). The plaintiff's right to a non-suit is absolute and the trial judge has no discretion to refuse to grant a dismissal. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982); Zimmerman v. Ottis, 941 S.W.2d 259, 261 (Tex.App."Corpus Christi 1996, no writ); but see Hartnett v. Adams & Holmes Mort. Co., Inc., 539 S.W.2d 181, 184 (Tex.Civ.App."Texarkana 1976, no writ) (affirming judge's refusal to grant partial non-suit as pleadings showed only single cause of action which cannot be split and tried piecemeal). | Plaintiff's right to nonsuit is absolute and trial judge has no discretion to refuse to grant dismissal. | Is a plaintiff's right to nonsuit an absolute one? | 025899.docx | LEGALEASE-00129717-LEGALEASE-00129718 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 17280 | Schneck v. Mut. Serv. Cas. Ins. Co., 18 Wis. 2d 566 | 307A+742.1 | In rejecting the highly technical forms of common law pleading, our code perhaps has gone to the other extreme to the extent that pleading has becomealost art and fails in some respects to define all the issues with clarity. This defect was recognized by the adoption of the technique of pretrial conferences. Two purposes of a pretrial conference are to simplify the issues and determine the necessity or desirability of amendments to the pleading.[] Sec. 269.65(1)(a) and (b), Stats. Subs. (2) of this section requires a court to make an order which recites the action taken, the amendments allowed, and the agreements made which limit the issues for trial. When such an order is made it controls the subsequent course of action. | Purposes of pretrial conference are to simplify issues and determine necessity or desirability of amendments to pleading. W.S.A. 269.65(1)(a, b), (2). | What are the purposes of a pretrial conference? | Pretrial Procedure - Memo # 1334 - C - SB.docx | ROSS-003300999-ROSS-003301000 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17281 | Rocky Mountain Exp. Co. v. Colquitt, 179 Cal. App. 2d 204 | 307k174.2.1 | It was not intended that the pretrial order should do away with the power of the trial court to permit amendments to conform to the proof... | The purpose of pretrial proceedings is to expedite and not to obstruct | Is partial proceeding aimed at expedition and not obstruction of the administration of justice? | Pretrial Procedure - Memo # 1511 - C - VP.docx | ROSS-003021860/ROSS-003031881 | Condensed, SA | 0.92 | 0 | 1 | 1 | 1 | |
| 17282 | Kinley v. State, 89 Tex. Crim. 199 | 352H+147 | It is not necessary that an indictment charging rape upon a girl under 18 years of age negative her previous unchastity... | It is not necessary that an indictment charging rape upon a girl under 18 years of age negative her previous unchastity. | Is chastity relevant in a rape indictment? | 043059.docx | LEGALEASE-00130362-/LEGALEASE-00130363 | Condensed, SA | 0.84 | | 1 | 0 | 1 | |
| 17283 | Cooks v. Neely Lumber Co., 275 So. 2d 886 | 413+1 | The right of a citizen to contract is vitally important to the business community and is protected by our laws. We are of the opinion that it was never the intent of the legislature in enacting the workmen's compensation laws to impair the lawful right to contract... | Workmen's compensation law was not intended to impair the lawful right to contract. | Did the Workmen's Compensation law intend to impair the lawful right to contract? | 047824.docx | LEGALEASE-00130143-LEGALEASE-00130144 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | 1 | 1 | |
| 17284 | Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co., 815 F.2d 338 | 231H+1349(6) | This holding is fully in accord with the decisions in other circuits. In Palestine Telephone Co. v. Local Union 1506 of the Int'l Brotherhood of Electrical Workers, 379 F.2d 234... | Issue of timely compliance with a grievance procedure was question of procedural, not substantive arbitrability, and thus, in view of party's agreement that underlying substantive claim of wrongful dismissal was arbitrable under collective bargaining agreement, timely issue was also arbitrable. | Can procedural questions be arbitrated if the underlying substantive question is arbitrable as well? | 007901.docx | LEGALEASE-00131421-/LEGALEASE-00131422 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | 0 | 1 | |
| 17285 | Fitzgerald v. Com., 11 Va. App. 625 | 135H+144 | Each of these offenses requires proof of a fact which the other does not. Destruction of private property requires proof of either damaging or carrying away property... | Double jeopardy did not prohibit defendant's convictions for destruction of private property and for burglary, as result of causing damage to property when breaking and entering building, in that each offense required proof of fact not required for the other; burglary could be proved without necessity of proving that private property was damaged or carried away, while destruction of private property could be proved without necessity of proving entry or intent to commit larceny, Code 18.2-137 and 18.2-137. | Does burglary require damage to property? | 013503.docx | LEGALEASE-00131305-/LEGALEASE-00131306 | Condensed, SA, Sub 0.38 | 0.38 | | 1 | 1 | 1 | |

3046

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17286 | Smith v. Stanchak, Conn's, 1918 OK 167 | 67+46(1) | Del. C. s 395 defines fourth degree burglary as breaking and entering a building with the intent to commit a crime therein, whether such breaking be executed or not. 11 Del. C. s 3705 provides that, upon the trial of a person charged with burglary, the jury may find the defendant not guilty and guilty of breaking and entering alone. Appellant argues that the evidence of intent in this case was equivocal and not consistent with lack of intent to commit a crime in the building. He also suggests that the key to evidence except as a means of starting the car and that if no crime was to be committed in the building, even though breaking and entering, for these reasons, he contends that the evidence is insufficient to support a burglary verdict. 11 Del. C. s 395. | Where defendant was either not guilty of committing any crime or was guilty of breaking and entering with intent to steal (as to automobile which he was later found driving, court was not required to charge jury that it could find defendant not guilty of burglary in fourth degree but guilty of breaking and entering alone. 11 Del. C. §§ 395, 3705. | What is burglary in the fourth degree? | Burglary - Memo 39 - RE.docx | ROSS-003218549 ROSS-003218583 | Condensed, SA, Sub 0.56 | 0.56 | | 1 | | 1 | |
| 17287 | Gibson v. Blanton, 483 S.W.2d 372 | 30+425 | Rule 164, T.R.C.P., provides that once a case is ruled by the judge, a non-suit may be taken at any time before the decision is announced. The failure to grant a nonsuit timely filed is reversible error. Smith v. Columbian Carbon Co., 145 Tex. 478, 198 S.W.2d 727 (1947). The Supreme Court of Texas has stated that the statute from which this rule was taken gives plaintiff an absolute right to take a nonsuit under the conditions stated therein. Renfroe v. Johnson, 142 Tex. 251, 177 S.W.2d 600 (1944). In the same case, however, the court approved the statement that "the privilege given by the statute is not entirely without limitation. Rel'd p. 600. | Failure to grant a nonsuit timely filed is reversible error. Rules of Civil Procedure, rule 164. | Is failure to grant a nonsuit timely filed, a reversible error? | 024127.docx | LEGALEASE-00130509 LEGALEASE-00130509 | Condensed, SA, Sub 0.86 | 0.86 | | 1 | | 1 | |
| 17288 | Sammons v. Doctors for Emergency Serve., P.A., 913 A.2d 519 | 307A+749.1 | The trial court has discretion to resolve scheduling issues and to control its own docket. Under Superior Court Civil Rule 16, the trial judge enters a scheduling order which governs the case management, scheduling and trial management. Superior Court Civil Rule 16 mandate that parties follow the trial judge's scheduling order, and these rules assure that the parties conduct discovery in an orderly fashion. Therefore, they must be mindful that scheduling orders are not merely guidelines but have full force and effect as any other order of the Superior Court." | Scheduling orders are not merely guidelines but have full force and effect as any other order of the Superior Court. | Are scheduling orders mere guidelines? | 030866.docx | LEGALEASE-00131113 LEGALEASE-00131114 | Condensed, SA 0.8 | 0.8 | | 1 | | 1 | |
| 17289 | Fratus v. McConnell, 219 Neb. 238 | 307A+743 | Pretrial conferences are conducted in order to simplify and narrow the issues of case and to avoid surprise and surprises. Newman Grove Creamery Co. v. Deaver, 208 Neb. 178, 302 N.W.2d 697 (1981). In the case at bar the defendant knew, well within the time limits imposed by the pretrial order, that he was going to call Walramath and Professor Skoglund as expert witnesses at the trial. If Skoglund was never identified at all until less than 2 weeks before trial. Despite defense attorney's characterization of his actions, it was not inadvertent; it was "trap" for the plaintiff's attorney. | Pretrial conferences are conducted to simplify and narrow issues of case and to avoid surprise and surprises. | Why are pretrial conferences conducted? | 010074.docx | LEGALEASE-00130961 LEGALEASE-00130983 | Condensed, SA | 0.84 | | 1 | | 1 | |
| 17290 | Oppenheim v. Straus, 210 A.D. 880 | 307A+331 | Order directing the plaintiff to the defendant Max Straus shall not be required to produce upon his examination any books or papers whatever, and may be examined by his attorney as to such plaintiff may deem, and, as so modified, affirmed without costs, upon the ground that the production of books and papers must be compelled by order of the court. See Wisendanger v. Lang, 204 App. Div. 768, 198 N. Y. S. 754. The date for the examination to proceed to be fixed in the order. Settle order on notice. | The production of books and papers must be compelled by order of the court. | Should the production of books and papers be compelled by order of the court? | 027326.docx | LEGALEASE-00131040 LEGALEASE-00131041 | Condensed, SA, Sub 0.85 | 0.85 | | 1 | | 1 | |
| 17291 | Milam v. Attaway, 195 Ga. App. 496 | 307A+749.1 | Appellant asserts that error occurred when the trial court refused to admit in evidence a map of the property, even though the pretrial order stipulated that "maps of the subject property" were to be admitted without proof of authenticity. A colloquy at trial between the trial court and counsel revealed that the trial court determined that the language of the pre-trial order to be too broad and decided that exhibits could not be admitted if the language was not germane to the case, notwithstanding the language of the pretrial order. The interpretation of the pre-trial order was within the discretion of the trial court and the record does not indicate that the discretion was abused. See Ambler v. Archer, 230 Ga. 281, 287-288, 196 S.E.2d 858 (1973). | Interpretation of pretrial order is within discretion of trial court. | Is the interpretation of pretrial order within the discretion of trial court? | Pretrial Procedure - Memo #209 - C - RE.docx | ROSS-003203 549 ROSS-003013650 | Condensed, SA, Sub 0.91 | 0.91 | | 1 | | 1 | |
| 17292 | Hull v. State Farm Fire & Cas. Co., 977 P.2d 210 | 170A+1923 | Once entered, a pretrial order governs the trial, Morris v. Homco Int'l, Inc., 853 F.2d 337, 342 (5th Cir.1988), because "theory not even implicitly included in the pretrial order is barred unless the order is later amended 'to prevent manifest injustice.'' Id. at 343 (quoting Fed.R.Civ.P. 16(e)). The trial court reviews the case governing the parties' conduct in the order only for abuse of discretion. Swift v. State Farm Mut. Auto. Ins. Co., 796 F.2d 120, 123 (5th Cir.1986). "We are not bound to accept the court's [trial court's] interpretation of a stipulation agreed upon by the parties during pretrial proceedings and approved by the court." Hodges v. United States, 597 F.2d 1014, 1018 (5th Cir.1979) (reviewing a question of context). A trial court has great discretion in interpreting a pretrial order. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 363, 91 S.Ct. 1434, 1459 (1971). Nichols Constr. Corp. v. Cessna Aircraft Co., 808 F.2d 340, 354 (5th Cir.1985). | Trial court has great discretion in interpreting pretrial order. | Is the interpretation of pretrial order within the discretion of trial court? | 027379.docx | LEGALEASE-00130816 LEGALEASE-00130817 | Condensed, SA 0.93 | 0.93 | | 0 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 17293 | Bill Barr and Enterprises v. Comm'r of Revenue, 411 Mass. 114 | 371+2001 | "It is the essence of any system of taxation that it should produce revenue acceptable in amount, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation." Barnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383 (1931). See Hillsboro Nat'l Bank v. Commissioner of Internal Revenue, 460 U.S. 370, 377, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983), citing Burnet v. Sanford & Brooks Co., supra ("[t]he annual accounting system is a practical necessity if the [f]ederal income tax is to produce revenue ascertainable and payable at regular intervals"). White, Art Essay on the Conceptual Foundations of the Tax Benefit Rule, 82 Mich. L.Rev. 486, 490*491 (1983), and authorities cited. In Barnet v. Sanford & Brooks Co., supra, a taxpayer reported net losses on a long-term contract for the 1916-1920 tax years. Id. at 361, 51 S.Ct. 150 (n 363). the taxpayer recovered significant income on the contract after receiving a judgment against the United States government. Its customer. Id. at 362, 51 S.Ct. 150. Although, over the course of the decade, the taxpayer had produced a net operating loss (NOL) as they can today. Id. Cf. 26 U.S.C. § 172 (1988). The Court reasoned that the taxpayer's recovery constituted income in the year it was received, despite the net loss in the prior years. At 365, 51 S.Ct. 150. And it measured and remitted taxes, and, if transactional inequities flowed from the annual assessment of income taxes, relief could "be afforded only by legislation, not by the courts." Burnet v. Sanford & Brooks Co., supra at 365, 51 S.Ct. 150. | Essence of any system of taxation is that it should produce revenue acceptable, and payable to the government, at regular intervals, since only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. | What is the essence of any system of taxation? | Taxation - Memo# 107 - C - S6.docx | ROSS-003288784-ROSS-003288785 | Condensed, SA | 0.83 | 0 | 1 | | 1 | |
| 17294 | Am. Lift & Acc. Ins. Co. of Kentucky v. Conn., 173 S.W.3d 910 | 371+2001 | The character of a tax is determined by its operation, effect, and incidents, not by the label the legislature appends to the statute. Reynolds Metal Co. v. Martin, 269 Ky. 378, 107 S.W.2d 251, 259 (1937); City of Lebanon Junction v. Cellco Partnership, Ky.App., 80 S.W.3d 761 (2002). Cf. at "C Cost Co., Inc. v. Commonwealth, Ky.App., 628 S.W.2d 692, 693 (1981) 691 131.320 does not specifically identify what type of tax is imposed, we must closely examine all operation of the tax from its operation and effect. | The character of a tax is determined by its operation, effect, and incidents, not by the label the legislature appends to the statute. | How is the character of a tax determined? | Taxation - Memo# 182 - C - S6.docx | ROSS-003288242-ROSS-003288243 | Condensed, SA | 0.75 | | 1 | | 1 | |
| 17295 | Alabama Power Co. v. Red, 371+2001 Power Comm'n, 184 F.2d 602 | | Turning to incorporeities, those expended by interstate (except taxes prior to July 1, 1952) were allowed and are not in dispute. Property taxes during construction, and for a year preceding commencement of work, were recovered by the Commission, pursuant to the Commission period on n1932.8. Is contended that taxes for the time before this, or for July of 1932, were amounts reimbursed to the lands, ought to be added. Taxes are the annual compensation paid to government for annual protection and for the current support of government, and are generally in the nature of an investment. Only from the date that property included in a project is definitely committed to it can it be said to be used or useful, or a part of the project under construction. There are certainly not a part of the original price paid for the land. No principal of law requires a mere generous allowance of these than was made. | "Taxes" are annual compensation paid to government for annual protection and for current support of government and are generally in the nature of an "investment". | To whom is the tax paid to? | 04973.docx | LEGALEASE-00130920-LEGALEASE-00130503 | Condensed, SA | 0.82 | 0 | 1 | | 1 | |
| 17296 | Articulate Coll. Chg. Firm Prot. Dist. v. City of Grass, 305 Cal-App. 4th, 1355 | 371+2001 | Second, the service charge limitation in subdivision (b) of Government Code section 29142 applies to "taxes" covering all purposes of such districts." Taxes that provide revenues that are available for all purposes of the governmental entity are "general taxes" and include ad valorem property taxes. (Gov. Code Ann., § 37100.1 (Cal. and Pac. 2013).) See also Bay Area Cellular Telephone Co. v. City of Union City (2008) 162 Cal.App.4th 686, 693 (Bay Area Cellular); Regulations of Local Government Code section 53978 permits a city for a special tax for fire protection and... Guardino (1995) 11 Cal.App.4th 220, 232, 41 Cal.Rptr.2d 207, 902 P.2d 225.) Taxes that provide revenue for a specific or limited purpose are special taxes. (Ibid.) Government Code section 53978, other than Government Code section 29142, gives a county the general authority to recoup expenses for collecting special taxes that a fire protection district may impose. Moreover, a county's ability to recoup expenses for collecting special taxes for fire protection district may impose that are establishing in other specific provisions of law. For example, Health and Safety Code section 13911 authorizes such a district to levy a voter-approved special tax pursuant to Government Code section 50075, subdivision (b), permits a county to establish its reasonable cost of collection to the 53978. Government Code section 50077, subdivision (b), permits a county (in that district levy) from reasonable expenses in collecting taxes. Government Code section 50078, subdivision (a), permits a county to deduct its reasonable expenses collection 13911 permits a fire protection district to levy a special tax for fire protection services pursuant to Government Code sections 50075-53978, subdivision (a), permits a county to deduct its reasonable expenses when the district levies a taxes for a district. Because a county's entitlement to recoup expenses with respect to special taxes with respect to collection fire protection of law other than Government Code section 29142 it appears that the reason of that section in Health and Safety Code section 13899 was not intended to apply to special taxes and assessment. | Taxes that provide revenues that are available for all purposes of the governmental entity are "general taxes" and include ad valorem property taxes, whereas taxes that provide revenue for a specific or limited purpose are "special taxes." | When is a tax a general tax? | 043318.docx | LEGALEASE-00130962-LEGALEASE-00130964 | Condensed, SA, Sub | 0.87 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17297 | Dukeshere Farms v. Ball, 405 Mich. 1 | 371v2301 | As correctly stated by Judge William S. White, Berrien Circuit Court, in his opinion in the instant suit, "[t]axes and assessments do have a number of elements in common. Both are exactions or involuntary contributions of money the collection of which is sanctioned by law and enforceable by the courts. Here, however, the similarity ends." 112a, Appellant's Appendix). Exactions which are imposed primarily for public rather than private purposes are taxes. See People ex rel. the Detroit & M. R. Co. v. Salem Twp. Board, 20 Mich. 452, 474; 4 Am Rep. 400 (1870). Revenue from taxes, therefore, must have to the benefit of all, as opposed to exactions from a few for benefits that will inure to the person or group assessed. Knott v. City of Flint, 363 Mich. 483, 499; 109 N.W.2d 908 (1961); Fluckey v. City of Plymouth, 358 Mich. 447, 451, 100 N.W.2d 486 | Taxes are exactions or involuntary contributions of money which are sanctioned by law and enforceable by the courts and which are imposed primarily for public rather than private purposes. | Is the collection of tax sanctioned by law and enforceable by courts? | 047242.docx | LEGALEASE 00130491-LEGALEASE 00130493 | Condensed, SA, Sub 0.79 | | 0 | | | 1 | 1 |
| 17298 | Dukeshere Farms v. Ball, 405 Mich. 1 | 371v2301 | As correctly stated by Judge William S. White, Berrien Circuit Court, in his opinion in the instant suit, "[t]axes and assessments do have a number of elements in common. Both are exactions or involuntary contributions of money the collection of which is sanctioned by law and enforceable by the courts. Here, however, the similarity ends." 112a, Appellant's Appendix). Exactions which are imposed primarily for public rather than private purposes are taxes. See People ex rel. the Detroit & M. R. Co. v. Salem Twp. Board, 20 Mich. 452, 474; 4 Am Rep. 400 (1870). Revenue from taxes, therefore, must have to the benefit of all, as opposed to exactions from a few for benefits that will inure to the person or group assessed. Knott v. City of Flint, 363 Mich. 483, 499; 109 N.W.2d 908 (1961); Fluckey v. City of Plymouth, 358 Mich. 447, 451, 100 N.W.2d 486 | Taxes are exactions or involuntary contributions of money which are sanctioned by law and enforceable by the courts and which are imposed primarily for public rather than private purposes. | Is tax an exaction or involuntary contribution of money? | 047265.docx | LEGALEASE 00130496-LEGALEASE 00130497 | Condensed, SA, Sub 0.79 | | 0 | | | | 1 |
| 17299 | Reifv., City of Winter Park, Fla., 749 F.3d 1188 | 399v1 | Moreover, " 62'77 states that "an officer of the city may enforce [the ordinance] against any person remaining in a public area... after the sign is posted." Record, Doc. 16, at 13 (emphasis added). No definition of the word "sign" is given in the ordinance, and the common definition of the word is "a conspicuous place" or "a display." Webster's New World Dictionary 1334 (3d College ed.1988) provides a common definition for the word "sign"; Defendants contend, therefore, that the word "sign" should be given an intuitively ordinary meaning. An intuitively interpreted "sign" (e.g., a posted sign providing regulations) would not provide defendants with reasonable notice; rather, the city's position and | Municipal ordinance, allowing person residing in a dwelling unit to post "no loitering" sign and allowing city officer to enforce such prohibition against loitering within 50 feet of dwelling, on its face violated free speech rights, as that clause permitted a private citizen to ban municipality regulate speech on traditional public fora for any reason, and it provided no standards for enforcement, leaving officers free to enforce the ban on an ad hoc manner or viewpoint of an individual's speech. U.S.C.A. Const.Amend. 1. | Can an officer enforce a posted no loitering sign? | 047448.docx | LEGALEASE 00130505-LEGALEASE 00130506 | Condensed, SA, Sub 0.22 | | 0 | | | | 1 |
| 17300 | HM Portland v. DeVito Builders, 317 F.3d 41 | 25Tv144 | Under the plain language of the contract, the arbitration provision of the agreement is not triggered until one of the parties requests mediation. See Kennedy Bldg. Assoc. v. Agua Dynamics, Inc., 2953 Me 1206, 1207, 1101; (Me. 2003). In Kennedy, the parties agreed to arbitration "in the event the parties could not agree on mediation...." If a dispute arose between the parties, the contract required that they attempt mediation or arbitration before resorting to the courts; in this case, the parties clearly intended to make arbitration a condition precedent to resort to judicial resolution. Here, the parties never resort to " at all.[*]1 Further, "[b]ecause neither party requested mediation, the arbitration provision has not been activated and the NAA does not apply." Id. Congress did not enact this FAA to "operate without regard to the wishes of the contracting parties." Mastrobuono, 514 U.S. at 57; 115 S.Ct. 1212. When arbitration agreement provisions are either ambiguous or the agreement upon the satisfaction of some condition precedent, the failure to satisfy the specified condition will preclude the parties from compelling arbitration and staying proceedings under the FAA. Because neither HM nor DeVito ever attempted to mediate this dispute, neither party ever attempted to arbitrate it | Property owner could not compel arbitration of dispute with construction contractor, pursuant to parties' contract, where contract's arbitration clause required request for mediation as condition precedent to arbitration, and neither owner nor contractor had requested mediation of the dispute. 9 U.S.C.A. § 1 et seq. | Is arbitration possible if mediation stands as a condition precedent? | 007468.docx | LEGALEASE 00132387-LEGALEASE 00132388 | Condensed, SA, Sub 0.73 | | 0 | | | | 1 |
| 17301 | Newman Grove Creamery Co. v. Deaver, 208 Neb. 178 | 303hv742.1 | Be that as it may, we agree with the Michigan Court of Appeals that "A pretrial conference is conducted before trial in order to simplify and to narrow the issues of the case and to avoid traps and surprises." (2 emphasis supplied.) Jamison v. Lloyd, 51 Mich. App. 570, 573, 123 N.W.2d 793, 94.1 (1974). Somewhat amplifying that statement is the following from State Highway Comm. v. Redmon, 42 Mich. App. 642, 646, 202 N.W.2d 527, 529 (1972): "[C]ounsel cannot all-shy by and then for the first time interpose objection...to... | Purpose of pretrial conference is to simplify and to narrow issues of case and to avoid traps and surprises. | What is the purpose of pretrial conference and what does it simplify? | 024263.docx | LEGALEASE 00131746-LEGALEASE 00131747 | Condensed, SA | 0.8 | | 0 | | | | 1 |
| 17302 | Rosenbaum v. Texas Energies, 241 Kan. 295 | 303Iv748.1 | ...construe the breadth of a pretrial order; the general rule calls for liberal construction. Blair v. Dice School Motor, Inc., 232 Kan. 458, 489, 657 P.2d 114 (1983); The pretrial order controls the subsequent course of action in this case; its breadth should be construed to include the issue of mutual mistake. These are: "(1) The application of the Parol Evidence Rule... (3) Whether the Defendant... had the authority, right and power to create a valid gas unit at the time of the filing of the Declaration of Consolidation | In determining breadth of pretrial order, order should be given liberal construction. | "In determining breadth of pretrial order, should an order be given liberal construction?" | Pretrial Procedure Memo # 1973 - C - NS.docx | ROSS 000301525-ROSS 000301526 | Condensed, SA, Sub 0.84 | | 0 | | | | 1 |
| 17303 | Barlow v. Hawk, 165 N.C. App. 708 | 303hv517.1 | It is well established that once a plaintiff files a voluntary dismissal under Rule 41(a)(1), the trial court loses jurisdiction over the case. See, e.g., in re Webber Heat, Tompkins v. Log Systems, Inc., 96 N.C.App. 333, 335, 385 S.E.2d 529, 532 (1989), disc. review denied, 328 N.C. 334, 389 S.E.2d 819 (1990). The refiling of the case within the one-year time limit of the rule "belgins] [the] case anew for all purposes." Id. (prior order denying summary judgment is not binding in a case where the matter is refiled after voluntary dismissal without prejudice). See, e.g., Gibbs v. Carolina Power & Light Co., 265 N.C. 459, 464, 144 S.E.2d 393, 398 (1965) (applying 1 A.1 A.3d 617, 1411). This Court has specifically established that where a plaintiff files a voluntary dismissal without prejudice, Doe v. Duke Univ., 118 N.C.App. 406, 455 S.E.2d 421, 422 (1995) (a Rule 2(a) protective order was nullified by plaintiff's dismissal) | Once a plaintiff files a voluntary dismissal, it is as if the suit had never been filed. | "When a plaintiff files a voluntary dismissal, is it as if the suit had never been filed?" | Pretrial Procedure Memo # 2132 - C - NS.docx | ROSS 000313483-ROSS 000313483 | Condensed, SA | 0.86 | | 0 | | | 1 | |

Appendix D

3049

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 17904 | U.S. Bank Nat. Ass'n v. Rivera, 193 So. 3d 954 | 266r1800 | As the Court in Pino recognized, a voluntary dismissal irrevocably terminates an action and because no judgment exists, rule 1.540 generally does not apply. The problem with the defendant's attempt to use rule 1.540(b) to have this case reinstated is found in the actual language of rule 1.540(b). While rule 1.540(b) may be used to afford relief to all litigants who can demonstrate the existence of one of the five grounds enumerated therein, including fraud, the rule is nevertheless limited in its application to "relieve [the] a party or a party's legal representative from a final judgment, decree, order, or proceeding." "Fla. R. Civ. P. 1.540(b) (emphasis added) Pino, 151 So.3d at 15. | Trial court lacked jurisdiction to enter discovery orders after mortgagee's voluntary dismissal of foreclosure action following grant of mortgagee's motion to vacate final foreclosure judgment based on irregularities in actions taken by former counsel for mortgagee; voluntary dismissal was jurisdictional and acted to terminate the litigation, instantaneously divesting the court of jurisdiction to entertain further motions or to enter further orders that would have otherwise either disposed of the case on the merits or revived the original action. West's F.S.A. RCP Rule 1.540(B). | Does a voluntary dismissal irrevocably terminate an action? | 027810.docx | LEGALEASE-00131766-LEGALEASE-00131768 | Condensed, SA, Sub 0.14 | | 0 | 1 | | 1 | |
| 17905 | Berger v. Comer, 210 N.2d 546 | 307AI749.1 | The fourth claim of error is that proof was allowed of items of damages outside of the scope of the pre-trial order. While generally parties are bound by the pre-trial order, rigid adherence to it should not always be exacted. We find no abuse of discretion in admission of the items here in question. (Ind.) Corona, et al [Ind.] 421, 422, 218. | Generally, parties is bound by pretrial order, but rigid adherence to it should not always be exacted. | Is a party bound to rigidly adhere to a pretrial order? | Pretrial Procedure - Memo # 2315 - C-BP.docx | ROSS-003301308-ROSS-003302009 | Condensed, SA | | 0 | 0 | | 1 | |
| 17906 | Artus Me-Cal. City Fire Prot. Dist. v. City of Colusa, 105 Cal. App. 4th 1155 | 371r2001 | Second, the service charge limitation in subdivision (b) of Government Code section 25142 applies to "taxes covering all purposes of such district..." Taxes that provide revenues that are available for all purposes of the governmental entity are general taxes and include a discount on property taxes. (See Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 231, 45 Cal.Rptr.2d 207, 902 P.2d 225.) Taxes that provide revenue for a specific or limited purpose are special taxes. (Ibid.) Government Code section 25306, is a county that provided "a county the general authority to recoup expenses for collecting special assessments and special assessment taxes. Moreover a county's ability to recoup expenses for collecting special taxes that is the protection district that may is established in other, specific provisions of law ... For example, Health and Safety Code section 13911 authorizes such a district to levy a voter-approved special tax pursuant to Government Code provisions commencing with section 50075. Government Code section 50077, subdivision (b), permits a county to deduct its reasonable expenses when it collects a voter-approved special tax. Likewise, Health and Safety Code section 13813, subdivision (c), permits a fire protection district to levy a special tax for the protection services pursuant to Government Code provisions commencing with section 50075. Because a county is entitled to recoup expenses with respect to special taxes and assessments is governed by provision of law other than Government Code section 25142, it appears that the incorporation of that section in Health and Safety Code section 13809 was not intended to apply to special taxes and assessments. | Taxes that provide revenues that are available for all purposes of the governmental entity are "general taxes" and include ad valorem property taxes; whereas, taxes that provide revenue for a specific or limited purpose are "special taxes." | What are general taxes? | Taxation - Memo # 131 - C-RBM.docx | LEGALEASE-00202061-LEGALEASE-00202063 | Condensed, SA, Sub 0.87 | | 0 | 1 | | 1 | |
| 17907 | Hochstetler v. St. Joseph Cnty. Solid Waste Mgmt. Dist., 770 N.E.2d 910 | 371r2002 | As we have previously observed: A tax is compulsory and not optional; it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens. On the other hand, a user fee is optional and represents a specific charge for the use of publicly-owned or provided facilities or services. Ass Prod & Corp. Inc. v. Indianapolis Airport Auth., 612 N.E.2d 1104, 1108 (Ind.Ct.App.1993), trans. granted, trans. denied (see also City of Gary v. Ind. Bell Tel. Co., Inc., 732 N.E.2d 149, 156 (Ind.2000), reh'g denied. "Generally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer." Id. (quoting Bellsouth Telecomm., Inc. v. City of Orangeburg, 337 S.C. 35, 522 S.E.2d 862, 865 (1999). | Generally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer. | Can taxation be considered as optional? | 044655.docx | LEGALEASE-00131536-LEGALEASE-00131537 | Condensed, SA | | 0 | 0 | | 1 | |
| 17908 | Austin v. Centerpoint Energy Arkla, 365 Ark. 138 | 371r2001 | The surcharge imposed by the gas companies at the insistence of the PSC was simply not a tax. A "tax" is a "burden imposed by a government upon a taxpayer for the use and benefit of that government." City of Hot Springs v. Vapors Theatre Restaurant, Inc., 298 Ark. 444, 769 S.W.2d 1 (1989). Black's Law Dictionary defines a tax as a "monetary charge imposed by the government on persons, entities, or property to yield public revenue." Black's Law Dictionary 1496 (8th ed.2004) (emphasis added). In the instant case, the surcharges were levied by the gas companies pursuant to the PSC order. Rather, the surcharges were paid by gas customers to the gas companies, which are privately-owned corporate entities, not arms of the State. In addition, the surcharges did not yield public revenue; they were a mechanism by which the gas companies could recover some of the costs associated as a result of the implementation of the Policy. Accordingly, Austin did not have a valid illegal-exaction claim to be heard in circuit court. | A "tax" is a "burden imposed by a government upon a taxpayer for the use and benefit of the government." | Is "Tax" imposed for the use and benefit of the government? | Taxation - Memo # 224 - C-KI.docx | ROSS-003300287-ROSS-003300289 | Condensed, SA | | 0 | 1 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WDNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17909 | Circle "'" ""-C Coal Co. v. Com., 628 S.W.2d 883 | 371v2001 | The company freely maintains that the trial court was without jurisdiction to enter the company's appeal from severing coal in the coal severance tax is not a severance tax, but rather under KRS 135.050(2) would not be available. The company contends that the severance tax is nonetheless imposed KRS 143.020 refers to severance, excise and various other named taxes and also because the severance tax provisions are in KRS Chapter 143 rather than Chapter 118 entitled excise taxes. As to the first proposition, since KRS 143.040 is intending to prevent an entity except the Commonwealth from levying any type tax on the severance and processing of coal, it is not unreasonable that the legislature, to avoid later semantic problems, would use any and all possible names for taxation even if some were practically synonyms. For one another. As for the second argument, the fact that the tax for severing or processing of coal is in a separate chapter does not establish that such a tax is not a severance tax. The character of the tax is not determined by the label placed upon it by the legislation, but by its operation and effect. City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248 (1948). | Character of tax is not determined by the label placed upon it by the legislature, but by its operation and effect. | Is the character of a tax determined by its label? | Taxation - Memo # 227-C-4.docx | ROS5-00328284;ROS5-00328270 | Condensed, SA | 0.92 | 0 | 1 | | 1 | |
| 17910 | Huntington Pub. Co. v. Caryl, 180 W. Va. 486 | 371v2001 | The entire relationship between the appellee and its carriers centers in subscriber satisfaction. In a normal wholesale/purchaser relationship, the wholesaler concentrates its sales efforts upon its wholesale purchasers. However, in the daily operation of a newspaper, the newspaper publishing company concerns itself primarily with the subscribers who, under the appellee's theory of the case, are the carriers' customers. We find that the appellee's actions for the home delivery subscribers are inconsistent with the existence of a true wholesale sale between the appellee and the carrier. In tax matters, it is the substance, not the form of a transaction that determines tax liability. As we have stated previously. The actual rights and duties established by the terms of the taxpayers' transactions are controlling for the purposes of the business and occupation tax. Scholar, Pt. 1, H.O. Anderson, Inc. v. Roux, 177 W.Va. 419, 352 S.E.2d 541 (1986). | In tax matters, it is substance, not form of transaction, that determines tax liability. | Is it the form of a transaction that determines tax liability in tax matters? | 04484.4.docx | LEGALEASE-00131742; LEGALEASE-00131743 | Condensed, SA | 0.91 | | 1 | | 1 | |
| 17911 | Weekes v. City of Oakland, 21 Cal. 3d 386 | 371v2001 | In the ordinance itself, the levy at issue is described as a "license fee," and the character of the tax is described as "business." Yet, we have stated, of course, that the legislative designation of a particular tax, though persuasive, is not determinative as to its nature. (In Justice Braun, supra, 14 Cal. 2d 206, 704, 707, 58 in re Johnson (1920) 47 Cal.App. 460, 463, 197 p. 362, see Revenue v. Franchise Tax Board (1977) 19 Cal.3d 460. 473, 138 Cal.Rptr. 557, 563 F.2d 259. The character of a tax is ascertained from its incidents, not its label. (Ainsworth v. Bryant (1949) 34 Cal.2d 465, 473, 211 P.2d 564; Hyde v. Hyde (1956) 5 Cal.2d 154, 159, 53 P.2d 331). | The character of a tax is ascertained from its incidents, not its label; the legislative designation of a particular tax is not determinative as to its nature (Per Curiam, with three Justices concurring specially and two Justices concurring specially) | Is the legislative designation of a particular tax persuasive as to its nature? | 04484.8.docx | LEGALEASE-00132035-LEGALEASE-00132036 | Condensed, Order, SA, Sub | 0.62 | 1 | 1 | | 1 | 1 |
| 17912 | German v. Com., 410 Mass. 445 | 371v2001 | The Justices have defined a tax as "a revenue raising exaction imposed through generally applicable rules to defray public expense." Opinion of the Justices, 393 Mass. 1209, 1216, 473 N.E.2d 1266 (1984). When the fee derives from a generally applicable regulation, the interest of the legislature, as it may be expressed in part through its characterization ... defines a judicial respect, and especially so where the constitutionality of the exaction depends on its proper characterization." Emerson College v. Boston, 391 Mass. 415, 424, 462 N.E.2d 1098 (1984), quoting Associated Indus. of Mass., Inc. v. Commissioner of Revenue, 378 Mass. 657, 667-668, 393 N.E.2d 812 (1979). In the final analysis, however, the nature of a monetary exaction is not decisively determined. Its operation rather than how it has been characterized by the legislature. Emerson, supra 391 Mass. at 424, 462 N.E.2d 1098 | "Tax" is revenue-raising exaction imposed through generally applicable rules to defray public expense; "Opinion" of Justices can be decided by studying its operation rather than how it has been characterized by legislature. | How is the nature of a monetary exaction decided? | Taxation - Memo # 304-C-6.docx | ROS5-00331104;ROS5-00331042 | Condensed, SA, Sub | 0.74 | 1 | 1 | 1 | 1 | |
| 17913 | People v. Herskowitz, III N.Y.2d 1094 | 63v11) | From its earliest common law beginnings the crime of bribery has been denoted as an offense involving an official who accepts or receives an undue reward intended to influence conduct in office. Although originally directed against the corruption of judges and other officials involved in administering justice, its scope has been enlarged over the years so that today it encompasses all public servants. Even though the exclusion of this penal statute has significantly changed the category of public officers whose corruption is prohibited, it is significant that the conduct sought to be influenced still must relate to the powers, duties or functions of the public officer in his official or public servant capacity, as opposed to his individual capacity. People v. Chapman, 13 N.Y.2d 97, 242 N.Y.S.2d 200, 192 N.E.2d 318 | Scope of crime of bribery encompasses all public servants. | Does the scope of the crime of bribery encompass all public servants? | Bribery - Memo # 238 - C- 05i.docx | ROS5-00328562;ROS5-00328667-3 | Condensed, SA, Sub-3 | | 1 | 1 | 1 | 1 | 1 |
| 17914 | Northwestern Nat. Bank of Minneapolis v. Fox & Co., 102 F.R.D. 507 | 349b127.34 | Defendants do not question the widespread application of partnership principles in other areas of the law. New York's statute providing for joint and several liability of partners in tort, which the broad principles of misrepresentation, committed by any partner in the carrying on of the partnership business, is typical of the laws of other states. See New York Uniform Partnership Act § 24, 26 McKinney 1948); Jasperson v. Gibson (1948) (Chapter 24 and another Hardy, 430 F.Supp. 121 (E.D.N.Y.1977); Uniform Partnership Act, Section 13, 1960); that joint liability § 362, 8 167. This, of course, is unwilling to find that Congress intended to supplant such principles in the securities context, absent clear evidence to that effect. See SEC v. Management Dynamics, Inc., 515 F.2d 801, 812 (2d Cir. 1975). | Individual partners in accounting firm could be held jointly and severally liable under the securities law, as well as the common law, for any conduct constituting a violation on the part of any other partner of the accounting firm itself in the course of partnership business. Securities Act of 1933, SS 12(1), 17(a), 15 U.S.C.A. SS 77l(1), 77q(a); Securities Exchange Act of 1934, S 10(b), 15 U.S.C.A. S 78j(b). | Will fraud committed while transacting the partnership business by one partner make the other partners liable? | 022094.docx | LEGALEASE-00131497; LEGALEASE-00131498 | Condensed, SA, Sub-3.49 | | | | 1 | | 1 |

3051

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 21,876 | Multiple Differences 9,073 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17315 | Benson v. Cherokee Beach & Campgrounds, 258 So. 2d 991 | 302v228.22 | La.Code Civ.P. art. 893 requires that a petition asserting a judicial demand include a statement of the object of the demand and the material facts upon which the cause of action is based. The petition at issue fails to specify any facts which support its allegations of negligence. It does not even specify how plaintiff was injured. Mere allegations of negligence are not allegations of fact which must be accepted as true, but are conclusions of law. See Papania v. Aetna Casualty & Surety Company, 291 So.2d 908 (La.App. 3d Cir.1974), writ denied, 294 So.2d 835 (La.1974); Blanchard v. Employers Liability Assurance Corp., 197 So.2d 386 (La.App. 3d Cir. 1967); Naquin v. Baton Rouge Coca-Cola Bottling Co., 182 So.2d 691 (La.App. 1st Cir.1965), writ ref'd, 184 So.2d 244 (La.1966). Such allegations cannot form the basis of a cause of action, which under our system of fact pleading must be based on facts from which such conclusions may be drawn. La.Code Civ.P. art. 891; Johnson v. Edmonston, 383 So.2d 1277 (La.App. 1st Cir.1980); Williams v. Chrysler Motors Corp., 271 So.2d 551 (La.App. 4th Cir. 1972). | Mere allegations of negligence are not allegations of fact which must be accepted as true for the adjudication of the propriety of objection of no cause of action, but are conclusions of law. LSA-C.C.P. arts. 891, 931. | Are mere allegations of negligence allegations of fact? | Pleading - Memo 289 - BMM.docx | ROSS-000300073-ROSS-000300074 | Condensed, SA, Sub 0.82 | 0.82 | 0 | 1 | 1 | 1 |  |
| 17316 | Fontenberry v. Wolter, 58 Cal. App. 3d 113 | 307A+749.1 | The trial judge does have great discretion in allowing an amendment to any pleading. (Code Civ.Proc., §§ 473, 576; 2 Witkin, Cal.Proc. (1954), Pleading, § 594, pp. 1607-1607.) Normally the pretrial conference order will control, as against inconsistent pleadings (Cal.R. of Court, Rule 216.) In the interests of justice, however, there may be amendment to the order (Cal. Rules of Court, rule 216). See Silva-Vela v. Montgomery Ward & Co., 233 Cal.App.2d 771, 34 Cal.Rptr. 136.) Judgments will be permitted to stand if supported by amended pleadings, though unsupported by the pretrial conference order. (See Trujo v. Bartlow, 209 Cal.App.2d 335, 335, 25 Cal.Rptr. 896.) The trial judge did not abuse his discretion in allowing the amendment to the answer. | Normally, pretrial conference order will control as against inconsistent pleadings. Cal.Rules of Court, rule 216. | Will a pretrial conference order control or against inconsistent pleadings? | Pretrial Procedure - Memo 4 2015 - C - MS.docx | ROSS-000288354-ROSS-000288355 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 |  |
| 17317 | Cottrell v. Warren, 18 Fla. 487 | 307A+331 | The Act of 1798 was intended to supply the want of a bill of discovery, so far as relates to the production of papers that are pertinent to the issue to be tried, and it ought to be enforced freely and decidedly in its true spirit, in those cases respectively which do not possess the remedy by bill of discovery. But the latter is, in some respects, a much better remedy, for, by means of it, an opponent may be called upon, not only to produce all books and papers, but to admit all facts material to the issue, unless they relate exclusively to the respondent's own side of the case; or tend to expose him to some penalty. In such case the remedy of a full discovery of the evidence is sufficient to justify the denial of a bill of discovery. It is also clear that the remedy by bill of discovery is rarely resorted to where the party possesses the means of supplying the want of it by... | The Act of February 27, 1798, 9 Stat. 301, 28 F.S. § 61, was intended to supply the want of a bill of discovery | What act is intended to supply the want of a bill of discovery? | Pretrial Procedure - Memo 4 2890 - C - PC.docx | ROSS-003327114-ROSS-003327115 | Condensed, SA, Sub 0.87 | 0.87 | 0 | 1 | 1 | 1 |  |
| 17318 | Lee v. Rwing, 193 Cal. App. 4th 1275 | 307A+517.1 | We are not active in our view that Herbert Hawkins was correctly aligned. (Kelley, supra, 45 Cal.App.4th at pp. 1825-1826, 53 Cal.Rptr. 2d 536.) Kelley involved the plaintiffs' dismissal of their complaint with prejudice after seeking device trial... (Id. at p. 1822, 53 Cal.Rptr. 2d 536.) The trial court granted the defendant's motion to confirm the arbitration award, which had awarded attorney fees to the defendant. (Id. at pp. 1827-1822, 53 Cal.Rptr. 2d 536.) On review, a majority of the Kelley court commented: 'Although this case involves a dismissal with prejudice while Herbert Hawkins involves a dismissal without prejudice, we find no significant reason to treat the two types of dismissal differently under the facts of this case.' (Id. at p. 1826, 53 Cal.Rptr. 2d 536.) The majority concluded that, for purposes of section 581, 'an arbitration is viewed as a trial on the merits.' (Kelley, supra, 45 Cal.App.2d 536.) | An arbitration is viewed as a trial on the merits, for purposes of a voluntary dismissal. West's Ann.Cal.C.C.P. § 581(b)(1),(c). | 'Is an arbitration viewed as a trial on the merits, for purposes of a voluntary dismissal?' | 028055.docx | LEGALEASE-00133395-LEGALEASE-00133396 | Condensed, SA, Sub 0.88 | 0.88 | 0 | 1 | 1 | 1 |  |
| 17319 | Hopkins v. Elba Group Corp., 111 N.C. App. 179 | 307A+517.1 | Plaintiffs filed their initial action against Lebanon Chemical Corporation and the checking... Subsequently, plaintiffs still filed two notices of voluntary dismissal pursuant to Rule 41(a)(1)(i), the first as to defendant Lebanon Chemical and the second as to Cba-Geigy. At that point, plaintiffs had dismissed their entire cause of action only once. Accordingly, the two dismissal rule does not apply in this case because the same notice, plaintiffs dismissed their claim against defendant Cba-Geigy did not constitute an adjudication on the merits pursuant to Rule 41(a)(1) and plaintiffs were not barred from bringing this action. | 'Two-dismissal rule,' which equates second voluntary dismissal with adjudication on the merits, applies only when two notices of voluntary dismissal have been dismissed action based on or including same claim. Rules Civ.Proc., Rule 41(a)(1). | 'When does the 'Two-dismissal rule'' apply?' | 028222.docx | LEGALEASE-00131328-LEGALEASE-00131329 | Condensed, SA, Sub 0.77 | 0.77 | 0 | 1 | 1 | 1 |  |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17320 | Sanford v. Dudley, 196 So. 3d 1150s | 30TH+486 | When, as in this case, Rule 36(b) has been complied with, the trial court has discretion whether to "permit withdrawal or amendment" of the deemed admissions. Harris v. Carey, 98 So. 3d 476 (Miss. App. 2012). Even under a deferential standard of review, however, the trial court judge did not discuss the discretionary nature of his ruling or either his exercise of discretion or his reasoning... the trial court in this case did not discuss the discretionary nature of the two factors in Rule 36 "requires" a district court to allow withdrawal... | For the trial court to exercise its discretion to permit withdrawal of admission, the party seeking to withdraw an admission must first file a motion requesting that relief. Rules Civ.Proc., Rule 36. | Does a trial court have discretion to deny a request for leave to withdraw or amend an admission even when the two preconditions for seeking withdrawal from deemed admissions are established? | 028409.docx | LEGALEASE 00132550-LEGALEASE 00132551 | SA, Sub | 0.84 | | | | 1 | |
| 17321 | Thor Industries v. Indiana Dept. of State Revenue, 60 N.E.3d 368 | 30TH+486 | Trial Rule 36(B) provides a defense against the withdrawal of deemed admissions, so long as... "[P]rejudice does not mean that the party who has obtained the admission will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of its case." ... | "Prejudice," within meaning of rule permitting deleting against withdrawal of deemed admissions on a showing of prejudice to the opponent of the withdrawal, does not mean that the party who has obtained the admission will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of its case. Trial Procedure Rule 36(B). | What does "prejudice" mean under the law? | 047342.docx | ROS50201S1623 ROS5-00318624 | Condensed, SA, Sub | 0.57 | 0 | 1 | | | |
| 17322 | City of Houston v. Church, 554 S.W.2d 242 | 20+29 | It was to make certain and uniform the law on this point that section 22 was embodied in the Negotiable Instruments Act, providing that the holder ... | Entry and possession without claim of right is nothing more than a trespass and cannot in one sense be actual knowledge of the facts to possess. ... | Can the entry and possession of land without a claim of right be held as a trespass? | 047342.docx | LEGALEASE 00318438-LEGALEASE 00318439 | Condensed, SA | 0.34 | | | | 1 | |
| 17323 | Murray v. Thompson, 136 So 1214-1076 | | It was to make certain and uniform the law on this point that section 22 was embodied in the Negotiable Instruments Act, providing that indorsement of the instrument by a third person... | Negotiable Instrument Law, § 72, providing that indorsement of the instrument by a third person, not otherwise a party thereto, merely makes the indorser surety for the holder, does not apply to drafts. | Is the indorsement by an infant on an instrument void? | 010399.docx | LEGALEASE 00318576-LEGALEASE 00318579 | Condensed, SA | 0.55 | 0 | | | 1 | |
| 17324 | In re Bartl's Estate, 109 N.Y.S.2d 654 | 8.30S+76 | A check is a mere order upon a bank to pay from the drawer's account, and, until presented and paid, is revocable by the drawer. ... | A check is a mere order upon a bank to pay from the drawer's account, and, until presented and paid, is revocable by the drawer. | When can a drawer revoke a check? | 010211.docx | LEGALEASE 00318584-LEGALEASE 00318585 | Condensed, SA | 0.86 | | 1 | | | |
| 17325 | Bay v. Shrader, 50 Miss. 326 | 8.30S+86 | In the early case of Brooke v. Smith, Mayor, 679, which was debt upon an obligation to pay harmless certain lands from all incumbrances made by the obligor, upon the face of the instrument... | The test of the materiality of any indorsement or memorandum on the back or foot of a note is the time and the intent of it. If made before or at the time of the execution of the note the real question is... | "Do memoranda or indorsement at the footer on the back of the note or an instrument, when executed, constitute a part of the contract?" | 010320.docx | LEGALEASE 00318370-LEGALEASE 00318371 | Condensed, SA | 0.59 | | | | 1 | |
| 17326 | Freeman v. Leader Nat. Ins. Co., 58 S.W.3d 590 | 30TH+117.1 | A plaintiff's voluntary dismissal pursuant to Rule 67.02(a) is effective as of the date it is filed. ... | A plaintiff's voluntary dismissal pursuant to Rule 67.02(a) is effective as of the date it is filed. V.A.M.R. 67.02(a). | Is a plaintiff's voluntary dismissal effective as of the date it is filed? | 028267.docx | LEGALEASE 00315628-LEGALEASE 00315629 | Condensed, SA | 0.83 | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,973 | 23,876 | 9,029 |
| 17327 | Firestone v. Leader Nat. Ins. Co., 56 S.W.3d 590 | 307k157.1 | A plaintiff's voluntary dismissal pursuant to Rule 67.02(a) is effective as of the date it is filed. Thornton v. Deaconess Medical Ctr.- West Campus, 929 S.W.2d 872, 873 (Mo.App. E.D.1996). And after a case is dismissed, the trial court may take no further action and any attempted dismissal thereafter "is a nullity." Curators of the University of Missouri v. St. Charles County, 985 S.W.2d 810, 814 (Mo.App. E.D.1998). In other words, the trial court loses jurisdiction as of the date of dismissal. Liberman v. Liberman, 844 S.W.2d 79, 80 (Mo.App. E.D.1992). | The trial court loses jurisdiction as of the date of dismissal of case. | Does the trial court lose jurisdiction as of the date of dismissal of a case? | Pretrial Procedure - Memo #2621 - C - KE.docx | ROSS-003304089-ROSS-003304090 | Condensed, SA, Sub | 0.87 | 0 | 1 | | 1 | |
| 17328 | United States v. Articles of Drug, 32 Drums Maple Syrup, 1107 2d 914 (2d Cir.1964); Drug, 32 Cartons, Zenith Hydrazine HCL Hydrochlorothiazide & Reserpine Tablets, 568 F. Supp. 29 | 198H+451 | In United States v. 32 Drums Maple Syrup, 1107 2d 914 (2d Cir.1964), the trial court considered whether to introduce evidence in support of its argument that the statute did not apply to seizures of maple syrup allegedly to contain a poisonous substance, lead, because the claimant would have removed the offending lead before the sale after shipment in interstate commerce. As to the syrup. The Second Circuit reversed, stating that this "was a wholly false issue, the effect of which was to direct the jury's attention to the question of fact has been shipped in interstate commerce is immaterial on the question of the government's right to forfeit because 'an adulterated' Act at 915.The statute provides that an adulterated drug "shall be liable to be proceeded against while in interstate commerce, or at any time thereafter ...' when the drug has traveled up the stream of interstate commerce, back to the manufacturer. This construction of the statute is plainly incorrect. "In plain, direct and unambiguous language, 21 U.S.C.A. Section 334(a)(1) provides that any adulterated article of | Where articles of drug, seized were not being held for personal consumption by manufacturer, but were being "held for sale," both at time of seizure and at time of filing of complaint, within meaning of statute providing for condemnation of any drug that is adulterated or misbranded when held for sale after shipment in interstate commerce, even though manufacturer voluntarily withheld them from sale pending outside laboratory testing results and notwithstanding fact that manufacturer may have intended in future to cure any adulteration of drugs. Federal Food, Drug, and Cosmetic Act, § 304(a)(1), 21 U.S.C.A. § 334(a)(1). | Do the government have a right to forfeit adulterated food or drug after it has been shipped in interstate commerce? | Adulteration -Memo 11 - 1ULGALE642 -00025517 -LEGALEAS -00025518 - VP.docx | LEGALEA642-00025517-LEGALEA642-00025518 | Condensed, SA, Sub | 0.44 | 0 | 1 | | 1 | |
| 17329 | In re Kang (In re Hwang), 396 B.R. 757 | 83H+481 | A fundamental feature of negotiable instruments is that they are transferred by the delivery of possession, not by contract or assignment. Thus, the right to enforce the instrument of possession, not by contract or assignment. West's Ann.Cal.Com. Code §§ 3201, 3203. | Under California law, fundamental feature of negotiable instruments is that they are transferred by delivery of possession, not by contract or assignment. West's Ann.Cal.Com. Code §§ 3201, 3203. | What is the fundamental feature of a negotiable instrument? | 010919.docx | LEGALEA6-00133776-LEGALEA6-00133777 | SA, Sub | 0.54 | 0 | 1 | | 1 | |
| 17330 | People v. Fahy, 290 Ill. App. 3d 709 | 352H+151 | The type of sexual penetration is not an element of the offense, and its inclusion in the indictment is merely surplusage. (People v. Taranto (1956) 2 Ill.2d 476, 119 N.E.2d 242; People v. Turner (1989) 128 Ill.App.3d 159, 96 Ill.Dec. 497, 491 N.E.2d 276; People v. Young (1975), 31 Ill.App.3d 30, 333 N.E.2d 879.) If the statutory language used describes a specific act with which the defendant is charged, then a type of sexual penetration need not be pleaded, and failure to so allege the type of sexual penetration occurring would not defeat a reasonable doubt. Turner, 142 Ill.App.3d at 169, 96 Ill.Dec. at 499, 491 N.E.2d at 778. | Type of sexual penetration is not element of offense of criminal sexual assault or aggravated criminal sexual abuse, and its inclusion in indictment is merely surplusage. S.H.A. ch. 38, ¶¶ 12-13(a)(1), 16, 12-16(d) | Is the type of sexual penetration an element in sexual offenses? | 043009.docx | LEGALEA6-00133838-LEGALEA6-00133839 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | |
| 17331 | In re W. Iowa Farms Co., 339 F.3d 1257 | 83H+417 | Tim Sanchiz did exactly what the endorsement told to do. It deposited the checks into his numbered accounts and collected under stood the words: "for deposit only." An endorsement "for deposit only" is a restrictive endorsement, and specifies that the proceeds are to be handled in accordance with the instruction that comes with the endorsement. That was done here. The endorsement was not for the purpose or misguided or in a manner different than in delivery. Indeed, in this particular case, the endorsements by the payees two should cash the proceeds only after they had received the payment pay was in blank. The endorsement consisted simply of the name of the payee. That sort of endorsement turns the check into a bearer paper. Anyone who comes into possession of such asset ownership, and persons dealing with the instrument in good faith and without reasonable suspicion can deal with that person as the true owner. | Endorsement consisting simply of name of payee turns check into bearer paper; anyone who comes into possession of such asset ownership, and persons dealing with instrument in good faith and without reasonable suspicion can deal with that person as true owner. | How is a check turned to bearer paper? | 010919.docx | LEGALEA6-00133980-LEGALEA6-00133981 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | |
| 17332 | United States v. Terry, 707 F.3d 607 | 63+1(1) | That a bribe doubles as a campaign contribution does not by itself insulate it from scrutiny. No doubt, a contribution is meant likely to buy a duty-free gift than is before business a contribution has a legitimate alternative explanation. The donor supports the candidate's election for all manner of possible reasons. See Citizens United v. Federal Election Commission, 558 U.S. 310, 359, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). But the prosecution may show that a donor-legislator exchange to is in fact quid pro quo: a bribe-for-vote legitimate contribution to a bribe. Take Evans. In that case, the Court permitted a jury to convict a state legislator who attempted to claim the payment he received was a campaign contribution. See 504 U.S. at 257*516, 112 S.Ct. 1881. Take as well the Fifth Circuit's decision in Whitfield. Two legislators argued that the cash payments they received were made in the context of their electoral campaigns and thus required special protection, but the court upheld a finding that the payments were bribes. 590 F.3d 325 at 352-54. If an official receives money "through promises to improperly employ his public influence," he has accepted a bribe. Abbey, 560 F.3d at 524. A donor who gives money in the hope of unspecified future assistance does not agree to exchange payments for actions. Instead, the donor has thrown a contribution through the door. On the other hand, if a donor-(like Ross) makes a contribution so that an elected official will "do what is asked from him," 17 F.3d at 796, the official has done favor through the payment with the same understanding, the donor and the official have created a corrupt bargain. That agreement marks the difference between a run-of-the-mine contribution and a bribe. | If a public official receives money through promises to improperly employ his public influence, he has accepted a bribe. 18 U.S.C.A. § 201(b)(2). | Under what condition would receipt of money by an official be considered a bribe? | Bribery - Memo #172 - C - ROSS-003289154-ROSS-003289155 - JK.docx | ROSS-003289154-ROSS-003289155 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17733 | United States v. O'Brien, 391 F. Supp. 3d 167 | 63+1(1) | One of the elements that the government must prove under "Add-to-list" definitions (and there are plenty) that "anything of value" may generally influence or reward" that person. See generally United States v. Fernandez, 722 F.2d 1, 27, 91 [11] (1st Cir 2013). The phrase "anything of value" is construed broadly, and includes intangibles intangible rights and benefits. See United States v. Robinson, 663 F.3d 265, 270 (7th Cir 2011); United States v. Townsend, 630 F.3d 1003, 1011 (11th Cir 2011). | Phrase "anything of value" construed broadly, and includes intangibles intangible rights and benefits. | "How is "anything of value" construed in a bribery prosecution?" | 01283.docx | LEGALEASE 00184079-LEGALEASE 00184080 | Condensed_SA_Sub 0.73 | | 0 | 1 | 1 | 1 | |
| 17734 | Miller v. City of Wauwatosa, 87 Wis. 2d 676 | 200+41 | It is undisputed that the owner of land abutting a public highway holds title to the center of the highway subject to the public easement. Walker v. Green Lake County, 269 Wis. 103, 111, 69 N.W.2d 252 (1955); Spence v. Yoritz, 195 Wis. 69, 70, 217 N.W. 700 (1928); Hustisford v. Knuth, 190 Wis. 495, 496, 209 N.W. 687 (1926); Mueller v. Schier, 189 Wis. 70, 81, 205 N.W. 912 (1926); Gardiner v. Tisdale, 2 Wis. 111 (1853). When the highway is discontinued or vacated the land reverts to the owner unencumbered by the easement. Id. This ownership interest exists independently of sec. 66.296, Stats. As the cases above cited indicate, this right existed at common law. The right has been codified in sec. 80.32(1)-"80.32 Discontinuance of Highways; reversion of title..." ... "(3) When any highway shall be discontinued the same shall belong to the owner or owners of the adjoining lands; if it lay in the center between the lands of different owners it shall be annexed to the lots to which it originally belonged if that can be ascertained; if not, it shall be equally divided between the owners of the lands on each side thereof." | Owner of land abutting a public highway holds title to center of highway subject to public easement and when highway is discontinued or vacated land reverts to owner unencumbered by easement. W.S.A. 80.32(1). | "Does the abutting landowner own the center of the highway?" | 01856.docx | LEGALEASE 00184511-LEGALEASE 00184512 | Condensed_SA_Sub 0.82 | | 0 | 1 | 1 | 1 | |
| 17735 | Gowen v. Lamb, 282 S.W.2d 857 | 302+811(7) | Plaintiff has alleged in her petition that her damages were the result of negligence on the defendant in this charging such a automobile as ultimate fact, which may be pleaded as such. Maxbach v. Kassbaum, 36 Mo.App. 538, 565. Here the plaintiff pleaded the negligence act as a substantive charging of alleging a certain act. Schneider & Tremayne, 223 Mo.App. 567, 22 S.W.2d 872, loc. cit. 874. Yes, therefore, feel compelled to regard the petition as charging common-law negligence, as well as statutory negligence, notwithstanding sufficiency of the appeal disposition of facts to support the judgment for defendant ... is also preserved for appellate review under Supreme Court Rule 3.23, 42 V.A.M.S., and was argued by both appellant and respondent. | In petition for damage allegedly done to plaintiff's parked automobile as result of being struck by defendant's vehicle, driven at time by thief, allegation that plaintiff's damage had been result of negligence by defendant was not a conclusion, but an ultimate fact, which could be pleaded as such, and therefore petition could be regarded as charging common-law negligence as well as statutory negligence, notwithstanding fact that main reliance was upon substantive pendency to support judgment (where unattended a vehicle with ignition unlocked). Section 304.150 RSMo 1949, V.A.M.S. | Can negligence be pleaded as such? | Pleading - Memo 294 BMW.docx | ROSS-003290562-ROSS-003290563 | Condensed_SA_Sub 0.24 | | 0 | 1 | 1 | | 1 |
| 17736 | Horan v. Wagner, 475 S.W.2d 215 | 302+1 | Mrs. Shilg's brother, Alfred R. Horan, was a witness for plaintiffs; he was also a plaintiff; he testified to a few former matters, including this relationship. It appears that he had probably seen the testator's only twenty months before his death, and he made no attempt to ... facts relating her condition or circumstances. On cross-examination, counsel sought to impeach testifying portions of the petition alleging mental incapacity; the discontent was under the instruction and control of Mr. Wagner, and that the will was not properly executed; as to each part, he stated his witness... and there, he had no personal knowledge of any facts supporting those allegations. The expected and actual result was to force the witness to repudiate the statement made elsewhere, but it is conceivable that somewhat more briefly in this cross-examination of Mary Elizabeth Finley, a niece, also a plaintiff; she had no basis or heard from decedent since 1961. This cross-examination, though too ... The plaintiff is a fairly thin ice or per [are] there the Court and the parties, not the jury; they define and limit the issue. | Pleadings in the case are for the court and the parties, not the jury; they define and limit the issue. | Do the pleadings limit and define the issues of the case? | 02379.docx | LEGALEASE 00184481-LEGALEASE 00184482 | Condensed_SA_Sub 0.96 | | 0 | 1 | 1 | | 1 |
| 17737 | In re Cole, 426 B.R. 747 | 307A+517.1 | Even assuming that Golden did not act as impediment to the Plaintiff's position regarding collateral estoppel, the voluntary dismissal of this prior suit would not operate to bar a subsequent dismissal action. The action is treated as if it had never been commenced. See Ohio Civ.R. 41. Hence, it is recognized that a voluntary dismissal is without prejudice and generally does not implicate the doctrine of collateral estoppel. Wilson v. Marino, 164 Ohio App.3d 442, 844 N.E.2d 699 (2005); Loreto v. Kempf Co., 150 Ohio App.3d 656, 659 n. 3, 782 N.E.2d 1171 (Ohio App.2002). See also Bordeleau v. Nickels, 340 Ohio 54, 656, 656 N.E.2d 608 (1941) ("It is a well-settled rule that a judgment on the merits of an action that settled or resolved issues involving the merits is distinguished from a dismissal upon the merits, is not a bar to a subsequent action on such, and is not considered prima judice."). The Court can see no reason why this case should be treated any differently. | Under Ohio law, where litigant agrees to a voluntary dismissal, the action is treated as if it had never been commenced. Ohio Rules Civ.Proc., Rule 41. | Does a voluntary dismissal render the action as if it had never been commenced? | Pretrial Procedure - Memo 4 3940 - C - SK.docx | ROSS-003290331-ROSS-003290332 | Condensed_SA_Sub 0.84 | | 0 | 1 | 1 | | 1 |

Appendix D
3055

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17338 | Oliphant Fin., v. Galvez., 299 S.W.3d 829 | 307A4483 | Event if Oliphant's contentions were substantiated, we agree with Oliphant that it was entitled to default judgment because Galvez's breach of contract claim. A trial court may be able to ascertain the amount of damages and attorney's fees in a default judgment based on a request for admissions. See Ins. Acquis. Corp. v. Garcia, 229 S.W.3d 802, 813 (Tex.App.-Waco 2007, no pet.). A plaintiff may serve a request for admissions as part of its petition, and when the defendant fails to file an answer, or other responsive pleading, those matters are deemed admitted. Id. at 817.12 (citing Tex.R. Civ. P. 198.3(3)). Deemed admissions may be employed as evidence, and once admitted are treated as admitted for the operation of the case and where the admissions fully support each element of a cause of action, including damages, they will fully support a judgment based thereon. This court reviews unresolved requests for admissions are deemed admitted without the necessity of a court order and any matter thus admitted is conclusively established as to the party making it 817.3 (citing Tex. R.. Civ. P. 198.2(c), 198.3). Thus, the facts admitted may not be controverted by evidence. See id. at 813 (citing Marshall v. Vise, 767 S.W.2d 699, 700 (Tex.1989)). As to damages, through deemed admissions, Galvez admitted he "presently owes" Oliphant $16,024.63 on "the account ... evidenced on Plaintiff's Original Petition" and "[t]he contractual interest rate is agreed to by Defendant on the account made a basis of Plaintiff's Original Petition is 6%." See id. at 817.13. See also Rewards v. Unifund CDS, No.14-70-01127CV, 2007 WL 1395101, at (Tex.App.-Houston [14th Dist.] Mar. 27, 2007, no pet.) (mem. op.) (debt collector stated on deemed admissions to support its motion for summary judgment on breach of contract claim). | Facts that have been deemed admitted may not be controverted by evidence at the trial. | May facts that have been deemed admitted not be contradicted by evidence in the trial? | 029925.docx | LEGALEASE 00136379- LEGALEASE 00136381 | Condensed, SA, SAD 0.92 | | 0 | | 1 | 1 | |
| 17339 | Gustafson v. Riggs, 10 Ariz. App. 74 | 371x2901 | On many occasions, the legislative intent is reasonably clear at first reading, and our decision in this to be the case here. Taxes fall naturally into three classifications: (1) capitation or poll taxes, (2) taxes on property and (3) excise, 51 Am.Jur. Taxation s 26. We believe the legislature had it something reservation in mind when the use of "property or operating unclear" is a plant and equipment or or other real or personal property in the state equivalent to such guard "fixed not merely eliminating fixed taxes. | Taxes fall naturally into three classifications: (1) capitation or poll taxes, (2) taxes on property, (3) excises. | How many classifications do taxes naturally fall into? | 043073.docx | LEGALEASE 00134150- LEGALEASE 00134151 | Condensed, SA | 0.78 | | 0 | | 1 | | |
| 17340 | Elson v. Anheuser-Busch Beverage Co., 50 Cal. App.4th 1301 | 386x14 | Subsequent cases have joined Cole in opining the line of authority starting with Hicks by holding that the "distinction between direct and indirect measures is not recognized in this point." [Gallo v. Paolos (1956) 141 Cal.App.2d 1, 295 Se.3d 936; accord, Smith v. Lockheed Propulsion Co. (1967) 247 Cal.App.2d 774, 784, 56 Cal.Rptr. 128.) In 1962, the Supreme Court interpreted that "[t]he rule evolved in California that trespass may be committed by consequential and indirect injury as well as by direct and forcible injury. "[Wilson v. Interlake Steel Co. (1982) 32 Cal.3d 229, 233, 185 Cal.Rptr. 280] | Trespass may be committed by consequential and indirect injury as well as by direct and forcible injury. West's Ann.Cal.C.C.P. § 1162.9. | Can trespass be committed due to a consequential injury? | 047359.docx | LEGALEASE 00134899- LEGALEASE 00134899 | Condensed, SA, Sub 0.78 | | 0 | | 1 | | |
| 17341 | Teachers Wireless v. Blue Ocean's Utility, 616 F. Supp. 2d 1284 | 170Bk1235 | The Court begins by noting that, notwithstanding the parties agreement to arbitrate, it has subject matter jurisdiction over this matter. While valid arbitration clauses are to be enforced under the Federal Arbitration Act, 9 U.S.C. s 3, they do not oust district courts of their jurisdiction. See The Anaconda v. Am. Sugar Refining Co., 322 U.S. 42, 44, 64 S.Ct. 863, 88 L.Ed. 1117 (1944); Frank v.Am. Gen. Fin., Inc., 23 F.Supp.2d 1346, 1350 (S.D.Ala. 1998).The Federal Arbitration Act states, If any suitor proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration 9 U.S.C." 3 [emphasis added.] | While valid arbitration clauses are to be enforced under the Federal Arbitration Act, they do not oust district courts of their jurisdiction 9 U.S.C.A. § 3. | Does section 3 of the Arbitration Act enable the court to stay the trial until arbitration is over? | 007561.docx | LEGALEASE 00135847- LEGALEASE 00135848 | Condensed, SA, Sub 0.86 | | 0 | | 1 | | |
| 17342 | McGuire, Cornwell & Blakey v. Grider, 771 F. Supp. 319 | 25Tx216 | "A motion under Rule 60(b)(1) must, among other things, present matter that is material and such importance that it would likely alter the outcome...." (Internal citations.) v. Leland Stanford, 101 F.2d 611 (9th Cir.1939.) Here, evidence that the DBA is unwilling to arbitrate the parties' dispute does not affect the enforceability of the arbitration | Arbitrator's unwillingness to arbitrate parties' dispute over legal fees did not affect enforceability of arbitration agreement, absent showing that naming of arbitrator was essential to the parties' agreement to arbitrate. Fed.Rules Civ.Proc.Rule 60(b)(1), 28 U.S.C.A., 9 U.S.C.A. S 5. | Does the unwillingness of the arbitrator to arbitrate the parties dispute affect the enforceability of the arbitration agreement? | 007581.docx | LEGALEASE 00135324- LEGALEASE 00135325 | Condensed, SA, Sub 0.25 | | 0 | | 1 | | |
| 17343 | Vaughn v. State, 13 Ariz. App. 35 | 67v2 | Defendant contends this protects him from double punishment because the theft and burglary penalties used cannot be predicated on the same act of force. Court, and numerous cases since, have pointed out that this statute does not set punishment for the act because the acts took place as one occurrence. It only protects against double punishment for the same crime. It is always possible for multiple crimes to occur in one transaction and thus to receive double punishment than actual taking. State v. Hutton, 87 Ariz. 176, 349 P.2d 187 (1960); State v. Payne, 7 Ariz.App. 43, 436 P.2d 137 (1968). | Burglary is distinctly different crime from larceny, requiring no actual taking. A.R.S.S 13-1641. | Is burglary distinctly different from burglary? | 023544.docx | LEGALEASE 00135864- LEGALEASE 00135865 | Condensed, SA, Sub 0.84 | | 0 | | 1 | | |
| 17344 | People v. Seymour, 28 Misc. 2d 624 | 67v911 | Breaking out of a building after having committed larceny therein constitutes third degree burglary, under section 404, Subdivision 2 of the Penal Law. People v. Meyer, 162 N.Y. 357, 56 N. E. 758; People v. Toland, 217 N.Y. 187, 111 N.E. 760, L.R.A. 1916E, 536. | Breaking out of building after having committed larceny therein constitutes third-degree burglary. Penal Law, s 404. | Does breaking out constitute burglary? | Burglary - Memo 122 - 8.docx | ROSS-000131002-ROSS-000131004 | Condensed, SA | 0.53 | | 0 | | 1 | | |

Appendix D

3056

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17345 | Kessinger Hunter Mgmt. Co. v. Davis, 782 S.W.2d 426 | 307A+716 | Before 1947, Missouri courts held that, where counsel is a member of the legislature, the correct filing of a request for continuance with supporting affidavits compelled trial courts to grant the requested continuance.2 State v. Thatch, 355 Mo. 75, 195 S.W.2d 106 (1946); State v. Myers, 352 Mo. 735, 179 S.W.2d 72 (1944); State v. Clark, 214 Mo.App. 536, 262 S.W. 413 (1924). The Missouri Supreme Court changed the trial court's duty in Kyger v. Koerper, 355 Mo. 772, 207 S.W.2d 46 (banc 1947). Kyger, in a concurring opinion supported by a majority of the court, held that a trial court may exercise discretion when an attorney-legislator requests a continuance pursuant to Rule 65.06. Id. 207 S.W.2d at 49. The filing of a Rule 65.06 application for continuance does not divest the trial court of jurisdiction and preclude further proceedings. Todd v. Stokes, 358 Mo. 452, 215 S.W.2d 464, 466 (1948). When an attorney-legislator is attending a session of the general assembly and he has filed a motion for a Rule 65.06 continuance, the trial court may determine whether his presence is necessary to a fair and proper trial. Kyger, 207 S.W.2d at 49; Todd, 215 S.W.2d at 466. If it is, the continuance will be granted. Conclusory statements in an affidavit that an attorney-legislator's presence is necessary for a fair and proper trial, filed to support a Rule 65.06 motion for continuance, are not sufficient; specific facts must be alleged showing need for a continuance. Kyger, 207 S.W.2d at 48. | Trial court may exercise discretion when attorney legislator requests continuance; filing of application for legislative continuance does not divest trial court of jurisdiction and preclude further proceedings. V.A.M.R. 65.06. | Can a trial court exercise discretion when an attorney-legislator requests a continuance? | 029379.docx | LEGALEASE-00135457-LEGALEASE-00135458 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 17346 | Janczyk v. Davis, 125 Mich. App. 683 | 307A+483 | Generally, where a party fails to answer, the requests are taken as admitted. DeGrove v. Sanborn, 70 Mich.App. 568, 246 N.W.2d 157 (1976); Woodrow v. Johns, 61 Mich.App. 255, 232 N.W.2d 688 (1975). Some courts have in fact ruled that, even if a party fails to respond, the request will not be held admitted if the questions were improper. Pickens v. Equitable Life Assurance Society of the United States, 413 F.2d 1390 (CA5, 1969); General Accident Fire & Life Assurance Corp., Ltd. v. Cohen, 203 Va. 810, 127 S.E.2d 399 (1962). However, General Accident was criticized in Comment, Procedure Rule 36-Request for Admissions, 65 W.Va.L.Rev. 243, 244 (1963): "In so ruling, that court apparently ignored the express provisions of the rule which require either a denial or an objection to the request." We believe that the better rule is cited in 8 Wright & Miller Federal Practice & Procedure, " 2259, p. 725:"A party who fails to respond to a request should be held to have admitted it even though the request was objectionable. It is needlessly wasteful of judicial effort to allow a party to obtain a reversal on appeal because of an objection he could have but failed to make when the request was served." | Generally, where party fails to answer, requests are taken as admitted. GCR 1963, 312.1. | "When a party fails to answer, are requests taken admitted?" | Pretrial Procedure - Memo # 3505 - C - ES.docx | ROSS-003304419-ROSS-003304420 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 17347 | Horshaw v. Cook, 16 Ga. 526 | 307A+716 | This Court has decided, and upon sound principles, that the mere absence of Counsel is not a sufficient ground for the continuance of a cause. See Allen vs. the State, (11 Ga. R. 85) and the cases there cited. It has recognized the absence of the leading Counsel from Providential cause, as sufficient to authorize a continuance; but nothing short of this. It does not appear that General Hansell was even the leading Counsel in this cause; and it is to be presumed he was not, or it would have been shown; nor does the cause of his absence appear. | The mere absence of counsel, with the papers of the defendant, is not a sufficient ground for the continuance of a cause. | Does the mere absence of the counsel constitute a sufficient ground for a continuance? | Pretrial Procedure - Memo # 3573 - C - SS.docx | ROSS-003289780-ROSS-003289781 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 17348 | Brigante v. Huang, 20 Cal. App. 4th 1569 | 307A+478 | Plaintiff's counsel sent requests for admissions (RFAs) to defense counsel. The RFAs tracked the complaint, paragraph by paragraph, calling upon defendant to admit or deny the truth of each of its allegations. They also asked her to admit or deny that the plaintiff had suffered at least $500,000 in damages, and that the accident was caused by defendant's violation of two specified provisions of the Vehicle Code. Since responses to RFAs must be verified by the responding party (an attorney's verification will not do when the responding party is a natural person), and since the defendant could not be found, no properly verified response was ever filed. Plaintiff applied to the court for an order that the RFAs be deemed admitted. The motion was granted and, later, plaintiff's motion for summary judgment was granted based on the matters deemed admitted. A $500,000 judgment was entered in favor of plaintiff, against defendant. | Trial court's discretion to grant appropriate relief from requests for admissions which are deemed admitted when defendant cannot be found and no properly verified response is filed is not limited to ordering that entire set of requests for admission be deemed admitted or relieving responding party from answering at all; court is empowered to fashion remedy that will do justice in situation with which it is confronted and may, for example, order that only some matters be deemed admitted or may relieve defense from admitting or denying requests on condition that it demonstrate continuing and vigorous effort to locate defendant. West's Ann.Cal.C.C.P. S 2033. | Can an attorney verify a response to requests for admission (RFA) on behalf of an individual party? | Pretrial Procedure - Memo # 3926 - C - MS.docx | ROSS-003290580-ROSS-003290581 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 17349 | City of Columbus v. Atlanta Cigar Co., 111 Ga. App. 774 | 371+2001 | The mere fact that the tax imposed by Ordinance No. 64-9 is designated as a "license tax" is not controlling, as the basic nature of a tax must be determined by what it does and not by the name given it by the taxing authority. Home Ins. Co. of New York v. City of Augusta, 50 Ga. 530; Publix-Lucas Theaters v. City of Brunswick, 206 Ga. 206, 213, 56 S.E.2d 254. | Basic nature of tax must be determined by what it does and not by name given it by taxing authority. | Is the basic nature of a tax determined by its name or label? | Taxation - Memo # 450 - C - SS.docx | ROSS-003291310-ROSS-003291311 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 17350 | Owens v. Fosdick, 153 Fla. 17 | 371+2001 | The issue being thus clearly defined, it becomes our duty to ascertain for ourselves upon what the tax is laid, keeping in mind that the nature of the tax must be determined by its operation rather than by its terminology. Education Films Corp. v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400, 71 A.L.R. 1226. The tax assessor leans heavily on Wood v. Ford, 148 Fla. 66, 3 So.2d 490, as upholding the validity of the tax on the property right or interest here involved. At first reading the cited case seems to support the contention-in principle, at least. We think, however, that closer perusal will reveal a clear distinction between that case and the one before us now. | The nature of a tax must be determined by its operation rather than by its terminology. | Should the nature of the tax be determined by its operation rather than by its terminology? | 045242.docx | LEGALEASE-00135037-LEGALEASE-00135038 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17351 | Alabama Power Co. v. Fed. Power Comm'n, 134 F.2d 602 | 371+2001 | Turning to construction costs, those expended by Interstate (except taxes prior to July 1, 1922) were allowed and are not in dispute. Property taxes during construction, and for a year preceding commencement of work, were allowed as part of the cost of the project, pursuant to the system of accounting of the Commission put out in 1922. It is contended that taxes for the time before that, during which Interstate owned and was holding the lands, ought to be added. Taxes are the annual compensation paid to government for annual protection and for the current support of government, and are generally an expense and not an investment. Only from the date that property included in a project is definitely committed to it and cannot be otherwise used, are taxes fairly a cost of the project under construction. They are certainly not a part of the original price paid for the land. No principle of law requires a more generous allowance of taxes than was made. | "Taxes" are annual compensation paid to government for annual protection and for current support of government and are generally an "expense" and not an "investment". | Are taxes an expense? | 045244.docx | LEGALEASE-00135049-LEGALEASE-00135050 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 17352 | Am. Transmission v. Channel 7 of Detroit, 239 Mich. App. 695 | 386+1 | A trespass is an unauthorized invasion upon the private property of another. Cloverleaf Car Co. v. Phillips Petroleum Co., 213 Mich.App. 186, 195, 540 N.W.2d 297 (1995). Thus, consent is an affirmative defense to a claim of trespass.Weisswasser v. Chernick, 68 Mich.App. 342, 345, 242 N.W.2d 576 (1976); see also 1 Restatement Torts, 2d, " 167, p. 309 (consent is an absolute defense to trespass) | A "trespass" is an unauthorized invasion upon the private property of another. | Is trespass an unauthorized invasion of the private property of another? | 047366.docx | LEGALEASE-00135238-LEGALEASE-00135239 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 17353 | Boulware v. Carbajal, 138 Ariz. 118 | 48A+6 | Prior to 1981 A.R.S. " 28"602(2)(a) defined an unmarked crosswalk as:"That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway."Kauffman v. Schroeder, held that A.R.S. " 28"602(2)(a) plainly required that there be an intersection and sidewalks on the opposite sides of the highway and that:"... Since the "T" intersection here did not have a sidewalk on the "opposite side" of the highway, there are no lateral lines to "connect" to each other in order to form an unmarked crosswalk...."] | Amendment changing statute, which had required that there be an intersection and sidewalks on opposite sides of a highway in order for there to be an unmarked crosswalk, to define an unmarked crosswalk as existing at a "T" intersection affected substantive, and not merely procedural, rights, and therefore could not be given retroactive effect. A.R.S. S 28-602, subd. 2(a). | When does an unmarked crosswalk exist? | 018923.docx | LEGALEASE-00136729-LEGALEASE-00136730 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 17354 | Howard v. Howard, 200 N.C. 574 | 106+512 | No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation shall be allowed to operate within the dominion of another nation depends upon the rule of comity; and comity is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation. Hilton v. Guyott, 159 U. S. 113, 163, 16 S. Ct. 139, 40 L. Ed. 95, 108. But the rule of comity is not confined to nations; it applies also to the states, whose "deep and vital interests *** bind them so closely together." Bank of Augusta v. Earle, 13 Pet. 519, 590, 10 L. Ed. 274, 309. It is true that foreign laws will not commonly be enforced if their enforcement would run counter to the settled policy of the forum. So the question arising here is whether the common law as administered in New Jersey in actions of tort between wife and husband contravenes the settled public policy of this state. The only asserted ground of contravention seems to be a difference in the law of the two states. Under our law a wife may maintain a suit against her husband for a tortious act. Crowell v. Crowell, supra; Roberts v. Roberts, supra. But the fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other. "It by no means follows that because the statute of one state differs from the law of another state, that therefore it would be held contrary to the policy of the laws of the latter state. *** To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens." Herrick v. R. Co., 31 Minn. 11, 16 N. W. 413, 414, 47 Am. Rep. 771; Goodrich on Conflict of Laws, 199. In Loucks v. Standard Oil | "Comity" is recognition which one nation allows within its territory to legislative, executive, or judicial acts of another nation. | What is comity or international comity? | 020696.docx | LEGALEASE-00136525-LEGALEASE-00136527 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 17355 | Vicksburg, S. & P. Ry. Co. v. Scott, 47 La. Ann. 706 | 307A+716 | In our opinion, the record shows that the plaintiff is entitled to relief, as it is evident that its counsel was physically unable to attend and conduct the trial of the cause at the time it was set down for trial. What we have premised in our views on the motion to dismiss with regard to the character of the controversy clearly evidences the importance of the controversy, demanding care and skill in its management. And the company was entitled to the best efforts of its counsel in the prosecution of their suit, and his sickness was ample warrant for its continuance for the term. In Patin v. Poydras, 5 Mart. (N. S.) 639, an appeal was presented upon a single bill of exceptions taken by the plaintiff to the refusal of the judge a quo "to continue the case in consequence of the indisposition of his counsel," an affidavit setting forth the facts having been tendered and refused. The court say: "We are of opinion that the court erred in refusing the continuance. It appears that the counsel who had the principal charge of the case, and on whom plaintiff placed his greatest reliance, was unable to attend from illness. This was a good reason for postponing the trial. The contrary doctrine would lead to intolerable hardships." The judgment appealed from was reversed, and the cause remanded. To the same effect are the following decisions, viz.: Barry v. Insurance Co., 12 Mart. (La.) 484; Baillio v. Wilson, 6 Mart. (N. S.) 335; Marrero v. Nunez, 3 La. Ann. 54. On the law and evidence, our conclusion is that the judgment appealed from should be annulled and reversed, and the cause reinstated for trial and remanded. It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the cause be reinstated for trial, and remanded, and that the defendants and appellees be taxed with the cost of appeal. | Physical inability of counsel to be present and manage the trial of a case is a sufficient ground for continuance. | Is the illness of a counsel and the counsels inability to be present and manage the trial of a case a sufficient ground for continuance? | Pretrial Procedure - Memo # 3284 - C - KG.docx | LEGALEASE-00026145-LEGALEASE-00026146 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17356 | Hatfield v. Bowen, 74 Ga 840 | 307A=716 | Where a party making a motion for new trial was allowed order until a day named, and it also being neglected to make out a brief of the evidence and perfect his motion for new trial, and was required that the same should be heard at the next term of the court, and if the court held that the evidence was not properly filed... | Absence of counsel in attendance on other courts is not a favored ground for a postponement | Is absence of counsel in attendance on other courts is a favored ground for a postponement? | 029843.docx | LEGALEASE 00136215-LEGALEASE 00136216 | Condensed, SA | 0.88 | 0 | 1 | 1 | 21,876 | 1 |
| 17357 | City of San Antonio v. Stearns, 1263 SW 666 | 307A=733.1 | The application for continuance was properly overruled, if the reason had not been made on the pavement with the full approval of Weiss, that could not be agreed to state the residence of the witnesses, as required by the statute... | An application for continuance must state, as provided by Rev. St 1895, art. 1278, Vernon's Ann. Civ.St. art. 2168, the residence of the witnesses for whom continuance is sought. | Should an application for continuance state the residence of the witnesses? | 030307.docx | LEGALEASE 00137063-LEGALEASE 00137064 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | | 1 |
| 17358 | Purdy & Fitzpatrick v. State, 71 Cal 2d 566 | 24=116 | Labor Code section 1850 discriminates on the basis of alienage, and such classifications involve a strict standard of review. Moreover, the state may not arbitrarily foreclose to any person the right to pursue an otherwise lawful occupation. When the classification impedes the achievement of economic security, which is essential for the pursuit of life, liberty and happiness, courts sustain such limitations only after careful scrutiny... United States v. Carolene Prod. Co. (1938) 304 U.S. 144, 153 & fn. 4, 58 S.Ct. 778, 784, 82 L.Ed. 1234... | Discrimination on basis of alienage involves strict standard of review. | Does discrimination or classification on the basis of alienage require strict standard of review? | 007001.docx | LEGALEASE 00137326-LEGALEASE 00137327 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | | 1 |
| 17359 | Roadway v. Muoth, 98 Ind. App 324 | B.307=296 | The notes given by Nugget, which were introduced in evidence, and which it is contended by appellants were accepted by the appellee in payment of the account sued upon, were executed and payable in the state of Kentucky, and were commercial paper governed by the law of that state. The Law Merchant is part of common law, and governs bills of exchange... | Law merchant is part of common law and governs bills of exchange, but does not govern a bill or note, which at common law was not negotiable as bills of exchange. | What is the Law Merchant? | Bits and Notes - Memo 206 of.docx | ROSS 003035024 | Condensed, SA | 0.75 | 0 | 1 | 1 | | 1 |
| 17360 | Gilbert v. United States, 165 1 Sct 470 | 83=82.6 | Appellants' claim of facial unconstitutionality with respect to drug trafficking statutes was rejected by this Court in United States v. Tucker, 90 F.3d 1135, 1139-41 (6th Cir.1996). As pointed out in that case, "drug trafficking is an 'economic enterprise' that substantially affects interstate commerce in numerous ways." Id.; at 1140. See also United States v. Barnard, 471 F.3d 1100, 1102 (11th Cir. 1995) (possession and sale of illegal drugs substantially affect interstate commerce)... | Drug trafficking is an economic enterprise that substantially affects interstate commerce in numerous ways. | Does possession of illegal drugs impact interstate commerce? | 017756.docx | LEGALEASE 00137987-LEGALEASE 00137988 | Condensed, SA | 0.77 | 0 | 1 | 1 | | 1 |
| 17361 | United States v. Kearney, 498 1 2 651 | 67=15 | However, because the same points will not be raised again, we point out the erroneous logic in appellant's contentions. Appellant's theory is somewhat novel: he argues basically that because the offense is generally denominated as unlawful entry, D.C.Code * 22-1302, may be a lesser included offense of burglary, all of the elements of the latter offense (which included entry against the will of the occupant) must be proved to sustain a conviction for burglary— a greater offense. We disagree. While unlawful entry may indeed be a lesser included offense of burglary in some factual situations, such as where the accused did "break and enter" and was so charged; it is not necessarily a lesser included offense of every first degree burglary as defined by the District of Columbia statute, d., where the accused enters "without breaking." Whether unlawful entry is a lesser included offense of burglary in any particular crime that is charged, will depend not solely upon a comparison of the statutory requirements for each offense but also upon an analysis of the facts of the offense as charged in each indictment and as proved at trial. In order to determine what constitutes a lesser included offense, the statute defining burglary as entry without breaking will not in itself constitute a criminal offense, so that unlawful entry will be included offense of unlawful entry, is a lesser included offense of burglary or otherwise, the they do so. | Under District of Columbia statute defining burglary as entry without breaking will not in itself constitute a criminal offense, consent to enter is not defense where one enters to break with requisite criminal intent. D.C.C.E. 33 22-1801(a), 23 1102. | Is unlawful entry a lesser included offense of burglary? | Burglary - Memo 106-JS.docx | ROSS 000290173-ROSS 000290272 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17362 | State v. Briggs, 161 Conn. 283 | 67+8 | The term "daytime," as used in s 53-73, must be given its ordinary meaning. Clearly, the phrase is meant to cover the time not covered by burglary. We have defined "nighttime" or "night season", as used in the definition of burglary, as when there is not sufficient daylight left to enable one to discern the features of another by natural sunlight. State v. Bell, 153 Conn. 540, 542, 219 A.2d 218; State v. Morris, 47 Conn. 179, 182. Thus, "daytime" can be defined, for the purposes of s 53-73, which is, in effect, daytime burglary, as that time of day when there is sufficient daylight so as to be able to discern the features of another by natural sunlight. | Word "daytime" as used in statutory crime of breaking and entering a dwelling in the daytime means that time of day when there is sufficient daylight so as to be able to discern the features of another by natural sunlight. C.G.S.A. S 53-73. | What is daytime in burglary? | Burglary - Memo 159 - JS.docx | ROSS-003331022-ROSS-003331024 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 17363 | Stuart v. McVey, 59 Idaho 740 | 48A+246(8) | While it may be observed that the question of driving on the wrong side of the road in an attempt to avoid impending danger may not be presented in the instant case, the rule announced by the foregoing cases is to the effect that driving upon the wrong side of the road is only prima facie negligence and not negligence per se, as instruction No. 20 advised the jury. The prejudicial nature of instruction No. 20 is made further apparent when it is considered in connection with instructions No. 24 and 26, hereinafter referred to, which instructions in effect appear to announce an opposite rule insofar as the deceased was concerned, in effect advising the jury that it was Goible's absolute duty to avoid the accident even though deceased was driving on his left-hand or wrong side of the highway. The instructions considered together in effect advise the jury that it was not negligence for deceased to drive upon the wrong side of the highway, but it was negligence per se for Goible to drive upon the wrong side of the highway, irrespective of the reason therefor. | An instruction to find for plaintiffs in action for death of driver of automobile colliding with defendants' truck, if truck was being driven on left side of highway, was erroneous as in effect instructing jury that driving on left side of highway is negligence per se. | Can driving on the left side of a highway be considered as negligence? | 018858.docx | LEGALEASE-00137755-LEGALEASE-00137756 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 17364 | City of Silverton v. Brown, 63 Or. 418 | 200+14 | While it is a general rule that the width of a highway established entirely by user is limited to the ground actually used, the question is usually for the jury, giving a proper consideration to the circumstances and conditions attending the same. Bayard v. Standard Oil Co., 38 Or. 438, 63 Pac. 614. | The general rule is that the width of a highway established entirely by user is limited to the ground actually used. | What would be construed as the width of highway? | Highways -Memo 80-IS.docx | ROSS-003289356-ROSS-003289357 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 17365 | Darnall v. Hughes, 17 So. 3d 1201 | 200+79.6 | "Our supreme court discussed the methods by which a public road may be abandoned in Walker v. Winston County Comm'n, 474 So.2d 1116 (Ala.1985). One method of abandonment is the commencement of a formal, statutory action. "" 23-4-1 through 23-4-6, Ala.Code 1975. Another is nonuse for a period of 20 years. See Harbison v. Campbell, 178 Ala. 243, 59 So. 207 (1912). A third alternative, if one road replaces another, is that there can be an abandonment of a public road by nonuse for a period short of the time of prescription. Floyd v. Industrial Dev. Bd. of Dothan, 442 So.2d 927 (Ala.1983). ... County maintenance is not essential to the status of a public road. Davis v. Linden, 340 So.2d 775 (Ala.1976). The placement of a fence across a road does not per se constitute an abandonment of the road. Purvis v. Busey, 260 Ala. 373, 71 So.2d 18 (1954). Evidence regarding these factors would certainly be pertinent, however, to the abandonment question." | County maintenance is not essential to the status of a public road, and the placement of a fence across a road does not per se constitute an abandonment of the road; evidence regarding these factors is pertinent, however, to the question of whether a public road has been abandoned. | Does placement of a fence across a road constitute abandonment of the road? | 019233.docx | LEGALEASE-00137931-LEGALEASE-00137932 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 17366 | Burrows v. Cty. Court of Carter Cty., 308 S.W.2d 299 | 200+77(9) | In a prior proceeding to vacate the same segment of road, the County Court of Carter County entered an order of vacation dated February 6, 1956; but, on appeal, the circuit court properly declared that said order was void for failure to comply with the mandatory requirement of Section 228.070 (re-enacted Laws of 1953, p. 667) that the proposed vacation be "examined and approved by the county highway engineer." Morris v. Karr, 342 Mo. 179, 114 S.W.2d 962, 963; Tummons v. Stokes, Mo.App., 274 S.W. 528, 529(2), certiorari quashed State ex rel. Tummons v. Cox, 313 Mo. 672, 680, 282 S.W. 694, 695"696(5). Although the present proceeding to vacate was instituted on June 21, 1956, less than one year after entry of the first order of vacation on February 6, 1956, we here assume (without, however, so determining) that, as petitioners-respondents insist, the second petition to vacate was not within the prohibition of Section 228.130 because the county court had no jurisdiction to enter the first order of vacation and such order "was wholly void." | On appeal from judgment of circuit court affirming order of county court vacating segment of county road, although Court of Appeals cannot substitute its judgment on evidence for that of county court, Court of Appeals is authorized to determine whether county court reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, and to set aside order of county court if it is found to be clearly contrary to overwhelming weight of evidence. Sections 228.120, subd. 2, 228.130, 536.140, subd. 2 RSMo 1949, V.A.M.S.; V.A.M.S.Const. art. 5, S 22. | Does the failure to obtain report from county highway engineer render an order vacating a road void? | 019323.docx | LEGALEASE-00137745-LEGALEASE-00137746 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 17367 | Lambert v. Bunge Corp., 169 So. 2d 207 | 307A+716 | The Court a qua was in error when it ordered relator to trial after being informed that its trial counsel was in the hospital on the day of trial after undergoing going operative procedure. This fact was directed to the attention of the Court by the production of proper medical certificates from Dr. Frederick F. Boyce and Dr. J. O. Weilbaecher, Jr., reputable physicaians, setting forth the condition of relator's counsel, Henry C. Vosbein. The cases are numerous in our jurisprudence that illness of principal counsel in the trial of a case is good and sound grounds for a continuance. See LSA-C.C.P. art. 1601. Smelser v. Williams, 10 Rob. 97 (1845); Succession of Muller 1 La.App. 402 (1925); Vicksburg, S. & P. Ry. Co. v. Scott, 47 La.Ann. 706, 17 So. 249 (1895); Marrero v. Nunez, 3 La.Ann. 54 (1848). | Illness of principal counsel in trial of case is good ground for continuance. LSA-C.C.P. art. 1601. | "Where a defendant swears that his principal counsel is unable to attend, as he is informed and believes, from severe illness, and that he cannot safely go to trial without him, is he entitled to a continuance?" | 030130.docx | LEGALEASE-00137458-LEGALEASE-00137459 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WINS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,073 |
| 17368 | Batiste v. Augusta Hosp., 218 S. Ppp. 3d 66 | 307A-723.1 | We note at the outset that plaintiff placed herself at a distinct disadvantage before the trial court by failing to comply with the requirements of Supreme Court Rule 231 when she initially sought a continuance on November 13, 1973. Counsel did not choose to file the requisite affidavit and written motion, relying instead on his oral representations to the court. Counsel admitted that he "structured his argument incorrectly." "I was not until November 17, 1970 that plaintiff's allegations in support of her motion for continuance were cogently articulated within the context of plaintiff's written motion to vacate the previously entered appointed her. Failure to comply with the relevant statutory provisions is, of itself, grounds for denial of a motion for continuance. Parker v. Newman, supra in the instant case, plaintiff has utterly failed to allege or establish diligence on the of her case. Her untimely petition serves only to catalogue the negligence of her own counsel. Consequently, the trial court properly denied plaintiff's motion for continuance. | Failure to comply with relevant statutory provisions, of itself, grounds for denial of a motion for continuance. Supreme Court Rules, rule 231; S.H.A. ch. 110A, § 231. | "Is a denial of motion for continuance not error, where the motion does not substantially comply with an applicable statute?" | 030821.docx | LEGALEASE 00137420-LEGALEASE 00137421 | Condensed_SA | 0.85 | 0 | | 1 | 1 | |
| 17369 | Georgia Cas. Co. v. Campbell, 266 S.W. 854 | 307A-720 | The filing of the trial amendment did not necessarily entitle plaintiff to a continuance. The evidence introduced in the case does not lead us to a conclusion, or events to an inference, that a continuance would have enabled plaintiff to obtain any evidence to establish the fact that the deceased was a married man. A continuance will not be granted on the mere possibility that the plaintiff might have obtained such evidence; there ought to be at least a probability of his being able to do so. 1 & G. N. Ry. Co. v. Howell, 101 Tex. 605, 111 S. W. 142; Chicago, St. R. R. Co. v. Lee (Civ. Co. App.) 138 S. W. 520; Western Union Telegraph Co. v. Robertson, 63 Tex. Civ. App. 339, 133 S. W. 455. | Filing of a trial amendment does not necessarily entitle plaintiff to a continuance. | Will the filing of a trial amendment entitle a plaintiff to a continuance? | 030821.docx | LEGALEASE 00137075-LEGALEASE 00137076 | Condensed_SA_Sub | 0.89 | | | 1 | 1 | |
| 17370 | Hortic's Mitchell Milk Co. v. A. Spiegel Co., 150 Wis. 201 | 307A-641 | The statute also provides: "The attendance of the party to be examined, and the production of all papers, books, files, records, filings, and documents in the possession of such party, his or its assignors, officers, agents, or employ-y, relating to the controversy, may be compelled upon subpoena and the payment or tender of the fees as a witness." Section 4097, Stat., provides for punishment for the contempt in case of neglect or refusal to testify or fails on examination of the parties books, files, records, things, or matters in his possession relevant to the controversy. The theory of the statute is to afford full discovery of all matters relevant to the controversy. Schmidt v. Menasha W. W. Co., 92 Wis. 529, 66 N. W. 695; Hughes v. Chicago, St. P., M. & O. R. Co., 122 Wis. 299, 99 N. W. 897. | It is the purpose of 91.91(1), § 4096, subdv. 3, S.W.S.A. 326.10, 326.121, to afford full discovery of all matters relevant to the controversy. | Is it the purpose of statutes to afford a full discovery of all matter relevant to the controversy? | Pretrial Procedure - Memo #4739 - C - AP.docx | ROSS-003318103-ROSS-003318104 | Condensed_SA | 0.82 | 0 | | 1 | 1 | |
| 17371 | Brinker v. Brinker, 7 Pa. S3 104-198 | 104-198 | The orphans' court, not being one of general equity jurisdiction, cannot entertain a bill of discovery in the course of the argument; the petitions cited before us has been treated as a bill of discovery, but as the Common Pleas has equity jurisdiction such a bill, it manifestly a petition in the Orphans' Court, set for an answer, as for an answer or oath. In this, the the general features of a bill, and the object for putting into that shape was probably to compel the respondent to answer on oath touching the suppression of their father's will. But although the Orphans' Court has been under the powers of a court of equity, in respect to the subjects within its jurisdiction, the auxiliary powers of such a court have not been given to it. It is a special tribunal for specific cases, and its remembrance to a court of equity consists only in the mode of proceeding by petition and answer containing the substance, but not the technical subtleties and nice distinctions of such a process by which, however, justice is obtained more conveniently and as certainly as in courts of equity, purely so called. As the Orphans' Court, therefore, has not the auxiliary powers of a court of equity, it cannot entertain a bill of discovery, but it can issue an answer to a petition. | The orphans' court, not being one of general equity jurisdiction, cannot entertain a bill of discovery. | Is a bill of discovery subject to equity jurisdiction only and correct coming up for a correction of error at law? | 031486.docx | LEGALEASE 00137118-LEGALEASE 00137119 | Condensed_SA | 0.92 | | | 1 | 1 | |
| 17372 | Roberts v. Schaffner & Steinmeyer, 81 S.W. 2d 291 | 307A-725 | After much reflection we have reached the conclusion that the record discloses the fact that the appellant was guilty of no actual negligence. Still, if the order of continuance in the first instance was obtained on a misrepresentation of facts, we verily or fraudulently made, and both parties relied on the same as the judicial action of the court on entering judgment. It required a judicial to set aside a judgment of continuance once entered upon the docket during the term upon which judgment, was taken, and should the set aside only upon a proper motion of which the opposite party should be advised; at least if such on appear was not obtainable and judgment followed immediately by default, when it was known that the opposite party was before the court, relying upon that order and able to sleep upon their rights, it cannot stand. The sworn petition and answer sufficiently excuses appellant from negligence in connection with setting aside the order of continuance, or the entry of default on record in its and application was in to default as to permit a default against him on this motion, for he was in court with a motion to set aside the judgment, with a sworn answer showing actual defense, and a meritorious defense, as of his application attempting to comply with the statute which requires him to show a meritorious defense. Surely he was not in default upon this hearing. | Continuance because of incomplete service on defendant entered on docket could be set aside only on motion and notice, and default judgment without notice could not stand. | Should a continuance be set aside only on a proper motion of which the opposite party should be advised? | 031592.docx | LEGALEASE 00138045-LEGALEASE 00138046 | Condensed_SA_Sub | 0.87 | | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17373 | Donaldson v. Erskine, 76 Mont. 537 | 8.30T+266 | | Renewal note is treated as new transaction on new promise, if parties' intention was to extinguish original note. | When does the renewal of the note extinguish the original debt? | Bills and Notes - Memo 221 - 6.docx | ROSS-032980000 ROSS-032920001 | Condensed, SA, Sub 0.89 | | 0 | | | 1 | 1 |
| 17374 | First Nat. Bank v. Rhode Island Ins. Co., 184 Ark. 812 | 8.30T+76 | | Bill of exchange drawn by drawer of himself is in legal effect promissory note, and cannot be countermanded (Crawford & Moses' Dig. 5 7896). | Can a bill of exchange drawn by the maker upon himself is a promissory note? | 010115.docx | LEGALEASE 00158064 LEGALEASE 00158065 | Condensed, SA, Sub 0.88 | | 0 | | | 1 | 1 |
| 17375 | Heller v. Ebersole, 543 F.2d 14 | 8.30T+76 | | Where auction company, in being informed that consignor had not paid for cattle sold at consignment sale, stopped payment on check, which it had issued to consignor and which the latter had endorsed to a holder in due course, the holder had an action under Illinois law against the auction company on the check as if the check were a promissory note, S.H.A.ch. 26, 5 5-413, 4-403. | Does the holder of the stock have an action against drawer similar to that of a promissory note? | 010172.docx | LEGALEASE 00158252 LEGALEASE 00158253 | Condensed, SA, Sub 0.41 | | 0 | | | 1 | 1 |
| 17376 | In re Kang (In Hwang, 393 B.R. 757 | 41E+481 | | Under California law, fundamental feature of negotiable instruments is that they are transferred by delivery of possession, not by contractor assignment. West's Ann.Cal.Com. Code 3 3201, 3203. | What is a fundamental feature of negotiable instruments? | Bills and Notes - Memo 388 VF.docx | ROSS-032382769 ROSS-032382790 | Condensed, SA, Sub 0.51 | | 0 | | | 1 | 1 |
| 17377 | Roberts v. Mississippi State Highway Comm'n, 309 So.2d 156 | 203+182 | | Regulation of vehicle and load weights is long-recognized and long-used method of maintaining and preserving the state highways. | What should be done in preserving or protecting highways? | 010954.docx | LEGALEASE 00158701 LEGALEASE 00158702 | Condensed, SA, Sub 0.87 | | 0 | | | 1 | 1 |
| 17378 | Roper's v. Old Fort Mills, 91 Ohio App. 241 | 302+9 | | That doctrine of res ipsa loquitur being a rule of evidence, it is not necessary to be pleaded. | Should the doctrine of res ipsa loquitur be pleaded? | 02607.docx | LEGALEASE 00158750 LEGALEASE 00158751 | SA, Sub 0.66 | | 0 | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17379 | St. Louis, B. & M. Ry. Co. v. Jenkins, 163 S.W. 621 | 307A+74 | The eighth, ninth, tenth, and twentieth assignments complain of the action of the trial court in refusing to suppress various depositions, "because the notary public before whom this deposition was taken did not make the proper certificate upon the outside of the envelope in which the deposition was returned, as required by law, inasmuch as he fails to certify, under the seal of his office, that he was the officer before whom the depositions were taken, and that he, in person, deposited them in the mail for transmission; said notary public having totally failed and neglected to place the imprint of his seal of office upon the envelope." The qualification of the bills by the trial court shows that the omission of the seal from the outside of the envelope was the sole ground of complaint. We are referred to the case of Hartford Fire Ins. Company v. Becton, 124 S. W. 474, where Chief Justice James considered this question. It was there said that it was unnecessary to decide the question. But that same case went to the Supreme Court on an application for a writ of error, and Justice Williams took up and treated the point at some length. 103 Tex. 237, 125 S. W. 883. The Supreme Court was confronted with the decision in Wisegarver v. Yinger, 122 S. W. 925, wherein Chief Justice Fisher had held that the imprint of the seal on the envelope was essential; and, after a careful analysis of the statutory requirements, it is said by Judge Williams: "We therefore hold that the absence of the seal on the envelope is not a reason for suppressing a deposition where the signature to the certificate is elsewhere on the same deposition authenticated by seal." This may be found where the officer certifies to the deposition proper. These assignments are overruled. | The absence of the seal on the envelope in which depositions were returned is not a ground for suppressing the depositions; the seal being imprinted where the officers certified to the deposition proper. | Is the absence of the seal on the envelope in which depositions were returned not a ground for suppressing the depositions? | 031819.docx | LEGALEASE-00138548-LEGALEASE-00138549 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 17380 | Heyl v. Bradford, 217 Ill. App. 477 | 307A+81 | Section 30, ch. 51 (J. & A. 5547), provides in part as follows: "Provided, that when any deposition shall be taken as aforesaid out of this State, such return shall be accompanied by a certificate of his official character, under the great seal of the State, or under the seal of the proper court of record of the county or city wherein such deposition shall be taken." No such certificate accompanied or was attached to the deposition in question or was produced in court when such deposition was offered to be read in evidence. The deposition was taken by an officer outside of the State of Illinois, and the dedimus on which it was taken did not name any particular person as commissioner. Under that state of facts the want of the proper certificate was fatal to the deposition and can be taken advantage of on the trial by objecting to the reading of it in evidence. Scott v. Bassett, 186 Ill. 98; Bishop v. Hilliard, 227 Ill. 382. It was error to permit the deposition to be read in evidence. The judgment of the circuit court is reversed and the cause is remanded to that court. | Where deposition was taken by officer outside the state and dedimus on which it was taken did not name any particular person as commissioner, want of proper certificate showing official character of person taking deposition, as required by statute, could be taken advantage of on trial by objecting to reading of deposition in evidence. Smith-Hurd Stats. c. 51, S 30. | Shall a deposition taken before a notary out of the state be accompanied by a certificate of the official character of the notary? | Pretrial Procedure - Memo # 4966 - C - DHA.docx | ROSS-003291252-ROSS-003291253 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 17381 | Dunham v. Halloway, 2 Okla. 78 | 307A+74 | The statute requiring the officer to show in his certificate the place where the deposition was taken is mandatory, and the reason therefor is so apparent that it hardly needs discussion. This requirement is obviously for the purpose of giving the adverse party an opportunity to be present, if he wishes, when the deposition is taken, and the certificate of the officer taking such deposition should show that the terms of the notice are complied with. If the adverse party had been present, a showing that the deposition was taken at the place designated in the notice would not, perhaps, be necessary, for his being present would waive any irregularity in either the notice to take deposition or the certificate attached thereto. But, where the adverse party does not appear, he waives nothing required in the statute, and he has the right to presume that the deposition will be taken in strict conformity with the statutes, and, in the absence of a certificate showing such fact, may move to suppress the deposition, and such motion should be sustained. | Where a certificate fails to show that depositions were taken at the place named in the notice, and where it further appears that the adverse party was not present when such depositions were taken, the depositions should be suppressed. | Should depositions be taken at a place designated in notice? | Pretrial Procedure - Memo # 5122 - C - CK.docx | ROSS-003318184-ROSS-003318185 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 17382 | N. Am. Acc. Ins. Co. v. Williamson, 118 Ill. App. 670 | 307A+74 | The objection to the deposition is based upon the certificate of the official character of the notary public before whom it was taken. Such certificate is required by section 30, chap. 51, R. S., when the dedimus postestatem or commission is directed to any judge, master, notary or justice. In the present case it was addressed to a specified individual who happened to be a notary, and no such certificate of official character seems in such case to be required. A certificate under seal of court was, however, subsequently attached to the deposition, which if necessary at all it was competent to have done before the deposition was read in evidence. Scott v. Bassett, 186 Ill. 98-102. This certificate states that the commissioner was "at the time of taking the foregoing acknowledgment a notary public," etc., authorized by the laws of the State of Nebraska to take and certify acknowledgments "or proofs of deeds and other instruments," etc. All that the statute requires is a certificate of the official character of the notary. The certificate in question fulfills the requirement. It is not required by the statute that the certificate shall state the notary was authorized by the laws of the State where he resides to administer an oath. In this case the certificate states that the notary was authorized to take and certify proofs of "other instruments" as well as deeds, but whether this would necessarily imply authority to administer oaths we need not inquire. He was authorized to administer oaths in the special case by his commission from the court here, which authorized him to take the deposition of the witnesses "on the oath or affirmation of the said witness by you first duly in that behalf administered." It is not necessary that the commissioner be a notary public or other officer authorized by the law of the State where he resides to administer oaths. The motion to quash was properly denied. | A certificate of official character of notary public who took deposition could properly be attached thereto before deposition was read in evidence. Smith-Hurd Stats. c. 51, S 30. | "Is the official certificate of the commissioner before whom a deposition was taken, purporting to be under his hand and seal, presumptive evidence of his official character?" | 032387.docx | LEGALEASE-00138888-LEGALEASE-00138889 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17383 | Danese v. Morrison-Knudsen/Slattery, 784 F. Supp. 228 | 413+2084 | Pennsylvania's Workmen's Compensation Act creates a comprehensive system whereby workers may receive compensation for work-related injuries. In exchange for greatly eased burdens of proof and the abolition of various common-law affirmative defenses, the Act provides that the remedies available under the Act shall be the exclusive remedies available to workers who seek to recover from their employers for work-related injuries.See Alston v. St. Paul Ins. Cos., 389 Pa.Super. 396, 567 A.2d 663, 666 (1989). The statute therefore deprives workers of some rights in return for greater certainty in the receipt of benefits. See Kuney v. PMA Ins. Co., 525 Pa. 171, 578 A.2d 1285, 1286 (1990). | Under Pennsylvania law, remedies available under Workmen's Compensation Act are exclusive remedies available to workers who seek to recover from their employers for work-related injuries. 77 P.S. S 481(a). | What are the burdens of proof exchanged for or supplanted by the Workers Compensation Act? | 048610.docx | LEGALEASE-00138254-LEGALEASE-00138255 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 17384 | Amoco Prod. Co. v. S. Ute Indian Tribe, 526 U.S. 865 | 260+2 | It may be true, nonetheless, that the right to mine the coal implies the right to release gas incident to coal mining where it is necessary and reasonable to do so. The right to dissipate the CBM gas where reasonable and necessary to mine the coal does not, however, imply the ownership of the gas in the first instance. Rather, it simply reflects the established common-law right of the owner of one mineral estate to use, and even damage, a neighboring estate as necessary and reasonable to the extraction of his own minerals. See, e.g., Williams v. Gibson, 84 Ala. 228, 4 So. 350 (1888); Rocky Mountain Mineral Law Foundation, 6 American Law of Mining " 200.04 (2d ed.1997). Given that split estates were already common at the time the 1909 and 1910 Acts were passed, see, e.g., Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 25 A. 597 (1893), and that the common law has proved adequate to the task of resolving the resulting conflicts between estates, there is no reason to think that the prospect of a split estate would have deterred Congress from reserving only the coal. | Surface patentees, not Indian tribe holding equitable title to reserved coal in lands patented under Coal Lands Acts of 1909 and 1910, owned coalbed methane (CBM) gas contained in such coal, inasmuch as common conception of coal in 1909 and 1910 did not include CBM gas, and, even if right to mine coal implied right to release gas incident to coal mining, such right did not imply ownership of gas in first instance. 30 U.S.C.A. SS 81, 83-85. | "At common-law, does the right of the owner of one mineral estate include the use, and even damage, of a neighboring estate as necessary and reasonable to the extraction of his own minerals?" | 021153.docx | LEGALEASE-00139341-LEGALEASE-00139343 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 17385 | Duncan Land & Expl. v. Littlepage, 984 S.W.2d 318 | 260+78.1(8) | We first address the Railroad Commission's ability to affect a lease between two private entities. The Railroad Commission's power is not derived from the Texas Constitution. See Railroad Commn. of Texas v. City of Austin, 524 S.W.2d 262, 267 (Tex.1975). It comes from legislative grants of powers and jurisdiction. See id. The Railroad Commission does not have jurisdiction to void contracts. See id. Nor does it have power to determine title to land or property rights:[The Railroad Commission] is invested with broad powers to determine where, or whether, wells may be drilled, and how much oil or gas may be produced. But it does not have authority to determine the ownership of oil or gas, or how the proceeds from the sale of oil or gas should be apportioned among people who contend that it was, or is, actually being produced from beneath their land.Id. at 267"68; see, e.g., Jones v. Killingsworth, 403 S.W.2d 325, 328 (Tex.1966) (holding that "[t]he Railroad Commission has no power to determine property rights"); Nale v. Carroll, 155 Tex. 555, 289 S.W.2d 743, 745 (1956) (finding that "[r]ules and regulations of the Railroad Commission cannot effect a change or transfer of property rights"); Magnolia Petroleum Co. v. Railroad Commn., 141 Tex. 96, 170 S.W.2d 189, 190"91 (1943) (stating that the Railroad Commission "does not undertake to adjudicate questions of title or rights of possession"); see also Gray v. Helmerich & Payne, Inc., 834 S.W.2d 579, 582 (Tex.App."Amarillo 1992, writ denied); Estate of Grimes v. Dorchester Gas Producing Co., 707 S.W.2d 196, 203 (Tex.App."Amarillo 1986, writ refd n.r.e.). Thus, the existence of the Railroad Commission's shut-in order, by itself, did not affect the lease, or the rights of Duncan and Littlepage under the lease. | Two-prong test is applied to determine whether oil or gas well is producing in paying, or commercial, quantities: first, court asks whether production is sufficient to pay lessee profit, even small one, over operating and marketing expenses, although cost of drilling well may never be repaid; second, if first prong is answered in affirmative, court asks whether or not, under all relevant circumstances, reasonably prudent operator would continue to operate well in manner in which it is being operated for purpose of making profit and not merely for speculation. | Does the Railroad Commission have the power to determine where or whether wells may be drilled? | 021654.docx | LEGALEASE-00139371-LEGALEASE-00139372 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 17386 | California Steel Bldgs. v. Transp. Indem. Co., 242 Cal. App. 2d 749 | 307A+749.1 | On this state of the record it is impossible to review the propriety of the pretrial order which failed to include the issue raised by the other insurance. In the absence of a request for modification by the defendant, it was bound by the pretrial order. (Cal.Rules of Court, rule 216; cf. rules 215, subdivision (b) and 218; and see Cal-Neva Lodge, Inc. v. Marx (1960) 178 Cal.App.2d 186, 187, 2 Cal.Rptr. 889 and Baird v. Hodson (1958) 161 Cal.App.2d 687, 690, 327 P.2d 215.) Defendant failed to preserve the issue of other insurance, or even the right to raise it, in the agreed statement of facts. Its agreement to the issues set forth in that statement precludes attack on the failure to set forth other issues, in the pretrial order, even if such attack could be made in the absence of a request for correction or modification under paragraph (b) of rule 215. (See Duffy v. Griffith Co. (1962) 206 Cal.App.2d 780, 787"789, 24 Cal.Rptr. 161.) | In absence of request for modification, party is bound by pretrial order. Cal.Rules of Court, rules 215(b), 216, 218. | "In absence of a request for modification, is a party bound by a pretrial order?" | Pretrial Procedure - Memo # 2473 - C - SJ.docx | ROSS-003289302-ROSS-003289303 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 17387 | Morrison v. White, 16 La. Ann. 100 | 307A+74 | Defendant offered in evidence the depositions of Thomas Decrow and Elijah Decrow, taken under commission; to the admission of which the plaintiff made the following objections, which were sustained by the court:1st. That there is no proof of the official capacity of the person purporting to execute the commission.2d. That there is nothing in the caption or elsewhere showing that the interrogatories and cross-interrogatories had been read to the witness.3d.That there is nothing in the return or certificate showing by whom the answers of the witnesses were reduced to writing. 4th. There is no evidence showing that the witnesses signed the depositions in the presence of the officer who executed it.5th. That there is no proper and legal certificate.6th. That the commission was executed by a person not designated in the commission. | It is not necessary that the return should show by whom the answers of the witnesses were reduced to writing. | Is it not necessary that the return should show by whom the answers of the witnesses were reduced to writing? | 032279.docx | LEGALEASE-00139453-LEGALEASE-00139454 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17288 | Epp v. Fiora, 83 Conn. App. 243 | 302=554 | The defendant in the present case filed a motion to dismiss, which the court granted. The principal issue in this appeal is whether that motion was the proper procedural vehicle by which to challenge the plaintiff's pleadings. We hold that it was not and, accordingly, reverse the judgment. There is a significant difference between asserting that a plaintiff cannot state a cause of action and asserting that a plaintiff has not stated a cause of action, and therein lies the distinction between the motion to dismiss and the motion to strike. The defendant acknowledges that its motion to dismiss was not a proper vehicle... | A motion to dismiss a just individual grounds essentially asserts that, as a matter of law and fact, a plaintiff cannot state a cause of action that is properly before the court, while by contrast, a motion to strike attacks the sufficiency of the pleadings. Practice Book 1998, 10-31(a), 10-39. | Is there a significant difference between asserting that a plaintiff cannot state a cause of action and asserting that a plaintiff has not stated a cause of action? | 033772.docx | LEGALEASE 00189397-LEGALEASE 00189398 | Condensed, SA, Sub 0.69 | 0.69 | 0 | | 1 | 1 | |
| 17289 | Ryan v. May, 14 Ill. 49 | 83E=481 | This action was brought upon a note payable to the bank, by Ryan, surviving assignor of the bank, in whom the legal title was vested by the assignment and several acts of the legislature... The plea in our opinion was insufficient. It did not show that the legal title to the note had passed out of Ryan. By our statute the legal title to a note cannot be transferred by a separate instrument in writing. The statute says that the note, bond, bill, &c... | The legal title to a note cannot be transferred by a separate instrument. | Can the legal title to a note be transferred by an assignment through a separate instrument? | 009522.docx | LEGALEASE 00140619-LEGALEASE 00140620 | Condensed, SA, Sub 0.56 | 0.56 | 0 | | 1 | 1 | |
| 17290 | First Nat. Bank of Fredonia v. Meadows, A.60 S.W.2d 604 | 83E=736(1) | Another secondary and somewhat slicer point is the claim that when the suit was instituted the note were past due, therefore real negotiable with the consequence that the negotiable instrument Law did not apply and "should not be invoked in determining the rights of the parties." Not only were the notes past due, they had been filed as claims in bankruptcy when taken of the Vasmer, doing business as... | Kansas Negotiable Instruments Act has no application to a nonnegotiable instrument, but it does not follow that an action may not be taken on such an instrument as if negotiable. K.S.A. 84-3-401, 84-3-401, 84-8-306. | Does the Uniform Negotiable Instruments Act apply to nonnegotiable instruments? | 009993.docx | LEGALEASE 00140570-LEGALEASE 00140571 | Condensed, SA, Sub 0.9 | 0.9 | 0 | | 1 | 1 | |
| 17291 | Ingram v. Mandler, 56 F.2d 994 | 83E=481 | A promissory note, like an ordinary chosen in action, may be transferred by assignment without the actual delivery of the note. Buckman v. Reynolds (C. C. A.) 169 F. 953; Southern v. Bank, 108 Ga. 174, 33 S.E. 185, 186; Johnson v. Beckey, 66 Utah, 43, 228 P. 189, 191. In order for a writing to constitute an assignment of a chosen in action, no particular form of words is necessary, provided they manifest an intent to transfer the title thereto. Clark v. Sigua Iron Co. (C. C. A.) 81 F. 310, 312; S.C. ) p. 706 F. 711, 713. We conclude that the contract effected a transfer by the title to defendant... | Note may be transferred by assignment without actual delivery. | Can a note be transferred by assignment without actual delivery? | 010425.docx | LEGALEASE 00140317-LEGALEASE 00140318 | Condensed, SA | 0.9 | 0 | 0 | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17392 | United States v. Ganim, 510 F.3d 134 | 63+1(1) | Like extortion, the crime of bribery requires a quid pro quo. See, e.g., Alfisi, 308 F.3d at 148 ("[B]ribery ... requires a quid pro quo element."); see also Sun"Diamond, 526 U.S. at 405, 119 S.Ct. 1402 (distinguishing an illegal gratuity from a bribe which "requires proof of a quid pro quo"). And, like in the extortion cases, donors and recipients engaged in ongoing bribery schemes do not always spell out in advance the specific match between gift and act. For example, in United States v. Bonito, 57 F.3d 167 (2d Cir.1995), we upheld the conviction of a real estate developer who gave a car to a city housing official as a bribe, but when the deal the developer hoped the official could ensure fell through, the official found other ways of using his position for the developer's financial benefit. Id. at 169"71, 174. We found the jury charge sufficient because it required the jury to find a corrupt intent on the part of the payor to influence the performance of official acts. Id. at 171. | Like extortion, the crime of bribery requires a quid pro quo. | Does extortion require a quid pro quo? | Bribery - Memo #602 - C - LB.docx | ROSS-003315608-ROSS-003315609 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 17393 | Clark v. State of Ill., 30 Ill. Ct. Cl. 32 | 200+188 | The crux of the Hammond and Welsh cases, and all similar cases in which we have found the State guilty of negligence, was that the State permitted a dangerous condition to exist without any warning to the public for an unreasonable period of time, after having actual or constructive notice of the danger. In Pyle v. State, No. 5343, filed November 19, 1973, we reviewed a large body of case law from our own and other jurisdictions in which the notice requirement rule was applied in tort actions against various governmental entities. | The State of Illinois is not guilty of negligence unless it has reasonable notice of a dangerous condition and fails to warn the motoring public. | Is the State negligent if it does not notify or warn the public if a highway is dangerously defective? | 018967.docx | LEGALEASE-00139767-LEGALEASE-00139768 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 17394 | State v. Commissioners of Haywood Cty., 122 N.C. 812 | 200+121 | It is further objected that it is unconstitutional for the legislature to provide that the roads of one county shall be worked by taxation while others are worked in another method. There is nothing in the constitution which hampers the legislature by requiring that, in the exercise of its police powers, its regulations must be uniform throughout the state. Brown v. Commissioners, 100 N. C. 92, 5 S. E. 178. It would be exceedingly unfortunate if there was. A mode of working the roads, or regulations as to selling liquor, or the total prohibition of it, or provisions as to fence laws, or the sale of seed cotton, or inspection of fertilizers, or of cattle, which would be highly advantageous in one county, might be very inconvenient or obnoxious in another. Accordingly, such statutes, of local application, have been time and again enacted, and have always been sustained by the court. One of the latest cases, citing many authorities, is Guy v. Commissioners (at this term) 29 S. E. 771. | The legislature has power to compel a county to levy a tax for road purposes, and may direct the manner in which the roads shall be worked. Acts 1897, c. 249. | Does the legislature have power to direct the manner in which the roads shall be worked in a county? | 019031.docx | LEGALEASE-00140231-LEGALEASE-00140232 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17395 | Grunwaldt v. City of Milwaukee, 35 Wis. 2d 530 | 228+181(15.1) | In the case at bar, the description of land taken in fee by the state in 1959 indicates that the western boundary is the highway (old North Teutoniaavenue). The issue is whether this description sufficiently reserves plaintiff's reversionary interest in the land underneath the eastern half of old North Teutoniaavenue. Wisconsin cases have adopted the rule that the conveyance of abutting property on a street or highway transfers the legal title to the land to the center of the adjacent street or highway, in the absence of a clear intent to the contrary. We hold that the description of land in the case at bar did not sufficiently reserve the plaintiff's interest in the old North Teutonia roadbed. Thus, plaintiff's interest in the former highway right-of-way was transferred to the state by the deed given the state in the 1959 condemnation proceedings. | Existence of material issue of fact as to whether particular parcel of land was discontinued for highway use and reverted to abutting owner would preclude granting of summary judgment in abutting owner's action to quiet title to property, unless trial court could dispose of case on other legal grounds. W.S.A. 80.01(3). | "Does the conveyance of property abutting on a street or highway, transfer legal title to the land to the center of the adjacent street or highway?" | Highways -Memo 185 - DB.docx | ROSS-003287461-ROSS-003287462 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 17396 | Fischer v. Fischer, 197 S.W.3d 98 | 289+924 | For clarity, a brief explanation of partnership dissolution is necessary. "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." "Dissolution is merely the commencement of the winding up process. The partnership continues for the limited purpose of winding up the business." "[D]issolution designates the point in time when the partners cease to carry on the business together; termination is the point in time when all the partnership affairs are wound up; winding up, the process of settling partnership affairs after dissolution." The right to dissolve is inseparably incident to every partnership, and there can be no indissoluble partnership. | Right to dissolve is inseparably incident to every partnership, and there can be no indissoluble partnership. | Is the right to dissolve a partnership an inseparable incident to every partnership? | 022286.docx | LEGALEASE-00140145-LEGALEASE-00140146 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 17397 | Dodge v. Bd. of Educ. of City of Chicago, 364 Ill. 547 | 296+1 | In Hughes v. Traeger, supra, it was held that a change in the disposition of a fund, a portion of which was contributed from public taxation and a portion from the salaries of employees, does not violate any vested right of those interested therein, since such right, until it accrues, is only in the nature of an expectancy created by law and which the law may revoke or destroy. Counsel argue that this case is authority for their claim of vested right because of the language of the opinion, "until the happening of the event designated by the statute for its distribution he has no vested right in the fund, but only an expectancy created by the law," and that in this case the happening of the event designated by the statute was the retirement of teachers under the provisions of the Miller Act. The doctrine, as we have seen, is thoroughly established in this State that the State may control the giving or taking away of pensions, and, in consideration of such expressions as "happening of contingency," this doctrine must be borne in mind. If there became due to any of these appellants any installment under the act prior to the amendment of 1935 which was not paid they would have a cause of action to recover it, for until a statute is amended the processes of the law are afforded those who are beneficiaries under it. It is not intimated in this case that there are any such unpaid installments. | State may control the giving or taking away of pensions. | Can the State control the giving or taking away of pensions? | 022891.docx | LEGALEASE-00140494-LEGALEASE-00140495 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17398 | In re Einhorn's Estate, 138 N.Y.S.2d 840 | 307A+91 | Letters rogatory may be issued in a case "where a party is entitled to take testimony by deposition pursuant to" article 29 of the Civil Practice Act, and where the ends of justice will be better promoted by the issuance of letters rogatory than by the other methods for taking testimony by deposition. C.P.A. " 309. It is not disputed that the only available method of taking testimony in the Soviet Union is through letters rogatory. See Ecco High Frequency Corp. v. Amtorg Trading Corp., 196 Misc. 405, 406, 94 N.Y.S.2d 400, 402. The only question, therefore, is whether contestants have shown that they are entitled to have their testimony taken by deposition. Section 288, Civil Practice Act, authorizes any party to an action to cause to be taken by deposition his own testimony "which is material and necessary in the prosecution or defense of the action." The courts have given a very liberal interpretation to the terms "material and necessary", and are inclined to favor examinationsbeforetrial whenever in goodfaith they are legitimately sought. Dorros, Inc., v. Dorros Bros., 274 App.Div. 11, 80 N.Y.S.2d 25. The courts will be all the more liberal toward taking the testimony of a party to the proceeding who cannot conveniently attend the trial, yet a court may not ignore the requirement that the examination be legitimately sought and that the party seeking it act in goodfaith. The contestants are here challenged on both grounds. | An examination of party before trial must be legitimately sought, and the party seeking it must act in good faith. Civil Practice Act, SS 288 et seq., 309. | "To warrant order for examination of the adverse party before trial, must it appear that the application is made in good faith?" | 031336.docx | LEGALEASE-00140641- LEGALEASE-00140642 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 17399 | Gulf City Ins. Co. v. Stephens, 51 Ala. 121 | 307A+74 | It is not required that the commissioner should certify the taking of each deposition separately. Several depositions may be included in one certificate, if it is sufficiently formal. This is the case with the deposition of Taylor Gauche, to which no separate certificate is attached, but which is included in the certificate affixed to the two depositions. | Several depositions may be included in one certificate, if it is sufficiently formal. It is not necessary that a separate certificate should be appended to each deposition. | Can several depositions be included in one certificate? | 032334.docx | LEGALEASE-00139903- LEGALEASE-00139904 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 17400 | Ford v. United Bhd. of Carpenters & Joiners of Am., 50 Wash. 2d 832 | 307A+74 | The deposition was taken in California, and counsel for the defendants was present and cross-examined her. Counsel now raise certain objections to the deposition which were not raised at that time. Rule 32(c)(2), Rules of Pleading, Practice and Procedure, 34A Wash.2d 96, provides that such objections are waived if not raised at the time when they can be obviated, removed or cured. It is also objected that the commissioner's certificate was not attached to the deposition when it was mailed to the clerk of the court but was submitted under separate cover. This objection was raised before the trial of the cause, and the court ordered the deposition returned to the commissioner with directions to certify its contents if they were correct. This was done, and the deposition was returned to the court with the certificate attached. If there was any error in the original manner of certification, it was thereby cured. | Where commissioner's certificate was not attached to deposition when it was submitted and was submitted under separate cover but contents of deposition were thereafter duly certified and deposition was returned to trial court with certificate attached, error, if any, in original manner of certification was thereby cured. | Is no formal certificate necessary to be attached to exhibits in order to make them parts of the deposition in which reference is made to them? | 032483.docx | LEGALEASE-00140568- LEGALEASE-00140569 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 17401 | Trantham v. State Disbursement Unit, 313 Mich. App. 157 | 268+956(2) | Michigan courts have applied similar reasoning when identifying the nature of monetary exactions by government authorities, particularly when drawing distinctions between fees and taxes. "Generally, a "fee" is "exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit." " Bolt v. Lansing, 459 Mich. 152, 161, 587 N.W.2d 264 (1998), quoting Saginaw Co. v. John Sexton Corp. of Mich., 232 Mich.App. 202, 210, 591 N.W.2d 52 (1998). "A "tax," on the other hand, is designed to raise revenue."Wheeler v. Shelby Charter Twp., 265 Mich.App. 657, 665, 697 N.W.2d 180 (2005) (quotation marks and citation omitted). Fees charged by a government entity must be reasonably proportionate to the direct and indirect costs of providing the services for which the fee is charged. Kircher v. Ypsilanti, 269 Mich.App. 224, 231"232, 712 N.W.2d 738 (2005). A fee is presumed reasonable unless it is facially or evidently so " "wholly out of proportion to the expense involved" " that it " "must be held to be a mere guise or subterfuge to obtain the increased revenue." " Merrelli v. St. Clair Shores, 355 Mich. 575, 584, 96 N.W.2d 144 (1959), quoting Vernor v. Secretary of State, 179 Mich. 157, 168, 170, 146 N.W. 338 (1914). | Fees charged by a government entity must be reasonably proportionate to the direct and indirect costs of providing the services for which the fee is charged; a fee is presumed reasonable unless it is facially or evidently so wholly out of proportion to the expense involved that it must be held to be a mere guise or subterfuge to obtain the increased revenue. | Is a tax designed to raise revenue? | 044865.docx | LEGALEASE-00140237- LEGALEASE-00140238 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 17402 | Catania v. Vanacore, 136 Conn. 244 | 386+11 | The trial court concluded that the clause in the deed from Van Celette and Barnes to Lee "reserving * * * a right of way * * * across the south side" of the land now owned by the defendant created an easement of way in the then owners of the lots bordering on the shore, that they also had such a right by necessity and that it had passed to the plaintiffs. We have no need to consider the correctness of those conclusions. The only facts the trial court found as the basis upon which it granted the plaintiffs relief are that the named plaintiff had been the defendant and members of her family go back and forth on Caroline Road; and that he had also seen trucks going over it in the winter time, although the identity of the owners and operators did not appear. The latter finding is, of course, of no significance because responsibility for the passing of the trucks is in no way brought home to the defendant. If the plaintiffs owned the fee of Caroline Road, passage over it by the defendant without their consent might constitute a trespass. But all the court has found, and on the basis of the deeds all it could find, is that the plaintiffs had at most a right of way over the strip of land in question. The act of other persons in going unlawfully upon it would not constitute a trespass against them as owners of a mere easement of passage. McPheters v. Loomis, 125 Conn. 526, 530, 7 A.2d 437; Great Hill Lake, Inc., v. Caswell, 126 Conn. 364, 367, 11 A.2d 396. The plaintiffs would be entitled to relief only if they had been disturbed or obstructed in the exercise of their rights to the use of it. Waterbury Trust Co. v. G. L. D. Realty Co., 121 Conn. 50, 53, 182 A. 466. They have neither alleged nor proved that there has been any such invasion of their rights by the defendant. | The act of persons other than owners of easement, in going unlawfully upon right of way, would not constitute a trespass against owners of the easement. | Can trespass be committed against the owners of a mere easement of passage? | 047422.docx | LEGALEASE-00140596- LEGALEASE-00140597 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 5,029 |
| 17403 | W. Virginia Div. of Issak Walton League of Am. v. Butz, 522 F.2d 945. | 411=8 | Turning to that part of Section 6 which requires that the timber before being sold, shall be marked and designated. The term "marked" in the context of forestry is well defined, and means "selection and indication by a blaze, paint or marking hammer on the stem of trees to be felled or retained." "Designate," on the other hand, is a much broader term and merely means to "indicate". The two words are not synonymous or interchangeable and in using them conjunctively it is evident that Congress intended that the Forest Service designate the area from which the timber was to be sold and, additionally, placed upon the Service the obligation to mark each individual tree which was authorized to be cut. This plain reading of the statutory language is buttressed by reference to the statement of Clifford Pinchot, the first Chief of the Forest Service, in his 1905 Survey of Forest Reserves. He reserves where timber is sold it will be necessary to indicate unmistakably the cutting what trees are to be cut and afterwards to ascertain that these trees, and these only, have been taken." | As used in Organic Act provision that timber in national forest, before being sold, shall be marked and designated, "marked" means selection and indication by a blaze, paint or marking hammer on the stem of trees to be felled or retained, and "designate" means to indicate; and, as the words are not synonymous, forest service must not only designate that area from which timber is to be sold, but mark each individual tree authorized to be cut. 16 U.S.C.A. § 476. | What is the meaning of marking or marked in the context of forestry? | 047956.docx | LEGALEASE 00140727; LEGALEASE 00140773 | Condensed, SA, Sub 0.6 | 0.6 | 0 | 1 | | | 1 |
| 17404 | Mosley v. United States, 456 F. Supp. 671 | 260=92.8 | That Court summarizes a line of Tennessee cases holding that, as a general proposition, a public official in Tennessee is liable only for his failure to perform those ministerial duties imposed upon him by law. Referring to the district mine inspector, the Court stated: * * * The fact cannot be ignored that the statutory command (could have failed to inspect the mine for the safety and protection of the plaintiff, who were working in the mine, the failure on the part of the mine inspector to perform this duty, this was actionable negligence for which he would be liable to the plaintiffs if his failure to inspect the mine was the proximate cause of the explosion and their consequent injuries. * * *Tenn., 183 S.W.2d at 432(11). | Tennessee statute applying to mines other than commercial coal mines and providing regulations for things and other specifications for which both upon employee and upon employers has no duty upon the inspector, and certainly not upon a private person, and creates no right of action for money damages against any person alleged to have failed to have guarded adequately any article of equipment listed therein. T.C.A. §§ 58-1-101, 58-1103, 58-1107(a). | Is the failure to perform a statute imposed positive duty to inspect a mine considered an actionable negligence for which liability would be incurred? | 012296.docx | LEGALEASE 00141413; LEGALEASE 00141414 | Condensed, SA, Sub 0.39 | 0.39 | | 1 | | | 1 |
| 17405 | Lang v. U.S., 96 F.Supp. 445 | 289=39 | In C.R. Baloc & Welding Company v. Minnetonka Lumber Company, 100 Okl. 226, 229 p. 1045, 1047, the court held: * * * As undertaking on the part of one or two or more persons to combine their property or labor in the conduct of a particular line or general business, for joint profit, creates the status of a partnership. In the operation of a partnership affair, each member acts as a principal for himself, and as agent for the other members in the general or special scope of the enterprise. * * * | Under Oklahoma law, in operation of a partnership affair, each member acts as principal for himself, and as agent for other members in general scope of enterprise. 54 Okl.St.Ann. 1. | Does a partner, in a partnership, act as a principal to himself? | 023466.docx | ROSS-003302634+ROSS-003302855 | Condensed, SA | 1 | 0 | 1 | | | |
| 17406 | Roark v. Macoupin Creek Drainage Dist., 316 Ill. App. 3d 835 | 302=11 | A plaintiff is not required to plead evidence in his complaint but is only required to allege ultimate facts. Simon v. Lumbermens Mut. Cas. Co., 151 Ill.App. 3d 659, 662, 506 N.E. 2d 1021, 107 Ill.Dec. 93, 444 N.E.2d 1095, 110 Ill.Dec. 1(1985). Riley v. Lang's, 291 Ill. App.3d 529, 340, 226 Ill.Dec. 684, 686 N.E.2d 33, 41 (1997). In the present case, Roark alleged that: (1) defendants had a duty to maintain and repair the drainage system under section 4'15 of the Drainage Code; (2) defendants breached their duty by failing to make necessary repairs; and (3) as a result of defendants' breach, Roark's property was repeatedly flooded and damaged. Roark alleged sufficient facts to state a cause of action. Therefore, the trial court erred in dismissing the portion of Roark's amended complaint requesting injunctive relief. | A plaintiff is not required to plead evidence in its complaint but is only required to allege ultimate facts. | Is a plaintiff required to plead evidence in his complaint? | 023461.docx | LEGALEASE 00141553; LEGALEASE 00141554 | Condensed, SA | 0.86 | 0 | 1 | | 1 | |
| 17407 | Estate of Johnson by Johnson v. Vill. of Libertyville, 146 Ill App. 3d 834 | 302=11 | A pleader, however, is not required to set out his evidence. Only the ultimate facts to be proved should be alleged, and not the evidentiary facts tending to prove such ultimate facts. (Carriage Way West.) In reviewing the sufficiency of a complaint, all well pleaded facts and all reasonable inferences therefrom must be regarded as true. (See Cratful v. Griffith (1969) 86 Ill.App.3d 149 Ill.Dec. 163 N.E.2d 191.) It is clear that no set of facts can be proved which would entitle plaintiff to recover. Davis v. Weiskopf (1982) 108 Ill.App.3d 505, 439 N.E.2d 60. | Pleader is not required to set out his evidence; only ultimate facts to be proved should be alleged, and not evidentiary facts tending to prove ultimate facts. | Is a pleader required to set out his evidence? | 023470.docx | LEGALEASE 00141408; LEGALEASE 00141409 | Condensed, SA | 0.75 | 0 | 0 | 1 | | |
| 17408 | Rauch v. Cox, 130 Conn. 26 | 303A=713 | Motions for a continuance are within the discretion of the trial court and their denial is not error unless that discretion is abused. Allen v. Chase, 81 Conn. 474 71 A. 367; Slater v. McLaughlin, 1 d Conn. 257, 260, 129 A 28 79 A. 64 so commonly: we see! it Compy v. Clayton, 115 Conn. 663 686, 163 A. 458, 459; that unless there is some sound reason for denying the permission to amend it should be granted; but this and amendment is offered the circumstances in the particular case such as usually demand a delay, the trial court in its discretion may deny the party offering the amendment on to be considered and "such must necessarily be left to the sound discretion of the court." So far as the missing witnesses were concerned, the court in conditioning the entrance at a later day. As to the newly discovered evidence, it related to the posting of a warning sign, and if there was posted in compliance with the statute, as the defendant claimed, it must have been posted by him and so was within his knowledge from the time it was set up. Bronson v. Eufrid & Son, Inc., 116 Conn. 106, 691, 170 A. 762; Nothing in the newly discovered evidence. Co., 86 Conn. 159, 133, 84 A. 301, 324, 45 L.R.A., N.S., 896, 900. There was no abuse of discretion in the denial of the motions to continue and to amend. | Motions for continuance are within the discretion of the trial court and their denial is not error unless that discretion is abused | Will a refusal of continuance on ground of absence of witnesses be an abuse of discretion? | Pretrial Procedure - Memo #3 207 - C - AC.docx | ROSS-003302200+ROSS-003302201 | Condensed, SA | 0.9 | 0 | 1 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 17409 | M.C. Lea & Co. v. Deakin, Wilmerding, 57 Pac. 444 | 3076-74 | One of the controverted questions in this cause was, when was the firm composed of M. C. Lea and a J. Deakin dissolved? In answer to interrogatory which asked who composed the firm of M. C. Lea & Co. in the month of December, 1871, and to whom of January, 1872, the witness answered that the firm was composed during those months of M. C. Lea and A. J. Deakin, and that the answer was continued until the 15th of April, 1872. The latter part of the answer was objected to, because the answer was not responsive to the interrogatory, and the objection was overruled. This was error. So far as the law there in force it was provided that "if any deposition shall contain any testimony not pertinent to the interrogatories propounded, such testimony shall be deemed surplusage and shall be stricken out by the court." Pasch. Dig. | So much of deposition is not pertinent to the interrogatories propounded, should, when properly objected to, be stricken out? | 03258.4docx | USGA EXE 00141577 USGA EXE 00141578 | Condensed, SA, 0.65 | 0.65 | 0 | | 1 | 1 | 1 |
| 17410 | Cooper v. Stinson, 5 Minn. 201 | 3076-74 | As they are substantially embraced however, in these above capital, it is unnecessary further to consider them. It was further objected that the depositions could not be received, on the ground that they were not properly certified and returned as required by law. By Rule 13, of the District Court Rules, it is provided that "the witnesses shall carefully subscribe their depositions, and the Commissioner or Commissioners taking the same shall certify at the bottom of each deposition that it was subscribed and sworn to before them, and he shall sign his certificate; that they shall also endorse upon the commission the time or times and place of executing it and shall certify the same to the officer issuing it... notified. They shall annex the depositions to the commission, seal them up in an envelope, and direct to the Clerk of the proper County." | Under a commission to take the depositions of three witnesses out of the state, the commissioner returned upon the first deposition that the witnesses duly swore to him. On the two deposition the witnesses were "duly sworn as before mentioned." Held, that this was a sufficient compliance with rule 13 of the district court rules requiring the commissioner to certify at the bottom of each deposition that it was sworn to before him, and that the deposition was admissible. | 03262.4 docx | USGA EXE 00141222 USGA EXE 00141223 | Condensed, SA, 0.41 | 0.41 | 0 | | 1 | 1 | 1 |
| 17411 | Draper & Kramer v Klug, 210 Ill. App (1st) 13073 | 3076-S31 | While we are mindful that the standard of review in this case is abuse of discretion, all defendant seeks in this case is a trial on the merits. Given the facts of this case, we believe that substantial justice is best accomplished by vacating the April 19 order... In re Haley D., 2011 IL 110886,65 355 Ill. Dec. 375, 959 N.E.2d 1108; Jackson, 84 Ill App. (Id at 545, 323 Ill Dec. 266, 893 N.E.2d 280. The record supports the defendant misunderstood the terms of the order that she received and that this misunderstanding was reasonable given Modpin's statements before the court proceeding... also supports that defendant diligently attempted to notify plaintiff of her change in income and could have diligently attempted to vacate the April 19 order upon realizing that the order granted plaintiff possession. Also of significance is the disparity in the parties' bargaining power given that defendant was not represented by an attorney and did not behave she needed one as she thought she was agreeing to "pay and stay." As noted, we are mindful of the relative hardship at stake. Moreover, under the law, there is a clear preference for disposing of issues based on the merits. In re Application of the County Collector of Lake County, 343 Ill App 3d 363,376,278 Ill Dec. 294,797 N.E.2d 1212 (2003). "The law prefers that controversies be determined according to the substantive rights of the parties" and as the law should not favor the disposition of issues based on the merits... | Is there a clear preference for disposing of issues based on the merits? | 03280.docx | USGA EXE 00140720 USGA EXE 00140721 | Condensed, SA | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 17412 | Movrey v. Mitchell, 90 F 2d 37l+2001 600 | 171+2001 | Taxes are impacts, not debts, collected for the support of the government. Harmelin v. Garrett, 130 U.S. 472, 27+. Ct. 557. The form of procedure to collect them cannot change their character. No contractual or quasi contractual obligation arises out of the assessment. The enforcement of revenue laws rests, not on consent, but on force and authority. State of Colorado v. Harbeck, 232 N.Y. 71, 133 N.J. 357... As action to collect cannot be maintained to collect a tax in the New York state courts: City of New York v. McLean, 170 N.Y. 374, 63 N.E. 380. Matter of Matthews v Lidotto Mills Co., 233 N.Y. 227, 137 N.E. 369. | Do enforcement of revenue laws rest on force and authority? | 04155.4 docx | USGA EXE 00140897 USGA EXE 00140898 | Condensed, Order, SA, Sub, 0.88 | 0.88 | 1 | 1 | 1 | 1 | 1 |
| 17413 | Havens v Attorney Gen., 91 N.E. 155 | 171+2001 | The fact that the plaintiff may have suffered some loss of profits through diminished business, because certain customers are buying cheaper products of a no-nationality. "Taxes in themselves are economic charges which must be borne, in some way, by the persons affected. They must come from the surplus of the taxpayer, or the burden must be passed on to those who pay them. In a case where such an economic violation, though it be those it seems impossible to have a single uniform system of taxation affecting all alike. The state in seeking objects for taxation must act selectively, placing the tax burden, and exempting other objects." 23 Cornell Law Quar. 45. The expedient distribution of that burden, within constitutional limitations, is the task of the legislature, and it is the "universally accepted doctrine "that no legislative act shall be declared unconstitutional "except upon unassailable grounds. "Mugleron v Parker, 84 N.Y. 500, 512, 113 A.E. 139, in the nature of an inquiry of the court no such grounds exist in the present case. | Should a tax be paid in same way by the person affected? | 04183.docx | USGA EXE 00141113 USGA EXE 00141114 | Condensed, SA, Sub, 0.77 | 0.77 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 17414 | Indiana Dep't of State Revenue v. Kimble Aviation Corp., 217 Ind. 96 | 371v2005 | The states retain the power to tax except as limited or restricted by the United States Constitution. | Before the adoption of the Federal Constitution the States possessed the power to tax without restraint or interference on the part of any other sovereignty. We are concerned here with only one of those provisions in that Constitution, namely, the power granted to Congress "To regulate Commerce with foreign Nations, and among the several States," Art. 1., ¶ 8, cl. 3, United States Constitution. This provision, it should be noted, does not in terms prohibit the States in the full exercise of their power, however, although these words are permissive in character to Congress as distinguished from prohibitive to the States, the interpretive language of the Supreme Court of the United States has given them a meaning which limits the several States in their taxing power in some instances. The delimitation of this field within which the State may not encroach, and on the other hand, beyond which Congress may not wander, is not as distinct nor as clear as one might desire. Freeman v. Hewit, 1946, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265. | What are the restrictions for the states to retain their power to tax? | 04567.docx | LEGALEASE-00161575-LEGALEASE-00161576 | Condensed_SA | 0.92 | | | | | 1 |
| 17415 | Vorhees v. Fed. Nat. Mortg., 754 F.3d 514 | 83+71.1 | Statutes exempting Federal National Mortgage Association (Fannie Mae) from state income taxes did not supersede state law. This argument has been repeatedly rejected by multiple circuits. In the Seventh Circuit, Judge Posner addressed the question in County of Oakland v. Federal Housing Finance Agency (Fannie Mae), 741 F.3d 795 (7th Cir. 2013). "No provision of the Constitution contains a per se limit on federal powers granted by the Constitution, which include the power to create national agencies endowed with intrastate commerce. U.S.C.A. Const. Art. 1, ¶ 8, cl. 3; National Housing Act of 1975, § 309(c)(2), 12 U.S.C.A. § 1723a(c)(2); Emergency Home Finance Act of 1970, § 303(a), 12 U.S.C.A. § 1452(e); Federal Housing Enterprises Financial Safety and Soundness Act of 1992, § 1367, 12 U.S.C.A. § 4617(j)(2). | Swift County, next argues the Exemption Statutes do not supersede state law. This argument has been repeatedly rejected by multiple circuits. In the Seventh Circuit, Judge Posner addressed the question in County of Oakland v. Federal Housing Finance Agency (Fannie Mae), 741 F.3d 795 (7th Cir 2013). The provision of the Constitution which Swift County relies on is federal power granted by the Constitution, which include the power to create national agencies endowed with interstate commerce. U.S.C.A. Const. Art. 1, ¶ 8, cl. 3; the Third Circuit reached the identical result, holding the "exertion that a state's taxing authority stands on equal footing with Congress's own power under the Commerce Clause was flatly rejected by the Supreme Court nearly 200 years ago..." Delaware County v. Fed. Nat'l Mortgage Assoc., 747 F.3d 215, 230 (3d Cir. 2014) (citing McCulloch v. Maryland, 25 U.S. 419, 448) 45; 12 Wheat. 419, 41, 6, 4 L.Ed (1871). For the reasons we conclude the Exemption Statutes do supersede Minnesota's state tax law. | Is there any provision of the Constitution that insulates state taxes from federal powers granted by the Constitution? | 04350.docx | LEGALEASE-00161766-LEGALEASE-00161767 | Condensed_SA_Sub 0.32 | | | | | | 1 |
| 17416 | Am. Soda, LP v. U.S. Filter 30+206 Wastewater Grp., 428 F.3d 921 | | Contractual forum selection clause designating the state court or arbitration as "the exclusive forum for the resolution of any disputes related to or arising out of" the contract was mandatory rather than permissive, although the clause did not specify a county or tribunal for venue. | The difference between a mandatory and permissive forum selection clause is that "[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 321 (10th Cir.1997) (alteration and internal quotation marks omitted). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." Id. (internal quotation marks omitted). U.S Filter argues that the mandatory forum clause at issue is permissive because it does not specify a county or tribunal for venue. We reject this argument. In K & V Scientific, 314 F.3d at 955, we analyzed the majority rule for enforcing forum selection clauses. We held that when venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory. Id. Where only jurisdiction is specified, we will nonetheless enforce a forum selection clause if there is some additional language indicating the parties' intent to make venue exclusive. Id. | When will a forum selection clause be enforced as mandatory? | 00762.docx | ROSS-000287056-ROSS-000287057 | Condensed_SA | 0.76 | 0 | | | | |
| 17417 | Dreyfus v. Lehman Bros., Inc., 3 F. Supp. 2d 695 | 25+13.6 | A court may dismiss a case if all the issues raised before it are arbitrable. | Although criminal intent is a necessary element for conviction under the gravity payment of fines and offenses, a court may dismiss a case if all the issues raised before it are arbitrable. See Thid Wave Techs., Inc. v. Meck, No. 04*CV*0071*L, 2004 WL 941208 (W.D. Wash. May 25, 2004). Topp v. Topp Holding Corp., 186 F.Supp.2d 963, 992 (E.D.Wis.2002) By order dated August 20, 2004, this Court granted motions to stay and for arbitration brought in Lehman's co-defendants. Given its conclusion that the Dreyfus's claims against Lehman must be submitted to arbitration, the Court sees little reason to subdivide the case against Lehman from the Dreyfus's claims against the Defendants have been referred to arbitration. The proper disposition of the present action is dismissal. | Can a court dismiss a case if all the issues raised before it are arbitrable? | 01483.docx | | | Condensed_SA | 0.88 | 0 | | | | 1 |
| 17418 | United States v. Burrah, 412 F.2d 85 | 63+(1) | Although criminal intent is a necessary element for conviction for payment of gratuities to internal revenue agents in return for favorable adjustments in connection with audits of personal income tax returns, no specific intent is required, and offense is established if unlawful acts were made because of economic duress, a desire to create a better working atmosphere, or appreciation for a speedy and favorable audit. 26 U.S.C.A. § 7214(a) (2); 18 U.S.C.A. § 201. | Although criminal intent is a necessary element for conviction under the gravity payment of gratuities to internal revenue agents in return for favorable adjustments in connection with audits of personal income tax returns, no specific intent is required, and offense is established if unlawful acts were made because of economic duress, a desire to create a better working atmosphere, or appreciation for a speedy and favorable audit. 26 U.S.C.A. § 7214(a) (2); 18 U.S.C.A. § 201. | Does a gratuity count require specific intent? | 01485.docx | LEGALEASE-00162205-LEGALEASE-00162206 | Condensed_SA_Sub 0.08 | | 0 | | | | 1 |
| 17419 | Abbott v. BP Expl. & Prod. Inc., 781 F. Supp. 2d 453 | 145R+700 | Formerly properties circuit courts have rejected BP position that an OCS lease grants the lessee an unfettered property interest in to lease. For example, The Ninth Circuit stated that "[a] lease issued under [the OCSLA] ... does not convey the same type of unencumbered estate in the oil and gas. The lease does convey a property interest enforceable against the Government, of course, but it is an interest lacking many of the attributes of private property. "Union Oil Co. of California v. Morton, 512 F.2d 743, 747 (9th Cir. 1975) (internal citations omitted). Additionally, the Fifth Circuit stated, in the context of a lease under the Mineral Leasing Act of 1920, that "[a] mineral lease does not grant the lessee anything approaching full ownership of the minerals, nor does it convey an unencumbered estate in the minerals." McKenna v. Wallis, 344 F.2d 432, 449 Cir. (5th Cir.1965). | Former property circuit courts have rejected BP position that an OCS lease grants the lessee an unfettered property interest in to lease. For example, The Ninth Circuit stated that "[a] lease issued under [the OCSLA] ... does not convey the same type of unencumbered estate in the oil and gas. The lease does convey a property interest enforceable against the Government, of course, but it is an interest lacking many of the attributes of private property." ... greater the risk that an accident could occur, and destruction of the Gulf by a spill or other accident would affect the public interest on a catastrophic level. Outer Continental Shelf Lands Act, § 5, 43(a)(4), 43 U.S.C.A. § 1349(a)(4). | Does a lease issued under the OCSLA (Outer Continental Shelf Act) convey title in the land or an unencumbered estate in oil and gas? | 02160.docx | LEGALEASE-00162773-LEGALEASE-00162771 | Condensed_SA_Sub 0.12 | | 0 | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Copied Opinion Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17420 | VLW Tech. v. Hewlett Packard Co., 840 A.2d 606 | 92t+11 | A computer that gives but notice "shifts to the defendant the burden to determine the merits of an argument or contentions made in discovery for the purpose of raising legal defenses." Accordingly, under Delaware's judicial system of notice pleading, a plaintiff need not plead evidence. Rather, the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted. | Under Delaware's judicial system of notice pleading, a plaintiff need not plead evidence; rather, the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted. | "In a system of notice pleading, must a plaintiff plead evidence?" | Under Delaware's judicial system of notice pleading, a plaintiff need not plead evidence; rather, the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted. | 02393.docx | LEGALEASE 00142983 - LEGALEASE 00142984 | Condensed, SA | 0.52 | 0 | 1 | | 1 | |
| 17421 | Stroti v. McNagny, 558 N.E.2d 1103 | 307A+716 | Finally, this is not the first time that Stroti had raised this request and been denied. He filed an earlier expression of his, which included a request to continue the hearing. This request and the motion to reconsider on the same grounds were denied, even upon the motion to reconsider. Stroti indicated that he had restored his co-counsel. He does not appeal to either of those motions or denials. We cannot find that the factual injunction that the trial court had given him on reaching of his issues and arguments to be addressed? | Trial court did not abuse its discretion in denying third motion to plaintiff attorney, who was acting as his own counsel, for continuance in order to allow his co-counsel to review the file, since plaintiff had filed complaint and had participated in the case up to the time of hearing, plaintiff was aware of issues and arguments to be addressed. | Did the court abuse its discretion in denying debtor's third motion for continuance? | Trial court did not abuse its discretion in denying third motion to plaintiff attorney, who was acting as his own counsel, for continuance in order to allow his co-counsel to review the file, since plaintiff had filed complaint and had participated in the case up to the time of hearing, plaintiff was aware of issues and arguments to be addressed. | 03202.docx | LEGALEASE 00142314 - LEGALEASE 00142315 | Condensed, SA, Sub 0.3 | 0.3 | 0 | 1 | | 1 | |
| 17422 | Gray v. Phillips, 54 Tex. Civ. App. 148 | 307A+74 | We think the ruling of the court, especially in view of the explanation attached to the bill, was correct. It seems, under the authorities, that a deposition may be withdrawn and its irregularities corrected by the officer taking them made under the order of the court. Certainly this can be done in the presence of the court. In this instance it is not contended that the deposition had been changed but only as to its form, which, when the case has been prepared, and may or may not have been that taken to plaintiff's motion. Insurance Co. v. Hird, 4 Tex. Civ. App. 82, 23 S. W. 395 L. C. & G. T. Ry. Co. v. Lynn, 44 Tex. Civ. App. 22, 56 S. W. 69. We think the cases cited by appellant in support of his contention differ from the case at bar, and do not conflict with the rule herein announced. In the case of Milam v. Smith, 71 Tex. 761, 12 S. W. 20, relied on, it appears that the depositions were taken without notice to the opposite party, for which reason they were suppressed. Besides, no error was committed in refusing to quash the depositions, we over rule this | A deposition may be withdrawn and irregularities corrected by the officer taking it under order of the court, and in its presence. | Can a court permit withdrawal of depositions to correct irregularities? | A deposition may be withdrawn and irregularities corrected by the officer taking it under order of the court, and in its presence. | 02516.docx | LEGALEASE 00142114 - LEGALEASE 00142115 | Condensed, SA | 0.89 | 0 | 1 | | 1 | |
| 17423 | Terry v. Terry, 160 Ind. App. 653 | 307A+715 | It cannot be doubted that under proper circumstances, the illness of a party litigant is sufficient grounds for a continuance, however the decision to request a continuance on these grounds is a practical matter to be addressed by the party and the court in light of the circumstances. Where, as in the case here, a party decides not to request a continuance for illness during the course of trial, he cannot later, with the benefit of hindsight, complain. | Under proper circumstances, illness of a party litigant is sufficient grounds for a continuance. | "Is illness of a party, sufficient ground for a continuance?" | Under proper circumstances, illness of a party litigant is sufficient grounds for a continuance. | 03392.docx | LEGALEASE 00142368 - LEGALEASE 00142370 | Condensed, SA | 0.81 | 0 | 1 | | 1 | |
| 17424 | Mohr v. Mohr, 659 N.W.2d 377 | 307A+560 | The language of 257.317 providing for dismissal of unserved petitions is self-executing and mandatory. Dillon v. Montoch, supra. The only way to ensure that re-service upon dismissal of a petition does not occur is to hold such dismissal occurs by operation of law, without predicate action on the part of the trial court. See Vopalka v. Abraham, 260 Neb. 737, 619 N.W.2d 364 (2000). If service of a petition is not accomplished within any time further taken by the district court, except to formalize the dismissal, are a nullity. | Statute providing for dismissal of unserved petitions is self-executing and mandatory. Neb. Rev. Stat. 25-217. | Is the statute providing for dismissal of unserved petitions self-executing and mandatory? | Statute providing for dismissal of unserved petitions is self-executing and mandatory. Neb. Rev. Stat. 25-217. | Pretrial Procedure - Memo #4416 - C - SK.docx | ROSS-003001792+ROSS-003001793 | Condensed, SA, Sub 0.79 | 0.79 | 0 | 1 | | 1 | |
| 17425 | Heise v. Olympus Optical Co., 111 F.R.D. 1 | 170Ak+751 | ODC, 166 stated the 12 (b) defense of insufficiency of process is in its original mistake its claims. The defense of insufficiency of process differs from the insufficiency of service of process. Insufficiency of process challenges the content of a summons the latter challenges the manner or method of service. National Paper Co. v. Mcleod, Inc., 272 F.Supp. 766 (S.D.N.Y.1967). The line between these defenses is more difficult to draw when the defendant contends that the service party has been served, but the question is one of sufficiency of service of process. Obalty v. Steamship Yucatan, 343 F.2d 546 (4th Cir.1965). The case before the court where the officer dismissed that the absence of the summons it has been raised. | Defense of insufficiency of process challenges content of summons, and defense of insufficiency of service of process challenges manner or method of service. Fed.Rules Civ.Proc.Rule 12(b), 28 U.S.C.A. | Does the defense of insufficiency of process differ from insufficiency of the service of process? | Defense of insufficiency of process challenges content of summons, and defense of insufficiency of service of process challenges manner or method of service. Fed.Rules Civ.Proc.Rule 12(b), 28 U.S.C.A. | 03435.docx | LEGALEASE 00142116 - LEGALEASE 00142117 | Condensed, SA, Sub 0.73 | 0.73 | 0 | 1 | | 1 | |
| 17426 | Deutsche Bank Natl Tr. Co. v. Wodell 52 So. 3d 857 | 294+798 | Section 57.105 of the Florida Statutes, "if a sanction loses under this alternative appears to be a viable alternative, the trial court may award damages appear to be a viable alternative, the trial court should employ this procedure for a case which may be an alternative." Id. In awarding attorney fees and the client. See Kysera Co. v. Hickey, 899 So.2d 884, 693 (Fla.1st DCA 2004). Although we "magic words" are not required when a court dismisses a case with prejudice, the court must find the conduct was deliberate and in bad faith or constitutes deliberate disregard of the court's directives. Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271, 1273 (Fla.1990). | Trial court's failure to consider the Kozel factors for determining whether dismissal with prejudice is an appropriate sanction for attorney misconduct before dismissing party's complaint with prejudice for failure to provide the court with a summary final judgment package before the hearing on bank's summary judgment motion required reversal and remand for consideration of the factors in determining what sanction other than dismissal was appropriate. | Are sanctions for attorney misconduct short of dismissing a case with prejudice appropriate when the errors are made by the attorney? | Trial court's failure to consider the Kozel factors for determining whether dismissal with prejudice is an appropriate sanction for attorney misconduct before dismissing party's complaint with prejudice for failure to provide the court with a summary final judgment package before the hearing on bank's summary judgment motion required reversal and remand for consideration of the factors in determining what sanction other than dismissal was appropriate. | 03441.docx | LEGALEASE 00143554 - LEGALEASE 00143555 | Condensed, SA, Sub 0.31 | 0.31 | 0 | 1 | | 1 | |
| 17427 | New York Carpet World v. Dept of Employment Sec., 283 Ill. App. 3d 497 | 307A+560 | Section 2-1301 of the Code of Civil Procedure provides that "[n]o owner of a party" is not a ground for dismissal and that "the name of any party may be corrected at any time." 735 ILCS 5/2-401(b) (West 1994). There is a distinction between a misnomer (serving a misnamed party) and serving the wrong person. See Barbour v. Fred Berglund & Sons, Inc., 208 Ill.App.3d 644, 153 Ill.Dec. 551, 567 N.E.2d 509 (1990). We held that plaintiff did not misname the Board of Review, rather, it served the Department instead of the Board of Review. | Distinction exists between "misnomer," that is, serving misnamed party, and serving the wrong person, for purposes of determining whether complaint should be dismissed. S.H.A. 735 ILCS 42-401(b). | Does a distinction exist between misnomer and serving the wrong person? | Distinction exists between "misnomer," that is, serving misnamed party, and serving the wrong person, for purposes of determining whether complaint should be dismissed. S.H.A. 735 ILCS 42-401(b). | Pretrial Procedure - Memo #4793 - C - PC.docx | ROSS-003289344 | Condensed, SA, Sub 0.63 | 0.63 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 17428 | Bacon v. Wyoming State Bd. of Equalization, P.2d 173 | 371+2013 | | Power to tax is legislative power which includes power to say what shall be taxed, who pays it and what the tax shall be. | Does the power to tax include power to say who shall be taxed, who pays it, and what the tax shall be? | 043331.docx | USAGEASE 00142423 / USAGEASE 00142424 | Condensed, SA | 0.89 | 0 | | | 1 | |
| 17429 | Newman v. City of Indianola, 232 N.W.2d 568 | 371+2060 | | There is a distinction between a "tax" and an "assessment" a "tax" is a charge to pay the cost of government without regard to special benefits conferred. | Is there a distinction between a "tax" and an "assessment"? | 043339.docx | ROSS-000313723+ROSS-000313725 | Condensed, SA | 0.72 | | | | 1 | |
| 17430 | City of Huntington v. Bacon, 196 W. Va. 457 | 371+2061 | | Essential characteristic of ad valorem tax is that tax is levied according to value of property. | Is an "ad valorem tax" one imposed on property according to its value? | 043716.docx | USAGEASE 00142213 / USAGEASE 00142214 | Condensed, SA | 0.91 | 0 | 0 | | 1 | |
| 17431 | HFC Investments v. Valley State Bank, 161 S.W.3d 450 | 401+5.3(2.1) | | Allegations in vendor's petition that purchaser fraudulently induced vendor to enter into agreement and executed deeds transferring Kansas property to purchaser, and that the agreement and deeds executed as a part thereof were not binding on vendor and were null and void, or void and voidable, affected the title to real estate and were subject to dismissal pursuant to statutory provision that required actions affecting title to real estate be brought in the county in which the property is located, even if the petition asserted additional counts seeking money damages arising out of the same set of operative facts. | Must the title be tried in the county of controversy for the suit to be brought in the county where the land is situated? | 047556.docx | USAGEASE 00142422 / USAGEASE 00142423 | Condensed, SA, Sub | 0.39 | 1 | | | 1 | |
| 17432 | Rector v. Dep't of Labor & Indus. of State of Wash., 61 Wash. App. 385 | 413+2 | | Industrial insurance claim is governed by explicit statutory directives and not by common law. West's RCWA 51.04.010 et seq. | What are industrial insurance claims governed by? | 048157.docx | ROSS-000330389 ROSS-000330390 | Condensed, SA, Sub | 0.87 | 1 | 1 | | 1 | |
| 17433 | Travelers Indem. Co. v. Maker, 1001 W.2d 756 | 413+2 | | Workers' compensation is a creature of statute, and the remedies and procedures described therein are exclusive. | Are the remedies and procedures in workers compensation exclusive? | 048157.docx | USAGEASE 00142146 / USAGEASE 00142147 | Condensed, SA, Sub | 0.07 | | | | 1 | |
| 17434 | Santoro, Jenkins & Assocs., 415 W.2d 61 | 413+2 | | The Workers' Compensation Law supplants the common law in determining remedies for on-the-job injuries. | What does workers compensation law supplant? | 048178.docx | USAGEASE 00142201 / USAGEASE 00142202 | Condensed, SA | 0.78 | | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17435 | United States v. White, 836 F.3d 437 | 350H+1285 | Shortly after Johnson, Defendant filed supplemental briefing challenging his sentence. Defendant argues that, although his burglary convictions under W. Va. Code " 61"3"11(a)2 met the definition of a "violent felony" under the residual clause at the time of his sentencing, they can no longer qualify as such in light of that clause's invalidation in Johnson. The government counters that Defendant has abandoned this sentencing claim because he did not raise the issue in his opening brief. The government also contends that, regardless of the constitutionality of the residual clause, the West Virginia burglary convictions qualify as ACCA predicate crimes because burglary is an offense specifically enumerated in the ACCA's "violent felony" definition. See 18 U.S.C. " 924(e)(2)(B)(ii). | West Virginia burglary statute, which included self-propelled motor homes in its definition of "dwelling," swept more broadly than generic burglary, and thus defendant's prior West Virginia burglary convictions did not constitute "burglaries" that could serve as predicate violent felony offenses under Armed Career Criminal Act (ACCA). 18 U.S.C.A. S 924(e)(2)(B)(ii); W. Va. Code Ann. S 61-3-11(a). | Is burglary an enumerated offense? | Burglary - Memo 207 - JS.docx | ROSS-003328726-ROSS-003328729 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 17436 | State v. Hussain, 189 Ariz. 336 | 67+4 | Defendant's motelroom qualifies as a "residential structure" within the burglarystatute. See A.R.S. " 13"1501(7); State v. Gardella, 156 Ariz. 340, 342, 751 P.2d 1000, 1002 (App.1988). Further, at least according to defendant's version of the incident, the victim "remain[ed] unlawfully ... with the intent to commit" an assault upon the defendant, see A.R.S. " 13"1507(A), and he knowingly possessed a deadly weapon or dangerous instrument, see A.R.S. " 13"1508(A). Thus, defendant's version of the incident provided "the slightest evidence" in support of the theory that he was justified in using deadly physical force against the victim to prevent the commission of a burglary in the first- or second-degree. See A.R.S. " 13"411(A). | Motel room qualified as a "residential structure" within meaning of burglary statute. A.R.S. S 13-1501, subd. 7. | Does a motel room qualify as a building under a burglary statute? | 012912.docx | LEGALEASE-00144879-LEGALEASE-00144882 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17437 | United States v. Marrero, 677 F.3d 155 | 350H+1263 | Application Note 1 expressly states that the term " "[c]rime of violence" includes murder." Consistent with the categorical approach prescribed by Taylor for predicate offenses expressly listed as "crimes of violence," we previously held that "no inquiry into the facts of the predicate offense is permitted when a predicate conviction is enumerated as a "crime of violence" in [then-]Application Note 2 to " 4B1.2." United States v. McQuilkin, 97 F.3d 723, 728 (3d Cir.1996) (holding that a defendant's aggravated assault conviction, even though based on reckless conduct, counted as a crime of violence because aggravated assault was enumerated in the application note); accord United States v. McClenton, 53 F.3d 584 (3d Cir.1995) (holding that burglary of an unoccupied hotel room was a crime of violence because burglary of a dwelling was enumerated in " 4B1.2). Since we decided McQuilkin, nothing has called into question our prior conclusion that offenses listed in what is now Application Note 1 to " 4B1.2 should be considered "enumerated" offenses for purposes of the crime-of-violence analysis. | Offenses listed in Application Note 1 of career offender Sentencing Guideline, including murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling, are "enumerated" as crimes of violence for purposes of determining the Guideline's applicability. U.S.S.G. S 4B1.2(a), 18 U.S.C.A. | Is burglary of a hotel room a crime of violence? | Burglary - Memo 229 - SB.docx | ROSS-003302219-ROSS-003302222 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 17438 | Cont'l Sales Corp. v. Stookesberry, 170 Colo. 16 | 302+38.5 | Under the Colorado Rules of Civil Procedure and the great weight of authority in other jurisdictions with similar rules, the primary function of the complaint is to give notice, and theories of action are no longer significant. Bridges v. Ingram, 122 Colo. 501, 223 P.2d 1051. If a party states any claim and proves it by a preponderance of the evidence, he is entitled to relief, without regard to a specific theory or cause of action. Spomer v. City of Grand Junction, 144 Colo. 207, 355 P.2d 960. | Primary function of complaint is to give notice, and theories of action are no longer significant. | Is giving notice the primary purpose of a complaint? | Pleading - Memo 427 - RMM.docx | ROSS-003291184-ROSS-003291185 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 17439 | Fennema v. Vander Aa, 236 N.E.2d 409 | 307A+746 | A pre-trial conference is primarily a procedure to simplify and speed up the trial. It encourages the parties to agree to stipulations of fact and to the admission of documents and generally formulates the issues. The conference frequently leads to a settlement through the aid of the pretrial judge. The conference should not be used for the purpose of summarily dismissing a cause when the plaintiff fails to appear, or, on the other hand, for the purpose of striking the defendant answer and permitting the plaintiffs to prove up his claim when the defendant fails to appear. | A pretrial conference is primarily a procedure to simplify and speed up the trial, which encourages parties to agree to stipulations and to admission of documents and frequently leads to a settlement through the aid of pretrial judge, and a conference should not be used for purpose of summarily dismissing a cause when plaintiff fails to appear or, on the other hand, for purpose of striking defendant's answer and permitting plaintiff to prove up his claim when defendant fails to appear. | Is a pretrial conference primarily a procedure to simplify and speed up the trial? | Pretrial Procedure - Memo # 6707 - C - NE.docx | ROSS-003288443 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 17440 | Saviers v. Smith, 101 Ohio St. 132 | 371+2005 | It is urged that section 2, article XII, of the Constitution, prescribes an exclusive method of raising taxes for general revenue. The power to tax is one of the highest attributes of sovereignty. Section 1, article II, of our Constitution, grants to the General Assembly absolute legislative power. | The power to tax is an attribute of sovereignty, and in Ohio is included in the general legislative power conferred by Const. art. 2, S 1, upon the General Assembly without limitation. | Is a state's power to tax included in the general legislative power conferred by constitution? | 045790.docx | LEGALEASE-00144588-LEGALEASE-00144589 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 17441 | 7 Utes Corp. v. Dist. Court In & For Eighth Judicial Dist. (Jackson Cty.), 702 P.2d 262 | 401+2 | In determining the proper venue for an action, the substance rather than the form of the action controls. Colorado National Bank v. District Court, 189 Colo. 522, 542 P.2d 853 (1975); City and County of Denver v. Glendale Water & Sanitation District, 152 Colo. 39, 380 P.2d 553 (1963). An action affecting real property is one in which "title, lien, injury, quality or possession" is at issue.Craft v. Stumpf, 115 Colo. 181, 182, 170 P.2d 779, 780 (1946); see Gordon Inv. Co. v. Jones, 123 Colo. 253, 227 P.2d 336 (1951); Jameson v. District Court, 115 Colo. 298, 172 P.2d 449 (1946). An action for damages alone is not one affecting real property. Craft v. Stumpf, 115 Colo. at 182, 170 P.2d at 780; see 77 Am.Jur.2d Venue " 11 (1975). | In determining the proper venue for an action, the substance rather than the form of the action controls. | Is it the substance of the action or the form of the action which controls the venue of the case? | 047508.docx | LEGALEASE-00144682-LEGALEASE-00144683 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 17442 | United States v. Sorrow, 732 F.2d 176 | 164T+21 | Sorrow's interstate commerce arguments are meritless. The Hobbs Act only requires a minimal interference with interstate commerce. United States v. Sander, 615 F.2d 215, 218 (5th Cir.), cert. denied, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). The court's instruction properly balanced the law requiring proof beyond a reasonable doubt for a conviction with the law that only a slight effect on commerce need be shown. | Hobbs Act only requires minimal interference with interstate commerce. 18 U.S.C.A. S 1951. | What degree of interference with interstate commerce does the Hobbs Act require? | 012262.docx | LEGALEASE-00145115-LEGALEASE-00145116 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17443 | People v. Henderson, 138 Cal. App. 2d 505 | 67+29 | Appellant also contends that the testimony indicates that there is more than a reasonable doubt that there was no intent to steal in committing the alleged burglary. The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. People v. Daugherty, 40 Cal.2d 876, 885, 256 P.2d 911. Appellant himself testified, in substance, that he broke the window of the house and that he entered through the hole made by the breaking; that such breaking and entering was during the night time. He contends, however, that he had no intent to commit a larceny, or any felony, and therefore was not guilty of the alleged burglary. True it is that the existence of such an intent, at the time the entry was made, was necessary in order to sustain the conviction of burglary. However, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence. When the evidence is sufficient to justify a reasonable inference that such intent existed, the verdict may not be disturbed. People v. Smith, 84 Cal.App.2d 509, 512, 190 P.2d 941. There is ample evidence, from what has already been related, to warrant the belief and conclusion that the defendant entered the house with the intent to commit larceny. People v. Kittrelle, 102 Cal.App.2d 149, 156, 227 P.2d 38; People v. Winters, 93 Cal. 277, 282, 28 P. 946; People v. Swenson, 28 Cal.App.2d 636, 639"40, 83 P.2d 70. Indeed, burglarious intent could be inferred from the forcible and unlawful entry alone. People v. Fitch, 73 Cal.App.2d 825, 827, 167 P.2d 211; People v. Martone, 38 Cal.App.2d 392, 101 P.2d 537; People v. Winters, 93 Cal. 277, 28 P. 946. | Burglarious intent may be inferred from the forcible and unlawful entry alone. West's Ann.Pen.Code, S 459. | Can the intent in the crime of burglary be inferred from unlawful and forcible entry? | Burglary - Memo 212 - JS.docx | ROSS-003315737-ROSS-003315741 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 17444 | Langford v. Bivins, 225 S.W. 867 | 260+74 | The contract being in writing, evidenced by the telegrams, the issue of whether appellee's proposition had been unconditionally accepted, and the trade consummated, is primarily one of law for the court. We think the court's holding is correct. It seems to be settled law that time is of the essence of contracts for the sale of mineral leases and lands.Waterman v. Banks, 144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 479, and authorities there cited. It appears from the record that the land in question was in the neighborhood of what is known as the K-M-A oil district. Appellant testified: "In reference to whether or not I was sending wires pretty fast, I will say I thought I could make a piece of money on it when he wired me he would take $50 for it. As a matter of fact, things can happen pretty quick around Wichita Falls in the oil game in 24 hours, or such a matter. Fifteen minutes is ancient history there. That is a common expression." | Time is of the essence of contracts for the sale of mineral leases and lands. | Is time of the essence of contracts for the sale of mineral leases? | 021438.docx | LEGALEASE-00146001-LEGALEASE-00146002 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 17445 | Freeman v. United States Dep't of the Interior, 37 F. Supp. 3d 313 | 148+83 | The Secretary of the Interior is authorized to withdraw or sequester land from mining operations under the Mining Law. 43 U.S.C. " 1714; Kosanke v. U.S. Dep't of Interior, 144 F.3d 873, 874 (D.C.Cir.1998) ("[A]ny lands withdrawn from mineral entry are no longer considered to be within the public domain and therefore are not subject to the statutory rights enumerated in the General Mining Law."). | Decision by Interior Board of Land Appeals (IBLA) that Department of Interior (DOI) could initiate contest and administrative law judge (ALJ) could determine validity of unpatented mining claims as of date of alleged takings did not undermine purposes of Mining Law; use of those historical dates was necessary to answer key legal question triggering initiation of contest hearing, i.e., validity of mining claims at dates when claimant alleged government taking, and Mining Law authorized Secretary of the Interior to serve as guardian of public's rights as part of its management of public lands. 30 U.S.C.A. S 22 et seq.; 43 U.S.C.A. S 1457 | Are lands withdrawn from mineral entry considered to be within the public domain and subject to the statutory rights enumerated in the General Mining Law? | 021470.docx | LEGALEASE-00146172-LEGALEASE-00146173 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 17446 | Arnold v. Wainwright, 6 Minn. 358 | 108H+1175 | It being established that the real estate had been in equity converted into partnership assets, it follows, that from the moment of such conversion, "neither partner can have an ultimate and beneficial interest in the capital until the debts are paid and the accounts settled. It follows as a necessary consequence that such partnership real estate cannot be conveyed and alienated by one of the partners alone without a breach of trust; and that such a conveyance would not be valid against the other partner. Dyer vs. Clark. | When partnership real estate is in the name of one or more parties, a trust arises in favor of the firm by operation of law, which is not affected by the statute of frauds and uses, and which will follow the lands after conveyance by the holder of its legal title, except when the conveyance is to a bona fide grantee or mortgagee without notice. An assignee for the benefit of creditors is not such a bona fide purchaser. | Can a partner convey away the real estate of the partnership firm? | 022488.docx | LEGALEASE-00146398-LEGALEASE-00146399 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 17447 | Rucker v. Merck, 172 Ga. 793 | 371+3456 | Congress may grant pensions and other rewards for military service and provide that federal compensation for military service shall be exempt from all taxation (38 USCA " 454; Const. U. S. art. 1, " 8, cl. 11). | Congress may provide that federal compensation for military service shall be exempt from all taxation (38 U.S.C.A. SS 753, 754; U.S.C.A.Const. art. 1, S 8, cl. 11). | Are pensions granted for military service? | Pension - Memo 44 - TB.docx | ROSS-003287642 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 17448 | Rhodes v. United States, 79 F. 740 | 296+2 | A wound or injury inflicted upon himself by a soldier, or received by him while hunting wild animals, or squabbling with his comrades for his own amusement, or while doing any other act not in the line of his duty, would form no basis for a pension. The reason is that it would not be caused by his presence in the line of duty. The same rule applies to wounds, injuries, and diseases; for in the law they stand together in a single class. The result is that neither injury nor disease can authorize the grant of a pension under the acts of congress unless it is caused by the presence of its victim in the line of duty when it was received or contracted. | A disease was contracted within "the line of duty," within Rev.St. SS 4693, 4694, providing for pensions for soldiers "disabled by reason of any wound or injury received, or disease contracted, while in the service of the United States and in the line of duty," only if the service was the cause of the disease. | Can an injury caused to a victim in the line of duty entitle him to pension? | 022825.docx | LEGALEASE-00145879-LEGALEASE-00145880 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 17449 | Bader v. Cox, 701 S.W.2d 677 | 302+1 | The majority of Bader's exceptions to which Ms. Bader did not respond constituted an attempt to challenge Ms. Bader's pleading by stating extrinsic facts. The function of a pleading is to define the issues at trial, not to state evidence. Murray v. O & A Express, Inc., 630 S.W.2d 633, 636 (Tex.1982). The rules do not require that a plaintiff plead her entire case with exactness. The appropriate mechanisms for challenging allegations in a pleading by stating extrinsic facts are a plea in bar, a plea in abatement, or a motion for summary judgment. City of Corpus Christi v. Sudduth, 475 S.W.2d 720, 721 (Tex.1972); Ragsdale v. Ragsdale, 520 S.W.2d 839, 843 (Tex.Civ.App."Fort Worth 1975, no writ). | Function of a pleading is to define issues at trial, not to state evidence. | Is defining issues or stating evidence the function of pleading? | Pleading - Memo 442 - RMM.docx | ROSS-003288570-ROSS-003288571 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13450 | Stop & Shop Supermarket Co. v. Co. of Bergen, 312 A.3d 291 | 1246 | "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm..." | Mootness is threshold justiciability determination rooted in notion that judicial power is to be exercised only when party is immediately threatened with harm. | Is excluding the testimony of a witness a harsh remedy which should be invoked sparingly? | 034136.docx | LEGALEASE 00165446-LEGALEASE 00165447 | Condensed_SA | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 13451 | Mitsch v. Com., Pa. Bd. of Prob. & Parole, 863 A.2d 264 | 30734552 | We consider, first, whether this appeal is moot. Generally, a case will be dismissed as moot if there exists no actual case or controversy. Fraternal Order of Police v. District of Philadelphia, 789 A.2d 858 (Pa.Cmwlth.2001) | Generally, a case will be dismissed as moot if there exists no actual case or controversy. | Can a case be dismissed as moot if there exists no actual case or controversy? | Pretrial Procedure - Memo # 7284 - C - 18.docx | ROSS 000289956-ROSS-000289957 | Condensed_SA | 0.59 | 1 | 0 | 0 | 0 | 1 |
| 13452 | Bradeen v. S. Mtn. Bank, 837 S.W.2d 733 | 30+3334 | A trial court may impose sanctions on any party that abuses the discovery process. Boehme Corp. v. City of Honda, 721 S.W.2d 839, 840 (Tex.1986)... | Trial court may impose sanctions on any party that abuses discovery process; sanctions imposed within that court's discretion and will be set aside only if the court clearly abused its discretion. Vernon's Ann. Texas Rules Civ.Proc., Rule 215. | Does a trial court abuse its discretion if sanctions it imposes are not just? | 035500.docx | LEGALEASE 00146065-1-LEGALEASE 00146662 | Condensed_SA | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 13453 | MAG Portfolio Consultants, GMbH v. Merlin Biomed Grp. LLC, 268 F.3d 58 | 25T+1282(1) | Under the estoppel theory, a company "knowingly exploit[ing] the arbitration agreement]" may be estopped from avoiding arbitration despite having never signed the agreement... | Under estoppel theory for binding nonsignatory to arbitration agreement where company is knowingly accepted direct benefit of agreement containing arbitration clause, company may be bound by arbitration clause even without signing agreement. 9 U.S.C.A. § 3 et seq. | Can a company be estopped from avoiding an arbitration clause under the estoppel theory? | 09913.docx | LEGALEASE 00094913-LEGALEASE 00094914 | Condensed_SA, Sub 0.76 | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 13454 | Westmoreland v. Sadoux, 299 F.3d 462 | 25T+179 | In sum, we agree with the First and Ninth Circuits that a nonsignatory cannot compel arbitration merely because he is an agent of the signatories... | Nonsignatory cannot compel arbitration merely because he is an agent of the signatories of one of the signatories. | Can a nonsignatory compel arbitration because he is an agent of one of the signatories? | Alternative Dispute Resolution - Memo 243 - RK.docx | ROSS 000285941-ROSS-000285942 | Condensed_SA, Sub 0.77 | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 13455 | Gillars v. United States, 182 F.2d 962 | 38446 | In Cramer, United States, supra, 325 U.S. at page 29, 65 S.Ct at page 932, The Supreme Court has said: "* * * the crime of treason consists of two elements; adherence to the enemy, and rendering him aid and comfort..." | Treason" consists of two elements, namely, adherence to the enemy, and rendering him aid and comfort, and hence, a citizen intellectually or emotionally may favor the enemy and harbor sympathies for convictions. | What are the elements of treason? | Treason - Memo 18 - RK.docx | ROSS 000298537-ROSS-000298538 | Condensed_SA, Sub 0.31 | 0.31 | 1 | 1 | 1 | 1 | 1 |
| 13456 | Whigham v. Chase Auto. Fin. Corp., 826 F. Supp. 2d 914 | 34+34.4(6) | Examining the SCRA's provision on storage liens, formerly 50 U.S.C.A. App. § 532(2), that provision makes clear it was intended to protect those who fall within the Act, a lien must include a charge for storage, but the lien need not be limited to such fees. "United States v. Borrer, 87 N.E.2d, 228 (5th Cir.1999)... | Servicemember failed to allege lien held by assignor of financing contract transcended connection with storage charges... | To order to fall within the Soldiers' and Sailors' Civil Relief Act (SSCRA), must a storage lien include charges for storage? | Armed Services - Memo 292 - JK.docx | LEGALEASE 00286899-LEGALEASE 00286700 | Condensed_SA, Sub 0.5 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13457 | Newman v. People, 23 Colo. 300 | 63+1(1) | | To constitute larceny the act of two persons is essential, that of him who gives and of him who receives. Their minds must concur, but it is immaterial whether the giver makes the first advances or gives the money for some personal advantage to himself. | Is the act of two persons essential to the crime of bribery? | 10770.docx | LEGALEASE 00096844 LEGALEASE 00096845 | Condensed, SA, Sub 0.83 | 0 | 1 | | 1 | 1 |
| 13458 | Muni. Paving Co. v. Donovan Co., 142 S.W. 644 | 268+70(1) | | A city ordinance was purported by statute, and there was a plainly enough statement of any engine propelled by steam over any street, except on tracks, but that the section should not apply to any engine used by any contractor engaged in street work, provided the consent of the mayor was first obtained to the use of the engine. Held, that a contractor's steam roller was an engine within the meaning of such ordinance, and that it was not to be construed as a limited to requiring the mayor's consent only in case of a steam engine operated or moved on railway tracks provided for such purpose. | Do the statutes provide any warning regarding use of a steam roller in street? | 018628.docx | LEGALEASE 00147695-00147696 LEGALEASE 00147691 | Condensed, SA, Sub 0.59 | 0 | 1 | | | 1 |
| 13459 | In re Estate of Gallagher, 383 Ill. App. 3d 901 | 307A+68B | | Party moving for involuntary dismissal admits legal sufficiency of complaint but asserts affirmative defense or other matter to defeat plaintiff's claim. S.H.A. 735 ILCS 5/2-619. | What is the purpose of a motion to dismiss that admits the legal sufficiency of the complaint? | 11026.docx | LEGALEASE 00096361-00096362 | Condensed, SA, Sub 0.87 | 0 | 1 | | 1 | 1 |
| 13460 | Arrow Marble v. Estate of Killion, 441 S.W.3d 702 | 307A+690 | | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. | Is a dismissal for failure to prosecute to be without prejudice? | 10334.docx | LEGALEASE 00096992 LEGALEASE 00096993 | Condensed, SA 0.73 | 0 | 1 | | 1 | |
| 13461 | Bowlex v. State, 737 N.E.2d 1150 | 352H+21(1) | | Mere touching alone is not sufficient to constitute the crime of child molesting. West's A.I.C. 35-42-4-3. | Does mere touching constitute child molesting? | 042905.docx | LEGALEASE 00147957-00147958 LEGALEASE 00147955 | Condensed, SA 0.83 | 0 | 1 | | 1 | |

Appendix D
3076

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17442 | State v. McCullem, 107 Ariz. 143 | 110×264 | The defendant contends that the trial court erred in failing to tell him that he would not be entitled to probation and/or parole before receiving and pleading guilty to molestation of a child but defendant would not be entitled to probation deduction and deduction until he had served at least one year. He contends this because of the fact that, in this case, a crime was made on an understanding of the consequence. Indeed the trial court... (A.R.S. § 13-653 A.R.S. reads as follows: "A person who molests a child under the age of fifteen years by fondling, playing with, or touching the private parts of such child or who causes a child under the age of fifteen years to fondle, play with, or touch the private parts of such person shall be guilty of a felony punishable by imprisonment in the state prison for not less than one nor more than life.")... | Failure to inform defendant before receiving plea of guilty to molestation of child that defendant would not be entitled to parole/probation deduction and double time deduction until he had served at least one year did not invalidate plea because defendant who was advised of the maximum possible sentence was served and who received sentence of not less than five years nor more than 20 years, A.R.S. § 13-653. | Does fondling and touching a child amount to child molesting? | 04290 / .docx | LEGALEASE 00147956-LEGALEASE 00147957 | Condensed_SA_Sub 0.62 | | 0 | 1 | 1 | | |
| 17443 | State v. Powell, 42 Wash. App. 914 | 211×1751 | Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification. State v. Wilson, 56 Wash. App. 63, 68, 782 P.2d 224 (1989). Here, viewed as a whole... (multiple incidents including one in which defendant had victim cooperate in "pretext phone calls" during which defendant acknowledged touching occurred)... State v. Brooks, 50 Wash.App. 785... | Evidence was insufficient to support inference that defendant had touched child for purposes of "sexual gratification," as required in order to convict for child sexual molestation; on one occasion defendant, whom the child knew, had touched child's underpants in "the front part" while assisting her off his lap after she had sat on it, and on another occasion had touched her thighs through her clothing while they were seated in a truck. West's RCWA 9A.44.010(2). | Can touching being done for the purpose of sexual gratification be inferred? | 04297 / .docx | LEGALEASE 00147966-LEGALEASE 00147967 | Condensed_SA_Sub 0.72 | | 0 | 1 | 1 | | |
| 17444 | Thompson v. Iowa Beef Packers, 185 N.W.2d 738 | 231×1363 | As a general rule, federal labor policy requires that employees seeking to assert grievances must initially attempt to use contract grievance procedures agreed to by employer. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580. These decisions are founded on s 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C.A. s 185(a). In accordance with this general rule, federal courts of appeals have held that employees must attempt to arbitrate FLSA claims before they can come to court. Donohue v. Susquehanna Collieries Co., 3 Cir. 1943, 138 F.2d 3, 153 A.L.R. 423... | Employees were not required to attempt contract arbitration before they could sue for overtime compensation under Fair Labor Standards Act (FLSA) claims before they come to court? | Alternative Dispute Resolution - Memo 774 - RK_58307.docx | ROSS 00029425-ROSS 00029426 | Condensed_SA_Sub 0.49 | | 0 | 1 | 1 | | |
| 17445 | Boyd v. McCann, 10 Md. 118 | 83×1426 | These views dispose of the prayers offered on the part of the defendant. They show that the title of Wylie & Wilson being good, McCann had the right to repossess... The fact that the note was made in blank, authorized the plaintiff at any time, to fill it up with his own name as payee. We think the court properly rejected the plaintiff's second prayer. It rests on the insignificant fact that the jury should find the names of Wylie & Wilson were kept over the door after the dissolution of the copartnership, then the plaintiff was entitled to recover. The circumstance apart from all others, manifestly was not sufficient to authorize the recovery of the plaintiff. Judgment reversed and procedendo awarded. | The fact that a promissory note is payable in blank order, authorizes the holder to fill it up, at any time, with his own name as payee. | Can the holder fill in his own name when the name of another is in the check is left blank? | 009614.docx | LEGALEASE 00148731-LEGALEASE 00148732 | Condensed_SA_Sub 0.81 | | 0 | 1 | 1 | | |
| 17446 | Fish Chevrolet v. Vicars, 132 Ga. 30 741 | 83×1440 | In 15 C.J.S. Bills and Notes, s 125(d)(2), Page 750, we note the following applicable rule: "Where an indorsement of negotiable paper becomes the holder, he may strike out his own indorsement and all indorsements subsequent to his own, whether special or not (LSA § 3.1 7-40, 7-48)... the negotiable or a negotiable paper subsequent, whether the question was made payable in the order of "Myself [Ourselves]" and was endorsed by the maker in blank, it thereby became bearer paper, and pursuant to the item indorsement provision of LSA-R.S. 7-40, was therefore negotiable by delivery notwithstanding subsequent special endorsement thereon... It is significant that no record contained judicial act by the Credit Manager of GMAC evidencing the re-transfer and delivery of the note to the indorsee, was sufficient to strike its own endorsement which was not necessary to plaintiff's title. | Where an indorsement on a negotiable paper becomes the holder, can he strike out? | 010397.docx | LEGALEASE 00148418-LEGALEASE 00148419 | Condensed_SA_Sub 0.79 | | 0 | 1 | 1 | | |

3077

| | | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 17467 | Soldier Valley Sav. Bank v. Carrico Feed & Grain Co., 219 Iowa 614 | B31+142 | The great weight of authority supports the rule that where a check or other instrument is not payable to the order of a certain person or bearer it is not a negotiable instrument. Brannan's Negotiable Instrument Law (5th Ed.) p. 166; Thompson v. Cedar Rapids Nat. Bank, 127 Iowa, 786, 223 N. W. 517; Warren v. Scott et al., 32 Iowa, 22; Weisberg v. Chicago Lumber & Coal Co., 117 Wis. 350, 94 N. W. 33... [continued citations] | Check or other instrument not payable to the order of a certain person or bearer is not a "negotiable instrument". Code 1931, 55 9461, 9468, 9469, 9483. | Is it necessary for a negotiable instrument to be payable to bearer or order? | Bills and Notes Memo 614-06_15/980.docx | 9505/00329268-9505-00328269 | Condensed, SA, Sub 0.86 | | 839 | 1 | | | 1 |
| 17468 | Bright v. Offield, 81 Wash. 442 | B31+558 | It is said that these provisions run counter to sections 1 and 6 of the act (Rem. & Bal. Code, 3390, 3395)... | Rem. & Bal Code, 5 3395, subd. 2, held applicable to notes payable at a fixed period after a specified event, which is certain to happen, so the note is payable at all events at a time which may be accelerated on the happening of a contingency. | Is a negotiable instrument be payable on demand or at a determinable time? | 10547.docx | LEGAEASE-00548508-LEGAEASE-00548509 | Condensed, SA, Sub 0.87 | | 0 | 1 | | | 1 |
| 17469 | Gilbert v. Adams, 144 A.D. 864 | B31+472 | From the judgment entered thereon this appeal is taken; the record disclosing none of the evidence... | An instrument which acknowledges an indebtedness from the maker to a person named, and which promises to pay a specified sum to such person, "and in the event of my (maker's) death, I hereby authorize and direct the payment of the same on the fund of the estate," is a promissory note payable on demand, within Negotiable Instrument Law (Consol. Laws 1909, c. 38) 55 24, 26, declaring that an instrument is payable on demand when no time for payment is expressed, etc., the quoted clause being surplusage. | What is a promissory note? | 10560.docx | LEGAEASE-00548689-LEGAEASE-00548690 | Condensed, SA, Sub 0.21 | | 0 | 1 | | | 1 |
| 17470 | National Mktg. v. Cyprus Fisheries, 56 Misc. 3d 339 | B31+426 | "Bearer" means ... a person in possession of a negotiable instrument" (UCC 3-201[b]) and where an instrument is indorsed in blank, it may be negotiated by delivery alone (see UCC 3'201[1], 3'204 [2]). "An endorsement in blank specifies no particular endorsee and may consist of a mere signature", and it may be negotiated by delivery until a special endorsement is made (UCC 3'205 [2]). The note payable to bearer and may be negotiated by delivery alone and specially endorsed, UCC 3 -204[2] Federal Insur. Co. v. Wallenberg, 142 A.D. 3d 643, supra, 37 N.Y.S.3d 286). | Can a note be negotiated by delivery alone when it is endorsed in blank? | 10606.docx | LEGAEASE-00548416-LEGAEASE-00548417 | Condensed, SA, Sub 0.76 | | 0 | 1 | | | 1 |
| 17471 | Kansas Bankers Sur. Co. v. Ford Cty. State Bank, 184 Kan. 529 | B-301+04 | Most courts considering the question concerning the Uniform N.I.L are in accord that it is a complete codification of the law of commercial instruments governing all transactions it purports to cover. G.S.1949, 52-101 et seq. | Does Negotiable Instruments Law control in all cases to which it applies? | 10618.docx | LEGAEASE-00548648-LEGAEASE-00548649 | Condensed, SA, Sub 0.69 | | 0 | 1 | | | 1 |
| 17472 | Ballantis, Smith, 28 Mont. 387 | 361+1590 | "Be it enacted by the legislative assembly of the state of Montana: "Section 1. That section 1996, title XV, chapter 1, article I of the civil code of the state of Montana, be amended so as to read as follows... | Laws 1899, p. 124, amending Civ.Code, 5 3996, in as to allow negotiable instruments to contain a provision for reasonable attorney's fees, even if construed as offering notes given prior to its passage, is not objectionable as being retrospective, the only constitutional limitation as to retrospective legislation being article 5, 5 11, prohibiting ex post facto laws and laws impairing the obligation of contracts. | Do negotiable instruments contain a provision for attorney's fees? | 10362.docx | LEGAEASE-00548675-LEGAEASE-00548676 | Condensed, SA, Sub 0.07 | | 0 | 1 | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17473 | United States v. Barnett, 197 F.3d 138 | 63+(1) | We previously have held the section 201(c)(2) is not violated when prosecutors offer immunity to witnesses in exchange for their testimony. (We) practice is more engrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence." We have opted to protect the judicial process from the stain of perjury with other safeguards, including the prohibition on the use of perjured testimony, the requirement that the government disclose such arrangements, the opportunity for defense counsel to engage in vigorous cross-examination, and the instruction of the jury on the witness' bias and appropriate testimony. Because of these safeguards and because "the compensated witness and the witness promised a reduced sentence are indistinguishable in principle and should be dealt with in the same way,"(1) we hold that 18 U.S.C. " 201(c)(2) is not violated when prosecutors compensate witnesses." | Statute, which prohibits the giving of anything of value to a witness in exchange for testimony is not violated when prosecutors compensate informants for their cooperation? | Is 18 U.S.C. 201(c)(2) violated when prosecutors compensate informants for their cooperation? | 01293.docx | LEGAL042 00180330 LEGAL042 00180331 | Condensed, SA, Sub | 0.82 | | | 1 | 1 | 1 |
| 17474 | United States v. Rosen, 716 F.3d 691 | 63+(1) | Here, each of the crimes of conviction could be proven by evidence of an illegal quid pro quo agreement, which we have previously defined as "a government official's receipt of a benefit in exchange for an act he has performed, or promised to perform, in the exercise of his official authority." United States v. Garcia, 519 F.3d 134, 141 (2d Cir.2007); see N.Y. Pub. Off. Law " 73(5)(a) (prohibiting exchanges based on performance of a state legislator in his official duties). To establish the " "corrupt" intent necessary to a bribery conviction, the government must prove that the defendant had " "a specific intent to give or receive something of value in exchange for an official act." United States v. Alfisi, 308 F.3d 144, 149 (2d Cir.2002) (emphasis in original) (quoting United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 404-05, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999)), which generally involves an alleged "color" of official authority, "Garcia, 519 F.3d at 142 n. 4. We have made it abundantly clear that receipt of bribery and honest services fraud statutes that flow from a conviction of executing criminal "scheme(s) involving payment at regular intervals in exchange for specific official(s) acts as the opportunity to commit them arose, "even if the "opportunity to undertake the requested act has not arisen," id. at 147, and even if the payment is not exchanged for a particular act, but given with the expectation that the official will "exercise particular kinds of influence," United States v. Coyne, 4 F.3d 100, 114 (2d Cir.1993). "Once the quid pro quo has been established, "the specific transactions comprising the illegal scheme need not match up into factor," Garcia, 519 F.3d at 147. | Is the requirement of an intent to perform an act in exchange for a benefit, that is, the quid pro quo agreement, that distinguishes bribery from legal and illegal gratuities. 18 U.S.C.A. § 666(a)(2). | What is a quid pro quo agreement within the meaning of bribery? | 01500.docx | LEGAL042 00180315 LEGAL042 00180319 | Condensed, SA | 0.88 | | 0 | 1 | 1 | |
| 17475 | People v. Thorn, 176 Cal. App.4th 255 | 67+10 | Section 459 provides in pertinent part that "[e]very person who enters any house, room, apartment, tenement ... with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, "inhabited" means currently being used for dwelling purposes, whether occupied or not." (§ 459.) Section 460(a) provides, in turn, that "[e]very burglary of an inhabited dwelling house ... is burglary of the first degree; [¶] all other kinds of burglary are of the second degree." (§ 460, subd. (a),(b).) A conviction for first degree burglary thus requires "entry" of an "inhabited dwelling house" with the intent to commit a felony. (" 459, 460.) | In determining whether a structure is part of an inhabited dwelling for purposes of first degree burglary statute, the essential inquiry is whether the structure is functionally interconnected with and immediately contiguous to other portions of the house. West's Ann.Cal.Penal Code § 460. | Is burglary of an inhabited house first degree burglary? | Burglary - Memo 202-RK_5844.docx | ROSS 000321529 ROSS 000321524 | SA, Sub | 0.57 | | 0 | | 1 | |
| 17476 | State ex rel. Pulskamp v. Board of Commissioners of Jefferson Cty., 119 Ohio St. 504 | 260+78 (12) | When one claims to have paid an illegal assessment, he cannot recover the amount so paid unless the payment was made under a protest against the validity of the assessment, a mere complaint against the validity of the assessment is not enough ... In order to make payment compulsory, protest against the validity of the assessment is not enough. There must exist some coercion or compulsion operating upon the payer, some coercion or duress which overcomes his will, to constitute the payment an involuntary one. Where it is made necessary in order to avoid the legal duty resident to tax collection. Whitbeck v. Minch, 48 Ohio St. 210, approved and followed. | Can an alleged illegal assessment be recovered unless involuntarily paid? | Highways - Memo 336-DB.docx | ROSS 000321784 | Condensed, SA, Sub | 0.79 | | 0 | 1 | 1 | |
| 17477 | Davis v. Lawler, 1 SD So. 2d 254 | 260+78 (12) | The payment of royalty under an oil, gas and mineral lease, as well as of the rents prescribed by this instrument, is the payment of rent and it is not the payment of a price for the oil or gas rights as if they were sold. Miltzow v. Collection Bureau, Inc., 171 Cal. App.2d 773, 375 So.2d 24, 24 (2d), 13,176 (3), No. 46, 82 A.L.R. 1264, Lograv. State ... | Payment of royalty under an oil, gas and mineral lease is payment of rent and not the payment of a price for oil or gas rights as if they were sold. | Is the payment of royalty the payment of rent? | Mines and Minerals - Memo 83516 - C - CSS_5776F.docx | ROSS 000379814 | Condensed, SA | 0.64 | | 0 | 0 | 1 | |
| 17478 | Hunter v. Craig, 132 Nev. Adv.Op. 22 | 30+206 | "Inherent judicial powers stem from two sources; the separation of powers doctrine, and the power inherent in a court by virtue of its sheer existence." Id. at 180 " 301? 7 (citing Halverson v. Hardcastle, 123 Nev. 245, 262, 163 P.3d 428, 440 (2007)). Under the separation of powers doctrine, "this inherent power to administer its affairs, which includes rule-making and other incidental powers reasonable and necessary to carry out the duties required for the administration of justice." Goldberg v. Eighth Judicial Dist. Court, 93 Nev. 614, 615, 572 P.2d 521, 521 (1977) (citations omitted). "And thus, "a court must only exercise its inherent authority under this doctrine to an action for want of prosecution "[t]o present undue delay and control court calendars," Moore, 90 Nev. at 393, 528 P.2d at 1020, because such prevention and control is necessary for the courts to be able "to carry out the duties required for the administration of justice," Goldberg, 93 Nev. at 615, 572 P.2d at 521.) | When reviewing the dismissal of an action for want of prosecution under the district court's inherent authority, in considering the conduct of the parties, the appellate court considers whether the conduct of the parties is conducted in accordance with a reasonable and good faith belief that no court action was necessary. | Is the payment of royalty the payment of rent? | 01503A.docx | LEGAL043 00148143 LEGAL043 00148144 | Condensed, SA, Sub | 0.72 | | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17479 | In re Bernard L. Madoff Inv. Sec. LLC, 515 B.R. 117 | 308+181 | Kirschner, 912 N.Y.S.2d 508, 938 N.E.2d at 952; accord Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC ), 721 F.3d 54, 64 (2d Cir.2013), cert. denied, sub nom. Picard v. HSBC Bank PLC, U.S., 134 S.Ct. 2895, L.Ed.2d (2014). Finally, "any harm from the discovery of the fraud"rather than from the fraud itself"does not bear on whether the adverse interest exception applies." Kirschner, 912 N.Y.S.2d 508, 938 N.E.2d at 953. If the company benefits while the fraud remains a secret, the adverse interest exception will not apply. Kirschner, 912 N.Y.S.2d 508, 938 N.E.2d at 953.18 | Under New York law, if the company benefits while the fraud remains a secret, the adverse interest exception will not apply. | Does the Adverse Interest rule apply if there is a benefit? | 041366.docx | LEGALEASE-00148554-LEGALEASE-00148555 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 17480 | Levy v. Brown, 6 Vet. App. 23 | 34+101 | It is well settled that veterans have no contractual or vested right to an initial receipt of VA benefits. VA benefits involve no agreement of the parties and "may be redistributed or withdrawn at any time in the discretion of Congress." Ziviak v. United States, 411 F.Supp. 416, 422 (Mass.Dist.Ct.1976) (quoting Lynch v. United States, 292 U.S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434 (1934)), aff'd, 429 U.S. 801, 97 S.Ct. 36, 50 L.Ed.2d 64 (1976). | Department of Veterans Affairs (VA) benefits involve no agreement of parties and may be redistributed or withdrawn at anytime in the discretion of Congress. | Can Veterans Administration (VA) benefits be redistributed or withdrawn at any time? | 008797.docx | LEGALEASE-00149778-LEGALEASE-00149779 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 17481 | Cantrell v. Shulkin, 28 Vet. App. 382 | 34+101.1 | To the extent that Mr. Cantrell requests that the Court define the term employment "in a protected environment" for TDIU purposes, see Appellant's Br. at 15; Reply Br. at 1"2, we decline to do so at this time. "It is VA's responsibility to define the terms contained within its regulations," Ortiz"Valles, 28 Vet.App. at 72, and, as we have done in the past when reviewing previously undefined regulatory terms, we will give VA the first opportunity to do so. See, e.g., id. (declining to define the term "substantially gainful employment" in " 4.16 and remanding with encouragement to VA to do so); Moore v. Derwinski, 1 Vet.App. 356, 359 (1991) (same); Ferraro v. Derwinski, 1 Vet.App. 326, 333 (1991) (same); cf. Gray v. McDonald, 27 Vet.App. 313, 326"27 (2015) (noting VA's "discretionary authority to define the scope of [a] presumption" and declining "to usurp the Agency's authority and impose its own line"); see also Hood, 4 Vet.App. at 304 ("The Board is statutorily mandated to provide a statement of reasons or bases for its decision. If the Board is unable to do so because of a regulation's syntax, then it may be necessary for the Secretary to change that regulation by amendment or interpretation."). | It is the responsibility of the Department of Veteran's Affairs (VA) to define the terms contained within its own regulations. | Is it the responsibility of the Veterans Administration (VA) to define the terms contained within in its regulations? | 008805.docx | LEGALEASE-00149786-LEGALEASE-00149787 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17482 | United States v. Guar. Tr. Co. of New York, 293 U.S. 340 | 8.30E+10 | Second. The Government contends that although the title to the check may have passed from the payee to the Trust Company, it acquired, as against the drawer, no right either to enforce payment or to retain the proceeds paid. The argument is that, since the check was both drawn and payable within the District, the obligation arising therefrom is governed by its laws; that under the law of the District the drawer agreed to pay the check only on the order of the payee; and that since there was no such order and the payment made was in ignorance of the forgery, the money may be recovered as having been paid under a mistake. The law of the District determines the formal and essential validity of the check, the interpretation of the contract, the incidents of the obligation. | Law of District of Columbia determines formal and essential validity of check drawn and payable therein, interpretation of contract, and incidents of obligation. | Which law governs a check? | 009657.docx | LEGALEASE-00149671-LEGALEASE-00149672 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 17483 | Hurlbut v. Quigley, 180 Cal. 265 | 83E+629 | "A promise, made in the singular number, but executed by several persons, is presumed to be joint and several." Civ. Code, " 1660. See, also, Farmers' Exchg. Bank v. Altura, See, also, Farmers' Exchg. Bank v. Altura, Neg. Inst. " 94; Maiden v. Webster, 30 Ind. 317; Salomon v. Hopkins, 61 Conn. 47, 23 Atl. 716; Monson v. Drakeley, 40 Conn. 559, 16 Am. Rep. 74; Hemmenway v. Stone, 7 Mass. 58, 5 Am. Dec. 27. "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." Civ. Code, " 1659. | The words above indorsers' name, "I hereby waive presentment," etc., are governed by Civ.Code, S 1660, declaring that a promise made in the singular number, but executed by several persons, is presumed to be joint and several. | When is a promise presumed to be joint and several? | Bills and Notes - Memo 764 -IS_58515.docx | ROSS-003319145 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 17484 | Rogers v. Durant, 140 U.S. 298 | 83E+741 | Again, we are of opinion that checks might properly be held comprised in the word "orders," as associated with bills of exchange, rather than otherwise. Orders are frequently a kind of informal bill of exchange, and a check is, of course, an order for the payment of money; and we do not consider that by any reasonable construction checks should be included in the term "other evidence of indebtedness in writing," as used in the first section, rather than in "bills of exchange" or "orders," as used in the second.Counsel ingeniously argue that the first section specified obligations of a higher class than those mentioned in the second, and that checks, as contradistinguished from orders, belonged to the former; but it is difficult to perceive why checks should be classified with bonds, judgments, and promissory notes, rather than with bills of exchange, or why the simple contract or evidence of indebtedness in writing, of the first section should necessarily be regarded as of higher dignity than a draft or an order for money, the fourth plea was inaccurate in its reference to a former statute of limitations, approved February 10, 1849, but that is immaterial; and, stripped of surplusage, it averred that the cause of action set forth in each of the twenty special counts, as well as the common counts, did not accrue within five years next before the bringing of the suit. The court properly held that, such being the fact, the drafts and checks were barred, and, as there was no pretense that there was any other cause of action, the judgment was right, and it is affirmed. | Act Ill. Nov. 5, 1849, p. 45, provides in section 2 that "all actions founded upon * * * bills of exchange, orders," etc., "shall be commenced within five years next after the cause of action shall have accrued." Held, that this section includes checks, and that they do not fall within the terms, "other evidence of indebtedness in writing," as to which the limitation is fixed by section 1 at 16 years. | Is order a bill of exchange? | 009659.docx | LEGALEASE-00149682-LEGALEASE-00149683 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 17485 | Parke State Bank v. Akers, 659 N.E.2d 1031 | 172H+517 | The present possessory interest created in Ardith the present right to hold the certificates in her possession. Ardith also had a second important interest in the certificates of deposit. Certificates of deposit are contracts, and can create third-party beneficiary rights in those parties identified with rights of survivorship. In Re Estate of Fanning (1974), 161 Ind.App. 380, 315 N.E.2d 718, 720"21. Because the certificates identified Ardith as holding a "right[ ] of survivorship," Ardith had a contingent beneficial interest as a donee-beneficiary in the certificates of deposit. Fanning, 315 N.E.2d at 720. | Certificates of deposit are contracts and can create third-party beneficiary rights in those parties identified with rights of survivorship. (Per Selby, J., with one Judge concurring and one Judge concurring in the result.) | Are Certificate of Deposit (CD) considered to be Contracts? | 009670.docx | LEGALEASE-00149738-LEGALEASE-00149739 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,973 | 22,876 | 9,029 |
| 17486 | Curtis v. Davidson, 215 N.Y. 395 | 83T+442 | While an indorser is bound to secondarily liable, the holder of a note may sue both maker and indorser, or either, and an indorser is absolutely liable; the maker's primary being no defense… | Can the holder of a note sue both maker and indorser, or either, and … | Bills and Notes Memo 706-ANM_5822.docx | ROSS 000281567 ROSS-000281568 | Condensed, SA, Sub 0.72 | | 0 | | | | |
| 17487 | Odda Asset Mgmt. v. Barclays Bank PLC, 19 N.Y.3d 584 | 108H+6 | Foremost, there is generally "no fiduciary obligation in a contractual arm's length relationship between a debtor and a note-holding creditor" [see LNV Partners LLC v. Exclero Res., 64 A.3d 56 57 60, 930 N.Y.S.2d 641 (1st Dept 2009); 360 Bank v. Orleans, 7 A.3d 162 384, 274 777 N.Y.S.2d 62 (1st Dept 2004)] … | A debtor and creditor have no special relationship of confidence and trust, and the relationship is generally controlled by contract. | 01417.docx | LEGALEASE-00149859 LEGALEASE-00149860 | Condensed, SA | | 0.87 | | | | |
| 17488 | In re Anthem, 129 F. Supp. 3d 487 | 135+1 | As the Ninth Circuit has explained, "the diversity jurisdiction statute, 28 U.S.C. \* 1332, speaks of citizenship, not of residency." Kantor v. Wernor ("Lantor Co.," 265 F.3d 853 857 (9th Cir.2001). A "natural person's state citizenship is …determined by her state of domicile, not her state of residence." Id. "A person's domicile," in turn, "is her permanent home, where she resides with the intention to remain or to which she intends to return…" and "[a] person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. see Miss. v. Willson v. United States, 241 2 d 159, 163 (9th Cir.1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often be hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth."). | A person's domicile is her permanent home, where she resides with intention of remaining or to which she intends to return. | 01420.docx | LEGALEASE-00149127 LEGALEASE-00149128 | Condensed, SA, Sub 0.87 | | 1 | | | | |
| 17489 | Kiruma Highway Dist. v. Oregon Short Line R. Co., 298 F. 431 | 360+90 | The appellants contend that there is a difference between a general tax and a local assessment; that the former is not based upon special or local benefits, that this is a tax, and not a special assessment, and that the power of taxation. In every nature, acknowledges no limits and involves the power to destroy government of the state but for the power possessed by the people of the entire district are interested in the construction and improvement of the public highways of the district, and it is used for a special purpose, to wit, the assessment of property within the district for the sole and only purpose of improving the highways within the district." | A highway district in Idaho is not a political municipality created for governmental purposes, but its powers are specially limited to the construction of highways for the benefit of the inhabitants and property therein. | 01863.docx | LEGALEASE-00149631 LEGALEASE-00149632 | Condensed, SA, Sub 0.86 | | 0 | | | | |
| 17490 | Macon Cty. v. City of Oglethorpe, 229 Ga. 487 | 360+64 | Where a municipal corporation is created, it becomes vested with jurisdiction over the territory within its corporate limits. Counties have no right to construct roads within a municipality without its permission. Almand v. Atlanta Consolidated S. Ry. Co. 206 Ga. 417, 34 S.E. 6; Board of Commissioners of Sumter County v. McIver, 191 Ga. 145 (16 S.E. 2d), 14 Ga. 144, 81 S.E. 465; Wood v. Shore, 160 Ga. 173, 127 S.E. 145. This rule does not apply to road being constructed by direction of the State. Lee County v. Walker County, 221 Ga. 323 (16, 131, 1, 127 State Highway Dept. v. MacDonald, 221 Ga. 312 (16), 144 S.E. 2d 363, See Code Ann. s 95-1504, 95-1716. | Injunction lay to prevent county from constructing road through territory within corporate limits of municipality without consent of municipality. | Highway Memo 223-ANM_5817.docx | ROSS 000280684 ROSS-000280685 | Condensed, SA, Sub 0.79 | | 0 | | | | |
| 17491 | The Invincible, 201 U.S. 591 | 221+211 | The Bellona, repealed or (this, how is, that the power to prosecute, convict, and punish offenders against either of the repealed acts, remains as if the repealing act had never been passed. It does not create a power to prosecute but allows it when before existing. Now it must be admitted that an offense against a temporary act cannot be punished after the expiration of the act, unless a particular provision be made by law for that purpose. | Can an offense against a temporary statute cannot be punished after the expiration of the act? | Neutrality Law - Memo 12 - RK_58645.docx | ROSS 000281342 ROSS-000281343 | Condensed, SA, Sub 0.51 | | 0 | | | | |

3081

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17492 | Gayon v. McCarthy, 252 U.S. 171 | 221+212 | The word "retain" is used in the statute as an alternative to "hire" and means something different from the usual employment with payment in money. One may be retained, in the sense of engaged, to render a service as effectively by a verbal as by a written promise, by a prospect for advancement or payment in the future as by the immediate payment of cash. As stated long ago by a noted Attorney General, in an opinion dealing with this statute: "A party may be retained by verbal promise or invitation for a declared or known purpose. If such a statute could be evaded or set at naught by elaborate contrivances to engage without enlisting, to retain without hire, to invite without recruiting, it would be idle to pass acts of Congress for the punishment of this or any other offenses." | Cr.Code, S 10, as amended by Act May 7, 1917, 18 U.S.C.A. S 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different from the usual employment with payment in money; and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. | What is the meaning of the term retain? | Neutrality Laws - Memo 31 - ANM_58558.docx | ROSS-003307545-ROSS-003307546 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 17493 | Shafer v. Randolph, 99 Pa. 250 | 289+472 | It is true this was the partnership of an experiment; of a single adventure; yet for all this it might have been not the less a partnership: Sims v. Willing, 8 S. & R. 103.More than this, there may not, as between the defendants and their associates, have been a partnership in fact or intention, and yet, as to third persons, they may be held as such. For, as was said in Kirk v. Hartman, 13 P. F. Smith, 97, where one holds himself out, or knowingly suffers himself to be held out, as a partner, on the faith of which others give credit to the firm, he will be held, though, in fact, he is not a partner. And in Johnston v. Warden, 3 Watts 101, it was held, that where the defendants had represented themselves as partners, and had been trusted as such, they must be bound as partners. In the case in hand there was certainly evidence to the effect that the defendants represented themselves to Randolph and others as partners, and if this was believed by the jury, as it seems to have been, then as partners they were properly held. Such being the case, it is obvious that the answer of the learned judge, to the point put by the defendants' attorney, did them no harm, though doubtless the better way would have been to have negatived it outright, and without qualification. | One who holds himself out or knowingly permits himself to be held out as a partner, on the faith of which others give credit to the firm, will be held liable as such. | Can a person who in reality is not a partner but holds himself out as a partner be considered to be one? | 022548.docx | LEGALEASE-00149889-LEGALEASE-00149890 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 17494 | Swiren v. C.I.R., 183 F.2d 656 | 289+558 | In this connection we have given due weight to the factor that under Illinois law a partnership interest, such as taxpayer sold, is property distinct and separate from the partnership or underlying assets. Ill. Rev. Stat. (1949), c. 106-1/2, Ill. Uniform Partnership Act, Secs. 24, 25 and 26. For example, Sec. 26 of the act provides: "Interest of partner. A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." | Under Illinois law, a partnership interest is property distinct and separate from the partnership or underlying assets. S.H.A.Ill. ch. 1061/212, SS 24-26. | Is partnership interest distinct from the partnership assets? | 022562.docx | LEGALEASE-00149897-LEGALEASE-00149898 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 17495 | Crouch v. Bowman, 22 Tenn. 209 | 289+639 | The jury found a verdict against all the defendants, upon which judgment was rendered, and from which Crouch & Emmerson appealed in error to this court. The question is whether the issue on the plea of non est factum was properly found by the jury against Crouch & Emmerson. Every partner is an agent of the partnership, and may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind all the members of the firm. But in order to do this he must act in the name of the firm, and in signing notes, bills, etc., he must subscribe the name of, or style by which they are known as a firm, and in which they do business. Judge Story says (Com. Part., sec. 102): "All such contracts and engagements, acts and things, he has authority to make or do in the name of the firm; and indeed to bind the firm, they must ordinarily be made and done in the name of the firm, otherwise they will bind the individual partner only, who executes them as his own private acts, contracts or things." Pothier says (Story Part., sec. 102): "Whatever may be the authority of a partner, in order that a debt contracted by him should bind his partners, it is necessary that it should be contracted in the name of the firm." Mr. Erskine says (Ersk. Inst., B. 3, Tit. 3, sec. 20. See Story Part., note 2, p. 154): "According to our present practice, the partners in private companies generally assume to themselves a firm name, proper to their own company, by which they may be distinguished in their transactions; and in all deeds subscribed by this name of distinction, every partner is, by the nature of copartnery, understood to be intrusted with a power from the company, of binding them. Any one partner, therefore, who signs a bill or other obligation, by the company's firm, obliges all the partners; but where he subscribes a deed by his own proper subscription, the creditor, who followed his faith alone in the transaction, hath no action against the company, unless he | Every partner is the agent of the partnership, may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind the members of the firm; but in order to do this he must act in the name of the firm and in signing notes, bills, &c. he must subscribe the name or style by which they are known as a firm, and in which they do business. | Does an act by a partner have to be done in the name of the firm in order to bind the firm? | 022576.docx | LEGALEASE-00149905-LEGALEASE-00149906 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 17496 | Redman v. Kelty, 795 A.2d 684 | 307A+581 | Durham v. District of Columbia, 494 A.2d 1346, 1350 (D.C.1985). Lesser sanctions must be considered before dismissal of the complaint is justified. Id. We have also stated that dismissal with prejudice is an appropriate sanction only upon "clear evidence of deliberate delay," and that courts have discerned "an abuse of discretion in a trial court's dismissal with prejudice where the only evidence of intentional delay is one instance of failure to appear." LaPrade v. Lehman, 490 A.2d 1151, 1155 (D.C.1985). | Lesser sanctions must be considered before dismissal of the complaint is justified, as the sanction for lack of prosecution. Civil Rule 41(b). | Is lesser sanctions considered before dismissal of the complaint justified? | Pretrial Procedure - Memo # 7965 - C - SS_58327.docx | ROSS-003292257-ROSS-003292258 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 17497 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 244 | 307A+581 | Our trial courts have the inherent authority to dismiss cases for want of prosecution as a means of controlling the court's docket and ensuring the "orderly expedition of justice." Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986). Rule 41(b) of the Mississippi Rules of Civil Procedure provides for the dismissal of a case upon the defendant's motion for dismissal for want of prosecution. "What constitutes failure to prosecute is considered on a case-by-case basis." Cox v. Cox, 976 So.2d 869, 874 (14) (Miss.2008) (citing Am. Tel. and Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 181 (12) (Miss.1998)). A Rule 41(b) dismissal is reviewed under an abuse of discretion standard. Id. at 874 (11). | What constitutes failure to prosecute as grounds for dismissal is considered on a case-by-case basis. Rules Civ.Proc., Rule 41(b). | Is failure to prosecute considered on a case-by-case basis? | 036380.docx | LEGALEASE-00149193-LEGALEASE-00149194 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 13498 | Lottsa & Krieg Tr. v. Wirtig, DOSO-Cs 99, Dist Ct NE 198 | 307A+581 | Rule 41(b) permits a defendant to move for dismissal of an action for the plaintiff's failure to prosecute. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of cases and to avoid congestion in the calendars of the District Courts. | What constitutes failure to prosecute, for purposes of motion for involuntary dismissal, is context dependent on a case-by-case basis. Rules Civ.Proc., Rule 41(b). | Is failure to prosecute considered on a case-by-case basis? | Pretrial Procedure - Memo #7887 - C - SU.docx | LEGALEASE 00039342 LEGALEASE 00039343 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 | 1 |
| 13499 | State, Dep't of Trans. v. Dev. v. Case DO & Tire Co., 822 So. 2d 629 | 307A+581 | More generally, we note the following well-established rule of law regarding abandonment. Louisiana courts construe abandonment statutes liberally. | Abandonment statutes are intended to dismiss those actions in which a plaintiff's inaction has clearly demonstrated his abandonment of the case, and not to dismiss those actions in which a plaintiff has clearly demonstrated that he does not intend to abandon the action. | What is an abandonment statute intended to do? | Pretrial Procedure - Memo # 8059 - C - NG_SA143.docx | ROSS-003231544 ROSS-003231545 | Condensed, SA 0.68 | | 1 | 1 | | 1 | 1 |
| 13500 | Grimes v. D.C., Bus. Disclosure, Inc., 89 A.3d 107 | 302+8(1) | We now turn to the merits of the trial court's grant of Vitamin's motion to dismiss. | Pleadings that are no more than conclusions are not entitled to the assumption of truth. | Are pleadings that are no more than conclusions not entitled to the assumption of truth? | 019903.docx | LEGALEASE 00150043 LEGALEASE 00150044 | Condensed, SA, Sub 0.8 | | 0 | 1 | | | 1 |
| 13501 | Teip of Wayne v. Mesarosla, 789 F. Supp. 1305 | 184+59(1) | Although the New Jersey Supreme Court has not ruled on the issue of whether an aider and abettor may be held liable under civil law... | Under New Jersey law, attorney who was jointly liable as aider and abettor to breach of fiduciary duty claim... | Can participants in a scheme that involves an agents breach of duty be jointly held liable? | 041376.docx | LEGALEASE 00149931 LEGALEASE 00149932 | Condensed, SA, Sub 0.7 | | 0 | 1 | | 1 | 1 |
| 13502 | State v. Daughtry, 340 N.C. 488 | 352H+49 | Although Defendant further contends the trial court erred by failing to instruct on diminished capacity as a lesser-included defense... | First-degree sexual offense is not specific intent crime; intent to commit crime is inferred from commission of act. | Is first-degree sexual offense a specific offense crime? | 042994.docx | LEGALEASE 00149800 LEGALEASE 00149801 | Condensed, SA 0.82 | | 0 | 1 | | 0 | 1 |
| 13503 | Knudtson v. Citizens' Nat. Bank & Tr. Co. of Sioux Falls, 62 S.D. 71 | 371+270.3 | It seems to be universally held that, without authority of law, taxes do not draw interest... | Taxes are not debts, but liabilities created by statute and without authority of law are do not draw interest. | Do taxes draw interest? | Taxation - Memo # 847 - C - LJ_SM73.docx | ROSS-003278893 ROSS-003278894 | Condensed, SA, Sub 0.84 | | 0 | 1 | | 1 | 1 |
| 13504 | Citizens' Tax. & Loan Ass'n of Topeka, 57 U.S. 555 | 371+2001 | Nor is it taxation. A "tax," Webster's Dictionary says, "is a rate or sum of money assessed on the person or property of a citizen by government..." | A "tax" is a rate or sum of money assessed on the person or property of a citizen by government for the use of the nation or state. "Taxes are burdens or charges imposed by the legislature upon persons or property to raise money for public purposes. | What is the purpose for taxation? | 043014.docx | LEGALEASE 00189386 LEGALEASE 00189387 | Condensed 0.14 | | 0 | 0 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17505 | People v. Casciaro, 2015 IL App (2d) 131291 | 3.77E+06 | Intimidation is a specific-intent crime. People v. Randle, 38 Ill.App.3d 720, 721, 348 N.E.2d 488 (1976). "Specific intent" designates a special mental element that is required above and beyond any mental state required with respect to the actus reus of the crime.3 People v. Robinson, 379 Ill.App.3d 679, 684, 318 Ill.Dec. 298, 883 N.E.2d 529 (2008). Specific intent is made up of two elements: the defendant must have (1) intended to engage in certain acts that constitute the actus reus, and (2) the defendant must have performed those acts with an intended criminal result. People v. Verkruysse, 261 Ill.App.3d 972, 975, 203 Ill.Dec. 322, 639 N.E.2d 881 (1994). Therefore, intimidation requires (1) that a threat be communicated (2) with the specific intent to coerce another to do something against his will. People v. Peterson, 306 Ill.App.3d 1091, 1099"1100, 240 Ill.Dec. 164, 715 N.E.2d 1221 (1999); People v. Hubble, 81 Ill.App.3d 560, 563, 37 Ill.Dec. 189, 401 N.E.2d 1282 (1980). The purpose of the intimidation statute is the prohibition of making threats intended to compel a person to act against his will. Peterson, 306 Ill.App.3d at 1099, 240 Ill.Dec. 164, 715 N.E.2d 1221. The intent to coerce the victim can be inferred from the defendant's statements and the surrounding circumstances. Verkruysse, 261 Ill.App.3d at 975, 203 Ill.Dec. 322, 639 N.E.2d 881. | The purpose of the intimidation statute is the prohibition of making threats intended to compel a person to act against his will. S.H.A. 720 ILCS 5/12-6(a)(1). | What is the purpose of the intimidation statute? | "Threats, Stalking, and Harassment - Memo #6 - C - LB_58579.docx" | ROSS-003281389-ROSS-003281390 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 17506 | Envtl. Prot. Info. Ctr. v. Dep't of Forestry & Fire Prot., 43 Cal. App. 4th 1011 | 411+5 | A leading and recent case exemplifying the rule of judicial deference to an administrative agency's interpretation of its "own" law involves both the same law and same agency as is involved here. That case is Public Resources Protection Assn. v. Department of Forestry & Fire Protection (1994) 7 Cal.4th 111 [27 Cal.Rptr.2d 11, 865 P.2d 728] (hereafter PRPA). At issue there was the approval by CDF of a particular THP filed by Louisiana Pacific Corporation and, more specifically, whether and to what extent the trial court could rely upon regulations adopted by the BOF purporting to interpret and apply section 4583. The Supreme Court expressly noted the authority provided in the statute for the regulations at issue both in that and the instant case: " The Legislature has vested in the board the authority to adopt forest practice rules and regulations 'to assure the continuous growing and harvesting of commercial forest tree species and to protect the soil, air, fish, and wildlife, and water resources ....' (" 4551.) It has expressly granted to the board the power to continuously review and revise those rules (" 4553), ..." (7 Cal.4th at p. 120.)It stated the general rule to be as follows: "[I]t is the board, and not the courts, that establishes forest policy. ["] ... [I]n the absence of an ambiguity, we will uphold the board's rules as they are written unless we find them to be beyond the board's authority." (Ibid.) | Rule of construction, expressio unius est exclusio alterius, that where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed, applied in considering challenge to Board of Forestry (BOF) regulation excusing persons owning three acres or less of property from having to comply with timber harvest plan (THP) requirements of Forest Practice Act, legislature had directly and in detail dealt with what BOF may do regarding authorizing exemptions to THP requirement and broad general grant of authority did not give BOF authority to materially broaden exemptions by regulation. West's Ann.Cal.Pub.Res.Code SS 4551, 4551 et seq., 4584; Cal.Code, Regs. title 14, S 1038, subd. (c). | Is it the board or the courts that establishes forest policy? | 047567.docx | LEGALEASE-00149720-LEGALEASE-00149721 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 17507 | W. Virginia Div. of Izaak Walton League of Am. v. Butz, 522 F.2d 945 | 411+8 | Turning to that part of Section 476 which requires that the timber " before being sold, shall be marked and designated", we find the statutory language to be simple and unambiguous. The term "marked" in the context of forestry is well defined and means "selection and indication by a blaze, paint or marking hammer on the stem of trees to be felled or retained". "Designate", on the other hand, is a much broader term and merely means to "indicate".The two words are not synonymous or interchangeable and in using them conjunctively it is evident that Congress intended that the Forest Service designate the area from which the timber was to be sold and, additionally, placed upon the Service the obligation to mark each individual tree which was authorized to be cut. | As used in Organic Act provision that timber in national forest, before being sold, shall be marked and designated, "marked" means selection and indication by a blaze, paint or marking hammer on the stem of trees to be felled or retained, and "designate" means to indicate, and as the words are not synonymous, forest service must not only designate that area from which timber is to be sold, but mark each individual tree authorized to be cut. 16 U.S.C.A. S 476. | What is the meaning of the term marking in forestry? | 047590.docx | LEGALEASE-00149571-LEGALEASE-00149572 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 17508 | W. Virginia Div. of Izaak Walton League of Am. v. Butz, 522 F.2d 945 | 411+7 | The Service further contends that in treating "mature" trees as only those which are physiologically mature, the court ignored other accepted silvicultural tests of maturity. Here again we agree with the district court that the language of the statute means physiological maturity rather than economic or management maturity. A treeisphysiologicallymature when because of age and condition its growth begins to taper off or it loses its health and vigor, and while age and size are indicators of physiological maturity, they are not exclusively so. From the economic viewpoint a tree is considered mature when it has the highest marketable value, and management maturity is defined as the state at which a tree or stand best fulfills the purpose for which it was maintained, e. g., produces the best supply of specified products. We think unquestionably that in using the word "mature" Congress was referring to physiological maturity. This appears to be the meaning of "mature" in forestry terminology today, and was the accepted meaning of the word at the time the Organic Act was passed by the Congress. | As used in provision of Organic Act authorizing secretary of agriculture to designate for sale the dead, matured or large growth of trees found upon national forests, the phrase "large growth of trees" requires that each individual tree be identified as "large," and does not merely signify a sizeable stand or grouping of trees, and the word "mature" means physiological maturity rather than economic or management maturity. 16 U.S.C.A. S 476. | Does mature tree or timber refer only to physiological maturity? | 047592.docx | LEGALEASE-00149579-LEGALEASE-00149580 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 17509 | Newman v. City of Indianola, 232 N.W.2d 568 | 371+2060 | It is our view the method employed by the City for recovering the cost of the extension from Newman was a legal and valid method permitted under that portion of section 397.27 which authorizes a city to assess a reasonable rate fixed by ordinance upon each tenement or other place supplied with light or power. The method employed was not an attempt to levy a tax. There is a distinction between "taxes' and "assessments." * * * A tax is a charge to pay the cost of government without regard to special benefits conferred.' In Re Trust of Shurtz, 242 Iowa 448, 454, 46 N.W.2d 559, 562. | There is a distinction between a "tax" and an "assessment"; a "tax" is a charge to pay the cost of government without regard to special benefits conferred. | What distinguishes tax from assessment? | 045979.docx | LEGALEASE-00150256-LEGALEASE-00150257 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 17510 | Bank of Danielsville v. Seagraves, 257 Ga. App. 135 | 83T+483 | Was there an effective assignment of the notes prior to November 1, 1979? Assignment of note means transfer of the title to the instrument so that the recipient may bring an action thereon. Reece v. Reece, 231 Ga. 373(2), 29 S.E. 44, McCormick v. Kein, 105 Ga. 512, 517, 33 S.E. 171, 172, 133(2), 33 S.E.2d 338, 341(6) & Note "313. As noted above, the so-called assignment on November 1, 1979 was ineffective as of the promissory notes and there was no delivery of the notes either actually or constructively. The subsequent "assignment" of the note on November 1, 1979 was subject to the prior knowledge of the fact that these notes had been received in the action between the Bank and Seagraves and the assignee took the notes such interest as the assignor had subject to all defenses available against the assignor. 11 Am.Jur2d 338, 396, Nills & Notes "313, 373. Hartford was aware of the entire action from that it did not have possession of the notes and when they received a copy of the "consent" order between the parties advised the Bank that they had knowingly refused to enter into the action against Seagraves regarding the notes because of the pending action against Hartford the Bank. Under the circumstances there was no effective assignment of the legal title to these notes prior to November 1, 1979. See Fabbuser Bank & Trust Co. v. Rainer, 125 Ga.App. 261(1), 187 S.E.2d 320, 216 371. Assignment "5. | Assignment of note means transfer of title to instrument so that recipient may bring an action thereon. | What is meant by assignment of a note? | 009050.docx | LEGALEASE 00151000 LEGALEASE 00151001 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | 1 |
| 17511 | Latham v. Brown, 16 Iowa 118 | 97C+211 | It is conceded that the sureties would be liable if their principal had failed to account for money which had gone into his hands, as collecting magistrate, but they urge, that the money delivered was not in his account for those in action, placed in his hands for collection, in his capacity as justice of the peace, is not readily perceived. It is, in our opinion, as much the duty of the law to guard against the mischief of the one as the other. Certainly the nature of the wrong is the same in both cases, whilst the extent may be the same in the injured party. With regard to the question of the measure of damages, or whether the judgment of the court was not excessive, under the circumstances detailed in the evidence, we find that the same was about for the amount of the face of the notes (not indubitably judgment, or collected), in the hands of Brown, when he demanded was made, and this is prima facie the measure of damages, where notes, or choses in action have been improperly converted. See Sedg. Meas. Dam., 480; 2 Pars. Cont., 471; 1 Cow. 240; Kyd v. Lord, 2 Bosw. 241; Ramsey v. Ramey, 8 [?] Hut that, by these same authorities, it is competent for the defendant, in mitigation of damages, to show the insolvency of the makers of the notes, payment in whole or in part, or any other facts tending directly to reduce their value. And this appears, to some extent, in the testimony of Brown himself, and it was all the testimony introduced on trial upon this subject. It would be difficult to say that the judgment was not clearly against the weight of evidence. | The amount of promissory notes delivered to a justice of the peace for collection, and wrongfully converted to his own use, is prima facie the measure of damages for such conversion; but the insolvency of the makers may be shown in mitigation of damages. | Is the amount of the face value of notes or choses in action which have been improperly converted the measure of its damages? | Bills and Notes - Memo 429-DB.docx | LEGALEASE 00080586 LEGALEASE 00080587 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17512 | Gibson v. Spikes, 143 Ark. 270 | 200+211 | It is next insisted that the Legislature had no power to validate and confirm the assessments which had theretofore been made by the commissioners, unless the assessment was so palpably arbitrary, that the power to condemn and validate it. The Legislature had the power in the first instance to have levied the assessment subject only to the right of the landowner to have a certified abuse of that power reviewed by the courts, and it can therefore adopt as correct the assessment made by the commissioners as a measurement by the Legislature. Fitzgerald v. Coffman v. Dr. Francis Drainage District, 83 Ark. 54, 103 S. W. 179, and Owens v. Chicot County Drainage Dist., 112 Ark. 357, 166 S. W. 170. | The legislature has the power to levy road improvement assessments subject only to the right of the power to have an arbitrary abuse of that power overruled by the courts. | Does the legislature have the power to levy assessments? | Highways- Memo 361-DB_59240.docx | ROSS-003132564 | Condensed, SA, Sub | 0.75 | 0 | 0 | 1 | 1 | 1 |
| 17513 | In re Estate of Colucci, 470 Mich. 399 | 308+2G11 | It is a longstanding legal principle that a duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted. See, e.g., Cranson v. Sargent Mfg. Co., 141 Mich. 6, 7, 91, 104 N.W. 371 (1905) (Similarly, the assignment made by an attorney provides the agent with all the rights and responsibilities of the principal as long as the agreement. See, e.g., MCL 700.5501 et seq.; Ajax v. Legit, 371 Mich. 100, 461, 113 N.W. 407 (1963). In effect, the agent stands in the shoes of the principal. | A duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted. | Can a duly authorized agent bind his principal? | 041470.docx | LEGALEASE 00151327 LEGALEASE 00151328 | Condensed, SA | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 17514 | Theos & Sons v. Mack Trucks, 1999 Mass. App. Div. 14 | 308+1 | An agency "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." Kirkpatrick v. Boston Mut. Life Ins. Co., 393 Mass. 640, 645, 473 N.E.2d 173 (1985) (quoting Restatement (Second) of Agency " 1 (1958). The three "essential characteristics" of an agency relationship are: "1) the power of the agent to alter the legal relationships between the principal and third parties and the principal and himself; 2) the existence of a fiduciary relationship toward the principal with respect to matters within the scope of the agency; and 3) the right of the principal to control the agent's conduct with respect to matters within the scope of the agency." "4 Sabel v. MacFarland & Co., 727 F.Supp. 135, 138 (D.Mass.1990) (quoting Restatement (Second) of Agency " 1(1) (1958)). "The essence of the principal-agent relationship is the right of power or control by the alleged principal over the conduct of the alleged agent." Commonwealth's Aluin, Corp. v. Baldwin Corp., 960 F.Supp. 388, 62 J. (D.Mass. 1997). | The essence of the principal-agent relationship is the right of power or control by the alleged principal over the conduct of the alleged agent. | Does an agent serve under the control and supervision of his principal? | 041474.docx | LEGALEASE 00151337 LEGALEASE 00151338 | Condensed, SA | 0.87 | 0 | 1 | 1 | 1 | 1 |

Appendix D

3085

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 17515 | Pompo v. United States Mining & Tr. Co., 203 N.Y. 181 | 308+3(1) | The power of attorney, like any other contract, is to be construed according to the natural meaning of the words to serve the purpose of the agency and the ends to its fulfillment. The authority within a order such construction is not to be blocked or extended unless the sole right of a court is to ascertain through the rule stated, and apply the authority. The intent within a principal has authorized his agent is to completely within his determination, and a party dealing with the agent must ascertain the scope and reach of the powers delegated to him, and must abide by the consequences if he transcends them. Craighead v. Peterson, 72 N. Y 279, 28 Am. Rep. 150. | Should a party dealing with an agent ascertain the scope or extent of the powers delegated to him? | Principal and Agent Memo 191 - KC_SM14.docx | ROSS-003258584-ROSS-003258587 | Condensed, SA, Sub 0.81 | | 0 | | 1 | 1 | 1 |
| 17516 | Forest Guardians v. U.S. Forest Serv., 329 F.3d 1089 | 411+7 | Moreover, the Service is entitled to substantial deference to its interpretation of its own regulations. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). Indeed, judicial review of an agency's interpretation of its own regulations is limited to ensuring that the agency's interpretation is not plainly erroneous or inconsistent with the regulation. Vincent v. Apfel, 191 F.3d 1143, 1148 (9th Cir.1999). Forest Guardians argues the phased-in reduction scheme included in the terminal grazing permits violates the NFMA because it is not "consistent" with the Apache "Diplomas Forest Plan. The district court held that the phased-in reduction was permitted by the 36 C.F.R. 222.4(a)(8), which requires one year's notice to permittees regarding changes in permitted livestock numbers. We conclude that this was not a proper basis upon which to uphold this aspect of the grazing permits. | Is the Forest Service entitled to substantial deference to its interpretation of its own regulations? | Woods and Forest Memo 191 - ANM_59290.docx | ROSS-003292785-ROSS-003292786 | Condensed, SA, Sub 0.9 | | 0 | | 1 | 1 | 1 |
| 17517 | Kimel v. Augusta, F. & G.R. Co., 65 F. 859 | 103H+956 | The return of an unsatisfied execution is necessary in cases where it is sought to reach choses in action, a work of the property fraudulently received. or reach estate in action, or where the remedy is a statutory requirement to that effect. Case v. Beauregard, supra; Terry v. Anderson, 95 U.S. 628; Van Weel v. Winston, 115 U.S. 228, 5 Sup.Ct. 22; Cates v. Allen, supra; Adsit v. Butler, 87 N.Y. 587; Gerry v. supra; Dunlevy v. Tallmadge, 32 N.Y. 457; Wait, supra; v. Battau, 146 U.S. 517, 13 Sup.Ct. 165. It is only where the remedy at law has been exhausted that a creditor acquires a right to follow the assets of property of a debtor in the hands of his trustee. In Wait v. Stanton, supra. The question involved in the previous decisions thereon, are considered and discussed in the opinion of the supreme court of the United States in Hollins v. Iron Co., 150 U.S. 371, 14 Sup.Ct. 127. In this case, so far as the bill seeks to reach the fund of $100,000, it should allege an unsatisfied execution. Taylor v. Bowker, 111 U.S. 110, 4 Sup.Ct. 397. Such return, however, is not a condition precedent to the maintenance of this suit nor to the grant of other relief. But, in order to invoke the aid of a court of equity, it must appear that the fraudulent obstruction prevents the judgment creditor from obtaining satisfaction of his claim. The foundation upon which these and many other similar cases rest, is that the judgment and satisfaction of execution are not necessary to show that the creditor has no adequate legal remedy. The judgment and fruitless execution has an adequate legal remedy, the complainant party must show, therefore, that he has done all the could do at law to obtain his right. Adsit v. Butler, supra; and cases there cited. A like allegation is necessary to state the right of equity will not entertain a case for relief where the complainant has adequate and complete remedy at law. | Are judgments and fruitless executions necessary to show that the creditor has no adequate legal remedy? | 01808.docx | LEGALEASE-00151559-LEGALEASE-00151541 | Condensed, SA, Sub 0.84 | | 0 | | 1 | 1 | 1 |
| 17518 | Scelsi Partridge v. Loyola Univ. of Chicago, 409 Ill. App. 3d 76 | 141E+1390 | A student who fails to present sufficient evidence to create an enforceable contractual relationship with its students. Harris v. Adler School of Professional Psychology, 309 Ill.App.3d 856, 243 Ill.Dec. 414, 723 N.E.2d 717, 722 (1999). While the defendants argue that a student's relationship with a university has contractual components, they point out that our courts have traditionally treated students' contractual claims against schools differently than typical breach of contract claims. First v. Northwestern University, 289 Ill.App.3d 321, 321, 224 Ill.Dec. 584, 682 N.E.2d 174 (1996). A court will not review a teacher's subjective | Does a student's breach of contract claim against a private university treated somewhat differently from a typical breach of contract claim? | 01070.docx | LEGALEASE-00151483-LEGALEASE-00151484 | Condensed, SA, Sub 0.04 | | 0 | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17519 | In re Divelbess' Estate, 216 Iowa 1296 | 83E+416 | Frank Divelbess in his answer to the amended and substituted petition of appellant denied that he ever signed the note or knew of its existence prior to the death of his father, B. A. Divelbess. He supported this denial with his testimony. The instrument not having been indorsed on the back by Frank Divelbess is obviously incomplete. No doubt the prayer for specific performance is offered in recognition of that fact. A court of equity may not, upon a prayer for the reformation of a written instrument, supply any of the elements necessary to give it validity or compel the party in default to supply the omitted elements. Casady v. Woodbury County, 13 Iowa, 113; Glass v. Hulbert, 102 Mass. 24, 3 Am. Rep. 418; Petesch v. Hambach, 48 Wis. 443, 4 N. W. 565. The proposition is elementary, and the citation of authority to support it is quite unnecessary. The function of a court of equity in such cases is to reform a written instrument which already possesses the essential elements of a contract and which is a contract so as to make it conform to the true agreement of the parties. But is the instrument in suit in its present form, which all agree is incomplete, a mere nullity? If so, as already indicated, the court not only will not, but cannot, reform it. The statute quoted supra requires a note signed by several makers which is made payable to two or more of such makers to be indorsed by all such makers upon the back thereof to give it validity. Louisa County Nat. Bank v. Burr, 198 Iowa, 4, 199 N. W. 359; In re Estate of Richardson, 202 Iowa, 328, 208 N. W. 374; In re Estate of Talbott, 200 Iowa, 585, 203 N. W. 303; Odell v. Clyde, 23 Misc. 734, 53 N. Y. S. 61; Sugar v. Silverman, 105 Misc. 293, 173 N. Y. S. 182; Ewan v. Brooks-Waterfield Co., 55 Ohio St. 596, 45 N. E. 1094, 35 L. R. A. 786, 60 Am. St. Rep. 719. | Note payable to makers must be indorsed by all of them on back thereof to give it validity. Code 1931, S 9509. | Are notes payable to the order of the maker valid without indorsement? | 009717.docx | LEGALEASE-00151596-LEGALEASE-00151597 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 17520 | Burke Cty. v. Askin, 291 Ga. 697 | 200+79.1 | Before Askin filed the petition for a writ of mandamus, the Burke County Board of Commissioners adopted a resolution to formally abandon Frances Avenue, and Askin's petition requested an order setting aside the purported abandonment. However, prior to the issuance of the trial court's order, the Board passed a resolution revoking the attempted abandonment, and the trial court correctly concluded that the matter was moot. The trial court was also correct in refusing to enjoin the County from abandoning the road; the County's discretionary authority to abandon such a road is granted by statute, and the trial court's role is limited to review of any such exercise of that discretion. Scarborough v. Hunter, 288 Ga. 687, 689"690, 706 S.E.2d 650 (2011). | County had discretion to abandon road and trial court's role was limited to review of any such exercise of that discretion. | Is a countys discretionary authority to abandon a road granted by statute? | Highways - Memo 300 - RK_59593.docx | ROSS-003281916-ROSS-003281917 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17521 | Cent. Pac. Ry. Co. v. Alameda Cty., Cal., 284 U.S. 463 | 157+67(3) | Here the question is not whether there had been such deviations from the original line of travel as to negative the claim that a road had been brought into existence by prescription, but whether there had been such substantial departures from portions of the line of the road established in 1859 as to constitute an abandonment of those portions of that road, and the substitution, pro tanto, of a new one so removed in location as to cause it to depend for its legality, not upon the original establishment, but upon independent facts and considerations. The burden of sustaining the affirmative of this proposition plainly rests upon the party who asserts it, since proof of the establishment of a road raises a presumption of its continuance; that is to say, the respondents having shown the establishment by the county of a road through Niles Canyon in 1859, the continuing identity of that road must be presumed until overcome by proof to the contrary, the burden of which rests upon the petitioners. Barnes v. Robertson, 156 Iowa, 730, 733, 137 N. W. 1018; Beckwith et al. v. Whalen, 65 N. Y. 322, 332; Eklon v. Chelsea, 223 Mass. 213, 216, 111 N. E. 866; Taeger v. Riepe, 90 Iowa, 484, 487, 57 N. W. 1125; Town of Oyster Bay v. Stehli, 169 App. Div. 257, 262, 154 N. Y. S. 849. This is in accordance with the general principle that a condition once shown to exist is presumed to continue. In the light of this presumption, and the absence of evidence clearly contravening it, we cannot say that the findings below are wholly without support. The conclusion follows that the portions of the highway now in question, prior to the grant of the railroad right of way of 1862, formed part of a legally constituted public road, which, since its establishment in 1859, has been in continuous use. In this view, the decree below must be affirmed upon principles settled by this court in respect of cognate cases. | Proof of establishment of road raised presumption of continuing identity, and party claiming otherwise had burden to prove abandonment. | Is the continuing identity of a road presumed until overcome by proof to the contrary? | 018726.docx | LEGALEASE-00151695-LEGALEASE-00151696 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 17522 | In re Cohn Bros., 45 B.R. 723 | 172H+587 | We have already mentioned that the debtor's estate through the Trustee has no claim to the proceeds of the $15,000.00 check, thus enabling us to clear the first hurdle toward determining who should get title to the proceeds of the check. The rights and liabilities of parties with respect to commercial paper are established in divisions 3 and 4 of the Uniform Commercial Code, 13 Pa.C.S.A. " 3101, et seq. and " 13 Pa.C.S.A. " 4101, et seq. Section 3116(2) (Instruments payable to two or more persons) provides that "[a]n instrument payable to the order of two or more persons; if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them." If the endorsement of one payee is missing the check is unenforceable on its face. | Where one payee's endorsement was missing from check when it was presented to bank, check was unenforceable on its face, and bank, by accepting check and providing depositor with a provisional settlement, converted check under Pennsylvania law. 13 Pa.C.S.A. SS 3101 et seq., 3116(2), 3403, 3406, 3419, 3419(a)(3), (b, c), 4101 et seq. | What happens if the endorsement of one payee is missing? | 010281.docx | LEGALEASE-00152353-LEGALEASE-00152354 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17523 | Fisch Dworetzky v. Vicary, 332 So. 2d 741 | 83 I-+440 | Where endorser of negotiable paper becomes holder by retransfer, he may strike out his own endorsement and all endorsements subsequent to his own, whether special or not. LSA-R.S. 7:40; 7:48. | In 100 C.S. Bills and Notes, s 1330(1), Page 705, we find the following applicable rule: "Where an owner of negotiable paper by assignment or holder by retransfer, he may strike out his own endorsement, and all endorsements subsequent to his own, whether special or not." The question was made payable to the order of "Myself (Dworetzky)" and was endorsed by the maker in blank. It was therefore thereafter become payable... pursuant to the hereinabove cited provisions of LSA-R.S. 7:40, was therefore negotiable by delivery notwithstanding subsequent special endorsements thereon. It is significant that the record contains a notarial act by the Credit Manager of GMAC evidencing the re-transfer and assignment of the note and the indebtedness represented thereby to plaintiff. Under such circumstances plaintiff was entitled to strike its own endorsement which was not necessary to plaintiff's title. | Can the holder of the note strike out endorsements? | D10793.docx | LEGALEASE-00152475-LEGALEASE-00152476 | Condensed, SA, Sub | 0.79 | | 1 | | 1 | 1 |
| 17524 | Unlimited Adjusting Co. v. Wells Fargo Bank, N.A., 174 Cal. App. 4th 883 | 83 I-+436 | The intended payee may negotiate a check by indorsing it and depositing it in his or her bank account. (Neb. U.C.C. § 3-205 (b).) See also BTI, BBS, 8:3 Cal Apr. 3d 146, fn. 16 (Mills.) The bank to which the intended payee negotiates the check in "depositary bank" and the check "the depositary bank." U.C.C. 3-103, subd (1), 4109, subd (2)) "Depositary bank" means the first bank to take an item even though it is also the payee bank, unless the item is presented for immediate payment over the counter"). Ingraham and Bailey, Brady on Bank Checks: The Law of Bank Checks (2004) ¶ 11.1 [2]). Some versions of the Code use the term "collecting bank." That term includes a depositary bank, if the depositary bank is not also the payor bank.(Neb. U.C.C. § 4-105; subd (5))... "Collecting bank" has is a bank handling an item for collection except the payor bank".) | The intended payee of a check may negotiate the check by indorsing it and depositing it in his or her bank account. | D10765.docx | LEGALEASE-00152483-LEGALEASE-00152484 | SA, Sub | 0.87 | | 1 | | 1 | 1 |
| 17525 | Zarrelli v. Doerner, 101 Mo. App. 513 | 83.30(+270 | In respect to the plea of the want of consideration, the evidence is all one way. And the want of it was paid in land, was consideration, and cancelled in consideration of the new note and Zarrelli's check or draft for $100 to make up the difference between the two. The plaintiff's right consideration of the consideration of the giving of the new one in lieu thereof... apparently the court was in... Matters in the consideration for the giving of the new note in such a... Wellston v. Van Wagoner, 56 Mo. 115; Samuel & Holden Electric... v. Hackett, 89 Apr. 375; Mo. 1000, in Withers v. Eaton, 127 Mass. 174, the defendant, Anne Eaton, administered her husband's estate in 1871. On July 9, 1871, the plaintiff held an account as administratrix, which was allowed by the probate court, and by which it appeared that the estate was solvent, and that after the payment of debts she had paid the rest of the claim distributed shares thereof. No new assets afterwards came into her hands. Some time in 1875 the plaintiff produced a promissory note of $1,000, dated sometime 1867, payable on demand, and signed by the intestate Wm. Eaton's and the defendant was made by the plaintiff at the time he gave Eaton's note to the former note, and the agreement was that the defendant should surrender the note in such of the intestate thereby. Defendant, and the plaintiff may desirous thereby. The only consideration for the new note was for unaffordable consideration of the surrender of the note in such, it was held the surrender of the note of a... There was held that the cancellation and surrender of the note of a... | Is surrender of note a good consideration for making another note? | D10774.docx | LEGALEASE-00152493-LEGALEASE-00152494 | Condensed, SA, Sub | 0.95 | | 1 | | 1 | 1 |
| 17526 | Anderson v. Niddell, 43 Ind. App. 703 | 28+53 | Owner of cars wrongfully allowing them to stand on highway is not liable for injuries caused by horse frightened at the cars and running away, their being no special circumstance, as that they were standing there to... at large during nighttime, or that they so obstructed the beaten part of highway that a horse would be frightened. | In the present case, the fact that an object is in the highway, in violation of a statute, does not necessarily make it an unlawful object. The damages resulting from the fright from which the object may have occasioned to horses. There must have been some natural, causal connection between the violation of the statute and the frightening of the horses. Fixed in such objects at large highway or at night did, as a matter of law... was in the nighttime when the accident occurred, and the cows had to destroyed in the beaten part of the highway, if standing... gentleman might cause a light of vehicles or as premises that would require the case submitted to a jury. We can therefore say, as a matter of law, that appellee was not guilty of such negligence as would make him liable in damages to the appellant on account of his horse taking fright at the cattle upon the public highway. We find no reversible error. | Will the object of the highway in violation of statute make the owner liable? | D10135.docx | LEGALEASE-00152942-LEGALEASE-00152044 | Condensed, SA, Sub | 0.83 | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 22,876 | Multiple Differences 9,079 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17527 | In re Arbitration Between Nat. Union Fire Ins. Co. of Pittsburgh, P.A. v. Penn Plus, 664 F. Supp. 2d 339 | 25T-141 | Agency clearly applies here. Under traditional principles of agency law, "[o]ne who has not personally agreed to perform a contract cannot nonetheless be bound by it if he or she has signed it through an authorized agent." Brooks v. 890 Stillman, LLP, 25 Misc.2d 645, 883 N.Y.S2d 650, 452 [Supl.Ct.2009]. In order to bind a principal to an agreement signed by his purported agent, that agent must have actual or apparent authority to act on behalf of the principal. Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc., 241 F.Supp.2d 246, 260 [S.D.N.Y.2002]. Actual authority exists where a principal manifests an express intention to the agent, whereas apparent authority arises from "representations made by the principal to a third party" [that] "create[s] the appearance of authority," even if those representations are "not ... made through actual contact between the principal and third party." Id. at 261. | Temporary services provider had either actual or apparent authority to act as its affiliate's agent in signing agreements for workers' compensation insurance program, which thus warranted binding its affiliate, which included payment agreement containing arbitration provision, where payment agreement defined parties to include named client and each of client's affiliated organizations, affiliate was named insured under provider's policies with insurer, provider's owners were parents of affiliate's owner, financial documents identified affiliate as "related party to" provider, one of provider's owners signed documents on behalf of both entities, and insurance broker submitted application materials on behalf of both entities in connection with insurance program. | Does an agent have actual or apparent authority? | Principal and Agent Memo 226 - KC_4014.docx | ROSS-003294212-ROSS-003294223 | Condensed, SA, Sub 0.5 | 0.5 | 0 | 1 | 1 | 1 | |
| 17528 | Centurion Capital Corp. v. Barthels, 196 Wis. 2d 664 | 308-84 | The general rule is that an agent who is disbursed forfeits his or her right to compensation for those duties. Harkan v. Krueger, 84 Wis.2d 574, 580, 289 N.W.2d at 285. In determining the compensation issue, the court may consider whether the breach was intentional and whether the agent is responsible for a loss. Id. at 158F90, 289 N.W.2d at 287. A fiduciary is liable for damages in the event of a breach, and any losses caused may be offset against the agent's compensation for the services. Id. at 585, 289 N.W.2d at 287. | A fiduciary is liable for damages arising out of breach of fiduciary duty, and any losses caused may be offset against any claim he makes for compensation. | Will an agent be liable for damages in the event of breach? | 042061.docx | USLEASE 00152255 - USLEASE 00152252 | Condensed, SA, Sub 0.69 | 0.69 | | | | 1 | |
| 17529 | Gracina Properties v. Travelers Lloyds Ins. Co., 514 S.W.3d 155 | 308+92(1) | Texas courts hold that where "an agent misappropriates payments intended for its principal, it is the principal that bears the loss because, after the payment has been made to the agent, the payment is deemed to have been made to the principal." See Metro. Ins. & Annuity Co. v. Peachtree Settlement Funding, LLC, 500 S.W.3d 5, 19 (Tex. App.-Houston [14 Dist.] 2016); see also Carter v. Allstate Ins. Co., 793 S.W.2d 631, (460 (Tex. App.-Dallas 2012), no pet.)); see also Clark v. Lebowitz, 734 S.W.2d 96, 399 (Tex. App.-Dallas 1987, writ ref'd n.r.e.). The policy underlying the principals is clear: As between the two, the party who placed the agent in a position to cause the loss must bear the loss and, therefore, should suffer the loss. See Cash, 734 S.W.2d at 399 (noting that "[i]f Brown is unbound [its] agent, then between Cash and sobovits, an innocent party, which Brown's [sobovits] and Delancey must be borne by sobovits, Brown's principal"). | Where an agent misappropriates payments intended for its principal, it is the principal that bears the loss because, after the payment has been made to the agent, the payment is deemed to have been made to the principal. | Does payment to authorized agent constitute payment to principal even if funds are misappropriated? | Principal and Agent Memo 61 - KC_4026.8.docx | ROSS-003288395-ROSS-003288396 | Condensed, SA 0.77 | 0.77 | | | | 1 | |
| 17530 | Idaho Wool Growers Ass'n v. Vilsack, 816 F.3d 1095 | 149E+999 | NEPA imposes on federal agencies conducting environmental review a duty to consult with certain other agencies. "Prior to making any major federal action." the agency officials shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved [in the proposed action]. 42 U.S.C. * 4332(2)(C). Further, to promote NEPA's policies of public participation and informed decision-making, copies of the EIS and comments thereon must reach the other agencies and accompany the proposal through the existing agency review processes." | National Environmental Policy Act (NEPA) imposes on federal agencies conducting environmental review a duty to consult with certain other agencies. National Environmental Policy Act of 1969, § 102(2)(C), 42 U.S.C.A. § 4332(2)(C). | Do federal agencies have to consult other agencies? | Woods and Forests-Memo 60-ANM.docx | USLEASE 00042503-USLEASE 00042504 | SA, Sub | 0.63 | | | | 1 | |
| 17531 | United States v. Parker, 761 F.3d 986 | 411+8 | The regulation defines "National Forest System" to include "all national forest lands and waters reserved or withdrawn from the public domain of the United States [or] acquired". A "[f]orest road or trail" is defined in[a] road or trail whether in partly with or in proximity to and serving the National Forest System and which is necessary for the protection, administration, and utilization of the National Forest System and the use and development of its resources. Land "[w]ithin the National Forest System road" is defined as a subset of the above, namely[a] forest road other than a road authorized by legally documented right-of-way held by a State, county, or other local public road agency. | While county's easement may have removed a highway from definition of "National Forest System road," it did not remove the public domain land [or] deprive the Forest Service of authority over the road, and the Forest Service retained jurisdiction to regulate use of the highway to protect Forest Service lands underlying the highway from unauthorized use by commercial snowmobile operation. 16 C.F.R. § 261.12(a); 261.14(a). | What is a National Forest System road? | Woods and Forests-Memo 50-ANM_40277.docx | ROSS-003321390-ROSS-003321391 | Condensed, SA, Sub 0.33 | 0.33 | | | | 1 | |
| 17532 | Johnson v. Avignon, 5 Or. 485 | 83T+638(4) | An indorser who charged by the laches of the holder of a note, may become liable to pay it by a subsequent promise, with full knowledge of the fact that he had been discharged. | An indorser on note, who was discharged by laches of holder in failing to present the demand note for payment to maker until over seven months after time defendant's indorser received it, held not liable by reason of fact that when defendant's indorser received it, held not liable by reason of fact that such note... | When does the indorser incur liability for a note? | Bills and Notes - Memo 842 - RK_60295.docx | ROSS-003222444-ROSS-003222445 | Condensed, SA, Sub 0.46 | 0.46 | | | | 1 | |
| 17533 | Wyters v. Millar, 1 U.S. 169 | 83T+751 | There must then be some collateral matter, some injury to the Plaintiff, or benefit to the Defendant, in the consideration itself, laid as a ground for the assumption. If the Plaintiff had possession of the note [though not in his own name] which he would be able to transfer the Defendant, in case of the promise had been in consideration of his delivering the note up to be cancelled; their promises, though made to a person not having an assignment of the note, would perhaps have been sufficient to ground an assumption. But this is a bare promise to pay to the Plaintiff a stronger, in consideration only of a sale and delivery of the note by the owner of the note, and the tenor and effect of the note was to pay to Jefferie, or his order, and not to any person [whatever] shewed sell with and deliver it. If the note had been payable to Jefferie, or Bearer, a bona fide purchaser of it might have maintained an action, because such a note, pass by delivery. But as the note was payable to order, must be assigned, to enable the holder to bring the action in his own name. | For sale and delivery of a promissory note, payable to order, without indorsement or assignment, does not entitle the holder to sue in his own name. | Does a note payable to order have to be assigned to enable the holder to bring an action in his own name? | Bills and Notes - Memo 881 - RK_60680.docx | ROSS-003074479-ROSS-003074500 | Condensed, SA, Sub 0.89 | 0.89 | | | | 1 | |

Appendix D
3089

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17534 | First Nat. Bank v. Morras, 133 F.505 | 83T+406 | In the view which we take of the of this case, it becomes unnecessary to consider the question whether the written assignment of the note was properly executed or was admissible in evidence. The complaint contained the allegation that the note had been assigned and delivered to the plaintiff in error. The testimony showed that the note in question were transferred by the Citizens' State Bank to the plaintiff in error long before the written assignment was made. No objection was interposed to the admission of this testimony on any ground, and it was, we think, prima facie sufficient under the pleadings to sustain the right of the plaintiff in error to recover on the notes. The objections that were made were to the admission in evidence of the written assignment, and to the testimony tending to show that it one was authorized by the cashier of the Citizens' State Bank to sign his name thereto. In the absence of a statute to the contrary, a written assignment of a negotiable promissory note payable to order is not necessary to enable the holder to bring an action in his own name. An assignment by parol is sufficient. T Cyc. 854. Available the estate so on the contrary, and is subject to the defenses which the maker might have made prior to notice of the transfer, and under the old system of pleading and practice, an action to recover on the note could be prosecuted only by the holder in the name of the payee (Jones v. Witter, 13 Mass. 304; Mottur v. Bewals, 53 Md's, 471, 476, and authorities cited); while under our Code provisions, are to be prosecuted by the holder in the name of the party entitled thereto. 7 Cyc. 557, 823; 22 Corn. 617; Mertin v. Martin, 174 Ill. 371, 51 N.E. 691, 66 Am.St.Rep. 290. Davis v. Lane, 8 N.H. 224; Williams v. Millan, 2 Wash. 45, 29 Fla. 105; 86 Bewals, 55 Mds's, 471, 234 N. 12; Cormber, Pet. 180; 8 Watts & Parry, 22 Cont, 617; Martin v. Martin, 174 Ill. 371, 51 N.E. 691, 66 Am.St.Rep. 290; under the code system, by the very decided weight of authority, a negotiable uninstrosed promissory note, payable to order, may, for a valuable consideration, be transferred by mere delivery, so as to pass the transferee the right to recover thereon in his own name. Williams v. Norton et al, 3 Kan. 295; Adams v. Bush, 24 Am. 163. | In the absence of a statute to the contrary, a written assignment of a negotiable note payable to order is not necessary to enable the holder to bring an action in his own name? | 003601.docx | LEGALEASE-00155547-LEGALEASE-00155548 | Condensed, SA, Sub D 93 | | 0 | | 1 | 1 | 1 |
| 17535 | Carpenter v. Longan, 83 U.S. 271 | 266+3414 | The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is so only in equity. Where the security follows the note. | Where security is given for negotiable note, the transfer of the note carries with the security, without any formal assignment or delivery, or even mention of the security. | What happens to the security when a note is transferred? | Bills and Notes - Memo 887+ PK_00486.docx | ROSS-003278314-ROSS-003278315 | Condensed, SA, Sub D 0.64 | | 0 | | 1 | 1 | 1 |
| | | | The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is so only in equity. Where the security follows the note. The fact that this was done after the breach of condition did not prevent the mortgage from becoming operative as a conveyance. That the assignment was not accompanied by the transfer of the notes in question is an irrelevant circumstance, if such assignment is legal or equitable is immaterial. The result follows irrespective of that question. The process is very simple of enforcing a lien. | | | | | | | | | | |
| 17536 | Rothwell v. Taylor, 303 Ill. 226 | 314+4711 | It is now well settled by all the authorities that negotiable instruments are subject of a valid gift without manual delivery where the payee in the present instrument or in the paper, if delivered to the donee by the payee with intent to transfer the title. The burden of proof of the gift in such a case to prove it are essential to a valid gift. The essential facts are the delivery of property by the donor to the donee with intent to pass title and the good weight of authority is that the proof to sustain the gift must be clear and convincing. Maxler v. Hawk, 233 Pa. 316, 82 Atl. 251, Ann. Cas. 1913 B, 559; In re Bolin, 136 N.Y. 177, 32 N.E. 626; Grey v. Grey, 47 N.Y. 552, Chambers v. McCreery, 106 Fed. 364, 45 C. C. A. 322. Mere possession by one claiming property as a gift, after death of the donor, is universally, we believe, held insufficient to prove a valid gift. The competent proof here show plaintiff had possession of the notes and certificates a short time before the alleged gift, and that plaintiff claimed the gift. She was not competent to testify to the circumstances of the gift or what her aunt said and did, and there is no testimony on that question except hers. This proved the possession proved show plaintiff had possession of the notes and certificates be fore Miss Condit's death and her claim thereto after. This proves the facts necessary to show title in such cases. | The burden to an alleged donee of negotiable instruments are subject of a valid gift without manual delivery in a proof of facts essential to a valid gift? | 003603.docx | LEGALEASE-00155564-LEGALEASE-00155565 | Condensed, SA, Sub D 93 | | 0 | | 1 | 1 | 1 |
| | | | | Who plans the burden to prove all facts essential to a valid gift? | 003604.docx | LEGALEASE-00155564-LEGALEASE-00155565 | | | | | | | |
| 17537 | Hawley v. Sloo, 12 La. Ann. 815 | 8-305+10 | It follows that a note payable annually must bear the rate of interest of the place where made, for the general rule is that "by the common law the note must commence at the place of performance, unless there is some other place designated than the place of the contract, performance is different from that of the contract, the interest will be according to that of the former." Story, Con. 7 290, 341, 345; Seef-pad on the Conflict of Laws, 5, 277; also 8 Sargby, p. 282; Lee. 174; Banks edition, and 3 Am., 402, and C. C. Art. 10. | A promissory note payable generally must bear the rate of interest of the place where it is made. | Will the place where the note is made determine the rate of interest? | 003607.docx | LEGALEASE-00155584-LEGALEASE-00155585 | Condensed, SA, Sub D 86 | | 0 | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17538 | Wurtzel v. Werdmire, 8 Wend. 194 | 83E+462 | In Fox v. Packard, 12 Johns. R. 174, the supreme court decided that the surety was discharged where the principal debtor, when requested to do so, refused to sue the principal became insolvent. This decision was made without argument, and was ... | To discharge an indorser on the ground of the omission of the creditor to proceed against the principal when requested to do so, it must appear that the principal was solvent at the time of the request, within the jurisdiction of the state in which the suit against the surety is instituted, and that the creditor, without any reasonable excuse, neglected or refused to proceed until the principal debtor became insolvent and unable to pay. | Will the surety be discharged from a debt when it is due? | Bills and Notes / Memo 912 - BK_60316.docx | ROSS-003260013 & ROSS-003260014.docx | Condensed, SA, Sub 0.67 | | 0 | | | 1 | 1 |
| 17539 | Rabiv v. Capital One Bank, 172H+1344 | | By contrast, TILA and Regulation Z do require a disclosure to be in writing... | Although clarity and conspicuousness of a disclosure of annual percentage rate (APR) in a credit card application is a question of law, under Truth in Lending Act (TILA), empirical evidence is helpful in determining what a reasonable consumer would understand or readily notice. Truth in Lending Act, § 127(a)(1)(A)(iii), 15 U.S.C.A. § 1637(a)(1)(A)(iii); 15 C.F.R. § 226.5a(b)(1). | What are clear and conspicuous disclosures? | 01.8950.docx | LEGALEASE 00157766 LEGALEASE 00157767 | Condensed, SA, Sub 0.61 | | | 1 | | | |
| | Cohen v. Bd. of Trustees of Univ. of Med. & Dentistry of New Jersey, 141E+990 | | Yet, state universities may be classified as instrumentalities of the State for particular purposes. Rutgers, The State University v. Piscataway Township, 1 N.J. Tax 164 (Tax Ct.1980). Rutgers is classified as a state agency ... | State universities may be classified as instrumentalities of the state for some particular purposes and not for others. | Can universities be classified as instrumentalities of the state for some particular purposes and not for others? | Education - Memo #167 C-ATS_6033.docx | ROSS-003520010 ROSS-003520020 | Condensed, SA, Sub 0.66 | | | 1 | | | |
| 17540 | In re Seo, Comm'r On Ethical Standards Re: Appearance of Rutgers Attorneys, 141H+216 | 78+1146 | What it has consistently been regarded as a State agency for the purpose of performing governmental state regulation, and when for property taxation, Rutgers, The State University v. Piscataway Township, 1 N.J. Tax 164 (Tax Ct.1980), ... | Rutgers University is not an alter ego of the State of New Jersey, but is "person" subject to liability for purposes of federal civil rights action. 42 U.S.C.A. § 1983. | Is a university a person subject to liability under the law? | 01.7066.docx | LEGALEASE 00152858 LEGALEASE 00152869 | Condensed, SA, Sub 0.84 | | 0 | | | | 1 |
| 17541 | Shaw v. Wayo, T Comi. 214 | 554+7(1) | All persons claiming under and through the party estopped by a deed, are likewise bound equally ... | All persons claiming under and through the party estopped by deed, are likewise bound equally. | Are all persons claiming under a party estopped bound equally? | 01.8024.docx | LEGALEASE 00153037 LEGALEASE 00153038 | Condensed, SA, Sub 0.02 | | | 1 | | | |
| 17543 | Sealy v. Perdido Key Oyster Bar & Marina, 88 So. 3d 366 | 307A+681 | The purpose of a motion to dismiss is to test the legal sufficiency of a complaint, not to determine factual issues. See Moore v. Dunn Logistics, Inc., 44 So.3d 242 (Fla.1st DCA 2010). The purpose of ruling on a motion to dismiss, the trial court must look no further than the four corners of the complaint, and all allegations in the complaint must be accepted as true. Neely v. Bonono, 55 So.3d 678, 681 (Fla.1st DCA 2010). Clearly, the trial court here looked beyond Appellant's complaint, and in the ... | The purpose of a motion to dismiss is to test the legal sufficiency of a complaint, not to determine factual issues, and account stated on the basis of architect's alleged failure to register with the Department of Business and Professional Regulation to provide architectural services under the fictitious name while architect was doing business and to obtain a certificate of authorization. | "For purposes of ruling on a motion to dismiss, the trial court look no further than the four corners of the complaint? | Pretrial Procedure - Memo 8 ENO - C - SNS_60453.docx | LEGALEASE 00152808 LEGALEASE 00152869 | Condensed, SA, Sub 0.25 | | | | | | |
| 17544 | Jimenv v. Doherty, 101 Idaho 910 | 307A+563 | Involuntary dismissal under I.R.C.P. 41(b) for failure to prosecute is in the nature of a sanction. It is a necessary final recourse available to the court to protect its process and orderly administration of justice by dismissal of the remedy to be sparingly used, but it is always available. See, e.g., Wright & Miller, Federal Practice and Procedure, Civil § 2370 (1971). | Is dismissal for failure to prosecute is a drastic remedy to be granted sparingly? | 01.8372.docx | LEGALEASE 00152808 LEGALEASE 00152869 | Condensed, SA, Sub 0.63 | | | | | 1 | |

3091

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17545 | BB & Conn. Co. v. United Bhd. of Carpenters & Joiners of Am., AFL-CIO, 917 3d 1138 | 308+1 | The legal standard governing an agency relationship is well-known: "Agency requires manifestation by the principal that the agent shall act for him, acceptance by the agent of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency " 1 cmt. b (1933). An essential element of any agency claim is that the asserted principal has the right to control the actions of the asserted agent. General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). See also Restatement (Second) of Agency " 14. The parties agree that the jury was properly instructed as to the law of agency, but dispute whether the evidence was sufficient to support a finding that the Carpenters had the right to control the actions of the Paperworkers representatives at the mutual-interest meetings. | Agency requires manifestation by principal that agent shall act for him, acceptance by the other party of undertaking, and understanding of parties that principal is to be in control of undertaking. | What are the elements of agency? | 041297.docx | LEGALEASE 00153097 LEGALEASE 00153098 | Condensed, SA | 0.8 | | 0 | 1 | 1 | 1 |
| 17546 | In re Richard P., 227 W. Va. 285 | 308+10(1) | A "power of attorney" is "an instrument granting someone authority to act as agent or attorney-in-fact for the grantor. An ordinary power of attorney is revocable and automatically terminates upon death or incapacity of the principal." Although no West Virginia statute specifically provides for an "ordinary" power of attorney by which a parent may grant authority over the care of their child to another adult, the authority to grant such powers exists at common law. While this Court has not directly addressed the legal basis for such powers of attorney, it has recognized on several occasions that such authority may be granted. [Acknowledging a power of attorney executed by a parent who left her child temporarily with a friend, which authorized the friend "to act in loco parentis."]; [remanding the case to the lower court for a determination of the parties' intent in executing a document entitled "Special Power of Attorney and Voluntary Appointment of Guardian"); [considering, as part of determination of who had been the children's primary caretaker, a power of attorney authorizing the children's grandparents to make medical and other decisions for the children]. | At common law, a parent or legal guardian may transfer medical, educational, and other legal decision-making authority for his or her child temporarily to another adult through the execution of a power of attorney, and such instruments are revocable and automatically terminate upon death or incapacity of the principal. | Does a power of attorney terminate upon the death of the principal? | 041404.docx | LEGALEASE 00153055 LEGALEASE 00153060 | Condensed, SA, Sub | 0.73 | | 1 | 1 | 1 | 1 |
| 17547 | In re Richard P., 227 W. Va. 285 | 308+10(1) | A "power of attorney" is "an instrument granting someone authority to act as agent or attorney-in-fact for the grantor. An ordinary power of attorney is revocable and automatically terminates upon death or incapacity of the principal." Although no West Virginia statute specifically provides for an "ordinary" power of attorney by which a parent may grant authority over the care of their child to another adult, the authority to grant such powers exists at common law. While this Court has never directly addressed the legal basis for such powers of attorney, it has recognized on several occasions that such authority may be granted. See, e.g., In re Destiny Asia H., 211 W.Va. 481, 566 S.E.2d 402 (2002) (acknowledging a power of attorney executed by a parent who left her child temporarily with a friend, which authorized the friend "to act in loco parentis."); Elbaugh v. Merritt, 200 W.Va. 393, 489 S.E.2d 375, 771 (1997) (remanding the case to the lower court for a determination of who had been the children's primary caretaker, a power of attorney authorizing the children's grandparents to make medical and other decisions for the children. | At common law, a parent or legal guardian may transfer medical, educational, and other legal decision-making authority for his or her child temporarily to another adult through the execution of a power of attorney, and such instruments are revocable and automatically terminate upon death or incapacity of the principal. | Can a power of attorney grant someone the authority to act as an agent? | Principal and Agent Memo 516 - 58_6077b.docx | ROSS-003283232-ROSS-003283233 | Condensed, SA | 0.77 | | 1 | 1 | 1 | 1 |
| 17548 | Coles v. McWilite, 464 S.W.3d 896 | 308+34(1) | Appellees' argument likens a principal's incapacity to a principal's death; the law is clear that an agent's authority to bind his principal terminates upon the principal's death. Where a contract is executed on behalf of an incapacitated person and that incapacitated person is a party or danger of unfair disadvantage in the transaction is, in fact, the incapacitated party. The party who transacts with the incapacitated party suffers no potential detriment in the bargaining process. The protections offered by our law should benefit the incapacitated party by allowing him to disavow the contract upon his return to sufficient capacity. This benefit extends to the heirs of a deceased principal on the grounds that it permanently incapacitated principal. In such case, the benefited party can secure the advantage of a good bargain by ratifying the contract or he can relieve himself of all liability by electing to disavow the agreement. To hold such an agreement void as a matter of law would deprive the disadvantaged party of the benefit of an advantageous contract. | An agent's authority to bind his principal terminates upon the principal's death. | Does an agency authority terminate upon the principal's death? | Principal and Agent Memo 517 - 58_6077b.docx | ROSS-003283897-ROSS-003283898 | Condensed, SA | 0.93 | | 0 | 1 | 1 | 1 |
| 17549 | Eugene Theatre Co. v. City of Eugene, 194 Or. 603 | 371+2002 | There is a clear distinction to be drawn between an admissions tax, a sales tax, and other such special forms of taxation, on the one hand, and a general tax imposed upon a person for the privilege of engaging in some business or calling, on the other. In a general sense, of course, all taxes are excise taxes. But in its proper sense, an excise is "something cut off from the price paid on a sale of goods, as a contribution to the support of the government". Burkoff Rath House Co. v. McKinley, 199 Ark. 91, 137 S.W.2d 892, 896. Ekern v. McGovern, Independent Ctr., 221 Wis. 94, 205 N.W.2d 281, 24 A.L.L. Taxation, 54, " 18. An admissions or sales tax is not paid by the person who operates that business. It is simply collected from his patron or customer who actually pays taxes of that type. The "tax-home" money of the operator of the business is not thereby reduced. On the other hand, an occupation tax is paid by the person engaged in the taxed business, and, to the extent of the levied tax, it reduced the amount of his earnings. | An "excise tax" is something cut off from the price paid on a sale of goods, as a contribution to the support of the government. | What is an excise tax? | Taxation - Memo # 882 C - ti_65099.docx | ROSS-003293037-ROSS-003293038 | Condensed, SA | 0.88 | | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 17550 | Oakenhurst Farms v. Ball, 171v2001 493 Mich. 1 | 171v2001 | As correctly stated by Judge William S. White, Barron Circuit Court, in his opinion in the instant suit, "[t]axes and assessments are levied only by the State under the power of taxation or some one of its several elements in common. Both are exactions or involuntary contributions of money which are imposed and collected for public purposes and sanctioned by the courts. Here, however, the similarity ends." [112a, Appellant's Appendix]. Taxes which are imposed and collected primarily for public rather than private purposes are taxes. See People ex rel. the Detroit B. H. R. Co. v. Salem Twp. Board, 20 Mich. 452, 474, 4 Am Rep. 400 (1870). Revenue from taxes, therefore, must flow to the benefit of all, as opposed to exactions from a few for benefits that will inure to the persons or group assessed. See City of Flint, 38 S Mich. 400, 489, 109 N W.2d 536 (1961). Foster v. City of Plymouth, 358 Mich. 447, 451, 100 N.W.2d 686 | Taxes are exactions or involuntary contributions of money which are imposed and collected for public purposes and sanctioned by law and enforceable by the courts or which are imposed and collected and are imposed primarily for public rather than private purposes. | Are taxes and assessments both sanctioned by law and enforceable by the courts? | 04602.docx | LEGALEASE 00151516-LEGALEASE 00151527 | Condensed, SA, Sub 0.79 | | 0 | 1 | | 1 | 1 |
| 17551 | City of Louisville v. Sebree, 171v2001 308 Ky. 420 | 171v2001 | It is apparent that the present ordinance was enacted as a revenue measure. Since the levy is primarily for revenue, to speak with technical accuracy, the tax imposed is an "excise tax." To lay a severance burden for the support of the municipal government. The revenues being expressly allocated first to the sinking fund and then to the balance to the general fund of the city. But the character of any tax is to be determined by its incidents, and the name by which it is described in the legislation imposing it is without significance. Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S. Ct. 272, 65 L.Ed. 638, affirming J. & A. Freiberg Co. v. Dawson, D.C., 274 F. 420, cited by the same court in the instant, an occupation tax being upon the right or privilege of carrying on a business, occupation, or calling, the tax is not in a property tax, nor the amount of the value or other property involved. See Note, 103 A.L.R. 20; See Vol. 29, Words and Phrases, Perm Ed. | The character of any tax is to be determined by its incidence, and the name by which it is described in legislation imposing it is immaterial. | Is the name by which a tax is described in the legislation significant to the character of the tax? | 04603.docx | LEGALEASE 00151374-LEGALEASE 00151375 | Condensed, SA, Sub 0.86 | | | 1 | | 1 | 1 |
| 17552 | Barhart v. Alexander, 59 214v8 Md. App. 188 | 214v8 | It was said by the supreme court of the United States in Pierce v. Indseth, 106 U.S. 546, that courts will take judicial notice of the official certificates of notaries public, for they are officers recognized by the commercial law of the world, Under this rule the court could say of an affidavit for an attachment, "[t]he jurat of the notary public is an ex parte act within the statute of this state for that affidavit was a notary public within the meaning of the statute of this state." Of this there is no question, by which it appears that if the affiant was a notary public within the state of the affiant, just as it would have been had the affiant we must so much as even in either in what particular county he was a notary public at the time the affidavit was made, in what was done subscribed and sworn to before him. The statement of the venue is an essential part of every affidavit and prima facie evidence of the place where it is taken, and in its absence is void. See 1 Mora, 6 How. Pr. 196; Cook v. Staats, 18 Barb. 407. | The statement of the venue is an essential part of every affidavit, and its omission is fatal. | Is venue an essential part of every affidavit? | Affidavits - Memo 57 - _H7DZCD4HWQVMJ6_ 000000211.docx | ROSS-000002210-ROSS-000000211 | Condensed, 0.9 | | 1 | 0 | 0 | 0 | 1 |
| 17553 | Mufford Bank, SBA v. C.W. Hayes & Co., 893 F. Supp. 1394 | 83Iv522 | In determining GNMA's status as a HDC, the first inquiry involves possession of an instrument drawn, issued, or indorsed to him or to his order or to bearer or in blank. "C-Code Ann. "267° 20.1(20) (Law-Co-op Supp 1993.) Because GNMA never had physical possession of the mortgage notes, the central focus becomes constructive possession. Although the South Carolina cases interpreting "holder" or "possession" are used in this context appear to exist, McKTrp's clear authority from other jurisdictions in an effort to persuade the court to apply the concept of constructive possession. These cases generally hold that constructive possession exists when an authorized agent of the owner holds the note on behalf of the owner. See Corporacion Venezolana de Fomento v. Vintero Sales Corp., 452 F.Supp. 1108 (S.D.N.Y.1978), Schvara v. Li, Grossly, Inc., 963 F.2d 86, 507 45 R. Am. 453 & ; 462 A.2d 226 (1980); Birmingham v. Anita, 2d 481 116, 264 A.2d 113 (1972). Under Uniform Motors, Inc., 1973 F.A. Supp. 378, 181 A.2d 291 (1960); Leeds v. Davis, 584 S.W.2d 145 (Tex.Civ.App.1978). The possession required by the Code to constitute a person a "holder" may be constructive possession by delivery to one on his behalf. Thus a person in actual possession of commercial paper when it is in the physical possession of his agent." 1 Anderson, Anderson, Uniform Commercial Code " 1?201.(36 (1981). (See 1981 (footnote omitted). In order to find constructive delivery, this transferor must deliver the note "with the unmistakable intention of transferring title to the instrument." 1 Anderson, Uniform Commercial Code " 1?201.(36 (1791) (3d ed. (1981)) (See 2nd ed. | "Possession" required under South Carolina law to constitute a "holder" of negotiable instrument may be constructive possession by delivery to third party on first person's behalf. S.C Code (1976, S.36-1-201(20). | Who is a holder in terms of an instrument? | 000774.docx | LEGALEASE 00154737-LEGALEASE 00154738 | Condensed, SA, Sub 0.88 | | 1 | | 1 | 1 | 1 |
| 17554 | Madaeux, Robbert, 155 La. 484 | 831v441 | It was held, as far back as in 1810, that a note payable to order may be transferred without indorsement, and that the transfer can be proved by parol testimony. Bughnes v. Dunbar, 1 La. 480. And the same principle in the above case was approved in Scottt, McDougall, 14 La. Ann. 300; and Griffin and Dyson v. Cowan, Dyele & Co., 13 La. Ann. 487. | Transfer, without indorsement, of note payable to order, may be proved by parol. | Can a note be transferred without endorsement? | 00960.docx | LEGALEASE 00153778-LEGALEASE 00153779 | Condensed, SA, Sub 0.76 | | 0 | 1 | 1 | 1 | 1 |

3093

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1255 | Strube v. Comenity Bank, 172 H+1395 | 172 H+1395 | We easily conclude that Strube satisfies the legal interest requirement of injury in fact. As already detailed, 15 U.S.C. § 1635(a)(7) obligates a creditor to make specified disclosures "to the person to whom credit is to be extended." Congress's objective to inform borrowers of their rights ... We find that Strube has alleged a concrete and particularized injury in fact sufficient to satisfy the injury-in-fact requirement for Article III standing. | Credit card holder, who brought action alleging that bank's failing to make specified disclosures failed to comply with Truth in Lending Act's (TILA) mandatory disclosure requirements, sufficiently alleged the invasion of a legally protected interest, as required to satisfy the injury-in-fact requirement for Article III standing; Congress, through TILA, conferred legal interests on consumers by requiring creditors to make specified disclosures "to the person to whom credit is to be extended." U.S. Const. art. III, § 2; Truth in Lending Act § 127, 15 U.S.C.A. § 1637(a)(7). | Is a creditor obligated to make disclosures? | Consumer Credit - Memo 45 IR_a1321.docx | ROSS-00131395-ROSS-00131396 | Condensed, SA, Sub 0.51 | 0 | | 1 | 1 | 1 |
| 1256 | Brenny v. Bd. of Regents of Univ of Minnesota, 813 NW 2d 417 | 141E+992 | The University of Minnesota is a legal entity within the State of Minnesota. The university has "autonomous status" as a "constitutional corporation." Starkey v. Univ. of Minn., 290 Minn. 355, 361, 187 N.W.2d 702, 706 (1971). In recognition of this status, courts of this state must accord the university substantial deference; the university's "governing body, the Board of Regents, is quasi-legislative." ... "[I]ssuance of a writ of certiorari by the court of appeals pursuant to Minn.Stat. § 606.01 (2010) is the only method available for review of a university employment termination decision"). | University of Minnesota is a legal entity within the State of Minnesota; the university has autonomous status as a constitutional corporation. | Is a university a constitutional corporation? | 010774.docx | LEGALEASE 00154313-LEGALEASE 00154314 | Condensed, SA | 0.89 | | 0 | | | 1 |
| 1257 | Magrath v. Univ. of Maryland, 402 Md. 548 | 141E+1055 | It is well established that the University is considered to be an arm of the State Government for the purposes of the sovereign immunity doctrine. See Ed. v. "127" 293 Md. see also Stern, 380 Md. at 702, 846 A.2d at 1000 ... Frankel v. Board of Regents, 361 Md. 298, 301, 761 A.2d 324, 325 (2000); Maas, 173 Md. at 557, 197 A. at 126; Pearson v. Murray, 169 Md. 478, 482, 182 A. 590, 592 (1936). Because the University qualifies as a "unit" of the State for the purposes of sovereign immunity, we must discern the extent of the University's statutory waiver of that immunity. Without a statutory waiver of the University's sovereign immunity, Magrath may not maintain his action against the University ... Therefore, Magrath is not entitled to the claimed relief. | The University of Maryland is considered to be an arm of the State Government for the purposes of the sovereign immunity doctrine. West's Ann.Md.Code, Education, § 12-102(a). | Is university a arm of the state government? | Education - Memo #239 IR - C - AT5_61051.docx | ROSS-00308417-ROSS-00308418 | Condensed, SA, Sub 0.87 | 0 | | 1 | 1 | 1 |
| 1258 | State v. Tracy, 539 N.W.2d 200-18 | 200+18 | In this state there is a long every section line a public highway located by operation of law unless that section line has been vacated or relocated by lawful action of an authorized public officer. State ex rel. Douglas, SDCL 31-18-1. SDCL 31-18-2 provides the width of these statutory section line highways is sixty-six feet ... section has not been opened and the abandonment of a statutory section line highway "cannot be established solely by evidence that the highway has never been opened, improved, or traveled." As long as the section line has not been legally vacated the public has a right to travel on it. Barney v. Burlington Northern R. Co., 490 N.W.2d 726, 731.5 (S.D.1992) (cert. denied) ... 461 (1993); Gustafson & Co. v. State, 84 S.D. 218, 162, 169 N.W.2d 722, 724 (1969); Lawrence v. Ewert, 21 S.D. 580, 583, 114 N.W. 709, 710 (1908). | As long as section line highway has not been legally vacated, public has right to travel on it. SDCL 31-18-1. | Can the abandonment of a section the right of way be established by evidence that the highway has never been open, improved, or traveled? | 018811.docx | LEGALEASE 00154629-LEGALEASE 00154630 | Condensed, SA, Sub 0.9 | 0 | | 1 | 1 | 1 |
| 1259 | Johnson v. Herring, 89 Minn 156 | 302+26 | All that is necessary in pleading under our Code is that the facts be alleged "in ordinary and concise language." Section 5129, Rev. Codes 1921; Griffin v. Chicago, M. & P. Ry. Co., 67 Mont. 386, 216 P. 765. | Under Code, pleading need only allege facts in ordinary and concise language (Rev.Codes 1921, § 9129). | In a pleading, should facts be alleged in ordinary and concise language? | 017274.docx | LEGALEASE 00154248-LEGALEASE 00154249 | Condensed, SA, Sub 0.51 | | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17560 | Parker v. Town of Ewer, 243 N.C. App. 776 § 2.16 710 | 30×213 | "[I]f the defendant supplements his motion to dismiss with a affidavit or other supporting evidence, the allegation [in the complaint] can no longer be taken as true or controlling and plaintiff cannot rest on the allegations of the complaint." Id. Nevertheless, if an affidavit affirms the allegations of the complaint... in such a case, the plaintiff's burden of establishing prima facie showing of personal jurisdiction exist can still be satisfied if some form of evidence in the record supports the exercise of personal jurisdiction over the defendant... (citations omitted; internal marks omitted; disc. review denied and appeal dismissed, 133 N.C. 265, 549 S.E.2d 96 (2000). | When an appellate court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, it must affirm the order of the trial court. Rules Civ Proc., Rule 12(b)(2), West's N.C.G.S.A. § 1A-1. | "If a defendant supplements his motion to dismiss for lack of personal jurisdiction with an affidavit or other supporting evidence, can the allegations in the complaint no longer be taken as true or controlling?" | Pretrial Procedure - Memo #3311 - C-3.98.docx | LEGALEASE 00046391- LEGALEASE 00046392 | Condensed, SA, Sub 0.81 | 0.81 | 0 | 1 | | 1 | |
| 17561 | Nguyen v. Spriggs, 357 No. 531 | 369×9311 | The evident intention of Mrs. Spriggs was to invest the agent with broad discretion in the effecting of either a contract of sale or a sale. "Where the agent has authority to exercise discretion his exercise thereof will bind the principal..." Cannon v. Cannon, 279 P.a. 233, 123 A.2d 233, 234, 235; Alco M. Spriggs had entered in her agents the power to enter into a contract of sale with a purchaser... (citations omitted)... In such a case the agents were clothed with the same power and authority that the principal could have had in effecting contracts of sales or a sale. | Where agent has authority to exercise discretion, his exercise thereof will bind principal. | "When an agent has authority to exercise discretion, will his exercise bind the principal?" | 04.1339.docx | LEGALEASE 00154258- LEGALEASE 00154259 | Condensed, SA | 0.94 | | 0 | | 1 | |
| 17562 | Ingram v. Mandler, 56 F.3d 994 | 83f×481 | A promissory note, like an ordinary chose in action, may be transferred by assignment without the actual delivery of the note. Barkas v. Barkas Kaskel & Co. C.C.A. 61 189 F. 832; Stafford v. Bond, 100 CAL 213, 33 P. 385, 386; Johnson v. Roberts, De Vault, N.Y. Sup. 27... In such case, the writing to constitute an assignment of a chose in action, no particular form of words is necessary, provided they manifest an intent to transfer the title thereto. (Dunn v. Sigua Iron Co.), C.C.A. 5, 89 F. 8; C.C.A. 5, 322; S.C. 4, p. 906... 73. We conclude that the contract effectually transferred the title to | Note may be transferred by assignment without actual delivery. | "Could a promissory note be transferred by assignment without the actual delivery of the note?" | 010794.docx | LEGALEASE 00155334- LEGALEASE 00155335 | Condensed, SA | | 1 | 0 | | 1 | |
| 17563 | Anthony v. Anthony, 642 F. Supp. 2d 1366 | 173h×1341 | Other circuits have, however, held that TILA liability period and the litigation, is money mere. Plaintiffs are not defined, nor could they be, because the plaintiff purchased money or and later discovered, due to a discrepancy in the monthly payments, that the contract was not the one they signed and was a forgery. In some of these cases, moreover, TILA nullity, and the plaintiffs were not obligated under it. Because TILA requires disclosures only "to whom" the person is obligated," the Seventh Circuit concluded that TILA did not provide a remedy to the forgery. (citing 15 U.S.C. § 1631)); see also Ma-Chevrolet-Discover Financial Services 4488 133 3d... in the D.C. 2007) (holding that a wife's fraudulent conduct in obtaining a credit card in both her and her husband's name did not make the credited liable for failing to send the husband the required disclosures). | Homeowner's lack of assent to forged mortgage refinancing documents never actually rendered them obligated under the mortgage, and required for "consummation" of contract, within meaning of TILA disclosure requirements for providing good faith estimates of credit terms and correcting any inaccuracies prior to consummating residential mortgage transactions, and thus, TILA provided homeowner no remedy against lender. Truth in Lending Act, § 128(b), 15 U.S.C.A. § 1638(b); 12 C.F.R. § 226.2(a)(13). | "Does TILA provide a remedy in cases of forged contracts?" | Consumer Credit - RC_6180.docx | ROSS 00331039964-ROSS-003110597 | Condensed, SA, Sub 0.43 | 0.43 | | 1 | | 1 | |
| 17564 | In re Quenten, 266 B.R. 760 | 173h×1557 | Some years ago, the Tenth Circuit rejected a creditor's argument that the obligor had to pay or tender the balance due on the loan before the obligor's action for rescission could commence under the TILA. Reihart v. Cagle. (V47 F.2d 500, 501-503 (10th Cir 1976)). The Circuit said, "Under the Truth in Lending Act the tender required to effectuate rescission is not required by the obligor by the obligor upon rescission... (citation omitted) ... 1635(a) requires only that the obligor exercise his right of rescission by notifying the creditor within the prescribed time limits of his intent to rescind. Palmer v. Wilson, ... 502 F.2d 862, 864... (9th Cir 1974)) that saying this, however, the Circuit also held that the district court had not abused its discretion by refusing to make the rescission of the security interest effective unless and until the mortgagee tendered the amount owing. In other words, the tender obligation, even though the first sentence of § 1635(b) said this (as noted, that section renders the obligor "is not liable for any finance or other charge." § 47 P.d et 505. Consequently, it is unclear whether the Rachach court would have allowed a district court to overrule the security interest until the obligor's tender, since the ultimate effect of rescission that is stated in the first sentence of subsection (b). | Obligor's decision to rescind a transaction under the Truth in Lending Act (TILA) is effective as soon as creditor receives the required notice of rescission, and immediately voids creditor's security interest. Truth in Lending Act, § 125(a-b), as amended, 15 U.S.C.A. § 1635(a, b); 12 C.F.R. § 226.23(d). | "Can the obligor exercise his right of rescission by notifying the creditor within the prescribed time limit of his intent to rescind?" | 01.0991.docx | LEGALEASE 00154841- LEGALEASE 00154842 | Condensed, SA, Sub 0.74 | 0.74 | | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed 15,944 | Substantive Additions 14,473 | Selection & Arrangement 23,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | | | 21,876 | 9,029 |
| 17565 | Pereira v. Am. Honda Fin. Corp., 278 N.C. Super. 221 | 172H+1502 | Congress amended the TILA in 1980 to narrow considerably the scope of assignee liability in consumer loan transactions. Compare 15 U.S.C. § 1641 (1976), with * 1641(a) (1980). Ramsden v. Drake Motherlode Corp., 239 F.3d 436, 2000 Daily Journal D.A.R. (2000) Sept. 96-75, at 3 Ninth Cong. 1st Sess. (1979), reprinted in 1980 U.S.Code Cong. & Admin News 280, 283; see also Quirk v. Scott, 656 F.2d 689, 693 (7th Cir 1981, cert. denied, 325 U.S. 1141, 139 S.Ct. 1032, 143 L.Ed 2d 41 (1999). It was this 1980 amendment that limited the liability of voluntary assignees to violations "apparent on the face of the disclosure statement." 15 U.S.C.A. * 1641(a). | "Under TILA, will an assignee be liable if the violation is apparent on the face of the disclosure statement?" | Consumer Credit - Memo25-AM_61336.docx | ROSS-003036840 | Condensed, SA, Sub 0.14 | 0.14 | 0 | | | 1 | 1 |
| 17566 | State Univ. of New York v. Syracuse Univ., 285 A.D. 59 | 360+199 | The court also has dismissed on jurisdictional grounds a counterclaim by Syracuse University because of an action against State University for money due under the contract. The State University constituted an integral part of the government of the State and when it is sued the State is the real party. (Education Law, § 352 et seq., 355 ...) Mortgage Commission, 285 N.Y. 425, 374 E.2d 15; Heiney v. State of New York, 205 App.Div. 793, 374 N.E.2d 05, affirmed 267 N.Y. 630, 33 N.E.2d 287. The Supreme Court has not acquired jurisdiction of the counterclaim. | State University was an integral part of State Government, and when such University was sued through counterclaim in action by State University against another University for specific performance of a contract between the two Universities, State was the real party, and, therefore, in such action, the Supreme Court would not acquire jurisdiction of the counterclaim. Education Law, § 352 et seq. | 01735.docx | LEGALEASE-00155364-LEGALEASE-00155366 | Condensed, SA, Sub 0.33 | 0.33 | | 1 | | 1 | 1 |
| 17567 | Roam v. Farr, 24 Ark. 161 | 302+294(5) | Part of the law under which the plaintiffs in error justify being sued for unconstitutionally, and their pleas being entire, and bad for part is bad for the whole, (Chit. Pleadings, vol. 1, p. 461) and if they had demurred, the whole, the justification or excuse for refusing to accept the rest of the defendant in error at satisfaction. | "Is a plea which bad in part, bad in the whole?" | Pleading - Memo1549 RMM_61969.docx | ROSS-003028690-ROSS-003028691 | Condensed, SA 0.53 | 0.53 | | 1 | 1 | 1 | 1 |
| 17568 | Appling v. Stuck, 164 N.W.2d 810 | 302+16 | What those cases maintain is that a pleading must present a legally justiciable issue. A deficiency will not be supplied by the court. | A pleading must present a legally justiciable issue; a deficiency will not be supplied by the court. | 02775.docx | LEGALEASE-00155444-LEGALEASE-00155445 | Condensed, SA 0.23 | 0.23 | 0 | | 1 | 1 | 1 |
| 17569 | Walker v. Archer, 2016+ 01731+ App. 4 Cir 103(7/8b), 205 So. 3d 030 | 307A+690 | Importantly, where a suit is dismissed under Article 561 of the Louisiana Code of Civil Procedure, the dismissal is "without prejudice" and "with prejudice." See La. Code Civ. Proc. art. 561; *Clark v. State, Dept. of Public Safety & Corrections, 2002-0041, p. 11 (La.App. 4 Cir. 05/07/03), 883 So.2d 452, 458 ("It is well settled that the dismissal of a suit on the grounds of abandonment is a dismissal without prejudice.") | "Where a suit is dismissed on the basis of abandonment, is the dismissal with prejudice or without prejudice?" | Pretrial Procedure - Memo # 10214 - C - DHA_61720.docx | ROSS-003279423-ROSS-003279424 | Condensed, SA, Sub 0.78 | 0.78 | 0 | 1 | | 1 | 1 |
| 17570 | Farinelli v. Campagna, 566 N.E. App. 597 | 307A+563 | Whenever there has been a failure to comply with these rules or when no action has been taken in a suit for a period of sixty (60) days, the court can moot roll or parte or on its own motion shall order a hearing for this purpose of determining such cases. The court shall order a hearing dismissal at plaintiff's cost if the plaintiff had not shown sufficient cause for all the actions. | Rule governing dismissal of actions for failure to prosecute or comply with rules not limited to application to dismissal on merits. Rule 41(B). | 039099.docx | LEGALEASE-00155248-LEGALEASE-00155249 | Condensed, SA, Sub 0.09 | 0.09 | | | | 1 | 1 |
| 17571 | Laurie v. Ezard, 595 S.W.2d 336 | 307A+563 | Defendants rely primarily on Sterrett v. Missouri Edison Company, supra. There plaintiff stated that the case was ready for trial more than two years before it was dismissed. Plaintiff's attorney was attending to other cases and there was no reason why this case was not tried. Whether a case is prosecuted diligently must be determined on a case-by-case basis. In Tucker, 447 S.W.2d 560, 563 (Mo.App.1969). The circumstances in the present case indicate a lack of diligence by plaintiff's on their attorney. Plaintiff's claim that some of the delay was due to the illness and death of the attorney initially hired by plaintiffs and the usual delaying tactics of defendants. For whatever reason, the case was not ready for trial, but steps were being taken toward trial at the time of dismissal. Defendants were content to allow the case and without taking any steps toward dismissal or to move it to trial until plaintiffs commenced activity to obtain further discovery. Plaintiffs then at least made a showing of attempted. | Whether a case is prosecuted diligently, decided on case-by-case basis. | 039116.docx | LEGALEASE-00155341-LEGALEASE-00155342 | Condensed, SA 0.93 | 0.93 | | | | 1 | 1 |
| 17572 | Gorwode v. Indiana Dep't of State Revenue, 998 N.E.2d 014 | 371+2005 | When ruling on a motion to dismiss for lack of subject matter jurisdiction, this Court may consider the petition, the motion, and any supporting affidavits or evidence. See IND. T.R. v. Magness, 784 N.E.2d 397, 400 (Ind 2001). Bisignano v. State Farm Ins. Co., 713 N.E.2d 851, 854 (Ind.App 1999). I note, desired. Furthermore, the Court may weigh the evidence to determine the existence of requisite jurisdictional facts, resolve factual disputes, and devise procedures to ferret out the facts pertinent for jurisdiction. See GKN Co., 744 N.E.2d at 400; Bispinano, 713 N.E.2d at 854. | Requirement for court to be original tax appeal, such that Tax Court has exclusive subject matter jurisdiction, that case be initial appeal of Department of Revenue's final determination; consideration is whether an administrative remedies requirement, in certain instances, therefore, lack of final determination from Department, which is equivalent to failure to exhaust administrative remedies, deprives Court of subject matter jurisdiction in a case. West's A.I.C. 33-26-3-1; Tax Court Rule 13. | 093949.docx | LEGALEASE-00154893-LEGALEASE-00154893 | Condensed, SA, Sub 0.15 | 0.15 | | | 1 | 1 | 1 |
| 17573 | Tigani v. CoMo Co. Parking Auth., 233 Cal. 185 | 30B+9311 | The county cannot do by indirection that which it could not do directly, as it would lose its only means of payment to bond power that it possessed by the principal. See, in this connection, Code * 4,105 and 4 § 101; Durant v. Garrett, 85 Cal. 724, 133 s., 746 Cal.); ch. Agency, * 9016, p. 180. | No greater power can be conferred upon an agent than that possessed by the principal. Civ. Code 2304.3 & 201. | Principal and Agent - Memo 381 - RC_61624.docx | ROSS-003294768-ROSS-003294769 | Condensed, SA, Sub 0.44 | 0.44 | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17574 | State v. Schmitz, 559 N.W.2d 701 | 110+1175 | The district court instructed the jury that, in order to find Schmitz guilty of pattern harassment, the state must prove all the elements beyond a reasonable doubt. See State v. Merrill, 428 N.W.2d 361, 366 (Minn.1988) (due process requires that the state prove each of the elements of the crime beyond a reasonable doubt). The trial court specifically instructed the jury that a "pattern of harassing conduct" was an element of the crime. Schmitz claims that the district court committed an error in fundamental law by not instructing the jury that, in order to find him guilty beyond a reasonable doubt of a pattern of harassing conduct, it must find beyond a reasonable doubt that he committed the applicable underlying criminal offenses. But the statute does not require proof of a pattern of harassment convictions. It is enough for the state to prove beyond a reasonable doubt all elements of the pattern harassment statute, including that defendant engaged in a "pattern of harassing conduct," and that defendant acted within the elements of the underlying offenses. Here, the trial court did instruct the jury accordingly. Schmitz also criticizes the jury instructions for failure to define the term "pattern." Under any reasonable definition of "pattern," the evidence of repeated flagrant harassment behavior by Schmitz in this case would fit within it. See State v. Grube, 531 N.W.2d 484, 491 n. 11 (Minn.1995) (defendant's conduct constituted a pattern of domestic abuse under any reasonable definition of the term "pattern"). We conclude that the jury instructions adequately set forth the law governing the pattern harassment charge against Schmitz. | Improper submission of special interrogatory not relating solely to sentencing, which was to be answered if jury found defendant guilty of pattern harassment, was harmless beyond a reasonable doubt because it did not lead jury to a finding of guilt. M.S.A. § 609.749, subd. 5. | "What does the state need to prove in order to find a defendant guilty of ""pattern harassment""?" | Threats - Memo #77 - C - LB_61645.docx | ROSS-003295223-ROSS-003295224 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 17575 | Berg v. State Bd. of Agric., 919 P.2d 254 | 156+52(1) | Defendants argue that the situation was actually one of equitable estoppel. To establish a claim of equitable estoppel, "the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must rely on the other party's conduct with resultant injury". Committee for Better Health Care for All Colo. Citizens v. Meyer, 830 P.2d 884, 891"92 (Colo.1992). Equitable estoppel, because it is based on the misrepresentation of facts, is fundamentally a tort theory. Lehman v. City of Louisville, 857 P.2d 455, 457 (Colo.App.1992); Franks v. City of Aurora, 147 Colo. 25, 362 P.2d 561, 564 (1961). The CGIA is applicable to such claims. Lehman, 857 P.2d at 457. | Equitable estoppel, because it is based on misrepresentation of facts, is fundamentally tort theory. | Is equitable estoppel fundamentally a tort theory? | Estoppel - Memo #123 - C - CSS_62025.docx | ROSS-003280497-ROSS-003280498 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 17576 | Lampton v. LaHood, 94 Md. App. 461 | 156+52(1) | In Chandlee v. Shockley, 219 Md. 493, 502, 150 A.2d 438 (1958), the Court of Appeals expressly held "an executor or administrator against whom a claim is asserted by virtue of [the statutory predecessor of " 8-103] may" by his conduct "waive or be estopped to rely on the time limit of the statute." As the Chandlee Court noted, there is some authority to the contrary. See Chandlee, 219 Md. at 498-501, 150 A.2d 438. This principle is, however, "well settled" in Maryland. See Nyitrai v. Bonis, 266 Md. 295, 299, 292 A.2d 642 (1972); Hallowell, supra and numerous cases cited and discussed therein.6 Moreover, it is now well established that "an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of the other." Knill v. Knill, 306 Md. 527, 534, 510 A.2d 546 (1986). Indeed, all that is needed to create an equitable estoppel is (1) voluntary conduct or representation, (2) reliance, and (3) detriment. Id. at 535, 510 A.2d 546. All three elements are alleged here; indeed, Lampton introduced evidence of all three. Furthermore, LaHood concedes the first element, his representation, and the third, Lampton's detriment. | All that is needed to create equitable estoppel is: voluntary conduct or representation, reliance, and detriment. | What is needed to create an equitable estoppel? | 017775.docx | LEGALEASE-00156100-LEGALEASE-00156101 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 17577 | Perez v. Golden Empire Transit Dist., 209 Cal. App. 4th 1228 | 302+34(2) | Where a pleading includes a general allegation, such as an allegation of an ultimate fact, as well as specific allegations that add details or explanatory facts, it is possible that a conflict or inconsistency will exist between the general allegation and the specific allegations. To handle these contradictions, California courts have adopted the principle that specific allegations in a complaint control over an inconsistent general allegation. (Skopp v. Weaver (1976) 16 Cal.3d 432, 437, 128 Cal.Rptr. 19, 546 P.2d 307; 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, " 450, p. 584.) Under this principle, it is possible that specific allegations will render a complaint defective when the general allegations, standing alone, might have been sufficient. (Careau & Co. v. Security Pacific Business Credit, Inc. (1990) 222 Cal.App.3d 1371, 1390, 272 Cal.Rptr. 387; 49A Cal.Jur.3d (2010) Pleading, " 67, p. 112.) | Under the principle that specific allegations in a complaint control over an inconsistent general allegation, it is possible that specific allegations will render a complaint defective when the general allegations, standing alone, might have been sufficient. | Do specific allegations in a complaint control over an inconsistent general allegation? | Pleading - Memo 561 - RMM_62369.docx | ROSS-003280618-ROSS-003280619 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 17578 | Argence v. Box Opportunities, 95 So. 3d 539 | 307A+581 | Nevertheless, we do note that the trial court erred by ordering the dismissal of Argence's suit with prejudice. A dismissal on grounds of abandonment may only be made without prejudice. Tasch, Inc. v. Horizon Group, 08"0635, p. 4 (La.App. 4 Cir. 1/7/09), 3 So.3d 562, 565, citing DeSalvo v. Waguespack, 187 So.2d 489 (La.App. 4th Cir.1966). See La. C.C.P. arts. 2129 and 2164. | Dismissal of an action on grounds of abandonment may only be made without prejudice. LSA-C.C.P. arts. 561, 2129, 2164. | Can a dismissal on the grounds of abandonment only be made without prejudice? | Pretrial Procedure - Memo # 10257 - C - SN_61762.docx | ROSS-003282262-ROSS-003282263 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 17579 | State v. Payne, 178 Ohio App. 3d 617 | 3.77E+28 | Austin's inability to leave her house due to her fear of Payne is sufficient to find that she suffered some "temporary substantial incapacity" due to the mental distress caused by Payne's conduct. "Substantial incapacity does not mean that the victim must be hospitalized, or totally unable to care for herself. Incapacity is substantial if it has a significant impact upon the victim's daily life." State v. Horsley, 10th Dist. No. 05AP"350, 2006-Ohio-1208, 2006 WL 648849, at " 48. It is sufficient that Austin was so fearful as to be unable to leave her home for the approximately six and one-half hours Payne continued to drive past. This incident, albeit brief, made a significant impact on Austin's daily activities. | Substantial incapacity sufficient to support a conviction for menacing by stalking does not mean that the victim must be hospitalized, or totally unable to care for herself; incapacity is substantial if it has a significant impact upon the victim's daily life. R.C. § 2903.211(A)(1), (D)(2)(a, b). | "When is the victim's substantial incapacity ""substantial"" for the purposes of a stalking conviction?" | 046821.docx | LEGALEASE-00155992-LEGALEASE-00155993 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17580 | Wheelock v. State, 778 So. 2d 146 | 67+7 | Burglary is akin to burglary in habitable security. "The three essential elements of burglary of a dwelling are (1) breaking and entering into a dwelling; (2) knowledge that such entry is without permission; and (3) criminal intent to commit an offense within the dwelling." Swilley v. State, 734 So. 2d 455, 457 (Fla. 1st DCA 1999). One cannot commit the crime of burglary of his own possession, because in the instant of committing, there is an element of trespass. "Ownership means any possession which is rightful as against the burglar and is satisfied by proof of special or temporary ownership, possession, or control." | "Ownership," for purpose of burglary prosecution, means any possession which is rightful as against burglar and is satisfied by proof of special or temporary ownership, possession, or control. West's F.S.A. § 810.02. | What does ownership mean in the context of burglary? | Burglary - Memo 272 - RC_62472.docx | ROSS-000156169-ROSS-000156170 | Condensed, SA, Sub 0.64 | | 0 | | 1 | 1 | |
| 17581 | State v. Lafaele, 513 So. 2d 196 | 67+16 | The essential elements of the crime of simple burglary, which must have been proven by the State in this case, are: (1) unauthorized entry into the vehicle; and (2) that defendant had the specific intent to commit theft or a felony therein. LA R.S. 14:62; State v. Vincent, 387 So.2d 1097 (La.1980). The first element can be satisfied even though the defendant did not personally enter the burglarized vehicle because a "lookout" or person providing a means of escape by driving a "getaway" car is also a principal to a burglary. LA R.S. 14:24; State v. Helmer, 415 So.2d 1175 (La.App. 1st Cir.1984). | A "lookout" or person providing means of escape by driving a "getaway" car is a principal to a burglary. LSA-R.S. 14:24. | Does serving as a look out make a person a principal in burglary? | 03.0090.docx | LEGALEASE-00156573 LEGALEASE-00156574 | Condensed, SA, Sub 0.79 | | 0 | | 1 | | |
| 17582 | Reynmer v. Patton, 400 F.2d 909 | 411+1 | However, a claimant's right of enjoyment of the common property, extends only to the products of its proper use and not to a taking of the land itself. See Deaprats v. Ferti, 20 Mees. 119; 14 N.W. 511 (1883); Nevada v. Kentucky Lumber Co., 104 Ky. 559, 565, 58 S.W. 985 (1900); Freeman, Cotenancy & Partition 7 299 (2d ed. 1886). "In Washington, standing timber owned by the tenant of real property agrees which it is growing has always been regarded as real property." R. Johnson, Washington Timber Deeds and Contracts, 13 Wash.L.Rev. 261 (1957). Explosion v. Fuel Concern Shingle Co., 74 Wash. 424, 133 P. 1030 (1913). Forever v. Deep Reset Logging Co., 79 Wash. 156, 140 P. 361 (1914). Courts generally hold that a claimant has no right to remove substantial amounts of timber from land having a value primarily for its timber and that he do so constitutes waste for which he is liable. E.g., Providence Life & Trust Co. v. Wood, 84 W.Va. 516, 123 S.E. 276, 41 A.L.R. 570 (1924); Nevada v. Kentucky Lumber Co., 104 Ky. 559, 58 S.W. 985 (1900). Graded a timber is a burden. 3 H.Cal.App 247th-2087 2:60 551 (3d Dist. 1954). See generally 2 H. Tiffany, Real Property * 651 (3d ed. B. Jones 1939); Annot. 2 A.L.R. 991 (1919); Annot., 41 A.L.R. 582 (1926). | Under Washington law, standing timber owned by owner of real property on which it is growing is regarded as real property. | Can standing timber be considered as real property? | Woods and Forests - Memo 1 - RC_62517.docx | ROSS-000196560-ROSS-000196561 | Condensed, SA, Sub 0.9 | | 0 | | 1 | 1 | |
| 17583 | Fitch v. Commonwealth Health Ins. Connector Auth., 459 Mass. 855 | 24+104 | The term "national origin" on its face refers to the country where a person was born or, more broadly, the country from which his or her ancestors came. Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). (quoting). In contrast, an alien is a person who was born outside the jurisdiction of the United States, who is subject to some foreign government, and who has not been naturalized under U.S. law. Black's Law Dictionary 84 (9th ed. 2009) (defining "alien"). A foreigner, one born abroad," a person who owes allegiance to a foreign government," and "is the citizen or subject of another country." The distinction between aliens and citizens by way of the United States is an issue of immigration status only. Congress alone has the power to regulate immigration does not mean that the United States lacks emigrants and the attendant possibility that aliens will have families and cultural roots in the United States. Immigration, See Aurora * 44, 143 Mass. born or naturalized in the United States and also may be citizen of United States. | An "alien" is a person who was born outside the jurisdiction of the United States, who is subject to some foreign government and who has not been naturalized under United States law. | Who is an alien? | Aliens_Immigration ans_LFBM02_N424548 7_NYH5zWH32H0.docx | ROSS-000000278-ROSS-000000279 | Condensed, SA, Sub 0.83 | | 1 | | 1 | | |
| 17584 | Crichev v. Ballard, 180 N.C. 111 | 83F+535 | And in section 2308, "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires in addition the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made. "Without such indorsement, the cases uniformly hold that the holder only acquires the equitable title, and his claim is subject, as stated, to the equities and defenses existing between the original or prior parties. 1 Bd Bank v. McEachern, supra; Jenkins v. Wilkerson, 141 N. C. 147; Sixth 1. | Under Negotiable Instruments Act, §3:1173, 2308, 2212, an indorsement written on a note payable to order, but not signed by the payee, or by any one in his behalf, does not make the transferee of the note a holder in due course, but gives him only an equitable title thereto. | Does a transferee without indorsement acquire only equitable title? | 009091.docx | LEGALEASE-00157151 LEGALEASE-00157152 | Condensed, SA, Sub 0.63 | | 0 | | 1 | | |
| 17585 | Grasso Sec. Int. v. Fellows, 43 Fern. 467 | 38+57 | Since the case of Galbreter vs. Cox, however, it has been established, that notice to the debtor is not necessary in the case where instruments which are negotiable, or assignable at common law, or by statute, are assigned so as to pass the legal title. Muhlad Pot. 1st, Co. v. Chamb 5; 14 Sneed, 269. In kegg vs. Powell, I Head, 22 I, the same ruling was made, and it was held even from the report of that case, that the assignment must have been of a character which did not transfer the legal title to the note assigned, though it is not distinctly so stated in Mabry vs. Pullum, 2 Head, 146 Mere, however, there is no attempt to secure a debt by the assignment of notes, and other choses in action, was expressly reserved by the court as not being necessary to a decision. | When a bond, bill, note or like evidence of debt is assigned, and is transferred by actual manual delivery to the assignee, whether the legal title in the instrument passed by the assignment or not, no notice is required to be given to the debtor, of the assignment. | Is notice to the debtor required for the transfer of title to negotiable instruments? | 007050.docx | LEGALEASE-00157161 LEGALEASE-00157162 | Condensed, SA, Sub 0.66 | | | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17586 | Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111 | 83D+481 | We are not aware of any "controlling precedent of the Court of Appeals of ... specific incantations of "assignment" are unnecessary to perfect a transfer of a note. | Under New York law, specific incantations of "assignment" are unnecessary to perfect a transfer of a note. | Are specific incantations necessary to perfect a transfer? | Bills and Notes Memo 1239 - H_6203.6.docx | ROSS 000128758-ROSS-000128759 | Condensed, SA, Sub 0.89 | 0.89 | 0 | 1 | | 1 | |
| 17587 | Barnett v. Dodge, 149 L. 740 | 8,30E+10 | The court in its charge to the jury, instructed them that both the notes declared on were to be considered by them as subject to the equities ... as just as the obligation or debt imposed on the maker. | If no particular place of payment is specified in a note, the law of the place of contract governs as to the obligation and payment imposed on the maker. | Which law governs a note? | 01093.docx | LEGALEASE-00157942-LEGALEASE-00157943 | Condensed, SA, Sub 0.84 | 0.84 | 0 | 1 | 1 | 1 | |
| 17588 | In re Rag Mem'l Hosp., 19 B.R. 885 | 154+321 | The Plaintiff has raised the issue of "equitable estoppel" as a bar to the actions of DHHS both as to the commencement of the project prior to July 1, 1979, and as to the issue of continuous construction thereafter. Since this argument was partially based upon DHHS which have been denied to build the facility ... unless King did not make a reasonable effort to build the facility | Estoppel means nothing more than the application of rules of fair play | Does estoppel mean nothing more than the application of rules of fair play? | 01780.docx | LEGALEASE-00156733-LEGALEASE-00156734 | Condensed, SA | 0.96 | 0 | 0 | | | |
| 17589 | Sun Oil Co. (Delaware) v. Madeira, s 355 SW 2d 726 | 156+321 | Since the lease does not require Sun to pay insuran ... contract does not otherwise exist. | Estoppel is a defensive theory and does not create a contract that does not otherwise exist? | Does estoppel create a contract that does not otherwise exist? | Estoppel - Memo #146 - C - C55_G2347.docx | ROSS 000298218-ROSS-000298219 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | | 1 | |
| 17590 | Missouri Pac. R. Co. v. Am. Statesman, 552 S.W.2d 99 | 156+321 | American Statesman attempts to relieve itself from liability by its contention that Missouri Pacific's "waiver" of the clearance height excused any subsequent negligence ... "right" which it could waive in insuring that the first tower clearance obstacle was freestanding. | The function of waiver or estoppel is to preserve rights, not to create independent causes of action. | Is the function of estoppel to preserve rights? | Estoppel - Memo #148 - C - C55_G2349.docx | ROSS 000298272-ROSS-000298273 | Condensed, SA | 0.91 | 0 | 1 | | 1 | |

3099

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 1596 | Bd. of Co. Comm'n of Sumrvl Cty. v. DeLozier, 917 P.2d 714 | 156+53(1) | The doctrine of promissory estoppel should not be confused with the doctrine of equitable estoppel. The doctrine of equitable estoppel is applicable to promises, the doctrine of equitable estoppel is applicable to misstatements of fact. See, Committee for Better Health Care v. Meyer, 830 P.2d 884 (Colo.1992). Specifically, to establish a claim of equitable estoppel the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must rely on the other party's conduct to his detriment. | While doctrine of promissory estoppel is applicable to promises, doctrine of equitable estoppel is applicable to misstatements of fact. | Is equitable estoppel applicable to misstatements of fact? | 01788.4.docx | LEGALEASE 00157770 - LEGALEASE 00157771 | Condensed, SA | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 1592 | Smith v. Melson, 135 Ariz. 119, 134 | 315+609 | The Smiths also contend that their interpretation is correct because the transaction involving the acreage was not an exchange of any sort. They argue that it was not a simultaneous exchange transaction. The Exchange of Public Lands: These statutes deal only with exchanges of land for land and therefore do not apply here. The transaction was made pursuant to A.R.S. * 37-504, which allows the land department to accept conveyances "by gift, in trust, or otherwise." Furthermore, the Rangeland Pasturing Agreement did not require an exchange specifically under A.R.S.* * 37-501 to '611. The final argument in this point is that an exchange of assets for cash is not a transfer of any interest in property. An exchange for the simple, for example. Two cases are cited. We agree with the more modern interpretation of "exchange" as "a reciprocal transfer of property for other property of value, rather than for a money consideration." An exchange of "property" . . . and therefore this transaction qualifies as an "exchange." | "Exchange," under modern common-law definition is reciprocal transfer of property for other property of value, rather than for money consideration. A.R.S. §§ 37-504, 37-601 to 37-611. | "In an exchange of property, is the consideration received for the property given?" | 01820.9.docx | LEGALEASE 00157399 - LEGALEASE 00157400 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 1593 | Altiv v. Metonitol Atl. of Am., 234 Ky. 714 | 217+1900 | 23 It is suggested in brief for appellee that the contract shows, on its face, and so states, that it is not an insurance policy. But that is wholly beside the question. No one can change the nature of an insurance business by declaring in the contract that it is not insurance. As was said in the case of State v. Beardsley, 88 Minn. 20, 92 N. W. 472, 473: "The real character of this promise, or of the act to be performed, cannot be changed by changing the name or absence of words in the contract itself, and it is wholly immaterial that upon its face this contract, does not expressly purport to be one of insurance, and that this word nowhere appears in it. It is the substance to be determined by an examination of its contents, and not by the terms used." | One cannot change the nature of insurance business by declaring in contract that it is not insurance. | Will the nature of insurance business change if it is expressly declared in the contract that it is not insurance? | 01956.6.docx | LEGALEASE 00157385 - LEGALEASE 00157386 | Condensed, SA | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 1594 | Telford v. Smith Cty., Texas, 155 Idaho 497 | 307A+690 | "A dismissal with prejudice constitutes an adjudication of final determination on the merits and extinguishes or bars any future claim." 24 Am.Jur.2d Dismissal * 1 (2008) (footnotes omitted). "The case law holds, consistent with Rule 41(b), that a dismissal for lack of subject matter jurisdiction cannot be a dismissal with prejudice. "Berrett v. Benken," 353 Ill.App.3d 134 (7th Cir.2013). Therefore, the district court erred in dismissing Ms. Telford's claims with prejudice as to appearing Defendant. For the reasons set forth below. | A dismissal for lack of subject matter jurisdiction cannot be a dismissal with prejudice. Rules Civ.Proc., Rule 41(b). | Can a dismissal for lack of subject matter jurisdiction be a dismissal with prejudice? | ROS5-02021.749 | ROS5-00021749 | Condensed, SA | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 1595 | Comprehensive Pain Mgmt. v. Blakely, 312 Ga. App. 721 | 313B+4005 | Although under OCGA * 9* 11* 9.35 a plaintiff may voluntarily dismiss the claim before the trial court rules and then potentially refile the omission of the affidavit was a mistake, nothing in the relevant portions of the statutes permits a party to add the requisite affidavit by amendment. * If the required affidavit is not filed with the complaint, the complaint is subject to dismissal for failure to state a claim. A dismissal for failure to state a claim is a dismissal on the merits and is with | If the required expert affidavit is not filed with the complaint in a medical malpractice action, the complaint is subject to dismissal for failure to state a claim. West's Ga.Code Ann. §§ 9-11-9.1(a), 9-11-12(b)(6). | Is a dismissal for failure to state a claim a dismissal on the merits and is with prejudice? | Pretrial Procedure - Memo # 10315 - C - SL_b2435.docx | ROS5-00021810 ROS5- 00197860 | Pretrial Procedure - Memo # 10315 - C - SL_b2435.docx | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 1596 | Ex parte W.J.A., 375 So. 3d 652 | 20+542 | In his petition, the father argues that the probate court is required to restrict its intervisory custody order and to enter an order awarding him custody of the child. In support of this argument, he is relying on the proportionate adoption upon a final judgment of dismissal. See Maddox v. Maddox, 276 Ala. 197, 159 So.2d 445, 481 (1964) (discussing Ward v. Dunn, 92 Ala. 1081, 1115 So. 182 (1973)). Like other interlocutory orders, an interlocutory custody order entered by a probate court in an adoption proceeding is subject to the final judgment of adoption. See Ex parte A.M.P., 997 So.2d 1008, 1015 (Ala.2008) ("Once the final order of adoption is entered, the interlocutory custody order becomes moot."). It would follow that an order dismissing an adoption petition due to the lack of consent by the natural mother would automatically render the interlocutory custody order void, and thereby restore the | Probate court order that putative father had not abandoned child in six months prior to her birth and thus had not impliedly consented to child's adoption was interlocutory, and thus judgment in adoption proceeding was not a final judgment; petition for adoption, for purposes of obtaining an interlocutory order, where it did not resolve entire adoption proceeding. (Per curiam opinion, with two Judges concurring and three Judges concurring in result.) Code 1975, § 26-10A-9(a)(1); Rules | Do interlocutory orders become unenforceable upon a final judgment of dismissal? | 02116.4.docx | LEGALEASE 00156985 - LEGALEASE 00156986 | Condensed, SA | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 1597 | First Fed. Bank v. Aldridge, 230 N.C. App. 187 | 307A+695 | With respect to the amendment of pleadings, the North Carolina Rules of Civil Procedure provide that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served or ... Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." N.C. Gen. Stat. * 1A-1, Rule 15(a). Our dismissal of plaintiff's complaint under Rule 12(b)(6), the trial court was no longer empowered to grant plaintiff leave to amend under Rule 15(a). To grant otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy of Rule 12(b)(6) and the expeditious termination of litigation. Id. at 778, 365 S.E.2d at 182 (quotation marks and citation omitted). Moreover, and with regard to the trial court's jurisdiction to complete an adjudication, this Court said [s]ince the dismissal order operates as an adjudication on the merits and, if unappealed is being dismissed has the burden to convince the court that the party deserves a second chance but. | Trial court's failure to sua sponte offer bank an opportunity to amend its defective complaint before dismissing its action against borrower for failure to state a claim with prejudice did not constitute an abuse of discretion, where bank did not move that the dismissal be without prejudice, nor make any motion to amend its complaint. Rules Civ. Proc., Rules 12(b)(6), West N.C.G.S.A. § 1A-1. | Is it the burden of the party whose claim is being dismissed to convince the court that he deserves a second chance? | 02155.6.docx | LEGALEASE 00157167 - LEGALEASE 00157168 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17598 | Falls Cty. v. Perkins & Cullum, 798 S.W.2d 868 | 102+208 | A "claim for affirmative relief" is not defined in the Texas Rules of Civil Procedure, nor is it defined in case law. However, the Dallas Court of Appeals has recognized that a claim for attorney's fees is a claim for affirmative relief.] | A request for attorney fees made in a Declaratory Judgments Act case is a claim for "affirmative relief" authorizing a party to be heard under rule providing that dismissal pursuant to nonsuit rule could not prejudice the right of a party to be heard on a pending claim for affirmative relief. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Is a request for attorney fees a claim for affirmative relief? | 025162.docx | LEGALEASE-00157189-LEGALEASE-00157190 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 17599 | S.C.G. v. J.G.Y., 794 So. 2d 399 | 307A+693.1 | (Emphasis added.) The mother argues that the dismissal of the 1990 action was "without prejudice" and was, therefore, not an adjudication on the merits because the juvenile judge's order stated simply: "Case dismissed. H.B. Lutz, Judge." However, as can be seen from the emphasized phrase in the rule, as quoted above, subdivision (a)(2) of Rule 41 does not apply unless the dismissal is "at the plaintiff's instance." The dismissal of the 1990 action was not at the plaintiff's instance; it was, for all that appears, on the court's own motion following the filing in court of H.L.A. tissue-test results excluding both J.G.Y. and D.S. as the father of the child. The mother argues that the dismissal was not a Rule 41(b) dismissal because J.G.Y., the defendant, did not move the court to enter it. Rule 41(b), however, is not limited to dismissals sought by the defendant. | Rule governing effect of involuntary dismissal is not limited to dismissals sought by the defendant. Rules Civ.Proc., Rule 41(b). | Is the rule governing an effect of an involuntary dismissal not limited to dismissals sought by the defendant? | 025197.docx | LEGALEASE-00157271-LEGALEASE-00157272 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 17600 | Hodge v. Johnson, 852 N.E.2d 650 | 307A+517.1 | Because the trial rules do not address voluntary dismissals by a plaintiff proceeding before a medical review panel, the common law governs. Ilagan v. McAbee, 634 N.E.2d 827, 829 (Ind.Ct.App.1994). Under the common law, a plaintiff has a right to dismiss an action at any time before verdict. Id. Where an action is voluntarily dismissed without prejudice the situation is as though no action had been brought. Id. An open and voluntary renunciation by a plaintiff of his suit, a retraxit, operates as a dismissal with prejudice. Id. | An open and voluntary renunciation by a plaintiff of his suit, a "retraxit," operates as a dismissal with prejudice. | Does a dismissal with prejudice operate as a retraxit under law? | 025262.docx | LEGALEASE-00156879-LEGALEASE-00156880 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 17601 | Edgar Cty. Bank & Tr. Co. v. Paris Hosp., 57 Ill. 2d 298 | 307A+693.1 | Defendants contend next that the dismissal, with prejudice, of plaintiff's cause of action against Dr. Acklin bars plaintiff from further prosecuting its action against these defendants. They argue that "The law is well established in Illinois that dismissal by a court of a cause "with prejudice" is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff and is Res judicata of all questions which might have been litigated in the suit.' The authorities cited by defendants in support of their argument are either not in point or so clearly distinguishable on their facts as to require no further discussion. Although this court has not previously considered the question, the appellate court has held that the dismissal of one defendant, with prejudice, does not bar an action against other defendants who might be held jointly or severally liable (see Elder v. Robins, 7 Ill.App.3d 657, 288 N.E.2d 506; Hansel v. Chicago Transit Authority, 132 Ill.App.2d 402, 270 N.E.2d 553; Holt v. A. L. Salzman & Sons, 88 Ill.App.2d 306, 232 N.E.2d 537) and we so hold.] | The dismissal of one defendant, with prejudice, does not bar an action against other defendants who might be held jointly or severally liable. | "Once having dismissed an action, does the trial court have no jurisdiction to grant affirmative relief to the parties based on their subsequent petitions for affirmative relief?" | 025267.docx | LEGALEASE-00156891-LEGALEASE-00156892 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 17602 | Watson v. Gen. Motors Corp., 479 S.W.2d 104 | 307A+693.1 | The judgment sustained appellee's plea in abatement for the reason that by a previous order in the same case the court had dismissed appellee. The order dismissing appellee, entered February 11, 1970, sustained appellee's position that appellants' petition showed on its face that the cause of action asserted against appellee was barred by the Statute of Limitations. Appellants' petition shows that they also sued Frank Gillman Pontiac. There is nothing in the record to show that this cause of action was severed from that asserted against appellee prior to the date on which the second judgment dismissing appellee was entered. The order of Februrary 11, 1970, was interlocutory, and the court retained jurisdiction to set it aside. Until an interlocutory judgment is set aside, it is valid and binding. It became final when the severance order was entered September 13, 1971. | Until interlocutory judgment of dismissal is set aside, it is valid and binding. | "Until interlocutory judgment of dismissal is set aside, is it valid and binding?" | 025833.docx | LEGALEASE-00157662-LEGALEASE-00157663 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17603 | Frasier v. Palmetto Homes of Florence, 323 S.C. 240 | 308+99 | Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him. Restatement (Second) of Agency " 27 (1958); Muller v. Myrtle Beach Golf and Yacht Club, 303 S.C. at 142, 399 S.E.2d at 433. Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief. Moreover, an agency may not be established solely by the declarations and conduct of an alleged agent. Muller v. Myrtle Beach Golf and Yacht Club, 303 S.C. at 142-43, 399 S.E.2d at 433. | Agency may not be established solely by declarations and conduct of alleged agent. | Can an agency be established solely by the declarations of an agent? | Principal and Agent - Memo 448 - RK_63568.docx | ROSS-003294622-ROSS-003294623 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 17604 | Whitley v. Taylor Bean & Whitacker Mortg. Corp., 607 F. Supp. 2d 885 | 308+1 | "Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co., 376 F.3d 664, 672 (7th Cir.2004). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." Chemtool, Inc., v. Lubrication Techs., 148 F.3d 742, 745 (7th Cir.1998); Tribett v. BNC Mortgage Inc., No. 07 C 2809, 2008 WL 162755, 4, 2008 U.S. Dist. LEXIS 3573, at 12 (N.D.Ill. Feb. 17, 2009). The parties must consent to a principal-agent relationship, which may be created by conduct or contract. Chemtool, Inc., 148 F.3d at 745. In the broker-lender context, if the evidence indicates that "the broker had a close relationship or far more authority than that of simply bringing the borrower and lender together," then the Court "may deem the broker to be an agent of the lender." Taylor, Bean & Whitacker Mortgage Co. v. Cebulak, No. 03 C 7425, 2004 WL 2106605, 12, 2004 U.S. Dist. 18803, at 37"38 (N.D.Ill. Sept. 20, 2004). The existence and scope of an agency relationship are questions of fact. Tribett, 2008 WL 162755 at 4, 2008 U.S. Dist. LEXIS 3573 at 13. | The parties must consent to a principal-agent relationship, which may be created by conduct or contract. | Can the principal-agent relationship be created by contract? | Principal and Agent - Memo 454 - RK_63574.docx | ROSS-003292587-ROSS-003292588 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 17605 | Shoar v. ADT Sec. Svs., 78 F. Supp. 3d 896 | 369k1 | Under Colorado law, an "agent" is generally one who acts for, or in place of, another (i.e., the principal), or is entrusted with the business of another. | Under Colorado law, an "agent" is generally one who acts for, or in place of, another (i.e., the principal) or is entrusted with the business of another." Moses v. Diocese of Colo., 863 P.2d 310, 324 (Colo.1993). | Who is an agent? | Principal and Agent Memo 565-S&S&E.docx | ROSS-003196259-ROSS-003196260 | Condensed, SA | 0.28 | 0 | 1 | 0 | 1 | 1 |
| 17606 | State v. West, 74 Wash. App. 465 | 350H k89 | Our reading of RCW 9A.36.080(1) is consistent with RCW 9A.36.078 wherein the 1993 Legislature expressed its intent to protect all state citizens from threats of harm due to bias and bigotry. The legislature finds that the state interest in preventing crimes and threats motivated by bigotry and bias goes beyond the state interest in preventing other felonies or misdemeanors such as criminal trespass, malicious mischief, assault, or other crimes that are not motivated by hatred, bigotry, and bias, and that provocation of these other crimes inadequately protects citizens from crimes and threats motivated by bigotry and bias. Malicious harassment is separate crime and is not merely a sentence enhancer. | Is malicious harassment a separate crime, and is not merely sentence enhancer | "Threats, Stalking and Harassment - Memo K387 - C - LB_54774.docx" | ROSS-003181770-ROSS-003181771 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 17607 | In re Bayer, 65 Ind. App. 408 | 413+101 | Workmen's Compensation Act includes all employ in industrial pursuits not expressly excepted therein. | In continuing or interpreting an act of the legislature the courts may take into consideration the general scope and purpose of the act and the evils sought to be remedied at the time of its passage. State v. Lowry, 166 Ind. 464, 483, 89 N. E. 980, 484, 1 N. E. 916, Hughes v. Indiana Union Traction Co., 57 Ind. App. 202, 104 N.E. 537, and cases cited. The purpose of the act, as indicated by its title, was to prevent industrial accidents, etc., and to provide compensation and adequate medical and surgical care for those injured by accident while engaged in industrial pursuits. It is manifest that the purpose of the act was to include within its benefits employ who were engaged in industrial pursuits, except those expressly mentioned in the exemption provisions. | Does the Workmen's Compensation Act include all employ in industrial pursuits not expressly excepted therein? | 04770A.docx | LEGALEASE-00157460-LEGALEASE-00157461 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 17608 | Packer v. Roberts, for Use of Wetherell, 40 Ill. App. 613 | 83H k481 | The legal title to a promissory note in this State cannot be transferred by a separate instrument. | The legal title to a promissory note in this State cannot be transferred by a separate instrument. Ryan v. May, 14 Ill. 49; Porter v. Dunn, 31 Ill. 235; Boynton v. Renwick, 44 Ill. 265; Hopkins v. Vobroo, 44 Ill. 25; Barnett et al. v. Hinckley, 124 Ill. 32; Chisburng v. Reymond, 13 Ill. 362. | Can a legal title to a note be transferred by assignment by a separate instrument? | Bills and Notes Memo 1298-PR_63414.docx | ROSS-003294000-ROSS-003294001 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 17609 | OT Indus. v. OT Indus (Or. S.D.), Santaoulis-Sokhberg Als, 146 N.W.2d 312 | 297+164 | A minimum volume requirement is not a disguised franchise fee where the required purchases are made at bona fide wholesale prices for valid business reasons. | In order for there to be a franchise, the agreement must be one "for which the franchise pays, directly or indirectly, a franchise fee." Minn. Stat. 80C.01, subd. 4(d)(1)(1983). Minn Stat § 80C.01, subd 9 (1986), defines a franchise fee "franchise fee" means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges, provided, however, that the following shall not be considered the payment of a franchise fee (a) the purchase of goods or agreement to purchase goods at a bona fide wholesale price; (b) The purchase, at their fair market value, of supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement; The agreement between the parties makes no provision for the payment of a franchise fee. However, OTI argues that two types of payment made to it constitute a franchise fee: the minimum purchase of $3,000 grain moisture testers per year and the required advertising. | What is a franchise fee? | Franchises - Memo 1 - AMG_65641.docx | ROSS-003279764-ROSS-003279795 | SA, Sub | 0.87 | 0 | 1 | 0 | 1 | 1 |
| 17610 | El Dorado Cty. v. Davison, 30 Cal. 520 | 260+158 | Toll gate erected on public highway may be abated as nuisance. | The Board of Supervisors are a municipal body, having no powers except those expressly granted by the sovereign authority, or which are necessary to the exercise of the powers granted to them. There is a act of the Legislature of this State which invests the Board of Supervisors with authority to convert a public highway into a toll road, and to grant to an individual the right to collect tolls of all persons traveling over the same. As all gate erected upon a highway which belongs to the State or the people thereof is a nuisance, and as it was therein adjudged to be such. The grant to the defendant was to do an illegal act. The consideration which was the ground of the defendant's promise to pay one hundred dollars a month for the franchise attempted to be granted was unlawful, and was therefore void. (U. S. Bank v. Owens, 2 Peters, 538.) As between the parties the defendant interposed by the defendant may effect its action upon the contract having the defense is concentrated and justifiable as between the parties. It is not for the idea of the defendant that the defense must to prevail, but it is upon the general principle that a contract which is void on the ground that it is unlawful cannot be made the basis of a recovery in a Court of justice. In such cases the rule is, in part delicto potior est conditio defendentis. (De Groot v. Van Duzer, 20 Wend. 391.) | Can toll gate erected on public highway may be abated as nuisance? | 019223.docx | LEGALEASE-00158934-LEGALEASE-00158935 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17911 | Spurck v. Leonard, 9 Ill App. 174 | 289=56 | We think not, for the following reasons. The firm of Spurck & Co., though not formally dissolved by agreement of the partners, was really and in law dissolved in May, 1877, at the time the distillery shut down and the firm quit business; for the rule of law seems to be settled that "The partnership affairs cannot be carried on after dissolution for the benefit of the firm of Spurck & Co. had closed long before the supposed signing of this note by Kidd in the name of the firm as guarantors. And the law is well settled that after dissolution of a firm the authority for making new contracts is completely revoked. The giving of a promissory note, or the acceptance of a bill of exchange or draft in the making of a new contract, although it may be for a prior debt, a partner after dissolution cannot thus bind the firm." For a full statement of the law on both the above points, we cite Bank of Montreal v. Page, 98 Ill. 109, and cases there cited: had there been any authority, either express or implied, prior to the dissolution of the partnership, on the part of appellant to Kidd to sign the name of the firm as guarantor of the nature of the one in question, it was wholly revoked by the dissolution. | After dissolution of a firm, authority for making new contracts is completely revoked. | Does the dissolution of a partnership operate as a revocation of all authority to make new contracts? | 02262.1.docx | LEGALEASE 0015061-LEGALEASE 0015062 | Condensed, SA, Sub 0.93 | 0.93 | 0 | | | 1 | 1 |
| 17912 | Heath v. Waters, 40 Mich. 457 | 289=72 | It is certain that at this time David Waters had no legal claim against his brother's estate for personal services. So long as a partnership continues, the sickness or inability of a partner to use of the risks incidental to the business, and works on faithfully, there is no doubt but he is entitled to his reasonable share of the profits. He is also entitled to have what he had spent his best efforts and judgment in promoting the common enterprise, without further compensation than his share in its profits. The executive had no right to agree away the property of the estate, nor to let it have been inventory operated on a fraud in law, whether fraudulent in fact or not. It is not necessary, therefore, to dwell upon the facts, which were not such as to command themselves. | The sickness of a partner is one of the risks incidental to partnership business, and does not give another partner any claim for personal services in conducting the entire business, if the partnership articles do not provide for any. | Is the sickness or inability of a partner one of the risks incidental to the partnership? | Partnership - Memo 531 - LJ7_A4073.docx | ROSS-002974183 | Condensed, SA, Sub 0.76 | 0.76 | 0 | 1 | | | |
| 17913 | Fioretara v. Yashara, 570 S.W.2d 734 | 30 76=161.1 | Only if an affirmative defense is irrefutably established by the plaintiff's petition can a petition be dismissed on that ground. International Plastic Devances v. Montroute Co., 533 S.W.2d 339 (Mo. banc 1976). The petition does not establish that Caroline Nothaus was a trustee as a matter of law even if the allegations are accepted as true. The court erred in dismissing the petition. | Only if affirmative defense is irrefutably established by petition can petition be dismissed on such ground. | Can a petition be dismissed only if affirmative defense is irrefutably established by petition? | Pretrial Procedure - Memo # 10783 - C - M6_63650.docx | ROSS-002929704 ROSS-002929705 | Condensed, SA | 0.73 | 0 | 0 | 1 | 1 | |
| 17914 | Carver v. Morrow, 213 S.C. 199 | 308=33(3) | It is the duty of an executor to probate the will. He has no choice; the legatees named by the testator. It is incumbent officially by the Probate Court. In fact, it is a misdemeanor for one to suppress a will. Code 8966, 8967. It seems reasonable that where the executor, offering a will for probate, he is acting in an official capacity, and while, of course, he himself has an absolute privilege as that there can be no personal liability against him, neither do I think that he is in such an event the mouthpiece or agent that it could be said he had authority to consummate by means of publication a libel which may have been written, but not published, in the lifetime of his testator, and so fasten a liability upon a dead man's estate, where none existed while he lived. This would be an extraordinary extension of the law of respondeat superior or principal and agent, Ordinarily, where not coupled with an interest, the agency terminates upon the death of the principal. Burch v. Cox, 196 S.C. 393, 13 S.E. 331; Ohlandt v. Craven, 146 S.C. 450, 144 S.E. 162. The reason for this rule is that the authorization of the agent having an inter-vivos that was acts of the principal, and by legal fiction the agent's exercise of authority is regarded as an execution of the principal's continuing will. 2 C.J., Agency," 86, page 1174. While it is held that the agency may be continued for the publication of a libel through an agent (Mann v. Life & Casualty Ins. Co., 132 S.C. 193, 129 S.E. 79), no case cited in support of the Tennessee decision in support of its holding on this point deals with principals who were living at the time the publication was made. | Authorized act of agents are acts of principal, and agent's exercise of authority is an execution of principal's continuing will. | Is an agent's exercise of authority regarded as execution of the principal's continuing will? | 04.683.docx | LEGALEASE 0015910-LEGALEASE 0015911 | Condensed, SA, Sub 0.93 | 0.93 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17615 | Carraro v. Morrow, 213 S.C. C39 | 308H33(1) | It is the duty of an executor to probate the will. He has no choice. Although named by the testator, he is appointed officially by the Probate Court. In fact, it is a misdemeanor for one to suppress a will. Code, 8966, 8847. It seems to me that when a man under offers a will for probate, he is acting in an official capacity, and while, of course, he himself has an absolute privilege and cannot be held personally liable against him, neither do I think that he is in such an event the testator's agent that it could be said he had authority to consummate by means of publication a [law]which may have been written, but not published, in the lifetime of his testator; and to fasten a liability upon a dead man's estate, where none existed while he lived. That would be an extraordinary extension of the law governing the relationship of principal and agent. Generally, where not coupled with an interest, the agency terminates upon the death of the principal. Boyle v. Dowling, 106 S.C. 369, 91 S.E. 311; Dinwnik v. Crown, 146 S.C. 450, 144 S.E. 162. The reason for this rule is that the characteristic death of the agent was in their nature the acts of the principal, and by legal fiction the agent's exercise of authority is regarded as a revocation of the principal, and by legal fiction, he is acting in an official capacity, and while, of course, he himself has an absolute privilege... While it is of course true that one agency may be responsible for the publication of a libel through an agent (Mann v. Life & Casualty Ins. Co., 132 S.C. 139 S.E. 779, 35 S.C. L., 62, 144 and Booker & Life Casualty Insur., as such others these authorities refer to principals who are alive at the time of the publication. In fact, all the cases cited by the Tennessee decision in support of its holding on this point deal with principals who were living at the time the publication was made. | Generally, when not coupled with an interest, agency terminates on death of principal. | Does an agency terminate upon the death of the principal when not coupled with an interest? | 041683.docx | LEXLEX-SE-0015091-2-LEXLEX-SE-0015093 | Condensed, SA, Sub D.95 | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 17616 | First Jackson Sec. Corp. v. B.F. Goodrich Co., 253 Miss. 519 | 308H33(1) | It is true that Mrs. Ferguson was an employee of appellant, but the word "employee" is not synonymous with the word "agent", because an agent is one who stands in the shoes of his principal; he is his principal's alter ego. In 2 C.J.S. Agency * 1 c., p. 1034 (1936), we find the following: An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or to manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do. The most characteristic feature of an agent's employment is that he is employed primarily to bring about business relations between his principal and third persons, *133 and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities. | "Agent" is one who stands in shoes of his principal, and his principal's alter ego; word "employee" is not synonymous with "agent". | Is employee synonymous with agent? | Principal and Agent Memo 001 - IK_65956.docx | ROSS-003027619-ROSS-003027620 | Condensed, SA, Sub D.85 | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 17617 | Chou v. Univ. of Chicago, 254 F.3d 1347 | 464+518 | We also agree with Chou that the district court erred in dismissing her relationship claim based on her fiduciary-duty claim against Roy, on which her breach of fiduciary duty claim was based. Under Illinois law, a fiduciary relationship automatically arises from certain particular relationships, such as attorney-client and principal-agent; as a matter of law, and it may also arise from the special circumstances of the parties' relationship, such as where one party justifiably places trust in another so that the latter gains superiority and influence over the former. The relevant factors in determining whether the later fiduciary relationship exists include the disparity in age, education, and business experience between the parties, and the extent to which the "servient" party entrusted the handling of its affairs to the "dominant" party and placed trust and confidence in that party. The existence of a fiduciary relationship ordinarily prevents the dominant party from seeking or obtaining any unfair benefit for himself at the expense of the servient party whom the fiduciary duties protects. McCormick v. McCormick, 118 Ill. App. 3d 455, 118 Ill. Dec. 172, 455 N.E.2d 494, 134 N.L.2d 789, 792 (1956b); Stoneman v. Kern, 379 Ill. 616, 32 N.E.2d 151, 154 (1941). | Can a fiduciary relationship arise from attorney-client relationship? | A fiduciary duty in Illinois may arise in one of two ways: it automatically arises from particular relationships, such as attorney-client and principal-agent relationship. | Principal and Agent Memo 684 - IK_65969.docx | ROSS-003039564-ROSS-003039667 | Condensed, SA, Sub D.7 | 0.7 | 0 | 1 | 1 | 1 | 1 |

3104

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 17618 | McInnes v. Wilson Printing Co., 238 Ill. App. 161 | 413×101 | | The anti-hazardous employments specified in Workmen's Compensation Act, have reference only to right to compensation under act, and do not fix standard for any other purpose. | Does the compensation act define what employment shall be deemed hazardous? | Workers' Compensation Memo 8611 - C - ANC_63842.docx | ROSS-003293327-ROSS-003293328 | Condensed, SA, Sub 0.9 | | 0 | 1 | 1 | 1 | 1 |
| 17619 | Barca Halsne 29 Scottie v. Columbia Counter Co., 232 Mass. 552 | 8.301×11 | | Maker ordinarily is board under laws of place where the note is payable? | Is the maker of a note bound by the law of the place where the note is payable? | Bills and Notes - Memo 1293 - JK_64834.docx | ROSS-003321114-ROSS-003321115 | Condensed, SA, Sub 0.94 | | 0 | 1 | 1 | 1 | 1 |
| 17620 | Hill v. Bartlette, 181 S.W.92 [44] | 15×5 [26] | | Equitable estoppel arises only in situations where one party has refused to do what he or she has a duty to do. | Can estoppel arise only when a party has refused to do that which he or she has a duty to do? | 017868.docx | LEGALEASE-00159329-LEGALEASE-00159330 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | 1 |
| 17621 | Gen. Tel. Co. of Nw. v. City of Bothell, 105 Wash. 2d 579 | 183×2 | | Power to grant franchises is sovereign power resting in state, although state may delegate such power to cities. | Is power to grant a franchise a sovereign power? | 018484.docx | LEGALEASE-00159780-LEGALEASE-00159782 | Condensed, SA, Sub 0.69 | | 0 | 1 | 1 | 1 | 1 |
| 17622 | Porto Rico Ry., Light & Power Co. v. Colom, 106 F.2d 345 | 183×1 | | Public utility franchise, which by their terms are not exclusive or do not grant a monopoly in the franchise territory, do not entitle the holders to be free from competition. | Does holder of nonexclusive franchise get a monopoly? | 018506.docx | LEGALEASE-00160024-LEGALEASE-00160025 | Condensed, SA, Sub 0.15 | | 0 | 1 | 0 | 1 | 1 |
| 17623 | Syracuse Rural Free Del. Pieters, 154 Neb. 393 | 183×1 | | The fee district lines Denmar Inc. Co. v. Northern Nat. Gas Co., 185 Neb. 400, 176 N.W.2d 14 (1970), for the proposition that the grant of a franchise to use property is a contract. However, the section of Denmar Inc. Co. the court points to deals with franchises and distinguishes a franchise from a license. | Is a franchise a vested right? | Franchises - Memo 16 - KNK_65488.docx | ROSS-003050494-ROSS-003050505 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17624 | Estate of Handy v. R.L. Vallee, 993 F. Supp. 236 | 29T+270(2) | The Plaintiffs seek injunctive and declaratory relief based upon a claim that a franchise relationship existed between Handy and Vallee under the PMPA. "The purpose of the PMPA is to establish "minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchiser or supplier of such fuel." " Checkrite Petroleum, Inc. v. Amoco Oil Co., 678 F.2d 5, 7 (2d Cir.1982) (quoting S.Rep. No. 95"731, reprinted in 1973 U.S.C.C.A.N. 872, 873.) Whether Handy and Vallee have a franchise relationship under the PMPA depends on finding the existence of mutual obligations and responsibilities which have arisen under a franchise. A franchise agreement may be written or oral, 15 U.S.C. " 2801(10), but not implied. Iannuzzi v. Exxon Co., U.S.A., 572 F.Supp. 716, 724 (D.N.J.1983) (course of conduct insufficient to establish franchise, in absence of prior existing franchise agreement); Rogue Valley Stations, Inc. v. Birk Oil Co., Inc., 568 F.Supp. 337, 344 (D.Or.1983) (implied contract will not support franchise relationship). But see Lasko v. Consumers Petroleum of Connecticut, Inc., 547 F.Supp. 211, 219 (D.Conn.1981) (contract giving rise to franchise relationship would be implied between retailer and distributor where distributor exercised control over brand of gas sold, even though gas was supplied by refiner). Under the PMPA, a franchise must involve a direct contractual relationship between parties. Hutchens v. Eli Roberts Oil Co., 838 F.2d 1138, 1144 (11th Cir.1988); see also DuFresne's Auto Serv., Inc. v. Shell Oil Co., 992 F.2d 920, 927 (9th Cir.1993). A plaintiff bears the burden of establishing the existence of a franchise relationship between the parties under the PMDA. Brownstein v. Arco Petroleum Prod. Co., 604 F.Supp. 312, 314 (E.D.Pa.1985); Rogue Valley, 568 F.Supp. at 344. | Under Petroleum Marketing Practices Act (PMPA), franchise must involve direct contractual relationship between parties. Petroleum Marketing Practices Act, S 101 et seq., 15 U.S.C.A. S 2801 et seq. | Does a franchise involve a contractual relationship between parties? | Franchises - Memo 18 - KNR_65690.docx | ROSS-003298324-ROSS-003298325 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 17625 | Han v. Mobil Oil Corp., 73 F.3d 872 | 29T+270(2) | 1. A "franchise" includes the contracts or agreements that provide for the franchisee's use of a franchisor's trademark, the lease of a service station, and the motor fuel supply contract. Svela v. Union Oil Co. of California, 807 F.2d 1494, 1500 (9th Cir.1987); 15 U.S.C. " 2801(1)(B). The "franchise relationship" is comprised of the respective obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise. 15 U.S.C. " 2801(2) The "franchise relationship" is "an entity separatefrom, but defined by, the "franchise," or contractual arrangement existing between the parties."3 Svela, 807 F.2d at 1500 (quoting Frisard v. Texaco Inc., 460 F.Supp. 1094, 1097 (E.D.La.1978)). | Under Petroleum Marketing Practices Act (PMPA), "franchise relationship" is entity separate from, but defined by, "franchise," or contractual arrangement existing between the parties. Petroleum Marketing Practices Act, S 101(2), 15 U.S.C.A. S 2801(2). | Does a franchise involve a contractual relationship between parties? | 018552.docx | LEGALEASE-00159463-LEGALEASE-00159464 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 17626 | Shafer v. Randolph, 99 Pa. 250 | 289+472 | It is true this was the partnership of an experiment; of a single adventure; yet for all this it might have been not the less a partnership: Sims v. Willing, 8 S. & R. 103.More than this, there may not, as between the defendants and their associates, have been a partnership in fact or intention, and yet, as to third persons, they may be held as such. For, as was said in Kirk v. Hartman, 13 P. F. Smith, 97, where one holds himself out, or knowingly suffers himself to be held out, as a partner, on the faith of which others give credit to the firm, he will be held, though, in fact, he is not a partner. And in Johnston v. Warden, 3 Watts 101, it was held, that where the defendants had represented themselves as partners, and had been trusted as such, they must be bound as partners. In the case in hand there was certainly evidence to the effect that the defendants represented themselves to Randolph and others as partners, and if this was believed by the jury, as it seems to have been, then as partners they were properly held. Such being the case, it is obvious that the answer of the learned judge, to the point put by the defendants' attorney, did them no harm, though doubtless the better way would have been to have negatived it outright, and without qualification. | One who holds himself out or knowingly permits himself to be held out as a partner, on the faith of which others give credit to the firm, will be held liable as such. | "Can there be instances where a person is not a partner, but holds himself out as a partner, and is considered to be one?" | 022550.docx | LEGALEASE-00160246-LEGALEASE-00160247 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 17627 | Crouch v. Bowman, 22 Tenn. 209 | 289+639 | The jury found a verdict against all the defendants, upon which judgment was rendered, and from which Crouch & Emmerson appealed in error to this court. The question is whether the issue on the plea of non est factum was properly found by the jury against Crouch & Emmerson. Every partner is an agent of the partnership, and may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind all the members of the firm. But in order to do this he must act in the name of the firm, and in signing notes, bills, etc., he must subscribe the name of, or style by which they are known as a firm, and in which they do business. Judge Story says (Com. Part., sec. 102): "All such contracts and engagements, acts and things, he has authority to make or do in the name of the firm; and indeed to bind the firm, they must ordinarily be made and done in the name of the firm, otherwise they will bind the individual partner only, who executes them as his own private acts, contracts or things." Pothier says (Story Part., sec. 102): "Whatever may be the authority of a partner, in order that a debt contracted by him should bind his partners, it is necessary that it should be contracted in the name of the firm." Mr. Erskine says (Ersk. Inst., B. 3, Tit. 3, sec. 20. See Story Part., note 2, p. 154): "According to our present practice, the partners in private companies generally assume to themselves a firm name, proper to their own company, by which they may be distinguished in their transactions; and in all deeds subscribed by this name of distinction, every partner is, by the nature of copartnery, understood to be intrusted with a power from the company, of binding them. Any one partner, therefore, who signs a bill or other obligation, by the company's firm, obliges all the partners; but where he subscribes a deed by his own proper subscription, the creditor, who followed his faith alone in the transaction, hath no action against the company, unless he | Every partner is the agent of the partnership, may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind the members of the firm; but in order to do this he must act in the name of the firm and in signing notes, bills, &c. he must subscribe the name or style by which they are known as a firm, and in which they do business. | "Does the act by a partner have to be done in the name of the firm, in order to bind the firm?" | Partnership - Memo 496 - SB_64858.docx | ROSS-003292293-ROSS-003292294 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17628 | Capelle v. Makowski, 93 Misc. 2d 436 | 371+2100 | Taxation by its very nature is oppressive in the basic sense of that word. Its burden becomes greater as it is applied to those on the lower levels of the economic stata. Taxation is also an evil necessary to the functioning of governmental units. The fact that it is more burdensome to some than to others will not invalidate a tax which the legislature has determined necessary, nor will the fact that the tax imposed is a regressive one. This is a determination to be made by social science commentators and legislators, rather than judicial tribunals. Our inquiry is limited to whether a legislative enactment is in compliance with the requirements of the State and Federal Constitutions. | Fact that tax is more burdensome to some than others will not invalidate tax which legislature has determined to be necessary, nor will the fact that the tax imposed is a regressive one. | "What is a ""regressive tax""?" | 046189.docx | LEGALEASE-00159736-LEGALEASE-00159737 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 17629 | City of S. San Francisco v. Bd. of Equalization, 181 Cal. Rptr. 3d 656 | 371+3602 | The State Tax Law "embodies a comprehensive tax system created to impose an excise tax, for the support of state and local government, on the sale, use, storage or consumption of tangible personal property within the state. [Citations.] The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question. In essence, ""[a] sales tax is a tax on the freedom of purchase [and a] use tax is a tax on the enjoyment of that which was purchased. [Citations.]" " " (Wallace Berrie & Co. v. State Bd. of Equalization (1985) 40 Cal.3d 60, 66"67, 219 Cal.Rptr. 142, 707 P.2d 204, fn. omitted.). | Under California Sales and Use Tax Law, in essence, a "sales tax" is a tax on the freedom of purchase and a "use tax" is a tax on the enjoyment of that which was purchased. Cal. Rev. & Tax. Code S 6001 et seq. | "Is a ""sales tax"" a tax on the freedom of purchase, while a ""use tax"" is a tax on the enjoyment of that which was purchased?" | 046217.docx | LEGALEASE-00159809-LEGALEASE-00159810 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 17630 | Xerox Corp. v. Cty. of Orange, 66 Cal. App. 3d 746 | 371+3602 | In support of its contention that sales tax is not a part of the price, appellant argues that "the amount of sales tax that a seller may collect from a buyer" is not known until the price itself has been agreed upon, and therefore it is not a part of the purchase price. The state sales tax is "not a tax on the sale or because of the sale but . . . an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales."(City of Pomona v. State Bd. of Equalization, 53 Cal.2d 305, 309, 1 Cal.Rptr. 489, 491, 347 P.2d 904, 906, citing Livingston Rock & Gravel Co. v. De Salvo, 136 Cal.App.2d 156, 160, 288 P.2d 317; see also National Ice, etc., Co. v. Pacific F. Exp. Co., 11 Cal.2d 283, 289, 79 P.2d 380; Graham Bros., Inc. v. Los Angeles, 6 Cal.App.2d 203, 44 P.2d 452; People v. Herbert's of Los angeles, Inc., 3 Cal.App.2d 482, 483"484, 39 P.2d 829.) | Sales tax law imposes a tax at a fixed rate upon the gross receipts and not on the individual sales, and fact that law authorizes a bookkeeping method to compute the amount of tax separately from the sales price does not change the character of the tax. West's Ann.Rev. & Tax.Code, S 6051. | Does the sales tax law imposes a tax at a fixed rate upon the gross receipts? | 046290.docx | LEGALEASE-00160158-LEGALEASE-00160159 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 17631 | Headwaters v. Forsgren, 219 F. Supp. 2d 1121 | 411+8 | [The Forest Act imposes procedural and substantive requirements on the Forest Service in the development of Land and Resource Management Plans to manage national forests. The Forest Act contemplates a two stage approach to forest planning. The first is the approval of a forest plan, following a comprehensive environmental impact study. The forest plan is to establish basic guidelines and set forth the planning elements that will be employed by the Forest Service in future site-specific decisions. Sierra Club v. Robertson, 28 F.3d 753, 755 (8th Cir.1994). Upon approval of the Forest Plan, the second stage is the assessment and implementation of site-specific projects, which must be consistent with the Forest Plan. Inland Empire Public Lands v. United States Forest Service, 88 F.3d 754, 757 (9th Cir.1996). | Notwithstanding absence of reference that proposed sale of timber from national forest land would comply with forest management plan developed pursuant to National Forest Management Act (NFMA), the record showed that Forest Service considered issue of soil compaction in evaluating proposed sale, decision to use helicopter to remove harvested logs and to use existing roads and landings mitigated those concerns, and finding in decision notice indicating that sale was consistent with forest plan contained implicit finding that sale's soil compaction requirements were consistent with forest plan; therefore, Forest Service complied with NFMA with respect to soil compaction requirements in approving sale. Forest and Rangeland Renewable Resources Planning Act of 1974, S 2 et seq., as amended, 16 U.S.C.A. S 1600 et seq. | What are the requirements imposed by the Forest Act? | 047661.docx | LEGALEASE-00159827-LEGALEASE-00159828 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 17632 | Clark v. Searight, 135 Pa. 173 | 8.30E+10 | It appears by the case stated that the promissory note in controversy was made and delivered in the state of Iowa. It was therefore an Iowa contract. It is true it was not made payable at any particular place; but, in the absence of any such stipulation, it was payable at the place where made. This is a well-settled rule of commercial law. It also appears by the case stated that the rate of interest (10 per cent.) called for by the note is lawful by the laws of that state. Under these circumstances it is plain that the lex loci contractus must govern, and the rate of interest is to be determined by the law of the place where the contract was to be executed. An indorser is liable for interest on a protested bill of exchange according to the law of the place on which it is drawn. Mullen v. Morris, 2 Pa. St. 85. When a promissory note is made payable at a particular place, interest is allowed according to the law of the place appointed for payment. Wood v. Kelso, 27 Pa. St. 241. | A promissory note not made payable elsewhere is payable at the place where it was made, and bears interest according to the law of the latter place. | Under what law is interest allowed when it is made payable at a particular place? | Bills and Notes -Memo 1377-JK_66279.docx | ROSS-003294416-ROSS-003294417 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 17633 | Clark v. Searight, 135 Pa. 173 | 8.30E+10 | It appears by the case stated that the promissory note in controversy was made and delivered in the state of Iowa. It was therefore an Iowa contract. It is true it was not made payable at any particular place; but, in the absence of any such stipulation, it was payable at the place where made. This is a well-settled rule of commercial law. It also appears by the case stated that the rate of interest (10 per cent.) called for by the note is lawful by the laws of that state. Under these circumstances it is plain that the lex loci contractus must govern, and the rate of interest is to be determined by the law of the place where the contract was to be executed. An indorser is liable for interest on a protested bill of exchange according to the law of the place on which it is drawn. Mullen v. Morris, 2 Pa. St. 85. When a promissory note is made payable at a particular place, interest is allowed according to the law of the place appointed for payment. Wood v. Kelso, 27 Pa. St. 241. | A promissory note not made payable elsewhere is payable at the place where it was made, and bears interest according to the law of the latter place. | According to what law is interest allowed on a promissory note? | Bills and Notes -Memo 1386- JK_66286.docx | ROSS-003318996-ROSS-003318997 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 17634 | City of Miamisburg v. Smith, 5 Ohio App. 3d 109 | 324+10 | In 1978, the Court of Appeals for Hamilton County held that in imposing sentence, a trial court must give consideration to the factors set forth in R.C. 2929.22 and a failure to do so is an abuse of discretion. Also it held that a court's statement that it has considered the factors set forth in R.C. 2929.22 is not sufficient where such statement is contradicted by the record. Cincinnati v. Clardy (1978), 57 Ohio App.2d 153, 385 N.E.2d 1342 [11 O.O.3d 137]. | Trial court did not abuse its discretion in sentencing defendant to six months in jail and a $250 fine on each of three counts of receiving stolen property under $150, suspending 120 days' incarceration on each count and placing defendant on a probation of one year, in that sentence imposed was well within parameters of criminal statute and statute establishing criteria for sentencing misdemeanants. R.C. SS 2929.12, 2929.22. | Under what circumstances would a court abuse its discretion in imposing a sentence? | Bribery - Memo 1067 - C - ML_65552.docx | ROSS-003279404 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17635 | Dayner v. Archdiocese of Hartford, 23 A.3d 1192, 865740 | 92+1368(1) | In Hartung v. Albertus Magnus College, 93 F.Sup.2d 200 (Conn 2000), the federal district court considered the case of a former seminarian who brought religious studies at Albertus Magnus College, a Roman Catholic college. The court found that the ministerial exception applied because the school did not reach extensively in the area of Roman Catholic doctrine or provide spiritual guidance or counseling. Yet given the employment relationship between Hartung and the College did not give rise to claims and defenses which were religious in nature. The court held that the Free Exercise Clause did not deprive the court of jurisdiction to decide the following claims; the claim for breach of contract, which implicated the defendant because her employer in refusing to adjudicate claims when determining whether to reappoint the plaintiff Hartung; the claim that another faculty member tortiously interfered with the plaintiff's business expectancy with the defendant... whether the plaintiff was discharged for the reason the college stated. His alleged misrepresentation of his priestly status. The court stated that existing federal decisions... held that the Free Exercise Clause does not bar court adjudication of such disputes where the religious affiliation of the institution or business is not pervasive or the duties of the employee are more fairly characterized as secular, rather than ministerial or pastoral." | The ministerial exception in the First Amendment did not bar the court from hearing the case. The former principal of a religious school brought suit against the school after she was terminated, allegedly in retaliation of an action she took. The school asserted that the ministerial exception to judicial authority precluded the court from adjudicating employment disputes between religious institutions and their employee or leaders. The disputes in this case did not intrude into purely religious matters or issue of church governance. U.S.C.A. Const. Amend. 1. | Does the Free Exercise Clause bar court adjudication of such disputes where the religious affiliation of the institution or business is not pervasive or the duties of the employee? | Education - Memo 334 - C - 6.docx | LEGALEASE 00050546 LEGALEASE 00050549 | Condensed, SA, Sub 0.68 | 0.68 | 0 | 1 | | 1 | 1 |
| 17636 | ConocoYn. Servicing Corp. v. Wilder, 47 S.W.3d 335 | 156+53.3(2) | A waiver may be either express or implied, although waiver will not be inferred lightly. XI Reassar Conoco did not expressly waive its right to arbitration. An issue here is whether the trial court could have found waiver from Conoco's actions. Unlike estoppel or laches, waiver may be found in the absence of prejudice to the party asserting it. But for this reason, among others, some of the courts addressing claims that a party arbitrate right has been waived have required that the party asserting... to be ordered. The Seventh Circuit, indeed, in finding the more strictly liberal meaning that waiver applies to these cases, has held that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." | A waiver may be either express or implied, although waiver will not be inferred lightly. | May a waiver either be express or implied? | Estoppel - Memo 246 - C - CSS_60,222.docx | ROSS-003293159,ROSS-003293160 | Condensed, SA | 0.9 | 0 | 1 | | | |
| 17637 | Potter v. Moran, 61 Mich. 60 | 30+177 | There was no testimony which in any way tended to show negligence in Potter, unless the court should have been so instructed in this respect. Persons quietly along the portion of the street he was bound to occupy in passing a team of horses, and it was more than common to say that the person was likely to occur so thoroughfare. Two persons racing make a plain and serious danger to every other person driving along the said highway, and one which his efforts to avoid. It was his bounden duty that he was not negligent as to make the racing party responsible for a collision caused by it. In our judgment that being only the danger on the one side, it would be too much natural... opinion, a wrong view was taken of the whole transaction; the charge leaving only the question of defendant's negligence... There was no testimony which in any way tended to show negligence in Potter, and the court held that the plaintiff was not liable for Eliot's wrong. The object of forbidding fast driving and racing is primarily to prevent injuries and dangers to persons who were plainly at fault himself, which he very clearly was not." | Racing along a highway is itself such an act of negligence as to make the racing parties responsible for a collision caused thereby. | Is racing an act of negligence in itself? | 03788.docx | LEGALEASE 00161637 LEGALEASE 00161638 | Condensed, SA, Sub 0.91 | 0.91 | 0 | 1 | 1 | | |
| 17638 | Am. Ins. Co. v. Saelzer, 242 F. Supp.237 | 217+1901 | The function of an insurance policy is not to keep the peace if it is to divide the economic duty to make reparation to the injured party. As insurance company's problem is an underwriting one, not a moral one. It assumes risks from measure of business gain. It carefully calculates the risks involved and makes this calculation the basis of the premium exacted. | The function of an insurance policy offered by an insured party, not to keep the peace. | What is the function of an insurance policy offered by an insurance company? | 01SG8.docx | LEGALEASE 00161573 LEGALEASE 00161574 | Condensed, SA | 0.71 | 1 | 0 | | | 1 |
| 17639 | Martini v Alpine Mountain Corp, 2013 PA Super 117 | 307A+697 | "A request to open a judgment of non pros, like the opening of a default judgment, is in the nature of an appeal to the equitable powers of the court and, in order for the judgment of non pros to be opened, three elements must coalesce; 1) the petition to open must be promptly filed; 2) the default or delay must be reasonably explained or excused; and 3) facts must be shown to exist which support a cause of action." "Pa.R.C.P. 3051; 3) Pa.R.C.P. 237.1; 3) 557, 560 A.2d 136(1989) (citing Pa.R.C.P. 3051 A petition under Rule 3051 is the only means by which relief from a judgment of non pros may be sought; See Pa.R.C.P. 3051; Consest; Any appeal intended to a judgment of non pros has not from the judgment itself, but from the denial of a petition to open or strike." Il; Stephenson v; Messick, 799 A.2d 793, 798 (PA.Super.2002). Finally, failure to file a timely or rule-compliant petition to open operates as a waiver of any right to address issues concerning the underlying judgment of non pros; Id. at 797, 800 | Plaintiff's ignorance of the procedural rule that required a timely filing of a petition to open a judgment of non pros did not constitute a reasonable explanation for their failure to promptly, and thus, trial court's denial of plaintiff's request to open judgment of non pros did not constitute an abuse of discretion. Rules Civ.Proc., Rule 3051, 42 Pa.C.S.A. | What are factors which must be present in order to open a non pros judgment? | 04007A.docx | LEGALEASE 00160733 LEGALEASE 00160734 | Condensed, SA, Sub 0.65 | 0.65 | 0 | 1 | 1 | | 1 |
| 17640 | Barragan v. Banco BCH, 188 Cal. App. 3d 283 | 307A+695 | A motion to dismiss may be substituted for a demurrer as the first pleading. | Motion to dismiss may be substituted for demurrer as first pleading, and if denied, it is treated as demurrer overruled without leave to amend. | Can a motion to dismiss be substituted for demurrer as a first pleading? | 043312.docx | LEGALEASE 00151086 LEGALEASE 00151089 | Condensed, SA, Sub 0.47 | 0.47 | | | | 1 | |

3108

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 21,876 | 9,029 |
| 17641 | Charlie Brown Const. Co. v. Leisure Sports Inc., 740 P.2d 368 | 307k587 | As stated in Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., 698 P.2d 1340, 1344 (Colo.1985), "The burden is upon the plaintiff to prosecute a case in due course without unusual or unreasonable delay." Plaintiffs are required "to prosecute their claims with due diligence and to accept the penalty of dismissal." Manbetta v. Fisher, 538 P.2d 1323, 1332 (Utah 1975). Dismissal for failure to prosecute is a drastic action, the broad discretion of the trial court. This Court will not interfere with trial decision unless it clearly appears that the court has abused its discretion and that there is a likelihood an injustice has been wrought. (Department of Soc. Serv. v. Hornery, 609 P.2d 1323, 1324 (Utah 1980)). | Trial court did not abuse its discretion by dismissing suit with prejudice on the merits for failure to prosecute; trial court provided plaintiff an opportunity to be heard and to do justice, and plaintiff nevertheless abused their opportunity through dilatory conduct. Rule 41(b) Proc., Rule 41(b). | Is the dismissal for failure to prosecute a decision within the broad discretion of the trial court? | Pretrial Procedure - Memo 11720 - C - NE_4543?.docx | ROS5-00292619 & ROS5-00292617 | Condensed, SA, Sub 0.58 | 0 | | | 1 | 1 |
| 17642 | Citizens' Sav. & Loan Ass'n v. City of Topeka, 87 U.S. 655 | 371+2003 | The power to tax is, therefore, the strongest, the most pervading of all the powers of government, reaching directly or indirectly to all classes of the people. It was said by Chief Justice Marshall, in the case of McCulloch v. The State of Maryland, that the power to tax is the power to destroy. A striking instance of the truth of this proposition is seen in the fact that the existing tax of ten per cent, imposed by the United States on the circulation of all other banks than the National banks, drove out of existence every State bank of circulation within a year or two after its passage. | The power to tax is the strongest and most pervading of all powers of government reaching directly or indirectly to all classes of the people. | What is the most pervading power of government? | 04d310.docx | USGA1A5E-00100723-USGA1A5E-00100724 | Condensed, SA | 0.76 | | 0 | 1 | | 1 |
| 17643 | Hampton v. Marrero, 105 N.H. 34 | 371+2003 | The law is well established in this state that the power of taxation is an attribute of sovereignty belonging to the people and, under constitutions several law contribution in the state contribution in legislature. Const. Pt. I, Art. 28. Manchester v. Manchester, 58 N.H. 538, 549. The taxing process on which we are concerned here is exercised initially by the assessor and then by the collector. | Power of taxation is attribute of sovereignty belonging to people and, under Constitution, is vested in Legislature. Const. pt. 2, art 2. | Is the power of taxation vested in the legislature? | Taxation - Memo 1155 - C - IA_65488.docx | ROS5-00230123 & ROS5-00192924 | Condensed, SA, Sub 0.63 | | | | 1 | 1 |
| 17644 | Guernsey v. Imperial Bank of Canada, 188 F. 300 | 8.30T+14 | There is another reason why the position of counsel for the indorsee is not sound. The rule that the maker of giving and the sufficiency of the notice of dishonor are governed by the law of the place of indorsement is impractical, unfair, and unjust. The notice of the place of payment must give the notice, and it is often impossible in the time allowed to him by the law for it. He cannot ascertain the place where indorsement was made and at what the law of the place of each instrument is upon the subject of notice of dishonor. On the other hand, commercial paper shows on its face where it is payable. Each indorser, when it is presented to him for his indorsement, has time and opportunity before he signs it to learn when it is payable to decide what he will. [text continues...] The established rule in England, the rule in Illinois, and the stronger and better reason are that, where a indorsement is made in one jurisdiction, and the commercial paper is payable in another, the manner of giving notice of dishonor and the sufficiency thereof are governed by the law of the place where the paper is payable. Rothschild v. Corney, 9 Q.B. 43, 45, 55; Rouse v. Overman, L.R. 10 Q.B. 525; trrschohn v. Smith, L.R. 1 C.P. 348; Hirschfeld v. Smith, L.R. 1 C.P. 348, 350, 352; Allen v. Kemble, 6 Moore, P.C. 314, 321, 27 L.R.A. 254; Wooley v. Lyon, 117 Ill. 244, 252, 6 N.E. 885, 886, 57 Am.Rep. 867; Union National Bank v. Chapman, 169 N.Y. 538, 543, 62 N.E. 672, 57 L.R.A. 513, 88 Am.St.Rep. 614. This rule commends itself to the judicial sense... | The manner of giving and sufficiency of notice of dishonor is governed by the laws of the place where the note is payable. | Which law governs the manner of giving notice? | Bills and Notes - Memo 1327 - NE_6423.docx | ROS5-00281321 & ROS5-00281322 | Condensed, SA, Sub 0.95 | 0 | | | 1 | 1 |
| 17645 | Wade v. Darring, 511 S.W.2d 320 | 8.30T+10 | Reduce the note in question was made payable in North Carolina, the laws of that state govern the substantive liability of the parties, under Texas choice-of-law principles. Barrilleaux v. v. Norton, 800 P.2d 593 (5th Cir. 1993), cert. denied, 298 U.S. 663, 56 U.S. 747 (80 L.Ed. 1187 (1936)). | Where note under which endorsers brought action against makers was made payable in North Carolina, laws of North Carolina governed subsequent liability of the parties. | Which law governs the substantive liability of the parties? | Bills and Notes - Memo 1327 - NE_6423.docx | ROS5-00305902 | Condensed, SA, Sub 0.43 | | | | 1 | 1 |
| 17646 | Thorp, Smith & Hackett v. Craig, 10 Iowa 461 | 831+675 | It is urged by the appellant that the evidence did not justify the instructions of the court to the jury that, under the law, the objection there are two questions, and to find the objection; that this question was in Iowa, where the law was incident, which allows three days of grace where a check was payable by the mercantile law of the place, the court. It is claimed by the appellant that said bills were not duly presented for payment upon the day upon which they became due. The bills were drawn in Iowa, where the law provides, which allows three days of grace. In Iowa, under the law in the state of lowa, where the law provides, "That all checks, bills of exchange, or drafts, appearing upon their face to have been drawn upon any bank, which are not on their face made payable on any specified day, or in any number of days after the date or sight thereof, shall be deemed due and payable on the day they are allowed, and it shall not be necessary to protest the same for non-acceptance." Meaning, by law, and the 'holder thereof had a right to demand payment thereon on the day they became due. The question then follows which the appellant, in presenting this bill, where the contract was...that the place of payment. Without referring to the many cases in which the place of payment has been decided, and where it has... it to say in the state of Iowa, three days of grace are not here allowed, then the check are not justify, under these provisions, and is fully entitled, we conclude that "it is well settled that the law or the place where a draft is made payable is to govern the allowance of days of grace upon bills of exchange, or a check drawn in one state upon another." Edwards on Bills, 512; and this rule to apply, the bills sued upon were presented at the proper time. | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Which law governs the days of year upon the check? | 00020D.docx | USGA1A5E-00161656-USGA1A5E-00161657 | Condensed, SA, Sub 0.94 | | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17647 | Bryant v. United States, 565 F.2d 650 | 141E+802 | These events took place in New Mexico, and in New Mexico school authorities have the duty to exercise ordinary care in protecting and supervising students while they are on school grounds. McMullen v. Ursuline Order of Sisters, 56 N.M. 570, 246 P.2d 1052; Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706. However, school authorities do not have responsibility for protective supervision at all places and under all circumstances. Nichols v. Texico Conf. Ass'n of Seventh Day Adventists, 78 N.M. 787, 438 P.2d 531 (Ct.App.). | In New Mexico, school authorities have duty to exercise ordinary care in protecting and supervising students while they are on school grounds, but do not have responsibility for protective supervision at all places and under all circumstances. | Do school authorities have a responsibility for supervision at all places and all circumstances? | 017282.docx | LEGALEASE-00162148-LEGALEASE-00162149 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 17648 | Hahn v. Oregon Physicians Serv., 689 F.2d 840 | 217+1712 | The insurance contract involves a contractual relationship which exists when an insurer, for consideration, agrees to reimburse an insured for loss caused by designated contingencies. See Black's Law Dictionary 721 (5th Ed. 1979). This underwriting and subsequent spreading of the policyholder's risk is the primary element of the insurance contract and is, therefore, the "business of insurance." Royal Drug, 440 U.S. at 211, 99 S.Ct. at 1073. The Court in Royal Drug recognized that the provider contracts neither served to spread the risk nor to define the peril, but were merely a cost-cutting device for the insurers. Id. at 214-15, 99 S.Ct. at 1074-75. The provider contracts established an "arrangement for the purchase of goods and services" that reduced the insurer's cost of covering the loss that it was obligated to cover under the insurance contract. Id. at 214, 99 S.Ct. at 1074.1 The Court concluded that this primary element of risk-spreading was missing in the provider agreements. | Insurance is a contractual relationship which exists when an insurer, for consideration, agrees to reimburse an insured for loss cause by designated contingencies; the underwriting and subsequent spreading of the policyholder's risk is the primary element of the insurance contract. | What are the primary elements of an insurance contract? | 019649.docx | LEGALEASE-00162130-LEGALEASE-00162131 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 17649 | Nat'l City Mortg. Co. v. Navarro, 220 F.R.D. 102 | 170A+825 | According to our court of appeals, Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss. James V. Hurson Assocs., Inc. v. Glickman, 229 F.3d 277, 282"83 (D.C.Cir.2000) (citing Fed.R.Civ.P. 15(a)). If there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer. 6 Fed. Prac. & Proc. 2d " 1481. Motions to dismiss and for summary judgment do not qualify as responsive pleadings for the purposes of Rule 15. James V. Hurson Assocs., 229 F.3d at 283; Bowden v. United States, 176 F.3d 552 (D.C.Cir.1999); U.S. Info. Agency v. Krc, 905 F.2d 389, 399 (D.C.Cir.1990). | Motions to dismiss and for summary judgment do not qualify as "responsive pleadings" within meaning of civil rule permitting amendment of pleading once as matter of course at any time before responsive pleading is served. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A. | Is a motion to dismiss a responsive pleading or a pleading under the rules? | 040144.docx | LEGALEASE-00162138-LEGALEASE-00162139 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 17650 | Rizzo v. City of Philadelphia, 668 A.2d 236 | 268+956(1) | Taxpayers cite City of Philadelphia v. Southeastern Pennsylvania Transp. Auth., 8 Pa.Cmwlth. 280, 303 A.2d 247 (1973), where the Court held that an annual $50 license fee imposed upon SEPTA buses by the City, which never inspected or did anything else to the buses, was actually a revenue-raising tax that could not be levied against SEPTA, a Commonwealth agency not subject to taxation. In City of Philadelphia the Court stated that in determining whether a levy under a municipal ordinance is a tax or a true license fee, "[t]he common distinction is that taxes are revenue-producing measures authorized under the taxing power of government; while licensing fees are regulatory measures intended to cover the cost of administering a regulatory scheme authorized under the police power of government." Id., 303 A.2d at 251. | Crucial factor in determining whether municipal charge for services constitutes valid regulatory fee, rather than unlawful tax, is whether charge is intended to cover cost of administering regulatory scheme or providing service. | Are taxes distinguishable from license fees because they are revenue-producing measures authorized under the taxing power of government? | Taxation - Memo 1021 - C - JL_66473.docx | ROSS-003281643-ROSS-003281644 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 17651 | State ex rel. Agard v. Riederer, 448 S.W.2d 577 | 371+2003 | In Carter Carburetor Corporation v. City of St. Louis, 356 Mo. 646, 203 S.W.2d 438, an ordinance, very similar not only to that now questioned but also to the statutory enabling acts applicable to both Kansas City and St. Louis, was considered. (The ordinance is set out in full at loc. cit. 440.) St. Louis had passed this ordinance without the authority of any enabling act and it was found invalid for that reason. Prior to reaching this conclusion, however, this court declared: "In our opinion it is a species of income or excise tax. However, it is limited to earnings from work and services, and does not include other kinds of income such as interest on investments, rents, dividends, capital gains and the like." The decision was bottomed on the principle, which continues to be our guide, that the power to tax is an extraordinary one and must be based on specific or clearly implied authority. Kansas City v. Frogge, 352 Mo. 233, 176 S.W.2d 498. | Power to tax is an extraordinary one and must be based on specific or clearly implied authority. V.A.M.S.Const. art. 10, S 1. | Under what condition can the power to tax be based on implication? | 046350.docx | LEGALEASE-00161980-LEGALEASE-00161981 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 17652 | Ray v. Bd. of Comm'rs of Doniphan Cty., 173 Kan. 859 | 371+2801 | Decisions from other jurisdictions on the subject are not particularly helpful due to the diversity of statutes in the various states, but in approaching the question it is necessary to keep in mind a number of well-recognized general principles pertaining to the whole subject of taxation. In the first place, it is elementary that the entire matter, including the levy and collection of taxes, is statutory and does not exist apart from statute. Perhaps every law-school student has at some time or other been exposed to the ancient legal maxim "Mobilia Sequuntur Personam", meaning "Movables follow the (law of the) person", 58 C.J.S., p. 837, which, as applied to taxation, means that personal property is taxable at the domicil of the owner. The rule is said to have its origin in the Middle Ages when a resident of one country rarely kept personal property in another country, and if he traveled he generally carried his wealth with him. | The entire matter of taxation, including levy and collection of taxes, does not exist apart from statute. | Is the entire matter of taxation statutory? | 046356.docx | LEGALEASE-00161995-LEGALEASE-00161996 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 17653 | Miller v. City of Fairhope, 855 So. 2d 1139 | 3.77E+24 | """Fighting words" are "those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace." Skelton v. City of Birmingham, 342 So.2d 933, 936"37 (Ala.Crim.App.), remanded [on other grounds], 342 So.2d 937 (Ala.1976)."" 615 So.2d at 113. | "Fighting words," for purposes of harassment statute, are those words which have likelihood of causing violent response by person to whom they are addressed; they are words that, by their very utterance, provoke swift physical retaliation and incite immediate breach of peace. Code 1975, S 13A-11-8(a). | What are fighting words for the purposes of the harassment statute? | 046957.docx | LEGALEASE-00162160-LEGALEASE-00162161 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13654 | Harris v. State Acc. Ins. Fund Corp., 717 P.2d 658 | 413x1043.1 | Without cataloging other examples of the exclusivity of the statutory rights and obligations, and they are not the exclusive consequences. … | Workers' Compensation law is complete statement of parties' rights and obligations. Act provides for penalty and attorney fees which are exclusive consequences. ORS 656.018, 656.262(10), 656.268(4). | Does workers compensation provide for penalty and attorney fees? | 040620.docx | LEGALEASE-00162460 LEGALEASE-00162461 | Condensed_SA, Sub 0.64 | | 0 | 1 | 1 | 1 | |
| 13655 | State of Ohio ex rel. Squire v. Eubank, 295 Mich. 230 | 83Hx10 | The case is controlled by the determination of the place of making of the renewal contract … | In case of a note, place of contracting is where note is first delivered for value. | Is the place where the note is first delivered for value the place of contracting? | Bills and Notes - Memo 1346 - PK_62437.docx | ROSS-003279418-ROSS-003279419 | Condensed_SA 0.96 | | 0 | 1 | 1 | 1 | |
| 13656 | Kelly v. Cent. Bank & Tr. Co. of Denver, 794 P.2d 1037 | 172Hx417 | If the endorsement is in order paper and the depository bank does not, or cannot, supply the missing endorsement … | When a depository bank's customer and the check payee are not the same person, a depository bank cannot supply a missing endorsement of the payee, and payment of such check proceeds to its depositor subject to a claim by payee's customer. C.R.S. 4-3-201(20), 4-3-201(20), 4-3-307 comment, 4-3-419(1)(c), 4-4-205, 4-4-205(1). | Can the depository bank supply a missing endorsement? | 009966.docx | LEGALEASE-00162833 LEGALEASE-00162834 | Condensed_SA, Sub 0.66 | | 0 | 1 | 1 | 1 | |
| 13657 | Adams v. United States, 117 Fed. Cl. 628 | 34x101.1 | The court also notes that "Interpretive doubt regarding the reading of a statute pertaining to veterans 'is to be resolved in the veteran's favor.' … | Interpretive doubt regarding the reading of a statute pertaining to veterans is to be resolved in the veteran's favor. | Are statutes pertaining veterans to be construed in the veterans favor? | Armed Services - Memo 341 - RK_1.docx | LEGALEASE-00050549 LEGALEASE-00050550 | Condensed_SA 0.89 | | 1 | 0 | 0 | 1 | |
| 13658 | Winslow v. United States, 1477 A.2d 157 | 241x72(1) | We agree with the District Court that this suit cannot be maintained. The special protection afforded infants and their incompetents … | The Veterans' Act provides that infants shall have three years in which to bring suit after removal of their legal disabilities and that no disposition of their confer new rights, but inherit beneficiary's interest in policy is derived from that of the insured veteran. World War Veterans' Act S 19, 105, as amended, 38 U.S.C.A. SS 784(a), 759. | Is a beneficiary's interest in a policy derivative from that of the veteran? | 008844.docx | LEGALEASE-00163910 LEGALEASE-00163911 | Condensed_SA, Sub 0.52 | | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17659 | Summe v. Kenton Cty. Clerk's Office, 626 F. Supp. 2d 680 | 78+1376(10) | The Sixth Circuit has held that the law in this Circuit with respect to patronage dismissals of clerical positions, such as county deputy clerks, is "clearly established with the requisite specificity to satisfy the Supreme Court's requirement that the law "clearly establish[ ] in [a] more particularized sense" that the act was unconstitutional." Caudill v. Hollan, 431 F.3d 900, 913 (6th Cir.2005). Caudill applied to deputy clerk positions that are basically clerical. Id. The Sixth Circuit did not extend its holding to positions such as chief deputy county clerk. See Id. at 914 | Even if the dismissal of a chief deputy to a county clerk was not subject to political patronage dismissal, the clerk would have been entitled to qualified immunity in his individual capacity on the chief deputy's S 1983 claim of a First Amendment violation, as the law was not clearly established as to dismissals of such number two positions. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. S 1983. | Are patronage dismissals of deputy court clerks unconstitutional? | 013555.docx | LEGALEASE-00164110-LEGALEASE-00164111 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 17660 | Alken v. Lerner, 485 F. Supp. 871 | 83H+1 | The fourth element of the Cort test, whether an implied private right would infringe on an area of state concern, favors implication of such a right since it is well-established that regulation of the commodities futures industry is essentially a federal concern. See, e. g., Smith v. Groover, 468 F.Supp. 105, 115 (N.D.Ill.1979) | Regulation of the commodity futures industry is essentially a federal concern. Commodity Exchange Act, S 1 et seq. as amended 7 U.S.C.A. S 1 et seq. | Is the regulation of the commodities futures industry a federal concern? | 013642.docx | LEGALEASE-00164164-LEGALEASE-00164165 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 17661 | Comm'r of IRS v. Estate of Sanders, 834 F.3d 1269 | 135+2 | That said, there is some guidance in existing case law as to its meaning. "Although the meaning may vary according to context, "residence" generally requires both physical presence and an intention to remain." Martinez v. Bynum, 461 U.S. 321, 330, 103 S.Ct. 1838, 1843, 75 L.Ed.2d 879 (1983). Residency demands that one be more than a transient or a sojourner, but requires "far less than domicile which requires an intent to make a fixed and permanent home." Sochurek v. Comm'r, 300 F.2d at 38.Additionally, while a person may have only one domicile at a time, cases have recognized the possibility that one person may have multiple residences simultaneously. Vento, 715 F.3d at 466; Downs v. Comm'r, 166 F.2d 504, 508 (9th Cir. 1948) | While a person may have only one domicile at a time, a person may have multiple residences simultaneously. | "Can an individual have multiple residences, but only one domicile as a basis for personal jurisdiction?" | 014548.docx | LEGALEASE-00164174-LEGALEASE-00164175 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 17662 | In re Murrin, 461 B.R. 763 | 135+2 | Domicile is generally defined as "one's permanent home, where one resides with the intention to remain or to which one intends to return." Id. at 202 (citing Williamson v. Osenton, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914)). Every person has one domicile at a time, but not more than one. Restatement (Second) of Conflicts of Law " 11 (1971). Once established, domicile continues until superseded by another domicile. Restatement (Second) of Conflicts of Law " 19 (1971). Domicile and residence are not synonymous terms; a person can reside in one place while being domiciled in a different place. Holyfield, 490 U.S. at 48, 109 S.Ct. 1597. | "Domicile" and "residence" are not synonymous; person can reside in one place while being domiciled in a different place. | Can a person reside in one place while being domiciled in a different place? | Domicile - Memo 46 - C - AJ_67125.docx | ROSS-003295285-ROSS-003295286 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 17663 | State v. Gaines, 2003 WL 22966190 | 135H+97 | Although there are generally no double jeopardy considerations when a mistrial is declared, when a mistrial is declared based on prosecutorial misconduct, the Constitution bars a retrial if the prosecutor's misconduct was calculated to goad the defendant into seeking a mistrial. See Oregon v. Kennedy (1982), 456 U.S. 667, 675"676, 102 S.Ct. 2083, 72 L.Ed.2d 416. Gaines argues that the court had to declare a mistrial at his request in the first case because the state failed to ensure that his prior record would be kept from the jury. He therefore believes that his retrial is barred by double jeopardy. | Allowing retrial of murder defendant following mistrial did not constitute plain error; although defendant contended double jeopardy clause barred retrial, trial court's finding that mistrial was warranted based on references to defendant's criminal record did not require conclusion that state goaded defendant into requesting mistrial and, on retrial, state assured court that witnesses were instructed not to mention defendant's criminal history. U.S.C.A. Const.Amend. 5. | Are there no double jeopardy considerations when a mistrial is declared? | Double Jeopardy - Memo 355 - C - SHS_66633.docx | ROSS-003282594-ROSS-003282595 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 17664 | Hedged Inv. Partners v. Norwest Bank Minnesota, N.A., 578 N.W.2d 765 | 156+52.10(3) | Waiver is the intentional relinquishment of a known right and is consensual in nature. Carlson v. Doran, 252 Minn. 449, 456, 90 N.W.2d 323, 328 (1958). While knowledge may be actual or constructive, intention can be inferred from conduct. Id. Estoppel results from conduct that causes another party to change its position in reliance on the contract. Wolff v. McCrossan, 296 Minn. 141, 145, 210 N.W.2d 41, 44 (1973); Malmquist v. Peterson, 149 Minn. 223, 226, 183 N.W. 138, 140 (1921). See also Engstrom v. Farmers & Bankers Life Ins. Co., 230 Minn. 308, 312-13, 41 N.W.2d 422, 424-25 (1950) (citations omitted) (waiver and estoppel are often confused but the concepts are not interchangeable). A course-of-conduct waiver is based on the theory of estoppel and requires detrimental reliance. See Steinhilber v. Prairie Pine Mut. Ins. Co., 533 N.W.2d 92, 93-94 (Minn.App.1995) (defining modification by course of conduct); see also Wolff, 296 Minn. at 145, 210 N.W.2d at 44 (same); Malmquist; 149 Minn. at 226, 183 N.W. at 140 (same). | Course-of-conduct waiver is based on the theory of estoppel and requires detrimental reliance. | Is course-of-conduct waiver based on the theory of estoppel? | Estoppel - Memo 282 - C - CSS_66554.docx | ROSS-003283279-ROSS-003283280 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 17665 | In re Farley, 237 B.R. 702 | 195+5 | As discussed above, Farley has no obligation under Ohio's workers' compensation laws. As a result, the guarantee has never been triggered. Under Ohio law, "there can be no liability upon the part of a guarantor if there is no valid obligation against the principal debtor." Banana Sales Corp. v. Chuchanis, 119 Ohio St. 75, 79, 162 N.E. 274, 276 (1928). | Under Ohio law, there can be no liability upon part of guarantor if there is no valid obligation against principal debtor. | Is a guarantor liable to pay a debt which a principal debtor is not bound to pay? | 018622.docx | LEGALEASE-00163621-LEGALEASE-00163622 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 17666 | Dye v. State, 127 Miss. 492 | 203+535 | It is true that this instruction is erroneous, and is not a correct definition of "malice aforethought." In this state "malice aforethought" is equivalent to "premeditated design," or "deliberate design." Hawthorne v. State, 58 Miss. 788. A felonious design is not the same as a premeditated or a deliberate design. | An instruction for the state defining "malice aforethought" as "the felonious design or purpose to effect the death of the person killed" is erroneous, for in this state "malice aforethought" is equivalent to "premeditated design," or "deliberate design." | Is malice aforethought equivalent to premeditated design or deliberate design? | Homicide - Memo 184 - RK_66927.docx | ROSS-003285138 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 17667 | Com. v. O'Neil, 67 Mass. App. Ct. 284 | 3.77E+06 | We also should not construe the statute in such a way as to negate the Legislature's clear attempt to protect victims of harassment before that behavior escalates into more dangerous conduct. Here, the Legislature was concerned with stalking behaviors. Typically, stalking behaviors involve obsessional attractions to victims and are not necessarily intended to harm or frighten them. See Kirkman, Every Breath You Take: Massachusetts Steps Up Its Efforts to Stop Stalkers, 85 Mass. L.Rev. 174, 180"183 (2001). It is unlikely that the Legislature would have expected a specific intent to alarm or harm the victim under these circumstances. See Commonwealth v. Welch, 444 Mass. at 100, 825 N.E.2d 1005 (criminal harassment statute was intended to provide "a remedy to victims before "nonthreatening" harassment escalates into life-threatening assault").See also Commonwealth v. Paton, 63 Mass.App.Ct. at 219"220, 824 N.E.2d 887. | Statute creating offense of criminal harassment was intended to address stalking behaviors, and to protect victims of harassment before that behavior escalates into more dangerous conduct. M.G.L.A. c. 265, S 43A(a). | What was the statute creating the offense of criminal harassment intended to provide victims with a remedy for? | 046993.docx | LEGALEASE-00163399-LEGALEASE-00163400 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,373) | Selection & Arrangement (21,876) | Multiple Differences (9,029) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17668 | Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., (United States), 862 F.3d 1284 | 25T+201 | Problems, primarily relying on three cases, nevertheless argues that the arbitrable procedural questions intended to be decided by the parties. This our decision in Sterling Financial Investment Group, Inc. v. Hammer, 393 F.3d 1223 (11th Cir. 2004), does not stand for the proposition that arbitral venue is a question for the court to resolve independently, in that case, we merely held "that a federal district court ... has jurisdiction to enforce a forum-selection clause in a valid arbitration agreement that has been disregarded by the arbitrator." Id. at 1225 Indeed, by allowing arbitration to proceed in Texas, the arbitrator in Sterling Financial clearly disregarded an unambiguous venue provision that only provided for arbitration in Florida. See id. at 1224. We did not hold that the court should review arbitral venue provisions de novo; in Sterling Financial, it could not be said that the arbitrator even arguably interpreted the parties' contract. | Disputes over the interpretation of forum selection clauses in arbitration agreements raise presumptively arbitrable procedural questions intended for arbitrators, not courts, to decide; such clauses determine where an arbitration is conducted, not whether there is a contractual duty to arbitrate at all. | Do courts have the jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrator? | Alternative Dispute Resolution - Memo 869 - RK.docx | LEGALEASE 00505013-LEGALEASE 00505014 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 17669 | Brown's Mut. of New York Life Ins. Co., 213 F. Supp. 2d 607 | 15T+2 | A person's domicile is the place of "his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." "Domicile is, however, more than where the party resides? it is the place a person calls home. Thus, when determining a party's domicile, a court looks to such factors as where the person resides, where the works, goes to school, pays his taxes, is registered to vote, the place of his drivers license, and location of family." | Domicile, more than where the party resides, is the place a person calls home; thus, when determining a party's domicile, a court looks to such factors as where the person resides, where he works, goes to school, pays his taxes, is registered to vote, the place of his drivers license, and location of family, among others. | "Is a domicile, more than where the party resides, the place a person calls home?" | Domicile - Memo 72 - C - NEY_67151.docx | ROSS-003163577-ROSS-003163578 | Condensed, SA | 0.37 | | | 0 | 1 | |
| 17670 | State v. Marr, 673 A.2d 452 | 135H+59 | He first clearly defended is whether the state was entitled to appeal from this determination since whatever claim the jeopardy had attached and that, therefore, the Attorney General was not entitled to appeal pursuant to G.L.1964 ? 9-24-32. This issue is without merit. In a nonjury case, jeopardy does not attach until evidence is presented on the issue of guilt or innocence. Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Obviously, a re-examination to determine competence does not put a defendant at risk of a determination of guilt. | In nonjury case jeopardy does not attach until evidence is presented on issue of guilt or innocence. U.S.C.A. Const.Amend. 6. | Does a jeopardy attach once evidence has been presented? | Double Jeopardy - Memo 992 - C - PC_67721.docx | ROSS-003294564-ROSS-003294567 | Condensed, SA, Sub 0.78 | 0.78 | | | | 1 | |
| 17671 | Robbins v. Magee, 76 Ind. 381 | 15H+54 | Appellant was neither negligent nor imprudent in acting upon the belief that the condition required when the deed was placed in the hands of Schrader in accordance with the wishes of the grantors. The doctrine, that a person who does act in excusable ignorance of a material fact is not thereby estopped, is founded on sound reason, and is well sustained by authority. In Fletcher v. Holmes, 25 Ind. 458, the subject here under discussion received a full and careful consideration, and it was said "for the prevention of fraud, the estoppel is party to be concluded by his own act or admission. Surely this can have no application where everything was equally known to both parties, or where the party sought to be estopped was ignorant of the facts out of... | A party acting in excusable ignorance of a material fact is not thereby estopped. | Is a person who acts in excusable ignorance of a material fact estopped? | Estoppel - Memo 1322 - C - RP_0.docx | ROSS-003278935-ROSS-003278936 | Condensed, SA, Sub 0.9 | 0.9 | | | | 1 | |
| 17672 | Dentors v. Moser, 241 N.W.2d 28 | 233+93 | Of course if a firm tenancy may be terminated by agreement of the parties (Crittenden v. Jensen, 231 Iowa 445, 1 N.W.2d 809), by proof of estoppel (Hentzleman v. Dehner, 241 Iowa 1227, 44 N.W.2d 693) or by waiver (Laughlin v. Hall, 236 Iowa 990, 20 N.W.2d 415). In such an event no statutory notice of written notice of termination under section 562.7 has no application. | A farm tenancy may be terminated by agreement of the parties, by proof of estoppel or by waiver; in such an event, statute requiring written notice of termination has no application. I.C.A. § 562.6, 562.7. | Can farm tenancies be terminated by estoppel? | 02.03.4.docx | LEGALEASE 00164797-LEGALEASE 00164958 | Condensed, SA | 0.43 | | | 0 | 1 | |
| 17673 | Midway Motor Lodge of Brookfield v. Hartford Ins. Grp., 226 Wis. 2d 23 | 302+71 | In order to constitute a cause of action for negligence, there must exist: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." Tesar v. Anderson, 2010 WI App 203, Wis. 2d ... Hoida, Inc. v. M & I Midstate Bank, 2006 WI 69 ... (In Coffey, this court reasoned that in most, but not all, cases involving the three elements; however, it failed to plead what actual loss or damage it suffered as a result of Huntzinger's breach of its duty. It is not sufficient to plead that "as a result of the negligence of Huntzinger, Midway has suffered damages in an amount to be determined by the trier of fact." Similarly, a statement in the ad damnum clause for "incidental and consequential damages suffered as a result of Huntzinger's negligence" is unsatisfactory because the ad damnum clause is not a substantive part of the complaint; see Johns v. John, 323 Wis. 2d 164, 167, 779 N.W.2d 790, (quoting 88A11.App.1986); its nothing more than an "asking price," see Affel v. Milwaukee & Suburban Transp. Corp., 21 Wis. 2d 642, 654, 134 N.W.2d 374, 380 (1964). | Ad damnum clause is not a substantive part of the complaint; it is nothing more than an "asking price." | Is the ad damnum clause a substantive part of the complaint? | 02.878.docx | LEGALEASE 00164793-LEGALEASE 00164794 | Condensed, SA | 0.91 | | | 0 | 1 | |
| 17674 | In re Matter of Seagerty, 383 P.3d 454 | 135H+1 | Double jeopardy is a constitutional limitation on the power of the court to place a person in jeopardy multiple times for the same offense. See State v. Kelly, 190 Wash.2d 210, 240, 290 P.3d 231 (2013) (double jeopardy limitation is a legislatively imposed limit on the number of charges may be brought). Seo Cloutletorr, 143 Wash.2d at 555, 5 P.3d 1340. The extraordinary remedy in Knight has been applied only to other cases involving double jeopardy violations as applied to plea agreements. See State v. Hughes, 166 Wash.2d 675, 681 n.5, 689, 212 P.3d 558 (2009). In re Pers. Restraint of Fossum, 170 Wash.2d 517, 533 732, 242 P.3d 866 (2010); see also State v. Knight, 10 Wash.2d 677, 233 P.3d 974 (2009). It does not apply here. | "Double jeopardy" is a constitutional limitation on the power of the court to place a person in jeopardy multiple times for the same offense. U.S. Const.Amend. 5. | What is the definition of Double Jeopardy? | 04.0201.docx | LEGALEASE 00164397-LEGALEASE 00164398 | SA, Sub | 0.77 | | | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,973 | 23,876 | 9,029 |
| 17675 | Ex parte Anthony, 931 S.W.2d 664 | 135H+5.1 | Before Bauder, the court of criminal appeals interpreted the federal and state double jeopardy clauses to be conceptually identical. See State, 707 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990). The Bauder court held that the Texas Constitution's double jeopardy protections were "slightly more expansive" than the federal constitution's double jeopardy protections when prosecutorial misconduct prompted a defendant to seek a mistrial. See Bauder v. State, 921 S.W.2d at 699. The Bauder court did not even suggest that: (1) the Texas Constitution provides greater protections to defendants in the context of multiple punishments for multiple punishments of the same offense or (2) it intended to invalidate previous case law doubling jeopardy provisions. | Like Federal Constitution, double jeopardy clause of State Constitution protects against multiple punishments for same offense. U.S.C.A. Const.Amend. 14; Vernon's Ann.Texas Const. Art. 1, S 14. | What are the constitutional protections double jeopardy provides? | Pretrial Procedure - Memo 1235 - C-AC.docx | LEGALEASE 00050589-LEGALEASE 00050590 | Condensed, SA, Sub 0.75 | 0.75 | 0 | | 1 | |
| 17676 | Carino Reinvestment Dev. Auth. v. Atl. City, 18 N.J. 64 463 | 371+1311 | The court must first determine if there is a public purpose for the development project at issue here. As a general background matter, it should be kept in mind that "[t]ax] exemptions in favor of governmental agencies should be liberally construed." City of Mount Vernon v. State Roads Comm'n. Water Mgmt. See also Chevron 154 Tex.App., 36 N.J. 453, 440, 177 A.2d 732 (1962) (citations omitted). | Tax exemptions in favor of governmental agencies should be liberally construed. | How should the tax exemptions in favor of governmental agencies be construed? | 04441.docx | LEGALEASE 00164525-LEGALEASE 00164526 | Condensed, SA | 0.77 | 0 | | 1 | |
| 17677 | Serv. Am. Corp. v. City of San Diego, 13 Cal.App.4th 1132 | 371+2311 | Property subject to taxation is assessed at its "full value." (Rev.Code.) 401) Property owned by governmental entities is generally exempt from taxation... Where the governmental property is leased to or otherwise devoted to use by a private party, however, the leasehold interest owned by the private party is subject to taxation and is separately assessed as a "possessory interest." | Property owned by governmental entities is generally exempt from taxation. | Are properties owned by governmental entities exempt from taxation? | Taxation - Memo 1248 - C-SS_67233.docx | ROSS 00033218464-ROSS 00033467 | Condensed, SA | 0.82 | 0 | | 1 | |
| 17678 | Easley v. City of Lincoln, 213 Neb. 450 | 371+2311 | It is a well-established rule that property used for a public purpose taxation. Neb. Const. art. VIII, "2. However, to say that public property is exempt from taxation is not to say that it is exempt from liability occurring special assessments levied by reason of special benefits conferred upon the property. A distinction is recognized between taxation for general purposes and the levying of assessments of specific property for specific benefits conferred upon it by means of an improvement district created by an appropriate governing authority. | Ordinarily, public property is exempt from general purpose taxation. | Is public property exempt from the general taxation purpose? | 04477.docx | LEGALEASE 00164695-LEGALEASE 00164696 | Condensed, SA | 0.88 | 0 | | 1 | |
| 17679 | United States v. Scott, 437 U.S. 82 | 135H+96 | A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by and permissible only upon the appellate court's reversal of the trial court's determination. Even when a defendant's liability to be tried again is explicably to reference to the underlying purpose of the Double Jeopardy Clause. An acquittal represents a resolution, correct or not, of some or all of the factual elements of the offense charged. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty.' (Green, 355 U.S. at 188, 78 S.Ct. at 223.) On the other hand, to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect. | Where a defendant successfully seeks to avoid his trial prior to its conclusion by motion for mistrial the double jeopardy clause is not offended by a second prosecution; such a motion by defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. U.S.C.A.Const. Amend. 5. | Will a second trial after an acquittal wear down the defendant? | 015611.docx | LEGALEASE 00166090-LEGALEASE 00166091 | Condensed, SA, Sub 0.67 | 0.67 | 0 | | 1 | |
| 17680 | State v. Blackshere, 344 S.W.2d 400 | 135H+100.1 | One of the most fundamental rules of double jeopardy jurisprudence is that when a trial ends in an acquittal, the defendant may not be tried again for the same offense. Whether the acquittal is based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, any defense that terminates the prosecution that would lead to a second trial, is prohibited. Even when a defendant's liability to be tried again is "explicably" to reference to the underlying purpose of the Double Jeopardy Clause. An acquittal represents a resolution of some or all of the factual elements of the offense charged, and is an erroneous exclusion of evidence or misweighing of the evidence, the acquittal bar his appellate review of the ultimate disposition as well as the underlying foundation. | When a trial ends in an acquittal, the defendant may not be tried again for the same offense. U.S.C.A. Const. Amend. 5. | "When a trial ends in an acquittal, can the defendant not be tried again for the same offense?" | Double Jeopardy Memo 480 - C - TL_64539.docx | ROSS 00032922709-ROSS 0032922710 | Condensed, SA | 0.82 | 0 | | 1 | |
| 17681 | People v. Burton, 376 Ill. App. 3d 856 | 135H+1 | We begin by restating the legal principles pertinent to the defendant position. It is well established that the government "may not put a defendant in jeopardy twice for the same offense." Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978); People v. Gray, 214 Ill.2d 1, 291 Ill.Dec. 428, 823 N.E.2d 555, 96 S.Ct. at 829, 54 L.Ed.2d at 722. Before jeopardy attaches a judgment becomes final, so the constitutional protection against double jeopardy extends to the defendant so desires, to have his or her trial completed before a particular tribunal. Arizona, 434 U.S. at 503, 98 S.Ct. at 829, 54 L.Ed.2d at 722. | The government may not put a defendant in jeopardy twice for the same offense. U.S.C.A. Const. Amend. 5. | Can a government put a defendant in jeopardy twice for the same offense? | 01659.docx | LEGALEASE 00161377-LEGALEASE 00161378 | Condensed, SA | 0.82 | 0 | | 1 | |
| 17682 | Norwegian Twp. v. Schuylkill Cty. Bd. of Assessment Appeals, 74 A.3d 1124 | 371+2394 | However, while the tax exemption claim observed that is correct, the record cannot support a conclusion that is based on the tax exemption of this property as a "community" and "exemption" interchangeably. Id. As we noted in Greenville, the distinction between tax immunity and tax exemption is unnecessary and even though it produced ample evidence to show that where term is used, government-owned property is not taxed if it is being used for a public purpose, and relating to this property is available to public for recreational activities, had been used by township to benefit public, and the township had made good faith effort to develop the land for a park or playground, and though not required for property to be tax immune/exempt, court also found that the township made a good faith effort to develop the property. Const. Art. 8, S 2. | "Is government-owned property taxable, if it is being used for a public purpose?" | Taxation - Memo 1281 - C-SM460.docx | ROSS 00033301464-ROSS 003319027 | Condensed, SA, Sub 0.17 | 0.17 | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17683 | Salomon Forex v. Tauber, 8 F.3d 966 | 83H+12 | Today the CEA establishes a comprehensive system for regulating futures contracts and options to provide a central marketplace... | Commodities Exchange Act was aimed at manipulation, speculation, and other abuses that could arise from trading of futures contracts and options, as distinguished from commodity itself, and Congress never purported to regulate "spot transactions" (transactions for immediate sale and delivery of commodity) or "cash forward transactions" (in which commodity is presently sold but its delivery is, by agreement, delayed or deferred). Commodity Exchange Act, § 1(b)(1)(A), as amended, 7 U.S.C.A. § 1. | What system has Commodity Exchange Act established? | Commodity Futures Trading Regulation - Memo 83 - C - A_88887.docx | ROSS-003281114-ROSS-003281115 | Condensed, SA, 0.84 | 0.84 | | 1 | | 1 | |
| 17684 | Com. v. Lowder, 432 Mass. 92 | 135H+100.1 | Whether double jeopardy principles bar a retrial. A criminal defendant has a constitutional right to be placed in jeopardy only once for the same offense... | When a defendant has been put in jeopardy for an offense and acquitted, he may not be retried for that offense. U.S.C.A. Const.Amend. 5. | Where a defendant has been put in jeopardy for an offense and acquitted, can he not be retried for that offense? | Double Jeopardy Memo 550 - C - MG_68829.docx | ROSS-003294994-ROSS-003294997 | SA, Sub | | | | 1 | 1 | |
| 17685 | United States v. Armco Steel Corp., 252 F. Supp. 364 | 135H+91.1 | There can be no fault and fault can be such cases must bound upon its facts, but in a general proposition jeopardy does not attach when... | Generally, jeopardy does not attach when the fault was not with the prosecuting attorney nor with the defendant. U.S.C.A. Const.Amend. 5. | Does jeopardy does not attach when the fault was not with the prosecuting attorney nor with the defendant? | 031816.docx | LEGALEASE-00166583-LEGALEASE-00166586 | Condensed, SA, Sub 0.81 | 0.81 | | 1 | | | |
| 17686 | State v. Musumeci, 717 A.2d 56 | 135H+96 | Musumeci also claims that a retrial would violate his right not to be placed in double jeopardy for the same offenses... | As a general rule, double jeopardy bar does not preclude a second trial when a defendant requests a mistrial. U.S.C.A. Const.Amend. 5; Const. Art. 1, § 7. | Are there circumstances in which a mistrial does not preclude a second trial? | 015826.docx | LEGALEASE-00166599-LEGALEASE-00166600 | Condensed, SA, Sub 0.81 | 0.81 | | 1 | | | |
| 17687 | Tropical Jewelers v. Nationsbank, N.A. (S.), 781 So. 2d 381 | 34SH+10 | Article 9 defines "debtor" in part as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral..." | Under Florida's version of Uniform Commercial Code (UCC), guarantors are not excluded from definition of "debtor," for purposes of secured transaction provisions, under portion of statute defining debtor as "the owner of the collateral in any transaction..." | "Are guarantors not excluded from a definition of debtor, as used in secured transaction provisions?" | 042649.docx | LEGALEASE-00166947-LEGALEASE-00166948 | Condensed, SA, Sub 0.09 | 0.09 | | 1 | | | |
| 17688 | In re Trusty, 189 B.R. 977 | 34SH+10 | Bankruptcy courts in the Northern District of Alabama recognize that the current version of Alabama secured transactions law... | Under Alabama law, "rent-to-own" agreements do not create security agreements and are not sale contracts. Ala.Code 1975, §§ 7-1-201, 7-2-106. | Do rent to own agreements not create security agreements and are not sale contracts? | 041865.docx | LEGALEASE-00167065-LEGALEASE-00167066 | Condensed, SA, Sub 0.47 | | | 1 | | 1 | |
| 17689 | Dr. Molecular Med. & Immunology v. Twp. of Belleville, 39 N.J. Tax 842 | 371+2101 | In order to qualify for an exemption under N.J.S.A. 54:4-3.3, taxpayer must demonstrate that the property is used for a public purpose... | In order to qualify for the real property tax exemption applicable to public property, the taxpayer must demonstrate that the property in question is used for a public purpose; this requirement is, however, accorded a liberal construction... | Does privately held leasehold interests in public property subject to taxation? | 045024.docx | LEGALEASE-00166520-LEGALEASE-00166503 | Condensed, SA, 0.47 | 0.47 | | 1 | | 1 | |
| 17690 | First Main St. Corp. v. Bd. of Assessors of Acton, 49 Mass. App. Ct. 53 | 371+2016 | An option to acquire a fee interest has been considered a future, rather than present interest. Certified Corp. v. GTE Prods. Corp., 392 Mass. 821... | Double inquiry regarding existence of right to tax are resolved in favor of the taxpayer. | In whose favor are the doubts regarding existence of right to tax are resolved in favor of the taxpayer? | Taxation - Memo 1321 - C - SC_58515.docx | ROSS-003293545-ROSS-003293544 | Condensed, SA, Sub 0.87 | 0.87 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17691 | Sturbridge Home Builders v. Downing Seaport, 890 A.2d 58 | 156+52.10(2) | "[W]aiver is the voluntary, intentional relinquishment of a known right. It results from action or nonaction * * *." Lajayi, 860 A.2d at 687 (quoting Haxton's of Riverside v. Windmill Realty, Inc., 488 A.2d 723, 725 (R.I.1985)). "The party claiming that there has been a waiver of a contractual provision has the burden of proof on that issue."1800 Smith Street Associates, LP v. Gencarelli, 888 A.2d 46, 55 n. 4 (2005); see 28 Am.Jur.2d Estoppel and Waiver " 225 (2000) ("The party claiming a waiver has the burden of proof of the facts on which the party relies to establish such a waiver, and unless such proof is forthcoming the party cannot sustain the claim."). "A waiver may be proved indirectly by facts and circumstances from which intention to waive may be clearly inferred [.]" 28 Am.Jur.2d at " 225. (Emphasis added). On summary judgment, the party asserting waiver of a contract term has the affirmative duty to produce evidence demonstrating the existence of an issue of fact concerning the voluntary relinquishment of a known right. | Waiver is the voluntary, intentional relinquishment of a known right; it results from action or nonaction. | Does waiver result from action or nonaction? | 018132.docx | LEGALEASE-00167334-LEGALEASE-00167335 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 17692 | Com. v. McDonald, 462 Mass. 236 | 3.77E+25 | The criminal harassment statute proscribes "willfully and maliciously engag[ing] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person." G.L. c. 265, " 43A (a ). Wilful conduct is that which is "intentional rather than accidental"; it requires no evil intent, ill will, or malevolence. See Commonwealth v. Luna, 418 Mass. 749, 753, 641 N.E.2d 1050 (1994), and cases cited. A "malicious act," as defined in Black's Law Dictionary 1043 (9th ed. 2009), is an "intentional, wrongful act done willfully or intentionally against another without legal justification or excuse." See Commonwealth v. Paton, 63 Mass.App.Ct. 215, 219, 824 N.E.2d 887 (2005), quoting Commonwealth v. York, 50 Mass. 93, 9 Met. 93, 104 (1845) (malicious acts are "done with an evil disposition, a wrong and unlawful motive or purpose; the wilful doing of an injurious act without lawful excuse"). "Conduct is wilful when the actor intends both the conduct and its harmful consequences [and] may be wilful and malicious although its harmful consequences are neither substantial nor highly likely." (Citations omitted.) Commonwealth v. Schuchardt, 408 Mass. 347, 352, 557 N.E.2d 1380 (1990). See Commonwealth v. O'Neil, 67 Mass.App.Ct. 284, 293, 853 N.E.2d 576 (2006) (defendant's conduct satisfied requirement of malice under G.L. c. 265, " 43A [a ], because it "was intentional and without justification or mitigation, and any reasonably prudent person would have foreseen the actual harm that resulted"). Furthermore, G.L. c. 265, " 43A (a ), "by its plain terms, requires the Commonwealth to establish, at the very least, that the defendant intended to target the victim with the harassing conduct on at least three occasions." Commonwealth v. Welch, 444 Mass. 80, 90, 825 N.E.2d 1005 (2005). | "Wilful conduct" for purposes of criminal harassment is that which is intentional rather than accidental; it requires no evil intent, ill will, or malevolence. M.G.L.A. c. 265, § 43A(a). | "What is ""willful conduct"" for the purposes of criminal harassment?" | 046794.docx | LEGALEASE-00167364-LEGALEASE-00167365 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17693 | Frunzar v. Allied Prop. & Cas. Ins. Co., 548 N.W.2d 880 | 21+18 | Under Iowa law, professional statements are treated as affidavits and the attorney making the statement may be cross-examined regarding the substance of the statement.State v. Williams, 315 N.W.2d 45, 52"53 (Iowa 1982); Cogley v. Hy Vee Food Stores, Inc., 257 Iowa 1381, 1386"87, 137 N.W.2d 310, 313 (1965). Although Allied clearly had the right, it did not cross-examine plaintiff's counsel regarding the content of his professional statement.We conclude that plaintiff's counsel's professional statement was admissible under the existing record and could have been considered by the district court on the "uninsured status" issue. | Professional statements of litigant's attorney are treated as affidavits, and attorney making statement may be cross-examined regarding substance of statement. | Do professional statements have the effect of an affidavit? | 07305.docx | LEGALEASE-00077613-LEGALEASE-00077614 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 17694 | Lackawanna Chapter of Ry. & Locomotive Historical Soc. v. St. Louis Cty., Mo., 497 F.3d 832 | 50+2 | The Transportation Museum, in its capacity as a museum, knowingly received No. 952 from the Historical Society, but St. Louis has not claimed that it, or the Transportation Museum before it, acquired actual title. Cf. City of Chattanooga, Tenn. v. Louisville & Nashville R.R. Co., 298 F.Supp. 1, 9 (E.D.Tenn.1969) (resolving dispute over continued display of Civil War locomotive in favor of railroad's desire to relocate, where railroad possessed title). The uncoupling of title and possession in this case thus created an express or implied bailment for an indefinite period. See, e.g., In re McCagg's Estate, 450 A.2d 414, 416 (D.C.1982); see also Leonard D. DuBoff & Christy O. King, Art Law In a Nutshell 273"74 (2006) (discussing museum's status as bailee for loaned objects). In the absence of a formal agreement, the indefinite bailment arises from the relationship between a lender and a museum and is terminable at will. Cf. Truck Leasing Corp. v. Swope, 248 S.W.2d 84, 86 (Mo.Ct.App.1952) ("bailment for an indefinite time is terminable at will"). | In the absence of a formal agreement, an indefinite bailment arises under Missouri law from the relationship between a lender and a museum and is terminable at will. | Is a formal agreement required for a bailment? | 06669.docx | LEGALEASE-00079145-LEGALEASE-00079147 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17695 | Bucca v. State, 43 N.J. Super. 315 | 207+5 | If an uncle and niece marry in New Jersey, they are guilty of the crime of incest. See N.J.S. 2A:114"1, N.J.S.A.: "Persons who intermarry within the degrees prohibited by law, or who, being related within such degrees, together commit fornication or adultery, are guilty of incest, and each shall be punished by a fine of not more than $1,000, or by imprisonment for not more than 5 years, or both." | Where uncle, who was New Jersey resident, married his niece, who was daughter of uncle's sister, in Italy under dispensation authorized by Italian law, uncle, who sought to bring the niece to New Jersey, would not be entitled to full recognition of such Italian marriage under New Jersey law, and therefore, uncle's cohabitation with niece in New Jersey would constitute incest. N.J.S. 2A:114-1, N.J.S.A.; R.S. 37:1-1, N.J.S.A. | Does marriage between uncle and niece is a crime of incest? | 10819.docx | LEGALEASE-00081457-LEGALEASE-00081458 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17696 | Worden v. Smith, 178 Wash. App. 309 | 366+1 | Equitable subrogation "includes every instance in which one person ... has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter." 73 Am.Jur. 2d Subrogation " 5 (2013). " "Subrogation applies in many contexts, and while the overall purpose of preventing unjust enrichment is the same, many times the requirements will be tailored to the particular nuances of the situation." " Columbia Cmty. Bank v. Newman Park, LLC, 177 Wash.2d 566, 574 n. 7, 304 P.3d 472 (2013) (quoting Bank of Am., NA v. Prestance Corp., 160 Wash.2d 560, 576, 160 P.3d 17 (2007)). The purpose of the doctrine is " "to avoid a person's receiving an unearned windfall at the expense of another." " Prestance, 160 Wash.2d at 567, 160 P.3d 17 (quoting Restatement (Third) of Property " 7.6 cmt. a). In its most recent decision dealing with equitable subrogation, our Supreme Court observed that "Washington courts embrace a long and robust tradition of applying the doctrine of equity." Newman Park, 177 Wash.2d at 569, 304 P.3d 472. | The purpose of the doctrine of equitable subrogation is to avoid a person's receiving an unearned windfall at the expense of another. | What is the purpose of the doctrine of equitable subrogation? | 06504.docx | LEGALEASE-00081960-LEGALEASE-00081962 | Condensed, Order, SA, Sub | 0.88 | 1 | 1 | 1 | 1 | 1 |
| 17697 | U.S. ex rel. Rongetti v. Neelly, 207 F.2d 281 | 24+107 | The burden of proof in establishing alienage in deportation proceedings is of course on the government. Although we do not have before us the record which was made in the department, we must assume that the findings made therein are supported by evidence of a substantial nature. In any event, there is no dispute that plaintiff was born in Italy and came here from that country. Therefore the burden of proof to establish his citizenship in this country was upon plaintiff. We have here nothing but a bare claim of citizenship unsubstantiated by any evidence. The return of the respondent in each habeas corpus proceeding was not traversed and it can therefore be considered that only questions of law are raised. | Burden of proof in establishing alienage in deportation proceedings is on the government. | Who bears the burden of proof in establishing alienage in deportation proceedings? | Aliens_Immigration and Citizenship- Memo 3 - RK.docx | ROSS-003325636-ROSS-003325637 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 17698 | Serpas v. Schmidt, 621 F. Supp. 734 | 216+5 | Without doubt, defendants accurately assert that horse racing is a highly regulated industry and that the State has an interest in maintaining the industry's integrity. Phillips v. Graham, 86 Ill.2d 274, 427 N.E.2d 550 (1981). Moreover, the Supreme Court has clearly recognized that warrantless searches in closely regulated industries can be reasonable. Donovan v. Dewey, 452 U.S. 594, 600, 101 S.Ct. 2534, 2538"39, 69 L.Ed.2d 262 (1981). Under this exception to the Fourth Amendment's warrant requirement, courts have found that by accepting the benefits of a highly regulated trade, an individual also accepts the burden of regulation and thereby consents to administrative investigations or inspections. Marshall v. Wait, 628 F.2d 1255, 1258 (9th Cir.1980). Therefore, the individual operating within a highly regulated industry can have no reasonable expectation of privacy as least as to administrative inspections.Id. (emphasis added). | Individual operating within a highly regulated industry can have no reasonable expectation of privacy as to administrative inspections. U.S.C.A. Const.Amend. 4. | Is an individual operating within a highly regulated industry bound to administrative inspection? | 01310.docx | LEGALEASE-00084019-LEGALEASE-00084020 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 17699 | Stiles v. Clifton Springs Sanitarium Co., 74 F. Supp. 907 | 180+48(1) | Privileged communications are controlled principally by state statutes which, under Rule 43(a), clearly govern. Section 352 of the Civil Practice Act provides in part that a person authorized to practice medicine or surgery or a professional nurse shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity. Section 354 relates to the manner in which the privilege may be waived by personal representatives of a deceased patient and expressly excludes such facts as would tend to disgrace the memory of the deceased patient. Matter of Cashman, 159 Misc. 881, 289 N.Y.S. 328, affirmed 280 N.Y. 681, 21 N.Ed.2d 193. At first blush that decision would seem to be determinative of the question. The facts in the present case, however, seem to me sufficient to distinguish that decision and to make it inapplicable here. No decisions of the New York Courts in a situation similar to the case at bar have been called to my attention nor have I been able to find any. The reason for the decision in the Cashman case was grounded in public policy. I take that to mean that the memory of a person may not be besmirched by the testimony of physicians and nurses who gained their information by observations or treatment of the deceased person. The purpose of Section 352 is to protect the relationship and patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment or disgrace to patients. Woernley v. Electromatic Typewriters, Inc., 271 N.Y. 228, 2 N.Ed.2d 638; Steinberg v. New York Life Ins. Co., 263 N.Y. 45, 188 N.E. 152, 90 A.L.R. 642. Testimony of the nurse on the examination before trial establishes that the deceased died by his own hand. Evidence tending to show that the deceased was suffering from a mental disorder with suicidal tendencies would, in my opinion, not tend to disgrace his | At common law, suicide was a crime and consequence was forfeiture of property of offender. | Is the forfeiture of the offenders property a consequence of suicide? | 05172.docx | LEGALEASE-00084237-LEGALEASE-00084239 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 17700 | In re Bounds, 495 B.R. 725; 51+2556 | | The court, therefore, rejects Bounds's argument that the bankruptcy court disregarded and held these malpractice claims exempt because of an alleged legal malpractice, some of which accrued prepetition and some of which accrued postpetition. Chris Bounds alleges that as a result of his attorneys' breach of their duty "not to place him in bankruptcy without a clear direction concerning the consequences of doing so." Whereas this conduct resulted in a number of different injuries, some of which occurred later in his bankruptcy case, Bounds's cause of action accrued under Texas law at the time it would have accrued for tort purposes. See 11 U.S.C. § 541(a)(1) …  [text continues] | Chapter 7 debtor-husband's cause of action for his attorneys' alleged malpractice, in purportedly deceiving him into believing he could sell farming plans to state court litigation by advising him to file for bankruptcy … not be dischargeable in bankruptcy and that cause of action alleged would render his homestead nonexempt, arose at the moment that bankruptcy case was commenced and cause of alleged injury first occurred, even if debtor-husband did not at that time know the full extent of his injury; accordingly, malpractice claims belonged, not to debtor-husband, but to bankruptcy estate. 11 U.S.C.A. § 541(a)(1). | Do the fiscal obligations in the complaint limit and guide the court's analysis of when a cause of action arises? | 05664.docx | LEGALEASE 00580517 / LEGALEASE 00580518 | Condensed, SA, Sub 0.59 | 0.59 | 0 | 1 | | 1 | |
| 17701 | Carlisle v. U.S., 83 U.S. 147; 38+41 | | By diligence is meant the obligation of fidelity and obedience which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives, and it may be an absolute and permanent obligation, or it may be a qualified and temporary one. The citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government … local and temporary allegiance, which continues during the period of his … [text continues] | "A diligence" is the obligation of fidelity and obedience which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives, and it may be an absolute and permanent obligation, or it may be a qualified and temporary one. | How is diligence defined? | 11439.docx | LEGALEASE 00596563 / LEGALEASE 00596564 | Condensed, SA 0.57 | 0.57 | 0 | 1 | | 1 | |
| 17702 | Arrow Marble v. Estate of Killion, 441 S.W.3d 702 | 307A+590 | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. See Wit's Corn. v. Rideau, 838 S.W.2d 340, 341 (Tex.App.-Houston [1st Dist.] 1992, no writ) ("[A] trial court's authority to dismiss cases for want of prosecution does not confer upon it the additional authority to deny litigants their day in court … the order to avoid it becoming a final judgment. Jacobsen, 315 S.W.3d at 98,914 (citing El Paso, 615 S.W.2d 391). This plaintiff fails to challenge the error, the order of dismissal with prejudice becomes "a final determination on the merits for purposes of res judicata." Id. at 866. | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. | Should a dismissal for failure to prosecute be without prejudice? | 10301.docx | LEGALEASE 00595163 / LEGALEASE 00595164 | Condensed, SA 0.93 | 0.93 | 0 | 1 | | 1 | |
| 17703 | A & B Bolt & Supply v. Whitco Supply, 167 So. 3d 907 | 307A+581 | Louisiana Code of Civil Procedure Article 561 is to be "liberally construed in favor of maintaining a plaintiff's suit." Id. at 785. Nor should suits be dismissed automatically for a plaintiff's failure to abandon prosecution or substance. Id. "The article was not intended, however, to dismiss those cases in which a plaintiff has clearly demonstrated before the court … during the prescribed period that he does not intend to abandon the action." La. C.C.P. art. 561 … [text continues] | Statute governing abandonment was not intended to dismiss those cases in which a plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon the action? | Does the tort at governing abandonment need to indicate to dismiss those cases in which a plaintiff has clearly demonstrated before the court that he does not intend to abandon the action? | 09700.docx | LEGALEASE 00595940 / LEGALEASE 00595941 | Condensed, SA, Sub 0.61 | 0.61 | 0 | 1 | 1 | 1 | |
| 17704 | Isbin Wallace & Co. v. R.A. Mgmt., 148 Misc. 160 | 38+13 | Under the authorities it would seem that the validity of the assignment herein is to be tested as of the date when the power of attorney was executed. Thompson v. Erie R. R. Co., 207 N. Y. 171, 100 N. E. 791; Thompson v. Van Vechten, 27 N.Y. 568, … App. Div. 436, 128 N. Y. S. 1005, affirmed 207 N. Y. 650, 100 N. E. 794. So tested the assignment must fail as against public policy, or at least unenforceable in an action at law against the employer, for the reason that … existing. Corpus Juris (Vol. 6, 40 § 90) states, in Contracts, "614 Restatement, Contracts, "114, subd. 2. | Assignment of wages to be earned in future, under employment contract not then existing, held void as against public policy, or at least unenforceable in law action against employer. | How is the validity of wage assignments to be tested? | 003809.docx | LEGALEASE 00115829 / LEGALEASE 00115830 | Condensed, Order, SA, Sub 0.73 | 0.73 | 1 | 1 | | 1 | 1 |
| 17705 | Costanza v. Costanza, 346 N.J. Super 116 | 38+4 | Any "specific thing," "debt or chose in action may be the subject of an assignment," 6 Am. Jur. 2d 4. Obviously that which is not in existence or cannot be identified cannot be assigned … [It] in order to effect a legal assignment there must be evidence of an intent to assign or transfer the whole or part of some specific thing, debt or chose in action and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified. 3 Williston, Contracts, (3rd ed. 1960), 7404 (quoting from the case of Russell v. Texas Consolidated Oils, 120 F.Supp. 508 (D.N.M.1954)). | Any "specific thing", "debt", or "chose in action may be the subject of an assignment," but … obviously that which is not in existence or cannot be identified cannot be assigned. | Can any specific thing be assigned to effectuate a legal assignment? | 003889.docx | LEGALEASE 00115900 / LEGALEASE 00115901 | Condensed, SA 0.74 | 0.74 | 0 | 0 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,673 | 21,876 | 9,029 |
| 17706 | Argonaut Ins. Co. v. C & S Bank of Pisco, 140 Ga. App. 807 | 366+1 | Subrogation is not founded upon contract, express or implied, but upon principles of equity and justice. | A surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all the rights of the creditor… Code Ann. s 103-502. Subrogation is not founded upon contract, express or implied, but upon principles of equity and justice. The doctrine was not limited nor abrogated by the statutes, but grew and is still… | Is the right of subrogation founded upon contract? | Subrogation - Memo 85 - RM-C.docx | ROSS0002979743 ROSS-000297948 | Condensed, SA | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17707 | Imre Kumness, 155 B.R. 197 | 289+953 | Under Illinois law, partners' rights in partnership property are secondary to rights of partnership creditors; until creditors of partnership are satisfied, no partner has rights to any distribution from partnership. | Under the Uniform Partnership Act, 5 ILA 805 ILCS 205/1 "81, a partner's interest in a partnership is a personal property interest consisting of "his share of the profits and surplus…" … | Do partners have the right to distribution of partnership property before creditors are satisfied ? | 02386.1.docx | LEGALEASE-00122521 LEGALEASE-00122522 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 17708 | Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 971 F. Supp. 2d 49 | 221+1642 | The act of state doctrine goes to the merits, and is not a jurisdictional defense. | The act of state doctrine goes to the merits, and is not a jurisdictional defense… | Does the act of state doctrine goes to the merits, and is not a jurisdictional defense? | International Law - Memo #123 - C - SJ.docx | ROSS-000334279 ROSS-000334281 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | 1 |
| 17709 | Boston Maritime Serv. v. Stann, 342 Mass. 439 | 237+97 | Questions relating to public health and nutrition are of public concern, but the qualified privilege of fair comment upon a matter of public concern is a matter of defense in a libel action ordinarily not open on demurrer. | We are not unmindful of the fact that questions relating to public health and nutrition are of public concern… | Are matters of defense open on demurrer? | 02304.docx | LEGALEASE-00125075 LEGALEASE-00125076 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 17710 | United States v. Bahel, 662 F.3d 610 | 169+317(9) | Prosecution of Chief of Commodity Procurement Section within the United Nation's Procurement Division, as foreign national employee… | Section 666(a)(1)(B) provides that a target of an organization that receives, in any one year period, in excess of $10,000 under a federal program… | Does the statute that prohibits theft involving federal funds that extend to both bribes and gratuities? | 01040.docx | LEGALEASE-00125948 LEGALEASE-00125949 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | **839** | **15,944** | **14,873** | **23,876** | **9,029** |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 17711 | Bernobich & Gruszo, P.C. v. Groupo & Vybp, P.C., 402 Ill. App. 3d 961 | 30+1851) | Finally, we cannot agree with Bernobich's insistence that, regardless of all this, Groupo's cross-claim here somehow vested jurisdiction with this court [and our] Bernobich claims that Groupo should have filed a timely objection to its motion to vacate the dismissal of its appeal, we would have filed a motion to dismiss the appeal for lack of jurisdiction and/or sought mandamus or a supervisory order from the Illinois Supreme Court. However, it is well established that appellate jurisdiction cannot be conferred by laches, agreement, waiver or estoppel. See Physicians Insurance, 334 Ill.App.3d at 455, 240 Ill. Dec. 337, 730 N.E.2d 175. Fry Currie v. Lao, 148 Ill.2d 151, 170 Ill. Dec. 297, 592 N.E.2d 977 (1992); accord Bernbaum v. Glen Elm Design, Inc., 288 Ill. App.3d 984, 989, 223 Ill. Dec. 530, 680 N.E.2d 1194 (1997). This includes the failure of one party, i.e., Groupo, to call the appellate court's attention to a jurisdictional defect. See Board of Education of the City of Chicago v. Chicago Teachers Union, Local 1, American Federation of Teachers, 26 Ill.App.3d 985, 811, 326 N.E.2d 158 (1975). Regardless of Groupo's action or inaction or its arguments here, Bernobich's motion filed in this court to vacate the dismissal of its appeal should have been granted, and, as such its appeal should never have been reinstated under the rules we have just enunciated. It was, therefore, incumbent upon the appellate court [that hearing that motion to deny it, and not to grant it, | Appellate jurisdiction cannot be conferred by laches, agreement, waiver, or estoppel, including a party's failure to call the jurisdictional defect to the appellate court's attention. | Can Appellate jurisdiction be conferred by agreement, waiver, or estoppel? | 009256.docx | LEGALEASE 00199159-LEGALEASE 00199140 | Condensed, SA, 0.88 | 0.88 | 0 | | | 1 | |
| 17712 | Falls Rubber Co. of Akron v. Applebaum, 286 Mass. 18 | 24(9+10 | Our law has long been settled that one who does business under a trade name may be liable upon paper executed by him in that name. Bryant v. Eastman, 7 Cush. 111, G.L.(Ter.Ed.) c. 107, § 40. embodies this. "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name." Nor in view of the finding, need we consider the liability of those who sign as agent for a non-existent principal. This defendant is found to have accepted for himself in a form used by him as a trade name. We cannot go behind that finding. Order dismissing report ... | One doing business under trade name may be liable on paper executed by him in that name. G.L.(Ter.Ed.) c. 107, § 40. | Can one who does business under a trade name be liable upon paper executed by him in that name? | 009538.docx | LEGALEASE 00142634-LEGALEASE 00142637 | Condensed, SA, 0.84 | 0.84 | | | | 1 | |
| 17713 | Lanxbee v. Bank of Am., M.A., 714 F. Supp. 2d 542 | 172H+1344 | Plaintiff is correct that 15 U.S.C. § 1602(a), and the Interim regulation published at 12 C.F.R. § 226.18(g), commonly referred to as Regulation Z, requires a creditor to disclose "the total of payments, the number and amount of payments, and periods of payments scheduled.... Plaintiff also draws the Court's attention to a number of reported cases adopting an adjective standard in determining violations of TILA and rejecting the position that deception is required ... The Court are necessary to demonstrate an actionable claim for rescission. Smith v. Chapman, 614 F.2d 968, ... Truth in Lending Act § 128(a), 15 U.S.C.A. § 1602(a); 12 C.F.R. § 226.18(g). | Borrower who sued lender and federal Home Loan Mortgage Corporation [Freddie Mac], seeking to allege that lender inaccurately disclosed number and dollar amount of mortgage payments, as required to state claim under Truth in Lending Act (TILA), borrower's erroneous construction of mortgage terms on disclosure form would have invalidated 359 loan payments on single date. Truth in Lending Act § 128(a), 15 U.S.C.A. § 1602(a); 12 C.F.R. § 226.18(g). | Under federal law, is a creditor required to disclose the total payments? | 013929.docx | LEGALEASE 00149533-LEGALEASE 00149532 | Condensed, SA, Sub 0.38 | 0.38 | 0 | | | 1 | 1 |
| 17714 | Bivens v. Johnson Cty., 740 S.W.2d 678 | 15+k3211) | Incidental damages are sometimes called "severance damages, i.e., if only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relationship of the part taken to the rest. Thus the owner ... 45, 53 N.M. 323; State Department of Highways v. Blewett, 475 P.2d 225; ... damages." Denny v. Wilson County, 198 Tenn. 677, 681, 281 S.W.2d 671, 674 (1955). The analysis of such damages depends on whether the parties to a taking knew or should have known at the time of the execution of the deed that all or any part of the value of the incidental damages ... and incidentally the tract was to be affected by the taking. but ... followed in fixing incidental damages in [such] a case ... each case of this nature must rest upon the facts and circumstances of that particular case." Peck v. Bivens, 10 S.W.2d App. 141, 153, 438 S.W.2d 754, 760 (1968). | Successor-in-interest was estopped from claiming incidental damages caused to its business property by former owner's conveyance of access to parking lot; deed from predecessor-in-interest specifically reserved and accepted right-of-way conveyances in free to government for rights-of-way, and deed executed by predecessor-in-interest to State for other portion of property contained no disclaiming any right to incidental damages from taking and included notation of highway project number, and thus successor-in-interest ... project was to have affected his property. | Is the out in the deed, that the construction for it is in full restriction of access to parking lot, deed from predecessor-in-interest specifically reserved and accepted all his right to later sue for such damages? | 017998.docx | LEGALEASE 00150624-LEGALEASE 00150625 | Condensed, SA, Sub 0.38 | 0.38 | 0 | | | 1 | 1 |
| 17715 | Idaho Wool Growers Ass'n v. Vilsack, 816 F.3d 1095 | 149E+399 | NEPA impose on federal agencies conducting environmental review a duty to consult with other agencies. "Prior to making any decision ... statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved in the proposed action." 42 U.S.C. § 4332(2)(C). Additional procedural requirements, policies of public participation and informed decisionmaking, copies of the EIS and comments thereon from other agencies. "shall accompany the proposal through the existing agency review process." | National Environmental Policy Act (NEPA) imposes on federal agencies conducting environmental review a duty to consult with other agencies. National Environmental Policy Act of 1969, § 102(2)(C), 42 U.S.C.A. § 4332(2)(C). | Do the federal agencies have to consult other agencies? | Woods and Forests - Memo 4b - ANM_40275.docx | ROSS 000328235-ROSS-000382204 | SA, Sub | 0.63 | 0 | | | 1 | 1 |
| 17716 | Jaffee v. Chase Home Fin., 155 So. 3d 1199 | 266+178421 | Health Application Sys., Inc. v. Hartford Life and Accident Ins. Co., 381 So.2d 294, 297 (Fla. 3d DCA 1980) (emphasis added) (citations omitted). see also A complaint is subject to dismissal for failure to state a cause of action if, on the face of the complaint, the allegations demonstrate the existence of an affirmative defense that bars recovery. However, "for exhibits to serve as a basis for dismissing a complaint for failure to state a cause of action, the exhibits must actually negate the cause of action." 34 DCA 1994). However, "for exhibits to serve as a basis for dismissing a complaint for failure to state a cause of action, the exhibits must actually negate the cause of action." Palatin Props. v. Henry Inc. Entss., 934 So.2d 568, 564 (Fla. 2d DCA 2007) | Allegations of mortgagee's foreclosure complaint were sufficient to state a cause of action for mortgage foreclosure, even though copy of promissory note attached to the complaint was payable to a different lender and did not contain any indorsements or allonges demonstrating that the note had been transferred to mortgagee; complaint alleged that mortgagee was now the holder of the note and mortgage or entitled to enforce them, and copy of note did negate the cause of action, but merely raised a possible pending defense. | For exhibits to a complaint to serve as a basis for dismissing a complaint for failure to state a cause of action, should the exhibits actually negate the cause of action? | Pretrial Procedure - Memo # 9384 - C - NS_62750.docx | ROSS 000292086-ROSS-000292862 | Condensed, SA, Sub 0.02 | 0.02 | 0 | | | 1 | 1 |

Appendix D

3120

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 17717 | Casto v. Bay City Land Co., 102 Or. 5 | 83E+431 | A leading case on the other side of this question is Hershey v. Blanchard, 138 Ga. 479, 75 S. E. 589, 41 L. R. A. (N. S.) 1029, Ann. Cas. 1913D, 684, which holds that a payee, indorsing a guaranty on the back for the purpose of negotiating the same, becomes an indorser with enlarged liability. In Baldwin Fertilizer Co. v. Carmichael, 116 Ga. 762, 43, S. E. 1002, it is said that, where a payee writes on the back of a note a transfer of the same to a specified indorsee, coupled with his guaranty of payment, he is to be held as an indorser. It is stated in Tiedeman, 130 Iowa, 560, 107 N. W. 303, 19 L. R. A. (N. S.) 196, 130 Am. St. Rep. 331, that "The indorsement by the payee of a note, of his name under a guaranty of payment, combined with a waiver of demand, notice, and protest, constitutes a blank indorsement, so as to pass title to one who takes the paper in due course for value." | The fourth ground is: "That the matters alleged in the petition are insufficient to warrant relief by mandamus." We state some difficulties apparent in the petition which are sufficient to prevent the relief sought. Averments of crucial facts in a pleading should be clear, direct and unequivocal. North Station Wine Co. Inc. v. United Liquors, Ltd., 323 Mass. 48, 51, 80 N.E.2d 1. Lee v. Board of Assessors of Wilmington, 148 Mass. 144, 149, 201 N.E.2d 922. It is inferentially alleged that the planning board failed to take action. There is no statement in the petition, which the law refused to sign, that the approval resulting from such failure of the board had become final. This is required by G. L. c. 41, §81 U, as amended... See also the certificate in board of Selectmen of Pembroke v. R. & R. Realty Corp., 348 Mass. 120, 123, 202 N.E.2d 489. There is no allegation of the expiration of twenty days without notice of appeal to the Superior Court, which by §81V makes a condition precedent to the issue of a certificate by the clerk. There is no allegation of the date when the plan was submitted to the planning board. See G. L. c. 41, §81U, §81V. The petition merely alleges notice of the submission of the plan on August 8, 1956. | Does indorsing a guarantee on a note enlarge liability? | 009980.docx | USALEXUE 00156563 - USALEXUE 00156584 | Condensed, SA, 041 | | 0 | 1 | | 1 | 1 |
| 17718 | Walter Realty Corp. v. Town Clerk of Bellingham, 350 Mass. 669 | 362+17 | Averments of crucial facts in a pleading should be clear, direct and unequivocal. | | Should averments of crucial facts in a pleading be clear, direct and unequivocal? | 023817.docx | USALEXUE 00158370 - USALEXUE 00158371 | Condensed, SA | 0.94 | | 0 | 1 | 1 | 1 |
| 17719 | Div. of Ins. ex rel. State v. A & A Midwest Rebuilders, 183 Ill.App. 34721 | 30+75(6) | While that is true, we do not believe that the distinction between a dismissal with prejudice and a dismissal without prejudice is relevant here. See Marozas v. Brodfsky, 280 Ill.App.3d 701, 706, 666 N.E.2d 746, 750 (1996) ("the that as it may, once the suit was dismissed, with or without prejudice, the trial court lost jurisdiction to alter its judgment after 30 days elapsed following its entry without any subsequent action by the parties"). An order of dismissal may be final even though it is not with prejudice. Bosteder v. City of Chicago, 234 Ill.App.3d 975, 983, 130 Ill.Dec. 574, 574 N.E.2d 689 (1991) ("Where a dismissal is based upon a determination that the complaint is not sufficient to state a cause of action, the order is final and appealable only in instances. Thus, an order of dismissal for failure to state a cause of action which is not followed by a request to amend is a final, appealable order and does not require a specific declaration by the plaintiff that he wishes to stand on the | Can an order of dismissal may be final even though is it not with prejudice? | Pretrial Procedure - Memo II 1067 - C - VP_67892.docx | ROSS-00329043 I ROSS-00329049 | Condensed, SA | 0.33 | | 0 | 0 | 1 | 1 |
| 17720 | Sherwin/Am. Exp. v. First Western Cas. & Tr. Co., 579 | 829+59 | Under Kansas law a suretybond is treated as a contract for insurance, and bonds subject to same rules of construction that apply to insurance contracts. | Under Kansas law, surety bond is treated as contract for insurance, and bonds subject to same rules of construction that apply to insurance contracts. Stenberg v. National Security Co., 223 Kan. 135, 140, 573 P.2d 1003 (1977). The construction and effect of an insurance contract is a question of law for the Court's decision if the facts are uncontested, then the Court is to decide whether they fall within the policy. Farm Bureau Mut. Ins. Co. v. Horinek, 233 Kan. 175, 177, 660 P.2d 1374 (1983). Bell v. United States Fire Ins. Co., 238 Kan. 583, 586, 543 P.2d 861 (1976). "In construing an insurance policy, a Court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished." Farm Bureau, supra. | Are surety bonds considered a insurance policy? | 019572.docx | USALEXUE 00159569 - USALEXUE 00159570 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17721 | Draper v. Archdiocese of Hartford, 2009 WL 865740 | 92+1268(1) | In Hartley v. Alfarsus Magnus College, 93 F.Supp.2d 200 (Conn 2000), the district court considered the case at hand where a religious school brought religious studies at Alberus Magnus College, a Roman Catholic college. The court found that the plaintiff alleged an employment discrimination claim, did not reach extensively in the area of Roman Catholic doctrine or provide spiritual services or counseling. As such, the employment relationship between Hartwig and the College did not give rise to claims and defenses which were religious in nature. The court held that the Free Exercise Clause did not deprive the court of jurisdiction to decide the following claims; the claim for breach of contract, which alleged that the defendant breached its agreement to follow the university procedures when determining whether to reappoint the plaintiff Hartwig; the claim that another faculty member tortiously interfered with the plaintiff's business contract with the defendant; the claim that both defendants intentionally inflicted emotional distress on the plaintiff through their actions which concluded with his termination; The court reasoned that the resolution of those claims would not require an inquiry into competing interpretations of church law or practice. Rather, the central issue in this case was whether the plaintiff was discharged for the reason the college stated. His alleged misrepresentation of his priestly status. The court stated that existing federal decisions teach that the First Amendment protection is not a bar; and adjudication of such disputes when the religious affiliation of the institution or defendant in the suit is pervasive, but instead only decided if the employer has interfered with an employee's right to practice her or his religion or whether the plaintiff was discharged for the reason the college stated; rather than ministerial or pastoral." | The ministerial exception in the First Amendment did not bar the court from hearing his case. The former principal of a religious school brought suit against the school when she was terminated, allegedly, in retaliation for making an action she took. The school court found the claim of the religious dispute, because this was not precluded the court from adjudicating employment disputes between religious institutions and their ministerial employees. The court held it applied to partially preclude the court's ability to partially preclude employment disputes in this case did not intrude into purely religious matters or issues of church governance. U.S.C.A. Const. Amend. 1. | Does the Free Exercise Clause bar court adjudication of such disputes where the religious affiliation of the institution or business is not pervasive or the duties of the aggrieved employees? | 017221.docx | LEGALEASE 00160964 - LEGALEASE 00160965 | Condensed, SA, Sub 0.68 | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 17722 | People v. Abrams v. Am. Motor Club, 133 A.D.2d 593 | 217+1001 | On this record it is clear, as the court of first instance found, that the prepaid collision service contract sold by American Motor Club is an insurance service contract as defined in Insurance Law * 1101(a)(1). The Club, in the event of bodily damage or mechanical or electrical damage caused by collision, fire, theft, vandalism, hail, flood, malicious mischief or vandalism, was obligated to repair the damaged car or reimburse the consumer for the loss, regardless of cost. The consumer is obligated to pay only the annual agreement fee (the premium) plus a service charge (the deductible) for the repair. Both amounts are set at the time of application and remain the same regardless of cost. The reimbursement. The "benefit of pecuniary value" need not be money; it includes any goods or service with monetary value (See, Ollendorff Watch Co., v. Pink, 279 N.Y. 32, 17 N.E.2d 35(9)) That the Club purchased to cover policy of reinsurance does not alter the fact that the contract is one of insurance (Id. at 117, 174 N.E.2d) Nor is there any support for the Club's claim of estoppel since the other plan to which comparison is made differs materially and legally. Thus, on the basis of its finding, the court appropriately determined the defendants had engaged and permitted amendment of the petition to join Mos, who was intimately involved in the Club's operations, as a party respondent. The inherent injustice of such operation against New personality, however, violated proper amendment of the petition to join Mos personally, however, violated proper statutory procedures (see, CPLR 3212 [a] [b]) and the ordered that all of the money sanctions were being sought against him personally nor afforded the opportunity to contest the injustice of relief sought and permitted participation in the proceeding had been limited to defending the Club's position. Ad we remit the remaining portions of the matter to which the agreements were not insurance contracts. Thus, the provisions of the | Prepaid collision service contract was an "insurance contract" as defined by the insurance Law when contract obligated seller to repair damaged car or reimburse customer for loss regardless of cost and customer was obligated to pay only annual agreement fee plus a service charge for repair, both set at time of application and neither bearing any relationship to the cost of repair or reimbursement, and fact that seller purchased its own policy of reinsurance did not alter the fact that the contract was one of insurance. McKinney's Insurance Law § 1101(a)(1). | Are prepaid collision service contracts insurance contracts? | D7953.docx | LEGALEASE 00161557 - LEGALEASE 00161558 | Condensed, SA, Sub 0.72 | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 17723 | Grubbs v. Teals, 265 Ala. 257 | 200+12 | We have gone that the establishment of a toll-road by the prescription is to the public an exception to provision. (40 C.J.S. Roads § 2, p. 343.) Roads, highways, and bridges of a County, are property of the State and not the County. Robbins v. Limestone County, 114 So. 485, 134, 158, 160, 161 A. 257. In Thomas Co. v. Edge, 198 So. 22 (425), The Alabama legislature has invested with the power and authority of the County over the roads within the County, and as such it is property of the state. | Establishment of a roadway by prescription goes to the public an exception to the rule; roads and bridges of a county are property of state and not used. | Does the fair remain with the power when the public acquires an easement in the highway? | 018009.docx | LEGALEASE 00161637 - LEGALEASE 00161638 | Condensed, SA 0.3 | 0.3 | 0 | 1 | 0 | 1 | 1 |
| 17724 | Lower Nueces River Water 647.7 Supply Dist. v. Live Oak Tex., 312 S.W.2d 696 | 320+5 | Roads and bridges of the State, although constructed by county, are property of the State and not the county. It has been established by the County over the roads within the County, and such and authority of the County over the roads within the County, and as such and authority. | Roads and bridges of the State, although constructed by county, are property of the State and county. | Are roads and bridges of the State constructed by a County the property of the State? | 018885.docx | LEGALEASE 00161817 - LEGALEASE 00161818 | Condensed, SA 0.77 | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 17725 | Appeal of Nova Pub. Co., 12 Kan. App. 2d 328 | 371+2015 | The entire matter of taxation is legislative and does not exist apart from statute. The legislature is empowered to provide the means and agencies for carrying out its responsibilities in matters of taxation. Melbourne 285 Kan. 270, 271, 134 P.2d 1 (1920). Where a statute is clear and unambiguous, the court must give effect to the legislative intent therein expressed and refrain from speculation and construction of what the law should or should not be. Capital Electric Line Builders, Inc. v. Lennen, 232 Kan. 379, 383 657 P.2d 814 (1983). Randall v. Seemann, 228 Kan. 395, 391, 615 P.2d 1376 (1980). | Entire matter of taxation is legislative and does not exist apart from statute; legislature is empowered to provide means and agencies for carrying out its responsibilities in matter of taxation. | Does the entire matter of taxation exist apart from statute? | Taxation - Memo 1330-C - NIT_48124.docx | ROSS-000312367-ROSS-000312368 | Condensed, SA 0.68 | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 17726 | Prioria v. Betts, 319 F. Supp. 662 | 21+5 | In Texas, as a general rule, affidavits which are notarized by the counsel offering them is admissible. Manley v. State, 28 Tex.Cr.R. 520, 1815 W. 269, 290 (1916). The Court of Criminal Appeals, however, on petition for rehearing rejected the holding. Because the error because juror Gay corroborated the facts in his affidavit and therefore rebutted Prioria's claim. In this affidavits which are notarized by counsel offering them to motive to rebut the claims by Prioria that would counsel for reasons favorable to the defense, Prioria v. State, supra, 395 S.W.2d at 659 640. | Are affidavits which are notarized by the counsel void? | Affidavits - Memo 44 - 18184LGEaUSibrid2RV_00000070 4LRFnS64.docx | ROSS-000000189-ROSS-000000199 | Condensed, SA 0.82 | 0.82 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17727 | Dakota Provisions v. Hillshire Brands Co., 226 F. Supp. 3d 945 | 308+2 | "Agency is a creature of state law and, in South Dakota, is governed by both statutory and common law." Babinski Props. v. Union Ins. Co., 833 F.Supp.2d 1145, 1150 (D.S.D. 2011). South Dakota defines an agency relationship as "the representation of one called the principal by another called the agent in dealing with third persons." SDCL " 59"1"1. "An agency relationship is either actual or ostensible." Kasselder v. Kapperman, 316 N.W.2d 628, 630 (S.D.1982). The party claiming that an agency relationship exists has the burden to prove the existence of the relationship. Id. To determine whether an agency relationship exists, the court examines "the relations of the parties as they exist under their agreement or acts." | Agency is a creature of state law and, in South Dakota, is governed by both statutory and common law. | Is an agency a creature of state law? | Principal and Agent - Memo 406 - RK_63960.docx | ROSS-003280102-ROSS-003280103 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 17728 | Metmor Fin. v. Landoll Corp., 976 S.W.2d 454 | 366+1 | The doctrine of equitable subrogation involves "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Kansas City Downtown Minority Dev. Corp. v. Corrigan Assoc. Ltd. Partnership, 868 S.W.2d 210, 223 (Mo.App.1994)(quoting State Sav. Trust Co. v. Spencer, 201 S.W. 967, 969 (Mo.App.1918)). Originally a common law doctrine, subrogation has as its aim the advancement of justice and prevention of injustice. Id.; Frago v. Sage, 737 S.W.2d 482, 483 (Mo.App.1987). "Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it." Id. Although available, subrogation is a fairly drastic remedy and is usually allowed only in extreme cases "bordering on if not reaching the level of fraud." Landmark Bank v. Ciaravino, 752 S.W.2d 923, 928 (Mo.App.1988). See also Anison v. Rice, 282 S.W.2d 497 (Mo.1955) (granting equitable subrogation where lender advanced money to pay off first deed of trust under threat of foreclosure at request of one joint owner where payment by lender benefitted equally the other joint owner); Bunn v. Lindsay, 95 Mo. 250, 7 S.W. 473 (1888) (refusing to allow equitable subrogation where lender provided money necessary to pay off first deed of trust and was unaware of intervening judgment lien of record and where judgment was recorded in public records and debtor failed to search public records because "a court of equity cannot relieve him by interfering with the legal rights of others who are without fault"); State Sav. Trust Co., 201 S.W. at 967 (determining equitable subrogation was appropriate where borrower obtained money from lender through the use of forged instrument and where superior liens were no worse off than they were before subsequent lender advanced his money to retire senior lien); Baker v. Farmers' Bank of Conway, 220 Mo.App. 85, 279 S.W. 428 (1926) | Subrogation compels ultimate payment of debt by one who, in justice, equity and good conscience, should pay it. | What does equitable subrogation compel? | Subrogation - Memo 237 - VG C.docx | ROSS-003283464-ROSS-003283465 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 17729 | In re Houston, 409 B.R. 799 | 366+1 | EMC seeks to be subrogated to the Home Source mortgage. Under South Carolina law, subrogation arises by statute, by contract, or in equity. See Kuznik v. Bees Ferry Associates, 342 S.C. 579, 538 S.E.2d 15, 30 (S.C.App.2000). "Subrogation may be broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right." Id. Equitable subrogation is of an implied nature and arises under the common law. This is in contrast to the statutory subrogation found in " 509 of the Bankruptcy Code. | Under South Carolina law, subrogation arises by statute, by contract, or in equity. | "Does subrogation arise by statute, by contract, or in equity?" | Subrogation - Memo 129 - VP C.docx | ROSS-003283871-ROSS-003283872 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 17730 | Schmidt v. Cal-Dive International, 240 F.Supp.3d 532 | 237+6(1) | Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. Sassone v. Elder, 626 So.2d 345, 350 (La. 1993). To maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Kennedy v. Sheriff of E. Baton Rouge, 935 So.2d 669, 674 (La. 2006); Henry v. Lake Charles American Press, L.L.C., 566 F.3d 164, 181 (5th Cir. 2009). If any of the elements of the tort is lacking, the cause of action fails. Costello, 864 So.2d at 139. "The fault requirement is generally referred to in the jurisprudence as malice, actual or implied." Kennedy at 674. By definition, a statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. In Louisiana, defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory per se. When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed. When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury.Kennedy at 674"75 (internal citations omitted). | In Louisiana, defamatory words are divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. | What are the two categories of defamatory words? | Libel and Slander - Memo 179 - RK.docx | ROSS-003284206-ROSS-003284207 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17731 | Bancoult v. United States, 1986 F.3d 295 | 221+179 | Although the term "inviolable" is not defined in the Vienna Convention, we have described it as "a technical category of term." 767 Third Ave. Assocs. v. Permanent Mission of Zaire, 988 F.2d 295, 298 (2d Cir. 1993) (discussing inviolability of mission premises under Article 22 of the Vienna Convention). The text of Article 29 makes plain that a person entitled to diplomatic immunity may not be arrested or detained. The scope of inviolability, however, extends further: Article 29 also protects against "attack[s]" on the "person, freedom or dignity" of the diplomatic envoy. Vienna Convention, supra, 23 U.S.T. 3227, art. 29. For example, courts have held the "inviolability" principle precludes service of process on a diplomat as a part of a foreign government, see Hellenic Lines, Ltd. v. Moore, 120 U.S. App. D.C. 345, 345 F.2d 978, 979-81 (D.C. Cir. 1965), and, as applied to missions, prevents a landlord from seeking to evict a diplomatic mission from its premises for non-payment of rent, see 767 Third Ave. Assocs., 988 F.2d at 302. | Vienna Convention's protection of diplomats' "inviolability" of the person precludes service of process on persons entitled to diplomatic immunity, even where such persons are served on behalf of non-immune, private entity. | Does inviolability preclude service of process on a diplomat? | Ambassadors and Consuls - Memo 8 - MS.docx | ROSS-003184587-ROSS-003184588 | Condensed, SA, Sub | 0.78 | 0 | | | 1 | 1 |
| 17732 | Kaufman v. Comm'n for Lawyers' Discipline, 197 S.W.3d 867 | 46H+1156 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary rulings that the court may be asked to make. upon. See Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963). Fair Worth Indep. Sch. Dist. v. Goodwin, 977 S.W.2d 609, 613 (Tex. App.—Fort Worth 1998, no pet.). The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first seeking leave of court. Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Enrico Fermi v. State, 273 S.W.2d at 757. The granting of the motion in limine at trial ruling on admissibility. See Weidner, 14 S.W.3d at 363. As a general matter, an order granting a motion in limine is a preliminary ruling only and normally preserves nothing for appellate review. Hartford, 369 S.W.2d at 335 ("A motion in limine does not preserve error."); Catalyst Tractor Co. v. Bryant, 674 S.W.2d at 782, 791 (Tex. App.—Corpus Christi 1984, no writ) ("A trial court's actions in granting or denying a motion in limine preserves nothing for appellate review."). A party must obtain a ruling on the actual substantive issue in order for error to be preserved. See Acord v. Gen. Motors Corp., 669 S.W.2d 111, 116 (Tex. 1984); Hartford, 369 S.W.2d at 335. Thus, to complain on appeal that the trial court erroneously excluded evidence, Kaufman must have offered the evidence during trial and obtained an adverse ruling from the trial court. Bishop v. Villanueva, 273 S.W.3d 490, 501 (Tex.App.—Houston [1st Dist.] 2000, no pet.). | Attorney did not proffer during trial evidence of his substantive defenses, which were excluded by motion in limine, or obtain an adverse ruling from the trial court, and thus preserved nothing for review in connection with the exclusion of that evidence at trial which resulted in attorney's disbarment. Rules App. Proc., Rule 33.1(a)(1)(A). | Is the granting of a motion in limine a final ruling on the evidence or does it preserve anything for review? | Pretrial Procedure - Memo 4102 - C - TI.docx | ROSS-003185204-ROSS-003185205 | Condensed, SA, Sub | 0.81 | 0 | | | 1 | 1 |
| 17733 | Montgomery v. Compass Airlines, 98 F. Supp. 3d 1012 | 231H+1349(14) | The Eighth Circuit recently concluded that FMLA claims, specifically, may be subject to a clear and unmistakable agreement to arbitrate. Thompson v. Air Transp. Int'l Ltd. Liab. Co., 664 F.3d 723, 726 (8th Cir. 2011). In Thompson, the Eighth Circuit held that "[s]ince FMLA-related civil rights claims, like the plaintiff's rights at issue in FMLA claims, can be brought under either a statutory provision or a collective bargaining provision, they too are arbitrable." Id. at 727 (citation omitted). The court found that such a waiver is permissible because it falls within the realm of concessions for which unions may bargain with employers, and, therefore, "[a] waiver of a judicial forum is not a waiver of claims instead a waiver of "only the right to seek relief from a court in the first instance." Id. (quoting 14 Penn Plaza, 556 U.S. at 265766, 129 S.Ct. 1456). As long as the plaintiff does not suffer a "complete loss of any means to vindicate his or her statutory rights under FMLA, employing the agreement to arbitrate such rights should be enforceable. Id. at 730 (quoting 14 Penn Plaza, 556 U.S. at 265-66, 129 S.Ct. 1456). | Provision of collective bargaining agreement (CBA), requiring the system board to hear and decide disputes of time and, providing that its decisions were final and binding on the parties, required airline employee to submit FMLA claim against airline employer to arbitration; CBA provision was clear and unmistakable waiver of judicial forum for FMLA claims, as the CBA covered matters statutorily similar to the FMLA, where employer promised to comply with the FMLA, and CBA provision made arbitration of any claims arising under the terms of the CBA mandatory. Family and Medical Leave Act of 1993, § 1 et seq., 29 U.S.C.A. § 2601 et seq. | Can employment-related civil rights claims be subject to mandatory arbitration provisions? | Alternative Dispute Resolution - Memo 407 - RK.docx | ROSS-003186087-ROSS-003186088 | Condensed, SA, Sub | 0.37 | 0 | | | 1 | 1 |
| 17734 | Benjamin v. Jacobson, 172 F.3d 144 | 92+2395 | The proposition that a court has the authority to alter the prospective effect of an injunction in light of changes in the law or the circumstances is, of course, well established. See, e.g., System Federation, 364 U.S. at 647-48, 81 S.Ct. 368, United States v. Swift & Co., 286 U.S. 106, 113-15, 52 S.Ct. 460, 76 L.Ed. 999 (1932) ("Swift"); Chrysler Corp. v. United States, 316 U.S. 556, 562 S.Ct. 1146, 86 L.Ed. 1668 (1942); Wheeling Bridge II, 59 U.S. (18 How.) at 461-62. It derives from the power to modify of course under the fact that an injunction often requires continuing supervision by the issuing court and always is the source of a continuing power to require"). System Federation, 364 U.S. at 63, 81 S.Ct. 368. Western Union Telegraph Co. v. International Brotherhood of Team-sters, 133 F.2d 955, 957 (7th Cir.1943) ("though a decree may be final as it relates to an appeal ... yet, when the proceeding are of a continuing nature, it is not final ... and the injunction will be vacated ... where the law has been changed"). | In requiring termination of consent decrees that are not supportable by requisite findings, Prison Litigation Reform Act (PLRA) termination provision does not violate constitutional separation of powers principle by requiring courts to reopen final judgments, since PLRA's termination provision does not require termination of any relief other than prospective relief, which courts would have inherent authority to modify or terminate forward-looking injunctive relief in light of changes in law or circumstances, and statutory definition of prospective relief expressly includes compensatory monetary damages. 18 U.S.C.A. § 3626(b)(2). | Do court of depart have the power to modify an injunction in anticipation to changed condition, though it was entered by consent? | Action - Memo 8 169 - C - SS.docx | ROSS-003186486-ROSS-003186487 | Condensed, SA, Sub | 0.68 | 0 | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 17735 | Gleason v. City of Seattle, 150 Wash. 2d 540 | 371+2001 | Generally speaking, taxes are imposed to raise money for the public treasury. | Because something investigates is a government function of the city, we must next determine if Ordinance 119747 imposes a tax or a fee to pay for those costs. Determining what is a tax or a fee is often quite difficult. Dean v. Lehman, 143 Wash.2d 12, 26, 18 P.3d 523 (2001) ("It is difficult, however, to pigeonhole these charges."). Generally speaking, taxes are imposed to raise money for the public treasury. Id. at 25, 18 P.3d 523 (citing Wash.Const. art. VII, § 1); State v. Case, 39 Wash. 177, 182, 81 P. 554 (1905). A local government does not have the power to impose taxes without statutory or constitutional authority. Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995). | Is tax a charge imposed to raise money for the public treasury? | Taxation - Memo # 35 - C - C.docx | ROSS-003288749-ROSS-003288872 | Condensed, SA | 0.89 | 0 | | 1 | 1 | 1 |
| 17736 | Hill City Tel. Co. v. Taylor, 136 Ark 108 | 307A+501 | Right to a voluntary nonsuit rests solely with plaintiff's. Rules Civ.Proc. Rule 41(a). | Rule 41(b), however, does not apply to the facts of this case for two reasons. First, plaintiffs distinct entries in minutes to vacate Respondent's order. Second, the relevant pleadings, which include plaintiff's motion for voluntary dismissal as to Joe Embry Jr. and Respondent's order granting such motion, clearly demonstrate that the action was voluntarily and not dismissed. Moreover, under ARCP Rule 41(a), the right to a voluntary nonsuit rests solely with plaintiff's. See Martin v. Routon, 358 Ark. 468, 87 S.W.2d 842 (1934). Respondent was thus limited to the relief requested by plaintiffs, who clearly and unequivocally asked Respondent to dismiss only Joe Embry Jr.'s claim. Simms v. Liberty Bank, must not be construed with plaintiff's January 19, 1996 motion. Accordingly, we hold that Respondent correctly dismissed plaintiff's motion, as it was not entitled to a ministerial duty, and that Respondent has jurisdiction to hear this matter. Because mandamus is available relief. Young, 351 Ark. 525, 964 S.W.2d 784. The writ for prohibition is denied. | Does the right to a voluntary nonsuit rest solely with plaintiffs? | Pretrial Procedure - Memo # 1132 - C - TJ.docx | ROSS-003288389-ROSS-003288890 | Condensed, SA, Sub 0.92 | 0.92 | | | 1 | | |
| 17737 | In re Brooks, 143 N.C. App. 601 | 307A+552 | If, during the course of litigation, an action becomes moot, it should usually be dismissed. | Mootness arises when the relief sought has been granted or the original controversy between the parties is no longer at issue. Simeon v. Hardin, 339 N.C. 358, 370, 451 S.E.2d 858 (1994). It is axiomatic that if, during the course of litigation, an action becomes moot, it should usually be dismissed. In re Peoples, 296 N.C. 109, 148, 250 S.E.2d 890, 912 (1978). However, our appellate courts recognize at least four exceptions to the general rule that moot cases should be dismissed. Thomas v. N.C. Dept. of Human Resources, 124 N.C.App. 698, 700-701, 478 S.E.2d 816, 817 (1996), aff'd per curiam, 346 N.C. 268, 485 S.E.2d 295 (1997); see e.g., Boney Publishers Inc. v. Burlington City Council, 151 N.C.App. 51, 517 S.E.2d 641, 401 (1999) (stating that court must review moot case where defendant voluntarily ceases challenged act). N.C. State Bar v. Randolph, 325 N.C. 699, 701, 386 S.E.2d 185, 1861 (1989) (per curiam) (concerning the public duty exception); Crumpler v. Thornburg, 92 N.C.App. 719, 723, 375 S.E.2d 708, 711 (1989) (discussing "capable of repetition, yet evading review" exception); In re Hatley, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977) (recognizing exception where there exists a "collateral legal consequence of an adverse nature"); Steventz, 339 N.C. at 371, 451 S.E.2d 858 (noting appeal was reviewable where the claims of unnamed class members were not mooted by the termination of the class representative's claim). | Should an action be dismissed if during the course of litigation it becomes moot? | Pretrial Procedure - Memo # 7334 - C - VA.docx | ROSS-003289547-ROSS-003289548 | Condensed, SA 0.94 | 0.94 | 0 | 1 | | | |
| 17738 | Capitol Hill State Bank v. Rawlins Nat Bank of Rawlins, 24 Wyo. 423 | 38B+4501 | In an action by the endorsee and holder of an unpaid certificate of deposit issued by the defendant bank, execution of the instrument being admitted by the answer, but its indorsement by the payee not being proved, the offer of the certificate in evidence did not include the indorsement which was not essentially a part of the certificate, and in the absence of proof of the indorsement was insufficient to charge the fact of indorsement or to entitle the instrument to be admitted in evidence. | The witness thereupon described it, as above shown, by stating that it was a certificate of deposit for $500, Rawlins National Bank to Western States Fire Insurance Company, with notation of protest, and presentment attached. Without any further description of it, "Plaintiff's Exhibit 3" was offered in evidence. The notice of protest having been referred to as part of the exhibit, and objection was imposed to it at a time as part of the exhibit, and objection was imposed to it at a time as part of the exhibit, and indorsement ought to have been mentioned as part of such exhibit in identifying it or in the offer, and no part thereof having been made of the indorsement, though denominated by the plaintiff, and the offer did not rightfully assume, and we think it must be understood that he did, that the offer did not include the indorsement. The indorsement is not so essentially a part of the certificate that it would necessarily be included in an offer of the certificate in evidence, where proof of the indorsement is required. Witt v. Campbell Lakin Sugar Co., 42 Or. 144, 134 Pac. 316; Johnson v. English, 55 Neb. 510, 74 N. W. 47; Levy v. Cunningham, 56 Neb. 348, 76 N. W. 882; Cornelius v. Kern, 50 Neb. 1, 79 N. W. 1087; Struck v. Harrington, Fed. Cas. No. 13,544a; Wallace v. Reed, 70 Ind. 2814 Case 2; Comstock v. Kerwin, 57 Neb. 1. | Is it mandatory to include indorsement in an offer of the certificate of evidence? | Bills and Notes - Memo 1007 - KK, G287.docx | ROSS-003296521-ROSS-003296522 | Condensed, SA, Sub 0.64 | 0.64 | | | 1 | 1 | |
| 17739 | Roberts v. Cent. Refrigerated Serv., 277 F.Supp. 3d 1256 | 36D+18.15 | Federal Arbitration Act (FAA) did not preempt Utah Arbitration Act, for purpose of determining whether to compel arbitration in trucking company's action against carrier, alleging violations of the Fair Labor Standards Act (FLSA), pursuant to arbitration agreement in service contract; driver and carrier chose to abide by Utah's arbitration law, purpose of FAA was to place arbitration agreements on same footing as other contracts, and FAA contained express preemptive provision. 9 U.S.C.A. § 1 et seq.; Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.; West's U.C.A. § 78B-11-107(1)(1). | The parties are free to negotiate the terms of arbitration and the purpose of agreement herein states that the parties will apply Utah law dispute that arises or is related to Mr. Roberts' employment with Central Mr. Roberts' employment with Central Mr. Roberts agreed to the application of the very laws that the parties contracted to govern their agreement to which it relates as a result of the application of FAA was to place arbitration agreements on same footing as other contracts, and FAA contained express preemptive provision. 9 U.S.C.A. § 1; Fair Labor occupy the entire field of arbitration." Id. at 477, 109 S.Ct. 1248. | Does the Federal Arbitration Act contain an express pre-emptive provision? | Alternative Dispute Resolution - Memo 335 - C92279250 - IW.docx | ROSS-003297499-ROSS-003297500 | Condensed, SA, Sub 0.05 | 0.05 | | | 1 | | 1 |

3125

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17740 | The Care Grp. Heart Hosp. v. Sawyer, 80 N.E.3d 190 | 307A+14.1 | "Because of the fact-sensitive nature of discovery issues, a trial court's ruling is given a strong presumption of correctness." Id. (quoting Smith v. Smith, 854 N.E.2d 1, 4 (Ind. Ct. App. 2006)). This presumption extends as well to the trial court's determinations with respect to violations of discovery orders and attendant sanctions, which should not be overturned "[a]bsent clear error and resulting prejudice." Id. (quoting Smith, 854 N.E.2d at 4 (citing, inter alia, Vernon, 712 N.E.2d at 982)); see also Wright v. Miller, 989 N.E.2d 324, 330 (Ind. 2013) ("We presume that the trial court will "act in accord with what is fair and equitable in each case," and thus we will only reverse "if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." " (quoting McCullough, 605 N.E.2d at 180)). We are, as ever, mindful that "[t]he purpose of the discovery rules is to allow for minimal trial court involvement and to promote liberal discovery." Whitaker v. Becker, 960 N.E.2d 111, 115 (Ind. 2012). When we review for an abuse of discretion, we do not reweigh the evidence. Brightpoint, Inc. v. Pedersen, 930 N.E.2d 34, 38 (Ind. Ct. App. 2010), trans. denied. | Purpose of the discovery rules is to allow for minimal trial court involvement and to promote liberal discovery. | What is the purpose of discovery rules? | Pretrial Procedure - Memo 3 - JS.docx | ROSS-003298338-ROSS-003298339 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 17741 | Rayonier v. Polson, 400 F.2d 909 | 411+1 | However, a cotenant's right of enjoyment of the common property extends only to the products of its proper use and not to a taking of the land itself. See Shepard v. Pettit, 30 Minn. 119, 14 N.W. 511 (1883); Nevels v. Kentucky Lumber Co., 108 Ky. 550, 56 S.W. 969 (1900); Freeman, Cotenancy & Partition " 299 (2d ed. 1886). "In Washington, standing timber owned by the owner of the real property upon which it is growing has always been regarded as real property." R. Johnson, Washington Timber Deeds and Contracts, 32 Wash.L.Rev. 30 (1957). Engleson v. Port Crescent Shingle Co., 74 Wash. 424, 133 P. 1030 (1913); France v. Deep River Logging Co.,79 Wash. 336, 140 P. 361 (1914). Courts generally hold that a cotenant has no right to remove substantial amounts of timber from land having a value primarily for its timber and that to do so constitutes waste for which he is liable. E.g., Provident Life & Trust Co. v. Wood, 96 W.Va. 516, 123 S.E. 276, 41 A.L.R. 570 (1924); Nevels v. Kentucky Lumber Co., 108 Ky. 550, 56 S.W. 969 (1900); Graybiel v. Burke, 124 Cal.App.2d 255, 268 P.2d 551 (3d Dist. 1954). See generally 2 H. Tiffany, Real Property " 651 (3d ed. B. Jones 1939); Annot. 2 A.L.R. 993 (1919); Annot., 41 A.L.R. 582 (1926). | Under Washington law, standing timber owned by owner of real property on which it is growing is regarded as real property. | Is standing timber real property? | Woods and Forests - Memo 1 - RK.docx | ROSS-003298721-ROSS-003298722 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17742 | State v. McDowell, 246 Neb. 692 | 67+9(1) | Climbing or jumping a fence does not constitute breaking under the definition of the burglary statute, and we therefore reverse McDowell's conviction for burglary. The remaining conviction is not addressed. | Climbing or jumping fence does not constitute "breaking" within definition of burglary statute. Neb.Rev.St. S 28-507. | Does climbing or jumping over a fence constitute breaking? | Burglary - Memo 301 - RK_62303.docx | ROSS-003298767-ROSS-003298768 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 17743 | Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064 | 25T+112 | Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them. See Stolt"Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). In this case, an arbitrator found that the parties' contract provided for class arbitration. The question presented is whether in doing so he "exceeded [his] powers" under " 10(a) (4) of the Federal Arbitration Act (FAA or Act), 9 U.S.C. " 1 et seq. We conclude that the arbitrator's decision survives the limited judicial review " 10(a)(4) allows. | Class arbitration is matter of consent: arbitrator may employ class procedures only if parties have authorized them. | Is class arbitration a matter of consent? | Alternative Dispute Resolution - Memo 78 - AKA.docx | ROSS-003308936-ROSS-003308938 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 17744 | Georgia Cas. & Sur. Co. v. Woodcraft by MacDonald, 315 Ga. App. 331 | 366+1 | "The right of subrogation can arise from either equity, contract, which is referred to as "conventional subrogation," or statute." "Traditionally, a subrogee "stands in the shoes' of the insured and can pursue any cause of action assigned to it." "In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." "It is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." And under OCGA " 13"8"2(a), "A contract which is against the policy of the law cannot be enforced." | The right of subrogation can arise from either equity, contract, which is referred to as "conventional subrogation," or statute. | Can the right of subrogation arise from contract? | Subrogation - Memo 204 - RM C.docx | ROSS-003309373-ROSS-003309374 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 17745 | People v. Steiniger, 142 A.D.3d 1320 | 352H+190 | Defendant failed to preserve for our review his challenge to the legal sufficiency of the evidence with respect to the sexual gratification element of sexual abuse inasmuch as he failed to renew his motion for a trial order of dismissal after presenting evidence (see People v. Hines, 97 N.Y.2d 56, 61, 736 N.Y.S.2d 643, 762 N.E.2d 329, rearg. denied 97 N.Y.2d 678, 738 N.Y.S.2d 292, 764 N.E.2d 396). In any event, defendant's challenge lacks merit because "the element of sexual gratification may be inferred from the sexual nature of defendant's actions" (People v. Schroo, 87 A.D.3d 1287, 1289, 930 N.Y.S.2d 158, lv. denied 19 N.Y.3d 977, 950 N.Y.S.2d 360, 973 N.E.2d 770; see People v. Chrisley, 126 A.D.3d 1495, 1496, 8 N.Y.S.3d 511, lv. denied 26 N.Y.3d 1007, 20 N.Y.S.3d 548, 42 N.E.3d 218). Furthermore, viewing the evidence in light of the elements of the crimes in this nonjury trial (see People v. Danielson, 9 N.Y.3d 342, 349, 849 N.Y.S.2d 480, 880 N.E.2d 1), we conclude that the verdict is not against the weight of the evidence (see generally People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672). | Sexual gratification, as element of first-degree sexual assault of a minor, may be inferred from the sexual nature of defendant's actions. McKinney's Penal Law S 130.65(3). | Can sexual gratification be inferred from the defendants action? | Sex Offence - Memo 108 - RK_57665.docx | ROSS-003310409-ROSS-003310411 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 17746 | Absher v. AutoZone, 164 Cal. App. 4th 332 | 172H+1692 | In their original form, subdivisions (a)(1) and (a)(2) only prohibited merchants from requiring credit-card customers to provide personal identification information as a condition to accepting payment by credit card... | Statute prohibiting a business from requiring personal identification information as a part of any credit card transaction does not apply to return in exchange for a reversal of the original credit card purchase transaction. West's Ann.Cal.Civ.Code § 1747.08(a). | May merchants require or request the taking or recording of personal identification information from the cardholder for a credit card transaction? | Consumer Credit Memo 8 - R4.docx | ROSS-003113124-ROSS-003113125 | Condensed, SA, Sub 0.83 | | 0 | 1 | | 1 | |
| 17747 | Johnson Lumber & Supply Co. v. Martin, 113 So. 2d 117 | 83I+412 | It is the general rule that courts will not inquire into the adequacy of the consideration in this type transaction between competent parties. | Generally, courts will not inquire into the adequacy of consideration in transaction between competent parties for discount of note. | Can court inquire into adequacy of consideration, regarding bills and notes? | Bills and Notes - Memo 674-PR_57906.docx | ROSS-003311723 | Condensed, SA, Sub 0.26 | | 0 | 1 | | 1 | |
| 17748 | Abbas v. Foreign Policy Grp, 975 F. Supp. 1d 1 | 237+6(1) | Opatowski v. Warts, 88 A.3d 63, 76 (D.C.2013) (internal quotation marks omitted). Faulty and defamatory meaning "are distinct elements of defamation and are considered separately." "Carpenter v. King, 792 F.Supp.2d 29, 34 (D.C.2011)... | Falsity and defamatory meaning are distinct elements of defamation and are considered separately under District of Columbia law. | Are falsity and defamatory meaning considered separately from each other? | Libel and Slander - Memo 23 - R4.docx | ROSS-003312293-ROSS-003312294 | SA, Sub | 0.64 | 0 | 0 | 1 | | |
| 17749 | Robinson v. Quicken Loans 309+19 Inc., 988 F. Supp. 2d 615. | 309+19 | "An agent ... is a representative of its principal in business or [in] contractual relations with third persons ..." Harper v. Jackson Hewitt, Inc., 227 W.Va. 142, 153, 706 S.E.2d 63 (2010) (internal quotation marks omitted)... | The burden of proving an agency relationship under West Virginia law rests upon him who alleges the existence of the agency; however, once a prima facie showing of the agency relationship is made, once a principal denying agency must show that the principal neither controlled, nor had the right to control, the alleged agent's work. | When does the burden of proving agency rest upon? | Principal and Agent Memo #80-RK_62693.docx | ROSS-003113046 | Condensed, SA, Sub 0.74 | | 0 | 1 | | 1 | |
| 17750 | Dryvitin Gray v. Zwicke, 17 N.Y.S.2d 974 | 83I+481 | The defendant's attorney moved to dismiss at the end of plaintiff's case charging (a) that the note was only taken as collateral by the plaintiff; (b) that the plaintiff did not acquire good title to the note because an endorsement was missing; (c) that no consideration was paid for it by the plaintiff. Generally speaking the existence of consideration, as between the original parties, does not affect the validity of the assignment as against the endorser. Hope v. Russo-Asiatic Bank, 200 App.Div. 460, 193 N.Y.S. 290.5 5 Cmp[unclear: 6d8]. | Generally involves influencing the assignment of a note, or the consideration, do not affect validity of assignment as against debtor. | Does the motive influencing an assignment affect the validity of the assignment? | Bills and Notes - Memo 1433 - RK_63512.docx | ROSS-003323069 | Condensed, SA, Sub 0.75 | | 0 | 1 | | 1 | |
| 17751 | Town of Paoli Bird v. Knuth, 190 Wis. 495 | 260+66 | It is well settled law that the fee to the highway remains in the abutting owners, and that they may make such a reasonable use of it as will not interfere in any way with the public's right to the highway. The evidence in this case clearly shows that the acts of the defendant did not in any wise interfere with the rights of the public, and that the highway has been obstructed in no wise... The judgment of the county court was clearly right. | Abutting owners may make such reasonable use of fee to highway as does not interfere with public right. | Who owns the fee to a highway? | Highways - Memo 437 - RK_66338.docx | ROSS-003313569-ROSS-003313581 | Condensed, SA, Sub 0.83 | | 0 | 1 | | 1 | |

3127

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17752 | Gray v. Scottsdale Plaza Resort, 823 F. Supp. 2d 931 | 1708+3053 | Section 2 of the FAA declares that state law, whether of legislative or judicial origin, may be applied "[i]f that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (emphasis in original). "A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." Id. While generally applicable defenses to contract, such as fraud, duress, or unconscionability invalidate arbitration agreements, the FAA preempts state law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. AT & T Mobility LLC v. Concepcion, ––– U.S. ––––, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011) (The main "[s]aving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses.'") (quoting Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). Because of the liberal Arizona and federal policies favoring arbitration, "we doubt[s] concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mosaic's Cove Mem. Hosp., 460 U.S. at 24‑25, 103 S.Ct. 927. | Generally, district courts apply state contract law in determining the enforceability of an arbitration agreement that falls within the ambit of the Federal Arbitration Act (FAA). 9 U.S.C.A. § 2. | Does the Federal Arbitration Act (FAA) preempt state law defenses that apply only to arbitration? | Alternative Dispute Resolution - Memo 216 - RR.docx | ROSS-003194239-ROSS-003194239 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | 1 |
| 17753 | Dickerson v. Baker, 714 N.E.2d 735 | 366+1 | Equitable subrogation is applicable where a "party not acting as a mere volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable." Loring v. Palmborn, Svc., Inc. (1985) Ind., 479 N.E.2d 531, 536 (citing National Mut. Ins. Co. v. Maryland Cas. Co. (1963), 136 Ind.App. 35, 41, 187 N.E.2d 575, 578, trans. denied.). At first blush, if equity permits, the party who has paid the creditor, or subrogee, becomes entitled to the legal rights and security originally held by the creditor. "Subrogation depends upon the equities and attending facts and circumstances of each case." Indy Title Ins. Co. v. Graham (1991) Ind.App., 576 N.E.2d 153, 1318, trans. denied. It is "a highly favored doctrine, which is to be given a liberal application." See Paul H. Co. v. ... 2d Subrogation." 71(1974) (citation omitted). However, while ordinary negligence will not bar the application of subrogation, "[t]he remedy will not be allowed where the party is guilty of culpable negligence." Tice, supra at 1338. Thus, a party who pays the debt of another may be subrogated in place of the other if he was not acting (1) as a mere volunteer and (2) with "culpable negligence". | Equitable subrogation is a highly favored doctrine, which is to be given a liberal application. | Is subrogation a highly favored doctrine that demands liberal application? | Subrogation - Memo 256 - VFC.docx | ROSS-003197470-ROSS-003197471 | Condensed, SA | 0.92 | | 1 | 1 | 1 | |
| 17754 | Gregoire v. Enterprise Marine Services, ERT, Supp. 3d 749 | 1642 | At first blush, the subjoinder of the saving to suitors clause read in conjunction with the grant of exclusive original admiralty jurisdiction might appear contradictory. However, the Supreme Court has reconciled the concomitant grant of exclusive federal jurisdiction with the saving to suitors clause's preservation of common law remedies in personam jurisdiction. The Court determined that "[a]dmiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings in rem, that is where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien." The rationale for such exclusivity was that "an in rem action was not a common law remedy, but instead a proceeding under civil law," which the state courts were not "competent to give" under the saving clause. "But the jurisdictional act does leave state courts 'competent' to adjudicate maritime causes of action in personam." In personam, "that is, where the defendant is a person, not a ship or some other instrument of navigation." Thus, historically a suitor could elect to proceed in federal court against a defendant through an in rem proceeding, or when he proceed in personam via a civil action under the saving to suitors clause in a state court or on the common law side of the federal district court. | Is a federal courts admiralty jurisdiction exclusive to those "saving to suitors" clause in federal maritime cases of action begun and carried on in proceedings in rem? | 04060.docx | LEGALEASE-00077235-LEGALEASE-00077237 | Condensed, SA, Sub | 0.55 | | 1 | 1 | 1 | 1 |
| 17755 | AT&T Commc'ns of the Sw. v. Sw. Bell Tel. Co., 86 F. Supp. 3d 932 | 17+47(0)2 | SWBT finally argues that the PSC's procedures during the arbitrations violated several state statutes and regulations. Because the PSC's arbitration was a sui generis proceeding, no state procedure of law was controlling. See US West Communications, Inc. v. Minnesota Pub. Utils. Comm'n, 55 Supp. 2d 968, 986 (Wd III Minn. 1998) (reaching this conclusion under Minnesota law). Congress required final disputes under the Telecommunications Act to be resolved by arbitration. The plain meaning of this term would indicate that Congress did not intend for commission to use traditional state law methods of submitting or adjudicating cases. | State commission's arbitration of interconnection agreement between local exchange carrier (LEC) and competitor, pursuant to Telecommunications Act, was sui generis proceeding, and therefore no state procedural law was controlling. Telecommunications Act of 1996, 47 U.S.C.A. § 252. | Is arbitration a sui generis proceeding? | Alternative Dispute Resolution - Memo 3 - VR.docx | LEGALEASE-00000097-LEGALEASE-00000099 | Condensed, SA, Sub | 0.56 | | 1 | 1 | 1 | 1 |
| 17756 | First Bank & Tr. v. Novak, 324 Ga. App. 542 | 38+58 | A restriction against assignment is a restraint on alienation, and as such it is strictly construed against the party seeking the restraint. Hulsher, 139 Kan. 238, 243, 428 P.2d (789) (1867). The contract before us does not provide for forfeiture upon assignment of the contract, only upon default. Here the assignment in Article II thereof we further refer to [the] Uniform Commercial Code as a possible basis for rejecting the nonassignability clause in the contract; Article III is not applicable to the facts of this case. See Clark, The Law of Secured Transactions Under the Uniform Commercial Code § 18.02(a) n. 135 (1980). | Restriction against assignment is restraint on alienation, and as such it is strictly construed against party seeking restraint. | Are restrictions on assignments strictly construed? | 000090.docx | LEGALEASE-00115503-LEGALEASE-00115504 | Condensed, SA | 0.79 | | 0 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17157 | ScА.Insns. v. Transportation Ins. Co., 439 Mass. 528 | 217v1000 | Basic purpose of insurance is to protect against fortuitous events and not against known certainties; parties wager against occurrence or nonoccurrence of specified event, and carrier insures against risk, not certainty. | Known loss. The defendant's policies become effective on January 1, 1980. By its very nature, insurance is based on contingent risks which may or may not occur. Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill.2d 90, 180 Ill. Dec. 691, 607 N.E.2d 1204 (1992). Stated differently, the basic purpose of insurance is to protect against fortuitous events and not against known certainties. The loss is wager against the occurrence or nonoccurrence of a specified event; the carrier insures against a risk, not a certainty. Bartholomew v. Appalachian Ins. Co., 655 F.2d 27, 29 (1st Cir.1981). It follows then this general principle that an insured cannot insure against the consequences of an event which has already begun. Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56 (3d Cir.1982). Once the risk is eliminated, the contract for insurance no longer exists. Bartholomew v. Appalachian Ins. Co., supra. Courts have found that the insurable risk is eliminated in the instance where an insured knows, when it purchases a policy, that there is a substantial probability that it will suffer or has already suffered a loss. At that point, the risk ceases to be contingent and becomes a probable or known loss. When the insured has evidence of a probable loss where it purchases the policy, the loss is uninsurable under that policy. See Outboard Marine Corp. v. Liberty Mut. Ins. Co., supra. This rule has been recognized in Massachusetts and by leading authorities on the law of insurance. See Bartholomew v. American Employers Ins. Co., 30 Mass.App.Ct. 272, 276, 567 N.E.2d 1298 (1991), Couch, Insurance 3d §§ 1.27-1.30. Most notably, the United States District Court ruled that the insurer, which provided liability coverage effective July 2, 1980, was not liable for costs stemming from a landfill which had been in operation since 1957. | Does insurance provide protection against known certainties? | 00183.docx | LEGALEASE 00155579 - LEGALEASE 00155581 | Condensed, SA, Sub 0.93 | 0.93 | 0 | | 1 | |
| 17158 | Arrow Master v. Unique Forming Ltd., 12 F.3d 709 | 277v1 | Under Illinois law, purpose of notice provision is to ensure that party is informed and message was delivered. | The purpose of a notice provision is to ensure that the party is informed and the message was delivered. Lehr, 5 Fed.Prac. 8.06 (Forms, note No. 813), Ltd. [9]. And N.E.2d at 192; see also Brennan, 145 Ill.App.3d at 502 N.E.2d at 1144 (stating that a failure to deliver notice is not a material breach). The district court concluded that the suppliers were notified of the sale of the business "to the defendants [as] firms" by means of a form letter to those companies, which allegedly had been sent to the suppliers so as to suffice the notice requirement to have addressed the matter in a more straightforward fashion; we believe that, on the contract of this litigation, the failure of the district court to resolve this issue a material question of fact, and the court's conclusion that the non-delegation was mere technical than substantial. That conclusion was fairly supported by the record. | What is the purpose of the notice provision to ensure the law? | 00276.docx | LEGALEASE 00155570 - LEGALEASE 00155571 | Condensed, SA, Sub 0.87 | 0.87 | | | 1 | |
| 17159 | DeCespedes v. Prudential Mut. Cas. Co. of Chicago, Ill., 193 So.2d 224 | 38v11 | An assignment generally refers to or connotes a voluntary act of transferring an interest. | Under the doctrine of subrogation, the insurer is substituted, by operation of law, to the rights of the insured. At common law, action was brought in the name of the insured. It is not available to a volunteer; only to one under a duty to pay. Furthermore, the right to subrogation is no greater than the amount paid by the insurer, and the surety after the insured is thereby indemnified. The insurer is assigned the right, i.e. refers to or connotes a voluntary act of transferring an interest. Assignments under certain circumstances are to be discouraged, in that they may result in a multiplicity of litigation, which may be detrimental to volunteer and stimulate litigation. | Will an assignment which is the transfer of an interest be voluntary in nature? | Assignments - Memo 7 - MS.docx | LEGALEASE 00000467 - LEGALEASE 00000468 | Condensed, SA | 0.87 | 0 | | 1 | |
| 17160 | In re Marriage of Estates, 24 Cal.3d 76 | 253v408 | Husband and wife assume mutual obligation of support upon marriage, and this obligation is not conditioned on ability to support or income but, in fact, upon exhaustion of community property or income. | The legal incidents of marriage, however, provide an additional basis for the quasimarital estate marriage [Doc Civ Code. s 5100.] This obligation is not conditioned on the existence of community property or income. In fact, upon exhaustion of the community property or income, a spouse must utilize his or her separate property to provide for the support of the other. [Civ Code, s 5125.] Quasimarital support may be secured by... Marvin v. Marvin, see supra, 18 Cal.3d 776, 794, 53 Cal.Rptr. 868, 415 P.2d 776, no statutory right | Will the courts consider the spouses duty of support as mutual? | Marriage and Cohabitation - Memo 2 - RM.docx | LEGALEASE 00000399 - LEGALEASE 00000600 | Condensed, SA | 0.43 | 0 | | 1 | |
| 17161 | Dawkins v. Fields, 345 S.C. 20 (=385.111) 23 | 228v385.111 | For summary judgment purposes, a verified pleading is equivalent to an affidavit, provided it meets requirements as to its form, Rules Civ. Proc. Rule 56(e). | For summary judgment purposes, a verified pleading is equivalent to an affidavit, provided it meets requirements as to its form. Rules Civ. Proc. Rule 56(e). Likewise, numerous state courts have held that a verified complaint is the equivalent of an affidavit for summary judgment purposes. Moreover, our review of South Carolina cases leads us to believe that such a result is consistent with South Carolina law. Accordingly, we hold that for summary judgment purposes, a verified pleading is equivalent to an affidavit, provided it meets the requirements of Rule 56(e). | Can a verified complaint be treated as an affidavit? | 00376.docx | LEGALEASE 00115833 - LEGALEASE 00115834 | Condensed, SA, Sub 0.75 | 0.75 | | 0 | 1 | |

3129

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,073 |
| 17762 | State v. Dunbar, 361 S.C. 240 | 371+3 | A sworn oral statement may be sufficient to satisfy the "oath or affirmation" requirement of Fourth and false statements clauses. See State v. McKnight, 291 S.C. 110, 113, 352 S.E.2d 471, 472 (1987) (noting that a "sworn oral statement may be sufficient to satisfy the requirement for oath or affirmation"); see also U.S. v. Clyburn, 806 F.Supp. 1247, 1249-50 (D.S.C.1991), aff'd by 24 F.3d 613 (4th Cir.1994) (noting that it is constitutionally permissible for a magistrate to consider unrecorded sworn oral testimony in determining whether probable cause exists to issue a search warrant). An affidavit, which would satisfy the strictest requirements for a finding of probable cause found in our state statutes, also satisfies the constitutional requirements that probable cause be supported by an "oath or affirmation." See McKnight, 291 S.C. at 113, 352 S.E.2d at 472 ("An affidavit is a voluntary ex parte statement reduced to writing and sworn to or affirmed before some person legally authorized to administer an oath or affirmation. ... It differs from an oath in that an affidavit consists of statements of fact which is sworn to as the truth, while an oath is a pledge...."); State v. White, 275 S.C. 500, 502, 272 S.E.2d 300, 301 (1980) (finding that a sworn warrant based upon affidavit or affirmation does not offend the Constitution); State v. York, 250 S.C. 30, 34-37, 156 S.E.2d 326, 328 (1967) (noting that an affidavit complies with the requirement of the oath or affirmation for the issuance of a warrant upon probable cause supported by oath or affirmation). Generally, affidavits must be based on the affiant's personal knowledge of the facts alleged in the petition. The affidavit must in some way show that the affiant is personally familiar with the facts so that he could personally testify as a witness. | An affidavit differs from an oath in that the "oath or affirmation" consists of statements of fact which is sworn to as the truth, while an "oath" is a pledge. | Is there any difference between an affidavit and oath? | 0734.docx | LEGALEASE 00377597; LEGALEASE 00377598 | Condensed, SA | 0.92 | 0 | | 0 | 1 | |
| 17763 | United States v. Turner, 281.36 981 | 181+10 | This argument lacks merit. We fail to accept Turner's claim that he did not "alter" money orders by inserting values on the money orders. Fraudulents filling out blank money orders can be considered "altering" money orders. Cf. United States v. Hom, 720 F.2d 421, 425 (10th Cir.) (upholding defendant's conviction for altering a money order under § 500 when he stole money orders and inserted values using a stolen imprinting machine and finding that they were not "valid, mailable, cash," 40 U.S. 1345, 1345 (S. 3521, 82 L.Ed.d 831 (1984)). United States v. Kearns, 61,2 12,3,750 (833, 837 (n. 1979) (holding that defendant could have "altered" a money order from its blank form and still be convicted for receiving or possessing a blank money order form). United States v. Pomponio, 296 F.3d 5,22, 123 (2d Cir.1961) (per curiam) (upholding defendant's conviction on claim of variance when indictment charged him with falsely altering money orders by placing fictitious names in the orders when it was found he had counterfeited required signatures on money orders). | Fraudulently filling out blank money orders was "altering," as needed to support federal conviction for altering money orders. 18 U.S.C.A. § 500. | Can Fraudulently filling out blank money orders be considered as altering the order? | 00824.docx | LEGALEASE 00151799; LEGALEASE 00151800 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | |
| 17764 | Zinnen v. Louis Meyers & Son, 183 Misc. 144 | 307B+61 | I do not share this view. An affidavit and a deposition are not one and the same. An affidavit is a written statement under oath. An affidavit is an ex parte statement, made without notice, and with no opportunity for cross examination, whereas a deposition is testimony given under oath, pursuant to notice, upon oral or written interrogatories, and with opportunity for cross examination. While, generally, a deposition may be used in the place of an affidavit, the converse of the proposition does not follow in the absence of some statute so providing. Besides, I think the section used the term "affidavit" as it is understood ordinarily, in legal terminology and not as a generic term. | A "deposition" is testimony given under oath, pursuant to notice, upon oral or written interrogatories, and with opportunity for cross-examination. | Can an affidavit be subjected to cross examination? | 00388.docx | LEGALEASE 00155516; LEGALEASE 00155917 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 17765 | Grieve v. Mullaly, 211 Cal. 77 | 38+4 | The result reached by the trial court is undoubtedly correct. The writing of August 21st in no way bound Grieve, and, being unsupported by consideration, it was purely voluntary and unenforceable. It amounted to an offer to Grieve to enter into the two contracts any time before September 15, 1928. Its existence at that offer may be revoked at any time before acceptance, and this rule applies in cases where the offer states, as it does here, that it shall remain open for a designated period. Civ. Code, § 1586. 6 Cal. Jur. 51.° 12,9. It is equally elementary that an offer to contract is not assignable, it being purely personal to the offeree. In this case the offer was made to Grieve. The evidence does not disclose any acceptance by him. Adams attempted to accept the offer, not as the agent or assignee of Grieve, but in his own right. This is fatal, showing by the fact that Adams tendered to the Mullalys a lease for their signatures, naming Adams, as lessee. This was not an acceptance of the offer made to Grieve. The evidence is likewise clear that, at the time Adams made his purported acceptance, defendants, in the person of Grieve, clearly withdrew the offer that they had made to Grieve. This, as we have seen, defendants had a legal right to do. | An offer to contract is purely personal to offeree, and not assignable? | 00387.docx | LEGALEASE 00131898; LEGALEASE 00131899 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Text + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17766 | Goodman, Boyce & Sherwood Co. v. Pence, 21 Neb. 459 | 257v202 | It appears from the pleadings and evidence that Berry did not acquire a mechanic's lien upon the premises described in the petition, but that an attempt was made by the plaintiff to perfect such lien. The question, therefore, presented, is, does the assignment of the debt carry with it the lien, or vest in the assignee the right, by complying with the statute, to a lien? The record performance of labor, or furnishing material, is such, is not sufficient to entitle a party to a mechanic's lien. His right to the same depends upon compliance with the statute. Until he has so complied, he has no lien which he can assign. When, however, a party assigns the right to the assignee, with the account, to another. In other words, a mere incident to such an indebtedness, and is not assignable, although the lien, when acquired, passes with the assignment of the debt. In Iowa, where, by statute, "mechanic's liens are assignable, and shall follow the assignment of the debt," Skiffan's Code, 4 C (23) it was held that the mere right which follows the performance of labor, and which, for its existence, depends upon the filing of a lien, is not assignable. Brewer v. Smith, 7 N. W. Rep. 401. The court says the language of the statutes is assignable. The mechanic's lien, and yet is not assignable. See Merchant v. Ottumwa Water-power Co., 6 N. W. Rep. 709 | A mere inchoate right to a mechanic's lien is not assignable. Such lien passes with an assignment of the debt only where it has been perfected under the statute. | Is mechanics lien assignable? | Assignment v. Money 25 AMs.docx | ROSS-003185377-ROSS-003185380 | Condensed, SA, Sub 0.92 | | 939 | 1 | | 1 | 1 |
| 17767 | FICT, Ltd. v. City of Frisco, 493 S.W.3d 238 | 348v42 | Property rights are created and defined by state law. See Stratton v. Austin Utility, 625 S.W.3d 299, 302 (Tex. App.—Austin 1999) (applying § 5 of Regents of State Univ. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972)). Generally, a property owner has no vested right to use his property in a certain way without restriction. See Sullivan v. City of Grapevine, No. 02-10-00227-CV, 2014 WL 2566024, at *4 (Tex.App.—Fort Worth Jan. 5, 2013) (op. on reh'g). Compare Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 938 (Tex. 1998). Fireworks, Inc. v. Comal Cty., No. 03-06-00618-CV, 2010 WL 1253901, at *8 (Tex.App.—Austin Mar. 31, 2010, no pet.) (mem. op.); Hallco v. State, 285 S.W.3d 920 (Tex. 2009); Bd. of Adjustment of City of San Antonio v. Wende, 92 S.W.3d 424, 430 (Tex.2002). In general, a vested property right "has some definitive, actual interest, unconnected to mere expectancy." In reference to the vested property right, see also Tex. Assn. of Bus. v. City of Austin, 363 S.W.3d 1, 17 | Generally, a property owner has no vested right, as required to support an inverse condemnation claim, to use its property in a certain way without restriction. Tex. Const. art. 1, § 17. | Which law creates and defines property rights? | 0X066.docx | USGAEASE-00156376-USGAEASE-00156377 | Condensed, SA, Sub 0.77 | | 0 | 1 | | 1 | 1 |
| 17768 | Montgomery v. Samory, 99 U.S. 482 | 315v12 | Costs in civil suits are made up of charges that the trier is a real estate is governed by the law of the place where it is situated; the universal rule being that the title to such property can only be acquired, passed, or lost according to the law where the place it is situated. Clark and J.C., and Wharton, Cnstl. Laws, sect 273. | Title to real estate is governed by the laws of the place where it is situated. | Which law governs the title to real estate? | Property - Money 5 AMs.docx | ROSS-00328484-ROSS-00328484 | Condensed, SA | 0.76 | | 1 | 0 | 1 | |
| 17769 | Bus. Loan Ctr. v. Marshall, 331 F. Supp. 2d 601 | 315v12 | No doubt, the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid. On the other hand, if the legislature intended that the statute should not be applied in taking place within the state, the statute should not be given a wider range of application. Restatement of Conflict of Laws (2d) § 6. Courts and, everywhere argue that the title to real estate is governed by the law of the place where it is situated. Montgomery v. Samory, 99 U.S. 482, 483, 25 L.Ed. 374 (1878); The federal courts have long recognized and given effect to these matters in substantive rule of state property law. See Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979). And Burr, Mi-Comstock (1878), 4 Am. Rep. 161, 163-165, reh'g denied; Nat. Bank v. Com. Mfg. Life Ins. Co., 1878 WL 18084, 13 U.S Appeal; CUO, 24 J.L (x). 1 P Fixtures, and the New Jersey courts as well. First Bank & Trust Co. v. MacGorio, 22 N.J. 539, 544, 126 A.2d 666 (1956) ("[I]t is a fundamental principle of the conflict of laws that legal consequences attaching to a right of redemption and the method of foreclosure are governed by the law of the situs (site )."). Here, the method of foreclosure is governed by the law of the situs where the property and is situated. Therefore, would not apply New Jersey law to the foreclosure proceeding of a Georgia property. | Title to real estate is governed by law of place where it is situated | Which law governs the title to real estate? | 0X066.docx | USGAEASE-00156395-USGAEASE-00156397 | Condensed, SA | 0.96 | | 1 | 1 | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17770 | Exxon Corp. v. Central Gulf Lines, 500 U.S. 603 | 16+13 | Subsequently, Exxon commenced this litigation in federal district court against Central and the vessel in personam and against the vessel in rem, claiming to have a maritime lien on the Hooper under the Federal Maritime Lien Act, 46 U.S.C. 971 (1982 ed.). The District Court held that "[a] prerequisite to the existence of a maritime lien based on a breach of contract is that the subject matter of the contract must fall within the admiralty jurisdiction." 707 F.Supp. 155, 158 (SDNY 1989). Relying on the Second Circuit's decision in Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp., 739 F.2d 798 (1984), cert. denied, 470 U.S. 1031, 105 S.Ct. 1405, 84 L.Ed.2d 791 (1985), the District Court concluded that it did not have admiralty jurisdiction over the claim. See 707 F.Supp. at 159-161. In Peralta, the Second Circuit held that it was constrained by this Court's decision in Minturn v. Maynard, supra, and by those Second Circuit cases faithfully adhering to Minturn, to follow a per se rule excluding agency contracts from admiralty jurisdiction. See Peralta, supra, at 803-804. The District Court also rejected the argument that Exxon should be excepted from the Minturn rule because it had provided credit necessary for the Hooper to purchase the fuel and the fuel was more than a mere agent. To create such an exception, the District Court reasoned, "'"would blur, if not obliterate, a rather clear admiralty distinction."'" 707 F.Supp. at 161, quoting Peralta, supra, at 804, n.6, quoting 1 S. Friedell, Benedict on Admiralty, ch. 811, pt. 1115, Ch. 1071, 2077-78, 1 34 L.Ed.2d (1991) | In determining whether admiralty jurisdiction exists over agency contracts, lower court should look to subject matter of agency contract and determine whether services performed under contract are maritime in nature. 28 U.S.C.A. § 1333(1). | "Can a contract, that falls outside the admiralty jurisdiction of the United States, give rise to a maritime lien?" | 00043.docx | LEGALEASE 00116267-LEGALEASE 00116289 | Condensed, SA, Sub 0.85 | | 0 | 1 | 1 | 1 | 1 |
| 17771 | In re Antill Pipeline Construction Company, 866 F. Supp. 2d 543 | 16+1.20(6) | Prior to the Supreme Court's decision in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), no federal maritime cause of action was recognized for the wrongful death of a non-seaman who was killed in state territorial waters, less than three nautical miles from shore, and whose circumstances were not covered by his state's wrongful death statute. At the time, representatives of a person killed at sea could bring suit under (1) the Death on the High Seas Act ("DOHSA"), 46 U.S.C. **52003-30305 for the death of any person killed more than three nautical miles from shore, (2) the Jones Act, 46 U.S.C. 30104, for the death of a seaman killed in any waters whose death was caused by the negligence of the seaman's employer, or (3) a state wrongful death statute, for the death of a non-seaman killed in that state's territorial waters in circumstances covered by the statute. The Supreme Court in Moragne held that the first two that federal maritime cause of action may be available under the general maritime law for death caused by violation of maritime duties. "Id. at 1777. Later, the Court in Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 1213-14, 121 S.Ct. 1927, 150 L.Ed.2d 34, 2001 AMC 1817 (2001) held that the general maritime wrongful death action also was recognized for deaths caused by Norfolk. See Garris, 121 S.Ct. at 1930-34 (1994) ("Arbitration... is a private system of justice offering the benefits of party control, negligent breach of a maritime duty of care. Id. at 820-30. In effect, the newly created Moragne action substituted state wrongful death statutes, plus a new rule within the area of admiralty jurisdiction. The Moragne cause of action is principally utilized today as a remedy for representatives of passengers and other non-seamen who are killed in non-DOHSA admiralty jurisdiction, such as the Claimants in the case at bar. | Louisiana statute prohibiting oil recovery to operator of watercraft found to have been under influence of alcohol at time of accident and that fault impermissibly interfered with maritime law's conformity in its settled comparative fault allocation scheme in wrongful death cases, and thus did not apply to bar estate and heirs of driver of recreational fishing vessel who died in collision with barge and tug units in Louisiana territorial waters from recovering against barge owner under general maritime law. LSA-R.S. 9:2798.4. | Is an action for wrongful death available under the general maritime law? | 00409A.docx | LEGALEASE 00116171-LEGALEASE 00116173 | Condensed, SA, Sub 0.78 | | 0 | 1 | 1 | 1 | 1 |
| 17772 | Greenwood v. CompuCredit Corp., 615 F.3d 1204 | 25?+111 | Thus, the plain language of the CROA provides consumers with the "right to sue," 15 U.S.C. § 1679c. The "right to sue" means what it says. The statute does not provide a right to "pursue some form of dispute resolution." Had Congress intended the "right to sue" to include the right to arbitration, it would have said so. Because the right to "arbitrate" under 15 U.S.C. §§ 1 673, 1 679 (1994) ("Arbitration... is a private system of justice offering the benefits of party control, § 2, 15 U.S.C. §§ 1 ("Arbitration... is a private system of justice offering the benefits of party control, 14-7.34 1203, 1204 (7th Cir. 1994) ("Arbitration... is a private system of justice" distinct from those afforded by a court, and not media an opportunity to submit a dispute to arbitration. | The act of suing in a court of law is distinctly different from arbitration. | Is the act of suing in a court of law the same as arbitration? | 00418?.docx | LEGALEASE 00116264-LEGALEASE 00116265 | Condensed, SA, 0.88 | | 0 | 0 | 1 | 1 | 1 |
| 17773 | Kalum v. Skitt Offshore, 504 F.3d 511 | 348+38 | Subsections (a) and (f) of 46 U.S.C. * 10313 set out a seaman's entitlement to "one-half of the balance of wages earned and unpaid at each port at which the vessel loads or delivers cargo during the voyage" and to the balance of wages due at the end of a voyage. Subsection (a) indicates that the "balance of wages" applies both to wages due on voyages and loads to penalty wages. "When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed." 46 U.S.C. * 10313(g). | Requirement that, in order for seamen on American vessels to recover penalty wages based on master's failure to make wage payments as required in the Seamen's Wage Act, voyage must extend to a foreign intercoastal voyage, or on voyage between port in one state in the United States and port in another, non-adjoining state, was also applicable to seamen on foreign vessels, following amendment of the Seamen's Wage Act, to make penalty wage provisions applicable to seamen on foreign vessels "when in a harbor of the United States"; amendments expanding scope of penalty provisions to make them applicable to seamen on foreign vessels could not be read in isolation from wage requirements, so as to accord seamen on foreign vessels better treatment than seamen on American vessels, contrary to Congressional intent in enacting amendments to equalize rights of foreign and United States seamen. 46 U.S.C.A. §§ 10301(a), 10313(a, f), 10504(a), e5 | What is the penalty for withholding a seaman's wages without sufficient cause? | 00412.docx | LEGALEASE 00116335-LEGALEASE 00116336 | Condensed, SA, Sub 0.34 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17774 | Browning-Ferris v. Dep't of Envt'l Res., 34 F.3d ...; Crawlth. 241 | 1,491+17 | In the contrary, here, in the context of intervention, the phrase "any interested party" actually means any party or entity interested, i.e., concerned, in the proceedings before the Board. The interest required, of course, must be more than a general interest in the proceedings. It must be such that the person or entity seeking intervention will either gain or lose by direct legal operation of the Board's ultimate determination. See Black's Law Dictionary 730 (5th ed. 1979); see also 2 Pa. C.S. §101 wherein a party is defined as "[a]ny person who appears in a proceeding before an agency who has a direct interest in the subject matter of such proceeding." To interpret this phrase any differently, under these circumstances would lead to an absurd and unreasonable result, and as render the Act's intervention provision ineffective; presumably, neither of which the legislature intended here. Section 1922(1), (2) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1922 (1), (2). | In the context of intervention before [environmental Hearing Board], the phrase "interested party" means any entity who will either gain or lose by direct operation of Board's ultimate determination. 35 P.S. § 7514(a). | "Legally, what does this phrase you interested party refer to?" | Environmental Law Memo #1 - AK4.doc | LEGALEASE 0000144 - LEGALEASE 0000145 | Condensed_SA_Sub 0.78 | | 839 | 1 | | 1 | |
| 17775 | Morris v. Marshall, 172 W. Va. 405. | 172H+216 | Other jurisdictions have addressed the issue. In Safabau Point II of Oregon & W. Trust Inv. Co. v. Rathburn, 187 Cas.7 84 (No. 10,555) (C.C.D.Or.1877), the court was faced with situation "that persons engaged in loaning its own money upon note and mortgage is not a banking corporation." The court explained "Neither does it affirmatively appear whose money is loans, but the reasonable inference is that it loans its own money, consisting of its capital stock contributed by its shareholders. Under this authorities, this is not a bank sufficient to constitute a bank or corporation engaged in banking... Now, if this constitutes it a banker, then every individual who loans his private funds in the manner is a banker also." Id. at 765. | Balment generally does not create formal, fiduciary relationship such as banker and bailor. | Can a corporation engaged in loaning its own money be deemed as engaged in the banking business? | 004008.docx | LEGALEASE 0016609 - LEGALEASE 0016611 | Condensed_SA_Sub 0.34 | | 0 | 1 | | 1 | |
| 17776 | Prime Prof. v. S.S.I. Plastics, 97 S.W.3d 631 | 50+1 | A bailment generally does not create a formal, fiduciary relationship between bailee and bailor. Bank One, Texas, N.A. v. Stewart, 967 S.W.2d 419, 442 (Tex.App.-Houston [14th Dist.] 1998, pet denied). The nature of the relationship between the parties is essential in determining whether an implied duty of good faith and fair dealing exists. Id. at 441. Two types of special relationships in contracts are recognized by Texas courts are (1) a fiduciary relationship arising from an element of trust necessary to accomplish the goals of the contract, and (2) a special relationship based on an extra-contractual duties arising from an imbalance of bargaining power. Id. Prime has not stated the relationship here is the former, a fiduciary relationship. | Balment generally does not create formal, fiduciary relationship between a bailor and a bailee a fiduciary relationship? | Bailment - Memo 12 - AN5.docx | ROS5-002435484 ROS5-002435469 | Condensed_SA_Sub 0.88 | | 0 | 1 | | 1 | |
| 17777 | McAdams v. McAdams, 267 So. 2d 908 | 253+756 | Defendant complains further of the refusal of the trial court to grant her an injunction to prohibit plaintiff from alienating the community property. Of course, the judgment of separation dissolves the community and vested each of the parties with an undivided one-half interest therein. Neither party can alienate the interest of the other, and there is no necessity for such injunction as prayed for. | Judgment of separation dissolves community and vests each of parties with an undivided one-half interest therein. | Does the community property dissolve after separation? | Marriage and Cohabitation - Memo 23 - AN.docx | LEGALEASE 0000370 LEGALEASE 0000371 | Condensed_SA_Sub 0.73 | | 0 | 1 | | 1 | |
| 17778 | Partington v. Houck, 840 F. Supp. 2d 236 | 25B4+1483 | In reviewing the Election, the D.C. Circuit held that "Congress' establishment, pursuant to Article I, Section 8 of the Constitution, of a separate judicial system for the courts martial review is... concerning evidence that Congress could not have intended Judge Advocate General review of courts martial to be within the review of agency decision." McKinney v. White, 291 F.3d 851, 855 (D.C. Cir. 2002). The D.C. Circuit did not frame its holding on the issue of whether or not the Judge Advocate General was an agency subject to APA (though our review of the record of the district court, instead finding the case non-reviewable based on this "committed to agency discretion" test). Although the instant case does not involve judicial review of a courts martial proceeding, the Court finds that it cannot grant the relief plaintiff seeks under the APA because the Navy JAG is not an agency. | Navy Judge Advocate General (JAG) was not an agency under the Administrative Procedure Act (APA) review. 5 U.S.C.A. § 701(b)(1). | Is Judge Advocate General (JAG) an agency under the Administrative Procedure Code? | 004095.docx | LEGALEASE 0016950 - LEGALEASE 0016951 | Condensed_SA_Sub 0.86 | | 0 | 1 | | 1 | |
| 17779 | McGinnis v. Alabama Dep't of Corr., 893 So. 2d 577 | 284+5.1 | When " 12-3-9 was enacted, the Alabama Rules of Criminal Procedure had not yet been adopted; they were adopted effective January 1, 1991. Therefore, the only avenue to review remedy available for a criminal defendant... was by filing a petition for a writ of error coram nobis. See, e.g., Meyivs v. State, 337 So.2d 100 (Ala.Crim.App.), cert. denied, 337 So.2d 107 (Ala.1976) (recognizing that a writ of error coram nobis was a means of postconviction review). Thus, our jurisdiction to review postconviction writs generally was recognized in Rule 32. Ala.R.Crim.P. petitions for postconviction relief, the successor to the petition for writ of error coram nobis. The one exception to this general rule that this Court's review of the actions of petitions seeking review the decision of the Alabama Board of Pardons and Paroles. However, as both this Court and the Court of Civil Appeals have recognized, the Board of Pardons and Paroles is a legislative agency, rather than an administrative agency. See Ex parte Alabama Bd. of Pardons & Paroles, 849 So.2d 255 (Ala.Crim.App.2002); Christian v. Board of Pardons & Paroles, 637 So.2d 945 (Ala.Civ.App.1993). | The Board of Pardons and Paroles is a legislative agency, rather than an administrative agency. | Is Board of Pardons and Paroles is a legislative agency, or an administrative agency? | 004096.docx | LEGALEASE 0017092 - LEGALEASE 0017103 | Condensed_SA 0.92 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17780 | Nixon v. Hsu, v. Hsihs(p), 155 S.W.3d 164 | 5042 | A bailment for mutual benefit exists whenever it appears that both of the parties to the contract receive a benefit from the transaction. Again, a bailment is one in which the parties contemplated some price or compensation in return for the benefits flowing from the fact of bailment; and it exists when one person gives to another the temporary use and possession of property, other than money, for compensation, and the latter agrees to return the property to the former at a future time... Where a bailment is a mere incident to the performance of service for which the bailee receives compensation or to the conduct of a business from which the bailee derives profit, ... it is a bailment for mutual benefit although the bailee receives no compensation for the bailment as such. R.C.S.2 d Bailments." 5d (1988)(emphasis added). By contrast, the other type of bailment which constitutes a "bain" is a bailment for the sole benefit of the bailee. Id. "18. It is a compensated bailment in which the bailee is the sole beneficiary. Id. A bailment "bailment without reward" is a bailment for the sole... | The type of bailment which constitutes a loan is a bailment for the sole benefit of the bailee. It is a compensated bailment in which the bailee is the sole beneficiary. | Is a loan a form of bailment? | 00450.docx | LEGAL EASE-00150933 LEGAL EASE-00150934 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | | 1 |
| 17781 | Sells v. State, 584 So. 2d 1050 | 1464-5 | We note at the outset that the Sellses are correct that embezzlement requires specific intent, even though the statute does not mention intent. See Sells v. State, 181 Miss. 1, 148, 49 So. 2015 U.S. 2d 721 (Cl. 242-96, Ld. 281 1953). On appeal, the statute requires that "fraudulently appropriating" is sufficient to denote intent. The Sellses contend that word "fraudulently appropriating" could be used to denote specific intent, it could not do so here because "fraudulently" was not defined for the jury. | Embezzlement requires specific intent, even though the statute does not mention intent. Miss's A & C, § 97-23-25. | Is it necessary that embezzlement require specific intent? | 00464.docx | LEGAL EASE-00150783 LEGAL EASE-00150784 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | | 1 |
| 17782 | Tex Broeck Dupont v. Brooks, 283 S.W.3d 705 | 17+616 | Moreover, an ordinary care instruction is based solely upon negligence and '[t]here is properly speaking, no such thing as negligent assault." City of Louisville v. Yeager, 489 S.W.2d 819 821 n.9 (1970) (citing Prosser, Handbook of the Law of Torts, at 41, 41 (4th ed. 1971)); see also State Farm Fire and Cas. Co. v. von Gal., 29 Neb. 351, 415 N.W.2d 544 545 (1990); Martin v. Feabum, 415 S.W.2d 937, 941 (Mo. App. 1967) ("[T]he tort directing to be assault the charge of negligence and premise would negative [sic] and directly assault the elements of the crime, on premises proof that the wrongdoing on the part of the defendant was deliberate would exclude the negligence."). "An assault and battery is not negligence. The former is intentional; the latter is unintentional." Yeager, 489 S.W.2d at 821. As noted, we mention the distinction between negligence is not only doctrinally unrivalled as a potential source of jury confusion. It also raises the risk that even where intentional tort is committed, the jury will conclude that some undefined negligence was present for which relief of some sort could be had. District of Columbia, Cone, 439 A.2d 961, 707, 708 D.C.2001). "(A) plaintiff cannot seek to recover by "dressing up the substance" of one claim, here assault, in the 'garments' of another, here negligence." Id. at 708. In fact, "it's well settled that negligence and assault and battery claims are mutually exclusive." Sabree v. United Broth. of Carpenters, 921 F.2d 396, 400 (N.D.N.Y.1997) (citing United Nat. Ins. Co. v. Tunnel. Inc., 988 F.2d 351, 353 (2d Cir.1993)). ... We also agree with the reasoning in Elliott v. Videan, 164 Ariz. 113, 791 P.2d 175 (Ariz. App. 1989) ... which directs that when a plaintiff's allegations are based on a series of acts, each of which could constitute a wrongful that the injured plaintiff and alleging negligence. In such cases, "[t]is acts well, including harm... will not justify or support jury submission of the case on a hypothesis that the injuries resulted from negligence." Id. In fact, "it's well settled that negligence and assault and battery claims are mutually... | Negligence and assault and battery claims are mutually exclusive. | Are negligence and assault and battery claims mutually exclusive? | Negligence - Memo 20-VP.docx | ROSS-003284968-ROSS-003284969 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | | 1 |
| 17783 | Rosku v. Tenet Healthsystem GB, 230 Ga. App. 477 | 307+2 | a) The Civil Practice Act encourages literality of pleading. Welch's Gut.Code Ann. § 9-11-1(a). | The Civil Practice Act encourages liberality of pleading. Welch's Gut.Code Ann. § 9-11-1(a). | Does the Civil Practice Act encourage liberality of pleading? | Pleading - Memo 21-VP.docx | ROSS-002380805? ROSS-002380809 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17784 | Deeney v. Klever, 282 Ga. 3b2-b2 161 | 302-2 | Civil Practice Act generally advances liberality of pleading. West's Ga. Code Ann. § 9-11-15. | Generally, the Civil Practice Act advances "liberality of pleading." Property v. Washington, 268 Ga. 649, 650 (1), 492 S.E.2d 661 (1997). OCGA § 9-11-15 is liberally construed in favor of allowing amendments. See Chekany v. Henderson, 241 Ga. 498 (1), 400 S.E.2d 695 (1991); [...] | Does the Civil Practice Act encourage liberality of pleading? | 000845.docx | USGA5X4E 00105966-USGA5X4E 00105988 | Condensed, SA, Sub 0.94 | 0 | | 1 | 1 | 1 |
| 17785 | Stack v. Bryan, 299 Ky. 132 3b2-2 | 3b2-2 | A "preliminary loan", or as called in our law a "deposition", occurs when [...] custody, as opposed to service, is chief purpose of law. | The plaintiff established what was anciently called a gratuitous loan, or, as called in the civil law, a deposition, when a certain party delivers his [...] property to another for a use for use, or commodatum, where a chattel is delivered to another for hire or reward and then specifically returned to the bailor. Story on Bailments, Secs. 6, 219; 6 Am Jur., [...] | What is a deposition? | 000843.docx | USGA5X4E 00106976-USGA5X4E 00106977 | Condensed, SA, Sub 0.92 | 0 | | 1 | 1 | 1 |
| 17786 | United States v. Cortes, 757 F.3d 850 | 16d7-4 | Congress intended the Hobbs Act to be broadly construed. 18 U.S.C.A. § 1951. | We reject Cortes's argument that Hobbs Act robbery or extortion is limited to the stealing of lawful property and excludes contraband such as 1951. illegal drugs. Nothing in 18 U.S.C. § 1951(a) or in the text of the statute, nor does anything in the definitions of "robbery," id. § 1951(b)(1), or "extortion," id. § 1951(b)(2). The Supreme Court has stated Congress intended the Hobbs Act to be broadly construed. [...] | Did Congress intend the Hobbs Act to be broadly construed? | Exertion - Memo.8_6.docx | ROSS 000389464-ROSS 000389468 | Condensed, SA, Sub 0.95 | 0 | | 1 | 1 | 1 |
| 17787 | First Am. Title Ins. Co. v. Broadstreet, 260 Ga. App. 705 | 403-t-1.5 | A court without venue lacks authority to issue an injunction. Miller v. Brooks, 160 Ga. 584, 586 S.E.2d 746 (1996); Logics Intercontinental Corp. Liberty Institution for Sav. supra. A judgment or order issued by a court without venue is void. | A court without venue lacks authority to issue an injunction. Miller v. Brooks, 160 Ga. 584, 586 S.E.2d 746 (1996); Logics Intercontinental Corp. Liberty Institution for Sav., supra. A judgment or order issued by a court without venue is void. See Darby v. Thorpe, 269 Ga. 724, 726, 452 S.E.2d 687 (1997). Accordingly, the superior court's grant of an interlocutory injunction to Ms. Roudebush without the venue was void as being a matter of property law void under OCGA § 17-9-1(d). | Is a judgment or order issued by a court without venue void? | 001173.docx | USGA5X4E 00117260-USGA5X4E 00117261 | Condensed, SA | 0.89 | | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17788 | In re Team Rocket, 256 S.W.3d 257 | 401+45 | The plaintiff gets the first choice of venue by filing suit. In re Masonite Corp., 997 S.W.2d 194, 197 (Tex.1999). The defendant, however, may challenge that venue selection, and a court must "transfer an action to another county of proper venue if... the county in which the action is pending is not a proper county." Tex. Civ. Prac. & Rem.Code * 15.063(1); see Tex.R. Civ. P. 87 (procedures for filing motions to transfer venue). In this case, the Cendreanos initially filed suit in Harris County, their county of residence. Team Rocket challenged venue, asserting that the defendant did not reside there and that a substantial portion of the events giving rise to the caused of action did not occur there. See Tex. Civ. Prac. & Rem.Code * 15.002(a)(1)(2). The trial court determined that Harris County was not a proper venue, but that venue was proper in Williamson County. | The plaintiff gets the first choice of venue by filing suit, but the defendant may challenge that venue selection, and a court must transfer an action to another county of proper venue if the county in which the action is pending is not a proper county. V.T.C.A., Civil Practice & Remedies Code § 15.063(1). | Is the plaintiff or the defendant given the first choice of venue? | Venue - Memo 33 - RK.docx | ROSS-003123469-ROSS-003112851 | Condensed_SA | 0.66 | 0 | 1 | 1 | 1 | |
| 17789 | United States v. Anderson, 989 F.2d 310 | 350H+1285 | Fortunately, we have one other avenue open to us. Congress has already defined "restitution" in another federal criminal statute. The Hobbs Act, 18 U.S.C. * 1951, which punishes extortion (and attempted extortion) that obstructs commerce, defines extortion as "the obtaining of property... by wrongful use of actual or threatened force, violence, or fear, or under color of official right." We realize the Hobbs Act is not in pari materia with the Armed Career Criminal Act—it was enacted at a different time and passed at a different time. It is, however, the law under which most Federal extortion prosecutions take place, and its definition of extortion is the one quoted in Black's Law Dictionary at 525 (5th ed. 1979). To the extent the term extortion may not have specific meaning under the law who enacted 18 U.S.C. * 924(e). To the extent the term extortion may not have specific meaning under the regulations who enacted 18 U.S.C. * 924(e), the courts should look to more likely candidate that any other. Cf. e.g., Securities Industry Ass'n v. Board of Governors, 468 U.S. 137, 150-51, 104 S.Ct. 2979, 2986-87, 82 L.Ed.2d 107 (1984) (looking to other federal statutes for definition of term). | Defendant's state conviction for attempting to get money by threatening harm, being only an attempt, was not "extortion" and, thus, was not crime of violence for purposes of Armed Career Criminal Act; Hobbs Act defines extortion as obtaining of property by wrongful use of actual or threatened force, violence, or fear, or under color of official right, not attempt to do so. 18 U.S.C.A. §§ 924(e)(2)(B)(ii), 1951. | How is extortion defined? | 003064.docx | LEGALEASE-00117396-LEGALEASE-00117397 | Condensed_SA_Sub 0.71 | | 1 | 1 | 1 | |
| 17790 | Frans v. Frans, 160 S.W.3d 795 | 253+840 | Dissent also stated that if we would look for a profit in state and that does later they don't perceive were invested it in the 1000-acre. Dissent derives from the sale of separate property that lands from the sale of separate property partly, on the separate proper party, on the separate proper party. In this appellate—it must be, but here the after the citing stock, sales, and dispositions of the case a decrease in the value of separate property. Dawson-Austin v. Austin, 920 S.W.2d 776, 788 (Tex.App.-Dallas 1996), rev'd on other grounds, 968 S.W.2d 319 (Tex.1998) (holding that an increase in the value of separate stock remains separate property). Smith v. Smith, 22 S.W.3d 140, 150 (Tex.App.-Houston [14th Dist.] 2000) so part [same]. We conclude Ivan failed to raise a fact issue concerning the separate property. | Proceeds from the sale of separate property are the separate property of the spouse whose property was sold. | Are proceeds from the sale of a spouses separate property considered as separate property? | Marriage and Cohabitation- Memo 41 - JS.docx | LEGALEASE-00000864-LEGALEASE-00000865 | Condensed_SA | 0.88 | | 0 | 1 | 1 | |
| 17791 | McLaughlin v. Johnson, 46 Ill. 163 | 315+538 | Suppose the defendant had returned them, and they were lying scattered about on the land when he purchased the land, would they not have passed with the land? These are but questions that arise, whether they exist in several analogous cases. In Palmer v. Forbes et al., 23 Ill.10J, it was held that the rolling stock, machinery and other material brought upon the ground of a railroad company incumbered by a mortgage, and designed to be attached to the realty, should be considered as part of the mortgaged real estate, and became a part of the freehold in order to constitute a part of it for the purpose of transfer as sale. The court illustrates by the case of mill stones, which are constantly being taken up and dressed; whereas they are so much a part of the mill as when in their beds, and would pass by a deed or mortgage of the mill if they had been so fixed and detached for a few months. Again the court said, it is a familiar principle, that rails hauled on to the ground designed to be laid into a fence and remain a part of building, although not yet erected, but lying around loose and in no way attached to the soil, are treated as a part of the realty and pass with the land as appurtenant to it. | A test to which, for use upon B.'s land, the rails in a piece of fence standing upon A.'s land, hold that, upon the sale by A. to B. of the land where the rails stood, the rails were a fixture, and passed under the deed as a part of the realty. | "Does a rail, when made up into a fence upon the land, become a part of the realty?" | Property - Memo 18 - JS.docx | ROSS-003284882-ROSS-003284883 | Condensed_SA_Sub 0.83 | | 0 | 0 | 1 | |
| 17792 | Davis v. Berwind Corp., 547 Pa. 260 | 313H+113 | Nevertheless, it is not the purpose of "402A to impose absolute liability. A manufacturer is a guarantor of its product, not an insurer. See Azzarello v. Black Brothers Co., Inc., 480 Pa.547, 555, 391 A.2d 1020, 1027 (1978). To recover under "402A, a plaintiff must establish that the product was defective, that the defect was a proximate cause of the plaintiff's injuries, and that the defect causally existed at the time the product left the seller's hands. Berkebile v. Brantly Helicopter Corporation, 462 Pa. 83, 8 337 A.2d 893 (1975). The seller is not liable if a safe product is made unsafe by subsequent changes. Id. Where the product has reached the user or consumer with substantial change, the question becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product. Eck v. Powermatic Houdaille, 364 Pa.Super. 178, 527 A.2d 1012 (1987). | It is not purpose of strict liability provision of Restatement (Second) of Torts to impose absolute liability on product manufacturer, as manufacturer is guarantor of its product and not insurer. Restatement (Second) of Torts § 402A. | Is manufacturer a guarantor of its product? | 000015.docx | LEGALEASE-00117564-LEGALEASE-00117565 | Condensed_SA_Sub 0.75 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,029 |
| 17793 | Clinical Pipeline Co. v. Morgan, 263 S.W.3d 827 | 13A+1013 | Provision of Uniform Administrative Procedures Act (UAPA) requiring prospective plaintiff to make request for declaratory order with agency before bringing action for declaratory judgment in Chancery Court violated state constitution's separation of powers to extent that it required administrative review prior to bringing a direct constitutional challenge to the facial validity of a statute in the Chancery Court. West's T.C.A. Const. Art. 2, § 2; West's T.C.A. § 4-5-225. | Despite the breadth of the jurisdictional provision found in the statute, an agency does not have the authority to determine the facial validity of a statute under the constitutional requirement of separation of powers. Tenn. Const. art. II, § 2. … | Do administrative agencies have the authority to determine the facial validity of a statute? | Administrative Law - Memo 5b - RK.docx | ROSS-002982143-ROSS-002982143 | Condensed, SA, SJ 0.74 | | 0 | | | 1 | 1 |
| 17794 | People v. Valdez, 126 Cal. App. 4th 575 | 203+03 | Although a fetus is not a human being within the meaning of the murder statute, fetal life is entitled to the same protection as human life, except where the mother's paramount privacy interest are at stake. West's Ann.Cal.Penal Code § 187(a). | The legislature did not define "fetus" to be the equivalent of "human being", and it did not similarly amend section 192, which defines manslaughter as a "the unlawful killing of a human being without malice." … | Is a fetus a human being within the meaning of murder or homicide statutes? | Homicide - Memo 19 - RK.docx | ROSS-002982092-ROSS-002982093 | Condensed, SA, SoJ 0.65 | | 0 | 1 | 1 | 1 | |
| 17795 | People v. Hansen, 9 Cal. 4th 300 | 203+609 | Offense of discharging firearm in inhabited dwelling house did not merge with resulting homicide even if offense was integral part of homicide and, thus, commission of offense supported conviction of second-degree felony murder; past of offense was a predicate felony for felony murder rule would not elevate all felonious assault to murder or otherwise subvert legislative intent behind graduated gradation of homicide offenses. West's Ann.Cal.Penal Code § 246. | As we shall explain, defendant's contention rests upon an unduly expansive view of the scope of the "merger" doctrine applied to second-degree felony murder … | Can a homicide occur absent an assault? | 000420.docx | LEGALEASE-00117746-LEGALEASE-00117747 | Condensed, SA, SoJ 0.8 | | 0 | 1 | 1 | 1 | |
| 17796 | Melcher v. F.C.C., 134 F.3d 1143 | 372+1017 | Denial by Federal Communications Commission (FCC) of telecommunications companies' requests for waiver of rules governing use of spectrum by current designated for Local Multipoint Distribution Service (LMDS) was not abuse of discretion, in view of large number of waiver requests and presence of common issues that could better be addressed in rulemaking proceeding. | This court held in Turro v. FCC, 859 F.2d 1498 (D.C.Cir.1988), that 'Our standard for reviewing the FCC's denial of a request for waiver of an agency's rule is very deferential.' Id. (citing WAIT Radio v. FCC, 459 F.2d 1203, 1207 (D.C.Cir.)). … | What is the burden upon an applicant who appeals the denial of an application for a waiver of an agency rule? | 000309.docx | LEGALEASE-00117973-LEGALEASE-00117974 | Condensed, SA, SoJ 0.66 | | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17797 | Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184 | 231H+958 | In support of this argument, BIECA correctly notes that the market participant exception does not immunize from scrutiny any choice a state makes about expending state funds on state projects. A state cannot use its spending power to regulate labor. For instance, in Wisconsin Department of Industry, Labor and Human Relations v. Gould Inc., 475 U.S. 282, 289, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986), the Supreme Court held that the NLRA preempted a state law forbidding the state from doing business with repeat NLRA violators, because the uncontroverted purpose of the state law was to deter NLRA violations by the private sector of the local government. Similarly, in Chamber of Commerce of United States v. Brown, 554 U.S. 60, 62, 69, 128 S.Ct. 2408, 171 L.Ed.2d 264 (2008), the Court struck down a state law prohibiting recipients of state funds from using that money for the purpose of assisting or deterring union organizing. The law did not run afoul of the market participant exception because it was "neither 'specifically tailored to one particular job' nor a 'legitimate response to state procurement constraints or to local economic needs.'" Id. at 70, 128 S.Ct. 2408, quoting Boston Harbor, 507 U.S. at 232, 113 S.Ct. 1190, and reflecting the purpose behind that "efficient procurement of goods and services, but the furtherance of a labor policy." Id. | Market participant exception to NLRA preemption does not immunize from scrutiny any choice a state makes about expending state funds on state projects; state cannot use its spending power to regulate labor. U.S.C.A. Const. Art 6, cl. 2. | Can the state use its spending power for regulating labor relations? | 001450.docx | LEGALEASE 00173920 LEGALEASE 00173921 | Condensed, SA, 0.82 | 0.82 | 0 | | | 1 | 1 |
| 17798 | Crow v. State, 55 Tex. Crim. 200 | 203+1388 | Several errors are suggested with reference to the court's charge, and especially the charge on the question of aggravated assault, murder and manslaughter. That portion of the charge in regard to murder in the second degree defines the offense of using a weapon in a deadly manner beyond a reasonable doubt that the defendant, in Cass county, Tex., on or about the 15th day of August, 1908, unlawfully struck Green Foster with a baseball bat, and thereby killed him, and if you further believe from the evidence beyond a reasonable doubt that said baseball bat was an instrument reasonably calculated and likely to produce death, either with respect to the manner of its use "That is, that said baseball bat was per se a deadly weapon, without regard to the manner of its use" and if you further believe from the evidence does not establish express malice, further believe from the evidence beyond a reasonable doubt that said baseball bat was in the second degree of murder, then you will find the defendant guilty of murder in the second degree in connection to it follows. * * * If you further believe from the evidence beyond a reasonable doubt that said baseball bat was an instrument that the time in a sudden passion roused by adequate cause, as the same is explained in this charge, and that the defendant, in Cass county, Tex., on or about the 15th day of August, 1908, killed the said Green Foster while acting under the immediate influence of sudden passion aroused by an adequate cause on the ground of self defense, etc., he would be guilty of manslaughter." We think the exception are well taken. A baseball bat is not per se a deadly weapon, and especially is it not a deadly weapon when considered without reference to its use. A weapon may be, or may not be, a deadly weapon, depending upon the manner of its use, and this in a case where death could not follow and was not the natural and probable consequence of its use, it would be error to instruct the jury that it was a deadly weapon. It has been held that a baseball bat is not necessarily a deadly weapon. Melton v. State, 30 Tex. App. 273 | Pen.Code 1895, art. 717 (Vernon's Ann.P.C. art. 1261) provides that the instrument by which a homicide is committed is to be considered in judging of intent, and, if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless it appears from the manner in which the instrument was used. Article 719 (1261), providing that where a homicide occurs under sudden passion, but by the use of means not intended to produce death, the person killing is not deemed guilty of the homicide, unless there was an intention to kill, applies to all homicides, whether from adequate or cruel manner, or a manner showing an evil disposition or a design to kill. Held that, in a prosecution for murder alleged to have been committed during a sudden difficulty, by striking with a baseball bat, which is not a deadly weapon per se, where there was evidence that accused did not intend to kill, a failure to charge on his intent in striking was error. | Is a baseball bat considered to be a deadly weapon? | 000960.docx | LEGALEASE 00181160 LEGALEASE 00181162 | Condensed, SA, 0.66 | 0.66 | 1 | 1 | 1 | | |
| 17799 | Certiu v. Rosenblatt, 251 So.2d 425 | 289+732 | A partnership is a separate legal entity from its partners and has the procedural capacity to be sued in its own name. LSA-C.C. art. 737. | A partnership is a separate legal entity from its partners and has the procedural capacity to be sued in its own name. LSA-C.C. art. 737. | Can a partnership be sued in its own name? | Partnership - Memo 47 - TN.docx | ROSS-003181657-ROSS-003183658 | SA, Sub | 0.81 | | | | 1 | |
| 17800 | Seaboard Coast Line R. Co. v. Nat'l Rail Passenger Corp., 554 F.2d 657 | 25T+113 | We must, therefore, look to Article VI, the arbitration provision, in the NRPC Agreement to determine whether the referral to arbitration was proper. At the outset, we note that the policy of the Federal Arbitration Act is to encourage arbitration and to relieve congestion in the courts. An examination of the applicable law under the FAA indicates that "the main *is to relieve arbitration) which on its face is one governed by the [applicable] agreement." Galt v. Libbey Owens Ford Glass Co., 7 Cir. 1967, 376 F.2d 711, 714. Under the FAA, the court should give the arbitrator jurisdiction of an interpretation that this positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 582-83, 80 S.Ct. 1343, 1351; 4 L.Ed.2d 1403. Two circuit courts, faced with the question, applied these principles in the arbitral suit involving the NRPC arbitration provision. National Railroad Passenger Corp. v. Missouri Pacific R.R. Co., 8 Cir. 1974, 501 F.2d 423; National Railroad Passenger Corp. v. Chesapeake and Ohio Ry. Co., 7 Cir. 1977, 551 F.2d 136. | Policy of the Federal Arbitration Act is to encourage arbitration and to relieve congestion in the courts. 9 U.S.C.A. § 1 et seq. | What is the policy behind the Federal Arbitration Act? | Alternative Dispute Resolution - Memo 286 - RK.docx | ROSS-003298743-ROSS-003298746 | Condensed, SA, Sub 0.89 | 0.89 | 1 | | 1 | | |
| 17801 | Okanogan Highlands All. v. Williams, 236+117 | | Federal agencies owe a fiduciary responsibility to Native American tribes. Morongo Band 161 F.3d at 574; see also Karuk Tribe of California v. Ammon 209 F.3d 1366, 1379 (Fed. Cir.2000) (noting that "the United States is a trustee and holds land in trust, has responsibility to protect their rights and resources"). In the absence of a specific duty, this responsibility is discharged by "the agency's compliance with general regulations and statutes not specifically aimed at protecting Indian tribes." Morongo Band, 161 F.3d at 574. | Federal agencies owe fiduciary responsibility to Native American tribes. | Do federal agencies hold a fiduciary relationship with Indian tribes? | 001416.docx | LEGALEASE 00181310 LEGALEASE 00181321 | Condensed, SA | 0.87 | | | | 1 | |

3138

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 17802 | Pub. Utilities. Comm'n of R. I. v. Attleboro Steam & Elec. Co., 273 U.S. 83 | 83 a62-1 | It is contended, rightly, that the sale of electric current by the Narragansett Company to the Attleboro Company is a transaction in interstate commerce, notwithstanding the fact that the current is delivered at the state line. The transmission of electric current from one state to another, like that of gas, is interstate commerce, Cool & Coke Co. v. Pub. Serv. Comm., 84 W. Va. 662, 680, 100 S. E. 557, 7 A. L. R. 108; and its essential character is not affected by a passing of custody and title at the state boundary, not arresting the continuous transmission to the intended destination: People Gas Co. v. Pub. Serv. Comm., 270 U. S. 550, 554, 46 S. Ct. 371, 70 L. Ed. 726. | Sale of electric current to purchaser in another state held "interstate commerce." | Is the transmission of electric current from one state to another an interstate commerce subject to the Commerce Clause? | Electricity ; Memo 7 RM.docx | ROSS-000295761 ROSS-000295762 | Condensed, SA, 0.87 | | 0 | | | 1 | |
| 17803 | Hall v. Lilly Corp., 232 N.J. Super. 337 | 315 a451 | This Court believes that the clause in the instant case might well be a fixture, however, it need not reach that issue. While analyzing (a) fixture law is somewhat helpful in concluding the statutory application, the term "fixture" and the phrase "improvement to real property" are not synonymous. A fixture, by definition, is an improvement to real property, but an improvement to real property need not be a fixture. Commonwealth, 56 Pa. C. 216, 424 A.2d 614, 616 (Pa.Commw.Ct.1981); see also Canfield Co. v. Ragner Benson, Inc., 534 F.Supp. 1212 | Term "fixture" and phrase "improvement to real property" are not synonymous; a fixture by definition is an improvement to real property, but an improvement to real property need not be a fixture. | Are fixtures real property? | Property ; Memo 33 RM.docx | ROSS-000309549 ROSS-000309459 | Condensed, SA, 0.64 | | 0 | 1 | | | |
| 17804 | Tuttle v. Henderson, 628 P.2d 1275 | 76D a76 | Custody proceedings are highly equitable in nature and the controlling factors in the best interest and welfare of the child. Now that the matter affecting the rearing of juvenile is specifically addressed by Utah's Uniform Child Custody Act (U.C.A. 1953, 78-45c-10) provides as follows: In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others (a) if another state is or recently was the child's home state;(b) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;(c) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;(d) If the parties have agreed on another forum which is no less appropriate; and(e) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 78-45c-1. | Controlling factor in custody proceedings is the best interest and welfare of the child. | What is the controlling factor in child custody cases? | 00100.docx | LEGALEASE-00108444 LEGALEASE-00108445 | Condensed, SA, Sub 0.92 | | | 1 | 1 | 1 | |
| 17805 | State v. E.J.F., 999 So. 2d 224 | 207A4 | Further, the defendant's argument that the State failed to produce any evidence proving that the offense occurred on May 10, 2003 and December 30, 2005 is also without merit. This court in State v. Foshee, 99 7 A.2d, a 6 (La.App. 3 Cir. 4/6/00), 756 So.2d 693, 696, stated, "(t)he date of the offense is not a specific element of aggravated incest." Additionally, the dates correspond with the victim's recollection in her videotaped statement of two incidents occurring at the end of second grade and another in third grade before Christmas. | The date of the offense is not a specific element of aggravated incest. LSA R.S. 14:78-1 (1905). | Is the date of the offense a specific element of aggravated incest? | Incest ; Memo 36 RM.docx | ROSS-000325254 ROSS-000325255 | Condensed, SA, 0.82 | | | 1 | | 1 | |
| 17806 | Webb v. Allington, 27 Mo.App. 559 | 289 a66(2) | A partner in a non-trading partnership cannot bind a co-partner by bill or note drawn or accepted or endorsed by him in firm name, not even for a debt owed by the firm, unless he has express authority from the co-partner, or it is usual or customary in similar partnerships. Libra v. Grisolfi, 18 S.E. Ga 304 (6) Authority: "a partner has authority must be proved affirmatively to sign the instruments, *561 and no reference would not be drawn. (Whitmore v. Fraley, 10 R. & C. F. 128; Judge v. Braswell, 2d Am. Rep. 136.) Thus, the court below ruled in this case by Maher v. Hanno, s.v.o., 137 Mo. 622, and cases cited; Smith v. Sloan, 3 Y Mo. 289, 96, and cases cited. Mr. Collier v. Jobe, was a special of partnership. *541 that is requisite to render a debt contracted by one of the partners binding and obligatory on the other's firm. The defendant did not so testify. The authorities delimited on this point is relied on the affirmative on the part of the business. *In this case in its customary in similar character would quote from a text author on partnership, the following: "A partner in a trading firm has prima facie authority to bind the firm by drawing, endorsing or accepting bills in the firm name for partnership purposes. ** A partner in a non-trading partnership has prima facie no authority to render his co-partners liable by signing bills in the partnership name." The cases cited by each author sustain the text statement. | A partnership engaged in running a crusher for crushing and cleaning zinc ore being a non-trading partnership, one of the partners could not bind the other by a note unless he had express prior authority therefor or evidence that it was customary to do so. | Can a partner in a non-trading partnership bind a co-partner by a note drawn by him in the firm name? | Partnership ; Memo 49 RM.docx | ROSS-000187273 ROSS-000187274 | Condensed, SA, 0.56 | | | 1 | | 1 | |
| 17807 | Adams v. Long, 114 Ill.App.277 | 289 a66(2) | Considerable discussion is indulged in on the point as to whether the partnership was or was not a trading partnership, but, as we think this in the evidence tends to show, bought and sold real estate on its own account, and this fact to some extent, we being a trading partnership as to applether and enabled him to recover on the note, unless he had notice of the limitation upon such partner's authority. Colley on Partnership (6th ed.), 648, 658; Ulery v. Ginrich, 57 Ill. 531; Morse v. Richmond, 6 Ill. App. 167; Pease v. Cole, 53 Conn. 53-60, and cases cited. Deloitte v. Thacher, 79 Mo. 128-31, and cases cited. Walter v. Horne, 6 V.a 137-42; and cases cited. Smith v. Sloan, 3 Y Mo. 289, 96; and cases cited. Mr. Collier v. Jobe case, speaking of the prima facie authority to render a debt contracted by one of the partners binding and obligation on the other, and that the court below ruled in this case on the part of the business. "In the Pease case the Connecticut Supreme Court quote from a text author on partnership, the following: "A partner in a trading firm has prima facie authority to bind the firm by drawing, endorsing, or accepting bills in the partnership name." | A partner in a trading firm has prima facie authority to bind the firm by drawing, endorsing or accepting bills in the firm name for partnership purposes. | Can a partner in a non-trading partnership bind a co-partner by a note drawn by him in the firm name? | 00348.docx | LEGALEASE-00118772 LEGALEASE-00118773 | Condensed, SA, Sub 0.73 | | | 1 | 1 | 1 | |
| 17808 | Lewis v. Jackson Energy Co-op. Corp., 189 S.W.3d 87 | 317H a101 | Any reliance on KRS 279.110(1) is also incorrect to the extent that it purports to expand the powers of electric cooperatives beyond those expressed in KRS 279.140(1). "Electric cooperatives" are defined and limited by KRS 279.020. If ownership of a chapter 2718 cooperative is not necessary or incidental to the purpose authorized in KRS 279.010(1), we hold that the scope of the phrase "electric affiliates is prohibited. A public utility may not accomplish indirectly what it is disallowed to do directly. CC Southeastern Electric v. Louisville Gas and Elec. Co., 282 Ky 215, 95 S.W.2d (1936), in which it was stated, "what the general Assembly has prohibited a public utility from doing directly, it may not accomplish by indirection. The cases cited fully sustain that statement. | A public utility may not accomplish indirectly what it is forbidden to do directly. | Can a public utility accomplish indirectly what it is disallowed to do directly? | 00161.docx | LEGALEASE-00109041 LEGALEASE-00109042 | Condensed, SA, 0.9 | | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 23,876 | Multiple Differences 9,079 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17809 | Durden v. State, 250 Ga. 325 | 203×106 | At early common law some type of physical injury was required for imposition of criminal responsibility for homicide. 40 CJS Homicide ° 11. This rule may have been designed to prevent prosecutions for witchcraft. In any event, the modern tendency is to disregard this mechanical rule and to determine criminality according to the degree of reasonable proximity between the unlawful act and the death. Anno, Homicide by Fright or Shock, 47 ALR2d 1072 at 1079. We hold that a physical injury is not required for criminal responsibility for homicide. | Physical injury is not required for criminal responsibility for homicide. | Is physical injury required for criminal responsibility for homicide? | 003750.docx | USGA EXLIC 00138656-USGA EXLIC 00138657 | Condensed, SA | 0.87 | 0 | | | 1 | 1 |
| 17810 | Johnson v. Caldo, 159 Wis. 2d 446 | 249×2 | Thus, it is clear that the so-called minority rule the rule that, to sustain an action for malicious prosecution in a civil context, an essential allegation of the pleading is that there be special damages occasionally the more germane. We are reluctant to adopt a rule under circumstances under which numerous appeals has become... | General damages in defeating lawsuit, loss of time, and diminution of quality of life are not special damages flowing from interference with personal property, such as must be alleged in order to state cause of action for malicious prosecution. | Is special injury or special damages an essential element in a civil malicious prosecution action? | Malicious Prosecution - Memo 11- MS.docx | USGA EXLIC 00006887-USGA EXLIC 00006889 | Condensed, SA, Sub | 0.27 | 0 | | | 1 | 1 |
| 17811 | Fisher v. GE Med. Sys., 276 F. Supp. 3d 891 | 25×134 | Baten v. Sanford Factory, # 315-v (7th Cir.) Continental Baking Co., Inc., 749 F.2d 350, 353 (6th Cir. 1984) (quoting United Steelworkers v. Warrior & Tulare International Sales Co., 548 F.2d 1093, 1096 (6th Cir. 1973). Similarly, a New York district court has reasoned that the structure of the FAA requires arbitration as a process that will "settle" the controversy. C.A. Richard Ellis, Inc. v. American Guarantee, No. 96CV*4185(JG), 1998 WL 904901 (E.D.N.Y. 1998). The court concluded: "Because the medical clause at bar manifests the parties' intent to provide an alternative method to settle controversies arising under the parties' 1997 agreement, this mediation clause fits within the Act's definition of arbitration." A. Richard Ellis, Inc., 1998 WL 904901 at *4. The court is persuaded that "arbitration" in the FAA is a broad term that encompasses many forms of dispute resolution... | "Arbitration" in the Federal Arbitration Act (FAA) is a broad term that encompasses many forms of dispute resolution. 9 U.S.C.A. § 2. | Should arbitration be defined broadly under the Federal Arbitration Act? | 003212.docx | USGA EXLIC 00130092-USGA EXLIC 00130093 | Condensed, SA, Sub | 0.84 | 0 | | | 1 | 1 |
| 17812 | Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Ward, 563 F.3d 276 | 170B×2214 | Federal cause of action may be created either expressly or by implication. See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Whether expressly or impliedly, however, we remain mindful that it is Congress, not this or any other court, that creates private causes of action, Alexander v. Sandoval, 532 U.S. 275, 286(*) 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) ("Without statutory intent, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") Thus, a we examine whether congress intended to create the federal cause of action asserted. The statute in question to create, either expressly or by implication, such a cause of action. See id. at 286, 121 S.Ct. 1511 (citing statutory intent "determinative"); Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("Our task is limited solely to determining whether Congress intended to create the private right of action asserted..."). The question, then, becomes one of statutory construction. Touche Ross & Co., 442 U.S. at 568, 99 S.Ct. 2479; Cannon v. Univ. of Chi., 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) In acts with an such question, we look as our starting point to the language of the statute itself, and if the statute is silent or ambiguous, we ask whether it evinces Congress's intent to create, expressly or impliedly, a private cause of action for labor organizations to enforce its provisions. | Federal cause of action, as will support federal question jurisdiction, may be created either expressly or by implication. 28 U.S.C.A. § 1331. | How can a federal cause of action be created? | Action - Memo 11- MS.docx | ROSS 003108074-ROSS-003108075 | SA, Sub | 0.51 | 0 | | | 1 | 1 |
| 17813 | Hendrick v. Caldwell, 232 F. Supp. 3d 868 | 13×1 | The court next turns to the question of whether plaintiffs' claims are procedurally barred under preclusion principles. "Federal courts asked in a 1988 action to give res judicata effect to any of its decisions are required to a state court judgment are bound under the Full Faith and Credit Statute, 28 U.S.C. § 1738, to apply the law of the rendering state to determine whether and to what extent the state court judgment should have preclusive effect." Davenport v. North Carolina Dep't of Transp., 3 F.3d 89, 92 (4th Cir. 1993). The effect of res judicata is generally divided into two categories: claim preclusion and issue preclusion. Lee v. Spoden, 290 Va. 235, 245, 776 S.E.2d 798 (2015). In cases, under the doctrine of claim preclusion A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent action against the same opposing parties or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. Sought Virginia Supreme Court Rule 1:6(a). Whether a subsequent claim involves "the same conduct, transaction or occurrence" whether the claim is based on a different cause of action. Lee v. 290 Va. at 248, 776 S.E.2d 798. "[A] cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action." Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 323 (1989). "A right of action, on the other hand, "is the remedial right accorded to a person to enforce a cause of action or assert when a person's rights are infringed." Lee 290 Va. at 249, 776 S.E.2d 798. Multiple rights may arise | A "cause of action" is "the set of operative facts which, under the substantive law, gives rise to a right of action." | What is a cause of action? | Action - Memo 39- MS.docx | ROSS 003128922-ROSS-003128924 | Condensed, SA, Sub | 0.96 | 0 | | | 1 | 1 |

3140

Appendix D

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17634 | First Advantage Background Servs. Corp. v. Private Eyes, 569 F. Supp. 2d 929 | 237+130 | Private Eyes argues that trade libel is distinct from defamation, and that the former does not require the specific pleading that the latter does. Opp'n at 10. "Trade libel is more like unfair competition than true libel and is not actionable as defamation." Films of Distinction, Inc. v. Allegro Film Prods., Inc., 12 F.Supp.2d 1068, 1081 (C.D.Cal.1998). However, this difference does not diminish the pleading requirements in a trade libel claim. See, e.g., Eldorado Stone v. Renaissance Stone, Inc., No. 04-CV-2562-JM, 2005 WL 5517712, 2005 U.S. Dist. LEXIS 43237, at *27:1 (S.D.Cal. Aug. 9, 2005) (denying a trade libel claim where plaintiff failed to identify the author or speaker, recipient, time, and location of each allegedly libelous statement); Films of Distinction, 12 F.Supp.2d at 1081 n. 8 ("To the Ninth Circuit, a product defamation or trade libel claim must be based on specific statements, and the defamatory character of the language must be apparent from the words themselves.") Litigation and internal quotation marks omitted). Nothing in the First Amended Counterclaim gives any indication of who made the statements constituting the allegedly libelous statements, to whom they made those statements, when they made those statements, or what exactly they said. Without this information, the claim is deficient. This alone is sufficient basis to grant the motion. | Trade libel is more like unfair competition than true libel and is not actionable as defamation, but this difference does not diminish the pleading requirements in a trade libel claim. | Is trade libel actionable as defamation? | Libel and Slander - Memo 113 - AN6.docx | ROSS 003192187-ROSS-003192188 | Condensed, SA, Sub 0.87 | | 0 | 1 | | 1 | |
| 17635 | Microtec Research v. Nationwide Mut. Ins. Co., 457-3d 968 | 237+133 | The terms disparage and belittle used in the policies are meant to convey the same ordinary trade libel. Trade libel is defined as "an intentional disparagement of the quality of property, which results in pecuniary damages." Guess, Inc. v. Superior Court (1986) 176 Cal.App.3d 473, 479, 222 Cal.Rptr. 79... 176 Cal.App.3d 473, 479, 222 Cal.Rptr. 79. In a products liability action, the plaintiff's cause of action sounds in tort; in a trade libel action, it sounds in... 222 Cal.Rptr. 79, 84 (1986) (quoting Erlich v. Etner, 224 Cal.App.3d 69, 36 Cal.Rptr. 256, 258 (1964)). In more akin to unfair competition than to true libel and is not actionable as defamation. | Trade libel is more akin to unfair competition than true libel and is not actionable under California law. | Is trade libel actionable as defamation? | 00268.docx | LEGALEASE-00159381-LEGALEASE-00159382 | Condensed, SA, Sub 0.75 | | 0 | 1 | | 1 | |
| 17636 | Rivera v. Kevalar, 145 Cal. App. 2d 676 | 46+14 | The third cause of action, similarly stated, is but a cause of action for damages for refusal of defendant to carry out the terms of the alleged agreement... This theory is a transitory action... Kaigh v. Pacific Gas & Elec. Co., 327 U.S. 485, 66 S.Ct. 574, 90 L.Ed. 743... 9 Cal.App. 217, 109 P. 608, Stromer v. Browne, 2 Cal.App.2d 525, 38 P.2d 179, Cincporello v. Carozza, 113 Cal.App.2d 642, 248 P.2d 779. | Action for damages for refusal of defendant to carry out terms of an alleged agreement entered into between plaintiff and defendant, is a transitory action. West's Ann.Code Civ.Proc., § 395. | Is a cause of action seeking damages transitory? | Venue - Memo 51 - AN6.docx | ROSS-003192019-ROSS-003192020 | Condensed, SA, Sub 0.46 | | 0 | 1 | | 1 | |
| 17637 | Howard v. Commonwealth, 484 S.W.2d 295 | 207+4 | While we do not wholly reject Howard's interpretation of "child," we find that it is inconsistent with the Ordinary and usual meaning of the word which a young human being below the age of puberty," and also as "one's son or daughter (of any age)." The Oxford American Dictionary of Current English 133 (Oxford University Press 1999). Thus, contrary to Howard's contentions, the definition of "child" is not limited to a minor; rather, the term is relational regarding age... 415.550.020(1), "stepchild" refers to the son or daughter of one's spouse by a former partner at any age. Therefore, we hold that criminal abuse criminalizes sexual intercourse between a stepparent and a stepchild, regardless of age. | Incest statute criminalizes sexual intercourse between a stepparent and a stepchild, regardless of age. West's Ann. Stat. Ann. 5.550.020(1). | Does incest prohibit sexual relationships between step-children and step-parents? | Incest - Memo 40 - AN.docx | ROSS-003194694-ROSS-003194694 | Condensed, SA, Sub 0.81 | | 0 | 1 | | 1 | |
| 17638 | Brown v. Collins, 402 F.2d 209 | 237+38(1) | The factual circumstances here are ambiguous. A statement to be privileged as communication preliminary to a judicial proceeding must be made "in character" of a litigant. Where, as with Brown "businessman, realtor, attorney," a person wears many hats in the course of a day, that person is substantial. Indeed, a business communication may pertain to the privilege merely because that person deals with matters likely to end up in court... communication preliminary to the proceedings started by the lien, Brown's mere threats to file an objection... clearly not intended to convey the defamatory... of the lien. Although the Restatement standard of "relation" to the proceedings is broad, and does not require the litigant be imminent, there must be not merely by showing that the defamatory comments were legally by the same time only in the face has clouded therein. While parties are accorded obviously need freedom to confer before suit, there is a difference between this sort of conference to discuss matters contemplated in a time trial, and delegated barbless or tangential matters. No doubt the mere mention of the possibility of suing the commentator automatically convert the entire conversation to one "related" to a proceeded judicial proceeding. | Statement to be privileged as communication preliminary to a judicial proceeding, must be made in character of a litigant. | What is a privileged communication? | Libel and Slander - Memo 114 - IS.docx | ROSS-003298776-ROSS-003298777 | Condensed, SA 0.91 | | 0 | 1 | | 1 | |
| 17639 | On Line Power v. Mausz, 145 Cal. App. 4th 1073 | 231H+1278 | The Labor Code contains several provisions designed to ensure that employees receive their full wages at specified intervals while employed, as well as when they are fired out of quit (Labor Code, ""201"204).) The employee brings an action for enforcement of wages if those items were unpaid whether from the action was initiated. (Labor Code, "218.5.) The trial court ruled that these provisions were inapplicable to Mausz because he was not an hourly employee, and that his claims were really for breach of his employment contract. We disagree. | Labor Code provisions ensuring an employee's right to payment of wages applies to salaried corporate executive, taken as a whole, those provisions indicated that for purpose of the Labor Code, the salaries of executives are protected wages. West's Ann.Cal.Labor Code §§ 200, 201, 202, 203, 204, 218.5. | "Does the Labor Code contain provisions to ensure that employees receive their full wages at specified intervals while employed, as well as when they are fired or quit?" | 00246.docx | LEGALEASE-00159192-LEGALEASE-00159193 | Condensed, SA, Sub 0.51 | | 1 | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Plus + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17820 | E.E.O.C. v. Dowd & Dowd, Ltd., 736 F.2d 1177 | 78+1111 | Shareholders in professional corporation engaged in practice of law were not "employees" of corporation for purpose of Section 701(b) of Title VII, 42 U.S.C. * 2000e(b). Dowd had three shareholders. There was a dispute in the district court as to how many non-shareholders there were at Dowd because of a dispute as to which part-time employees should be counted at employees under Section 701(b). The record is clear, however, that no matter how the part-time employees are counted there are less than fifteen non-shareholders at Dowd. Section 701(b) provides that, as used in the Act, the term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. * 2000e(b). The district court concluded that the shareholders of the professional corporation could not also be considered employees of the corporation. | The district court granted summary judgment for Dowd because it found that Dowd was not an "employer" as defined in Section 701(b) of Title VII, 42 U.S.C. * 2000e(b). Dowd had three shareholders. There was a dispute in the district court as to how many non-shareholders there were at Dowd because of a dispute as to which part-time employees should be counted at employees under Section 701(b). The record is clear, however, that no matter how the part-time employees are counted there are less than fifteen non-shareholders at Dowd. Section 701(b) provides that, as used in the Act, the term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. * 2000e(b). The district court concluded that the shareholders of the professional corporation could not also be considered employees of the corporation. | Who is an employer? | 00260.docx | LEGALEASE 00159236-LEGALEASE 00159237 | Condensed, SA, Sub 0.56 | 0.56 | 0 | 1 | | | |
| 17821 | Denver Joint Stock Land Bank v. Bd. of Comm'rs of Elbert Cty., 105 Colo. 366 | 148+191(1) | The benefit which may be set off against damages, where part of a tract of land is condemned, are those accruing to the residue of the tract from the construction of the improvement, but such as are only conjectural or speculative may not be thus set off. | In the determination of damages to which the owner of land in condemnation proceedings is entitled, we have held that any reasonable use to which the land may be adapted or applied, under the ordinary prudence and judgment may be considered, in so far only as such considerations may assist the jury in arriving at the present market value, Wassenich v. City and County of Denver, 67 Colo. 456, 186 P. 533; Mosca del Midge Co. v. Grant County, 200 Mo. 130, 227 N.W. 863, 864, 865. There was no evidence in the instant case that there was or would within a reasonable future be a demand for a subdivision of this land into small farms or tracts, none. The objection to this evidence relates to benefits which petitioners claimed would accrue to transportation and in arriving at the present market value of the land. The benefits which may be set off against damages, where part of a tract of land is condemned, are those accruing to the residue of the tract from the construction of the improvement, but such as are only conjectural or speculative may not be thus set off. | What is a benefit under the eminent domain statute? | 00189.docx | LEGALEASE 00159649-LEGALEASE 00159650 | Condensed, SA, Sub 0.82 | 0.82 | 0 | | 1 | | |
| 17822 | Harris Cty. Flood Control Dist. v. Kerr, 445 S.W.3d 242 | 148+2.1 | Proximate cause is an essential element of a takings case, "[W]ithout causation, there is no taking. | Proximate cause is an essential element of a takings case, "[W]ithout causation, there is no taking." Tarrant Reg'l Water Dist. v. Gragg, 43 S.W.3d 609, 631 (Tex.App.-Waco 2001), aff'd, 151 S.W.3d 546 (Tex.2004). | Is proximate cause an essential element in takings claim? | 00188.docx | LEGALEASE 00159570-LEGALEASE 00159571 | Condensed, SA, Sub 0.55 | 0.55 | 0 | 1 | | | |
| 17823 | State v. Bishop, 431 S.W.3d 22 | 203+511 | Corpus delicti of a felony murder does not include the predicate felony. | We continue to agree with the Shepherd rule that the corpus delicti of a felony murder does not include the predicate felony. The Shepherd rule is the required proof establishes the felony murder. See McArthur v. State, 789 So.2d 1190, 1194 Fla.Civ. App. 4 & 5 (Fla. Dist Ct. App. 2001) (collecting cases regarding the corpus delicti rule). Because the corpus delicti rule is not intended to produce a fair return on the fair value of the used and undisposed of a utility must bear a fair representative of both versions of the felony murder corpus delicti rule). 1 McCormick on Evidence * 146, at 612 (advocating for the minority rule but acknowledging that "[m]ost courts ... have held that the corroborating evidence need not tend to prove the predicate felony."). Courts that follow the majority rule do so for reasons that are also find compelling. | Does corpus delicti of a felony murder include the predicate felony? | 00784.docx | LEGALEASE 00081555-LEGALEASE 00081556 | Condensed, SA, Sub 0.77 | 0.77 | 0 | 1 | | | |
| 17824 | City of Pittsburgh v. Pennsylvania Pub. Util. Comm'n, 169 Pa. Super. 519 | 317A+100 | The property of a public utility is private property, but it is also property devoted to a public service and is impressed with a public interest. | The property of a public utility is private property, but it is also property devoted to a public service and is impressed with a public interest. United Railways & Electric Co. of Baltimore v. West, 280 U.S. 234, 50 S.Ct. 123, 74 L.Ed. 390. A public utility occupies a quasi-public or semi-public position, and the rate to be paid by the public for the service rendered, which are intended to produce a fair return on the fair value of the used and undisposed of a utility, must bear a fair relationship to this obligations which flow from such public status. Tunny case made, demoded, or meddled by such public utility. A * * * had ground and reasonable, and in conformity with regulations or orders of the commission. Section 310 of the Public Utility Law of May 28, 1937, P.L. 1053, as amended by the Act of March 21, 1939, P.L. 10, No. 11, * 3, 66 P.S. * 1141. The Commission may indicate its judgment as to proper scheduled of rates. See Pennsylvania Pub. Util. Co. v. Public Service Commission, 128 Pa.Super. 195, 221, 193 A. 827. | Is property of a public utility is private property? | 00182.docx | LEGALEASE 00159680-LEGALEASE 00159681 | Condensed, SA, Sub 0.86 | 0.86 | 0 | | 1 | | |
| 17825 | Romyn v. Shearson Lehman Bros., 644 F. Supp. 626 | 25T+418 | Claims under the Securities Act and the Securities Exchange Act were not subject to arbitration, despite provision in stock brokerage account agreements providing that any controversy arising out of accounts or transaction should be settled by arbitration, unless unenforceable due to federal or state law, which prohibited the waiver of the rights of Securities Act of 1933, 55 12(2), 15, 17, 15 U.S.C.A. §§ 77l(2), 77o, 77q. Securities Exchange Act of 1934, 55 10, 20, 29(a), 15 U.S.C.A. §§ 78j, 78t, 78cc(a). 15 U.S.C.A. 5 § 15-14. | Congress has afforded participants in transactions in its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration of the parties are willing to accept less certainty of legality, correct adjustment. On the other hand, it has enacted the Securities Act, and protection of rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements to arbitrate may provide for the solution of commercial controversies, we decided that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act. | Do the courts consider arbitration agreements arising under the Securities Act as invalid? | Alternative Dispute Resolution - Memo 271 - IR.docx | LEGALEASE 00208263-LEGALEASE 00208264 | Condensed, SA, Sub 0.25 | 0.25 | 0 | 1 | | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17826 | Kahwaioram v. Cingular Wireless LLC, 543 F. Supp. 2d 1124 | 25T+137 | The FAA, which applies to all written contracts involving interstate or foreign commerce, mandates that courts enforce written arbitration agreements according to their terms... | To determine whether there is a provision under the Federal Arbitration Act (FAA), the court must decide which state's law applies and whether, under the law of the appropriate state, the arbitration provision in the parties' contract is valid and enforceable. 9 U.S.C.A. § 1 et seq. | Does the Federal Arbitration Act apply to contracts involving foreign commerce? | Alternative Dispute Resolution -Memo 285-RK.docx | ROSS-003218369-ROSS-003218401 | Condensed, SA, 0.65 | | 0 | 1 | | 1 | |
| 17827 | State v. Hutter, 145 Neb. 798 | 203+525 | An historical approach seems necessary to secure an adequate discussion of the subject... | At common law and under statute dividing crime of murder into murder of first and second degrees, "murder" is unlawful killing of person with malice aforethought, either express or implied. | Are there different degrees of murder? | 05255.docx | LEGALEASE-00082106-LEGALEASE-00082107 | Condensed, SA, 0.89 | | 1 | | | 1 | |
| 17828 | State v. Rumble, 680 S.W.2d 939 | 203+530 | We begin with "murder" at common law... | At common law, a homicide was either murder or manslaughter. | Was homicide considered as either manslaughter or murder at common law? | Homicide - Memo 79-RK.docx | ROSS-003298312-ROSS-003298321 | Condensed, SA | 0.94 | | 1 | | | 1 |
| 17829 | Gibbs v. Chase, 10 Mass. 125 | 386+3 | To maintain trespass de bonis asportatis, it is sufficient to prove an unlawful exercise of authority by the party over the goods, against the will and to the exclusion of the owner... | Proof of any unlawful exercise of authority over goods will support trespass, although without force, or by an attachment, although there was no removal of the property. | Can an unlawful exercise of authority over the goods of another support an action for trespass? | 007966.docx | LEGALEASE-00119801-LEGALEASE-00119803 | Condensed, SA, 0.33 | | 0 | 1 | | 1 | |
| 17830 | Certified Abstract And Prof'l Employees Int'l Union, AFL-CIO, 612 F.3d 134 | 231H+1526 | We begin with the RLA, which must be read through the lens of the overall statutory scheme... | "If the grievances under the Railway Labor Act (RLA) company's refusal to extend time for him to obtain airline transport pilot certificate (ATP) was minor dispute that was required to be referred to arbitration under Railway Labor Act (RLA), even though his discharge for failing to timely obtain ATP was expressly declined non-grievable in collective bargaining agreement (CBA), where dispute over provisions of CBA allegedly violated. Railway Labor Act, § 2, 45 U.S.C.A. § 151a. | If the grievance under the Railway Labor Act (RLA) - mandatory arbitral mechanism are minor disputes, should those be resolved only through the RLA mechanisms? | Labor and Employment Memo 61 - VP.docx | ROSS-003297735-ROSS-003297736 | Condensed, SA, Sub 0.08 | | 0 | 1 | 1 | 1 | |
| 17831 | White v. Chrysler Corp., 421 Mich. 192 | 134+1 | We recognize the difficulty inherent in transforming the responsibility for the observance of job safety precautions... | A common-law cause of action should not be evolved solely or primarily to avoid a statutory limitation. | How do causes of action at common law evolve? | 00.0454.docx | ROSS-003319949-ROSS-003319951 | Condensed, SA, 0.88 | | 1 | | | 1 | |
| 17832 | Groves v. Dep't of Corr., 295 Mich. App. 1 | 30+3226 | This Court reviews de novo a trial court's decision to grant summary disposition. Maiden v. Rozwood, 461 Mich. 109, 118, 597 N.W.2d 817 (1999). Whether a party has standing is a question of law subject to review de novo. Manuel v. Gill, 481 Mich. 637, 642, 753 N.W.2d 48 (2008). Questions of statutory interpretation are also subject to review de novo. 481 N.W.2d 753 S.W.2d 48 | Whether a party has standing is a question of law subject to review de novo. | Is a party's standing for a question of law subject to review de novo? | Action - Memo 54 - MS.docx | ROSS-003313259-ROSS-003313266 | Condensed, SA, 0.8 | | 0 | 1 | | 1 | |

3143

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17833 | Diebem v. Schmidt, 104 Cal. App. 4th 645 | 366+1 | As its name suggests, the doctrine of equitable subrogation involves the court's equitable jurisdiction... | Doctrine of equitable subrogation | Does the doctrine of equitable subrogation involve a trial court's equitable jurisdiction? | 003558.docx | LEGALEASE_00019369 - LEGALEASE_00019380 | Condensed, SA | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 17834 | Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200 | 25T+229 | In 4/Arendick, this Court considered whether New York to called Garrity rule... | District court's decision to set aside arbitral decision awarding punitive damages... | Can arbitrators award punitive damages? | 003551.docx | LEGALEASE_00020041 - LEGALEASE_00020042 | Condensed, SA, Sub 0.3 | | 0 | 1 | 1 | 1 | 1 |
| 17835 | Zimmerman v. Al Jazeera Am., 246 F. Supp. 3d 257 | 237+23.1 | The next element of a defamation claim is publication, which requires... | Under Dist of Columbia law, "publication" is the communication of defamatory matter intentionally or by a negligent act to one other than the person defamed. | What is publication of a defamatory statement? | 002907.docx | LEGALEASE_00019921 - LEGALEASE_00019922 | Condensed, SA, Sub 0.85 | | 0 | 1 | 1 | 1 | 1 |
| 17836 | Milsev v. Dunklee, 460 F. Supp. 2d 366 | 386+7 | Trespass has four elements: (1) ownership or possessory interest in land; (2) invasion, intrusion or entry by the defendant... | Under Connecticut law, trespass requires a direct injury to the property by force. | Does trespass require a direct injury to the property by force? | Trespass - Memo 72 - TH.docx | ROSS-003297873 ROSS-003297872 | SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 17837 | Chamber of Commerce of U.S. v. N.L.R.B., 879 F. Supp. 2d 18 | 15A+1362 | To file when the agency's argument is single that a member need not vote in order to form part of the quorum... | Abstaining voter is counted in determining presence of a quorum | Is an abstaining voter counted when determining the presence of a quorum? | 002988.docx | LEGALEASE_00220500 - LEGALEASE_00220502 | Condensed, SA | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 17838 | McIver v. Islamic Republic of Iran, 727 F.3d 582 | 221+183 | Informed as we must be by that practice those before us is whether the embassy in Monrovia... | United States embassies are not within the territorial jurisdiction of the United States. | Are United States embassies within the territorial jurisdiction of the United States? | 002993.docx | LEGALEASE_00220505 - LEGALEASE_00220506 | Condensed, SA | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17839 | State v. McQuillen, 277 Mont. 397 | 135H+148 | Lack of consent is an element of sexual intercourse without consent but not an element of incest... | Defendant's conviction for sexual intercourse without consent and his adopted daughter, did not violate double jeopardy; incest was distinct and wholly separate offense from sexual intercourse without consent... | Is consent an element of incest? | Incest - Memo 67 - RK.docx | ROSS-003329619 ROSS-003329621 | Condensed, SA, Sub 0.37 | | 0 | 1 | 1 | 1 | 1 |
| 17840 | Darden v. State, 206 Ga. 311 | 211+17(3)(1) | Hull, however, involved evidence of the victim's prior unchaste conduct and such evidence. In this case, however, there was no evidence of that syndrome and the chastity or nonchastity of the victim is not relevant. Worth v. State, 183 Ga.App. 68, 70(4), 358 S.E.2d 251 (1987)... | Chastity or nonchastity of victim of statutory rape or incest is not relevant in criminal prosecution for those offenses; statutory rape and incest was not entitled to introduce evidence of sexual relations between victim and another. | Is the chastity of the victim relevant in a prosecution for incest? | 001020.docx | LEGALEASE_00120556 - LEGALEASE_00120557 | Condensed, SA, Sub 0.27 | | 0 | 1 | 1 | 1 | 1 |

Appendix D

3144

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17841 | Allwaste v. State, 136 Tex. Crim. 625 | 207+43.5 | Incest is an offense against a society in which both parties ordinarily engage with the same intent and purpose; hence both parties to the offense are principals and equally guilty, in determining whether force or threats are an accomplice, her conduct at the time of the act as well as subsequent thereto, her age, physical strength, and all the surrounding circumstances must be taken into consideration. In the case under consideration, the prosecutrix is a strong, healthy young woman, 18 years of age, while defendant is a man 65 years of age and in ill health. No force was employed, no physical resistance is shown, no outcry was made, and no complaint made to her father or the authorities who lived at the same home, or to her sisters, father, or grandmother, until her appearance revealed | Incest is offense against society in which both parties ordinarily engage | Is incest an offense against society? | Incest - Memo 74 - RK.docx | ROSS00101758-ROSS-00101759 | Condensed, SA, SA2 | 0.86 | 0 | | | | |
| 17842 | Winn-Dixie Stores v. Dolgencorp, 746 F.3d 1008 | 233+531 | Winn-Dixie's effort to squeeze a common law rule into the civil law falls because, in Louisiana, a lease contract is not a title document that can give rise to a real obligation. See Section 2-13 for list of such items. Under the civil law, a lease does not convey any real right or title to the property leased, but rather a personal right. Richard v. Hall, 874 So.2d 131, 141 (La. 2004). Winn-Dixie thus cannot enforce its grocery exclusions under Louisiana law because the lessee established only personal, not real property right. The leases containing the grocery exclusions are not title documents that can create a real obligation. See Leonard, 162 So.2d at 387 (refusing to find a covenant running with the land where a lease provision restricted operation of a competing filling station on adjoining property). Wolfe v. Shreveport Dev. Co., 228 So.2d 148 (La. App. 1969) (refusing to find a covenant running with the land when a lease provision prohibited the operation of other shoe stores in a shopping center); see also Sterling, 698 So.2d at 824 ("Although the contract in question stated that it was to "run with the land," it was in fact a personal contract between Duvon and the lessor because it affected the personal of Duvon and not a dominant estate."). In short, the district court did not err in concluding that Louisiana law does not recognize Winn-Dixie's grocery exclusions as real obligations running with the land. | In Louisiana, a lease contract is not a title document that can give rise to a real obligation, leases convey only a personal right. | Do leases create real obligation? | 00.0290.docx | LEGALEASE-00120477-LEGALEASE-00120478 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 17843 | McClennen v. Commissioner of Internal Revenue, 131 F.2d 165 | 289+937 | In the absence of a controlling agreement in the partnership articles the death of a partner dissolves the partnership. The articles here may differ and stay, with no possible dispatch, to wind up the partnership affairs, to conduct transactions begun before partner dies until finished, to collect the accounts receivable, to pay the firm debts, to convert the remaining firm assets into cash, and to pay in cash to the partners and the legal representative of the deceased partner the amounts shown by the accounts to be owing to each of them in respect of capital contribution and in respect of their share of profits and surplus. The representative of a deceased partner does not succeed to any specific partnership property. In substance the deceased partner's interest, to which his representative succeeds, is a chose in action, a right to receive in cash the sum of money shown to be due him upon a liquidation and accounting. These considerations may be the gist upon upon a theory of the partnership being an "entity". Cf. Learned-hand, J., in Re Samuels & Lesser, D.C. S.D.N.Y 1915, 207 F. 195, 198. The same substantive results are reached under the Uniform Partnership Act which, in this case, at least, proceeds on the aggregate theory. See Cook, The Uniform Partnership Act 7-Criticism, 28 Yale L. Rev., 762 (1919). That it, which has been a share of the profits and surplus, and the same in personal property." Regardless, a partnership the firm holds both real estate or personalty, See Mass. G. L. (1932 Ed.) c. 108A, Secs. 24, 25 and 26, in relative Sec. 10, 13, 37, 38(1), 40, 41. | In the absence of a controlling agreement in the partnership articles, the death of a partner dissolves the partnership. | Does a partnership get dissolved upon the death of a partner? | Partnership - Memo 81 - RK.docx | ROSS00029473-ROSS-00029474 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17844 | OCA v. Hodges, 615 F.Supp.2d 477 | 289+236(1) | In contrast, here, despite the IBA's disclaimer that the parties are intent to form a partnership, OCA's ability to control and manage the business for a term of 25 years shows that OCA had a investment in the practice beyond that of an independent contractor. Along with profit-sharing, co-ownership of a business is an indispensable requirement of a partnership. Commonwealth by Zimmerman v. Sklenar, 86 Pa. Cmwlth. 620, 486 A.2d 1015, 1020 (1985) (citing the Provident Trust Co. of Philadelphia v. Rankin, 333 Pa. 412, 5 A.2d 214 (1939)). Joint control of business decisions is a significant element in determining whether co-ownership exists. See J.William Calhoun & Maureen A. Sullivan, Partnership Law & Practice § 5:13 (2008). Here, OCA has extensive control in managing the practice's business. OCA controlled the practice's finances (BSA at ¶ 1.2(7)-(11) and all disbursements from the practice's bank account. (BSA at ¶ 2.1). OCA had numerous other managerial responsibilities under the BSA. OCA was responsible for employing office staff and administering the practice's payroll. (BSA at ¶ 2.3 and 2.10). OCA was also responsible for providing and maintaining office space and furnishings, marketing, and managing the owner's inventory and supplies. (BSA at ¶ 2.1, 2.5, 2.8). OCA handled all bookkeeping tasks for the practice and all billing and collections. (BSA at ¶ 2.10). It maintained the insurance for the Center premises and equipment (BSA at ¶ 5.2) and had the power to negotiate leased and managed contracts on behalf of the organization on behalf of the practice. (1997 Amendment to BSA at ¶ 1). OCA leased the practice's office space and equipment. (BSA at ¶ 2.1, 2.5). OCA required the practice to maintain the furniture and equipment for the office. (BSA at ¶ 2.2). OCA managed the practice's "a full time, active orthodontic practice." (BSA at ¶ 1.7). OCA also restricted the orthodontist's ability to compete. (BSA at ¶ 5.13). | Along with profit sharing, co-ownership of a business is an indispensable requirement of a partnership under Pennsylvania law. | Is co-ownership of a business an indispensable requirement of a partnership under Pennsylvania law? | Partnership - Memo 83 - 86.docx | ROSS-003002624-ROSS-003002827 | SA, Sub | 0.94 | 0 | | | 1 | |
| 17845 | Matter of Udell, 18 F.3d 403 | 15+2825 | Equitable relief is the exception rather than the rule and will not be granted where there is an adequate remedy at law. Where the equitable remedy sought is to place the charge payment a bird, on the other hand, equate that a right to an equitable remedy, right to remedy is a "claim" whenever the breach of performance also gives rise to a right to a monetary payment. Cannot, even over that where a separate remedial purpose from the equitable remedy. We must decide whether ... § 101(5) requires us to decide whether the equitable and the legal remedies beyond the fact that both remedies arise from the same breach. | Right to equitable remedy for breach of performance qualifies as a "claim," within meaning of Bankruptcy Code, if same breach also gives rise to right to payment "with respect to" equitable remedy; right to payment must be an alternative to the right to equitable remedy, or otherwise related to the right to equitable remedy. Bankr.Code, 11 U.S.C.A. § 101(5). | Can a party obtain an equitable remedy for which a remedy is necessary? | 003559.docx | LEGALEASE-00120370-LEGALEASE-00120371 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | |
| 17846 | N. Tr. Co. v. Consol Elevator Co., 142 Minn. 132 | 366+1 | Appellant's first contention is that contends that the original holders of the storage receipts had a right of action against respondent for the conversion of their grain, and that they became subrogated thereto. We are not now concerned with the rights of appellate as against the Eaton Company. Those rights have been asserted in the action which resulted in the recovery of a judgment against it. If respondent is liable to appellant at all, liability must arise through some application of the rule whereby a surety who has made good the default of the principal is subrogated to the rights and remedies of creditors of the principal against third parties. The doctrine of subrogation is of purely equitable origin and nature. Whether a case for its application arises in favor of a surety as against third persons depends upon the balance of equities between them and the surety. It does not arise where the result would be unjust to an innocent purchaser. The subject of subrogation is to place the charge where it ought in equity to fall, and it will never be enforced when the equities are equal or the rights not clear. The right may be modified or extinguished by contract. If respondent is liable for the debt for whose purpose we be... something must be shown that the defendant could have been compelled by the original creditor to pay the debt, if appellant paid the debt against one whose duty it was to pay, otherwise in no contractual relations, it must appear that the defendant participated, with others, in the illegal act of the principal which served to bring about the loss, the right to recover from a third person does not arise from the same feeling as the right to recover from the principal. As to the latter, it is not sufficient to establish liability that the defendant could have been compelled to... find support in the following cases: Ahern v. Freeman, 46 Minn. 156, 48 | Doctrine of subrogation is of purely equitable origin and nature. In subject is being to place a charge where it ought to rest, by compelling payment by a debt by him who ought it equity to pay it. | Is the doctrine of subrogation of equitable origin and nature? | 003668.docx | LEGALEASE-00120448-LEGALEASE-00120449 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | |
| 17847 | Start Int'l Co. v. United States, 106 Fed. Cl. 50 | 148+2.10(7) | From the time of Dolan, this court had been unable to indicate that the rough proportionality test was appropriate in instances of raw use exactions applied to cases outside the land use exaction context. In the lead opinion in Lingle v. Chevron, the Supreme Court observed that "[b]oth Nollan and Dolan involved Fifth Amendment takings challenges to adjudicative land-use exactions—specifically, government demands that a landowner dedicate an easement allowing public access to her property as a condition of development..." Id. at 702. The court noted that the rough-proportionality test of Dolan [had] not been extended this standard beyond the special context of exactions—land-use decisions conditioning approval of development on the dedication of property to public use." 544 U.S. 487, 702, 125 S.Ct. 1624, 161 L.Ed.2d 832 (1995) (internal citations omitted). Del Monte Dunes had brought a similar regulatory takings claim where "the city, in a series of repeated rejections, denied its proposals to develop a parcel of land, each time imposing more rigorous demands on the developers. "Id. at 699, 794, 119 S.Ct. 1624. In that context the Court explained that the rule applied in Dolan "was not designed to address, ... the much different questions arising where, ... the landowner's challenge is based on excessive exactions but on denial of development." Id. at 702, 119 S.Ct. 1624. Thereafter, in Lingle, Chevron, the Supreme Court observed that "[b]oth Nollan and Dolan involved Fifth Amendment takings challenges to adjudicative land use exactions... 544 U.S. 528, 544 S.Ct. 1624, 161 L.Ed.2d 832 (2005) (quoting Del Monte Dunes, 526 U.S. at 702, 119 S.Ct. 1624). | Rough proportionality test used in connection with takings claim based on excessive exactions rather than denial of development. In the land use exaction context, to land use exactions, and does not apply in context of monetary exactions. U.S.C.A. Const.Amend. 5. | Under what circumstances does the rough proportionality test apply? | Eminent Domain - Memo 162 - RK.docx | ROSS-003001423-ROSS-003001423 | Condensed, SA, Sub | 0.84 | 0 | | | 1 | |
| | | | | | | | | | | | | | | 3146 |

| | | | | | | Length Differential between Judicial Opinion Text and Headnote | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 17848 | City of Brownsville v. Pub. Util. Comm'n of Texas, 616 S.W.2d 402 | 317A+1102 | The caption of the Utility Regulation Act does not specifically refer to utility services or Boards other than municipalities… | Public Utilities Regulatory Act was not invalid insofar as it purported to extend the jurisdiction of the Public Utilities Commission to municipally owned public utilities… | Does the caption of the Utility Regulation Act relate to the regulation of public utilities? | 003521.docx | LEGALEASE 00120397 LEGALEASE 00120898 | Condensed, SA, Sub | 0.71 | | | 0 | | | 1 | 1 |
| 17849 | City of Dallas v. OCI Asset Mgmt., 345 S.W.3d 199 | 148+2.2 | OCI argues that the supreme court's analysis in Holland should not apply in instances of real property, citing two cases from Austin in which petitioners had lost property… | City was acting under color of right, rather than pursuant to its power of eminent domain, when it asserted claim of ownership to real property… | Is the State's intentional act of taking property for public use an exercise of it eminent domain powers? | Eminent Domain - Memo 150 - RA.docx | ROSS-003284700-ROSS-003284702 | Condensed, SA, Sub | 0.62 | | | 0 | | | | 1 |
| 17850 | Borcheck v. Walgreen Co., 18 F. Supp. 2d 965 | 23+1002(2) | Borcheck claims that Walgreens defamed her by accusing her of theft. The elements of defamation are 1) a communication with defamatory imputation… | Under Indiana law, if a communication's defamatory nature need not be specially pleaded or proved, and malice will be implied. | When is malice implied in an action for defamation? | Libel and Slander - Memo 160 - RK.docx | ROSS-003204583-ROSS-003204584 | SA, Sub | 0.78 | | | 0 | | | | 1 |
| 17851 | State ex rel. Utilities Comm'n v. Edmisten, 291 N.C. 327 | 92+835.73 | Another way for the Utilities to become effective without a hearing fix and nature of the Commission to render the rate change… | Utilities Commission's interim ex parte order which authorized fossil fuel adjustment clause to be placed into effect by electric utilities on an interim basis pending further hearing and final determination did not violate constitutional due process requirement of notice and an opportunity to be heard… | Why was General Statutes 162135 enacted? | Public Utilities - Memo 66 - AM.docx | ROSS-003291364-ROSS-003291367 | Condensed, SA, Sub | 0.54 | | | 0 | | | 1 | 1 |
| 17852 | Transamerica Ins. Co. v. Barnes, 29 Utah 2d 101 | 365+1 | Equitable principles apply to subrogation, and the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the insured… | Subrogation is not a matter of right but may be invoked only in those circumstances where justice demands its application. (Per Callister, C. J., with one Justice concurring and one Justice concurring in the result.) | Is subrogation permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it? | 043938.docx | LEGALEASE 00121001 LEGALEASE 00121002 | Condensed, SA, Sub | 0.78 | | | 0 | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17853 | PM Farms v. Young, 233 F. Supp. 3d 798 | 23+3.2 | Generally, subject to good faith exemption, a person is ineligible for USDA program benefits if the person produces an agricultural commodity in a field in which highly erodible land is predominant, unless the commodity is produced in compliance with an approved conservation plan or system. 16 U.S.C. § 3811(a); 12 C.F.R. §§ 12.4(d), 16.4(b). The NRCS is charged with determining whether an agricultural commodity is predominant in a field, and will make that determination in response to a written request on form AD-1026. 12 C.F.R. § 12.6(a)(2)(iii), (4). PM Farms' corporate predecessor, Verns Young, made such a request in 1990 as a result of which it was determined that then-field numbers 3, 4, 10 and 13 (holding 597.5 acres were not HEL) (Id. 784) | Administrative proceeding (in connection with farmer's violations of regulations governing highly erodible land (HEL)) arising from not following approved conservation plan did not violate farmer's due process rights, where before inspection of any graduated law reduction (GPR) penalty, farmer was informed of alleged violation, and farmer had meaningful opportunities to challenge, including requesting reconsideration, appealing to Farm Service Agency (FSA), seeking good faith relief, appealing to National Appeals Division (NAD) of United States Department of Agriculture (USDA), and exercising right to judicial review. U.S. Const. Amend. 5; 7 C.F.R. § 12.6(c)(9). | When is a person ineligible for USDA program benefits? | 000747.docx | LEGALEASE-00121753-LEGALEASE-00121752 | Condensed, SA, Sub 0.11 | | 0 | 1 | 1 | 1 | 1 |
| 17853 | Companion Over Killing v. U.S. Food & Drug Admin., 849 F.3d 849 | 23+3.1(3) | The AMS correctly concluded that it lacks the authority to promulgate mandatory labeling requirement for shell eggs. The relevant grant of authority in the AMA only authorizes the AMS "[t]o develop and improve standards of quality, condition, quantity, grade, and packaging, and recommend and demonstrate such standards in order to encourage uniformity and consistency in commercial practices." 7 U.S.C. § 1622(c) (emphasis added). There is no indication from this statutory language that Congress intended to authorize the AMS to promulgate mandatory labeling requirements for shell eggs. And, contrary to Plaintiffs' contention, the APA does not supply independent authority for the AMS to promulgate such regulations. Plaintiffs sued the FDA for failing to promulgate the mandatory regulations Plaintiffs have proposed by petitioning the agency under the APA. See 5 U.S.C. § 553(c). The FDA responded to Plaintiffs' petition, determined that it lacks the authority to promulgate mandatory labeling requirements for shell eggs. | Agricultural Marketing Service (AMS) did not act arbitrarily or capriciously, in violation of the Administrative Procedure Act (APA), in denying petition submitted by organizations that advocate for animal rights and individual egg consumers, requesting that AMS promulgate regulations requiring all egg cartons to identify conditions in which the egg laying hens were kept during production; AMS lacked authority to promulgate mandatory labeling requirements for shell eggs under the Agricultural Marketing Act (AMA). 7 U.S.C.A. § 1622(c). | What does the Agricultural Marketing Act (AMA) authorize the Agricultural Marketing Service (AMS) to do? | 000571.docx | LEGALEASE-00121747-LEGALEASE-00121748 | Condensed, SA, Sub 0.54 | | 0 | 1 | 1 | 1 | 1 |
| 17855 | Tilton v. Reclamation Dist. No. 800, 142 Cal. App. 4th 848 | 148+2.17(5) | But perhaps the closest case factually to the present case identified by the parties is Bauer v. County of Ventura (1955) 45 Cal.2d 276, 289 P.2d 1 (Bauer). In Bauer, the plaintiffs sued a flood control district (District) and the County of Ventura (County) for a private nuisance and inverse condemnation. (Id. at pp. 280-281.) The plaintiffs alleged that a levee system constructed by the County was the "probable proximate cause" of flooding that occurred during a storm. One of this court, in that case, the plaintiffs' greenhouse and plant nursery suffered substantial damage when the levee overtopped by the defendant flood control district along Alameda Creek suffered a 40' foot breach in December 1955. The plaintiffs notified the defendant district of the breach, and the trouble of excess flood water on their property was caused by the water diversion to other landowners and the resulting damage caused by the water diversion. Although the appellate court sustained their negligence count when the law was inapplicable to such courts, (it held that the plaintiffs could have a claim of the trespass, negligence and inverse condemnation, stating: "The most recent cases have made a distinction between negligence which occurs where a public works is properly or currently maintained in a deliberate plan of negligence in the construction of public works, and negligence resulting from improper plan or lack of maintenance of the public works, which cases hold that the damage resulting from the former type of negligence is compensable under article I, section 14, whereas damages resulting from the second type of negligence are not recoverable in an inverse condemnation proceeding, but are recoverable, if at all, only in a common law action for damages caused by acts of contumacious or negligent conduct." (Id. at p. 285.) | Damage to real property is allegedly caused by negligence of reclamation district in maintenance of levees did not constitute "taking" that would support inverse condemnation; art X § 9083 does not apply, Cal. Const. Art X, § 5 19. | Can a property owner recover in an inverse condemnation proceeding for damages caused by an act of carelessness or negligence on the part of a public agency? | 017608.docx | LEGALEASE-00121465-LEGALEASE-00121466 | Condensed, SA, Sub 0.89 | | 0 | 1 | 1 | 1 | 1 |
| 17856 | Matter of Elk'u Comm'n of Ky. of Acquittee, 89 S.F.2d 9352 | 307A+2 | C.R.C.P. 54(a) provides that a judgment entered under the rule after the trial required pleading, with or without supporting affidavits, a motion for determination of a question of law if there is no genuine issue of material fact necessary for the determination of the question of law, the court may enter an order deciding the question. The purpose of Rule 56(h) is, to allow the court to address issues of law which do not decide claim but will have significant impact on litigation. Rules Civ. Proc., Rule 56(h). The provision is thought to be desirable by the parties. | Purpose of rule authorizing court to enter order determining question of law is to allow court to address issues of law which do not decide claim but will have significant impact on litigation. Rules Civ. Proc., Rule 56(h). | What is the purpose of a 56(h) motion? | ROS5+000119 432-ROS5-00032 543 | Pretrial Procedure - Memo #4 - C - SU.docx | | Condensed, SA, Sub 0.76 | | | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 17857 | Union Planters Bank, N.A. v. FT Mortg. Companies, 341 Ill. App. 3d 921 | 366e17 | There are two types of subrogation: (1) conventional or contractual subrogation, which arises from an agreement between the parties, and (2) legal or equitable subrogation, which arises by operation of law. | There are two types of subrogation "conventional" (or contractual) subrogation and legal (or equitable) subrogation… | Are the two types of subrogation conventional and equitable? | Subrogation - Memo 461 - C - NO.docx | ROSS-003024450-ROSS-003034451 | 5A, 5ab | 0.93 | 0 | | 1 | 1 | |
| 17858 | Bel Air & Briney v. City of Kent, 190 Wash. App. 166 | 366e1 | Subrogation is an equitable remedy, and is founded in the facts and circumstances of each particular case. | Subrogation is "an equitable remedy"… "and is founded in the facts and circumstances of each particular case."… | Does equitable subrogation depend on the facts and circumstances of each case? | 043674.docx | LEGALEASE-00212247-LEGALEASE-00212249 | Condensed, 5A | 0.91 | 1 | 0 | | 1 | |
| 17859 | Cont'l Cas. Co. v. Ryan Inc. E., 974 | 366e1 | Equitable (sometimes referred to as legal) subrogation arises by operation of law. | Unlike conventional subrogation, which is created by an express agreement, equitable (sometimes referred to as legal) subrogation arises by operation of law… | Does subrogation arise by operation of law or agreement? | Subrogation - Memo # 463 - C - SA.docx | ROSS-003297074-ROSS-003297075 | Condensed, SA | 0.9 | 1 | 0 | | 1 | |
| 17860 | Irre N. Am. Rubber Thread Co., 333 B.R. 164 | 366e1 | Doctrine of equitable subrogation is available when there is no express subrogation agreement. | The doctrine of equitable subrogation is available where there is not an express contractual subrogation… | Is the doctrine of equitable subrogation available when there is no express subrogation agreement? | Subrogation - Memo # 499 - C - NO.docx | ROSS-003310040-ROSS-003310043 | Condensed, SA, 5ab | 0.94 | 1 | 0 | | 1 | |
| 17861 | Dixon v. Schmidt, 104 Cal. App. 4th 645 | 366e1 | Doctrine of equitable subrogation involves a court's equitable jurisdiction. | Doctrine of equitable subrogation involves the court's equitable jurisdiction. The doctrine applies to a variety of circumstances where a party pays the debt of another. | Does the Doctrine of equitable subrogation involve a court's equitable jurisdiction? | Subrogation - Memo # 637 - C - SA.docx | ROSS-003288012-ROSS-003288013 | Condensed, 5A | 0.88 | 1 | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 17862 | E. Sav. Bank, FSB v. Papageorge, 31 F. Supp. 3d 1 | 38k41 | "Chattel," for purposes of trespass to chattels under District of Columbia law, includes personal property, but not money. | A defendant commits a trespass to a chattel by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Hemlani & Offshore Transp., LLC v. United States, 564 F. Supp.2d 201, 212, n.11 (D.C.2008) (citing Pearson v. Dodd, 410 F.2d 701, 707, n.10 (D.C.Cir.1969)). The definition of chattel includes real or personal property, monies—a defendant. See, Black's Law Dictionary (9th ed 2009) (defining "chattel" as moveable or transferable property and noting "[t]hat money is not to be accounted Goods or Chattels, because it is not of permanent value... Chattels as either personal or real." (quoting Thomas Blount, Nomo-Lexicon: A Law-Dictionary (1670)). The allegation that the defendants "interfered and intermeddled with [the plaintiff's use and enjoyment of its funds that were intended for [the plaintiff's business purposes]" are the plaintiff's business reputation and goodwill." (compl." 16) (emphasis added). In other words, the plaintiff grounds a claim on interference with its use of its funds in its intangible reputation, neither of which are "chattels." Since the plaintiff has not identified a "chattel" that was trespassed upon by the defendants... | Is personal property included within the meaning of chattel for the purpose of trespass to chattel? | 047354.docx | LEGALEASE 00121366-LEGALEASE 00121368 | Condensed, SA, Sub 0.9 | | 0 | 1 | 1 | 1 | 1 |
| 17863 | Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110 | 83k174 | The Supreme Court reserved both holdings: Because the FAA established a federal policy favoring arbitration. McMahon, 482 U.S. at 226, 107 S.Ct. at 2337, the Court stated that federal courts must enforce arbitration agreements in a variety of contexts. Th[e] duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded upon statutory rights. As we observed in Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "[w]e are well past the time when any judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals" should inhibit enforcement of the Act." In controversies based on statutes... | Pension plan trustees waived argument that they could not have intended to submit statutory ERISA claims to arbitration since those claims were not arbitrable at time of signing agreement; trustees did not raise argument before district court, and manifest injustice would not result since trustees were assured of an arbitral forum. | Does a district court's duty to enforce an arbitration agreement diminish when a party to the agreement asserts a statutory claim? | 007084.docx | LEGALEASE 00122428-LEGALEASE 00122430 | Condensed, SA, Sub 0.14 | | 0 | 1 | 1 | 1 | 1 |
| 17864 | Leahy v. Haworth, 141 F. 850 | 83k174 | | There is abundant authority for the effect which we give to the indorsement in question. In Markey v. Corey, 108 Mich. 184, 636 N.W. 455, 32 L.R.A. 915, 62 Am.St.Rep. 698, the court, after considering at great length many conflicting authorities, held that the following indorsement on the back of a note, namely: "For value received, I hereby indorse and guaranty the payment of Matthew M. Markey and Catherine Sunden": was a good commercial indorsement, subjecting the payee who signed the same to the liability of indorser. In Adams v. Thomas, 80 Mich. 263, 114 Am.St.Rep. 547, it is held that a defendant, the payee of a negotiable note who wrote and signed his own name on the back of the note, under the words "for value received," and delivered it to Catherine M. Adams, the with out, "thereby assumed all the liability of an indorser." The court there says: "The defendant declares that he signed and delivered the note, and by reason of such writing undertook and impliedly says the same thing by his indorsement. The defendant did not and deliver the note, only upon the note to the plaintiff according to its terms, upon reasonable notice..[f]he maker did not pay it." | A written assignment on the back of a promissory note payable to the order of the payee, signed by such payee, is the equivalent of a blank indorsement to transfer title to the note free from equities, other under the law merchant or Comp.St.Neb.1901, § 5580, which provides that "all bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or assigns, shall be negotiable by indorsement thereon so absolutely to transfer and vest the property thereof in each and every indorsee successively," and under such negotiable note constitutes an indorsement with an enlarged liability, and transfers the legal title free from equities existing between the maker and payee. | Does the payee of a negotiable note who signed his name on the back of the note assume liabilities? | 009554.docx | LEGALEASE 00122336-LEGALEASE 00122338 | Condensed, SA, Sub 0.28 | | 0 | 1 | 1 | 1 | 1 |
| 17865 | United States v. Miller, 317 U.S. 369 | 148k131 | | Since the owner is to receive no more than indemnity for his loss, his award cannot be enhanced by his gain to the taker. Thus although the market value of the property is to be fixed without reference to all its constitue[nt] uses, its special value to the condemnor as distinguished from others who may not possess the power to condemn it must be excluded as an element of market value. The district judge so charged the jury and no question is made as to the correctness of the instruction. | Can the award be enhanced by any gain to the taker under the takings law? | 017410.docx | LEGALEASE 00122350-LEGALEASE 00121591 | Condensed, SA, Sub 0.75 | | 0 | 1 | 1 | 1 | 1 |
| 17866 | Miko's Contracting v. United States, 92 Fed. Cl. 302 | 148k42 | | Miko's Contracting alleges to Count One of the complaint that its rights under its AAA policy change and resulting suspension of the airworthiness certificate of a helicopter owned by the plaintiff. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S.Const. amend. V. "Real property, tangible property, and intangible property, all may be the subject of takings claims". Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 854 (Fed.Cir.2009) (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019 FN.15, 113 S.Ct. 2886, 120 L.Ed.2d 798 (1992). This case concerns an alleged regulatory taking. | Real property, tangible property, and intangible property, all may be the subject of fifth Amendment taking claims, U.S.C.A. Const Amend 5. | Real, tangible and personal property protected by taking clause? | 007644.docx | LEGALEASE 00122229-LEGALEASE 00122230 | SA, Sub 0.87 | | 0 | | | 1 | |

3150

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17867 | Koeltzsch v. State, 61 N.J. 214 (241) | 203v1404 | Moreover, Koeltzsch bases his fundamental error argument on the omission of the phrase "or intentionally" from the definition of murder. However, even if this phrase had been included, Instructions 8 and 9 would not have been in turn, provided a fair. Because murder and attempted murder are no longer subject to the same level of culpability. In other words, Instruction 9 tracked the language of Indiana Code Section 35-41.5-1(a), which defines a criminal "attempt," and while the language is accurate concerning an attempt to commit other offenses, it is no longer accurate when the attempted offense is murder. As such, we believe that in cases where a conviction for attempted murder is a possible outcome, the best practice would be to either not give Instruction 9 or, if necessary because of other possible errors/crimes, to supplement the attempt instruction with a statement that to convict a person of attempted murder, the State must prove that he/she acted with the specific intent to kill the victim. | Language in instruction, which included general, statutory definition of an "attempt," to convict one offense, stating that the culpability necessary to prove an attempt was the same level as was required for the offense itself, was not an accurate statement when the attempted offense was murder, given that murder and attempted murder were not subject to the same level of culpability. West's A.I.C. 35-41.5-1(a); 35-42-1-1(1). | Are murder and attempted murder subject to the same level of capability? | 035919.docx | LEGALEASE-00122458-LEGALEASE-00122459 | Condensed, SA | 0.57 | 0 | | | 1 | |
| 17868 | Others First v. Better Bus. Bureau of Greater St. Louis, 829 F.3d 576 | 237v1(1) | "Corp also said it appears that a former associate of Frazier, and perhaps even Frazier himself, may have potential conflicts of interest over their involvement in the Others First donation program." Alleging a conflict of interest over undisclosed defamatory facts. See Dane v. Partner, 918 S.W.2d 673, 679 (Mo. App. 1996) (allegations of illegal conduct are not defamatory opinions); Kelly v. Emery, 368 Fed.Appx. 861, 865 (11th Cir. 2009) (classifying conduct as "unethical" as conflict of interest" was protected opinion). The statement was presented as opinion, couched in the conditional phrases "appears," "perhaps," "may," and "potential." See Ribando v. Basso, 528 S.W.2d 910, 918 (Mo. App. 1996) ("[T]he average reader would have believed the statements were opinion" because of their "qualifying language.") The Corp's Free Press article provided a basis for Corp's "conflict of interest" opinion, reporting that the charity officials were prohibited by federal law from derogatoryreasonable personal gain from their involvement with their charity."Statement's was non- defamatory opinion as a matter of law. | Alleging a conflict of interest is not defamatory under Missouri law unless it implies undisclosed defamatory facts. | Are allegations of conflict of interest defamatory? | Uiel and Streeter - Memo 186 - WP.docx | ROSS-000306641-ROSS-000306642 | SA Sub | 0.9 | 0 | | 1 | | |
| 17869 | Harris v. Wallette, 538 So.2d 728 | 289v451 | Whether the parties have used the word "partnership" is immaterial in determining whether their enterprise is a partnership. Marir v. Savoie, 435 So.2d 523 | Whether parties have used the word "partnership" in determining whether their enterprise is a partnership. | If the parties do not use the words partners or partnership, will that affect the existence of the partnership? | 021813.docx | LEGALEASE-00122471-LEGALEASE-00122472 | Condensed, SA | 0.31 | 0 | 0 | 0 | 1 | 0 |
| 17870 | Guerr v. Central R.R., 74 Ga. 509 | 101v2253 | "The power to form a partnership is not only not among the powers granted expressly or by reasonable implication, but is wholly inconsistent with the scope and nature of the powers expressly conferred, and the duties expressly imposed upon a corporation by the legislation of the commonwealth." | The powers of a corporation are limited and fixed by the act of incorporation, and besides the powers thus specially granted, it has those which are common to all corporations. The power to form a partnership is not one of these which is common to all corporations, and where the charter of a railroad conferred no such power upon it, it had no authority to enter into a partnership with a natural person to run a line of boats and carry passengers, and its acts and contracts pertaining to the business of such an association are invalid as against the firm and the corporation as a member thereof, and it is not liable to an action for a tort arising from a breach of duty created by a contract of such a firm. | Do corporations have the power to become members of a partnership? | 021826.docx | LEGALEASE-00122487-LEGALEASE-00122488 | Condensed, SA, Sub | 0.59 | 0 | | 1 | | |
| 17871 | In re Koreneman, 155 B.R. 197 | 289v553 | Under the Uniform Partnership Act, 6 V.A. 805 ILCS 205/1 et seq, a partner's interest in a partnership is a personal property interest consisting of "his share of the profits and surplus." Id. "25. See, e.g. In re Rexford, 777 F.2d 1281, 1283 (7th Cir. 1985). Although partners have rights in specific partnership property as tenants in partnership, 6 V.A. 805 ILCS 205/25, the incidents of this tenancy are so restricted that a partner has no right to possess partnership property except for partnership purposes and creditors of a partner cannot reach this partnership property. In re Matonovic Group, Inc., 46 B.R. 222, 224*25 (S.D.N.Y. 1985); In re Decker, 295 B.R. 755, 758 (Bankr.D.Colo.1994); aff'd, 83 F.3d 205 (10th Cir.1997). Moreover, partners' rights in partnership property are secondary to the rights of partnership creditors. 6 V.A. 805 ILCS 205/40; "Until the creditors of the partnership are satisfied, no partner has rights to any distribution from the partnership." In re Olszewski, 124 B.R. 743, 746 (Bankr. S.D.Ohio 1991) (quoting Johnson v. Investment Leasing, Inc.[In re Johnson], 6 B.R. 231 (Bankr.S.D.Ohio 1991). | Under Illinois law, partners' rights in partnership property are secondary to rights of partnership creditors; until creditors of partnership are satisfied, no partner has rights to any distribution from partnership. | Are partners' rights in a partnership property secondary to the rights of partnership creditors? | 021865.docx | LEGALEASE-00122526-LEGALEASE-00122527 | Condensed, SA, Sub | 0.81 | 0 | | | 1 | |
| 17872 | McGuire v. City of Fargo, 66 N.W.2d 207 | 302v214(4) | "Legal conclusions or inferences of fact which are not presumed or which may not be reasonably or necessarily inferred from the facts alleged are not admitted by the demurrer." Sheldon v. Rockwell, 9 Wis. 166, 173; Marie R. R. Co., 69 N.D. 1096, 1102, 194 N.W. 741, 743. See also Tacoba v. City of Hydroplane, N.D., 62 N.W.2d 131, 136; Consolidated Freightways, Inc. v. Lamb, 73 N.D. 199, 133 N.W.2d 74; City of Fargo v. Salem, 70 N.D. 341, 346, 294 N.W.2d 455; Welch v. State Board of Higher Education, 71 N.D. 309, 76 N.W.2d 619; King v. Baker, 69 N.D. 581, 288 N.W. 565, 125 A.L.R. 730. | A demurrer does not admit inferences or conclusions of which may not be reasonably or necessarily inferred from the facts alleged and are not admitted by the demurrer. | Does a demurrer admit the inferences or conclusions from the facts alleged in the complaint? | Pleading - Memo 132 - RMM.docx | LEGALEASE-00202020-LEGALEASE-00202021 | Condensed, SA | 0.82 | 0 | | 0 | 1 | |

Appendix D

3151

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17873 | Single v. Larry Fowler Trucking, 395 S.W.3d 280 | 30×205 | We review a trial court's decision regarding the admissibility of evidence, including a ruling on a motion in limine, under an abuse of discretion standard. Taylor v. Robinette, 178 S.W.3d 124, 137 (Tenn.Ct.App.2004) (citing Heath v. Memphis Radiological Prof'l Corp., 79 S.W.3d 550, 558 (Tenn.Ct.App.2002)). A trial court abuses its discretion when it "causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical result, (3) resolving the case on a clearly erroneous assessment of the evidence, or (4) rely[ing] on reasoning that causes an injustice." Gonsewski v. Gonsewski, 350 S.W.3d 99, 105 (Tenn.2011) (citing Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 176 (Tenn.2011); Henderson v. SAIA, Inc., 318 S.W.3d 328, 335 (Tenn.2010)). In other words, although a ruling on a motion in limine are within the discretion of the trial court, "[d]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." State v. Lewis, 235 S.W.3d 136, 141 (Tenn.2007) (quoting Martha S. Davis, Standards of Review: Judicial Review of Discretionary Decisionmaking, J. App. Prac. & Process 47, 58 (2000)) citations and internal quotation marks omitted). We are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." Caldwell v. Hill, 250 S.W.3d 865, 869 (Tenn.Ct.App.2007). | Although plaintiff driver, who was not seated by defendant driver, did not make a separate offer of proof, there was sufficient evidence in the record from which appellate court could determine the trial court's reasoning in granting defendant's motion in limine to exclude deposition testimony of plaintiff's medical expert and whether court's ruling was erroneous, given that the appellate record contained the deposition of plaintiff's medical expert, the motion in limine, and the trial court order on the motion, substance of the evidence and the specific evidentiary basis supporting admission or exclusion were apparent from the context. Rules of Evid., Rule 103(a)(2). | Although a ruling on motions in limine are within the discretion of the trial court, are discretionary choices left to a court's inclination? | Pretrial Procedure – Memo # 186 C – NE.docx | ROSS-00328263 ROSS-00328263 | Condensed, Order, SA, Sub | 0.55 | 1 | 1 | 1 | 1 | 1 |
| 17874 | Jakobsen v. Colonial Pipeline Co., 237 Ga.App. 441 | 307H×3 | Here, Jakobsen claims that the trial court erred in admitting evidence of the appraisal because the court had previously granted a motion in limine to exclude the evidence. However, "a trial court can modify a ruling on a motion in limine." Nelson v. State, 217 Ga.App. 691, 697(9)(b)(iii), 458 S.E.2d 872 (1995). Thus, Jakobsen's claim of error lacks merit. | Trial court has modify a ruling on a motion in limine. | 018148.docx | LEGALEASE-00122125-LEGALEASE-00122126 | Condensed, SA | 0.85 | | 1 | | 1 | |
| 17875 | Bilovv v. Young, 665 S.W.2d 556 | 307H×3 | The record contains no order granting a motion in limine. Even if such an order was before this Court, the granting or overruling of such motion would not, in and of itself, constitute reversible error. Hartford Accident & Indemnity Company v. McCardell, 369 S.W.2d 331 (Tex.1963); Redding v. Ferguson, 501 S.W.2d 717, 722 (Tex.Civ.App.Fort Worth 1973, writ ref'd n.r.e.). The purpose of a motion in limine is to avoid the injection into the trial of matters which are irrelevant, inadmissible and prejudicial and its granting of a motion in limine is not a ruling on the evidence. Wilkins v. Royal Indemnity Company, 592 S.W.2d 64, 66 (Tex.Civ.App.Tyler 1979, no writ). | Granting of a motion in limine is not a ruling on the evidence. | 04212.docx | ROSS-00328715×3-ROSS-00329536 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | 0 |
| 17876 | Fed. Ins. Co., on Indiana Corporation v. Hartford Steam Boiler Inspection & Ins. Co., 415 F.3d 487 | 366×1 | We first decide the issue of whether Federal is a volunteer. If so, Federal is not entitled to equitable subrogation. Equitable subrogation is a "legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." In re Leuns, 398 F.3d 735, 747(6th Cir.2005). (citations omitted) (construing Michigan law). Equitable subrogation is a "flexible, elastic doctrine of equity." Hartford Accident & Indem. Co. v. Used Car Factory, Inc., 461 Mich. 210, 215, 600 N.W.2d 630 (1999). Before granting equitable subrogation, courts should conduct an analysis based on equity jurisprudence and proceed on a case-by-case basis. Id. | Equitable subrogation is a flexible, elastic doctrine of equity. | 043142.docx | LEGALEASE-00122793-LEGALEASE-00122793 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 0 |
| 17877 | In re Core Construction, 260 B.R. 302 | 51H×29 | The Court in ISC Piping first found that "it is now irrefutable that a surety, after satisfying its obligations under either a payment or performance bond, is subrogated to the rights of the party he has paid." Id. at 962. The Court then discussed Pearlman as the "sole United States Supreme Court case" in which it was held that "[a] surety who completes the contract has an equitable right to the unencumbered interests of sureties, public project owners, and contractors "in a bankruptcy context." Id. at 563. This issue was whether the "holding in Pearlman remains viable after the 1978 revision of the Bankruptcy Code." Before granting equitable subrogation, courts should conduct an analysis based on equity jurisprudence and proceed on a case-by-case basis. Id. | Under Florida law, surety is entitled to right of equitable subrogation with respect to any contract funds owed by owner of project, where contractor has defaulted on public construction project, and surety has performed its obligations under bond. | 044212.docx | LEGALEASE-00122115-LEGALEASE-00122116 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 0 |
| 17878 | Vong Chanthavong v. Aurora Loan Services, 448 S.W.789 | 13×61 | Plaintiff did not list any claim subject to bankruptcy filing. [BJN Ex. 2.] Generally, a debtor has no standing to schedule asset of action that did not exist before bankruptcy. Cusano, 264 F.3d at 940. "To determine when a cause of action accrues, we look to state law." Id. at 947. A claim accrues when an action arises if the cause of action or the liability for it arose." Id. "Under California law, a claim accrues when "a 'wrongful act is done or the obligation or the liability arises.'" Howard Jarvis Taxpayers Ass'n v. City of La Habra, 25 Cal.4th 809, 815, 107 Cal.Rptr. 2d 369, 23 P.3d 601 (2001). | Under California law, a claim accrues when an action could have been brought. | 050442.docx | LEGALEASE-00122805-LEGALEASE-00122806 | Condensed, Order | 0.87 | 1 | 1 | 0 | 1 | 1 |
| 17879 | Pioneer Roofing Co. v. Mardian Const. Co., 152 Ariz. 455 | 241×43 | The accrual of a cause of action means the right to institute and maintain a suit. Estate of Musgrove, 144 Ariz. 168, 696 P.2d 720 (App.1985). Goddard v. Wood, 500 S.W.2d 451, 454 (Ark.1973). A lawsuit against the Board was obligated by contract to increase the amount to cover costs incurred by Pioneer for the extra work it completed: (1) to prevent weather damage to the building, (2) to eliminate wrinkles below the G ring; (3) to install a lightning rod system, and (4) to repair roof leaks. | Does a claim or cause of action accrue when an action could have been brought? | 500442.docx | ROSS-00326741 ROSS-00316742 | Condensed, SA | 0.87 | | 1 | | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,564 | 14,873 | 21,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 17880 | Whitney v. Whitney, 134 Mass. 187 | 13n61 | There was no error in the future of the judge to include in the final decree any orders with respect to future payments, nor as an accounting from time to time in the future by the defendant of his income and of his payments on account of the insurance policies. No case is made for granting equitable relief. Had the plaintiff resorted to an action at law and the could have been shown a cause of action... (see full text) | Actual injury and not anticipated injury is the ground of legal recovery | Is actual injury and not anticipated injury the ground of legal recovery? | 005594.docx | LEGALEASE-00225973 LEGALEASE-00225974 | Condensed_SA | 0.93 | 0 | | | 1 | 1 |
| 17881 | Fredericksen v. Knight Land Corp., 667 P.2d 34 | 241n41 | The applicable statute of limitations provides that an action based on a written contract must be commenced within six years after the cause of action has accrued. See U.C.A., 1953, ** 78-12-1 & 23(2). The statute of limitations begins to run at the moment that a cause of action arises. See, e.g., Ashton v. State, Utah, 577 P.2d 1374 (1977); Kimball v. McCord, Utah (1937)... (see full text) | The statute of limitations begins to run at the moment that a cause of action arises. | Does a cause or right of action arise the moment action may be maintained to enforce it? | 005635.docx | LEGALEASE-00216031 LEGALEASE-00216033 | Condensed_SA | 0.91 | 0 | 0 | 0 | 1 | |
| 17882 | Ex v. Godbout, 444 Mass. 724 | 13n61 | EX's remaining fitness as to why the plaintiff did not exercise the prompt claim meant more discussion. EX suggests that the present malpractice "claim" was not in existence at the time he signed the release of W-tell claims, because the cause of action accrued, because the "claim" itself already existed at the time the release was signed. A "claim" arises at the time of the "underlying incident" (see full text) | A claim arises at the time of the underlying incident giving rise to the claim. | Does a claim arise at the time of the underlying incident? | Action- Memo #77 - C-LE.docx | 95505-00518607-90155-00339808 | Condensed_SA | 0.92 | 1 | | | | |
| 17883 | Snyder v. Farnam Companies, 792 F.Supp. 24 712 | 360n18.15 | The Supreme Court's decision indicates instructs courts as to what types of claims are preempted by FIFRA. In Riata, the Supreme Court held that, "to the extent that state or common law requirements are pre-empted," use duct care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties... (see full text) | "According to the Supreme Court, what does not qualify as a requirement for labeling or packaging with regards to manufacturers?" | "According to the Supreme Court, what does not qualify as a requirement for labeling or packaging with regards to manufacturers?" | 004735.docx | LEGALEASE-00123971 LEGALEASE-00123972 | Condensed_SA_Sub 0.32 | | | 1 | | |
| 17884 | Barber v. Todayusa Abo., 186 F.2d 775 | 221n134 | It is to be noted that the amended application of the several applicants does not disclose that the child of Japanese ancestry. Each applicant will may be no more than a person of "Japanese ancestry." Each plaintiff will may be the child of an American born citizen who had argued and purported to extend its citizenship to a child of an American citizen because such parent has a Japanese ancestral/Non-renunciation of one citizenship does not of itself create another... (see full text) | Mere renunciation of one citizenship does not of itself create another. | Does mere renunciation of one citizenship create another? | 019972.docx | LEGALEASE-00122908 LEGALEASE-00122909 | Condensed_SA_Sub 0.75 | | | | | |
| 17885 | Liu Rev v. Rundan, 642 F. Supp. 2d 473 | 221n542 | The act of state doctrine does not call for abstention merely because a case may require the result of a former foreign government official to be judged. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804. The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments... (see full text) | Does the application of the act of state doctrine depend on a case-by-case analysis? | Does the application of the act of state doctrine depend on a case-by-case analysis? | 019993.docx | LEGALEASE-00123209 LEGALEASE-00123210 | Condensed_SA_Sub 0.86 | | | | | |

3155

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17886 | Stanley v. Holder, 666 F.3d 964 | 221=154 | It is within each state's domestic jurisdiction to decide who is its nationals. | "The basic rule under international law is that it is within each state's domestic jurisdiction to decide who are its nationals." Michael C. Vivek, Creating the Ethics Directive through Legal Restoration: Citizenship Rights in Estonia, 18 Harv. Int'l L.J. 155, 164 (1977). In recognition of each state's sovereign right, denying citizenship to a noncitizen applicant is not necessarily persecution. There is, however, a "fundamental distinction between denying someone citizenship and denying someone of citizenship." Haile v. Gonzales (Haile I), 421 F.3d 493, 496 (7th Cir. 2005); see also United States v. Marsden J, 487 F.3d 561, 566 (7th Cir.) (recognizing that, although "naturalization [is] a privilege to be given or withheld at such conditions as Congress sees fit," the government "bears a rigorous burden of proof" in denaturalization proceeding (emphasis added)) cert. denied, 549 U.S. 956, 127 S.Ct. 414, 166 L.Ed.2d 274 (2006). Even deprivation of citizenship can persecution when, "as a result of altered boundaries, a person finds himself a citizen of a different country, for example, when Czechoslovakia divided into two countries, the Czech Republic and Slovakia, each former citizen of Czechoslovakia was told to choose between becoming a Czech or Slovak citizen." Bartlik v. Holder, Haile v. Holder (Haile II), 591 F.3d 572, 577 F4 (7th Cir 2010) (Posner, J.). The "affected individuals" did not "become stateless, they simply became citizens of a new [ly created] state." Id. at 573. Because the choice that citizens of former Czechoslovakia faced was a necessary consequence of citizenship, being told to choose was not the kind of deprivation of any group. See Timothy William Waters, The Blessing of Departure: Acceptable and Unacceptable State Support for Demographic Transformation: The Lieberman Plan to Exchange Populated Territories in Cisjordan, 2 Law & Ethics Hum. Rts. 9, 24 (2008) (asserting that "it is unacceptable to move individuals out of a state on the basis of their ethnic or national characteristics..."). | It is within each state's domestic jurisdiction to decide who is its nationals are? | 020551.docx | LEGALEASE 00121305-LEGALEASE 00121310 | Condensed, SA | 0.96 | 0 | 1 | | 1 | 1 |
| 17887 | Fayda v ENB Revocable Tr., 263 F.3d 1274 | 221=342 | Act of state doctrine applies to affirmative defenses. | Defendant's final argument about the act of state doctrine is that it should not be applied when, as here, it is asserted as a defense or bar to affirmative defenses. That argument is inconsistent with the decision of the Supreme Court in Sabbatino, 376 U.S. at 438 F9, 84 S.Ct. at 947 F4, upholding application of the act of state doctrine as the basis for dismissing the defendant's counterclaims against a foreign state, Cuba. The counterclaims challenged the legitimacy of Cuba's claim of right to the disputed property. Id. at 438, 84 S.Ct. at 946 J. These the act of state doctrine prescribes a challenge to the validity of the Cuban expropriation decree in this case, any counterclaim based on superior title would fail."); see also Fherma Cubana Exportadora De Azucar v. Lamborn & Co., 652 F.2d 231,120 (2d Cir.) ("Depriving a sovereign plaintiff of a act of state defense to counterclaims would be just as arbitrary and unfair as stripping it of the right to invoke any other procedural bar; we see no reason why the act of state doctrine should not apply to counterclaims, and we see from Sabbatino that it does, there is no reason it does not also apply to affirmative defenses. | Does the act of state doctrine apply to affirmative defenses? | 020781.docx | LEGALEASE 00121654-LEGALEASE 00121655 | Condensed, SA, Sub 0.96 | | 0 | | | 1 | 1 |
| 17888 | Ingram v. Clover Leaf Lumber Co., 333 Mo. 739 | 289=1019 | Receiver will not be appointed for partnership property except where necessary for protection of property rights of the parties. | It is true that it appears from the pleadings and the evidence introduced by defendants that plaintiff and defendant A. bought and sold piling under an arrangement that each party was to contribute an equal share of capital necessary to start the business, and that they were to share profits and losses equally. It also appears that the plaintiff did the alleged partnership, there was a controversy about the settlement of the accounts between the parties. It is plaintiff's contention that these admitted facts authorized the appointment of receiver. We do not so understand the law. The correct rule is stated in 47 C. J.p. 1218, s 930, as follows: "The court will refuse to appoint a receiver of partnership property where it is not shown that such appointment is necessary for the protection of property rights or interests of the parties, and that there is a danger of loss unless a receiver be appointed." | When can the court refuse to appoint a receiver of partnership property? | Partnership - Memo 176 - RP.docx | ROSS 000298878-ROSS-000298879 | Condensed, SA, Sub 0.86 | | 0 | | | 1 | 1 |
| 17889 | In re Singer, 59 A.D.3d 802 | 307n3 | Motion in limine is an inappropriate substitute for a motion for summary judgment. | In a motion denominated as one in limine, the petitioners Gary Singer and Brad Singer (hereinafter together the movants) sought, inter alia, to strike all objections and to preclude all evidence relating to the value of the Adare asset from the GST Trust to Dorothy while she was serving as a co-trustee of the GST Trust (hereinafter the sale). The Surrogate's Court granted that branch of the motion to the extent of precluding, from trial, all evidence relating to the issues of self-dealing and appreciation damages with respect to the sale. While the movants characterized their motion as one for in limine relief, the relief requested was that their motion actually was one for summary judgment on the issues of self-dealing and appreciation damages. "[A] motion in limine is an inappropriate device for obtaining relief in the nature of summary judgment" (Brewi-Bijoux v City of New York, 73 A.D.3d 1112, 1113, 900 N.Y.S.2d 885, quoting Rondout Elec., Inc. v Dover Union Free School Dist., 304 A.D.3d 808, 807 811, 708 N.Y.S.2d 394; see Downs v. Ginsberg, 89 A.D.3d 908, 909, 933 N.Y.S.2d 313). Since the movants failed to offer any excuse for their failure to timely move for summary judgment with respect to whether the circumstances surrounding the sale, and the co-trustee's awareness and ratification of the sale, which gave rise to (see 3212(a)); Brill v City of New York, 2 N.Y.3d 648, 781 N.Y.S.2d 261, and the Surrogate erred in considering the motion to preclude as an inappropriate substitute for a motion for summary judgment (see CPLR 3212[a]; Brill v City of New York, 2 N.Y.3d 648, 652; 781 N.Y.S.2d 261 N.L.2d 651), both branches of the merits thereof (see Mosdi v. State Farm Mut. Auto. Ins. Co., 3 N.Y.3d 725, 786 N.Y.S.2d 379, 819 N.Y.2d 995; Rivera v. City of New York, 306 A.D.2d 456, 762 N.Y.S.2d 264). | Is a motion in limine an inappropriate substitute for a motion for summary judgment? | Pretrial Procedure - Memo 4 191 - C - CRB.docx | ROSS-000283734-ROSS-000283740 | Condensed, SA | 0.95 | 0 | | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17890 | Eicher v. Allen, 231 S.W.3d 570 n 1 375 | 307Ak1 | We learn first to the trial court's determination that Mr. Eicher failed to file Dr. Huang's amended affidavit in the time allowed by the trial court. Clearly, trial judges have the right to set and enforce deadlines. Kmpro v. Headd, 125 S.W.3d 745, 751 (Tenn.Ct.App.2003). And this case illustrates the perils of waiting until the last possible day to comply with a court's order. However, Defendants do not allege that Mr. Eicher failed to deliver Dr. Huang's amended affidavit to the trial court on July 12, or that the affidavit was not mailed to counsel for Dr. Allen on the same day. Further, that the affidavit was received by the court but not stamped "filed" on July 12 resulted in no prejudice to Defendants. Accordingly, we have concluded that the trial court's order on the issue of determining Mr. Eicher failed to comply with the trial court's order. | Trial judges have the right to set and enforce deadlines. | Do trial judges have the right to set and enforce deadlines? | Pretrial Procedure - Memo #330 - C - ANC.docx | ROSS-003185157-ROSS-003185158 | Condensed, SA | 0.93 | 0 | | | 1 | |
| 17891 | Morris v. Brandenburg, 376 P.3d 836 | 360k3 | Section 307-4 prohibits "assisting suicide," which is defined as "deliberately aiding another in the taking of his own life." Unless it would lead to an unreasonable result, we regard a statute's definition of a term as the legislature's intended meaning. See Lamb v. Inc. v. Hobart, 1993 NMSC-078, 114 N.M. 841, 887 P.2d 822. Because Section 307-4 explicitly defines "assisting suicide," we must examine whether the conduct that the petitioners refer to as physician aid in dying fits the statutory definition. Petitioners define physician aid in dying as "the medical practice of providing a mentally competent, terminally ill patient with a prescription for medication that the patient may choose to take in order to bring about a peaceful death if the patient finds his or her dying process unbearable." As an initial matter, we observe that petitioners have framed physician aid in dying, and as is self-evident in the very definition of the term offered by Petitioners, the practice of aid in dying involves a physician deliberately prescribing a lethal dose of barbiturates with the understanding that the patient will self-administer the entire dose to end his or her life, which should the patient choose to do so. In the context of Section 307-4, the wrongful act is "aiding," which consists of "providing the means to commit suicide." As defined from "actively performing the act which results in death." State v. Sexson, 1994 NMCA-106. 117 N.M. 113. 869 P.2d 301. For aid in dying, the lethal dose prescribed by a physician is intended to provide the means for the patient to end his or her own life, which is consistent with how "aiding" has been defined under Section 307-4. Therefore, when providing aid in dying, a physician prescribes a lethal dose of barbiturates for a patient's use as a means to commit suicide for purposes encompassed by the plain language of Section 307-4. | Statute criminalizing "assisting suicide," which is defined as "deliberately aiding another in the taking of his own life," prohibits physician aid in dying, which is the medical practice of providing a mentally competent, terminally ill patient with a prescription for medication that the patient may choose to take in order to bring about a peaceful death if the patient finds his or her dying process unbearable. N.M. Stat. Ann. § 30-2-4. | How is the term assisting suicide defined? | 044465.docx | LEGALEASE-00122560-LEGALEASE-00122561 | Condensed, SA, Sub 0.76 | 0.76 | 0 | | | 1 | |
| 17892 | United States v. Loeblich Mfg. Co., 1897 2d 454 | 13=61 | The next question is as to when the cause of action sued on accrued. In common language that means, when did the facts exist, whether known or not, which would authorize a suit. Actions for a fraud do not ordinarily accrue till the fraud is discovered, or ought with diligence have been discovered. And against a cause of action which is fraudulently concealed from the plaintiff cannot be set up, during the concealment, but neither is this case. Records were kept by the contractor of employment. There is no evidence that anything was concealed by them. All the acts were known or in the exercise of ordinary care should have been. In the substance of this action the action is clear and was known at the time. The action was held on May 21 and 22 about which the Portal to Portal Act took effect, and there was no difficulty in proving all the facts, the evidence being that such conditions. Everything that was proved had happened by the end of 1945, when the last contract was completed. Under ordinary rules the cause of action had accrued and could have been sued on at any time after the fraud occurred. But this case contract was subject to full inspection, and no suit if in default, at the time it was completed. When the Portal to Portal Act was passed on May 14, 1947, there were allowed still 120 days to suit plaintiffs a bar by State law. Instead the administrative hearing was continued the no action was brought till September 26, 1949, two years and seven months and two weeks after its passage. | A cause of action will "accrue" when all the facts exist, whether known or not, which would authorize a suit. | When does a cause of action accrue? | 005807.docx | LEGALEASE-00104910-LEGALEASE-00104911 | Condensed, SA | 0.93 | 0 | | | 1 | |
| 17893 | Powderly v. MetroRate Corp., 866 F.Supp. 39 | 25T=133(1) | "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Under the Federal Arbitration Act, 9 U.S.C. "2, "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." The use of the term "arbitrate" is not a vital ingredient of an agreement to do so. Intern. Longshoremen's Ass'n, AFL-CIO v. Hoboken, 162 F.Supp. 412, 417 (D.N.J.1958). | Under Federal Arbitration Act, use of term "arbitrate" is not vital ingredient of agreement to do so. 9 U.S.C.A. § 2. | Is the use of the term arbitrate a vital ingredient of an arbitration agreement? | 007168.docx | LEGALEASE-00125565-LEGALEASE-00125567 | Condensed, SA, Sub 0.81 | 0.81 | 0 | | | 1 | |
| 17894 | Hooters of Am. v. Phillips, 173 F.3d 933 | 25T=134(5) | We respectfully be addressed with a healthy regard for the federal arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. Moses H. Cone, 460 U.S. at 24, 103 S.Ct. 927. Our decision should not be misread. We are not holding that the agreement before us is unenforceable because the arbitral proceedings are too abbreviated. An arbitral forum need not replicate the judicial forum. "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." Mitsubishi Motors, 473 U.S. at 626-27, 105 S.Ct. 3346; see also Gilmer, 500 U.S. at 31-32, 111 S.Ct. 1647 (rejecting generalized attacks on arbitration and lack of written opinions as reasons to inhibit arbitration of statutory claims). | Arbitral forum need not replicate the judicial forum to be enforceable. | Does an arbitral forum need to replicate the judicial forum to be enforceable? | Alternative Dispute Resolution - Memo #31 - LK.docx | LEGALEASE-00004231-LEGALEASE-00004233 | Condensed, SA, Sub 0.89 | 0.89 | 0 | | | 1 | |

3155

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17895 | Lafontant v. Aristide, 844 F. Supp. 128 | 221+151 | It can be assumed for the purpose of this memorandum, that the killing described in the plaintiff's complaint falls within the statute. Nevertheless, as indicated below, the TVPA does not negate head-of-state immunity. Enacted after Mr. and Mrs. Doe v. United States, 860 F.2d 40 (2nd Cir.1988), the TVPA is the governing law on the extent of subject matter jurisdiction over foreign tortfeasors not of authority of the courts to exercise personal jurisdiction over a head-of-state. | Exiled president of Haiti was entitled to head-of-state immunity in civil rights action arising out of his alleged extrajudicial killing of political opponent in Haiti, notwithstanding contention that killing was private, rather than official act; whether killing was private or official act was irrelevant as neither Foreign Sovereign Immunities Act (FSIA) nor Torture Victim Protection Act (TVPA) negated head-of-state immunity. 28 U.S.C.A. S 1605; Torture Victim Protection Act of 1991, SS 2, 3, 28 U.S.C.A. S 1350 note. | Does the Torture Victim Protection Act (TVPA) negate common-law head-of-state immunity? | 020158.docx | LEGALEASE-00124749-LEGALEASE-00124750 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 17896 | Glen v. Club Mediterranee S.A., 365 F. Supp. 2d 1263 | 221+351 | Third, Plaintiffs argue that the act of state doctrine is inapplicable here because the act of state doctrine does not preclude inquiry into commercial activity. Pl. Opp. Mem. at 18. This argument is unpersuasive. Whether the activity at issue is the interaction of the Cuban government with Club Med or its expropriation of the Varadero property, this Circuit has specifically rejected the commercial activity exception to the act of state doctrine. See Honduras Aircraft Registry, Ltd. v. Government of Honduras, 129 F.3d 543, 550 (11th Cir.1997) ("there is no commercial exception to the act of state doctrine"). Moreover, the law in this Circuit is explicit"expropriation is not "purely commercial" activity beyond the reach of the act of state doctrine. See Beg v. Islamic Republic of Pakistan, 353 F.3d 1323, 1326 (11th Cir.2003) (the power of eminent domain is a sovereign power and thus "not commercial"); Consolidated Development Corp., No. 96"1820"Civ"Graham, at 13 (S.D.Fla. July 30, 1997) ("The act at issue in this case is the Cuban government's enactments of a statute that expropriated Plaintiffs' oil concessions .. [E]xpropriation is not a commercial activity .."); World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1166 (D.C.Cir.2002) ("[E]xpropriation of property is the classic act of state addressed in the case law.") cert. denied, 537 U.S. 1187, 123 S.Ct. 1250, 154 L.Ed.2d 1019 (2003). | Act of state doctrine did not have exception for commercial activity. | Does the act of state doctrine have an exception for commercial activity? | International Law - Memo # 290 - C - SS.docx | ROSS-003298308-ROSS-003298309 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 17897 | Slater v. Jackson, 163 Ga. App. 342 | 307A+1 | In a case such as the one before us, where no pre-trial order is entered, "pre-trial proceedings end with the commencement of the trial proper and the taking of evidence. The unfettered right to amend ceases and a party may amend his pleading only by leave of court or by the consent of the adverse party. [Cit.]" Black v. Lowery, 159 Ga.App. 57(1), 282 S.E.2d 700.Appellees' motion to amend, made prior to commencement of the trial, was not ruled upon until the trial had progressed somewhat. Inasmuch as appellees had "the unfettered right" to amend their answer when the motion was made, there was no error in permitting the amendment. Lanier Petroleum, Inc. v. Hyde, 144 Ga.App. 441(2), 241 S.E.2d 62. | Where no pretrial order is entered, pretrial proceedings end with commencement of trial proper and taking of evidence, and unfettered right to amend ceases and party may amend his pleading only by leave of court or by consent of adverse party. Code, S 81A-115. | When do pretrial proceedings end? | 030931.docx | LEGALEASE-00124987-LEGALEASE-00124988 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 17898 | Chavis v. Dir., State Worker's Comp. Div., 924 S.W.2d 439 | 307A+3 | The very thrust of appellant's complaint in point of error three is directed to violations of the motion in limine. A motion in limine is not a valid substitute for an objection or motion to strike. On appeal, the party may not predicate his complaint on a motion in limine. See Methodist Hospitals of Dallas v. Corporate Communicators, Inc., 806 S.W.2d 879, 883 (Tex.App."Dallas 1991, writ denied). | Motion in limine is not valid substitute for objection or motion to strike. | Is a motion in limine a valid substitute for an objection or motion to strike? | Pretrial Procedure - Memo # 508 - C - LK.docx | ROSS-003281676-ROSS-003281677 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 17899 | Pub. Utilities Comm'n v. Natatorium Co., 36 Idaho 287 | 405+2277 | Respondents contend that, even if the hot water in question was originally private water owned by appellant, it has been dedicated to public use by the acts and conduct of appellant. It is true that property originally private can be dedicated to the public by the acts and conduct of the owner and thus burdened with a public duty. But--"Dedication of the property of a corporation to public use is never presumed without evidence of unequivocal intention." Stoehr v. Natatorium Co., 34 Idaho, 217, 200 Pac. 132. | Where waters flowing from a water company's hot water wells were private waters, the facts of distribution to a selected class of customers for compensation, that the company originally filed notices of location and appropriation of the hot waters of certain springs, and was authorized by its charter to devote such waters to a public use, in the absence of an unequivocal intention to dedicate to a public use, do not of themselves constitute the company a public service corporation, since such waters belong to the company as unqualifiedly as the land upon which the springs were found. | Is the dedication of the property of a corporation to public use presumed without evidence of unequivocal intention? | Public Utilities - Memo 153 - AM.docx | LEGALEASE-00015336-LEGALEASE-00015338 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 17900 | Rupp v. Transcon. Ins. Co., 627 F. Supp. 2d 1304 | 366+1 | State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co., 912 P.2d 983, 985 (Utah 1996) (internal quotations and citations omitted). Relief is available if the following conditions are met:(1) There must be a debt or obligation for which the subrogee [here, excess carrier Westchester] was not primarily liable; (2) the subrogee must have made payment to protect his own rights or interest; (3) the subrogee must not have acted merely as a volunteer; and (4) the entire debt must have been paid. Furthermore, subrogation must not work any injustice to the rights of others. Id. at 986 (internal citations omitted). | Under Utah law, subrogation must not work any injustice to the rights of others. | Is it required that subrogation must not work any injustice to the rights of others? | Subrogation - Memo # 436 - C - SU.docx | ROSS-003312146-ROSS-003312147 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 17901 | In re Stambaugh, 532 B.R. 572 | 366+1 | The court in Heller noted that equitable subrogation is a widely recognized exception to the "first in time" rule. Heller, 863 A.2d at 1156. The Heller court recites the four criteria which must be met for equitable subrogation to apply: (1) the claimant paid the creditor to protect his own interests; (2) the claimant did not act as a volunteer; (3) the claimant was not primarily liable for the debt; and (4) allowing subrogation will not cause injustice to the rights of others. Id. at 1158. Ultimately, the court in Heller found that the appellant, Ameriquest Mortgage Company, did not qualify for equitable subrogation. It noted that Ameriquest was seeking to be subrogated to earlier mortgage positions which its title search "did not reveal." The Superior Court held that the appellant's interest remained subordinate to the foreclosing appellee and quashed the appeal. | Four criteria must be met in order for equitable subrogation to apply as exception to Pennsylvania's "first in time" lien priority rule: (1) claimant must have paid creditor to protect his own interests; (2) claimant must not have acted as volunteer; (3) claimant must not have been primarily liable for debt; and (4) allowing subrogation must not cause injustice to the rights of others. | Is the first in time rule an exception to equitable subrogation? | Subrogation - Memo 1000 - C- CAT.docx | ROSS-003299378 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17902 | N. Tr. Co. v. Consol. Elevator Co., 142 Minn. 132 | 366+1 | "[1] 2. Appellant contends that the act commands that the original holders of the prior mortgage could hold a right of action against respondent for the conversion of their grain, and that it has become subrogated thereto. We are not here concerned with the rights of appellant as against the Grain Company. Those rights have been asserted in the action which resulted in the recovery of a judgment against it. We are now concerned with the rights of appellant against respondent, and the question is whether it is subrogated to the right and remedies of creditors of the principal against third persons. The doctrine of subrogation is of purely equitable origin and nature. Whether a case for its application arises in favor of a surety as against third persons depends upon the balance of equities between them and the surety. It does not arise when the result would be prejudicial to innocent purchasers. The object of subrogation is to place the charge where it ought to rest by compelling the payment of the debt by him who ought in equity to pay it. It will never be enforced when the equities are equal or the rights not clear. The right may be modified or extinguished by contract. It never arises at all where to enforce it would defeat the purpose or will not keep the debt alive, but to extinguish it. When it is sought to enforce the right, something more must be shown than that defendant could have been compelled to the demand he paid, for he was obligated to pay the debt. While a surety may assert the right against one whom he should have recourse, it must appear that the obligation of whom he should, with notice, in the illegal act of the principal which served to bring about the loss. The right to recover from a third person does not stand on the same footing as the right to recover from the principal. As against the principal, the right is absolute as to the former, it is conditional. These principles distinguish the present case from [...]." | Doctrine of subrogation is of purely equitable origin and nature; its object is to place a charge where it ought to rest, by compelling payment of the debt by him who ought in equity to pay it. | Is the doctrine of subrogation purely equitable in nature? | Subrogation - Memo 1026 - C-CxE.docx | ROSS 000284153-ROSS-000284153 | Condensed, SA, Sub | 0.93 | 0 | 1 | | 1 | 1 |
| 17903 | Philadelphia Indem. Ins. Co. v. Pace-Saturn Bus Serv., 2016 1-App (list) 151659 | 366+1 | "Equitable subrogation is a remedial device that prevents unjust enrichment. American Family Mutual Insurance Co. v. Northern Heritage Builders, L.L.C., 404 Ill.App.3d 584, 588, 344 Ill.Dec. 617, 937 N.E.2d 323 (2010). An insurer who indemnifies its insured for a loss may be subrogated to the rights of the insured against the party at fault under the equitable doctrine that the economy burden '[s]hould be shifted to the party responsible for the loss. Dix Mutual Insurance Co. v. LaFramboise, 149 Ill.2d 314, 319, 173 Ill.Dec. 648, 597 N.E.2d 622 (1992)." | Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. | Will subrogation be allowed where it would be inequitable? | Subrogation - Memo 992 - C-AT.docx | ROSS 000285473-ROSS-000285472 | Condensed, SA | 0.89 | 0 | 0 | | 1 | |
| 17904 | Jordan v. Knox Cty., 213 S.W.3d 751 | 79+7 | "Members of the board of education and the court clerks qualify as elected Knox County officers. Under state law, however, the term limits amendment concerns a general class of local officers and appears inapplicable to court clerks. The Education Improvement Act of 1991, a general law, established school boards; the process for electing school board members. See Tenn.Code Ann. * 49*2*201(a)(1) (Supp.2006). ['The board of education shall be elected...'] and may succeed themselves.'); Knox County Bd. of Educ., 60 S.W.3d 65, 70 (Tenn.Ct.App.2001) ('[The provision of the Education Improvement Act of 1991 (EIA) repeal and supersede a private act applicable to Knox County...'); Tenn. Op. Att'y Gen. No. 97041, 1997 WL 188874 (Apr.7, 1997); Tenn. Op. Att'y Gen. No. 97-023, 1997 WL 117869, 69346 (Feb. 15, 1997). The statute trumps the charter amendment as to members of the school board. See Tenn. Code of Nashville, Inc. v. Metro. Gov't of Nashville, 864 S.W.2d 614, 258 (Tenn.Ct.App.1989) ['Local governments may decide for themselves how best to exercise...powers delegated by the General Assembly, as long as their decisions do not conflict with state law.']. Moreover, the 1998 amendment would appear to predicate the board's terms in conflict with state law as to court clerks. See Tenn.Code Ann. * 5-5-116(b)(2) (Supp.2006). Under the Tennessee Constitution, and not controlled by article VII or the charter. See Tenn.Code Ann. * CY*2*6801(a), specifically provides as follows Nothing contained within the provisions of this act shall be construed to authorize section 5*(1*204(b)(1), specifically provide a charter form of government except as its charter or ordinances may direct the imposing, levying or collection of fines, penalties or forfeitures or the procedures for the filling of vacancies as required by law Tenn.Code Ann. * CY*204(b)(1)(Supp.2006)" | Circuit and criminal court clerks are considered to be county officials, but the positions are created by state law; therefore, court clerks may not be subjected to term limits imposed by the county. West's T.C.A. Const. Art. 6, § 13; Art. 7, § 1; West's T.C.A. § 5-5-104(b)(1). | Are court clerks considered to be county officials? | 01353.docx | (164)1GAE 00125703 (164)1GAE 00125703 | Condensed, SA, Sub | 0.92 | 1 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17905 | People v. Jones, 2017 WL 3262112 | 203+709 | The basic difference between first degree murder and involuntary manslaughter is the mental state that accompanies the conduct resulting in the victim's death. People v. Di Vincenzo, 183 Ill.2d 239, 249, 233 Ill. Dec. 273, 700 N.E.2d 981 (1998). Involuntary manslaughter requires a less culpable mental state than first degree murder. Di Vincenzo, 183 Ill.2d at 249, 233 Ill.Dec. 273, 700 N.E.2d 981. The mental state for murder is knowledge,while the mental state for involuntary manslaughter is recklessness.\|] People v. Givens, 364 Ill. App.3d 37, 44, 301 Ill.Dec. 348, 846 N.E.2d 951 (2005). A person is said to have knowledgewhen he is consciously aware that his conduct is practically certain to cause a particular result.People v. Leach, 391 Ill. App.3d 161, 175, 330Ill. Dec. 268, 908 N.E.2d 120 (2009), citing 720ILCS 5/4-5(b) (West 2002). A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow * * * and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS (West 2006). "In general, a defendant acts recklessly when he is aware that his conduct might result in death or great bodily harm, although that result is not substantially certain to occur." Di Vincenzo, 183 Il.2d at 250, 233 Ill.Dec. 273, 700 N.E.2d 981. Recklessness therefore typically involves a lesser degree of risk than conduct that creates a strong probability of death or great bodily harm. Di Vincenzo, 183 Ill.2d at 250,233 Ill.Dec. 273, 700 N.E.2d 981. | The mental state for murder is knowledge, while the mental state for involuntary manslaughter is recklessness. S.H.A. 720 ILCS 5/9-1(a)(1, 2), 5/9-3. | Is mental state of involuntary manslaughter considered as recklessness? | Homicide - Memo 160 - VG.docx | ROSS-003298628-ROSS-003298629 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 17906 | Miller v. Journal-News, 211 A.D.2d 626 | 237+55 | The Supreme Court erred in denying the defendants' motion for summary judgment since it is well established that truth is an absolute bar to a libel action (see, Rinaldi v. Holt, Rinehart & Winston, 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299; Kraus v. Brandstetter, 167 A.D.2d 445, 447, 562 N.Y.S.2d 127). Furthermore, under New York law the "accuracy of the report should be assessed on the publication as a whole, not isolated portions of it" (Law Firm of Daniel P. Foster v. Turner Broadcasting Sys., 844 F.2d 955, 959 [2d Cir.1988] ). After assessing the two newspaper articles in their entirety and giving the language of the articles the fair reading of the average reader, we find that the plaintiff failed to submit adequate evidence to controvert the truth and accuracy of the articles and, thus, failed to meet his burden of showing that there is a genuine issue for trial as to whether the statements were substantially true (see, Law Firm of Daniel P. Foster v. Turner Broadcasting Sys., supra ). The newspaper articles were substantially true since the terms "suspended" and placed on "administrative leave" are interchangeable given the underlying facts of the incident reported and the action taken by the police department in placing the plaintiff on leave pending an internal investigation. Thus, the substantial truth of the newspaper articles bars a libel action (see, Kraus v. Brandstetter, supra ). | Newspaper article stating that police officer was "suspended" from his duties by police department pending departmental investigation into shooting incident was substantially true, barring officer's libel action against newspaper, although officer was placed on "administrative leave" instead of suspended; terms "suspended" and "placed on administrative leave" were interchangeable given underlying facts of incident reported and action taken by police department in placing officer on leave pending internal investigation. | Can a substantial truth of the newspaper articles bar a libel action? | 021108.docx | LEGALEASE-00125604-LEGALEASE-00125605 | Condensed, Order, SA, Sub | 0.63 | 1 | 1 | 1 | 1 | 1 |
| 17907 | CompuServe Inc. v. Cyber Promotions, 962 F. Supp. 1015 | 386+6 | Defendants Cyber Promotions, Inc. and its president Sanford Wallace have used plaintiff's equipment in a fashion that exceeds that consent. The use of personal property exceeding consent is a trespass. City of Amsterdam v. Daniel Goldreyer, Ltd., 882 F.Supp. 1273 (E.D.N.Y.1995); Restatement (Second) of Torts " 256. It is arguable that CompuServe's policy statement, insofar as it may serve as a limitation upon the scope of its consent to the use of its computer equipment, may be insufficiently communicated to potential third-party users when it is merely posted at some location on the network. However, in the present case the record indicates that defendants were actually notified that they were using CompuServe's equipment in an unacceptable manner. To prove that a would-be trespasser acted with the intent required to support liability in tort it is crucial that defendant be placed on notice that he is trespassing. | Use of personal property exceeding consent is trespass. Restatement (Second) of Torts S 256. | Can the use of personal property exceeding consent constitute a trespass? | Trespass - Memo 190 - RK.docx | LEGALEASE-00015750-LEGALEASE-00015751 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 17908 | Konecny v. United States, 388 F.2d 59 | 13+61 | The issue decided by the District Court and now being reviewed by us is when did Konecny's right of action first accrue? This Circuit has held that "generally, a cause of action is deemed to have accrued when facts exist which enable one party to maintain an action against another" Great American Ins. Co. v. Louis Lesser Enterprises, Inc.,353 F.2d 997, 1001 (8 Cir. 1965)."A cause of action accrues at the time when an action thereon can be commenced."Pettibone v. Cook County, Minn., 120 F.2d 850, 854 (8 Cir. 1941). This is in accord with the general rule expressed in 54 C.J.S. Limitations of Actions " 109, that a cause of action accrues as soon as the right to institute and maintain a suit arises. | A cause of action accrues at the time when an action thereon can be commenced. | Does a cause of action accrue at the time when an action thereon can be commenced? | 005336.docx | LEGALEASE-00126078-LEGALEASE-00126079 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 17909 | Morning v. Bd. of Educ. of City Sch. Dist. of City of New York, 28 Misc. 3d 653 | 141E+364 | The filing of a notice of claim is thus a condition precedent to the commencement of an action against a school district or board of education. (Public Improvements, Inc. v. Bd. of Educ. of City of New York, 56 N.Y.2d 850, 453 N.Y.S.2d 170, 438 N.E.2d 876 [1982] ). The claim accrues when damages mature and become certain and ascertainable. (Alfred Santini & Co., Inc. v. City of New York, 266 A.D.2d 119, 120, 698 N.Y.S.2d 678 [1st Dept. 1999], lv. denied 95 N.Y.2d 752, 711 N.Y.S.2d 154, 733 N.E.2d 226 [2000]; Matter of Chanecka v. Bd. of Educ., Broome"Tioga BOCES, 243 A.D.2d 1011, 1012, 663 N.Y.S.2d 681 [3d Dept. 1997], lv. denied 92 N.Y.2d 802, 677 N.Y.S.2d 72, 699 N.E.2d 432 [1998] ). | Claim against a school district accrues when damages mature and become certain and ascertainable. | Does the claim accrue when damages become ascertainable? | 005460.docx | LEGALEASE-00126246-LEGALEASE-00126247 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 5,073 |
| 17910 | Gray-Cobb, Co. v. Kumar Boelling Co., 139 S.W.3d 671 | 361+1415 | [Judicial Opinion Text] | A statute will not be given extraterritorial effect by implication but only when such intent is clear. | Will a statute be given extraterritorial effect by implication? | 005760.docx | USAGExB-00326363 USAGExB-00326364 | Condensed, SA | 0.79 | 0 | 1 | | 1 | 1 |
| 17911 | Estop v. Commissioner of Public Works Boundary Co., 122 Idaho 345 | 79+1 | [Judicial Opinion Text] | Are clerks of court judicial officials? | Are clerks of court judicial officials? | 013424.docx | USAGExB-00326276 USAGExB-00326279 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 17912 | Lu'a v. Town of Southbury, 188 Conn. 386 | 149+2.5(1) | [Judicial Opinion Text] | Property owner's diminution of their access rights and some diminution in preserving for them a less valuable but nonetheless legally viable right of access. | Do some impairment of access rights and some diminution in the total value of property justify a conclusion that there has been an unconstitutional taking? | 017595.docx | USAGExB-00326357 USAGExB-00326358 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 17913 | Sampson v. Fed. Republic of Germany, 975 F. Supp. 1108 | 221+533 | [Judicial Opinion Text] | Universal jurisdiction, such as exists under international law for certain offenses, applies to a foreign national, not to a foreign sovereign. | Does universal jurisdiction apply to a foreign national or a foreign sovereign? | 020635.docx | USAGExB-00326016 USAGExB-00326017 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 17914 | Craigslist Inc. v. 3Taps Inc., 942 F.Supp.2d 962 | 386+7 | [Judicial Opinion Text] | Under California law, tort of trespass to the bid defines not encompass electronic communication that either render damages recipient computer system nor impairs its functioning. | Can unauthorized access to a computer system be considered a trespass? | Action - Memo 180 - Trespass / Memo 180 - RK.docx | ROSS-003266848-ROSS-003288489 | Condensed, SA | 0.87 | 0 | 1 | | 1 | 1 |
| 17915 | Stisser v. Miller, 250 Ill. 72 | 11+61 | [Judicial Opinion Text] | There cannot be any recovery in an ordinary commonlaw action, where the money is not due at the institution of the suit. | Can there be any recovery in an ordinary common law action? | Action - Memo x C316-Ti.docx | ROSS-003318625-ROSS-003318623 | Condensed, SA | 0.77 | 0 | 1 | | 1 | 0 |
| 17916 | Hartford Life Ins. Co. v. Title Guarantee Co., 520 F.2d 1170 | 11+61 | [Judicial Opinion Text] | Right to sue did not accrue until plaintiff had a cause of action. | Did right to sue not accrue until plaintiff had a cause of action? | 005481.docx | USAGExB-00326363 USAGExB-00326364 | Condensed, SA | 0.86 | 0 | 1 | | 1 | 0 |
| 17917 | Republic Ins. Co. v. Culbertson, 717 F. Supp. 415 | 11+1 | [Judicial Opinion Text] | Essential element of a cause of action are a legal obligation, a breach, and consequential damage. | Is occurrence of an injury essential for a cause of action? | Action - Memo # 168 - C ES.docx | ROSS-003313121-ROSS-003313121 | Condensed, SA | 0.84 | 0 | 1 | 1 | 1 | 0 |

3159

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,973 | 21,876 | 9,079 |
| 17918 | Vanderlinde Elec. Corp. v. City of Rochester, 54 A.D.2d 155 | 11H41 | Not at one Find that the claim "arose" when the completion date was met, though at most must have been apparent (plaintiff could not assert a cause of action, the distinction between an accrued claim and a cause of action has long been recognized. An accrued claim is one which damages have accrued (Durtranck v. State of New York, 46 A.D.2d 54]. 34.2 N.Y.S.2d 237; Terrace Hotel Co., Inc. v. State of New York, 19 A.D.2d 434, 243 N.Y.S. 2d 989; Waterman v. State of New York, 19 A.D.2d 264, 34.) 34.2) | There exists a distinction between an "accrued claim" and a cause of action: an "accrued claim" is one in which damages have accrued. | Is there a distinction between an accrued claim or claim accrued / distinction between action and a cause of action? | 00575.1.docx | LEGALEASE 00235640 LEGALEASE 00235641 | Condensed, SA, Sub 0.73 | 0.73 | 0 | | 1 | 1 | |
| 17919 | Caren v. Owners' Realty Co., 33 Cal. App. 479 | 95+277(1) | Where no time is specified for the doing of an act, other than the payment of money, it is the rule of law that a demand for performance is necessary to put the promisor in default [Gen. & Pong. 6 of Law, 292, 293. The reason for the rule in this behalf is to give the promisor an opportunity to perform before being subjected to the inconvenience and expense of litigation.) (Gorp. Jur. 979. No time having been fixed by the covenant under consideration for the performance of the obligation thereof, and the complaint failing to allege a demand upon the defendant for performance, it is clear that the complaint, in so far as the several causes of action for damages are concerned, is fatally defective" when measured by the foregoing rule. Moreover, such a demand, in addition to being essential to the creation of a cause of action, was necessary to fix the statute of limitations running. | Where no time is specified for performance of contract other than for payment of money, a demand for performance is necessary to put promisor in default. | "For an action for a/ for a default, should there be a demand and / 00264.docx for nonperformance?" | 00264.docx | LEGALEASE 00126395 LEGALEASE 00126396 | Condensed, SA, Sub 0.83 | 0.83 | | | 1 | 1 | |
| 17920 | Parker v. Levy, 417 U.S. 733 | 34+3(1) | This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society. We have also recognized that the military has, again, by necessity, developed laws and traditions of its own during its long history. The differences between the military and civilian communities result from the fact that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." United States ex rel. Quarles, 350 U.S. 11, 17. 76 S. Ct. 1, 5, 100 L. Ed. 8 (1955); In re Grimley, 137 U.S. 147, 153, 11 S. Ct. 54, 55, 34 L. Ed. 6.36 (1890), the Court observed: "An army is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier." More recently we emphasized: "The military constitutes a specialized community governed by a separate discipline from that of the civilian," Orloff v. Willoughby, 345 U.S. 83, 94, 73 S. Ct. 534, 540, 97 L. Ed. 842 (1953), and that "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty ..." Burns v. Wilson, 346 U.S. 137, 140, 73 S. Ct. 1045, 1047, 97 L. Ed. 1508 (1953) (plurality opinion). We have also recognized that a military officer holds a particular position of responsibility and command in the Armed Forces; "the military commission ... not to feel "rejoicing special trust and confidence in the patriotism, valor, fidelity and abilities" of the appointee he is owed to the specification as to his rank in the President." Orloff v. Willoughby, supra, at 91, 73 S.Ct., at 539. | Just as military society has been a society apart from civilian society, so military law is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment, and to maintain the discipline essential to perform its mission effectively, the military has developed the customary military law. | Is the military a specialized community that is governed by laws / separate from civilian society? | 008882.docx | LEGALEASE 00126373 LEGALEASE 00126372 | Condensed, SA, Sub 0.8 | 0.8 | | | 1 | 1 | |
| 17921 | Commercial Trading Co. v. Trade Bank & Tr. Co., 207 Misc. 510 | 6.30T+55 | It is axiomatic in a business society such as that the free circulation of negotiable paper is to be encouraged and the law must be interpreted in that light. Graham v. White-Phillips Co., 296 U.S. 27, 31, 56 S.Ct. 21, 80 | The free circulation of negotiable paper is to be encouraged and the law must be interpreted in that light. | How should the Negotiable Instrument Law be interpreted? | 00902.6.docx | LEGALEASE 00126749 LEGALEASE 00126750 | Condensed, SA | 0.55 | | | 1 | 0 | |
| 17922 | Corbin v. State ex rel. Slaughter, 324 So. 2d 203 | 79+66 | The Clerk is merely a ministerial officer of the court Leatherman v. Gimanghmo, 192 So.2d 301 (Fla.App.1d, 1966). He does not exercise any discretion. Pate v. Lunsford and exercises judicial (Fla.App.3d, 1957). He has no authority to contest the validity of the court's order for which he acts as clerk nor to pass on questions involved here done in the performance of the court's judicial function. State v. Almand, 75 So.2d 905 (Fla.1954). | Clerk has no authority to contest validity of any act of court for which he acts as clerk purportedly done in performance of court's judicial function. | Is the clerk of the circuit court a ministerial officer of the court? | 013652.docx | LEGALEASE 00126778 LEGALEASE 00126779 | Condensed, SA, Sub 0.66 | 0.66 | | | 1 | 0 | |
| 17923 | Powell v. Buchanan Cty., 348 Mo. 807 | 104+63 | The provisions of (1848) and (1498) were enacted in 1911, Laws 1911, p. 385, but as then enacted the County Highway Engineer was not included as one of the officers authorized to appoint a Chief Deputy, nor was he included by amendment made in 1919, Laws 1919, p. 668. The amount of the Chief Deputy's compensation was increased to the present amount in 1929, Laws 1929, p. 173. The last section (1945) was not passed until 1921, Laws 1921, p. 655. However, section 11485 R.S. 1939 (being the section considered in the instant case) which purports to leave all salaries-paid officers specified in that 1911 act, giving the county court discretion as to the number of deputies, was not included, as part of the 1911 act; in the Wilbram case, this court construed these statutes together to avoid anguishing, holding that section "referring to deputies and assistants' should be construed as meaning those other than "Chief Deputy", and that the officers designated in Section 11485, were each to receive "in addition to a Chief Deputy" at salaries of $1,500 per year; leaving nothing for the county court to do but pay the salary fixed by statute. Therefore, Section 11485, passed in 1921, likewise be construed (under its plain terms other than "Chief Deputy". Such construction makes all these sections harmonize. They should be so construed, even though it may swell the original act or in view of the subsequent amendments to indicate any intent to take away the right, granted to each of the offices designated, to appoint his own Chief Deputy. We hold that plaintiff was not required to prove that his appointment was made "with the advice and consent," ratification or approval of the county court. | The statute providing that no money shall be paid to any deputy or assistant county officer, who has not been authorized by county court to be appointed by any of the county officers authorized to appoint assistants and deputies, and statute providing that number of all deputies required by any county officer shall be submitted to county court and county court shall by order of record permit such number as in their opinion the necessary duties of the office require, would be construed as referring to deputies and assistants other than chief deputy specified by statute providing for chief deputies of county officers and fixing their salaries at $1,500 per year. Mo.R.S.A. SS 13488, 13494, 13495. | Can a county court exercise discretion as to the number of deputies and assistants the clerk may appoint? | 013660.docx | LEGALEASE 00126786 LEGALEASE 00126787 | Condensed, SA, Sub 0.66 | 0.66 | | | 1 | 0 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 17934 | Forest Properties v. United States, 39 Fed. Cl. 56 | 148k2.1 | The Court notes, however, that an investment-backed expectation "must be more than a 'unilateral expectation or an abstract need.'" It must be reasonable. Ruckelshaus, 467 U.S. at 1005-06, 104 S.Ct. at 2874 (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980)). In those instances where a regulation limits an owner's use of his land, by requiring either the claimant's investment-backed expectations, a court "limits recovery to owners who can demonstrate that they bought their property in reliance on the nonexistence of the challenged regulation." Creppel, 41 F.3d at 632. See also Concrete Pipe & Prods. of California, Inc. v. Construction Laborers Pension Trust for S. Cal., 508 U.S. 602, 645-46, 113 S.Ct. 2264, 2291-92, 124 L.Ed.2d 539 (1993); Ruckelshaus, 467 U.S. at 1005-06, 104 S.Ct. at 2874 ("[I]n no reasonable expectation that the EPA would keep information confidential beyond that time under a regulatory scheme affording the property at issue at the time of purchase can significantly discount any owner's investment-backed expectations with respect to the property. In fact, numerous courts have found that a claimant who acquires property interest in a regulatory environment thoroughly permeated with respect to investment-backed expectations. See, e.g., Golden Pac. Bancorp, 15 F.3d at 1074 ("Given the highly regulated nature of the banking industry, * * * the claimant's action could not possibly assert a reasonable investment-backed expectation * * *"); Creppel, 21 F.3d at 632; M & J Coal, 47 F.3d at 1152 (the claimant "could develop wetlands in light of Clean Water Act's section 404 permit system"). The rationale underlying these decisions is clear: First, to hold otherwise would hurt the Government in its ability to regulate. Second, when an owner of property buys into a regulatory structure, "the expectation that the regulation would be enforced and subject to change over time is part of the bargain." | In determining whether there has been regulatory partial taking of property, investment-backed expectation must be more than unilateral expectation or an abstract need; it must be reasonable. U.S.C.A. Const.Amend. 5. | Should an investment-backed expectation be more than a unilateral expectation or an abstract need? | Eminent Domain - Memo 280 - GF.docx | ROS5-002902123 ROS5-002902123 | Condensed_SA_Sub 0.91 | | 0 | 1 | 1 | 1 | 1 |
| 17935 | Robinson v. Mariel Enterprises, 337 So. 2d 696 | 302v48101 | The allegation of Robinson hereinabove as to real appellees were fabricated and acquiesced in, what they alleged, had knowledge of, etc., are no more availing to appellant on the proof of ability to pay in the Reynolds case, supra. This Court's of the opinion that such allegations are an attempt to clear the question under fraud, and the mere conclusions of the pleader, and even his breath in Ladner v. Deposit Guaranty National Bank, 293 So.2d 515 (Miss.1973), that a demurrer does not admit mere recitals of conclusions, either in fact or of law. What we have said is conclusive of law, and the facts constituting such excuse must be pleaded. For the judgment was reversed and remanded. | Waiver is conclusion of law, and facts constituting waiver must be pleaded. | Should facts constituting waiver be pleaded? | 02305x.docx | LEGAL4JUE-00128-708-LEGAL4JUE-00128-709 | Condensed_SA 0.88 | | | 0 | 1 | 1 | 1 |
| 17936 | State v. Borchert, 693 S.W.2d 128 | 352H+122 | Initially, defendant argues that his trial judge erred by denying his motion for an acquittal on the charge of attempted rape because the state's evidence that defendant threatened to harm his victim and employed allowed players to use a dangerous weapon is successfully employs reasonable resistance defendant cannot be found to have acted with the proscribed intent to commit rape. Defendant maintains that his intent to commit a rape should be negated by the fact that the victim successfully abandoned his attempt to rape the victim. In support of this contention, defendant relies on a case where the victim's attempt to attempt was not a defense to attempted rape. State v. Gillum, 618 S.W.2d 733, 734 (Mo.App.1981); McKay v. 2nd Fund. | Defendant's abandonment of his attempt to rape victim after great deal of resistance by her was not a defense to attempted rape. V.A.M.S. 565.060.2, 558.016, subd. 1. | Is abandonment of rape a defense to attempted rape? | See Offence - Memo 46 - SS.docx | ROS5-00129010 ROS5-00129001 | Condensed_SA_Sub 0.75 | | | 0 | 1 | 1 | 1 |
| 17937 | State v. Barclays Bank of New York, N.A., 151 A.D.2d 19 | 172H+422 | In general, the proposition has not been dealt with since the Uniform Commercial Code was adopted in 1962. There are, of course, cases whose circumstances vary; including the early New York law allowed payees to sue depository banks pursuant to UCC 3-419 even though they would be the proper party to sue forged instrument. (see, e.g., Hechter v. New York Life Ins. Co., 46 N.Y.2d 34, 412 N.Y.S.2d 812, 385 N.E.2d 551; see also, Heffernan v. Norstar Bank of Upstate N.Y., 125 A.D.2d 887, 510 N.Y.S.2d 888; Manufacturers Hanover Trust Co. v. Frank, 117 A.D.2d 27, 502 N.Y.S.2d 20; Capital Dist. Tel. Employees Fed. Credit Union v. Dime Sav. Bank, 105 Misc.2d 915, 433 N.Y.S.2d 405; Robbitex Corp. v. Tompkins County Trust Co., 67 Misc.2d 687, 324 N.Y.S.2d 543), but in none of these cases did the court focus attention specifically on whether or not payees who were not the holders of an instrument could maintain an action for conversion under UCC 3-419. While there are cases which clearly relate to this one-payee to constructive delivery to the other co-payee (White and Summers, Uniform Commercial Code 3d ed., § 17-4, pp. 864-865 [3d student ed]; Bailey, Brady on Bank Checks 27-8 [6th ed.]). In another, the Robbitex Corp. decision, the court held this is not contention that Robbitex Corp. need not focus attention specifically on the situation here, the record there discloses that the delivery issue was never even breached. | Named payee of undelivered check cannot bring conversion action against depositary bank which cashed check over forged endorsement; delivery, either actual or constructive, is indispensable prerequisite for such action. McKinney's Uniform Commercial Code § 3-419. | Can delivery to one payee be considered as constructive delivery? | 00941.docx | LEGAL4JUE-00126934-LEGAL4JUE-00126935 | Condensed_SA_Sub 0.82 | | | 0 | 1 | 1 | 1 |
| 17938 | Skip Kirchdorfer v. United States, 6 F.3d 1573 | 148k2.1 | The Al did not continuously occupy the warehouse. Nevertheless, a permanent physical occupation need not be continuous and uninterrupted. Nollan, 95 F.2d at 1377. An intermittent intrusion still causes a taking. See Loretto Marina, 444 U.S. at 180, 1005 (Ct. at 393 [holding that a compensable taking exists where the Government physically invades the easement in property, allowing third parties to have intermittent access to claimant's property interests). | "Permanent physical occupation" of private property by government that constitutes taking, under Fifth Amendment does not necessarily mean occupation unlimited in duration and does not need to be continuous and uninterrupted; rather, permanent physical occupation can have limited term and an intermittent intrusion still causes taking. U.S.C.A. Const.Amend. 5. | Does a permanent physical occupation need to be continuous and uninterrupted? | Eminent Domain - Memo 313 - GF.docx | ROS5-002818-6244 ROS5-002818049 | Condensed_SA_Sub 0.21 | | | 0 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 17929 | Kelley v. Mallory, 202 Or. 690 | 302k4(1) | It is this deferred of my judicate which first challenges our interest. When we examine the complaints in the two suits we are immediately struck by the fact that certainty. Both are between the same parties and both about the entire agreement of April 2, 1944, as basis for the plaintiff's plans for relief. In both suits the relief sought is for an occurring between Kelley and Mallory predicated upon a fiduciary relationship between them. In the first suit, however, plaintiff pleads as a conclusion of law that the agreement creates a partnership in the business known as Mallory Chevrolet Company, but a conclusion of law is not insoluble, requires no denial and does not aid the pleading. Almada v. Ruelas, Or. 555, 559, 563 P. 907, 3 amounts to a nullity, and a pleader's construction of the legal character of the contract is not binding on the court. Young v. Evans, 104 Or. 619, 624, 208 P. 741; Dickenson v. Henderson, 50 Or. 468, 411, 129 P. 757. When the instrument relied upon is set out in full in the pleading, as in both the Kelley suits, it prevails over the allegations as to its legal effect. Young v. Evans, supra, 104 Or. at page 625, 208 P. 741. | Conclusion of law in pleading is not insoluble, requires no denial, does not aid the pleading, and amounts to a nullity. | Is a conclusion of law a nullity? | 023064.docx | LEGALEASE-00136866-LEGALEASE-00136887 | Condensed, SA, Sub 0.9 | 0.9 | 0 | | | | 1 |
| 17930 | First Am. Title Ins. Co. v. Cumberland Cty. Bank, 633 F. Supp. 2d 566 | 366k41(6) | Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Blankenship v. Estate of Bain, S.S.W.3d 447, 450 (Tenn.1999) (citation omitted). The burden is on the party claiming subrogation to prove entitlement. Castleman Constr. Co. v. Pennington, 222 Tenn. 82, 432 S.W.2d 669, 675 (1968). The question of whether equitable subrogation should apply is one that is answered by equitable principles. Id. at 674. Equitable subrogation is a remedy where application depends upon the balancing of the equities involved. See Lawyers Title Ins. Corp. v. United Am. Bank, 21 F. Supp. 2d 785, 792 (W.D. Tenn 1998). Equitable subrogation "will not be enforced when it would work injustice to the rights of those having equities." Castleman, 432 S.W.2d at 674. | Under Tennessee law, burden is on party claiming subrogation to prove entitlement. | Is the burden on a party claiming subrogation to prove entitlement? | 014025.docx | LEGALEASE-00127110-LEGALEASE-00127111 | Condensed, SA, Sub 0.91 | 0.91 | | | | 1 | |
| 17931 | Kalisch v. Vista, Comm'n of Utah, 872 P.2d 484 | 413k1 | Workers' compensation is centered on the relationship between employer and employee. The "essence of a workers' compensation system... is that it is a mutual arrangement of reciprocal rights between an employer and employee whereby both parties give up and gain certain advantages." Bingham v. Lagoon Corp., 707 P.2d 678, 679 (Utah 1985). Although prisoners may participate in various types of prison work programs, this participation does not create the same "mutual arrangement of reciprocal rights" upon which the workers' compensation system is based. The primary purpose of the workers' compensation system is that of providing for injured workers, not employment. Frank v. State ... | Workers' compensation is centered on relationship between employer-employee | Is workers' compensation centered on the relationship between the employer and employee? | 048538.docx | LEGALEASE-00127191-LEGALEASE-00127192 | Condensed, SA | 0.88 | | 0 | | 1 | |
| 17932 | Mattox v. City of Long Beach, 344 Cal. App. 2d 178 | 212k1006 | Equity acts in the present and not in the past tense, and whether injunctive relief will be granted depends upon present and future conditions and not solely on conditions existing when suit was brought. See Wilms v. Hand, 101 Cal. App. 2d 811, 226 P.2d 728. The county prosecuting attorney then filed an action to enjoin injunctive relief. This is based upon the theory that where equity acts in the present and not in the past tense, "It has been said that equity acts in the present tense, and the relief is dependent on present and future conditions rather than solely on those existing when the suit was brought." [4] It is proper, then, in ruling on a motion for injunctive relief in effect established for a second injunction, the Ohio Court of Appeals said: "In the absence of exceptional circumstances, in equitable actions, the right to judgment or decree is not tested by the facts as of the commencement of the action, but the relief administered is such as the nature of the case and facts as they exist at the close of the litigation demand. An injunction will not be granted when at the time of the hearing conditions have so changed that no unlawful act is threatened. Continental Securities Co. v. Interborough Rapid Transit Co. (D.C.), 207 F. 467; Sherman v. Foster, 158 N.Y. 587 [53 N.E. 504]; Frink v. Norwood, 118 N.Y. 111, 122 [16 N.E. 748], Peck v. Goodberlet, 109 N.Y. 180 [16 N.E. 350]. | The granting or dissolving injunctions, does equity act in present tense? | Action - Memo #165 - C-56.docx | ROSS-003286294-ROSS-003286298 | Condensed, Order, SA, Sub | 0.93 | 1 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17933 | Holzapfel v. Hoboken Manufacturers' R. Co., 92 N.J.L. 193 | 13+62 | We are quite clear that he overstepped the powers conferred by the section quoted. It creates no cause of action where none existed previously, nor does it enable a party to sue in anticipation of a cause of action which has not yet arisen. The general object is, of course, to avoid multiplicity of suits and of judgments, in cases where the rights of all parties may be settled and ascertained with convenience. In effect it is an assimilation to the existing procedure in equity. But even equity ordinarily avoids making an award of money as between debtor and creditor until it is due. Allen v. Taylor, 3 N. J. Eq. 435, 437, 29 Am. Dec. 721; Jordan v. Clark, 16 N. J. Eq. 243, 247. If it accrue after bill is filed and before decree, a supplemental bill is the proper practice. Id.; 16 Cyc. 357; Story, Eq. Pl. " 336. It is, of course, elementary at common law that an action cannot be brought to recover money not due. In attachment cases the statute permits it (Devlan v. Wells, 65 N. J. Law, 213, 47 Atl. 467); but this is a departure from the common law, and when the action is commenced by summons, no claim that matured after the suit was brought can properly be included in the judgment, even in case of an installment contract (Felt v. Steigler, 69 N. J. Law, 92, 54 Atl. 243; Titus v. Gunn, 69 N. J. Law, 410, 55 Atl. 735; 1 C. J. 1148). The rule is a meritorious one, certainly as to causes of action to accrue after the judgment, because non constat that payments will not be promptly made as they accrue. It is going far afield to say that this elemental and sensible rule of the substantive common law was intended to be abrogated by a statute relating to practice-to methods of procedure rather than to rights of action. The judgment in this aspect was clearly erroneous. | "It is, of course, elementary at common law that an action cannot be brought to recover money not due." | "In an action at law, can a claim maturing after suit was brought be included in judgment?" | 005943.docx | LEGALEASE-00127916-LEGALEASE-00127918 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 17934 | Walden's Lessee v. Craig's Heirs, 39 U.S. 147 | 13+63 | In Kentucky there is no law which limits a revival of judgments; and at law, lapse of time can only operate by way of evidence. From lapse of time, and favourable circumstances, the existence of a deed may be presumed, or that an obligation has been discharged; but this presumption always arises under pleadings which would render the facts presumed proper evidence. A demurrer to a scirefacias raises only questions of law on the facts stated in the writ of scirefacias; no evidence is heard by the Court on the demurrer; and consequently there is no presumption against the judgment on which the writ issued, from lapse of time. | At law, lapse of time can only operate by way of evidence. | "At law, can a lapse of time only operate by way of evidence?" | 006041.docx | LEGALEASE-00127358-LEGALEASE-00127359 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 17935 | Cullen v. Johnson, 325 Mo. 253 | 13+36 | The instant action is brought under the statute (section 1970, R. S. 1919) to quiet title to land, based on the plaintiffs' claim of the ownership of said land in fee, and is purely an action at law, unless an equitable issue as to the ownership of the land is tendered by the defendant's answer. Dumm v. Cole County, 315 Mo. 568, 574, 287 S. W. 445; Lee v. Conran, 213 Mo. 404, 413, 111 S. W. 1151; Cullen v. Atchison County (Mo. Sup.) 268 S. W. 93, 95. Laches is peculiarly a defense to an equitable claim or cause of action, and has no place as a defense to an action at law, or to an action wherein plaintiff stands upon a claim of legal title. Hecker v. Bleish, 319 Mo. 149, 172, 3 S.W.(2d) 1008; Willis v. Robinson, 291 Mo. 650, 675, 237 S. W. 1030; Brooks v. Roberts, 281 Mo. 551, 558, 220 S. W. 11; Bell v. George, 275 Mo. 17, 30, 204 S. W. 516; Kellogg v. Moore, 271 Mo. 189, 193, 196 S. W. 15; Chilton v. Nickey, 261 Mo. 232, 243, 169 S. W. 978; Hayes v. Schall, 229 Mo. 114, 124, 129 S. W. 222. It is plain from the allegations of the petition herein that plaintiffs ground their cause of action wholly and solely upon a claim of a legal, as distinguished from an equitable, title to the land in controversy; and, under the prior announcements of this court, the plaintiffs cannot be divested of their legal title by the application of the equitable doctrine of laches. Bell v. George, 275 Mo. loc. cit. 30, 204 S. W. 516, and cases there cited. Looking to defendant's answer, we find no equitable issue therein tendered as respects the title and ownership of the land in controversy. Defendant, by his answer, claims a legal title in fee to the land in controversy, based upon the ground that the land is of island formation, and therefore that the legal title to said land was vested in the state of Missouri, prior to April 8, 1895, as a part of the public domain, and that the state, by virtue of the statute enacted on April 8, 1895 (sections 7029-7043, R. S. 1919), granted and transferred the legal title in said land to Atchison county, and | Defendant's answer in quiet title action, attempting to set up plaintiffs' laches as equitable defense, but unaccompanied by prayer for affirmative equitable relief, did not convert law action into equitable action. V.A.M.S. S 527.150. | Is laches peculiarly a defense to an equitable claim and has no place as a defense to an action at law? | 006090.docx | LEGALEASE-00127921-LEGALEASE-00127922 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 17936 | F.C.C. v. Florida Power Corp., 480 U.S. 245 | 148+2.1 | This element of required acquiescence is at the heart of the concept of occupation. As we said in Loretto:"[P]roperty law has long protected an owner's expectation that he will be relatively undisturbed at least in the possession of his property. To require, as well, that the owner permit another to exercise complete dominion literally adds insult to injury. Furthermore, such an occupation is qualitatively more severe than a regulation of the use of property, even a regulation that imposes affirmative duties on the owner, since the owner may have no control over the timing, extent, or nature of the invasion." 458 U.S., at 436, 102 S.Ct., at 3176 (citation omitted). | Element of required acquiescence is at the heart of concept of occupation for purposes of per se taking analysis under the Fifth Amendment. U.S.C.A. Const.Amend. 5. | Is the element of required acquiescence at the heart of the concept of occupation? | Eminent Domain - Memo 329 - GP.docx | LEGALEASE-00017638-LEGALEASE-00017639 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17937 | Morin v. Makowski, 67 A.D.2d 1080 | 366+15 | Plaintiff next argues that the alleged oral agreement is not a defense to his claim under the complaint pleading principles of indemnity, subrogation and contribution. It is possible, however, to surrender one's right to subrogation by agreement (Sterling Factors Corp. v. Freeman, 50 Misc.2d 715, 719, 271 N.Y.S.2d 361, 365; affd 27 A.D.2d 956, 279 N.Y.S.2d 577). Therefore, as the oral agreement might extend to plaintiff's rights of indemnity, subrogation and contribution, its proce terms raise issues of fact to be determined at trial. Finally, plaintiff argues that even if there were an oral agreement such as defendant's contend, defendant husband breached an implied covenant of good faith by failing to maintain the business as a partnership. Plaintiff asserts that defendant's incorporation of the business prevented plaintiff from participating in the business as a silent partner and as an active partner upon his retirement from Eastman Kodak. Inasmuch as the precise terms of the agreement dealing with plaintiff's participation in the business are unclear, there are issues of fact which must be resolved before the question of a possible breach can arise. | It is possible to surrender one's right to subrogation by agreement. | Is it possible to surrender one's right to subrogation by agreement? | 043651.docx | LEGALEASE-00227726 LEGALEASE-00227729 | Condensed, SA | 0.94 | 0 | 1 | 1 | 1 | |
| 17938 | Celtic Life Ins. Co. v. McLendon, 814 So. 2d 222 | 217+3275 | Second, McLendon's interpretation of the arbitration provision simply does not make sense, as other courts addressing and rejecting similar interpretations have concluded. "[T]he sole option in a dispute over an arbitration agreement does not imply that the parties to the agreement have the option of avoiding arbitration, because other than when a dispute arises through use of the word "may" was to dodecahedron its case." "Id. Such an interpretation "would render the arbitration provision meaningless for all practical purposes. If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include ... the arbitration provision in their contract at all. See the parties to an existing dispute could always voluntarily submit to arbitration." Austin v. Owens" Brockway Glass Container, Inc., 78 F.3d 875, 879 (4th Cir.) (emphasis added), cert. denied, 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996). See also Austin Halt Dance Pure Co. v. Austin Co., 814 F.2d 1035, 1038 (6th Cir.1990); Wilson v. Louisville & Nashville R.R., 839 F.2d 644, 646*49 (6th Cir.1987) (language directing that disputes "may be referred by either party to an arbitration committee" was mandatory); Bonnot v. Congress of Indep. Unions, Local No. 14, 331 F.2d 355, 359 (8th Cir.1964); Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, 422 (5th Cir.1962); McCrea v. Oh's Copeland, Jumper & Stockman P.A., 945 F.Supp. 879, 881 (D.Md.1996) (language directing that "either party may petition the ... court ... for an order compelling the arbitration" is mandatory); Binek 125 Corp. v. Fairmont Hotel Mgmt. Co., 648 F.Supp. 450, 451 (D.Colo.1986) (clause providing that "either party may serve upon the other a written notice stating that such party desires to have the controversy ... reviewed by an arbitrator" was mandatory); accord. | Arbitration clause in medical insurance policy stating that the disputes may be resolved by arbitration provided for mandatory, not permissive, arbitration; other terms of the clause made arbitration binding and a waiver of the right to seek remedies in court, and if neither party had a right to insist on arbitration, the clause would be meaningless since the parties could always voluntarily submit to arbitration. | Can an arbitration provision be included in a contract when the parties to the agreement intended for arbitration to be permissive? | Alternative Dispute Resolution - Memo #7 - RG.docx | ROSS-003286972-ROSS-003286973 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | |
| 17939 | Crawford v. Cothrani, 531 F.2d 1114 | 16+2 | At the same time, a subordination rests within this crowd that has reiterated the proposition that the military is subject to the Bill of Rights and its constitutional implications. For example, both the first and Fourth Circuits have addressed the constitutional question where there were constitutional rights at issue. Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965) (dishonorable discharge appeal); Reed v. Franke, 297 F.2d 17 (4th Cir. 1961). See also Harmon v. Lambed, 389 F.2d 701 (2d Cir. 1968) (conscientious objector's claim of right to discharge); the court holds that actions by the armed services that are violative of their own regulations are within the reach of the courts. Yodawara v. Laewer, 456 F.2d 1164 (2d Cir. 1972); United States ex. Brehm v. Brehm, 464 F.2d 141, 145 (2d Cir. 1969); Cf. Quinn v. Lawson, 446 F.2d 189 (1st Cir. 1971), cert. denied, 404 U.S. 961, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972) (Note, Judicial Review and Military Discipline: Cortright v. Roon: The Case of the Boys in the Band, 72 Colum.L.Rev. 1048 (1972); Dec'a, where a military official action was beyond his powers, the federal courts may review matters of internal military affairs. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Minderv. Scanner, 459 F.2d 197 (5th Cir. 1971). | The military is subject to the Bill of Rights and its constitutional implications. | Is the military subject to the bill of rights and its constitutional implications? | 000035.docx | LEGALEASE-00128636 LEGALEASE-00128637 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | 1 |
| 17940 | Kelly v. Colston, 977 So. 2d 692 | 307A+501 | Under the Family Rules of Procedure, a voluntary dismissal of a petition forbids judicator is governed by Florida Rule of Procedure 1.420. See Fla. R. Fam. P. 12.420. This rule, which allows a petitioner to dismiss a petition, states in pertinent part, "an action may be dismissed by plaintiff without order of court ... before substitution of a response case for the court for decision ...." Fla. R. Civ. P. Rule 1.420(2)(1) (emphasis added); see also Tobkin v. State, 777 So.2d 1160, 1163 (Fla. 4th DCA 2001). The petitioner has a nearly absolute right to voluntarily dismiss. See Pino v. Lumford, 314 So.2d 578 (Fla.1975). Since we have made a determination that a voluntary dismissal was affirmed even though the trial court had orally announced ... outside of the jury's hearing, that it would direct a verdict in favor of the defendant. Id. | Petitioner has a nearly absolute right to voluntarily dismiss. | Does a petitioner have a nearly absolute right to voluntarily dismiss? | Pretrial Procedure - Memo #346 - C - RG.docx | ROSS-003327344-ROSS-003327347 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17941 | Harthun v. Edens, 2016 WL 1258962 | 307H+503 | Tennessee Rule of Civil Procedure 41(b) provides, in pertinent part, that "except where a motion for summary judgment is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial ..." (emphasis added). "Rule 41 ... provides that a party has a right to take a voluntary nonsuit to dismiss an action without prejudice except where a motion for summary judgment is pending." Oliver v. Hydro-Vac Services, Inc., 873 S.W.2d 694, 696 (Tenn. Ct. App. 1993). "Thus, in most situations, a voluntary non-suit may be taken as a matter of right. However, such is not the case when a motion for summary judgment is pending." Stansbury v. Hannah, No. 01A-01-9704-CV-00143, 1997 WL 789856 (Tenn. Ct. App. 2014) (quoting Cloninger v. Baptist Health Systems, 974 S.W.2d 898, 700 (Tenn. Ct. App. 1991)) (emphasis omitted). Despite Rule 41 (1)'s prohibition on, under state Rule 41(1), the authority to permit a voluntary dismissal, notwithstanding the pendency of a motion for summary judgment. Stewart, 15 Tenn. App. at 593. "[T]he trial judge, in the exercise of his sound judicial discretion, [is] [could] permit the plaintiff to grant [a plaintiff's motion for voluntary nonsuit]. | In most situations, a voluntary non-suit may be taken as a matter of right; however, such is not the case when a motion for summary judgment is pending. Tenn. R. Civ. P. 41.01. | Can a voluntary nonsuit be taken as a matter of right? | 059097.docx | LEGALEASE-00230261 LEGALEASE-00230262 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 17942 | In re Spree Com Corp., 295 B.R. 762 | 366+55 | More importantly, subrogation rights do not exist unless asserted by the subrogee. Boeing Helicopters, supra. The record is totally devoid of any indication that the Veterans Capital Ltd. or the Hartford intended to pursue subrogation rights against the estate, much less that they have exercised reasonable diligence in doing so. Neither has attempted to intervene in this adversary action, nor have they attempted to assert an interest in Trotter's proof of claim such as by seeking to amend the claim or filing a notice of transfer of the claim under Fed. R. Bankr. P. 3001(e). There is not even any evidence that they have notified the Debtor or the Chapter 7 trustee of their intent to seek subrogation rights pursuant to the filing of a claim. The complete absence of any attempt by these entities to pursue their alleged subrogation rights strongly belies that they have any real interest in doing so. | Under Pennsylvania law, subrogation rights do not exist unless asserted by subrogee. | Do subrogation rights exist unless asserted by a subrogee? | Subrogation - Memo # 1100- C - SK.docx | ROSS-003113733 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | |
| 17943 | Nestle v. Future Const., 836 N.E.2d 445 | 366+55 | Furthermore, the trial court did not, as it turns out, find that Nestle's actions were willful and wanton and/or grossly negligent. The trial court stated in its findings that although Nestle has alleged[ed] the theory that Future has waived its right of subrogation against Nestle due to the terms of paragraph 11.3.7 of the contract between Future and Purm. Township, this provision is superseded by the waiver provision in the contract and Future by underpinning work to Coffey without notice to Future and the negligent acts of Nestle and Coffey which led to the collapse of the Warehouse. Appellant's App. p. 29 P90 (emphasis added). The trial court found nothing more than a breach of contract and negligence, and we see no reason to charge Nestle with willful and wanton or gross negligence on these facts. And as noted in Mikkelsen, negligence and breach of contract do not supersede a waiver of subrogation clause is valid and enforceable. | Negligence and breach of contract do not supersede a waiver of subrogation. | Does negligence and breach of contract supersede a waiver of subrogation? | 043178.docx | LEGALEASE-00230531 LEGALEASE-00230532 | Condensed, SA | 0.93 | 0 | 1 | 1 | 1 | |
| 17944 | Lexington Ins. Co. v. Entrex Comm. Services, 275 Neb. 702 | 366+55 | We, like other jurisdictions, recognize the important policy goal that waiver of subrogation clauses serve in the insulation of construction projects and reducing litigation among parties to complicated construction contracts. Concluding that waiver of subrogation cannot be enforced against gross negligence claims would undermine this policy by encouraging every litigation in contribution where a party's actions may provide negligent. Therefore, we conclude that "public policy favors enforcement of waivers of subrogation even in the face of claims of gross negligence. Because a waiver of subrogation clause in subparagraph 11.4.7 is effective to bar Lexington's gross negligence claims, we need not determine the scope of the waiver. | A contractual waiver of subrogation is enforceable against gross negligence claims. | Can you contractual waive subrogation and have it be enforceable against gross negligence claims? | 043221.docx | LEGALEASE-00230561 LEGALEASE-00230562 | Condensed, SA | 0.89 | 0 | 1 | 1 | 1 | |
| 17945 | Rexton ker v. KK & J, 69 A1.3d 481 | 217+3522 | However, the record insures an issue of fact whether KK & J satisfied its risk allocation scheme under the lease agreement. A1.5i Paul points out, waiver of subrogation clauses are necessarily premised on the procurement of insurance by the parties". (Liberty Mut. Ins. Co. v. Perfect Knowledge, 299 A.D.2d 524, 526, 752 N.Y.S.2d 677 [2002]) (although the plain language of the subject lease agreement does not require any party other than Duane Reade to procure fire insurance, defendants submitted evidence that KK & J, through its insurer, provided such coverage. Therefore, a question of fact exists as to whether KK & J was covered for the risk of fire, and since the lease agreement does not require that the insurance proceeds be the first that the policy identified, "KK & J's obligation to procure fire type insurance necessary to the enforcement of the waiver clause. A triable issue is raised by the fact that the policy identifies "Hospitality and Leisure Services, Inc.," and not KK & J, as the named insured. | Waiver of subrogation clauses are necessarily premised on the procurement of insurance by the parties. | Does a party need insurance to waive a subrogation clause? | 043235.docx | LEGALEASE-00230463 LEGALEASE-00230464 | Condensed, SA | 0.91 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17946 | In re Spree.Com Corp., 295 B.R. 762 | 366+35 | Under Pennsylvania law, the doctrine of subrogation is an equitable one, regardless of any contractual provision. Zurich--American Insurance Co. v. Eckert, 770 F.Supp. 269, 272 (E.D.Pa.1991) (citing Associated Hospital Service v. Pustilnik, 497 Pa. 221, 439 A.2d 1149 (1981)). I must disagree with Tesler's assumption that the Venture Capitalists or the Hartford have automatically become subrogated to his claim by payment of his legal fees. To the contrary, subrogation is not self-executing. Rather, it is a right which must be pursued with "reasonable diligence" by the alleged subrogee or lost. Boeing Helicopters v. Workers' Compensation Appeal Board, 713 A.2d 1181, 1186 (Pa.Commw.1998). Moreover, a claimant may avail itself of the remedy of equitable subrogation only after showing: (1) the claimant paid the creditor to protect his own interests; (2) the claimant did not act as a volunteer; (3) the claimant was not primarily liable for the debt; 1.e., is only secondarily liable; (4) the entire debt has been satisfied; and (5) allowing subrogation will not cause injustice to the rights of others. See e.g., Tudor Development Group, Inc. v. U.S. Fidelity & Guar. Co., 968 F.2d 357, (3d Cir.1992) (citations omitted) | Under Pennsylvania law, subrogation is not self-executing, but is right which must be pursued with reasonable diligence by the alleged subrogee or it is lost. | Can subrogation be self-executing? | Subrogation - Memo # 1082 - C - KG.docx | ROSS-003317333-ROSS-003317335 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 17947 | Noroton Properties v. Lawendy, 154 Conn. App. 367 | 8.30E+184 | "A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies.... The rules governing contract formation are well settled.... [A]n offer imposes no obligation upon either party, until it is accepted by the offeree, according to the terms in which the offer was made." (Citation omitted; internal quotation marks omitted.) TD Bank, N.A. v. M.J. Holdings, LLC, 143 Conn.App. 322, 331, 71 A.3d 541 (2013). "Likewise, [f]or a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense.... Modification of a contract may be inferred from the attendant circumstances and conduct of the parties.... A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." | A "promissory note" is nothing more than a written contract for the payment of money, and, as such, contract law applies. | Is a promissory note a contract? | Bills and Notes - Memo 142 - RK.docx | LEGALEASE-00018580-LEGALEASE-00018581 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 17948 | Abbott v. Hurst, 643 So.2d 589 | 289+485 | It is well-settled law that when no time is fixed by contract for the continuance of a partnership, a partnership at will is created, and that such a partnership is terminable at the will of any partner. E.g., Moody v. Myers, 265 Ala. 435, 91 So.2d 686 (1956); Ramsey v. Wilkins, 253 Ala. 614, 46 So.2d 407 (1950). Further, if a partnership is dissolvable at the will of any partner, a partner has no right to recover damages from another partner who terminates the partnership. See generally 59A Am.Jur.2d Partnership " 565, at 524 (1987). | When no time is fixed by contract for continuance of a partnership, partnership at will is created. | "When no time is fixed by contract for the continuance of a partnership, is a partnership at will created?" | 021973.docx | LEGALEASE-00128895-LEGALEASE-00128896 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 17949 | Walthall v. U.S., 911 F.Supp. 1275 | 289+637 | Legal scholars have debated the nature of "partnerships" for many years. See United States v. Basye, 410 U.S. 441, 447"49, 453"57, 93 S.Ct. 1080, 1084"85, 1087"89, 35 L.Ed.2d 412 (1973); see also Donald J. Weidner, A Perspective To Reconsider Partnership Law, 16 Fla.St.U.L.Rev. 1 (1988). One school of thought views a partnership as an entity; a venture having an existence separate and distinct from its partners akin to a corporation or other form of state chartered business association. Alternatively, a partnership may be viewed as an aggregate, an assemblage of people working together. The Uniform Partnership Act, which has been enacted in most states, is a compromise between the two views. It defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Alaska Stat. " 32.05.010.Each partner is an agent of the partnership for partnership purposes (Alaska Stat. " 32.05.040), and by extension, each partner is an agent for every other partner for purposes of partnership property. See, e.g., Friend v. H.A. Friend & Co., 416 F.2d 526, 533 (9th Cir.1969); Stork Restaurant v. Sahati, 166 F.2d 348, 361"62 (9th Cir.1948). Consequently, notice to one partner regarding a matter of importance to the partnership is notice to every partner. Alaska Stat. " 32.05.070; Friend, 416 F.2d at 533. | Notice to one partner regarding matter of importance to partnership is notice to every partner. AS 32.05.070. | Does a notice to one partner serve as a notice to allthe partners? | Partnership - Memo 215 - RK.docx | LEGALEASE-00018665-LEGALEASE-00018666 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 17950 | Rodgers v. RAB Investments, Ltd., 816 S.W.2d 543 | 289+950 | An ouster of a partner is a sufficient expression of will to dissolve the partnership. Infusaid, 739 F.2d at 670. The partnership continues to exist, at least for the purposes of winding up. Only on termination of the partnership does the relationship end. Woodruff, 558 S.W.2d at 539; see Tex. UPA " 30. Section 42 of the Texas Uniform Partnership Act lists the rights of an outgoing partner when the remaining partners continue the partnership business after dissolution. The outgoing partner may claim the value of his interest at dissolution and either interest on that value from the date of dissolution or profits attributable to the use of his right in the partnership property from the date of dissolution. The outgoing partner's right to profits ends when he receives the value of his interest. Cauble v. Handler, 503 S.W.2d 362, 366 (Tex.Civ.App."Fort Worth 1973, writ ref'd n.r.e.); see Tex. UPA " 42 | Ouster of partner is sufficient expression of will to dissolve partnership; partnership continues to exist, at least for purposes of winding up, and only on termination of partnership does relationship end. | Is the ouster of a partner a sufficient expression of the will to dissolve the partnership? | 021997.docx | LEGALEASE-00128921-LEGALEASE-00128922 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 17951 | Found. Engineers v. Superior Court, 19 Cal. App. 4th 104 | 401+5.5 | Although chiefly neither state, we also recognize through authority on this issue in which it may before a harm than may Cal.Rptr.3d 510 NW.2d 491 the Supreme Court of North Dakota considered whether faulty workmanship to underground pipes was an injury to real property. The plaintiff had alleged faulty workmanship, improper installation, breach of contract, negligence, misrepresentation, and fraud. The essential character of Water Association's suit is breach of contract. The physical damage to the pipeline is an incidental consequence of the alleged breach of contract. Water Association seeks money damages against the defendants. Id. at 491). The pipeline would at most indirectly affect the property. [Bell ("We hold that the alleged defects in the pipeline resulting from defendant's alleged breach of contract are not the type of injuries to real property contemplated by [the statute]. The alleged character of the property is admittedly narrow, but is consistent with the rationale of our past decisions and with the apparent trend in other states."(Id. at p. 495.) | [An alleged defects in] underground water pipelines, resulting from defendant's alleged breach of contract, the type of injuries to real property contemplated by error statutes for actions relating to real property? | Action is not transitory for venue purposes simply because money damages are sought but, rather, an action may essentially be local although it seeks damages for injury to real property. Weis's Ann.Cal.C.P. 55 510, 395(a, b), 395.5. | 047494.docx | LEGALEASE 00135851 LEGALEASE 00135852 | Condensed, SA, Sub 0.8 | | 0 | 1 | 1 | 1 | 1 |
| 17952 | Vincent v. Vincent, 06-418 (La. App. 3 Cir. 10/31/06), 945 So. 2d 114 | 30+4 | Ms. Vincent contends that the consent judgment should be annulled due to fraud and misrepresentations by Mr. Vincent. However, an appeal is not the appropriate procedural remedy to annul a consent judgment. See v. Merchants Ford L/W, Inc., 99*905 (La App. 3 Cir.. 5/19/99), 741 So.2d 122, 123 [urt]. An appeal cannot be used to address the question of nullity. Phillips v Space Master International, Inc., 96*877 (La App. 5 Cir. 2/14/97), 696 So.2d 64. Accordingly, under these circumstances, Ms. Vincent's appeal must be dismissed. | Is an appeal the appropriate remedy to attempt to annul a consent judgment? | An appeal is not the appropriate remedy to obtain relief from a consent judgment? | 005215.docx | LEGALEASE 00218939 LEGALEASE 00218940 | Condensed, SA 0.86 | | | 0 | 1 | 1 | 1 |
| 17953 | CA V. Club v. Gonzalez, 593 S.W.2d 755 | 30+5 | The following four elements are necessary for us to review a case by writ of error: 1) the petition must be brought within six months of the date of judgment; 2) the party filing appeal must have been a party to the suit; 3) the party must not have participated in the trial, and 4) error must be apparent from the face of the record. Tex.R.App.P. 45; Stubbs v Stubbs, 685 S.W.2d 643, 644 (Tex. 1985); Brown v Motorcar Co. Children's Protective Servs., 825 S.W.2d 392, 395 (Tex.App.—Dallas 1993). Each element is mandatory and jurisdictional and cannot be waived. Serna v. Webster, 908 S.W.2d 487, 491 (Tex.App.—San Antonio 1995, no writ). Mercado has clearly met the first two elements, Mercado contended that he did not participate in the trial. We disagree. | Elements necessary for Court of Appeals to review a case by writ of error are mandatory and jurisdictional and cannot be waived. Rules App. Proc., Rule 45. | What are the requirements for bringing in an appeal by writ of error? | 006915.docx | LEGALEASE 00129097 LEGALEASE 00129098 | Condensed, SA, Sub 0.78 | | | 1 | 1 | 1 | 1 |
| 17954 | Pilkington, Peters, 163 Iowa 86 | 30+13 | It is not disputed by the appellant that, where a proper notice of appeal has been served and perfected, the lower court loses jurisdiction and the cause is transferred to this court. It has been held that a subsequent appeal by the same party, while such former appeal is pending, is nugatory. State v. King, 6 S. D. 297, 60 N. W. 75; Newberry v Dumas & Co., 196 Iowa 140, 153, 76 N. W. 154; [Koobicus v [Kooby], 125 Iowa 105, 100 N. W. 501. Newberry's appeal to this Court held that when the second notice of appeal was served the cause was pending in this court and as the second appeal was rendered by writ of appeal as a petition for writ then had of the case or to its power to grant relief. We apprehend this is so because the first notice was sufficient to give this court jurisdiction. The case cited assumes that the first notice was good and did give this court jurisdiction. | A subsequent appeal or notice by the same party while the first is pending is nugatory. | Is a subsequent appeal or notice for the same party's while their first appeal is pending considered nugatory? | ROSS 00031506BR-ROSS 00031089 | ROSS 00031506BR-ROSS 00031089 | Appeal and error Memo 63 - RK.docx | Appeal and error Memo 63 - RK.docx | 1 | 1 | 1 | 1 | 1 |
| 17955 | Mauatire v. Carter, 528 So. 2d 551 | 30+103 | This is an appeal from an "Order of Abatement and Stay." The order was rendered by the court, not the Civil Certiorari Procedure. A notice of appeal from that order was filed in the circuit court on November 9, 1988. Because appellant seeks review of a nonappealable order, we have elected to treat this notice of appeal as a petition for writ of certiorari. In order to comply with the Rules 9.040(c), and treat the matter as if the proper remedy had been sought. | Can a petition for a writ of certiorari be treated as a notice of appeal? | Order of abatement and stay, which was filed in circuit court, was not appealable; moreover, District Court of Appeal Florida third District Court of Appeal would review matter as a petition for writ of certiorari because such a petition must be filed within the District Court, and not the circuit court as in the writ of certiorari for plenary appeals, within 30 days of rendition of order to be reviewed. West's F.S.A. R.App.P.Rules 9.030(g), 9.040(c), 9.100(b, c). | 006212.docx | LEGALEASE 00129423 LEGALEASE 00129424 | Condensed, SA, Sub 0.23 | | 1 | 1 | 1 | 1 | 1 |
| 17956 | Clark v. Elza, 286 Md. 208 | 30+21 | In this Court, both sides now agree that the decision of the circuit court was immediately appealable. Nevertheless, the settlement of litigants cannot act upon or establish or render the exercise of appellate jurisdiction ... does not enable us to overlook the matter. As was stated in Eastgate Associates v Apper, 276 Md. 698, 700, 350 A. 2d 661 (1976): "The jurisdiction of this Court, and the Court of Special Appeals, is determined by constitutional provisions, statutory provisions and rules; jurisdiction cannot be conferred by consent of the parties. "Consequently, "this Court will dismiss an appeal [sua sponte when] it notices that appellate jurisdiction is lacking." Smith v. Taylor, 285 Md. 143, 145, 400 A.2d 1130 (1979). See Rule 835 a 1. Similarly, where the Court of Special Appeals has entertained an appeal without having jurisdiction to do so, the appeal may brought to our attention, such as by a petition for a writ of certiorari dealing with the merits of the appeal, we will issue a writ of certiorari and dispose of the case summarily, consider the jurisdiction of the intermediate appellate court. Eastgate Associates v Apper, supra. See also the Monica, Inc. v. Venezia, 268 U.S. 116 (1945, 1971), 97A.2d 104, 47 L.Ed.2d 451 (1976) ("Though neither party has questioned the jurisdiction of the Court of Appeals to entertain this appeal, we are obligated to do so on our motion if a question therein exists."). | Can the consent of the litigants cannot vest jurisdiction in an appellate court? | Consent of litigants cannot vest jurisdiction in an appellate court. | 006321.docx | LEGALEASE 00105052 LEGALEASE 00105053 | Condensed, SA 0.95 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 17957 | Centennial Ins. Co. v. Sandner, 259 Ga. 317 | 30+14(4) | Construing the foregoing provisions literally, * 1 & 30 we find that an appellee may institute a cross appeal against a party other than a v. Rem., 265 Ga. 294(1), 271 S.E.2d 199 (1980); Munrobn U.S. Insurance, Inc. v. Kalb, 241 Ga. 390... supra, 241 Ga. 307, 348 S.E.2d (476 statements to the contrary that are contained in Glennville Wood, etc., Co. v. Riddlespur, 156 Ga. App. 578(1), 276 S.E.2d 248 (1980), and Al American Assur. Co. v. Brown, 177 Ga App. 402, 405, 339 S.E.2d 611 (1986), are disapproved. | Under Appellate Practice Act, appellee may institute a cross appeal against a party other than the appellant. O.C.G.A. §§ 5-6-38 to 5-6-51. | Can an appellee institute a cross appeal against a party other than the appellant? | Appeal and error - Memo 75 - RK.docx | ROSS-003113494-ROSS-003113499 | Condensed, SA 0.81 | 0.81 | 0 | 1 | | 1 | 1 |
| 17958 | Antosh v. United States, 465 F.2d 592 | 34+3(1) | In this context, we decline to extend the requirement of a full formal hearing to the individualized review of the servicemen's records. No decision has been cited, and our research has disclosed none, which has extended such rights so far within the military realm. On the contrary, recently decided cases have held uniformly that discretionary rulings by the Army are beyond the power of review of civilian courts. History v. Secretary, 220 F.Supp. 241 (D.Mass.1971); Motion for stay denied, Misc. No. 44(1)(st Cir. Jan. 19, 1971); Orinry v. Kelly, Misc. No. 448 (1st Cir. 1971), aff'g Civil Action No. 3205 (D.N.H. Jan. 12, 1971); Winters v. United States, 281 F.Supp. 289, 295 (S.D.N.Y. 1968), aff'd, 390 F.2d 879 (2d Cir. 1968); Roe v. McNamara, 263 F.Supp. 686(D.R.I.1969); Brown v. McNamara, 263 F.Supp. 686 (D.N.J.), aff'd in this respect, 387 F.2d 150, 152 (3d Cir. 1967)... the availability of military sub-order with its own code of laws, system of justice and hierarchy of tribunals the duty of the serviceman; and in determining whether or not the military has acted within the jurisdiction conferred on it by valid law... reviewed the exercise of discretion to see whether it was well or ... based on any substantial evidence rule. Winters v. United States, 281 F.Supp. at 295. | Discretionary rulings by the Army are beyond the power of review of civilian courts. | Can discretionary rulings of an army be subject to judicial review? | Armed Services - Memo 104 - JS.docx | ROSS-003289054-ROSS-003289055 | Condensed, SA 0.95 | 0.95 | 0 | 0 | | 1 | 1 |
| 17959 | Caledonia Nat. Bank of Danville v. McPherson, 116 Vt. 328 | 8,381+76 | The defendant claims that his check in question did not represent money or funds in the possession of the plaintiff until the check was certified or accepted by the bank upon which it was drawn; that because there was no title liable to the holder unless and until it accept or certifies the check. "The argument is fallacious but not convincing. Although it is very unlikely that the safety takes a deposit of checks and the depositor have funds against which the bank would allow checks to be drawn until the bank had forwarded the checks to be accepted or certified it had received notice that they had been paid by the bank upon which they were drawn unless the depositor's bank is giving the depositor credit for the checks deposited merely upon the financial responsibility of the depositor endorser. The section has to do with the relationship between the depositary bank and the bank upon which the check is drawn and not between the bank and the depositor or the bank and the drawer of the check. Here the suit is against the drawer of the check himself in his attempt to stop payment that he did not have upon which the check was drawn which the subject-matter of the action would have been involved. In revoking or countermanding a check the drawer takes upon himself all the consequences of his act. 7 Am.Jur., Banks, Par. 602. | In revoking or countermanding a check the drawer takes upon himself all consequences of his act. | Do the consequences of revoking a check falls on the drawer? | 009375.docx | LEGALEASE-00129172-LEGALEASE-00129172 | Condensed, SA 0.94 | 0.94 | 0 | 1 | | 1 | 1 |
| 17960 | People v. Shipley, 256 Mich. App. 167 | 67+2 | The breaking-and-entering statute, which was the predicate felony in Mitchell, provided, in pertinent part, "Any person who breaks and enters any occupied dwelling house, with intent to commit any felony or any larceny therein, shall be guilty of Holony..." 'M.C.L. * 750.110. Breaking and entering is not a continuing offense, but rather is completed once the offender has entered the building. People v. Squiers, 206 Mich. App. 384, 460, 621 N.W.2d 361 (2000). Therefore, the theft of the firearm in Mitchell could not be support the predicate for the felony-firearm conviction, with the breaking and entering as the predicate felony, because the breaking and entering offense was completed with entry into the building. Thus, the ensuing firearm possession was not during the commission or attempted commission of breaking and entering. | Breaking and entering is not a continuing offense, but rather is completed once the offender has entered the building. | Is breaking and entering a continuing offense? | Burglary - Memo 62 - RK.docx | ROSS-003341347-ROSS-003341348 | Condensed, SA 0.86 | 0.86 | 0 | 1 | | 1 | 1 |
| 17961 | In re Lamont R., 200 Cal. App. 3d 244 | 67+2 | Section 459 provides, in part: "Every person who enters any house... [a]t vehicle as defined by the Vehicle Code when the doors are locked, ... with intent to commit grand or petit larceny or any felony is guilty of burglary." Emphasis added.) An essential element of vehicular burglary under this section is that the vehicle must be "locked." (People v. Woods (1980) 112 Cal.App.3d 226, 230, 169 Cal.Rptr. 179; In re Charles G. (1979) 95 Cal.App.3d 62, 65, 156 Cal.Rptr. 832.) "[T]he word "lock" means to make fast by the interlinking or interlacing of parts. ...[such that] some force (is) required to break the seal or open the entry." (People v. Massie, supra, 241 Cal.App.3d at p. 817, 51 Cal.Rptr. 18; approving of an instruction.) The Oxford English Dictionary defines "lock" as "1. An appliance for fastening a door, lid, etc., consisting of a bolt or system of bolts with mechanism by which it can be propelled and withdrawn by means of a key or similar instrument." (VI Oxford English Dict. (1970) p. 383.) | Essential element of vehicular burglary is that vehicle must be locked. West's Ann.Cal.Penal Code § 459. | Is locking an essential element of common vehicular burglary? | 013211.docx | LEGALEASE-00220342-LEGALEASE-00220343 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | 1 | 1 | 1 |

3168

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 17962 | Kane Cty. v. Carlson, 116 Ill. 2d 186 | 78+6 | The circuit clerk is a nonjudicial officer of the judicial branch of government (Ill. Const.1970, art. VI, sec. 18(b); Drury v. County of McLean (1982), 89 Ill.2d 417, 60 Ill.Dec. 624, 433 N.E.2d 666)… | For purposes of Public Labor Relations Act, circuit clerk, and not chief judge, is employer of deputy clerks. S.H.A. ch. 48, ¶ 1603-1607. | Is the circuit clerk the employer of deputy clerks? | 01358.docx | LEGALEASE-00129577 LEGALEASE-00129578 | Condensed_SA | 0.89 | 0 | | | 1 | |
| 17963 | State v. Hoskley, Home & Impv., 134 La. 854 | 302+41(1) | A pleader is not required to allege the evidentiary or intermediate facts, but he must at least allege the ultimate facts… | Are ultimate facts conclusions drawn from evidentiary facts? Ultimate facts of necessity are conclusions from intermediate and evidentiary facts, but legal conclusions cannot be pleaded as ultimate facts. | Are ultimate facts conclusions drawn from evidentiary facts? | Reading - Memo 215 - BMR.docx | LEGALEASE-00039197 LEGALEASE-00039198 | Condensed_SA | 0.85 | | 0 | 1 | | |
| 17964 | Clark v. Hartman, 170 La. 949 | 302+41(1) | Our conclusion is that the petition is not faulty in the respect contended for… | In possessory actions, allegations that petitioner had real and actual possession and enjoyment of property held not conclusion or opinion. | In an allegation of real and actual possession a legal conclusion? | 02323.docx | LEGALEASE-00129390 LEGALEASE-00129391 | Condensed_SA, Sub | 0.41 | 1 | | | 1 | |
| 17965 | Romano v. Riggs, 237 S.C. 354 [?] | 307A+563 | This being a suit in equity, Bestate v. Coryn, 27 S.C. 235, 3 S.E. 219… | Motions for nonsuit are not entertained or granted in suits in equity. | Are motions for nonsuit entertained or granted in suits in equity? | Pretrial Procedure - Memo 4 1049 - C - KE.docx | ROSS-003902992 ROSS-003903093 | Condensed_SA, Sub | 0.91 | | | | 1 | |
| 17966 | Roberson v. Rollins, 703 S.W.2d 180 | 307A+563 | The right to take a non-suit is governed by TEX.R.CIV.P. 164, and this rule is construed liberally in favor of the right to the non-suit. Greenberg v. Brookshire, 640 S.W.2d 870 (Tex.1982)… | Rule governing nonsuits is liberally construed in favor of right to nonsuit. Vernon's Ann Texas Rules Civ.Proc., Rule 164. | Should the rule recognizing the right of a plaintiff to take a nonsuit be liberally construed? | 02499.docx | LEGALEASE-00129356 LEGALEASE-00129357 | Condensed_SA, Sub | 0.8 | | | | 1 | |
| 17967 | Margolis v. Clawans, 54 N.J. Super. 472 | 307A+563 | An action can be voluntarily dismissed only by a plaintiff in accordance with the provisions of the rules. The applicable rule is R.R. 4:42-1(a) and (b), made applicable to the court district courts by virtue of R.R. 7:3-3 and R.R. 5:2-1; R.R. 4:42-1(a) provides that a plaintiff may, Without a court order, dismiss an action either "by filing a notice of dismissal at any time before service of an answer or of a motion for summary judgment" or, after answer or appearance, "by filing a stipulation of dismissal signed by all parties who have appeared in the action." No other course is made available to plaintiff in the prior action here involved, for the defendant there had appeared in the action. Nor was the second course pursued. | An action can voluntarily be dismissed only by a plaintiff in accordance with the rules. R.R. 4:42-1(a), (b); 5:2-1; 7:3-3. | Can an action voluntarily be dismissed only by a plaintiff in accordance with the rules? | Pretrial Procedure - Memo 4 1111 - C - DE.docx | ROSS-003311885 ROSS-003313886 | Condensed_SA, Sub | 0.84 | | | | 1 | |
| 17968 | Aragona v. Alitalia Air Co., 41 Misc. 3d 342 | 307A+563 | Absent special circumstances, a party should not be compelled to litigate. See, Christensen v. Gutman, 249 A.D.2d 805, 671 N.Y.S.2d 835 (2nd Dept); Staffer v. Bent Farms No. 3, 107 A.D.2d 745, 484 N.Y.S.2d 107 (2nd Dept 1985); Leviton v. Unity, 198 A.D.2d 242, 603 N.Y.S.2d 864 (1st Dept 1984); and Brown v. Garcia, 2 Misc.3d 915, 771 N.Y.S.2d 837 (Civ.Ct., Queens Co.2004) | Absent special circumstances, a party should not be compelled to litigate. | Should a party be compelled to litigate absent special circumstances? | Pretrial Procedure - Memo 4 1289 - C - RF.docx | ROSS-003287520 ROSS-003287521 | Condensed_SA | | | | | 1 | |

3169

Appendix D

| | | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| ROW | Judicial Opinion | Judicial Opinion Number | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 17969 | Pape v. State, Pape Lumber Co. v. Kentucky, 71 Ill. App. 400 | 307k+001 | 307k+001 | It was 5 o'clock P. M., May 25, 1897, when the testimony of Goldberg, in rebuttal, closed, and appellant, by his counsel, moved for the court to continue... | Plaintiff is entitled to take a nonsuit at any time before entry of the finding. | Is a party entitled to take a nonsuit at any time before the finding? | Pretrial Procedure - Memo # 133 - C - 58.docx | ROSS-003012212/ROSS-003012213 | SA; Sub | 0.95 | 0 | | | 1 | |
| 17970 | Weir v. Aberle, 206 S.W. 735 | 307k+001 | 307k+001 | So, in the present case we regard what was said by the court more in the nature of an expression of its opinion as to what he intended to do, rather... | The right to take a nonsuit is liberally construed by the courts. | Is the right to take a nonsuit liberally construed by the courts? | Pretrial Procedure - Memo # 1334 - C - 51.docx | ROSS-003287539/ROSS-003287540 | Condensed; SA | 0.94 | 1 | 0 | | 1 | |
| 17971 | Smith v. Columbus Carbon Co., 143 Tex. 478 | 307k+001 | 307k+001 | So long as the rule recognizes the right of a plaintiff to take a nonsuit we see no good reason why it should be given strict or technical application. In fact, it is generally held that the rule is to be construed liberally in favor of the right granted. 15 Tex. Jur. 237, 27 C.J.S., Dismissal and Nonsuit, § 8, p. 161. Vincent v. Bell, Tex. Civ. App., 22 S.W.2d 753 (writ dismissed)... | Rate giving plaintiff right to take a nonsuit should be liberally construed. Rules of Civil Procedure, rule 164. | Is the right to take a nonsuit liberally construed by the courts? | 026244.docx | LEGALEASE-00129303-LEGALEASE-00129304 | Condensed; SA; Sub | 0.89 | 0 | 1 | 1 | 1 | |
| 17972 | Inland Empire Pub. Lands Council v. U.S. Forest Serv., 88 F.3d 754 | 149E+680 | 149E+680 | The National Environmental Policy Act of 1969 requires agencies of the federal government to prepare an EIS whenever they propose to undertake any "major Federal action[.]" Lit sufficiently affecting the quality of the human environment[.]" 42 U.S.C. § 4332(2)(C). The goal of NEPA is two-fold: (1) to ensure the agency will have detailed information to... | On review under NEPA, Court of Appeals may examine whether the agency has taken a hard look at environmental consequence, and only if the agency's analysis of environmental consequences is arbitrary and capricious or contrary to the procedures required by law can it conclude that agency did not take a "hard look." National Environmental Policy Act of 1969, § 102(2)(C), 42 U.S.C.A. § 4332(2)(C). | What are the requirements of The National Environment Policy Act (NEPA)? | Woods and Forests - Memo 42 - RK.docx | ROSS-002288554/ROSS-002288557 | Condensed; SA; Sub | 0.55 | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 1973 | State ex rel. U. S. Fid. & Guar. Co. v. Harty, 276 Mo. 583 | 30H(4)(3) | This determines in the nature of a motion for judgment on the pleadings, its effect is to admit all facts properly pleaded in the return. To such facts we will look in determining the propriety of the issuance of the final writ, unless the return shows such facts as authorize its construction as a demurrer. State ex rel. Wandre v. McQuillin, 262 Mo. loc. cit. 266, 171 S. W. 72; State ex rel. Brewster v. Mack, 190 Mo. loc. cit. 369, 89 S. W. 368, 76 Mo. App. 762; State ex rel. Am. R. & Chem. Co. v. Shields, 237 Mo. loc. cit. 333,141 S. W. 585; Wand v. Ryan, 166 Mo. 646, 65 S. W. 1025. Thus limited, statement of the pleadings is good... on such facts, to which the admissure force of a demurrer has no application. State ex rel. McCaffery v. Aloe, 152 Mo. 466, 54 S. W. 494, 47 L. R. A. 393. To illustrate, the averment that the respondent is not a "judicial officer, and is not threatening to exercise judicial powers, is, so far as the averment itself is concerned, a mere legal conclusion. In pleading the authority of a public officer to do or not to do certain acts, this pleading the mere legal conclusion the averment that certain facts as to the question. Old Wayne Mut. Life Ass'n v. Flynn, 31 Ind. App. 473, 68 N. E. 327; Harrington v. Ennis, 96 N. E. 832; Loyd v. Goodhue v. Daniels, 54 Iowa, 19, 6 N. W. 129; Smith v. Kaufman, 3 Okl. 568, 41 Pac. 722; Milburn v. McNeil, 92 Tex. 400, 49 S. W. 219. In harmony with this rule, and applicable especially to matters such as those acting individually, is the well-recognized requirement that an allegation of duty in mandamus is insufficient unless the facts out of which such duty should be... | In a proceeding concerning duties of an officer, an allegation of duty in pleadings, its effect is to admit all facts properly pleaded in the return. To such facts, a mere legal conclusion, is being necessary to plead facts showing existence of duty, and this is especially true as to duties created by statute. | "Are allegations as to duties created by statute, conclusions of law?" | Pleading - Memo 231 - BMM.docx | ROS5-00328685-ROS5-00328687 | Condensed, SA, Sub 0.94 | | 0 | 1 | | 1 | |
| 1974 | Lumbermens Mut. Cas. Co. v. Conf'l Cas. Co., 387 F.2d 104 | 307A-742.1 | General pleading, such as that contained in the paragraphs just quoted, is not permissible under the adversary or the theory that the movement in the pretrial and to state at the issues to be tried, or use of the rules of discovery by the opposing parties will usually result in a full development of the issues before trial. If this should not happen, as in this case, pre-trial procedure is intended to clearly define the issues to be tried before and decided by the trial judge. Here, counsel for Continental presumably participated in the pre-trial conference and signed the pre-trial order. The order does not mention exclusions as an issue. It does incorporate the pre-trial memorandum by reference. But this memorandum merely makes reference to exhaustion of policy's "certain person", which prevented coverage for Cummings and others. | Counsel has particular responsibility to assist courts prior so that pre-trial procedure intended to clearly define the issues to be tried before and decided by the trial judge. | Is pre-trial procedure intended to clearly define the issues to be tried before and decided? | 02424.docx | LEGAL1LDE-00229833-LEGAL1LDE-00229834 | SA, Sub | 0.76 | | | | 1 | |
| 1975 | Universal Underwriters Ins. Co. v. Superior Court for Los Angeles Cty., 250 Cal. App. 2d 722 | 307A-742.1 | The purpose of the pretrial conference order is to place the case in focus for trial. The pretrial conference order limits the issues to be tried, and issues which are not thereafter designated as being in dispute in the pretrial conference order are no longer issues in the case. (Feuerbach v. Hardy, 212 Cal.App.2d 472, 74; [28 Cal.Rptr. 513], and cases cited.) | Purpose of pretrial conference orders is to place case in focus for trial. Cal. Rules of Court, rule 216. | What is the purpose of pretrial conference orders? | Pretrial Procedure - Memo 8 389 - C - BP.docx | ROS5-00331077-ROS5-00313078 | Condensed, SA, Sub 0.71 | | 0 | | 1 | 1 | |
| 1976 | Downey v. Garland, 21 Vt. 362 | 2+15 | So it was held by this court, in Hill v. Dunlap, 15 Vt. 645, that, if one commence a suit by process which is defective, he may discontinue it and bring fresh suit; and the second suit will be considered vexatious, and that the first suit should be saved to protect by the second suit. The court further say, "we have adopted the rule, which obtains in Connecticut and some of the other states, that, if the party bringing a subsequent suit relies upon his discontinuing the defect, discontinue that suit and bring another, and this shall not be deemed unreasonable or vexatious, but the case of Hill v. Dunlap is very similar to the one at bar. The only difference between them is, that in the former there was an oral notice of the discontinuance and new suit was entered in court, while in the latter the notice of discontinuance was in writing and the latter being determined abatement. It is apparent that this suit must have been determined defect. So we think, in bringing the second suit or process was presumed truly defective, in the latter it was proved to be so. It was fatally defective, and the defendant had pleaded the defect in abatement. It is apparent that this suit must have been dismissed, if it had been pursued. The only difference relied upon is, that in one of the cases the pendency of the present suit. This difference, we think, is unimportant. The question is, to enquire whether a court can render a judgment of nonsuit without committing error in an supposed case. The record before us does not disclose fact, whether the court could, or whether there are any issue or defenses, in either, nor do we suppose the case for a court to determine. In neither does it disclose that there was any delay in the payment of costs to the adverse party, or that it clearly erroneous. | But we think the court erred in rendering a judgment of non-suit against the wishes of the plaintiff. It is the settled practice in this State, that the court cannot order a non-suit or compel the plaintiff to submit to take a non-suit, that it can't... however contended that when the issue is a question of law, and not of fact, the court may take the question from the jury. We will not stop to enquire whether a court can render a judgment of non-suit without committing error in an supposed case. The record before us does not disclose fact, whether this non-suit was against the wishes of the plaintiff is clearly erroneous. | "If a party bring a defective suit, upon discovering the defect, can he discontinue that suit and bring another?" | Pretrial Procedure - Memo 4 1374 - C - MS.docx | ROS5-00330950-ROS5-00330955 | Condensed, SA, Sub 0.69 | | 0 | | 1 | 1 | |
| 1977 | Saunders v. Coffin, 16 Ala. 421 | 307A-551 | But we think the court erred in rendering a judgment of non-suit against the wishes of the plaintiff. It is the settled practice in this State, that the court cannot order a non-suit or compel the plaintiff to submit to take a non-suit, without his consent. | The court cannot compel the plaintiff to submit to a nonsuit without his consent. | "Can the court compel the plaintiff to submit to nonsuit without his consent?" | 02401.docx | LEGAL1LDE-00130056-LEGAL1LDE-0013037 | Condensed, SA, Sub 0.9 | | 0 | | 1 | 1 | |

Appendix D

3171

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17978 | Volk v. Brame, 235 Ariz. 462 | 92+3885 | Though the court may impose time limits that appear reasonable in advance of a proceeding, those limits become unreasonable if they prove insufficient to allow a substantive hearing. If, during the progress of a scheduled hearing, it becomes apparent that the court lacks sufficient time to receive adequate testimony, then the court must allow reasonable additional time or continue the hearing to permit it to perform its essential tasks. 397 U.S. at 268"69, 90 S.Ct. 1011 ("The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."); Brown v. U.S. Fid. & Guar. Co., 194 Ariz. 85, 91, 29, 977 P.2d 807, 813 (App.1998) (time limits predetermined by the court "must be reasonable under the circumstances ... [and] should be sufficiently flexible to allow adjustment during [the hearing]"). When the court allows no time to hear testimony, or when the time available for each necessary witness does not allow for meaningful direct testimony and efficient but adequate cross-examination, the court violates the parties' due process rights. | When the court allows no time to hear testimony, or when the time available for each necessary witness does not allow for meaningful direct testimony and efficient but adequate cross-examination, the court violates the parties' due process rights. U.S.C.A. Const.Amend. 14. | "If, during the progress of a scheduled hearing, it becomes apparent that the court lacks sufficient time to receive adequate testimony, should the court allow reasonable additional time or continue the hearing to permit it to perform its essential tasks?" | 026678.docx | LEGALEASE-00129858-LEGALEASE-00129859 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 17979 | Joe Williamson Const. Co. v. Raymondville Indep. Sch. Dist., 251 S.W.3d 800 | 307A+517.1 | A non-suit is effective as soon as the plaintiff files a motion for non- suit. See Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex. 1982) (per curiam). However, while the plaintiff has an absolute and unqualified right to file a non-suit, it can only do so as long as the defendant has not made a claim for affirmative relief. See BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990); Quanto Int'l Co., Inc. v. Lloyd, 897 S.W.2d 482, 487 (Tex.App.-Houston [1st Dist.] 1995, orig. proceeding) (holding that Quanto's non-suit could not prejudice the defendants' right to be heard on their pending claim for affirmative relief (the request for arbitration)). Thus, a non-suit does not affect affirmative relief such as a request for arbitration or, in this case, court-ordered arbitration. See Hagberg v. City of Pasadena, 224 S.W.3d 477, 483 (Tex.App.-Houston [1st Dist.] 2007, no pet.). That affirmative relief remains pending after a non-suit by the opposing party is filed. See Dean Foods Co. v. Anderson, 178 S.W.3d 449, 453 (Tex.App.-Amarillo 2005, pet. denied) (holding that pleading requesting attorney's fees constituted a claim for affirmative relief that remained pending after opposing party's non-suit); see also Tex.R. Civ. P. 162 ("A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court."); Lentino v. Frost Nat'l Bank, 159 S.W.3d 651, 654 (Tex.App.- Houston [14th Dist.] 2003, no pet.) (providing "where another party has a claim pending for affirmative relief, a non-suit does not bring about a dismissal of the entire case'). | A non-suit is effective as soon as the plaintiff files a motion for non-suit. | Is a non-suit effective as soon as the plaintiff files a motion for non-suit? | Pretrial Procedure - Memo # 2407 - C - ES.docx | ROSS-003287514-ROSS-003287515 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 17980 | Okeson v. City of Seattle, 150 Wash. 2d 540 | 371+2001 | Because providing streetlights is a governmental function of the city, we must next determine if Ordinance 119747 imposed a tax or a fee to pay for those costs. Determining what is a tax or a fee is often quite difficult. Dean v. Lehman, 143 Wash.2d 12, 28, 18 P.3d 523 (2001) ( "It is difficult, however, to pigeonhole these charges."). Generally speaking, taxes are imposed to raise money for the public treasury. Id. at 25, 18 P.3d 523 (citing Wash Const. art. VII, " 1); State v. Case, 39 Wash. 177, 182, 81 P. 554 (1905). A local government does not have the power to impose taxes without statutory or constitutional authority. Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995). | Generally speaking, taxes are imposed to raise money for the public treasury. | Are taxes imposed to raise money? | Taxation - Memo # 202 - C - KI.docx | ROSS-003300278-ROSS-003300279 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 17981 | People v. Morales, 55 Misc. 3d 59 | 399+1 | Nor is the statute inherently contradictory because, according to defendant, it proscribed loitering with a specific purpose. To the contrary, the Court of Appeals considers the prohibition of loitering for a particular purpose to be a hallmark of constitutionality, not an infirmity, because a statute that prohibits loitering, without more, is unconstitutionally vague. (See People v. Bright, 71 N.Y.2d 376, 383, 526 N.Y.S.2d 66, 520 N.E.2d 1355 [1988]; People v. Berck, 32 N.Y.2d 567, 571, 347 N.Y.S.2d 33, 300 N.E.2d 411 [1973], cert. denied 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 [1973.]. Indeed, the loitering statutes that the Court of Appeals has upheld against attacks on the ground of vagueness were sustained precisely because they prohibited loitering for a specific purpose or loitering in a specific place of restricted public access (see e.g., People v. Smith, 44 N.Y.2d 613, 620, 407 N.Y.S.2d 462, 378 N.E.2d 1032 [1978] [upholding statute banning loitering for the purpose of prostitution]; People v. Pagnotta, 25 N.Y.2d 333, 337"340, 305 N.Y.S.2d 484, 253 N.E.2d 202 [1969] [upholding statute banning loitering for the purpose of using narcotics]; People v. Johnson, 6 N.Y.2d 549, 552, 190 N.Y.S.2d 694, 161 N.E.2d 9 [1959][upholding statute banning loitering on school grounds]). | Statute prohibiting person from loitering or remaining in transportation facility, unless specifically authorized, for purpose of soliciting or engaging in any business, trade, or commercial transactions involving sale of merchandise or services, or for entertaining by singing, dancing, or playing any musical instrument, was not unconstitutionally vague; statute was sufficiently definite to give person of ordinary intelligence fair notice that his contemplated conduct was forbidden, statute provided explicit standards so as to avoid resolution on ad hoc subjective basis, with attendant dangers of arbitrary and discriminatory application, and statute was not inherently contradictory by proscribing loitering with specific purpose, which was hallmark of constitutionality, not infirmity. McKinney's Penal Law S 240.35(6). | Is the loitering statute constitutionally vague? | 047454.docx | LEGALEASE-00129801-LEGALEASE-00129802 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | | |
| 17982 | S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, 745 F.2d 190 | 2571+63 | Unless excluded, claims of fraud in the inducement of a contract are arbitrable. See Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1806-06, 18 L.Ed.2d 1270 (1967). As the district court itself recognizes, Samitri's fraud claims and the arbitration clauses contained in the 1974 Agreements did not clearly exclude fraudulent inducement claims. Moreover, in Scherk v. Alberto-Culver Co., supra, 417 U.S. 519, 94 S.Ct. at 2455, the Agreements involve a "truly international" business transaction. The corporations are of diverse nationality. They provide that New York law is the subject matter of the Agreements is produced in one country and sold to various other countries. "[I]n the absence of the arbitration provision considerable uncertainty existed at the time of the agreement, and still exists, concerning the law applicable to the resolution of disputes arising out of the contract." Id. at 516, 94 S.Ct. at 2457 (footnote omitted). Samitri alleges violations of federal securities law. Defendants are sure to contest the application of these laws to this transaction. Of all this, in this case a provision "specifying in advance the forum in which disputes shall be litigated and the law to be applied is...a necessary to dissolve the requisite "orderliness and predictability..." Id. at 516, 94 S.Ct. at 2455. Moreover, although we perceive no danger in the instant case that a United States court will be predisposed to favor Samitri over defendants, the district court's lack of familiarity with the subject matter of the Agreements and the law to be applied to the subject matter presents a problem. We conclude that the arbitration clauses contained in the 1974 Agreements cover Samitri's claims of fraudulent inducement. | Unless excluded, claims of fraud in the inducement of a contract are arbitrable. | Are claims of fraud in the inducement of a contract arbitrable? | 007411.docx | LEGALEASE 00131314-LEGALEASE 00131315 | Condensed, SA | 0.95 | 0 | | | 1 | |
| 17983 | State v. Rosecrans, 24 Wash. 2d 775 | 67+9(1) | We think the better reasoning, as well as the weight of authority, supports the modern rule. The gist of burglarious 'breaking' is the application of force to remove some obstacle to entry, and the amount of force employed is not material. The exercise of the slightest force is sufficient. The breaking consists of the removal by the intruder, by the exercise of force, of an obstruction which, if left untouched, would prevent entrance. Hence, the application of force to push further open an already partly open door or window to enable a person to enter a room or building, is a breaking sufficient to constitute burglary if the other essential elements of the offense are present. The cases which support the rule just stated: State v. Lapoint, 87 Vt. 115, 88 A. 523, 47 L.R.A.,N.S., 717; Ann.Cas.1916C, 318; Claiborne v. State, 113 Tenn. 261, 83 S.W. 352, 68 L.R.A. 859, 106 Am.St.Rep. 833; Gonzales v. State, 90 Ohio St. 276, 107 N.E. 335; L.R.A.1915D, 243; People v. White, 153 Mich. 617, 117 N.W. 161, 17 L.R.A.,N.S., 1002; 15 Ann.Cas. 927; State v. Simons, 157 Iowa 534, 138 N.W. 411; State v. Murray, 222 Iowa 551, 270 N.W. 355; Grace v. State, 191 Miss. 380, 2 So.2d 818. | The gist of burglarious 'breaking' is the application of force to remove some obstacle to entry, and the amount of force employed is immaterial; the slightest force being sufficient. | What constitutes burglarious breaking? | Burglary - Memo BZ JR.docx | ROSS-003127074-ROSS-003127910 | SA, Sub | 0.84 | 0 | | 1 | | |
| 17984 | Gomez v Gomez, 336 Ind. App. 96 | 302+6(15) | It is unfair that in this state that the term "fraud" need not be used in the pleading if facts are pleaded which show fraud. In re Haynes' Estate, 11 Ind.App. 1, 24 N.E.2d 13; Holliday v. Perry (1906), 38 Ind.App. 588, 78 N.E. 877. Therefore it is essential to review the appellants' amended and second paragraph of amended complaint to see if it alleges facts which show fraud. The appellee in Paragraph 4 of the amended and second paragraph of amended complaint alleges that appellants in order to enhance their credit and enable them to borrow money, induced the appellant to convey to them a remainder interest in the real estate involved in this controversy. Appellee further alleged that appellants promised to reconvey the remainder interest to the appellant after such conveyance of the real estate. It was further alleged in the complaint that at and before the time of conveyance the relations of appellee and appellants were of a very intimate and confidential character and thereby appellee's confidence was persuaded, influenced, and induced and he provided upon the appellants to believe that he could safely vest title in said remainder. It was further alleged that in reliance upon the integrity, loyalty and honesty of appellants, the appellant promised to convey said real estate to appellants. Paragraph No. 5 alleged that in reliance upon appellants' promises to reconvey, the appellee vested in appellants a warranty deed to appellants, reserving a life estate in himself. Paragraph No. 6 alleged the appellants and appellee's each executed a real estate mortgage whereby the real estate subsequently mortgaged. Paragraph No. 7 alleged that subsequent to the execution of said real estate mortgage, the appellants refused to reconvey their said title as promised, to appellee's want. Paragraph No. 8 alleged that appellee's want has been defrauded. | Term "fraud" need not be used in the pleading if facts are alleged which show fraud. | Should the term fraud be used in the pleading? | 02317E.docx | LEGALEASE 00131113-LEGALEASE 00131114 | Condensed, SA | 0.97 | 0 | | | 1 | |
| 17985 | Sigala v. Anaheim City Sch. Dist., 12 Cal. App. 4th 661 | 307A+742.1 | We hasten to add that the major purpose of a settlement conference is not to "clear the docket," but to achieve justice. For the litigants, a settlement is not achieved, the dialogue may narrow the issues for trial. Each party is able to gain valuable insight into the validity of the opponent's position as well as perhaps unperceived weaknesses in its own case. | Major purpose of settlement conference is not to "clear the docket," but to achieve justice. | What is the Major purpose of settlement conference? | Pretrial Procedure - Memo # 1478 - C - ES.docx | ROSS-003182874-ROSS-003182925 | Condensed, SA | 0.78 | 1 | | | 0 | |

3175

Appendix D

| | | | | | | | | | | | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 9,029 |
| | | | | | | | | | | Selection & Arrangement | |
| | | | | | | | | | | 23,876 | |
| | | | | | | | | | Substantive Additions | | |
| | | | | | | | | | 14,873 | | |
| | | | | | | | | Condensed | | | |
| | | | | | | | | 15,944 | | | |
| | | | | | | | Order | | | | |
| | | | | | | | 839 | | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17986 | Knighten v. Knighten, 447 So. 2d 534 | 307k+721 | "Should a party who seeks a continuance because he was unable to obtain material evidence, show what evidence he could not obtain?" | A continuance shall be granted at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case or that a material witness has absented himself without the continuance of the party applying for the continuance. The court has failed to establish she was unable to its immediate continuance under C.C.P. 1601. She merely argues she was unable to obtain evidence material to her case because of Leri's untimely answer and failure to answer the interrogatories. She has failed to point what evidence she was unable to obtain or how that evidence was material to her case. She fails to show that the trial court abused its discretion in refusing to grant a continuance under C.C.P. 1601. We had known the over a month that Leri was attending the third party demand on the grounds of prescription. She may hold for that party demand on it was able to thoroughly cross examine Leri. | "Should a party who seeks a continuance because he was unable to obtain material evidence, show what evidence he could not obtain?" | 027507.docx | LEGALEASE-00130979 LEGALEASE-00130980 | Condensed, SA, Sub 0.62 | | 0 | 1 | | 1 | 1 |
| 17987 | State v. Jackman, 60 Wis. 2d 700 | 371+2001 | "Tax" is illegal without primary purpose is to obtain revenue. | The issue here is the meaning of the word "Tax"... without any tax, impost of duty. The impost of duty. It generally recognized that charges exacted in the exercise of the police power are not taxes and are not subject to constitutional limitations which apply to the exercise of the power to tax. Cooley, Taxation (4th ed.), Vol. 1, p. 36, sec. 16. Vol. 4, pp. 3509-3514, secs. 1784, 1786; Morrill v. State (1893). 38 Wis. 428, 20 Am.Rep. This court has made a distinction between taxes and fees. A tax is one whose primary purpose is to obtain revenue, while a license fee is one made primarily for regulation. Whatever, a fee is provided to cover the cost and the expense of supervision or regulation. State ex rel. Attorney General v. Wisconsin Constructors, Inc. (1936), 222 Wis. 279, 268 N.W. 238. See State v. Wisconsin Telephone Co. (1935), 383, 200 N.W. 37. The words "tax," "duty" and "impost", as used in the Wisconsin Constitution, are used in their ordinary sense. In the transportation for the use of the waterway. The navigable waters could not be converted from common highways into Toll roads by the states. The history of the origin of the language used in the grant of the state of Virginia to the United States and incident to the Northwest Territory supports the view. The commercial and of the internal commerce of Wisconsin was foremost in the minds of the territorial citizens and the delegates at the Constitutional Conventions of 1846 and 1848 and they included the navigable water clause as one of the articles. Wisconsin is the only state of those which were created out of the Northwest Territory which has done so. See the organic legislation known as Northwest Ordinance of the ... p. 19. | Is the primary purpose of a tax to obtain revenue? | 044696.docx | LEGALEASE-00130754 LEGALEASE-00130755 | Condensed, SA, Sub 0.97 | | 0 | 1 | | 1 | 1 |
| 17988 | City & Cty. of San Francisco v. Flying Dutchman Park, 122 Cal. App. 4th 74 | 371+2001 | A distinction is made between the taxation of real estate ownership on an ad valorem basis, and a tax on the use of that real property; a tax on the use of the property does not constitute double taxation. | Neither method of taxing property per se is allowed in this state, other than the prescribed constitutional method. (Flynn v. San Francisco, supra, 18 Cal.2d 210, 115 P.2d 3.) (City of Oakland v. Digre, supra, 205 Cal.App.3d at p. 109, 252 Cal.Rptr. 99.) However, a re-important distinction is made between the taxation of real estate ownership as a tax, and a tax on the use of that real property. It has long been recognized that a tax on the separate use of the property, known as an excise tax, is permissible, and does not constitute double taxation. (City of San Rafael v. Cabeleman (1959) 14 Cal.App.4th 1311, 18 Cal.Rptr.2d 678.) "The mere fact that the plaintiffs pay tax by the year for the activity does not prevent the state or local authority from imposing another excise tax upon the same privilege for the use of a state's ... taxed excise tax on the imposed simultaneously. (Peralta v. City of Los Angeles (1975) 14 Cal.App.3d 976, 112 Cal.Rptr. 166.) (distinct City of Berkeley v. Cukerman, supra, 14 Cal.App.4th at pp. 1340-1341, 18 Cal.Rptr.) | What is income tax? | Taxation - Memo # 185 - C - 55.docx | ROSS-003304019-ROSS-003304034 | Condensed, SA, Sub 0.77 | | 0 | | 1 | | 1 |
| 17989 | Jackson v. Quanex Corp., 889 F. Supp. 1007 | 231H+1536 | In the Sixth Circuit, Federal Arbitration Act (FAA) exempts from its coverage "contracts of employment of ... any class of workers engaged in ... interstate commerce," under broadest possible constitutional meaning of phrase "interstate commerce." 9 U.S.C.A. § 1 et seq. | Here, unlike Gilmer and unlike any of the lower court opinions cited by Quanex, Quanex seeks to force plaintiff's arbitration of his discrimination claims under the terms of a collective bargaining agreement. After Gilmer, the Court analyzed how the Sixth Circuit explicitly addressed "collective bargaining agreements are 'contracts of employment' and therefore outside the scope of the FAA." Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 311 (6th Cir.1991) (citing Bacashihua, 859 F.2d 402, 404-05 (6th Cir. 1988)) (finding collective bargaining agreements are "contracts of employment" within the meaning of ... of the FAA and thus excluded from the coverage of the Act). | Are the collective bargaining agreements outside the scope of the Federal Arbitration Act (FAA)? | Alternative Dispute Resolution - Memo 072 - RK.docx | ROSS-003197034-ROSS-003197035 | Condensed, SA, Sub 0.58 | | 0 | 1 | | 1 | 1 |
| 17990 | Pitcher v. Laird, 421 F.2d 1272 | 34+2 | Army cannot apply regulations in an arbitrary or capricious manner. | Our reluctance to review discretionary military orders, however, does not imply that any action by the Army is beyond the reach of this Court. We do not have to determine whether the Army should promulgate regulations for discharge of conscientious objectors in light of the congressional policy to exempt such persons conscientiously opposed to participation in war by reason of religious training and belief. Once regulations have been provided, however, the Army cannot apply them in an arbitrary or capricious manner. United States ex rel. Brooks v. Clifford, supra, 409 F.2d 700; Smith v. Resor, 406 F.2d 141, 145 (2d Cir. 1969); Hammond v. Lenfest, supra, 398 F.2d at 715. | Is the Army allowed to apply regulations in an arbitrary or capricious manner? | 008893.docx | LEGALEASE-00132407-LEGALEASE-00132408 | Condensed, SA, Sub 0.91 | | 0 | 1 | | 1 | 1 |

3174

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 17991 | Reed v. Reeves, 187 F. Supp. 905 | 34+2 | In summary, plaintiff argues that the Navy must, as a condition precedent to granting an honorable discharge over respondent of the serviceman, accord the individual a formal hearing wherein witnesses are present, the serviceman has the right of counsel, and the usual rudiments of a trial. This the law does not require... | The Armed Forces are free to regulate their internal affairs. | Are the armed force free to regulate their internal affairs? | 008897.docx | USAEAX3E-00132411; USAEAX3E-00132412 | Condensed, SA | 0.92 | 0 | 1 | | 1 | |
| 17992 | L3 Comm'ns USTech v. United States, 85 Fed. Cl. 667 | 34+3(1) | The Court notes that the procuring authority's decision is "presumptively proper." Infrastructure Defense, 81 Fed.Cl. at 393 (citing Impresa, 238 F.3d at 1338). Furthermore, courts are especially deferential to discretionary decisions of the military in times of war... | Courts are especially deferential to discretionary decisions of the military in times of war. | Are the courts deferential to military decisions? | Armed Services - Memo 69 - RK.docx | ROSS-003036954;ROSS-003036954 | Condensed, SA | 0.93 | | 0 | 1 | 1 | |
| 17993 | Koch v. Seventh St. Realty Corp., 205 V.a. 65 | 184+49 | If said is a conclusion of law from facts, and it is a well-settled rule of pleading, both in law and in equity, that the facts out of which the legal relation arises must be alleged as well as proved to justify relief on that ground... | Facts out of which fixed relation must be alleged as well as proved to justify a fixed a conclusion of law from facts? | Does out of which fixed action relief on that ground? | 02324.docx | USAEAX3E-00132256; USAEAX3E-00132257 | Condensed, SA | 0.67 | | 0 | 1 | 1 | |
| 17994 | Hultner v. Bd. of Trustees of First Comp. Colo., 713 F. Supp. 91 | 170H+1598.1 | The pretrial order supersedes the pleadings and controls the subsequent course of litigation. Fed.R.Civ.P. 16(e). The trial court has the discretion to exclude from trial those issues and claims not found in the pretrial order. Randolph County v. Alabama Power Co., 784 F.2d 1067, 1072 (11th Cir.1986)... | Pretrial order supersedes pleading and controls subsequent course of litigation. Fed.Rules Civ.Proc.Rule 16(e), 28 U.S.C.A. | Does a pretrial order supersede pleadings? | 02740.docx | USAEAX3E-00131801; USAEAX3E-00131802 | Condensed, SA, Sub | 0.9 | | 0 | 1 | 1 | |
| 17995 | Aikens v. Samuels, 204 Cal. App. 2d 710 | 307A+749.1 | Two preliminary procedural problems should be disposed of before discussion of the principal questions in the case. The first is the technical objection made by the defense that there was no proof that the administrators plaintiff had been duly appointed, qualified and acting. (See id.) however, (certify that she was the administratrix and she could and late judicial notice of its own records. (Flores v. Arroyo, 56 Cal.2d 492, 498, 401, 15 Cal.Rptr. 87, 364 P.2d 263.)... | A pretrial conference order, where inconsistent with a complaint, supersede the complaint. | Will a pretrial conference order, where inconsistent with a complaint, supersede the complaint? | Pretrial Procedure - Memo # 2286 - C - SK.docx | ROSS-003327912;ROSS-003327912 | Condensed, SA, Sub | 0.92 | | 0 | 1 | 1 | |
| 17996 | Host Properties v. Prod. Res. Grp., 716 N.W.2d 166 | 307A+517.1 | The district court has wide discretion in determining whether to grant a plaintiff's motion for dismissal. Miller v. Mau & Adrian, Inc., 202 Minn. 626, 628, 279 N.W. 553, 554 (1938). The court also has discretion to determine whether the dismissal should be with prejudice. Bonhiver, 251 Minn. 444, 452, 88 N.W.2d 806, 889 (1958)... | A district court has discretion to determine whether a voluntary dismissal "Is a court, in its discretion, allowed to rule the (should be with prejudice. 48 M.S.A., Rules Civ.Proc., Rule 41.01(a). | "Is a court, in its discretion, allowed to rule that a voluntary dismissal will be with prejudice?" | 02777B.docx | USAEAX3E-00132147; USAEAX3E-00132148 | Condensed, SA, Sub | 0.81 | | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 17997 | In re Bel. of G. v., 134 Wash. 2d 266 | 307A=517.1 | As with the cases involving Cir. and V.P. cases where the grant of a dismissal is without prejudice, it's right to refuse reinstatement after its hearing on the merits and would not have interfered with any other right under the act at any prejudice of the claim... and if it ... in her position does not govern this case since it is the right to refuse reinstatement... and provides, in the absence of good cause shown for a case to be continued, the case "be dismissed" if the trial does not proceed and good cause is not shown for a continuance ; it does not specify whether the dismissal must be with or without prejudice. Read consistently with Civil Rule 41(a)(1) which permits the exercise of a plaintiff's mandatory right to a voluntary nonsuit prior to resting, with or without prejudice, Civil Rule 60(b) permits a dismissal either with or without prejudice. The commissioner therefore could properly grant the dismissal without prejudice without violating any right conferred by Civil Rule 60(d). | Governed by civil rule relating to voluntary dismissals, "voluntary nonsuit" is dismissal of action by court on motion of plaintiff made before plaintiff has rested, and it can be with or without prejudice but is presumed to be without prejudice unless order of dismissal otherwise states. CR 41(a)(1)(B). | "Where a plaintiff moves for a voluntary dismissal, prescribed by the court before the plaintiff rests to the prejudice to the plaintiff's right in the action; however, does the rule guarantee that the dismissal will be without prejudice?" | 027869.docx | LEGAEASE 00132116-LEGAEASE 00132117 | Condensed, SA, Sub 0.77 | | 0 | | 1 | 1 | 1 |
| 17998 | Cook v. Stewart McKee & Co., 68 Cal. App. 2d 758 | 307A=517.1 | A plaintiff's voluntary dismissal of this action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. Hopfel Mfg. Co. v. Cutter, 305 U.S. 255, 279 ... 978, 59 S.Ct. Supreme Court, 12 Cal App 2d 635, 507, 54 P.2d 388. When an action is wholly dismissed by the plaintiff against one or more defendant the effect is the same as if the action had been originally brought against the remaining defendants. Page v. W. W. Chase Co., 145 Cal. 578, 79 P. 278. Thus once a voluntary action is taken it is though no action had ever been filed. After such dismissal the defendant is a stranger to the action. Robertson v. Dept. of Public Works, 57 Cal. App. 2d 340, 341, 44 P.2d 635. By the clerk's entry no judicial act has been exercised from which appeal may be prosecuted. | When plaintiff voluntarily dismisses action against sole defendant, it is as though no action had ever been filed, and thereafter defendant is a stranger to the action. West's Ann. Code. Civ. Proc. S 581. | "After a voluntary dismissal, is the defendant a stranger to the action?" | Pretrial Procedure Memo # 2393 - C - RS.docx | ROSS-003248238-ROSS-003248239 | SA, Sub | 0.76 | 0 | | 1 | 1 | 1 |
| 17999 | City of Marion v. Volkswagen, 361 N.W.2d 323 | 307A=749.1 | The Cta states the burden of proof was improperly placed upon it. As pointed out by the others, however, the City did not properly carry its issue regarding burden of proof in a pretrial motion the officers indicated in its pretrial order. A pretrial order controls subsequent court action, N.W.R C.n. P 180.04.Mehling Gs. v. disch, 250 Iowa 946, 955, 120 N.W.2d 648, 650 (1944). As objections to such an order cannot be raised for the first time on appeal. 4 C.J.S. ""234, 239(b) (1944). | A pretrial order controls subsequent court action. Rules Civ. Proc., Rule 138. | Does a pretrial order control a subsequent court action? | Pretrial Procedure Memo # 2404 - C - ES.docx | LEGAEASE 00021999-LEGAEASE 00022000 | Condensed, Order, SA, Sub | 0.87 | 0 | | 1 | 1 | 1 |
| 18000 | Fitzsimmons v. Jones, 179 Cal. App. 265 | 307A=749.1 | The commentators have similarly interpreted section 8.4. Professor H. G. enumerate the factual issues on which evidence must be taken; describe the exhibits which have been marked for identification; and enumerate the factual issues which must be resolved. The enumeration is a print of the trial. It is binding on the parties. "(Pickering, "The Pre-Trial Conference," 1 Hastings Law J. 121 (1957)) 125 ... 138.) The pretrial order controls the subsequent course of the litigation and supersedes the pleadings where inconsistent with them unless modified at or before trial. Prejudice as a necessary predicate upon this pre-trial record is before the court, though not pleaded. "(Dorothy Wright Nelson, The Pre-Trial Order: the Effective Weapon of Advocacy, 4 UCLA L. Rev. (1956-57) 361, 397.) | Pretrial order controls inconsistent pleading, and trial court could not supersede pretrial order, which defendant issues, by finding of fact pleadings listed to tender issue and rendering judgment for plaintiff in pleadings. West's Ann. Code. Civ. Proc. S 473. | Is an issue expressly stated in a pretrial record considered to be before the court? | 028086.docx | LEGAEASE 00132110-LEGAEASE 00132211 | SA, Sub | 0.71 | 0 | | 1 | 1 | 1 |
| 18001 | Strtcon v. Tautenhahn, 465 S.W.3d 755 | 307A=517.1 | A plaintiff may nonsuit at any time before introducing all of the plaintiff's evidence other than rebuttal evidence. Tex. R. Civ. P. 162. No court order is required to, can also set up a nonsuit. 355 S.W.3d 862, 868 (Tex.2011). A nonsuit terminates a case from the moment the notice of nonsuit is filed. Tex. R. Civ. P. 162. Expo, 355 S.W.3d at 868. A plaintiff's nonsuit does not affect a opponent's pending claims for affirmative relief, attorney's fees, or sanctions. See id., Expo, 355 S.W.3d at 868. | A nonsuit terminates a case from the moment the notice of nonsuit is filed. Tex. R. Civ. P. 162. | Does a nonsuit terminate a case from the moment the notice of nonsuit is filed? | Pretrial Procedure Memo # 2327 - C - SB.docx | ROSS-003311560-ROSS-003311561 | Condensed, SA | 0.81 | 0 | | 1 | 1 | 1 |
| 18002 | In re Farrell, 211 F.212 | 371=2001 | A "tax" is defined as a pecuniary burden imposed for the support of the government. United States v. Railroad, 17 Wall. 322, 326, L.Ed. 597, 601. It is the enforced proportionate contribution of persons and property levied for the support of government and all public things. Opinion of Justices, 58 Me. 591; Cooley on Taxation, 1; Pacific Insurance Co. v. Soule, 7 Wall. 433, 19 L.Ed. 95; Springer v. United States, 102 U.S. 586, 26 L.Ed. 253. "A 'tax' is a pecuniary burden laid upon individuals and property for the purpose of supporting the government." New Jersey v. Anderson, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 204. | "What is a pecuniary burden imposed upon a class of individuals, businesses, or other entities for support of government called?" | 04661.docx | LEGAEASE 00131583-LEGAEASE 00131583 | Condensed, SA, Sub | 0.67 | 0 | | 1 | 1 | 1 |
| 18003 | Jensen v. Hennesford, 185 Wash. 269 | 361=1009 | It is true that the Legislature has not substituted the 1933 act. But the legislative body cannot change the real nature and purpose of an act by giving it a different title or by declaring its nature and purpose to be otherwise. The legislature may enact provisions which cannot change its character by declaring its nature and purpose to be otherwise. ... and effect of the act. The character of a tax is determined by its incidents, not by its name. Aberdeen Savings & Loan Ass'n v. Chase, 157 Wash. 351, 289 P. 536, 289 P. 71 A.L.R. 232; Culliton v. Chase, 174 Wash. 363, 25 P. (2d) 81; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638; Macallen Co. v. Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874, 65 A.L.R. 866; Educational Film Corporation v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400, 71 A.L.R. 1226; Dawson Fox plurals Co. v. love, 316 U.S. 594, 62 S.Ct. 125, 86 L.Ed. 1058. | legislative body cannot change real nature and purpose of an act by giving it a different title or by declaring its nature and purpose to be otherwise. | Is the character of a tax determined by its name? | 04870.docx | LEGAEASE 00131499-LEGAEASE 00131500 | Condensed, SA | 0.86 | 0 | | 1 | 1 | 1 |

3176

Appendix D

| ROW | Judicial Opinion | WCKS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18004 | Cooper v. City of Charleston, 218 W. Va. 279 | 371<2001 | We have held that, "[t]he primary purpose of a tax is to obtain revenue for the government, while the primary purpose of a fee is to cover the expense of providing a service or of regulation and supervision of certain activities." City of Huntington v. Bacon, 196 W.Va. 457, 467, 473 S.E.2d 743, 753 (1996) (Citation omitted.). In Bacon, we also said that, "this Court has generally operated on the premise that charges for services rendered by a municipality are user fees and not taxes." Id. We have further held that, "[t]he character of a tax is determined not by its label but by analyzing its operation and effect." Syllabus Point 2, City of Fairmont v. Pitrolo Pontiac-Cadillac, 172 W.Va. 505, 308 S.E.2d 527 (1983). See City of Charleston v. Board of Education, 158 W.Va. 141, 145, 209 S.E.2d 55, 57 (1974) (the charge for fire protection is a fee and not a tax); City of Princeton v. Stamper, 195 W.Va. 685, 314 S.E.2d 656 (1984) (charge of $2.25 per front foot for street improvements is fee and not a tax); and Ohio River Co. v. City of Huntington, 120 W.Va. 85, 87-90, 196 S.E. 552, 554-55 (1938) (charges for flood control program are not subject to ordinary taxing regulations). | The character of a tax is determined not by its label, but by analysis of its operation and effect. | Is the character of a tax determined by its label, or by analysis of its operation and effect? | 048840.docx | LEGALEASE 00131616-LEGALEASE 00131619 | SA, Sub | 0.92 | 0 | | 1 | 1 | |
| 18005 | Matter of JO W. Ltd P'ship, 371<3642 | 371<3642 | However, it is well settled that in determining tax liability, the substance of a transaction rather than its form governs. In re C. Brewer & Co., 65 Haw. 240, 649 P.2d 1155 (1982); In re Foo, 43 Haw. 634, 634 P.2d 930 (1981); In re Robbie Hoover, Inc., 53 Haw. 195, 490 P.2d 902 (1971); In re Kobayashi, 44 Haw. 584, 358 P.2d 539 (1961). Where the taxpayer advances this theory, he must also show that effecting a tax advantage was not the motivating factor in the adoption of the form in controversy. In re Hawaiian Telephone Co., 57 Haw. 477, 559 P.2d 283 (1977); In re Unquittal Ranch, 52 Haw. 557, 483 P.2d 912 (1971). | In determining tax liability, substance of a transaction, rather than its form, governs. | Is it the substance that determines tax liability in tax matters? | Taxation - Memo # 266 - C - SU.docx | ROSS-003301940 | Condensed, SA | 0.86 | 0 | | | 1 | |
| 18006 | Chicago B. N. W. Transp. Co. v. Webster Co. Bd. of Sup'rs, 880 F. Supp. 1290 | 371<2001 | Raising revenue. The Supreme Court has observed that "[i]nternal fees, civil penalties, forfeitures, and taxes all serve certain features: they generate government revenues, impose fiscal burdens on individuals, and deter certain behavior." Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994). Courts have normally construed what is a "bill to raise revenue" within the meaning of the Origination Clause of the U.S. Constitution, Art. I, ? 7, as "[b]ills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes which may incidentally create revenue." United States v. Norton, 91 U.S. 1 (1863). | Mere fact that statute raises revenue does not make it a "tax," nor does deposit of revenue raised into general fund necessarily make the levy a "tax." | Does the fact that a statute raises revenue make it a "tax"? | 04090.docx | LEGALEASE 00131833-LEGALEASE 00131834 | Condensed, SA, Sub | 0.9 | 0 | | 1 | | |
| 18007 | Centers Bank of Corzera Div. of Revenue, 744 S.W.2d 754 | 371<2001 | Further reflection, assuming that more is needed, does not yield a different result. Nor do Strausk and Armistead compel a different result. Rather, we determine the nature of the tax by the character of the funds its displaces, both the manner in which it is imposed. | Nature of tax is determined by character of tax it displaces, but rather, by manner in which it is imposed. | Is the nature of a tax determined by the character of the tax it displaces? | 04904.docx | LEGALEASE 00131949-LEGALEASE 00131950 | SA, Sub | 0.58 | 0 | | | 1 | |
| 18008 | Centers Bank of Corzera Div. of Revenue, 744 S.W.2d 754 | 371<2001 | In the instant case, there is a different mechanism at work that provides a different result. Nor do Strausk and Armistead compel a different conclusion. We determine the nature of a tax not by the character of the tax it displaces. | Nature of tax is determined not by character of tax it displaces, but rather, by manner in which it is imposed. | Is the nature of a tax determined by the manner in which it is imposed? | Taxation - Memo # 276 - C - SS.docx | ROSS-003304067,ROSS-003304068 | SA, Sub | 0.58 | 0 | | | 1 | |
| 18009 | City of N. Little Rock v. Graham, 278 Ark. 547 | 371<2001 | Taxes are enforced burdens exacted pursuant to statutory authority. Miles v. Gordon, 234 Ark. 525, 353 S.W.2d 157 (1962). Municipal taxes are those imposed on persons or property within the corporate limits, to support the local government and pay its debts and liabilities, and they are usually for local government purposes only. Id. McQuIllin, Municipal Corporations ? 44.02 (3rd ed. 1976). | "Taxes" are enforced burdens exacted pursuant to statutory authority. | Are taxes exacted pursuant to statutory authority? | Taxation - Memo # 309 - C - EX.docx | ROSS-003301104,ROSS-003301044 | Condensed, SA | 0.81 | 0 | | | 1 | |
| 18010 | Fordseta v. City of Chicago, 151 Ill. App. 3d 354 | 371<2001 | Plaintiffs argue that special benefits that had conferred by the city of the persons burdened by the mooning tax. In addition, plaintiffs contend that the tax provides a quality of life for all residents that persons not to be operated preferentially to benefit any one group. Plaintiffs maintain that the tax benefits only the citizens of Chicago so that their property taxes do not need to be increased. State revenues are raised with great latitude in imposing general revenue taxes. (Commonwealth Edison Co. v. Montana (1981) 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884, reh. denied 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1021.) In return for general revenue taxes, taxpayers are constitutionally entitled only to the enjoyment of the privilege of living in an organized society, has some connection to interstate commerce, especially when the tax is levied on an activity conducted within the State. (Commonwealth Edison Co. v. Montana, may.) The burden of revenue mooning tax need not be supported by specific benefits. | A tax is not an assessment of benefits, but instead is a means of distributing the burden of the cost of government. | Is tax an assessment of benefits? | Taxation - Memo # 121 - C - EX.docx | LEGALEASE 00022287-LEGALEASE 00022288 | Condensed, SA | 0.91 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18011 | Reis v. Douglas Cty. Hosp., 193 Neb. 542 | 413+1 | In Simon v. Standard Oil Co., 150 Neb. 799, 36 N.W.2d 102 (1949), this court stated: "An injury to be the basis of a cause of action within the provisions of the Workmen's Compensation Act must be one caused by an accident arising out of and in the course of the employment. In many instances an injury which occurs in the course of the employment is also one which arises out of it. This is not always true. The compensation law does not make the employer an insurer against all injuries suffered by his employees in the course of their employment, but it does limit recovery of disability benefits to injuries received both in the course of and out of the employment. The phrases "in the course of" and "arising out of" are not synonymous, and where they are used conjunctively, as they are in the compensation law of this state, a double condition is imposed and both must exist to bring a case within the act. (s) 48"109, R.S.1943; Weitz v. Johnson, 143 Neb. 452, 9 N.W.2d 788; Gale v. Krug Park Amusement Co., 114 Neb. 432, 208 N.W. 739, 46 A.L.R. 1213; 58 Am.Jur., Workmen's Compensation, (s) 210, p. 717. The right of recovery is statutory, and unless the case has been brought within the conditions imposed by the statute, it must fail. Whether an accident arises out of and in the course of employment must be determined by the facts of each case. There is no fixed formula by which the question may be resolved. Hopper v. Koenigstein, 135 Neb. 837, 284 N.W. 346; Conzuello v. Teague, 123 Neb. 574, 243 N.W. 779; 58 Am.Jur., supra.' As stated in the above-cited opinion, the right of recovery is statutory, and unless the case has been brought within the conditions Imposed by the statute, it must fail. Not every heart attack is compensable under our Workmen's Compensation Act. Compensation has been granted in some cases and denied in others. Strict fulfillment of the requirements of the statute is necessary. The combination of employment and a heart attack is insufficient in itself to | Strict fulfillment of requirement of Workmen's Compensation Act is necessary. R.R.S.1943, S 48-101 et seq. | Is strict fulfillment of the requirements of the Workmens Compensation Act necessary? | 047812.docx | LEGALEASE-00131738-LEGALEASE-00131739 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 18012 | Sadelmi Joint Venture v. Dalton, 5 F.3d 510 | 226H+3 | A joint venture is "generally an association of persons by way of contract to engage in and carry out a single business adventure for joint profit, combining their efforts, property, money, skill and knowledge without creating a partnership or a corporation." Lentz v. United States, 346 F.2d 570, 575, 171 Ct.Cl. 537 (1965). It has been aptly described as a partnership created for a limited purpose; a joint venture entails legal consequences similar to those of a partnership. Pine Products Corp. v. United States, 945 F.2d 1555, 1560 (Fed.Cir.1991); Gramercy Equities Corp. v. Dumont, 72 N.Y.2d 560, 534 N.Y.S.2d 908, 531 N.E.2d 629 (1988). | "Joint venture" entails legal consequences similar to those of partnership. | Are the legal consequences of a joint venture equivalent to that of a partnership? | 022057.docx | LEGALEASE-00133448-LEGALEASE-00133449 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 18013 | In re Norwest Bank of New Mexico, N.A., 134 N.M. 516 | 307A+750 | We agree with the trial court's conclusion that enforcement of the 1997 agreements is the subject of another suit by the Children. The issues for trial in the case below were delimited by the final pretrial order; the order contained no reference to enforcement of the agreements. Generally, only those theories of liability contained in a pretrial order will be considered at trial. Fahrbach v. Diamond Shamrock, Inc., 1996"NMSC"063, 122 N.M. 543, 550, 928 P.2d 269, 276. It was not an abuse of discretion for the trial court to refuse to consider the Children's enforcement claim at this stage of the proceeding. See Gonzales, 2002"NMCA"086, 132 N.M. 558, 52 P.3d 418 (holding it was not an abuse of discretion for the trial court to refuse filing of a third-party complaint against plaintiff in her individual capacity because it raised a new theory of recovery days before commencement of trial, would have unduly complicated the litigation, and most likely would have required a continuance). | Generally, only those theories of liability contained in a pretrial order will be considered at trial. | What theories of liability will be considered at trial? | Pretrial Procedure - Memo # 1857 - C - SHB.docx | ROSS-003286385-ROSS-003286386 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18014 | Kromat v. Vestevich, 14 Mich. App. 291 | 307A+747.1 | To have any effectiveness in the orderly process of litigation, a pretrial statement, when signed by the judge, must be considered an order of the court. The judge did not abuse his discretion in granting the motion. | Pretrial statement, when signed by the judge, is considered an order of court. | Can a pretrial statement be considered as an order of a court? | 027103.docx | LEGALEASE-00133235-LEGALEASE-00133236 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 18015 | Rehman v. ECC Int'l Corp., 698 So. 2d 921 | 307A+517.1 | The defendants' notice of withdrawal of their motion for attorney's fees is tantamount to a voluntary dismissal of their claim. A voluntary dismissal terminates a pending action instantaneously. See McKelvey, 430 So.2d at 922; Henry P. Trawick, Jr., Florida Practice and Procedure " 21"4 (1992). Although a voluntary dismissal is without prejudice to the bringing of a new action, it does preclude revival of the original action. McKelvey, 430 So.2d at 922. The defendants' withdrawal of their claim for attorney's fees terminated the pending action for fees and there was nothing to "revive." Thus, the defendants' "renewed" motion for attorney's fees did not renew anything and was a nullity. | Voluntary dismissal terminates pending action instantaneously. | Does voluntary dismissal terminate pending action instantaneously? | 028564.docx | LEGALEASE-00132671-LEGALEASE-00132672 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 18016 | Juengain v. Tervalon, 223 So. 3d 1174 | 307A+517.1 | Based on the record on appeal, the trial court did not err in dismissing this action as abandoned pursuant to La. C.C.P. art. 561. Nonetheless, we recognize that the trial court's judgment is partially in error in that it orders this action be dismissed with prejudice. An action may be dismissed as abandoned under La. C.C.P. art. 561 only without prejudice. Liner, 08"0208 at p. 2, n. 1, 991 So.2d at 1152 (collecting cases). Given that this is a tort suit"a legal malpractice (professional negligence) suit"the dismissal of this suit, whether with or without prejudice, produces no different result. Id. A dismissal without prejudice is considered as if the suit has never been filed; hence, any new suit that Mr. Juengain might file would be barred by prescription. Id. Accordingly, we decline to exercise our authority, pursuant to La. C.C.P. arts. 2164 and 2129, to amend the trial court's judgment. Id | A dismissal without prejudice is considered as if the suit has never been filed. | "Is an action treated as if it never had been filed, following a voluntary dismissal without prejudice?" | Pretrial Procedure - Memo # 2853 - C - NS.docx | ROSS-003288158-ROSS-003288159 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18617 | Food Lion v. Capital Cities/ABC, 194 F.3d 505 | 386=15 | In North and South Carolina, as elsewhere, it is a trespass to enter upon another's land without consent. See, e.g., Jordan v. Van Orman, 298 N.C. 656, 197 S.E.2d 524, 530 (N.C. 1973); Snow v. City of Columbia, 305 S.C. 544, 409 S.E.2d 797, 802 (S.C. App. 1991). Accordingly, consent is a defense to a claim of trespass. See, e.g., Miller v. Brooks, 123 N.C.App. 20, 472 S.E.2d 350, 355 (N.C.App. 1996), review denied, 345 N.C. 344, 483 S.E.2d 172 (N.C.1997). Even consent gained by misrepresentation is sometimes sufficient. See Desnick v. American Broad. Cos., 44 F.3d 1345, 1351 (7th Cir. 1995) (Posner, C.J.). The consent to enter is canceled out, however, "if a wrongful act is done in excess of and in abuse of authorized entry." Miller, 472 S.E.2d at 355 (citing Blackwelder v. Cotton, 297 N.C. 163, 254 S.E.2d 7, 9 (N.C. 1979)). Cf. Rearr v. Greenville County, 119 S.C. 447, 444 S.E.2d 296, 300 (S.C. Ct.App. 1991) (noting that the law of trespass protects the "peaceable possession" of property). | Under North Carolina and South Carolina law, consent to enter is canceled out, and does not serve as defense to a claim of trespass, if a wrongful act is done in excess of and in abuse of authorized entry. | Is consent a defense to a claim of trespass? | Trespass - Memo 226 - BK.docx | ROS5-00328B898 | Condensed, SA, Sub 0.8 | | | | 1 | | 1 | |
| 18618 | Hinman v. Pac. Air Lines Transp. Corp., 84 F.2d 755 | 386=57 | The case differs from the usual case of enjoining a trespass. Ordinarily, if a trespass is committed upon land, the plaintiff is entitled to at least nominal damages without proving or alleging any actual damage. In the instant case, traversing the airspace above appellants' lands is not, of itself, a trespass at all, but it is a lawful act unless done under circumstances which will cause injury to appellant's possession. | Ordinarily, landowner is entitled to at least nominal damages for trespass without showing any actual damages. | Can nominal damages be awarded when the amount of actual injury is unclear in a trespass action? | 047303.docx | LEGALEASE-00313403-LEGALEASE-00313404 | Condensed, SA, Sub 0.74 | | | 1 | | 1 | 1 | 1 |
| 18619 | Kaprowski v. Baker, 822 F.3d 248 | 393=1456 | In United States v. Demko, 385 U.S. 149, 153, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966), the Court recognized the congressional purpose in making an adequate substitute for a system of recovery by common-law torts," and held that prison workers' exclusive remedy for common-law torts was the FTCA. As such, the Act did prevent prison inmates from claiming that they could be brought against the United States under the Federal Tort Claims Act, which should impose liability on the United States. Id. In coming to this conclusion, the Court recognized that workers' compensation schemes (such as the IACA) "were the offspring of a desire to give injured workers a quicker and more certain recovery than can be obtained from tort suits," based on negligence and subject to common-law defenses for such suits." Id. at 151, 87 S.Ct. 382 (emphasis added). Because the IACA and FTCA protect against the same sort of harm, the IACA displaces the FTCA, id. at 152, 87 S.Ct. 382; see also Vaccaro, 81 F.3d at 857. Demko thus stands for the proposition that the IACA and FTCA are similar in the interests they protect. | Inmate Accident Compensation Act (IACA), a workers' compensation scheme that covered federal prisoners injured during their course of their prison employment, did not preclude former federal prisoner, who severely injured his back when he fell off a ladder while working in the food service area of the prison, from bringing Bivens claim for money damages alleging that prison officials were deliberately indifferent to his serious medical needs in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8; 18 U.S.C.A. § 4126(c). | Would workers' compensation statutes like the offsprings of a desire to give injured workers a quicker and more certain recovery than is possible from tort suits, and supplements to common-law tort actions? | 047861.docx | LEGALEASE-00312905-LEGALEASE-00312907 | Condensed, SA, Sub 0.52 | | | | | 1 | 1 | 1 |
| 18620 | Knaggs v. City of Lexington, 173 Neb. 135 | 413=1 | Appellant and appellee have both cited Nebraska cases contending they support their respective positions comparable to the one before us and that the cases based on the holdings therein should, in effect, be controlling here. Each case arising under the Nebraska Workmen's Compensation Act must stand on its own facts, and the case of either party to this suit where facts relating thereto, together with our opinions construing such laws, must, as in the cases cited from other jurisdictions, we can be guided thereunder in Employer's Mutual Casualty Co. v. Bartile Roofs, Inc., 618 F.3d 922, 16 AS 26 178). "In referring to the decisions of other jurisdictions we must bear in mind that the compensation laws of the various states differ widely in many essential respects." And, we might add, the opinions of various states also differ widely in construing | Each case arising under Workmen's Compensation Act must stand on its own facts. R.R.S.1943, § 48-101 et seq. | Should each compensation case stand on its own facts? | 047869.docx | LEGALEASE-00310032-LEGALEASE-00310033 | Condensed, SA, Sub 0.87 | | | | | 1 | | 1 |
| 18621 | United States v. Mickisen, 1897 Ed 1223 | 63=11) | When faced with a constitutional challenge to "46(6, U-16(6), however, the Supreme Court struck down not a federal statute but a single provision of the crime, but it held that no federal revenue was not an ordinary cost of the crime, but it held that no federal revenue must be known at all. Salus, 54/3(1, G4 ---... S.Ct. at 13 --- 3. The Court thus "is not certain only enough that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest..." Id. at 1866. Because the government is not required to establish, in each case, the dollar amount did not err by omitting to the jury the question of whether a federal nexus existed. | The existence of a nexus between the bribe and some federal money is an element of bribery. | Is the existence of a nexus between a bribe and some federal money an element of bribery? | 01207.docx | LEGALEASE-00312893-LEGALEASE-00312894 | Condensed, SA, Sub 0.0 | | | 1 | | 1 | |
| 18622 | Merchants Nat. Bank of Aurora v. Frazier, 329 Ill. App. 191 | 309=15) | The basic difference is that an agency is created by the authority of the principal, and each subject to his control; a trustee as such is not subject to the control of the beneficiary, and he holds the legal title to the trust property for his benefit in accordance with the terms of the trust and acts in accordance with the terms of the trust and not as his beneficiary's agent. Likewise he may have power to pass title; a trustee has title to the trust fund. The incidents of agency relation are not ordinarily found in the trust. An agent acting within the scope of the employment has power to subject his principal to liability in contract and in tort; the trustee, unless he is a co-trustee, has no such power, Liabilities, which are imposed on him upon the occasion of property are imposed upon the principal and not and not upon the beneficiary." The essential distinctions between a trust and an agency are that the trustee has title to the trust property held in the trust while in many cases an agent represents and acts for his principal, and a trust may not ordinarily be terminated by the fulfillment of its purpose, while agency may in general be revoked at any time. See Light v. Scott, 88 Ill. 239. | An agent, as such, does not have title to the property of the principal. | Does Agent have title to the property of the principal? | Principal and Agent Memo 79 - KC.docx | ROS5-0002912114-ROS5-0002913215 | Condensed, SA, Sub 0.9 | | | | | 1 | | 1 |

3179

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18023 | State v. Hunt Oil Co., 49 Ala. App. 445 | 371+2121 | The classification established by Section 786(34)(l) and interpreted by Regulation F21-012 is that of "manufacturer" or manufacturing establishment. Fuel oil used for firing kilns in manufacturing establishments is exempt from sales tax. The exemption would apply equally to manufacturers of concrete or asphalt or any others using fuel oil to fire kilns in manufacturing establishments. The power of the legislature to establish classifications of occupations, businesses and privileges for tax purposes is well established. Haden v. Watson, 270 Ala. 277, 117 So.2d 694; State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843. A tax to be equal and uniform must operate alike upon all within the class. State v. Ala. Power Co., 254 Ala. 327, 48 So.2d 445. "Unavoidable inequalities which are due only to inequalities in business conditions and activities are not sufficient to render a tax statute invalid." Vol. 84, C.J.S. Taxation s 23. | Unavoidable inequalities which are due only to inequalities in business conditions and activities are not sufficient to render a tax statute invalid. | Can a legislation upon the subject of taxation be declared invalid? | 045121.docx | LEGALEASE-00133900-LEGALEASE-00133901 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 18024 | Wightman v. Hart, 37 Ill. 123 | 83E+413 | The question arises, whether the sworn answer of Albert Clapp has been overcome by the evidence of two witnesses, or that of one, and circumstances equal to the testimony of another. A careful examination of complainant's evidence shows that there is, we think, an entire want of direct or circumstantial evidence to show that the assignment was without consideration, or was fraudulent. Nor does it show that Albert Clapp was insolvent, or of such limited means that Charles could not have been indebted to him. On the contrary, some of complainants' witnesses speak of his having some property, and most of them say he was engaged in business on his own account, or for others, and none of them seem to know anything definitely of his means. On the other hand, his testimony shows that he had means. Some of his witnesses say he was successful in business, and that they never heard his solvency questioned. It also appears that he owned a house in Boston, and another in Salem, and loaned money. The assignment of the notes is prima facie evidence that a consideration was paid, and the complainants' evidence, we think, fails to overcome it, and the sworn answer, and defendant's evidence, which seems to support the transaction as fair. | The transfer of a note by indorsement is prima facie evidence that a consideration was paid. | Is the assignment of a note a prima facie evidence that the consideration was paid? | 009456.docx | LEGALEASE-00134202-LEGALEASE-00134203 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 18025 | State Sav. Bank of Leavenworth v. Krug, 108 Kan. 108 | 83E+405 | In the case just cited, the court reached the conclusion that an indorsement of a negotiable instrument made by the use of a rubber stamp would be valid and binding on the indorser before the passage of the Negotiable Instrument Law, and that the Legislature did not intend by the adoption of the act to make any change in that respect. | Where the name of the indorser placed on the back of the instrument with a rubber stamp by one authorized to do so with intent to indorse it is a valid "indorsement" within Negotiable Instrument Law, SS 37, 38, Gen.St.1915, SS 6557, 6558, and in view of Gen.St.1915, S 10973, subd. 18. | Is affixing a rubber stamp to an instrument is sufficient in law to fulfill the requirement of indorsement? | 009491.docx | LEGALEASE-00134647-LEGALEASE-00134648 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 18026 | Gray v. Am. Exp. Co., 34 N.C. App. 714 | 8.30E+60 | A traveler's check is a negotiable instrument within the purview of Article III of the Uniform Commercial Code. G.S. 25-3-114 explicitly permits an instrument to be undated. Dating therefore is not a necessary element, the absence of which makes the instrument incomplete and unenforceable under G.S. 25-3-115.However, the name of the payee is an essential element. The payee's name is not one of the "(t)erms and omissions not affecting negotiability" under G.S. 25-3-112. G.S. 25-3-104 demands "(a)ny writing to be a negotiable instrument within this article must . . . be payable to order or to bearer." (Emphasis added.) G.S. 25-3-104(1)(d). Under old law of commercial paper and now incorporated into the Uniform Commercial Code, a note payable neither to order nor to bearer is not negotiable. Newland v. Moore, 173 N.C. 728, 92 S.E. 367 (1917). Specificity on the face of the instrument is required whether payment be to order or to bearer. Johnson v. Lassiter, 155 N.C. 47, 71 S.E. 23 (1911); G.S. 25-3-111(b). Therefore, it is clear that the checks were legally incomplete because they lacked the name of the payee. | Under the Uniform Commercial Code, a negotiable instrument is not incomplete and unenforceable because it is not dated. G.S. S 25-3-115. | Which law governs the negotiable instrument if it is undated? | Bills and Notes -Memo 291 -DB.docx | LEGALEASE-00023869-LEGALEASE-00023870 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 18027 | Potter v. Tucker, 11 Ala. App. 466 | 8.30E+60 | The count is clearly demurrable for failing to state the year of the execution of the note, but the judgment entry set out in the record shows that the judgment by default was granted with leave to execute a writ of inquiry; that the writ was executed, and the jury ascertained and assessed the damages. What proof the jury had before them in assessing and fixing the plaintiff's damages we cannot know, in the absence of a bill of exceptions. The notes declared on as described in the complaint were dated on the 27th day of January of a year not stated, and due two, four, and six months after date. Suit was not brought on them until August, and it will be seen that, no matter in what previous January of any year the notes were made, they would all have been due in August, when the suit was brought."Date in general is not essential to a bill or note. If there be no date, it will be considered as dated at the time it was made. "Aldridge v. Bank, 17 Ala. 45, 47. | Date in general is not essential to a bill or note; if there be no date it will be considered as dated at the time it was made. | How is the actual date considered when no date is mentioned in a bill or note? | 010234.docx | LEGALEASE-00134722-LEGALEASE-00134723 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 18028 | Fleming, etc. v. Sierra, 14 Teiss. 168 | 8.30E+60 | "When no date is expressed in a bill or note, it dates from the day when it was made or issued or from delivery." 8. C. J., p. 105, 190; p. 589; p. 184; p. 314, note 26 (a). | When no date is expressed in the bill or note, it dates from the day when it was made or issued or from delivery. | What happens when no date is expressed in the bill or note? | Bills and Notes -Memo 298 -DB.docx | ROSS-003303812 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |
| 18029 | State v. Hicks, 421 So. 2d 510 | 67+15 | This is a petition to review a decision of the Fifth District Court of Appeal reported as Hicks v. State, 407 So.2d 252 (Fla. 5th DCA 1981). The district court in Hicks held that non-consent to entry is an essential element of burglary under section 810.02(1), Florida Statutes (1979), which the state must allege in an information or indictment. We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and find conflict with State v. Jackson, 281 So.2d 353 (Fla.1973); Howard v. State, 400 So.2d 1329 (Fla. 4th DCA 1977), cert. denied, 364 So.2d 888 (Fla.1978). We hold that consent to entry is an affirmative defense to, rather than an essential element of, burglary, and quash the decision of the district court. | Consent to entry is affirmative defense to, rather than essential element of, burglary. West's F.S.A. S 810.02(1). | Is consent to entry a defense to burglary? | Burglary - Memo 145 - JS.docx | ROSS-003331013-ROSS-003331015 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18030 | S. Indiana Gas & Elec. Co. v. Dept of Highways, State of Ind., 533 N.E.2d 1289 | 200v40 | Public highways are established pursuant to legislative authority. All roads laid out under legislative enactment are public highways belonging to the State. State ex rel. Board of Commissioners of Hendricks County v. Board of Commissioners of Marion County (1908), 170 Ind. 595, 85 N.E. 513; Crews v. Board of Commissioners of Benton County (1894), 137 Ind. 424. Thus, in the absence of a statutory provision to the contrary, ownership of public ways lies in the State. Lampher v. State (1915), 59 Ind.App. 661, 109 N.E. 938. Likewise, control of the public highways and streets rests with the state. Board of Commissioners of Hendricks County, supra; Crews, supra; State v. Town of Marshall (1979), 178 Ind.App. 661, 383 N.E.2d 1076. Lampher, supra. Because streets are a part of the State Highway system. IND.GDDE R.11-2-3. It is undisputed that Division Street was a preexisting public right-of-way. Hence, as discussed above, the Division Street was owned by the State. It is equally true that an individual cannot purchase that which it already owns. Because the State had already purchased right-of-way already belonged to the State, there was no acquisition within the meaning of the Relocation Act. | In absence of statutory provision to the contrary, ownership of public ways lies in State. | Does the ownership of the public way lie with the state? | Highway- Memo 101- DB.docx | ROSS-003181313 ROSS-003181317 | Condensed, SA, Sub | 0.92 | 0 | 1 | | | 1 |
| 18031 | Haugh v. Simms, 44 Mass. App.Ct. 781 | 200v40 | The Commonwealth argues that simply because it was a public agency that purchased the property it raised a private issue that was unpersuaded by that contention. Whether a way is public or private is based on the use of the way, not solely on who owns it. See Fenn v. Middleborough, 7 Mass.App.Ct. 80, 83, 386 N.E.2d 670 (1979) (a way is no less a public one if used by only a few, or even by a single person); a municipal corporation or some other governmental authority, prescription, or prior to 1846, by dedication to public use by the owner coupled with acceptance by the public). See also [citation]. Town Clerk of Harwich, 377 Mass. 703, 708 708, 709 n. 2, 389 N.E.2d 2473 (1979) (statutory private way is a way laid out and accepted by town officials for the use of one or more of the inhabitants). | Whether a way is public or private is based on the use of the way, not solely on who owns it. | What determines whether a way is public or private? | Highway- Memo 107- DB.docx | ROSS-003181316 ROSS-003181317 | Condensed, SA | 0.87 | | 1 | 0 | | 1 |
| 18032 | Caglianese v. Venturoni, 264 N.J.Super. 11, N.J. Super. 11 | 307H+517.1 | At appeal may be taken at any from a final judgment, R.2:2-3(a)(1), and a judgment is final only if it final both as to all issues and all parties to the controversy. See Lawlor v. Isaac, 249 N.J.Super. 13, 17, 592 A.2d 1 (App.Div. 1991). While a voluntary dismissal may be the judgment... The additional inquiry must be whether the stipulation of dismissal ended the case on all issues as to all parties. R.2:2-3(a)(1). R. 4:37-1(b). | While a voluntary dismissal may be a judgment, it is not necessarily a final judgment, the additional inquiry must be whether the stipulation of dismissal ended the case on all issues as to all parties. R. 2:2-3(a)(1); R. 4:37-1(b). | While a voluntary dismissal may be a judgment, is it necessarily a final judgment? | 02R423.docx | LEGALEASE 00131984- LEGALEASE 00131985 | SA, Sub | 0.59 | | 1 | | | 1 |
| 18033 | Earl Man & Co. v. M/V Rosa, 901 F.2d 871 | 170A+1666 | District courts have considerable discretion over whether to permit withdrawal of previously obtained admissions. See Bergemann v. United States, 820 F.2d 1117 (10th Cir.1987); Brook Village Nursing & Assocs. v. General Elec. Co., 686 F.2d 66, 70 (1st Cir.1982). A court may permit withdrawal if it... Such discretion, however, is not unlimited, the court must, however, be exercised within the parameters drawn by Rule 36(b)'s two-part test. On appeal, this court will review the district court's decision to permit withdrawal of admission only for abuse of discretion. It is important to note that once had leave to withdraw its admissions, the district court could grant the motion only if it found that to doing was necessary to prevent manifest injustice. See Brook Village N. Assocs. v. General Elec. Co., 686 F.2d at 71. Upon review, we find that the district court successfully surrounded this legal standard and consequently erred within its discretion in permitting M/V ROSITA to withdraw its admission. | District courts have considerable discretion over whether to permit withdrawal of admissions, and although a court has had some to right from which it could be determined that discretion's damages were substantially less than amount admitted to, Fed.Rules Civ.Proc.Rule 36(b), 28 U.S.C.A. | "Although district courts have considerable discretion over whether to permit withdrawal of admissions, once trial has begun, may a court grant a motion to withdraw only if it determines that doing so is necessary to prevent manifest injustice?" | 02R6913.docx | LEGALEASE 00134304- LEGALEASE 00134306 | Condensed, SA, Sub | 0.69 | | 1 | 0 | | 1 |
| 18034 | Motor Car Classics v. Abbott, 316 S.W.3d 223 | 307A+486 | However, good cause does not stand alone. "Undue prejudice to lack of withdrawal of deemed admissions. Tex.R. Civ. P. 169(2); Stelly, 927 S.W.2d 602 (3). Tel [citation] (a court's decision to deny or prejudice again in a part. See N. Rew'ro. Co. of New Jersey v. Greene, 628 S.W.2d 110 at part. See N. N. Cir. 1990). See also ... Stern, Inc. v. Dupp, 968 S.W.2d 554, 557 (Tex.1998). | Undue prejudice bars withdrawal of deemed admissions. Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | Does undue prejudice bar a withdrawal of deemed admissions? | 02R615.docx | LEGALEASE 00134131- LEGALEASE 00134132 | SA, Sub | 0.74 | | 1 | | | 1 |
| 18035 | Walmore v. Delta Nedco, 2 Dk.Ok., 135 S.W.2d 208 | 307A+486 | A party seeking to withdraw a deemed admission "must first establish 'good cause' for the withdrawal. Tex.R. Civ. P. 198.3(a). A party does on... "By showing that its failure to answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference. Scott, 927 S.W.2d at 622 (citing N. Rew'ro. Co. v. Greene, 824 S.W.2d 609, 612 (Tex.App.-Dallas 1992, writ denied)... according to Conscious indifference." Stely, 927 S.W.2d at 334, 156 (Tex 1998) (per curiam). | A party show good cause for the withdrawal of deemed admissions by showing that its failure to answer was accidental or the result of mistake, rather than intentional or the result of conscious indifference. Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | "Is good cause justifying the withdrawal or amendment of an admission satisfied by showing that the failure to answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference?" | Pretrial Procedure - Memo 8 156 - C- RF.docx | LEGALEASE 00204440- LEGALEASE 00204441 | Condensed, Order, SA | 0.48 | | 1 | 0 | | 1 |
| 18036 | Robertson v. State, 392 S.W.3d 1 | 25H+454 | When Robertson pled guilty to deviate sexual assault in the first degree in June 1995, the statute defining his offense provided, in relevant part: A person commits the crime of deviate sexual assault in the first degree if he has deviate sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old 2. Deviate sexual assault in the first degree is a Class B felony. Section ... thereof the actor inflicts serious physical injury on any person or displays a deadly weapon in a threatening manner, in which cases the crime is a class B felony. | Offender's prior conviction for deviate sexual assault in the first degree was not conviction of "sexually violent offense" for purpose of statute's provision for registration as a sexually violent predator (SVP), as involuntary commitment statute referred only to "deviate sexual assault" without reference to degrees, although other sexual offenses were referred to by degree, the involuntary commitment status were separately listed. V.A.M.S. § 632.480(4). | When does a person commit the crime of deviate sexual assault in the first degree? | Sex Offense - Memo 73 - 58.docx | LEGALEASE 00205589- LEGALEASE 00205590 | Condensed, SA, Sub (I) | | 1 | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18037 | Ropo v. City of Seattle, 67 Wash. 2d 574 | 371+2001 | 89 Plaintiff-respondents' contentions are appealing, but they have not persuaded us respecting the existence of any improper nexus between the measure of the tax (gross sales during free entertainment hours) and what they allege to be the Incidence of the tax"the sale of liquor. The character of a particular tax is not determined by the mode adopted for its payment. Maine v. Grand Trunk Ry., 142 U.S. 217, 12 S.Ct. 121, 163, 35 L.Ed. 994 (1891). The taxable occurrence here is the admission of the place of entertainment, and is only measured by the gross sales of the plaintiff's establishments. It seems significant to us that the plaintiff-respondents themselves, in the conduct of their businesses, recognize an occurrence, transaction on relationship with patrons during free entertainment hours by raising the price of "refreshment," i.e., alcoholic beverages. The taxes remitted to the City of Seattle were not "excises upon liquor," but legislatively-authorized levies by the municipality upon the privilege of being admitted to a place where free entertainment is provided. | Character of a particular tax is not determined by the mode adopted for its payment. | Is the character of a tax being imposed determined by mode adopted in fixing its amount? | 045011.docx | LEGALEASE-00134513-LEGALEASE-00134514 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 18038 | Hamilton Nat. Bank v. Richardson, 42 Tenn. App. 486 | 371+2001 | The same principle, however, has been applied by numerous courts in other states to attempts to remit or compromise accrued taxes. A clear statement of the rule and the reasons underlying it appears in State ex rel. Donsante v. Pethtel, 158 Ohio St. 35, 106 N.E.2d 626, 628, 28 A.L.R.2d 1419, where the court said:"The general rule is that the power to tax does not include the power to remit or compromise taxes. A tax is not predicated on contract and cannot be discharged by reason of contractual considerations. Where taxes are legally assessed, the taxing authority is without power to compromise, release or abate them execpt as specifically authorized by statute, and this is for the reason that, if such contracts can be made and performed on the part of a municipality, uniformity and equality are destroyed, and the burden of the obligation so remitted is inequitably cast upon the payers of general taxes in the taxing district."Numerous cases in support of this holding are cited in the opinion, and see accompanying annotation, 28 A.L.R.2d 1428, where it is said:"The courts are in virtually unanimous agreement that neither a political subdivision nor an officer thereof has the power to compromise, remit, or release a claim for taxes, in the absence of specific statutory authorization." See also 51 Am.Jur. 847. | A tax is not predicated on contract and cannot be discharged by reason of contractual considerations. | Can a tax be discharged by reason of contractual considerations? | 045058.docx | LEGALEASE-00134270-LEGALEASE-00134271 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 18039 | People ex rel. Froelick v. Graves, 259 A.D. 30 | 371+3522 | While an endeavor to spell out the intent of the legislature does not lead to a very satisfactory result, it would appear that the placing of Article 16"A, entitled "Temporary Emergency Tax On Net Incomes Of Unincorporated Businesses', so that the same follows Article 16, entitled "Taxes Upon And With Respect To Personal Incomes', has some significance. I am not unmindful of the fact that the characterization of a tax by the legislature or the name by which the tax is described is immaterial ( Franklin Society for Home Building & Savings v. Bennett, 282 N.Y. 79, 24 N.E.2d 854), but it would seem in this case that the legislature had in mind an emergency tax in the form of an income tax based on the entire net income of an unincorporated business, and in the absence of statutory authority or court decision, it may not be presumed that this tax is deductible. Courts generally have refused to favor exemption from taxation. Matter of Board of Education City of Jameston, New York, v. Baker, 241 App.Div. 574, 272 N.Y.S. 801, affirmed 266 N.Y. 636, 195 N.E. 359; County of Herkimer v. Village of Herkimer, 251 App.Div. 126, 295 N.Y.S. 629, 632. | Under statutes imposing an unincorporated business tax the legislature intended that such tax should be an emergency income tax based on entire net income of unincorporated businesses, and the tax falls within provision of statute prohibiting deduction of "income taxes" in computing net income subject to personal income tax. Tax Law, S 360, subd. 3, and S 386-j. | Is the name by which the tax is described in the statute immaterial? | Taxation - Memo # 446 - C - SS.docx | ROSS-003291814-ROSS-003291815 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 18040 | Ivory v. Int'l Bus. Machines Corp., 116 A.D.3d 121 | 386+10 | Supreme Court partially erred in denying the portion of defendant's motion for summary judgment dismissing the trespass claims of Grace Odom, Thomas H. Ivory and plaintiff Shawn (Ivory) Stevens insofar as those claims are based on vapor intrusion, air emissions and groundwater contamination. Initially, defendant incorrectly argues that plaintiffs asserted a new theory of trespass based on groundwater infiltration, soil contamination and air emissions. Broadly reading the amended complaint and plaintiffs' interrogatory responses, plaintiffs adequately alleged that defendant's trespasses occurred through water and soil contamination as well as air and vapor intrusion. On the merits, a trespass claim represents an injury to the right of possession (see 104 N.Y. Jur. 2d, Trespass, " 10 at 471), and the elements of a trespass cause of action are an intentional entry onto the land of another without permission (see Phillips v. Sun Oil Co., 307 N.Y. 328, 331, 121 N.E.2d 249 [1954]; Hand v. Stray Haven Humane Socy. & S.P.C.A., Inc., 21 A.D.3d 626, 628, 799 N.Y.S.2d 628 [2005] ). Regarding intent, the defendant "must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he [or she] willfully does, or which he [or she] does so negligently as to amount to willfulness" (Phillips v. Sun Oil Co., 307 N.Y. at 331, 121 N.E.2d 249). For a trespass claim involving toxic chemicals, a defendant is liable only if "he [or she] had good reason to know or expect that subterranean and other conditions were such that there would be passage [of the toxins] from [the] defendant's to [the] plaintiff's land" (id.; see Baity v. General Elec. Co., 86 A.D.3d at 951, 927 N.Y.S.2d 492). Documents in the record confirm that defendant became aware of a solvent pool under its facility, TCE was one of the solvents in that pool, the solvent concentration was high, and it appeared that contaminated groundwater was moving | The elements of a trespass cause of action are an intentional entry onto the land of another without permission. | What does a trespass claim represent? | Trespass - Memo 270 - SB.docx | ROSS-003290977-ROSS-003290978 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18041 | Coppola v. Smith, 935 F. Supp. 2d 993 | 405-1126 | As for the continuing trespass cause of action, the failure to clean up contaminated soil that causes ongoing damages to property can constitute a continuing nuisance and a continuing trespass. See Rancho Viejo v. Tres Amigos Viejos, LLC, 100 Cal.App.4th 550, 562, 123 Cal.Rptr.2d 479 [2002] ... | Owner and operator of dry cleaning business made no factual allegation that water off by oil contaminated its its property in subject well, to alone in failure to detect and abate petrochemical/where [PCE] contamination nuisance, under California law, claims for private, public, continuing, and per se nuisance claims; owner and operator offered only vague allegation that owner/operator-and that such operation caused spread of hazardous substance. West's Ann.Cal.Civ.Code §§ 3479, 3480. | "Can failure to clean up contamination that causes ongoing damage to property constitute a continuing nuisance, and a continuing trespass?" | 047388.docx | LEGAL64E-00135797 / LEGAL64E-00135798 | Condensed, SA, Sub 0.41 | 0.41 | 0 | 1 | | 1 | 1 |
| 18042 | GATX Mgmt. Servs. v. Weakland, 171 F. Supp. 2d 1159 | 25-1-146 | The arbitration provision mandates arbitration for "any and all claims, demands, causes of action, disputes, controversies, and other matters in question arising out of or relating to this Agreement, one of its provisions, or the relationship between the parties (whether by this Agreement." This is undoubtedly a broad arbitration clause that covers not only those issues arising out of the employment contract, but even those issues with any connection to the relationship between the parties... | Arbitration clause in employment agreement which provided that any and all claims relating to agreement or relationship under agreement were arbitrable extended to employee's claims that former employee, as officer of employer, tortiously induced other employees to breach their employment contracts and work for competitor, as such claims "related to" the employment relationship with employer. | "Do courts consider an arbitration clause in an employment contract as broad, if it covers issues other than those arising under the employment contract?" | 007526.docx | LEGAL64E-00135780 / LEGAL64E-00135782 | Condensed, SA, Sub 0.82 | 0.82 | 0 | 1 | | 1 | 1 |
| 18043 | Chambers v. Groome Transp. of Alabama, 41 F. Supp. 3d 1327 | 25-1-200 | "specifically its every Federal or state statute it purports to cover." Id. at 1029 ... "any dispute, claim or controversy." As an example of "clear language" requiring the arbitration to arbitrate their claims under federal statutory law ... Palandino decision, an arbitration agreement need not mandate arbitration of statutory claims because "[a]ny disputes mean all"... | On a motion to compel arbitration, issues of whether an arbitration agreement is a written agreement involving interstate commerce as required by the Federal Arbitration Act (FAA), whether the arbitration agreement is unenforceable or unconscionable, and whether the scope of the arbitration agreement covers the dispute are decided by the court. Where arbitration agreement prevents the making of the arbitration agreement are presumptively for the court to decide, unless there is an agreement to the contrary between the contracting parties. 9 U.S.C.A. § 2. | Does an arbitration agreement have to specifically list every federal or state statute that it purports to cover? | Alternative Dispute Resolution - Memo 021 - 58.docx | ROSS-003326373 / ROSS-003326... | Condensed, Order, SA, SA | 0.34 | 0 | 1 | | 1 | 1 |
| 18044 | United States v. Bonito, 57 F.4th (1) F.3d 327 | 63-670 | In United States v. Crozier, 987 F.2d 893, 898-99 [2d Cir. 1993], we held that the business nature of bribes applies to both public and private bribes. Bonito argues that the new version does not because his longer proscribed conduct of the distinction ... Fatal to his argument, however, is the fact that the deleted language has been replaced with language that is more specific. Compare id. at 899 [earlier the formulation of language "whoever, or "in" because" of the official conduct] with "§366(a)(1)(B) [under the current version, the payment must be "to influence or reward" an official conduct]... | Current as well as former version of federal statute proscribing bribery of public and private-sector employees applied to payment of bribes in connection with both gratuities and bribes, so long as intent to reward or corrupt. 18 U.S.C.A. § 666(a)(1). | Does Section 666 of the bribery statute apply to both gratuities and bribes? | Bribery - Memo 806? - 5.docx | ROSS-003329036 / ROSS-003329068 | Condensed, SA, Sub 0.7 | 0.7 | 0 | 1 | | 1 | 1 |
| 18045 | McElrath v. State, 55 Ga. 562 | 67-20 | Is a mill-house or a place of business that no description of, as such, nor any averment of ownership of the building is required in the definition of burglary? It is not one of the buildings expressly named in the definition of the offense. That is the building in which the grain is stored... an indictment for burglary which alleges the offence to have been committed by breaking and entering a mill-house with intent to steal, and which neither by description nor averment designates the house as a dwelling-house, or a place of business, is fatally defective, and judgment thereon will be arrested... | As a mill-house is not one of the buildings expressly mentioned in the statutory definition of burglary, and as no averment of ownership is required, an indictment for burglary which alleges the offense to have been committed by breaking and entering a mill-house with intent to steal, and which neither by description nor averment designates the house as a place of business, is fatally defective, and judgment thereon will be arrested. | Is breaking and entering a place of business considered a burglary? | Burglary - Memo 111 - 5.docx | ROSS-003330997 / ROSS-003330998 | Condensed, SA, Sub 0.44 | 0.44 | 0 | 1 | | 1 | 1 |

3183

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18046 | State v. Bussard, 494 S.W.2d 401 | 67+2 | The essential elements of burglary in the second degree are breaking and entering a dwelling house by a person with the intent to commit a felony or steal therein. The address of the dwelling house is not an essential element of the crime as long as the dwelling house is sufficiently identified. In State v. Sallee, 436 S.W.2d 246 (Mo.1969), the court answered a similar contention thusly (l.c. 251): "The information in this case set out that the dwelling house was the property of Mr. and Mrs. Robert D. Jennings and contained all the elements of the offense of burglary in the second degree. The failure to allege the address does not make this information legally insufficient. It was sufficiently definite to enable the defendant in this case to prepare his defense. With the dwelling house being described as the property of Mr. and Mrs. Robert D. Jennings, and the date of the offense being set out the information is of sufficient definiteness to be set up as a bar to subsequent prosecution for the same offense | Address of a dwelling house is not an essential element of crime of burglary in second degree as long as such house is sufficiently identified. Sections 560.045, 560.110 RSMo 1969, V.A.M.S. | Is an address of the location a necessary element of burglary? | 012636.docx | LEGALEASE-00135838-LEGALEASE-00135840 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 18047 | Davis v. Com., 132 Va. 521 | 67+9(1) | Breaking, as an element of the crime of burglary, may be either actual or constructive. There is a constructive breaking when an entrance has been obtained by threat of violence, by fraud, or by conspiracy. Min. Syn. Cr. Law, p. 92; Clarke v. Commonwealth, 25 Grat. (66 Va.) 912. The entrance to the premises in the instant case was not obtained by either of these means, and cannot be classed as a constructive breaking. | Breaking, as an element of the crime of burglary, may be either actual or constructive, there being a constructive breaking when an entrance has been obtained by threat of violence, by fraud, or by conspiracy, and an actual breaking where there is the application of some force, slight though it may be, whereby the entrance is effected, and may be the mere pushing open of a door, turning a key, lifting a latch, or use of slight physical force. | Can the breaking in a burglary be actual and constructive? | Burglary - Memo 126 - JS.docx | ROSS-003316265-ROSS-003316267 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 18048 | United States v. Sanders, 705 F. Supp. 396 | 350H+1263 | Because attempt burglaries present substantially the same risks of injury as do burglaries, the Court concludes that they constitute "violent felonies" within the meaning of section 924(e). Defendant's motion to preclude application of the enhanced sentencing provision is therefore denied | All attempt burglaries were "violent felonies" for purposes of provision authorizing an enhanced sentence for convicted felon who possessed a firearm which has traveled in interstate commerce and who had three previous convictions for a violent felony or serious drug offense; like burglaries, attempted burglaries involved a risk that the property owner might return, and neighbor might investigate, or a law enforcement official might respond, presenting the possibility of injury. 18 U.S.C.A. S 924(e)(2)(B), (e)(2)(B)(i, ii). | Is attempted burglary a violent felony? | Burglary - Memo 134 - JS.docx | ROSS-003331007-ROSS-003331009 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 18049 | Fritcher v. Kelley, 34 Idaho 471 | 302+8(16) | Appellants contend that the complaint states two causes of action, one based on mental incompetency and one on undue influence. They interposed a motion to elect, which was denied, and contend that it should have been sustained on the authority of Kelly v. Perrault, 5 Idaho, 221, 48 Pac. 45. Assuming, but not deciding, that the rule in Kelly v. Perrault should be followed, it does not appear that the complaint states two causes of action. It states a good cause of action on the ground of mental incompetency. The allegations concerning undue influence are mere conclusions. The facts constituting undue influence, like those constituting fraud, must be pleaded; it not being sufficient to aver undue influence which is a legal conclusion. Kelly v. Perrault, supra. There being but one good cause of action stated in the complaint, it was not error to deny the motion to elect. | Facts constituting undue influence must be pleaded, and mere conclusions are insufficient. | Should facts constituting undue influence be pleaded? | Pleading - Memo 320 - RMM.docx | ROSS-003290246-ROSS-003290248 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 18050 | Am. Fed'n of State, Cty. & Mun. Employees v. Metro. Water Dist. of S. California, 126 Cal. App. 4th 247 | 307A+485 | The Local cites Wimberly v. Derby Cycle Corp. (1997) 56 Cal.App.4th 618, 65 Cal.Rptr.2d 532 in support of its contention that the MWD waived its right to fees by failing to move to compel further responses. In a products liability action, the plaintiff filed requests seeking the defendant's admissions that (1) the product was defectively manufactured, (2) the defect proximately caused the plaintiff's injuries, and that (3) the plaintiff's past and future medical expenses were reasonable and necessary. (Id. at p. 635, 65 Cal.Rptr.2d 532.) Concerning future medical care, the defendant initially unequivocally denied the request for admission (ibid.) and then amended its answer to object to the request as vague and ambiguous as to what the plaintiff claimed and the extent of the care the plaintiff sought; but to the extent it could respond, the defendant denied that the care was reasonable and necessary. (Id. at p. 636, 65 Cal.Rptr.2d 532.) The appellate court held, with respect to the plaintiff's cost-of-proof fees, that he was "not entitled to costs associated with the medical care issue[ ] because he made no motion to compel a further response after [the defendant] objected to the request for admission." (Ibid., citing Code Civ. Proc., " 2033, subd. (l ).) Wimberly is distinguished. | Metropolitan water district did not waive its right to cost-of-proof fees and expenses, based on its failure to move to compel further responses, in a dispute involving the grievance procedure under a memorandum of understanding (MOU) between district and union; union's admissions and denials provided complete responses to the requests, thus leaving nothing to address in a motion to compel. West's Ann.Cal.C.C.P. S 2033. | Will a plaintiff be entitled to costs associated with proving need for future medical care if the plaintiff made no motion to compel a further response after defendant objected to request for admission of that fact? | Pretrial Procedure - Memo # 3487 - C - NS.docx | ROSS-003318653-ROSS-003318654 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 18051 | Pope v. United States, 15 Cl. Ct. 218 | 34+12 | As defendant correctly contended, the Army has discretion in both releasing and reinstating a reserve officer from or to active duty. The statutory provisions of 10 U.S.C. " 681(a) (1976) provide that "the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." Reinstatement is governed by 10 U.S.C. " 1211(a)(4) (1976), as previously discussed. Unlike a commissioned officer of a regular component who is entitled to be recalled to active duty pursuant to 10 U.S.C. "" 1211(a)(1) and (a)(2) (1976), the provisions of section 1211(a)(4) governing reserve officers do not mention recall to active duty. Section 1211(a)(4) only grants reserve officers the right to be reappointed to their respective reserve component. Therefore, the court concludes that the Army has discretionary authority to choose whether or not to reinstate a reserve officer to active duty. Cf. Craft v. United States, 210 Ct.Cl. 170, 185"86, 544 F.2d 468, 476"77 (1976) (reenlistment is generally a matter within the discretion of the military, unless Congress specifically mandates otherwise as it did in 10 U.S.C. " 1211). As a result, plaintiff does not have a mandatory right to an appointment to active duty. However, this conclusion does not end the court's inquiry. | Army has discretionary authority to choose whether to reinstate a reserve officer to active duty. 10 U.S.C.A. SS 681(a), 1211, 1211(a)(1, 2, 4). | Does the Army have discretion in both releasing and reinstating a reserve officer from or to active duty? | 008485.docx | LEGALEASE-00137010-LEGALEASE-00137011 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18052 | Sims v. State, 131 Ark. 185 | 63+10 | It is argued that the use of the word "and" in joining the bribe"receiving official with the bribe giver necessarily makes the guilt of the former depend upon the guilty intention of the latter. We think that that is not a reasonable interpretation of the statute, and that it would lead to illogical results. For instance, if that interpretation were correct, then an official by receiving money might be guilty of a crime without any guilty intention or actual participation in the guilt of the bribe giver, whereas the obvious purpose of the lawmakers in framing this statute was to follow the common"law rule and to make either of the parties to such a transaction guilty who gives or receives money to influence official action regardless of the intention of the other in giving or receiving the money. Similar statutes in other states have been so construed. In the state of Massachusetts the statute on the subject of bribery is similar to the statute in this state, but the guilt of the bribe giver and of the bribe taker is declared in separate sections. The Massachusetts court in construing the statute held that the guilt of each party to the transaction depended upon his own guilty intention. Commonwealth v. Murray, 135 Mass. 530. The California statute is also similar, except that it, too, defines the offense of the respective participants in different sections, and the appellate court of that state held that: "The guilt of a state senator receiving a bribe on the understanding that his official conduct should be influenced thereby is not affected by the absence of intent to bribe on the part of the persons furnishing the money which was paid to him." Peoples v. Bunkers, 2 Cal. App. 197, 84 Pac. 364, 370. | In determining guilt of state senator for receiving bribe to defeat bill, evidence that he had entered a conspiracy to introduce bills to extort money for their defeat may be considered. | "Is the guilt of a state senator or officer receiving a bribe, on the understanding that his official conduct should be influenced, affected by the absence of intent to bribe on the part of the persons furnishing the money paid to him?" | 011707.docx | LEGALEASE-00136644-LEGALEASE-00136645 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 18053 | United States v. Jennings, 160 F.3d 1006 | 63+1(1) | Whether a payment is a bribe or an illegal gratuity under " 201 depends on the intent of the payor. A bribe requires that the payment be made or promised "corruptly," that is, with "corrupt intent." Under " 201 "corrupt intent" is the intent to receive a specific benefit in return for the payment. See Muldoon, 931 F.2d at 287; United States v. Duvall, 846 F.2d 966, 971 n. 6, 972 (5th Cir.1988); United States v. Irwin, 354 F.2d 192, 197 (2d Cir.1965). In other words, the payor of a bribe must intend to engage in " "some more or less specific quid pro quo" " with the official who receives the payment. Duvall, 846 F.2d at 972 (quoting United States v. Arthur, 544 F.2d 730, 734 (4th Cir.1976)); accord United States v. Sun-Diamond Growers of California, 138 F.3d 961, 966 (D.C.Cir.1998) (discussing the quid pro quo element of " 201(b) bribery), cert. granted in part, 525 U.S. 961, 119 S.Ct. 402, 142 L.Ed.2d 326 (1998) (No. 98-131), and cert. denied, 525 U.S. 964, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998) (No. 98-374); United States v. Johnson, 621 F.2d 1073, 1076 (10th Cir.1980) (same); cf. alsoUnited States v. Niederberger, 580 F.2d 63, 68 (3d Cir.1978)(explaining that under " 201 the intent to "corruptly" receive a payment means the intent to effectuate a quid pro quo); United States v. Strand, 574 F.2d 993, 995 (9th Cir.1978) (same). Accordingly, a good will gift to an official to foster a favorable business climate, given simply with the " "generalized hope or expectation of ultimate benefit on the part of the donor," " does not constitute a bribe. Johnson, 621 F.2d at 1076 (quoting Arthur, 544 F.2d at 734); cf. also United States v. Allen, 10 F.3d 405, 411 (7th Cir.1993) ( "Vague expectations of some future benefit should not be sufficient to make a payment a bribe."). An illegal gratuity, on the other hand, is a payment made to an official concerning a specific official act (or omission) that the payor expected to occur in any event. No corrupt intent to influence official behavior is required. The payor simply | "Corrupt intent," with which payment must be made in order for payment to be a bribe for purposes of statute prohibiting bribery of public officials and witnesses, is the intent to receive a specific benefit in return for the payment. 18 U.S.C.A. S 201(b)(1)(A). | What is the definition of corrupt intent under the bribery statute? | Bribery - Memo #459 - C-JL.docx | ROSS-003290130-ROSS-003290132 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 18054 | 8182 Maryland Associates, Ltd. Partnership v. Sheehan, 14 S.W.3d 576 | 289+929 | Moreover, "it is generally accepted that since the Uniform Act only incorporated in part the common law on dissolutions, other means of dissolution known to the common law are not precluded by the Act." Weeks v. McMillan, 291 S.C. 287, 353 S.E.2d 289, 291"92 (App.1987) (citing Fenner & Beane v. Nelson, 64 Ga.App. 600, 13 S.E.2d 694 (1941)). Under Missouri common law, a partnership is dissolved by the admission of a new partner. Mudd v. Bast, 34 Mo. 465, 468 (1864). | Under common law, a partnership is dissolved by the admission of a new partner. | Is a partnership dissolved upon admission of a new partner? | 022271.docx | LEGALEASE-00136369-LEGALEASE-00136370 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 18055 | Luellen v. City of Aberdeen, 20 Wash. 2d 594 | 296+2 | It may be well to observe here that, while the act of which these sections are a part refers to what a police officer receives when he retires from service as a "pension," it is not such as that term is legally defined. A pension is a gratuity extended to an individual by his sovereign as a reward for past services. The title of the act is "An Act to create a police relief, health and insurance fund in incorporated cities of the first class, providing for the disbursement thereof, and creating a Board of Police Pension Fund Commissioners." Laws of 1909, chapter 39, p. 59. The law relating to funds created for the foregoing purposes must be our guide in deciding this case, and not that relating to pensions, as it is entirely different in many respects. However, as the act uses the word "pension" and so have the parties to this case, we shall do likewise but bearing in mind at all times the distinction noted above. | A "pension" is a gratuity extended to an individual by his sovereign as a reward for past services. | Is pension a reward for past services? | 022802.docx | LEGALEASE-00136720-LEGALEASE-00136721 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 18056 | Baillio v. Wilson, 6 Mart.(n.s.) 334 | 307A+716 | In examining the bills of exception, we have concluded that the court below erred in refusing the continuance claimed on the ground of sickness of the counsel. It has been determined in several instances in the supreme court sitting in the eastern district, that the sickness and consequent incapacity of leading and principal counsel in a cause, to attend to it, is a good ground on which to obtain a continuance. | The sickness of principal counsel is good cause for a continuance. | Is the sickness of principal counsel good cause for a continuance? | 029360.docx | LEGALEASE-00136138-LEGALEASE-00136139 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18057 | Harrison v. Harrison, 367 S.W.3d 822 | 134+145 | When the ground for a continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to her own fault or negligence. Villegas, 711 S.W.2d at 626. Because the right to counsel is a valuable right, its unwarranted denial is reversible. Id. "[W]hen a trial court allows an attorney to withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." Id. | Denial of wife's motion for continuance to obtain new counsel, in divorce action, after wife's attorney was permitted to withdraw 40 days before trial over wife's objection was abuse of discretion; attorney sought to withdraw due to nonpayment of fees but amount of fees due was not clearly established, there was no evidence that wife was able to pay attorney fees but refused to do so, attorney could have filed motion for interim fees in order to prevent prejudice to wife but did not do so, and although wife had previously hired and fired five other attorneys, there was no evidence that case was delayed as result. V.T.C.A., Family Code S 6.502(a)(4); Vernon's Ann.Texas Rules Civ.Proc., Rule 10. | "When the ground specified in a motion for a continuance is the withdrawal of counsel, must movants show that the failure to be represented at trial was not due to their own fault or negligence?" | Pretrial Procedure - Memo # 3390 - C - BP.docx | ROSS-003290785-ROSS-003290786 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 18058 | Kimberly D.-D. v. Arizona Dep't of Econ. Sec., 234 Ariz. 207 | 211+2064 | On appeal, Kimberly contends only that the juvenile court erred in denying her motion to dismiss. She first argues the court erred in finding extraordinary circumstances existed. We review the court's decision to grant a continuance for an abuse of discretion, and any related findings of fact for clear error. See In re Yavapai Cnty. Juv. Action No. J"9365, 157 Ariz. 497, 499, 759 P.2d 643, 645 (App.1988) ("Motions to continue are addressed to the sound discretion of the trial court and its decision will not be reversed absent a clear abuse of discretion."); cf. Ariz. Dep't of Econ. Sec. v. Oscar O., 209 Ariz. 332, 4, 100 P.3d 943, 945 (App.2004) (reviewing court does not reweigh evidence but defers to juvenile court's factual findings); Beal v. State Farm Mut. Auto. Ins. Co., 151 Ariz. 514, 519, 729 P.2d 318, 323 (App.1986) (determination of extraordinary circumstances reviewed for abuse of discretion). Kimberly reasons that, if the Attorney General's office was able to find an attorney on short notice in March, it must have been able to find one in February and thus it was unnecessary to delay the hearing date past the deadline. But attorney illness can constitute extraordinary circumstances, even when the delays concern the statute of limitations or a motion to set aside a judgment. See McCloud v. State, 217 Ariz. 82,14"16, 170 P.3d 691, 697 (App.2007); McKernan v. Dupont, 192 Ariz. 550,23, 968 P.2d 623, 629 (App.1998), disapproved on other grounds by Panzino v. City of Phoenix, 196 Ariz. 442, n. 3, 999 P.2d 198, 201 n. 3 (2000). It necessarily follows that attorney illness can justify delays in a dependency adjudication hearing. | Attorney illness can constitute extraordinary circumstances justifying delay of a child dependency adjudication hearing. A.R.S. S 8-842(C). | "Can attorney illness constitute extraordinary circumstances warranting a continuance of trial, even when the delays concern the statute of limitations or a motion to set aside a judgment?" | 029474.docx | LEGALEASE-00136504-LEGALEASE-00136505 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 18059 | Greenway v. Heathcott, 294 P.3d 1056 | 307A+716 | "[A] party who seeks to continue a case for trial must show that he acted with due diligence upon the grounds for which continuance is sought." There is no general right to counsel in civil cases under the United States or Alaska Constitutions, and Greenway had no constitutional right to counsel in this case. A continuance for the purpose of finding and obtaining counsel requires a showing of diligence. When, as here, a party seeks a continuance so a particular lawyer can represent her in the future, the trial court must weigh various, often circumstantial, considerations, including the diligence of the moving party. In arguing that the court erred, Greenway emphasizes the complexity of her claims, her limited ability to represent herself, and the absence of prejudice to Heathcott. | Denial of pro se plaintiff's April motion for continuance "at least until September" so her "chosen attorney" could represent her, was not abuse of discretion, in action against former boyfriend for identity theft, breach of domestic partnership, and breach of fiduciary duties; she filed motion three days before trial, lawsuit was more than three and one-half years old, "chosen" lawyer was judicial law clerk whose clerkship would end in August, law clerk did not confirm his willingness to represent plaintiff, plaintiff did not support her motion with affidavit, her assertion that "previous hopes to obtain an attorney have not panned out" did not demonstrate that she exercised diligence in obtaining representation after prior counsel withdrew two years earlier, there was concern for witness' fading memory and failing health, loss of evidence, and staleness of events that occurred "up to 17 years ago," and if trial court granted continuance, case would be delayed for at least one year in order to allow counsel to re-open discovery. Rules Civ.Proc., Rule 40(e)(2). | Does a continuance for the purpose of finding and obtaining counsel require a showing of diligence? | 029478.docx | LEGALEASE-00136519-LEGALEASE-00136520 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 18060 | Carroll & Downs v. Groover, 27 Ga. App. 747 | 307A+716 | A motion was made to continue this case because of the absence of leading counsel, who was "in attendance upon the United States court for the Southern district of Georgia," and who was "engaged in the trial of cases in the said District Court." In Cotton States Life Ins. Co. v. Edwards, 74 Ga. 221 (1), it was held: "The continuance of cases on account of the absence of counsel is not favored, and such absence is no cause of postponement, unless in cases of necessity or misconception. Absence without leave, to attend trials of cases pending in other courts, is no ground for continuance. | Refusal of a motion to continue a case because of the absence of leading counsel, who was in attendance upon the United States court, held not error. | "Is the continuance of cases on account of the absence of counsel not favored, and such absence is no cause for postponement, unless in cases of necessity or misconception?" | Pretrial Procedure - Memo # 3598 - C - VP.docx | ROSS-003291701-ROSS-003291702 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 18061 | Harrison v. Harrison, 367 S.W.3d 822 | 134+145 | Serial hiring and firing of attorneys for dilatory purposes would be a legitimate concern to be balanced against a requested continuance in appropriate circumstances. However, this record reveals no evidence that the case was delayed because Connie had hired five attorneys before Nass. Nothing in the record establishes that a continuance was granted or requested in connection with the withdrawal of any of her prior attorneys. The record does not reflect that Connie used the withdrawal of her attorneys as a dilatory tactic. The primary source of delay in this case appears to be an attempted reconciliation. Connie's history of prior representation by other attorneys indicates that she could find attorneys to represent her under the circumstances in which they were retained; this history says nothing about her ability to retain a new attorney on the eve of trial after the withdrawal of her attorney based on the asserted nonpayment of fees. | Denial of wife's motion for continuance to obtain new counsel, in divorce action, after wife's attorney was permitted to withdraw 40 days before trial over wife's objection was abuse of discretion; attorney sought to withdraw due to nonpayment of fees but amount of fees due was not clearly established, there was no evidence that wife was able to pay attorney fees but refused to do so, attorney could have filed motion for interim fees in order to prevent prejudice to wife but did not do so, and although wife had previously hired and fired five other attorneys, there was no evidence that case was delayed as result. V.T.C.A., Family Code S 6.502(a)(4); Vernon's Ann.Texas Rules Civ.Proc., Rule 10. | Will the serial hiring and firing of attorneys for dilatory purposes be a legitimate concern to be balanced against a requested continuance in order to obtain new counsel in appropriate circumstances? | 029962.docx | LEGALEASE-00136247-LEGALEASE-00136248 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 18062 | Ponder v. O'Neal Elec. Co., 214 So. 2d 453 | 307A+723.1 | The statute clearly contemplates due diligence in securing the presence of witnesses and this diligence must be recited in the affidavit. The affidavit should cite further that the continuance is not sought for delay only but that justice may be done. Cumbest v. Kaufman, 230 Miss. 713, 93 So.2d 874 (1957). Appellants in their affidavit for continuance did not allege due diligence and that the continuance was not for dilatory purposes. A motion which does not comply with the statute may be properly overruled. Lewis v. State, 56 So.2d 397 (Miss.1952). | A motion for continuance which does not comply with statute may be properly overruled. Code 1942, S 1520. | Could a motion for continuance which does not comply with statute be properly overruled? | 030276.docx | LEGALEASE-00136640-LEGALEASE-00136641 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18063 | Crawford v. Saunders, 29 S.W. 102 | 307A+723.1 | Appellee sued appellant upon two promissory notes, amounting to the aggregate of $515.75. Appellant pleaded general denial as to both notes, and as to one note that it was given with the condition that appellee should give appellant an itemized statement of the account for which the note was given, and when appellant had not verified the statement. As to the second note, it was claimed that it was given to one Quill Johnston, and that appellant had offsets against the note, of which appellee had notice when he bought the note. There was no allegation of fraud or mistake in the account for which the note was given and the evidence showed conclusively that appellant had no legal offsets against it… (text continues) | It is not enough to allege, in an application for continuance for absence of witness, that "diligence" has been used? | 030348.docx | LEGALEASE 0013053-54 / LEGALEASE 0013055 | Condensed, SA | 0.94 | 0 | 1 | | 1 | |
| 18064 | Atkins v. Van Horn, 322 Mo. App. 930 | 307A+720 | Another charge of error is based upon the action of the court in permitting plaintiff to amend his petition and in refusing to grant a continuance, thereby compelling defendant to proceed to trial. The amendment consists of a change in the last clause or prayer of the petition, making it read as follows: "Wherefore plaintiff prays judgment against the defendant for such sum, with interest, from the … day of October, 1915, as may be ascertained to be due…" (text continues) | Amendment of prayer of petition does not entitle defendant to continuance. | 030377.docx | LEGALEASE 0013684 / LEGALEASE 0013685 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | |
| 18065 | Rogers v. Herrick, 37 Misc. 36 page 97 | 307A+51 | This Court is in agreement with the general rule of law as enunciated by the court in the Stier case, but disagrees in the conclusion that examinations before trial are matters of jurisdiction and not practice. In our opinion, matters of examination before trial are matters of practice and not of a jurisdictional nature. | Matters of examination before trial are matters of practice and are not jurisdictional in nature. | 031186.docx | LEGALEASE 0017026 / LEGALEASE 0017027 | Condensed, SA | 0.72 | 0 | 1 | | 1 | |
| 18066 | Aselin Co. Exch. v. Manting Realty, 118 Ohio App. 3d 276 | 307A+725 | [W]e do not believe that it is necessary that a court give reasons for refusing a continuance. It is incumbent, however, upon a trial court in control in docket for the benefit of all parties. So long as discretion is not abused, the court's judgment must be upheld." Seybold Mgt. v. Unigroup, Inc. (Oct. 3, 1978) Wayne App. No. 2712 (unreported). | It is not necessary that trial court give reasons for refusing a continuance? | Pretrial Procedure Memo #4 PSI - C - NK.docx | ROSS 000329781 / ROSS-000307819 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | |
| 18067 | Moore v. Mitchell, 307-2d 171+2001 | 600 | Taxes are imposts, not debts, collected for the support of the government. Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197. The form of procedure to collect them cannot change their character. No contractual or quasi contractual obligation to pay arises out of the assessment. The enforcement of revenue laws rests, not on consent, but on force and authority. State of Colorado v. Harbeck, 232 N.Y. 71, 133 N.E. 357. An action for debt cannot be maintained to collect a tax in the federal courts. City of New York v. McLean, 170 N.Y. 374, 63 N.E. 380; Matter of Mather v. Jackson Mills Co., 223 N.Y. 127, 119 N.E. 389. See, also, City of New York v. McLean, 57 App. Div. 601, 68 N.Y.S. 614. With the appellate and the principal wherein the state, suing in its sovereign capacity, is administered in New York, the effort to collect a tax, for a political subdivision of Indiana, is tantamount to the settled principles of private international law, which preclude one state from enforcing a collection of taxes for another state… (text continues) See Henry Moore v. Mitchell, 281 U.S. 18, 50 S. Ct. 175, 74 L.Ed. 673. The taxing power of a state is, by the Federal Constitution (Amendment 14), limited to persons and property within its jurisdiction. Wisconsin v. Pelican Ins. Co., 127 U.S. 266, 8 S.Ct. 1370, 32 L.Ed. 239. | Can the character of a tax be changed by form of procedure for collection? | 043272.docx | LEGALEASE 0036074 / LEGALEASE 0036075 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | |

3187

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18068 | Al-Qurashi v. Nahla, 728 F. Supp.2d 702 | 24 k13 | First and most important, the petitioners in Bauk had brought additional nonhabeas claims as part of their petition. These claims, though not the Article I or II statute, were dismissed by the lower courts, which read Eisentrager to say aliens in military custody abroad lack the "privilege of litigation" in courts of the United States. Id. at 475, 124 S.Ct. 2686. The Supreme Court flatly rejected this argument and declaring that "nothing in Eisentrager or in any of our other cases categorically excludes aliens detained in military custody outside the United States from the 'privilege of litigation' in U.S. courts." Id. at 484-95, 124 S.Ct. 2686 (quotation marks omitted). The courts of the United States have traditionally been open to nonresident aliens. Id. (citing Disconto-Gesellschaft v. Umbreit, 208 U.S. 570, 578, 28 S.Ct. 337, 52 L.Ed. 625 [1908]). Alien citizens, by the policy and practice of the courts of this country, are ordinarily permitted to resort to the courts for the redress of wrongs and the protection of their rights.'"). "The fact that petitioners in these cases are being held in military custody is immaterial to the question of the District Court's jurisdiction over their non-habeas statutory claims.'" Id. at 484-85, 124 S.Ct. 2686. This unequivocal statement "that aliens detained abroad by the military are not inherently barred from bringing suit in the United States have traditionally been open to nonresident aliens. | Courts of the United States have traditionally been open to nonresident aliens. | Are the courts of the United States open to aliens? | Aliens_Immigration and Citizenship_Memo 11-GP.docx | RG50-00100142+RG50-00100345 · 00100343 | Condensed, SA | 0.95 | 0 | 1 | | 1 | |
| 18069 | Thomas v. First Nat. Bank of Scranton, 376 Pa. Super. 205 | 172k+593 | It is the case in this State that an open deposit created by a customer of a bank is subject to his order as the depositor. A check is no more than an order on the bank to pay a stated amount to a named payee from the drawer's account, and, as such, may be revoked at any time before check is paid or accepted for payments to the bank. The usual method of revocation is by notice to the bank on which the check is drawn to stop payment and such direction, being the last order of the depositor affecting his account, is binding on the bank. In general, if payment of a check is made by the bank on which it is drawn after such notice, the bank does so at its peril. Vesi v. Franklin Trust Co., 84 Pa.Super. 392; Gundaker Nat. Bank v. Farmers' Deposit Nat. Bank, 118 Pa. 294, 12 A. 303. If the plaintiff in this case had directed the bank categorically to stop payment, regardless of time or the other. Thomas v. Republic Nat. Trust Co., 84 Pa. Super. 183, there could be little question as to the bank's obligation to make restitution under its common law liability to the plaintiff. | A check is merely an order of the depositor on bank to pay stated amount to a named payee from the drawer's account, and, as such, may be revoked at any time before the check is paid or accepted for payments to bank, the usual method of revocation being by notice to bank, after such notice, payment is at peril of the bank. | Whether a notice of stop payment order by the drawer is binding on the bank? | 01017.docx | LEExLEExE 00137963 · 00137965 | Condensed, SA, Sub 0.73 | 0.73 | | 1 | | 1 | |
| 18070 | United States v. Kidd, 734 F.2d 409 | 63 k1(2) | Kidd contends that a private, as opposed to an official, is not included within the meaning of a public official for his contention. Section 201(a) defines "public official" to include any government employee. This court has held that a private person employed the air force is a public employee within the meaning of section 201. See Yats v. United States, 241 F.2d 259, 261 (9th Cir.1966), cert. denied, 365 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 649 (1961). | Private in the United States Army was a "public official" for purposes of federal bribery statute, which defines "public official" to include any government employee. 18 U.S.C.A. § 201. | "Does a ""public official"" include any government employee?" | 01011.docx | LEExLEExE 00137715 · LEExLEExE 00137716 | Condensed, SA, Sub 0.6 | 0.6 | | 1 | | 1 | |
| 18071 | United States v. Barash, 365 F. Supp. 126 | 63 k1(2) | On the merits Barash's claim appear to be levied by recent decisions of the Court of Appeals of this Circuit. It is settled that a payer of a bribe can be charged and convicted of aiding and abetting violations of 18 U.S.C. § 201(e)(1) prosecuted for aiding and abetting. See I.2d 766 (2d Cir. 1966); cert. granted, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872 (1967), the Court of Appeals held that under a provision of the payer of a bribe to government employees both for bribery as a principal under 18 U.S.C. § 201 and as an aider and abettor of the employees' violations under 18 U.S.C. § 201. Subsection 201(f) [1] As a result of the indictment, the payment formed the basis for one bribery counts and one aiding and abetting count. The Court of Appeals did not specifically refer to Milarosch's traversed convictions on three other counts charging violations of 18 U.S.C. § 201(f)", making it a crime to pay a public official "for or because of any official act." See court decisions that had also been convicted on these " 201(b) bribery counts for the same criminal acts. | A payer of a bribe can be charged and convicted with aiding and abetting an internal revenue employee in receiving illegal fees for performance of their duties. 18 U.S.C.A. § 201 and (b), 26 U.S.C.A., I.R.C. (954) § 7214(a) (2). | Can the payer of a bribe be charged with aiding and abetting an IRS agent? | 01010.docx | LEExLEExE 00137653 · LEExLEExE 00137653 | Condensed, SA, Sub 0.82 | 0.82 | | 1 | | 1 | |
| 18072 | United States v. Marmolejo, 89 F.3d 1185 | 63 k1(2) | We have previously held that " 666(a)(1)(B) does not require the government to prove that federal funds were directly involved in a bribery transaction, or that the federal monies funded the corrupt activity was related to the bribed action, so long as the entity involved in the bribery transaction received at least the required $10,000 in federal funds. At paras Roberts receives $50,000 in federal funds in this case, and the difficult to relate. | Does Section 666 of free federal statute prohibiting theft or bribery concerning programs receiving federal funds require direct involvement of federal funds in illegally corrupt transaction? | 01888.docx | LEExLEExE 00137615 · LEExLEExE 00137616 | Condensed, SA, Sub 0.17 | 0.17 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,029 |
| 18073 | State v. Brady, 2 Ariz. App. 210 | 67+10 | In other words, the so-called "degree" of the burglary is determined by language that usually states the time "degree" of the offense… | As commonly used, "degree" of an offense usually relates to lesser included offenses, but as used in statute defining burglary, quoted word refers merely to time of commission of offense, whether in the daytime or nighttime. A.R.S. §§ 13-301, 13-302, subsecs. A, B. | Is daytime burglary a lesser included offense to nighttime burglary? | Burglary - Memo 103 ii.docx | ROSS202905054-ROSS202905054 | Condensed, SA, Sub | 0.86 | 0 | | | | 1 |
| 18074 | Cohen v. State, 676 So. 2d 1046 | 67+15 | The state's argument is that the appellant did not have consent to enter the store because the owner consented to enter the store for the purpose of using money from the machines… | Fact that persons with criminal intent have not been given permission to enter has no effect on whether premises are open to the public, and thus within affirmative defense to charge of burglary. West's F.S.A. § 810.02(1). | Is open to the public a defense to burglary? | D2625.docx | LEGALEASE-00137958-LEGALEASE-00137959 | SA, Sub | 0.82 | 0 | | | 1 | |
| 18075 | Magness v. Superior Court, 54 Cal. 4th 259 | 67+8(1) | A person who "enters any house … with intent to commit grand or petit larceny or any felony is guilty of burglary."… | The slightest entry by any part of the body of an intruder is sufficient for burglary, but a part of the body of an instrument must penetrate the outer boundary of the building. West's Ann.Cal.Penal Code § 459. | Is entry of any part of the body of an intruder sufficient for burglary? | 02955.docx | LEGALEASE-00137426-LEGALEASE-00137427 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | |
| 18076 | Webb v. Wakefield Twp., 239 Mich. 521 | 260+121 | Counsel for defendant cite as controlling from Maskrey v. Township of Columbus, 71 Mich. 227, 38 N. W. 889… | Township has power to raise taxes to maintain highways. | Does the township have power to raise taxes to maintain roads and highways? | 03008.docx | LEGALEASE-00137858-LEGALEASE-00137859 | Condensed, Order, SA, Sub | 0.91 | | 1 | | 1 | 1 |

3189

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18077 | Fishman v. Estes, 7th Ind. App. 117 | 484+16(1) | | Neither foot passengers nor automobiles have priority of right of way over other in streets. | Does a foot passenger have priority of right of way over automobiles? | Highways - Memo 79-B.docx | ROSS.00230600/ROSS-00230601 | Condensed, SA, Sub | 0.93 | 0 | 1 | | 1 | 1 |
| 18078 | Bailey v. Iowa Beef Processors, 213 N.W.2d 642 | 302+160 | | Motion to dismiss admits only well pleaded facts, conclusions of law or conclusions of fact are not allowed except where underlying facts are first alleged. 56 I.C.A. Rules of Civil Procedure, rule 131. | Will a motion to dismiss admit only well pleaded facts? | 023850.docx | LEGALEASE-00137782-/LEGALEASE-00137783 | Condensed, SA, Sub | 0.66 | 0 | 1 | | 1 | 1 |
| 18079 | Durston v. Best W. Motel, 695 S.W.2d 795 | 30*+723.1 | | Party moving for continuance was not entitled to it merely because motion was not controverted. | Is a party moving for continuance not entitled to it merely because a motion was not controverted? | 030553.docx | LEGALEASE-00137798-/LEGALEASE-00137799 | Condensed, SA, Sub | 0.63 | 0 | 1 | | 1 | 1 |
| 18080 | Humboldt Livestock Auction v. B & N Cattle Co., 261 Iowa 419 | 30*+725 | | Under provision of Uniform Rule for Dismissal for Want of Prosecution that where appropriate the order of continuance shall be to date or term certain, continuance must be to a certain date if possible. 58 I.C.A. Rules of Civil Procedure, rule 215.1. | "Should continuance be to a certain date, where the order of continuance is to date or term certain"? | Pretrial Procedure - Memo 4721 - C - NE.docx | ROSS-00230769/ROSS-00230770 | Condensed, SA, Sub | 0.63 | 0 | 1 | | 1 | 1 |
| 18081 | Trina. Solar Co. v. JRC-Servs. LLC, 229 F. Supp. 3d 176 | 30k+101(1) | | Under New York law, an agent binds his principal when he enters into a contract within the scope of his authority. | "Can a contract made be an agent, be considered the principal contract"? | 042104.docx | LEGALEASE-00137778-/LEGALEASE-00137779 | Condensed, SA, Sub | 0.84 | 0 | 1 | | 1 | 1 |
| 18082 | Shell Oil Co. v. CO2 Comm., 589 F.3d 1105 | 25+151 | | Binding arbitration section of class settlement did not provide for a prior panel to review, after the fact, a dispute regarding the res judicata effect of its prior order on a class member's new arbitration complaint; rather, the settlement required a new panel, where the arbitration provisions stated that such time a party filed a new arbitration complaint, the parties would select panel members in the manner prescribed by the panel selection provision. | Is the res judicata effect of the original panels order an arbitrable issue? | Alternative Dispute Resolution - Memo 444 - S8.docx | ROSS-00030482-/ROSS-00030483 | Condensed, SA, Sub | 0.56 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 18083 | Fazio v. Cerone, 218 A.D.2d 662 | 228n185.3(16) | The promissory note in question was clearly an instrument for the payment of money only within the meaning of CPLR 3213. The notations on the back of the note did not alter the defendant's unambiguous obligation to pay (see, Gittleson v. Dempster, 148 A.D.2d 578, 579; 339 N.Y.S.2d 46; cf., I'nell'on N. Am. v. Sweeney, 133 A.D.2d 53, 518 N.Y.S.2d 962), and the evidence submitted by the defendant, both in his original opposition to the plaintiff's motion and in support of his motion to renew, was insufficient to raise triable issues of fact regarding his defense of payment and lack of consideration (see, Zuckerman v. City of New York, 49 N.Y.2d 557, 562, 427 N.Y.S.2d 595, 404 N.E.2d 718). Moreover, any claim that the plaintiff's decedent owed money to their son was for compensation from the corporation of which he and the defendant were the sole shareholders may be brought in a derivative action on behalf of the corporation and is not a defense to the personal obligation imposed by the promissory note (see, Business Corporation Law §720; Abrams v. Donati, 66 N.Y.2d 951, 498 N.Y.S.2d 782, 489 N.E.2d 751, Harris v. Miller, 136 A.D.2d 603, 523 N.Y.S.2d 858). The plaintiff was, therefore, entitled to an accelerated judgment pursuant to CPLR 3213. | A promissory note is enforceable as an instrument for payment of money only; notations on back of note did not alter maker's unambiguous obligation to pay, and evidence submitted by maker was insufficient to raise triable issues of fact regarding defenses of payment and lack of consideration. McKinney's CPLR 3213. | Are promissory notes enforceable for payment of money only? | Bills and Notes - Memo 183 - RC.docx | ROSS-020290808-ROSS-020290809 | Condensed, SA | 0.75 | 839 | 0 | | 1 | 1 |
| 18084 | Geary, Am. Sup. Co., 34 N.C. App. 714 | 6.30T>60 | A traveler's check is a negotiable instrument within the purview of Article III of the Uniform Commercial Code. G.S. 25-3-114 explicitly permits an instrument to be undated. Siesta, therefore is not a necessary element, the absence of which makes the instrument incomplete and unenforceable under G.S. 25-3-115 However ,the name of the payee is an essential element. The payee's name is not one of the "[t]erms and omissions not affecting negotiability" under G.S. 25-3-112. G.S. 25-3-104 demands," [s]tyle to be negotiable instrument within this article must ... be payable to order or to bearer." (Emphasis added.) G.S. 25-3-104(1)(d)). Under old law of commercial paper and now incorporated into the Uniform Commercial Code, a note payable neither to order nor to bearer is not negotiable. Newland v. Moore, 173 N.C. 728, 92 S.E. 367 (1917). Specificity on the face of the instrument is required..whether payment be to order or to bearer. Johnson v. Lassiter, 155 N.C. 47, 71 S.E. 21 (1911). G.S. 25-3-110(1) Therefore, it is clear that the checks were legally incomplete because they lacked the name of the payee. | Under the Uniform Commercial Code, a negotiable instrument is not incomplete and unenforceable because it is not dated. G.S. 1 25-3-115. | Is an undated note or negotiable instrument valid under law? | 02026.docx | LEGALEASE-00188954-LEGALEASE-00188955 | Condensed, SA, Sub | 0.88 | | 0 | 1 | 1 | 1 |
| 18085 | Maryland Cas. Co. v. Dobbs, 131 Mo. App. 557 | 6.30T>76 | It argues that the defendant himself, after being advised he that it did not have the money, could have withdrawn the money from the bank and saved himself from any loss thereof. The defendant could not in good faith, however, have done so; he was under duty to leave the money for the payment of the check; when found on the payment of adjudicate when sued in place thereof. The next stopping payment of the original check did not absolve him from his obligation thereon. The money was left in the bank for that purpose, either with or without a duplicate check being issued. It results held, where the circumstances in this case exhibit that the plaintiff's failure to present the check before the failure of the bank till having the sum senior to its possession, for more than a reasonable time within which to have made such payment, it was the proximate cause of the defendant's loss and not the mere failure of the bank. | Merely stopping payment on check did not absolve drawer of check from his obligation thereon. | Does a drawer be liable for an obligation on stopping payments on a check? | 02037.docx | LEGALEASE-00188806-LEGALEASE-00188807 | Condensed, SA, Sub | 0.9 | | 0 | | 1 | 1 |
| 18086 | Miller v. Medford Nat. Bank, 131  Or. 366 | 172H>593 | Where a check operates as an assignment, the death of the drawer will not revoke it, but in order to have such assignment operate, the authority to pay the check is revoked upon the death of the drawer. The general rule is that an equal drawn by an account is held by the bank is not in its principal takes effect as to the agent only from the time the agent has notice of it. Murray v. Dwight, 161 N.Y. 301, 55 N.E. 901. By inserting into the check the directions to pay the same after the death of the maker thereof, which precluded the bank from paying it before her death, the assured the event and precluded paying a check at all, but the matter as stated by Mr. Morse in the section referred to. That, if the bank knows of the death of the drawer, its right to pay its check has vanished, so lay the authority to pay the check ends upon his death. | Where check does not operate as an assignment, death of drawer operate as a revocation of a revoked on death of drawer. | Does the death of the drawer operate as a revocation of a check? | 03163.docx | LEGALEASE-00188227-LEGALEASE-00188228 | Condensed, SA, Sub | 0.89 | | 0 | | 1 | 1 |
| 18087 | Thompson v. Bank of Am., N.A., 773 F.3d 741 | 83D>481 | First, under Tennessee law, a promissory note is a negotiable instrument, unless it contains a conspicuous statement that it is not negotiable. Tenn.Code Ann. 47T>201, 201-202. An assignment of an interest by a third party who then receives the right to enforce the instrument. -" 47T>200, 201, 301. An assignment of a note is enforceable regardless of whether it is recorded. W.C. Early Co. v. Williams, 135 Tenn. 249, 186 S.W. 102, 103 (1916). An instrument may be enforced by, among others, the "holder" of the instrument." Tenn.Code Ann. 47T>301. When an instrument carries a blank endorsement, it becomes payable to the "bearer," meaning whoever possesses the note. Tenn.Code Ann. 47T>100. | Under Tennessee law, assignment of a note is enforceable regardless of whether it is recorded. | Is assignment of note enforceable regardless of whether is recorded? | Bills and Notes - Memo 384 -VP.docx | ROSS-020290843-ROSS-020290846 | SA, Sub | 0.87 | | 0 | | 1 | 1 |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 18688 | Nook v Von Bergheimy, 866 S.W.2d 765 | 307A+733.1 | The only proof presented by appellant is his verified motion for continuance, which states that he did not receive the notice until September 9. Appellee filed no response to the motion for continuance. Where a motion for continuance is in substantial compliance with the rule and is not controverted, this Court must accept the statements in the motion as true. Verdin v Southwestern Bell Tel. Co., 784 S.W.2d 92, 94 (Tex. App.-Houston [1st Dist.] 1989, writ denied). The trial court has no discretion to reject uncontroverted facts set out by a party in a sworn motion for continuance, as if we accept as true appellant's statement that he received neither a copy of the motion for summary judgment nor notice of the summary judgment hearing on September 9, then he received only 14 days notice of the hearing. The rule requires 21 days notice. Crown, 835 S.W.2d at 208, Tex.R.Civ.P. 166a(c). | Trial court has no discretion to reject uncontroverted facts set out by party in a sworn motion for continuance. | Does a trial court lack the discretion to reject the uncontroverted facts established in a party's first motion for continuance? | 020601.docx | LEGALEASE 0018262-LEGALEASE 0018263 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |
| 18689 | Capalunco v. United Wire & Supply Corp., 83 R.I. 405 | 307A+725 | On a motion for a continuance the burden of proof is on the moving party; it is well settled that ordinarily the granting or denial of such a motion is within the discretion of the trial justice and that his action in the matter will not be reversed by this court unless there is a clear abuse of discretion. Williams v. Altruda, 74 R.I. 47, 58 A.2d 562, and cases cited. See also 66 A.L.R. 1204. Note, 70 A.L.R. 1207; A.20 316, and Tiffany v. Harvey, 59 R.I. 260, 195 A. 220, upon which petitioners rely, are clearly distinguishable and different from situations. | On motion for continuance, burden of proof is on moving party. | Is the burden of proof on the moving party on motion for continuance? | 020828.docx | LEGALEASE 0018561-LEGALEASE 0018562 | Condensed, SA | 0.9 | 0 | 0 | | 1 | |
| 18690 | Scott v. Missouri Pac. R. Co., 333 Mo. 374 | 307A+74 | Plaintiff was not, as defendant contends, attempting to contradict his own witness, but, on the contrary, was endeavoring to make the deposition speak exactly what the witness said. The deposition itself tends to show the mistake; it is, I think, quite probable that the witness would say in one breath that the man who adjusted the crossing was usually on the ground, and in the next breath say that he did not remember any time or instance when the man was not on the job. We think plaintiff had a right to correct the deposition from the notes of the stenographer, but we do not approve of the manner in which he attempted it, nor, however, in view of all the circumstances did the deposition, and in view of the entire record in the case, do we disregard the matter of sufficient moment to work a reversal of the case. | Plaintiff introducing deposition in evidence had right to correct deposition from notes of stenographer. | Does a plaintiff have a right to correct the deposition from the notes of the stenographer? | 031655.docx | LEGALEASE 0018713-LEGALEASE 0018713 | Condensed, SA, Sub | 0.87 | 0 | 1 | | 1 | 1 |
| 18691 | Corn Exch. Bank v. Tri State Livestock Auction Co., 368 N.W.2d 596 | 307A+56.1 | In view of what we have stated here, we hold that the agreement, if any, between the bank and court was, it appears, should have been disclosed to opposing counsel and the court. Accordingly, this case is remanded to the trial court to determine, first, if there was in fact an agreement between the aforementioned parties, and if so, whether such agreement should have been disclosed to the jury in accordance with the criteria outlined above. If there was, then the trial court must determine if the failure of the bank to disclose the alleged agreement was prejudicial to Tri-State. If it was prejudicial then a new trial shall be granted. However, the issue is affirmed if the alleged agreement was not required to be shown to the jury or if the failure to disclose it to the jury was not prejudicial. | Settlement agreement, if any, between bank and owner of corporate payee, should have been disclosed to opposing counsel and court in action to recover amount on three checks drawn on account of payor. | Should a settlement agreement be disclosed to opposing counsel and a court? | 031986.docx | LEGALEASE 0018137-LEGALEASE 0018138 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | 1 |
| 18692 | City of Miami v. Clark Cash Jewelry & Pawn, 811 So. 2d 756 | 371+2095 | The trial court declared the City's pawnshop fees unconstitutional, finding them to be a tax, and, not, as maintained by the City, user fees. If fees are a tax, the trial court's declaration of unconstitutionality is correct as only the Florida Legislature has the power to authorize the levy of a tax (which it has not done here). Art. VII, "1(a), Florida Constitution; Collier County v. State, 733 So.2d 1012 (Fla.1999); Gulf Property of Saranac Amusement, Inc., 725 So.2d 482 (Fla.App. 4th Dist.), review denied, 740 So.2d 528 (Fla.1999). User fees, on the other hand, can validly be imposed by a city or county. Collier County v. State. | While only the state legislature has power to authorize the levy of a tax, user fees can validly be imposed by a city or county. | Can user fees be validly imposed by a city or county? | 031332.docx | LEGALEASE 0018877-LEGALEASE 0018877 | Condensed, SA, Sub | 0.72 | 0 | 1 | | 1 | 1 |
| 18693 | Caro v. City of New York, 31 Misc. 2d 834 | 268+1008 | The defendant New York City Housing Authority moves for summary judgment dismissing the complaint. The motion is grounded on two separate defenses, which is based on section 50'f of the General Municipal Law. Notice of claim was served and received. While the statute requires a notice, personally, or by "registered" mail, service on its face instance was made by "certified" mail. In Teresta v. City of New York, 304 N.Y. 440, pp. 447-443, 108 N.E.2d 397, p. 400, the Court of Appeals held that "since the city neither returned the notice, nor at any time objected to the omissions in their service, nor disclaimed personal service or notification by registered mail must be deemed to have been fully and effectively waived by the city." After pointing out that the prime, if not the sole, objective of the notice requirement was to assure the city an adequate opportunity to investigate the claim where the information is readily available, the court said (p. 443, 108 N.E.2d p. 398) "that end is certainly not frustrated by permitting the city to accept timely notification by ordinary mail in lieu of other forms specifically prescribed by it." The language of the court in the following paragraph of the opinion relative to the method of service is also pertinent to this case: "'service' as of the city's holding an examination of the claimant. The court said (p. 444, 108 N.E.2d, p. 398): 'Thus, present here, in addition to an 'adequate waiver, an elements of estoppel as well' (italics supplied). | City waived requirement of statute that mailed notice of claim be transmitted by registered mail and failed to object to method of mailing until after time for service personally or by registered mail had expired, General Municipal Law, § 50. | "Although the statute directs that depositions shall be transmitted by registered mail and failed to object to method of mailing until after time for service personally or by registered mail had expired, General Municipal Law, § 50, officer personally delivered it to the clerk?" | Pretrial Procedure - Memo #3372 - C | ROSS-000327764-ROSS-000382767 | Condensed, Order, SA, Sub | 0.82 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 18094 | Alva, Sweek & Koula v. 3V/CORSTA, A, 284 F. Supp. 2d 1367 | 30B+15(1) | Under the federal common law of agency, one event that conveys notice of termination of apparent authority to a third party is the termination notice of the agent's employment. | Apparent authority terminates when a third party has notice of its termination. Id. at 125. Notice is acquired when the third party has reason to know, should know, or has been given a notification of the occurrence of an event from which, if reasonable, he would draw the inference that the principal does not consent to have the agent so act for him (s) that the principal does not consent so to act for the principal. Id. at 135. One event that conveys notice of the termination of apparent authority to a third party is the termination of the agent's employment. O & G Indus., v. First Nat. Bank of Greenfield, 913 F.2d 850, 854 (7th Cir.1990). Bernstein v. Centaur Ins. Co., 644 F.Supp. 1361, 1369 (S.D.N.Y.1986). Therefore, under the general rules of agency law, Corsta can be bound only by statements that were made by former captains Prost and Lambert before Plaintiff had notice of the termination of their employment. Accordingly, the Court will consider only those statements made before Plaintiff had notice that Mr. Prost and Mr. Lambert were no longer employed as captains of the vessel. | Does apparent authority terminate when a third party has notice of termination? | Principal and Agent - Memo 121 - pf.docx | LEGALEASE 00035776; LEGALEASE 00035777 | SA, Sub | 0.85 | 0 | | 1 | 1 | |
| 18095 | United States v. White, 663 F.3d 1207 | 63+11 | The extent to which the parties conceal their bribery is powerful evidence of their corrupt intent, which is required for a conviction for federal-funds bribery. 18 U.S.C.A. § 666(a)(1)(B). | There is also the undisputed fact that White kept Segh's cash payments secret. During White's term as president of the commission, he had signed forms asking about any conflicts of interest or outside compensation. Additionally, those forms contain a certification that the information provided is truthful and White did not list any compensation or benefit received. ... any form of employment or other relationship which results in any form of compensation or benefit." White did not report Segh's cash payments. And White did not mention to anyone during environmental services committee meetings that he was receiving cash from Segh. The corrupt quality of a payment "can be inferred from concealment"; "The extent to which the parties ... conceal their bribes is powerful evidence of their corrupt intent." Gee, 432 F.3d at 713 (7th Cir. 2005) ("For everyone who does not lives the light, and does not come to the light, lest his deeds should be exposed."). There was enough evidence to convict White of the federal-funds bribery charges. | Does the extent to which the defendants conceal their bribe imply anything to a bribery prosecution? | Bribery - Memo #377 - C. - LB.docx | ROSS-000133911-ROSS-000133912 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | |
| 18096 | United States v. Leyva, 282 F.3d 623 | 63+1(1) | Use of an official position was not an element of bribery offense; plain language of statute required only that the public official accept a thing of value in exchange for perpetrating a fraud, and absence of any official act requirement was particularly pointed in light of explicit "official act" or "official activity" language in other subsections of statute. 18 U.S.C.A. § 201(b)(2)(B). | Although the plain meaning of "201(b)(2)(B) may not square with Leyva's personal understanding of bribery, application of the subsection as it stands does not reach an unreasonable or improbable result. We therefore hold that the use of an official position is not an element of the offense under "201(b)(2)(B). | Is the use of an official position an element of the offense under 201(b)(2)(B)? | 01968.docx | LEGALEASE 00139185-LEGALEASE 00139186 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | |
| 18097 | People v. Henderson, 138 Cal. App. 2d 505 | 67+29 | Burglarious intent may be inferred from the forcible and unlawful entry alone. West's Ann.Pen.Code, § 459. | Appellant also contends that the testimony indicates that there is more than a reasonable doubt that there was no intent to steal in committing the alleged burglary. The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. People v. Daugherty, 40 Cal.2d 876, 885, 256 P.2d 911. Appellant himself admitted, in substance, that he broke the window of the house and that he entered through the hole made by the breaking; that such breaking and entering was during the night time. He contends, however, that he had no intent to commit a larceny, or any felony, and therefore was not guilty of the alleged burglary. That the intent with which an entry is made at the time the entry was made, was necessary in order to sustain the conviction of burglary. However, this element is rarely susceptible of direct proof and must usually be inferred from all the facts and circumstances disclosed by the evidence. When the evidence is sufficient to justify a reasonable inference that such intent existed, the finding of the trier of fact will not be disturbed on appeal. People v. Smith, 84 Cal.App.2d 509, 512, 190 P.2d 941. There is ample evidence, here what has already been related, to warrant the belief and conclusion that the defendant entered the house with the intent to commit larceny. People v. Kittrelle, 102 Cal.App.2d 149, 156, 227 P.2d 38; People v. Stanton, 93 Cal.2d 286, 289, 266 P.2d 248; People v. Henderson, 138 Cal.App.2d 505, ... Indeed, burglarious intent could be inferred from the forcible and unlawful entry alone. People v. Fitch, 73 Cal.App.2d 825, 827, 167 P.2d 211; People v. Martone, 38 Cal.App.2d 392, 101 P.2d 537; People v. Winters, 93 Cal. 277, 289 - 946. | Can intent to commit burglary be inferred from forcible entry? | Burglary - Memo 355 - KNM.docx | ROSS-003314269-ROSS-003314271 | SA, Sub | 0.94 | | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18098 | Messmer v. State Farm Cty. Mut. Ins. Co. of Texas, 972 S.W.2d 774 | 307A+501 | An order for separate trials leaves the lawsuit with all its issues intact even though they will be resolved at different times. Hall, 450 S.W.2d at 838. The effect of a non-suit is dismissal of the entire suit. Alvarado v. Hyundai Motor Co., 885 S.W.2d 167, 174 (Tex.App."San Antonio 1994), reversed on other grounds, 892 S.W.2d 853 (Tex.1995); Merrill Lynch Relocation Management, Inc. v. Powell, 824 S.W.2d 804, 806 (Tex.App."Houston [14th Dist.] 1992, orig. proceeding); see Tex.R. Civ. P. 162; 5 McDonald Texas Civil Practice " 27:37 (1992). It is not an appropriate means of discontinuing proceedings only on certain issues. See 5 McDonald Texas Civil Practice " 27:37. A party wishing to exclude certain issues in his suit from trial without terminating the entire suit should abandon those claims. See id. " 27.38 (emphasis added); see also Tex.R. Civ. P. 165; Matter of R.G., Jr., 865 S.W.2d 504, 508 (Tex.App."Corpus Christi 1993, no writ) (Rule 162 permits dismissal of entire suit but particular claims may be abandoned before trial of cause in accordance with Rule 165). The plaintiff's right to a non-suit is absolute and the trial judge has no discretion to refuse to grant a dismissal. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982); Zimmerman v. Ottis, 941 S.W.2d 259, 261 (Tex.App."Corpus Christi 1996, no writ); but see Hartnett v. Adams & Holmes Mort. Co., Inc., 539 S.W.2d 181, 184 (Tex.Civ.App."Texarkana 1976, no writ) (affirming judge's refusal to grant partial non-suit as pleadings showed only single cause of action which cannot be split and tried piecemeal). | Plaintiff's right to nonsuit is absolute and trial judge has no discretion to refuse to grant dismissal. | Is the right to nonsuit absolute? | Pretrial Procedure - Memo # 5500 - C - NC.docx | ROSS-003288851-ROSS-003288852 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 18099 | Lexington Ins. Co. v. Entrex Commc'n Servs., 275 Neb. 702 | 366+35 | We, like other jurisdictions, recognize the important policy goal that waivers of subrogation serve in avoiding disruption of construction projects and reducing litigation among parties to complicated construction contracts. Concluding that waivers of subrogation cannot be enforced against gross negligence claims would undermine this underlying policy by encouraging costly litigation to contest whether a party's conduct was grossly negligent. Therefore, we conclude that "public policy favors enforcement of waivers of subrogation even in the face of claims of gross negligence. Because the waiver of subrogation clause in subparagraph 11.4.7 is effective to bar Lexington's gross negligence claims, we next determine the scope of the waiver. | A contractual waiver of subrogation is enforceable against gross negligence claims. | Do public policy favor enforcement of waivers of subrogation even in the face of claims of gross negligence? | 043210.docx | LEGALEASE-00139344-LEGALEASE-00139345 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 18100 | United States v. Harder, 168 F. Supp. 3d 732 | 110+29(5.5) | These allegations certainly make out that Defendant acted knowingly with respect to both Official and his Sister. See, e.g., SEC v. Straub, 921 F.Supp.2d 244, 265 (S.D.N.Y.2013) (FCPA violation is complete even when payor does not know the ultimate recipient's identity); SEC v. Jackson, 908 F.Supp.2d 834, 850 (S.D.Tex.2012) ("The Court seriously doubts that Congress intended to hold an individual liable under 15 U.S.C. " 78dd"1(a)(3)(A) only if he took great care to know exactly whom his agent would be bribing and what precise steps that official would be taking."). The FCPA Counts thus sufficiently "apprise[ ] the defendant of what he must be prepared to meet." United States v. John"Baptiste, 747 F.3d 186, 195 (3d Cir.2014); Vitillo, 490 F.3d at 321. | Government was required to prove different facts to support charges against defendant for violation of Foreign Corrupt Practices Act (FCPA) and for charge of international money laundering, and charges were thus distinct and did not require merger, even though charges were based on same payments defendant allegedly made to bank official's sister, knowing that those bribes would be given, directly or eventually, to the employee, to induce him to violate the law; government was required to prove that defendant offered or paid anything of value to a foreign official for corrupt purposes to support FCPA charge, and was required to prove that defendant transferred funds abroad from the United States with intent to promote unlawful activity, i.e., intent to promote an FCPA violation, to support money laundering charge, and the government was thus required to prove different facts to make out the violations charged. 15 U.S.C.A. S 78dd-2(a)(1), (3); 18 U.S.C.A. S 1956(a)(2)(A). | Do courts doubt on the Congresss intention to hold an individual liable under 15 U.S.C. 78dd1(a)(3)(A) if he took great care to know exactly whom his agent would be bribing and what precise steps that official would be taking? | 011121.docx | LEGALEASE-00139606-LEGALEASE-00139607 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 18101 | Phillips v. Nash, 47 Ga. 218 | 289+474 | The liability of a dormant partner, to all who deal with a firm during his connection with it, is well settled. He is liable just as though he were an ostensible partner, even though the person dealing with the firm does not know of his connection at the time of the dealing. And this grows out of the fact that he gets the benefit of the dealing, whatever it may be: Winship vs. Bank of the United States, 5 Peter's Reports, 529; Etheridge vs. Binney, 9 Peck, 272; 1 Douglass, 371; Coop vs. Eyn, 1; H. Black 37. And this is so, even if there be a private agreement between the partners to the contrary: Gow on Partnership, 12, 18; Collyer on Partnership, book 1, chapters 1, 11, 27; 4 East, 144 | But a dormant partner is not liable to those dealing with the firm after his withdrawal, even though he give no notice of his withdrawal, except to those who know of his connection with the firm. To such as had such knowledge he is liable, even for contracts made after his withdrawal, unless they have notice of his withdrawal. | Does a dormant or a silent partner have liabilities to everyone dealing with the partnership? | 022321.docx | LEGALEASE-00139581-LEGALEASE-00139582 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 18102 | Deford v. Reynolds, 36 Pa. 325 | 289+474 | In Mitchell v. Dale, 2 Harr. & Gill 172, it was said by MARTIN, J., that every partner is dormant, unless his name appear in the firm, "or is embraced under general terms, as the name of one of the firm and company." Without assenting to this as universally true, it may be said, that its obvious implication is, that if one is embraced in the general description, the name of one partner and company, his is not a case of dormant or secret partnership. Collyer, in his treatise, sect. 4, defines a dormant partner to be one "whose name and transactions as a partner are professedly concealed from the world." The only object which such an one can have in remaining dormant or secret, is, that credit may be given to the ostensible partners alone, and not to him. With such a purpose or object, doing business under the name of one partner and company, is inconsistent. It can be nothing less than an invitation to the public to give credit to more than the single partner named. Entertaining such views, we are of opinion that there was no error in the answer of the court below to the defendant's first point. Whether he was a dormant partner or not, was a question for the jury, and, trading as he did under the firm name of R. McCulloh & Co., the solitary fact that he was not known by the plaintiffs to be the company, was not sufficient to enable the court to say that his liability ceased at the dissolution of the firm, without notice to those who had dealt with it. If he was an open partner, and the credit was given to the company, he was still bound. | It seems that every partner is considered as dormant unless his name is mentioned in the title of the firm or included in some general term, e.g., "& Co.," "Sons," etc. | Will a partner be a dormant one if his name does not appear in the firm? | 022323.docx | LEGALEASE-00139587-LEGALEASE-00139588 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18103 | Babcock v. Stewart, 58 Pa. 179 | 289+828 | Nothing is better settled than that an incoming partner is not liable on the contracts and engagements of the firm entered into before he became a member of it: Collyer on Partnership, " 520. The plaintiff in error was therefore entitled to have his second point affirmed. The court below did affirm it, but accompanied the affirmance with an explanation, which entirely destroyed its effect. They said: "Babcock could not bind one who was not a joint owner when the plaintiff began work or afterwards, but he could bind those who came in while the work was being performed, or who had only parted with a portion of his interest before it began or during its progress." From what follows we may conclude that the court considered that owing to the manner in which oil interests were sold, divided and subdivided, while work was going on, a different rule was applicable to partnerships in that region. In this there was error. As was said by Lord Kenyon in Shirreff v. Wilks, 1 East 48, "It is hard enough for one partner in any case to be able to bind another without his knowledge or consent; but it would be carrying the liability of partners, for each other's acts, to a most unjust extent, if we suffered a new partner to be bound in this manner for an old debt incurred by other persons." When a man purchases an interest in a firm, he can inform himself as to what are its assets and the then condition of its works. He is not bound to inquire whether all its property in possession has been paid for. Those who have sold or delivered goods, or done work on the credit of the original partners, having by law no lien, have parted with all their interest in the effects, and can look only personally to those with whom they have contracted. The credit of the new member of the firm did not enter into their consideration in making the contract, and it would be manifestly unjust to hold him liable to them. The ground of liability of one partner for the acts of the others, is that of an implied general agency within the | An incoming partner is not liable for the prior contracts of the firm, not entered into on his credit. | Is an incoming partner liable on the contracts entered into by the firm before he became a member? | Partnership - Memo 376 - SB.docx | ROSS-003301945-ROSS-003301946 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 18104 | In re Monetary Group, 2 F.3d 1098 | 289+560 | Generally, a party injured by a breach of an obligation imposed by law or agreement is entitled to compensatory relief. But where a party misappropriates the property of another, to whom that party owes a fiduciary duty, then the malefactor is liable for both the misappropriated property as well as the profits realized therefrom. Hasday, 115 N.Y.S.2d at 213. This principle extends to the case where the wrongdoer has an interest in the misappropriated property. Id. Thus, partners are liable to each other for the fruits of misappropriated partnership property. Id. Where a partner is found liable for the misuse of partnership assets, "[a] constructive trust is, then, the remedial device through which preference of self is made subordinate to loyalty to others." Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 547 (1928). | Partners are liable to each other for fruits of misappropriated partnership property. | Are partners liable to each other for the fruits of misappropriated partnership property? | 022348.docx | LEGALEASE-00139410-LEGALEASE-00139411 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18105 | Guthrie v. Buckeye Cannel Coal Co., 66 Ind. 543 | 307A+74 | SEC. 256. The deposition shall be written down by the officer, or by the deponent, or by some disinterested person, in the presence, and under the direction of the officer, and after the same has been carefully read to or by the deponent, it shall be subscribed by him. | Though 2 Rev.St.1876, p. 141, S 256, provides that the deposition shall be subscribed by the deponent after being carefully read to or by him, it is not necessary that the certificate show that such section was complied with. | Shall the deposition be subscribed by the deponent after being carefully read to or by him? | Pretrial Procedure - Memo # 5272 - C - SK.docx | ROSS-003291298-ROSS-003291299 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 18106 | Petrick v. United States, 12 Cl. Ct. 700 | 34+9 | If plaintiff's separation was voluntary, then this court lacks jurisdiction to hear his claim. Sammt v. United States, 780 F.2d 31 (Fed.Cir.1985). See generally, United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), citing United States v. Wickersham, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906). Generally, resignations are presumed to be voluntary. Christie v. United States, 207 Ct.Cl. 333, 518 F.2d 584 (1975). See also Covington v. Department of Health and Human Services, 750 F.2d 937 (Fed.Cir.1984) (retirement is presumed to be voluntary). A resignation is involuntary only when brought about by government action. Subjective feelings of duress on the part of the plaintiff absent government action, are not relevant to a determination of voluntariness. Christie supra. See also Perlman v. United States, 203 Ct.Cl. 397, 490 F.2d 928 (1974) (retirement held involuntary as a result of government action); McGucken v. United States, 187 Ct.Cl. 284, 407 F.2d 1349 (1969), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969) (external coercion and duress make a resignation involuntary and not internal misconceptions). The fact that an individual is faced with inherently unpleasant alternatives does not make his or her choice involuntary. Christie and Covington supra. But a resignation is involuntary if brought on by agency misrepresentation that an employee or soldier relies upon. Christie supra. See also Covington supra (retirement *703 based on agency misrepresentation or deception is involuntary); Scharf v. Department of the Air Force, 710 F.2d 1572 (Fed.Cir.1983) (retirement involuntary if plaintiff shows a reasonable person would have been misled by agency statements). | Resignation of military officer is involuntary only when brought about by government action, and subjective feelings of duress on the part of officer, absent government action, or fact that officer is faced with inherently unpleasant alternatives do not make his or her choice involuntary. | Is a resignation by a military officer involuntary when brought about by government action? | 008556.docx | LEGALEASE-00140032-LEGALEASE-00140033 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 18107 | Leahy v. McManus, 237 Md. 450 | 83E+423 | The appellant's principal contention is that the lower court erred in finding that McMauns signed the note only in a representative capacity. It is clear, as the appellant contends, that an endorsement can be written anywhere on the instrument; that a person may endorse a negotiable instrument in a representative capacity in such terms as to negative personal liability; and that, in the absence of such express negation, the endorser is liable to a holder for value. Code (1957) Art. 13, Sections 52, 65, 87. It has been held that ordinarily a corporation may validly sign an instrument by stamp. Farmington State Bank v. Delaney, 167 Minn. 394, 209 N.W. 311, 46 A.L.R. 1495 (1926); Metropolitan Discount Co. v. Davis, 69 Okl. 111, 170 P. 707, 7 A.L.R. 670 (1918). Annot. 46 A.L.R. 1498 (1927). Even though no holder for value is here involved, absent permissible evidence that McManus signed only in a representative capacity, he would be liable as a maker or an endorser. | In absence of express negation of personal liability, endorser is liable to holder for value. Code 1957, art. 13, SS 52, 65, 87; art. 95B, SS 3-402, 3-403. | Can an indorsement be written anywhere on the instrument? | Bills and Notes - Memo 136 - IS.docx | ROSS-003301511-ROSS-003301512 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 23,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18108 | Farmers' Sav. Bank v. Neel, 193 Iowa 685 | 8.30T+04 | Revenue stamps are not part of the contract. Ehret v. Gille, supra. Samonine in Holliday supra... No one will question the right or power of the state legislature to declare and prescribe what are acceptable and legal instruments shall not. The Legislature of this state, by the enactment of the Uniform Negotiable Instrument Law, has... defining and specifying the essentials of negotiability. The act of Congress of October 22, 1914, revise the signing, issuing or accepting of any instrument or document required to be stamped without such stamps affixed thereto a misdemeanor punishable upon conviction, with a fine of not more than $5,000 for each offense. This is the only penalty provided by the act. The purpose of the enactment of laws requiring stamps to be placed upon notes and other instruments by Congress is, of course, to provide a method of raising revenue. The penalty prescribed is the means provided for enforcing observance of the law. | The state legislature has power to declare what instruments shall be negotiable and what shall not, and has done so by the enactment of the Negotiable Instruments Act (Code Supp. 1913, §§ 3060a1, 3060a55, and 3060a56). | Does the State have power to determine what instruments are negotiable? | Bills and Notes - Memo 567-96.docx | ROSS-003301531-ROSS-003301532 | Condensed, SA, Sub D.79 | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 18109 | Russell v. Bink, 53 Mich. 161 | 8.31+423 | Where interest is allowed on sums... by a note secured by mortgage... of consideration, and indorsed on the note, is not to be taken as a part payment entitled to the allowance as interest, but merely as so much stricken from the face of the note. Where the maker of a note pays it by a written indorsement the collection of the note to third parties, such endorsement is sufficient to pass title of the note to such third party. | The payee of a note, by indorsing thereon a guaranty of collection to a third person, transfers the title. | Whether a guaranty of collection indorsed by the payee passes title? | Bills and Notes - Memo 35-16.docx | ROSS-003300622-ROSS-003300623 | Condensed, SA, Sub D.79 | 0.79 | 0 | 1 | 1 | 1 | |
| 18110 | FF Mktg. Co. v. Long Lane Master Tr. IV, 169 S.W.3d 402 | 8.31+402 | While negotiation or assignment can change ownership of a promissory note, the endorsement of a non-negotiable promissory note does not create a presumption of ownership in the transferee. Thus, to recover on a non-negotiable note, the holder must establish its status as the instrument's legal owner. This same proof is required to establish LLMT and MTGLQ's right to recover on the promissory notes through the guarantee. A general denial is sufficient to close the issue of illegal ownership and places the burden on the plaintiff to prove its status. | Negotiation or assignment can change ownership of a promissory note. | Can negotiation or assignment change ownership of a promissory note? | Bills and Notes - Memo 361-6.docx | ROSS-003301553-ROSS-003301554 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 18111 | Phoenix Assur. Co. v. Davis, 126 N.J. Super. 279 | 8.31+481 | The first and second of these are disposed of with National without the exception. Any negotiable instrument made payable to payees jointly and not in the alternative may be assigned, but not negotiated, without the endorsement of all payees. N.J.S.A. 12A:3-116(d). Cf. First National Bank of Bloomingdale v. North Trust Co. of Ridgewood, 18 N.J. Misc. 449, 14 A.2d 765 (Sup.Ct.1940)... thus obtaining payment from plaintiff for the check, Fidelity become liable to plaintiff... Similarly, the depositor became liable to National when he received payment from National. Thus, the court holds that plaintiff has a claim against National... | Any negotiable instrument payable to payees jointly and not in the alternative may be signed by one without the endorsement of all payees. | Is endorsement of all payees necessary? | Bills and Notes - Memo 420-08.docx | ROSS-003300634-ROSS-003300635 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 18112 | Joint Highway Dist. No. 13 v. Hinman, 220 Cal. 578 | 200+131 | We are of the view that the Joint Highway District Act does not violate the due process provision of the Federal Constitution (Const. U. S. Amend. 14) in providing for the organization of the district and the method of levying and collecting the tax. The Legislature had full power over the subject-matter of the formation of the district. It delegated this power to the boards of supervisors of the respective counties comprising the district... Where the difference between the different portions of territory is plain and palpable, the right of the Legislature to recognize that difference would generally be for the Legislature to determine, although it cannot be said that the courts would not, in a proper case, review that determination. Foster v. Pryor, supra, at page 334 of 189 U. S., 23 S. Ct. 549. | Highway construction is "public purpose" for which property may be used by state. | Is highway construction a public purpose? | 019002.docx | LEGALEASE-00140333-LEGALEASE-00140335 | Condensed, Order, SA | 0.95 | 0 | 1 | 0 | 1 | 1 |

Appendix D

3196

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,873) | Selection & Arrangement (23,876) | Multiple Differences (9,029) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18113 | Goodwin v. McMillan, 258 Ala. 125 | 134+1355 | The divorce between the parties severed the marriage relation and therefore Rose McMillan was no longer the wife of Dr. McMillan. In contemplation of law each was then a single person and she could never thereafter have been a judgment creditor or heir at law... | A "widow" is a wife who outlives her husband, and not a wife who has been divorced from husband before his death. | Is the divorced wife of a confederate soldier entitled to pension as a husband's widow after his death? | Pension - Memo 37 - 58.docx | LEGALEASE 00209010 LEGALEASE 00209011 | SA, Sub | 0.86 | 0 | 1 | | 1 | |
| 18114 | Bunders v. Holly Oaks Foundation Ass'n., 147 S.W.3d 421 | 302+16 | We each turn to appellants' substantive argument that the trial court erred by entering judgment for appellees based on either the undisputed facts or... | Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. | Does the fair notice pleading standard serve to give the opposing party information to prepare a defense? | 02434.docx | LEGALEASE 00140340 LEGALEASE 00140341 | SA, Sub | 0.83 | 0 | | 1 | | |
| 18115 | Lexington Ins. Co. v. Entrex Commc'n Servs., 275 Neb. 702 | 366+55 | We, like other jurisdictions, recognize the important policy goal that waivers of subrogation serve in avoiding disruption of construction projects and reducing litigation among parties to complicated... | A contractual waiver of subrogation is enforceable against a gross negligence claim. | Can a waiver of subrogation be enforced against a gross negligence claim? | Subrogation - Memo # 1286 - C - SJ.docx | ROSS 003238753-ROSS 003238754 | Condensed, SA | 0.86 | 0 | 1 | | | |
| 18116 | United States v. Jennings, 160 F.3d 1006 | 63+1(1) | Whether an entrustment is bona or an illegal act truly under "205 depends on the intent of the payor. A bribe requires that the payment be made or promised "corruptly." That is, the "corrupt intent" ... | "Corrupt intent," with which payment must be made in order for payment to be a bribe for purposes of statute prohibiting bribery of public officials and witnesses, is the intent to receive a specific benefit in return for the payment. 18 U.S.C.A. S 201(b)(1)(A). | How is "Corrupt Intent" defined for the purposes of a bribery conviction'? | 012127.docx | ROSS 00142017-ROSS 00142018 | Condensed, SA, Sub | 0.41 | 0 | | 1 | | 1 |
| 18117 | Sattazahn v. United States, 537 U.S. 52 | 63+1(1) | Section 666(a)(1)(B) does not require the Government to prove this bribe in question had a demonstrated effect upon federal funds... | Bribe need not affect "federal funds before bribe violates federal bribery statute. 18 U.S.C.A. § 666(a)(1)(B). | Does a bribe need to affect 'federal funds before it can be considered a violation of the federal bribery statute? | 01458.docx | ROSS 00141750-ROSS 00141751 | Condensed, SA | 0.16 | 0 | 1 | | | 1 |
| 18118 | Luitwieler v. Luitwieler, 113+3 | Section 690(a) ( B) does not require the Government to prove any... | An expert should be better to custom or usage sentence in a particular trade or business. Not code, testimony does not have to offer the opinion of the witness as an expert; instead, the record must establish the custom as a matter of fact, not as a matter of opinion. | What are the requirements of a valid custom? | 04558.docx | | | SA, Sub | 0.84 | 0 | | 1 | | |
| 18119 | Luitwieler v. Davenport Assumption High Sch. 846 N.W.2d 902 | 157+516 | A witness who is qualified by knowledge and experience can testify to a custom or usage if sentence in a particular trade or business. Not code, testimony does not have to offer the opinion of the witness as an expert... | A witness who is qualified by knowledge and experience can testify to a custom or usage if sentence in a particular trade or business. Not code, testimony does not have to offer the opinion of the witness as an expert; instead, the record must establish the custom as a matter of fact, not as a matter of opinion. | Do customs exist only as a matter of fact? | 04584.docx | LEGALEASE 00141856 LEGALEASE 00141857 | Condensed, SA, Sub | 0.67 | 0 | | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 18120 | Pruneda v. Delta Transp. Co., 94 Mich. 247 | 113v3 | The mere fact that defendant's agent resided in that vicinity would not be sufficient to bring him to the knowledge of this custom, or warrant the jury in finding that the defendant had knowledge of it. In cases where evidence of usage is admissible at all, it is only on the ground that the parties who made the contract are both cognizant of the usage, and must be presumed to have made their engagements in reference to it. 9 Am. Hoxsen v. Cameron, 54 Mich. 614, 20 N. W. Rep. 609. The decisions in this state are uniform that custom cannot change a definite contract, and that no custom is binding which is not certain, uniform, and notorious. Lamb v. Henderson, 63 Mich. 305, 29, N. W. Rep. 732; and the cases there cited. In the above case it was said by Mr. Justice CAMPBELL: "No attempt was made to bring notice of this usage to the knowledge of the plaintiff." The defendant in that case sought to set up a custom to defeat the payment of certain traveling expenses of one of his salesmen during the time he spent at the home office. The court in the trial of the present case should have only been allowed the defendant to answer the question, and given the request to charge asked, had should answer the question. These things, as stated, should consider the testimony of defendant's agent, and should have construed the contract as to what they found that the parties contracted in reference to the custom; and in determining that question they should consider the testimony of defendant's agent, who has the custom. Higgins v. Moore, 34 N. Y. 423. Judgment must be reversed, with costs, and new trial ordered. The other justices concurred. | Custom cannot change a definite contract, and custom is binding which is not certain, definite, uniform, and notorious. | Can custom change a definite contract? | Customs & Usage - Memo 101 - FA.docx | R055/00188304-R055-00188305 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | 1 |
| 18121 | Bush v. Lopez, 858 F.3d 55 | 135v2 | General jurisdiction over an individual comports with due process in the forum where he is "at home," meaning the place of "domicile." Sonera Holding N.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014) (per curiam). Owning property in a forum does not alone establish domicile. "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile. Texas v. Florida, 306 U.S. 398, 427, 59 S.Ct. 563, 83 L.Ed. 817, 1139 A.L.R. 1250 (1939)." *** L.S. *** 134 S. Ct. at 746, 761 n.19, 187 L.Ed.2d 624 (2014); See Foster v. Carson, 347 F.3d | Owning property in forum does not alone establish domicile; one may have more than one residence in different parts of country or world, but person may have only one domicile. | Can a person have only one domicile? | 135v2.docx | LEG4EASE-00141085-LEG4EASE-00141086 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | 1 |
| 18122 | Gauthier v. Benson, 667 So.2d 1181 | 135v2 | "Residence" is not a specific legal term, it is nebulous and has no precise meaning. One may have a residence in a home, institution, store, city, parish, state, country, continent, etc. The term is nebulous and has several meanings. Dufrene v. Dufrene, 430 So.2d 890 (La.App. 3rd Cir. 1978). A person's residence is his dwelling place, however, temporary, while "domicile" is where a person intends to establish his permanent home; refers a Jefferson Insurance Company, 188 So.2d 873, 877 (La.App. 3rd Cir. 1966), writ den. 247 La. 256, 170 So.2d 511 (1966). In contrast, a domicile is where a person maintains his habitual residence. La.C.C. art 38. Domicile should not be confused with residence. Residence and domicile are not synonymous, and a person can have several residences but only one domicile. Autin v. Terrebonne, 612 So.2d 107, 108 (La.App. 1st Cir. 1992), writ den. 604 So.2d 956 (La 1992). | "Residence" is not a specific legal term, is nebulous and has no precise meaning; person's "residence" is his dwelling place, however, temporary, and regardless of whether he intends it to be his permanent home. | What is a residence? | 135v2B.docx | LEG4EASE-00141819-LEG4EASE-00141820 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | 1 |
| 18123 | San Diego Gas v. California Water & Tel. Co., 30 Cal. 2d 817 | 200v77(1) | The cases are apparently uniform to the effect that, if the Legislature has provided a method to exclude as People v. County of Marin, 103 Cal. 223, 226, 37 P. 203, 261; 4 A.L.R. 925; Moroney v. Lewis, 278 P. 510, 328 S.W.2d 870; 30 Cal.2d 817, 123 A.L.R. 637; Ninde v. Foster, 346 So.2d 90; 60 N.L.2d 783; 554 A.L.R. 537, 538(a) Dow, 30 Cal. 2d 817, 183 P.2d 435, 639; An analogous line of decisions holds that a municipality must follow the statutory procedure prescribed for the sale of public property, and an attempt to dispose of the property by contract that cannot be enforced. Crerpher v. City of Oakland, 162 Cal. 87, 121 P. 374; Hughes v. City of Pomona, 188 P. 1195; 49 Cal. 2d 235; 398 P. 14; San Francisco & O. R.R. Co. v. Oakland, 43 Cal. 502; Cregos v. San Francisco, 18 Cal. 590; Employ Mgmt. Municipal Corps., § 1345; et seq. 1345, 1345(a), 1389; As stated in the Hughes case, "the very fact that the legislature provided a method whereby a city might dispose of its utilities, contains a positive inhibition against such alienation except by a faithful compliance by the city with the method prescribed..." Specifically, following the city must be exercised by local officials to bind a county, validity of which stated in State v. 60 Calif. 84 Wn. 655; Prescott County v. Beeves & K. W. R. Co., 30 Cal., 156 P.2d 172, controverted denial 325 U.S. 764, 65 S. Ct. 1164; Industrial City. v. Terrebone, Tex Cv App. 275 W.2d 843, Frank W. Coy Real Estate Co. v. Pendleton, 45 U.S. 477, 23 S. Ct. 151; 47 L.Ed. 527; Brown v. Highlands, 1955 S.W.; American Medicinal Spirits Co. v. Mayer and City Council, 165 Md. 128, 166 A. 407. | A method provided by legislature for abandonment or vacation of highway by county or city is exclusive; Streets and Highways Code, §§ 954-960.4. | Is the method to abandon or vacate roads exclusive? | Highway-Memo 165-ANH.docx | R055/00188829-R055-00188831 | Condensed, Order, SA, Sub | 0.92 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18124 | Mississippi State Highway Comm'n v. McClure, 536 So. 2d 895 | 200×40 | | State Highway Commission could not convey fee simple title to portion of road easement which was no longer needed, but could only abandon it. | Do statutes authorize the commission to acquire fee simple title to lands? | 019035.docx | LEGALEASE-00181000 LEGALEASE-00181001 | Condensed_SA, Sub 0.9 | 0 | 0 | 1 | 1 | | 1 |
| 18125 | Bob Marshall All. v. Hodel, 852 F.2d 1223 | 260×5 (13) | | Decision by federal agencies not to issue oil and gas leases in designated wilderness areas would not be equivalent to informal "withdrawal" of wilderness from mineral leasing under Federal Land Policy and Management Act, but would constitute legitimate exercise of discretion granted to Interior Secretary under Mineral Leasing Act. Federal Land Policy and Management Act of 1976, § 204, 43 U.S.C.A. § 1714; Mineral Lands Leasing Act, §§ 1 et seq., 17(a), 30 U.S.C.A. §§ 181 et seq., 226(a). | Does the Mineral Leasing Act allow the Secretary to lease such lands but does not require him to do so? | Mines and Minerals - Memo # 9.5 - C - ER.docx | ROSS-003288881-ROSS-003288882 | Condensed_SA, Sub 0.81 | | 0 | 1 | | | |
| 18126 | Biggs v. Browler, 79 S.W.2d 642 | 289×15 | | Right of application of partnership assets to partnership debts is right which partners themselves have. | Do the partners have the right of application of partnership assets to partnership debts? | 023621.docx | LEGALEASE-00141918 LEGALEASE-00141919 | Condensed_SA, 0.45 | | 0 | | 1 | | |
| 18127 | Farrell v. Theriault, 464 A.2d 188 | 307A×723.1 | | Motion for continuance should be filed promptly after the need for a continuance arises. See Maine Rules of Civil Procedure, Rule 40(b). | Should a motion for continuance be filed promptly after the need for continuance arises? | 010737.docx | LEGALEASE-00141918 LEGALEASE-00141508 | Condensed_SA, Sub 0.8 | | 0 | 1 | | | |
| 18128 | Carlyle v. Plumer, 11 Wis. 96 | 307A×74 | | Where a deposition is taken under a commission, as well as when taken under the statute, a witness may write in his answers himself? | Where a deposition is taken under a commission, as well as when taken under the statute, a witness may write in his answers himself? | 013554.docx | LEGALEASE-00141710 LEGALEASE-00141711 | Condensed_SA, Sub 0.83 | | 0 | | 1 | | |
| 18129 | Hammond v. Freeman, 9 Ark. 62 | 307A×74 | | The certificate of an officer before whom a deposition is taken, must show that it was reduced to writing in his presence, otherwise it cannot be read. | Will it be defective if there is no showing that the examination of the witness was reduced to writing in the presence of the justice? | Pretrial Procedure - Memo # 1726 - C - DHA.docx | ROSS-003303122-ROSS-003303123 | Condensed_SA, Sub 0.71 | | 0 | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18130 | J.H. Rottman Distilling Co. v. Van Frank, 88 Mo. App. 50 | 307A+715 | The appellate court will reverse a case where the trial court has exercised unsound judicial discretion in overruling an application for continuance. Barnum v. Adams, 31 Mo. 532; McLane v. Harris, 1 Mo. 700; Tunstall v. Hamilton, 8 Mo. 501. In an application for a continuance, if the affidavit shows materiality of the evidence on the trial of the cause and proper diligence has been used, then to refuse a continuance would be an exercise of unsound discretion. The Supreme Court has said, "If there were any circumstances that induced the court to refuse a continuance, they were perhaps to be found in the fact, that two continuances had been previously made in the same case, and one of them at the instance of the same party. But I can not think that even this indulgence deprive a party of his legal rights, when his affidavit shows the materiality of the evidence, and degree of diligence that could be expected. The court should have given the party an opportunity of getting his testimony," and for overruling the application the case was reversed. Moore et al. v. McCullough, 6 Mo. 444. | An application by plaintiff showed that he was at the time of the trial away on a visit to one of his children, but that he intended to be present and make a defense, and that when notified by his attorney, pursuant to agreement with him, of the day for which the cause was set down for trial, he was ill, threatened with pneumonia, and that, being an aged man, past 70 it would have been extremely dangerous for him to undertake the trip. Besides this, it appeared that his testimony was important, and the refusal of the continuance practically prevented him from making any defense. Held, that it was reversible error to overrule the application under the circumstances. | Can an application for continuance be refused when materiality of the evidence on the trial of the cause and proper diligence is shown? | Pretrial Procedure - Memo # 6097 - C - DHA.docx | ROSS-003304839-ROSS-003304840 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 18131 | Moore v. Mitchell, 30 F.2d 600 | 371+2001 | Taxes are imposts, not debts, collected for the support of the government. Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197. The form of procedure to collect them cannot change their character. No contractual or quasi contractual obligation to pay arises out of the assessment. The enforcement of revenue laws rests, not on consent, but on force and authority. State of Colorado v. Harbeck, 232 N.Y. 71, 133 N.E. 357. An action for debt cannot be maintained to collect a tax in the New York state courts. City of New York v. McLean, 170 N.Y. 374, 63 N.E. 380; Matter of Maltbie v. Lobsitz Mills Co., 223 N.Y. 227, 119 N.E. 389. See, also, City of Boston v. Turner, 201 Mass. 190, 87 N.E. 634. | Enforcement of revenue laws rests on force and authority, not on consent. | Do enforcement of revenue laws rest on consent? | 045155.docx | LEGALEASE-00140901-LEGALEASE-00140902 | Order, SA | 0.89 | 1 | 0 | 0 | 1 | |
| 18132 | Radiofone v. City of New Orleans, 630 So. 2d 694 | 371+2005 | The power of the state to tax is unlimited except as restricted by constitutional provisions. On the contrary, local governmental subdivisions possess with respect to taxation only such power as has been granted to them by the state constitution or the statutes. Article VI, " 28 of the 1974 Louisiana Constitution grants a local governmental subdivision the authority to impose an occupational license tax not greater than that imposed by the state. Additionally, Article VI, " 28 authorizes a local government to impose an occupational license tax greater than that imposed by the state when approved by law enacted by two-thirds of the elected members of each house of the legislature. Article VI, " 4 retains the home rule powers of preexisting home rule charter governments except as inconsistent with the constitution. | Power of state to tax is unlimited except as restricted by constitutional provisions. | Is the power of state to tax unlimited? | Taxation - Memo # 531 - C - DHA.docx | ROSS-003290187-ROSS-003290188 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18133 | W.S. Butterfield Theatres v. Dep't of Revenue, 353 Mich. 345 | 371+2005 | "The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. Bell's Gap R. Co. v. Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892; Southwestern Oil Co. v. Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688; Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American Sugar Rfg. Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102, or if any state of facts reasonably can be conceived to sustain it. Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679; Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350. | Power of taxation is fundamental to very existence of government of the state. | Is the power of taxation fundamental to the existence of government of the state? | Taxation - Memo # 596 - C - NS.docx | ROSS-003329329-ROSS-003329330 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 18134 | Propark Am. New York v. City of Hoboken, 27 N.J. Tax 565 | 268+956(1) | Municipalities have no power except that delegated to them by the Legislature. Salomon v. City of Jersey City, 12 N.J. 379, 97 A.2d 405 (1953). The power to tax reposes in the State; municipalities have no inherent power to tax and can do so only pursuant to a delegation of the State's power. Robinson v. Cahill, 62 N.J. 473, 303 A.2d 273 (1973), cert. denied, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973). | The power to tax reposes in the State; municipalities have no inherent power to tax and can do so only pursuant to a delegation of the State's power. | Do municipalities have inherent power to tax? | Taxation - Memo # 607 - C - SHS.docx | ROSS-003290216-ROSS-003290217 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 18135 | Wheeling Steel Corp. v. Glander, 337 U.S. 562 | 371+2182 | Under long settled principles of our Federation, Ohio was not required to admit these foreign corporations to carry on intrastate business within its borders. The State may arbitrarily exclude them or may license them upon any terms it sees fit, apart from exacting surrender of rights derived from the Constitution of the United States. Hanover Insurance Co. v. Harding, 272 U.S. 494, 507, 47 S.Ct. 179, 182, 71 L.Ed. 372, 49 A.L.R. 713; Connecticut General Co. v. Johnson, 303 U.S. 77, 79"80, 58 S.Ct. 436, 82 L.Ed. 673. Ohio elected, however, to admit these corporations to transact businesses and operate manufacturing plants in the State. For that privilege they have paid all that the State required by way of franchise or privilege tax, which includes in its measure the value of all property owned and business done in Ohio. ss 5495, 5497, 5498 and 5499 of the Ohio General Code. See International Harvester Co. v. Evatt, 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390. After a state has chosen to domesticate foreign corporations, the adopted corporations are entitled to equal protection with the state's own corporate progeny, at least to the extent that their property is entitled to an equally favorable ad valorem tax basis. Hanover Insurance Co. v. Harding, 272 U.S. 494, 510"511, 47 S.Ct. 179, 183, 71 L.Ed. 372, 49 A.L.R. 713; Power Co. v. Saunders, 274 U.S. 490, 493, 497, 47 S.Ct. 678, 679, 680, 71 L.Ed. 1165. Ohio holds this tax on intangibles to be an ad valorem property tax, Bennett v. Evatt, 145 Ohio St. 587, 62 N.E.2d 345, and in no sense a franchise, privilege, occupation or income tax. | Under Ohio law, tax on intangibles such as notes and accounts receivable is not a franchise, privilege, occupation, or income tax, but is an ad valorem property tax. Gen.Code Ohio, SS 5325-1, 5327, 5328-1, 5328-2, 5638. | "Is a tax on intangibles an ""ad valorem tax""?" | Taxation - Memo # 681 - C - SS.docx | ROSS-003290090-ROSS-003290092 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 27,876 | 9,079 |
| 18136 | Gustafson v. Rajt, 10 Ariz. App. 24 | 371v2901 | On many occasions, the legislative intent is reasonably clear of this reading, and we believe this to be the case here. Taxes fall naturally into three classifications: (1) capitation or poll taxes, (2) taxes on property and (3) excises. 51 Am Jur Taxation, s 28. We believe the legislature had something more in mind by the use of the controlling verbiage "'on a plant and equipment' or on other real or personal property in the state equivalent in value to such plant'" than merely eliminating head taxes. | Taxes fall naturally into three classifications: (1) capitation or poll taxes, (2) taxes on property, (3) excises. | What are three classifications of taxes? | Taxation - Memo # 699 - C - C.docx | ROSS-000292531 8-ROSS-000292519 | Condensed, SA | 0.77 | 0 | 1 | | 1 | |
| 18137 | United States v. Medina, 6127-2-611446 | 63v1(2) | A VA fee appraiser falls within both the plain language, and the Supreme Court's interpretation, of the bribery statute. | Veterans Administration fee appraisers are "public officials" under bribery statute, fee appraisers have official federal employment duties and incorporation of public trust. 18 U.S.C.A. s 201(a)(1). | Can a Veterans Administration fee appraiser be considered public officials under bribery statute? | 01318.5.docx | LEGALEASE-00142439-LEGALEASE-00142440 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | |
| 18138 | Murray v. Albert Lea Concrete Co., 202 Minn. 62 | 113v7 | The evidence tended to show that this custom was observed at every floor. We are not restricted to the first floor. I had been restricted to the first floor, the custom might be of some persuasive force. But in view of its prevalent use on all floors, it should have been an additional warning to plaintiff that the elevator was in use or that there was an additional danger. But to be all-persuasive a custom, to be ingrained as a custom, however well established, will not be recognized if it is contrary to common sense. Minneapolis S. & D. Co. v. Metropolitan Bank, 76 Minn. 136, 78 N.W. 980, 44 L.R.A. 504, 77 Am.St.Rep. 609. When a person enters an environment known to be dangerous, he is not privileged to rely upon any custom which is generally observed, but which if not observed will result in his injury. He is bound to be cautious proportionately to the danger. The custom is in danger to others to save him from harm. The fact that the door was partly open and the further fact that it was dangerous danger signal for plaintiff to exercise due care prompted him to proceed with caution, and that he should have been warned from its being in use custom instead of upon knowledge. Rice v. Goodspeed H. Co., 254 Mich. 49, 235 N.W. 814; Flaherty v. Metal & Co., 263 Mich. 527, 248 N.W. 889; Brenner v. Plein, 131 Wis. 63, 38 N.W. 943; Central Pub. House v. Tuxc, 25 Ohio App. 214, 157 N.E. 794. | A custom, no matter how well established, will not be recognized if it is contrary to common sense. | Will a custom be recognized if it is contrary to common sense? | 014241.docx | LEGALEASE-00141051-LEGALEASE-00141052 | SA, Sub | 0.93 | | | | 1 | |
| 18139 | Walker v. United States, 142 N.M. 45 | 113v8 | In addition to the fact that custom does not support the Walkers' claim, we recently held that customary practice is irrelevant when inconsistent with New Mexico law. See State ex rel. Martinez v. City of Las Vegas, 2004 NMSC 009, ¶ 32, 135 N.M. 375, 89 P.3d 47 ("Regardless of whether the parade rules contain the standard by which the standard by which the standard was met ... preclude its recognition."); having already held that the Walkers' claim is not recognized, we need not address that issue. Under New Mexico law, a custom based on custom purportedly derived from "antecedent sovereigns." See id. | Customary practice is irrelevant when inconsistent with law. | Is a customary practice relevant when inconsistent with law? | 014248.docx | LEGALEASE-00142935-LEGALEASE-00142936 | Condensed, SA | 0.89 | 0 | 1 | | 1 | |
| 18140 | PJAI e. Consol. Rail Corp., 4067-Supp. 594 | 113v8 | Accepting the trade custom interpretation does not end the matter. However, Delaware under Westermier Hospital Ass'n, a state law claim may sufficiently implicate federal law to create federal question jurisdiction. Whether the trade custom claim would require construction of federal law is not free from doubt. Under Pennsylvania law a custom that conflicts with a statute or rule of law is void. The need of the jury to "void" suggests that such interpretation is void rule or a dispute under that is, in intro, to the cases do not clearly make proof of the nonexistence of contract law nor element of a trade custom claim. It is also clear that a trade custom claim is clear that the interpretation proposed of a statute or rule of law. Under these circumstances it is appropriate to follow the usual presumption against proper when removal jurisdiction is uncertain. Judge Vanderraddent's conclusion in Douglas v. Park City Associates, 181 F.Supp. 823, 827 (E.D.Pa.1971) is apposite. | "If a custom conflicts with a statute or rule of law, then is it void?" | Customs & Usage - Memo 280 - TB.docx | ROSS-000389020-ROSS-000389021 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | |
| 18141 | Devon Energy Corp. v. Kempthorne, 551 F.3d 1030 | 260v5.1(8) | The 2988 regulations establish the framework for calculating the royalty value in a marketable condition on gas plants accruing from a regulatory framework, royalties are calculated on the basis of the total value a lease receives for its production. The regulations specify that the "value of production" should be no less "than the gross proceeds accruing to the lessor for lease production," minus certain allowable deductions. 30 C.F.R. 206.152(h); see also Amoco Prod. Co. v. Watson, 410 F.3d 722, 725 (D.C. Cir. 2005), aff'd sub nom. BP Am. Prod. Co. v. Burton, 549 U.S. 84, 127 S.Ct. 638, 166 L.Ed.2d 494 (2006). | Department of Interior's (DOI) interpretation of its marketable condition rule to include in gross proceeds, for royalty purposes, costs of compression and dehydration incurred after coalbed methane gas from federal oil and gas mineral leases left central delivery points (CDPs) to allow it to move through pipelines that served market in which gas was typically sold was reasonable interpretation of federal Leasing Act (MLAA) provision requiring royalties be based on value of production "at the lease." Mineral Leasing Act, S 17(b)(1)(A), 30 U.S.C.A. S 226(b)(1)(A). | Do royalty regulations specify the value of production based on transportation from lease to the point of production? | Mines and Minerals - Memo #345 - C - EB.docx | ROSS-000288405-ROSS-000288406 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | |
| 18142 | Frew Woods Country Life Estates v. Shell Oil Co., 216 F.2d 225 | 260v79.3 | We agree with Shell that the specification in the leases that royalty is computed "at the well" controls, in that if all this opinion, we discussed the purposes of distinction between "amount realized" and "market value at the well," and plan to hold that the place of sale but also to the condition of the gas when sold. "At the well" means market value before processing and transportation. In this meaning in conjunction with "value" or "amount realized" at each "sold". The leases under these leases provide that royalty payments shall be based on the "value of production" unimpaired, untransported gas. Frederick v. Sun Oil Co., 5 Cir. 1960, 277 F.2d 141 (23). On royalty "at the well" the lessee may be charged with processing costs, by which we mean all expenses, subsequent to production, relating to the processing, transportation, and marketing of gas and sulfur. | Purpose of distinction, in royalty clauses, between gas sold at well and gas sold off the lease is to distinguish between gas sold in form in which it emerges from the well, and gas to which value is added by transportation away from the well or by processing after the gas is produced, and that "at the well" describes not only location but quality as well, and market value at well means market value before processing and transportation, and gas is sold at the well if price paid is consideration for gas as produced at the well without processing and transportation. Natural Gas Act, S 5.1 607, as amended, 15 U.S.C.A. SS 717(b), Energy Policy and Conservation Act, S 529, 42 U.S.C.A. S 6008 | Does "at the well" mean that the gas has or has not been increased in value by the processing or transportation? | 02310.docx | LEGALEASE-00142654-LEGALEASE-00142655 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | |

Appendix D

3201

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18143 | Alford v. Chevron U.S.A. Inc., 13 F. Supp. 3d 581 | 260+73.1(6) | The qualifier "except for normal wear and tear" is important, because "[t]he lessor may be considered to have given his assent to the "wear and tear" normally involved in exercising the rights granted." Terrebonne Parish Sch. Bd. v. Castex Energy, Inc., 893 So.2d 789, 800 (La.2005). Thus, for example, a lessor who leases his land to a lessee for purposes of drilling for oil may not recover "for damages which are inflicted without negligence upon the lessor's property in the course of necessary drilling operations."Id. at 799 (quoting Rohner v. Austrl. Oil Co., 104 So.2d 253, 255 (La.Ct.App.1958)). Absent an express provision in the mineral lease requiring the lessee to restore the property to its original condition, the lessee need restore the surface to its original condition only if "there is evidence of unreasonable or excessive use." Id. at 792. | Under Louisiana law, owners and users of real property failed to allege that successor in interest to operators of oil and gas facilities negligently performed its contractual obligations as lessee to the property, as required to state negligence claim against operator based upon its alleged failure to restore leased property to its original condition; complaint alleged that successor in interest failed to perform its obligation to restore the property under civil and mineral codes, not that it actually operated on the property or otherwise performed any obligations at all. LSA-C.C. art. 2315. | Is the lessee responsible for damages which are inflicted without negligence upon the lessor's property in the course of necessary drilling operations? | Mines and Minerals - Memo #170 - C - CSS.docx | LEGALEASE-00032242-LEGALEASE-00032243 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 18144 | Kaiser-Francis Oil Co. v. Producer's Gas Co., 870 F.2d 563 | 260+83 | Finally, PGC challenges the district court's decision that take-or-pay payments are not for gas already taken, and therefore that such payments do not result in prices for natural gas which exceed NGPA ceilings. See 15 U.S.C. " 3314(b)(1). The Federal Energy Regulatory Commission (FERC) recently rejected the same position advanced by PGC and stated: In the context of the gas purchase contract and industry practice, the take-or-pay payment is not intended to be a payment for gas and is not a part of the price of gas until it is applied at the time of sale. The value to the producer of take-or-pay payments forfeited by the purchaser is therefore not treated as part of the price of gas purchased currently. ANR Pipeline Co. v. Wagner & Brown, 44 FERC " 61,057 at 61,158 (1988). See also Diamond Shamrock Explor. Co. v. Hodel, 853 F.2d 1159, 1167"68 (5th Cir.1988) (take-or-pay payments are not payments for the sale of gas). The district court correctly decided this issue. | Under Oklahoma law, purchaser of natural gas could not avoid its obligations under take-or-pay contract with seller by purchasing gas at lower than contract price from co-owners of seller's well thereby forcing seller to rely on traditional gas balancing remedies between co-owners of jointly owned wells for payment; given contracts, which entitled seller to payment from buyer within specific time, seller was not required to resort to balancing which would have altered price paid, time payment was made, and likelihood that payment would ever be made. | "In the context of industry practice, is the take-or-pay payment intended to be a payment for gas or is it part of the price of gas until it is applied at the time of the sale?" | 021396.docx | LEGALEASE-00143462-LEGALEASE-00143463 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 18145 | Claybrooke v. Barnes, 180 Ark. 678 | 260+49 | Where there has been a severance of the legal interest in the minerals from the ownership of the land, it has been held as to solid minerals and the same rule has been applied to oil and gas, that adverse possession of the land is not adverse possession of the mineral estate, and does not defeat the separate interest in it. Summers on Oil and Gas, pp. 139 and 140; and Mills and Willingham on the Law of Oil and Gas, " 18. In Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369, the court said that since there was a severance of the mineral estate from the surface estate, the owner of the minerals did not lose his right or his possession by any length of nonuser, nor did the owner of the surface acquire title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface merely. | Evidence that owner of surface estate had worked surface mines held insufficient to show title by adverse possession to severed mineral estate. | "Where there has been a severance of the legal interest in the minerals from the ownership of the land, is adverse possession of the surface also adverse possession of the mineral estate?" | 021405.docx | LEGALEASE-00143516-LEGALEASE-00143517 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 18146 | Waller Bros. v. Exxon Corp., 836 F. Supp. 363 | 219+31 | If the Court were to decide whether Miss.Code Ann. " 53"3"7(2) is constitutional or unconstitutional, there is a general presumption that all statutes are constitutional. See Vance v. Lincoln County DPW, 582 So.2d 414, 419 (Miss.1991). In addressing the issue of whether states can pass laws regulating the oil and gas industry, the United States Supreme Court has held that "a state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment." Hunter Co. v. McHugh, 320 U.S. 222, 227, 64 S.Ct. 19, 21, 88 L.Ed. 5 (1943). Although the Fifth Circuit and the Mississippi Supreme Court have not addressed whether the penalty part of the Mississippi "forced integration" statute is constitutional, the Mississippi Supreme Court has upheld the constitutionality of the forced integration features of the Conservation Law against challenges under the due process and impairment of contract clauses of the Constitutions of Mississippi and the United States. See Superior Oil Co. v. Foote, 214 Miss. 857, 59 So.2d 85, 92 (1952). | Under general equitable considerations, 6% interest rate would be paid to nonconsenting owner of leasehold interest in gas unit subject to forced integration by oil company on sum represented by check mailed by owner to oil company and held by oil company for 90 days, after court determined that acceptance of check by oil company did not constitute "accord and satisfaction" whereby oil company waived right to charge and collect alternate charges from owner, considering federal interest rate, state interest rate, and interest rate on passbooks and checking accounts as well as treasury bills. | Does the state have the constitutional power to regulate production of oil and gas so as to prevent waste? | 021631.docx | LEGALEASE-00142124-LEGALEASE-00142125 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 18147 | Flournoy v. First Nat. Bank, 78 Ga. 222 | 307A+74 | It is requisite that the plea of execution appear; and so we think it does in this instance. Immediately under the words, "State of Indiana, Clark County," the commissioners declare that the interrogatories and cross-interrogatories were answered, subscribed, and sworn to before them. The proper construction is that all this occurred in Clark county, Indiana. Rogers v. Truett, 73 Ga. 386. The heading of "Georgia, Muscogee county," is coupled with a statement of the case, and means simply to give the state and county in which the action was pending. When the whole document is construed together, there is not a trace of ambiguity. | Though the place of execution must appear, it is sufficient to give the county and state; and, if these can be ascertained from the return with due certainty by reasonable construction, it will suffice. | "Though the place of execution of interrogatories must appear, is it sufficient to give the county and state?" | Pretrial Procedure - Memo # 5418 - C - SK.docx | ROSS-003328404-ROSS-003328405 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 18148 | McCleary v. Sankey, 1842 WL 4793 | 307A+74 | A deposition taken in pursuance of a rule of court, cannot be read in evidence unless it appear by the certificate of the justice that it was taken at the time and place mentioned in the notice. | The certificate of a justice taking a deposition must show that it was taken at the time and place mentioned in the notice, or the deposition is not evidence. | Should the deposition taken in pursuance of a rule of court be read in evidence? | 033086.docx | LEGALEASE-00142553-LEGALEASE-00142554 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 18149 | Dev. Corp. of Palm Beach v. WBC Const., 925 So. 2d 1156 | 307A+554 | In Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), the court explained the procedure to determine whether personal jurisdiction exists. Initially, the plaintiff must allege facts in its complaint showing the basis of the court's jurisdiction. When a defendant challenges jurisdiction, the defendant files a motion to dismiss. If the motion alone is filed, then the defendant merely raises the legal sufficiency of the pleadings. When, however, the defendant files affidavits contesting the factual assertions of jurisdiction or the existence of minimum contacts, the burden then shifts to the plaintiff to file counter-affidavits supporting its position. If those affidavits conflict, then it is incumbent on the trial court to hold a hearing to resolve the conflicts in the evidence and determine the jurisdictional issue. Id. Thus, an evidentiary hearing under Venetian Salami resolves the factual disputes necessary to determine jurisdiction pursuant to section 48.193 as well as whether minimum contacts exist to satisfy due process concerns | When a defendant challenges jurisdiction, the defendant files a motion to dismiss. | "When a defendant challenges jurisdiction, does the defendant file a motion to dismiss?" | 033429.docx | LEGALEASE-00142782-LEGALEASE-00142783 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18150 | Semrau v. Kroo, 2005 MT 366, ¶ 27, 330 Mont. 123, 135 | 31+9(2) | Special appearances are not required to contest personal jurisdiction; party may challenge a court's personal jurisdiction simply by raising the issue in its initial response to a claim. Rules Civ.Proc., Rule 12. | We now turn to Semrau's argument that the initial response filed by Stockman did not function as an answer of the District Court. Semrau seems to suggest that Stockman's should have filed a special appearance in order to preserve its opportunity to contest personal jurisdiction. Specifically, Semrau argues that the District Court required jurisdiction over Stockman's upon the filing of its "answer" under waiver of defense ... | Does the law permitting modern systems for lack of personal jurisdiction (Rule 12 MT Civ.P.) effectively abolish the distinction between general and special appearances? | 033459.docx | LEGALEASE-00161538 LEGALEASE-00161539 | Condensed_SA, Sub 0.85 | 0.85 | 0 | | | 1 | 1 |
| 18151 | Bolgiano v. Schlanger, 891 So. 2d 126 | 307A+563 | Dismissal for fraud is warranted where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense. | We have tried very, very hard to explain, and to emphasize, that this power to dismiss a lawsuit for fraud on the court is an extraordinary remedy that may only in cases where a deliberate scheme to subvert the judicial process has been clearly and convincingly proven ... | Is the dismissal of a lawsuit for fraud on the court an extraordinary remedy to be utilized only in instances where a deliberate scheme to subvert the judicial process has been clearly and convincingly proved? | 034326.docx | LEGALEASE-00143482 LEGALEASE-00143483 | Condensed_SA 0.62 | 0.62 | | 0 | 1 | | |
| 18152 | Chickasaw Nation v. State of Okl. ex rel. Oklahoma Tax Comm'n, 31 F.3d 964 | 371+2965 | State power to regulate does not automatically encompass power to tax in all circumstances; where taxation is integral part of overall regulatory structure in traditionally heavily regulated area, as opposed to simple revenue measure, tax may properly be considered to fall within regulatory authority. | The Tribe argues that, notwithstanding the Court's statements in Rice about the power to "regulate" liquor transactions, and notwithstanding this court's statement on that matter in Potawatomi, the power to regulate does not automatically encompass the power to tax ... | Does the state's power to regulate encompass power to tax in all circumstances? | Taxation - Mance 041- C - KBM.docx | ROSS-003002253-ROSS-003002254 | Condensed_SA 0.84 | 0.84 | | 1 | | | |
| 18153 | Oswald v. Hamer, 73 N.E.3d 536 | 371+2015 | Under Illinois law, taxation is the rule. Tax exemption is the exception; it is restricted only by the federal and state constitutions. | "Under Illinois law, taxation is the rule. Tax exemption is the exception." Provena Covenant Medical Center v. Department of Revenue, 236 Ill.2d 368, 388, 339 Ill.Dec. 10, 925 N.E.2d 1131 (2010) (plurality opinion) ... | Is the legislature's power to tax plenary; it is restricted only by the federal and state constitutions. | 043333.docx | LEGALEASE-00142419 LEGALEASE-00142420 | Condensed_SA 0.87 | 0.87 | 0 | | | 1 | |
| 18154 | Rosenbloom v. Dep't of Treasury, 164 Mich. App. 99 | 371+3462 | Intangibles tax did not in substance constitute "income tax"; intangibles tax is specific tax on privilege of ownership of intangible property such as corporate shares, and not tax on income from shares. M.C.L.A. §§ 205.131 et seq., 206.1 et seq.; M.C.L.A. Const. Art. 9, § 7. | Appellants argue that the intangibles tax act, created with the Income Tax Act of 1967, M.C.L. § 206.1 et seq., 164 S.A.~5~7—3~07—3071(1) M.C.L., violates Const. 1963, art. 9, §7, which prohibits a graduated income tax ... | Is the intangibles tax a property tax and not an income tax? | 04.0673.docx | LEGALEASE-00160909 LEGALEASE-00160970 | Condensed_SA, Sub 0.66 | 0.66 | 0 | | | 1 | 1 |

Appendix D

3203

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 18155 | Bluebeard's Castle v. Gov't of Virgin Islands, 321 F.3d 394 | 371+2060 | Property taxes are generally governed by state law. As we discuss, the importance to the federal courts are ordinarily powerless to entertain challenges to state taxation (even under U.S.C. 1983). [...] | Property taxes are generally governed by state law. | Are property taxes generally governed by state law? | 04574.docx | USAGE4GE-00142197 USAGE4GE-00142198 | Condensed, SA | 0.93 | 0 | 1 | 1 | | |
| 18156 | Gilroth v. Westgate Dunbrine, Ltd., 87 F.So. 2d 361 | 371+2060 | An ad valorem tax is a tax assessed upon the value of property. Maizonet v. Wright Maizonet, Inc. 831 So. 2d 861 [...] | An "ad valorem tax" is a tax assessed upon the value of property? | Is an "ad valorem tax" a tax assessed upon the value of property? | Taxation - Memo # 947-C - SHB.docx | ROS5-00289817 | Condensed, SA | 0.9 | 0 | 1 | 0 | | |
| 18157 | Performance Unlimited v. Questar Partners, LLC, 52 F.3d 1373 | 25T+186 | Therefore, in Ortho Pharmaceutical Corp. v. Amgen, Inc. 882 F.2d 806 [...] | Does the Arbitration Act strip the authority of the court to grant a writ of possession pending outcome of the arbitration? | Does the Arbitration Act strip the authority of the court to grant a writ of possession pending outcome of the arbitration? | Alternative Dispute Resolution - Memo 081 - RK.docx | ROS5-00302907 3 & ROS5-00302913, ROS5-00302915 | Condensed, SA, Sub | 0.64 | | | | 1 | |
| 18158 | Second Congregation Soc. v. Hugh Stubbins & Assocs., 108 N.E. 446 | 25T+181 | Delay in moving for an arbitration will not alone amount to a default. [...] | Although delay in moving for arbitration will not alone amount to default of that procedure under statute, any attempt to go to the merits and to retain right to arbitrate is clearly impermissible. | Does delay in moving for arbitration constitute a default? | 00782.docx | USAGE4GE-00144085-USAGE4GE-00144086 | Condensed, SA, Sub | 0.52 | 1 | | | | |
| 18159 | St. Mary's Med. Ctr. of Evansville v. Disco Aluminum Prod. Co., 969 F.2d 585 | 25T+182(1) | However, not all circuits hold that prejudice is indispensable to waiver. In MicroStrategies, Inc., the Fourth Circuit held that waiver analysis is relevant consideration [...] | Waiver of right to arbitrate may be found even if decision to forego arbitration did not prejudice nondefaulting party. | Can courts find waiver if it is clear that a party has forgone its rights to arbitrate? | Alternative Dispute Resolution - Memo 085 - RK.docx | ROS5-00302126-ROS5-00302228 | Condensed, SA | 0.93 | 1 | | | | |
| 18160 | Ivax Corp. v. B. Braun of Am., 286 F.3d 1309 | 25T+182(1) | The district court is correct in assuming that participating in litigation is not the only way to waive the right to arbitration. See, e.g., S & H Contractors 906 F.2d 1515 [...] | Participating in litigation is not the only way to waive the right to arbitration. | Is participating in litigation the only way to waive the right to arbitration? | 00775.docx | USAGE4GE-00144331-USAGE4GE-00144432 | Condensed, SA | 0.92 | 0 | | 1 | | |

3204

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18161 | Midwest Window Sys. v. Amcor Indus., 630 F.2d 535 | 25T+182(1) | Although we do not repudiate dicta... in the context of the particular case. Prejudice may be found, for instance, in delay in the party seeking arbitration... | Whether a right to arbitration has been waived cannot be determined by the application of an inflexible rule; all of the circumstances, of which prejudice should be one, must be considered in the context of the particular case. | Can waiver of the right to arbitration be determined by the application of some inflexible rule? | 007747.docx | LEGALEASE-00165303 LEGALEASE-00165304 | Order, SA, Sub | 0.81 | 1 | 0 | | 1 | 1 |
| 18162 | United States v. Lieber, 160 F. Supp. 1003 | 34+20(81) | Williams should be construed only as an affirmation of the Board's duty to supply registrants with the requested form... Defendant's letter to the Board, dated December 7, 1970, indicates that he requested... | Draft board is under duty to supply registrants with requested form for conscientious objector classification. | Is supplying registrants with requested forms a mandatory duty of the board? | 008672.docx | LEGALEASE-00144654 LEGALEASE-00144655 | Condensed, SA, Sub | 0.81 | 0 | | | 1 | |
| 18163 | Young v. Terminal R.R. Ass'n of St. Louis, 70 F. Supp. 106 | 34+20.2 | Selective Service Regulations authorized by the statute have the force of law, United States ex rel. Lawrence v. Commanding Officer of the Cook Army Air Field, D.C., 186 S.W. Supp. 931... | Selective service regulations authorized by the statute have the force of law (Selective Training and Service Act of 1940, § 10(a)(1), 50 U.S.C.A.App. § 310(a)(1)). | Do selective service regulations have the force of law? | 009687.docx | LEGALEASE-00144670 LEGALEASE-00144671 | Condensed, SA, Sub | 0.17 | 0 | | | 1 | |
| 18164 | Ex parte Stewart, 47 F. Supp. 415 | 34+20(81) | We are agreed now that, while the petitioner in this case charges violation of Opinion No. 14, Volume 2, of the Director of Selective Service... The opinions of the Director of the Selective Service are merely the expression of his opinion... | The opinion of the Director of the Selective Service are merely the director's opinions directed to the various boards to guide them in their particular problems and do not have the force of "law". | Do the opinions of the Director of Selective Service have the force of law? | Armed Services - Memo 271-78.docx | ROSS-003501504 | Condensed, SA, Sub 0.23 | 0.23 | 0 | | | 1 | |
| 18165 | United States v. Cops, 817 F.2d 847 | 62+411(1) | Although section 18 U.S.C. § 1952, may provide a federal jurisdictional base for prosecuting state-law bribery, commercial bribery is not within the reach of the Hobbs Act. Because these "victims" faced no increased risk if they did not pay bribes, but, rather, stood only to improve their lots by paying defendants... | Commercial bribery is not within the reach of the Hobbs Act, which prohibits extortion. 18 U.S.C.A. § 1951. | Is commercial bribery within the reach of the Hobbs Act? | Bribery - Memo #844_c.docx | ROSS-003298223 ROSS-003298224 | Condensed, SA, Sub 0.92 | 0.92 | 0 | | | 1 | |
| 18166 | Sherrill-Russell Lumber Co. v. Krug Lumber Co., 216 Mo.App. 1 | 113+7 | This principle has been long accepted that, when a contract is made in view of well-established custom of the trade to which it relates, is to be construed in the light of the custom... | Contract, made in view of well-established custom of trade to which it relates, is to be construed in light of custom, but, to become part of contract, custom must be reasonable. | Should a contract be construed in light of customs? | 014243.docx | LEGALEASE-00145617 LEGALEASE-00145618 | Condensed, SA, Sub 0.48 | 0.48 | 0 | | | 1 | |
| 18167 | St. James v. Embury, Martin Lumber Co., 219 Mich. 115 | 113+7 | We think the contentions and statement quoted well sustained by the authorities of many experienced courtmen, and the evidence must be held to have corroborated as effectually... That a custom is general and established does raise a presumption of its reasonableness. | That a custom is general and established does raise a presumption of its reasonableness. | Does a custom that is general and established raise a presumption of reasonableness? | 014244.docx | LEGALEASE-00145613 LEGALEASE-00145614 | SA, Sub | 0.9 | 0 | | | 1 | |
| 18168 | Hecker v. Williamson Cty., 3695 VA 64 137 | 100+247(7) | Standing is a constitutional prerequisite to suit. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it... Though ordinarily lacking jurisdiction over an appeal from an interlocutory order, the Supreme Court had appellate jurisdiction... | Though ordinarily lacking jurisdiction over an appeal from an interlocutory order, the Supreme Court had appellate jurisdiction in the present case, because in conflict with its prior decision, one decision of Court of Appeals... | Does a court have no jurisdiction over a claim made by a plaintiff who lacks standing to assert it? | 053218.docx | LEGALEASE-00145914 LEGALEASE-00145915 | Condensed, SA, Sub 0.22 | 0.22 | 0 | | | 1 | |

3205

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 18169 | Hemsley v. Barnam, 51 A.D.3d 695 | 307A+560 | Defendant challenging service must move to dismiss on that ground. | The statute requires that a defendant challenging service move to dismiss [...] | Should a defendant challenging service move to dismiss on that ground? | Pretrial Procedure - Memo #4185 - C - SN.docx | ROSS-003302573 | SA, Sub | 0.85 | 0 | | | | 1 |
| 18170 | Mickens v. Com, Pa. Bd. of Prob. & Parole, 860 A.2d 116 | 307A+552 | Generally, a case will be dismissed as moot if there exists no actual case or controversy. | We consider, first, whether this appeal is moot. Generally, a case will be [...] | Will a case be moot and be dismissed when the controversy that existed between litigants has ceased to exist? | Pretrial Procedure - Memo #4789 - C - SK.docx | ROSS-003289332-ROSS-003289333 | Condensed, SA | 0.94 | | 1 | 0 | 1 | |
| 18171 | Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249 | 366+1785(2) | Issue of mortgagee's compliance or lack thereof with statute that required mortgagee to give satisfactory security of 25% of the market value of its outstanding capital stock was not at issue properly before the trial court at the pre-answer stage of the litigation, it was a possible affirmative defense or counterclaim which would be determined upon averment of fact in a responsive pleading and sufficient proof of those facts, West's F.S.A. § 660.27. | Fraud upon the court is an egregious offense against the integrity of the judicial process, such as when a party or an officer of the court which might make the court [...] | Is fraud upon the court an egregious offense against the propriety of the judicial system and is more than a simple assertion of facts in a pleading which might later fail for lack of proof? | 034648.docx | LEGALEASE-00149375-LEGALEASE-00149376 | Order, SA, Sub | 0.58 | 1 | | 1 | 1 | |
| 18172 | Scafani v. Marriott Int'l, 995 So. 2d 1066 | 307A+46 | Does a trial court possess the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court? | Although a trial court has discretion to dismiss a complaint for noncompliance with a court's discovery order, it is for the very reason that the trial judge is granted so much discretion that such [...] | Does a trial court possess the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court? | Pretrial Procedure - Memo #7362 - C - UK.docx | LEGALEASE-00386657-LEGALEASE-00386658 | SA, Sub | 0.65 | | 0 | 1 | 1 | |
| 18173 | Bd. of Cty. Comm'rs of Eagle Cty. v. Ruckman & for the City & Cty. of Denver, 433 P.2d 1017 | 42+2 | It is the substance of the action and not the form of the action which controls the venue of the case. | Eagle County also argued, in support of its motion for change of venue, that C.R.C.P. 98(a) mandates a change of venue to the county of Eagle [...] | Is it the substance of the action and not the form of the action which controls the venue of the case? | Venue - Memo 131 - RE.docx | ROSS-003505040-ROSS-003505002 | Condensed, SA | 0.93 | 1 | 1 | | 1 | |

Appendix D

3206

| ROW | Judicial Opinion | WKNS + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18174 | United States v. Bahel, 662 F.3d 610 | 63+1(1) | During the interval between the Supreme Court's decisions in Sun-Diamond and McNally, the Court at least had an opportunity to consider the differences between bribery and gratuities as set forth in Sun-Diamond. In United States v. Ganim, 510 F.3d 134 (2d Cir. 2007), we explained that "In order to establish the quid pro quo essential to proving bribery, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions)." Id. at 148 (internal quotation marks omitted, emphasis added). Rather, "bribery can be accomplished through an ongoing course of conduct, so long as evidence shows that the 'favors and gifts flowing to a public official [are] in exchange for a pattern of official actions favorable to the donor...'" Id. at 149 (internal quotation marks omitted). Thus, contrary to Bahel's contention, it is not necessary, though it may be advisable, for the district judge to use the magic words "corrupt intent" or "quid pro quo" to effectively charge a jury on bribery. A "bribe[,] as we explained in United States v. Alfisi, 308 F.3d 144, 149 (2d Cir. 2002), "[t]he corrupt intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be a specific intent to give ... something of value in exchange for an official act." *Id.* (emphasis added). In this vein, we find the "in return for" language in the district court's instruction rests comfortably within the statutory requirement. | A showing of "quid pro quo" contemporaneous with the bribe, that is, a specific act to be completed at the time of the promise to compensate the actor, is limited to bribery, and therefore, has no application in the honest services fraud context. 18 U.S.C.A. § 201; 1341, 1343, 1346. | Can bribery be accomplished through an ongoing course of conduct without specific quid pro quo being proven? | 012307.docx | USGAEASE-00165657 / USGAEASE-00165648 | Condensed, SA, Sub | 0.81 | | | | | 1 |
| 18175 | United States v. Ramirez, 298 F.3d 295 | 350H+1263 | Because Florida's definition of burglary of a dwelling includes both burglary of a building or conveyance and burglary of such building's or conveyance's curtilage, we cannot tell whether Ram's burglary conviction involved the former, the latter, or both. The parties agree the appropriate adjudicative records only say what the statute said. See United States v. Almenas, 553 F.3d 27, 33 (1st Cir. 2009) (examination of appropriate adjudicative records allowed when statutory definition is too broad to determine the offense of conviction). The statute's inclusion of curtilage, however, matters when comparing Florida's definition of burglary of a dwelling with the generic meaning of "dwelling" offense under the Guidelines. Generic burglary of a dwelling requires the dwelling be an enclosed space used or designed for human habitation. Under Florida's definition of burglary of a dwelling, the building or conveyance must be designed for lodging at night, but the curtilage does not. | Generic definition of "dwelling," for the purposes of the enumerated "burglary of a dwelling" offense under the career offender sentencing Guideline, is an enclosed space for use or intended use for human habitation. U.S.S.G. §§ 4B1.1(a), 4B1.2(a); 18 U.S.C.A. | Does a burglary of a dwelling require the dwelling to be an enclosed space? | Burglary - Memo 234 - TB.docx | ROSS-003031175 / ROSS-003031252 | SA, Sub | 0.73 | | | | 1 | |
| 18176 | State v. Curtis, 123 Wash. App. 404 | 67+4 | A locked room can be a "dwelling" for the purpose of residential burglary. State v. Crist, 80 Wash.App. 511, 514-15, 909 P.2d 1341 (1996). Here, however, Mr. Curtis disputes that the unlawfully entered its mother's room. He contends that any evidence that he presumed to move about freely in the home must be secured verbally. In Crist, for example, the court expressly told his son not to enter his locked room. | A locked room can be a "dwelling" for the purpose of residential burglary. West's RCWA 9A.52.025(1). | May a locked room be considered a dwelling for the purpose of residential burglary? | Burglary - Memo 260 - TB.docx | ROSS-003177994 / ROSS-003177995 | SA, Sub | 0.77 | | | | 1 | |
| 18177 | United States v. Burnett, 730 F. Supp. 1029 | 268+7 | The government cites Anderson v. United States Secret Serv., 645 F.Supp. 13 (D.D.C.1981), as persuasive authority that former possessors might retain the structure on the mining claims without prior approval by the Forest Service. In Anderson, the plaintiffs claimed that the Anderson was not yet sold and that he consequently would have to remove all of his property that was on the mining claims. The court also held that Anderson should be allowed to maintain property on the claim without first having a special use authorization, contract or approved operating plan permitting such use. Id. at 43 (citing 36 C.F.R. 261.10(b)). The court finds this case is also controlling. | Purchaser of an interest in an unpatented mining claim on land whose structures and personal property located on claim which he had purchased from a previous holder; operating plan submitted by purchaser was approved by Forest Service, and thus purchaser did not have the required approval from the Service, and thus the structures and personal property were a trespass on government property in light of evidence that purchaser had acquired only rights to remove structures and did not have right to list them on claims. | "Can a person maintain property on a mining claim on land without having a special use authorization, contract, or approved operating plan permitting such use?" | 012428.docx | USGAEASE-00165930 / USGAEASE-00165931 | Condensed, SA, Sub | 0.22 | | 1 | | | |
| 18178 | Kadrmas v. Sauvageau, 188 N.W.2d 753 | 260+55(1) | It is well established law that a general conveyance of land, without any exception or reservation of the minerals therein, carries with it the minerals as well as the surface. 58 Am.Jur.2d Mines and Minerals, Sec. 168; 54 C.J.S. Mines and Minerals s 146 b; 3 American Law of Mining, Sec. 15.1. | Warranty deed which described land completely, and excepted or reserved one-half of minerals to grantors, conveyed surface and one-half of the minerals. | "Does a general conveyance of land, without any exception or reservation of the minerals, carry with it the minerals as well as the surface?" | 012416.docx | USGAEASE-00165989 / USGAEASE-00165990 | SA, Sub | 0.49 | | | | 1 | |
| 18179 | Drayton v. Bartlett, 38 Ohio St. 357 | 289+870 | As a conclusion of law the referee finds: "That, That it is the duty of each partner and the survivor as well, to settle up the affairs of the partnership after dissolution without compensation; that the administration of the surviving partners stands in the same position as the surviving partner in this case, that he is to close up the partnership business and pay over to the estate of the deceased partner so much of the proceeds of the assets of the firm, and after the surplus is ascertained and the interest of the deceased partner so settled, to distribute the same; and therefore the execution of Thomas Phillips cannot be allowed compensation for such services to the estate of Philips B. Jordan, as claimed in their account." | Where a surviving partner, engaged in winding up the partnership affairs, dies, his administrator is charged with completing the duty, and is entitled to compensation for such service, to be paid from the partnership assets which came to his hands from such surviving partner. | Is it the duty of all the partners to settle the partnership affairs? | Partnership - Memo 454 - KK.docx | ROSS-003291149 / ROSS-003291150 | Condensed, SA, Sub | 0.59 | | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18180 | Kimbro v. Lebeout, 2 Bush, 371 | 241=241(3) | We consider the principle settled, on American authority, that, after the dissolution of a partnership, one partner can not bind another by an admission of a debt. In Mackley v. Patrick, 3 John B. 536, it was decided that after the dissolution of a partnership, the power of one partner to bind the others wholly ceases; that there is no reason why his acknowledgment should bind the others any more than his signing a promissory note in the name of the firm. And, in that case, the acknowledgment was made by the partner who was authorized to settle the partnership accounts. The same doctrine was recognized in Shelburne, 11 Johns. R. 409. It has also been so decided in Kentucky. Walker v. Dubarry, 1 Marsh. 189. And the doctrine of these cases is supported by the Supreme Court of the United States. Bell v. Morrison, 1 Peters, 351. We also consider that the principle is substantially settled, that the acknowledgment of one partner will not take a case out of the statute of limitations. See an exposition of the cases on this question in the above cited case of Bell v. Morrison, in that case the position seems to be correctly taken, that a promise that takes a case out of the statute, is not a mere continuation of the original promise, but a new contract, springing out of, and supported by, the original consideration. "And if so," continues Judge STORY, who delivered the opinion, "as the the dissolution no one partner can create a new contract, binding upon the others, his acknowledgment is inoperative and void as to them." 1 Peters, 351 | An acknowledgement or promise by one partner, after the dissolution of the firm, does not bind the other partners, so as to take the debt out of the statute of limitations as to them. | Will one partners acknowledgment of a debt of the firm after dissolution bind the other partner? | 02484.docx | LEGALEASE 0016394-LEGALEASE 0016395 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 | 1 |
| 18181 | Gray v. City of Salem, 271 Mass. 495 | 356=2 | Here there is no interference with a contract, nor exemption from a rule binding upon all. The Legislature has constitutional power to grant pensions to selected individuals. Opinion of the Justices, 175 Mass. 599, 57 N. E. 675, 49 L. R. A. 564. Opinion of the Justices, 190 Mass. 611, 77 N. E. 820. Opinion of the Justices, 211 Mass. 608, 98 N. E. 338. Opinion of the Justices, 240 Mass. 616, 136 N. E. 157, 23 A. L. R. 610. The grant transcends the power only where no legitimate public good is to be derived from it "where the public good is concerned, such as may be the incident and consequence to the relief of private distress." Opinion of the Justices, 175 Mass. 599, 602, 600, 57 N. E. 675, 49 L. R. A. 564. It is established law that pensions may be granted to persons who have become incapacitated in the public service may be made by the Legislature and ordered paid by the city. The exercise of this judgment is a valid exercise of the power and not a donation. 24 2 Mass. 213, 215, 147 N. E. 586. No constitutional right is violated if the terms of one grant differ from those of another. | Legislature has power to grant pensions to selected individuals, except where no legitimate public good will be derived therefrom. | Does the legislature have constitutional power to grant pensions to selected individuals? | 02282.docx | LEGALEASE 00145315-LEGALEASE 00145311 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 | 1 |
| 18182 | WorldPower v. Comm'n for Lawyer Discipline, 183 S.W.3d 451 | 30(=34(3)) | Generally, a trial court's judgment must conform to the pleadings filed in the case. Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex.1979). The ultimate purpose of pleadings is to give the adverse party notice of each other's claims and defenses and for relief sought. Perez v. Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex.1991). Pleadings should generally be construed as favorably as possible to the pleader. Gulf, C. & S. F. Ry. Co. v. Bliss, 368 S.W.2d 594. | Pleadings liberally be construed as favorably as possible to the pleader. | Are pleadings generally construed as favorably as possible to the pleader? | Pleading - Memo 440 - RMM.docx | ROSS 000028727A-ROSS-000028725 | Condensed, SA 0.86 | | 0 | 1 | 0 | 1 | 1 |
| 18183 | Texas Dept of Transp. v. Garcia, 243 S.W.3d 759 | 30(=54) | The supreme court has not yet ruled on this precise issue. In Needham, the court concluded that under the circumstances of that case, TxDOT was not an appropriate law enforcement authority. Needham, 82 S.W.3d at 315. Needham was reviewed by the supreme court in the context of a trial on the merits. Id. The supreme court addressed the issue of whether the term "appropriate law enforcement authority" included TxDOT under the particular circumstances of that case. Ultimately, the supreme court held that TxDOT was not the appropriate law enforcement authority for a public employee to report another employee's violation of Texas's driving while intoxicated laws. Id. at 320. The case also determined that there was no evidence to support a finding that Needham had a good faith belief that TxDOT was an appropriate law enforcement authority to report a drunk driving incident. Id. at 321. The Needham court addressed the merits of the claim and did not consider the question before us (i.e., the nature of plea to the jurisdiction). Had the court determined that there were jurisdictional prerequisites, we are confident it would have dismissed the case rather than rule on the merits. A court's lack of jurisdiction require dismissal of a case Villani-Wilmot, Inc. v. West Houston Airport Corp., 218 S.W.3d 722, 726 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). | A court's lack of jurisdiction require dismissal of a case. | Does a court lack of jurisdiction require dismissal of a case? | 03165.docx | LEGALEASE 00165547-LEGALEASE 00165548 | Condensed, SA 0.96 | | 0 | 1 | 0 | 1 | 1 |
| 18184 | Cal v. Forward Air Soln., 199 So. 3d 312 | 30=1530 | A trial court may dismiss a complaint as a sanction if it finds that a party has willfully disregarded a court order. Mercer, 443 So.2d at 946. While dismissing a complaint as a sanction for discovery violations is one of the most severe remedies, see Sukonik v. Wallack, 178 So.3d 455, 457 (Fla. 3d DCA 2015), nevertheless, the trial court's entry of an order dismissing trial court, and we reiterate the adage that "[a] party may not ignore a valid order of court except at its peril." Johnson v. Allstate Ins. Co., 410 So.2d 978, 980 (Fla. 5th DCA 1981). | Trial court's entry of an order dismissing a complaint as a discovery sanction is reviewed for an abuse of discretion. | Can a trial court dismiss a complaint as a sanction if it finds that a party has willfully disregarded a court order? | Pretrial Procedure - Memo 8506 - C - TM.docx | ROSS 000204370A-ROSS-000204872 | SA, Sub 0.79 | | 0 | 0 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18185 | Nagy v. Dist. Court of City & Cty. of Denver, 762 P.2d 158 | 307A+746 | Imposing sanction equivalent to dismissal for failing to file trial data certificate was clear abuse of discretion where record did not reflect deliberate dismissal in reaching that conclusion, we agree with the analysis of the court of appeals in AAA Cover Service in that circumstance, the trial court was too restrictive in its assessment of what sanctions were available under the circumstances and chose a sanction which was inappropriate in two ways. First, the sanction imposed of precluding the Nagys' testimony was disproportionately harsh in relation to the culpability of the Nagys' conduct. In light of the circumstances of this case, nothing in the record indicates that failure to file a trial data certificate resulted in any prejudice to the other party. Second, the choice of a sanction in this case served improperly to confer a benefit on Landau who was equally negligent in relation to filing a trial data certificate. Landau should not have been allowed under Rule 121 to a determine a benefit from the equities necessitate that the equally culpable party not be rewarded for its behavior. | Imposing sanction equivalent to dismissal for failing to file trial data certificate was clear abuse of discretion where record did not reflect deliberate dismissal in reaching that conclusion, we agree with the analysis of the court of appeals in AAA Cover Service in that circumstance, the trial court was too restrictive in its assessment of what sanctions were available under the circumstances and chose a sanction which was inappropriate in two ways. First, the sanction imposed of precluding the Nagys' testimony was disproportionately harsh in relation to the culpability of the Nagys' conduct. | Is imposing a sanction equivalent to a dismissal in any circumstance? | 03XY78.docx | LEGALEAZE-00165393 LEGALEAZE-00165394 | Condensed, SA, Sub 0.7 | | 0 | 1 | | 1 | |
| 18186 | McGriff v. Vidovich, 699 A.2d 797 | 307A+552 | Action is frivolous, and therefore subject to dismissal before court considers petition to proceed in forma pauperis, if, on its face, action does not set forth valid cause of action. | In accordance with Pa.R.C.P. 240(j), we must determine whether the trial court erred when it held that McGriff's complaint was frivolous. A complaint has been defined as one that lacks an arguable basis either in law or in fact. See Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). An action is frivolous under this subsection if, on its face, it does not set forth a valid cause of action. Keller v. Kinsley, 415 Pa. Superior Ct. 366, 609 A.2d 567 (1992). | Is an action that is frivolous subject to dismissal before court? | 03XI24.docx | LEGALEAZE-00166349 LEGALEAZE-00166350 | Condensed, SA, Sub 0.64 | | 0 | 1 | | 1 | |
| 18187 | Damron v. Sledge, 105 Ariz. 151 | 307A+563 | Courts have inherent power to dismiss a case which is collusive. | There is no question but that the trial court has inherent power to dismiss a case which is collusive. Before doing so, however, it must hold a hearing and take evidence to which adversaries engage in the practice of such collusion. It cannot be held that as a matter of law collusion exists simply because a defendant does not defend himself the defendant instead of defaulting agrees to perjure himself and testify falsely with the understanding and agreement that in this manner and testify falsely with the understanding and agreement that in this manner, of collusion. If some other definite evidence of collusion is adduced by proper testimony, a dismissal of the entire action may be justified. | Do courts have inherent power to dismiss a case which is collusive? | Pretrial Procedure Memo #7386 - C - R1.docx | ROSS-003166997-ROSS-003116998 | Condensed, SA 0.93 | | | 1 | 1 | | |
| 18188 | Osborne v. Osborne, 2 Conn. App. 635 | 307A+563 | Failure to comply with an order of the court is a ground for a nonsuit. 1 Practice Book 1978, 13 51 | In the appeal, the plaintiff argues that the trial referee erred in ruling that a disclosure manual was irrelevant, when in fact it was part of the suit to the referee or counsel was not sent, entered or recorded by the clerk, 4.1 failure to comply with an order of the court is a ground for a nonsuit. Practice Book * 351 Stanley v. Hartford, 140 Conn. 643. | Is failure to comply with an order of the court ground for a nonsuit? | Pretrial Procedure Memo #7383 - C - R1.docx | ROSS-003310055 | SA, Sub 0.76 | | 0 | 1 | | 1 | |
| 18189 | Miami Beach Awning Co. v. Heart of the City, 565 So. 2d 739 | 307A+590.1 | Circuit court's order setting cause for status conference was "record activity" within year of motion to dismiss and, therefore, barred dismissal for lack of prosecution. West's F.S.A. RCP Rule 1.420(e). | We review the order dismissing this cause for lack of prosecution under Florida Rule of Civil Procedure 1.420(e) on the ground that the court's order setting the cause for a status conference was, within the definition, reasonably calculated to advance the cause toward resolution. Gulfcs v. Miranda, 566 So.2d 699(Fla. 3d DCA 1990); Drident v. March, 360 So.2d 1137 (Fla. 1st DCA 1978); see also Overseas Dev., Inc. v. Ameritfirst Federal Sav. & Loan Ass'n, 433 So.2d 587 (Fla. 1st DCA 1983); cf. Norfler Const. Corp. v. City of Gainesville, 513 So.2d 266 (Fla. 1st DCA 1987), review denied, 520 So.2d 585 (Fla. 1988). Since that action, which thus constituted "record activity," occurred within a year prior to the appellees' motion to dismiss, the order of dismissal cannot stand. See Gulfcs v. Miranda, 456 So.2d at 548, and cases cited. | Is sufficient record activity occurs during one-year period preceding motions to dismiss for failure to prosecute, should then the motion be denied? | 11135.docx | LEGALEAZE-00096491 LEGALEAZE-00096492 | Condensed, SA, Sub 0.75 | | 0 | 0 | 1 | 1 | |
| 18190 | Doss v. Ford Lion, 267 Ga. 231 | 413+2 | This holding is consistent with the public policy underlying the act. The exclusivity provision is designed to provide benefits to injured employees without regard to fault or common-law defenses and without the delay inherent in tort litigation. Workers' compensation has never been intended to make the employee whole; excludes benefits for pain and suffering. Yet for loss of consortium, and it provides a cap on wage benefits. Thus, the construct of an injured worker recovery in this context to public policy or the statutory scheme. Any enlargement of benefits and remedies must originate with the legislature. | This holding is consistent with the public policy underlying the act. The exclusivity provision is designed to provide benefits to injured employees without regard to fault or common-law defenses and without the delay inherent in tort litigation. Workers' compensation has never been intended to make the employee whole; excludes benefits for pain and suffering. Yet for loss of consortium, and it provides a cap on wage benefits. Thus, the construct of an injured worker recovery in this context to public policy or the statutory scheme. Any enlargement of benefits and remedies must originate with the legislature. | Any enlargement to workers compensation should originate from where? | 04037.docx | LEGALEAZE-00145515 LEGALEAZE-00145516 | SA, Sub 0.88 | | 0 | 0 | | 1 | |
| 18191 | Hartman v. Clarke Cty. Intermediate, 520 N.W.2d 123 | 413+2 | Workers' compensation is statutory and must be construed according to its language. | Workers' compensation is statutory and must be construed according to its language. Cornhusker v. Shenk and Morgan in Thermo. City, Inc. 203 Neb. 480, 457, 224 N.W. 124, 126 (Iowa 1979). The statute must not be artificially expanded by resort to something not clearly within the scope of the language used. Downs v. A & H Const. Ltd., 481 N.W.2d 520, 527 (Iowa 1992). The clear words and phrases found in the statute express the clear intent of the legislature. Warren v. Schaertiger, 460 N.W.2d 465, 471 (Iowa 1990). On the other hand, workers' compensation law exists to benefit workers and their families. Compiler Tractor & Equip. Co., 313 N.W.2d 60, 65 (Iowa 1981). Consequently, when the statute is unclear and ambiguous, it must be interpreted liberally in furtherance of its humanitarian objective. id. | Should workers' compensation be construed according to language or its terms? | 04262.docx | LEGALEAZE-00145623 LEGALEAZE-00145624 | Condensed, Sub 0.69 | | 0 | 1 | 0 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 18192 | Frye v. Frye, Webber, Jackson & Curtis, 877 F.2d 396 | 25T+182(1) | A trial court's finding that a party has waived its right to arbitrate is subject to de novo review, but the factual finding underlying the conclusion may not be overturned unless clearly erroneous. Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1159 (5th Cir.1986). Despite the strong federal policy favoring arbitration, the right to arbitrate may be waived. Price, 791 F.2d at 1158. Miller Brewing Co. v. Fort Worth Distributing Co., Inc. (FWDC), 781 F.2d 494, 497 (5th Cir.1986) and Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex), 767 F.2d 1140, 1150 (5th Cir.1985). While the party claiming waiver has a heavy burden, '"waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" Price, 791 F.2d at 1158 (quoting Miller Brewing Co., 781 F.2d at 497). Prejudice to the party opposing arbitration, not exploitation to the party seeking arbitration, is determinative of whether a court should deny arbitration on the basis of waiver. Price, 791 F.2d at 1161. | Despite strong federal policy favoring arbitration, right to arbitration may be waived. | Can the right to arbitrate be waived? | 10727.docx | LEGALEASE 00094291-LEGALEASE 00094292 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 18193 | Borowiec v. Gateway 2000, 209 Ill. 24 376 | 307A+622 | In undertaking review of the appellate court's judgment, I begin by noting that the issues before us have arisen in the context of motions to dismiss. A motion to dismiss pursuant to section 2/615 of the Code of Civil Procedure attacks the legal sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. See Roach v. Burns, 124 Ill.App.3d 823, 837, 80 Ill.Dec. 530, 733 N.E.2d 1184 (2001). For purposes of reviewing a court's ruling on a defendant's motion to dismiss, this court must accept as true the well-pleaded allegation of the plaintiff's complaint. Board of Managers of the Village Centre Condominium Ass'n v. Wilmette Partners, 198 Ill.2d 132, 134, 260 Ill.Dec. 203, 760 N.E.2d 976 (2001). Motions to dismiss under section 2/619 of the Code of Civil Procedure present a question of law, which we review de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 156 Ill.Dec. 762, 572 N.E.2d 184, 186 Ill.Dec. 585, 879, 775 N.E.2d 951 (2002). | A motion to dismiss on the pleadings attacks the legal sufficiency of the complaint; such a motion does not raise affirmative factual defenses, but alleges only defects appearing on the face of the complaint. S.H.A. 735 ILCS 5/2-615. | Will a motion to dismiss under state law governing involuntary dismissals assert an affirmative defense or other matter that avoids or defeats the plaintiff's claim? | 11381.docx | LEGALEASE 00094039-LEGALEASE 00094040 | SA, Sub | 0.78 | 0 | 1 | 1 | 1 | |
| 18194 | Risoraj v. United States, 97 U.S. 19 | 384+1 | There can be no doubt that the words "aid or comfort" are used in this section in the same sense as they are in the clause of the Constitution defining treason (3, sect. 3), that is to say, in their hostile sense. The acts of aid and comfort which will defeat the cause must arise from a general character with those necessary to convict of treason, where the offence consists in giving aid and comfort to the enemies of the United States; but there is a very great and comfort without treason. To render a breach of allegiance, and can be committed by him only when there is present either a purpose of hostility or else an attempt to aid the public enemy. (1873) United States v. Wills. 96 Wheat. 56. The benefits of the statutes are withheld not for reason only, but for giving aid and comfort to the enemies of the United States in war, but for any or all acts of comfort which would have made him a traitor if he had owed allegiance to the United States. | "Treason" is a breach of allegiance and can be committed by him only who owes allegiance either perpetual or temporary. | Is breach of allegiance and treason synonymous? | 11441.docx | LEGALEASE 00094389-LEGALEASE 00094391 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 18195 | United States v. Matejcan, 300 U.S. 501 | 15A+2163 | As then adopted, the reveal provision applied only to injured policies, but as amended by the Act of July 2, 1926 (44 Stat. 790), it was extended to include "unrestored" insurance. This amendment was adopted by expanding the scope of the phrase "Comptroller General of the phrase "lapsed insurance" defined embrace canceled or reduced insurance. We that the lapsed or the cancellation or reduction occurred at a time when compensation was owing to the veteran. See Report of House Committee No. 1217, 69th Cong., 1st Sess., pp. 2, 9, Hearing before Senate Finance Committee, 69th Cong., 1st Sess., on H.R. 12575, pp. 50, 51. Neither the words nor the legislative history of section 305 suggest that the phrase "canceled or reduced insurance" was intended to include insurance elsewhere described in the act as "converted," at least unless the conversion was accompanied by reduction or if the policy provides the administrative construction which has consistently been given to the statute by the Veterans' Bureau is of persuasive force. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 53 S.Ct. 503, 358, 77 L.Ed. 796; Brewer v. United States, 133 U.S. 568, 571, 5 S.Ct. 648, 28 L.Ed. 1079. | Administrative construction by Veterans' Bureau of statute providing for reveal of lapsed policies held of persuasive force in suit involving rights under statute. World War Veterans' Act 1924, § 305, as amended by Act July 2, 1926, 38 U.S.C.A. § 516. | Is the administrative construction given to the Veterans' Bureau of persuasive force? | 009711.docx | LEGALEASE 00148012-LEGALEASE 00148013 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | |
| 18196 | United States v. Brunner, 457 F.2d 1301 | 34+20.19(2) | First, he asserts that the August, 1970 induction order was invalid because it was based on an order issued in August, 1969, more than one hundred and twenty days before the Final induction date. The one-hundred-and-twenty-day provision of 32 C.F.R. § 1632.2 is inapplicable to this case for several reasons. First, there was no "extreme emergency beyond the registrant's control" for delaying the induction after the police. Second, any delay accrued to the benefit and cannot be counted the one-hundred-and-twenty-day limit. United States v. Foster, 439 F.2d 29 (8th Cir.1971). Third, the fact that the provision is inapplicable to registrants who refuse to appear for induction. United States v. White, 461 F.2d 1138 (9th Cir.1971). Finally, Brunner was under a continuing duty to report under 32 C.F.R.** § 1642.2(a) and 1642.15 the induction order cannot be used against registrants in custody. See 32 C.F.R.** § 1642.2 and 1642.13 and United States v. Jenson, 450 F.2d 1258 (9th Cir. 1971). | Selective service regulation creating a duty on local board to induct a registrant within a maximum 120 days from induction order or cancel order to report for induction is inapplicable to registrant who refuse to appear for induction. | Does the one-hundred-twenty (120) day limitation apply to a registrant who has failed to appear for and submit to induction? | Armed Services - Memo - ROSS-000294573-ROSS-000294574 | 307 - RK_57616.docx | ROSS-000294573-ROSS-000294574 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | |

Appendix D

3210

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 18197 | People v. Blair, 131 App. 3d 166 | 67n5 | And our Supreme Court pointed out in People v. Benson, 36 Ill. 562, 560 N.E.2d 94 that "all felonies in this state are defined by, and codified in, the Criminal Code." Thus the present statute defining burglary... (long text) | Whether entry is initially made with requisite intent to commit felony or theft is question for jury in burglary prosecutions. 19 A.L.R. 5th 1 (16 Ills.) | Can burglary be in a public place? | Burglary - Memo 248 56_57626.docx | ROSS 003123403 ROSS-003123465 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 | 1 |
| 18198 | Weisdat v. Frizzell, 134 Mass. 1 | 295n6 | The money paid by third persons, even if it were not paid at the request of the defendants or with their consent, even if it were held by the reason of that statute, no legal obligation rested on them to repay it... (long text) | Under the 55 I.L.S. 5/3 4(f)5, 4/8b, 5/8b, 43 I.L.C.A. 55, 842 &4A, or 36. U.S. sect 20, 1878 c. 907, ? 2, 20 Stat 241, 43 I.L.C.A. 5,842 note, an attorney, who has received the fee therein prescribed for services in procuring a pension, is not entitled to maintain an action against a person other than the pensioner for a larger fee, upon an alleged promise of such person to pay him for his services which promise is not reasonably worth. The statutes clearly prohibit the receiving of additional compensation for such services, not only from the pensioner, but from any person. | Is it lawful for a person to receive for his services a pension (can a greater sum than that provided by statute)? | 022834.docx | LEGALEASE 00147836 - LEGALEASE 00147837 | Condensed, SA, Sub 0.68 | | 0 | 1 | 1 | 1 | 1 |
| 18199 | Schwab v. Getsinger, 181 Pa. 8 | 157n430(6) | It was only when his father repeatedly expressed his strong desire for him to leave his only means of living for his life, and fearing his death, that he yielded to his father's wish, and agreed to do as his father requested. There was nothing said about his having the money as a compensation for his services in getting the pension, and it is quite manifest that when the scrivener put into the written paper the words "for getting said pension," etc, he intended that it should be a compensation for the father or son to that effect. But even as they are then expressed, it is a promise to him for services rendered... | In an action by an administrator to recover the proceeds of a pension check payable to the deceased, and alleged to belong to him in his lifetime, defendant claimed the right to retain the money, and introduced a writing as follows: "And the said (deceased) further agrees that I this said son (defendant) shall provide for him just and right during his natural life, that the balance remaining of his estate shall be for his compensation," held... | Does receiving pension benefits from a pensioner as compensation violate pension laws? | Pension - Memo 64 IR_57650.docx | ROSS 003306387-ROSS-003306888 | Condensed, SA, Sub 0.02 | | 0 | 1 | 1 | 1 | 1 |
| 18200 | Crane v. Inhabitants of Linneus, 77 Me. 59 | 163n49 | The plaintiff, however, invokes ? 4763, U. S., R. S., which forbids "any pledge, mortgage, assignment, transfer or sale" of the pension claim. The case, however, does not come within the words of the statute. The plaintiff, with pauper supplies, as it was by law obligated to, it also advanced him money to procure necessaries which it obtain to repay the town when he obtained his pension. The question of the debt's validity is not before us. The town's authority to advance the money is immaterial, as plaintiff cannot recover back on that ground. | A verbal promise by a pension claimant to pay a debt out of his pension money is not a "pledge, mortgage, assignment, transfer, or sale" of the pension within the meaning of Rev.St.U.S.§ 4745(43 I.L.C.A. 129). | "May a pensioner pledge, mortgage, assign, transfer, or sell his pension benefits?" | Pension - Memo 65 IR_57651.docx | ROSS 003279361 | Condensed, SA, Sub 0.65 | | 0 | 1 | 1 | 1 | 1 |
| 18201 | Gibson v. City of Marais, 188 Ill. 2d 211 | 157n13 | Defendants respond that plaintiff waived any reliance on article VI, section 1, as a basis for his complaint or other pleadings. Defendants note that plaintiff may not complete article section 1 as a basis for standing and cannot hearing on defendants' motion to dismiss and plaintiff's motion for summary judgment. We reject this argument, which the defendant bears the burden to plead and prove. | Lack of standing is an affirmative defense, which the defendant bears the burden to plead and prove. | Is lack of standing an affirmative matter? | Pretrial Procedure - Memo 9 7481_C - 540_57520.docx | ROSS 003338988-ROSS-003338489 | Condensed, SA | 0.87 | | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WINS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18202 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 192 | 307A=675 | "Rule 41(b) embodies the tenet that 'any court of law or equity may exercise its proper function to save controversies from delay…' | Motions for failure to prosecute are considered on a case-by-case basis. Rules Civ Proc, Rule 41(b). | An motion to dismiss for failure to prosecute considered on a case-by-case basis? | 11031.docx | LEGALEASE 00096713-LEGALEASE 00096714 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 18203 | Jones v. Jones, 14-536 (La. App. 5 Cir. 4/24/17), 220 So. 3d 855 | 307A=690 | [Furthermore, the filing of the first suit did not serve to extend the time for filing of the second suit on the same grounds… | When a suit is dismissed on the basis of abandonment, the dismissal is without prejudice. La. Code Civ. Proc. Ann. art. 561. | Is a dismissal without prejudice where a suit is dismissed on the basis of abandonment? | 11070.docx | LEGALEASE 00094228-LEGALEASE 00094229 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 18204 | Argence v. Box Opportunities, 95 So. 3d 139 | 307A=841 | Nevertheless, we do note that the trial court erred by ordering the dismissal based on abandonment. A dismissal on grounds of abandonment may only be made without prejudice… | Dismissal of an action on grounds of abandonment may only be made without prejudice. LSA-C.C.P. arts. 561, 2129, 2164. | Is a dismissal on the grounds of abandonment a dismissal without prejudice. LSA-C.C.P. arts. 2129, 2164. | 11241.docx | LEGALEASE 00094609-LEGALEASE 00094610 | Condensed, SA, Sub | 0.69 | 1 | 1 | | | |
| 18205 | Fit Tech v. Bally Total Fitness Holding Corp., 374 F.3d 1 | 25=145 | The phrase "any agreement" refers to earning schedules whose components are defined in detail in the purchase agreement… | Only accounting issues concerning computation of earning schedules and then supplemental payments due sellers under asset purchase agreement were referable to accountant under agreement terms, as opposed to additional dispute about operation of business, even if they affected level of earnings; disagreements referable to accountant were defined in accounting terms in agreement. | Does it make sense to assume that accountants would be entrusted with evaluating disputes about the operation of the business? | 007822.docx | LEGALEASE 00148857-LEGALEASE 00148859 | | | | 1 | 1 | 1 | |
| 18206 | Schoenduve Corp. v. Lucent Techs., 442 F.3d 727 | 25=143 | Intending to reach all aspects of their relationship, Lucent required the parties to arbitrate any dispute arising out of or relating to the MRA. See Valentine Sugars, Inc. v. Donau Corp., 981 F.2d 210, 213-14 (5th Cir. 1993)… | Arbitrator had authority to decide quasi-contract and estoppel claims included in demand for arbitration, where other party did not object, and where parties' arbitration agreement was broad enough to encompass such claims; arbitration agreement covered every dispute between the parties having a significant relationship to the agreement? | Does the language any dispute arising out of or relating to in an arbitration agreement cover every dispute between the parties having a significant relationship to the agreement? | 007816.docx | LEGALEASE 00148873-LEGALEASE 00148874 | Condensed, SA, Sub | 0.67 | 1 | 1 | | 1 | |
| 18207 | L.H. Lacy Co. v. City of Lubbock, 559 S.W.2d 348 | 25=591 | Furthermore, while contracting parties have been allowed to withdraw from executory arbitration agreements, such withdrawal must be unequivocal and must take place prior to the rendition of an award in Tipton Development Co. v. McLaughlin Brothers, 1 W.W. Harr. (31 Del.) 241… | Where both city and contractor participated in arbitration proceedings pursuant to arbitration clause in construction contract, and neither party unequivocally withdrew its consent to arbitrate and arbitration proceeding resulted in an award to contractor, award was valid and enforceable under Texas common law, notwithstanding that city had participated subject to "jurisdictional pleas and exceptions," since such pleas had not been made with reference to common-law arbitration. Vernon's Ann.Civ.St. art. 224 et seq. | Is it possible to withdraw a submission to arbitration after a preliminary award has been declared? | Alternative Dispute Resolution - Memo 76 J.M.docx | LEGALEASE 00037875-LEGALEASE 00037876 | Condensed, SA, Sub | 0.6 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18208 | Walthour v. Chipio Windshield Repair, 944 F. Supp. 2d 1267 | 257+13(6.1) | Nonetheless, even a cursory glance at caselaw addressing the issue has held that plaintiffs' inability to proceed on a class or collective basis in arbitration does not prevent them from vindicating their statutory rights under the FLSA. See Owens v. Bristol Care, Inc., 702 F.3d 1050 (8th Cir.2013) ("There is no inconsistency between either the FLSA or 29 U.S.C.A. 51 et seq.) Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b). | Under Georgia law, a provision of arbitration agreement that expressly waived employees' rights to a "representative or class proceeding" as opposed to a "collective proceeding" waived the right under the FLSA | Does a plaintiff's inability to proceed on a class or collective basis in arbitration prevent them from vindicating their substantive rights under the FLSA? | 007862.docx | LEGALEASE-00148899-LEGALEASE-00148900 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | |
| 18209 | Panetti v. Stone Office Supply, 94 B.R. 744 | 34+20(85) | We prefer to follow the precise language of the majority opinion "was there in the record a basis in fact for denying Dickinson's claimed ministerial exemption? And since the ministerial exemption is a matter of legislative grace, the one who claims the exemption bears the burden of clearly establishing a right to the exemption." Id. at 395, 74 S.Ct. at 157 | Selective service registrant bears burden of clearly establishing right to ministerial exemption. Universal Military Training and Service Act, § 6(g), 50 U.S.C.A.App. § 456(g). | Is ministerial exemptions a matter of legislative grace? | Armed Services - Memo 316 - RK_54136.docx | ROSS-003281890 | SA, Sub | 0.74 | 0 | | | 1 | |
| 18210 | Matter of Stone Office Supply, 94 B.R. 744 | 51+26.20 | Another line of cases holds that a transfer occurs upon delivery of the check. In re Kenitra, Inc., supra, Westin Mirror Corp.,) 799 F.2d 20461 (10th Cir.1986). This Court finds it more appropriate to follow the Uniform Commercial Code approach and conclude that a transfer of a check occurs when the check is honored by the bank. Since the bank had to have honored the check after the commencement of this case, the March 1987 payment is a post-petition transfer. Plaintiff also cited... | With the transfer of a check occur when it is honored by the bank? | Bills and Notes - Memo 454-IS_57888.docx | ROSS-003297072-ROSS-003297073 | Condensed, SA, Sub | 0.87 | 0 | 1 | | 1 | |
| 18211 | Larson Hegstrom & Assocs. v. Jeffries, 145 Ariz. 329 | 95+52 | "a general, "valuable consideration" implies a benefit to promisor or detriment... | Does valuable consideration implies benefit to promisor and detriment to promisee? | Bills and Notes - Memo 629-RK_57908.docx | ROSS-003506510 | Condensed, SA, Sub | 0.34 | 0 | 1 | | 1 | |
| 18212 | San Diego Cty. v. California Water & Tel. Co., 30 Cal. 2d 817 | 200+77(1) | The taxes are apparently uniform for the whole of the... | Is the method for apportionment or valuation of roads, that method is exclusive for the city... | 018667.docx | LEGALEASE-00148373-LEGALEASE-00148374 | Order, SA, Sub | 0.56 | 0 | 1 | | 1 | |
| 18213 | Barkley v. United States, 215 Ct. Cl. 566 | 260+5(6) | To prevail in their claim... | An usted and grant generally included within the definition of minerals is reserved estate? | 017323.docx | LEGALEASE-00148578-LEGALEASE-00148579 | Condensed, SA, Sub | 0.58 | 0 | 1 | | 1 | |
| 18214 | Hansen v. Birmingham, 92 F.Supp. 33 | 289+462 | To determine whether there is liability of a partner for the obligations of the partnership... | "If parties have the rights of partners, they have those duties imposed by law on partners" | 017323.docx | LEGALEASE-00148925-LEGALEASE-00148926 | Condensed, SA, Sub | 0.89 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18215 | Brabham v. Brabham, 483 So. 2d 341 | 302v18 | In all averments of fraud, the circumstances constituting the fraud shall be stated with particularity. Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated. Rule 9(b), Miss. Rules Civ.Proc.; McMahon v. McMahon, 247 Miss. 822, 157 So.2d 494, 498 (1963); Griffith, Mississippi Chancery Practice * 589 (2d ed. 1950). Appellant's attorney frankly admitted to the lower court that appellant was not charging fraud, but the possibility of fraud, and that the only way he could establish fraud was through the blood tests. | Circumstances of alleged fraud such as time, place and contents of any false representations or conduct must be specifically stated. Rules Civ.Proc., Rule 9(b). | Can fraud be inferred or presumed? | 023606.docx | LEGALEASE-00188010 LEGALEASE-00188011 | Condensed, SA, Sub D.76 | | 0 | 1 | 1 | 1 | |
| 18216 | Wyckl Assoc. v. Thomasull, Ltd., 4521 Supp. 739 | 308v172 | Texas law recognizes that a principal's ratification of an action upon a contract made by an agent is just like a ratification of the contract. James v. Kaar & Winterman, 118 S.W.2d 625 (Tex.Civ.App.1938, writ ref). It has been held that in ratifying the acts of an agent, the principal assumes the burdens as well as the benefits of contracts made by the agent. United States v. Paddock, 187 F.2d 271 (5th Cir. 1951). Although no Texas decisions have been found discussing VR filing of the M.R.A., it appears likely that the Texas courts would reach the same result as the New York court in Stein-Tex v. Scappatticci, supra. A contract cannot be adopted in part and rejected in part because the act of ratification extends to the entire contract. Pittman & Harrison Co. v. B. F. Robey & Co., 234 S.W.2d 401 (Tex.Civ.App.—Dallas 1950, n.w.h.). | Under Texas law, a contract cannot be adopted in part and rejected in part because the act of ratification extends to the entire contract. | Can a contract be adopted and rejected in part? | 041382.docx | LEGALEASE-00188328 LEGALEASE-00188329 | Condensed, SA, Sub D.85 | | 0 | 1 | 1 | 1 | |
| 18217 | In re Go-Gro, 474 B.R. 695 | 308v75(1) | Alternatively, this Court finds that Plaintiff ratified the federal Direct Consolidation Loan by her conduct, and is therefore bound by its terms. Ratification occurs where a person with knowledge of the material facts engages in "conduct that justifies a reasonable assumption that the person" consents to be bound by the terms of an agreement which was entered into, by a purported agent, before the time of ratification. See Restatement (Third) of Agency * 4.01(2)(b). Once a principal ratifies the act of an agent, the principal is bound as if he/she had authorized the act in the first place. Restatement (Second) of Agency * 82; Restatement (Third) of Agency * 4.01(1). | Under New York law, a principal ratifies act of agent, the principal is bound as if he had authorized the act in first place. Restatement (Second) of Agency § 82; Restatement (Third) of Agency § 4.01(1). | "If a principal ratifies the acts of his agent, is he responsible for those acts?" | 041369.docx | LEGALEASE-00188560 LEGALEASE-00188561 | Condensed, SA, Sub D.69 | | 0 | 1 | 1 | 1 | |
| 18218 | Am. Computer Tech. v. Hardwick, 274 Ga. App. 62 | 308v75(3) | Slight circumstances and small matters will sometimes suffice to raise the presumption for ratification and to establish it; if an agent exceeds the power of the act ratified, and becomes effective as if originally authorized, and a ratification once made can not be revoked. Ratifying conduct can include silence, or payment pursuant to an improperly authorized contract. | A ratification by the principal of an agent's action relates back to the act ratified, and becomes effective as if originally authorized. West's Ga.Code Ann. § 10-6-52. | Can ratification by the principal be revoked? | Principal and Agent HC_SR846.docx | ROSS-003280800-ROSS-003280801 | Condensed, SA, Sub D.54 | | 0 | 1 | 1 | 1 | |
| 18219 | Howell v. Texas Workers' Comp. Comm'n, 143 S.W.3d 416 | 46H+1234 | For an employee found to have suffered a compensable injury, the rights and obligations of the employee and the health care provider treating the employee are governed primarily by the Workers' Compensation Commission and workers' compensation insurers disputing adequacy of MCO/claim v Baylor Univ. Med. Ctr., 697 S.W.2d 22, 25 (Tex.App.-Dallas 1985, no writ) (citing Smith v. Stephenson, 641 S.W.2d 900, 902 (Tex.1982)). | Trial court did not abuse its discretion by imposing monetary sanctions, under its inherent power, against health care provider's attorneys, in health care provider's action against Texas Workers' Compensation Commission and workers' compensation insurers disputing adequacy of administrative review process for the disputes and independent review organization (IRO) fees, for making false statements of material fact to the court, in violation of the rules of professional conduct, suggesting that attorney had title or no involvement in the filing of over 700 lawsuits by provider regarding medical payment disputes; attorneys stated that though they had drafted lawsuits they first had notice that lawsuits had been filed when they attended a hearing on a temporary restraining order (TRO), and at hearing on sanctions attorney stated that such majority of lawsuits had been filed while he was out on back surgery and that his signature had been stamped. V.T.C.A., Government Code Title 2, Subtitle G App. A-1, Disciplinary Procedure Rule 3.03. | Are the rights and obligation of the employee and the health care provider treating the employee governed under the Workers Compensation Act? | Workers Compensation Memo #912 ANC_57832.docx | ROSS-000000134 | Condensed, SA, Sub D.18 | | 0 | 1 | 1 | 1 | |
| 18220 | Jean-Pierre v. State, 635 S.W.2d 546 | 179x261 | Section 20(a)(6) of the Act, supra, deems a food to be adulterated "if it has been prepared, packed, or held under insanitary conditions, whereby it may have been rendered injurious to health; ..." Appellant's objection to the state's failure to prove the food was contaminated and may have been rendered injurious to health" in the information is without merit. The information does not charge the appellant with contamination, but with the sale of adulterated comments. The prohibited act is the adulteration of food, and the information sufficiently informed the appellant of the offense. The language "may have become contaminated" describes the possible result of the criminal act and are used in the exact charges against him and enables him to prepare a defense. | In information, which charged business corporation engaged in baking trade with committing misdemeanor described as business of selling adulterated bakery product, the language "may have become contaminated" described possible result of criminal act and not act itself, given fact that prohibited act was subject of food to unsanitary conditions, and actual contamination of food, and thus information did not charge corporation with acts which "may have occurred"; as appellant contends, information sufficiently informed corporation of exact charges against it and enabled it to prepare a defense. V.T.C.A., Penal Code § 32.42; Vernon's Ann.Civ.St. arts. 4476-5, 4476-5.55.1-10(a)(4). | Is food deemed to be adulterated if it is prepared under insanitary condition? | Adulteration Memo155-Memo912, 2d-D-nwFQXPW.docx | ROSS-000002156 | Condensed, SA, Sub D.65 | | 0 | 1 | 1 | 1 | |
| 18221 | United States v. Ventura-Melendez, 275 F.3d 9 | 144+0(5) | As a virtual matter, and despite the defendant's protestations to the contrary, we conclude that "[g]overnment ownership of the property in question is not a requisite to violating statute setting forth offense of trespassing upon a United States military installation. 18 U.S.C. § 1382. | Government ownership of the property in question is not a requisite to violating statute setting forth offense of trespassing upon a United States military installation. 18 U.S.C. § 1382. | Is government ownership of the property in question in a required for a conviction under 18 U.S.C. 1382? | Armed Services - Memo 128-HC_S5661.docx | ROSS-003281183 | Condensed, SA, Sub D.45 | | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18222 | Adams v. United States, 117 Fed. Cl. 628 | 34+101.1 | The court also notes that "interpretive doubt" regarding the reading of a statute pertaining to the veterans is to be resolved in the veteran's favor. | The court also notes that "interpretive doubt" regarding the reading of a statute pertaining to the veterans 'is to be resolved in the veteran's favor.'' See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (citing King v. St. Vincent's Hosp., 502 U.S. 215, 220772 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) ("[P]rovision for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.")); see also Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946)); Viegas v. Shinseki, 705 F.3d 1374, 1380 (Fed.Cir.2013) ("[A]ny interpretive doubt is to be resolved in the veteran's favor."). Second modification in original)); Szuraty v. Peake, 503 F.3d 1351, 1355 (Fed.Cir.2009) ("We look to similar terms, 'interpretive doubt is to be resolved in the veteran's favor.'" (quoting Brown v. Gardner, 513 U.S. at 118, 115 S.Ct. 552)). | Should statutes benefiting veterans be construed in the veteran's favor? | 00801-4.docx | LEGALEASE-00185790 LEGALEASE-00185791 | Condensed_SA | 0.89 | | 1 | | 1 | 1 |
| 18223 | Standard Furniture Co. v. Smith, 167 J.43 176 | 8:30(+162 | Bills and notes are not excepted from the well-established rule that contracts founded upon an illegal consideration cannot be enforced. 8 J.L. 241, Sec. 380. Appointed each in Fletcher's Cyclopedia of Corporations, vol. 5, sec. 1991et seq... In the case where the powers conferred by the charter, but the act is in fact in excess of its powers, ultra vires cannot be set up by the corporation, is based on the fact that where an act is beyond the contract, and fails when it is shown that he has aided in that utterance of the utterance. | Bills and notes are not excepted from the well-established rule that contracts founded upon an illegal consideration cannot be enforced. | Can bills and notes founded on illegal consideration be enforced? | Bills and Notes - Memo 797-PR_58117.docx | ROSS-000193771-ROSS-000193772 | Condensed_SA | 0.88 | | 1 | 0 | 1 | 1 |
| 18224 | Fewox v. Tallahassee Bank & Tr. Co., 249 So. 2d 55 | 83:1+451 | Uniform Commercial Code controlled rights and obligations between maker of note and holder, bank, but law of guaranty controlled rights and obligations as between guarantor and maker, F.S.A. § 673.1(101). | The issues raised by the pleadings in this cause may be disposed of by applying the principles of law of guaranty as distinguished from the law of negotiable instruments embodied in Chapter 673, the Uniform Commercial Code. The latter controls the rights and obligations between the maker of a note (the makes of the note—appellee here, and the holder—appellee here. On the other hand, the law of guaranty controls the rights and obligations as between the guarantor, appellant herein, and the guarantee bank. While the trial court included Section 673.1(101) Florida Statutes, F.S.A., as the basis by which appellants' liability on the instrument was to be defeated, the rights and obligations of the parties as to the note, such that note, the basic liability of the guarantor under our statute or note, the maker of a note may become liable to order to hold appellants liable for the issue evidenced by the notes. | Which law controls the rights and obligations between the maker of a note and holder and guarantor? | Bills and Notes - Memo 87-VP_58191.docx | ROSS-000183772 | Condensed_SA | 0.77 | | 1 | | 1 | 1 |
| 18225 | Campbell v. Fourth Nat. Bank, 137 Ky. 555 | 8:30(+05 | The negotiable instrument act is in the main merely a codification of the common law as now the subject to which it relates. It was intended merely to codify and render definite the rule as established by the weight of authority. There are few innovations in the law merchant as the rule before established by the courts. Where before it lays down a new rule, it controls; but, where its language is consistent with the rule previously recognized, it should be construed as simply declaratory of the law as it was before the passage of the act. | The negotiable instrument act is in the main merely a codification of the common law as now constituting the law merchant, so that where negotiable instrument act is consistent with prior rule it should be construed as declaratory thereof. | Is Negotiable Instruments Act a codification of common law? | 010540.docx | LEGALEASE-00140907-LEGALEASE-00140908 | Condensed_SA, Sub 0.62 | | 1 | | 1 | |
| 18226 | Lewis v. Harvey, 18 Mo. 74 | 157+43 | A party who writes his name on the back of a note of which he is neither payee nor indorsee cannot be charged as maker of the note, whether it be negotiable under our statute or not. | A party who writes his name on the back of a note of which he is neither payee nor indorsee, where evidence is admissible to show that he did not sign as maker, but as indorser or guarantor | Can a party whose name is written on the back of a note be a maker of it? | Bills and Notes - Memo 707-ANM_58221.docx | ROSS-000186365-ROSS-000186366 | Condensed_SA, Sub 0.16 | | 1 | | 1 | |
| 18227 | Gibson v. Partin, 13 Neb. 292 | 83:1+462 | The indorser cannot, like a surety, call upon the holder of the note to proceed and collect it of the maker. | And where, as in this case, the indorser has waived his right to a demand of payment upon the maker, protest, and notice of non-payment, a right of recovery immediately arises against him when such is the case (Marshall v. Sonneman, Edwards Bills, etc. *385, (1d),Ed.) and the indorser cannot, like a surety, call upon the holder of the note to proceed and collect it of the maker. Trimble v. Thorne, 16 Johns. 152; Beardsley v. Warner, 6 Wend. 610. | Can an indorser be a surety? | 010654.docx | LEGALEASE-00140416-LEGALEASE-00140417 | Condensed_SA | 0.75 | | 1 | | 1 | 1 |
| 18228 | Piercy v. Mason, 116 Conn. 418 | 83:1+462 | Due diligence does not require the holder of a note to bring suit against a maker when such suit would be fruitless. | Due diligence, to charge indorser of nonnegotiable note, does not require payee to bring suit against maker when such suit would be fruitless. | Is due diligence required to bring in a suit? | Bills and Notes - Memo 722-ANM_58225.docx | ROSS-000208450-ROSS-000308406 | Condensed_SA, Sub 0.76 | | 1 | | 1 | 1 |
| 18229 | Neely v. Comm'r for Lawyer Discipline, 302 S.W.3d 331 | 92+1228 | Checks are not confidential communications in which a person has a constitutional right to privacy. | Newly objected to production of these records, claiming it would violate a constitutional right to privacy and seek contents in these records. However, there are no constitutional rights to privacy affected by disclosure of banking records or financial records. See United States v. Miller, 425 U.S. 435, 442, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (involving subpoena of bank records served on a third party); In re Amerson, No. 07-08-00503CV, 2008 WL 4816184 (Tex.App.—Amarillo Sept. 11, 2008, no pet.); see also State v. Hardy, 963 S.W.2d 516, 524 (Tex.Crim.App.1997) (op. on reh'g) (providing that a person has no reasonable expectation of privacy in personal information voluntarily conveyed to a third party and held by it in the ordinary course of business). In that regard, a person has no reasonable expectation of privacy in medical information held by third party. Miller v. Miller v. O'Neill, 775 S.W.2d 56, 59 (Tex.App.-Houston [1st Dist.] 1989, no writ) (providing that contents intended to check on) (providing that despite reasonable intrusion expectation of financial records is permitted and is not an invasion of privacy). Financial statement and deposit slips contain information that is voluntarily conveyed by the holder to the bank employees in the ordinary course of business, Miller, 425 U.S. at 442, 96 S.Ct. at 1624. Likewise, checks are not confidential communications, but rather negotiable instruments used in commercial transactions. Id. Therefore, the trial court did not abuse its discretion in overruling this discovery objection. | Whether checks are confidential communications? | Bills and Notes - Memo 751-IC_58324.docx | ROSS-000182419-ROSS-000182420 | Condensed_SA, Sub 0.89 | | 1 | | 1 | 1 |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 22,876 | 9,079 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | |
| 18230 | Anderson v. Burton, 75 Mont. 516 | 83f+32 | A person who places his signature upon an instrument, otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. Section 84728, R.C.M. 1921. A holder who in due course deals with negotiable instruments only so long as they are in the hands of holders in due course. If in another hands, they are subject to the same defenses as if nonnegotiable. U. S. Nat. Bk. v. Sharpe, 272 P. 324, 54 Mont. 542, Morchin Wat. Bk. v. Smith, 190 P. 523, 59 Mont. 280, 15 A. L. R. 430. As to one another, all the indorsers are liable in the order of their indorsement; but evidence is admissible as between themselves that they have otherwise agreed, and joint indorsers are deemed to have indorsed jointly and severally. Section 84735, R. C. 1931. | Negotiable instruments, which are not in hand of holders in due course, are subject to same defenses as if they are in the hands of holders in due course (Sec. Code 1921, S 8402 et seq.). | Will the negotiable instruments Act deal with negotiable instruments as long as they are in the hands of holders in due course? | Bits and Votes - Memo 88.5_58038.docx | ROSS-003278479-ROSS-003278480 | Condensed, SA, Sub 0.81 | | | | | |
| 18231 | Dyer v. U.S. Bank, N.A., 141 F. Supp. 3d 149 | 83f+426 | Mass. Gen. Laws ch. 106, "7"205(b), cmt. 2. Accordingly, ""Under the UCC, one who possesses a note endorsed in blank is the bearer of the note." | Under Massachusetts law, one who possesses a note endorsed in blank is the bearer of the note. Mass. Gen. Laws ch. 106, §5-3-209(a)(2). b | Is the one who possesses a note endorsed in blank is the bearer of the note? | Bits and Notes - Memo 99018_58714.docx | ROSS-003328757 | SA, Sub 0.02 | | | | | 1 |
| 18232 | In re Weisband, 427 B.R. 13 | 83f+426 | Arizona's bearer of statute does not require a beneficiary of a deed of trust to produce the actual note (or note or assignment) in order to conduct a Trustee's Sale. Blau v. Am's Serv. Co., 2009 WL 3174823, at (D.Ariz.2009); Mansour v. Cal'W. Reconveyance Corp., 618 F.Supp.2d 1178, 1181 (D.Ariz.2009); Diessner v. Mortg. Elec. Registration Sys., 618 F.Supp.2d 1184, 1187 (D.Ariz.2009). It would make no sense to require a creditor to demonstrate more to obtain a deed than it must to conduct a foreclosure sale. Thus, if a note is endorsed in blank, it is enforceable as a bearer instrument. See In re Hill, 2009 WL 1956174, at (Bank (D.Ariz.2009). Therefore, this Court declines to impose a blanket requirement that all creditors must offer proof of an owner's entire chain of assignment to have standing to seek relief although there may be circumstances where, in order to establish standing, the movant will have | Under Arizona law, if a note is endorsed in blank, it is enforceable as a bearer instrument. | Is a note endorsed in blank enforceable as a bearer instrument? | Bits and Notes - Memo 99108_58715.docx | ROSS-003319033 | SA, Sub 0.91 | | | | | |
| 18233 | Evans v. Natl. Bank Mortg. Assn., 314 F.3d 1295 | 172H+1342 | For purposes of Truth in Lending Act (TILA) requirement that, in order to maintain a civil action against an assignee of a creditor, the violation for which such action or proceeding is brought must be apparent on the face of the disclosure statement provided the consumer, 15 U.S.C.A. § 1641(a)(1), a "disclosure statement" is a document provided before the transaction, a "disclosure statement" is a document provided before the extension of credit that sets out the terms of the loan. Truth in Lending Act, § 131(e)(1)(A), 15 U.S.C.A. § 1641(e)(1)(A). | What is a disclosure statement in relation to consumer credit? | 01803.docx | LEGALEASE-00149527-LEGALEASE-00149528 | Condensed, SA, Sub 0.36 | | | | | |
| 18234 | Lansberry, Bank of Am., N.A., 714 F. Supp. 2d 562 | 172H+1344 | Plaintiff claims that the mortgagee assigned the mortgage to Regulation Z, published at 12 C.F.R. 226.18(g), commonly referred to as Regulation Z, requires a creditor to disclose "The total of payments, the number and amount of payments [and] the due dates or periods of payments scheduled." Plaintiff also drew the Court's attention to a number of reported cases analyzing the disclosure statement in determining the adequacy of TILA and rejecting the notion that deception, confusion, or actual injury are necessary to demonstrate a violation. See 15 USC § 1638(a), 15 U.S.C.A. § 1601(3); Cheek v. FMC Lending, Inc., 497 F. Supp. 2d 1001; McGowan v. King, Inc., 569 F.2d 845, 849 (5th Cir.1978). The sufficiency of the disclosure is a question of law. | "Under federal law, what is a creditor required to disclose?" | 01807.docx | LEGALEASE-00149529-LEGALEASE-00149530 | Condensed, SA, Sub 0.38 | | | | | |
| 18235 | Goodwine v. Vermilion Cty., 271 Ill. 126 | 200+211 | Section 5 was not repealed by the passage of the Road and Bridge Law of 1913, but is still in force, and confers upon the county board power to levy a tax to aid in the construction of roads in the county. People v. Jacksonville & St. Louis Railway Co., 261 Ill. 550, 104 N.E. 229; People v. Wabash Railroad Co., 260 Ill. 530, 107 N. E. 231. This provision gives the county board a discretion to aid any county in the construction of roads and bridges. Section 60 authorizes the board of supervisors to submit to the legal voters of the county the question of issuing bonds whenever they shall determine whether such bonds for roads or aid in the levy or any of the duties imposed upon them by law. | Power of county board to aid in the construction of roads and bridges under County Law, § 57, S.H.A. ch. 34, § 57; held not to be limited or modified by Road and Bridge Act, § 126, S.H.A. ch. 121, § 134. | Does the county board have the power to aid in the construction of bridges? | 01803.docx | LEGALEASE-00149627-LEGALEASE-00149628 | Condensed, SA, Sub 0.72 | | | | | |
| 18236 | Kinzua Highway Dist. v. Crouse & Hale Crane & Co., 298 F. 431 | 200+90 | The appellants contend that here is a difference between a general tax and a local assessment, that the former rests to some extent upon the general idea of benefits, that this is a tax, and not a local assessment, and that the power of taxation, in its very nature, acknowledges no limits and involves the power to destroy. The distinction relied upon, no doubt, exists, but it is as to the general power of taxation, we cannot concede that it knows no limits when, as in this case, it is exercised by a highway district in the state of Oregon to raise funds for a political municipality, and is not created for general governmental | A highway district is solely a political municipality created for governmental purposes, but its powers are quasi-corporate in the construction of highways for the benefit of the inhabitants and property therein. | Is highway district a political municipality? | Highway Memo 293 - 08_56549.docx | ROSS-003294394-ROSS-003294395 | Condensed, SA, Sub 0.64 | | | | | |
| 18237 | United States v. Hackfeld/von Holten, 513 F. Supp. 2d 1179 | 91+393 | The Court finds the Tornell opinion's determination that the "at peace" requirement is a question of law to be in conflict with the weight of authority establishing that essential elements of crime are questions of fact for a jury. See, e.g., Gaudin, 515 U.S. at 517-12, 115 S.Ct. 2310. A jury must ultimately decide whether the United States was "at peace" with a particular nation, but proving beyond a reasonable doubt all essential elements of the crime 18 U.S.C. "960(b) and 18 U.S.C. "960 conspiracy require, including whether the United States was "at peace" with Cambodia. Even where the "at peace" requirement is construed as a mixed question of law and fact, it is the jury that will apply a legal standard to the facts. See, 155 U.S. 2310. | Issue of whether United States was "at peace" with Cambodia presented question of fact that could not be resolved on motion to dismiss indictment for conspiring to damage property of foreign state where part-in military expedition against a foreign state with which the United States was "at peace," the "at peace" requirement was a element of those crimes, 18 U.S.C.A. SS 956(b), 960. | Who decides whether the prosecution has carried its burden of proving that the United States is at peace? | Neutrality Laws - Memo 17_HL_38650.docx | ROSS-003293394-ROSS-003291399 | Condensed, SA, Sub 0.46 | | | | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18238 | Meyer v. U.S., 213 F.2d 278 | 220+393.1 | We can go no so far as to assist the proposition that a partnership interest is a capital asset and when such sold results in treatment as does that class of assets in the event special taxpayer's partnership was on an accrual basis. When he sold to Florence Doering, as of February 28, 1945, his capital account had been credited with $124,531.92 which represented his share of the partnership profits earned and thereby sold for the period July 1, 1944, to February 28, 1945. This record is devoid of evidence demonstrating that any part of the $124,531.92 embodied taxpayer's share of earnings for past unsettled accounts. If prior to selling his partnership interest this taxpayer had eventually drawn out portions of the $124,531.92 such amounts would have been taxable as ordinary income. We think that this record fails in establishing, to our satisfaction, that taxpayer's sale to Florence Doering was merely a mechanism for this taxpayer to withdraw portions of the partnership earnings accumulated in capital gain rates. We are also aware that with Bremer operating on a fiscal year, as to partnership profits earned and thereby sold, the capital gain basis of reporting, taxes on such profits would be postponed until a succeeding taxable year. | A partnership interest is a capital asset for income tax purpose and, when sold, warrants treatment as does that class of assets. 26 U.S.C.A. 117(j) | Are partnership interests capital assets? | 02558.docx | LEGALEASE 00149895-LEGALEASE 00149896 | Condensed, SA, Sub 0.88 | 0.88 | 0 | | | 1 | |
| 18239 | Grohl v. Horrick, 51 N.Y.S.2d 155 | 289+761(2) | As held in Kavanaugh v. McIntyre, 210 N.Y. 175, at page 183, 104 N.E. 135, L.R.A., the individual members of a copartnership are liable for torts of which they have no knowledge, committed by any member of the firm in the course of the partnership business. | Where some members of stock brokerage firm knew or should have known their customer's securities were being improperly manipulated in the course of partnership business, other partners could not escape liability on the ground that they had no knowledge of the manipulations. Partnership Law 524. | Are individual members of a partnership held responsible for torts of which they have no knowledge, committed by any member of the firm in the course of partnership business? | 02564.docx | LEGALEASE 00149899-LEGALEASE 00149900 | Condensed, SA, Sub 0.11 | 0.11 | 0 | | | 1 | |
| 18240 | AFSCME Council 25 v. Faust Pub. Library, 311 Mich. App. 449 | 302+5(1) | The ALJ stated that there was no material issue of disputed fact concerning the supervisory status of the adult services and circulation department head positions because both the Library and the Union agreed that those positions were supervisory. In so ruling, however, the ALJ ignored that the Library's alternative argument disputed the supervisory status of those department heads. In general, parties are permitted to plead inconsistent claims and facts in the alternative. See MCR 2.111(A)(2); Hi Tacker & Assoc., Inc. v Allied Pipe & Engineering Co., 234 Mich App 305, 361, 595 N.W.2d 176 (1999). Section 75 of the Administrative Procedure Act 2, MCL 24.275, provides in relevant part that [t]o contradict case the rules of evidence is applied in a nonjury civil case in circuit court shall be followed as far as practicable, but an agency may admit and give probative effect to evidence of a type commonly relied on by reasonably prudent men in the conduct of their affairs. The ALJ identified no principled basis to exclude evidence. | In general, parties are permitted to plead inconsistent claims and facts in the alternative. MCR 2.111(A)(2). | Can a party plead inconsistent claims? | 02621.docx | LEGALEASE 00149979-LEGALEASE 00149980 | Condensed, SA | 0.9 | 0 | | | 1 | |
| 18241 | Deere v. Lucas, 2008 Ohio Misc. 131 WL 174 Ohio App. 3d 725 | 302+5(1) | "Civ.R. 8(E)(2) permits alternative or hypothetical pleading, or even the use of inconsistent claims, and states, in part: [w]hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more the alternative statements." Iacono v. Anderson Concrete Corp. (1975), 42 Ohio St.2d 88, 92, 71 O.O.2d 65, 326 N.E.2d 267. | The rules of civil procedure permit alternative or hypothetical pleading, or even the use of inconsistent claims. Rules Civ.Proc., Rule 8(E)(2). | Is alternative or hypothetical pleading permitted? | 02621.docx | LEGALEASE 00149113-LEGALEASE 00149114 | Condensed, SA, Sub 0.67 | 0.67 | 0 | | | 1 | |
| 18242 | Langlois v. Energy Automation Inc., 332 S.W.3d 353 | 307A+226 | Trial courts should exercise restraint when dismissing a party's claims involuntarily because such drastic remedy may be too easily resolved on their merits after trial." Omen v. Omen, 185 S.W.3d 825, 836 (Tenn.Ct.App.2005) (quoting Little v. Alvarez v. Bonfeo, 629 F.Supp.2d 312 (M.D.Tenn.1984)). Dismissal for failure to prosecute or failure to abide by discovery rules is a severe sanction that "runs counter to the judicial system's general objective of disposing of cases on their merits," Garr, 154 S.W.3d at 481 (citing Childress v. Bennett, 816 S.W.2d 314, 316 (Tenn.1991); Tenn. Dep't of Human Servs. v. Barbee, 689 S.W.2d 863, 866 (Tenn.1985)). For this reason, the policy generally favors lenient sanctions when appropriate. MN's. Consolidation Servs. Inc. v. Rodal, 42 S.W.3d 841, 846 (Tenn.Ct.App.2000). Since the effectiveness of discovery and procedural rules would diminish if the courts lacked ample authority to sanction their violation. Alexander, 150 S.W.2d 415. | Trial court within its discretion in imposing sanction of dismissal for plaintiff's failure to prosecute claims and to comply with discovery rules, a severe sanction that runs counter to the judicial system's general objective of disposing of cases on the merits and served properly-noticed depositions, one of the notices occurred only weeks before a court-imposed discovery deadline and just months before trial date, and plaintiff did not file motion for protective order. Rules Civ.Proc., Rule 37.04. | To dismiss for failure to prosecute or failure to abide by discovery rules, a severe sanction that runs counter to the judicial system's general objective of disposing of cases on the merits? | Pretrial Procedure - Memo 8198 - C - MS_5875D.docx | ROSS-003279510-ROSS-003279511 | Condensed, SA, Sub 0.52 | 0.52 | 0 | | | 1 | |
| 18243 | Oglesby v. Wheaton Van Lines, 231 F.3d 504D | 308+1 | We also note that the Illinois law of agency, as well as the federal common law of agency, accord with the Restatement. See Moriarty v. Glueckert Funeral Home, Ltd., 155 F.3d 859, 865/3d n. 15 (7th Cir.1998) (the federal courts have looked on the Restatement of Agency as a valuable source for establishing the federal common law of agency); see also National Organization for Women, Inc. v. Scheidler, 267 F.3d 53, 259 (7th Cir.1998) (the Restatement accords with Illinois agency principles of actual and implied authority); see also Progressive Const. Co., Inc. v. King, 160 Ill.App.3d 412, 513 N.E.2d 207, 214 N.E.2d 739, 74274 (1982) (The law of agency in Illinois is in accord with the Restatement of Agency (Second) on the subject of apparent authority."). | Illinois law of agency, as well as the federal common law of agency, accord with the Restatement of Agency. Restatement (Second) of Agency 51 et seq. | Does the law of agency accord with Restatement? | Principal and Agent - KC_5454S.docx | ROSS-002824542-ROSS-002824543 | Condensed, SA, Sub 0.81 | 0.81 | 0 | | | 1 | |

| ROW | Judicial Opinion | WXNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 18244 | Welch v. Henry, 305 U.S. 134 | 371v2135 | Any classification of taxation is permissible which has reasonable relation to a legitimate end of governmental action. | Any classification of taxation which has reasonable relation to a legitimate end of governmental action is permissible. | What classification is permissible for purpose of taxation? | 043931.docx | LEGALEASE 00349380 LEGALEASE 00349381 | Condensed, SA | 0.9 | | | | 1 | |
| 18245 | Pub. Res. Prot. Ass'n v. Dep't of Forestry & Fire Prot., 7 Cal. 4th 111 | 92v1230.0 | In absence of ambiguity, court will uphold agency's rules as they are interpreting them. | We conclude, however, that both the parties and the Court of Appeal erred in assuming that section 4516 provides a rule of interpretation that would resolve the question of whether an approved timber harvesting plan was ineligible to conform to rules created by the board after its approval. The correct answer to that question lies not in the provisions of section 4516, but in the standard provisions of the CEQA. It is the task of the rule that determines how it is to be applied. Therefore, a rule that addresses proposed timber harvesting plans would apply to proposed plans, while a rule that addresses proposed timber harvesting operations would apply to proposed operations. It is the board, in drafting the rules, that determines in the first instance to what the various rules are to be applied. This is because it is the board, and not the courts, that establishes forest policy there so to find an ambiguity in the rules, the meaning would be so a remedy to the board so to find any ambiguity in the ambiguity. However, in the absence of an ambiguity, we will uphold the board's rules as they are written unless we find them to be beyond the board's authority. (Gov.Code, \"11342.1 and 11342.2; see generally, California Assn. for Safe etc. Tech. v. Department of Developmental Services (1985) 38 Cal.3d 384, 394 [211 Cal.Rptr. 758, 696 P.2d 150].) Importantly, in this case, the board eliminated an initial ambiguity in the rules by proceeding then. The amended version of the company and disposes of this litigation and requires us to reverse the judgment of the Court of Appeal. | Will the board's rules establishing timber policy be upheld absent an ambiguity as they are written? | 047569.docx | LEGALEASE 00349734 LEGALEASE 00349735 | Condensed, SA, Sub | 0.87 | | 1 | | | |
| 18246 | Overton v. Hardin, 44 Tenn. 375 | 83/v437 | An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense. An accommodation indorser, however, may recover from the maker the cost incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement. | An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense, but an accommodation indorser may recover from the maker the cost incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement. 1 Parsons on Con., 31; Sedgwick on Dam., 297, 335. | Does an indorser have a remedy against the maker for the cost incurred by him in his own defense? | Bills and Notes - Memo 786 - ANM_58708.docx | ROSS 000299113-ROSS 000299114 | SA, Sub | 0.19 | 1 | 1 | | | |
| 18247 | Turk v. State, 53 Mo. 437 | 83v475 | Inland bills of exchange, and negotiable promissory notes, are entitled, and indorsee, to three days' of grace. | Inland bills of exchange, and negotiable promissory notes, are entitled, and indorsee, to three days' grace. Bank of Washington vs. Triplett, 1 Pet., 25; Wood vs. Corl, 4 Metc., 203; Shaw and King, Lead. Cas. Bills and Notes, 306; Story on Bills of Exchange, \"\" 132-346; Ivory vs. Bank of Missouri (4th), 36 Mo., 479; Lucas vs. Ladew, 28 Mo., 342; Kuntz vs. Temple, 48 Mo., 71. | How many days of grace are promissory notes entitled to? | 007998.docx | LEGALEASE 00150180 LEGALEASE 00150181 | Condensed, SA, Sub | 0.56 | | 1 | | | |
| 18248 | Inre Jensen Field Relocation Claims Jensen Field, 817 N.W.2d 724 | 141v990 | \"[C]ourts must be reticent to invade the sphere of authority reserved to the legislature and to the people by our constitution.\" Bates v. City of Mpls., 2004 Minn. 339, 361, 187 N.W.2d 710). 764 (Minn.1971). The University's \"autonomy is derived from the principle of separation of powers.\" Tenny v. Bd. of Regents of Univ. of Minn., 813 N.W.2d 417, 425 (Minn.App.2012) | The autonomy of the University of Minnesota is derived from the principle of separation of powers? | Education - Memo #120 - C_AF5_58735.docx | ROSS 000319962 | Condensed, SA, Sub | 0.74 | | 1 | | | |
| 18249 | Curtiere v. Scott, 83 N.Y.2d 113 | 179v156 | Some prima facie tort may be pleaded in the alternative with a traditional tort. | Although this court recognized the general principle that harm intentionally inflicted is prima facie actionable unless justified (see Advance Music Corp. v. American Tobacco Co., 296 N.Y. 79, 70 N.E.2d 401; American Guild of Musical Artists v. Petrillo, 286 N.Y. 226, 36 N.E.2d 123; Opera on Tour v. Weber, 285 N.Y.348, 34 N.E.2d 349; cf. Restatement [Second] of Torts [] 870, 871, 872), it did not abandon the requirement that a plaintiff prove the elements of the traditional tort for pleading a cause of action for prima facie tort, nor did we ensure to justification, (4) by an act or series of acts that would otherwise be lawful (Burns Jackson Miller Summer & Spitzer v. Lindner, 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 451 N.E.2d 459 471 inc. v. Rader & Finn, 42 N.Y.2d 456, 458, 398 N.Y.S.2d 348, 368 N.E.2d 1230). While prima facie tort may be pleaded in the alternative with a traditional tort, (there is no requirement that the cause of action for prima facie tort disappears [Board of Educ. v. Farmingdale Classroom Teachers Assn., 38 N.Y.2d 397, 406, 380 N.Y.S.2d 635, 343 N.E.2d 278, supra). | Can prima facie tort be pleaded in the alternative? | Pleading - Memo 490 - RMM_59046.docx | ROSS 000305663-ROSS 000305664 | Condensed, SA | 0.93 | | | | 1 | |

Appendix D

3218

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18250 | L.D.G. v. Robinson, 290 P.3d 215 | 30+3896 | "We review de novo an order dismissing a complaint .. for failure to state a claim upon which relief can be granted." When reviewing such an order, we deem all facts alleged in the complaint true and provable. To survive such a motion, "it is enough that the complaint set forth allegations of fact consistent with and appropriate to some enforceable cause of action." We will affirm a superior court's dismissal "only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle [the plaintiff] to relief." We note that motions to dismiss for failure to state a claim are generally disfavored and should be rarely granted. | When reviewing an order granting a motion to dismiss for failure to state a claim upon which relief can be granted, the Supreme Court deems all facts alleged in the complaint true and provable. | Is a motion to dismiss for failure to state a claim looked upon with disfavour? | 036991.docx | LEGALEASE-00150340-LEGALEASE-00150341 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 18251 | Foss Mar. Co. v. City of Seattle, 107 Wash. App. 669 | 307A+581 | The City offers several arguments in an attempt to avoid the application of CR 41(b). None of these arguments is successful. First, the City argues that CR 41(b) does not apply because the issues of the case have not been joined. CR 41(b)(1) provides that it applies only "after any issue of law or fact has been joined." See also Lind v. Frick, 15 Wash.App. 614, 618, 550 P.2d 709 (1976) (CR 41(b)(1) motion to dismiss is not appropriate until after issues have been joined). According to the City, the issues have not been joined because the City has not yet participated in the case; indeed, the City is not required to participate in the case until the writ is issued. But in actions where no responsive pleading is required, such as this one, the rule regarding joinder of issues is that "[u]pon the filing of a petition or upon the return day of a writ, to which a responsive pleading is not required, an issue of law or an issue of fact is joined." State ex rel Washington Water Power Co. v. Superior Court for Chelan County, 41 Wash.2d 484, 490, 250 P.2d 536 (1952). Thus, the fact that the City has not yet participated in the case does not preclude the application of CR 41(b)(1). | Motion to dismiss for want of prosecution is not appropriate until after issues have been joined. CR 41(b)(1). | Is a motion to dismiss for want of prosecution appropriate until after issues have been joined? | 037015.docx | LEGALEASE-00150690-LEGALEASE-00150691 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 18252 | People v. McCreery, 34 Cal. 432 | 371+2001 | Taxes are charges imposed by or under the authority of the Legislature, upon persons or property subject to its jurisdiction. The power of taxation is a necessary incident to sovereignty, and under our system of government it pertains to the legislative department, for the levying of a tax is necessarily a legislative act. The tax must have its origin in a law, enacted for that purpose. | Taxes are charges, imposed by or under the authority of the legislature, upon persons or property subject to its jurisdiction. The tax must have its origin in a law enacted for that purpose. | Who authorize the imposition of taxes? | 045956.docx | LEGALEASE-00150530-LEGALEASE-00150531 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 18253 | Reed v. City of New Orleans, 593 So. 2d 36 | 371+2001 | The nature of a tax is determined not by its title, but by its incidents, attributes and operational effect. The realities and substance of the tax must be examined, not its form. City of New Orleans v. Scramuzza, supra; City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6 (1956); Fleischmann Co. v. Conway, 168 La. 547, 122 So. 845 (1929); Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341 (1927). | Nature of tax is determined not by its title, but by its incidents, attributes, and operational effect; realities and substance of tax must be examined, not its form. LSA-Const. Art. 6, S 29. | Does the title determine the nature of a tax? | 045966.docx | LEGALEASE-00150602-LEGALEASE-00150603 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 18254 | Ware v. Multibank 2009-1 RES-ADC Venture, 327 Ga. App. 245 | 83E+435 | In his eleventh enumeration of error, Ware asserts that the allonges submitted by Multibank in support of their motion for summary judgment failed to meet the necessary requirements for admissibility such that Multibank is unable to prove a valid assignment. "An allonge is a piece of paper attached to a promissory note on which parties write endorsements for which there is no room on the instrument itself." | An "allonge" is a piece of paper attached to a promissory note on which parties write endorsements for which there is no room on the instrument itself. | What is an Allonge? | Bills and Notes - Memo 218 - IS_59301.docx | ROSS-003281583 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 18255 | Harris v. Bradley, 15 Tenn. 310 | 83E+503 | This proposition is altogether fallacious. The holder of a bill or note has nothing to do with the preceding endorsements, and, whether genuine or not, his immediate endorser is liable to him. The last endorsement is, in fact, a guaranty of the preceding endorsements, and admits the handwriting of the drawer and prior endorser, although the bill be forged. Chitty on Bills, 197, 198; 3 Kent's Com. 60; 2 Salk. 127. The judge, therefore, properly admitted the note, with its endorsements, to be read to the jury, upon proof having been made of the endorsement by the defendant. | The last endorsement of a note or bill is a guaranty of all preceding endorsements; it admits the hand writing of the drawer and all prior endorsers; the last endorser is consequently liable, although the preceding endorsements were forgeries. | Is the last indorsement of a note a guarantee of all preceding indorsements? | Bills and Notes - Memo 809-PR_59305.docx | ROSS-003282168-ROSS-003282169 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 18256 | E.D. Fisher Lumber & Coal Co. v. Robbins, 104 Kan. 619 | 83E+432 | Although questioned, the transfer of the note from the plaintiff to the bank amounted to a commercial indorsement. It was an assignment without limitation and also as a guaranty of payment, and this has been held to pass title to the paper the same as a blank indorsement, as well as a guaranty of payment. The note being negotiable in form, the writing constituted a commercial indorsement which passed full title to the note free from equities as between the maker and the payee. Kellogg v. Douglas County Bank, 58 Kan. 43, 48 Pac. 587, 62 Am. St. Rep. 596; Farnsworth v. Burdick, 94 Kan. 749, 147 Pac. 863. | An assignment by a holder of a negotiable note written on the back thereof without limitation, to which a guaranty of payment is added, is a commercial indorsement. | Will the title of the note be passed by way of commercial indorsement? | 010725.docx | LEGALEASE-00151020-LEGALEASE-00151021 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 18257 | Galbreath v. Wallrich, 45 Colo. 537 | 38+97 | The fact that the railroad company subsequently canceled the tie contracts and refused to allow the defendants to fill them does not, of itself, impose any liability on plaintiffs. This act on the part of the railroad company was not taken because of any claim upon its part that the contracts had not been executed by it. The assignment of a nonnegotiable contract does not carry a warranty that it will be performed. The assignee merely impliedly warrants that the contract is what it purports to be; or, in other words, that it is genuine. 15 Ency. 1241; Giffert v. West, 33 Wis. 617; Daskam v. Ullman, 74 Wis. 474, 43 N. W. 321; Flynn v. Allen, 57 Pa. 482. By the contracts in question the plaintiffs were appointed agents of the railroad company to manufacture ties from timber on government lands in the vicinity of South Fork, and we shall assume, for the purposes of this case, that the assent of the railroad company to the assignment of the contracts was necessary, and were such an essential part of the business and property purchased that if they were not, in fact, obtained by the defendants, they were justified in electing to rescind their contract with plaintiffs. | Assignment of a nonnegotiable contract does not carry a warranty that it will be performed; but assignee merely impliedly warrants it is what it purports to be, and hence, where nonnegotiable contracts to furnish ties to a railroad were assigned, the mere fact that it subsequently canceled them and refused to allow assignees to fill them did not impose any liability on assignors. | Does the assignment of a nonnegotiable contract carry a warranty that it will be performed? | Bills and Notes-Memo 1059-IS_59332.docx | ROSS-003281177-ROSS-003281178 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18258 | Fed. Deposit Ins. Corp. v. Nobles, 991 F.2d 477 | 195r28 | As to Nobles second argument, that the UCC prevents the duty of good faith from being waived by agreement, we do not believe that the guaranty is governed by the UCC. The guaranty in this case is separate and apart from the promissory note. A guaranty that is a separate document is not considered a negotiable instrument and does not fall within the scope of the UCC. Unsecd Mortgage Co. v. Vukelich Condominiums, Inc., 877 F.2d 441, 444*15 (5th Cir.1989); Simpson v. MBank Dallas, N.A., 724 S.W.2d 102, 105*106 (Tex.App.*Dallas 1987, writ ref'd n.r.e.); Ham v. Berlew Corp., 529 S.W.2d 795, 799*900 (Tex.Civ.App.*Houston [1st Dist] 1975, no writ). Therefore, general contract law, rather than the terms of the UCC, applies. Simpson, 724 S.W.2d at 106. Under general contract law, waivers, such as those found in paragraphs 8 and 11 of the guaranty agreement, are valid and enforceable. | Should a guarantee be a part of the promissory note? | 01081.docx | LEGALEASE 00151371-LEGALEASE 00151372 | Condensed, SA, 0.74 | | 0 | 1 | 1 | 1 | 1 |
| 18259 | People v. McLemon, 2011 129r109 IL App (4d) 091299 | 129r109 | Defendant contends that he did not breach the peace. Generally, to breach the peace, a defendant's conduct must threaten another or have an effect on the surrounding crowd. See In re D. W., 150 Ill.App.3d 729, 731, 104 Ill.Dec. 186, 502 N.E.2d 419 (1986). But see People v. Allen, 288 Ill.App.3d 37, 183 Ill.Dec. 304, 611 N.E.2d 547 (1993) (upholding conviction where the defendant shouted at 2 a.m. in residential neighborhood, without crowd or threats). The test is whether the peace can occur without overt threats to provoke and abusive language. See People v. Davis, 82 Ill.2d 534, 45 Ill.Dec. 593, 413 N.E.2d 413 (1980); People v. Allen, 288 Ill.App.3d 502, 223 Ill.Dec. 865, 680 N.E.2d 795 (1997). Although the conduct of the defendant may have been disorderly, whether a breach of the peace took place, the acts must provoke in public. Davis, 82 Ill.2d at 538, 45 Ill.Dec. 935, 413 N.E.2d 413 ("A breach of the peace may as easily occur between two persons fighting in a deserted alleyway as it can on a crowded public street."). | What is breach of peace? | 01429.docx | LEGALEASE 00151325-LEGALEASE 00151326 | Condensed, SA, Sub 0.72 | | 1 | 1 | 1 | 1 | 1 |
| 18260 | Nino v. Jewelry Exch., 609 F.3d 191 | 25T+182(2) | The authorities upon which D relies do not compel a contrary conclusion. D relies on In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 279 F.2d 274, 981 (4th Cir.1995) and, in particular, its treatment of the court's observation that "the party seeking arbitration does not lose its contractual rights by prolonging its argument over the forum of arbitration." D appears to overlook the context in which the court made the cited statement. In Mackenzie, in the face of a customer demand for the right to seek arbitration because the defendant participated in discovery and pretrial conferences after it had filed its motion to compel arbitration. Id. at 982*83. There was no inconsistency between the defendant's litigation conduct and its intent to arbitrate in that case, because the litigation conduct in question transpired after the defendant had demanded arbitration. In our case, by contrast, D participated actively in the litigation for well over a year before moving to compel arbitration, meaning that its pursuit of discovery and its assent to pretrial orders is not remotely comparable to the conduct at issue in Mackenzie. D's long-term assent to the magistrate judge's pretrial orders weighs heavily in favor of a finding of waiver. | Does the party seeking arbitration lose its contractual rights by prudently pursuing discovery in the face of a court ordered deadline? | 00814.docx | LEGALEASE 00151469-LEGALEASE 00151490 | Condensed, SA, Sub 0.32 | | 0 | 1 | 1 | 1 | 1 |
| 18261 | Eron v. Meighan, 325 U.S. 100 | 50Br+9 | The question remains whether this issue should be so construed. There is to be a forfeiture "if the tenant shall be adjudged bankrupt or insolvent by any court." "Is said that "insolvent" is used interchangeably with "bankrupt" but that having stated a general case against it out of bankruptcy whether or not the debtor is insolvent. West Co. v. Lea, 174 U.S. 590, 19 S.Ct. 836, 43 L.Ed. 1098. The insolvency meaning herein "adjudged bankrupt" and "adjudged insolvent" do not cover precisely the same ground. Moreover, insolvency in the equity sense has always meant an inability of a debtor to pay his debts as they mature. Under the Bankruptcy Act it means an insufficiency of assets at a fair valuation to pay his debts. 11 U.S.C. § 1(15), 11 U.S.C.A. § 1(15). It was long the practice to initiate reorganizations in the federal equity courts by the filing of a general creditor's bill which alleged insolvency in the equity sense. These would accordingly seem to be no doubt that if a receiver were appointed pursuant to such a bill, it would bring into operation an express covenant providing for a forfeiture at a lease "in the lessee shall be adjudged insolvent by any Court." No reason is apparent why the same result should not obtain in cases of reorganization under Ch. X. | What does the term insolvency mean in the equity sense? | 01404.docx | LEGALEASE 00151523-LEGALEASE 00151525 | Condensed, SA, Sub 0.92 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18262 | Strawberry Point Bank v. Lee, 117 Mich. 122 | B.50/I-10 | The law of the place where a note is payable is applicable to the contract, and it governs as to the designation of any other place value? | Plaintiff, a corporation of Iowa, brought suit upon a note executed by the defendant for \$1,600, payable to X. A. Holbert, or order, at Osborn, Iowa. The note also contained the following provision: "Interest payable annually, and interest at the rate of eight per cent per annum after the same becomes due, until paid; and we agree, if this note is not paid when due, and the holder sees fit to retain a lawyer to collect it, any sum not paid when fees, to be assessed by the court, and based on a part of the cost, in any suit brought thereon." The defense was that the note was obtained by fraud. Plaintiff claimed to be a bona fide purchaser... Before due, if the note was payable in Michigan, it was not negotiable, and was therefore open to the defense of fraud as between the maker and payee... In Iowa, 59, N. W. 438. It is unnecessary to cite authorities to show that the law of the place where a promissory note or bill of exchange is made and delivered controls, in the absence of the designation of any other place, and, if any other place is designated, the law of that place governs. This is elementary. Plaintiff insists that the expression in the note, "We promise to pay A. B. Holbert, or order, at Greeley, Iowa," fixes the place of payment. There is no direct evidence as to where or when the note was delivered. It was dated in Michigan, signed in Michigan, and defendant resided in Michigan. The presumption therefore is that it was delivered in Michigan. The note fixes no place for payment, unless the fact that the note stated that the residence of the payee was in Iowa fixes the place. No authorities are cited sustaining this contention. The name of the payee in a mortgage is usually stated, but this does not make it a contract to be performed in the state where the mortgagee resides. | Is the law of the place where a note is payable applicable to the note? | 007P91.docx | LEGALEASE 00151612-LEGALEASE 00151614 | Condensed, SA, Sub D/93 | | 0 | 1 | 1 | 1 | 1 |
| 18263 | United States v. First Nat Bank, E.F. 410 | 29s+10 | A pension certificate or check drawn to the order of a person then deceased is absolutely void? | The questions of law involved in this case have been so often settled, and are so well understood, that it is almost impossible... Board after the war dead was an act utterly void, and the check itself was absolutely void, and no act of any one could breathe into it breath of life, or make it of any value whatever. When the defendant bank took the check from the said board, the position of the government, as I understand it, upon it is to know that the said legal holder of the said check, and I paid the money out of its own risk, and peril. This is true of any transaction of a similar nature, and I so hold by good reasons that being based upon a similar risk of holding at the barred questions. No laches of the government can be attributed in this case, and cannot possibly attach to the defendant. The loss sustained by reason of its own neglect in paying the check, it has received from the government of the United States the amount demanded in this suit, and there is no reason in law or equity why it should not be held responsible to reimburse the government in the full amount of the check thus improperly paid. The justice of the case requires it. I could have saved itself in the first place, but the government did not know of the forgery. It was in no attitude to know of it. The bank should have known that the indorsement was a forgery, and that the person who presented it was not the legal holder of the check. The government has discharged its full duty by having the party arrested, tried, and sentenced to the penitentiary for this offense. Justice has been done, and the government, I think, under the facts of this case, and the law in this case, and judgment will be entered accordingly. | Is a pension certificate or check drawn to the order of a person then deceased absolutely void? | 02288S.docx | LEGALEASE 00151572-LEGALEASE 00151573 | Condensed, SA, Sub D/95 | | 0 | 1 | 1 | 1 | 1 |
| 18264 | VSR Fin. Servs. v. McLendon, 409 S.W.3d 817 | 21+3 | What is the consequence of an affidavit not based on personal knowledge of the affiant? | The trial court sustained appellees' objection and struck the portion of Charles Chapman's affidavit in which he stated his "understanding that, pursuant to the... account opening agreements between McLendon, individually and on behalf of his affiliated entities, agreed that any and all controversies and claims arising from his accounts with VSR and any VSR representatives were to be brought to an arbitration proceeding..." The mere recitation that an affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for the knowledge. Valenzuela v. State Cnty. Mut. Fire Ins. Co., 317 S.W.3d 550, 553 (Tex.App.-Houston [14th Dist.] 2010, no pet.). The affidavit must explain how the affiant has personal knowledge. Id. An affidavit not based on personal knowledge is legally insufficient. Id. at 554; see also Dickson, 414 S.W.3d 654, 662 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (affiant stating that "understanding" of what was in contract and "belief" about who was driving vehicle is insufficient to establish personal knowledge)/d | What is the consequence of an affidavit not based on personal knowledge of the affiant? | Affidavits - Memo 41-_18jQFmHOLdDaJ8HU_dJ4kaqZDhQ69I.docx | ROSS-000003182-ROSS-000003184 | Condensed, SA, Sub D/89 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18165 | Traci Dinc, P.C. v. Bloch, 114 Mich. App. 350 | 971<106 | Conversion is any distinct act of dominion wrongfully exerted over another's personal property... | Checks are considered to be property of designated payee and may be subject of suit for conversion. | Are checks the property of the payee? | Bills and Notes - Memo 827 - RK_60133.docx | ROSS0302509,808 ROSS-000293509 | Condensed_SA | 0.9 | 0 | 0 | 0 | 1 | 1 |
| 18166 | Ryan v. May, 14 Ill. 49 | 83 E<481 | The plea states, that Ryan assigned the note to Thomas by a separate instrument... | The legal title to a note cannot be transferred by a separate instrument. | Can the legal title to a note be transferred by a separate instrument? | Bills and Notes - Memo 833 - RK_00139.docx | ROSS-000292574-ROSS-000292575 | Condensed_SA, Sub 0.9 | | 0 | | 1 | 1 | |
| 18167 | J.P. Morgan Delaware v. Onyx Arabians II, Ltd., 825 F. Supp. 146 | 149 k<155 | In Kentucky, a secured party has the burden to show that it acted with commercial reasonableness... | Under Kentucky law, secured party has burden to show that it acted with commercial reasonableness. | Who has the burden to prove the commercial reasonableness of an act under a contract? | Bills and Notes - Memo 341-PR_60104.docx | ROSS-000320664 | Condensed_SA, Sub 0.7 | | 0 | | 1 | 1 | |
| 18168 | Horvath v. Bank of New York, N.A., 641 | 83 E<426 | The question here is whether a lost mortgage note that an enforcing party... | Under Virginia law, negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred, whoever possesses an instrument endorsed in blank has full power to enforce it. West's V.C.A. § 8.3A-104, 8.3A-201(b), 8.3A-203(b), 8.3A-301(b). | Who can enforce an instrument endorsed in blank? | 010285.docx | LEGALEASE-00152367-LEGALEASE-00152368 | Condensed_SA 0.15 | | 0 | | 1 | 1 | |
| 18169 | Colburn v. Averill, 30 Me. 310 | 83 E<415 | The contract is to be construed as it was at the time it was made... | Where an instrument bears no date, it is presumed to have been made at the time of the inception of the note, so as to charge the indorser as maker or guarantor. | What will be the presumed date of an instrument of bill if it has no date? | 010444.docx | LEGALEASE-00152398-LEGALEASE-00152399 | Condensed_SA, 0.83 | | 0 | | 1 | 1 | |
| 18170 | National Mortg. v. MacPherson, 56 Misc. 3d 339 | 83 E<426 | The plaintiff may also establish its standing by demonstrating that it is the holder of the mortgage note with the contemplation of the Uniform Commercial Code... | Where the note is endorsed in blank, it may be negotiated by delivery alone. McKinney's Uniform Commercial Code §3-2-201(1), 3-204(2). | Where is note endorsed in blank, can it be negotiated by delivery alone? | 010719.docx | LEGALEASE-00152406-LEGALEASE-00152407 | Condensed_SA 0.71 | | 0 | | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18271 | Kelly v. Cent. Bank & Tr. Co. of Denver, 794 P.2d 1037 | 83E+428 | The term "indorsement" is generally understood to mean the indorser's writing of his or her signature on the instrument or the affixing of the indorser's name or some designation identifying the indorser on the instrument. La Junta State Bank v. Travis, 727 P.2d 48 (Colo.1986). A check simply inscribed "For deposit only" to an account other than payee's account and without the payee's signature is not an effective "indorsement." Central, Inc. v. Cache National Bank, supra; Mid-Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co., supra; Citizens Bank v. Thornton, 172 Ga.App. 490, 323 S.E.2d 688 (1984). | "Indorsement" means the indorser's writing of his or her signature on an instrument or affixing of the indorser's name or some designation identifying the indorser on the instrument, and a check simply inscribed for deposit only to an account other than payee's account and without the payee's signature is not an effective "indorsement.". | Does the word indorsement mean transfer upon the instrument? | 010761.docx | LEGALEASE-00152477-LEGALEASE-00152478 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 18272 | Morris v. Preston, 93 Ill. 215 | 83E+540 | If the notes were so pledged, did appellees, by the rules of law, acquire a lien, or shall the title of appellant prevail over such a pledge? It is not denied that she was the owner of the notes and that Durham had no interest therein. All know that bank bills, treasury warrants, notes payable to bearer, and bills and notes indorsed in blank, pass by mere delivery. Nor, when such paper is offered in payment or for sale, is the person receiving or purchasing it required to inquire as to the title of the holder unless he has notice or is put on inquiry. If he purchases in good faith the law will protect him. | Bills and notes indorsed in blank pass by delivery. The purchaser is not bound to inquire as to the title of the holder, unless he has knowledge of facts which, on inquiry, would lead to notice. So held as to notes placed in the hands of a banker, to sell for the payee as her agent, but who pledged them to secure a debt owing by himself to another bank; there being nothing to excite the pledgee's suspicion that her indorsement in blank did not make him absolute owner. | Can notes indorsed in a blank pass by delivery? | 010802.docx | LEGALEASE-00151883-LEGALEASE-00151884 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 18273 | Smith v. Highland Bank, 108 F.3d 1325 | 172H+1377 | Even apart from these differences, we believe that extending the Rodash rationale to the instant case is unwise, as both Congress and a recent panel of this court have indicated. Just over a year after our decision in Rodash, Congress enacted amendments to TILA, declaring a temporary moratorium on courts' certification of class action suits based on certain kinds of alleged deficiencies in the form of notice. 15 U.S.C. " 1640(i). Neither party alleges that this provision applies to the case at bar, but we agree with Highland and MAW that Congress's apparent disapproval of TILA claims arising out of notice forms counsels restraint here.4 Additionally, we note that, since Rodash, we have been unwilling to impose liability on lenders for unartfully-drawn forms and have refused to extend Rodash beyond its facts. In Veale v. Citibank, F.S.B., 85 F.3d 577, 580 (11th Cir.1996), cert. denied, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997), we characterized Rodash as standing for the proposition that "TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights." | Mortgagee did not violate Truth in Lending Act's (TILA) requirement of clear and conspicuous disclosure of right to rescind by including notice of right to cancel which contained, on same page, both "acknowledgment of receipt" confirming that mortgagee complied with TILA and "certificate of confirmation" that debtor was to sign after three-day rescission period to indicate that she had not exercised rescission rights; note stating that all parties executing acknowledgment of receipt had to execute certificate of confirmation was not misleading, but was to ensure that all signatories to acknowledgment of receipt concurred in decision not to rescind. Truth in Lending Act, S 125(a), 15 U.S.C.A. S 1635(a); 12 C.F.R. S 226.23(b)(1). | Should there be a perfect or a clear and conspicuous notice of rescission rights? | 013863.docx | LEGALEASE-00152439-LEGALEASE-00152440 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 18274 | Rosal v. First Fed. Bank of California, 671 F. Supp. 2d 1111 | 172H+1584 | To the extent that plaintiff attempts to state a claim for relief based on a violation of " 2603 or " 2604, he failed to plead a cognizable cause of action. There is no private right of action for disclosure violations under " 2603, Bloom v. Martin, 865 F.Supp. 1377, 1384"85 (N.D.Cal.1994), or under " 2604, Bamba v. Resource Bank, 568 F.Supp.2d 32, 34"35 (D.D.C.2008) (citing Collins v. FMHA"USDA, 105 F.3d 1366, 1367"68 (11th Cir.1997)). | There is no private right of action under the Real Estate Settlement Procedures Act (RESPA) for disclosure violations. Real Estate Settlement Procedures Act of 1974, SS 4, 5, 12 U.S.C.A. SS 2603, 2604. | Is there any private right of action for disclosure violations? | Consumer Credit - Memo 91 - SB_60166.docx | ROSS-003279822-ROSS-003279823 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 18275 | Nevitt v. Bonomo, 53 So. 3d 1078 | 285+159 | This court reviews de novo an order of dismissal for lack of standing. See Roos v. Morrison, 913 So.2d 59, 62 (Fla. 1st DCA 2005) (reviewing ruling on a motion to dismiss de novo ); see also Alachua County v. Scharps, 855 So.2d 195, 198 (Fla. 1st DCA 2003) (stating that whether a party has standing is a pure question of law which is reviewed de novo ). For purposes of ruling on a motion to dismiss, the trial court may look no further than the four corners of the complaint, and all allegations in the complaint must be accepted as true. Roos, 913 So.2d at 62. A reviewing court operates under the same constraints. Id. | Trial court erred in relying on nunc pro tunc order, vacating the final judgment of dissolution of mother's marriage, when dismissing putative father's complaint, asserting paternity claim to child conceived while mother was married but born after mother's divorce; the nunc pro tunc order was extrinsic to putative father's complaint, and thus, it could not be considered by the trial court in ruling on the motion to dismiss putative father's complaint. | "In ruling on a motion to dismiss, should a trial court confine itself to the four corners of the complaint?" | Pretrial Procedure - Memo # 8659 - C - KBM_60224.docx | ROSS-003285339-ROSS-003285340 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 18276 | In re First Interstate Bancorp Consol. S'holder Litig., 729 A.2d 851 | 307A+680 | Only well-pleaded facts are operative in the context of a motion to dismiss. See In re Tri"Star Pictures, Inc., Litig., Del.Supr., 634 A.2d at 326 (stating that conclusions "will not be accepted as true without specific allegations of fact to support them"). | Only well-pleaded facts are operative in the context of a motion to dismiss. | Are only well-pleaded facts operative in the context of a motion to dismiss? | 037777.docx | LEGALEASE-00151933-LEGALEASE-00151934 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 18277 | Turner v. 1212 S. Michigan P'ship, 355 Ill. App. 3d 885 | 307A+561.1 | A "motion to dismiss pursuant to section 2"619(a)(9) presents affirmative matters that avoid the legal effect of a plaintiff's claim." Hopewell v. Vitullo, 299 Ill.App.3d 513, 516, 233 Ill.Dec. 456, 701 N.E.2d 99, 101 (1998). The section thereby "furnishes a mechanism for the disposition of issues of law and easily proved issues of fact." Davis v. Chicago Police Board, 268 Ill.App.3d 851, 854, 206 Ill.Dec. 269, 645 N.E.2d 274, 276 (1995). As such, "it amounts essentially to a summary judgment procedure." Palmisano v. Connell, 179 Ill.App.3d 1089, 1097, 128 Ill.Dec. 638, 534 N.E.2d 1243, 1249 (1989). | A motion to dismiss based on claims being barred by other affirmative matters avoiding legal effect of or defeating the claims furnishes a mechanism for the disposition of issues of law and easily proved issues of fact; as such, it amounts essentially to a summary judgment procedure. S.H.A. 735 ILCS 5/2-619(a)(9). | Will a motion to dismiss essentially amount to a summary judgment procedure? | Pretrial Procedure - Memo # 8856 - C - MS_59853.docx | ROSS-003281231-ROSS-003281232 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 18278 | Uniprop v. Morganroth, 260 Mich. App. 442 | 308+1 | The principal has the right to control the conduct of his agent with respect to the matters entrusted to him. St Clair Intermediate School Dist. v. Intermediate Ed. Ass'n/Michigan Ed. Ass'n, 458 Mich. 540, 558, 581 N.W.2d 707 (1998). Furthermore, as noted, to qualify as a third-party beneficiary of Yaker's promise to pay plaintiff $333,000, plaintiff is required at the very least to show that there was a contract. | Principal has the right to control the conduct of his agent with respect to the matters entrusted to the agent. | Can a principal control the conduct of an agent? | Principal and Agent - Memo 219 - KC_60982.docx | ROSS-003280212 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 18279 | In re Arbitration Between Nat. Union Fire Ins. Co. of Pittsburgh, P.A. v. Pers. Plus, 954 F. Supp. 2d 239 | 25T+141 | Agency clearly applies here. Under traditional principles of agency law, "[o]ne who has not personally signed a contract will nonetheless be bound by it if he or she has signed it through an authorized agent." Brooks v. BDO Seidman, LLP, 25 Misc.3d 445, 883 N.Y.S.2d 450, 452 (Sup.Ct.2009). In order to bind a principal to an agreement signed by its purported agent, that agent must have actual or apparent authority to act on behalf of the principal. Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc., 241 F.Supp.2d 246, 260 (S.D.N.Y.2002). Actual authority exists when the principal's words or actions invest authority in the agent, whereas apparent authority arises from "representations made by the principal to a third party [that] created the appearance of authority," even if those representations are "not ... made through actual contact between the principal and third party." Id. at 261. | Temporary services provider had either actual or apparent authority to act as its affiliate's agent in signing agreements for workers' compensation insurance program, which thus were binding on affiliate, including payment agreement containing arbitration provision, where payment agreement defined parties to include named client and each of client's affiliated organizations, affiliate was named insured under provider's policies with insurer, provider's owners were parents of affiliate's owner, financial documents identified affiliate as "related party to" provider, one of provider's owners signed documents on behalf of both entities, and insurance broker submitted application materials on behalf of both entities in connection with insurance program. | Does an agent have actual authority? | Principal and Agent - Memo 229 - KC_60115.docx | ROSS-003292363-ROSS-003292364 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 23,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18290 | Packer v. Roberts, for Use of Hartward, 40 Ill. App. 613 | 83T+481 | The legal title to promissory notes in this State cannot be transferred by separate signature. Marx v. May, 343 Ill. 889; Corn v. Davis, 218 Ill. 131; Boynton v. Renwick, 469; 290 283; Badgley v. Votrain, 68 Ill. 25; Barrett et al. v. Hinckley, 124 Ill. 32; Chickering v. Raymond, 15 Ill. 362. | The legal title to a note cannot be transferred by assignment by a separate instrument. | Can the legal title to notes be transferred by a separate instrument? | 009759.docx | LEGAL EASE 00152990; LEGAL EASE 00152993 | SA, Sub | 0.71 | 0 | | 1 | 1 | |
| 18291 | Doughty v. Sullivan, 661 A.2d 1112 | 83T+472 | A plaintiff establishes a prima-facie case by showing that the money was delivered to the defendant, the money was intended as a loan and the loan has not been repaid. Cartney v. Olsen, 154 Neb. 546, 48 N.W.2d 653, 656 (1951); Imberenti v. Salmeriti, 137 N.Y.S. 1073, 1074 (N.Y.App.Div.1912). A promise by a debtor to repay the loan may imply a promise to repay. Neff v. Cantrell, 392, 280 A.2d 141, 143 (1972); Minavich v. Pumz, 9 A.3d 285, 33 N.Y.S.2d 833, 856 (1959). The existence of a promise... Nelson v. Matheny, 192 N.Y. 865, 871, 154 N.Y.S. 952 (No. 1955). When the parties have not specified any time for repayment, the loan is presumed... Wyatt v. Fulrath, 16 N.Y.2d 169, 264 N.Y.S.2d 382, 262 S.E.2d 366, 367-68 (1981); Minavich, 33 N.Y.S.2d at 886. | When parties have not specified any time for repayment of loan, loan is repayable on demand. Rules Civ. Proc., Rule 8(c), 15(b). | Does the loan become payable on demand when parties have not specified any time for repayment of loan? | Bills and Notes - Memo 85-15_00548.docx | R055-00313 01183 R055-00313 1882 | SA, Sub | 0.84 | 0 | | 1 | 1 | 1 |
| 18292 | Ft. Dearborn Nat. Bank v. Berrotti, 2 Tre. Civ. App. 642 | 83T+483 | Primal facts, the execution of a bill or note in the name of the firm by one partner binds the whole, and the burden of proving a lack of authority upon the part of the partner who executes the note devolves against parties against devolves upon the garnisher. Powell v. Messer's Admn'r, 18 Tex. 401; Ferris v. Irison, 19 Ga. 315, 6 S.W. 312... The note having been given for a valuable consideration will be held enforceable under the partnership business of the firm of which the appellee was a member, unless facts... appellant was not charged by the note itself, and perhaps not by the transferee of the note, for value. But Schuster & Co. knew of the transactions... actually a preferred before maturity, and it will be against equities even though it would escape the position of a bona fide holder for value, and appellee having had no knowledge as to such equities against the note. Baylies Co. 61, at 307. The proper and only complete way of transferring negotiable paper... Tex., 100 Mass. 18. But this is not the law in Texas, for it is provided in article 307, Sayles' Civ. St., that when a negotiable instrument has been endorsed, the payable for defense against it, then he shall be allowed to set up all... | Under Rev.St. Art. 307 (Vernon's Ann.Civ.St. art. 5633), providing that where a negotiable instrument has been assigned before its maturity by a valuable consideration without notice of any discount or defense against it, the assignor shall be compelled to allow only just discounts against himself, and which does not prescribe the mode in or manner in which an instrument is assigned which is transferred from one to another, the form of the transfer, and whether written or verbal being immaterial. | Is an instrument assigned when it is transferred from one to another? | Bills and Notes - Memo 88 F - M_00688.docx | R055-00313 01419 R055-00313 1412 | Condensed, SA, Sub | 0.81 | | 1 | | 1 | 1 |
| 18293 | Mullane v. Morris, 2 Fe. (B) | 25T+2 | A drawer is liable for interest according to the law of the place on which it is drawn. | The drawer of a bill of exchange is liable for interest according to the law of the place where it is drawn, in the absence of a stipulation to the contrary. | Is the rate of interest on a bill of exchange liable for interest according to law of the place of its making? | Bills and Notes - Memo 902 - BK_00701.docx | R055-00202 0397 R055-00312 0998 | Condensed, SA, Sub | 0.14 | 0 | 1 | | 1 | |
| 18294 | In re Melbourne V660, 231 B.R. 576 N.C.-F41 | 8.30T+76 | A check is nothing more than a bill of exchange drawn on a bank. 6.3.5.29-192, and is not payable or an assignment of any part of the funds to the credit of the creditor's drawer until the bank... until it is presented to and accepted by the bank on which it is drawn, or funds are withdrawn... 6.1.25-29.191 The drawer is at all times, prior to acceptance by the bank, at liberty to stop payment or to withdraw his funds from the bank. Thus the check secures no liens. | A check is not the equivalent of an assignment of any part of the funds to the credit of the creditor's drawer until the bank until it is presented and accepted by the bank on which it is drawn and drawer may at any time before acceptance by the bank stop payment or withdraw his funds from the bank. U.S.C.S. 5:29-192. | Does a drawer of a check has a right to stop its payment? | 003682.docx | LEGAL EASE 00153311 LEGAL EASE 00153312 | Condensed, SA, Sub | 0.14 | | 1 | | 1 | 1 |
| 18295 | In re Saw Corot. Corp., 17 B.R. 784 | 51+2674 | The third reason asserted by Hughes-Truitt and for breach of the debtor's obligation to join an answer or judgment, is that where the cause of action by Faulkrod is not entitled to be a judgment before an answer with that plan, Hughes-Faulkrod may nonetheless assert that claim as a defense... debt as a setoff of the claim... 11 U.S.C.A. 553 (1982). United States v. Bruner, 28:17 2d 555 (10th Cir. 1965); Brooks v. Assn Financial Services, 453 F.Supp. 359 (D.Neb.1977); In re Progressive Wallpaper Corp., 247, 467 (N.D.N.Y. 1917). | Bankruptcy Code allows setoff of mutual debts but only if what each owes other arises before bankruptcy, regardless of when that is owed or would, thus, allow creditor to raise discharged debt as defense to action brought by debtor regardless of when the confirmation of action is based on claim or cause of action which arose before bankruptcy, Bankr Code, 11 U.S.C.A. 553 (a)(1), 553. | Can a creditor offset a discharged debt? | 03 9684.docx | LEGAL EASE 00153320 LEGAL EASE 00153321 | SA, Sub | 0.52 | | | | 1 | |
| 18296 | Johnson v. Univ. of Iowa, 408 F.Supp. 2d 728 | 141T+990 | First establishes that Congress need not articulate its reasons for enacting a statute. A fit extension, a public university need not articulate its reasons for establishing a policy. Instead, university need not articulate in a policy does not change the fact that the policy, like most legislation sets, is the product of multitudes of... The adoption-leave clause under the pregnancy disability leave clause of the University's parental leave policy came as the result of different records of U.S.Supp. 359 (D.Neb.1977). In re Progressive Wallpaper or not, a state university is subject to the requirements of the Equal Protection Clause because it is a state actor. | Public university should articulate its reasons for establishing a policy. | Should a university articulate its reasons for establishing a policy? | 010760.docx | LEGAL EASE 00153358 LEGAL EASE 00153359 | Condensed, SA, Sub | 0.89 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18287 | Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876 | 141E+990 | Moreover, this interpretation is reasonable in light of the unique constitutional status of the University of California. As we explained in Campbell: "The California Constitution establishes the Regents [i.e., the University of California] as a "public trust ... with full powers of organization and government." (Cal. Const., art. IX, " 9, subd. (a).) We have observed that "Article IX, section 9, grants the [R]egents broad powers to organize and govern the university and limits the Legislature's power to regulate either the university or the [R]egents. This contrasts with the comprehensive power of regulation the Legislature possesses over other state agencies." (San Francisco Labor Council v. Regents of University of California (1980) 26 Cal.3d 785, 788 [163 Cal.Rptr. 460, 608 P.2d 277] ) This grant of constitutional power to the University includes the grant of quasi-judicial powers, a view that is generally accepted in our jurisprudence. (Ishimatsu v. Regents of University of California (1968) 266 Cal.App.2d 854, 864 [72 Cal.Rptr. 756]; see also Apte v. Regents of University of California (1988) 198 Cal.App.3d 1084, 1091 [244 Cal.Rptr. 312].)["] The Regents may also exercise quasi-legislative powers, subject to legislative regulation. Indeed, "policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes." (Regents of University of California v. City of Santa Monica (1978) 77 Cal.App.3d 130, 135 [143 Cal.Rptr. 276], citing Hamilton v. Regents (1934) 293 U.S. 245 [55 S.Ct. 197, 79 L.Ed. 343].) The authority granted the Regents includes "full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowment of the University and the security of its funds." (Goldberg v. Regents of University of California (1967) 248 Cal.App.2d 867, 874 [57 Cal.Rptr. 463].) Thus, "[t]he Regents have been characterized as "a branch of the state itself" | The grant of constitutional power to the University of California includes the grant of quasi-judicial powers. West's Ann.Cal. Const. Art. 9, S 9(a). | Does a grant of constitutional power to a university include quasi-judicial powers? | Education - Memo #107 C - ATS_60320.docx | ROSS-003283227-ROSS-003283229 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 18288 | Gibbs v. SLM Corp., 336 F. Supp. 2d 1 | 141E+1242 | As detailed above, Gibbs' loans were made pursuant to the Federal Family Education Loan Program established by the Higher Education Act of 1965, 20 U.S.C. "" 1701, et seq. The HEA does not expressly provide for a private cause of action, but, rather, "only provides for a suit brought by or against the Secretary of Education. 20 U.S.C. " 1082(a)(2). Indeed, the HEA provides an enforcement scheme which gives the Secretary of Education wide-ranging regulatory authority to enforce the provisions of the HEA." McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1221 (11th Cir.2002) (per curiam) (citing 20 U.S.C. "" 1070(b), 1071, 1082, 1094; 34 C.F.R. "" 668.84".98) | Lack of private right of action to enforce the regulations enacted pursuant to Higher Education Act (HEA) barred student loan borrower's breach of contract claim against student loan guarantor, loan processor, loan servicer, and loan collector to the extent that claim was based on failure to comply with regulations in connection with alleged interest overcharges. Higher Education Act of 1965, S 400 et seq., as amended, 20 U.S.C.A. S 1070 et seq. | Can a student Borrower assert a private right of action under the Higher Education Act? | 017052.docx | LEGALEASE-00152790-LEGALEASE-00152791 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 18289 | City of Washington v. Bd. of Assessment Appeals of Washington Cty., 550 Pa. 175 | 141E+990 | The fact that tuition charges are levied by W & J does not negate the college's status as a charity. | Fact that tuition charges are levied by private college, without more, does not negate college's status as purely public charity if it is otherwise entitled thereto. Const. Art. 8, S 2(a)(v); 72 P.S. S 5020-204(a)(3). | Is a college a charity if it charges tuition? | Education - Memo #163 C - ATS_60329.docx | ROSS-003282421-ROSS-003282422 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 18290 | Slivkoff v. Bd. of Trustees, 69 Cal. App. 3d 394 | 141E+990 | No such autonomy is accorded by the Constitution to the State University and Colleges. They have only such autonomy as the Legislature has seen fit to bestow. Consequently, the considerations which required that sections 18100"18105 of the Government Code be denied any effect in respect of the sick leave of employees of the University of California in Newmarker v. Regents of Univ. of Cal., 160 Cal.App.2d 640, 649, 325 P.2d 558, have no application to employees of the State University and Colleges. | State university and colleges have only such autonomy as the legislature has seen fit to bestow. West's Ann.Gov.Code, SS 18100-18105, 19143; West's Ann.Const. art. 9, S 9. | Is university bestowed autonomy by the legislature? | 017345.docx | LEGALEASE-00153742-LEGALEASE-00153743 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 18291 | Thistle v. Jones, 45 Misc. 215 | 108+7 | "A covenant can only be created by deed, but it may be as well by deed poll as by indenture, for the covenantee's acceptance of the deed is such an assent to the agreement as will render it binding on him. But the party must be named in the deed poll." And again: "It is undoubtedly true that a seal is essential to a covenant, and that an action of covenant can be based only on an agreement in writing under seal. In the case of a deed poll containing covenants to be performed by the grantee, the grantee, who has induced the grantor to give the deed in reliance upon the covenants, and who has accepted the deed and enjoyed the estate granted, is estopped from denying his covenants. He is estopped from denying that the seal attached to the deed is his as well as that of the grantor, and hence, when sued upon his covenants, the proof of the deed, and of his acceptance thereof and enjoyment of the estate, conclusively establishes that he has covenanted as stated in the deed." | Under Real Property Law (Laws 1896, p. 592, c. 547) S 207, providing that an estate or interest in real property other than a lease for one year cannot be created unless by deed or conveyance in writing subscribed by the person creating or granting the same, deeds conveying lands, or leases thereof, may be signed and executed by the grantor or lessor only; and if accepted by the grantee or lessee, covenants contained therein must be kept by him. | "In the case of a deed-poll containing covenants to be performed by the grantee, is the grantee estopped from denying his covenants?" | Estoppel - Memo #61 - C - CSS_60351.docx | ROSS-003282379-ROSS-003282380 | Order, SA, Sub | 0.54 | 1 | 0 | 1 | 1 | 1 |
| 18292 | Garden Realty Corp. v. Hadley, 110 N.J. Eq. 474 | 184+11(2) | The transaction under consideration was an exchange of properties. The figures "$415,000" and "$250,000" were used to represent the values of the properties which Mrs. Hadley was buying and selling. Both amounts were grossly excessive. Mr. Schmulling knew it, and Mrs. Hadley suspected it. She testified that she lost confidence in him to some extent when he said his property was worth $415,000. This was early in the negotiations. The difference between $415,000 and $250,000 is $165,000, and this was the basis on which the exchange was made. I think the actual difference in values was about $125,000; say $150,000 for Mrs. Hadley's property and $275,000 for complainant's property. Assuming that I am correct in this, Mrs. Hadley had the worst of the bargain by $40,000. Such a discrepancy is not a ground for setting aside the transaction. Equity does not interfere merely because a party makes an unwise deal.Representations by a seller as to the value of his property are not usually a basis for a claim of fraud. Robertson v. Criterion Construction Co., 140 A. 574, 6 N. J. Misc. R. 91. Value is a matter of opinion. | Seller's representations regarding value of property are not usually basis for claim of fraud, since value is matter of opinion. | "Can representations or statements by a seller or vendor, about the value of a property constitute fraud?" | 018336.docx | LEGALEASE-00153738-LEGALEASE-00153739 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18293 | Carlton v. United States, 385 F.2d 238 | 220+3179 | While it is true that the incidence of taxation is to be determined by viewing the entire transaction as a whole, Kanawaha Gas & Util. Co. v. C.I.R., 214 F.2d 685 (5 Cir. 1954), that rule does not permit us to close our eyes to the realities of the transaction and merely look at the beginning and end of a transaction without observing the steps taken to reach that end. C.I.R. v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981, 985 (1945). The requirement is that the transaction be viewed in its entirety in order to determine its reality and substance, for it is the substance of the transaction which decides the incidence of taxation. Century Elec. Co. v. C.I.R., 192 F.2d 155, 159 (8 Cir. 1951). In the instant case, while elaborate plans were laid to exchange property, the substance of the transaction was that the appellants received cash for the deed to their ranch property and not another parcel of land. The very essence of an exchange is the transfer of property between owners, while the mark of a sale is the receipt of cash for the property. See Mercantile Trust Co. v. C.I.R., 32 B.T.A. 82 (1935); Coastal Terminals, Inc. v. United States, 320 F.2d 333 (4 Cir. 1963); Alderson v. C.I.R., 317 F.2d 790 (9 Cir. 1963); Allegheny County Auto Mart, Inc. v. C.I.R., 39 T.C. 615, aff'd 208 F.2d 693 (3 Cir. 1953); W. D. Haden Co. v. C.I.R., 165 F.2d 588, 590 (5 Cir. 1948); Trenton Cotton Oil Co. v. C.I.R., 147 F.2d 33, 36 (6 Cir. 1945); see generally 3 Mertens, supra at " 20.28. | The very essence of an "exchange," for purposes of statute conferring advantage of tax free exchange, is the transfer of property between owners, while the mark of a "sale" is the receipt of cash for the property. 26 U.S.C.A. (I.R.C.1954) S 1031. | What is the difference between a sale and an exchange of property? | 018338.docx | LEGALEASE-00153758-LEGALEASE-00153759 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 18294 | In re Marriage of O'Hare & Stradt, 79 N.E.3d 712 | 76D+609 | We review de novo a trial court's dismissal pursuant to section 2-615 of the Civil Code. Blumenthal v. Brewer, 2016 IL 118781, 19, 410 Ill.Dec. 289, 69 N.E.3d 834."Such motions challenge the legal sufficiency of a pleading based on defects apparent on its face. [Citation.] In ruling on a section 2615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. [Citation.] It is well understood that the critical inquiry is whether the [factual] allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." Id. | Trial court did not err by refusing to accept as true conclusory allegations included in divorced father's motion to modify parenting time when considering divorced mother's motion to dismiss for failure to state a cause of action; while father asserted that a proposed modification of his parenting time that would have increased it by 6% was a minor modification and that such modification would have served child's best interest, these allegations were legal conclusions, not facts, and trial court was not required to accept these conclusory allegations as true, given that they were unsupported by specific factual allegations. 735 Ill. Comp. Stat. Ann. 5/2-615; 750 Ill. Comp. Stat. Ann. 5/610.5(e). | "In ruling on a motion to dismiss on the pleadings under section 2615, should a court accept as true all well-pleaded facts and all reasonable inferences that can be drawn from those facts?" | 037977.docx | LEGALEASE-00152919-LEGALEASE-00152920 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 18295 | Synovus Bank v. Mitchell, 206 So. 3d 568 | 30+3200 | "Dismissal under Rule 41(a)(1) is a question of law and, therefore, is reviewable de novo." Riverstone Dev. Co. v. Nelson, 91 So.3d 678, 681 (Ala.2012). | A dismissal by stipulation is a question of law and, therefore, is reviewable de novo. Rules Civ.Proc., Rule 41(a)(1). | Does the issue of whether a case should have been dismissed for failure to state a claim raise a question of law and is reviewed de novo? | 038080.docx | LEGALEASE-00153303-LEGALEASE-00153304 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 18296 | Fenlon v. Union Elec. Co., 266 S.W.3d 852 | 307A+680 | The key issue in Segraves, as here, is whether the tree creates an unreasonable risk of injury. As is clear from Segraves, whether Fenlon's tree created an unreasonable risk of injury is a question of fact. See also Branson West, Inc. v. City of Branson, 980 S.W.2d 604, 607 (Mo.App. S.D.1998) ("[W]hether the cutting of trees in constructing a utility line across an easement is reasonable and necessary is a question of fact.") Determination of a fact question is not appropriate on a motion to dismiss. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 314 (Mo. banc 1993). Rather, a motion to dismiss tests the adequacy of the pleadings. Because the pleadings were adequate to state a cause of action, the trial court erred in dismissing Fenlon's petition. Point denied. | Determination of a fact question is not appropriate on a motion to dismiss. | Is a determination of a fact question not appropriate on a motion to dismiss? | 038121.docx | LEGALEASE-00153531-LEGALEASE-00153532 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18297 | Watson v. McCabe, 527 F.2d 286 | 308+19 | It has been held in Tennessee that an attorney has no right to purchase real estate for his client unless so authorized. Washington v. Johnson, 26 Tenn. 468 (1846). Thus the issue becomes whether Appellant's attorney was, for purposes of the Statute of Frauds, "lawfully authorized" by Appellant to execute a written memorandum of sale. In Tennessee, an agent's authority or the evidence of his agency need not be in writing. Texas Co. v. Aycock, 190 Tenn. 16, 227 S.W.2d 41, 44 (1950). The person seeking to charge an alleged principal with the acts of an agent has the burden of proving agency. Batey v. D. H. Overmyer, 60 Tenn.App. 310, 446 S.W.2d 686, 693 (1969). The court in concluding that the complaint was not a sufficient memorandum of sale, noted that there was no proof of record that Appellant's attorney had been authorized to execute a memorandum of sale. As an alternative ground for its conclusion the District Court cited the holding in Davis v. Ross, 50 S.W. 650 (Tenn.Ch.App.1898). The Davis Court held that a complaint filed to disaffirm an oral contract for the sale of realty which set forth the contract terms and described the realty was nonetheless not a memorandum sufficient to satisfy the Statute of Frauds. | In Tennessee, person seeking to charge an alleged principal with acts of an agent has burden of proving agency. | Does an agency agreement have to be in writing? | 041286.docx | LEGALEASE-00153055-LEGALEASE-00153056 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 18298 | Jay v. Dollarhide, 3 Cal. App. 3d 1001 | 308+46 | Appellants made the point that the rights of Christiansen were terminated under the power of attorney by the death of Christiansen. It is the general rule that a power of attorney, being an agency, is terminated by the death of either the one granting the power or of the one receiving it. (2 Am.Jur., Agency, "" 59, 60, pp. 52-53.) Where a power is coupled with an interest, it is not terminated by death. (2 Am.Jur., Agency, " 65, p. 55, "" 77-78, pp. 61-64.) None of the powers of attorney to select the in lieu lands declared that they were irrevocable, nor that they were coupled with an interest. Assuming that the power of attorney to convey the in lieu land ever became operative, it is urged that it was coupled with an interest, since it was declared to be irrevocable, and the attorney-in-fact upon selection of the in lieu land had full power of disposition and the power to retain the proceeds. | Generally, power of attorney is terminated by the death of either the one granting the power or the one receiving. | Can death of either principal or agent terminate the relationship? | Principal Agent- Memo 32-AM.docx | LEGALEASE-00043320-LEGALEASE-00043321 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 18299 | In re Arbitration Between Nat. Union Fire Ins. Co. of Pittsburgh, P.A. v. Pers. Plus, 0614 F. Supp. 2d 289 | 25T+141 | Agency clearly applies here. Under traditional principles of agency law, "[o]ne who has not personally signed a contract will nonetheless be bound by it if he or she has signed it through an authorized agent." Brooke v. 1000 Scofnew, LLP, 213 Misc.2d 445, 683 N.Y.S.2d 650, 652 (Sup.Ct.2003). In order to bind a principal to an agreement signed by its purported agent, that agent must have had actual or apparent authority to act on behalf of the principal. Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc., 2411 Supp.2d 266, 265 (S.D.N.Y.2002). Actual authority exists where the principal's words or actions invest authority in the agent, whereas apparent authority arises from "representations made by the principal to a third party" [which] create "the appearance of authority," even if those representations are "not ... made through actual contact between the principal and third party." Id. at 261. | Temporary services provider had either actual or apparent authority to act as its affiliate's agent in signing agreement containing arbitration clause, where payment agreement defined parties to include named client and each of client's affiliated organizations, affiliate was covered by insurance provider's policies with insurer, provider's owners were parents of affiliate's owner, financial documents identified affiliate as "related party to," provider, one of provider's owners signed documents on behalf of both entities, and insurance broker submitted application materials on behalf of both entities in connection with insurance program. | Can an agents authority be apparent? | 04518.docx | USA/LEAE-00152824-USA/LEAE-00152825 | Condensed, SA, Sub | 0.15 | 0 | 1 | | 1 | 1 |
| 18300 | Merchants Nat. Bank of Aurora v. Frazier, 318 Ill. App. 391 | 369+3(5) | The basic difference between a trust and an agency is stated in 1 Scott on Trusts, sec.8, as follows: The agent acts for and behalf of the principal and subject to his control, a trustee as such is not subject to the control of his beneficiary, although he is under a duty to deal with the trust property for his benefit in accordance with the terms of the trust and can be compelled by the beneficiary to perform his duty. The agent owes a duty of obedience to his principal, but a trustee is under no duty to obey directions in the terms of the trust. An agent as such does not have title to the property of his principal although he may have power to pass title, a trustee has title to the trust fund. The incidents of the agency relation are different from those of a trust. An agent acting within the scope of his employment has power to subject his principal to liability in contract and in tort; the trustee, unless he is also an agent, has no such power. Liabilities which are imposed by law upon the agent because of property are imposed upon the principal and not upon the agent; such liabilities, however, are imposed upon the trustee and not upon the beneficiary." The essential distinctions between a trust and an agency are that the title and control of the property is in the trustee, which is not in his own name, while a title represents accounts for its the principal; and a trust may ordinarily be terminated by the fulfillment of its purpose, while an agency may in general be revoked at any time. See Light v. Scott, 88 Ill. 239. | An agent, as such, does not have title to the property of the principal, though he may be entrusted with possession and though he may have power to pass title. | Does an agent have title to the property of the principal? | 04170.docx | USA/LEAE-00153225-USA/LEAE-00153226 | Condensed, SA | 0.9 | | 1 | 1 | 1 | 1 |
| 18301 | Matter of DeCrisci Mach. Co., 33 B.R. 204 | 369+91(1) | Where the agent has authority to exercise discretion, the exercise thereof will bind the principal. Nowers v. Spragen, 30 Va. 512, S2s., 142 (1919) (citing Reserve Life Ins. Co. v. Salter, 152 So.2d 868, 872). Even if in violation of the principal's instructions, the agent's act will bind the principal when it acts in a manner which, to others, appears permitted agent to possess. Edwards v. Heralds of Liberty, 263 Pa. 548, . | Where agent has authority to exercise discretion, exercise thereof will bind principal. | "Does an agents exercise of discretion, bind the principal?" | Principal and Agent KC_00043.docx | ROSS-000230/8099A-ROSS-000230097 | Condensed, SA | 0.78 | | 1 | 1 | 1 | 1 |
| 18302 | In re EA, Nord Co., 75 B.R. 634 | 51+2954.1 | The Court further defined a tax as an "involuntary pecuniary burden" and as a non-contractual obligation imposed by state statute upon taxpayers who bare no consent to its imposition. The Court concluded that the debtor's obligation to the waiver district was based on a contractual mutual agreement, and therefore was not a tax and was not entitled to priority. | Is tax an involuntary pecuniary burden for the purpose of supporting the Government? | 04990.docx | USA/LEAE-00153341-USA/LEAE-00153342 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 18303 | Dr. J. L. Stephens Co. v. United States, 2018 F 817 | 138H+908 | This section prohibits the introduction into interstate commerce of any article mislabeled in regard to substance in the article or in the words of the statute, the meaning of the act. It also prohibits the shipment or delivery for shipment from any place in any territory or the District of Columbia where such article so adulterated or misbranded within the meaning of the act. The verbs "ship" and "deliver" are both transitive, and call for an object. The object is found in the words, "any such article so adulterated or misbranded within the meaning of this act," the antecedent of "such" and "so" is found in the first sentence of the section, in the words, "any article of food or drugs which is adulterated or misbranded within the meaning of this act." If the words of the statute were "wrong-on-this, and if the object of the transitive verb, "ship," and "deliver," should be found further along in the section, in the words, "any such adulterated or misbranded food or drugs," the meaning would be changed. But it cannot be so, however, that such mistaken as to the grammatical construction. | An information for misbranding medicine shipped in interstate commerce in violation of the Pure Food and Drugs Act, was not fatally defective for not alleging that the boxes or packages containing the bottles which were themselves labeled in so that the packages were also misbranded; the word "package" meaning the package ultimately passing to the consumer, and the words "original unbroken package" relating to the package in the form received by the retailer or consignee. | Does the law forbid the introduction into a state or territory from another state or territory an article of food or drugs adulterated or misbranded within the meaning of the law? | Adulteration - Memo 3 H_j8hz8qilnyk95SdPwd FkumcjCW0HD5.docx | ROSS-000000104-ROSS-000000105 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 18304 | Mount Prospect State Bank v. Forestry Recycling Sawmill, 93 Ill. App. 3d 448 | 23+1 | Technical deficiencies do not render affidavits improper (LaMonte v. City of Belleville (1976), 41 Ill.App.3d 697) 355 N.E.2d 70.) Substance and not form controls. If a document is in the nature of an affidavit, purports no requirement that the affidavit specifically attest to these facts. (See Midbauer v. Laverne (1972), 8 Ill.App.3d 43, 151 N.E.2d 46, 288 N.E.2d 212; Schroeder v. Abers Chem. Inc. (1966), 67 Ill.App.2d 224, 214 N.E.2d 136.) Though some of the facts stated in the appellants' and defendant's affidavit were stated by way of personal knowledge and opinion, on appeal, considered only those facts which were asserted on personal knowledge and competent, and has the believed that these parts of the affidavits we have considered conformed to Rule 191. | Technical deficiencies do not render affidavits improper; substance and not form controls. Supreme Court Rules, Rule 191, S.H.A. ch. 110A, § 191. | Is an affidavit controlled by its form or substance? | Affidavits - Memo 67_1vLYB7T12Vh9s3d5A SoNW9SlpOieAEUS.docx | ROSS-000002128-ROSS-000000229 | SA, Sub | 0.84 | | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18305 | Minyard v. Pipe & Supply Co., 565 S.W.2d 332 | 21+9 | Mere clerical omissions which do not obscure meaning will not invalidate an affidavit | Minyard's first argument is that the affidavit supporting the account was fatally defective because it failed to identify, in its introduction, the signer of the affidavit as the person who appeared before the notary public. Although the affidavit has a blank in which the affiant's name is supposed to appear, the name was not inserted, and Minyard argues that the name cannot be implied by the body of the affidavit. The mere clerical omission was cured by adding the words "sworn to and subscribed before me" immediately below the signature line. Once the notary thus attested both his signature and the swearing to it, it is immaterial to presume that the signing individual was also the affiant. Mere clerical omissions which do not obscure meaning and information in the affidavit will not invalidate an affidavit. See Texas State Bank v. Evans, 139 S.W.2d 120 (Tex.Civ.App.Waco 1939, no writ); Order of Aztecs v. Noble, 174 S.W. 623, 624 (Tex.Civ.App. Austin 1915, no writ). | Do mere clerical omissions invalidate an affidavit? | Affidavits : Memo 71 _Unlylabdu gfHgMcTMdTYmn$_Ah6 h06y.docx | RCDS-00000213 RCDS-00000218 | Condensed_SA | 0.91 | 0 | 1 | 0 | 1 | 1 |
| 18306 | Edlund v. Bounds, 842 S.W.2d 719 | 8.3H1+183 | Rules of construction governing contracts are applicable to notes, and note must be construed as a whole | It is well established that the rules of construction governing contracts are applicable to notes, and a note must be construed as a whole. Amarillo Nat'l Bank v. Didzio, 695 S.W.2d 814, 817. When the provisions of a contract appear to conflict, they should be harmonized if possible to reflect the intention of the parties. Ogden v. Dickinson State Bank, 662 S.W.2d 330. The parties to a contract intend every clause to have some effect and a court will not strike down any portion of the contract unless there is no reasonable basis upon it. If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court must construe the contract as a matter of law. Coker v. Coker, 650 S.W.2d 391. | Does a note have to be construed as a whole? | Bills and Notes : Memo 1000 - I5 RK_61277.docx 05D17988 | RCDS-00107867 RCDS-00107988 | Condensed_SA | 0.87 | 1 | 1 | 0 | 1 | 1 |
| 18307 | Burke v. Arnold, 836 S.W.2d 99 | 8.3H1+56 | Document which stated that former husband owed former wife certain amount plus interest but contained no promise to pay was not a "promissory note," but rather an acknowledgment of a preexisting debt. | Since this case must be remanded for a new trial, we think it appropriate to point out that the document relied upon by Mrs. Arnold has erroneously been referred to throughout this record as a "promissory note." It is not a "promissory note." It is nothing but the acknowledgment of a preexisting debt. It contains no promise to pay. We quote this portion in case a question is raised on remand over the correct treatment of the document. | Can a written debt without a promise to pay constitute a "promissory note"? | 000996.docx | LEGALEASE-00154705-LEGALEASE-00154706 | Condensed_SA_Sub | 0.52 | 1 | 0 | 1 | 1 | 1 |
| 18308 | Govens v. Stevens, 236 N.Y. 583 | 8.3H1+104 | Act and intention are the essential constituents of a delivery which makes an instrument operative according to its terms. The final question is, Did the obligor do such act in reference to it as evidences an intention to give it, in the possession or control of the obligee, effect and operation according to its terms? | The manual transfer of an instrument, or form a complete contract, does not, however, bar parol evidence that is not to become binding until the happening of some condition precedent resting in parol, or that the transfer is for a special purpose. Reynolds v. Robinson, 110 N.Y. 654, 18 N.E.127; Higgins v. Ridgway, 153 N.Y. 130, 47 N.E. 32; Burke v. Dulaney, 153 U.S. 228, 14 Sup.Ct. 816, 38 L.Ed. 698; Matsick v. Sprague, 200 N.Y. 390, 93 N.E. 1105. It is a question of fact whether any written agreement, though in possession of the obligee, has been delivered by the obligor as a binding agreement, or whether any delivery that has been made is conditional only. Vaski v. Gorham, 185 Mass. 597, 72 N.E. 1117; Benton v. Martin, 52 N.Y. 570; Blewitt v. Cleborne, 101 Mo. 32, 14 S.W. 74. Act and intention are the essential constituents of a delivery which makes an instrument operative according to its terms. Jarvis v. Rogers, 13 Mass. 105, 106, 110; J. Lowry & Co. 344 and intention are the essential constituents of a delivery which makes an instrument operative according to its terms. The final question is, Did the obligor do such act in reference to it as evidences an intention to give it, in the possession or control of the obligee, effect and operation according to its terms? Whenever there has been a delivery of the instrument for the purpose of giving it such effect, it becomes a present and completed contract and parol evidence cannot be given to contradict, vary, or modify its terms. Jamestown Business College Ass'n v. Allen, 172 N.Y. 291, 64 N.E. 952, 92 Am. St.Rep. 740; Wesley v. Cobb, 166 Mass. 500, 4 N.E. 497; Currie v. Mulsinger, 162 N.Y. 405, 56 N.E. 926; Whitaker v. Salisbury, 15 Pick. [Mass.] 534; Brown v. Wiley, 20 How. 442, 15 L.Ed. 965; Thomas v. Scutt, 127 N.Y. 133, 27 N.E. 961. | What is the essential ingredient of delivery? | Bills and Notes : Memo 850 - RK.docx | LEGALEASE-00043668-LEGALEASE-00043669 | Condensed_SA_Sub | 0.82 | 1 | 1 | 1 | 1 | 1 |
| 18309 | Corporacion Venezolana de Fomento v. Vintero Sales Corp., 452 F.Supp. 1108 | 8JI+408 | Under New York law, constructive delivery may be accomplished through agent. Uniform Commercial Code N.Y.-S 1-201(14). | Under the law of New York, constructive delivery may be accomplished through the vehicle of an agent. Thus, in Westin v. Security Bank, 170 App.Div. 139, 155 N.Y.S. 474, 476 (1915), the court, without opinion, 218 N.Y. 750, 113 N.E.1064 (1916) the Court stated that constructive delivery may be effected " "by direction to a third person in actual possession of the instrument to deliver it to, or hold it for, the payee." In a similar case, Werth v. Case, 42 N.Y. 162, 167 (1870), the Court of Appeals of New York observed, "There is no doubt that a delivery of a deed or note, or other obligation, to one person for the benefit of another; constitutes a valid and binding delivery as against the parties delivering, whether the party in whose favor it is delivered is aware of it or not; and for the purpose of passing title to the instrument, the law holds the party receiving the delivery as his trustee, and makes his acceptance of the acceptance of the beneficiary. And this, too, whether the person receiving the delivery knew of the contents of the instrument or not, and whether he does anything more than merely receive it or not." | Can constructive delivery be accomplished through an agent? | Bills and Notes : Memo 853 - RK.docx | LEGALEASE-00043674-LEGALEASE-00043675 | Condensed_SA_Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18310 | Ryan v. May, 14 Ill. 49 | 83E+481 | This action was brought upon a note payable to the bank, by Ryan, surviving assignee of the bank, in whom the legal title was vested by the assignment and several acts of the legislature. The defendant filed a plea in abatement, which states in substance, that Ryan was not the assignee of the bank, and had no legal interest in the note sued on, because he with others had, by a certain deed of indenture, conveyed and transferred the note to William Thomas. To this plea a replication was filed, averring that Ryan did not by indorsement on the note assign it to Thomas, so as to vest the legal title in him. To this replication a demurrer was filed, which was sustained by the circuit court, and judgment rendered for the defendant on the plea in abatement. The defence set up by the plea, was certainly not answered by the replication, and if the plea was good, the replication was undoubtedly bad. The plea states, that Ryan assigned the note to Thomas by a separate instrument. This statement is not denied by the replication, but that avers, that Ryan did not assign it by indorsement thereon. The plea in our opinion was insufficient. It did not show that the legal title to the note had passed out of Ryan. By our statute the legal title to a note cannot be transferred by a separate instrument in writing. The statute says that the note, bond, bill, &c., "shall be assignable by indorsement thereon, under the hand or hands of such person or persons, and of his, her, or their assignee or assignees in the same manner as bills of exchange are, so as absolutely to vest the property thereof in each and every assignee or assignees successively." This is the mode pointed out by the statute, and it must be pursued in order to vest a right of action in the assignee of a note. The plea, therefore, did not show that the legal title had passed from the plaintiff to Thomas. The demurrer should have been carried back to the plea. | The legal title to a note cannot be transferred by assignment by a separate instrument. | Can legal title to a note be transferred by a separate instrument in writing? | Bills and Notes - Memo 946 - RK_60806.docx | ROSS-003322381-ROSS-003322382 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 18311 | Dwight v. Newell, 15 Ill. 333 | 162+124 | The second plea raises the question whether one of two executors can assign a promissory note given to the testator, so as to vest the legal interest in the assignee. This question must be answered in the affirmative. It is well settled by authority that one of two or more executors possesses the power of disposing of the personal assets of the testator as fully as when all join in the act of transfer. They have a joint and entire authority over the personal estate, and the bona fide acts of one in respect to that estate are binding upon the whole. They constitute in law but one person representing the testator, and the act of one is deemed to be the act of all. Thus, a term of years passes by the assignment of one of several executors. A release of a debt by one binds all. A sale of a chattel by one transfers the title to the purchaser. And one executor may assign a promissory note made payable to the testator. The act of one is regarded as the act of all. Bacon's Ab., Executors and Administrators, D; Williams on Executors, 683; Wheeler v. Wheeler, 9 Cowen, 34; Murray v. Blatchford, 1 Wend. 583; Bogert v. Hertell, 4 Hill, 492. | One of several executors or administrators may assign a note made payable to the testator. | Can an executor assign a promissory note payable to his intestate? | Bills and Notes - Memo 948 - RK_60808.docx | ROSS-003323631-ROSS-003323632 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 18312 | Mullen v. E.D. Green Realty Co., 147 So. 115 | 83E+481 | In giving effect to Act No. 64 of 1904, there is no notice necessary to be given the debtor by the transferee of a negotiable note, in order to affect third persons.However, in this case, if articles 2642 and 2643 of the Revised Civil Code did govern, the intervener could not recover for he did not give notice of the transfer to Mary Waterman Evans, the debtor. | No notice to debtor by transferee of negotiable note is necessary under statute relating to transfer. Act No. 64 of 1904. | Is notice necessary for a negotiable note? | 009956.docx | LEGALEASE-00153824-LEGALEASE-00153825 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 18313 | Reed v. Chase Home Fin., 723 F.3d 1301 | 172H+1382 | In deciding whether the Assignment was an "administrative convenience" under " 1641(f), we must first consider the meaning of the term. Because TILA does not define "administrative convenience," we look to the ordinary meaning of the words. United States v. Silvestri, 409 F.3d 1311, 1333 (11th Cir.2005) ("Courts must assume that Congress intended the ordinary meaning of the words it used." (quotation marks omitted)). To determine the ordinary meaning of a term, "courts often turn to dictionary definitions for guidance." Id. (quotation marks omitted). The word "convenience" is defined by Merriam"Webster as "fitness or suitability for performing an action or fulfilling a requirement." Merriam"Webster Online Dictionary, http://www.merriam-webster.com/dictionary (last visited July 23, 2013). The word "administrative" connotes the act or process of managing or supervising. Id. Thus, the ordinary meaning of "administrative convenience" is that which allows performance of a managerial action or requirement. | Term "administrative convenience," as used in the section of the Truth in Lending Act (TILA) exempting from the Act's disclosure requirement assignments made solely for the administrative convenience of the servicer in servicing the obligation, means that which allows performance of a managerial action or requirement. Truth in Lending Act, S 131(f, g), 15 U.S.C.A. S 1641(f, g). | What is the ordinary meaning of the term administrative convenience? | Consumer Credit - Memo 44 - JK.docx | LEGALEASE-00043776-LEGALEASE-00043777 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 18314 | Sheridan v. Trustees of Columbia Univ. In City of New York, 296 A.D.2d 314 | 141E+1206 | We reject plaintiff's argument that as a degree holder he is in a fundamentally different position from the plaintiffs in cases holding that a university has no legal obligation to provide a diploma or transcript to a graduating student or former student with outstanding financial obligations to the university(see, Gray v. St. John's Univ., 2001 WL 1470319, 2001 N.Y. Misc. LEXIS 1044 [App.Term, 1st Dept.]; Martin v. Pratt Inst., 278 A.D.2d 390, 717 N.Y.S.2d 356 [2d Dept.], lv. denied 96 N.Y.2d 715, 729 N.Y.S.2d 442, 754 N.E.2d 202; Matter of Spas v. Wharton, 106 Misc.2d 180, 431 N.Y.S.2d 638 [Sup.Ct., Albany County] ). There is no merit to plaintiff's argument that defendant's refusal to forward his transcript to graduate schools effectively revokes his degree in violation of defendant's charter, Education Law " 226(9), and an implied promise by a university to its graduates not to interfere with the privileges and immunities of his or her degree. The challenged policy is clearly "expedient for carrying into effect the designs of [defendant's] institution", as expressly permitted by its charter, and, while the policy may compromise plaintiff's applications to graduate schools, it does not revoke defendant's certification that plaintiff possesses all of the knowledge and skills represented by the degree. | University could not be said to defraud degree holder into paying outstanding tuition by telling him that it would release his transcript if he obtained a bank loan and used it to reduce his obligation to the university, since holder was already legally bound to pay tuition. | Does a university has a legal obligation to provide a diploma or transcript to a graduating student with outstanding financial obligations? | 016806.docx | LEGALEASE-00153879-LEGALEASE-00153880 | Condensed, Order, SA, Sub | 0.79 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18315 | Koelling v. Wachsning, 174 Ill. App. 321 | 30+4869 | The defendant could not question by plea the validity of a judgment, the existence of which was admitted by recitals in the bond he executed and which were set out in the declaration. "It is familiar law," says the court in Harding v. Kuessner, 172 Ill. 125, "the obligors in an appeal bond are estopped to deny the recitals of the bond." In such a case the principle of estoppel is clearly applicable and rightly insisted on by demurrer. Smith v. Whitaker, 11 Ill. 417; McCarthy v. Chimney Construction Co., 219 Ill. 616. | In action on appeal bond, defendant could not question by plea, validity of judgment, existence of which was admitted by recitals in bond, he executed and which were set out in declaration; in such a case the principal of estoppel is clearly applicable and rightly insisted on by demurrer. | Are obligors estopped to deny the recitals of the bond? | 018041.docx | LEGALEASE-00153818-LEGALEASE-00153819 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 18316 | Gochenour v. Mowry, 33 Ill. 331 | 156+45 | Upon the other point, we understand the doctrine to be, if a conveyance be with general warranty, the subsequent title acquired by the grantor will inure by estoppel to the benefit of the grantee, and this for the purpose of avoiding circuity of action.1 McCracken v. Wright, 14 Johns., 194; King v. Gilson, 32 Ill., 348. And a subsequent purchaser from the mortgagor under his after acquired title is also estopped, if he had notice. Somes, Administrator, v. Skinner, 3 Pick., 58; Wark v. Willard, 13 N. H., 389; Jones et al. v. King, 25 Ill., 388. | A subsequent purchaser from a mortgagor under his after-acquired title is estopped if he had notice. | Is a subsequent purchaser from a mortgagor under his after acquired title estopped if he had notice? | 018062.docx | LEGALEASE-00154175-LEGALEASE-00154176 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 18317 | Bell Lines v. United States, 480 F.2d 710 | 220+3184 | In Coastal Terminals, Inc. v. United States, 320 F.2d 333 (4th Cir. 1963), we held:The purpose of Section 1031(a), as shown by its legislative history, is to defer recognition of gain or loss when a direct exchange of property between the taxpayer and another party takes place; a sale for cash does not qualify as a nontaxable exchange even though the cash is immediately reinvested in like property. [Emphasis added].320 F.2d at 337. See also Leo A. Woodbury, 49 T.C. 180, 197 (1967), acquiesced in, 1969-2 Cum.Bull. XXV; John M. Rogers, 44 T.C. 126, 133 (1965). | Taxpayer's sale of old trucks to third party and purchase of new trucks from dealer constituted a "purchase and sale" transaction rather than a nontaxable "exchange" and, therefore, for depreciation purposes, taxpayer could use actual cost of new trucks as their basis for tax years in question even though dealer had supplied funds to third party for purchase of the old trucks and later took most of the old trucks from the third party, where the taxpayer was obligated under purchase order and conditional sales contract to purchase the new trucks regardless of whether it sold the old ones and was not aware of the agreement between the dealer and the third party. 26 U.S.C.A. (I.R.C.1954) SS 1002, 1031, 1031(a, d); Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. | Does a sale for cash constitute an exchange of property? | 018296.docx | LEGALEASE-00154597-LEGALEASE-00154598 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 18318 | McGhee v. Young, 138 So. 3d 259 | 302+34(3.5) | McGhee fails to address any portion of her claim that a contract existed and was breached. The Mississippi Rules of Appellate Procedure mandate that a party cite authority in support of any argument raised on appeal. M.R.A.P. 28(a)(6). "Failure to provide authority for an assignment of error operates as a procedural bar, and this Court will consider those unsupported issues to be abandoned." Little v. Norman, 119 So.3d 382, 386 (" 14) (Miss.Ct.App.2013) (citation omitted). Nonetheless, "we will not discard a meritorious complaint simply because it is inartfully drafted." Id. (citation omitted). "But we have also held that pro se parties should be held to the same rules of procedure and substantive law as represented parties." Id. (citation omitted). | Court of Appeals will not discard a pro se party's meritorious complaint simply because it is inartfully drafted. | Will a meritorious complaint be discarded simply because it is inartfully drafted? | 023726.docx | LEGALEASE-00153931-LEGALEASE-00153932 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 18319 | Myers v. Majors, 242 Ark. 326 | 302+26 | We have stated many times that courts regard the substance of pleadings, rather than form, and we have also said that pleadings under the code are to be liberally construed. General Motors Acceptance Corporation v. Purkins, Judge, 204 Ark. 229, 161 S.W.2d 398. At any rate, after filing his answer, appellant amended same, as set out in Paragraph One of this opinion, by asserting that Majors' charges included additional casing, "which was used entirely because of the fault of the plaintiff in the alleged drilling of the well." This assertion, along with other allegations in the amendment, also heretofore mentioned constitutes an admission that some type of contract was entered into. | Courts regard substance of pleadings, rather than form. | "Do courts regard the substance of pleadings, rather than form?" | 023732.docx | LEGALEASE-00154167-LEGALEASE-00154168 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 18320 | Lynch v. Wolfinger, 163 Pa. Super. 405 | 302+26 | The foregoing disposes of the principal defect found by the court below in plaintiff's statement. Its animadversions upon other allegations need not be specifically noticed. Some lack the certainty and nicety of expression expected in pleadings, and others are manifestly mere surplusage. But, taken as a whole, and viewing it with the lenient eyes with which we always scrutinize pleadings where only their form is attacked, the statement sets out a cause of action. | Where only the form of a pleading is attacked, pleading will be viewed with lenient eyes. | "Where only the form of the pleading is attacked, will the pleading be viewed with lenient eyes?" | 023742.docx | LEGALEASE-00154460-LEGALEASE-00154462 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 18321 | DRMAK Realty LLC v. Progressive Credit Union, 133 A.D.3d 401 | 307A+679 | Plaintiffs argue that the voluntary doctrine should not apply because Klein was deprived of a meaningful choice as to whether to pay off the loan on defendant's terms. They further claim that Klein protested the demand and that this shielded plaintiffs from any application of the doctrine. Nothing in plaintiffs' complaint or papers in opposition to the motion suggests that these are viable positions. It is assumed, of course, that plaintiffs' factual allegations are true, both in the complaint and in opposition to the motion (see Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 414, 729 N.Y.S.2d 425, 754 N.E.2d 184 [2001] ). However, conclusory allegations will not serve to defeat a motion to dismiss (see Phillips v. Trommel Constr., 101 A.D.3d 1097, 1098, 957 N.Y.S.2d 359 [2d Dept.2012] ). Nothing in the complaint or the affidavit alleges any reason why Klein had no choice but to go through with the closing; indeed, he was able to put off the closing the firstv time he received from defendant what he considered an unreasonable payoff demand. Accordingly, the dissent's reliance on Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 389 N.Y.S.2d 314, 357 N.E.2d 970 (1976), which it claims required Supreme Court to convert the motion to one for summary judgment, is misplaced. That is because Rovello pres-supposes that "the complaint is sufficient on its face" (40 N.Y.2d at 634, 389 N.Y.S.2d 314, 357 N.E.2d 970). | Conclusory allegations will not serve to defeat a motion to dismiss. McKinney's CPLR 3211. | Will conclusory allegations not serve to defeat a motion to dismiss? | Pretrial Procedure - Memo # 9249 - C - RY_61036.docx | ROSS-003283493-ROSS-003283494 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 18322 | Leon Cty. v. Stephen S. Dobson, III, P.A., 917 So. 2d 278 | 307A+680 | When there are factual issues in dispute, an issue should not be resolved with a motion to dismiss. Mancher v. Seminole Tribe of Fla., 708 So.2d 327 (Fla. 4th DCA 1998). Therefore, we cannot resolve the factual dispute in question. Accordingly, we reverse the trial court's order of dismissal and remand for Appellees to raise their factual arguments that Maloy is not a public official according to the factors provided in Wilkinson. | When there are factual issues in dispute, an issue should not be resolved with a motion to dismiss. | "When there are factual issues in dispute, should an issue not be resolved with a motion to dismiss?" | Pretrial Procedure - Memo # 9274 - C - VA_61239.docx | ROSS-003285537-ROSS-003285538 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18123 | Myers v. Myers, 667 N.E.2d 1120 | 307k480 | The standard of review for the granting of a motion to dismiss is twofold. All facts in the plaintiff's complaint must be drawn as true, and the court must determine whether the plaintiff could prevail under any reasonable inference and intendment must be drawn in her favor. In passing on the sufficiency of the complaint, the court must consider the facts alleged... [cont'd] | Standard of review for granting of motion to dismiss is twofold. All facts in plaintiff's complaint must be drawn as true, and every reasonable inference and intendment must be drawn in plaintiff's favor from alleged facts. | Is the standard of review for the granting of motion to dismiss lenient? | 018054.docx | LEGALEASE-00151891-LEGALEASE-00151892 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | |
| 18124 | Dumell v. Matava & Hyde, 425 So. 2d 664 | 307k447.1 | For the purposes of this consideration, the court also must accept as true the allegations of fact contained in the plaintiff's pleadings. Orsini v. Sports Stadium, Inc. v. State ex rel. Powell, 262 So. 2d 883 (Fla. 1972), and the inference must be drawn in... which proceed to establish the proof, the court is not required to speculate as to what the allegations may be or what facts will ultimately be proved in the trial of the cause. Furthermore, a motion to dismiss may not be used as a substitute for a motion for summary judgment. Temple v. Marlade (industrial and defendant's... No. 82-1254 (Fla 4th DCA 2/2/83) | Motion to dismiss may not act as substitute for a motion for summary judgment? | 019326.docx | ROSS-003282150-ROSS-003282151 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | |
| 18125 | Ari & Fashion Grp. Corp. v. Cyclops Prod., 120 A.D.3d 456 | 307k4484 | The New York courts have relied on the basis of documentary evidence. A basis of action may be dismissed under CPLR 3211(a)(1) "only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 [2002]). In other words, the documents relied upon must "definitely dispose of [the] plaintiff's claim" (Blonder & Co v. Citibank, N.A., 28 A.D.3d 100, 103, 808 N.Y.S.2d 214 [1st Dept 2006]). Email correspondence can, in a proper case, suffice as documentary evidence for purposes of CPLR 3211(a)(1) (Amsterdam Hospitality Group, LLC v. Marshall Paul Associates, Inc., 120 A.D.3d 431, 98 N.Y.S.2d 201 [1st Dept 2014] [deeded email evidence]); however, [it] factual affidavits, however, do not constitute documentary evidence within the meaning of the statute (Flowers v. 73rd Townhouse LLC, 99 A.D.3d 411, 411, 951 N.Y.S.2d 393 [1st Dept 2012]). | Factual affidavits do not constitute "documentary evidence" on which dismissal may be based. McKinney's CPLR 3211(a)(1). | "Do factual affidavits not constitute "documentary evidence" on which dismissal can be based?" | 019326.docx | LEGALEASE-00154435-LEGALEASE-00154436 | Condensed, Order, SA, Sub | 0.88 | 0 | 1 | | 1 | |
| 18126 | United States v. Fattier, 108 F.3d 1466 | 361k513 | Reviewing all of these facts, and drawing all inferences in favor of the verdict, we cannot say that no rational juror could have found beyond a reasonable doubt that Fattier's statement was a threat. "Whether a given [statement] constitutes a threat is an issue of fact for the trial jury." Malik, 16 F.3d at 49. "the use of ambiguous language does not preclude a statement from being a threat. See id.; Schneider v. 1937 Fattier 14th... The threat in this case was ambiguous, but the task of interpretation was for the jury," Orozco-Santillan, 903 F.2d at 1265." The fact that a threat is subtle does not make it any less of a threat." (citation and quotation marks omitted); Manrove, 484 F.2d at 1358 finding demonstration of whether statement constitutes a "true threat" hinges on whether... Barclay, 452 F.2d 930, 934 (8th Cir. 1971) (Astrich, J., sitting by designation, dissenting) (contending that the interpretation of an ambiguous statement is for the jury). While the statement on its face may be susceptible to more than one interpretation, some factors will dispel doubt as to the record, such as the tone of the defendant's voice or the credibility of the government's and Fattier's witnesses, may legitimately lead a rational jury to find that this statement was a true threat. | Use of ambiguous language does not preclude statement from being a "threat." 18 U.S.C.A. § 1512(b)(3), (B)(1), (7), (9). | Does the use of ambiguous language preclude a statement from being a threat? | 040758.docx | LEGALEASE-00154803-LEGALEASE-00154804 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | |
| 18127 | F.D.I.C. v. 32 Edwardsville, 873 F. Supp. 1474 | 172H+1551 | The court concludes that plaintiff cannot assert a violation of the ECOA as an affirmative defense. Although defendant describes the affirmative defense as a failure of the guaranty, it is in reality asserting a breach of the ECOA violation as a basis for negating or denying her potential liability on the guaranty. The ECOA does not provide for the invalidation of a guaranty as a remedy for an ECOA violation, and defendive use of the ECOA in this case is therefore impermissible. Although the ECOA allows a court to grant equitable and declaratory relief, this court is of the view that the provision has concluded that the language does not give courts the power to invalidate guaranties. The Secretary v. Rottion... Multiple investor Fund, L.P., 857 F.Supp. 447, 453 (E.D.N.Y. 1994) ("ECOA's statutory scheme does not contemplate the invalidation of a guaranty as a remedy for an ECOA violation..."); Riggs Nat'l Bank of Washington, D.C. v. Webster, 832 F.Supp. 147, 151 & n. 5 (D.Md.1993) (finding that nature of invalidation applies to equitable remedies that were in the nature of a recoupment defense); Riggs Nat'l Bank of Washington, D.C. v. Linch, 829 F.Supp. 163, 169 (E.D.Va.1993) (holding that ECOA provision cannot be asserted as affirmative defense); aff'd, 36 F.3d 370 (4th Cir.1994); CMF Virginia Land, L.P. v. Brinson, 806 F.Supp. 90, 95 (E.D.Va.1992) (The ECOA does not "afford relief by way of an affirmative defense..."). | Equal Credit Opportunity Act (ECOA) does not provide for invalidation of guaranty as remedy for ECOA violation. Consumer Credit Protection Act, §§ 701(d)(1), 706(a)-(e), as amended, 15 U.S.C.A. §§ 1691(d)(1), 1691e(a)-(e); 12 C.F.R. § 202.7(d)(1). | Does the ECOA provide for the invalidation of a guaranty as a remedy for an ECOA violation? | Consumer Credit Memo 201 - BK_Child.docx | ROSS-003082729-ROSS-003082728-003082721 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18328 | Hayward v. Ryan, 85 N.J.L. 116 | 129+108 | Section 3 of the act above referred to declares that persons who shall loiter or assemble on the streets or public places of any city, being under the influence of intoxicating liquor, or who, not being under such influence, shall indulge in or utter loud or indecent language, or shall address or make audible offensive remarks or comment upon any person passing along such streets or public places, or shall obstruct or interfere with any person or persons lawfully being upon such streets or public places, shall be deemed and adjudged to be a disorderly person. This conviction by its terms is restricted to the latter paragraph of the section, and therefore to sustain this conviction there must be some evidence that this defendant did obstruct or interfere with persons lawfully upon a public street. A very careful examination of the evidence in this case fails to disclose anything which would justify this conviction. The first witness called was Charles H. Ryan, a member of the police force of the city of Paterson, who testified that on the day in question he saw a large crowd of people on Holsman avenue, and that he heard "yelling and hollering and saw people coming out on their porches and on the streets and threw open their windows"; that the defendant was leading the crowd on the street, which was so large that people coming from the opposite direction had to go in the street in order to get by. On cross-examination he said that the crowd was marching on the sidewalk in order, six or seven abreast, and that the defendant was leading the crowd when he arrested him. | Act Concerning Disorderly Persons, § 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Will a person who obstructs a person lawfully in a public place be deemed a disorderly person? | Disorderly Conduct Memo 15 i RK_61878.docx | ROSS/00291162-ROSS-00291163 | Condensed, SA, Sub 0.9 | 0.9 | | | 1 | 1 | |
| 18329 | Hayward v. Ryan, 85 N.J.L. 116 | 129+108 | Section 3 of the act above referred to declares that persons who shall loiter or assemble on the streets or public places of any city, being under the influence of intoxicating liquor, or who, not being under such influence, shall indulge in or utter loud or indecent language, or shall address or make audible offensive remarks or comment upon any person passing along such streets or public places, or shall obstruct or interfere with any person or persons lawfully being upon such streets or public places, shall be deemed and adjudged to be a disorderly person. This conviction by its terms is restricted to the latter paragraph of the section, and therefore to sustain this conviction there must be some evidence that this defendant did obstruct or interfere with persons lawfully upon a public street. A very careful examination of the evidence in this case fails to disclose anything which would justify this conviction. The first witness called was Charles H. Ryan, a member of the police force of the city of Paterson, who testified that on the day in question he saw a large crowd of people on Holsman avenue, and that he heard "yelling and hollering and saw people coming out on their porches and on the streets and threw open their windows"; that the defendant was leading the crowd on the street, which was so large that people coming from the opposite direction had to go in the street in order to get by. On cross-examination he said that the crowd was marching on the sidewalk in order, six or seven abreast, and that the defendant was leading the crowd when he arrested him. | Act Concerning Disorderly Persons, § 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Will a person who interferes with person lawfully in public place be deemed a disorderly person? | 01411.docx | LEGALEASE-00155768-LEGALEASE-00155769 | Condensed, SA 0.9 | 0.9 | | 1 | 0 | 1 | |
| 18330 | Hayward v. Ryan, 85 N.J.L. 116 | 129+108 | Section 3 of the act above referred to declares that persons who shall loiter or assemble on the streets or public places of any city, being under the influence of intoxicating liquor, or who, not being under such influence, shall indulge in or utter loud or indecent language, or shall address or make audible offensive remarks or comment upon any person passing along such streets or public places, or shall obstruct or interfere with any person or persons lawfully being upon such streets or public places, shall be deemed and adjudged to be a disorderly person. This conviction by its terms is restricted to the latter paragraph of the section, and therefore to sustain this conviction there must be some evidence that this defendant did obstruct or interfere with persons lawfully upon a public street. A very careful examination of the evidence in this case fails to disclose anything which would justify this conviction. The first witness called was Charles H. Ryan, a member of the police force of the city of Paterson, who testified that on the day in question he saw a large crowd of people on Holsman avenue, and that he heard "yelling and hollering and saw people coming out on their porches and on the streets and threw open their windows"; that the defendant was leading the crowd on the street, which was so large that people coming from the opposite direction had to go in the street in order to get by. On cross-examination he said that the crowd was marching on the sidewalk in order, six or seven abreast, and that the defendant was leading the crowd when he arrested him. | Act Concerning Disorderly Persons, § 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Is a person who obstructs a person lawfully in public place is a disorderly person? | 01411.docx | LEGALEASE-00155764-LEGALEASE-00155765 | Condensed, SA, Sub 0.9 | 0.9 | | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WNKS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,025 |
| 18131 | Haywood v. Ryan, 85 N.J. L. 116 | 129+108 | Section 3 of the act above referred to declares that persons who shall loiter or expand on the streets or public places of a city, borough, or village under the influence of intoxicating liquor, or who, not being under such influence, shall indulge in or utter loud or indecent language, or shall address or make audible offensive remarks or comment upon any person passing along such streets or public places, or shall obstruct or interfere with any person or persons lawfully being upon such streets or public places, shall be deemed and adjudged to be a disorderly person. This conviction by its terms is restricted to the latter paragraph of the section, and therefore to sustain this conviction there must be some evidence that this defendant did obstruct or interfere with some person being upon a public street. A very careful examination of the evidence in this case fails to disclose anything which would justify this conviction. The first witness called was Charles H. Flynn, a member of the police force of the city of Paterson, who testified that on the day in question he saw a large crowd of people on Hamburg avenue, and that he heard yelling and hollering and saw people coming out on their porches and in the streets and three or four other people came out on their porches and in the streets and three or four windows were opened, that the arrest was made by him, that he arrested the defendant because he was leading the crowd coming from the opposite direction, had to go in the street in order to get by. On cross-examination he said that the crowd was marching on the sidewalk in order, that no one was abreast, and that the defendant was leading the crowd when he arrested him. | Act Concerning Disorderly Persons, § 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Is a person who interferes with a person lawfully in a public place a disorderly person? | 01417.docx | LEGALEASE-00155762; LEGALEASE-00155763 | Condensed, SA, Sub 0.9 | 0.9 | 0 | | 1 | | |
| 18132 | Watson Clinic, LLP v. Verzosa, 816 So. 2d 832 | 156+311 | Equitable estoppel must be applied with great caution. Petlum Island Prop. Owners Ass'n v. Murphy, 354 So.2d 1173, 1182 (Fla. 2d DCA 1989). The party raising estoppel bust prove its elements by clear and convincing evidence. Ennis v. WarmMineral Springs, Inc., 203 So.2d 514, 519 (Fla. 2d DCA 1967). These elements are: (1) the party against whom estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts; (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed its position to its detriment based on the representation and the reliance on it. State v. Dep't of Health & Rehab. Servs., 639 So.2d 1205, 1256-57 (Fla. 4th DCA 1995). | Equitable estoppel must be applied with great caution. | Must equitable estoppel be applied with great caution? | 01714.docx | LEGALEASE-00155538; LEGALEASE-00155539 | Condensed, SA | 0.93 | | 0 | 1 | | |
| 18133 | McKay v. Mayer, 100 Wash. 270 | 322H+925 | An executory contract for the sale of land may be rescinded by mutual consent. Such rescission may be oral if there is a sufficient part performance to satisfy the statute of frauds. In Browning v. Sooner v. Drake, 6 Wash. 285, 30 Pac. 82, 33 Pac. 319; Sooner v. Foett, 55 Wash. 80, 157 Pac. 235, Wasden v. Stone, 64 Wash. 551, 152 Pac. 965, in each case there was full performance, and the oral agreement to rescind was recognized by the surrender of the contract upon the one hand and of the notes upon the other. Following the cited precedents. The appellants' interest in the land wholly ceased upon such surrender and abandonment of their interest in the land. | An executory agreement for the sale of land or real estate be rescinded or abrogated by oral rescission or agreement? | Can an executory agreement for the sale of land or real estate be rescinded or abrogated by oral rescission or agreement? | 01827.docx | LEGALEASE-00154968; LEGALEASE-00154969 | Condensed, SA | 0.89 | 0 | | 1 | | |
| 18134 | Ex parte Edmonds, 383 S.W.2d 579 | 302+38 | Respondent complains of relators' pleading in that relators' petition did not properly describe the purpose for which the City of Fort proposes to use the property in question. It was under this pleading it is impossible for the commissioners to establish the separate damages to the remainder of plaintiff 's land because they are not put on notice as to what sort of damages may be looked, whether above ground or underground, or the origin of easement fluid is to be claimed or the dedication of the fluid, as occasion for such damages done in question under oath in their County Court where they are filed. A mere defect in pleadings does not make the proceeding void, but pleadings contested, it may be subject to amendment after proper objection has been sustained. | More defect in pleadings does not make proceeding void, but pleadings may be subject to amendment after proper objection has been sustained. | Will a mere defect in pleadings make the proceedings void? | 01957.docx | LEGALEASE-00155221; LEGALEASE-00155222 | Condensed, SA, Sub 0.84 | 0.84 | | 0 | 1 | | |
| 18135 | Blackwell v. Howard Indus., 98 So. 3d 463 | 413+1374 | However, we also find that the circuit court may consider lesser sanctions against Blackwell's counsel. In Yates Bros. Sales, Inc. v. Mississippi Manufacturers Ass'n, the Mississippi Supreme Court noted the consideration of lesser sanctions: "Appropriate," 714 So.2d hearing on employer's motion to dismiss, claimant's counsel failed to notice from the court clerk, Allied's motion to dismiss provided constitutional notice that the claim, and the employer's evidence that notice provided further stated the administration of justice was hindered when Van Meter, who was under a duty to insure that proper appellate procedures were complied with, sat back and allowed his client to give him actual notice of something of which he was already had constructive notice in violation of MRCP 11 & 83. "Lesser sanctions include "fines, costs, or damages against counsel for his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." American Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 181(¶[21] (Miss.1998) (quoting Wallace v. Jones, 572 So.2d 371, 377 (Miss.1990)). | Consideration of lesser sanctions than dismissal for failing to comply with appellate briefing requirements would have been appropriate against claimant's counsel, despite having notice of hearing on employer's motion to dismiss, claimant's counsel failed to appear, and subsequently in the pretrial and review of requesting appellate brief were not necessary and "simply busy work," and counsel's disregard for the rules and deficiencies in the counsel's time, was disrespectful and inexcusable. Rule. App.Proc., Rule 28(a). | "Do lesser sanctions, include fines, costs, or damages against plaintiff for his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings?" | Pretrial Procedure - Memo # 10004 - C - IG.docx | LEGALEASE-00044954; LEGALEASE-00044955 | Condensed, SA, Sub 0.52 | 0.52 | 0 | | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18336 | Prahl v. Brosamle, 142 Wis. 2d 658 | 30+4823 | We agree, for delay is one of the basic impediments to the fair administration of justice. A plaintiff who has invoked the judicial process to advance a claim, especially in a trial court system stretched to its limits by those seeking its assistance, cannot sit back *671 for three years, waiting for someone else to take the initiative, and then be heard to argue that the case should not be dismissed for lack of prosecution. We believe this is especially so where, as here, the case had already been pending for nearly a decade when it was returned to the trial court in 1984. The dismissal remedy under sec. 805.03, Stats., is designed "to punish the suitor who sleeps away his [or her] day in court," Hine v. Grant, 119 Wis. 332, 336, 96 N.W. 796, 797 (1903), and we see nothing unreasonable about the trial court's order in this case. It was a proper exercise of discretion and a reasonable sanction for an egregious failure to prosecute the action.] | Plaintiff's action could be dismissed for lack of prosecution where it was undisputed on the evidentiary record that, following reversal of summary judgment for defendant on appeal and remand for trial, plaintiff made no effort to move the case to trial for more than three years and his only explanation for his failure to take any action in the case or to even inquire about its status was that he was relying on the court to move the case to trial, particularly as the case had already been pending for nearly a decade when it was returned to the trial court. W.S.A. 805.03. | Is a dismissal remedy for failure to prosecute designed to punish the suitor who sleeps away his or her day in court? | 039223.docx | LEGALEASE-00155243-LEGALEASE-00155244 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 18337 | Lapham v. Green, 9 Vt. 407 | 308+183(0.5) | If an agent do not disclose his principal, the suit may be brought in the name of either. Young v. Hunter, 4 Taunton, 582. | In contracts, made by agents, without disclosing the principal, the suit, to enforce them, may be in the name of the principal or agent. | Who can bring suit for the breach of a contract made when an agent did not disclose his principal? | Principal and Agent - Memo 320 - RK_61918.docx | ROSS-003307025-ROSS-003307026 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 18338 | Graham v. Mut. Life Ins. Co. of New York, 176 N.C. 313 | 308+92(1) | No one claims, or even hints, that Mrs. Wall knowingly perpetuated a fraud, but it is evident she made an honest mistake in her calculations. She was furnished with the usual insurance literature, among which was a lot of printed forms of Exhibit No. 2. She was also furnished a rate book, and from this rate book she would fill in illustrations and examples under the guaranties. It was impossible to furnish printed literature with the amounts all printed. The policies varied in amount, and the values varied with the ages of the insured. The local agent, in canvassing for insurance, would take the literature and fill in from the rate book the figures applicable to the amount and age of the person canvassed. Mrs. Wall had no authority to bind the defendant by this paper, even if it were a contract in form. She was a mere local soliciting agent, with no power to bind her principal. Such agency is one of limited powers, as shown by the agency contract between Mrs. Wall and defendant. 17 Cyc. 475 (3); Gwynn v. Setzer, 48 N. C. 383; McFarland v. Patterson, 4 N. C. 421. The plaintiff has failed to show any authority upon part of Mrs. Wall to make the guaranties claimed. As is said by Ruffin, J., in Biggs v. Insurance Co., 88 N. C. 143:"When one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract. Under any other rule, every principal would be at the mercy of his agent, however careful he might limit his authority." | Where one deals with an agent, it behooves him to ascertain correctly the extent of the agent's authority and power to contract. | "Is the principal at the mercy of his agent, however carefully he might limit his authority?" | Principal and Agent - Memo 345 - RK_61933.docx | ROSS-003293666-ROSS-003293667 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 18339 | Sullivan v. Bickel & Brewer, 943 S.W.2d 477 | 21+12 | An affidavit is defined as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." Tex.Gov't Code Ann. " 312.011 (Vernon 1988). An unsworn statement is not competent summary judgment proof. Elam v. Yale Clinic, 783 S.W.2d 638, 643 (Tex.App."Houston [14th Dist.] 1989, no writ). An acknowledgment is not sufficient to replace the jurat required by the statute. Perkins v. Crittenden, 462 S.W.2d 565, 568 (Tex.1970). Without the jurat, the instrument is not an affidavit within the statutory definition. Perkins, 462 S.W.2d at 568. | In determining whether instrument meets statutory requirements for affidavit, acknowledgement is not sufficient to replace jurat required by statute. V.T.C.A., Government Code S 312.011. | Can an acknowledgement be sufficient to replace the jurat required by statute? | Affidavits - Memo 88 - _1rWVyvoOKIZ5iswodPUCMUCC8EsFixaJm.docx | ROSS-000000270-ROSS-000000271 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 18340 | Fawsett v. Nat'l Life Ins. Co. of U.S., 97 Ill. 11 | 83E+375 | It is not pretended that appellee, when it purchased the notes, had actual notice that appellant, Fawsett, had any title to or interest in them, but the argument is, that the indorsement written over the signature of Fawsett is restrictive; that the notes were not, in fact or in law, transferred to the Second National Bank of Monmouth; that "an indorsement of a promissory note, for collection or for account of another, or for the use of another, is restrictive, and suspends the negotiability of the note while it remains upon it." | The payee of a note indorsed it in blank. The transferee filled up the blank, making the note payable to a bank (without the words "or order") for collection on his account. The bank, failing to collect, returned it to him, indorsed by its cashier, "Without recourse." He then reindorsed and retransferred it to the plaintiff. Held, that the indorsement to the bank written over the payor's signature did not affect the note's negotiability. | Does an indorsement for collection suspends or destroys the negotiability of the note? | 010741.docx | LEGALEASE-00156401-LEGALEASE-00156402 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 18341 | People, on Complaint of Whelan, v. Friedman, 6 Misc. 2d 271 | 129+108 | The right to conduct a street meeting is not absolute and is not guaranteed by the Constitution. In People ex rel. Doyle v. Atwell, 232 N.Y. 96, 133 N.E. 364, 365, 25 A.L.R. 107, the constitutionality of an ordinance of the city of Mt. Vernon which prohibited public meeting on the street unless a permit was first obtained from the mayor was upheld. The defendants were arrested for addressing a meeting without any permit. The court said: "Public meetings and assemblages held on the streets tend to obstruct the streets and destroy in a measure the very purpose for which they have been dedicated. The people have many constitutional rights, the exercise of which on the public streets may be prohibited. | In prosecution for disorderly conduct by holding a public meeting on a street and refusing to obey a police officer's order to move on, defendant could not successfully claim that his constitutional rights of free speech and to conduct public meetings in the street had been violated, since the right to conduct a public meeting in a street is not absolute and is not guaranteed by Constitution. Penal Law, S 722, subds. 2, 3. | Is the right to conduct a street meeting absolute? | Disorderly Conduct - Memo 4 - KC_62332.docx | ROSS-003306584-ROSS-003306585 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 18342 | Straw Pond Assocs. v. Fitzpatrick, Mariano & Santos, P.C., 167 Conn. App. 691 | 302+34(1) | "[T]he interpretation of pleadings is always a question of law for the court.... We have pointed out that [t]he burden [is] upon the pleaders to make sure averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define clearly the issues in dispute, the court will put such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties." (Citations omitted; emphasis in original; internal quotation marks omitted.) Cahill v. Board of Education, 198 Conn. 229, 236, 502 A.2d 410 (1985). | Interpretation of pleadings is always a question of law for the court. | Is the interpretation of pleadings always a question of law for the court? | 023785.docx | LEGALEASE-00155998-LEGALEASE-00155999 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18343 | Nevelson v. Carro, Spanbock, Kaster & Cuiffo, 290 A.D.2d 399 | 302+64(1) | We modify solely to dismiss the redundant claims for breach of contract and breach of fiduciary duty, which are predicated on the same allegations and seek relief identical to that sought in the malpractice cause of action (see, Sage Realty Corp. v. Proskauer Rose, LLP, 251 A.D.2d 35, 38, 675 N.Y.S.2d 14, citing Santulli V. Englert, Reilly & McHugh, P.C., 78 N.Y.2d 700, 579 N.Y.S.2d 324, 586 N.E.2d 1014). Contrary to plaintiffs' assumption, it is not the theory behind a claim that determines whether it is duplicative. | It is not the theory behind a claim that determines whether it is duplicative. | Is it the theory behind a claim that determines whether it is duplicative? | 023807.docx | LEGALEASE-00156375-LEGALEASE-00156376 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Question Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18844 | Simmons v. Nunez, 15 N.J.2d 1269 | 307A-676 | In considering whether dismissal is warranted for a party's lack of prosecution, a trial court may take into account the entire history of the litigation, including a party prior dilatory conduct. prior at 372, 678 N.E.2d 510. A trial court's orders in such motions are not to be taken lightly. We may review Circle, 50 Ohio App.3d at 182, 637 N.E.2d 355. The harsh remedy of dismissal with prejudice is warranted when the record shows that a party has repeatedly, deliberately and without explanation, failed to comply with the trial court orders. In Pembaur v. Link, 1 Ohio St.3d 89, 42374, [2] 12 1109 (1986), syllabus, the Ohio Supreme Court held that "it is not an abuse of discretion for the trial court to dismiss an action, with prejudice, for lack of prosecution" where "a plaintiff voluntarily fails to appear at a hearing, without explanation, after the court has directed him to be present and his inaction is unknown" even to his counsel. In Pembaur, the plaintiff failed to attend a status conference, leading the defendant to file a motion to dismiss for failure to prosecute. | Before a trial court on properly dismiss a party's claim for failure to prosecute, the record must show that the party had notice of the litigation and failed to comply with the trial court orders? | Is the harsh remedy of dismissal with prejudice warranted to where the record must show that the party had notice of the litigation and failed to comply with the trial court orders? | Pretrial Procedure - Memo # 12804 - C - HE_42749.docx | ROSS:00327969&8-ROSS-00327969 | Order, SA | 0.82 | 1 | 0 | 1 | 1 | 1 |
| 18845 | Johnson v. Du Page Airport Auth., 268 Ill. App. 3d 409 | 307A-690 | [The term "merits" has been defined as, "the real or substantial grounds of an action or defense as distinguished from matters of practice, procedure, jurisdiction, or form" (Gipp v. United States [20th Cir. 1948], 117 F.2d 886, 887; see also Pratt v. Pratt Brothers, Inc. [1980], 100 Ill.App.3d 873, 336 Ill.Dec. 395, 565 N.E.2d 1163). When there is no adjudication on the merits, a dismissal should be granted without prejudice, as opposed to granting dismissal with prejudice. (See Sweeney v. Citicorp Person"ts"Person Financial Center, Inc. [1981], 337 Ill.App.3d 102, 115b, 93 Ill.Dec. 612, 485 N.E.2d 4221. In the case of the parties in the same position as if the case had never been filed. [Tierney v. Burlington Northern R. Co. [1992], 240 Ill.App.3d 526, 181 Ill.Dec. 406, 608 N.E.2d 473.) Conversely, "a dismissal with prejudice constitutes an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim. "(Emphasis added.) Regas v. Oliver [1991], 244 Ill.App.3d 876, 881, 186 Ill.Dec. 814, 617 N.E.2d 283.53. | Where there is no adjudication on merits, dismissal should be granted without prejudice, rather than granting dismissal with prejudice. | "Where there is no adjudication on the merits, should a dismissal be granted without prejudice? | 02661.docx | LEGALEASE 00155916-LEGALEASE 00155919 | Condensed, SA, Sub 0.88 | | 0 | 1 | 1 | 1 |
| 18846 | Cearns v. Cearns, 154 N.J. 394 | 3.77E+03 | The need to consider a plaintiff's history of abuse in evaluating a domestic violence complaint is consistent with the requirements of the two listed crimes of assault and terroristic threats and harassment. The crime of terroristic threats, a third degree offense, is committed when a person "threatens to kill another with purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out." N.J.S.A. 2C:12-3(b). Proof of terrorist threat must be measured by an objective standard. State v. Smith, 262 N.J.Super. 487, 515, 621 A.2d 493 (App.Div.), certif. denied, 134 N.J. 476, 634 A.2d 523 (1993); see also State v. Kortheinz, 118 N.J.Super. 472, 476, 288 A.2d 982 (App.Div.) [interpreting former statute], certif. denied, 60 N.J. 291 A.2d 37 (1972). The pertinent requirements are whether: (1) the defendant in fact threatened the plaintiff; (2) the defendant intended to so threaten the plaintiff; and (3) a reasonable person would have believed the threat. See Smith, supra, 262 N.J.Super. at 516, 621 A.2d 493. | Proof of terroristic threats must be measured by objective standard, and pertinent requirements as whether defendant in fact threatened plaintiff, defendant intended to so threaten plaintiff, and reasonable person would have believed threat. N.J.S.A. 2C:12-3, subd b. | What standard should the proof of terroristic threat be measured by? | Threats - Memo #338 - C-HE_42180.docx | ROSS:00327504-ROSS-00327565 | Condensed, SA, Sub 0.76 | | 0 | 1 | 1 | 1 |
| 18847 | Mack v. State, 928 S.W.2d 67+7 | | To prove the offense of burglary, the State must show that the defendant entered a building "without the effective consent of the owner ..." Tex.Penal Code Ann. ~30.02(a) (West 1994). The Code requires a specialized mental state when one enters a house "with the intent to commit [an assault]." The owner ... id. ~11.07(3)(36) (emphasis added). The Code provides possession to an actual care, custody, control, or management ". Id. ~ 1.07(a)(39). Therefore, a person having a greater right to the actual care, custody, or control of the building than the defendant may be alleged as the "owner". Alexander v. State, 793 S.W.2d 490, 382 (Tex.Crim.App.1984). This greater right of possession' doctrine applies to any prosecution for burglary. Id. | Under burglary statute, anyone with greater right to actual care, custody, or control of building than defendant may be alleged as "owner", thus greater right of possession doctrine applies to any prosecution for burglary. V.T.C.A, Penal Code §§ 1.07(a)(35)(A), 30.02(a). | Does the greater right of possession theory apply to burglary? | Burglary - Memo 265- PA_42727.docx | ROSS:00338033 1-ROSS-00338022 | Condensed, SA, Sub 0.69 | | 1 | 1 | 1 | 1 |
| 18848 | Moye v. State, 991 A.2d 18 | 67+8(9) | As the 1973 Commentary to the Criminal Code explains, the current statutory language of burglary, with its use of the phrase "breaking", "the legislature sought to eliminate the "meaningless" distinction between opening a closed door and walking unbidden through an already open door. Thus, an actual "breaking" is no longer a prerequisite for the commission of burglary. Instead, it is sufficient that a person enter or remain on the premises when he is not licensed or privileged to do so.) Because actual "breaking" is not a necessary element of burglary, the absence of evidence that Moye "broke" into the building has is not reversible error. | An actual "breaking" is not required in order to find the defendant guilty of burglary; instead, it is sufficient that a person enter or remain on the premises when he is not licensed or privileged to do so. 11 West's Del.C. § 826. | Does burglary require actual breaking? | 01909.docx | LEGALEASE 00156444-LEGALEASE 00156445 | Condensed, SA, Sub 0.63 | | 1 | 1 | 1 | 1 |

Appendix D

1235

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18349 | White v. Signature Geophysical Servs., 65 S.W.3d 355 | 21+9 | We agree with appellant's contention that affidavits of Bueno and Altenau are defective, and are not competent summary judgment proof, due to the absence of the notary's seal. An affidavit is a "statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." Tex. Gov't Code Ann. § 312.011(1) (Vernon 1998). An affidavit without a notary's seal is not properly notarized and is defective. Montgomery v. State, 82 Tex. Crim. App. 303, 133 S.W. 1087, 1088 (1911); Drake Ins. v. Williams, 896 S.W.2d 317, 320 (Tex. App.-Texarkana 1995, no writ). The affidavits of Larry Bueno and Jackie Altenau are defective because they do not contain a notary's public seal on them. Therefore, they are not competent summary judgment evidence and we will disregard those affidavits and the documents attached thereto. The purpose of our review of summary judgment in favor of Signature, however, even disregarding those affidavits and associated documents, we still hold the trial court did not err in granting Signature's motion for summary judgment. Therefore, we overrule appellant's first point of error. | Is an affidavit without a notary seal defective? | Affidavits : Memo 65-3Of49y-JCHftCf4JDaxkAfGIGP2S-0baAV.docx | ROSS-000002214 ROSS-000002227 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | 1 |
| 18350 | Parish v. State, 188 Tex. Crim. 590 | 67+82 | It is also shown that the window, through which it is forbidden an entry to this house was broken out, when the accused was confronted with entry. An entry made to such house through the window could be utilized by this jury as an actual model of entry, under the statute. Art. 1384, Vernon's Ann.P.C. provides, in part, also see Alexander v. State, 31 Tex.Cr.R. 359, 20 S.W. 756; Davis v. State, 52 Tex.Cr.R. 332, 105, 107 S.W. 810, as our opinion these facts are sufficient, and meet the requirements of the law. | What is considered entry at an unusual place? | 03.1116.docx | LEGALEASE 00156532-LEGALEASE 00156533 | Condensed, SA, Sub 0.46 | | 1 | 1 | 0 | 1 | 1 |
| 18351 | Toney v. State, 96 I.N.E.2d 57 | 67+10 | Pursuant to Indiana Code section 35-43-2-1 (2004), "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony." Burglary is elevated to a Class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling or structure used for religious worship. I.C. 35-43-2-1(1). Burglary is further elevated to a Class A felony if it results in "bodily injury" or "serious bodily injury" to any person other than the defendant. I.C. 35-43-2-1(2). | Does Class A felony burglary involve bodily injury? | 03.1176.docx | LEGALEASE 00156587-LEGALEASE 00156588 | Condensed, SA, Sub 0.62 | | 1 | 1 | 0 | 1 | 1 |
| 18352 | N. L. R. B. v. Local 254, Bldg. Serv. Emp. Int'l Union, AFL-CIO, 359 F.2d 289 | 1.77E+10 | The A & D private-letting conversation is no less a violation simply because only one brief conversation was involved. The Union contends, at least by implication, that the context of that conversation does not amount to a threat; We disagree. The language used in it may be taken in the circumstances surrounding the case. Words harmless in themselves can take on a sinister meaning where the context in which they are used. Local 901, Internat'l Bro. of Teamsters, Etc. v. Compton, 291 F.2d 793, 797 (1st Cir. 1961) (Our one thing, there was a labor dispute going on between the Union and University and the Local gives no basis for the coercion with reference to University's customers in a different light. The implications of this conversation are not spelled out. | "For the purposes of identifying a threat, can harmless words take on a sinister meaning?" | 04.0690.docx | LEGALEASE 00156506-LEGALEASE 00156507 | Condensed, SA | 0.88 | | 1 | 0 | 1 | 1 | 1 |
| 18353 | Ivaland Ecosystems Council, 611+8 v. Walden, 607 F.3d 1043 | 1.77E+10 | The NEPA and its implementing regulations provide for forest planning and management by the Forest Service on two levels: (1) Forest level and (2) individual project level. See generally 16 U.S.C. 1604; see also Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 729-730, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). On the forest level, the Forest Service develops a Land and Resource Management Plan (Forest plan), which consists of broad, long-term plans and decisions for the entire forest. Forest plans are designed to manage forest resources for balanced and multiple use; environmental and economic factors. Citizens for Better Forestry v. U.S. Dep't of Agric., 341 F.3d 961, 966 (9th Cir.2003). The NFMA's purpose is to require that the Forest Service "provide for diversity of plant and animal communities" in managing national forests. 16 U.S.C. | What does the sufficient site-specific connection between challenged Land reduction project in national forest and United States Forest Service's (USFS) alleged failure to conduct further evaluation of qualifications to affect gashawk nesting territories, and the project as a whole plan as required by the forest plan, as required for environmental organization to challenge the gashawk evaluations under the National Forest Management Act (NFMA), sound treatment has been shown to affect gashawk nesting territories, and the project for environmental organization required to review gashawk nesting territories. National Forest Management Act of 1976, § 14 et seq., 16 U.S.C.A. § 1600 et seq. | Words & Forests : Memo 5-RC_42321.docx | ROSS-000293753-ROSS-000293754 | Condensed, SA, Sub 0.25 | | 1 | 1 | 0 | 1 | 1 |
| 18354 | Nat'l State Bank of Mt. Pleasant, Iowa v. Ricketts, 153 S.W. 646 | 83+1481 | Under our statutes and the decisions of the courts of this state, it is not necessary that there be an endorsement of a negotiable note in order to pass the title to the same, but an assignment may be made by writing or verbal. Revised Statutes 1911, art. 583; Wood v. Chisend, 95 Tex. 139, 17 S. W. 414; Bell of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 368. In this case it appellant's admitted to be the owner of the note, and the only contention is as to whether it became the owner. And it is clear that it did not become the owner until after maturity. The letter to the bank at Hereford shows that appellant was in possession of the note before maturity, under a claim of ownership, because it explains the character of its possession, and such claim having been made there was any impediment as to the validity of the note brought to the knowledge of the appellant. | Is an endorsement of the note necessary for an assignment? | 009055.docx | LEGALEASE 00157153-LEGALEASE 00157154 | Condensed, SA, Sub 0.64 | | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,079 |
| 18355 | Dwight v. Newell, 15 Ill. 333 | 162v124 | The second plea raises the question whether a promissory note … | One of several executors or administrators may assign by a note made payable to the testator … | Can a promissory note be assigned to the executor or administrator? | Bils and Notes Memo 1235_OB_6355.docx | ROS5-00292414 ROS5-00292445 | Condensed, SA, SD 0.92 | | 0 | 1 | | 1 | |
| 18356 | Mechem v. United Bank of Ariz., 107 Ariz. 437 | 83f+426 | Thus, we turn to the possessory nature of the bank. § 44-2208, subsec. 20 … | Where individual to whom negotiable note was made payable endorsed note in blank and delivered it to bank, bank was a "holder." A.R.S. §§ 44-2208, subsecs. 20, 21, par. C, 44-2214, subsec. A, 44-2325, subsec. B, 44-2402 … | When can a bank be a holder? | 018874.docx | LEGALEASE-00157365 LEGALEASE-00157366 | Condensed, SA, Sub 0.63 | | | | | 1 |
| 18357 | Hansen v. Duvall, 333 Mo. 59 | 369+231 | The acceptance of the notes of the sum is that of the notes of item, the former owner of the bank would not amount to payment of the item notes unless the parties agreed that it should so operate … | Mortgagor's acceptance of mortgagee's proposal of contract, calling for interest-paying notes of third person, other than maturity, amounted to agreement that notes were contracts governing such notes. | Which law governs renewal of a note? | Bils and Notes Memo 1410_JK_6916.docx | ROS5-00291814 ROS5-00291864 | Condensed, SA, Sub 0.66 | | | | | 1 |
| 18358 | Mullen v. Morris, 2 Pa. 85 | 217+2 | Endorser is liable for interest on bill according to the law of the place on which it is drawn. | The indorser of a bill of exchange is liable for interest according to the law of the place of the place on which it is drawn. | According to which law is an endorser liable for interest on the bill? | 01386.docx | ROS5-00291139 ROS5-00291164 | Condensed, SA, Sub 0.12 | | 0 | 1 | | 1 | |
| 18359 | Strube v. Comenity Bank, 717H+1995 842 F.3d 181 | | Under the asserted in 1968 to " protect consumers against inaccurate and unfair credit billing and credit card practices" and preserve "the informed use of credit" by "assuring a meaningful disclosure" of credit terms … | Credit card holder sufficiently alleged that there was at least at the time of its concrete injury of the particular card harms, as required to satisfy injury in fact requirement for Article III standing, from bank's alleged noncompliance with TILA requirement that consumer be notified that certain consumer rights pertain only to disputed credit card purchases not yet paid in full and that consumer dissatisfied with a credit card purchase must communicate the credit in writing or electronically, given that the disclosure requirements seemed to protect a consumer's concrete interest in avoiding the uninformed use of credit; holder was not required to allege any additional harm beyond procedural violations, and holder sought to vindicate interests particular to her rather than the public at large. U.S. Const. art. III, § 2; Truth in Lending Act, §§ 127, 130, 15 U.S.C.A. §§ 1637(a), 1640(h)(7). | According to which law is an endorser liable for interest on the bill? | 01386.docx | ROS5-00291139 ROS5-00291164 | Condensed, SA, Sub 0.03 | | 0 | 1 | | 1 | |
| 18360 | Franklin v. St. Paul Fire & Marine Ins. Co., 534 S.W.2d 661 | 156+1321 | In connection with the fourth assignment of error it appears that the contracting party did not relinquish error in the contract … Estoppel is an affirmative defense which may be shown … | Estoppel is available to protect right but not to create one. | Is estoppel available to protect a right but not to create one? | Estoppel - Memo #149 - C-155_SZ310.docx | ROS5-00291495 ROS5-00291495 ROS5-00291842 | Condensed, SA 0.93 | | 0 | 1 | | 1 | |
| 18361 | First Inv'rs Corp. v. Reyner, 738 So. 2d 228 | 156+1321 | Equitable estoppel is a doctrine that is to be applied cautiously; it is to be used as a shield and not a sword … Equitable estoppel is a doctrine that is to be applied cautiously; it is to be used as a shield and not a sword. | Is equitable estoppel a shield and not a sword? | Estoppel - Memo #185 - C-155_SZ310.docx | ROS5-00291653 ROS5-00291864 | Condensed, SA 0.79 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18162 | Black v. TIC Inv. Corp., 900 F.2d 112 | 156+325(1) | It should be noted at the outset that estoppel principles generally apply to all legal actions, and it is exception or limitation on the application of estoppel are simple enough that a party from benefiting from its own misrepresentation. Yet even among courts that recognize the availability of estoppel, there is no agreement as to the scope of that doctrine. See, e.g., Haeberle v. Board of Trustees, 624 F.2d 1132, 1139 (2d Cir.1980). The reason an entity cited for this reluctance (and for earlier refusals to allow estoppel at all, see, e.g., Thurber v. Western Conference of Teamsters Pension Plan, 542 F.2d 1106 (9th Cir.1976)) is a concern for the actuarial soundness of the plan. There are two types of ERISA plans: pension plans, which are funded and have strict vesting and accrual requirements, and welfare plans such as the one involved in this case, which have no such requirements. See Young v. Standard Oil (Indiana), 849 F.2d 1039 (7th Cir.), cert. denied 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). In the case of an unfunded welfare plan, there is no particular fund which is depleted by paying benefits. Thus there is no need for concern about the Plan's actuarial soundness. | Estoppel principles generally apply to all legal actions) | Do estoppel principles generally apply to all legal actions? | 03.7895.docx | USA/LEX/LE 00157750 USA/LEX/LE 00157751 | Condensed_SA | 0.91 | 0 | | 1 | |
| 18163 | State ex rel. Wilcox v. Credit Suisse Sec. (USA) LLC, 140 A.3d 34 632 | 307A+622 | A complaint is properly dismissed if it is "based on pure speculation." DH Capital Advisors v. Optical Resources Group, 276 A.D.2d 420, 420, 715 N.Y.S.2d 817 (1st Dept 2000); see also Jablonski v. Rapalje v. ... Dept. v. of Medicine v Mt. Sinai, 203 WL 547393-5, 2015 U.S. Dist. LEXIS 136995-4, N.D.N.Y., Sept. 16, 2015, No. 3:15-cv-5069454901 ("[s]peculative general assertion" not enough for False Claims Act.) Deal ex rel United States v. Lampley, 614 F.3d 659, 999 (9th Cir.2010) (relator must "supply reasonable notice" that false claims were actually submitted"); cert. denied 562 U.S. 1102, 131 S.Ct. 801, 178 L.Ed.2d 546 (2010). Furthermore, "the alleged certification of such claims should not be applied expansively" (United States ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 307 (3d Cir.2011); see also Mikes v. Straus,274 F.3d 687, 699 (2d Cir.2001); and State Farm v. Carpenter 1340 (quotation omitted). | Complaint is properly dismissed if it is based on pure speculation. | Is a complaint properly dismissed if it is based on pure speculation? | 04.8888.docx | ROSS-000278317-ROSS-000278318 | Condensed_SA | 0.94 | 0 | | 1 | |
| 18164 | Keller Co. v. Viney's on the River, 835 N.W.2d 390 | 307A+690 | The district court has wide discretion in determining whether to grant a plaintiff's motion for dismissal." Hoyt Prop., Inc. v. Prod. Res. Grp., L.L.C., 716 N.W.2d 366, 376 (Minn. App. 2006), aff'd, 736 N.W.2d 313 (Minn. 2007). "The court also has discretion to determine whether a dismissal should be with prejudice." Id. "This court will not overturn a district court's discretion is not at hold unless ... the district court abused its discretion." Butts ex rel. Iverson, 802 N.W.2d of 841 (quotation omitted). | A court has discretion to determine whether a dismissal should be with prejudice. Minn. R. Civ. P. 41.01(b). | Does a court have discretion to determine whether a dismissal should be with prejudice? | 02.8888.docx | USA/LEX/LE 00157135-USA/LEX/LE 00157136 | SA_Sub | 0.79 | 0 | | 1 | |
| 18165 | La Chona v. Aberra, 797 S.E.2d 695 | 307A+690 | Additionally, a voluntary dismissal of a complaint without prejudice is not on the merits. See OCGA " 9-11-41 (a) (2) (providing for the voluntary dismissal of an action without prejudice), " 9-11-41 (a) (3) (providing that "[a] dismissal under this subsection is without prejudice, except that a voluntary dismissal operates as an adjudication upon the merits). | A voluntary dismissal of a complaint without prejudice is not on the merits. | Is a voluntary dismissal of a complaint without prejudice on the merits? | 02.8890.docx | USA/LEX/LE 00157141-USA/LEX/LE 00157142 | Condensed_SA | 0.8 | 0 | | 1 | |
| 18166 | Attorn v. Jester, 309 S.W.3d 418 | 307A+690 | To qualify as a final, appealable judgment, the dismissal order must fall within a limited exception to the general rule governing dismissals. The applicable general rule is that "a dismissal taking into account that it is with prejudice is deemed to be without prejudice." Jeffery v. Cathey, USA S.W.3d 654, 438 (Mo.App. E.D.2009) (citing Rule27.01 Balke v. Ream, 983 S.W.3d 579, 580 (Mo.App. E.D.1998)). The usual result is that a dismissal is being made "with prejudice" is so one those words. Under these circumstances the interpretation of Rule 67.03, the dismissal order would be deemed without prejudice and must operate as an adjudication upon the merits, a plaintiff typically can use the dismissal for filing another suit on the same claim; hence, a dismissal without prejudice is not a final judgment for purposes of appeal." | A dismissal failing to indicate that it is with prejudice deemed to be without prejudice? | Is a dismissal failing to indicate that it is with prejudice deemed to be without prejudice? | 04.4158.docx | ROSS-000295683-ROSS-000295684 | Condensed_SA | 0.89 | 0 | | 1 | |
| 18167 | Times Picayune Pub. Corp. v. Bd. of Sup'rs of Louisiana State Univ., 845 So.2d 599 | 307A+690.1 | To qualify as a final, appealable judgment, the dismissal order must "fall within a limited exception to the general rule governing dismissals. the applicable general rule is that "a dismissal taking into account it is with prejudice is deemed to be without prejudice." Under this... Words and phrases yet to be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Black's Law Dictionary defines 'claim' as follows: "To demand as one's own or as one's right; [Cause of Action Demand for money or property." Black's Law Dictionary, 224 (6th ed. 1979). Interpreting similar Dictionary, the Louisiana Supreme Court, in Fagula v. Frank, 937127 La. 19 La.124 (Pal), 600 So.2d 734, 721, cert. denied sub nom., Allstate Insurance Company v. Whaley 513. 114 S.Ct. 1405, 114 S.Ct. 128 L.Ed.2d 80 (1994), concluded that a claim is "pending" only so long as it is subject to judicial scrutiny. Therefore, once there has been a final judgment dismissing it, a claim ceases to be pending. See Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 721. | Once there has been a final judgment dismissing it, a claim ceases to be pending. | "Once there has been a final judgment dismissing it, does a claim cease to be pending? | 02.5166.docx | USA/LEX/LE 00157199-USA/LEX/LE 00157200 | Condensed_SA | 0.91 | 0 | | 1 | |
| 18168 | IB Intl v. Mega Flight, 840 So.2d 1417 | 307A+693.1 | Prior ruling in a dismissed case have no preclusive effect. See Winchester Homes, Inc. v. Osmose Wood Preserving, Inc., 37 F.3d 1053, 1058 14th Cir.1994); 24 Am Jur 2d Dismissal 9 (2003)). Here, the only way the trial court could modify the parties to their former positions was to clear the property as intended. | Prior rulings in a dismissed case have no preclusive effect. | Do prior rulings in a dismissed case have no preclusive effect? | 02.5167.docx | USA/LEX/LE 00157201-USA/LEX/LE 00157202 | Condensed_SA | 0.81 | 0 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,873) | Selection & Arrangement (21,876) | Multiple Differences (9,029) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18369 | Thrift Rance v. State Farm Fire & Cas. Co., 251 Neb. 448 | 307A=90.1 | An appellate court lacks jurisdiction to entertain appeals from other than final orders; an order is not an order as such that an order rendered in the course of the cause. Jarrells, supra. However, we have held that a "final order" consists of the equivalent of a discontinuance of in the court. It is thereby sent out of court. The rights of the parties in the cause of action are determined, so that the court, rendering the order of dismissal is concerned. Akins v. Chamberlain, 164 Neb. 418, 424, 82 N.W.2d 632, 637 (1957); see, also, Interchanger v. Estate of Seer, 214 Neb. 264, 333 N.W.2d 693 (1983). A cause of action consists of the set of facts on which a recovery may be had. Lewis v. Craig, 236 Neb. 602, 462 N.W.2d 889 (1990). | Dismissal of cause of action is equivalent of discontinuance of it in court's option to get facts on cause of action where court has final jurisdiction rendering order of dismissal is concerned. | Is dismissal of cause of action equivalent of discontinuance of it in court? | 02305.docx | LEGALEASE 00157281; LEGALEASE 00157282 | Condensed, SA | 0.76 | 0 | | 1 | 1 | 1 |
| 18370 | Abee v. Lindstrom, 217 Va. 488 | 308=1 | We have defined agency "as the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act." Reistroffer v. Person, Inc., Nierman Lumber Corp., 170 Va. 266, 270, 5 E.2d 578, 584 (1938); accord Raney v. Barnes, 219 Va. 15, 15, 320 S.E.2d 17, (1979). The power of control is the determining factor in ascertaining the alleged agent's status. Texas Company v. Zeigler, 177 Va. 557, 563, 14 S.E.2d 704, 708 (1941). | Power of control is determining factor in determining alleged agent's status as an agent. | What is the determining factor in ascertaining an alleged agent's status? | Principal and Agent - Memo 413 - RK_65343.docx | ROSS-003131814-ROSS-00331817 | Condensed, SA, Sub | 0.83 | 1 | | 1 | 1 | 1 |
| 18371 | Heard v. Miles, 32 Tenn. App. 410 | 308=48 | We think that the confidential relationship is sound, and that the provision of the contract obligating Mrs. Miles to pay Mann & Benodorf a commission of five percent was binding upon her if she established a confidence. Mrs. Miles' option. To hold otherwise would do violence to fundamental and well established principles of the law governing the relationship of principal and agent. This relationship is one of trust and confidence, and a real estate agent is a fiduciary. In any matter connected with this agency, the agent gains an advantage to the principal and under no circumstances can it benefit himself for any other than the principal without first making full and complete disclosure of the facts to the principal. He cannot profit by his failure to make such disclosure. | Principal and agent relationship is one of trust and confidence. | "Is the relationship of principal and agent, one of trust and confidence?" | Principal and Agent Memo 817 - RK_62698.docx | ROSS-003321620-ROSS-00331621 | Condensed, SA | 0.91 | 1 | | 0 | 1 | 0 |
| 18372 | Fitzgerald v. State, 26 N.E.3d 155 | 377F=48(1) | On appeal, Fitzgerald contends that the trial court erred in finding that the State sufficiently rebutted his self-defense claim.A valid claim of self-defense is a legal justification for an otherwise criminal act.Wallace v. State, 725 N.E.2d 837, 840 (Ind.2000). "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force." Ind.Code § 35–41–3–2(a). A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. Wilson v. State, 770 N.E.2d 799, 800 (Ind.2002). Here, the evidence was insufficient to support a claim of self-defense. | Evidence was insufficient to establish defendant acted without fault, an element necessary to support defendant's claim of self defense, during prosecution for Class A felony criminal deviate conduct, where defendant fled from a staged robbery that the victim had planned to cover up a theft from the victim's employer, and thereafter the defendant had sprayed the victim in the face with pepper spray and forcibly took the victim's bag. West's A.I.C. 35-41-3-2, 35-42-3-10(A)(2)(A) | "Does a claim of self defense require a defendant to act without fault, be in a place they had a right to be and have reasonable fear?" | "Threats, Stalking and Harassment - Memo #274 C - DK_64723.docx" | ROSS-003282723-ROSS-00328272A | Condensed, SA | 0.35 | 1 | | 1 | 1 | 1 |
| 18373 | In re Weisband, 427 B.R. 13 | 8.30+128 | The Debtor argues that, in a secured securitization scheme, only the servicer/investors have standing to make a claim as the securities investors have standing to seek, claim and recover. The secure securitization is an assignment of the loan origination (which has been sued by the noteholder). However, the Debtor executed the Note and received consideration (which he used to purchase the house) the party is owed. Because the Debtor has standing to seek to be furnished through an offer and an acceptance or a note/holder to the promissory scheme, only the securities investors have standing to seek claim recover the promissory note. Restatement (Second) of Contracts § 71(4). | Consideration for a contract, including a promissory note, can be provided by a third party. Restatement (Second) of Contracts § 71(4). | Can consideration for a note be furnished by a third party? | 00947.docx | LEGALEASE 00158194; LEGALEASE 00158195 | Condensed, SA | 0.87 | 1 | | 0 | 1 | 1 |
| 18374 | Citibank's Dakota N.A. v. Santoro, 210 Or. App. 344 | 95+15 | On appeal, defendant does not dispute that he received the agreement in the mail and used the credit card. He argues only that Citibank has failed to establish the existence of the agreement, because the existence of the agreement, calling into question, and it by noting that "[t]he law requires only evidence of 'mutual assent,' whether that assent is expressed through an offer and an acceptance or is manifested by conduct." Bennett v. Farmers Ins. Co., 332 Or. 138, 148, 26 P.3d 785 (2001). Martin v. Comcast of California, 209 Or.App. 82, 98, 97, 146 P.3d 380 (2006). Conduct can manifest acceptance of an offer. Adair Homes, Inc. v. Jarrell, 59 Or.App. 80, 83, 650 P.2d 163 (1982). In this case, Santoro does not dispute that he received the credit card in his request, that he did not cancel the credit card account, and that the credit card. We conclude that his conduct constitutes an acceptance of the agreement. | The law of contracts requires only evidence of mutual assent, whether that assent is expressed through an offer and an acceptance or is manifested by conduct. | Can a party assent to a credit card member agreement by using a credit card? | 01980.docx | LEGALEASE 00158687; LEGALEASE 00158688 | SA, Sub | 0.84 | 0 | | 1 | 1 | 1 |
| 18375 | Willard v. Bank of Am., 204 F. Supp. 3d 829 | 172H+1280 | On appeal, the Third Circuit Court of Appeals affirmed Judge Potter's conclusion that the "buyer-seller relationship, the effect of securitization of credit card receivable "Credit card securitization involves the securitization of the receivables. In the securitization transaction involves the marketing of the receivables, the financial institutions that hold the card credit card receivables and transferring them to a trust, and thus, credit card holder was not relieved of her obligation to pay the debt owed on the account, securitization merely created a separate contract involving the receivables, distinct from cardholder's debt obligations, and did not relieve the issuer of its ownership interest in the credit card account. | Credit card issuer did not relinquish its beneficial interest in credit card holder's credit card account by securitizing it; credit card holder was not relieved of her obligation to pay the debt owed on the account, securitization merely created a separate contract involving the receivables, distinct from cardholder's debt obligations, and did not relieve the issuer of its ownership interest in the credit card account. | Does credit card securitization involve the securitization of the receivables or the accounts? | 01387c.docx | LEGALEASE 00158689; LEGALEASE 00158690 | Condensed, SA, Sub | 0.43 | 0 | | 1 | 1 | 1 |

3239

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18376 | Com. v. Vibari, 88 Mass. App.Ct.614 | 129+105 | To find a "breach of the peace," an act must at least threaten to have some disturbing effect on the public. | Here, the judge expressly ruled that the defendant was not committing a breach of the peace. We agree. "Breach of the peace" is often perceived as an elastic concept. Commonwealth v. Gruw, 398 Mass. 241, 251, 496 N.E.2d 162 (1986). To find a 'breach of the peace within the meaning of the ordinance, an act must at least threaten to have some disturbing effect on the public. See Commonwealth v. Carmon, 398 Mass. at 299, 192 N.E.618 (court found operating a motor vehicle while under influence of alcohol a breach of peace because effect of alcohol likely to make operator of motor vehicle a public menace); Commonwealth v. Cavanagh, 366 Mass. 277, 287 281, 317 N.E.2d 480 (1974) (high-speed chase through city streets would constitute breach of the peace); Commonwealth v. Mullins, 33 Mass.App.Ct. 954, 955, 582 N.E.2d 562 (1991) (where defendant was blaring music and screaming obscenities from window, circumstances amounted to breach of the peace because the "good citizens" of the neighborhood were disturbed). The record does not disclose why the defendant's horn was sounded. It could have been for allowing his insurance to lapse. His offense in driving without a license was a serious one but not one which immediately threatened to disturb the public. | What does the term breach of the peace mean as an offense? | Disorderly Conduct Memo 3 RC.docx | LEGALEASE-00047906-LEGALEASE-00047907 | Condensed, SA | 0.91 | 0 | 0 | | 1 | |
| 18377 | Liberty State Bank v. Guardian Sav. & Loan Ass'n, 127 Pa. 311 | 156+3(2) | Estoppel in pais may be invoked only for party's failure to perform duty. | The application for writ of error seems not to question the correctness of the general principle enunciated, but denies its application because of the nonexistence of an estoppel. Obviously, if the defendant in error owed no duty to reserve the indorsement, and was, for that reason, not guilty of negligence by releasing its lien, by the same reasoning it is not estopped to assert the liability of the bank. The very basis of the plea of estoppel is the finding that the depositor was negligent, and a determination that it was not negligent is necessarily a determination that an estoppel cannot be invoked against it. The principle of estoppel in pais may be invoked against a party only when he has failed to do that which was his duty to do. He cannot be estopped because of his failure to do that which he owed no duty to do. | Can estoppel in pais be invoked when a party has failed to do that which he had a duty to do? | Estoppel - Memo #171 C - C55.docx | LEGALEASE-00047919-LEGALEASE-00047920 | Condensed, SA, Sub 0.91 | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 18378 | Baltimore Steam Co. v. Baltimore Gas & Elec. Co., 123 Md. App.1 | 183+1 | "Franchise" is a special privilege conferred by the state on certain persons, and which does not belong to them of common right. | The franchise is an unusual privilege that is not easily explained by reference to other, more common rights and privileges. Perhaps the most precise description of a franchise, first adopted by the Court of Appeals over a hundred years ago, is "a special privilege conferred by the state on certain persons, and which does not belong to them of common right." State v. Philadelphia, W. & B. R.R. Co., 45 Md. 361, 379 (1876). The franchise's most salient feature is that, not being "of common right," it does not exist in the people generally in common law but is rather a privilege that can only be granted by the General Assembly, acting for the people through government or pursuant to power specifically delegated by the General Assembly. See, Charles County Sanitary Dist., Inc. v. Charles Utils., Inc., 267 Md. 590, 596, 298 A.2d 419 (1973). | Is franchise a privilege? | 018539.docx | LEGALEASE-00108947-LEGALEASE-00108948 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 18379 | Penn Twp. v. Aetna Cas. & Sur. Co., 719 A.2d 749 | 217+1716 | Fidelity bond is a contract of insurance, and therefore rules of interpretation of insurance policies apply. | Whether a bond imposes cumulative liability over several years of operation is a question that must be determined in light of the facts of each case and the provisions of the bond under which the claim arose. Eddystone Fire Co. No. 1 v. Continental Ins. Co., 284 Pa.Super. 260, 267, 425 A.2d 803, 805 (1981). A fidelity bond is a contract of insurance, and the rules of interpretation of insurance policies apply. Id. If a provision of an insurance policy is unambiguous, the meaning of the term is determined exclusively by the words of the contract. Pennsylvania Manufacturers' Ins. Co. v. Aetna Casualty and Surety Ins. Co., 426 Pa.165, 170, 233 A.2d 548, 551 (1967). If the contract is ambiguous, then the fact finder may look to parol evidence to determine the contract's meaning. Hutchison v. Sunbeam Coal Corp., 513 Pa.192, 200?01 and n. 5, 519 A.2d 385, 390?91 (1986). If examination of the parol evidence proves unfruitful, the court may then resort to rules of construction. Id. Our analysis therefore begins with the policy language. | Are fidelity bonds a contract of insurance? | Insurance - Memo 65 - SNJ_63858.docx | ROSS-003208332-ROSS-003303833 | Condensed, SA | 0.9 | 0 | 0 | 0 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 13880 | Linz Ban's Estate, 104 Cal. App. 2d 506 | 217v1301 | Words in a statute should be given their ordinary meaning unless otherwise indicated in statute. Estate of County of Los Angeles, Friday, 19 Cal.2d 634, 642, 122 P.2d 526. Insurance has been defined by the Legislature as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Ins. Code sec. 22. Basically, an annuity contract is the insurance policy. The risk is fundamentally different in the two contracts. In a life insurance policy the risk assumed is to pay upon the assured's death; in a pure annuity the risk the annuitant is to pay as long as the assured may live. Equitable Life Assur. Soc. v. Johnson, 53 Cal.App.2d 49, 51, 127 P.2d 95. For a contract like the one at issue it is essential that there be hazard and a shifting of the incidence. If there is no risk, or if there is no risk it is not shifted to another or others, there can be no insurance. According to the better view insurance contemplates distribution of risk. California Physicians' Service v. Garrison, 28 Cal.2d 790, 807, 806, 172 P.2d 4, 167 A.L.R. 306. "Basically, insurance is a device by which formed one protection against a loss of loss by distributing the loss over the few among a number who are subject to the same risk so which is not insurance. Both insurance and annuity contracts are, it is true, gambles against the contingency of death. They are dissimilar, however, in that under an annuity the company's obligation not to indemnify is the happening of a contingent event causing loss. From the viewpoint of risk, a life insurance and an annuity contract are, in effect, diametrically different. Under the former the company will lose in the event of the insured's premature death; under the latter the company will profit possibility that the annuitant may outlive his expectancy; in the instant case should live beyond that period the company will profit on the transaction. | For a contract to be one of insurance it is essential that there be hazard and a shifting of the incidence; and if there is no risk, or if there is no risk it is not shifted to another or others, there can be no insurance. West's Ann.Insurance Code, § 22. | Will there be insurance without risk? | ID560.docx | USLEAD.IE-0550844 - USLEAD.IE-0550845 | SA, Sub | 0.8 | 0 | | | 1 | |
| 13881 | Seley v. Wasserman, 823 F.Supp.2d 221 | 289v1134 | With respect to the first element, "[i]t is undisputed under New York law that general partners owe a fiduciary duty to the limited partners of the partnership." Bauer v. Fairbird-Irwin ... | Under New York law, the fiduciary relationship owed by general partners to the limited partners continues as long as the partnership continues. | Do partners have fiduciary relationships until the partnership continues? | Partnership - Memo 504 - GP_43817.docx | ROSS-003296084-ROSS-003296089 | Condensed, SA, Sub | 0.83 | 0 | | | 1 | |
| 13882 | Pollock v. Jones, 124 F. | 289v555 | There can be no doubt that under the law of South Carolina a sealed note given by one member of a firm creates no obligation against the firm ... | Under the law of South Carolina a partner cannot bind his firm by a sealed obligation or conveyance without the authority of certification of his copartner. | Does a sealed note given by a member of a firm creates no obligation against the firm? | Partnership - Memo 611 - SH_43634.docx | ROSS-003293382 | Condensed, SA, Sub | 0.57 | 0 | | | 1 | |
| 13883 | Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98 | 170Bk1296 | The district court under at least here is quite different. By its own terms, is a dismissal without prejudice and therefore ... | "Does a "dismissal without prejudice" terminate litigation for the court's responsibilities, while leaving the door open for some new, future litigation?" | ID560S.docx | | USLEAD.IE-0558116 - USLEAD.IE-0558117 | Condensed, SA, Sub | 0.38 | 0 | | | 1 | |
| 13884 | Gardner v. Bd. of Cty. Comm'rs of Wabash Cty., 178 P.3d 893 | 307Ak490 | The landowners urge us to void the stipulation due to misrepresentation, fraud, or mistake and to grant them relief from its effects. See 17 Am.Jur.2d Contracts § 141 (1964) ... | Ordinarily, dismissal with prejudice constitutes a final judgment. | "Ordinarily, does dismissal with prejudice constitute a final judgment?" | Pretrial Procedure - Memo 8 1887 - C - PC_63895.docx | ROSS-003284381-ROSS-003284382 | Condensed, SA | 0.92 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,073 |
| 13185 | Brief v. Korman, 152 S.W.3d 154 | 307A+594 | The trial court had jurisdiction of the subject matter and parties with respect to Brief's claims against Korsmo. Korsmo entered his appearance and was before the court for all purposes. Thus, the trial court had jurisdiction power to adjudicate Brief's claims against Korsmo on the merits, even if it would be error to do so. See Reis v. Peabody Coal Co., 997 S.W.2d 49, 63 (Mo.App.1999) (judgment allegedly procured by husband of separate property "is not void because a court has jurisdiction to characterize community property, even if it does so incorrectly"); for example, a dismissal for want of prosecution is not a decision on the merits and should not be with prejudice. See Rick v. Mayol, 603 S.W.2d 731, 733 (Mo.App.1980); Melton v. Ryan... the error in dismissing a case with prejudice cannot be raised for the first time on appeal and must be presented to the trial court. See Bindley v. Metro... 667 S.W.2d 188, 193 (Tex.1984); Andrews v. ABJ Adjusters, Inc., 800 S.W.2d 567, 568 (Mo.App.1990), w/n denied. | A dismissal for want of prosecution is not a decision on the merits and should not be with prejudice. | Is a dismissal for want of prosecution a decision on the merits and should it be with prejudice? | Pretrial Procedure - Memo # 1918 J - C - IR_43417.docx | ROSS-003294082-ROSS-003294083 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |
| 13186 | Infinite Sec. Sols. v. Karam | 89+541 | Turning to the merits of the assignment of error, we note that a trial court possesses authority to enforce a settlement agreement voluntarily entered into by the parties to a lawsuit because such an agreement constitutes a binding contract. Mack v. Polson Rubber Co., 14 Ohio St.3d 34, 36, 470 N.E.2d 902 (1984). Further, "where an action is dismissed pursuant to a stated condition, such as the existence of a settlement agreement, the court retains the authority to enforce such an agreement in the event the condition does not occur." State of Berger v. Riddle, 8th Dist. Cuyahoga Nos. 66105, 66200, 1994 WL 449197, (Aug. 18, 1994). However, we also note that a trial court loses jurisdiction to proceed in a matter when the court has unconditionally dismissed the action. State ex rel. Rice v. McGrath, 62 Ohio St.3d 70, 72, 577 N.E.2d 1100 (1991). Therefore, the threshold issue in this case is whether the trial court's May 26, 2011 judgment constituted a conditional or unconditional dismissal of the action. | Judgment dismissing action following settlement of claims among apartment complex owners, complex's insurer, and security provider was unconditional due to lack of inclusion of the terms of the settlement agreement or express reservation of jurisdiction to enforce the settlement agreement, and thus trial court lacked jurisdiction to enforce settlement agreement and determine whether complex owners or insurer had priority to settlement proceeds paid by security provider. | Does a trial court lack jurisdiction to proceed in a matter when the court has unconditionally dismissed the action? | 021711.docx | LEGALEASE 00158378-LEGALEASE 00158379 | Condensed, SA, Sub: 0.53 | | 0 | 1 | | 1 | 1 |
| 13187 | Dir. of Ins. ex rel. State v. A & A Midwest Rebuilders, 383 Ill.App.3d 721 | 30+7(6) | While that is true, we do believe that the distinction between a dismissal with prejudice and a dismissal without prejudice is relevant here. See Amerijet v. Murphy, 290 Ill.App.3d 702, 706, 684 N.E.2d 501, 632 N.E.2d 1111 (1994) ("the that as it may, one of the suit was dismissed, with or without prejudice, the trial court lost jurisdiction to alter its judgment after 30 days elapsed following its order without any proper action taken by the parties"). An order of dismissal may be final even though it is not with prejudice. Doctor's Brewery v. City of Chicago, 234 Ill.App.3d 679, 385, 539 N.E.2d 556, 574 N.E.2d 689 (1991) ("Where a dismissal is based upon a determination that the complaint is not sufficient to state a cause of action on the merits or that an impediment to its claim. Thus, an order of dismissal for failure to state a cause of action which is not followed by a request to amend is a final, appealable order and does not require a specific declaration by the plaintiff that he wishes to stand on the | An order of dismissal may be final even though it is not with prejudice. | Can an order of dismissal be final even though it is not with prejudice? | Pretrial Procedure - Memo # 10967 - C - VP.docx | LEGALEASE 00048414-LEGALEASE 00048414 | Condensed, SA: 0.33 | | 0 | 1 | | 1 | 1 |
| 13188 | West Pittsburgh Partnership v. McNeilly | 307A+694.1 | With respect to that criteria, we note that the Supreme Court has established that definition of finality in 1992, when it rescinded the former Rule 341 and adopted the current version in order to establish a bright line definition and to eliminate the case-by-case analysis that had evolved prior to this time, and when the doctrine defined what constituted a "final order." Contact S. Inc. of 183.1 is now well understood that an order dismissing an action as to fewer than all plaintiffs is not a final order. See id. See also Note accompanying Pa. R.A.P. 341. For this reason, we hold that, insofar as common pleas granted judgment on the pleadings as to a number of defendants, or insofar as it dismissed those Counts but left for later litigation the claim in Count asserted by WP Partnership, that portion of the order is not final. | An order dismissing an action as to fewer than all plaintiffs is not a final order. | Is an order dismissing an action as to fewer than all plaintiffs a final order? | 023757.docx | LEGALEASE 00158685-LEGALEASE 00158686 | Condensed, SA, Sub: 0.85 | | 0 | 1 | | 1 | 1 |

3242

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,673 | 23,876 | 9,079 |
| 18189 | Bernard v. Mut. Motor Co., 38 S.W.2d 417 | 308+3(1) | That bailee acts for benefit of the bailor make him an "agent." | We have been referred to no Texas case deciding the exact question here presented, although we think many cases could be cited deciding it in principle. There are, however, many well-considered opinions from other jurisdictions deciding the exact question... | Does a bailee acting for the benefit of the bailor make him an agent? | Principal and Agent Memo 394 - RK_63953.docx | ROSS-003029767-ROSS-003029768 | Condensed, SA, Sub 0.96 | | 0 | | 1 | 1 | 1 |
| 18190 | Kitzan & Co. v. Silvers, 13 N.W. App. 80 | 308+3(1) | Legal difference between agent and servant is that agency represents... refers to action on and concerning things and deals with matters of manual or mechanical execution. | The Romans, to whom we are indebted for many of the principles of agency, in the main did not use the terms "mandatum" (to put into one's hand, or confide) to the discretion of another) and "negotium" (to transact business, etc.) as concerning purchase)... | Does service have reference to actions concerning things? | Principal and Agent Memo 397 - RK_63953.docx | ROSS-003029560-ROSS-003029602 | Condensed, SA, Sub 0.79 | | 0 | | 1 | 1 | 1 |
| 18191 | Bernard v. Mut. Motor Co., 38 S.W.2d 417 | 308+3(1) | That bailee acts for benefit of the bailor make him an "agent." | We have been referred to no Texas case deciding the exact question here presented, although we think many cases could be cited deciding it in principle. There are, however, many well-considered opinions from other jurisdictions deciding the exact question... | Does a bailee act for the benefit of the bailor make him an agent? | Principal and Agent Memo 400 - RK_63953.docx | ROSS-003029659-ROSS-003029692 | Condensed, SA, Sub 0.96 | | 0 | | 1 | 1 | 1 |
| 18192 | In re Greenfield Direct Response, 171 B.R. 848 | 65+2 | Under Illinois law, word "agent" is broader than word "broker" and more comprehensive in its legal scope, while every broker is in a sense an agent, every agent is not a broker. | The word "agent" is broader than the word "broker", and more comprehensive in its legal scope. (New (1986), citing DeGraw v. State Sec. Ins. Co., 40 Ill.App.3d 26, 351 N.E.2d 302, 308 (1st Dist.1976). Attorneys, brokers, auctioneers, and similar persons employed for a single transaction are agents, although as to their physical activities they are independent contractors, American Env't., Inc. v. 3"? Co., 222 Ill.App.3d 241, 249, 164 Ill.Dec. 733, 739, 583 N.E.2d 649, 655 (3d Dist.1991). | Can every agent be considered as a broker? | Principal and Agent Memo 412 - RK_63953.docx | ROSS-003029637-ROSS-003029671 | Condensed, SA, Sub 0.7 | | 0 | | 1 | 1 | 1 |

3243

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18393 | In re Grabau, 151 B.R. 227 | 65+3 | As discussed above, the critical inquiry under both Woolsey and Hooper is whether the defendant "was acting within the scope of his licensed activities." See Woolsey, 117 B.R. at 530. The Bankruptcy Court's distinction between acting as a salesman and acting as a broker is consistent with this inquiry. Cal.Bus. & Prof.Code " 10132 defines "real estate salesman" as someone "employed by a licensed real estate broker to do one or more of the act set forth in Sections 10131, 10131.1, 10131.2, 10131.3, 10131.6 [defining the activities of a real estate broker]." Thus, the Real Estate Act contemplates that someone can act as a salesman without necessarily qualifying as a real estate broker. In that instance, the real estate salesman is merely an agent of the employing broker. See e.g. People v. Asuncion, 152 Cal.App.3d 422, 425, 199 Cal.Rptr. 514 (2nd Dist.1984) ("a real estate salesman is an agent of his broker-employer as a matter of law"); Grubb & Ellis Co. v. Spengler, 143 Cal.App.3d 890, 895, 192 Cal.Rptr. 637 (2nd Dist.1983) ("It seems clear that for purposes of the administration of the real estate law, the salesperson is the employee and agent of the broker"). In this case, the Bankruptcy Court concluded that since most of Grabau's duties did not require a license and Allstate never procured an additional license pursuant to " 10158, Grabau "traded on Mr. Brown's license as an agent for Allstate." Memorandum Opinion at 10. This conclusion is further supported by the fact that Grabau merely acted as a conduit for delivering the Plaintiffs' funds to those officials at Allstate who were responsible for placing the funds in a trust account. In doing so, Grabau was discharging his statutory duties as a salesperson under " 10145(c). | California Real Estate Act contemplates that someone can act as salesman without necessarily qualifying as real estate broker; in that instance, real estate salesman is merely agent of employing broker. West's Ann.Cal.Bus. & Prof.Code SS 10131, 10131.1-10131.3, 10131.6, 10132. | Are real estate salesmen agents of the broker? | Principal and Agent - Memo 537 - RK_63995.docx | ROSS-003323115-ROSS-003323116 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 18394 | Robinson v. Quicken Loans Inc., 988 F. Supp. 2d 615 | 308+19 | "An agent ... is a representative of his principal in business or [in] contractual relations with third persons...." Harper v. Jackson Hewitt, Inc., 227 W.Va. 142, 154, 706 S.E.2d 63 (2010) (internal quotation marks omitted). "One of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." (internal quotation marks omitted). "[T]he burden of proving an agency [relationship] rests upon him who alleges the existence of the agency." All Med, LLC. v. Randolph Eng'g Co., Inc., 228 W.Va. 634, 636, 723 S.E.2d 864 (2012). However, once a prima facie showing of the agency relationship has been made, "a principal denying agency must show that the principal neither controlled, nor had the right to control, the [alleged agent's] work...." Harper, 227 W.Va. at 155, 706 S.E.2d 63; see Sanders v. Georgia"Pac. Corp., 159 W.Va. 621, 627, 225 S.E.2d 218 (1976) ("It is always incumbent upon one who asserts vicarious liability to make a prima facie showing of the existence of the relation of ... principal and agent.... However, once a prima facie showing has been made, it is incumbent upon one who would defeat liability on the basis of an independent contractor relationship to show such fact."). | The burden of proving an agency relationship under West Virginia law rests upon him who alleges the existence of the agency; however, once a prima facie showing of the agency relationship has been made, a principal denying agency must show that the principal neither controlled, nor had the right to control, the alleged agent's work. | Who has the burden of proving the agency relationship? | Principal and Agent - Memo 558 - RK_64016.docx | ROSS-003319736-ROSS-003319738 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 18395 | Robbins v. Caraway-Rhodes Veterinary Hosp., 299 So. 2d 446 | 413+114 | In the Stephens case (7 So.2d 381), the court recognized the legal principles with which we are presently concerned. In the court's opinion, we find this pertinent observation: "There can be no doubt that the only occupations protected or made applicable by the compensation laws of this state are: "(1) Those businesses specially designated in the act. "(2) Those persons who, by agreement, have elected to come under the terms of the act; and,"(3) Those businesses determined by the courts, prior to the occurrence of the accident, to be of a hazardous nature. | Where employers' veterinarian business was not listed as hazardous in Workmen's Compensation Act, parties did not elect by agreement to come under terms of Act and it was not determined in advance by court that such business which did not have features of a hazardous nature was hazardous and thus covered under Act, neither employee's employment as a veterinarian assistant nor veterinarian business was covered or included within provisions of Act and employee was not entitled to recover compensation for injury sustained when he lifted a dog in the course of his employment. LSA-R.S. 23:1021 et seq., 23:1035. | "The compensation laws only apply to, what?" | 047684.docx | LEGALEASE-00158078-LEGALEASE-00158079 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 18396 | League of United Latin Am. Citizens v. Wilson, 908 F. Supp. 755 | 24+103 | In De Canas, in reasserting the rule that "[p]ower to regulate immigration is unquestionably exclusively a federal power," the Supreme Court emphasized that the mere fact that a state statute pertains to aliens does not require a finding that it is preempted: "the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se preempted by this constitutional power ..." 424 U.S. at 355, 96 S.Ct. at 936. The Court stressed that "the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." 424 U.S. at 355, 96 S.Ct. at 936. | Since power to regulate immigration is unquestionably exclusively federal power, any state statute which regulates immigration is constitutionally proscribed. | Is every state enactment which in any way deals with aliens considered a regulation of immigration? | 006819.docx | LEGALEASE-00160404-LEGALEASE-00160405 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 18397 | Pittsburgh Steel Co. v. Hollingshead & Blei, 202 Ill. App. 177 | 83E+607 | It is admitted by the plaintiff that the two drafts on the National Cooperage Company were mislaid and were not presented for payment at maturity. No excuse is offered by the plaintiff for its failure to present these drafts for payment, and it is not claimed that they would not have been paid if presented at maturity. Plaintiff was clearly negligent in failing to present the drafts for payment, and it would be unjust to hold that the defendant must suffer the consequences of plaintiff's negligence. Presentment for payment was necessary in order to hold the defendant as an indorser. Illinois Rev. St. ch. 98, sec. 70 (J. & A. " 7710).Under these circumstances, the account was paid and the plaintiff had no legal right to again demand payment. | Presentment for payment was necessary in order to hold defendant as an indorser of draft. S.H.A. ch. 98, S 91. | Is presentment of bill of exchange for payment necessary to hold a person as an indorser? | 010955.docx | LEGALEASE-00160061-LEGALEASE-00160062 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18398 | Keles v. Hultin, 144 A.D.3d 987 | 141E+1000 | The courts of this State "have long been reluctant to intervene in controversies involving purely academic determinations" (Matter of Zanelli v. Rich, 127 A.D.3d 774, 775, 8 N.Y.S.3d 217), and thus "[c]ourts retain a "restricted role" in dealing with and reviewing controversies involving colleges and universities" (Maas v. Cornell Univ., 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966, quoting Gertler v. Goodgold, 107 A.D.2d 481, 487, 487 N.Y.S.2d 565). "While decisions of academic institutions are not immune from judicial scrutiny, review should be restricted to special proceedings under CPLR article 78, and only to determine whether the decision was arbitrary, capricious, irrational, or in bad faith" (Keles v. Trustees of Columbia Univ. in the City of N.Y., 74 A.D.3d 435, 435, 903 N.Y.S.2d 18). | Courts retain a restricted role in dealing with and reviewing controversies involving colleges and universities. | Can a court make determinations that a university acted arbitrarily? | 017130.docx | LEGALEASE-00159766-LEGALEASE-00159767 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 18399 | Alfieri v. Willys Motors, 227 F. Supp. 627 | 170A+2493 | 1, 2$ Section 1221(b) of the Automobile Dealers' Franchise Act defines the term "franchise" as:"the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract." (Emphasis added.) | Pleading and affidavits presented issues of fact as to whether manufacturer failed to act in good faith in complying with provisions of a franchise in regard to withholding of deliveries of vehicles, and in regard to cancellation of the franchise, and as to whether a written demand for reimbursement of remaining parts had been refused by manufacturer, precluding summary judgment for manufacturer in regard to such claims; but manufacturer was entitled to summary judgment on purported claim for breach of oral agreement of exclusive dealership. Automobile Dealers' Day in Court Act, S 1(b), 15 U.S.C.A. S 1221(b). | Is franchise a written agreement or contract that fixes the legal rights and liabilities of the parties to such agreement or contract? | 018487.docx | LEGALEASE-00159846-LEGALEASE-00159847 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 18400 | City of Groton v. Yankee Gas Servs. Co., 224 Conn. 675 | 183+4 | The plaintiff also claims that, even if its gas franchise is not exclusive, it was entitled to injunctive relief because the defendant could not enter its franchise territory under its charter without the plaintiff's consent. The grant of a nonexclusive franchise does not carry with it the right to be free from competition from another entity that has been granted a valid franchise. It does, however, embody a right to be free from unauthorized competition, and if a party enters a franchisee's territory without such authorization, an injunction is a proper remedy. Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 521, 49 S.Ct. 235, 237, 73 L.Ed. 483 (1929); 36 Am.Jur.2d, supra, " 34. Therefore, our determination of whether the trial court improperly denied the plaintiff's request for injunctive relief requires us to examine whether the defendant entered the plaintiff's franchise area under a valid franchise. | Grant of a nonexclusive franchise does not carry with it right to be free from competition from another entity that has been granted a valid franchise; however, it does embody right to be free from unauthorized competition, and if party enters franchisee's territory without such authorization, injunction is proper remedy. | What are nonexclusive franchises? | 018502.docx | LEGALEASE-00160008-LEGALEASE-00160009 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 18401 | Gulf Ref. Co. v. Cleveland Tr. Co., 166 Miss. 759 | 101+1212 | For practical purposes, franchises, so far as relating to corporations, are divisible into (1) corporate or general franchises; and (2) special or secondary franchises. The former is the franchise to exist as a corporation, while the latter are certain rights and privileges conferred upon existing corporations, such as the right to use the streets of a municipality to lay pipes or tracks, erect poles or string wires." 2 Fletcher's Cyclopedia Corp. " 1148; 14 C. J. p. 160; Adams v. Yazoo & M. V. R. Co., 24 So. 200, 317, 28 So. 956, 77 Miss. 253, 60 L. R. A. 33 et seq. | Franchises of corporation are corporate or general franchises, which are franchises to exist as corporation, and special or secondary franchise, which are certain rights conferred on existing corporations. | What are general and secondary franchises? | 018508.docx | LEGALEASE-00160040-LEGALEASE-00160041 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 18402 | Raynor v. New York & L.I. Traction Co., 86 Misc. 201 | 183+2 | No doubt the rule of construction that in franchises the grantees are to take only what is clearly granted, and the they shall take nothing by implication which is not necessary for the full and fair enjoyment of the thing granted, has application only to a franchise whose terms are ambiguous and from which it is attempted to spell out privileges or rights not within the ordinary meaning of the words used. In such case the instrument must be construed against the grantee and in favor of the public. Mayor v. Broadway & Seventh Avenue R. R. Co., 97 N. Y. 281; Dermott v. State, 99 N. Y. 101, 107, 1 N. E. 242; Mayor v. Starin, 106 N. Y. 1, 19, 12 N. E. 631. But in the case of a franchise which is free from ambiguity, where the words used are so clear that only one meaning can be attached to them, it is the duty of the court to give force to the provisions of the contract, giving the language used its ordinary and accepted meaning. | Where the language of a franchise is ambiguous, it will be construed against the grantee and in favor of the public, but, where free from ambiguity, the court will give the language used its ordinary and accepted meaning. | How are franchises construed when ambiguous? | 018512.docx | LEGALEASE-00160052-LEGALEASE-00160054 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 18403 | City of Lakewood v. Pierce Cty., 106 Wash. App. 63 | 183+1 | "A franchise [is] ... the right of a public utility to make use of the city streets for the purpose of carrying on the business in which it is generally engaged, that is, of furnishing service to members of the public generally." Washington Fruit & Produce Co. v. City of Yakima, 3 Wash.2d 152, 157"58, 100 P.2d 8, 103 P.2d 1106 (1940). Franchises have the legal status of contracts. General Telephone Co. of the Northwest, Inc. v. City of Bothell, 105 Wash.2d 579, 584, 716 P.2d 879 (1986). "Until both parties accept the terms of a franchise, it lacks the essentials of a contract; it is a mere proposition." General Telephone, 105 Wash.2d at 586, 716 P.2d 879. A "city cannot ... compel the [utility] to accept its terms for the continued occupation of the streets." General Telephone, 105 Wash.2d at 586, 716 P.2d 879 (internal cites omitted). In General Telephone, the city sought to impose a franchise term that the utility was unwilling to accept. In this case, Lakewood and the County negotiated regarding terms of a potential franchise agreement for the County's use of Lakewood's streets to operate a sewer system, but the County did not accept the terms Lakewood offered. Until both parties agree on terms, no franchise exists, and Lakewood may not compel the County to agree to its terms. | Until both parties accept the terms of a franchise, it lacks the essentials of a contract; it is a mere proposition. | Does a franchise require acceptance by both parties? | 018554.docx | LEGALEASE-00159457-LEGALEASE-00159458 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 18404 | Artman Williams Co. v. State, Dep't of Highways & Transp., 330 A.2d 432 | 185+1 | | Generally, even if an franchise requires occupancy of land, franchise does not create an interest in land. | Does franchise create an interest in the land? | 03867.docx | USAGE642-00109976; USAGE642-00109977 | Condensed, SA, Sub 0.86 | 0.86 | 0 | 1 | | 1 | 1 |
| 18405 | Concorp Nursing Centers v. Aetna Roofing, 435 S.W.3d 37 | 217+1000 | | In an insurance arrangement, the insurer assumes the risk that a loss may occur in exchange for a premium payment; in this way, insurance companies are in the business of spreading losses across the premiums they receive. | In an insurance contract, what is the role undertaken by the insurer? | Insurance - Memo 54 SNL_04331.docx | ROSS-002327984 & ROSS-003279865 | Condensed, SA, Sub 0.74 | 0.74 | 0 | 1 | | 1 | 1 |
| 18406 | Dist. v. Sobini Cts. Pool & Roofing, 194 Cal. App. 4th 891 | 309+5 | | Whereas insurance protects the principal against risk, a performance bond protects the obligee against the principal's default. There are... performance of a contract, and the contractor's liability insurance policy, which indemnifies the contractor from injury claims based on negligence or accident. | How is a performance bond different from insurance? | Insurance - Memo 62 - SNL 12/16/2017_64335.docx | ROSS-003280171 & ROSS-003280172 | Condensed, SA, Sub 0.57 | 0.57 | 0 | 1 | | 1 | 1 |
| 18407 | Meyer v. U.S., 213 F.2d 278 | 220+939.3.1 | | A partnership interest is a capital asset for income tax purposes and, when sold, warrants treatment as does each class of assets. 26 U.S.C.A. 1171(j) | Is a partnership interest a capital asset? | Partnership - Memo 491 - SB_64456.docx | ROSS-003279262 ROSS-003279363 | Divier, SA, Sub 0.88 | 0.88 | 0 | | | | 1 |
| 18408 | Guild v. Herrick, 51 N.Y.S.2d 326 | 289+674(2) | | Where some members of stock brokerage firm knew or should have known that customer's securities were being improperly manipulated in the course of partnership business, other partners could not escape liability by claiming that they had no knowledge of the manipulation. Partnership Law 5.24 | Are necessary parties to an action for a partnership accounting? | 03256k.docx | USAGE64_00100238; USAGE64_00100239 | Condensed, SA, Sub 0.11 | 0.11 | 0 | 1 | | | 1 |
| 18409 | Jones v. Anheuser-Busch Brewing Ass'n, S., 905 S.W. 631 | 289+1015 | | All the partners are necessary parties to a suit for settlement and accounting of partnership affairs. | Are all partners necessary parties to a suit for settlement and accounting of partnership affairs? | 03264 2.docx | USAGE64_00160032; USAGE64_00160033 | Condensed, SA, Sub 0.63 | 0.63 | 0 | 1 | | 1 | 0 |
| 18410 | In re Middleton Metro Assocs., 229 B.R. 381 | 289+934 | | Under former Connecticut partnership statute, bankruptcy of one partner causes dissolution of partnership. C.G.S.A. § 34-69. | Does a bankruptcy of one partner cause dissolution of the partnership? | Partnership - Memo 541 RM_64664.docx | ROSS-002296556 | Condensed, SA, Sub 0.85 | 0.85 | 0 | 1 | | 1 | 1 |
| 18411 | Baker v. McCue-Moyle Development Co., 695 S.W.2d 906 | 289+939 | | Generally, each partner is at once a principal and agent of partnership, and other partners in matters pertaining to partnership business. | In a partnership, is each partner both a principal and an agent of the partnership? | Partnership - Memo 543 - GP_64574.docx | ROSS-003282192 ROSS-003281983 | Condensed, SA | 0.77 | 0 | 1 | | 1 | 1 |

Appendix D

3246

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 13412 | McGuire Real Equities Series XXV v. David McDermott Chevrolet, 93 Conn. App. 693 | 228v25(1) | "It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." … (Citations omitted; internal quotation marks omitted.) Waicaitis Business Inv. Co., 274 Conn. 495, 676 A.2d 876 (2005). | The right of a plaintiff to recover is limited to the allegations of his complaint. | Is the right of a plaintiff to recover limited to the allegations of his complaint? | Pleading - Memo 000 - RMW_549 72.docx | ROSS-003286043-ROSS-003286044 | Condensed, SA | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 13413 | Jung v. St. Paul's Par., 322 Pa. 167 | 307A+497 | A request to open a judgment of non pros, like the opening of a default judgment … Naser v. Sargent Electric Co., 407 Pa. 165, 180 A.2d 61 (1962). | Judgment of non pros should have been opened in personal injury action even though no complaint was filed within 20 days of form praecipe for rule to file complaint where parties were engaged in settlement negotiations and suit was mailed noted in with two sets of discovery requests and thus facilitated error in failing to timely file the complaint. Rules Civ.Proc., Rule 440, 42 Pa.C.S.A. | Is a request to open a judgment of non pros (JNP's) like the opening of a default judgment, in the nature of an appeal to the equitable powers of the court? | 039699.docx | LEGALEASE-00160453-LEGALEASE-00160454 | Condensed, SA, Sub | 0.65 | | 1 | 1 | 1 | 1 |
| 13414 | In re Chicago Flood Litig., 176 Ill.2d 179 | 307A+461 | When ruling on a motion to dismiss, either for failure to state a cause of action … and (4) Abnormally Dangerous or Ultrahazardous Activity. | In ruling on motion to dismiss, court may not consider affidavits, product of discovery, documentary evidence not incorporated into pleadings, or other evidence. S.H.A. 735 ILCS 5/2-615. | Should the court construe the pleadings and supporting documents in favor of non-moving party when ruling on a motion to dismiss? | 039893.docx | LEGALEASE-00359807-LEGALEASE-00359808 | SA, Sub | 0.79 | | | 1 | 1 | 1 |
| 13415 | Callaghan v. Vill. of Des Moines, 401 Ill. App. 3d 287 | 307A+563.1 | The affirmative matter asserted by defendants here is immunity under section 2-106 of the Act, "Immunity from suit under the Tort Immunity Act is an 'affirmative matter' properly raised under section 2-619(a)(9). See Van Meter, 207 Ill.2d at 377, 278 Ill.Dec. 555, 799 N.E.2d 273. The affirmative matter must support the motion with affidavits. Van Meter, 207 Ill.2d at 377, 278 Ill.Dec. 555, 799 N.E.2d 273; Edelman, Combs & Police Commissioners, 36 Ill.App.3d 669, 877, 300 Ill.Dec. 634, 845 N.E.2d 53 (2006). The defendant bears the burden of proof of the affirmative matter. Springborn Heating & Air Conditioning, 347 Ill.App.3d at 750, 3847˝55 King Drive At Oakwood, LLC, 387 Ill.App.3d 906, 909, 327 Ill.Dec. 245, 901 N.E.2d 978 (2009). | On a motion to dismiss based on affirmative matter avoiding the legal effect of a claim, the defendant bears the burden of proof of the affirmative matter. S.H.A. 735 ILCS 5/2-619(a)(9). | Should the defendant bear the burden of proof of the affirmative matter? | 039899.docx | LEGALEASE-00359527-LEGALEASE-00359528 | Condensed, SA, Sub | 0.77 | | 1 | 1 | 1 | 1 |
| 13416 | Anthony v. City of Omaha, 283 Neb. 868 | 226v29 | Both occupation taxes and sales taxes be "gross receipts taxes." A "gross receipts tax" is a tax on the gross receipts from the computation of the amount of taxes due with reference to total revenues arising out of the subject matter upon which the tax is generally considered to be "of no significance in determining the nature of the exaction imposed in any particular tax legislation." | Both occupation taxes and sales taxes can be calculated upon gross receipts. | Can both occupation taxes and sales taxes be calculated upon gross receipts? | 040181.docx | LEGALEASE-00160316-LEGALEASE-00160317 | Condensed, SA | 0.82 | | 1 | 0 | 1 | 1 |
| 13417 | Home Builders Ass'n of Greater Des Moines v. City of W. Des Moines, 644 N.W.2d 339 | 371+1249 | This court has defined a tax as "a charge to pay the cost of government without regard to special benefits conferred." … is a condition to the exercise of a privilege. | An "excise tax" is a tax imposed on a transaction or as a condition to the exercise of a privilege. | Is an "excise tax" a condition to the exercise of a privilege? | 040251.docx | LEGALEASE-00159873-LEGALEASE-00159874 | Condensed, SA | 0.88 | | 1 | 0 | 1 | 1 |

3247

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Measure Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18418 | Bragg v. State, 285 Ga. App. 608 | 3.77I>55 | On appeal, Bragg challenges his conviction for aggravated stalking… | It is an element of aggravated stalking that the contact be without the victim's consent… | Is it an element of aggravated stalking that the contact be without the victim's consent? | 040806.docx | USAGEAE 00160288 USAGEAE 00160289 | Condensed, SA | 0.88 | 0 | | 1 | 1 | 1 |
| 18419 | Ex parte N.W, 748 So. 2d 190 | 3.77I>0 | Because no "physical contact" is alleged in this case, the trial court could find N.W. guilty of the offense of harassment only in this case… | Language, whether abusive or obscene, is not "physical action," for purposes of menacing statute. Code 1975, § 13A-6-23(a). | "Can language constitute 'physical action' for purposes of the menacing statute?" | 040816.docx | USAGEAE 00160296 USAGEAE 00160297 | SA, Sub | 0.93 | 0 | | 1 | 1 | |
| 18420 | Wooley v. Lyon, 117 Ill. 244 | 8.30I>14 | The truth here to be given for the plaintiff is rejected by, which was to the effect that if either the maker or the indorsee was legal… | Notice and protest of negotiable paper is, in case of conflict, by laws of place where instrument is payable. | "Does the law of the place a note is payable govern the time and law of payment, manner of protest and giving notice?" | Bills and Notes - Memo 1393 - JK_66436.docx | ROSS-003312364-ROSS-003312587 | Condensed, SA, Sub | 0.9 | 0 | | 1 | 1 | |
| 18421 | Winecky v. Miller, 257 Wis. 589 | 8.30I>0 | In the action the Wisconsin court it was found that the note was executed in Illinois, which finding is not attacked… | Where note was executed in Illinois, rights and obligations of parties were governed by Illinois law. | Which state's law governs the rights of parties? | Bills and Notes - Memo 1393 - JK_66290.docx | ROSS-002280463-ROSS-003280464 | Condensed, SA | 0.6 | 0 | | 1 | 1 | |
| 18422 | Lambeth v. Lewis, 114 Ga. App. 191 | 162>202.10 | A check drawn out of itself operate as an assignment of any part of the drawer's funds deposited with the bank upon which the check is drawn… | Will a check be revoked by operation of law on days after the death of the drawer? | | 010522.docx | USAGEAE 00101481- USAGEAE 00101482 | Condensed, SA, Sub | 0.63 | 0 | | 1 | 1 | |
| 18423 | Quinn v. Pike, 50 Cal. App. 83I>432 | 83I>432 | Defendant company contended at the trial, and does here, that the indorsement to it was a new indorse upon which no liability is… | Defendant payee of a note negotiable in form, but nonnegotiable because of collateral conditions, is subject to claim of prior holder of the note… | Can the assignment by the payee of a promissory note of all his interest in the note be a qualified indorsement? | 010586.docx | USAGEAE 00160627- USAGEAE 00160628 | Condensed, SA | 0.19 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18424 | State v. Disney, 909 S.W.2d 20 | 350H+409 | Offenses which overlap with the same intent can make concurrent sentencing appropriate. | As for the relationship of the aggregate sentence to the severity of the defendant's crime/conduct, we are mindful that the offenses were nonviolent, were directed at one public servant and consisted of a short series of similar, related conduct of an ongoing nature. We note that our supreme court has considered the fact that offenses which overlap with the same intent can make concurrent sentencing appropriate. See State v. Holt, 691 S.W.2d 520, 521 (Tenn.1984). Such is the case before us. | An concurrent sentencing appropriate given overlapping offenses? | Bribery - Memo 1050 - CSL_6541.docx - MSL_6541.docx | R055/00029239-R055-00029240 | Condensed, SA | 0.83 | 0 | 1 | 0 | | 1 |
| 18425 | Mack v. (Decision Making), 449 A.2d 202 | 15d+53.10(1) | Validity of waiver depends upon totality of circumstances. | We agree with the result reached by the Superior Court but would arrive at same via an intermediate route. It is technically imprecise to speak in terms of estoppel, as the Court below did, in the same breath that one speaks of the process by which a person becomes dispossessed of certain constitutional rights. While estoppel is properly invoked in a private context where one party does something, or refrains from acting, in reliance upon the conduct of another... [text continues] The validity of a waiver depends upon the totality of the circumstances. See Dellai, supra. | Does the validity of a waiver depend upon the totality of the circumstances? | Estoppel - Memo 1236 - C CSL_65202.docx | R055/00027935.0-R055-00027935.4 | Condensed, SA | 0.96 | 0 | 0 | 1 | | 1 |
| 18426 | Curtis v. Hubbel, AZ Ohio App.320 | 48A+18(8) | Statute requiring drivers to maintain speed permitting them to stop within assured clear distance ahead held applicable to both day and night driving. Gen Code, § 12603, 113 Ohio Laws, p. 283 (repealed 1941. See Gen.Code, § 6307-21). | Section 6307 and 6307-21, General Code, in conjunction with section 12603, show the attempt and intent of the Legislature to safeguard those lawfully upon a public road against injury by automobiles driven thereon at times too rapidly for the protection of the above quoted portion of section 12603 is obvious, and its language is explicit. It applies to drivers of all vehicles... [text continues] | Should the speed of the automobile at all times be such as to permit the driver to stop within the range of his vision? | 018837.docx | L0141A-05E-00161761-L0141A-05E-00161762 | Condensed, SA | 0.84 | 0 | 1 | 1 | | 1 |
| 18427 | Petro v. Serio, 9 Misc. 3d 805 | 217+1001 | Under the "substantial control" test for determining whether a service and maintenance contract constitutes a warranty contract or other insurance contract subject to regulation, an event is deemed fortuitous if its occurrence is beyond the substantial control of either party, and determination of whether coverage is dependent on a fortuitous event or is generally an issue of law for the court to decide. McKinney's Insurance Law § 1101(a)(1). | In re v. Feinstein, the Court of Appeals held that plans for prepaid legal services operated through a warranty fund must bear the insurance for the benefit of certain members about constitute insurance, in part, because the rendition of legal services was not generally triggered by a fortuitous event... [text continues] Electronic Realty Associates, Inc., 94 Misc.2d 254, 404 N.Y.S.2d 283. | Does the plans for prepaid legal services constitute insurance? | 010924.docx | L0141A-05E-00161565-L0141A-05E-00161566 | SA, Sub | 0.7 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 22,876 | 9,073 |
| 18428 | Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am., 359 U.S. 65 | 217v1001 | The difficulty is that absent some guarantee of fixed income, the variable annuity places all the investment risks on the annuitant, none on the company. The holder gets only a pro rata share of what the portfolio of equity interests reflect—which may be a lot, a little, or nothing. We realize that life insurance is an evolving institution. Common knowledge tells us that the forms have greatly changed even in a generation. And what would not undertake to freeze the concepts of "insurance" or "annuity" into the mold they fixed when their federal Acts were passed. But we conclude that the concept of "insurance" involves some investment risk-taking on the part of the company. The risk of mortality, assumed there, gives these variable annuities an aspect of insurance. Yet it is apparent, not real; superficial, not substantial. In hard reality the issuer of a variable annuity that has a constant of a fixed return assumes no true risk in the insurance sense... [text continues] | In common understanding, "insurance" involves some fashion of guaranty that at-least some fraction of benefits will be payable in fixed amounts. | Does insurance involve a guarantee? | 019510.docx | LEGALEASE 00016177 LEGALEASE 00016178 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 18429 | Baron v. Ferguson, 707 F.Supp. 988 | 46Hv158 | Retired partner of now-dissolved law firm, who claimed that he was aggrieved by alleged conduct of partners which delegated to him certain responsibilities under partnership agreement, could not bring action against former partners for violation of provision of Illinois Uniform Partnership Act prohibiting actions by partners which made it impossible to carry on ordinary business of partnership, 805 ILCS 205/22... [text continues] | Retired partner of now dissolved law firm, who claimed that he was aggrieved by alleged conduct of partners, which delegated to him certain responsibilities under partnership agreement, could not bring action against former partners for violation of provision of Illinois Uniform Partnership Act prohibiting actions by partners which made it impossible to carry on ordinary business of partnership. | Can a retirement of a partner from a partnership result in the dissolution of the partnership? | Partnership - Memo 569 - GP_65241.docx | ROSS-003296443-ROSS-003296444 | Condensed, SA, Sub | 0.54 | | 1 | 1 | 1 | 1 |
| 18430 | Wharff v. Iowa Methodist Hosp., 219 N.W.2d 18 | 307Av499 | The general policy in this jurisdiction has been to allow trial on the merits. In general, a liberal approach is taken in appeals from rulings overturning default. See Rule 236, R.C.P (relief because of mistake, inadvertence or excusable neglect). In Hulth v. Sholty, 199 N.W.2d at 336-337, this same liberal approach taken to allowing default to be set aside by 236 appeal was considered in the approach to be followed with respect to reinstatement under rule 215.1, R.C.P., in view of the 1965 amendment. | The general policy in this jurisdiction has been to allow trial on the merits! | Is the general policy in jurisdiction to allow trial on the merits? | 019672.docx | LEGALEASE 00161186 LEGALEASE 00161187 | Condensed, SA, Sub | 0.87 | | 1 | 1 | 1 | 1 |
| 18431 | Brigham v. Elgin's of Philadelphia, 406 Pa. 99 | 307Av499 | The relief sought of the court below was by way of grace and not of right, and its grant or refusal was within the discretion of the trial court. On appeal, we may not reverse unless there was a clear abuse of discretion. Pinsky v. Master (Pa.) | Relief from judgment of non pros. is by way of grace and not of right, and its grant or refusal is discretionary and reviewing court may not reverse absent clear abuse of discretion. | Is relief from judgment of non pros. by way of grace and not of right? | 019609.docx | LEGALEASE 00161110 LEGALEASE 00161111 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 18432 | Weymers v. Khera, 454 Mich. 639 | 302v291(1) | As the Court of Appeals so aptly stated in its opinion: Where a motion for summary disposition is granted under MCR 2.116(C)(10), the trial court is required to freely grant a party leave to add a new claim or new theory of recovery unless one is provided by MCR 2.118, unless the amendment would be futile. MCR 2.118(A)(2) provides that leave to amend "shall be freely given when justice so requires. The rules pertaining to the amendment of pleadings are designed to facilitate amendment except where prejudice to the opposing party would result. Amendment is generally a matter of right rather than grace. A motion to amend ordinarily should be granted, and denial should only be for particular reasons, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiency by amendments previously allowed, undue prejudice to the opposing party, or futility. | Trial court may find that prejudice has resulted from delay in seeking to amend pleading, and may deny motion for leave to amend on that basis, when moving party seeks to add new claim or new theory of recovery on basis of same set of facts after discovery is closed and just before trial, and opposing party shows that he did not have reasonable notice, from any source, that moving party would rely on new claim or theory at trial. MCR 2.118. | If summary disposition is appropriate based upon a failure to state a claim upon which relief can be granted, should plaintiffs be given the opportunity to amend their pleading? | 040516.docx | LEGALEASE 00161855 LEGALEASE 00161856 | Condensed, SA, Sub | 0.48 | | 1 | 1 | 1 | 1 |
| 18433 | In re Marriage of Rauth, 310 S.W.3d 25 | 307Av499 | A motion for judgment on the pleadings shares similarities with a motion to dismiss for failure to state a claim, but it is also distinct. A defending party who makes a motion for judgment on the pleadings admits, for purposes of the motion, the truth of all well-pleaded facts in the pleading of the opposing party and, at the same time, avers that these facts are insufficient in law to warrant relief. A motion for judgment on the pleadings is proper when, even if all of plaintiff's well-pleaded facts are true, they are insufficient as a matter of law. Nazeri, 34 S.W.3d at 134. However, a motion to dismiss is not made on the pleadings, whereas a motion for judgment on the pleadings is not made until the pleadings are closed. Further, if a court sustains a motion to dismiss, it shall freely grant leave to amend the pleading, but the motion for judgment on the pleadings contemplates a final judgment on the merits, LoMaz v. Adams, 313 S.W.2d 875, 777 (1938). | If a court sustains a motion to dismiss, it shall freely grant leave to amend, but a motion for judgment on the pleadings contemplates a final judgment on the merits. | Does a motion for judgment on the pleadings contemplate a final judgment on the merits? | Pretrial Procedure - Memo 1156 I - C - BP.docx | LEGALEASE 00051130 LEGALEASE 00051131 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

3250

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,973 | 23,876 | 9,029 |
| 18434 | Johnson v. J.W. Const. Co., 307A=383 | 307A=383 | Moore, 685 SW 2d at 578. Previously, the court had acknowledged that in imposing the question of whether the cause should be dismissed for want of prosecution, the trial court is entitled to consider the entire history of the case. In this case, the record reflects that settings were obtained by mailing a letter requesting a setting to the clerk. If a dismissal for want of prosecution were appropriate, the abuse of discretion in a case setting had been obtained, a plaintiff, even if he had displayed a lack of diligent for years, could default a threatened dismissal for want of prosecution by obtaining a setting at the last minute. Such a rule would defeat the trial court's right to consider the entire history of the case in determining whether or not it should be dismissed for want of prosecution. In Moore, the court recited a detailed history showing the plaintiff's inaction of the cause during an eight-month period preceding the dismissal. | Trial court did not necessarily abuse its discretion by dismissing for failure to prosecute merely because plaintiff had requested a trial setting which revoking the issue of whether to dismiss is set for want of wait for a short time after the case was dismissed for want of prosecution prosecution?" | Is the trial court entitled to consider entire history of a case, in to prosecute merely because plaintiff had requested a trial setting which revoking the issue of whether to dismiss is set for want of wait for a short time after the case was dismissed for want of prosecution prosecution?" | Pretrial Procedures Memo 1179 1 - C - NC_45488.docx | ROSS 003028143 ROSS-003028143 | SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 18435 | Providence Bank v. Billings, 29 U.S. 514 | 371=2003 | That the taxing power is of vital importance, that it is essential to the existence of government, are truths which it cannot be necessary to reaffirm. They are acknowledged and asserted by all. It would seem that the relinquishment of such a power is never to be assumed. We will not say that a state may not relinquish it; but a consideration sufficiently valuable to induce a partial release of it may not exist; but as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the state to abandon it does not appear. | The taxing power is of vital importance and is essential to the existence of government. | Is the taxing power essential to the existence of government? | 043034.docx | LEGALEASE 00161699-LEGALEASE 00161700 | Condensed, SA, Sub | 0.87 | | 1 | 1 | 1 | 1 |
| 18436 | Providence Bank v. Billings, 29 U.S. 514 | 371=2003 | That the taxing power is of vital importance, that it is essential to the existence of government, are truths which it cannot be necessary to reaffirm. They are acknowledged and asserted by all. It would seem that the relinquishment of such a power is never to be assumed. We will not say that a state may not relinquish it; but a consideration sufficiently valuable to induce a partial release of it may not exist; but as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the state to abandon it does not appear. | The taxing power is of vital importance and is essential to the existence of government. | Is the taxing power a vital importance to the government? | 043035.docx | LEGALEASE 00160674-LEGALEASE 00160675 | Condensed, SA, Sub | 0.87 | | 1 | 1 | 1 | 1 |
| 18437 | Heine v. Bd. of Levee Comm'rs, 86 U.S. 655 | 371=2003 | The power we are here asked to exercise is the very delicate one of taxation. This power belongs in this country to the legislative sovereignty, State or National. In the case before us the National sovereignty has nothing to do with it. The power must be derived from the legislature of the State. So far as the present case is concerned, the State has delegated the power to the levee commissioners. | The power of taxation belongs to the legislative sovereignty, state or national. | Does the power of taxation belong to legislative sovereignty? | 041619.docx | LEGALEASE 00160809-LEGALEASE 00160810 | Condensed, SA | 0.8 | | 0 | 0 | 1 | 0 |
| 18438 | State Bd. of Tax Comm'rs of Ind. v. Jackson, 283 U.S. 527 | 371=2003 | The principles which govern the decision of this case are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. | Power of taxation is fundamental to very existence of government of several states. | Is the power of taxation fundamental to the very existence of the government of a state? | Taxation - Memo 1158 - C - IJ_45496.docx | ROSS-003295218 | Condensed, SA, Sub | 0.84 | | 1 | 1 | 1 | 1 |
| 18439 | LeRoy v. State, 192 S.W.3d 205 | 371=410 | The crime of retaliation does not require an intent to follow through with a threat, but is complete at the time the threat is made. To prove a person makes a threat, knowingly and intentionally, and for the reasons set out in the statute, then she is guilty of the crime. Under the plain language of the statute, the crime is complete when the threat is made. The statute does not require the defendant to actually carry out the threat. The offense is one of intent and therefore should not be considered to his or her statements, and (2) he constantly makes threats but does so because of the intent to carry them out, its conviction is not sound. Both of these argument are flawed. | The crime of retaliation does not require an intent to follow through with a threat, but is complete at the time the threat is made and for the reasons set out in the statute, then she is guilty of the crime. | Does the crime of retaliation require an intent to follow through with a threat? | "Threats, Stalking and Harassment - Memo 205 - C - LB_65506.docx" | ROSS-003279411 | Condensed, SA | 0.64 | | 1 | 1 | 1 | 1 |
| 18440 | Gaddis v. State, 680 N.E.2d 860 | 371=412 | Gaddis contends that the mere display of a handgun does not communicate a threat within the meaning of the intimidation statute. We must agree. Intimidation is defined by Indiana Code § 35-45-2-1, which states in relevant part: (a) A person who communicates a threat to another person, with the intent that: (1) the other person engage in conduct against his will, or (2) the other person be placed in fear of retaliation for a prior lawful act) commits intimidation, a Class A misdemeanor. | Motorist's mere display of handgun to another driver did not communicate "threat," as required to support conviction for intimidation; motorist was entitled to carrying handgun, which was properly licensed, and there was no other evidence of intent to injure, Ind. Code. § 35-45-2-1. | Does the mere display of a handgun communicate a threat within the meaning of the intimidation statute? | "Threats, Stalking and Harassment - Memo 215 - C - LB_65513.docx" | ROSS-003281910 ROSS-003281911 | Condensed, SA, Sub 0.28 | 0.28 | | 1 | 1 | 1 | 1 |
| 18441 | Rensteller v. Union Sav. & Tr. Co., 89 Wash. 37 | 413=195 | Respondent was not engaged in an extrahazardous work within the meaning of the act. Though workmen's Compensation Act. Here is located in an extrahazardous vocation or occupation, but the injured person engaged in such employment is not governed by the statute. | Where neither the work of a janitor in an office building nor work about an elevator shaft had been classified as extrahazardous by the Industrial Insurance Department as authorized by Workmen's Compensation Act, § 2, an injury to a person engaged in such employment is not governed by the statute. | Does the Workmen's Compensation Act provide compensation for injuries from employments recognized as inherently and constantly dangerous? | Workers' Compensation Memo 689 - C - ANC_65532.docx | ROSS-003308839 | Condensed, SA, Sub | 0.52 | | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18442 | Bizzack v. Air Prod., 427 F. Supp. 2d 680 | 8.30(+)-10 | It is well-settled that Federal courts sitting in diversity, as here, must apply the choice-of-law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Here, Virginia is the forum state. In Virginia, the making of a contract is governed by the place where the contract is made, and performance is to be governed by the law of the state of performance. See Occidental Fire & Cas. Co. v. Bankers & Shippers Ins. Co., 564 F. Supp. 1501, 1503 (W.D. Va. 1983). Moreover, the place of the payment of a note is a determinative of the place of performance of the contract. See Michie's Jurisprudence of Va. & W. Va., Conflict of Laws, Domicile & Residence ("Michie's"), 7.24 (1999) (citing Gale v. S. Bldg. & Loan Ass'n v. 117 F. 731, 732 (4th Cir. 1902). Since payments under the Note were payable to Bizzack, who held a principal place of business in Virginia, Virginia law is controlling. | Under Virginia's choice of law rules, place of payment of note is a determinative of place of performance of contract. | Is the place of payment of a note determinative of the place of performance of the contract? | 009179.docx | LEXLEX-SE 00162527-LEXLEX-SE 00162573 | Condensed, SA, Sub | 0.89 | 0 | 1 | | 1 | 1 |
| 18443 | Woolsey v. Lyon, 117 Ill. 244 | 8.30(+)-14 | The tech instruction given for the plaintiff's objection to, which was to the effect that the defendant, if he has his maker of the note for money was to demand informed of their non-payment, and, being so informed, acknowledged his liability as indorser, and agreed to settle or pay the amount thereof due. It is conceded, under the holding of law, whether the protest was legally or proper. The instruction, if faulty, could have done the defendant no harm, for the reason that the necessary steps under the law of this state were taken to charge defendant as indorser, viz., demand of payment, protest for non-payment, and notice of the protest and dishonor. Indeed, it is so provided, as where the evidence shows were duly made, and given in accordance with our own law, where the defendant's liability became fixed, and it was immaterial whether or not he made a subsequent promise to pay the note. The notes being payable in this state, and the law of the state regulates the making, and the place of residing there, the law of the place where the notes were payable we consider generally as to time and mode of presentment for payment, manner of protests, and giving notices. 2 Pars. Notes & Bills, 344 & 355; 1 Daniel, Neg. Inst. " 911, 912; Rothschild v. Currie, 1 Adol. & El. 43, § 43; Hirschfeld v. Smith, L.R. 1 C.P. 340. There, it is conflict of the authorities as to what law should govern in the giving of notice of dishonor, whether the place of the contract or the place where the notes were payable, but the weight of authority, as indorsers, is in accordance with our own law. Rothschild v. Currie, supra, and some other American cases, hold the notice should be according to the law of the place of the indorsement, and Rowe v. Young, 2 Brod. & Bing. 165; Story on Notes, 712, In order to allow case of Aymar v. Sheldon. We are disposed to adopt the view that the notice should be given in accordance with the law of the place where the bill or note is made payable, as resting upon the better reason. | Notice and protest of negotiable paper is governed, in case of conflict, by laws of place where instrument is payable. | Does the law of the place where notes are payable govern the laws of protest and giving notice? | Bills and Notes - Memo 1338 - MJ_662 (1).docx | ROSS 002106502-ROSS-002106503 | Condensed, SA, Sub | 0.94 | 0 | 1 | | 1 | 1 |
| 18444 | City of New Brighton v. 2000 Ford Excursion VIN No. 1FMNU43S5YEA74156, 622 N.W.2d 364 | 119H+15 | It is presumed that forfeiture do not violate double jeopardy. Haase, 602 N.W.2d at 478 (citing Lukkason, 590 N.W.2d at 806). One 1992 Harley Davidson, 555 N.W.2d at 751; 1986 Mazda 626, 546 N.W.2d at 307 (N). We presume the statutory forfeitures do not violate double jeopardy. Lukkason, 590 N.W.2d at 807. | It is presumed that civil forfeitures do not violate double jeopardy. U.S.C.A. Const.Amend. 5; M.S.A. Const. Art. 1, 5.7. | Is it presumed that civil forfeitures do not violate double jeopardy? | Double Jeopardy Memo 200 - C - PS_66957.docx | ROSS 002019849 | SA, Sub | 0.5 | 0 | | | | 1 |
| 18445 | Weber v. Interstate Fire & Cas. Co., 897 2d 1188 | 217+1001 | A review of Minnesota and Eighth-Circuit decisions recognizes the fundamental premise that an insurance policy protects an insured from fortuitous loss. For example, if a building contractor mistakenly breaks one of the underlying mistakes or carelessness, the resulting damages is intended to be covered. However, the damage is not intended to be unintended losses, no coverage is intended. See Bartlett, 240 N.W.2d at 313 (holding that contractor who knowingly violated contract specifications consciously controlled risk of loss, and cannot escape liability). While an insurance reasonable expectation in securing a CGL policy that the policy will cover reasonable loss against him, it does not necessarily follow that all negligent acts are covered. This court has held under Minnesota law that there may be instance when, even though an insured was negligent, the insured should not have known that their losses would be expected. See Auto-Owners, 687 F.2d at 719. The difference between damages that are reasonably foreseeable and damages that are substantially probable is one of degree of expectability. Id. at 720. | It is fundamental premise that insurance policy protects insured from fortuitous loss. | Does an insurance policy protect insured from fortuitous loss? | Insurance - Memo 104 - SN_66088.docx | ROSS 001338904 ROSS-001338944 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | 1 |
| 18446 | Price v. Vattes, 161 S.W.3d 397 | 289+492 | The party asserting the existence of a partnership has the burden of proving a partnership. We never presume that a partnership exists and the evidence against the party asserting the existence to establish all elements of a partnership by clear, cogent, and convincing evidence. Morrison v. Labor and Indus. Relations Comm., 23 S.W.3d 902, 907-908 (Mo.App. W.D.2000). A partnership is a contract of two or more competent persons to place their money, effects, labor and skill or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions. Hillme, 73 S.W.3d at 317. In his request to the summary judgment motion, Price did provide evidence to show a prima facie case of a partnership between him and Vattes. To withstand a summary judgment motion against him, Price was required to provide some specificity as to the terms of the partnership, including the division of profits and losses. He did not do so. | Party asserting the existence of a partnership have the burden of proving a partnership. | Does the party asserting the existence of a partnership have the burden of proving a partnership? | Partnership - Memo 192 ROSS-002279909 ROSS-SN - 1125_00017_65960.docx 002279910 | ROSS-002279909 ROSS-002279910 | Condensed, SA | 0.91 | 0 | 1 | | 1 | |
| 18447 | Tjornhoro v. Kohler, 425 N.W.2d 292 | 289+1161 | A partner has the right to a formal account when "circumstances render it just and reasonable." See Dieser v. Mueller, 412 N.W.2d 1201 (1983). In fact, formal accounting would be reasonable given the circumstances of this case. An action for an accounting is equitable. Mann v. M2 Invs., 264 N.W.2d 541, 545 (Minn. 1978). Equity has exclusive jurisdiction of certain matters, between partners. Jelinek v. Des Moines Drug Co., 235 Iowa 678, 682, 17 N.W.2d 280, 290 (Iowa 1945). | Does a partner have the right to account when circumstances are just and reasonable? | Partner had right to formal accounting under circumstances which rendered it just and reasonable. M.S.A. 323.21(6). | 023098.docx | LEXLEX-SE 00161261-LEXLEX-SE 00161262 | SA, Sub | 0.75 | 0 | | | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18448 | Satterfield v. State, 158 So. 3d 380 | 307k495 | There is no error in denying leave to amend after the granting a motion to dismiss. Satterfield's motion for leave to amend requested that the amendment be brought into the suit as "a party and that Satterfield be granted an accounting and relief for 'violation of statute.'" Again, Satterfield fails to show that she is entitled to the requested relief, as the amendment would be futile. Mondelli v. Newkirk, 987 So.2d 477, 482 (Miss. Ct.App. 2008). We reverse and ... has been thrown under this issue. | Finally, Satterfield contends that the trial court erred in not permitting him to amend his complaint in response to the granting of a motion to dismiss. Satterfield's motion for leave to amend requested that the amendment be brought into the suit as "a party and that Satterfield be granted an accounting and relief for 'violation of statute.' Again, Satterfield fails to show that she is entitled to the requested relief, as the amendment would be futile. Mondelli v. Newkirk, 987 So.2d 477, 482 (Miss. Ct.App. 2008). We reverse and render ... | Is there an error in denying leave to amend after the granting a motion to dismiss? | Pretrial Procedure - Memo 11344 - C - NE_65977.docx | ROSS 003218384-ROSS-003218387 | Condensed, SA, Sub | 0.77 | 0 | | 1 | 1 | |
| 18449 | State ex rel. & Estop of Par. v. Young, 327 Mo. 909 | 371x2093 | Power to levy and collect taxes is purely statutory, and has been confided to the legislature and not the courts. De Armas v. Williams, 93 Mo. 158, 161-5 S. W. 904; State ex rel. v. Adams, 161, City of Cannelton v. Pyott, 18 Mo. 115, 130; 278; C. S., pages 27 to 29. Collection of taxes can only be made in accordance with the tax books as actually made and certified by the collector. State ex rel. v. Evans, 176 Mo. 310; 385 29, S.W. 485. | The power to levy and collect taxes is purely statutory, and has been confided to the legislature and not the courts. De Armas v. Williams, 93 Mo. 158, 161-5 S. W. 904; State ex rel. v. Adams, ... | Is the power to levy and collect taxes purely statutory? | 043690.docx | (USA)LASE-0016201 7-(USA)LASE-0016201 8 | Condensed, SA | 2.89 | | 0 | 1 | 1 | |
| 18450 | City of Buffalo v. Stevenson, 207 N.Y. 258 | 371x2093 | The distinction between the taxing power and the police power is to be found in the purpose for which the particular power is exercised. | The distinction between the taxing power and the police power will be found in the purpose for which the particular power is exercised. When exercised, as here, with relation to "the use of the streets," through the ordinance in question, the ordinance regulates and restrains the use of the streets either as fiscal, or revenue, measure could be read into it. The distinction was adverted to in the very early case of the ordinance of the city ... The court pointed out that, although called a license in the ordinance, it was neither in fact nor in essence a license ... | Is there a distinction between the taxing power and the police power? | Taxation - Memo 11374 - C-A_65995.docx | ROSS 003293517-ROSS-003291918 | SA Sub | 0.91 | 0 | | 1 | 1 | |
| 18451 | Mabley v. City of Fresno, 20 Cal. App. 91 | 371x2093 | "Taxes" are enforced contributions levied for public needs: states concisely both the nature and limitation of taxes. Taxes are the property of the citizen demanded and taken by the government to enable it to discharge its functions. In his work on Tax Titles, Blackwell defines taxes as "burdens imposed by the legislative power upon persons or property to raise money for public purposes." The needs of the government constitute the such occasion and limitation of the taxing power. To raise from the citizen a dollar beyond the needs of government is not taxation; it is extortion." | "Taxes" are enforced contributions levied for public needs, and the needs of the government constitute the occasion and the limitation of the taxing power. | What constitutes both the occasion and limitation of the taxing power? | Taxation - Memo 11379 - C-A_65996.docx | ROSS 003205881-ROSS-003305833 | Condensed, SA, Sub | 0.74 | 0 | | 1 | 1 | |
| 18452 | Waterhouse v. Bd. of Cleveland Pub. Sch., 68 Conn. 398 | 371x2093 | The power of taxation is one that belongs to the State in its sovereign capacity. The exercise of the power is legislative. The legislature has no authority to delegate this power in such cases as the constitution authorizes. | The power of taxation is one that belongs to the State in its sovereign capacity. The exercise of the power is legislative. The legislature has no authority to delegate this power in such cases as the constitution authorizes. Marr v. Enloe, 1 Yer. 452; Reeves v. The Civil ... | When can the legislature delegate the power of taxation? | 043370.docx | (USA)LASE-0016204 1-(USA)LASE-0016204 2 | Condensed, SA | 0.34 | | 0 | 1 | 1 | |
| 18453 | Matter of Assessment of Additional N. Carolina & Orange Cty. Use Taxes Against Vill. Pub. Corp. for Period from Apr. 1, 1972 through Mar. 31, 1978, 312 N.C. 211 | 371x3662 | Purpose of the state sales and use tax is to generate revenue for the state and to equalize the tax burden on all state residents. G.L.S 105-164.4 et seq. | The purpose of North Carolina's sales and use tax is twofold. The primary purpose, as its name indicates, is to generate revenue to support the retail merchant as a privilege tax on the right to engage in the business. Piedmont Canteen Service, Inc. v. Johnson, 256 N.C. 155, 123 S.E.2d 582 (1961). The tax is, however, designed to be passed on to the consumer. N.C.G.S. 105-164.5. Manufacturing Co. v. Johnson, 264 N.C. 32, 140 S.E.2d 744 (1965). | What is the purpose of the state sales and use tax? | Taxation - Memo 12015 - C - MG_64440.docx | ROSS 003288200-ROSS-003288204 | Condensed, SA, Sub | 0.37 | 0 | | 1 | 1 | |
| 18454 | Midcontinent Broad. Co. of Wisconsin v. Wisconsin Dept. of Revenue, 91 Wis. 2d 579 | 371x3662 | "Sales tax" is a tax imposed upon the privilege of selling. | Sales tax is a tax imposed upon the privilege of selling. Cavitt v. Department of Revenue, 64 Wis. 2d 499, 219 N.W.2d 653 (1974). Section 77.52(1) provides for such a tax on retailers doing business in the state, on the sale at retail of certain types of tangible personal property. Though the tax is ostensibly imposed on the sale, performance or furnishing of certain types of services encountered, this statute, though facially imposes the tax upon the "retailers"... The sales tax is thus economically a tax on the consumer ... Section 77.52(1) provides. The taxes imposed by this section may be collected from the consumer or user. | Is a "sales tax" a tax imposed upon the privilege of selling? | Taxation - Memo 12217 - C - TJ_64564.docx | ROSS 003283203-ROSS-003283027 | SA, Sub | 0.9 | 0 | | 1 | 1 | |

3255

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 14655 | Am. Fid. Fire Ins. Co. v. State Bd. of Equalization, 34 Cal. App. 3d 51 | 371+1602 | This Opinion centers around those sections of the Revenue and Taxation Code, and pursuant rules and regulations of the Board, which are applicable to the collection of delinquent sales and use taxes, including penalty assessments, owed to the state by retailers, persons required to pay sales and use taxes. The California sales tax is an excise tax levied for the privilege of conducting a retail business in California. The sales tax is determined by the retailer's gross receipts from sales. The use tax is applicable to tangible personal property purchased for use in California. (See § 6 Cal Jur. 2d, Sales and Use Taxes," ns. 9, 15, pp. 141-142.) The Revenue and Taxation Code requires retailers to put up bond) to insure the payment of sales and use taxes. Section 6701 specifically provides that "The [Board], whenever it seems it necessary to insure compliance with this part of the Code), may require any person subject thereto, to place with it such security as the [Board] may determine. . ." The bonds required are written on a standard form acceptable to the state. | Sales tax is an excise tax levied for privilege of conducting retail business in California, West's Ann Rev. & Tax Code, §§ 6001-7176. | Is sales tax an excise tax? | Taxation - Memo 1218 - ROSS-C_17_56485.docx C_17_56485.docx | ROSS-003207013 ROSS-003207014 | Condensed, SA, Sub 0.88 | | 0 | | | | |
| 14656 | State v. Collin, 108 Ohio App. 3d 580 | 1.77f+11 | Collin's statement, "[I]f I had a gun, I would shoot you," is what is known in law as a conditional threat. A conditional threat can constitute a violation of the menacing laws. See State v. Baier (1995), 102 Ohio App.3d 172, 183, 656 N.E.2d 1177, 1132; Columbus v. Hoffman (July 30, 1991), Franklin App. No. 91AP'18, unreported, 1991 WL 153222 ("I will bust you if you do not get off my wife."); State v. Nega (Dec. 14, 1998), Portage App. No. 97P'2083, unreported, 1990 WL 208822 ("Get the hell out of here or I'm going to shoot you."); Columbus v. James (Dec. 30, 1996), Franklin App. No. 95AP'218 and 95AP'1212, unreported, 1998 WL 964367 ("You come in here and I'll kick your ass."); State v. Sharp (June 20, 1982), Medina App. No. 1128, unreported, 1985 WL 8277 ("Keep your hand off my wife's knee or I'll kick your a."); State v. Jones (Jan. 20, 1982), Cuyahoga App. No. 43704, unreported, 1982 WL 6037 ("If you ... with me car, I'll break your damn neck, you bitch."). | Conditional threat can constitute violation of menacing laws. R.C. 55 2903.21, 2903.22. | Can a conditional threat constitute a violation of the menacing laws? | 04090_7.docx | LEGALEASE-00182388 LEGALEASE-00182389 | SA, Sub | 0.91 | | | 1 | 1 | |
| 14657 | Campbell v. Nichols, 33 N.J.L. 81 | 8.30T+10 | The note which forms the subject of this controversy, was put into writing and was signed in this state, but it was passed away and came first into legal existence in the state of New York. I have assumed that the law, therefore, it was made in this latter jurisdiction; but although thus made in New York, it was to its contents to be paid in New Jersey, and consequently, in the absence of an expression of a different intention, is to be regulated, with respect to the law of interest, by the statute of the latter state. It is conceded to be a general rule, that a contract is to be construed and governed by the law of the place in which the parties, in good faith, intend it shall be performed. Subjecting the subject of the present suit to this rule, the course of the present discussion, and the principle is obvious, that the note in dispute, as far as it may be affected by laws relating to interest, must be adjudged by legal regulations prevailing in this state. Upon this point, as to the place where it is payable, I do not see how the sum allowed upon this paper, but he will lose both interest and principle, such double effect that would run, at the rate of seven per cent at the time of the transaction of this business. Kanpck. 1864, p. 714. | A note made in one state but is drawn in one state but is delivered from the place wherein it is, signed in New Jersey, and first delivered from the possession of the maker in New York, is, in contemplation of law, made in the latter jurisdiction. | What states law governs a note that is drawn in one state but is brought into existence in another state? | 007654.docx | LEGALEASE-00162795 LEGALEASE-00162796 | Condensed, SA, Sub 0.91 | | | | 1 | 1 | 1 |
| 14658 | Commercial Credit Corp. v. Boehn, 10-74 I.L. 620 | 8.30T+10 | The place where the note was to be paid was the controlling point where it is made not material, if a particular place, it is to be treated as made in New Jersey, not made in New York, and a particular place is dated or delivered. But at a t. Los Consolidated Bank(.G.) .32, etc. N. Law 20. N. Wayne, 17 N.J. Law, 681; 7 A. 235, 101, A. de 35 V. 51 781. NY course have speaking for the court, at pages 680 and 681 (77 A.). 781, says "It was admitted that the note was signed by Mrs. Roche, in this state, where she resided, that the reserved nothing thereon and was after a accommodation of guarantor or surety for the maker. The note was dated and payable in New York, but it does not appear whether it was delivered in that state or in New Jersey. | Note will be treated as if made at a particular place treated with respect, as if were made there regardless of the place where it is dated or delivered? | Bills and Notes - Memo 1360 - RK_64266.docx | ROSS-003315063 ROSS-003315064 | Condensed, SA, Sub 0.9 | | | | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18459 | Hyatt v. Peake, 22 Vet. App. 211 | 34+104.5 | "[A] veteran's claim to disability benefits terminates at death." Richard v. West, 161 F.3d 719, 722 (Fed.Cir.1998). However, 38 U.S.C. " 5121 allows qualified survivors of the veteran to seek payment of accrued benefits owed to that veteran at the time of the veteran's death. Seymour v. Principi, 245 F.3d 1377, 1379 (Fed.Cir.2001). Section 5121(a) specifically limits accrued benefits to include only that "to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death and ... due and unpaid." 38 U.S.C. " 5121; see Haines v. West, 154 F.3d 1298, 1300 (Fed.Cir.1998). When the Court issued the August 6, 2007, decision in Mr. Hyatt's appeal, it determined that a remand was necessary so that VA could comply with its duty to assist by obtaining another service member's court-martial records, which are potentially relevant to the nature and extent of Mr. Hyatt's wounds received during his service. Hyatt v. Nicholson, 21 Vet.App. 390, 395 (2007). As Mrs. Hyatt's accrued beneficiary claim is statutorily limited to decisions and evidence in the file at the date of Mr. Hyatt's death, she asks to be substituted and that judgment be re-issued nunc pro tunc in Mr. Hyatt's appeal so that her 5121(a) claim may benefit from the Court's decision on Mr. Hyatt's appeal. | A veteran's claim to disability benefits terminates at death; however, statute allows qualified survivors of the veteran to seek payment of accrued benefits owed to that veteran at the time of the veteran's death. 38 U.S.C.A. S 5121. | Does a veteran's claim to disability benefits terminate at death? | Armed Services - Memo 346 - RK_66867.docx | ROSS-003278328-ROSS-003278329 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 18460 | Neal v. Bradley, 238 Ark. 714 | 83E+481 | The general rule is that recordation statutes do not apply to assignment of notes unless specifically so stated by statute. In 4 Am.Jur. p. 300, "Assignments' " 88, in speaking of recordation, the text states: "Ordinarily, however, the recording statutes are inapplicable to assignments." In 45 Am.Jur. p. 444, "Records and Recording Laws' " 43, cases are cited to sustain this textual statement: "Notes secured by a mortgage may be effectively transferred as to all persons without recording if there is no requirement in the recording act that the transfer be recorded." Again, in 11 Am.Jur.2d p. 348, "Bills and Notes' " 326, the text reads: "General recording acts do not apply to assignments of choses in action, and recordation is not required in absence of a statute specifically applicable to them. A note secured by a mortgage may be effectively transferred as to all persons without recording if there is no requirement in the recording act that the transfer of the note be recorded." We find no authority that would support a holding that the prior unrecorded assignment of a note may be defeated by a subsequent recorded assignment | Generally, recordation statutes do not apply to assignments of notes unless specifically so stated. | Does an assignment need to be recorded to be valid absent a statute mandating it? | 009306.docx | LEGALEASE-00162925-LEGALEASE-00162926 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 18461 | Sims v. Kennedy, 184 Ga. 822 | 1.41E+298 | he first contention of the plaintiffs is that the names of 44 persons who voted in favor of the tax should have been eliminated, because they failed to pay their poll tax for the year 1935 six months before this election, as held July 6, 1936, although each of them did pay such tax more than six months before the general election held on November 3, 1936. The judge ruled contrary to this contention, and considered the votes of these 44 persons in determining the result. Paragraph 3 of section 1 of article 2 of the Constitution of this state is as follows: "To entitle a person to register and vote at any election by the people, he shall have resided in the State one year next preceding the election, and in the county in which he offers to vote six months next preceding the election, and shall have paid all poll taxes that he may have had an opportunity of paying agreeably to law. Such payment must have been made at least six months prior to the election at which he offers to vote, except when such elections are held within six months from the expiration of the time fixed by law for the payment of such taxes." Code, " 2"603. In McGill v. Simmons, 172 Ga. 127, 157 S.E. 273, it was held, in effect, that this requirement as to payment of tax six months before the election at which the taxpayer offers to vote applies only to general elections, and that where such requirement is met the fact that the payment is less than six months before a special election at which the taxpayer offers to vote will not prevent him from voting therein, but that, if otherwise qualified, he will be entitled to vote in such special election. | In school tax election contest evidence of length of voters' residences within state and school district held to authorize counting their votes on ground they had resided within district for six months and within state more than a year but had not resided long enough to be liable for poll tax. Code 1933, S 2-603; Const. art. 2, S 1, par. 3. | What are the requirements necessary for a voter to be entitled to register? | 013545.docx | LEGALEASE-00164126-LEGALEASE-00164127 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 18462 | Stotler & Co. v. Commodity Futures Trading Comm'n, 855 F.2d 1288 | 83H+4.1 | An "associated person" is "any person ... associated with any futures commission merchant ... as a partner, officer, or employee (or any person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation or acceptance of customers' orders (other than in a clerical capacity)." " 4k of the Act, 7 U.S.C. " 6k (1976). | If a person acts as a salesman and solicits orders for a particular futures commission merchant, he may be an "associated person" with that merchant, within meaning of statute requiring registration of such persons with the Commodity Futures Trading Commission, even if he places some trades with other merchants; there is no requirement of "exclusivity" under the statute. Commodity Exchange Act, S 4k, as amended, 7 U.S.C.A. S 6k. | What is the definition of associated person under Commodity Exchange Act? | 013607.docx | LEGALEASE-00163881-LEGALEASE-00163882 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 18463 | Aspen Investments Corp. v. Holzworth, 587 So. 2d 1374 | 156+52.10(3) | Conduct is not held to constitute a waiver unless it does so clearly. Cf. American Somax Ventures v. Tosma, 547 So.2d 1266 (Fla. 4th DCA 1989). Even though Aspen elected not to continue its contest of the mortgagee claims, that alone does not constitute a waiver of the otherwise valid slander of title claim against Fraser, particularly as the language of the stipulation explicitly provides otherwise. See also Woodgate Dev. Corp. v. Hamilton Inv. Tr., 351 So.2d 14 (Fla.1977). | Conduct is not held to constitute "waiver" unless it does so clearly. | Is conduct held not to constitute waiver unless it does so clearly? | 018220.docx | LEGALEASE-00163141-LEGALEASE-00163142 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 18464 | Am. Somax Ventures v. Touma, 547 So. 2d 1266 | 156+52.10(3) | Waiver is commonly defined as the intentional or voluntary relinquishment of a known right. Fireman's Fund Insurance Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967); Sentry Insurance v. Brown, 424 So.2d 780, 784 (Fla. 1st DCA 1982), rev. denied, 430 So.2d 452 (Fla.1983). And while conduct may imply such waiver, the conduct relied upon to do so must make out a clear case of waiver. Taylor v. Kenco Chemical and Manufacturing Corp., 465 So.2d 581, 587 (Fla. 1st DCA 1985); Fireman's Fund, 195 So.2d at 24. Furthermore, waiver does not arise merely from forbearance for a reasonable time.Continental Real Estate Equities, Inc. v. Rich Man Poor Man, Inc., 458 So.2d 798, 799 (Fla. 2d DCA 1984), citing Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945). | Waiver does not arise merely from forbearance for reasonable time. | Does waiver arise merely from a forbearance for a reasonable time? | 018222.docx | LEGALEASE-00163159-LEGALEASE-00163160 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18465 | Aliakbari v. Bilodeau, Robinson & Co., 732 P.2d 344 | 95V5 | Alaska asserts that the limited partnership agreement establishing creditor/partnership relationship, consequently, the guaranty agreement may not be enforced as a matter of law. In general, a guaranty agreement is not enforceable if the underlying obligation upon which it is based is void. See Ryder Truck Rental, Inc. v. Kramer, 263 Ark. 169, 563 S.W.2d 451 (1978) (guarantee allowed to defend on basis of promissory note held void due to usurious interest rate); Webb v. Comstock, 46 Cal.2d 528, 297 P.2d 941 (1956) (guaranty precluded from enforcing guaranty on ground of fraud); Hogg v. Walker, 622 A.2d 648 (Del. 1993) (where contract between principal and creditor unlawful, guarantor is not liable). Motor Credit Corp., 708 S.W.2d 465, 472 (Tex.App.1963) ("[o]nly where the underlying obligation is void for illegality will the guaranty fall with it"). Under Alaska law both the guaranty agreement and the limited partnership agreement turn upon the validity of the limited partnership agreement. Our initial analysis, therefore, must focus on whether the Combat Associates limited partnership agreement is void | Guaranty agreement is not enforceable if the underlying obligation upon which it is based is void. | Can a guaranty agreement be enforced if the principal obligation is invalid? | 018624.docx | LEGAL000618752; LEGAL000618753 | Condensed, SA | 0.92 | | 0 | 1 | 1 | | |
| 18466 | United States v. Marrero, 743 F.3d 389 | 203I+348 | We further hold that the meaning of third-degree murder under Pennsylvania law is not a matter in equipoise. For the third prong of this generic definition, in Pennsylvania, third-degree murder is "an unlawful killing with malice but without specific intent to kill." Dunphy, 20 A.3d at 1219. Malice, in turn, involves "hardness of heart, cruelty, and recklessness of consequences." DiStefano, 782 A.2d at 582, Malice involves "where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury." Id. Pennsylvania's case law on third-degree murder makes clear that the "reckless disregard for consequence" essential to malice requires that the defendant "display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill, as the very least, the conduct must be that done so consciously anticipate death or serious bodily injury would likely result." King, 721 A.2d at 766, 148. This mens rea requirement for third-degree murder contrasts with the "indifferent or depraved indifference to the serious danger" to human life" in the generic definition we have identified. Thus, third-degree murder under Pennsylvania law is not equivalent to the enumerated offense of "murder" and thus qualifies as a crime of violence under the residual clause, therefore, it does not constitute a crime of violence under the residual clause. | In Pennsylvania, third-degree murder is an unlawful killing with malice but without specific intent to kill; malice, in turn, involves hardness of heart, cruelty, and recklessness of consequences, and exists where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. | Does malice involve recklessness of consequence? | Homicide - Memo 183 - B1.docx | LEGAL000501487; LEGAL000501488 | SA, Sub | 0.73 | | 0 | 1 | 1 | | |
| 18467 | Jung v. St. Paul's Par., 522 Pa. 107 | 307A+497 | A request to open a judgment of non pros, like the opening of a default judgment, is addressed to the equitable powers of the court and, in order for the judgment of non pros to be opened, three elements must coalesce: (1) the petition to open must be promptly filed; (2) the default or delay must be reasonably explained or excused; and (3) facts must be shown to exist which support a cause of action. Hutchison v. Hutchison, 492 Pa. 118, 123, 422 A.2d 501 (1980); Pappas v. Stefan, 451 Pa. 354, 304 A.2d 143 (1973); Goldstein v. Graduate Hospital of the University of Pennsylvania, 441 Pa. 179, 272 A.2d 472 (1971); Thorn v. Clearfield Borough, 420 Pa. 584, 218 A.2d 298 (1966). A request to open a judgment of non pros is by way of grace and not of right and is grant or refusal is peculiarly a matter for the trial court's discretion. Where a court is to reverse the exercise of the court's equitable powers unless an abuse of discretion is clearly shown. Goldstein, Bergman v. Bernstein, 400 Pa. 456, 459, 162 A.2d 889, 401 Pa. 169, 160 A.2d 1962); Moore v. Sargent Electric Co., 407 Pa. 169, 180 A.2d 611962). | Judgment of non pros should have been opened in personal injury action, even though no complaint was filed before 20 days of forum precipe for rule to file complaint where parties were engaged in settlement negotiations and time was required both before and after start of discovery and requested a complaint. Hutchison, Pa. Orig. Proc., Rule 440, 42 Pa. C.S.A. | "Is a request to open a judgment of non-pros like the opening of a default judgment, in the sense that an appeal to the equitable powers of the court?" | 040694.docx | LEGAL000302480; LEGAL000301000 | Condensed, SA, Sub | 0.65 | | 0 | 1 | 1 | | |
| 18468 | Forstory v. City of Chicago, 651 Ill. App. 3d 354 | 171+2001 | Plaintiffs also argue that special benefits must be conferred by the City on the particular person burdened by a special duty in order for the public duty rule to be overcome. In addition, plaintiffs contend that the tax violates the public policy of the state of Illinois that parks are not to be funded preferentially through assessments, plaintiffs maintain that the tax benefits only the citizens of Chicago so that their property taxes do not need to be increased. States are vested with great leeway in imposing general revenue taxes. Commonwealth Edison Co. v. Montana (1981) 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884, reh. denied 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1231.) In return for the general revenue taxes, taxpayers are constitutionally entitled only to the enjoyment they derive from being members of an organized society, established and safeguarded by the devotion of taxes to public purposes. A tax is not an assessment of benefits, but instead is a means of distributing the burden of the cost of government. This principle has not been cheated by the commerce clause merely because the taxed activity has some connection to interstate commerce, especially when the tax is levied on an activity conducted within the State. (Commonwealth Edison Co. v. Montana.) Here, the general revenue may need not be supported by... | A tax is not an assessment of benefits but instead is a means of distributing the burden of the cost of government. | Is a tax an assessment of benefits? | 064419.docx | LEGAL000303303; LEGAL000303304 | Condensed, SA | 0.91 | | 0 | 1 | 1 | | |
| 18469 | State v. Hoffman, 149 N.J. 3, 771+23 | | [We are satisfied that the legislature intended that the term "annoyance" should derive its meaning from the conduct being scrutinized. As will be developed more fully, "alarm" describes a stronger degree of communicative conduct when its purpose is to harass. Under that subsection, annoyance means to disturb, irritate, or bother. Subsection (b) [the assault-battery or physical-contact harassment section] deals with touching or threats to touch, and it does not require the intended victim to be annoyed or alarmed. We conclude that subsection (a), which targets a single communication, subsection (c) targets a course of conduct, Subsection (b) prescribes a course of alarming conduct or repeated acts to harass another must be done with the purpose to harass another, while subsection (a) defines "annoyance." within the context of the harassment statute prescribes... | Third subsection of harassment statute proscribes a course of alarming conduct or repeats acts with a purpose to alarm or seriously annoy in intended victim, and its purpose is to reach conduct not covered by the first two subsections. N.J.S.A. 2C:33-4, c.dmls. a-c. | "What does the word "annoyance," within the context of the harassment statute prescribe?" | 043991.docx | LEGAL000501393; LEGAL000501394 | Condensed, SA, Sub | 0.66 | | 0 | 1 | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,364 | 14,873 | 23,876 | 9,029 |
| 18470 | Arnold v. Arnold Corp.- Printed Commc'ns for Bus., 920 F.2d 1078 | 25T+179 | We believe that the majority view as expressed in Letizia is persuasive and applies to the facts of the present case. Just as in Letizia, where all of the individual defendants' allegedly wrongful acts related to their handling of plaintiff's securities account as agents of the brokerage house, in the present case the nonsignatory defendants are alleged to have committed acts related to their running of the corporation. They are alleged to have formed committees of the Board of Directors from which appellant was excluded, decided whether and when to pay dividends, purchased and resold corporate stock, and decided when the company All of these alleged wrongful acts relate to the nonsignatory defendants' behavior as officers and directors or their capacities as agents of the Arnold Corporation. In Letizia, the employees were not deprived of arbitration simply because they were alleged to have sought personal enrichment through unlawful "conspiracy." Given the allegations in the present case, as in Letizia, the language of the arbitration agreement indicates that the parties' agreement... | Agents are entitled to benefits of arbitration agreements made by their principal | An agents afforded the benefit of arbitration agreements made by their principal? | 003857.docx | LEGALEASE 00185001 / LEGALEASE 00185003 | Condensed, SA | 0.95 | 0 | | | 1 | |
| 18471 | Barbat Enterprises v. Cardinal Health, 2010 WL 2132744 | 25T+179 | A non-signatory can enforce an arbitration clause against a signatory in a few circumstances. Id., CGP partners, LLC v. Grozio, 424 F.3d 795, 798 (8th Cir.2005). The first circumstance relies on agency principles, and allows a non-signatory to compel a signatory when the relationship between the non-signatory and signatory is so close that failing to do so would eviscerate the arbitration agreement. PRM Energy Sys., 592 F.3d at 834 (CGP Partners, 424 F.3d at 798. The second notable circumstance relies on equitable estoppel, and is described as "alternative estoppel" can enforce an arbitration clause against a signatory when the signatory's claims are so closely intertwined with the agreement containing the arbitration clause "that it would be unfair to allow the signatory to rely on the agreement in formulating its claims, yet disavow the part of the agreement containing the arbitration clause. At... | The parent company of a licensee was allowed to enforce the arbitration terms of the license agreement against the licensee due to the agency relationship between the parent company and the licensee. Thus the licensee's claims for tortious interference with contract and tortious interference with a business expectancy were subject to arbitration. To demonstrate the parent company's relatedness was unjustified, the licensee needed to rely on the license agreement. It would have been unfair to allow the licensee to rely on those terms for its complaint, yet to disavow the arbitration terms found in the same license. | Can a non-signatory compel a signatory to arbitration when failure to allow compelling would eviscerate the arbitration agreement? | 009078.docx | LEGALEASE 00185019 / LEGALEASE 00185020 | Condensed, SA, Sub 0.37 | | | | 1 | | |
| 18472 | Faulkenberg v. CB Tax Franchise Sys., LP, 637 F.3d 801 | 25T+184 | This is an appeal from an order of dismissal for improper venue. After granting CB Tax's motion to dismiss under Rule 12(b)(3), the district court is simply denied, without prejudice, CB Tax's motion to compel arbitration. Accordingly, the court did not address the merits of the motion to compel arbitration, and CB Tax did not file a cross-appeal from the order denying its motion. This is part and parcel because " 4 of the FAA, a district court cannot compel arbitration outside the confines of its district. See Haber v. Biomet, Inc., 578 F.3d 553, 558 (7th Cir.2009) ("[O]nly the district court in that forum can issue " 4 order compelling arbitration. Otherwise, the district court may circumvent the FAA's venue provisions." We hold that if a district court motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration in a different district.) Continental Cas. Co. v. MOV Onala, 554 F.3d 603, 606-607 (7th Cir.2009). The implication of this procedural posture are two-fold: first, we are not limited by the strictures of " 4 regarding motion to compel arbitration; and second, Faulkenberg and LeMaster may not avail themselves of " 4's... | A federal district court cannot compel arbitration outside the confines of its district. 9 U.S.C.A. S 4. | Can a district court compel arbitration outside the confines of its district? | 000113.docx | LEGALEASE 00185057 / LEGALEASE 00185058 | SA, Sub | 0.93 | | | | | 1 |
| 18473 | City of Bismarck v. Toltz, King, Duvall, Anderson & Assocs., 767 F.2d 429 | 33AH+183 | Moreover, in Contracting Northwest, 713 F.2d at 387, this court found such a stay was authorized by section 3 of the Arbitration Act, as well as by the district court's inherent power to control its docket. | Doctrine of contract estoppel precluded collaboration of proper interpretation of arbitration clause of construction contract, where same legal questions had been presented in prior declaratory action where parties had had full and fair opportunity to litigate issue, and federal substantive law concerning interpretation of arbitration agreements with broad coverage of arbitration was factual mutuality stemmed prior to contract with a pretrial contract that arose pursuant to order. 9 U.S.C.A. S 3. | Does the district court have the inherent power to grant the stay in an arbitration proceeding? | 010057.docx | LEGALEASE 00594014 / LEGALEASE 00594016 | Condensed, SA, Sub 0.55 | | 0 | | 1 | 1 | |
| 18474 | Evans v. Thomas, 60 Tenn. 107 | 83T+436 | In its maturity summary of the liabilities created by irregular endorsements, Mr. Justice Clifford says that if the endorsement be subsequent to the making of the note, at the request of the maker, pursuant to a contract with the payee for further indulgence, the endorser is liable as guarantor. Rey v. Colter, 13 Metcale, 536; Tenney v. Prince, 4 Pick., 385; Nash v. Skinner, 12 Vt., 219; Leonard v. Wildes, 36 Maine, 265; Sylvester v. Dovmer, 23 Vt., 558; Greenough v. Smead, 3 Ohio St. 415; Sto from Nelm, uses. Use, if (15 1 Vt.). So if an endorser has been treated simply as endorser. And even if the presumption of law arising from the endorsement of a third party be that the party is an endorser of the note, and that presumption would remove the presumption attending the endorsement in the present instance would remove the presumption and bring it within the authorities. | One indicates a past due note at the request of the maker pursuant to a contract with the payee for further indulgence, is liable as guarantor. | Can an endorser of a note be held liable as a guarantor? | 003446.docx | LEGALEASE 00164419 / LEGALEASE 00164420 | Condensed, SA, Sub 0.87 | | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18475 | United States v. Holmes, 618 F. Supp. 24 529 | 135+2 | Domicile is distinguished from residence in that an individual may have more than one residence but only one domicile. | Domicile is distinguished from residence in that an individual may have more than one residence but only one domicile. | Is domicile distinguished from residence in that an individual may have more than one residence but only one domicile? | Domicile - Memo 53 - C - IA_2713.docx | ROSS-002928874-ROSS-002928875 | Condensed, SA | 0.74 | 0 | 1 | | | |
| 18476 | Gambelli v. United States, 904 F. Supp. 494 | 170B+1406 | Although the statute does not define domicile, courts have held that it is the individual's domicile which is the state the individual considers his permanent home. | Person's domicile is distinguished from residence in that an individual may have more than one residence, but has only one domicile. 28 U.S.C.A. § 1332. | Is domicile distinguished from residence in that an individual may have more than one residence but only one domicile? | USCA1CASE-0034204 USCA1CASE-0034205 | | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | | |
| 18477 | State Farm Mut. Auto. Ins. Co. v. Colon, 880 So. 2d | 115+2 | "A resident is one who lives at a place with no present intention of removing therefrom." Kiplinger v. Kiplinger, 147 Fla. 243, 2 So.2d 870 (1941). | A determination of residency involves consideration of both fact and intention. | Does a determination of residency involve consideration of both fact and intention? | USCA1CASE-0039488 ROSS-002929089 | | Condensed, SA | 0.82 | 0 | 1 | | | |
| 18478 | Zimmerman v. Zimmerman, 175 Or. 585 | 134+2 | A residence is a dwelling place; the words "resident" and "residence" are used interchangeably. | At common law, "residence" indicates merely a factual place of abode and is not synonymous with "domicile". | "Are the words 'inhabitant' and 'resident' not synonymous?" | Domicile - Memo 64 - C - NK.docx | USCA1CASE-0056097 USCA1CASE-0056098 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | | |
| 18479 | State v. Montereso, 685 So. 2d 249 | 135H+30 | However, defendant may be tried again only for multiple offender bill, since double jeopardy does not attach to multiple offender hearings. | Double jeopardy does not attach to multiple offender hearings. U.S.C.A. Const.Amend. 5. | Does double jeopardy attach to multiple offender hearings? | Double Jeopardy Memo 1241 - C - NK.docx | ROSS-003231962 | Condensed, SA | 0.91 | 0 | 1 | | | |
| 18480 | Hill v. Gresham, 722 S.W.2d 668 | 156+13 | Waiver is a voluntary relinquishment of a known right and must be established by expressed declarations or acts manifesting an intent not to claim the right. | Whether waiver is expressed or implied, must it be intentional? | Whether waiver is expressed or implied must it be intentional? | USCA1CASE-0014411 USCA1CASE-0014412 | | Condensed, SA | 0.85 | 0 | 1 | | | |
| 18481 | Stewart v. Harper, 376 S.W.2d 34 | 156+13 | Intention is a prime factor in determining the question of waiver. | Intention is a prime factor in determining question of waiver. | Is intention a prime factor in determining the question of waiver? | USCA1CASE-0034416 | | Condensed, SA | 0.86 | 0 | 1 | | | |
| 18482 | Ince Oral Corp., 312 B.R. 182 | 233+531 | The threshold issue is how the agreement allocates risk of ownership of the property between the lessor and the lessee. | There cannot be a true lease where the lessor has no ownership interest? | Can there be a true lease where the lessor has no ownership interest? | Landlord and Tenant - Memo 03 - BC_67505.docx | ROSS-003281192-ROSS-003281933 | Condensed, SA | 0.89 | 0 | 1 | | | |
| 18483 | Malone v. Sternberg, 138 Conn. 718 | 302+187 | Pleadings have their place in our system of jurisprudence. | Plaintiff's right to recover is limited to allegations of his complaint. | Is plaintiff's right to recover limited to allegations of his complaint? | 02965.docx | USCA1CASE-0016455-USCA1CASE-0016456 | SA, Sub | 0.91 | 0 | | 1 | 1 | |

| | | | | | | | | | | Multiple Differences | 9,029 |
| | | | | | | | | | | Selection & Arrangement | 22,876 |
| | | | | | | | | | | Substantive Additions | 14,871 |
| | | | | | | | | | | Condensed | 15,944 |
| | | | | | | | | | | Order | 839 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18484 | State v. Tyon, 382 P.3d 695 | 135→→1 | Combining these premises, the court then analyzed whether the circumstances could justify a sufficient revision of the traditional demand of venue to support the movant's trial conviction. However, 135 Wash.2d at 197-196, 954 P.2d 900 (finding that trial error reversed the conviction and ordered that the charge be dismissed with prejudice. Hickman, 135 Wash.2d at 197-96, 954 P.2d 900). | The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against a second prosecution for the same offense, following either acquittal or conviction, or a reversal for lack of sufficient evidence. U.S. Const. Amend. 5. | Does a double jeopardy clause protect a person against retrial for lack of sufficient evidence? | Pretrial Procedure - Memo 12106 C - AC.docx | LEGALEASE 00050595-LEGALEASE-00050596 | Condensed, SA | 0.39 | 0 | 1 | | 1 | |
| 18485 | Friedman v. State, 172 P.3d 815 | 135→→59 | And once jeopardy attaches, a defendant is entitled to have his or her case decided by the original jury empanelled and sworn to try the case, (including a nullity selected alternate). The defendant can relinquish this right by requesting or consenting to a mistrial. But otherwise, the double jeopardy clause protects the defendant from a renewed trial in front of a different jury unless the record establishes some "manifest necessity" for stopping the first trial or just part of it. | Once jeopardy attaches, a defendant is entitled to have his or her case decided by the original jury empaneled and sworn to try the case, including any duly selected alternate; however, the defendant can relinquish this right by requesting or consenting to a mistrial. U.S.C.A. Const.Amend. 5. | Can the defendant relinquish his right by requesting or consenting to a mistrial? | Double Jeopardy - Memo 2041 - C - BP_67865.docx | ROSS-003281313-ROSS-003281314 | SA, Sub | 0.4 | 0 | | 1 | 1 | |
| 18486 | People v. Watkins, 2010 WL 1893012 | 135→→97 | A subsequent retrial after a mistrial raises double jeopardy concerns, and "[u]nder the Double Jeopardy Clause of the Michigan Constitution and United States Constitution, a person may not be placed in jeopardy twice for the same offense. Const 1963, art 1, § 15; US Const, Am V." People v. Greer, 218 Mich.App. 274, 278, 671 N.W.2d 590 (2005). The double jeopardy clause "protect[s] against governmental abuse in (1) multiple prosecutions for the same offense after an acquittal or conviction; and (2) multiple punishments for the same offense." Id. at 279, 671 N.W.2d 504 (internal citations omitted). In addition, jeopardy attaches when a jury is selected and sworn. The double jeopardy clause therefore protects a defendant's interest in avoiding multiple prosecution even when no prior determination of guilt or innocence has been made. However, the double jeopardy clause does not relieve a defendant from the consequences of his voluntary choice... no one opportunity to obtain a conviction must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments. [Id. (internal citations omitted).] | Defendant's retrial after a mistrial that resulted from prosecutorial misconduct did not violate the double jeopardy clause. Though the prosecutor's behavior was grossly negligent, there was no evidence to suggest that the prosecution was intending to provoke a mistrial through his actions. Additionally, the public interest in allowing a retrial outweighed the double jeopardy bar. U.S.C.A. Const.Amend. 5; M.C.L.A. Const. Art. 1, § 15. | Can the double jeopardy clause protect a defendant's interest when no determination of guilt or innocence has been made? | Double Jeopardy - Memo 2089 - C - VA_58206.docx | ROSS-003294002-ROSS-003294003 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 18487 | Bloom v. State, 109 Ga. App. 215 | 135→→95.1 | The trial court has the duty to ensure a fair trial to all parties in a case. The trial court has as much authority to grant a mistrial where injustice [has] or otherwise would [be] caused to the state, as where injustice [has] or otherwise would be caused to the defendant... and nothing in OCGA § 16-1-8 (code Ann. § 26-507) has anything otherwise." State v. Abdi, 162 Ga.App. 20, 22, 288 S.E.2d 772 (1982). The grant or refusal of a mistrial is largely within the court's discretion. Manchester v. State, 171 Ga. 121, 137, 155 S.E. 11 (1930); State v. Abdi, supra; Cross v. State, 136 Ga.App. 400, 221 S.E.2d 615 (1975). A mistrial is not per se a barrier to a second prosecution. | Mistrial is not per se an acquittal barring second prosecution. | Is mistrial not per se an acquittal barring second prosecution? | Double Jeopardy - Memo 791 - C - NS.docx | LEGALEASE 00165313-LEGALEASE-00165314 | Condensed, SA | 0.92 | 0 | 1 | | 1 | |
| 18488 | In re Mark R, 294 Md. 244 | 135→→100.1 | Second, "a retrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem... Defense counsel not only failed to object to the lack of a limiting instruction, but urged the court to take the partial verdict, without knowledge of the charges he encountered. Although "[O]nce acquitted, it is [not possible to waive the protections against multiple prosecutions... [U]nder Rule 757a, a party may amend a pleading "by leave of court for to try the child more favorably... N.Y.2d at 484, 730 N.Y.S.2d 773, 756 N.E.2d 61), court's unequivocal actions occurred prior to the partial verdict]. Moreover, defense counsel did not object to the jury's continuing its deliberations after having asked the question. As the trial judge had the opportunity and refused to permit the jury to render another verdict, however, if the amendment would be futile. An amendment is futile if it clearly would not survive a motion to complain. | A retrial is barred by the Fifth Amendment where reasonable alternatives to mistrial, such as a continuance, are feasible and could cure the problem. U.S.C.A. Const. Amend. 5. | Is a retrial barred by the Fifth Amendment when reasonable alternatives to mistrial, such as a continuance, are feasible and available? | Double Jeopardy - Memo 776 - C - NS,6756.docx | LEGALEASE 00055313-LEGALEASE-00055314 | Condensed, SA | 0.24 | 0 | 1 | | 1 | |
| 18489 | Doe BY Mother v. Bradley, 58 A.3d 42 | 30?→→95 | The Court begins by noting that each party, except for the Medical Society defendants, agrees that a court deciding a Rule 12(b)(6) motion may consider the extraneous evidence presented to the Court in order to perform the futility analysis required by Superior Court Civil Rule 15. Under Rule 15(a), a party may amend a pleading "by leave of court for the written consent of the adverse party... when justice so requires." Rule 15 "is designed to implement the modern philosophy of liberality that serves to favor the trial on their merits, not on the pleadings." In keeping with this philosophy, Rule 15 provides the Court with broad discretion to grant amendments. A motion to amend will not be granted, however, if the amendment would be futile. An amendment is futile if it clearly would not survive a motion to dismiss. | Motion to amend a pleading will not be granted if the amendment would be futile, that is, if it clearly would not survive a motion to dismiss. | Will a court grant a motion to amend a pleading if the amendment would be futile? | Double Jeopardy - Memo 787 - C - SN,67792.docx | ROSS-003280073 | SA, Sub | 0.88 | 0 | | 1 | 1 | |
| 18490 | Commonwealth v. NJ, 3459 | 30↑4495 | We agree with Chase that described her truthful story, and found her truthful statements, crossed to the Medical Society defendants, agrees that the court deciding Rule 12(b)(6) motion may determine whether a property is tax exempt. 57A Pa. at 712, 833 A.2d at 711, however, in order to put decision on the pleadings favorably determine whether a property is tax exempt. 57A Pa. at 712, 833 A.2d at 711 however. Similarly, a property is currently vacant, and township produced ample evidence to show that the property was being used for public purpose and to support court's finding that property was available for public to use... finding that the property being used for a park or playground, and though not required for property to be tax exempt, the Court also found that the township provides a good faith effort to develop the property. | Substantial evidence supported the trial court's conclusion that Board of Assessment Appeals failed to meet its burden to prove taxability of township's property; sole evidence that the Board placed into record was tax assessment record card and picture of the property... the property was currently vacant, and township produced ample evidence to show that property was being actually used for public purpose and support court's finding that property was available for public use, including a finding that the property being used for a park or playground, and though not required for property to be tax-exempt, township had made good-faith effort to develop the property. Const. Art. 8, § 2. | What should the taxing authority prove in order for the government-owned property be taxable? | 04864.docx | LEGALEASE 00166114-LEGALEASE-00166115 | Condensed, SA, Sub | 0.79 | 0 | | 1 | 1 | |
| 18491 | Norwegian Twp. v. Schuylkill Cty. Bd. of Assessment Appeals, 74 A.3d 1124 | 371→←394 | | Substantial evidence supported the trial court's conclusion that Board of Assessment Appeals failed to meet its burden to prove taxability of township's property; sole evidence that the Board placed into record was tax assessment record card and picture of the property... | What should the taxing authority prove in order for the government-owned property be taxable? | Taxation - Memo 1283 - C - SC_16842.docx | ROSS-003281022-ROSS-003281024 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | |

3259

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18492 | Thornton v. Cangialosi, 2010 WL 2428295 | 101+1556 | Minority shareholders were unable to bring a fraudulent inducement claim against majority shareholder. Even though minority shareholders sufficiently alleged a claim of fraudulent inducement, that claim could not be brought concurrent with the breach of contract claim. The representation that allegedly induced minority shareholders to enter into the agreement with majority shareholder were the same allegedly unfulfilled promises that gave rise to the breach of contract claim. Further, the two claims were factually intertwined and could not be separated. | Under Ohio law, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." Ineffectual tort claim is factually intertwined with the breach of contract claim such that the two cannot be separated, recovery cannot be had for both. See Id. at 515, 684 N.E.2d at 1272. | If a cort claim is factually intertwined with a breach of contract claim, can recovery be had for both? | Action - Memo 937 - C_1Fc0PjVoVxHtaZ014 f3uLGyVVoCoMxh.docx | ROSS-000000014 | Condensed, SA, Sub 0.41 | 0.41 | 0 | 1 | | 1 | |
| 18493 | Wachovia Bank, Nat. Assn. v. Preston Lake Homes, 7917, Supp 2d 682 | 13+27(1) | To state a claim for actual fraud, Preston Lake must show: "1) a false representation of material fact; 2) intentionally and knowingly made with the intent to mislead; 3) reliance by the misled party; and 4) damages resulting from such reliance." Under Virginia law, in a breach of contract action, a plaintiff can be made economically negligently. "Id. When a tort claim such as fraud arises from the same set of facts as a breach of contract claim, the tort claim stems from the defendant's breach of a common law duty of care independent of any duties owed to the plaintiff under the contract. Dunn Constr. Co. v. Cloney, 278 Va. 260, 267, 682 S.E.2d 943 (2009) (quoting Filak v. Ruther, 284 Va. 234, 241, 409 S.E.2d 144 (1981)). This rule prevents every breach of contract claim from serving as the basis of a separate tort claim. Id. | To extent that bank's alleged misrepresentation stem the law's willingness to review or extend the acquisition/development and construction loans between parties violated any duties that bank owed developer, they were duties that were created, not by common law, but by terms of loan agreements, such that developer's remedy, if one existed, lay in contract law, and not in cause of action for actual or constructed fraud. | When court claim such as fraud is brought in breach of contract case, should a court ensure that a tort claim stems from a defendant's breach of common law duty of care independent of any duties owed to plaintiff under contract? | Action - Memo 953 - C_1aRSKEG l_JrqdFsP1Lta0TPoAd WOStf4.docx | ROSS-000000033 ROSS-000000034 | Condensed, SA, Sub 0.57 | 0.57 | 0 | 1 | | 1 | |
| 18494 | Wordick v. Thieler, 273 Mass. 346 | 13+27(2) | The plaintiff's offer of proof that Lanki would testify "that three or four years prior to December or November 3, 1925, he told Harwood that he was keeping the premises because the work was of said repair," and "that Harwood said 'that if he would agree to take of the rest of the rent from 515 to which he had told 515,' so it would be done whereafter the premises in good repair and if he refused to pay the rent he would put the premises in good repair and if he refused to pay the rent he would, put the premises in good repair and if he was to warrant a finding that the rent from said time and amount asked of that alleged agreement of that Lanki ever agreed to pay 1523 a month. If it be assumed that a lease was never agreed to repair, that repairs were not made negligently but that there was an omission to repair, the case presents a right of action for breach of contract and not for an action of tort. Tuttle v. George H. Gilbert Mfg. Co., 145 Mass. 169, 13 N.E. 465; Kerrison v. Mason, 213 Mass. 431, 124 N.E. 283. The plaintiff's right to sue in tort and recover has been shown he had no right to be subjected to the contractual rights of Lanki. If Lanki had such, against the defendant to avoid circuity of action. See Lovell v. Spaulding, 4 Cush. 377, 15 Gen. Dec. 770. | If agreement to repair leased premises existed and there was omission to repair, right of action for breach of contract, and not for tort claim arising from injury, would accrue. | Can a tenant's breach of a lease covenant requiring the lessee to repair and maintain the leased property be a breach of a tort duty? | Action - Memo 954 - C_18Hekgwwz1aJm gLFDCvjFQIMqNiq4 Gg.docx | ROSS-000000035 ROSS-000000036 | Condensed, SA, Sub 0.88 | 0.88 | 0 | 1 | | 1 | |
| 18495 | Terok v. Moore's Flatwork & Foundation, 106 A.D.3d 1421 | 13+27(1) | Supreme Court also should have dismissed the breach of warranty claim. Although the proposal contains a guarantee regarding the quality of the concrete, it does not allege that the work was not performed correctly. Plaintiff's instead allege that the work was not performed correctly. "No warranty attaches to the performance of a service, if the service is performed negligently, the cause of action accruing is that negligence. Likewise, if it constitutes a breach of contract, the action is for that breach" (Sears, Roebuck & Co., 45 A.D.2d 659, 659, 357 N.Y.S.2d 1935 (1960); [citation omitted]; accord Town of Poughkeepsie v. Espie, 41 A.D.3d 701, 701, 868 N.Y.S.2d 518 (2013) (1) [court relied on Sears N.Y.S.2d 665, 673 N.E.2d 1175 (2013) [N.E.2d 55, N.Y.S.2d 615, 678 N.E.2d 1175 (1997), l.v. denied 15 N.Y.3d 715, 2010 WL 5027295 (2010)]; Rochester Fund Munis. v. Amsterdam Mun. Leasing Corp., 296 A.D.2d 785, 787, 745 N.Y.S.2d 522 (2002)). Thus, only the breach of contract cause of action allegedly Alex Terok is viable. | No warranty attaches to the performance of a service; if the service is performed negligently, the cause of action accruing is for negligence, and likewise, if it constitutes a breach of contract, the action is for that breach. | Does no warranty attach to the performance of a service? | Action - Memo 972 - C_11xPkJ4t3HQ1DvuTai k4dCdPAGhw.docx | ROSS-000000076 ROSS-000000077 | SA, Sub 0.77 | 0.77 | 0 | | | 1 | |
| 18496 | Aliya Medcare Fin. v. Nickell, 156 F. Supp. 3d 1305 | 184+3(1) | "The economic loss doctrine draws a legal line between contract and tort liability that forbids tort compensation for certain types of foreseeable, contract-related losses." The doctrine serves to prohibit a party who has suffered only economic damage due to a breach of contract from suing in tort to recover that economic loss because the damages could be deemed if those involved in were subject to tort liability. Instead, when economic loss occurs as a result of negligence in the context of commercial activity, tort law has evolved to impose the quality expectations derived from the parties' agreement." Terracon Consultants W., Inc. v. Mandalay Resort Grp., 125 Nev. 66, 73, 206 P.3d 81 (2009). | Under Nevada law, where only pecuniary loss results, liability for negligent misrepresentation is not based on general duty rather, rather, liability is only imposed to a party who, in the course of his or her business or profession supplies false information for the guidance of others and where that information is for the guidance of others and who knows that the information is for the intended class of persons. | When economic loss occurs as a result of negligence in the context of commercial activity, can contract law be invoked to enforce the quality expectations derived from the parties' agreement? | Action - Memo 981 - C_1UTLDHYd10JpoGlOOA loK5GCapis22MK.docx | ROSS-000000086 ROSS-000000087 | SA, Sub 0.58 | 0.58 | 0 | | | 1 | |

3260

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18497 | Lachmund v. ADM Inv'r Servs., 191 F.3d 777 | 83H+10 | Because the [CEA] was aimed at manipulation, speculation, and other abuses that could arise from the trading in futures contracts and options, as distinguished from the commodity itself, Congress never purported to regulate "spot" transactions (transactions for the immediate sale and delivery of a commodity) or "cash forward" transactions (in which the commodity is presently sold but its delivery is, by agreement, delayed or deferred).... Transactions in the commodity itself which anticipate actual delivery did not present the same opportunities for speculation, manipulation, and outright wagering that trading in futures and options presented. From the beginning, the CEA thus regulated transactions involving the purchase or sale of a commodity "for future delivery" but excluded transactions involving "any sale of any cash commodity for deferred shipment or delivery." 7 U.S.C. " 2. The distinction, though semantically subtle, is what the trade refers to as the difference between "futures," which generally are regulated, and "cash forwards" or "forwards," which are not. | In determining whether contract is cash forward contract exempt from regulation under Commodity Exchange Act (CEA) or futures contract subject to requirements of CEA, cash forward contract is indicated where parties to contract are in business of producing or obtaining grain, parties are capable of delivering or receiving actual grain in quantities provided for, there is definite date of delivery, agreement explicitly requires actual delivery, as opposed to allowing delivery obligations to be rolled indefinitely into future and payment takes place only upon delivery, and contract's terms are individualized, as opposed to standardized. Commodity Exchange Act, SS 1a(11), 4(a), as amended, 7 U.S.C.A. SS 1a(11), 6(a). | What kind of conducts are Commodity Exchange Act aimed at? | Commodities - Memo 40 - C -JL_68610.docx | ROSS-003291878-ROSS-003291879 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 18498 | Commodity Futures Trading Comm'n v. Carnegie Trading Grp., Ltd., 450 F. Supp. 2d 788 | 83H+17 | The CFTC need not prove customer reliance on material misrepresentations in an enforcement action alleging fraud. Such actions are brought to protect the public interest and not to redress private wrongs. See Rosenberg, 85 F.Supp.2d at 446. However, as the CFTC is also seeking restitution for customer losses, reliance/proximate cause will need to be demonstrated to obtain such relief. Id. at 447. Relief, including restitution will be addressed later in this opinion. | Commodities broker's employees, who made false and misleading sales solicitations by touting enormous profit potential with minimal or no risk and distributed false and misleading advertisements regarding a trading program, were liable under Commodity Exchange Act (CEA) and regulation for fraud in the sale of futures and options contracts based upon misrepresentations and omissions of material facts made in order to induce customers to invest funds or additional funds for the purpose of trading futures and options on futures pursuant to broker's trade recommendations; employees' misrepresentations were material to customers' decisions to invest with them, and employees made such representations of high probability of great profit and/or fast profits and minimal risk while knowing that the representations were false. Commodity Exchange Act, S 4b(a)(2)(i, iii), 7 U.S.C.A. S 6b(a)(2)(i, iii); 17 C.F.R. S 33.10. | Does Commodity Futures Trade Commission need to prove customer reliance on material misrepresentations under Commodity Exchange Act? | 013593.docx | LEGALEASE-00167025-LEGALEASE-00167026 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 18499 | Taucher v. Born, 53 F. Supp. 2d 464 | 92+1605 | Moreover, a determination that the CFTC's application of the registration requirement challenged in the instant case constitutes the regulation of speech and not a profession comports with Justice Jackson's reasoning in Thomas. Explaining the rationale behind giving the government more power to regulate a profession than to regulate speech, Justice Jackson stated: | Commodity Exchange Act (CEA) requirement that commodity trading advisors register with Commodities Futures Trading Commission (CFTC), was regulation of speech rather than regulation of profession, when applied to publishers of general commodity trading information strategy and advice, and trading systems, who occasionally made general buy and sell recommendations not tailored to any specific individuals, and never had contact with individual investors. U.S.C.A. Const.Amend. 1; Commodity Exchange Act, S 4M, as amended, 7 U.S.C.A. S 6m(1). | Is Commodity Exchange Acts registration requirement a regulation of speech or a regulation of profession? | 013603.docx | LEGALEASE-00167047-LEGALEASE-00167048 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 18500 | Sinclair & Co. v. Gurule, 114 Idaho 362 | 83H+51 | Several federal and state courts have concluded that state common law claims are not preempted by the CEA. See Kerr v. First Commodity Corp. of Boston, 735 F.2d 281 (8th Cir.1984); Mallen v. Merrill Lynch Futures, Inc., supra; Zieg v. Shearson/American Express, Inc., 592 F.Supp. 612 (E.D.Va.1984); Patry v. Rosenthal & Company, 534 F.Supp. 545 (D.Kan.1982); Rupert v. Clayton Brokerage Co. of St. Louis, Inc., 705 P.2d 988 (Colo.App.1985), rev'd on other grounds, 737 P.2d 1106, (Colo.1987); Schlatter v. Mo-Comm Futures, Ltd., 233 Kan. 324, 662 P.2d 553 (1983). The CFTC is not authorized to entertain claims other than those alleging violations of the CEA or CFTC regulations. State courts have subject matter jurisdiction over traditional contract actions, a garden variety matter of state common law. Schor v. Commodity Futures Trading Commission, 740 F.2d 1262 (D.C.Cir.1984), vacated and remanded, 473 U.S. 922, 105 S.Ct. 3551, 87 L.Ed.2d 674 (Mem.) (1985), reinstated, 770 F.2d 211 (D.C.Cir.1985) (construing Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)), cert. denied, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). We agree with these decisions and hold that the CEA has not preempted this contract action. | Commodity Futures Trading Commission is not authorized to entertain claims other than those alleging violations of Commodity Exchange Act or CFTC regulations; state courts still have subject-matter jurisdiction over traditional contract actions which are a garden variety matter of state common law. Commodity Exchange Act, S 2(a)(1)(A), as amended, 7 U.S.C.A. S 2. | Are state common law claims preempted by the Commodity Exchange Act? | 013605.docx | LEGALEASE-00167051-LEGALEASE-00167052 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 18501 | United States v. Allen, 755 A.2d 402 | 135H+100.1 | An exception to the protections of the Double Jeopardy Clause may be permitted if the trial court declares a mistrial. The Government may retry a defendant after a mistrial, over the defendant's objection, "only where "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." " Wilson, supra, 420 U.S. at 344, 95 S.Ct. 1013 (quoting United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824) (footnote omitted)). Where there has been an acquittal, however, the Double Jeopardy Clause bars retrial. See United States v. Ball, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The basis for this distinction lies in the concept of "continuing jeopardy." Whereas an acquittal terminates jeopardy, a properly granted mistrial does not. See Richardson v. United States, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy ... and we hold ... that the failure of the jury to reach a verdict is not an event which terminates jeopardy"). As long as the defendant remains in jeopardy, the government may retry him or her without violating the constitutional prohibition against successive prosecutions. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). | Where there has been acquittal, double jeopardy clause bars retrial. U.S.C.A. Const.Amend. 5. | "Where there has been acquittal, does the double jeopardy clause bar retrial?" | 015772.docx | LEGALEASE-00166492-LEGALEASE-00166493 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,079 |
| 18502 | In re JI Liquidating, 341 B.R. 256 | 349A-10 | "It is unlikely that the Code makes bag economic effects turn on the parties' choice of language rather than the substance of their transactions." United Airlines, 453 F.3d at 612; see also Marhoefer Packing, 674 F.2d at 1143 (noting that the authors of 7-2013(37) refused "to recognize form over substance"); Direct Air, 189 B.R. at 430; Turry Weights & Measures, Ltd., 174 Ill.App.3d 193, 124 Ill.Dec. 202, 528 N.E.2d 991, 994 (1988); Meeker v. Benson, 76 Ill.App.3d 460, 32 Ill.Dec. 468, 395 N.E.2d 696, 700 (1979) (finding that "in determining the character of an alleged lease... [,] the court's will disregard the mere form and the words and will endeavor to reach the substance of the agreement" (internal quotation omitted)). Instead, "the characterization of an agreement depends on the circumstances of each case. 810 ILCS 5/7-2013/0; Dena Corp., 312 B.R. at 169; Lenox Family Rents, 194 B.R. at 630. Where essential components of a sale are demonstrated, the transaction will be characterized as a sale, even though it may have some features of a different type of transfer. Lerch, 147 B.R. at 457-58; Loop Hosp., 35 B.R. at 952. | An assignment of proceeds from a personal injury claim is not distinguished from the prohibited assignment of the personal injury claim itself. | Does the characterization of an agreement as a security agreement or lease depend on the circumstances of each case? | 04280?.docx | LEGALEASE-00167045-LEGALEASE-00167046 | Condensed, SA | 0.87 | 0 | | | 1 | |
| 18503 | McBean Chiropractic v. Illinois Farmers Ins. Co., 847 N.E.2d 842 | 18-142(1) | Indiana law prohibits assignments of personal injury claims, and we decline to alter our common law to distinguish between assignments of claims and assignment of their proceeds, so to permit the latter: McBean's assignment is not enforceable, and its host forwarn is entitled to judgment as a matter of law. We affirm the trial court's entry of summary judgment. | An assignment of proceeds from a personal injury claim is not distinguished from the prohibited assignment of the personal injury claim itself. | Does the law prohibit assignment of personal injury claims? | 06089.docx | LEGALEASE-00077666-LEGALEASE-00077667 | Condensed, SA | 0.61 | | 1 | | 1 | |
| 18504 | Richard T. Blake & Assocs. v. Aetna Cas. & Sur. Co., 255 A.D.2d 569 | 38-90 | The question of whether the security agreement between the Blake Agency and AIA adequately described the collateral to include the expiration. Even assuming that the Blake Agency acquired a valid and enforceable security interest in the expirations, the security interest was limited to the same extent that AIA's rights were limited by the agency agreement it is well established that an assignee stands in the shoes of the assignor and takes the assignment subject to any pre-existing liabilities (Matter of International Ribbon Mills, Matter of Arthur, 36 N.Y.2d 121, 126, 365 N.Y.S.2d 868, 325 N.E.2d 137). Here, any security interest that the Blake Agency may have acquired in the expiration was limited by the agency agreement, which unequivocally provided that the expiration would revert to Aetna in the event of AIA's default (see, September Tele-Pub., B.V. v. SenDel Leasing Corp., 158 A.D.2d 572, Commercial Life Ins. Co., 219 A.D.2d 820, 631 N.Y.S.2d 874). Inasmuch as the agency agreement was clear and unambiguous on its face, the defendants are entitled to summary judgment (see, Hartford Acc. & Ind. v. Wesolowski, 33 N.Y.2d 169, 172. | Assignee stands in the shoes of the assignor and takes the assignment subject to any pre-existing liabilities. | Does an assignee stand in a better position than that of the assignor? | 06096.docx | LEGALEASE-00077750-LEGALEASE-00077702 | Condensed, SA | 0.91 | | 1 | | 1 | |
| 18505 | Hukumanithi v. Hukumanithi, 133 So. 3d 1008 | 253×183 | Prenuptial agreements limiting alimony to a certain amount are subject to judicial modification. See Paterson v. Paterson, 23 So.2d 181, 185 (Fla.1970) ("Power ("I am antenuptial agreement settling alimony rights is subject to increase or decrease under changed conditions as provided in section 61.14, Florida Statutes, as the parties are estranged to have known of the existence of the statute when they made their agreement"); Perone v. Perone 257 So.2d 510, 584 (Fla.1972) ("Power ("1") A change in circumstances of the party since the date of the agreement can be considered by the [c]hancellor in modification of support and alimony provided for in an antenuptial agreement"); Lashkajani v. Lashkajani, 911 So.2d 1154, 1159-57 (Fla.2005) (discussing evolution of law in Posner I & II. | Prenuptial agreements limiting alimony to a certain amount are subject to judicial modification. | Are antenuptial agreements subject to modification? | 06360.docx | LEGALEASE-00078422-LEGALEASE-00078423 | SA, Sub | 0.85 | 0 | | 1 | 1 | |
| 18506 | Hossin v. Ruescher Pierce Refines, 64 F. Supp. 2d 1164 | SC×1 | It A bonus, a bailment involves the "delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished or kept until the bailor reclaims it." M. Bruenger & Co. v. Dodge City Truck Stop, Inc., 234 Kan. 682, 685, 675 P.2d 864 (1984) (quoting 8 Am.Jur.2d, Bailments ? 2). A "bailor" is the "person who restores the possession or custody of property under circumstances constituting a bailment." Id. A "bailee" is the "person from whom the property is thus received." Id. In this case plaintiff claims he was the bailor of the money he deposited with the defendants for the reasons set forth below, plaintiff's bailment theory cannot withstand the defendants' motion to dismiss. | Under Kansas law, "bailee" is person who receives possession or custody of property under circumstances constituting bailment; "bailor" is person from whom property is thus received. | Does the bailee have custody of property? | 06447.docx | LEGALEASE-00059141-LEGALEASE-00059142 | SA, Sub | 0.78 | | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18507 | People v. Burke, 400 Ill. 24 | 207v10 | The last contention of plaintiff in error is that the indictment fails to describe the act committed, and fails to allege the address where the insect took place. Section 519 of division 1 of the Criminal Code (Ill. Rev. Stat. 1945, chap. 38, par. 374), defining the crime of incest of father with daughter, provides as follows: "If a father shall rudely and licentiously cohabit with his own daughter, the father shall be imprisoned in the penitentiary for a term of not less than one year and not exceeding twenty years." Count 1 of the indictment here complained of recites that on May 3, 1943, in the county of Cook, in the State of Illinois, the said John Burke, father of Dorothy Burke, did "unlawfully, feloniously, rudely and licentiously cohabit with and have carnal knowledge of the body of said Dorothy Burke," etc. Count 2 describes the crime in the same language except the words "and have carnal knowledge of the body of the said" were omitted therefrom. Plaintiff in error relies to invalidate the rule followed by this court in People v. Rice, 383 Ill. 584, 50 N.E.2d 711; People v. Green, 368 Ill. 242, 13 N.E.2d 278, 115 A.L.R. 348; and Johnson v. People, 113 Ill. 99, wherein we held that where language of a statute creating a new offense may describe the act or acts constituting such offense, an indictment under the statute is bound to set them forth specifically. The indictment here charges plaintiff in error with having "cohabited" with his daughter, and with having "carnal knowledge of" the body, the term "cohabit" is defined as living together as man and wife within a common dwelling. When used in connection with the charge of incest it has been construed to mean living together as man and wife, and by requisitory sexual relations, whether within a common dwelling or elsewhere. Senate v. State, 217 Ala. 274, 116 So. 395; State v. Fowler, 174 N.W. 521, 39 S.D. 197; Franks v. Ark Ct Rep. 802, State v. Sperling, 115 La. 783, 40 So. 167. The term "carnal knowledge" has been defined as unlawful sexual | An indictment, reciting that defendant licentiously cohabited with, and had carnal knowledge of the body of, his daughter, described act or crimes of incest charged with sufficient clarity to enable defendant to prepare defense. S.H.A. ch. 38, § 374. | What is cohabitation under incest laws? | 01112.docx | LEGALEASE 00306150-LEGALEASE 00306151 | Condensed, SA, 0.93 | 0.93 | 0 | 1 | 1 | 1 | |
| 18508 | Ire Salcedo, 34 S.W.3d 862 | 30v1 | The AG acknowledges the right to appeal is purely statutory, where no statute grants such right, none exists. Carmel v. Carmel, 565 S.W.2d 2 (Tex. 1978), Peak v. Peak, 45 S.W.2d 2d 565 (1986). The AG also briefly concedes no provision in the SVP Act authorizes this appeal. However, argues the AG, two other statutes provide for | Right to appeal is purely statutory, where no statute grants such right, none exists. | "If there is no statutory right to appeal, can a right to appeal exist?" | 05209.docx | LEGALEASE 00084186-LEGALEASE 00084187 | Condensed, SA | 0.72 | | 1 | 1 | | |
| 18509 | Alexandria Canal Co. v. Swann, 46 U.S. 83 | 46H v426 | Neither can the objection be maintained which has been taken to the power of the corporation to declare its actions in debt—for such a project would fairly take any step that an individual might take, under like circumstances, in bring it to final judgment. And it may, in all proceedings, appointed by the court with the consent of both parties, is one of the modes of prosecuting a suit to judgment is not established as a mode of prosecuting the suit is it to jury | In an action by a corporation, it is immaterial whether the power to submit a case for arbitration is lodged in the president and directors, or in the stockholders assembled in general meeting, for the entire corporation is represented in court by its counsel, who in acts in conducting the suit and in consenting to a reference are presumed to be authorized by the party. | Is this by arbitration a mode of prosecuting a suit to judgment? | 00147.docx | LEGALEASE 00116234-LEGALEASE 00116236 | Condensed, SA, 0.89 | 0.89 | 0 | 1 | 1 | | |
| 18510 | Buckeye Forty Hope Found. v. Cuyahoga Falls, 82 Ohio St. 3d 539 | 268v138.7 | The question at issue of the plan was a legislative action because the action was taken by adopting a continuous in support of its position, the city chid Donnelly v. Fairview Park (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus, which states that "[t]he test for determining whether the action of a legislative body is administrative or legislative is whether the action takes or executing a law already existing, in a case so executing or administering a law already in existence," or a "law already in existence," so a law, the action of a legislative body that the action is legislative, but if the action of that body consists of executing an existing law, the action is administrative. *** [I]deas upon that action which provides a case to approve the recommendation of the city planning commission for a resubdivision of a parcel of real estate constituted legislative or administrative action. Id. at 3, 42 O.O.2d at 2, 233 N.E.2d at 501. This court determined that the action was administrative. Id. at 4, 42 O.O.2d at 3, 233 N.E.2d at 502. In arriving at that conclusion, the court stated, "The crucial test for determining what is legislative from that which is administrative or executive is whether the action taken was one making a law, or executing or administering a law already made. In the case at bar, the action of the legislative body in this instance already existing, but if the action of that body consists of enacting or voting upon the syllabus 319, 12, 71 N.W.2d 713, 715. Therefore, paragraph two of the syllabus in Donnelly established that the test requires an examination of the true nature of the action taken, rather than the mere form in which it is taken. Accordingly, the city's adoption of Ordinance No. 48-1995 by the planning action because the enactment procedure used took place was a legislative action than by resolution or other means) is in error. | Action taken by a municipal legislative body, whether by ordinance, resolution, or other means, that constitute administrative action are not constitutionally subject to referendum proceedings. Const. Art. 2, S 1f. | How is it determined whether an action of a legislative body is legislative or administrative? | 00078.docx | LEGALEASE 00117412-LEGALEASE 00117413 | Condensed, SA | 0.89 | 0 | 1 | 1 | 1 | |
| 18511 | Nixon v. Com., 576 Pa. 385 | 92 v4182 | As the Commonwealth Court below recognized, one of the rights guaranteed under Article I, section 1 is the right to pursue a lawful occupation. See Adler, 313 A.2d at 640-41; Gambone, 101 A.2d at 636-37. Moreover, we agree with the Commonwealth Court that the criminal records disqualification provisions of the Older Adults health care occupations. The right to engage in a particular occupation, however, is not an absolute right. Adler v. Montefiore, 311 A.2d at 636; Gambone v. Com., 101 A.2d at 636; see also Malmed v. Thornburgh, 621 F.2d 565, 574 (3d Cir. 1980), see also Nixon v. Com., 789 A.2d 376 (Pa. Cmwlth. 2001). Thus, the criminal records disqualification is subject to a rational basis test. See Adler, 313 A.2d at 640 (citing Gambone, 101 A.2d at 637). | Rational basis test applied to determining whether amendment to Older Adults Protective Services Act (OAPSA), that prohibited employment in older care facilities of those convicted of certain criminal offenses, violated employees' substantive due process rights, Act 13 infringed upon employees' right to pursue their lawful occupation and right to engage in particular occupation is not fundamental right. Const. Art. 1, S 1, 35 P.S. SS 10225.501, 10225.508. | Is a right to engage in a particular occupation a fundamental right? | 00796.docx | LEGALEASE 00117762-LEGALEASE 00117763 | Condensed, SA, Sub 0.37 | 0.37 | | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18512 | State v. AFSCME, Council 4, Local 387, AFL-CIO, 252 Conn. 467 | 231H+1609(1) | The defendant union, AFSCME, Council 4, Local 387, AFL"CIO, appeals from the judgment of the trial court for the plaintiff, the state of Connecticut, granting its application to vacate an arbitration award pursuant to General Statutes " 52"418, and denying the defendant's cross application to confirm the arbitration award pursuant to General Statutes " 52"417. On appeal, the defendant claims that the court improperly vacated the arbitration award on the basis that the arbitrator's award violated public policy. We disagree with the defendant, and we affirm the judgment of the trial court. | When a challenge to an arbitrator's authority is made on public policy grounds, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award; accordingly, the public policy exception to arbitral authority should be narrowly construed and a court's refusal to enforce an arbitrator's interpretation of collective bargaining agreements is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. C.G.S.A. S 52-418(a)(4). | Can a trial court vacate the arbitration award on the grounds of public policy? | 000800.docx | LEGALEASE-00117768-LEGALEASE-00117769 | Condensed, SA | 0.14 | 0 | 1 | 0 | 1 | |
| 18513 | In re Fornaro, 402 B.R. 104 | 170B+2650 | Finally, as an aside, the Court addresses Ms. Fornaro's ability to bring her action for malicious prosecution in "a more suitable forum." Id. Based on persuasive authority, the Court believes that Ms. Fornaro's counterclaim for malicious prosecution is not preempted by the Bankruptcy Code. The Court agrees with a recent Texas Supreme Court case decision, holding that malicious prosecution suits are not preempted, even though the claim arose in a bankruptcy action. See Graber v. Fuqua, 52 Tex. Sup.Ct. J. 249, 279 S.W.3d 608, 2009 WL 51570 (Tex.2009). In a 5"4 decision, the Graber court found no evidence of congressional intent in the Bankruptcy Code or Rules to preempt malicious prosecution claims based on conduct in an adversary proceeding. Id. at 614, 2009 WL 51570 *5. The majority held:[T]he only broad provisions that apply to adversary proceedings"Rule 9011 and section 105(a)"evidence not an intent to preempt, but rather an intent to preserve the existing framework of federal procedure that does not preempt state malicious prosecution claims. In light of the well-established general rule that federal law does not preempt malicious prosecution claims predicated on conduct in federal court, we are unable to find the requisite evidence of an intent to preempt these same claims in bankruptcy.Id. at 616, 2009 WL 51570 *7. The court continued, "Because Congress was silent on the matter, we see no reason to discontinue state law's historic function of providing common law remedies for misconduct in federal court." Id. at 620, 2009 WL 51570 *11. Ms. Fornaro's counterclaim for malicious prosecution, therefore, is not preempted by federal law. | Bankruptcy court's permissive abstention from hearing Chapter 7 debtor's malicious prosecution counterclaim against judgment creditor best served interests of parties and court and thus was warranted following judgment creditor's voluntary dismissal of nondischargeability adversary proceeding in which counterclaim was raised, given that counterclaim was not related to debtor's bankruptcy case, that litigating counterclaim would necessarily reduce court's already limited resources, and that counterclaim was not preempted by Bankruptcy Code and could be brought in more appropriate forum. 11 U.S.C.A. SS 305(a), 523(a); 28 U.S.C.A. S 1334(d). | Does state claims for malicious prosecution preempted by a proceeding in the bankruptcy court? | 000839.docx | LEGALEASE-00117816-LEGALEASE-00117818 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 18514 | Associated Int'l Ins. Co. v. Scottsdale Ins. Co., 862 F.3d 508 | 366+1 | Despite the ubiquity of subrogation clauses, Texas law has not addressed whether a subrogation clause allows a subrogee to assert a reformation claim on a contract between its subrogor and a third party. As we answer it in the first instance, we keep in mind the longstanding principle of Texas courts to "recognize the [subrogation] doctrine ... to its fullest extent." Frymire Eng'g Co. ex rel. Liberty Mut. Ins. v. Jomar Int'l, Ltd., 259 S.W.3d 140, 141 (Tex. 2008) (quoting Faires v. Cockrill, 88 Tex. 428, 31 S.W. 190, 194 (1895) (noting that "the courts of no state have gone further" than Texas "in applying the doctrine of subrogation")). | Texas courts recognize the subrogation doctrine to its fullest extent. | To what extent do courts recognize the subrogation doctrine? | 002611.docx | LEGALEASE-00120089-LEGALEASE-00120090 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 18515 | In re Katrina Canal Breaches Consol. Litig., 629 F. Supp. 2d 601 | 13+61 | Plaintiffs urge that even if challenged acts of the SWB qualify as "discretionary acts" under the immunity statute, that the statute does not immunize the SWB from liability because the challenged acts all occurred prior to 1985 and the statute does not apply retroactively. It is undisputed that the statute does not apply retroactively. However, even assuming arguendo that plaintiffs are correct that all of the SWB's discretionary acts occurred prior to 1985, application of the statute is not necessarily barred. The non-retroactivity of the statute does not per se bar its application to immunize a public entity against damages occurring after the effective date of the statute as a result of discretionary acts taken prior to 1985. A cause of action for property damage arises when damages are incurred. It is only once the damages are incurred that the cause of action is considered to have vested. See In Re: Katrina Canal Breaches Consolidated Litigation, 2006 WL 3627749 (E.D.La. December 8, 2006). Here, plaintiffs' cause of action vested on August 29, 2005, when the breach of the Canal's levee/floodwall occurred and plaintiffs sustained damages. Because plaintiffs' cause of action vested after the effective date of the statute, it is of no moment that the alleged discretionary acts urged to have given rise to the breach preceded the enactment of the immunity statute. | Cause of action for property damage arises under Louisiana law when damages are incurred; it is only once damages are incurred that cause of action is considered to have vested. | Does a cause of action for property damage arise when damages are incurred? | 005747.docx | LEGALEASE-00122902-LEGALEASE-00122903 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 18516 | Holy Land Found. for Relief & Dev. v. Ashcroft, 219 F. Supp. 2d 57 | 148+2.2 | While it is very doubtful that the Court has jurisdiction,32 even if it did, the takings claim would fail. The case law is clear that blockings under Executive Orders are temporary deprivations that do not vest the assets in the Government. Therefore, blockings do not, as a matter of law, constitute takings within the meaning of the Fifth Amendment. Accordingly, courts have consistently rejected these claims in the IEEPA and TWEA context. See Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949) (blocking is not a taking because it is a temporary action); Tran Qui Than v. Regan, 658 F.2d 1296, 1301 (9th Cir.1981) (rejecting takings claim because blocking under TWEA is not equivalent to vesting); Global Relief Foundation, Inc. v. O'Neill, 207 F.Supp.2d 779, 801"02 (N.D.Ill.2002) (finding plaintiff unlikely to succeed on merits of takings claim because IEEPA blocking is temporary); IPT Co., Inc. v. Dep't of Treasury, 1994 WL 613371, at *5"6 (S.D.N.Y. Nov. 4, 1994), Def.Ex. E (denying takings claim for IEEPA blocking because blocking is a temporary deprivation). Accordingly, it is clear that, as a matter of law, the blocking order in this case is a temporary deprivation that does not constitute a constitutionally cognizable taking.] | Blocking of Muslim charitable foundation's assets by Office of Foreign Asset Control (OFAC) under International Emergency Economic Powers Act (IEEPA) did not constitute taking of foundation's property without just compensation, as would violate foundation's Fifth Amendment rights, since blocking was temporary deprivation that did not vest assets in government. U.S.C.A. Const.Amend. 5.; International Emergency Economic Powers Act, S 202 et seq., 50 U.S.C.A. S 1701 et seq. | Does a temporary blocking of assets constitute taking? | 017475.docx | LEGALEASE-00122958-LEGALEASE-00122959 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1.8537 | Meyers v. Ziebarth, 152 N.W.2d 159 | 289+69 | The first circuit found that there has been an "ostensible partnership" between Olsen and Hendl. As we shall develop more fully, the concept of "ostensible partnership" is essentially equivalent to the concept of "partnership by estoppel" as defined in Section 16-016. N.D.C.C. | Concept of "ostensible partnership" is essentially equivalent to concept of "partnership by estoppel" as defined in statute, NDCC 45-06-08. | Is ostensible partnership equivalent to the partnership by estoppel? | 021897.docx | LEGALEASE-00225975-LEGALEASE-00225976 | Condensed, SA | 0.47 | 0 | | | 1 | |
| 1.8538 | Newton Properties v. Laverty, 154 Conn. App. 347 | 8.3D+184 | "A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies... The rules governing contract formation are well settled... [A]n offer proposes to obligation upon acceptance, and it is accepted by the offeree, according to its terms, in which the offer was made. "[C] itation omitted; internal quotation marks omitted.) "[I]laws [Khaw, v. A & L. Holdings, LLC, 143 Conn.App. 322, 331, 71 A.3d 541 (2013). "Likewise, [f]or a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense... Modification of a contract may be inferred from the attendant circumstances and conduct of the parties... A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." | A promissory note" is nothing more than a written contract for the payment of money, and, as such, contract law applies. | Is a promissory note is a contract? | 009281.docx | LEGALEASE-00228984-LEGALEASE-00228985 | SA, Sub | 0.87 | 0 | | 1 | | |
| 1.8539 | Jensen v. Hansford, 136 Wash. 209 | 361+1009 | It is true that the legislature has so labeled the 1919 act. But the legislature body cannot change the real nature and purpose of an act by giving it a different title by so declaring its nature and purpose to be otherwise, any more than a man can transform his character by changing his attire or assuming a different name. The legislature may declare its intended purpose in an act, but it is for the courts to declare the nature and effect of the act. The character of a law is determined by its incidents, not by its name. Aberdeen Savings & Loan Ass'n v. Chase, 157 Wash. 351, 289 P. 536, 290 P. 697, 71 A.L.R. 232; Culliton v. Chase, 174 Wash. 363, 25 P. 1d 81; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638; Macallen Co. v. Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874, 65 A.L.R. 866; Educational Films Corporation v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400, 71 A.L.R. 1226; Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054. | Legislature body cannot change real nature and purpose of act by giving it a different title or by declaring its nature and purpose to be otherwise. | Is the character of a tax law determined by its incidents? | 044790.docx | LEGALEASE-00131497-LEGALEASE-00131498 | Condensed, SA | 0.86 | 0 | 1 | | 1 | |
| 1.8540 | United States v. Agostino, 132 F.3d 1183 | 63+14 | Agostino next challenges the court's instructions to the jury regarding the federal nature element, arguing that the district court erred by not providing the jury with the text of allegedly relevant Indiana statutes set forth in defendant's tendered instruction number four. The defense contends that the statutes were necessary to enable the jury to determine whether Gantz was an agent of an agency that received the requisite federal funding. We review a court's instructions as a whole, asking whether they were "sufficient to inform the jury correctly of the applicable law. " Wilson v. Williams, 83 F.3d 870, 874 (7th Cir.1996); see also United States v. Perez, 43 F.3d 1131, 1137 (7th Cir.1994). We will reverse only if "it appears that the jurors were misled and the arguments, "it appears that 'the jury was misled ...[and its] understanding of the issues was seriously affected to the prejudice of the complaining party. '" Ruggiero v. Krzeminski, 928 F.2d 558, 241 [7th Cir.1990).Instruction as a whole, asking whether they were "sufficient to inform the jury correctly of the applicable law. [and its] understanding of the issues was seriously affected to the prejudice of the complaining party. '" Perez, 43 F.3d at 1137. | Instruction was sufficient to inform jury correctly of applicable law when it indicated that, to satisfy receipt of federal funds element for conviction for bribery concerning programs receiving federal funds, each distinctive subpart of statute must receive federal funds or benefits, as long as agency itself received requisite funds; given that instruction was accurate statement of law if agent to be influenced by bribe was agent of state agency itself, and trial just agent of division or subpart, and uncontroverted evidence established that agent involved in defendant's case satisfied this requirement. 18 U.S.C.A. § 666(a)(2). | What constitutes misleading the jury in a bribery trial? | 013300.docx | LEGALEASE-00138726-LEGALEASE-00138728 | Condensed, SA, Sub 0.56 | 0.56 | 0 | | | 1 | |
| 1.8541 | United States v. Fernandez, 722 F.3d 1 | 63+1(1) | In Sabrina, the Supreme Court rejected a defendant's attempt to import a narrow reading of "transaction." See 132 S.Ct. at 2172, 1133 U.S. 465. There, the defendant argued that federal funds must be affected to violate § 666(a)(1)(B). id. at 1135, U.S. 465. Rejecting the interpretation, the Court concluded that the word "any," which permeates the business or transaction clause, undercuts the attempt to impose the business or transaction requirement. Id. at 1147, U.S. 465. The Court's emphasis on the expansive language in "666(a)(1)(B) in Salinas suggests that the court should avoid imposing narrowing constructions on that language. Furthermore, such a reading would foreclose large portions of proscribed conduct, yet only where "business" or "commercial" could be profitable for unscrupulous individuals to attempt to influence. This narrow construction would be contrary to Congress's intent. See, e.g., 18 U.S.C. 666 (citing "666's expansive, unqualified language, both as to the bribes forbidden and the entities covered," as evidence of legislative intent to construe the statute broadly). Recently confronting this argument, the Seventh Circuit stated: The "business" of a federally funded organization, government, or agency" is not commonly "business" in the commercial sense of the word. An interpretation that narrowly limits the scope of the transactional element to business or transactional sense would be contrary to nature and would have the anomalous effect of excluding bribes paid to influence agents of state and local governments. That construction, the court held, would be unacceptable because, under federal law, "business is defined in terms of § 666 does not limit the statute's reach to purely commercial conduct. | The business or transaction requirement of the federal bribery statute does not limit the statute's reach to purely commercial conduct. | Does the business or transaction requirement of the federal statute limit its reach to purely commercial conduct? | 011887.docx | LEGALEASE-00139323-LEGALEASE-00139324 | Condensed, SA, Sub | 0.85 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18522 | Berenguer v. Pullman & Comley, 231 Ariz. 614 | 30+3904 | To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make... | When the superior court dismisses for lack of personal jurisdiction without conducting an evidentiary hearing, the appellate court views the uncontroverted facts put forward by the defendants... | "To survive a motion to dismiss for lack of personal jurisdiction does the burden shift to the defendant to rebut the showing?" | 03367.docx | LEGALEASE 00184155-LEGALEASE-00184156 | Condensed, SA | 0.29 | 0 | 1 | 1 | 1 | |
| 18523 | Baker & Taylor, Inc. v. AlphaCraze.Com Corp, 602 F.3d 486. | 25T+113 | Federal Arbitration Act's proarbitration policy does not operate without regard to wishes of contracting parties... | | "Is there anything irrevocable about an agreement to arbitrate?" | 007898.docx | LEGALEASE-00148965-LEGALEASE-00148967 | SA, Sub | 0.57 | 0 | | 1 | 1 | |
| 18524 | State ex rel. City of Seattle v. Dept. of Pub. Utilities of Wash., 33 Wash. 2d 896 | 371+2001 | This court spoke as plainly as possible in holding that, all that taxes are exactions... | A "tax" is an enforced contribution of money assessed or charged by authority of sovereign government for benefit of the state or the legal taxing authorities and it is not a debt or contract in the ordinary sense... | "In the strictest sense of the word, is tax an exaction?" | 040041.docx | LEGALEASE-00151378-LEGALEASE-00151379 | SA, Sub | 0.59 | 0 | | 1 | 1 | |
| 18525 | Kosmalasy v. Att. City Med. Ctr., 273 N.J. 568 | 307A+690 | We agree with plaintiffs that they have been denied their day in court... | The ultimate sanction of dismissal with prejudice should be imposed only sparingly. | "Should the ultimate sanction of dismissal with prejudice be imposed only sparingly?" | 023074.docx | LEGALEASE 00156799-LEGALEASE-00156800 | Condensed, SA | 0.93 | 0 | 1 | 1 | 1 | |
| 18526 | Pellick v. Jones, 124 F. | 289+555 | There can be no doubt that the law of South Carolina is vested only given to one member of a firm creates no obligation against the firm... | Under the law of South Carolina, a partner cannot bind his firm by a sealed obligation or conveyance without the authority of ratification of his copartner. | "Does a seal noted given by a member of a firm creates obligation against the firm?" | 037712.docx | LEGALEASE 00158478-LEGALEASE-00158479 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | |
| 18527 | State v. Steger, 94 W. Va. 576 | 129+109 | It is this evidence sufficient to sustain an indictment for a breach of the peace at common law... | The use of profane and insulting language by a landowner to a person who is apparently placid do trespass on his land, unaccompanied by threats and causing no fear of personal violence, is not a breach of the peace at common law, and an indictment therefor which does not aver an actual breach of the peace... | "Whether the use of abusive language in a public place amounts to breach of the peace?" | 043495.docx | LEGALEASE 00159404-LEGALEASE-00159405 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | |
| 18528 | Word of Life Christian Ctr. v. West, 936 So. 2d 1226 | 371+3641 | Sales and use taxes are consumption taxes, meaning they are intended to apply to the final stage in the sales transaction imposed on specific sales... | Use tax applies when the transaction is consummated outside the taxing jurisdiction, and the goods are subsequently imported and used in the taxing jurisdiction. | "Are sales and use taxes consumption taxes?" | 042031.docx | LEGALEASE 00159774-LEGALEASE-00159775 | Condensed, SA | 0.82 | 0 | 1 | 1 | 1 | |
| 18529 | Concierge Nursing Centers v. Antex Roofing, 433 S.W.3d 37 | 217+1900 | The "particular business activity sought to be served" by the policies, statutory and common-law definitions, all lead to the same result... | In an insurance arrangement, the insurer assumes the risk that a risk loss may occur in exchange for a premium payment, in this way, insurance companies are in the business of spreading losses across the premiums they review... | "MEMORANDUM #141 Question on insurance contract, what is the risk undertaken by the insurer?" | 019074.docx | LEGALEASE 00159895-LEGALEASE-00159896 | Final Part 9, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 185.30 | Arnold v. AT & T, 874 F. Supp. 2d 825 | 170B+2478 | After careful consideration, the Court finds that the communications in context effectively permit the admission of each declaration where the individual personally has knowledge from the assertions' context. … | Contents and contexts of information in companies' affidavits supporting their motions to dismiss diversity action against them for lack of personal jurisdiction were based on affiants' personal knowledge and were admissible for district court, although affiants obtained the information in interviews with other persons, where affiants either personally obtained or were given the information in their capacities as employees of the companies. Fed.R.Evid.Civ.Proc.R 56(c)(4), 28 U.S.C.A. | Can courts infer personal knowledge from an affidavit? | Affluenza - Memo #1 _1F10nDFIAZqvKnK4DF mfu6uKEmdVeW.docx | ROSS-003284514-ROSS-000000384 | Condensed, SA | 0.51 | 0 | | | | 1 |
| 185.31 | Am. Bridge Co. v. State, 245 A.D. 535 | 156+13.10(2) | It is of the essence of waiver that there be an intentional relinquishment of a known right. Kiernan v. Dutchess County Mut. Ins. Co., 150 N.Y. 190, 44 N.E. 698; Draper v. Oswego County Fire Relief Ass'n, 190 N.Y. 12, 82 N.E. 755; Bayden v. Hill, 198 Mass. 477, 85 N.E. 413; Florence Oil & Refining Co. v. Reeves, 13 Colo.App. 95, 56 P. 674; Joston Mfg. Co. v. Medical Arts Bldg. Co., 63 F.2d 718, 720. | Intentional relinquishment of a known right is of the essence of "waiver." | Is the essence of waiver the intentional relinquishment of a known right? | Estoppel - Memo 262 - CSS_65741.docx | ROSS-003284416-ROSS-003283417 | Condensed, SA | 0.81 | 0 | | | | 1 |
| 185.32 | Jenkins v. State, 101 So. 3d 161 | 352H+299 | Mississippi defines sexual penetration to include "cunnilingus, fellatio, buggery or anilingus, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss.Code Ann. *§ 97*7-3-97(b) (Rev.2006) (emphasis added). "Penetration is the very essence of the crime of sexual battery." Johnson v. State, 626 So.2d 631, 632 (Miss.1993) (citing Thompson v. State, 468 So.2d 852, 853 (Miss.1985)). Even the slightest penetration of the vulva or labia is sufficient to constitute penetration. Id. at 633. | Testimony by alleged victim, that defendant put his hand inside her pantie, on "the top part," but that his hand never went "inside," was not sufficient to show penetration of genital or anal openings, an essential element of sexual battery. West's A.M.C. SS 97-3-95, 97-3-97(a). | Is penetration an essential element of sexual battery? | Sex Offence - Memo 4 - RK_57680.docx | ROSS-003283358-ROSS-003283357 | Condensed, SA, Sub | 0.55 | 0 | | | | 1 |
| 185.33 | Palmer v. Poor, 121 Ind. 85 | 83+408 | The present contains one paragraph. Joly verified, denying the execution of the note, and under this paragraph it was competent to prove that the note was altered after it had been signed, as well as that it was never delivered. The evidence that there was a material alteration of the note is strong and satisfactory. Delivery is as material a part of the execution of a note as the signature of the maker, and when the maker, or one who has authority to act for such maker, delivers the note without authority of any fraud. Waiving a decision of the question as to whether the appellee was entitled to succeed upon the ground that the note was materially altered, (although our inclination is with him on that question,) we put our decision upon the ground that the evidence satisfactorily shows that the note was not delivered, and for that reason we sustain the judgment. Delivery is part of the execution of a promissory note, and well delivered its completion is not complete. … | Where an old, infirm and ignorant person was induced by means of a fraudulent conspiracy, and threatened violence, to sign a promissory note, which, immediately after his signing, was surreptitiously and wrongfully away against his will, there was no delivery of the note. Delivery is a part of the execution of a promissory note, and until delivered is inchoate of force. | Is delivery a part of the execution of a note? | Bills and Notes - Memo 1017 - RK_61291.docx | ROSS-003283603-ROSS-003281603 | Condensed, SA, Sub 0.76 | | 0 | | | | 1 |
| 185.34 | State v. Young, 136 Idaho 113 | 110+63(16) | As this Court stated in the first appeal in this case, "[M]otions in limine seeking advance rulings on the admissibility of evidence are fraught with problems because they are necessarily based upon an alleged set of facts rather than the actual testimony which the trial court would have before it at trial in order to make its ruling." State v. Young, 133 Idaho 177, 179, 983 P.2d 831 (1999). An order granting a motion in limine is not a final order. The trial court can reconsider the issue at any time. The State believes that any of these rulings are relevant to this case and certainly as the district court to reconsider the issue at a time when it can make a factual presentation showing such relevance. | An order granting a motion in limine is not a final order; the trial court can reconsider the issue at any time. | Is a granted motion in limine a final order? | Pretrial Procedure - Memo 562 - RK.docx | ROSS-003283547-ROSS-003283547 | SA, Sub | 0.85 | | 0 | | | | 1 |
| 185.35 | Pamlay v. Am. Honda Fin. Corp., 378 N.J. Super. 221 | 172H+152 | Congress amended the TILA in 1980 to narrow considerably the scope of assignee liability in consumer loan transactions. Compare 15 U.S.C.A. § 1641 (1976), with * 1641(a)(1980); Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 200 (3d Cir. 2000) (citing legislative history in S. Rep. No. 96-73, at 2-3, 1980 Cong. Gr.Admn.News 280, 2812; Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 693 (7th Cir.1998), cert. denied, 525 U.S. 1141, 119 S.Ct. 1042, 143 L.Ed.2d 411 (1999). It was this 1980 amendment that limited the liability of a voluntary assignee to violations "apparent on the face of the disclosure statement." 15 U.S.C.A. * 1641(a). | Truth in lending Act TILA limitation on liability of assignee of consumer credit contract permitted buyer's claim against dealer/assignee for repair expenses was valid for dealership's failure to honor certain negotiable warranty expenses on disclosure form, even though buyer did not assert any TILA claim, given that state law claim interfered with TILA purpose to limit liability of FTC holder rule, as agency regulation, could not trump TILA, as law passed by Congress, overriding conflicting state regulations. Consumer Credit Protection Act, § 131(a), 15 U.S.C.A. § 1641(a); 16 C.F.R. § 433.2(a); N.J.S.A.17:16C- … | Can an assignee be held liable for violations that are not apparent on the face of the disclosure statement? | Consumer Credit - Memo 19 - RK.docx | ROSS-003283997-ROSS-003283997 | Condensed, SA, Sub | 0.14 | | 0 | | | | 1 |
| 185.36 | Syscomm Int'l Corp. v. Synoptics Commc'ns, 856 F. Supp. 135 | 25T+119 | Because Syscomm and SynOptics agree that the arbitration clause applies to Syscomm's antitrust claims against SynOptics, the issue presented is whether antitrust claims arising from domestic transactions are, at one time, the answer to this question in the Second Circuit would have been that such claims are not arbitrable, see American Safety Equipment Corp. v. J.P. Maguire & Co., 391 F.2d 821 (2d Cir.1968), the Court believes that the Second Circuit would interpret Mitsubishi to mandate arbitration of such claims, and would conclude that antitrust claims arising from domestic transactions are arbitrable. | Antitrust claims arising from domestic transactions are arbitrable. | Are antitrust claims arising from domestic transactions arbitrable? | Alternative Dispute Resolution - Memo 310 - RK.docx | ROSS-003284647-ROSS-003284647 | Condensed, SA | 0.9 | | 0 | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,573 | 23,876 | 9,079 |
| 18537 | Atkinson, Co. v. Palette, 1970 Ga. App. 731 | 380-I | Equitable subrogation derives from the equitable principle against unjust enrichment. | "As our Supreme Court has explained, [t]he right of [equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. As we applied, the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) Warning lights & Scaffold Service, Inc. v. D & G Industries, Inc., 302 Conn. App. 367, 372, 928 A.2d 999 (2007). Equitable subrogation "derives from the equitable principle against unjust enrichment." (Internal quotation marks omitted.) Id., at 274, 915 A.2d 355. "A claimant who has established an entitlement to restitution by proving the unjust enrichment of the defendant at the claimant's expense is ordinarily entitled to a personal money judgment against the defendant for the amount of the enrichment in money." Restatement (Third), Restitution and Unjust Enrichment, c. 1, § introductory note, p. 117 (Tentative Draft No. 6, March 12, 2007). | Does equitable subrogation derive from the equitable principle against unjust enrichment? | Subrogation - Memo 388 - RM C.docx | ROSS-003186814-ROSS-003186816 | Condensed, SA | 0.94 | 0 | 1 | | 1 | |
| 18538 | Houston Cty. v. Harrell, 287 Ga. 162 | 30-I+8(0.5) | A party is not entitled to a second appeal from a single order. | However, no such motion is necessary to appellate consideration of the effect of the prior decision, although the issue arose over an earlier appeal by the elements of res judicata, the appellant issue is more fundamental; a party is not entitled to a second appeal from a single order. [1] Ferguson v. Composite State Bd. of Med. Examiners, 275 Ga. 255, 256(1), 564 S.E.2d 715 (2002). See also Northwest Social and Civ. Club v. Franklin, 276 Ga. 859, 860, 583 S.E.2d 858 (2003). Simmel had a remedy — an appeal from the order granting partial summary judgment, she exercised that right, and a vote can procedural maneuvers to interfere a second appeal. "[L]itigants cannot use any circumstance to obtain the procedural or jurisdictional rules of this Court." Walker v. Estate of Mays, 279 Ga. 652, 653(1), 619 S.E.2d 679 (2005) (citations and punctuation omitted). | Is a party entitled to a second appeal from a single order? | Appeal and error - Memo 36 - RK.docx | ROSS-003185637-ROSS-003185638 | Condensed, SA | 0.93 | 0 | | | 1 | |
| 18539 | Truly Nolen of Am. v. Superior Court, 208 Cal. App. 4th 487 | 100a(5)(1) | Court of Appeal was bound as a matter of stare decisis to follow California Supreme Court decision holding in Gentry v. Superior Court, that class arbitration waivers in employment agreements could not be enforced if class arbitration would be a significantly more effective means of vindicating rights, notwithstanding United States Supreme Court's holding in AT&T Mobility LLC v. Concepcion, which overruled an earlier California Supreme Court decision that held that class arbitration waivers in adhesion contracts were unconscionable, although the United States Supreme Court's overruling of earlier decision rested on its reasoning of the later decision, the United States Supreme Court did not directly address the precise issue presented in the later case, whose conclusion was based on different theoretical grounds. 9 U.S.C.A. § 1 et seq. | Observing that the Discover Bank rule in practical terms has a disproportionate impact on arbitration agreements and essentially allows "any party to a consumer contract to demand" classwide arbitration, the Concepcion court found the rule "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (Concepcion, supra, 131 S.Ct. at pp. 1750, 1748.) The United States Supreme Court further held the Discover Bank rule was inconsistent with the FAA because it imposed classwide arbitration even where not provided for in the parties' consent. (Concepcion, at pp. 1750\1751.) The Concepcion court reiterated its conclusions in Stolt-Nielsen that parties may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding the parties agreed to do so. (Concepcion, at pp. 1750\1751.) Because we have a duty to follow the decisions of the United States Supreme Court on matters of federal law, and because we are persuaded [the] Discover Bank [rule] is inconsistent with [the] Federal Arbitration Act [the FAA]... | Does the Federal Arbitration Act (FAA) require courts to honor parties expectation? | Alternative Dispute Resolution - Memo 265 - RK.docx | ROSS-003286210-ROSS-003286212 | Condensed, SA, Sub | 0.42 | | | 1 | | 1 |
| 18540 | Taylor v. Dice Plywood Co. of Miami, 297 So. 2d 553 | 413+1 | Technical excuses for denying workmen's compensation are not favored. | The brutal nine we take of this case is that the decedent, if any, was maladjusted under these circumstances. Even though the injuries claimant went by to home before proceeding to the doctor's office, the same did not in the nature of circumstances determine his legal departure warranting disallowance of compensation. Technical excuses for denying workmen's compensation are not favored by law. This material facts are that upon injury the claimant had been directed to go to the doctor's office for examination and treatment of his leg. Compliance therewith was an activity within the scope of his employment. See 1 Larson Workmen's Compensation, Sec. 13.13. It is uncontradicted that when he suffered the automobile accident resulting in loss of his eye claimant was on his way to the doctor's office. | Are technical excuses for denying workmen's compensation not favored? | Workers Compensation - Memo 4654-RK.docx | ROSS-003287864-ROSS-003187867 | Condensed, SA | 0.91 | | | | 1 | |
| 18541 | O'Donnell v. Koretz, 144 Wis. 2d 717 | 371+2001 | A tax is an exaction, usually of money, by government to support government. W.S.A. Const. Art. 8, § 1. | A tax is an exaction, usually of money, by the government to support its government. See State ex rel. Bldg. Owners v. Adamany, 64 Wis.2d 280, 289, 219 N.W.2d 274, 279 (1974). Whether sec. 66.24(8)(a), Stats., is a tax or statute is a question of law. We decide question of law without deference to the lower court's conclusion. Kreager v. Kreager, 129 Wis.2d 64, 74, 385 N.W.2d 465, 471 (Ct.App. 1986). | "Is a tax an exaction, usually of money, by government to support government?" | Taxation - Memo 269 C - SU.docx | ROSS-003188281-ROSS-003188282 | SA, Sub | 0.73 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18542 | Williams v. E. Coal Corp., 952 S.W.2d 696 | 413=2084 | However in Kentucky, there is neither a legal basis nor a policy reason for allowing with against an argument to the award. Workers' compensation is a creature of statute, and the remedies and procedures described therein are exclusive. Morrison v. Carbide and Carbon Chemicals Corp., 278 Ky. 746, 129 S.W.2d 547, 549 (1939). When unemployed and employees submit themselves to the provisions of the act, their rights and liabilities are henceforth to be measured by the terms of the act. Id. at 550. A right created by statute cannot be defeated by the application of a common law principle. Kavaliauskas v. Dorne, 189 Ky 793, 185 S.W. 467, 488 (1916). Thus, any analysis of a workers' compensation issue is necessarily grounded in statutory interpretation. | Workers' compensation is creature of statute, and remedies and procedures described therein are exclusive. KRS 342.011 et seq. | What is workers' compensation a creature of? | Workers Compensation - Memo 8614 A M...docx | ROSS-003028991? ROSS-003028918 | SA, Sub | 0.83 | 0 | | 1 | 1 | 1 |
| 18543 | Nabelek v. Dist. Attorney of Harris Cty., 290 S.W.3d 222 | 30=4090 | A dismissal with prejudice is improper if the plaintiff's failure can be remedied. See Hickman v. Adams, 35 S.W.3d 120, 124 (Tex.App.-Houston [14th Dist.] 2000, no pet.). If the error resulting in the dismissal of an inmate's claim can be remedied, a dismissal with prejudice is improper. Thus, we must reverse the dismissal of a particular type of claim "Consejo, 131 S.Ct. at 1317. | A dismissal with prejudice is improper if the plaintiff's failure can be remedied. | Is dismissal with prejudice improper if the plaintiff's failure can be remedied? | Pretrial Procedure - Memo 4 (0845 - C - S)...4390.docx | ROSS-003034664 ROSS-003034669 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 18544 | Ferguson v. Corinthian Colleges, 733 F.3d 928 | 36D=3115 | Because in the Supremacy Clause of the United States Constitution, "the FAA preempts contrary state law." Id. at 1138. In enacting the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). We are thus prohibited from applying any state statute that invalidates an arbitration agreement. AT&T Mobility LLC v. Concepcion, 131 U.S. 1331, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). Nor may we apply any other state law that "prohibits outright the arbitration of a particular type of claim." Concepcion, 131 S.Ct. at 1747. | Under the Federal Arbitration Act (FAA), court may not apply any state law that prohibits outright the arbitration of a particular type of claim. 9 U.S.C.A. § 1 et seq. | Under the Federal Arbitration Act (FAA), must a court apply any state law that prohibits outright the arbitration of a particular type of claim? | Alternative Dispute Resolution - Memo 332 - PK.docx | ROSS-003295507 ROSS-003295508 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 18545 | Dodge Data & Analytics v. Dunn, LLC, A.D.3d, 183 F. Supp. 3d 655 | 388=6 | "A trespass to chattel occurs when one intentionally disposes another of their personal property." Mercer v. Vasilakos, 44 N.E.3d 1011, 1017 (Ohio App.2015). | Under Ohio law, a trespass to chattel occurs when one intentionally disposes another of their personal property. | When does a trespass to chattel occur? | Trespass - Memo 155 - R...B6.docx | ROSS-003027627 ROSS-003027628 | SA, Sub | 0.29 | 0 | | 1 | 1 | |
| 18546 | Allied Chuck & Conv. Hardware Co., Inc. v. Pitt, Inc., 841 F. Supp. 383 | 366=17 | Pertinent to the subject of laches and acquiescence to the argument that traverser had an adequate remedy at law. It is anticipated that for that subsequent to the construction the Meriden Chuck was in very serious financial condition and for a long period it was supposed that traverser would be in no position to obtain much of a repayment of its debts. As to the allegation that the obligation to equity and attorneys welfare, i.e., direct action against Chuck, Chuck takes the position that this failure precludes an equitable subrogation rights. Equitable subrogation is a matter of grace sounding in equity. "[T]he right of (legal or equitable) subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect." Distraval question in method (Vesalius v. Mesolla, 29 Wis. 2d 527, 532 35, 849 A.2d 773 (2004). Hence the proposition that a party must first exhaust its indemnification rights before pursuing its equity subrogation rights is directly counter to the well established law regarding equitable subrogation. | "Equitable subrogation" is a cause of action sounding in equity, and is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. | Is equitable subrogation a cause of action sounding in equity? | Subrogation - Memo 337 - PM F...docx | ROSS-003028719 ROSS-003027628 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 18547 | Development Specialists v. Akin Gump Strauss Hauer & Feld LLP, 480 B.R. 145 | 289=926 | Under the Partnership Law, a partnership can dissolve for several different reasons. Among them is an agreement by the partners to dissolve, the death of a partner, or the decision of a partner to withdraw. See Partnership Law "6:2; see also Volgolff v. Block, 117 Misc. 2d 489, 492, 428 N.Y.S.2d 827 (Sup.Ct. Suffolk County 1983) (citing Matter of Steinberg (Schwartz), 81 A.D.2d 640, 438 N.Y.S.2d 135 (2d Dept'l 1981)). | Under New York law, a partnership can dissolve for several different reasons, including an agreement by the partners to dissolve, the death of a partner, or the decision of a partner to withdraw. N.Y. McKinney's Partnership Law § 62. | What can cause the dissolution of a partnership? | Partnership - Memo 82 - PK.docx | ROSS-003028693 ROSS-003028692 | SA, Sub | 0.45 | 0 | | 0 | 1 | |
| 18548 | Abdukadir v. Metro. Dade Cty., 7417 2d 1328 | 221=181 | Diplomatic immunity can be waived by continuing to assert a claim while at the same time seeking immunity from a counterclaim. Cf. National City Bank v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955). Here, however, immediately after receiving the certificate from the State Department that its agent from Saudi Arabia were properly on file and that he was entitled to immunity, Prince Turki moved to dismiss his action and the counterclaims. Turki's immediate seeking of a dismissal of his own suit exercises any allegation that the defendant may have in its waive: Defendants' argument that plaintiff's initiation of the suit waived immunity is without merit because, at the time the suit was dismissed, his entitlement to immunity was not clear. He could not knowingly waive the benefit of a status to which he was not clearly entitled. | Diplomatic immunity can be waived by continuing to assert a claim while at same time seeking immunity from a counterclaim. | Can diplomatic immunity be waived? | Ambassadors and Consuls - Memo 6 - Str6.docx | ROSS-003031205 ROSS-003031207 | Condensed, SA | 0.86 | 0 | 1 | | 1 | |
| 18549 | Oliver v. Coffman, 112 Ind. App. 507 | 302=11 | It is one of the fundamental principles of pleading that ultimate issuable facts, instead of evidentiary facts and conclusions of law, should be pleaded. Oxford Auto Co. v. Ley, 1939, 74 Ind.App. 286, 125 N.E. 214; Peoples Coal & Mining Co. v. State, 1922, 192 Ind. 122, 135 N.E. 481; Brown v. Frauldenberg, 1938, 106 Ind.App. 692, 17 N.E.2d 865; Martin v. Youngblood, 1937, 211 Ind. 647, 7 N.E.2d 997. | Ultimate issuable facts, instead of evidentiary facts and conclusions of law, should be pleaded. | Should the ultimate issuable facts be pleaded? | Pleading - Memo 155 - BMM.docx | ROSS-003003663 ROSS-003003668 | SA, Sub | 0.76 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 11850 | Hooters of Am. v. Phillips, 173 F.3d 933 | 25T+139 | We respectfully find the Supreme Court's pronouncement that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone, 460 U.S. at 24, 103 S.Ct. 927. Our decision should not be misread: We are not holding that the agreement before us is unenforceable because the arbitral proceedings are too abbreviated. An arbitral forum need not replicate the judicial forum. TWI[a] are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution. "Mitsubishi Motors, 473 U.S. at 626-27, 105 S.Ct. 3346; see also Gilmer, 500 U.S. at 31, 111 S.Ct. 1647 (rejecting abbreviated discovery and lack of written opinions as reasons to inhibit arbitration of statutory claims). | Questions of Arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. | How do courts address questions of arbitrability? | Alternative Dispute Resolution - Memo 349 - IM.docx | ROSS00311177-ROSS-00311178 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11851 | Bel Air & Briney v. City of Kent, 190 Wash. App. 364 | 366+1 | Subrogation is "an equitable remedy..." and is "founded in the facts and circumstances of each particular case. "Mahler v. Szucs, 135 Wash.2d 398, 412, 957 P.2d 632 (quoting Restatement (First) of Property Mortgages § 7.6 cmt. (a); Credit Bureau Corp. v. Beckstead, 63 Wash.2d 183, 185, 385 P.2d 864 (1963). The doctrine allows an outside party to inquire the lender's shoes and recover the benefit of the outstanding debt, without an assignment or assignment of rights among the outside party, the lender, or the debtor, at 573, 924 P.2d 473. In other words, if a third party pays the debtor's outstanding loan to the lender without any formal agreement among the parties, then equity may permit the third party to take over the lender's interest and acquire the debtor's payments. at 574, 924 P.2d 473. The rationale for subrogation is to prevent the unearned windfall that would otherwise accrue to the debtor, who could deny the obligation to make further payments on the debt because it has been satisfied by another to whom the debtor owed no obligation by reason of assignment of rights or other agreement. Id. | Subrogation is an equitable remedy, and is founded in the facts and circumstances of each particular case. | Does the application of equitable subrogation depend on the facts and circumstances of each case? | Subrogation - Memo 396 - RM-C.docx | ROSS00311273-ROSS-00311274 | Condensed, SA | 0.91 | | | | | |
| 11852 | Ferreira v. Mortg. Elec. Registration Sys., 794 F. Supp. 2d 297 | 172H+91 | The right to rescind may be exercised only by the obligor, i.e., the person to whom credit is extended. Mass. Gen. Laws ch. 140D, ¶ 10(a). Thus, an individual who is not named on the note is not an "obligor" for the rescission and, therefore, has no such right to rescind. See Wilson v. JPMorgan Chase Bank, N.A., 2010 WL 1896252 (E.D. Cal. June 23, 2010) (holding wife lacked standing to rescind under TILA because husband was sole obligor named on borrower's side of the note); Cohahn v. Ameriquest Mortg. Co., 2009 WL 13129, (M.D. Fla. 2009) (holding that borrower's jointly owned property on which wife alone executed a note could not assert TILA claim because she was not an obligor); Gerasta v. HSBC Mortg. Corp., 319 F.Supp.2d 368, 371 (D.Conn.2004) (finding wife who co-signed mortgage but not the note was not an obligor and thus did not have a right to rescind under TILA). | Under the Massachusetts Consumer Credit Cost Disclosure Act (CCCDA), an individual who is not named on the note executed by his or her spouse is not an "obligor" and does not have a right to rescind. M.G.L.A. c. 140D, § 10(a). | "Does an individual who is not an "obligor" have a right to be rescind?" | Consumer Credit - Memo 101-SB_60193.docx | ROSS00311671-ROSS-00311672 | Condensed, SA, Sub 0.74 | 0.74 | | 1 | | 1 | |
| 11853 | Bainbridge v. Travelers Cas. Co. of Connecticut, 159 P.3d 748 | 366+27 | "Subrogation occurs when one person is substituted in the place of another with reference to a lawful claim, demand or right of the other in relation to the claim and its rights, remedies or securities." Brewster v. U.S. Fid. & Guar. Co., 893 P.2d 132, 136 n. 4 (Colo.1995) (quoting Black's Law Dictionary 1427 (6th ed.1990)). Thus, there must first exist a valid claim, right, or debt in order for another to become subrogated to it. See Union Ins. Co. v. RCA Corp., 724 P.2d 80, 82 (Colo.App.1986) (explaining the doctrine of subrogation). Subrogation can occur by contract or through application of the principles of equity. See Norpac, Life Investors Ins. Co., 969 P.2d 725, 728 (Colo.App.... | Subrogation can occur by contract or through application of the principles of equity. | Can subrogation occur by contract or through application of the principles of equity? | Subrogation - Memo 491 - C - SA.docx | ROSS00311715-ROSS-00311716 | Condensed, SA | 0.88 | 1 | 1 | | 1 | |
| 11854 | In re Hende, 291 F.3d 645 | 366+1 | There are various types of subrogation, most commonly categorized as "conventional" subrogation, "legal" or "equitable" subrogation, and statutory subrogation. "Conventional" or "contractual" subrogation rights arise from an express or implied agreement between the subrogor and subrogee. Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601, 624 (7th Cir.2001). "Equitable subrogation is a legal fiction whereby an obligation extinguished by a party who, under some compulsion, pays the debt, is treated as still existing for the benefit of this party. "Joe's Cash Stamp Inc., 967 B.R. 542 (Bankr. ... "legal" or "equitable" subrogation arises as a "creature of equity," it's most often invoked to do justice." Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 301-302, 7 S.Ct. 482, 30 L.Ed. 595 (1887). Statutory subrogation, as one might expect, occurs by virtue of a statutory mandate. See, e.g., Carrier v. Indorminus, 998 F.2d 611, 614 (9th Cir.1993) (en banc.) for just alleges that it is subrogated to the debtor's non-dischargeability judgment claim as a result of statutory subrogation under the Bankruptcy Code and a right of equitable subrogation. | There are various types of subrogation, that are most commonly categorized as "conventional" subrogation, "legal" or "equitable" subrogation, and statutory subrogation. | What are the types of subrogation? | Subrogation - Memo 391 - VH.docx | ROSS00311163-ROSS-00311164 | Condensed, SA | 0.85 | | 1 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | **839** | **15,944** | **14,873** | **22,876** | **9,079** |
| 18555 | Erker, Lansing Co. of AZ, Louis v. Hardin, 2011 IL App (5th) 100201 | 366-1 | In one sense, this is correct. Contribution (which arises out of both liability and torts), is subrogation, and indemnification are distinct causes of action. None of these is true of subrogation. (Subrogation's origin...) [large block of text] | Contribution, subrogation, and indemnification are distinct causes of action. | "Are contribution, subrogation and indemnification distinct causes of action?" | Subrogation - Memo 210 - VIG.docx | ROSS-003132517-ROSS-003132519 | Condensed, SA | 0.93 | 0 | 1 | | | |
| 18556 | MacChiaverlli v. Shearson, Hammill & Co., 1847- Supp. 21 | 25T+139 | Courts have taken a liberal attitude as to the subjects cognizable in arbitration. (Michael v. SS Thanasis, 311 F. Supp. 170 (N.D. Cal. 1970)...) [large block of text] | Breaches of contract are the archetypal kinds of disputes referable to arbitration. 9 U.S.C.A. § 1 et seq. | Can breach of contract disputes be referred to arbitration? | Alternative Dispute Resolution - Memo 356 - RK.docx | ROSS-003132519-5-ROSS-003132594 | SA, Sub | 0.93 | 1 | | 1 | | |
| 18557 | Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818 | 366+1 | Scottsdale also asserts that the trial court erred in concluding that an excess insurer cannot raise a bad faith claim to settle claims against its primary insurer by way of conventional subrogation. (Subrogation is the substitution of another person...) [large block of text] | Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract | What are the types of subrogation rights? | Subrogation - Memo 160 - AMcE.docx | ROSS-003135763-ROSS-003135799 | Condensed, SA | 0.82 | 0 | 1 | | | |
| 18558 | Davidson v. Bugbee, 227 Mich. App. 264 | 13+61 | The period of limitation applicable to this action is six years from the date of accrual of the cause of action. M.C.L. § 600.5813; M.S.A. § 27A.5813. A cause of action accrues when all the elements of the claim have occurred... [large block of text] | Cause of action accrues when all the elements of claim have occurred and can be alleged in proper complaint. | When does a cause of action accrue? | Action - Memo # 340.docx | ROSS-003129665-ROSS-003129666 | Condensed, SA | 0.8 | 0 | 1 | | | |
| 18559 | Sleppy v. Weaver, 36 Cal. 3d 432 | 30+3.6[1] | A basic rule commends us to construe the allegations of a complaint liberally in favor of the pleader. (See Code Civ. Proc., § 452; Buxbom v. Smith (1944) 23 Cal.2d 535, 542, 145 P.2d 305...) [large block of text] | Allegations of complaint must be construed liberally in favor of the pleader. | Are allegations of a complaint construed liberally in favor of the pleader? | Pleading - Memo 199 - RMM.docx | ROSS-003129734-ROSS-003129735 | Order, SA | 0.89 | 1 | 0 | | 1 | |
| 18560 | Inns Texas Ind of Sub. Bourds, 369 S.W.3d 653 | 217+2962 | It is characteristic of insurance that a number of risks are assumed, some of which involve losses, and that such losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it... [large block of text] | There is no premium due until risk attaches, and once risk has attached premiums have been earned and are non-returnable, absent a statutory or contract provision to the contrary. | What is considered as the foundation of insurance? | 000399.docx | (USA4SAE-00115416-USA4SAE-00115419 | Condensed, SA | 0.78 | 0 | 1 | | 1 | |

Appendix D

3271

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18561 | Equitable Life Assur. Soc. of the U.S. v. Berry, 212 Cal.App.3d 832 | 217v1001 | The distinction we draw between legal and conventional subrogation in balancing of equities is necessary to determine whether the subrogee has a right to recover at all. While an insurance contract providing expressly for subrogation may ensue from the equities... | Principal purpose of insurance contract is to protect insured from loss, thereby placing risk of loss on insurer. | What is the purpose of insurance? | Insurance - Memo 4 - VP.docx | ROSS-002291653 ROSS-002291654 | Condensed, SA | 0.94 | 0 | 1 | | 1 | |
| 18562 | Burrus v. California Fair Plan, 152 Cal.App.4th 646 | 217v1000 | Insurance is a contract whereby one, for a consideration, undertakes to compensate another if he shall suffer loss. It is a contract of indemnity (...) insured. This principle underlies the contract, and is not seen... | The very meaning of the term indemnity excludes all idea of profit to the insured. | Does indemnity exclude profit to the insured? | Insurance - Memo 6 - VP.docx | ROSS-002388659 ROSS-002388661 | Condensed, SA | 0.93 | 0 | 1 | | 1 | |
| 18563 | Corcione Holdings, Inc. v. Philips & Lion, 513 F.2d 1222 | 257v111 | These reactions, while understandable, are at odds with the policy considerations embodied in the Federal Arbitration Act, which favor the enforcement of arbitration agreements. Arbitration is intended to provide... | Arbitration is intended to provide the parties to a dispute with a speedy and relatively inexpensive trial before specialists in § U.S.C.A. § 4. | What is the intention of the Arbitration process? | Alternative Dispute Resolution - Memo 23 - JS.docx | LEGALEASE-00000347 LEGALEASE-00000348 | SA, Sub | 0.81 | 0 | | 1 | | |
| 18564 | Clarendon Bank & Tr. v. Fid. & Deposit Co. of Maryland, 406 F.Supp. 1161 | 185v1 | The bond in controversy does not define "forgery." The Court must therefore resort to other definitional sources. In Gilbert v. United States... | Where the falsity lies in the representation of facts, not in the genuineness of execution, it is not forgery. | Is falsity in the representation of facts alone a forgery? | Forgery - Memo 10 - NMM.docx | ROSS-002291547 ROSS-002291549 | Condensed, SA | 0.92 | 0 | | 1 | | |

Appendix D

3272

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18565 | Hale v. Osborn Coal Enterprises, 729 So. 2d 853 | 414+1153 | The Hale group specifically contends that the settlement agreement constitutes contract zoning and that therefore, the agreement is illegal. Contract zoning is defined as follows: "The principle involved may be simply stated. A municipality has no power to make any agreement or deal which will in any way control or embarrass its legislative powers and duties. Neither the police power of the state itself nor that delegated by it to a municipality is subject to limitation by private contract, nor is the exercise of such power to be alienated, surrendered or limited by any agreement or device. Zoning is an exercise of the police power to serve the common good and general welfare. It is elementary that the legislative function may not be surrendered or curtailed by bargain or sale. The rezoning of a parcel of property by a municipality based in any way upon an offer or agreement by an owner of property is inconsistent with, and disruptive of, a comprehensive zoning plan." Haas v. City of Mobile, 289 Ala. 16, 19, 265 So. 2d 564, 566 (1972) (quoting Ralph J. Rohner, Land-Use Controls, 16 Vand. L. Rev. 117, 121-23 (1963) (citing Note, Contract Zoning, 23 U. Chi. L. Rev. 92 (1955)). See also City of Orange Beach v. Perdido Pass Developers, Inc., 631 So. 2d 400 (Ala. 1993). However, our supreme court has stated that "an annexation and zoning agreement is permissible if the city does not abdicate its legislative responsibility and the city is extensively involved in the development of the property." City of Orange Beach, 631 So. 2d at 854 (citation omitted). | Zoning of property by municipality, being legislative in character, cannot be bargained or sold. | Can zoning of property by a municipality be bargained? | 00385.docx | LEGALEASE 00115783 LEGALEASE 00115785 | Condensed_SA | 0.93 | 0 | 1 | | 1 | |
| 18566 | Marconi Shoreline Corp. v. Nathanson, 202 Misc. 154 | 38+3 | All the pertinent authorities appear to hold, however, that the validity of a wage assignment is to be tested as of the date when the loan was made. Thompson v. Erie Railroad Company, 207 N.Y. 171, 100 N.E. 791; and John Wildie & Co., Inc., v. R. A. Management, Inc., affirmed 145 App.Div. 416, 129 N.Y.S. 1025, affirmed 207 N.Y. 705, 100 N.E. 734; and also Waldron & Co., Inc., v. R. A. Management, Inc., 148 Misc. 180, 265 N.Y.S. 202. When the assignment was signed by the wage assignor here, Section 42 provided that the assignor should not acquire any rights to collect upon the same unless a duly authenticated copy of the assignment was served on the employer within three days after its execution. In construing the effect of Section 42, the Court of Appeals in Thompson v. Erie Railroad Company, supra, specifically held that the failure of the lender to file an assignment of wages within the three-day time limitation contained in Section 42 precluded any recovery by the plaintiff Thompson v. Gimbel Bros., supra, is to the same effect. | Failure to file wage assignment executed in February, 1950, with assignor's employer within three days, as required by statute, prevented assigned from acquiring any right thereunder to collect or attach wages while in possession or control of employer, though such statutory requirement was subsequently repealed and assignment was thereafter filed in county clerk's office and with employer pursuant to statute which had meantime become effective. Personal Property Law, §§ 42, subds. 1, 2, 47, 47-a. | What effects follow any failure to file an assignment of wages? | 07348.docx | LEGALEASE 00077603 LEGALEASE 00077605 | Condensed_SA, Sub 0.52 | | 1 | 1 | | 1 | |
| 18567 | State v. Ford, 180 N.C. App. 474 | 181+9 | The legislature has not defined the term "extendible maker." In State v. Hamilton, 291 Or. 283, 634 P.2d 208 (1981), though, the Supreme Court construed the term to mean that a used-in a criminal statute, ORS 165.002(b), a word which "well characterizes" "the meaning of 'extendible' in '... document' and that '"maker" in the sense described in the broad sense, to "one who makes or executes," 634 P.2d at 287, 634 P.2d at 208. Thus, an extendible maker is one who appears to have made or executed an instrument. | For purposes of statute prohibiting one from falsely altering a written instrument, a contemptible maker is one who appears to have made or executed the instrument. ORS 165.002(b). | Should the term maker be legally understood in a broad sense? | 00383.docx | LEGALEASE 00115809 LEGALEASE 00115810 | Condensed_SA, Sub 0.64 | | 0 | 1 | | 1 | |
| 18568 | Drake Med. Co. v. Glissman, 68 Ohio St. 337 | 38+4 | It is, no doubt, true that, in a technical sense, there can be no trade-mark in the name of a person, because a personal name cannot become a good because, speaking in a general sense, every person has the right to use his own name for the purposes of trade. There is, however, an important qualification of this general rule, which is called for in cases like the one now under consideration. The name of the inventor or original maker of an article of traffic, if not used in a way which would be likely to deceive or defraud, will be protected as a trade-mark, and the right to use such trade-mark, and to be protected therein, will pass by assignment. Wm. A. Williamson, 13 Wall.F. 648, Fed. Cas. No. 4,788; Krider v. Garnett, B.Co., at Brewsf. 42; Skinner et al. v. Oakes et al., 10 Mo. App. 45; Oakes v. Tonsmierre, C.C.49 Fed. 447; Kidd v. Johnson, 100 U.S. 617, 25 L. Ed. 769; Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 14 Ch. Div. 748. In the present case the plaintiff's alleged trade-mark had been identified, and this fact is found by the court below, for could only do so in such an honorable and legitimate manner than the public would not be deceived, nor his competitor defrauded. For the reasons stated, and upon the facts specially found by the court below, which are conclusive here, we are | The right to protection in the use of a name as a trade-mark will pass by assignment. | Do right to trade-marks pass by assignment? | Assignment v. Merina18 ROSS-003281560 ROSS-003281601 AKA.docx | ROSS-003281560 ROSS-003281601 | Condensed_SA, Sub 0.96 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18569 | Mathews State Co. of New York v. Advance Mops Supply Co., 185 A.D. 74 | 141+24 | In reaching his conclusion that these rights were appurtenant, Mr. Justice CLARKSON, who also wrote in the case, reasons upon the theory that the reservation thereof was not alone to Gragg, but also to himself and his heirs and assigns. "It seems to me that to hold the language of this Gragg might have other heirs or assigns than the heirs and assigns of his farm, and that his grant to defendant would be an easement in gross and as to strictly create an important distinction between easements and profits "à prendre. The existence of the former generally implies the existence of a dominant and a servient estate. Although easements may as some instances be created to be held in gross, which easements are always personal, and never inheritable or assignable. On the other hand, profits "à prendre in gross may be both inheritable and assignable. "An easement proper in gross cannot be created by grant, so as to be assignable or inheritable." Huntington v. Asher, 26 Hun, 498. Gladney's... Smith, § 1. E. (C.A. § 105). A profit may be transferred or inherited. Huntington v. Asher, supra. The distinction is recognized by Washburn, who says "If the easement consists in a right of profit "à prendre, or in taking soil, gravel, minerals, and the like, from another's land, it is such an interest in property that it may be held in fee simple, and it follows that if it could be transferred so as to be severed from the land to which it became annexed. If it granted to one in gross, it is treated as an estate, and may therefore be to one for life or inheritance. But if it is an easement proper, such as a right of way, and the like, and granted in gross, it is a mere personal interest, and not inheritable." Washburn Easements and Servitudes (4th Ed.) p. 11. | "Easements in gross" are always personal, and never inheritable, but "profits [à prendre in gross" may be both inheritable and assignable. | Are easements in gross assignable? | 003914.docx | LEGALEASE-00115912-LEGALEASE-00115915 | Order, SA | 0.91 | 1 | 0 | 0 | 1 | 1 |
| 18570 | Hadland v. Jones, 114 So. 242 120 | 323H+1025 | The plaintiff correctly dismissed the complaint. A vendor's implied lien is personal to the vendor, and in Florida it is not assignable by him nor does it follow the debt without assignment. Alabama-Florida Co. v. Mays, 111 Fla. 100, 149 So. 61, 91 A.L.R. 139. McKeown v. Collins, 38 Fla. 276, 21 So. 103. | Where a corporation sold realty to defendants, and a part of the consideration was defendants' promissory note which was transferred to the plaintiff as a part of the division of the property of the corporation, plaintiff could not enforce corporate vendor's implied lien since such lien is personal to the vendor and is not assignable by him nor does it follow the debt without assignment. | Is vendor's lien assignable? | 003911.docx | LEGALEASE-00115916-LEGALEASE-00115917 | Condensed, SA, Sub | 0.22 | | 1 | | | 1 |
| 18571 | Borden v. Graze, 367 Ala. 453 | 323H+47 | The respondents, by their answers, rely entirely upon the facts of the transaction, and the allegations of the bill, and do not, in answering the respondents in the pleading, raise the question of estoppel, which should have been pleaded in this case, if available at all. The authorities hold that if a deed is void, a subsequent purchaser takes no protection against it, but if fair it is merely voidable he is. 19 Cyc. 591. A deed without a grantee named therein is void, and if the grantor signs a deed, leaving the name for the name of the grantee blank, and authorizes some one as his agent to fill in the name of the grantee, and that person fills it in with the name of the designated grantee, the deed will be valid; but, if he leaves it filled with the name of another, it is void. Allen v. Allen, 48 Minn. v. Withrow, 106 U.S. 467; 1 L. Ed. 90; Golden v. Hardesty, 93 Iowa, 622, 61 N.W. 913; Mickey v. Barton, 194 Ill. 446, 62 N. E. 800. | A deed without a grantee named therein is void, and if the grantor signs a deed, leaving the space for the name of the grantee blank, and authorizes some one as his agent to fill in the name of the grantee, and that person fills it in with the name of the designated grantee, the deed will be valid; but, if the blank is filled with the name of another, it is void. | Is a deed without a naming a grantee void? | 003915.docx | LEGALEASE-00115962-LEGALEASE-00115963 | Condensed, SA, Sub | 0.41 | 0 | 1 | | | 1 |
| 18572 | In re Custody of Lemos, 268 Ill. App. 3d 937 | 277+12 | Illinois law is clear that where a party is given notice, he or she cannot complain that others were not notified. (See In re Estate of Stanford (1991) ) 221 Ill. App. 3d 154, 163 Ill. Dec. 586, 581 N.E.2d 1042 parties who received notice of heir's petition to vacate orders and to reopen probate estate and who completed that notice, did not appear to the trial court... of the hearing on that petition. Here, the estate of Melia's petition and in fact appeared for various parties were given notice of Melia's petition and in fact appeared on the date of the hearing. Nonetheless, the various respondents, although being raised to parties who were given notice of the proceeding, Where a party is given notice, he cannot complain that others were not notified. In re Estate of Miltrup (1975), 75 Ill.2d 347, 26 Ill. Dec. 639, 388 N.E.2d 132. | Where a party is given notice, the cannot complain that others were not notified. | Can a party who has received notice complain that the others were not notified? | Notice -Memo 22 - AMG.docx | ROSS-003285354-ROSS-003285357 | Condensed, SA | 0.85 | | 0 | | 1 | 1 |
| 18573 | In re Estate of Stanford, 221 Ill. App. 3d 154 | 313+154 | The appellants have also raised the issue that the court did not give notice, to all of the necessary parties. The record reflects that the executrix, her attorney, the trustee's attorney, and the executrix who had entered their appearances for various parties were given notice of Miller's petition and in fact appeared on the date of the hearing on that petition. Here, the issue of notice is being raised by parties who were given notice of the proceeding. Where a party is given notice, he cannot complain that others were not notified. In re Estate of Miltrup (1975), 75 Ill.2d 347, 26 Ill. Dec. 639, 388 N.E.2d 132. | Where party was given notice, he cannot complain that others were not notified. | Can a party who has received notice complain that the others were not notified? | 003968.docx | LEGALEASE-00115972-LEGALEASE-00115973 | Condensed, SA | 0.89 | | 0 | | 1 | 1 |
| 18574 | Louisiana Ass'n of Self-Insured Employers v. Louisiana Workforce Comm'n, 92 So.3d 397 | 361+1610 | "Substantial compliance" with the APA rulemaking procedures has been held to mean that a reviewing court should determine whether the statute has been followed sufficiently to serve its purposes for which it was adopted. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. Chaplain v. Louisiana State Parks, 655 So.2d 103, 108 (La.App. 4th Cir.1985). | What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. | What is substantial compliance with the Administrative Procedure Act rulemaking procedure mean? | 06308.docx | LEGALEASE-00078366-LEGALEASE-00078368 | Condensed, SA | 0.73 | 0 | 0 | | 1 | 1 |
| 18575 | In re Southern Scrap Material Company, 713 F. Supp. 2d 568 | 405+1011 | The Wreck Act requires the owner, operator or lessee of a wreck such in navigable waters to remove the wreck. 33 U.S.C. " 409; 33 C.F.R. " 245.10 ("Party responsible for obstruction and removal of other obstructions or anti-party of the wreck... item with the owner, lessee, or operator"). The responsible party is required to prosecute such removal diligently and, if the responsible party fails to do so, then the United States is authorized to remove the wreck. Id. | Under the Wreck Act, the owner of a wreck such in navigable waters has s clearly expressed duty, without regard to fault, both to mark and remove the wreck. 33 U.S.C.A. 4 414. | Who is responsible for the removal of wrecks or other obstructions in navigable waters? | 06317.docx | LEGALEASE-00078392-LEGALEASE-00078394 | SA, Sub | 0.6 | 0 | 0 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18576 | Citizens Comm. for Hudson Val. v. Volpe, 425 F.2d 97 | 15A+1721 | There can be no question in this case that Congress intended by the Administrative Procedure Act to assure comprehensive review of a broad spectrum of administrative actions," including those made reviewable by specific statutes as well as those for which no review is available under any other statute. Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681, 5 Rep.No. 752, 79th Cong. 1st Sess., 26 (1945); H.R.Rep. No. 1980, 79th Cong. 2d Sess., 41 (1946). Since the Army's issuance of this permit was final agency action for which there is no other adequate remedy in a court, and review is not clearly and convincingly precluded by the Rivers and Harbors Act, the Administrative Procedure Act must be read to confer equitable jurisdiction on the district court to protect by injunctive relief such rights as the plaintiff may have standing to assert. Kletschka v. Driver, 411 F.2d 436, 445 (2d Cir. 1969). In our discussion of standing, infra, we conclude that the plaintiff are "aggrieved by agency action within the meaning of a relevant statute" and are therefore entitled to review. The district court has the power under 706 to set aside agency action in excess of statutory authority, and we agree with the district court that its issuance of the permit here exceeded the Army's authority. Under these circumstances, the Administrative Procedure Act could not itself serve as a basis for jurisdiction, the important goal of subjecting final agency action to judicial review would be frustrated. We therefore conclude that the district court properly assumed jurisdiction. | Administrative Procedure Act is intended to assure comprehensive review of broad spectrum of administrative actions, including those made reviewable by specific statutes without adequate review provisions as well as those for which no review is available under any other statute. 5 U.S.C.A. § 706. | "Does the Administrative Procedure Act provide review of broad spectrum of administrative actions, including those made reviewable by specific statutes?" | Administrative Law Memo 15 -15.docx | ROSS-003283637-ROSS-003283638 | SA, Sub | 0.82 | 0 | | | 1 | |
| 18577 | Lewis v. Jacksonville Bldg. & Loan Ass'n, 540 S.W.2d 307 | 15A+1241 | Article 342''114, Vernon's Texas Civil Statutes Annotated authorizes the Savings and Loan Section of the Finance Commission to promulgate general rules and regulations not inconsistent with the Constitution and statutes of this State. The question is one of construction of the administrative rule. Valid rules and regulations promulgated by an administrative agency acting within its statutory authority have the force and effect of legislation. Texarkana and Ft. S. Ry. Co. v. Houston Gas & Fuel Co., 121 Tex. 594, 51 S.W.2d 284 (1932); Northeast Tarrant County Water Authority v. Board of Water Engineers, 367 S.W.2d 720 (Tex.Civ.App.1963), no writ; Administrative rules are construed like statutes. | Administrative rules are ordinarily construed like statutes. | Are administrative rules construed like statutes? | Environmental Law Memo 23 -15.docx | ROSS-003284314-ROSS-003284315 | Condensed, SA | 0.92 | | 1 | | | |
| 18578 | Schlager v. Detroit Bd. of Zoning Appeals, 187 Mich. App. 79 | 414+1605 | Plaintiff next incorrectly assumes that the Detroit Zoning Board of Appeals is a state administrative agency. In fact, the board is a municipal administrative agency and the terms of the APA simply do not apply thereto. General Electric Corp, 104 Mich.App. 180, 183-186, 304 N.W.2d 15 (1981); Vilaj v. Fraser Civil Service Comm, 37 Mich.App. 256, 257-258, 194 N.W.2d 718 (1971). The dictates of the APA clearly refers only to state departments, bureaus, divisions, boards or commissions, M.C.L. / 24.203(2); M.S.A. / 3.560(103)(2); therefore Wayne County Concealed Weapon Licensing Bd., 424 Mich. 298, 330, N.W.2d 544 (1984), and the fact that a local board is authorized by a state statute does not make that board a state board for purposes of the APA. | City board of zoning appeals was municipal administrative agency, rather than state administrative agency, even though authorized by state, and thus, not subject to terms of Administrative Procedure Act. M.C.L.A. § 24.201 et seq., including 60 day appeals filing requirement. M.C.L.A. § 24.203(2). | Does the State Administrative Procedure Act apply to municipal agency? | 00439.docx | LEGALEASE-00116549-LEGALEASE-00116550 | Condensed, SA, Sub | 0.62 | 0 | | | 1 | |
| 18579 | W. State Univ. of S. California v. Am. Bar Ass'n, 593 F. Supp. 2d 1129 | 141E+994 | Plaintiffs' APA claim has little likelihood of success. The APA allows judicial review for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," and defines "agency" as "each authority of the Government of the United States." 5 U.S.C. 70,701(b)(1). The ABA is not an agency; the ABA is not restricted. For example, Congress expressly designated the Secretary of Education as the entity that is to make "annual agency action, such as the ABA. See National Wildlife Federation v. Espy, 45 F.3d 1337, 1345 (9th Cir.1995) (holding no to agency defendants were properly joined as indispensable parties under Rule 19, but recognizing an APA cause of action could not be asserted against them); Kerpen v. Metropolitan Life Ins. Co. (1988) ("We know of no cases explicitly permitting a private suit under " 702 against a nongovernmental defendant . . .") (quoting Gilmore v. City of Montgomery, 417 U.S. 556, 566, 94 L.Ed.2d 1107 (1974) 10th Cir.1993); Haven v. Rancho De Albuquerque v. March, 966 F.2d 970 10th Cir.1992); Fasano 24 ESE 514 (E.D.La.2001) (the plaintiffs have only precedence must through which plaintiffs can obtain injunctive relief against nonfederal defendants, the National Glass Carriers Property Owners Residents, & Assoc., Inc. v. Brevis, 875 F.2d 453, 456 (5th Cir.1989)). | Administrative Procedure Act applicable to an entity that is not a federal agency. | Administrative Procedure Act did not extend to an entity that is not a federal agency, such as a private organization which accredited law schools. 5 U.S.C.A. §§ 701(b)(1), 702. | Administrative Procedure Act not a federal agency? | Administrative Law Memo 20- RM.docx | LEGALEASE-00002057-LEGALEASE-00002058 | Condensed, SA, Sub | 0.85 | 0 | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18580 | In re Wolverine Fire Apparatus Co. of Sherwood Michigan, 465 B.R. 808 | 50+1 | Foremost, the Court must point out that while every "consignment" involves a "bailment" of sorts because goods are entrusted to a third party, not every "bailment" is a "consignment." The supreme court has noted that the legislative history of Wisconsin's UCC section on sales, Wis. Stat. " 402.326 (creditors' rights in assets transferred to a debtor on approval and sale or return), shows that it was not intended to apply to those bailments that are merely a temporary entrustment of possession of goods, subject to further events, such as acceptance. Instead, it was intended to apply only to bailments when the delivery may, in one way or another, be properly classified as a consignment. Armor All Prods. v. Amoco Oil Co., 194 Wis.2d 35, 50"53, 533 N.W.2d 720 (1995). A "true consignment" creates a simple sales agency in which goods are delivered to a dealer for resale purposes, and this device is used as a price-fixing arrangement whereby the consignor may direct that the consignee charge a certain price for the goods. Both parties anticipate that the goods will eventually be transferred to a third party, and the consignor will be paid thereafter, usually with payment reduced by the consignee's fee. There is no allegation here that FVTS would direct the amount of the sale price to a third party, so this arrangement is not a "true consignment." On the other hand, "security consignment" involves the delivery of goods to a merchant who has been induced to accept them by agreement from the consignor permitting their return in lieu of payment if they are not resold. In the case of a security consignment, to provide security to the consignor, the consignor maintains title to the goods. Id. at 51, 533 N.W.2d 720. Finally, a true bailment of goods is not a sale or consignment sale and, thus, the UCC section defining creditors' rights to goods in consignment sale situations should not apply to true bailment situation. Id. at 53, 533 N.W.2d 720. A bailment without more does not | Under Wisconsin law, every consignment involves a bailment of sorts, because goods are entrusted to a third party, but not every "bailment" is a "consignment." | Is consignment a type of bailment? | Bailment - Memo 27 - ANG.docx | ROSS-003285949-ROSS-003285950 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 18581 | Voss v. State, 208 Miss. 303 | 146+1 | In Hampton v. State, 99 Miss. 176, 183, 54 So. 722, 723, it is said: "There was no such offense at common law as embezzlement; it is made such by statute; it is a statutory larceny. The rules of law in cases of larceny, with reference to alleging and proving the ownership of the property charged to have been stolen, apply with equal force to the crimes of embezzlement, false pretenses, and other kindred offenses. | There was no such offense in common law as embezzlement; and it is made such by statute, being a statutory larceny. | Is embezzlement a common law offence? | 004311.docx | LEGALEASE-00116527-LEGALEASE-00116528 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 18582 | Smith v. Bull, 50 Cal. 2d 294 | 192+2 | Section 14100 of the Business and Professions Code defines "The 'good will" of a business (as) the expectation of continued public patronage.' The record here shows that the Smith & Bull agency was in effect a "one account" agency; that the "one account" of value was the Seaboard Finance Company (and its predecessor) and that this account had been serviced satisfactorily by Smith and Bull during the existence of the partnership and for many years prior thereto. It will also be recalled that prior to opening his own agency Bull waited until he was sure that he would have the Seaboard account. As the court stated in Bergum v. Weber, 136 Cal.App.2d 389, 392, 288 P.2d 623, 625, "The customers of a business are an essential part of its goodwill. In fact, without their continued custom goodwill ceases to exist, for goodwill is the expectation of continued public patronage. Bus. & Prof. Code, s 14100. | Customers of a business are an essential part of its good will and in fact without their continued custom good will ceases to exist, since good will is the expectation of continued public patronage. West's Ann.Bus. & Prof.Code S 14100. | Is goodwill the expectation of continued public patronage? | Goodwill - Memo 10 - ANG..docx | ROSS-003299162-ROSS-003299164 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 18583 | Commonwealth v. Burno, 154 A.3d 764 | 203+502 | In order to convict a defendant of first-degree murder, the Commonwealth must prove beyond a reasonable doubt that a human being was killed unlawfully, that the defendant was responsible for the killing, and that the defendant acted with malice and with the specific intent to kill. See 18 Pa.C.S. " 2502(a); Commonwealth v. Johnson, 615 Pa. 354, 42 A.3d 1017, 1025 (2012). Although the term life-in-being is rarely, if ever, listed as a specific point of proof, or as an element of murder, it is axiomatic that the victim must be alive before being killed unlawfully.The fault in Burno's argument is that he appears to believe that the only manner of proving this point is through a specific witness who takes the stand to testify to seeing the victim(s) alive during the time period immediately preceding the murder. This is simply incorrect. It is hornbook law that the Commonwealth may prove its case using wholly circumstantial evidence, and that circumstantial evidence can itself be sufficient to prove any or every element of the crime. Commonwealth v. Perez, 625 Pa. 601, 93 A.3d 829, 841 (2014). The Commonwealth provided ample circumstantial evidence to prove that Juarbe and Rosado were living human beings before being murdered by Bethea and Burno. | To convict a defendant for first degree murder, the victim must be alive before being killed unlawfully. 18 Pa. Cons. Stat. Ann. S 2502(a). | Is it necessary to prove that the victim must be alive before being killed unlawfully to constitute homicide? | Homicide - Memo 3 - RM.docx | LEGALEASE-00002188-LEGALEASE-00002189 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 18584 | Kent v. Iowa, 651 F.Supp.2d 910 | 237+1 | Under Iowa law, defamation consists of the twin torts of libel and slander. Kiesau v. Bantz, 686 N.W.2d 164, 174 (Iowa 2004) (citing Theisen v. Covenant Med. Ctr., Inc., 636 N.W.2d 74, 83 (Iowa 2001)). More specifically: "Libel in Iowa is the "malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose [the person] to public hatred, contempt, or ridicule or to injure [the person] in the maintenance of [the person's] business." "' Vinson v. Linn"Mar Cmty. Sch. Dist., 360 N.W.2d 108, 115 (Iowa 1984) (quoting Plendl v. Beuttler, 253 Iowa 259, 111 N.W.2d 669, 670"71 (1961)). Slander's definition is nearly identical to that of libel, however, the injurious words are conveyed by oral statements. Id. | Under Iowa law, defamation consists of twin torts of libel and slander. | What are the twin torts under defamation? | Libel and Slander - Memo 4 - RM.docx | LEGALEASE-00002199-LEGALEASE-00002200 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18585 | Horton v. Blackrock Aggregates, 213 So. 3d 429 | 272+200 | Liability in a negligence action is determined by employing a duty/risk analysis. Mathieu v. Imperial Toy Corp., 94-0952, p. 4 (La. 11/30/94), 646 So.2d 318, 321. To establish the liability of a defendant pursuant to this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). 94"0952, pp. 4"5, 646 So.2d at 322. | Liability in a negligence action is determined by employing a duty/risk analysis. | How is liability determined in a negligence action? | Negligence - Memo 4 - VP.docx | ROSS-003284421-ROSS-003284422 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18586 | Abrams v. Stone, 154 Cal. App. 2d 33 | 361+1565 | It now becomes necessary to give consideration to respondent's contention that the legislature did not intend that Sections 404.1 and 404.2 should be applied to causes of action existing prior to September 7, 1955, the effective date of the enactments. But, was there any retroactivity involved in the application of Vehicle Code Sections 404.1 and 404.2 to this case? We think not. "A statute is not made retroactive merely because it draws upon facts antecedent to its enactment for its operation' (citing cases). It must give the previous transaction to which it relates some different legal effect from that which it had under the law when it occurred. Ware v. Heller, 63 Cal.App.2d 817, 821, 148 P.2d 410. This meaning of the word "retroactive" applies both to the rule which disfavors the construction of a statute as having retroactive application, 82 C.J.S. Statutes "" 412, 414, pp. 980, 981 et seq., and to the retroactive character of a statute as grounds of possible unconstitutionality. 16 C.J.S. Constitutional Law " 414 et seq., p. 856 et seq.' Holt v. Morgan, 128 Cal.App.2d 113, 116, 117, 274 P.2d 915, 917. We fail to perceive what different legal effect was created by the statutory amendments have in question solely as a result of the fact that the accident occurred before the effective date of the statutes. To be retroactive a statute must give a previous transaction to which it relates some different legal effect from that which it had under the law when it occurred (Holt v. Morgan, supra, 128 Cal.App.2d at pages 116, 117, 274 P.2d at page 917). No new or different burdens were imposed upon respondent as a result of the occurrence of the accident. Being a resident of this state he was subject to suit so long as he remained such resident and the action was commenced within the statute of limitations. The principle which forbids application of new enactments or revisions retroactively, applies only to statutes dealing with vested or substantive rights (Hadlich v. American | Statutes effecting changes in civil procedure or remedy may have valid retrospective application. | Can matters of venue operate retrospectively? | 004465.docx | LEGALEASE-00116477-LEGALEASE-00116479 | Condensed, SA | 0.98 | 0 | 1 | 0 | 1 | |
| 18587 | State v. Tauscher, 227 Or. 1 | 146+6 | If we were permitted to look only to ORS 165.005 for the definition of the crime of embezzlement we would not hesitate to follow the foregoing cases and construe the term "under his care" to include the misappropriation of funds in the manner in which the misappropriation was accomplished by this defendant, i. e., the misapplication of bank credits. But ORS 165.005 cannot be read alone; by its very terms we are required to read it with reference to ORS 164.310. Consequently, to constitute embezzlement the property misappropriated by the agent which "has come into his possession or is under his care" is property as defined in ORS 164.310. And, it is important to note, ORS 165.005 does not simply incorporate the items of property listed in ORS 164.310(2); the reference in ORS 165.005 is to that "which is property within the meaning of ORS 164.310." (Emphasis supplied.) In other words, only that property which is the subject of larceny can be the subject of embezzlement. This we have held in State v. Cooke et al., 1929, 130 Or. 552, 556, 278 P. 936. Since the property which was misappropriated in the present case was an intangible chose or thing in action, the question is whether such an intangible interest is subject to larceny. | Only property which is tangible and capable of being possessed may be subject of larceny or embezzlement, and agent who, without authority and for her own purposes, drew check on principal's account was not guilty of embezzlement. ORS 164.310, 165.005. | Can the property which is the subject of larceny be the subject of embezzlement? | 004644.docx | LEGALEASE-00116797-LEGALEASE-00116798 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 18588 | Kirby v. N. Carolina Dep't of Transp., 239 N.C. App. 345 | 315+63 | A "taking" has been defined as ""entering upon private property for more than a momentary period, and under warrant or color of legal authority," " id. at 199, 293 S.E.2d at 109 (quoting Penn v. Carolina Va. Coastal Corp., 231 N.C. 481, 484, 57 S.E.2d 817, 819 (1950)), ""devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof." " Id. (quoting Penn, 231 N.C. at 484, 57 S.E.2d at 819). "Modern construction of the "taking" requirement is that an actual occupation of the land, dispossession of the landowner or even a physical touching of the land is not necessary; there need only be a substantial interference with elemental rights growing out of the ownership of the property." Id. at 198"99, 293 S.E.2d at 109. Thus, " "taking" means the taking of something, whether it is the actual physical property or merely the right of ownership, use or enjoyment." Tel. Co. v. Hous. Auth., 38 N.C.App. 172, 174, 247 S.E.2d 663, 666 (1978) (" [P]roperty itself need not be taken in order for there to be a compensable taking."), disc. review denied, 296 N.C. 414 (1979); see also Beroth II, 367 N.C. at 351"52, 757 S.E.2d at 479 (Newby, J., dissenting in part and concurring in part) ("A substantial interference with a single fundamental right inherent with property ownership may be sufficient to sustain a takings action; wholesale deprivation of all rights is not required."). "[T]here is a taking when the act involves an actual interference with, or disturbance of property rights, resulting in injuries which are not merely consequential or incidental." Penn, 231 N.C. at 484"85, 57 S.E.2d at 820 (internal quotation marks omitted). "The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking." United States v. Gen. Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311, 318 | Rights of property are subject to such limitations as are demanded by the common welfare of society, and it is within the range and scope of legislative action to declare what general regulations shall be deemed expedient; this is very different from the right of eminent domain, the right of a government to take and appropriate private property to public use, whenever the public exigency requires it, which can be done only on condition of providing a reasonable compensation therefor. West's N.C.G.S.A. Const. Art. 1, S 19. | How is taking in relation to the eminent domain defined? | Eminent Domain - Memo 29 - AKA.doc | LEGALEASE-00002827-LEGALEASE-00002828 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | |
| 18589 | People v. Elmore, 59 Cal. 4th 121 | 203+100 | Homicide, the killing of one human being by another, is not always criminal. In certain circumstances, a killing may be excusable or justifiable. [Pen.Code.² 195 et seq.] See 1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Crimes Against the Person, ... | Homicide, the killing of one human being by another, is not always criminal. | Is killing of a human being by another human being considered a homicide or is it always a crime? | Homicide - Memo 11 - RK.docx | ROSS-000298012-ROSS-000298013 | Condensed, SA | 0.84 | 0 | 1 | | 1 | |
| 18590 | N. Assoc. Co. Ltd. v. Webb, 182 Misc. 112 | 50+14(1) | The defendant receiving the costs on consignment was a bailee and as such was required to use due and reasonable care. Berry Bros. v. Snowden, N.Y.Co., 209 A.D. 661... | One receiving the costs on consignment was a "bailee" and required to use due and reasonable care to prevent loss thereof. | Is a bailment, is a bailee required to exercise reasonable care? | Bailment - Memo 41 - RK.docx | LE6ALEASE-00002954-LEG ALEASE-00002955 | SA, Sub | 0.81 | | 0 | 1 | 1 | |
| 18591 | Brook v. Peak Int'l, Ltd., 294 F.3d 668 | 25+112 | Arbitration is a matter of contract, and thus, the power and authority of arbitrators in any given case is dependent on the provisions under which the arbitrators were appointed... | Arbitration is a matter of contract, and thus, the power and authority of arbitrators in any given case is dependent on the provisions under which the arbitrators were appointed. | What decides the power and authority of arbitration? | Alternative Dispute Resolution - Memo 220 - JS.docx | ROSS-000203059-ROSS-000203061 | SA, Sub | 0.71 | | 0 | | 1 | |
| 18592 | Tellew v. McCoy, 382 W. Va. 367 | 233+1051 | This Court today, by implying a warranty of habitability into residential leases... | In a written lease or oral lease of residential premises, there is an implied warranty that landlord shall at commencement of tenancy, deliver dwelling unit and during continuing term... and shall thereafter maintain leased premises in such condition. Code. 37-6-30. | Is there an implied warranty of habitability in residential leases? | Landlord and Tenant - Memo 05 - RK.docx | ROSS-000203292-ROSS-000203293 | SA, Sub | 0.32 | | 0 | | 1 | |
| 18593 | State v. Harrison, 181 Wash.App. 577 | 405+182 | I agree with the State that the California certificate of rehabilitation is not an "either equivalent procedure" permitting Mr. Harrison to possess firearms... | A California certificate of rehabilitation obtained by defendant for prior conviction for felony custodial interference qualified as "certificate of rehabilitation" under statutory exception... | Are the prior rights of a convict restored automatically? | 000392.docx | LEGALEASE-00117422-LEGALEASE-00117423 | Condensed, Sub, SA | 0.24 | | 0 | 1 | 1 | |
| 18594 | Caigbiv v. Gregoire, 97 F.2d 848 | 233+501 | To constitute the statutory of landlord and tenant those elements must be present: Permission or consent on the part of the Landlord, subordination to the landlord's title and rights on the part of the tenant... | To conclude the relation of "landlord and tenant" there must be permission or consent on the part of the landlord, subordination of the tenant to the landlord's title and rights, a reversion in the landlord... | Is the landlords consent a necessary element of the landlord tenant relationship? | 000497.docx | LEGALEASE-00117444-LEGALEASE-00117445 | SA, Sub | 0.13 | | 0 | | 1 | |
| 18595 | Anderson v. Steven R. Andrews, P.A., 692 So. 2d 237 | 98+20 | As a general rule, a plea of nolo contendere has been given no evidentiary effect beyond the action in which it was entered... | Person is not deemed to have committed crime and adjudication of guilt has been entered against him. | At what point is a person deemed to have committed a crime? | Convicts - Memo 02 - JS.docx | ROSS-000283483-ROSS-000283486 | Condensed, SA | 0.9 | | 0 | 1 | | |
| 18596 | Hill v. Hill, 262 A.2d 661 | 315+22 | It is well established that the law that the tax of real property determines the effect of actions involving its ownership... | Law of situs of real property determines effect of actions involving its ownership. | What does the law of situs govern? | Property - Memo 21 - JS.docx | ROSS-000297409-ROSS-000297412 | Condensed, SA | 0.66 | | 0 | 1 | | |

3278

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18597 | State v. Charlton, 465 P.2d 502 | 37•588 | Section 559.220, V.A.M.S. authorizes a jury to find an accused guilty of any degree of any offense, the commission of which is necessarily included if the charge is one consisting of different degrees. Section 556.220, V.A.M.S. authorizes conviction of a lesser offense on a charge of assault with intent to commit a felony or for a felonious assault, and in all other cases authorizes the court or jury to find defendant not guilty of the offense charged and find him guilty of any offense the commission of which is necessarily included in that charged against him. These sections, however, may not be relied upon to convict the trial court of error in not instructing on common assault in the trial of a charge of taking indecent or improper liberties with a minor under s 563.160, Common assault as proscribed by s 559.220, is not an offense of a degree inferior to that of taking indecent or improper liberties with a minor. The latter offense does not consist of different degrees. Nor is the offense of common assault under s 559.220 necessarily included in the offense of taking indecent or improper liberties with a minor. In State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765, a prosecution under s 563.160 for molestation of a minor, it was held that the offense was in the nature of a felonious assault and that one offense necessarily included another offense of common assault under the "merge into an offense" under s 563.160, that in a prosecution under this section "the offense could be an included crime" and so forth and if no offense at all "255 S.W.2d l.c. 768. In State v. Akers, 278 Mo. 368, 213 S.W. 424, 423 S.W.2d 336, the Court held that there was no error in failing to instruct on common assault in a prosecution where the defendant was charged with incest, the offense of common assault and molestation not being lesser crimes included in a charge of incest. | Failure to instruct in indecent liberties prosecution on common assault, which offense was not necessarily included in offense of taking indecent or improper liberties with a minor, was not error. Sections 559.220, 563.160 RSMo.1969, V.A.M.S. | Are the offenses of common assault and molestation of minors included under incest? | Incest - Memo 14 - TH.docx | LEGALEASE 00000097 LEGALEASE 00000099 | Condensed, SA, SA | 0.91 | | 1 | | 1 | 1 |
| 18598 | Downer v. Blue, 187 Wash. 279 e18 | 279•18 | The elements of negligence are duty, breach, injury, and proximate cause. Hostetler v. Ward, 41 Wash.App. 343, 704 P.2d 1193 (1985). Nuisance and trespass are related claims focusing on the invasion of a property interest. Grundy v. Thurston County, 66 Wash.App. 715, 735, 834 P.2d 821 (1992). The Downers do not allege any intentional act. To prove negligent nuisance or negligent trespass, a plaintiff must prove the elements of negligence. Grundy, 66 Wash.App. at 735, 834 P.2d 821. Accordingly, the Downers' claims for negligence, nuisance, and trespass all require a showing that the respondents owed them a duty. As explained above, because the Downers failed to demonstrate that the respondents owed such duty, those claims fail. | Nuisance and trespass are related claims focusing on the invasion of a property interest. | How are negligent nuisance and negligent trespass related? | Trespass - Memo 10 - RK.docx | LEGALEASE 00304231 LEGALEASE 00304232 | Condensed, SA | 0.89 | | 0 | | 1 | 0 |
| 18599 | Sarioff v. Florida Dep't of Highway Safety & Motor Vehicles, 825 So. 2d 351 | 15A•1111 | It is well recognized that a challenge to the facial constitutionality of a statute cannot be resolved by an administrative agency. See Dep't of Revenue v. Young Am. Builders, 330 So.2d 864, 865 (Fla. 1st DCA 1976). In Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153, 157 (Fla.1982), this Court acknowledged that "the instant action applies as an agency is claimed to be facially unconstitutional, the circuit court may, in appropriate circumstances, entertain a declaratory action on the statute's validity." When the administrative process can have no impact on the constitutional issues presented to the court, it would be "pointless to require applicants to endure the time and expense of full administrative proceedings." See id. (quoting Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc., 361 So.2d 695, 699 (Fla.1978)). Conversely, where an applied challenge to a rule is involved, courts have held that an exhausted administrative remedies before proceeding to circuit court. The Court in Key Haven recognized that if a party raised an as-applied challenge that the court is require that the constitutional deficiency in the administrative process should not be allowed... [A]dministrative remedies must be exhausted to assure that the responsible agency "has had a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issue." 427 So.2d at 158. | A challenge to the facial constitutionality of a statute cannot be resolved by an administrative agency. | Do administrative agencies have the authority to determine the facial validity of a statute? | 000055.docx | LEGALEASE 00117710 LEGALEASE 00117712 | SA, Sub | 0.93 | | 0 | | 1 | 1 |
| 18600 | People v. Dennis, 17 Cal. 4th 468 | 20 3•1457 | Under the Penal Code, as we have under common law, a fetus is not a "human being" within section 187's definition of murder. (Keeler v. Superior Court (1970) 2 Cal.3d 619, 628, 631, 87 Cal.Rptr. 481, 470 P.2d 617.) After Keeler, the Legislature amended section 187 (specifically, to provide for the crime of murder of "the unlawful killing of a fetus...." (Stats.1970, ch. 1311, • 1, p. 2440.) The Legislature made no comparable amendment to section 192's definition of manslaughter. (People v. Carlson (1974) 37 Cal.App.3d 349, 355, 112 Cal.Rptr. 321.) There is no crime of killing a fetus either voluntarily or involuntarily. (People v. Brown (1995) 35 Cal.App.4th 1585, 1590, 42 Cal.Rptr. 2d 155; People v. Apodaca (1978) 76 Cal.App.3d 479, 490, 142 Cal.Rptr. 830; People v. Carlson, supra, 37 Cal.App.3d at p. 355, 112 Cal.Rptr. 321.) | Defendant was not entitled to instruction on manslaughter as lesser included offense of murder of fetus when record included evidence from which rational trier of fact could find that fetus was born alive and thus was "human being" within manslaughter statute; expulsion of fetus from mother's womb was result of large cut to her abdomen in course of her murder and victim did not resemble live birth of human being, and fetus never breathed or lived independently of mother. West's Ann.Cal.Penal Code §§ 187, 192. | Is it/Was a human being within the meaning of murder or homicide statute? | 000425.docx | LEGALEASE 00117736 LEGALEASE 00117737 | Condensed, SA, Sub | 0.52 | | 1 | | 1 | 1 |
| 18601 | Skinner v. State, 36 Ala. App. 434 | 203•1 | Each act of sexual intercourse constitutes a separate and distinct offense. | Each instance of sexual act constitutes a separate and distinct offense. Code 1940, Tit. 14, § 325. | Does each act of sexual intercourse constitute a separate offense of incest? | 000461.docx | LEGALEASE 00117708 LEGALEASE 00117709 | SA, Sub | 0.23 | | 0 | | 1 | 1 |

1279

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18602 | Bank One, Texas, N.A. v. Prudential Ins. Co. of Am., 939 F. Supp. 533 | 233e594 | The TCRO's holdover tenant theory also fails. A holdover tenant is one who continues to occupy a leased premises after the term has expired... | "Holdover tenant" is one who continues to occupy leased premises after term has expired. | What is a holdover tenant? | 00050.docx | LEGALEASE 00117637-LEGALEASE-00117638 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | 1 |
| 18603 | Nationwide Weekly Admin. v. Belo Corp., 512 F.3d 137 | 241n51Q1 | A fifth, the plaintiff sued the publisher of an investigative report that was published on the Internet. Id. at 464. The plaintiff argued that because the report was constantly available on the Internet... | Under Texas law as predicted by the federal appellate court, single publication rule, which provides that limitation period for libel action begins to run when publication of defamatory matter is complete, applies to information widely available on the Internet. V.T.C.A., Civil Practice & Remedies Code § 16.002(a). | Does the single publication rule apply to content published on the internet? | Libel and Slander - Memo 90 - MS.docx | ROSS-003284955-ROSS-003284956 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 18604 | Bachus v. Bachus, 216 Ark. 802 | 302n3 | The difficulty, however, is not merely that there is no evidence in the record; there is also lacking any pleading to which the judgment might be said to be responsive. Our Code requires that pleadings be in writing... | Pleadings are required by Civil Code to be in writing in order that each party may know what issues are to be tried. Ark.Stats. § 27-1101. | What is the purpose of requiring written pleadings? | 00080.docx | LEGALEASE-00117905-LEGALEASE-00117906 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 18605 | Walker v. Morris, 78 Ga. App. 821 | 302n3 | (b) The defendant contends here that the court erred in its decision for the reason that the evidence demanded a judgment for the defendant. It is contended by the amount involved was one upon account or contract indebtedness... | Name of pleading is not important since Court will look to substance rather than name. | Do courts look to the substance or name of the pleading? | Pleading - Memo 29 - ANG.docx | ROSS-003297930-ROSS-003297932 | SA, Sub | 0.97 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18606 | Young v. United States, 97 U.S. 39 | 384+1 | There can be no doubt that the words "aid or comfort" are used in this statute, in the same sense as they are in the clause of the Constitution defining treason (art. 3, sect. 3), that is to say, in their hostile sense. The act of giving aid and comfort to an enemy must be done in the general character with those necessary to commit of treason, where the same allegiance is owing and the comfort to the rendered to the United States. But there may be aid and comfort without treason; for "treason is a breach of allegiance, and can be committed by him only who owes allegiance, whether perpetual or temporary. United States v. Wittberger, 5 Wheat. 95. The benefits of this statute are extended not for treason only, but for giving aid and comfort. Unless the benefit to the accused need not have been a traitor; it is sufficient if he has done the act which would have made him a traitor if he had owed allegiance to the United States. | "Treason" is a breach of allegiance and can be committed by him only who owes allegiance either perpetual or temporary. | Does element of treason include the breach of allegiance? | 000876.docx | LEGALEASE 00117811-LEGALEASE 00117813 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 18607 | Tarnavsky v. Tarnavsky, 666 N.W.2d 444 | 289+21 | Under North Dakota law, a partnership is "an association of two or more persons to carry on as co-owners in a business for profit." Tarnavsky, 147 F.3d at 677 (quoting Gangl, 281 N.W.2d 574, 579 (N.D.1979)). The existence of a partnership is a mixed question of law and fact, and the ultimate determination of whether a partnership exists is a question of law. Tarnavsky, at 677. The critical elements of a partnership are (1) an intention to be partners, (2) co-ownership of the business, and (3) a profit motive. | The critical element of a partnership are (1) an intention to be partners, (2) co-ownership of the business, and (3) a profit motive. | What are the essential elements of partnership? | Partnership - Memo 12.docx | ROSS-003280053-ROSS-003280054 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 18608 | F. H. Stoltze Land Co. v. Weisberg, 63 Mont. 38 | 233+542 | No particular words, technical or otherwise, or form of expression in an instrument are necessary to constitute a lease. Any language by which the possession and enjoyment of land is granted for a specified time at a stipulated rental being sufficient. (quoting relation). In Carey v. Wallace, 1916, the lease of July 18, 1916, should be regarded together, we have held, as the lessee hire for years, conferring on him that the lessee might thereafter continue in possession of the leased premises so long as he continued to pay the specified yearly rental and use the same as a business. | No particular words or form of expression are necessary to constitute a lease, one language by which the possession and enjoyment of land is granted for a specified time at a stipulated rental being sufficient. | Are particular set of words required to constitute a lease? | 000958.docx | LEGALEASE 00118223-LEGALEASE 00118224 | SA, Sub | 0.69 | 0 | 0 | 1 | 0 | |
| 18609 | RWE Mgmt. v. Chapel, 292 S.W.2d 641 | 233+531 | "A lease is a contract which contains both property rights and contractual rights." Brader v. Zbranek Corp., 129 N.C.App. 162, 170, 500 S.E.2d 732, 736 (1998). The provision of a lease, its therefore unlike general principles of contract law. Martin v. Ray Lackey Enters., Inc., 100 N.C.App. 349, 354, 396 S.E.2d 327, 330 (1990). | A lease is a contract which contains both property rights and contractual rights. | Do leases contain both property rights and contractual rights? | 001234.docx | LEGALEASE 00118356-LEGALEASE 00118359 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 18610 | United Elec. Coal Companies v. Rice, 80 F.2d 1 | 231H+2072 | Looking to the purpose, as well as to the words, of the Act, we are satisfied that the term "labor dispute" should be most broadly and liberally construed. The term "labor dispute" comprehends disputes growing out of labor relations. It infers "employer," "means the existence of the relation of employer and employee. Disputes between those parties are the general subject matter of this legislation. A lfs such disputes seem to be clearly included. Equally clear that we think must be the conclusion that the dispute referred to in the statute must be one between the employer and the employee or growing directly out of their relationship. It does not apply to disputes between employees or to disputes between employee unions to which employer is not a real party. The employer is not precluded from making the jurisdiction of a federal court of equity unless in appears that it was in some way a party to the dispute, between | Term "labor dispute," as used in statute limiting power of federal court of equity to grant injunctions in labor dispute cases, comprehends disputes growing out of labor relations and implies the existence of relation of employer and employee. Norris-LaGuardia Act, 29 USCA § 101 et seq. | What is a labor dispute? | 001181.docx | LEGALEASE 00118193-LEGALEASE 00118194 | Condensed, SA, Sub 0.69 | 0.69 | 0 | 1 | 1 | 1 | |
| 18611 | Bd. of Educ., Levittown Union Free Sch. Dist. v. Nyquist, 57 N.Y.2d 27 | 141E+216 | It is the willingness of the taxpayers of many districts to pay for and to provide enriched educational services and facilities beyond what the basic per pupil expenditure figures will permit that creates differentials in services and facilities that are greater in some districts. Had this willingness was recognized by the Supreme Court of the United States in San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 49, n. 102, 93 S.Ct. 1278, 1304 n. 102, 36 L.Ed.2d 16, supra sparring with approval a statement which accompanied the State of Hawaii's 1968 amendment of its educational finance statute (which permits counties to collect local faculty and spend them on their schools over and above the wholly funded program, "Under existing law, counties are precluded from doing anything in this area, even to spending their own funds if they desire. This corrective legislation is urgently needed in order to allow counties to tax above and beyond the State's standards and provide educational facilities as good as the people of the counties want and are willing to pay for. Allowing local communities to go above and beyond established minimums to provide for their people encourages the beneficial result of democratic government." [Senate Report Laws, 1968, Act 38... 1] Many legislative attempt to make uniform and enlarging the educational opportunities offered by the overall handiced local school district's, whether by expanding the opportunities for local education that come exclusively from State sources to be distributed in a uniform per pupil basis, by providing that any sum that supplementary, or in excess of a legislatively fixed per pupil expenditure, or by requiring every district and thus making them up the base of the highest spending district by means of out-district finance, that are beyond the competence of this court in all instances in view of the demise of the local control of education available to students in wealthier districts, | Education article mandate that legislature provide for maintenance and support of system of free common schools in which all children of state may be educated was being met in New York, in which average per pupil expenditure exceeded that in all other states had met, and was, there decisions as to how public funds will be allocated are matters peculiarly appropriate for determination by legislative body, and state financing system does not violate constitutional education article. Const.Art. 11, § 1; McKinney's Education Law §§ 2022, 3602. | Do communities make decisions on funding and operating publicly funded local schools? | Education - Memo 6.docx | LEGALEASE 00095962-LEGALEASE 00095964 | Condensed, SA, Sub 0.8 | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,079 |
| 18612 | State v. Schfarn, 92 N.W. 127 | 146v13 | 27.) The fact that the victim eventually "lost" an amount less than $2,000 is immaterial. There was substantial evidence that defendant, with the requisite fraudulent intent, negotiated checks in the amount of $3,500 for which an unauthorized payment had been entrusted to hold and not cash. Under the definition of embezzlement in s. 40A.16-7, supra, the embezzlement was complete when defendant converted those checks. See 2 Wharton's Criminal Law and Procedure, s 556 (1957). The fact that a portion of the $3,500 was repaid, so that the victim lost only $2,550, does not aid defendant. Restitution does not allow the embezzler to escape prosecution and conviction. People v. Rabdau, 26 Mich.App. 560, 182 N.W.2d 732 (1970); Sherman v. State, 234 Miss. 775, 108 So.2d 205 (1959). | Restitution does not allow the embezzler to escape prosecution and conviction. 195 Comp. S 40A.16-7 | Does restitution allow the embezzler to escape prosecution? | 001220.docx | LEGAL640 00118338 - LEGAL640 00118339 | SA, Sub | 0.87 | | 1 | | | |
| 18613 | Wolk v. Olson, 730 F. Supp. 2d 376 | 241 k19(6) | The plaintiff reads Pennsylvania law, as predicted by the district court, discovery rule in his position. The plaintiff reads these cases too broadly, however. He first cites First v. Choo Co., in which the Pennsylvania Supreme Court stated that "the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." 870 A.2d at 769. Although the plaintiff takes from this that the discovery rule should apply to "any case," the Court went on to clarify that the purpose of the rule is to address "an injury that is not immediately ascertainable." Id. at 770. | Under Pennsylvania law, as predicted by the district court, discovery rule did not toll statute of limitations for attorney to bring defamation action based on publication of article on public website that was reportedly tens of thousands of readers. 42 Pa.C.S.A. § 5523(1). | When is the discovery rule applied to Courts in defamation suits? | 001300.docx | LEGAL640 00118475 - LEGAL640 00118476 | Condensed, SA, Sub | 0.59 | | 1 | 1 | | |
| 18614 | Fortwood Assocs., Ltd. v. United States, 97 Fed. Cl. 809 | 359 k10(701) | The Fifth Amendment provides that private property shall not "be taken for public use without just compensation." U.S. Const. Amend. V. A claim alleging a Fifth Amendment taking occurs. "Goodrich v. United States, 434 F.3d 1329, 1333 (Fed.Cir.2006) (quoting Alliance of Descendants of Tex. Land Grants v. United States, 37 F.3d 1478, 1481 (Fed.Cir.1994)). Apart from a condemnation, such a taking generally occurs when the government acts to deprive the owner of the use and enjoyment of his or her property. See United States v. Causby, 328 U.S. 256, 262 N2, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); United States v. Gen. Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945)); see also Bishop v. United States, 26 F.3d 1185, 1371 (Fed.Cir.2000). A property owner establishes a taking when it proves a permanent physical occupation of its property results in the impairment or the loss of the value of the property through that the appearance's liability have occurred, and (iii) the plaintiff knew or should have known of the government action. See Hendler v. United States, 560 F.3d 1311, 1314 (Fed.Cir.), cert. denied, 558 U.S. 878, 130 S.Ct. 274, 175 L.Ed.2d 133 (2009)); Alliance of Descendants of Tex. Land Grants, 37 F.3d 481, PetroTrack LLC, Shrine U.S., ch 05 | A claim alleging a Fifth Amendment taking accrues when that taking action occurs. U.S.C.A. Const.Amend. 5. | When does a takings claim accrue? | 001444.docx | LEGAL640 00118607 - LEGAL640 00118608 | SA, Sub | 0.91 | | 1 | | | |
| 18615 | Wells v. Liddy, 17. Supp. 2d 532 | 237 k 6 | Courts have chosen to apply the law of the plaintiff's domicile in cases involving multi-state defamation out of convenience and necessity. See, e.g., Gordon v. Boyd, 889 F.Supp. 590, 600 (S.D.N.Y.1995); Crawford v. Fox Broadcasting Co., 85 F.Supp. 700, 702 (D.Md.1994). The rule these court's have followed in the one adopted by the framers of the Restatement. See Restatement (Second) of Conflicts § 150 (1971) & Supp.1991) Although the Restatement takes "the most significant relationship" approach to conflicts issues, the Restatement for a defamation action in which there is no issue of nationwide publication, it is most appropriate to apply the law where plaintiff was domiciled at the time the defamation was published because the central concern that the law of the place of injury should govern, and consistent with the tradition of choice-of-law analysis that security to apply to multi-state communications are the norm. It is the rule I will follow here. | In ordinary defamation cases it is appropriate under Maryland's lex loci doctrine presumptively to apply substantive defamation law of plaintiff's domicile, and it is only in cases of circumstances, such as where plaintiff's alleged injury is less of business opportunities in state other than her domicile or where plaintiff has suffered humiliation by hearing defamatory remarks about her in state other than her domicile, that lex loci doctrine requires application of nondomiciliary law. | What is the law applicable to multi state defamation cases? | 06701.docx | LEGAL640 00080942 - LEGAL640 00080943 | SA, Sub | 0.5 | | 1 | | | |
| 18616 | Piper Aircraft Co. v. Reyno, 454 U.S. 235 | 170B k 76 | The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In Koster, the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. 330 U.S., at 524, 67 S.Ct., at 835 [FN2]. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.24 | Dismissal on ground of forum non conveniens will ordinarily be appropriate where trial in plaintiff's chosen forum imposes heavy burden when the plaintiff has chosen the home forum. | Is the plaintiffs choice of forum entitled to greater deference when the plaintiff has chosen the home forum? | Venue - Memo 36 RM.docx | ROSS 000324413-ROSS-000324432 | SA, Sub | 0.6 | | 1 | | | |
| 18617 | Hutchison v State, 61 Md.Prim. 137 | 146v27 | "In support of his contention appellant insists that the information notes that he is sufficient to sustain the allegation that the statute above quoted, that the word "wilfully" is of similar import as the word "knowingly" and is the same in substance and effect. | Words "knowingly" and "wilfully" are of similar import, and allegation in information embezzlement prosecution that defendant committed the act "same as the that he "knowingly committed the act". 63 O.C.A. Ann. 5:141. | Are the words knowingly and willfully of similar import? | Embezzlement - Memo 53 - 15.docx | LEGAL640 00006361 - LEGAL640 00006362 | Condensed, SA, Sub | 0.09 | | 1 | | | |
| 18618 | City of Sherman v. Pub. Util. Comm'n of Texas, 643 S.W.2d 681 | 317k147 | The Public Utility Commission may share original jurisdiction with a municipality over the operations or services of a public utility which operates both inside and outside municipal limits. It has no statutory authority to regulate the operations or services of "municipally owned utilities" under the statute relating to original municipal jurisdiction within territorial limits of each municipality and original commission jurisdiction outside municipal boundaries. Vernon's Ann. Texas Civ.St. art 1446a, S 17(e). | While the Public Utility Commission may share original jurisdiction with a municipality over the operations or services of a public utility which operates both inside and outside municipal limits, it has no statutory authority to regulate the operations or services of "municipally owned utilities" under the statute relating to original municipal jurisdiction within territorial limits of each municipality and original commission jurisdiction outside municipal boundaries. Vernon's Ann.Texas Civ.St. art. 1446a, S 17(e). | Are municipally owned utilities different from privately owned utilities? | 001622.docx | LEGAL640 00118979 - LEGAL640 00118980 | Condensed, SA, Sub | 0.41 | | 1 | | | |

Appendix D

3282

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | |
| 18619 | United States v. Wong Kim Ark, 169 U.S. 649 | 24 H55 | The foregoing considerations and authorities irresistibly lead us to these conclusions. The fourteenth amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The amendment, in clear words and in manifest intent, includes the children born within the territory of the United States of all other persons, of whatever race or color, domiciled within the United States. Every citizen or subject of another country, while domiciled here, is within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States. His allegiance to the United States is direct and immediate, and, although but local and temporary, continuing only so long as he remains within our territory, is yet, in the words of Lord Coke in Calvin's Case, 7 Coke, 6a, "strong enough to make a natural subject, for, if he hath issue here, that issue is a natural-born subject"; and his child, as said by Mr. Binney in his essay before quoted, "if born in the country, is as much a citizen as the natural-born child of a citizen, and by operation of the same principle." It can hardly be denied that an alien is completely subject to the political jurisdiction of the country in which he resides, seeing that, as said by Mr. Webster, when secretary of state, in his report to the president of December, 1851, and since repeated by this court, "independently of a residence with intention to continue such residence; independently of any domiciliation; independently of the taking of any oath of | The foregoing considerations and authorities irresistibly lead us to these conclusions. The fourteenth amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The amendment, in clear words and in manifest intent, includes the children born within the territory of the United States of all other persons, of whatever race or color, domiciled within the United States. | Can an alien be prosecuted for treason? | 00368.docx | LEGAL046-00120366- LEGAL046-00120367 | Condensed, SA | 0.8 | 0 | | | 1 |
| 18620 | Lueckov rel. Wilber v. Pirolt, 208 A.2d 554 | 90244 | The option of a complaint constitute no part of the statement of the cause of action, and the statement of the parties to the suit cannot be made to depend upon what may appear in the caption of the case. The caption is no part of the pleading, unless made to by express reference therein in the pleading itself. See, McDonough v. Waterson, 1993, 133 Colo App. 163, 284 P. 482; Savannah Sugar Refining Company v. Royal Crown Bottling Co., 1964, 293 N.C. 330, 135 S.E.2d 217; Frick v. Woods, 1959, 189 N.C. 366, 215 S.W. 925; Jenkins v. Pullman Co., 1938, 8 Cir., 96 F.2d 405; Jackson v. Ashton, 1834, 8 Peter's 148, 8 L.Ed. 898. | Caption is no part of pleading, unless made to by express reference thereto in pleading itself. | Is the caption a part of the pleading? | Pleading - Memo 41 - Th.docx | ROS5-00208b102-ROS5- 00208b103 | Condensed, SA | 0.85 | 0 | 0 | 0 | 1 |
| 18621 | In re Hidalgo, 279 S.W.2d 456 | 90244 | We must consider whether Wife's "motion for rehearing" extended the trial court's plenary power over its January 3, 1994 final order. Husband argues the motion is neither a motion for new trial nor a motion to modify, correct, or reform the judgment. See Tex. R. Civ. P. 329b(a), (g). However, we look to the substance of a pleading or motion, not its title, to determine its effect. See Surgitek, Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 601 (Tex.1999) (courts look to substance of a motion to determine the relief sought, not merely to its title"); Doctor v. Perdue, 188 S.W.3d 164, 16 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) | A court looks to the substance of a pleading or motion, not its title, to determine its effect. | Does the substance of a pleading determine its effect? | 01880.docx | LEGAL046-00118891- LEGAL046-00118892 | SA, Sub | 0.85 | 0 | 1 | 0 | 1 |
| 18622 | Mitsmidt v. Stone Lumber Co., 844 F. Supp. 292 | 2571134 | Of course, had Congress intended to repeal all employment contracts from the Act, it would have been much easier just to say so rather than using the phrase, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. · 1. However, because Congress was exercising the full extent of its power over interstate commerce, the exemption for "any other class of workers engaged in foreign or interstate commerce" should have the same broad scope. See Miller Metal Prods., 215 F.2d at 228. The Federal Arbitration Act does not govern employment contracts, although I may have indicated at oral argument that I agreed with defendant on this issue. I therefore withdraw that earlier reflection. I need not determine whether the Act specifically exempts plaintiff's employment contract because neither broken nor "engaged in . . . interstate commerce." C.f. Am. Postal Workers Union v. U.S. Postal Serv., 823 F.2d 466, 473 (11th Cir.1987) (employment contracts for postal workers are exempt from the Act because postal workers are actually engaged in interstate commerce). | Federal Arbitration Act does not govern employment contracts. 9 U.S.C.A. § 1. | Does the Federal Arbitration Act apply to employment contracts? | Alternative Dispute Resolution - Memo 251 - Re.docx | ROS5-00029b485-ROS5- 00029b486 | SA, Sub | 0.93 | 0 | 1 | 0 | 1 |
| 18623 | Cole v. Wehr Dissolution Corp., 345 F. Supp. 2d 555 | 83 H85 | The FAA states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. · 1. To argue this limitation, the FAA applies to most employment contracts, including all employment contracts involving commerce. EEOC v. Waffle House, Inc., 534 U.S. 279, 123 S. Ct. 754, 151 L.Ed 2d 755 (2002) (finding that "[e]mployment contracts, except for those covered by workers engaged in transportation, are covered by the FAA."); Id. at 289, 122 S. Ct. 754; see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 117 S. Ct. 1302, 1491, 149 L.Ed 2d 234 (2001) (rejecting this lower court's determination that the FAA excludes all employment contracts and confirming the FAA exemption to employment contracts relating to transportation workers). Accordingly, the parties were not mistaken in believing that the FAA applied to Plaintiff's employment with National Hearing Centers, Inc. | An employment contract between store operator and store's owner was "transaction involving commerce" within meaning of Federal Arbitration Act, since owner was engaged in interstate commerce. 9 U.S.C.A. 52 et seq. | Are employment contracts covering workers engaged in transportation covered by the Federal Arbitration Act (FAA)? | 00215.docx | LEGAL046-00119115- LEGAL046-00119117 | Condensed, SA, Sub | 0.77 | 0 | 1 | 0 | 1 |

Appendix D

3283

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 180.24 | Chiron Corp. v. Ortho Diagnostic Sys., 2078 F.3d 1126 | 25T+213(5) | Because the Agreement is "a contract evidencing a transaction involving commerce," it is subject to the FAA. 9 U.S.C. § 2... The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable," id., and permits a party "aggrieved by the alleged... refusal of another to arbitrate" to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement, id. at ° 4. By its terms, the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. See 9 U.S.C." 4; Simula, Inc. v. Autiliv, Inc., 175 F.3d 716, 719° 20 (9th Cir.1999); see also Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 477778 (9th Cir.1991). If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms. | Court of Appeals reviews de novo the district court's decision to compel arbitration and begins its analysis by recognizing that an agreement to arbitrate is a matter of contract; it is a way to resolve those disputes, but only those disputes, that the parties have agreed to submit to arbitration. | When may a party petition a federal district court for an order compelling arbitration? | 00261.docx | USAGEASE-00193122 USAGEASE-00193123 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 180.25 | Bosetti v. Green, 25 N.J.L. 203+204 390 | | But, nevertheless, the charge complained of was right. Each partner has an entire control over the personal property of the partnership, for the purpose of selling the same, to pay partnership debts, this is considered the authorized agent of the firm. If he acts fraudulently, or in violation of an agreement or term of the partnership, and the party with whom he deals is cognizant of the fact, such sale will interfere and give relief; but there does not appear to have been any fraud or any excess of authority in this transaction. The effect of it was simply to prefer, or as to the coal would go, the creditor from whom it had been purchased. Pettrison v. Hollis, 1 Hare. R. 60; Phrippard and Rule v. Graham, 4 Wash, C. C. R. 234; Harrison v. Sterry et al., 5 Cranch 289; 1 Parsons on Con. 104; note to 3 Kent's Com. 44; Filton v. Holton, 4 Hold. 135. | Each partner in a firm has entire control over the personal property of the partnership, and a sale by either of the partners, even if fraudulent as to creditors, is to a purchaser not cognizant of the fraud, binds the firm. | Do the partners of a firm have control over the property of the partnership? | Partnership - Memo 1 SA IN.docx | ROSS-002382344 ROSS-002382345 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 180.26 | Baker v. Tremncinc, 937 211H+40(50) N.E.2d 650 | | "Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, and without reason." Meyer v. Anchor Indus., Inc., 688 N.E.2d 272, 276 (Ind.1996). The presumption of an at-will employment is strong, and courts are reluctant to adopt broad and ill-defined exceptions to the employment-at-will doctrine. Orr v. Westminster Village N., Inc., 689 N.E.2d 712, 717 (Ind.1997). | Indiana follows the doctrine of "employment at will," under which employment may be terminated by either party at will, and without reason; the presumption of an at-will employment is strong, and courts are reluctant to adopt broad and ill-defined exceptions to the employment at will doctrine. | What is an employment at will doctrine? | Labor and Employment Memo 39 - VP.docx | USAGEASE-00007055 USAGEASE-00007051 | Condensed, SA | 0.29 | 0 | 1 | 0 | 1 | 1 |
| 180.27 | McIntire v. Franklin Twp. Cmty. Sch. Corp., 15 N.E.3d 131 | 141H+682 | Unfortunately for McIntire, this court explicitly held in Naugal that there is no such private cause of action arising under the Indiana Constitution. In fact, the holdings in Naugal could be no clearer: "There is no express or implied right of action for damages under the Indiana Constitution." 20 N.E.3d at 1056 (citing Smith v. Ind. Dep't of Correction, 871 N.E.2d 975, 987 786 (Ind.Ct.App.2007)). Accordingly, the plaintiff cannot recover damages under Article 1, Section 12 of the Indiana Constitution... And the same is true here. Because there is no right of action for monetary damages under the Indiana Constitution, McIntire's claim for such damages must fail. | Parent, who alleged that township school corporation's actions of charging tardies and newspaper fees amounted to charging the "tuition," which was prohibited by State Constitution, did not establish a claim for damages because there was no right of action for monetary damages under the Indiana Constitution. West's A.I.C. Const. Art. 8, § 1. | Is there a right of action for monetary damages under the constitution? | Action - Memo 10 - VP.docx | ROSS-002399370-ROSS-002399371 | Condensed, SA, Sub | 0.48 | 0 | 1 | 0 | 1 | 1 |
| 180.28 | Hendricks v. Caldwell, 232 F. Supp. 3d 868 | 13+1 | Virginia Supreme Court Rule 3:6(a). Whether a subsequent claim involves "the same conduct, transaction or occurrence" depends on whether the claim is based on a different cause of action. See, 290 Va. at 268, 776 S.E.2d 798. "A cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action." Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 32 (1989). "A right of action, on the other hand, 'is the remedial right accorded to a person to enforce a cause of action, and arises only when a person's rights are infringed.'" Lee, 290 Va. at 265, 776 S.E.2d 798. "[M]ultiple rights may arise once a single cause of action, but a wrongful act generally gives rise to only a single indivisible cause of action." | "A right of action" is the remedial right accorded to a person to enforce a cause of action and arises only when a person's rights are infringed. | What is a "right of action?" | Action - Memo 12 - VS.docx | ROSS-003313348-ROSS-003313349 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | 1 |
| 180.29 | Justice v. Conard Cont'l., 438 S.W.3d 556 | 13+1 | A "cause of action" may exist before a "claim," in that the claim refers to a legal right that a party asserts in the cause whereas a cause of action constitutes the operative facts which give rise to the right to sue. To answer that, a court must look to the facts out of which the claim arose. See, e.g., State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 698 730 (Tex.1996)... | A "cause of action" may exist before a "claim," in that the claim refers to a legal right that a party asserts in the cause whereas a cause of action constitutes the operative facts which give rise to the right to sue. | Can a cause of action exist before a suit is instituted? | Action - Memo 16 - VS.docx | ROSS-003313303 ROSS-003313304 | SA, Sub | 0.74 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Memo Question | Copied Headnote | Judicial Opinion Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,344 | 14,873 | 22,876 | 9,079 |
| 186.30 | Valencia v. Mining, 160 Conn. App. 777 | 13-1 | Are the terms cause of action and claim synonymous? | The terms cause of action and claim are not always synonymous. | The defendants appear to misapprehend the meaning of the phrase "cause of action". In Roginsky v. Berglund, supra, 112 Conn.App. at 313, 962 A.2d 640, to mean that the trial court must determine separate damages for each claim or count. The terms cause of action and claim are not always synonymous. "It is important to recognize the distinction between a cause and a cause of action... terms that oftentimes are confused and even used interchangeably. For the purposes of the regulation of pleading and procedure in civil actions, a plaintiff's cause of action constitutes a single group of facts which are claimed to have brought about an unlawful injury to the plaintiff for which one or more of the defendants are liable, without regard to the character of the legal rights of the plaintiff which have been violated... In order for the facts to constitute a single group, the liability of each defendant must, in some aspect of the proof permissible under the allegations of the complaint, relate to and depend upon a single primary breach of duty... Therefore, where a plaintiff asserts multiple claims, which are legal theories that arise out of and depend upon the group of facts that brought about a single primary breach of duty, there is only one cause of action. Despite there being one cause of action, the plaintiff can maintain separate claims against individual defendants, who need not be jointly liable for each claim." | Action - Memo 24 - MN.docx | ROSS-003297957-ROSS-003297958 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 186.31 | State v. Tartenaar, 371 S.W.2d 192 | 110+43.40 | "Formication" is illicit sexual intercourse between a man, whether married or single, and an unmarried woman. What is formication? | "Formication" is illicit sexual intercourse between a man, whether married or single, and an unmarried woman. | We have no statutory definition of the act of formication. Therefore, when used the terms is to be given its meaning under the common law, Section 1.010, RSMo... 371 C.S. formication "1... The allegations in the information the defendant did commit an act of formication with his daughter set forth the elements of the offense of incest as defined by the statute. It was not necessary to allege specifically in the information that the daughter was unmarried as that fact is necessarily implied in the allegation that the incest was accomplished by an act of formication. The allegation that "she did commit incest by an act of formication" being then and there persons within the degree of consanguinity within which marriages by law could be declared incestuous and void" is orphanage, and for that reason it is contended that the allegation apparently is incomplete and certainly most manifestly drawn. The language of the information, however considered by the appropriate follows the language of the statute, and in doing so charges the crime of incest by an act of formication between defendant and his daughter. The information is sufficient. | Insert - Memo 52 - VP.docx | ROSS-003297955-ROSS-003297956 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 186.32 | Hillmen v. N. Waives Cty. People's Util. Dist., 213 Or. 264 | 26N+73(1) | Is a people's utility district a quasi-municipal corporation? | The functions of a people's utility district are essentially proprietary in nature within the rule imposing tort liability on quasi-municipal corporation when it is acting in a private, corporate or proprietary capacity. ORS 30.310, 30.320, 261.010 et seq., 261.305; Const. art. 11, § 12. | A people's utility district may be composed of a city or of a city together with a parcel of unincorporated territory. It would bear a storage rule indeed which held a city liable when acting in operating a storage rule indeed which held a city liable when operating a water or fuel utility system and immunized municipal corporation may include a city. As said by the supreme court of California in considering a like problem involving the tort liability of a municipal utility district, "such a rule does not comport, either as a matter of policy or law or reason." Morrison v. Smith Bros., Inc., 211 Cal. 36, 293 P. 53, 56. We therefore hold that the defendant in operating and maintaining its utility system is engaged in a proprietary function and is subject to the liability imposed by ORS 30.320. | 001355.docx | | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 186.33 | McGee v. People, 160 Colo. 46 | 207+4 | Is a victim's age an element of the crime of incest? | Essential elements of incest are act of sexual intercourse and commission of that act between persons related within the prohibited degrees defined by statute and the unwed status of female are not elements. C.R.S. '53, 40-9-6. | The essential elements of incest, on the other hand, are (1) the act of sexual intercourse; and, (2) such an act between persons related within the prohibited degrees defined by statute. See People v. Rogers, 27 Am.Jur. Incest § 2. The age of the victim or the age of the perpetrator is treated as a requisite of this offense. Nor is the unwed status of the female an element. | Insert - Memo 55 - RM.docx | LEGALEASE-00007942-LEGALEASE-00007943 | SA, Sub | 0.31 | 0 | 1 | 0 | 1 | |
| 186.34 | Expressions Hair Design v. Schneiderman, 137 S.Ct. 1144 | 172H+1263 | Can a surcharge be imposed on a credit card? | "Surcharge," under New York statute prohibiting a merchant from imposing a surcharge for a credit card transaction, refers, in the context of a single-sticker regime, in which a merchant lists one price and a separate surcharge amount, a charge in excess of the sticker price. McKinney's General Business Law § 518. | The next question is whether "518 prohibits the pricing regime petitioners wish to employ. The Court of Appeals concluded that it does. The court read "surcharge" in "518 to mean "any additional amount above the seller's regular price," and held that "518 applies to sellers who post a single sticker price. The sticker price is the "regular" price, so sellers may not charge credit-card customers an additional amount above the sticker price that is not also charged to cash customers." 808 F.3d, at 128. Under this interpretation, signs of the kind that the merchants wish to post "515, with a $0.10 surcharge for credit card users" "violate "518 because they identify one sticker price "$10"and indicate that credit card users are charged more than that amount. | 000262.docx | LEGALEASE-00105543-LEGALEASE-00105542 | Condensed, SA, Sub | 0.6 | 0 | 1 | 0 | 1 | 1 |

Appendix D

3285

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 186.35 | C.I.R. v. Chase Manhattan Bank, 259 F.2d 231 | 253+72 | The community property system comes from the custom of the women of the Visigoths and other Germanic tribes sharing the fighting and the spoils of war with their men; it owes its strength to the civilized view that marriage is a full partnership. Husband and wife are equal partners. Each has a present, vested half interest in all community property. All property accumulated during marriage is community property, unless it is retrieved by gift, devise, or inheritance. In Texas even income derived from separate property belongs to the community, including interest and dividends from separately owned property. The husband is the manager of the community. But this management is not equivalent to ownership. He acts as a managing partner or trustee or managing agent of a limited partnership. The husband may sell or donate community property, but not in fraud of his wife's rights. The earnings of the husband during marriage are community, and any property purchased with such earnings is community. The wife's rights, aside from managerial control, are the same as his. Husbands generally are without special power to dispose of community property, and the husband cannot by will divide it to be greater than one half of the community. The husband's power of testamentary disposition over his half cannot reach more than his half. Upon the death of either spouse, a community property title vests an interdivided one half of the community. Since 1948 (and prior to 1942), only the decedent's half is includible in his gross estate for federal tax purposes. | Under community property system, all property accumulated during marriage is community property, unless it was retrieved by gift, devise or inheritance. Vernon's Ann.Civ.St.Tex. arts. 3678, 4613, 4614, 4619. | Does a husband and a wife have equal share of community property? | 003456.docx | LEGALEASE-00135553-LEGALEASE-00135553 | 5A, Sub | 0.87 | | | | 1 | |
| 186.36 | Syntax Fin. Servs. Corp. v. Giant Cement Holding, 257 F. Supp. 2d 690 | 34A+4 | In interpreting UCC " of cloth, courts have held that arbitration is a contractual remedy, not an obligation, and therefore it can be raised against a finance assignee by the account debtor. See e.g., OMAC Commer. Credit LLC v. Springwell Res., 376 F.Supp.2d 201, 214 (S.D.N.Y.2005) ("Most courts interpret section 9-404 have considered in arbitration clauses to be interpreted for remedial measures, for then the assignment would change the very nature of the rights assigned to the benefit of the very nature of the rights assigned." Because the factor may assignee or other party whose rights are premised on a contract is bound by the remedial provisions bargained for between the original parties to the contract"); Cone Constructors, Inc. v. Drummond Community Bank, 754 So.2d 779 (Fla.App.2000) (citing UCC " 9-318) In the most part in OMAC concluded, "the adoption of the Article 9 of the UCC means that a finance assignee suing on an assigned contract is bound by that contract's arbitration clause unless its executed a waiver against signatory waiving to arbitrate." 171 F.Supp.2d at 214 (citing Boruun De Paris, 579 F.Supp. at 1470. 711). | Under Ohio law, factoring agreement was "sale of accounts" governed by Article 9 of Uniform Commercial Code (UCC), rather than finance arrangement governed by Article 2, and thus factor was bound by arbitration provision in assignor's contract with account debtor, even though factor was only a assigned contract's remedial measures. Ohio R.C. 55-1302.13(3), 1309.1206(A)(1), 1309.406. | Is an assignee suing on an assigned contract bound by that contract's arbitration clause? | Alternative Dispute Resolution - Memo 281 - Alternative Dispute Resolution - Memo 281 - RE.docx | LEGALEASE-00008280-LEGALEASE-00008282 | Condensed, SA, Sub | 0.67 | | | 1 | 1 | 1 |
| 186.37 | Mengel Co. v. Nashville Paper Prod. & Specialty Workers Union, No. 513, 221 F.2d 644 | 25T+125 | There is a common law right of arbitration. Hamilton v. Home Ins. Co., 137 U.S. 370, 385, 11 S.Ct. 133, 34 L.Ed. 708; Natl v. United States, 125 U.S. 650, 663, 8 S.Ct. 997; 31 L.Ed. 821; Compulsory arbitration, without right to have the issue determined by court action is invalid. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 43 S.Ct. 630, 67 L.Ed. 1103; Firemen's Ins. & Mass. v. Goldberg, 36 M.&.Co., 219 M.F. 382, 171 N.E. 579, 69 A.L.R. 800; see cases in Annotation, 69 A.L.R. 834. A court of equity has general jurisdiction to set aside an arbitration award or to enjoin its enforcement Molton v. McLaughlin, 4 Cir., 232 F. 588, 591; Campbell v. American Fabrics Co., 2 Cir., 168 F.2d 959. | Compulsory arbitration, without right to have the issue determined by court action, is invalid. | Is there a common law right of arbitration? | Alternative Dispute Resolution - Memo 278 - ROSS-00335552 - ROSS-00335552 | ROSS-00335551-ROSS-00335552 | Condensed, SA | 0.87 | | | | | 1 |
| 186.38 | Somers v. AAA Temp. Servs., 5 Ill. App. 3d 931 | 13+7 | Finally, defendant Kerr in her answer questions the motives of plaintiff in bringing this action by alleging that a cause friend and business advisor of hers is Kerner's contention that, in this capacity, Somers conspired with plaintiff to bring suit against her office as director of the corporation by filing the instant complaint. Although plaintiff in her answer admitted that she was a close friend and advisor of Kerr and worked part-time for her in a separate business venture, he denied any bad motives in instituting this suit. An examination of Illinois law on this question as to whether an alleged bad motive constitutes a valid duty of defense reveals that our courts have consistently held that it does not. It generally accepted that where the plaintiff asserts a valid cause of action, his motive in bringing the action is immaterial. A plaintiff's right of recovery is in no way barred by his ill-motive which prompts him to institute the action. See Malone v. Armhold & Co. v. Mexican Asphalt Pub. Co. (1895), 153 Ill.App. 194 S.E. 360. Since plaintiff had a valid cause of action on this count, we find no reason to bring the action to be immaterial. | Where plaintiff had valid cause of action, plaintiff's motive in bringing an action was immaterial. | Is the plaintiff's motive in bringing an action material? | Action - Memo 49 - MS.docx | ROSS-00297759-ROSS-00297760 | 5A, Sub | 0.92 | | | 1 | 1 | |
| 186.39 | Dep't of Revenue v. Merrimt Square Corp., 334 So. 2d 151 | 317A+101 | It is, thus, clear that a privately owned utility is a Public utility if it holds itself out to serve the general public. Therefore, the operator of regulation must serve whomsoever desires such service as far as its capacity extends. If, while it privately owned utility which had exempted such one public utilities, then the utility profit from the greater use of private such, and we have no otherwise been supplied or found such a definition. It seems apparent that a private utility, one which sells energy to a limited segment or group, such as to its own tenants, and not the public at large. To conclude otherwise would require us to say that the legislature, in enacting the provisions, intended the exemption; to hold rev'r be presumed that the legislature intended to enact a constitutional, consonant. Ison v. State, Howard Corporation of America, Fla., 144 So.2d 811 (1962); Dickinson v. Davis, Fla., 224 So.2d 262 (1969). | Under statute defining "public utility" for purposes of regulation, a privately owned utility is a public utility if it holds itself out to serve general public. West V.S.A. 55 366.01 et seq., 366.02. | When is a privately owned utility a public utility? | 003512.docx | LEGALEASE-00120075-LEGALEASE-00120076 | Condensed, SA, Sub | 0.79 | | | 1 | 1 | 1 |

Appendix D

3286

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18640 | Rick B Short Lumber Corp. v. Universal Mining Co. of Wisconsin, 81 Wis. 2d 135 | 366+1 | Although such conventional subrogation has been said to rest on contract... | The object of subrogation is to do substantial justice independent of form or contract relation between parties... | What is the object of subrogation? | Subrogation - Memo 44 - RM.docx | ROSS-003312794 ROSS-003312795 | Condensed, SA | 0.74 | 0 | | | 1 | |
| 18641 | State of Fla. ex rel. Shevin v. Exxon Corp., 526 F.2d 266 | 1798+1107 | Finally, it could be argued that, although the common-law power of the attorney general to institute actions under federal law exists, there is no power to institute an action without affirmative authorization from state instrumentalities when... | Court of Appeals would not certify to Florida Supreme Court question whether Florida Attorney General had power to institute suit under federal law without specific authorization of individual government agencies... | Can a State Board of Administration employ a counsel other than a Attorney General to represent them in legal matters? | 00826.docx | USA4EAE-00120156 USA4EAE-00120155 | Condensed, SA, Sub 0.09 | 0.09 | | | 1 | 1 | |
| 18642 | Simmons v. Morgan Stanley Smith Barney, 872 F. Supp. 2d 1002 | 25+140 | "The final phrase of "... permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract"... | Under California law, severance of substantively unconscionable provision of arbitration provisions in executor's promissory notes and bonus agreements with former employer, which required executor to pay hearing session fees in excess of those that he would pay to bring his action in federal district court, was warranted, and therefore arbitration provisions, which were not permeated by unconscionability, were otherwise enforceable. West's Ann.Cal.Civ.Code § 1670.5. | Can a court rely on the unseverance of an arbitration agreement when state law says that the enforcement of the agreement is unconscionable? | Alternative Dispute Resolution - Memo 303 - RM.docx | ROSS-003297261 ROSS-003297263 | Condensed, SA, Sub 0.6 | 0.6 | | 1 | | | |
| 18643 | Reagan v. Murphy, 235 La. 529 | 233+531 | There is a vast difference between the right to acquire property and the right of enjoyment... | A lease is not, in essence, a real right under civil law. | Is a lease a real right under the civil law? | 00745.docx | USA4EAE-00120234 USA4EAE-00120235 | Condensed, SA | 0.88 | | | | 1 | |
| 18644 | Republica v. McCarty, 2 U.S. 86 | 386+6 | The crime imputed to the defendant by the indictment, is that of levying war against the state, in joining the army of the king of Great Britain, inflicting, or procuring any person to be enlisted, in the service of the enemy, is clearly an act of treason. By the defendant's own confession it appears, that he actually enlisted in a corps belonging to the enemy; but, it also appears, that he had previously been taken prisoner by them, and confined at Wilmington. He remained, however, with the British troops for ten or eleven months, during which he might easily have accomplished his escape, and it is contended, that, in the course of the law, nothing will excuse the act of joining an enemy, but the fear of immediate death; not the fear of any inferior personal injury, nor the apprehension of any outrage upon property. But had the defendant confined himself to the fear of perishing, and with a sincere intention to make his escape, the fear could not surely always continue, nor could his intention remain unexecuted for so long a period. | Enlisting in the service of an enemy is clearly treason, and nothing will excuse such act but the fear of immediate death. | Is enlisting in the service of an enemy an act of treason? | Treason - Memo 15 - RM.docx | USA4EAE-00009132 USA4EAE-00009133 | Condensed, SA, Sub 0.88 | 0.88 | | 1 | | | |
| 18645 | Shellabarger v. Morris, 115 Mo. App. 566 | 386+6 | We have been speaking of cases arising out of negligence and breach of contract. But where one not on the law governing breach of contract or negligence. The charge of the petition is that defendants conducted an spiteful and wrongful, wrongful and malicious, and perpetrated for the purpose of annoying plaintiff, which resulted in preventing her from attending to her business, harmfully affected her nerves, and injured her health. The action is based upon mental distress, fright, or injury to her health and business. The action is based upon wrongful and malicious trespass, which, under our criminal statute, constituted a breach of the peace and therefore unlawful. And we can see no good reason why the holding in Purtell v. Railroad, supra, does not apply, as... | Can an action for trespass be instituted against someone who maliciously annoys another? | 00984.docx | USA4EAE-00120292 USA4EAE-00120294 | Condensed, SA, Sub 0.73 | 0.73 | | | 1 | | |
| 18646 | Aames Capital Corp. v. Interstate Bank of Oak Forest, 315 Ill. App. 3d 700 | 366+1 | There are two broad categories of subrogation rights: contractual or conventional rights, and conventional or equitable rights. Schultz v. Gotlund, 138 Ill.2d 171, 178, 149 Ill.Dec. 282, 561 N.E.2d 652 (1990). Equitable subrogation is a creature of chancery that is utilized to prevent unjust enrichment. Lahti Indus. 349 Ill.2d at 178, 173 Ill.Dec. 648, 597 N.E.2d 612. There is no general rule that can be laid down to determine whether a right of subrogation exists, since this right depends upon the equities of each particular case. Lah'ambrasia, 349 Ill.2d at 159, 173 Ill.Dec. 648, 597 N.E.2d 612. Conventional subrogation, on the other hand, arises from an agreement between the parties that the subrogee pay a debt on behalf of a third party and, in return, be able to assert the rights of the original creditor. See Home Savings Bank v. Bierstadt, 168 Ill. 618, 624, 48 N.E. 161 (1897). | Equitable subrogation is a creature of chancery that is utilized to prevent unjust enrichment. | Is equitable subrogation a creature of the common law? | Subrogation - Memo 1 - AMJ.docx | USA4EAE-00009284 USA4EAE-00009285 | Condensed, SA | 0.89 | | 1 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18647 | Eisenberg v. City of Miami Beach, 1 F. Supp. 3d 1327 | 13+16 | The equitable relief Plaintiffs seek is a remedy, not a separate cause of action. See Perret v. Wyndham Vacation Resorts, Inc., 889 F.Supp.2d 1333, 1346 (S.D.Fla.2012) (dismissing count pleading injunctive and declaratory relief for failure to state a separate cause of action); Tara Prods., Inc. v. Hollywood Gadgets, Inc., No. 09"CV"61436, 2010 WL 1531489, at (S.D.Fla. Apr. 16, 2010) (dismissing count pleading remedy of equitable lien for failure to state separate cause of action); see also Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1127 (11th Cir.2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action ... There is no such thing as a suit for a traditional injunction in the abstract.") (internal quotation marks and citation omitted). Moreover, "[A] court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court." Perret, 889 F.Supp.2d at 1346 (citation omitted). Plaintiffs already seek equitable relief in the other counts of the Complaint. Accordingly, Count VII is dismissed. | Equitable relief sought by plaintiffs was a remedy, not a separate cause of action. | Is equitable relief a cause of action? | Action - Memo 57 - MS C.docx | ROSS-003303032-ROSS-003303033 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 18648 | Holston River Elec. Co. v. Hydro Elec. Corp., 17 Tenn. App. 122 | 145+1 | The same learned authority holds that under the police powers of the state practically every matter in relation to the use of the streets, alleys, construction of the lines, transmission of electricity, and control of the same may be regulated by the state authorities. If, as said by the defendants in its answers, the rates at one time were too high, then that is a matter in which opportunity is given for regulation by the Public Utilities Commission of the state and, on appeal, by the courts. These companies, as stated, are quasi public corporations, and hence subject to state control. See sections 329, 326, 334, of the Law of Electricity by Curtis, supra. | Electric companies are quasi public corporations subject to state's control. | Are Electric companies termed as quasi-public corporations? | Electricity - Memo 55 - JS.docx | ROSS-003325783-ROSS-003325785 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 18649 | Kitt v. United States, 277 F.3d 1330 | 148+2.4 | For retroactive taxation to be a taking, it must be "so arbitrary as to constrain to the conclusion that it was not the exertion of taxation." Brushaber v. Union Pac. R.R. Co., 240 U.S. 1, 24"25, 36 S.Ct. 236, 60 L.Ed. 493 (1916); see Nichols v. Coolidge, 274 U.S. 531, 542"43, 47 S.Ct. 710, 71 L.Ed. 1184 (1927) (describing the standard as whether the tax was "so arbitrary and capricious as to amount to confiscation"); Houck v. Little River Drainage Dist., 239 U.S. 254, 265, 36 S.Ct. 58, 60 L.Ed. 266 (1915) (noting that taxation will be considered a taking only if it is a "flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property"). For the reasons previously given in rejecting the Due Process contention, the ten percent additional tax does not even approach such action. Indeed, the Supreme Court has observed "that it would be "surprising indeed to discover" that a statute that satisfied the Due Process Clause nonetheless violated the Takings Clause." Branch v. United States, 69 F.3d 1571, 1578 (Fed.Cir.1996) (quoting Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust, 508 U.S. 602, 641, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 233, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)). | For retroactive taxation to be a taking in violation of Fifth Amendment, it must be so arbitrary as to constrain to the conclusion that it was not the exertion of taxation. U.S.C.A. Const.Amend. 5. | When is a retroactive taxation considered a taking? | 003109.docx | LEGALEASE-00120697-LEGALEASE-00120698 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 18650 | Crown Wisteria v. F.G.F. Enterprises Corp., 168 A.D.2d 238 | 249+41 | Only a party to the proceeding complained of as a malicious prosecution is entitled to maintain an action for malicious prosecution. See 59 N.Y.Juris.2d, False Imprisonment and Malicious Prosecution, " 48, at p. 311). | Only party to proceeding complained of as malicious prosecution is entitled to maintain action for malicious prosecution. | Who has the standing to bring a malicious prosecution action? | Malicious Prosecution - Memo 85 - AKA.docx | ROSS-003281573-ROSS-003281574 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |
| 18651 | Adams-Marquette Elec. Co-op. v. Pub. Serv. Comm'n, 51 Wis. 2d 718 | 145+11(4) | In the recent case of Wisconsin Power & Light Co. v. Public Service Comm., supra, this court held that while one of the main purposes of the law is to avoid duplication, "the predominant purpose underlying the public utilities law is the protection of the consuming public rather than the competing utilities." | The meaning of phrase "premises of person already receiving electric service" should be determined only with reference to context of public utilities law provision that no public utility or electric cooperative should render electric service to premises of person already receiving electric service; the context should include not only the statutory provision itself, but purpose of provision, and prior decisions of Supreme Court; reasonableness of Public Service Commission's construction must also be considered in factual context of particular case; to these factors should also be added nature of service to be provided, and its relation to that previously provided, as well as changes in ownership and use. W.S.A. 196.495(1) (a). | Is the predominant purpose of the Public Utilities Law the protection of consuming public? | 042575.docx | LEGALEASE-00120961-LEGALEASE-00120962 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 18652 | Almadova v. Arnold, 130 Ariz. 115 | 30+3.1 | Petitioner has brought this special action to challenge the respondent court's denial of his motion for a change of venue. Venue rulings are appropriately reviewable by special action. Haley v. Cochise County Hospital, 27 Ariz.App. 484, 556 P.2d 332 (1976); Campbell v. Deddens, 21 Ariz.App.295, 518 P.2d 1012 (1974). Because we believe the respondent court abused its discretion, we assume jurisdiction and grant relief. | Venue rulings are appropriately reviewable by special action. | Are venue rulings reviewable by special action? | Appeal And Error - Memo 13 - BP.docx | ROSS-003285639-ROSS-003285640 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 18653 | In re Pinti, 363 B.R. 369 | 148+81.1 | Finally, Ford argues that to rule as this Court does would violate the due process clause contained in the Fifth Amendment of the United States Constitution.9 Ford characterizes the Court's ruling as the "taking of private property without compensation." See Ford's Dec. 29, 2006 Memo of Law, p. 5. This same argument was recently rejected by another court for lack of merit. "The Fifth Amendment deals with property rights. The right to a deficiency judgment is not a property right; it is a contractual right." In re Quick, 2007 WL 269808 at *7"8. See also United States v. Security Indus. Bank, 459 U.S. 70, 75, 103 S.Ct. 407, 411, 74 L.Ed.2d 235 (1982) ("our cases recognize, as did the common law, that the contractual right of a secured creditor to obtain repayment of his debt may be quite different in legal contemplation from the property right of the same creditor in the collateral"). It should be emphasized that the Vehicle, the property subject to Ford's security interest, has already been surrendered to Ford, leaving only the contractual rights under the retail installment contract. | Undersecured purchase-money motor vehicle lender's right to deficiency judgment was not property right, of kind protected by the Takings Clause of the Fifth Amendment, but a contractual right, with which Congress could interfere in "hanging paragraph" added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA). U.S.C.A. Const.Amend. 5; 11 U.S.C.A. SS 506, 1325(a), (a)(5)(C). | Is the right to a deficiency judgment a property right? | 017404.docx | LEGALEASE-00121336-LEGALEASE-00121337 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18654 | Portland Valve v. Rockwood Sys. Corp., 460 A.2d 1383 | 95+176(1) | The issue of whether contract language is ambiguous is a question of law for the Court. See Eskimo Pie Corp. v. Whitelawn Dairies, Inc., 284 F.Supp. 987, 995 (S.D.N.Y.1968); see also Clayman v. Goodman Properties, Inc., 518 F.2d 1026, 1034 (D.C.Cir.1973). The interpretation of an unambiguous written contract is a question of law for the Court; the interpretation of ambiguous language is a question for the fact finder. Zamore v. Whitten, 395 A.2d 435, 440 (Me.1978); T-M Oil Co. v. Pasquale, 388 A.2d 82, 85 (Me.1978). The interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence. See City of Augusta v. Quirion, 436 A.2d 388, 392 (Me.1981); T-M Oil Co., 388 A.2d at 85; see also Ames v. Hilton, 70 Me. 36, 43 (1879). Once an ambiguity is found then extrinsic evidence may be admitted and considered to show the intention of the parties. Palmer v. Nissen, 256 F.Supp. 497, 503 (D.Me.1966) (quoting Ames, 70 Me. at 43); T-M Oil Co., 388 A.2d at 85. Contract language is ambiguous when it is reasonably susceptible of different interpretations. Lee v. Flintkote Co., 593 F.2d 1275, 1282 (D.C.Cir.1979); accord Barham v. Barham, 33 Cal.2d 416, 422-424, 202 P.2d 289, 293 (1949); Martindell v. Lake Shore National Bank, 15 Ill.2d 272, 282-284, 154 N.E.2d 683, 689 (1958); Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 516-518, 243 S.W.2d 154, 157 (1951); Young v. Schriner, 190 Va. 374, 378-379, 57 S.E.2d 33, 35 (1950). | Issue whether contract language is ambiguous is a question of law for the court. | Can ambiguity in the terms of the contract be determined by the court? | Bills and Notes - Memo 47 - ANG.docx | ROSS-003325448-ROSS-003325449 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 18655 | Cane Tennessee v. United States, 57 Fed. Cl. 115 | 148+2.1 | Defendant argues that "the test for assessing the economic impact of a regulatory action is perhaps the most settled aspect of the Penn Central analysis."Def.'s Reply at 7. This court has stated that in conducting this analysis it "must "compare the value that has been taken from the property with the value that remains in the property." " Walcek v. United States, 49 Fed.Cl. 248, 258 (2001), aff'd 303 F.3d 1349 (Fed.Cir.2002) (quoting Keystone, 480 U.S. at 497, 107 S.Ct. 1232). Defendant argues that "[t]he use of fair market value ensures that just compensation will be measured by objective means." Def.'s Reply at 7 (citing United States v. 50 Acres of Land, 469 U.S. 24, 35, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984)). | With regard to economic impact factor of regulatory taking test, proper measure of economic impact is a comparison of the market value of the property immediately before the governmental action with the market value of that same property immediately after the action. | How does the court analyze the economic impact of the regulatory action? | Eminent Domain - Memo 203 - GP.docx | LEGALEASE-00011851-LEGALEASE-00011852 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 18656 | Saad v. Am. Diabetes Ass'n, 123 F. Supp. 3d 175 | 237+6(1) | The ADA asserts that the pleadings fail to establish the requisite elements for a prima facie claim of defamation. In order to recover on a defamation claim, a plaintiff must show "that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss." Stanton v. Metro Corp., 438 F.3d 119, 124 (1st Cir.2006). Under Massachusetts law, "an expression of "pure opinion" is not actionable" for defamation. HipSaver, Inc. v. Kiel, 464 Mass. 517, 526 n.11, 984 N.E.2d 755 (2013). Therefore, a statement generally must contain an "objectively verifiable assertion," to be defamatory. See Levinsky's, Inc. v. Wal"Mart Stores Inc., 127 F.3d 122, 127 (1st Cir.1997). "[A] statement cannot be defamatory if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir.2015) (internal quotations omitted). | Under Massachusetts law, an expression of pure opinion is not actionable for defamation; therefore, a statement generally must contain an objectively verifiable assertion to be defamatory. | Are pure opinions actionable as defamation? | Libel and Slander - Memo 189 - BP.docx | ROSS-003284298-ROSS-003284300 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 18657 | State v. Winston, 71 Ohio App. 3d 154 | 110+1035(2) | A motion in limine is a request that the courts limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually prior to trial. The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper. If the court denies the motion, no reviewable error results unless the proponent of the evidence later offers it at trial, the opponent then objects, and the court erroneously overrules that objection, or the mere asking of the question creates unfair prejudice. Caserta v. Allstate Ins. Co. (1983), 14 Ohio App.3d 167, 14 OBR 185, 470 N.E.2d 430. | No reviewable error results from denial of motion in limine unless proponent of evidence later offers it at trial, opponent then objects, and trial court erroneously overrules objection or mere asking of question creates unfair prejudice. | Does the motion in limine ask the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper? | 024228.docx | LEGALEASE-00122082-LEGALEASE-00122083 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 18658 | Casteel v. State Farm Mut. Auto. Ins. Co., 66 Ark. App. 220 | 307A+3 | Appellant's first contention is that error occurred because appellee violated the court's ruling in limine because those two conditions were mentioned when Dr. Ragland's deposition was read. Appellant, however, failed to voice any objection to the violation of the court's order prohibiting reference to those subjects. In his brief, appellant concedes that he did not object, but he argues that no objection was necessary, citing the rule that pertains when a trial court overrules a specific motion in limine. See Ward v. State, 272 Ark. 99, 612 S.W.2d 118 (1981); Taylor v. State, 9 Ark.App. 286, 658 S.W.2d 432 (1983). We are not persuaded that this rule applies in this instance. Here, the error complained of does not concern the trial court's ruling, which was favorable to appellant, but rather it is the violation of the trial court's ruling. It is one thing for it to be unnecessary to complain further about an adverse ruling, but quite another to say that an objection is not necessary when there is a violation of a favorable ruling. Few tenets are more firmly established than the rule requiring a contemporaneous objection in order to preserve a point for review. Nazarenko v. CTI Trucking Co., Inc., 313 Ark. 570, 856 S.W.2d 869 (1993). The reason is that the trial judge must be given an opportunity to correct the mistake. Johnson v. State, 308 Ark. 7, 823 S.W.2d 800 (1992). Furthermore, there is no affirmative duty on a trial court to subsequently make evidentiary rulings on its own motion. Mills v. State, 321 Ark. 621, 906 S.W.2d 674 (1995). Because appellant failed to object, we conclude that this issue has not been preserved for appeal. | There is no affirmative duty on a trial court that grants motion in limine to subsequently make evidentiary rulings on its own motion. | Is there an affirmative duty on a trial court that grants motion in limine to subsequently make evidentiary rulings on its own motion? | Pretrial Procedure - Memo # 247 - C - ANC.docx | ROSS-003297655-ROSS-003297656 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18659 | York Ry. Co. v. Driscoll, 331 Pa. 193 | 317k+102 | The Company did appeal to the Superior Court from the action of the Commission and that Court, passing the constitutional question which the parties did not raise, 101 Pa. Super. Ct. 321, 66 P. S. * 1241(a), it ruled, has determined that the certificate requiring the certificate of public convenience is granting Commission power to prescribe which securities are within act, and $3,000,000 is without reasonable justification, that the order was arbitrary and unreasonable and that the power to regulate the issuance of securities of a public utility company's $3,000,000 be registered as a power for. On petition of the Commission for leave to appeal to us, we have simultaneously herewith refused the appeal on the question raised we are disposed to state that in our view the Superior Court did not go as far as it might have. We are of the opinion that the Commission has no authority to act where existing bonds are to be extended, because section 601(a) of the act purporting to give it this power is unconstitutional. The section provides that the Commission may require the registration of certain class of securities Prohibiting the delegation of legislative power forbid the grant to a legislative body of the power to prescribe which securities come within the act and which do not. National Transit Co. v. Boardman, 1319 n. 450, 337 A. 191, and cases there cited. This power would enable the Commission to nullify the section. This is not permissible under our constitutional provisions. Holgate Bros. Co. v. Bashore, Pa Sup, 200 A. 672. | Are public utilities exempt from the class of securities? | 04283.docx | LEGALEASE-00125956-LEGALEASE-00125958 | Condensed, SA, Sub 0.63 | 0 | 1 | 1 | 1 | |
| 18660 | Omega Satellite Prod. Co. v. City of Indianapolis, 694 F.2d 119 | 212+1451 | True, the traditional presumption is against a municipality's having power to grant an exclusive license. See, e.g., Colen v. Gushman Homes, 461 So.2d 500, 503 (Fla. 1937). But in this case, though the very case of Citizens Natural Gas & Mining Co. v. Town of Elwood, 114 Ind. 332, 16 N.E. 624 (1888), adopted the presumption, a later case, State ex rel. Ervin v. Indianapolis Gas Co. v. City of Indianapolis, 181 Ind. 322, 107, 105 N.E. 777, 779 (1914), emphasized the broad discretion of the municipal authorities over the licensing of utility ways. It stated: "In the nature of things there must be some limit to the number of telephone and light companies that can serve the public by the use of the streets if a city for the streets of the city the streets of the city of appellant contends, the municipal authorities must grant every applicant for a telephone or electric light franchise the right to use the streets on the same terms accorded corporations now using the same, such concerns might be endowed with franchises that the city use the Farmers' & Merchant Corp. Tel. Co. v. Boswell Tel. Co., 187 Ind. 371, 381"95, 119 N.E. 513, 517 (1918). This comes pretty close to saying that the municipal authorities is authorized to grant exclusive franchises. But it may fall short of the Supreme Court's requirement of "a clearly expressed and affirmatively expressed state policy" in favor of the specific restriction that is challenged. This issue will require further exploration in the district court. | Limited partnership's lawless behavior consisting of running cable through drainage culvert for certain purpose and thereby becoming a cable television system using a public way, without the required license, did not preclude granting partnership a preliminary injunction forbidding city to remove plaintiff or to enforce ordinance requiring any cable television system to obtain franchise from city if the system used any of city's public ways. | Should there be a limit on the number of telephone and light companies that serve the public since the municipal authorities are responsible to establish and regulate such public utilities? | 04220.docx | LEGALEASE-00122070-LEGALEASE-00122071 | Condensed, SA, Sub 0.72 | 0 | 1 | 1 | 1 | |
| 18661 | In re Nemko, 291 F.3d 645 | 36k+1 | There are various types of subrogation, most commonly categorized as "conventional" or "contractual" subrogation, "legal" or "equitable" subrogation, and statutory subrogation. Equitable subrogation rights arise from an express or implied agreement between the subrogor and subrogee. Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601, 626 (7th Cir. 2001). Equitable subrogation is a legal fiction, which permits a party who satisfies the subrogor's obligation to recover from the party "primarily liable" for the expense(d) obligation" In re Air Crash Disaster, 86 F.3d 498, 549 (8th Cir.) 1996), The right of "legal" or "equitable" subrogation arises as a matter of equity in order to enforce against the third party an obligation held by the subrogor. Dix Mut. Ins. Co. v. LaFramboise, 149 Ill.2d 314, 597 N.E.2d 622, 624 (Ill.1992). Subrogation is an equitable remedy, which is created by a creditor and so independent of any contractual relationship. It arises by operation of law and is founded on equitable principles. Statutory subrogation rights arise by virtue of statute, Sec, e.g., Carter v. Derwinski, 987 F.2d 611, 614 (9th Cir.1993)(providing for subrogation of a legal right of the McKee Loan non-dischargeability judgment by virtue of a right of statutory subrogation under the Bankruptcy Code and a right of equitable subrogation. | Does statutory subrogation occur by virtue of right created by statute? | 04382A.docx | LEGALEASE-00121847-LEGALEASE-00121848 | Condensed, SA | 0.95 | | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18662 | Tatum v. Townsend, 61 A.2d 478 | 13+61 | The evidence revealed that the construction plans had not been approved by the District of Columbia Commissioners at the time the suit was filed, and that notice of such approval was not given to plaintiff until almost two months later, on the day before the trial of this case. Defendants by motion for directed verdict challenged the propriety of the suit, contending that it was prematurely filed and that plaintiff had no cause of action until the plans had first "been filed with and approved by the Commissioners of the District of Columbia." In overruling the motion the trial judge filed a memorandum in which he held that the provisions of the Act reciting that no possessory action "shall be maintainable" (unless one of the five excepted situations existed) applies to actions already brought but not yet reduced to judgment. He concluded "that it is not necessary as a preliminary to the right of action in this case that the plans for the erection of a new building on the premises should have been prepared and approved by the Commissioners first, but only that they should have been approved before judgment." With this conclusion we cannot agree. We think the rights of the parties and the status and condition of plaintiff's claim are to be tested by the facts as they existed on the day the suit was filed, and not by what developed or what plaintiff was able to accomplish between the filing date and the time of the trial. In two other cases, decided this day, we have made similar rulings. This is in conformity with the rule which is hardly open to question, that no suit can be begun until a cause of action accrues to the plaintiff. | A suit cannot be begun until cause of action accrues to plaintiff. | Can a suit begin before a cause of action accrues to plaintiff? | 005509.docx | LEGALEASE-00123815-LEGALEASE-00123816 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 18663 | Pac. Atl. S.S. Co. v. United States, 120 F. Supp. 753 | 13+61 | It is well established that damages need not be liquidated before a cause of action can arise. United States v. Atlantic Mutual Insurance Co., 1936, 298 U.S. 483, 56 S.Ct. 889, 80 L.Ed. 1296. Therefore, lack of knowledge of the exact cost of the repairs will not in and of itself prevent the accrual of a cause of action. | Damages need not be liquidated before a cause of action can arise. | Should damages be liquidated before a cause of action can arise? | 005571.docx | LEGALEASE-00123898-LEGALEASE-00123899 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 18664 | Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, 805 F.2d 1221 | 25T+121 | Two panels of this Court have recently held that under facts similar to the facts in the instant case, civil RICO claims are arbitrable. See Beck v. Merrill Lynch, 805 F.2d 1032 (5th Cir.1986); Mayaja v. Bodkin, 803 F.2d 157, 162"66 (5th Cir.1986). On the basis of Beck and Mayaja, we affirm the order of the district court compelling arbitration of Greenhaw's RICO claim. | Civil Racketeer Influenced and Corrupt Organizations Act claims are arbitrable. 18 U.S.C.A. S 1961 et seq. | Are civil Racketeer Influenced and Corrupt Organizations (RICO) Act claims arbitrable? | Alternative Dispute Resolution - Memo 387 - RK.docx | ROSS-003297302-ROSS-003297303 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 18665 | Giron v. City of Alexander, 693 F. Supp. 2d 904 | 35+63.4(15) | Leath did not have probable cause to cite Villanueva for public intoxication. Under Arkansas law:A person commits the offense of public intoxication if he or she appears in a public place manifestly under the influence of alcohol to the degree and under circumstances such that: (1) The person is likely to endanger himself or herself or another person or property; or (2) The person unreasonably annoys a person in his or her vicinity. | Arrestee did not appear in a public place, within meaning of Arkansas law, when he came outside his home at city police officer's request and stood in his driveway, as required to afford officer probable cause to cite arrestee for public intoxication. U.S.C.A. Const.Amend. 4; West's A.C.A. SS 5-71-101(6), 5-71-212. | When does a person commits the offense of public intoxication? | Disorder Conduct - Memo 11 - SR VP.docx | ROSS-003289517 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 18666 | Kitt v. United States, 277 F.3d 1330 | 148+2.4 | For retroactive taxation to be a taking, it must be "so arbitrary as to constrain to the conclusion that it was not the exertion of taxation." Brushaber v. Union Pac. R.R. Co., 240 U.S. 1, 24"25, 36 S.Ct. 236, 60 L.Ed. 493 (1916); see Nichols v. Coolidge, 274 U.S. 531, 542"43, 47 S.Ct. 710, 71 L.Ed. 1184 (1927) (describing the standard as whether the tax was "so arbitrary and capricious as to amount to confiscation"); Houck v. Little River Drainage Dist., 239 U.S. 254, 265, 36 S.Ct. 58, 60 L.Ed. 266 (1915) (noting that taxation will be considered a taking only if it is a "flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property"). For the reasons previously given in rejecting the Due Process contention, the ten percent additional tax does not even approach such action. Indeed, the Supreme Court has observed "that it would be "surprising indeed to discover" that a statute that satisfied the Due Process Clause nonetheless violated the Takings Clause." Branch v. United States, 69 F.3d 1571, 1578 (Fed.Cir.1996) (quoting Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust, 508 U.S. 602, 641, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 233, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)). | For retroactive taxation to be a taking in violation of Fifth Amendment, it must be so arbitrary as to constrain to the conclusion that it was not the exertion of taxation. U.S.C.A. Const.Amend. 5. | Under what circumstances a retroactive taxation could be considered as a taking? | Eminent Domain - Memo 214 - GP.docx | ROSS-003283623-ROSS-003283624 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 18667 | Lehigh Valley R. Co. v. State of Russia, 21 F.2d 396 | 221+134 | At the outset, the railroad company attacks the right of the defendant in error to maintain the suit, and to do so in the courts of the United States. The right to recover damages for breach of this carrier's obligation became the property of the state of Russian Imperial Government. The right of a foreign government was then the Russian Imperial Government. The right of a foreign government to sue is now well recognized. Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; The Sapphire, 78 U.S.(Wall.) 164, 20 L.Ed. 127. It is equally a settled rule of law that the foreign relations of our government are committed by the Constitution to the executive and legislative departments of our government, and what is done by such departments is not subject to judicial inquiry or decision. In re Cooper, 143 U.S. 472, 12 S.Ct. 453, 36 L.Ed. 232; Williams v. Suffolk Ins. Co., 13 Pet. 420, 10 L.Ed. 226; United States v. Palmer, 3 Wheat. 610,4 L.Ed. 471; The Penza (D.C.) 277 F. 91. Who may be the sovereign de jure or de facto of a territory is a political question; not judicial. Oetjen v. Central Leather Co., supra; Jones v. United States, 137 U.S. 212, 11 S.Ct. 80, 34 L.Ed. 691. The state is a community or assemblage of men, and the government the political agency through which it acts in international relations. State of Texas v. White, 7 Wall. 700, 19 L.Ed. 227; Cherokee Nation v. Georgia, 5 Pet. 52, 8 L.Ed. 25; Foulke, International Law, vol. 1, pp. 62, 82, 102, 192. The foreign state is the true or real owner of its property, and the agency of the representative of the national sovereignty. The Sapphire, supra; The Rogdai (D.C.) 278 F. 294. | Foreign state is true owner of its property, and its government is its representative. | Is a foreign state the true owner of its property? | International Law - Memo # 400 - C - MLS.docx | ROSS-003288791-ROSS-003288793 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18668 | Schlichtenmayer v. Luithle, 221 N.W.2d 77 | 289=305 | As to third persons, there may be an "ostensible partnership" whereby persons who are not in fact partners may be held liable as such by reason of their conduct if the conduct justifies a third party in believing that the partnership exists and justifies him in relying on that belief in acting to his detriment. But to establish an ostensible partnership, the person claiming the existence of it must prove that the person claimed to have been a partner either held themselves out to be partners or knowingly or negligently permitted others to do so. Circumstantial evidence to establish such an ostensible partnership must be inconsistent with any other reasonable hypothesis than the existence of a partnership. Oehlers v. Pendergrast, C.J. N.D., S.D.2, 113 N.W. 221 (6.13), ... make a cosigner a partner with the other signers. Oehlers v. Pendergrast, Supra. | Proof of ostensible partnership, if circumstantial, must be inconsistent with any other reasonable hypothesis than the existence of a partnership. | How to establish an ostensible partnership under circumstantial evidence? | 021899.docx | LEGALEASE 00123115-LEGALEASE 00123116 | Condensed, SA | 0.84 | 0 | | | 1 | |
| 18669 | McBride v. Abts, 221 Ky. 725 | 302=344(1) | "In a familiar common-law rule that pleadings are to be construed most strongly against the pleader, and that all presumptions in his favor will be indulged in. Moreover, all reasonable presumptions must be indulged in favor of the right action of the defendant, where the pleader selects the language, he should make his meaning clear." 21 R. C. L. p. 484. To same effect, see Corcoran v Powell, 2 Metc. 236, Bagnod v Fers v Smith, 84 Ky. 130, 15. ... See Rep. 376; Gordon v. City National Bank, 140 Ky. 47; 130 S.W. 868. | Pleadings must be construed most strongly against the pleader, and no presumptions will be indulged in his favor. | Are pleadings construed most strongly against the pleader? | 022958.docx | LEGALEASE 00123501-LEGALEASE 00123503 | Condensed, SA | 0.82 | 1 | 0 | 1 | 1 | |
| 18670 | Quad City Bank & Tr. v. Jim Kircher & Assocs., P.C., 804 N.W.2d 83 | 302=5 | A ruling sustaining a motion in limine is generally not an evidentiary ruling. Twedt v. Wober, 229 N.W.2d 9 (p19, 920 [Iowa 1974]). Rather, a ruling sustaining a motion in limine simply adds a procedural step to the introduction of allegedly objectionable evidence. Id. accord Johnson v. ... the offer of evidence and the evidence is not offered, there is nothing preserved to review on appeal"). Thus, a motion in limine "serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of the trial" and, if sustained, excludes reference or introduction of this evidence until its admissibility is determined by the trial court outside the presence of a jury, in an offer of proof. Twedt at, 220 N.W.2d at 922."23 ... presented, but rather the proof offered here, in the absence of such an offer, error may not be preserved. | A ruling sustaining a motion in limine is generally not an evidentiary ruling; rather, it simply adds a procedural step to the introduction of allegedly objectionable evidence. | Is a ruling sustaining a motion in limine an evidentiary ruling? | Pretrial Procedure - Memo 370 - IM.docx | ROSS 000335127 3-ROSS-000315274 | Condensed, SA | 0.84 | 1 | 0 | 0 | 0 | |
| 18671 | Hayes v. DeKort Servs. Corp., 333 F.3d 666 | 25 T=134(4) | A party to an arbitration agreement may of course agree to waive certain rights as part of that agreement. ... The right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 307 (4th Cir. 2001) (quoting Pierson v. Dean, Witter, Reynolds, Inc., 742 F.2d 334, 339 [7th Cir.1984]). So long as such waivers pass the applicable knowing and voluntary standard, they will typically be enforced. Seel id. at 306-07. Moreover, parties are free within bounds to use a choice-of-law provision to set up the substance that will bind local law will govern the arbitration. See Roby/McLarty v. Santander Consumer USA, Inc., 2905 Jul 606; 697 n. 7 (6th Cir.2012). These provisions often bring a welcome measure of predictability and efficiency to the dispute resolution process. But a party may not underhandedly convert a choice of law clause into a choice of no law clause.\"I may not flatly and categorically renounce the authority of the federal statutes to which it is and must remain subject. See Kristian v. Comcast Corp, 446 F.3d 25, 48 [1st Cir.2006]; Hadnot v Bass, 154 F.3d 196, 109 L.R.; 14 [5th Cir.2001]; Graham Oil Co. v. ARCO Products Co., a Div. of Atl. Richfield Co., 43 F.3d 1244, 1248 [9th Cir.1994], as amended [Mar. 13, 1995]. Because the arbitration agreement in this case takes this plainly forbidden step, we hold it invalid and unenforceable. | Arbitration agreement between lender that was owned by tribal member, payday loan servicer, and borrowers, which purported to renounce any application of federal law to borrowers' claims against loan servicing agent for alleged violations of the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act (TCPA), was unenforceable; agreement used its choice of law provision to waive all of borrowers' potential federal rights, rather than using the law of a certain jurisdiction to govern the agreement, and agreement flatly renounced the authority of federal statutes by stating that all claims were to be governed by tribal law. 15 U.S.C.A. 5 2; Fair Debt Collection Practices Act 5 807; 15 U.S.C.A. 5 1692; Telephone Consumer Protection Act of 1991, 5 3(a), 47 U.S.C.A. 5 227. | Can a party convert a choice of law clause in an arbitration agreement into a choice of no law clause? | 007189.docx | LEGALEASE 00155584-LEGALEASE 00155585 | Condensed, SA, Sub: 0.46 | 0.46 | 0 | | 1 | 1 | |

3292

| ROW | Judicial Opinion | WVHSS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1867/2 | United States v. Ortaik, 57 F.3d 1290 | 221+134 | National sovereignty is the unshared power of a people and their government within a territory, wherein which are the overarching rights to defend itself from outside threats, to act in relation to other nations. The sovereign power does not depend on any particular form of internal or domestic governmental organization. Thus, regardless of how power is organized and divided within a nation's territory, inherent in national sovereignty is the overarching rights of a nation to defend itself from outside threats, to act in relation to other nations, and to secure its territory and assets. See, e.g., United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 317-18, 57 S.Ct. 216, 218 (1936) ... From the sovereign's power to defend itself it derives its power to exclude harmful influences, including persons and objects, from the sovereign's territory. See id. at 318, 57 S.Ct. at 220; United States v. Montoya de Hernandez, 473 U.S. 531, 544, 105 S.Ct. 3304, 3311-12, 87 L.Ed.2d 381 (1985), as well as its power to prohibit the export of its currency, national treasures, and other assets. See, e.g., United States v. Yoshida Intern., Inc., 526 F.2d 560, 578 (1975) ... [the] power to prohibit the export of its currency ... | "National sovereignty," is the unshared power of a people and their government within a territory, wherein which are the overarching rights of a nation to defend itself from outside threats, to act in relation to other nations, and to secure its territory and assets. | What is national sovereignty? | International Law - Memo # 80 - C - SA.docx | ROSS-000318628/ROSS-000318381 | Condensed, SA | 0.86 | 0 | | 1 | 1 | |
| 1867/3 | United States v. Noriega, 746 F. Supp. 1506 | 221+151 | Uriega next argues that the act of state doctrine prohibits the Court from adjudicating the legality of his official actions in Panama. Unlike head of state immunity, the act of state doctrine presents no jurisdictional question but instead addresses the Court's permissible scope of inquiry into a foreign governmental act. It is more properly understood as a rule of precision decision rather than an immunity prohibiting prosecution. Restatement (Third) § 443; Reporter's Notes 1, 3. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 937-38 (1964). American Ctr. v. Federal Republic of Nigeria, 448 F.Supp. 622, 640 n. 30 (S.D.N.Y.1978) (contrasting sovereign immunity with the act of state doctrine), aff'd, 627 F.2d 245 (2d Cir.1980). | Under doctrine of head of state immunity, head of state is not subject to jurisdiction of foreign courts, at least as to official acts taken during rule's term of office. | Does the Act of State doctrine address the court's permissible scope of inquiry into certain governmental acts? | 020345.docx | ULGA/LK JE-002-00216-(ULGA/LK JE-00124217 | Condensed, SA | 0.75 | | 0 | | 1 | |
| 1867/4 | United States v. Arredondo, 31 U.S. 691 | 221+148 | The principle that the act of a king arm in subordination to the laws of the country, applies only where there is a key law of higher obligation than his will which he cannot avoid or transgress, a state remains constant and a Spanish province. There is another source of law in all governments, usage, custom, which is always presumed to have been adopted with the consent of those who may be affected by it in England, and in the states of this union which have no written constitution, it is the supreme law, always deemed to have the origin in an act or law of the legislature of competent power to make it valid and binding, or an act of parliament, which, representing all of the inhabitants of the kingdom, acts with the consent of all, exercise the power of all, and is anew become binding by the authority of all. 2 Co. Inst. 58 Wells, 116. So it is considered in the state and the civil law. 1 Dom. Civil Law, 3, 107. | Under Spanish law, the act of the king were not in subordination to the laws of the country. | Are acts of a king in subordination to the laws of a country? | International Law - Memo # 594 - C - SA.docx | ROSS-000313213/ROSS-000313214 | Condensed, SA | 0.9 | | 0 | | 1 | |
| 1867/5 | Int'l Ass'n of Machinists & Aerospace Workers, (IAM) v. Org. of Petroleum Exporting Countries (OPEC), 649 F.2d 1354 | 221+142 | It has been suggested that the FSIA supersedes the act of state doctrine, or that the amorphous doctrine is limited by modern jurisprudence. We disagree. Congress in enacting the FSIA recognized the distinction between sovereign immunity and the act of state doctrines. See, e.g., H.R.Rep.No.94-1487, 94th Cong., 2d Sess. 20 n.1, reprinted in [1976] U.S.Code Cong. & Ad.News 6619 n.1. The Committee has found it unnecessary to address the act of state doctrine in this legislation"); see generally excellent discussion of U.S. Court's in Their Adjudication of Foreign States: Hearings on H.R.11315 Before the Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary, 94th Cong., 2d Sess. (1976) (statement of Monroe Leigh). The act of state doctrine is not diminished but merely supplemented by the Act. H.R.11315 Before the Subcomm. on Claims & Governmental Relations of the House Comm. on the Judiciary, 94th Cong., 2d Sess. 33 (1976) (the FSIA "in no way affects existing law concerning the extent to which the "act of state" doctrine may be applicable in similar circumstance"). Indeed, because the act of state doctrine addresses certain issues arising from the system of government, the doctrine must necessarily remains a part of our system of government; the doctrine must necessarily remains a part of our jurisprudence and such time as a radical change in the role of the court occurs. | Act of state doctrine is not superseded by the Foreign Sovereign Immunity Act nor is the doctrine diluted by the Act's commercial activity exception. 28 U.S.C.A. 55 1330, 1602 et seq., 1605. | Is the act of state doctrine superseded by the Foreign Sovereign Immunity Act? | International Law - Memo # 753 - MC.docx | ROSS-000323363/ROSS-000323364 | Condensed, SA, Sub | 0.85 | | | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 186876 | The Heil Firing Front v. Longview Energy Co., A-82 S.W.3d 184 | 307+16 | The heightened pleading standard articulated by Reporters is also inconsistent with the purpose of Rule 91 et seq. [...] | Corporation's petition did not give fair notice to directors of a separate competition claim against directors, and therefore trial court erred in submitting jury question as to whether directors had breached fiduciary duty by engaging in competition with corporation, in action arising out of directors' own company's investment in particular shale area after directors allegedly diverted opportunity from corporation, even though petition made general allegations referring to an entity as a competitor of corporation, where any reference to competition was in connection with corporation's claim of breach of fiduciary duty based on usurpation, and factual allegations spoke in terms of a director considering or appropriating an opportunity that belonged to corporation. Tex. R. Civ. P. 47(a), 278. | Should a petition give fair and adequate notice of facts? | 002997.docx | LEGALEASE-00125425-LEGALEASE-00125426 | Condensed, SA, Sub | 0.32 | 0 | | 1 | 1 | 1 |
| 186877 | Slater v. Jackson, 36 S.Ga. App. 342 | 307+41 | In a case such as the one before us, where no pre-trial order is entered, "pre-trial proceedings end with the commencement of the trial proper and the taking of evidence. Thus, either party [...] | Where no pretrial order is entered, pretrial proceedings end with commencement of trial proper and the taking of evidence, and unfettered right to amend ceases and party may amend its pleading only by leave of court or by consent of adverse party. Code, § 81A-115. | What happens when no pretrial order is entered? | 024344.docx | LEGALEASE-00125220-LEGALEASE-00125221 | Condensed, SA | 0.63 | | 0 | | 1 | 1 |
| 186878 | Lal ex rel. Lal v. Bowman Gray Sch. of Med., 196 N.C. App. 555 | 30+205 | A trial court's ruling on a motion in limine is preliminary and is subject to change depending on the actual evidence offered at trial. The granting or denying of a motion in limine is not appealable. To preserve the evidentiary issue for appeal when a motion in limine has been granted, the non-movant must interpose an objection at trial. In this case, the trial court's ruling made during Plaintiff's motion to exclude evidence of the cohabitation with unrelated adult male. Defendant did not offer evidence of Plaintiff's cohabitation at trial, and thus has not preserved the evidentiary issue for appeal. | Patient's failure to call physician to testify in medical malpractice action waived review of pretrial exclusion of his discovery deposition, although hospital and medical school failed to raise in limine motion in timely manner to question at trial, on request, upon actual evidence offered at trial. Rules Civ. Proc., Rule 32, West's N.C.G.S.A. § 1A-1, Rules App.Proc., Rule 10(b)(1). | Is the granting or denying of a motion in limine appealable? | Pretrial Procedure Memo # 484 - C - UK.docx | ROSS-003134324-ROSS-003134325 | SA, Sub | 0.19 | 0 | | 1 | 1 | |
| 186879 | Opelousas Tr. Auth. v. Cleco Corp., 105 So. 3d 26 | 145+11.3(1) | Louisiana Constitution article V, 16(A) provides, "[e]xcept as otherwise authorized by this constitution ... a district court shall have original jurisdiction of all civil and criminal matters." This Court has held the jurisdiction, [...] This Court has construed this provision as providing the LPSC with "broad and independent power and authority to regulate common carriers and public utilities." Louisiana Power & Light Co. v. Louisiana Pub. Serv. Comm'n, 609 So. 2d 797, 800 (La.1992) [...] Louisiana Pub. Serv. Comm'n, 578 So.2d 71, 100 (La.1991), cert. denied, 502 U.S. 1058, 112 S. Ct. 937, 116 L.Ed.2d 92 (1992)); Louisiana Power & Light, 609 So.2d at 800. | Louisiana Public Service Commission (PSC) is authorized by statute to exercise all necessary power and authority over electric utilities for the purpose of fixing and regulating rates charged and services furnished. LSA Const. Art. 4, § 21(B); LSA-R.S. 45:1163. | Does the Public Service Commission (PSC) have plenary jurisdiction and powers over public utilities? | 042905.docx | LEGALEASE-00125593-LEGALEASE-00125593 | SA, Sub | 0.84 | 1 | 1 | 1 | 1 | |
| 186880 | In re John's Insulation, 221 B.R. 683 | 366+711 | Similarly, John's Insulation has no right to recover contract proceeds from Hartford under general principles of subrogation. Seemingly, no issue arises in a well-accepted surety's right, upon completing a surety contract, to step into the shoes of the principal, to the unpaid contract proceeds to reduce any loss it suffered due to the principal's default. See United States Fidelity & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Pearlman v. Reliance Ins. Co. of N.Y., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). According to the court in National Shawmut Bank v. New Amsterdam Casualty Co., 411 F.2d 843 (1st Cir.1969), "the surety in cases like this undertakes duties incident to step into the shoes of one who, on default of the contractor, it pays at the bills the job holder and completes the job in standing in the shoes of the contractor as far as unpaid balance of the contract proceeds due to the principal's default, for whom the job was completed. | Under New York law, following principal's default on construction contract, completing surety is subrogated to rights of obligee as well as those of the obligor upon satisfaction of the contract. | Upon default of a public works contractor, is a surety subrogated to the rights of obligee as well as those of the principal? | 043378.docx | LEGALEASE-00125537-LEGALEASE-00125529 | Condensed, SA, Sub | 0.84 | | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18861 | Stidham v. Millvale Sportsmen's Club, 421 Pa. Super. 548 | 203+548 | [a] Definitions. "As used in this section the following words and phrases shall have the meanings given to them in this subsection: *** "Intentional killing." Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing. 18 Pa.C.S.A. § 2502. * 2502. Differences among murder classifications turn largely on the perpetrator's mens rea. Commonwealth v. Young, 494 Pa. 224, 431 A.2d 230 (1981). Malice is the essential element or gravamen of third degree murder, the distinguishing factor between murder and manslaughter. Commonwealth v. Simione, 466 Pa.Super. 369, 504 A.2d 666 (1991). Commonwealth v. White, 366 Pa.Super. 538, 531 A.2d 806 (1987), appeal denied, 517 Pa. 615, 535 A.2d 1057, 538 A.2d 173 (1988). | Malice is essential element or gravamen of third degree murder, distinguishing factor between murder and manslaughter. 18 Pa.C.S.A. § 2501, 2502. | Is malice the gravamen of third degree murder? | 035568.docx | LEGALEASE-00125700 LEGALEASE-00125701 | SA, Sub | 0.84 | | | | 1 | |
| 18862 | People v Perez, 50 Cal 4th 222 | 203+558 | "The mental state required for attempted murder has long differed from that required for murder itself. Murder does not require the intent to kill. Implied malice—conscious disregard for life—suffices." (People v. Lasko (2000) 23 Cal.4th 101, 107 [96 Cal.Rptr.2d 441, 999 P.2d 666].)" (People v. Bland (2002) 28 Cal.4th 313, 327 [121 Cal.Rptr.2d 546, 48 P.3d 1107].) [Bland.] In contrast, "[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (People v. Lee (2003) 31 Cal.4th 613, 623 [3 Cal.Rptr.3d 402, 74 P.3d 176]; see People v. Swain (1996) 12 Cal.4th 593, 604-605 [49 Cal.Rptr.2d 390, 909 P.2d 994].) (People v. Smith (2005) 37 Cal.4th 733, 739, 37 Cal.Rptr.3d 163, 124 P.3d 730 | The mental state required for attempted murder requires the specific intent to kill a human being, not a particular human being. | Does murder require specific intent to kill? | 019374.docx | LEGALEASE-00125733 LEGALEASE-00125734 | Condensed, SA | 0.86 | | 1 | | | |
| 18863 | Davis v. Macon Tel. Pub. Co., 93 Ga. App. 633 | 203+702 | The particularly pertinent portion of the newspaper article which is the basis for this action, is as follows: 'The car was found a few hours later parked at the Hocking Power on Interstate, a few minutes' drive away. In the car, Adams said. (Captain William Adams, Bibb County law enforcement officer) The family's car was there, parked and unlocked, but there was nothing in the trunk. Deputy sheriff said the three men stopped sometime after midnight. After walking a few blocks, they came upon the car and drove it away. At that time, one of the men was in the back of the vehicle, another was in the front seat and a third was asleep. The deputy said they awoke, and the three men forced their way into their car and drove away. The particular pertinent portion of the newspaper article which is the basis for this action, is as follows: 'The car was found a few hours later parked at the Hocking Park on Interstate, a few minutes' drive away. In the car, Adams said. (Captain William Adams, Bibb County law enforcement officer) the family's car was there, parked and unlocked, but there was nothing in the trunk. [...] | It is libel per se to charge a person with misdemeanor. | Is it libel per se to charge a person with misdemeanor? | Libel and Slander - Memo 216 - BP.docx | ROS5-000300074;ROS5-000300079 | Condensed, SA | 0.94 | | | | 1 | |
| 18864 | Elyria Tel. Co. v. Pub. Utilities Comm'n, 158 Ohio St. 441 | 317H+111 | The Public Utilities Commission is a creature of statute and has only those powers given it by statute. City of Cincinnati v. Public Utilities Commission, 151 Ohio St. 353, 86 N.E.2d 10. The commission does not include the right to manage utilities or dictate their policies. West Ohio Gas Co. v. Public Utilities Commission, 294 U.S. 63, 72, 55 S.Ct. 316, 79 L.Ed. 761. | A public utility may regulate its own affairs and manage its own business unless in doing so a situation develops which is inimical to public interest, and Public Utilities Commission may not manage utility or dictate policies of utility. | Should the Public Utility Commission dictate a utility business practices? | 043334.docx | LEGALEASE-00125716 LEGALEASE-00125717 | Condensed, SA, Sub | 0.43 | | | 1 | | |
| 18865 | eBay v. Bidder's Edge, 100 F.Supp.2d 1058 | 386+6 | Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." Thrifty-Tel, Inc. v. Bezenek, 46 Cal.App.4th 1559, 1566, 54 Cal.Rptr.2d 468 (1996). Trespass to chattels, "although seemingly an anachronism today, has been applied to cases involving conversion or harm to computers." In cases where the trespass to chattels" in California" was recently applied to cover the unauthorized use of long distance telephone lines. Id. Specifically, the court noted "the electronic signals generated by the [defendant's] activities were sufficiently tangible to support a trespass cause of action." Id. at n. 6. Thus, it appears likely that the electronic signals sent by BE to retrieve information from eBay's computer system are also sufficiently tangible to support a trespass cause of action. | In a suit for trespass to land in which defendant alleged publication of falspod which killed his or otherwise rendered his unmerchantable, plaintiff must recover for damage to his fish, though the fish constituted personal property. | Is an unauthorized electronic contact with a computer system that causes harm trespass? | 047295.docx | LEGALEASE-00125798 LEGALEASE-00125799 | Condensed, SA | 0.55 | | 1 | | | |
| 18866 | Kuchta v. Hooper McDonald, 293 Ala. 56 | 386+49 | The next question that arises is whether or not in a suit for trespass to land there can be recovery for damages to plaintiff deceased persons property. In Weston v. Bennett, 220 Cal. 284, 124 So. 864 (1929), the following language appears: "Within the general rule as recognized by our cases is that a trespass to realty by an entry upon the land of another, and after the trespasser enters upon the land immediately before, and after the trespass is the measure of plaintiff's damages. Brimhaven v. Bethea, 139 Ala. 376, 35 So. 996; Sorthern Railway Co. v. Elliott, 169 So. 38, 53 So. 56, 767 Nevertheless, if it be shown that not only injury to the real estate was inflicted, but that valuable personal property was taken in connection, then it is no reason why the plaintiff should not recover for such loss. Any other rule would enable the trespasser to profit by and speculate upon his own wrong, which could violate the very essence of a landowner's secure and enjoyment of his property. This is a settled proposition open to the right and enjoyment of others. Steele v. Barrett, 57 Mich. 350, 363, 41 N.W. 75 | In a suit for trespass to land in which defendant alleged publication of falspod which killed his or otherwise rendered his unmerchantable, plaintiff could recover for damage to his fish, though the fish constituted personal property. | Can damages to personal property be recovered in an action for trespass? | 047295.docx | LEGALEASE-00125854 LEGALEASE-00125855 | Condensed, SA, Sub | 0.78 | | | | 1 | |
| 18867 | Rapallo Ins. Co. v. Culbertson, 717 F. Supp. 415 | 1341 | The ruling is fundis is consistent with more recent cases which expressly set forth the elements of a cause of action. The essential elements of a cause of action are a legal obligation, a breach, and consequential damage. A cause of action does not arise until all three elements coexist. Union Oil Co. v. Oppen, 501 F.2d 558, [...] 2302 (9th Cir.) 1974); 11 S. 398 5 E.2d 157 (1959). Based on this, it appears that a breach or injury giving rise to an action. Where and expansion is a cause of action separate from an action for attorneys' fees incurred prior to judgment. Id. at 1976. In such case, it has not ripened; a new injury has not triggered a new cause of action under California's situation, however, a new cause of action has ripened into an action | Does a cause of action arise until the injury occurs? | Action - Memo # - C304 P.doc | ROS5-000285721;ROS5-000285722 | Condensed, SA | 0.76 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18688 | Natl Westminster Bank, USA v. State, 76 N.Y.2d 507 | 104+186 | The County Clerk serves both the State and local government (Dinnat v Model, 229 N.Y. 270, 134 N.E. 368). As a clerk of the courts, the County Clerk is a State officer for whom the State is responsible. See also: performing general duties the County Clerk acts as a performing general duties the County Clerk acts as a local government must answer for actions taken. In the City of New York, the office of County Clerk is now wholly a part of the Unified Court System (Durante v. Evans, 94 A.D.2d 141, 464 N.Y.2d 164, affd. 62 N.Y.2d 719, 476 N.Y.2d 828, 465 N.E.2d 367), but the Clerk still performs some local functions for which the State is liable [Adams v. Gordon Co. v. Clerk of N.Y. County, 110 A.D.2d 60, 489 N.Y.S.2d 133. The office in a suit challenging his conduct depends upon the nature of the act which is the subject of the suit. "The county clerk should not, therefore, be considered as acting in his capacity as a state officer except as he performs acts that are in themselves a part of the judicial system." (Dinnat v. Model, supra, 229 N.Y. at 270, 134 N.E. 368.) | As clerk of courts, county clerk is state officer for whom State is responsible. See also: performing general duties, county clerk acts as local officer, and local government must answer for actions taken. | Is clerk of the courts a State officer for whom the State is responsible? | 01945.docx | LEGALEASE 00126280-LEGALEASE 00126281 | Condensed, SA | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 18689 | Molina v. Comision Reguladora del Mercado de Henequen, 91 N.J.L. 38 | 221+134 | The announcement, as it is called, to Alvarez, which is set forth in the order to Barreto, states that the government has resolved to sequester the property of Molina and to this extent be invested with the investigation of the facts and penal responsibilities which the state will exact. It was, then, a sequestration at the beginning, of a proceeding, call it judicial or not. It was a sequestration by way of menos proceso, and not by way of final process; the judicial proceeding, the title could be enforced as such against the property of Molina, by means of which in a title could be deemed in the proceeding, there was meant to be some investigation. This investigation was had, and Molina was found to come within the class of persons whose property was to be sequestered. The rights that a party to the sequestration were such rights as would pass upon a sequestration by this, and proceeds of the sale, it has been held that on such a sequestration under the will the property be ordered by the court of probate or that of property, including the products of the land, could be sequestered by Goldsmith, 3 Vera, 123, Where a government has sequestered property, no doubt it also may carve out upon. A general speaking, the position of sequestration is that of custodian only. | A government which has sequestered property occupies is the position of custodian only. | Can a government which sequestered property occupies is the position of custodian? | 02076.docx | LEGALEASE 00125974-LEGALEASE 00125975 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 18690 | Clifford v. U.S. Fid. & Guar. Co., 1936 OK 564 | 91+231 | But however defined, Manuel's argument fails on the merits. Any challenge to the legality of Manuel's arrest of Congress must test. There is no constitutional bar to the extraterritorial application of penal laws. United States v. Bowman, 260 U.S. 94, 97-98, 43 S.Ct. 39, 67 L.Ed. 149 (1922). The Supreme Court has specifically upheld the exercise of jurisdiction over conspirators who have never entered the United States, where the conspiracy "was directed to violation of the United States law within the United States." Ford v. United States, 273 U.S. 593, 620, 47 S.Ct. 531, 71 L.Ed. 793 (1927). When a conspiracy, where an element of the conspiracy is the violation of American law, and conspirators commit extraterritorial acts within American territory, there can be no serious question of the jurisdiction of the United States to punish all members of the conspiracy. | Officers and crew of flagre-laders vessel held subject to prosecution for conspiracy to violate laws of United States, though it composed of all outside jurisdiction of United States. 18 U.S.C.A. § 88. | "Does International law permit the exercise of jurisdiction over conspiracy to violate laws of United States, when the conspiracy was directed to violation of the United States law within the United States?" | 02074.docx | LEGALEASE 00125826-LEGALEASE 00125827 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 18691 | Poff v. Hayes, 763 So. 2d 234 | 386+6 | Hayes claims that Poff interfered with his possessory rights to records concerning his real, resulting from his real-time business. Poff removed them for a brief period from where they were kept so that he could photocopy them. Real interference with possession involves actions involving chattels, not possession. Restatement (Second) of Torts, § 218 (1965), states: "One who commits a trespass to a chattel is subject to liability to the possessor of the chattel, but only if: (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality or value..." Thus, the critical question before us is whether the removal of Hayes's business records, and the firm's accounting ledgers was a "dispossession." | Are all interference with possession actionable in an action for trespass to chattel? | 04722.docx | LEGALEASE 00126320-LEGALEASE 00126321 | Condensed, SA | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 18692 | Thrifty-Tel v. Bezenek, 46 Cal. App. 4th 1559 | 386+6 | Trespass to chattel, although seldom employed as a tort theory in California (indeed, there is scant reported California authority), lies where an intentional interference with the possession of personal property has proximately caused injury. (Prosser & Keeton, Torts (5th ed. 1984) § 14, pp. 85-86; see also Zaslow v. Kroenert (1946) 29 Cal.2d 541, 551, 176 P.2d 1 ["Where the conduct complained of does not amount to a substantial interference with the right thereto, but consists of intermeddling with or use of...the personal property, the owner has a cause of action for trespass' to chattel, but not for conversion].) | "Trespass to chattel" lies where intentional interference with possession of personal property has proximately caused injury. | Can an action for trespass to chattels be sustained without showing a substantial interference with the right to possession? | 04723.docx | LEGALEASE 00126350-LEGALEASE 00126351 | SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18693 | City of Trinidad v. Hokasona, 178 P. 4.58 | 13=41 | The city clerk is then required to publish a notice that at a stated meeting of the council thereafter the contractor will be paid and the claimants for labor and material may file their claims with the clerk. Section 2895 provides that, if claims so filed shall with the contractor's statement, the city may pay the claimants direct and charge the contractor; but, if it be filed claims are disputed or does not tally with the statement, the claimant shall bring suit in court within 30 days to recover of the contractor, and upon filing a transcript of judgment with a certificate of nonappeal the shall be paid by the city. Section 2885 provides that partial payments as in the work progresses shall only be made upon the production of receipts from subcontractors, laborers, and materialmen. There are other provisions in harmony with the above. The plaintiff thought his action was in harmony with the verified statement. The city alleged the failure in its answer and charged that plaintiff owed a large sum of money for labor and materials and demands were being made on it in his replication plaintiff admitted he had not filed the statement before beginning his action, but alleged he did so afterwards. The proof do not show any such statement, nor does the city statement appear to have been demanded. The proof do show, however, a large amount of claims and orders given by plaintiff were filed, some of which appear to be, and others are clearly within, the statute. During the trial the court referred to the claims and said the case would not be decided until it was settled whether the unsatisfied ones were within the statute, and, if so, they would be deducted. The record before us does not disclose any further action in the matter. We think the Colorado statute suspended the due date of plaintiff's compensation until the filing of the duly verified statement having been filed and the city clerk's notice having been published, the claimants for labor and materialmen | An action begun before the accrual or maturity of the demand is premature and should be dismissed. | Can an action begin before the accrual or maturity of the demand? | 005483.docx | LEGALEASE 00135367 - LEGALEASE 00135368 | Condensed_SA | 0.97 | 0 | 0 | 0 | 1 | 0 |
| 18694 | Voloba v. Len Perrone Landscaping, 69 Ohio St. 2d 376 | 24 l=43 | When negligence does not immediately result in damages, a cause of action for damages arising from negligent construction does not accrue until actual injury or damage ensues. A motion to dismiss based on the bar of the statute of limitations is erroneously granted when the complaint does not conclusively show on its face the action is barred by the statute of limitations. | Where wrongful conduct complained of is not presently harmful, a cause of action does not accrue until actual damage occurs. | When negligence does not immediately result in damages, does a cause of action accrue only when actual damage has resulted from negligence complained of? | Action - Memo # 127 - C All docx | ROSS-003125-ROSS-003125263 | Condensed_SA | 0.67 | 0 | 0 | 1 | 1 | 0 |
| 18695 | Eisenberg v. City of Miami Beach, 1 F. Supp. 3d 1327 | 13=16 | The plaintiff's sixth claim is a remedy, not a separate cause of action. See Perret v. Wyndham Vacation Resorts, Inc., 889 F.Supp.2d 1231, 1244 (S.D.Fla.2012) (dismissing count pleading injunctive and declaratory relief for failure to state separate cause of action). See also Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1127 (11th Cir.2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action ... There is no such thing as a suit for a traditional injunction in the abstract."). Moreover, "[A] court should not entertain an action for declaratory relief when the issues are not ripe for adjudication, or when there exists no actual controversy, or when the proceedings involve counts of the pleading and are already before the court, the court's 8893 F.Supp.2d at 1246 (citation omitted). Plaintiff's already-ripe equitable relief in the other counts of the Complaint. Accordingly, Count VI is dismissed. | Equitable relief sought by plaintiff was a remedy, not a separate cause of action. | Is an equitable relief a cause of action? | 005468.docx | LEGALEASE 00136599 - LEGALEASE 00136600 | Condensed_SA | 0.93 | 0 | 1 | 0 | 1 | 0 |
| 18696 | Sheldon v. Tumer, 496 S.W.3d 418 | 13=41 | By filing his forcible detainer complaint only eight days after giving Sheldo notice to vacate, Tumer was trying to regain possession that he did not lawfully have. The statutory elements of a forcible detainer were not yet met since Tumer had, at that time, no presently enforceable right of possession. "A cause of action does not exist until the conduct causes injury that produces loss or damage." Adair v. Austin, 455 S.W.3d 294, 309 (Ky.2013) (citation omitted). Because Tumer's complaint was filed before the stated cause of action occurred, the district court should have dismissed it, failure to do so was error | A cause of action does not exist until the conduct causes injury that produces loss or damage. | Does a cause of action accrue without occurrence of an injury? | 000773.docx | LEGALEASE 00120503 - LEGALEASE 00120504 | Condensed_SA | 0.85 | 0 | 0 | 0 | 1 | 0 |

3297

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 18607 | Brister v. Mills, 320 F. Supp. 3d 633 | 3432 | The Navy, like any other agency, must comply with its own binding rules. Smith v. Resor, 406 F.2d 141, 145 (2d Cir. 1969) (holding that mandatory military "procedures and regulations cannot be ignored by the agencies themselves even where discretionary decisions are involved"). Although the government contends that the Court must review plaintiff's discovery claim under an "unusually deferential application of the 'arbitrary or capricious' standard of the APA" because it implicates military decision-making (Defs.' Br. at 16) (quoting Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)), "the same cannot be said of a military judgment requiring military expertise, but rather review of the [Navy's] compliance with procedural regulations governing its case adjudication process." Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005) ("Kreis II"). Compare Kreis v. Sec'y of the Army, 941 F.2d 1 (... ) (adopting a more deferential standard to review of challenging substantive military decision-making), with Blassingame v. Sec'y of the Navy, 811 F.2d 65, 69 (2d Cir. 1987) (adopting a "primary, careful, and searching" review of a claim challenging non-compliance with a procedural regulation). In this context, ... Navy followed its own rule "does not involve any undue interference with the proper operation of our military forces because [it] require[s] only that the [Navy] carry out the procedures and regulations it created itself." Blassingame, 866 F.2d at 560 (third alteration in original) (quoting Smith, 406 F.2d at 146); see also Brister, 406 F.2d at ... (according the military special deference is "wholly inappropriate ... when a case presents a question of whether the [military] had its own rules" in light of the federal courts' "special place in our structure as protectors of agency conforms to the law, or is instead arbitrary, capricious, or contrary to the ...) | Navy, like any other agency, must comply with its own binding rules. | Does the navy have to comply with its own binding rules? | 008766.docx | LEGALEASE-00126365-LEGALEASE-00126370 | Condensed, SA | 0.97 | | | | 1 | |
| 18608 | Seeman v. Kinch, 606 A.2d 1306 | 79+3 | Section § "It invalidates the procedure for the Governor to appoint a Superior Court Judge when a vacancy has occurred during a unexpired term of the former one's office and until such time as a successor is appointed and qualified. At the Local Court, but the ... but this provision is only applicable when both conditions exist. 889 S.L. at ... 526 A.2d at 371. Because there was no unexpired term of office in the present case, this provision is inapplicable. Rather an appointment is therefore correctly made by the Governor pursuant to the procedure of "if it"). | Governor was vested with authority to make interim appointment to office of Superior Court Judge between and confirmation pending to what action appointee, where qualified, to take office ... the unexpired term of ... prior was authorized to act with its powers and responsibilities. Gen Laws 1956, t 5, 4-5. | Does the Governor have the power to appoint judicial officers? | 013491.docx | LEGALEASE-00126812-LEGALEASE-00126813 | Condensed, SA, Sub 0.48 | | 0 | | | | 1 |
| 18609 | Rockford Drop Forge Co. v. Donovan, 672 F.2d 626 | 170B+ 1515 | The foregoing history shows that the statute and regulations permitted the Secretary to seek inspection warrants ex parte and that the procedure of ... from seeking a warrant to ... and that an inspection warrant so issued must as a result of fact that OSHA inspection warrant was ... permitted to take place ex parte, ... authorized the Secretary ... in Barlow's. Since the present warrant was issued on October 22, 1980, ... the 1979 version of Section 1903.4 applies. | Appeal from judgment invalidating OSHA inspection warrant was not ... rendered moot as a result of fact that OSHA inspection had been ... permitted to take place ex parte, ... authorized the Secretary ... day, Secretary of Labor terminated further attempts to inspect employer's premises and since district court had granted employer's motion to suppress evidence obtained under the inspection warrant | Does the Secretary of Labor have authority to obtain inspection warrants ex parte? | 019683.docx | LEGALEASE-00126438-LEGALEASE-00126439 | Condensed, SA, Sub 0.18 | | 0 | | | 1 | |
| 18610 | Kelley v. Maldry, 20 Cr. 690 | 302+1(1) | It is this defense of my judicata which first challenges our interest. When we examine the complaints in the two suits, we are immediately struck by their similarity. Both are between the same parties and both involve the entire agreement of April 2, 1948, as the basis for plaintiff's claim for relief. In both suits the relief sought is for an accounting between Kelley and Maldry predicated upon the theory that a partnership of fiduciary relationship between them. In the first suit, however, plaintiff pleaded as a conclusion of law that the partnership existed ... and the business known as Maldry Chevrolet Company, but a conclusion of law is not issuable and requires no denial and raise no issue at all pleading. Almada v. Vandecar, 94 Or. 515, 519, 185 P. 907. It amounts to a nullity, and a pleader's construction of the legal character of the contract is not binding on the court. Young v. Evans, 104 Or. 619, 104, 208 P. 741; Dickerson v. Henderson, 50 Or. 408, 411, 178 P. 907. When the instrument relied upon is set out in full and the pleader takes the ... Kelley suits, it prevails over the allegation as to its legal effect. Young v. Evans, 104 Or. at page 625, 208 P. 741. | Conclusion of law in pleading is not issuable, requires no denial, does not raise issue of fact, and the pleading, and amounts to a nullity. | Does a conclusion of law aid pleading? | 022895.docx | LEGALEASE-00126894-LEGALEASE-00126895 | Condensed, SA, Sub 0.9 | | 0 | | 1 | | |
| 18611 | Burt v. Union Oil Co. of California, 365 Ill. App. 3d 64 | 150+6 | We affirm the trial court's dismissal. The mere fact that the thing sold by the defendant is sold for, or might be used for, a public use or purpose does not of itself render the sale or production a public utility. Mississippi River Fuel Corp. v. Illinois Commerce Comm'n, 1 Ill.2d 509, 116 N.E.2d 394 (1953)... that is sold to the public utility and there was no proffered evidence ... defendant selling ... Mississippi River Fuel Corp., the court stated: "A public utility implies a public use of an article, product, or service, carrying with it the duty of the producer or manufacturer, or one attempting to furnish the service to serve the public and treat all persons alike, without discrimination." ... Whenever one devotes his property to a use in which the public ... but the state of the company must furnish it with ... supply, and the service it furnishes must be without any further ... and discrimination are without delay." 1 Ill.2d 509, 116 N.E.2d 394. | Oil refiners was not "public utility" within meaning of the Public Utilities Act and was therefore surviving special interrogatory to jury in action at oil refinery could not recover for alleged violations of Act. Although River Fuel Corp. ... | Does the mere fact of selling things ordinarily sold by the public utilities make it public utility? | Public Utilities Memo 203 - AM.docx | ROSS-003303791-ROSS-003303794 | Condensed, SA, Sub 0.39 | | 1 | | | | |
| 18612 | State ex rel. Galle v. Doane, 421 S.W.2d 268 | 1-41/21-32 | The review of the trial court was "that the respondent lacks authority to make the payment requested by relator after the distribution of the fund to the property districts, the school district, from other school is not obtained." However, it appears that application for remission was made to the Governor the month before the order of the St. Louis County Council distributing the funds to the school district. We conclude, Education ... as authorized by apportion a remitter until Galloway had been had to pay back ... proceedings, funds as refunds to applying for a remitter until Galloway had been refunded or otherwise had ... Furthermore, funds of school districts are the property of the state, and not the private property of the school district. School District No. 96, of Haarlem County, Mo. Sup., 359 S.W.2d 743, 746; School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S.W.2d 909, 915. | Funds of school districts are the property of the state, and not the private property of the school districts. | Are funds of school districts property of the state or the private property of the school districts? | Education - Memo # 16 - C - SU.docx | ROSS-003302935-ROSS-003301551 | Condensed, SA | 0.88 | | 0 | | | 1 | |

Appendix D

3296

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed 15,564 | Substantive Additions 14,873 | Selection & Arrangement 21,876 | Multiple Differences 9,079 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18703 | Dean v. Madison Cty. Bd. & Through Madison Cty. Bd. of Sup'rs, 649 So. 2d 1260 | 148v2.19(1) | Government has powers that do not carry with them duty to compensate, as is attendant to eminent domain; such powers include zoning authority, authority to relocate roads and highways, exercise of police powers to regulation of traffic control and designation of access, and power to tax. Const. Art. 3, § 17. | Certainly, constitutional history does not force the conclusion that the governmental unit's obligation to compensate interferes with the economic impact of every action it takes; on the contrary, government has powers that do not carry with them the duty to compensate, as is attendant to eminent domain, which extend beyond the zoning authority mentioned in Pickett v. Rutledge, 244 Miss. 114, 140 So. 2d 613, 623–625 (1962), to include the authority to relocate roads and highways... Wheeler v. State Highway Commission of Mississippi, 212 Miss. 606, 55 So. 2d 225 (1951), and the exercise of its police powers through the regulation of traffic control and designation of access, Mississippi State Highway Commission, 233 Miss. 694, 103 So. 2d 889 (1958), or even the exercise of its power to tax has long been held immune to the eminent domain power and carries with it no duty to compensate. See Yazoo v. City of Vicksburg, 247 Miss. 244, 111 So. 2d 819 (27), of our own cases, 276 So. 2d 659, 55 § 1, 170, 171 (21, 116) (1929), Union Planters Bank and Trust Company v. City of Jackson, 122 Miss 55, 84 So. 388 (1920). | Is the power to tax independent of the eminent domain power? | 017648.docx | LEGALEASE-00126373 LEGALEASE-00126374 | Condensed, SA, Sub 0.71 |  | 839 | 0 |  | 1 | 1 |
| 18704 | Enbridge Pipelines (Illinois) v. Troyer, 2015 IL App (4th) 150334 | 148v187 | Trial court had equitable authority to issue preliminary injunction prohibiting property owners from obstructing gas utility's access to easements after utility had been granted right to exercise eminent domain, but before any condemnation proceeding had begun; property owners would continue to hold title and possession of land after condemnation and injunction simply prevented property owners from impeding utility's access to the tracts for the purpose of surveying, operating, and maintaining a pipeline system, and right to survey land in which easement had not yet been approved by the Illinois Commerce Commission (ICC) and judicially upheld. | In the case at bar, the condemnation proceeding does not fit into the category of an "ordinary" condemnation proceeding as described above. Landowners retain both title to and possession of their tracts. When these proceedings terminate, Landowners will continue to hold title and possession of their tracts. The injunction simply prevents Landowners from impeding Pipeline's access for the purpose of installing, operating, and maintaining a pipeline, rights which have been approved by the ICC and judicially upheld. As such, we believe Troy's case is on the facts for the claim of irreparable harm and a utility's land a defendant's right to use their property of the property in deprive defendants of all economically viable use of the property," id. at 417, 264 Ill. Dec. 293, 641 N.E.2d at 497. In the case at bar, Landowners have failed to have the right to farm and store equipment on the property, just as Landowners do now. As a result of the injunction did not deprive the defendants of all economically viable use of the property, it did not amount to a regulatory taking. Id. As the supreme court specifically noted, in the context of a condemnation proceeding, a preliminary injunction cannot be mistaken a taking without compensation, as the very purpose of a condemnation proceeding is to determine the amount of just compensation constitutionally owed to the landowner [] Id. See also Northern Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp. 2d 299, 815 N.E.2d 1 (2000) (when parties agreed, in the tracts for the purpose of authority to immediate possession of the property, court nevertheless found preliminary physical possession even though just compensation had yet to be determined). | Can a preliminary injunction be considered a taking without just compensation? | Eminent Domain - Memo 304 - QP.docx | ROSS-000298559-ROSS-000298560 | Condensed, SA, Sub 0.62 |  | 0 | 1 |  | 1 | 1 |
| 18705 | Hendler v. United States, 952 F.2d 1364 | 148v2.1 | Government's physical occupation of private property may be "permanent," in sense that it is a "taking" for which just compensation is used, even though it is not exclusive, continuous, or uninterrupted. U.S.C.A. Const.Amend. 5. | By like token, the concept of permanent physical occupation does not require that in every instance the occupation be exclusive, or continuous and uninterrupted. The evidence before the court was that Government vehicles and equipment entered upon plaintiffs' land from time to time, without permission, for purposes of installing and maintaining monitoring wells. They remained on the land for whatever duration was necessary to conduct their activities, and then left, only to return again when the Government desired. We see all the way that the Joint Highway District Act does not violate the due process provision of the Federal Constitution (Const. U. S. Amend. 14) in providing for the possession of the district and the method of leaving and collecting the tax. The Legislature had full power over the subject matter of the formation of the district. It delegated this power to the boards of supervisors of the respective counties comprising the district. The construction of the proposed highway is a matter in which the whole community has an interest, and it is a highly public purpose for which property may be taxed by the state. Questions relating to the spreading the cost of construction of the works over taxing districts, and are not controlled by either the due process or the equal protection clauses of the Fourteenth Amendment. Memphis, etc., R. Co. v. Pace, 282 U. S. 241, 51 S. Ct. 108, 75 L. Ed. 315, 72 A. L. R. 1096. If the tax case at any time be shown to be palpably arbitrary, thereby amounting to a clear abuse of power, the court would without a difference in taxation cannot be so used without imposing restraints upon the constitutional power of the Legislature, which is not to execute or prescribed. Whether there is such a difference would generally be for the Legislature to determine, although it cannot be said that the courts could not, in any possible condition of facts, review that determination. Foster v. Pryor, supra, at page 334 of 189 U. S., 23 S. Ct. 549. | Does a permanent physical occupation need to be continuous and uninterrupted? | 017677.docx | LEGALEASE-00127316 LEGALEASE-00127317 | Condensed, SA, Sub 0.55 |  | 0 | 1 |  | 1 | 1 |
| 18706 | Joint Highway Dist. No. 13 Co. v. Hinman, 220 Cal. 578 | 200v121 | Highway construction is "public purpose" for which property may be taxed by state. |  | Is road building a public purpose which may be effected by general taxation? | 019262.docx | LEGALEASE-00126861 LEGALEASE-00126862 | 0.95 |  | 0 |  | 1 | 1 |  |
| 18707 | St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 317 F. Supp. 2d 31 | 366v55 | Waiver of subrogation clause, absent any indication of overreaching or unconscionability, is neither invalid under New York statutory law nor contrary to public policy, and may thus bar subrogated claim for gross negligence. N.Y. McKinney's General Obligation Law § 5-321. | Finally, St. Paul contends that even if UBS breached her contractual obligation, a waiver of subrogation clause is unenforceable where the claim at issue is based on gross negligence. Although the New York Court of Appeals has not addressed the precise question, we agree with the district court that, based on the pertinent well-established principles of New York law, St. Paul's contention should be rejected. | Can a waiver of subrogation clause bar a subrogated claim for gross negligence? | 043006.docx | LEGALEASE-00127147 LEGALEASE-00127148 | Condensed, SA, Sub 0.38 |  | 0 |  | 1 | 1 |  |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18708 | Carey v. Stadther, 300 Minn. 88 | 413+670 | With exceptions not relevant here, Minn.St. 176.021 provides that employers are liable to pay compensation in every case of personal injury or death of an employee "arising out of and in the course of employment without regard to the question of negligence * * *. " The underlying policy of the Workmen's Compensation Act is to spread the cost of accidental injury by making such injuries a cost of doing business or a cost of production. Hubbard v. Midland Constructors, Inc., 269 Minn. 425, 131 N.W.2d 209 (1964). The act is remedial legislation which is to be given broad and liberal construction. Sandmeyer v. City of Bemidji, 281 Minn. 217, 161 N.W.2d 318 (1968); Hill v. Terrazzo Machine & Supply Co., 279 Minn. 428, 157 N.W.2d 374 (1968); Kolbeck v. Myhra, 255 Minn. 341, 96 N.W.2d 633 (1959). | Death of feed salesman, whose employer encouraged and expected him to perform acts of community service and who died while attempting to rescue person from bottom of cesspool, arose out of and in the course of his employment and salesman's dependents were entitled to dependency benefits under the Workmen's Compensation Act. M.S.A. SS 176.011 et seq., 176.021, 176.021, subd. 1, 176.111, 604.05. | Is workers compensation based on industrys obligation to recognize accidental injury and death arising out of employment as a cost of production? | 048455.docx | LEGALEASE-00126832-LEGALEASE-00126833 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 18709 | New Hampshire Ins. Co. v. Mora, 500 S.W.3d 132 | 366+35 | Texas law requires that the first money recovered by an injured worker from a tortfeasor go to the worker's compensation carrier, and until the carrier "is paid in full the employee or his representatives have no right to any funds." Tex. Mut. Ins. Co. v. Ledbetter, 251 S.W.3d 31, 33 (Tex.2008) (quoting Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 530 (Tex.2002)) However, subrogation rights may be waived or altered by contract. | Subrogation rights may be waived or altered by contract. | Can subrogation rights be waived or altered by contract? | Action - Memo # 904 - C-PC.docx | ROSS-003298419-ROSS-003298420 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 18710 | In re B.C. Rogers Poultry, 455 B.R. 524 | 366+38 | As mentioned previously, the second determination is related to the unjustenrichment requirement. As set forth by the Fifth Circuit, it requires that "the equity of the party seeking subrogation ... be strong and his rights clear, and his equity ... be superior to that of other claimants." Compania, 303 F.2d at 697. If there are greater, or "countervailing equities" of other parties whom will be effected by subrogation, subrogation is defeated. This outcome is due to the "superior equities doctrine," where "[t]he burden is upon the one seeking subrogation to establish its superior equity." In re Flamingo 55, Inc., 378 B.R. 893, 917 (Bankr.D.Nev.2007); see Bank of Oxford, 16 So.2d at 390 (the doctrine of subrogation "will never be enforced when the equities are equal"). | In determining whether subrogation remedy would result in prejudice or injury to subrogor, rendering equitable subrogation unavailable under Mississippi law, courts consider (1) whether applying equitable subrogation will prevent unjust enrichment, and (2) whether the party seeking equitable subrogation has clear equities that are superior to the competing equities of third parties who would be affected by the subrogation remedy. | "Is subrogation defeated due to the ""superior equities doctrine"", if there are greater, or countervailing, equities of other parties who will be affected by equitable subrogation?" | Subrogation - Memo # 1131 - C - TJ.docx | ROSS-003300285-ROSS-003300286 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 18711 | John L. Mattingly Const. Co. v. Hartford Underwriters Ins. Co., 415 Md. 313 | 30+4734 | "Waivers of Subrogation," or waivers of the opportunity to make subrogation claims, which are prevalent in construction contracts, have been aptly described by our intermediate appellate court in this case as follows:Waivers of Subrogation clauses commonly appear in construction contracts."Construction contracts often contain provisions which require the parties to waive their right to claim damages against one another up to the amount of insurance coverage available for their losses." 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor On Construction Law " 11:100, at 306 (2002). A subrogation waiver "is a risk-shifting provision premised upon the recognition that it is economically inefficient for parties to a contract to insure against the same risk." TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc., 233 S.W.3d 562, 567 (Tex.App.2007). As a matter of policy,subrogation waiver[s] encourage[ ] parties [to a construction contract] to anticipate risks and to procure insurance covering those risks and also facilitate[ ] and preserve[ ] economic relations and activity. Because a property owner can generally acquire insurance to protect the property against fire and other perils, in the context of a construction contract, the waiver of subrogation clause shifts the ultimate risk of loss resulting from such perils to the owner to the extent damages are covered by insurance....Id. at [567] (citations omitted). Generally, waivers of subrogation clauses are included in construction contracts "to cut down the amount of litigation that might otherwise arise due to the existence of an insured loss." 4 Bruner & O'Connor, supra, " 11:100, at 306-07.Hartford Underwriters Ins. Co. v. Phoebus, 187 Md.App. 668, 677, 979 A.2d 299, 304-05 (2009). Within this framework, we consider the factual circumstances underlying the present controversy. | Ambiguity in waiver of subrogation clause in form contract for construction of a restaurant as to whether waiver encompassed losses sustained after completion of construction and final payment, warranted remand to circuit court to more fully develop the record as to what the parties intended. | Do waivers of subrogation clauses appear in construction contracts? | 043434.docx | LEGALEASE-00127994-LEGALEASE-00127995 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 18712 | Olivas v. United States, 506 F.2d 1158 | 366+35 | It is "well settled that the right of subrogation "may be modified or extinguished by contract."" Hardware Mut. Ins. Co. v. Dunwoody, 194 F.2d 666, 668 (9th Cir. 1952). Aetna urges, however, that its waiver of subrogation rights against the United States affects only its interest under parts A. and B. of " 23-1023, and does not undermine its statutory lien under part C. | The right of subrogation may be modified or extinguished by contract. | Can a right of subrogation be modified or extinguished by contract? | Subrogation - Memo # 1193 - C - BP.docx | ROSS-003286329-ROSS-003286331 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 18713 | Boudreaux v. Scott's Boat Rentals, 184 F. Supp. 3d 343 | 366+35 | Louisiana law generally allows waivers of subrogation. Hudson v. Forest Oil, 2003 WL 21276385, at (E.D.La. June 2, 2003), aff'd 372 F.3d 742 (5th Cir.2004). However, the LOAIA invalidates some waivers of subrogation. The LOAIA applies to agreements that (1) pertain to an oil, gas, or water well and (2) are "related to exploration, development, production, or transportation of oil, gas, or water." Fontenot v. Chevron U.S.A. Inc., 676 So.2d 557, 564 (La.1996). An insurance contract that is ancillary to an agreement such as the master contract satisfies this test. Id. Neither side disputes that the MSA satisfies this two-part test. With respect to waivers of subrogation, the LOAIA provides: (B) Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee. | Louisiana law generally allows waivers of subrogation. | Does law generally allow waivers of subrogation? | 043442.docx | LEGALEASE-00127800-LEGALEASE-00127801 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,029 |
| 18714 | New Hampshire Ins. Co. v. Moss, QDS:50818132 | 366k53 | Texas law requires that the first money recovered by an injured worker form a fund out of which the employer or its insurance carrier must pay the carrier "a part in full the employee or its representatives have the right to any funds." Tex. Mut. Ins. Co. v. Ledbetter, 251 S.W.3d 31, 35 (Tex. 2008) (quoting Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 530 (Tex.2002)). However, subrogation rights may be waived or altered by contract. Trinity Universal Ins. Co. v. Bill Cox Constr., Inc., 75 S.W.3d 6, 8 (Tex.App.–San Antonio 2002, no pet.). | Subrogation rights may be waived or altered by contract. | Can the subrogation rights be waived or altered by contract? | 043569.docx | LEGALEASE-00237643–LEGALEASE-00237644 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18715 | U.S. ex rel. Goodman v. Hearn, 133 F.2d 186 | 34+29 | The Constitution. Article 1, Sec. 8, Cl. 12 vests in the Congress the power to raise and support armies. The power is plenary (re-en. Tit.24, ch.13 [ tit. 397, 408, Cls.0,6. 597. Minors may be enlisted [ unlike I size, supr, and without the consent of their parents, unit States v. Blakeney, 3 Grattan 405, 24 Fed.Cas.page 966, No. 14,497. The present Selective Service Act, as amended, Sections 2, 3, 50 U.S.C.A Appendix, * 302, 303, requires every male citizen, and resident, between the ages of eighteen and sixty-five, to register for service, and makes them all liable to training and service unless deferred or exempted. Section 5, 50 U.S.C.A Appendix, * 305(6), provides: "Regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of this Act, shall be exempt from training and service (but not from registration under this Act." The regular minister or theological student has no inherent or constitutional right to exemption from service. This exemption is given by Congress, and is subject to the qualifications that Congress may annex to it, All are required to register. Congress has required the President to set up the Local Boards in its representatives and assistants in registering, examining, and selecting men for service. These local boards, under rules and regulations prescribed by the President, shall have jurisdiction over those who reside within their respective jurisdiction and they determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under the Act of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final except as otherwise stated on, an appeal unless the right of appeal be given. The decision of such appeal boards shall be final in cases before them on appeal, unless they are modified or changed by the President as provided in the regulations. | The constitutional power of Congress to raise and support armies is plenary, and minors may be enlisted without the consent of their parents. U.S.C.A.Const. art. 1, § 8, cl. 12. | Can minors be enlisted without the consent of their parents? | 008332.docx | LEGALEASE-00128518–LEGALEASE-00128519 | Condensed, SA, SA | 0.9 | 1 | 1 | 1 | 1 | 1 |
| 18716 | Cunningham v. Hoffman, 420 F. Supp. 325 | 34+2 | Judicial review of military actions has been confined to few standards. While the Court of Appeals for the Fifth Circuit has set forth a basis in Ford, United States ex rel. Hutchins v. Hoffman, 439 F.2d 821 (5th Cir. 1971), the Court of Appeals for the Second Circuit has defined the scope of review to the following extent: "the district court may review action taken by military authorities to insure that it is not violative of applicable regulations. . . . or to insure that their decision is not so arbitrary and irrational that it cannot stand . . ." Feliciano v. Laird, 426 F.2d 424, 431 (2d Cir. 1971). Since both of petitioner's claims hinge upon his contention that the Army failed to follow its own regulations in making its determination that the petitioner had not practiced in the community, it is clear that the court has the power to review the standards utilized to determine his fitness. Where, as here, a petitioner would contend its determination policy of rational and without any basis in fact, however, in determining that the Army failed to follow its own regulations, the court is further restricted by cases permitting military authorities to interpret their own regulations as long as their interpretations are reasonable in scope. 12B [ Supp at 345-347. Thus, if the applicable regulation were interpreted in a reasonable manner, the charge of procedural irregularity must fall even though the petitioner may present another reasonable interpretation of the regulations. | Military authorities are permitted to interpret their own regulations as long as their interpretations are reasonable, and thus if applicable regulations are interpreted in reasonable manner, charge that military authorities have failed to follow their own regulations must fall even though petitioner may present another reasonable interpretation of regulations. | Should the Army's interpretation of its regulations be given controlling weight when the meaning of the army regulations is in question? | 003345.docx | LEGALEASE-00128628–LEGALEASE-00128629 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 18717 | Sellers v. Valenzuela, 249 N.Y.S. 2d 627 | 152+35 | A demurrer is addressed to the face of bill. If not thus supported it is a speaking demurrer. Samples v. Gricall, 230 Ala. 176, 160 So. 538, and that is not permissible. Craig v. Smith, 90 Ala. 440, 8 So. 86, 103, 106. The defect that may be taken advantage of by demurrer must not only appear upon the face of bill but be averred. The case has been pending for well over a year. Plaintiff has dismissed with prejudice. The case has been pending for well over a year. The court does not. | A demurrer is addressed to the face of bill and if not thus supported it is a speaking demurrer. | Are speaking demurrers permissible? | 029959.docx | LEGALEASE-00128533–LEGALEASE-00128534 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 18718 | Shuda Records v. Seacor Enterprises, 371 F. Supp. 2d 194 | 170Ak+711.1 | Plaintiff voluntary dismissal of action, after answer has been filed, may be conditioned upon plaintiff fulfilling whatever terms and conditions district court, in its discretion, deems necessary to offset possible prejudice defendant may suffer from that dismissal, including requirement that dismissal be with prejudice. Fed.Rules Civ.Proc.Rule 41(a)(2), 28 U.S.C.A. | Plaintiff's voluntary dismissal of action, after answer has been filed, may be conditioned upon plaintiff fulfilling whatever terms and conditions district court, in its discretion, deems necessary to offset possible prejudice that defendant may suffer from that dismissal, including requirement that dismissal be with prejudice. Fed.Rules Civ.Proc.Rule 41(a)(2), 28 U.S.C.A. | Is the purpose of the rule related to voluntary dismissals in the prevention of intolerable manipulation of the court's calendar and the defendants' resources? | 039213.docx | LEGALEASE-00128330–LEGALEASE-00128331 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 27,876 | 9,029 |
| 18719 | Muscoda Bridge Co. v. Vill. of Muscoda, 193 Wis. 457 | 64+15 | If the mere legislative declaration that it utility was a public utility necessarily resulted in the franchise of the utility becoming an indeterminate permit, there would have been no necessity for the passage of chapter 596, Laws of 1911, which altered and amended the franchises of all utilities supplying water, light, heat, power, and telephone service so as to make them indeterminate permits, because all utilities mentioned in that act had been declared to be public utilities when the act was passed in 1907. That it was not the legislative intent to make the declaration that a utility was a public utility equivalent to the granting of an indeterminate permit is shown by the fact that section 1797m-77 of the statutes... automatically follow the legislative declaration that a utility is a public utility, it was not necessary before the passage of chapter 596, Laws of 1911, that the legislature exercised its reserve power to make the franchise of all utilities supplying heat, light, water, power, or telephone service indeterminate. | Legislative declaration that toll bridges are public utilities did not necessarily result in toll bridge franchises becoming indeterminate permits. Laws 1911, c.c. 48, 596; Laws 1907, c. 499, S 1797m-77. | Does the existence as a public utility result in the grant of an indeterminate permit? | 04.2474.docx | LEGAEX4E-00135357; LEGAEX4E-00135358 | Condensed, SA, Sub | 0.84 | 0 | | 1 | 1 | |
| 18720 | Bacon v. DBI/SALA, 284 Neb. 579 | 413+2103 | Court's have found these waivers operative as to the right to statutory credit against future workers' compensation obligations, where the employee obtains recovery from a normal insured under the OCIP. But the waivers are generally limited and operate only to the extent that each party is covered by the builder's risk policy. Waivers of subrogation are strictly construed, and a waiver of statutorily conferred rights under the workers' compensation act must be clear and unequivocal. | Waivers of statutorily conferred rights under the Workers' Compensation Act must be clear and unequivocal. West's Neb.Rev.St. S 48-118. | Are subrogation waivers strictly construed? | 04.1214.docx | LEGAEX4E-00128348; LEGAEX4E-00128349 | SA, Sub | 0.72 | 0 | | 1 | 1 | |
| 18721 | Bacon v. DBI/SALA, 284 Neb. 579 | 413+2103 | Court's have found these waivers operative as to the right to statutory credit against future workers' compensation obligations, where the employee obtains recovery from a normal insured under the OCIP. But the waivers are generally limited and operate only to the extent that each party is covered by the builder's risk policy. Waivers of subrogation are strictly construed, and a waiver of statutorily conferred rights under the workers' compensation act must be clear and unequivocal. | Waivers of statutorily conferred rights under the Workers' Compensation Act must be clear and unequivocal. West's Neb.Rev.St. S 48-118. | Are waivers of subrogation strictly construed? | 04.3377.docx | LEGAEX4E-00128359; LEGAEX4E-00128360 | SA, Sub | 0.72 | 0 | | 1 | 1 | |
| 18722 | Nestle v. Future Const., 836 N.E.2d 445 | 366+15 | Furthermore, the trial court did not, as it turns commends, find that Nestle's actions were willful and wanton and/or grossly negligent. The trial court stated in its findings, although Nestle has advanced [the theory that] ... Future has waived its right of subrogation against Nestle due to the terms of paragraph 11.3.7 of the contract between Future and Perry Township, this paragraph is superseded by Nestle's breach of contract with future by subcontracting work to Coffey without notice to future and by the negligent acts of Nestel and Coffey which led to the collapse of the Warehouse Appellant's App. p.178" (emphasis added). The trial court found nothing more than a breach of contract and negligence, and we see no reason to cite Appellant's willful and wanton or grossly negligent on these facts. And as noted in Midwestern, negligence and breach of contract do not supersede a waiver of subrogation. As such, the waiver of subrogation clause is valid and enforceable. | Negligence and breach of contract do not supersede a waiver of subrogation. | Does breach of contract supersede a waiver of subrogation? | 04.3412.docx | LEGAEX4E-00128322; LEGAEX4E-00128323 | Condensed, SA | 0.92 | 0 | | 1 | 1 | |
| 18723 | Alley v. Alley, 137 Ga. App. 256 | 13+63 | The doctrine of laches has no application as a defense to an action at law.Rogers v. Bryant, 121 Ga.App. 807, 814-815, 175 S.E.2d 884; Addis v. Smith, 226 Ga. 894(1), 178 S.E.2d 191. An action, whether it operates at law, is simply an action on a debt of record and is not an equitable action. See Cornett v. Cornett, 133 Ga.App. 841(1), 167 S.E.2d 684. | Doctrine of laches has no application as defense to action at law | Is the doctrine of laches not applicable to an action at law? | Action - Memo #3.50 - C-36.docx | R05S-00187163-R05S-00187164 | Condensed, SA | 0.81 | 0 | | 1 | 1 | |
| 18724 | Flanigan v. Hambleton, 54 B.3017+266 | 54 B.3017+266 | But does the rule act it has been laid down by the appellant's counsel reach so far as to prevent the transaction in this case being regarded by a Court of Equity as a renewal? There can be no doubt, that ordinarily, the effect of a renewal is simply this, the old note, even though not satisfied, remains in the bank unclaim up and uncancelled in fact, as is often the case. It is merely a dispensing with the actual payment of the money and taking up of considering the old money and the immediate input of the same money as the borrower. It is arranged for the purpose of carrying into effect the intentions of the parties to the transaction. Johnson on Bills and Notes, 201; U. S. Bank vs. Georgia, 10 Wheaton, 333; Slayreider vs. Gundaker, 10. S.& R., 75. The meaning of all this is, the bank is paid in some shape again by a discount of the new note. It only dispenses with the formality to carry out the intent of the parties, in taking the money and handing it back at once can make any difference in the transaction. The favor done by the Bank is the same in either case. In either case it is just a renewal; it is to favor the borrower and their understanding oft which makes it a renewal. Parson on Bills and Notes, 213 and 214. The word "renew" has no legal or technical signification. Whether a note is a renewal of another note, is a mixed question depending upon the intention of the parties. Scott v. McGrath, 8 Caney, 897; Russell v. Phillips, 68 E. C. L., 900; Hooker vs. Perkins, 5 Wharton, 531 | The word "renewal" has no legal, or strictly technical signification. | Does the word renewal have any legal or technical signification? | 00.9349.docx | LEGAEX4E-00129001; LEGAEX4E-00129003 | Condensed, SA | 0.96 | 0 | | 1 | 1 | |

Appendix D

3302

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 11725 | Pierce v. Associated Rest. & Nursing Care, PA N.C. App. 210 | 118A+271 | Pursuant to this statute, an action must be tried in the county where the property is located when the judgment in the action sought by plaintiff will affect the title to land... [text] ... McCrary Stone Service v. Jyachi, 77 N.C. App. 796, 336 S.E.2d 103 (1985), disc. rev. denied, 315 N.C. 588, 341 S.E.2d 33 (1986). | Declaratory judgment action brought by lessees which sought determination of parties' rights under lease agreement and which would seek to enjoin lessor from bringing summary ejectment action pending determination of rights would not directly affect title or interest in property, and thus, action need not be tried in county in which property is located, pursuant to statute. G.S. 1-76. | Do courts consider the allegations in the complaint in deciding whether the judgment sought by plaintiff would affect title to land? | Venue - Memo 112 - PA.docx | R055/00315267-R055-00315268 | Condensed, SA, Sub 0.32 | 0 | | 1 | 1 | 1 |
| 11726 | Thomas v. Hunt Mfg Corp., 42 Cal. 2d 734 | 30+110 | Plaintiff appeals from the judgment and from the order denying his motion for a new trial. An order denying a motion for a new trial in a non-appealable order and will be dismissed. (Code Civ. Proc., § 963; Clemens v. City of Los Angeles (1950), 36 Cal.2d 95, 98, 222 P.2d 439.) The controlling question requiring determination is the sufficiency of the evidence to support the trial court's finding and conclusion that the contract called for the payment of costs. The evidence hereinabove epitomized amply supports the essential finding and, hence, requires affirmance. | Appeal would not lie from order denying a motion for new trial. Code Civ Proc, § 963. | Is an order denying a motion for a new trial appealable? | Appeal and error - Memo 43 - PA.docx | R055/00327017-R055-00337018 | SA, Sub | 0.86 | 0 | | | 1 | |
| 11727 | Fendall v. D.C., 16 Ct. Cl. 106 | 132+55 | The act also provided that in case of non-payment of the first installment in thirty days after the notice the board of public works should issue a certificate of assessment against the property, bearing interest at the rate of ten per cent, per annum, for the amount of all the installments, payable in one, two, three, and four years, respectively, from the time of issue. It further provided that a duly enrolled or certificate should be prima facie evidence that the proceedings had been regular; ... application of the Insider certificate of said certificates, proceed to sell the property against which the assessment certificate should exist. | Congress created a territorial government for the District of Columbia, and authorized it to make assessments for sewers upon the property adjoining. A tax, therefore, was levied upon property, for this purpose by the territorial government, and, in advance of its collection, the board of public works issued certificates of indebtedness, secured by the assessments. These were reserved by third persons for value, and, while thus outstanding, the government abolished the government, and prohibited the collection of assessments; and thencewith conferred jurisdiction upon the court of claims to entertain actions for the settlement of all outstanding claims. Held, that the holders of these certificates were entitled to judgments for their amounts, not, however, in money, but in 3.65 bonds, as specified in the act. | What is the interest rate on certificate of assessment? | 01875.4.docx | LEGALEASE 00129032-LEGALEASE 00129033 | Condensed, SA, Sub 0.2 | 0 | | | | 1 |
| 11728 | Adzima v. State, 350 So. 2d 674 1982 | | Appellant further contends that the sentence between the allegation in Count I and the proof presented at trial represents reversible error. Count I alleged burglary of a structure which was the property of Jim Fisher. Testimony revealed that Fisher was branch manager of the office in which he owned the property, not the actual owner of the property. The record shown to make thus, is a bunch manager - fisher was more than a mere employee. He was the individual responsible for the custody of the stolen items. It is well established that ... the meaning of ownership varies with the offense. Burglary is not a disturbance to title, but to the habitable security. Therefore, in burglary, ownership by any means any possession which is significant against the burglar. | Burglary is not a disturbance to title but rather to the habitable security; therefore, in burglary, ownership means any possession which is rightful as against burglars. | Is burglary a disturbance to habitable security? | 01322.docx | LEGALEASE 00129441-LEGALEASE 00129442 | Condensed, SA | 0.77 | 0 | 1 | | | |
| 11729 | Union Bank & Tr. Co. of Los Angeles v. Los Angeles Cty., 2 Cal. App. 3d 600 | 110P+230 | As previously stated, the county clerk is by law made ex officio the clerk of the superior court of the county of California in his particular county. Where a public officer is declared by law to be virtual of his office to be also the incumbent of another office, the two offices are as distinct as though occupied by different persons. People v. Edwards, 9 Cal. 286; People v. Durick, 20 Cal. 94; Lathrop v. Brittain, 30 Cal. 680; People v. Kelsey, 34 Cal. 470; People v. Ross, 38 Cal. 76; Swartwout v. Attorney General, 76 Cal. 133 [18 P. 138]; State Board of Education, 140 Cal. 353, [73 P. 1050]; Morris v. Board of Supervisors, 31 Cal. App. 364, [160 P. 782]; ... 528, 535, 587 P. 264. Each of several departments of the superior court in a county is a court, and the clerk of each department is a clerk of that court. Kalter v. Somler, 40 Cal. App. 315, 319 [180 P. 663]. The distinction being drawn are in general to serve the court's convenience for administrative purposes, but do not derogate from the fundamental unity of the court. ... Upon admission of each attorney at law demonstrate the existence he objects to taxes imposed physically located by the clerk of the court subject to the order of court for its subsequent disposition. Section 1952 of the same Code, added at 1935 c 393, provides for depositing of money with the county in authorizing the court to order destruction or other disposition of any exhibits, court and other instruments, filed in evidence in the trial of a court action, where such subject remains "in the custody of the court" for a certain period. It is a well known rule that property or funds in the legal custody of the court is not seized on writ, subject to attachment, in the hands of the party officer in his character of an executive of that officer to whom this power was given. | Where public officer is ex officio incumbent of another public office, such offices are as distinct as though occupied by different persons. | Is the county clerk the ex officio clerk of the superior court? | 01305.docx | LEGALEASE 00129571-LEGALEASE 00129572 | Condensed, SA | 0.96 | 1 | 0 | | | |
| 11730 | Willson v. Ondracek, 443 Md. 177 | 241+230(10) | The Court of Special Appeals reasoned that a plaintiff who files a simple notice of dismissal before the defendant has answered the complaint. After an answer has been filed, the plaintiff can accomplish a voluntary dismissal only by stipulation or leave of the court's permission. This case turns on whether it makes a difference that the plaintiff who chose in this case was entitled to a voluntary dismissal, however the defendant had already answered the complaint. As opposed to the plaintiff's motion for voluntary dismissal. We hold that it does not and that the savings provision does not apply to any case in which there has been a voluntary dismissal | Pursuant to statutory savings clause for malpractice actions ... if a claimant commences a medical malpractice claim within the period of limitations and the claim is dismissed without prejudice for failure to file an expert report, the claimant has 60 days from the entry of the order to file the same cause against the same parties, even if the statute of limitations has otherwise run in the interim, but this savings provision does not apply when there is a voluntary dismissal by the plaintiff; statutory savings clause applies "only" when the plaintiff has been dismissed for failure to file an expert report. West's Ann.Md.Code, Courts and Judicial Proceedings, § 5-3 2A:04(b)(3), 5-119(a)(2), (b). | Can a plaintiff voluntarily dismiss the action once, without prejudice at any time prior to the commencement of trial? | 00008.docx | LEGALEASE 00135444-LEGALEASE 00135445 | SA, Sub | 0.03 | 0 | | | 1 | |

3503

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 18731 | Skipard Realty Co. v. United Dixie Stores Co., 199 La. 211 | 307A+501 | Thirdly, it is argued that the suit brought by plaintiff against the defendant in indebe had interrupted the running of prescription. As we have stated, plaintiff took a voluntary non-suit in that case; and it was held in Dunn et al. v. Young, 35 La. Ann. 709, that "There exists no essential difference between a discontinuance and a voluntary non-suit. A suit to which plaintiff is non-suited, or nonsuit of which is caused, does not interrupt prescription, whatever the intention may appear to the contrary. A voluntary non-suit is equivalent to an abandonment. R.C.C. 3485; Generous v. Bray, 9 La. Ann. 484; Quintin v. Gibson, 6 La. Ann. 484." | There exists no essential difference between a "discontinuance" and a "voluntary nonsuit." | "Does there exist any essential difference between discontinuance" and a "voluntary nonsuit"? | 026233.docx | LEGALEASE-00129326 – LEGALEASE-00129329 | Condensed, SA | 0.85 | 0 | 1 | | 1 | |
| 18732 | Wilkens v. Watson, 9 Haw. 189 | 307A+501 | "Counsel for Mendonca contends that the rights of the parties having been fixed by the decree, a discontinuance of the suit by some of the plaintiffs is not allowable. This contention is not sound. A discontinuance would result in injury to any of the parties, it is not allowable. In Cook's cit. in Franklin, 29 N. L. J. 298, it was held that where both parties to an action and each has an interest in the verdict, the court will not grant leave to discontinue against objections. In Sweere vs. McDonHell, 10 Wis. 551, held that plaintiff had gone against plaintiff and leave to plaintiff to dismiss was refused." | When a discontinuance of such will result in injury to any of the parties, it is not allowable, and where each of parties has an interest in the verdict, court will not grant leave to discontinue against objections. | "When a discontinuance of a suit will result in injury to any of the parties, is it allowable?" | 026239.docx | LEGALEASE-00129453 – LEGALEASE-00129454 | Condensed, SA | 0.64 | 0 | 0 | | 1 | |
| 18733 | Damp v. Town of Dane, 33 Wis. 430 | 307A+501 | As a rule, the plaintiff had an undoubted right to discontinue his action, and the court ordered discontinued upon his suggestion contained in the motion to effect that costs. There was therefore no error in the portion of the order. McCurdy v. Baughman, 43 Wis. 574. | As a rule, the plaintiff in an action has an undoubted right to discontinue it. | "As a rule, does the plaintiff in an action have an undoubted right to discontinue it?" | 026317.docx | LEGALEASE-00129794 – LEGALEASE-00129795 | Condensed, SA, Sub | 0.69 | 0 | | | | 1 |
| 18734 | Fox v. Stanley J. How & Assoc., 309 N.W.2d 520 | 30+1524 | While we recognize a trial court's inherent power to enforce pre-trial orders by appropriate sanctions, see Mumm v. LeMars Mutual Ins. Co., 283 N.W.2d 829, 844 (Iowa 1979), we find the sanction in this case is inappropriate for the defendant's own conduct. Defendant requested the continuance of the expert's deposition. The plaintiffs were obligated to inform defendant of updated information pursuant to Iowa R.Civ.P. 125(a)(2). When defendant further disputed the expert to be shown after the discovery deadline, this action was contrary to the pre-trial order provision. Upon eliciting unfavorable evidence, defendant sought to prohibit what it had observed. Defendant did not seek the protection before the second deposition, nor did it ask for a continuance following the deposition. Under the particular circumstances in not a viable contention. See Meyers v. Permpack Woods Home Ownership Assoc., 1539 2d 694, 994 NSS (3d Cir. 1977). | Although trial courts have power and discretion to impose sanctions to enforce pre-trial orders by appropriate sanctions, such power is tempered by the particular nature of that discretion and its conferee exercise to reasonable limits. | "Does a trial court have the power to enforce its own pre-trial order which is designed to prevent surprise evidence?" | 016344.docx | LEGALEASE-00130060 – LEGALEASE-00130061 | SA, Sub | 0.77 | 0 | | 1 | | 1 |
| 18735 | Estate of Jablonske, 83 Wash. App. 206 | 307A+742.1 | As Dr. Fenn contends, the pretrial depositions of opposing expert witnesses are necessary for a party's trial preparation. As the trial court stated, the purpose of pretrial scheduling orders is to permit orderly discovery and pretrial preparation. However, the least onerous sanction adequate to address Dr. Fenn's objections to the substitution was a continuance of the June 30 trial date. The continuance could have been coupled with monetary sanctions, as needed, to compensate for any additional costs and expenses incurred by the defense. See e.g. Barci v. Intalco Aluminum Corp., 11 Wash.App. 342, 349, 522 P.2d 1159, review denied, 84 Wash.2d 1012 (1974). In fact, Dr. Fenn's motion to strike Dr. Bigelow's testimony included a request, as alternative relief, that the trial date be stricken. | Purpose of pretrial scheduling orders is to permit orderly discovery and pretrial preparation. | What is the purpose of pretrial scheduling? | 016465.docx | LEGALEASE-00130052 – LEGALEASE-00130055 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |
| 18736 | Seutloctz v. Manytwala, 210 So.3d 1007 | 307A+45 | The healthcare also argue that summary judgment is found of a sanction for failing to obey the scheduling order. However, "our trial judges are afforded considerable discretion in managing the oral discovery process in their courts, including with respect to setting out various deadlines to ensure orderly pre-trial preparation resulting in timely disposition of the cases." Revere, 86.1 So.2d at 1042 [citation]. "Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so it their own peril." | Granting summary judgment in favor of doctor in medical malpractice action after court both denied patient's motion to extend scheduling order's deadline for designating expert witnesses and struck affidavit of patient's medical expert was not too harsh of a sanction for failing to obey scheduling order; trial court had right to expect compliance with scheduling order. Rules Civ.Proc., Rules 26(1), 56. | "Does trial judges have considerable discretion in managing the pre-trial discovery process in their courts?" | Pretrial Procedure - Memo #1545 - C - SA.docx | LEGALEASE-00039919 – LEGALEASE-00039920 | Condensed, SA, Sub | 0.38 | 0 | 1 | | 1 | 1 |
| 18737 | Walton v. Town of Jena, 284 So. 3d 643 | 413+1 | From the multiplicity history as revealed by the record, and from the application of the appropriate jurisprudence, it is concluded that any disability which may affect the plaintiff is causally unrelated to any work-connected accident. In reaching our decision, we are not forgetful of the paternalistic nature and intent of the Louisiana Workmen's Compensation Law. We are aware of the plaintiff's testimony as well as that given by his wife and his wife's aunt. It is also recognized that veracity and credibility of a claimant are of paramount importance where an issue in a compensation case is (deriving largely on entirely on claimant's testimony. Wilson v. Service Painting Company of Beaumont, 212 So.2d 87 & 679 (La.App.1st Cir. 1971). | Is Workmen's compensation Law is paternalistic in nature and intent? | "Is Workmen's compensation law paternalistic in nature and intent?" | 047822.docx | LEGALEASE-00183141 – LEGALEASE-00183142 | Condensed, SA | 0.88 | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18738 | Jones v. Regions Bank, 719 F. Supp. 2d 711 | 25T+143 | To determine whether parties should be compelled to arbitrate involves a two-step inquiry. Webb v. Investacorp, Inc., 89 F.3d 252, 257"58 (5th Cir.1996). First, the court must determine whether the parties agreed to arbitrate the dispute at issue. Id. at 258. This determination involves two additional considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Id. Arbitration clauses that apply to "all claims, demands, disputes or controversies of every kind or nature" are deemed to be very broad and cover all possible claims that might arise. See Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp., 804 F.2d 338, 342 (5th Cir.1986); In re Sedco, Inc., 767 F.2d 1140, 1145 (5th Cir.1985) ("[i]t is difficult to imagine broader general language than ... "any dispute" ") (quoting Caribbean S.S. Co. v. Sonmez Denizcilik Ve Ticaret A.S., 598 F.2d 1264, 1266 (2nd Cir.1979)). Any doubt concerning the scope of an arbitration clause must be resolved in favor of coverage. Harvey v. Joyce, 199 F.3d 790, 793 (5th Cir.2000); City of Meridian v. Algernon Blair, Inc., 721 F.2d 525, 527 (5th Cir.1983); Mississippi Ins. Managers, Inc. v. Providence Washington Ins. Co., 72 F.Supp.2d 689, 695 (S.D.Miss.1999). | Borrower and bank agreed to arbitrate disputes arising from loan agreement, for purposes of compelling arbitration of borrower's claims for breach of contract, breach of duty of good faith and fair dealing, and fraud against bank and its debt protection program administrator; agreement expressly provided for arbitration of any claim arising out of, arising from, or relating in any way to agreement, including issue of arbitrability, and extended those provisions to bank's contractors, such as program administrator. 9 U.S.C.A. S 2. | "Are arbitration clauses that contain phrases such as, any controversy, claim, counterclaim, defense, dispute, difference or misunderstanding arising out of or relating to this agreement or breach thereof, deemed to be very broad and cover all possible claims that might arise?" | 007411.docx | LEGALEASE-00131372-LEGALEASE-00131373 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 18739 | Strauss v. Silvercup Bakers, 353 F.2d 555 | 25T+143 | It is clear that a provision must be specific if it is to exclude a claim from arbitration, but it is not clear how specific the provision must be in order to have this effect. It is this area of uncertainty in the law that underlies the present appeal. The Supreme Court in the Warrier & Gulf case, supra, held that a dispute over whether work could be subcontracted by the employer was a dispute 'as to the meaning and application of the provisions' of the collective bargaining agreement, within the arbitration clause of that agreement, and was not excluded from arbitration by a clause excluding from arbitration matters 'strictly a function of management.' The Court pointed to the federal policy underlying support of labor arbitration as a means of preserving industrial stability, and said:An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. * * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator, 363 U.S. at 582-583, 584-585, 80 S.Ct. at 1354. | A provision must be specific if it is to exclude a claim from arbitration. | Does a provision excluding a claim from arbitration have to be specific? | Alternative Dispute Resolution - Memo 557 - RK.docx | ROSS-003285609-ROSS-003285610 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 18740 | McCormick v. United States, 500 U.S. 257 | 164T+24(5) | This is not to say that it is impossible for an elected official to commit extortion in the course of financing an election campaign. Political contributions are of course vulnerable if induced by the use of force, violence, or fear. The receipt of such contributions is also vulnerable under the Act as having been taken under color of official right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking. This is the receipt of money by an elected official under color of official right within the meaning of the Hobbs Act. | Quid pro quo is necessary for conviction under Hobbs Act when official receives campaign contribution, regardless of whether it is legitimate contribution; property is "extorted" in violation of Hobbs Act only when official asserts that his official conduct will be controlled by terms of promise or undertaking. 18 U.S.C.A. S 1951. | Is a campaign contribution a bribe? | 011077.docx | LEGALEASE-00130370-LEGALEASE-00130371 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 18741 | United States v. Park, 649 F.3d 1175 | 350H+1285 | We applied similar reasoning in United States v. Becker, 919 F.2d 568, 573 (9th Cir.1990), where we held that "first-degree burglary under California law" constituted a "crime of violence" under a prior version of the Guidelines. Examining the elements of California first-degree burglary, we explained:Any time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension. | Defendant's prior conviction for burglary under California's first-degree burglary statute involved conduct that presented serious potential risk of physical injury to another, as required to qualify as "crime of violence" under residual clause of career offender sentencing guideline, even though statute did not require unlawful entry in same sense contemplated by Sentencing Guidelines, since absence of unlawful entry did not, without more, change fact that committing offense presented serious potential risk of injury to dwelling's lawful occupants. U.S.S.G. SS 2K2.1(a), 4B1.2(a), 18 U.S.C.A.; West's Ann.Cal.Penal Code S 459. | Is burglary a crime of violence? | 012928.docx | LEGALEASE-00131296-LEGALEASE-00131297 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 18742 | United States v. Cloud, 197 F. Supp. 3d 1263 | 350H+1285 | In 2004, Washington State defined second-degree burglary as "[a] person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030 (1989). Similar to residential burglary, a "building" can include a fenced area, a railway car, or cargo container. RCW 9A.04.110(5) (1988). As the statute criminalizes unlawful entry into non-building structures such as a railway car, Washington State second-degree burglary is not a categorical match with "generic" burglary as defined by the Supreme Court. See Taylor, 495 U.S. at 598, 110 S.Ct. 2143. Further, as a jury is only required to unanimously conclude that a defendant entered or remained unlawfully in a "building," and does not have to agree on the specific type of "building," Washington State second-degree burglary is indivisible under the Descamps second step. | Defendant's prior Washington conviction for residential burglary was not a "crime of violence" under Sentencing Guidelines, and thus could not provide basis for enhancement to his sentence for possession of stolen firearms; Washington State definition of residential burglary was not a categorical match for generic burglary and was indivisible, as it included burglarizing a fenced area that doubled as a dwelling, and it contained alternative means of committing residential burglary, as opposed to alternative elements, as a conviction required jury to find only that defendant entered or remained unlawfully in a dwelling, but jury did not have to agree on the specific type of dwelling or building burglarized. Wash. Rev. Code Ann. SS 9A.04.110(5), 9A.04.110(7), 9A.52.025(1); U.S.S.G. SS 2K2.1(a)(2), 4B1.2(a)(2). | What is burglary in the second degree? | Burglary - Memo 37 - RK.docx | ROSS-003314345-ROSS-003314346 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 18743 | Mellons v. State, 560 S.W.2d 634 | 67+2 | The fact that no goods were actually stolen from the truck is insignificant because, "Consummation of the intent to steal is not necessary to complete the crime of burglary." Petree v. State, 530 S.W.2d 90, 94 (Tenn.Cr.App.1975). | Consummation of intent to steal is not necessary to complete crime of burglary. | Is consummation of intent necessary for burglary? | Burglary - Memo 75 - RK.docx | ROSS-003327740-ROSS-003327741 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | |
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 1E744 | Stegeman v. Tunnell, 509 P.2d 1022 | 79x6 | Even though, under the Alabama judicial scheme, deputy circuit clerk did not stand in a confidential relationship to policy maker or to policy making process, deputy circuit clerk fell within the "confidential employee" exception to the general policy option of patronage dismissals where, under Alabama statutes, deputy clerks were empowered to conduct all business which the circuit clerk was authorized to conduct and where the clerk was statutorily subject to civil liability and fines for failure to perform statutory duties, thus making it necessary for the circuit clerk to select a trusted employee in whom he had trust and confidence and from whom he can expect undivided loyalty. Code of Ala.1975, §§ 12-17-93,12-17-93(1), 12-17-94, 12-17-96(b). | In contrast to the broad duties and responsibilities of the administrative director of the courts, the authority and duties of the office of Circuit Clerk are specifically delineated by statute. Although elected under the Alabama constitution, Circuit Clerks are employed and subject to the State of Alabama. Id. s 12-17-80. The authority of the Circuit Clerk is found in section 12-17-93 which provides that the circuit clerk shall have authority (1) To administer oaths and take acknowledgments and affidavits in all cases in which the authority to administer such oath or take such affidavit is not conferred upon some other officer. (2) To appoint deputies, with full power to transact all business of such clerks, such deputies first taking an oath to support the constitution and laws of this state and faithfully to discharge the duties of deputy clerks of the court for which they act.(3) To receive the amount of any judgment entered in the courts of which they are clerks, either before or after the issuance of execution thereon.(4) To exercise such other powers as are, or may be, conferred by law, including such duties as may be prescribed by order of the supreme court of Alabama Id. s 12-17-93 (1975) (emphasis added). | Does a circuit court clerk have the power to transact all the business of a deputy clerk? | D13990.docx | LEGALEASE-00131205-LEGALEASE-00131206 | Condensed, SA, Sub 0.39 | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 1E745 | Hill Op. Tel. Co. v. Taylor, 336 N.W. 108 | 307A+501 | Right to a voluntary nonsuit rests solely with plaintiff's. Rules Civ. Proc., Rule 41(a). | Rule 41(b), however, does not apply to the facts of this case for two reasons. First, plaintiffs did not move to modify or vacate Respondent's order. Second, the relevant pleadings, which included plaintiffs' motion for voluntary dismissal as to one Sorema and defendant's order granting such motion, clearly demonstrate that the action in its entirety was not dismissed. Moreover, under Rule 41(a), the right to a voluntary nonsuit rests solely with plaintiffs. See Walker v. Rucker, 393 Ark. 46, 97 S.W.2d 442 (1936). Respondent was thus limited to the relief requested by plaintiffs, who clearly and unequivocally asked Respondent to dismiss only Joe Staley 7+'s claim; hence, the February 6, 1996 order must be construed with plaintiffs' January 19, 1996 motion. Accordingly, we hold that Respondent correctly granted plaintiffs' motion, as the clerk erred in a ministerial duty, and that Respondent has jurisdiction to hear this action involving equitable relief. Kelly, 331 Ark. 525, 964 S.W.2d 784. The writ for prohibition is denied. | Does a plaintiff have sole liability of right to a voluntary nonsuit? | Pretrial Procedure - Memo #1221 - C - DK.docx | RCSS-00238608-RCSS-00238660 | Order, SA | 0.93 | 1 | 0 | | 1 | 1 |
| 1E746 | Palacios v. Winters, 26 S.W.3d 734 | 307A+747.1 | Pretrial order must be in writing to be effective. Vernon's Ann.Texas Rules. Must a pretrial order be in writing to be effective? | By his first issue, Palacios contends that he is entitled to a new trial because the trial court erred in not utilizing the rules of civil procedure provide that a trial court may, when appropriate, conduct a pretrial conference to resolve, inter alia, administrative issues such as setting a trial date. See Tex. R. Civ. P. 166; cf. Ford Motor Co. v. Downey, 192 S.W.2d 445, 251 (Tex.App. Houston [1st Dist.] 1991, orig. proceeding). Most cases hold however, that "the court shall make an order that recites the action taken at the pretrial conference." Tex. R. Civ. P. 166 (emphasis added). The order must be in writing to be effective 311 C. Tex.Juris 813 S.W.2d 24 156, 132 (Tex.App. Houston [1st Dist.] 1993, writ denied). | Must a pretrial order be in writing to be effective? | D16057.docx | LEGALEASE-00131046-LEGALEASE-00131047 | Condensed, SA, Sub 0.87 | 0.87 | | 1 | | 1 | 1 |
| 1E747 | Unruh v. Purina Mills, 289 Kan. 1185 | 307A+749.1 | The pretrial order supersedes any pleadings and has the effect of amending the pleadings to conform to it. West's K.S.A. 60-216(e). | Under notice pleading, the petition is not intended to govern the entire course of the case. Rather, the pretrial order is the crucial document in setting "the legal issues and theories on which the case will be decided." Hallay v. Bandux, 271 Kan. 652, 669 57, 34 P.3d 141 (2001). The pretrial conference order, filed June 14, 2006, stated as the first issue of fact: "Did the defendant engage in deceptive acts or practices under the Kansas Consumer Protection Act?" The pretrial order supersedes any pleadings and has the effect of amending the pleadings to conform to it. K.S.A.2008 Supp. 60-216(e); Bob Eldridge Constr. Co. v. Pioneer Materials, Inc. 235 Kan. 599, 606, 684 P.2d 355 (1984). Because the pretrial order expressed supplied defendant's opposition to that state of California, Inc., 40 Kan.App.2d 573, 578, 194 P.3d 81 (2008). | Does the pretrial order supersede the pleadings? | D24884.docx | LEGALEASE-00130123-LEGALEASE-00130124 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | 1 |
| 1E748 | State v. Cream, 168 Ga. App. 345 | 307A+742.1 | The purpose of both the pleadings and the pretrial order is to define the issues for trial. O.C.G.A. § 9-11-16. | The "pretrial order" referred to in OCGA § 9-11-16(a) [Code Ann. - § ][a (Code Ann. " ""§ 81A-116), which considers, inter alia (1) The simplification of the issues; (2) The necessity or desirability of amendments to the pleadings; - and (3) Such other matters as may aid in the disposition of the action. See Carreras v. Austell Box Board Corp., 154 Ga.App. 135, 138, 267 S.E.2d 745. The purpose of both the pleading and the pretrial order is to define the issues for trial. In the instant case, although the pre-trial order had not been issued as such, a hearing was held that had been held on defendant. We held the pretrial conference to determine the issues and contentions of the parties. It was during this conference that the contentions of the State conflicted with the pleadings of its petition. | What is the purpose of the pleadings and the pretrial order? | D7031.docx | LEGALEASE-00130964-LEGALEASE-00130965 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | 1 |

Appendix D

3306

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18749 | Clean Water Coal. v. The M Resort, 127 Nev. 301 | 371+2001 | The Legislature is not permitted to pass local or special laws "[f]or the assessment and collection of taxes for state, county, and township purposes." Nev. Const. art. 4, " 20. An exaction of money for the purpose of generating revenue is a tax. Douglas Co. Contractors v. Douglas Co., 112 Nev. 1452, 1457, 929 P.2d 253, 256 (1996); State v. Boyd, 27 Nev. 249, 256, 74 P. 654, 655 (1903); see also Hawaii Insurers Council v. Lingle, 120 Hawai"i 51, 201 P.3d 564 (2008); 71 Am.Jur.2d State and Local Taxation " 13 (2001) (explaining that a charge is a tax if its purpose is to raise revenue). While a tax is compulsory and it entitles the taxpayer to receive nothing except the governmental rights enjoyed by all citizens, a user fee is optional and applies to a specific charge for the use of publicly provided services. See U.S. v. City of Huntington, W.Va., 999 F.2d 71, 74 (4th Cir.1993) (explaining that "[u]ser fees are payments given in return for a government-provided benefit"; while taxes are " "enforced contribution[s] for the support of government" " (alteration in original) (quoting United States v. La Franca, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551 (1931))); City of Gary, Ind. v. Indiana Bell Tel., 732 N.E.2d 149, 156 (Ind.2000). | An exaction of money for the purpose of generating revenue is a "tax." | What is an exaction of money for the purpose of generating revenue termed as? | 044720.docx | LEGALEASE-00130845-LEGALEASE-00130846 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 18750 | Madden v. City of Iowa City, 848 N.W.2d 40 | 371+2001 | Our cases indicate a tax is a general revenue measure without benefits conferred. Kragnes, 714 N.W.2d at 639; Home Builders, 644 N.W.2d at 346. We do not believe an ordinance that imposes a liability on a property owner for injuries arising from sidewalk defects amounts to a tax. No funds go into the City's coffers for general purposes. Taxpayers are not being charged for services that have no benefit to them. Instead, the ordinance imposes a duty on abutting landowners and makes them responsible for personal injuries that occur from sidewalk defects that exist as a result of their breach of a duty established by the city ordinance. We do not think this case can be shoehorned into our taxation doctrine. Like the majority of cases from other jurisdictions, we regard the ordinance as a police regulation not unlike building or housing codes or protections against public and private nuisances. We therefore reject the State's challenge to the Iowa City ordinance on the ground that it imposes an unauthorized tax. | A "tax" is a general revenue measure without benefits conferred. | Is tax a general revenue measure? | 045021.docx | LEGALEASE-00130550-LEGALEASE-00130551 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 18751 | Madden v. City of Iowa City, 848 N.W.2d 40 | 371+2001 | Our cases indicate a tax is a general revenue measure without benefits conferred. Kragnes, 714 N.W.2d at 639; Home Builders, 644 N.W.2d at 346. We do not believe an ordinance that imposesa liability on a property owner for injuries arising from sidewalk defects amounts to a tax. No funds go into the City's coffers for general purposes. Taxpayers are not being charged for services that have no benefit to them. Instead, the ordinance imposes a duty on abutting landowners and makes them responsible for personal injuries that occur from sidewalk defects that exist as a result of their breach of a duty established by the city ordinance. We do not think this case can be shoehorned into our taxation doctrine. Like the majority of cases from other jurisdictions, we regard the ordinance as a police regulation not unlike building or housing codes or protections against public and private nuisances. We therefore reject the State's challenge to the Iowa City ordinance on the ground that it imposes an unauthorized tax. | A "tax" is a general revenue measure without benefits conferred. | Is tax conferred without benefits? | Taxation - Memo # 45 - C - KBM.docx | ROSS-003288502-ROSS-003288503 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 18752 | Chisolm v. United States, 49 Fed. Cl. 614 | 34+3(1) | Justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." See Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Review of personnel decisions is appropriate only where the Secretary's discretion is limited, and Congress has delineated tests and standards against which to measure the Secretary's conduct. See Murphy v. United States, 993 F.2d 871, 873 (1993). Procedural matters involved in military decisions are justiciable; merits of the decision are not.See Adkins v. United States, 68 F.3d 1317, 1322"23 (Fed.Cir.1995). Plaintiff has alleged statutory and regulatory violations in his complaint. This Court finds plaintiff's claims justiciable. | Procedural matters involved in military decisions are justiciable; merits of the decision are not. | Are the merits of a military decision justiciable? | 008941.docx | LEGALEASE-00132465-LEGALEASE-00132466 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 18753 | United States v. Kemp, 500 F.3d 257 | 63+1(1) | Moreover, we agree with the government that the District Court's instruction to the jury that it could convict upon finding a "stream of benefits" was legally correct. The key to whether a gift constitutes a bribe is whether the parties intended for the benefit to be made in exchange for some official action; the government need not prove that each gift was provided with the intent to prompt a specific official act. See United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir.1998). Rather, "[t]he quid pro quo requirement is satisfied so long as the evidence shows a "course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." " Id. Thus, "payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf." Id.; see also United States v. Sawyer, 85 F.3d 713, 730 (1st Cir.1996) (stating that "a person with continuing and long-term interests before an official might engage in a pattern of repeated, intentional gratuity offenses in order to coax ongoing favorable official action in derogation of the public's right to impartial official services"). While the form and number of gifts may vary, the gifts still constitute a bribe as long as the essential intent"a specific intent to give or receive something of value in exchange for an official act"exists. This theory was accurately and entirely presented to the jury in the jury instructions, and accordingly, we reject Holck and Umbrell's argument that the instructions as proffered were inadequate. | Key to whether a gift constitutes a bribe is whether the parties intended for the benefit to be made in exchange for some official action; government need not prove that each gift was provided with the intent to prompt a specific official act. | When does a gift constitute a bribe? | 011163.docx | LEGALEASE-00132505-LEGALEASE-00132506 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18754 | People v. Walters, 249 Cal. App. 2d 547 | 67+6(2) | The slightest entry is sufficient to constitute the crime of burglary, if it be with felonious intent. It is urged that this is insufficient entry is made to warrant a conviction of burglary when any part of the body of the defendant is inside the structure. (People v. Failla, 64 Cal.2d 560, 569, 51 Cal.Rptr. 103, 109, 414 P.2d 39, 45; People v. Allison, 200 Cal. 404, 407-408, 253 P. 318; People v. Massey, 196 Cal.App.2d 230, 236, 16 Cal.Rptr. 402.) Moreover, it has been established that the entry need not be any part of the body, but that an entry may be made by an instrument, where the instrument is inserted for the purpose of committing the felony. (Clark and Marshall, Law of Crimes (6th ed. 1958) §§ 11.3-11.4, 886, 887; Walker v. State, 52 Ala. 376, 63 Ala. 42; Moore v. State (Crim.App.) 430 S.W.2d 194; 46 L.R.A. 312.) In the instant case it is undisputed that the grill on the ceiling of the market's restaurant had been broken and the grating, bent down, while the rope which had been inserted through the vent also extended well into the room. The presence of these items on the market's interior and the presence of the rope which came nearby sustain the inference that hands and tools manipulated by appellants effected an entry which constitutes the crime of burglary. (1 Witkin, Cal Crimes, Crimes Against Property, § 456(b), § 814-819.) The felonious intent to commit theft may be inferred from the unlawful entry alone. (People v. Massey, 196 Cal.App.2d 230, 16 Cal.Rptr. 402; People v. Soto, 53 Cal.2d 558, 5 Cal.Rptr. 66, 352 P.2d 323.) The lateness of the hour and the presence in the area of instruments necessarily used by burglars strongly implicate appellants in the crime of burglary with intent to commit theft. | The slightest entry is sufficient to constitute crime of burglary, if it be with felonious intent. | Is burglary a crime involving entry? | Burglary - Memo 70 - IK.docx | ROSS.00037223 ROSS-00337223 | Condensed, SA | 0.94 | | | | 1 | |
| 18755 | Cordor Am. v. Am. Power Drev., 124 F.R.D. 229 | 170A+636 | Rule 9(b) must also be read in conjunction with Fed.R.Civ.P. 8(a), Rager v. Lehman Bros., Adv-Leski, Inc., 604 F.Supp. 222, 225 L.S.Dist.N84] (Rule1), C.J.) Inconsistency, see also FraudDev Inc. (5.0 Oho 1986) (Peter, Sr. J.), in order to satisfy the requirements of Rule 9(b), the complaint must give the defendant notice of the nature of the claims against him. Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir. 1988) (complaint must only plead the circumstances of the fraud with particularity, not the evidence of fraud. Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir.), cert. denied, 113 S.Ct. 1233 (1992). The complaint need only plead the circumstances of the fraud with particularity, not the evidence. See American Nurses' Assn. v. Illinois, 783 F.2d 716, 727 (7th Cir. 1986) (Rule 9(b) does not require evidence); see also Rager, 604 F.Supp. at 225. At a minimum, plaintiff must allege the time, place and content of the misrepresentations upon which he relied, as well as the nature of the person making the misrepresentation. Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir. 1984) (citations omitted); Rager, 604 F.Supp. at 225. | In order to satisfy requirements of rule requiring that fraud be pled with particularity, complaint must give defendant notice of nature of claims against him, plaintiff need only plead circumstances of the fraud with particularity, not the evidence of fraud. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A. | Must fraud be plead with particularity? | 02322.docx | LEGALEASE-00132290-LEGALEASE-00132291 | Condensed, SA, Sub 0.7 | | | | 1 | 1 |
| 18756 | State v. Doster, 455 S.W.2d 471 | 110+101.5(1) | This conclusion is not altered by the legal/equitable principle enunciated in E.O.W. and Webb v. Warchalla, 275 S.W.2d 249 (Mo. bane 2009). Once a case has been voluntarily dismissed, however, the circuit court may retain jurisdiction over "all cases" subsequent to that case and act upon a matter formerly in case whether the court's subject-matter jurisdiction over the person, remains, however, the similarity ends."112a, Appellant's appendix and Exhibits which the court filed that are beyond the realm of private purposes are taxes. See People ex rel. the Detroit & H. R. Co. v. Salem Twp. Board, 20 Mich. 452, 478; 4 Am Rep. 400 (1870). Revenue from taxes, therefore, must have for benefits that will inure to the person or group assessed. Knott v. City of Flint, 363 Mich. 483, 499, 109 N.W.2d 908 (1961); Flodney v. City of Plymouth, 268 Mich. 447, 451, 306 N.W.2d 846 (1961). | Trial court had no jurisdiction to enter a dismissal of a criminal case with prejudice after prosecutor entered no nol loeld prosequi at a hearing before the trial court. And the trial court's order was a nullity. Mo. Const. art. 5, § 14, Mo. Ann. Stat. § 56.087(1, 2). | "Once a case is voluntarily dismissed, is there any case or matter?" | Pretrial Procedures - Memo # 2292 - C - SK.docx | ROSS-00331469 ROSS-00331470 | Condensed, SA, Sub 0.57 | | | | 1 | |
| 18757 | Dukeshere Farms v. Ball, 371+2001 | 371+2001 | As correctly stated by Judge William S. White, Berrien Circuit Court, this opinion in the instant case, "Taxes and assessments do have a number of elements in common. Both are exactions or involuntary contributions of money the collection of which is sanctioned by law and enforceable by the courts. Here, however, the similarity ends."112a, Appellant's Appendix and Exhibits which court filed are beyond the realm of private purposes are taxes. See People ex rel. the Detroit & H. R. Co. v. Salem Twp. Board, 20 Mich. 452, 478; 4 Am Rep. 400 (1870). Revenue from taxes, therefore, must have for benefits that will inure to the person or group assessed. Knott v. City of Flint, 363 Mich. 483, 499, 109 N.W.2d 908 (1961); Flodney v. City of Plymouth, 268 Mich. 447, 451, 306 N.W.2d 846 (1961). | Taxes are exactions or involuntary contributions of money which are sanctioned by law and enforceable by the courts and which are imposed primarily for public rather than private purposes. | Are taxes enforceable by courts? | 04996.docx | LEGALEASE-00132029-LEGALEASE-00132030 | SA, Sub | 0.79 | | | | 1 | |
| 18758 | Reed v. City of New Orleans, 593 So. 2d 36 | 371+2001 | The nature of tax is determined not by its title, but by its incidents, attributes and operational effect. The realities and substance of the tax must be examined, not its form. City of New Orleans v. Scramuzza, supra; City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6 (1956). Roosevelt Hotel Co. v. City of New Orleans, supra; Cigar Store v. McFarland, 363 La. 906, 111 So. 341 (1927). | Nature of tax is determined not by its title, but by its incidents, attributes and operational effect; realities and substance of tax must be examined, not its form. LSA-Const. Art. 6, § 29. | Should the realities and substance of tax be examined rather than its form? | Taxation - Memo # 368 - ROSS00331225-ROSS-00331324. C - EK.docx | ROSS-00331325 ROSS-00331324 | SA, Sub | 0.44 | | | | 1 | |
| 18759 | United States v. Muldoon, 931 F.2d 282 | 63+1(1) | The distinction between bribe and an illegal gratuity is the difference in the intent of the person who gives the bribe. Compare 18 U.S.C. § 201(b) (bribery) with 201(c) (gratuity). The distinction is apparent from the text of the statute. Proof of bribery requires a corrupt intent that is not required for the illegal gratuity. Bribery requires proof that the payer acted corruptly with the specific intent of influencing an official act, influencing a public official to default the payment interest, or to do or omit an act in violation of his official duties. [201(b)(1)(A)-(C)]. The evidence must establish that the payer intended to receive some benefit in return for the payment. In the context of the gratuity, there need not be any demand for or delivery of an official act as the recipient that might have been done without any payment. The proof must show that the payer knew the payment was made for an act past or future that might have been done without any payment. The payer need not specify the exact act to be purchased, but must show that the payer made the gratuity because of the act. See United States v. Brewster, 506 F.2d 62, 72 (D.C.C.1974). Payment of an illegal gratuity is a lesser included offense of bribery within the meaning of Fed.R.Crim.P. 31(c). | Distinction between bribe and illegal gratuity is difference in intent of person who gives bribe; proof of bribery requires corrupt intent which is not required to show illegal gratuity. 18 U.S.C.A. § 201(b), (b)(1)(A)-(C). Fed.Rules Cr.Proc.Rule 31(c), 18 U.S.C.A. | Is it finding of corrupt intent necessary for a conviction of bribery? | 01177.docx | LEGALEASE-00132566-LEGALEASE-00132567 | Condensed, SA | | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 5,029 |
| 18760 | Beck v. Interstate Surveying Co., 429 N.E.2d 264 | 289+194 | Beck also argues that there was insufficient evidence that there was a "co-ownership of a business pursuant to I.C. 23-4-1-6. There was further evidence demonstrating that Beck and Kirk's activities constituted a partnership, which must be construed to be the intent to create a business enterprise, and not just an investment in land. The operation named Beckhaven Estate after Beck. The use of a firm name is evidence of the existence of a partnership. Cook et al. v. Frederick, et al., 1881177 Ind. 636. The intent and the minimum amount needed Beck's approval. The trustee was directed to convey the land in question at the direction of either Beck or Kirk. This established that Beck could participate in the management The lack of involvement in the daily management of the enterprise is not per se indicative of the absence of a partnership. Dibben v. Game Show Placements, Ltd., (1980) Ind.App., 401 N.E.2d 768. An examination of the land development agreement discloses that the trial court should have characterized the activities of Kirk and Beck as a joint venture and not as a partnership. A joint venture differs from a partnership in two or more persons to carry out a single business enterprise for profit. O'Hara v. Architects Hartung and Associate, (1975) 163 Ind.App. 661, 326 N.E.2d 283. Generally, a joint venture is distinguished from a partnership in that a partnership is formed for the general business of a particular kind whereas the joint venture contemplates a single business transaction. 46 Am.Jur.2d Joint Venture s 4 (1969). The characterization of the activities as a partnership or a joint venture will either be voidial for Beck because neither a joint venture nor a partnership can bind the legal operation of the venture. Yeager and Sullivan, Inc. v. Farmers Bank, (1976) Ind.App., 317 N.E.2d 792. | Use of a firm name is evidence of the existence of a partnership. IC 23-4-1-6. | Is the use of a firm name sufficient evidence in determining the existence of a partnership? | Partnership - Memo.292 PK.docx | ROSS-000180580-ROSS-000180586 | SA, Sub | 0.95 | 0 | | | 1 | |
| 18761 | T & G Enterprises v. White, 298 Ga. App. 355 | 307A+750 | "If a claim or issue is omitted from the [pre-trial] order, it is waived." [Citation and punctuation omitted.] Stachura v. Parker, 2 (3) GaApp. 841, 843(1), 453 S.E.2d 483 (1994). The pre-trial order may be deemed modified during trial under certain circumstances, including to conform to evidence admitted at trial without objection. Dept. of Human Resources v. Phillips, 268 Ga. 316, 318(1), 486 S.E.2d 851 (1997). However, even if we could conclude that White's claim should have been expanded beyond the pre-trial order to include information, there is no indication in the record that it did so. | If a claim or issue is omitted from the pretrial order, it is waived. | Does a claim or issue get waived if it is omitted from a pretrial order? | Pretrial Procedure - Memo 1.4821 - C-SB.docx | ROSS-003167784-ROSS-003167787 | Condensed, SA | 0.89 | | 1 | | | |
| 18762 | Dech, Nat. Bank of Chicago v. Cartfin. Co., 53 Ill. App.3d 155 | 393+1(9091) | Handwritten marginal figures relating to date of maturity were not part of instrument and could not be referred to in absence of an ambiguity in note as to due date. | Handwritten marginal figures relating to date of maturity were not part of instrument and could not be referred to in absence of an ambiguity in note as to due date. | Do figures in the margin form a part of the note or instrument? | 010226.docx | LEGALEASE-00133424-LEGALEASE-00133425 | Condensed, SA, Sub | 0.84 | 0 | | 1 | | |
| 18763 | Manitoba v. U.S. Dep't of Def., 1 F.3d 1412 FS | 92k447.5 | Meanwhile, the parties filed cross-motions for summary judgment in the district court. The district court granted Meinhold's motion, finding this discharge unconstitutional under the Equal Protection Clause because the Navy's policy of discharging homosexual servicemembers based on a statement of their sexual orientation was not "narrowly tailored" to achieve its goals." Meinhold v. United States, Dep't of Defense, 808 F.Supp. 1455, 1457 (C.D.Cal. 1993) ("Meinhold I"). The district court also permanently enjoined the Department of Defense from barring enlistment to or discharging any person based on sexual orientation alone. Id. at 1458. | District court did not abuse its discretion in finding that government's position with respect to lawsuit brought by Naval officer challenging his discharge for stating that he was gay was not substantially justified, and that officer was thus entitled to attorney fees under Equal Access to Justice Act (EAJA), where Navy violated its own regulations by discharging officer for statement alone. 28 U.S.C.A. § 2412. | Is the banning of gays and lesbians from the military service unconstitutional under the Equal Protection Clause? | 000424.docx | LEGALEASE-00133828-LEGALEASE-00133829 | Condensed, SA, Sub | 0.36 | | | 1 | | |
| 18764 | Williams v. United States, 54 F. Supp. 1187 | 34+3(1) | Beyond these general protections, a citizen enjoys no constitutionally protected right to enlist in the military. West v. Brown, 558 F.2d 757, 760 (5th Cir. 1977), cert. denied, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978). Given the absence of a constitutional right to enlist, it follows that the Fifth Amendment provides no substantive protection for reenlistment. Cf. Austin v. United States, 206 Ct.Cl. 719 (1975). Where a government benefit fails to attain the level of a constitutionally protected interest, then rational restrictions may be imposed upon these benefits. Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Guidelines establishing permissible height and weight limits relate rationally to the Corps' interest in maintaining a high standard of military preparedness and effectiveness. Since plaintiff enjoys no constitutionally protected right to reenlist in the Marines and because the height and weight regulations are rationally related to legitimate interest of the Corps, its decision to discharge the plaintiff for failure to meet the prescribed weight standards does not infringe on any right protected by the substantive due process provision of the fifth amendment. | A citizen enjoys no constitutionally protected right to join the military. | Is there any constitutional right to join the military? | 000430.docx | LEGALEASE-00133906-LEGALEASE-00133909 | SA, Sub | 0.92 | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18765 | Houston v. McCoy, 351 So. 2d 829 | 83E+413 | A note, made payable to "myself" and endorsed in blank by the maker, is bearer paper which can be negotiated by delivery. R.S. 7:9, R.S. 7:30, First National Bank of Lafayette v. Gaddis, La.App., 250 So.2d 504 (3rd Cir. 1971). "Delivery" is the transfer of possession, actual or constructive from one person to another. R.S. 7:191. In this case the transfer occurred when the decedent gave the note to the plaintiff as a donation inter vivos. A negotiable instrument may be negotiated by gift as well as for value. Succession of McCrocklin, 242 La. 404, 137 So.2d 274 (1962). However, as was recognized by the Trial Judge, the donation inter vivos of a promissory note, an incorporeal movable, must be in authentic form or be subject to penalty of nullity. C.C. Art. 1536. Because the transfer was an attempt to make a manual gift of an incorporeal movable and was not in authentic form the transfer was a nullity and the note was not negotiated. McLaughlin v. Knox, La.App., 224 So.2d 491 (1st Cir. 1969). Therefore, the note was not negotiated and the plaintiff was not a "holder" of the note. | Under Negotiable Instruments Law, a negotiable instrument may be negotiated by gift as well as for value. LSA-R.S. 7:191. | Can negotiable instrument be negotiated by gift as well as for value? | Bills and Notes - Memo 260- VP.docx | ROSS-003303898-ROSS-003303899 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 18766 | Turner v. Wakefield, 481 So. 2d 846 | 8.30E+266 | Appellant cites several cases for the legal proposition that "when a party has full knowledge of all defenses to a note and executes a new note, payable at a future date, he then waives all his defenses and becomes obligated to pay the new note." Tallahatchie Home Bank v. Aldridge, 169 Miss. 597, 604, 153 So. 818 (1934). And where the facts and circumstances are such that a reasonably prudent person, judged by normal standards, would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary diligence, would have lead to foreknowledge of his defenses, then it becomes the duty of the party or parties, to make such inquiry or investigation before executing the renewal note, and if he fails to do so he is as much bound as if he had actual knowledge of all the facts.Gay, et al. v. National Bank, 172 Miss. 681, 160 So.904 (1935); Citizens National Bank v. Waltman, 344 So.2d 725 (Miss.1977). | It is duty of party to make inquiry or investigation before executing renewal note, where facts and circumstances are such that a reasonably prudent person, judged by normal standards, should have made such inquiry, which if pursued with reasonable and ordinary diligence, would have led to full knowledge of his defenses. | Will a party waive all his defenses and becomes obligated to pay the new note when the party has fully knowledge of all defenses to a note and executes a new note payable at a future date? | 009468.docx | LEGALEASE-00134345-LEGALEASE-00134346 | Order, SA | 0.65 | 1 | 0 | 0 | 1 | |
| 18767 | Allamakee Cty. v. Collins Tr., 599 N.W.2d 448 | 200+79.1 | We have recognized an established highway or right of way may be abandoned by the public and its rights lost. Pearson v. City of Guttenberg, 245 N.W.2d 519, 529 (Iowa 1976); see also 2 Byron K. Elliott & William F. Elliott, The Law of Roads and Streets " 1174, at 1670 (4th ed.1926). Similarly, rights under an easement may be lost by abandonment. Polk County v. Brown, 260 Iowa 301, 306, 149 N.W.2d 314, 316 (1967). There is a presumption, however, that once a highway is shown to exist, it continues to exist, and any abandonment must be proven by clear and satisfactory evidence. Sterlane v. Fleming, 236 Iowa 480, 483, 18 N.W.2d 159, 161 (1945); 39 Am.Jur.2d Highways, Streets, & Bridges " 158, at 692 (1999). | Established highway or right of way may be abandoned by the public and its rights lost. | Can an established highway be abandoned? | Highways -Memo 89 - KC.docx | ROSS-003317606-ROSS-003317607 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 18768 | Board of Trustees of Town of Lake Park Firefighters' Pension Plan v. Town of Lake Park, 966 So. 2d 448 | 231H+402 | The Legislature has specifically declared that consolidations, mergers or transfers of government or governmental functions may not diminish or impair employees' rights or benefits in a retirement or pension plan or fund in which the employee was participating in at the time of the consolidation, merger or transfer. Id. Furthermore, pension statutes are to be liberally construed in favor of the intended recipients.Greene v. Gray, 87 So.2d 504, 507 (Fla.1956). | Pension statutes are to be liberally construed in favor of the intended recipients. | Can pension statutes be liberally construed? | 022792.docx | LEGALEASE-00134092-LEGALEASE-00134093 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 18769 | Einhaus v. O. Ames Co., 547 S.W.2d 821 | 302+8(17) | In Missouri a general allegation of negligence predicated on an act of the defendant causing plaintiff's injury is sufficient as against an objection that no cause of action is stated, and it is not necessary to state specific facts showing the negligence in order to state a cause of action. A plaintiff must, however, allege facts sufficient to inform the defendant of the breach of duty with which he is charged, and, if the facts are within the plaintiff's knowledge, he should be required to state them with reasonable particularity. Negligence, however, is an ultimate fact which may be pleaded as such, and not a conclusion. Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87, 92(11) (1949). | Negligence is an ultimate fact which may be pleaded as such, and not a conclusion. | Is negligence an ultimate fact which may be pleaded as such? | 023261.docx | LEGALEASE-00134224-LEGALEASE-00134225 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 18770 | In re Forfeiture of 1982 Ford Mustang, Vehicle ID No. ABP16F6CF190433, 725 So. 2d 382 | 307A+486 | We adopt the position taken by the Fifth District Court to the extent that rule 1.370(b) requires a motion before an admission may be withdrawn. This interpretation is consistent with the plain language of rule 1.370(b) that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the motion." (emphasis added). Additionally, the City is incorrect in arguing that Walker did not comply procedurally with rule 1.370(b) because he filed his motion to file response to request for admissions after the hearing on the motion for summary judgment. | Party may not withdraw admission without motion to amend admission. West's F.S.A. RCP Rule 1.370. | Can a party withdraw admission without a motion to amend admission? | 028785.docx | LEGALEASE-00134609-LEGALEASE-00134610 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 18771 | Glenn v. Hunt, 120 Mo. 330 | 307A+69.1 | Neither do sections 4435, 4438, and 4439 require interrogations to accompany the commission. The commission is the only authority necessary to empower the officer to examine such witnesses as may be named by the party "suing for the same." That the examination may be general, and not confined to interrogations, is apparent from the language of section 4439, which authorizes the officer to examine the witness "touching his knowledge of anything relating to the matter in controversy." Another section of the statute (4448) makes provision for obtaining from the court, or the judge thereof in vacation, a special commission, which requires that notice of the application shall be given the adverse party, and that interrogatories be annexed to such commission, but plaintiff did not proceed under this section of the statute. The court correctly ruled on the motion. | It is not necessary that interrogatories be annexed to the commission, under Rev.St.1889, S 4439, authorizing the officer to whom the commission is directed to examine the witness "touching his knowledge of anything relating to the matter in controversy." | Is it necessary that interrogatories be annexed to the commission? | 028958.docx | LEGALEASE-00134226-LEGALEASE-00134227 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 27,876 | 9,029 |
| 18772 | Tax Review BD. of Philadelphia v. Exco Standard div. of Humble Oil & Ref. Co., 424 Pa. 355 | 371+2301 | We agree that if the sales method is truly a manufacturer's or producer's tax, invoices cannot change nature or incidence of a tax... | Invoices or bookkeeping cannot change nature or incidence of a tax | Can invoices change nature or incidence of a tax? | 043041.docx | LEGALEASE-00136327 LEGALEASE-00136328 | Condensed_SA | 0.94 | 0 | | | 1 | |
| 18773 | State v. Rounds, 476 Ga. 2d 865 | 67+2 | The general prohibition against the use of other crimes evidence does not bar admission of evidence of criminal acts which are an inseparable part of the whole deed... | Essential part of a burglary is a safe and undetected retreat from the premises with fruits of the crime. | Is an escape part of the burglary? | Burglary - Memo 116 - JS.docx | ROSS-003130999-ROSS-003131001 | Condensed_SA | 0.85 | 0 | | 1 | | |
| 18774 | Kissinger Hunter Mgmt. Co. v. Davis, 782 S.W.2d 426 | 307A+716 | Before 1947, Missouri courts held that, where counsel is a member of the legislature... | Trial court may exercise discretion when attorney-legislator requests continuance; filing of application for legislative continuance does not divest trial court of jurisdiction and preclude further proceedings. V.A.M.R. 65.06. | Do courts have some discretion to grant or deny a motion for legislative continuance? | 029233.docx | LEGALEASE-00135288 LEGALEASE-00135289 | Condensed_SA | 0.85 | 0 | | 1 | | |
| 18775 | Combs v. Schmidt, 2012 IL App(1st) 110517 | 228+181(23) | The [Northern] court also considered whether the plaintiff had an adequate opportunity to inspect and document the evidence or the evidence was otherwise sufficiently documented... | Genuine issue of material fact as to whether, pursuant to spoliation of evidence doctrine, landlord and landlord's insurer had duty to preserve evidence and provide reasonable opportunity to inspect that evidence... | Is the duty to preserve relevant evidence discharged when a party or potential litigant sells a legitimate reason to destroy evidence provides reasonable notice of a possible claim? | Pretrial Procedure - Memo 8 3305 - C - SPN.docx | ROSS-003302924-ROSS-003302925 | Condensed_SA_Sub_0.81 | 0.81 | 0 | | 1 | | |
| 18776 | Adams v. Hill, 177 Ga. App. 492 | 307A+716 | Strict compliance with OCGA 9-10-150 is required to obtain a continuance of a case proceeding. Scott v. State, 115 Ga.App. 840(1), 262 S.E.2d 198... | As a rule, continuance on ground of counsel's illness is not favored | Is continuance on ground of counsel's illness favored? | Pretrial Procedure - Memo 8 342 - C - RL.docx | ROSS-003198942 | Condensed_SA | 0.89 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18777 | Scott v. Burton Min. Co., 2 No. 85 | 3079-6/9.1 | The ground taken by the court below for its ruling is utterly untenable. If the first depositions were full and complete, covering the matter in the case, and there was no legal objection to their being used on the trial, it would have been proper for the court to reject the second depositions and allow the first to be used; although the better practice in such cases would be to have both admitted and deposited in the record of the commission. In this case, had it been shown that the first depositions contained a full and complete examination of the witnesses, and that there was no legal objection to their being used, we could not say that the court below erred in ruling out the second depositions. This is not, however, shown; and from the entireness and apparent fairness of the affidavit, that the second was not used for the purpose of taking the testimony upon some question omitted in the first depositions, or for the purpose of making some point clear or explicit. | A new trial will be granted when a second deposition is excluded, because can a Court grant or reject the second depositions? one deposition of the same witness about the same subject matter has been taken, unless it is shown that the first contained a complete examination, and that there was no legal objection to its being used. | Can a Court grant or reject the second depositions? | 029048.docx | LEGALEASE-00135588 LEGALEASE-00135589 | Condensed, SA, Sub | 0.72 | 0 | 1 | | 1 | |
| 18778 | Mercado v. Hill, 2012 UT App 44 | 3070-4/83 | Plaintiff's have fallen short of showing that there is "no reasonable basis for the decision." See Langeland, 952 P.2d at 1061. Defendants resorted to request for admissions only after they were stonewalled by Plaintiffs' counsel to respond to other forms of discovery. As the supreme court has reminded litigants, "Requests for admission must be taken seriously, and answers or objections must be served promptly. The penalty for delay or abuse is intentionally harsh, and parties who fail to comply with the procedural requirements of rule 36 should not lightly escape the consequence of the rule." Id. Rather than promptly objecting, Plaintiffs' counsel ignored the requests for admission and moved to challenge the admissions and rather the court had granted summary judgment. Given Plaintiffs' counsel's pattern of inaction, delay, nonresponsiveness, and failure to timely the court and opposing counsel of multiple address changes, we see no abuse of discretion in the trial court's denial of the motion to quash or withdraw the admissions. | Court's failure to respond to requests for admissions rendered them admitted in negligence action arising out of motor vehicle accident; requests for admissions were resorted to only after counsel repeatedly failed to respond to other forms of discovery, and, rather than promptly objecting, counsel ignored the requests and did not seriously challenge the admission until after the trial court had granted summary judgment. Rules Civ Proc, Rule 36 (2010). | "Are requests for admission taken seriously, and answers or objections served promptly?" | Pretrial Procedure Memo # 1907 - C - MS.docx | ROSS-003291040-ROSS-003291041 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | |
| 18779 | Southpoint Mill v. Friedrichs, 171 La. 786 | 95+30/(4) | Friedrichs contends that he is bound by the decision because the Southpoint Mill, as making for accept the tender made by Mrs. Astey, and prevented the fulfillment of the condition on which the acceptance is entitled to the commission. A sale made to accept the tender after Mrs. Astey had been authorized, had forfeited his right to the commission; and had been sued by the company to have the contract canceled from the records. Friedrichs cites and relies upon article 2040 of the Civil Code, which declares the condition is considered as fulfilled, when the condition is considered as fulfilled if the contract depends upon a condition, the condition is considered as fulfilled if the debtor, bound under that condition, who prevents the fulfillment. The error in the translation was observed long ago, and the French text has always prevailed in the decisions of this court. Watts v. Smith, 3 La. 498; Righter v. Aleman, 4 Rob. 45; Mars v. Mars, 100 La. 1472; 21 So. 416; 456; 456 Kent v. Emmerling, 65 U. S. 122 How 2 361, 161 232. | Condition of contract is considered fulfilled when performance is prevented by party whose obligation depends on condition. Civ.Code, art. 2040. | When is condition fulfilled? | 010123.docx | LEGALEASE-00165536 LEGALEASE-00165537 | SA, Sub | 0.92 | 0 | | | | |
| 18780 | Johnson v. Frisbie, 15 Mich. 286 | 83/(+348 | We consider this point as settled by the decision in Smith v. Kendall, 9 Mich. It , in which case, held by an instrument the words note bill was made to read exchange, the maker in Michigan and payable "with current rate of exchange on New York," is a negotiable instrument. The fact that such an instrument did not destroy its negotiability, as interest was added but it was actually payable in New York, and, therefore, there could be exchange on it. The court, however, had no judicial knowledge that the note is payable, and although upon an entirely different basis, it being assumed to be payable elsewhere, the note was payable somewhere elsewhere. The decision was based exclusively upon the assumption that such notes were negotiable wherever they might have been made payable, and no other question was entertained. | A promissory note, made in Michigan and payable "with current rate of exchange on New York," is a negotiable instrument. | "If a note is made payable in exchange, does it destroy its negotiability or prevent it from being a promissory note?" | Bills and Notes- Memo 238 -JS'.docx | ROSS-003311769-ROSS-003311970 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 18781 | United States v. Frommerd, 626 F.3d 1003 | 67(12) | The supervision monitoring component of the Adam Walsh County Corrections Department, where Townsend worked, is in the business of seeing that restrictions on the freedom of pretrial releasees are enforced. ... | Term "any thing of value," as used in the federal statute prohibiting bribery offered to state and local officials employed by agencies receiving federal funds, may include intangibles, such as freedom from jail and incremental increase in such freedom. 18 U.S.C.A. § 666(a)(1)(B). | Can intangibles be things of value? | Bribery - Memo #414 - C - CS.docx | ROSS-003103994-ROSS-003103995 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | | 1 | 1 |
| 18782 | Eldridge v. Barnes, 126 F. Supp. 3d 735 | 143=112 | See Crntel, 2015 WL 375896, (finding the safe-harbor provision in 42 U.S.C. § 1320a-7b(b)(3)(B) is an affirmative defense). ... | Had agent included, in affidavit for warrant to search defendant's medical office for evidence of health care fraud and illegal kickbacks, information that certain payments referenced in the affidavit were provided as legitimate compensation for his services as medical director for provider of home healthcare services, the affidavit would not have been rendered insufficient to support a finding of probable cause; this information rebutted affirmative defenses under safe-harbor provision for such anti-kickback statute, and in addition to the affidavit concerning the alleged kickback scheme, defendant participated in a scheme to defraud Medicare by billing for certain home healthcare services. U.S.C.A. Const.Amend. 4; Stark Law, § 1128B(b)(3)(B); 42 U.S.C.A. § 1320a-7b(b)(3)(B); 42 C.F.R. § 1001.952(d). | Is the safe-harbor provision treated as an affirmative defense for bribery? | 017718.docx | LEGALEASE 00136704-LEGALEASE 00136705 | Condensed, SA, Sub 0.57 | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 18783 | Eldridge Motors v. Frame, 103 Ga. App. 676 | 30=92(17) | (b) "In an action for negligence, the statement that the plaintiff was without fault is not a conclusion, but a statement of fact." Charleston & W. C. Ry. Co. v. Lyons, 5 Ga.App. 668(2), 63 S.E. 656. Special demurrer 17 to the allegation that the plaintiff was in the exercise of ordinary care for ... | Statement that plaintiff was without fault is not a conclusion but a statement of fact. | Is the statement that the plaintiff was without fault a conclusion? | 023311.docx | LEGALEASE 00136409-LEGALEASE 00136411 | Condensed, SA 0.74 | 0.74 | 0 | 1 | 0 | 1 | 0 |
| 18784 | Irvine v. State, 64 Okla. Crim. 345 | 110=59.9 | The court may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just; provided, that if a party or his attorney of record be absent when the application for the adjournment or continuance of the case shall be made, it shall be a good cause for continuance of the case, and emotions, demurrers and preliminary matters to be heard by the court, the refusal to grant which shall constitute error, and entitle such a party to a new trial as a matter of right. When a continuance is granted on account of the absence of evidence the court must be satisfied by ... | Where the defendant or his attorney of record is a member of the Legislature or the Senate then in session at time of trial, the defendant is entitled to a continuance under statute as a matter of law. 12 Okl.St.Ann. § 667. | Can the court for good cause continue a case at any stage of the proceeding on such terms as may be just? | 010253.docx | LEGALEASE 00136911-LEGALEASE 00136912 | Condensed, SA, Sub 0.86 | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 18785 | Serrano v. Ryan's Crossing Apartments, 241 S.W.3d 560 | 30=39.11 | A motion for continuance must be in writing, state the specific facts supporting the motion, and be verified or supported by an affidavit. See Tex.R. Civ. P. 251; Strong v. Strong, 895 S.W.2d 918 (Tex.App.—Houston [1st Dist.] 1996, no writ); Higginbotham v. Collateral Protection, Inc., 859 S.W.2d 487, 490 (Tex.App.—Houston [1st Dist.] 1993, writ denied). If the motion is not verified or supported by affidavit, we presume the trial court did not abuse its discretion. Villegas v. Carter, 711 S.W.2d 624 (Tex.1986); Alpha Plating & Developing Corp., 874 S.W.2d 948, 949 (Tex.App.—Houston [14th Dist.] 1994, no writ). | If a motion for continuance is not verified or supported by affidavit, the appellate court will presume the trial court did not abuse its discretion in denying the motion. | Must a motion for continuance be in writing, state the specific facts supporting the motion, and be verified or supported by an affidavit? | 010780.docx | LEGALEASE 00136403-LEGALEASE 00136404 | Condensed, SA, Sub 0.76 | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18786 | Cooper v. Epstein, 308 A.2d 781 | 308+145(2) | It is well settled that, absent some special exception, an undisclosed principal may sue and be sued on a contract made by his agent. 3 Am.Jur.2d Agency ss 311, 322 (1962); 3 C.J.S. Agency ss 244, 276 (1936). Even the fact that the agent denies that there is a principal, or represents himself to be the principal, is not sufficient to preclude suit by the undisclosed principal. However, where the express terms of the contract provide that it (the contract) is the be effective only between the agent and the third party, the undisclosed principal may not enforce the contract. See Restatement (Second) of Agency s 303 (1958). The undisclosed principal simply cannot sue where to do so would violate a term of the written contract. Rederiaktiebolaget Argonaut v. Hani, (1918) 2 K.B. 247. Where the contract terms do not expressly exclude enforcement by or against an undisclosed principal, such liability may nevertheless be precluded if that was the intention of the parties. The resolution of the issue of whether the parties intended to exclude such liability is usually the duty of the fact finder. | Generally, undisclosed principal may sue and be sued on contract made by agent, even where agent denies there is a principal or represents himself to be principal. | Does an undisclosed principal have the right to sue? | Principal and Agent - Memo 95 - KC.docx | ROSS-003318767-ROSS-003318768 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 18787 | Patterson v. Stancliff, 330 F. Supp. 110 | 197+283 | In the context of an in-service conscientious objector, the Fourth and Fifth Circuits have taken the position that application to the appropriate Board for Correction of Military Records is not an administrative remedy which must be exhausted before review may be had by way of habeas corpus. United States ex rel. Healy v. Beatty, 424 F.2d 299 (5th Cir. 1970); Pitcher v. Laird, 421 F.2d 1272 (5th Cir.), application for stay of deployment denied as moot, 399 U.S. 902, 90 S.Ct. 2190, 26 L.Ed.2d 557 (1970); United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700, rehearing denied, 412 F.2d 1137 (4th Cir. 1969). In the context of a soldier contesting discharge or retirement, this position was adopted by the District of Columbia and the Third Circuits, except that these Circuits held that resort to the Board would be required in the discretion of the District Court, exercised so as to retain jurisdiction but defer decision unless the party invoking the court's jurisdiction could demonstrate "special circumstances". Nelson v. Miller, 373 F.2d 474 (3d Cir.), cert. denied, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967); Sohm v. Fowler, 124 U.S.App.D.C. 382, 365 F.2d 915 (1966); Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312 (1961). | Resort to Army Board for Correction of Military Records was not prerequisite to habeas corpus proceeding by petitioner seeking discharge from United States Army Reserve. 10 U.S.C.A. S 1552; 28 U.S.C.A. S 2241(c) (1). | Is it necessary that an unsuccessful applicant for post induction conscientious objector discharge have to appeal to the Board for Correction of Military Records in order to exhaust his available administrative remedies? | Armed Services - Memo 162 - JS.docx | ROSS-003290396-ROSS-003290397 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 18788 | Zuvers v. Robertson, 906 S.W.2d 892 | 241+25(2) | In other cases, however, the word "loan" has been held in and of itself to be enough. In Tanzola v. De Rita, 45 Cal.2d 1, the California Supreme Court rejected the contention that an action against a decedent's estate for the recovery of money loaned to decedent was time barred because the cause was based upon an oral rather than a written agreement. The action was based upon two checks with the word "loan" written upon their faces and endorsed by decedent's wife who was shown to have full authority to make such endorsements. Similarly, the Texas Court of Civil Appeals unequivocally held: "A check on the face of which appears the word "loan" is an instrument containing the contract of the payee to repay the money borrowed." The payee by endorsing the check assumes the obligation of the loan and the check becomes written evidence of the contract to repay." Otten v. Works, 516 S.W.2d 291, 292 (Tex.Civ.App.1974). We believe this is the better line of authority. We hold that the delivery of a check containing the word "loan" written in the notation on the check, made payable to the alleged recipient of the loan proceeds, which is then endorsed by the payee, satisfies the requirement of the ten-year statute, " 516.110. | Delivery of check containing the word "loan" written as memorandum notation on the check, made payable to the alleged recipient of the loan proceeds, which is then endorsed by the payee, satisfies the requirement of ten-year statute of limitation for action upon a writing for payment of money, as opposed to five-year statute of limitations for other obligations. V.A.M.S. SS 516.110, 516.120. | "Does a check, on the face of which the word loan appears, constitute an instrument containing a contract to repay the money borrowed?" | 010256.docx | LEGALEASE-00137676-LEGALEASE-00137677 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 18789 | Van Zandt v. Hopkins, 151 Ill. 248 | 8.30E+186 | The only question in the case is whether the paper sued on is assignable under our statute so as to vest the legal title in the assignee. In other words, whether it is a negotiable instrument. And the decision of that question turns upon the effect to be given to words "ctf. of stock #113 for 50 shares of stock," etc., written after the signatures. There seems to be no substantial conflict in the authorities that a memorandum either after the signature to a bill or note, indorsed on the back, or written on the margin, "contemporaneously with the execution of the instrument, and by agreement of the parties, will form a part of their contract, and bind them the same as if introduced into the body of the instrument." 1 Daniels, Neg. Inst. 120, says: "It seems that the purport of the instrument is not only to be collected from the four corners but from the eight corners, a memorandum on the back affecting its operation being regarded the same as if written on its face." See Corgan v. Frew, 39 Ill. 31, as recognizing the rule that a memorandum on the margin becomes a part of the instrument. While it is competent for either party to show by parol when and for what purpose the memorandum was made, in the absence of all testimony on that subject it will be presumed to have been made contemporaneously with the instrument, and as a part of it, and given the effect above stated. 1 Daniels, Neg. Inst. 122, and cases cited. The testimony in this case shows that the memorandum was in fact made before signing, and intended to be a part of the contract. We see no escape from the conclusion that the negotiability of the instrument must be determined precisely as though those words in the memorandum had been written over the signatures of appellees. So far from the oral testimony tending to show that the payee of the instrument was simply to hold the certificate of purchase as collateral security for the payment of the note it shows directly the contrary. D. B. Whitacre testified (and his | A memorandum written on a note below the signature at the time of its execution is part of the note. | Is a memorandum written contemporaneously with the execution of the note form a part of the contract? | Bills and Notes-Memo 119-DB.docx | ROSS-003290049-ROSS-003290052 | Condensed, SA, Sub | 0.98 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18790 | United States v. Townsend, 630 F.3d 1003 | 63+1(2) | That conclusion leads to the next question, which is how to value intangibles in deciding whether " 666(a)(1)(B)'s $5,000 statutory threshold is met. The Fifth, Seventh, and Eighth Circuits have all agreed that "[w]here the bribe-giver receives an intangible benefit, ... the bribe amount [may be used] as a proxy to stand for the value of the business or transaction." United States v. McNair, 605 F.3d 1152, 1186 n. 38 (11th Cir.2010). In United States v. Marmolejo, 89 F.3d 1185 (5th Cir.1996), a sheriff and deputy sheriff permitted a federal prisoner in their custody to have unauthorized conjugal visits with his wife and similarly "romantic" visits with his girlfriend.4 Id. at 1191. The Fifth Circuit determined that in deciding the value of intangible benefits for " 666(a)(1)(B) purposes "courts should look to traditional valuation methods," and in particular, "how much a person in the market would be willing to pay" for the intangible. Id. at 1194. That was easily determined because the fact that the bribes exceeded $5,000 established that the market value of the intangibles for which the bribes were given and received also exceeded that amount. See id. | In valuing intangibles, for purposes of determining whether the $5,000 jurisdiction threshold of the federal statute prohibiting bribes offered to state and local officials employed by agencies receiving federal funds is met, courts are to use the amount of the bribe, that is, the monetary value of what a willing bribe-giver gives and what a willing bribe-taker takes in exchange for the intangible. 18 U.S.C.A. S 666(a)(1)(B). | "To determine the value of a transaction involving intangibles, must the court look to traditional valuation methods?" | 011782.docx | LEGALEASE-00138024-LEGALEASE-00138026 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 18791 | United States v. Garner, 837 F.2d 1404 | 319H+9 | The labels placed on a state statute do not determine whether that statute proscribes bribery for purposes of the RICO statute. Congress intended for "bribery" to be defined generically when it included bribery as a predicate act. H.R.Rep. No. 1549, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Admin.News 4007, 4032 ("State offenses are included by generic designation."). Thus, any statute that proscribes conduct which could be generically defined as bribery can be the basis for a predicate act. See United States v. Bagaric, 706 F.2d 42, 62"63 (2d Cir.), cert. denied, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983); United States v. Salinas, 564 F.2d 688, 691"92 (5th Cir.1977), cert. denied, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 800 (1978); United States v. Frumento, 563 F.2d 1083, 1087 (3d Cir.1977), cert. denied, 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776 (1978). As the Third Circuit pointed out in United States v. Forsythe, 560 F.2d 1127, 1137 (3d Cir.1977), the congressional statement in the legislative history of RICO that "[s]tate offenses are included by generic designation" manifests a legislative intent to incorporate the Supreme Court's holding in United States v. Nardello, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), into the RICO statute. The Forsythe court said: Nardello stands for the proposition that alleging a state violation which falls within the generic category of the predicate offense is adequate to charge a violation of the Travel Act. The test for determining whether the charged acts fit into the generic category of the predicate offense is whether the indictment charges a type of activity generally known or characterized in the proscribed category, namely, any act or threat involving bribery. | The labels placed on a state statute do not determine whether that statute proscribes bribery for purposes of the RICO statute and thus any statute prohibiting conduct which can be generically defined as bribery could be the basis for a RICO predicate act. 18 U.S.C.A. SS 201, 1961(1)(A). | Did congress intend for bribery to be defined generally when it included bribery as a predicate act under RICO? | Bribery - Memo #510 - C-EB.docx | ROSS-003305049-ROSS-003305050 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 18792 | United States v. Jannotti, 673 F.2d 578 | 164T+24(1) | Id. at 1195 (footnote omitted). The Sixth Circuit has also held that the "technical overdrawn distinction" which the public officials sought to make there between bribery and extortion under the Hobbs Act is not in keeping with the legislative intent, and that "in cases of misuse of official power, bribery and extortion are not mutually exclusive." United States v. Butler, 618 F.2d 411, 417 (6th Cir. 1980), cert. denied, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980) and 449 U.S. 1089, 101 S.Ct. 881, 66 L.Ed.2d 816 (1981). | If Hobbs Act is read in full, distinction between bribery and extortion becomes unnecessary where public officials are involved. 18 U.S.C.A. SS 1951, 1951(b)(2). | Are bribery and extortion mutually exclusive under the Hobbs Act? | 011822.docx | LEGALEASE-00137678-LEGALEASE-00137679 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 18793 | United States v. Arriaga, 70 M.J. 51 | 258A+966 | Article 79, UCMJ, states that "[a]n accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein." Article 79, UCMJ, 10 U.S.C. " 879 (2006); see also Jones, 68 M.J. at 468. This court applies the elements test to determine whether one offense is a lesser included offense of another. Id. "Under the elements test, one compares the elements of each offense. If all of the elements of [housebreaking] are also elements of [burglary], then [housebreaking] is [a lesser included offense] of [burglary]." Id. at 470. The two offenses need not have "identical statutory language." Alston, 69 M.J. at 216. "Instead, the meaning of the offenses is ascertained by applying the "normal principles of statutory construction." " Id. (citation omitted). | Housebreaking was a lesser included offense of burglary, where accused was charged with breaking into victim's house with intent of committing aggravated sexual assault, which was criminal offense designated in the intent element of the burglary article. MCM 2008, Pt. IV, P 55(b), 56(b). | Is housebreaking a lesser included offense of burglary? | Burglary - Memo 104 - JS.docx | ROSS-003290425-ROSS-003290426 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WNHS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18794 | People v. Chavez, 205 Cal. App. 4th 1274 | E714 | Uncovered frozen wrecking yard was not a "building" or appurtenance of a building under burglary statute, and thus entry into the yard was not burglary, even though there was a building in the yard, and even if the wrecking yard was surrounded by a wall. West's Ann.Cal.Penal Code § 459. | The Court of Appeal have cited and applied this definition often. (People v. Lohbauer (1981) 33 Cal.App.3d 365 … [scene of burglary statute: "a building is generally defined to mean a place that has walls on all sides and is covered by a roof"] … ) | What is a building under the burglary statute? | 012751.docx | LEGALEASE 00137555; LEGALEASE 00137556 | Condensed, SA, Sub | 0.84 | 0 | | | 1 | 1 |
| 18795 | State v. Arnold, 115 Ariz. | 210=827 | Petty theft and burglary are not the same crime, nor is one a lesser offense of the other. A.R.S. §§ 13-302, 13-603. | Clearly, from the elements first set out, petty theft and burglary are not the same crime, but is one a lesser included offense of the other … | Is petty theft different from burglary? | 013326.docx | LEGALEASE 00137575; LEGALEASE 00137576 | SA, Sub | 0.5 | | | 1 | 1 | 1 |
| 18796 | Schaller v. State, 537 N.W.2d 738 | 200=76 | A county has statutory authority to vacate roads. I.C.A. § 306.10. | A county may be authorized to vacate certain roads. Iowa Code § 306.10 … | Does a county have the statutory authority to vacate a road? | 015008.docx | LEGALEASE 00137603; LEGALEASE 00137604 | Condensed, SA | 0.79 | | 1 | | 1 | 1 |
| 18797 | Stefanov v. Fleming, 236 Iowa 480 | 200=75.1 | Obstructions, encroachments, or failure to keep road in repair do not necessarily work an abandonment of a highway. | In the case of McCart v. Clarke County, 167 Iowa 18, 20, 21, 148 N.W. 1015, 1016, this court made the following significant statement … | Does failure to repair a road constitute abandonment? | 013015.docx | LEGALEASE 00137729; LEGALEASE 00137730 | Condensed, SA | 0.87 | | 1 | | 1 | 1 |
| 18798 | Eisentham v. U.S. Dep't of Interior, 208 F.3d 781 | 170B=1908 | Claim alleging that developer's spill response plan for oil and gas development project located off the Alaskan coast failed to comply with requirements of Oil Pollution Act (OPA) and that Department of Interior's approval of development and production plan (DPP) thus violated Outer Continental Shelf Lands Act (OSCLA), was not ripe for review … | OCSLA, as amended in 1978, identifies four distinct stages in the development of an offshore oil well on the Outer Continental Shelf. See Secretary of the Interior v. California, 464 U.S. 312, 337, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984) … | "Under OCSLA, how many stages are there to developing an offshore oil well?" | 012133.docx | LEGALEASE 00137978; LEGALEASE 00137979 | Condensed, SA, Sub | 0.21 | | | | 1 | 1 |
| 18799 | Carlton & Manning v. Griffin, 27 VI. 496 | 289=84 | Evidence of general reputation is not admissible to prove a partnership. | It appears from the cross-examination of the witness, that the only knowledge he had of the existence of a partnership between the defendants, was derived from general reputation … | Is general reputation admissible as evidence to prove partnership? | 022237.docx | LEGALEASE 00137637; LEGALEASE 00137638 | Condensed, SA | 0.7 | | 1 | | 1 | 1 |
| 18800 | Pigate v. Pigate, 86 S.W.2d 336 | 307A=720 | Unopposed amendment of pleading affords no ground for continuance. | Defendants complain that the allowing defendant a continuance on account of the amendment. The court, under the provisions of section 941, Rev.St. 1879 … | Does an unopposed amendment of pleading afford no ground for continuance? | Pretrial Procedure - Memo 4 4421 - C - Sl.docx | ROSS-000250219; ROSS-000250220 | Condensed, SA | 0.92 | | 1 | | 1 | 1 |
| 18801 | Kendall v. Curl, 222 Or. 329 | 307H=71 | Counsel has right to use discovery depositions with discrimination. | Discovery depositions were contemplated upon by the trial judge in Kramer v. Bradley, supra, 114 F.Supp. at page 383, 386. He observed that such transcript … | Does counsel have the right to use discovery depositions with discrimination? | Pretrial Procedure - Memo 4 4348 - C - U0.docx | ROSS-000291172; ROSS-000291173 | Condensed, SA | 0.89 | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18802 | McEldrew Homes v. Johnson, 294 Ala. 59 | 184x52 | Great latitude is allowed in admitting evidence on issue of alleged fraud. | Great latitude is allowed in admitting evidence on issue of alleged fraud. | "In discovery, should wide latitude be permitted in seeking evidence of fraud since proving fraud often requires such latitude to be expected?" | 031953.docx | LEGALEASE 00130067-LEGALEASE 00130068 | Condensed_SA | 0.9 | 0 | | 1 | | |
| 18803 | Premier Bank v. Cohen-Esrey Properties, 859 F. Supp. 1388 | 308+D301(I) | Delivery by one's agent constitutes delivery to principal, and likewise possession by one's agent constitutes possession by principal. | Delivery by one's agent constitutes delivery to principal, and likewise possession by one's agent constitutes possession by principal. | Does delivery to an agent constitute delivery to the principal? | 042106.docx | LEGALEASE 00137770 LEGALEASE 00137771 | Condensed_SA | 0.89 | | 1 | | | |
| 18804 | Reguera v. Calderon, 27 A.L.3d 371 | 308+D304 | Generally, agent authorized to sell is not also authorized to pledge. | Generally, agent authorized to sell is not also authorized to pledge. | "Is an agent authorized to sell, also authorized to pledge?" | Principal and Agent Memo 70 - KC.docx | ROSS-003015ROSS-ROSS-003019605 003019606 | Condensed_SA | 0.97 | 1 | | | 1 | |
| 18805 | DiMercurio v. Sphere Drake Ins., PLC, 2017 3d 1 | 217+3273 | Arbitration clause in policy issued by English insurers to Massachusetts owner of commercial fishing vessel, which required arbitration of all coverage disputes in England, was void under Massachusetts law, in light of Massachusetts' adoption of Uniform Arbitration Act for Commercial Disputes, which required enforcement of arbitration agreements except in circumstances that would invalidate any other contract, arbitration clause would not be deemed to deprive Massachusetts courts of jurisdiction, for purposes of Massachusetts statute prohibiting arbitration provisions that would deprive Massachusetts courts of jurisdiction over actions against insurer. M.G.L.A. c. 175, § 22; c. 251, § 1. | Arbitration clause in policy issued by English insurers to Massachusetts owner of commercial fishing vessel, which required arbitration of all coverage disputes in England, was void under Massachusetts law, in light of Massachusetts' adoption of Uniform Arbitration Act for Commercial Disputes, which required enforcement of arbitration agreements except in circumstances that would invalidate any other contract, arbitration clause would not be deemed to deprive Massachusetts courts of jurisdiction, for purposes of Massachusetts statute prohibiting arbitration provisions that would deprive Massachusetts courts of jurisdiction over actions against insurer. M.G.L.A. c. 175, § 22; c. 251, § 1. | Can an agreement to arbitrate be pleaded as a personal defense? | 007601.docx | LEGALEASE 00190019-LEGALEASE 00190065 | Condensed_SA, Sub 0.69 | | | 1 | | 1 |
| 18806 | Fisher v. Tucker, 11 Ala. App. 464 | 8.30T+60 | "Date in general is not essential to a bill or note. If there be no date, it will be considered as dated at the time it was made." | "Date in general is not essential to a bill or note. If there be no date, it will be considered as dated at the time it was made." | Is date an essential requisite of a promissory note? | 010125.docx | LEGALEASE 00185519-LEGALEASE 00185520 | Condensed_SA | 0.23 | 0 | | | 1 | 1 |

3317

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 21,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18807 | Maryland Cas. Co. v. Dobbs, 232 Mo. App. 557 | 303v76 | It appears that the defendant himself, after being advised by his friend that he did not have the check, could have written and sworn to the money from the bank and saved himself from any loss thereof. The defendant could not in good faith, however, having been advised, as he was under duty to leave the money for the payment of the check when found or for the payment of a duplicate check did not absolve him from the obligation thereon. The money was left in the bank for that purpose, either with or without a duplicate check being issued. It results that, under the circumstances of the record, that the plaintiff's failure to present the check before the failure of the bank till its existence in its possession for more than a reasonable time within which to have made such presentment was the proximate cause of the defendant's loss and not the mere failure of the bank. | Money stopping payment on check did not absolve drawer from his obligation thereon. | Will revocation of payment absolves the drawer from his obligation? | D1012.docx | LEGALEASE 00138796-LEGALEASE 00138797 | Condensed, SA, Sub 0.9 | | 839 | 1 | 1 | 1 | 9,029 |
| 18808 | Oram v. People, 255 P.3d 1032 | 67+3 | A person commits second degree burglary if he "knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." § 18 V 2011) (emphasis added). When a statute includes a culpable mental state, that mental state is deemed to apply to every element of the crime unless the General Assembly clearly intended otherwise. § 18°5-2(4). There is no such indication that the General Assembly intended this knowingly mental state in the burglary statute to be limited to the phrase "breaks an entrance into." Therefore, a knowingly mental state must apply to each element of the burglary statute. | A "knowingly" mental state applies to each element of the burglary statute. West's C.R.S.A. SS 18-1-501(6), 18-4-203(1). | Is knowingly a mental state for burglary? | Burglary - Memo 180-KNR.docx | ROSS-003304454-ROSS-003304455 | SA, Sub | 0.82 | | | | 1 | |
| 18809 | Roos v. Barry, 455 U.S. 132 | 129+101 | Thus, the fact that an interest is recognized in international law does not automatically render that interest "compelling" for purposes of the First Amendment analysis. We need not decide today whether, or to what extent, the dictates of international law could ever require that First Amendment analysis be adjusted to accommodate the interests of foreign officials. Nor if the Court reject the notion that recognizes a dignity interest but that the dignity interest can be considered sufficiently "compelling" to support a content-based restriction on speech, we exclude that " 22-1135 is not narrowly tailored to serve that interest. See, e.g., Perry Education Assn., 460 U.S., at 45, 103 S.Ct., at 956; Board of Airport Comm'n of Los Angeles, 482 U.S., at 573, 107 S.Ct., at 2571. | District of Columbia provision which prohibited signs or displays critical of foreign governments within 500 feet of embassies, although it was not viewpoint-based, was a content-based restriction on political speech in a public forum, which had not met narrowly tailored to serve a compelling state interest and thus violated the First Amendment. (Per Justice O'Connor, with two Justices concurring and the Justices concurring in part.) D.C. Code 1981, § 22-1115; U.S.C.A. Const. Amend. 1. | Is international law sufficient to support content based restriction on speech? | 014405.docx | LEGALEASE 00138710-LEGALEASE 00138711 | Condensed, SA | 0.37 | | 0 | | 1 | |
| 18810 | Cheek v. United States, 498 U.S. 192 | 110+313 | The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system. See, e.g., United States v. Smith, 5 Wheat 153, 182, 5 L.Ed. 57 (1820) (Livingston, J., dissenting); Barlow v. United States, 7 Pet. 404, 411, 8 L.Ed. 728 (1833); Reynolds v. United States, 98 U.S. 145, 167, 25 L.Ed. 244 (1879); Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 68, 30 S.Ct. 663, 666, 54 L.Ed. 930 (1910); Lambert v. California, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957); Liparota v. United States, 471 U.S. 419, 441, 105 S.Ct. 2084, 2096, 85 L.Ed.2d 434 (1985) (WHITE, J., dissenting); O. Holmes, The Common Law 47-48 (1881). Based on the notion that the law is definite and knowable, the common law presumed that every person knew the law. This common-law rule has been applied by the Court in numerous cases construing criminal statutes. See, e.g., United States v. International Minerals & Chemical Corp., 402 U.S. 558, 563, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971); Hamling v. United States, 418 U.S. 87, 119-124, 94 S.Ct. 2887, 2910-2913, 41 L.Ed.2d 590 (1974); Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 73 S.Ct. 329, 96 L.Ed. 367 (1952). | Based on the notion that the law is definite and knowable, common law presumed that every person knew the law. | Is the rule ignorance of law is no defense to criminal prosecution a part of legal system? | 014410.docx | LEGALEASE 00138756-LEGALEASE 00138757 | Condensed, SA | 0.91 | | 0 | | 1 | |
| 18811 | Kukorus, Garrett, 243 Iowa 785 | 302+9 | IV. Defendants urge that ordinarily exemplary or punitive damages may not be recovered in actions for breach of contract. See cases cited herein. But defendants that plaintiff's action here is such; they pleaded themselves through plaintiff's action to recover in paragraph 24 of their amended and substituted petition, in which they say "That this action is based upon breaches of contract, including breaches of the covenant for quiet enjoyment *** and is not an action for malicious prosecution." Plaintiffs concede that the general rule is as claimed by defendants. But they say that where if such there was, is not available to defendants for they failed to raise it by any proper objection, motion, or otherwise, upon the trial below, We are prone to conclude that the point, is well taken. We find nothing in the record which shows that the trial court was advised that defendants were claiming the exemplary damages are not allowable in an action upon contract. Nor have examined the instructions and find no attempt to strike the amended and substituted petition, the motion to withdraw from the jury, and the exceptions to instructions No. 5, which is the only one dealing with exemplary damages. The motion to strike the included an attempt to strike the allegation of malice as a legal conclusion, which was not good, but no such conclusion as might supported by proper allegations of fact. Moaner v. Page, Iowa 8 N.W.2d 246, 247, and many other authorities support this rule. The action therefore was properly overruled, since it sought to eliminate the entire paragraph. Defendants here had points directing their attention to the question of malice or other than of exemplary damages, and nowhere presented their present alleged error fairly to the trial court. | Legal conclusions proper where supported by proper allegation of fact. | Are legal conclusions proper where supported by proper allegations? | 02384.docx | LEGALEASE 00138199-LEGALEASE 00138200 | SA, Sub | 0.96 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18812 | Sanders v. Ahmed, 364 S.W.3d 195 | 117+91 | In Stevenson v. Aquila Foreign Qualifications Corp., 326 S.W.3d 920, 928 (Mo.App.2010), the court stated that "a non-settling tortfeasor who claims a settlement affords a right to reduction under section 537.060 bears the burden of proving it had joint liability with the settling tortfeasor, a burden which is not met by the fact that a plaintiff has merely claimed joint liability." (emphasis omitted). In Stevenson, the plaintiff was injured in an automobile collision by one set of defendants who later settled. Id. at 923. Three years later, the plaintiff's injuries were aggravated in a second automobile collision with the trial defendants. Id. Under the facts as pleaded, a jury could not find both sets of defendants jointly liable, as the injuries for which the trial defendants were sued were divisible from those governed by the settlement. Id. at 928. Because the plaintiff's pleadings could not establish joint liability, the burden of proving that element remained on the non-settling defendant. Id. | Wrongful-death plaintiff's pleading of joint and several liability along with the existence of a settlement with named defendants raised the presumption, under statute permitting a defendant's tort liability to be reduced by the amounts of settlements with joint tortfeasors, that the settlement was for the same injury as recovered under the jury's verdict. V.A.M.S. S 537.060. | "When a plaintiff expressly alleges a right to recover for the exact same injury or damage from independent tortfeasors, should the non-settling independent tortfeasor be permitted to conduct limited discovery?" | 031116.docx | LEGALEASE-00138472-LEGALEASE-00138473 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 18813 | Common Wealth Ins. Sys. v. Kersten, 40 Cal. App. 3d 1014 | 308+164(2) | Under the Negotiable Instruments Law, other jurisdictions were divided on the question whether a principal may ratify the forgery of his signature by his agent (see annot., 150 A.L.R. 978, 985"986), but it has long been settled in California that where a principal-agent relationship exists, the principal may ratify his signature forged by his agent. (Rakestraw v. Rodrigues, 8 Cal.3d 67, 73"74, 104 Cal.Rptr. 57, 500 P.2d 1401; Navrides v. Zurich Ins. Co., 5 Cal.3d 698, 703"704, 97 Cal.Rptr. 309, 488 P.2d 637; Volandri v. Hlobil, 170 Cal.App.2d 656, 659"660, 339 P.2d 218; Kadota Fig Ass'n v. Case-Swayne Co., 73 Cal.App.2d 815, 821, 167 P.2d 523.) However, whether a forged signature was subject to ratification in the absence of a principal-agent relationship had never been squarely decided in this state. In the early case of California Bank v. Sayre (1890) 85 Cal. 102, 24 P. 713, the court did observe that under certain circumstances failure to repudiate a forged signature may constitute ratification but held that under the facts of that case mere silence did not amount to a ratification. (At pp. 104"105, 24 P. 713.) | Principal may ratify signature forged by his agent. | Can a Principal ratify signature forged by an agent? | Principal and Agent - Memo 116 - KC.docx | ROSS-003332214-ROSS-003332215 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 18814 | Briggs v. Clinton Cty. Bank & Tr. Co. of Frankfort, Ind., 452 N.E.2d 989 | 307A+91 | The purpose of the rule is to protect parties in light of the liberal rights of discovery granted by Trial Rule 26. To prevent the abuse of these rights, all phases of the examination are subject to the control of the court. Its orders are reviewable only for an abuse of discretion. Wright & Miller, 8 Fed.Prac. & Proc. " 2116 (1970). See also Justak v. Bochnowski (3d Dist.1979) Ind.App., 391 N.E.2d 872, cert. denied, 449 U.S. 828, 101 S.Ct. 92, 66 L.Ed.2d 31. | All phases of pretrial examination are subject to control of the court. | Are all phases of pretrial examination subject to control of the court? | 030959.docx | LEGALEASE-00139145-LEGALEASE-00139146 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 18815 | McKissick v. Jackson, 15 Kan. App. 2d 508 | 307A+725 | Plaintiff first argues the trial court erred in imposing conditions on the granting of his motion for continuance. K.S.A. 60-240 provides that a court may, for good cause shown, continue an action upon such terms/conditions as may be just. | A court may continue an action upon such terms as may be just. Rules Civ.Proc., K.S.A. 60-240. | Will a court continue an action on just terms? | 031556.docx | LEGALEASE-00139201-LEGALEASE-00139202 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 18816 | Gogri v. Jack In The Box Inc., 166 Cal. App. 4th 255 | 307A+508 | Code of Civil Procedure section 5813 allows a plaintiff to voluntarily dismiss, with or without prejudice, all or any part of an action before the "actual commencement of trial." (" 581, subds. (b)(1), (c).) The California Supreme Court stated: "Apart from certain ... statutory exceptions, a plaintiff's right to a voluntary dismissal [before commencement of trial pursuant to section 581] appears to be absolute. [Citation.] Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action." (Wells v. Marina City Properties, Inc. (1981) 29 Cal.3d 781, 784, 176 Cal.Rptr. 104, 632 P.2d 217 (Wells ).) Alternatively stated, voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that case, except for the limited purpose of awarding costs and statutory attorney fees. (Shapell Industries, Inc. v. Superior Court (2005) 132 Cal.App.4th 1101, 1108, 34 Cal.Rptr.3d 149 (Shapell ); Harris v. Billings (1993) 16 Cal.App.4th 1396, 1405, 20 Cal.Rptr.2d 718 (Harris ).) "An order by a court lacking subject matter jurisdiction is void. [Citation.]" (Kyle v. Carmon (1999) 71 Cal.App.4th 901, 909, 84 Cal.Rptr.2d 303 (Kyle ).) | Plaintiff's voluntary dismissal was timely filed under statute granting a plaintiff an absolute right to timely voluntary dismissal, and thus trial court lacked discretion to vacate dismissal or grant defendant's motion for summary judgment, even though trial court had sustained demurrers without leave to amend as to some of plaintiff's causes of action, and both parties had moved for summary judgment as to remaining causes of action, where trial court had issued no tentative ruling on summary judgment motions, and plaintiff had submitted admissible evidence in support of its motion; there had been no public and formal indication by court regarding merits of case, and plaintiff had not committed any procedural dereliction that rendered judgment against him inevitable or mere formality. West's Ann.Cal.C.C.P. S 581. | "Can plaintiff voluntarily dismiss, with or without prejudice, all or any part of an action before the actual commencement of trial?" | Pretrial Procedure - Memo # 5215 - C - SJ.docx | ROSS-003291291-ROSS-003291292 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 18817 | Bittner v. Sec'y of Def., 625 F. Supp. 1022 | 34+5(8) | As Judge Gesell has held, in remanding a challenge to an administrative discharge:The regulatory standards for determining when separation is justified and what type of discharge is warranted are broad and undoubtedly informed by military practices and interpretations of which the Court is unfamiliar. Resolution of plaintiff's substantive claims, involving ... matters of personnel management is, in the first instance for the military.... Precedent dictates that the case be remanded to the Secretary of the Army for the entry of findings upon which the Court can base its review.Martin v. Secretary of Army, 455 F.Supp. 634, 639 (D.D.C.1977). | Member of air force who resigned and received general discharge after administrative discharge proceedings were initiated against him on grounds that he admitted being homosexual was required to pursue administrative remedies with air force personnel review boards before pursuing his claims in court challenging less than honorable discharge characterization issued administratively for homosexuals, despite contentions that review boards lacked authority to examine constitutional claims, that the review process was too long and time consuming, and that prior board action with respect to other individuals suggested that plaintiff would also be unsuccessful with his claims. 10 U.S.C.A. SS 1552, 1553. | "Is the resolution of plaintiff's substantive claims, involving matters of personnel management is, in the first instance, for the military?" | 008599.docx | LEGALEASE-00139500-LEGALEASE-00139501 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 18818 | Sanford v. Dudley, 196 So. 3d 1106 | 307A+486 | We agree with Sanford. Withdrawal of her deemed admissions would promote a resolution of the case on its merits and would not prejudice the Dudleys' ability to defend the case on its merits. Furthermore, Sanford promptly took action to correct her mistake, while the litigation was still at an early stage"indeed, she moved to withdraw her admissions only forty-six days after the Dudleys filed their answer. A party who fails to respond timely to requests for admissions risks severe consequences, but, as our Supreme Court has explained, "Rule 36 ... is not intended to be applied in Draconian fashion," and courts may permit "withdrawals of admissions in proper circumstances." DeBlanc v. Stancil, 814 So.2d 796, 801"02 (Miss.2002). In the present case, the circuit judge either mistakenly concluded that he lacked discretion to grant Sanford's motion or abused his discretion by denying her motion. As there was no sound basis for denying the motion, we reverse and remand the case for further proceedings. | The seemed harshness of the rule for requests for admission may be ameliorated by the trial court's power to grant amendments or withdrawals of admissions in proper circumstances. Rules Civ.Proc., Rule 36. | Are the requests for admission rule intended to be applied in Draconian fashion? | 029103.docx | LEGALEASE-00139583-LEGALEASE-00139584 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,544 | 14,873 | 21,876 | 9,029 |
| 1B819 | State Bank v. Com Mercantile Bank of New York, 248 N.Y. 428 | B31+481 | We need not choose between these alternatives, although it might well be held that by the Personal Property Law of New York (section 41) the claims could be transferred, even though the transfer was prohibited... Personal Property Law (Consol. Laws c. 41) § 41. | Nonnegotiable certificates of deposit are assignable, in absence of agreement to contrary, in accordance with Personal Property Law (Consol. Laws, c. 41) § 41. | Are nonnegotiable certificates of deposit assignable? | 00924.docx | LEGALEASE-00180629-LEGALEASE-00180630 | SA.Sub | 0.69 | 0 | | 1 | 1 | |
| 1B820 | Buckner v. Real Estate Bank, 5 Ark. 536 | B31+732 | A deed of assignment made by a corporation, whereby it assigned, transferred and made over all its real estate, real and personal, choses in action and assets, does not transfer the legal interest in a bill of exchange, so as to enable the assignee to sue in his own name. | A deed of assignment made by a corporation, whereby it assigned, transferred and made over all its real estate, real and personal, choses in action and assets, does not transfer the legal interest in a bill of exchange, so as to enable the assignee to sue in his own name. | Can an assignment authorize the holder to sue in his own name? | 00926.docx | LEGALEASE-0016943-LEGALEASE-0016945 | Condensed, SA, Sub 0.92 | 0.92 | 0 | | 1 | 1 | 1 |
| 1B821 | Ryan v. May, 14 Ill. 49 | B31+416 | This action was brought upon a note payable to the bank, by Ryan, surviving assignee of the bank, in whom the legal title was vested by the assignment and several acts of the legislature... | The legal title to a bill or note payable to order can be transferred only by indorsement. | How is legal title to a bill or note transferred? | 00927.docx | LEGALEASE-0016946-LEGALEASE-0016945 | SA.Sub | 0.95 | 0 | | 1 | 1 | |
| 1B822 | Spencer v. Sterling Bank, 63 Cal. App. 4th 1055 | B31+427 | As relevant, an "indorsement" is a signature that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument... | If endorsement is made by holder of instrument and endorsement identifies person to whom it makes instrument payable, it is a "special indorsement." West's Ann. Cal. Com. Code § 3205(a). | What are special indorsements? | Bills and Notes - Memo 91-94.docx | ROSS-003268780-ROSS-003268781 | SA.Sub | 0.84 | 0 | | 1 | 1 | |

Appendix D

3320

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1.0823 | Gross v. Lomme, 77 Nev. 200 | 83E+455 | It is to be noticed that Lomme on the back of the note signed the instrument first as acceptor... | Contracts of endorsement and of guarantee were separate and distinct obligations from obligations contained in note itself. | Are contracts of endorsement and contracts of guarantee separate? | 001017.docx | LEGALEASE 00180005-LEGALEASE 00180010 | Condensed | 0.91 | 0 | | 1 | 1 | |
| 1.0824 | Padilla v. Ghuman, 183 P.3d 653 | 83E+481 | When the notes were subsequently assigned, plaintiffs stood in the shoes of Centenal Bank and obtained all the rights Centenal Bank possessed under the notes. See Boyd v. Boyd, 116 Kan. 358, 226 P. 794 (1924); Ecks 1994 [The a general principle of common law, an assignee stands in the shoes of the assignor...] | When promissory notes are assigned, the assignees stand in the shoes of the original payee and obtain all the rights the original payee possessed under the notes. | Can an assignee stand in the shoes of the assignor? | Bills and Notes - Memo 389 ODB.docx | ROSS-003290847 | Condensed, SA, Sub 0.5 | 0.5 | | | | 1 | |
| 1.0825 | In re Glover- Tonwe, 626 A.2d 1387 | 46H+924 | The Board's finding with respect to the character of the particular offense is simply supported by the decisions of this court dealing with the identical case law from these... | Crime of bribery inherently involves moral turpitude and warrants automatic disbarment. D.C.Code 1981, S 11-2503(a); 18 U.S.C.A. SS 1305-68, 201(b)(1)(A),(2)(A). | Does the crime of bribery, when committed by an attorney, result in disbarment? | 001014.docx | LEGALEASE 00193969-LEGALEASE 00193970 | SA, Sub | 0.84 | 0 | | | 1 | |
| 1.0826 | Wisniski v. Ely, 767 P.2d 171 | 289+2041 | "The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or the partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary." | Trial court did not abuse its discretion in conducting accounting of partnership business without apportionment of interest, given single nature of accounting, which involved determination of withdrawing partner's interest in partnership and his right to profits. W.S.1977, S 17-13-615. | Is the right to an accounting of his interest one of the rights of the partners in a partnership? | 022293.docx | LEGALEASE 00140181-LEGALEASE 00140182 | Condensed, SA, Sub | 0.04 | | | | 1 | |
| 1.0827 | Felter's Estate, Bd. of Trustees, Pub. Emp. Ret. Sys., 68 N.J. Super. 391 | 296+2 | The argument is made that, if Felter had remained a policeman and had died, while his contributions were vested and distributable, his widow would have received a pension. Therefore, it is contended that, if the merit pension is vested...  | Right to a pension or to a return of pension contributions exists only where a statute provides therefor. | Does a right to pension depend on a granting statute? | Pension - Memo 25 - 58.docx | ROSS-003287613-ROSS-003287614 | Condensed, SA | 0.94 | 0 | | 1 | 1 | |
| 1.0828 | Ballarino v. Castellini, 29 N.J. Super. 183 | 296+2 | Consideration of all these acts in the light of the fac genenis character of a public pension insurably reveals to us a clear conviction... from the appreciation and graciousness of the sovereign, it is an inducement to conscientious, efficient and honorable service. And the utility would be destroyed if a person who is properly subject to discharge... | A pension is a bounty springing from the appreciation and graciousness of the sovereign and it is an inducement to conscientious, efficient and honorable service, and honorable service is implicit in every pension enactment. | Does every pension enactment require an honorable service? | 027789.docx | LEGALEASE 00180548-LEGALEASE 00180549 | Condensed, SA | 0.74 | 0 | | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 18829 | Robin v. Kaitz & Footnor, 609 Fl. App. 16 162 | 30+3896 | Nevertheless, "Illinois is a fact-pleading jurisdiction. [Citation.] While the plaintiff is not required to set forth evidence in the complaint [citation], the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions." Marshall v. Burger King Corp., 222 Ill.2d 422, 429*30, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). Our review of section 2*615 or section 2*619 dismissal is de novo. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 579, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). We are not bound by the trial court's reasoning and "may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground," In re Marriage of Gary, 384 Ill.App.3d 979, 987, 323 Ill.Dec. 783, 894 N.E.2d 809 (2008). | When reviewing the dismissal of complaint for failure to state a cause of action, a reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiff. S.H.A. 735 ILCS 5/2-615. | "Must the plaintiff allege facts, in a fact-pleading jurisdiction, to bring a claim within a legally recognized cause of action?" | Pleading - Memo 376 - BMM.docx | ROS5-0022892017-ROS5-0022892018 | Condensed, SA 0.74 | 0.74 | 0 | | | 1 | 1 |
| 18830 | Warnaik v. City of Mason, 33 Ga. 162 | 30?4+74 | It was conceded on the argument here that the interrogatories were, in fact, executed in the city of New York, and that "Georgia, Bibb county," was inserted in the place of execution by mistake, and it is not insisted that the interrogatories were not executed according to the law, wherever executed. As a mere mistake in writing "Georgia, Bibb county," as the place of execution, the defendant was not mislead by it, and especially as no commissioner were named. The reply is, that the statute law of the State requires that the place of the execution of the interrogatories by the commissioner should appear. | The place of the execution of the commission attached to the interrogatories must appear. Otherwise such evidence should be excluded. | Must the place of the execution of the commission attached to the interrogatories appear? | Pretrial Procedure - Memo X 503 - C - TN.docx | ROS5-0023081364-ROS5-0023081365 | Condensed, SA, Sub 0.77 | 0.77 | 0 | | 1 | 1 | 1 |
| 18831 | Gallagher v. Swalek, 106 Ill. App. 3d 427 | 34?+70 | A trial court has broad discretion to allow or deny motions for continuance. (Thiinavik Co. v. Exposito [1983], 87 Ill.App.3d 289, 293, 42 Ill.Dec. 305, 408 N.E.2d 1024.) Absent a manifest abuse of that discretion, a reviewing court will not reverse the decision of the trial court. (Thiinavik, at 294, 42 Ill.Dec. 305, 408 N.E.2d 1024.) We find that the trial court did not abuse its discretion in refusing to allow the plaintiff to ask for a continuance. | Denial of a continuance to allow a debtor's attorney, who was then hospitalized, to argue motion to vacate the judgment was not abuse of trial court's discretion, where there was no showing that either the attorney's associate, who appeared in court to ask for a continuance, or another attorney could not have argued the point. | Will the judge deny defendant's motion for rehearing when no attorney appears for defendant's request for continuance? | 032389.docx | LEGALEASE-00140305-LEGALEASE-00140306 | Condensed, SA 0.82 | 0.82 | 0 | | | 1 | 1 |
| 18832 | Yanagiwa v. City of Half Moon Bay, 513 F. Supp. 2d 1056 | 386+14 | 150. The argument proceeds (Stewart (2) by evidence that (a) at least 50% of the stormwater that entered Beckwood's southeast corner from Carnoustie and Mills Creek reaches the ocean below the Southern Dunes, and (b) stormwater from the northern end of Golden Gate Avenue flowed directly into Beckwood from City's street. (districts 911,912). 150. If it is understood there is any truth in the plaintiff's position that all, or below in (Martin Moretto (Cty. v. Insurance Co. of North America, 40 Cal.App.4th 1110, 1121, 47 Cal.Rptr.2d 670 (1995)) and consequences may be committed by consequential and indirect injuries as well as by direct and forcible injuries. (Seho v. Pedro, 140 Cal.App.2d 68, 441, 295 P.2d 190 (1956)) | Under California law, trespass may be committed by consequential and indirect injuries as well as by direct and forcible injuries. | Can trespass be committed above the surface of the land? | Trespass - Memo 290 - JK.docx | ROS5-0030916444-ROS5-0030916445 | Condensed, SA | | 0 | | | 1 | 1 |
| 18833 | Rogers v. Donovan, 261 Or. 124 | 386+11 | Trespass lies only for an interference with a possessory interest in land. Negligent rights, the Law of Torts s 13 (1956). An easement only is a non-possessory interest in land. Therefore, the complaint incorrectly alleges that defendant interfered with a claimed easement and a trespass. Tiffany, Real Property § 814. p. 582 (1939). | Since trespass lies only for an interference with a possessory interest in land, and since an easement is a non-possessory interest in land, interference with a claimed easement is not a "trespass." | Is interference with an easement a trespass? | 047417.docx | LEGALEASE-00140594-LEGALEASE-00140595 | Condensed, SA | 0.4 | 0 | | | 1 | 1 |
| 18834 | Farmers Nat'l Bank v. Commonwealth Dep't of Revenue, 486 S.W.3d 872 | 315+40 | But the Banks' premise is flawed; the sum of tax certificates to third-party purchasers is not a transaction, nor sale of the Commonwealth's authority to impose or collect taxes. Instead, the sale of tax certificates allow third-party purchasers to satisfy the outstanding tax debts in exchange for a "close in action" to recover the cost of the tax certificate and all attendant fees. A close in action is a right of action to recover "a debt, a demand, or promissory note, for a right to recover damages." Skelton v. Sch. 49 U.S. 441, 347, 8 How. 441, 12 L.Ed. 1147 (1850), therefore has long been accepted as a party's ability to purchase and transfer choses in action, even for delinquent tax claims. See Iowa Vance Co. v. Market Real Estate Co., 258 Ky. 640, 85 S.W.2d 517, 518 (1935). And it is equally well settled that choses in action do not constitute any rights that may not be assigned. Whitesman v. Raeth, 224 Ky. 679, 7 S.W.2d 1041, 1042 (1928). By purchasing tax certificates, the purchasers are no different than the delinquent taxpayer, because, like the taxpayer, they are purchasers with a right to recover the cost of the tax debts and interest. In exchange, they receive the right to recoupment by enforcing the right obtained by acquiring the chose in action. Similarly, the purchasers who purchase a tax lien in an action under the statutory scheme is entitled to recover that amount from the taxpayer. | Indictment charging conspiracy, bribery, and aiding and abetting receipt of bribes and alleging that internal revenue agents received fees not provided by law, that defendant offered agent's fees other than provided by law in recognition of acts performed by agents and that defendant, through his employees offered money to agents to influence their official actions and the in procuring of such money of those official actions, and the making of charges against him, enable him to prepare his defense, avoid double jeopardy and avoided the duplicitous purpose of trial. 18 U.S.C.A. §§ 201, 371. | Can the payer of a bribe be charged with aiding and abetting the receipt of the bribe? | Action - Memo X 107 - C - NK.docx | ROS5-0022186428 | Condensed, SA | 0.91 | 0 | | | 1 | 1 |
| 18835 | United States v. Cogan, 266 F. Supp. 374 | 91+283 | Defendant contends that Congress could not have intended that the payor of a bribe could also be charged with aiding and abetting the payee of the bribe. To the contrary, our Court of Appeals specifically held that the payor of a bribe can be charged with aiding and abetting the violation of 26 U.S.C. * 7214(a)(2). United States v. Kenner, 354 F.2d 780, 784 (2d Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966). See also United States v. Umans, 368 F.2d 725 (2d Cir. 1966) in which the Court reaffirmed its holding. However sub certum, United States v. Umans, 389 U.S. 80 (1967). | "A "Chose in action" is a right of action to recover a debt, a demand, or a promissory note or a right to recover damages." | What is a "Chose in action"? | | LEGALEASE-00141839-LEGALEASE-00141841 | SA | 0.35 | 0 | | | 1 | 1 |
| 18836 | Gundara v. State, 527 S.W.3d 261 | 63+1(1) | We turn to an examination of the cases involving bribery. The Texas Court of Criminal Appeals recently cited examples of bribery as "seeking the dismissal of a traffic ticket for accommodation of a family member or the seeking of a pay raise for oneself as it involve attempts to obtain a personal benefit." Tex. Const. art. 16, S.41; Tex. Penal Code Ann. § 36.02. Gundara then asserts that bribery cannot occur unless the benefit sought from the public official is personal to that officer." Id. at 814. "Obtaining a personal benefit is a constitutionally required element of bribery." *Id. | Is obtaining a personal benefit a constitutionally required element of bribery? | Bribery - Memo #708 - C - LB.docx | ROS5-0248885-ROS5-00328886 | SA, Sub | 0.77 | | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,073 |
| 13837 | Heimowitz v. State, 384 So. 2d 280 | 63+11 | | Evidence on issue whether accused, who had been president of Public Service Commission, voted whether to give annual favors in exchange for official action is sufficient thing of value to support a charge of "bribery." | Is giving or promising to give annual favors in exchange for official action a sufficient thing of value to support a charge of "bribery? | 013098.docx | LEGALEASE 00140574-LEGALEASE 00140725 | Condensed_SA, Sub 0.24 | 0.24 | | | 1 | 1 | |
| 13838 | Hartley v. Richardson, 91 Me. 424 | 105+47 | | A custom, to be binding, must be universal in the locality and long existence. | Does a custom have to be universal in the locality for it be binding? | Customs & Usage - Memo 163 - R4.docx | ROSS 000287404-ROSS 000287405 | Condensed_SA | 0.9 | 0 | 1 | 0 | 1 | 1 |
| 13839 | Perrin v. Obama, 253 F. Supp. 3d 648 | 135+1 | | Domicile requires residence in a state and an intent to remain in the state. | Does domicile require intent to remain in state? | Domicile - Memo #12 - C-SA.docx | ROSS 000287429-ROSS 000287430 | Condensed_SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13840 | Resh v. Lopez, 858 F. 3d 55 | 135+2 | | Owning property in forum does not alone establish domicile; one may have more than one residence in different parts of country or world, but person may have only one domicile. | Does owning property alone establish domicile? | 014513.docx | LEGALEASE 00141815-LEGALEASE 00141816 | Condensed_SA | 0.77 | 0 | 1 | 0 | 1 | |
| 13841 | Hicks v. Humble Oil & Ref. Co., 970 S.W.2d 90 | 272+1025 | | Failure to comply with provisions of Railroad Commission Rule generally prohibiting spacer nearer than specified number to oil did not constitute negligence per se in tort action nor underlie negligence cause of action; "rule 39 and 40 were intended to protect the public from the primary purpose of preventing contamination, in light of purpose of rule to prevent waste and encourage conservation of oil. V.T.C.A., Natural Resources Code § 85.046. | "Is article 6049 of Vermont's Railroad Civil Statutes a civil penalty statute enacted for the primary purpose of promoting and encouraging the conservation of the rules, regulations, and orders of the railroad commission?" | Mines and Minerals - Memo #120 - C - CSS.docx | LEGALEASE 00200594-LEGALEASE 00200595 | Condensed_SA, Sub 0.81 | 0.81 | 1 | 1 | 0 | 1 | 1 |
| 13842 | In re Burley's Estate, 171 Kan. 442 | 307+725 | | Ordinarily, a continuance is not a matter of right, but may be on such conditions as court may impose. | Can a continuance be a matter of right? | Pretrial Procedure - Memo #187 - C - N6.docx | ROSS 000292151-ROSS 000292226 | Condensed_SA | 0.67 | 0 | 1 | 0 | 1 | |

Appendix D

3323

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 18843 | Moss v. Booth, 34 Mo. 316 | 307Ak74 | The suppression of the deposition of the witness Haxton Booth, on the motion of the respondent, is the only matter in the record which merits to be considered. The motion specified three grounds for the suppression of the deposition: 1st, That the deposition was not signed by the witness; 2d, That it was not properly certified by the justice who took the same. And, 3d, That because of the omission of the taking of the deposition gave the plaintiff. The first ground (the omission to sig) is disposed of well by inspection as to the certificate of the justice taking the deposition. The circumstance that the signature of the witness was below the jurat just at the end of the deposition, was of no consequence. The purpose of signing is to signify the assent of the witness to the contents of the deposition; and this is accomplished as well by placing the signature at one place as at another. As to the second ground of objection, the justice's certificate shows that the witness was sworn to testify the truth of his knowledge of the matter in controversy in the cause; that he was examined and his examination was indorsed in writing, and subscribed by him in the presence of the justice, at the time and place specified in the notice; this is what the law requires; and all that the justice certifies as to the authentication of the deposition. (R. C. 1855, p. 656, ¶ 22.) As to the difficulty of the notice, there is a notice attached to the deposition which is in the form ordinarily used in practice in this State, and which appears by a sufficient return indorsed on it to have been duly served on the plaintiff, in the county in which the suit was pending; and where the deposition was taken six days before the time appointed for the taking of the deposition. The motion points the attention of the court to no special defect in the notice or its service of it, and the more is apparent. The motion was improperly sustained, and for this cause the judgment is reversed and the cause remanded for a new trial. | The signature to a deposition is good, even if inadvertently put in the wrong place? | "Is the signature to a deposition good, even if inadvertently put in the wrong place?" | 015548.docx | LEGALEASE-00141316-LEGALEASE-00141317 | Condensed, SA, SA | 0.96 | 0 | | | 1 | |
| 18844 | W.S. Butterfield Theatres v. Dept. of Revenue, 353 Mich. 345 | 371v2005 | The principles here involved were well expressed by the Supreme Court of the United States in State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 537, 51 S. Ct. 540, 543, 75 L. Ed. 1248, wherein it was held, in upholding the constitutionality of a statute providing for graduated fees for chain stores, that: "The statute rests upon the power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be exercised so as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. | Power of taxation is fundamental to very existence of government of the state. | Is the power of taxation is fundamental to the existence of a government? | 043271.docx | LEGALEASE-00141087-LEGALEASE-00141088 | Condensed, SA | 0.9 | | 0 | | 1 | |
| 18845 | Havens v Attorney Gen., 9174 H. 115 | 371v2001 | The fact that the plaintiff may have suffered some loss of profits through diminished business because of such assessment are beyond the quantum of products is of no materiality. Taxes in themselves are economic charges which must be paid in one way by the person affected. They must either come from the surplus of the taxpayer, or the burden must be passed on to those with whom taxpayer has economic relations. | A "tax" in itself is an economic charge which must be paid in some way by the person affected, and it must either come from a surplus of the taxpayer, or the burden must be passed on to those with whom taxpayer has economic relations. | Is tax an economic charge in itself? | 043185.docx | LEGALEASE-00141111-LEGALEASE-00141112 | Condensed, SA | 0.54 | 0 | | | 1 | |
| 18846 | Mooney v. Mitchell, 367 F.2d 370US 690 | 371v2001 | Taxes are impositions, not debts, collected for the support of the government. Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197. The form of procedure to collect them cannot change their character. No contractual or quasi-contractual obligation arose out of the assessment. The enforcement of revenue laws rests, not on consent, but on force and authority. Stockard v. Morgan, 185 U.S. 27, 22 S.Ct. 576, 46 L.Ed. 785; N.J. 337. An action for debt cannot be maintained to collect a tax in the New York state courts. City of New York v. McLean, 170 N.Y. 374, 63 N.E. 380; Matter of Mattson v. United Mills Co., 213 N.Y. 227, 110 N.E. 183. See, also, City of Boston v. Turner, 201 Mass. 190, 87 N.E. 634. With the apathies and disregard for public welfare that state had in being administered in New York, the effort to collect a tax, for a political subdivision of Indiana, is repugnant to the settled principles of private international law, which preclude one state from exercising the authority of taxes for a sister state, and from enforcing in penal or revenue laws in such. The reasoning that makes these rules so clear is now the taxing power of a state is, by the Federal Constitution (Amendment 14), limited to persons and property within its jurisdiction. Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239. | Taxes are imposts, not debts, collected for support of government? | Are taxes imposts, not debts, collected for support of government? | Taxation - Memo 432 C - 5b.docx | RDGS-00330234-RDGS-00330244 | Condensed, SA | 0.95 | | 0 | | 1 | |
| 18847 | Larson v. W. Underwriters, 771 S.D. 157 | 95v159 | The failure to pay the assessment was apparently caused by the language of the contracts wherein it stated that taxes were to be paid by defendant from the contest. The word 'exclusive' and the word 'inclusive' of assessments. Plaintiffs claim that the clause was the Defendant corporation claims it is not. The word taxes has two accepted meanings, one inclusive and one exclusive of assessments. Where the word taxes is used in a contract the meaning must be determined from the context, Chicago Great Western Ry. Co. v. Kansas City Northwestern Ry. Co., 75 Kan. 167, 88 P. 1085. The trial court construed to find the plaintiffs in default, however, ordered them to pay this assessment and thus the defendant corporation in any event was not prejudiced. | Meaning of the word taxes, when used in a contract, must be determined from the context. | Does the word taxes have meanings inclusive and exclusive of special assessments? | 043207.docx | LEGALEASE-00141214-LEGALEASE-00141215 | Condensed, SA | 0.87 | | 0 | | 1 | |

3324

Appendix D

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18848 | Weisberger v. Boswell, 130 F. Supp. 455 | 17-J-2065 | It is well established that the states have wide discretion in the laying and collecting of their taxes... | States have wide discretion in laying and collecting their taxes. | Do states have wide discretion in the laying of their taxes? | Taxation - Memo # 590 - C-McABex | ROSS-003192231/ROSS-003193224 | Condensed, SA, Sub 0.7 | 0.92 | 0 | 1 | | 1 | |
| 18849 | Colonial Pipeline Co. v. Com., 145 S.E.2d 227 | 17-J-2065 | There are really answers to this premise. In the first place, the power of the State of Virginia to levy taxes is not derived from the Constitution of the United States... | State has inherent and unlimited power of taxation unless restrained by State or Federal Constitution, and power of state to levy taxes is not derived from Federal Constitution as interpreted by Supreme Court. | Is the power of the states to impose tax absolute? | 043568.docx | LEGALEASE-00141809-LEGALEASE-00141810 | Condensed, SA, Sub 0.7 | 0.7 | 0 | 1 | | 1 | |
| 18850 | State ex rel. Sudduth et al. Line R. Co. v. Gay, 160 Fla. 445 | 17-J-2160 | Chapter 20724, 21043 and 22805 Laws of Florida, enacted respectively in 1941, 1943 and 1945, pursuant to Section 1, Article IX, contain the entire statutory law of this State with regard to intangible personal property taxes... | Tax laws imposed under the statute relating to intangible personal property taxation are ad valorem taxes imposed against intangible personal property, F.S.A. § 199.01 et seq. | "Is a tax on intangibles an ''ad valorem tax''?" | 043605.docx | LEGALEASE-00141655-LEGALEASE-00141655 | Condensed, SA, Sub 0.56 | 0.56 | 0 | 1 | | 1 | |
| 18851 | Ingram v. Mandler, 56 F.2d 994 | 83-E-481 | A prominent note, like any notes drawn in an action to charge in action, may be transferred by assignment without the actual delivery of the note. Baldwin v. Reynolds (C. C. A.) 9) 109 F. 435; Stafford v. Bond, 106 DAC 173, 23 F. 181, 186; Johnson v. Beckley, 64 Utah 43, 228 P. 189, 191. In order for an assignment to constitute an assignment of a chosen in action, no particular form of words is necessary; provided the market be some sense of delivery to transfer the title thereto. Clark v. Sigua Iron Co. (C. C. A.) 81 F. 310, 312; S.C., p. 306." 73. We conclude that the contract effectually transferred the title to defendant. | Note may be transferred by assignment without actual delivery. | Can a note be transferred without delivery? | Bills and Notes - Memo 579 - BK.docx | ROSS-003203019 ROSS-003203020 | Condensed, SA | 0.39 | 0 | 1 | 1 | 1 | |
| 18852 | United States v. McLean, 802 F.2d 1228 | 110-I-1337(3) | The government cites United States v. Briston, 372 Fed App. 84 (3d Cir. 2009), an unpublished Third Circuit case in support of this proposition. In Briston, the Third Circuit considered whether the district court had properly instructed the jury that appellant benefits received... | Doctrine of invited error precluded government from arguing on appeal interference provision that district court erred in submitting a jury question of whether item could be classified as "benefit" required to establish federal jurisdiction... | Does the court make a statutory inquiry to determine whether funds provided under a specific federal program constitute benefits? | Bribery - Memo #704 - C LEGALEASE-00032086- LB.docx | LEGALEASE-00032086 LEGALEASE-00032087 | Condensed, SA, Sub 0.39 | 0.39 | 0 | 1 | 1 | 1 | |
| 18853 | United States v. Manning Coal Corp., 977 F.2d 117 | 260-K(5)(2) | The government's view must also prevail because it takes into account how the regulatory scheme under the Surface Mining Control and Reclamation Act affects the operation of res judicata. It bears emphasis that res judicata is not natural to... | Mineral owner and mining company were jointly and severally liable for surface mining fees and the joint liability precluded any finding of private between the two as to make government's settlement of claim against one res judicata as to its claim against the other. | Are mining contractors and landowners jointly and severally liable for reclamation fees? | 02.1218.docx | LEGALEASE-00142250- LEGALEASE-00142291 | Condensed, SA, Sub 0.83 | 0.83 | 0 | 1 | 1 | 1 | |
| 18854 | Browning Oil Co. v. Luecke, 38 S.W.3d 625 | 260-T-1 | An oil and gas lease is a contract and must be interpreted as one. See Hitzelberger v. Samedan Oil Corp., 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied). In construing or unambiguous oil and gas lease, such as the one at issue here, we seek the intention of the parties as it is expressed within the lease. See Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.1996). The writing alone is ordinarily deemed to express the intention of the parties; accordingly, this Court will enforce an unambiguous lease as written. See id. | Oil and gas lease is a contract and must be interpreted as one. | Is an oil and gas lease a contract? | 02.1214.docx | LEGALEASE-00141599- LEGALEASE-00141600 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |

Appendix D

3325

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18855 | In re Century Offshore Mgmt. Corp., 185 B.R. 734 | 260+5.1(9.1) | Construing the term "value of production," the Fifth Circuit Court of Appeals in Diamond Shamrock Exploration Corp. v. Hodel, 853 F.2d 1159, 1168 (5th Cir.1988), determined that production is defined as the actual physical severance of the mineral from the formation. | District court did not have to defer to interpretation by United States Department of Interior, Bureau of Minerals Management Service (MMS) of term "gross proceeds," for purposes of regulation stating that under no circumstances will value of production for royalty purposes be less than gross proceeds accruing to lessee for lease production, as set forth in MMS' decisions in Shell Offshore, Inc. and Samedan Oil Corporation, where not only had Fifth Circuit in Diamond Shamrock decision definitively interpreted Outer Continental Shelf Lands Act (OCSLA) and gross proceeds rule contained in OCSLA regulations, but MMS had amended royalty regulations to conform that to that interpretation. Outer Continental Shelf Lands Act, S 8(a), 43 U.S.C.A. S 1337(a); 30 C.F.R. S 206.152(h). | When is the definition of the word production? | 021394.docx | LEGALEASE-00143458-LEGALEASE-00143459 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 18856 | Rosenfeld, Meyer & Susman v. Cohen, 146 Cal. App. 3d 200 | 302+20 | Finally, to the extent that the law and motion department based its dismissal of the conspiracy cause of action on its belief that it added nothing to the third and fourth causes of action for breach of fiduciary duty an interference with contractual relations, such dismissal was erroneous since it is well settled authority that a party is permitted to plead alternative legal theories. (Steiner v. Rowley (1950) 35 Cal.2d 713, 718, 221 P.2d 9; Tanforan v. Tanforan (1916) 173 Cal. 270, 273, 159 P. 709; 3 Witkin, Cal.Procedure (2d ed. 1971), Pleading, " 290, p. 1965.) | Party is permitted to plead alternative legal theories. | Can a party plead alternative legal theories? | Pleading - Memo 402 - RMM.docx | ROSS-003287665-ROSS-003287666 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 18857 | Mac Smith v. Fish, 647 So. 2d 771 | 307A+202 | Mac Smith, Inc., cites Wiginton v. Hagler, 585 So.2d 5 (Ala.1991), in support of its position that the unsigned deposition should not have been considered by the trial court. In Wiginton, the defendant did not object to the use of an unsigned deposition until trial. Our supreme court held that the objection made pursuant to Rule 32(d)(4), was timely because until trial the defendant had had no notice that the plaintiff intended to use the unsigned deposition. | Trial court properly considered deposition of general contractor in action brought by subcontractor against homeowners even though deposition was unsigned; subcontractor did not object to unsigned deposition until court held hearing on homeowners' summary judgment motion, though subcontractor knew about deposition almost eight months earlier. Rules Civ.Proc., Rule 32(d)(4). | "Is an unsigned deposition, taken in shorthand and not certified under the code inadmissible if an objection is made in due time and in a proper manner?" | 032504.docx | LEGALEASE-00142300-LEGALEASE-00142301 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 18858 | Saunders v. City & Suburban R. Co., 99 Tenn. 130 | 388+63(1) | The defendant took her deposition, in which she stated these and other competent and material facts, and used it on a former trial of this case in the court below; but at the last trial, the record of which alone is before this court, the defendant closed its evidence without that deposition. Thereupon the plaintiff sought to read it as his evidence, and the trial judge refused to permit him to do so, and, as a consequence, the deposition did not go to the jury at all. This action of the court was erroneous. A deposition taken and filed in a case by one party, and not used by him, may be read by the other party as his own evidence, if competent. Brandon v. Mullenix, 11 Heisk. 446; Elliot v. Shultz, 10 Humph. 234; Richmond v. Richmond, 10 Yerg. 343; 6 Enc. Pl. & Prac. 583; 5 Am. & Eng. Enc. Law, 607. The plaintiff had good reason to believe that the defendant would introduce the deposition on the pending trial, as it had done on the former one, and, being disappointed in that expectation, he had the right then to make the evidence his own, and so present it to the jury. Having asked permission to do this so soon as he discovered or could reasonably have known that the defendant did not intend to use the deposition, he was in time, and should have been allowed the privilege, notwithstanding the fact that he had previously closed his testimony in chief. | A deposition taken by defendant, and used by it on the first trial, may be offered in evidence by plaintiff on a second trial, after defeat has closed its evidence without offering the same. And plaintiff's reasonable expectation that it would again be offered by defendant is a sufficient excuse for failing to read it as evidence in chief. | "Where a deposition is taken by either party to a suit, and it is filed, may such party decline to read it on trial?" | Pretrial Procedure - Memo # 5758 - C - TM.docx | LEGALEASE-00032545-LEGALEASE-00032546 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 18859 | Spencer v. Perry, 17 Me. 413 | 231+107(3) | The case finds no assent to the continuance in question by the plaintiff or his counsel. His mere silence could not confer a power, not warranted by law. The Justice not being present at the time and place, to which the cause was duly continued, operated a discontinuance of it. This is very clear upon principle and authority. The Justice had no right to order a further continuance, prior to the day appointed. It might lead to great abuse in practice; and is authorized neither by statute, nor by the common law. | Where a justice has ordered a continuance of an action, he cannot order a further continuance prior to the day appointed. | Can a further continuance order be made prior to the day appointed? | Pretrial Procedure - Memo # 6099 - C - DHA.docx | ROSS-003316753 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 18860 | Eastler v. State Tax Assessor, 499 A.2d 921 | 371+3249 | The question thus becomes one of distinguishing an excise tax from a property tax. A property tax is levied on the ownership of property, Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 294, 41 S.Ct. 272, 275, 65 L.Ed. 638, 646 (1921); Flynn v. City of San Francisco, 18 Cal.2d 210, 215, 115 P.2d 3, 6 (1941), while an excise tax may only be levied on a use of the property. Bromley v. McCaughn, 280 U.S. 124, 136, 50 S.Ct. 46, 47, 74 L.Ed. 226, 229 (1929); Western Union, 73 Me. at 526; Weaver v. Prince George's County, 281 Md. 349, 358"59, 379 A.2d 399, 404 (1977); John Wanamaker, Philadelphia v. School District, 441 Pa. 567, 572"75, 274 A.2d 524, 526"27 (1971).7 | "Excise tax" may only be levied on a use of property, however, excise tax is not confined to a tax on business, but also embraces any tax imposed on a particular use of property or particular power over property incidental to ownership. | "Is ""property tax"" levied on the ownership of property?" | 045581.docx | LEGALEASE-00142400-LEGALEASE-00142401 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 18861 | Evans v. W. Norriton Twp. Mun. Auth., 370 Pa. 150 | 381+54 | Moreover, a distinction between taxes and municipal charges or assessments against abutting property owners was recognized in Northern Liberties v. St. Johns Church, 13 Pa. 104, 107; Pray v. Northern Liberties, 31 Pa. 69, 71; Philadelphia v. U. S. Housing Corp., 280 Pa. 417, 124 A. 669. Compare also the line of cases which hold that an exemption from taxation either by statute or by charter does not constitute an exemption from special assessments. Philadelphia v. Pennsylvania Hospital, 143 Pa. 367, 22 A. 744; Broad Street Sewickley Methodist Episcopal Church's Appeal, 165 Pa. 475, 30 A. 1007; Philadelphia v. Union Burial Ground Society, 178 Pa. 533, 36 A. 172, 36 L.R.A. 263; Harrisburg v. Harrisburg Cemetery Association, 293 Pa. 390, 143 A. 111. For reasons hereinafter appearing, it is unnecessary to decide whether the assessment of the cost of a sewer and the liening of such a charge is merely an assessment for local purposes and local benefits or is a tax within the meaning of " 20 of Article III of the Constitution. | The State legislature has the right to delegate its power to tax to municipal bodies, such as counties, cities, boroughs, and townships, whose commissioners or taxing officers are elected by people; and for purposes and objects of carrying on local government, such elected public officials may perform municipal functions and may be validly and constitutionally authorized to impose and collect taxes; and moreover, elected local public officials may be specifically authorized to assess sewer charges and create liens therefor against the abutting or benefiting property owners. 53 P.S. SS 2900z-5, subd. B(s), 19092-2406, 19092-2410, 19093-1507, 19093-1511. | Is the distinction between a general tax and a local assessment well recognized? | 045650.docx | LEGALEASE-00142957-LEGALEASE-00142958 | Condensed, SA | 0.36 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18862 | Douglas Aircraft Co. v. Johnson, 13 Cal. 2d 545 | 371+2060 | The determination of whether a particular tax is a property or excise tax is not always an easy matter. In discussing this problem in Ingels v. Riley, supra, 5 Cal.2d page 159, 53 P.2d page 941, 103 A.L.R. 1, it is stated:"The distinction between a tax on a privilege and a property tax is many times a close one. Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police powers, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved. 37 Cor.Jur., p. 171, " 9, and cases cited. | Generally, a "property tax" is for revenue and does not impose restriction on use of property taxed, whereas a "privilege tax," though also passed for revenue and as such to be distinguished from "license tax," is imposed on right to exercise privilege, and its payment is condition precedent to exercise of privilege. | "What is the function of a ""property tax""?" | 045671.docx | LEGALEASE-00143061-LEGALEASE-00143062 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 18863 | Cortigiano v. City of Waterbury, 133 Conn. 1 | 371+2060 | An assessment for benefits is not ordinarily included in the term "taxes." Whitmore v. Hartford, 96 Conn. 511, 523, 114 A. 686; City of New London v. Miller, 60 Conn. 112, 116, 22 A. 499. Section 169f, as the defendant contends, deals entirely with general taxes and does not relate to assessments for special benefits. This section was not amended by " 270g, although we inadvertently so stated in City of Bridgeport v. Schwarz Bros. Co., 131 Conn. 50, 54, 37 A.2d 693. While " 337e relates to taxes of the same general character, it also refers to tax liens, and " 270g amended it to include assessment liens in terms that leave no room for judicial construction. The word "tax" was to include any valid permanent improvement liens or assessment. Such liens and assessments were expressly brought within the statute and, unless excluded by the context, the other provisions of " 337e would have applied to them. | An assessment for benefits is not ordinarily included in the term "taxes". | "Is an assessment for benefits included in the term ""taxes""?" | Taxation - Memo # 722 - C - NS.docx | ROSS-003288900-ROSS-003288901 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 18864 | Hunton v. Com., 166 Va. 229 | 371+2060 | We think the fundamental weakness in petitioner case is his theory that any tax which affects property in any way, directly or indirectly, is a tax on that property. This argument is not sound and has been expressly repudiated by this court. | That tax directly or indirectly affects property does not necessarily make it "tax on property." | "When the tax directly or indirectly affects property make it a ""tax on that property""?" | 045707.docx | LEGALEASE-00142360-LEGALEASE-00142361 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 18865 | Humana of Florida v. McKaughan on Behalf of McKaughan, 652 So. 2d 852 | 413+2 | Finally, the Workers' Compensation Act is a limited statutory substitute for common law rights and liabilities. American Freight Sys., Inc. v. Florida Farm Bureau Casualty Ins. Co., 453 So.2d 468 (Fla. 2d DCA 1984); Grice v. Suwannee Lumber Mfg. Co., 113 So.2d 742 (Fla. 1st DCA 1959). The Plan shares this characteristic. Section 766.303(2) provides in pertinent part that "[t]he rights and remedies granted by this plan ... shall exclude all other rights and remedies ... at common law or otherwise." | Workers' Compensation Act is limited statutory substitute for common-law rights and liabilities. West's F.S.A. S 440.11(1). | What is workers compensation a substitute for? | 048180.docx | LEGALEASE-00142203-LEGALEASE-00142204 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 18866 | In re A.R., 170 Cal. App. 4th 733 | 34+34.9(2) | Before it was amended in 2008, the stay provision of the SCRA applied "[i]n any judicial action or proceeding...." (Former 50 U.S.C. Appen. " 522(a).) The provision necessarily included juvenile dependency proceedings, which " "are civil in nature." " ( In re Malinda S. (1990) 51 Cal.3d 368, 384, 272 Cal.Rptr. 787, 795 P.2d 1244, superseded by statute on another ground as stated in People v. Otto (2001) 26 Cal.4th 200, 207, 109 Cal.Rptr.2d 327, 26 P.3d 1061.) The 2008 amendment added the phrase, "including any child custody proceeding," after the phrase "civil action or proceeding" (Pub.L. No. 110"181 (Jan. 28, 2008) 122 Stat. 128), thus making it even more clear that the SCRA applies here. Indeed, the Agency concedes that "the SCRA applies in juvenile dependency proceedings." | The stay provision under the prior version of the Servicemembers Civil Relief Act (SCRA) applies in juvenile dependency proceedings, since such proceedings are civil in nature. Servicemembers Civil Relief Act, S 202(a), 50 App. U.S.C.A. S 522(a). | Does the SCRA apply to juvenile dependency proceedings? | Armed Services - Memo 252 - RK.docx | ROSS-003300575-ROSS-003300576 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 18867 | Williams v. United States, 47 Ct. Cl. 316 | 34+26 | As the latter act did not specify to what grade or in what proportion the twenty-six additional paymasters should be added, that question was referred to the Attorney-General, and he advised the President that it was entirely within his discretion to what grade and in what proportion the twenty-six additional paymasters should be appointed. Whereupon, on February 21, 1908, it was directed by the Executive that the whole number be added to the higher grade of passed assistant paymasters, and on that date, and in pursuance of said direction, the Secretary of the Navy issued the following order to the Chief of the Bureau of Navigation:"It is directed that hereafter assistant paymasters shall be considered as due for promotion to be passed assistant paymasters as soon as they have served three years in the grade of assistant paymaster: Provided, That the number of passed assistant paymasters shall not exceed fifty-six." | Where a statute enacts that there shall be 26 additional passed assistant and assistant paymasters on the active list of the navy, the President in his discretion may direct that the whole number so added to the active list shall be of the higher grade. Act March 3, 1903, 32 Stat. 1197, 34 U.S.C.A. S 334. | Is the President empowered to appoint either assistant or passed assistant paymasters? | 008653.docx | LEGALEASE-00144498-LEGALEASE-00144499 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 18868 | United States v. Bahel, 662 F.3d 610 | 63+1(1) | Section 666(a)(1)(B) provides that an agent of an organization that receives benefits in excess of $10,000 under a federal program, in any one year period, is guilty of an offense if he "corruptly ... accepts, or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization...." 18 U.S.C. " 666(a)(1)(B). We have held that Section 666 extends to both bribes"where the thing of value is part of a quid pro quo, and gratuities"where the thing of value is a "reward" rather than a bargained-for exchange. For example, in United States v. Crozier, 987 F.2d 893 (2d Cir.1993), we held that a prior version of Section 666, which is identical in all material ways to the current version of the statute, applied to both illegal gratuities and bribes. Id. at 898"99. | The statute that prohibits theft involving federal funds extends to both bribes and gratuities. 18 U.S.C.A. S 666. | Does the statute prohibiting theft involving federal funds extend to both bribes and gratuities? | 012309.docx | LEGALEASE-00144991-LEGALEASE-00144992 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 18869 | Metales v. State, 963 So. 2d 989 | 67+29 | Because we conclude that the State failed to rebut appellant's affirmative defense of consent as to the burglary, we need not reach the claim that the evidence, as a matter of law, failed to establish that appellant entered the apartment with the intent to commit an offense. Accordingly, appellant's conviction for burglary is reversed and the sentence is vacated. | Because consent to enter the premises is an affirmative defense to burglary, a burglary defendant has the burden of initially offering evidence to establish the defense, but after he does so the burden then shifts to the state to disprove the defense beyond a reasonable doubt. | Is consent a defense to burglary? | Burglary - Memo 224 - SB.docx | ROSS-003288763-ROSS-003288767 | Condensed, SA | 0.24 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1870 | Lichter v. Land Title Guarantee & Tr. Co., 150 N.E.2d 70 | 317v7 | The court held that proposed amendment to condominium and cooperative deeds and other such agreements... | Usages are presumed to be reasonable and the person attacking them has the burden of showing that i unreasonableness. | Are usages presumed to be reasonable? | 01d235.docx | LEGALEASE-00148083 LEGALEASE-00148084 | Condensed, SA | 0.84 | | | 1 | | |
| 1871 | Hand Davis Coal Co. v. Rodgers, 644 S.W.2d 339 | 388v228 | As we have said, the right to mine is subservient to the right of the surface owner in the event of... | It is not inconsistent for jury in its verdict in blasting case to absolve defendant liable for failure to adequately support the surface regardless of whether its mining activities were negligent and to hold the other defendant liable for compensatory damages to the extent that its blasting contributed to the subsidence and for punitive damages to extent that its blasting was done in reckless or wanton disregard for the rights of others. | Is the right to mine subservient to the right of the surface owner to have the surface maintained in its natural state free from subsidence? | 02357.docx | LEGALEASE-00144905 LEGALEASE-00144906 | SA, Sub | 0.23 | | | 1 | | |
| 1872 | Adams ex rel. Adams v. City of Westminster, 140 P.3d 8 | 307Av554 | Sovereign immunity issues concern subject matter jurisdiction and thus are determined in accordance with C.R.C.P. 12(b)(1) (see Trinity Broad. of Denver, Inc. v. City of Westminster, 848 P.2d 916 (Colo.1993)). If, as here, the underlying jurisdictional facts are undisputed, the issue is one of law, and a reviewing court is not bound by the trial court's determinations. City of Colorado Springs v. Conners, 993 P.2d 1167 (Colo.2000); Trinity Broad. of Denver, Inc. v. City of Westminster, 848 P.2d 916 (Colo.1993). | Does sovereign-immunity issues concern subject-matter jurisdiction? | ROSS-003182920 ROSS-003182921 | 01d445.docx | ROSS-003182920 ROSS-003182921 | Condensed, SA | 0.56 | | | 1 | | |
| 1873 | Deutsche Bank Nat'l Tr. Co. v. Waldorf, 57 So. 3d 1003 | 26Av1798 | After considering [the Kaori ] factors, "if a sanction less severe than dismissal with prejudice appears to be a viable alternative, the trial court should employ such alternative" (id. ). To sanction a party in case with prejudice are appropriate when the errors are made by the attorney, rather than the client, absent a showing of the client... | Trial court's failure to consider the Kozel factors for determining whether dismissal with prejudice is an appropriate sanction for attorney misconduct before dismissing bank's foreclosure complaint with prejudice for failure to provide the court with a summary that judgment package before the hearing on bank's summary judgment motion required reversal and remand for consideration of the factors in determining what sanction-other than dismissal-was appropriate. | Although no magic words are required when a court dismisses a case with prejudice as a sanction for attorney misconduct, which of the court find the contract leading to the order was willful? | 03d445.docx | LEGALEASE-00144903 LEGALEASE-00144904 | Condensed, SA, Sub | 0.31 | | | 1 | | |
| 1874 | Temple Univ. of Com. Sys. of Higher Ed. v. Pennsylvania Dep't of Pub. Welfare, 30 Pa. Cmwlth. 595 | 307Av552 | It is the settled law of this Commonwealth that, if at any stage of the judicial process a case is rendered moot, it will be dismissed. (Janet Corp. v. Tp. of Abington, 319 Pa. 579, 293 A.2d 436 (1930); Janet O. v. Carns, 249 Pa.Super. 291, 362 A.2d 1061 (1976). A universally recognized exception to this general principle arises where cases in which technically moot issues were decided on the merits because they were of a recurring nature, capable of avoiding review and involving a question of important public interest (e.g. Amalgamated Assoc. of Street, Electric Railway and Motor Coach Employees of America, Division 998 v. Wisconsin Employment Relations Board, 340 U.S. 416, 71 S.Ct. 373, 95 L.Ed. 389 (1951); Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); Wiemer v. King, 110 Pa. 120, 146 A. 918 (1929). | Should a case be dismissed when it is rendered moot? | 04d005.docx | ROSS-003289415 ROSS-003289416 | SA, Sub | 0.61 | | | 1 | | |
| 1875 | Abernathy v. City of Albany, 269 Ga. 88 | 413v2 | A change in an "integral" part of the limited definition of OCGA's 34"9"16 cannot be based upon a "reinterpretation" of that statutory provision so as to retroactively apply that statutory provision... previous decision in Southwire Co. v. George and the long line of cases cited previously approved therein. Any new retroactive application of these benefits... must originate with the legislature." Deas v. Food Lion, Inc., 287 Ga. 312, 314 (1), 471 S.E.2d 879 (1996). | Any enlargement of workers' compensation benefits and remedies must originate with legislature. | 04d288.docx | LEGALEASE-00144287 LEGALEASE-00144288 | SA, Sub | 0.79 | | | 1 | | |
| 1876 | Cunningham v. Dean Witter Reynolds, 550 F. Supp. 578 | 25v1134 | This recital of the problem stresses, however, that the court does in fact enjoy the discretion to refuse to compel arbitration under the circumstances of this case. But... | Congress intended the Arbitration Act to overrule the traditional refusal of courts to enforce arbitration agreements under the common law and the policy Congress intended to effectuate was to reduce the expense and delay of litigation where parties had provided the more efficient process of arbitration. 9 U.S.C.A. 1; 2. | Can a court refuse to enforce an arbitration agreement because of the joinder of a non-arbitrable claim? | Alternative Dispute Resolution - Memo 721 RK.docx | ROSS-003288471 | SA, Sub | 0.84 | | | 1 | | |

3328

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1877 | Commercial Iron & Metal Co. v. Bache Halsey Stuart, 1611-22-246 | 25T=181(1) | The first contention advanced is that, upon dismissal of Commercial's state and federal securities claims, and our declination to exercise pendent jurisdiction over the contractual claims, the matter should have proceeded to arbitration … may be waived by the conduct of the demanding party. Gcior International AG v. Raymond Forbes Co., Inc., 489 F.2d 366 [2d Cir. 1974] … conclusion that it waived its right to arbitration. | Arbitration may be waived by conduct of demanding party. | Can arbitration be waived by the conduct of demanding parties? | 00793.docx | (USA) EAE-00 464 66- (USA) EAE-00 464 67 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | 1 |
| 1878 | United States v. Bonito, 57-50+1(2) F.3d 167 | 50+1(2) | We acknowledge the force of this argument. On the other hand, there are a number of factors in favor of construing "\$50,000 in federal funds" to cover corruption of agents of a federally-funded organization … Yet, if the organization has no financial stake whatsoever in the corrupted business … more than \$5,000 be involved? | Under federal statute proscribing bribery of officials of public and private entities receiving federal funds, in connection with any "business, transaction or series of transactions" of such entities involving at least \$5,000, term "business" means something different from, and broader than, "transaction" and includes dealings of government official … 18 U.S.C.A. § 666(a)(2). | Under federal bribery statute, must the thing of value of \$5,000 be that of the affected organization? | Bribery - Memo #851 - C... | (USA) EAE-00288731-(USA) EAE-00288735 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 1879 | United States v. Bruederim, 1441-34-91 | 63+2 | Santoperto requires only a "risk" to, not an actual impairment of, the integrity of federal funds or a federally funded program. 164 F.3d at 93 … consequently, any corruption within that agency was a proper matter of federal concern. | Federal bribery statute as applied to defendant who bribed city official to reduce official to eliminate taxes on various parcels of real property in city that received substantial federal funds was not unconstitutional as applied … between bribe and a risk to integrity of a federally funded program. 18 U.S.C.A. § 666(a)(2). | Can the corruption of an organization's official in the administration of non-federal monies trigger federal bribery statute? | 01255.docx | (USA) EAE-00145716- (USA) EAE-00145718 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 11880 | United States v. Doremus, 888 F.2d 630 | 411+8 | Appellants argue that the effect of 16 C.F.R. § 261.10(a) is to exempt mining operations from the general prohibition of Part 261, thereby limiting the regulation of mining operations to 36 C.F.R. Part 228. We reject this argument. Part 228 does not contain any independent enforcement provision; it only provides that an operator must be given a notice of noncompliance and an opportunity to correct the problem before 36 C.F.R. § 228.7(b) (1987). The references to operating plans in "261.10 would be meaningless unless Part 261 were construed to apply to mining operations, since it is the only conduct for which operating plans are required under Part 228. In addition, 16 U.S.C. " 478 (1982), which authorizes entry into national forests "for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof," specifically states that "[s]uch persons must comply with the rules and regulations covering such national forests." This statutory caveat encompasses all rules and regulations, not just those found in Part 228 which govern exclusively mining plan activities. In this context, " 261.10(a) merely a recognition that mining operations "may not be prohibited but are reasonably circumscribed as to amount to a prohibition." United States v. Weiss, 642 F.2d 296, 299 (9th Cir.1981). | Forest Service regulation, providing that regulations do not preclude activities on Forest Service land which are enforced by the Mining Laws Act, was not intended to provide blanket exemption for mining operations, but only to ensure that mining operations were not prohibited or unreasonably circumscribed as to amount to a prohibition? | Under regulations on mining operations or developing of mineral resources be prohibited or so unreasonably circumscribed as to amount to a prohibition? | 021467.docx | LEGALEXJC 0016155-LEGALEXJC 0016157 | Condensed, SA, Sub | 0.75 | | 1 | 1 | 1 | |
| 11881 | Fleming & Associates, L.L.P. v. Barton, 425 S.W.3d 560 | 289+535 | Moreover, contrary to F.& A.'s arguments in its summary judgment motion, a joint venture governed by the same rules as a partnership. See Bank One Tex., N. A. v. Stewart, 967 S.W.2d 419, 440 (Tex.App.- Houston [14th Dist.] 1998, pet. denied). In most cases, a partnership agreement governs the relationship of the partners. See id. The Texas Revised Partnership Act, in effect at the time F.& A. and J.& B. entered into the Contract, provides that an agreement to share losses by the owners of a business was not necessary to create a partnership. See Founders v. Wright, 288 S.W.3d 541, 546 (Tex.App.- Houston [1st Dist.] 2009, pet. denied) (citing Tex.Rev.Civ. Stat. Ann. art. 6132b-2.03(a)). Thus the mere fact that F.& A agreed to "be responsible for all future litigation costs" does not render the Contract something other than a partnership agreement. The Contract "might incorrect because it is totally at odds with Texas partnership law. | In most cases, partnership agreement governs the relationship of the partners? | Does a partnership agreement govern the relationship between the partners? | 022441.docx | LEGALEXJC 0016256-LEGALEXJC 0016257 | Condensed, SA | 0.92 | 0 | | 1 | 1 | |
| 11882 | Martin v. Dial, 57 S.W.2d 75 | 289+881 | A similar holding was made by the Supreme Court of Idaho in the case of Annunziato v. Spokane Cattle Loan Co., 34 Idaho, 688, 214 P. 211, 212, wherein it is said: "The general rule would seem to be that a surviving partner has the personal property of the partnership by way of pledge or mortgage to secure the existing debts of the partnership, and where the debt is not necessary to make such pledge valid for partnership creditors as well as against the representative of the deceased partner." After the dissolution of the firm neither partner was authorized to renew the firm notes. There was no express authority, and the law does not imply it.- Dodge v. Block, 21, 21. If one of several partners executes a deed of release under his hand and seal, in the name of the copartnership, a A debt due to the co-partnership, it is binding on all the partners. Such a release being for all the debtor's, paol is the partnership; and where such a party's valid, which has not been paid by the maker, afterward retained by the holder to pay the holder as a previous demand on the drawer, and notice to the endorser: need not be proved, but will be presumed. | A renewal note given in the firm name, after dissolution, by a partner without his copartner's assent, may be regarded as divisible, and valid to the extent that the firm debts. constitutes the consideration and discharged thereby? | Can a partner renew a note in the name of the firm after dissolution? | 022462.docx | LEGALEXJC 0016362-LEGALEXJC 0016363 | Condensed, SA, Sub | 0.63 | | 1 | 1 | 1 | |
| 11883 | Wilson v. Fender, 20 Ohio St. 89 | 8.301+266 | After the dissolution of the firm neither partner was authorized to renew the firm notes. There was no express authority, and the law does not imply it.- Dodge v. Block, 21, 21. | Where a surviving partner negligently delays in setting assets to pay debts, creditor or deceased partner's representative may invoke equity's assist to compel performance or have receiver appointed. | Does a surviving partner of a firm have the power to execute a mortgage upon the firm assets to secure the payment of a firm debt? | 022361.docx | LEGALEXJC 0016892-LEGALEXJC 0016893 | Condensed, SA, Sub | 0.78 | | 1 | 1 | 1 | |
| 11884 | Person v. Hoskie, 3 Johns. 68 | 289+668 | If one of several partners executes a deed of release under his hand and seal, in the name of the copartnership, a A debt due to the co-partnership, it is binding on all the partners. | A release, under seal, by one partner in the firm, of a debt due to the copartnership, is binding on all the partners. | Is a release by one partner to a debtor obligatory to the other partners? | Partnership - Memo #45 - RK.docx | LEGALEXJC 0016398-LEGALEXJC 0016899 LEGALEXJC 0035195-LEGALEXJC 0035196 | Condensed, SA, Sub 0.23 | 0.23 | | 1 | 1 | 1 | |
| 11885 | Lewis v. Forest Family Practice Clinic, P.A., 124 So. 3d 654 | 307A+560 | Because Lewis did not raise the issue of good cause before the trial court, she may not raise it on appeal. Accordingly, we find the court did not abuse its discretion by granting Dr. Lee and Forest Family Practice's motion to dismiss. However, when dismissing for lack of prosecution and process, we have held that "Rule 41(b) dismissals should be made without, not with prejudice." Thus, we reverse and affirm the trial court's grant of dismissal. | Dismissal for failure to serve process within 120 days of filing of complaint should have been without prejudice. Rule's Civ Proc, Rule 4(h) | Should dismissal for failure to serve process be made without prejudice? | 034208.docx | LEGALEXJC 0016336-LEGALEXJC 0016337 | Condensed, SA, Sub | 0.72 | | 1 | 1 | 1 | |
| 11886 | GTE Comm'ns Sys. Corp. v. Tanner, 856 S.W.2d 725 | 307A+441.1 | Case determinative sanctions may be imposed in the first instance only is exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. | Before court may deprive party of its right to present merits of its case because of discovery abuse, it must determine that party's hindrance of discovery process justifies presumption that its claims or defenses lack merit. Vernon's Ann.Texas Rules Civ.Proc., Rule 215. | "Only in exceptional situations, can case-determinative sanctions be imposed in the first instance when they are clearly justified?" | Pretrial Procedure - Memo #4 888 - C - KM.docx | LEGALEXJC 0035522 | SA, Sub | 0.21 | 0 | | 1 | 1 | |
| 11887 | Mason v. Snyder, 332 Ill. App. 3d 834 | 250+169 | In Circuitron v. Stricklant, 43 Ill App 3d 496, 498, 2 Ill Dec. 245, 357 N.E.2d 232 (2d Dist.), "This court reasoned that because plaintiffs had no notice of a complaint because (1) no motion to dismiss was filed, (2) the trial court did not find that defendant had a lack of diligence in obtaining service of process, and (3) the trial court's action was not "designed to protect the court from having to deal with litigation that was brought unfairly against it." The court relied on the dissent that a trial court has "inherent authority to protect itself from actions that harassing or vexatious litigation and to enforce compliance that do not conform.* Goranson, 43 Ill App 3d at 498, 2 Ill Dec. 245, 357 N.E.2d 235. It defendant apparently with the circumstances that give rise to this court had the appropriate and necessary footings. | Trial courts have authority to issue sua sponte order stricken maintaining plaintiffs count to find that defendant had inherent authority to protect itself from vexatious litigation mandamus. Goranson, 262 Ill App 3d 502, 199 Ill Dec. 907, 634 N.E.2d 1181. | Does a court have authority to dismiss complaints that do not state a cause of action? | Pretrial Procedure - Memo #4 Memo - C - DH.docx | ROS5100334414-ROS5100334415 (033184... | SA, Sub | 0.77 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 1888 | Hackman v. Williamson Cty., 20056 SW.2d 197 | 106v247(8) | | Whether named plaintiff had particular interest in question in justiciable case when against county on behalf of indigent defendants who were allegedly deprived of right to court-appointed counsel on misdemeanor charges carrying possible confinement, as well as right to open court proceedings, was not a "criminal law matter," but, rather, a "civil law matter," such that the Supreme Court had jurisdiction over the question, even though some reference to criminal procedural law was necessary in order to answer it; case involved justiciability doctrines deriving from constitutional separation of powers and open courts provisions, and justiciability went to the heart of civil practice. U.S.C.A. Const.Amend. 6; Vernon's Ann. Texas Const. Art. 1, §§ 10, 13, 15, 19(a); Vernon's Ann.Texas Rule Civ.Proc., Rule 42. | Should the court vacate any order or judgments previously issued and dismiss the case for want of jurisdiction if a case becomes moot? | 03772.docx | LEGALEAGLE 00165266 / LEGALEAGLE 00165297 | Condensed, SA | 0.16 | 0 | 1 | | 1 | 1 |
| 1889 | Graczyk v. Workers' Comp. Appeals Bd., 184 Cal. App. 3d 997 | 413v56 | | The right to workers' compensation benefits is "wholly statutory" (Johnson v. Workmen's Comp. App. Bd. (1970) 2 Cal.3d 964, 972, 88 Cal.Rptr. 202, 471 P.2d 1002; Mathis v. Industrial Acc. Com. (1954) 46 Cal.2d 409, 414, 296 P.2d 229), and is not derived from common law. (Carrigan v. California State Legislature (9th Cir.1957) 263 F.2d 560, 567; Coleman v. Silverberg Co. (1966) 240 Cal.App.2d 74, 84 (ftn. 3, 49 Cal.Rptr. 338; see Malski v. Industrial Acc. Com. (1956) 138 Cal.App.2d 72, 77, 291 P.2d 49); 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 4, pp. 569-570; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1991) § 1.03[2], p. 1-12.) | Are workers compensation benefits statutory? | 04461.8.docx | LEGALEAGLE 00165737 / LEGALEAGLE 00165738 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | |
| 1890 | Ex parte Billings, 46 F. 3d 578 | 34v20.15(2) | | Induction is not completed upon acceptance by the government and irrespective of the desires, acts and mental attitudes of the party being affected. Induction is completed only when, under the particular operation of law, it is something over which the party affected, persons in his case, has no control; it is not the acceptance by him of the oath, but his actual entry into the military service. | Is induction into the armed forces completed upon acceptance by the government of the draftee? | 00(976).docx | LEGALEAGLE 00147982 / LEGALEAGLE 00147983 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | |
| 1891 | State Bank of Drummond v. Nuesse, 13 Wis. 2d 74 | 172H>204 | | If any one proposition could command the universal assent of the courts, we might expect it would be this, "that banks are quasi-public institutions and that their powers are controlled by the legislature (in original). Putting it very simply differently, bribery involves the giving of value to procure a specific official action from a public official. See United States v. Myers, 692 F.2d 823, 841 (2d Cir.1982). The element of a quid pro quo or a direct exchange is absent from the offense of paying an unlawful gratuity. To commit that offense, it is enough that the payment be a reward for a past official act or made in the hope of obtaining general good will in the expected performance of official acts with the future. See United States v. Sun-Diamond Growers, 526 U.S. at 405, 119 S.Ct. 1402; Biaggi, 909 F.2d at 694. | Does a bank possess a quasi-public character? | 10478.docx | LEGALEAGLE 00088915 / LEGALEAGLE 00088915 | Condensed, SA | 0.65 | 0 | 1 | | 1 | |
| 1892 | United States v. Alfisi, 308 F.3d 144 | 63v12(2) | | Bribery involves the giving of value to procure a specific official action from a public official. 18 U.S.C.A. § 201(b)(1)(A). | What does bribery require or involve? | 01203.1.docx | LEGALEAGLE 00147752 / LEGALEAGLE 00147753 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 1893 | Pike v. Chicago, M. & St. P. Ry. Co., 40 Wis. 583 | 70>143 | | Without considering the exceptions taken to the rulings of the court on the trial, we think the judgment must be reversed because improper questions were submitted to the circuit court by the jury, upon which to find a special verdict. Some of the questions were purely immaterial, and should never have been submitted. The criticism passed upon them by the defendant's counsel seems to us entirely just and well founded. In the form in which they were submitted, the jury were not asked to find upon matters of fact between the parties from the evidence, but were asked to consider whether or not it was probable that the deputy and plaintiff's goods had been taken from his being burned, if a negligent act had been provided to take care of the deputy and plaintiff's goods; they were not allowed to consider, for instance, whether the plaintiff was allowing the jury to speculate as to probabilities and contingencies which they had no right to consider. For, as a matter of law, we do not think the failure to provide a night watch or to have some person sleep in a building was negligence in law where there was ample value of property, where there was no ordinary negligence in the absence of such care and diligence as a man of ordinary prudence would exercise in taking care of his own property placed in the circumstances. How many men of ordinary prudence provide a night watch for their stores and warehouses, where only $50,000 of property is stored? Probably few. Still, persons exercise that degree of diligence in taking care of their own property | What is (Ordinary/Negligence)? | 02(703).docx | LEGALEAGLE 00147609 / LEGALEAGLE 00147609 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | |
| 1894 | Mainey v. Hackman, 551 Pa. 369 | 307A>590.1 | | As to goods in their possession merely as warehousemen, no liked companies are bound to no more than ordinary care, or such as a man of ordinary prudence would exercise in respect to his own property placed in like circumstances. | Can non-docket activity be considered when deciding whether a case should be terminated for inactivity? | 10938.docx | LEGALEAGLE 00094637 / LEGALEAGLE 00094638 | Condensed, SA | 0.65 | 0 | 1 | | 1 | |
| 1895 | Claiborne Med. Corp. v. ABC Ins. Co., 185 So. 2d 216 | 307A>581 | | A dismissal of an action on the grounds of abandonment is a dismissal without prejudice. LSA-C.C.P. art. 561. | Is a dismissal of an action on the grounds of abandonment a dismissal without prejudice? | 10986.docx | LEGALEAGLE 00094364 / LEGALEAGLE 00094365 | Condensed, SA | 0.79 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18896 | Lewis v. Jones, 34-48 (La. App. 5 Cir. 5/26/16) | 307H4/90 | Finally, as to the trial court's September 18, 2015 judgment dismissing plaintiff's action on the grounds of abandonment, we note that it dismissed plaintiff's action "with prejudice." This Court, among others, has found that a dismissal on the grounds of abandonment is a dismissal "without prejudice." La. Cent. Credit Union v. LeBlanc, 987.2 1a App. 5 Cir. 5/28/08), 2 So.2d 802, 803; D & Bodies, Inc. v. Mickie Construction Co., supra; Argence, L.L.C. v. Box Opportunities, Inc., 11-1770 (1a App. 4 Cir. 05/01/13), 95-So.3d 519, 541. Parmenter v. Falgout, supra. Accordingly, we note that the trial court erred in dismissing plaintiff's action with prejudice. We amend the judgment to delete the words "with prejudice" and to substitute the words "without prejudice." | Dismissal of an action on the grounds of abandonment is a dismissal without prejudice. LSA-C.P. art. 561. | Can an action be dismissed as abandoned under the abandonment statute only without prejudice? | 11130.docx | LEGALEASE 00092741; LEGALEASE 00092743 | SA, Sub | 0.86 | 0 | 1 | 1 | 1 | |
| 18897 | Cisborne Med. Corp. v. ABC Ins. Co., 185 So.3d 216. | 307H4/81 | However, as to the trial court's January 7, 2015 judgment dismissing Plaintiff's action on the grounds of abandonment, we note that it dismissed Plaintiff's action "with prejudice." This Court, as well as other courts, has found that a dismissal on the grounds of abandonment is a dismissal "without prejudice." D & S Builders, Inc. v. Mickie Constr. Co., 514 So.2d 245, 247 (La.App. 5 Cir. 1986); La. Cent. Credit Union v. LeBlanc, 98723 (La.App. 5 Cir. 05/18/98), 711 So.2d 932, 933; Argence, L.L.C. v. Box Opportunities, Inc., 11-1770 (La.App. 4 Cir. 05/25/13), 95 So.3d 519, 541; Parmenter v. Falgout, 03-1234 (La.App. 1 Cir. 01/23/04), 888 So.2d 870. Accordingly, the trial court erred in dismissing Plaintiff's action with prejudice. We amend the judgment to delete the words "with prejudice" and to substitute the words "without prejudice." | A dismissal of an action on the grounds of abandonment is a dismissal without prejudice. LSA-C.P. art. 561. | Is a dismissal on the grounds of abandonment without prejudice? | Pretrial Procedure - Memo # 7758 - C - PC.docx | ROSS 000186668-ROSS-000186669 | SA, Sub | 0.88 | 0 | 1 | 1 | 1 | |
| 18898 | A&F Freight Sys. v. Int'l Bhd. of Teamsters, 728 F.3d 853 | 25T+282(1) | In Iniquez v. Advance America, Cash Advance Centers of Missouri, Inc., 589 F.3d 170, 173 (8th Cir. 2009), this court held that a motion to dismiss under Rules 12(b)(1) and 12(b)(6) substantially invoked the litigation machinery because Advance America's motion to dismiss asked the court to review and evaluate, and substantially invoked the litigation machinery. Advance America drove the litigation machinery and forced the plaintiff's attention to multiple matters of first impression, asserted that Plaintiffs had failed to state claims upon which relief could be granted, and encouraged the district court to resolve the merits of the dispute in Advance America's favor. In other words, Advance America sought a final decision from the district court upon the merits, and such a decision would have disposed of the dispute, subject to rejudicial review; at least unless one of the parties asked the court on the merits before reaching arbitration is inconsistent with resolving the case through arbitration. Id. at 92 (internal quotation marks and citations omitted); see also Hazel, 989 F.2d at 973. ("Whether there is waiver depends on the particular facts before us.") | Not every motion to dismiss is inconsistent with the right to arbitration, as would constitute waiver of right to arbitrate; courts must look at what matters are not homogeneous, and courts should consider the totality of the circumstances. | Is a motion to dismiss arbitration inconsistent with the right to arbitration? | 007905.docx | LEGALEASE 00148976; LEGALEASE 00148978 | Condensed, SA | 0.83 | 1 | 0 | 1 | 1 | |
| 18899 | Armstrong v. United States, 164 Ct.Cl. 387 | 34+76 | The District Court adopted the view of the government and directed a verdict in favor of the United States. As stated in the brief of defendant in error, plaintiff-in-error at the trial court level conceded the theory that they had the right to introduce evidence other than the record and rating of the Veterans Bureau for the purpose of having the court determine that the insured was, in effect, totally and permanently disabled at the time the insurance contract lapsed for nonpayment of premiums. This single question is presented for determination, it has not been conceded at the outset that the decision of the Director upon a right to compensation claimed after the first, final and complete award of compensation, if any, subject to judicial review, at least unless one of the parties asked the court on the Supreme Court in Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256. It seems clear that the decision of the Director upon the compensation awarded was unsupported by evidence, arbitrary, or capricious, nor that he has refused or denied any application for medical review. | Decision of Director of Veterans' Bureau on right to compensation is ordinarily conclusive. World War Veterans' Act 1924, §§ 5 L.C.A. §§ 551, 1106, 201, 202 et seq., 301, 302, 314-315, 421, 422-425, 426, 744 et seq., 1000, 3020-3020, 3301, 3304, 3401, 3404, 3405, 3501 et seq., 5001 et seq. | Is the decision of the Director on the right to compensation conclusive? | 008772.docx | LEGALEASE 00148832; LEGALEASE 00148833 | Condensed, SA, Sub | 0.72 | 1 | 1 | 1 | 1 | |
| 18900 | Feloy v. Hardy, 122 Kan. 616. | 83+174 | The word "instrument," as used in the statute quoted (R.S. 52-209), means negotiable instrument (R.S. 52-101), it has no application to nonnegotiable instruments. Johnson v. Lassiter, supra; West State v. Baxter, 137 Ky. 362, 125 S.W. 761, 26 L.R.A. (N.S.) 824. To hold that an instrument, which is nonnegotiable because of the lack of words of negotiability, may be negotiated by delivery so as to cut off equities between the parties, would render nugatory the negotiability provisions of the statute (R.S. 5-52.201) that an instrument, to be negotiable, "must be payable to order or to bearer." A nonnegotiable instrument is not rendered negotiable by a blank indorsement. The effect of the indorsement of a nonnegotiable instrument is to transfer the title; it does not create the statutory contract of an indorser provided by the Negotiable Instruments Law. Hanna v. Holt, 83 Kan. 321, 111 Pac. 266. | Instrument in form of note containing words of negotiation, is not rendered negotiable by indorsement in blank by payee, "negotiable instrument." Rev.St. 52-102, 52-201, 52-209, 52-701. | Can a nonnegotiable note become a negotiable note by indorsement? | 010401.docx | LEGALEASE 00148646; LEGALEASE 00148647 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | |
| 18901 | Streeno v. Dexter, 192 Fl. App. 474 | 83+425 | BILLS AND NOTES - "215-when negotiable by delivery. A note payable to the maker indorsed by him in blank is under section 34 of the Negotiable Instruments Law (L. & A. "70)'3) negotiable by delivery.) | Note which were indorsed by the maker in blank to cut off equities between the parties, would render nugatory the negotiable Instruments Act 5 34, 5-H.A. ch. 98, 5 34. | Can an indorsement in blank be negotiated by delivery? | 010407.docx | LEGALEASE 00148654; LEGALEASE 00148655 | Condensed, SA | 0.35 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18902 | Palmer v. Dodge, 4 Ohio St. 21 | 289+957 | The court, in the first place, lay down and enforce the doctrine as settled law, that one partner, after dissolution, can not bind the others even by the renewal of a partnership note. They then proceed to say: "The note in question, a renewal note, which had been running in bank before the dissolution, was renewed by Seaman, one of the partners, afterward. It was, of course, void in respect to Norton, his copartner, unless a power of renewal was expressly delegated at the time of the dissolution. The plaintiffs claim that such power was delegated, and base themselves on the clause in the advertisement of dissolution, declaring that the business of the firm was to be settled with Seaman, who was authorized to sign the name of the firm for that purpose. This was no more than a power to liquidate partnership demands, and sanction the liquidation by the firm name. It gave no more power to renew the old note, than to give one payable in chattels. | A surety on a note given by one of the partners after the dissolution of the partnership, duly notified, he being authorized to settle the affairs of the firm, to a creditor of the firm, in the partnership name, has no claim to indemnity from the other partner for any loss he may sustain. | Can a partner execute a note in the name of the firm after its dissolution by renewal of the note of the firm to bind other partners or the firm? | 010412.docx | LEGALEASE-00148691-LEGALEASE-00148692 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 18903 | Clark v. Sigourney, 17 Conn. 511 | 83E+410 | The delivery, however, need not be expressly proved, since it may be, and indeed usually is, presumed from circumstances, and especially from the fact that the instrument is in the possession of the party to whom it purports to have been made; a presumption, however, which may be disproved. On principle, therefore, the mere act of writing the name of the payee on the back of the note, is not sufficient to constitute an indorsement of it; but to complete it as such, the further act of a delivery of it by him to the person to whom a title in it is intended to be transferred, is necessary. | The payee of a negotiable note, who had written his name on the back, but who had not transferred it, died, leaving the note past due; and his administratrix transferred it for value, delivering it to the purchaser without further indorsement. Held, that the note was not indorsed, and on the death of the payee the legal title vested in his administratrix, and could not be transferred, except by her indorsement. | Does mere writing of name on the back of the note amounts to indorsement or not? | 010580.docx | LEGALEASE-00148542-LEGALEASE-00148543 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 18904 | Hamlin v. Hawkins, 332 Mo. 1098 | 83E+401 | By legal implication it imposed certain undertakings upon the transferor, but those undertakings were for the sole benefit of the transferee. R. S. 1919, s 851 (Mo. St. Ann. s 2693). " "The lawful possession of a note confers on the holder the right to transfer it. It is a general rule of law, and the maker cannot question the right to transfer" 8 Corp. Jur. 366. It follows that, if a party to the note may not question the right to transfer, the right may not be attacked collaterally." In re Martin's Estate, 219 Mo. App. 51, 61, 266 S. W. 750, 753. | Maker cannot question lawful holder's right to transfer negotiable instrument, and right may not be attacked collaterally. | What right does the holder of note have? | Bills and Notes -Memo 697 -DB_58204.docx | ROSS-003292909 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 18905 | State v. Badaracco, 156 Conn. App. 65 | 63+1(1) | In Jacobs, the United States Court of Appeals for the Second Circuit observed that a violation of the federal bribery statute does not require acceptance of the bribe. "It is also perfectly plain that the crime is consummated irrespective of whether an offer of an amount of money to influence an official's behavior is accepted by the official.... The crime was complete when [the defendant] expressed an ability and a desire to pay [the official] $5,000 ... as a bribe for disposing of the case...." (Emphasis added.) Id. In United States v. Hernandez, 731 F.2d 1147, 1149 (5th Cir.1984), the United States Court of Appeals for the Fifth Circuit noted that the crime of bribery requires either the actual giving or the offer to give or transfer money or something of value. Applying the Jacobs standard that an offer is made when there has been an expression of the ability and desire to pay, the Fifth Circuit considered whether a statement from a third party asking if the offeree " "can be bought"" so that he would change his testimony was sufficient to sustain a conviction for bribery. Id., at 1150. It concluded that such a statement did not express "an ability and a desire to pay ... a bribe. At most, the phrase "they want to know" constitutes mere preparation to commit the crime"a preliminary "feel out" of [the offeree]." Id. | Under federal law, a bribery conviction must be based on more than evidence of mere preparation; it must progress to the point that the defendant made an offer that consisted of an expression of a desire and an ability to pay the public official for performing a proscribed act. 18 U.S.C.A. S 201(b). | Is the crime of bribery consummated irrespective of whether the public official accepts the offer of an amount of money to influence his/her behaviour? | 012456.docx | LEGALEASE-00148300-LEGALEASE-00148301 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 18906 | Scaccia v. State Ethics Comm'n, 431 Mass. 351 | 360+72 | Recently, the United States Supreme Court, interpreting the Federal gratuity statute (18 U.S.C. " 201[c][1][A] [1994] ), ruled that the government must "prove a link between a thing of value conferred upon a public official and a specific "official act" for or because of which it was given." United States v. Sun"Diamond Growers of Cal., 526 U.S. 398, 414, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999) (Sun"Diamond ).6 In a unanimous opinion, the United States Supreme Court reasoned that the "insistence upon an "official act," carefully defined, seems pregnant with the requirement that some particular official act be identified and proved." Id. at 406, 119 S.Ct. 1402. The United States Supreme Court emphasized that "it seems to us most implausible that Congress intended the language of the gratuity statute ... to pertain to the office rather than (as the language more naturally suggests) to particular official acts" (emphasis original). Id. at 409, 119 S.Ct. 1402.7 | State Ethics Commission failed to establish that state representative violated gratuity statute by his acceptance of gifts in form of meals and rounds of golf from lobbyists from tobacco and insurance industries; while there was evidence that representative held committee hearings on proposed legislation affecting one of those industries after receiving gifts, administrative record did not specify how he voted on those particular pieces of legislation, and thus no link between gifts and an official act was shown. M.G.L.A. c. 268A, S 3(b). | "Under gratuity statute, must the government prove a link between a thing of value and a specific official act?" | Bribery - Memo #975 - C-JL_57942.docx | ROSS-003279289-ROSS-003279290 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 18907 | In re Schuylkill River Rd., 19 Pa. Super. 376 | 200+44 | A point on a navigable river (Balliet v. Commonwealth, 17 Pa. 509); intersecting points on two public roads (Springfield Road, 73 Pa. 127); a church, a cemetery, a public school (West Pikeland Road, 63 Pa. 471); a public place on the boundary line of a state, a county and a borough (15 Am. & Eng. Ency. of Law [2d ed.], 356; Trickett's Penna. Road Law, 23), have been held to be sufficient termini to warrant the confirmation of a public road,--to which we have no hesitation in adding a large manufacturing establishment like the Pencoyd Iron Works and a public station on a railroad. | A large manufacturing plant, covering many acres of land, on which are erected a number of mills, shops, offices, etc., and where thousands of persons are employed, and at which there is also a public station on a railroad, is a sufficient terminus for a public road as a "place of necessary public resort," within Act June 13, 1836, P.L. 551, S 11, 36 P.S. S 2731. | What would be sufficient termini to warrant the confirmation of a public road? | Highways-Memo 246-ANM_57970.docx | ROSS-003296479 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18908 | In re Schuylkill River Rd., 19 Pa. Super. 376 | 200+77(1) | A public highway may terminate in a cul de sac: Elliot on Roads and Streets, 1, and cases cited; In re Melon Street, 1 Pa. Superior Ct. 63, affirmed in 182 Pa. 397. The "necessary resort" of the statute may be taken to be a place of public resort where men are in the habit of meeting on their lawful business or in pursuance of their proper duties. This view has been held throughout the commonwealth and is a very reasonable construction of the term: Miller's Road, 9 S. &. R. 35; Kyle's Road, 4 Yeates, 516; Neeld's Road, 1 Pa. 354; West Pikeland Road, 63 Pa. 471; London Britain Road, 1 Chest. Co. Rep. 396; Lehman Township Road, 7 Kulp, 404; West Goshen Roads, 7 Pa. C. C. Rep. 250; Road in Upper Hanover Township, 5 Mont. Co. R. 174; Road in Greenwich Township, 11 Pa. 186; Road in Susquehanna, 1 Pearson, 59; Loretto Road, 5 Casey, 350; Boyer's Road, 37 Pa. 257. | It seems that a public highway may terminate in a cul de sac. | Can a public highway terminate in cul de sac? | 019284.docx | LEGALEASE-00148460-LEGALEASE-00148461 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 18909 | Bumpus v. United States, 325 F.2d 264 | 260+48 | "Mineral" is a word of general language, and not per se a term of art. It does not have a definite meaning. It is used in many senses. It is not capable of a definition of universal application, but is susceptible to limitation or expansion according to the intention with which it is used in the particular instrument or statute. Regard must be had to the language of the instrument in which it occurs, the relative position of the parties interested and the substance of the transaction which the instrument embodies. The word, if broadly construed, would include gravel. | "Mineral" is a word of general language, and not per se a term of art; it does not have a definite meaning and is used in many senses; it is not capable of a definition of universal application, but is susceptible to limitation or expansion according to intention with which it is used in particular instrument or statute. | "Is ""mineral"" a per se term of art or trade?" | Mines and Minerals - Memo # 27 - C - EB_57975.docx | ROSS-003280810-ROSS-003280811 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 18910 | Jones v. Hous. Auth. of Fulton Cty., 315 Ga. App. 15 | 308+175(1) | But in any event, the record shows that Jones did perform some acts that materially harmed the business of the Authority. In particular, he affirmatively certified that Red Oak funds would be used only for the development of other affordable housing, the Riverside Replacement Housing Project specifically. Moreover, he ratified the diversions of restricted HUD funds for improper purposes by the chief financial officer, contrary to his certifications. When a principal ratifies the acts of his agent, he is as responsible for those acts as if he had done the acts himself. See Ford Motor Co. v. Abercrombie, 207 Ga. 464, 475, 62 S.E.2d 209 (1950) ("[t]he principal is bound by the authorized acts of his agent as effectively as if he had been present and personally committed that act"). "A ratification may be implied from the acts or silence of the principal." OCGA " 10"6"52. And while the question of ratification is usually one for the trier of fact, Wielgorecki v. White, 133 Ga.App. 834, 838, 212 S.E.2d 480 (1975), when an agent informs his principal about what the agent has done, ("the principal must express his dissatisfaction within a reasonable time, otherwise his assent to his agent's acts will be presumed." Dobbs v. Titan Properties, 178 Ga.App. 389, 390, 343 S.E.2d 419 (1986) (citation and punctuation omitted). | When a principal ratifies the acts of his agent, he is as responsible for those acts as if he had done the acts himself. | "If a principal ratifies the acts of his agent, is he responsible for those acts?" | Principal and Agent - Memo 131 - KC_58045.docx | ROSS-003308858-ROSS-003308859 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 18911 | Rokowsky v. Gordon, 501 F. Supp. 1114 | 83E+676 | The two documents represented the several aspects of a single transaction, and it would be absurd to have them governed by different law. Furthermore, the law applicable to a note is the law of the place where the note is payable. Walling v. Cushman, 238 Mass. 62, 65, 130 N.E. 175 (1921). A demand note is payable at the place of residence of the maker if no place of payment is named in the note. Under all of these circumstances, the law of Massachusetts clearly governs. | Demand note is payable at place of residence of maker, if no place of payment is named in the note. | Where is a demand note payable? | Bills and Notes - Memo 762 - KC_58513.docx | ROSS-003309693 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 18912 | Fed. Deposit Ins. Corp. v. Cloonan, 165 Kan. 440 | 8.30E+215 | Conceding the amended petition contains allegations that Mrs. Cloonan signed the note as an accommodationparty and received no monetary consideration therefor does not make such pleading defective. Under our statute (G.S.1935, 52-306) and our decisions (see German American State Bank v. Watson, 99 Kan. 686, 163 P. 637; Sluss v. Brown-Crummer Inv. Co., 145 Kan. 12, 64 P.2d 23; Cross v. Aubel 154 Kan. 507, 119 P.2d 490) an accommodationparty who signs a note as maker is liable to a holder for value. | An accommodation party who signs note as maker is liable to a holder for value. Gen.St.1935, 52-306. | Is an accommodation party liable to the holder? | Bills and Notes - Memo 766 -IS_58516.docx | ROSS-003308068-ROSS-003308069 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 18913 | Dubler v. Toscana Straw Goods Corp., 142 Misc. 369 | 8.30E+36 | Eliminating therefrom the legal conclusions contained in paragraphs 17 and 18, the question for determination is whether or not the failure of plaintiffs to present the trade acceptances for payment and to give notice of such presentment and nonpayment to defendant is a good defense. A trade acceptance is a draft or bill of exchange drawn by the seller on the purchaser of goods sold and accepted by such purchaser. Atterbury v. Bank of Washington Heights of City of New York, 241 N. Y. 231, 149 N. E. 841. Upon acceptance by the drawee it becomes in effect a promissory note, the acceptor standing in the place of the maker and becoming primarily liable. Anglo & London"Paris Nat. Bank v. S. A. Jacobson Co., 196 App. Div. 51, 187 N. Y. S. 508. Being primarily liable, notice of presentment of the instrument and demand for payment are not necessary. | "Trade acceptance" is draft or bill of exchange drawn by seller on purchaser of goods. | What is a Trade Acceptance? | 009672.docx | LEGALEASE-00149744-LEGALEASE-00149745 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 18914 | Rivers v. Thomas, 69 Tenn. 649 | 83E+436 | In his masterly summary of the liabilities created by irregular endorsements, Mr. Justice Clifford says that if the endorsement be subsequent to the making of the note, at the request of the maker, pursuant to a contract with the payee for further indulgence, the endorser is liable as guarantor. Rey v. Simpson, 22 How., 341. In Vermont the courts hold the endorser liable as a co-maker. Strong v. Riker, 16 Vermont, 554. All the other cases which I have been able to find treat such an endorser as a guarantor. Irish v. Cutter, 31 Maine, 536; Tenney v. Prince, 4 Pick., 385; Beckwith v. Angell, 6 Conn., 315; Camden v. McKoy, 3 Scam., 437; Oakley v. Boorman, 21 Wend., 588; Greenough v. Smead, 3 Ohio St. 415; Sto. Prom. Notes, secs. 133, 477; 1 Dan. Neg. Instr., 715. I find no case where he has been treated simply as endorser. And even if the presumption of law arising solely from the endorsement of a past due note were the same as in the case of an endorsement at the inception of the note, the facts and circumstances attending the endorsement in the present instance would remove the presumption and bring it within the authorities. | One who indorses a past-due note at the request of the maker, pursuant to a contract with the payee for further indulgence, is liable as guarantor. | Can the endorser be liable as guarantor? | 009677.docx | LEGALEASE-00149752-LEGALEASE-00149753 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18915 | Thompson & Thompson v. Brown, 121 Mo. App. 524 | 410+172 | The guarantor is not a joint obligor on the same contract, for his contract is separate and distinct from the undertaking of the maker. Maddox v. Duncan, 143 Mo. 613, 45 S. W. 688, 41 L. R. A. 581, 65 Am. St. Rep. 678; Corbyn v. Brokmeyer, 84 Mo. App. 649; Adams v. Huggins, 73 Mo. App. 140. While it is true that, when the name of a stranger to the note appears indorsed upon the back thereof, he will be presumed to be a maker, yet such presumption will not stand against evidence to the contrary; the real character of his obligation may be shown. Herrick v. Edwards, 106 Mo. App. 633, 81 S. W. 466 | Limitations having been pleaded in an action brought on a note by those acquiring it from the representatives of the deceased payee, payments alleged to have tolled the statute were proved to have been made by a stranger to the note, whose name appeared as indorser, and who was not a party to the litigation. The claims against the maker arising from such payments by the indorser were barred by limitations, even though the payments were made by the indorser as a guarantor. Held that, since, the payments would keep the note alive as against the indorser, whether made as guarantor or co-maker, and since the outcome of the litigation could not prevent judgment against him, and since he could not by a subsequent payment as a guarantor revive his claim against the maker for past payments, he was not precluded from testifying that he signed the note as a guarantor, by Rev.St.1899, S 4652, V.A.M.S. S 491.010, providing that where one of the parties to a contract in issue is dead the other party cannot testify "in his own favor" in relation thereto. | Can a party whose name is written on the back of a note be a maker of it? | 010631.docx | LEGALEASE-00149410-LEGALEASE-00149411 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 18916 | Clark v. Barrett, 19 Mo. 39 | 83E+462 | The note having been made payable to Rucker, and being by him endorsed, is a circumstance which places this case without the in fluence of the principle of the cases of Powell v. Thomas, 7 Mo. and Perry v. Barrett, 18 Mo. The defendant being an endorser of a negotiable promissory note, is not a security within the meaning of the "act concerning securities." | An indorser of a negotiable note is not a security, within the statute providing that in an action on a note, against a security, he may defend by showing that he requested the payee to sue the principal, and that the request was refused. | "Can an endorser or indorser of a negotiable note, a security or surety within the meaning of statute concerning securities?" | Bills and Notes- Memo 719- ANM_58224.docx | ROSS-003279375 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 18917 | Material Partnerships v. Ventura, 102 S.W.3d 252 | 83E+308 | Section 3.402(b)(1), however, deals with negotiable instruments. Tex. Bus. & Com.Code Ann. " 3.102(a) (Vernon 2002) (stating chapter applies to negotiable instruments). Tex. Bus. & Com.Code Ann. " 3.104(b) (Vernon 2002) (providing, " "Instrument" means a negotiable instrument"). A guaranty agreement is not a negotiable instrument, and is not governed by the provisions of the Texas UCC. Vaughn v. DAP Fin. Svcs., 982 S.W.2d 1, 6 (Tex.App.-Houston [1st Dist.] 1997, no pet.); Dann v. Team Bank, 788 S.W.2d 182, 186 (Tex.App.-Dallas 1990, no writ); Cortez v. Nat'l Bank of Commerce, 578 S.W.2d 476, 478 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.). | A guaranty agreement is not a negotiable instrument and is not governed by the provisions of the state Uniform Commercial Code (UCC). | Is a guaranty agreement a negotiable instrument? | 010643.docx | LEGALEASE-00149483-LEGALEASE-00149484 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 18918 | Washington Cty. Mercantile Bank v. Kennedy, 855 S.W.2d 520 | 172H+517 | A certificate of deposit is a note of the bank, payable only according to its terms. Western Casualty and Surety Co. v. First State Bank of Bonne Terre, 390 S.W.2d 913, 918 (Mo.App.1965). Generally speaking, the relation of a bank to its depositor is that of debtor to creditor, subject to contract. Smith v. American Bank & Trust Co., 639 S.W.2d 169, 173 (Mo.App.1982). It is the clear and unambiguous language of the contract that controls ownership of the account. In re Huskey v. Monroe, 674 S.W.2d 205, 213 (Mo.App.1984). | A certificate of deposit is a note of the bank, payable only according to its terms; the clear and unambiguous terms of the contract control ownership of the account. | Is a Certificate of Deposit a note of the bank? | 010645.docx | LEGALEASE-00149507-LEGALEASE-00149508 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 18919 | Osborn v. Kistler, 35 Ohio St. 99 | 83E+417 | At common law a note under seal is not negotiable either by delivery or indorsement, so as to enable the holder to maintain an action in his own name upon it. Chitty on Bills, 166. If a seal be affixed to a paper in the ordinary form of a note, its character as such is destroyed; and it is thereby converted into the deed or bond of the maker, who is then termed the obligor, and the instrument is not subject to the peculiar doctrines applicable to mercantile securites. Daniels on Negotiable Instruments, " 32. The law merchant is confined to "open," which means unsealed bills and promissory notes. Ib. " 31. Sealed notes are not, therefore, within the law merchant. Hence it is clear that the plaintiff in this case can not maintain an action in his own name on the note sued on, under the rules of either the common law or law merchant. | Under the statutory provision that notes "payable to order, bearer, or assigns shall be negotiated by indorsement thereon," the legal title to a sealed bill, made payable to bearer, can only pass by indorsement; and, if sold and delivered without indorsement, the holder must sue thereon in the name of the transferor. | Are notes under seal negotiable by delivery or indorsement? | Bills and Notes-Memo 95-PR_58526.docx | ROSS-003283419-ROSS-003283420 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 18920 | Allamakee Cty. v. Collins Tr., 599 N.W.2d 448 | 200+79.1 | We have recognized an established highway or right of way may be abandoned by the public and its rights lost. Pearson v. City of Guttenberg, 245 N.W.2d 519, 529 (Iowa 1976); see also 2 Byron K. Elliott & William F. Elliott, The Law of Roads and Streets " 1174, at 1670 (4th ed.1926). Similarly, rights under an easement may be lost by abandonment. Polk County v. Brown, 260 Iowa 301, 306, 149 N.W.2d 314, 316 (1967). There is a presumption, however, that once a highway is shown to exist, it continues to exist, and any abandonment must be proven by clear and satisfactory evidence. Sterlane v. Fleming, 236 Iowa 480, 483, 18 N.W.2d 159, 161 (1945); 39 Am.Jur.2d Highways, Streets, & Bridges " 158, at 692 (1999). | Established highway or right of way may be abandoned by the public and its rights lost. | Can a highway be abandoned by the public? | Highways -Memo 334 - KC_58551.docx | ROSS-003295319-ROSS-003295320 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 18921 | Eastex Wildlife Conservation Ass'n v. Jasper, et al., Cty. Dog & Wildlife Protective Ass'n, 450 S.W.2d 904 | 200+76 | The order of November 6, 1907, discontinuing the road (assuming it to be the road under discussion as contended for by the parties), was within the delegated authority of the Commissioners' Court, the rule governing the situation being aptly set out in Parkey v. Archer County, 61 S.W.2d 175, 179 (Fort Worth Civ.App., 1933, error ref.):'It is well settled that under the provisions of chapter 2, title 116, Rev.Statutes, the commissioners' court may, upon their own initiative, order the laying out and opening of public roads when necessary And discontinue all or any roads when it shall be deemed expedient. Robison v. Whaley Farm Corporation, 120 Tex. 633, 37 S.W .2d 714; 21 Tex.Jur., s 43, pp. 568"9.' (Emphasis supplied.) | Commissioners' court had authority to discontinue county road. Vernon's Ann.Civ.St. art. 6705. | Does the commissioners court have the authority to discontinue a road? | 019269.docx | LEGALEASE-00149388-LEGALEASE-00149389 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 18922 | Petition of Miller, 18 Mich. App. 480 | 200+76 | If the street and alleys sought to be vacated are in fact county roads, the circuit court could not vacate them because under the provisions of section 66 of the plat act and section 18, chap. 4 of the general highway law county roads may be vacated only upon the vote of the board of county road commissioners. See In re Petition of Bryant (1949), 323 Mich. 424, 434, 435, 35 N.W.2d 371, and In re Petition of Wernicke (1951), 331 Mich. 9 1, 95, 49 N.W.2d 76. | County roads may be vacated only upon vote of board of county road commissioners. M.C.L.A. SS 224.18, 560.59-560.66. | Can a circuit court vacate a county road? | 019271.docx | LEGALEASE-00149404-LEGALEASE-00149405 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 18923 | In re Palumbo, 154 B.R. 357 | 11=2559 | Debtor-partner's interest in partnership, although part of his bankruptcy estate in form of personal property interest, does not extend to interest of assets actually held by partnership. Bankr.Code, 11 U.S.C.A. 541. | The bankruptcy court further found that the interest held by a partner in a partnership is a personal property interest in the partnership, wherein he (or she) may receive his interest in the partnership assets after an accounting and payment of the partnership debts. 29 S.E. at 271. Thus, the debtor-partner's interest in the partnership, although part of his bankruptcy estate in the form of a personal property interest, does not extend to an interest in the assets actually held by the partnership. See also In re Olszewski, 124 at 786. | Is the interest held by a partner in a partnership personal property? | Partnership - Memo=482 RK_5846.docx | ROSS-003280793/ROSS-003280794 | SA_Sub | 0.58 | 0 | | | 1 | |
| 18924 | Adams v. Paul, 11 Cal. 4th 583 | 302=53(1) | Party may plead in alternative and may make inconsistent allegations. | | Can a party make inconsistent allegations? | Pleading - Memo=486 RMM_58681.docx | ROSS-003282081/ROSS-003282082 | Condensed_SA | 0.95 | | 1 | 0 | 1 | |
| 18925 | DRC v. Great Am. Ins. Companies, 901 So. 2d 710 | 302=20 | Inconsistent, alternative and hypothetical pleadings are permitted. Rules Civ.Proc., Rule 8(e)(2). | | "Are inconsistent, alternative and hypothetical pleadings permitted?" | Pleading - Memo=487 RMM_58681.docx | ROSS-003286378/ROSS-003282379 | SA_Sub | 0.84 | 0 | | 1 | 1 | |
| 18926 | BLDG Mgmt Co. v. Maja, 32 Misc. 3d 652 | 307A=581 | Generally, mere delay in and of itself is not a basis for dismissal of a proceeding, under calendar default rule. N.Y.C.R. Rules, 5.208.14. | | Is a mere delay in and of itself a basis for dismissal of a proceeding? | 016463.docx | LEGALEASE 00149345- LEGALEASE 00149346 | SA_Sub | 0.62 | 0 | | 1 | 1 | |
| 18927 | Hillman v. Weatherly, 14 So. 3d 721 | 307A=581 | What constitutes failure to prosecute is considered on a case-by-case basis. Rules Civ.Proc., Rule 41(b). | | "Is a failure to prosecute, considered on a case-by-case basis?" | Pretrial Procedure - Memo=8137 - C- K_58453.docx | ROSS-003291891 | SA_Sub | 0.87 | 0 | | 1 | 1 | |
| 18928 | Noble v. Shawnee Gun Shop, 409 S.W.3d 476 | 30=3893 | In reviewing a circuit court's grant of a motion to dismiss, the facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiff. | | "In order to survive a motion to dismiss, should a petition invoke substantive principles of law entitling plaintiff to relief and ultimately inform the defendant of that which plaintiff will attempt to establish at trial?" | 039809.docx | LEGALEASE 00150018- LEGALEASE 00150019 | Condensed_SA_Sub | 0.83 | | 1 | 1 | 1 | |

3336

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,973 | 21,876 | 9,029 |
| 18029 | In re Tangshan Conms Co, 226 B.R. 136 | 308+130(1) | | Under Illinois law, agents generally do not own personal property transferred into their possession by or for the benefit of a principal. | Does an agent own the property he has in possession? | Principal and Agent Memo 182 RK_56589.docx | ROSS-000282360 / ROSS-000282362 | SA, Sub | 0.91 | 0 | | | 1 | |
| 18030 | Home Materials v. Auto Owners Ins. Co., 250 Ga. 599 | 308+15 | | Dual agency is not considered evil per se as against public policy. | Is dual agency against public policy? | 04195.docx | LEGALEASE-00149607 / LEGALEASE-00149608 | Condensed, SA | 0.86 | 1 | 0 | | 1 | |
| 18031 | City of Fresno v. Mainstrom, 94 Cal. App. 3d 974 | 371+2951 | | Taxes are raised for general revenue of the governmental entity to pay for a variety of public services, and a "special tax" is a tax collected and earmarked for a special purpose, rather than being deposited in a general fund. | What is a special tax? | 04396D.docx | LEGALEASE-00149482 / LEGALEASE-00149483 | Condensed, SA | 0.67 | 0 | | | 1 | |
| 18032 | St. Fort v. State, 943 So. 2d 314 | 377T+56 | | Purpose of stalking statute is to criminalize conduct that falls short of assault or battery. | What is the purpose of the stalking statute? | "Threats, Stalking, and Harassment - Memo #9 - C - 18.docx" | LEGALEASE-00059747 / LEGALEASE-00059748 | SA, Sub | 0.88 | 0 | | | 1 | |
| 18033 | Zapp Nat'l Bank v. Merns-Buning & Redevelopment Corp., 108 Minn. 909 | 831+461 | | Order in which signatures of accommodation endorsers appeared on note, rather than order in which agreement of endorsers as to order of liability, M.S.A. S 336.3-118(e). | "When there are multiple signatures on the note, how does the order affect the liability of the signatories?" | 010980.docx | LEGALEASE-00150424 / LEGALEASE-00150425 | SA, Sub | 0.73 | 1 | 0 | | 1 | |
| 18034 | Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469 | 413+1044 | | Even if claimant raised an affirmative matter, in employer's suit to recover workers' compensation payments for which claimant was later determined to be ineligible, voluntariness of employer's payments, that did not negate complaint's essential claim for recovery of voluntary payments made because of a mistake of fact, and therefore claimant's motions to dismiss, if viewed as one raising affirmative matter, was improperly granted. Ill.Rev.Stat.1985, ch. 110, P 2-619. | Would an affirmative matter negate the cause of action completely or refute crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint? | 036528.docx | LEGALEASE-00150428 / LEGALEASE-00150429 | Condensed, SA, Sub | 0.46 | 0 | | | 1 | |
| 18035 | Silicon Valley Taxpayers Ass'n v. Santa Clara Cty. Open Space Auth., 44 Cal. 4th 431 | 268+438 | | The "public at large, within meaning of constitutional provision defining "special benefits" which may be funded by special assessment as particular and distinct benefit over and above general benefit conferred on real property located in the district or to the public at large," means all members of the public, including those who vote, work, and shop within the assessment district, and not simply transient visitors. West's Ann.Cal. Const. Art. 13D, S 2(i). | What is the difference between special assessment and special tax? | 043044.docx | LEGALEASE-00150494 / LEGALEASE-00150495 | Condensed, SA, Sub | 0.17 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 18936 | Young Men's Christian Ass'n of Germantown v. City of Philadelphia, 323 Pa. 401 | 371=2901 | Taxes are not penalties, but are contributions which all inhabitants are expected to make [and] the taxpayer is compelled to make for the support of the manifold activities of government. Every inhabitant and every parcel of property receive governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the cost of this protection, some other inhabitant must contribute more than his fair share of that cost | "Taxes" are not penalties, but are contributions with all inhabitants may be compelled to make for support of government. | Are taxes one kind of penalties? | Tauton - Monroe 876-C-1s_5975.docx | R055-00328293/R055-00328301 | Condensed, SA | 0.72 | 0 | | | 1 | |
| 18937 | Beal's. Russell, 76 Misc. 244 | 83I=481 | There is, of course, no doubt but that a negotiable instrument is a chose in action, and, like other choses in action, may be assigned, either before or after maturity, with or without indorsement. The defendant, however, claims that an assignment made by indorsement after maturity is merely an assignment of a chose in action, and not of a negotiable instrument, and that therefore the plaintiff, having failed to allege indorsement and delivery before maturity, must allege both demand and consideration | A negotiable instrument may be assigned before or after maturity, with or without indorsement. | Can a negotiable instrument be assigned before maturity? | Bills and Notes-Memo 1136-PK_59406.docx | R055-00291531 | Condensed, SA | 0.81 | | 0 | | 1 | |
| 18938 | Beal's. Russell, 76 Misc. 244 | 83I=481 | There is, of course, no doubt but that a negotiable instrument is a chose in action, and, like other choses in action, may be assigned, either before or after maturity, with or without indorsement. The defendant, however, claims that an assignment made by indorsement after maturity is merely an assignment of a chose in action, and not of a negotiable instrument, and that therefore the plaintiff, having failed to allege indorsement and delivery before maturity, must allege both demand and consideration | A negotiable instrument may be assigned before or after maturity, with or without indorsement. | Can a negotiable instrument be assigned after maturity? | 01079S.docx | USGA EAOE-00151160 (USGA EAOE-00151161) | Condensed, SA | 0.81 | | | | | 1 |
| 18939 | Cent. Sch. Supply House v. Donovan, 7918-App. 208 | 83I=426 | Possession of such notes is prima facie evidence of title thereto. Morris v. Preston, 93 Ill. 215; Palmer v. Nassau Bank, 78 Ill. 380. | Possession of notes endorsed in blank is prima facie evidence of title | Is possession of notes evidence of title or ownership? | Bills and Notes-Memo 1145-PK_59411.docx | R055-00329484B | Condensed, SA, Sub | 0.41 | | | | 1 | |
| 18940 | Vulcan Materials Co. v. Artofex Chemicals Inc., 355 F.Supp 241214 | 343=1006 | Another court has verified that although "there is no established standard" in the area, the proper analysis looks to "the buyer's subjective motives to determine if it had a legitimate business reason for eliminating its requirement, as opposed to a desire to avoid its contractual N.C.C Sunkay Inserts, Inc. v. World Color Press, 759 F.Supp. 3004, 1009 (S.D.N.Y.1991). If may be that the good faith standard of the requirements clause under the contract." Tech Wayne Corrugated Paper v. Anchor Hocking Glass, 130 T.2d 473, 481 (3d Cir.1941); See also Diversified Products, Inc. v. Tops Markets, No. 99"CV-0651"f, 2003 WL 64065F, (W.D.N.Y. June 7, 2001). | Good faith is essential to requirements contract, thus party under contract cannot pretend not to have requirement to avoid its obligations under contract. U.C.C. § 2-306(1). | Is there an implied covenant of good faith in every contract? | Consumer Credit - Memo 10s-0.docx | USGA EAOE-00046584 (USGA EAOE-00046585) | SA, Sub | 0.76 | | | | 1 | |
| 18941 | State Highway Comm'n v. Studler, 158 Neb. 289 | 64=27 | Briefly stated, appellant's first contention is that the provisions of G.S.1941 Supp. 8-5,124 do not limit the State's right to recover damages for injuries to its highways and highway structures. In other words, that it has a common-law right to sue for any damage caused to its highways and highway structures of the state and may sue for and obtain such damages as might be reasonable in any such action we hold, by legislation that determine its right of recovery might be under such conditions and circumstances. We do not believe appellant's position is well taken. Reference to earlier statutes dealing with the same subject matter may be helpful in reaching a proper conclusion. In 1929 the legislature enacted Laws of 1929, Ch. 84, Sec. 5, which reads: "Any person who shall willfully or negligently damage a highway shall be liable for the amount of such damage and the state highway commission may prosecute in the name of the state for the amount of such damage." | Where highway bridge was destroyed when motor truck, loaded in excess of weight limit permitted by State Highway Commission, was driven on bridge, under statute providing that person causing injury to highway structure shall be liable for damage, commission could recover replacement cost, and judgment for replacement cost less depreciation was improper. Gen.G.S.Supp.1939, 8-5,123; Gen.St.Supp.1943, 8-5,124. | Who can be held liable for damage caused to the highway? | Highways - Memo 58-RC_59343.docx | R055-00331984S /R055-00331986 | Condensed, SA, Sub | 0.41 | | | | | 1 |
| 18942 | Raymond James Capital Partners, L.P. v. Ryan, 789 S.E.2d 695 | 307A=633 | The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted and under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true; legal conclusions, however, are not entitled to a presumption of validity. Dismissal is proper only when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no legally sufficient claim exists; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. | On a motion to dismiss for failure to state a claim, the complaint's material factual allegations are taken as true; legal conclusions, however, are not entitled to a presumption of validity. Rules Civ.Proc., Rule 12(b)(6), West's N.C.G.S.A. § 1A-1. | Are legal conclusions not entitled to a presumption of validity? | Pretrial Procedure - Memo 8-463-C-NC_59162.docx | R055-00331034/R055-00331037 | SA, Sub | 0.67 | | | 0 | 1 | |
| 18943 | Massing v. Rosenzweig, 872 F.Supp 519 | 30B=27.1 | The real question is whether Rosenblatz and ISADA can compel plaintiff to arbitrate with them. An agreement containing an arbitration clause covers non-signatories under common law contract and agency principles. See Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1188 (9th Cir.1986) (employment of brokerage firm may be entitled to the rights and privileges of an agreement between the firm and its customers although the employer is a signatory to the agreement). Nesbigge v. York Securities, Inc., 823 F.2d 231, 233 (8th Cir.1987) (employees are third parties to the agreement of their customer agreement and the agreements between the employer and the client to whom the dispute was submitted. Under the circumstances of the employment, arbitration can be entered into between the employer and the client whom the dispute arises and the scope of employment so required. An employer may invoke an arbitration agreement entered into by its principal. See Morgan v. Kidorn Securities, Inc., 649 F.Supp 1023, 1032-33 (N.D.Ill.1986). | An agent may invoke an arbitration agreement entered into by its principal. | Can an agent invoke an arbitration agreement? | 04214.docx | USGA EAOE-00150964 (USGA EAOE-00150965) | Condensed, SA | 0.93 | | | 0 | 1 | |

3338

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18944 | Leonardo v. United States, 63 Fed. Cl. 126 | | Set Broadcasting is distinguishable because, in making the determination that an original actual authority existed, the court did not examine "the nature of the duties assigned." See Zoubi, 25 Cl.Ct. at 587 ("[T]he nature of the duties assigned may be assessed to determine whether the federal employee had the implied authority to bind the government"). The court in Set Broadcasting found that Forest Supervisors have express actual authority to enter into binding contracts. 52 Fed.Ct. at 821. The court noted that, even if the Forest Supervisors did not have express actual authority, they had implied actual authority because "the issuance of special use authorizations is sufficiently 'integral' to the land management duties of a Forest Supervisor." Because the court provided no examination of the duties assigned to the Forest Supervisor, there is no basis from which to compare the position of a Forest Supervisor to that of a Cut-and-Billee officer. | A party alleging either an express or implied-in-fact contract with the United States must demonstrate: (1) mutual intent to contract; (2) offer; (3) acceptance; (4) consideration; and (5) that the government representative who entered or ratified the agreement had actual authority to bind the United States. | Does the Forest Supervisor have the authority to enter into contracts binding the government? | Woods and Forest - Memo 15 - ANM_59185.docx | ROSS-003103314-ROSS-003103315 | Condensed, SA | 0.68 | | 1 | | 1 | 1 |
| 18945 | Nw. Ecosystem All. v. Washington Dep't of Ecology, 104 Wash. App. 901 | 411+7 | Additionally, the Forest Practices Appeals Board (Appeals Board), the administrative agency with jurisdiction over forest practice appeals, does not have jurisdiction to determine whether there is compliance with SEPA and the Act. In Snohomish County, the Board and the DOE asserted, and the court held, that the Appeals Board has neither express nor implied authority to determine the validity of rules promulgated by the Board. 69 Wash.App. at 663, 850 P.2d 666. | Doctrine of primary jurisdiction did not preclude court's exercise of jurisdiction under Administrative Procedure Act (APA) as to claims that feasible forest practice rules under Forest Practices Act, and that certain existing rules not under current review by agencies were invalid; these issues went beyond agencies' authority to regulate forest practices, and required statutory interpretation as to extent of agencies' duties under Act and of validity of existing regulations. West's RCWA 34.05.570(2)(c), (4)(c); 76.09.020(2), 76.09.040(5). | Does the Forest Practices Appeals Board/Appeals Board have jurisdiction to determine compliance of forest practice rules? | 04755.docx | USA4A5A6_00151206 USA4A5A6_00151209 | Condensed, SA, Sub | 0.25 | | 1 | 1 | 1 | 1 |
| 18946 | Cent. Hanover Bank & Tr. Co. v. The Mirror, 155 Misc. 366 | 172H+603 | Since the plaintiff was not the "payee or indorsee of" the instruments, nor "in possession of" instruments "payable to bearer," a certification of the checks by it did not discharge "the drawer from liability thereon," under section 324. The interpretation cases sustain the view that only a certification by the holder operates to release the drawer. Colket v. Union Surety & Guaranty Co., 79 App. Div. 469, 80 N. Y. S. 58. Mere certification is not enough. The determinative factor is the position of the one procuring the certification as it was in Mere case. Where a check lies, 1888, 1000, 285 N. W. 853, 854, 42 A. L. R. 422, it was held "that the fact that the indorsee checked for that check as holder and presented it to the bank for the purpose of certification did not make him a holder of the check in the sense that the Negotiable Instruments Act, or a transferee thereof." And in construing the provision of the Uniform Negotiable Instruments Law, the Nebraska court, in Gage v. Security State Bank, 129 Neb. 490, 498, 191 N. W. 654, 656, 658, held: "Where a check is certified at the instance of a person having no authority from any one of these (the payee, holder or transferee) the certification would not constitute an acceptance so as to change the relation of the parties and work an assignment of the bank's funds." | A note executed in one state, and made payable in another, must bear interest according to the law of the latter state where the rate therein payable is the higher. | Which law governs the interest payable on a note? | 009635.docx | USA4A5A6_00151644 USA4A5A6_00151645 | Condensed, SA, Sub | 0.71 | | 1 | 1 | 1 | 1 |
| 18947 | Whitlock v. Castro, 22 Haz. 6.300 v 10 108 | 8.301+10 | A note payable in a particular place, bears interest according to the rate there prevailing. | A note executed in one state, and made payable in another, must bear interest according to the law of the latter state where the rate therein payable is the higher. | Which law governs the interest payable on a note? | Bills and Notes - Memo 867 - RK_59548.docx | ROSS-003279650-ROSS-003279651 | Condensed, SA, Sub | 0.09 | | 1 | 1 | 1 | 1 |
| 18948 | McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207 | 172H+117 | Suetta McKenna does not dispute that the narrow one copy of a document entitled "Notice of Right to Cancel" on November 9, 2006. The district court sketched "as long as a borrower receives one such notice, the rescission period is not extended." Palermo, 2011 U.S. Dist. LEXIS 28719, at 2011 WL 1100166. The district court cited Ring v. Long Beach Mortgage Co., 2010 U.S. Dist. LEXIS 12570, in resolving this case where another district judge so construed the countervart federal scheme, similar in substance to the Massachusetts rules, compare 12 C.F.R. " 226.23, with 209 Mass.Code Regs. " 32.1. | A retro-execution in one state, and made payable in another, must bear interest according to the law of the latter state where the rate therein payable is the higher. Consumer Credit Cost Disclosure Act (MCCCDA), and therefore rescission period was extended when the three days after form closed that the extended to their form closing, provided only one copy of notice, instead of two copies provided for under the federal regulations; lack of two notices enabled, similar to one-notice policy provided by the rescission period. M.G.L.A. c. 140D, §5 10(a, f); 209 USAR §2.15(1), (2). | Can the rescission period be extended when the borrower has received notice? | 013000.docx | USA4A5A6_00151590 USA4A5A6_00151591 | Condensed, SA, Sub | 0.14 | | 1 | 1 | 1 | 1 |
| 18949 | Bd. of Cty. Comm'rs of Cty. of Morgan v. Kobobel, 74 P.3d 509 | 200+75 | Ordinarily, public highways remain public unless and until vacated or abandoned by some appropriate action. See Rathopoulos v. Farrow, 691 P.2d 164.665. If the street and alleys sought to be vacated are in fact county roads, the circuit court could not vacate them because under the provisions of section 68 of the post act 2 and section 16, chap. 9 of the general highway law county road may be vacated only upon the vote of the board of county road commissioners. See 2024 Morgan, at 1 Mich. App. 414, 424, 435, 33 N.W.2d 371, and in Petition of Wereski (1951), 331 Mich. 143, 49 N.W.2d 389. | Ordinarily, public highways remain public unless and until vacated or abandoned by some appropriate action. | When do highways cease to be public? | 018723.docx | USA4A5A6_00151691 USA4A5A6_00151692 | Condensed, SA | 0.35 | | 1 | | 1 | 1 |
| 18950 | Petition of Miller, 18 Mich. App. 480 | 200+76 | If the street and alleys sought to be vacated are in fact county roads, the circuit court could not vacate them because under the provisions of section 68 of the post act 2 and section 16, chap. 9 of the general highway law county road may be vacated only upon the vote of the board of county road commissioners. See In re Petition of Wereski (1951), 331 Mich. 143, 49 N.W.2d 389. | County roads may be vacated only upon vote of board of county road commissioners. M.C.L.A. §§ 224.18; 560.9 560.66. | How can a county road be vacated? | 018724.docx | USA4A5A6_00151652 USA4A5A6_00151653 | SA, Sub | 0.75 | | | 1 | 1 | 1 |
| 18951 | Simmons v. Stuckey, 1925 OK 873 | 371+2028 | In the third syllabus in the case of Schaff v. Borum, County Treasurer, &C &C., 284, 200 P. 191, the court said: "The Act of March 15, 1915, chapter 173, Sess. Laws 1915, creating a county highway commission relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purpose of carrying into effect the provisions of said act, and use such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 8 mills." | Legislative authorization of additional apportionment of levies for counties and other municipalities, which, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Can the county lease board levy beyond the constitutional limitation for the maintenance of county highways? | 018738.docx | USA4A5A6_00151654 USA4A5A6_00151655 | Condensed, SA, Sub | | | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 21,876 | Multiple Differences 9,029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18952 | Simmons v. Stuckey, 1915 OK #35 | 371+2028 | In the third syllabus in the case of Schaff v. Borum, County Treasurer, 82 Okl. 284, 200 P. 191, the court said "The Act of March 15, 1915, chapter 173, Sess. Laws 1915, creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purposes of carrying into effect the provisions of said act, so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 8 mills." | Legislative authorization of additional apportionment of tax levies for counties and other municipalities, which, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Can the county excise board levy beyond the constitutional limitation for the construction of county highways? | 018742.docx | LEGALEASE 00151658 / LEGALEASE 00151659 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 18953 | Simmons v. Stuckey, 1915 OK #35 | 371+2028 | In the third syllabus in the case of Schaff v. Borum, County Treasurer, 82 Okl. 284, 200 P. 191, the court said "The Act of March 15, 1915, chapter 173, Sess. Laws 1915, creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purposes of carrying into effect the provisions of said act, so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 8 mills." | Legislative authorization of additional apportionment of tax levies for counties and other municipalities, which, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Can the county excise board levy beyond the constitutional limitation for the construction of state highways? | 018752.docx | LEGALEASE 00151664 / LEGALEASE 00151665 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 18954 | Simmons v. Stuckey, 1915 OK #35 | 371+2028 | In the third syllabus in the case of Schaff v. Borum, County Treasurer, 82 Okl. 284, 200 P. 191, the court said "The Act of March 15, 1915, chapter 173, Sess. Laws 1915, creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purposes of carrying into effect the provisions of said act, so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 8 mills." | Legislative authorization of additional apportionment of tax levies for counties and other municipalities, which, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Can the county excise board levy beyond the constitutional limitation for the maintenance of state highways? | 018755.docx | LEGALEASE 00151666 / LEGALEASE 00151667 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 18955 | Thomas v. First Nat. Bank of Keystone, 117 Pa. Super. 205 | 172k+593 | It is the rule in this State that an open deposit created by a customer of a bank is subject to his order on demand. A check is merely an order of the depositor on bank to pay stated amount to named payee from the bank, and if payment is made by bank, after such notice, payment is at peril of the bank. | A check is merely an order of the depositor on bank to pay a stated amount to named payee from the bank's account, and is revoked at any time before check is paid or accepted for payment by bank. The usual method of revocation is by notice to the bank on which the check is drawn to stop payment on a certain check, and such notice keeps the check in the possession of the depositor, affecting his account in banking on the bank. | Is a notice of stop payment to a bank by a depositor binding in nature? | 010156.docx | LEGALEASE 00152077 / LEGALEASE 00152078 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 18956 | In re Dudley, 502 B.R. 259 | 51+3403(1) | Generally, in the context of a finding that the debt is excluded from discharge, Gregory v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); Numero v. Rountree (In re Rountree), 330 B.R. 165, 170 (E.D.Va 2004). | Creditor generally has the burden to show that its debt is excluded from discharge. 11 U.S.C.A. § 523(a). | Who bears the burden of proof that the debt is excluded from discharge? | Bills and Notes - Memo 342-PR_62205.docx | RDS+00196315 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | 1 |
| 18957 | Kelly v. Cent. Bank & Tr. Co. of Denver, 794 P.2d 1037 | 83k+428 | The term "indorsement" is generally understood to mean the indorser's writing of his or her signature on the instrument or the affixing of the indorser's name or some designation identifying the indorser on the instrument, and a check simply inscribed "indorsement," Central, Inc. v. Cache National Bank, supra. N33-Atlantic Terms Courts, Inc. v. Citizens Bank & Trust Co., supra; Citizens Bank v. Thornton, 125 A.L.R. § 6, 1568 1929(6). | "Indorsement" means the indorser's writing of his or her signature on an instrument or the affixing of the indorser's name or some designation identifying the indorser on the instrument, and a check simply inscribed for deposit only to an account other than the payee's account and without the payee's signature is not an effective "indorsement." | Does the word endorsement mean transfer by writing? | 007913.docx | LEGALEASE 00152481 / LEGALEASE 00152482 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | 1 |
| 18958 | In re Reiss, 4408 B.K.34 | 83k+728 | Under New Jersey law, the enforcement of all promissory note that is secured by a mortgage is governed by the UCC. The note, at issue here, made payable to Countrywide, providing for interest and an unconditional promise to pay the debt, is a "negotiable instrument" under the New Jersey UCC, which defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order... if it (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time." N.J.S.A 12A:3-104. A party is entitled to enforce a negotiable instrument if it is "the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A:3-309 or subsection d. of 12A:3-418." N.J.S.A 12A:3-301. In this case, the creditor may not enforce the instrument under any of the three statutory qualifiers. | Both serving as trustee pursuant to mortgage pooling and servicing agreement was not "holder" entitled to enforce mortgagor's promissory note, in mortgagor's bankruptcy case, under New Jersey's version of Uniform Commercial Code (UCC), where bankruptcy trustee, as an assignee of note at physical possession of note, as required for registration of instrument to transfer. N.J.S.A. 12A:1-201(20), 12A:3-201(a, b). | Does the holder of a negotiable instrument have right to enforce it? | 010813.docx | LEGALEASE 00152303 / LEGALEASE 00152304 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,073 |
| 18939 | Spencer v. Sterling Bank, 63 Cal. App. 4th 1055 | 83T+427 | An endorser, an "indorsement" is a signature that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument or (2) restricting payment of the instrument (* 3205, subd. (a).) An "indorser" is a person who makes an endorsement (* 3204, subd. (b).) If an indorsement is made by the holder of an instrument and the endorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. (* 3205, subd. (a).) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed. (* 3205, subd. (b).) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable. (* 3205, subd. (c).) | If indorsement is made by holder of instrument and indorsement identifies person to whom it makes instrument payable, it is a "special indorsement." West's Ann.Cal.Com.Code § 3205(a). | When does an indorsement become a special indorsement? | 010815.docx | LEGALEASE-00132355-LEGALEASE-00132356 | SA, Sub | 0.84 | 0 | 1 | | 1 | |
| 18940 | McHenry v. Foutty, 223 Ind. 335 | 200+7351 | The vacation of Highways is not favored, and the rights of the public in and to a road can be divested only by some method authorized by law. There must be a full and substantial compliance with the provisions and requirements of that law to cause a vacation of an existing highway. Kyle v. The Board of Commissioners of Vanderburgh County, 49 N.E. 2d 121. | The vacation of roads is not favored and rights of public in and to a road can be divested only by some method authorized by law with which method there must be a full and substantial compliance. | Is the vacation of highways favored? | Highway - Memo 241 RK_00183.docx | ROSS-003389684-ROSS-003389687 | Condensed, SA, Sub | 0.45 | | 0 | 0 | 1 | |
| 18941 | State Highway Comm'n v. Stadler, 158 Kan. 289 | 64+27 | Briefly stated, appellant's first contention is that the provisions of G.S. 1941 Supp. 8-5,124 do not limit its rights to recover damages for injuries to its highways and highway structures. In other words, that it has a common-law right of action against the negligent party causing injury to highway and highway structures of the state and may sue for and obtain such damages as might be recoverable in a common law action notwithstanding the legislature has seen fit to enter the field and by legislative fiat decree who in right of recovery might be under such circumstances and conditions. We do not believe appellant's position is well taken. Reference to earlier statutes dealing with the same subject matter may be helpful in interpreting the provisions of the statute here enacted (Jaw of 1929, Ch. 84, Sec. 5, which reads: "Any person who shall wilfully or negligently damage a highway shall be liable for the amount of such damage and the state highway commission may prosecute claims or suits for the amount of such damage." Certainly after the enactment of this statute it was never considered that a common-law action to recover damages existed in favor of a governmental agency for negligent destruction of its highways. It must have been presumed that because it is a governmental function and a part of the highway, Board of Com'rs of Cloud County v. Mitchell County, 75 Kan. 750, 757, 91 P. 244; G.S. 1935, 17-201 (3) and G.S. 1941 Supp. 8-126(4), was expended by the new statutory cause of action to negligence provided for therein. Later, the legislature passed Laws of 1931, Ch. 244, Sec. 3 permitting the new statute to be applied, for violations of its provisions recoverable by the authorities charged with the maintenance of Highway structures. | Where highway bridge was destroyed when motor truck, loaded in excess of weight limit permitted by State Highway Commission, was driven on bridge, under statute providing that person causing injury to highway structure shall be liable for all damages, commission was entitled to recover replacement cost, and judgment for replacement cost less depreciation was improper. Gen.St.Supp.1939, 8-5,123; Gen.St.Supp.1941, 8-5,124. | Will a person who willfully damages a highway be liable? | Highway - Memo 331 RK_40193.docx | ROSS-003310201-ROSS-003310204 | Condensed, SA, Sub 0.76 | | 1 | 0 | 1 | 1 |
| 18942 | Lutharis v. Reid, 163 N.C. 336 | 308+9211 | The moral requires us to consider the evidence in the most favorable view for the plaintiff. Plaintiff contends that he acted upon the representation of W. H. Field that J. D. Turner was the bearer of defendants and therefore fully authorized to make contracts for the sale of cotton on their behalf, and that he was dealing with Turner as agent, and not as the individual capacity, and relied upon the statement of W. H. Field that he could so deal on the future. The rule in regard to agency may be thus stated: A principal is bound by the acts of his agent within the authority he has actually given him, which includes not only the precise act which he expressly authorizes him to do, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond that, he is liable for the acts of the agent within the appearance of authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. For the acts of his agent, within his express authority, the principal is liable because the act of the agent is the act of the principal. But the principal is liable for the act of his agent, within the apparent authority of the agent, although in fact he has given the agent no such authority, and knowingly permits him to assume, or holds him out as having. The principal is bound, whether the agent is acting in good faith or is perpetrating a fraud, provided the third person acts in good faith. Medforth on Agency, "34. The principal is bound by all the acts of his agent within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions, unknown to the persons dealing with him, and this is founded on the doctrine that where one of two innocent persons must suffer by the act of a third person, he who has held the third person out as worthy of trust must bear the loss. | The acts of an agent performed within the scope of his real or apparent authority are binding on his principal. | Is a principal bound by the acts of his agent within the scope of his real or apparent authority? | Principal and Agent KC_59865.docx | ROSS-003319080-ROSS-003319081 | SA, Sub | 0.96 | | 1 | 1 | 1 | 1 |
| 18943 | Wengar v. Mueller, 102 R.I. 8; 301+45 | | The instruments offered in evidence, unless payable to bearer or to some person therein named, are not promissory notes. Walter v. Short, 1 Gal. 252-230, Macon v. Sheffields Brook, 205 Smith v. Wood, Kudger's, 46 Adams v. King, 16 Ill. 169-07; 20 Maine, 337; 11 Com. 531. | Instrument promising and ordering payment of certain fixed amount not made payable to bearer or to some person named therein held not promissory note. | Is it mandatory to name the payee on a promissory note? | 009815.docx | LEGALEASE-00153357-LEGALEASE-00153358 | SA, Sub | 0.46 | | 0 | 0 | 1 | |

| ROW# | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18934 | Lechmere, Inc. v. City of Cincinnati, 401 U.S. 1, 92 S.Ct. 498 (1970) | 92+459(9) | State statute imposing criminal penalties for production of sound in excess of 55 decibels within 10 feet of hospital or church during the posted services "in a manner likely to ... annoy" was unconstitutionally vague, and thus unconstitutional in that it did not sufficiently inform participants in activities on public streets, as 55 decibel level threshold could be met without knowledge that ordinance was being violated. U.S.C.A. Const.Amend. 14; LSA-R.S. 14:103.3. | State statute imposing criminal penalties for production of sound in excess of 55 decibels within 10 feet of hospital or church during the posted services "in a manner likely to ... annoy" was unconstitutionally vague | Is it a crime for three or more individuals to assemble on public sidewalk to conduct themselves in a manner annoying to persons passing? | 014897.docx | LEGALEASE-00150491 LEGALEASE-00150492 | Condensed, SA | 0.47 | 0 | 1 | | 1 | |
| 18935 | United States v. Summit | 308+39 | | As between principal and agent revocation of authority does not become effective until it is in some way communicated to the agent. | Can an agent's authority be revoked without communication? | 014400.docx | LEGALEASE-00150545 LEGALEASE-00150546 | Condensed, SA | 0.8 | 0 | | | 1 | |
| 18966 | Tennison v. Bd. of Educ. of City of Bristol, 226 Conn. 704 | 308+99 | | Issue of apparent authority is to be determined based on two criteria; first, it must appear from principal's conduct that principal held agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted agent to act as having such authority, and second, the party dealing with agent must have reasonably believed, under all the circumstances, that agent had necessary authority to bind principal to agent's action. | How is apparent authority determined? | Principal and Agent - Memo 161 - S8_60780.docx | ROSS-000285379-ROSS-000285380 | Condensed, SA | 0.74 | 0 | | | 1 | |
| 18967 | U.S. Steel Corp. v. State, 33 Wash.2d 245 | 371+2763 | A tax is not a debt and does not bear interest unless specifically imposed by statute. | Tax is not a "debt" and does not bear interest unless specifically imposed by statute. | Does a tax bear interest? | 014003.docx | LEGALEASE-00150356 LEGALEASE-00150357 | Condensed, Sub | 0.6 | 0 | | 1 | 1 | |
| 18968 | State ex rel. Utilities Comm'n v. Carolina Util. Customers Ass'n, 336 N.C. 657 | 296+2 | Statutorily authorized capture of natural gas local distribution company (LDC) supplier refunds for inclusion in expansion funds for expansion of LDC's into lesser-franchised areas throughout state did not constitute violation of state constitutional tax provision; capture of refunds was no charge levied upon general citizenry for maintenance of government, and amounts refunded to LDCs were not payments made by natural gas utilities customers. G.S. §§ 62-2(9), 62-158, Const. Art. 5, 5. | Is tax a contribution to the maintenance of the general public? | Taxation - Memo 9 615 - C - A_OdkJL70.docx | ROSS-000281385-ROSS-000281386 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | |
| 18969 | United States v. Burnett, 294 F. Supp. 1329 | 260+7 | Maintenance of personal property and structures on an unpatented mining claim is a significant surface disturbance which requires an operating plan. | What constitutes as a significant surface disturbance? | Woods and Forests - Memo 86 - S8_60794.docx | ROSS-000180837-ROSS-000180838 | Condensed, SA | 0.67 | 0 | | | 1 | |
| 18970 | Bedore v. Morrell, 76 Mich. 114 | 217+2 | The formal requisites of an affidavit are the title, venue, signature, jurat, and authentication. This affidavit has no title, or entitling in the cause. The general rule is that the affidavit must be entitled in the suit in which it is to be used. If there is no suit pending at the time, of course, the affidavit must not be entitled. If a suit is pending, and the affidavit is entitled in a suit not pending, the affidavit is a nullity. It is stated that it cannot be that a person should be charged with perjury cannot be so assigned. And it is said that this rule had its origin in England, when the act constituted the statute of English cases will show that the rule there laid down was that affidavits for attachments for contempt, and to hold to bail, and others of that class, made out of court, upon which process of attachment, or process to hold to bail issued, must be entitled, and hence perjury could not be assigned upon them, where none of them decides, that an affidavit is made and used in a case pending, and is not entitled, that perjury cannot be assigned upon it. | Should the affidavit be entitled in the suit in which it is to be used? | Affidavits - Memo 3 A - 19 fwyfrp2G2808084M Adh9vgVBzsVyC.docx | ROSS-000000205-ROSS-000000206 | Condensed, SA | 0.87 | 0 | | | 1 | |

3342

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,079 |
| 18971 | First Nat. Bank of Bortev v. Westbrook, 97 F. 896 | 25+8 | | The placing by a third person of his name on a note as guarantor, in agreement with the payee, and without the privity of the maker, is not a material alteration, which affects the validity of the note as against the maker, nor is the ensure of such name by a subsequent agreement between the same parties. | Is the addition of the name of a guarantor to a note a material alteration? | Bits and Notes - Memo 888 - RK_60800.docx | ROSS-003282013/ROSS-003282013 | Condensed_SA_Sub 0.67 | | | 1 | 1 | 1 | 1 |
| 18972 | McCobv v. Wasdermeyer, 21 Mo. 164 | 83(+83) | | An assignment of a promissory note, written on a separate paper, although not transferring the legal and equitable ownership in the note, so as to enable the assignee to sue on it in his own name. | Is an assignee of a note entitled to sue in his own name? | 00995.docx | LEGALEAK 00153788-/LEGALEAK 00153789 | Condensed_SA_Sub 0.44 | | | | 1 | 1 | 1 |
| 18973 | Noble v. Beeman-Spaulding-Woodward Co., 65 Or. 93 | 83(+83) | | In the absence of a special agreement to be bound jointly and not severally, accommodation parties to commercial paper are liable to each other in succession as their names appear upon the instrument. | In what order are indorsers liable? | 00974.docx | LEGALEAK 00154477-/LEGALEAK 00154478 | Condensed_SA_Sub 0.92 | | | | | 1 | 1 |
| 18974 | Haynes v. Rixon, Automat. 276 P. 82, 65 | 172H+1344 | | In order to be considered a "finance charge" subject to disclosure under TILA, a charge must be incident to an extension of credit. Truth in Lending Act, § 106(a), 15 U.S.C.A. § 1605(a). | What is a finance charge? | 03 3936.docx | LEGALEAK 00151851-/LEGALEAK 00151852 | Condensed_SA_Sub 0.82 | | | | | 1 | 1 |
| 18975 | R.M.W. v. G.M.M., 23 Misc. 3d 711 | 211+1532 | | Biological mother's alleged behavior, in appearing at home of biological father, acting verbally abusive, demanding to see their child, grabbing their child and trying to force child into a car, constituted disorderly conduct, as required to establish a family offense in proceedings on petitions brought on behalf of their son, of determination who lived with their child with biological father and of subject children. McKinney's Family Court Act § 821(1)(a); McKinney's Penal Law § 240.20. | Is a person guilty of disorderly conduct if he causes annoyance? | 01434 7.docx | LEGALEAK 00154619-/LEGALEAK 00154640 | Condensed_SA_Sub 0.21 | | | | | 1 | 1 |
| 18976 | Valinez v. Valinez, 64 Cal. App. 2d 166 | 302+26 | | Form is subordinated to substance in pleading and practice in civil cases. | "Is form subordinated to substance, in pleading?" | Reading - Memo 539 - RMM_61227.docx | ROSS-003281190/ROSS-003281191 | Condensed_SA 0.89 | | 0 | 1 | | 1 | 1 |

Appendix D
3343

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18977 | Town of Montevirco v. Suprenant, 133 N.H. App. 438 | 302v28 | Appellant says that in objection that the traveling public used each of said public highways. From this it was shown the said bridge fence was so constructed to the opposite line of the road should be taken as a statement that the space closed by appellee had been actually used for public travel. The bill so read presents a different case from what we have been discussing, but we are not disposed to take it up in that way. The allegation would be literally true if footmen sometimes traveled along the side of the road as in the sustain in country roads where a slight variation in the location of the fence would be entirely immaterial. Appellant also calls our attention to section 1 of subdivision 7 of the Roads and Bridges Act [Callaghan's 1915 Ill. Supp. ¶ 10000195] requiring highway commissioners, where practicable, to leave one-tenth of the width of the road on each side for a sidewalk for the use of pedestrians, and argues that under the allegations of the bill appellee has deprived the travel of four feet of land available for that purpose, but nothing in the bill about the character that the space is needed for any such purpose, or that a walk could not be created as well or better along the fence as constructed, and the allegation is not that the lands were deprived of the use for any considerable distance. There is no averment of any definite number of feet, except under a wide distance and purpose of which is to dispense with strict proof [13 Cor. 291] if the allegations of the distance of the fence in the road as charged in the bill had been denied by answer followed by a trial of the issues so presented, appellant to sustain its averments would only have been required to prove that the fences were some | Appellant says that in objection that the traveling public used each of said public highways. | Is dispensing with strict proof a purpose of a evidence? | 02743.docx | LEGALEASE 00150593-LEGALEASE 00150594 | Condensed, SA, Sub1 0.97 | | 0 | 1 | | 1 | |
| 18978 | Broadwater v. City of Danville, 184 Ga. App. 886 | 148v28(6) | The trial court's order of dismissal recited that the case had been called for trial, the appearing parties had announced ready, neither appellant nor his counsel had appeared the announcement, a request for a continuance from the firm of appellant's counsel, not licensed to practice law in Georgia, had moved for a continuance which motion was denied; appellee had moved to dismiss the case for want of prosecution; and the trial court had granted the motion. "The power of a trial court to dismiss [an action of whether a defendant may move for dismissal of an action . . . (which) does not operate as an adjudication upon the merits . . ." OCGA "9-11-41(b)). "[A]n order of dismissal for failure to prosecute is subject to appellate review for abuse of discretion. [Cits.]" Hancock v. Oates, 244 Ga. 175, 176 (259 S.E.2d 437 [1979]." "Dismissal for [failure to prosecute] should not be based solely on the absence of a party, but should be taken only after a full consideration of all circumstances. [Cits.]" Calcutta Mills v. Caldwell, 280 Ga. App. 884, 5.5.2d 41 [ | Landowner's appeal from award of special master in condemnation proceeding should not have been dismissed by trial court based on failure of landowner and his counsel to be present at oral argument on date when case was number 11 on published trial calendar, on ground of failure to appeal; superior court clerk properly notified of parties and counsel in the first two cases on the published calendar, and landowner's counsel had been present and landowner's counsel had attempted to find out and could not obtain permission to be called within reasonable notice, few options provided by superior court rule. O.C.G.A. 5 9-11-41(b), Uniform Superior Court Rule 14 | Should a dismissal for failure to appear be based solely on absence of a party or be taken only after a full consideration of all circumstances? | 04362A.docx | LEGALEASE 00154801-LEGALEASE 00154402 | Condensed, SA, Sub 0.4 | | 0 | 1 | | 1 | |
| 18979 | Laplante v. Greeni, 9 Vt. 427 | 303v1810.51 | If an agent do not disclose his principal, the suit may be brought in the name of either. Fuller v. Haster, 4 Esp. case 582 | In contracts, made by agents, without disclosing the principal, the suit, to enforce them, may be in the name of the principal or agent. | When an agent does not disclose his principal, can an action or suit be brought in the name of both? | | LEGALEASE 00154595-LEGALEASE 00154596 | Condensed, SA, Sub 0.1 | | 0 | 1 | | 1 | |
| 18980 | Garrett v. Hinkley, 124 Ill. 321 | 83E+481 | As the original bill stated, so far as we have held, transfer or otherwise affect the legal title to the land, it may be asked, what effect, if of that the real pertinent in the suit of the real parties to the suit has such effect. The answer and, depending upon whether the rules and principles which present in court of equity or of a party of the rules in detail, which were not in the exits, that could not be assigned by a separate instrument, as was done by the maker in a legal title as provided in such. Hyde v. Tanni, 31 Ill. 231; Chickering v. Raymond, 15 Ill. 362 | The legal title to a note cannot be transferred by a separate instrument. | Can a note be transferred by assignment by a separate instrument? | 01986J.docx | ROSS-003321719 | SA, Sub | 0.34 | | 0 | 1 | | 1 | |
| 18981 | Boynton v. Renwick, 46 Iowa 234 | 83E+481 | The purport of the case is, that by our statute, the legal title to a note cannot be transferred by a separate instrument in writing, show that the said Veit received due notice of a demand, and non-payment by the maker of the note, and thereby, the endorser of that fact, the plaintiff could not recover his action, which he assigned as error by the appellant, and the question presented in this case is, whether the indorsement upon the note, and notice of non-payment able to the holder, without demand upon the maker, and notice of non-payment, upon his transfer of the note as a negotiable promissory note, as liable to sue by the holder? | The legal title to a note cannot be transferred by a separate instrument. | Can a note be transferred by assignment by a separate instrument? | Bits and Notes Memo 2212 (MI 61521).docx | | SA, Sub | 0.34 | | 0 | 1 | | 1 | |
| 18982 | Billingham v. Bryan, 10 Iowa 317 | 83E+406 | The indorser of a negotiable promissory note is equivalent to the maker of it; the payment of such note being a condition that if the maker pay according to his obligation, they the indorser shall have no liability on his indorsement; but if the maker neglect to pay it, then the indorser is liable to pay on demand. Hence it is well settled the plaintiff was entitled to maintain his action upon such indorsement. Such indorsement is not a mere assignment of the note; it is a new engagement, and the liability of the indorser is not contingent upon due presentation to the maker, and notice of non-payment. | The indorser of a negotiable promissory note is equivalent to the maker, and the liability is not contingent upon due presentation to the maker, and notice of non-payment. | When an indorser of a promissory note is negotiable, is liable to a suit by the holder? | 02986I.docx | LEGALEASE 00155349-LEGALEASE 00155349 | Condensed, SA, Sub 0.87 | | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 18983 | Sinibaldi v. Redbox Automated Retail, 754 F.3d 703 | 172H+1692 | This case presents a question of statutory interpretation of a section of California's Song"Beverly Credit Card Act, a consumer protection statute intended to prevent merchants from demanding personal information from consumers as a condition of their ability to pay by credit card. Florez v. Linens "N Things, Inc., 108 Cal.App.4th 447, 452, 133 Cal.Rptr.2d 465 (2003). The California Legislature deemed that unless such information, which includes addresses, phone numbers, and ZIP codes, was necessary to complete the transaction, there was no legitimate purpose to its acquisition. Absher v. AutoZone, Inc., 164 Cal.App.4th 332, 345, 78 Cal.Rptr.3d 817 (2008). | Under California law, as predicted by a federal Court of Appeals, rental deposit exemption to California's Song-Beverly Credit Card Act applied to allow self-service movie and video game kiosk operator to collect personal identification information in the form of zip codes from customers in connection with rental transactions, since the credit card was being used as a deposit to secure payment in the event of default, loss, damage, or other similar occurrence. West's Ann.Cal.Civ.Code S 1747.08(a), (c)(1). | Is there an act to protect the personal privacy of consumers who pay for transactions with credit cards? | 014005.docx | LEGALEASE-00155418-LEGALEASE-00155419 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 18984 | Phelps-Roper v. City of Manchester, Missouri, 738 F. Supp. 2d 947 | 129+111 | Plaintiffs first claim that the ordinance violates the First Amendment because it is not content or viewpoint neutral. Because the ordinance prohibits protected speech picketing and protests on public streets and sidewalks, the ordinance regulates expressive conduct protected by the First Amendment. See Carey v. Brown, 447 U.S. 455, 460, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); see also Hill v. Colorado, 530 U.S. 703, 715, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). As part of its protections, the "First Amendment generally prevents government from proscribing speech, because of disapproval of the ideals expressed." R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Accordingly, content-based regulations of speech are "presumptively invalid." For a state or municipality to enforce a content-based regulation, it must show that its regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Frisby v. Schultz, 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (internal citation and quotation marks omitted). By contrast, states and municipalities may enforce content-neutral regulations of the time, place, and manner of expression as long as they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. | City ordinance prohibiting pickets and protests within 300 feet of funeral or burial service was not narrowly tailored to serve significant government interest, for purposes of church members' challenge to ordinance on First Amendment grounds; first version of ordinance contained complete ban on pickets and protests within 300-foot radius of any funeral, while later versions restricted too much speech due to size of buffer zone. U.S.C.A. Const.Amend. 1. | Is picketing considered protected speech under the First Amendment? | 014307.docx | LEGALEASE-00155780-LEGALEASE-00155781 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 18985 | Carey v. Brown, 447 U.S. 455 | 129+111 | There can be no doubt that in prohibiting peaceful picketing on the public streets and sidewalks in residential neighborhoods, the Illinois statute regulates expressive conduct that falls within the First Amendment's preserve. See, e. g., Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Gregory v. Chicago, 394 U.S. 111, 112, 89 S.Ct. 946, 947, 22 L.Ed.2d 134 (1969); Shuttlesworth v. Birmingham, 394 U.S. 147, 152, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969). "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.). " "[S]treets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." " Hudgens v. NLRB, 424 U.S. 507, 515, 96 S.Ct. 1029, 1034, 47 L.Ed.2d 196 (1976) (quoting Food Employees v. Logan Valley Plaza, 391 U.S. 308, 315, 88 S.Ct. 1601, 1606, 20 L.Ed.2d 603 (1968)). | Illinois statute prohibiting picketing of residences or dwellings, but exempting from its prohibition peaceful picketing of place of employment involved in labor dispute, denied equal protection, notwithstanding state's asserted interests in promoting privacy of home and in providing special protection for labor protests. S.H.A.Ill. ch. 38, S 21.1-2; U.S.C.A.Const. Amends. 1, 14. | "Does an ordinance which prohibits protected speech, picketing, and protests on public streets and sidewalks regulate expressive conduct protected by the First Amendment?" | 014309.docx | LEGALEASE-00155776-LEGALEASE-00155777 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 18986 | Gerard-Fillio Co. v. McNair, 68 Wash. 321 | 185+131(1) | The second question, whether the verbal contract modifying the original written contract was within the statute of frauds, is of more difficulty. In this state a contract employing an agent to sell or purchase real estate for a commission must be in writing in order to be valid. Rem. & Bal. Code, " 5289. And this court has held that a contract modifying or abrogating a prior written contract required by statute to be in writing must itself be in writing to be obligatory. Spinning v. Drake, 4 Wash. 285, 30 Pac. 82, 31 Pac. 319; Thill v. Johnston, 60 Wash. 393, 111 Pac. 225. And we have held, also, that an oral contract for the payment of a commission for selling or purchasing real estate, although fully performed, is not enforceable. Keith v. Smith, 46 Wash. 131, 89 Pac. 473, 13 Ann. Cas. 975. These principles are relied upon to support the judgment of the trial court, but it seems to us that they do not meet the question presented. While it is the rule that a written executory agreement to sell or purchase real estate cannot be rescinded or abrogated by an oral executory agreement to rescind or abrogate, it does not follow that such an agreement cannot be modified or abrogated by an executed oral agreement. | A written contract within the statute of frauds (Rem. & Bal.Code, S 5289) may be modified or abrogated by an oral executed contract, but not by an oral executory agreement. | Can an executory agreement for the sale of land or real estate be rescinded or abrogated by oral rescission or agreement? | Exchange of property - Memo - 14 - AM_61345.docx | ROSS-003278459-ROSS-003278460 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 18987 | Justin v. Delta Motor Line, 43 So. 2d 53 | 302+38 | Those recitals of the petition pertaining to delayed delivery and the consignee's disposition not to accept delivery if tendered, can be treated as mere surplusage, and plaintiffs were under no burden to prove them. Irrelevant allegations do not vitiate the good, and the redundant allegations need not be proved. Rawle v. Skipwith, 19 La. 207; Horrell et al. v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709; Loprestie v. Roy Motors, Inc. et al., 191 La. 239, 185 So. 11; Pizzitola v. Letellier Transfer Co., La.App., 167 So. 158; Bernard v. Gravois, La.App., 8 So.2d 318; New Orleans & N. E. R. Co. v. Redmann, La.App., 28 So.2d 303. | Irrelevant allegations do not vitiate good allegations, and redundant allegations need not be proved. | `Will irrelevant allegations vitiate the good allegations? | Pleading - Memo 548 - RMM.docx | LEGALEASE-00044928-LEGALEASE-00044929 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 18988 | Laurie v. Ezard, 595 S.W.2d 336 | 307A+581 | Defendants rely primarily on Shirrell v. Missouri Edison Company, supra. There plaintiff stated that the case was ready for trial more than two years before it was dismissed. Plaintiffs' attorney was actively trying other cases and there was no reason why the case was not tried. Whether a case is prosecuted diligently must be decided on a case by case basis.Hennis v. Tucker, 447 S.W.2d 580, 583 (Mo.App.1969).The circumstances in the present case indicate lack of diligence by plaintiffs or their attorneys. | Whether case is prosecuted diligently must be decided on case-by-case basis. | On what basis should it be decided whether a claim has been diligently prosecuted? | 039069.docx | LEGALEASE-00155082-LEGALEASE-00155083 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WNRS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18889 | Valencia v. State, 2004 WL 1614219 | 67+7 | Before addressing this evidentiary issue, we must first determine whether proof of a bilateral agreement was required... [long text] | State was not required to prove the existence of a bilateral agreement in bribery prosecution, where indictment alleged, in the disjunctive, that defendant offered or conferred a benefit. V.T.C.A., Penal Code § 36.02(a)(1). | Can benefit as consideration be an element of a bribery charge? | 01259.docx | LEGALEASE 00150600 LEGALEASE 00150601 | Condensed, SA | 0.89 | 0 | | 1 | 1 | |
| 18890 | Smith v. State Indus. Comm'n, 1918 OK 167 | 67+29 | The State has the burden of proving the allegation of ownership of the burgled building by a named individual... [long text] | State has burden of proving allegation in indictment of ownership of burgled property. | Does the state have the burden of proving ownership? | Burglary - Memo 274 PK_6237.docx | ROSS-003294998-ROSS-003294999 | Condensed, SA | 0.58 | | | | 1 | |
| 18891 | Randolph v. State, 117 Tex. Crim. 80 | 67+9(1) | The court instructed the jury that by the term "entry into a house" was meant every kind of entry... [long text] | There must be "actual breaking" by domestic servant to constitute burglary. | Does burglary by tenant require actual breaking? | 03366.docx | LEGALEASE 00156441 LEGALEASE 00156443 | Condensed, SA | 0.55 | | | | 1 | |
| 18892 | Bossov. Sneed, 11 Ark. 104 | 172h+762 | In Hopkins v. Page (2 Brec. 41), Chief Justice Marshall held "that the legal interest in a bill of exchange... [long text] | Generalized that of assignment of notes by Real Estate Bank to trustees vested in them the equitable interest in such notes, which they could enforce in chancery, and after the bank forfeited its charter, and they could no longer use its name as a nominal plaintiff in an action at law upon such notes, they could only collect them by bill in chancery. | Can the legal interest in a bill of exchange be transferred? | 02061.docx | LEGALEASE 00156617 LEGALEASE 00156618 | Condensed, SA | 0.64 | 1 | | 1 | 1 | |
| 18893 | Leary v. Johnson, 159 Conn. 101 | 308+1 | The factual question was also presented whether an agency relation existed between the plaintiff and the defendants in which the plaintiff was authorized to employ... [long text] | An essential ingredient of agency is that agent is doing something in the behalf and for the benefit of the principal. | What is an essential ingredient of agency? | Principal and Agent Memo 569-58_63935.docx | ROSS-003322212-ROSS-003322213 | Condensed, SA | 0.83 | | | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 18894 | Richmond City, Bus. Ass'n v. Richmond Cty., 234 Ga. 854 | 371v2902 | Tax is primarily intended to produce revenue whereas license is primarily intended for regulation under police power. | The distinction between a tax and a license is not one of names but of substance. A tax is primarily intended to produce revenue, while a license is primarily intended for regulation under the police power. Morton v. Mayor and Council of Macon, 111 Ga. 162, 164, 36 S.E. 627, 50 L.R.A. 485; Papin v. City of Atlanta, 132 Ga. 302, 303-306, 63 S.E. 657, 35 L.R.A., N.S., 716; Publix-Lucas Theatres, Inc. v. City of Brunswick, 206 Ga. 206, 212-213, 56 S.E.2d 256, 53 Am Jur 325, 326, Licenses, s. 21 33 C.J.S. Licenses s 13 at 472 | As opposed to tax, what is the primary purpose of license? | Taxation – Memo # 1003 - C_&_2647.docx | ROSS-003267324 ROSS-003183713 | Condensed, SA | 0.78 | 0 | 1 | | 1 | |
| 18895 | Marion Nat. Bank v. Harden, 83 W. Va. 119 | 83h481 | An assignment of "all right, title and interest in and to the within note" endorsed on the back of an instrument is an instrument, being a qualified endorsement, in so way affects the negotiability of the paper, and the endorsee acquiring such possession thereof is deemed prima facie a holder in due course. | … | Do words written on the back of an instrument constitute an endorsement? | 009057.docx | LEGALEASE-00157095 LEGALEASE-00157096 | Condensed, SA, Sub | 0.7 | | 1 | 1 | 1 | 1 |
| 18896 | Padilla v. Chamas, 183 So.3d 653 | 83h481 | When promissory notes are assigned, the assignees stand in the shoes of the original payee and obtain all the rights the original payee possessed under the notes. | … | Does an assignee stand in the shoes of the assignor? | 009079.docx | LEGALEASE-00157195 LEGALEASE-00157196 | Condensed, SA, Sub | 0.5 | | | | 1 | |
| 18897 | Bank of New York Mellon v. Reyes, 126 So.3d 304 | 266v711 | The promise to pay is core abstract agreement, and, if couched in proper terms, is negotiable, while the pledge of real estate to secure that promise, through a mortgage, is another abstract agreement, which ordinarily is not intended to affect in the least the promise to pay, but exists to give a remedy for failure to carry out the promise to pay. | … | Is a promissory note a mortgage? | 010926.docx | LEGALEASE-00157916 LEGALEASE-00157917 | Condensed, SA | 0.52 | | 0 | | 1 | |
| 18898 | Lawler v. ClimateGuard Design & Installation, 931 F. Supp. 2d 842 | 172h+1527 | Because TILA is a consumer-protection statute, it does not easily forgive technical errors. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | … | Does TILA easily forgive technical errors? | Consumer Credit - Memo 22 + MC_65158.docx | ROSS-002945438 ROSS-003264549 | SA, Sub | 0.91 | 1 | 0 | 1 | 1 | |
| 18899 | Reynolds v. Gorton, 90 Misc. 2d 28 | 156v5321 | Estoppel is an equitable doctrine which rests upon a word or deed of one party upon which another rightfully relies and so relying changes his position to his injury, and it does not originate any legal right by merely forbids the denial of an existing right under certain circumstances, nor can estoppel be invoked where grounds for its application are clearly and satisfactorily established. | … | Does estoppel originate a legal right? | 017836.docx | LEGALEASE-00156887 LEGALEASE-00156888 | Condensed, SA | 0.61 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 19000 | Shevdock v. Dir., Office of Workers' Comp. Programs, 893 F.2d 1458 | 158+1(5) | | Equitable tolling or estoppel is not available when there are jurisdictional limitations. | Is equitable tolling or estoppel is not available when there are jurisdictional limitations? | 017897.docx | USGA0438-00157748 / USGA0438-00157749 | Condensed, SA | 0.95 | 0 | 1 | | 1 | |
| 19001 | Lowery v. Lowery, 654 So. 2d 1218 | 30&H427 | | Dismissing suit against discharged personnel representative and his surety; raised by means of motion to dismiss. West's F.S.A. § 733.901(1); West's F.S.A. RCP Rule 1.140(b). | Will a motion to dismiss be granted on basis of affirmative defense that appear on face of pleading? | 021411.docx | USGA0438-00180804-USGA0438-00180805 | Condensed, SA | 0.46 | 0 | 1 | | 1 | |
| 19002 | Matter of Shulman Troop Enterprises, 33 B.R. 383 | 308+9 | | Talomes language does not determine an agency relationship; rather, courts must look to the substance of the relationship. | Can latomes/ language determine an agency relationship? | Principal and Agent Memo 444 RK_65544.docx | ROSS-003319909-ROSS-003319910 | Condensed, SA | 0.79 | 0 | 1 | | 1 | |
| 19003 | DeGraw v. State Sec. Ins. Co., 40 Ill. App. 3d 26 | 308+31(1) | | Term "agent" is broader in scope than closely related term "broker"; a broker neither maintains a permanent employment with, nor a fixed relationship with the public generally, whereby his status in each instance after obtaining employment is that of special agent for a single purpose. In comparison, an agent engages in a continuing relationship with a particular principal, to whom he owes his allegiance. | Is agent broker in scope than the broker? | Principal and Agent Memo 263 PK_63265.docx | ROSS-003310238-ROSS-003310239 | Condensed, SA | 0.55 | 0 | 1 | | 1 | |
| 19004 | Daly v. Aspen Ctr for Women's Health, 134 P.3d 450 | 231H+29 | | A servant and agent is an independent contractor who has the power to bind the principal in contract, such as an attorney or a broker. | Can a servant/agent bind the principal? | Principal and Agent Memo 479 PK_63266.docx | ROSS-002990911-ROSS-002990912 | Condensed, SA | 0.47 | 0 | 1 | | 1 | |
| 19005 | Vlado v. Domino's Pizza, 230 Or. App. 531 | 231H+23 | | All servants are agents and all masters are principals, however, all principals and agents are not also masters and servants. | Are all principals and agents also masters and servants? | Principal and Agent Memo 423 PK_63286.docx | ROSS-003197117-ROSS-003197118 | Condensed, SA | 0.9 | 0 | 1 | | 1 | |

3148

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19006 | People v. Byrd, 285 Ill. App. 3d 641 | 110v112 | The purpose of the intimidation statute is to prohibit the making of specified threats intended to compel a person to act against his person's will, and the grantor of the offense of intimidation is the exercise of improper influence, the making of a threat with the intent to coerce another. People v. Maldonado, 247 Ill.App.3d 149, 153, 187 Ill.Dec. 28, 617 N.E.2d 236 (1993), citing People v. Terrell, 132 Ill.App.3d 522, 525, 113 Ill.Dec. 897, 515 N.E.2d 1055 (1987). Implicit in the word "threat" as it is used in the intimidation statute is the requirement that the expression, in its context, has a reasonable tendency to create apprehension that its originator will act according to its tenor. People v. Maldonado, 247 Ill.App.3d at 153-54, 187 Ill.Dec. 28, 617 N.E.2d 236, quoting People v. Gallo, 54 Ill.2d 343, 352, 297 N.E.2d 569 (1973). Intimidation is a specific intent crime. People v. Hazelton, 153 Ill.App.3d 806, 809, 106 Ill.Dec. 662, 506 N.E.2d 545 (1987). Intent may be deduced by the trier of fact from the facts and circumstances surrounding the offense. People v. McKendrick, 138 Ill.App.3d 1018, 1026, 93 Ill.Dec. 462, 486 N.E.2d 1297 (1985). We believe the State has sustained its burden of establishing that defendant possessed the specific intent to intimidate Sergeant O'Callahan and Officer Ros. | Intent to commit crime may be deduced by trier of fact from facts and circumstances surrounding offense. | Is the crime of intimidation a specific intent crime? | 04d684.docx | LEGALEASE 00157706-LEGALEASE 00157707 | SA, Sub | 0.92 | 0 | | 1 | 1 | |
| 19007 | State v. Reynolds, 1998 Ohio-171 | 3.771v24 | "Personal contact" is defined in section 700.71(D) to mean "an encounter in which two or more people are in visual or physical proximity to each other." Id. 700.71(D). This statute specifically provides that "[p]ersonal contact" does not require physical touching or oral communication although it may include these types of activities." Id. This defendant claims the only "personal contact" that occurred here was in the convenience store and that contact does not constitute harassment because the victim testified this incident alone was not threatening to her. Reynolds argues the encounters that were alarming to Cottrell his contact are to his S.O.# did not constitute personal contact because Cottrell did not know who was following her. | "Personal contact," as used within harassment statute, merely requires visual or physical proximity; it does not require that the victim recognize the offender or know the identity of the person harassing her, nor does it require that the victim actually feel threatened, intimidated, or alarmed, only that the defendant act with the intent to cause such a reaction. I.C.A. § 708.7, subd. 1, par. b. | What does personal contact mean within the context of the harassment statute? | 04d802.docx | LEGALEASE 00157377-LEGALEASE 00157378 | SA, Sub | 0.46 | 0 | | 1 | 1 | |
| 19008 | McElroy Bank v. First Nat. Bank of Fayetteville, 252 Ark. 558 | 83.1v481 | First National next argues that if it did not have a secured interest it did have a valid equitable assignment of the note. Watson, upon transfer of the note back to the bank, had a valid one-year period and to judgment without the knowledge of First National. He therefore retained exclusive control of the note, which was pursuant to the contrary to which contention that it had an equitable assignment. Additionally, the UCC does not permit assignment of negotiable instruments. Under 85-97 (E) (2)-(3), the note may not be transferred or negotiated. | Uniform Commercial Code does not permit assignment of negotiable instruments; note must be transferred or negotiated. Ark.Stats. §§ 85-3-201 to 85-3-208. | Does a promissory note to be transferred or negotiated in order to assign it to another? | 003000.docx | LEGALEASE 00158228-LEGALEASE 00158229 | SA, Sub | 0.73 | 0 | | 1 | 1 | |
| 19009 | Thomas v. American Nat. Bank, 704 S.W.2d 543 | 289v92 | A partnership, once proved, presumptively continues until the contrary appears. Winsted's, R'part, 558 S.W.2d 543,556 (Tex.Civ.App."Corpus Christi 1977, writ ref'd n.r.e.). The determination is a question of fact whether the appellee Bank has established as a matter of law that, on May 21, 1982, when Southwestern Chevron borrowed $500,000.00 from American Bank, Thomas and McDonald had neither dissolved the partnership nor terminated their participation to an effective transfer of their interest to Gonzales. | Partnership, once proved, presumptively continues until contrary appears. | Does a partnership once proved continue until the contrary appears? | 023005.docx | LEGALEASE 00158559-LEGALEASE 00158559 | Condensed, SA | 0.86 | 0 | 1 | | 1 | |
| 19010 | Harr's, Thies, Grisham, Davis & Leigh, S.C.# 877 So.2d 1157 | 257v141 | Le. C.C. art 2801 et seq. on the general laws of partnership. A limited liability partnership is a general partnership. The partners are elected to take advantage of the limited liability partnership protections by registration pursuant to La.R.S. 9:3431 et seq. If a partnership fails to renew the registration, only the limited liability protection ends,while the partnership itself continues. Under the Uniform Partnership Act, the firm's other partners continued to operate La.R.S. 9:3431 et seq. | Law firm's action in registering for limited liability partnership (LLP) status did not create new partnership entity, which limited liability partners; registration simply gave limited benefits to the existing partnership under which partner acquired and the firm's other partners continued to operate. LSA-R.S. 9:3431 et seq. | Do partners in limited liability partnership enjoy limited liability protection? | 023012.docx | LEGALEASE 00158616-LEGALEASE 00158617 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | |
| 19011 | Beckwv Birmingham Realty Co., Bank, 348 So.pp. 41 | 289v509 | By virtue of Section 8 of Title 43 of the Alabama Code, 1940, governing limited partnerships it is provided that: "The general partners alone are authorized to transact business, sign for the partnership, and to bind the same." | Generally, one partner has no implied authority to bind partnership by subscribing for stock of corporation, even though existence of such corporation will incidentally benefit partnership. Code of Ala., Tit. 43, §§ 1,2(1) & 21, 22. | Are general partners alone authorized to transact business, sign for the partnership and bind the same? | 023731.docx | LEGALEASE 00158504-LEGALEASE 00158505 | SA, Sub | 0.19 | 0 | | 1 | 1 | |
| 19012 | Doe v. Diocese of Raleigh, 776 S.E.2d 29 | 115v57.61 | To properly plead a negligent infliction of emotional distress (NIED) claim, a plaintiff must allege that (1) the defendant engaged in negligent conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress...,and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Because NIED claims are premised upon negligent conduct by the defendants, a determination that the underlying negligence claim is subject to dismissal must result in the dismissal of the corresponding NIED claim as well. See Thomas v. Weddle, 167 N.C.App. 283, 290, 605 S.E.2d 244, 249 (2004) ("A claim for negligent infliction of emotional distress...depends upon evidence that the defendants acted negligently. Thus, this claim fails for the same reasons as plaintiff's other negligence claims." (internal citation omitted)). | "Because negligent infliction of emotional distress (NIED) claims are premised upon negligent conduct by defendants, a determination that an underlying negligence claim is subject to dismissal must result in dismissal of corresponding NIED claim as well." | | 023707.docx | LEGALEASE 00158342-LEGALEASE 00158333 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | |

3349

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19013 | Entergy Mississippi v. Richardson, 134 So. 3d 287 | 307A+697 | Richardson's motion to reinstate merely argued, in essence, that it would be inconvenient, expensive, and time-consuming to file a new complaint against Entergy and that Richardson "may very well be faced with a statute of limitations issue." The order granting the motion to reinstate in essence finds that all parties involved were "dilatory" and, therefore, the case should go forward. None of the above reasons argued or found constitute valid Rule 60(b) grounds for relief. There is no allegation of fraud or misconduct, accident or mistake, new evidence, or a void judgment. We find, and the parties appear to agree in briefing, that Rule 60(b)(6) is the only possible enumerated ground for relief that could apply to Richardson's motion to reinstate. But no additional "extraordinary" reasons for granting relief are presented. And while the potential running of the statute of limitations on the underlying claim demonstrates prejudice to the moving party, that in itself is insufficient grounds for granting reinstatement. | Even though plaintiff driver's motion to reinstate her negligence claim against owner of defendant driver's car was not barred by the statute of limitations, the trial court improperly granted the motion because no valid grounds for relief existed, in that the case was appropriately dismissed for failure to prosecute and no extraordinary circumstances were present to justify reinstatement; there was no allegation of fraud or misconduct, accident or mistake, new evidence, or a void judgment. Rules Civ.Proc., Rule 60(b). | "When a court is presented with a request to set aside a dismissal for want of prosecution as nonfinal judgment, is the overriding consideration whether substantial justice is being done between the litigants?" | 039717.docx | LEGALEASE-00159232-LEGALEASE-00159233 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 19014 | Circle Food Stores v. City of New Orleans, 620 So. 2d 281 | 371+3602 | Our finding is buttressed by the fact that Tobacco Tax II has the incidents of another form of sales or use tax, a consumption tax. A consumption tax is one "applying to commodities intended for consumption and the burden of which falls on the consumer." Reed, 593 So.2d at 371. Tobacco Tax II is a tax on tobacco consumption, being a tax on a finished product levied after the sale of the product to the consumer. Moreover, the policy statement in the Ordinance regarding the prophylactic nature of the tax-discouraging tobacco consumption-is indicative of a consumption tax. Studenski, Characteristics, Developments and Present Status of Consumption Taxes, 8 Law & Contemp.Probs. 417, 419 (1941) (noting that consumption taxes are often based on "the desire to curtail certain types of consumption deemed injurious to public health, morals, or welfare.") | "Consumption tax" is one applying to commodities intended for consumption and burden of which falls on consumer. | "What is ""consumption tax""?" | Taxation - Memo 1126 - C - SB_64715.docx | ROSS-003292105-ROSS-003292106 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 19015 | Keller v. City of Fremont, 719 F.3d 931 | 24+103 | Justice Kennedy's majority opinion began by reaffirming two powerful principles that govern these issues. First, the federal government "has broad, undoubted power over the subject of immigration and the status of aliens," authority that rests on the constitutional power to "establish an uniform Rule of Naturalization," Art. I, " 8, cl. 4, and on the national government's "inherent power as sovereign to control and conduct relations with foreign nations." Arizona, 132 S.Ct. at 2498. Second, by reason of the Supremacy Clause, Art. VI, cl. 2, Congress has virtually unfettered power to preempt state laws (i) "by enacting a statute containing an express preemption provision," or (ii) by determining that "conduct in a field ... must be regulated by its exclusive governance," preemption that may be inferred from the pervasiveness of a federal regulatory regime or from the dominance of the federal interest being regulated. Id. at 2500"2501. In addition, state laws are preempted when they conflict with federal law. Conflict preemption occurs when compliance with both federal and state laws is impossible, and when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 2501 (quotations omitted) | City ordinance's rental provisions, requiring prospective tenants to disclose their immigration status, requiring police department verification of that status, and imposing criminal penalties against landlords for harboring illegal alien in dwelling unit, were not facially preempted, as conflicting with federal removal system for illegal aliens or anti-harboring prohibition, since provisions required city officials to defer to federal government's determination of whether alien tenant was unlawfully present, did not remove any alien from United States or even from city, and did not purport to enforce federal anti-harboring prohibition, but only prohibited harboring conduct that was inconsistent with city's local public interests while expressly allowing conduct permitted by federal law. | Does the Government of the United States have the power to regulate the status of aliens? | 006947.docx | LEGALEASE-00160268-LEGALEASE-00160269 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 19016 | Arizona v. United States, 567 U.S. 387 | 24+103 | As a general rule, it is not a crime for a removable alien to remain present in the United States. See INS v. Lopez"Mendoza, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent. When an alien is suspected of being removable, a federal official issues an administrative document called a "Notice to Appear." See 8 U.S.C. " 1229(a); 8 CFR " 239.1(a). The form does not authorize an arrest. Instead, it gives the alien information about the proceedings, including the time and date of the removal hearing. See 8 U.S.C. " 1229(a)(1). If an alien fails to appear, an in absentia order may direct removal. " 1229a(b)(5)(A). | Arizona statute authorizing officers to arrest without a warrant a person "the officer has probable cause to believe . has committed any public offense that makes the person removable from the United States" was preempted as obstacle to removal system that Congress created; federal law specified limited circumstances in which state officers could perform functions of immigration officer, while Arizona statute attempted to provide state officers even greater authority to arrest aliens on basis of possible removability than Congress had given to trained federal immigration officers, and federal statute permitting state officers to "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" could not authorize unilateral decision of state officers to arrest alien for being removable absent any request, approval, or other instruction from Federal Government. U.S.C.A. Const. Art. 6, cl. 2; 8 U.S.C.A. SS 1226(a), 1357(g)(10)(B); A.R.S. S 13-3883(A)(5). | Is it a crime for a removable alien to remain present in the United States? | 006957.docx | LEGALEASE-00160250-LEGALEASE-00160251 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 19017 | COLON V.MAJORPERRYSTREETCORP, 987 F.Supp.2d 451 | 231H+2233 | FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA. Congress enacted the IRCA to reduce illegal immigration by eliminating employers' economic incentive to hire undocumented aliens.... The FLSA's coverage of undocumented workers ... offsets what is perhaps the most attractive feature of such workers"their willingness to work for less than the minimum wage. If the FLSA did not cover undocumented aliens, employers would have an incentive to hire them. Employers might find it economically advantageous to hire and underpay undocumented workers and run the risk of sanctions under the IRCA. | Undocumented workers continue to be eligible to recover unpaid minimum wages and overtime wages under the FLSA; legislative history of both FLSA and Immigration Reform Control Act (IRCA) support plain reading that FLSA encompasses undocumented workers, as does interpretation of Department of Labor (DOL), the agency charged with interpreting and implementing FLSA. Immigration Reform and Control Act of 1986, S 101(a)(1), 8 U.S.C.A. S 1324a; Fair Labor Standards Act of 1938, SS 3(e)(1), 6(a), 7(a), 16(b), 29 U.S.C.A. SS 203(e)(1), 206(a), 207(a), 216(b). | Does denying undocumented workers the protection of the Fair Labor Standards Act (FLSA) permit abusive exploitation of workers? | 006972.docx | LEGALEASE-00160266-LEGALEASE-00160267 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19018 | John Hancock Mut. Life Ins. Co. v. Yel. Baltimore Nat. Bank & Tr. Co., 212 Md. 506 | 8:30(1)-10 | Some of these are: (1) That the law relating to what law governs contract is separate and applicable, so far as general principles are concerned; (2) that there is considerable conflict in the decisions relating thereto; (3) that general statements in the decisions should be controlled by the specific statements of law in regard thereto; (4) that an ordinary negotiable instrument often includes many contracts, each several signatures a maker, drawer, acceptor, guarantor, surety or indorser— being a separate contract; (5) and that each separate contract may bring into questions a different place and law, since each contract involves a place of contract and a place of payment which may be governed by different laws. In like manner, one law may determine the validity of a contract, while other laws regulate its form or construction or the steps to be taken for its maintenance or enforcement. 10 C.J.S., Bills and Notes, *4; 11 Am.Jur., Bills and Notes, § ... [continued] | Generally, law governing a bill or note is the law which the parties to the instrument intend to govern, and, therefore, if bill or note contains express provision that it shall be governed by laws of a particular state, such laws will govern. | Which is the law that governs a bill? | 000269.docx | LEGALKSE-00100364 LEGALKSE-00100365 | Condensed, SA | 0.8 | 0 | 1 | | 1 | |
| 19019 | John Hancock Mut. Life Ins. Co. v. Yel. Baltimore Nat. Bank & Tr. Co., 212 Md. 506 | 8:30(1)-10 | Some of these are: (1) That the law relating to what law governs contract is separate and applicable, so far as general principles are concerned; (2) that there is considerable conflict in the decisions relating thereto; (3) that general statements in the decisions should be controlled by the specific statements of law in regard thereto; (4) that an ordinary negotiable instrument often includes many contracts, each several signatures a maker, drawer, acceptor, guarantor, surety or indorser— being a separate contract; (5) and that each separate contract may bring into questions a different place and law, since each contract involves a place of contract and a place of payment which may be governed by different laws. In like manner, one law may determine the validity of a contract, while other laws regulate its form or construction or the steps to be taken for its maintenance or enforcement. 10 C.J.S., Bills and Notes, *4; ... [continued] | Generally, law governing a bill or note is the law which the parties to the instrument intend to govern, and, therefore, if bill or note contains express provision that it shall be governed by laws of a particular state, such laws will govern. | What law governs a note? | Bills and Notes - Memo 1594 - 04_64405.docx | R0525-00104122-R0525-00104123 | Condensed, SA | 0.8 | 0 | 1 | | 1 | |
| 19020 | United States v. Naganey, 831x358 | 831x358 | Under Kansas law, provision of note ascertaining due date of note at option of holder upon default in payment of any installment did not render note uncertain in time and make it nonnegotiable instrument, since the option was not a "contingency" rather Kansas law providing that an instrument payable on a contingency is not negotiable. Gen.St.Kan.Supp.1935, 52-104. | An instrument to be negotiable, should it be payable on demand at a determinable future time? | Bills and Notes-Memo 51-AM_64601.docx | R0525-00319928 R0525-00311923 | Condensed, SA, Sub 0.9 | 0.9 | 0 | 1 | 1 | 1 | |
| 19021 | Dickey v. State, 552 S.W.2d 467 | 23H-124 | An essential element of Section 42.08, supra, is that the individual must be intoxicated to the extent that he may endanger himself or another. In Boatright v. State, ... | An essential element of the offense of public intoxication is that the accused be intoxicated to the extent that he may endanger himself or another. V.T.C.A., Penal Code § 42.08. | When does a person commit the offense of public intoxication? | 014295.docx | LEGALKSE-00160016- LEGALKSE-00160037 | SA, Sub | 0.62 | 0 | | 1 | 1 | |
| 19022 | Givens v. Whipple, 193 Miss. 287 | 141H-1023 | The Act of February 28, 1944, by which the University of Mississippi was created designated certain institutions as state universities, ... | The University of Mississippi, the Mississippi State College and the Mississippi State College for Women are public institutions and their property is owned by the state. Act Feb. 28, 1944; Act Feb. 26, 1878, Laws 1884, c. 30; Laws 1932, c. 127. | Is university property owned by the state? | 017316.docx | LEGALKSE-00105935- LEGALKSE-00105937 | Condensed, SA, Sub 0.82 | 0.82 | 0 | 1 | 1 | 1 | |
| 19023 | N. Petrochemical Co. v. U., 1564-5(27) S. Fire Ins. Co., 277 S.W.2d 808 | 1564-5(27) | 2. Defendant argues, nevertheless, that even if it was estopped from asserting the statute of limitations, Northern Petro is guilty of laches in bringing its claim. ... | Estoppel does not continue indefinitely if circumstances which justified estoppel cease to be operational. At that time plaintiff must proceed with due diligence to assert its claim against defendant. See, e.g., Jeff Clark Boats, Inc. v. Gray Olympia, Inc., 79 Wash.2d 26, 483 P.2d 544 (1968). | Does estoppel continue indefinitely? | 017910.docx | LEGALKSE-00160028- LEGALKSE-00160029 | Condensed, SA | 0.76 | | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19024 | Com. v. Mallory, 596 Pa. 172 | 156+52.10(1) | A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional "right." Citizens can waive their fundamental rights in the absence of a colloquy; indeed, waivers can occur by conduct or by implication, as in the case of a criminal trial conducted in absentia after the defendant fails to appear. See *190 Commonwealth v. Wilson, 551 Pa. 593, 712 A.2d 735, 737 (1998). Moreover, the absence of an on-the-record colloquy concerning the fundamentals of a trial by jury does not prove, in an absolute sense, that a defendant failed to understand the right he waived by proceeding non-jury. Consider, for example, a criminally-accused lawyer who waives a jury. Or, consider a career criminal defendant with previous, first-hand experience with jury trials. Or, imagine a reasonably intelligent client whose lawyer informed him, off the record, of the three basics of a jury trial. The record colloquy contemplated by Pa.R.Crim.P. 620 serves a salutary prophylactic purpose, as it makes it plain that a jury waiver is knowing and voluntary, and it creates a record in the event of a later, collateral attack upon the waiver. For the same twin reasons, an on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise, e.g., waiver of a trial, waiver of the right to counsel, waiver of the right to call witnesses, waiver of the right to cross-examine witnesses, waiver of rules-based speedy trial time limits, etc. But the colloquy does not share the same status as the right itself. | A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional right. | Is waiver colloquy a procedural device? | Estoppel - Memo #220 - C - CSS_64618.docx | ROSS-003281116-ROSS-003281117 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19025 | California Serv. Station etc. Assn. v. Union Oil Co., 232 Cal. App. 3d 44 | 29T+270(5) | However, the PMPA strikes a balance between the interests of franchisees in being free from arbitrary and discriminatory terminations, and the franchisors' need to terminate franchises under appropriate circumstances and respond to changing market conditions. (May"Som Gulf, Inc. v. Chevron U.S.A., Inc., supra, 869 F.2d at p. 921; Freeman v. BP Oil, Inc., Gulf Products Div. (11th Cir.1988) 855 F.2d 801, 803.) Under the PMPA there are two types of franchises: the regular franchise described in 15 United States Code section 2801(1), and the trial franchise described in 15 United States Code section 2803(b)(1). In essence, a trial franchise is any franchise wherein the franchisee has not had a prior franchise relationship with the franchisor, and the initial term of which is for a period of not more than one year. (15 U.S.C. " 2803(b)(1)(C).) The good cause requirement for nonrenewal or termination of a regular franchise is not required for terminating a trial franchise. (15 U.S.C. "" 2802, 2803(a)(1); Freeman v. BP Oil, Inc., Gulf Products Div., supra, at p. 802; Esquivel v. Exxon Co., U.S.A. (W.D.Tex.1988) 700 F.Supp. 890, 891.) The only requirement forterminating a trial franchise is that proper notice must be given at the conclusion of the initial term. (15 U.S.C. " 2803(b)(1)(D).) | Retail petroleum products franchisor's policy of permitting "regular franchisees," who had automatic right of renewal and protection from arbitrary termination, from assigning their rights to successor transferee and allowing any such successors to have only a "trial franchise" terminable after one year without cause, violated statute precluding franchisor from withholding consent to assignment of franchise. West's Ann.Cal.Bus. & Prof.Code S 21148(a). | Can a franchise with no prior franchise relationship with franchisor and who now has an initial term of not more than one year be referred as a trial franchise? | Franchises - Memo 14 - KNR_65686.docx | ROSS-003279389-ROSS-003279390 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 19026 | Valentine v. Mobil Oil Corp., 789 F.2d 1388 | 29T+270(5) | The PMPA plainly contemplates that franchisors will have substantial flexibility in changing the terms of a franchise upon renewal. Baldauf, 553 F.Supp. at 415; see Veracka v. Shell Oil Co., 655 F.2d 445, 448 (1st Cir.1981), cited with approval in Humboldt, 695 F.2d at 388. Thus, section 2801 defines two separate concepts: the "franchise," consisting of a specific contract between a franchisor and a franchisee, 15 U.S.C. " 2801(1); and the "franchise relationship," consisting of the mutual obligations and responsibilities between the parties arising from the marketing of motor fuel under a franchise. Id. " 2801(2).5 Under the PMPA, the franchisor has (absent specific cause) an obligation to renew only the franchise relationship, not the particular franchise.6 Indeed, section 2802(b)(3)(A) contemplates the possibility of material changes in the terms of the franchise, allowing the franchisor to end the relationship if agreement cannot be reached with respect to such changes. | Petroleum Marketing Practices Act did not entitle franchisee to buy the gas station after the franchisor proposed to materially alter the premises; thus, franchisor was not precluded from ending the franchise relationship in response to the franchisee's refusal to authorize such changes. Petroleum Marketing Practices Act, S 102(b)(3)(D), 15 U.S.C.A. S 2802(b)(3)(D). | Does the mutual obligations and responsibilities between franchisor and franchise be referred as franchise relationship? | Franchises - Memo 15 - KNR_65687.docx | ROSS-003278994-ROSS-003278995 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 19027 | Irvine Toll Bridge Co. v. Estill Cty., 210 Ky. 170 | 92+2437 | At the beginning of the discussion it might be well to keep in mind some fundamental principles affecting the subject-matters involved, among which are that a franchise "is the privilege of doing that "which does not belong to the citizens of the country generally by common right" "; that no one inherently possesses the right to grant a franchise, except the sovereignty within which it is proposed to be exercised, but that it is competent for such sovereignty to delegate the right to grant the franchise to some or all of its municipalities as political subdivisions of the government, or perhaps it may vest such power in such agencies of government as it sees proper, and: Lastly, that the right to maintain and operate a toll bridge, especially across a navigable stream, can be done only in the exercise of a franchise legally created. We will consume neither time nor space in citing authorities in support of those general observations, since they are so firmly settled as to require none. It is equally well settled that the means by which a state may delegate its authority to grant franchises may be by a general statute (where private statutes are forbidden), or by a constitutional provision, and a number of states of the Union have such provisions. With these preliminary statements, we will now proceed to a consideration of the condition of our laws upon the subject. | Sovereignty may delegate right to grant franchise to municipalities. | Do municipalities have the right to grant franchises? | 018580.docx | LEGALEASE-00159563-LEGALEASE-00159564 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19028 | McRoberts v. Washburne, 127n15 10 Minn. 23 | 127n15 | No question is made upon the right of a state in the exercise of its police powers, to grant the franchise of a ferry upon the Mississippi river... (long opinion text) | The right to operate a public ferry which is charged with a franchise within the control of the legislature and, where the legislature has granted to an individual the exclusive right of running a ferry within certain limits, the fact that a third party owns lands within those limits does not justify him in establishing a rival ferry thereon. | Is the right to operate a ferry a franchise? | 03583.docx | LEGALEASE 00159589-LEGALEASE 00159590 | Condensed, SA, Sub 0.71 | 0.71 | 0 | 1 | | 1 | 1 |
| 19029 | State Farm Mut. Auto. Ins. Co. v. Dir. Pag. Cty., (11 Aug 2011) 00698 | 217n1517 | In this case, the County is a self-insured municipality. The holdings of Indiginate, Aetna, and similar insurers... (long opinion text) | County that was a self-insured municipality was not an "insurance company" and did not provide "insurance coverage," and thus insurer for deceased county employee, which paid $400,000 to settle an injured motorist's claims against employee's estate arising out of an automobile accident that occurred while the employee was driving a county-owned vehicle, could not establish that county was a carrier primarily liable for the loss, so as to support its claim for equitable subrogation against third party. | Is a self-insured municipality an insurance company? | 03566.docx | LEGALEASE 00159473-LEGALEASE 00159474 | Condensed, SA, Sub 0.04 | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 19030 | Household Fin. Corp. liv. King, 2010 WL 9008870 | 217n2373 | The Kings contend that the Arbitration Rider is invalid because KRS 417.050(2) prohibits arbitration clauses in insurance contracts... (long opinion text) | For purposes of provision of Kentucky Uniform Arbitration Act (KUAA) prohibiting arbitration clauses in insurance contracts, mortgage loan agreement that required borrowers to maintain property insurance in amounts sufficient to protect lender's security interest in home was not an "insurance contract." Agreement's section requiring property insurance did not transform the agreement itself into an agreement for insurance, or mean that it provided insurance coverage. | Are insurance contracts subject to arbitration? | 03612.docx | LEGALEASE 00159829-LEGALEASE 00159830 | Condensed, SA, Sub 0.03 | 0.03 | 0 | 1 | | | 1 |
| 19031 | Ridgers v. RAB Investments, Inc., 814 S.W.2d 543 | 289n544 | The purported transfer was ineffective. See Palcsynski v. Kocza, 354 Pa. 346, 347, 47 A.2d 144, 149 (1946) (per curiam); Kellnor v. Simon, 401 So.2d 616, 617 (Fla.Dist.Ct.App.1981); Chalakee v. Vandeventer, Comm'n v. 174 A.2d 707, 709 (Del.Super.Ct.1971)... (long opinion text) | As long as partnership continues, partners have fiduciary relationship. | Do partners have a fiduciary relationship till the partnership continues? | 02206.docx | LEGALEASE 00160132-LEGALEASE 00160133 | Condensed, SA | 0.93 | 0 | 1 | | | |
| 19032 | Amalgamated Bank v. Yahoo! Inc., 132 A.3d 752 | 82n18.5 | In this case, the Incorporation Condition protects the legitimate interests of both Yahoo and the company by ensuring that when a plaintiff files suit... (long opinion text) | A plaintiff generally is master of its complaint and can choose what it wants to plead. | Is a plaintiff generally the master of its complaint? | 02885.docx | LEGALEASE 00159919-LEGALEASE 00159920 | Condensed, SA | 0.93 | 0 | 0 | 1 | | |

Appendix D

3333

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19033 | Matthews v. TRC Corp., 190 Conn. 700 | 302+370 | Principle that a plaintiff may only open what he has alleged is basic. | We are not persuaded that such is possible in a reasonably probable fashion. Schlumberg, 164 Conn. 313, 315, 321 A.2d 277 (1973); Antonofsky v. Goldberg, 144 Conn. 594, 136 A.2d 338 (1957)... | Can a plaintiff rely only upon what he has alleged? | 023857.docx | LEGALEASE 00159046-LEGALEASE 00159047 | Condensed, SA | 0.95 | | 1 | 1 | 1 | |
| 19034 | A.Y.F. Enterprises v. Crescent Park, 248 Ill. App. 3d 995 | 307+449 | Conclusions of law or conclusions of fact unsupported by allegations of fact... | The primary purpose of a section 2-619 motion to dismiss is to provide a means to dispose of issues of law or easily proved issues of fact. However, if it cannot be determined with reasonable certainty that the alleged defense exists, the motion should be denied. (Codetermen, 149 Ill.App.3d at 703, 103 Ill.Dec. 135, 501 N.E.2d 156.) | Will it be the purpose of statutory motion to dismiss to provide means to dispose of issues of law or early prove issues of fact? | 037068.docx | LEGALEASE 00159303-LEGALEASE 00159304 | SA, Sub | 0.14 | | 0 | | 1 | |
| 19035 | S. California Edison v. State Bd. of Equalization, 198 P.3d 896 | 371+1603 | Sales and use taxes are complementary, yet mutually exclusive. | Nevada's use and sales tax statutory scheme is structured as follows: Under Nevada law, sales and use taxes are complementary, yet mutually exclusive. Sales tax applies to the sale of tangible personal property within the state; NRS 372.105... | Are sales and use taxes complementary? | 044220.docx | LEGALEASE 00159323-LEGALEASE 00159324 | Condensed, SA | 0.87 | | 1 | 0 | 1 | |
| 19036 | Inherent's v. Jefferson Cty., 741 So. 2d 1126 | 371+1603 | Tax imposed on storage, consumption, or use, within county, of goods purchased from business not engaged in selling goods within county was "use tax," not "sales tax." Code 1975, §§ 40-23-1(a)(5), 40-23-2, 40-23-61(a). | "In the broadest of sense and use tax statutes, it was the underlying purpose and intent of the legislature to impose a tax upon the 'ultimate consumer' of the goods purchased, with the tax being based upon the amount of the gross receipts of the retailer or the purchase... | Do the sales tax statutes apply to retail sales or purchases taking place within the state? | 044221.docx | LEGALEASE 00159825-LEGALEASE 00159826 | SA, Sub | 0.14 | | 0 | | 1 | |
| 19037 | Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue, 301 N.W.2d 760 | 371+1602 | "Sales tax" is a tax on the freedom of purchase, whereas a "use tax" is "a 'tax on the enjoyment of what was purchased." | In addition, the explanatory note attached to the amendment creating the processing exemption supports the conclusion that the repair of used automobiles held for resale is not exempt... | Is a "sales tax" a tax on freedom of purchase? | 044269.docx | LEGALEASE 00159907-LEGALEASE 00159908 | Condensed, SA | 0.87 | | 1 | 0 | 1 | |
| 19038 | Pfaffly Bent-A-Car Sys. v. Dep't of Revenue, 883 P.2d 432 | 371+1602 | An excise tax is a tax imposed on a particular act, event, or occurrence. Blasen v. City of Cherry Hills, 930 P.2d 1011, 1013; An excise tax is an act or event. | An excise tax is a tax imposed on a particular act, event, or occurrence. Blasen v. City of Cherry Hills, supra. The object of an excise tax is to provide revenue for the general expenses of government. | What is the object of an excise tax? | Taxation - Memo 1129 - C +5_64972.docx | ROSS-000278274 | SA, Sub 0.6 | 0.6 | | | 0 | 1 | 1 |
| 19039 | Gen. Tel. Co. of the Se. v. Trimm, 706 F.2d 1117 | 95+145 | Under the contractual approach, a court looks to the law of the state where the contract was made to ascertain whether the agreement's valid or enforceable... | The Georgia Supreme Court in Pink emphasized that "a contract of insurance is made, not where the policy was executed, but where it was in fact received." Pink, 174 S.E.2d at 112-114 (1917)... | What law controls a bill? | 010039.docx | LEGALEASE 00161713-LEGALEASE 00161714 | Condensed, SA, Sub 0.76 | 0.76 | | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19040 | Libra Bank Ltd. v. Banco Nacional De Costa Rica, S.A., 570 F. Supp. 870 | 221+357 | The costs and fees provision in the notes is to be construed according to New York law, both because that was the state in which the notes were made, delivered, and honored in part, see, e.g., Security Mortgage Co. v. Powers, 278 U.S. 149, 153"54, 49 S.Ct. 84, 85"86, 73 L.Ed. 236 (1928); In Re United Merchants and Manufacturers, Inc., 674 F.2d 134, 137 (2d Cir.1982); Jackson v. Oppenheim, 533 F.2d 826, 831 (2d Cir.1976), and because the loan agreement contains a choice of law provision naming New York law as governing. See Corporacion Venezolana de Fomento v. Vintero Sales, 629 F.2d 786, 793 (2d Cir.1980) (where loan agreement contained clause choosing New York law as governing, that choice of law was valid and binding upon loan agreement), cert. denied, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). | At time of enactment of currency decrees by the Costa Rican government authorizing only repayment of external debts to multilateral international agencies, situs of debt owed by banking corporation which was wholly owned by the Costa Rican government was in the United States where bank had consented to jurisdiction in New York federal district court, had consented to have loan agreement construed under New York law, payments were due at New York bank and at time currency decrees were entered borrower had $2.5 million in various New York City bank accounts and, hence, act of state doctrine was inapplicable and district court, in action to recover loan balance, was not precluded from inquiring into validity of the currency decrees. | Is a choice of law clause in a loan agreement valid? | Bills and Notes -Memo 1389- JK_66289.docx | ROSS-003323756-ROSS-003323757 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 19041 | United States v. Williams, 216 F.3d 1099 | 63+16 | That inference is without an evidentiary basis. For one thing, the record shows that not all of the inspectors at the inspection station were involved in the conspiracy. It is possible that Williams and Depp waited some time before opting to join in. The district court's conclusion was thus improper in the absence of particularized findings demonstrating that Williams and Depp joined the conspiracy soon after their employment began. See United States v. Childress, 58 F.3d 693, 722 (D.C.Cir.1995) (requiring that sentencing court make individualized findings on whether actions were reasonably foreseeable to defendant); United States v. O'Campo, 973 F.2d 1015, 1022"26 (1st Cir.1992) (finding that cocaine sales by coconspirators before defendant joined conspiracy were not "relevant conduct" for sentencing). | There was no evidentiary basis for district court's inference, in holding motor vehicle inspectors responsible for bribes taken by other inspectors for purposes of sentencing defendants for bribery, that defendants began participating in bribery scheme as soon as they began working at inspection station; it was possible that defendants waited some time before opting to join in. 18 U.S.C.A. S 201(b)(2); U.S.S.G. SS 1B1.3, 2C1.1, 18 U.S.C.A. | Are actions taken by co-conspirators before the defendant joined the conspiracy relevant conduct for sentencing? | 012516.docx | LEGALEASE-00161460-LEGALEASE-00161461 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 19042 | United States v. King, 351 F.3d 859 | 110+1152.21(1) | The district court did not abuse its discretion by giving the deliberate ignorance instruction. The only "error" we find, if any, is that the deliberate ignorance instruction was superfluous in this case, which is certainly not reversible error.Given the evidence presented by the government against King, this instruction was irrelevant at worst. Although the evidence certainly suggested that King was not ignorant of the criminal scheme, but rather he, in fact, knew of the scheme and worked to perpetuate the bribe, King's defense was to attack the credibility of his co-conspirators and point to the lack of proof of his bad intent, arguing that he did not "corruptly" do anything. | The Court of Appeals reviews the district court's decision to give a jury instruction under the abuse of discretion standard. | Is there a abuse of discretion or error by court for giving deliberate ignorance instruction? | Bribery - Memo 1079 - C - AV.docx | LEGALEASE-00050356-LEGALEASE-00050357 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 19043 | Bd. of Ed. of Baltimore Cty. v. Wheat, 174 Md. 314 | 361+1624(16) | Possible difficulties in distinguishing supply of other school facilities, and the ease of evasion of the constitutional prohibition by the mere form of appropriating money, to children rather than to private institutions, have been remarked. See A. A. Bruce, in 25 Illinois Law Rev. 547. There have been decisions in conflict, especially in cases of facilities supplied to religious institutions. State ex rel. Traub v. Brown, 6 W.W. Harr. 181, 36 Del. 181, 172 A. 835; State v. Milquet, 180 Wis. 109, 192 N.W. 392; Smith v. Donahue, 202 App.Div. 656, 195 N.Y.S. 715; Otken v. Lamkin, 56 Miss. 758. In two cases in courts of inferior jurisdiction: Lewis v. Board of Education, 275 N.Y. 480, 11 N.E.2d 307, appeal dismissed Id., 275 N.Y. 544, 11 N.E.2d 743, and Judd v. Board of Education, 165 Misc. 889, 300 N.Y.S. 1037, transportation of private school children at public expense has been found valid. | The statute providing that children attending Baltimore county schools not receiving state aid should be entitled to transportation on school busses on the same terms as public school children, referred to in title as an act to add two new sections to Code directing board of education to provide certain transportation for children attending certain schools in Baltimore county and directing county commissioners to appropriate certain funds, is not unconstitutional as violating requirement that subject should be described in title. Acts 1937, c. 185; Const. art. 3, S 29. | Is it valid to transport private school children at public expense? | 016725.docx | LEGALEASE-00161549-LEGALEASE-00161550 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 19044 | In re St. Thomas High Sch., 495 S.W.3d 500 | 212+1319 | Courts within Texas have applied the ecclesiastical abstention doctrine to dismiss suits against religious schools or officials with authority over religious schools. See In re Vida, 2015 WL 82717, (dismissing negligence suit against superintendent of the Diocese of Laredo Catholic Schools arising from denial of student's admission to a Catholic school); Becker v. Clardy, No. 03"10"00376"CV, 2011 WL 6756999, (Tex.App."Austin Dec. 22, 2011, pet. denied) (mem.op.) (dismissing defamation suit by a former teacher against Catholic school); Patterson v. Sw. Baptist Theological Seminary, 858 S.W.2d 602, 605"06 (Tex.App."Fort Worth 1993, no writ) (dismissing wrongful termination suit against Baptist seminary that was not owned or operated by a church); Klouda v. Sw. Baptist Theological Seminary, 543 F.Supp.2d 594, 611 (N.D.Tex.2008) (same). | Ecclesiastical abstention doctrine applied to breach of contract claim against Catholic high school brought by a student and his parents in connection with student's expulsion from school, and thus trial court lacked subject matter jurisdiction over claim, where parents and student sought specific performance and immediate injunctive relief compelling the school to allow student to attend classes and expressly relied on the Catholic nature of the school's education to justify their demands, school expelled student after determining that his parents violated the school's student-parent handbook by falsely accusing a teacher of sexual harassment, and injunction, which directed school to treat student in the same manner as any other student attending the school, implicated all aspects of the school's mission and operations. U.S.C.A. Const. Amends. 1, 14. | Can the ecclesiastical abstention doctrine be applied to dismiss suits against religious school? | Education - Memo 341 - C - KS_65189.docx | ROSS-003293825-ROSS-003293826 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 19045 | Packer v. Bd. of Educ. of Town of Thomaston, 246 Conn. 89 | 1.41E+03 | State Constitution places the ultimate responsibility for the education of the children of the state on the state. C.G.S.A. Const. Art. 8, " 1. The constitution of Connecticut, article eighth, " 1, provides that "[t]here shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." This mandate of the state constitution places the ultimate responsibility for the education of the children of Connecticut on the state. New Haven v. State Board of Education, 228 Conn. 699, 702"703, 638 A.2d 589 (1994); Murphy v. Berlin Board of Education, 167 Conn. 368, 372, 355 A.2d 265 (1974); West Hartford Education Assn., Inc. v. DeCourcy, 162 Conn. 566, 573, 295 A.2d 526 (1972). General Statutes " 10"220. | State Constitution places the ultimate responsibility for the education of the children of the state on the state. C.G.S.A. Const. Art. 8, S 1. | Do states have a responsibility to educate its children? | 017250.docx | LEGALEASE-00161128-LEGALEASE-00161129 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 19046 | Winschel v. St. Louis Cty., 352 S.W.2d 652 | 119+53 | In Duenke v. St. Louis County, 358 Mo. 91, 213 S.W.2d 492, 495 [1, 2], the court construed the last sentence quoted above. In the Duenke case, just as in the present case, roads had been marked on a recorded plat of a subdivision of a tract of land outside the limits of a town or city. The court there said that by virtue of the recorded plat the county acquired title to the land within the designated boundaries of the public road for use as such. And in the earlier case of Hayes v. Kansas City, 294 Mo. 655, 242 S.W. 411, the court, in discussing the meaning of the same statutory provision as above noted, there Section 6573 RSMo 1879, said at page 414 of 242 S.W.: "In other words, the statute cited undertook to vest title to the streets in the county when there was no municipal entity to accept." | County was vested with title, in trust for use as public street, as to land, in unincorporated area, dedicated by filing of plat. Sections 445.010 to 445.120, 445.070 RSMo 1959, V.A.M.S. | Does a County acquire title to the land within designated boundaries of a public road by virtue of the recorded plat? | Highways - Memo 435 - RK_66336.docx | ROSS-003310350-ROSS-003310351 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19047 | Ziegler v. Ohio Water Serv. Co., 14 Ohio App. 2d 1 | 200+80 | Were we to stop at this point we would have to find for the appellant. However, in the case of Hofius v. Carnegie-Illinois Steel Corp., 146 Ohio St. 574, 67 N.E.2d 429, the Supreme Court specifically overruled the foregoing paragraph of the syllabus from the Graham and Smith cases, and thereby rejected the rule of law therein set forth as well as the arguments upon which it was based. Judge Turner concludes on page 582, 67 N.E.2d on page 432 in his opinion in the Hofius case:"We are, therefore, of the opinion that the law as declared in paragraph one of the syllabus of the case of Ohio Bell Telephone Co. v. Watson Co., supra (112 Ohio St. 385, 147 N.E. 907), and prior Ohio cases should be affirmed, to wit: "In this state the fee to the country highway is in the abutting owner, and the public has only the right of improvement thereof and uninterrupted travel thereover."" | Where fee of land located outside municipality is owned to center line of public highway, public has only right of improvement of right-of-way thereof for public highway purposes and right of uninterrupted travel thereover. R.C. SS 6103.01 et seq., 6103.25, 6117.01 et seq., 6117.39, 6117.47. | Does the fee to the country highway lie with the abutting owner? | 018882.docx | LEGALEASE-00161813-LEGALEASE-00161814 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 19048 | Am. Nurses Ass'n v. Passaic Gen. Hosp., 184 N.J. Super. 170 | 217+1001 | The question of whether or not an undertaking is insurance turns on its primary object and purpose. N.J. Assoc. Ins. Agents v. Hosp. Serv. Plan, 128 N.J.Super. 472, 479, 320 A.2d 504 (App.Div.1974), rev'd on other grounds 68 N.J. 213, 343 A.2d 739 (1975). If its purpose is "indemnity," as opposed to providing a service, then the undertaking is in the nature of insurance. Id.; California Physicians' Service v. Garrison, 28 Cal.2d 790, 172 P.2d 4, 16 (Sup.Ct.1946). | Question of whether or not undertaking is insurance turns on its primary object and purpose; if its purpose is "indemnity" as opposed to providing service, then undertaking is in nature of insurance. | How to determine if an undertaking is in the nature of insurance? | Insurance - Memo 111 - SNJ_65767.docx | ROSS-003293068-ROSS-003293069 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 19049 | Snow v. Jim Rathman Chevrolet, 39 So. 3d 368 | 217+1002 | A surety is considered by the courts to fit within the definition of insurer and to be subject to the same regulations as insurers in the Florida Insurance Code. Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins., 945 So.2d 1216, 1224 (Fla.2006) (quoting section 624.03, Florida Statutes, which defines an insurer as "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity") (emphasis omitted); Nichols v. Preferred Nat'l Ins. Co., 704 So.2d 1371, 1372 (Fla.1997). In Nichols, for example, the court held that section 627.428 allows awards of attorney's fees against sureties that issue guardianship bonds. The question presented here is whether section 627.428 allows attorney's fees against a surety that issues motor vehicle dealer bonds. | A surety is considered by the courts to fit within the definition of an insurer and to be subject to the same regulations as insurers. West's F.S.A. S 624.03. | Is a surety an insurer? | Insurance - Memo 119 - SNJ_65776.docx | ROSS-003282980-ROSS-003282981 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 19050 | Argentinis v. Fortuna, 134 Conn. App. 538 | 302+370 | An award of damages is controlled by the allegations of the complaint. "The interpretation of pleadings is an issue of law. As such, our review of the court's decisions in that regard is plenary.... The allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties.... It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint.... The purpose of a complaint ... is to limit the issues at trial.... Facts found but not averred cannot be made the basis for a recovery. (Citation omitted; internal quotation marks omitted.) Stamford Landing Condominium Assn., Inc. v. Lerman, 109 Conn.App. 261, 271, 951 A.2d 642, cert. denied, 289 Conn. 938, 958 A.2d 1246 (2008). The task before us is to examine the allegations of the plaintiffs' amended complaint to ascertain whether "they are sufficient on their face to establish a valid claim for the relief requested." Abbott Terrace Health Center, Inc. v. Parawich, supra, 120 Conn.App. at 86, 990 A.2d 1267. | The allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties. | "Are limiting the issues to be decided at the trial and preventing surprise, purposes of a complaint?" | 023893.docx | LEGALEASE-00161553-LEGALEASE-00161554 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 19051 | Gen. Motors Corp., Chevrolet Div. v. Lane, 496 S.W.2d 533 | 307A+673 | The complaint of all motions was the failure to grant the continuance instead of the rendition of judgment of dismissal. The relief sought was the setting aside of the dismissal and restoration of the case on the docket. The motion filed on December 15, denominated a motion "to reinstate," was the same as a motion for new trial under these circumstances. See, Dollert v. Pratt-Hewit Oil Corp., 179 S.W.2d 346 (Tex.Civ.App.1944, writ ref'd); Green v. Green, 288 S.W. 406 (Tex.Com.App.1926); Stuart v. City of Houston, 419 S.W.2d 702 (Tex.Civ.App.1967, writ ref'd n.r.e.); Hancock v. Gathright, 451 S.W.2d 591 (Tex.Civ.App.1970, no writ). The order of December 29 disposed of all pending motions and was in effect an order overruling motion for new trial. | Where order of dismissal for want of prosecution was signed on December 11, where plaintiff on December 15 filed a "motion to reinstate" her suit and, before a hearing was held on such motion, filed on December 21 another motion seeking reinstatement which she denominated "motion for new trial," and where order of December 29 disposed of all pending motions and was in effect an order overruling motion for new trial, such December 11 order of dismissal became final 30 days after rendition of the December 29 order, and thus judge had no power on February 9 of the following year to set aside the judgment of dismissal and to reinstate suit on court docket except upon timely filed bill of review. Rules of Civil Procedure, rule 329b, subd. 5. | Can a motion to reinstate be in the nature of a motion for a new trial? | 040011.docx | LEGALEASE-00160686-LEGALEASE-00160687 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 19052 | Reed v. Bjornson, 191 Minn. 254 | 371+2013 | It is elementary that the power of taxation is inherent in sovereignty and that under our system of government it reposes in the Legislature, except as it is limited by the state or the national Constitution.In other words, the constitutional provisions are not a grant of, but a limitation upon this power, and except in so far as thus limited it is exhaustive and embraces every conceivable subject of taxation. State v. Wells, Fargo & Co., 146 Minn. 444, 179 N. W. 221; Brushaber v. Union Pacific R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, 501, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713. | Power of taxation reposes in Legislature except as limited by state or national Constitution. | Is the power of taxation inherent in sovereignty? | 046325.docx | LEGALEASE-00160823-LEGALEASE-00160824 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 19053 | Whitney v. Dep't of Labor & Indus. of Washington, 191 Wash. 415 | 413+145 | A claimant is not entitled to compensation unless the work or occupation in which he was engaged at the time of the injury had been classified as extrahazardous.Denny v. Department of Labor and Industries, 172 Wash. 631, 21 P.(2d) 275. | A person engaged in business of selling new and used automobiles was not entitled to compensation for injuries received while driving automobile, since such work has not been classified as "extrahazardous." | How should the work or occupation be classified to be entitled to compensation? | 048695.docx | LEGALEASE-00161215-LEGALEASE-00161216 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 19054 | Constitution Indem. Co. v. Shytles, 47 F.2d 441 | 413+105 | This question of premium is a matter between the insurance company and the employer. The policy in this case provided for (see Record, p. 40) the final adjustment of premium, and it is settled law in this state that the question of extra hazard in the work being performed at the time of the injury and the premium applicable thereto is not a material inquiry, where the employee sues in a compensation case; the only material question there being whether the plaintiff was at the time of his injury an employee within the terms of the statute and the policy, and about the business of his master. Sheek v. Texas Co. (Tex. Civ. App.) 286 S.W. 336, 337; Standard Accident Ins. Co. v. Arnold (Tex. Civ. App.) 1 S.W.(2d) 434; Janes Construction Co. v. Home Life & Accident Co. (Tex. Civ. App.) 245 S.W. 1004; Georgia Casualty Co. v. Gibson (Tex. Civ. App.) 11 S.W.(2d) 191. | Question of extra hazard in work being performed is immaterial in action by employee for compensation. | "In a compensation case, is an employees hazardous work material?" | 048704.docx | LEGALEASE-00161321-LEGALEASE-00161322 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19055 | Gen. Tel. Co. of the Se. v. Trimm, 706 F.2d 1117 | 95+145 | Trimm argues that the determinative location under Georgia law is not where the contract is executed but rather where it is delivered. We disagree. Both contracts resulted from offers made by letter. O.C.G.A. " 13"3"3 (1982) provides: "If the offer is made by letter, an acceptance by written reply takes effect from the time it is sent and not from the time it is received; ..." (emphasis added). Several federal and Georgia decisions broadly imply that we should look to the place of delivery of the contract. Residential Industrial Loan Co. v. Brown, 559 F.2d 438, 440"41 (5th Cir.1977); Float-Away Door Co. v. Continental Casualty Co., 372 F.2d 701 (5th Cir.1966), cert. denied, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967); Robinson v. Ravenel Co., 411 F.Supp. 294, 296"97 (N.D.Ga.1976); Pink v. A.A.A. Highway Express, Inc., 191 Ga. 502, 13 S.E.2d 337, aff'd, 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152 (1941); Iowa State Travelers Mutual Association v. Cadwell, 113 Ga.App. 128, 147 S.E.2d 461 (1966); Peretzman v. Borochoff, 58 Ga.App. 838, 200 S.E. 331 (1938). Upon examination, these cases do not support a general rule that delivery, rather than execution, determines the place of the "making" of the contract. The decisions in Pink, Cadwell and Float-Away involve interpretation of insurance contracts. The Georgia Supreme Court in Pink emphasized that " contract of insurance is made, not where the policy was executed, but where it was in fact delivered." Pink, 191 Ga. at 344, 13 S.E.2d at 513. The last act essential to the making of an insurance contract is the receipt of the policy by the insured which informs her of the need to begin premium payments. Similarly, the decisions in Peretzman and Brown involved the validity of negotiable instruments. In Peretzman, the Georgia Court of Appeals held:"The place where a contract is made depends not upon the place where it is written, signed, or dated, but upon the place where it is delivered as consummating the | Under lex loci contractus approach, a court looks to the law of the state where the contract was made to ascertain whether the agreement is valid or enforceable; in deciding whether contract was made, court must determine where the last act essential to the completion of the contract was done. | "Does the law of the place where a bill is written, signed or dated control it?" | 009198.docx | LEGALEASE-00162654-LEGALEASE-00162655 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 19056 | State of Ohio ex rel. Squire v. Eubank, 295 Mich. 230 | 8.30E+10 | The case is controlled by the determination of the place of making of the renewal contract which embodied the purported authorization for the entry of judgment, for the validity of a contract is determined by the place of making. John A. Tolman Co. v. Reed, 115 Mich. 71, 72 N.W. 1104; Jones v. Turner, 249 Mich. 403, 228 N.W. 796; In re Estate of Lucas, 272 Mich. 1, 261 N.W. 117. If the warrant of attorney was made in Michigan, it failed to confer any jurisdiction on the Ohio court (Jones v. Turner, supra); if Ohio was the place of making, its validity is conceded. The determination of the place of making is termed by the authorities a question of "qualifications' (see Lorenzen, "The Theory of Qualifications and the Conflict of Laws," 20 Col.Law Rev. 274), and is a preliminary question governed by the law of the forum. State of Ohio ex rel. Fulton v. Purse, 273 Mich. 507, 263 N.W. 874; 2 Beale, Conflict of Laws, " 311.2; American Law Institute, Restatement of Conflict of Laws, " 311. Generally speaking, a contract is deemed to have been made in the State where the last act necessary to make it a binding agreement took place. Goodrich, Conflict of Laws, 1st Ed., p. 218; 2 Beale, Conflicts, p. 1045; 1 Williston on Contracts, Rev.Ed., " 97; American Law Institute, Restatement of the Law of Contracts, " 74; Holder v. Aultman, Miller & Co., 169 U.S. 81, 18 S.Ct. 269, 42 L.Ed. 669; Johnston v. Industrial Commission, 352 Ill. 74, 185 N.E. 191; Gannon v. Bronston, 246 Ky. 612, 55 S.W.2d 358. In the case of a promissory note, the place of contracting is where the note is first delivered for value. American Law Institute, Restatement of Conflict of Laws, " 320. In 2 Beale on Conflict of Laws, 1st Ed., p. 1047, it is said:"Delivery, however, is not the only requisite to the creation of a contract on a negotiable instrument. Value must be given, and until, therefore, there has been a delivery for value, the instrument cannot be said to have had any inception | In case of a note, place of contracting is where note is first delivered for value. | Where is a promissory note first delivered for value? | Bills and Notes - Memo 1343 - RK_66246.docx | ROSS-003293998-ROSS-003293999 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 19057 | Soter's v. Deseret Fed. Sav. & Loan Ass'n, 857 P.2d 935 | 156+52.10(2) | Again, we state the common ground among our decisions as to what must be shown to prove intentional relinquishment. As we said in Phoenix, any waiver "must be distinctly made, although it may be express or implied." 61 P.2d at 311. Because the essence of waiver is relinquishment, the statement in Phoenix indicated that the intentional relinquishment of a right must be distinctly made. With this legal requirement, we ensured that waiver would not be found from any particular set of facts unless it was clearly intended. The general statement from Phoenix is broad enough to account for the fact that although the necessary intent may be clear or distinct when there is an express waiver, such intent may be more difficult to prove when waiver is to be implied from conduct or silence. Consistent with this point is the general principle in our case law that "[m]ere silence is not a waiver unless there is some duty or obligation to speak." Plateau Mining Co., 802 P.2d at 730, quoted in Rees, 808 P.2d at 1073. | Waiver must be distinctly made, although it may be express or implied. | Should waiver be distinctly made? | Estoppel - Memo 252 - C - CSS_66078.docx | ROSS-003284777-ROSS-003284778 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19058 | Hals& v. Kintzer, 142 Ohio St. 237 | 233=841 | Perpetual leases are not favored, and general covenants as to right of keep in mind the fundamental rule that... | In attempting to construe the provision of the lease it is necessary to keep in mind the fundamental rule that perpetual leases are not favored and that general covenants as to right of renewal are therefore usually limited to a single renewal unless an intention to create a perpetuity is clearly shown... | Are perpetual franchises favored by law? | 018553.docx | LEGALEASE 00161946 LEGALEASE 00161949 | Condensed_SA | 0.85 | 0 | | | 1 | |
| 19059 | Riffe v. Home Finders Assocs., 205 W. Va. 216 | 217=2957 | Exclusion in home warranty contract barring coverage for pre-existing conditions and parts normally addressed by property insurance policies needing property... | The agreement provided by Home Security, although it claims to offer "warranty coverage," is an insurance policy... | Is a home service contract that offers warranty an insurance policy? | 019503.docx | LEGALEASE 00162255 LEGALEASE 00162256 | Condensed_SA, Sub | 0.01 | | | 1 | 1 | |
| 19060 | Butterfield v. Giuntoli, 448 Pa. Super. 1 | 217=0901 | Medical professional liability catastrophe loss (CAT) fund is not insurance, rather, it is statutorily mandated executive agency to compensate victims of tort or breach of contract by health care provider. 40 P.S. § 1301.701 et seq. | Appellant argues that its umbrella policy includes coverage for punitive damages under this endorsement because the CAT Fund, an underlying insurer, does not insure for punitive damages claims. Although Lamarghin cited to the CAT Fund in its holding, that case is distinguishable... | Is the Medical Professional Liability Catastrophe Loss Fund (CAT fund) insurance? | 019510.docx | LEGALEASE 00162312 LEGALEASE 00162313 | Condensed_SA | 0.85 | | | 1 | 1 | |
| 19061 | Am. Deposit Corp. v. Schacht, 887 F. Supp. 1066 | 217=0901 | Fundamental characteristic of insurance is spreading and underwriting of risk; the risk to be insured against is either distributed... | The fundamental characteristic of insurance is the spreading and underwriting of risk; the risk to be insured against is either distributed among a group of individuals... | What are the fundamental characteristics of insurance? | 019601.docx | LEGALEASE 00162363 LEGALEASE 00162365 | Condensed_SA | 0.83 | | | 1 | 1 | |
| 19062 | Irca Sabine Oil & Gas Corp., 550 B.R. 59 | 260=73.10 (5) | Under Texas law, a royalty interest is per se a mineral interest. See, e.g., Altman v. Blake, 712 S.W.2d 117, 118 f (Tex.1986) (citing the five real property rights that constitute a mineral estate, including the right to... | Under Texas law, a royalty interest is per se a mineral interest. Sea, e.g., Altman v. Blake, 712 S.W.2d 117, 118 f (Tex.1986) (listing the five real property rights that constitute a mineral estate, including the right to royalty)... | Is a royalty interest also a mineral interest under Texas law? | 019873.docx | LEGALEASE 00161924 LEGALEASE 00161925 | Condensed_SA | 0.73 | | | 1 | 1 | |
| 19063 | People v. Sears, 344 Ill. 189 | 371=2013 | The liability of the owner of property for the payment of taxes is purely statutory. No law is valid which would provide for the levy and collection of taxes is unlimited, except as restricted by the state and federal Constitutions... | The liability of the owner of property for the payment of taxes is purely statutory. This duty is well settled that the legislative power of a state to provide for the levy and collection of taxes is unlimited, except as restricted by the state and federal Constitutions... | Is the obligation to pay taxes a statutory creation? | 040186.docx | LEGALEASE 00161596 LEGALEASE 00161897 | Condensed_SA | 0.85 | | | 1 | 1 | |
| 19064 | Langford v. Klein, 115 Mich. 595 | 371=2003 | Governmental powers of taxation are controlled by constitutional and statutory provisions, and hence it is not possible to adjudicate issues arising under taxation laws by general application of equitable principles. | Governmental powers of taxation are controlled by constitutional and statutory provisions. ... This phase of the controversy must be decided from constitutional and statutory provisions... | What controls the governmental powers of taxation? | 040318.docx | LEGALEASE 00162002 LEGALEASE 00162003 | Condensed_SA | 0.51 | | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19065 | People v. McGraw Elec. Co., 375 Ill. 241 | 92.H137 | The question here is, therefore, whether taxes imposed by a nonresident corporate provision, and so beyond the taxing jurisdiction of a State… | Under Fourteenth Amendment, a state must have jurisdiction over property to subject such property to any ad valorem taxation. U.S.C.A.Const. Amend. 14. | Can a state tax property without the jurisdiction? | 041093.docx | LEGALEASE 00162116-LEGALEASE 00162119 | Condensed, SA 0.91 | 0 | | 1 | 1 | 1 |
| 19066 | Luckenbach v. Mitchell, 7 Ohio St. 387 | 8.30/I+10 | The contract for loan was made in the State of New York; the money was advanced there; the note and mortgage delivered there; and the loan was to be repaid there… | Where a loan was made, the money advanced and to be repaid, and a note and a mortgage delivered in New York, of land in Ohio, it will be regarded as a contract made in New York, and governed by the laws of that state; and the usury laws of that state will apply to it. | Is a contract governed by the law of the state where it is to be performed? | 00915.docx | LEGALEASE 00162813-LEGALEASE 00162814 | Condensed, SA, Sub 0.42 | 0 | | 1 | | 1 |
| 19067 | Poole v. Walbridge, 16 Ind. 147 | 8.30/I+10 | As to the note in suit, it was made in this State, we are told, or to be paid in Ohio… | A note made in the state where it is brought, and payable generally in another state, is to be governed by the law in reference to usury, where it is made and to be performed. | Which law will govern where a note is drawn in one place and payable in another? | 00160.docx | LEGALEASE 00162791-LEGALEASE 00162792 | Condensed, SA, Sub 0.78 | 0 | | 1 | | 1 |
| 19068 | Banca Italiana Di Sconto v. Columbia Counter Co., 252 Mass. 552 | 8.30/I+11 | The contention of the defendant that as the note was dated on Sunday it was void cannot be sustained. The fact that a note is made and dated on a Sunday does not of itself render it invalid… | Maker ordinarily bound under laws of place where note payable. | Under what law is the maker of a note bound? | Bills and Notes - Memo 1164 - RK_64058.docx | ROSS-003295179-ROSS-003295176 | Condensed, SA 0.96 | 0 | | 0 | | 1 |
| 19069 | Badgley v. Votrain, 68 Ill. 25 | 83/I+181 | The validity of the transaction is, that the donor executed an assignment of $12,000 out of his estate, in favor of a volunteer, and provided for its payment, after the death of himself, out of a promissory note, payable to himself, some of which were secured by mortgages upon real estate… | The legal title to a note cannot be transferred by assignment by a separate instrument. | Can a note be assigned so as to vest the legal title in the assignee by separate instrument? | 009327.docx | LEGALEASE 00163001-LEGALEASE 00163002 | Condensed, SA, Sub 0.84 | 1 | | 1 | | 1 |

Appendix D

3359

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19070 | Underwood v. Harkins, 2011 WL 2457680 | 92+1474(3) | Georgia law gives each superior court clerk the power to appoint one or more deputies, and to require from them a "bond with good security." See Ga.Code Ann. " 15"6"59(b) (2012). It also provides that the "[p]owers and duties of deputy clerks shall be the same as those of [superior court] clerks." Ga.Code Ann. " 15"6"59(b) (2012). Thus, a deputy clerk like Ms. Underwood is statutorily authorized to carry out the same tasks as the clerk, who is her superior. See Hendrick v. State, 257 Ga. 17, 354 S.E.2d 433, 434 (1987) ("By statute, the deputy clerk has the same power and duties as those of the clerk of the court."); Green v. State, 49 Ga.App. 252, 175 S.E. 26, 27"28 (1934) (deputy clerks are empowered to take affidavits upon which warrants may be issued); Ledbetter v. State, 2 Ga.App. 631, 58 S.E. 1106, 1107 (1907) (deputy clerks can receive indictments). | Deputy superior court clerk for Georgia county was confidential subordinate of elected superior court clerk, so that clerk could demand deputy's loyalty, and thus, First Amendment did not prohibit clerk from dismissing deputy for running against clerk in political party's primary election for clerk's office; under Georgia law, deputy had powers and duties which were identical to those of clerk, even if deputy's everyday duties under clerk's predecessor had not extended to outer limits authorized by Georgia law. U.S.C.A. Const.Amend. 1; West's Ga.Code Ann. SS 15-6-59(b), 15-6-61(a). | Are the powers and duties of a deputy clerk the same as that of a superior court clerk? | Clerks of courts - Memo 74 - RK_66896.docx | ROSS-003283542-ROSS-003283543 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 19071 | Christensen Hatch Farms v. Peavey Co., 505 F. Supp. 903 | 349B+5.17 | Although individual commodity futures contracts are generally not considered to be securities, some courts have determined that an investment contract is formed when commodity futures accounts are managed by the seller or affiliate. See, e. g., Securities & Exchange Commission v. Continental Commodities Corp., 497 F.2d 516, 520 n.9 (5th Cir. 1974); Glen-Arden Commodities, Inc. v. Constantino, 493 F.2d 1027, 1033-35 (2d Cir. 1974); Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 253 F.Supp. 359, 365-67 (S.D.N.Y.1966). An individual commodity futures contract, being no more or less than an option, clearly lacks the common enterprise element of the Howey test. Moody v. Bache & Co., 570 F.2d 523, 525 (5th Cir. 1978). The determination of whether managed commodity accounts are investment contracts is more difficult and generally focuses on whether a horizontal or a vertical relationship between investors satisfies the common enterprise test. | Determination whether managed commodity accounts are investment contracts within Securities Exchange Act of 1934 generally focuses on whether a horizontal or a vertical relationship between investor satisfies common enterprise test. Securities Exchange Act of 1934, S 3(10), 15 U.S.C.A. S 78c(10). | Is a commodity futures contract a security? | 013660.docx | LEGALEASE-00164170-LEGALEASE-00164171 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 19072 | People v. Daniels, 208 Cal. App. 4th 29 | 135H+115 | When a defendant successfully appeals a conviction and is retried and reconvicted on the same charge, the constitutional prohibition against double jeopardy precludes imposition of a more severe punishment after the second conviction than was imposed after the first. (People v. Hanson (2000) 23 Cal.4th 355, 358, 97 Cal.Rptr.2d 58, 1 P.3d 650.) In People v. Hanson, the Supreme Court held restitution fines are punishment for purposes of double jeopardy, and on remand for resentencing after an appeal, a trial court may not impose restitution fines greater than those imposed in the original judgment. (Id. at pp. 366"367, 97 Cal.Rptr.2d 58, 1 P.3d 650.) | The purpose of the double jeopardy rule against imposing a greater sentence after retrial is to avoid the chilling effect on the right to appeal generated by the risk of a more severe punishment. West's Ann.Cal. Const. Art. 1, S 15. | Are restitution fines punishment for double jeopardy purposes? | Double Jeopardy - Memo 210 - C - KS_66960.docx | ROSS-003305820 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 19073 | Lee v. United States, 432 U.S. 23 | 135H+87 | Where the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial, the Double Jeopardy Clause generally would not stand in the way of reprosecution. Only if the underlying error was "motivated by bad faith or undertaken to harass or prejudice," id., at 611, 96 S.Ct., at 1082, would there be any barrier to retrial:"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," United States v. Jorn, supra, 400 U.S. at 485, 91 S.Ct. 547, threatens the "(h)arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. Downum v. United States, 372 U.S. (734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)). . . ." Ibid. | Question as to whether double jeopardy clause prohibits retrial after the case has been terminated, after jeopardy has attached, without a finding on the merits does not depend upon whether the court labels its action a dismissal or declaration of mistrial but rather whether the order contemplates an end to all prosecution of the defendant for the offense charged. U.S.C.A.Const. Amend. 5. | Does a double jeopardy clause not generally preclude reprosecution if a defendant requests or consents to mistrial? | 015319.docx | LEGALEASE-00163167-LEGALEASE-00163168 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 19074 | Norwood v. Vance, 591 F.3d 1062 | 156+52.10(3) | It is "well-established" that a party can " "waive waiver" implicitly by failing to assert it." Tokatly v. Ashcroft, 371 F.3d 613, 618 (9th Cir.2004); United States v. Garcia"Lopez, 309 F.3d 1121, 1123 (9th Cir.2002); see also Wilson v. Kelkhoff, 86 F.3d 1438, 1445 (7th Cir.1996) (plaintiff waived defendant's waiver of absolute immunity defense). Norwood waived the defendants' waiver by addressing the claim on the merits without also making a waiver argument. Cf. Chicano Educ. & Manpower Servs. v. U.S. Dep't of Labor, 909 F.2d 1320, 1327"28 & n. 5 (9th Cir.1990) ("Yes, we are indeed holding that the Department has waived its right to argue that CEMS waived its right to ask for a waiver...."). The dissent would have us raise the issue of waiver sua sponte and suggests that we have "discretion" not to reach defendants' qualified immunity claim. Dissent at 1076"77. But "[t]his court will not address waiver if not raised by the opposing party." United States v. Doe, 53 F.3d 1081, 1082"83 (9th Cir.1995) (quoting United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir.1995)). Even if we had such discretion, we believe the more prudent course is to resolve the case on the basis of the issues actually briefed and argued by the parties. | A party can waive waiver implicitly by failing to assert it. | Can a party waive waiver implicity by failing to assert it? | Estoppel - Memo 276 - C - CSS_67184.docx | ROSS-003283781-ROSS-003283782 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 19075 | Enfield Toll-Bridge Co. v. Hartford & N. H. R. Co., 17 Conn. 454 | 101+1212 | When this case was before us at a former term, we held, that the franchise of this bridge company was subject to the same legislative controul for public use, as any other species of property, whether belonging to corporate or natural persons. We suppose the question made on this argument respecting the constitutional power of the legislature, though varied somewhat in its phraseology, was distinctly raised, and decided by us, on the former hearing, as it had been before, in the case of the town of East-Hartford v. The Hartford Bridge Company, 17 Conn. R. 41. 80. We shall not now discuss again a question so recently, and as we think, correctly settled. | The franchise of the Enfield Toll-Bridge Company, aside from any special legislation regarding it, is subject to the same legislative control, for public use, as any other species of property. | Can franchises be taken for public use? | 018605.docx | LEGALEASE-00163380-LEGALEASE-00163381 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19076 | Sapp v. State, 100 S.W.3d 632 | 3-771+65 | We conclude stalking and harassment are not in pari materia because they are not similar in purpose or object. First, the elements of proof are different. Stalking requires actions (1) on more than one occasion; (2) pursuant to the same scheme or course of conduct; and (3) directed specifically at one person. The elements of harassment, on the other hand, may be satisfied with only one offense directed at one specific person. Moreover, the mens rea under each is different. Stalking requires knowing contact, while harassment requires the higher culpable mental state of intent. | Statutes setting forth offenses of harassment and stalking were not in pari materia, as statutes were not similar in purpose or object, and thus, State had discretion as to which offense to prosecute; elements of proof between the two offenses were different, mens rea under each statute was different, the offenses involved different penalties, and if the Legislature wanted the harassment statute to control the stalking statute, it never would have separated the two offenses in the first place. V.T.C.A., Government Code § 311.026; V.T.C.A., Penal Code §§ 42.07, 42.072. | Are the crimes of stalking and harassment in pari materia? | 048990.docx | LEGALEASE 00163391 LEGALEASE 00163392 | Condensed, SA, Sub 0.05 | | 0 | | | 1 | |
| 19077 | In re Ryan D., 100 Cal. App. 4th 854 | 3-771+11 | First, section 422 cannot be applied to constitutionally protected speech. (See People v. Quiroga (1993) 16 Cal.App.4th 961, 968 ["§ 20 Cal.Rptr.2d 446].) In fact, a narrow application of the section to unprotected threats (former '' 422, 422.5; Stats.1977, ch. 1146, '' 1, pp. 3684 "3685.) was declared unconstitutional (People v. Mirmirani (1981) 30 Cal.3d 375, 178 Cal.Rptr. 792, 636 P.2d 1130.) Recognizing that the section does not necessarily preclude the Legislature from punishing threats, our Supreme Court held that "[a] statute which attempts to do so must be narrowly drafted only to threats which truly pose a danger to society." (Id. at p. 388, fn. 10, 178 Cal.Rptr. 792, 636 P.2d 1130.) The court added that "... a crime is not unconstitutional per se. For less complex circumstances in which it is made] [§] is unequivocal, unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and imminent prospect of execution ..." (Ibid., quoting from United States v. Kelner (2d Cir.1976) 534 F.2d 1020, 1027.) | Criminal threat statute cannot be applied to constitutionally protected speech. West's Ann.Cal.Penal Code § 422. | Can 422, the criminal threat statute, be applied to constitutionally protected speech? | "Threats, Stalking and Harassment - Memo 240 - C - LB_6484.docx" | ROSS-003280039 ROSS-003280090 | Condensed, SA 0.89 | | 0 | | | 1 | |
| 19078 | PNM Energy Sys. v. Powermatep, 593 F.3d 850 | 25+179 | In CD Partners, we recognized two such circumstances. See CD Partners, 424 F.3d at 798. The first relies on agency and related principles to allow a nonsignatory to compel arbitration when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement. Id.; see also Nesslage v. York Secs., Inc., 823 F.2d 231, 233 (8th Cir.1987) (permitting a nonsignatory to compel arbitration where it was the "disclosed agent" of a signatory). The second relies heavily on principles of equitable estoppel, broadly invoking notions of fairness and essentially holds that a nonsignatory can force a signatory into arbitration when the "alternative estoppel" ... CD Partners, 424 F.3d at 799 ("A willing nonsignatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory which takes into consideration the relationships of persons, wrongs, and issues ..."), (quoting Merrill Lynch Pierce, Fenner & Smith, Inc. v. Eddings, Ltd., 217.2d 125, 131 (2d Cir. 2000) (alteration omitted, emphasis added). Alternative estoppel typically relies, at least in part, on the claims being so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement. See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993) (along with approval and adopting the reasoning of Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 838 (7th Cir.1981)). | In action brought by licensor of turf surface application technology patents against potential licensee for tortious interference with potential agreement to install agreements between licensor and licensee licensed to use the gasification technology and the option agreement in a number of countries, and for conspiring with licensees to convert licensor's intellectual property for their own use, concerted misconduct theory of equitable estoppel applied to allow licensor, as nonsignatory, to compel arbitration pursuant to arbitration agreement between licensor and licensee; specifically alleged coordinated behavior between a signatory and a nonsignatory, the agreements between licensor and licensee anticipated that an entity such as potential licensee would enter into a licensing relationship with licensee, and the agreements attempted to govern that expected relationship. | Can a writing a nonsignatory arbitrate with an unwilling signatory? | 000929.docx | LEGALEASE 00165005 LEGALEASE 00165007 | Condensed, SA, Sub 0.43 | | 0 | | | 1 | |
| 19079 | Charles R. Allen v. Rhode Island Ins. Co., 217 S.C. 296 | 217+3450 | Under attachment statutes similar to ours, the great weight of authority is to the effect that an unadjusted claim for loss under a policy of insurance is subject to attachment or garnishment in the hands of the insurance company. Sexton v. Phoenix Insurance Co., 132 N.C. 1, 43 S.E. 479; Chicago, R.I. & P. Ry. Co. v. Harris, 96 Ark. 30, 131 S.W. 36; Adreman v. Toler, 8 Cir., 23 F.2d 541. This is true even though the insurance company denies any indebtedness to the insured. Sexton v. Phoenix Insurance Co., supra; Anderman v. Toler, supra. Mechanics' & Traders' Bank v. Dakin, 51 N.Y. 519. The fact that such a claim is unadjusted at the time does not, however, preclude the insurer from contesting liability on the policy and asserting any defense it may have. In recognizing the validity of an attachment made in New York against claims similar to the one here in the case of Commonwealth Ins. Co. v. Knabe, 171 Mass. 265, 50 N.E. 516, the court said: "In the case of a resident of this State on account of a frivolous, this Court in Campbell v. Home Insurance Co., 1 S.C. 158, said: 'If the attachment is dissolved, the sheriff may put his hand on the person alleged to be indebted to the non-resident debtor, in which action such person is made a party defendant, by the attachment of the demand; so of the sheriff claiming a right of the attaching creditor.' The first holding in Brown Construction Co. et al. 'In Manning's Building & Insurance Co., et al. v. 1 S.C. 158, 175 S.C. 417, 179 S.E. 697, 697, relied on by respondent, in conflict with the view herein expressed. We conclude therefore that an unadjusted claim for loss made against an insurer, in this instance, is subject to attachment. | Where machinery, equipment and stock were insured against fire and, under loss payable clauses which provided that loss should be payable to a specified bank to which insured was indebted, insured had right to collect insurance in event of destruction of its debt to bank, and insurer was subject to attachment by a general creditor of insured even though proceeds of policies were in custodia legis and insurer and insured could not, without court order, compromise claim as to defeat attachment. | Are unadjusted claims for loss under an insurance policy subject to garnishment? | 014111.docx | LEGALEASE 00165085 LEGALEASE 00165086 | Condensed, SA, Sub 0.44 | | 0 | | | 1 | |
| 19080 | State v. Saba, 400 P.3d 251 | 133H+30 | The State cites various cases, including State v. Linam, 1979 NMSC 004, 93 N.M. 307, 600 P.2d 253; State v. Aragon, 1993 NMSC 004, 116 N.M. 267, 861 P.2d 948; and State v. Freed, 1996 NMSC 044, 122 N.M. 567, 915 P.2d 925, for the general principle that double jeopardy protections do not apply to habitual offender proceedings. We agree that "double jeopardy [protection] generally [do] not apply in ... habitual offender proceedings" because the proceedings do not have "the hallmarks of a trial ... whose subject is to attached to a finding. See Aragon, 1993 NMSC 004, §§ 11, 13, 116 N.M. 267, 861 P.2d 948. | Double jeopardy protection generally do not apply in habitual offender proceedings because the proceedings do not have the hallmarks of a trial whose subject is to attached to a finding. | Do double jeopardy doctrine generally apply to habitual offender proceedings? | Double Jeopardy - Memo 132 - C - LB_6754.docx | ROSS-003285559 ROSS-003285960 | Condensed, SA 0.68 | | 0 | | | 1 | |

Appendix D

| | | | | | | | | | | | Order 839 | Condensed 15,944 | Substantive Additions 14,873 | Selection & Arrangement 23,876 | Multiple Differences 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19081 | Trueblood v. State, 760 N.E.2d 97 | 284v21 | There is no need for additional briefing on the question presented. The exclusive power to grant clemency rests with the Governor. See, e.g., Ind. Code § 11-9-2-2; Baker v. State, 97 Ind. 373, 375-76 (1884). This power is given in the Governor in our state constitution. See Ind. Const., Art. 5, § 17. Although certain statutes address the procedure for making application to the Governor for clemency, see, e.g., Ind. Code §§ 11-9-2-1 through 4, the legislature expressly provided that the statutes do "not limit the constitutional power of the governor to grant pardons, reprieves, commutations, or remissions of fines and forfeitures." I.C. § 11-9-2-3. Our state constitution vests discretion in the Governor as to matters of clemency. See Ind. Const., Art. 5, § 17 (providing that "The Governor may grant reprieves, commutations, and pardons, after conviction ... subject to such regulations as may be provided by law.") (emphasis added). | Exclusive power to grant clemency rests with the governor. West's A.I.C. Const., Art. 5, § 17. | Is the governor's power to grant clemency exclusive? | Pardon and Parole - Memo 6 - RK_47521.docx | ROSS-00328080 ROSS-00328089 | SA_Sub | 0.9 | 0 | 0 | 0 | 1 | 0 |
| 19082 | Finch v. Miller, 271 Or. 271 | 302v72 | Despite frequent statements that the answer is not part of the complaint, we recognized that the answer is relevant when "it tends to explain or qualify" other parts of the pleading. Marsh v. Davison, 265 Or. 532, 537, 510 P.2d 558 (1973). | Even though answer is not part of complaint, it is relevant when it tends to explain or qualify other parts of pleading. | Is the answer part of the complaint? | 027070.docx | LEGALEASE 00164599-00164600 | SA_Sub | 0.5 | 0 | 0 | 0 | 1 | 0 |
| 19083 | Scott v. State, 164 A.3d 177 | 135H>1 | Although there is no guarantee against double jeopardy in the Maryland Constitution or Declaration of Rights, "Maryland common law provides well-established protection for individuals against being tried or put in jeopardy..." Taylor v. State, 381 Md. 602, 610, 851 A.2d 551 (2004) (citation omitted). | Although the Constitution of Maryland does not contain a counterpart to the Double Jeopardy Clause, the common law of Maryland provides for a prohibition on double jeopardy. U.S. Const. Amend. 5. | Does law provide well established protections for individuals against being tried or put in jeopardy? | Pretrial Procedure - Memo 22 EN1 - C - RK_57272.docx | ROSS-00328287 | SA_Sub | 0.43 | 0 | 0 | 0 | 1 | 0 |
| 19084 | State v. Finney, 337 N.C. App. 367 | 110v1938 1(a) | Under Blake, "the mental injury itself, whereby some appreciable time beyond the incidents surrounding the rape and [it must be] a mental injury beyond that normally experienced in every forcible rape." Id. at 8, 441 S.E.2d 350. Mental injuries normally experienced in a rape case are those "... variously connected to [an] occurrence or event in both time and substance as to be a part of it" and "as to cause them to be." Id. at 63, 441 S.E.2d 351. | Trial court's instruction to jury on first-degree rape was not plain error; although defendant contended trial court erroneously eliminated instruction on serious physical injury and failed to instruct jury that in order to support conviction for first-degree rape, alleged mental injury must have been more than or different from injury usually associated with forcible rape, trial judge correctly defined term serious physical injury in re-charging jury, and there was no additional burden on state to show mental injury more than that normally experienced in every forcible rape. | When will a mental injury become an element of rape? | 043153.docx | LEGALEASE 00164914 LEGALEASE 00164915 | Condensed, SA, Sub | 0.25 | 0 | 0 | 0 | 1 | 0 |
| 19085 | City of Riverside v. Rivera [et al.], 84 Cal. App. 3d 655 | 371v1311 | The rule in California is, with exception not here pertinent, that property owned by a county is exempt from property taxation. (Cal. Const., art. XIII, subd. (b).) Similarly, unless the Legislature expressly so authorizes, property publicly owned and used is exempt from taxation. (Inglewood v. County of Los Angeles, 207 Cal. 697, 701 [280 P. 360].) County of Santa Barbara, City of Santa Barbara, 18 Cal.App.3d 364, 369, 376, 110 Cal.Rptr. 651. The imposition of a tax upon property which is exempt constitutes a taking of such property without due process of law, a taking or deprivation of property for public use without compensation, ... etc. The charges are in effect a special assessment under a different name ... These assessments against the city would have to be paid out of general revenue of the county. (City of Santa Barbara v. City of Santa Barbara, supra, 59 Cal.App.3d 364, 376, 110 Cal.Rptr. 651.) | General rule is that property owned by a county is exempt from property taxation. West's Ann Const. art. 13, § 3(b). | Is the property owned by a county exempt from property taxation? | 064690.docx | LEGALEASE 00164721 LEGALEASE 00164722 | SA_Sub | 0.88 | 0 | 0 | 0 | 1 | 0 |
| 19086 | State v. Juarez, 115 Wash. App. 881 | 135H>59 | A criminal defendant cannot be put in jeopardy twice for the same offense. U.S. Const. amend. 5; Wash. Const. art. 1, § 9. And jeopardy attaches when a jury is selected and sworn. State v. Rich, 63 Wash.App. 743, 749 ... comment the discovery violations by the state is not sufficient time for the defense to meet the jeopardy-jury evidence within the speedy trial period. Jacobsen Cellu's acts was thereby forced to choose between a constitutional right to have both a speedy trial and effective assistance of counsel. The trial court refused either to dismiss the charges or to grant a mistrial, however, and instead impaneled a jury.[sic] Juarez contends that because the information charged him with first degree and second-degree murder, he was thereby forced to go to trial ... reverse his conviction and dismiss the charges. | A criminal defendant cannot be put in jeopardy twice for the same offense. U.S.C.A. Const.Amend. 5; West's RCWA Const. art. 1, § 9. | Can a defendant be put in jeopardy twice for the same offense? | 014782.docx | LEGALEASE 00166016 LEGALEASE 00166017 | Condensed_SA | 0.8 | 0 | 0 | 0 | 1 | 0 |
| 19087 | United States v. DiFrancesco, 449 U.S. 117 | 110v296(1) | An acquittal is accorded special weight. "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal," for the "public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though the acquittal was based upon an egregiously erroneous foundation." See Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629. If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair. Arizona v. Washington, 434 U.S., at 503, 98 S.Ct., at 829. The law attaches particular significance to an acquittal. United States v. Scott, 437 U.S., at 91, 98 S.Ct., at 2193. | Neither history of sentencing practices nor pertinent rulings of Supreme Court, nor even considerations of double jeopardy policy support proposition that criminal sentence, once pronounced, is to be accorded constitutional finality similar to that which attaches to jury's verdict of acquittal. | Does public interest exist in finality of criminal judgments and bar reprosecution even when an acquittal is based on egregiously erroneous foundation? | 016165.docx | LEGALEASE 00165932 LEGALEASE 00165933 | Condensed_SA | 0.62 | 0 | 0 | 0 | 1 | 0 |
| 19088 | State v. Schilday, 417 N.W.2d 728 | 135H>1 | No person may be put twice in jeopardy for the same offense. U.S. Const. amend. 5; Minn. Const. art. I, § 7. Double jeopardy protects an accused against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; (3) impaneled and sworn. McDonald, 298 Minn. at 452, 215 N.W.2d at 609. Circumstances may arise in which the trial court may abort the trial and retry the defendant without violating the protection against double jeopardy. Id. at 453, 215 N.W.2d at 609. Where a mistrial is granted over the objection of the accused, double jeopardy bars a second prosecution "unless there was a manifest necessity" for mistrial before the defendant may be retried. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). | No person can be put twice in jeopardy for the same offense, and jeopardy attaches when jury is impaneled. | Can a person be put twice in jeopardy for the same offense? | Double Jeopardy - Memo 1 - C - RK_67720.docx | ROSS-00329254 ROSS-00329241 | Condensed_SA | 0.82 | 0 | 0 | 0 | 1 | 0 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19089 | Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028 | 172H+1476 | Congress passed the Higher Education Act of 1965 ("HEA"), 20 U.S.C. " 1071, et seq., to " "keep the college door open to all students of ability," regardless of socioeconomic background." Pelfrey v. Educ. Credit Mgmt. Corp., 71 F.Supp.2d 1161, 1162"63 (N.D.Ala.1999); see 20 U.S.C. " 1070(a). Among other things, the HEA established the Federal Family Education Loan Program ("FFELP"),1 administered by the Department of Education ("DOE"). See 20 U.S.C. " 1071. The DOE has promulgated regulations to implement the FFELP. See College Loan Corp. v. SLM Corp., 396 F.3d 588, 590 (4th Cir.2005); 20 U.S.C. " 1082(a)(1). | When operating under Federal Family Educational Loan Program (FFELP), guaranty agency acts as "fiduciary" of Department of Education (DOE), as required for exception from Fair Debt Collection Practices Act's (FDCPA) definition of "debt collector" for collection activities "incidental to a bona fide fiduciary obligation." | What is the Congressional purpose for the enactment of Higher Education Act? | 017161.docx | LEGALEASE-00166084-LEGALEASE-00166085 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 19090 | Norwegian Twp. v. Schuylkill Cty. Bd. of Assessment Appeals, 74 A.3d 1124 | 371+2394 | In SEPTA, our Supreme Court described two distinct analyses; one used to determine whether a property is tax-immune and the other used to determine whether a property is tax-exempt. 574 Pa. at 712, 833 A.2d at 713. However, similar to our decision in Granville, the and "exemption" interchangeably. Id. As we noted in Granville, the distinction between tax immunity and tax exemption is unnecessary in the context of government-owned property. 900 A.2d at 1016 n. 3. Whether either term is used, government-owned property is not taxable if it is being used for a public purpose, and the taxing authority bears the burden to prove its taxability. Id. at 1016. Stated otherwise, the taxing authority must prove that the government-owned property is not being used for a governmental purpose in order for the property to be taxable. | Substantial evidence supported the trial court's conclusion that Board of Assessment Appeals failed to meet its burden to prove taxability of township's property; sole evidence that the Board placed into record was tax assessment record card and picture of the property, establishing only that the property was currently vacant, and township produced ample evidence to show that property was actually and regularly being used for public purpose and to support court's finding that property was available to public for recreational activities, had been used by township to benefit public, and that township had made good-faith effort to develop the land for a park or playground, and though not required for property to be tax-immune/exempt, court also found that the township made a good-faith effort to develop the property. Const. Art. 8, S 2. | Who needs to prove the taxability of a government owned property? | 046508.docx | LEGALEASE-00166118-LEGALEASE-00166119 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 19091 | In re M.H.P., 830 N.W.2d 216 | 135H+1 | The State is appealing a factual finding and asking us to conclude M.H.P. is a delinquent child. However, M.H.P. cannot again be placed in risk of the loss of liberty. "Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution." Breed v. Jones, 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The risk M.H.P. faces on appeal is being found a delinquent child; the consequences of which under N.D.C.C. " 27"20"31 include probation, placement in an institution or juvenile services, monetary restitution, periodic drug testing and suspension of driving privileges. "Because of its purpose and potential consequences, and the nature and resources of the State, such a [delinquency] proceeding imposes heavy pressures and burdens"psychological, physical, and financial"on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once "for the same offense." " Breed, at 529"30, 95 S.Ct. 1779 (quotation omitted). While M.H.P. is not at risk of criminal punishment, the double jeopardy clause applies to juvenile delinquency proceedings and prevents this Court from reaching a result contrary to the juvenile court. Id. at 530, 95 S.Ct. 1779. | Jeopardy denotes risk; in the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution. U.S.C.A. Const.Amend. 5. | What does jeopardy describe? | 015988.docx | LEGALEASE-00166343-LEGALEASE-00166344 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 19092 | Morrison v. Quest Diagnostics Inc., 139 F. Supp. 3d 1182 | 379+118 | "Purely economic loss is generally defined as the loss of the benefit of the user's bargain ... without any claim of personal injury or damage to other property." Calloway v. City of Reno, 116 Nev. 250, 993 P.2d 1259, 1263 (2000), overruled on other grounds by Olson v. Richard, 120 Nev. 240, 89 P.3d 31, 31"33 (2004). The purpose of the economic loss doctrine is "to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." Terracon, 206 P.3d at 86"87. The doctrine is also derived from the policy concern that tort liability for economic losses could deter "useful commercial activity," and that "[i]nstead, when economic loss occurs as a result of negligence in the context of commercial activity, contract law can be invoked to enforce the quality expectations derived from the parties' agreement."Id. at 87. | Under Nevada law, exceptions to the economic loss doctrine exist in a certain category of cases when strong countervailing considerations weigh in favor of imposing liability, such as cases where there is significant risk that the law would not exert significant financial pressures to avoid such negligence. | "When economic loss occurs as a result of negligence in the context of commercial activity, can contract law be invoked to enforce the quality expectations derived from the parties' agreement?" | Action - Memo 981 - C - MV.docx | LEGALEASE-00056184-LEGALEASE-00056185 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 19093 | Salomon Forex v. Tauber, 8 F.3d 966 | 83H+6.1 | Tauber owes Salomon Forex the $26 million amount as a result of speculation on options and futures in foreign currencies. While Tauber claims his transactions with Salomon Forex are unenforceable because they did not comply with the CEA, the Treasury Amendment to the CEA, in exempting off-exchange transactions "in foreign currency," exempts off-exchange sales of options and futures in foreign exchange from CEA regulation. The trading between Salomon Forex and Tauber was off-exchange, involving individually negotiated deals between sophisticated traders, and was therefore excluded from CEA coverage by the Treasury Amendment. Tauber's argument that his trading with Salomon Forex was illegal under state law prohibiting bucket shops is equally ineffective because his trading involved legally enforceable futures and option contracts, not sham transactions. Finally, there is no bona fide dispute as to the amount of Tauber's indebtedness or the existence of any counterclaim to its enforcement. The judgment entered in favor of Salomon Forex is, therefore, affirmed. | Individually negotiated foreign currency option and futures transactions between sophisticated, large-scale foreign currency traders come within foreign currency exclusion to coverage of Commodity Exchange Act. Commodity Exchange Act, S 2(a)(1)(A), as amended, 7 U.S.C.A. S 2. | Does Commodity Exchange Act cover deals between sophisticated traders? | Commodity Futures Trading Regulation - Memo 45 - C -JL.docx | LEGALEASE-00056242-LEGALEASE-00056243 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 15094 | Beth Jacob Hebrew Teachers Coll. v. Riley, 73 F. Supp. 2d 262 | 141H+1234 | Department of Education's finding that religious school's program was not providing vocational training, and so was not eligible for Pell Grant funding, was not arbitrary or capricious. 5 U.S.C.A. § 706; Higher Education Act of 1965, § 435(a), as amended, 20 U.S.C.A. § 1085(a); 34 C.F.R. § 600.10(d)(1). | The Pell Grant Program, 20 U.S.C. § 1070(a), is the largest federal student financial assistance program. Pell Grants are only awarded to eligible students at eligible postsecondary schools … | Is the Pell Grant Program the largest federal student financial assistance program offered to help financially needy students obtain undergraduate degrees and vocational training? | Education - Memo 268 C - H_L_6F56.docx | ROSS-002179350/ROSS-002173951 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 15095 | Stewart v. Dutra Barge Co., Smyrna Inlet Est., 134 So. 545 | 371+2901 | Power of taxation can be exercised only in pursuant to valid statute containing definite limitations (Cont. art. 9, § 3). | The Constitution provides that no tax shall be levied except in pursuance of law. Section 3, art. 9. Taxation is a legislative power, which cannot be delegated, and it can be exercised only in pursuance to a valid statute … | Is taxation a legislative power that cannot be delegated? | 044626.docx | LEGALEASE-00166813-LEGALEASE-00166814 | SA, Sub | 0.78 | | | 1 | 1 | |
| 15096 | People v. Barthow, 96 N.Y.2d 770 | 3.77T+23 | Distinct from harassment, menacing does not require any form of "physical contact," actual attempted or offered; rather, menacing simply requires an intent to place another person in "reasonable fear of physical injury." Penal Law § 120.14(1). | Crime of menacing does not require any form of "physical contact," as is required to establish offense of harassment. Menacing simply requires an intent to place another person in reasonable fear of physical injury by displaying a weapon or dangerous instrument. McKinney's Penal Law § 120.14, 240.26, subd. 1. | Does the crime of menacing require any "physical contact"? | 048785.docx | LEGALEASE-00107362-LEGALEASE-00107363 | Condensed, SA | 0.28 | | 1 | 0 | 1 | |
| 15097 | Marconi Broadcasting Corp. v. Halvorson, 102 Misc. 154 | 38+3 | All the pertinent authorities appear to hold, however, that the validity of a wage assignment is to be tested as of the date when the loan is made. | Validity of wage assignment is to be tested as of the date when loan was made. | How is the validity of wage assignments to be tested? | 06094.docx | LEGALEASE-00077684-LEGALEASE-00077685 | Condensed, SA | 0.93 | | 1 | 0 | 1 | |
| 15098 | Schmidt v. Cal One International, 245 F. Supp. 3d 532 | 237+1 | Defamation is tort involving the invasion of a person's interest in his or her reputation and good name. | Under Louisiana law, if any of the elements of the tort of defamation is lacking, the cause of action fails. | When does the cause of action in tort of defamation fail? | 06688.docx | LEGALEASE-00079161-LEGALEASE-00079162 | SA, Sub | 0.94 | | 0 | 1 | 1 | |
| 15099 | City of Flint v. Chesapeake & O. Ry. Co., 464 F. Supp. 423 | 148+1 | This Court is well aware that the power of eminent domain may never be applied by implication, and that the application of such power is "fraught with the possibility of abuse." | Power of eminent domain may never be applied by implication. | Can eminent domain be applied by implication? | 05350.docx | LEGALEASE-00080905-LEGALEASE-00080906 | Condensed, SA | 0.91 | | 1 | 0 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19100 | Rasgaitis v. Rasgaitis, 347 Ill. App. 477 | 134+49(2) | Defendant makes two principal points: (1) that the original complaint did not state a cause of action and hence could not be amended, inasmuch as it showed that plaintiff had lived and cohabited with her husband after the acts of cruelty charged in the first complaint and thus condoned the offense; (2) that the evidence in the case proved condonation. A careful analysis of the original complaint shows that it is not fatally defective.Cohabitation means the living together as husband and wife, People v. Burke, 400 Ill. 240, 79 N.E.2d 488, but does not necessarily imply sexual intercourse. Pearsons v. Pearsons, 282 Ill.App. 92; Cyc. Law Dictionary, 2nd edition; Bouvier's Law Dictionary, Baldwin edition. Defendant cites cases stating that "Cohabitation of husband and wife after the commission of acts of cruelty is regarded in law as a condonation of the act or acts previously committed." Moore v. Moore, 362 Ill. 177, 180, 199 N.E. 98, 99; Abbott v. Abbott, 192 Ill. 439, 61 N.E. 350; Youngs v. Youngs, 130 Ill. 230, 22 N.E. 806, 6 L.R.A. 548; Carlson v. Carlson, 308 Ill.App. 675, 32 N.E.2d 365. However, this rule thus flatly stated does not bring out all the aspects of condonation relevant in the instant case. | "Cohabitation" means the living together as husband and wife, but does not necessarily imply sexual intercourse. | What is cohabitation under incest laws? | 01627.docx | LEGALEASE-00081784-LEGALEASE-00081785 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 19101 | In re Estate of Peters, 171 Vt. 381 | 352H+59(2) | We reject entirely the notion that marriage creates any kind of implied "blanket consent to sexual contact." The distinction between marital and nonmarital criminal rape is based on archaic "common-law doctrines that a woman was the property of her husband." People v. Liberta, 64 N.Y.2d 152, 485 N.Y.S.2d 207, 474 N.E.2d 567, 573 (1984). "A married woman has the same right to control her own body as does an unmarried woman." Id. | Marriage does not create implied blanket consent to sexual contact so as to give rise to a presumption of consent in an action for sexual battery between spouses. | Does marriage create an implied consent to sex? | 00931.docx | LEGALEASE-00083690-LEGALEASE-00083691 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 19102 | Prichard Bros. v. Grady Co., 436 N.W.2d 460 | 388+352.16 | It is clear that bad faith is not equivalent to negligence. Bad faith requires a fraudulent intent. Florenzano v. Olson, 387 N.W.2d 168, 173 (Minn. 1986). Given the wording of the special verdict question, the jury easily could have been misled into believing that if Grady acted negligently (or without "honest judgment"), he was also acting in bad fait | In action brought by construction contractor against architect for damages arising out of delays in completion of school construction project, trial court's jury instructions and special verdict questions improperly commingled concepts of negligence and bad faith, as bad faith is not equivalent to negligence and requires finding of fraudulent intent. | Is bad faith equivalent to negligence? | 07092.docx | LEGALEASE-00089125-LEGALEASE-00089126 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 19103 | Truck Ins. Exch. v. Cartmill, 385 S.W.2d 277 | 413+8 | Defendant's 4th contention complains that the Trial Court should have disregarded the finding that another employee of the same class earned $20 per day, and entered judgment on the finding that $23 per week was a fair weekly wage rate. Plaintiff had not worked for as much as 210 days during the year preceding his injury, so the Trial Court submitted issues as to whether another employee of the same class as plaintiff had worked 210 days in similar employment, and if so such other employee's average daily wage. The jury found affirmatively as to another employee of the same class and found his average daily wage to be $20. The Trial Court computed its judgment on such basis. Defendant's real complaint is that plaintiff did not earn but approximately $100 the previous year. The burden was on defendant to show that plaintiff's wages could not be computed under Sub-sections 1 or 2 before resort may be had to Subsection 3, Art. 8309, V.A.T.S. Texas Employers' Ins. Ass'n. v. Ford, 153 Tex. 470, 217 S.W.2d 397. Moreover, workmen's compensation benefits are paid for disability rather than for actual earnings received. Federal Underwriters Exchange v. Rattler, CCA (n. r. e), 192 S.W.2d 942; Traders & Gen. Ins. Co. v. Nored, CCA (n. r. e.) 341 S.W.2d 492. | Workmen's compensation benefits are paid for disability rather than for actual earnings received. | What do workers compensation benefits pay or compensate for? | 02228.docx | LEGALEASE-00092114-LEGALEASE-00092115 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 19104 | Magnelli v. Com., Pennsylvania State Civil Serv. Comm'n, 55 Pa. Cmwlth. 531 | 307A+552 | It is the settled law of this Commonwealth that if at any stage of the judicial process a case is rendered moot, it will be dismissed. In re Gross, 476 Pa. 203, 382 A.2d 116 (1978); Temple University v. Department of Public Welfare, 30 Pa.Cmwlth. 595, 374 A.2d 991 (1977); Janet D. v. Carros, 240 Pa.Super. 291, 362 A.2d 1060 (1976). | A case will be dismissed if at any stage of the judicial process it is rendered moot for loss of standing. | Will a case that has been rendered moot be dismissed? | 10884.docx | LEGALEASE-00094313-LEGALEASE-00094314 | Order, SA | 0.68 | 1 | 0 | 0 | 1 | |
| 19105 | Hill v. Ricoh Americas Corp., 603 F.3d 766 | 25T+182(1) | The final consideration in waiver analysis is prejudice to the party opposing arbitration"the sixth Peterson factor. See Peterson, 849 F.2d at 468.Other circuits agree on the importance of showing prejudice as an element of waiver. See, e.g., Brown, 430 F.3d at 1013 ("[T]he delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis.") Com"Tech Assocs. v. Computer Assocs. Intern., Inc., 938 F.2d 1574, 1578 (2d Cir.1991) ("[T]he contractual right to arbitration has been waived because of the prejudice the opposing parties have suffered as a result of the defendants' delay in seeking arbitration."); Stone v. E.F. Hutton & Co., Inc., 898 F.2d 1542, 1544 (11th Cir.1990), (party waived right to arbitrate because "[s]ignificant prejudice to Plaintiff's legal position may be inferred from the extent of discovery conducted in this case"); see also Ian R. MacNeil, Richard E. Speidel, & Thomas J. Stipanowich, 2 Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act " 21.3.2 at 21:27 (1999) (describing prejudice as "The Key to Waiver"). | The final consideration in determining whether a party has waived its right to arbitration is prejudice to the party opposing arbitration. | Is prejudice to the party opposing arbitration the final consideration in waiver analysis? | 09922.docx | LEGALEASE-00095507-LEGALEASE-00095508 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 19106 | United States v. Wyncoop, 11 F.3d 119 | 146+2 | We stressed in Simas that when Congress enacted section 666, it intended to "protect federal funds by preserving the integrity of the entities that receive the federal funds rather than requiring the tracing of federal funds to a particular illegal transaction." 937 F.2d at 463. In this case, however, the defendant was employed by an entity that never received any federal funds under the loan programs. Trend College itself received only the indirect benefits associated with increased enrollment of students receiving private loans induced by federal guarantees to the private lenders. Thus, applying section 666 to defendant's misdeeds would not further the recognized purpose of section 666. | Under statute which proscribes stealing, embezzling, or obtaining by fraud money or property from entity that receives over $10,000 per year in benefits under a federal program, intent of Congress was to bring conduct that could have effect on administration or integrity of federal funds within ambit of federal criminal law, and Congress did not intend to make misappropriations of money from every organization that receives indirect benefits from a federal program a federal crime. 18 U.S.C.A. S 666. | Does the statute prohibiting federal funds bribery apply even in cases in which the federal funds cannot be traced to the project affected by the bribe? | 09426.docx | LEGALEASE-00096265-LEGALEASE-00096266 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19107 | Hossain v. Rauscher Pierce Refsnes, 46 F. Supp. 2d 1164 | 50+1 | In Kansas, a bailment involves the "delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it." M. Bruenger & Co. v. Dodge City Truck Stop, Inc., 234 Kan. 682, 685, 675 P.2d 864 (1984) (quoting 8 Am.Jur.2d, Bailments " 2). A "bailee" is the "person who receives the possession or custody of property under circumstances constituting a bailment." Id. A "bailor" is the "person from whom the property is thus received." Id. In this case plaintiff claims he was the bailor of the money he deposited with the defendants. For the reasons set forth below, plaintiff's bailment theory cannot withstand the defendants' motion to dismiss. | Under Kansas law, "bailee" is person who receives possession or custody of property under circumstances constituting bailment; "bailor" is person from whom property is thus received. | In a bailment who can be considered as a bailee? | 004502.docx | LEGALEASE-00116448-LEGALEASE-00116449 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 19108 | Price ex rel. Estate of Price v. City of Seattle, 106 Wash. App. 647 | 268+737 | The residents essentially argue that the City knew that a landslide was a substantially certain consequence of its failure to take preventive measures. But they have provided no authority for the proposition that an "act", as used in defining the elements of trespass, means a failure to act. Stated in terms of a failure to act, their trespass claim is no different from their negligence claim. Cf. Lewis v. Krussel, 101 Wash.App. at 183, 2 P.3d 486 (nuisance claim in case involving fallen trees, grounded in inaction, need not be considered separately from the negligence claim). As there is no evidence that the City acted to cause the landslide, the trespass claim also fails. | Failure of city, as owner of property located at top of bluff where landslide took place, to take measures to prevent landslide did not establish trespass claim by landowners whose property was damaged by landslide. | Can a failure to act fulfill the intentional act element required for a claim of trespass? | 000744.docx | LEGALEASE-00117509-LEGALEASE-00117510 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 19109 | Davidson v. Bugbee, 227 Mich. App. 264 | 13+61 | The period of limitation applicable to this action is six years from the date the cause of action accrued. M.C.L. " 600.5813; M.S.A. " 27A.5813. A cause of action accrues when all the elements of the claim have occurred and can be alleged in a proper complaint. Lumley v. Regents for the Univ. of Michigan, 215 Mich.App. 125, 130, 544 N.W.2d 692 (1996). A cause of action for conversion accrues when dominion is wrongfully asserted over another's personal property. Miller v. Green, 37 Mich.App. 132, 138, 194 N.W.2d 491 (1971). | Cause of action accrues when all the elements of claim have occurred and can be alleged in proper complaint. | Is a cause of action fundamental to tort law? | 005783.docx | LEGALEASE-00124844-LEGALEASE-00124845 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 19110 | Coast Range Conifers v. State ex rel. Oregon State Bd. of Forestry, 339 Or. 136 | 148+2.1 | Plaintiff would have us blur, if not obliterate, those well-established distinctions and apply the same legal test to governmental regulations that the court has applied to physical invasions of land. Plaintiff's proposed rule fails to take into account the different character of regulatory action. As the court concluded in Suess Builders v. City of Beaverton, 294 Or. 254, 259, 656 P.2d 306 (1982), and reaffirmed in Dodd, 317 Or. at 182 n. 12, 855 P.2d 608, "[r]egulation in pursuit of a public policy is not equivalent to taking for a public use, even if the regulated property is land." To be sure, government may exercise regulatory authority in a way that is tantamount to a public appropriation of private property. Suess Builders, 294 Or. at 259 n. 5, 656 P.2d 306. But, for the purposes of Article I, section 18, we decline to treat regulation of property and physical invasion of property as if they were the same. | For purposes of provision of state constitution prohibiting taking of private property for public use without just compensation, the Supreme Court would decline to treat regulation of property and physical invasion of property as if they were the same. West's Or.Const. Art. 1, S 18. | Is regulation in pursuit of a public policy equivalent to taking for a public use? | 017716.docx | LEGALEASE-00127772-LEGALEASE-00127773 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 19111 | In re Spree.Com Corp., 295 B.R. 762 | 366+35 | Under Pennsylvania law, the doctrine of subrogation is an equitable one, regardless of any contractual provision. Zurich"American Insurance Co. v. Eckert, 770 F.Supp. 269, 272 (E.D.Pa.1991) (citing Associated Hospital Service v. Pustilnik, 497 Pa. 221, 439 A.2d 1149 (1981)). I must disagree with Tesler's assumption that the Venture Capitalists or the Hartford have automatically become subrogated to his claim by payment of his legal fees. To the contrary, subrogation is not self-executing. Rather, it is a right which must be pursued with "reasonable diligence" by the alleged subrogee or lost. Boeing Helicopters v. Workers' Compensation Appeal Board, 713 A.2d 1181, 1186 (Pa.Commw.1998). Moreover, a claimant may avail itself of the remedy of equitable subrogation only after showing: (1) the claimant paid the creditor to protect his own interests; (2) the claimant did not act as a volunteer; (3) the claimant was not primarily liable for the debt; i.e., is only secondarily liable; (4) the entire debt has been satisfied; and (5) allowing subrogation will not cause injustice to the rights of others. See e.g., Tudor Development Group, Inc. v. U.S. Fidelity & Guar. Co., 968 F.2d 357, (3d Cir.1992) (citations omitted). | Under Pennsylvania law, subrogation is not self-executing, but is right which must be pursued with reasonable diligence by the alleged subrogee or it is lost. | Is subrogation self-executing? | 043288.docx | LEGALEASE-00128192-LEGALEASE-00128194 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 19112 | Gladden v. Thurmond, 77 S.W.2d 703 | 307A+501 | A plaintiff has a legal right at any time to take a nonsuit and dismiss the cause of action asserted by him.And this holds true even though an appeal is pending from an interlocutory order overruling a plea of privilege. The district court did not err, therefore, in granting the plaintiff's motion to take a nonsuit. Article 2182, Revised Civil Statutes of Texas (1925); Atlantic Oil Producing Co. v. Jackson, 116 Tex. 570, 296 S. W. 283. | Plaintiff may at any time take a nonsuit and dismiss the cause of action asserted by him. Vernon's Ann.Civ.St. art. 2182. | Does the right to dismiss an action rests with the plaintiff? | 025017.docx | LEGALEASE-00129354-LEGALEASE-00129355 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 19513 | State v. Jackman, 60 Wis. 2d 700 | 371v2100 | The issue here is the meaning of the words "known free... without any tax, impost or duty." In respective law, impost is a tax generally recognized that charges enacted in the exercise of the police power are not "taxes" and are not subject to constitutional limitations which apply to the exercise of the power to tax. Cooley, Taxation (4th ed.), Vol. 1, p. 94, sec. 26; Vol. 4, pp. 3509-3516, sec. 1784, 1786; Merrill v. State (1875), 38 Wis. 428, 20 Am Rep. This court has made a distinction between taxes and fees. A tax is one whose primary purpose is to obtain revenue, while a license fee is one made primarily for regulation and whatever fee is provided is to cover the cost and the expense of supervision or regulation. State ex rel. Attorney General v. Wisconsin Constructors, Inc. (1936), 222 Wis. 279, 268 N.W. 238. Fitch v. Wisconsin Tax Comm. (1930), 201 Wis. 383, 230 N.W. 37. The words "tax," "duty" and "impost", as used in the Wisconsin Constitution, are used in a narrow sense of monetary transportation for the use of the waterway. The navigable waters could not be diverted from common highway into a "toll road" by the state. The history of the origin of the language used in the grant of the state of Virginia to the United States and its inclusion in the Northwest Ordinance supports this view. The commercial use of the internal waterway of Wisconsin was foremost in the minds of the territorial citizens and the delegates at the Constitutional Convention of 1846 and 1848 and they included the navigable water clause in our constitution. Wisconsin is the only state which were formed out of the Northwest Territory which has done so. See Wisconsin Legislative Council Staff Report to the Judiciary Committee on the Navigable Waters Provision in the Wisconsin Constitution, p. 15 | What is the primary purpose of a tax? | Taxation - Memo 8 181 C-Mc.docx | RCGS.00109021 RCGS-00108024 | Condensed_SA | 0.92 | 0 | | 1 | 1 | |
| 19514 | Revere v. Oppenheimer & Co., 862 F. Supp. 1230 | 25T v121 | Where the Court initially considered defendant's motion on September 21, 1993, in its unpublished decision the decision affirmed by the United States Court of Appeals for the Third Circuit in Barrowclough, Kidder, Peabody & Co., Inc., 752 F.2d 923 (3d Cir 1985). In that case, the Third Circuit held that "claims of statutory violation can be brought in a federal court notwithstanding an agreement to arbitrate." Id. at 939. In so holding, the Third Circuit distinguished the statutory ERISA claims from contractual claims, and based its holding on the conclusion that "ERISA neither completely supplants nor is completely supplanted by arbitration." Id. Accordingly, this Court denied defendant's motion to compel arbitration of the statutory ERISA claims. | Does Employee Retirement Income Security Act (ERISA) completely supplants or completely subordinate to arbitration? | 00755b.docx | LEGALEASE-00135827-LEGALEASE-00135828 | Condensed_SA | 0.49 | 0 | | 1 | 1 | |
| 19515 | Bennett Dairy v. Putney, 44 A.D.3d 1010 | 289v638 | Bennett Dairy, a partnership, alleged in its complaint that it was the authorized principal of Claude L Bennett who executed a contract with defendant for defendant to erect a silo on the Bennett farm. Bennett was required to have plaintiff's approval to which the silo could be placed. Although the foundation was built, defendant never erected the silo. Special Term incorrectly dismissed the complaint on the ground that plaintiff lacked capacity to sue. A partner is the agent of the partnership and his acts may be adopted and enforced by the partnership as its own (Partnership Law, section 26). Since a partnership is not a legal entity separate from the concerns of the agent (Kelly A.B. Co. v. Barber A.P., 231 N.Y.68, 70, 105 N.E. 88; B. Sper A.G. B.E. Construction Corporation, 227 App Div. 60, 226 N.Y.S. 527; 8 warren's Heaton and Descedent Company v. American Appraisal Co., 156 App Div. 795, 142 N.Y.S. 89). | Can an agent's acts be adopted and enforced? | 04215b.docx | LEGALEASE-00136852-LEGALEASE-00136853 | Condensed_SA | 0.89 | 0 | | 1 | 1 | |
| 19516 | Innis Roberts Const. Co., 441 B.R. 512 | 371v2005 | In addition, Virginia courts strictly construe the power to tax. In Tabbs, the plain construes stated "taxation reposition may be assessed against the government, and in favor of the citizen, and are not to be extended beyond the clear import of the language used. When ever it is just a matter of doubt as to whether a tax is imposed from his burden." 220 B.R. at 564 (citing City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)). The clear import of section 58.1 394(12) is to create a lien in the assessed value of all of the debtor's property. Therefore, the Code of Virginia does not give the trustee any authority to enforce the property tax against the government by asserting taxes against the Debtor's motor vehicles. | Should courts strictly construe the power to tax? | 03341S.docx | LEGALEASE-00160388-LEGALEASE-00160389 | Condensed_SA | 0.93 | 0 | 1 | 0 | 1 | |
| 19517 | Gartaux v. Andrew, 43 Vir. 3079v74 | 3079v74 | After a deposition is filed, the magistrate taking it has no right or authority to change its contents at his own instance. In this case, the court in their discretion may grant leave to amend the caption so as to correspond with the facts as they appeared at the time of taking the deposition, and to affirm and ordain the leave, and although it is not stated in the reasons given by the court it will be presumed that the court found the correction made without approval of the amendment, and it is presumed the court did approve of it, from the fact that the deposition was admitted. | "After a deposition has been filed in court, is it still proper to allow the magistrate that took it to amend its caption thereon, so as to conform to the facts?" | 03610.docx | LEGALEASE-00141292-LEGALEASE-00141293 | Condensed_SA_Sub 0.7 | 0.7 | 0 | 1 | 0 | 1 | |
| 19518 | Rimel v. Uber Techs., 246 F. Supp. 3d 1157 | 95v144 | As the Magistrate Judge noted, in choosing a choice of law provision, the "the last contractual court's apply the choice of law rules of the forum state." Louis v. Uber Tech., inc., No. 3-16-cv-1666-1 (D.Cal. 2016) WL 6304, 2016 WL Vol. 3, No 4, 2016). In the absence of a choice of law provision, the lock cos contractual doctrine applies. Section, Mass. Gen. Law's ch., 5.514.354 (128, 1235 (11th Cir. 1999). Under that doctrine, a contract is governed by the law of the state in which the contract is made or is to be performed and the underlying Arbitration Provision in Florida. Therefore, the Magistrate Judge correctly found that Florida law applies to the Arbitration Provision. | Under what law is the performance of a contract governed? | 00924.docx | LEGALEASE-00155866-LEGALEASE-00155887 | Condensed_SA | 0.71 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 19119 | Patino v. La Prada, 524 F.2d 862 | 21+9 | Defendant's attack the expert's affidavits as evidence because not based on personal knowledge as required by Federal Rule of Civil Procedure 56(e). The policy behind Rule 56(e) is "to allow the affidavit to contain all evidentiary matter which, if the affiant were in court and testifying on the witness stand, would be admissible as part of his testimony." 6 J. Moore, Federal Practice ¶ 56.22[1], at 2812 (2d ed. 1976). Opinion testimony that would be admissible at the actual trial may be submitted in an affidavit. Id. at 2812-13. The opinions of Patino's experts based on relevant hypothetical facts supplied by her could would be admissible at trial if the facts were supported by the evidence. See Fed Rules of Evidence in 70-61 (1975). More important, here, the affidavits are submitted to support the grant of summary judgment, opinion evidence is appropriately considered to support the existence of a disputed issue of fact. | Opinion testimony that would be admissible at the actual trial may be submitted in an affidavit. | Can opinion be included in an affidavit? | Affidavits - Memo 7.7_1513fag50z56nsvkAHAC7Pc#arizpA1EHT.dicx.docx | RO5S-000000239-RO5S-0000000240 | Condensed, SA | 0.9 | 0 | | 1 | 1 | 1 |
| 19120 | Stradomelia & Wheeling Traction Co. v. Brandon, 87 Ohio St. 187 | 3560+21.1 | A street railway company operating cars on a public street in a much frequented part of a city has not the right to operate its cars in street crossing in a negligent, careless reckless manner or at an unreasonable rate of speed without warning of approach, thus throwing all the burden of care and watchfulness to avoid accidents upon drivers of smaller vehicles seeking to cross, but it's duty is to maintain proper control of the car in order to be able to stop or check the same if necessary to avoid accident. The driver of a horse and wagon at such street crossing has equal rights with the company in the street and across the crossing, the driver in crossing making due allowance for the fact that the car is much greater than a horse track, and since of its greater weight, being less easy to check or stop than the smaller vehicle. | Team driver at crossing has equal rights with street car, and motorman should so control car as to be able to stop if necessary to avoid accident. | Can the driver of horse and wagon have equal rights with the company in the street? | Highways- Memo 42.4- 16_615994.docx | RO5S-000291213 | Condensed, SA, Sub 0.81 | | 0 | | 1 | 1 | |
| 19121 | Univ. of Colorado Through Regents of Univ. of Colorado v. Derdeyn, 863 P.2d 929 | 349+78 | Because suspicionless drug testing of intercollegiate student athletes in this context is reasonable, CU's drug testing program is constitutionally permissible. Even were I to agree, however, that a drug testing program based on no individualized suspicion was unreasonable in this context, such a search nevertheless could be constitutionally permissible based on the valid consent of the student athletes. It is therefore necessary to examine the question of the student athletes' consent in this case. | State university did not obtain valid consents from student athletes for suspicionless drug testing, for purpose of determining whether testing was unconstitutional search, where athletes consent to condition of participation in intercollegiate athletics at university; consent were coerced, in that there could be no participation in athletics without signed consent. U.S.C.A. Const.Amends. 4, 14; West's C.R.S.A. Const. Art. 2, § 7. | Is suspicionless drug testing of student athletes constitutionally permissible? | 010824.docx | LEGALBASE-00156174- LEGALBASE-00156175 | Condensed, SA, Sub 0.13 | | 0 | | 1 | 1 | |
| 19122 | Marshall v. Staley, 328 P.2d964 | 83J+481 | The executor claims that there was no consideration for the assignment of the note, We disagree. The record indicates that there was a very close family relationship between the decedent and the defendants. The love and affection between them, as shown by the record, was sufficient consideration to support the assignment of the note from decedent to defendants, Deeley v. Deeley, v Estate, 60 Colo. 71, 152 P. 1171. | Love and affection between decedent and his stepdaughters was sufficient consideration to support assignment of note from the decedent to his stepdaughters. | Is it necessary for an assignment to be supported by consideration? | 003094.docx | LEGALBASE-00158216- LEGALBASE-00158217 | Condensed, SA, Sub 0.62 | | 0 | | 1 | 1 | |
| 19123 | In re Estate of Lash, 329 N.J. Super. 249 | 217+1001 | Here, there is no statutory authorization for an award of attorney fees in action of this type. Moreover, our review of the court rules discloses no basis for such an award. R. 4:42-9(a)(6) authorizes the award of attorney fees in favor of a successful claimant in an action upon either a liability or indemnity policy of insurance; however a surety bond is not considered either a liability or an indemnity insurance policy. Eagle Fire Protection Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 361-65, 678 A.2d 699 (1996) (holding that R. 4:42-9(a)(6) does not encompass a labor and material payment bond); Fergus Surety, 156 N.J. Super at 347, 383 A.2d 1176 (holding that R. 4:42-9(a)(6) does not include a guardian's bond. | A surety bond is neither a liability or an indemnity insurance policy | Are surety bonds considered a insurance policy? | Insurance - Memo 53- 5M_04160.docx | RO5S-000299882-RO5S-000299883 | Condensed, SA | 0.9 | 0 | | 1 | 1 | |
| 19124 | HC Health Servs. v. D & K Mgmt., 2003 UT 5, 73 P.3d120 | 15+S2.10(2) | " 3 Waiver is an intentional but dependent question, requiring a trial court to determine whether a party has intentionally relinquished a known right, benefit or advantage. Soter's, 837 P.2d at 560. To determine whether a waiver occurred, we held in Soter's that "a fact finder need only determine whether the totality of the circumstance," warrants the inference of relinquishment." See id. at 562 (internal citation omitted). Although "any waiver "must be distinctly made ... it may be express or implied," " Id. (citing (citing Phoenix Ins. v. Heath, 90 Utah 187, 61 P.2d 308, 311 (1936)). Soter's established this test is the only one in waiver cases, moving away from many of our earlier rules which were perhaps more narrow and restrictive in their application, and did not apply consistently. Id. at 559 n2. | Although any waiver must be distinctly made, it may be express or implied | Should waiver be distinctly made? | 018312.docx | LEGALBASE-00162263- LEGALBASE-00162264 | Condensed, SA | 0.91 | 0 | | 1 | 1 | |

3368

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19135 | Commonwealth v. Packer, 168 A.3d 161 | 203>530 | A killing perpetrated with malice differentiates murder from all other homicides. [long opinion text] | A killing perpetrated with malice differentiates murder from all other homicides. | Does killing with malice differentiate murder from all other homicides? | 03389.docx | LEGAL-KAE-00160500 LEGAL-KAE-00160501 | Condensed, SA | 0.95 | | | | 1 | |
| 19136 | People v. Pavlham, 249 Cal. App. 2d 941 | 353H>112 | Appellant further contends that section 220 of the Penal Code [enacted in 1872] is concerned broadly with assault. [long opinion text] | Intoxication and impotency of defendant at time of alleged assault with intent to rape are not defenses to the crime although they are factors that may be considered in determining whether defendant had the requisite intent. West's Ann.Pen.Code, § 220. | Is impotency a defense for rape? | Sex Offence - Memo 3 RK_5767S.docx | ROSS-003281317-ROSS-003281318 | SA, Sub | 0.8 | | | | | 1 |
| 19137 | Harris v. Elsterbrook, 226 N.W. 791 | 83E>481 | The appellant acquired title to the note by the transfer without indorsement. [long opinion text] | Assignee of note acquires title by transfer without indorsement (Rev. Code 1919, § 1733). | Can a person acquire title to a note if it is without indorsement? | Bills and Notes - Memo 1440 - RK_6449B.docx | ROSS-003281327 | Condensed, SA, Sub | 0.89 | | | | | 1 |
| 19138 | FDT/Mfg. Co. v. Long Lane, Motion Tr. IV, 169 S.W.2d 402 | 83E>402 | While registration or assignment can change ownership of a promissory note [long opinion text] | Negotiation or assignment can change ownership of a promissory note. | Can the ownership of a promissory note be changed by assignment? | Bills and Notes-Memo 1084-R_6005R.docx | ROSS-003281783-ROSS-003281784 | Condensed, SA | 0.88 | | | | 1 | |
| 19139 | Riverside-Quintana Bond & Loan Ltd. v. Continental Eng'g Mfg. Corp., 121 S.W.3d 531 | 30>1 | In all appeals, this Court is required to examine its jurisdiction sua sponte. [long opinion text] | The right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists. | If there is no statutory right to appeal, can a right to appeal exist? | Appeal And Error - Memo 1 - BF.docx | ROSS-003284064-ROSS-003284065 | Condensed, SA | 0.64 | | | | 1 | |
| 19130 | In re Steiner, 459 B.R. 748 | 253>837 | Debtors assert that, because AAA Policy 921 premiums have been paid with community property since the Debtor's marriage [long opinion text] | Under California law, if one spouse can show that value of separate property increased in value in community property. | Will separate property become community property if it is improved using community property? | Marriage and Constitution Memo 41_JS.docx | ROSS-003287304-ROSS-003287305 | SA, Sub | 0.84 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 19131 | Howse v. United States, 99 Fed.Cl. 242 | 34+50(6) | Where a member of the military resigns or retires, his decision is presumed to be voluntary. Sammt v. United States, 93 F.3d 1165, 1170 (Fed.Cir.1996); Tippett v. United States, 185 F.3d 1250, 1255 (Fed.Cir.1999); Moyer v. United States, 58 Fed.Cl. 522, 544 (2003). It is a plaintiff's burden to demonstrate otherwise, essentially showing that his decision was not freely made. That proof may consist of evidence that the resignation or retirement: (i) resulted from deception or misrepresentation by a government official, Moyer, 58 F.3d at 1320; Scharf v. Dept. of the Air Force, 710 F.2d 1572, 1574 (Fed.Cir.1983); (ii) was made while "the claimant [was unable] to understand the voluntariness of his action due to mental incapacitation," Manzo v. United States, 41 Fed.Appx. 408, 410 (Fed.Cir.2002) (citing Scharf, 710 F.2d at 1574); (iii) "[was] procured through duress or coercion. Tippett, 185 F.3d at 1255; Christie v. United States, 518 F.2d 584, 587 (Ct.Cl.1975). The presumption of voluntariness is not rebutted by showing that the severance member faced a extremely difficult situation, or where his choice was limited to one of two unpleasant alternatives." Id (choice, as is quotation marks omitted); Sykes v. Dept. of Labor, 758 F.2d 591 (Sentenc., II dissenting); see also Dorrah v. Dept of Army, 305 F.3d 1375, 1381 (Fed.Cir.2002); Covington v. Dept of Health & Human Servs., 750 F.2d 937 941 (Fed.Cir.1984). Under this view, a resignation is deemed voluntary even where offered to avoid a court-martial or other service discipline. | Where a member of the military resigns or retires, his decision is presumed to be voluntary, for purposes of invoking Military Pay Act, 37 U.S.C.A. § 204. | Who has the burden of proving otherwise that a decision to resign or retire was not voluntary? | Armed Services - Memo 139 - IS.docx | ROSS-003280974-ROSS-003280977 | SA.Sub | 0.9 | 0 | | | 1 | |
| 19132 | Crest Const., Co. v. Insurance Co. of North America, 417 F.Supp. 564 | 289+50 | The essential element of both a partnership and a joint adventure is the same, participation in both profits and losses by all members. In order for an association to constitute a joint adventure it is necessary that the parties agree to share both in the profits and losses of the enterprise. The absence of an express agreement to share in the losses is, however, not fatal. An agreement to share losses may be implied from an agreement to share in profits. 48 C.J.S. Joint Adventures s. 2. Cf. Tulsa County Truck & Fruit G. Assn v. McMurphey, 185 Okl. 132, 90 P.2d 1075 (1939). Also Engine And Machine Works, Inc. v. Able, 300 P.2d 77 (Okl.Cr. 1962). The rule regarding partnerships is similar. It is essential to the partnership relationship that the partner share both in the profits and losses of the enterprise. Whitney v. Harris, 169 Okl. 288, 36 P.2d 872 (1934). However, it is not necessary to the partnership relationship that there be an express agreement to share in the losses. Such an agreement may be implied from the intent of the parties to form a partnership is otherwise made clear. Cf. Municipal Paving Co. v. Herring, 50 Okl. 470, 150 P. 1067 (1915); Chowning v. Graham, 74 Okl. 232, 178 P. 676 (1918). | It is not necessary to partnership relationship that there be an express agreement to share the losses; such an agreement may be implied from an agreement to share profits in a partnership? | Can an agreement to share losses be implied from an agreement to share profits in a partnership? | Partnership - Memo 145 - RK.docx | ROSS-003280451-ROSS-003280452 | Condensed_SA | 0.83 | 0 | 1 | | | |
| 19133 | Lewis v. Mississippi State Bar, 436 So. 2d 781 | 115+11 | We likewise re-affirm the proposition that the practice of law is a privilege, not a property right, and a revocable privilege at that. In Re Poole, 222 Miss. 678, 686, 75 So.2d 856, 833 (1955). Mississippi State Bar v. Attorney Respondents, 367 So.2d 179, 183 (Miss.1979). We also reiterate that a valid due process requires that, before either may be deprived of the privileged of practicing law, temporarily or permanently. Dempsey M. Levi and Earl L. Denham each has a right that the Mississippi State Bar persuade this Court by clear and convincing evidence that each has been guilty of "misconduct" as defined in Supervisory Rules 1"(O)(A)(H) and (H) and of violating a Mandated in violation of his oath prescribed in Section ... | Practice of law is revocable privilege, not a property right? | Is the practice of law a revocable privilege or a property right? | Property - Memo 17 - IS.docx | ROSS-003280910-ROSS-003280904 | Condensed_SA | 0.92 | 1 | | | | |
| 19134 | Marquez v. Rapid Harvest Co., 1 Ariz. App. 562 | 413+1 | Application of the rule ("inclusio unius est exclusio alterius") to the Act's conspicuous silence regarding compensation forms at the legislative recognition of the constitutional limitation. In fact they seem to be strangers to the Act. There is no mention of rights, duties or procedures relating to compensees, nor is there any provision for their contribution to the fund, therefore entitling them to insurance benefits under the Act. The benefits of the Compensation Act accrue to those who undertake to burden themselves. Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913, 918 (1950). The defendant does not assume a business and is not entitled to its benefits. There is no specific extension of gratuitous protection to compensees for their own benefit. Marx v. Kelley's, 130 So.Ct. 650, 44 S.2 d 634, 641 (1947). In the absence of a clear expression to the contrary, public policy favors continuance of tort for common-law rights and duties of fellow employees as a deterrents to careless or negligent conduct. Tweney v. Kirkhart, supra. | The benefits of the Workmen's Compensation Act undertake to burden, A.R.S. § 23-901 et seq. | To whom do the benefits of the Workmen's Compensation Act accrue? | Workers Compensation - Memo #182 AMC.docx | ROSS-003250682-ROSS-003250683 | SA.Sub | 0.89 | 0 | | 1 | | |

1370

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 23,876 | 9,073 |
| 19135 | State ex rel. Gurley v. Hostetter, 343 Mo. 1090 | 831+481 | Another assignment in cause's brief is that the correct respondent's opinion is in conflict with Sec. 2465, R.S. Mo. 1929, Mo. St. Ann. 7 2465, p. 665. That section on negotiable instrument law provides that a restrictive indorsement either (1) prohibits the further negotiation of the instrument, or (2) constitutes the indorsee the agent or the trustee for the indorser … | The Uniform Negotiable Instruments Act does not prevent the transfer of a negotiable non-negotiable instruments assignment, Mo.St.Ann. § 2420 et seq., p. 665 et seq. | Can a negotiable or non-negotiable instrument be transferred by assignment? | Bills and Notes -Memo 482-0 Re.docx | ROS5-00329683 & ROS5-00329684 | Condensed, SA | 0.88 | | 1 | | 1 | |
| 19136 | In re Greenfield Direct Response, 171 B.R. 848 | 65+2 | The word "agent" is broader than the word "broker" and more comprehensive in its legal scope, while every broker is in a sense an agent, every agent is not a broker, Mitchell, Lewis & Staver Co. … | Under Illinois law, word "agent" is broader than word "broker," and more comprehensive in its legal scope; while every broker is in a sense an agent, every agent is not a broker. | Can a broker be considered as an agent? | Principal and Agent -Memo 41's PE_6579A.docx | ROS5-00293859 & ROS5-00293860 | SA, Sub | 0.7 | | | 1 | 1 | |
| 19137 | Mathis v. State, 443 S.W.3d 391 | 110+134 | A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of another person, by any means, without the person's consent. Tex. Penal Code § 22.011(a)(1)(A) … | Bodily injury assault was not lesser included offense of sexual assault, and thus defendant was not entitled to jury instruction on bodily injury assault as lesser included offense … | Is bodily injury an element of sexual assault? | Sex Offenses - Memo 21 RE_6752 5.docx | ROS5-00297716 & ROS5-00297719 | Condensed, SA, Sub | 0.36 | | 1 | 1 | 1 | 1 |
| 19138 | Rosem v. State, 960 So. 2d 1215 | 211+1723 | This court has held that when conduct occurs as described in the statute, the question of whether the acts were committed by stealth or by force is one of fact. State v. Mitchell, 624 So.2d 859, 860 (Fla. 5th DCA 1993) … | Under statute on lewd and lascivious molestation, lewdness must be determined case-by-case basis and may be inquired from circumstances. West's F.S.A. § 800.04(5, 6). | Can lewdness be imputed from the circumstances? | Sex Offenses - Memo 82 RE.docx | ROS5-00330218 & ROS5-00330219 | SA, Sub | 0.88 | | | 1 | 1 | |
| 19139 | Branch v. United States, 69 F.3d 1571 | 83I+481 | And it is further contended that there was a sufficient transfer, in that the conveyance itself by its terms operated as such. It is held that the title to a note may be transferred by a separate writing. Goddard v. Perkins … | The title to a note may be transferred by a separate writing. | Can the title to a note be transferred by a separate writing? | Bills and Notes _59408.docx | ROS5-00317949 | Condensed, SA | 0.83 | | 1 | | 1 | |
| 19140 | Branch v. United States, 697 3d 1571 | 148v2.9 | The seizure and closure of the bank, once the bank became insolvent, did not constitute a taking as it was established that it would. It was a taking of the government to close a receiver to appoint a receiver to take control of the bank's assets … | Government seizure and closure of bank once bank became insolvent did not constitute taking under Fifth Amendment. U.S.C.A. Const.Amend. 5. | Does the seizure of bank constitute a taking? | Eminent Domain - Memo 210 - GP.docx | ROS5-00331074 & ROS5-00331077 | Condensed, SA, Sub | 0.83 | | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19141 | Bell Atl. Corp. v. Twombly, 550 U.S. 544 | 29T+972(4) | All that the Federal Rules of Civil Procedure require of a complaint is that it contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed.R.Civ.P. 8(a)(2), see Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Ordinarily, the sufficiency of a complaint is tested by a motion br2ought under Rule 12(b)(6), which tests whether a plaintiff has properly stated a claim. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). But if the failure to state a claim is patent, "it is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources" for the court to act on its own initiative and dismiss the action. Jaeger v. United States, 2006 WL 1518938, (D.D.C. May 26, 2006) (citing Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C.Cir.1990) (per curiam) (noting that a "district court may dismiss a complaint sua sponte for failure to state a claim if it is patently obvious that the plaintiff cannot prevail")). Applying these general standards to a " 1 claim, stating a claim requires a complaint with enough factual matter to suggest an agreement. Ali v. Rumsfeld, 649 F.3d 762 (D.C.Cir.2011) (affirming dismissal under 12(b)(6) when the plaintiff brought suit under a 1790 statute that did not contain a private cause of action under the circumstances alleged). | Stating a claim under Sherman Act's restraint of trade provision requires a complaint with enough factual matter, taken as true, to suggest that an agreement was made; asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage, but simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. Sherman Act, S 1, 15 U.S.C.A. S 1. | What is the legal standard to state a claim? | Neutrality Laws - Memo 2 - SB.docx | ROSS-003311963-ROSS-003311964 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 19142 | John Hancock Mut. Life Ins. Co. v. Fid.-Baltimore Nat. Bank & Tr. Co., 212 Md. 506 | 8.30E+10 | Some of these are: (1) That the law relating to what law governs contracts in general is applicable, so far as general principles are concerned; (2) that there is considerable conflict in the decisions relating thereto; (3) that general statements in the decisions should be controlled by the specific statements of law in regard thereto; (4) that an ordinary negotiable instrument often includes many contracts, each several signature-as maker, drawer, acceptor, guarantor, surety or indorser-being a separate contract; (5) and that each separate contract may bring into question a different place and law, since each contract involves a place of contract and a place of payment which may be governed by different laws. In like manner, one law may determine the validity of a contract, while other laws regulate its form or construction or the steps to be taken for its maintenance or enforcement. 10 C.J.S., Bills and Notes, " 47. It seems generally to be conceded that the proper law governing a bill or note is the law which the parties to the instrument intended to govern. Accordingly, if the bill or note contains express provisions that it shall be governed by the laws of a particular state, those laws govern. | Generally, law governing a bill or note is the law which the parties to the instrument intend to govern, and, therefore, if bill or note contains express provision that it shall be governed by laws of a particular state, such laws will govern. | Which is the law that governs the bill? | Bills and Notes - Memo 1392 - JK_64833.docx | ROSS-003322178-ROSS-003322179 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 19143 | In re Kizzee-Jordan, 626 F.3d 239 | 366+27 | "Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other." Tex. Ass'n of Sch. Bds., Inc. v. Ward. Texas recognizes three types of subrogation: equitable, contractual, and statutory. When a statute provides a subrogation right, its nature is governed by the terms of the statute creating the right. In this case, Tax Ease has been granted general statutory subrogation rights that include any rights held by the taxing authorities. The fact that the Texas legislature also chose to grant third-party lenders specific rights different from the taxing authorities does not change the fact that the lenders are subrogated, nor does it change the nature of the underlying debt as a tax debt. If we adopted the Thompsons' argument we would effectively read the subrogation provision out of the statute. | Texas recognizes three types of subrogation: equitable, contractual, and statutory. | How many types of subrogation are recognized? | Subrogation - Memo 183 - ANG C.docx | ROSS-003324316-ROSS-003324317 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 19144 | Sanson Four Rentals v. Faulk, 803 So.2d 1048 | 38+31 | An assignment of right is a species of sale and is treated as such in our Civil Code. Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956); Alco Collections, Inc. v. Poirier, 95"2582 (La.App. 1st Cir.9/27/96), 680 So.2d 735; writ denied, 96"2628 (La.12/13/96), 692 So.2d 1067. The warranty against eviction is implied in every sale. La. C.C. art. 2505. The seller of an incorporeal right does not merely warrant its existence at the time of sale, but warrants also against eviction. Tomlinson v. Thurmon, 189 La. 959, 181 So. 458 (1938). Eviction is the loss suffered by the buyer occasioned by the right or claims of a third person. La. C.C. art. 2500; Huckabay v. Keahey, 600 So.2d 97 (La.App. 2d Cir.1992). A seller is liable for an eviction that is occasioned by his own act. La. C.C. art. 2503. | An assignment of right is a species of sale and is treated as such in the Civil Code. | Is assignment a species of sale? | 000085.docx | LEGALEASE-00115497-LEGALEASE-00115498 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 19145 | Pool v. Sneed, 173 S.W.2d 768 | 38+1 | In Hight v. Sackett, 34 N.Y. 447, 451, on the admissibility of certain testimony, it became necessary for the court to determine whether a legatee was an assignee within the meaning of a New York statute. The Court said: "An assignment can in no just sense be said to be made by a dead man, nor can it properly be said that one who receives a legacy takes as assignee. The instrument is without life until the death of the giver, and nothing is received by the beneficiary until the giver has ceased to possess the power to bestow. The two parties do not co-exist for an instant. The idea of an assignment is essentially that of a transfer, by one existing party to another existing party, of some species of property or valuable interest." | An assignment cannot be made by a dead man, and a legatee is not an "assignee", but an "assignment" is a transfer by one existing party to another existing party of some valuable interest. | Can assignments be made by a dead man? | 000104.docx | LEGALEASE-00115608-LEGALEASE-00115609 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WVHSS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 15146 | People v. Peteed, 316 Mich. App. 450 | 181+4 | Applying those rules to the instant matter, we conclude that MCL 168.879 does not violate the separation of powers doctrine. Our chief inquiry "is, simply, the meaning of MCL 168.937 as briefly ascertained by reference to the common law. Noble, 238 Mich App at 652, 608 NW 2d 123. "The common law definition of "forgery" is "a false making of any written instrument for the purpose of fraud and deceit." People v Noble, 255 Mich App, 38, 42 n. 2, 662 N.W.2d 29 (2003) (citation and quotation marks omitted). Thus, it is not unconstitutionally vague. Additionally, MCL 168.937 is unambiguous for similar reasons and does not employ a firm indication of the Legislature's intent. As stated earlier, "[t]he Michigan election law ... was enacted for the stated purpose of, among other things, regulating primaries and elections, providing for the "purity" of elections and guarding against abuses of the elective franchise." Hare v Berrien, 181 Mich App 378. Therefore, MCL 168.937 does not violate the rule of lenity either. | The common-law definition of "forgery" is "a false making of any written instrument for the purpose of fraud and deceit." | What is forgery under common law? | 000120.docx | LEALEASE-00115645-LEALEASE-00115646 | Condensed, SA | 0.9 | 0 | | 1 | 1 | 1 |
| 15147 | Dicks v. O'Callaghan, 2012 IL App (1st) 111505 | 277+1 | 513 Finally, we note that at but one of the claims O'Callaghan raised in his motion to quash his "special appearance" identifying the particular claim in his "section (7.842) petition" are duplicative of the claims addressed above. O'Callaghan claims that the court erred in denying its motion to quash the case he raised with notice of the motion to compel or the motion for sanctions. The general purpose of notice is to apprise the person affected by the nature and purpose of a proceeding. See, e.g., cf. Weed v. Moline Police Pension Board, 96 Ill App 3d 482, 437, 518 Dec. 948, 421 N.E.2d 584 (1981) The same notice principles apply, at a minimum, it must sufficiently apprise the person affected concerning the nature and purpose of any proceeding." J. Haan Waste Management Services, Inc. v. City of Chicago, 53 Ill App 3d 1033, 1137 Dec. 725, 369 N.E.2d 179 (1977) "The test of the adequacy of notice is whether it clearly apprises a defendant of the claims to be tried and enables whether the defendant, on the basis of the notice given, could anticipate the possible effect on the proceeding. City of Chicago v. Union Bank, 317 Ill App 3d 919, 216, 334 Ill Dec. 739, 741 N.E.2d 533 (2009) "Notice is constitutional where it will 'apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Sporting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 654, 94 L.Ed. 865 (1950)). | The general purpose of notice is to apprise the person affected of the nature and purpose of a proceeding. | What is the purpose of the notice provision under the law? | Notice - Memo 12 - VP.docx | LEALEASE-00000286-LEALEASE-00000289 | Condensed, SA | 0.93 | 0 | | 1 | 0 | 1 |
| 15148 | Ferris v. Alaska Airlines, 1137. Supp 907 | 25T+111 | The primary function of arbitration is to serve as a substitute for and not a prelude to litigation. The arbitral process affords a supported party the advantage of hearing from the quick and cheap decision rendered by the board drawn from the particular industry and familiar with the specific technical matter under consideration. Broad judicial review on the merits would render resort to arbitration wasteful and superfluous, and an accepted indeed favored, method of resolving industrial disputes would atrophy for non-use. Plaintiff was equally faced with a choice of submitting his grievances to a System Board of Adjustment or taking it to court. Having chosen the former alternative he should by the rules underlying the Board's operation, one of which is the finality of its decision. Judicial inquiry is therefore at an end once it is determined: (1) That the Board's procedure and the award conformed substantially to the statute and the Agreement, (2) That the award confined itself to the matter of the arbitration, and (3) That the award did not evidence of manifest disregard for the law. | Primary function of arbitration is to serve as substitute for, and not as a prelude to, litigation. | What is the primary function of arbitration? | 00384.docx | LEALEASE-00115586-LEALEASE-00115588 | Condensed, SA | 0.91 | 0 | | 1 | 0 | 1 |
| 15149 | Am. Almond Prod. Co. v. Consol. Pecan Sales Co., 144 F.2d 448 | 25T+251 | However, the question of damages, which depends upon whether it was "misbehavior" under subdivision (c) to make an award in money without any evidence of market price. Concededly the plaintiff tendered in this case only one "statement," and the arbitrators interpreted Although it does not appear that the arbitrators were in the truest and obliged to keep familiar with the market, or pass on the other hand it nowhere appears that they were not; and the defendant has the burden of proof as claimed upon the issue of "misbehavior." If they were of that trade, they were justified in resorting to their personal acquaintance with it as to prices. In trade disputes one of the chief advantages of arbitration is that arbitrators can be chosen who are familiar with the practices and customs of the calling, and with just such matters as what are current prices, which merchants ordinarily do, and what the terms of sale, and the like. Although we have been able to find very little on this point, (c.) 425, 133 A 917; Koepke v. L. Lechner Grain Co., 205 Wis. 75, 236 N.W. 544; Bthre, and know for, they may do so; depends no doubt upon the character of the controversy, and the way in which the parties present it to them. In the case at bar it seems to us to the last degree unlikely that the parties meant to submit only to a just partial settlement, which would have forced them either to come to an agreement, or to a second arbitration. Indeed, it was plain from the plaintiff's "statement" demanding damages for a breach, that it at least supposed that the arbitration was to settle everything, and the defendant, being called in and heard could find so, either by accepting that the plaintiff had foreclosed its "case if the submission, or to ask leave to put in evidence of market value. The one course was to accept the arbitration as presented to an award | When parties had adopted arbitration to settle a controversy, they must be content with its informalities and with loose approximation to the enforcement of their rights than that like the law that accords them. | When parties opt for arbitration, should they be content with its informalities? | Alternative Dispute Resolution - Memo 37 - JS.docx | LEALEASE-00000357-LEALEASE-00000355 | Condensed, SA | 0.94 | | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19150 | Vass v. Bd. of Trustees of Teachers' & State Employees Comprehensive Major Med. Plan, 324 N.C. 402 | 360+45 | The Court of Appeals relied on the current version of the Administrative Procedure Act, codified as Chapter 150B of the General Statutes of North Carolina, in resolving the issues presented by the plaintiff's appeal from the judgment of the trial court. The Court of Appeals concluded that the defendant Board, established by N.C.G.S. " 135"39, is an administrative agency covered by the Act. The Court of Appeals also noted that the Act specifically provides that when a dispute between a State agency and another person arises and cannot be resolved by informal procedures, "either the agency or the person may commence an administrative proceeding to determine the person's rights, duties, or privileges at which time the dispute becomes a "contested case.""N.C.G.S. " 150B"22 (1987). The Court of Appeals then ordered this civil action remanded to the trial court to be dismissed for lack of subject matter jurisdiction, apparently on the theory that by failing to initiate such an administrative proceeding to determine his rights, the plaintiff had failed to exhaust the administrative remedies provided him by the Administrative Procedure Act. By obiter dictum, the Court of Appeals implied that the plaintiff should thereafter proceed to bring his dispute with the Board "under the Administrative Procedure Act." | Board of trustees of state employees' medical plan was "agency" within meaning of Administrative Procedure Act. G.S. SS 150A-1 et seq. (now S 151B-1 et seq), 150A-1(a, b) (now S 150B-1(c, b)), 150A-2(1) (now S 15B-2(1)). | Does the Administrative Procedure Act provide the procedure for resolution of a dispute that arises between a state agency and a person which cannot be informally resolved? | Administrative Law - Memo 2 - RM.docx | LEGALEASE-00000392-LEGALEASE-00000393 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 19151 | United States v. Jones, 553 F.2d 351 | 181+9 | However, we disagree with the district court's conclusion that the acts committed by Everston constituted common law forgery. The Supreme Court has noted that " (f)orgery, or the crimen falsi, * * * may with us be defined (at common law) to be, "the fraudulent making or alteration of a writing to the prejudice of another man's right"* * *." 4 Blackstone, Commentaries (Christian ed. 1809), 247-248." Gilbert v. United States, 370 U.S. 650, 657 n. 10, 82 S.Ct. 1399, 1403, 8 L.Ed.2d 750 (1962). Significantly then, "(a)n essential element of the crime of forgery is making the false writing * * *." United States v. Maybury, 274 F.2d 899, 903 (2 Cir. 1960) (emphasis added). See Carr v. United States, 278 F.2d 702, 703 (6 Cir. 1960),("The word "forgery" is commonly defined as the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability."); Marteney v. United States, 216 F.2d 760, 763 (10 Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745 (1955), ("The words (falsely made and forged) relate to genuineness of execution and not falsity of content.") | An essential element of the crime of forgery is making the false writing. | Does false making fall within the ambit of common law forgery? | 07080.docx | LEGALEASE-00089136-LEGALEASE-00089138 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19152 | Hornbeck Offshore Operators v. Ocean Line of Bermuda, 849 F. Supp. 434 | 393+984 | The Anti"Assignments Act provides that voluntary assignments of claims against the Government are void. The Act was created to: (1) prevent the buying up of claims against the Government; (2) avoid multiple payment of claims; (3) make unnecessary the investigation of assignments; and (4) preserve Government defenses which the Government might have by way of setoff and counterclaim and which might not be available against an assignee. See United States v. Shannon, 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952); United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949). See also Bernert Towboat Co. v. USS Chandler, 666 F.Supp. 1454, 1460 (D.Or.1987) (citing Kingsbury v. United States, 563 F.2d 1019, 1024, 215 C.Cl. 136 (1977) (explaining the rationale for the current Act)). The Anti"Assignments Act broadly encompasses derivative interests of all types: The statute ... embraces alike legal and equitable assignments, and strikes at every derivative interest, in whatever form required, and incapacitates every claimant to create an interest in the claim in any other than himself. It is not necessary that the interest transferred be absolute or vested in order to come within the statute; a contingent or conditional interest is sufficient and any consideration that will support a contract may be sufficient to bring the assignment within the prohibition.6 Am.Jur.2d Assignments, " 71 (1963). If the lien is an assignment within the meaning of that statute, then it is null and void as against the United States unless the procedural requirements of the statute were met. 31 U.S.C. " 3727(b). Hornbeck contends that the Supreme Court has carved out exceptions to the Anti"Assignments Act where the assignment at issue poses no danger of fraud, double payment, or undue prejudice to the government. | Actions under the Suits in Admiralty Act are not exempt from the Anti-Assignments Act which provides that voluntary assignments of claims against the government are void. Suits in Admiralty Act, S 1 et seq., 46 App.U.S.C.A. S 741 et seq.; 31 U.S.C.A. S 3727. | Does the Anti- Assignments Act prohibit voluntary assignments? | 003813.docx | LEGALEASE-00115780-LEGALEASE-00115782 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 19153 | People v. Versaggi, 83 N.Y.2d 123 | 372+1348 | Interpretation begins with the language of the statute. The Legislature did not define "alter", however, and thus the Court must give the word its ordinary meaning (Matter of Manhattan Pizza Hut v. New York State Human Rights Appeal Bd., 51 N.Y.2d 506, 511, 434 N.Y.S.2d 961, 415 N.E.2d 950). As commonly understood, "alter" means to change or modify. When something is altered it is made "different in some particular characteristic * * * without changing [it] into something else" (Webster's Third New International Dictionary 63 [Unabridged] ). For an alteration to occur, the identity of the thing need not be destroyed, nor need an entirely new thing be substituted. It is sufficient if some of the "elements or ingredients or details" are changed (Black's Law Dictionary 103 [4th ed] ). Significantly, the Legislature attached expansive language to the verb it used in section 156.20, stating that the crime consisted of altering a computer program "in any manner". | Word "alter" in computer tampering statute would be given its ordinary meaning and is commonly understood to mean to change or modify. McKinney's Penal Law S 156.20 (1992). | How is the term alter commonly understood by the courts? | 003829.docx | LEGALEASE-00115803-LEGALEASE-00115805 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 19154 | BeWigged by Suzzi v. Atl. Dep't Stores, 49 Ohio App. 2d 65 | 238+43 | Under Ohio law a license has been defined as"* * * a permission to do some act or series of acts on the land of the licensor, without having any permanent interest in it; it is founded on personal confidence, and is not assignable. It may be given in writing or by parol; it may be with or without consideration, but in either case it is usually subject to revocation, though constituting a protection of the party acting under it until the revocation takes place." Fairbanks v. Power Oil Co. (1945), 81 Ohio App. 116, 123, 77 N.E.2d 499, 503. | A "license" is a permission to do some act or series of acts on the land of the licensor, without having any permanent interest in it. | Are licenses assignable? | 003904.docx | LEGALEASE-00115946-LEGALEASE-00115947 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19155 | Thake Lumber Co. v. Reed Realty Co., 154 A.D. 270 | 257v202 | It seems to be true, as contended by the learned counsel for appellant, that a valid mechanic's lien cannot be created by filing the statutory notice by the assignee of a claim.The right to file a mechanic's lien is a personal right, a remedy to the person performing the labor or furnishing the material, and is not assignable. The remedy of the lien is not, however, the only remedy given to similar statutes for many years. Babbitt v. Cross, 478, Y. 706, 771; Ogden v. Alexander, 140 N.Y. 356, 35 N.E. 618; Beardsley v. Foster, 36 U. S. 543, 603. The language of the statute limits the right to acquire a lien to persons performing the labor or furnishing the materials, and it must be construed in accordance with its terms, and the contention of respondent that the legislature, by using the words "and includes his successor in interest," in the first subdivision of section 2 of the present Lien Law, intended to permit one to file by an assignee, cannot be sustained. The language defining the term "lienor" is limited to section 2. The term "owner," as used in this chapter, means any person having a lien upon property by virtue of its provisions, and includes his successor in interest. | The right to file a mechanic's lien is not assignable, under Lien Law, §2. | Is the right to file a mechanic's lien assignable? | 00301.docx | USGA1EXE-00115510 USGA1EXE-00115511 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19156 | Nat'l Block Bank of Chicago v. Citizens Utilities Co. of Illinois, 107 Ill. App. 3d 902 | 315v51 | Fixtures are by definition real property because they are incorporated in or attached to the realty. While they may be classed separately as in Chicago Title & Trust Co. (1938), 368 Ill. 482, 14 N.E.2d 839.) Charles become real property when annexed to the freehold under such circumstances that it appears clearly from an inspection of the property itself, taking into consideration the character of the annexation, the nature and adaptation of the articles annexed to the uses and purposes of the freehold at the time of the annexation, and the relation of the annexing party to the freehold in question and whether the annexation to the freehold was intended. (Galena Iron Works Co. v. McDonald (1911), 252 Ill.App. 151.) Illinois Courts have found "fixture" 2.) That water and sewer mains are normally considered real property is shown by the fact that they are subject to the imposition of mechanics' liens (Berry v. Blackard Construction Co. (1973), 13 Ill.App.3d 768, 300 N.E.2d 627.), although such may be imposed only on realty. Dust Temp Installations, Inc. v. Chicago Title & Trust Co. (1978), 63 Ill.App.3d 415, 354 N.E.2d 531, leave to appeal denied, Miller v. Reed (1973), 13 Ill.App.3d 330, 312 N.E.2d 155; Blaser v. Shinn Blaser (1980), 45 Ill.App.3d 924, 380 N.E.2d 239; 269 N.E.2d 234 S. Brosch (1970), 51 Ill.Dec.23 S.2d 379, pp. 82, par. 1. | Fixtures are "real property" because they are incorporated in or attached to the realty. | Are fixtures considered real property as they are attached to the real property? | 00304.docx | USGA1EXE-00116037 USGA1EXE-00116038 | Condensed, SA | 0.93 | | 1 | | 1 | |
| 19157 | Hughes v. New Life Dev. Corp., 387 S.W.3d 453 | 315v71 | A property owner's right to own, use, and enjoy private property is a fundamental right. Mayhew v. Town, 964 Tex. Natural Gas Co., 63 S.W.3d 98, 417, 419 (Tenn.1991); Stora v. Garner, 22 Tenn. (3 Hum.) 139, 40 (1842). As such, this Court has held that every proper use of land, and the space above and below to any extent he may choose to occupy, and in which occupation he may use it according to his own enjoyment, without being amenable for the consequences to an adjoining owner, unless by such occupation he either intentionally or for want of reasonable care and diligence inflicts upon him an injury.Hames v. Mayor of Knoxville, 20 Tenn. (1 Hum.) 403, 407 (1839). Not surprisingly, then, we have recognized that private property owners have a property right in the derogation of the rights of free use and enjoyment of property. Williams v. Fox, 219 S.W.3d 319, 324 (Tenn. 2007); Arthur v. Lake Tansi Vill., Inc., 590 S.W.2d 923, 927 (Tenn.1979) (citing Walter v. Thomas, 545 S.W.2d 743, 747 (Tenn.Ct.App.1976)). | A property owner's right to own, use, and enjoy private property is a fundamental right. | Is a right to property a fundamental right? | Property - Memo 12 AMG.docx | ROSS-003122152-ROSS-003122153 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 19158 | Fordham v. Republic Am. Life Ins. Co., 190 P.3d 597 | 313H v26 | A party asserting a privilege, here Republic, has the burden of demonstrating that the privilege is applicable. Beck Corporation v. Kane, 744 P.2d 663, 651 (10th Cir.1984). Although the "party communication privilege" has only recently been recognized in Oklahoma, Republic has not demonstrated that the privilege is applicable to this case. This is a case in which a confidential privilege applies to this case. This issue is a matter of Oklahoma statute. Thus, the rule as applicable to this case that the rule of decision. Pursuant to Fed.R.Evid. 501, "privilege in this case ... shall be governed by the principles of the common law as they ... in light of reason and experience," an Oklahoma does not recognize a "party communication privilege." Okla. Stat. tit. 12 §2501. Here, the parties agree that these so-party communications are relevant from and subject to depositions re-convened he is required to answer questions about his confidential, it is with the Court. | A party asserting a privilege has the burden of demonstrating that the privilege is applicable. | Who has the burden of demonstrating that the privilege is applicable? | 10853.docx | USGA1EXE-00089298 USGA1EXE-00089299 | Condensed, SA | 0.9 | | 1 | | 1 | |
| 19159 | Noble Nav, PTL Ltd. v. Metinvest Holding Ltd., 622 F.Supp.2d 77 | 14v12 | Admiralty jurisdiction does not arise simply because a contract refers to a ship, or to the transportation of goods by ship. "In order to be considered maritime, the service of which is sought is the ship, the subject matter of the contract and the operation of the ship, its navigation, or its management affect, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping."1 Benedict on Admiralty § 182. "The touchstone of admiralty jurisdiction ... is whether the services rendered are maritime in nature." Elko Coal Equipment Ltd. v. Pacific Inter-Link SDN BHD, 582 F.Supp. 2d 466, 470 (S.D.N.Y. 2008). | Admiralty jurisdiction does not arise simply because a contract refers to a ship, or to the transportation of goods by ship. | When will courts consider a contract as a maritime contract? | 00408.docx | USGA1EXE-00116303 USGA1EXE-00116303 | Condensed, SA | 0.83 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15160 | Court Facility Co. v. Pas Medinave Co., 68 F.2d 1195 | 25T+229 | The Supreme Court in United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), discussed the differences and similarities between commercial and labor arbitration cases. In commercial cases, arbitration is used as a substitute for litigation. Id., 363 U.S. at 578, 80 S.Ct. at 1350, 4 L.Ed.2d at 1415. Yet, even here, the arbitrator is confined to the interpretation and application of the parties' agreement. A companion case, United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), although speaking in the labor context, states, an arbitrator '... does not sit to dispense his own brand of industrial justice ... [his award is legitimate only as long as it draws its essence from the ... agreement.' Id., 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428. La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 573 (3d Cir. 1967). The arbitrator's award draws its essence from the submission and does not exceed the authority. | In commercial cases, arbitration is used as substitute for litigation but in such cases one arbitrator is confined to interpretation and application of parties' agreement. | Can arbitration be substituted for litigation under commercial law? | Alternative Dispute Resolution -Memo 21-JS.docx | ROSS-003187324 ROSS-003187325 | Condensed, SA | 0.85 | 0 | | | 1 | |
| 15161 | Warner v. Bennett, 31 Conn. 468 | 522H+187 | Secondly, A right of entry for condition broken is not assignable at common law, and we have no statute which makes it so. 2 Cruise Dig., tit. 13, c. 1, § 16; Spence Eq. Ju. 153, 1 Swift Dig., 93. The grantor or his heirs only can enter for breach of such condition. 1 Swift Dig. 93, 4 Kent Com. 127; Co-ca Dig. 44. The grantee therefore could have obtained no right or title to make an entry for the condition broken, and without such entry the estate of the grantees could not be terminated, and no suit at law or in equity could be maintained against the occupant of the property. | A deed conveying to the grantee, their heirs and assigns forever, a piece of land, as a site for a school house, contained the following provision: 'The conditions of this deed are such that whenever the premises shall be converted to any other use than those named, and the grantor paying to them the appraised value of such building as may be thereon standing.' Held, that this grantor of the deed was a condition subsequent, and not a limitation, and that the estate of the grantees would continue, after condition broken, until an entry by the grantor or his heirs. | Can a right of entry, for conditions broken, be assigned? | Assignments - Memo 19-JS.docx | ROSS-003187603 ROSS-003187601 | SA, Sub | 0.14 | | | 1 | 1 | |
| 15162 | United States v. Bajakajian, 524 U.S. 321 | 17H+1.3 | The Eighth Amendment provides, 'Excessive bail shall not be required, nor cruel and unusual punishments inflicted.' U.S. Const. Amdt. 8. This Court has had little occasion to interpret, and has never actually applied, the Excessive Fines Clause. We have, however, explained that at the time the Constitution was adopted, 'the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.' Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989). The Excessive Fines Clause thus 'limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense."' Austin v. United States, 509 U.S. 602, 609-610, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993) (emphasis deleted). Forfeitures—payments in kind—are thus 'fines' if they constitute punishment for an offense. | The forfeiture of currency, when used in violation of the statute requiring a person to report the transportation of more than $10,000 outside of the United States, is a punishment and thus constitutes a 'fine' within the meaning of the Excessive Fines Clause. U.S.C.A. Const.Amend. 8; 18 U.S.C.A. § 982(a)(1); 31 U.S.C.A. § 5316(a)(1)(A). | What does fine for the purposes of the Eighth Amendment's Excessive Fines Clause refer to? | 004736.docx | LEGALEASE-00116409 LEGALEASE-00116410 | Condensed, SA, Sub | 0.63 | 1 | 1 | 1 | 1 | |
| 15163 | Redevelopment Agency of City of San Diego v. Attisha, 128 Cal. App. 4th 35 | 35T+1 | In enacting section 1263.510 the Legislature did not specify any particular method for valuing loss of goodwill, and courts have had to 'select a single acceptable method' of valuing goodwill. [Citation.] Valuation methods will differ with the nature of the business ... and with the purpose for which the evaluation is conducted on its own facts and circumstances. (City of San Diego v. Sobke, supra, 65 Cal.App.4th at p. 399, 76 Cal.Rptr.2d 9.) '[E]ach case must be determined on its own facts and circumstances and the evidence must be such as legitimately establishes value.' | There is no single acceptable method of valuing goodwill, as valuation methods will differ with the nature of the business, and with the purpose for which the evaluation is conducted on its own facts and circumstances and the evidence must be such as legitimately establishes value. | Is there a single acceptable method of valuing goodwill? | Goodwill - Memo 9-ANG_62192.docx | ROSS-003281152 ROSS-003281153 | Condensed, SA | 0.45 | | 1 | | 1 | |
| 15164 | Fort Trumbull Conservancy v. Alves, 262 Conn. 480 | 149E+652 | It is axiomatic that whether particular substances constitute 'natural resources of the state' within the meaning of § 22a-7 is properly a question of statutory interpretation. Paige v. Town Plan & Zoning Commission, 235 Conn. 448, 454, 668 A.2d 1 (1995); Red Hill Coalition, Inc. v. Town Plan & Zoning Commission, 212 Conn. 727, 735, 563 A.2d 1347 (1989). Fortunately, in deciding whether the air or the landfills constitute natural resources of this state, we are not required to write on a blank slate, because both the statute and the case law provide guidance. In Red Hill Coalition, Inc. v. Town Plan & Zoning Commission, supra, at 735-36, 563 A.2d 1347, we concluded that '[prime agricultural land]' is not naturally occurring 'but ... Paige, together, provide conclusive that in the present case, the defendants ... suggested in oral argument before this court, are an essential element of a natural resource under the act in that it be a resource occurring naturally that has not been subject to human alteration. | Conservation organization had standing, under section of the Environmental Protection Act authorizing actions for declaratory and injunctive relief against unreasonable pollution, to challenge issuance of building official to permit issuance of permits allowing defendant to develop 19 building, although city was not prosecuting claim for which the evaluation is conducted, to consider environmental ramifications of issuing demolition permits, where organization alleged that issuance of permits would unreasonably pollute, impair, deplete or destroy the public trust in air, water, land or other natural resources of the state, overruling Connecticut Post Ltd. Partnership v. South Central Connecticut Regional Council of Governments. 90 Conn.App. 21, 25, 758 A.2d 668, C.G.S.A. § 22a-16. | Is prime agricultural land considered a natural resource? | 004944.docx | LEGALEASE-00116515 LEGALEASE-00116517 | Condensed, SA, Sub | 0.57 | | 1 | 1 | 1 | |
| 15165 | People v. Elmore, 59 Cal. 4th 121 | 203+300 | Homicide, the killing of one human being by another, is not always criminal. In certain circumstances, a killing may be reasonable or justifiable. (Pen.Code, § 195 et seq.); see 1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Crimes Against the Person, § 96, pp. 887.) 'Murder is the unlawful killing of a human being ... with malice aforethought.' (§ 187, subd. (a).) Malice aforethought may be express or implied. (§ 188.) | Homicide, the killing of one human being by another, is not always criminal. In certain circumstances, a killing may be reasonable or justifiable. | Will homicide always be a criminal act? | 003576.docx | LEGALEASE-00116580 LEGALEASE-00116581 | Condensed, SA | 0.84 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19166 | State ex rel. New Mexico Water Quality Control Comm'n v. Molybdenum Corp. of Am., 89 P.A.M.S52 | 1,491+04 | In addition, the State had authority to enforce its own regulations apart from any statute or authority. In the body, 518 U.S. 154, 175 S. Ct. 900, 19 L.Ed. 1 (1991) states: "Every government, entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other . . . ." This right is simply the right of the state to execute its law. State ex rel. Beck v. Barborn, 149 Neb. 181, 19 N.W.2d 24 (1937). This right is the independent of any statutory provision and is a based on the rights of a state either as a sovereign or as a political corporation. State Highway Departments v. Branson, 73 Ga. App. 202, 38 S.E.2d 163 (1946); State ex rel. Burgum v. Hooker, 87 N.W.2d 337 (N.D. 1957). This right, or cause of action, applies to the discharge of a distinctive governmental duty. See the waters of the state, State, Dept. of Fish and Game v. Jersey Central R. & L. Co., 125 N.J.Super. 97, 308 A.2d 671 (Law Div. 1973), aff'd 133 N.J.Super. 375, 336 A.2d 750 (App.Div. 1975). See also State of West Virginia v. Chas. Pfizer & Co., 447 F.2d 1075 (2nd Cir. 1971). | Even if State had no specific statutory authority to enforce its pollution regulations, State had independent right, either as a sovereign or a judicial corporation, to enforce its own regulations, as State had the right to execute its law. | Is the State given the authority to execute its own laws or regulations? | 005283.docx | LEGALEASE-00131770 LEGALEASE-00131771 | Condensed, SA, Sub 0.8 | 0.8 | 0 | | | 1 | 1 |
| 19167 | Kozlowski v. Kozlowski, 80, 253+1341 | 253+1341 | The philosophy expressed in Marvin which refuses to condemn cohabitation by a man and woman who are unmarried as being "meretricious" and, therefore, unlawful, denies them any relief by the courts, is not generally contrary to our own public policy in State v. Saunders, 75 N.J. 200, 381 A.2d 333 (1977), we held the fornication statute (N.J.S.A. 2A:110-1), as applied to adults, to be unconstitutional because it improperly invaded the parties' rights to privacy. Since, indeed, such conduct is not criminal. An unconstitutional statute is wholly void, and is as inoperative as if it had never been passed. 16 Am.Jur.2d, Constitutional Law, § 177; State v. Gurda, 119 N.J.L. 464, 465, 196 A. 721 (E. & A. 1937); In re Rose, 122 N.J.L. 507, 509-509, 6 A.2d 388 (Sup.Ct. 1939). Effective September 1, 1979 fornication is no longer designated as a crime under N.J.S.A. 2C:1-1 et seq. Therefore, the cohabitation by the parties after 1968 cannot be termed "meretricious" because they engaged in sexual relations. Moreover the relationship between the parties herein, as entered into in 1968 at a time when plaintiff was divorced, was not tainted by the fact that defendant was married at that time. A male, married or unmarried, can be guilty of adultery only if he has sexual relations with a married woman. See State v. Lash, 16 N.J.L. 380 (Sup.Ct.1838) L.1 Cr:m. Laws of New Jersey 44.1-11, 11.2-15, 11.5 (1970); Perkins, Criminal Law, at 377 (2d ed. 1969). Therefore, in the instant case, bona public sexual morality's not violated and there was no legal impediment to the parties cohabiting in 1968. Thus any lawful agreement made by them is enforceable. | A male, married or unmarried, can be guilty of adultery only if he has sexual relations with a married woman. | Do both parties require to be married in order to constitute adultery? | Marriage and Cohabitation - Memo 17 - AM.docx | LEGALEASE-00000552 LEGALEASE-00000553 | Condensed, SA 0.93 | 0.93 | | 0 | | 1 | |
| 19168 | Benetti v. Illinois Power & Light Corp., 272+200 271 Ill. App. 182 | 272+200 | To warrant a recovery for such negligence it is not necessary that the act or omission complained of should involve an act of illegality; also, the negligence may consist of doing a legal act in a careless or negligent manner. Thus the test is the clear that the proposition of the defendant cannot be accepted without amendment embodying the requirement of the defendant must show that action which show had been done in a reasonably prudent and careful manner. Cases early in point illustrating this phase of negligence and its declarations a necessary element of a definition of actual negligence, under ordinary circumstances will not be found in the reports. Thus, in the case of Clark v. Hart, 38 N.J. 31, 1 P.Ic. Rep. 606, 9.2 S.W. 195, it was a personally demonstrated that ordinary and recklessness, because it did not allege at what distance from the traveled part of the highway the object which would have required action on the part of and some and it is held in that case as follows: "One who negligently places on a railroad track an object calculated to frighten horses lawfully traveling thereon, or who negligently conducts his lawful business in such manner as to frighten them, is liable for the consequences." In the case of New Pride v. Williams, 48 N.W. 105, 38 N.W. 524, the Supreme Court of Minnesota says: "Defendants were engaged in a public work upon the highway under a contract with the authorities, and that the unalloded right to make such reasonable use of the highway as was necessary in carrying forward the work. But they had no right to its exclusive use and were bound to exercise reasonable care to avoid unnecessarily interfering with public travel thereon. They had the right to deposit upon it materials and do work reasonably connected with and incidental to the work." | "Negligence" may consist of doing a legal act in a careless or negligent manner. | Can a legal act result in negligence? | 003444.docx | LEGALEASE-00116484 LEGALEASE-00116485 | SA, Sub | 0.97 | 0 | | 1 | | |
| 19169 | Lakin v. Perryman, 105 F.3d 164 | 24+329 | The Supreme Court has held, however, that the Administrative Procedure Act is not applicable to deportation proceedings under the Immigration and Nationality Act, Marcello v. Bonds, 349 U.S. 302, 310, 75 S.Ct. 757, 761-76, 99 L.Ed. 1107 (1955). In Kaczmarczyk v. INS, 933 F.2d 588, 595 (7th Cir.), cert. denied, 502 U.S. 981, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991), this court concluded that "Congress has directed that the immigration judge preside at the proceedings and has carved out special procedures governing deportation hearings," and thus petitioners could not rely upon the APA to challenge the manner in which the deportation hearing was conducted. See also Reyes-Arias v. INS, 866 F.2d 500, 502 n.1, 276 U.S.App.D.C. 191 (D.C.Cir.1989). Thus, the APA is not a useful tool for aliens challenging immigration decisions. | Administrative Procedure Act (APA) does not apply to deportation proceedings. 5 U.S.C.A. § 551 et seq. | Is Administrative Procedure Act applicable to deportation proceedings? | Administrative Law - Memo 22 - RM.docx | ROSS-003197963-ROSS-003197964 | Condensed, SA, Sub 0.87 | 0.87 | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,029 |
| 15170 | State v. Cutts, 117 Wash. App. 491 | 148x1 | Canons of Construction. The power of eminent domain is strictly construed against the government, State ex rel. Wash. State Convention & Trade Ctr. v. Evans, 136 Wash. 2d 811, 836, 966 P.2d 1252 (1998) (Sanders, J., dissenting) (citing 3 Julius L. Sackman, Nichols on Eminent Domain § 9.01 at 9-7 (7 P.3d Set rev. ed 1998)). The provisions of Title 8 RCW are strictly construed, both as to the extent of the State's power and "to the manner of its exercise." State v. Teacher, 111 Wash. 2d 468, 497, 761 P.2d 49 (1988). Statutory language is interpreted in light of the statute as a whole. In re Sehome Park Care Ctr., Inc., 127 Wash. 2d 774, 778, 903 P.2d 443 (1995). | The power of eminent domain is strictly construed against the government. | Against whom should the power of eminent domain be construed? | Eminent Domain - Memo 31 - AA.doc | ROSS-003288719-ROSS-003288720 | Condensed, SA | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 15171 | Appeal of Portsmouth Tr. Co., 120 N.H. 753 | 172H+202 | The plaintiffs, as validly chartered banks, have a legally protected right to engage in business. National Bank of Commerce v. Abert, 270 U.S. 535, 521, 49 S.Ct. 236, 237, 73 L.Ed. 481 (1929). While it is, of course, true that a bank charter does not entitle the plaintiffs to a right to be free from competition, see Appeal of the Incorporation of the Manchester Savings Bank, 120 N.H. 129, —, 412 A.2d 421, 424 (1980); Valley Bank v. Banks, 119 N.H. 151, 154, 400 A.2d 52, 651 (1979), a bank charter does create a right to be free from unlawful competition, see Frost v. Corporation Commission, supra at 521; Webster Groves Trust Company v. Saxon, 370 F.2d 381, 388 (8th Cir. 1966); National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537, 544 (6th Cir.), cert. denied, 358 U.S. 830, 79 S.Ct. 50, 3 L.Ed.2d 69 (1958). It follows that the Board of Trust Company Incorporation may not grant an application to open a bank without affording due process to other banks that may wish to challenge the application. Cf. Local Elec. Tel. Co. v. Whaland, 114 N.H. 832, 834, 330 A.2d 782, 783 (1974). | Validly chartered banks had a legally protected right to engage in business of banking, which included right to be free from unlawful competition. | Under the law, who or what entities are empowered to do banking business? | 003267.docx | LEGALEASE-00119063-LEGALEASE-00119064 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 15172 | Ipniga v. Quecher Capital Corp., 615 F.3d 735 | 25T+113 | We begin our analysis with the FAA. 9 U.S.C. ¶¶ 1-16. The FAA provides that a written arbitration agreement in certain contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. ¶ 2. Although it is unusual that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them. See Hall St. Associates, L.L.C., v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 1403 (2008) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Any "preference" for arbitration is reserved for the interpretation of the scope of a valid arbitration clause, see, e.g., AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649-50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), which must "not issue from" the express statutory mandate that the scope of the arbitration clause is broad enough to encompass the issues raised in the complaint | Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them; any preference for arbitration is reserved for the interpretation of the scope of a valid arbitration clause. | Is there a preference for arbitration reserved by Courts? | 004906.docx | LEGALEASE-00117158-LEGALEASE-00117160 | Condensed, SA | 0.74 | 0 | 0 | 1 | 0 | 1 |
| 15173 | Kirk v. Dougherty, 392 Pa. Super. 237 | 233+13(63)(2) | The trial court's charge to plaintiffs for two reasons. First, the charge is defective because plaintiffs' complaint averred that appellant could not recover unless she was unaware of the condition of the premises. As we have stated above, Pugh does not require that the plaintiff prove that she gave notice to the landlord of the defect or condition in order to recover under the warranty of habitability. In addition, the charge was erroneous because "out of the instrument [record] of the does not deal with the issue of the duty of landlords to their tenants. Instead, [14] defines the standard of care applicable to all tenants. The Restatement defines a "licensee" as "a person who is privileged to enter or remain on and only by virtue of the possessor's consent." A licensee's duty of care differs, however, as the Restatement itself recognizes, the duty that a landlord owes to his tenant is not the same kind. Restatement contains eight specific sections concerning the landlord-tenant relationship. See id. ¶¶ 355-362. § 360 is one of the eight sections governing the landlord-tenant relationship pursuant to state an exclusive cause of action, and only one has a requirement that a tenant be unaware of the dangerous condition in order to recover. See id. § 358. Appellant thus contends every duty to fit § 358. Appellant five slightly notes that an instruction based on these sections would not have prevented her from recovering under the warranty of habitability theory, although it remained her burden to prove that a tenant be unaware of the dangerous condition in order to recover. See id. Appellant thus contends every duty to fit § 358. Appellant five slightly notes that an instruction was erroneous because it was contrary to Pugh v. Holmes and also because it was a minimum statement of principles in the Restatement governing the land-lord's duty. Although the court's instruction was erroneous, a close review of the trial record nevertheless convinces us that, in light of the unique facts of this case, the error was harmless. Central to this conclusion is the fact that the jury found appellant to be 58% contributorily negligent. In both Jasper, Lupis and Rivera, supra, this | In tenant's action against landlord on theories of negligence and implied warranty of habitability to recover for injuries allegedly sustained in fall on landlord's property, instruction suggesting that tenant could not recover unless she was unaware of condition of premises was error that it precluded tenant from possibly recovering under warranty of habitability theory; however, error was harmless, as contributory negligence a defense to warranty of habitability action, and jury found tenant to have been 58% contributorily negligent. 42 Pa.C.S.A § 7102(a). | Is there an implied warranty of habitability in residential leases? | 003977.docx | LEGALEASE-00117231-LEGALEASE-00117234 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19174 | Turner v. Wells, 198 F. Supp. 3d 1355 | 237+30 | "A false statement of fact is the sine qua non for recovery in a defamation action." Hallmark Builders, Inc. v. Gaylord Broad. Co., 733 F.2d 1461, 1464 (11th Cir.1984) (quoting Byrd v. Hustler Magazine, Inc., 433 So.2d 593, 595 (Fla. 4th DCA 1983)) (internal quotation marks omitted); see also Milkovich v. Lorain Journal Co., 497 U.S. 1, 23, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (Brennan, J., dissenting) ("I agree with the Court that ... only statements that are capable of being proved false are subject to liability under state libel law."); accord Fla. Med. Ctr., Inc. v. N.Y. Post Co., 568 So.2d 454, 458 (Fla. 4th DCA 1990). Falsity exists only if "the publication is substantially and materially false, not just if it is technically false." Smith v. Cuban Am. Nat'l Found., 731 So.2d 702, 707 (Fla. 3d DCA 1999); see also Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (explaining that a flawed assertion of fact is not actionable as long as it is "substantial[ly] tru[e]," because the common law of libel "overlooks minor inaccuracies"). The alleged false statement does not have to be "perfectly accurate" if the "gist" or the "sting" of the statement is true. Id. A "statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." Masson, 501 U.S. at 517, 111 S.Ct. 2419 (citation and internal quotation marks omitted). | For purposes of defamation actions under Florida law, falsity exists only if the publication is substantially and materially false, not just if it is technically false. | Do technically false statements constitute falsity? | 000554.docx | LEGALEASE-00117375-LEGALEASE-00117377 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 19175 | Colden v. Alexander, 141 Tex. 134 | 315+22 | As to the allegation that this alleged oral contract was made in California, and was and is valid in that State, and therefore is enforcible in this State, we think, as applied to land or real property in this State, the laws of this State must be applied. It is the settled law of this State, as well as the law generally, that the title to real property is exclusively subject to the government within whose territory it is situated. It is the law that the title to land can be affected only by the lex loci rei sitae (the law of the place where a thing is situated). 9 Tex.Jur., p. 359, Sec. 8; American Law Institute Restatement of the Law of Conflict of Laws, p. 306, Sec. 215; Crossland v. Dunham, 135 Tex. 301, 140 S.W.2d 1095; Martinez v. Gutierrez, Tex.Com.App., 66 S.W.2d 678; Ball v. Norton, Tex.Com.App., 238 S.W. 889; Barnett v. Pool, 23 Tex. 517. | The title to realty can be affected only by the "lex loci rei sitae", that is the law of the place where the realty is situated. | What law is applied in determining the ownership of a property? | 005161.docx | LEGALEASE-00117367-LEGALEASE-00117368 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 19176 | Dale v. H.B. Smith Co., 136 F.3d 843 | 233+709 | As explained above, see supra p. 847, a sublessee which holds over after its sublessor's tenancy has terminated becomes a tenant at sufferance vis-"-vis the property owner. See Evans, 71 Mass. (5 Gray) at 309. In other words, the tenancy at sufferance arises by virtue of the holdover. See Benton v. Williams, 202 Mass. 189, 88 N.E. 843, 844 (1909). Thus, "a tenant for life, for years, a periodic tenant or a tenant at will who holds over without the consent of his landlord after his estate is brought to an end is a tenant at sufferance, and this however his estate may have terminated." 1 A. James Casner, American Law of Property " 3.32, at 235 (1952) (footnote omitted); see also C. Healy Assocs. v. Concord Oil Co., 1992 WL 24068, at *1 (Mass.App.Div.1992) ("After the termination of the lease, subtenant in possession was a tenant at sufferance." | Under Massachusetts law, sublessee which holds over after its sublessor's tenancy has terminated becomes a tenant at sufferance vis-a-vis property owner; in other words, tenancy at sufferance arises by virtue of the holdover. | What is a tenant at sufferance? | 000493.docx | LEGALEASE-00117440-LEGALEASE-00117441 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 19177 | Church of Christ in Hollywood v. Superior Court, 99 Cal. App. 4th 1244 | 386+2 | The Church's principal claim against Cage"Barile is one for trespass. " "The essence of the cause of action for trespass is an "unauthorized entry" onto the land of another. Such invasions are characterized as intentional torts, regardless of the actor's motivation. Where there is a consensual entry, there is no tort, because lack of consent is an element of the [theory underlying the tort]. "A peaceable entry on land by consent is not actionable." ..." " (Miller v. National Broadcasting Co. (1986) 187 Cal.App.3d 1463, 1480, 232 Cal.Rptr. 668, citation omitted.) Cage"Barile was frequently told by Church leaders not to return to the property. She did so anyway, without consent | Trespasses are characterized as intentional torts, regardless of the actor's motivation. | Is trespass an intentional tort? | 000734.docx | LEGALEASE-00117558-LEGALEASE-00117559 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 19178 | Powell v. Tosh, 929 F. Supp. 2d 691 | 386+10 | Next, all parties have moved for summary judgment on Plaintiffs' claims for trespass. A person trespasses if he or she "enters or remains upon land in the possession of another without the possessor's consent." Bradford v. Clifton, 379 S.W.2d 249, 250 (Ky.1964); see also Carbide & Chems. Corp., 226 S.W.3d at 54. "Kentucky law allows recovery under trespass in either of three instances: (1) the defendant was engaged in an extra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass." Rockwell Int'l Corp., 143 S.W.3d at 619. | Three basic elements of negligent trespass under Kentucky law are (1) the defendant must have breached its duty of care (negligence); (2) the defendant caused a thing to enter the land of the plaintiff, and (3) the thing's presence causes harm to the land. Restatement (Second) of Torts S 165. | When does the law allow for recovery under trespass? | 000746.docx | LEGALEASE-00117507-LEGALEASE-00117508 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19179 | Penix v. Delong, 473 S.W.3d 609 | 386+2 | Although conversion is an intentional tort, the old statute did not require the intent to convert. Contrary to the assertion of the dissent, we do not "lock our gaze" on the word convert. It is the word intent which is pivotal. The dissent also misses our point entirely by incorrectly stating that the only change from the old statute was to impose punitive damages. The change also, and importantly, added the requirement of intent. After missing this critical road sign the reasoning of the dissent quickly heads down the errant road of strict liability. It is this independent element of intent that makes this case distinct from the type of wrongdoing required to prove conversion or punitive damages. "In order to justify punitive damages there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety, or property of others." Gibson v. Fuel Transport, Inc., 410 S.W.3d 56, 59 (Ky.2013). See also Phelps v. Louisville Water Co., 103 S.W.3d 46, 52 (Ky.2003). Intentional wrongdoing is now a statutory requirement for the awarding of treble damages. The statute itself raises the threshold of penal damages from the common law penalty for trespass and conversion where mere recklessness might justify punitive damages. Reckless conduct may constitute a willful trespass. Sandlin v. Webb, 240 S.W.2d 69 (Ky.App.1951); see also Harrod Concrete and Stone Co. v. B. Todd Crutcher, 458 S.W.3d 290 (Ky.2015). Our interpretation of KRS 364.130 concludes this matter since we have previously held that "the common law, prior statutes and the public policy growing out of them all must yield to the superior authority of a later enacted statute...." Meece v. Feldman Lumber Co., 290 S.W.3d 631, 633 (Ky.2009). | Reckless conduct may constitute a willful trespass. | Can reckless conduct constitute a wilful trespass? | Trespass -Memo 35 - RK.docx | ROSS-003322067-ROSS-003322068 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 19180 | People v. Folsom, 268 A.D. 350 | 207+1 | We do not think that the foregoing constituted additional proof that the crime of incest had been committed. The birth of the child, of course, indicated that the daughter had intercourse with some man, but the essence of the crime of incest is not intercourse, but intercourse with a relative within the prescribed line of consanguinity. | The essence of "incest" is not intercourse, but intercourse with relative within prescribed line of consanguinity. | What is the essence of incest? | 000439.docx | LEGALEASE-00117758-LEGALEASE-00117759 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 19181 | Carroll v. United States, 229 F. Supp. 891 | 393+629 | In Niagara Falls Bridge Commission v. United States, (Ct.Cl.1948) 76 F.Supp. 1018, 111 Ct.Cl. 338, plaintiff building owner sued the United States for rental of spaces occupied by the Customs Service and Immigration Service of the United States. The Customs Service had executed a lease with the plaintiff, but the Immigration Service had no lease covering the space it occupied. The court allowed recovery of a "reasonable rental" for the space occupied by the Immigration Service and implied an obligation on the part of the United States to pay by virtue of its occupancy of the premises. Beginning at page 1019 of 76 F.Supp. the court stated:"If anyone goes into occupancy of another's premises not under a claim of right, he does so with the implied obligation that he will pay a reasonable rental therefor. This applies to the United States as well as to anyone else. (Citing cases.)"Such a contract is implied because no one has a right, of course, to occupy another's premises without paying for it, and it is to be presumed that a person occupying them does so with the understanding that he will discharge the obligation to pay rent which the law imposes upon him. It is to be presumed that a party intends to do that which the law requires him to do. | Where United States, on basis of Small Business Administration mortgage on lessee's cafeteria equipment which had been abandoned by lessee's bankruptcy trustee, had exclusive dominion and control of such equipment but did not remove it, lessors were deprived of use and occupancy of their property and United States was liable on implied contract for reasonable rental. | Is there an implied obligation to pay reasonable rental for occupying anothers premises without claim of right? | 000505.docx | LEGALEASE-00117642-LEGALEASE-00117643 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 19182 | In re Corpus Christi Hotel Partners, Ltd., 133 B.R. 850 | 233+508 | In Texas the term "rent" refers to the landlord/tenant relationship and not to the innkeeper/lodger relationship.The general rule is that a tenant is vested with an estate in the property while a hotel guest is not. Mallam v. Trans"Texas Airways, 227 S.W.2d 344, 346 (Tex.Civ.App."El Paso 1949, no writ); See also, In re Waco Hotel Limited Partnership, No. 6"86"00298 (W.D.Tex. July 16, 1986) (order on room receipts). A guest in a hotel is a mere licensee, not a tenant. They have only a personal contract and acquire no interest in the realty. In re Greater Atlantic and Pacific Inv. Group., Inc., 88 B.R. 356, 359 (Bankr.N.D.Okla.1988). Courts in other jurisdictions have also found that a security interest in hotel revenues is an interest in personalty, not realty. In re Kearney Hotel Partners, 92 B.R. 95, 99 (Bankr.S.D.N.Y.1988); In re Sacramento Mansion, Ltd., 117 B.R. 592, 607 (Bankr.D.Colo.1990); In re Mid"City Hotel Associates, 114 B.R. 634, 641 (Bankr.D.Minn.1990); In re Ashkenazy Enterprises, Inc., 94 B.R. 645, 647 (Bankr.C.D.Cal.1986). | Under Texas law, general rule is that tenant is vested with estate in property while hotel guest is not. | What is the distinction between a tenant and a lodger? | 000501.docx | LEGALEASE-00117959-LEGALEASE-00117960 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 19183 | In re Ellerbee, 177 B.R. 731 | 51+3374(1) | It is from the stew of conflicting and confusing uses of the words "willful" and "malicious" that this case must be decided. A finding of malice in connection with defamation may or may not include conduct that would be considered malicious in the context of section 523(a)(6). A "willful and malicious injury" under section 523(a)(6) need not be the product of spite or ill will, Sunco Sales, Inc. v. Latch (In re Latch), 820 F.2d 1163, 1166 n. 4 (11th Cir.1987), even though in defamation at least, "malice" means "ill will" and "malicious" means "full of malice." Yet, "malice" carries with it, if not an overtone of evil, at least the idea that the conduct of the debtor was repugnant. The Latin root "mal" means "bad." But, the primary problem of section 523(a)(6) is not just: how bad? It is: what did the debtor know about the likelihood of injury and what degree of conscious control did the debtor have over the events leading to injury? | "Willful and malicious injury," within meaning of statutory exception to discharge, need not be a product of spite or ill will. Bankr.Code, 11 U.S.C.A. S 523(a)(6). | What does the term malice mean in the context of defamation? | 000576.docx | LEGALEASE-00117918-LEGALEASE-00117919 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 15184 | Kaukab Min. Corp. v. Sec. & Exch. Comm'n, 288 I. Supp. 508 | 212r1456 | On the other hand, in the case where the publication of the list constitutes no adjudication of anything. It is merely a warning to the public, the effect of which might, indeed, be to discourage purchases of certain Canadian securities. It is, as urged, to be placed within such a scope, the defamatory... attention should be called to the well settled rule of equity that, equity does not require a libel or slander and that the only remedy for defamation is an action for damages. | Equity does not require a libel or slander, and only remedy for defamation is an action for damages. | What is the role of equity in defamation law? | 00082.docx | LEGALEASE 00117775 / LEGALEASE 00117776 | Condensed, SA | 0.79 | 0 | | | 1 | 1 |
| 15185 | Rico v. Key Benefunes of Maine, 662 7. Supp. 1132 | 115r1885 | The Court first turns to the question of whether an award of exemplary damages under Count 10 was proper under Maine law. In the recent case of Kelley v. Raymond, 494 A.2d 1355 (Me.1985), the Supreme Judicial Court of Maine adopted a stringent test to govern claims for exemplary damages. Under this test, a plaintiff may recover exemplary damages based upon conduct in excess of gross negligence, "at which the defendant acted with malice." Id. at 1361. | Borrowers could not recover exemplary damages from bank holding company under Maine law where evidence showed at most that holding company responded recklessly, callously and discriminatorily upon hearing allegation from state and Federal law enforcement officials correcting one borrower to organized crime, but there was no showing that holding company acted with deliberate conduct motivated by ill will or specifically intended to injure borrower. | Under what circumstances can a plaintiff recover exemplary damages? | 00007.docx | LEGALEASE 00117975 / LEGALEASE 00117976 | Condensed, SA, Sub | 0.06 | 0 | | 1 | 1 | |
| 15186 | Rico v. Key Benefunes of Maine, 662 7. Supp. 1132 | 115r1885 | The Court first turns to the question of whether an award of exemplary damages under Count 10 was proper under Maine law. In the recent case of Kelley v. Raymond, 494 A.2d 1355 (Me.1985), the Supreme Judicial Court of Maine adopted a stringent test to govern claims for exemplary damages. Under this test, a plaintiff may recover exemplary damages based upon conduct in excess of gross negligence, "at which the defendant acted with malice." Id. at 1361. | Borrowers could not recover exemplary damages from bank holding company under Maine law where evidence showed at most that holding company responded recklessly, callously and discriminatorily upon hearing allegation from state and Federal law enforcement officials correcting one borrower to organized crime, but there was no showing that holding company acted with deliberate conduct motivated by ill will or specifically intended to injure borrower. | When may a plaintiff recover exemplary damages? | Libel and Slander - Memo 87 - TH.docx | ROSS 000288463-ROSS 000288464 | Condensed, SA, Sub | 0.06 | 0 | | 1 | 1 | |
| 15187 | Maxwell v. Nuvernadosa Electronic Corp., 713 F. Supp. 2184 | 313k=111 | Manufacturers of a product have a duty to market safe products. Dalton v. Stedman Machine Co., 2010 WL 4642, 2010 WL 15-1676-X-11-16134, Feb. 2, 2008) (McAvoy, J.) This duty is owed, at a minimum, to all foreseeable users of the product. Urbaniec v. Indoor Corp., 11-3 1.2d 124, 126 (2d Cir. 1998) ("This well-settled under New York law that a manufacturer is under a duty to use reasonable care in designing its product so that it will be safe when used in the manner for which the product was intended, as well as unintended yet reasonably foreseeable uses." As the Court finds that Plaintiff was a foreseeable user of Defendant's award Plaintiff a duty to manufacture a safe knee replacement product... | Does the manufacturer of a product have the duty to market safe products? | 00045.docx | LEGALEASE 00117884 / LEGALEASE 00117885 | Condensed, SA, Sub | 0.82 | 0 | | 1 | 1 | |
| 15188 | Dvorzsak v. Gillies, 363 N.W.2d 999 | 233k710 | A tenant who wrongfully holds over after the expiration of a lease becomes a tenant at sufferance. See, e.g., Thompson v. Baxter, 107 Minn. 122, 125, 119 N.W. 797, 798 (1909), Esgels v. Mitchell, 30 Minn. 122, 124, 14 N.W. 510, 511 (1883). Does a tenant hold title by the May 14 letter that he was kicked out of the building by May 31 and failure to do so constitutes a June rent payment. If the lease expired because he failed to renew t... Gillies wrongfully held over. Gillies therefore became a tenant at sufferance, and the trial court correctly ruled that no further notice was required to terminate... | Is a tenant by holding over also a tenant by sufferance? | 00810.docx | LEGALEASE 00117793 / LEGALEASE 00117796 | | 0.85 | 0 | | | 1 | |
| 15189 | United States v. Rahman, 189 F.3d 88 | 384=1 | Moreover, any acceptable recitation of the elements of treason must include the breach of allegiance. The concept of allegiance betrayal is integral to the term "treason," and has been since well before the drafting of the Constitution. See 3 Holdsworth, History of English Law 287 (noting that "the idea of treachery" has been part of treason offense since the reign of Edward III); In both "to common-law and constitutional definitions, the term "treason" imports a breach of allegiance..." Cass 8 U.S.C. s 82, 183 (W.D. La.) ("treason" imports a breaching..." Id. Quoting 3 Tomlin's Law Dictionary 637); Blackstone, too, noted that treason... "in the highest civil crime..." imports a betraying..." breach of faith." 4 Blackstone, supra, at *75. Early on, our Supreme Court recognized that "(treason) is a breach of allegiance, and can be committed by him who owes allegiance..." Wittberger, 18 U.S. (5 Wheat.) 76, 97, 5 L.Ed. 37 (1820) (Marshall, C.J.). | Treason includes in its elements a breach of allegiance to the United States. 18 U.S.C.A. § 2381. | Does element of treason include the breach of allegiance? | Treason - Memo 2 - ANS.docx | ROSS 000287424-ROSS 000287427 | Condensed, SA, Sub | 0.92 | 0 | | 1 | 1 | |
| 15190 | Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524 | 25T=119 | Arbitration is favored in the law. See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Accordingly, parties to such agreements cannot avoid them by casting their claims in tort, rather than in contract. See, e.g., Acevedo Maldonado v. PPG Indus., Inc., 514 F.2d 614, 616 (1st Cir.1975). Likewise, the courts wrongfully hold over that these obligations are imposed by... arbitration agreement defendant can nevertheless compel arbitration against a signatory against themselves. | Parties to arbitration agreements cannot avoid them by casting their claims in tort, rather than in contract. | Is arbitration favored in the law? | Alternative Dispute Resolution- Memo 154 - RK.docx | ROSS 000287729-ROSS 000287731 | SA, Sub | 0.88 | 0 | | 1 | 1 | |
| 15191 | Ex parte Cobb, 703 So. 2d 871 | 374=15 | Aside from the fact that we find the Stewart court's reliance on inherently misplaced, we also hold that the Stewart court erred in concluding that fists may be included in the definitions found in "13A*7*2(11) and (12)" of our Criminal Code. Unlike the statute that "13A*7*2(11) the court held that "there is no limitation expressed in "13A*7*2(11) which would prevent human fists from being considered a "deadly weapon" under appropriate circumstances. "703 So. 2d at 466, We conclude that under a reasonable reading of the statutory definitions, fists cannot be considered "deadly weapons" or "dangerous instruments." | Are fists or hands classified as deadly weapons? | 00078.docx | LEGALEASE 00118079 / LEGALEASE 00118079 | SA, Sub | 0.59 | 0 | | 1 | 1 | 1 |

3381

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19192 | Walker v. Morris, 78 Ga. App. 821 | 302v3 | (b) The defendant contends here that the court erred in its decision for the reason that the evidence demanded a judgment for the defendant. It is contended that the amount involved was one open account or contract indivisible; that the plaintiff testified that he treated the transaction as one open account and, therefore, the plaintiff could not divide this open account into separate and distinct actions for judgment for the portion thereof and thereafter maintain an action for the balance. In support of this contention the defendant cites for our consideration cases v. Schuster, 29 Ga.App. 121 (114 S.E. 59); Evans v. Collins, 79 Ga. 316 (4 S.E. 264); Chappell v. F.A.D. Andrea, Inc., 47 Ga.App. 866, 171 S.E. 582. These decisions are to the effect that "all claims of the parties to a suit are to be adjusted in one action. Claims (3 and 5) where an accrued under a contract must be litigated and adjudicated in one action." (Italics ours.) And, to the effect that the counsel for the defendant, plaintiff, successive suits on the same contract, et cetera. (Italics ours.) 468, and the case of Rivers v. A.C. Wright & Company, 117 Ga. 81, 43 S.E. 499. In cases where it is predicated upon the defendant to the case of Central Bank & Trust Company v. Stcode, 139 Ga. 54, 75 S.E. 47, 587. In this connection we are cited to Code section 20-1401 which says: "A contract may be entire or severable. In an entire contract, if any part of the consideration is legal, and any part illegal, the whole contract is void." In this connection also, the contention ... | Does a court identify the function of a pleading by its name or substance? | 001166.docx | LEGALEASE 00118116- LEGALEASE 00118120 | Condensed, SA, Sub 0.97 | | 0 | 1 | 1 | 1 | |
| 19193 | Gilbert v. Texas Dept of Criminal Justice, 490 S.W.3d 598 | 307v2 | Gilbert's argument, however, conflates venue and individual courts. "In Texas, "venue" refers to which particular court is proper within a forum state." In re Great Lakes Dredge & Dock Co. L.L.C., 251 S.W.3d 68, 73 (Tex.App.-Corpus Christi 2008, orig. proceeding) (emphasis added). Thus, although Gilbert couches this argument in terms of venue, his actual complaint is that he was not allowed to choose a particular court within his chosen venue of Brazoria County. A plaintiff does not have a right to select a particular judge or court in a multicourt county. In re Bennett, 960 S.W.2d 35, 40 (Tex.1997) (orig. proceeding). | Does a plaintiff have the right to select a particular judge or court? | Venue - Memo 28 - TH.docx | ROSS-003212123-ROSS-003212213 | Condensed, SA, Sub 0.55 | | 0 | 1 | 1 | 1 | |
| 19194 | DuRei & Co, Robertson Stephens & Co, 1444 ad 1382 | 25v125 | Upon a careful reading of 1318 in context, moreover, it is difficult to escape the conclusion that the last of the two sections, taken together, are ambiguous "and that, at a maximum, it stands for a proposition that offered significant opportunity to clarify the interaction of Title VII's employment and the statutory scheme. "Indeed, if Congress intended to "examine[ing] the language of the governing statute," "we must not be guided by "a single sentence or member of a sentence, but look[] to the provisions of the whole law, and to its object and policy." John Hancock Mut. Life Ins. Co. v. Harris Trust & Savings Bank, 510 U.S. 86, 94''95, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (quoting Kelly v. Robinson, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (in turn quoting Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (quoting other quotation marks and citations omitted))); see also Batey v. United States, 516 U.S. 137, 145, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995)) ... | What does it mean when the law says arbitration is encouraged? | Alternative Dispute Resolution - Memo 167 - 003289449 IN.docx | ROSS-003289487-ROSS-003289469 | Condensed, SA, Sub 0.67 | | 0 | 1 | 1 | 1 | |
| 19195 | Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 | 148v2.1 | The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. It may be doubted how far exceptional cases, like the blowing up of a house to stop a conflagration, go and if they go beyond the general rule, whether they do not stand as much upon tradition as upon principle. Bowditch v. Boston, 101 U.S. 16, 25 L.Ed. 980. In general, it is not plain that a man's misfortunes or necessities will justify his shifting the damages to his neighbor's shoulders. Spade v. Lynn & Boston R. Co., 172 Mass. 488, 489, 52 N.E. 747, 43 L.R.A. 832, 70 Am. St. Rep. 298. We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. As we already have said this is a question of degree – and therefore cannot be disposed of by general propositions. But we regard this as going beyond any of the cases decided by this Court. The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. ... When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States. ... | Can excessive regulations be considered a taking? | 001280.docx | LEGALEASE 00118355- LEGALEASE 00118356 | Condensed, SA, Sub 0.93 | | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 19196 | Inre Meyer, 560 B.R. 588 | 233>S31 | "The basic federal rule in bankruptcy is that state law governs the substance of claims." Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (internal quotation marks omitted). Under Iowa law, a lease is a contract. Alta Vista Props., LLC v. Mauer Vision Ctr., PC, 855 N.W.2d 722, 727 (Iowa 2014). "Because leases are contracts ... ordinary contract principles apply." Walsh v. Nelson, 622 N.W.2d 499, 503 (Iowa 2001). | Under Iowa law, a lease is a contract and, as such, is subject to ordinary contract principles. | Are leases controlled by the principles of contract law? | Landlord and Tenant Memo 58 - 84.docx | ROSS-000268634?-ROSS-000268648 | Condensed, SA, Sub | 0.79 | | 1 | 1 | 1 | 1 |
| 19197 | State v. Youd, 74 Ohio App. 361 | 207>S | In the opinion, the trial court stated that in its judgment affinity was a broader term than blood relation in the case of Cross v. State, supra. However, we are of the view that if the Legislature desires to include offenses than the blood relations at common-law adopted, that body should act, and the meaning of the statute should not be extended by judicial construction to whether the defendant be guilty of any other crime we do not decide, but we are clearly of the opinion that the accused cannot, under the evidence, be legally convicted of the crime of incest, and that the conviction and sentence are contrary to law. This being the case, there is no reason or justification for granting a new trial. | Sexual intercourse between a man and his adopted daughter not of the blood of the man and wife adopting her does not constitute a crime of incest under Gen.Code S 13023. | Is sexual intercourse between a man and his adopted daughter (considered to be incest)? | 001286.docx | LEGALEASE-00118520-LEGALEASE-00118521 | Condensed, SA, Sub | 0.78 | | 1 | 1 | 1 | 1 |
| 19198 | Loth v. Levitt, 469 F. Supp. 2 d 575 | 217>417 | The test for whether a statement is a factual assertion is whether the statement is precise, creates a single meaning, and is capable of being verified as true or false. After a full 3 d 579. This tort, like the test for innocent construction, is a reasonableness standard; whether a reasonable reader would understand the defendant to be implying the assertion of a fact or opinion. Republic Tobacco, 381 F.3d at 726; Dubinsky v. United Service Master Executive Council, 330 Ill.App.3d 811, 813-14, 264 Ill.Dec. 580, 769 N.E.2d 1145, 44 F4 9 (1999) (citing Bryson, 220 Ill.Dec. 195, 672 N.E.2d at 1217). Language that is "loose, figurative, or hyperbolic" negates the impression that a statement is asserting actual facts. Milkovich, 497 U.S. at 21, 110 S.Ct. 2695. Accordingly, "[v]ague, unprovable statements and statements of opinion do not give rise to a defamation claim." Hopewell v. Vitullo, 299 Ill.App.3d 513, 517, 233 Ill.Dec. 456, 701 N.E.2d 99, 104 (1998). In determining whether the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." Republic Tobacco, 381 F.3d at 727 (internal quotation omitted). | Under Illinois law, vague, unprovable statements and statements of opinion do not give rise to a defamation claim. | Do vague statements constitute defamation? | 001312.docx | LEGALEASE-00118497-LEGALEASE-00118498 | SA, Sub | 0.91 | | | 1 | 1 | |
| 19199 | Owen v. Westwood Lumber Co., 237 Or 2 | 211>1264 | I am unable to distinguish the case in principle from that of Adams v. U.S., 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas. 764, or Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441, L.R.A. 1915C, 960. The former involved the constitutional validity of an act of Congress (35Stat. 1415) concerning interstate carriers and their employees, which made it a crime for any carrier ... to threaten any employee with loss of employment, or unlawful threaten any employee who is a member of a labor organization, or discriminate against any employee, because of his membership in such an organization. The court held the law invalid because an invasion of the personal liberty as well as rights of property guarantied by the Fifth Amendment to the Constitution. | State statutes, making it crime for employer to require employee to board at particular place or trade at particular store, held unconstitutional [St. L. 1177, 2178; Const. U.S.Amend. 14]; Or L. 2177, 2178, making it crime for an employer to compel by threat or intimidation, or threats to discharge, or using any means to compel an employee against his will to board at any particular hotel or purchase goods or supplies at any particular store, held invalid, as an unlawful interference with the liberty to contract, in violation of the fourteenth Amendment. | Can an employer threaten any employee with loss of employment because of his membership in a labor organization? | 001398.docx | LEGALEASE-00118477-LEGALEASE-00118479 | SA, Sub | 0.31 | | | 1 | 1 | |
| 19200 | Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 | 149>22 | The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property. See, e.g., United States v. Pewee Coal Co., 341 U.S. 114, 71 S.Ct. 670, 95 L.Ed. 809 (1951) (Government's seizure and operation of a coal mine to prevent a national strike of coal miners effected a taking); United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945) (Government's occupation of private warehouse effected a taking). Indeed, until the Court's watershed decision in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), "it was generally thought that the Takings Clause reached only a direct appropriation of property, or the functional equivalent of a practical ouster of the owner's possession." Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (citations omitted and emphasis added; brackets in original); see also id., at 1028, n. 15, 112 S.Ct. 2886 ("[E]arly constitutional theorists did not believe the Takings Clause embraced regulations of property at all"). | Where government requires owner to suffer permanent physical invasion of her property, however minor, it must provide just compensation. U.S.C.A. Const.Amend. 5. | Is taking requiring just compensation a direct appropriation of physical property? | 001450.docx | LEGALEASE-00118816-LEGALEASE-00118817 | SA, Sub | 0.86 | | | 1 | 1 | |
| 19201 | Bass Enterprises Prod. Co. v. United States, 381 F.3d 1360 | 149>21 | A taking may result, however, when an "extraordinary delay in governmental decisionmaking occurs." U.S.C.A. Const. Amend. 5. 10 F.3d 796, 800 (Fed.Cir.1993). The Supreme Court, as well as our own court and other sister circuits, have recognized that "extraordinary delays" will result in a taking. See, e.g., Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (finding a compensable taking despite eight year delay); Wyatt v. United States, 271 F.3d 1090 (Fed.Cir.2001) (same finding); Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 800 (Fed.Cir.1993) (same); see also Forest Props., Inc. v. United States, 177 F.3d 1360, 1367 (Fed.Cir.1999) (observing that the government may avoid paying compensation if its delay is not extraordinary). | Compensable taking may result when extraordinary delay in governmental decisionmaking occurs. U.S.C.A. Const. Amend. 5. | Does the government's delay in acquiring a property constitute a taking? | 001377.docx | LEGALEASE-00118977-LEGALEASE-00118978 | SA, Sub | 0.84 | | | 1 | 1 | |
| 19202 | First Nat. Bank v. Adams, 123 Minn. 279 | 302>214(2) | The demurrer admits all the facts well pleaded, but it does not admit the truth of facts not well pleaded. | A demurrer admits all facts well pleaded, but it does not admit the truth of the facts set forth in improper or illegal pleadings. | Will a demurrer admit facts well pleaded? | Pleading - Memo 154 AND.docx | ROSS-000268634?-ROSS-000268633 | Condensed, SA, Sub | 0.03 | | 1 | 1 | 1 | 1 |

Appendix D

3383

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 15010 | F.H. Rogers Lumber Co. v. McRae, 2 Tratt, T 468 | 3917 | The act of Congress of February 26, 1853, 10 Stat. 794, s. 379, provides: "That before any foreign corporation shall be permitted to carry on business in the Indian Territory, it shall, by its certificate, * * * designate an agent, who shall reside within the United States Court of Appeals in the Indian Territory is held, upon whom service of summons and other process may be made." It is a presumption that the law that all persons and corporations act in accordance with law, and have legal capacity to sue. Elliott on Evidence, vol. 2, *1265, Section 1361. Mann, Eng. 2nd. 7, Am. St. 1895." 13672 provides, "In pleading the performance of a condition precedent, it shall be sufficient to aver generally that the party has performed all his conditions, precedent." | Under the express provisions of Mann Dig. § 5060 (Ind'T Ann St 1899, § 1367), presumptions of law need not be stated in pleading. | Should presumption of law be pleaded? | Pleading - Memo 59 ANS.doc | LEGALEASE 00005756-LEGALEASE 00005758 | Condensed, SA, Sub 0.82 | 0.82 | 0 | | 1 | 1 |
| 15004 | Jaster v. Comet 8 Const., 438 S.W.3d 556 | 1341 | The common meaning of the term "action" refers to an entire lawsuit or cause or proceeding, and it does not refer to claims or causes of action asserted within a suit, cause, or proceeding. Black's Law Dictionary at 28 (defining "action" as "[a] civil or criminal judicial proceeding"). The term "action" is generally synonymous with "suit," which is a demand of one's rights in court. Thomas v. Oldham, 895 S.W.2d 352, 356 (Tex.1995); see also In re Canales, 52 S.W.3d 698, 701 (Tex.2001); McKnight v. Virginia Mirror Co., 463 S.W.2d 428, 430 (Tex.Civ.App.—Amarillo 1971). ... | A "suit" is any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him. (Per Boyd, J., with three justices concurring.) | What is a suit? | Action - Memo 4 - MS.doc | ROSS-003297276-ROSS-003297278 | SA, Sub | 0.87 | 0 | | 1 | 1 |
| 15005 | In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, Stranded Costs & Restructuring Filings, 330 N.J. Super. 65 | 145+11.3(1) | The Act defines "bondable stranded costs" as including the cost of retiring existing debt, federal, state, and local tax liabilities associated with unbundled costs or the securitization transaction bonds. N.J.S.A. 48:3-51. Thus, the BPU did not violate the Act by allowing the transaction costs of $125 million to be securitized. Nor did it violate the Act when it provided that Duke $4.97 billion as the total for stranded cost figure for total eligible stranded costs and arrived at $4.97 billion as the total for non-Tranchable costs. Perhaps a very substantial question is whether the $2.4 billion figure is not-of-tax figure, as the BA claims, and thus need not have been capitalized in the "gross-up" figure of $4.97 billion to arrive at the rate. | Board of Public Utilities (BPU) decision authorizing electric utility to issue up to $2,525 billion of 15-year transition bonds, which represented $2.4 billion of the $3.98 billion net-of-tax transition costs plus $125 million of transaction costs, and not allowing the anticipated taxes related to securitization to be collected through a separate market transition charge (MTC) tax over course of 15-years did not result in utility securitizing more than 75% of stranded costs allowed under Electric Discount and Energy Competition Act of 1999. N.J.S.A. 48:3-61, subd. c(1). | What are Stranded costs? | 002335.docx | LEGALEASE_00119325-LEGALEASE_00119326 | Condensed, SA, Sub 0.29 | 0.29 | 0 | | 1 | 1 |
| 15006 | Cent. Lincoln People's Util. Dist. v. Stewart, 221 Or. 398 | 37+14990 | A people's utility district is a quasi-municipal corporation. Hillman v. Northern Wasco Co. P.U.D., 213 Or. 264, 323 P.2d 664; Northern Wasco County People's Utility District v. Wasco County People's Utility District v. Kelly, 171 Or. 691, 137 P.2d 295. For "[w]hile they have some of the attributes of a municipal corporation, they are public corporate, and are created by a general legislative enactment as an agency of the state for some governmental purpose." Northern Wasco County People's Utility District v. Kelly, 171 Or. 691, 731, 137 P.2d 295. ... | The definition of "corporation" as set forth in ORS 317.010(2) includes all corporations, municipal, quasi-municipal and private, and is broad enough to include a people's utility district furnishing electricity to customers so as to subject such district to an excise tax measured by its net income. ORS 308.505 to 308.730, 308.505(1), 308.515, 317.010(1), 317.070(1), (Laws 1959 c. 343, ORS 308.0000 et seq.) | Can the court accept common law definition of death when there is no statutory definition? | Electricity - Memo 54 - JS.docx | ROSS-003287909-ROSS-003287910 | Condensed, SA, Sub 0.38 | 0.38 | 0 | | 1 | 1 |
| 15007 | State v. Guess, 244 Conn. 761 | 203+509 | A people's utility district is a quasi-municipal corporation. Hillman v. Northern Wasco Co. P.U.D., 213 Or. 264, 323 P.2d 664; Northern Wasco County People's Utility District v. Kelly, 171 Or. 691, 137 P.2d 295. For "[w]hile they have some of the attributes of a municipal corporation, they are public corporate, and are created by a general legislative enactment as an agency of the state for some governmental purpose." We begin with the defendant's claim that this court has accepted a common law definition of death that is limited to the cessation of the respiratory and circulatory systems and thus that the legislature alone has the authority of providing a statutory definition of death. ... | Supreme Court may, as matter of common law adjudication and absent adoption of Uniform Determination of Death Act or definition in Penal Code, define term "death," in accordance with principle that technology as they have evolved in recent years, for purposes of Penal Code. C.G.S.A. § 1-1 (a). | | Homicide - Memo 54 - JS.docx | LEGALEASE_00005919-LEGALEASE_00005940 | Condensed, SA, Sub 0.42 | 0.42 | 0 | | 1 | 1 |
| 15008 | Lee v. Bankers Tr. Co., 166 F.3d 540 | 237+1.6 | Discouraging defamation is a compelling public value, and so, the law of New Jersey, the protection of reputation, is no less important. See Sisler v. McDonough, 564 F.2d 279, 281 (3d Cir.1977) (citing Restatement (Second) of Torts 558), abrogated by Gertz v. Robert Welch, Inc. 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) Court's have determined reasonable periods on a case by case basis and have approved periods as short as one week. See Williams v. Manley, 291 N.J.Super. 244, 677 A.2d 134, 139-40 (1996) (twenty-two months did not fix the complaint until October 23, 1992, twenty-two months after... | Discouraging defamation is conduct regulating as opposed to loss-allocating; thus, Erie instructs court to choose of law as to defamation claim is governed by situs of tort. | Is discouraging defamation a conduct regulating rule? | 002276.docx | LEGALEASE_00105775-LEGALEASE_00105777 | Condensed, SA, Sub 0.41 | 0.41 | 0 | | 1 | 1 |
| 15009 | Schwartz v. Burdick, 96 I.B 917 | 237+76 | We will apply a shortened limitations statute structure only if. Schwartz had a reasonable reliance on the term. See also in Mundaca-Beck, 150 Vt. 60, 544 A.2d 1287-80, 1294 (1988). Those who seek to bar a claim under a shortened statute of limitations must be proved not to contract of law. See, e.g., Turrell, 861 F.2d 282; Wilson v. Garcen, 956 F.2d 738 (2d 1992) (three years); Bradley v. Armstrong Rubber Co., 130 F.3d 168 (5th 1997) (six years); Illinois statute of limitations for defamation is only one year; this delay is unreasonable. See, e.g., Farrell v. 862 F.2d 282; Wilson v. Garcen, 956 F.2d 738; (N.D. Ill. 1992) (twenty months unreasonable). | After legislature shortened limitations period applying to prisoner's defamation claim, by abolishing tolling of statute of limitations where prisoner release, prisoner acted unreasonably in waiting 22 months after effective date of amendment before filing defamation claim; delay was unreasonable, particularly where statute of limitations for defamation was only one year. S.H.A. 735 ILCS 5/13-201, 735 ILCS 5/13-211. | What is the statute of limitations for defamation as per state laws? | Libel and Slander - Memo 117 - JS.docx | LEGALEASE_00007157-LEGALEASE_00007372 | Condensed, SA, Sub 0.65 | 0.65 | 0 | | 1 | 1 |

Appendix D

1584

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19110 | Espy v. Bank of Cincinnati, 85 U.S. 604 | 8,367v27 | Bank checks are not "bills of exchange," and though the rules applicable to each are in many respects the same, there often are important differences… | Bank checks are not "bills of exchange" and laws applicable to bills of exchange may not be applicable to bank checks. | Are the same rules applicable to bank checks and bill of exchange? | Bills and Notes - Memo 14 - MS.docx | ROSS-003281124-ROSS-003281128 | Condensed, SA, SoP 0.94 | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 19111 | Coal Tar Fair & Equitable Regulation v. Stark Co. v. F.E.R.C., 297 F.3d 771 | 145v10 | The Coalition's principal argument is that the Federal Power Act does not confer on the Commission the authority to… | Arguments that were not raised in rehearing application before Federal Energy Regulatory Commission (FERC) were not reviewable by Court of Appeals, but those petition contention that arguably was raised by petitioner's use of word "discriminatory" would be reviewed. U.S.C.A. Const.Amend. 5; Federal Power Act, § 313(b), as amended, 16 U.S.C.A. § 825l(b). | What was the purpose behind the enactment of the Federal Water Power Act? | 002379.docx | LEGALEASE-00193480-LEGALEASE-00193482 | Condensed, SA, SoP 0.83 | 0.83 | 0 | 1 | | | |
| 19112 | Enbridge Pipelines (E. Texas), v. Gilbert Wheeler, 393 S.W.3d 921 | 115v27 | As stated in 18 Am.Jur., Eminent Domain, § 298, p. 961: "In cases arising under the exercise of the right of eminent domain, benefits are usually divided into… | Trial court was required to instruct jury to determine whether property damage was permanent or temporary, in owner's action against pipeline company… | Can a party recover damages for both permanent and temporary injuries in a single action? | Eminent Domain - Memo 92 VP.docx | ROSS-003284150-ROSS-003284151 | Condensed, SA, SoP 0.51 | 0.51 | 0 | 1 | | 1 | |
| 19113 | Crawford v. Cent. Neb. Pub. Power & Irr. Dist., 154 Neb. 832 | 148v146 | As stated in 18 Am.Jur., Eminent Domain, § 298, p. 961: "In cases arising under the exercise of the right of eminent domain, benefits are usually divided into two classes, general and special…" | The distinction between general and special benefits conferred by a public work is that "general benefits" are those which arise from the fulfillment of the public object which justified the condemnation, and "special benefits" are those which arise from the peculiar relation of the land in question to the public improvement. | How are benefits resulting from public improvements where property is taken by condemnation classified? | Eminent Domain - Memo 99-VP.docx | LEGALEASE-00008153-LEGALEASE-00008153 | Condensed, SA, SoP 0.53 | 0.53 | | | | 1 | |

Appendix D

3385

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19214 | Vinings Jubilee Partners, Ltd. v. Vinings Dining, 284 Ga. App. 34 | 233×590 | OCGA "4 AF" 74(a)(1) requires the tenant to pay into the registry of the trial court all rent and utility payments which may fall due... | In a commercial lease, the default provisions control. | Do the default provisions control in a commercial lease? | 001943.docx | LEXLEASE 00119257; LEXLEASE 00119273 | SA, Sub | 0.95 | 0 | | | 1 | |
| 19215 | Fisher Flouring Mills Co. v. United States, 17 F.2d 232 | 257×115 | The decision in the Lutz case has been repeatedly reaffirmed by the same court, and it has become the settled law of that jurisdiction that common law arbitrations are entirely supplanted by the state statute... | Common law arbitration held entirely supplanted by state statute. Rem.Comp.Stat.Wash. § 420 et seq. | Do state statutes supplant Common law arbitration? | 001788.docx | LEXLEASE 00119723; LEXLEASE 00119724 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | |
| 19216 | United States v. Pino, 133 F.2d 1, 998 | 110+11 | The phrase where it is found is where it clearly appears that the magistrate before whom these extradition proceedings were heard had jurisdiction of the subject matter and that the evidence before him justified the issuance of a certificate to the executive authority for the surrender of the accused. Authorities abound which hold that it is sufficient if the accused is held on competent legal evidence, and, further, if probable cause exists for believing the defendant guilty of the offense charged... | An information in extradition proceeding charging accused with "assault with intent to kill and murder" sufficiently brings the offense within article 10 of the treaty with Great Britain authorizing extradition of persons charged with "assault with intent to commit murder." | Is what/liable killing considered murder? | 002055.docx | LEXLEASE 00119757; LEXLEASE 00119758 | SA, Sub | 0.8 | 0 | | | 1 | |
| 19217 | Plonka v. Mailloux, 208 Cal. App. 4th 1596 | 13+1 | "The primary right theory ... provides that a "cause of action" is comprised of a "primary right" of the plaintiff and a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citations.] ... As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the legal theory on which liability for that injury is premised. "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." [Citation.]'" (Crowley v. Katleman (1994) 8 Cal.4th 666, 681-682, 34 Cal.Rptr.2d 386, 881 P.2d 1083; see also Boeken v. Philip Morris USA, Inc. (2010) 48 Cal.4th 788, 798, 108 Cal.Rptr.3d 806, 230 P.3d 342.) | A "primary right" is simply the plaintiff's right to be free from the particular injury suffered, and it must therefore be distinguished from the legal theory on which liability for that injury is premised. | What is a primary right? | Action - Memo 1 - Anti.docx | ROSS-0002822158-ROSS-0002822159 | Condensed, SA, Sub | 0.8 | 0 | 1 | | 1 | |
| 19218 | Higgins v. Oversage Pottery Co., 99 F. Supp. 532 | 13+7 | Plaintiff contends that certain of the defenses should be stricken for various reasons. The plaintiff contends that certain defenses are immaterial since they assert improper motives on the part of the plaintiff in bringing the action, insofar as this is concerned, the defenses should be stricken. The test of the motives of parties in a civil action has no proper place in a judicial forum. Ramsay v. Hanna-Mfg. Co., D.C. Ohio, C.1931, 47 F.2d 621. As observed by Mr. Justice Brown in Dickerman v. Northern Trust Co., 1900, 176 U.S. 181, at page 190, 20 S.Ct. 311, at page 314, 44 L.Ed. 423, if the law as construed gives the plaintiff a right... the motive which actuates him is wholly immaterial. The complications would be introduced into any lawsuit if plaintiff were required to disclose their real motives... The plaintiff's rights are entitled to relief in respect to the matter concerning which he sues, his motives are immaterial. King-Richardson Co., 1 F.D.... 1950, 36 F.2d 675, 87 A.L.R. 1465. | Where plaintiff is entitled to relief in respect to the matter concerning which he sues, his motives are immaterial. | Is the plaintiff's motive in bringing an action material? | 002495.docx | LEXLEASE 00119995; LEXLEASE 00119996 | SA, Sub | 0.88 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19219 | GMAC Mortg. v. Orcutt, 506 B.R. 52 | 366v15 | Moreover, "the competing equities do not concern only GMAC and Debtors. Although the Trustee has removed silent in the issue, the interests of Debtors' unsecured creditors must also be considered, and '[s]ubrogation is not to be enforced to the prejudice of equal or higher rights.'" Nordlik & Graham Ins Co., 218 A.2d at 661 (observing that the "competing equities" must be considered "in this situation"); see also In re Coutlard, 488 B.R. 466, 478 (Bankr. W.D. Wis. 2013) ("Equitable subrogation ... is not simply based on whether a lender paid another's debt; it considers a balancing of the equities between competing claimants."). In this court granted out in application of the doctrine of equitable subrogation may work "to the detriment of the other unsecured creditors. The Bankruptcy Court should thus consider whether the unsecured creditors of rather than Debtors, should reap the benefit of GMAC's mistake and whether the law of equitable subrogation would nonetheless entitle GMAC to relief. | Under Vermont law, residential mortgage lender that, in connection with loan refinancing transaction, paid off prior loan on which its borrower and her husband were primarily liable did not also barred from asserting right to be equitably subrogated to lien rights associated with mortgage loan that it paid off when borrower's new loan was not barred from asserting right to failure to ensure that husband joined in signing mortgage. 27 U.S.A. S 1416). | Is the application of equitable subrogation based on whether a lender paid another's debt? | 003511.docx | LEGALEASE 0019860 LEGALEASE 0019869 | Condensed, SA, Sub | 0.53 | 0 | | 1 | 1 | |
| 19220 | Associated Int. Ins. Co. v. Scottsdale Ins. Co., F.3d 508 | 366v1 | "Subrogation is the substitution of one party for another such that the new party may assert the rights of the substituted party." Cont'l Cas. Co. v. N. Am. Capacity Ins. Co., 683 F.3d 79, 85 (5th Cir. 2012). Without subrogation, the only way to prevent an insured from obtaining a double recovery would be to delay the insurer's payment until recovery from a third party could be had or to disallow an insured from recovering from a third party once the insurer paid out the claim. The former could cause delay in payment to the insured, while the later could cause harm to which the later could allow forfeiture to its insured liability claim & Tsou & Thomas F. Segalla, Couch on Insurance" 223:4 (3d ed. 2005). Subrogation avoids these problems by permitting an insurer to "stand in the shoes of the insured," allowing the insurer to assert any claims or rights held by the insured against a third party. MidContinent Cas. v. Liberty Mut. Ins., 236 S.W.3d 765, 774 (Tex. 2007); see also Am. Centennial Ins. Co. v. Canal Ins. Co., 843 S.W.2d 480, 484 (Tex. 1993) (allowing a subrogee to assert a legal malpractice claim against the subrogor's defense attorney). | Under Texas law, subrogation is the substitution of one party for another such that the new party may assert the rights of the substituted party. | What is subrogation? | 003513.docx | LEGALEASE 00120004 LEGALEASE 00120005 | Condensed, SA | 0.88 | 0 | | 1 | | |
| 19221 | ALI Enterprises, LLP v. Insm Chemco, 160 Conn. App. 375 | 366v1 | "In numerous cases it has been held that one who advances money to discharge a prior lien, or who purchases property and takes a new mortgage as security is entitled to be subrogated to the rights under the prior lien against the holder of an intervening lien of which he was ignorant ... Thus, the unjust enrichment principle is the controlling consideration." [Citation omitted; internal quotation marks omitted.] Assembliers v. Williams, supra, 171 Conn. App. at 791, 750 A.2d 1133. Ultimately, as our Supreme Court has noted, [t]he object of [legal or equitable] subrogation is the prevention of injustice. [Internal quotation marks omitted] Wasko v. Manella, supra, 269 Conn. at 532, 849 A.2d 777. | The object of legal or equitable subrogation is the prevention of injustice. | Is prevention of injustice the object of subrogation? | Subrogation - Memo #1 RM.docx | LEGALEASE-0006852 LEGALEASE-0006853 | Condensed, SA | 0.93 | 0 | | 1 | | |
| 19222 | In re Sarex, 516 B.R. 423 | 366v1 | As noted above, IBC cannot sustain its subrogation claim. The Texas Supreme Court summarizes the doctrine of equitable subrogation as follows: The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. Texas courts interpret this doctrine liberally. Although the doctrine most often arises in the insurance context, equitable subrogation applies in every instance in which one person, not acting primarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd., 259 S.W.3d 140, 142 (Tex. 2008)(quoting... | Texas courts interpret the doctrine of equitable subrogation liberally. | Do courts liberally apply the doctrine of equitable subrogation liberally? | 003606.docx | LEGALEASE 0019957 LEGALEASE 0019958 | Condensed, SA | 0.91 | 0 | | 1 | | |
| 19223 | Williams v. United States, 215 Ct. Cl. 46 | 313P+204 | "The commission of Mr. Williams has been held by the Secretary of State in escrow, and its delivery depended upon the condition prescribed by section 1697 of the Revised Statutes, which provides that: "Every consul general, consul, and commercial agent, before he receives his commission or enters upon the duties of his office, shall give a bond to the United States..." | Appointees to the office of consul, consul general, and commercial agent of the United States are not entitled to the salaries thereof until they have taken such oath, and executed such bond as is required of them by law. | "Is it necessary for a consul before he receives his commission or enters upon the duties of his office, to give a bond?" | 002820.docx | LEGALEASE 0019862 LEGALEASE 0019863 | Condensed, SA, Sub | 0.43 | 0 | | 1 | 1 | |
| 19224 | MOE EvS LSA v. Wells Fargo Bank, Nat. Ass'n, 546 F.3d 533 | 237+211 | "In order for a statement to be communicated to someone other than the person defamed, it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community." Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn.1980) (citing Restatement (Second) of Torts ™ 559(1977)). W. Prosser, Handbook of the Law of Torts ™ 111 at 739 (4th ed.1971). Defamation claims require a showing of publication by the defendant to a third party. An exception to the rule is that of self-publication, which occurs when a defamatory statement to a third party and it is "compelled to publish a defamatory statement to a third person" and it was foreseeable to the defendant that the plaintiff would be so compelled." Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 888 (Minn.1986). Under this exception, which involves judicially applied, plaintiffs have a duty to mitigate and are required "to take all reasonable steps to attempt to explain the true nature of the situation and to contradict the defamatory statement." Id. | Exception to rule under Minnesota law requiring showing of publication by defendant to third party applies if plaintiff is compelled to publish defamatory statement to third person, and it was foreseeable to third person, and it was foreseeable to defendant that plaintiff would be so compelled. | Does defamation require publication to a third party to be actionable? | Libel and Slander - Memo 133 - JS.docx | ROSS-000299161-ROSS-000299162 | SA, Sub | 0.75 | 0 | | 1 | 1 | |

Appendix D

3187

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,079 |
| 13225 | In re Release Estate, 56 Ill. App. 2d 70 | 221+176 | | Consul is not personal agent of his national, absent some specific grant of authority. | Is a consul the personal agent of his national? | 003020.docx | LEGALEASE-00155555-LEGALEASE-00155556 | Condensed, SA, Sub 0.91 | 0.91 | 939 | | 1 | 1 | |
| 13226 | Pagelsdorf v. Safeco Ins. Co. of Am., 91 Wis. 2d 734 | 233+531 | | Modern-day apartment lease is regarded as a contract, not as a conveyance. | Is the modern day apartment lease regarded as a contract, not as a conveyance? | Landlord and Tenant - Memo 79 - AKG.docx | ROSS-003201689-ROSS-003201693 | SA, Sub | 0.94 | | | 1 | 1 | |
| 13227 | Stepnes v. Rischof, 771 F. Supp. 2d 1019 | 237+48(1) | | Public figures are required to show a higher level of fault in defamation actions than purely private plaintiffs because public figures usually enjoy significantly greater access to the channels of effective communication and hence have more realistic opportunity to counter false statements and protect themselves from the harm caused by defamatory speech, and have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them. | Does the standard of fault in a defamation claim depend on the plaintiff's private or public status? | Libel and Slander - Memo 151 - RK.docx | ROSS-003280974-ROSS-003280950 | SA, Sub | 0.42 | | | 1 | 1 | |
| 13228 | Starkey v. Travers, 637 F.Supp. 105 | 289+535 | | Dissension between partners, without more, is insufficient grounds for judicial dissolution. | When is judicial dissolution of a partnership appropriate? | 003440.docx | LEGALEASE-00120648-LEGALEASE-00120649 | SA, Sub | 0.79 | | | 1 | 1 | |
| 13229 | Loxahatchee River Envtl. Control Dist. v. Sch. Bd. of Palm Beach Cty., 896 So. 2d 930 | 92+3532 | | Equal protection was not violated by statute exempting public school facilities from impact service availability fees imposed by publicly owned utility providers, exemption was rationally related to governmental interest in keeping costs of public school construction down. | Is there an issue of equal protection when publicly owned utilities are not perceived as sharing a class with privately owned ones? | 003011.docx | LEGALEASE-00120394-LEGALEASE-00120395 | Condensed, SA, Sub 0.13 | 0.13 | | 1 | 1 | 1 | |
| 13230 | Chapman v. United States, 107 Fed. Cl. 47 | 148+2.2 | | Government, when it blastfires as part of wildfire containment efforts which ultimately destroyed privately owned timber and other personal property, did not appropriate a benefit to itself at the expense of property owner or prompt owner's right to enjoyment of their property for an extended time, thereby precluding property owners from taking claims; any benefit inhered in property was lost through destruction, and government had right to destroy property when it acted to enjoy. U.S.C.A. Const.Amend. 5. | "If the Government was excessive in its destruction of property which ultimately destroyed privately owned timber and other personal property, did not appropriate a benefit to itself at the expense of property owner or prompt owner's right to enjoyment of their property for an extended time, thereby precluding a takings?" | 003129.docx | LEGALEASE-00120791-LEGALEASE-00120792 | Condensed, SA, Sub 0.63 | 0.63 | | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 19131 | Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 | 148+122 | Our precedents stake out two categories of regulatory action that generally will be deemed per se takings for Fifth Amendment purposes. First, where government requires an owner to suffer a permanent physical invasion of her property however minor it must provide just compensation. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S. Ct. 3164, 73 L.Ed.2d 868 (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking). A second categorical rule applies to regulations that completely deprive an owner of "all economically beneficial us[e]" of her property. Lucas, 505 U.S., at 1019, 112 S.Ct. 2886 (emphasis in original). We held in Lucas that the government must pay just compensation for such "total regulatory takings," except to the extent that "background principles of nuisance and property law" independently restrict the owner's intended use of the property. Id., at 1026-1032, 112 S.Ct. 2886 | Where government requires owner to suffer permanent physical invasion of her property, however minor, it must provide just compensation. U.S.C.A. Const.Amend. 5. | What type of regulations are considered per se takings? | 00314.docx | LEGALEASE-00328050-LEGALEASE-00328050 | Condensed_SA_Sub | 0.84 | 0 | 1 | | 1 | |
| 19132 | Nat'l Food & Beverage Co. Inc. v. United States, 923 Fed. Cl. 63 | 148+2.2 | The parties appear to agree on the general principles that will govern this case-namely that compensation should be calculated to "the highest and most profitable use" of plaintiff's land at the time of the taking, see Board of Cnty. Supervisors v. United States, 276 F.3d 1359, 1364 (Fed.Cir.2002) (quoting Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934)), and that National Food cannot profit from any increase in value caused by the activities within the scope of the government's initial project, see United States v. Corn, 337 U.S. 325, 332, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949). They concur on the notion that the Corps' project when it began in earnest may clear from National Food's land these required pursuant to the New Orleans to Venice Hurricane Protection Project. See FL's Mot. Ex. B, GJ government to take property for improved the project and the condemnation litigation pending before the district court, at 6 of 30, ECF No. 9-79. Yet the two sides differ greatly in the application of these ground rules. | United States actions following Hurricanes Katrina and Rita, in entering private property, using land as staging area and transport route, and removing clay from property to repair and reconstruct damaged levees, constituted a "compensable taking" of the property, for purposes of owner's takings claim against the United States, despite government's contention that it was only entering land which had already been commandeered by local Parish officials project to repair levees was a federal project, undertaken and financed by federal government which planned and repaired the clay, where owner's land of entry-ways to Parish, entered the land, removed the clay, and used the clay to reconstruct the levees, while local Parish commandeered the 30 acres of owner's property on behalf of federal government, it neither physically inconsistent used the property, and government intended to compensate owner in accordance with federal law and cooperation agreement. U.S.C.A. Const.Amend. 5. | What is a landowner entitled to receive for land taken for a public use? | Eminent Domain - Memo 148 - RK.docx | LEGALEASE-00010412-LEGALEASE-00010413 | Condensed_SA_Sub | 0.06 | | 1 | | 1 | |
| 19133 | Borre v. State, 587 N.E.2d 97 | 203+668 | At the conclusion of Palmer's trial on the charge of murder, the trial court, without objection, instructed the jury that "the essential element" of the crime, as otherwise interpreted as part of (1) an intentional (2) the voluntary killing of a human being, (2) without malice, and (3) in sudden heat. All agree that the instruction was an incorrect statement of the law because neither lack of malice nor sudden heat were elements of voluntary manslaughter. Lack of malice was described as required element and sudden heat was rendered a mitigating factor by the legislature when it defined voluntary manslaughter in 1977. Ind.Code Ann. * 35-42-1-3 (Burns 1986). | Sudden heat is mitigator, rather than element of crime of voluntary manslaughter and, as such, one issue of sudden heat was to negate its existence. West's A.I.C. 35-42-1-3;35-42-1-3(b). | Is sudden heat considered as a mitigating factor in a prosecution for murder? | Homicide - Memo 110 - RK.docx | LEGALEASE-00020420-LEGALEASE-00020421 | SA_Sub | 0.44 | | 1 | | 1 | |
| 19134 | Stevens H. v. Arizona Dept. of Econ. Sec., 236 Ariz. 566 | 205+134(4) | Because this issue requires us to interpret a statute, our review is de novo. See, e.g., State v. Ariz. Dept. of Econ. Sec., In re Appeal in Pima County Juvenile Action No., 291 Ariz. 465, 447, * 5, 88 P.3d 159, 161 (2004). In interpreting a statute our goal is to effect the intent of the Legislature, and where its words are clear we need not resort to reasonable plain terms, the language must yield to the regarded as conclusive." Negro-state, State v. 189, 190, 188, 132, 5 4, 191 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)); see also Navajo Nation v. Honk; 145 P. Supp. 825, 827 (D.Ariz.1986) (Navajo case, when interpreting an ICWA provision, a court "will not look beyond the clear meaning of an express statutory term, unless a literal interpretation would thwart the purpose of the statutory scheme or lead to absurd results"). Given Congress's clear statement of intent in these respects in ICWA, its provisions are to be construed liberally in favor of the interest in protecting family units. See Shaw v. Marm., 234 F.3d 24 1229, 1234 (N.D.Cal.2003). | Indian Child Welfare Act (ICWA) does not require that requisite qualified expert testimony addressing the determination that the Indian child is at risk of future harm within the child is removed from the parent's custody recite the specific language of ICWA, or that such testimony be expressed in a particular way, as long as the expert testimony addresses the likelihood of future harm, it will suffice Indian Child Welfare Act of 1978, § 1912(f), 25 U.S.C.A. § 1912(e). | How do courts construe Indian Child Welfare Act (ICWA)? | 05093.docx | LEGALEASE-00083757-LEGALEASE-00083758 | SA_Sub | 0.58 | | 1 | | 1 | |
| 19135 | Martin v. Dial, 57 S.W.2d 75 | 289+656 | Where a partnership is dissolved by the death of one of the partners, the surviving partner has the right, and, moreover, it is their duty, to wind up the firm's business, and he is, in the eyes of the law, a trustee of the firm assets for that purpose, and as such has a control entitled to the exclusive possession of all firm assets. Quere, 83, 24; Ann. Tex., Ann. 2nd, 56; Crescent Ins. Co. v. Camp, 64 Tex. 521; Shield & Stewart v. Blum, Etc., 58 Tex. Civ. App. 155, 123 S. W. 207 (mostly) National Bank v. Herrell (Tex. Civ. App.) 155 S. W. 858; Roberts v. Nunn (Tex. Civ. App.) 169 S. W. 1086. | Surviving partner has same power as community survivor to sell partnership property to pay partnership debts and for that purpose is entitled to exclusive possession of assets. | Does a surviving partner have the duty to wind up the firms business? | Partnership - Memo 119 - RK.docx | LEGALEASE-00010511-LEGALEASE-00010512 | Condensed_SA_Sub | 0.72 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19236 | Feres Benefits v. Cantu, 234 S.W.3d 642 | 366+27 | The three varieties of subrogation—equitable, contractual, and statutory— represent three separate and distinct rights that, while related, are independent of each other. However, because Texas follows the "equity follows the law," which requires equitable doctrines to conform to contractual and statutory mandates, not the other way around. Where a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy. This Court has "long recognized a strong public policy in favor of preserving the freedom of contract." And in Texas Ass'n of Counties County Government Risk Management Pool v. Matagorda County, we emphasized that insurers are well-equipped to evaluate and reduce risk by, for example, "drafting policies to specifically provide for reimbursement." Turning to this case, the drafting of separate policy provisions that replaced equitable rights with specific contractual rights. Neither subrogation nor reimbursement clauses violate Texas public policy. As we have stated, "The State's public policy is reflected in its statutes," and Texas warrant compensation is specifically enshrined in an insurer's first-money right of subrogation, thus indicating no blanket legislative disfavor of such provisions. It is indeed difficult to declare something contrary to public policy when state law, both statutory and regulatory, actually suggests approval. In a subrogation case arising under the labor Code, the Amarillo Court of Appeals distinguished statutory subrogation from equitable and contractual subrogation. The court looked only at the statute's plain language in affirming the trial court's refusal to invoke its equitable powers to deny subrogation. We agree with this model, text-based approach. | The three varieties of subrogation—equitable, contractual, and statutory— represent three separate and distinct rights that, while related, are independent of each other. | Are these three varieties of subrogation? | 043603.docx | USGA/EASE-00121503-USGA/EASE-00121504 | Condensed, SA | 0.91 | 0 | | | 1 | |
| 19237 | Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 | 360+2 | PEA suggests, however, that because a collective bargaining contract has "continuing force and [is] intended to be observed and applied in the future," it is in essence a regulation or rule, and therefore a state statute within the meaning of "1254(2) King Mandrake County Bd. of Educ., 227 U.S. 150, 194, 44 S. Ct. 485, 492, 121 L.Ed. 881 (1930). In support of its position, PEA points to our decisions treating local ordinances and school board orders as state statutes for "1254(2) purposes, Doran v. Salem Inn, Inc., 422 U.S. 922, 927 n.2, 95 S.Ct. 2561, 2565 n.2, 45 L.Ed.2d 648 (1975); Illinois ex rel. McCollum v. Bd. of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948); Hamilton v. Regents of Univ. of Cal., 293 U.S. 245, 257 58, 55 S.Ct. 197, 200 02, 79 L.Ed. 343 (1934). In these cases, however, the legislative action was involved the unilateral promulgation of a rule with continuing legal effect. Unlike a local ordinance or even a school board order, a collective bargaining agreement is not unilaterally imposed by a lawmaking body, but emerges from negotiation and requires the approval of both parties to the agreement. Not every state government action or rule which has the effect of law is a legislative action. We have previously emphasized that statutes authorizing appeals are to be strictly construed. Russell v. Thomas Corp. Co., 400 U.S. 41, 42 n.1, 91 S.Ct. 156, 157 n.1, 27 L.Ed.2d 174 (1970), and in light of that policy we find no reason to extend the meaning of "1254(2) extends to cover this case. We therefore dismiss the appeal for want of jurisdiction. See, e.g., Lockwood v. Jefferson Area Teachers Ass'n, 439 U.S. 806, 103 S.Ct. 27, 74 L.Ed.2d 42 (1983) (appeal dismissed for want of jurisdiction and certiorari denied). | Statutes authorizing appeals are to be strictly construed. | Whether Statutes authorizing appeals are to be strictly construed? | Appeal And Error - Memo 9 - BP.docx | ROSS-003281653-ROSS-003283656 | Condensed, SA | 0.97 | | 0 | | 1 | |
| 19238 | Bombardier Corp. v. Nat'l R.R. Passenger Corp, 333 F.3d 250 | 170B+1251 | First, we recognize that Section 56 is a limited grant of jurisdiction. In general, statutes authorizing appeals should be narrowly construed. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 43, 103 S.Ct. 948, 952, 74 L.Ed.2d 794 (1983); Jarecki v. Blumenthal v. Barnes, 333 U.S. 86, 88, 110 S.Ct. 381, 107 L.Ed.2d 274 (1989), Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); and Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 1549, 131 L.Ed.2d 465 (1995). This principle applies with equal force here because it must be clear that the statute at issue here because it authorizes us to expand its appellate jurisdiction, but to review final cases, interlocutory appeals which constitute exceptions to the final decision rule. | In general, statutes authorizing appeals should be narrowly construed. | Whether Statutes authorizing appeals should be strictly construed? | 000285.docx | USGA/EASE-00121573-USGA/EASE-00121574 | Condensed, SA | 0.9 | | 0 | | 1 | |
| 19239 | Palm Beach Cty. v. Tessler, 538 So. 2d 846 | 148+106 | Several principles emerge from our analysis of these and other cases. There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner's right of access was substantially diminished. The loss of the most convenient access is not compensable where other suitable access continues to exist. A taking has not occurred where governmental action causes the flow of traffic on an abutting road to be diminished where access to the roadway remains after a taking is properly considered in determining the amount of the compensation to be paid where, as here, damages which are recoverable are limited to the reduction in the value of the property which was caused by the loss of access. Business damages continue to be controlled by section 73.071, Florida Statutes (1987). | Loss of most convenient access to one's property is not compensable through inverse condemnation where other suitable access continues to exist. | Is diminished access compensable if suitable access remains under the takings law? | 037932.docx | USGA/EASE-00121112-USGA/EASE-00121113 | SA, Sub | 0.88 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19240 | Florida Rock Indus. v. United States, 18 F.3d 1560 | 148v2.1 | In determining whether compensable regulatory taking has occurred in situation in which regulation deprives owner of distinct and partial but essentially all of economic use or value of property, court should undertake balancing of competing values, and ask, in addition to whether there has been loss of economic use to property owner as result of regulatory restrictions, such questions as: (1) whether government acted within its proper role, fairly and reasonably; (2) whether there are direct compensating benefits accruing to property, and others similarly situated, flowing from regulatory environment; or whether benefits, if any, are general and widely shared through community and society, while regulation constrains uses of property without being for public purpose; and whether government has enacted law retroactively so as to upset property owner's reasonable expectations... | The regulatory partial taking theory finds no home in our ad hoc analysis. As we have stressed recently, U.S. Const. amend. V. Penn Cent. ... 125 S.Ct. at 2309 [20], claimant's parcel of property could not first be divided into what was taken and what was not left for the purpose of determining the taking of the former into complete and hence compensable. In the absence of a per se physical taking, that portion is, in its entirety, the relevant question, however, is whether the property taken in all, or only a portion of the parcel in question. Accord, Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 107 S.Ct. 1232, 1248, 94 L.Ed.2d 472 (1987) ("[O]ur test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property, [and] one of the critical questions is determining how to define the unit of property 'whose value is to furnish the denominator of the fraction.'")(citation omitted). | Can the takings doctrine subdivide the parcel of property into what was taken and what was left for the purpose of demonstrating the taking of the former to be complete and compensated? | Eminent Domain - Memo 172 - GP.docx | ROSS-003249452+ROSS-003284524 | Condensed, SA, Sub 0.5 | | | | 1 | | |
| 19241 | Allison v. Comm'n for Lawyer Discipline, 374 S.W.3d 520 | 46H+2004 | Allison further alleges that the trial court's admission of Allison's prior disciplinary hearing as evidence of Allison's motion in limine. A motion in limine is a procedural device to identify, prior to trial, certain evidentiary rulings the court may be asked to make. Weather v. Sanchez, 154 S.W.3d 551, 551 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions or introducing prejudicial evidence before the jury without first asking the trial court's permission. Id. Absent a jury, a motion in limine is irrelevant; therefore, a motion in limine is inapplicable in a bench trial. Peña v. State, 353 S.W.3d 797, 810 (Tex.App.—Corpus Christi 1994, writ ref'd) (citing State v. San Antonio Union District No. 1, Fraternity, Inc. v. State, 446 N.E.2d 628 (Ind.Ct.App.1983). | Is the purpose of a motion in limine to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission? | Pretrial Procedure - Memo # 50 - C - AP.docx | ROSS-003310393+ROSS-003311895 | Condensed, SA, Sub 0.82 | | | | 1 | | 1 |
| 19242 | Smith v. Union Gas Co., 13 The 102 S8 N.W 130 | 317A+102 | We have held in many cases the district court gets its jurisdiction from the Constitution, and it is not to be circumscribed or restrained by the legislature. State v. McMillan, 96 S.N. 118, 101, 104 S.N.—Nebraska, Thedvold Co. v. Vreiblang, 158J, 53 N.W. 31, 101 F.2d 1000; Guthrie v. Thedvold Co., 152 J. 37 S.W. 131, 37, but it will later appear, in this case, what has been done in the Public Utility Act is not a deprivation or ouster of jurisdiction the courts, but a postponement until the commission has passed upon the | Does the procedure of Public Utility Act result in the deprivation or ouster of jurisdiction of the courts? | Public Utilities - Memo 86 - AM.docx | ROSS-002988574+ROSS-002938877 | Condensed, SA, Sub 0.36 | | | | 1 | | |
| 19243 | State Farm Mut. Auto. Ins. Co. v. Van, 196 N.W.2d 54 | 366+1 | The insurer did not make payment of the medical expenses as required by its policy. Therefore, the policy provides that "upon Payment under coverage C" (medical expenses) the insurer shall be subrogated to. In seeking recovery from its insured it has relied on the loan receipt (an agency, but So Ltd.), the Insurer may recover through an action or suit in the name of its insured. Equitable subrogation is founded upon principles of equity and justice, intended to afford protection of the rights of a creditor, it is based on the theory that the one invoking it has rightfully discharged a debt at the instance and for the benefit of the debtor and that he may be subrogated a creditor. The doctrine is not applied to or exploited only in equitable discretion. Baker v. Farge Mtg. & Loan Ass'n, 94 N.D. 332 /32 N.W. 42, Hamm Bank v. Bros, 56 N.D. 510, 212 N.W. 123, 191 N.W. Nelson, 58 N.D. 134, 226 N.W. 476; Hexgaard v. Rapka, 55 N.D. 77, 212 N.W. 440. Clearly, this is not one in which the court rules against subrogation for the right of the insured. Under this insurance policy, however, such a principle against for that. When the insurer makes payment and is instead of its insured; and is subrogation is founded on equity and public policy in that the subrogation gains the rights of the insured. The insurer stands in the place of the insured with respect to any recovery as a trustee; the insurer took the risk that its insured would be repaid the premiums for this loan repaid and reimbursed therein. In its notice to St. Paul, the insurer makes its claim that its insured will recovery may discharge its subrogated to the insured and receive a result of misapply, or intended to | Will doctrine of subrogation apply in equitable discretion? | Subrogation - Memo # 438 - C - HO.docx | ROSS-003010910-ROSS-003010912 | SA, Sub | 0.96 | | | | | 1 | |
| 19244 | First Nat. Bank v. Payne, 60 N.D. 512 | 366+1 | As said in the case of Bridal Bldg. Loan & Saving Inst. v. Ehrhardt, supra, "The doctrine of subrogation, being purely equitable, will accordingly be applied only in a meritorious situation and to accomplish only a right and equitable rights of others." Clearly this case is not one for the application of such principle against the wife, the owner of the land. On plaintiff received the mortgage of the latter paying the premiums of the mortgage and the land, and relied upon the responsible of the insurance for subrogation cannot be allowed. | Will doctrine of subrogation apply in equitable discretion? | 043677.docx | LEGALKAE-00122164 LEGALKAE-00122155 | Condensed, SA 0.88 | | | | 0 | | 1 |
| 19245 | United Carolina Bank v. Beesley, 663 A.2d 574 | 366+1 | Equitable subrogation doctrine requires court to weigh and balance equities of parties, and doctrine should not be invoked so as to work injustice, defeat legal right, overthrow superior or perhaps equal equity, or to displace an intervening right or title. Springfield v. Smith, 139 Me. 233, 238, 151 A.430, 421 (1950). | Does subrogation stem from the equitable powers of the court, which must give due regard to the legal and equitable rights of others? | 043728.docx | LEGALKAE-00121453 LEGALKAE-00121464 | Condensed, SA, Sub 0.65 | | | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13246 | Hill v. Cross Country Settlements, 402 Md. 281 | 366r1 | Only legal subrogation could be relevant to the present case. Conventional subrogation arises by the operation of an agreement between the parties. Statutory subrogation, naturally, arises pursuant to a statute. Ins. Co. of Am. v. U.S. Indus. Grp., Inc., 277 Md. 177, 182, 353 A.2d 249, 252 (1976). In this case, only legal subrogation may apply because there is no relevant statute governing this situation or an agreement between Hill and Cross Country. | "Statutory subrogation" arises pursuant to a statute. | Does statutory subrogation arise pursuant to a statute? | Subrogation_Memo.#495 - C - McEdara | RO55.00029.5638 RO55-00029.5823 | Condensed, SA | 0.87 | 0 | | 1 | 1 | |
| 13247 | In re Fleming's ES, 378 B.R. 893 | 366r1 | There are different "flavors" of subrogation, each with somewhat different qualities. The Ninth Circuit has categorized these types as "conventional" or "contractual" subrogation, "legal" or "equitable" subrogation, and statutory subrogation. "Conventional" or "contractual" subrogation rights arise from the express agreement between the subrogee and subrogor. Mutual Serv. Cas. Ins. Co. v. Elizabeth's Law Bank, 26 F.3d 602, 626 (7th Cir. 2001). "Equitable subrogation is a legal fiction, which permits a party who satisfies another's obligation to recover from the party "primarily liable" for the extinguished obligation." In re Air Crash Disaster, 86 F.3d 498, 549 (6th Cir.1996). The right of "legal" or "equitable" subrogation arises as a "creature of equity" and "is enforced solely for the purpose of accomplishing the ends of substantial justice." Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 302, 7 S.Ct. 482, 30 L.Ed. 595 (1887). Statutory subrogation, as one might expect, occurs by virtue of a right created by statute. See, e.g., Carter v. Derwinski, 987 F.2d 611, 614 (9th Cir.1993) (en banc). | "Statutory subrogation" occurs by virtue of a right created by statute. | Does statutory subrogation arise pursuant to a statute? | 04755.docx | LEGAL456 00121546 LEGAL456 00121547 | Condensed, SA | 0.93 | 0 | | 0 | 1 | |
| 13248 | In re Dudley, 502 B.R. 259 | 366r4 | A noteholder in possession of a non-negotiable negotiable instrument can acquire the rights of a holder through the common law doctrine of subrogation, which arises when one party to stop or to stop into the shoes of the creditor vis-a-vis the party obligated to pay. Although often stemming from contractual relationships, such as here, the doctrine of subrogation is primarily an equitable remedy designed to avoid windfalls. Reliance Insurance v. Boston, 73 Mass.App.Ct. 502, 909 N.E.2d 525 (2009); Goodman Industries, Inc. v. Max Goodman & Sons Realty, Inc., 17 B.R. 512, 519 (Bankr.D.Mass.1982). The general principle of the doctrine of subrogation is that a guarantor who is required to pay the debt of the principal on a note will be subrogated to the rights of the creditor against the principal. Goodman Industries, 17 B.R. at 519. In addition to acceding to the right of the creditor, the guarantor inherits only those rights the creditor held at the time of subrogation. McCabe v. Braunstein, 439 B.R. 1, 6 (D.Mass.2010). | Under Massachusetts law, a noteholder in possession of a non-negotiable negotiable instrument can acquire the rights of a holder through the common law doctrine of subrogation, which arises when one party to stop into the shoes of the creditor vis-a-vis the party obligated to pay. | Is guarantor subrogation to creditor's rights once the guarantor has paid principal's obligation? | 04850.docx | LEGAL456 00121461-LEGAL456 00121462 | SA, Sub | 0.7 | | 1 | | 1 | |
| 13249 | Wray v. Bidder's Edge, 100 212+1217 F.Supp. 2d 1058 | 212+1217 | A trespasser is liable when the trespass diminishes the condition, quality or value of personal property, See Comploclone, Inc. v. Cyber Promotions, 962 F.Supp. 1015, 1027 (D.Pa. 1997). The quality or value of personal property may be "diminished even though its actual physically damaged by the defendant's conduct." Id. at 1022. The Restatement offers the following explanation for the harm requirement: The interest of a possessor of a chattel in its inviolability, unlike the interest of a possessor of land, is not given legal protection by an action for nominal damages for harmless intermeddling with the chattel. In order that an actor who interferes with another's chattel may be liable, his conduct must affect some other and more important interest of the possessor. Therefore one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected ... Sufficient legal protection of the possessor's interest in the mere inviolability of his chattel is afforded by his privilege to use reasonable force to protect his possession against even harmless intermeddling.Restatement (Second) of Torts § 218 cmt. e (1977). | Owner of online auction site was likely to prevail on its California Law trespass claim against online auction aggregating site, which was using programs to conduct automated searches of owner's site without authorization, for purposes of obtaining preliminary injunction; there was evidence that defendant's intentional conduct diminished quality or value of owner's computer systems. | "Can a trespasser be held liable when the trespass diminishes the condition, quality or value of the property?" | 04742.docx | LEGAL456 00121266 LEGAL456 00121267 | Condensed, SA, Sub | 0.73 | | 1 | | 1 | 1 |
| 13250 | Bethesda Title & Escrow v. Gochnour, 197 Md. App. 450 | 30+9 | Review by an in banc court is "a substitute or alternative" for an appeal to this Court. Buerit v. Halantz, 320 Md. 589, 605, 578 A.2d 215 (1990). Where the legislation was conferred, in banc review "serves the purpose of these constitutional, statutory and regulatory provisions to allow two appeals in Maryland." DNRA 3:308 (2005) could be avoided by simply noting an appeal before a ruling on a separate filed motion for reconsideration, not much would be left of the exclusivity and conclusiveness of the in banc review. The import of that Rule is where there is a withdrawal if the notice for in banc review the party seeking to appeal is treated as affected by having abandoned its right to appeal to this Court. | Review by an in banc court is a substitute or alternative for an appeal to the Court of Special Appeals. | Does an in banc. review serve as a substitute for appeal? | 00885.docx | LEGAL456 00121880 LEGAL456 00121881 | SA, Sub | 0.86 | 0 | | 1 | 1 | |
| 13251 | Hoffman Assocs. v. Snoke, 112 N.J.1.68 | 30+79(1) | Appeal lies only from final judgment, not only as to all issues but also to all parties.Sunther v. Order of Heptasophs, 74 N.J. Law, 608, 65 A. 590; In re Board of Education, 84 N.J. Law 770, 87 A. 467; Vacker v. Public Service Gas Co., 97 N.J. Law, 584, 117 A. 596; Gochnour v. Gottfried, 106 N.J. Law 114, 148 A. 710; Prentz v. Glennon, 110 N.J. Law, 373, 164 A. 722) | Appeal lies only from final judgment, not only as to all issues, but as to all parties. | Can an appeal lie only from a final judgment? | 00961.docx | LEGAL456 00122064 LEGAL456 00122065 | Condensed, SA | 0.8 | 0 | | 0 | 1 | |
| 13252 | Kidney v. Hoffman, 229 F. 86 | 8.30+12 | The note was executed and made payable in the state of Missouri, and, although this suit was instituted and tried in the District of Kansas, it must be governed by the laws of the state of Missouri, where it was executed and made payable. Robey v. Gray, 144 U.S. 313, 12 S.ct. 84, 36 L.Ed. 981; Guernsey v. Imperial Bank, 188 Fed. 300, 110 C.C.A. 278, 40 L.R.A.N.S.1367; Ringer v. Virgin Timber Co. (D.C.) 213 Fed. 1000). | Whether note executed and payable in Missouri was negotiable, so as to permit in the hands of a bona fide purchaser, held governed by the law of Missouri. | Can a note be governed under the law where it was executed or performed? | | LEGAL456 00122317- LEGAL456 00122318 | Condensed, SA | 0.66 | 0 | | 1 | 1 | |

| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| 19253 | City of Harrisonville v. McColl Serv. Stations, 2014 WL 700432 | 30=758.3(6) | At the outset, we note that the plaintiff, Front Motel Co. attacks the trial court's "granting of [the City's] pre-trial Motion in Limine," excluding the parties' communications concerning the City's claim. But the grant of a pre-trial motion in limine is not appealable; instead, it is the exclusion of evidence which is offered at trial which is reviewable on appeal. The Missouri Supreme Court has only recently explained that "[a] ruling on a motion in limine is interlocutory only and is subject to change during the course of the trial. The motion in limine, in and of itself, preserves nothing for appeal.'" Firefly v. Brown & Williamson Tobacco Co. 850 S.W.2d 618, 634 (Mo. banc 2013) (quoting State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc 1992)). "In order to preserve an issue of exclusion of evidence for appeal, a definite and specific offer of proof demonstrating why the evidence is relevant and admissible must be made at trial after the trial in order to preserve the issue for review on appeal." Kansas v. Vester ex rel. Kilb, 184 S.W.3d 528, 540 (Mo.App.S.D.2010) (internal quotation omitted). "When a motion in limine is granted so as to exclude evidence from trial, the party offering the evidence must still after that trial in order to preserve the issue for review on appeal." Hagen v. Hagen ex rel. Kilb, 184 S.W.3d 528, 540 (Mo.App.S.D.2010) (citing Henderson v. Fields, 68 S.W.3d 455, 469 (Mo.App.W.D.2001)). | Because a ruling on a motion in limine is interlocutory, and by itself preserves nothing for review, a point relied on that refers only to a ruling on a motion in limine is deficient; nevertheless, if the point does not impede disposition on the merits, the Court of Appeals may review the point. | Is a ruling on a motion in limine is interlocutory, and by itself preserves nothing for review, a point relied on that refers only to a ruling on a motion in limine is deficient; nevertheless, if the point does not impede disposition on the merits, the Court of Appeals may review the point. | 02401.docx | LEGALEASE 00121924-LEGALEASE 00121925 | Condensed, SA | 0.78 | 0 | 1 | | 1 | 1 |
| 19254 | Profile Plus Capital Mgmt. v. Podesta, 156 Idaho 873 | 30=3209 | The trial court has wide discretion when ruling on a motion in limine. Gunter v. Murphy's Lounge, LLC, 141 Idaho 16, 25, 105 P.3d 676, 685 (2005). "This Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard." Id. Under that standard, "this Court considers whether the district court's exercise of discretion was within the bounds of its authority, consistent with legal standards, and based on an exercise of reason." Sun Valley Potato Growers, Inc. v. Texas Refinery Corp., 139 Idaho 761, 767, 86 P.3d 475, 481 (2004). An abuse of ruling only warrants a new trial if the error affected a substantial right of a party. Morris v. Thomson, 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997) (citing I.R.C.P. 61 and I.R.E. 103). | The Supreme Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard; under that standard, the Court considers whether the district court's exercise of discretion was within the bounds of its authority, consistent with legal standards, and based on an exercise of reason. | Does the trial court have wide discretion when ruling on a motion in limine? | Pretrial Procedure - Memo #415 - C-58.docx | ROSS-003327296-ROSS-003327297 | SA, Sub | 0.58 | 0 | | 1 | | |
| 19255 | Miaou v. Franklin Traffic Serv., 261 F.3d 1030 | 13=61 | Further, discount err in denying that part of defendants' cross motion seeking dismissal of plaintiff's second cause of action in the first amended complaint in action No. 1 against Franklin. Miaou characterizes putting Franklin off action on an anticipatory to a tort cause of action; however, does not accrue until an injury is sustained (see, Snyder v. Town Insulation, 81 N.Y.2d 429, 432 N.E.3d 599 N.Y.S.2d 515, 615 N.E.2d 999). Inasmuch as any personal injury has yet been alleged Franklin's II asserted is dependent upon the viability of a tort cause of action, that cause of action in action No. 1 against Franklin, cross seeking dismissal of action No. 1 against Franklin. | A tort cause of action does not accrue until an injury is sustained. | When does a tort cause of action accrue? | Action - Memo #142 - C-C5.docx | ROSS-003330711-ROSS-003330712 | SA, Sub | 0.9 | 0 | | | 1 | |
| 19256 | Robert E. Curry Bldg. Contractors v. Garrett Mach. N. Coast, 279 Ga. App. 871 | 13=61 | Insofar as Garrett Machine alleges damages not suffered in fact, "'[t]he rule of law that no person can bring an action until he has been actually damaged is applicable." Hardin v. Fireman's Fund Ins. Co. 150 Ga. App. 277, 280, 257 S.E.2d 187 (1979). ("Carr v. Jacuzzi Bros., 133 Ga.App. 70, 71(1), 210 S.E.2d 41 (1974) (see also Star Refrigeration Co. v. Parmalee, 71 Ga.App. 51, 53, 30 S.E.2d 15 (1994) [t]he burden not being of showing that he has been damaged as an accrued claim by which the party owes to affirmatively enable them to estimate with reasonable certainty the amount of the damages. To recover damages in an action for a new mode and new building materials totaling $45,568 were proven with reasonable specificity to enable the jury to reach a conclusion thereon without meager to speculation or guesswork. Carr v. Jacuzzi Bros., supra." Nat. Refrigerator & Air Co. v. Parmalee, supra. Thus there was some evidence. | No person can bring an action until he has been actually damaged. | Can a person bring an action before he has been actually damaged? | Action - Memo #154 - C-C5.docx | ROSS-003321169-ROSS-003321170 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19257 | In re Bounds, 495 B.R. 725 | 13=61 | Adkins establishes that harm to the plaintiff's legally protected interest need not be finally established for a cause of action to accrue. Id.; see also In re Fambo, 465 S.W.3d 555, 557 (Tex.App. 2015) (a legal action that establishes the accrual injury need arise but... an administrative and judicial review and this fact does not have to be sustained injury). Actual damage is understood to say to legal harm) In re Kaptur, 315 B.R. 731 A [c]ause of action accrues... "actual" from time that acts sustained, even though this, actual damage occurs immediately upon commission of act. | Under Texas law, when act setting injury in motion is itself a completed wrong, such as an invasion of some personal or property right of plaintiff, the act and legal injury occur simultaneously; and cause of action then accrues "actual" from the time that act is committed, even though this, actual damage occurs immediately upon commission of act. | Does harm to the plaintiff's legally protected interest need to be finally established for a cause of action to accrue? | Action - Memo #37 - C-LK.docx | ROSS-003312767-ROSS-003312828 | SA, Sub | 0.48 | 0 | | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19258 | Poletown Neighborhood Council v. City of Detroit, 304 N.W.2d 455 (Mich.) 1981 Supp. 24 206 | 148+2.1(11) | Record owner of reservoir alleged sufficient facts to make out a federal taking claim where it alleged that land had expired for a portion of the bottom of the reservoir and an easement by prescription on behalf of the public to use the water for recreational purposes, and because of the State's action, State experienced all of owner's economically beneficial use of the property and impermissibly appropriated private individual into servitude to provide the public unrestricted use of private property, U.S.C.A. Const.Amend. 5. | The Michigan Supreme Court minority followed the Alaska Court's reasoning and held that there was no basis for just compensation in a case where a municipality had acquired a prescriptive easement. Stickney v. City of Saco, 770 A.2d 592, 603 (Me.2001). The Court agreed that under the state constitution the private landowner must bring an action for inverse condemnation prior to the lapse of the prescriptive period; the decisions of other state courts reflect similar reasoning. See Board of County Comm'rs v. Flickinger, 687 P.2d 975, 987 96 (Colo.1984) (en banc) (concluding that adverse possession of a road, pursuant to statute where... was not a taking); Commonwealth v. Stephan, 407 S.W.2d 711, 712 (Ky.1966) (rejecting the contention that under the state constitution requires compensation in the case of adverse possession and holding that "once the original owner allows the period of limitations to run, his property no longer is his."); Robinson v. Martin, 774 So.2d 1290, 1293 (Miss.Ct.App.1999) ("[D]amages are never a part of adverse possession, which is what a prescriptive easement is. Until the eventual owner of a petition for a public way across the property of another without the benefit of the law of dedication or adverse possession or the original owner of the property over which the prescriptive easement is question runs has been granted forfeited his right to demand payment for the easement over his property."); Ducote v. City of Alexandria, 706 So.2d 673 (La.App.1998) (holding that the Takings Clause of the Oregon Constitution does not prohibit adverse possession); Murphy v. Kerr, 296 F. 536 (8th Cir.1924) (holding that the Takings Clause of the Fifth Amendment provides "[N]or shall private property be taken for public use, without just compensation..." | Should a private owner bring an inverse condemnation action for public use of private property within a specified period of time? | 017661.docx | LEGALEASE 0012617-LEGALEASE 0012618 | Condensed, SA, Sub | 0.77 | 0 | 1 | | 1 | 1 |
| 19259 | United States v. Lleti Stroma, 127 F. Supp. 145 | 221+39 | Sovereignty over a territory may be transferred by an agreement of cession. See Treaty/Reorg. [U.S.] v. Arbuckle case provides from neither in Article 3 or where the Treaty of Peace does Japan ceded Okinawa to the United States. In Article 2, Japan formally "renounces all right, title and part" to certain specified territories, including Korea, Formosa and the Kurile Islands. However, there is no such renunciation as to the territories named in Article 3. | Sovereignty over a territory may be transferred by an agreement of cession. | International Law - Memo #26 - C - LK.docx | ROSS000329273-ROSS 000382274 | Condensed, SA | 0.85 | | 0 | 1 | 1 | |
| 19260 | People v. Stevenson, 12 N.E.2d 279 | 110+1024(4) | "Because the trial court rules on a motion in limine before hearing the full context of trial, a ruling on a motion in limine is not necessarily the final word on matters in limine." People v. Brown, 319 Ill.App.3d 89, 96, 253 Ill.Dec. 399, 745 N.E.2d 173, 181 (2001). "The [court] may reserve this elaboration further and stated: 'Trial judges should attempt to order narrow in-limine rulings, and that a party against whom a ruling in limine has been made may revisit the error clear and precise so that all parties concerned have an accurate understanding of their limitations. An unclear order in limine is worse than no order at all.' People v. Owen, 299 Ill.App.3d 818, 824 25, 234 Ill.Dec. 200, 702 N.E.2d 754 (1998)" The court's "order should be in writing to prevent confusion and misunderstanding of its terms and [should set forth with accurate and provide] all parties concerned [with] an accurate understanding of its limitations." Heidelberger, 83 Ill.2d at 550, 48 Ill.Dec. 267, 416 N.E.2d at 27. | Motions in limine are used to bring the trial court's attention to potentially irrelevant, inadmissible, or prejudicial evidence so a practical order from the court excluding or permitting the evidence. | In an order in limine a correct term shall, in other matter at all, and even if the court concludes the evidence is inadmissible does it have the discretion to deny the motion in limine before trial? | 016603.docx | LEGALEASE 0012580-LEGALEASE 0012582 | Condensed, SA | 0.79 | | 0 | 1 | 1 | |
| 19261 | People v. Mónez, 28 Misc. 164 278 | 363+3 | In sum, the law does not permit a person to consent to his own murder, and such consent does not transform an active killing of another into a suicide. The interest of justice is served if a person is consented to murder, the law does not permit a person to consent to his own murder? The law does not permit a person to consent to his own murder. | In sum, the law does not permit a person to consent to his own murder, and such consent does not transform an active killing of another into a suicide. | 014471.docx | LEGALEASE 0012270-LEGALEASE 0012706 | Condensed, SA | 0.51 | | 0 | 1 | 1 | |
| 19262 | Brown v. Shock, 27 Mo. App. 351 | 13+41 | An action cannot be maintained on a debt not due at the commencement of the action. Nelson v. Barnard et al., 16 Me. 391; Cheatham v. Lewis, 3 John. 41; Fox v. Hale, 9 N.C. 100. The case of Montgomery v. Met., 100 Mo. 111, cited by the plaintiffs in error, rests upon the statute concerning attachments, which allows suits, by attachment, in certain cases, upon demands not yet due. | An action cannot be maintained to a debt not due at the commencement of the action? | Action - Memo # 218 - C - NO.docx | ROSS000323 89856ROSS 000323895 | Condensed, SA | 0.78 | | 0 | 1 | 1 | |
| 19263 | Granite Beach Holdings v. State ex rel. Dep't of Nat. Res., 103 Wash.App. 186 | 149+206 | The term "inverse condemnation" is used to describe an action alleging a governmental taking, brought to recover the value of property that has been appropriated in fact, but without formal exercise of power. Bolles v. City of Buffalo, 147 Wash.App. 133, 159 140 160, 193 P.3d 1090 (2008); affd, 130 Wash.App 274, 627 P.2d 341 (1996). An action for reverse condemnation must be based upon an injury to a right in private property and not merely a privilege. Billingsley v. Valentine, 18 Wash.App. 674, 677, 544 P.2d 138 (1975). There can be no inverse condemnation action unless there is a legally protected right; Brown Corp. v. State, 109 Wash.2d 821, 64 742, 767 P.2d 616 (1987). | Can there be inverse condemnation if no property right exists? | Eminent Domain - Memo 253 - GP.docx | ROSS000285167-ROSS-000285168 | SA, Sub | 0.86 | | 0 | 1 | 1 | |
| 19264 | Casa de Cambio Comdiv S.A. de C.V. v. United States, 48 Fed. Cl. 137 | 148+2.1 | The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." The just Compensation Clause "was designed to bar government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The case law has identified two categories of takings: physical and regulatory. Under the Takings Clause, "physical" and private action of property taking occurs where the government authorizes a physical occupation of property (or actual taking of title or possession). Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 321 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002). In addition, the government imposes a condition on private property that limits or prohibits any beneficial use thereof, the so-called "regulatory takings" theory. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). | Under what category of taking does the government seize property? | Eminent Domain - Memo 224 - GP.docx | ROSS000285159-ROSS-000285541 | Condensed, SA | 0.74 | | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 15265 | New York and Co. v. Republic of Philippines, 534 F. Supp. 279 | 221=342 | | Act of state doctrine demands case by case analysis. | Does the act of state doctrine demand case by case analysis? | International Law Memo #435 - C - MLS.docx | ROالسELEGALEASE14-R0SS-00283315 | Condensed, SA | 0.88 | 0 | | | 1 | |
| 15266 | Pebles v. Amton, 69 N.D. 47 | 249=662(2) | | In a taction for malicious prosecution of an inquisition of lunacy, the personal relations existing between the parties may be shown for the purpose of showing malice of defendant. | Is evidence of the previous relations of the parties admissible in an action for malicious prosecution? | 021220.docx | LEGALEASE-00025152-LEGALEASE-00025153 | Condensed, SA, Sub 0.85 | | | 1 | 1 | 1 |
| 15267 | Mellor v. Lawyer, 55 F.App. 679 | 289=833 | | An incoming partner is not liable for the previous debts of the concern, unless he makes himself so by express agreement, or by such conduct as will raise the presumption of a special promise. | Is an incoming partner liable for debts of old firms? | 021925.docx | LEGALEASE-00124706-LEGALEASE-00124708 | Condensed, SA, Sub 0.38 | | | | 1 | |
| 15268 | Profits Plus Capital Mgmt. v. Podesta, 156 Idaho 873 | 30=1209 | | The Supreme Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard; under that standard, the Court considers whether the district court exercised discretion was within the bounds of its authority, consistent with legal standards, and based on an exercise of reason. | Does the trial court have broad discretion in ruling on a motion in limine? | 024281.docx | LEGALEASE-00124719-LEGALEASE-00124720 | SA, SA | 0.58 | | | | 1 | |
| 15269 | Kelly v. New NY. Fed. Sav., 49 Cal. App. 4th 659 | 30=3 | | Motions in limine permit more careful consideration of evidentiary issues than would take place in hard of battle during trial; minimizes side-bar conferences and disruption during trial, allows for orderly and efficient presentation of evidence, and by resolving potentially critical issues at outset, enhance efficiency of trials and promotes settlements. | Although in limine motions are typically brought at the beginning of trial, may they also be brought during trial when evidentiary issues are anticipated by the parties? | 030676.docx | LEGALEASE-00124743-LEGALEASE-00124744 | SA, Sub | 0.79 | | | | 1 | |
| 15270 | Stones v. Reklau, 23 Ill. App. 3d 813 | 30=3 | | Motions and orders in limine should be clearly and specifically outlined in writing, rather than orally, other interlocutory order, is subject to reconsideration by court throughout trial. | Should both the motion in limine and the resulting order be in writing? | 037243.docx | LEGALEASE-00125567-LEGALEASE-00125568 | SA, Sub | 0.79 | | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 13971 | Bettendorf Co. v. US W. Commc'ns, 677 N.W.2d 644 | 372×457 | Before we can explain our ruling on whether the Reichart contract... | Agreement between two telephone service companies was subject to 'literal self-dealing' first tariff rule if one company could not pursue contract and text claims against second company after second company refused to sell tariffed services to first company, in accordance with publicly filed tariff; claims against second company had to be pursued in accordance with public utility tariff scheme. I.C.A. §§ 476.1, 476.4. | Should every public utility keep copies of its tariffs filed by them with agency to inspection under prescribed rules? | 042358.docx | LEGALEASE-00125411 LEGALEASE-00125412 | Condensed, SA, Sub 0.65 | | 0 | 1 | | 1 | |
| 13972 | State Farm Mut. Auto. Ins. Co. v. Du Page Cty., 2011 IL App (2d) 100580 | 366×1 | Equitable subrogation is a remedial device that prevents unjust enrichment... | Equitable subrogation is a remedial device that prevents unjust enrichment. | What is the doctrine of equitable subrogation designed to prevent? | Subrogation - Memo 1015 - C - CAT.docx | ROSS-003309478 ROSS-003309479 | Condensed, SA 0.91 | | | 1 | 0 | | |
| 13973 | Gigant Pub. Serv. v. Arizona Corp. Comm'n, 142 Ariz. 52 | 268×712(9) | It has long been the policy of our courts to recognize that the acting of utility rates must take into account the interest of all the customers... | Sole issue raised by sewer utility in its application for rehearing following determination of its rate base was whether action of State Corporation Commission's 'generic' decision to exclude from rate base any contributions in aid of construction, although utility concedes otherwise; therefore, jurisdiction of superior court was limited solely to consideration of lawfulness of that exclusion. A.R.S. § 40-253, subd. C. | Can the interests of the public service corporation stockholders exceed/below those of the public served? | 042314.docx | LEGALEASE-00125466 LEGALEASE-00125467 | Condensed, SA, Sub 0.61 | | 0 | 1 | 1 | 1 | |
| 13974 | Commissioners of Bristol Cty. Mosquito Control Dist. v. State Reclamation & Mosquito Control Bd., 466 Mass. 523 | 361×1155 | Authority to set rates of compensation for Bristol project employees... | Although statutory language is to be construed as written, in keeping with its plain meaning, the language is not to be read in isolation, but when the meaning of a statute is brought into question, a court properly should read other sections and should construe them together. | How must I statutory language be construed? | Agriculture- Memo 25 - 58.docx | ROSS-003313518 ROSS-003313519 | Condensed, SA, Sub 0.72 | | | | | 1 | 1 |
| 13975 | Correll v. Ohio Bell Tel. Co., 63 Ohio App. 491 | 372×914(2) | A public utility is, by law, regulated strictly in its operation. Rights and privileges which it might seek under ordinary contractual relations are curtailed by its position... | Where telephone company filed with the state public utilities commission, as required by statute, a schedule providing a lower rate not liable because of breach of contract for damages to subscriber whose name was omitted, except to the limit set forth in the schedule. Gen. Code, § 614-16. | Should a public utility regulated in all operations with necessary curtailment of its right to be limited as to its liabilities? | 042335.docx | LEGALEASE-00125850 LEGALEASE-00125851 | SA, Sub 0.43 | | | | | 1 | |
| 13976 | Boydston v. Pearson, 239 Miss. 479 | 13×62 | A right of action must be complete when an action thereon is commenced. | A right of action must be complete when an action thereon is commenced. | Should a right of action be complete when an action is commenced? | Action memoA 100 C - PC.docx | ROSS-003300053 ROSS-003300054 | Condensed, SA 0.87 | | | 1 | | 1 | |

Appendix D

3396

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Copied Headnote | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 15277 | Irie Bounds, 495 B.R. 720 | 31441 | "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." (citing GE & Gas Co. v. Hamlin Oil & Refining Co., 364 S.W. 475, 591 S.W.2d 716, 721 (1939)). To possess a right to sue, some legal injury is required. Atkins v. Crockett, 417 S.W.2d 150, 153 (Tex.1967). Where a statute of limitations is being run, the determination of when the statute of limitations begins to run, it is not relevant to the determination of when a cause of action accrues... Swift, 129 F.3d at 798. As a general rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." X v. X.V., 593 S.W.2d1, 4 (Tex.1996) (citations omitted). "[T]he focus, then, is upon the moment the injury occurred. | Under Texas law, when act setting injury in motion is itself completed wrong, such as an invasion of some personal or property right of plaintiff, the act and legal injury occur simultaneously, and cause of action "accrues" from time first act is committed, even though resulting injury, actual damage occurs immediately upon commission of act. | "Does the ""accrual of a cause of action"" give the right to institute and maintain a suit?" | | 00011.docx | LEGALEASE 00135254-00135255 | SA, Sub | 0.62 | | | 1 | 1 | |
| 15278 | United States v. McDonnell, 64 F. Supp. 3d 783 | 63+1(2) | This case hinges on the interpretation of an "official act" and whether McDonnell's actions constitute such. At its most basic definition, an "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit. 18 U.S.C.." 201(a)(3). More specifically, official action is conduct that amounts to part of a public official's position "whether pursuant to an explicit duty or as a matter of 'a clearly established practice.'" United States v. Jefferson, 674 F.3d 332, 361 (4th Cir.2012). Obviously, however, McDonnell takes the position that the elements of a question action taken in one's official capacity, and, at 356, or sits about outcomes would essentially end up... Rather, on the other hand, "[e]very action that is within the range of official duty-acts comes within the purview of this statute." United States v. Birdsall, 233 U.S. 223, 233 (1934). Thus, to distinguish between the apparent fine line of routine and quasi-official conduct and public corruption, the Court must look to whether a quasi-official conduct... | For purposes of federal bribery statute, official action is conduct that is taken as part of public official's position, whether pursuant to explicit duty or as a matter of clearly established settled practice. 18 U.S.C.A. 201(a)(3). | "For purposes of federal bribery statute, what is an official action?" | | 01061.docx | LEGALEASE 00135089-00135090 | SA, Sub | 0.82 | | | 1 | 1 | |
| 15279 | Rural Tel. Co. Coal. v. Pub. Util. Comm'n, 941 A.2d 751 | 372+555 | In Matthew, our court addressed an application to provide high capacity, nonswitched, dedicated circuits to a limited portion of the public. Our court held that this service did not meet the "public utility" or the "public" was as follows: Whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public or a class thereof, is in any real and substantial portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals, 594 A.2d at 1213. We further found that the "public" considered of large commercial end-users and held as follows: The applicants concede... It was a monopoly. Rather, the record suggests that the applicants will limit their target to large companies, including commercial entities and other common carriers, will probably be the only entities able to utilize the applicants' services. Although those businesses comprise a limited portion of the public, nothing in the record suggests that the applicants will limit their services to that limited group of businesses. Rather, the record shows that the applicant services are available to any prospective customer who has a need for and request them. Hence, substantial evidence supports the conclusion that the applicants' proposed facilities do not... A.2d at 1213. Thus, in the present controversy, the Commission was correct in determining that Core was serving the public, at the public is not confined to the entire public. Offering a service to a limited class of customers constitutes public utility service. | Public Utility Commission's decision to grant applicant's request for certificate of public convenience to provide competitive residential and business telecommunications services (CLEC) was supported by substantial evidence showing that applicant was a facilities based local exchange service, and, although applicant's service consisted of offering transmission path and local numbering services to Internet Service Providers (ISPs) to facilitate the ISPs offering of dialup access to the internet, the transmission path needed to provide internet service was a telecommunications service under federal and state law. 66 Pa.C.S. 102, 1101, 1103, 3011, 3019. | What is the test for determining whether utility services are being offered to the public? | | 04335.docx | LEGALEASE 00135323-00135325 | Condensed, SA, Sub | 0.52 | | 0 | 1 | 1 | |
| 15280 | Brasche v. Com., 25 Va. App. 480 | 110+37.10(2) | Code "18.2.73 and 18.2."361, on their face, are gender-neutral and apply equally to males and females, if either a male or a female used or allowed another to engage in a consensual act of oral sodomy, he or she would likewise be subject to prosecution for violation of this statute. The decision by the state to prosecute individuals for certain crimes may be based on "an unjustifiable standard such as race, religion or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Thus, if an accused can prove that a facially neutral law is being applied in a discriminatory manner, he or she has an equal protection claim. | Evidence that police conducted sting operations due to complaints about male homosexuals soliciting sex from undercover male police officers, that officers had never been utilized to target female homosexual offenders was insufficient to show purposeful discrimination against homosexual men, as required to support allegation of selective enforcement of criminal solicitation and sodomy statutes, absent evidence that similarly situated females were engaging in similar criminal behavior and could have been targeted and prosecuted. Code 1950, 18.2-29, 18.2-346. | When will a person be subject to prosecution for felony criminal solicitation? | | 04393.docx | LEGALEASE 00135256-00135257 | Condensed, SA, Sub | 0.18 | | 0 | 1 | 1 | |

3397

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19281 | Keiser v. J. Wiss & Sons Co., 340 F. Supp. 41 | 13+63 | The defense of laches is likewise unavailing to defendant. It is well settled law that the mere passage of time does not constitute laches. The attorney who formerly represented plaintiff advised defendant's present counsel by a number of letters in 1962, that P-7, then being made by defendant, infringed the patent in suit. Attempts at a settlement were not successful. In a letter dated October 15, 1962, plaintiff's attorney reiterated the charge of infringement, and in another effort to resolve the dispute, suggested that the matter be referred to an independent patent lawyer for arbitration and final decision. No response was made to this letter. By letter dated December 9, 1966, plaintiff's present counsel notified defendant that its later shears, P-8, also infringed the patent. The four year delay stressed by defendant applied only to the P-7 shears and not the P-8 shears, since the latter did not appear on the market until 1965. As soon as plaintiff learned about the P-8 shears, suit was commenced. The limited sales of the P-7 shears, as compared with the increased sales volume of the P-8 shears, might well have justified the delay in starting suit in this case. But it is clear that defendant was definitely warned, under threat of suit, to discontinue infringement, and that it deliberately ignored such warning. At no time did plaintiff change his position on the infringement issue, of which defendant was fully aware, and the case is devoid of any proof that defendant was prejudiced by plaintiffs failure to sue between the time settlement negotiations fell through and the complaint filed. Finally, it is noted that plaintiff brought his action well within the statutory limitation period of six years provided in 35 U.S.C.A. " 286. | Mere passage of time does not constitute laches. | Does the mere passage of time constitute laches? | Action - Memo # 750 - C NS.docx | ROSS-003299973-ROSS-003299975 | Condensed, SA, Sub | 0.97 | 0 | 1 | 1 | 1 | 1 |
| 19282 | Duke v. Sun Oil Co., 320 F.2d 853 | 8.30E+04 | However, we do not regard this as being decisive under Texas law. The Lessors do not go far enough. Conceding that a check is merely conditional payment, once the check has been deposited or cashed, and makes the complete commercial cycle back to the drawee bank where it is finally accepted and paid, such payment relates back to the time the check was delivered to the payee. Muldrow v. Texas Frozen Foods, 1957, 157 Tex. 39, 299 S.W.2d 275; Texas Mutual Life Ins. Ass'n v. Tolbert, 1940, 134 Tex. 419, 136 S.W.2d 584. This is a sensible result, especially considering that historically the law of negotiable instruments is an outgrowth of the Law Merchant in which law, far more than accommodating itself to business necessities, was rather the product of those business practices. No harm lurks in this blending of law and the needs of modern day commerce. If the check is dishonored on presentment to the drawee, no timely 'payment' has been made. If, as was true here, the checks are paid, they had at the end of the cycle to same marketability for full cash value that the payee- Lessors considered they had. | Law of negotiable instruments is an outgrowth of the law merchant. | Is the law of negotiable instruments an outgrowth of the law merchant? | Bills and Notes - Memo 98 - ANG.docx | ROSS-003311911-ROSS-003311912 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 19283 | Akbarnia v. Deming, 845 F. Supp. 788 | 227+36 | After noting the different contexts in which the term "judicial function" is used, the Kansas Supreme Court held that, in the context of a court clerk's activities, a judicial function involved the exercise of discretion and was the opposite of a ministerial act. Id. at 957. Cook defines a ministerial act as one performed "in a given state of facts in a prescribed manner," id., whereas it defines a judicial function as one involving "the exercise of judgment, discretion, discernment, or discrimination," id. at 956 (quoting Ferguson v. Smith & Durham, 10 Kan. 396, 404"05 (1872)). Accordingly, Cook instructs courts presented with judicial immunity claims to look past the office or title of the person claiming immunity and focus on the intrinsic character of the conduct in issue. Id. at 956 (citing Hamma v. People, 42 Colo. 401, 94 P. 326 (1908)). | Psychologists conducting court-ordered evaluations were entitled to judicial function immunity under Kansas Tort Claims Act (KTCA); psychologists exercised considerable discretion while performing their evaluations. K.S.A. 60-1615, 75-6104(b). | Are judicial functions distinguished from ministerial acts? | 013436.docx | LEGALEASE-00126764-LEGALEASE-00126765 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 19284 | State ex rel. Harvey v. Second Judicial Dist. Court, 117 Nev. 754 | 79+1 | However, as later case law points out, the decision in Douglass actually involved our court concluding that the supreme court clerk was still a constitutional office because it was referenced in other provisions of the constitution:[A]lthough a constitutional amendment deleted that portion of the section which required the election of a clerk of the supreme court, it did not deprive the office of its constitutional status because the constitution still was left with provisions having to do with important functions of that office, including the provision (Art. XV, Sec. 8) requiring the opinions of this court to be filed with the clerk. | District court clerk was a "judicial office," and therefore a district court's assumption of the operation of court clerk's office did not violate separation of powers doctrine of State Constitution, regardless of constitutional provision making county clerk the ex officio clerk of district court in his or her district. Const. Art. 3, S 1, subd. 1; Art. 4, S 32. | Is the office of the clerk of the Supreme Court a constitutional one? | 013483.docx | LEGALEASE-00126806-LEGALEASE-00126807 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 19285 | Baker v. Peace, 172 S.W.3d 82 | 119+55 | "Dedication" is the act of appropriating private land to the public for any general or public use. Scott v. Cannon, 959 S.W.2d 712, 718 (Tex.App.-Austin 1998, pet. denied). Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public. Id. There are four essential elements of implied dedication: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication. Las Vegas Pecan & Cattle Company, Inc., 682 S.W.2d at 256. Whether a public right-of-way has been acquired by dedication is a question of fact. Lindner v. Hill, 691 S.W.2d 590, 591"92 (Tex.1985); Viscardi v. Pajestka, 576 S.W.2d 16, 19 (Tex.1978). | Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public. | What does the term dedication imply under the taking laws? | 017607.docx | LEGALEASE-00126383-LEGALEASE-00126384 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19286 | Kelley v. Mallory, 202 Or. 690 | 302+8(1) | It is this defense of res judicata which first challenges our interest. When we examine the complaints in the two suits, we are immediately struck by their similarity. Both are between the same parties and both plead the entire agreement of April 2, 1948, as the basis for plaintiff's claim for relief. In both suits the relief sought is for an accounting between Kelley and Mallory predicated upon the theory that the agreement created a fiduciary relationship between them. In the first suit, however, plaintiff pleads as a conclusion of law that the agreement creates a partnership in the business known as Mallory Chevrolet Company; but a conclusion of law is not issuable, requires no denial and does not aid the pleading. Almada v. Vandecar, 94 Or. 515, 519, 185 P. 907. It amounts to a nullity, and a pleader's construction of the legal character of the contract is not binding on the court. Young v. Evans, 104 Or. 619, 624, 208 P. 741; Dickenson v. Henderson, 90 Or. 408, 411, 176 P. 797. When the instrument relied upon is set out in full in the pleading, as in both the Kelley suits, it prevails over the allegations as to its legal effect. Young v. Evans, supra, 104 Or. at page 625, 208 P. 741. | Conclusion of law in pleading is not issuable, requires no denial, does not aid the pleading, and amounts to a nullity. | Are conclusions of law issuable? | Pleading - Memo 195 - RMM.docx | ROSS-003286644-ROSS-003286645 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 19287 | Yellen v. Cooper, 828 F.2d 1471 | 170A+759 | Waiver, like immunity, is an affirmative defense which must be affirmatively pleaded. Fed.R.Civ.P. 8(c); accord Pan Am. Bank v. The Oil Screw Denise, 613 F.2d 599, 602 (5th Cir.1980); Barnwell & Hays, Inc. v. Sloan, 564 F.2d 254, 255 (8th Cir.1977). However, the policy underlying Rule 8(c), affording the plaintiff adequate notice of unanticipated defenses, is not violated when the plaintiff's in forma pauperis complaint itself sets out facts plainly demonstrating the affirmative defense. As we noted earlier, the district court found the "complaint on its face" indicated that Yellen "signed a written request for final disposition of [the Michigan] detainer." Moreover, the court found plaintiff's amended complaint "more clearly" asserted he was provided forms to request final disposition but was not told of his pretransfer rights. Under the case law governing the interpretation of the IADA, the plaintiff's conduct clearly established waiver as a matter of law. | Waiver, like immunity, is affirmative defense that must be affirmatively pleaded. Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A. | Should waiver be affirmatively plead? | 023984.docx | LEGALEASE-00126716-LEGALEASE-00126717 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 19288 | Northlake Marine Works v. City of Seattle, 70 Wash. App. 491 | 148+2.3 | Northlake also argues that inverse condemnation has occurred through virtue of the City's agreement to purportedly dispense with normal land use regulations and procedures pursuant to the Agreement. Under certain circumstances, land use regulations may be challenged as unconstitutional takings. "A regulation effects a taking of private property if "it "does not substantially advance legitimate state interests ... or denies an owner economically viable use of his land.""" Sintra, Inc. v. Seattle, 119 Wash.2d 1, 16, 829 P.2d 765 (1992) (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 485, 107 S.Ct. 1232, 1241, 94 L.Ed.2d 472 (1987), quoting Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)). | City's agreement with private developers to transfer its interest in southern half of railroad right-of-way in return for perpetual easement over portion of property for public trail was not inverse condemnation on ground that city purportedly dispensed with normal land use regulations and procedures, where, although agreement did contain provisions granting development credit to developers, there was no evidence that future developments would deviate from standards required by law. West's RCWA Const. Art. 1, S 16. | Does a regulation effect a taking of private property if it does not substantially advance legitimate state interests? | 017680.docx | LEGALEASE-00127286-LEGALEASE-00127287 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 19289 | United States v. Mann, 462 F. Supp. 933 | 349+164 | This 12-mile limit includes the territorial sea, which extends to three miles from the coast, and the contiguous zone, which extends from three to 12 miles from the coast. The United States exercises plenary powers over the territorial sea, subject to the requirement that the passage of foreign vessels may not be interfered with unreasonably. See Carmichael, At Sea with the Fourth Amendment, 32 Miami L.Rev. 51, 56-57 (1977). The power of the United States over foreign vessels in the contiguous zone is limited to the preservation of specific interests, e. g., the enforcement of customs and safety laws. See id. at 58. | Defendants, charged with conspiring to import marijuana into United States and conspiring to possess marijuana with intent to distribute in United States, had no reasonable expectation of privacy in Mexican waters, even if they had been in Mexican territorial waters, and they had no "possessory interest" of any kind in Mexican contiguous waters or Mexican territorial sea, and thus they had no standing to complain of Coast Guard's search, seizure and arrest of vessel in question, even if they were located within Mexican territorial sea and certainly when they were merely located within Mexican contiguous waters by testimony of their own witness, codefendant. U.S.C.A.Const. Amend. 4. | "Does the United States exercise plenary power over the territorial sea, subject to the requirement that the passage of foreign vessels may not be interfered with unreasonably?" | 019874.docx | LEGALEASE-00127044-LEGALEASE-00127045 | SA, Sub | 0.1 | 0 | 0 | 1 | 1 | |
| 19290 | Mellor v. Lawyer, 55 Ill.App. 679 | 289+823 | Incoming partner is not liable for debts of old firm except by agreement, but such agreement may be inferred from facts and circumstances which justly raise an implication of its existence. Ringo v. Wing (Ark.), 5 S. W. Rep. 783; Peyser v. Myers, 435 N. Y. 599; Hannagan v. Morrissey (N. Y.), 27 N. E. Rep. 402. | An incoming partner is not liable for the previous debts of the concern, unless he makes himself so by express agreement, or by such conduct as will raise the presumption of a special promise. | Is an incoming partner liable for debts incurred prior to his entering the partnership? | 021928.docx | LEGALEASE-00127247-LEGALEASE-00127249 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 19291 | Allstate Amusement Co. of Illinois v. Pasinato, 96 Ill. App. 3d 306 | 212+1546 | To obtain a preliminary injunction, plaintiff must establish that (1) it possesses a protectible right; (2) there will be irreparable injury if the injunctive relief is not granted; (3) the remedy at law is inadequate; and (4) there is a likelihood that plaintiff will succeed on the merits. (Bromberg v. Whitler (1978), 57 Ill.App.3d 152, 14 Ill.Dec. 558, 372 N.E.2d 837.) Injunctive relief is such an extraordinary remedy that plaintiff must plead facts which clearly establish that the remedy is necessary. (Betts v. Department of Revenue (1979), 78 Ill.App.3d 102, 33 Ill.Dec. 426, 396 N.E.2d 1150.) Allegations of mere opinion, conclusion, or belief are not sufficient to show a need for injunctive relief. (Ibid.) "(T)o establish a cause of action for injunctive relief plaintiffs must allege facts necessary to establish that their legal remedy is inadequate and that irreparable injury will result should injunctive relief not be granted. Consequently, allegations in a complaint that are conclusory in those respects are insufficient." (Larkin v. Howlett (1974), 19 Ill.App.3d 343, 345, 311 N.E.2d 367.) Moreover, where money damages is an adequate remedy, injunctive relief is not proper. G. H. Sternberg v. Cellini (1973), 16 Ill.App.3d 1, 305 N.E.2d 317; appeal after remand, 30 Ill.App.3d 874, 333 N.E.2d 261. | Preliminary injunctive relief is such an extraordinary remedy that plaintiff must plead facts which clearly establish that the remedy is necessary. | Are conclusory allegations sufficient for granting injunctive relief? | 023074.docx | LEGALEASE-00127026-LEGALEASE-00127027 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 19292 | Andrews Indus. v. Andrews, 14 Conn. Supp. 305 | 302+210 | It is a fundamental rule of law that a "speaking demurrer" is improper since no allegation of fact is permissible in a demurrer. Ryan v. Knights of Columbus, 82 Conn. 91, 92; 41 Am. Jur. 440, " 209. | A speaking demurrer is improper since no allegation of fact is permissible in a demurrer. | Are speaking demurrers improper? | 023097.docx | LEGALEASE-00127141-LEGALEASE-00127142 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 19293 | Rural Elec. Co. v. State Bd. of Equalization, 57 Wyo. 451 | 371+1866 | In order that an owner of an electric plant may be said to be a public utility, his or its property must be devoted to public use. State v. Nelson Corp., 34 Idaho 217, 2009  132; Story v. Richardson, 186 Cal. 162, 198 P. 1057; 184 L.R. 799; 51 C.J. 5, and it has been held that such dedication will not be presumed without evidence of unequivocal intention. State v. Nelson Corp., supra; Southern Pac. Power Co. v. Public Util. Comm., 130 Ohio St. 246, 143 N.E. 700, 34 A.L.R. 171; Allen v. Railroad Comm., 179 Cal. 68, 175 P. 466, 8 A.L.R. 249, 920 that intention may be shown by the circumstances in a given case. The facts govern; it does not, as will appear later, solely depend upon the words and the declaration of the owner. This much, however, is true, that an owner of such a plant and at least have undertaken to actually engage in business and supply at least some of the community to some of the public. That has been done in this case. Supplying electricity has long been, and there is universally recognized as a service in which the public may be interested, and which may properly affect public of the public character; in the absence of countervailing reason. Weiman on Public Service Corporations, Sec. 241. It has been held that the character that the transmission, and sale of electric energy, a commercial product, which more, is the public. No to indicate of public service. See 48 L.R. and that the character at Southern Ohio Power Co. v. Public Util. Comm., supra. That may be conceded, still it would seem that the character of service, which may be impressed with a public interest; that the facts exist. The sale and furnishing of lumber, for instance, stands on a different footing from the sale and furnishing of electricity under certain conditions. We may infer the public to affect in the one case where we would not in the other. See 51 C. J. 5. It has been held that the number of persons is not a determinant. (Footnote 5) Constr. Co. v. Public Serv. | Insofar that an owner of an electric plant may be said to be a "public utility," his property must be devoted to public use. | Is the determination of whether a plant or system is a public utility based on whether the public may enjoy the right or by permission only? | 042693.docx | LEGALEASE 0027303-LEGALEASE 0027306 | SA, Sub | 0.9 | | 0 | | | |
| 19294 | Nestal v. Future Const., 836 N.E.2d 445 | 366+55 | Appellant's App. p. 259-60 (emphasis added). The trial court found nothing to indicate a breach of contract and negligence; and we see no reason to charge Nestal with willful and wanton or gross negligence these facts, And as noted in Milwankeen, negligence and breach of contract do not supersede a waiver of subrogation. Midwestern Indem. 801 N.E.2d at 672. As such, the waiver of subrogation clause is valid and | Negligence and breach of contract do not supersede a waiver of subrogation. | Does negligence supersede a waiver of subrogation? | Subrogation - Memo 4 1076 - C - KG.docx | ROSS-003298823 ROSS-003298824 | Condensed, SA | 0.82 | | 1 | 0 | | |
| 19295 | St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 137 F. Supp. 2d 33 | 366+55 | The moving parties argue that this action is barred by Dun't and ETSA having waived a right of recovery for the losses covered by the Policy, and (b) Paul having entered into a subrogation waiver in the Policy. It is well settled that waiver of subrogation clauses are valid in New York state. See Board of Education v. Valden Inc., 46 A.D.2d 619, 619 N.Y.S.2d 203, 288 (N.E.2d 798) (1979) (upheld waiver of subrogation clause in construction contract, stating that the parties clearly anticipated that [one party] might not complete the project where [the other party] was particularly engaged in commercial large construction projects, because they [would]  [damaged and disputes among the parties to [the project], and ... impair [the contracting parties from too late bringing all property damage under the at risk-builder's property insurance] Dist-Marsh & Ellis Ins. Co. Ltd. v. Employers Ins. of Wausau, 784 F.2d 191, 194 (2d Cir. 1986). | Waiver of subrogation clauses are valid under New York law. | Are waiver of subrogation clauses valid? | 043014.docx | LEGALEASE 0027149-LEGALEASE 0027150 | SA, Sub | 0.93 | | 1 | 0 | | |
| 19296 | H. O. Canfield Co. v. United Const. Workers, 136 Conn. 293 | 13+65 | The strike was called July 25. The writ was dated the same day. The temporary injunction was issued August 6. The ordinary rule is that the right to an injunction is to be determined at the time of the hearing Lewis Enterprises, Inc. v. International Alliance of Theatrical Stage Employes, 127 Conn. 415, 435, 17 A.2d 525 In this case at bar this rule could not be applied fully because the defendants were not restrained by the temporary injunction after August 6 and the trial did not take place until November. Under such circumstances, and in the absence of constitutional consideration, as the plaintiff substantially concedes in its brief. That consideration should be given to the question of the possibility of future wrongful acts. No injunction is granted with reference to what there is reason to expect in its absence. Riesa, Brann v. International Pocketbook Workers Union, supra 113 Conn. 110, 113, 130. | The right to an injunction is to be determined as of the time of the hearing. | Is the right to an injunction to be determined as of the time of the hearing? | Action - Memo 8 704 - C - NE.docx | ROSS-003297884 ROSS-003297889 | Condensed, SA | 0.92 | | 1 | 0 | | |
| 19297 | Alley v. Alley, 137 Ga. App. 256 | 13+65 | The doctrine of laches has no application as a defense to an action in law. Pedget v. Bryan, 121 Ga App. 807, 814, 813, 175 S.E.2d 884 ; Adkis v. Ga. Smith, 116 Ga. 946, 33 S.E. 2d Ben, Brown v. 211, 817, 81, 175 S.E.2d 884 ; Adkis v. Smith, 1925, 116 Ga App. 483(1), 167 S.E.2d 686; is simply an action on a debt of record and is not an equitable action. See Connell v. Connell, 119 Ga App. 485(1), 167-S.E.2d 686. | Doctrine of laches has no application as defense to action at law. | Is laches not a defense in action at law? | 000012.docx | LEGALEASE 0027720-LEGALEASE 0027721 | SA, Sub | 0.81 | | 0 | | | |
| 19298 | Dilliard v. Brown, 652 F.2d 316 | 92+2501 | Citing Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 71, 68.2d 663 (1962) (holding that a court cannot enter the Constitutional controversy concerning operation of the military try Congress as the legislative branch and its the President. Each question, in fact although  recognized this express commitment, it was briefly argues that these are no judicially discoverable and manageable standards for reviewing Dilliard's claim. | Claims of sex discrimination and violation of constitutional right of equal protection by female servicemen members who were discharged from training commands involve a nonjusticiable policy question concerning operation of the military (which) (although inherent although under Constitution operation of the military is vested in Congress and the Executive, Constitution does not prevent a federal court from entertaining an appropriate constitutional claim brought against the military; AM 600-200, U.S.C.A.Const. Art. 1, S 8, cls. 1, 12, 14, 16; Art. 2, S 2.) | Is the Constitution an express grant of military power to Congress and the President? | Armed Forces - Memo2 NE.docx | LEGALEASE 0001740-LEGALEASE 0001740-0001743 | Condensed, SA, Sub 0.23 | | 1 | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 13299 | United Sch. Dist. No. 380, Marshall Cty. v. McMillen, 252 Kan. 451 | 1.41 t-16 | It appears clear that the legislature under "... if Article 6 has the broad duty of establishing the public school system. The local school board's duties under "... if Article 6 are not self-executing but are dependent upon statutory enactments of the legislature. In However, we do not imply that the legislature has one blanche over the duties and actions of local school boards. The respective duties and obligations of the legislature and the local school boards by the Kansas Constitution must be read together and harmonized by both entities may carry out their respective obligations. In considering the competing provisions, we do not find that the statute in question is so unreasonable that it unduly interferes with the furnishing, the local school board of performing its constitutional duty to maintain, develop, and operate the local public school system. | Statute providing that due process hearing committee's decision with respect to renewal school teacher or employment dispute relating to nonrenewal of teacher's contract is final, subject to appeal to district court, does not unconstitutionally impinge on state board of education's general supervisory authority, hiring and firing of teachers and employees in local school districts not part of supervisory duties of state board of education, and is duty best administered by local authorities within statutory framework adopted by legislature, K.S.A. 72-5443; K.S.A. Const. Art. 6, § 2(a). | Does legislature have carte blanche over the duties and actions of local school boards? | Education - Memo #32 - C - b.docx | RO55/0013347 R055-00313428 | Condensed, SA, Sub 0.32 | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 13900 | State ex rel. Rose v. Bd. of Ed. of City of Bristol, 177 Kan. 540 | 1.41 t-30 | The legislature has full control over schools and school property, and the G.S. body 1961, 72-1623, provided that public schools of a city of the second class shall be governed by a board of education which shall constitute a body corporate possessing the usual powers of a corporation for public purposes, and in such name may contract, acquire, hold and convey real and personal property. By section 72-1623, the legislature provided that the board should establish and maintain a system of free public schools, and make all necessary rules and regulations for the government and conduct of the same. Section 72-1629 provides that the board is authorized to purchase or lease ground for public recreation places, etc. Section 72-1706 provides, in part, that any board, upon determining that it is necessary to purchase or improve a school site or sites, to construct, equip, furnish, repair, remodel or make additions to any building or buildings used for school purposes, may submit to the electors of the city school district the question of issuing general obligation bonds of the school district to provide funds for the purposes, and upon the affirmative vote of the majority of those voting thereon, the board shall be authorized to issue such bonds. The board shall adopt a resolution providing the proposition of whether bonds are to be issued and the estimated amount thereof." (Emphasis supplied.) | The legislature has full control over schools and school property. | Does the legislature have full control over schools and school property? | Education - Memo # 44 - C - b.s.docx | LEGALEASE 00037384-LEGALEASE 00037386 | Condensed, SA, Sub 0.95 | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 13901 | Dankievicz v. Bd. of Ed. of City of Detroit, 361 Mich. 212 | 1.41 t-30 | We have recently recognized education as a subject of governmental concern and activity. Robinson v. Washtenaw Circuit Judge, 228 Mich. 225, 199 N.W. 618; Daniels v. Grand Rapids Board of Education, 191 Mich. 339, 158 N.W. 23 L.R.A. 1916F, 468 In Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 17 U.S. 518, 634, 4 L.Ed. 629, Chief Justice Marshall said: "That education is an object of national concern, and a proper subject of legislation, all admit. That there may be an institution founded by government, and placed entirely under its immediate control, the officers of which would be public officers, amenable exclusively to government, none will deny." | Education is a subject of governmental concern and activity. | Is education a subject of governmental concern and activity? | 03090.0.docx | LEGALEASE 00127654-LEGALEASE 00127657 | Condensed, SA | 0.91 | 0 | 0 | 0 | 0 | 1 |
| 13902 | State ex rel. Missouri Highway & Transp. Comm'n v. Turner, 857 S.W.2d 293 | 14b-2.2 | Abandonment after the payment of the commissioners' award does not constitute an unconstitutional taking, as long as condemnor before taking possession of the property. [text] MHTC taken possession and began construction, it would have lost the right to abandon. As the U.S. Court of Appeals for the Eighth Circuit stated, "[i]t has been held quite generally that where ... possession of the property is not taken nor prior to the institution of condemnation proceedings, the proceedings may be abandoned at any time before the actual acceptance of the property and payment therefor." Barnidge v. United States, 101 F.2d 295, 298 (8th Cir.) | Abandonment of condemnation after the payment of commissioner' award does not constitute an unconstitutional taking as long as condemnor abandon before taking possession of the property. | "If possession of the property is not taken at or prior to the institution of condemnation proceedings, can the proceedings be abandoned at any time before the actual acceptance of the property and payment?" | 03784.docx | LEGALEASE 00127317-LEGALEASE 00127318 | SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 13903 | Foothaugh v. United States, 27 Fed. Cl. 628 | 14b-2.2 | For plaintiffs to prevail on the first allegation there must be some evidence in the record that defendant's publication of maps inadvertently indicating public ownership of plaintiffs' land deprived plaintiffs of an most of their interest in the property. Mere indication of ownership, without more, does not amount to a taking. See Hilkovsky v. United States, 504 F.2d 1112, 1113 n.5(3), 205 Ct.Cl. 460 (1974); Gensah Live Stock Co. v. United States, 79 F.Supp. 87, 91 (111.Ct.Cl.) (1948), aff'd, 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950); Ushell Fuel Co. v. United States, 23 Cl.Ct. 90 (1991). There is no evidence in the record to indicate that defendant's inadvertent publishing of the maps deprived plaintiff of any tangible interest in their property. | United States' publication of maps inadvertently indicating public ownership of plaintiffs' land did not rise to the level of a taking, absent evidence indicating that plaintiffs were deprived of any tangible interest in their property, U.S.C.A. Const.Amend. 5. | "Does mere indication of ownership, without more, rise to the level of a taking?" | 03784.docx | LEGALEASE 00127348-LEGALEASE 00127349 | Condensed, SA, Sub 0.67 | 0.67 | 0 | 1 | 1 | 1 | 1 |

Appendix D

3401

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 23,876 | 9,029 |
| 19504 | United States v. Certain Parcels of Land, 215 F.2d 140 | 148n8 | Once it is administratively determined that a property is to be taken for a public use, a United States court ordinarily will not review the reasonableness of the government's decision as to the time of taking or the portion which must elapse before the property is utilized solely for a public activity. 40 U.S.C.A. § 257. | Once it is administratively determined that a property is to be taken for a public use, a United States court ordinarily will not review the reasonableness of the government's decision as to the time of taking or the portion which must elapse before the property is utilized solely for a public activity. 40 U.S.C.A. § 257. | Is the judgment as to the proper time of taking to be that of the government official to whom the exercise of the power of eminent domain has been delegated by Congress? | 01703.docx | LEGALEASE 00127590 LEGALEASE 00127591 | SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 19505 | Sec. Ins. Co. of New Haven v. The Connecticut Resources Recovery Auth., Co. v. Morgan, 250 Md. 241 | 148n4 (16) | In any subrogation case, the burden of proving entitlement is on the subrogee, the party seeking to assert the right to subrogation by perfecting security interest. If a conventional subrogee fails to meet the burden, he cannot prevail. Subrogee fails to meet the burden. But the subrogee is not entitled to prove that it paid the debt, on receipt of proof of loss without proving that it was bound to do so, neither has the subrogee the speculation that it may have been a volunteer nor regains the possibility that the right which it asserted may have been limited or denied by its agreement. | In any subrogation case the burden of proving entitlement is on the subrogee. | Should a subrogee prove that he is entitled to relief by subrogation? | 043612.docx | LEGALEASE 00127584 LEGALEASE 00127585 | SA, Sub | 0.86 | | 1 | 1 | 1 | |
| 19506 | Old Fort Baskin Sv. v. City of Denison, 17A Mich. App. 416 | 166n55 | The issue was addressed by this Court in American Oil Co. v. L.A. Drenckhan, Inc., 774 Mich App. 393, 294 N.W.2d 393, held that a surety does not waive its right to assert equitable subrogation by perfecting rights in an installment of those derived from equitable subrogation. American Oil, supra, at p. 361, 294 N.W.2d 393. That case however does not have its ability to assert equitable subrogation by perfecting its security interest. | Defaulting contractor's surety did not lose its ability to assert equitable subrogation by perfecting security interest. | Can a surety waive its right to assert equitable subrogation by perfecting an assignment of accounts? | 043849.docx | LEGALEASE 00127754 LEGALEASE 00127755 | Condensed, SA, Sub 0.75 | | 0 | 1 | 1 | 1 | |
| 19507 | Vogn v. Anderson, 181 Wis. 2d 726 | 366n14(86) | This argument would be persuasive had American Family, like the insurer in Lambert, become subrogated prior to the running of the statute of limitations and then sued on a pure subrogation basis. Here, however, under the facts before us as in this matter, the insured in a suit contractual case in either prior to subrogation has the burden of proving it. See Vogn, 181 Wis.2d at 996, 511 N.W.2d at 440. By holding in this case, however, that American Family asserts its rights to subrogation and they never proceeded the right to recover the UIM benefits, the claim to insured would be entitled to proceed on its claim. | Assignment of claim by means of subrogation is not automatic; party that wants to impose subrogation bears burden of proving it. | Is the assignment of claim by means of subrogation automatic? | Subrogation - Memo # 1235 - C - CK.docx | ROSS-003311968-ROSS-003313969 | Condensed, SA | 0.86 | | 0 | 1 | 1 | |
| 19508 | Behn v. Hook, 173 W. 122 | 366n55 | Plaintiff's primary argument on appeal is that public policy considerations preclude applying a waiver-of-subrogation provision to the case, in which, as opposed to other cases, in a wrongful-death negligence case is alleged. In making this argument, plaintiff concede that parties to insurance may contractually obligate themselves from their negligent conduct in certain circumstances, but contend that public policy should not allow a party to contractually waive responsibility for reckless conduct that imperils the public. We conclude that given the circumstances of this case, the instant waiver-of-subrogation provision does not violate public policy. | Waiver-of-subrogation provision in new home construction contract did not violate public policy, although property owners alleged gross, as opposed to ordinary, negligence on part of subcontractor. | Does a waiver-of-subrogation provision violate public policy? | 043067.docx | LEGALEASE 00127598 LEGALEASE 00127599 | Condensed, SA, Sub 0.68 | | 1 | 1 | 1 | |
| 19509 | Gant v. Gant, 185 So. 3d 607 | 257n137.1 | While the rules are silent on whether a petition can be voluntarily dismissed prior to an adjudicatory hearing, common sense dictates that a dismissal is appropriate. See L.R.C. 2014.1, A.1.A.1; 2014.1, A is helpful. There, in ruling on a petition for a writ of prohibition, the Court held it is entitled to a voluntary dismissal of the petition prior to an adjudicatory hearing, id. at 579-76. "A party may voluntarily dismiss any claim, and such a dismissal, if accepted by the court as provided by the rule, will terminate the court's jurisdiction over the subject matter of the state dismissal." Carter v. Carter, 84 So.3d 1172 (Fla. 3d DCA 2012). This plaintiff's right to voluntarily dismiss the proceedings is almost absolute, with exceptions for fraud on the court and child custody. Tobkin v. State, 777 So.2d 1160, 1162 (Fla. 4th DCA 2001), id. at 576 The brother argued that our decision in Jones v. Sisbee, 977 So.3d 341 (Fla. 4th DCA 2012), prohibits the voluntary dismissal of a petition prior to an adjudicatory hearing. The dissent agrees that issue is dispositive. We disagree. | Settlement agreement, which required older brother to voluntarily dismiss a petition to determine younger brother's incapacity, and required older and younger brother to provide older brother with waiver of the younger brother's medical events, copies of the financial statements, and the medication records, did not violate state law or public policy, even though no adjudicatory hearing was held, and the three-member examining committee found younger brother to be incapacitated and lacking the capacity to contract, where the agreement and probate rules did not prohibit a party voluntarily dismissing a petition to determine incapacity, or mandate an adjudicatory hearing. West's F.S.A. § 744.331(1). | "Can a party voluntarily dismiss any claim, and does such a dismissal deprive the court of jurisdiction over the subject matter of the claim dismissed?" | Pretrial Procedure - Memo # 935 - C - SHS.docx | LEGALEASE 00028203 LEGALEASE 00028204 | Condensed, SA, Sub 0.17 | | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19910 | Wilson v. Ortiz(I), 443 Md. 173 | 307k312 | The Maryland Rules allow a plaintiff in a voluntary dismiss a complaint in one of three ways: by a notice of dismissal, by a stipulation of dismissal, or by court order. After an answer has been filed, the plaintiff can accomplish a voluntary dismissal only by obtaining the defendant's assent or the court's permission. | Plaintiff may voluntarily dismiss a complaint in one of three ways: by notice of dismissal, by a stipulation of dismissal, or by court order. | Can a plaintiff voluntarily dismiss a complaint by filing a simple notice of dismissal before the defendant has answered the complaint? | 038995.docx | LEGALEASE-00235111-LEGALEASE-00235112 | SA, Sub | 0.69 | | | 1 | | 1 |
| 19911 | Bonds v. State, 296 Ark. 1 | 211k1658 | Under the facts of this case, it was not necessary that the state indicate to the exposed in-cest informations the dates on which the offenses occurred. First, it is significant to note that it is not an essential element of rape, incest, or other sexual offenses under this statute for which he was charged. Secondly, the state informed Bonds that the rape for which he was charged took place within three years immediately preceding the filing of the original information and that the act of incest for which he was charged took place within the statute of limitations. Furthermore, in crimes of this nature against family members, as compared to offenses against victims with whom the accused had no prior contact, an accused is more likely to be aware of the specifics of the charges against him and therefore better able to prepare his defense. | State's failure to include in rape and incest informations the date on which offenses occurred did not render informations inadequate to notify defendant of charges against him in violation of his Sixth Amendment right and state constitutional right; time was not essential element of rape or incest, and State informed defendant that rape for which he was charged took place within three years immediately preceding filing of original information and that acts of incest for which he was charged took place within statute of limitations, U.S.C.A. Const.Amend. 6; Const. Art. 2, § 10. | Is time an essential element of rape? | Sec'l'Offence - Memo 60 18.docx | ROSS-003292013-ROSS-003292014 | Condensed, SA, Sub | 0.29 | | | 1 | 1 | 1 |
| 19912 | In Matter of CLA Auctholder, 387 B.R. 906 | 366k55 | The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a question of intention. 83 C.J.S. Subrogation § 21 (2008). See Brookside Communities, LLC v. Lake Dow North Corp., 268 Ga.App. 785, 603 S.E. 2d 173 (2004) (holding that exculpatory provision in apartment lease waived landlord's insurer's subrogation rights against tenant's defaults caused by tenant negligence). | Under Georgia law, whether right of subrogation has been waived is question of intention. | Is the question of whether the right of subrogation has been waived a question of intention? | 043172.docx | LEGALEASE-00235154-LEGALEASE-00235155 | Condensed, SA, Sub | 0.77 | | | 1 | | 1 |
| 19913 | Salustri v. Corapi, 404 N.J. Super. 510 | 366k55 | The burden of establishing subrogation in a right of assent origin. "Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171, 104 A.2d 288 (1954), Chief Justice Vanderbilt observed that "it is most often brought into play when an insurer who has indemnified an insured for damage or loss is subrogated to any right that the insured may have against a third party, who is also liable for the damage or loss. This venerable right, however, may be waived or limited by agreement, (citing Holt v. Interstate Adjustment Co. Inc., 79 R.I. 364, 366, 154 A.2d 213 (1959)." 15 N.J. at 171 (citing 50 Am.Jur. 679 1953). supported by other grounds by N.J.S.A. 2A:29-1.) Standard v. Clarke, 114 N.J. 146, 164, 146 A.2d 886 (C. & A.1958); see also Continental Ins. Co. v. Shea, 288 N.J. Super. 331, 672 A.2d 278 (Law Div 1995) (stating that subrogation rights are not applicable when entitlement is inconsistent with the terms of the claim sought). | Right of subrogation may be waived or limited by agreement. | Can the right of subrogation be waived or limited by agreement? | 043026.docx | LEGALEASE-00235559-LEGALEASE-00235560 | SA, Sub | 0.93 | | | 1 | | 1 |
| 19914 | RU Ins. Co. v. S. Union Co., 341 S.W.3d 821 | 366k55 | The General Conditions to the AIA Contract describe an identifiable class of persons intended to benefit from the waiver of subrogation provision set forth in paragraph 11.3.7. A waiver of subrogation provision in a construction contract is "a mechanism for reducing litigation by preventing claims from arising, and by underwriting the contractual protection of insurance for the uncertain and expensive protection of liability loss. Ins. v. Continental (citing 11 Richard A. Lord, Williston on Contracts § 1.31.13, 33.8). True, the Owner (Lyondell) and the Contractor (the entity with whom Trumph contracted using the AIA Contract) each agreed to "waive all rights against each other and against the Construction Manager, Architect, Owner's other Contractors and own forces described in Article A.11.3, for damages caused by fire or other perils to the extent covered by property insurance..." (citations omitted) | Natural gas utility could seek protection under waiver of subrogation clause in contract between construction contractor and owner of natural gas plant that was partially destroyed in natural gas explosion while it was under construction; utility was included within the identifiable class of persons covered by the waiver of subrogation provision, utility's activities in provision of gas distribution line and necessary metering and regulatory equipment were essential to completion of plant. | Does a waiver of subrogation in a contract reduce litigation by preventing claims? | Subrogation - Memo 4 1150 - C - VA.docx | LEGALEASE-00235556-LEGALEASE-00235557 | | | | | 1 | | 1 |
| 19915 | New Hampshire Ins. Co. v. Moss, 500 S.W.3d 132 | 366k55 | Texas law requires that the first money recovered by an insured worker from a tortfeasor go to the worker's compensation carrier, until the carrier "is paid in full the benefits or future payments of compensation to which it is entitled." However, the court also recognized the common law subrogation rights may be waived or altered by contract. Trinity Universal Ins. Co. v. Bill Cox Const. , Inc., 75 S.W.3d 6, 81 (Tex.App. – San Antonio 2002). | Subrogation rights may be waived or altered by contract. | Can common law subrogation rights be waived by contract? | 000171.docx | ROSS-003300453-ROSS-003300455 | Condensed, SA | 0.9 | | | 1 | | 1 |
| 19916 | Anglo California Nat. Bank of San Francisco v. Lazard, 106 F.2d 693 | 157k43 | Appellants contend that the means of knowledge is the equivalent of knowledge. Appellees concede that appellees or the owners had the means of discovering the fraud, or duty of investigating the transaction, but that it was insufficient because appellants' reliance thereon. However, it is well settled that the doctrine of laches is not applicable in an action at law. The means of knowledge is not knowledge. | The doctrine of laches is not applicable in an action at law? | Is the doctrine of laches not applicable to an action at law? | LEGALEASE-00238684-LEGALEASE-00238687 | | Condensed, SA, Sub | 0.96 | | | 1 | | 1 |

Appendix D

3403

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,079 |
| 19917 | JJ Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315 | 25T+231 | To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim (Mitsubishi Motors, 473 U.S. at 622 n. 9, 105 S.Ct. at 3353, n. 9. Moreover, the adoption and implementation of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. ~ 201 note, requires the federal policy in favor of arbitration to apply 'with special force in the field of international commerce.' Mitsubishi Motors, 473 U.S. at 631, 105 S.Ct. at 3355. The Court has emphasized [c]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context (Mitsubishi Motors, 473 U.S. at 629, 105 S.Ct. at 3355. | Foreign Sovereign Immunities Act provision conferring jurisdiction on district court over civil actions against foreign state did not preclude reference to arbitration of importer's claims arising in connection with distribution contract with producer whose majority shareholder was French government, and district court was otherwise authorized to determine whether parties contracted to arbitrate their disputes. 9 U.S.C.A. §§ 201, 206, 28 U.S.C.A. §§ 1330, 1602(a), (b); Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. II, subd. 3, 9 U.S.C.A. § 201 note. | How do courts decide whether an arbitration agreement encompasses a dispute? | 007279.docx | LEGALEASE 0028825-LEGALEASE 0028826 | Condensed, SA, Sub 0.44 | 0.44 | 0 | | 1 | 1 | |
| 19918 | The Eros, 241 F. 186 | 354+34 | In any event, if such a general arbitration clause would ever apply to a repudiation of the agreement jurisdiction. National Brokers' Mutual Insurance Co. (1915) A.C. 499), it is clear that it goes to the remedy, not to the rights, of the parties, and that it affects not the obligation of the law of the forum. And in that court is well settled that such a general arbitration clause is ineffectual to deprive the parties of their right to appeal to the courts. United States Asphalt Co. v. Trinidad Lake Petroleum Co. (D.C.) 222 Fed. 1006, and cases there cited. Aktieselskabet Korn-Og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten (D.C.) 232 Fed. 403, Meacham v. Jamestown R.R. Co, 211 N.Y. 346, 105 N.E. 653, Ann. Cas. 1915 C, 851; it is therefore unnecessary to inquire whether, if this English Arbitration Act applied, the claimant has complied with its requirements. | The effect of an arbitration clause in a charter party is to be determined by the law of the forum. | Can an arbitration clause be considered as a remedy and not as a right of the parties? | 007286.docx | LEGALEASE 0028840-LEGALEASE 0028841 | Condensed, SA, Sub 0.89 | 0.89 | 0 | | 1 | | |
| 19919 | Bank of Commerce & Sav. v. Randell, 107 Neb. 332 | 83T+402 | Section 5348, "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery." | The provision of the Negotiable Instruments Law that an instrument is negotiated by delivery if payable to bearer while if payable to order is to be completed by the indorsement of holder completes by delivery means that an instrument payable to order is to be indorsed by the holder in order to pass title, and not that an indorsement without delivery is sufficient. | When is an instrument negotiated? | Bills and Notes - Memo 155 - 86.docx | ROSS-000314253-ROSS-000314254 | SA, Sub | 0.02 | 0 | | | 1 | |
| 19920 | Loan Modification Group v. Reed, 694 F.3d 145 | 289+924 | LMG claims that an at-will partnership cannot support the jury's damages award. Although an at-will partnership can be dissolved by any one partner at any time, see Meehan v. Shaughnessy, 404 Mass. 419, 535 N.E.2d 1255, 1260 (1989), under Massachusetts law, the dissolution of the partnership does not end the matter. Dissolution is merely "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Mass. Gen. Laws ch. 108A, ~ 29. Dissolution occurs, among other things, "[b]y the expulsion of any partner from the business..."as happened here when Reed was expelled from LMG, see ~ 31(1)(d). Under Massachusetts law, upon dissolution of an at-will partnership, each partner "has the right to wind up the partnership affairs," ~ 37; "the dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed," ~ 30; "Winding up" is "[t]he process that occurs after a partnership is dissolved, during the course of which each in process is completed, partnership assets are sold, creditors are paid, and the business of the partnership is brought to an orderly close." Ann... v. Sable, 444 Mass. 146, 819 N.E.2d 587, 592 (2004) (quoting Adams v. United States, 218 F.3d 383, 388 (10th Cir.2000)). | Under Massachusetts law, an at-will partnership can be dissolved by any one partner at any time. | Can a partnership at will be dissolved at any time? | 019075.docx | LEGALEASE 0028897-LEGALEASE 0028899 | Condensed, SA, Sub 0.93 | 0.93 | 0 | | 1 | | |
| 19921 | Fightmaster v. Leffler, 556 P.2d 180 | 289+674(1) | Partnership bound by partner's breach of trust. The partnership is bound to make good the loss; (1) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and (2) Where the partnership, in the course of its business, receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership. | One partner is bound by the knowledge of another, bound by his wrongful and fraudulent acts, and bound by his breach of trust. KRS 362.205-362.220. | Is a partnership bound by a partner's breach of trust? | 023859.docx | LEGALEASE 0028913-LEGALEASE 0028914 | SA, Sub | 0.67 | 0 | | 1 | | |
| 19922 | Southworth v. Mason Twp. Bd. of Trustees, 63 N.E.2d 840 | 360+739) | The trial court determined that it lacked jurisdiction over the Southworths' appeal because the road was not vacated by the Commissioners, but rather by operation of law. Trustees. As such, it does not have previously held, "a board of township trustees does not have authority to vacate a township road. It must ask the board of county commissioners to do so."Goldsberry, 2005-Ohio-4701, 2005 WL 2206027, at 9, citing 1999 Ohio Atty.Gen.Ops. No. 99-005. "Accordingly, if a board of county commissioners is the only entity granted the authority to vacate a township road, and the only mechanism for taking such action is found in R.C. Chapter 5553, logic dictates that the procedure for appealing those decisions provided in that chapter would apply to township roads." | Statute governing appeals in county road cases authorized appeal from deemed vacation of road based on county commissioners' failure to only act on ownership transfer, petition for proposed vacation of portion of township road. R.C. 5553.02. | Does a board of township trustees have the authority to vacate a township road? | 007274.docx | LEGALEASE 0025028-LEGALEASE 0025029 | SA, Sub | 0.69 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19323 | In re Marriage of Maislin, 391 Ill. App. 3d 518 | 30+21 | Appellate courts have a duty to consider, sua sponte, whether we have jurisdiction over an appeal and to dismiss the appeal if jurisdiction is lacking. In re Marriage of Mardjetko, 369 Ill.App.3d 934, 935, 308 Ill.Dec. 289, 861 N.E.2d 354, 355 (2007). A party cannot consent to or waive appellate jurisdiction. Gaynor v. Burlington Northern & Santa Fe Ry., 322 Ill.App.3d 288, 293, 255 Ill.Dec. 786, 750 N.E.2d 307, 310 (2001). While the Supreme Court Rule 301 allows appeals from final judgments as a matter of right (155 Ill.2d R. 301), a judgment is not final unless it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. In re A.H., 207 Ill.2d 590, 594, 281 Ill.Dec. 715, 804 N.E.2d 630, 634 (2004). When a case involves fewer than all the claims brought by a party, the order is not final and appealable... | A party cannot consent to or waive appellate jurisdiction. | Can a party consent to or waive appellate jurisdiction? | Appeal and error – Memo 79 - RK.docx | LEGALEASE 00155047 LEGALEASE 00155049 | Condensed, SA | 0.98 | 0 | | 0 | 1 | |
| 19324 | Makah-Watkins v. Draper, 593 F.3d 1054 | 170B+3 | We generally require a cross-appeal when a party seeks to enlarge her rights under the judgment. Western Broad. Sys., Inc., v. 91 F.3d 1126, 1131 (9th Cir. 1996). Under this rule, "we have allowed cross-appeals where a party seeks to increase its monetary recovery or decrease its monetary liability." Lee v. Burlington N. Santa Fe Ry. Co., 245 F.3d 1102, 1107 (9th Cir. 2001). "Because the cross-appeal requirement is a rule of practice and not a jurisdictional bar," we have required cross-appeals when a party seeks to increase its rights such dispositions as justice requires... "At [quoting Bryant v. Technical Research Co., 654 F.2d 1337, 1342 (9th Cir. 1981)]. Because the issues raised by Makah-Watkins in challenging the district court's selection of her fee award are interrelated to the issues properly on appeal, we can consider them. Id... | The Court of Appeals generally requires a cross-appeal when a prevailing party seeks to enlarge her substantive rights on appeal. | When is a cross-appeal required? | Appeal and error – Memo 79 - RK.docx | LEGALEASE 00155054 LEGALEASE 00155055 | Condensed, SA, Sub 0.84 | | 0 | | 1 | |
| 19325 | Marshall v. Cruet, 97 Fla. 11 | 302+61(1) | The demurrer was overruled. Decree pro confesso was entered and, after the testimony was taken, a Final decree was had. Appeal was taken from order overruling the demurrer and from the final decree. It will then be seen from the quoted questions of the bill of complaint that it sets forth allegations with reference to the failure of the defendant to furnish an abstract, as required by the contract, showing a "Free, clear and unencumbered title to be vested in the defendants, or one of them," only set forth the legal conclusion of the pleader. The bill of complaint did not in any manner attempt to allege the nature or kind, character, or extent of defect in the title as disclosed by the abstract. The bill of complaint did not point out in any particular wherein the title to said lands to be shown by the abstract to be unmerchantable or defective. Conclusions of law are not statements of facts, and their relief must necessarily be shown by the pleaded facts to obtain relief. Reynolds v. Vroom, 25 Fla. 980, 7 So. 36.5; Wat tz, Reynolds, 35 Fla. 317, 17 So. 740; McDonna v. Chapin, 54 Fla. 510, 45 So. 95. | Conclusions of law will not warrant relief in equity. | Can conclusions of law warrant relief in equity? | 021313.docx | LEGALEASE 00129485 LEGALEASE 00129486 | Condensed, SA | 0.95 | 0 | | 1 | 1 | |
| 19326 | Cent. Bank of W. Lebanon v. Martin, 70 Ind. App. 387 | 302+26(3) | Appellee contends also that the assignment of the words is void because the court directs our attention to section 404G, Burns, 1914. This second contention may be not applicable to this matter so rather contention is not of sufficient merit to turn the pleading, because it is neither a good on any theory, it would have been error to have sustained the demurrer. Ordinarily the difficulty with this contention is that the averment in the pleading on which it can rest. Appellee relies primarily on the word "pretended," as a foundation for his contention. But the effect of the adjective "pretended"? The significance of the word is so vague and ambiguous that it does not inform either the court or the adverse party of any specific thing which appellee relies for defense. Does he mean that the casualty company is not a de jure corporation? Does he mean that it is not a de facto corporation or no corporation at all depends on the facts, and the failure to disclose the facts is fatal. The word "pretended" can have no weight in charges as against the averment that the company purports to have been organized under the statute. Section 3434, Burns 1914... | Should a demurrer be sustained if a pleading is good on any theory? | If a pleading be good on any theory at all, a demurrer to it should not be sustained. | 021312.docx | LEGALEASE 00129476 LEGALEASE 00129477 | Condensed, SA, Sub 0.93 | | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19327 | Feldblum Realty Corp. v. City of New York, 150 Misc. 622 | 307A+501 | Since the defendant the City of New York does not oppose the motion, the plaintiff will be given leave to discontinue without costs. The motion to serve an amended complaint as to defendant St. George Paving Corporation must also be granted. Under section 723, Code of Civil Procedure, an amendment of a complaint destroyed the issue, and the Special Term was held without power to allow the cause to retain its place upon the calendar. Bertman v. Neisner, 177 App. Div. 442, 164 N. Y. S. 217. Section 105 of the Civil Practice Act, as construed by Stehli Silks Corporation v. Kleinberg, 200 App. Div. 16, 192 N. Y. S. 284, and Kelly v. Hilbert, 200 App. Div. 489, 193 N. Y. S. 263, empowers the Special Term to make a provision, upon an amendment of a complaint, so as to allow the cause to retain its place upon the calendar, without the service of any further notice of trial and the filing of any new note of issue. The cause being more than a year from the day calendar, discretion should be in favor of allowing the issue to remain unchanged. The amended complaint does change the cause of action from one in tort to one in contract. The facts of the cause, however, remain unchanged. Under these facts, the plaintiff had the option to proceed in contract or in tort. It changed its theory of recovery from tort to contract probably, under stimulation, from a decision in Wilson v. Oliver Costich Co., Inc., 231 App. Div. 346, 247 N. Y. S. 131, affirmed 256 N. Y. 629, 177 N. E. 169. Ordinarily an amendment seeking an entirely different cause of action would be allowed only on severest terms. At bar the amendment merely seeks to substitute a different legal theory of recovery. | Plaintiff should be allowed to discontinue without costs action as to defendant making no objection thereto. | Should a plaintiff be allowed to discontinue without costs? | 024786.docx | LEGALEASE-00129376-LEGALEASE-00129377 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 19328 | Morris v. Univ. of Tex., 348 S.W.2d 644 | 307A+501 | The privilege of taking a nonsuit is expressly authorized by Rule 164, T.R.C.P. The right accorded by this rule is "absolute." Renfroe v. Johnson, 142 Tex. 251, 177 S.W.2d 600. | Privilege of taking nonsuit is absolute. Rules of Civil Procedure, rule 164. | Is the privilege of taking nonsuit absolute? | 039466.docx | LEGALEASE-00129336-LEGALEASE-00129337 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 19329 | Blyman v. Shelby Loan & Tr. Co., 382 Ill. 415 | 302+8(14) | One of the grounds of the motion to strike is that the complaint does not show the plaintiffs have legal title to the estate sought to be partitioned. An examination of their complaint discloses that the allegations of ownership do not state facts upon which appellants might base claim of ownership as tenants in common. The allegation that appellants are first cousins of the deceased and are his sole heirs-at-law, is but a conclusion of the pleader. No facts are pleaded by which it can be determined whether appellants' relationship to the decedent was derived through a common ancestor, or through what ancestor or ancestors they claim. It is not sufficient to allege they are cousins of the deceased, but allegations of fact stating the basis of the relationship, sufficient to require the defendants to answer and to enable the court to determine the truth of the pleadings were necessary to render the complaint sufficient. Harris v. Ingleside Building Corp., supra; Moroney v. Haas, 277 Ill. 467, 115 N.E. 648. There is nothing in the Civil Practice Act which changes this rule. Section 31 of that act, Ill.Rev.Stat.1941, chap. 110, par. 155, abolishes the distinction between actions at law and in equity, but that section also provides: "But this section shall not be deemed to affect in any way the substantial averments of fact necessary to state any cause of action either at law or in equity. | Allegation of complaint in suit for partition of decedent's realty, that plaintiffs were decedent's first cousins and sole heirs at law, which did not show whether plaintiffs' relationship to decedent was derived through a common ancestor or through what ancestors plaintiffs claimed relationship to decedent, was a mere "conclusion" and did not state facts upon which plaintiffs might base claim of ownership as tenants in common of the realty. | "Are allegations that certain persons were sole heirs, a conclusion of law?" | 023139.docx | LEGALEASE-00129740-LEGALEASE-00129741 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 19330 | Kearns v. Ford Motor Co., 567 F.3d 1120 | 170A+636 | Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a party's pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud...." Fed.R.Civ.P. 9(b). Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard. Vess, 317 F.3d at 1105. Any averments which do not meet that standard should be "disregarded," or "stripped" from the claim for failure to satisfy Rule 9(b). Id. To the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2). Id. "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word "fraud" is not used)." Id. | Used car purchaser failed to allege particular circumstances surrounding seller's purported misrepresentations and fraud regarding "certified pre-owned" (CPO) vehicles, and thus failed to state claim for violations of California's Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL) under heightened pleading requirements for fraud claims; even though purchaser alleged that seller's marketing materials and representations led him to believe that CPO vehicles were subjected to rigorous inspections by specially trained technicians, he did not specify what marketing materials actually stated, when he was exposed to them, which ones he found material in making his decision to buy CPO vehicle, or who made statement to him that CPO vehicles were best used vehicles available. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.; West's Ann.Cal.Civ.Code S 1770; West's Ann.Cal.Bus. & Prof.Code S 17200. | Should circumstances constituting fraud be stated with particularity? | 023153.docx | LEGALEASE-00129999-LEGALEASE-00130001 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 19331 | Burden v. Check Into Cash of Kentucky, 267 F.3d 483 | 25T+199 | Plaintiffs in this case allege, under C.B.S. Employees, that the arbitration agreements were used to further a fraudulent scheme. However, Plaintiffs fail to identify, in connection with the alleged fraudulent scheme, any misrepresentation particular to the arbitration agreements, separate from the loan agreements. Allegations that the arbitration agreements furthered the fraudulent scheme are nevertheless arbitrable under Prima Paint. In Arnold v. The Arnold Corp., 920 F.2d 1269, 1280-81 (6th Cir.1990), this Court noted that under Prima Paint, pleading that an arbitration clause "was part of a broader fraudulent scheme ... without more, is no longer sufficient to overcome the strong federal policy in favor of arbitration." | Where the plaintiff affirmatively pleads that the contract and the arbitration agreement included therein were procured through fraud, the court should determine whether the arbitration clause was used to further the fraudulent scheme. 9 U.S.C.A. S 1 et seq. | Are assertions of fraud in a contract subject to arbitration? | 007306.docx | LEGALEASE-00131044-LEGALEASE-00131045 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 19332 | ATSA of California v. Cont'l Ins. Co., 702 F.2d 172 | 25T+143 | ATSA contends that Cairo waived its right to arbitration by refusing to nominate an arbitrator when ATSA first requested arbitration in December 1980. Cairo, on the other hand, contends that ATSA did not make a bona fide effort to invoke the arbitration clause. A dispute about a waiver of arbitration may properly be referred to the arbitrator. World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir.1965). Therefore, the court did not abuse its discretion when it referred the issue of waiver to arbitration. | A dispute about a waiver of arbitration may properly be referred to arbitrator. | Can a dispute regarding the waiver of arbitration be referred to arbitration? | 007395.docx | LEGALEASE-00131356-LEGALEASE-00131357 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 19933 | United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp., 531 F.3d 531 | 25T+143 | Although TriMas complains that the district court "ignored" critical evidence, we think the district court was correct to focus on the evidence TriMas offered was irrelevant to the question of arbitrability because it did not concern the interpretation of the arbitration clause itself. The scope of the arbitration clause is established by the text of the arbitration clause itself because there is no evidence that the parties modified that clause, the scope of arbitrability remains the same. One does not remove an issue from arbitration simply by changing the scope of the underlying agreement. The ultimate dispute between the parties concerns the applicability of the neutrality provisions of the TriMas Agreement to the Rieke plant. Because this dispute is covered by the plain language of the arbitration clause and by nothing else, it should be submitted to arbitration. | The scope of the arbitration clause is established by the text of the arbitration clause itself. | Does the text of an arbitration clause establish the scope of the arbitration clause? | 007441.docx | LEGALEASE-00131461-LEGALEASE-00131462 | Condensed, SA | 0.89 | 0 | 1 | | 1 | |
| 19934 | Whicher v. State, 511 N.E.2d 1262 | 67+10 | Whicher also argues the burglary was not a class B felony. Burglary "is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling..." Ind.Code 35-43-2-1 (Burns 1985 Repl.). Whicher states his companions were armed with a deadly weapon, but he was not carrying a weapon. Because he was not armed he claims the crime was not a class B felony. The information, however, indicates the State sought a class B felony conviction because it alleged Whicher broke into McMullen's dwelling. McMullen lived in the room and kept his personal belongings there. As this is a residence question that the room was McMullen's dwelling, the burglary is a class B felony. | What is a Class B felony burglary? | What is a Class B felony burglary? | Burglary - Memo 27 - _R.docx | ROSS-003300708-ROSS-003300709 | Condensed, SA, Sub 0.79 | | 0 | 1 | 1 | 1 | |
| 19935 | Cook v. Peacock, 154 S.W.2d 688 | 289+566 | The duties and responsibilities of a managing partner are in substance stated in Starr v. Martin, The.Civ.App, 37 S.W.2d 166, 180, as follows: "It is that of a trustee, and manage to keep a full and accurate account of every transaction which he for the partnership, and, if he fails to keep such account, all intendments shall be made against him, and, if he fails to keep accurate accounts, the party seeking against him on account, Where he has failed to keep accurate accounts, the burden rests upon him, as Managing partner, to show that he has performed his duty fairly, impartially, and honestly, and all doubts respecting particular items will ordinarily be resolved against him." 47 C.J. 1245. Under the circumstances, the facts of the burden of showing the application of firm assets to the payment of firm debts. Marcum's Administrator v. Marcum, 177 S.W. 461, 157 SW, 1100, and every reasonable presumption must be indulged against him. McKinney v. Musgrove, 213 Ala. 343, 84 So. 280. Doubt as to the validity of credits which the party claims must be resolved against him. Vinson v. Henry, No. 116 S.W. 328, Navarro v. Lamana (Tex.Civ.App.) 179 S.W. 922. [The duty of a partner in context of such business is analogous to that of a trustee. Raymond v. Vaughn, 128 Ill. 256, 21 N.E. 566, 4 L.R.A. 440, 15 Am.St.Rep. 112." | The duty of a partner in context of partnership business is analogous to that of a trustee. | Are the duties of a managing partner analogous to a trustee? | Partnership - Memo 307 - SB.docx | ROSS-003287569-ROSS-003287570 | SA, Sub | 0.93 | 0 | | | 1 | |
| 19936 | Comm. On Children's Television, Gen. Foods Corp., 35 Cal.3d 197 | 184+41 | The specificity requirement serves two purposes. The first is notice to the defendant so the defendant can prepare a defense to the charge which can be intelligently met, and the second to weed out non-meritorious actions on basis of probability, and thus The pleadings should be sufficient to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud. In order to secure these ends the court can weed out non-meritorious action on the basis of pleadings alone. Thus the pleading should be sufficient "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." Scofield v. Tompkins (Ct.App.) 95 Cal.App.2d 550, 551 Cal.App.2d 650, and cases here cited. | Does the specificity requirement serve two purposes? | Does the specificity requirement serve two purposes? | 021036.docx | LEGALEASE-00131221-LEGALEASE-00131222 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | |
| 19937 | St. Bernard Trappey' Ass'n v. Michel, 162 La. 366 | 307A+501 | Moreover, the dismissal of the principal suit would carry with it the dismissal of the intervention, interposing to the same result as if the action had been maintained throughout. Current E. Co. v. Winn L. Co., Inc. Wafsfield, 24 La. Ann. 258, Barron v. Jacobs, 38 La. Ann. 370, Meyers & Co. v. Birotte, 41 La. Ann. 745, 6 So. 607, Successions Mayer, 49 La. Ann. 273, 21 So. 262. | Dismissal of principal suit carries dismissal of intervention | Does the dismissal of the principal suit carry a dismissal of intervention? | Pretrial Procedure - Memo 4 668 - C - KG.docx | ROSS-002909751-ROSS-002909752 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | |
| 19938 | Chazen v. Jones Schmitz, 906 N.E.2d 286 | 307A+749.1 | Indiana appellate rules are specifically designed to surprise and a trial by ambush. "Outback Steakhouse of Florida, Inc. v. Markley, 856 N.E.2d 65, 76 (Ind.2006). A pretrial order is "not 'treat the issue for trial to those not disposed of by admission, agreement or counsel and in such order when entered shall control the subsequent course of action, unless modified thereafter to prevent manifest injustice." Ind. Trial Rule 16(J). The law is well settled that a pretrial order shall control the proceedings once it is entered. Doughty v. Doughty, 906 N.E.2d 280, 288 (Ind.Ct.App.2009, trans. denied) (2009). "In deciding whether a particular modification from a pretrial order, 'the trial court considers both the danger of surprise or injustice to the opposing party and the goal of doing justice to the merits of the claim.'" (quoting Study v. Study, 629 N.E.2d 871, 875 (Ind.Ct.App.1994), trans. denied). | A general order controls the proceeding once it is entered. | Will a partial order control the proceeding once it is entered? | Pretrial Procedure - Memo 4 750 - C - NE.docx | ROSS-003286329-ROSS-003286327 | SA, Sub | 0.93 | 0 | | | 1 | |

| | | | | | | | | | | Multiple Differences | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | | | Selection & Arrangement | Substantive Additions | Condensed | Order |
| | | | | | | | | | | 9,029 | 21,876 | 14,873 | 15,944 | 839 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 19939 | Parks v. Breedlove, 241 Ga. App. 72 | 307A+750 | The Parkses contend Breedlove waived his right to seek litigation expenses but first because of a failure to include a request for fees and expenses on that basis in the pretrial order. A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. An issue is waived if not included in the pretrial order. Nonetheless, a pretrial order "should be liberally construed to allow the consideration of all questions fairly within the period of the contested issues." Breedlove preserved the issue of litigation expenses by requesting attorney fees in his pleading. | An issue is waived if not included in the pretrial order. | Is an issue waived if not included in the pretrial order? | 020895.docx | LEGALEASE-00131262-LEGALEASE-00131263 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | 1 |
| 19940 | Ullman v. Hartford Fire Ins. Co., 87 N.J. Super. 409 | 307A+331 | The average taxpayer is sensitive about his return and wishes to keep it from unauthorized prying. If disclosure of returns is to be ordered the court must find that it cannot accomplish its purpose otherwise... | If disclosure will not serve a substantial purpose it should not be ordered at all, and if ordered, disclosure should be no greater than justice requires. R.R. 4:24-1. | Should a disclosure be ordered if it does not serve a substantial purpose? | Pretrial Procedure - Memo # 2166 - C - TM.docx | LEGALEASE-00021014-LEGALEASE-00021015 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | 1 |
| 19941 | Free Speech v. City of Philadelphia, 884 A.2d 966 | 371+2001 | The primary purpose of taxes is always to raise money for the taxing authority. | The primary purpose of taxes is always to raise money for the taxing authority. | What is the primary purpose of imposing a tax? | Taxation - Memo # 119 - C - CK.docx | ROSS-003287307-ROSS-003287699 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | 1 |
| 19942 | Citizens' Util. Ratepayer Bd. v. State Corp. Comm'n of State of Kan., 264 Kan. 363 | 371+2001 | SWBT argues that "[n]ot all demands for money made by a governmental body are taxes." ... Primary purpose of a tax is to raise money, not regulation; such a demand is only a tax if it is a forced contribution to raise revenue for the maintenance of government services offered to the general public. | Primary purpose of a tax is to raise money, not regulation; such a demand is only a tax if it is a forced contribution to raise revenue for the maintenance of government services offered to the general public. | Is regulation the primary purpose of a tax? | Taxation - Memo # 195 - C - CK.docx | ROSS-003328010-ROSS-003328021 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | 1 |
| 19943 | State by Kobayashi v. Zimring, 58 Haw. 106 | 313+3 | Tax maps treatment of the lava extension created in the 1887 lava flow, relied upon by the trial court to determine usage, indicates only what the tax department assumed about ownership of land. A usage must be based on actual practice... | A usage must be based on actual practice. | Must a usage be based on actual practice? | 014328.docx | LEGALEASE-00192427-LEGALEASE-00192428 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | 1 |
| 19944 | Duckoff v. Vuchae, 470 P.2d 634 | 307A+481.1 | While plaintiff defendant did not state a claim for relief, since the claimed fraud was not specifically set forth, we feel that this was cured by the pretrial order, which governs the conduct of trial. The pretrial order governs the conduct of the trial. R.C.P. Colo. 16. Genelman (Sprinkler Corporation v. Forsberg, Colo., 461 P.2d 22. | Pretrial order governs conduct of trial. Federal Rules of Civil Procedure, rule 16. | Does a pretrial order govern a conduct of trial? | Pretrial Procedure - Memo # 2410 - C - ES.docx | ROSS-003501514-ROSS-003501514 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | 1 |
| 19945 | Ex parte Coffee Cty. Comm'n, 583 So. 2d 985 | 371+2001 | Whether a tax is general or special depends on the purpose for which it is levied or assessed. Special tax is not synonymous with "local tax" or "special purpose" or which we "repeat[ed] in addition to the general levy." 71 Am.Jur.2d State and Local Taxation § 21 (1973)... | Whether tax is "general tax" or "special tax" depends on purpose for which tax is levied or assessed. | What are special taxes? | Taxation - Memo # 136 - C - BW.docx | ROSS-003002259-ROSS-003002260 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19546 | Brown [Prohibition Head] Island v. Morris, 154 S.C. 10 | 371+2001 | Appellants contend *P*7 that under P of article II of our State constitution which provides that "[p]roperty tax laws shall be uniform" since the State does not control the amount of the transfer fee imposed. A statute levies a tax when it levies the amount or rate to be imposed. Myers v. Peterson, 315 S.C. 246, 433 S.E.2d 841 (1993). Section 6-*P*70 levies no tax and therefore does not violate art. X, *6. | Appellants contend *P*7 that under P of article II of our State constitution which provides that "[p]roperty tax laws shall be uniform" since the State does not control the amount of the transfer fee imposed. A statute levies a tax when it levies the amount or rate to be imposed. Myers v. Peterson, 315 S.C. 246, 433 S.E.2d 841 (1993). Section 6-*P*70 levies no tax and therefore does not violate art. X, *6. | When does a statute levy a tax? | 043846.docx | LEGALEASE-00131636-LEGALEASE-00131637 | SA, Sub | 0.85 | 0 | | 1 | 1 | |
| 19547 | Huntington Pub. Co. v. Cary, 180 W. Va. 486 | 371+2001 | The entire relationship between the appellee and its carriers centers in subscriber satisfaction. In a normal wholesale/purchaser relationship, the wholesaler concentrates its sales efforts on its retailers or purchasers ... the taxpayer's transactions are controlling for the purposes of the business and occupation tax. Syllabus Pt. 1, H.O. Anderson, Inc. v. Rose, 177 W.Va. 419, 353 S.E.2d 146 (1986). | The entire relationship between the appellee and its carriers centers in subscriber satisfaction. In a normal wholesale/purchaser relationship, the wholesaler concentrates its sales efforts on its retailers or purchasers ... of a transaction that determines tax liability. As we have stated previously, the actual rights and duties established by the terms of the taxpayer's transactions are controlling for the purposes of the business and occupation tax. Syllabus Pt. 1, H.O. Anderson, Inc. v. Rose, 177 W.Va. 419, 353 S.E.2d 146 (1986). | What determines a tax liability? | Taxation - Memo # 265-C - SU.docx | ROSS-003300258-ROSS-003300259 | SA, Sub | 0.91 | 0 | | 1 | | |
| 19548 | O'Donnell v. Koeritz, 144 Wis. 2d 717 | 371+2001 | A tax is an exaction, usually of money, by the government to support the government. State ex rel. Bldg. Owners v. Adamany, 64 Wis.2d 280, 289, 219 N.W.2d 274, 279 (1974). Whether a ... is a question of law. We decide a question of law without deference to the trial court's opinion. Kroeger v. Kroeger, 120 Wis.2d 48, 62, 353 N.W.2d 60 (Ct.App.1984). | A tax is an exaction, usually of money, by the government to support the government. State ex rel. Bldg. Owners v. Adamany, 64 Wis.2d 280, 289, 219 N.W.2d 274, 279 (1974). Whether ... statute is a question of law. We decide a question of law without deference to the trial court's opinion. Kroeger v. Kroeger, 120 Wis.2d 48, 62, 353 N.W.2d 60 (Ct.App.1984). | Is tax usually an exaction of money? | 044892.docx | LEGALEASE-00131764-LEGALEASE-00131765 | SA, Sub | 0.73 | 0 | | 1 | | |
| 19549 | Blanchard v. Blanchard, 261 Ga. 11 | 371+2001 | Tax law is statutory and equitable considerations are inapplicable. Reece v. United States, 24 F.2d 5, 122 (7th Cir.1928), aff'd 279 U.S. 388, 49 S.Ct. 335, 73 L.Ed. 762 (1929). As further stated in Fears, supra at 1226 ... | Tax law is statutory and equitable considerations are inapplicable. Reece v. United States, 24 F.2d 5, 122 (7th Cir.1928), aff'd 279 U.S. 388, 49 S.Ct. 335, 73 L.Ed. 762 (1929). As further stated in Fears, supra at 1226 ... Congress, and the Courts cannot use broad powers to frustrate the intent of the specific statutory language. It would not be frustrated by state courts' attempts to use equitable powers to tax the income of the custodial parent. | Are equitable considerations inapplicable under tax law? | 043924.docx | LEGALEASE-00131967-LEGALEASE-00131968 | SA, Sub | 0.89 | 0 | | 1 | | |
| 19550 | Glidden v. Szybiak, 95 N.H. 318 | 386+7 | One who without consent and other privilege to do so, uses or otherwise intentionally meddles with a chattel in possession of another is liable to such person for a "trespass" if chattel is impaired to its condition, quality or value; a possessor is deprived of its use for a substantial time or bodily harm is thereby caused its possessor or some person or thing in which possessor has a legally protected interest. | One who without consent and other privilege to do so, uses or otherwise intentionally meddles with a chattel in possession of another is liable to such person for a "trespass" if chattel is impaired to its condition, quality or value; a possessor is deprived of its use for a substantial time or bodily harm is thereby caused its possessor or some person or thing in which possessor has a legally protected interest. | Can harm be intermeddling with chattel be actionable as a trespass to chattel? | 047303.docx | LEGALEASE-00132491-LEGALEASE-00132492 | SA, Sub | 0.68 | 0 | | 1 | | |
| 19551 | In re America West Airlines, 40 F.3d 1058 | 46H+86 | In United States v. Reeves, however, we allowed a non-attorney partner to represent his interest in a partnership pursuant to Alaskan partnership statute. 431 F.2d 1187, 1188 (9th Cir. 1970). The Supreme Court in Rowland v. California Men's Colony recently criticized our holding in Reeves and observed that "save in a few aberrant cases including Reeves), the lower courts have uniformly held that 28 U.S.C. *1654, providing that '[p]arties may plead and conduct their own case personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." 506 U.S. 194, ***, 113 S.Ct. 716, 721, 121 L.Ed.2d 656 (1993) (footnote omitted and emphasis added). Thus, to the extent that Reeves stood for the proposition that a non-attorney members of a partnership could appear on behalf of the partnership, the Supreme Court in California Men's Colony has overruled that holding. See 506 U.S. at ***, 113 S.Ct. at 721. | Nonattorney members of partnership cannot appear in court on behalf of partnership. 28 U.S.C.A. § 1654. | Can a non-attorney member of a partnership appear in court on behalf of the partnership? | 022077.docx | LEGALEASE-00131474-LEGALEASE-00131475 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | |
| 19552 | Morrison v. Coombs, 23 F. Supp. 852 | 308+150(1) | Each one of the partners is liable for any negligence of the other while carrying on the partnership business. This rests, of course, on the theory of agency, the rule being thus stated in Stockwell v. United States, 13 Wall. 531, 543, 20 L.Ed. 491. It rests upon the theory that each member of the partnership constitutes all its members agents for each other, and that when a stop, one partner has command of the loss of two innocent persons he must bear it who has been the occasion of the loss or has enabled a third person to commit it. | Each member of a partnership is liable for any negligence of the other while carrying on the partnership business. | Is the entire partnership liable for the negligence of one partner committed while carrying on the partnership business? | Partnership - Memo 245 - RK.docx | ROSS-003301862-ROSS-003301863 | SA, Sub | 0.78 | 0 | | 1 | | |
| 19553 | Wroblewski v. Brucher, 550 F. Supp. 742 | 289+117R(1) | But again, the contrast provisions merely fulfill the intent of the statute. The Uniform Limited Partnership Act, "26, Cal.Corp.Code * 15526, provides in pertinent part: A limited partner is liable ... corporation. In this case, the plaintiff has not sued a limited partner and its right to sue partnership to enforce its rights against it, or by analogy to corporate law and application of general equitable principles, would have a right to intervene or the derivative suit in event of hostile collusion. West's Ann.Cal.Corp.Code §§ 15526, 15529. | Limited partner in California limited partnership, either by virtue of his right to sue partnership to enforce its rights against it, or by analogy to corporate law and application of general equitable principles, would have right to intervene or file derivative suit in event of hostile collusion. West's Ann.Cal.Corp.Code §§ 15526, 15529. | Is a limited partner a proper party to proceedings by or against the partnership? | Partnership - Memo 269 - RK.docx | ROSS-003291625-ROSS-003291624 | Condensed, SA, Sub | 0.15 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19354 | Turnbow v. Lamb, 95 F.2d 29 | 260+99(2) | These parties, however, were copartners and owned the oil in common at the time of the illegal production and sale. In this respect, this case vitally differs from Sharp v. Beacon Oil & Refining Co., Tex. Civ. App., 108 S.W.2d 870, strongly relied upon by cross-appellants, which holds that a royalty owner may recover on a basis of market value of legal oil against a lessee who produces and converts excess oil. Here, production and sale of the excess oil "was not the conversion of another's goods. Each partner equally owned all the oil, and had the right to sell it and receive the money, because the business of the partnership * * * included the producing and selling of oil. The selling partner did no wrong in selling, but must account to the partnership for what he received." Harris v. Gurley, 8 Cir., 80 F.2d 744, 748. A measure of recovery based upon wrongful conversion is therefore inapposite. The evidence shows that the full allowable quantity of oil was produced and accounted for. Whether or not the ultimate recovery of lawful oil from the lease will be diminished by reason of the present excess production is purely conjectural. Oil in place is capable of ownership, but ownership is qualified by the right of capture by adjoining landowners, so that it remains uncertain whether or not the excess oil in question would have been ultimately available for future production in quantities allowed by the proration regulations. | A corporate partner which produced oil in excess of amount allowed by Texas law without consent of copartners operating mineral lease, though it had right to sell, was required to account to copartners for what it received and was not liable to them only for depletion of leasehold value, since fact that, as between state and producer, excess oil is subject to forfeiture did not relieve partner of its duty to account to innocent copartners for what it received. Vernon's Ann.Civ.St.Tex. art. 6049c, S 13. | Does each partner have the right to sell the products produced by partnership? | Partnership - Memo 286 - RK.docx | LEGALEASE-00022571-LEGALEASE-00022572 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 19355 | White v. Trowbridge, 216 Pa. 11 | 192+1 | Counsel for appellants have here advanced the proposition that, by the mere transfer of his interest in the good will of the business, the defendant was precluded from entering into a similar business in the same town, and prosecuting it in competition with the old firm, of which he had been a member. The position is wholly untenable. "Good will" has been defined by Judge Cooley as the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage. Chittenden v. Witbeck, 50 Mich. 401, 15 N. W. 526. And Lord Eldon, in Cruttwell v. Lye, 17 Ves. Jr. 335, spoke of it as "simply the probability that old customers will resort to the old place." There is a very ample discussion of this question by the Supreme Court of Michigan, and a full citation of the authorities bearing on the point in Williams v. Farrand, reported in 50 N. W. 446, 14 L. R. A. 161. It is there said: "The doctrine that a retiring partner who has conveyed his interest in an established business, whether the good will be included or not, cannot personally solicit the old customers of the firm, has no support in principle. A retiring partner conveys, in addition to his interest in the tangible effects, simply the advantage that an established business possesses over a new enterprise | "Good will" is the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage. | What is defined as the goodwill of a partnership? | 022155.docx | LEGALEASE-00133557-LEGALEASE-00133558 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 19356 | Vance v. Huff, 568 So.2d 745 | 289+421 | For the purposes of determining the propriety of the summary judgments, this Court concludes that Vance presented substantial evidence that a partnership was formed, albeit an informal one. The parties agreed to pursue the common goal of developing an outlet center, agreed to share profits, and shared management responsibilities. There is no settled test for determining the existence of a partnership. That determination is made by reviewing all the attendant circumstances, including the right to manage and control the business. Ala.Code 1975, " 10"8"20; McCrary v. Butler, 540 So.2d 736 (Ala.1989). | There is no settled test for determining existence of partnership, but rather, that determination is made by reviewing all attendant circumstances, including right to manage and control business. Code 1975, S 10-8-20. | Is there a settled test for determining the existence of a partnership? | 022177.docx | LEGALEASE-00133578-LEGALEASE-00133579 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 19357 | Meyer Koulish Co. v. Cannon, 213 Cal. App. 2d 419 | 307A+749.1 | Defendants admit, in the "matters of fact agreed upon" as set forth in the Pre-Trial Conference Order, that the value of the jewelry which was not paid for or returned was $6,685.16. Defendants admit, and it is well settled law, that the pre-trial order will control inconsistent pleadings. (California Rules of Court, Rule 216; Baird v. Hodson, 161 Cal.App.2d 687, 327 P.2d 215.) The fact that the pre-trial order was supplemented so as to include a "contention" that six items of jewelry, with a value of $1,460, had been returned would not change or affect the "agreed value" of the jewelry not returned; with reference to the "contentions' as distinguished from "matters of fact agreed upon," the matters of fact agreed upon would control. | Pre-trial order will control inconsistent pleadings. Cal. Rules of Court, rule 216. | Will a pre-trial order control inconsistent pleadings? | 027969.docx | LEGALEASE-00133002-LEGALEASE-00133003 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 19358 | Allstate Prop. v. Ploutis, 290 Va. 226 | 307A+517.1 | The circuit court overruled the demurrer on the grounds that the limitations period was tolled pursuant to Code " 8.01"229(E)(3), which tolls "the statute of limitations" with respect to nonsuited actions. The circuit court reasoned that because the language regarding the limitations period in Allstate's policy was "substantively" the same as that included in the Virginia standard policy form, the limitations period was "the Virginia statute of limitations," and therefore subject to tolling. | An action filed in relation to a nonsuit is a new action that stands independently of any prior nonsuited action. | Is an action filed in relation to a nonsuit a new action that stands independently of any prior nonsuited action? | Pretrial Procedure - Memo # 2820 - C - SB.docx | ROSS-003300183-ROSS-003300184 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 19359 | Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108 | 413+8 | Yet, in the ascertainment of the quantum of compensable disability suffered by the employee in the instant case, an allowance for disfigurement, in addition to the strictly functional loss ensuing from the scars, is within both the letter and spirit of the statute. The legislative object was to afford compensation for "disability" resulting from "personal injuries' bearing the statutory relation to the employment. Sigley v. Marathon Razor Blade Co., 111 N.J.Law 25, 166 A. 518. Disability, actual or presumed, is the test of the employer's obligation to make compensation. Here the injured workman concededly suffered an accident in the statutory sense; and it is undeniable that it resulted in "personal injury," of which the disfigurement is an essential part. The extent of the disability flowing from the injury thus sustained cannot be gauged without taking into account the consequent disfigurement. It is just as much a "personal injury" as the impairment of physical function ensuing from the scars, and, to the extent that disability flows therefrom, it is compensable. | Disability, actual or presumed is the test of the employer's obligation to make compensation. N.J.S.A. 34:15-12. | What does the term disability mean or imply in the context of workers compensation? | Workers Compensation - Memo #249 ANC.docx | ROSS-003288613-ROSS-003288614 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 19940 | Farmer v. Tr. Co. v. Schmoll, 83 Ill. App. 247 | 83 E+406 | A guaranty of a note operates also as an assignment of the legal title. A guaranty of a negotiable note passes with the assignment the legal title, and inures to the benefit of any subsequent taker. Webster v. Cobb, 17 Ill. 459; Brandt on Suretyship, Sec. 47; and citations, 2 Daniel on Neg. Inst., 1788, 1838; Lyttton v. Godwin, 97 Ill. 285. | Under statute, transfer of a note by an assignment with guaranty of collection and payment upon the identical paper containing the note, passed title to the legal holder. S.H.A. ch. 98, § 2. | Does a guaranty of a note operate as an assignment of the legal title? | 011004.docx | LEGALEASE-00131979-LEGALEASE-00131980 | SA, Sub | 0.42 | 0 | 1 | 1 | 1 | |
| 19941 | Gen. Dynamics Corp. v. City of Groton, 184 Conn. 483 | 20D+73.1 | Although the city charter gives to the mayor and council exclusive authority and control over all streets and highways within the city limits, Eastern Point Road had been laid by the decree of the Superior Court for New London County on May 17, 1869. Under General Statutes §§ 13a-48 and 13a-50, judicial approval was therefore required to discontinue Eastern Point Road, because the municipality is not permitted to discontinue a highway laid out by a court. | Even though highway as originally laid out by court was #911212 feet wide and at time of discontinuance was 60 feet wide, where party, working discontinuance of road, as abutting landowner on both sides of road, was presumed to own fee to road, and city had acquiesced in discontinuance, trial court had jurisdiction to entertain public easement in road. C.G.S.A. § 13a-50. | Is municipality permitted to discontinue a highway laid out by a court? | 019312.docx | LEGALEASE-00131764-LEGALEASE-00131765 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | |
| 19942 | Kornfeld v. NRX Techs., 93 A.D.2d 772 | 83 30E+74 | Neither is the character of the notes altered as a result of another provision affording to plaintiffs the right to convert the notes into common stock at any time prior to due date. This does not materially alter the nature of the instruments and they remain instruments for the payment of money only (see Bank of America v. Hartsfield, [cites]). A prima facie case has been made by proof of the notes and the failure to make payments in accordance with their terms (Seaman- Andwall Corp. v. Wright Mach., [cites]). A note which is payable at a fixed date, but which by its terms may become due at an earlier date upon default in the payment of the interest, or upon failure to pay any installment of the principal or interest, is negotiable... | Provision affording to plaintiff's right to convert notes into common stock at any time prior to due date did not materially alter nature of instruments, which remained instruments for payment of money only. | Does acceleration provision change the nature of the instrument? | Bits and Notes - Memo 235 - VP.docx | ROSS-003229297+ROSS-003250294 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 19943 | Second Nat. Bank v. Martin, 82 Iowa 662 | 83 E+435 | But, in our opinion, the signature of the indorsement is sufficient as it appears in this though it well meant this plain. The name of the corporation that signs it. It is the corporation that does the act by the officer, for it has not hands, and cannot write. When the name is found written upon the note, it is known that it is intended as the indorsement in blank. If that name be written there by an officer having authority... the corporation is bound by it. | An indorsement of a note by a corporation, which consists only of the name of the corporation in writing on the back of the instrument, is sufficient, and is valid, although the name of the officer making it is not appended. | Is the name of the corporation written on the back of the instrument the signature of the indorser made by an officer of the corporation? | 009482.docx | LEGALEASE-00134657-LEGALEASE-00134658 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | |
| 19944 | Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992 | 371+2001 | To begin with, under Florida law there are two kinds of taxes: direct and indirect. City of Deland v. Florida Public Service Comm'n, 119 Fla. 804, 161 So. 731, 733 (1935). Direct taxes are ad valorem taxes. Id. The so-called indirect tax is the property subject to taxation. Fla.Stat. § 192.001. Indirect taxes are excise or occupational taxes: taxes imposed upon the consumption or sale of commodities within the state, upon the licensed right or privilege to pursue certain occupations, and upon corporate franchise and the privileges. City of Deland, 161 So. at 733; City of Tampa v. Palmer, 89 Fla. 514 (1925), 105 So. 115; Amos v. Gunn, 84 Fla. 285, 94 So. 615. There is no question that the production of electrical energy subject to taxation is property and not subject to taxation in the form of an excise tax. City of Deland v. Florida Public Service Comm'n... | Under Florida law, there are two kinds of taxes, direct and indirect; "direct taxes" are ad valorem taxes based on assessed value of property subject to taxation and "indirect taxes," are excise or occupational taxes such as taxes imposed on the manufacture, sale or consumption of commodities within the state or upon license to pursue franchises and privileges. West's F.S.A. § 192.001. | Are taxes either direct or indirect? | 043070.docx | LEGALEASE-00134455-LEGALEASE-00134466 | SA, Sub | 0.58 | 0 | 1 | 1 | 1 | |
| 19945 | City of De Land v. Florida Pub. Serv. Co., 119 Fla. 804 | 218+1 | A tax is an indirect tax upon the manufacture, sale, or consumption of commodities (most frequently upon the retail sale) within the state, or upon the license to pursue certain occupations or upon corporate franchises or privileges. Gaston v. Hunter, 2 Ariz. 33, 377 (Hawk'n's Pleas Revision, p. 1305). The difference between an ad valorem property tax and an excise or occupational tax is principally on the fact that the one is direct and the other is indirect. All taxes, other than polls, are either direct or indirect property taxes. A direct tax is one that is imposed directly upon property, according to its value. It is generally spoken of as a property tax or an ad valorem tax. An indirect tax is a tax upon some right or privilege or corporate franchise, and is most often called and excise or occupational tax. | "Excise" tax is tax upon manufacture, sale, or consumption of commodities within state or upon license to pursue certain occupations or upon corporate privileges. | Is an "indirect tax" also upon some right or privilege or corporate franchise? | 043086.docx | LEGALEASE-00134001-LEGALEASE-00134002 | SA, Sub | 0.8 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19966 | S. Dakota v. Dole, 483 U.S. 31,- 203 | 92=2535 | The Constitution empowers Congress to "lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the ... general welfare of the United States." Art. I, § 8, cl. 1. ... | In considering whether particular expenditure is intended to serve general public purposes so as to be within Congress' spending power, courts should defer substantially to judgment of Congress. U.S.C.A. Const. Art. 1, § 8, cl. 1. | Is the power of Congress to authorize expenditure of public money for public purposes limited by the direct grants of legislative power found in the Constitution? | Taxation - Memo # 447 - C - 55.docx | LEGALEASE 00326276- LEGALEASE 00326478 | SA, Sub | 0.86 | 0 | | 1 | | 1 |
| 19967 | Billiano v. Conoco Inc., 864 F. Supp. 571 | 241=1452(1) | Although neither executive, AAA OHfield's argument that payments to Billiano did not constitute an acknowledgement is wrong. Defendant correctly begins with the observation that prescription can occur only by an enforceable right ... | Under Louisiana law, oilfield service company, whose employee was injured while working on fixed platform, and contractor which performed work on platform were solidarily liable, so that acknowledgement of company as to its liability would prescribe ... | Do the periodic payments constitute separate obligations for an employer which is paying compensation? | Workers Compensation - Memo #269 A MC.docx | LEGALEASE 00326737- LEGALEASE 00326739 | Condensed, SA, Sub | 0.72 | | 1 | | 1 | 1 |
| 19968 | State v. Romero, 147 Wash. 2d 551 | 110=782(9) | Similarly, in State v. Emmund, 62 Wash.2d 799, 617, 729 P.2d 841 (1955), we found a jury instruction defining a prima facie element was essential element of the offense of bribery. We observed: " In instructing a jury as to the statutory definition of the crime with which a defendant stands charged, all of the pertinent elements contained in the statute should be set forth." Id. at 620, 257 P.2d 841 (quoting Klinger, 167 Wash. at 843, 707 P.2d 819). We concluded the provision that money should be influenced or reward. Id. at 819, 259 P.2d 845. | The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld, and if a jury instruction relieves the State of this burden, it is reversible error. | Do jury instructions need to contain all essential elements of the offense charged? | 011545.docx | LEGALEASE 00335392- LEGALEASE 00335393 | SA, Sub | 0.62 | | 1 | 1 | | 1 |
| 19969 | United States v. Bahel, 662 F.3d 610 | 63=11() | Although Congress amended Section 666 in 1986, those amendments had no effect on the statute's applicability to illegal gratuities, and we have therefore continued to hold that Section 666 covers agents by illegal gratuities as well as bribes. See United States v. Bonito, 57 F.3d 167, 174 (2d Cir.1995). ... | United Nations Participation Act, which authorized payment of United States' dues to United Nations, was "benefit" within meaning of statute that prohibited theft of money from funds, which included federal program that provided benefits, insofar as United Nations Participation Act of 1945, § 2, 22 U.S.C.A. § 287e. | Does Section 666 of the bribery statute apply to both gratuities and bribes? | 011571.docx | LEGALEASE 00135386- LEGALEASE 00135387 | Condensed, SA, Sub | 0.54 | 0 | 1 | | | 1 |

Appendix D

3412

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19370 | United States v. Bahel, 662 F.3d 610 | 221H48 | In United States v. Nguyen, 373 B.3d 857 [2d Cir.1994], we considered the meaning of the term "corrupt" as used in Section 666, concluding that "a fundamental component of a 'corrupt' act is a breach of some official duty owed to the government or the public at large." Id. at 833. We concluded that "[i]t is an obvious violation of duty and public trust for a public official or some other person responsible for parceling out government benefits to accept or demand a personal benefit intending to be improperly influenced in his official action." Id. at 833 [collecting cases]. Although Nguyen involved bribery, our analysis of Section 666 in that case, coupled with the plain language and what we referred to as the "conscious breadth" of that section, id. at 812, make clear that, in the case of a gratuity, the corrupt intent required under Section 666 refers to an individual's state of mind at the time the payment is received (i.e., it refers to an individual's state of mind at the time the payment is received "Section 666 makes it illegal, inter alia, to corruptly ... accept ... anything of value from any person, intending to be ... rewarded in connection with any business, transaction, or series of transactions of such organization." 18 U.S.C. § 666(a)(1)(B) (emphasis added). Accordingly, we find no error in the district court's instructions to the jury that in the absence of bribery, the jury could convict Bahel under Section 666 based on an illegal gratuity theory, and because we conclude that Section 666 covers illegal gratuities, we also find no error in charges in the indictment relating to Section 666 insofar as they were premised on a gratuity theory of liability. | International Organizations Immunities Act (IOIA) governed right of Chief of Commodity Procurement Section within the United Nations' Procurement Division, as foreign national employee, to raise claim of immunity in prosecution for use of mail or wires in furtherance of fraud that deprived United Nations, his former employer, of its intangible right to his honest services; corrupt receipt of things of value with intent to be rewarded with respect to official business, and conspiracy. 18 U.S.C.A. SS 371, 666, 1341, 1343, 1346; International Organizations Immunities Act, S 5 et seq., 22 U.S.C.A. S 288 et seq. | What is the fundamental component of a corrupt act as prohibited by bribery statute? | 011576.docx | LEGALEASE-00135155-LEGALEASE-00135156 | Condensed, SA, Sub | 0.62 | 0 | | | 1 | 1 |
| 19371 | Scaccia v. State Ethics Comm'n, 431 Mass. 351 | 316P485 | In light of our Diamond, it is necessary to establish a link between a gratuity and an official act. We therefore must give content to the "for or because of any official act" portion of the statute. Chapter 268A is a comprehensive measure designed to prevent the improper use of influence or position for private gain. See Commonwealth v. Canon, 373 Mass. 494, 501, 368 N.E.2d 1181 [1977]; cert. denied, 435 U.S. 933, 98 S.Ct. 1510, 55 L.Ed.2d 531 [1978] [Liacos, J., dissenting]. A gratuity violation is, in essence, a lesser included offense of bribery. Under G.L. c. 268A, "2 [a ] and "2 [b], bribery requires proof of "corrupt intent," an element missing from the gratuity statute. Commonwealth v. Dutney, 4 Mass.App.Ct. 363, 369, 348 N.E.2d 812 [1976]. Bribery also typically involves quid pro quo, whereby the giver corruptly intends to influence an official act through a "gift," and that "gift" motivates an official to perform an act that otherwise would not have been performed. In contrast, can either be provided to an official as a reward for past action, or to influence an official regarding a present action, or to induce an official to undertake a future action. See United States v. Schaffer, 183 F.3d 833, 841'842 [D.C.Cir.1999]. Only a one-way nexus need be established for a gratuity violation. | To establish a violation of gratuity statute, there must be proof of linkage to a particular official act. Act therefore must give content to the "for or because of any official act" portion of the statute. Chapter 268A is a position to take any undefined or generalized action, such as holding a hearing on proposed legislation that, if passed, could benefit the giver of the gratuity. M.G.L.A. c.268A, S 3(b). | "Can a gratuity in violation of a statute be provided for a past, present or future action?" | Bribery - Memo #380 - C - ROSS-003503984-ROSS-003503987 | ROSS-003503984-ROSS-003503987 | SA, Sub | 0.75 | 0 | | 1 | 1 | |
| 19372 | Ater v. McClure, 329 Ill. 519 | 302H0361 | From the averments of the bill the inference seems to be that, because she did not do sooner, in some way or manner his will is affected as a matter of course. Certainly the cause cannot be ascribed to the alleged expectation of life after, or even before, the will was executed, has any semblance of undue influence rendering the will invalid. If McClure in fact had such expectation of that survival, and operated on his death when he was making the will, there is no element of undue influence, within the provisions, as indicated, of property to be given another and withhold it from natural objects of property, always imply the survival of that legatees entitled to such property and devisees beyond the death of the testator. More important to the mind sought by the bill are the averments of this intended marriage, his intended travel in Western States, and his worldly possessions. Lack of is not so to the occasions. The will tried on conjecture. If facts, as bases for determining rights, are stated, they must have a reasonable basis to the inferences to be tried. The statement of facts in the bill could have had no influence upon the mind of the testator when engaged in the business of making his will. If not operating the mind, then directing that it is validly Unless the bill or so afford a basis for contesting the will on the ground of undue influence. As to the the undue pronounced avows the bill cannot properly evidence of. To constitute undue influence by a Williman, 187 Ill. 375, secured through affection is not undue influence of Francis v. Williman, 187 Ill. 375, 376, (1 Ill. 595, to influence secured through kindness or care valid, however to the second it is in illustrated of the gravity (Blackhurst v. James, 304 Ill. 586, 136 N. E. 754). It is not sufficient to aver undue influence as a conclusion. Facts must be stated warranting the conclusion, and go to the extent of showing that thereby the testator was deprived of | In well context, it is not sufficient to aver undue influence as a conclusion? | 02318.docx | LEGALEASE-00135622-LEGALEASE-00135623 | SA, Sub | 0.96 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19373 | JJM Trucking v. Caterpillar Fin. Servs. Corp., 295 Ga. App. 560 | 307A+486 | Pursuant to OCGA " 9-11-36, a party may serve upon another party a written request for the admission of the truth of any matter that is not privileged and is relevant to the pending action, including a request to admit the genuineness of any documents described therein Where, as here, the request is served with the summons and complaint, the defendant must serve a written answer or objection thereto within 45 days, or else the matter is deemed admitted. "The language in OCGA " 9-11-36(a) is clear, unambiguous, and unequivocal and means just what it says. One must comply strictly and literally with the terms of the statute upon the peril of having his response construed to be an admission." Any fact thus admitted is conclusively established unless the court permits the affected party to withdraw or amend the admission.[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.An amendment to the answer does not constitute a withdrawal of an admission, however. | An amendment to the answer does not constitute a withdrawal of an admission. | Does an amendment to the answer constitute a withdrawal of an admission? | 028765.docx | LEGALEASE-00135020-LEGALEASE-00135021 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19374 | Commercial Standard Ins. Co. v. E.P. McKnight Chevrolet Co., 43 S.W.2d 636 | 307A+716 | On the showing made, we do not believe the trial court erred in overruling the motion for continuance. The general rule is that the appellate court must presume that an application for a continuance was properly overruled. Railway Co. v. Crowder, 25 Tex. Civ. App. 536, 64 S. W. 90. The absence of a party's leading counsel "does not give to him an absolute right to a continuance." The rule is that ordinarily a continuance based upon this ground should not be granted. However, the issue is "confided to the discretion of the trial court." 9 Tex. Jur. p. 667. While a mistake of fact will, in some cases, entitle a party to a continuance for the absence of his leading counsel, yet, where the motion is based upon that ground, it is properly refused where counsel is not justified in supposing that the case will not be tried on the particular day for which it was set for trial, 13 C. J. 175. Now, in this case, under the testimony of counsel for appellant, a reasonable case was made justifying them in notifying Mr. Bondies that the case would not be tried, but the testimony of appellant's counsel was sharply controverted by the district judge himself. Under his statement, there was no justification for counsel in notifying Mr. Bondies not to be present. The court did not err in overruling the motion for continuance because of the absence of the witnesses, because, on the above statement, Mr. Bondies and appellant's local counsel were not justified in not having their witnesses present in court; also, it should be said that the materiality of the testimony of these witnesses was not sufficiently disclosed by the motion for continuance, and on motion for new trial no effort was made, by affidavit or otherwise, to show the nature of testimony of these witnesses. | Generally, application for continuance because of absence of party's leading counsel, though discretionary, should not be granted. | Should the absence of party's leading counsel gives to him an absolute right to a continuance? | Pretrial Procedure - Memo # 3474 - C - NS.docx | ROSS-003332097-ROSS-003332098 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 19375 | Young v. Smith, 67 So. 3d 732 | 307A+483 | In cases before and after DeBlanc v. Stancil, 814 So.2d 796 (Miss.2002), this Court has clearly stated that, in applying Rule 36, "discretion is vested in the trial judge with respect to whether he or she will take matters as admitted." Scoggins v. Baptist Mem'l Hosp.-DeSoto, 967 So.2d 646, 648 (Miss.2007) (quoting Earwood, 798 So.2d at 514). See also DeBlanc, 814 So.2d at 801 (quoting Earwood, 798 So.2d at 516) ("[m]echanisms exist whereby a trial court may hold an untimely response does not constitute a deemed admission because the trial court has broad discretion in pretrial matters. However, because of trial court's broad discretion in such matters, it certainly may also require that parties comply with the rules as stated.") (emphasis added). In cases involving unexplained, untimely responses, the appellate courts of this state unanimously have emphasized that Rule 36 "is to be enforced according to its terms." Educ. Placement Servs., 487 So.2d at 1318. | The rules of civil procedure provide a specific consequence for a party's failure to timely respond to a request for admission, the consequence being that those matters in the requests are deemed admitted. Rules Civ.Proc., Rule 36(a, b). | "In applying the civil procedure rule governing requests for admissions, is discretion vested in the trial judge with respect to whether he or she will take matters as admitted?" | Pretrial Procedure - Memo # 3560 - C - KG.docx | ROSS-003291699-ROSS-003291700 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 19376 | Columbia Gaslight Co. v. Mobley, 139 S.C. 107 | 371+2001 | It has all the attributes and passes all the tests of a "tax." It was "assessed" to raise revenue for a "public purpose"-the support of an agency of the administrative department of our government. It is part of the $39,889.38 appropriated by section 40 of the Appropriation Act of 1923 (33 Stat. 277). Any governmental charge imposed for the purpose of raising revenue is a tax regardless of the name by which it is called. State v. Columbia, 6 1; Teleg. Co. v. Winnsboro, 71 S. C. 231; 50 S. E. 870. The charge, irrespective of what it may be called, is "manifestly an excise tax, laid under the benefit theory of taxation upon the public service corporation named for the privilege of exercising their corporate franchise and carrying on their business within the state." Columbia Ry., Gas & Electric Co. v. Jones, 119 S. C. 480, 494, 112 S. E. 267, 272. The measure for the tax is the expense of the railroad commission prorated amongst the companies liable in proportion to their gross receipts. | Any governmental charge for raising revenue is a "tax." | Is any governmental charge for the purpose of raising revenue a tax? | Taxation - Memo # 467 - C - KBM.docx | ROSS-003303673-ROSS-003303674 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19377 | Gingras v. LLS, 346 F. Supp. 564 | 220n3395 | Plaintiffs' distinctions have some merit. In light of the estate income tax provisions [26 U.S.C. § 641 et seq.] and express language in both the House and Senate committee reports [H.R. Rep.No.1337, 83d Cong., 2d Sess. (1954), S. Rep.No.1622, 83d Cong., 2d Sess. (1954)] preceding passage of section 641, it seems very plain that a decedent's estate is a distinct taxable entity. See I.R.C. § 641, Codd. Reg. § 1.641. Nowhere does [26 U.S.C. * 11] indicate a corporation is a separate entity for tax purposes. In contrast, the entity status of a partnership is confused. Certainly, it is true that a partnership is not a taxpaying entity. The basic partnership income tax section [26 U.S.C. * 701] provides that: "A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." Thus, a partnership, unlike an estate or corporation, is not a taxable entity or "taxpayer" in the sense that it is liable for taxes. On the other hand, it is just as plain that a partnership, like corporations and decedent's estates, is a separate entity or "taxpayer" for income accounting and reporting purposes. See 26 U.S.C. § 701 (Definition v. Commissioner of Internal Revenue, 72 U.S.Tax Cas. § 9281 ¶, 3, 457 F.2d 1 [4th Cir. 1972] ("Congress intended that a partnership be treated as a taxpayer for purposes of computing and reporting income"). H.R.Rep.No.1337, 83d Cong., 2d Sess. (1954) (Federal Income Taxation 2.5.01 [1968] ("The Code recognizes that a partnership is a separate income tax reporting unit which is required to compute its own income distinct from that of the individual partners"). | Partnership is not a taxable entity or taxpayer in sense that it is liable for taxes but is separate entity or "taxpayer" for income accounting and reporting purposes. 26 U.S.C.A. (I.R.C.1954) §§ 701, 703. | Is a partnership a taxpaying entity? | Partnership-Memo 1340-15.docx | LEGALEASE 00200064-LEGALEASE-00200065 | Condensed, SA, Sub | 0.89 | | | 1 | 1 | 1 |
| 19378 | Wilson v. Texas Parks & Wildlife Dept I, 853 S.W.2d 825 | 307n483 | Finally, Plaintiffs contend that the trial court erred in withdrawing the deemed admissions of Water Management and the individuals, both of whom were initially named as defendants but were later non-suited. A deemed admission only applies against the party making the admission. See Tex.R.Civ.P. 169(1). When Plaintiffs non-suited Mangum and Quick on the day of trial, the issue became moot. The trial court committed no error in refusing to grant these deemed admissions. | Deemed admission only applies against party making the admission. Vernon's Ann.Texas Rules Civ.Proc., Rule 169, subd. 2. | Does a deemed admission only apply against the party making the admission? | 027783.docx | LEGALEASE-00196642-LEGALEASE-00196643 | SA, Sub | 0.75 | 0 | | 1 | | |
| 19379 | Harrison v. Harrison, 367 S.W.2d 822 | 134n145 | When the ground for a continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to her own fault or negligence. Villegas, 711 S.W.2d at 626. Because the right to counsel is a valuable right, its unwarranted denial is reversible error. [W]hen a trial court allows an attorney to withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." Id. | Most a movant show that the failure to be represented at the trial was not due to own fault or negligence when withdrawal of counsel is the ground for a continuance? | 029964.docx | LEGALEASE-00196254-LEGALEASE-00196255 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | |
| 19380 | Renstholmer v. Bush, 2 Pa, 88 | 307n713.1 | Evidence of set-off cannot be received, unless notice is given of the matter intended to be defalked. This rule not being in force in the county of Northampton, but has been adopted, with some variation, in every judicial district in this state. It is admitted that no notice was given, but it is contended that it is unnecessary because the same amount of money was offered at the trial, was given before the arbitrators, which is, as is said, equivalent to notice. But in Beyer v. consideration and another 2, Wharton, 95, it is declared by the court, that notice of set-off and other special matter must be given, although the evidence offered to establish the matter has been given in a former trial. There is no requirement that the court can prevent injustice by withdrawing a juror. And this is a power widely vested in the court; and, in my opinion, should be liberally exercised in that case, but the decision of the common pleas is, in accordance with the practice in that county, but on the other hand this is denied. It therefore qualifies ground in dealing with the set-off, and, unless, if he juridically as it said, that the decision of the common pleas be set aside, the sooner it is abolished the better. It is very desirable that there should be, as far as practicable, a uniformity of practice, in the several judicial districts. | The court, in its discretion, may withdraw a juror to prevent an injustice. | Can the court withdraw a juror to prevent injustice? | 030288.docx | LEGALEASE-00196800-LEGALEASE-00196801 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19393 | Pavone v. Clearing Svcs., 894 N.E.2d 370 | 413=2 | Notwithstanding Pavone's waiver of this issue, we observe that the Indiana General Assembly enacted the Worker's Compensation Act to provide compensation to workers suffering from work-related injuries without meeting the liability requirements of tort law. Mihelic, 784 N.E.2d at 921. Before the 2006 amendment to reduce Code § 22-3-2-2(a), Indiana law provided that employers whose employees bore the burden of proving that their injury arose out of and in the course of their employment. Mihelic, 784 N.E.2d at 920 (citing Conway v. Sch. City of E. Chi., 734 N.E.2d 594, 598 (Ind.Ct.App.2000), trans. denied.). See also Glenn v. Bd. of Comm'rs, Harrison County, Inc., 552 N.E.2d 485, 487 (Ind.Ct.App.1990) ("It is the claimant's burden in the first instance to prove his right to compensation."). After our Supreme Court's Mihelic examined the three avenues for cases involving "neutral-risks and noted the burden-shifting approach, the legislature stepped in to clarify that employees maintained the burden throughout the proceedings. The was removed from the legislature's concern, namely the right to worker's compensation is a creature of statute. There is nothing in the Mihelic indicating that the positional-risk doctrine was unconstitutionally mandated. Indeed, had it so desired, the Mihelic Court could have selected from two other approaches that left the burden of proof with employees. See Id. at 921. Pavone's constitutional challenge to the 2006 amendment to reduce Code" 22"3"2"(a) thus fails. | Right to workers' compensation is a creature of statute. West's A.I.C. 22-3-2-2 | Is the right to workers' compensation a creature of statute? | 040044.docx | LEGALEASE 00180984-LEGALEASE 00180985 | SA, Sub | 0.94 | 0 | | | 1 | |
| 19394 | Sutterer v. McMahon, 767 2d 1456 | 383=101 | Our foundation is that federal authority in the area of immigration and naturalization is plenary. See Fiallo v. Bell, 430 U.S. 787, 794 "96, 97 S.Ct. 1473, 1479"80, 52 L.Ed.2d 50 (1977); Mathews v. Diaz, 426 U.S. 67, 81"82, 96 S.Ct. 1883, 1891"92, 48 L.Ed.2d 478 (1976); Takahashi v. Fish & Game Commission, 334 U.S. 410, 419, 68 S.Ct. 1138, 1142, 92 L.Ed. 1478 (1948); U.S. Const. art. I, § 8, cl. 4. Implicit authority to regulate by the political branches is fairly narrow. Mathews, 426 U.S. at 81"82, 96 S.Ct. at 1891"92; Hampton v. Mow Sun Wong, 426 U.S. 88, 101, 96 S.Ct. 1895, 1903, 48 L.Ed.2d 495 (1976). Accordingly, federal classifications based on alienage are subject to relaxed scrutiny. See Nyquist v. Mauclet, 432 U.S. 1, 7 n. 8, 97 S.Ct. 2120, 2124 n. 8, 53 L.Ed.2d 63 (1977); Mow Sun Wong v. Campbell, 626 F.2d 739, 744 n. 1 (9th Cir.1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981). Federal classifications distinguishing among groups of aliens thus are valid unless "wholly irrational." Mathews, 426 U.S. at 83, 96 S.Ct. at 1893. No one contends that the positional-risk doctrine | Federal authority in areas of immigration and naturalization is plenary. | Is federal authority in immigration matters plenary? | 007021.docx | LEGALEASE 00137379-LEGALEASE 00137380 | Condensed, SA | 0.94 | 1 | | | 1 | |
| 19395 | Baumstiruch v. Sec'y of Def., 315 F.Supp. 170 | 34=56(4) | The law is well settled that the denial by the Armed forces of a serviceman's application for discharge as a conscientious objector under DOD 1300.6, or the applicable military regulations, may be subjected to judicial review. Owens v. Commanding General, 307 F.Supp. 285 (N.D.Cal.1969). The essential test of conscientious objection to service in sincerity. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955). It is well, therefore, to consider, at the outset, where the burden of proof is to be placed. If these moneys were gifts, then there was no consideration for the note. Want of consideration is always a good defense to an action on a promissory note. The facts alleged amount to a want of consideration or a fraud. Either is a good defense if properly pleaded. The answer does not expressly charge a want of consideration or a fraud, but the court, without deciding whether or not such claim must be expressly made to constitute a complete defense, is of opinion that the facts stated in the answer cannot be said to be irrelevant or immaterial. | The essential test of conscientious objection to service, Military Selective service is the essential test of conscientious objection sincerity? | Is the essential test of conscientious objection sincerity? | 009407.docx | LEGALEASE 00137328-LEGALEASE 00137329 | SA, Sub | 0.75 | 0 | | | 1 | |
| 19396 | Martin v. Scudder, 14 Ohio Dec. 283 | 8.30=123 | | Want of consideration is a good defense to an action on a note. | Is want of consideration a good defense? | Bills and Notes Memo 312-PR.docx | ROSS 003329429-ROSS 003329430 | Condensed, SA | 0.89 | 0 | | 0 | 1 | |
| 19397 | People v. Smith, 138 Misc. 2d 733 | 281=118 | The Fourth Department of the Appellate Division was similarly guided by P. L. Sec. 5.00, in Matter of Doonlog v.County District Attorney's Office, 97 A.D.2d 32, 659 N.Y.S.2d 507 (4th Dept. 1983), where it rejected a narrow application of the term "public servant." The court relied on the principle that the common law policy requiring strict construction of the Penal law had been superseded by statutory mandate, and that penal statutes are to be construed "according to the fair import of their terms to promote justice and effect the objects of the law." The Appellate Division held that an individual seeking to avoid the impact of Grand jury disciplinary sanctions could not shield himself from the requiring analysis and application of the Grand Jury's report by demonstrating his duties as that of an "independent contractor," in order to fall outside the ambit of P.L. Sec. 10.00(15). It concluded that the Penal Law definition of "public servant" should not be narrowly viewed as applying only to New York State employees, but also aimed at every person officially related to perform some governmental function. See People v Eisanne, supra, 107 Misc.2d at 466, 435 N.Y.S.2d 345. Again, the focus of the court in interpreting "public servant" was the relationship between the particular activity in question and the exercise of the rule sought to be applied. | For purposes of McKinney's Penal Law § 195.00, proscribing obstruction of governmental administration, "public servant" extends to officials not actually in employ of New York State, but who perform official function requires involvement that public servant be acting in manner of direct interest to New York State with respect to law enforcement.<br><br>"Does the term "public servant"" include every person specially retained to perform some government service?" | Does the term "public servant" include every person specially retained to perform some government service? | 011820.docx | LEGALEASE 00137086-LEGALEASE 00137087 | Condensed, SA, Sub | 0.73 | 1 | | | 1 | 1 |

Appendix D

3416

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19386 | State v. Makthepharak, 276 Kan. 563 | 67+3 | Makthepharak's proposed instruction was similar to a part of PIK Crim.3d 54.01"A on general criminal intent. Aggravated burglary is a specific intent crime; aggravated battery is a general intent crime. State v. Bradford, 272 Kan. 523, 535, 34 P.3d 434 (2001); State v. Campbell, 30 Kan.App.2d 70, Syl. 1, 39 P.3d 97, rev. denied 273 Kan. 1037 (2002). As discussed above, the underlying felony for the felony murder in this case was aggravated burglary, not aggravated battery. We have previously pointed out that PIK Crim.3d 54.01"A should be used only where the crime requires a general criminal intent. State v. Yardley, 267 Kan. 37, 42"43, 978 P.2d 886 (1999). PIK Crim.3d 54.01, on the other hand, is consistent with the principles of felony murder. | Aggravated burglary is specific intent crime. | Is aggravated burglary a specific intent crime? | Burglary - Memo 161 - JS.docx | ROSS-003291603-ROSS-003291604 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19387 | Chrisman v. Brandes, 137 Iowa 433 | 200+76 | It is claimed that the owners of lots in Manawa Park acquired a vested interest in the use of these highways which could not be disturbed by any action of the board of supervisors; but there is manifestly nothing in this contention. While the principle would be applied to a controversy between private individuals, it has no application where it is sought to procure a statutory vacation of a highway through a tribunal given power by the statute to determine such questions. Public highways are created by statute either directly or through delegated power, and it is manifest that they may be discontinued by the same power that created them, and that no individual can acquire such vested rights against the state as will prevent the discontinuance of a particular highway. The position of the appellees is, in effect, that they have such a vested right in the maintenance of the streets and alleys in question that the state itself, the creator thereof in the interest of the general public, cannot provide for the vacation of such streets in opposition to the wish of the appellees; but, as we have seen, there is no merit in this contention. Furthermore, if it were to be conceded for the purpose of this case that plaintiffs have a vested interest in the maintenance of such streets' and alleys' access to Lake Manawa, the record clearly shows that there are other ways by which they may reach said lake, and, such being the case, they cannot insist upon having the ways in controversy kept open for their accommodation. Lorenzen v. Preston, 53 Iowa, 580, 5 N. W. 764. | In proceedings by the board of supervisors to vacate highways under Code, S 422, conferring upon them that power, the rule that a vested right may be acquired in the use of a highway is inapplicable. | Can an individual acquire a vested right of a highway? | 019310.docx | LEGALEASE-00137624-LEGALEASE-00137625 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 19388 | Kelly v. Jorling, 164 A.D.2d 181 | 200+76 | The primary consideration of statutory construction is legislative intent (see, Matter of Long v. Adirondack Park Agency, 76 N.Y.2d 416, 422, 559 N.Y.S.2d 941, 559 N.E.2d 635; Hudson City Savs. Inst. v. Drazen, 153 A.D.2d 91, 93, 550 N.Y.S.2d 163; see also, McKinney's Cons.Laws of N.Y., Book 1, Statutes " 92), and courts are to avoid a literal construction when it leads to either a frustration of the overall design of the Legislature (see, McKinney's Cons.Laws of N.Y., Book 1, Statutes " 111) or an ineffectually absurd result (see, Matter of Long v. Adirondack Park Agency,559 N.Y.S.2d 941, 559 N.E.2d 635; see also, McKinney's Cons.Laws of N.Y., Book 1, Statutes "" 144, 145). The legislative intent behind Highway Law " 212 was to permit the State to close roads on State lands that endangered a State purpose (see, Matter of Altona Citizens Comm. v. Hennessy, 77 A.D.2d 956, 957, 430 N.Y.S.2d 898, lv. denied, 52 N.Y.2d 705, 437 N.Y.S.2d 1028, 419 N.E.2d 876). Adopting petitioner's view, that respondent has the power to consent to and approve the closing of a roadway but does not possess the authority to order its closure, would eviscerate the statute and render it meaningless. In our view, the statute's expressed intent provides an ample basis and rationale to conclude that "the state authority having jurisdiction or control over [state] lands" (Highway Law " 212) is empowered to issue orders effectuating that authority. Accordingly, respondent's order was a valid exercise of the statutory power given to the appropriate State agency pursuant to Highway Law " 212. | Highway Law gave Commissioner of Department of Environmental Conservation power to order closure of portion of road traversing State-owned land which was reclassified wilderness. McKinney's Highway Law S 212. | Was the legislative intent behind Highway Law 212 to permit the state to close roads on state lands that endangered a state purpose? | Highways-Memo 72-ANM.docx | ROSS-003290619-ROSS-003290620 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 19389 | Converse v. Shambaugh, 4 Neb. 376 | 157+259 | The rule is well settled that when a number of persons have associated themselves together in the joint prosecution of a common enterprise, as in ordinary partnerships, that the acts or contracts of one partner, with reference to the partnership business and affairs, are to be deemed the acts or contracts of all. And when the existence of the partnership is admitted, or otherwise established, the admission of one of the partners as to any matter between the firm and another party, is to be received as evidence against all the partners. But where the existence of the partnership is denied, and there is proof to establish its existence, then the admission of a party that he is a partner, affects him alone, and such admission is no evidence of the existence of the partnership, so as to create a liability against the others. McPherson v. Rathbone, 7 Wend., 216. Nelson v. Lloyd, 9 Watts., 22. Cottrill v. Vandusen, 22 Vt., 511. Whitney v. Ferris, 10 Johns., 66. Jennings v. Estes, 16 Me., 323. | Before admissions made by one partner can be received in evidence to charge the other, the partnership must be established by evidence independent of the admissions. | Is a declaration by one partner on the existence of partnership admissible to charge himself only and not the other parties? | Partnership - Memo 332 - MS.docx | LEGALEASE-00027218-LEGALEASE-00027219 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 19390 | Ledet v. Burgess, 632 So. 2d 1185 | 302+9 | Whether or not the defendant's conduct was intentional is a legal conclusion. Conclusions of law contained in a petition will not be considered. Wheelahan v. State Through Louisiana Claims Review Board, 376 So.2d 576 (4th Cir.1979). | Conclusions of law contained in petition will not be considered. | Will conclusions of law contained in a petition be considered? | 023353.docx | LEGALEASE-00137298-LEGALEASE-00137299 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19391 | State ex rel. Clark v. Bailey, 99 Mont. 484 | 307A+723.1 | 123456"No litigant or party to an action or proceeding has any vested right to have his cause heard before a particular judge." State ex rel. Little v. District Court, 49 Mont. 158, 141 P. 151, 152. There was nothing improper in Judge Goddard's continuing the hearing. Granting or refusing to grant a continuance is at any time within the sound legal discretion of the court (Borden v. Lynch, 34 Mont. 503, 87 P. 609; Hunt v. Van, 61 Mont. 395, 202 P. 573), and "its exercise in any case is not subject to review by this court, in the absence of an affirmative showing that the complaining party has suffered prejudice" (Downs v. Cassidy, 47 Mont. 471, 133 P. 106, 107, Ann. Cas. 1915B, 1155). The court may order a continuance on its own motion. Curry v. McCaffery, 47 Mont. 191, 131 P. 673. We think the general rule is accurately stated in 64 Corpus Juris, p. 67, where it is said: "Except where it is prohibited by statute a change of the presiding judge during a trial is not a fatal irregularity unless actual prejudice results to a party by reason thereof." | Trial court may order continuance on its own motion. | Can a trial court order continuance on its own motion? | Pretrial Procedure - Memo # 4018 - C - NS.docx | ROSS-003290604-ROSS-003290605 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 19392 | Taylor v. L.C. Smith & Corona Typewriters, 179 Misc. 290 | 307A+124 | The natural reaction would seem to be that if plaintiff and James B. McCormick, representing defendant, had one or more conversations that represented the agreement, plaintiff, were his memory normal, should know as much about the substance of their talks as Mr. McCormick, the other participant. In that case, would not the only purpose be to bind the latter for the purpose of future cross examination upon the trial, leaving the plaintiff unfettered by a record and free to ferret his way around the pitfalls? The weight of authorities, however, hold that all the movant must show is that the examination is "needful", not in all cases "necessary". | One moving to examine an officer of defendant corporation before trial need only show that the examination is needful, and is not required to show that the examination is necessary. | "Where a plaintiff shows by affidavit that examination of defendants before trial is necessary or needful, will the court usually grant an order permitting examination?" | 030983.docx | LEGALEASE-00137336-LEGALEASE-00137338 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 19393 | Simmons v. Leighton, 60 S.D. 524 | 307A+720 | The subject of amendments to pleadings is recognized as a matter of sound judicial discretion in the trial court, and, though an amendment introduces a new issue, no prejudicial error in the allowance of the amendment is shown, in the absence of a motion for continuance or postponement of the trial upon a proper and sufficient showing. Lehman v. Smith et al., 40 S. D. 556, 168 N. W. 857; Cornell v. Johnson et al. (S. D.) 241 N. W. 740. The fact that a complaint is amended does not of itself entitle the defendant to a continuance. It must appear to the satisfaction of the court that the "party applying therefor is surprised by the amendment and unable to safely proceed with the trial." Section 2377, Rev. Code 1919. Plaintiff did not present an affidavit or other proof in support of his motion, and we cannot say that it should have been apparent to the court without such showing that the defendant was "surprised by the amendment and unable to safely proceed with the trial." This court in the case of Cooper Wagon & Buggy Co. v. Stedronsky Bros. Co., 24 S. D. 381, 123 N. W. 846, laid down the rule of practice that a motion for a continuance on the ground that plaintiff was not prepared to meet a new issue raised by an amendment to the pleadings is properly denied when the motion is not supported by affidavit. This rule finds support in the decisions of other jurisdictions. 13 C. J. 179; Pollock v. Jordon, 22 N. D. 132, 132 N. W. 1000, Ann. Cas. 1914A, 1264; Cheney v. Dry Wood Lbr. Co., 34 Minn. 440, 26 N. W. 236; Enterprise Sheet Metal Works v. Schendel, 63 Mont. 529, 208 P. 933; Texas & N. O. R. Co. v. Goldberg, 68 Tex. 685, 5 S. W. 824; Harlan Coal & Coke Co. v. Kinser, 203 Ky. 570, 262 S. W. 937; Storch v. McCain, 85 Cal. 304, 24 P. 639. | Party seeking continuance on allowance of amendment to pleading during trial must establish surprise and inability to safely proceed with trial (Rev.Code 1919, S 2377). | Does the fact that a complaint is amended in itself entitle the defendant to a continuance? | Pretrial Procedure - Memo # 4691 - C - SJ.docx | ROSS-003291178-ROSS-003291179 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 19394 | State v. Daws, 303 Kan. 785 | 67+10 | The distinction between burglary and aggravated burglary is that aggravated burglary requires an additional element"the presence of a human being. Compare K.S.A. 2015 Supp. 21"5807(a) and K.S.A. 2015 Supp. 21"5807(b). The aggravated burglary statute provides:"Aggravated burglary is, without authority, entering into or remaining within any building, manufactured home, mobile home, tent or other structure, or any vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property in which there is a human being with intent to commit a felony, theft or sexually motivated crime therein." (Emphasis added.) K.S.A. 2015 Supp. 21"5807(b). | Distinction between burglary and aggravated burglary is that aggravated burglary requires an additional element-the presence of a human being. West's K.S.A. 21-5807(a, b). | What is the distinction between burglary and aggravated burglary? | Burglary - Memo 188 - KNR.docx | ROSS-003287357-ROSS-003287358 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 19395 | United States v. Szabo, 760 F.3d 997 | 92+1830 | The right to speak is not unlimited, and the degree of scrutiny that we apply to challenged speech "varies depending on the circumstances and the type of speech at issue." In re Anonymous Online Speakers, 661 F.3d 1168, 1173 (9th Cir.2011). Speech that threatens a person with violence is not protected by the First Amendment. Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists, 290 F.3d 1058, 1072 (9th Cir.2002) ("[W]hile advocating violence is protected, threatening a person with violence is not."); see also Watts v. United States, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). "Threats, in whatever forum, may be proscribed without implicating the First Amendment." Planned Parenthood, 290 F.3d at 1076, n. 11 (collecting cases). | Speech that threatens person with violence is not protected by First Amendment. U.S.C.A. Const.Amend. 1. | Is right to speak protected by the First Amendment? | Disorderly Conduct- Memo 51- GP.docx | ROSS-003290467-ROSS-003290468 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,079 |
| 13996 | Cleveland Area Bd. of Realtors v. City of Euclid, 88 F.3d 382 | 92+1661 | The second inquiry under the "time, place, and manner" test is whether the restrictions are "narrowly tailored to serve a significant government interest." Clark, 468 U.S. at 293, 104 S.Ct. at 3069. The district court found that no objections were narrowly tailored to serve a significant interest, citing cases suggesting the importance of aesthetics, as well as evidence and case law indicating that sign restrictions will advance that interest. However, in determining whether the ordinances were "narrowly tailored," the district court put undue emphasis on the rationale of South Suburban. 593, 2 d at 897, in which the Seventh Circuit evaluated the constitutionality of "For Sale" sign regulations for aesthetic reasons. The district court engaged in an analysis, as well as aesthetic reasons, to determine whether the ordinance applying the commercial speech test to determine whether the ordinance "directly advanced" the government's aesthetic interest. Such a finding does not establish that the ordinance was narrowly tailored, however, and we conclude that South Suburban is not a reliable guide in determining whether Euclid's ordinances covering both commercial and non-commercial speech are sufficiently narrowly tailored to withstand constitutional scrutiny. | Ordinances which completely banned all residential yard signs, commercial and noncommercial, except those displaying residents' name and address and pertinent social security information, was not narrowly tailored to serve significant government interest in aesthetics; by banning yard signs altogether, with exception only for minimal amount of information necessary for safety and security reasons, city burdened substantially more speech than necessary, because it completely foreclosed an inexpensive and autonomous way to communicate. U.S.C.A. Const.Amend. 1. | What is required for a statute to be narrowly tailored? | Disorderly Conduct Memo 53-10.docx | LEGALEASE 00100164 - LEGALEASE 00100165 | Condensed, SA, Sub 0.54 | | 0 | 1 | 1 | 1 | |
| 13997 | La Villarena v. Acosta, 597 So. 2 d 336 | 307A+36.1 | The second issue in this case is the admissibility of the surveillance tape prepared by a Villarena during the trial and submitted to the plaintiff and the court after the plaintiff had rested. Surveillance evidence is subject to discovery before trial. Dodson v. Persell, 390 So.2d 704 (Fla.1980). The surveilling party's failure to comply with such a discovery request will bar the information's use as evidence at the cause unless the trial court finds that the failure to disclose was not willful and either that no prejudice will result or that any existing prejudice may be overcome by allowing a continuance at the responsible party's expense. | Surveillance evidence is subject to discovery before trial. | Is surveillance evidence subject to discovery before trial? | 03.091.docx | LEGALEASE 00138366 - LEGALEASE 00138367 | Condensed, SA 0.91 | | 0 | 1 | | 1 | |
| 13998 | Vernon v. Wade Corr. Inst., 26,053 (La. App. 2 Cir. 8/19/94), 642 So. 2 d 684 | 307A+742.1 | LSA-CCP Article 1551 gives a court wide discretion to provide for implementation of a pretrial order and to insure that the terms of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. Gilcrease v. Gilcrease, 438 So.2d 658 (La.App. 2d Cir. 1983), writ denied, 441 So.2d 841 (La.1983); Zanca v. Exhibitors Contractors Company, 614 So.2d 325 (La.App. 4th Cir. 1993). The pretrial order (statement) controls the subsequent course of the action, though it can be modified at trial to prevent substantial injustice. Offshore v. As noted by the Fourth Circuit in Zanca, the need for an orderly disposition is particularly important in workers' compensation cases. The same considerations underlying cases in a district court are applicable. Zanca, 614 So.2d at 329. | The theory inherent in pretrial procedure is avoidance of surprise and allowance of orderly disposition of case. | Does a trial court have wide discretion to provide for pre-trial orders and to ensure that the terms of the order are enforced? | 03.093.docx | LEGALEASE 00138376 - LEGALEASE 00138377 | Condensed, SA 0.88 | | 0 | 1 | | 1 | |
| 13999 | Vernon v. Wade Corr. Inst., 26,053 (La. App. 2 Cir. 8/19/94), 642 So. 2 d 684 | 307A+742.1 | LSA-CCP Article 1551 gives a court wide discretion to provide for implementation of a pretrial order and to insure that the terms of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. Gilcrease v. Gilcrease, 438 So.2d 658 (La.App. 2d Cir. 1983), writ denied, 441 So.2d 841 (La.1983); Zanca v. Exhibitors Contractors Company, 614 So.2d 325 (La.App. 4th Cir. 1993). The pretrial order (statement) controls the subsequent course of the action, though it can be modified at trial to prevent substantial injustice. Offshore v. As noted by the Fourth Circuit in Zanca, the need for an orderly disposition is particularly important in workers' compensation cases. The same considerations underlying cases in a district court are applicable. Zanca, 614 So.2d at 329. | The theory inherent in pretrial procedure is avoidance of surprise and allowance of orderly disposition of use. | Do courts have wide discretion to implement pre-trial orders and insure that their terms are enforced? | 03.1121.docx | LEGALEASE 00138499 - LEGALEASE 00138501 | Condensed, SA 0.88 | | 0 | 1 | | 1 | |
| 13400 | Eaton v. Simpson, 182 Misc. 405 | 307A+91 | Furthermore, the modern trend is to increase rather than limit the scope of the examination. Skelton v. Parade, Supp. 13 NY 527. The present practice relating to examination before trial is liberal. Colonial Trust Co. v. Leconte, 251 App. Div. 858, 296 N.Y.S. 915. In view of this liberal trend which apparently has been adopted by both the Legislature and the courts, it seems reasonable to conclude that the right to the examination of a party to an action by his adversary is not going to denied but will simply be circumscribed whenever the situation may require. To recover for the reasonable value of professional services rendered. Any such liberal practice of public policy or otherwise, should be established by the Legislature rather than by judicial fiat. | The practice relating to examination before trial is liberal. Civil Practice Act, §§ 288, 290. | Is the practice relating to examination before trial liberal? | 03.1131.docx | LEGALEASE 00138606 - LEGALEASE 00138609 | SA, Sub 0.87 | | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 18401 | Davis v. Ohio, 206 S.W. 499 | 30+4208 | Plaintiff's deposition was taken before the trial by the court stenographer in shorthand; it was afterwards transcribed by the latter (or the typewriter, and submitted to plaintiff for his signature shortly before and on the day of the trial. Plaintiff claimed there were several errors, which, when defendant's attorney on cross-examination asked plaintiff if certain questions were not asked him and answers given, the attorney reading the answers as shown prior to the corrections to plaintiff, but plaintiff stated that the corrected mistakes were reasons that when the errors occurred, and whether the court's statements in reference to the changes in the deposition, and we hold to see any evidence in the record of unfairness, and while this practice is not to be encouraged, because it was not good if plaintiff could not be signed, it was therefore contained no admissions on his part, the error, under the circumstances, was harmless. The court, in the presence of the jury, in answer to the question asked by plaintiff's attorney, stated that he thought it was the duty of the witness to sign and to the deposition, and thereby contained misstatement, that the witness could explain the matter on the witness stand. Whether the court's statements in reference to plaintiff's duty was correct, or not, it was well received to say, for the reason that it was invited by plaintiff, and there was no exception taken to the answer made by the court, and the matter is not before us for review. | Error, when defendant's attorney on cross-examination asked plaintiff if certain questions were not asked him in taking his deposition, and answers given, the attorney reading answers as shown in deposition prior to correction by plaintiff, held harmless when plaintiff was given opportunity to explain changes in deposition. | Is a plaintiff's deposition not such until he signs it? | 03170.docx | LEGALEASE-00188305-LEGALEASE-00188306 | Condensed, SA, Sub | 0.8 | 0 | | 1 | 1 | |
| 18402 | Powell v. Hunter, 257 Mo. 440 | 307A+74 | The nephew of the said W. John Sellars testified, when asked about the double "X," appearing with the initial of his uncle's name, that when witness was a boy, "that sometimes they called him Andy or A, or A, B, J., and either A, B, or A, B, I don't remember whether both A, S was in there or not," that defendant was properly excluded, because the deposition containing it was not signed by the witness. | A deposition not signed by the witness was properly excluded. | Is a deposition not signed by the witness properly excluded? | 01175.docx | LEGALEASE-00188297-LEGALEASE-00188298 | Condensed, SA, Sub | 0.85 | 0 | | | 1 | |
| 18403 | Babcock v. N. New York Utilities, 134 Misc. 71 | 307A+41 | The plaintiff's right to an examination of the defendant before trial is not unlimited. Serido v. Comerford, 231 App. Div. 406, 247 N. Y. S. 398. Hence the plaintiff is entitled to examine the same of the person's examining the defendant's sort power the immediate after the accident, nor to the cause of the accident at a circle of the same. As stated in Clapper v. New York State Rys., 131 Misc. 130, 226 N. Y. S. 522. Nor is the plaintiff entitled to examine the defendant as to the calling of lives, limbs, or branches thereto adjacent to assist above the accident, nor as to the accident. Clapper v. Town of Waterford, 131 N. Y. 182, 385, 390, 30 N. E. 240; Cook v. Kerrm, 154 App. Div. 134, 138 N. Y. S. 98; Lasn v. City of Albany, 193 App. Div. 753, 755, 756, 182 N. Y. S. 183 | Right to examination of defendant before trial is not unlimited. Civil Practice Act, §§ 290, 291. | Is the right to examination of a defendant before trial unlimited? | 01780.docx | LEGALEASE-00188493-LEGALEASE-00188494 | SA, Sub | 0.88 | 0 | | | 1 | |
| 18404 | Westenberger v. Indus., Comm'n of Ohio, 135 Ohio 247, 231 | 413+2 | The rights of employers and their dependents in the Workmen's Compensation Law are not governed by common law, but are only such as may be conferred upon them by statute. Article II, Section 35, page 575, Section 2; Industrial Commission v. Kamrath, 118 Ohio St. 1, 160 N. E. 470; Mazelli v. Industrial Commission, 132 Ohio St. 219, 171 N. E. 104 | Rights of employees and dependents to compensation under Workmen's Compensation Law rest solely on the statute and are not governed by common law. | How are the rights for compensation conferred? | 04060B.docx | LEGALEASE-00188256-LEGALEASE-00188257 | Condensed, SA, Sub | 0.8 | 0 | | | 1 | |
| 18405 | State v. Garrett, 42 Conn. App. 507 | 67+90.51 | Nevertheless, the defendant urges that the court proved that he entered the building unlawfully because there was "no evidence presented as to broken windows or an illegal forced entry." We are unpersuaded. As this court has stated in defining "entry" and element of burglary. See, e.g., State v. Gelormino, 24 Conn.App. 563, 571-72, 590 A.2d 480, cert. denied, 219 Conn. 911, 593 A.2d 1361 (1991); State v. Bell, State v. Kotkhos, 152 Conn. 615, 637-38, 211 A.2d 144 (1965); Rather, General Statutes "-53a-100(b) provides that "(a) person "enters or remains unlawfully" in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." The evidence clearly established that Satterfield observed the defendant inside Blonden's at a time when the building was not open to the public. Moreover, the manager of Blonden's, Jesus Bonoroassa, testified that the defendant "had no right to be in the building at 8 p.m. after it had been closed." | Forcible entry is without element of burglary, is not element of burglary. C.G.S.A. 53-53a-100(b); 53a-103. | Is forcible entry a element of burglary? | Burglary - Memo 193 - KNR.docx | ROC5-02008459-ROC5-02008465 | SA, Sub | 0.9 | 0 | | | 1 | |
| 18406 | Poole v. Harvey, 571 F. Supp. 2d 120 | 34+508 | Even though this court's analysis of the ABCMR's decision incorporates the court's review of that standard of evidence applicable as a matter of law, this court utilizes an "unusually deferential application" of that standard. Cone v. Caldera, 223 F.3d 789, 793 (D.C.Cir.2000)(quoting Kreis, 866 F.2d at 1514). A party seeking judicial review of a decision by the ABCMR must "overcome the strong but rebuttable presumption to that the administrators of the military discharge their duties correctly, lawfully, and in good faith." Frizelle, 111 F.3d at 177 (internal quotation omitted). "This differential standard is calculated to insure that the courts do not become a forum for appeals by every solider dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone, 223 F.3d at 793. Thus, when the court reviews the "final decision of a military correction board, the court has a limited scope of review." Cone, 223 F.3d at 793. And the court then decides whether the decision of the board was arbitrary and capricious. Dickson v. Sec'y of Def., 68 F.3d 1396, 1404-05, 314 U.S.App.D.C. 132, 134-35 (D.C.Cir.1995) | Party seeking judicial review of decision by Army Board for Correction of Military Records (ABCMR) must overcome strong but rebuttable presumption that administrators of military discharge their duties correctly, lawfully, and in good faith. | Is the function of the court in reviewing final decision of a Military Corrections Board to serve as a super correction board that reweighs the evidence? | 00513.docx | LEGALEASE-00190508-LEGALEASE-00190509 | SA, Sub | 0.8 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19407 | Clifton v. United States, 341 F.2d 649 (D.C. Cir.) | 34+15(3) | The presumption of voluntariness is rebuttable, however, in individuals in certain circumstances… | To fail within the parameters of the duress exception to the rule when an officer announces falsely an attempt to withdraw resignation… | Can the presumption of voluntariness be rebutted when an officer announces falsely an attempt to withdraw resignation? | 00050.docx | LEGAL642 0019575 – LEGAL642 0019576 | Condensed, SA, Sub 0.73 | | | | | 1 | 1 |
| 19408 | Mayer v. Garvan, 278 F. 27 | 289+32 | The District Court has ruled that war dissolves a partnership under the law of England and the United States… | Under the law of the United States, war dissolves a partnership between a citizen and subject of the enemy. | Does a war dissolve partnership between citizens of two countries? | 02317.docx | LEGAL642 0019577 – LEGAL642 0019592 | Condensed, SA, Sub 0.8 | | | | | 1 | 1 |
| 19409 | Ash v. Warner, 12 F.(Supp). 39 | 289+83 | An incoming partner is not liable for the price of goods contracted for by the firm before he entered into the firm… | A new partner, coming into an existing firm, is not liable for debts contracted by the firm previous to his entering it, unless he expressly assumes them. | Is an incoming partner liable on the contracts entered into by the firm before he became a member? | 02321.docx | LEGAL642 0019591 – LEGAL642 0019592 | Condensed, SA, Sub 0.08 | | | | 1 | 1 | 1 |
| 19410 | Old Kent Bank Sv. v. City of Detroit, 178 Mich. App. 416 | 365+15 | The issue was addressed by the Court in American Oil Co. v. L.A. Davidson, Inc… | Defaulting contractor's surety did not lose its ability to assert equitable subrogation by perfecting security interest. | Does a surety who waive its right to assert equitable subrogation by perfecting an assignment of accounts? | 04324.docx | LEGAL642 0019442 – LEGAL642 0019443 | SA, Sub | 0.75 | | | | 1 | 1 |
| 19411 | Estrada v. River Oaks Bank & Tr. Co., 550 S.W.2d 719 | 656+435 | The Code definition of a holder applies to payees and transferees of negotiable instruments… | Change in wording from that used in Negotiable Instruments Law, which allowed instrument to be written upon paper "attached" to negotiable instrument, to wording used in Uniform Commercial Code measuring that paper be "so firmly affixed" to instrument as to become a part thereof. | Should the indorsement be written on the instrument itself? | 00324.docx | LEGAL642 0019147 – LEGAL642 0019148 | Condensed, SA, Sub 0.23 | | 0 | | | 1 | 1 |
| 19412 | Guevin v. Breveton, 246 8.30?.+64 | 8.30?+64 | The opinions show that this court regards the Negotiable Instruments Law, not as something new or revolutionary, but mainly as a codification… | Negotiable Instruments Law is codification, compilation, or restatement of preexisting law. | Is the Negotiable Instruments Law a codification of existing law? | 00987.docx | LEGAL642 0019544 – LEGAL642 0019545 | Condensed, SA, Sub 0.75 | | 0 | | | 1 | 1 |
| 19413 | C.S. Fisher Lumber & Coal Co. v. Robbins, 104 Kan. 619 | 831+160 | Although questioned, the transfer of the note from the plaintiff to the bank amounted to a commercial indorsement… | Whenever a negotiable note passes into the hands of the holder in due course, its status as commercial paper is established, and such holder may transfer it to others, even after maturity, with immunity from the equities that may exist between the maker and payee. | Whether a commercial indorsement is sufficient to pass title to the note? | 01039.docx | LEGAL642 0019859 – LEGAL642 0019860 | Condensed, SA, Sub 0.57 | | 0 | | | 1 | 1 |
| 19414 | Armour Bros. Banking Co. v. Riley Cty. Bank, 30 Kan. 163 | 831+428 | An indorsement, "Pay & or order for account of E.," is a restrictive indorsement… | An indorsement, "pay A. or order for account of B.," is a restrictive indorsement, and does not pass title. | Whether an indorsement in the form Pay to order for account [restrictive indorsement]? | 01056.docx | LEGAL642 0019571 – LEGAL642 0019572 | Condensed, SA, Sub 0.78 | | | | | 1 | 1 |

Appendix D

3421

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19415 | Cairo Natl. Bank of Cairo, Ill. v. Marston Co., 287 S.W. 839 | 83E+428 | We concede that an indorsement for collection is that in plaintiff's restrictive, and does not vest in the indorsee the legal title to the paper. Jackson v. Johnson, 248 Mo. 680, 154 S. W. 790; Northwestern National Bank v. Bank of Commerce, 107 Mo. 402, 17 S. W. 982, 15 L. R. A. 102; Mechanics' Bank v. Valley Packing Company, 70 Mo. 643; Bank of Indian Territory v. First National Bank, 109 Mo. App. 665, 83 S. W. 537. National Bank of Rolla v. First National Bank, 141 Mo. App. 719, 125 S. W. 513, 8 C. J. 166. When a draft is sent by one bank to another bank for collection and a remitting of the proceeds to the forwarding bank, the relation of principal and agent is created, and not that of creditor and debtor. Federal Reserve Bank of St. Louis v. Millspaugh Bros. Soap (Mo.) 269 S.W. 162, 163. 8 C.J. 166. Federal Reserve Bank of St. Louis v. Quigley (Mo. App.) 284 S.W. 164. | Indorsement for collection of bill of exchange is restrictive, and does not vest legal title in indorsee. | Whether an endorsement for collection is restrictive? | 010297.docx | LEGALEASE 00189863 LEGALEASE 00189862 | Condensed, SA, Sub 0.89 | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 19416 | Grimm v. Warner, 45 Iowa 106 | 83H+553 | A holder of negotiable paper, to be protected against equities existing between the original parties, must have acquired it by indorsement before maturity. A collateral security, falling due after maturity, carries no such consequences. Franklin v. Twogood, 18 Iowa, 515. The holder under a blank indorsement can transfer the paper without any further endorsement, or without filling up the blank. In such case the transferee will take it as an indorsee with all the rights of such a party. The indorsement in blank before maturity of a promissory note taken as collateral security confers the legal title and property of the payee upon the holder. Sheldon, Hunt & Co. v. Middleton, 10 Iowa, 17; McCarty v. Clark, 16, 108. | Where a promissory note had been transferred by indorsement as collateral security, and then, before maturity, with the knowledge of the indorsee, the payee had sold it to a third person, who being a holder did not come until after maturity, held that the latter acquired it free from equities, and occupied the position of a good faith indorsee before maturity. | Whether promissory note taken as collateral security can confer title? | 010301.docx | LEGALEASE 00189873 LEGALEASE 00189874 | Condensed, SA, Sub 0.48 | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 19417 | Pollins v. Minds Mfg. Co., 211 Pa. Super. 87 | 8.30D+27 | Next we must give consideration to the distinction between a check and a note. A check is an order of a depositor on a bank in the nature of a draft, drawn on the bank and payable on demand. It is revokable until paid or accepted for payment. A note is an irrevocable promise to pay on the part of the maker. The maker of a check impliedly engages not only that it will be paid, but that he will have sufficient funds in the bank to meet it. First National Bank of Warren v. J. A. Cafarelli & Co. 15 Codad Co 134, 15 A. 610 (1888). Champion v. Gordon, 70 Pa. 474 (1872). In the present instance the check in question clearly showed that it was payable from a special account set up by the corporate defendant for the purpose of paying its employee's wages. This information disclosed by the instrument itself would be all the contention that the appellant intended to make the instrument his own order on the named bank to pay money to the payee. The money was payable from the account of the corporate defendant over which appellant is an individual had no control. | A check is an order of a depositor on a bank in the nature of a draft drawn on bank and payable on demand. | Is a check revocable until paid? | 010304.docx | ROSS-003301561-ROSS-003301562 | SA, Sub 0.9 | 0.9 | 0 | | 1 | 1 | 1 |
| 19418 | McIvoy Bank v. First Natl. Bank of Fayetteville, 252 Ark. 558 | 83E+481 | First National must prove that if it did not have a second interest it did have a valid equitable assignment of the note. Watson, upon transfer of the note back to him, held for over a year and reduced it to judgment in the meantime. But because First National resumed exclusive control of the note, which action would be contrary to First National's contention that it had sold an equitable assignment. Under the UCC does not permit assignment of negotiable instruments. Under us 85 3" 201 to 208, the note must be transferred or negotiated. | Uniform Commercial Code does not permit assignment of negotiable instrument; note must be transferred or negotiated. Ark. Stats. §§ 85-3-201 to 85-3-208. | Is assignment of notes permitted under the law? | 010348.docx | LEGALEASE 00189371- LEGALEASE 00189372 | SA, Sub 0.73 | 0.73 | 0 | | 1 | 1 | 1 |
| 19419 | Hoppe v. Russo-Asiatic Bank, 235 N.Y. 37 | 38+54 | As to the motive of the assignor in making the assignment or the consideration given therefor, it is well settled (1 Cook, Joint, 905) that "it is of no importance to the debtor what motives induced it to make the assignment, whether from the convenient enforcement, or to avoid the inequity of the assignee to bring an action." See, also Hackley v. Sprague, 10 Wend. 113; McMahon v. Allen, 35 N.Y. 403; 1 R. A. 3D 192, C.A. 318; Guile v. Hughes, 129 N.Y. 520; 154 C.A. 417; Supply 512; Sheridan v. Mayor, etc., of City of New York, 68 N.Y. 30; Weiss v. Levy, 106 App Div. 500, 94 N.Y.S. 537. | Motives influencing assignor in making assignment, or the consideration thereof, does not affect validity of assignment as against debtor. | Whether the motive influencing the assignment is important? | 010351.docx | ROSS-003385404-ROSS-003385841 | Condensed, SA, Sub 0.79 | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 19420 | Moses v. Woodward, 109 Fla. 348 | 83E+481 | The complainants alleged and proved that Mr. J. Woodward did on the 10th day of August, 1926, about two weeks prior to an alleged agreement with him, transfer, assign, and deliver to the plaintiff, Elias M. Woodward, all of his right, title, and interest in the mortgage and notes mentioned by him on the mortgage. The practical difference between transfer by assignment and transfer by indorsement is: (1) the former makes the holder take subject to equities, while (2) the assignee, as distinguished from an endorsee, in the absence of a statute to the contrary, is not liable to the assignee, except as specially promised. See, also, 3 R. C. L. 1407 it is within the province of the trial court to regulate the order of the introduction of the evidence, and his discretion in such matters will be overturned on appeal on appellate court "only when an abuse thereof is clearly made to appear." Williams v. Leuniger, 101 Fla. 523, 134 So. 570; 49 Fla. 341; 37 So. 574; 370; 41 So. 395; Beares & Lover (Sr. Co. v. Adams, 53 Fla. 384, 46 So. 156. | Like an ordinary chose in action, promissory note may be transferred by assignment. | How can a note be transferred? | 010352.docx | ROSS-003287197-ROSS-003187198 | SA, Sub 0.95 | 0.95 | 0 | | 1 | 1 | 1 |

Appendix D

3422

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Copied Headnote Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 19421 | Hurtado v. Quigley, 180 Cal. 265 | 83 (+43)1 | An indorsement is a written contract, the effect of which the law declares its effect, and when reduced to writing it becomes the foundation of the action. | "An indorsement is a written contract of which the law declares the effect, and when reduced to writing it becomes the foundation of the action..." | Is an indorsement a written contract of which the law declares the effect and when executed becomes the foundation of the action? | | Bills and Notes - Memo 519-FR.docx | ROSS-003329073 ROSS-003329074 | Condensed, SA | 0.7 | 0 | | 1 | 1 | |
| 19422 | Neely v. United States, 274 F.2d 189 | 63 (+2)1 | Criminal intent is an essential element of bribery. | | Is criminal intent an essential element of bribery? | | Bribery - Memo #188 - C...-1R.docx | ROSS-003329333 ROSS-003329334 | Condensed, SA, Sub | 0.93 | 0 | | 1 | 1 | 1 |
| 19423 | Pennie v. Obama, 255 F. Supp. 3d 648 | 135+1 | Domicile requires residence in state and intent to remain in state. | | Does domicile require residence in state? | | 014480.docx | LEGALEASE-00160417 LEGALEASE-00160418 | SA, Sub | 0.92 | 0 | | 1 | 1 | |
| 19424 | Trinity Universal Ins. Co. v. Bill Cox Const., 75 S.W.3d 6 | 95(+35) | Subrogation rights may be waived or altered by contract. | | Can a right to subrogation be modified or extinguished by contract, waived either expressly or by implication? | | 047065.docx | LEGALEASE-00140023 LEGALEASE-00140024 | Condensed, SA | 0.91 | 0 | | 1 | 1 | |
| 19425 | Smith & McMaster, P.C. v. Newbern Borough, 669 A.2d 452 | 171+(200)1 | Manner in which tax is set and not source from which tax is paid determines tax-paid validity of tax. | | Is a court's determination as to the validity of a tax based on the source from which the tax is paid? | | 044870.docx | LEGALEASE-00240278 LEGALEASE-00240279 | Condensed, SA, Sub | 0.86 | 0 | | 1 | 1 | |
| 19426 | City of El Paso, Tex. v. Jones, 656 F. Supp. 2d 1154 | 184441 | A county's allegation that a defendant participated in bribing the commissioner to waive the county's rights under the Fair Labor Standards Act (FLSA), was sufficient to underpin its civil Racketeer Influenced and Corrupt Organizations Act claim. The defendant arranged for the commissioner to receive free or discounted legal services for an unrelated personal criminal matter in exchange for her official vote... | What must be alleged when the plaintiff files an allegation of bribery as a Racketeer Influenced and Corrupt Organizations Act (RICO) predicate act? | | 052119.docx | LEGALEASE-00141134 LEGALEASE-00141135 | Condensed, SA, Sub | 0.06 | 0 | | 1 | 1 | 1 |
| 19427 | Leisure v. Madison Gas & Elec. Co., 113 Wis. 547 | 113+3 | Error in allowing evidence of a custom was not prejudicial, under the facts, that the evidence administered evidence of a warning against usual dangers incident to the employment. | | Is evidence of a custom that is obviously dangerous admissible? | | Customs & Usage - Memo 153 - RK.docx | ROSS-003291016 ROSS-003291017 | Condensed, SA, Sub | 0.8 | 0 | | 1 | 1 | 1 |

Appendix D

3423

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 19428 | Swift's York & Steel Works v. Dewey, 37 Ohio St. 242 | 113+3 | Extrinsic evidence is admissible to show that the parties to a written agreement have contracted upon a common basis of usage, applicable to the business in which the contract is made, whereby they have impliedly assented to certain conditions not mentioned in the contract. With respect to usage of the character relied on here, it must appear, in order to be valid, that when the contract was made it was general and uniform, well-established, and known to the parties; but that the agreement is so in that free from ambiguity, or that such agreement with, and the same time agreement without, the evidence annexed, creates very different rights and obligations, affects no valid objection to such evidence. In Humfrey v. Dale, 7 E. & B. 266, [Eng. Q.L.R.] 236, Lord Campbell said: "In a certain sense, every mercantile incident which is added to a written contract series it, makes a different from what it appeared to be, and so far is inconsistent with it. If by the side of the written contract without, you write the same contract with the added incident, the two would seem to import different obligations and the different contracts." And see Myers v. Sari, 3 E. & E. 107 Eng. C. L. 306; The usage, however, must not inconsistent with the contract; for it must be within the written terms of it is not possible that here shown seems not be obnoxious to either of these objections. Robertson v. Jackson, 2 M. G. & S. 412, [indemerson v. Schultz, 14 C. E. 38; Cunliant v. Cumming, 10 Neu X. & Kant 305, affirmed, 11 Ib. 205. | Usage must not be inconsistent with the words of the agreement? | May usage be inconsistent with the words of the agreement? | 014003.docx | LEGALEASE-00161884-LEGALEASE-00161885 | SA, Sub | 0.94 | 0 | | 1 | 1 | |
| 19429 | People v. Grant, 186 Misc. 2d 616 | 35+63.4(6) | I find that a defendant's playing his radio loudly in the vicinity of the school while congregating with others, and refusing to disperse when ordered, gave police officer reasonable cause to arrest defendant for offense of disorderly conduct. McKinney's Penal Law § 240.20, subd. 6. Defendant's placing his radio loudly in the vicinity of the school while congregating with others and refusing to disperse when ordered, gave police officer reasonable cause to arrest defendant for offense of disorderly conduct while congregating with others, and refusing to disperse when ordered, gave police officer reasonable cause to arrest defendant for offense of disorderly conduct. McKinney's Penal Law § 240.20, subd. 6, recognized that an individual's refusal to obey an order to move on "can [only] be justified when the circumstances show conclusively that the police officer's direction was purely arbitrary and not calculated in any way to promote the public order" (pp. 284-285, 181 N.E. 572). Consequently, the court held that a conviction of disorderly conduct based on a defendant's refusal to move on when ordered by a police officer. Itheld that "[s]uch cannot weigh the competing considerations in the wisdom of the police officer's directions where a police officer is called upon to decide whether the time has come when a direction to move on be called for." People v. Culpern, supra, at p. 285, 181 N.E. 572). | In the context of disorderly conduct, when is an individuals refusal to obey a police order to disperse justified? | 014449.docx | LEGALEASE-00141017-LEGALEASE-00141018 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | | 1 |
| 19430 | Amos & Prod. Co. v. Thompson, 516 So. 2d 376 | 300+93.50 | As previously indicated, it is a basic right of a co-owner (owner in indivision) to demand a partition of the commonly owned property. La.C.C. art. 1289. However, because co-ownership is converted into sole ownership. Partition is a sort of exchange which co-owners make among themselves, wherein one gives up his right to the commonly owned property to a co-owner so that the division of the thing he taken. La.C.C. art. 1382. The Civil Code creates the basic right to partition. La.C.C. arts. 1289 to 1434. Stevis v. Demard, 936 So.2d at 999. The co-owners may voluntarily partition by mutual agreement. La.C.C. arts. 1294 and 1322. If all commonly owned property and partition in kind is not feasible and one commonly owned partition in indivision by partition in kind is not feasible. However, partition in kind is only available when the common property is redivisible or when it cannot be conveniently divided. La.C.C. art. 1339. Commonly owned property cannot be conveniently divided is it valid if a diminution of value occurs to the property or a loss or inconvenience of one of the owners would result. La.C.C. arts. 1340. A. Yiannopoulos, 2 Louisiana Civil Law Treatise, Property, 7 (4) § 150 (Supp.1980). If the common property cannot be partitioned in kind, it must be partitioned by licitation at a public auction. La.C.C. art. 4607. The general procedural rules for a judicial partition are found in La.C.C.P. arts. 4601-4642. Tucker v. Kelly, 506 So.2d 730 (La.App. 1st Cir. 1987). | "Is the preferred method of judicial partitioning that of partition in kind, wherein each co-owner receives his proportionate share of the common property?" | 021277.docx | LEGALEASE-00141515-LEGALEASE-00141516 | SA, Sub | 0.77 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19431 | State v. Harrington, 407 S.W.2d 467 | 260+97 | The requisite element for a mining partnership which seems to create the greatest difficulty is joint operation. From our examination of cases in this and other jurisdictions it seems that this element is absolutely required before a mining partnership arises. This element has been conclusively shown. Each defendant worked and cooperated in every act that was done. Harrington secured the lease, handled the "pooling" of money, paid the pooled money out by paying the expenses of operation, including paying the pumper and the driller. Harrington secured the forms and furnished necessary information for Baton to make reports to the Railroad Commission. Baton represented to the Railroad Commission that he was the owner and operator of "HAL CO.". Baton furnished the surface pipe when they started the well. Baton admitted, when testifying after being called under the adverse party rule, that all of the defendants were members of the "HAL CO." at the time the well was drilled; that "we drilled the well, Yes, sir"; and that all of the defendants had an interest in the Company. Baton, Allgood and Lutes, in addition to owning an interest in the farmout or lease from the beginning, looked to Harrington for progress reports. Lutes admitted Harrington acted for all of the defendants in acquiring the lease and that he looked primarily to Harrington. Baton was active in the mining operation from the start. Baton frequently appeared at Harrington's office and signed all reports which had been prepared by Harrington. The defendants paid their proportionate share of the expenses and received their proportionate share of the income in accordance with division orders. There is no denial by any of the defendants of these admitted facts. In this case there was no contract between the defendants except their joint oral agreement to drill and operate. Unquestionably, a mining partnership existed at all pertinent times. See Munsey v. Mills & Garrity, 115 Tex. 469, 283 S.W. | Joint operation is necessary element in mining partnership. | Is joint operation a requisite element for a mining partnership? | 021300.docx | LEGALEASE-00141479-LEGALEASE-00141480 | Condensed, SA, Sub | 0.97 | 0 | 1 | 1 | 1 | 1 |
| 19432 | Newhouse Mill & Lumber Co. v. Keller, 103 Ark. 538 | 307A+723.1 | Moreover, the facts which it is alleged the witness would testify to would not be sufficient, in the absence of other facts not stated in the motion, to make the testimony relevant or competent. While it is alleged that the witness sold logs to the appellee at a price of from $6 to $8.50 per thousand feet, it is not stated how many logs he sold at that price, or what it would cost to deliver the logs sold by him to appellee's mill. Under the contract, the logs had to be delivered by appellant at appellee's mill. A motion for a continuance should state facts and not conclusions. Richie v. State, 85 Ark. 413, 108 S. W. 511. | Motion for continuance, which stated conclusions, and not facts, as to what a proposed witness would testify to, held insufficient. | Should a motion for continuance state facts and not conclusions? | Pretrial Procedure - Memo # 4310 - C - PB.docx | ROSS-003287775-ROSS-003287776 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 19433 | Murphy v. Joseph Hollander, 131 N.J.L. 165 | 371+2001 | While such a tax is not a "debt" in the strictly technical sense, and therefore an action in debt will not lie for its recovery, there are cases holding that a creditor's bill in equity for discovery and an accounting is maintainable by the taxing power in circumstances such as these. A tax is not, in legal contemplation, either a debt or a contractual obligation. City of Camden v. Allen, 26 N.J.L. 398; Board of Chosen Freeholders of Atlantic County v. Inhabitants of Weymouth, 68 N.J.L. 652, 54 A. 458. It operates in invitum. It is an impost levied by the sovereign authority to raise moneys for the support of the government, or for some special purpose within the domain of government. It is an exaction due to the government in its sovereign capacity, while debts are owing to the government in its corporate capacity. Liberty Mutual Ins. Co. v. Johnson Shipyards Corp., 2 Cir., 6 F.2d 752. But, for the purposes of enforcement, a tax assessment has been regarded as assimilating the qualities of a judgment so as to support a creditor's bill. As stated, it is an obligation created by the government; and it has "the efficacy of a judgment," and is "capable of being enforced by process more summary than legal execution." City of Camden v. Allen, supra. And the distress warrant is analogous to an execution. | A "tax" is not technically a debt for which an action in debt will lie, and is neither a "contractual obligation" nor a "debt", which is owing to the government in its corporate capacity, while a "tax" is an exaction due the government in its sovereign capacity, and is an impost levied by the sovereign authority to raise moneys for the support of the government, or for some special purpose within the domain of government. | Is tax technically a debt for which an action in debt will lie? | 045203.docx | LEGALEASE-00141206-LEGALEASE-00141207 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 19434 | Bielski v. Zorn, 627 N.E.2d 880 | 371+2013 | The right to tax is the highest attribute of sovereignty. M'Cullough v. Maryland (1819), 17 U.S. (4 Wheat) 316, 339, 4 L.Ed. 579, 585. The power resides exclusively with the legislature and is limited only by constitutional requirements. See Miles v. Dep't of Treasury (1935), 209 Ind. 172, 176"77, 199 N.E. 372, 374, appeal dismissed (1936), 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372; State Bd. of Tax Comm'rs v. Holliday (1898), 150 Ind. 216, 49 N.E. 14); Board of Comm'rs v. Harrell (1897), 147 Ind. 500, 504, 46 N.E. 124, 125. In Indiana, the legislature's sovereign right to tax is limited by Article 10, " 1, of the Indiana Constitution, which provides in pertinent part: "The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal." IND. CONST., art. 10, " 1(a) (emphasis added).From th[is] constitutional provision[ ] .. three basic propositions stand out in bold relief: (1) Uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation. Each of these propositions are interlocking and mandatory. They are the constitutional basis of a valid tax law. | Taxation power resides exclusively with legislature and is limited only by constitutional requirements. | Where does the taxation power reside? | 045378.docx | LEGALEASE-00141401-LEGALEASE-00141402 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | |
| 19435 | Dole Air Lines v. Dept of Revenue, 455 So.2d 810 | 88+74.1(2) | The Supreme Court of the United States has stated that the constitutional power of a state to tax does not depend upon the employment of the taxpayer of any special benefit from the use of the funds raised by taxation... [Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 521–524, 57 S.Ct. 868, 81 L.Ed. 1245 (1937)]... See also Commonwealth Edison Co. v. Montana, 453 U.S. 609, 101 S.Ct. 2946, 2957, 69 L.Ed.2d 884 (1981); General Motors Corp. v. Washington, 377 U.S. 436, 441, 84 S.Ct. 1564, 1567, 12 L.Ed.2d 430 (1964)... | Imposition of excise tax on purchase of motor fuel and liquid fuels does not depend upon employment of taxpayer of any special benefit from use of funds. [U.S.C.A. Const. Art. 1, § 8, cl. 3; Laws 1983, ch. 83-3, § 1 et seq.] | Does the Constitutional power of a state to tax depend upon employment of taxpayer of any special benefit from use of funds raised by taxation? | 041475.docx | LEGALEASE-00161589-LEGALEASE-00161591 | SA, Sub | 0.83 | 0 | | 1 | 1 | 1 |
| 19436 | Kemps v. Randsburgh, 802 NJ 2d 389 | 371+2005 | States have wide discretion in setting taxes. Allied Stores of Ohio, Inc. v. Bowers (1959), 358 U.S. 522, 526, 79 S.Ct. 437, 440, 3 L.Ed.2d 480... When a city is a public capacity, municipal corporations function as agents of state government... [Cincinnati v. Cincinnati & Suburban Bell Tel. Co. (1978), 53 Ohio St. 366, 367. Taxation is recognized as approximation act, Perez v. Hamilton (1931)... | States have wide discretion in setting taxes. | Do states have wide discretion in setting taxes? | Taxation - Memo # 405-C - RC.docx | ROSS-003183703-ROSS-003183705 | Condensed, SA | 0.91 | 0 | 1 | 0 | | |
| 19437 | People ex rel. Kutner v. Cullerton, 58 Ill 2d 266 | 371+2005 | It is clear, however, that in matters of taxation States have a very broad latitude. Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590.) This latitude and the restrictions placed thereon have been described by the Supreme Court of the United States: "The States have a very wide discretion in the laying of their taxes. Often the States, in the exercise of their taxing power, are... Protection Clause of the fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. | In matters of taxation, states have a very broad latitude. | In matters of taxation do the states have broad latitude? | 043545.docx | LEGALEASE-00141803-LEGALEASE-00141804 | Condensed, SA | 0.91 | 0 | 1 | 0 | | |
| 19438 | De Blois v. Comm'r of Corps. & Taxation, 276 Mass. 437 | 371+1402 | The word "business" as used in said section 5 is a word of wide import. It may include a large field of activities underlying the gain and profit. Whipple v. Commissioner of Corporations & Taxation, 263 Mass. 476, 485, 486, 161 N.E. 593. It is so employed as an abstract sense but in a highly practical application. It must be taken to embrace the specific implications of section 22(a) to the effect that no return is required of income derived from real estate. The statutory provision as to the return by inhabitants subject to an income tax was explicit. They are designed to afford to the taxing official complete and accurate information in order to determine the correct basis for computing the tax... White, of course that official is not bound by the return, the purpose of the return is to require him through the taxing agency the means of intelligent comparison and of ascertaining the income of the inhabitant. It will necessarily be imposed... specified that no return be made of income of that nature; that is to say, income derived from real estate. This income here arose from the rental of real estate. The tax imposed by G.L. c. 62, is a property tax and not an excise tax. Hart v. Tax Commissioner, 240 Mass. 37, 39, 132 N.E. 621. A tax upon income derived from real estate is in legal effect a tax upon the real estate itself. Opinion of the Justices, 220 Mass. 613, 623, 624, 108 N.E. 570. It is common knowledge that, in the Commonwealth, real estate has been subject to direct taxation at a tax rate so much higher for a tax years, items always expressly and subject to inspection by the assessors, it cannot escape taxation. | Tax on income derived from real estate is "tax on real estate". | "Is a tax on income derived from real estate a "Tax on real estate"?" | Taxation - Memo # 718 - C - TM.docx | ROSS-003292309-ROSS-003292310 | SA, Sub | 0.96 | 0 | | 1 | 1 | 1 |
| 19439 | Griggs v. C & H Mech. Corp., 169 Md. App. 556 | 413+2 | LE section 9-736 governs "claims applications" for the type of "accidental personal injury" Griggs asserts. Sub-section 9-736(b)(3) states that, even if the employee complies with the requirement to notify the employer within 60 days of the accident, nevertheless, "if a covered employee fails to file a claim within 2 years after the date of the accidental personal injury, the claim is completely barred." [Emphasis added.] Ordinarily, a time limitation is deemed a condition precedent if it is affixed in the statute that creates the cause of action, whereas a statute of limitation must be pleaded as the affirmative defense of statute of limitations if the cause of action was previously negotiable either at common law or by virtue of another statute. Hanson v. Delaware State Comm'n, Inc., 123 F.2d 138, 140 (2d Cir.1998). Workers' compensation remedies are purely statutory in Maryland. See Richard P. Gilbert & Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook * 1.0 (2 ed.) (1993 & Supp. 2001). | Workers' compensation remedies are purely statutory. West's Ann.Md.Code, Labor and Employment, § 9-101 et seq. | Are workers compensation remedies purely statutory? | Workers Compensation - Memo #359 A MC .docx | ROSS-003035007-ROSS-003035008 | SA, Sub | 0.89 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19440 | ETrade Fin. Corp. v. Deutsche Bank AG, 420 F. Supp. 2d 273 | 25T+145 | When a contract contains both a broad disputes provision permitting lawsuits and also an arbitration requirement set forth in one narrow context, courts routinely limit the arbitration requirement to disputes arising squarely in that narrow context. See Cummings v. Fedex Ground Package, Inc., 404 F.3d 1258, 1262 (10th Cir.2005) (arbitration clause did not refer to "all disputes," but instead was "narrowly limit[ed] ... to specific disputes"); New Hampshire Ins. Co. v. Canali Reinsurance Co., Ltd., No. 03 CIV 8889, 2004 WL 769775, (S.D.N.Y. April 12, 2004) (contract's express permission that party could file lawsuit required arbitration clause to be limited to specific type of dispute); Fabry's SRL v. IFT Int'l, Inc., No. 02 CIV 9855, 2003 WL 21203405, (S.D.N.Y. May 21, 2003) (arbitration clause was narrow in scope, given contract's more sweeping disputes clause). Because certain of E*Trade's fraud, statutory, and breach of contract claims are outside the scope of " 2.06, the private disputes provision in " 2.06 is entirely inapplicable. | Limited arbitration clause in stock purchase agreement, which related to closing balance sheet of company being acquired, did not apply to compel arbitration of buyer's fraud, statutory, and breach of contract claims against seller that fell outside scope of arbitration clause, which instead were governed by agreement's general dispute resolution provision allowing for litigation of buyer's claims under agreement. | How will courts interpret a contract that contains a broad dispute resolution provision permitting lawsuits and a narrow arbitration requirement? | 007495.docx | LEGALEASE-00143155-LEGALEASE-00143156 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 19441 | Cardona Tirado v. Shearson Lehman Am. Exp., 634 F. Supp. 158 | 25T+148 | The third and last consideration is the situs for arbitration. Prudential Bache inexplicably assumes that arbitration must be held in the State of New York. A court must order "... to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. Sec. 4. In an apparent contradiction, section 4 also provides that "[t]he hearing and proceedings, under such agreement, shall be within the district which the petition for an order directing such arbitration is filed." Generally, the place of filing the petition"here Puerto Rico"determines the arbitration locale. Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391, 1394 (3rd Cir.1974).This seemingly parochial rule has an exception grounded on the robust federal policy honoring the parties' intentions in an arbitration agreement. Thus, where the parties have 1) expressly agreed to arbitrate in a particular place, and 2) the forum-selection clause is not unfair or unreasonable, a court cannot circumvent the clear intent of the parties. Snyder v. Smith, 736 F.2d 409, 419"20 (7th Cir.), cert. denied, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). | Generally, place of filing petition to compel arbitration under Federal Arbitration Act determines arbitration locale; however, court cannot circumvent clear intent of parties where they have expressly agreed to arbitrate in particular place and forum-selection clause is not unfair or unreasonable. 9 U.S.C.A. S 4. | Does the place of filing determine the arbitration locale? | 007628.docx | LEGALEASE-00143303-LEGALEASE-00143304 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 19442 | Montgomery v. Compass Airlines, 98 F. Supp. 3d 1012 | 231H+1549(14) | The Eighth Circuit recently concluded that FMLA claims, specifically, may be subject to a clear and unmistakable agreement to arbitrate. Thompson v. Air Transp. Int'l Ltd. Liab. Co., 664 F.3d 723 (8th Cir.2011). In Thompson, the Eighth Circuit found that "[e]mployment-related civil rights claims, like [the plaintiff]'s FMLA and [state civil rights act] claims, can be subject to a mandatory arbitration provision." Id. at 727 (emphasis added). The court found that such a waiver is permissible because it falls within the realm of concessions for which unions may bargain with employers, and, ultimately, "[a] waiver of a judicial forum is not a waiver of claims but instead a waiver of "only the right to seek relief from a court in the first instance." " Id. at 726"27 (quoting 14 Penn Plaza, 556 U.S. at 265"66, 129 S.Ct. 1456).As long as the plaintiff does not suffer a "complete loss of a forum," waiver of a judicial forum is permitted under a collective bargaining agreement. McNamara v. Yellow Transp., Inc., 570 F.3d 950, 957 (8th Cir.2009). | Provision of collective bargaining agreement (CBA), requiring the system board to hear and decide all grievances, and providing that its decisions were final and binding on the parties, required airline employee to submit FMLA claim against airline employer to system board for arbitration; CBA provision was clear and unmistakable waiver of judicial forum for the FMLA claim, as the CBA contained explicit statutory reference to the FMLA, wherein employer promised to comply with the FMLA, and CBA provision made arbitration of any claims arising under the terms of the CBA mandatory. Family and Medical Leave Act of 1993, S 2 et seq., 29 U.S.C.A. S 2601 et seq. | Is the waiver of judicial forum the same as a waiver of claims? | 007633.docx | LEGALEASE-00143330-LEGALEASE-00143331 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 19443 | Harmony Homes v. U.S. on Behalf of Small Bus. Admin., 936 F. Supp. 907 | 266+1406 | This Court is also persuaded by the fact that some courts have held "that delivery of the assigned bill or note is not essential to complete an assignment, particularly when there is an assignment separate from the instrument and such assignment is delivered." 11 Am.Jur.2d, Bills and Notes, " 367 p. 390 (1963). See O'Gasapianv. Danielson, 284Mass. 27, 187N.E. 107 (1933) (holding that assignment of note and mortgage, in statutory form and under seal, was effective to transfer assignor's interest in the note, even without indorsement or delivery); Buckman v. Hill Military Academy, 182 Or. 621, 189 P.2d 575 (1948). | Under Florida law, notes and mortgages were effectively assigned by assignor to bank, even though notes were not endorsed or delivered; assignment, signed by officer who had authority to make assignment, was recorded in county records, evidence showed assignor's intent to surrender control of notes and mortgages to bank, and assignor's counsel prepared reassignment of bank's interest to assignor. | Can a note be transferred without being endorsed? | 009567.docx | LEGALEASE-00142640-LEGALEASE-00142641 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 19444 | Brown v. Patella, 24 Cal. App. 2d 362 | 38+34 | The plaintiff had the note in court at the trial, and it was admitted in evidence. The plaintiff also offered in evidence a written ratification of the oral assignment made by the bank under the corporate seal; but this offer of evidence was erroneously rejected by the trial court. The finding of the court was, "that it is not true that the note referred to in the plaintiff's complaint was transferred and assigned to the plaintiff prior to the commencement of this action." All of the evidence is to the effect that the note was transferred and assigned to the plaintiff prior to the commencement of the action, and there is no evidence to the contrary. The finding of the court can be upheld only on the theory that an oral transfer or assignment of a promissory note is invalid. Such is not the law. An oral assignment of a promissory note is valid. Copp v. Mulcahy, 84 Cal.App. 387, 400, 258 P. 141; Oswald v. Schwartz, 181 Cal. 620, 624, 185 P. 959; Puterbaugh v. McCray, 25 Cal.App. 469, 144 P. 149. In Swing v. Lingo, 129 Cal.App. 518, at page 523, 19 P.2d 56, 58, the court said: "No difficulty is encountered in indulging in the assumption that the court drew the suggested inference because the assignment from respondent to Lingo was verbal. Section 1052 of the Civil Code specifically provides that a transfer may be made without writing in every case in which a writing is not expressly required by statute. It is therefore the general rule that, in the absence of a statute requiring that an assignment be in writing, it is immaterial whether it is made orally or by writing. [Citing cases.]" | An oral assignment of a promissory note is valid. | Are oral assignments of a promissory note valid? | 009570.docx | LEGALEASE-00142626-LEGALEASE-00142627 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 11645 | Skoglund v. Nat. Bank of Cheyenne, v. Crosby, 29 Wyo. 464 | 307+232 | Counsel and the trial court had in mind, perhaps, the case of [Sperry?] State Bank v. Neale v. National Bank, 24 Wyo. 423, 160 P. 1171, L.R.A. 1917E, 916... which case held first, under certain circumstances at least, the endorsement thereon, and further that the possession of a note by a party other than a payee is not prima facie evidence of ownership; but if not indorsed or transferred. But the case is not at all controlling in the case at bar for it is admitted in this case that the note was transferred to the plaintiff and, although the bank could presume a further transfer, but would rather presume that the transferor, who since [...] note. That was the rule prior to the adoption of the Negotiable Instruments Law... (see § 8.1 to 8.12, 3 R.C.L. 1383; O'Connor v. Slatter, 48 Wash. 493, 93 P. 1078; Johnson v. Beckley, 64 Utah, 43, 228 P. 189; Manhattan Chamber of Commerce v. Gallagher, 123 Kan. 615, 256 P. 140; Consolidated Plow Co. v. Brown, 251 Mass. 1, 146 N. E. 627; Maddox v. Robbert, 165 La. 694, 115 So. 905; Bartels v. Engel, Ct. App. ... 13 P.2d ...). | Note may be assigned without writing to assign transfer ownership to assignee and is valid, enable assignee to sue thereon without indorsement. | Does an assignment need to be in writing and endorsed? | Bills and Notes - Memo 573 - BK.docx | ROS5-00103604 ROS-ROS5-00103607 | Condensed, SA, SUB 0.94 | 0.94 | | 1 | 1 | 1 | 1 |
| 11646 | State Bank v. Gen. Mercantile Bank of New York, 248 N.Y. 428 | 307+481 | We need not choose between these alternatives, although it might well be held that Personal Property Law of New York (section 41) the claim could be transferred, even though the transfer was prohibited. Nonnegotiable certificates of deposit is an assignable in the absence of an agreement to the contrary (Quinn v. Whitney, 204 N. Y. 363, 97 N. E. 724 ...). There is no reason for holding the assignment unlawful or inoperative. Matter of Stumpf v. National Trading Bar & Paper Co., 226 N. Y. 313, 326, 123 N. E. 766. | Nonnegotiable certificates of deposit held assignable, in absence of agreement to contrary, in accordance with Personal Property Law (Consol Laws, c 41) § 41. | Are nonnegotiable certificates assignable? | 009606.docx | USGAELKIE-00165566- USGAELKIE-00165567 | SA, Sub 0.69 | 0.69 | | | | 1 | |
| 11647 | Mannoccio v. Turabichi, 16 Wash. App. 633 | 113+8 | The ultimate if we in the appellants' position lies in their failure to recognize that the appellants hold no legal rights of and to mineral in such people. Appellants' claim would arise legitimately to them rights owned in common by all of the people of the state. This is contrary to law, and it is elementary that no right can arise from a custom that violates the law. Myers v. Exchange Nat'l Bank, 96 Wash. 244, 255, 164 P. 951 (1917). | No rights can arise from a custom that violates the law. | May rights arise from a custom that violates the law? | 014255.docx | USGAELKIE-00165568- USGAELKIE-00165569 | Condensed, SA 0.88 | 0.88 | | 1 | | | |
| 11648 | State v. Pennzoil Co., 752 P.2d 975 | 260+73.1(8) | The word "production" has an additional legal meaning when used in a royalty or habendum clause of an oil and gas lease. "Production" requires severance of the mineral from the ground. Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50 (1956); Monsanto Company v. Tyrrell, supra; Gulf Oil Corporation v. Reid, 161 So. 2d, 327, 5 W.2d 247 (1960); [Jicks?] Oil and Gas Company v. Federal Power Commission, 267 F. 2d 622, 37 A.L.R.2d 211 (5th Cir. 1971), cert. denied 355 U.S. 956, 78 S.Ct. 542, 2 L.Ed.2d 532 (1958); Reece Petroleum Company v. United States Department of Interior, supra; Energy Oil Company, Inc. v. Montana Power Company, supra. | "Production" as used in royalty or habendum clause of oil and gas lease, requires severance of mineral from ground. | Does production require severance of the mineral from the ground or soil? | Mines and Minerals - Memo 8315 - C - EB.docx | ROS5-00328843 ROS-ROS5-00328841 | Condensed, SA 0.82 | 0.82 | | 1 | | | |
| 11649 | Gas Natural v. Smith, 137 Kan. 644 | 260+113 | The contention, as stated, cannot be true, for it would permit an owner to participate with those who contracted with him. It was held in Shepard v. Machine Co. v. [ ] Dillon, 30 Kan. 741, 1 P. 523 (1883), that "Oil and gas lien laws, like other liens laws of this state, are purely statutory, and as they confer special privileges, they should be strictly construed, so that, in determining to whom and for what a lien statute gives a lien, a strict construction should generally apply, but, after interpreting it to entire party has lien for a particular article, thing, then a liberal interpretation should generally be given as to its enforcement so as to make the security effective." | Parties furnishing casing and equipment to owner of oil and gas leasehold under contract giving him interest in leasehold held not entitled to lien to secure payment. Rev.St-Supp 1931, 55-207. | Do oil and gas liens confer special privileges? | 021339.docx | USGAELKIE-00142762- USGAELKIE-00142763 | Condensed, SA, Sub 0.73 | 0.73 | | 1 | 1 | 1 | 1 |
| 11650 | Walters v. Burns, 47.18B (La. App. 2 Cir. 12/6/23), 151 So. 3d 616 | 260+73.1(6) | The distinction is crucial. Although their right to the same surface owner has the duty to restore the surface to its original condition whereas the lessee has the duty to act to expand both to develop and operate the property as a reasonably prudent operator. In Marin, supra, the supreme court held that the "prudent operator standard" of Art. 122 incorporates the "duty to remediate oilfield contamination" if the lessee has operated "unreasonably or imprudently." | Surface owner using former oil and gas operator/lessee and owners for contamination of the land were entitled to add mineral servitude owners as defendants, while lessee had duty to act as reasonably prudent operator, mineral servitude owner had duty to restore surface to its original condition. LSA-R.S. 30:29, 31:11(A), 31:22, 31:122; LSA-C.C.P. art. 1151. | Does a duty to remediate oilfield contamination exist under the prudent operator standard? | 021342.docx | USGAELKIE-00142788- USGAELKIE-00142789 | Condensed, SA, Sub 0.21 | 0.21 | | 1 | 1 | 1 | 1 |
| 11651 | Locke v. White, 792 S.W.2d 485 | 260+55(7) | The royalty interest conveyed in the Mayes'/Locke' deed is not the same as the "mineral interest" found in Alford. An interest in minerals in place includes the right to use the surface to explore for and develop the grantor's mineral interest and becomes a nonpossessory interest in minerals, recordable and severable, and leaving to its owner an interest in real property. See Dyer/Field v. Hogg, 134 Tex. 396, 77 S.W.2d 215 (1934). | The incidents of ownership of a severed fee estate of minerals in place and rights and egress, bonus payments, delay rentals, and royalties, can be conveyed separately and become estates apart from the others, the incident of executive rights cannot. | Are the interest in minerals in place and an interest in royalty separate and distinct estates in land? | 021399.docx | USGAELKIE-00141476- USGAELKIE-00141479 | Condensed, SA, Sub 0.56 | 0.56 | | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19452 | Bargsley v. Pryor Petroleum Corp., 196 S.W.3d 823 | 30+3348 | Bargsley relies upon Utley v. Marathon Oil Co., 31 S.W.3d 274 (Tex.App.-Waco 2000, no pet.). Utley involved a continuous operations clause which referred to "operations for drilling, mining, or reworking." In its instructions to the jury, the trial court defined "operations" as "actual work being done in a good faith endeavor to cause a well to produce oil and/or gas in paying quantities." Id. at 278. There was no objection to the instruction. The Waco Court of Appeals reviewed the evidence in light of that instruction and found no "reason to disturb the [jury's] finding." Id. at 279. However, even though there was some evidence regarding construction of a pipeline, the court specifically stated that it did not reach the issue of whether such construction constituted "operations." Id. at 280. Further, the lease in this case did not refer simply to "operations" or to "reworking operations." Bargsley was not engaged in drilling operations at the end of the primary term, and the trial court did not err if it so held in its partial summary judgment. | Abuse of discretion standard of review applied to Court of Appeals' review of trial court's jury instruction regarding placement of burden of proof on issue of whether oil and gas lease was producing in paying quantities at end of primary term of lease, for purposes of determining whether lease had terminated. | How has the court defined operations? | Mines and Minerals - Memo #215 - C - EB.docx | ROSS-003287532-ROSS-003287533 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 19453 | Skopp v. Weaver, 16 Cal. 3d 432 | 302+11 | This conclusion brings us to defendants' further contention: that plaintiffs have not clearly alleged facts explaining how the agency relationship between them and defendants arose. We have already noted, however, that an allegation of agency as such is a statement of ultimate fact. Consequently further allegations explaining how this fact of agency originated become unnecessary. | Since allegation of agency is a statement of ultimate fact, it is not necessary to plead how the fact of agency originated. | Is an allegation of agency as such a statement of ultimate fact? | 023474.docx | LEGALEASE-00142502-LEGALEASE-00142503 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 19454 | Perry v. GRP Fin., 196 N.C. App. 41 | 25T+491 | We see no reason to distinguish an award of sanctions under N.C. Gen.Stat. " 7A"38.1 and Rule 5 from sanctions awarded under Rule 11, Rule 37, and N.C. Gen.Stat. " 6"21.1, all of which require a finding of reasonableness. Defendants concede in their brief that "awards of attorneys' fees typically require some finding that the expenses were incurred and were reasonable," but argue that under Dyer v. State, 331 N.C. 374, 416 S.E.2d 1 (1992), the trial court's findings were sufficient to support its award. | An award of sanctions, under mediation statute providing that "(a)ny person required to attend a mediated settlement conference who, without good cause, fails to attend. shall be subject to any appropriate monetary sanction, " requires a finding of reasonableness of the amount. West's N.C.G.S.A. S 7A-38.1. | Does an award of sanctions require a finding of reasonableness? | 033508.docx | LEGALEASE-00142165-LEGALEASE-00142166 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 19455 | Case v. Galesburg Cottage Hosp., 227 Ill. 2d 207 | 307A+560 | The issue before us is whether the circuit court erred when it granted defendant motion to dismiss plaintiff complaint based on violation of Supreme Court Rule 103(b). A court may consider many factors when determining whether to allow or deny a Rule 103 (b) motion, including, but not limited to: (1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff knowledge of defendant location; (4) the ease with which defendant whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances that would affect plaintiff efforts; and (7) actual service on defendant. Segal v. Sacco, 136 Ill.2d 282, 286, 144 Ill.Dec. 360, 555 N.E.2d 719 (1990). There is no specific time limitation provided by Rule 103 (b). Rather, a court must consider the passage of time in relation to all the other facts and circumstances of each case individually. Segal, 136 Ill.2d at 285"86, 144 Ill.Dec. 360, 555 N.E.2d 719. A ruling on a motion to dismiss pursuant to Rule 103 (b) will not be disturbed absent an abuse of discretion. Womick v. Jackson County Nursing Home, 137 Ill.2d 371, 376, 148 Ill.Dec. 719, 561 N.E.2d 25 (1990). | There is no specific time limitation, in rule allowing dismissal based on plaintiff's failure to exercise reasonable diligence to obtain service on defendant; rather, trial court must consider passage of time in relation to all other facts and circumstances of each case individually. Sup.Ct.Rules, Rule 103(b) (2006). | Is there no specific time limitation provided by Rule 103 (b)? | 033760.docx | LEGALEASE-00142551-LEGALEASE-00142552 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 19456 | In re Dunn, 225 N.C. App. 43 | 106+40 | "It is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court suasponte." State v. Webber, 190 N.C.App. 649, 650, 660 S.E.2d 621, 622 (2008); see also State v. Morrow, 31 N.C.App. 592, 593, 230 S.E.2d 182, 183 (1976) ("It should be noted that this jurisdictional question was not raised before the able trial judge, nor was it raised in the briefs filed in this court. Nevertheless, where the lack of jurisdiction is apparent on the record, this court must note it ex meromotu."). Where the court lacks jurisdiction, dismissal is appropriate.Burgess v. Gibbs, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964). | Where the court lacks jurisdiction, dismissal is appropriate. | "Where the court lacks jurisdiction, is dismissal appropriate?" | 033807.docx | LEGALEASE-00142388-LEGALEASE-00142389 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 19457 | Koski v. Johnson, 837 N.W.2d 739 | 233+1765(2) | Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of process must be satisfied." " Uthe v. Baker, 629 N.W.2d 121, 123 (Minn.App.2001) (quoting Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987)). "Absent proper service of process or a waiver thereof, the district court must dismiss the action." Shamrock Dev., Inc. v. Smith, 737 N.W.2d 372, 377 (Minn.App.2007), rev'd on other grounds, 754 N.W.2d 377 (Minn.2008); see also Coleman, 793 N.W.2d at 302 (indicating that "improper service" causes a "lack of personal jurisdiction") | Residential tenant did not waive defense that court lacked personal jurisdiction over her in eviction action, based on landlord's allegedly improper service of process, even though tenant participated in litigation by moving for dismissal on grounds of improper service, filing answer, moving for summary judgment, and asserting defenses on the merits; tenant filed answer and motion for summary judgment at the same time she asked court to rule on her motion to dismiss for improper service, and there was no evidence that tenant acquiesced to court's jurisdiction. | "Absent proper service of process or a waiver thereof, must the district court dismiss the action?" | Pretrial Procedure - Memo # 6317 - C - PB.docx | ROSS-003289158-ROSS-003289159 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19458 | Pelletier v. Pathiraja, 519 A.2d 187 | 92+3989 | In Reeves v. Travelers Insurance Companies et al., 421 A.2d 47, 50 (Me.1980), we declared, "[I]n exercising its discretion under Rule 16(d) or 37(b)(2), the trial court must answer three questions: (1) whether to impose a sanction; (2) upon whom-party or counsel, or both-to impose the sanction; and (3) what sanction to impose." Id. at 50. As the Court noted, the answers will depend upon the particular circumstances and is dependent upon the functions to be served by the sanction. The functions to be served may be several; to penalize non-compliance, remedy the effects of non-compliance, and to serve as a deterrent. Furthermore, appellate review of the sanctions chosen under either rule applies an "abuse of discretion" standard; accordingly, we shall not lightly overrule the trial court's choice of sanctions. Id. See also Oliver v. Martin, 460 A.2d 594, 595 (Me.1983); Lerman v. Inhabitants of City of Portland, 406 A.2d 903, 904 (Me.1979), cert. denied, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Nevertheless, due to the severity of a dismissal or default, and the constitutional implications of such an action, we have observed that the trial court's discretion in imposing either ultimate sanction is narrow indeed and will be given close scrutiny on appeal. Fallon v. Casco-Northern Corporation, 462 A.2d 53, 56 (Me.1983); Ireland v. Galen, 401 A.2d 1002, 1004 (Me.1979). | Dismissal of patients' medical malpractice claims, as sanction for failure to comply with discovery order, did not violate patients' due process rights, where patients had been given extensions to comply with discovery order and where patients had been warned that noncompliance would result in dismissal; rules and procedure applied by the trial court provided patients with all the process that was their due. Rules Civ.Proc., Rules 16, 37(b)(2)(C); U.S.C.A. Const.Amends. 5, 14. | Can the functions to be served by imposing a sanction for failure to comply with the requirements of the rule governing pretrial procedure be several? | 033843.docx | LEGALEASE-00142991-LEGALEASE-00142992 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 19459 | ACLU of NM v. City of Albuquerque, 137 P.3d 1215 | 307A+552 | The repeal of SOAP, followed by the enactment of HB 165 renders SOAP moot. The doctrine of mootness "is a limitation upon jurisdiction or decrees in cases where no actual controversy exists." Mowrer v. Rusk, 95 N.M. 48, 51, 618 P.2d 886, 889 (1980). "[A]n action will be dismissed if the issues ... become moot." Id. "We must review the judgment of the [d]istrict [c]ourt in light of [the] law as it now stands, not as it stood when the judgment below was entered." Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc., 404 U.S. 412, 414, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) (per curiam); see also Kremens v. Bartley, 431 U.S. 119, 126"27, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) (holding that enactment of a new statute repealing provisions declared unconstitutional in the court below renders claims on appeal moot). | An action will be dismissed if the issues become moot. | Will an action be dismissed if an issue is or has become moot? | 034220.docx | LEGALEASE-00143193-LEGALEASE-00143194 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 19460 | Columbus Green Bldg. Forum v. State, 980 N.E.2d 1 | 106+472.1 | he issue of subject-matter jurisdiction involves "a court's power to hear and decide a case on the merits and does not relate to the rights of the parties." Vedder v. Warrensville Hts., 8th Dist. No. 81005, 2002-Ohio-5567, 2002 WL 31320350. In considering whether to dismiss a claim for lack of subject-matter jurisdiction, a trial court "must determine whether the claim raises any action cognizable in that court." Milhoan v. E. Loc. School Dist. Bd. of Edn., 157 Ohio App.3d 716, 2004-Ohio-3243, 813 N.E.2d 692, (4th Dist.). We review a dismissal for lack of subject-matter jurisdiction de novo. Moore v. Franklin Cty. Children Servs., 10th Dist. No. 06AP"951, 2007-Ohio-4128, 2007 WL 2306970. | Not every claim seeking monetary relief is a claim for money damages, so as to be within the exclusive, original subject matter jurisdiction of the Court of Claims; even where a claimant seeks relief that will ultimately result in the payment of money by the state, a cause of action will sound in equity if money damages is not the essence of the claim. R.C. S 2743.03(A)(1, 2). | "In considering whether to dismiss a claim for lack of subject matter jurisdiction, should a trial court determine whether the claim raises any action cognizable in that court?" | Pretrial Procedure - Memo # 6729 - C - KG.docx | ROSS-003303315-ROSS-003303316 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 19461 | State v. Pettijohn, 541 S.W.2d 74 | 352H+259 | If evidence of penetration is required, then it is clear, as the State concedes, that there is no direct evidence of penetration in the case at bar. Penetration or insertion, however, need not be proved by direct evidence. As in rape, penetration in sodomy can be proved by circumstantial evidence. State v. Hamilton, 304 Mo. 19, 263 S.W. 127 (1924). "Evidence of the condition, position, and proximity of the parties as testified to by eyewitnesses may afford sufficient evidence of penetration to support a charge of sodomy by cunnilingus, and evidence of penetration beyond the lips of the pathic is sufficient to show penetration supporting a charge of sexual perversion." 81 C.J.S. Sodomy s 5, p. 377 (1953). | As in rape cases, penetration in a sodomy prosecution can be proved by circumstantial evidence. | Can penetration in sodomy be proven by circumstantial evidence? | 043098.docx | LEGALEASE-00143444-LEGALEASE-00143445 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 19462 | People v. Commonwealth Edison Co., 367 Ill. 260 | 92+2429 | A brief recurrence to the fundamental principles of our government may not be amiss. The three departments, legislative, executive and judicial, in the aggregate, constitute what we are pleased to call the government. Each is supreme in its own realm. Neither, constitutionally, may venture to function in the sphere of the other departments. It is the province of the judiciary to construe the law and not to undertake to assume the power of the legislative branch of the state. The legislature cannot confer the power to tax on either the executive or judicial branch of the government. Cooley on Taxation (3d Ed.) p. 47. Section 1 of article 9 of our Constitution imposes on the General Assembly the duty of raising such revenue as may be needful by levying a tax by valuation, "such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise." This provision of the Constitution, in no unmistakable terms, reposes the power to determine values for taxation purposes solely in the legislative branch of the government through such elective or appointive officers as it may resolve by legislative edict. Under its provisions the judiciary has no jurisdiction to value property for taxation purposes. That power is reposed in the taxing instrumentalities provided by the General Assembly. Republic Life Ins. Co. v. Pollak, 75 Ill. 292; Carr v. People, supra; School Directors v. School Directors, 232 Ill. 322, 83 N.E. 849; Central Illinois Public Service Co. v. Swartz, supra. | The Legislature cannot confer power to tax on executive branch of government. | Can the executive branch levy new taxes? | 045274.docx | LEGALEASE-00142930-LEGALEASE-00142932 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 19463 | Minot Special Sch. Dist. No. 1 v. Olsness, 53 N.D. 683 | 360+127 | That it delegates to the commissioner of insurance the power to impose a tax upon the state, and the counties, cities, and political subdivisions of the state. | Statute creating state fire and tornado fund held not unconstitutional as delegating taxing power to commissioner of insurance (Laws 1919, c. 159). | Does the insurance commissioner have the power to tax? | 045279.docx | LEGALEASE-00142916-LEGALEASE-00142917 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,973 | 22,876 | 9,029 |
| 19464 | Tyson Foods v. Dept of Treasury, 276 Mich. App. 678 | 371v2055 | The Department of Treasury is responsible for the collection of taxes. MCL 205.1(1). To state may impose a tax only if the tax is expressly authorized by law. Mather v. Dep't of Treasury, 44 Mich. 537, 543, 505 N.W.2d 244 (1993). The authority to tax derives from the Legislature, which requires single business taxpayers to file tax returns and remit tax payments. MCL 208.73; MCL 208.75. The SBTA provides that administration of the single business tax is governed by the revenue act, MCL 205.1 to MCL 205.30, MCL 208.80(1). According to the revenue act, MCL 205.23 through MCL 205.30 govern the "procedures for administration, audit, assessment, interest, penalty, and appeal" for all taxes, including the single business tax. MCL 205.20. Thus, the question is whether the relevant sections of the revenue act permit defendant to issue a second assessment to a taxpayer for the same tax period in order to recoup all the single business taxes lawfully owed to the state by the taxpayer. We conclude that they do. | State may impose a tax only if the tax is expressly authorized by law. | When can a state impose a tax? | 04283.docx | LEGALEASE-00142901-LEGALEASE-00142902 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 19465 | Pourier v. Bd. of City Commr's of Shannon Cty., 83 S.D. 235 | 371v2063 | The power of a state to tax is coextensive with its sovereignty. Inasmuch as property rights are subjects of taxation. M'Culloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579. Presently, this state's jurisdiction and power to legislate and control tribal Indians and their property on or within their reservation is minimal. United States v. Temple, 61 I.S. 324, 94 Ct. 2d 547. The primary and exclusive power of the Federal Government to regulate Indian affairs are recognized everywhere by the courts. In considering another phase of state taxation affecting Indians. Employment Sec. Dept. v. Cheyenne River Sioux Tribe, 80 S.D. 73, 119 N.W.2d 285. It follows, according to an acknowledged authority on Indian law, that "Indians and Indian property on an Indian reservation are not subject to State taxation except by virtue of express authority conferred upon the State by act of Congress." Federal Indian Law, 1958 Ed., p. 845. | Nonexemption of Indians from Federal income taxation is without significance as to power of state to tax personal property owned by tribal Indians and located within their Indian reservations. | Can the state tax Indians at their property on reservation? | 04307.docx | LEGALEASE-00143006-LEGALEASE-00143007 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | 1 |
| 19466 | High Tide Seafoods v. State, 106 Wash. 2d 695 | 371v3249 | If a tax is imposed on the value of the property, it may be a property tax. If it is levied upon the privilege of doing business, it is an excise tax. Cliffside State, 76 Wash. 2d 4, 449 P.2d 540 (1970). A tax for the beneficial use of property is distinguished from a tax on property itself has long been established. See United States v. City of Detroit, 355 U.S. 466, 78 S.Ct.142, 2 L.Ed.2d 424 (1958). | If tax is imposed upon value of property, it may be a "property tax." If levied upon privilege of doing business, it is an "excise tax." | Is tax imposed upon value of property called a "property tax"? | 04557b.docx | LEGALEASE-00142264-LEGALEASE-00142265 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | 1 |
| 19467 | Bullock v. Earle M. Jorgensen Co., 613 S.W.2d 12 | 371v2133 | The real question is whether appellee, as a Delaware corporation, should receive credit for the franchise tax paid by Earle M. Jorgensen Co., as a California corporation, on or before June 15, 1975, some fifteen days prior to the merger with appellee. Appellants assert that the trial court erred in holding that the doctrine of continuity and/or the Texas Business Corporation Act prohibited the power to of a franchise tax by each of two merging corporations for the same franchise tax year. In making the assertion appellants rely upon Tex. Bus. Corp. Art. 12.02, et seq., and point out that as of May 27, 1975, two corporations Earle M. Jorgensen Co., a California corporation, and The ENG Company, a Delaware corporation, had qualified to do business in Texas and a franchise taxes are due and payable in advance for an entire year, the tax was correctly assessed as being owed by each corporation for the entire year. Appellants point out that the power to do business was extended to both corporations and that the taxes were charges made by the State against each of the corporations for the privilege of doing business in the state. General Dynamics Corporation v. Bullock, 547 S.W.2d 255 (Tex.1976), cert. denied, 434 U.S. 1009, 98 S.Ct. 717, 54 L.Ed.2d 751 (1978). Reynolds Development Corp. v. Sheppard, 241 S.W.2d 254 (Tex.Civ.App. Austin 1951, writ ref'd). Houston Oil Company of Texas v. Lawson, 175 S.W.2d 783 (Tex.Civ.App. Galveston 1943, writ ref'd). Whether the privilege to transact business within the state is actually utilized is not material insofar as the franchise tax is concerned. Tex.Tax-Gen. art. 12.01(1). | Franchise tax is a charge made by the state against a corporation for the privilege of doing business in the state, and whether the privilege is actually utilized is not material. V.A.T.S. Tax-Gen. arts. 12.01 et seq., 12.01(1) | What is a "franchise tax"? | 04362.docx | LEGALEASE-00142965-LEGALEASE-00142966 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19468 | Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes, 336 F.2d 354 | 25+178 | We hold that the district court had in personam jurisdiction to enter the order compelling arbitration... [judicial opinion text] | Implicit in agreement to arbitrate is consent to enforcement of that agreement. | Is consent to enforce the agreement to arbitrate implicit? | 007668.docx | LEGALEASE-00164775-LEGALEASE-00164776 | Condensed, SA | 0.96 | 0 | 1 | | 1 | |
| 19469 | Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691 | 25+182(1) | Waiver of a contractual right to arbitration is not favored... [judicial opinion text] | Waiver of contractual right to arbitration is not favored. | Do the courts favor waiver of a contractual right to arbitration? | Alternative Dispute Resolution - Memo 066 - RE.docx | ROSS-003290738-ROSS-003290739 | SA, Sub | 0.96 | 0 | | 1 | | |
| 19470 | Balkour v. Vaccex Sec., 152 F. Supp. 3d 1091 | 25+182(1) | Balkour finally argues that waivers of the right to arbitrate P's W... [judicial opinion text] | A waiver of the right to arbitrate can be express or implied. | Can a waiver of the right to arbitrate be express or implied? | Alternative Dispute Resolution - Memo 066 - 003290741.docx | ROSS-003290740-ROSS-003290741 | Condensed, SA | 0.93 | 0 | 1 | | | |
| 19471 | In re Amber M., 184 Cal. App. 4th 1223 | 34+16(1) | Without excluding other possible methods of valuation, we agree that... [judicial opinion text] | The Servicemembers Civil Relief Act (SCRA) applies to juvenile dependency proceedings. Servicemembers Civil Relief Act, § 1(a), 50 App.U.S.C.A. § 501. | Does the SCRA apply to juvenile dependency proceedings? | 008651.docx | LEGALEASE-00164472-LEGALEASE-00164473 | Condensed, SA, Sub 0.21 | | 0 | 1 | 1 | 1 | |
| 19472 | United States v. Robinson, 663 F.3d 265 | 63+1(1) | Without excluding other possible methods of valuation, we agree that... [judicial opinion text] | For purposes of establishing threshold amount to support charge for violating statute prohibiting bribery intended to influence an organization that received federal funds in excess of $10,000 in one-year period, amount of bribe may suffice as proxy for value. 18 U.S.C.A. § 666(a). | Can the amount of the bribe be considered a proxy for value? | 011397.docx | LEGALEASE-00165663-LEGALEASE-00165664 | Condensed, SA, Sub 0.77 | | 0 | 1 | 1 | 1 | |
| 19473 | State v. O'Connor, 299 | 6+7 | K.S.A. 21-3715 classifies subsection (a) burglaries, i.e., dwelling burglaries... [judicial opinion text] | If the building that was burglarized is a dwelling, the crime that formed the basis for an out-of-state conviction for burglary is classified as a person felony; for sentencing purposes; if not, it is a nonperson felony. K.S.A. 21-3715, 21-4711(e) (Repealed). | Is burglary of a person a dwelling a felony? | 012880.docx | LEGALEASE-00164849-LEGALEASE-00164853 | Condensed, SA, Sub 0.35 | | 0 | 1 | 1 | 1 | |

Appendix D

3412

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19474 | Brand v. State, 563 So. 2d 794 | 110+1871 | Regarding appellant's failure to raise the defense of voluntary intoxication to the offense of burglary with assault, ... | Trial counsel, who relied on defenses to burglary and attempted sexual battery charges that defendant's entry into home was voluntary and that alleged victim initiated fight, was not ineffective in failing to request instruction on voluntary intoxication where there may have been warranted by evidence; jury returned verdict of not guilty on attempted sexual battery count, although the defendant was convicted of burglary; and only burglary, as specific intent crime, was amenable of intoxication defense. U.S.C.A. Const.Amend. 6. | Is intoxication a defense to burglary? | 01884.docx | LEGALEASE-00148453 LEGALEASE-00148454 | Condensed, SA, Sub | 0.47 | 0 | | 1 | 1 | |
| 19475 | Colvin v. State, 676 So. 2d 1046 | 67+15 | The state's argument is that the appellant did not have consent to enter the alcove because no one had permission to enter the alcove for the purpose of doing wrong from therein. But the premises are still open to the public or they are not, and the fact that person with criminal intent have not been given permission to enter has no effect on whether premises are open to the public. Otherwise, every time a person enters a structure that was open to the public with the intent to commit a crime, the person would be committing a burglary as would an electric meter reader with the express language of section 810.02(1). As the court in Ray v. State, 522 So.2d 963 (Fla.1st DCA) rev denied, 531 So.2d 168 (Fla.1988), observed Happily we need not concern ourselves with the potential absurdum of a shoplifting offense to a burglary. This is so because Section 810.02, ... | Fact that persons with criminal intent have not been given permission to enter has no effect on whether premises are open to the public, and thus within affirmative defense to charge of burglary of structure. West's F.S.A. § 810.02(1). | What are the different defenses to burglary? | Burglary - Memo (22) 58.docx | ROSS-003260827-ROSS-003260829 | SA, Sub | 0.82 | 0 | | 1 | 1 | |
| 19476 | Gray v. State, 163 Ga. App. 720 | 67+15 | We cannot agree with counsel that theft by taking constitutes an affirmative defense to a burglary prosecution. Code Ann. s 26-601, 26-601, defines burglary as entering or remaining inside a building "without authority and with the intent to commit a felony or theft therein." See Inglis v. State, 153 Ga. App. 700, 266 S.E.2d (264) (1980); Murphy v. State, 238 Ga. 725, 234 S.E.2d 911 (1977). (Intent, of course, is a jury question. Code Ann." 26-601.) therefore, proof on authorized entry into the building without the authority to commit therein the intent to commit a felony or theft therein, would be sufficient to convict defendant. An affirmative defense is, as pointed out in the prior opinion, mistake of ... | Only authorized entry into building or mistake of fact would be affirmative defense to charge of burglary. Code, §§ 26-601, 26-1601. | What are the different defenses to burglary? | 01290-1.docx | LEGALEASE-00146868-LEGALEASE-00146869 | Condensed, SA, Sub | 0.77 | 0 | | 1 | 1 | |
| 19477 | Johnson v. Fields, 817 N.W.2d 132 | 12H+678 | Although we have said the primary purpose in construing a deed is to ascertain and effectuate the grantor's intent, Gaertula v. Poirier, 2002 ND 125, ¶ 6, 656 N.W.2d (662), "deeds that convey mineral interests are also subject to the general rules governing contract interpretation, and we construe contracts to give effect to the mutual intentions." Id. at ¶ 9. (a contract is ambiguous when rational arguments can be made for different interpretation.) Id. Whether a deed is ambiguous is a question of law... | The subsequent conveyance under the warranty deed after the terms of a "contract for deed" have been met does not create a new right, but rather perfects the right existing under the contract and gives effect to the parties' intent by perfecting title relating back to the date of the contract. | Are deeds that convey mineral interest subject to the general rules governing contract interpretation? | 01492.docx | LEGALEASE-00145023-LEGALEASE-00145024 | SA, Sub | 0.58 | 0 | | 1 | 1 | |
| 19478 | Chitra v. Bahri County Reservoir Prod. Co., 60 Wyo. 235 | 260+38(1,5) | After the claim was perfected the location thereof constituted a grant among themselves as to what each should receive for their respective interests therein. So long as they were satisfied and fair to know anyone interest in locating mineral claims to obtain more ground than the law allows is a species of fraud upon the government. And must be proven by clear, satisfactory and convincing evidence. We do not find such a situation presented by this record. | Evidence sustained finding that locators of bentonite placer mining claims were not "dummies" for a foreign corporation to enable it to obtain title to more bentonite ground than it was legally authorized to locate. | Is the use of dummies in locating mineral claims to obtain more ground than the law allows a species of fraud? | 01496.docx | LEGALEASE-00145025-LEGALEASE-00145030 | Condensed, SA, Sub | 0.56 | 0 | | 1 | 1 | |
| 19479 | Clark v. Brown, 15 Vt. 658 | 307A+74 | We contend that this is a sufficient designation of the time of the session of the court. It has often been decided in this state that a substantial compliance with the requirements of the statute regarding depositions is sufficient. The terms for holding the session of the county court are fixed by law, and the deposition in question was taken to be used at the next succeeding term of said court. In the case of Smith v. Wood, 3 Vt. R. 485, the court decided that an equate deposition, filed with the clerk less than 30 days before court, but remaining there through the term, and till the succeeding term of the court, was therefore had, the case of Poe v. Spalding, 4 at 11 Vt. R. 505, Reports that decided that where the omission of the deponent's name in the caption and superscription, is not a valid objection to a deposition, and in the case of Houghton v. Slack 10 Vt. R. 520, that the omission of the deponent's place of residence, in the caption and... | Are ex parte depositions need not be filed 30 days before the session of the court next after it is taken, when a term of court interevenes between the time of taking and using of the same. | "Can an expert deposition filed with the clerk less than 30 days before court, but remaining there through the term, and till the succeeding term of the court, be read?" | Pretrial Procedure - Memo 8 575 - C - VP.docx | ROSS-003291350-ROSS-003291351 | Condensed, SA, Sub | 0.83 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19480 | Ali Akbar Associates v. Glynn, 776 So. 2d 798 | 307A-746 | A default is the most serious sanction that can be imposed on a defendant. Accordingly, it should be reserved for occasions where the lesser sanctions would not serve the interests of justice. ... and that their failure to obey the August 11, 1997 order was flagrant in any way. | Default is the most serious sanction that can be imposed on a defendant. | Is default the most serious sanction that can be imposed on a defendant? | 03A202.docx | LEGALEUE 00147222 / LEGALEUE 00147223 | SA, Sub | 0.91 | | | 1 | 1 | 1 |
| 19481 | In re Clemes, S.A. etc C.V., 167 S.W.3d 891 | 30-122 | If the pleadings do not affirmatively demonstrate the trial court's lack of subject matter jurisdiction, but do not negate it outright, then the plaintiff ought to be afforded the opportunity to amend once the issue is one of pleading sufficiency. Id. at 227. If, however, the pleadings affirmatively negate jurisdiction, the trial court may grant the plea to the jurisdiction or the motion to dismiss without allowing the plaintiff an opportunity to amend. Id. The trial court may also consider evidence when determining a plea to the jurisdiction or a motion to dismiss, and must do so when necessary to resolve the question of subject matter jurisdiction. Id. | Whether a trial court has subject matter jurisdiction is a question of law. | "Should a trial court consider evidence in determining a plea to subject matter jurisdiction, and must do so when necessary to resolve the question of subject matter jurisdiction?" | 03A375.docx | LEGALEUE 00140019- / LEGALEUE 00140020 | Condensed, SA | 0.84 | 0 | 0 | | 1 | |
| 19482 | State ex rel. Plaster v. Pinnell, 831 S.W.2d 949 | 313-48 | Generally, when there is no jurisdiction over the person of the defendant, the cause should be dismissed for further action. State v. Valentine, 365 Mo. 144, 1179, 195 S.W.2d 612 (1956). When the requirements for manner of service are not met, the court acquires no jurisdiction over the defendant. Meinhart v. Arroyos, 503 Mo. 309, 1165 S.W.2d 464, 407(3, 4(1942); Moore v. Christian Fidelity Life Ins. Co., 687 S.W.2d 210, 213 (Mo.App. 1985). Actual notice is not sufficient. Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763, 769 (1954); Burcham v. Burcham, 572 S.W.2d 494, 497(Mo.App.1978). This proper procedure applies only for defendant receiving improper service of process, is a motion to quash service, not a motion to dismiss. State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876(1) (Mo. Banc 1982); Moore v. Christian Fidelity Life Ins. Co., supra; 687 S.W.2d at 211, n. 1; State ex rel. Caress v. McMahon 104 S.W.2d 703, (Mo App 1986). | Court lacks power to adjudicate when requirements for manner of service are not met; actual notice is not sufficient. | Can a defendant who is otherwise subject to a court's jurisdiction seek dismissal based on a claim that service was not properly effectuated? | 03A689.docx | LEGALEUE 00144141- / LEGALEUE 00144142 | Condensed, SA, Sub | 0.87 | | | 1 | | 1 |
| 19483 | Middleton v. Hager, 179 So 3d 529 | 307A-563 | In Ivannov v. Murphy, 723 So. 2d 892, 895 (Fla. 3d DCA 1998), this court observed that "[o]ur courts have often recognized and enforced the principle that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to enjoy the very institution it has subverted to achieve her ends." Importantly, the "trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court." Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998). However, "[b]ecause dismissal sounds the 'death knell of the lawsuit,' courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. (quoting Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993)). Thus, "[w]hen reviewing a case for fraud, the court should 'consider the proper mix of factors' and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system." Id. (quoting Aoude, 892 F.2d at 1118. But "where a party lies about matters pertinent to his own claim, or a portion of it, and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper." Id. at 47. There is no dispute that the lies told by Middleton that she had been treated negligently and/or by an accident were sufficiently serious so as to warrant dismissal. The lies Middleton told by claiming she had injuries from a car accident nor the lies Middleton claimed for damages to the car were related to the claim, however, that the trial court substituted its judgment for that of the magistrate and improperly reweighed the evidence in determining that dismissal with prejudice was warranted. | Trial court did not abuse its discretion in rejecting conclusion of magistrate, to whom court referred motorist's motion to dismiss for fraud upon the court, that fatal accident with passenger's numerous affirmative lies and misrepresentations did not "go to the heart" of establishing a deliberate scheme to subvert the judicial process, and thus properly granted motion to dismiss, where motorist's actual or threatened collision with prejudice; court determined that magistrate's findings were supported by competent substantial evidence, and that the fraud's pervasiveness related to an array of issues about her... involvement in a prior automobile collision and/or her treatment for injuries, which were substantially the same as those allegedly suffered in instant case. West's F.S.A. RCP Rule 1.490. | "When reviewing a case for fraud upon the court, should the court consider the proper mix of factors and carefully balance a policy favoring adjudication on the merits?" | 03A003.docx | LEGALEUE 00143737- / LEGALEUE 00143738 | Condensed, SA, Sub | 0.56 | 0 | | 1 | 1 | 1 |
| 19484 | News & Observer Pub. Co. v. Coble, 128 N.C. App. 307 | 307A-552 | In this context, mootness arises "[w]henever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue." In re Peebles, 79 N.C.App. 1, 436 S.E.2d 8. As a result, "[t]hough an action originally may be properly instituted, subsequent events may render the questions moot." In re Peebles, 79 N.C. App. 2, 439 S.E.2d 8. As a result, "[t]hough an action originally may be properly instituted, subsequent events may render the questions moot." Thus, "the general rule in North Carolina, as elsewhere, is that an appeal presenting a question which has become moot will be dismissed." Id. To be actionable, there remains a live issue, in controversy. State ex rel. Utilities Commission v. Southern Bell Tel & Tel. Co., 289 N.C. 286, 289, 221 S.E.2d 322, 327(1976). When an action has become moot, the court should dismiss it. Id. | When action has become moot, case should be dismissed. | Should an action be dismissed when action has become moot? | Pretrial Procedure - Memo #7364 - C - VA_58359.docx | ROSS-003028186-ROSS-003028287 | SA, Sub | 0.87 | | | 1 | 1 | 1 |
| 19485 | United States v. Menendez, 132 F. Supp. 3d 610 | 335-212(3) | Are the allegations of Senator Menendez's advocacy in the Dominican contract dispute and his support for Melgen's interest in ... indictment need not allege the actual performance of an official act to adequately plead bribery, Brewster, 408 U.S. at 525, 92 S.Ct. 2531, [ ] Senator Menendez correctly argues that the Government must do more than an explicit quid pro quo agreement for the $40,000 contribution. Mot. to Dismiss 22, 36. This Government errs. Although official acts need not be proven, the allegations ... (at 22-27). The Government must therefore demonstrate a quid pro quo agreement. And so the challenged allegations are necessary to support the bribery charges. | Should an indictment of bribery allege the actual performance of an official act to adequately plead bribery? | Bribery - Memo #866- C - RS164 .docx | ROSS-003202183-ROSS-003202184 | Condensed, SA, Sub 0.17 | | 0 | 1 | 1 | 1 |
| 19486 | Cisneros v. Corn., 27 S.W.3d 677 | 67+4 | The Colorado Court of Appeals, in Trujano v. 8 Loan App. 304, 982 P.2d 993 (1998), reasoned that [ ] defined ... as "a building which is used, intended to be used, or usually used by a person for habitation." In such a case, a dwelling includes a hotel or motel room because those rooms are habitually used as places where persons sleep. Because those rooms are habitually used as a place of residence, the reasoning, we hold that a motel room where the defendant was dwelling. | Hospital room falls within the definition of a "dwelling," as applied to burglary and related offenses. KRS 511.010(1). | Do hospital rooms qualify as a dwelling under burglary? | Burglary - Memo 215- T8.docx | ROSS-003300482-ROSS-003300483 | Condensed, SA, Sub 0.75 | | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential Between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19487 | People v. Meredith, 174 Cal. App. 4th 1257 | 67+10 | As mentioned above, in Marquez the owner of the burgled house had not moved to a boarding home. No one else was living in the house. However, a friend of the owner checked on the house occasionally, coming in every day. (People v. Marquez, supra, 143 Cal.App.3d at pp. 797-798, 192 Cal.Rptr. 193.) The Marquez court held that the house was "inhabited" within the meaning of Penal Code section 459 which defined the term, then as now, to mean "currently being used for dwelling purposes, whether occupied or not"... even though the owner had been away for a long time and "there [was] doubt she [would] return" (id. at p. 802, 192 Cal.Rptr. 193), the court concluded that the house was inhabited because "there [was] no evidence in the record that she [the victim] or her conservator acting on her behalf ever vacated or abandoned her residence to live in some other place. The trial court concluded that [the owner] had not vacated or abandoned her residence but fully intends to return" and that the dwelling at the time of the burglary was inhabited... because temporarily unoccupied. It is the intent and not the length of absence which controls. For the reasons stated, we agree with the trial court's conclusion.' (Marquez, at p. 802, 192 Cal.Rptr. 193.) | For purposes of the California first degree burglary statute, a structure that has not been occupied at the time, it is "inhabited" if someone lives there, even though the person is temporarily absent. West's Ann.Cal.Penal Code §§ 459, 460. | Is temporarily unoccupied residence considered an inhabited dwelling pursuant to the burglary statute? | Burglary - Memo 238 - TR.docx | LEGALEASE 00035564 - LEGALEASE 00035567 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | 1 |
| 19488 | Ladd v. Du Bose, 344 S.W.2d 476 | 260+5(1) | Our Supreme Court in Sharp v. Fowler et ux., 151 Tex. 490, 252 S.W.2d 153, 154, has held: "A reservation of minerals to be effective must be by clear language. Courts do not favor reservations by implication." The reservation of the one-fourth mineral interest individually now owned by appellants was in plain language but the court failed to say that they reserved or excepted any other from the land would have to be by implication. | Reservation of minerals, to be effective, must be by clear language. | Should reservations in minerals be in clear language? | Mines and Minerals - Memo #011 - C - CSS.docx | ROSS-003288936-ROSS-003288937 | SA, Sub | 0.84 | 0 | 0 | 0 | 1 | |
| 19489 | Howell v. Wells, 424 S.W.2d 10 | 289+485 | The above allegation in appellant's Sixth Amended Petition is not a correct statement of the law. When a partnership agreement sets no time limit for the duration of the partnership, it is true that in this case, the partnership is terminable at will. We so hold in our opinion in the appeal of the above styled case, 392 S.W.2d 865, See also 68 Tex.Jur.2d pp. 510, 511, Secs. 61, 62(b); Sec. 331(a)(b) Vernon's Ann.Civ.St. The record shows that at the meeting of the partners on Bowden's return on March 15, 1960 Bowden resigned and dissolved the partnership. | When partnership agreement sets no time limit for duration of relationship, partnership is terminable at will. Vernon's Ann.Civ.St. art. 6132b, § 31(1)(b). | When is a partnership terminable at will? | 02457.docx | LEGALEASE 00146916 - LEGALEASE 00146917 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 19490 | Gray v. City of Salem, 271 Mass. 495 | 296+2 | Here there is no interference with a contract, nor exemption from a rule binding upon all. The Legislature has constitutional power to grant pensions to selected individuals. Opinion of the Justices, 175 Mass. 599, 57 N. E. 675, 49 L. R. A. 564; Opinion of the Justices, 190 Mass. 611, 77 N. E. 820; Opinion of the Justices, 211 Mass. 608, 98 N. E. 338; Opinion of the Justices, 240 Mass. 611, 136 N. E. 603. The grant transcends the power only when no legitimate public good is to be derived from it 'and where the true only public advantages ... such as may be incident and subordinate to the relief of an individual citizen.' Opinion of the Justices, 175 Mass. 599, 602, 603, 57 N. E. 675, 677, 49 L. R. A. 564. | Legislature has power to grant pensions to selected individuals, except where no legitimate public good is to be derived therefrom. | Does the legislature have the power to grant a pension? | Pension - Memo 45 - TR.docx | ROSS-003290219-ROSS-003290920 | Condensed, SA, Sub | 0.82 | 0 | 0 | 0 | 0 | 1 |
| 19491 | United States v. Labonte, 44 F.4th 475 | 290+4 | The Court. It is not. The commissioner of pensions is not a judicial officer, and his ruling does not conclude the claim as to court. This ruling as in the case like this. He grants a pension upon improper or fraudulent testimony, and the government subsequently pays money on his pension, it may be recovered if some simpler remedy than that of a pension suit may be provided to afford a better remedy to bar payment to a pension because that results in another form of revision. | The commissioner of pensions is not a judicial officer, and his rulings in granting a pension upon improper or fraudulent testimony do not estop the government from recovering back moneys paid thereunder. | Can the commissioner of pensions be considered a judicial officer? | 02824.docx | LEGALEASE 00145068-LEGALEASE 00145069 | Condensed, SA, Sub | 0.48 | 0 | 0 | 0 | 0 | |
| 19492 | Gulf, C. & S.F. Ry Co. v. Bliss, 368 S.W.2d 594 | 302+143.1 | It is a general rule, well established by the weight of authority, that the petition will be construed as favorably as possible to the pleader on her specially on the petition must show that it is the pleader's intendment and will be upheld even if some element of a cause of action has not been specifically alleged. Even if they will be upheld and pleader can reasonably be inferred from what is specifically alleged, the petition will be liberally construed, and where a cause of action may be inferred from San's cross section that it was charging but even an omission to raise an allegation of negligence that proximately caused the injuries to the plaintiffs. | Petition will be construed as favorably as possible to pleader and court will look to the pleader's intendment and will uphold pleading even if some element of cause has not been specifically alleged. | Are pleadings generally construed as favorably as possible to the pleader? | 02555.docx | LEGALEASE 00145883 - LEGALEASE 00145884 | SA, Sub | 0.67 | 0 | 0 | 0 | 1 | 1 |
| 19493 | Stroud v. Riddle, 260 S.C. 99 | 302+11 | In consideration of the order, the lower court held: In Palmetto State Life Insurance Company, 237 S.C. 655, 118 S.E.2d 696 (1961), and Guimarin v. Cohen's Fairground Seed Co., 217 S.C. 200, 87 S.E.2d 461 (1955), for the proposition that a demurrer admits the facts well pleaded in the complaint, but does not admit conclusions of law pleaded therein. Such is admitting the doctrine in this jurisdiction that it is a litigant is not determining what is the rule of law, but in applying the rule to the allegations of a pleading. A litigant is not required to plead evidentiary matter, and a litigant is not required to plead in both unnecessary and improper to do so. Cases collected under 15 South Carolina Digest, Pleadings Key Number Symbol(1) (1961, Supp.1971). | A litigant is not required to plead evidentiary matter. | Is a litigant required to plead evidentiary matter? | Pleading - Memo 844 - BMM_53938.docx | ROSS-003290505-I-ROSS-003290562 | Condensed, SA | 0.93 | 0 | 0 | 0 | 0 | |

Appendix D

3435

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,973 | 21,876 | 9,029 |
| 13494 | Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249 | 265+1798 | Fraud upon the court is an egregious offense against the integrity of the judicial machinery more than it raises an issue of fact in a case which might lead to a fair test of proof and a defense of a case in any particular court. The requisite fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.To support dismissal for fraud on the court, the party's alleged fraudulent conduct must prove so by clear and convincing evidence. Citations, 845 So.2d at 574; see also Granados, 979 So.2d at 1197. A unfair pleadings, inconsistent testimony, and even lying to the court by a witness are generally insufficient to support a dismissal for fraud upon the court. | Dismissal with prejudice, due to alleged fraud upon the court, of mortgagee's foreclosure action was a reduction of the trial court's discretion, although mortgagee's motion to dismiss the complaint stated that statements in the complaint that mortgagee owned the mortgage and note and that it brought the suit in its capacity as a valid securitized trustee constituted fraud upon the court, where dismissal with prejudice was not supported by clear and convincing evidence advanced by the mortgagor of sufficiently unconscionable, deceitful conduct by the mortgagee. | The courts' pleadings, inconsistent testimony, and even lying to the court by a witness are generally insufficient to support a dismissal for fraud upon the court? | 03M88.docx | LEGALEASE 00165284-LEGALEASE 00165285 | Condensed, SA | 0.46 | 0 | 1 | | 1 | |
| 13495 | Kisok v. Johnson, 837 N.W.2d 39 | 233+176(12) | "Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of process must be satisfied. Uthe v. Baker, 629 N.W.2d 121, 123 (Minn.App.2001) (quoting Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987)). "Absent proper service of process or a waiver thereof, the district court must dismiss the action." Shamrock Dev., Inc. v. Smith, 737 N.W.2d 372, 377 (Minn.App.2007), rev'd on other grounds, 754 N.W.2d 377 (Minn.2008); see also Coleman, 793 N.W.2d at 362 (emphasizing that "improper service" causes a "lack of personal jurisdiction). | Residential tenant did not waive defense that court lacked personal jurisdiction over her in eviction action, based on landlord's allegedly improper service of process, even though tenant participated in litigation by moving for dismissal on ground of improper service; filing answer, moving for summary judgment, and asserting defenses on the merits; tenant filed answer and motion for summary judgment at the same time she asked court to rule on motion to dismiss for improper service, and there was no evidence that tenant acquiesced to court's jurisdiction. | "Should a district court dismiss the action, absent proper service of process or a waiver thereof?" | Pretrial Procedure Memo #4534 - C - AP.docx | ROSS-003104873-ROSS-003104874 | Condensed, SA, Sub | 0.12 | 1 | 1 | | 1 | |
| 13496 | Woodbury Lumber Co. v. McIntosh, 125 Vt. 154 | 307X+552 | It is unquestionably the rule in this jurisdiction that a defendant is entitled to be protected from vexatious litigation. Laudan v. Mayo, 104 Vt. 503, 514, 162 A. 359. It is usually stated that the rule for determining when the cause of action accrues, is as to be vexatious and oppressive, is to ascertain whether or not the relief sought in the second action may be fully obtained in the first. Start v. Crowell, 113 Vt. 313, 314, 34 A.2d 89. | A defendant is entitled to be protected from vexatious litigation. | Is a defendant entitled to be protected from vexatious litigation? | 03102.docx | LEGALEASE 00146085-LEGALEASE 00146086 | Condensed, SA | 0.86 | 0 | 1 | | 1 | |
| 13497 | St. Louis Sw. Ry. Co. v. Rhodes, 955 S.W.2d 144 | 371+1055 | "The amount demanded is unimportant when there is no legitimate basis for the claim. Republican Industries, Inc. v. Mako, 148 U.S. 157, 9 S.Ct. 477, 37 L.Ed. 356, 44 A.L.R. 1239. | Amount demanded is unimportant when there is no equitable basis for the claim. | Is the amount demanded important when there is no equitable basis for the claim? | 11425.docx | LEGALEASE 00094273-LEGALEASE 00094274 | SA, Sub | 0.59 | 1 | | 0 | 1 | |
| 13498 | Tyrell v. Private Label Chemicals, 505 N.W.2d 554 | 200+14(1) | "The exclusive remedy provision of the employer's obligation to compensate the employee for injuries sustained in the course of action. Whether the employer is interested only in recovering for benefits paid and is paying for benefits paid to the worker, the employer's claim involves recovery of benefits paid to the worker's subrogation action as it would any tort cause of action. The worker's compensation system is not designed to shift the employer's obligations under the employment contract to third parties who are strangers to that contract in complete disregard of * * * the common law measure of determination of the nature and extent of the measurable factor in action according in tort." Allstate Ins. Co. v. Eagle Fisher Indus., Inc., 442 N.W.2d 254, 328 (Minn.1989) For another way to describe how tortfeasor is defending against a tort claim, not a workers' compensation claim. | Determining amount of compensation benefits recoverable by an employee who sustained work-related injuries caused by third party tortfeasor involves administration of Workers' Compensation Act in all its intricacies and, as such, is separate matter for court, not jury, to determine. M.S.A. § 176.001 et seq. | Is the extent of the employer's obligation under the Workers' Compensation Act determined according to the common law measure of damages? | 11476.docx | LEGALEASE 00094489-LEGALEASE 00094490 | SA, Sub | 0.71 | 0 | | 0 | 1 | |
| 13499 | United States v. Manzo, 851 F. Supp. 2d 797 | 83+82.10 | Further, the First Report of the New Jersey Criminal Law Revision Commission (" N.J.L.R.C.") placed before the "bribery" in a bribery in the 1970 penal statute to only codify the prior case law Section as to lack of jurisdiction, etc., is our law," citing to only one case to which the "formal report and noted that this was indicated for offering to a sanction of three or four offices indicated the scope of official. It is noteworthy that even in the prior appointment language of § 1952(A) addressing the public as "bribery" and then "public servant" more broadly than the public servant council did not have jurisdiction to grant the application for which the scope of election, however, would compel a conviction to be limited to determine whether council had not had no jurisdiction over the subject matter of the application if the application was, in point of fact, made, an attempt to prove the elected matter for guilty the jury even if the conviction was complete when an offer of reward is made to influence the vote or action of the official, it would be immaterial that the award could not be produced the desired result, nor that the official, or the body of which he was a member, had authority by law to do the thing sought to be accomplished" Id., at 105. That application to this concept extends only to this indicates that the scope of the unassailability of the defense was limited to the given scope of the official and whether the defense was applicable then to the official had the authority or jurisdiction to act in favor of the benefit exchanged for. | For purposes of the statute that if the alleged conduct of a defendant falls within the generic term "bribery" as used in the Travel Act, it is a proper predicate offense for a Travel Act violation, no distinction should be made between the actual and apparent ability of the receiver to reciprocate at the time of exchange to influence official action or public office. 18 U.S.C.A. § 1952. | When does the attempt to influence a public officer's official duties constitute the crime of bribery? | 01300.docx | LEGALEASE 00147700-LEGALEASE 00147701 | Condensed, SA, Sub D | 0.77 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 19500 | Com. v. McCoy, 289 Pa. Super. 399 | 67.4 | Although a number of our sister jurisdictions have found a telephone booth to be a "building"... | Outdoor telephone booth was a "building" within burglary statute, 18 P.S. § 3501. | Is a telephone booth a building under burglary law? | Burglary - Memo 2520 - SA_57428.docx | ROSS-000506129-ROSS-000506130 | Condensed, SA, Sub | 0.91 | 0 | | | 1 | |
| 19501 | Lire v. Union R. Co., 121 A.I. 386 | 200+196 | We think the demurrer must be overruled. Everything which happened resulted naturally from the overcrowding being caused by a heap of snow... | A horse was frightened by the overturning of a sleigh to which it was harnessed, the overturning being caused by a heap of snow and ice wrongfully left in a highway by defendant. Plaintiff, who was walking, was injured by the horse running away. Held, that the obstruction was the proximate cause of the injury. | Who is liable for the damage when one negligently frightens another horse which then injures another? | Highway - Memo 388 - ANM_57430.docx | ROSS-000504438-ROSS-000304439 | Condensed, SA, Sub | 0.57 | | 1 | | | |
| 19502 | Panzini v. Ocean Disposal Co., 15 Cal. 459 456 | 464+377(4) | In a third case, injuries resulted when a "horse took fright at a pile of stones, partially obscured by weeds, lying in the street, but outside of the improved and traveled portion thereof"... | Driver of garbage truck who was emptying trash container into truck while in parking lot which was adjacent to public bridle path did not breach duty of care owed to rider of horse on path, and was not liable for injuries suffered by rider after horse became frightened by operation of truck... | When is one liable for frightening a horse in a highway? | 038436.docx | LEGALEASE-00147821-LEGALEASE-00147822 | Condensed, SA, Sub | 0.09 | | 1 | | | |
| 19503 | Cole v. Ralph, 252 U.S. 286 | 260+73(1) | Location is the act or series of acts whereby the boundaries of the claim are marked, etc., but it confers no right in the absence of discovery... | Location or compliance with location requirements confer rights in the absence of discovery, nor will assessment | Does location or compliance with location requirements confer rights in the absence of discovery? | 021562.docx | LEGALEASE-00147708-LEGALEASE-00147709 | Condensed, SA, Sub | 0.41 | | | | 1 | |
| 19504 | Maceey v. Sunrise Hosp., 102 Nev. 167 | 307A+590.1 | The court justified that the judgment was rightly entered against the plaintiff pursuant to NRAP 3A(b)(1). During the pendency of an appeal, any time limitations are tolled. A plaintiff cannot be penalized for exercising a right to challenge... | During pendency of appeal, any time limitations tolled. | During pendency of appeal, are any time limitations tolled? | Pretrial Procedure - Memo # 7484 - C - BP_57523.docx | ROSS-000121442-ROSS-000311413 | Condensed, SA, Sub | 0.87 | | | | 1 | |
| 19505 | Felix v. Ochsner Med. Ctr. - Westbank, 382 So. 3d 417 | 307A+581 | This Court as well as other courts have found that a dismissal on the grounds of abandonment is without prejudice... | A dismissal on the grounds of abandonment is a dismissal "without prejudice." LSA-C.C.P. art. 561. | Should dismissal on the grounds of abandonment be made without prejudice? | 11082.docx | LEGALEASE-00094410-LEGALEASE-00094411 | SA, Sub | 0.86 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19506 | Louisiana Dep't of Transp. & Dev. v. Bayou Fleet, 37 So. 3d 1066 | 13+70 | Pursuant to La. C.C.P. art. 1474, the mailing of discovery pleadings to adverse parties, in accordance with La. C.C.P. art. 1313, satisfies the service requirement of La. C.C.P. art. 561. However, in order to satisfy La. C.C.P. art. 561, it is necessary that any discovery be mailed to all the parties to the action. See Stillman v. Bd. of Supervisors of S. Univ. and Agric. and Mech. Coll., 07"2107 (La.App. 1st Cir.6/6/08), 992 So.2d 523, 525"26, writ not considered, 08"1557 (La.10/10/08), 993 So.2d 1273; Benjamin"Jenkins v. Lawson, 00"0958, p. 4 (La.App. 4th Cir.3/7/01), 781 So.2d 893, 895, writ denied sub nom. Jenkins v. Lawson, 01"1546 (La.9/14/01), 796 So.2d 681. In the present case, Bayou Fleet does not dispute receiving any of DOTD's letters by mail, but the record does not establish that any of the letters sent by these two parties were also served on Mr. Elsik, the other defendant in the suit. Thus, the letters were not "served on all parties" as required by La. C.C.P. art. 561.4 Because DOTD did not establish service of "formal discovery" on "all parties," it did not establish a "step" in the prosecution of the action. See Stillman, 07"2107 at p. 4, 992 So.2d at 526. | The article on abandonment of an action imposes three requirements on plaintiffs: (1) a plaintiff must take some step towards prosecution of their lawsuit, i.e., formal action must be taken before the court to hasten the suit toward judgment or a deposition must be taken; (2) the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit; and (3) the step must be taken within the legislatively prescribed time period of the last step taken by either party. LSA-C.C.P. art. 561. | "To satisfy a code provision governing abandonment, is it necessary that any discovery pleadings be mailed to all the parties to the action?" | 11281.docx | LEGALEASE-00094281-LEGALEASE-00094282 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 19507 | Burgess v. State, 178 So. 3d 1266 | 352H+41 | We further hold that marriage can be an affirmative defense to sexual battery, yet it is not an absolute defense. Once the defense of marriage is raised, it will apply, unless the State proves beyond a reasonable doubt that the two were separated or living apart at the time of the attack or that force was involved. See generally Miss.Code Ann. "" 97"3"95, 97"3"99 (Rev.2014). Proof of force negates the affirmative defense. | Marriage can be an affirmative defense to sexual battery; yet, it is not an absolute defense. West's A.M.C. SS 97-3-95, 97-3-99. | Is marriage a defense for sexual offenses? | 043042.docx | LEGALEASE-00147890-LEGALEASE-00147891 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 19508 | Nguyen v. Schwegmann Giant Supermarket, 548 So. 2d 343 | 413+2 | In its second assignment of error, appellant argues that the trial court erred in calculating benefits due to the appellee as it failed to deduct compensation payments paid to plaintiff before trial. On the basis of LSA-R.S. 23:1223 appellant urges that it is entitled to credit for these previous payments. This statute, however, is not applicable to the instant situation. In this case appellee received prejudgment benefits under LSA-R.S. 23:1221(1) and awarded benefits pursuant to LSA-R.S. 23:1221(3). The statute provides for deductions from compensation under 23:1221(4) when payments have been made under 23:1221(1), (2), or (3). There is no specific provision for the type of deduction in question. The Workmen's Compensation Act does not lend itself to analogy. The judgment below is affirmed. | Workmen's Compensation Act does not lend itself to analogy. LSA-R.S. 23:1021 et seq. | Does the Workmens Compensation Act lend itself to analogy? | 11464.docx | LEGALEASE-00094657-LEGALEASE-00094658 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 19509 | Tejas Dev. Co. v. McGough Bros., 165 F.2d 276 | 25T+169 | The arbitrators misunderstood their authority and violated the rules of procedure under which it was agreed they should act, and this misconduct invalidates the award, at least on the items dealt with in the final award. After the preliminary award it was too late for the Company to withdraw from this submission, and the contention that this was effectually done cannot be sustained. But the protest made rebuts any idea of acquiescence or waiver as respects the appointment of the engineer Peabody. Nor can the plaintiffs' contention that after all the arbitrators acted on their own information and judgment be sustained. Very clearly they acted in large part on Peabody's findings and report. If Peabody was an assistant arbitrator, as the letter of December 9 of the plaintiffs and the words of his appointment indicate, the arbitrators were without authority to appoint him as such. If he was only an expert to inform himself and give them the facts he learned and his opinions, we think the arbitrators could employ him as such, but he thereby would become a witness, and his report only evidence to be testified to by him in an open hearing with the parties present to cross-examine him and correct him by other evidence. Article 16 of Arbitration Procedure is: "The arbitrators shall interpret and apply the provisions of this Standard Form of Arbitration Procedure," - not "as they see fit," but according to the fair and reasonable meaning. This rule give them a duty, not a license. Article 11 provides that each party and his witnesses shall be heard and may be questioned by the other or his counsel and "when all pertinent and material evidence has been submitted by the parties the arbitrators shall formally close the hearing and proceed in private to their deliberations prior to making the award." This does not authorize the taking of evidence in private. Article 12 provides: "Proofs shall be taken in the presence of the parties and in the presence of all the arbitrators, unless a | After preliminary award by arbitrators appointed pursuant to agreement to arbitrate contained in contracts for grading of streets and building houses, it was too late for owner to withdraw from such submission. | Is it possible to withdraw a submission to arbitration after a preliminary award has been declared? | 007849.docx | LEGALEASE-00148884-LEGALEASE-00148885 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 19510 | Backus-Brooks Co. v. N. Pac. Ry. Co., 21 F.2d 4 | 25T+169 | As stated above, for the purpose of overcoming the defense of laches, complainant alleged the making of the arbitration agreement and the time consumed by it in examinations and investigations preparatory to its submitting its claims under such agreement. It is out judgment that complainant wholly failed to excuse the long delay. It assigned no reason why it took the accountants 12 years to make their examination and report. It does not allege that the Northern Pacific in any wise hindered or prevented the complainants in their investigation and preparation of their claims. On the contrary, it shows complainant was accorded full opportunity for examination and investigation of the books and records. It shows no recognition by the Northern Pacific that the arbitration agreement was in force and effect after 1916. Although one of the arbitrators named died in 1914, and the other became incapacitated in 1920, it shows no agreement supplemental to the arbitration agreement providing for a new arbitrator after one of those named had died, and the other had become wholly incapacitated. Since the arbitration agreement made no provision for filling vacancies, the death of one arbitrator and the inability of the other arbitrator to act revoked the submission. Wolf v. Augustine, 181 Pa. 576, 37 A. 574, 576; Parsons v. Ambos, 121 Ga. 98, 48 S.E. 696, 698; Dinsmore v. Hanson, 48 N.H. 413; Sutton v. Tyrrell, 10 Vt. 91; Potter c. Sterrett, 24 Pa. 411, 412.It follows that the arbitration agreement came to an end in the year 1920. | In absence of provision for filling vacancies, death of one arbitrator named in agreement and incapacity of other revoked submission. | When is the authority of an arbitral board terminated? | 007851.docx | LEGALEASE-00148888-LEGALEASE-00148889 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19511 | Nuncio Bros, Corp. v. CIVICSA Inc., 104 F. Supp. 2d 198 | 25T+200 | As an initial matter, this Court must decide at the outset whether "the arbitration agreement is broad or narrow." … | Where contract contains broad arbitration clause, court's focus in adjudicating determination is narrow … | Should a court decide at the outset whether an arbitration agreement is broad or narrow? | Alternative Dispute Resolution - Memo 772 - RK_5835.docx | ROSS-003280721-ROSS-003280722 | Condensed_SA_Sub 0.71 | | 0 | 1 | | | |
| 19512 | Kelly v. Cent. Bank & Tr. Co. of Denver, 794 P.2d 1037 | 83T+428 | The term "indorsement" is generally understood to mean the indorser's writing of his or her signature on the instrument … | "Indorsement" means the indorser's writing of his or her signature on an instrument or offering of the instrument to one or more designation … | What is indorsement? | Bills and Notes - Memo 437+5_57888.docx | ROSS-003280314-ROSS-003280315 | SA_Sub | 0.44 | | | | | |
| 19513 | Drake v. Sun Oil Co., 320 F.2d 853 | 8.30T+04 | However, we do not regard this as being decisive under Texas law. The commercial law of negotiable instruments … | Law of negotiable instruments is an outgrowth of the law merchant. | Is law of negotiable instruments an outgrowth of the Law Merchant? | Bills and Notes - Memo 6349 B_7860.docx | ROSS-003283254-ROSS-003283255 | Condensed_SA 0.94 | | | | | | |
| 447 / 19514 | Fordyce v. Nelson, 91 Ind. 4ff | 83T+401 | That the court overruled the motion for a new trial The assurance alleged for a new trial was, that the finding is contrary to law … | The assignment by one of two holders of a note of his half to the other is a "security, (an assignment of part of a debt be considered good)" | To equity, can assignment of part a debt be considered good? | 010091.docx | LEGALKE-00148344-LEGALKE-00148345 | Condensed_SA_Sub 0.73 | | 0 | | | 1 | |
| 19515 | United States v. Iannelli, 808 F.2d 184 | 319H+28 | This distinction is derived from the Sedima Court's suggestion of relationship and continuity … | "What is an "enterprise" for purposes of a Racketeer Influenced and Corrupt Organizations Act violation?" | What is an "enterprise" for purposes of a Racketeer Influenced and Corrupt Organizations Act violation? | 012439.docx | LEGALKE-00148266-LEGALKE-00148267 | Condensed_SA 0.6 | | | | | 1 | |
| 19516 | People v. Lauder, 82 Misc. 110+[802] 109 | | In People v. Sharp, 107 N. Y. 427, 14 N. E. Rep. 319 … | A plea in abatement to an indictment set forth that defendant, being ignorant that any charge was made against him, was, under compulsion … | Is a person testifying to the giving of a bribe which has been accepted liable to prosecution? | 012635.docx | LEGALKE-00148306-LEGALKE-00148307 | Condensed_SA_Sub 0.13 | | | | | 1 | |
| 19517 | United States v. Sabri, 183 F. Supp. 2d 1145 | 63+(11) | Sabri, s alleges the PF in Hidalgo County, Texas, was responsible for supervising … | Federal Bribery statute's prohibition against "corruptly giving), offering) or agreeing to give anything of value to any person" in connection … | To prosecution for bribery, does the government have to prove the bribe in some way affected federal funds? | Bribery - Memo #684 - C 3..docx | LEGALKE-00008256-LEGALKE-00008267 | Condensed_SA_Sub 0.42 | | | 1 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19518 | United States v. Santopietro, 166 F.3d 88 | 63+1(1) | In the Supreme Court, Salinas contended that the "Government must prove the bribe in some way affected federal funds." Salinas, 522 U.S. at """", 118 S.Ct. at 473. The Court rejected this contention: "The enactment's expansive, unqualified language, both as to bribes forbidden and the entities covered, does not support the interpretation that federal funds must be affected to violate " 666(a)(1)(B)....The prohibition is not confined to a business or transaction which affects federal funds." Id. However, the Court noted that it "need not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds, for in this case the bribe was related to the housing of a prisoner in facilities paid for in significant part by federal funds themselves." Id. at """", 118 S.Ct. at 474 (emphasis added). | Requirements for conviction under statute punishing receipt of corrupt payments by person intending to be influenced in governmental transaction involving both at least $5,000 in value and governmental entity receiving more than $10,000 in federal funding were satisfied by conduct of former city political leaders, given evidence that leaders received benefits exceeding $5,000 in value for past and expected future support of real estate transactions and that transactions were within purview of city agencies administering federal funds received for housing, urban development, and other programs. 18 U.S.C.A. S 666(a)(1)(B). | Is the prohibition under federal bribery statute confined to a business or transaction which affects federal funds? | 012502.docx | LEGALEASE-00148350-LEGALEASE-00148351 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 19519 | Ward v. Clark, 232 N.Y. 195 | 48A+171(1) | We think the case was for the jury. With the plaintiff's car 40 feet away, and the defendant's eighty, there appeared to be sufficient clearance. So, at least, a reasonable man might not unreasonably believe. Sudden acceleration of the defendant's speed was not to be foreseen. Even with added speed, the defendant, if he had looked, could have avoided collision by a trifling bend to the left upon an unobstructed street. The plaintiff in shaping his own course might act on the assumption that common skill and prudence would shape the defendant's also. He was not required to foresee the defendant's blind and uncompromising adherence to an undeviating line. The supreme rule of the road is the rule of mutual forbearance. Mark v. Fritsch, 195 N. Y. 282, 283, 284, 88 N. E. 380, 22 L. R. A. (N. S.) 632, 133 Am. St. Rep. 800. | The supreme rule of the road as to automobilists at street intersections in cities is the rule of mutual forbearance. | "Is mutual forbearance, the supreme rule of the road?" | 019000.docx | LEGALEASE-00148685-LEGALEASE-00148686 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 19520 | United States v. YasithChhun, 513 F. Supp. 2d 1179 | 91+393 | Both parties concede that whether the United States was "at peace" with Cambodia is an element of the conspiracy offenses provided for by 18 U.S.C. " 956(b) and 18 U.S.C. " 960 and must be proven by the Government beyond a reasonable doubt. (See Def.'s Mot. 2 and Gov.'s Mot. 4, 7.)Nevertheless, relying on United States v. Terrell, 731 F.Supp. 473 (S.D.Fla.1989), one of the few recent cases to address the "at peace" requirement, Defendant Chhun maintains that the Court may decide that the United States was not "at peace" with Cambodia as a matter of law. (Def.'s Mot. 2"4.) | Issue of whether United States was "at peace" with Cambodia presented question of fact that could not be resolved on motion to dismiss indictment for conspiring to damage or destroy property of and to take part in military expedition against a foreign state with which the United States was "at peace," as "at peace" requirement was a element of those crimes. 18 U.S.C.A. SS 956(b), 960. | Is at peace an element of offence under Neutrality Act? | 021708.docx | LEGALEASE-00148510-LEGALEASE-00148511 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 19521 | BancBoston Mortg. Corp. v. Ledford, 127 B.R. 175 | 51+3372.13 | It is equally clear that, under Tennessee state law, the fraud of one partner must be imputed to another. In Griffin v. Bergeda, 279 S.W. 385, 152 Tenn. 512 (1926), the Tennessee Supreme Court imputed fraud to a partner for purposes of determining dischargeability under the Bankruptcy Act. See also George Busby Ford, Inc. v. Ross, 62 Tenn.App. 80, 459 S.W.2d 46 (1970) (following Griffin). Imputed liability is also mandated by statute in Tennessee. Tennessee has adopted the Uniform Partnership Act, which provides:Wrongful acts of partners."Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss of injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.T.C.A. " 61"1"112 (1989). Under Tennessee state partnership law, Ledford's fraud should be imputed to Sikes regardless of the latter's ignorance of the fraud. | One general partner's fraud could be imputed to another innocent general partner in determining whether other partner's debt was nondischargeable. Bankr.Code, 11 U.S.C.A. S 523(a)(2)(A). | Can fraud be imputed from one partner to another? | 022515.docx | LEGALEASE-00148907-LEGALEASE-00148908 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 19522 | In re Tomlin, 280 B.R. 374 | 289+542 | A partnership agreement is a contract and is to be construed like any other contract. Park Cities Corp. v. Byrd, 534 S.W.2d 668, 672 (Tex.1976); Kahn v. Seely, 980 S.W.2d 794 (Tex.App.San Antonio 1998, rev. denied). | Under Texas law, partnership agreement is a contract, that is to be construed like any other contract. | Does a partnership agreement need to be construed like any other contract? | Partnership - Memo 477 - JK.docx | LEGALEASE-00038515-LEGALEASE-00038516 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 19523 | Hanson v. Birmingham, 92 F.Supp. 33 | 289+639 | A contract of partnership is in effect one of mutual agency, each party acting as principal in his own behalf and as agent for his co-partner. 40 Am.Jur., Partnership, 136; 20 R.C.L., Partnership, 94; Latta v. Kilbourn, 1893, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169; Schumann-Heink v. Folsom, 1927, 328 Ill. 321, 159 N.E. 250, 253, 58 A.L.R. 485.In 1 Mechem, Agency (2d Ed. 1914) Sec. 185, it is stated: "It is one of the fundamental principles in the law of partnership, that, within the scope of the partnership business, each partner is the agent of all the other partners for the transaction of the partnership affairs, and his acts are the acts of all." Each partner possesses equal and general power and authority in partnership matters. Kimbro v. Bullitt 1860, 22 How. 256, 63 U.S. 256, 266, 16 L.Ed. 313. | Within the scope of the partnership business, each partner is the agent of all other partners for transaction of partnership affairs, and his acts are the acts of all. | What is the fundamental principle of the law of partnership? | 022523.docx | LEGALEASE-00148919-LEGALEASE-00148920 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19524 | Breaux v. Auto Zone, 787 So. 2d 322 | 307A+590.1 | In Charpentier v. Goudeau, 95"2357 (La.App. 4 Cir. 3/14/96), 671 So.2d 981, the court held that if the party properly mailed an interrogatory to another party, the failure to file in the record an article 1313 certification did not render the service ineffective; such service constituted a step in the prosecution and averted a dismissal for abandonment. The court reasoned that once the interrogatory was mailed as authorized by the article, authorized service of the interrogatory occurred and a step in the prosecution was taken. The court stated that article 1313 did not prescribe any time limit for the filing of the certificate in the record and did not provide that service by mail would lose its effectiveness at some point in time if the certificate was not filed. In Brister v. Manville Forest Products, 32,386, 32,387 (La.App. 2 Cir. 12/15/99), 749 So.2d 881, the Second Circuit found that a notice of deposition served on the adverse party by mail to be formal discovery and that the failure to file the certification of the manner service was made did not defeat the validity of the notice; the court noted that the notice was received by the defendant, as demonstrated by the defendant's reply letter. As in Brister, in the case at bar, relator's counsel does not dispute receiving the letter and medical reports. Thus, as in Charpentier and Brister, under the circumstances of the case at bar, the letter is sufficient to interrupt the abandonment period despite plaintiffs' failure to file a certificate of service in the record. Moreover, relator failed to produce the suit record to demonstrate the lack of a certificate of service, and thus, failed to demonstrate to this court that plaintiffs failed to file it. | Injured motorist's and passenger's letter to alleged manufacturer of brake pads, with attached medical reports, constituted a step in the prosecution of the suit for damages, so as to interrupt the three-year abandonment period, even if motorist and passenger had failed to file a certificate of service for the letter and attachments, where alleged manufacturer did not dispute receiving the letter and attachments. LSA-C.C.P. arts. 561, 1313, 1474. | "Is properly mailing a discovery request to another party a ""step"" that can preclude dismissal for abandonment?" | Pretrial Procedure - Memo # 7592 - C - RY_57800.docx | ROSS-003295068-ROSS-003295070 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 19525 | Smith v. Gallatin Nursing Home, 629 S.W.2d 683 | 413+2 | No authority is cited by the appellants in support of this contention. The entire subject of worker's compensation is statutory. The 1979 amendment to T.C.A. s 50-1023 simply changed the previous law and authorized commutation in the discretion of the trial judge without prior approval of the employer or its insurance carrier. In effect, in the discretion of the trial judge, a worker's compensation award may be ordered payable in one or more lump-sum payments rather than in weekly installments as provided in other portions of the statute. This is nothing more than a statutory amendment. It does not involve constitutional or vested statutory rights of the employer or of the insurance carrier. | Entire subject of worker's compensation is statutory. | Is the entire subject of workers compensation statutory? | Workers Compensation - Memo #536 ANC_57836.docx | ROSS-003297890-ROSS-003297891 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 19526 | Ramirez v. Immigration & Naturalization Serv., 550 F.2d 560 | 24+330 | We begin by repeating once more that a deportation hearing is a proceeding that is civil, not criminal, in nature. Trias-Hernandez v. I&NS, 528 F.2d 366, 368 (9th Cir. 1975). See Woodby v. I&NS, 385 U.S. 276, 87 S.Ct. 482, 17 L.Ed.2d 362 (1966); Harisiades v. Shaughnessey, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); Ah Chiu Pang v. I&NS, 368 F.2d 637 (3rd Cir. 1966). Constitutional due process requirements under the Fifth Amendment are satisfied by a full and fair hearing. Cf. Antolos v. I&NS,402 F.2d 463 (9th Cir. 1968). The Sixth Amendment's guarantee of the right to counsel is not applicable to deportation proceedings. Martin-Mendoza v. I& NS, 499 F.2d 918 (9th Cir. 1974); Murgia-Melendrez v. I&NS, 407 F.2d 207 (9th Cir. 1969). Mr. Justice Brandeis, in an opinion concerned with whether a deportation proceeding conformed to the Fifth Amendment, observed:"To render a hearing unfair the defect, or practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process." | A deportation hearing is a proceeding that is civil, not criminal, in nature. Immigration and Nationality Act, S 241(a)(2), 8 U.S.C.A. S 1251(a)(2). | Are deportation proceedings civil in nature? | Aliens_Immigration and_1sDH5PHS-joTGFwvQDINgB37vBtLLsbKZ.docx | ROSS-000000302-ROSS-000000303 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 19527 | SouthTrust Bank v. Donely, 925 So. 2d 934 | 97C+106 | The first relaxation of the rule was with respect to the conversion of a document in which intangible rights were merged, so that the one became the symbol of the other-as in the case of a promissory note, a check, a bond, a bill of lading, or a stock certificate.A negotiable instrument is a chose in action that is subject to conversion. First Nat'l Bank of Montgomery v. Montgomery Cotton Mfg. Co., 211 Ala. 551, 552, 101 So. 186, 188 (1924) (noting that " "bills of exchange, promissory notes, and other forms of negotiable instruments or commercial paper" " are " "choses in action represented by written instruments or something capable of seizure and possession" " (quoting 30 Cyc. p.2012D) and that " "[t]he measure of damages is prima facie the value [of the instrument] on its face" " (quoting McPeters v. Phillips, 46 Ala. 496, 497 (1871)) ). | A negotiable instrument is a chose in action that is subject to conversion. | Is a negotiable instrument a chose in action? | Bills and Notes - Memo 774 -IS_58622.docx | ROSS-003283298 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 19528 | Meekison v. Groschner, 153 Ohio St. 301 | 241+2(2) | In the case of Drake v. Found Treasure Mining Co., C.C., 53 F. 474, the court said: "A note executed in one state, but made payable in another, is, in so far as the remedy of collection is concerned, to be controlled and governed by the laws of the state where the note is made payable." The court stated further: "The note, although executed in California, was made payable in the state of Nevada. The cause of action arose in this state upon the default of defendant to pay the note, and the remedy for the collection of the amount due thereon is to be controlled by the laws of this state, where the contract was to be performed." | Where a note was executed and delivered in a state other than Ohio, but note by its terms was payable to a resident of Ohio at his place of residence, and obligor defaulted in payment, the cause of action arose in Ohio, and statute requiring action upon a promise in writing to be brought within fifteen years after cause of action accrued was applicable rather than statute barring cause of action in Ohio at expiration of lesser number of years, if laws of state where cause of action arose limits time for commencement of action to a lesser number of years than statutes of Ohio. Gen.Code, SS 11221, 11234. | Does the law of the place where the note is made payable govern a note executed in another place? | 009679.docx | LEGALEASE-00149754-LEGALEASE-00149755 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 19529 | Howell v. Roberson, 197 N.C. 572 | 83E+455 | In this jurisdiction, it is well settled that a person placing his name on the back of a note is, nothing else appearing, an indorser and liable on the note only as indorser. Dillard v. Mercantile Co., 190 N. C. 225, 129 S. E. 598. A person placing his name on the face of a note is, nothing else appearing, a maker and liable on the note as such. | Person placing name on back of note is prima facie indorser and liable only as such. C.S. SS 3044, 3049. | What is the liability of person placing name on a bill before its delivery? | 010572.docx | LEGALEASE-00149091-LEGALEASE-00149092 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19530 | Sandza v. Barclays Bank PLC, 151 F. Supp. 3d 94 | 108H+6 | Under D.C. law, the general rule is that one party to a transaction has no duty of disclosure to the other unless (1) the party is a fiduciary of the other, or (2) the party knows that the other is acting unaware of a material fact that is unobservable or undiscoverable by an ordinarily prudent person upon reasonable inspection. See Sununu, 792 F.Supp.2d at 51. Neither exception is applicable here. D.C. law establishes that "[t]he relationship between a debtor and a creditor is ordinarily a contractual relationship and not a fiduciary relationship." See Ponder v. Chase Home Fin., LLC, 666 F.Supp.2d 45, 49 (D.D.C.2009). An exception can be found if "a special relationship of trust or confidence exists in a particular case," Ellipso, Inc. v. Mann, 541 F.Supp.2d 365, 373 (D.D.C.2008) (internal quotations omitted), where the parties extend their relationship beyond what the contract requires of them. See Paul v. Judicial Watch, Inc., 543 F.Supp.2d 1, 6 (D.D.C.2008). However, plaintiff does not plead any specific facts that suggest something more than a standard, arms-length debtor-creditor relationship. (See Compl. 168 (making only a bare assertion of a "special kind of relationship").) In fact, as defendants point out, Ms. Sandza does not even allege that Barclays had any direct contact with her, with perhaps the exception of her January 2014 agreement to pay off her Barclays loan balance. (See Defs.' Mot. to Dismiss at 3-4; Compl. 1.) | Under District of Columbia law, the relationship between a debtor and a creditor is ordinarily a contractual relationship and not a fiduciary relationship. | What kind of relationship is there between debtor and creditor? | 014051.docx | LEGALEASE-00149868-LEGALEASE-00149869 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 19531 | Tedder v. Deutsche Bank Nat. Tr. Co., 863 F. Supp. 2d 1020 | 172H+35 | Lenders generally owe no fiduciary duties to their borrowers. See, e.g., Nymark v. Heart Fed. Sav. & Loan Ass'n, [231 Cal.App.3d 1089] 283 Cal.Rptr. 53, 54 n. 1 (Cal.App.1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); Miller v. U.S. Bank of Wash., [72 Wash.App. 416] 865 P.2d 536, 543 (Wash.App.1994) ("The general rule ... is that a lender is not a fiduciary of its borrower."); Huntington Mortg. Co. v. DeBrota, 703 N.E.2d 160, 167 (Ind.App.1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); Spencer v. DHI Mortg. Co., 642 F.Supp.2d 1153, 1161 (E.D.Cal.2009) ("Absent "special circumstances' a loan transaction "is at arms-length and there is no fiduciary relationship between the borrower and lender." ") (quoting Oaks Mgmt. Corp. v. Super. Ct., [145 Cal.App.4th 453] 51 Cal.Rptr.3d 561 (Cal.App.2006)); Ellipso, Inc. v. Mann, 541 F.Supp.2d 365, 373 (D.D.C.2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship ... and is not fiduciary in nature.") (citation omitted).McCarty v. GCP Mgmt., LLC, Civil No. 10"00133 JMS/KSC, 2010 WL 4812763,(D.Hawai'i Nov. 17, 2010).The district court in McCarty recognized that such a special relationship "might arise where there is inequality of bargaining power." Id. (citing Miller, 865 P.2d at 543 ("A quasi-fiduciary relationship may exist where the lender has superior knowledge and information, the borrower lacks such knowledge or business experience, the borrower relies on the lender' advice, and the lender knew the borrower was relying on the advice.")). | Lenders generally owe no fiduciary duties to their borrowers. | Does a fiduciary duty exist between the borrower and the lender? | 014119.docx | LEGALEASE-00149861-LEGALEASE-00149862 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 19532 | In re Irving-Austin Bldg. Corp., 100 F.2d 574 | 108H+4 | This conclusion is confirmed by a study of the rulings in the analogous fields of contract law. Liability for debts is traceable to contractual origin. Express or implied promises are prerequisites to debt liabilities. When A contracts with B for the latter's services, a case of express agreement arises. The amount of compensation is fixed by the contract or the law inserts the measure of damages known as quantum meruit. If no contract exists and services are rendered, liability arises only when the results and the benefits of services are accepted by the other party in which case liability arises out of such acceptance of the fruits of the other's labor. In all such cases liability is measured, not by the amount of time and energy expended by the laboring party but by the value of such services to the beneficiary. | Liability for debts is traceable to contractual origin. | Is liability for debts traceable to contractual origin? | 014121.docx | LEGALEASE-00149863-LEGALEASE-00149864 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 19533 | Haragan v. Am. Fed'n of Grain Millers Int'l, AFL-CIO, 445 S.W.2d 131 | 200+80 | As early as Endicott v. Triple State Natural Gas & Oil Co., 76 S.W. 516, 25 Ky.Law Rep. 862, this court noted that: "Public highways belong to the public, from side to side and from end to end." | Public highways belong to public from side to side and from end to end. | Do public highways belong to public from side to side and from end to end? | Highways - Memo 265 - DB.docx | LEGALEASE-00039129-LEGALEASE-00039130 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 19534 | Allamakee Cty. v. Collins Tr., 599 N.W.2d 448 | 200+79.1 | We have recognized an established highway or right of way may be abandoned by the public and its rights lost. Pearson v. City of Guttenberg, 245 N.W.2d 519, 529 (Iowa 1976); see also 2 Byron K. Elliott & William F. Elliott, The Law of Roads and Streets " 1174, at 1670 (4th ed.1926). Similarly, rights under an easement may be lost by abandonment. Polk County v. Brown, 260 Iowa 301, 306, 149 N.W.2d 314, 316 (1967). There is a presumption, however, that once a highway is shown to exist, it continues to exist, and any abandonment must be proven by clear and satisfactory evidence. Sterlane v. Fleming, 236 Iowa 480, 483, 18 N.W.2d 159, 161 (1945); 39 Am.Jur.2d Highways, Streets, & Bridges " 158, at 692 (1999). | Established highway or right of way may be abandoned by the public and its rights lost. | Can a highway lose its rights? | 019118.docx | LEGALEASE-00149639-LEGALEASE-00149640 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 19535 | United States v. YasithChhun, 513 F. Supp. 2d 1179 | 91+393 | The Court finds the Terrell opinion's determination that the "at peace" requirement is a question of law to be in conflict with the weight of authority establishing that essential elements of a crime are questions of fact for a jury. See, e.g., Gaudin, 515 U.S. at 511"12, 115 S.Ct. 2310.A jury must ultimately decide whether the prosecution has carried its burden of proving beyond a reasonable doubt all essential elements of the 18 U.S.C. " 956(b) and 18 U.S.C. " 960 conspiracy charges, including whether the United States was "at peace" with Cambodia. Even where the "at peace" requirement is construed as a mixed question of law and fact, it is the jury that will apply a legal standard to the facts. See 512, 115 S.Ct. 2310. | Issue of whether United States was "at peace" with Cambodia presented question of fact that could not be resolved on motion to dismiss indictment for conspiring to damage or destroy property of and to take part in military expedition against a foreign state with which the United States was "at peace," as "at peace" requirement was a element of those crimes. 18 U.S.C.A. SS 956(b), 960. | Who bears the burden of proving whether the US is at peace? | 021722.docx | LEGALEASE-00149907-LEGALEASE-00149908 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 15936 | Hale v. Dorian, 14 I.A.Rm. 129 | 289=64 | The English decisions on this subject are not so very uniform as might be expected, as will appear by the following quotations: "To make a party liable to a third person, as a partner, he must either be in fact a partner, or must have held himself out as a partner." Dickinson v. Valpy, 9 B. & C. 126. | A party who, without any interest in the property, its agreement, to receive as compensation for his services, a certain or compensation therefor; a certain proportion of the profits, and is neither held out to the world as a partner nor through the negligence of the owner, permitted to hold himself out as partner, is not a partner either as to the owner or third person. | When can a person be held liable to third persons as a partner? | 022538.docx | LEGALEASE-00189083 / LEGALEASE-00189084 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | |
| 15937 | In re Greenfield Direct Response, 171 B.R. 848 | 308=135(1) | Under Illinois law, an agent does not own property transferred to it by or for the benefit of the principal. An agent who collects money on behalf of the principal does not become the owner of such money. Therefore, an IGM received or will receive the funds in question as agent for the list owners...it did not and at that time had an interest in those funds. | Under Illinois law, agent who collects money on behalf of principal does not become owner of such money. | "Where an agent earns income on behalf of the principal within the scope of the agency and remits the income to the principal according to the agency relationship, does the income belong to the principal or the agent?" | 041288.docx | LEGALEASE-00149641 / LEGALEASE-00149642 | SA, Sub | 0.7 | 0 | | 1 | 1 | |
| 15938 | S. Pac. Transp. Co. v. Cont'l Shippers Ass'n, 642 F.2d 236 | 95B=5 | "Agency" is the fiduciary relation that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1348 (8th Cir. 1980) (quoting Restatement (Second) of Agency s 1 (1958)). Agency is a legal concept that depends upon the existence of certain factual elements (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. M. Finally, it is clear that a corporation may become an agent of a individual or of another corporation. Restatement (Second) of Agency s 14M (1958). | Corporation may become agent of individual or of another corporation. | Can a corporation become an agent of an individual? | Principal and Agent - Memo 147 - RC_58561.docx | ROSS-003296657-ROSS-003296658 | SA, Sub | 0.91 | 0 | | | 1 | |
| 15939 | S. Pac. Transp. Co. v. Cont'l Shippers Ass'n, 642 F.2d 236 | 95B=5 | "Agency" is the fiduciary relation that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1348 (8th Cir. 1980) (quoting Restatement (Second) of Agency s 1 (1958)). Agency is a legal concept that depends upon the existence of certain factual elements (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. M. Finally, it is clear that a corporation may become an agent of a individual or of another corporation. Restatement (Second) of Agency s 14M (1958). | Corporation may become agent of individual or of another corporation. | Can a corporation become an agent of another corporation? | 041394.docx | LEGALEASE-00149603 / LEGALEASE-00149604 | SA, Sub | 0.91 | 0 | | | 1 | |
| 15940 | Overton v. Perez, 153 Fla. 317 | 271=2901 | The true being thus clearly defined, it becomes our duty to ascertain for ourselves upon what the tax is laid, keeping in mind that the nature of the tax must be determined by its operation rather than by its terminology. Educational Films Corp. v. Ward, 282 U.S. 379, 387, 51 S.Ct. 170, 75 L.Ed. 400, 71 A.L.R. 1226. | The nature of a tax must be determined by its operation rather than its terminology. | What should determine the nature of the tax in a statute? | Taxation - Memo # 856 - C-IL_58484.docx | ROSS-003283254-ROSS-003283259 | Condensed, SA | 0.72 | 0 | 1 | | 1 | |
| 15941 | Raymond v. Middleton, 29 Pa. 529 | 83=360 | While a promissory note like that had taken the note up, and in no sense deduced title from the bank, he held it as a foreign bill, discharged of all equities originating on its creation; 3. A note drawn in this form, does not become negotiable, unless actually discounted by the bank designated in the instrument. An offer to discount at this bank, is a condition precedent to its negotiability. Its negotiable life commences when the bank becomes the owner. If rejected there, it sinks to the level of a common chose in action. Our state statutes, Indiana and Missouri, rejoin in similar statutes and interpretations. Indiana Statutes 1831, p. 406, Tucker v. Tipton, 4 Blackford 326. Revised Code of Indiana 1852, s. 364, Drake v. Markle, Indiana Sept... | It was held, that a note, made negotiable at a certain bank, without other words of negotiability, does not become a negotiable instrument until actually negotiated in the first place at the designated bank. | When does a note become negotiable? | 009682.docx | LEGALEASE-00150104 / LEGALEASE-00150105 | Condensed, SA, Sub Di 74 | 0.74 | 0 | 1 | 1 | 1 | |
| 15942 | Thompson v. Bank of Am., N.A., 773 F.3d 741 | 83(=481) | First, under Tennessee law, a promissory note is a negotiable instrument, unless it contains a conspicuous statement that it is not negotiable. Tenn.Code Ann. 47-3-104. A note can be transferred to another party who then receives the right to enforce the instrument. An assignment of a note is enforceable regardless of whether it is recorded. W.C. Early Co. v. Williams, 135 Tenn. 249, 186 S.W. 102, 103 (1916). | Under Tennessee law, assignment of a note is enforceable regardless of whether it is recorded. | Is record of assignment necessary to enforce a note? | 010814.docx | LEGALEASE-00150742 / LEGALEASE-00150743 | SA, Sub | 0.78 | 0 | | | 1 | |
| 15943 | First Nat. Bank v. Carr., 572 So. 2d 1106 | 83=417 | Additionally, we note that the three promissory notes used upon were bearer paper Bearer paper is transferable by mere delivery. LSA-R.S. 10:3-202(1)(d); How Orleans Public Service v. United Gas Pipe Line Co., 449 So.2d 1093 (La.App. 5th Cir.), writ denied, 456 So.2d 169 (La.1984). Hibernia established its status as a holder by producing the original notes. A holder is defined as a person "who is in possession of ... an instrument ... drawn, issued or indorsed ... to bearer ..." LSA-R.S. 10:1720. As a holder of an instrument, Hibernia has the right to enforce payment of the obligation. LSA-R.S. 10:3-301. See Calderera v. Wilkinson, 367 So.2d 349 (La.1979); Chemauls v. C & H Enterprises, Ltd., 514 So.2d 535 (La.App. 3rd Cir.1987). | Bearer paper is transferable by mere delivery. | Is bearer paper transferable by mere delivery? | 010956.docx | LEGALEASE-00150762 / LEGALEASE-00150763 | SA, Sub | 0.91 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19544 | Langenfeld v. Chase Bank USA, N.A., 537 F. Supp. 2d 1181 | 172H+1404 | Plaintiff argues that, notwithstanding the clear definition of "finance charge" as something other than an actual "extension of credit," a "finance charge" satisfies the general definition of "credit" set forth in 15 U.S.C. " 1602(e), which provides: "The term "credit" means the right granted by a creditor to a debtor to defer payment of a debt or to incur debt and defer its payment." In his briefs, Plaintiff contends: "The finance charge (debt) [was] incurred on Plaintiff's statement and the Defendant granted Plaintiff the right to delay payment until the date the minimum payment was due. Defendant allowed further deferment of the payment each billing cycle thereafter, while assessing additional fees and finance charges, therefore, the finance charge is an extension of credit as defined by the statute." (Pl.'s Resp. to Chase's Mot. for Summ. J. 13.) Plaintiff's argument appears to be that finance charges are extensions of "credit," as defined in " 1602(e), rather than merely the cost of credit, because new finance charges are imposed on unpaid finance charges as well as merchant charges. The Court rejects Plaintiff's argument. The best indicator of whether "finance charges" are "extensions of credit" is the actual definition of "finance charges," rather than a strained reading of the general "credit" definition. The definition of "finance charges" makes clear that they are "incident to" extensions of credit and are not themselves extensions of credit to an obligor. Further, the Supreme Court has stated that a creditor extends "credit" for purposes of the FCBA in only two instances: (1) "when it opens or renews an account;" and (2) "when the cardholder actually uses the credit card to make purchases." Koerner, 452 U.S. at 241, 101 S.Ct. 2281. The imposition of finance charges on amounts purchased is not included in such definition.19 | Allegedly erroneous finance charges in credit card holder's notices to creditors were merely incident to "extensions of credit," and thus did not qualify as extensions of credit pursuant to Fair Credit Billing Act's (FCBA) definition of "billing error;" at time of enacting FCBA, finance charges were clearly defined in statute as something other than extensions of credit. Fair Credit Billing Act, S 161(a), (b)(1, 2), 15 U.S.C.A. S 1666(a), (b)(1, 2); 12 C.F.R. S 226.13(a). | Is finance charge an extension of credit? | 013981.docx | LEGALEASE-00150724-LEGALEASE-00150725 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 19545 | Angell v. Bailey, 225 S.W.3d 834 | 156+19 | Estoppel by deed is the product of a good and valid deed. Powers v. Wallis, 258 S.W.2d 360, 362"63 (Tex.Civ.App.-Eastland 1953, writ ref'd n.r.e.) (citing Breen v. Morehead, 126 S.W. 650, 655 (Tex.Civ.App.1910), aff'd, 104 Tex. 254, 136 S.W. 1047 (1911)). The effect of estoppel by deed is to prevent a party to the deed from denying the truth of the recitals in a valid deed. See Freeman, 171 S.W.3d at 654. A "recital" is a formal statement in any deed or writing that is used to explain the reasons upon which the transaction is based. McMahan v. Greenwood, 108 S.W.3d 467, 484 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). | Estoppel by deed is the product of a good and valid deed. | Is estoppel by deed the product of a good and valid deed? | 017986.docx | LEGALEASE-00150614-LEGALEASE-00150615 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 19546 | PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525 | 307A+622 | We further note that Tennessee Rule of Civil Procedure 12.02(6) motions are not designed to correct inartfully drafted pleadings. Dobbs v. Guenther, 846 S.W.2d 270, 273 (Tenn.Ct.App.1992). However, a complaint should not be dismissed, no matter how inartfully drafted, if it states a cause of action. Id. (citing Paschall's, Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 152 (Tenn.1966); Collier v. Slayden Bros. Ltd. Partnership, 712 S.W.2d 106, 108 (Tenn.Ct.App.1985)). Nonetheless, there is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint. Utter v. Sherrod, 132 S.W.3d 344 (Tenn.Ct.App.2003), perm. app. denied (Tenn. March 8, 2004). | If a complaint makes out a cause of action despite what that action may be labeled, the complaint should not be dismissed for failure to state a claim upon which relief can be granted. Rules Civ.Proc., Rule 12.02(6). | "Should a complaint be dismissed, no matter how inartfully drafted, if it states a cause of action?" | 037095.docx | LEGALEASE-00150708-LEGALEASE-00150709 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 19547 | Alpine Lakes Prot. Soc'y v. Washington State Dep't of Nat. Res., 102 Wash. App. 1 | 149E+698 | Forest practices in Washington are governed by the Forest Practices Act, Ch. 76.09 RCW, and SEPA, Ch. 43.21C RCW. The Forest Practices Act authorizes the Forest Practices Board to adopt forest practice rules, and to the extent that the rules relate to water quality the DOE must also promulgate these rules. RCW 76.09.040; .050. The FPB is specifically delegated the task of establishing by rule which forest practices fit into each of four defined classes, based on their potential environmental impact: Class I, Class II, Class III and Class IV. The DNR administers and enforces the forest practice rules. RCW 76.09.040. The FPAB hears appeals arising from actions of DNR under the act. RCW 76.09.220(7). | Proper remedy for improper ruling of Forest Practices Appeals Board (FPAB) on summary judgment, that no environmental impact statement (EIS) was required under State Environmental Protection Act (SEPA) for a watershed analysis prepared by a timber company that made no mention of any future forest practices, was to remand matter to FPAB for a fact-finding hearing as to whether an EIS was necessary, taking into account unproposed but probable future forest practices; superior court could not determine as matter of law that EIS was required. West's RCWA 43.21C.030, 43.21C.031, 43.21C.037, 76.09.050; Wash. Admin. Code S 222-22-010 et seq. | Does the Forest Practices Act authorize the Forest Practices Board to adopt forest practice rules? | Woods and Forest - Memo 29 - ANM.docx | LEGALEASE-00040501-LEGALEASE-00040502 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 19548 | J.L. Mott Iron Works v. Metro. Bank, 78 Wash. 294 | 172H+551 | It is the law that a limited authority to indorse checks for deposit or collection only does not carry with it authority generally to assign or transfer title to the check from the payee. Hence an indorsement on the back of the check of the payee's name by his agent may be for the limited powers only of depositing the check with the bank so that the bank can collect it, or such indorsement may be for the general purpose of transferring the title to the check. If the authority of Crane was limited to indorsing for deposit only to plaintiff's credit, then the bank had no right to place it to the credit of any person except that of the plaintiff; but if Crane had authority to indorse generally, not only for deposit, but likewise for the purpose of negotiating or transferring title to said check, then the bank might have a right, dependent on the facts and the rule hereafter stated, to treat the check thus indorsed as having been transferred or assigned by plaintiff to Crane as Crane's personal property, to be controlled as Crane might direct. | A bank, in the absence of limitation of authority known to it, need not inquire as to the disposition of the proceeds of a check indorsed by a general agent, even where the general agent indorses the check to himself and has it credited to his private account, and, as to agents of limited authority, the matter falls under the general rule as to the scope of the authority that the principal holds out. | Is it law that a limited authority to indorse checks for deposit or collection only does not carry with it authority generally to assign or transfer title to the check from the payee? | Bills and Notes-Memo 1124-IS_59403.docx | ROSS-003292302-ROSS-003292303 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 19549 | Best v. Nokomis Nat. Bank, 76 Ill. 608 | 83E+429 | But the indorsements, if on the bills, are shown to have been for collection merely, and for no other purpose, and did not transfer the title. Edwards on Bills and Notes, sec. 253. R. A. Betts held the bills as agent, merely, of the Nokomis bank, who might, at their pleasure, annul his agency, and deprive him of all authority to receive the money due to them. Barker v. Prentiss, 6 Mass. 430. | An indorsement of a note or bill for collection does not transfer title therein. | "Do indorsement for collection merely, and for no other purpose transfer title?" | 010788.docx | LEGALEASE-00151343-LEGALEASE-00151344 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 19950 | Gainesville Fin. Servs. v. McDougall, 634 Ga. App. 820 | 105=190(1) | It is clear from a precise reading of these that in 1975 (and until 1975, with the advent of warning) the mere presence of an acceleration clause in the loan contract did not render the obligation and loan inception. As the court in cases pointed out, "the statute does not deal with the effect of acceleration clauses and . . . there may be a valid exercise of acceleration provisions where only the stated balance is sought. . . ." 5 (new, supra, 124 Ga App. p. 309, 184 S.E.2d p. 47.) | Decision by Court of Appeals that acceleration clauses providing that debtors' failure to pay any installment when due renders, at option of holders, all remaining installment at once due and collectable violate usurious law and could render the applied remaining balance into render a null and void contract entered into in good faith prior to such decision. Code, 55 13-201 et seq., 25-316, 25-9903. | Does mere presence of acceleration clause make the contracts usurious? | 01368.docx | LEGALEASE 00150808 - LEGALEASE 00150809 | Condensed, SA, Sub 0.2 | | 0 | | | 1 | 1 |
| 19951 | Com. v. Vonklein, 13 Pa. Super. 484 | 179=2 | The Maryland statute enacted upon by the Supreme Court of Maryland, in Fox v. Grain, 43 Md. Rep. 775, and in Rasch v. State, 43 Atl. Rep. 931, Laws 1899, prohibited the sale, etc., of "any article manufactured from animal fat or animal or vegetable oils in imitation or semblance of natural butter." | The intention of the legislature to the extracted from the Act of May 5, 1895, 31 P.S. St 606-807, 808, regulating the manufacture and sale of 1899, prohibited the sale of "any article manufactured from animal fat or animal or vegetable oils in imitation or semblance of the manufacture, and but oleomargarine may not be so colored in imitation to the yellow color of butter by the manufacturer, but oleomargarine may not be so colored yellow, but | "Is the sale of any article manufactured from animal fat, animal or vegetable oils prohibited?" | Adulteration Memo.xx2 _1VxGmwf3GtXgxCzd14R4xgf2xnFkrd4.docx | ROS5-0000001 47-ROS5-0000001 48 | Condensed, SA, Sub 0.22 | | 0 | | | 1 | 1 |
| 19952 | Mullen v. Morris, 279 Ne. 135 | 219=2 | Endorser is liable for interest on a bill according to the law of the place on the day of his endorsement. The Negotiable Instruments Law was adopted in this state in 1899 (Laws 1899, c. 336). . . . The endorser of a bill, when the same is written thereon, its negotiation. Rev. St. 1913, §§ 5138, 5139. No. 1, §§ 127 Par. 286, Mechanic's & Farmers' Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071, Ann. Cas. 1912A, 439. First National Bank v. Bach, 98 Nebr. 132, 136, 193 Pac. 2061. The section is found in 1899, with only a few exceptions, conform with the numbering of the Uniform Negotiable Instruments Law as it appears in the standard text books and as it is found in most of the states which have adopted it; and on the convenience or cross-reference when first referred to by be designated by both its Code number and by the number given to it under the act of 1899, but the latter number, whenever used, whether alone or in combination with the Code number, will always be placed in parenthesis. | The law of the place where the endorsement of paper is made will govern as to the rights and liability of the indorser and indorsee, rather than the law of the place where the instrument indorsed was made. | Which law governs the interest payable on a bill? | Bills and Notes - Memo 869 - 94_50150.docx | ROS5-00030984-ROS5-00030987 | Condensed, SA, Sub 0.14 | | 0 | | | 1 | 1 |
| 19953 | Case v. McGinnis, 107 Or. 123 | 8.30(+12 | | Where the Negotiable Instruments Law speaks it controls. | Is it necessary for the Negotiable Instruments Law to control when it speaks? | Bills and Notes - Memo 1043 - 96_50148.docx | ROS5-00312112-ROS5-00312113 | Condensed, SA 0.93 | | 0 | | | 1 | 1 |
| 19954 | Hoara v. Hamblin, 29 Iowa 501 | 8.30(+12 | Admitting the certificates of deposit to be negotiable under the law of New York, the state where they were issued and made payable, the court cannot not inquire whether the suit of the instrument of the paper. The indorsements were made in this state. It is said in Thorp, Smith & Fancourt v. Craig, 10 Iowa, 462, that the law of the place, of the contract of indorsement is consistent with the liability of the indorser. In that case it was held that a party who indorsed a note, payable in New York, must be thereon. Where the contract of the indorsement in New York, the liability of the indorser. In that case it was held that a party who indorsed a note, payable in New York, be held to be liable according to our law, in order to be held liable thereon. This may be considered the settled rule of this state, and the following authorities are in accord therewith: Bank v. Van Vuren, 1 Bosw. p. 502; Robert v. Leishtown, 1 Barb. 652; Kinkead v. Stephens, 1 Mich. 367; Story, Conf. Laws, § 307, 314; Rowell, 12 N. H. 85; Dun v. Adams, 1 Ala. 527; Yoatman v. Culver, 2 Black, 640; Bussman v. Lockey, 13 Ohio 480; Bank v. Buck, 1A Vt. 147; Aden v. Merchants Bank, 22 Wend, 215 | Does the law where the contract took place govern the liability of the indorser? | Bills and Notes - Memo 1043 - 96_50148.docx | ROS5-00033086-ROS5-00033088 | SA, Sub 0.78 | | 0 | | | 1 | 1 |
| 19955 | Thompson v. 10,000 RV Sales, 130 Cal. App. 4th 950 | 172H=93 | The California Legislature enacted the ADA to protect motor vehicle purchasers from abusive selling practices and excessive charges by requiring full disclosure of all terms of a sale (Automobile Sales Finance Co.; [1983] 130 Cal.App.3d 65, 69, 161 Cal.Rptr. 279.) Under the ADA, every contract and loan agreement for the sale of motor vehicles must set forth details concerning the sale, financing and complete costs of purchasing the vehicle." (2982, the ASA, Stern v. Atlantic Finance Co., supra, at p. 68, 164 Cal.Rptr. 279.) Moreover, in determining whether consumer protection laws such as the ASA apply in a particular transaction, we look to the substance of the transaction and not at what name the parties have elected to call it. (General Motors Accept. Corp v. Kyle [1977] 14 Cal.3d 887, 135 Cal.Rptr. 37, 539, 557 P.2d 1349.) | Although financing properly disclosed negative equity in a vehicle credit sale is permissible under the Automobile Sales Finance Act (ASFA) and Federal Reserve Regulation Z, it is not permissible to hide the loan allowance in the sale price of a vehicle, which interpretation is consistent with the intended purposes of protecting consumers from inaccurate and unfair credit practices through full and honest disclosures. Here's Ann.Cal.Civ.Code §2982.1 2 C.F.R. § 226.1. | Is the purpose of ASFA to protect purchasers of motor vehicles from excessive charges? | 01896.docx | LEGALEASE 00151586 - LEGALEASE 00151587 | SA, Sub | 0.53 | | 0 | | | 1 | 1 |
| 19956 | Wellmaker v. Lamar Cty. Advisory Bd., 4 Ga. App. 816 | 268v(+711 | The county authorities cannot lawfully discontinue a public road except in the manner prescribed by law, after application and notice and registration thereon properly prescribed prior. Carter v. Adams, 73 Ga. 708. 1811, see Political Code, § 601.) 601.617, 6, 1, 1, 1, 10.1 Civil Code 1910, "604-644, Hembree v. Cooper, 149 Ga. 660, 671, 102 S. E. 909. Where an order has not been applied for or discontinued in the manner prescribed by law, and the failure of the county authorities to work it and keep it up is a failure to property owner's affected by the failure by its manner nevertheless only, to compel the county authorities to keep up and repair the road as an established road. Civil Code 1910, "5441; Elbert County v. Swift, 2 Ga. App. 47 § 644." | Public road cannot be lawfully discontinued, except in manner prescribed by statute, Civ.Code 1910, SS 636-644. | Can an existing public road be discontinued without notice and registration in the proper office? | 01844.docx | LEGALEASE 00151711 - LEGALEASE 00151712 | SA, Sub | 0.85 | | 0 | | | 1 | 1 |
| 19957 | Simmons v. Stuckey, 1925 371=(2028 06 67.3 | | In the third syllabus in the case of Schuff v. Bovum, County Treasurer, 620v 82v, 185, 107 S., 130, the court said, "By the Act of March 13, 1913, chapter 173, Sess. Laws 1915, creating a department of highways and maintenance of such roads, and the county excise boards of the respective counties of the state of the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are invested with authority to levy taxes for the purposes of carrying into effect the provisions of said act, so long as such levies, when added to the levies for current expenses of the respective counties, do not exceed the constitutional limitation of mills." | Legislature authorization of additional appropriation of tax levies for counties and other municipal subdivisions, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Are the county excise boards authorized to make levies for the construction of county Highways? | 01874.0.docx | LEGALEASE 00151656 - LEGALEASE 00151657 | Condensed, SA, Sub 0.7 | | 0 | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 19558 | Simmons v. Stuckey, 1915 OK #73 | 371+2028 | In the third phrase in the case of Scluff v. Borum, County Treasurer, 82Okl. 284, 200 P. 191, the court said: "The Act of March 15, 1915, chapter 173, Sess. Laws 1915, creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purposes of carrying into effect the provisions of said act, so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 6 mills." | Legislative authorization of additional appropriation of tax levies for counties and other municipalities, which, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Are the county excise boards authorized to make levies for the construction of state highways? | 010744.docx | LEGAL0UE-00151660 LEGAL0UE-00151661 | Condensed, SA, Sub 0.7 | 0.7 | | | 1 | 1 |
| 19559 | Simmons v. Stuckey, 1915 OK #73 | 371+2028 | In the third phrase in the case of Scluff v. Borum, County Treasurer, 82Okl. 284, 200 P. 191, the court said: "The Act of March 15, 1915, chapter 173, Sess. Laws 1915, creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purposes of carrying into effect the provisions of said act, so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 6 mills." | Legislative authorization of additional appropriation of tax levies for counties and other municipalities, which, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Are the county excise boards authorized to make levies for the maintenance of state highways? | 010757.docx | LEGAL0UE-00151668 LEGAL0UE-00151669 | Condensed, SA, Sub 0.7 | 0.7 | | | 1 | 1 |
| 19560 | Simmons v. Stuckey, 1915 OK #73 | 371+2028 | In the third phrase in the case of Scluff v. Borum, County Treasurer, 82Okl. 284, 200 P. 191, the court said: "The Act of March 15, 1915, chapter 173, Sess. Laws 1915, creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise boards of the respective counties of the state are vested with authority to levy taxes for the purposes of carrying into effect the provisions of said act, so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 6 mills." | Legislative authorization of additional appropriation of tax levies for counties and other municipalities, which, together with levies previously authorized, do not exceed constitutional limitation, held valid. | Are county excise boards authorized to make levies for the maintenance of county highways? | 010759.docx | LEGAL0UE-00151670 LEGAL0UE-00151671 | Condensed, SA, Sub 0.7 | 0.7 | | | 1 | 1 |
| 19561 | DeBartolo v. Smith, 577 F. Supp. 1469 | 46+6 | The Court declined to issue the requested subpoenas on the ground that such testimony of the subpoenaed parties was immaterial. William Peterson, a Supreme Court Justice and participant in the Constitutional Convention, was not subpoenaed. The Court found that it "is expressed in general, unqualified terms; it contains no condition, no exception." Justice Peterson then determined that the Constitution itself does not create such an exception for the President. "This is the document [the Constitution], which measured not the powers and defines the duties of the President, does not in terms make any authority to act on the matter of subpoenas against a person with which the United States is party to a proceeding; and Justice Peterson stated that "the law under consideration is absolute" and "requires compliance." | Attorney General could not refuse to compel preliminary investigation under Ethics in Government Act where executive officials violated Neutrality Act by supporting paramilitary operation against Nicaragua on ground that the operations were authorized by the President since the Neutrality Act applies to all persons, including the President. 18 U.S.C.A. § 960, 28 U.S.C.A. §§ 591-598. | Is an exception created for the President under the Neutrality Act? | 021730.docx | LEGAL0UE-00151594 LEGAL0UE-00151595 | Condensed, SA, Sub 0.54 | 0.54 | | | 1 | 1 |
| 19562 | U.S. Bank, Nat. Ass'n v. Schaeffer, 3d Com. App. 138 | 83H+728 | At the outset of this matter we believe it useful to summarize our existing jurisprudence on standing in foreclosure matters. The ability to enforce a note in Delaware is governed by the adoption of various provisions of the Uniform Commercial Code (UCC), particularly Article 3 ("Negotiable Instruments"). Pursuant to the UCC, a party entitled to enforce an instrument means the holder of the instrument" [Internal quotation marks omitted.] When a note is endorsed in blank, as in the present case, the note becomes payable to the "bearer" of the note. See General Electric Capital Corp. v. Hardy Props., LLC v. Miller, 363 Conn. 224, 231, 32 A.3d 307 (2011), overruled in part on other grounds by J.E. Robert Co. v. Signature Properties, LLC, 309 Conn. 307, 24 n. 18, 71 A.3d 492 (2013). When a person or entity has possession of a note endorsed in blank, it becomes the valid holder of the note. General Statutes "§ 42a-3-201(b) (2011). Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. See NMS Residential Properties, LLC v. Miller, 4731, 32 A.3d 307. | A party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. C.G.S.A. §§ 42a-1-201(b)(21)(A), 42a-3-205, 42a-3-301. | Does possession of a note by a person make a firm a valid holder of the note? | 010331.docx | RDSS-00313317 RDSS-00313318 | SA, Sub | 0.81 | | 1 | | 1 |
| 19563 | Gannon v. Boroston, 246 U.S 512 | 8.30E+04 | The suspicious show that this court regards the Negotiable Instruments Law not as a codification, nor as a restatement of the law as it was, in view of what we have said heretofore opposing. If we shall adopt the majority view, [is] that... | Is Negotiable Instruments Law a codification, compilation, or restatement of preexisting law. | 010011.docx | LEGAL0UE-00152404 LEGAL0UE-00152405 | SA, Sub | 0.75 | | | 1 | 1 |
| 19564 | Ashira v. Peterson, 12 Mo., 8,30E+04 24.209 | 8.30E+04 | Note not shown to be a negotiable instrument but the negotiable instrument law, enacted by ch. 116, Stats., is a codification of the law merchant, and for purposes of law merchant the question whether the note is or is not a negotiable instrument. Either way the note is not shown to have been destroyed and plaintiff cannot maintain an action upon it without being able to produce it or satisfactorily account for its loss or nonproduction upon payment. Otherwise, a judgment in this plaintiff's favor may leave outstanding a note for later presentation against the maker by one actually a holder of the note and not concluded by the judgment in an action to which the actual holder was not a party. | Negotiable instrument Law is a codification of the law merchant. W.S.A. 116.79. | Is Negotiable instruments a codification of the Law Merchant? | 010011.docx | RDSS-00163294 RDSS-00181295 | SA, Sub | 0.89 | | | 1 | 1 |

3446

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19565 | Grimes v. Warner, 45 Iowa 1996 | 83 t+133 | A holder of negotiable paper, to be protected against equities existing between the original parties, must have acquired his indorsement before maturity. A transfer, except by indorsement, even before maturity carries no such consequences. Fink kin v. Twogood, 18 Iowa, 515. The holder under a blank indorsement may transfer the paper without any further indorsement, or the paper may be negotiated by indorsement… The indorsement of a promissory note to be taken as collateral security confers the rights of a bona fide purchaser upon the holder. Sheldon, Hoyt & Co. v. Middleton, 10 Iowa, 17; McCarty v. Clark, id., 588. | Where a promissory note had been transferred by indorsement as collateral security, and then, before maturity, with the knowledge of the indorsee, the payee had sold it to a third party, into whose possession it did not come until after maturity, held that the holder acquired it free from equities, and occupied the position of a good faith indorsee before maturity. | Does promissory note take as collateral security confer title upon the holder? | Bills and Notes Memo 1076 -B_00031.docx | ROSS-003283124-ROSS-003283125 | Condensed, SA, Sub 0.48 | | 0 | | 1 | | 1 |
| 19566 | Bishop v. Chase, 156 Mo. 158 | 83 t+142 | In passing upon a similar question in Osgood's Adm'rs v. Artt, C.117 Fed. 575, it was said: "As a general rule, the legal title to negotiable paper, payable to order, passes, according to the law merchant, only by the payee's indorsement on the security itself. The only established exception to this rule is where the indorsement is made on a separate piece of paper so attached to the original instrument as, in effect, to become part thereof, or be incorporated into it. This additional is an allonge, and in all cases and elementary treatises, un "allonge." The allonge finds its origin in cases where the back of the instrument had been so covered with indorsements or with other writing, leaving no room for further indorsements thereon. But, perhaps, an indorsement upon a piece of paper, attached in the manner stated, would now be deemed sufficient to pass the legal title, although they may have been, in fact, room for it on the original instrument. The law of Cooke v. Clark is in effect the law of Cooke v. Clark in these cases. But the weight of authority is against it, and holds that an indorsement or transfer of a promissory note must be upon the paper attached to and made a part of the note, and that it is not essential by a separate or writing the indorser. An indorsement made upon a separate piece of paper, not in any manner attached to or incorporated with the note, shall not be enforced the indorser. | An indorsement of a note written on a separate piece of paper, reciting that the note, with deed of trust accompanying, was placed as collateral security for a loan to another note, and attached to the original security, was insufficient to vest the indorsee with the rights of a bona fide purchaser. | Can an indorsement be made in another attached paper as part of the note? | Bills and Notes Memo 1108-B_00064.docx | LEGALEASE-00152485-LEGALEASE-00152486 | Condensed, SA, Sub 0.84 | | 1 | | 1 | | 1 |
| 19567 | Bishop v. Chase, 156 Mo. 158 | 83 t+142 | The case of Frisbey v. Frisbey, 94 Wis. 453, goes further, and holds that an indorsement or transfer of a promissory note may be on another paper attached so that it may become part of the note, and that it is not the convenience of the parties requires it. But the court of Iowa, Illinois, and Nebraska have all refused to follow that case. In Crosby v. Roub, 16 Wis. 616, the Racine & Mississippi Railroad Company received a negotiable note payable to itself. The railroad company was the highest court of that state in Crosby v. Roub, supra, that the ruling should be followed. But the view of the case as a whole, and including that in an indorsement or transfer of a negotiable note, is to vest the note in another as collateral security for itself; but the view of the case as a whole is that the indorsement or transfer of the note may be upon the paper attached to, and made a part of the note, which were attached together, but that this law court refused to follow, and held it in a like manner the ruling in 1881 a case upon the same series of bonds and notes, issued by the Racine & Mississippi Railroad Company and the like, held by the bank of the same, which were attached good. This case (Franklin v. Twogood, 25 Iowa, 520) was before the supreme court of that court of Iowa again in 1868. It was then urged that the contract was a Wisconsin contract; and, having been construed by the highest court of that state in Crosby v. Roub, supra, that the ruling should be followed. But the Iowa court refused it, and held in an indorsement upon a separate series of bonds and notes, issued by the Racine & Mississippi Railroad Company, must attached the bond, note, and mortgage securing the same, which were attached together. | An indorsement of a note written on a separate piece of paper, reciting that the note, with deed of trust accompanying, was placed as collateral security for a loan to another note, and attached to the original security, was insufficient to vest the indorsee with the rights of a bona fide purchaser. | "To transfer a promissory note, can another paper be attached when there is no room in the note itself?" | Bills and Notes Memo 1108-B_00064.docx | ROSS-003279553-ROSS-003279553 | SA, Sub | | 0 | | 1 | | 1 |
| 19568 | Monro v. Merchants' Loan & Tr. Co., 199 Ill App. 224 | 83 t+426 | In this State, notes indorsed in blank pass by mere delivery. Morris, Adm'x, v. Preston et al., 93 Ill. 215; Keeney v. Saunders, 109 Ill. 292; Wilder v. DeCall, 26 Ill. 190. | A note indorsed in blank passes by delivery. | Can notes indorsed in a blank pass by delivery? | Bills and Notes Memo 1114-PN_59041.docx | ROSS-003319192 | SA, Sub | 0.76 | 0 | | 0 | | 1 |
| 19569 | United States of America v. S. W.H.L. and Michael and Virginia McGee, 855 F. Supp. 1327 | 200+79.1 | The question to be decided is whether the road has been abandoned. In the usual case, whether a road has been abandoned is a question of fact. Stewart v. Board of County Comm'rs of Eagle County, 159 Colo. 353, 411 P.2d 782, 785 (1966). Whether a road has been abandoned? "receives the question to be decided as not enough, unless coupled with affirmative evidence of a clear intention to abandon." See also, Koenig v. Fleming, 236 Iowa 480, 18 N.W.2d 159, 162 (1945). Because it is anticipated that the Road has been blocked for public use since 1980, the issue is whether the abandonment party intended to abandon or vacate the Road. | Whether there has been abandonment of a road is ordinarily a question of fact to be resolved by trial court. West's C.R.S.A. S 43-2-106, 411 P.2d 782, 785 (1966). | Is abandonment a question of fact? | Highways - Memo 237 RK_60180.docx | ROSS-003295485-ROSS-003295486 | Condensed, SA, Sub 0.8 | | 0 | | 1 | | 1 |
| 19570 | Stefano v. Fleming, 236 Iowa 480 | 200+79.1 | In 25 Am.Jur. 365, section 47, the following statement is made: "A highway must be in existence before it may be abandoned or vacated, and there must be such owing to abandonment or some other lawful cause, and the burden of showing a discontinuance, vacation, or abandonment is on the party who alleges it." | A highway once shown to exist is presumed to continue to exist, and abandonment is not presumed; party seeking to establish abandonment must produce clear and satisfactory evidence by one asserting such abandonment. | Is there a presumption that once a highway is shown to exist it continues to exist? | Highways - Memo 237 RK_60180.docx | LEGALEASE-00152511-LEGALEASE-00152512 | Condensed, SA, Sub 0.39 | | 0 | | 1 | | 1 |

3447

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19571 | Bank of Am., N.A. v. Rice, 2017 WL 4931814 | 307A+681 | "If, however, documents are attached to and incorporated within a complaint, they become part of the complaint. They may, therefore, be considered in connection with a Rule 12(b)(6) or 12(c) motion without converting it into a motion for summary judgment." Weaver v. Saint Joseph of the Pines, Inc., 187 N.C.App. 198, 204, 652 S.E.2d 701, 707 (2007). This is due to the fact that [t]he obvious purpose of ... Rule 12(b) is to preclude any unfairness resulting from surprise when an adversary introduces extraneous material on a Rule 12(b)(6) motion, and to allow a party a reasonable time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those contained in the pleadings. | Documents attached to and incorporated within a complaint may be considered in connection with a motion for judgment on the pleadings or a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment, because the obvious purpose of rule requiring conversion of motion to dismiss for failure to state a claim to motion for summary judgment if matters outside the pleadings are presented is to preclude any unfairness resulting from surprise when an adversaryintroduces extraneous material on a motion to dismiss for failure to state a claim, and to allow a party a reasonable time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those cont ained in the pleadings. Rules Civ.Proc., Rule 12(b), (b)(6), (c), West's N.C.G.S.A. S 1A-1. | "If documents are attached to and incorporated within a complaint, do they become part of the complaint?" | Pretrial Procedure - Memo # 9141 - C - DA_60089.docx | ROSS-003294534-ROSS-003294535 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 19572 | Chumasero v. Gilbert, 24 Ill. 293 | 8.30E+10 | The note read in evidence in this case, specified no rate of interest, and in the absence of any specific rate, the presumption is, that the rate is the same at the place of its execution, as it is within the jurisdiction of the court. Where no rate is specified, our statute has authorized the recovery of only six per cent., and the party, to recover more, should have shown by averment in his declaration, that the laws of New York authorized a recovery of a greater rate of interest, and should have sustained the averment by proof. In this case there was no such averment, and there was, consequently, error in permitting proof of that fact. | A party will only be allowed to recover interest according to the law of the forum, in the absence of an express agreement, unless it be alleged and proved that the law of the place of execution of the note sued fixes a higher rate. | Which law governs a note if no rate of interest is specified? | 009873.docx | LEGALEASE-00153593-LEGALEASE-00153594 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 19573 | Ameritrust Co. v. White, 73 F.3d 1553 | 8.30E+282 | A situation could develop, by mistake or otherwise, wherein the partnership exercises its option before the holder declares a default. In such case, the maker might well decline to cure an overdue payment or to make future payments because of the forfeiture. This exemplifies the reason why negotiable instruments may contain no other promise, order, obligation, or power except as authorized by the statute. | To be negotiable, as unconditional promise to pay sum certain in money with no other promise, order, obligation, or power, note must be like a courier without luggage; it must move unencumbered. O.C.G.A. S 11-3-104(1). | Can a negotiable instrument contain any promise other than an unconditional promise to pay a fixed amount of money? | 009877.docx | LEGALEASE-00153609-LEGALEASE-00153610 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 19574 | Bishop v. Chase, 156 Mo. 158 | 83E+542 | This addition is called, in the adjudged cases and elementary treatises, an "allonge." That device had its origin in cases where the back of the instrument had been covered with indorsements or writing, leaving no room for further indorsements thereon. But, perhaps, an indorsement upon a piece of paper, attached in the manner indicated, would now be deemed sufficient to pass the legal title, although there may have been, in fact, room for it on the original instrument. The case of Crosby v. Roub, 16 Wis. 616, goes further, and holds that an indorsement or transfer of a promissory note may be on another paper attached to and made a part of the note, and that it is not essential to a transfer of a note by this method that there should have been a physical impossibility of writing the indorsement or transfer on the note itself, but it may be on another paper attached to the note, whenever necessity or the convenience of the parties requires it. But the courts of Iowa, Illinois, and Nebraska have all refused to follow that case. In Franklin v. Twogood, 18 Iowa, 515, the Racine & Mississippi Railroad Company received a negotiable note payable to itself. Before the maturity of the note the railroad company executed its bond, payable "to - or bearer," for a certain sum, and as collateral security for the bond it assigned and transferred the note, describing it. | An indorsement of a note written on a separate piece of paper, reciting that the note, with deed of trust accompanying, was placed as collateral security for a loan on another note, and attached to the original and collateral notes by a pin, where there is plenty of room on the note for the indorsement, was insufficient to invest the transferee with the rights of a bona fide purchaser. | Can another paper be attached and made part of the notew hen there is a physical impossibility of an indorsement on the note itself? | 009881.docx | LEGALEASE-00153616-LEGALEASE-00153617 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 19575 | Ctr. Coll. v. Trzop, 127 S.W.3d 562 | 92+4224(11) | Centre College is a private institution of higher learning. As such, it is not constrained to the same rules and standards as public schools or institutions. Historically, Kentucky courts have been reluctant to restrain the rights of private colleges to discipline, regulate, or impose restrictions upon their students. See Kentucky Military Inst. v. Bramblet, 158 Ky. 205, 164 S.W. 808, 809"810 (1914); Gott v. Berea College, 156 Ky. 376, 161 S.W. 204, 206 (1913); Lexington Theological Seminary v. Vance, Ky.App., 596 S.W.2d 11 (1979). | College, as a private institution, was not required to afford dismissed student same due process as if it were a public school or any other "state actor." U.S.C.A. Const.Amend. 14. | Are colleges or private institutions constrained to the same rules and standards as public schools or institutions? | 06606.docx | LEGALEASE-00096631-LEGALEASE-00096632 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 19576 | Slater v. Marshall, 906 F. Supp. 256 | 141E+990 | Slater does not address this argument, but her complaint alleges that MCCC is a public college organized pursuant to the laws of the Commonwealth of Pennsylvania, 24 Pa.Cons.Stat.Ann. " 19"1901 through " 19"1913"A (1992). Based on our research, however, it appears that community colleges are considered local agencies, not state agencies. Brown v. Community College, 654 A.2d 32, 33"35 (Commw.Ct.1994) (citing cases). MCCC does not argue that local agencies are immune from punitive damage awards, only that state agencies are. See e.g. Quinn v. SEPTA, 659 A.2d 613, 615 (Commw.Ct.1995) (Feingold had to decide whether SEPTA was Commonwealth or local agency because only Commonwealth agency immune from punitive damages). Because we find that MCCC is a local agency we find that Feingold does not apply and do not dismiss the punitive damages claims against MCCC. | Under Pennsylvania law, community colleges are considered local agencies, not state agencies. | Is a community college a local agency? | Education - Memo #158 - C - ATS_60328.docx | ROSS-003281555-ROSS-003281556 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 19577 | Goldberg v. Regents of Univ. of Cal., 248 Cal. App. 2d 867 | 141E+990 | Article IX, section 9 of the state Constitution, provides that the University of California shall constitute a public trust to be administered by the existing corporation known as The Regents of the University, with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowment of the University and the security of its funds. Accordingly, the University is a constitutional department or function of the state government (Williams v. Wheeler, 23 Cal.App. 619, 138 P. 937; Newmarker v. Regents of Univ. of Cal., 160 Cal.App.2d 640, 325 P.2d 558). | State university is constitutional department or function of state government. West's Ann.Const. art. 9, S 9. | Is a university a function of state government? | 017078.docx | LEGALEASE-00152963-LEGALEASE-00152964 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19578 | W.R. Townsend Contracting v. Jensen Civil Const., 728 So. 2d 297 | 30+3281 | "To state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." Perry v. Cosgrove, 464 So.2d 664, 665 (Fla. 2d DCA 1985); Fla. R. Civ. P. 1.110(b) (requiring "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief"). In reviewing an order granting a motion to dismiss for failure to state a cause of action, we must accept as true all well-pled allegations in Appellant's sixth amended complaint, and we must draw all reasonable inferences in favor of the pleader. Response Oncology, Inc. v. Metrahealth Insurance Co., 978 F.Supp. 1052, 1058 (S.D.Fla.1997) (courts must liberally construe, and accept as true, factual allegations in complaint and reasonably deductible inferences therefrom, but need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party); Higgs v. Florida Department of Corrections, 647 So.2d 962 (Fla. 1st DCA 1994); Abruzzo v. Haller, 603 So.2d 1338 (Fla. 1st DCA 1992). Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, the ruling on a motion to dismiss for failure to state a cause of action is subject to de novo standard of review. Sarkis v. Pafford Oil Co., 697 So.2d 524 (Fla. 1st DCA 1997). | In reviewing an order granting a motion to dismiss for failure to state a cause of action, appellate court must accept as true all well-pled allegations in complaint, and draw all reasonable inferences in favor of the pleader. | Should the court accept internally inconsistent factual claims? | 023694.docx | LEGALEASE-00153376-LEGALEASE-00153377 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 19579 | Patrick v. McManus, 14 Colo. 65 | 302+24 | The answer filed in the cause was stricken out as a sham answer, and judgment thereupon entered for the plaintiff for the amount claimed in the complaint. Should such action of the court be sustained? Whether the pleading was objectionable for other reasons than the one urged is not material. Appellee's motion was based solely upon the claim that the answer was a sham one. That part of the Code relating to sham answers reads as follows: "Sham and irrelevant answers and defenses, and so much of any pleading as may be irrelevant, redundant, immaterial, or insufficient, may be stricken out upon motion, and upon such terms as the court, in its discretion, may impose." Section 61. "Sham pleading," as defined by Chitty, is the pleading of a matter known by the party to be false, for the purpose of delay or other unworthy object. 1 Chit. Pl. 541. Bliss, in his work upon Code Pleadings, says that a "sham pleading" is one good in form and false in fact. Section 422. In Bouvier's Law Dictionary a "sham plea" is said to be one entered for the mere purpose of delay, concerning a matter which the pleader knows to be false. It will be seen, from these definitions, that the essential element of a sham plea is its falsity; and yet it is evident that not every false plea can be stricken out upon motion supported by affidavit, as this would be to substitute a trial to the court upon affidavits for a jury trial. | The essential element of a sham plea is its falsity. | Is falsity the essential element of a sham plea? | Pleading - Memo 519 - RMM_60641.docx | ROSS-003283351-ROSS-003283352 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 19580 | Adams v. State Farm Mut. Auto. Ins. Co., 264 S.W.3d 424 | 302+26 | Pleadings are not required to take any particular form. Cox v. Union Oil Co., 917 S.W.2d 524, 526 (Tex.App.-Beaumont 1996, no writ). In the absence of a special exception, we construe a pleading in favor of the pleader. Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex.2000); McGraw v. Brown Realty Co., 195 S.W.3d 271, 275 (Tex.App.-Dallas 2006, no pet.). The pleadings show State Farm was a plaintiff when the suit was originally filed on March 28, 2003 and remained a plaintiff throughout the succeeding amendments to the petition. Although State Farm was not listed in the heading and preamble as a plaintiff, the traditional location for listing the parties, State Farm was identified as a plaintiff in the body of the petition. We overrule Adams's first issue. | Pleadings are not required to take any particular form. | Are pleadings required to take any particular form? | Pleading - Memo 527-RMM_61215.docx | ROSS-003279172-ROSS-003279173 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 19581 | Poola v. Howard Univ., 147 A.3d 267 | 307A+681 | But at the pleading stage, the plaintiff's burden "is not onerous." Equal Rights Ctr., 110 A.3d at 603. If a complaint's factual allegations are sufficient, "the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." Doe v. Bernabei & Wachtel, PLLC, 116 A.3d 1262, 1266 (D.C.2015). | At the pleading stage, the plaintiff's burden is not onerous; if a complaint's factual allegations are sufficient, the case must not be dismissed for failure to state a claim on which relief can be granted even if the court doubts that the plaintiff will ultimately prevail. D.C. Super. Ct. R. Civ. P. 12(b)(6). | "At the pleading stage, is the plaintiff's burden not onerous?" | 038236.docx | LEGALEASE-00153215-LEGALEASE-00153216 | SA, Sub | 0.04 | 0 | 0 | 1 | 1 | |
| 19582 | Ackerman v. Sobol Family P'ship, LLP, 298 Conn. 495 | 308+99 | With respect to the governing legal principles, "it is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal, and within the scope of the agent's employment.... An agent's authority may be actual or apparent.... Actual authority exists when [an agent's] action [is] expressly authorized ... or ... although not authorized, [is] subsequently ratified by the [principal]." (Citations omitted; internal quotation marks omitted.) Maharishi School of Vedic Sciences, Inc. (Connecticut) v. Connecticut **299 Constitution Associates Ltd. Partnership, 260 Conn. 598, 606"607, 799 A.2d 1027 (2002). In contrast, "[a]pparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. The issue of apparent authority is one of fact to be determined based on two criteria. First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action. | A principal may make a manifestation of apparent authority by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation, and third parties who interact with the principal through the agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so. Restatement (Third) of Agency S 3.03, comment. | How is apparent authority determined? | 041416.docx | LEGALEASE-00153680-LEGALEASE-00153681 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 859 | 15,944 | 14,973 | 23,876 | 9,079 |
| 15583 | Hidden Brook Air v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246 | 308+96 | An agent's authority may be actual or apparent. Actual authority exists when at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act. | Actual authority of an agent may be express or implied, and distinction turns on the nature of the representation by which principal delegates authority to agent. | Can actual authority of an agent be express or implied? | 04150.docx | LEGALEASE-00152460 LEGALEASE-00152461 | SA, Sub | 0.9 | 0 | 0 | 0 | 1 | |
| 15584 | Cullum v. Parks, 847 So. 2d 533 | 308+91(1) | The trial court also found that Cullum defaulted under the lease by failing to cure the May 2005 late rent payment. | An agent both speaks on behalf of and binds the principal. | Can an agent speak on behalf of the principal? | Principal and Agent Memo 269 - RC_00590.docx | ROSS-003280018 ROSS-003280019 | Condensed, SA | 0.96 | 1 | 1 | 0 | 1 | |
| 15585 | Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243 | 308+99 | We are dealing in the instant case with possible implied authority, not apparent authority. Implied authority may be viewed as "actual authority given implicitly by a principal to its agent" or as a "kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers." Lind v. Schenley Industries, Inc., 278 F.2d 79, 85 (3d Cir.1960) | Apparent authority is based on principle of estoppel and arises when principal places agent in position where it appears that agent has certain powers which he may or may not actually possess; thus, when third person holds reasonable belief that agent was acting within scope of his authority and changes his position in reliance on agent's act, principal is estopped to... | How is implied authority viewed in the context of a principal-agent relationship? | Principal and Agent Memo 303 - RC_00065.docx | ROSS-003281776-ROSS-003281777 | SA, Sub | 0.04 | 1 | 0 | 0 | 1 | |
| 15586 | Church of Peace v. City of Rock Island, 357 Ill. App. 3d 47 | 171+2901 | The plaintiffs cite Dornette v. City of Columbus, 12 Or. Tax 184, 1991 WL 89901 (Oregon Tax Court 1991) for the proposition that a similar ordinance was a tax. The City responds by citing Howard Jarvis Taxpayers Association v. City of Salinas, 98 Cal.App.4th 1351, 121 Cal.Rptr.2d 228 (6th Dist.2002), wherein the court held a similar service charge was a fee "for a public improvement"... | Taxes are an enforced proportionate contribution levied by the state by virtue of its sovereignty for support of the government; in contrast, a service charge or fee is contractual in nature, either express or implied, and as compensation for the use of another's property, or of an improvement made by another, and their amount is determined by the cost of the property or improvement and the consideration of the return which such an expenditure should yield. | How is a taking different than a tax? | 04986.docx | LEGALEASE-00152335 LEGALEASE-00152334 | SA, Sub | 0.65 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19587 | Miles v. Gordon, 234 Ark. 525 | 371+2301 | It is apparent from a study of the decision rendered in Gipson v. Ingram, supra, that the Court's conclusions were based on the holding that the Legislature had the authority to determine whether certain designated funds should be paid into the State Treasury. We are of the opinion that the Legislature is not prohibited by our Constitution from separating the interest from the principal or from pledging it, as it sees fit, for that matter, taxes and interest are not the same. Taxes are enforced contributions exacted pursuant to statutory authority, while interest is the price paid for a forbearance of the use of what is borrows, generally a percentage on the principal amount. We hold that interest, when separated from the principal by legislative enactment, is not "taxes", as the term is ordinarily used, and there is no requirement that this interest be deposited in the State Treasury, this being true, there is no necessity for the theoretical appropriation. | "Taxes" are enforced contributions exacted pursuant to statute. | Are taxes enforced contributions exacted pursuant to statutory authority? | 040066.docx | LEGALEASE 00153461 LEGALEASE 00153482 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 19588 | Fed Land Bank of Saint Paul v. Anderson, 401 N.W.2d 709 | 21+9 | Anderson asserts that F1B provided an insufficient affidavit of proof to support its motion for summary judgment because the affidavit does not establish that he had a default on the note and mortgage. Although FLB's affidavit does not rest on the face of the affidavit that the Andersons were in default, the affidavit states that "[a]ttached hereto and made a part hereof are the following marked as exhibits: ... Exhibit 'C' is a photocopy of the original Amortization Schedule showing Proof of Service by mail." The affidavit further states that the documents specifically listed including Exhibit C, HAVE BEEN MADE UPON SAID MORTGAGE," and sets forth the delinquent installment payment and total amount in default as of March 1985. It is generally recognized that an affidavit may incorporate by reference other papers on file in the same action. See Hewson v. City of Los Angeles, 184 Cal.App.2d 229, 7 Cal.Rptr. 497, 501 (1960), and cases cited thereon; 2A C.J.S. Affidavits ' 52 (1972). F1B's affidavit of proof which incorporated by reference the Notice Before Foreclosure was therefore sufficient to establish that the Andersons were in default on the mortgage. | Affidavit may incorporate other documents by reference? | Can an affidavit incorporate other documents by reference? | 006067.docx | LEGALEASE 00153859 LEGALEASE 00153860 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | 1 |
| 19589 | In re Portnow, 253 A.D. 395 | 21+1 | Those who make affidavits are held to a strict accountability for the truth and accuracy of their contents. Lawyers, particularly, should be held to the court in its endeavors to keep the profession free from those unfit, rather than obstructing in thwarting the efforts of the Character Committee by verifying affidavits with reckless disregard for the truth. | Those who make affidavits are held to a strict accountability for the truth and accuracy of their contents. | Should an affidavit always state the truth? | Affidavits - Memo 71 - 37047-eFeb1bid1o73fac3q432 FERN1.docx | ROSS-000002348 ROSS-000003049 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | 1 |
| 19590 | Meekison v. Groschner, 153 Ohio St. 301 | 241+2(2) | In the case of Drake v. Rogers Foundry Mining Co., C. C., 53 F 479, the court said: "A note executed in one state, but made payable in another, is, in so far as the remedy or defense is concerned, to be considered as governed by the law of the state where the note is made payable." | "Where a note is executed in one state, but made payable in another, will it be governed by the laws of the state where the note is made payable?" | "Where a note is executed in one state, but made payable in another, will it be governed by the laws of the state where the note is made payable?" | Bills and Notes - Memo 5_RC_65848.docx | ROSS-000308215 | Condensed, SA, Sub | | 0 | 1 | 1 | 1 | 1 |
| 19591 | Camera v. Clark, 1 Wash. App. 51 | 83E+15 | The Supreme Court has held in Wilson v. Pearce, 57 Wash.2d 44, 355 P.2d 154 (1960) that similar words of transfer on the back of a promissory note constituted an assignment and not an endorsement. | Where prior to adoption of Uniform Commercial Code note was transferred under language stating that note was sold, assigned and set over, words of transfer constituted an "assignment" and not an "endorsement" and transferee was a holder in due course. RCWA 62A.3-201(d). | Do words off transfer constitute an assignment? | Bills and Notes - Memo 958 - RC_60816.docx | ROSS-000301323 ROSS-000301324 | Condensed, SA, Sub | | 0 | 1 | 1 | 1 | 1 |
| 19592 | Phillips Petroleum Co. v. Huntz, 348 S.W.2d 856 | 6.30E+27 | A draft is a common term for a bill of exchange. Black's Law Dictionary, 4th Edition, 1951. The Negotiable Instruments Act, Art. 5939 et seq., Sec. 126, V.A.C.S., defines a bill of exchange as follows: "A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." As Phillips was both the drawer and drawee, Art. 5940, Sec. 130 is also material here. | A draft is a common term for a "bill of exchange". Vernon's Ann.Civ.St. arts. 5939 et seq., 5940, 5§ 126, 130; art. 5940, § 191. | Is draft a common term for a bill of exchange? | Bills and Notes - Memo 987 - RC_61316.docx | ROSS-000307310 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | 1 |
| 19593 | Podolsky v. Alma Energy Sec. & Loan Ass'n, 143 F.3d 78 | 172H+1346 | In order to be considered a finance charge, a charge must be imposed by, or as a condition of, the extension of credit. See 15 U.S.C. ' 1605(a) ("Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.") (emphasis added); see also 12 C.F.R. ' 226.4(a) ("The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."); Veale v. Citibank, F.S.B., 85 F.3d 577, 579 (11th Cir.1996); Pechinski, 238 F.Supp.2d at 945. However, a charge or fee imposed is not a finance charge unless it is "payable directly or indirectly by the person to whom the credit is extended," id., or if it is a charge or fee imposed "as an incident to or a condition of, the extension of credit." id. In this case, however, the mortgage broker fee was not "incident to, or a condition of, the extension of credit," but was rather incident to the refinancing by another lending institution." Pechinski, 238 F.Supp.2d at 943. | Fee assessed against mortgagors when home mortgage was assigned to another lender as part of refinancing was not "finance charge" required to be disclosed under TILA; fee did not qualify as "finance charge" since it was in no way "incident to the extension of credit" and thus could not meet statutory definition of refinancing penalty, specific assignment was not contemplated by original mortgage agreement (rather arose only at mortgagors' request and after initiation, and fee was imposed not for refinancing but rather because mortgagors asked for assignment). Truth in Lending Act, § 106(a), 128(a)(11), 15 U.S.C.A. §§ 1605(a), 1638(a)(11). | To be considered a finance charge, must a charge be incident to, or a condition of, the extension of credit? | Consumer Credit - Memo 66 - RC_60020.docx | ROSS-000312217 ROSS-000312218 | Condensed, SA, Sub | 0.99 | 0 | 1 | 1 | 1 | 1 |

3451

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19594 | Rodash v. AIB Mortg. Co., 16 F.3d 1142 | 172H+1322 | Congress designed TILA to promote the informed use and awareness of the cost of credit by consumers. Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir.1984). The Act ensures a meaningful disclosure of credit terms to enable consumers to compare readily the various credit terms available in the marketplace. Id. Congress intended the statute to create a system of private attorneys general to aid its enforcement; thus, to further its remedial purpose, we liberally construe its language in favor of the consumer. McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir.1978).1 Accord Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3rd Cir.1990). Additionally, creditors must strictly comply with TILA's requirements. Shroder, 729 F.2d at 1380 (The creditor's disclosures must be in "the proper technical form and in the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z. Liability will flow from even minute deviations from requirements."). | Truth in Lending Act (TILA) is designed to promote informed use of awareness of cost of credit by consumers. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | What is the purpose of TILA? | 013951.docx | LEGALEASE-00153957-LEGALEASE-00153958 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 19595 | People ex rel. Sussen v. Keller, 382 Ill. App. 3d 872 | 7.60E+120 | "A child does not have an absolute right to a college education."Spear, 244 Ill.App.3d at 630, 184 Ill.Dec. 331, 613 N.E.2d at 360. However, a trial court may order the payment of postsecondary educational expenses, including college, professional, or other training. 750 ILCS 5/513(a)(2) (West 2006); see also Rawles v. Hartman, 172 Ill.App.3d 931, 933, 123 Ill.Dec. 217, 527 N.E.2d 680, 681 (1988) (section 513 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (Ill.Rev.Stat.1985, ch. 40, par. 513) is applicable to a proceeding brought under the Illinois Parentage Act of 1984 (Parentage Act) (Ill.Rev.Stat.1985, ch. 40, par. 2501 et seq.), and a court may provide for the education and maintenance of a nonminor child born to unmarried parents). The payable expenses include, but are not limited to, room, board, dues, tuition, transportation, books, fees, registration and application costs, medical insurance, dental expenses, and living expenses during the school year and periods of recess. 750 ILCS 5/513 (a)(2) (West 2006). | A child does not have an absolute right to a college education; however, a trial court may order the payment of postsecondary educational expenses, including college, professional, or other training. S.H.A. 750 ILCS 5/513(a)(2). | Does a child have an absolute right to a college education? | 016796.docx | LEGALEASE-00154141-LEGALEASE-00154142 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 19596 | Wisniewski v. Bd. of Educ. of Weedsport Cent. Sch. Dist., 494 F.3d 34 | 141E+739 | Although some courts have assessed a student's statements concerning the killing of a school official or a fellow student against the "true "threat" " standard of Watts, see, e.g., Doe v. Pulaski County Special School District, 306 F.3d 616, 621"27, 627"32 (8th Cir.2002) (in banc); Lovell v. Poway Unified School District, 90 F.3d 367, 371"73 (9th Cir.1996), we think that school officials have significantly broader authority to sanction student speech than the Watts standard allows. With respect to school officials' authority to discipline a student's expression reasonably understood as urging violent conduct, we think the appropriate First Amendment standard is the one set forth by the Supreme Court in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). | Middle-school student's sending of instant messages over Internet to classmates displaying drawing of pistol firing bullet at person's head, above which were dots representing splattered blood, and beneath which appeared word "kill" followed by name of student's English teacher, posed reasonably foreseeable risk drawing would come to attention of school authorities and would materially and substantially disrupt work and discipline of school, and thus, school officials did not violate student's First Amendment free speech rights by suspending him; although student created and transmitted drawing off school property, drawing's potentially threatening content and its distribution to 15 recipients, including classmates, during three-week period, made it reasonably foreseeable it would come to school authorities' attention. U.S.C.A. Const.Amend. 1. | Do school officials have broad authority to sanction student speech? | 016802.docx | LEGALEASE-00154143-LEGALEASE-00154144 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 19597 | Klamath Land & Cattle Co. v. Roemer, 12 Cal. App. 3d 613 | 156+37 | A grant deed unquestionably transfers an after-acquired title. Civil Code section 1106 provides: "Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." (See Maxwell v. Carlon, 30 Cal.App.2d 356, 361, 86 P.2d 666, 668.) | A grant deed transfers an after-acquired title. West's Ann.Civ.Code, S 1106. | Does a grant deed transfer an after-acquired title? | 018051.docx | LEGALEASE-00153855-LEGALEASE-00153856 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 19598 | Fanning v. LeMay, 38 Ill. 2d 209 | 302+48 | The defendants contend that the complaint is insufficient in law because it fails to allege facts showing any defect in the shoes. We agree. While pleadings are to be liberally construed, and formal or technical allegations are unnecessary, a complaint must nevertheless contain the substantial averments of fact necessary to state a cause of action. (Ill.Rev.Stat. 1965, chap. 110, par. 31.) The most that is alleged in the case at bar is that the soles of the shoes became slippery when wet. No facts are alleged setting forth any specific defect in the shoes, nor are there facts to show that in the respect alleged they were any different from shoes ordinarily worn by millions of other people. It is a matter of common knowledge that shoes are more likely to slip when wet than when dry, but this provides no basis for the conclusion that a particular pair of shoes is dangerous or unsafe. | Complaint must contain substantial averments of fact necessary to state cause of action. S.H.A. ch. 110, S 31. | Are formal or technical allegations unnecessary in a pleading? | 023745.docx | LEGALEASE-00154555-LEGALEASE-00154556 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 19599 | Coleman v. City of Mesa, 230 Ariz. 352 | 414+1403 | "Arizona follows a notice pleading standard." Cullen v. Auto"Owners Ins. Co., 218 Ariz. 417, 419  6, 189 P.3d 344, 346 (2008). In determining if a complaint states a claim on which relief can be granted, courts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient.Id. "[C]ourts look only to the pleading itself" when adjudicating a Rule 12(b)(6) motion. Id. If "matters outside the pleading" are considered, the motion must be treated as one for summary judgment. Ariz. R. Civ. P. 12(b)(6). A complaint's exhibits, or public records regarding matters referenced in a complaint, are not "outside the pleading," and courts may consider such documents without converting a Rule 12(b)(6) motion into a summary judgment motion. See Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC, 224 Ariz. 60, 63  10, 64  13, 226 P.3d 1046, 1049"50 (App.2010). | Complaint brought against city by tattoo artists, who were denied Council Use Permit (CUP) to operate tattoo parlor, stated claim for relief for alleged violations of artists' rights to equal protection and due process; artists alleged that city acted arbitrarily in denying them a permit and that the action did not further any legitimate government purpose. U.S.C.A. Const.Amend. 14; A.R.S. Const. Art. 2, SS 4, 13. | "In determining if a complaint states a claim on which relief can be granted, should courts assume the truth of all well-pleaded factual allegations?" | 038476.docx | LEGALEASE-00154551-LEGALEASE-00154552 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19600 | Holliday v. Foster, 221 Pa. Super. 388 | 307A+581 | Procrastination in the prosecution of a lawsuit can be the basis for dismissal. Unlike the fixed rules of statutes of limitations, there is no conclusive rule as to how long a delay after a suit is instituted will warrant a judgment of non pros. James Bros. Lumber Co. v. Union Banking & Trust Co. of DuBois, 432 Pa. 129, 247 A.2d 587 (1968) (14 years); Gallagher v. Jewish Hospital Association, 425 Pa. 112, 228 A.2d 732 (1967) (18 years); Wildermuth v. Philadelphia & Reading Ry. Co., 326 Pa. 536, 192 A. 657 (1937) (13 years); Hruska v. Gibson, 316 Pa. 518, 175 A. 514 (1934) (9 years); Potter Title & Trust Co. v. Frank, 298 Pa. 137, 148 A. 50 (1929) (11 years); Waring Bros. & Co. v. Pennsylvania R.R. Co., 176 Pa. 172, 35 A. 106 (1896) (15 years). | Procrastination in the prosecution of a lawsuit can be the basis for dismissal. Pa.R.C.P. No. 1037(a), 12 P.S. Appendix. | Can procrastination in the prosecution of a lawsuit be the basis for dismissal? | 039196.docx | LEGALEASE-00154795-LEGALEASE-00154796 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 19601 | Kentucky Home Life Ins. Co. v. Johnson, 263 Ky. 787 | 308+92(1) | It was definitely shown that at the time of the execution of the receipt Massey was general agent of the Inter-Southern for McCracken and several other counties, selling and writing policies, collecting premiums and settling claims. A general agent ordinarily stands in the stead of the company in conducting its business, within limitations. "The tendency of recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law." The acts of an agent, we have uniformly held to bind the principal when the agent is acting within the scope of his authority. Henry Clay Fire Ins. Co. v. Grayson County State Bank, 239 Ky. 239, 39 S.W.(2d) 482, 483, and numerous citations therein. By the payment to Massey, and his acceptance of the premium, though it was quarterly premium, the provision as to the method of payment was waived. New York Underwriters' Ins. Co. v. Ray, 246 Ky. 105, 106, 54 S.W.(2d) 627. See, also, Federal Union Ins. Co. v. Griffin, 241 Ky. 771, 45 S.W.(2d) 8; Equitable Life Assurance Soc. v. Brewer, 225 Ky. 472, 9 S.W.(2d) 206; Standard Accident Ins. Co. v. Patton, 202 Ky. 566, 260 S.W. 371. | Acts of agent bind principal when agent is acting within scope of his authority. | When can a principal be bound by the acts of an agent? | 041543.docx | LEGALEASE-00154305-LEGALEASE-00154306 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 19602 | Computer Personalities Sys. v. Aspect Computer, 320 B.R. 812 | 8.30E+27 | Moreover, under the U.C.C., a postdated check is technically not a check, but instead a credit instrument. See U.C.C. " 2"511, comment 6. Consequently, the Court agrees with Judge Sigmund's determination that the postdated checks "in fact were credit transactions which created an antecedent debt that was satisfied only when the checks became payable one and two weeks later." In re Computer Personalities Sys 2004 WL 1607005, 2004 Bankr.LEXIS 941 at *36. | Under Uniform Commercial Code (U.C.C.), a postdated check is technically not a check, but instead a credit instrument. U.C.C. S 2-511. | Is a postdated check a credit instrument? | Bills and notes - Memo 16 - KC_61940.docx | ROSS-003319344-ROSS-003319345 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 19603 | Bank of Commerce & Sav. v. Randell, 107 Neb. 332 | 83E+402 | Section 5348. "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery. If payable to order it is negotiated by the indorsement of the holder completed by delivery." | The provision of the Negotiable Instruments Law that an instrument is negotiated by delivery if payable to bearer while if payable to order it is negotiated by endorsement of holder completed by delivery was not intended to include all the ways in which the instrument might be negotiated. Rev.St.1913, S 5348. | Can an instrument be negotiated by transferring from one person to another? | Bills and Notes-Memo 1207-PR_61518.docx | ROSS-003279259 | SA, Sub | 0.02 | 0 | 0 | 1 | 1 | |
| 19604 | Federal Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504 | 172H+1482 | Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages. See 15 U.S.C. " 1692k(a); see also Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir.2003) ("[C]ourts have held that actual damages are not required for standing under the FDCPA"). As a district court in the Second Circuit recently noted "[t]he interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation." Jacobson, 434 F.Supp.2d at 138. The court in Jacobson continued: | Collection notice is deceptive, in violation of Fair Debt Collection Practices Act (FDCPA), when it can be reasonably read to have two or more different meanings, one of which is inaccurate. Fair Debt Collection Practices Act, S 807, 15 U.S.C.A. S 1692e. | What damages can a consumer recover if a debt collector violates the Fair Debt Collection Protection Act (FDCPA)? | Consumer Credit - Memo 180 - RK_61842.docx | ROSS-003319767-ROSS-003319769 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 19605 | Brown v. Marquette Sav. & Loan Ass'n, 686 F.2d 608 | 172H+1537 | As an initial matter we note that the violation before us is a purely technical one, and that the plaintiffs do not claim that they were misled or suffered any actual damages as a result of the statutory violation. It is well settled, however, that a borrower need not have been so deceived to recover the statutory penalty. See, e.g., Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980); Dzadovsky v. Lyons Ford Sales, Inc., 593 F.2d 538, 539 (3d Cir. 1979). | Borrower need not have been so misled as to have suffered actual damages as result of violation of Truth in Lending Act to recover statutory penalty. Truth in Lending Simplification and Reform Act of 1980, S 601 et seq., 15 U.S.C.A. S 1601 note; Truth in Lending Act, S 130(d), 15 U.S.C.A. S 1640(d). | Does the borrower need to have been deceived to recover the statutory penalty? | Consumer Credit - Memo 187 - RK_61849.docx | ROSS-003305280-ROSS-003305281 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 19606 | Hallas v. Ameriquest Mortg. Co., 406 F. Supp. 2d 1176 | 172H+1556 | The other TILA claim seeks rescission based on the nondisclosure of documents. The relevant law for a claim of rescission based on an alleged TILA violation provides that "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. " 1635(f). In this case, the foreclosure sale has terminated plaintiff's right of rescission. Thus, even if plaintiff had not waived her TILA claims by failing to bring them before the foreclosure, both of them are time-barred. | Foreclosure sale terminated borrower/grantor's right of rescission of deed of trust under Truth in Lending Act (TILA). Truth in Lending Act, S 125(f), 15 U.S.C.A. S 1635(f). | Does a foreclosure sale terminate the right of rescission? | Consumer Credit - Memo 191 - RK_61853.docx | ROSS-003305292-ROSS-003305293 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 19607 | McAnaney v. Astoria Fin. Corp., 357 F. Supp. 2d 578 | 172H+1344 | With regard to the facsimile fee in this case, the "official staff commentary" for TILA states that "a fee for courier service charged by a settlement agent to send a document to the title company or some other party is not a finance charge, provided that the creditor has not required the use of a courier or retained the charge." 60 Fed.Reg. 16771, 16777 (April 3, 1995); see also Cowen v. Bank United of Texas, FSB, 70 F.3d 937, 943 (7th Cir.1995) (holding that a courier fee charged at settlement did not violate TILA). Fees for a courier service must be disclosed if they are required by the creditor. Rodash v. AIB Mortg. Co., 16 F.3d 1142 (11th Cir.1994) abrogated on other grounds by, Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir.1996) (holding that the defendants violated TILA as a matter of law by failing to disclose as part of the finance charge the charge imposed for payment of Federal Express delivery). | Fees for a courier service must be disclosed under TILA if they are required by the creditor. Consumer Credit Protection Act, S 102 et seq., as amended, 15 U.S.C.A. S 1601 et seq. | Can a fee for courier service charged by a settlement agent be considered as a finance charge if the creditor has not retained the charge? | Consumer Credit - Memo 75 - JK_61502.docx | ROSS-003280663-ROSS-003280664 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19608 | Absher v. AutoZone, 164 Cal. App. 4th 332 | 172H+1002 | In 1991, the legislature amended the provisions of section 1747.08 to add the word "request" to subdivisions (a)(1) and (a)(2). The legislature stated purpose in amending these two subdivisions was to clarify that merchants "may neither require nor request, as a condition to accepting the credit card, the taking or recording of personal identification information from the cardholder. [Current law] states that such information may not be required, but does not prohibit requesting such information." (See Assem. Com. on Banking, Finance, and Public Indebtedness Rep. on Assem. Bill No. 1477 (1991-1992 Reg. Sess.) May 13, 1991.) The word "request" was added to subdivisions (a)(1) and (a)(2) by "[m]erant a "request" for personal identification, if complied with, might perceive that a request as a condition of credit card payment. In effect, the 1991 amendment prevents a retailer from making an end run around the law by claiming the customer furnished personal identification data "voluntarily." (Florez, supra, 108 Cal.App.4th at p. 453, 133 Cal. Rptr.3d 465.) | Statute prohibiting a business from requiring personal identification information as part of any credit card transaction does not apply to return in exchange for a reversal of the original credit card purchase transaction. West's Ann.Cal.Civ.Code § 1747.08(a). | Does the law protect the personal privacy of consumers who pay for transactions with credit cards? | 01967.docx | LEGAL036-00155364-LEGAL036-00155365 | Condensed, SA, Sub 0.75 | | 0 | 1 | 1 | 1 | |
| 19609 | Miller v. ColorSyne, 518 N.W.2d 544 | 172H+54 | We consider first whether the CCSA defines rent-to-own agreements as consumer credit sales, thereby departing from the common law distinction between leases and sales in order to provide the same protections to consumers as are provided to rent-to-own transactions to consumers who engage in traditional credit sales. At common law a rent to own transaction is regarded as a lease and not a sale because a buyer is not bound to pay the total purchase price and can terminate a transaction at any time by returning the property. See Westinghouse v. Ratliff, 518 N.W.2d 544... The Law Governing Sales of Goods at Common Law and Under the Uniform Sales Act," 3 Sw.L.Rev. (1948). Prior to enactment of the CCSA this court followed the common law distinction. Hughes v. Besler, 264 Minn. 83, 87, 108 N.W.2d 781, 781 (1961). | Rent-to-own contracts were protected "consumer credit sales" within meaning of Consumer Credit Sales Act (CCSA); legislature would not have amended CCSA to define certain terminable rent-to-own transactions as consumer credit sales to protect consumer credit sales, and under such contracts, sellers do extend "credit," so buyers of goods are not required to make full payment upon acquiring possession but are allowed to pay for goods sold over time. M.S.A. § 325G.15, subd.2. | At common law, is a rent-to-own transaction a lease or a sale? | Consumer Credit Memo 20-_MAC_61337.docx | ROSS-00023794-ROSS-00237847 | Condensed, SA, Sub 0.38 | | 0 | 1 | 1 | 1 | |
| 19610 | Carey v. Brown, 447 U.S. 455 | 129+111 | There can be no doubt that in prohibiting peaceful picketing on the public streets and sidewalks in residential neighborhoods, the Illinois statute regulates expressive conduct that falls within the First Amendment's preserve. See, e. g., Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Gregory v. Chicago, 394 U.S. 111, 122, 89 S.Ct. 946, 947, 22 L.Ed.2d 134 (1969); Shuttlesworth v. Birmingham, 394 U.S. 147, 152, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969). "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.). "[S]treets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." "Hudgens v. NLRB, 424 U.S. 507, 515, 96 S.Ct. 1029, 1034, 47 L.Ed.2d 196 (1976) (quoting Food Employees v. Logan Valley Plaza, 391 U.S. 308, 315, 88 S.Ct. 1601, 1606, 20 L.Ed.2d 603 (1968)). | Illinois statute prohibiting peaceful picketing on the public streets and sidewalks in residential neighborhoods, the Illinois statute regulated expressive conduct that fell within the First Amendment's preserve in residential labor dispute context, decided expressive conduct protected by First Amendment and interests in providing privacy of home and in providing special protection for labor protests. 1st S.H.A., ch. 38, § 21.1-2; U.S.C.A.Const. Amends. 1, 14. | Does a prohibition on picketing on public streets and sidewalks regulate expressive conduct protected by the First Amendment? | Disorderly Conduct Memo 3A-_MAC_0888.docx | ROSS-003281824-ROSS-003281821 | Condensed, SA, Sub 0.7 | | 0 | 1 | 1 | 1 | |
| 19611 | Shadowlite & Wheeling Tractor Co. v. Borden, 87 Ohio St. 187 | 386A+23.1 | A street railway company operating cars on a public street in a much frequented part of a city has not the right to operate cars at street crossings at a dangerous rate of speed without warning of approach, thus throwing upon the burden of care and watchfulness to avoid accident upon the driver of smaller vehicles seeking to cross, but its duty is to maintain proper vigilance of the operative and be duly careful of the lives of such other persons. The driver of a horse and wagon at such crossing has equal rights with the company in the street and to use the crossing. It is his duty, however, to look before attempting to cross the street in front of such car on approach a heedtrack, and, by reason of its greater weight, being less easy to check or stop than the smaller vehicle. | Fact-finder in crossing fact-causal rights with street car, and motorman should as control car in it be able to stop if necessary to avoid accident. | 03935.docx | LEGAL036-00155675-LEGAL036-00156327 | Condensed, SA, Sub 0.81 | | 0 | 1 | 1 | 1 | |
| 19612 | Fox, At-Law v. Superior Court & Bar of No. 6 Cty., Trustee No. 23 S-Cal. App.3d 547 | 21+9 | These decisions state that the test of the sufficiency of an affidavit is whether an indictment for perjury will lie if it false, and is predicated by law upon an affidavit reciting that affiant. "being first duly sworn deposes and says," with further averments to the effect that allegations are true (Hopkins v. Tavera, 19 Cal.App. 598, 600 "604; 2 L.F. 670 [conjunction omitting identical phrasing]). In re People v. Hoertic, 16 Cal.2d 404, 211 P. p. 672, "is sufficiently appeared that affiant attested the truth of what was stated." And a recital, over prat, that a claimant "under a foregoing claim to be true is adequate, even through it does not recite that affiant was sworn (Osborn v. City of Whittier, 103 Cal.App.2d 609, 614 P. 2d 199 P.S.d 316.) Even a verification in the document where... declared "under penalty of perjury", and clearly is reached by the declarant in omitting verification of form to hold that it falls short of stating that its contents are true. | Test of sufficiency of affidavit is whether an indictment for perjury lies if it false. | Affidavits - Memo 77-_0Jrdo2duPTheoMid21G_vAP1Y2oDsN4dC.docx | ROSS-000042654-ROSS-000000251 | Condensed, SA | | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 21,876 | 9,029 |
| 19613 | Brown v. Branch, 758 N.E.2d 48 | 156+13(1) | Estoppel is a judicial doctrine sounding in equity. Although variously defined, it is a concept by which one who has or could present some fact, the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct is, in such instances, absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed... (Ind.1996). There are a variety of estoppel doctrines including: estoppel by record, estoppel by deed, collateral estoppel (sometimes referred to as estoppel in pais, promissory estoppel, and judicial estoppel. 28 Am.Jur.2d Estoppel and Waiver § 2 (2000). All, however, are based on the same underlying principle: one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other. 31 C.J.S. Estoppel and Waiver § 2 (1996). | "Estoppel" is a judicial doctrine sounding in equity. | Is estoppel a judicial doctrine sounding in equity? | 03775.t.docx | LEGALEASE 00155944-LEGALEASE 00155947 | Condensed, SA | 0.93 | 0 | 1 | | 1 | |
| 19614 | Chuck Wagon Feeding Co. v. Davis, 768 S.W.2d 360 | 302+342 | But here, Davis after pleading generally a's in "a contract for the purchase, feeding, and sale of ... cattle" and the final payment of $300,000.00 which Chuck Wagon was to pay to Davis upon the sale of the cattle, pleads specifically in paragraph IV that Appellants signed the two agreements guaranteeing the performance by Chuck Wagon of its obligations under a contract of sale and an agreement for the purchase of feed, both dated July 1, 1979, that the dishonored check was in obligation arising under the contract and agreement, and that "[a] true and correct copy [sic] of the two Guaranty Agreements and Contract of Sale are attached ... and incorporated by reference herein the same as if fully copied and set forth at length." If a party pleads generally and then goes further and pleads specifically on the same subject, the specific allegations control. The pleader cannot rely on the general but is confined to his specific allegations. Monsanto Company v. Milam, 494 S.W.2d 534, 536 (Tex.1973); Fidelity & Casualty Company of New York v. Central Bank of Houston, 672 S.W.2d 641, 644 (Tex.App.'Houston [14th Dist.] 1984, writ ref'd n.r.e.). | If party pleads generally and then goes further and pleads specifically on same subject, specific allegations control; pleader cannot rely on general but is confined to his specific allegations. | Can the pleader rely on the general allegations? | 02379.t.docx | LEGALEASE 00156224-LEGALEASE 00156225 | SA, Sub | 0.81 | | | 1 | 1 | |
| 19615 | Chuck Wagon Feeding Co. v. Davis, 768 S.W.2d 360 | 302+342 | But here, Davis after pleading generally a's in "a contract for the purchase, feeding, and sale of ... cattle" and the final payment of $300,000.00 which Chuck Wagon was to pay to Davis upon the sale of the cattle, pleads specifically in paragraph IV that Appellants signed the two agreements guaranteeing the performance by Chuck Wagon of its obligations under a contract of sale and an agreement for the purchase of feed, both dated July 1, 1979, that the dishonored check was in obligation arising under the contract and agreement, and that "[a] true and correct copy [sic] of the two Guaranty Agreements and Contract of Sale are attached ... and incorporated by reference herein the same as if fully copied and set forth at length." If a party pleads generally and then goes further and pleads specifically on the same subject, the specific allegations control. The pleader cannot rely on the general but is confined to his specific allegations. Monsanto Company v. Milam, 494 S.W.2d 534, 536 (Tex.1973); Fidelity & Casualty Company of New York v. Central Bank of Houston, 672 S.W.2d 641, 644 (Tex.App.'Houston [14th Dist.] 1984, writ ref'd n.r.e.). | If party pleads generally and then goes further and pleads specifically on same subject, specific allegations control; pleader cannot rely on general but is confined to his specific allegations. | Is the pleader confined to his specific allegations? | Pleading - Memo 066-RMN_62374.docx | ROSS-003312227-ROSS-003312228 | SA, Sub | 0.81 | | | 1 | 1 | |
| 19616 | Couthren v. Cardona, 471 S.W.3d 20 | 307A+690 | A motion to dismiss with prejudice under this chapter is a sanction meant "to deter meritless claims, and bring the quickly to an end." CTJ Thompson, 764 S.W.2d at 182. A motion to dismiss with S.W.3d 299, 301 (Tex.2013). A motion to dismiss with prejudice, then, is a motion for sanctions relief. See id. at 190 S.W.3d. A motion to dismiss with prejudice survives a neutral filed by a plaintiff. See id. at 300. Even after a dismissal without prejudice is entered following a plaintiff's nonsuit, the party seeking dismissal with prejudice can appeal the denial of the sanctions relief. See id. at 301. | A motion to dismiss with prejudice is a motion for sanctions relief | Is a motion to dismiss with prejudice a motion for sanctions relief? | Pretrial Procedure - Memo # 4 0211 - C - TLJ2734.docx | ROSS-003279404-ROSS-003279841 | SA, Sub | 0.89 | | | 1 | 1 | |
| 19617 | Florida Dept of Revenue ex rel A. L. v. S.B., 124 So. 3d 377 | 285+142 | Domestic relations as a private sanction. See Obdusk 's v. Williams, 785 So.2d 773, 772 (Fla. 1st DCA 2000). The trial court should grant such relief only when the departure is shown to place a moving party's in act. In order to conclusively appear that the pleader cannot possibly amend the pleading to state a cause of action. Id. at 772'73. A dismissal with prejudice can constitute an abuse of discretion where a party may be able to plead additional facts to support its cause of action or support another cause of action under a different legal theory. Id. at 773. Vickie Kathy v. Burchers, 714 So.2d 1217, 1218 (Fla. 2d DCA 1998). Thus, the trial court should hesitate to dismiss with prejudice unless the pleading party is in opportunity to amend. See Kaplay, 714 So.2d at 1218. | Failure of state department of revenue to join child (legal father or party in proceeding) on petition to establish paternity, child support, and for award of other relief warranted district court to permit department to allege facts necessary to establish that child's legal father was not necessary party. | Can dismissal with prejudice constitute an abuse of discretion where a party can be able to plead additional facts to support its cause of action or support another cause of action under a different legal theory? | Memo # 4 0316 - C - SK_61750.docx | ROSS-003279627-ROSS-003279630 | Condensed, SA, Sub | 0.17 | | 1 | 1 | 1 | |
| 19618 | Claborne Med. Corp. v. ABC Ins. Co., 185 So. 3d 216 | 307A+581 | However, a s to the trial court's January 7, 2015 judgment dismissing Plaintiff's action on the grounds of abandonment, we note that it dismissed Plaintiff's action "with prejudice." In accord with the courts, has found that a dismissal on the grounds of abandonment is a dismissal "without prejudice." LSA-B Bossier, Inc. v. Lindsey, 534 So.2d 1178, 1183 (La.App. 2d Cir. 1988). La. Cent. Credit Union v. Addor, 98'29 (La.App. 5 Cir. 09/15/98), 721 So.2d 975, 977 (La. App. 5 Cir. 2/15/15), 93.2 So.2d 34, 540; Petersmann v. Petersmann, 07'1214 (La.App. 1 Cir. 09/17/08), 897 So.3d 19, 2d, mem denied, 08'2639 (La 2/24/10), 26 So.3d. Accordingly, the trial court erred in dismissing Plaintiffs' action with prejudice. We amend the judgment to delete the words "with prejudice" and to substitute the words "without prejudice." | A dismissal of an action on the grounds of abandonment is a dismissal without prejudice. LSA-C.C.P. art. 561. | Can a dismissal on the grounds of abandonment is made without prejudice? | 02481.docx | LEGALEASE 00155944-LEGALEASE 00155945 | Condensed, SA, Sub | 0.88 | | 1 | 1 | 1 | |

1455

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 19639 | King Cty. Fire Prot. Dists No. 16, No. 36 & No. 45 v. Hous. Auth. of King Cty., 123 Wash. 2d 819 | 371×2902 | Judicial decisions determining whether a governmental entity has authority to levy a particular charge have defined taxes as "burdens or charges imposed by legislative authority on persons or property, to raise money for public purposes, or, more briefly, an imposition for the supply of the public treasury." ... If charges are primarily intended to raise money, they are not taxes. Where the charges is related to a direct benefit or service, it is generally not considered a tax or assessment. | If charges are primarily intended to raise money, they are "taxes." If charges are primarily tools of regulation, they are not taxes, and where the charge is related to direct benefit or service, it is generally not considered a tax or assessment. West's RCWA 43.42.210. | "Is a charge a tax if it is primarily a tool of regulation?" | Taxation - Memo 984 C - 1_4, 2120 docx | ROSS.0002079273-ROSS-002079274 | SA, Sub | 0.33 | 0 | | | | |
| 19620 | County ex rel. City of Eagan v. 560 N.W.2d 681 | 414×1B(26) | We have consistently rejected the argument that the general police power extends to impositions for revenue raising measures by municipalities. When it has been apparent that a city's true motivation was to raise revenue and not merely to recover the cost of regulation, we have disapproved the rate attached to a municipality and held that the charge in question was in fact a tax. See State v. Lake's Direct Serv., 232 Minn. 175, 180, 44 N.W.2d 823 (1950) (striking down a like-use gasoline permit as "a tax for the purpose of producing more revenue for the municipality"); Barron v. City of Minneapolis, 212 Minn. 566, 570, 4 N.W.2d 622, 624 (1942) (invalidating a license fee after concluding that "[w]hat the city council sought to accomplish, and did accomplish, was the exaction of a revenue measure"). | Road unit connection charge imposed by city as condition of issuance of building permits was unlawful "tax," rather than regulatory license fee that the authorized under city's general welfare powers; there was already separate building permit fee covering regulatory costs, plus language of resolution enacting charge referred to generating revenue from charges to raise revenue, and revenues collected were not earmarked for projects necessitated by new construction but funneled into general fund for other construction, as well as repairs of existing streets. M.S.A. § 412.221, subd. 12. | "When the true motivation of government is to raise revenue, is that the charge in question in fact a tax?" | 04{140 docx | LEGALEASE-00156379-LEGALEASE-00156380 | Condensed, SA, Sub | 0.29 | 1 | 1 | 1 | 1 | 1 |
| 19621 | People v. Sucic, 87 P.3d 124 | 3.77T×29 | We also conclude that the evidence supports the conclusion that defendant's contact with the victim was in connection with his threat. Conduct "in connection with" a stalking threat includes "acts which further, advance, promote, or have a continuity of purpose, and may occur before, during, or after the credible threat." Section 18-9-111(4)(b)(II), C.R.S.2002. Here, defendant called the victim repeatedly on one day and threatened her he would kill her if she did not see him following the threat, defendant contacted the victim numerous times in person and by telephone and repeatedly asked to see her. Accordingly, when viewed in the light most favorable to the prosecution, a reasonable jury could conclude that these later contacts bore a continuity of purpose with the threat. Thus, we conclude that the evidence is sufficient to support the finding that the contact was made in connection with a credible threat. | Harassment stalking statute requires that defendant both knowingly makes a credible threat to victim and knowingly engages in conduct in connection with the threat. West's C.R.S.A. § 18-9-111(4)(b)(II). | "What does "conduct in connection with a credible threat" mean for purpose of a stalking conviction?" | 04481 docx | LEGALEASE-00155984-LEGALEASE-00155985 | Condensed, SA, Sub 0.78 | 0.78 | 0 | | | | |
| 19622 | State v. Singley, 392 S.C. 270 | 67×7 | It is axiomatic that "one cannot commit the offense of burglary by breaking into his own home." Tharp, 27 S.C. at 470. However, the concept of what is one's "own home" must be examined in light of the very purpose behind the law of burglary. "The law of burglary is primarily designed to secure the sanctity of one's home, especially at nighttime, when peace, solitude and safety are most desired and expected... To preserve this security and this sanctity the law has created safeguards against invasion of one's home by another." State v. Brooks, 277 S.C. 111, 112 713, 283 S.E.2d 830, 831 (1981). Therefore, our burglary laws protect an occupant's possessory interest in the dwelling, the right to be safe and secure in one's home. See also Brooks v. Smith, 142 Cal.App.3d 401, 411, 411 N.E.2d 347 (1983) (noting the distinction between possessory right under the burglary statute and family law). State v. Middleton, 158 N.H. 753, 973 A.2d 287, 292 (2009) ("[W]hile the defendant had some possessory right to premises as a tenant, this fact did not automatically give him license to enter under [the burglary statute] for the manner in which he entered.") The entry here interfered with the security and safety of the occupant, thus implicating the very interests the burglary statute was designed to protect. State v. Life, 87 Ohio St.3d 74, 717 N.E.2d 322 (1999) ("Because an occupant has a possessory interest in the dwelling, one can commit burglary against his own home, by breaking into his home... To prevent this security and this sanctity the law has created safeguards against invasion of one's home by another, and part of these possessory rights to the premises as a tenant, this fact did not automatically give him license to enter under [the burglary statute] for the manner in which he entered."). | One cannot commit the offense of burglary by breaking into his own home, although the person must be in lawful possession of the home. Code 1976, § 16-11-311(A)(3). | "Can one commit the offense of burglary by breaking into his own home?" | Burglary - Memo 264 RK_62269.docx | ROSS-003203412-ROSS-003203414 | Condensed, SA, Sub 0.92 | 0.92 | 0 | | | | |
| 19623 | Trakman's Nat. Bank of Philadelphia v. Green, 57 Md.602 | 65T×156 | The instrument itself, being nothing but an assignment of it in writing was necessary under our statute to enable the plaintiff to sue in his own name, and the assignment was valid to enable the plaintiff to sue in his own name, for the payment of such an assignment, the suit should have been instituted in the name of the holder, and not of the bank. | The plaintiff was the holder for value of the following paper. We the undersigned, Commissioners of Madison Square, hereby promise to pay to the order of A. Petticoat or bearer, the sum of $476.60, out of the appropriation for the said square for the year 1878, for sewer and fixtures furnished at Madison Square, according to contract, which is hereby approved, signed by the defendants, Commissioners of Madison Square. On this paper, set out in his suit - the plaintiff sued the defendants. There was no assignment in writing from A, to the plaintiff. The suit - did not contain the averment "for money payable by the defendants to the plaintiff." The defendants demurred, and judgment was entered for them, held that the averment "for money payable by the defendants to the plaintiff, and that the instrument declared on was not negotiable, and, therefore, under the Code, Art. 9, sec. 1, the plaintiff could not sustain the suit in its own name; that there being no assignment of the paper in writing, the suit should have been instituted in the name of A. P. to the use of the holder. | "Is an assignment in writing necessary for a person to sue in his own name where the note is nonnegotiable?" | 09901 docx | LEGALEASE-00156515-LEGALEASE-00156511 | Condensed, SA, Sub 0.72 | 0.72 | 0 | | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 196.24 | State ex rel. Gentry v. Hostetter, 343 Mo. 1090 | 83I+481 | Another assignment is based on the theory that the ruling in respondents' opinion as in conflict with Sec. 2661, R.S. Mo.1929, Mo.St.Ann. sec. * 2661, p. 665. That section is our negotiable instrument law provides that a restrictive indorsement confers upon the indorsee the right "[3] to transfer his rights as such indorsee where the form of the indorsement authorizes him to do so." A restrictive indorsement, of course, that a restrictive indorsement "for collection" does not authorize the indorsee to transfer the endorsed instrument by sale. This point is not entitled to consideration because it raises only a question of error in the opinion and not a question of conflict with our decisions, with which latter alone we are here concerned. But as showing that the red point involved in the opinion we may say this. The negotiable instrument law, Mo.St.Ann. * 2629 et seq., p. 643 et seq., deals with negotiable instruments. The Uniform Negotiable Instruments Act, which is in force in this state, does not prevent the transfer of a negotiable or non-negotiable instrument by assignment. 8 Am.Jur. * 301, p. 39; 10 C.J.S. Bills and Notes, * 28, p. 437; 221, p. 716. The restricted in this case was not negotiable, irrespective of the restrictive indorsement "for collection" because it was transferred after maturity. The question in the case is whether Robinson acquired title to the note and deed of trust by valid assignment under the facts. | The Uniform Negotiable Instruments Act does not prevent the transfer of a negotiable or nonnegotiable instrument by assignment. Mo.St.Ann. S 2629 et seq., p. 643 et seq. | Can a non-negotiable instrument be transferred by assignment? | Bills and Notes Memo 1233_ok_62974.docx | ROSS-003294823 ROSS-003294823 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |
| 196.25 | Badgley v. Votrain, 68 Ill. 25 | 83I+481 | The substance of the transaction is, that the donor executed an assignment of $12,000 out of his estate, in favor of a volunteer, and provided for its payment after his death, and out of promissory notes payable to himself, some of which were secured by mortgages upon real estate. These notes were capable of legal transfer, but only to the mode prescribed by statute, viz: by indorsement upon the back by the payee, and delivery. It could not be done by a separate instrument Bare v. May, 14 Ill. 60; Ryan v. May, 14 Ill. 49. | The legal title to a note cannot be transferred by a separate instrument. | Can a legal transfer of a note be done by a separate instrument? | 010074.docx | LEGALAEXE-00156627 LEGALAEXE-00156628 | Condensed, SA, Sub | 0.84 | 1 | 1 | | 1 | |
| 196.26 | Popilove v. State, 846 So. 2d 640 | 210+415 | Attempted burglary is not a necessary lesser included offense of burglary. It is a permissive or category 2 lesser included offense. See Florida Standard Jury Instructions in Criminal Cases, 13.1 to 13.3, 13.1 (Fla.1996). As a result, the State has the right to require an instruction on this lesser offense when the evidence's objection exists as to when the allegations within the information and the evidence at trial support the instruction. See State v. Johnson, 601 So.2d 219, 220 (Fla.1992); see also Amato v. State, 585 So.2d 282 (Fla.1991); Isco v. State, 612 So.2d 848, 849 (Fla.2d DCA 1993). Florida Rule of Criminal Procedure 3.510(a) provides that "[t]he judge shall not instruct the jury if there is no evidence to support the attempted and the only evidence proves a completed offense." Where the defendant is indicated for the charge of a lesser offense, the conviction must be reversed. See Gleason v. State, 591 So.2d 278 (Fla.1992); and, also State v. Robinson, 771 So.2d 1256, 1258 (Fla. 2d DCA 2000). | Attempted burglary is not a necessary lesser-included offense of burglary. It is a permissive or category two lesser-included offense. | Is attempted burglary a lesser included offense of burglary? | Burglary - Memo 216 - RK_62716.docx | ROSS-003205824 ROSS-003205824 | SA, Sub | 0.87 | 0 | 1 | | 1 | |
| 196.27 | State v. Vanek, 59 Idaho 514 | 67+9(3) | The "breaking" required at common law to constitute the crime of burglary is not an essential element of the crime under Sec. 17-3401, Idaho Comp. State (Subst. 1919), sec. 17-A3, R 3B, 002; Consequently, the information need not allege an unlawful "breaking," as. | Under statutory definition of "burglary," a single act of entry is sufficient to constitute the crime, without the "breaking" required at common law. I.C. A3 S 3401. | Is breaking an essential element of burglary? | Burglary - Memo 216 - RK_62716.docx | ROSS-003295491 ROSS-003295491 | Condensed, SA, Sub | 0.41 | 1 | 1 | | 1 | |
| 196.28 | Arroyo v. State, 564 So. 2d 1153 | 67+50 | The first issue is whether a pocket knife is a "dangerous weapon" under attempted the meaning of section 810.02(2)(b), Florida Statutes (1989). That section provides that a burglary is an aggravated burglary is a first-degree felony where the offender "is armed, or arms himself with such device ... with ... a dangerous weapon." We conclude that a pocket knife can be a dangerous weapon within the meaning of the statute, but that it was not on the facts of this case. | Pocket knife can be a "dangerous weapon" under attempted armed burglary statute depending upon on made of pocket knife and other facts involved in particular case; knife can be "dangerous weapon" if it is used in a manner likely to cause death or great bodily harm. West's F.S.A. S5 790.001(6) et seq., 790.001(13), 810.011 et seq., 810.02(2)(b). | Are knives a deadly weapon? | 011164.docx | LEGALAEXE-00156597 LEGALAEXE-00156598 | SA, Sub | 0.21 | 1 | 1 | | 1 | |
| 196.29 | State ex rel. Gentry v. Hostetter, 343 Mo. 1090 | 83I+481 | Another assignment in relator's brief is that the ruling in respondents' opinion is in conflict with Sec. 2661, R.S. Mo.1929, Mo.St.Ann. * 2661, p. 665. That section is our negotiable instrument law provides that a restrictive indorsement confers upon the indorsee the right "[3] to transfer his rights as such indorsee where the form of the indorsement authorizes him to do so." A restrictive indorsement "for collection" does not authorize the indorsee to transfer the endorsed instrument by sale. This point is not entitled to consideration because it raises only a question of error in the opinion and not a question of conflict with our decisions, with which latter alone we are here concerned. But as showing that the red point involved in the opinion we may say this. The negotiable instrument law Mo.St.Ann. * 2629 et seq., p. 643 et seq., deals with negotiable instruments. The Uniform Negotiable Instruments Act, which is in force in this state, does not prevent the transfer of a negotiable or non-negotiable instrument by assignment. 8 Am.Jur. * 301, p. 39; 10 C.J.S. Bills and Notes, * 28, p. 437; 221, p. 716. The restricted in this case was not negotiable, irrespective of the restrictive indorsement "for collection" because it was transferred after maturity. The question in the case is whether Robinson acquired title to the note and deed of trust by valid assignment under the facts. | The Uniform Negotiable Instruments Act does not prevent the transfer of a negotiable or nonnegotiable instrument by assignment. Mo.St.Ann. S 2629 et seq., p. 643 et seq. | Can a negotiable instrument be transferred? | 009112.docx | LEGALAEXE-00157179 LEGALAEXE-00157180 | Condensed, SA, Sub | 0.88 | 0 | 1 | | 1 | |
| 196.30 | Ray v. Livingston, 206 N.C. | 83I+426 | The facts in regard to the payee's indorsement and his subsequent possession of the note are not stated, but an indorsement in blank presumes an intent to transfer to the indorsee's indorsee's title. Adrian v. McCaskill, | Indorsement of note in blank creates presumption of intent to transfer? | Does indorsement in blank presumes intent to transfer? | Bills and Notes Memo 1279-ANM_43205.docx | ROSS-003329674S | Condensed, SA, Sub | 0.51 | 1 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 19631 | Chrysler Sales Corp. v. Smith, 37 2d 866 | 217+1000 | One of the important ideas of this contract, and plain is that the effective date of the insurance is postponed until a car is sold at retail and until title has passed from, not only complacent, but its distributors and dealers, and if title passes before the completion of a sale at retail carries the risk sustained by the retail purchaser and then claimaris whose claims grow out of the transaction of retail sale. … the insurance becomes automatically effective, by virtue of the Michigan contract. Plainly the theory of complaisant is that this insurance is something that attaches to and follows an automobile upon its course through the market, as though a part or accessory, and that the dealer who sells the car has nothing to do with the insurance item, he merely sells the car with it all its equipment, including the insurance. But this idea is erroneous for at least two reasons. (1) The insurance never has effective existence until the sale at retail by the retail dealer is, differently be stated, it is only to be made operative by an act of the retail dealer; and (2) the legal concept of insurance is that, in the absence of special circumstances, it does not attach to property but to persons. | Does insurance attach to property, besides persons? | 019550.docx | LEGALEASE-00157446 LEGALEASE-00157449 | Condensed, SA, Sub | 0.94 | | 1 | 1 | 1 | 1 |
| 19632 | Hardaway v. Howard Indus., 211 So. 3d 718 | 30+3896 | Although Hardaway's and McCray's claims were correctly dismissed, they should have been dismissed without prejudice for failure to exhaust administrative remedies. See Whitehead v. Zurich Am. Ins., 348 F.3d 478, 483 (5th Cir. 2003); Krotzer v. shorey Mills. Ind., 659 F.Supp. 642, 467 (S.D.Miss.1987); see also Chorion U.S.A. Inc. v. Smith, 844 So.2d 1165, 1169 (Miss.2002) (dismissal for failure to exhaust administrative remedies should be without prejudice). A ruling that a plaintiff's claims premature is not a ruling on the merits of the claim. Accordingly, although we affirm the circuit court's dismissal, we will reverse and render the judgment as a dismissal without prejudice. | "Is a ruling that a plaintiff's claim is premature not a ruling on the merits of the claim, and thus dismissal of the claim should be without prejudice?" | 020921.docx | LEGALEASE-00157393 LEGALEASE-00157394 | Condensed, SA, Sub | 0.46 | | 1 | | | 1 |
| 19633 | Wheat Eagle v. City of Fort Pierre, 2002 S.D. 68 | 307A+581 | We have previously determined that the appropriate standard of review for a trial court's decision whether to grant or deny a motion to dismiss is abuse of discretion. Under this standard, we uphold the decision [] "in view of the law and the circumstances." In court was reasonable exercises "judicial discretion," not an arbitrary one. To maintain an action, its decision to dismiss will not stand if it is "not justified by, and clearly against reason and evidence." Under the following guiding principle of law "assist our review first, this Court ordinarily will not interfere with the trial court's ruling in these matters. Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. An unreasonable and unexplained delay has been defined as failure to do something "which the party might do, and might reasonably be expected to do towards vindication or enforcement of his rights." Third, the mere passage of time is not the proper test to determine whether the delay to prosecution warrants dismissal. Fourth, the plaintiff has the burden to proceed with the action. The defendant need only resist the plaintiff step by step. Finally, the dismissal of the cause of action for failure to prosecute should be granted where, after considering all the facts and circumstances of the case, the plaintiff can be charged with lack of due diligence in failing to proceed with reasonable promptitude. | "Does the plaintiff have the burden to proceed with an action, to avoid dismissal?" | 023342.docx | LEGALEASE-00157107 LEGALEASE-00157108 | SA, Sub | 0.9 | | | | 1 | 1 |
| 19634 | Rotec Indus. v. Mitsubishi Corp., 215 F.3d 1246 | 308+1 | Second, Rotec does not establish that Sealand was an agent of the defendant parties. Although "an agency relationship can be created by contract or conduct," not all contracts create agency relationships and not all conduct creates agency relationships, the court must decide whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. An agent is one "who, by virtue of authority conferred upon him expressly or otherwise, is the agent of another, to act on behalf of the principal." Rotec offers no evidence that Sealand, or its employer Johnson, could affect the legal relationships of Defendants. Indeed, the Memorandum Agreement between Defendants and Johnson provides that "each party under this Agreement shall be responsible for its own Scope of Work." Accordingly, it may be that the district court should exercise its discretion in excluding the statement from consideration. | Can all contracts create an agency relationship? | 023311987.ROSS-003313888 | ROSS-003313-887 ROSS-003313888 | SA, Sub | 0.59 | | | | 1 | |
| 19635 | Meyers v. Matthews, 270 Wis. 453 | 308+1 | Agency may be of a general or special character, and soliciting agents are agents of a special nature. An agent having authority only to solicit applications and forward them to his principal is a "soliciting agent." 3 Wisc Insurance Law of Wisconsin, p. 431, Fegan v. Missouri State Life Ins. Co., 274 Mo. 95, 357. An agency is created by the contract, express or implied. "The relation arises when one is authorized to represent another in a business transaction or dealings with third parties; however such authority may be conferred." 2 Words and Phrases, Agency, p. 735; Keever v. Hicks, 127 Mo. App. 432, 105, 106. | What authority does a soliciting agent have? | Principal and Agent Memo 630 - RK_63556.docx | ROSS-00324718-ROSS-003264719 | Condensed, SA | 0.83 | | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 19636 | Phoenix Canada Oil Co. v. Texaco, 842 F.2d 1466 | 1708×1787 | Removal was required to determine whether all companies could be held liable for actions of their Ecuadorian subsidiaries under customary agency principles, although indirect court found that parents did not completely dominate subsidiaries, parent and subsidiaries may have entered into an agency relationship for specific transaction. | There is a second theory under which a parent may be held liable for the actions of its subsidiary: an agency or general agency principle arising … One corporation when shares are owned by a second corporation does not by that fact alone, become the agent of the second company. However, one corporation "completely independent of a second corporation" may assume the role of the first corporation's agent in the course of one or more specific transactions. This restricted agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside the limited agency setting. See Restatement (Second) of Agency * 14M, comment (a) (1958). Under this second theory, legal domination or general alter ego criteria need not be proven. | Can an agency relationship develop if two separate corporations could be held liable for actions of their Ecuadorian subsidiaries under customary agency principles, although indirect court found that parents did not completely dominate subsidiaries entered into an agency relationship for specific transaction? | 041810.docx | LEGALEASE-00157910 LEGALEASE-00157911 | Condensed, SA, Sub | 0.58 | 0 | 1 | | 1 | 1 |
| 19637 | Rose, Index. v. Mitsubishi, 215 F.3d 1246 | 308×1 | Although an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships; the court must decide whether the alleged principal has the right to control the manner and method in which each is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. | Although an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships; the court must decide whether the alleged principal has the right to control the manner and method in which each is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. "Raises affairs to evidence that Seeland, or its employer Johnson, could affect the legal relationships of Defendants. Indeed, the Cooperation Agreement between Defendants and Johnson provides that "each is an independent contractor, shall be responsible for its own Scope of Work." Accordingly, it may well be said that the district court abused its discretion in excluding the statement from its consideration. | Can an agency relationship be created through conduct? | Principal and Agent - Memo A&2 PK_62476.docx | ROSS-003298.308 ROSS-003291809 ROSS-003298.308 | SA, Sub | 0.59 | 0 | | | 1 | 1 |
| 19638 | United States v. Tiarello, 990 F. Supp 1521 | 308×7 | One who is appointed by an agent, empowered to make such an appointment, to perform functions of agent under the primary control of the agent is a "subagent." Id. * 5. Where an agent is a corporation, its subagents are a function of the agent. | Our agent, Tomsa, Corp., 6 Wis.2d 295, 295, 974 N.W.2d 583, 588 (1959), that "[t]he substance, and not the form, of the relation determines the master-servant character." The church's argument incorrectly assumes that to be a fee, a charge must be assessed for commodities actually consumed, and even though charge is calculated according to property values, making water available, storing it, and preserving it in reserves are proprietary, governmental functions, and administration of charge is not integral part of property taxing process. W.S.A. 196.03(1)(b). | Who is a sub-agent? | Principal and Agent - Memo 20-AM_62495.docx | ROSS-003209701/ROSS-003909702 | SA, Sub | 0.53 | 0 | | | 1 | 1 |
| 19639 | City of River Falls v. St. Bridget's Catholic Church of River Falls, 182 Wis. 2d 436 | 405×1020 | Charge by city to cover cost of stormwater runoff for public fire protection is a "fee," rather than "tax," and, therefore, may be assessed against church without voting in election; though charge is calculated according to property values, making water available, storing it, and preserving it in reserves are proprietary, and administration of charge is not integral part of property taxing process. W.S.A. 196.03(1)(b). | Our agent, Tomsa, Corp., 6 Wis.2d 295, 295, 974 N.W.2d 583 (1959), that "[t]he substance, and not the form, of the relation determines the master-servant character." The church's argument incorrectly assumes that to be a fee, a charge must be assessed for commodities actually consumed, and even though charge is calculated according to property values, making water available, storing it, and preserving it in reserves are proprietary, governmental functions, and administration of charge is not integral part of property taxing process. | Is a charge or fee a tax (the primary purpose of a charge is to cover the expense of providing services)? | 054571.docx | LEGALEASE-00157046 LEGALEASE-00157047 | Condensed, SA, Sub | 0.59 | 0 | | | 1 | 1 |
| 19640 | Kellev v. City of Fremont, 719 F.3d 931 | 360×1843 | In analyzing a preemption claim, a state may enact an otherwise valid law that deters unlawfully present aliens from residing within the state, notwithstanding the federal government's exclusive power in controlling the nation's borders. Immigration and Nationality Act, § 245, 8 U.S.C.A. § 1229a. | Our federal government's exclusive power in controlling the nation's borders has its specific constitutional principles that power these issues. First, the federal government "has broad, undivided power over the subject of immigration and the status of aliens," authority that rests on the power "to establish an uniform Rule of Naturalization." Art. I, * 8, cl. 4, and on the national government's "inherent power as sovereign to control … relations with foreign nations." Arizona, 132 S.Ct. at 2498, Second, by reason of the Supremacy Clause, U.S. Const. Art. VI, cl. 2, Congress has virtually unfettered power to preempt state law[s] "by enacting a statute containing an express preemption provision," or (ii) by determining that "Conduct is 'a field' … Congress intended the Federal Government to occupy exclusively." … When the conflict with federal law. Conflict preemption occurs when compliance with both federal and state law is impossible, or when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 2501 (quotations omitted). | Does the federal government have the power to establish a uniform rule of naturalization? | Aliens, Immigration, and Citizenship - Memo 51 - RK.docx | LEGALEASE-00047807 LEGALEASE-00047808 | SA, Sub | 0.77 | 0 | | | 1 | 1 |
| 19641 | Hoppe v. Russo-Anselmi Bank, 200 A.D. 460 | 38×54 | Motives influencing an assignment are immaterial; does not affect validity of assignment as against debtor. | As to the motive of the assignor in making the assignment or the consideration given therefor, it is well settled [Cox's Lyons, 96L] that "it is of no importance to the debtor what reasons influence the assignor in making the assignment," whether it was for the "purpose of more convenient enforcement, or to avoid the capacity of the assignor to bring an action." See, also, Hubbers v. Dooley, 92 Fed. 274, 280, 34 C. A. 338, Osmun v. Hughes, 115 App. Div. 133, 133, 72 N.Y. 573; Sheridan v. Mayor, et. al. (Spec Term N.Y.) 68 N.Y.S. 1024, 1029, 57 App. Div. 486; Second, by reason of the Supremacy Clause, U.S. Const. Art. VI, cl. 2. | Is the motive influencing an assignment important? | Bills and Notes - Memo 1429 - RK_63812.docx | ROSS-003279485 | SA, Sub | 0.79 | 0 | | | 1 | 1 |
| 19642 | Exch. Nat. Bank of Chicago v. Carol Fin. Co., 53 III. App. 2d 255 | 8,301×186 | Hacher then marginal figures relating to date of maturity were no part of instrument and could not be referred to in absence of an ambiguity in note as to due date. | The defendant urges that the written provisions appearing in the upper margin of the note "91 di-15-16-70" provided over the printed provisions of this note, 65 D-1-70, and that the marginal figures have been held to be no part of the instrument and may be referred to only if there is an ambiguity in the instrument. Merritt v. Boyden & Son, 191 III. 136, 60 N.E. 907; Langdale v. People, 100 III. 263; Riley v. Dickens, 19 III. 29; Corgan v. Frew, 39 III. 31. There is no ambiguity in the note … | Are marginal figures a part of the negotiable instrument? | Bills and Notes - Memo 22 - KC_63607.docx | ROSS-003323624/ROSS-003313827 | Condensed, SA, Sub | 0.69 | 0 | | | 1 | 1 |
| 19643 | Chicago Title Ins. Co. v. Alfred Bank, 394 Md. 270 | 83×405 | A signature on the back of an instrument is an indorsement unless it was that it is not, and if the instrument does not indicate any clear intent on the part of the signer to be bound; when the instrument contains no signature is an indorsement. West's Ann.Md.Code, Commercial Law, 53-204(a). | The fact clause of the first sentence of subsection (a) elaborates on former Section 3-402. Its central clause contains language that elaborates on the rule that the capacity in which a signature is an indorsement if the instrument does not indicate unambiguous intent of the signer to sign in some other capacity. If the signature is on an instrument and there is nothing to indicate an unambiguous intent of the signer to sign in some other capacity, the signature is an indorsement. West's Ann.Md.Code, Commercial Law, 53-204(a). | Is a signature on an instrument an indorsement? | 059441.docx | LEGALEASE-00156378 LEGALEASE-00156379 | SA, Sub | 0.49 | 0 | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,973) | Selection & Arrangement (21,876) | Multiple Differences (9,079) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19644 | Buffalo Cty. v. Richards, 212 Neb. 826 | 8,30/I+122 | A negotiable instrument as between the parties requires a consideration the same as any other contract. Seidenberg v. Burka, Inc., 155 Neb. 65, 77, 54 N.W.2d 392, 400 (1952). See Neb. U.C.C. § 3-408, Comment 2 (Reissue 1980). In Danker v. Thies, 181 Neb. 817, 819, 161 N.W.2d 181, 183 (1968), the court stated that consideration for a note given to the payee of a note but may be given by a third party. "The Supreme Court of Nebraska likewise held in Jutte v. Hutchinson, 189 Neb. 190, 192, 201 N.W.2d 749 (1972), that: "A promissory note made to a payee in return for a consideration furnished by a maker from a third person is binding on the maker." See, also, Potts v. Levin, 133 Ga.App. 4, 147 S.E.2d 119 (1966). Mason v. Blayton, 119 Ga.App. 203, 166 S.E.2d 601 (1969); Barton v. Scott, 214 Ark. 1, 714 S.W.2d 181 (1971). | Consideration for a promissory note may be furnished by a third party. | Can consideration for a note be furnished by a third party? | Bills and Notes : Memo 24 - FC_58609.docx | ROSS-003139972-ROSS-003139973 | SA, Sub | 0.9 | 0 | | 1 | 1 | 1 |
| 19645 | Foster v. Barley & Minn., 351 | 810+415 | Although the evidence be not recognized on this ground, yet, if the plaintiff expressly acquire title to the notes through the endorsement of Floyd Foster, the prayer, the objection must still be good against receiving this testimony. But in Pease, Chalfant & Co. vs. Rush, Pratt et als., 2 Minn., 107, it was held that a promissory note can be transferred by mere delivery, so as to pass the title and the right to sue, in the name of the holder; although a note payable to order passed without endorsement, is not passed sufficient to maintain an action, yet a subject to the same disabilities as if it had been taken after due; but the title passes so effectually as to prevent the maker, or the owner, the objection to the evidence was, therefore, not well taken, and the Court below committed no error in receiving it. | Title to a promissory note may be transferred without indorsement or delivery of such note. | Is indorsement necessary for the transfer of title of a note? | 010891.docx | LEGALEASE-00158512-LEGALEASE-00158513 | Condensed, SA, Sub | 0.89 | | 1 | | 1 | 1 |
| 19646 | Grospan v. Grospan, 50 So 3d 233 | 95+238(2) | The law is clear that written contracts may be modified by oral contract, and the conduct of the parties. Rhodes Steel Bldg., Inc. v. Walker Const. Co., 35.97 f (La.App.2d Cir.4/10/02), 813 So.2d 1171; Williams Engineering, Inc. v. Goodyear, 480 So.2d 772 (La.App. 5th Cir. 1985); Maryland Cas. Co. & Southern Equipment, Inc. v. Wilson Warehouse Co., 4159 So.2d 548 (La.App. 1st Cir.1982), writ denied, 423 So.2d 1181. | Written contracts may be modified by oral contracts and the conduct of the parties. | Can a written contract of partnership be altered orally? | 02263.docx | LEGALEASE-00158520-LEGALEASE-00158521 | SA, Sub | 0.82 | | | 1 | 1 | 1 |
| 19647 | Elston Inv., Ltd. v. David Altman Leasing Corp., 731 F.2d 436 | 170B+2447 | The issue presented is whether, for purposes of determining diversity jurisdiction, the citizenship of a limited partnership is the citizenship of the partners (both general and limited) or of only the general partners. We hold that the citizenship of all the partners is relevant to a | Citizenship of all partners of limited partnership was relevant to a determination of partnership's citizenship, for purposes of determining diversity jurisdiction, and since there was not complete diversity, remand to state court was required. | Is the citizenship of all partners relevant in determining the partnership citizenship? | Partnership - Memo 516 GP_56656.docx | ROSS-003279109 | Condensed, SA, Sub | 0.3 | 0 | | | 1 | |
| 19648 | In re Curran, 157 B.R. 500 | 289+541 | The Supreme Court as well as Massachusetts common law clearly serve as an indication of the trustee's desires with respect to the trust res which consist of the partnership assets. A partnership is an association that includes, ch. 108A '6(1) and the partnership by a voluntary contract. Boyer v. Bowles, 310 Mass. 134, 37 N.E.2d 489 (1941). The Court finds that Massachusetts partnerships satisfy the necessary elements of an express trust and Massachusetts act as a fiduciary capacity over each other for purposes of '541(a)(4). | One partner cannot, directly or indirectly, use partnership assets for own benefits, under Massachusetts law; one or the partners, in conducting business of partnership, take any profit clandestinely, partner cannot carry on business of partnership for private advantage, and partner cannot avail himself of knowledge or information which may be regarded as property of partnership. | Do the partners act as a trustee of the partnership assets so that it benefits all partners in the partnership? | 02363.docx | LEGALEASE-00158693-LEGALEASE-00158694 | SA, Sub | 0.5 | | | 1 | 1 | |
| 19649 | Richardson v. Gregory, 27 S.E.App.621 | 289+930 | A partnership loses when there is an end put to the business itself. Bank of Montreal v. Page, 98 Ill. 119; Spurk v. Leonard, 9 Ill. App. 174. | The partnership loses when there is an end put to the business itself. | Does a partnership lose when there is an end put to the business itself? | 02628.docx | LEGALEASE-00158721-LEGALEASE-00158722 | SA, Sub | 0.5 | 0 | | | 1 | |
| 19650 | Vilsito v. Sacramento Cty., 54 Cal. App. 3d 613 | 302+346(1) | Assuming, in view of the recent decision of the Supreme Court in Weaver v. Sanford (Gen.) Casualty Co. (Cal.), 50 Cal.2d 713, 126 P.2d 312, that the question of whether the trial court, in sustaining the demurrer to plaintiff's complaint, abused its discretion, is open on appeal, though no request was made for leave to amend, we are of the opinion that there was no abuse of discretion. The demurrer interposed was a general one, and challenged the sufficiency of the complaint to state a cause of action. Plaintiff is presumed to have stated his case as strongly as it can be stated. Higgins v. Security Trust etc. Bank, 203 Cal. 398, 401, 264 P. 744; Tehama County v. Pacific Gas & Elec. Co., 33 Cal.App.2d 465, 469, 91 P.2d 958; Lamont Co., Inc. v. Jones, 134 Cal.App. 89, 92, 24 P.2d 841. Considering plaintiff's complaint in the light most favorable to him, 134 Cal.App.2d 845. | A plaintiff is presumed to have stated his case as strongly as it can be stated in his complaint. | Is a plaintiff presumed to have stated his case as strongly as it can be stated? | 02823.docx | LEGALEASE-00158530-LEGALEASE-00158531 | SA, Sub | 0.89 | | 1 | | 1 | |
| 19651 | In re J.M., 2012 Ohio 5283 | 307A+563.1 | However, we note that a section 2*619 motion to dismiss is analogous to a motion for summary judgment. The historical and Practice Notes following section indicate that a motion to dismiss pursuant to section 2*619 is "a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed question of fact. This amounts to a summary judgment procedure as adopted on behalf of the defendant, or on behalf of the plaintiff." (Ill.Stat.Ann., ch. 115, par. 2*619, Historical & Practice Notes, at 663 (Smith-Hurd 1983).) A motion for summary judgment is not reviewable on appeal because the result of such denial merges with the trial that follows. | Motion to dismiss because claim asserted against defendant is barred by affirmative matter avoiding legal effect of claim is analogous to motion for summary judgment. III.Rev.Stat.1991, ch. 110, P 2-619(a)(9). | In motion to dismiss analogous to motion for summary judgment? | 02431.docx | LEGALEASE-00158134-LEGALEASE-00158135 | Condensed, SA, Sub | 0.69 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19652 | Wade v. Lima Mem. Hosp., 28 N.E.3d 161 | 30+3807 | The proper response to the failure to file the affidavit required by Civ.R. 10(D)(2) is a motion to dismiss pursuant to Civ.R. 12(B)(6)." Fletcher v. Univ. Hosps. of Cleveland, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, paragraph one of the syllabus. "A dismissal of a complaint for failure to file the affidavit required by Civ.R. 10(D)(2) is an adjudication otherwise than on the merits. The dismissal, therefore, is without prejudice." Id. at paragraph two of the syllabus. "A dismissal without prejudice relieves the court of all jurisdiction over the matter and leaves the parties in the same position as if the plaintiff had never commenced the action." Haynes v. Ohio Dept. of Rehab. & Corr., 10th Dist. Franklin No. 05AP"78, 2005-Ohio-5099, 2005 WL 2364962, 13, citing Stafford v. Hetman, 8th Dist. Cuyahoga No. 72825, 1998 WL 289383, (June 4, 1998) and Butler v. Harper, 9th Dist. Summit No. 21051, 2002-Ohio-5029, 2002 WL 31114898, 17, citing Cent. Mut. Ins. Co. v. Bradford"White Co., 35 Ohio App.3d 26, 28, 519 N.E.2d 422 (6th Dist.1987). See also Davis v. Paige, 5th Dist. Stark No. 2007 CA 00248, 2008-Ohio-6415, 2008 WL 5147820, 31, 34. | Patient's complaint, dismissed without prejudice for failure to file expert's affidavit of merit establishing adequacy of medical malpractice claim, was a nullity which could not be considered by Court of Appeals when reviewing trial court's grant of summary judgment to hospital and treating physician in medical malpractice action. Rules Civ.Proc., Rules 10(D)(2), 12(B)(6). | Does a dismissal without prejudice relieve the court of all jurisdictions over the matter and leaves the parties in the same position as if the plaintiff had never commenced the action? | Pretrial Procedure - Memo # 10883 - C - PC_63687.docx | ROSS-003292236-ROSS-003292237 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 19653 | Town of Trumbull v. Palmer, 104 Conn. App. 498 | 307A+693.1 | "Generally speaking, a nonsuit is the name of a judgment rendered against a party in a legal proceeding upon his inability to maintain his cause in court, or when he is in default in prosecuting his suit or in complying with orders of the court." (Internal quotation marks omitted.) Segretario v. Stewart"Warner Corp., 9 Conn.App. 355, 359, 519 A.2d 76 (1986). "The nonsuit forecloses the plaintiff from further prosecution of the action...." Id. | A nonsuit forecloses the plaintiff from further prosecution of the action. | Does a nonsuit foreclose the plaintiff from further prosecution of the action? | 025752.docx | LEGALEASE-00158669-LEGALEASE-00158670 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 19654 | Erskine v. Gardiner, 162 La. 83 | 307A+693.1 | It is seen that there are several interesting questions raised by the exceptions, pleas, and answers filed in this case, but we do not consider it necessary to pass upon any of them, at this time, because the essence of an intervention is the existence of a suit between persons other than the intervener. This court has repeatedly held that the dismissal of the plaintiff's suit carries with it the dismissal of the intervention. In Barron v. Jacobs, 38 La. Ann. 370, as in this case, the plaintiff claimed the ownership of immovable property which was in the possession of the defendants, and an intervener asserted ownership of the property. The court in that case said: "The dismissal of the suit carried with it the [dismissal of the] intervention.It cannot be claimed that, by joining the plaintiffs, the intervener became a plaintiff or substituted herself to the plaintiffs. If she has any right to the land in question, she will have to bring a proper proceeding to have the same recognized and enforced."In the Barron v. Jacobs Case this court followed the rulings in Jones v. Lawrence, 4 La. Ann. 279; Merritt v. Openheim, 9 La. Ann. 54; Todd v. Shouse, 14 La. Ann. 426; Walmsley v. Whitfield, 24 La. Ann. 258. From Besson et al. v. Mayor, etc., of Donaldsonville, 49 La. Ann. 273, 21 So. 262, we quote the following: "The dismissal of plaintiff's suit carries with it the dismissal of the intervention, leaving to interveners the right to proceed by separate suit." | Dismissal of plaintiff's suit carries with it dismissal of intervention. | Does a dismissal of plaintiff's suit carry with it dismissal of intervention? | 025883.docx | LEGALEASE-00158082-LEGALEASE-00158083 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 19655 | Winger v. Chicago City Bank & Tr. Co., 325 Ill. App. 459 | 302+360 | "The trial court in ruling upon the motion to dismiss the original complaint, grants such motion and by the same order grants the plaintiff ten days within which to file an amended complaint in said cause. An order merely sustaining a demurrer to a complaint, or a motion to dismiss which is in the nature of a demurrer, and upon which no judgment is entered, is not a final adjudication. (Freeman on Judgments (5th Ed.) Vol. 2, p. 1512, Par. 717.) This rule is observed in the case of Trebbin v. Thoeresz, 316 Ill. 30, 32, 146 N.E. 542; Barber v. Wood, 318 Ill. 415, 149 N.E. 231. | An order dismissing complaint and giving leave to file amended complaint was not a final order disposing of the litigation, and a defendant filing such motion continued to be a party to the litigation and could not validly object to receiving in evidence a deposition on ground that defendant was not a party to the cause at time the deposition was taken. | "Is an order merely sustaining a demurrer to a complaint or a motion to dismiss which is in the nature of a demurrer not a ""final adjudication.""?" | 025887.docx | LEGALEASE-00158090-LEGALEASE-00158091 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 19656 | Borowiec v. Gateway 2000, 209 Ill. 2d 376 | 307A+622 | In undertaking review of the appellate court's judgment, I begin by noting that the issues before us have arisen in the context of motions to dismiss. A motion to dismiss pursuant to section 2"619 of the Code of Civil Procedure admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. See Busch v. Bates, 323 Ill.App.3d 823, 831"32, 257 Ill.Dec. 558, 753 N.E.2d 1184 (2001).For purposes of reviewing a court's ruling on a defendant's motion to dismiss, this court accepts as true the well-pleaded allegations of the plaintiff's complaint. Board of Managers of the Village Centre Condominium Ass'n v. Wilmette Partners, 198 Ill.2d 132, 134, 260 Ill.Dec. 203, 760 N.E.2d 976 (2001). Motions to dismiss under section 2"619 of the Code of Civil Procedure present a question of law, which we review de novo. Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 411, 266 Ill.Dec. 879, 775 N.E.2d 951 (2002). | A motion to dismiss on the pleadings attacks the legal sufficiency of the complaint; such a motion does not raise affirmative factual defenses, but alleges only defects appearing on the face of the complaint. S.H.A. 735 ILCS 5/2-615. | When will a court accept well pleaded allegations as true? | 025950.docx | LEGALEASE-00158723-LEGALEASE-00158724 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 19657 | Perkaus v. Chicago Catholic High Sch. Athletic League, 140 Ill. App. 3d 127 | 272+219 | Plaintiff now contends that the well-pleaded facts of Count VII of his third-amended complaint showed the existence of a duty owed by defendants to plaintiff. We disagree. A complaint for negligence must set out the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach. (Cunis v. Brennan (1974), 56 Ill.2d 372, 374, 308 N.E.2d 617.) The issue of duty is a question of law to be decided by the court, and it encompasses the question of whether the defendant and the plaintiff stand in such a relationship to one another that the law imposes upon the defendant an obligation to act with reasonable care for the plaintiff's benefit. 56 Ill.2d 372, 374, 308 N.E.2d 617. | Where defendant is charged with negligence because of his failure to perform act allegedly required by contract, question of whether defendant actually had duty to perform the act usually must be determined from terms of the contract; in these situations, defendant's duty will not be extended beyond duties described in the contract. | Will the non-existence of duty on part of defendant be the basis for motion for involuntary dismissal in a negligence action? | 039548.docx | LEGALEASE-00159212-LEGALEASE-00159213 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 19658 | Erwin v. State, 152 Tex. Crim. 245 | 308+3(1) | Again, in Bertrand v. Mutual Motor Co., Tex. Civ. App. 38 S.W.2d 417, 418, it is said: "A bailee may act for the benefit of the bailor, but that fact does not make him an agent." See 2 Corpus Juris Secundum, Agency, " 2(b), page 1027. | That bailee acts for benefit of bailor does not make him bailor's agent. | Can a bailee act for the benefit of the bailor? | Principal and Agent - Memo 395 - RK_63951.docx | ROSS-003320540-ROSS-003320541 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19659 | Hanna v. Vastar Res., 84 S.W.3d 372 | 308+19 | The agency and independent contractor arguments both assert Vastar's control over Baker/MO. The Hannas contend Baker/MO was Vastar's agent and that Vastar, as principal in the relationship, is vicariously liable for Baker/MO's negligence in failing to enforce safety rules. The general rule of law is that an agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal. See Royal Mortgage Corp. v. Montague, 41 S.W.3d 721, 732 (Tex.App.-Fort Worth 2001, no pet). A principal/agency relationship is not presumed, and the party asserting the relationship has the burden of proving it. The party claiming agency must prove the principal has both the right to assign the agent's task and the right to control the means and details by which the agent will accomplish the task. Lyons v. Lindsey Morden Claims Management, Inc., 985 S.W.2d 86, 90 (Tex.App.-El Paso 1998, no pet.). The principal's extent of control over the details of accomplishing the assigned task primarily distinguishes the status of agent from that of independent contractor. The right of control is "the supreme test" in establishing the master-servant or agency relationship. See Newspapers, Inc. v. Love, 380 S.W.2d 582, 588, 590, 598 (Tex.1964); see also Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex.1993). | An agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal; principal/agency relationship is not presumed, and the party asserting the relationship has the burden of proving it. | Who has the burden of proving the agency relationship? | 042035.docx | LEGALEASE-00159117-LEGALEASE-00159118 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 19660 | Georgia Latino All. for Human Rights v. Governor of Georgia, 691 F.3d 1250 | 212+1496 | The Supreme Court's recent decision in Arizona v. United States provides an instructive analogy. Section 3 of Arizona's Senate Bill 1070 (S.B. 1070) added a "state-law penalty for conduct proscribed by federal law""the failure to complete and carry alien registration documents as required by 8 U.S.C. "" 1304(e), 1306(a). Arizona, 132 S.Ct. at 2501. The Court explained the comprehensive nature of the current federal registration scheme, which holds aliens to certain standards of conduct and penalizes their willful failure to register with the federal government. Id. at 2502. Based on the breadth of federal regulation, the Court concluded that "the Federal Government has occupied the field of alien registration" and therefore found impermissible "even complementary state regulation" within that field. Id.; see also id. ("Even if a State may make violation of federal law a crime in some instances, it cannot do so in a field ... that has been occupied by federal law."). The Supreme Court dismissed the state's argument that its goal of concurrent enforcement was appropriate in a field occupied by federal regulation. Id. at 2502"03. Like the federal registration scheme addressed in Arizona, Congress has provided a "full set of standards" to govern the unlawful transport and movement of aliens. Id. at 2502. The INA comprehensively addresses criminal penalties for these actions undertaken within the borders of the United States, and a state's attempt to intrude into this area is prohibited because Congress has adopted a calibrated framework within the INA to address this issue. See id. at 2502"03. | Nonprofit organizations and others were likely to succeed on merits of their claim that section of Georgia's Illegal Immigration Reform and Enforcement Act, creating state criminal violations for transporting or moving an illegal alien, concealing or harboring an illegal alien, and inducing an illegal alien to enter the state of Georgia, was preempted by Immigration and Nationality Act (INA), as required for preliminary injunction against enforcement of such section; federal government in enacting INA clearly expressed more than peripheral concern with entry, movement, and residence of aliens within United States, and breadth of applicable laws illustrated overwhelmingly dominant federal interest in the field. Immigration and Nationality Act, S 274, 8 U.S.C.A. S 1324; West's Ga.Code Ann. SS 16-11-200 to 16-11-202. | Is it impermissible for a state to adopt complimentary regulations in the field of alien registration? | 006955.docx | LEGALEASE-00160248-LEGALEASE-00160249 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 19661 | Jones v. Rider, 60 N.H. 452 | 83E+822 | A promissory note is presumed to be payable where dated, if no other place of payment is mentioned in the note. | A note is presumed to be payable where dated, if no other place of payment is mentioned therein. | Where is a note presumed to be payable? | Bills and Notes-Memo 1401- JK_64841.docx | ROSS-003280609 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 19662 | Chase v. Dow, 47 N.H. 405 | 83E+666 | The law is well settled that when interest is expressly stipulated for in the contract, such interest is to be paid according to the law of the place where the contract was made, unless some other place of payment was stipulated, in which case interest is to be paid according to the law of the place where the contract was to be performed. And where no place of payment is stipulated the law of the place where the contract is made will govern as to the rate of interest, though the loan be secured by a mortgage on lands in another State, unless the circumstances show that the parties had in view the laws of the latter State, in respect to the interest. Fanning v. Consigna, 17 Johns. 511; Schofield v. Day, 20 Johns. 102; De Wolf v. Johnson, 10 Wheat. 367; Boyce v. Edwards, 4 Peters 111; Chapman v. Robertson, 6 Paige 627; Scofield v. Taylor, 20 Peters 102; Story Con. Laws secs. 272, 272, a., 291, 293, 305; 2 Kent's Com. 460, 461, note c. | Where no place of payment is stipulated on a note running with interest, the law of the place where the contract was made will govern as to the rate of interest, though the note is secured by a mortgage on lands in another state, unless the circumstances show that the parties had in view the laws of the latter state in respect to the interest. | According to which law is the interest to be paid? | Bills and Notes-Memo 1402- JK_64842.docx | ROSS-003308645 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 19663 | Wright v. State of Ga., 373 U.S. 284 | 92+3297 | Three possible bases for petitioners' convictions are suggested. First, it is said that failure to obey the command of a police officer constitutes a traditional form of breach of the peace. Obviously, however, one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution. The command of the officers in this case was doubly a violation of petitioners' constitutional rights. It was obviously based, according to the testimony of the arresting officers themselves, upon their intention to enforce racial discrimination in the park. For this reason the order violated the Equal Protection Clause of the Fourteenth Amendment. See New Orleans City Park Improvement Ass'n v. Detiege, 358 U.S. 54, 79 S.Ct. 99, 3 L.Ed.2d 46, affirming 5 Cir., 252 F.2d 122. | Negro defendants could not constitutionally be convicted of violation of breach of the peace statute for refusal to leave municipally owned park where police officers' order to leave was violative of defendants' rights under the Equal Protection Clause. Code Ga., S 26-5301; U.S.C.A.Const. Amend. 14. | Can a person be constitutionally convicted merely for not complying with an order to leave a premise? | 014283.docx | LEGALEASE-00160006-LEGALEASE-00160007 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 19664 | Hoffman v. Yack, 57 Ill. App. 3d 744 | 141E+997 | Although plaintiff did not specifically plead a violation of his contract of employment, the facts alleged seem to raise this issue, but again, if the theory of the action would be deemed to be the breach of a contractual duty, the Court of Claims has exclusive jurisdiction by virtue of Ill.Rev.Stat. 1975, ch. 37, sec. 439.8(b) requiring that all claims against the State be brought in that court. A State university and its Board of Trustees are arms of the State and are not independent or autonomous of the State. An action premised on a breach of contract brought against the Board is a suit against the State over which the circuit court has no jurisdiction. Tanner v. Board of Trustees, 48 Ill.App.3d 680, 6 Ill.Dec. 679, 363 N.E.2d 208 (1977); see also Kane v. Board of Governors, 43 Ill.App.3d 315, 2 Ill.Dec. 53, 356 N.E.2d 1340 (1976). | A state university and its board of trustees are arms of state and are not independent or autonomous of state. | Is a university autonomous of the State? | Education - Memo #300 - C - ATS_64301.docx | ROSS-003296687-ROSS-003296688 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19665 | People v. Henderson, 138 Cal. App. 2d 505 | 183+16 | Defendant urges that because she did not obtain a pecuniary advantage and did not defraud the pharmacist or doctors she could not be guilty of forgery. This argument has been frequently urged in the past, but never with success. "The gist of the offense of forgery is the intent to defraud involved in the making of a forged instrument or knowingly uttering the same." (People v. Gedvick (1963), 214 Cal. App. 2d 164 [29 Cal. Rptr. 301].) The words "uttering" or "to utter" have a clear definition in law, they mean substantially "to offer" (People v. Katz (1934), 2 Cal. 2d 441, 445, 190 N.E.2d 113) ... It is immaterial to the crime of forgery whether the defendant in fact defrauded. People v. Mayer (1939), 289 Ill. 186, 186, 124 N.E. 447; People v. Churn (1917), 148 N.E. 181, 174 N.E. 249. | Words "uttering" or "to utter" in penal definition of forgery to effect that forgery is intent to defraud involved in making of a forged instrument or knowingly "uttering" the same mean substantially to offer. S.H.A. ch. 38, § 17-3. | What is the gist of an offense of forgery? | 033417.docx | LEXLEX-SE-00155863 LEXLEX-SE-00155864 | Condensed, SA, Sub | 0.69 | 0 | 1 | | 1 | 1 |
| 19666 | Gordon's Const. & Land Co. v. Bent Per. Gov't, 835 So. 2d 991 | 183+4 | With the grant of an exclusive franchise to a public utility accompanied by an agreement to pay for it, the municipality binds itself, in effect, to refrain, while that franchise exists, from granting a competing franchise to another corporation without compensating the owners of the first franchise. In effect, the grantor of an exclusive franchise removes from itself the power and authority to grant similar rights to others or to permit others to engage in the same activity for which the first franchise was awarded. A non-exclusive franchise does not include the right to be free of competition, and does not prevent the granting of a similar franchise to others. 36 Am. Jur. 2d, § 24, Section 333 Franchises, pp. 750–751. Clews of Crystal Springs, Valley Electric Member) Corp., 139 So.2d 822 (1962). | Non-exclusive franchise does not confer upon the franchisee the right to be free of competition, and does not prevent the granting of a similar franchise to others. LSA-R.S. 33:4169.1. | What are nonexclusive franchises? | Franchise - Memo 27 - KNR_64433.docx | ROSS-003274409+ROSS-003274470 | SA, Sub | 0.74 | 0 | | 1 | 1 | 1 |
| 19667 | Cent. Power Co. v. City of Hastings, 527 F.2d 447 | 183+2 | It is well settled that a franchise when ambiguous must be construed strictly for the grantor, that is, the simple, and ambiguities are unequivocally granted are withheld. Piedmont Power & Light Co. v. Graham, 253 U.S. 193, 40 S.Ct. 453, 64 L.Ed. 855; Knoxville Water Co. v. Knoxville, 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353; Blair v. Chicago, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801; Mitchell v. Dakota Central Telephone Co., 246 U.S. 396. | Franchise granted by municipal corporation, when ambiguous, must be construed strictly for grantor. | How are franchises construed when ambiguous? | Franchise - Memo 41 - KNR_64508.docx | ROSS-003283116+ROSS-003283118 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | 1 |
| 19668 | City of Joseph v. Joseph Waterworks Co., 57 Or. 586 | 263+68(2) | It is further contended by plaintiff that the municipality cannot grant an exclusive franchise without the authority from the Legislature. This is conceded by defendant. It contending only that her franchise is perpetual, while plaintiff insists that section 4 of the ordinance limits its duration to 35 years, and the franchise ... The authority therefor must be found in the Constitution or statutes of the municipality, a municipality cannot, without statutory authority, grant a perpetual franchise. Blue v. City of Cedar Rapids, 118 Iowa, 234, 241, 91 N.W. 1081, 1084, that "grants or franchises in perpetuity or for unreasonably long periods of time are generally regarded as against public policy, and, therefore, the authority therefor must be found in the Constitution or statutes of the state." See, also, City of ... Detroit Railway, 173 U.S. 48, 19 S.Ct. 732, 43 L.Ed. 67; Brenham v. Water Co., 67 Tex. 542, 4 S.W. 143; Illinois Trust & Savings Bank v. Arkansas City Water Co., 67 C.C.A. 11 (76, U.S. App. 6 F.), City of , 76 ... of-cogniant (C.C.A. 114 Fed. 688. | A municipality has no authority to grant a perpetual utility franchise. | Can municipalities grant perpetual franchises? | Franchise - Memo 90 - ANG_65707.docx | ROSS-003429425+ROSS-003429257 | SA, Sub | 0.94 | 0 | | 1 | 1 | 1 |
| 19669 | McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176 | 217+1001 | Indemnity is the basis and foundation of all insurance law. Castellain v. Preston, 11 Q.B. D. 380. Richards on Insurance, (4th ed.) sec. 27. The contract of the insurer is not that, if the property is burned, he will pay its market value, but that he will indemnify the assured, that is, save him harmless or put him in as good a condition, so far as practicable, as he would have been in if no fire had occurred" (Washington Mills Mfg. Co. v. Weymouth Ins. Co., 135 Mass., 503). | Indemnity is the basis and foundation of all insurance law. | Is indemnity the basis and foundation of all insurance law? | Insurance - Memo 61 - SNC_64546.docx | ROSS-003291097+ROSS-003291098 | Condensed, SA | 0.88 | 0 | 1 | | 1 | 1 |
| 19670 | Garcia v. City of Bridgeport, 306 Conn. 340 | 217+1001 | "Insurance" is defined as "any agreement to pay a sum of money, provide service or any other thing of value on the happening of a particular event or contingency or to provide indemnity for loss in respect to a specified subject by specified party's indemnity for a consideration is key concept of insurance, an insured shall have an interest which is subject to a risk of loss through destruction or impairment of that interest, while risk is assumed by the insurer and such assumption shall be part of a general scheme to distribute losses among a large group of persons bearing similar risks in return for a ratable contribution or other consideration" ... General Statutes ' 38a–1 (10). Thus, our statutes define insurance as the assumption of another's risk for profit. Deane v. Paterson, 247 Conn. 442, 456, 724 A.2d 681 (1999). A municipality that self-insures its private passenger motor vehicle fleet thus is in exactly the same position with the risk of another, for consideration or otherwise, it self assumes fulfills its obligations under the motor vehicle insurance law without purchasing insurance. General Statutes ' 14–45714 A.2d 681... | Insurance is the assumption of another's risk for profit. | Is insurance the assumption of another's risk for profit? | Insurance - Memo 55 - SNC_65666.docx | ROSS-003291097+ROSS-003313877 | SA, Sub | 0.95 | 0 | | 1 | 1 | 1 |
| 19671 | Fort Bragg Unified Sch. Dist. v. Solano City Roofing, 194 Cal. App. 4th 891 | 217+1001 | Before addressing Colonial's contentions, we first emphasize that the circumstances presented here are unusual. A construction performance bond is not an insurance policy. (Cates Construction, Inc. v. Talbot Partners (1999) 21 Cal.4th 28, 60, 86 Cal.Rptr.2d 855, 980 P.2d 407 (Cates).) Unlike insurance, a performance bond means a tripartite relationship between the surety (Colonial), the principal (Solano), and the obligee (the District) (id. at p. 58, 86 Cal Rptr.2d 855, 980 P.2d 407.) ... Whereas insurance protects against specified losses, the performance bond protects the obligee against the principal's default. There will seldom be overlapping coverage between such a bond, which guarantees performance, and an insurance policy, which indemnifies the contractor from injury claims based on negligence or accident. | A construction performance bond or a performance bond is an insurance policy. | Is a construction performance bond or a performance bond an insurance policy? | 037008.docx | LEXLEX-SE-00159491 LEXLEX-SE-00159492 | Condensed, SA | 0.93 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WSNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,079 |
| 1/6/72 | Thomas v. American Nat. Bank, 704 S.W.2d 321 | 289=582 | A partnership, once proved, presumptively continues until the contrary appears. Woodruff v. Bryant, 558 S.W.2d 535 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The determination issue in this appeal, then, is whether the appellees have established as a matter of law that, on May 21, 1982, when Southwestern Crema borrowed $160,000.00 from American Bank, Thomas and McGonigle had neither dissolved the partnership nor terminated their participation by an effective transfer of their interest to Gonzalez. | Partnership, once proved, presumptively continues until contrary appears. | Does a partnership prove to exist and continue until the contrary appears? | 02/598.docx | LEGALEASE 00180218-LEGALEASE 00180219 | SA, Sub | 0.86 | 0 | | | 1 | 1 |
| 1/6/73 | Winer v. Winer, 107 So.2d 2/8=1262 | 289=1262 | "The general rule is that, upon dissolution of a partnership, it is the right of each partner to have the firm's property converted into money by a sale." Arkey v. Bray, 289 Pa. 208, 50 A. 925, 927 n.47 C.J., s. 988, p. 1236. It is stated: "During a period for settling the partnership's affairs, and accounting and distribution of assets remains, the entire property of the firm should, as a rule, be converted into cash and applied, first, in payment of partnership debts and of the firm. *** Generally, a sale will not be ordered where prejudicial to the interests of the parties. In such a case, the court may make a partition or order a sale of part of the assets, which ordinarily should include the good will of the firm. *** Generally, a sale will not be ordered if it appears to be prejudicial to the interests of the firm." 68 C.J.S., Partnership, s. 340, p. 849. Here, the innocent partner has consented to the sale. | Where plaintiff firmly walked out on partnership and defendants distrust each other partner to have the firm's property converted into accounts collectible, such assets, on dissolution of partnership, should have been converted into money by a sale to satisfy partnership debts and distributing balance after deducting value of partnership with distribution of partnership and to require defendants to pay plaintiff one half of such value which in effect required defendants to buy plaintiff's half interest in such inventory. | Does the sale of all the assets of a firm carry with it the partnership good will? | 02/639.docx | LEGALEASE 00159927-LEGALEASE 00159928 | Condensed, SA, Sub 0.31 | 0.31 | | 1 | | 1 |
| 1/6/74 | Oddo v. Ries, 743 F.2d 630 | 99=41(3) | A co-owner of a copyright must account to other co-owners for any profits he earns from licensing or use of the copyright. Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 221 F.2d 569 (2d Cir.), modified, 223 F.2d 252 (1955); Picture Music, Inc., 314 F. Supp. at 645-647; but the duty to account does not derive from the copyright law's prohibition of infringement. Rather, it comes from "equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners." Harrington v. Mure, 186 F.Supp. 655, 657*658 (S.D.N.Y.1960). | Co-owner of copyright must account to other co-owners for any profits he earns from licensing or use of copyright. | Is a joint owner of a copyright under a duty to account to the other joint owners of the work? | 02/647.docx | LEGALEASE 00159923-LEGALEASE 00159924 | SA, Sub | 0.81 | 0 | | | 1 | 1 |
| 1/6/75 | Sheridan v. Comp-U-Motives, 168 Ill. App. 3d 451 | 233=1381 | A motion to dismiss concedes all well-pleaded facts in the complaint. (Curran v. International Harvester Co. (1982), 88 Ill.2d 273, 60 Ill.Dec. 416, 413 N.E.2d 15; Englebrecht v. Tayce Chemical, Ltd (Inc.) (1977), 53 Ill.App.3d 9016, 11 Ill.Dec. 611, 368 N.E.2d 8) in which it alleges the affirmative matter defeating the claim of the nonmoving party. A motion under section 2*619(a)(9) of the Code of Civil Procedure (Ill.Rev.Stat.1985, ch. 110, par. 2*619(a)(9)).The affirmative matter "must be something more than an assertion that the complaint fails to plead sufficient facts to state a cause of action (Urtraciolic. The "affirmative matter" in the section 2*619(a)(9) motion must negate an essential allegation of the plaintiff's cause of action in the complaint." (Stone v. McCarthy (1987), 158 Ill.App.3d 669, 576, 110 Ill.Dec. 661, 511 N.E.2d 780.) An "affirmative matter" in this case is the exception for the loss in the "yield back" provision of paragraph No. 8 in the instant lease. | Yield-back clause in commercial lease with its unconditional fire loss exception, was complete defense to landlord's action against tenant for breach of lease by not keeping open competitive gasoline premises as landlord failed to exercise its right under lease to terminate lease. | Can an affirmative matter be more than an assertion that complaint fails to state a cause of action? | Pretrial Procedure - Memo 1142 - C - TM_54084.docx | ROSS 000282484-ROSS-000282485 | Condensed, SA, Sub 0.7 | 0.7 | | 1 | | 1 |
| 1/6/76 | Howard Elec. & Mech. v. Dep't of Revenue of State of Colo., 771 P.2d 475 | 371=1610 | A tax statute, like any other statute, must be construed "to give consistent, harmonious and sensible effect to all its parts." (In re Colo. Const. Co. v. Wood, 158 Colo. 433, 435, 407 P.2d 303, 30 (1965)). A sales tax is a tax on the consumer and such taxes constitute the state's "privilege" of storing, using, or consuming in this state – tangible personal property within this state, at retail." Buss v. Charnes, 396 Colo. 374, 377, 601 P.2d 622, 624 (1979) (quoting C.R.S. 39*26*102(1)). A use tax is construed to be supplementary to, not separate from, sales tax. (C.R. Matthews v. Department of Revenue, 193 Colo. 44, 45, 562 P.2d 415, 417 (1977)). Use tax is "a complement to the sales tax designed to form a comprehensive tax system by taxing property upon which no sales tax has been paid." (Kentucky v. City of Elizabethtown, 435 S.W.2d 78, 79\*80 (Ky.1968)). | Electrical and mechanical engineering contractor was liable for payment of Regional Transportation District use tax on tangible personal property it purchased in the District and used to fulfill its construction contracts in the District, where such property was obtained at retail from places where no use or payment of sales or use tax. C.R.S. 32-9-105(2)(a). | Is a "sales tax" a tax on a purchase? | 04/223.docx | LEGALEASE 00159844-LEGALEASE 00159845 | Condensed, SA, Sub 0.61 | 0.61 | | 1 | | 1 |
| 1/6/77 | First Nat. Bank of Jonesville v. Lee, 48 Ill. 2d 282 | 371=1610 | A related argument of the plaintiffs is that while the statutes may not permit a tax on the shares of national bank stock, the seller in fact, as a practical matter, does pass the tax on to the purchaser. However, assuming arguendo the tax is passed on to the purchaser through higher rates, it still makes it a state tax on national banks which is prohibited. And where authority to tax national banks rests on the statute under federal statute the statute is strictly construed and any authority to tax national banks for such purpose must be based upon the clear and express authority of Congress by Congress in the legislation of that authority. Any use of imposing tax on the national bank stock at a price increase does not aid in the return in, as the legal incidence of the tax falls on the national bank. First Agricultural National Bank of Berkshire County v. State Tax Comm'n, 392 U.S. 339, 347, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968). | Where use and occupation tax on national banks of federal statute national banks were not subject to taxes imposed by those acts for their purchase and use of tangible personal property, legal incidence of those taxes falls on national banks. 12 U.S.C.A. S. 548. | Is the Retailer's Occupation Tax a tax on the seller? | Taxation - Memo 1113 - C - NN.docx | LEGALEASE 00090156-LEGALEASE 00090157 | Condensed, SA, Sub 0.01 | 0.01 | | 1 | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19678 | United States v. Parker, 116 F. Supp. 3d 159 | 110+18.86 | Finally, Parker argues that the decision to prosecute him for statements that he made while voluntarily seeking treatment for his mental health condition that he claims accounts for those statements directly contravenes sound public policy. Parker reasons that the prosecution as this risk-intimidating individuals from seeking mental health treatment necessary to avoid dangerous behavior. Whether the Court agrees or disagrees with Parker's assessment is constitutionally irrelevant. The decision whether to criminalize threats made by the mentally ill during mental health hospitalization "is a policy question for Congress, not the courts." United States v. Auster, 517 F.3d 312, 320 n. 31 (5th Cir.), cert. denied, 555 U.S. 840, 129 S. Ct. 75, 172 L.Ed.2d 67 (2008). Moreover, "[t]he "execution of the Federal laws under our Constitution ... is confided primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations." United States v. Dake, 718 F.3d 1182, 1283 (10th Cir.) (quoting Hampton v. United States, 425 U.S. 484, 496 S.Ct. 1646), cert. denied, ___ U.S. ___, 134 S. Ct. 365, 187 L.Ed.2d 251 (2013). In other words, the court has limited authority to supervise the prosecution and punishment of government misconduct unless the defendant's "conduct did not violate Parker's independent constitutional rights. Accordingly, I recommend that Parker's motion to dismiss the indictment on the grounds of outrageous government misconduct be denied. | Noncustodial statements made by psychiatric patient later charged with making threat against President of the United States in Secret Service Agent in conference room of hospital psychiatric ward were voluntary, notwithstanding patient's contention that agent "took advantage of his mental condition, medication and hospitalization and questioned [him] about his hallucinations," despite fact he had voluntarily sought medical treatment to ensure he did not act on the hallucinations; careful review witnesses' credible hearing testimony demonstrated that although patient had taken medication during interview and suffered apparent hallucination during interview, he nevertheless appeared to understand and appropriately respond to agent's questions, and record did not reveal any coercive or overreaching tactics employed by agent with respect to characteristics of interrogation itself. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 871. | Are inmates made by the mentality ill during hospitalization a policy question for Congress? | "Threats, Stalking and Harassment - Memo 4 172 - C7 DH_64725.docx" | ROSS-003029629-ROSS-003029635 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 19679 | Montoon v. Grossman, 153 Ohio St. 301 | 241+(2) | In the case of Drake v. Rand Treasure Mining Co., C.C., 157 F. 476, the court said: "A note executed in one state, but made payable in another, is in so far as its validity is concerned, to be controlled and governed by the laws of the state where the note is made payable." | Where a note was executed and delivered in a state other than Ohio, but note by its terms was payable to a resident of Ohio at his place of residence, and obligee defaulted in payment, the cause of action arose in Ohio, and statute requiring action upon a promise in writing to be brought within four years after cause of action accrued was applicable rather than statute barring cause of action in Ohio at respect of lesser number of years. If laws of state where cause of action arose limits time for procurement of action to a lesser number of years than statutes of Ohio. Gen.Code, SS 11221, 11234. | Which law governs a note executed in one state but made payable in another state? | | ROSS-003282157-ROSS-003282158 | Condensed, SA, Sub | 0.53 | 0 | | 1 | 1 | |
| 19680 | Butler v. Pierce, 8 Mich. 324 | 83f+341 | The first question to determine is, whether this is a negotiable instrument under the law merchant. The statutes of our State leave notes and bills to be construed by the common law applicable to such paper, no material changes having been made. Comp. Stats. 275. It will not be disputed that a negotiable bill or note must be payable in money. The whole authorities, therefore upon this bill arise upon the word "currency." Considerable authority exists upon paper of this character. In the case of Farwell v. Kennett, 7 Mo. 595, a bill payable in "currency" was held not to be a bill of exchange. A note payable in "currency" was held negotiable. Grays vs. Donahoe, 4 Watts, 400. A note payable in "notes of the chartered banks of Pennsylvania," is not negotiable. McCormick vs. Trotter, 10 Serg. & Rawle, 94 | In case of note, place of contracting is where note is first delivered for value. | Should a negotiable bill or note be payable in money? | DD9668.docx | LEGALEASE-00160775-LEGALEASE-00160776 | Condensed, SA, Sub | 0.88 | 0 | | 1 | 1 | |
| 19681 | State of Ohio ex rel. Squire v. Eubank, 295 Mich. 230 | 8.30f+10 | Generally speaking, a contract is deemed to have been made in the State wherein the last necessary to make it a binding agreement took place. Goodrich, Conflict of Laws, (1st Ed.), p. 218; Beale, Conflict of Laws, Williston on Contracts, Rev.Ed., "B", American Law Institute, Restatement of the Law of Contracts, "A", Holders v. Aultman, Miller & Co., 169-63 N.W., 18 S.Ct. 266, 42 L.Ed. 669; Johnston v. Industrial Commission, 102 N. 74, 183 N.E. 731 (certain time intervals 244 N.W. 412, 126 N.E 24 659). In case of a promissory note, the place of contracting is where the note is first delivered for value. Perlove of contracting is where the note is first delivered for value. American Law Institute, Restatement of Conflict of Laws, "A", Restatement of Conflict of Laws, 1st Ed., p. 387, it stated: "Delivery, however, is not the only requisite to the creation of a contract on a negotiable instrument. Value must be given, and, until therefore, there has been a delivery for value, there instrument cannot be said to have had any inception. | In case of note, place of contracting is where note is first delivered for value. | What is the place of contracting for a promissory note? | Bills and Notes Memo 1379-JK_68281.docx | ROSS-003037320-ROSS-003037206 | SA, Sub | 0.91 | 1 | | | 1 | |
| 19682 | Johnson v. Henderson, 76 N.C. 227 | 8.30f+300 | It seems to be settled now, after many conflicting decisions, that a certificate of deposit is negotiable, when expressed in negotiable words, in fact words, and that the transfer of them is governed by the same rules which control other promissory notes, and that the liability of the endorsers is the same as upon the endorsement of any other promissory note. But in order to make a certificate of deposit negotiable, it must have the same certainty as to parties, time and mode of payment, as bills and notes; and the same causes which would make bills and notes negotiable, will make certificates of deposit negotiable. Story on Promissory Notes, 636-6. | A certificate of deposit, when expressed in negotiable words, is negotiable, and subject to the same rules that control other negotiable paper. | Are certificates of deposit negotiable? | Bills and Notes Memo 56-AM_61504.docx | ROSS-003281367-ROSS-003281368 | Condensed, SA, Sub | 0.78 | 0 | | 1 | 1 | |
| 19683 | United States v. Anderson, 509 F.2d | 63+16 | We will not give to 'each act' the same meaning as 'each defendant' as to impute the multiplication for the present statute. Congress has decided that bribery and kindred practices imperil the very nature of democratic government. It has legislated a vigorous attack on these practices. We only construe the statute as reasonably ascribe to Congress in that bribes may be punished separately for separate acts of bribery. We note, too, that courts construing other bribery laws have disparaged the "installment" theory of punishment in favor of the view that each bribe warrants a separate penalty. We are persuaded to the more general view | Bribe may be punished separately for separate acts of bribery. 18 U.S.C.A. § 201(a, b). | Can bribes be punished separately for separate acts? | Bribery - Memo 1111 - C - MN_65368.docx | ROSS-000279394-ROSS-000277895 | SA, Sub | 0.85 | 0 | | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 19684 | Fish King Enterprises v. Countrywide Ins. Co., 88 A.D.3d 639, 930 N.Y.S.2d 256 | 156v53.20(2) | Countrywide did not waive its defenses to the issue of defense costs by settling the underlying action for the policy limits. "Waiver is an intentional relinquishment of a known right and should not be lightly presumed" (Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966, 968, 525 N.Y.S.2d 793, 520 N.E.2d 512). There was no "clear manifestation of intent" on Countrywide's part to abandon its defenses to the issue of defense costs (id. at 968, 525 N.Y.S.2d 793, 520 N.E.2d 512). Countrywide did, however, waive its current standing defense by failing to either make a pre-answer motion to dismiss or raise it as an affirmative defense in its answer (see CPLR 3211[a][3], 3211[e]; Matter of Fossella v. Dinkins, 66 N.Y.2d 162, 167, 495 N.Y.S.2d 352, 485 N.E.2d 1017; Country Pointe at Dix Hills Home Owners Assn., Inc. v. Beechwood Org., 80 A.D.3d 643, 650, 915 N.Y.S.2d 117). | Waiver is an intentional relinquishment of a known right and should not be lightly presumed. | Should waiver not be presumed lightly? | Estoppel - Memo 284-C RK_66210.docx | ROSS-003294564-ROSS-003294565 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 19685 | Turner v. Howard, 91 Vt. 49 | 184v28 | I. There is a more or less prevalent notion, outside the profession of law, that an exchange of property, particularly horses, particularly horses, is governed by different legal principles than a sale of the same property. But the law recognizes no such distinction. A contract of exchange is governed by the same rule of law as a contract of sale. Russell v. Phelps, 73 Vt. 390, 50 Atl. 1101. Thus it was held in Potes v. McIntosH, 182, that a warranty of title implied in a contract of exchange the same as in a contract of sale. The rule as to liability for fraud in the case of exchange was applied to the exchange of real estate in Shanks v. Whitney, 66 Vt. 405, 29 Atl. 367, and to an exchange of horses in Rand v. Barrow, 83 Vt. 184, 85 Atl. 210. It may be conceded that both fraud and damage must be shown to make liability in such an action; but the defendant misconceives the correct rule of damages, claiming one rule for a sale and another for an exchange. | An exchange of personal property, including horses, is governed by the same rules of law as a contract of sale, and the parties are liable for fraud. | Is a contract or law of exchange the same as that of sale? | 033086.docx | LEGALEASE-00101789-LEGALEASE-00101790 | Condensed, SA, Sub | 0.86 | | 1 | 1 | 1 | |
| 19686 | Heredia v. Hughes, 141 W. Va. 182 | 200v40 | The public highways of this State belong to the State and are subject to the control of the State. Nutter v. State Road Commission, 119 W.Va. 312, 193 S.E. 549, 154 S.E. 233. Though the owner of a fee on a easement in land adjoining a public road purchased for public purposes may technically have title to the surface of the way not useful or necessary to the construction or maintenance of the road, he can not utilize same so as to interfere with the use by the public or with the control of the way by this State. 38 C.J.S., Highways, § 138, page 1162 et seq. Streets and highways, then, is, which is the nature and extent of the public easement in a highway? It there is any doubt as to the extent of the public easement in a highway itself, it is that the mode and manner of use are easily determined in connection with a variety of concrete cases developing and growing as civilization advances. In the most primitive state of society the necessities of a highway were merely a footpath over a slightly more advanced state; it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals, constituting, respectively, the foot-, the pack-, and the saddle-way of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until today our urban highways are devoted to a variety of uses not dreamed in former times, and never dreamed of by the owners of the soil when the public easement was acquired. | Do public highways belong to the State? | Highways - Memo 392 RK_66322.docx | ROSS-003312764-ROSS-003312765 | SA, Sub | 0.92 | 0 | 1 | 1 | 1 | |
| 19687 | Sells v. Elrris, 133 Wash. 2d 160 | 313v79 | Wolvert professed an inability to define "resident" with precision, basing its indulgences on McGrath, where the issue before the Court was not the meaning of the term "resident" within the meaning of RCWA 4.28.080(15), but whether a person could have more than one place of residence under the venue statute for the purpose of laying a petition for a road vacation. The Court concluded: "A man can have only one place of residence for voting purposes and certain other purposes, but there is no reason why, within the meaning of the venue statute, he may not have more than one place of residence." McGrath, 204 Wash. at 162, 77 P.2d 609. By contrast, the issue before us here was whether a person has more than one place of residence, but rather who is a resident for purposes of the substituted service statute, a wholly different statute from the road vacation statute the Wolvert Court considered. | Service of process upon person who was in defendant's home to temporarily heal defendant's dog and take in his mail during defendant's vacation was not sufficient under substituted service of process statute; person temporarily within defendant's home was not "resident" for purposes of statute. West's RCWA 4.28.080(15). | Can a person have more than one place of residence for the purpose of a signing a petition for a road vacation? | Highways - Memo 447 RK_66347.docx | ROSS-003313170-ROSS-003313171 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 19688 | Pittsburgh, C., C. & St. L.R. Co. v. Kelley, 28 Ind. App. 594 | 200=182 | It is next contended for the appellant that the highway was not the property of the township or of the trustee; that, while the statute gives the control of it and the duty of repairing it to the township (or townships through which it passes), there is no such ownership as will authorize a civil action for its injury. Counsel call attention to statutes providing for criminal prosecutions for injuries to highways, and insist that, if any civil remedy had been intended, it would have been provided by statute. This is by no means a logical inference, for a statutory inference is necessary for the creation of a criminal liability, but, if a sufficient remedy exists at common law, no statute is needed. The township is under a continuing obligation to keep the highway in repair. Where a road runs north and south on a township line, the north half is assigned for construction and repairs to the township on the east side… | The amount of damages is the amount which has been or will be expended necessarily in making the repairs. | How is the amount of damages estimated for making repairs? | Highways - Memo 654 RK_0656.docx | ROSS-000278654-ROSS-000278655 | SA_Sub | 0.95 | 0 | | | 1 | |
| 19689 | Cowart v. Perrine, 38 N.J. Eq. 454 | 241=36(1) | (opinion text) | In equity the statute of limitations is a bar to an account between partners. | Is statute of limitation a bar to a bill filed for an account of partnership transactions? | 022644.docx | LEGALEASE-00160805-LEGALEASE-00160806 | Condensed_SA, Sub D_B | | | | | | 1 |
| 19690 | Reed v. Noble, 273 F.Supp. 954 | 289=937 | Although death dissolves the partnership, the fiduciary relation continues. The surviving partner retains his fiduciary duty to the deceased partner's estate… | Death dissolves a partnership but the fiduciary relationship continues, and the surviving partner retains his fiduciary duty to the deceased partner's estate. | Does a fiduciary relationship exist between partners after dissolution of partnership? | 023070.docx | LEGALEASE-00161313-LEGALEASE-00161314 | SA_Sub | 0.71 | 0 | | | 1 | |
| 19691 | In re El Paso Pipeline Partners Derivative Litigation, 152 A.3d 67 | 101=B_667 | "Limited partnership agreements are a type of contract." Norton v. "Cox Transp." P'rs, L.P. at 64 A.3d 1105 | Limited partnership agreements are a type of contract. 6 Del. Code §17-1101(12). | Are limited partnership agreements a type of contract? | 022877.docx | LEGALEASE-00161454-LEGALEASE-00161455 | SA_Sub | 0.33 | 0 | | | 1 | |
| 19692 | Mendoza v. Tampa Enterprises, 238 P.3d 903 | 308=474_241 | When a scam is dismissed for want of prosecution, "[t]he court shall reinstate the scam upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." Smith, 513 S.W.2d at 840 (quoting Tex. R. Civ. P. 165(a))… | Conscious indifference, for purposes of rule mandating reinstatement of a case dismissed for want of prosecution if the failure of a party or his attorney to appear "was not intentional or the result of conscious indifference but was due to an accident or mistake," means more than mere negligence. Tex. R. Civ. P. 165(a)(3). | Does conscious indifference mean more than mere negligence? | 037093.docx | LEGALEASE-00161341-LEGALEASE-00161343 | Condensed_SA, Sub D_7 | 0.7 | 0 | | | | |
| 19693 | Mendoza v. Tampa Enterprises, 238 P.3d 903 | 307=464 | Our cases have recognized that pleadings should be generally liberally stated, plain, and should promote the agenda of justice. See Peat "[ORE](31) WARN L.R.T.] an agreement at pleading shall be freely given, continue direct." J. Morrison v. Wyrsch, 93 N.M. 556, 563 P.2d 256, 258 (1979) ("All pleadings should be liberally construed so as to do substantial justice.")… | Amendments to pleadings are generally favored over dismissal. | Are amendments to pleadings generally favored over dismissal? | Pretrial Procedure - Memo 11360 - C - BP_60381.docx | ROSS-000319533-ROSS-000319534 | Condensed_SA | 0.93 | 0 | | | 1 | |
| 19694 | Nathan v. State of Louisiana, 49 U.S. 73 | 371=2003 | The taxing power of a state is one of its attributes of sovereignty; and where there has been no compact with the federal government, or cession of jurisdiction for the purposes specified in the Constitution, this reaches all the property and business within the state not properly denominated the means of carrying on the operations of government. The only restraint is found in the responsibility of the members of the legislature to their constituents. | The taxing power of a state is one of its attributes of sovereignty. | Is the taxing power of a state one of its attributes of sovereignty? | 044297.docx | LEGALEASE-00161691-LEGALEASE-00161692 | SA_Sub | 0.39 | 0 | | | 1 | |

3467

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 19695 | State v. Hentze, 389 Kan. 839 | 377J C54 | We agree with the State and the Court of Appeals panel that the phrase "use of force" to ... ordinary meaning and that means actual force. "Use of force" does not mean "threat of force" or "display of force" or "presence of force," or any interpretation which similarly dilute the actual use of force, i.e., physical contact. Even if the statutory language were somehow ambiguous and we looked to canons of construction to assist in determining the meaning of "use of force," we note that the legislature has been clear in other contexts to distinguish between the actual use of force and diluted variations. | A jury instruction on self-defense is not warranted unless the defendant has used actual physical force; coercing State v. Kinzie, 2006 WL 2265095 West's K.S.A. 21-3211. | Does use of force mean actual force or physical contact? | 040931.docx | LEGALEASE 00161078 LEGALEASE 00161079 | SA, Sub | 0.74 | 0 | | 1 | 1 | |
| 19696 | Dingman v. Dep't of Labor & Indus., 157 Wash. 336 | 413+135 | "So it has been consistently held that, although an occupation may be in fact hazardous, the legislature in making its classification, or subsequently by the Industrial Insurance department, there can be no recovery from the compensation fund for injuries received while engaged in such work." Parker v. Pantages Theater Co., 143 Wash. 176, 254 P. 1083, 1085. | Injuries received while engaged in work not classified as extrahazardous by Legislature or Department of Labor and Industries are not compensated [Workmen's Compensation Act]. | "To receive compensation, what classification is needed?" | 048705.docx | LEGALEASE 00161325 LEGALEASE 00161326 | Condensed, SA, SA 0.58 | | 0 | 1 | | 1 | 1 |
| 19697 | Cates Const. v. Talbot Partners, 21 Cal. 4th 28 | 217+1301 | With that guiding principle in mind, we answer the question in the negative. A construction performance bond is not an insurance policy. Nor is it a contract otherwise marked by the elements of adhesion, public interest or fiduciary responsibility, such that an extracontractual remedy is warranted in the interest of social policy. Obligors have ample power to protect their interests through negotiation and surveillance, for the most part, are in need of no special protection of the courts afforded to stanzory and administrative sanctions and penalties, including license suspension and revocation. | Construction performance bond is not an insurance policy. West's Ann.Cal.Civ.Code 52787 et seq.; West's Ann.Cal.Ins.Code 55:22, 2.3, 1005), 1015(s). | Is a construction performance bond an insurance policy? | 039503.docx | LEGALEASE 00162234 LEGALEASE 00162235 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 19698 | State v. Schares, 548 N.W.2d 894 | 217+1301 | Likewise, we believe the Restatement is not an insurer. "A contract is one of insurance if one of the following tests is met, i.e., a contract is a contract of insurance if it meets the following test. One party, for consideration, assumes the risk of another; the party who assumes the risk agrees to pay a certain sum of money or a specified benefit; and the payment is made to the other party in the event of loss." Iowa Insurance v. Insurance, 437 N.W.2d at 915. Here, the various organizations and entities of the Archdiocese pays an amount into a general fund. If any of the entities suffers a loss, it may seek reimbursement from this general fund. While this relationship has some of the indicia of insurance, "that all contracts concerning risk transference are not insurance." "Id. at 917.Quoting R.E. Reiners, Insurance Law 8 (1973). There is a type of contract between the Archdiocese and its various entities but the contract does not contract with "another," "We adopt the view that self-insurance, or internal risk distribution, is not insurance" for state interrelation purposes. Iowa Contractors, 437 N.W.2d at 917 (citing Kenton). | Not all contracts concerning risk transference are insurance. | Are all contracts concerning risk transference an insurance? | 039642.docx | LEGALEASE 00162949 LEGALEASE 00162950 | Condensed, SA | 0.94 | 0 | 1 | | 1 | |
| 19699 | Waring v. Art. City Special Servs., 363 N.J. Super. 363 | 217+1301 | Furthermore, this record does not support a conclusion that petitioner is receiving a double recovery. What is clear, however, is that petitioner collected benefits as a result of an insurance policy with Prudential for which she paid a premium. The essential nature of insurance is that it is a gamble, by which the insurer for the payment of a premium. It is a gamble. Pereira, supra, 189 N.J. at 617, 778 A.2d 629. | The essential nature of insurance is that risk is shifted to the insurer for the payment of a premium; it is a gamble. | Is insurance a gamble? | Insurance - Memo 94 SNI_65946.docx | ROSS 000294164 ROSS 000294141 | Condensed, SA | 0.71 | 0 | 1 | | 1 | |
| 19700 | San Diego Hous. Comm'n v. Indus. Indem.Co., 95 Cal. App. 4th 669 | 217+1301 | In order to decide Housing's entitlement to the SIP award of costs and interest, we are required to take into account several doctrines in interpreting these policy provisions. Insurance is a means of distributing risks of loss. The insurance policy is a contract between an insurer and an insured (or, the insurer making payments) to protect insured from the risk of a possible (future) loss. [Citation.] [T] to unfed their meaning, the provisions of a policy must be considered in the context [Citations.] Risks v. Superior Court (1997) 16 Cal.4th 35, 44 P.6, 55 Cal.Rptr.2d 366, 939 P.2d 766.) | "Insurance" is a means of distributing risks of loss. | Is insurance a means of distributing risks of loss? | Insurance - Memo 96 SNI_65952.docx | ROSS 000281341 ROSS 000281342 | Condensed, SA | 0.91 | 0 | 1 | | 1 | |
| 19701 | In re Richmond, 430 B.R. 846 | 289+701 | In certain circumstances, a court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party. K.C. Properties of N.W. Arkansas, Inc. v. Lowell Investment Partners, LLC, 373 Ark. 14, 22, 280 S.W.3d 1, 11 (2008) (citations omitted). When a corporate form is challenged, "the real basis of liability is actual control and manipulation of the other, whether the control and manipulation be exercised by virtue of stock ownership or otherwise." Constitution Development Corp. v. Dowden (In re B.J. McAdams, Inc.), 66 F.3d 931, 937 (8th Cir. 1995) (quoting Henderson v. Rounds & Porter Lumber Co., 99 F.Supp. 376 (W.D.Ark.1951)). The Court of Appeals further stated that under the alter ego doctrine, the legal fiction of the separate corporate entity may be reached in the case of a corporation that (1) is controlled by another to the extent that it has independent existence in form only, and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud. Stone v. Stone, 407 Ark. 69 (2009), Lakeland Girl Scout Council, Inc. v. Haney Ford Roaring Mgmt., Inc., 519 F.2d 634, 638 (8th Cir. 1975). The alter ego doctrine may apply in the context of partnerships because partners are liable for the debts of the general partnership. "The same doctrines that deny the corporate entity and hold its members responsible for acts committed in its name and the individual that the corporation ceases to be separate and when the corporation hold that the corporation ceases to be separate and when the holding gives the corporation a convenient instrument to defraud." Miller, Are There Limits on Limited Liability? Owner Liability Protection and Piercing the Veil of Texas Business Entities, 43 Tex. J. Bus. L. 405, 406 (2009). In general, most cases involving piercing of a corporate veil are premised on the alter ego theory. A | Partners are liable for the debts of the general partnership. | Are all partners liable for the debts of the general partnership? | 023680.docx | LEGALEASE 00162164 LEGALEASE 00162165 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |

Appendix D

3468

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 17102 | Estate of Dormaier et vs. Dornaire v. Columbia Basin Anesthesia, P.L.L.C., 177 Wash. App. 828 | 302+48 | A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a). | While a complaint may contain inexpert pleading, it may not contain insufficient pleading. CR 8. | Can a complaint contain inexpert pleading? | Pleading - Memo 020 - RMM_Grid.20.docx | ROS5/0182319/ROS5-00318231 | SA, Sub | 0.92 | 0 | | | 1 | 1 |
| 17103 | Estate of Dormaier et vs. Dornaire v. Columbia Basin Anesthesia, P.L.L.C., 177 Wash. App. 828 | 302+48 | A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a). | While a complaint may contain inexpert pleading, it may not contain insufficient pleading. CR 8. | Can a complaint contain insufficient pleading? | 023909.docx | LEGALEASE-00162104 LEGALEASE-00162105 | SA, Sub | 0.92 | | | 1 | | 1 |
| 17104 | Shaffer v. Carter, 252 U.S. 37 | 371+2003 | "The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state." | Governmental jurisdiction in matters of taxation depends upon the power of taxation of a state limited its subjects within its jurisdiction? | | 041089.docx | LEGALEASE-00162114 LEGALEASE-00162115 | Condensed, SA, Sub | 0.52 | | 1 | | 1 | 1 |
| 17105 | Nat'l Bank of Detroit v. Dep't of Revenue, 334 Mich. 132 | 371+1662 | "The distinctive tax is a franchise tax or fee imposed for the privilege of establishing, opening, maintaining, or operating two or more stores. The tax..." | Is a "sales tax" a tax imposed upon the privilege of selling? | 064607.docx | LEGALEASE-00162512 LEGALEASE-00162513 | Condensed, SA, Sub | 0.21 | | 1 | | 1 | 1 |
| 17106 | Jones v. Ritter, 60 N.H. 452 | 381+422 | A promissory note is presumed to be payable when dated, if no other date is given... | When is a promissory note presumed to be payable? | Bills and Notes - Memo 1171 - B6_4323.docx | ROS5-00359061 | Condensed, SA, Sub | 0.14 | 0 | 1 | | 1 | 1 |
| 17107 | Janeczo v. Volunteers of Am. Active, of Florida, 854 So. 2d 280 | 307H+59(1) | When Gunn filed to answer the complaint, Jones' proper course of action would have been to move for a default judgment against Gunn (or to dismiss Gunn from the suit. Instead, Jones did nothing and Gunn continued to be a party to the litigation up to and including the time of its dismissal. | Defendant's failure to file an answer or other response pleading was sufficient to prevent case from being at issue for purposes of dismissal for lack of prosecution. West's F.S.A. RCP Rule 1.420(e). | 041082.docx | LEGALEASE-00161740 LEGALEASE-00161741 | Condensed, SA, Sub 0.67 | | | 1 | | 1 | 1 |
| 17108 | Sechrist v. Kurtz Bros., 147 Pa. Super 214 | 413+134 | Section 103, art. 1, of the Act of June 2, 1915, P.L. 736, as re-enacted and amended by the Act of June 21, 1939, P.L. 520, cited as "The Pennsylvania Workmen's Compensation Act," 77 P.S. § 21, declares that the term "employee" as used in this act is to be synonymous with "servant," and by section 104, as re-enacted and amended, 77 P.S. § 22, the term "employer" as used in Section 103, art. 2, 203, 77 P.S. § 52, and article 1, § 302 (b), 77 P.S. § 462, shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the accident occurs. | Where injuries to manufacturer employed electrician from time to time to install and repair electric equipment arose out of and in the course of his employment, such electrician was not an independent contractor but an "employee" within the meaning of "employee" as used in the act so as to bar common law action for death caused by his electrocution or his assistant's action in showing that he was not an employee, and bore to the one seeking to charge him with the relation of servant or employee within 21, 22, 25, 52, 462. | Under the Workmens Compensation Act, are the terms employer and employee synonymous with master and servant? | 041074.docx | LEGALEASE-00162480 LEGALEASE-00162481 | Condensed, SA, Sub | 0.42 | | 1 | | 1 | 1 |

Appendix D

3469

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19709 | DeLisio v. Shinseki, 25 Vet. App. 45 | 34+133(2) | Moreover, even if a claimant attempts to identify his diagnosis in his claim for benefits, his claim is not limited necessarily to benefits for that diagnosis. See Clemons, 23 Vet.App. at 5 ("[A] self-represented layperson ... ha[s] neither the legal or medical knowledge to narrow the universe of his claim.... [He does] not file a claim to receive benefits only for a particular diagnosis, but for the affliction his ... condition, whatever that is, causes him."). Also, even if a claimant believes that his condition is related to service in a particular way, his claim is not limited solely to one theory of service connection. See Kent v. Nicholson, 20 Vet.App. 1, 16 (2006) (a claim "includes all theories under which service connection may be granted"). | Upon the filing of a claim for Department of Veterans Affairs (VA) disability benefits, the Secretary of Veterans Affairs generally must investigate the reasonably apparent and potential causes of the veteran's condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filing. | "If a claimant attempts to identify a diagnosis in his claim for Department of Veterans Affairs (VA) disability benefits, will the claim be limited to benefits for that diagnosis?" | Armed Services - Memo 351 - RK_66871.docx | ROSS-003280490-ROSS-003280491 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 19710 | Williams v. Osbon, 75 Ind. 280 | 83E+481 | The "finding is," that, prior to the maturity of said notes, "said Williams assigned said notes, in writing, to the defendant Joseph Neldon." This is not a finding that he "endorsed" the notes. It was held in Keller v. Williams, 49 Ind. 504, that an averment in the complaint, that the note was ""assigned in writing" was not equivalent to an averment that it was endorsed; and we think a finding that the appellant "assigned the notes in writing" is not a finding that he "endorsed" them. The words are not synonymous. The word ""endorsement" has a known legal signification, and implies a transfer by a writing upon the instrument. Cooper v. Drouillard, 5 Blackf. 152; Kern v. Hazlerigg, 11 Ind. 443. The word "assigned" has no such signification, but implies that the assignment was made upon a separate instrument. In Keller v. Williams, supra, WORDEN, J., says: "The averment is, that the note was assigned in writing. It may have been assigned in some separate instrument, and not upon the note; and the inference is that the assignment was in a separate instrument, as, had it been upon the note, the term endorsed would have been more appropriately used." | The term "assign" implies that the assignment was made on a separate instrument. | Does the word assigned imply that the assignment was made upon separate instrument? | Bills and Notes - Memo 1444 - RK_66502.docx | ROSS-003282715 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 19711 | Stagg v. Linnenfelser, 59 Mo. 336 | 83E+376 | The notes ceased to be negotiable after the death of Frederick Linnenfelser, the payee, and at best they were only assignable instruments and not negotiable notes, within the meaning of the statute in regard to bills of exchange and promissory notes. (Weaver vs. Beard, 21 Mo., 155; Ivory vs. Catlin, 30 Mo., 142.) And appellant not having assigned to respondent directly, he cannot maintain this action directly against her. (Bromage vs. Lloyd, 1 Exch., 32; Gough vs. Findon, 7 Exch., 48; Sto. Prom. Notes, "" 120, 123.) | Although, under Wag. St. p. 216, S 15, promissory notes expressed to be for value received shall "be negotiable in like manner as inland bills of exchange," under the provisions of Wag. St. p. 89, S 40, notes payable to a decedent can be assigned after his death only by a duly qualified executor or administrator, and then only to discharge the claims of creditors, legatees, or distributees equal to the amount of the notes. | Is a note negotiable after the death of the payee? | Bills and Notes - Memo 1448 - RK_66506.docx | ROSS-003293093 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 19712 | Glennan v. Rochester Tr. & Safe Deposit Co., 209 N.Y. 12 | 172H+593 | That the death of the principal revokes the authority of the agent to collect the check in those jurisdictions where the check is considered a mere order must also be conceded. Fordred v. Seamen's Bank, supra; Atty. Genl. v. Continental Life Ins. Co ., supra; Long v. Thayer, 150 U. S. 520, 14 Sup. Ct. 189, 37 L. Ed. 1167. | The death of the drawer of a check revokes the authority of the payee to collect the check. | Does the death of the principal revokes the authority of its agent to collect a check? | Bills and Notes - Memo 1456 - RK_66512.docx | ROSS-003308216-ROSS-003308217 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 19713 | Underwood v. Harkins, 2011 WL 2457680 | 92+1474(3) | Thus, the formal job description for the deputy clerks "bear[s] little resemblance" to their actual job. Garcetti, 547 U.S. at 425, 126 S.Ct. at 1962. The reality of this case is that the powers and duties of the deputy clerks depart from those set forth in O.C.G.A. " 15"6"59(b). Accord Calvert v. Hicks, 510 F.Supp.2d 1164, 1173 (N.D.Ga.2007) (finding, based on the record evidence, that "the roles of Clerk and deputy clerk" in Fulton County "are not the same," and that Georgia law only "nominally grants deputy clerks" the same authority as the clerk). At this stage of the litigation, Ms. Underwood has carried her burden of showing that, in her position as deputy clerk, she was a ministerial-level employee responsible for performing "limited and well-defined tasks." Id. | Deputy superior court clerk for Georgia county was confidential subordinate of elected superior court clerk, so that clerk could demand deputy's loyalty, and thus, First Amendment did not prohibit clerk from dismissing deputy for running against clerk in political party's primary election for clerk's office; under Georgia law, deputy had powers and duties which were identical to those of clerk, even if deputy's everyday duties under clerk's predecessor had not extended to outer limits authorized by Georgia law. U.S.C.A. Const.Amend. 1; West's Ga.Code Ann. SS 15-6-59(b), 15-6-61(a). | Are the roles of a clerk and a deputy clerk the same? | 013566.docx | LEGALEASE-00164122-LEGALEASE-00164123 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 19714 | Matter of Int'l Gold Bullion Exch., 53 B.R. 660 | 51+2571 | 11 USC Section 101(5): "Commodity broker" means futures commission merchant, foreign futures commission merchant, clearing organization, leverage transaction merchant or commodity options dealer, as defined in Section 761 of this Title with respect to which there is a customer, as defined in Section 761(9) of this Title. | Debtor who sold precious metals to buyer was not a "stockbroker" or a "commodities broker," and sale of precious metals did not involve "securities" within meaning of section 546(e), which provides that trustee may not avoid transfer that is margin payment made by commodity broker or stockbroker, where buyers considered debtor to be a precious metals dealer, not a broker or commodities clearing house dealing in investment securities or commodities contracts. Bankr.Code, 11 U.S.C.A. SS 101(5), 546(e), 547, 741(5, 8), 761(9)(E), (15); Securities Exchange Act of 1934, S 3(a)(23)(A, B), 15 U.S.C.A. S 78 c(a)(23)(A, B). | What is the definition of a commodity broker? | Commodity Futures Trading Regulation - Memo 9 - C - JL_67118.docx | ROSS-003281106-ROSS-003281107 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 19715 | United States v. Figueroa, 683 F.3d 69 | 135H+95.1 | We now turn to Figueroa's Double Jeopardy claim. "The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). If a mistrial is properly declared it does not prevent reprosecution. See Richardson v. United States, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("[W]e reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected."). "The power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." " United States v. Rivera, 384 F.3d 49, 55 (3d Cir.2004) (citing United States v. Perez, 22 U.S. 579, 580, 9 Wheat. 579, 6 L.Ed. 165 (1824)). "Only where the mistrial is required by "manifest necessity" will reprosecution be permitted under the Double Jeopardy Clause." Id. | If a mistrial is properly declared it does not prevent reprosecution. U.S.C.A. Const.Amend. 5. | "If a mistrial is properly declared, does it not prevent reprosecution?" | Double Jeopardy - Memo 365 - C - SN_66785.docx | ROSS-003280217-ROSS-003280218 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 19716 | Vizcaino Roberts v. Gaylord's, 744 N.W.2d 359 | 156×53.10(3) | Knowledge and intent are essential elements of waiver, but the requisite knowledge may be actual or constructive and the intent to waive may be inferred from conduct. | Waiver: "It essentially unilateral and results as a legal consequence from some act or conduct of the party against whom it operates, without any act of the party in whose favor it is made being necessary to complete it." Anderson, 250 Minn. at 183, 84 N.W.2d at 480. Knowledge and intent are essential elements of waiver. Stephenson v. Martin, 259 N.W.2d 467, 470 [Minn.1977]. But "[t]he requisite knowledge may be actual or constructive and the intent to waive may be inferred from conduct." Alstores v. Oliver Corp., 254 Minn. 197, 203, 94 N.W.2d 256, 358 (1959); see also Stephenson, 259 N.W.2d at 470. When a party acts in a way that is inconsistent with the terms of a contract, a fact finder can reasonably conclude that a party waived those contractual provisions. See Stephenson, 259 N.W.2d at 471 (holding that Workers' Compensation Court of Appeals properly concluded that insurer and employer had waived right to subrogation by entering into a settlement of disability claims without reserving right to sum subrogation); Busch v. North Am. Life & Cas. Co., 251 Minn. 130, 141, 87 N.W.2d 93, 45?40 (1957) (upholding jury's verdict that insurer had waived right to written notice of claim within 20 days after an accident based on insurer's conduct of making disability payment and accepting premium payment after it was aware of the accident. | Are knowledge and intent essential elements of waiver? | 018200.docx | LEGALEASE-00162927 LEGALEASE-00162928 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |
| 19717 | City of Niles v. Michigan Gas & Elec. Co., 273 Mich. 255 | 268×71 | Constitutional provision that municipality could not grant irrevocable public utility franchise meant by the vote of people did not vest power to grant franchises in electors, but transferred to electors power theretofore exercised by the common council, so that it electors could and did grant irrevocable franchise without popular vote. Section 25 withdrew from the legislature and council the power to grant irrevocable franchises and invested it in the people, the legislature still may authorize the common council to grant a franchise (such franchise will be valid and becomes a part of the municipality) when approved by popular vote. The people, therefore, add nothing to it except the element of irrevocability. The constitutional convention so intended and understood the effect of section 25. Debates, p. 1315 et seq.; Address, p. 1432. Consequently, popular vote can in no statutory authorize such franchise. | Can franchise be revoked at will? | 019603.docx | LEGALEASE-00163354 LEGALEASE-00163355 | Condensed, SA, Sub | 0.57 | | 1 | 1 | 1 | |
| 19718 | United States v. Marrero, 743 F.3d 389 | 203×348 | In Pennsylvania, third-degree murder is an unlawful killing with malice but without specific intent to kill; malice, in turn, involves hardness of heart, cruelty, and recklessness of consequences, and exists where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. 18 Pa.C.S.A.S 2502(a). | In Pennsylvania, third-degree murder is an unlawful killing with malice but without specific intent to kill; malice, in turn, involves hardness of heart, cruelty, and recklessness of consequences, and exists where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. 18 Pa.C.S.A.S 2502(a). "where the defendant consciously disregarded an unjustifiable and extremely high risk that his actions might cause serious bodily injury." Id. Malice exists when the defendant "display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result." King, 793 A.2d at 148. This mens rea requirement for third-degree murder mirrors the "reckless and depraved indifference to the serious danger posed to human life" in the generic definition we have identified. Thus, third-degree murder under Pennsylvania law is equivalent to the enumerated offense of "murder" and therefore qualifies as a crime of violence under the Guidelines. | Does malice include cruelty? | Homicide_Memo 192 RK_66503.docx | ROSS-000293953+ROSS-000293956 | SA, Sub | 0.73 | | | 1 | 1 | |
| 19719 | Granite Lion Sols. v. King, 334 Ga. App. 305 | 302×43 | A caption is generally not considered a part of the petition. | First, Granite points out that the caption of King's complaint misstates Granite's name as "Granite Line Solutions, Inc." but "the caption is generally not considered a part of the petition in Georgia." Anderson v. Brunt, 244 Ga.App. 730, 730 [2], 546 S.E.2d 513 [2001] (citation and punctuation omitted) (Courts refrain from attaching too much importance to the merely formal part of a complaint and continue pleadings so as to do substantial justice). Substance, rather than nomenclature, controls. Thus, the character in which a party is sued may be determined from the substance of the allegations rather than the petition. Id. (citing at 730[2], 546 S.E.2d 513 [citation and punctuation omitted]. See also Monroe v. Fickle, 193 Ga.App. 130, 607 S.E.2d 890 [2004]; Southcorn Group v. Petit, 237 Ga.App. 46, 48°49[1], 513 S.E.2d 241 [2002]. | Is the caption generally not considered a part of the petition? | 020931.docx | LEGALEASE-00163344 LEGALEASE-00163345 | SA, Sub | 0.93 | | | 1 | 1 | |
| 19720 | L Henry Enterprises, Ltd. v. Verifone, 273 Ga. App. 195 | 302×43 | The caption is generally not considered a part of the petition; a plaintiff may make the caption a part of the petition by making an allegation to that effect in the body of the petition. | The trial court noted that paragraph 1 of the complaint states: "Defendant, L. Henry Enterprises, Inc. is a corporation subject to the jurisdiction of this Court." The court cited "L Henry" as an admission by the plaintiff that L Henry is the entity. "L. Henry Enterprises, Ltd." has named itself the entity in the caption of its complaint. The caption, however, is generally not considered a part of the petition, but L. Henry may make the caption a part of the petition by making an allegation to that effect in the body of the petition. See Anderson, supra, 244 Ga.App. at 730[2], 546 S.E.2d 513 [holding that the case is not controlled by, because "the caption is generally not considered a part of the petition in Georgia." L [Citations and footnote omitted.] Anderson v. Brunt, 244 Ga.App. 730, 730 [2], 546 S.E.2d 513 [2001]. It is well established that [a]courts refrain from attaching too much importance to the merely formal part of a complaint and construe pleadings so as to do substantial justice. Substance, rather than nomenclature, controls. Thus, the character in which a party is sued may be determined from the substance of the allegations of the petition, considered in its entirety. | Is the caption generally considered a part of the petition? | Pleading - Memo 636 RMM.docx | LEGALEASE-00055150 LEGALEASE-00055151 | Condensed, SA | | | | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19721 | Kurak v. Control Data Corp., 410 N.W.2d 34 | 307A+697 | Kurak's attorney asserts that his office instituted a procedure for identifying cases affected by the district court's April 1985 order, but "simply missed this case." While Kurak's attorney should have identified Kurak's case and should have taken the appropriate steps to insure the case was not dismissed, we do not believe Kurak should be penalized for his attorney's mistakes. A litigant is not to be penalized for the neglect or mistakes of his lawyer. Courts will relieve parties from the consequences of the neglect or mistakes of their attorney, when it can be done without substantial prejudice to their adversaries. | A litigant is not to be penalized for neglect or mistakes of his lawyer; parties will be relieved of consequences of neglect or mistakes of their attorneys, when it can be done without substantial prejudice to their adversaries. | Is a litigant not to be penalized for neglect or mistakes of his lawyer? | 040760.docx | LEGALEASE-00163395-LEGALEASE-00163396 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 19722 | Jack v. Wood, 258 Cal. App. 2d 639 | 302+34(5) | In this case the affidavits filed by both parties are indefinite at best and do not set forth the facts With particularity which entitled defendant to a judgment as the language of the section requires. The word "particularity" in a pleading or affidavit means the detailed statement of particulars. (Black's Law Dictionary; Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809, 810.) The word "particulars' has been held to be synonymous with "details." (See 26A C.J.S., p. 874, note 94.) "In applying this requirement the test is generally whether the affidavit states evidentiary facts on the one hand, or ultimate facts or conclusions on the other. The courts have been more liberal with the responding party in this regard." (C.E.B. Practice Handbook No. 8, California Civil Procedure Before Trial, p. 865.) The affidavits should contain evidentiary facts stated precisely, specifically and definitely. | The word "particularity" in a pleading or affidavit means the detailed statement of particulars. West's Ann.Code Civ.Proc. S 437c. | What does the word particularity in an affidavit denote? | Affidavits - Memo 75 - _1M7BrYgfzpCDgy0zFz_c3tdmrSW9qrl2r.docx | ROSS-000000246-ROSS-000000247 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 19723 | Auto Parts Mfg. Mississippi Inc. v. King Const. of Houston, 74 F. Supp. 3d 744 | 25T+141 | "Arbitration agreements apply to nonsignatories only in rare circumstances." Bridas, 345 F.3d at 358. But "[w]hen the [arbitration] agreement's terms do not expressly state whether a signatory may be compelled to arbitrate with a nonsignatory," as here, the Court "draw[s] on various theories of contract and agency law, including equitable estoppel, to determine a nonsignatory's rights and duties under an arbitration clause." See Sherer, 548 F.3d at 381"82; see also Qualcomm, Inc. v. Am. Wireless License Grp., LLC, 980 So.2d 261, 269 (Miss.2007). Accord Hellenic Inv. Fund, Inc. v. Det Norske Veritas, 464 F.3d 514, 517 (5th Cir.2006); Bridas, 345 F.3d at 356. "Where "some written agreement to arbitrate" exists, federal courts have recognized "[s]ix theories for binding a nonsignatory to an arbitration agreement ...: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." " The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd., 523 F.3d 528, 536"37 (5th Cir.2008) (quoting Hellenic Inv. Fund, Inc., 464 F.3d at 517 (in turn citing Bridas, 345 F.3d at 355"56)). | Arbitration agreements apply to nonsignatories only in rare circumstances. | Do arbitration agreements apply to nonsignatories? | Alternative Dispute Resolution - Memo 860 - RK_67465.docx | ROSS-003280128-ROSS-003280129 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19724 | Van Ness v. Hyatt, 38 U.S. 294 | 108H+27 | The principle of the common law undoubtedly is, that no property but that in which the debtor has a legal title is liable to be taken in execution; and, accordingly, it is well settled in the English Courts, that an equitable interest is not liable to execution. In the United States, different views have been taken of this question in the Courts of the several states. Except, as against the mortgagee, the mortgagor is regarded as the real owner of the property mortgaged; and this rule has very extensively prevailed in the states of the United States, that an equity of redemption is vendible as real property on an execution; and that it is also chargeable with the dower of the wife of the mortgagor. | At common law, an equitable interest, such as an equity of redemption, is not liable to execution. | Are equitable interests liable to execution? | 014095.docx | LEGALEASE-00165091-LEGALEASE-00165092 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 19725 | Lotz v. Atamaniuk, 172 W. Va. 116 | 135+2 | Domicile and residence are not synonymous. Shaw v. Shaw, 155 W.Va. 712, 187 S.E.2d 124 (1972). A man may have several residences, but only one domicile. Nonetheless, courts frequently interchange the words, as do legislatures. See Patterson v. Patterson, 167 W.Va. 1, 277 S.E.2d 709, 717 (1981). Cases that we quote in which the word "residence" is used clearly mean what we mean by "domicile". | "Domicile" and "residence" are not synonymous; one may have several residences, but only one domicile. | "Can one have several residences, but only one domicile?" | 014594.docx | LEGALEASE-00164252-LEGALEASE-00164253 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 19726 | People ex rel. Sloane v. Lawes, 255 N.Y. 112 | 284+21 | The appellant also applied for a writ of habeas corpus and for a writ of peremptory mandamus to send the matter back to the County Court either for discharge or an amendment of the sentence. Both of these applications were denied, and the orders are before us on appeal. It has been suggested that the only relief for the defendant is an application for executive clemency, which of course is applied for as a matter of grace, never as a matter of right. Roberts v. State, 160 N. Y. 217, 54 N. E. 678. Surely, the law has not become so entangled in its own machinery that it is helpless and unable to extricate itself. There must be some relief for a prisoner who, according to the records as they now exist, is entitled as a matter of right to his liberty. While the county judge acted upon the information which he had before him at the time of sentence, yet all recognize now in the light of subsequent events that the sentence imposed should have been for a misdemeanor and not for a felony. The judgment should be corrected. We are dealing here with court records; the facts cannot be disputed or misunderstood. We do not say that this procedure would apply to facts sought to be established by other means of proof. | Executive clemency is applied for as matter of grace, never as matter of right. | Is clemency a matter of right? | Pardon and Parole - Memo 5 - RK_67520.docx | ROSS-003280825-ROSS-003280826 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 19727 | Chavez v. State, 132 So. 3d 826 | 284+21 | This Court has stated that "[n]o aspect of clemency powers exist[s] by virtue of a legislative enactment, and none could. These powers are "derived" solely from the Constitution." Parole Comm'n v. Lockett, 620 So.2d 153, 157 (Fla.1993) (quoting In re Advisory Op. to the Governor, In re Admin. Procedure Act, Exec. Clemency, 334 So.2d 561, 562 (Fla.1976) (footnote omitted)). Thus, to the extent section 14.28 could be read to exclude certain clemency materials from confidentiality, Rule of Executive Clemency 16, which provides that all records in the clemency process are confidential, controls pursuant to Lockett. | Because clemency powers derive solely from the state constitution, to the extent statute pertaining to executive clemency conflicts with Rules of Executive Clemency with respect to the scope of confidentiality of clemency materials, the Rules of Executive Clemency control. West's F.S.A. Const. Art. 4, S 8; West's F.S.A. S 14.28. | Is the clemency power derived from the constitution? | Pardon and Parole - Memo 8 - RK_67523.docx | ROSS-003321600-ROSS-003321601 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19728 | Van Sickell v. Margolis, 109 N.J. Super. 14 | 302+69 | Factual admissions made by the pleader in one count are not admissible against him in an issue raised in an alternative, inconsistent count. See 29 Am.Jur.2d, s 692, p. 747; McCormick v. Kopmann, 23 Ill.App.2d 189, 161 N.E.2d 720, 729 (Ct.App.1959). Moreover, the pleader's conclusions of law are not admissions of facts. | Pleader's conclusions of law are not admissions of facts. | "Are the pleader's conclusions of law, admissions of facts?" | 023980.docx | LEGALEASE-00164863-LEGALEASE-00164864 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 19729 | State v. Lopez-McCurdy, 266 S.W.3d 874 | 352H+22 | In any event, Koller's testimony would not have completely exonerated Defendant, even if such testimony had been believed by the trial court. Defendant was found guilty of having sexual intercourse with A.M. by the use of forcible compulsion. The applicable statutory definition of sexual intercourse is "penetration, however slight, of the female sex organ by the male sex organ, whether or not emission results." " 566.010(4). A.M.'s testimony that her vagina was penetrated by Defendant's penis was sufficient to prove that sexual intercourse occurred. See State v. Taylor, 126 S.W.3d 2, 4 (Mo.App.2003). Proof of ejaculation is not essential to establish that a rape occurred. State v. Nelson, 818 S.W.2d 285, 290 (Mo.App.1991); State v. Patterson, 806 S.W.2d 518, 520 (Mo.App.1991). Koller's testimony only challenged the accuracy of A.M.'s testimony that Defendant ejaculated on her pants. This is a collateral issue that does not provide Defendant with a complete defense to the crime of forcible rape. Point II is denied. | Proof of ejaculation is not essential to establish that a rape occurred. V.A.M.S. S 566.030. | Is ejaculation essential to establish rape? | 043158.docx | LEGALEASE-00164908-LEGALEASE-00164909 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 19730 | State v. Howe, 247 N.W.2d 647 | 282+137 | It was strongly urged by the defendant that his words did not constitute a threat because he simply made an unconditional statement informing Mrs. Rohde that legal action would be instituted against her, and that he prefaced his comments to Mrs. Rohde with the statement that he was not making a threat. This view misinterprets the nature of a legal threat and the purpose of the statute. No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion. In re Burke, 9 O.C.D. 350, 17 Cr.Ct.R., N.S., 315 (1899). | Within statute proscribing use of threat with intent to influence another's testimony or cause another to withhold testimony in an official proceeding, no precise words are necessary to convey a threat, which may be made by innuendo or suggestion, and must be considered in the circumstances under which it was spoken. NDCC 12.1-09-01, subd. 1. | Are precise words necessary to convey a threat? | "Threats, Stalking and Harassment - Memo 273 - C - LB_67351.docx" | ROSS-003280882-ROSS-003280883 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 19731 | Stanley v. Superior Court, 206 Cal. App. 4th 265 | 135H+59 | Jeopardy attaches once the jury and the alternates are sworn. (People v. Hernandez, supra, 30 Cal.4th at p. 8, 131 Cal.Rptr.2d 514, 64 P.3d 800.) Granting an unnecessary mistrial after jeopardy has attached precludes retrial. (Ibid.) Retrial, however, is not barred if the defendant consented to the mistrial or legal necessity required it. (Curry, supra, 2 Cal.3d at p. 712, 87 Cal.Rptr. 361, 470 P.2d 345.) In this case, we are concerned only with the issue of consent. | Jeopardy attaches once the jury and the alternates are sworn. U.S.C.A. Const.Amend. 5; West's Ann.Cal. Const. Art. 1, S 15. | Will jeopardy attach once the jury and the alternates are sworn? | Double Jeopardy - Memo 1019 - C - KG_67635.docx | ROSS-003324067-ROSS-003324068 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 19732 | Pistone v. Superior Court, 228 Cal. App. 3d 672 | 135H+100.1 | Defendant contends that the jury effectively found him not guilty of the offenses of first and second degree murder and that we should give formal effect to the jury's intent by preventing his retrial for those offenses. The early cases interpreting the double jeopardy clause established the fundamental principle that no criminal defendant can be retried for an offense of which he has once been acquitted. (See United States v. Ball (1896) 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 35 L.Ed. 602; People v. Webb (1869) 38 Cal. 467, 479"480.) This basic protection was long ago codified in Penal Code sections 687 and 1023, enacted in 1872. It is plain, then, that if we recognize the jury's actions to be the equivalent of an acquittal of murder, defendant cannot be retried for either degree of that offense. | No criminal defendant can be retried for an offense of which he has once been acquitted. U.S.C.A.Const.Amend. 5. | Can no criminal defendant be retried for an offense of which he has once been acquitted? | 016307.docx | LEGALEASE-00165631-LEGALEASE-00165632 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 19733 | State in Interest of G.E., 94 So. 3d 863 | 135H+135 | A defendant has a right not to be twice placed in jeopardy for the same offense. U.S. Const. Amend. V; La. Const. Art. I, Sec. 15. In order to determine whether or not a double jeopardy violation has occurred, Louisiana courts recognize both the "same elements" test, Blockburger v. U.S., 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and the "same evidence" test, State v. Baptiste, 99"0288, p. 2 (La.App. 4 Cir. 3/29/00), 759 So.2d 173, 175. | In order to determine whether or not a defendant has been twice placed in jeopardy for the same offense, courts recognize both the "same elements" test and the "same evidence" test. U.S.C.A. Const.Amend. 5; LSA-Const. Art. 1, S 15. | Does a defendant have a right not to be twice placed in jeopardy for the same offense? | Double Jeopardy - Memo 904 - C - NC_67693.docx | ROSS-003283195-ROSS-003283196 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 19734 | Oeltjenbrun v. CSA Inv'rs, 3 F. Supp. 2d 1024 | 83H+10 | In contrast to the fungible quality of futures, cash forwards are generally individually negotiated sales of commodities between principals in which actual delivery of the commodity is anticipated, but is deferred for reasons of commercial convenience or necessity. These contracts are not readily transferable and therefore are usually entered into between parties able to make and receive physical delivery of the subject goods. | Although the Commodities Exchange Act (CEA) regulates "futures contracts," the Act excludes from the definition of the term "future delivery" "any sale of any cash commodity for deferred shipment or delivery," and hence excludes such contracts, known as "cash forward contracts," from the definition of futures contracts, and by extension, excludes them from Commodity Futures Trading Commission (CFTC) jurisdiction and the ban on "off-exchange" contracts. Commodity Exchange Act, SS 1a(11), 4, as amended, 7 U.S.C.A. SS 1a(11), 6(a). | What is a cash forwards contract? | 013589.docx | LEGALEASE-00166977-LEGALEASE-00166978 | SA, Sub | 0.21 | 0 | 0 | 1 | 1 | |
| 19735 | Tamari v. Bache & Co. (Lebanon) S.A.L., 730 F.2d 110 | 83H+6.1 | The district court's analysis under the conduct and effects tests was derived from these analogous cases. We find that the district court correctly applied the tests to the facts of this case and adopt its analysis under both tests.12 See Tamari v. Bache & Co. (Lebanon) S.A.L., 547 F.Supp. 309 (N.D.Ill.1982). The transmission of commodity futures orders to the United States would be an essential step in the consummation of any scheme to defraud through futures trading on United States exchanges. Further, when transactions initiated by agents abroad involve trading on United States exchanges, the pricing and hedging functions of the domestic markets are directly implicated, just as they would be by an entirely domestic transaction. If transactions are the result of fraudulent representations, unauthorized trading or mismanagement of trading accounts, prices and trading volumes in the domestic marketplace will be artificially influenced, and public confidence in the markets could be undermined. | Under both "conduct" and "effects" tests for determining jurisdictional questions arising from transnational disputes, district court had subject matter jurisdiction over cause of action under Commodity Exchange Act arising from trading on United States exchanges, even though parties were nonresident aliens and contacts between them occurred in foreign country since transmission of commodity futures orders to United States constituted "conduct" within United States and alleged fraud implicated integrity of American market. Commodity Exchange Act, SS 4b, 4c, as amended, 7 U.S.C.A. SS 6b, 6c. | What is the essential step in the consummation of any scheme to defraud through futures trading? | 013613.docx | LEGALEASE-00167075-LEGALEASE-00167076 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19736 | United States v. Tateo, 377 U.S. 463 | 135H+95.1 | There are circumstances in which a mistrial does not preclude a second trial. | Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100, is … a mistrial does not preclude a second trial. | Are there circumstances in which a mistrial does not preclude a second trial? | Double Jeopardy Memo 576- C - 1 - SHE_68357.docx | ROSS-003283719-ROSS-003283721 | SA, Sub | 0.89 | 0 | | | 1 | 1 |
| 19737 | First Lumber Family Restaurants, 194 B.R. 429 | 145H+10 | Labeling an agreement a "lease" does not make it one. Whether a "lease" is bona fide or merely a financing agreement depends upon circumstances of each case. | Labeling an agreement a "lease" does not make it one. … transaction or the fact that the transaction is denominated as a "lease." | Does labeling agreement "lease" not make it one? | 04267O.docx | LEGALEASE-00166997-LEGALEASE-00166998 | SA, Sub | 0.64 | 0 | | 1 | 1 | |
| 19738 | Brown v. Bd. of Regents of Univ. of Minnesota, 813 N.W.2d 617 | 141E+992 | University of Minnesota is a legal entity within the State of Minnesota; the university has autonomous status as a constitutional corporation. | The University of Minnesota is a legal entity within the State of Minnesota … university (employment termination) decision"). | Is a university a legal entity within the State? | Education - Memo #299 - C - AFS_6A300.docx | ROSS-003284795-ROSS-003284796 | SA, Sub | 0.89 | 0 | | | 1 | |
| 19739 | Dempsey v. Quinn, 87 Mass. App. Ct. 135 | 177H+23 | "Specific person," within the meaning of the criminal-harassment statute, which prohibits a pattern of conduct or series of acts of a certain nature "directed at a specific person," means the victim. M.G.L.A. c. 265, § 43A(a). | In the criminal context, the "'specific person' referred to in the victim? … have a different meaning in the context of civil harassment | "Who does "specific person" within the meaning of the criminal-harassment statute, refer to? | 04077S.docx | LEGALEASE-00167356-LEGALEASE-00167357 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | | |
| 19740 | Thomas v. Bd. of Sup'rs of PointeCru, 45 So. 3d 1173 | 414+1000 | Issues of zoning are not judicial, but rather, legislative in nature. | Issues of zoning are not judicial but rather, legislative in nature. Luter v. … an appellate court only"). | Are zoning issues legislative in nature? | Zoning and Planning Memo 1 - RM.docx | ROSS-003283759-ROSS-003283761 | Condensed, SA | 0.91 | 0 | 1 | 1 | 1 | |
| 19741 | Bank of Cave Spring v. Gold Kist, 173 Ga. App. 679 | 38+1 | "Assignment," unlike a lien, is not merely a charge upon such a property but is an absolute, unconditional and completed transfer of all right, title and interest in property that is subject of assignment, whether it affects property as a whole or a specified estate in or portion of the property, with concomitant total relinquishment of any control over the property. | Black's Law Dictionary, 5th ed. (West Pub. Co., 1979), at p. 109, defines … any other contract. As cited in Phrases 109. | Does an assignment require transferring the whole or a any part of the property? | 07251.docx | LEGALEASE-00077639-LEGALEASE-00077641 | SA, Sub | 0.75 | 0 | | 1 | 0 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 15742 | People v. McKenna, 11 Cal. 2d 327 | 110+79(10) | The crime of forgery consists either in the false making or alteration of a document with the intent to defraud... People v. Gayle, 202 Cal. 159, 259 P. 750; People v. Thorn, 138 Cal.App. 714, 33 P.2d 5; People v. Munroe, 100 Cal. 664, 35 P. 326, 24 L.R.A. 33, 38 Am.St.Rep. 323. A deed which conveys no title may be the subject of forgery. People v. Baender, 68 Cal.App. 49, 228 P. 536. | In prosecution for forgery, perjury, and for preparing and offering false evidence, an instruction defining forgery, including said of such a document as the evidence authorized finding of defendant did not personally forge or prepare forged documents, but that she aided and abetted another in doing so. West's Ann.Pen.Code, §§ 132, 134, 470. | Does alteration of a document without authority amount to forgery? | 04307.docx | LEGALEASE 00078308-LEGALEASE 00078309 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 15743 | Adelson v. Harris, 973 F. Supp. 2d 467 | 379+33 | The Second Circuit has established that "[d]iscouraging defamation is a concept long and deep-rooted..." for choice of law purposes, analysis turns on the "precise issue" raised by plaintiff's domestic apples... Davis v. Costa-Gavras, 580 F.Supp. 1082, 1091 (S.D.N.Y.1984) (quoting Reeves v. Am. Broad. Co., 719 F.2d 602, 605 (2d Cir.1983)). In defamation cases, however, the "locus of the tort factor" arguably "begs the question..." the ultimate choice of law question. Condit v. Dunne, 317 F.Supp.2d 344, 353 (S.D.N.Y.2004). | Under New York law, "conduct regulating rules," for choice of law purposes, and those governing conduct to prevent injuries from occurring, while "loss allocating rules" are those that prohibit, assign, or limit liability after tort occurs. | What law applies under choice of law rules in defamation cases? | 13362.docx | LEGALEASE 00081411-LEGALEASE 00081413 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | 1 |
| 15744 | In re Tranquib, 552 B.R. 817 | 366+1 | Subrogation is an equitable doctrine that "entitles a person who discharges a duty owed by another to the property interest or duty of a third person... more... Brooks Rock Lumber Corp. v. Universal Mortg. Corp., 82 Wis.2d 191, 262 N.W.2d 114, 116 (1978). Equitable subrogation for various reasons, may be applicable depending on one of three conditions: (1) the lender was secondarily liable, (2) the lender loaned money to protect his own interest, or (3) there was an agreement that the lender was to have security in the debt. Id. at 117. Subrogation is applied or denied on equitable principles. | Under Wisconsin law, the object of subrogation is to substitute (justice independent of form or contract relation between the parties. | What is the object of subrogation? | 07793.docx | LEGALEASE 00081923-LEGALEASE 00081924 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | 1 |
| 15745 | Yamamoto v. Bank of New York, 329 F.3d 1167 | 172H+1337 | The First Circuit held as much in Large v. Conseco Finance Servicing Corporation, 292 F.3d 49, 54-55 (1st Cir.2002). The Large made no argument that rescission is automatic... the lender's security interest upon terms that are equitable]; see also Quenzer v. Advanta Mortg. Corp. USA, 288 B.R. 884, 888 (9th Cir.2003) ("within the meaning of TILA), "rescission" does not remain an annulment that is definitively accomplished by unilateral pronouncement... We are persuaded by this reasoning. | Mortgagor's security interest did not become automatically void upon mortgagor's notice that they were exercising their right to rescission based upon mortgage's alleged failure to disclose their right to rescission and alleged inaccurate disclosure of appraisal fees in violation of TILA, where mortgage contested mortgagors' rights to rescind and presented U.S.C.A. S 1635(b); 12 C.F.R. S 226.23. | When can the obligor exercise his right of rescission? | Consumer Credit - Memo 15 - KK.docx | ROSS-003194382-ROSS-003195083 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 15746 | Viraj Chawtharanya v. Aurora Loan Services, 448 B.R. 789 | 13+61 | Plaintiff did not list any claim to dispute in his bankruptcy filing. (BIA Ex. 2) "Generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy." Cusano, 264 F.3d at 947. "To determine when a cause of action accrues, we look to state law." Id. at 947. A claim accrues when an "action could have been brought," Id. at Under California law, a claim accrues when the obligor under the bankruptcy arose. | Under California law, a claim accrues when an action could have been brought. | 05580.docx | LEGALEASE 00084930-LEGALEASE 00084931 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19747 | Attia v. Harris, 846 S.W.2d 623 | 313H-1 | Evidence is presumed to be discoverable, and the burden is on the party resisting discovery to plead the privilege claimed, and to present evidence supporting the claim. Leflar v. Martin, 776 S.W.2d 145, 147 (Tex.1989); Tex.R.Civ.P. 166b(4). If the matter sought to be discovered is privileged, it is not subject to discovery. West v. Solito, 563 S.W.2d 240, 243 (Tex.1978). Rule 166b(3)(d) exempts from discovery any matter protected from disclosure by privilege. Tex.R.Civ.P. 166b(3)(e). | If matter sought to be discovered is privileged, it is not subject to discovery. Vernon's Ann.Texas Rules Civ.Proc., Rules 166b, subds. 3, par. e, 4; Rules of Civ. Evid., Rules 501, 503(a)(5), (b), (4)(1). | Are privileged matters subject to discovery? | 05869.docx | LEGALEASE 00089168-LEGALEASE 00089169 | SA Sub | 0.58 | 0 | | | | 1 |
| 19748 | Gracyk v. Workers' Comp. Appeals Bd., 184 Cal.App.3d 997 | 413+56 | California workers' compensation law (§ 3200 et seq.) is a statutory system enacted pursuant to constitutional grant of plenary power to the legislature to establish a complete and exclusive system of workers' compensation. (Cal. Const., art. XIV, § 4 ... [See Cal. Jur. 3d, Workers' Comp., § 1 et seq.; 2 Witkin, Summary of Cal. Law (8th ed. 1973) Workers' Compensation, § 2 et seq.] ... | Varsity college athlete with athletic scholarship did not have vested right to workers' compensation benefits, and his conditional grant of plenary power to the retroactive application of legislative amendment further clarifying employment status of amateur student athletes as persons not entitled to workers' compensation benefits ... had not been reduced to final judgment before legislative amendment. West's Ann.Cal.Labor Code § 3352(k). | Is the workers' compensation law a statutory system enacted pursuant to constitutional grant of plenary power to the legislature? | 11466.docx | LEGALEASE 00094117-LEGALEASE 00094118 | Condensed, SA, Sub | 0.48 | | | 1 | 1 | |
| 19749 | Tyrell v. Prudential Ins Chemicals, 505 N.W.2d 554 | 230+261(1) | In the employer's subrogation action, the employer also stops from the measure of the employee to continue the unsettled portion of the employee's tort cause of action. Whether the employer is interested only in recovering for benefits paid and payable, the employer is entitled to use its subrogation rights against this subrogation action as it would any tort cause of action. The workers' compensation action as it would any tort cause of action has strong ties to that contract claim ... Determining amount of compensation benefits recoverable out of common law damages award involves administration of Workers' Compensation Act in all its intricacies and, as such, is separate matter for court, not jury, to determine. M.S.A. § 176.001 et seq. | Determining amount of compensation benefits recoverable out of common law damages award involves administration of Workers' Compensation Act in all its intricacies and, as such, is separate matter for court, not jury, to determine. M.S.A. § 176.001 et seq. | Questions is the extent of the employer's obligation under the Workers' Compensation Act determined according to the common law measure of damages? | 10660.docx | LEGALEASE 00095455-LEGALEASE 00095456 | SA Sub | 0.71 | | | | | |
| 19750 | Lowe v. Quinn, 27 A.D.2d 263 | 253+134 | Reference to those common law rules determine this action. The essential element which distinguishes the action for the recovery of a ring given in contemplation of marriage from other actions for the return of other gifts ... Contract to marry is completely void where one party is already married, even though married promisor contemplates divorce and prospective marriage is conditional upon final eventuality. | Contract to marry is completely void where one party is already married, even though married promisor contemplates divorce and prospective marriage is conditional upon final eventuality. | Will a marriage contract made by a person who is already married be enforced? | 00264.docx | LEGALEASE 00115476-LEGALEASE 00115477 | SA Sub | 0.78 | | 1 | | | |
| 19751 | Evans v. Utah, 21 F. Supp. 3d 1192 | 253+207 | Under Utah law, a marriage becomes valid on the date of solemnization. See Whitmer v. Whitmer, 857 P.2d 64, 68 (Utah Ct.App.1993); State v. Geer, 765 P.2d 1, 2 n.1 (Utah Ct.App.1988) ... the Utah Supreme Court recognized that the due process protection in the Utah Constitution "is not offended by laws that permit solemnization of valid marriages." And, as early as 1892, the Utah Supreme Court recognized the fundamental vested rights associated with marriage. Tufts v. Tufts, 8 (Utah 142, 30 P. 309, 310 (1892)) | Under Utah law, a marriage becomes valid on the date of solemnization. | Issue: Is a marriage valid without solemnization? | 00422.docx | LEGALEASE 00116652-LEGALEASE 00116653 | Condensed, SA | 0.92 | | 1 | | 1 | |
| 19752 | Schwehr v. Burdick, 96 | 237+76 | We will apply a shortened limitations statute retroactively only if defendant has "a reasonable" time to file his claim against Simon and Schuster after the statute went into effect. Phillips v. Grand County, 960 P.2d 275, 281 (Th.Ct.r 1991), cert. denied, 506 U.S. 1084, 113 S.Ct. 1059, 122 L.Ed.2d 364 (1993). Courts have determined reasonable periods on a case-by-case basis and have expanded period as short as nine months and as long as fifteen months. Id.; see also Pearson v. Gatto, 933 F.2d 521, 526 (7th Cir. 1991) ... | After legislature shortened limitations period applying to prisoner's defamation claim, by publishing listing of prisoners' claims until their release, prisoner who had only 21 days from the effective date of amendment before bringing defamation claim, delay was unreasonable, so that applicable statute of limitations for defamation was only one year. S.H.A. 735 ILCS 5/13-201, 735 ILCS 5/13-211. | Question/What is the statute of limitations for defamation as per Utah state laws? | 00289.docx | LEGALEASE 00119286-LEGALEASE 00119287 | Condensed, SA, Sub | 0.65 | | | | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19753 | Coon v. State, 33 Ga. App. 358 | 67+80(.5) | The defendant was convicted of the offense of burglary. Two essential elements of the offense are the breaking into and the entering of the house. The evidence in this case showed an entering, but failed to show a breaking. It is contended by the solicitor general that, though the defendant entered the house by coming in through an open window, the evidence showed that he "pushed aside" the window curtains, and that said act amounted to a breaking. We can not agree with that contention, and the prosecution has failed to show authority that supports it. See, in this connection, Rex v. Lawrence, 19 English Common Law Reports 690; Lockhart v. State, 3 Ga. App. 480(1), 60 S.E. 215; Slappey v. State, 30 Ga. App. 11, 116 S.E. 923; Bailey v. State, 50 Ga. App. 139, 177 S.E. 91(1). The cases cited in the brief of the solicitor general are differentiated by their facts from this case. Furthermore, the identification of the accused as the alleged burglar was not positive, but was uncertain and unsatisfactory. Justice requires another hearing of the case. | Two essential elements of offense of "burglary" are the breaking into and the entering of a house. Code 1933, § 26-2401. | What are the elements of burglary? | 01386.docx | LEGALEASE-00180356-LEGALEASE-00180357 | SA, Sub | 0.88 | | | | 1 | |
| 19754 | In re Marriage of LaRus, 153 Cal. App. 4th 1424 | 30+22 | There is no constitutional right to an appeal; the appellate procedure is entirely statutory and subject to complete legislative control. Marine Payco v. Magnum [2001] 98 Cal. App. 4th 525, 528, 133 Cal. Rptr. 2d 284, see also Serrano v. Priest, 20 Cal. 3d 25, 34 [141 Cal. Rptr. 315, 569 P.2d 1303], see also Privette v. Superior Court of Amador County, Inc. v. Peoples (Int'l), [2004] 115 Cal. App. 4th 840, 448-443, 54 Cal. Rptr. 3d 232 [Vivid Video].) Appellate jurisdiction can not be created by consent, waiver, or estoppel. [Vivid Video, supra, 147 Cal. App. 4th at p. 441, 54 Cal. Rptr. 3d 232 ] Four Point Entertainment, Inc. v. New World Entertainment, Ltd. (1997) 60 Cal. App. 4th 79, 83 fn. 1, [70 Cal. Rptr. 2d 82.] A reviewing court has no jurisdiction over a direct appeal when there is [1] an appealable order or [2] an appealable judgment.* (Griset, supra, 25 Cal. 4th p. 696, 107 Cal. Rptr. 2d 149, 23 P.3d 563) In civil cases, there normally can only be an appeal from a final judgment. [Vivid Video, supra, 147 Cal.App.4th at p. 441, 54 Cal. Rptr. 3d 232 ] There are doubt as to whether we have jurisdiction to hear an appeal, we must raise the issue on our own initiative. [In re Paula (By-Haven) [2002] 86 Cal. 4th 1199, 1207, 118] | Appellate jurisdiction cannot be created by consent, waiver, or estoppel. | Can appellate jurisdiction be revoked by waiver or consent of the parties? | Appeal and error - Memo 06 - 94.docx | ROSS-003187061-ROSS-003187065 | Condensed, SA | 0.95 | | 1 | | 1 | |
| 19755 | People v. Rose, 82 Misc. 2d 429 | 359+1 | A school building, even if a public building, is not public in the sense that any person may enter therein. People v. Johnson 16 N.Y.2d 545 546, 550, 150 N.Y.S.2d 694, 696, 161 N.E.2d 51 [1959]. A school building is restricted for the teaching [purposes. Johnson, Ibid. 15 A.D.2d 697] [51 N.E.2d 51.] An unauthorized person in a school building is listening [Pen.L. 240-3505.] People v. Johnson, Supra]. In the case at bar the school building was not opened by the necessary general public. Any building to which access is limited and restricted to prospects may not be deemed a legal proceeding. People v. Schoenmaker, 65 Misc.2d 393, 396, 317 N.Y.S.2d 696, 700 [Cty.Ct., Greene Cty., 1971]. Dowd v. Anastasio, (1951) V.L.R. 233, (1951)1 All E.R. 823(6). Such a Statute ... Moreover ... selection as a school or court in a building is a rightful power to consist of a building or room dedicated to religion or permanent building ... establishments of constitutional prohibitions of and fortifications against establishment of religion. (1 Const. amend. I, amend. XV, s.1, N.Y.Const. art. 1, s 3 | Unauthorized presence in school building is loitering. Penal Law 3505, S 240.35, subd 5. | Is the unauthorized presence in a school building considered loitering? | 04744.docx | LEGALEASE-00181175-LEGALEASE-00181176 | SA, Sub | 0.92 | | | | 1 | |
| 19756 | Gould v. McCarty, 11 N.Y. 575 | 307H+434 | It will be perceived that the proceedings upon the part of the plaintiff were in exact conformity to the requirements of the 23d section above quoted, and that they proceeded up to the point of the final order striking out the answer of the defendant, were in like manner regularly authorized by the 23d and 20th sections of the same statute. There is nothing either in these sections to mark by which the discovery was sought for the relief was granted. If the superior court had jurisdiction of the subject matter of the action and of the parties, its judgment upon the merits of any particular motion or order in the course of the action, however erroneous it may be on the ground that, plainly, though it was not void. But the omission to frame the rule does not and was not wanting in the inherent power of the court to compel a discovery, or the power granted by the provision [appeal, the superior court "possess and may exercise" all the powers granted to the superior court. The authority thus granted is not suspended, until proper person may be exercised in all cases where the mode of proceeding is prescribed by statute. Such is the case before us. The 388th section provides the case where the case may be substituted for the provisions of the revised statutes, but auxiliary to them. By this provision the statute, itself order for that purpose had been granted. But, by the code, power is given to compel the discovery of books in an action, or to provide for discovery, to strike out any plea or notice that may be given. | Code, S 388, which provides that, where a discovery is refused by a party against whom an order for that purpose has been granted, the court may exclude the document from being given in evidence, if the party refusing, or both, is not a substitute for, but is auxiliary to. 2 Rev.St. p. 199, S(2.1), 4); empowering the court in such cases as shall be deemed proper to compel a party "to produce and discover books, papers and documents in his possession or power relating to the merits of any such suit, or of any defense therein," and, in case of refusal to obey an order for discovery, to strike out any plea or notice that may be given. | Is the code providing for the discovery of books or papers, a substitute for the provisions of the Revised Statutes, but auxiliary thereof? | 02737.docx | LEGALEASE-00190835-LEGALEASE-00190836 | Condensed, SA, Sub | 0.64 | | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19757 | United States v. Kahn, 340 F. Supp. 485 | 91+39.3 | The motion for judgment of acquittal is denied on the ground that as to each count in the indictment the evidence was not only sufficient to sustain a conviction of the offense charged but was overwhelming. | Motion for judgment of acquittal on charges of conspiracy, interstate travel or transportation in aid of racketeering enterprises, and perjury would be denied where the evidence was overwhelming and competitors of defendant testified as to various transactions. Fed. Rules Crim. Proc. rule 29(a, c), 18 U.S.C.A.; 18 U.S.C.A. 371(2), 6, 5(10, 1821, 1952. | For what reasons can the court deny a judgment of acquittal in a criminal case? | 013450.docx | LEGALEASE 00132184-LEGALEASE 00132185 | Condensed, SA | 0.38 | 0 | 1 | | 1 | |
| 19758 | Chisom v. United States, 49 Fed. Cl. 614 | 34+3(1) | Justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." See Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Review of personnel decisions is appropriate only when the Secretary's discretion is limited, and Congress has delineated both tests and standards against which to measure the Secretary's conduct. See Murphy v. United States, 993 F.2d 871, 873 (1993). Procedural matters involved in military decisions are justiciable, merits of the decision are not (See Adkins v. United States, 68 F.3d 1317, 1322*23 (Fed.Cir.1995). Plaintiff has alleged statutory and regulatory violations in his complaint. Thus Court finds plaintiff's claims justiciable. | Procedural matters involved in military decisions are justiciable; merits of a claim of a procedural violation in the military justiciable? the decision are not. | 008933.docx | LEGALEASE 00132457-LEGALEASE 00132458 | Condensed, SA | 0.88 | 0 | 0 | 1 | 1 | |
| 19759 | Cooper v. Thompson, 353 F.3d 782 | 30/34+44.1 | The trial court exercises significant discretion in evaluating motions to continue a trial date. Alaska R. Civ. P. 40(e); provides that if a trial is not tried upon the day set, the court in its discretion may impose such terms as it sees fit, and in addition may require the payment of jury fees and other costs by the party at whose request the continuance has been made. "In this case the terms that the superior court set to impose were shown only because Cooper's request for travel, lodging, and to attorney's hours of trial preparation that would have to be duplicated. | Trial court acted within its discretion in awarding injured driver attorney's fees and costs for travel, lodging, and attorney's hours of trial preparation that would have to be duplicated, as a condition for granting request for continuance made by employer of driver who caused accident in which injured driver allegedly sustained back injuries, where trial court determined that continuance would require employer to discover information related to injured driver's prior, and where trial court determined that employer was aware of driver's prior planning prior to data hearing at which trial date was set and did not raise issue for another approximately a week nor move for continuance until ten days before scheduled start of trial. Rules Civ.Proc., Rule 40(e)(2). | Does a trial court exercise significant discretion in evaluating motions to continue a trial date? | 010662.docx | ROSS 000290958-ROSS-000180909 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | |
| 19760 | First Nat. Bank of Sioux City, Iowa, v. John Morrell & Co., 53 S.D. 496 | 83/I+428 | Appellant contends that, because defendant received credit in his account in the Sioux Falls National Bank for the amount of the checks, the relation of debtor and creditor existed between defendant and the bank, that the bank became the owner of the checks, and that, by its indorsement of them to plaintiff, plaintiff became the owner of the checks, with a right of recourse; in the event of their dishonor, against any prior indorser. But this contention entirely ignores the contract between defendant and the Sioux Falls bank evidenced by the indorsement on the checks. The indorsement "for deposit only" is a restrictive indorsement (R.C.°1943), and clearly vests title in the indorsee in trust for the indorser. Such an indorsement confers upon the indorsee the right to transfer the rights as indorsee, because the indorsement authorized payment "to the order of Sioux Falls National Bank," but the subsequent indorsee (plaintiff here) acquires only the title of the first indorsee under the restrictive indorsement (R.C.°1943), and, irrespective of the directions contained in the indorsement, plaintiff could only have the rights of an agent or trustee for the defendant, clothed with authority to collect the checks. Hubbard v. Avery, 81 Mass. 106, 63 R.C.L. 31, 92 Am.St.Rep. 401). | Indorsement "for deposit only" is a "restrictive," and vests title in indorsee merely as trustee. (Rev. Code 1919, § 1746). | Whether an indorsement for deposit only is restrictive in nature? | Bits and Notes - Memo 221 - 6.docx | ROSS-003990099-ROSS-003829009 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | |
| 19761 | Commercial Credit Corp. v. Univ. Nat. Bank of Fort Collins, 590 F.2d 849 | 83/I+426 | A negotiable instrument is the property of the holder or payee, not the drawer. Shawk v. Webster Engineering Co. v. First National Bank & Trust Co., 145 Mass. 21, 184 N.E.2d 358 (1962); Peterborough v. Clark-Dugan & Son, 143 N.J. Super. 329, 358 A.2d 693, 692 (Div.Ct.1976). Since the bank was the holder of the checks, it, not CCC, had a property right to possess them at the time it transferred them to Lemon. The bank was legally entitled to recover from the drawer or negotiate the check. Code Bus. CCC, 4-3-301 (1973). In transferring the checks to Lemon could not be a "wrongful" or "unlawful" act, which is a necessary element of proof in an action for conversion. This requires (4, a CCC alleged, that it had obtained the checks through "fraud, misrepresentation or mistake." Record set forth... 3. Such allegations constitute a defense to payment, but it would not establish the right to immediate possession, a necessary prerequisite to establishing a claim for conversion. | A negotiable instrument is property of holder or payee, not the drawer. | | 009276.docx | LEGALEASE 00160478-LEGALEASE 00160479 | SA, Sub | 0.93 | | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19762 | Anderson v. Nesbitt, 43 Ind. App. 703 | 28+53 | All horses are disposed to scare or shy at objects of an unusual character in a highway. Roads are prepared with reference to this generally known disposition, and persons who place or leave objects in a highway are likewise charged with notice of this habit. These are things which every adult person of ordinary experience must be presumed to know. It is not, therefore, a subject to be pleaded and proved, whether a box car or any other particular object is naturally calculated to frighten horses. This is to be determined by the experience, observation, and intelligence of the court and jury, as applied to all the facts of the particular case before them. Gilbert v. Railway Co., 51 Mich. 488, 16 N. W Rep. 868; Railway Co. v. Farver, 111 Ind. 195, 12 N. E. Rep. 296. The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses. There must have been some natural, causative connection between the violation of the statute and the frightening of the horses. The object in the situation in which it was left must have had a necessary or natural tendency to that end, according to common experience. A cow or a sheep may be upon a public highway in violation of a statute, and a horse of ordinary gentleness may take fright at such an animal. The frightening of horses was not, however, the mischief which the statute requiring certain animals to be restrained from running at large was intended to prevent. The injury must in each case be proximately such as was within the purpose and protection of the statute. Railway Co. v. Locke, 112 Ind. 404, 14 N. E. Rep. 391. It was error to admit the evidence. | Owner of cows wrongfully allowing them to run at large on highway is not liable for injuries caused by horse frightened at the cows and running away; there being no special circumstances, such as allowing them to run at large during nighttime, or that they so obstructed the beaten part of highway that a horse would be frightened. | Will the object in the highway in violation of statute make the owner liable for the damages which the object may have occasioned to the horses? | 018642.docx | LEGALEASE-00147829-LEGALEASE-00147830 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 19763 | New v. Walker, 108 Ind. 365 | 83E+583 | The decisions agree that, where the statute in direct terms declares that a note given in violation of its provisions shall be void, it is so, no matter into whose hands it may pass. The rule is thus stated by the court in Vallett v. Parker, 6 Wend. 615: "Where the statute declares notes void, they are and must be so in the hands of every holder; but, where they are judged by the court to be so for failure of or illegality of consideration, they are void only in the hands of the original parties, or those who are chargeable with or have notice of the consideration." It is said by a late writer, in stating the same general rule, that "where a statute, expressly or by necessary implication, declares the instrument absolutely void, it gathers no vitality by its circulation, in respect to the parties executing it." 1 Daniel, Neg. Inst. " 197. We regard this author's statement as substantially expressing the general rule, and, accepting it as correct, the pivotal question is whether our statute does, expressly or by necessary implication, declare that notes given to vendors of patent-rights, who have disobeyed the law, shall be void. | Where a statute, in direct terms, declares void a promissory note when given for a vicious consideration, it is ineffective even in the hands of a good-faith holder. | When is a note void? | 010512.docx | LEGALEASE-00148077-LEGALEASE-00148078 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 19764 | Hall v. First State Bank of Hawley, 4 S.W.2d 253 | 83E+462 | Under the provisions of article 5938, " 118, of the Revised Statutes protest is not required, except in the case of foreign bills of exchange. By the provisions of other sections of this article, liability of an indorser may be fixed by notice of dishonor. Where liability is fixed in this manner, the provisions of article 566 with reference to the bringing of a suit would not apply. Suit is made necessary to fix liability only when no notice of dishonor has been given. By section 109 of article 5938 it is provided that notice of dishonor may be waived, either expressly or impliedly. | Suit need not be brought to fix indorser's liability, where notice of dishonor is given (Vernon's Ann.Civ.St. art. 566). | How is liability fixed when there is no notice of dishonor? | Bills and Notes- Memo 705-ANM_58221.docx | ROSS-003280844 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 19765 | Doe v. Ohio State University, 239 F.Supp.3d 1048 | 141E+990 | "A university is not a court of law, and it is neither practical nor desirable it be one." Id. at 635 n.1 (quoting Gomes v. Univ. of Maine Sys., 365 F.Supp.2d 6, 16 (D. Me. 2005)). "Before expelling a student for disciplinary reasons, a public institution must provide: 1) notice of the charges against the student; 2) an explanation of the evidence that authorities have against the student; and 3) an opportunity for the student to present his side of the story." Ashiegbu v. Williams, 129 F.3d 1263, 1997 WL 720477, at (6th Cir. Nov. 12, 1997) (table) (citing Goss, 419 U.S. at 581, 95 S.Ct. 729); Newsome v. Batavia Local Sch. Dist., 842 F.2d 920, 927 (6th Cir 1988). The United States Supreme Court has held that the student is entitled to "some kind of notice" and "some kind of hearing." Goss, 419 U.S. at 579, 95 S.Ct. 729. | A university is not a court of law, and it is neither practical nor desirable it be one. | Can a university be a court of law? | 017027.docx | LEGALEASE-00150108-LEGALEASE-00150109 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 19766 | Alonso v. State, 447 So. 2d 1029 | 3.77E+10 | Further, the extortionist need not hate his victim. That kind of malice is notcontemplated by the crime of extortion. The basic statutory ingredients are a threat mademaliciously with the intent to require another to perform an act against his will. The malice requirement is satisfied if the threat is made "willfully and purposely to the prejudice and injury of another, ...." Black's Law Dictionary, 4th Ed. The extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another's person,reputation, or property. Furthermore, the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will. Carricarte v. State, 384So.2d 1261 (Fla.1980). A threat is malicious if it is made intentionally and without anylawful justification. Coupled with the requisite intent it constitutes the crime of extortion. The trial court's instructions conveyed these requirements to the jury in appropriate instructions. | Crime of extortion does not contemplate kind of malice in which extortionist hates his victim, but rather, "malice" requirement is satisfied if threat is made wilfully and purposely to prejudice and injury of another. West's F.S.A. S 836.05. | "When doesa threat satisfy the ""malice"" requirement of the crime of extortion?" | Threats - Memo #122 - C - LB_62510.docx | ROSS-003279947-ROSS-003279948 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19767 | Dimichino v. City of New York, 198 A.D.2d 414 | 307k645/1.2 | Conditional order of dismissal was meant to be self executing. | While disposition on the merits is favored, the preference does not justify vacating a default judgment where the moving party fails to justify the excuse for the default... | Is conditional order of dismissal meant to be self executing? | Pretrial Procedure - Memo #1007 - C - SAG_64127.docx | ROSS-00531818 ROSS-00531819 | SA, Sub | 0.95 | 0 | | 1 | 1 | |
| 19768 | Chickering v. Raymond, 15 Cal.4th... | 83k44B1 | The legal title to a note cannot be transferred by a separate instrument. | The principal question in the case is, whether the plaintiffs can maintain their title in the promissory note... | Can title to a promissory note be transferred by a separate instrument? | Bills and Notes - Memo 94H - RK_60055.docx | ROSS-00524 2109 ROSS-00524110 | Condensed, SA | 0.85 | | | | 1 | |
| 19769 | Barker CATV Comm v. Ampro, 989 S.W.2d 789 | 30k5 | On restricted appeal, the reviewing court may not consider evidence unless it was before the trial court when it rendered judgment; restricted appeal directly attacks the judgment rendered. | As stated in our original opinion, a restricted appeal allows review of error that is "apparent from the face of the record." Tex.R.App.P. 26.1(c), 30; see Faggott v. Faggott, 911 S.W.2d 74, 76 (Tex.App.-Houston [1st Dist.] 1995, no writ)... | Is restricted appeal a direct attack on the judgment? | Appeal And Error - Memo 59 - RP.docx | ROSS-00524 1882 ROSS-00524 1883 | Condensed, SA, Sub | 0.81 | | | 1 | 1 | |
| 19770 | Cumberland Contractors v. State Bank & Tr. Co., 327 Ga. App. 121 | 302k37 | If material allegations are missing from the pleading, then the pleading fails. | The defendants also contend that the trial court erred in dismissing the complaint because no material allegations regarding the existence of emotional distress... | If material allegations are missing from the pleading, will it fail? | Pleading - Memo 550 - RMM_63970.docx | ROSS-00524 6643 ROSS-00524 6661 | Condensed, SA | 0.94 | | 0 | 0 | 1 | |
| 19771 | Hird Bros. v. Mueller-Huber Grain Co., 185 S.W.2d 470 | 289k735 | A partnership, whether it be regarded as a legal entity created by law or a mere relation existing between the partners, or of one of them, under Subdivision 4 of Art. 4, is a relation of the partners... | Prior to the adoption of Rule 29, venue in suits against a partnership was fixed in the county of residence of the partners, or of one of them, under Subdivision 4 of Article 1995, supra... | Is a partnership at common law a contractual status? | Partnership - Memo 7 - JS.docx | ROSS-00529 832 ROSS-00529 832 | SA, Sub | 0.21 | 0 | 0 | 1 | 1 | |
| 19772 | State v. Dep't of Indus., Labor & Human Relations, 101 Wis. 2d 396 | 413k1 | The Workers' Compensation Act is a remedial statute. | The Worker's Compensation Act is a remedial statute. Jaeger Baking Co. v. Kretschmann, 96 Wis.2d 590, 602, 292 N.W.2d 622 (1980). The purpose of sec. 102.66(1), Stats. 1979... | Is the Workers' Compensation Act a remedial statute? | Workers Compensation - Memo #140 AAC.docx | ROSS-00531962 ROSS-00531963 | Condensed, SA | 0.95 | | | 1 | 1 | |

3480

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19773 | New Castle Cty., DE v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 243 F.3d 744 | 217+1808 | As noted earlier, due to the insurer's dominant position, when an ambiguity is found in insurance policy language, we must construe the language against the insurer as a matter of Delaware law. And therefore, unlike with other types of contracts, we need not inquire into the parties' actual intent. Because ambiguous language is construed against the insurer as a matter of law, we take special note of Delaware law for determining whether language is ambiguous. "The settled test for ambiguity is whether the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." An insurance policy is not ambiguous, however, "merely because two conflicting interpretations may be suggested. Rather, both interpretations must reflect a reasonable reading of the contractual language." Thus, we must examine, not only whether the county's reading of definition 10(c) is possible, but also whether it is reasonable.New Castle County, 174 F.3d at 342"44 (citations omitted). Thus, in order to assess National Union's obligations, Delaware law requires us to ask whether the Acierno suits potentially state a claim under Definition 10(c) of the CGL policy. See id. at 343. We must answer in the affirmative if the language of the policy is ambiguous as to its coverage of the specific claims. An insurance policy is ambiguous if there is more than one reasonable interpretation of its terms. The Delaware Supreme Court has not addressed whether an "invasion of the right of private occupancy" is ambiguous, and both parties agree that lower court opinions in the state provide no clear answer. As a result, we must look outside of Delaware, to other state court decisions and relevant public policy, to reach a decision. | Under Delaware law, an insurance policy is not ambiguous merely because two conflicting interpretations may be suggested; rather, both interpretations must reflect a reasonable reading of the contractual language. | When is an insurance policy ambiguous? | Insurance - Memo 10 - VP.docx | ROSS-003287123-ROSS-003287124 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 19774 | Cairo Nat. Bank of Cairo, Ill., v. Blanton Co., 287 S.W. 839 | 83E+428 | We concede that an indorsement for collection (as that to plaintiff) is restrictive, and does not vest in the indorsee the legal title to the paper. Jackson v. Johnson, 248 Mo. 680, 154 S. W. 759; Northwestern National Bank v. Bank of Commerce, 107 Mo. 402, 17 S. W. 982, 15 L. R. A. 102; Mechanics' Bank v. Valley Packing Company, 70 Mo. 643; Bank of Indian Territory v. First National Bank, 109 Mo. App. 665, 83 S. W. 537; National Bank of Rolla v. First National Bank, 141 Mo. App. 719, 125 S. W. 513; 8 C. J. 366. When a draft is sent by one bank to another bank for collection and a remitting of the proceeds to the sender, the relation of principal and agent is created, and not that of creditor and debtor. Federal Reserve Bank of St. Louis v. Millspaugh (Mo. Sup.) 282 S. W. 706; Midland National Bank v. Brightwell, 148 Mo. 358, 49 S. W. 994, 71 Am. St. Rep. 608; Federal Reserve Bank of St. Louis v. Quigley (Mo. App.) 284 S. W. 164. | Indorsement for collection of bill of exchange is restrictive, and does not vest legal title in indorsee. | Whether an indorsement for collection is a restrictive indorsement? | Bills and Notes- Memo 357-IS.docx | ROSS-003287177-ROSS-003287178 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 19775 | Lyda Swinerton Builders v. Cathay Bank, 409 S.W.3d 221 | 366+26 | For example, equitable subrogation is only available to "the extent necessary [for the subrogee's] equitable protection." Smart, 597 S.W.2d at 338. "When not compelled by the equities of the situation, full subrogation to all special privileges accompanying the taxing authority's constitutional and statutory lien will be denied." Id. This rule limits the extent of subrogated rights. | Under various circumstances, a non-volunteer who satisfies a tax lien may be subrogated to the taxing authority's lien to the extent necessary for his own equitable protection. V.T.C.A., Tax Code SS 32.06, 32.065. | Is equitable subrogation only available to the extent necessary for the subrogee's equitable protection | Subrogation - Memo 136 - VP C.docx | ROSS-003287414-ROSS-003287415 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 19776 | Reed v. Washington Cty. Bd. of Educ., 756 S.W.2d 250 | 156+52.10(2) | As this Court noted in Chattem, Inc. v. Provident Life & Accident Ins. Co., 676 S.W.2d 953, 955 (Tenn.1984), "[a] waiver is a voluntary relinquishment by a party of a known right." Waiver "may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct…." Baird v. Fidelity Phenix Fire Ins. Co., 178 Tenn. 653, 665, 162 S.W.2d 384, 389 (1942). However, if an individual does not know of his rights or if he fails to understand them he cannot waive those rights. Faught v. Estate of Faught, 730 S.W.2d 323, 326 (Tenn.1987). | If individual does not know of his rights or fails to understand them, he cannot waive those rights. | "If an individual does not know of his rights, can he waive those rights? " | Estoppel - Memo 254 - C - CSS_66080.docx | ROSS-003292318-ROSS-003292319 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 19777 | Gen. Elec. Capital Corp. v. FPL Serv. Corp., 986 F. Supp. 2d 1029 | 349A+10 | Whether a contract constitutes a lease or a security agreement, however, does not depend on whether the parties call it a "lease" or a "security agreement." Rather, the nature of a contract depends "objectively on the economic reality of the transaction." Wolfe, 795 N.W.2d at 76. More specifically, [w]hether an agreement creates a security interest depends not on whether the parties intend that the law characterize the transaction as a security interest but rather on whether the transaction falls within the definition of "security interest" in Section 1"201. | Contract between lessee of industrial copiers and lessor constituted a secured transaction under Iowa law, rather than a lease, regardless of the language of "lease" used in the contract, where the lease prohibited lessee from terminating its obligation to pay lessor for the copiers, stating that "(lessee's) payment obligations hereunder are absolute and unconditional and are not subject to cancellation, abatement, reduction, recoupment, defense or setoff for any reason whatsoever," and the lease gave lessee the option to own the copiers for nominal consideration of $1.00 if it complied with the agreement. I.C.A. S 554.1203(2). | "Does whether a contract constitutes a lease or a security agreement not depend on whether the parties call it a ""lease"" or a ""security agreement""? " | Secured Transactions - Memo 15 - C - VA_67958.docx | ROSS-003293195 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 19778 | Computer Personalities Sys. v. Aspect Computer, 320 B.R. 812 | 8.30E+27 | Moreover, under the U.C.C., a postdated check is technically not a check, but instead a credit instrument. See U.C.C. " 2"511, comment 6. Consequently, the Court agrees with Judge Sigmund's determination that the postdated checks "in fact were credit transactions which created an antecedent debt that was satisfied only when the checks became payable one and two weeks later." In re Computer Personalities Sys 2004 WL 1607005, 2004 Bankr.LEXIS 941. | Under Uniform Commercial Code (U.C.C.), a postdated check is technically not a check, but instead a credit instrument. U.C.C. S 2-511. | Is a postdated check considered to be a credit instrument? | Bills and notes - Memo 16 - RK.docx | ROSS-003298211-ROSS-003298212 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 19779 | Ferguson v. Corinthian Colleges, 733 F.3d 928 | 360+18.15 | Pursuant to the Supremacy Clause of the United States Constitution, "the FAA preempts contrary state law." Id. at 1158. In enacting the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). We are thus prohibited from applying any state statute that invalidates an arbitration agreement. Allied"Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Nor may we apply any other state law that "prohibits outright the arbitration of a particular type of claim." Concepcion, 131 S.Ct. at 1747. | Under the Federal Arbitration Act (FAA), court may not apply any other state law that prohibits outright the arbitration of a particular type of claim. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act pre-empt contrary state laws? | Alternative Dispute Resolution - Memo 310 - RK.docx | ROSS-003298666-ROSS-003298667 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 13780 | Gilbert v. Gothagen, 171 So. 3d 289 | 366-1 | Conventional subrogation contemplates the obligee's consent and affirmative action to transfer his rights (taking up a debt or obligation of another by agreement whereby the obligee transfers his rights in a debt to a third person. LSA-C.C. art. 1827) | "Subrogation is the substitution of one person to the rights of another. It may be conventional or legal." La. C.C. art. 1825 ... | What is conventional subrogation? | Subrogation - Memo 124 - VFC.docx | ROSS 003299307 | 9A, Sub | 0.8 | 0 | 1 | 1 | 1 | |
| 13781 | Hawley v. Anchor Mortg. Corp., 464 F.3d 760 | 172H+1342 | The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | "The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer." Hawley v. Anchor Mortg. Corp., 464 F.3d 760 ... | How is the sufficiency of TILA-mandated disclosures determined? | Consumer Credit - Memo 218 - PK_NK90.docx | ROSS 003305793-ROSS-003305792 | 9A, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 13782 | Korab v. Fink, 797 F.3d 572 | 92+3115 | Hawaii's reduction of state-funded health care benefits for nonimmigrant aliens residing in Hawaii under Compact of Free Association with United States (COFA residents) was not constitutionally deficient ... | Second, and alternatively, the Court in Graham found the state laws preempted by federal law, thereby violating the Supremacy Clause. U.S. Const., art. VI ... | Can states add or take from the conditions lawfully imposed by Congress upon the admission of aliens to the United States? | "Aliens, Immigration and Citizenship - Memo 57 - HC_NK91.docx" | ROSS 003307985-ROSS-003307983 | Condensed, 9A, Sub | 0.61 | 0 | 1 | 0 | 1 | 1 |
| 13783 | In re Bill Heard Enterprises, 423 B.R. 771 | 366+1 | Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation, which is to prevent unjust enrichment ... | The overall fairness of applying equitable subrogation should be assessed with a view to the purpose of the doctrine, which is to prevent unjust enrichment. If this goal is not accomplished, the doctrine should not be applied ... | Should a subrogee have clear equity? | Subrogation - Memo 332 - RM-C.docx | ROSS 003310617-ROSS-003310628 | Condensed, SA | 0.79 | | 1 | 0 | 0 | |

3442

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19794 | Martin v. Hickenlooper, 90 Utah 150 | 366x27 | The assertion that subrogation is a growing and expanding doctrine applying the "principle of natural equity" is any case, is similar to one which is equitable and just result is simply borne out by a comparison of many of the cases decided before 1900 as compared with the more modern cases. Yet courts have striven to lay down rules of guidance to govern courts of equity in applying the doctrine, but these rules are largely a crystallization of principles stated in the cases and have themselves changed as the courts applied the doctrine to new sets of facts and gave it broader interpretation. In pursuance of this object to formulate rules, it is said that subrogation is of two kinds, "legal" and "conventional." In Bingham v. Walker etc. v. Bankers, it is stated. "Legal subrogation" arises "where the person who pays the debt of another stands in the situation of a surety or is compelled to pay to protect his own right or property." In passing, it may be said that this protection need not just arise to prevent foreclosure, but extends to the case where the payor or his property may be subject to some right to assert his claim or property. The payment does not need to be made because of a present pressure by the creditor as present obligee. Sutton v. Hay also stated that "Conventional subrogation," occurs where one who is under no obligation to make payment, and who has no right or interest to protect, pays the debt of another under an agreement, express or implied, that he will be subrogated to the rights of original creditor." These definitions have been repeated in substance and effect, with varying words, in many cases and textbooks. 25 R.C.L. 1316, 1317, and pp. 1337-1342 ; Home Owners' Loan Corp. v. Motor Bank, Inc.; 5 Minn. 3 Minn. 31, 34 N.E. 315 ; 25 R.C.L. 1315 § 1, pp. 1337, 1338, 1339, 117 ; 453 ; 5 Dec. Dig. ; 187 ; Harris; Kaity; Horst v. Motor Bank; Pacic v. Winters (1895) 6 Neb. 517, 65 N.W. 1007; Washburn v. Osgood 18 Neb. 306, 53 N.W. 125. | Where a lender in no way intended to protect his property and not required to protect any interest advances money to pay off lien, "legal subrogation" does not exist, and at most "conventional subrogation" exists. | Does legal subrogation arise when the person who pays the debt of another stands in the situation of a surety or is compelled to pay to protect his own right or property? | Subrogation - Memo 151 - VFC.docx | ROSS-003311318-ROSS-003311320 | Condensed, SA, Sub O 93 | | 0 | 1 | | 1 | 1 |
| 19795 | Mahn v. Young, 13 Wis, 634 | 80x4 | But concerning this, we think the appellant has mistaken his remedy. The object of an appeal from a justice, as the object here, where judgment exceeds a dollars, is to try the case on its merits. But when a case in which the judgment exceeds $15, is tried, compelled the party to perform his duty as to render judgment for the party cited. Such an appeal is not designed to perform the function of a certiorari. But when the object is not to assign error in the proceeding of an appeal, of which we have great doubt, it could only be done by compelling the justice to make his return showing the facts. A quo by appeal, take an appeal case from a justice to the circuit court, and then, for the purpose of having the action dismissed, used the truth of the record by affidavit, that the justice did not proceed in the action to enjoin the collection of the judgment on drawing his want of equity. The remedy was obvious and properly sought. | The object of an appeal is to try the case on its merits, and it does not perform the function of a certiorari. | What is the object of an appeal from the judgment of a justice? | Appeal and error Memo #2 - RK.docx | ROSS-003311979-ROSS-003311981 | Condensed, SA, Sub O 87 | | 0 | 1 | | 1 | |
| 19796 | Faris Jewelers v. Carlo, 234 S.W.3d 642 | 366x27 | The three varieties of subrogation - equitable, contractual, and statutory - represent three separate and distinct rights that, while related, are independent of each other. Independent, however, does not mean co-equal. We generally adhere to the maxim that "equity follows the law," which requires equitable doctrines to conform to contractual and statutory mandates, not the other way around. Where a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy. This Court has "long recognized a strong public policy in favor of preserving the freedom of contract." And in Twyla Ash's of Counties County Government this Management Farris v. Mutagenity County, we emphasized that insurers are well-equipped to evaluate and reduce risk by, for instance, "drafting policies so as to specifically provide for reimbursement." Farris advanced this theory, and by the same provisions that replaced equitable rights with specific contractual rights. Neither subrogation reimburses nor contract requires violates Texas public policy. As we have stated, "the State's public policy is reflected in its statutes," and Texas legislature has specifically enacted statutes for an insurer's first-money right of subrogation, thus indicating no blanket legislative disfavor of such provisions. As it is indeed difficult to declare something contrary to public policy when state law has both statutory and regulatory, actually suggests approval.   In a subrogation case arising under the Labor Code, the courts of appeals are among the state statutory subrogation from equitable and contractual subrogation. The court supported only at contractual subrogation or affirming that trial court is not to make its equitable power to deny subrogation at arts agree with this model, text-based approach. | The three varieties of subrogation-equitable, contractual, and statutory-represent three separate and distinct rights that, while related, are independent of each other. | What are the three varieties of subrogation? | Subrogation - Memo 372 - VF.docx | ROSS-003328491-ROSS-003328493 | Condensed, SA | | 0 | 1 | 0 | 1 | |

839

3483

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 19787 | Hubel v. W. Virginia Racing Comm'n, 376 F. Supp. 1 | 313+7 | Rule of West Virginia Racing Commission, which prohibited the staying of decisions of racing officials pending appeal of such decisions to the Commission, but required a hearing not less than ten days nor more than 30 days after receipt of written demand therefor, represented a constraint a legitimate exercise of state's police power. Code W.Va. 19-23-1, 19-23-3, 19-23-14(c). | The harm threatened to the public by the abuse attending horse racing is well documented. As the court in Morris noted: Horse racing, was a sport, with the dragging of racehorses, in such a way as to affect the result of a race, is not a sport and must be considered whatever present by and by any reasonable and adaptable method. . . . The simple proposition is that in permitting horse racing in this State, and in permitting wagering thereon the Legislature has weakened in its battle against gambling and all wagers. As enacted, our racing law delegated the management thereof to a Racing Commission, and in the Commission's power to adopt rules and regulations therefor . . . From a race track who, under the pari-mutuel system, make wagers on horse races, shall receive assurance that they will not be deprived of their money through fraudulent practices, Mahoney v. West Virginia Horse Racing Commission, supra, 55 S.E.2d at pp. 71, 274-275. See also Sandstrom v. California State Racing Board, supra. A thirty day delay pending a hearing under the West Virginia Racing Board in the race track, is sufficient hardship on plaintiffs to justify invalidating the procedure. See State Bd. Of Equalization v. Young, 14 U.S., v. 110, 62 S. Ct. 1, 599, 86 L.Ed. 69 (1944). That is, balancing the state's interest in protecting its citizens from fraudulent horse racing practices against harm occasioned plaintiffs by summary suspension of their licenses for a maximum of thirty days' duration finds firm basis in the protection and furtherance of legitimate state interests. The Court finds and concludes that Rules 804 and 805 represent and constitute a legitimate exercise of the state's police powers. See Mitchell v. W. T. Grant Co., U.S., 94 S.Ct. 1895, 40 L.Ed 2d 406, 431 (U.S.Ct, 40 F.3d (1974). | Can the state racing commission regulate horse racing? | Administrative Law - Memo 1 - Md.docx | LEGALEASE-00000047 - LEGALEASE-00000048 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | |
| 19788 | Vazquez v. Deutsche Bank Nat'l Tr. Co., 441 S.W.2d 783 | 183+1 | A forged deed is void. See Dyck-Devondant Corp. v. Israel Exploration Co., 248 S.W.2d 267 (The App. Houston [1st Dist.] 1952, no writ); Am. Sav. & Loan Ass'n of Houston v. Musick, 531 S.W.2d 581, 591 (Tex. 1975); Johnson v. Gopal, No. 01YPY0596*Cv, 2012 WL 144*57; at (Tex.App-Houston [1st Dist.] Feb. 2, 2012, no pet.) (mem. op.) A document is forged if it is signed by one who purports to act in another. See Nobles v. Marcus, 533 S.W.2d 923, 927-26 (Tex. 1976); Johnson, 2012 WL 144*57; see also Black's Law Dictionary (9th ed.) defining "forgery" at 2013) (concept of "forgery" includes both a false document and a "false part of a document".) | A document is "forged" if is signed by one who purports to act as another. | What is a forged document under law? | 000318.docx | LEGALEASE-00115495 - LEGALEASE-00115496 | Condensed, SA | 0.86 | | 0 | 0 | 1 | |
| 19789 | Peoples State Bank of Ellenwood, Ga. v. Martelli Coach Co., 336 F.2d 3 | 217+1713 | Insurance is a contract made between parties for their benefit or for the benefit of a named person or class that does not vary with the event or attach to the insured property. In re San Joaquin Valley Packing Co., 9 Cir., 295 F. 311; Oman v. Carrington, S.5 Kan. 163, 19 P. 1209; 215 P. A. 305; Welch v. Montgomery, 201 Okl. 280, 205 P.2d 288; 9 A.L.R.2d 294. A mortgagee who, under a similar policy of insurance, receives insurance proceeds paid due to damage to the insured property is bound to apply such monies either to the reduction of the mortgage indebtedness or to the restoration of the property for the common remedy benefits paid his insurable interest to the detriment of the mortgagor; in such instances the retention of the funds paid by the mortgagee constitutes a payment on the mortgage debt, extinguishing it pro tanto. Phoenix Ins. Co. of Hartford v. Dolan, 50 Kan. 725, 32 P. 590. But the benefit of insurance for the insured, not the insurer, though it has holders; is not a party to the insurance contract. Board of Education of Raleigh County, W. Va. v. Winding Gulf Collieries, 4 Cir., 152 F.2d 382. Here the insurance Lumber Co., 44 Ariz. 145, 34 P.2d 397. Appellants could not refuse or extinguish the rights of the mortgagor by their own action but they were free to insure without mortgage and the issuance of the insurance to the persons who are not parties to the insurance contract. Since appellees was not a party to the insurance contract it cannot refuse compliance that did not receive the benefit of the contract. See Annot. 11 A.L.R. 1295, 1305. We thus conclude that appellants had no duty to act and absolute duty to apply the insurance proceeds to the first assured or mortgagor. | Insurance is a contract made between parties for their benefit or for the benefit of a named person or class. | Is insurance attached to the insured property? | Insurance - Memo 14 - VP.docx | LEGALEASE-00000201 - LEGALEASE-00000203 | Condensed, SA | 0.94 | | 0 | 0 | 1 | |
| 19790 | In re Hilton, 405 B.R. 49 | 313+132 | The law is clear that a life estate and a right to occupancy are not the same . . . A life estate is more than a right to occupancy. Tn re Estate of Stroke, 2008 WL 2908163; at (N.Y. Sur. Ct. Nassau County 2008) (citations omitted) . . . [W]hile estate includes a broad collection of rights, including alienability, and it is property of the estate even if it is contingent. 5 Collier on Bankruptcy *541.01[1](15th ed. rev.2007) Under the Code, the estate becomes property of the estate when the right was contingent and not vested as of the date of the commencement of the case. When there is no exception in section 541 excluding contingent property interests. 5 | Is a life estate more than a right of occupancy? | Life Estates - Memo 10 - RM.docx | 90355-00132419-ROSS-00131421 | SA, Sub | 0.73 | | 0 | | 1 | |
| 19791 | Hammons v. Hammons, 327 S.W.2d 444 | 409+61[1] | As a life tenant regarding corpus of testator's estate, testator's wife had duty not to injure the remainderman, but only in the sense that, like trustees, life tenants have a duty not to injure or dispose of the corpus of the estate to the detriment of the remaindermen. Moore v. Moore, 269 Ky. 624, 98 S.W.2d 1, 588 (1936); Superior Oil Corp. v. Alcorn, 242 Ky. 814, 47 S.W.2d 973, 981 (1931). However, like the trustee of a pure trust, a life tenant may use the property for her exclusive benefit, taking the income and profits. [2] This difference, we believe, makes it appropriate to look to the principles and duties of trustees to find a similar duty on the part of a life tenant | Does the life tenant have any duties towards the remaindermen? | Life Estates - Memo 7 - RM.docx | LEGALEASE-00000241 - LEGALEASE-00000242 | Condensed, SA, Sub | 0.8 | | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,029 |
| 19792 | In re Berthiaume, 148 B.R. 391 | 253+436 | The fundamental changes in society and its family law in the United States in the last couple of decades, however, have rendered the above model almost completely inapplicable. The majority of married women are gainfully employed outside their homes. The duty of support is a mutual one, extending to both spouses. Schecke, supra, note 23 at 582, note 33 at 583. The trend in state statutes has been to eliminate or eliminate the concept of fault altogether. All states have adopted some form of equitable distribution primarily based on need and other equitable principles other than fault. Id., note 56 at 588. Furthermore, property is often awarded in lieu of regular alimony or maintenance payments within the object of insuring that an ex-spouse will become or continue to be self-supporting. "Contemporary choice law not only terminates a couple's marital status, but encourages conclusion of their economic interrelationship as well. Increasingly, when a widely used adoption of equitable distribution of property schemes, property is employed as a substitute for alimony, and provides a dependent spouse a means of self-support. Although the theory of property division is based on an allocation of assets acquired during marriage, equitable division principles frequently take into account factors traditionally considered in awarding alimony."Id. at587"588. | Duty of support is mutual one, extending to both spouses. | Will the court consider the spouses duty of support as mutual? | 00024J.docx | LEGALEASE-00115470 LEGALEASE-00115471 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | 1 |
| 19793 | Redfearn v. Creppel, 455 So. 2d 1356 | 414+1254 | The traditional purpose of zoning is to reduce or eliminate the adverse effects of one land use on another by segregating different uses into different zoning districts. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 387-95, 47 S.Ct. 114, 118-21, 71 L.Ed. 303 (1926); L.H. Anderson, supra ** 8.14-.15; Note, "Customary" Requirement for Accessory Uses, 56 B.U.L.Rev. 542, 547 (1976). Accessory uses are permitted exceptions only to the extent that this purpose is not frustrated. When an accessory use would adversely affect a locality, courts have generally interpreted zoning ordinances to prohibit the use. See Pratt v. Building Inspector, 330 Mass. 344, 346-47, 113 N.E.2d 816, 817 (1953); Gray v. Wood, 75 R.I. 123, 64 A.2d 529, 533 (1949). Consequently, when the full definition of an accessory use is superseded, including the provisions which must be inferred from the basic purpose of the zoning ordinance, we think a classification of the Parking Works II property as "accessory" is unsupportable. They must be located "on the same lot as the principal use [almost always standard], occasionally, must analogous to the principal use [almost always standard]. They must also be customarily incidental [almost always standard]. They must also be customarily incidental [almost always standard]. They must not alter the character of the area or be detrimental thereto [occasionally stated]." Williams, American Land Planning Law" 78.08. | Whether additional parking spaces would be required in the operation of bar and meeting room as accessory uses to nonconforming use of land as hotel and restaurant could not be determined on present record and case would be remanded for trial court to determine whether bar or meeting room would be permitted, and whether principal and accessory uses required increase of at least ten percent over number of parking spaces previously required. | Is the elimination of adverse effects of land use considered a valid purpose of zoning? | Zoning and Planning - Memo 5 - RM.docx | LEGALEASE-00000317 LEGALEASE-00000318 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 19794 | Golden Feather Cmty. Assn. v. Thermalito Irrigation Dist., 209 Cal. App. 3d 1276 | 317+7 | In the final analysis the public trust doctrine cannot be divorced from the particular circumstances involved. In short, the circumstances which will warrant application of the term "public trust" and the consequences of characterizing an interest as a trust are a trust interest are not uniform. (California Trust, Inc. v. State Water Resources Control Bd. (1988) 207 Cal.App.3d 585, 353 Cal.Rptr. 184.) There is no necessity to protect public trust interests in the state may have power over properties which are not themselves within the public trust, but this does not mean that such properties are to be added to the public trust. The incidents of the public trust are applicable to such properties. In all cases, the question of which protection is sought and the manner in which that interest is to be protected depends on the interests sought. Where such an interest is involved the courts have held that the state has broad powers to protect those interests, even where otherwise nonpublic trust properties are involved. | Where it is necessary to protect public trust interest state may have power over properties which are not themselves within public trust, but this does not mean that such properties are deemed to be added to public trust, nor that all incidents of public trust are applicable to such properties; in all cases, application of public trust doctrine depends upon interest for which protection is sought and manner in which interest is to be protected. | Is the scope of the public trust doctrine limited? | 07366.docx | LEGALEASE-00077611 LEGALEASE-00077612 | SA, Sub | 0.65 | 0 | | 1 | 1 | 1 |
| 19795 | United States v. Shropshire, 498 F.2d 137 | 349+105.1 | In hearing the validity of a search warrant, we employ the Supreme Court's rule that affidavits for search warrants are to be interpreted in a "commonsense and realistic fashion," and that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to judicial officer before acting." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); see United States v. Harris, 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 110-11, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Williams, 459 F.2d 909, 911 (6th Cir. 1972). | Affidavits seeking issuance of search warrant should be interpreted in a commonsense and realistic fashion. | Should affidavits be accorded a common sense interpretation? | 00387J.docx | LEGALEASE-00115964 LEGALEASE-00115965 | Condensed, SA, Sub | 0.86 | 0 | 1 | | 1 | 1 |

3465

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19796 | State ex rel. Indus. Comm'n of Arizona v. Wright, 202 Ariz. 255 | 38+7 | It is generally true that courts will not enforce a contract based on inchoate rights at law. See, e.g., Restatement (Second) of Contracts " 321(2) (1981) ("[a] purported assignment of a right expected to arise under a contract not in existence operates only as a promise to assign the right when it arises and as a power to enforce it"); Restatement (Second) of Trusts, " 86 (1959) ("an expectation or hope of receiving property in the future cannot be held in trust"); Restatement of the Law of Property " 316 cmt. c (1936) (a contract to release or assign an expectancy interest is only enforceable in equity); see also State Farm Mut. Ins. Co. v. St. Joseph's Hosp., 107 Ariz. 498, 501, 489 P.2d 837, 840 (1971) (" "it is difficult to conceive of an equitable lien on a mere expectancy, or inchoate right, not a debt, and not assignable." ") (internal citation omitted). But here, Mr. Wright mischaracterizes his future income as an inchoate right. While the amount of his future income is speculative, his possessory rights to any such income are immediate and absolute. Vested future interests are assignable at law.See, e.g., Smith v. Payne, 156 Ariz. 506, 511, 753 P.2d 1162, 1167 (1988); Bustrum v. Gardner, 154 Ariz. 409, 410, 743 P.2d 5, 6 (App.1987). | Vested future interests are assignable at law. | Is a vested future interest assignable? | 003999.docx | LEGALEASE-00116191-LEGALEASE-00116193 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 19797 | In re Am. Exp. Merchants' Litig., 667 F.3d 204 | 25T+210 | Gilmer's conclusion that where the plaintiff's statutory rights could effectively be vindicated through arbitration does not affect the case before us, because here plaintiffs have demonstrated that their statutory rights cannot be vindicated through individual arbitrations. Nearly a decade after Gilmer, in Green Tree Financial Corp.-Alabama v. Randolph, the Supreme Court acknowledged in dicta "that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Among the costs at issue were "payment of filing fees, arbitrators' costs, and other arbitration expenses." Id. at 84, 121 S.Ct. 513. In the end, the Green Tree Court found plaintiff failed to submit sufficient evidence to demonstrate the costs of arbitration would effectively prohibit her from vindicating her statutory rights, dooming her attempt to have the arbitration clause declared unenforceable. | When a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive as a means to vindicate the party's statutory rights, that party bears the burden of showing the likelihood of incurring such costs. | When can an arbitration agreement be unenforceable? | 004208.docx | LEGALEASE-00116277-LEGALEASE-00116279 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 19798 | In re Washburn's Estate, 23 Misc. 2d 415 | 409+743 | The excess of the charitable bequests beyond the legal limitation provided by law goes to Mildred O'Bryon as alternative beneficiary. Mildred O'Bryon has executed a written assignment of one-half of this contingent bequest to Ribsamen and it is on file with this Court. A contingent interest may by assigned.(Personal Property Law, " 41; Kenyon v. See, 94 N.Y. 563, 568 and cases cited therein.) The assignment is in proper legal form and the contingency having come about the transfer of a one-half interest in the legacy is valid. | A contingent interest in the estate of a decedent may be assigned. Personal Property Law, S 41. | Can contingent rights be assigned? | 004234.docx | LEGALEASE-00116106-LEGALEASE-00116108 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 19799 | Stewart v. Stewart, 143 Idaho 673 | 134+797 | With regard to the goodwill issue, the Court was correct in declining James' invitation to draw a distinction between enterprise goodwill and personal goodwill when considering the value of his business. In urging the adoption of this distinction, James called our attention to May v. May, 214 W.Va. 394, 589 S.E.2d 536 (2003), wherein the West Virginia Supreme Court asserted "there are two types of goodwill recognized by courts in divorce litigation: enterprise goodwill (also called commercial or professional goodwill) and personal goodwill (also called professional goodwill)." Id. at 541. Before one jumps to the conclusion that both types of goodwill are one and the same, i.e. professional goodwill, the West Virginia Supreme Court went on to say:"Enterprise goodwill attaches to a business entity and is associated separately from the reputation of the owners. Product names, business locations, and skilled labor forces are common examples of enterprise goodwill. The asset has a determinable value because the enterprise goodwill of an ongoing business will transfer upon sale of the business to a willing buyer." | Evidence supported trial court's finding in dividing community property in divorce action that husband's interest in medical practice's goodwill totaled $210,747; evidence indicated that average compensation for dermatologists in ninetieth percentile of earnings nationwide was $423,023, husband's compensation exceeded that national figure, appropriate capitalization rate was 22.1%, and practice's name, location, and reputation had value separate and apart from husband's skill and was designed to attract new patients not familiar with either husband or his colleague. | Is enterprise goodwill of a business entity the same as the reputation of its owners? | Good Will - Memo 4 - RK.docx | ROSS-003284757-ROSS-003284758 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 19800 | Stewart v. Stewart, 143 Idaho 673 | 253+798 | "[P]ersonal goodwill is associated with the individuals. It is that part of increased earning capacity that results from the reputation, knowledge and skills of individual people. Accordingly, the goodwill of a service business, such as a professional practice, consists largely of personal goodwill." | To the extent a professional services corporation has goodwill value beyond a shareholder's personal assets regarding knowledge, skill, and background, that goodwill is community property and thus subject to division in divorce action. | Does goodwill of a service business consist largely of personal goodwill? | 004752.docx | LEGALEASE-00116368-LEGALEASE-00116369 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 19801 | Williams v. Woodmen Found., 792 S.E.2d 876 | 401+1.5 | "North Carolina venue is determined at the commencement of the action, as denoted by the filing of the complaint." Caldwell, 203 N.C.App. at 729, 692 S.E.2d at 486 (citation omitted). "When reviewing a decision on a motion to transfer venue, the reviewing court must look to the allegations of the plaintiff's complaint." Town of Maiden v. Lincoln Cnty., 198 N.C.App. 687, 690, 680 S.E.2d 754, 756 (2009) (quoting Ford v. Paddock, 196 N.C.App. 133, 135"36, 674 S.E.2d 689, 691 (2009)). In reviewing that complaint, this Court is "not required ... to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Strickland v. Hedrick, 194 N.C.App. 1, 20, 669 S.E.2d 61, 73 (2008) (alteration in original) (citation omitted) | Venue is determined at the commencement of the action, as denoted by the filing of the complaint. | When is the issue of venue to be determined? | 004472.docx | LEGALEASE-00116450-LEGALEASE-00116451 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19802 | State v. Ford Corp., 161 N.H. 426 | 405×1126 | The public trust doctrine, from which the State's authority as trustee stems, and the terms upon which the public trust resource is held, ... | | What are the remedies available to a state for environmental harm? | 00457.docx | LEGALEASE 00150507 LEGALEASE 00150508 | Condensed, SA, Sub 0.52 | | 0 | | | 1 | 1 |
| 19803 | DeSalvo v. Gentry, 818 N.E.2d 60 | 15?×1 | On March 1, 1999, Gentry and DeSalvo incorporated a for-profit corporation, DeSalvo Promotions, Inc., for the purpose of buying and selling hay ... | "Personal goodwill" is goodwill that is based on the personal attributes of the individual. | Is personal goodwill dependent on the individual's personal attributes? | Good Will - Memo 5 - RK.docx | ROSS-003285374-ROSS-003285375 | SA, Sub 0.93 | | | | | 1 | |
| 19804 | Wilkinson v. Legal Servs. Corp., 27 F. Supp. 2d 32 | 393×1540 | However, it is not for Congress to make the final determination of LSC's status as a government entity for purposes of determining the constitutional rights of its owners. ... | District Court had jurisdiction to review Act and Claim brought against Legal Services Corporation (LSC) by its former Inspector General; LSC was a government agency for constitutional purposes. ... | How will the courts determine a private corporation to be part of the government? | 00587.docx | LEGALEASE 00150909 LEGALEASE 00150911 | SA, Sub 0.49 | | 0 | | | 1 | |
| 19805 | People v. Bird, 212 Cal. | 203×500 | It is conceivable that the action of the district attorney might be without the spirit of the legislative intent. For instance, if the defendant should be complained against for grand theft and be released against his bail ... | "Murder" and "manslaughter" are both homicides, latter being included in the former. | Are both murder and manslaughter considered to be homicide? | Homicide - Memo 12 - RM.docx | LEGALEASE 00002867 LEGALEASE 00002868 | SA, Sub 0.87 | | | | | 1 | |
| 19806 | Time Warner Cable of New York City, LLC v. Int'l Bhd. of Elec. Workers, 170 F. Supp. 3d 392 | 231H×1578 | In this case, neither party questioned the arbitrability either of the dispute related to the grievance or of the issues set forth in it, the entire grievance was submitted to arbitration ... | In arbitrations brought pursuant to the grievance procedures included in a collective bargaining agreement (CBA), the scope of an arbitrator's authority is limited and controlled by the CBA ... | Does the grievance submitted to the arbiter define his authority? | Alternative Dispute Resolution - Memo 91 - IS.docx | LEGALEASE 00000354 LEGALEASE 00000356 | Condensed, SA, Sub 0.14 | | | | | 1 | |
| 19807 | Oliver J. Olson & Co. v. Marine Terminals Corp., 215 F. Supp. 490 | 50×35 | Respondents then allege Olofson's is not the real party in interest and that the suit should be brought by the consignees of the cargo. However, it is elementary law that a bailor may sue in his own name for damage to the goods in bailment ... | A bailor may sue in his own name for damage to goods of a bailor. | Does a bailor have a right to sue? | Bailment - Memo 50 - RK.docx | LEGALEASE 00000294 LEGALEASE 00000296 | SA, Sub 0.87 | | | | | 1 | |

| | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | |
| | | | | | | | | | **839** | **15,944** | **14,873** | **23,876** | **9,029** |
| 19606 | Duara v. Terry, 210 Va. 234 | 96+21 | Convicts are not civilly liable in Virginia... | Convicts may freely execute contracts and deeds and transact business. | Can courts execute contracts? | 000386.docx | LEGALEASE 0017397 / LEGALEASE 0017398 | Condensed, SA, Sub 0.88 | 0 | 1 | | 1 | 1 |
| | Oracle Am. v. Myriad Grp., A.G., 724 F.3d 1069 | 25T+139 | "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon..." | There is generally a liberal federal policy favoring arbitration agreements, in accordance with federal policy, doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. | Does the federal policy in favor of arbitration extend to questions of arbitrability? | 000915.docx | LEGALEASE 0017383 / LEGALEASE 0017384 | SA, Sub 0.6 | 0 | | 1 | 1 | |
| 19609 | | | First, the statutory phrase, "official service,"... | | | | | | 0 | | 1 | 1 | |
| | Adler v. Sheriff, Clark Cty., 92 Nev. 641 | 164T+8 | Common law definition of "extortion" is the corrupt collection of an unlawful fee by an officer under the color of office. | Common law definition of "extortion" is the corrupt collection of an unlawful fee by an officer under the color of office. | How is extortion defined? | Extortion - Memo 7_8.docx | ROSS 000397224-ROSS 000397225 | SA, Sub 0.85 | 0 | 1 | 1 | 1 | 1 |
| 19611 | Popplar v. Wright, Hennepin Crossfire, Ass'n, 834 N.W.2d 527 | 145+13 | A defendant may be held liable for trespass if the "plaintiff has the right of possession"... | Electricity was intangible, rather than tangible, and therefore the presence of the electrical energy that did not give rise to a substantial certainty result in entry of the long-lasting invasion... | Does the right to exclusive possession of the property have an important role in the 'tort of trespass? | 000710.docx | LEGALEASE 0017336 / LEGALEASE 0017338 | Condensed, SA, Sub 0.21 | 0 | 1 | 1 | 1 | 1 |
| 19612 | Berenger v. 261 W. LLC, 93 A.D.3d 175 | 386+2 | To constitute a trespass, by causing foreign substance to enter onto another's property, defendant's act must be such as will to a substantial certainty result in entry of the long-lasting invasion... | To constitute a trespass, by causing foreign substance to enter onto another's property, defendant's act must be such as will to a substantial certainty result in entry of the long-lasting invasion... | Does trespass require the intent to produce the damaging consequences? | Trespass - Memo 46_8.docx | ROSS 000325345-ROSS 000325346 | Condensed, SA, Sub 0.73 | 0 | 1 | 1 | 1 | 1 |
| 19613 | Bradley v. Am. Smelting &. Ref. Co., 104 Wash. 2d 677 | 386+10 | Addressing the definition, scope and meaning of "intent", section 8A of the Restatement (Second) of Torts says the word "intent"... | Copper smelter's intentional deposit of microscopic particles, undetectable by the human senses, upon person's property could give rise to cause of action for trespass if plaintiff could prove invasion affecting... | "Does an individual act intentionally for purposes of trespass, if he knows that consequences of his act are substantially certain? | 000760.docx | LEGALEASE 0017482 / LEGALEASE 0017483 | Condensed, SA, Sub 0.04 | 0 | 1 | 1 | 1 | 1 |
| 19614 | W. Union Tel. Co. v. Pennsylvania R. Co., 120 F. 362 | 372+70 | "The telegraph company, which this doctrine is based is that the title of the lessee is in fact the title of the lessor..." | A telegraph company, which for more than 20 years has occupied and used by its lines a part of the right of way of a railroad under a lease, and during such time has paid rent annually, so long as it continues to... | Is the title of the lessee in fact the title of the lessor? | Landlord and Tenant Memo 32 - 9x.docx | ROSS 000285414-ROSS 000285415 | Condensed, SA, Sub 0.09 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19815 | United States v. Wiseman, 274 F.3d 1235 | 145+13 | Evidence that Defendant borrowed the plan funds may be relevant to their criminal intent... | Intent to repay generally is not a defense to embezzlement? | Is intent to repay a defense to embezzlement? | 000401.docx | LEGALEASE-00117861-LEGALEASE-00117862 | SA, Sub | 0.91 | 0 | 1 | | 1 | 1 |
| 19816 | Horrell v. Metal Powder. Mem'l. 666 F. Supp. 2d 1271 | 313A+133 | Utah generally follows the Restatement (Third) of Torts: Products Liability (1998) in its application of strict product liability law... | Under Utah law, a manufacturer or seller without notice of a risk associated with its product has no duty to warn; even where a manufacturer or seller has no actual or constructive knowledge of a risk associated with their product at the time of sale, it has a continuing duty to warn of danger if a reasonable person in the seller's position would provide such warning. Restatement (Third) of Torts: Products Liability § 10(a). | "Does seller bear the liability for an act as between an injured buyer of a product, and the seller of the product?" | 000663.docx | LEGALEASE-00117865-LEGALEASE-00117867 | SA, Sub | 0.72 | 0 | 1 | | 1 | 1 |
| 19817 | State v. Rahn, 100 Ohio App. 75 | 384+1 | That sedition and treason are proper subjects of state action, there can be no doubt. This is recognized in Section 2, Article IV of the United States Constitution... | Sedition and treason against the United States as a sovereign entity are necessarily offenses also against every sovereign state of the federal union. U.S.C.A.Const. art. 4, § 2; 18 U.S.C.A. § 2381; R.C. §§ 103.31-103.38, 103.34. | Is treason against a state necessarily treason against the United States? | 000872.docx | LEGALEASE-00117923-LEGALEASE-00117928 | SA, Sub | 0.9 | 0 | 1 | | 1 | 1 |
| 19818 | Life of Am. Ins. Co. v. Aetna Life Ins. Co., 744 F.2d 409 | 25T+113 | The question of the arbitrability of the defense of fraud in the inducement of the contract must be resolved by the court... | There is a strong national policy favoring arbitration. | Does national policy favor arbitration? | Alternative Dispute Resolution-Memo 143-RK.docx | ROSS-003284479-ROSS-003284483 | SA, Sub | 0.92 | 0 | 1 | | 1 | 1 |
| 19819 | United States v. Anchrum, 590 F.3d 795 | 48A+347 | In Gaines v. United States, 118 F.2d 711, 712 (9th Cir.1961), we held sufficient evidence supported a defendant's conviction for "assaulting a narcotics officer with a deadly and dangerous weapon, to wit, a Cadillac automobile."... | A car, truck, automobile, or vehicle can constitute a "deadly or dangerous weapon" under the statute prohibiting assault on a federal officer with a deadly or dangerous weapon. 18 U.S.C.A. § 111(b). | Are automobiles considered to be deadly weapons? | 05.060.docx | LEGALEASE-00088015-LEGALEASE-00088016 | Condensed, SA, Sub | 0.65 | | 1 | 1 | 1 | 1 |

Appendix D
3489

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19820 | AllTrade v. Franklin Cty. Water Dist., 2009 WL 5386810 | 25T+134(6) | The FAA is a "congressional declaration of a liberal Federal policy favoring arbitration agreements." Moses H. Cone Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id. The Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." requiring the [courts] rigorously enforce agreements to arbitrate." Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) [internal citations and quotations omitted] (see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) [recognizing that the FAA "created a rule of contract favoring arbitration."). | Arbitration clauses in agreements for the sale of property were not unconscionable. Therefore, purchasers' claims for breach of contract, economic losses, and emotional distress arising out of the alleged discharge of pollutants from various public and private wastewater treatment, refuse, and disposal facilities, irrigation canals, and other facilities were subject to arbitration under the Federal Arbitration Act. The purchasers alleged that the provision was arbitrarily unconscionable because it precluded discovery. However, the arbitration rules and regulations provided for depositions as a matter of right and depositions based upon a showing of reasonable need 9 U.S.C.A. S 1 et seq. | Did the Federal Arbitration Act (FAA) create rules of contract construction favoring arbitration? | 00116.docx | LEGALEASE 00118409-LEGALEASE 00118409 | Condensed, SA, Sub 0.14 | 0.14 | 0 | 1 | 1 | 1 | |
| 19821 | State v. Windham, 288 Ala. 608 | 148+1 | The power of eminent domain is derived from the sovereignty of the state, and constitutional provisions and the statutes enacted pursuant thereto, requiring the payment of just compensation for the taking of private property for public use, or a limitation on the power, is not a grant thereto, The basic constitutional principle is that there must be an actual taking of property or property rights before compensation is required. Ridings v. State Roads Commission, 249 Md. 395, 240 A.2d 236 (1968). | Power of eminent domain is derived from sovereignty of the state, and constitutional provision and statutes enacted pursuant thereto, requiring payment of just compensation for taking of private property for public use or limitation on the power, is not a grant thereto. | What is the concept of eminent domain derived? | 00124?.docx | LEGALEASE 00118298-LEGALEASE 00118299 | SA, Sub | 0.46 | 0 | | 1 | | |
| 19822 | Jordan v. Town of Canton, 265 A.2d 96 | 148+45 | The constitutional requirements apply to police power statutes as well as to the exercise of eminent domain. The exercise of the police power with such exercise of the police power as conversion to a limited access highway, created on an existing highway, may result in the taking by the state. Nevertheless, the compensation principle had application. In Welsh v. City of Providence (1950) 77 R.I. 192, 74 A.2d 861, 85s, the statute authorized a municipality to lay out and construct a highway in certain designated public ways, The court held the statute invalid "in so far as it purports to authorize the closing of a street to vehicular traffic without affording to abutters thereon compensation and due process of law." We note that in our own statutory provisions for the creation of "controlled access highways," specific provision is made for the taking of "existing pavements of access' and the payment of compensation therefor. 23 M.G.S.A. Sec. 183. The statute could not possibly be considered such a provision to be essential in order to satisfy the requirements of Art. I, Sec. 21. | When all reasonable access to public way has been destroyed, property right has been "taken" within meaning of constitutional prohibition against taking private property for public uses without just compensation. M.R.S.A.Const. art. 1, S 21. | Is there a constitutional requirement that private property not be taken without just compensation? | Eminent Domain - Memo 45 - RK.docx | LEGALEASE 00005524-LEGALEASE 00005527 | Condensed, SA, Sub 0.78 | 0.78 | 0 | 1 | 1 | | |
| 19823 | United States ex rel. Cain v. Salish Kootenai Col., 862 F.3d 939 | 209+103 | The Court's reasoning in Stevens is equally applicable here. Although we no longer consider tribal sovereignty as absolute, we continue to recognize Indian tribes as sovereign entities. See Nevada v. Hicks, 533 U.S. 353, 361, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (Though tribes are often referred to as sovereign entities, it was long ago that the Court departed from Chief Justice Marshall's view that the laws of [a State] can have no force within reservation boundaries. (internal quotation marks omitted)); see also Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) (Kiowa Tribe Comm'n v. Citizens Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991)) Thus, like the States, Indian tribes are not foreign nations but recognized Indian tribes, is presumptively excluded from the term "person." See, e.g. Inyo County v. Paiute-Shoshone Indians, 538 U.S. 701, 711, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003) (holding that a tribe was not a "person" who could bring r 1983 action). Nothing in the FCA's text or legislative history permits this presumption. See Stevens, 529 U.S. at 787-90, 120 S.Ct. 1858 (discussing features of the FCA's statutory scheme that suggest governmental entities are not subject to qui tam liability). Tribes may be further incentivized to prevent fraud. See Stevens, 529 U.S. at 787-88, 120 S.Ct. 1858. | Federally recognized Indian tribe is sovereign entities, and thus are presumptively excluded from term "person." | Can a tribe qualify as a person? | 00949.docx | LEGALEASE 00118308-LEGALEASE 00118310 | Condensed, SA, Sub 0.93 | 0.93 | 0 | 1 | 1 | | |
| 19824 | Surrey v. State, 4 Tenn. Crim. App. 542 | 207+4 | It is the position of the appellant that the phrase, "I tell him did it" or, "he did it to me" does not prove beyond a reasonable doubt that sexual intercourse occurred between father and daughter. Asmuch as incest must involve marriage or carnal knowledge of the accused with this kin in degree and distinguished conduct clearly relations so as such as T.C.A. 39-705, it is axiomatic that sexual penetration is an essential ingredient of the crime. Thus it was incumbent upon the State to prove intercourse and against them." Stevens, 529 U.S. at 788 n.9, 120 S.Ct. 1858. | Sexual penetration is essential element of incest. T.C.A. S 39-705. | Is sexual penetration an essential element of incest? | Incest - Memo 34 - JS.docx | ROSS-003134019-ROSS-003134020 | Condensed, SA, Sub 0.87 | 0.87 | 0 | | 1 | 1 | |
| 19825 | Flotech v. E. Du Pont de Nemours Co., 627 F.Supp. 358 | 241+55(6) | Massachusetts courts have applied the continuing tort theory in nuisance and trespass actions. In the first Circuit recognized in White's Farm Dairy, Inc. v. DeLaval Separator Co., 433 F.2d 618, 67 (1970), Massachusetts courts have demonstrated a reluctance to extend the theory further." This "reluctance" is based upon a strong policy, with preference to adhere to the purposes and policies of the statute of limitations. See Chang v. Dell Employee Credit Associates, 38 Mass. 137, 445 N.E.2d 909 (1983); Wells v. New Haven & Northampton Co., 151 Mass. 46, 23 N.E. 724 (1890); Akers v. Warner, 16 Mass.App.223, 450 N.E.2d 661 (1983) | Continuing tort doctrine did not apply to claim of product defamation so as to allow the action to proceed, but more than five years after the allegedly defamatory statement was made, even though there was republication of the statement M.G.L.A. c. 260, S 2A. | When does the doctrine of continuing tort apply in defamation? | 00367.docx | LEGALEASE 00118492-LEGALEASE 00118494 | Condensed, SA, Sub 0.6 | 0.6 | 0 | 1 | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19826 | Barr v. Essex Trades Council, 53 N.J. Eq. 101 | 92+1114 | Are the defendants, then, privileged knowingly to inflict this injury on the complainants. 8 Harv. Law Rev. 1. A man's business is property. By the first section of the bill of rights of the constitution of New Jersey, the right of acquiring, possessing, and protecting property is classed, as a natural and inalienable right which all men have, with those of enjoying and defending life and liberty, and of pursuing and obtaining safety and happiness. This is an echo of Magna Charta, repeated in the Declaration of Independence. Mr. Justice Bradley, in the Slaughterhouse Cases, 16 Wall. 36, at page 116, says: "For the preservation, exercise, and enjoyment of these rights [life, liberty, and the pursuit of happiness], the individual citizen, as a necessity, must be left free to adopt such calling, profession, or trade as may seem to him most conducive to that end. Without this right he cannot be a freeman. This right to choose one's calling is an essential part of that liberty which it is the object of the government to protect, and a calling, when chosen, is a man's property and right. Liberty and property are not protected where these rights are arbitrarily assailed." Mr. Barr's business of publishing the paper, with the incidents of its circulation and advertising, was as much his property as were the type and presses upon which the paper was printed. A harmful interference with the circulation and with the advertising in his paper was therefore an injury to his property. It was Mr. Barr's personal right, without interference or dictation from any person or persons, to employ in the prosecution of his business such mechanical appliances as were safe and healthful, and to employ in the production of his paper such persons and lawful means as he might choose. It is said in Hilton v. Eckersley, 6 El & Bl., at page 74: "It is the privilege of a trader in a free country, in all matters not contrary to law, to regulate his own mode of carrying it [his business] on according to his own discretion and choice." | A person's business is property, entitled under the constitution to protection from unlawful interference. Every person has a right, as between his fellow citizens and himself, to carry on his business, within legal limits, according to his own discretion and choice, with any means which are safe and healthful, and to employ therein such persons as he may select; and every other person is subject to the correlative duty arising therefrom, to refrain from any obstruction of the fullest exercise of this right, which can be made compatible with the exercise of similar rights by others. | Does a person have a legal right to dispose of his own labor as he wishes? | 05368.docx | LEGALEASE-00080822-LEGALEASE-00080824 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 19827 | Scofield v. State, Dep't of Nat. Res., 276 Neb. 215 | 148+69 | The Nebraska Constitution provides that the "property of no person shall be taken or damaged for public use without just compensation." The 5th Amendment to the federal Constitution, made applicable to the states through the 14th Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." Nebraska's constitutional right to just compensation includes compensation for damages occasioned in the exercise of eminent domain and, therefore, is broader than the federal right, which is limited only to compensation for a taking. We have noted, however, that notwithstanding the difference between the federal and state Constitutions, we have analyzed the state constitutional issue of whether there has been a regulatory taking or damage for a public use by treating federal constitutional case law and our state constitutional case law as coterminous. | State constitutional right to just compensation includes compensation for damages occasioned in the exercise of eminent domain and, therefore, is broader than the federal right, which is limited only to compensation for a taking. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 21. | "With regard to regulatory taking, is federal constitutional case law and state constitutional case law coterminous?" | Eminent Domain -Memo 64- VP.docx | ROSS-003282479-ROSS-003282480 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 19828 | U.S., for & on behalf of Portland Const. Co. v. Weiss Pollution Control Corp., 532 F.2d 100 | 25T+196 | 9 U.S.C. s 3 (emphasis supplied). The provisions of this Act apply to suits brought pursuant to the Miller Act. United States for the use of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d 705 (2d Cir. 1966); Agostini Bros. Bldg. Corp. v. United States for the use of Virginia-Carolina Electrical Works, Inc., 142 F.2d 854 (4th Cir. 1944). The Arbitration Act and these cases necessarily recognize that there is no nconsistency between arbitration and a subsequent suit on the Miller Act bond. If the two were inconsistent, a dismissal not a stay would be in order. | Where subcontractor, which had demanded arbitration with contractor and which had also filed Miller Act suit against the contractor and its Miller Act surety, consented to stay of the federal proceedings pending the outcome of the arbitration and had conceded that no Miller Act remedy would be available if the arbitrators resolved the dispute in favor of the contractor, the Miller Act suit should not have been dismissed but rather should have been stayed pending the outcome of the arbitration. Miller Act, S 1 et seq., 40 U.S.C.A. S 270a et seq. | Does the Federal Arbitration Act apply to suits and proceedings brought under the Miller Act? | 001720.docx | LEGALEASE-00118765-LEGALEASE-00118766 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 19829 | Lattanzio v. COMTA, 481 F.3d 137 | 46H+86 | Further, the Supreme Court has acknowledged that, "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. " 1654 ... does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." Rowland, 506 U.S. at 202, 113 S.Ct. 716 (footnote omitted). | Limited liability company (LLC) could appear in federal court only through licensed attorney, regardless of fact that LLC had sole member and that its sole member/executive director, who was not licensed attorney, sought to represent it. 28 U.S.C.A. S 1654. | Does a corporation or a partnership need to be represented by a licensed attorney? | Partnership - Memo 52 - RK.docx | ROSS-003285113-ROSS-003285114 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 19830 | State v. Bale, 512 N.W.2d 164 | 207+5 | In South Dakota incest is defined as "an act of sexual penetration accomplished with any person[s]" "who are not legally married and who are within degrees of consanguinity within which marriages are by the laws of this state declared void[.]" SDCL 22"22"1(6). | Sexual penetration between adoptive parent and child did not constitute incest under statute limiting crime of incest to sexual penetration between those related by consanguinity; adoption did not create legal consanguinity between adoptive parent and child. SDCL 22-22-1(6). | Is sexual penetration an essential element of incest? | 001292.docx | LEGALEASE-00118528-LEGALEASE-00118529 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 19831 | Statham v. Statham, 282 Ala. 322 | 157+1 | While this court takes judicial knowledge of its own records, and the circuit court of its records (Lovejoy v. State, 32 Ala.App. 110, 22 So.2d 532(2), cert. den. 247 Ala. 48, 22 So.2d 537; 9 Ala.Dig., Evidence, Key Number Symbol 43(2), p. 61), we do not think the trial court in passing on the demurrer should read such judicially known record into the fact of the complaint so as to show a prior judicial determination of the custody. The argued demurrer to the above aspect was properly overruled. Judicial notice is a matter of evidence, and not pleading. 31 C.J.S. Evidence s 6, p. 822. | Judicial notice is a matter of evidence and not pleading. | Is judicial notice a matter of pleading? | Pleading - Memo 61 - ANG.docx | ROSS-003287455-ROSS-003287456 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19832 | United States v. Adair, 723 F.2d 1394 | 209+362 | Foremost among these is the principle that "the treaty is not a grant of rights to the Indians, but a grant of rights from them"a reservation of those not granted." United States v. Winans, 198 U.S. 371, 381, 25 S.Ct. 662, 664, 49 L.Ed. 1089 (1905); accord Washington v. Fishing Vessel Ass'n, 443 U.S. 658, 678, 680"81, 99 S.Ct. 3055, 3070"71, 3071"72, 61 L.Ed.2d 823 (1979); United States v. Wheeler, 435 U.S. 313, 327 n. 24, 98 S.Ct. 1079, 1088 n. 24, 55 L.Ed.2d 303 (1978). Further, Indian treaties should be construed as the tribes would have understood them. Choctaw Nation v. Oklahoma, 397 U.S. 620, 631, 90 S.Ct. 1328, 1334"35, 25 L.Ed.2d 615 (1970); United States v. Top Sky, 547 F.2d 486, 487 (9th Cir.1976); Kimball I, 493 F.2d at 566 & n. 7 (treaty construed as Indians would have understood it given practices and customs of tribe at time treaty was negotiated); see also Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 551"54, 8 L.Ed. 483 (1832). And any ambiguity in a treaty must be resolved in favor of the Indians. Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 208 n. 17, 98 S.Ct. 1011, 1020 n. 17, 55 L.Ed.2d 209 (1978); Bryan v. Itasca County, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112"13, 48 L.Ed.2d 710 (1976); Confederated Salish & Kootenai Tribes v. Namen, 665 F.2d 951, 962 (9th Cir.), cert. denied, 459 U.S. 977, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982). A corollary of these principles, also recognized by the Supreme Court, is that when a tribe and the Government negotiate a treaty, the tribe retains all rights not expressly ceded to the Government in the treaty so long as the rights retained are consistent with the tribe's sovereign dependent status. See Oliphant v. Suquamish Indian Tribe, 435 U.S. at 208, 98 S.Ct. at 1020"21; United States v. Ahtanum Irrigation Dist., 236 F.2d 321, 326 (9th Cir.1956), cert. denied, 352 U.S. 988, 77 S.Ct. 386, 1 L.Ed.2d 367 (1957). | Because Indian tribe's treaty right to hunt and fish was not transferrable, no subsequent transferee could acquire that right of use or reserved water necessary to fulfill that use. | "Is a treaty with Indian tribes, a grant of rights to them or grant of rights from them?" | 001777.docx | LEGALEASE-00118907-LEGALEASE-00118909 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 19833 | State In Interest of T. J., 219 So.3d 414 | 302+4 | In this case, we must determine if the "Motion to Modify Disposition" filed on behalf of J.T. constitutes a motion to modify a disposition pursuant to La.Ch.Code art. 909 or a motion to revoke probation pursuant to La.Ch.Code art. 913. It is the content of the pleading, rather than its caption, that determines its nature. State ex rel. Daley v. State, 97-2612 (La. 11/7/97), 703 So.2d 32. Pursuant to La.Ch.Code art. 909, the juvenile court retains the authority to modify a disposition as long as the disposition is still in effect:Except as provided for in Article 897.1 [juvenile life delinquent acts and armed robbery], after the entry of any order of disposition, the court retains the power to modify it, including changing the child's legal custody, suspending all or part of any order of commitment, discharging conditions of probation, or adding any further condition authorized by Article 897(B) or 899(B). It may also terminate an order of disposition at any time while it is still in force. | It is the content of the pleading, rather than its caption, that determines its nature. | What determines the nature of a pleading? | 001867.docx | LEGALEASE-00118878-LEGALEASE-00118879 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 19834 | W. Elec. Co. v. Cooley, 79 Cal. App. 770 | 145+8 | There can be little doubt that a power line constitutes property appurtenant to the land, that it is a creation or an improvement entering into the value of the land just as permanently and with the same valuable characteristics as other objects mentioned. All of the terms used in the statute, which we have quoted, relate to material improvements attached to or having to do with soil, which would lead to the conclusion that a power line which, necessarily, in the erection of its poles must be attached to the soil, is within the definition of a structure erected thereon just as much as a house or a barn. The use is different, to be sure, but the ultimate purposes are the same"the enhancement of the value of the land and the enabling of the owner thereof to subsist thereon in comfort. | Electric power line is "structure," within statute giving lien on building or other structure. Code Civ.Proc. S 1183. | Are electric poles supporting power lines considered structures? | Electricity - Memo 22 - RK.docx | LEGALEASE-00007497-LEGALEASE-00007499 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 19835 | Black Oak Energy v. F.E.R.C., 725 F.3d 230 | 145+11.3(4) | Although we remand, we do so without vacating the Recoupment Orders. The decision to vacate depends on two factors: the likelihood that "deficiencies" in an order can be redressed on remand, even if the agency reaches the same result, and the "disruptive consequences" of vacatur. Allied"Signal v. Nuclear Regulatory Comm'n, 988 F.2d 146, 150"51 (D.C.Cir.1993). We find it plausible that FERC can redress its failure of explanation on remand while reaching the same result. See, e.g., Lone Mountain Processing, Inc. v. Sec'y of Labor, 709 F.3d 1161, 1164 (D.C.Cir.2013) ("The Commission may well arrive at the same result it reached originally, but it must do so with more clarity than it showed in the first instance." (citation omitted)). And vacatur in this case would certainly be disruptive because it would prompt yet another refund, which would require yet another charge on uninvolved market participants. As we have noted, because PJM is a non-profit, the only way it can obtain funds to pay out a refund is by charging its market participants to cover them. See Black Oak Energy, LLC, 139 FERC " 61,111, 61,783. If FERC, considering all the factors, ultimately concludes that recoupment was the proper path, the whole cycle would repeat itself, imposing significant transaction costs on PJM, its members, and the virtual marketers themselves. Faced with those prospects, we deem it better to preserve the status quo as FERC reconsiders its Recoupment Orders. However, we emphasize that FERC's opportunity to reconsider is not an invitation to do nothing. See In re Core Commc'ns, Inc., 531 F.3d 849, 862 (D.C.Cir.2008) (Griffith, J., concurring). The Commission may not obtain the result it seeks through inaction when it has failed to justify that result with reasoning. | Federal Energy Regulatory Commission (FERC) orders approving a system in which the transmission loss surplus would be allocated to market participants based on the amount they paid for the fixed costs of the transmission grid were not arbitrary and capricious, even though they discriminated against virtual marketers, electricity traders who never actually transmitted or took delivery of electricity; FERC reasonably determined that the virtual marketers were not similarly situated to the rest of the market participants because unlike load-serving entities, arbitrageurs balanced each purchase transaction with a sales transaction, and, thus, since their business interests were purely speculative, FERC explained, the virtual marketers posed a threat as potential market manipulators. Electric Utility Companies Act, S 205, 16 U.S.C.A. S 824d. | What are the factors which depend upon the decision to vacate a Federal Energy Regulatory Commission (FERC) order? | 002230.docx | LEGALEASE-00119311-LEGALEASE-00119312 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19836 | Weeks v. Pers. Bd. of Review of Town of N. Kingstown, 118 R.I. 243 | 268+185(3) | A body may be deemed to carry out judicial functions in one sense if it is under a duty to follow procedures which are normally thought of as judicial in nature. In Aniello v. Marcello, 91 R.I. 198, 162 A.2d 270 (1960), we held that a statute empowering an administrative agency to remove a public employee "for cause" indicated a legislative intent that the agency act "in a judicial, or at least in a quasi-judicial, capacity." Id. at 207, 162 A.2d at 274. By this we meant, the opinion goes on to explain, the employee must be given a hearing, and substantial grounds for dismissal established by legally sufficient evidence must be produced. But we did not say that a court could constitutionally perform the agency's function. A legislative direction to an agency to follow certain procedures cannot enlarge the constitutional power of the judiciary. As was said in a related case involving the removal of teachers:"The field of judicial inquiry is not enlarged in the case of discharge of teachers for cause, essentially an executive function, by the fact that a legislative act requires such court trappings as formal charges, notice, and a hearing." State ex rel. Ging v. Board of Educ., 213 Minn. 550, 570, 7 N.W.2d 544, 555 (1942). | Administrative proceedings to discipline or remove police officers for cause are judicial or quasi-judicial in nature; statute providing for trial de novo in superior court for certain appeals by police officers was therefore constitutional and did not violate doctrine of separation of powers by conferring on courts authority over executive or administrative functions. Gen.Laws 1956, SS 9-24-27, 45-20-1.1. | What does a statute empowering an administrative agency to act for cause indicate? | Administrative Law - Memo 170 - RK.docx | ROSS-003284501-ROSS-003284503 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 19837 | Walley v. Pierce, 86 So. 3d 918 | 92+4396 | The Walleys argue that the United States Supreme Court has recognized a "presumption that fit parents act in the best interests of their children." Troxel v. Granville, 530 U.S. 57, 63, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). They also point out that "[p]arents with custody have a paramount right to control the environment, physical, social, and emotional, to which their children are exposed." Stacy, 798 So.2d at 1280 (" 23). They further argue that "[i]nterference with that right based upon anything less than compelling circumstances is not the intent of the visitation statute." Id. As noted above, there has been no allegation that the Walleys are unfit parents. | Trial court's application of the grandparent-visitation statute to permit visitation between grandparents and children did not violate parents' right to due process, even though there was no finding that parents were unfit, and parents objected to unsupervised visitation, where due consideration was given to parents' concerns, and grandparent-visitation statute did not permit parents to deny reasonable visitation with minor children when it was in their best interest. U.S.C.A. Const.Amend. 14; West's A.M.C. S 93-16-3. | Do parents with custody have a paramount right to control the environment to which their children are exposed? | Child Custody - Memo 11 - ANG.docx | ROSS-003286056-ROSS-003286057 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 19838 | Jacobson v. Mut. Ben. Health & Accident Ass'n, 73 N.D. 108 | 13+1 | The term "cause of action" and the term "claim" are substantially synonymous. People's Mercantile Co. v. Farmers' Cotton Finance Corp., 38 N.M. 237, 239, 31 P.2d 252, 253. See also Riddoch v. State, 68 Wash. 329, 123 P. 450, 451, 42 L.R.A.,N.S., 251, 253, Ann.Cas.1913E, 1033. | The terms "cause of action" and "claim" are substantially synonymous. | "Is a ""cause of action"" similar to a claim?" | Action - Memo 9 - MS.docx | LEGALEASE-00007705-LEGALEASE-00007706 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 19839 | Linder v. Thrifty Oil Co., 23 Cal. 4th 429 | 287+35.71 | The Credit Card Act provides in relevant part: "No retailer in any sales ... transaction with a consumer may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash.... A retailer may, however, offer discounts for the purpose of inducing payment by cash ... or other means not involving the use of a credit card, provided that the discount is offered to all prospective buyers." (" 1748.1, subd. (a), italics added.) As the Court of Appeal observed below, there are no cases interpreting this provision. It is Linder's position, based upon the italicized language, that Thrifty has violated the Credit Card Act by failing to offer its cash discount at all of its gas stations. Conversely, Thrifty argues that each retail station must be viewed separately and that, so long as the cash discount is openly displayed and offered to all prospective buyers at the stations where it is available, it is immaterial that other stations offer no discount at all. Presented with these two opposing viewpoints, the trial court evidently rejected Linder's construction of the statute and denied certification in part on that basis. The Court of Appeal affirmed, finding that section 1748.1 "suggests that, as a matter of law, Linder cannot prevail on her surcharge claim." | Trial court failed to give adequate consideration to benefits of a possible class action in determining whether to certify class in action brought by plaintiff who alleged that oil company had violated Song-Beverly Credit Card Act, and had committed other unfair business practices, where court focused narrowly on each putative class member's potential recovery on claim that company had imposed unlawful surcharges on credit card purchases, and did not consider whether class action was only effective way to halt and redress alleged wrongdoing, or to prevent unjust advantage to oil company. West's Ann.Cal.C.C.P. S 382. | Can a surcharge be imposed on a credit card? | Consumer Credit - Memo 5 - MS.docx | ROSS-003288620-ROSS-003288621 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 19840 | Flint Elec. Membership Corp. v. Barrow, 271 Ga. 636 | 145+11(1) | OCGA " 46"3"200 provides:An electric membership corporation may serve any one or more of the following purposes:(1) To furnish electrical energy and service;(2) To assist its members in the efficient and economical use of energy;(3) To engage in research and to promote and develop energy conservation and sources and methods of conserving, producing, converting, and delivering energy; and(4) To engage in any lawful act or activity necessary or convenient to effect the foregoing purposes.Relying upon OCGA " 46"3"200, specifically subsections (2), (3) and (4), Flint asserts that the GEMCA permits an electric membership corporation to sell all kinds of energy, not just electrical energy. We disagree. As its name implies, the original GEMCA was enacted to encourage "rural electrification." Ga. L.1937, p. 644. It was not aimed at other forms of energy. The amended act, OCGA " 46"3"170 et seq. (Ga.L.1981, p. 1587), does not alter the original aim. | Electric membership corporation incorporated under the Electric Membership Corporation Act was precluded from furnishing or selling propane gas to its members. O.C.G.A. S 46-3-201(b)(7). | What purposes may an electric membership corporation serve? | Electricity - Memo 31 - RK.docx | ROSS-003311400-ROSS-003311402 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 19841 | Keene Valley Ventures v. City of Richland, 174 Wash. App. 219 | 115+110 | In awarding damages for injury to real property, including cases of inverse condemnation, a court must first determine if the damage is temporary or permanent. Harkoff v. Whatcom County, 40 Wash.2d 147, 152, 241 P.2d 932 (1952). Permanent damage is valued by determining the market value of the property before and after the damage. Id. Temporary damage is valued in accordance with the cost of restoring the property. Id. Whether damage is permanent or temporary is a factual question. Barci v. Intalco Aluminum Corp., 11 Wash.App. 342, 355, 522 P.2d 1159 (1974). | "Permanent damage" to real property is valued by determining the market value of the property before and after the damage. | How is permanent damage valued under the provisions of eminent domain? | Eminent Domain -Memo 91-VP.docx | ROSS-003298655-ROSS-003298656 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | | 9,029 |
| 19842 | State v. Tracy, 539 N.W.2d 197 | 187+7 | In this case there is along every section line a public highway located by operation of law unless that section line has been vacated or abandoned by lawful action of an authorized public officer. Board in Vacker SDCL 31-18.1. SDCL 31-18.2 provides the width of a section line section line highway is sixty-six feet, thirty-three feet on each side of the section line. In Thormodsgard v. Wayne Township Bd. of Supervisors 310 N.W.2d 157 (S.D.1981), we held a section line highway is present wherever the section line highway has not been vacated and that abandonment of a statutory section line highway cannot be established solely by evidence that the highway has never been opened, improved, or traveled. As long as the section line has not been legally vacated, it is a right to travel over it. Berney v. Burlington Northern R. Co. 490 N.W.2d 726, 731 (S.D.1991). (cert. denied by Equibank v. S.D. 507 U.S 954, 113 S.Ct. 1365, 122 L.Ed.2d 661 (1993); Gustafson v. Gustafson 74 S.D. 538, 542, 56 N.W.2d 782, 784 (1953); Lawrence v. Ewert, 21 S.D. 580, 583, 114 N.W. 709, 710 (1908)). | Fact that section line is not between property partially contained form trust did not mean that line was "improved" for vehicular travel, within meaning of creating and holding that improved section line even open to barriers; though farm manager of property did not concede offense of interference with beneficial hunting by killing party hunting from section line in that they were trespassing; statute contemplated improvement such as intentional enhancement of natural terrain's utility for travel or adaptation which would permit travel where it was not previously possible, as common use of section line, not over farming or crossing of piece of machinery heavy enough to leave tracks. SDCL 41-9-1, 41-9-11. | Can the abandonment of a section line highway be established by evidence that the highway has never been open or improved? | 003076.docx | LEGALEASE 0019556-LEGALEASE 0019557 | Condensed_SA | 0.36 | 0 | 1 | | 1 | 1 |
| 19843 | People v. Yezek, 336 Ill. App. 3d 84 | 110+78(1.5) | In People v. Pavlik (1988), 174 Ill App. 848, 124 Ill Dec. 311, 317/12, 529 N.E.2d 28, 28/29, defendant grabbed the victim by the neck, told her to get into a car, hit her head against the car, struggled with her, chased her across a parking lot, told her she would be hurt, and finally reached his hand under her bra and touched her breast. Pavlik held that above conduct supported a conviction of unlawful restraint and criminal sexual abuse but both convictions cannot stand, and the sentence should be for the more serious offense, the unlawful restraint. People v. Shockhowt (1963), 27 Ill 2d 33, 189 N.E.2d 295-301. [Pavlik, 174 Ill App 3d at 897/72, 124 Ill Dec at 177, 529 N.E.2d at 29.] In the instant case, the charges were separate offenses, neither was an included offense of the other. The charges were incest and rape, which had a common element a sexual act of penetration. The incest required proof of force and lack of consent, and incest required proof of relationship. Shockhowt, 27 Ill 2d at 195, 188 N.E.2d at 300. | Defendant could not be convicted of both unlawful restraint and criminal sexual abuse, and only conviction for sexual abuse would be allowed to stand, where restraint was slight and dominant offense was the sexual abuse. S.H.A. ch. 38, ¶ 10-3, 12-15. | What is the common denominator of flexible rape and incest? | 05259.docx | LEGALEASE 0008087-LEGALEASE 0008088 | Condensed_SA_Sub | 0.76 | | | | 1 | 1 |
| 19844 | Elco of New Hampshire v. McIsaac, 329 N.H. 118 | 233+1001 | Furthermore, the language in the lease expressly provides for the sale and consumption of alcoholic beverages, although it does not restrict sales "only" for such purpose, or "for no other purpose whatsoever." It impliedly restricts the use of the premises to retail sales purposes. "Express words of restriction are not necessary, where the language used shows that no other use was to be permitted than that specified." Colonial Operating Corp. v. Hannan Sales & Serv., Inc., 178 Misc. 879, 34 N.Y.S. 2d 116, 118 (1942) (quoting Kaiser v. Zeigler, 115 Misc. 281, 284, 187 N.Y.S. 638, 640 (1921)). Beverages offered for sale to restaurant patrons may either be non-alcoholic or alcoholic beverages. There are no other available beverage alternatives. When the lessor specified in the lease that the lessee could sell non-alcoholic beverages, the lessor manifested his intent to allow the sale and consumption of beverages on the premises to that variety of beverages only. By making clear its intention to have only non-alcoholic beverages sold on the premises, it is reasonable to conclude that the lease, by implication, at the very least, sought to prohibit the sale and consumption of alcoholic beverages. | When restrictions in leases are express or clearly implied from language of lease they will be recognized. | Should express language from which a restriction can be implied be known to establish restriction in lease? | 0065.docx | LEGALEASE 0008472-LEGALEASE 0008474 | Condensed_SA | 0.91 | 0 | | | 1 | 1 |
| 19845 | Faber v. Menard, 267 F. Supp 2d 661 | 25T+140 | Under Iowa law, court would never arbitration clause in employment agreement to its entirety, rather than sever only unconscionable provisions relating to fees and costs, where unconscionable provisions infected the entire arbitration scheme and thus tainted central purpose of clause. Lytle v. CitiFinancial Services, Inc., 810 A.2d 643, 658 (Pa.Super.2002) ("this Court will not sever unconscionable provisions of the agreement and enforce the remainder of the agreement"). The majority of jurisdictions that have addressed the issue make an arbitration agreement unconscionable. See Lytle v. 269 A.2d in 947 (citing Childress v. Haun's Union., 1993 14 751, 737 (9th Cir.1999)). However, the court cited the provision in the record before us that undue harshness exists in the terms of the Agreement in light of Missouri law governing unconscionability. See Com. Bancorp v. Thompson, No. 970, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000) (holding the party seeking to invalidate an arbitration agreement as unconscionable agreement where the reason bears the burden of proof and the possibility of such party incurring prohibitive costs is too speculative to invalidate an arbitration agreement where the reason bears only slightly the agreement's silence on the subject of arbitration costs). | Under Iowa law, court would never arbitration clause in employment agreement to its entirety, rather than sever only unconscionable provisions relating to fees and costs, where unconscionable provisions infected the entire arbitration scheme and thus tainted central purpose of clause. | Does a substantial arbitration make an arbitration agreement unconscionable? | 003565.docx | LEGALEASE 0010047-LEGALEASE 0010048 | Condensed_SA_Sub | 0.77 | | 1 | | 1 | 1 |
| 19846 | Dixie Elec. Membership Co-op v. Louisiana Pub. Serv. Comm'n, 509 So. 2d 1002 | 145+11.5(1) | The orders of the Public Service Commission "are entitled to great weight and are not to be overturned absent a showing that they are arbitrary or an abuse of its authority." Second, "courts should act slowly in substituting their own view of those questions for those of the Commission's and give great weight to the findings and order of the Commission, which continuing failure of proof in the absence of a clear showing of an abuse of power." Gulf States Utilities Co. v. Louisiana Public Service Commission, 364 So.2d 1266, 1268 (La.1978). Finally, decisions of the Public Service Commission should not be disturbed unless found to be arbitrary or unsupported by evidence." Related to this standard of review is the rule that orders of the commission are presumed legal and proper. Also, a controlling rule is that the burden of proof to show that the order of the Public Service Commission, 221 So.2d 504, 510 (La.1969). | Public Service Commission had rate-making authority to order electric cooperative to refund term to its customers, which it had incurred by way of refund from its wholesale supplier, even though at time cooperative received refund from wholesaler, Commission had chosen not to regulate electric cooperatives, where continuing failure of cooperatives to refund money to its customers constituted "current practice" which justified Commission's regulatory oversight under its primary remaining authority. LSA-Const. Art. 4, § 21(B); LSA-R.S. 45:1163. | Under what standard of review may a Public Service Commission's (PSC) decisions be overturned by the court? | 002700.docx | LEGALEASE 0020191-LEGALEASE 0020192 | Condensed_SA_Sub | 0.41 | | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 23,876 | 9,029 |
| 19847 | Charles T. Main Int'l v. Khuzestan Water & Power Auth., 651 F.2d 800 | 1700=1868 | If and where plaintiff, an engineering firm with claims against Iran, could establish a "taking" for which compensation was due by reason of the President's settlement of the hostage crisis, its remedy would lie in the court of claims. 28 U.S.C.A. §§ 1346, 1491 1.2202. | There may well be situations where the President's exercise or "settlement" of a claim against a foreign government, without the consent of the claimant, would constitute a "taking" of private property for a public "use." [...] | Does the President's settlement of a claim against a foreign government constitute a taking of private property for a public use? | 00728.docx | LEGALEASE-00120215-LEGALEASE-00120216 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 19848 | Williams v. United States, 717 So.2d 902 | 217=2 | Defamation is defined under Texas law as intentional tort. | Under Texas law, determination of scope of employment is applied under the theory of respondeat superior. "Employers may be held liable for negligent acts by their employees under a theory of respondeat superior only if the employee's actions are in the course and scope of their employment..." [...] | Is defamation a defined tort? | Libel and Slander - 211b - 26.docx | ROSS-003310795-ROSS-003310797 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | 1 |
| 19849 | Francis v. Allstate Ins. Co., 869 F.Supp.2d 663 | 379=153 | Under Maryland law, false light invasion of privacy occurs when one publicizes a matter concerning another that places the other before the public in a false light if (a) the false light would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed; like defamation, it requires the defendant's voluntary communication and, thus, cannot be an accident. | Guided by these concepts, courts have found that defamation under California law cannot be an "accident" for purposes of insurance liability. A defendant must intend to publish a defamatory statement... [...] | Can defamation be caused by accident? | 002909.docx | LEGALEASE-00119881-LEGALEASE-00119882 | Condensed, SA | 0.12 | 0 | 1 | 0 | 1 | 1 |
| 19850 | Chancely v. Bailey, 37 Ga. 532 | 384=1 | Treason is offense against political sovereignty of government. | We have previously stated that the ultimate political sovereignty of the Federal Government resides in the United States of America. [...] | Is treason in offense against the political sovereignty of government? | 00366.2.docx | LEGALEASE-00120270-LEGALEASE-00120273 | SA, Sub | 0.99 | 0 | 1 | 1 | 1 | 1 |
| 19851 | In re Badkss, 527 B.R. 692 | 366=1 | Under California law, for a claim to be subject to subrogation, it must be assignable. West's Ann.Cal.Civ.Code §§ 954, 954. | Before ruling headlong into the various state law insurance cases cited in the competing briefs, this court first considers California law relating to subrogation. For a claim to be subject to subrogation, it must be assignable. [...] | Should a claim be assignable for it to be subject to subrogation? | Subrogation - Memo 96 VF C.docx | ROSS-003310778 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19852 | Hutchinson v. Proxmire, 431 F. Supp. 1311 | 237+101(4) | This important fact appears from the affidavits, exhibits, and excerpts from depositions that support the motion for summary judgment; and consequently, the question arises: has Dr. Hutchinson made a sufficient showing that there is a genuine issue of material fact with regard to actual malice on the part of Senator Proxmire; i. e., knowledge on his part of the falsity of what he said, or a reckless disregard by him of the truth, when he made the statements about which complaint is made? The showing of malice may not be presumed but must be proved by the plaintiff. Time, Inc. v. McLaney, 406 F.2d 565, 572 (5th Cir.), cert. denied, 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969). A bare allegation of malice, standing alone, is not sufficient to withstand a motion for summary judgment. Fram v. Yellow Cab Co., 380 F.Supp. 1314, 1335 (W.D.Pa.1974); Goldman v. Time, Inc., 336 F.Supp. 133, 138 (N.D.Cal.1971). Rule 56(e) of the Federal Rules of Civil Procedure requires a party opposing a motion for summary judgment to show specific facts, admissible in evidence, which establish that there is a genuine issue for trial. Moreover, under New York Times, the standard of proof plaintiff must meet at trial is more than a preponderance of evidence; it is a showing of defendant's actual knowledge of falsity or reckless disregard of the truth by " clear and convincing evidence." Vandenburg v. Newsweek, Inc., 507 F.2d 1024, 1026, 1029 (5th Cir. 1975); see New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, (1964); Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S.Ct. 2997, (1974). | In a libel action brought by a "public official" or a "public figure," required showing of malice may not be presumed but it must be proved by the plaintiff. | Should malice be presumed or proven? | 003354.docx | LEGALEASE-00120833-LEGALEASE-00120834 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 19853 | United States v. Mitchell, 463 U.S. 206 | 393+468(4) | Moreover, a fiduciary relationship necessarily arises when the Government assumes such elaborate control over forests and property belonging to Indians. All of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds). "[W]here the Federal Government takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties (unless Congress has provided otherwise) even though nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust fund, or a trust or fiduciary connection." Navajo Tribe of Indians v. United States, 224 Ct.Cl. 171, 183, 624 F.2d 981, 987 (1980). | Statute and regulations giving federal Government full responsibility to manage Indian forests and property for benefit of Indians established fiduciary relationship between Government and Indians, breach of which gave rise to substantive claim for money damages against Government. 25 U.S.C.A. SS 162a, 318, 323-325, 406, 407, 413; Indian Reorganization Act, S 6, 25 U.S.C.A. S 466; 28 U.S.C.A. SS 1491, 1505. | What is the basis of the trust responsibility the federal government owes to the Native Americans? | Indians - Memo 41 - BP.docx | LEGALEASE-00010667-LEGALEASE-00010668 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 19854 | In re Found. for Anglican Christian Tradition, 103 A.3d 425 | 75+3 | Still, Rawson argues that our common-law standing doctrine has been superseded by the Act, which he urges us to follow in determining whether donors of charitable gifts have standing. The Act, however, applies only to charitable trusts and not to charitable gifts. See Section 7702 of the Act, 20 Pa.C.S. " 7702 ("This chapter applies to express trusts, charitable and noncharitable, and trusts created pursuant to a statute, judgment or decree that requires the trust to be administered in the manner of an express trust."). Moreover, because the common-law doctrine is the same without regard to whether a charitable gift or trust is at stake, Rawson's argument that the trial court erred in relying on In re Milton Hershey School, 590 Pa. 35, 911 A.2d 1258, which involved a trust, is without merit.9 | The Uniform Trust Act applies to charitable trusts but not to charitable gifts. 20 Pa.C.S.A. S 7702. | Do constitutional and statutory provisions apply to charitable trust and charitable gifts? | 013338.docx | LEGALEASE-00121759-LEGALEASE-00121760 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 19855 | 2910 Georgia Ave. LLC v. D.C., 234 F. Supp. 3d 281 | 148+2.1 | In an attempt to escape application of the Penn Central factors, Plaintiff posits numerous alternative takings frameworks it believes this Court should apply to its takings claim. None of those frameworks apply. As an initial matter, Plaintiff's claim does not fit into any of the narrow categories of categorical or per se takings. Although the Supreme Court has held that most takings claims should be analyzed on the ad hoc basis set forth above, it has also "indicated that it will find a "categorical" or per se taking in two circumstances." Dist. Intown, 198 F.3d at 879. "The first circumstance includes regulations that result in "permanent physical occupation of property." " Id. (quoting Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 434"35, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982)). "The second circumstance includes regulations pursuant to which the government denies all economically beneficial or productive use of property." Id. (quoting Lucas, 505 U.S. at 1015, 112 S.Ct. 2886). Plaintiff argues that either or both of these circumstances are present here. | A court will find a categorical or per se taking in two circumstances: (2) regulations that result in permanent physical occupation of property; or (2) regulations pursuant to which the government denies all economically beneficial or productive use of property. U.S. Const. Amend. 5. | Is categorical taking a classification of regulatory takings? | 017385.docx | LEGALEASE-00121066-LEGALEASE-00121067 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 19856 | Cox v. State, 497 S.W.3d 42 | 2.31E+20 | The penal code defines neither the term "confine" nor "confining," and terms that are not defined in a statute are to be given their plain and ordinary meaning. See Courtemanche v. State, 507 S.W.2d 545, 546 (Tex.Crim.App.1974). Webster's defines the verb "confine" to mean "to hold within bounds," "to restrain from exceeding boundaries," or "to keep in narrow quarters: imprison." Webster's Third New International Dictionary 476 (2002); see also Holmes v. State, 873 S.W.2d 123, 126 (Tex.App."Fort Worth 1994, no pet.) (defining "confine" as "to shut up, imprison, immure, put or keep in detention, to relegate to certain limits"). Cox acknowledges in his brief that there is no time requirement for determining whether a restraint has taken place. Hines v. State, 75 S.W.3d 444, 447"48 (Tex.Crim.App.2002). Likewise, there is "no minimal requirement for restraint other than the interference with the victim's liberty [to] be substantial." Rogers v. State, 687 S.W.2d 337, 342 (Tex.Crim.App.1985) (quoting Rodriguez v. State, 646 S.W.2d 524, 527 (Tex.App."Houston [1st Dist.] 1982, no pet.)). | In a kidnapping prosecution, there is no minimal requirement for restraint other than the interference with the victim's liberty to be substantial. Tex. Penal Code Ann. S 20.01(1). | Does the time a victim is confined matter in a kidnapping case? | Kidnapping - Memo 9 - TH.docx | LEGALEASE-00011009-LEGALEASE-00011010 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 13857 | Haw v. Natl (Toquime, 550 F. Supp. 2d 1179 | 237+6(1) | Defamation per se occurs where a statement, is defamatory on its face, that is, without a defamation per se claim is actionable without proof of special damages. Defamation can take the form of slander or libel. The definition of that constitutes in "[a] statement [which] is defamatory on its face without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face." Cal. Civ. Code § 45a. A statement is libelous per se if it defames the plaintiff on its face, that is, without the need for extrinsic evidence to explain the statement's defamatory nature. "National libelous per se is a false and unprivileged publication by writing which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Washburn v. Wright, 261 Cal.App.2d 789, 797, 68 Cal.Rptr.224 (Cal. Ct. App. 1968) | When will statements or publications be libelous on its face? | 02 039.docx | LEGALEASE 00121613-LEGALEASE 00121615 | SA_Sub | 0.77 | | 0 | 1 | 1 | |
| 13858 | Albro v. Hawley, 6 Fla. 342 | 154+17.5 | As a general rule, the several owners of a merchant vessel or steamboat hold their respective interests as tenants in common, and not as copartners, and are governed by the principles applicable to that species of tenure, but in this rule there may be exceptions, either growing out of the express agreement of the parties, or to be implied from the nature and character of the business or adventure in which they may be about to engage. | How is a part-ownership of a ship different from the partnership? | Partnership - Memo 141 (9781634259767-89).docx | ROSS 002631875-ROSS 002631876 | SA_Sub | 0.66 | | 0 | 1 | 1 | |
| 13859 | Bender v. A.G. Edwards & Sons, 971 F.2d 698 | 25T+420 | See discrimination claim brought by stock brokerage's employee under Title VII was subject to compulsory arbitration under Federal Arbitration Act, plaintiff, individually, had entered into agreement whereby she promised to arbitrate all disagreements with the employer. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 9 U.S.C.A. §§ 1-16. | Are claims based on Title VII enforceable under the FAA? | 007092.docx | LEGALEASE 00122416-LEGALEASE 00122417 | Condensed_SA_Sub | 0.73 | | 0 | 1 | 1 | 1 |
| 13860 | Grinman v. Russell, 14 Neb. 521 | 8.30T+186 | There can be no doubt that the authorities, that the writing on the back of the note must be taken as a part of it, the same as though it were written on its face and above the signature. This would be correct had the memorandum not been signed, as it was in this case, by the parties. | Is a memorandum on the back of a note made at the time of its execution, must be taken as part of the instrument? | Bills and Notes - Memo 31 - ANG V.docx | LEGALEASE 00011763-LEGALEASE 00011768 | Condensed_SA_Sub | 0.82 | | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 19863 | Rakowsky v. Gordon, 501 F. Supp. 1114 | 83E+676 | | Demand note is payable at place of residence of maker, if no place of payment is named in the note. | Which law is applicable to a note? | Bills and Notes - Memo 50 - KC.docx | RDS5/00310419-RDS5-00310441 | SA, Sub | 0.94 | 0 | | | 1 | |
| 19862 | Tompkins Printing Equip. Co. v. Bank, 731 F. Supp. 918 | 83H142 | | Promissory note was not "negotiable instrument," where note did not contain terms "payable to order" or "payable to bearer." U.C.C. § 3-104, subds. 1, 3-104(1)(d), 3-102(1)(e). | Is it obligatory for a negotiable instrument to be payable to order or to bearer? | 010990.docx | USGA16-00121383-USGA16-00121384 | Condensed, SA, Sub 0.8 | | 1 | | | 1 | |
| 19863 | Century Exp. Nw. Orleans v. United Fruit Mosk, 103 Fed. Cl. 70 | 149+2.5 | | Plaintiff's Court of Federal Claims may pursue breach of contract claim and takings claim concurrently and be processed until the contract claim becomes viable and trumps the takings claim. | Can a claim of a breach of contract and a taking may be brought concurrently and be processed until the contract claim becomes viable and trumps the taking claim? | Eminent Domain - Memo 394 - GP.docx | RDS5-00296212-RDS5-00296214 | SA, Sub | 0.75 | 0 | | | 1 | |
| 19864 | Manchunha v. St. Luke's Episcopal Presbyterian Hosps., 360 S.W.3d 121 | 30+205 | | Under the Northeast exception to the general rule that when a trial court grants a motion to exclude evidence prior to trial, there must be a complete understanding based on the record of the excluded testimony; the objection must be in a category of evidence rather than to specific testimony, and finally, the record must show the evidence would have helped its proponent. | Is a pre-trial ruling excluding evidence an interlocutory decision subject to change during trial? | Pretrial Procedure - Memo 4 KC - ES.docx | RDS5-00313302-RDS5-00313303 | SA, Sub | 0.31 | 0 | | | 1 | |
| 19865 | Ben-Ox v. Edmar Co., 49 Cal. App. 4th 468 | 30B+44 | | Agency may be terminated by agent's renunciation of it. West's Ann.Cal.Civ.Code § 2355(b). | Can Agency be terminated due to renunciation by an agent? | Principal Agent - Renunciation by Agent - Memo 21 AM.docx | RDS5-00185478-RDS5-00185480 | SA, Sub | 0.83 | 0 | | | 1 | |
| 19866 | Philadelphia Elec. Co. v. Pennsylvania Pub. Util. Comm'n, 71 Pa. Cmwlth. 416 | 145+8.4 | | Decision to cease construction of nuclear generating plant was within managerial prerogative of electric company, therefore, Public Utility Commission was without authority to order company to cease or suspend construction of plant, even if it determined that company had abused its managerial discretion. 66 Pa.C.S. §§ 501-1315, 1301, 501(b). | Is the Public Utility Commission a super board of the directors of the State? | 043623.docx | USGA16-00121833 USGA16-00121834 | Condensed, SA, Sub 0.32 | | 1 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 18667 | Imre Bounds, 495 B.R. 725 | 11n61 | "The account of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1946). To possess a right to sue, some legal injury is required. Allen v. Crosland, 417 S.W.2d 150, 153 (Tex.1967). Whereas discovery of that injury is relevant to the determination of when the statute of limitations begins to run, it is not relevant to the determination of when a cause of action accrues. Swift, 129 S.W.3d at 798. As a general rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996) (citations omitted). "[T]he focus, then, is upon the moment the injury occurred." Swift, 129 S.W.3d at 798. | Under Texas law, when a) setting injury in motion is itself completed act, and legal injury occur simultaneously, and cause of action begins to run, "accrual" for limitations purposes and not to the time the cause of action arose? actual damage occur immediately upon commission of act. | Is the date a plaintiff discovers his injury relevant to the time of accrual for limitations purposes and not to the time the cause of action arose? | 005411.docx | LEGALEASE 00127277 / LEGALEASE 00127278 | SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 18668 | Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725 | 113n1 | The plaintiff claims that it is the defendant's progressive disciplinary measures that gave rise to his implied employment contract. To substantiate his claim, the plaintiff relies heavily on testimony by the defendant's human resources personnel that the defendant constantly disregarded the defendant's progressive disciplinary measures or its termination guidelines. The plaintiff, however fails to recognize that it is his burden to establish that the defendant's disciplinary guidelines were the result of a contractual commitment by the defendant. ... | Contracts are not created by evidence of customs and usage. | May contracts be created by evidence of customs and usage? | Customs & Usage - Memo 30 - 7n.docx | ROSS-003297234-ROSS-003297237 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | 1 |
| 18669 | Phelps-Roper v. City of Manchester, Missouri, 738 F. Supp. 2d 847 | 92n151S | Plaintiffs first claim that the ordinance violates the First Amendment because it is not content or viewpoint neutral. Because the ordinance prohibits protected speech picketing and protests on public streets and sidewalks, the ordinance regulates expression conduct protected by the First Amendment. See Carey v. Brown, 447 U.S. 455, 460, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); see also R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Accordingly, content-based regulations of speech are "presumptively invalid." for a state or municipality to enforce a content-based regulation. ... | Under First Amendment free speech clause, state and municipalities may enforce content-neutral regulations of time, place, and manner of expression, as long as they are narrowly tailored to serve significant government interest and leave open ample alternative channels of communication. U.S.C.A. Const.Amend. 1. | Can expressive conduct protected by the First Amendment be regulated? | 09732.docx | LEGALEASE 00085373 / LEGALEASE 00085373 | SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 18670 | U.S. ex rel. Carter v. Reagan, 929 F.2d 1133 | 203n1392 | Now, Carter, and Gentner, the indictment alleges murder of Thomas P. Loyta, on November 8, 1979, when both defendants to the statute whether another human being with malice and without reasonable provocation or justifiable cause or excuse had to give that her with you. ... | Charge in state trial with respect to killing with malice and without reasonable provocation so as to constitute murder and ordering that unlawful statement that the law presumes that all unlawful killings were committed with malice unless the lack of malice was affirmatively demonstrated by the evidence, did not violate rule of United States Supreme Court decision that state may not, without offending due process, affirmatively shift to defendant the burden of proving that he acted in the heat of passion on sudden provocation. | What is murder? | 033050.docx | LEGALEASE 00155598 / LEGALEASE 00155599 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 18671 | Kiel Cos v. Officially for Kids, 2010 Supp.2d 164 | 289n1035 | Even assuming that plaintiff's had established a fiduciary relationship, the claim still fails because, upon dissolution of a partnership at will, a partner's only remedy is an accounting. ... | Under New York law, partner's only remedy upon dissolution of a partnership is an accounting. | Is accounting the only remedy when a partner after a firm is dissolved at will? | 023085.docx | LEGALEASE 00122780 / LEGALEASE 00122781 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

1499

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19872 | Kjerstad v. Ravellette Publications, 517 N.W.2d 419 | 307A+3 | The decision to grant a new trial is left to the sound discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of an abuse of discretion. Dartt v. Berghorst, 484 N.W.2d 891, 894 (S.D.1992). The trial court, however, has the duty in jury cases to conduct proceedings, "to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." SDCL 19-9-5 (Rule 103(c)). The granting of motions in limine to prevent the admission of prejudicial evidence is one method of achieving this duty. A motion in limine has been defined as: [A] motion, heard in advance of jury selection, which asks the court to instruct the [party], its counsel and witnesses not to mention certain facts unless and until permission of the court is first obtained outside the presence and hearing of the jury.] | Defendant in tort action was prejudiced by plaintiffs' counsel's repeated violations of in limine orders, and mistrial should have been granted; during course of trial, plaintiffs' counsel violated orders barring reference to administrative proceedings, to any settlement in those proceedings, to what deceased witness' testimony would have been, and to any suspicions by plaintiffs of defendant's alleged tortious conduct; moreover, some inadmissible evidence, particularly relating to administrative proceedings, settlement, and defendant's apology went to vital issue of liability, and admissible evidence against defendant was not overwhelming. | "Is a ""motion in limine"" a motion heard in advance of jury selection, which asks the court to instruct the party, its counsel and witnesses not to mention certain facts unless and until permission of the court is first obtained outside the presence and hearing of the jury?" | 028674.docx | LEGALEASE-00123038-LEGALEASE-00123039 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 19873 | Peters v. Gen. Motors Corp., 200 S.W.3d 1 | 30+205 | GM filed numerous pre-trial motions, including a motion in limine challenging Mr. Sero's testimony. The motion was denied. The record discloses that GM's objection to Mr. Sero's testimony was not reasserted at trial as were other renewed objections first raised pre-trial as motions in limine. Rulings on motions in limine are interlocutory and subject to change during the course of the trial. Hancock v. Shook, 100 S.W.3d 786, 802 (Mo. banc 2003). "A motion in limine, by itself, preserves nothing for appeal." To preserve an evidentiary issue on appeal, a party is required to object at trial to the introduction of the evidence and to reassert the objection in post trial motions. State v. Hayes, 169 S.W.3d 613, 624 (Mo.App. S.D.2005). Mr. Peters presented Mr. Sero's deposition testimony at trial without objection as evidence that the cruise control on the Peters' vehicle was defectively designed, permitting the device to malfunction, and that the cruise control malfunctioned to cause Ms. Peters' injuries. GM asserted specific objections to portions of Mr. Sero's testimony, which were overruled, and which are not asserted as error on appeal. But GM failed to preserve the issue of whether Mr. Sero's opinion testimony that the cruise control on the Peters' vehicle was defectively designed and prone to permit a single transient or intermittent electrical charge to enter the device and cause it to activate the vehicle's throttle without driver input satisfied the standard of section 490.065 for admission. GM's failure to assert its objection to Mr. Sero's testimony at trial waived the objection, and its post-trial motion raising the issue was not sufficient to preserve the issue for review without proper objection at trial. The point is denied. | A motion in limine, by itself, preserves nothing for appeal; to preserve an evidentiary issue on appeal, a party is required to object at trial to the introduction of the evidence and to reassert the objection in post trial motions. | Are rulings on motions in limine interlocutory and subject to change during the course of the trial? | 041144.docx | LEGALEASE-00124041-LEGALEASE-00124042 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 19874 | Consol. Waste Indus. v. Standard Equip. Co., 421 Md. 210 | 30+3366 | The nature of the type of evidentiary ruling represented by the grant of the Motion in Limine to Exclude Evidence of Subsequent Repairs is "left to the sound discretion of the trial judge.." Malik v. State, 152 Md.App. 305, 324, 831 A.2d 1101, 1112 (2003) (citing Martin v. State, 364 Md. 692, 705, 775 A.2d 385, 393 (2001)). When weighing the probative value of proffered evidence against its potentially prejudicial nature, an abuse of discretion in the ruling may be found "where no reasonable person would share the view taken by the trial judge." Brown v. Daniel Realty Co., 409 Md. 565, 601, 976 A.2d 300, 321 (2009) (citing In re Adoption/Guardianship No. 3598, 347 Md. 295, 312, 701 A.2d 110, 118 (1997)). That is to say, an abuse of discretion occurs when a decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." King v. State, 407 Md. 682, 711, 967 A.2d 790, 807 (2009) (internal quotation marks and citation omitted). Thus, "a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." Id. (internal quotation marks and citation omitted). "Whether there has been an abuse of discretion depends on the particular circumstances of each individual case." Pantazes v. State, 376 Md. 661, 681, 831 A.2d 432, 444 (2003). | When weighing the probative value of proffered evidence against its potentially prejudicial nature, an "abuse of discretion" in the ruling may be found where no reasonable person would share the view taken by the trial judge; that is to say, an abuse of discretion occurs when a decision is well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. | Is the grant or denial of a motion in limine within the sound discretion of the trial court? | 041179.docx | LEGALEASE-00124130-LEGALEASE-00124131 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 19875 | United States v. Mullins, 800 F.3d 866 | 63+11 | To prove bribery under 18 U.S.C. " 666(a)(1)(B) the government must show that a public agent solicited "corruptly anything of value" in connection with a transaction of $5,000 or more. 18 U.S.C. " 666(a)(1)(B); see United States v. Blagojevich, 794 F.3d 729, 736 (7th Cir.2015); United States v. Robinson, 663 F.3d 265, 271 (7th Cir.2011). An agent acts corruptly when he understands that the payment given is a bribe, reward, or gratuity. See United States v. Hawkins, 777 F.3d 880, 882 (7th Cir.2015). To attack the sufficiency of the bribery conviction, Mullins raises two arguments, but they are both meritless. | Evidence was sufficient to support bribery conviction of defendant, who was former county director of public affairs and communications; defendant altered vendors' invoices to remain under $25,000 and kept himself in approval process, defendant required and received cash kickbacks from vendors when they received their fees under ruse that kickbacks were for subcontractors, and payments were given as reward or bribe for buying defendant's influence in obtaining future awards from county. 18 U.S.C.A. S 666(a)(1)(B). | "Does a public agent act corruptly when he understands that a payment given is a bribe, reward, or gratuity?" | Bribery - Memo 17 - TH.docx | ROSS-003288924-ROSS-003288925 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 19876 | Succession of Henderson, 191 So. 3d 9 | 75+19 | The plaintiffs' fourth issue, that an executor lacks legal authority to create a trust for the testator, relies on La. C.C. art. 1572. The second paragraph of Art. 1572, however, provides an exception:The testator may expressly delegate to his executor the authority to allocate a legacy to one or more entities or trustees of trusts organized for educational, charitable, or other philanthropic purposes. The entities or trusts may be designated by the testator or, when authorized to do so, by the executor in his discretion. In addition, the testator may expressly delegate to his executor the authority to impose conditions on those legacies. | Bequest of will, which created an academic scholarship fund, sufficiently designated a trustee and thus could create a valid trust, where testator gave his executor power to "take such steps" as needed to see that fund was legally established as a trust. LSA-R.S. 9:1753. | May the testator of a charitable trust expressly delegate or designate the trustee in the trust? | 013334.docx | LEGALEASE-00124284-LEGALEASE-00124285 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 19877 | State v. Benge, 272 N.C. 261 | 203+656 | Manslaughter is the unlawful killing of a human being without malice and without premeditation or deliberation. State v. Street, 241 N.C. 689, 86 S.E.2d 277. | "Manslaughter" is the unlawful killing of a human being without malice and without premeditation or deliberation. | What is manslaughter? | 019355.docx | LEGALEASE-00124271-LEGALEASE-00124272 | Condensed, SA | 0.25 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19878 | In re Vitamin C Antitrust Litig., 837 F.3d 175 | 221+388 | Finally, the district court also relied on our decision in Karaha Bodas, 313 F.3d 70, to support its conclusion. In that case, a judgment creditor of an oil and gas company owned and controlled by the Republic of Indonesia sought to execute upon funds held in New York trust accounts. Id. at 71. The Republic of Indonesia joined the appeal as a party with an affected interest, and in so doing, sought to clarify the applicable Indonesian law as well as the Indonesian Government's relationship with the gas company. Id. Citing to our sister circuits in Amoco Cadiz and Access Telecom, we credited the Republic of Indonesia's interpretation and explained that "a foreign sovereign's views regarding its own laws merit"although they do not command"some degree of deference." Id. at 92. We clarified that, "where a choice between two interpretations of ambiguous foreign law rests finely balanced, the support of a foreign sovereign for one interpretation furnishes legitimate assistance in the resolution of interpretive dilemmas." Id. | Deference was due to Chinese government's interpretation of its own laws, for purposes of United States court's determination, under comity analysis, of whether a true conflict existed between Chinese and United States laws governing foreign export of vitamin C, in vitamin purchasers' Sherman Act class action against Chinese vitamin manufacturers alleging conspiracy to fix price and supply of vitamin C sold to United States companies on the international market; the Ministry of Commerce of the People's Republic of China had, for the first time ever, appeared amicus curia before a United States court to explain the unique and complex nature of the Chinese legal and economic regulatory system, the stark differences between the Chinese and United States pricing systems, and China's government controlled horizontal price-fixing agreements that were a result of industry-wide negotiations within the country, in order to demonstrate conflicts with United States antitrust laws. Sherman Act S 1, 15 U.S.C.A. S 1; Fed. R. Civ. P. 44.1. | Does a foreign sovereigns view regarding its own laws merit some degree of deference? | 020167.docx | LEGALEASE-00125035-LEGALEASE-00125036 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 19879 | Sunward Corp. v. Dun & Bradstreet, 811 F.2d 511 | 237+33 | Dun & Bradstreet also invokes common law principles to challenge the allowance of presumed damages. Colorado is one of the states which treats actions alleging a libel per quod as an action for slander insofar as available damage remedies are concerned. That is, libel per quod is generally actionable only where special damages (actual economic loss alleged and proved to have resulted directly from the defamatory publication) are pleaded and proved. See Bernstein v. Dun & Bradstreet, Inc., 149 Colo. 150, 368 P.2d 780, 782-83 (1962); Brown v. Barnes, 133 Colo. 411, 296 P.2d 739, 741 (1956); Knapp v. Post Printing & Publishing Co., 111 Colo. 492, 144 P.2d 981, 985 (1943); Fort v. Holt, 508 P.2d 792, 793 (Colo.App.1973); Inter-State Detective Bureau, Inc. v. Denver Post, Inc., 29 Colo.App. 313, 484 P.2d 131, 133 (1971). | Defamation plaintiff must show extrinsic facts and innuendo drawn from alleged defamatory words in light of those facts in order to prove defamation in a case of libel per quod. | Does an action for libel per quod require proof of special damages? | Libel and Slander - Memo 203 - BP.docx | LEGALEASE-00014867-LEGALEASE-00014868 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 19880 | Kenley v. D.C., 83 F. Supp. 3d 20 | 237+7(1) | "Defamation under D.C. law requires a plaintiff to show a defamatory statement, publication to a third party, negligence, and either that the statement is actionable as a matter of law or that publication caused the plaintiff special harm." Westfahl v. District of Columbia, 75 F.Supp.3d 365, 375, 2014 WL 6999078, at 5 (D.D.C. Dec. 12, 2014) (citing Oparaugo v. Watts, 884 A.2d 63, 76 (D.C.2005)). "A defamatory statement is one "that tends to injure the plaintiff in his [or her] trade, profession or community standing, or lower him [or her] in the estimation of the community." Kendrick v. Fox Television, 659 A.2d 814, 819 (D.C.1995) (quoting Moss v. Stockard, 580 A.2d 1011, 1023 (D.C.1993)) (alterations in original). "Publication requires making a statement to at least one other person," and "[a] false allegation of criminal wrongdoing is defamation per se." Westfahl, 75 F.Supp.3d at 375, 2014 WL 6999078, at 5 (citing Charlton v. Mond, 987 A.2d 436, 438 n. 4 (D.C.2010), and Von Kahl v. Bureau of Nat'l Affairs, Inc., 934 F.Supp.2d 204, 218"19 (D.D.C.2013)). In his Reply, Plaintiff suggests that there are three bases for holding Shaatal liable for defamation: "the publication of false statements to Officer Baldwin, animal control staff, and upon information and belief, to Mr. Kenley's employer." Reply to Officer's Opp. at 22. None of these makes it past the starting gate | Under District of Columbia law, a false allegation of criminal wrongdoing is defamation per se. | Does a false accusation of a crime constitute defamation per se? | 021093.docx | LEGALEASE-00125216-LEGALEASE-00125217 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 19881 | Zimmerman v. Huber, 29 Ala. 379 | 289+572 | The pleadings show that this was a general and equal partnership, for the manufacture and sale of cigars, tobacco, &c.; Zimmerman to superintend the manufacture in Philadelphia, and Huber to make the sales in Mobile. Each partner was bound to bestow his services and attention in promotion of the general interest, and neither partner is entitled to any compensation for such services and attention, there being no agreement to that effect. --Bradford v. Kimberly, 3 Johns. Ch. 431; Collyer on Partnership, (Perkins' ed.) " 183. | One partner is not entitled to compensation from the partnership for his services in attending to the partnership affairs, unless there is a contract therefor express or implied. | Is a partner entitled to charge the partnership for his services to it? | 021824.docx | LEGALEASE-00124902-LEGALEASE-00124903 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 19882 | Gibson v. Deuth, 270 N.W.2d 632 | 289+950 | It is true, of course, that a partnership dissolution ordinarily does not result in immediate termination. Withdrawal from a partnership causes dissolution. Termination occurs only after winding up of partnership affairs is completed. See ss 544.29 and .30, The Code 1977 (Uniform Partnership Act, not applicable to this 12-year-old controversy); 2 Barrett & Seago, Supra, at ch. 8, s 1; 60 Am.Jur.2d Partnerships s 171 (1972). | Partnership dissolution ordinarily does not result in immediate termination; rather, termination occurs only after winding up of partnership affairs is completed. I.C.A. SS 544.29, 544.30. | When does a termination of a partnership occur? | Partnership - Memo 188 - BP.docx | ROSS-003282284-ROSS-003282285 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 19883 | Groves v. Ihsanullah, 2016-Ohio-7703 | 307A+3 | A "motion in limine" is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." Black's Law Dictionary 1013 (6th Ed.1990). The purpose of a motion in limine "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error." Id. at 1013"1014. See State v. Maurer, 15 Ohio St.3d 239, 259, 473 N.E.2d 768, 787 (1984). A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling. Thus, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." Defiance v. Kretz, 60 Ohio St.3d 1, 4, 573 N.E.2d 32, 35, (1991); citing State v. Grubb, 28 Ohio St.3d 199, 201"202, 503 N.E.2d 142, 145 (1986). | Counsel for deceased patient's mother did not, by inquiring on cross-examination of defense expert witness as to whether witness assumed patient had history of drug seeking, violate motions in limine limiting witness's testimony regarding substance and drug abuse opinions and excluding evidence concerning patient's prior emergency room encounters to request narcotic prescription refills and, thus, mother was prejudiced by trial judge's sanctioning of counsel through issuance of curative jury instruction, entitling mother to new trial in wrongful death and medical malpractice action against hospital and emergency care provider premised on patient's death due to prescription drug overdose; liminal motions were not final, and trial judge overruled defense objections to questioning. Rules Civ.Proc., Rule 59(A)(1). | "Is a ruling on a motion in limine tentative, interlocutory and precautionary?" | Pretrial Procedure - Memo # 263 - C - MLS.docx | ROSS-003316572-ROSS-003316573 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Memo Question | Copied Headnote | Judicial Opinion Text | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,079 |
| 11984 | Kersey v. Washita Cty., 62 Wis. 2d 662 | 307H+1 | Is it essential to observe pretrial procedure to make it effective? | If pretrial procedure is to be effective, it must be observed. | This case is unusual in that Waukesha County is not complaining about its exoneration of the respondent business and the plaintiff, who disputed both admissions, is only complaining about how the court handled it and informed the jury. In a partial order was entered... approach. This was not complied with by Waukesha County in respect to Mr. Grebe but either. If the pretrial procedure is to be effective it must be observed. We find no error in the manner in which the trial court handled the disqualification of this witness. | Pretrial Procedure Memo #456 - C - HANA.docx | ROSS-000297865-ROSS-000297866 | SA, Sub | 0.89 | | | | | 1 |
| 11985 | State v. Young, 136 Idaho 113 | 110+1938,1(3.1) | Does a motion in limine seek an advance ruling on the admissibility of evidence? | State did not preserve on appeal the issue of whether evidence of freak contact defendant's contacts with adopted daughter, barred by a motion in limine, on bail, was admissible, where state made no offer of proof at trial; the record on appeal showed that these contacts were relevant. Rules of Evid., Rule 103(a)(2). | As this court stated in the first appeal in this case, "[M]otions in limine seeking advance rulings on the admissibility of evidence are fraught with problems because they are necessarily based upon an alleged set of facts that may not actually materialize. State v. Young, 133 Idaho 177, 179, 983 P.2d 831, 834 (1999). An order granting a motion in limine is not a final order. The trial court can reconsider the issue at any time. If the State believes that any of these incidents are relevant to this case, it can certainly put the district court to reconsider the issue at a later time when it can make a factual presentation showing such relevance. | 041191.docx | LEGALEASE-00218189-LEGALEASE-00218191 | Condensed, SA, Sub | 0.57 | | | | | 1 |
| 11986 | In re Bedsa, 527 B.R. 692 | 366+1 | Does a claim need to be assignable for it to be subject to subrogation? | Under California law, for a claim to be subject to subrogation, it must be assignable. West's Ann.Cal.Civ.Code §§ 951, 954. | Before ruling headlong into the various state law insurance cases cited in the competing briefs, this court first considers California law relating to the assignability and the enforcement of claims by way of assignment or subrogation. For a claim to be subject in subrogation, it must be assignable. In re Pinson, 54 Cal.Ct.Rptr. 662, 7 Cal.Rptr. 377, 543 P.2d 1073 (1965). California Civil Code § 954 provides that a "thing in action" arising out of the violation of a property right or out of an obligation may be transferred by the owner. A "thing in action" is further defined to be "[a] right to recover money or other personal property by a judicial proceeding. Cal. Civ. 953. | Subrogation - Memo 1027 - C - CAT.docx | ROSS-002981811-ROSS-002981812 | Condensed, SA, Sub | 0.82 | | | | | 1 |
| 11987 | Rowley Plastering Co. v. Marin Landscape Maint. Corp., 180 Ariz. 212 | 206+7 | Can equitable subrogation be used to enforce restitution? | Stucco subcontractor which settled negligence action was entitled, under doctrine of equitable subrogation, to reimbursement from general contractor, where subcontractor's partially responsible, under terms of subcontractor subrogation, for purpose of equitable consideration governing awards of restitution. | Rowley contends that under the doctrine of equitable subrogation it is entitled to restitution for its payment to plaintiff. The doctrine of equitable subrogation is founded upon principles of equity; its purpose is to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it. Kilpatrick v. Superior Ct., 105 Ariz. 413, 421, 466 P.2d 18 (1970). The case was able for which another is primarily liable, and which in equity and good conscience should have been paid discharged by the latter. Id. at 420, 466 P.2d 28 (quoting Fenly v. Revell, 170 Ariz. 720, 228 P.2d 965, 968 (1951)). Equitable subrogation is designed to place the burden of a debt in order to prevent unjust enrichment. At M.S. argues that Rowley is not entitled to restitution under the doctrine of equitable subrogation because (1) Rowley was a mere volunteer when it paid the claim of M.G. in its settlement with plaintiff; and (2) M.G. was not unjustly enriched when it settled with plaintiff. | 04447.docx | LEGALEASE-00125313-LEGALEASE-00125315 | Condensed, SA, Sub | 0.56 | | | | | 1 |
| 11988 | People ex rel. Dep't of Transportation v. Salerno, 3 Cal.App.4th 37 | 148+200 | As to retirement of goodwill, does the landowner bear the burden of proof? | In determining amount of compensation for loss of goodwill in eminent domain actions, neither party bears burden of proof. West's Ann.Cal.C.P. §§ 1260.210, 1263.510. | The plain language of section 1263.510 places the burden on the defendant to establish that the necessary conditions exist which entitles him to compensation for the loss of goodwill. "The owner ... shall be compensated for loss of goodwill if the owner proves all of the following ..." However, there is no requirement that the owner bear the burden of proof when determining the amount of goodwill to be awarded. | 03762.docx | LEGALEASE-00225660-LEGALEASE-00225661 | Condensed, SA | 0.59 | | | | | 1 |
| 11989 | Com. v. White, 864 Pa. Super. 518 | 203+548 | Is malice the distinguishing factor between murder and manslaughter? | Malice is the gravamen of third degree murder and it is the distinguishing factor between murder and manslaughter. | Malice is the gravamen of third degree murder and it is the distinguishing factor between murder and manslaughter. Commonwealth v. Young, 494 Pa. 224, 431 A.2d 230 (1980). | Homicide - Memo 157 - VG.docx | LEGALEASE-00269572-LEGALEASE-00269573 | Condensed, SA | 0.33 | | | | | 1 |
| 11990 | James v. Powell, 154 Va. 96 | 237+7(8) | To charge one with robbery is libelous and actionable per se. | To charge one with robbery is libelous and actionable per se. | To charge one with robbery is libelous and actionable per se. In Strode v. Harwood, 102 Va. 384, 46 S.E. 380, 17 R.C.L., page 269, 262 | Libel and Slander - Memo 220 - BP.docx | LEGALEASE-00001592-LEGALEASE-00001593 | Condensed, SA | 0.42 | | | | | 1 |
| 11991 | Elkin v. Bell Tel. Co. of Pennsylvania, 491 Pa. 123 | 317A+181 | Which is the appropriate forum for the adjudication of rates, services and facilities of public utilities? | Where allegations of telephone company's customer's complaint involved adequacy and efficiency of wide-area telephone service (WATS) lines and assistance services, issues clearly involved area where Public Utility Commission's expertise was needed, competence and jurisdiction in such areas was substantially greater than court's and need for uniformity was apparent; Public Utility Commission had primary jurisdiction over controversy. | This case requires an examination of the respective systems of adjudicating claims and adherence of the Public Utility Commission ("PUC") and the courts of this Commonwealth. The PUC has long been recognized as the appropriate forum for the adjudication of public issues involving the reasonableness, adequacy and sufficiency of public utility services. Feingold v. Pennsylvania, 477 Pa. 1, 383 A.2d 791 (1977); ... the rates, service, and facilities of any public utility are unreasonable, unjust, insufficient, or unsafe, or facilities to be deemed, furnished, enforced or employed ... "Section 41.2 and 45.3, respectively, of the Public Utility Code (as amended 66 P. S. 1182, 1183 (1959)) (repealed by 66 Pa.C.S. in 1306 (1978)). | 043131.docx | LEGALEASE-00135710-LEGALEASE-00135711 | Condensed, SA, Sub | 0.69 | | | | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 23,876 | 9,079 |
| 13982 | State ex rel. Purdy v. Gibb, 46 Ohio St. 2d 239 | 361+28 | | De facto township trustee may resist to fill office of township trustee; thus, it was a de facto officer. The only difference between a de facto officer and an officer de jure is, that the former may be ousted in a direct proceeding against him, while the latter cannot be. As far as the public and third persons are concerned, there is no difference whatever. The acts of a de facto officer who assumes the office under claim and color of right are as valid as the acts of the other. Conto, Meola v. Bennett (1956), 117 N.J. 231, 87 A.629. | What is the difference between a de facto officer and a de jure officer? | Clerk of Court - Memo 58 - RK.docx | ROSS 003290074 ROSS-003290075 | SA, Sxb | 0.02 | | | | 1 | |
| 13983 | Lefton v. Cumberland City., 184 N.C. App. 62 | 316P+2(3)(3) | This case does not involve a question of jurisdiction that can be raised at any time. Even under Eaton, Commissioners Maersk and Rich could be removed only if they were not judges. An Ohio Revised Statute arises where a person assumes office "under color of authority" or where the court exercises the duties of the office during a vacancy when it is a de facto acts in relation to the public and third persons, but he may be ousted by a direct proceeding. "An officer de jure is one lawfully in office." Idoc., 359 N.C.App. 368, 575, 583 S.E.2d 629, 635 (quoting People ex rel. Clark v. Hilliard (1983), 5 N.C. App. 134, 138 S.E.2d 379). Also, a de facto officer is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office are exercised...S.E.2d 476 (2003). See also N.C.Gen.Stat. § 128-6 (2005) ("Any person who shall, by the proper authority, be admitted and sworn into any office, shall be held, deemed, and taken, by force of such admission, to be rightfully in such office until...by judicial sentence, upon a proper proceeding, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared void.") | When does a de facto status arise? | Clerk of Court - Memo 15 - RK.docx | ROSS-003285943 ROSS-003285946 | SA, Sxb | 0.88 | | | | 1 | |
| 13984 | Mississippi Comm'n on Judicial Performance v. Usher, 627 So. 2d 283 | 211+10 | In Felty v. Graime, 179 W.Va. 524, 370 S.E.2d 610 (1988), the West Virginia Supreme Court of Appeals held that the office of circuit clerk was a judicial office. This case arose in much the same way in the case sub judice. A magistrate received notice that he was required to resign his position in order to seek the office of circuit clerk. The magistrate was removed from the payroll pursuant to that direction. By a petition for writ of mandamus, the magistrate sought to be reinstated. Canon 7.A(3) of the Judicial Code of Ethics in West Virginia required the office of circuit clerk within the judicial system. It is concluded that the office of circuit clerk is not a "judicial office" as used in Art. 7, W.Va. Cons. and Canon 7.A(1) | Is the office of circuit clerk a judicial office? | Clerk of Court - Memo 24 - RK.docx | ROSS-003290061 ROSS-003290062 | Condensed, SA, Sxb | 0.6 | | | | 1 | |
| 13985 | Simpson v. Payne, 79 Cal. App. 780 | 70+1 | Holding, on its face, that the municipal courts are not inferior courts within the meaning and intent of section 7° of article XI of the Constitution, the attach'd of that court are not officers of a inferior court within its meaning. But one can not well fail nor argue with those who claim the clerk and his deputies, who are county officers. Clerks and attach'n of the Constitution, but are necessarily adjuncts of that court. See Kerr v. Seidelo, 35 Cal.App.2d 747. | Are clerks of municipal courts officers of an inferior court? | Clerk of Court - Memo 12 - RK.docx | LEGALEASE-00126082-LEGALEASE-00126083 | Condensed, SA, Sxb | 0.76 | | | | 1 | |
| 13986 | E. Mineral Int'l v. United States, 34 Fed. Cl. 541 | 149+15(11) | Only the owner of property at the time of a taking is entitled to compensation. United States v. Dow, 357 U.S. 17, 20, 78 S.Ct. 1039, 1043, 2 L.Ed.2d 1109 (1958) (citation omitted). Here the theories in this case, in other words is the only shareholder of plaintiff corporations, but he did not hold any personal interest in the leases at the time of the taking. The lease agreements were entered into between Core Company and Eastern Minerals, not between Eastern and their respective Minerals. | Who is entitled to compensation if a taking under the law? | Eminent Domain - Memo 283 - GP.docx | LEGALEASE-00016534-LEGALEASE-00016535 | SA, Sxb | 0.81 | | | | 1 | |
| 13987 | Waite v. Standard Acc. Ins. Co., 132 Minn. 220 | 302+8(1) | There is no dispute as to any of the foregoing conclusions of law proven to issuable facts, but the difficulty in a given case is to distinguish between issuable and allegations, that istook "wrongfully and dishonestly" appropriated said cash money, in the first cause of action, and the remainder of said... A conclusion of law and a proven fact or not issuable and are allegations of ultimate facts. | Are conclusions of law issuable? | | O2300.docx | LEGALEASE-00126718-LEGALEASE-00126719 | Condensed, SA | 0.86 | | | | 1 | |
| 13988 | Burch v. Nedpower Mount Storm, 220 W. Va. 443 | 279+6 | West Virginia Code § 54° ("I'12d[5] declares, in part, that "[t]he public uses for which private property may be taken or damaged are as follows:...for the construction and maintenance of...electric light, heat, and power plants, systems, lines, transmission lines, conduits, stations... where the public use." There are as indifferent as to how the electric power plant generates electricity, be it coal, natural gas, water, wind, or any other, a wind-driven electric power plant is an "electric... power plant" under section 54° "I'12d[5] of the W.Va. Code for use by the public to be employed in the construction and maintenance thereof if the plant is "for public use." An electric power plant may be "for public use" irrespective of the generating entity or PSC as jurisdictional owner. The majority of jurisdictions in Affiliated Trades declared that Big Sandy was a public utility not because the generator of electricity for ultimate sale to the public. In Preston County Light & Power Co. v. Renick, 145 W.Va. 115, 126, 113 S.E.2d 378, 385 (1960), this Court stated the "[t]he term 'public utility' properly designates the owner or person in control of property devoted to the public use." The NedPower's wind-driven generators are allowed only to "for public use." NedPower is a public. | Does the term public-utility properly designate the owner or the person in control of the property devoted to public use? | 04387.docx | LEGALEASE-00230257-LEGALEASE-00230258 | SA, Sxb | 0.68 | | | | | 1 |
| 13989 | Am. Sur. Co. of New York v. Co., 14 F. Reserve Bank of Kansas City, 29 F. Supp. 540 | 8.30T+282 | It is a rule of negotiable instrument law that all doubts are to be resolved in favor of negotiability. 10 C.J.S., Bills and Notes, page 414, Sec. 13 | How should the doubts and issues regarding negotiable instruments be resolved lawfully? | 00905.2.docx | LEGALEASE-00127062-LEGALEASE-00127063 | SA, Sxb | 0.51 | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 19900 | Quinto v. Am. Golf Corp., 150 F.Supp.2d 1181 | 25T+182(2) | Plaintiff further asserts that the alleged agreement is unenforceable for lack of consideration because it was executed over two and a half months after she started working for AGC. An arbitration agreement is unenforceable if it is unsupported by consideration. Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126 (7th Cir.1997). If the employee signed an arbitration agreement after she was hired, and was not given anything in return for signing away her rights, the agreement is unsupported by consideration. Zampella v. American Golf Corp., CIV 00 0181 RB (RLP)(Aug. 28, 2000). I recognize that economic considerations may require modification of an at-will employee's working conditions, such as scheduling and compensation. However, the rights that Plaintiff purportedly surrendered were far more important than those associated with mere conditions of employment. | In the case of an arbitration agreement is unenforceable by consideration, issues surrounding the method of dispute resolution must be clear and unequivocal and apply mutually to both rules before that agreement may be enforced. | Are arbitration agreements enforceable if unsupported by consideration? | 007005.docx | USA/LEA6 00127382-USA/LEA6 00127383 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 19901 | Hawkins v. City of La Grande, 315 Or. 57 | 148+21 | However, property is not "taken" if it is simply damaged. In Moeller v. Multnomah County, 218 Or. 413, 425 (2), 345 P.2d 813 (1959), this court pointed out that Oregon's "takings" clause in Article I, section 18 of the Oregon constitution, does not include the word "damage" but only the word "taken," to do so in many other jurisdictions where the constitutions provide for more liberal compensation. The court then operated as a definition of "taking" that required "destruction, restriction or interruption of the necessary use and enjoyment of [the] property" of a person for a public purpose, Id. at 431, 345 P.2d 813 (approving definition in Morrison v. Clackamas County, 141 Or. 564, 568, 18 P.2d 814 (1933)). Most of the cases had required that there be a substantial interference with the necessary use and enjoyment of property. A "substantial" interference with particular property rights. Thornburg v. Port of Portland, 233 Or. 178, 192, 376 P.2d 100 (1962). In the context of "regulatory takings," see, Suess Builders v. City of Portland, 294 Or. 254, 259, 656 P.2d 1074 (1982). Oregon's case law indicated that "a substantial part of property" state takings claim, Thornburg v. Port of Portland, 233 Or. 178, 192, 376 P.2d 100 (1962) (a taking occurs when the "government acts in such a way as to substantially to deprive an owner of the useful possession of that which he owns"). Moeller v. Multnomah County, supra, 218 Or. at 417, 345 P.2d 813 (Oregon cases can involve a condemnation involving "substantial taking or destroying," or deprivation of "a substantial part" of property. | Property is not "taken," within meaning of takings clause of State Constitution, if it is simply damaged. Const. Art. 1, § 18. | Is property taken if it is simply damaged under the takings law? | 007006.docx | USA/LEA6 00127413-USA/LEA6 00127414 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 19902 | Curry v. Sec'y of Army, 595 F.2d 873 | 34+1 | We begin with the unassailable principle that the fundamental function of the armed forces is "to fight or be ready to fight wars." Toth v. Quarles, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). Obedience, discipline, and centralized leadership and control, including the ability to mobilize forces rapidly, are all essential if the military is to perform effectively. The system of military justice must respond to these needs for all branches of the service, at home and abroad, in time of peace, and in time of war. It must be practical, efficient, and flexible. | Fundamental function of armed services is to fight or be ready to fight wars. | What is the fundamental function of the armed forces? | Armed Forces - Memo 10 - M4.docx | ROSS-003234707076-ROSS-003287077 | SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 19903 | Titus v. Mechreter, 289 Ala. 328, Cir 1 95 | 309+23 | Speaking demurrers are not permissible under the system of equity pleading. | Speaking demurrers are not permissible under the system of equity pleading. | Are speaking demurrers permissible? | Pleading - Memo 211 - RMM.docx | ROSS-003238856-ROSS-003238657 | SA, Sub | 0.67 | 0 | 1 | 1 | 1 | |
| 19904 | Estate of Lewis v. Lewis, 229 Ariz. 275 P.3d 615 | 30734+746 | Being patterned after Rule 16(f), Fed.R.Civ.P., this procedural rule is designed, in part, to enable courts to deal with "disobedient or recalcitrant parties [of their attorneys] and is intended to "encourage forceful judicial management." Fed.R.Civ.P. 16(f) advisory comm. note to 1983 amend.; see also N. Civ. P. 16(f) state bar comm. note to 1984 amend. (noting sanctions available for "the uncooperative party, the attorney, or both"). When the pretrial conference is a technique to promote the disposition of litigation by cooperation or agreement. The purpose of the sanctions is to coerce this cooperation when there is disposal of litigation is thwarted by a party's disregard. See Ariz. R. Civ. P. 16(f) state bar comm. note to 1984 amend. (noting that sanctions serve to "ensure[e]... Sanctions serve to facilitate compliance with the rule.").    Nonetheless, dismissal with prejudice is a drastic sanction that should be imposed only in extreme circumstances. The court should weigh the harm caused by applying negligence and oversight. Ariz. R. Civ. P. 16(f). | Even if an out-of-state objector in probate proceeding had been told by his counsel that his personal presence was required at second pretrial conference, trial court abused its discretion where it entered a default judgment and dismissing objector's complaint, as nonaggravated circumstances were present; objector had made a previous appearance by telephone, objector's telephonic objection, trial court's statement at earlier pretrial conference, the objector was expected to personally appear, was not phrased as an order and could have been interpreted as referring only to the trial, minute entry order also lacked clarity, and minute entry order had not been served on objector. 16 A.R.S. Rules Civ. Proc., Rule 16(f). | What is a pretrial conference and what is the purpose of sanctions for failure to appear at a pretrial conference as ordered by a court? | 026438.docx | USA/LEA6 00128589-USA/LEA6 00128590 | Condensed, SA, Sub 0.17 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,973 | 23,876 | 9,029 |
| 19905 | Bankan & D.R.R. Co. v. Delaware R. Canal Co., 1876 L 61, 146 | 70+2(1) | The controversy in this case, therefore, is between the complainants and every wrong-doer, who is within the question therein arises. Has a railroad company any redress against a competition unwarranted by law, and which materially affects the value of the complainants, against unlawful competition and if so to prevent an act to prevent person upon what premises, or by what course of reasoning, other than an authorized to reach such question could be justified. A franchise to build a railroad for public use and to take tolls, is property, the title to which is held for the sovereign, and like every other thing susceptible of private ownership, it must, of course, be under the protection of the laws. Unless it can be shown that this species of right is altogether anomalous in its character, and under no protection of exceptional rule, a wrongful invasion of such right cannot but be followed by a legal redress. Theoretically, then, the claim to judicial redress is clear; and although analogies, as well as decided cases, concur in support of the same view. At common law, franchises of a similar nature, considered with regard to remedial justice, were placed on the same footing of other proprietary things. "If a ferry," says Blackstone, "is erected on a river, so near to another ancient ferry as to draw away its custom, it is a nuisance to the owner of the old one. T Black. Com. 219. And to the same effect is the case of Blisset v. Hart, Willes 9; 508, the court, speaking of a ferry, say, "This is franchise that no one can erect without a license from the crown, and when one is erected, another cannot be erected without another franchise... But if a second is erected without a license, it is a nuisance, and the former grantee has a remedy by action." The books are explicit with cases sustaining actions for encroachments upon the enjoyment of the privilege of this class. The rule of the common law is clearly indisputable that the franchise to maintain markets... | This is the title of the property of a franchise held for the sovereign, which is a necessity by law? | The franchise of taking tolls upon public terms, bridges, or highways, is a part of the sovereign prerogative, which cannot be obtained by grant. Railroads for popular use, and for tolls, are public juris. | 043683.docx | LEGALEASE 00138545- LEGALEASE 00138547 | Condensed, SA, Sub 0.97 | | 0 | 1 | 1 | 1 | 1 |
| 19906 | Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp., 277 F. Supp. 2d 304 | 217+1522 | The Insurers are permitted to bring an action against Goldman based on its alleged negligence in maintaining the water pipes on its property if the Lease contains a broader waiver of subrogation clause, providing that "each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty." Lease Agreement. To the extent that such insurance is collectible, the parties "released and waive[d] [all right of recovery against the other," Id. Because Goldmo sought relief from first from the Insurers and was fully compensated, the Insurers are prohibited from bringing negligence action against Goldman. However, the waiver of subrogation clause does not bar tort claims based on gross negligence. See Travelers Indem. Co. of Ill. v. Losco Grp., Inc., 2002 WL 123506, see also Southeast Marine, 194 F.3d at 1016 n. 8. | Can a waiver of subrogation bar a claim for gross negligence? | Under New York law, tenant's insurers' breach of contract claim against landlord was within scope of mutual waiver of subrogation clause in lease and its provision of costs of damages arising from party's failure to timely insure property; claim was based completely on landlord's alleged negligence in maintaining water pipes on property. | 043237.docx | LEGALEASE 00138461- LEGALEASE 00138462 | Condensed, SA, Sub 0.65 | | 0 | 1 | 1 | 1 | 1 |
| 19907 | Trinity Universal Ins. Co. v. Bill Cox Const., 75 S.W.3d 6 | 365+55 | Trinity's right to subrogation derives from the rights of Dog Team, and is limited to those rights. Guillot v. Ho, 838 S.W.2d 230, 232 (Tex. 1992). Subrogation rights may be waived or altered by contract. Lyons Corp. v. Murillo, 909 S.W.2d 122, 127 (Tex.App. "San Antonio 1995, no writ). BCCI was not a party to the insurance contract between Dog Team and Trinity, thus, BCCI must look to its own contract with Dog Team to determine what subrogation rights it may resist that Dog Team required a waiver. See Fortis Benefits v. Cantu, 234 S.W.3d 642, 351 (Tex 2007). | Subrogation rights may be waived or altered by contract. | Subrogation rights may be waived or altered by contract. | 043260.docx | LEGALEASE 00138367- LEGALEASE 00138368 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 19908 | Disabled Veterans Tr. v. PorterField Const., 996 S.W.2d 548 | 95+147(1) | Waiver of subrogation clauses are valid and enforceable. Butler v. Mitchell-Hugeback, Inc., 895 S.W.2d 15 (Mo. banc 1995). "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." J. E. Hathman, Inc. v. Sigma Int'l, Inc., 491 S.W.2d 261, 264 (Mo. banc 1973). Where the contract is unambiguous, intention is ascertained from the contract alone. Id.; Cornhill Health Sys., Inc. v. Royal Gardens Associates, 743 S.W.2d 692, 674 (Mo. App. 1987). A disagreement by the parties as to the proper interpretation of the contract does not render the contract ambiguous. Id. A contract is ambiguous only when its terms are susceptible to fair and honest differences. Cornell, 743 S.W.2d at 673; J.E. Commercial Real Estate Group, Inc. v. Equity Partnerships Corp., 917 S.W.2d 643, 646 (Mo. App. 1996). The determination of whether a contract is ambiguous is a question of law and properly decided by the court. Id. Courts will not interpret a contract as providing for a result when the intention of a contract that may be ambiguity in a written instrument should be construed against the party which drafted the ambiguous language. Parker v. Pulitzer Publishing Co., 882 S.W.2d 245, 249 (Mo. App. E.D. 1994). | Can you enforce a waiver of subrogation provision? | The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. | Subrogation: Memo # 1152 - C - VA.docx | ROSS-003317353-ROSS-003317356 | Condensed, SA | 0.89 | | 0 | 1 | 1 | 0 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 19909 | Connors v. Sexton Studios, 270 N.J.Super. 390 | 307A-563 | We are aware to the trial judge that not only are procedural dismissals with prejudice generally unwarranted in situations such as this, but procedural dismissals themselves are not favored. I.J. See Mardar v. Realty Constr. Co., 84 N.J.Super. 31.3.33, 202 A.2d 175 (App.Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964); Yancey v. The Hall Corp., 204 N.J.Super. 429, 433, 499 A.2d 674 (App.Div.1985). Plaintiffs' explanation concerning the late arrival on October 23, 1992 were uncontroverted. No plaintiff was told of effect by the trial judge that since the list was called commencing at 9:15 a.m. and defendants were present, no excuse, however reasonable, would justify plaintiff's tardiness and that his cause of action was lost. We remind the judge that courts exist to serve the litigants, not the other way around. Cases should be won or lost on their merits and not because litigants have failed to comply precisely with particular court schedules, unless such noncompliance was purposeful and no lesser remedy was available. We reiterate Judge Cohen's statement in Audubon Volunteer Fire Co. No. 1 v. Church Constr. Co., Inc., 206 N.J.Super. 405, 406, 502 A.2d 1183 (App.Div.1986). We appreciate the desirability of the prompt disposal of cases. Courts should not tolerate delay, nor should they provide a disincentive forum for the just resolution of disputes. Ordinarily, the swift movement of cases serves the parties' interest, but the shepherding function serves a cause ill-served by unconscionably closing the courtroom door to a litigant whose only sin is to retain a lawyer who delays filing or pressing during an early stage. Their expeditious is to move cases must defer to our paramount duty to administer justice in the individual case... | Dismissal with prejudice for failure to appear is generally unwarranted, and procedural dismissals themselves are not favored. R. 1.2-4. | Are procedural dismissals favored? | Pretrial Procedure - Memo # 149 - C - TI.docx | ROSS-003192/ROSS-003193 | Condensed, SA, Sub 0.92 | 0 | | 1 | 1 | |
| 19910 | Crocco v. Merchants' State Bank of St. Hilaire, 109 Minn. 303 | 30+13 | The attempt of the appellant to dismiss the first appeal was a nullity. Merrill v. Dearing, 24 Minn. 179. If it follows that, when the second notice of appeal was served, the case was pending in this court on the first appeal from the judgment, and we have the question whether a second appeal from a judgment or order may be taken while a former valid appeal therefrom by the same party is pending. The dismissal of the appeal in this court does not preclude the taking of another appeal in the same cause within the time allowed by law (H.S., 18C, *477), but the question here to be decided is whether a party having taken an appeal to this court may, while that appeal is pending, take another appeal from the same order or judgment. We hold that it cannot, for the reason that such a case is not within the provision of the statute providing for a second appeal from the same order or judgment. It is apparent that the method to follow the appellant's counsel was under the impression that his attempt to dismiss the appeal was effectual when this notice of appeal was served, but the right of appeal is a purely statutory one, and the statute is not complied with the court is without discretion to grant any relief. | A second appeal cannot be taken while a former appeal is pending. | Can a second appeal be taken while a former appeal is pending? | 009226.docx | LEGALKSE-00129119-LEGALKSE-00129120 | Condensed, SA, Sub 0.55 | 0 | | 1 | 1 | |
| 19911 | Tremont Lumber Co. v. May, 143 La. 389 | 302+243 | The amendment should not have been allowed. A petition upon which no judgment can be pronounced does not show a cause of action, and a petition which does not show a cause of action is, legally speaking, no petition, and hence cannot be amended. For definition of a petition, see American State Reports (Cent., 138 La. 1011A, 1137; 137 A. Absdev v. Barre, 41 La. Ann. 183, 5 South. 526; this court said: 'The court is powerless to authorize an amendment which would insert a cause of action into a petition which originally asserted nothing, because the right-of-way is held by the public body for public purposes, a utility does not have a proprietary interest in the permanent location of its facilities in the right-of-way, see 214 La. 854, 50 South. 772, the court said: 'Unless a cause of action is alleged there is no foundation, and hence nothing to amend.' See these cases quoted with approval in Dej5an v. Hyde, 113 La. 181, 36 South. 915. | Where document alleged to be made part of petition is not in fact annexed and filed, although court is of opinion that it discloses no cause of action, it may at any time before exception allow plaintiff to amend. | Can a suit which does not allege a cause of action be amended? | 021307.docx | LEGALKSE-00129203-LEGALKSE-00129204 | Condensed, SA, Sub 0.73 | 0 | | 1 | 1 | |
| 19912 | AT & T v. Pennsylvania Pub. Util. Comm'n, 709 A.2d 980 | 317K+114 | Normally, a government agency does not have the authority to impose or interfere with contractual obligation that was entered into through a non-length negotiation by the parties. Harristown Development Corporation v. Department of General Services, 135 Pa.Cmwlth. 177, 580 A.2d 1174 (1990). However, an exception is made to this general rule for the Commission because a public utility's location of its facilities within a public right-of-way is merely a privilege that is, by definition, revocable. No matter the terms of an agreement, because the right-of-way is held by the public body for public purposes, a utility does not have a proprietary interest in the permanent location of its facilities in the right-of-way. See Delaware River Port Authority v. Pennsylvania Pub. Util. Commission, 70.3 A.2d 589 (Pa.Cmwlth. 1997). | Exception is made for Public Utility Commission (PUC) to general rule that government agency does not have authority to impose or interfere with contracts between private parties, as a public utility's location of its facilities within public right-of-way is merely a privilege that is, by definition, revocable. Const. Art. 1, S 17. | Does a utility have a proprietary interest in the permanent location of its facilities in the right-of-way? | Public Utilities - Memo 254 - AM.docx | ROSS-003287473-ROSS-003287672 | Condensed, SA, Sub 0.63 | 0 | | 1 | 1 | |
| 19913 | U.S. ex rel. Frank M. Sheridan Co. v. St. Paul Fire & Marine Ins. Co., 2.3B F.R.D. 404 | 25T+205 | The Court can find no indication that the Third Circuit has addressed whether a surety is bound by an arbitration clause in accordance with the majority view. The Third Circuit held that an arbitrator's decision was binding against a non-party whose interests were 'directly related, if not in fact congruent' to those of a party to the arbitration proceeding. Isidor Paramount Assocs. Inc. v. Kharel Productions, Inc., 969 F.2d 543, 550 (3d Cir.1993). See also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1122 (3d Cir.1993) (citing Isidor for the proposition that 'non-signatories of an arbitration agreement may be bound against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory.') | If one of the parties fails to comply with an arbitration agreement, a court may order the parties to proceed to arbitration in accordance with the terms of the agreement, under the Federal Arbitration Act (FAA), 9 U.S.C.A. S 1 et seq. | Will courts uphold an arbitration agreement against non-parties, if interests of the parties are not directly related to those of a signatory? | Alternative Dispute Resolution - Memo 320 - ME.docx | ROSS-003285582-ROSS-003285583 | SA, Sub | 0.72 | | | | | |

3506

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19914 | Dornacker v. Olson, 248 N.W.2d 844 | 1.41E+19 | It appears to be Dornacker's principal argument that if the school system is the school system of the State, then the costs of maintaining it are "an expense of the State" within the contemplation of Section 174 of the North Dakota Constitution. State v. Alquist, supra, held that the school system is the school system of the State and that local taxing units can be required to support that system. Dornacker says that the State cannot do indirectly what it is prohibited from doing directly. (See also, State v. Wetz, supra.) | School system is the school system of the state, not of an organized administrative unit. | Is the school system the school system of an organized administrative unit? | 017002.docx | LEGALEASE-00129758-LEGALEASE-00129759 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 19915 | Sturgeon v. Holtan, 486 S.W.2d 209 | 168+20(1) | Defendants say that plaintiff has pleaded only legal conclusions saying "the allegation that defendants' acts are within their respective official capacities and beyond their respective capacities is but a conclusion." However, there is more to plaintiff's petition than these apparently contradictory allegations. Defendants cite Jones v. Van Bever, 164 Ky. 80, 174 S.W. 795, an action against a sheriff only for an arrest made by his deputies which was not made for any violation of the laws of Kentucky. It was said: "The allegation that the arrests were made by the deputies in their official capacities is a mere legal conclusion * * * and adds nothing to the petition" (l.c. 796). The sheriff was held not liable for the acts of his deputies because the arrest was not made "in an attempt to serve or execute a writ or process, * * * or in acting under a statute giving him the right to arrest without a warrant" (l.c. 801). Actually the deputies were not acting under any authority of the sheriff but were attempting to deliver the plaintiff to another state. Plaintiff herein alleged that defendants "caused and instigated" his arrest. This has been held to be a sufficient allegation to state a claim for liability for false arrest. See Knupp v. Esslinger, Mo.App., 363 S.W.2d 210, 213; Gerald v. Caterers, Inc., Mo.App., 382 S.W.2d 740, 744; Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239, 241 and cases cited. Considering the whole petition plaintiff herein is really claiming defendants were acting beyond their legal authority in causing and making his arrest whether acting in their official capacities as public officers or otherwise. | Petition which, while alleging that defendants, mayor, city administrator, alderman and city policemen, were acting in their official capacities, also alleged they were acting beyond their official capacities as individuals without color of right, amounted to claim that such defendants instigated and caused plaintiff's arrest without any justification and was sufficient to state a claim for false arrest or false imprisonment. | "Is an allegation that arrests were made by the deputies in their official capacities, a mere legal conclusion?" | 023134.docx | LEGALEASE-00129825-LEGALEASE-00129826 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 19916 | United Bonding Ins. Co. v. Castle, 444 P.2d 454 | 307A+742.1 | If there were to be indemnification from Stewart & Fritz to United Bonding on any judgment found against the latter, this implies that there was a principal-surety relationship between the parties, which in turn leads to the conclusion that a payment bond was in effect. In addition, no mention was made in the pre-trial order that execution or delivery or acceptance of the bond was in issue. The purpose of pre-trial is to clearly define all issues to be tried and decided-hidden issues or defenses are not to be tolerated.]\| Issues not presented at pre-trial may not be later raised at the trial. United Bonding was precluded from raising an issue as to the execution or delivery or acceptance of the payment bond in question by reason of its failure to raise the issue at pre-trial proceedings. | Purpose of pretrial is to clearly define all issues to be tried and decided-hidden issues or defenses are not to be tolerated. | What is the purpose of pre-trial? | Pretrial Procedure - Memo # 1529 - C - NE.docx | ROSS-003287620-ROSS-003287621 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 19917 | Hoy v. Smith, 2 Wyo. 459 | 307A+501 | The assignment of error, that the court below erred in taking the case from the jury by anon-suit against the plaintiff's will and over his objection and exception duly taken and presented at the time, and upon a writ of error here duly prosecuted, is sustained. It was not necessary, we think, to move for a new trial, which the plaintiff in error did out of abundant caution. There was no trial; the meaning of a non-suit is that the plaintiff does not proceed to a trial. A jury having been impanneled, the plaintiff was entitled to a verdict, and of this he could only be deprived by his consent; here it was entered against his consent; he excepted, his exception then, as we have said, was well taken, and his assignment of errors sustained. Wherefore the judgment entered in the court below, at the July term, 1878, must be annulled and set aside, and this case remanded to said court for a trial to be had therein in conformity with this opinion; the plaintiff in error to have his costs in both courts. | The meaning of a "non-suit" is that plaintiff does not proceed to a trial, and a non-suited plaintiff need not move for a new trial as a condition precedent to taking an appeal. | Is an instance where the plaintiff does not proceed to trial be a non-suit? | Pretrial Procedure - Memo # 1550 - C - SS.docx | ROSS-003301320-ROSS-003301321 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 19918 | Willis v. Nationwide Debt Settlement Group, 878 F.Supp.2d 1208 | 25T+134(6) | For the same reason the Court concluded the forum-selection provision in the Nationwide Services Agreement unenforceable, the court likewise finds the forum-selection provision in the Global Agreement mandating arbitration in Tulsa, Oklahoma, is unconscionable. As noted, to determine whether that provision is severable or whether the entire arbitration clause is unenforceable, the Court must assess whether the arbitration clause is so "permeated by unconscionability" as to prevent enforcement. 242 F.Supp.2d at 876. | Unenforceable forum selection provision in arbitration clause in debt consolidation services contract, which required arbitration in California, would be severed from the arbitration clause, and arbitration would be required in Oregon, under section of Oregon consumer protection statute governing arbitration agreements, and thus arbitration clause would not be unenforceable due to procedural or substantive unconscionability. West's Or.Rev. Stat. Ann. S 81.150. | How do courts determine whether an arbitration provision is severable? | 007332.docx | LEGALEASE-00131179-LEGALEASE-00131180 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 19919 | Seed Holdings v. Jiffy Int'l AS, 5 F. Supp. 3d 565 | 25T+316 | The Sellers argue that by making representations and warranties regarding their compliance with GAAP elsewhere in the APA, they expressly excluded objections relating to non-compliance with GAAP from the purview of the arbitration clause. This argument has been considered and rejected by other judges in this District, who have consistently concluded that it is of no moment that disputes about arbitrability could also be characterized as arising under other provisions of a contract. See, e.g., Talegen, 1998 WL 513066 (finding that claims are arbitrable, "even if the claims may be characterized another way"); Gestetner Holdings, PLC v. Nashua Corp., 784 F.Supp. 78, 81 (S.D.N.Y.1992) (finding that a claim was arbitrable even though it could also have been characterized as a claim for breach of representations and warranties). | Independent accountants (IAs) did not exceed scope of their authority under arbitration provision in asset purchase agreement by granting working capital adjustments to buyers that were sought by buyers for first time outside of contractual deadline for submitting requests for adjustments, where agreement called for period of negotiation of unspecified length to follow submission of both parties' determinations of working capital, IAs were then to be engaged not merely in order to compare parties' respective calculations of estimated and actual working capital and determine who was right, but, rather, to resolve "any dispute" arising out of those negotiations and to prepare report that provided "resolution of such unresolved disputes" that would be "conclusive and binding upon all parties," and it was reasonable for IAs to conclude that they were authorized to take into consideration arguments, claims, and information raised after respective thirty-and forty-five-day deadlines that affected determination of actual closing working capital. 9 U.S.C.A. S 10(a)(4). | Can arbitration be compelled if claims can be characterized in another way? | 007399.docx | LEGALEASE-00131360-LEGALEASE-00131361 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19920 | McCovens v. State, 539 N.E.2d 26 | 67+2 | Behind the present statutory language stand the prior burglary statutes. Under those statutes, while a fence was considered a valuable "structure" in need of special protection against theft, by express terms, the entering of a lot or yard enclosed by a fence with the intent to commit a felony was considered only third degree burglary, a crime punishable by no more than one year at the state farm:whoever enters or attempts to enter any inclosed or uninclosed lot, parcel, or tract of land, with the intent to commit a felony thereon, or with the intent ... to sever or remove any building, gate, fence, railing, or other structure, shall be guilty of burglary in the third degree.... | To obtain conviction for burglary, it is not necessary for State to prove that defendant committed theft or any other felony, because burglary is complete upon breaking and entering with intent to commit felony. | Can entering a fenced area constitute burglary? | 013298.docx | LEGALEASE-00131407-LEGALEASE-00131408 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 19921 | Florida E. Coast Ry. Co. v. Lewis, 167 So. 2d 104 | 307A+501 | In the recent case of Dobson v. Crews this Court was called upon to decide whether the amendment by the Supreme Court in 1962 of Rule 1.35 of the 1954 Rules of Civil Procedure relating to dismissals of actions, which eliminated therefrom the provision relating to nonsuits, had the practical effect of abolishing nonsuit procedure in Florida. In an able opinion authored by Associate Judge Mason, the history of nonsuits as a part of the procedural law of Florida was discussed in detail. There, as in the case sub judice, we were concerned solely with a voluntary nonsuit taken by a plaintiff during the trial of his action. In Dobson we confined our decision to a determination of whether voluntary nonsuits have been abolished in Florida and the right of a plaintiff to a voluntary dismissal is governed solely by the provisions of Rule 1.35, 1954 Rules of Civil Procedure as revised on September 30, 1962. In Dobson we concluded that the nonsuit procedure which permits a plaintiff to discontinue and dismiss his action as a matter of right without prejudice and without the necessity of securing permission of the court was in direct conflict with the provision of Rule 1.35(a) which, in the absence of stipulation, precludes a plaintiff from voluntarily dismissing, discontinuing or nonsuiting his action as a matter of right after answer or motion for summary judgment or decree, and requires that this be done only upon order of the court and upon such terms and conditions as the court deems proper. Having reached this conclusion it was held that the common law procedure of voluntary nonsuits was abolished in this state upon the adoption of Rule 1.35 relating to voluntary dismissal of actions. This holding is in conformity with the Supreme Court's opinion of June 20, 1962, which provides that its rules of procedure shall supersede all conflicting rules and statutes. On the authority of Dobson we must hold that on the first trial of the case we now review appellee had no lawful | Under current rule, plaintiff had no lawful right to voluntary nonsuit. 30 F.S.A. Rules of Civil Procedure, rule 1.35 and subd. (a). | Does a plaintiff have no lawful right to a voluntary nonsuit? | 026095.docx | LEGALEASE-00131101-LEGALEASE-00131102 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 19922 | Shepard Realty Co. v. United Shoe Stores Co., 193 La. 211 | 307A+501 | Thirdly, it is argued that the suit brought by plaintiff against the defendant in Alabama interrupted the running of prescription. As we have stated, plaintiff took a voluntary non-suit in that case; and it was held in Davis et al. v. Young, 35 La.Ann. 739, that: 'There exists no essential difference between a discontinuance and a voluntary non- suit. A suit in which plaintiff is non-suited, on motion of his counsel, does not interrupt prescription, whatever the intention may appear to the contrary. A voluntary non-suit is equivalent to an abandonment. R.C.C. 3485. Dennistoun v. Rist, 9 La.Ann. 464; (Smith v. Gibbon), 6 La.Ann. 684.' | There exists no essential difference between a "discontinuance" and a "voluntary nonsuit." | Is a discontinuance and a voluntary nonsuit essentially the same? | Pretrial Procedure - Memo # 1444 - C - PC.docx | ROSS-003301050-ROSS-003301051 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 19923 | Kettlewell v. Peters, 23 Md. 312 | 307A+501 | Whatever may be the mode of proceeding in other States, this is not adopted in Maryland. The Court may, in its discretion, content itself with a simple refusal of any prayer not sanctioned by the rules of law. Md. Ins. Co. vs. Bathurst, 5 G. & J., 159. When the Court cannot grant the entire prayer as made, though a portion of it, in a separate distinct form, might have been given, it is not error to reject the whole. Doyle vs. The Comrs. of Balto. Co., 12 G. & J., 484. Gray vs. Cook, 12 G. & J., 236. The motion of the defendant below, being contrary to the practice established in this State, was properly overruled, however sufficient the reasons might have been for defeating the action, if presented in another form, upon which we do not mean to express an opinion in this case. A non-suit must be the voluntary act of the plaintiff. Evans' Prac., 314. "The expressions common in English books, that the Judge directed a non-suit, and others of a similar import, mean no more than this, that the Judge expressed in that form of words his opinion that the plaintiff was not entitled to recover, and that the party submitted to a non-suit rather than the Judge should enforce his opinion by a direction to the jury as to the verdict." Id., 315. 14 How., 222, and authorities there cited. | A non-suit must be the voluntary act of the plaintiff. | Should a non-suit be the voluntary act of the plaintiff? | Pretrial Procedure - Memo # 1663 - C - KG.docx | ROSS-003287689-ROSS-003287690 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | |
| 19924 | Harbour Vill. Apartments v. City of Mukilteo, 139 Wash. 2d 604 | 371+2001 | The central inquiry is therefore whether the RDU fee is an excise tax ora property tax. To answer this question we must recall "[t]he character of a tax is determined by its incidents, not by its name." Jensen v. Henneford, 185 Wash. 209, 217, 53 P.2d 607 (1936) (citations omitted). The "incident" or measure of this tax is the mere ownership of that subclass of real property defined by its rental use. Each rental unit is directly taxed at $80.60 regardless of whether it is actually rented, the number of rental transactions associated with the property, or any other factors normally associated with ongoing business activity, including income. Nor is this RDU tax an excise on the mere privilege to conduct a rental business-that is already separately taxed at the rate of $61.00 per business location. Rather the incident of this tax is on rental property as such-and a tax on rental property is no less a tax on property. | The character of a tax is determined by its incidents, not by its name. | Is the character of a tax determined by examining the incidents of the tax? | Taxation - Memo # 168 - C- NA.docx | ROSS-003287708-ROSS-003287709 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 19925 | Gleason v. City of Seattle, 150 Wash. 2d 540 | 371<291 | Because providing oversight is a governmental function of the city, we must next determine if [defendant 110747] responded too late. We rely, for those costs. Determining what is a tax or a fee is often quite difficult. Dean v. Lehman, 18 P.3d 523, 531, 143 Wash. 2d 12, 28, 18 P.3d 523 (2001). To be difficult, however, to pigeonhole these charges. 5. Generally speaking, taxes are imposed to raise money for the public treasury. Id. at 25, 18 P.3d 523 (citing Wash Const. art. VII, 1); State v. Case, 39 Wash. 177, 182, 81 P. 554 (1905). A local government does not have the power to impose taxes without statutory or constitutional authority. Covell v. City of Seattle, 127 Wash. 2d 874, 879, 905 P.2d 324 (1995). | Generally speaking, taxes are imposed to raise money for the public treasury. | What is a tax? | Taxation - Memo # 37 - C - E.docx | ROSS-003131015-ROSS-003131053 | Condensed, SA | 0.89 | 0 | | 0 | 1 | |
| 19926 | Hatzon'm'n. Monsanto Company Ltd., 4447-2d 156 | 25?1<44 | The district court found that that jurisdiction over the subject matter and parties was to be determined under existing contract to proceed to arbitration and staying the proceedings in the Court of Chancery in Delaware. The district court disposed of the claims defense by holding that the merits of the defense were to be determined by the holding arbitration as well before the court. The district court concluded: "The parties agreed to submit all controversies to arbitration, they further agreed to preclude arbitration of the issue of laches they could have expressly so provided in their contract. Since no such provision exists in the instant contract, the question of whether the defense of laches to the arbitration should preclude the arbitration Act, avoiding the expense and delay of an arbitration court proceedings, are fulfilled." | Where a determination of issue of laches required fact-finding review of entire contract for design and engineering of plant and all its transactions occurring under it, issue was determinable by arbitrator as demanded by owner under contract rather than by court. | Can the issue of laches in a contract be determined by an arbitrator? | 007466.docx | LEGALEASE-00132385-LEGALEASE-00132386 | Condensed, SA | 0.64 | 0 | | 1 | 1 | 1 |
| 19927 | Station Maint. Solv. v. Twn 989<91(1) | 989<91(1) | In Mabbee v. Stone, 374 Mkll App. 489, 437, 508, 89, 501 A.2d 892 (2005), this Court reversed the circuit court's exclusion of an expert witness as a sanction for violation of a scheduling order. We held: [Although] the governing principle [in imposing sanctions] is that the appropriate sanction for a discovery or scheduling order violation is largely discretionary[,] … the more draconian sanctions, of dismissing a claim or precluding the evidence necessary to support a claim, are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court. Id. at 502, 803 A.2d 892 [internal citations and quotation marks omitted]. Noting that "[s]cheduling orders are but the means to accomplish and not the end in themselves[,]" we held that case-ending sanctions "should be reserved for egregious violations of [the] court's scheduling order, and should be supported by evidence of willful or contemptuous or otherwise deliberate disregard for the authority of the court." Id. at 507, 501 A.2d 892. | Trial court lacked authority to enter default judgment against property owner as a sanction for alleged violation of scheduling order by property owner's insurer in action by adjacent property owner stemming from leak from underground gasoline storage tanks; the authority to enter order granted to in the belief that a party would comply with the order in order to avoid imposition of a penalty against it, if an insurance company, or, for that matter, any person or entity, was aware that a sanction would be punished for its violation of a court's scheduling order, the threat of sanctions would move to incentive for it to comply with an order of the court, and there was no evidence that property owner was complicit in insurer's violation of the order. Md Rule 2-504 | Are scheduling orders but the means to an end, not an end in themselves? | Pretrial Procedure - Memo # 1485 - C - ES.docx | ROSS-003328070-ROSS-003328071 | Condensed, SA, Sub | 0.28 | 0 | | 1 | 1 | |
| 19928 | Laws v. McIlroy, 283 Va. 594 | 241<130(5) | Code 7.4-317.2(G) states that a "plaintiff may recommence [an] action within six months from the date and then re-plane to place, be construed to be construed as a "recommence" means "to undergo a new beginning." In "start again," Webster's Third New International Dictionary 1897 (1993). "Form" is used as a function word to indicate a starting point." Id. at 913. We have always characterized an action filed in relation to construe as a "new" action filed or commenced for purposes of establishing relation back, as contemplated by or contrary independently of any prior nonsuited action." Antisdel v. Ashby, 279 Va. 42, 47, 688 S.E.2d 163, 166 (2010). | Tolling statute, allowing a plaintiff to recommence an action within six months from the date of a voluntary nonsuit, applied to toll two-year statute of limitations on second action brought by rear-ended motorist against passenger against rear-ending motorist and passenger (under motorist) where plaintiff filed second action after filing timely order in prior identical action but before second orders were entered in prior actions, statute stated that the plaintiff would have had the "within six months from the date of the order." not "after" the date of the order. West's V.Ca. 8.01-229(E)(3), 8.01-2.4(A), 8.01-380(A). | Does a new action start independently of any prior nonsuited action? | 027570.docx | LEGALEASE-00131566-LEGALEASE-00131569 | Condensed, SA, Sub | 0.06 | 0 | | 1 | 1 | 1 |
| 19929 | Bd. of Dir. of Union Tree Sch. Dist. No. 3 of Town of Oyster Bay, Nassau Cny v. Shaw, S.A.D.2d 816 | 371<291 | The theory of taxation is that it supports the public welfare, as that may from time to time and from place to place, be conceived to be. It is usually assumed that the tax levy meets external constitutional safeguards against the income of the people who pay the tax are themselves taxed, with the same approximate standard of instruction is followed based, for example, on the amount of income a man receives, or the value of real property he owns, or the nature of the business he conducts. | Taxation to support the public welfare, as that may from time to time from place to place be conceived. | 048850.docx | LEGALEASE-00131644-LEGALEASE-00131645 | SA, Sub | 0.76 | 0 | | 1 | 1 | |
| 19930 | Crittee v. City & Cnty. of San Francisco, 155 Cal. App. 4th 1326 | 268<95?(14) | California courts have subsequently clarified that, based on Government Code 66000 50075's limitations, "the requirement for an individual 60075's limitations, 'fee' was that a 'special tax' in violation of Proposition 13 requiring two-thirds voted of qualified electors to impose special tax, department of building inspection and planning and fee departments shared responsibility for reviewing applications and building plans and ensuring code compliance, planning department used the fees to prepare and implement general plan and cover overhead and other administrative costs of the departments' long-range planning division, the department used the fees for building the safety activities, these uses were reasonably related to the regulatory purposes for which the building permit fees were assessed, and the fees were permissibly proportional to the reasonable cost to provide services necessary to the building permit process. West's Ann.Cal. Const. Art. 13A, 4; West's Ann.Cal.Gov.Code 50076. | City's decision to permit planning and fee department to spend building inspection fund revenues from building permits on departments other than the building and create a "special tax" in violation of Proposition 13 requiring two-thirds vote of qualified electors to impose special tax, department of building inspection and planning and fee departments shared responsibility for reviewing applications and building plans and ensuring code compliance. | Can a special tax be deposited into general fund? | Taxation - Memo # 276 - C - S.docx | ROSS-003286843-ROSS-003286844 | Condensed, SA, Sub | 0.12 | | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 19931 | People v. Brandstetter, 103 Ill. App. 3d 259 | 63+110 | However, in People v. Walton (1979), 73 Ill.2d 265, 205, 312 N.E.2d 263, 265, the supreme court described the effect of bribery as occurring when the accused "promises or tenders to a public official" in the manner prohibited by the statute, while here the record discloses that the requisite intent is sufficient to constitute the completed offense of bribery ... [footnote text]. 18 App.3d 767, 340 N.E.2d 240, the court cited the foregoing to refute the claim of a defendant's crime. In upholding the trial court's refusal of an instruction ... the record is have been waived but also commented that the defendant's cases ... as such, (were) clearly distinguishable." (14 Ill.App.3d 767, 770, 340 N.E.2d 240, 241.) this conclude that the legislature intended the word "tender" to be said to a senior much broader than its usage in contractual law and to include the offer made by the defendant, although she was not shown to have in her possession the money offered. | Bribery conviction was not invalid merely because improper tender to state representative of $2,000 for his vote on expel bill amendment to constitute the completed offense of bribery Federal Constitution was accompanied by the offered vote was sufficient support S.H.A. ch. 38, P. 33-1(a). | Is the mere offer or promise with requisite intent sufficient to constitute the completed offense of bribery? | 001373.docx | LEGALEASE 0013285-LEGALEASE 0013286 | Condensed, SA, Sub 0.83 | | 0 | 1 | | 1 | 1 |
| 19932 | In re Prairie Trunk Ry., 125 B.R. 217 | 51+2467 | The lack of a statutory definition in the Bankruptcy Code for "individual" coupled with a complete absence of legislative history to section 362(h) is unfortunate. Other provisions of the Bankruptcy Code, however, lend support for the Court's conclusion, and by negative inference show that Congress has defined other entities to specifically exclude "individuals" where it clearly intended to except natural persons from the defined term. Section 101(9)(A) defines a "corporation" to include various association, companies and business trusts having a power or privilege that a private corporation, but not an individual or a partnership possesses. See H.R.Rep. No. 595, 95th Cong. 1st Sess. 309 (1977), S.Rep. No. 989, 95th Cong.2d Sess. 22 (1978). As Chatmaga noted, "person" as it defined in section 101(35) includes individual, partnership, and corporation excluding certain governmental units. See H.R.Rep. No. 595, 95th Cong. 1st Sess. 313 (1977), S.Rep. No. 989, 95th Cong. 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Thus, in those provisions of the Bankruptcy Code individuals are separate, distinguished from partnerships, corporations, and other artificial entities distinct from natural persons. Only an "individual" within the other subsections of section 362(h) is eligible for relief under Chapter 13 to the other human beings as noted by Chatmaga with reference to the statutory definition of "relative" contained in section 101(39). | Only natural persons, as "individuals," and not corporations, partnerships, or associations, can recover damages under the Bankruptcy Code for willful violations of automatic stay. Bankr. Code, 11 U.S.C.A. SS 109(e), 362(a, h), Bankr Code, 11 U.S.C.A11988 61515 101(9)(A)(10), 101. | Does the law distinguish a natural person from an artificial person? | Partnership - Memo 237 - 80.docx | LEGALEASE 0002512-LEGALEASE 0002513 | Condensed, SA, Sub 0.83 | | 0 | 1 | | 1 | 1 |
| 19933 | In re K2405 Notes Acquisition, 259 B.R. 239 | 46+486 | Similar considerations apply to partnerships, and have led most courts to conclude that a partnership may only appear in court through counsel. California Marc's Corp v. U.S. of 2 (12 F2d 35, at 17, 3rd Arch, Brock, v. Capital Marc v Montreal, 924 F.2d 1005, 1809 (2d Cir. 1991) ("(W)e are unable to perceive a palpable difference between the situation where a layperson is representing others having an interest in a corporation and the instant situation where a layperson wishes to represent other partners, general and perfect entities). | Partnership generally may only appear in court through counsel.[ ] | Can partnership only appear in court through counsel? | 02207S.docx | LEGALEASE 0013472-LEGALEASE 0013473 | SA, Sub | 0.88 | | 0 | 1 | | 1 | |
| 19934 | Kelsey v. Kelsey, 714 N.E.2d 187 | 289+1140 | In support of its "clarification" of the nature of the asset awarded to Wife, this court noted at 809 Illinois Compiled Acts 210/702, which provides: Assignment of a Partnership Interest. Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part by any partner, and an assignment does not, by itself, dissolve a limited partnership or, unless otherwise provided in the partnership agreement, entitle the assignee to become a partner or to exercise any rights of a partner. Except as provided in the partnership agreement, a partner ceases to be a partner upon the assignment of all of his or her partnership interest. (emphasis added). Under the Partnership Agreement [A]ssignment by a General Partner of any portion of its interest in the Partnership shall continue by and between the Limited Partners and the remaining General Partner(s), which may be admitted to the Partnership as a General Partner and succeed to the General Partner(s)." (emphasis added). | Husband's assignment of his general partner interest in limited partnership to wife pursuant to marital dissolution judgment did not make wife a general partner, where wife was not a third party with respect to the assignment, as between husband and wife, such that wife had been injured by the failure to amend the certificate of limited partnership. S.H.A.805 ILCS 210/101, 210/801, 2. | Does the assignment of a partnership interest dissolve a limited partnership? | Partnership - Memo 388 - ROSS-000291627-ROSS-000291628.docx | ROSS-000291627-ROSS-000291628 | Condensed, SA, Sub 0.83 | | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,973 | 23,876 | 9,029 |
| 19935 | Irie Golding, 97...843 | 289=284 | I suppose no one would seriously maintain that on an execution against a firm a creditor could levy and sell their real estate. [...] Conversion of partnership real estate is allowed to secure, in the interest of the partners themselves, the payment of the firm debts and advances made by the partners respectively. [...] and is subject to the principles and laws applicable to that species of property. [...] Cashin'v. Anderson, 3 Binn. 9; Trubel & A. Sec.58, 778; Price, Liens, 277. | A judgment against a partnership for a partnership debt, entered by confession of all the partners, is a lien upon the partnership real estate. | Can a judgment against a firm operate as a lien on the real estate of the partners? | 02163.docx | LEGALEASE-00135566-LEGALEASE-00135567 | SA, Sub | 0.9 | | | | 1 | |
| 19936 | Preferred Pictures Corp. v. Thompson, 170 Neb. 694 | 302=3(1) | In Nelson v. Nelson, 152 Neb. 741, 42 N.W.2d 654, 656, this court said: "Fraud presents a question of fact, and to be effective as a defense or as a cause of action must be pleaded by suitable allegation of fact from which it may be concluded. *** The mere charge of fraud is a conclusion and presents no issue." See, also, In re Estate of Nelson, 81 Neb. 163, 115 N.W. 1087; Western v. Taylor, 74 Neb. 386, 103 N.W. 1065, Kemper, Hemphill & McCombs v. Koons Co. v. Baugh & Sons Co., 153 Neb. 513, 78 N.W. 1071. | A general charge of fraud or misrepresentation is a conclusion and presents no issue of fact. | Does a mere charge of fraud present an issue? | Pleading - Memo 284 - MMM.docx | ROSS-003028598?-ROSS-003028598 | Condensed, SA | 0.82 | | 0 | | | |
| 19937 | Moore v. Pate, 112 N.C. App. 833 | 307A=511 | This is clear from our review of the record that plaintiff was seeking a dismissal under Rule 41(a)(1)(i). Under Rule 41(a)(1)(i) a dismissal is effected upon filing or said court. The court followed notice pursuant to N.C.App. 184, 405 S.E.2d 597 (1991). Once a dismissal is requested under (a)(1) the court action is required. Moore v. Taylor, 68 N.C.App. 134, 314 S.E.2d 814, disc. rev. denied, 311 N.C. 757, 321 S.E.2d 137 (1984). However, given the lateness of plaintiff's seeking the voluntary dismissal, a dismissal under Rule 41(a) (1) (i) was not available to him, regardless of the trial court's erroneous statement to the contrary. | Once dismissal is requested under rule entitling plaintiff to voluntarily dismiss by filing notice of dismissal at any time before resting case, no court action is required. Rules Civ.Proc., Rule 41(a)(1)(i), G.S. § 1A-1. | Is an oral notice sufficient to meet the filing requirement? | Pretrial Procedure - Memo # 2662 - C - NE.docx | ROSS-003028692-ROSS-003028693 | Condensed, SA, Sub 0.69 | 0.69 | | 0 | | 1 | |
| 19938 | Gibson v. Hughes, 192 F. Supp. 564 | 413=1 | It seems to me that these jurisdictions which have interpreted their compensation statutes as remedial reached this conclusion that they have reached the proper result. Not only are Workmen's Compensation statutes remedial in nature, but the jurisdiction to which this plaintiff seeks benefits, by its terms must be construed liberally. | Workmen's compensation statutes are remedial. [Longshoremen's and Harbor Workers' Compensation Act, § 1 et seq., 33 U.S.C.A. § 901 et seq. | Is it true that workmen compensation statutes are remedial? | Workers Compensation - Memo #564 ANC.docx | ROSS-003028685-ROSS-003028686 | Condensed, SA, Sub 0.59 | 0.59 | | 0 | | | |
| 19939 | Elvin v. Wuchetich, 326 Ill. App. 285 | 83I=408 | The notes were payable to the order of the Red Ball Transit Company, and it was necessary to a transfer of the legal title that they should be indorsed by that company. The indorsement of commercial paper requires, not only the signature of the payee or other holder of the legal title, but the delivery of the instrument to the indorsee. The assignment indorsed on the back of the note is in the control of the payee, and the payment of money by the payee or his indorsee is evidence that the debt witnessed by the instrument is an existing liability, and that the person in possession of the legal holder and entitled to receive payment. Brinkley v. Going, Breese, 364; Reid v. Kennedy, 13 Ill. 474. The same presumption does not prevail in favor of a stranger to the instrument. The mere possession of a negotiable instrument, payable to order and not indorsed by the payee, is not alone evidence of title, or legal or equitable, in the possessor; but the burden is on the possessor to prove his equitable title, by showing that he took it in good faith, for value. Collins v. Ogden, 323 Ill. 594, 154 N.E. 701. | Transfer of title to commercial paper requires endorsement by holder of title and delivery to indorsee. | Can a payee in the out the endorsement of the assignment in title and delivery to indorse? | Bills and Notes Memo 239 =P.docx | ROSS-003028123-ROSS-003028125 | SA, Sub | 0.91 | | 0 | | 1 | |
| 19940 | Skelton v. Urban Tr. Bank, 516 B.R. 396 | 83I=405 | The first avenue of enforcement is attaining the status of the instrument's "holder." Holder is defined as "the person in possession of a negotiable instrument requires transfer by the person in possession of the instrument and its indorsement by the holder." Tex. Bus. &Com.Code § 3.201(b)(2)(A). In other words, "[t]o possess a negotiable instrument as a holder under the instrument is issued for that person; or he can become a holder by negotiation." Leveraugh v. Mills, 375 SW 2d 561, 395 (Tex.App.2004) (citing Tex. Bus. &Com.Code § 3.201; cmt. 1 (2001)). For an instrument made "payable to an identified person," that person becomes a "holder by negotiation" through a "transfer of possession of the instrument and its indorsement by the holder." Tex. Bus. &Com.Code § 3.201(b)(2013). For the endorsement to be legally acceptable, it "must be written by or on behalf of the holder and on the instrument or on a paper affixed to it, such as a firmly affixed allonge. Leveraugh, 375 SW 2d at 395 (citing Tex. Bus. &Com.Code § 3.201(b), 3.204(a) (2001)); Vernooy, 377 774, 776 (App.1991)). A person who is not the original holder cannot attain the status of "holder by negotiation" unless there is proper written indorsement and proof of the chain of title." Id. (citing Jernigan, 803 S.W.2d at 776?77). | Under Texas law, if an instrument is payable to an identified person, negotiation requires transfer by the person in possession of the instrument and its indorsement by the holder; on the instrument or on a paper affixed to it, such as a firmly affixed allonge. V.T.C.A., Bus. & C. § 3.201(b), 3.204(a). | Can a person be a holder of an instrument by negotiation? | 01037.docx | LEGALEASE-00135876-LEGALEASE-00135877 | Condensed, SA, Sub 0.74 | 0.74 | | 0 | | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19941 | United States v. Brennan, 629 F. Supp. 283 | 110v250 | The third element of Rule Receiving is that the defendant had an understanding, directly or through another, with a debtor that has his opinion, judgment, action, decision or exercise of discretion as a public servant would be influenced. The crux of a crime under the receiving is this understanding or agreement. It is immaterial that the defendant may not have failed to keep his part of the bargain made during the bribe giver. The defendant was properly convicted of Bribe Receiving even though the result sought by the bribe giver was in fact lawful and proper, and, as suggested by the defendant's counsel, the something would have happened in the absence of any bribe. | Sentence of five years of imprisonment, concurrent on three of 26 counts, consecutive terms of imprisonment of five years, concurrent on remaining 16 counts, with consecutive five-year term suspended and defendant placed on probation for additional five years, forfeiture of $50,000 received in bribes, fine of $269,000, and payment of mandatory special assessment of $1,100 under Comprehensive Crime Control Act of 1984 would be imposed upon defendant convicted on 26 separate counts in connection with six separate bribe transactions related to defendant's solicitation and acceptance of series of bribes to fix cases in his court. 18 U.S.C.A. § 3013. | Can a defendant be convicted of receiving bribe if the end result is lawful? | 011266.docx | LEGALEASE 00138339-LEGALEASE 00138340 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 19942 | Maybach v. Falstaff Brewing Corp., 359 Mo. 446 | 302v81(1) | The petition states a claim upon which relief may be granted. It is undoubtedly good practice in pleading to set forth specific facts and to make the verdict, and we think it is sufficient even had the attack been more timely. A plaintiff should allege facts sufficient to inform the defendant of the breach of duty with which he is charged, and if such are the plaintiff's knowledge, he should be required to state them with reasonable particularity. Negligence, however, is an ultimate fact which may be pleaded as such, and not a conclusion. The law does not require evidence to be pleaded. | In negligence action, plaintiff should allege facts sufficient to inform defendant of breach of duty with which he is charged, and if facts are within plaintiff's knowledge, he should state them with reasonable particularity, although negligence is an ultimate fact which may be pleaded as such. V.A.M.S. § 509.300. | Should a plaintiff allege facts sufficient to inform the defendant of the breach of duty with which he is charged? | Pleading - Memo 296 - RMM.docx | LEGALEASE 00024503- LEGALEASE 00024504 | SA, Sub | 0.46 | 0 | | 1 | 1 | 1 |
| 19943 | Bergemann v. United States, 820 F.2d 1117 | 170Ak1466 | Rule 36(b) does provide that any matter admitted under Rule 36 is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Once sued requests for admissions are deemed admitted. Federal v. Johnson, 669 F.2d 762, 763 (D.C. Cir. 1981) Luv-N-Care v. Ouladi, (Fed. Cir. 473 F.2d) 1345, 1350, 1360 (1977). However, that same Rule 36(b) goes on to provide that the district court may permit such withdrawal or amendment "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Bergemann's response to Rule 36(b) is that any withdrawal or amendment of an admission may only be "on motion," and that this court does not have the power to rule on its own motion. | Government's response to plaintiff's motion for summary judgment and pretrial hearings in connection with such motion and Government's summary judgment motion were, in essence, motions for Government to withdraw any deemed response to request for admission that there was common-law marriage between plaintiff and defendant, and there was no prejudice in granting United States relief, where plaintiff clearly knew defendants challenged existence of common-law marriage and both parties anticipated matter until trial. Fed. Rules Civ. Proc. Rule 36(b), 28 U.S.C.A. | Will a provision providing that a court on motion permit withdrawal or amendment of admissions where presentation of merits be subserved, and party who obtained admission fails to convince court that it will suffer prejudice, emphasize importance of mooting action on merits? | 018685.docx | LEGALEASE 00133976-LEGALEASE 00133977 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 19944 | Butler v. Chicago, M. & N.R. Co., 89 Wis. 257 | 307Ak91.1 | Under this head the learned counsel of the appellant argues three errors: (1) The court put questions to the witnesses; (2) denied the motion for a new trial; (3) in instructing the jury (4) it was claimed that the questions put by the court in the trial were improper, but that they "disclosed sympathetic bias on the part of the court." The fact that can be said on this point in the appellate's court was proper. Witnesses on the point were not permitted to amend his deposition. This, as we understand it, was the correction of his own deposition, and became a proper matter not denied to any witness. We have sufficiently disposed of the question whether a new trial should be granted on the merits. (3) The learned counsel has not pointed out to its brief so specific instructions complained of as to the point is so general. There was nothing improper in the court's reading the pleadings to the jury, that they might know the nature of the issue in the case. We have carefully read the instructions of the court to the jury, and they appear to have been correct, judicious, and fair. | A witness may be permitted to amend his deposition. | May a witness be permitted to amend his deposition? | Pretrial Procedure - Memo 4 3058 - C - TM.docx | ROSS-003230789-ROSS-003250370 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 19945 | Tyrone v. State, 854 S.W.2d 153 | 211v597 | First, we note that Brown is inapplicable here as it was not determining whether a victim of statutory rape could be an accomplice. In Texas, the longstanding rule has been that a minor cannot legally consent to statutory rape, therefore the minor is not an accomplice. Snodgras v. State, 793 S.W.2d 878, 881 (Tex.Crim.App.1990); Hernandez v. State, 651 S.W.2d 784, 787 (Tex.Crim.App.1983). Our argument, however, is that a minor cannot be an accomplice, the State did not have to corroborate that minor's testimony to obtain a conviction for statutory rape. Hernandez, 651 S.W.2d 784 at 787. While appellant did not discuss Hernandez in his brief, to address his argument we must determine whether the rule espoused by Hernandez is overruled. | A minor cannot legally consent and is not an accomplice in a rape case? | Can a minor become an accomplice in a rape case? | 043021.docx | LEGALEASE 00134766-LEGALEASE 00134767 | SA, Sub | 0.85 | 0 | | 1 | 1 | 1 |
| 19946 | City of Mesa v. Home Builders Ass'n of Cent. Arizona, 111 Ariz. 29 | 371v201 | It is true there is no language in Mesa's Charter which specifically authorizes the levying of business and the charters of Phoenix and Tucson. See Home Builders Association v. Riddel, Supra, but we think the language used above is sufficient to plainly meaning confers on the power it is elementary that the entire matter of taxation is statutory and does not exist apart from statute. Board of Commissioners of Montgomery County v. Allen, 175 Kan. 460, 264 P.2d 916 (1953); overruled on other grounds, Phillips Petroleum Company v. Moore, 179 Kan. 482, 297 P.2d 1811 (1956) A county's statute § 9-204(B)(1)(a) does expressly provide for the tax set forth in Mesa's Ordinances No. 748. The direct reference in the Charter to Article VII of the Arizona Statutes does not in our opinion mean that the tax is implied. | Matter of taxation is statutory and does not exist apart from statute. | Is the matter of taxation statutory? | 043007.docx | LEGALEASE 00134521-LEGALEASE 00134522 | SA, Sub | 0.91 | 0 | | 1 | 1 | 1 |
| 19947 | Bell v. Josten, 2002 WL 533399 | 386v10 | Appellants alleged that Appellees erected a fence, which encroached upon their easement, thereby interfering with their use and enjoyment of it. Interference by erecting a fence over a property owner's use and enjoyment of an easement is a trespass. Shadas v. Titus (1989), At Ohio St. 3.28, 341, 22 N.E.2 217. To prove a trespass claim, the party must show that: (1) he or she had a possessory interest in the property; and (2) the offending party entered the property without plaintiff's consent or proper authorization or authority. McCasland v. Cleveland Twp. Trustees (1995), 74 Ohio Misc.2d 5, 18, 658 N.E.2 d 135. | Evidence was sufficient to support finding that neighbors had not trespassed nor interfered with property owner's use and enjoyment of easement by erecting fence; boundary tree stood near dweller section that the fence did not intrude the paved width of the easement, chief of the fire department testified that the fire truck had no trouble his ability to drive on the lane in the express and tankers and, yet, another dweller maintained that the fence was not in the lane, other, and other officers sworn witnesses admitted that the width of the land had not changed once neighbors had erected their fence. | Can the wrongful obstruction of an easement be held as a trespass? | Trespass - Memo 286 - SB.docx | ROSS-003290208 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19948 | Green v. U.S. Cash Advance Illinois, 724 F.3d 787 | 25T+149 | Section 2 of the Arbitration Act could provide a better foundation for an "integral part" escape hatch. Section 2 says that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." This includes all general principles of state law, though not any arbitration-specific doctrines. See, e.g., Marmet Health Care Center, Inc. v. Brown, """ U.S. """", 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012); AT&T Mobility LLC v. Concepcion, """U.S. """", 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). So if an error"such as the parties' mutual, but mistaken, belief that the National Arbitration Forum was available"would permit revocation of the contract under ordinary statelaw principles, the district court could declare the contract as a whole unenforceable. But neither side has asked for that relief or even contended that it would be possible under state law. The identity of the arbitrator is not so important that the whole contract is vitiated. Nor does either side contend that a mutual mistake of fact allows to be excised as a matter of general contract law. | Identity of arbitrator was not so important that whole contract had to be vitiated under provision of Federal Arbitration Act which says that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. S 2. | Is the identity of an arbitrator is an integral part of an arbitration agreement? | 007577.docx | LEGALEASE-00135313-LEGALEASE-00135314 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 19949 | Franks v. State, 240 Ga. App. 685 | 67+4 | "Where our appellate courts have considered the meaning of the word 'building,' we have defined or interpreted it broadly." In Estep v. State, we held that a storehouse is a building within the meaning of the burglary statute. In this instance, the layaway trailer functioned as a storehouse for Wal-Mart. It was a roofed and walled structure on Wal-Mart's property that served the purpose of sheltering and safekeeping Wal-Mart's merchandise. | Store's trailer that functioned as a storehouse for items on lay-away was a "building" within the meaning of the burglary statute, even though the trailer could be moved without having to dislodge it from the ground. O.C.G.A. S 16-7-1(a). | Is a storehouse subject to the burglary statute? | Burglary - Memo 113 - JS.docx | ROSS-003290430-ROSS-003290432 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 19950 | People v. Allen, 20 Cal. App. 4th 846 | 67+9(3) | The definition of the term "lock" must be formulated in accordance with the circumstances. To constitute a burglary, "neither forced entry in the usual sense of the word nor use of burglar tools [is required]." (In re Charles G. (1979) 95 Cal.App.3d 62, 67, 156 Cal.Rptr. 832.) Thus, for example, in People v. Malcolm, supra, 47 Cal.App.3d 217, 120 Cal.Rptr. 667, there is a burglary in the following situation: all doors of the victim's car are locked with a key; all of the car's windows are rolled up and closed; the left front wind wing lock is broken preventing the wind wing from being locked; and a perpetrator gains entry into the passenger compartment by pushing open the wind wing, reaching inside the car, and opening the door. "By mere happenstance, one wind wing was faulty and could not be tightly secured, thereby allowing the defendant to gain entrance into the car." (Id. at p. 223, 120 Cal.Rptr. 667.) There was a burglary in Malcolm, supra, because entry was obtained through a wind wing, a part of the car not designed to allow access to the vehicle's interior compartments, the owner reasonably expected any belongings inside the car to be secure, a common sense examination of the situation requires that result, and the statute is to be construedflexibly. | When the window of a vehicle is purposefully left accessible to invasion, and therefore no one would believe items left in the car are secure, some type of forced entry is required before a conviction for auto burglary may result. West's Ann.Cal.Penal Code S 459. | How is the automobile burglary statute construed? | 012657.docx | LEGALEASE-00135893-LEGALEASE-00135894 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 19951 | Hatfield v. State, 241 Ind. 225 | 110+795(2.55) | : Tendered Instruction No. 1 would have instructed the jury that the offense of second-degree burglary is included in the offense of automobile banditry. | Lesser crime of second-degree burglary was included in charge of automobile banditry, and it was error to refuse to charge with respect to lesser crime, where charging affidavit stated that defendants entered into building with the intent to commit a felony therein. Burns' Ann.St. SS 9-1817, 10-701, 10-4710. | Is auto banditry a lesser included offense than burglary? | Burglary - Memo 128 - JS.docx | ROSS-003331005-ROSS-003331006 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 19952 | Donroy, Ltd. v. United States, 196 F. Supp. 54 | 170A+2514 | To say that for practical purposes a limited partner in a partnership is no different from an investing shareholder in a corporation or from the corporate owner of a subsidiary corporation, overlooks the fact that in these latter instances the corporate entities are taxed for and pay income taxes while a partnership, whether limited or general, does not. | In actions by Canadian corporations for the recovery of federal income taxes on the ground that they were limited partners in California limited partnerships and that they did not have a permanent establishment in the United States and hence were entitled to the 15 per cent tax rate in the Tax Convention with Canada, issues of fact were presented precluding grant of plaintiffs' motion for summary judgment. | Are partners and shareholders treated differently for tax purposes? | 022223.docx | LEGALEASE-00135611-LEGALEASE-00135612 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 19953 | Kapoor v. Dybwad, 49 N.E.3d 108 | 302+18 | Additionally, in the FAC, Plaintiffs made several claims of fraud by various Defendants. Indiana Trial Rule 9(B) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred." In order to allege fraud sufficiently, the pleadings must state the time, the place, the substance of the false representations, the facts misrepresented, and identification of what was procured by fraud. Rogers v. R.J. Reynolds Tobacco Co. (1990) Ind.App., 557 N.E.2d 1045, 1055, reh'g denied. The word "fraud" need not necessarily be alleged, if the facts alleged show either actual or constructive fraud. Employers Ins. of Wausau v. Commissioner of Dep't of Ins. (1983) Ind.App., 452 N.E.2d 441, 447. A pleading which fails to comply with the special requirements of T.R. 9(B) does not state a claim upon which relief can be granted or a sufficient defense. Cunningham v. Associates Capital Serv. Corp. (1981) Ind.App., 421 N.E.2d 681, 683 n. 2. Abbott v. Bates, 670 N.E.2d 916, 922 n. 3 (Ind.Ct.App.1996). | Failure to comply with the specificity requirements for pleading fraud constitutes a failure to state a claim upon which relief may be granted; thus, any pleading which fails to satisfy the requirements fails to raise an issue of material fact. Trial Procedure Rules 9(B), 12(B)(6). | Should circumstances constituting fraud be specifically averred? | Pleading - Memo 311 - RMM.docx | ROSS-003290242-ROSS-003290243 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 19954 | Cent. Sav. Bank & Tr. Co. v. Succession of Brandon, 167 So. 515 | 302+8(1) | Allegation of a conclusion of law is no allegation at all. Such, when erroneous, is not binding on the pleader, and, of course, not on the court. Intermediate facts need not be alleged, but ultimate facts must be alleged. State v. Hackley, Hume & Joyce, 124 La. 854, 863, 50 So. 772. It is from such facts that legal conclusions may be accurately drawn. In the present case the ultimate facts alleged negative a conclusion that the paving assessment and notes sued on are succession liabilities. | Intermediate facts need not be alleged, but ultimate facts must be alleged. | Should intermediate facts be alleged? | 023301.docx | LEGALEASE-00135236-LEGALEASE-00135237 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 19955 | True v. Older, 227 Minn. 154 | 117+46 | Conceding that an allegation of duress alone is not sufficient without stating facts upon which the duress is based, still this complaint does state facts sufficient to constitute a cause of action. The complaint is entitled to liberal construction. M.S.A. s 544.16; Chamber of Commerce v. Wells, 96 Minn. 492, 105 N.W. 1124, where we held that the complaint was sufficient on a demurrer, and that if it was insufficient the remedy was by motion to make more definite and certain. We believe that is likewise true here. | In action for wrongful death, complaint, which alleged that as result of abortion deceased became violently ill and unconscious, that defendants failed to provide her with proper medical care, that one defendant removed deceased while she was unconscious from office where abortion had been performed and kept her for remainder of night without medical attention, and that as a result of the illegal abortion and wrongful acts of the defendants and failure to provide proper medical care death resulted, stated cause of action. M.S.A. S 573.02. | "Are allegations of duress, without stating facts, sufficient?" | Pleading - Memo 318 - RMM.docx | ROSS-003290696-ROSS-003290697 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 21,876 | 9,029 |
| 11956 | Graham v. Whitely, 26 N.J. L. 254 | 307A+69.1 | The first error relied upon is, that testimony taken under a commission to take deposition is evidence per se at the trial, though objected to on the ground that the interrogatories were neither signed by the party or counsel. The statute authorizing testimony to be taken by commission (Rev. Dig. 864, *1.) requires that the interrogatories for the examination of the witnesses shall be signed by the parties or their counsel in the cause, or such of them as shall request the said commission. It has been uniformly held that the statutes of this state authorizing testimony to be taken under commission to be read in evidence in the cause, were in derogation of the common law, and must be strictly pursued. Middleton v. Taylor, Coxe 465; Arnold v. Renshaw, 4 Halst. 317. | The interrogatories must be signed either by the party or his counsel. | Should the interrogatories be signed either by the party or his counsel? | 029593.docx | LEGALEASE-00155338 LEGALEASE-00155339 | Condensed_SA_Sub 0.91 | 0 | 1 | | | |
| 11957 | State v. Tosh, 180 Cal. App. 3d 545 | 410+4 | Appellant claims that the attorney verification of requests for admissions is sufficient. The trial court, relying on DeCarey v. First Kensington Corp. (1978) 83 Cal.App.3d 248, 147 Cal.Rptr. 869, disagreed. DeCarey held that attorney verification of an answer in response to a verified complaint on the basis that the party was absent from the county was inadequate where there was no indication the party had not made the verification. (DeCarey, supra, at pp. 274?275, 147 Cal.Rptr. 869.) Appellant claims that DeCarey is not controlling because, in that case, the party was absent from the county rather than unable to document the court's requirement for verification. (Id., at p. 275, 147 Cal.Rptr. 869.) In the instant case, the trial court assumed good faith on the appellant's part. We find it unnecessary to rely on DeCarey, supra, 83 Cal.App.3d 248, 147 Cal.Rptr. 869, since the attorney declared the requirement for verification by appellant for requests for admissions under section 2033 is insufficient. Rather, the plain statutory language of section 2033 compels the conclusion that a party, and not the attorney, must verify requests for admission. | Attorney verification of requests for admissions is insufficient to meet the requirements of § 2033(a); statute allowing for attorney verification of pleadings in certain circumstances did not apply to requests for admission. West's Ann.Cal.C.C.P. §§ 446, 2033. | Can an attorney verify a response to requests for admission (RFA) on behalf of an individual party? | 030399.docx | LEGALEASE-00155942 LEGALEASE-00155943 | Condensed_SA_Sub 0.77 | 0 | 1 | | | |
| 11958 | State v. Manning, 116 S.W. 436 | 410+37(19) | It is defendant's further contention under 12 U.S.A. s 1688 that there must be a positive showing that moral turpitude was involved in the prior crime sought to be introduced. The defendant's contention in this regard was the subject of Estrada v. State, Tex.Cr.App., 313 S.W.2d 274; 274, 268(17), 818 (1971). Moreover, it is our view that burglary is malum in se, and is a crime which involves moral turpitude as a matter of law. See State v. Fournier, 123 Vt. 439, 446, 193 A.2d 924, 925 (1963). | Burglary is malum in se and as such involves moral turpitude as a matter of law so that a prior burglary conviction is admissible for the purpose of impeaching defendant's credibility. 12 V.S.A. § 1608; 13 V.S.A. § 1201. | Is burglary a crime malum in se? | Burglary - Memo 137_ IS.docx | ROSS-000298284-ROSS-000298289 | Condensed_SA_Sub 0.69 | 0 | 1 | | | |
| 11959 | Republica v. De Longchamps, 1 U.S. 111 | 221+109 | The first crime in the indictment is an infraction of the law of Nations. This law, in its full extent, is part of the law of this State, and is to be collected from the practice of different Nations, and the authority of writers. | A French subject was indicted for assaulting a consul general of France to the United States and convicted of that offense, the court therefore held, that he should be tried on the principles of the laws of nations, which form a part of the municipal law of Pennsylvania. | Is the law of Nations part of state law? | International Law - Memo #1038 ANC.docx | ROSS-000320813-ROSS-000320813 | Condensed_SA_Sub 0.16 | 0 | 1 | | | |
| 11960 | Aquar Inv. Partners VI, Ltd. v. Glass, 161 S.W.3d 269 | 289+1309 | The Texas Revised Limited Partnership Act is set forth in TEX.REV.CIV.STAT.ANN. art. 6132 a-1 (Vernon Supp. 2000 & Supp. 2004). Article 6132 a-1, section 2.01(a) provides that, to form a limited partnership, the partners must comply with the Act. The failure of limited partnerships and the partners shall file the certificate of limited partnership with the secretary of state. Garrett insisted a similar filing requirement under a provision of art. 6132a-1, section 2.12, required that the limited partnership failed to file the certificate of limited partnership, and therefore the plaintiffs or Garrett claimed that the limited partners were liable as general partners because of the failure to file the certificate. The court explained that the primary purpose of the limited partnership statute is to provide notice of the limited partnership status to third parties. The court further found that the plaintiffs already had actual notice that would have been provided by compliance with the statute prior to dealing with the limited partnership. Thus, the court held the partnership's failure to comply with Article 6132a-1 did not cause the limited partners to lose their status as limited partners. Garrett v. Copeland. | Limited liability partnership (LLP) was required to comply with statutory renewal requirements for maintaining its status as a registered LLP, in order to protect partners from individual liability under a common law rule that exposed those who prematurely abandoned their partnership and continued to conduct business under the language of statute governing liability in and registration of registered LLP; provided that partners were protected from individual liability only for debts and obligations that were incurred while LLP was a registered LLP, and statute did not contain a substantial compliance section or a grace period for filing the renewal application required each year. Vernon's Ann.Texas Civ.St. art. 6132b-3.08(a)(1), (b). | Is it necessary to file a certificate of limited partnership with the secretary of state to form a limited partnership? | Partnership - Memo 245_ ROSS-000283842-ROSS-000283843 - IS.docx | | Condensed_SA_Sub 0.47 | 0 | 1 | | | |
| 11961 | Gould v. Elgin City Banking Co., 136 Ill. 60 | 307A+736 | On June 25th, when the cause was reached for a hearing, appellant and her husband entered a motion for a continuance on account of the absence of her attorney, Mr. E. Jones, who had entered upon the vacation, and this is the second error relied upon. The defendants were represented by two solicitors, one was present and the other absent (and, so far as appears, the solicitor who was present was entirely competent to present the cause for the defendants, and we do not think it was error to refuse a continuance of the cause). In any ordinary case, a party acted to keep the cause a well as several, and, if the absence of one of several solicitors employed in a cause was ground for a continuance, it might in many cases be impossible to dispose of the cause with any reasonable delay. Had it appeared to the court that actual could not be had without injury to the defendants, and that her absence of her solicitor was unavoidable, and prevented a preponderance of the case showing that injustice, a postponement or continuance might have been ordered; but such was not the case. | Where a party has two attorneys, absence of ground for continuance, where it is not shown that other is unable to conduct case. | "Where a party has two attorneys, absence of one is no ground for continuance, where it is not shown that other is unable to conduct case." | 029418.docx | LEGALEASE-00336379 LEGALEASE-00336380 | Condensed_SA_Sub 0.87 | 0 | 1 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 19992 | Barnett v. Gagnon, 516 F.2d 1202 | 307A+716 | The general rule with regard to continuances following the withdrawal of counsel is that one of the parties to an action, leaving such party unprepared for trial, is not a ground for continuance, particularly where the withdrawal is unexplained, where no diligence in reducing counsel to remain in the case is shown, or where the granted even though he consented to motion to withdraw, and where it is not shown that the party is free from fault in the matter." Bensons v. Gagnon, 516 F.2d 1204, 1205. | Under particular facts of case, it was an abuse of discretion for trial court to deny plaintiff's motion for continuance after plaintiff had consented to her counsel's motion to withdraw, even though defendant had counsel not retained trial counsel, and even though plaintiff was granted an even though court allowed plaintiff that no continuance would be granted even though he consented to motion to withdraw. Rules of Civil Procedure, rule 81(4), (6)(1); 45.09,45.120. | Does a party's decision to dismiss retained counsel on eve of trial per se facts entitle a party to continuance? | 02945.docx | USGAEAE 00156440 USGAEAE 00156441 | Condensed, SA, Sub 0.14 | | 0 | | | 1 | 1 |
| 19993 | Am. Fed'n of State, Cty & Mun. Employees v. Metro. Water Dist. of S. California, 126 Cal. App. 4th 247 | 307A+445 | "The primary purpose of requests for admissions is to set at rest triable issues so that they will not have to be tried, they are aimed at expediting trial. [Citation.] The basis for imposing sanctions... is directly related to that purpose. Unlike other discovery sanctions, an award of expenses... is not a penalty. Instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission... [Citation.] ...Such a rule would have been impeded or obstructed if the request had been admitted." (Citations.)" (Stull v. Sparrow (2001) 92 Cal.App.4th 860, 865, 112 Cal.Rptr.2d 239.) | Unlike other discovery sanctions, an award of expenses is not a penalty; instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission, such that trial would have been impeded or obstructed if the request had been admitted. West's Ann.Cal.C.C.P. § 2033.420. | Is an award of expenses a penalty? | Pretrial Procedure Memo 8 3734 - C - KS.docx | RDSS-00329054.1-RDSS-00329542 | SA, Sub | 0.5 | | 0 | | 1 | |
| 19994 | Schlossberg v. Schlossberg, 96 Misc. 2d 640 | 307A+971 | The law appears well settled that examination before trial will be granted where reasonable circumstances are presented. See Hirsch v. Hirsch, 53 N.Y.S.2d 838, 28 N.Y.S.2d 42 where the Family Court of Westchester County held that a preliminary examination is permitted, examination before trial, where a former wife claimed lack of knowledge concerning the actual status of her former husband's finances and relief was a claim that the husband had a substantial interest in a pending pension corporation. | Examination before trial will be granted where special circumstances are presented. | Is an order for the examination of a party before trial usually granted? | 03874.docx | USGAEAE 00137067- USGAEAE 00137068 | SA, Sub | 0.84 | | 0 | | 1 | |
| 19995 | Frontier Dev. Co. v. Caravella, 357 Idaho 989 | 308+190(1) | "It is a basic principle that an agent who enters into a contract on behalf of a corporation, but who neither discloses his agency nor the existence of that corporation to the other party, is personally liable to the other party." McCluskey Commissary, Inc. v. Sullivan, 96 Idaho 91, 93, 524 P.2d 1059, 1061 (1974). An agent assumes personal liability when the agent fails to disclose the agency relationship and the identity of the agent's principal "at or before the time of entering into the contract." W. Seeds, Inc. v. Bartu, 109 Idaho 70, 72, 704 P.2d 974, 976 (Ct.App.1985) (citing Gen. Motors Acceptance Corp. v. Turner Ins. Agency, Inc., 96 Idaho 691, 697, 535 P.2d 664, 670 (1975)). Agent may also expressly bind themselves from personal liability have the burden of proving when their agency relationship with the principal was disclosed or revealed. Marco Distrib., Inc. v. JD Idaho at 833, 535 P.2d at 394 (citing Gen. Motors Acceptance Corp. v. Turner Ins. Agency, Inc., 96 Idaho 691, 697, 535 P.2d 664, 670 (1975)). The court further noted that the wages would not be borne for personal liability on the other party's identity." Gen. Motors Acceptance Corp., 96 Idaho at 697, 535 P.2d at 670. The "onus" to an agent to clearly and affirmatively inform the other party of his or her agency relationship at or before the time of contracting. In re Leraxin, 2010 WL 3703727, at 8 (Bankr.D.Idaho Sept.15, 2010). | Agents attempting to shield themselves from personal liability have the burden of proving when their agency relationship with the principal was disclosed or revealed. Restatement (Second) of Agency § 320. | When can an agent be held personally liable? | Principal and Agent Memo 92 - KC.docx | RDSS-00331830.0-RDSS-00331830.1 | Condensed, SA, Sub | 0.86 | | 0 | | 1 | |
| 19996 | United States v. Williams, 507 F.3d 905 | 164+44(1) | William's argument misses the mark. Previous decisions from other circuits demonstrate that a salary is not bona fide or earned within the meaning of the "kickback" exception when the employee is not expected to "performed little work for the money. For example, in United States v. Tampas, the Eleventh Circuit considered whether "kickbacks" received through an employer's arrangement with employee credit card. 803 F.2d 1290, 1299 (11th Cir.2007). The court concluded that a reasonable jury could conclude that the wage of Tampa's bona fide salary. Id. Similarly, in United States v. Dwyer, the First Circuit held that a reasonable jury could conclude that the wages the employer extracted from laborer in exchange for placing the employee's timesheets "were not made in the usual course of business for wages under 18 U.S.C. § 186(b)(1)-(2) and (d) (2005). The court further held that the wages would not be bona fide even if they were for some kind of "informal and unauthorized compensatory time reimbursement." Id. The First Circuit also recognized the intent of 666(1) in United States v. Grubb, where the court determined that "666(b) did not apply where there was no intent to solicit or accept wages that part of the sheriff's office received because he "performed little work for the regular annual salary, and 'did not perform functions corresponding with the regular sheriff's salary.'" 11 F.3d 426, 438 (4th Cir.1993) (internal quotation marks omitted). | Finding that "advance" paychecks received by defendant, who was then employed as city payroll clerk and deputy city clerk, were actually extra payments for work she had not performed and therefore, were not part of her bona fide salary or otherwise earned in the usual course of the city's business within meaning of statute defining offense from an organization receiving federal funds, was supported by evidence that, over a three-year period, defendant obtained additional compensation amounting to more than $30,000.00, representing more than twice her regular annual salary, and that defendant failed to make any plausible argument that she legitimately earned the "advance" payments. 18 U.S.C.A. § 666(a). | Does Section 666(a) apply where someone performed little or no work for the office? | 01800.docx | USGAEAE 00137796- USGAEAE 00137797 | Condensed, SA, Sub | 0.5 | | 0 | | 1 | |
| 19997 | United States v. Brandenburg, 144 F.2d 656 | 15+1 | The crime of "burglary with explosives" was unknown to the common law. It follows that when this Federal Statute prohibited a prosecution for "burglary with explosives," he did not commit an offense within the purview of the Fugitive Felon Act, prohibiting travel in interstate commerce to avoid prosecution for burglary under laws of place from which flight is made under N.C. § 15.13, 14-57(a); that burglary had to come within the common law meaning of the crime of burglary within the purview of Section 344 of the Criminal Code. | One who fled from North Carolina to avoid prosecution for burglary with explosives, an offense unknown at common law, did not commit an offense within the purview of the Fugitive Felon Act, prohibiting travel in interstate commerce to avoid prosecution for burglary under laws of place from which flight is made. Fugitive Felon Act, 18 U.S.C.A. § 1073. | Does common law recognize burglary with explosives? | Burglary - Memo 149 - JS.docx | RDSS-00331858.4-RDSS-00331865 | Condensed, SA, Sub 0.02 | | 0 | | | 1 | 1 |
| 19998 | Levine v. State, 110 N.J.L. 129 N.J.L. 447 | | A "common burglar," therefore, is one who is burglar in practice and habit, and in addition such as disorderly persons. Of course, by justify a conviction in a case of this character, the proofs must establish that status at the time of the defendant's apprehension. | "Common burglar" is one who is burglar by practice and habit, and is a person classified as disorderly person by statute. Comp.N.J.supp. § 59-1. | Who is a burglar? | Burglary - Memo 157 - JS.docx | RDSS-00331200.7-RDSS-00331208 | Condensed, SA, Sub 0.14 | | 0 | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19969 | State v. Case, 228 Kan. 733 | 6:73 | Next appellant argues that it was error for the trial court to refuse to give requested instruction on lesser included offenses. It is contended that the underlying felony, aggravated burglary, is a specific intent crime and as appellant was too intoxicated at the time to form specific intent, the crimes charged should have been given. It is true that both burglary and aggravated burglary require that the element of specific intent be proved. State v. Finley, 208 Kan. 49, 54, 490 P.2d 630 (1971). | Offenses of burglary and aggravated burglary both require that the element of specific intent be proved. | Is aggravated burglary a specific intent crime? | 012743.docx | LEGALEASE 00137495-LEGALEASE 00137500 | Condensed, SA | 0.81 | 0 | | | | |
| 19970 | Rivera v. Vea, 20 Conn. App. 619 | 48Ak279 | The trial court, without the benefit of a prior relevant judicial construction of § 53-56, impliedly concluded that the state cannot be liable under the statute unless the negligent operation of the state's motor vehicle is contemporaneous with the injury sustained. The defendant contends that the operator need not be contemporaneous with the injury but may occur at any time prior to the injury. The statute requires, before there can be a right of action against the state for the recovery of damages for injury to person or property, that there be "negligence in the operation of any state official or employee when operating a motor vehicle" owned by the state. The use of the phrase "when operating a motor vehicle" implies a simultaneousness of negligent operation and injury, because "when" denotes the time of an event or moment at which something is done. Here, there was no coalescence in time of the operation and the injury. Without temporal congruence, the state cannot be liable even if the negligent operation of a state owned motor vehicle by a state employee proximately caused the injury. | Statute permitting suit against state by persons injured through negligence of state official when "operating a motor vehicle" owned and insured by state did not apply when motorist to the rear end of state truck which had been left partially on highway with flashing lights and warning flares, so as to direct oncoming traffic around end of earlier accident, at time of collision truck was being used as a warning signal and not as a motor vehicle. C.G.S.A. § 53-56b. | What is the interpretation of operating a motor vehicle? | Highway - Memo 41-6.docx | LEGALEASE 00027163-LEGALEASE 00027164 | Condensed, SA, Sub | 0.57 | 0 | | | 1 | 1 |
| 19971 | Grafton Bank v. Moore, 13 N.H. 99 | 289k504 | In an action against several persons, whom it is attempted to charge as partners, the decisions of the courts are nearly uniform, although, perhaps, one or two authorities may be found to the contrary, that upon the question whether a partnership exist, the declarations of one partner are admissible only to charge himself, and are incompetent to prove that any other person is a member of the firm. In such cases the parties may sever, whether the defendants be jointly liable? Each one may state his own liability, so far as he may choose, but when the attempt is made to charge third persons who admit, upon the mere declaration, the evidence is merely hearsay, and does not come within any of the exceptions which permit the introduction of such proof, but should the case in which the principle is asserted, either directly or incidentally, are, in New York, Whitney v. Ferris, 10 Johns. 66; Sweeting vs. Turner, 10 John. 216; Whitney v. Sterling, 14 Johns. 215; Harris v. Wilson, 7 Wend. 57; in Massachusetts, Tuttle vs. Cooper, 5 Pick. 414; Robbins vs. Willard, 6 Pick. 464; in Maine, Jennings v. Estes, 4 Shepley, 323; in Vermont, Van Reimsdyk vs. Kane, 1 Gall. 635; and in England, Sangster vs. Mazarredo, 1 Stark. Rep. 161; Wood vs. Braddick, 1 Taunt. 104; and produce evidence of a treating physician's bias is permissible. | In order to prove that defendant was a partner with others, evidence was introduced that a person who wished to prove of the firm was solvent admitted that a person had called on defendant, who told him that I, [a member of the first] had done the business of that concern, and that he defendant told him nothing about it. Held, that it did not appear who was the conversation between the parties prior to the remark made by defendant, and which might explain it, this declaration did not prove that he was a member of the firm. | Is a declaration by one partner on the existence of partnership admissible to charge himself only and not the other parties? | 022231.docx | LEGALEASE 00137288-LEGALEASE 00137289 | Condensed, SA | 0.64 | 0 | | | 1 | |
| 19972 | Stengar, Kane & Crowley P.A. v. GEICO Gen. Ins. Co., 103 So. 3d 200 | 307Ak59 | The evidence code allows a party to attack a witness's credibility based on bias. " 90.608(1), Fla. Stat. (2012). A treating physician, like any other witness, is subject to impeachment based on bias. See Tobin v. Leland, 804 So.2d 390, 394 (Fla. 4th DCA 2001).Identifying evidence of bias that should be subject to inquiry including "involvement in the instant litigation or other financial arrangement involving expert bias and producing evidence of a treating physician's bias is permissible. | Typically, the correct balance for bias discovery from a so-called treated witness is the same balance contained in the rule for all other experts. because there is no logical distinction between treating physician and retained experts for purposes of assessing this type of information; thus, under ordinary circumstances, a defendant may discover from a plaintiff's treating physician the type of general financial bias information set out in the rule limiting financial bias discovery from retained experts. Ward's D.A. RCP Rule 1.280(b)(5)(A)(iii). | Is discovery of a treating physician's bias permissible? | 013234.docx | LEGALEASE 00137173-LEGALEASE 00137173 | SA, Sub | 0.02 | 0 | | | 1 | |
| 19973 | Tradition N. Am. v. Sweeney, 133 A.D.2d 53 | 228+181(26) | Under CPLR 3213 a negotiable instrument for the payment of money only, and a promissory note or other negotiable instruments as defined by Uniform Commercial Code. " 3-104, since each was signed by the maker, Sweeney (subds. [1][d]), contain an unconditional promise to pay a sum certain in money only and no other promise (subds [1][b]), is payable at a definite time (the last day of Sweeney's employment with Tradition) (subd. [1][c]), and is payable to Tradition's order (subd. [1][d]). | Promissory notes signed by former employee were not instruments for payment of money only, and therefore, were inappropriate for accelerated judgment on such notes, although notes could be satisfied by monetary payment, former employee was given option of performing work for his employer according to certain contractually established standards in order to satisfy debt and thus, employee, in executing notes, did make unconditional promise to pay some sum at given time or over stated period. McKinney's CPLR 3213. | Are promissory notes enforceable for payment of money only? | 009405.docx | LEGALEASE 00138814-LEGALEASE 00138815 | Condensed, SA, Sub | 0.04 | 0 | | | 1 | |

3516

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 1974 | Hays v. Clark, 175 Cal. App. 2d 545 | 157+439 | The only remaining question necessary for determination, therefore, is whether the trial court erred in granting a nonsuit. The defendant and respondent appears to have relied upon the theory that the remaining evidence was insufficient to establish the agreement set up, and that the evidence relative to any oral agreement between the parties violated the parol evidence rule. Neither contention is well taken. It is to be recollected that this action is one to recover money alleged to be due to plaintiff from deceased. Without objection there was introduced in evidence the deed to the diseased and a sufficient part of the escrow filed to show the sale by deceased to the innocent purchaser and the amount received therefrom. The action, therefore, was nothing more nor less than an action to recover money. It is true that parol evidence is not admissible for the purpose of varying the terms of a deed of conveyance but the parol evidence is admissible to show the terms of a collateral agreement in connection with the conveyance of the property. See Treat v. Treat, 170 Cal. 329, 150 P. 53, 57. It was held in Menzel [D] Mining Co. v. Patterson, 153 Cal. 624, 96 P. 90, that a collateral agreement made as a consideration for the transfer of property could be proven by parol testimony and that the same does not vary nor contradict the terms of the deed. See White v. Schader, 185 Cal. 606, 198 P. 19, 21 A.L.R. 499. | Parol evidence is not admissible to vary the terms of a deed of conveyance but is admissible to show the terms of a collateral agreement in connection with the conveyance. West's Ann.Code Civ.Proc. § 1962, subd. 2. | Can a collateral agreement made as a consideration for the transfer of property be proven by parol testimony? | Exchange Of Property Memo 61- 1.K.docx | ROSS-00318303 ROSS-00318304 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 1975 | Mooney v. Kenney, 26 Wash. 2d 31 | 307d+41 | (judicial opinion text) | When a commission to take depositions is directed to a competent person, does he derive his authority from the commission? | | Where a commission to take depositions is directed to a competent person, does he derive his authority from the commission? | 031736.docx | LEGALEASE-00183197- LEGALEASE-00183198 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | |
| 1976 | United States v. Hawkins, 777 F.2d 880 | 63+1(1) | (judicial opinion text) | A principal's ratification of the act of his agent requires no new consideration. | Does ratification require new consideration? | 041347.docx | LEGALEASE-00183540- LEGALEASE-00183541 | Condensed, SA | 0.58 | 0 | 1 | | 1 | |
| 1977 | Tryon v. Oloch, 44 Cal. App. 829 | 308+102(2) | (judicial opinion text) | When is an agent said to have acted corruptly? | 012355.docx | LEGALEASE-00183183- LEGALEASE-00183184 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | |
| 1978 | Mathews v. Am. Tobacco Co., 178 N.J. Eq. 470 | 101+1570 | (judicial opinion text) | Does a person have the right to continue, discontinue, or compromise a suit where he brings an action for himself, until a person similarly situated has become a party plaintiff? | 016477.docx | LEGALEASE-00183127- LEGALEASE-00183128 | Condensed, SA, Sub | 0.34 | | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19979 | In re McLean, 16 F.Cas. 240 | 51+2964 | Chancellor Kent, in the third volume of his Commentaries (page 65), says: "The joint creditors have the primary claim on the joint fund in the distribution of the assets of bankrupt or insolvent partners, and the partnership debts are to be settled before any division of the funds takes place. So far as the partnership property has been acquired by means of partnership debts, these debts have in equity a priority to be discharged; and the separate creditors are only entitled in equity to seek payment from the surplus of the joint fund after satisfaction of the joint debts. The equity of the rule on the other hand equally requires that the joint creditors should only look to the surplus of the partners after payment of the separate debts. It was a principle of the Roman law, and it has been acknowledged in the equity jurisprudence of Spain, England, and the United States, that partnership debts must be paid out of the partnership estate; and private and separate debts out of the private and separate estate of the individual partner. If the partnership creditors cannot obtain payment out of the partnership estate, they cannot in equity resort to the private and separate estate until private and separate creditors are satisfied; nor have the creditors of the individual partners any claim upon the partnership property, until all the partnership creditors are satisfied. The basis of the general rule is, that the funds are liable on which the credit was given. In contracts with the partnership the credit is supposed to be given to the firm; but those who deal with an individual member rely on his sufficiency." | Under the bankrupt acts of 1841 and 1867, providing that the net proceeds of the joint stock shall be appropriated to pay the creditors of the co-partnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors, the individual and firm creditors have the primary right to resort to the respective estates, and neither class has a right to go on the funds primarily belonging to the other until the creditors having priority are fully satisfied. | Will the property of the individual partners be first applied to the payment of the debts of the individual partners before it is applied to the partnership debts? | Partnership - Memo 394 - SNP.docx | LEGALEASE-00029313-LEGALEASE-00029314 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 19980 | Brock v. Bateman, 25 Ohio St. 609 | 289+723 | But, conceding that where there are no joint assets, partnership creditors may properly share with separate creditors the separate assets of the partners, they ought so to share equally, and without advantage. If one partner only has assets, it would be equal, of course, for the joint and separate creditors to share them pro rata; but when each of two partners has assets, it would be unequal and unjust, as by the decree sought to be reversed in this case, to give the partnership creditors a pro rata dividend upon the full amounts of their claims, in pari passu with the separate creditors, out of the separate estates of both the partners. As between the partners themselves, if one partner has paid part of a partnership debt, he and his copartner, jointly and severally, would be liable only for the residue; and, upon principle, it would seem that in case of the insolvency of the partnership without assets, and of the partners each with assets, to be due to the partners respectively, and to their separate creditors, that proportionate credit and reduction upon and of partnership debts should be entered and made for and on account of what is paid thereon from the separate assets of the partners respectively. Otherwise, the partnership creditors would be doubly paid, pro tanto; and they might even be paid more than the whole amount due them; depending upon whether the assets of the partners respectively would average more than fifty per cent. of the aggregate of the partnership and the separate debts. | Where a partnership and the several members of the firm are insolvent, and there are no partnership funds for distribution among the creditors, the firm creditors are entitled to share equally with the creditors of each partner in the distribution of his individual assets; the amount so distributed to the creditors of the firm, however, not to exceed the amount of their claims. | How will the partnership creditors be paid their share when there is no partnership property? | 022364.docx | LEGALEASE-00139461-LEGALEASE-00139462 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 19981 | Muntz v. Newark City Hosp., 115 N.J. Super. 273 | 307A+750 | R. 4:25-1 makes it crystal clear that trials must be held within the framework of the pretrial order. The rule, in relevant part, requires the pretrial order to be dictated in open court, signed by counsel and the court, and it must recite: the admissions or stipulations of the parties; the factual and legal contentions of the parties; "all claims as to damages and admissions or stipulations with respect thereto, and this shall limit the claims thereto at the trial," and a specification of the legal issues to be determined at trial. The rule then provides:When entered, the pretrial order becomes part of the record, supersedes the pleadings where inconsistent therewith, and controls the subsequent course of action unless modified at or before the trial or pursuant to R. 4:9-2 to prevent manifest injustice. | One of purposes of rule concerning pretrial conference procedure is to allow great liberality in forming and amending pretrial orders so that all phases of controversy may be finally and justly determined but parties will not be allowed in trial to go outside agreed upon issues framed in pretrial conferences and reduced to expression in pretrial order except to prevent manifest injustice. R. 4:25-1. | Can a pretrial order supersede inconsistent pleadings? | 027662.docx | LEGALEASE-00139432-LEGALEASE-00139433 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 19982 | Sheriff v. Hull, 37 Iowa 174 | 307A+69.1 | Our statute enacts (Revision, " 4082): "Where a deposition is taken upon interrogatories, neither party, nor his agent or attorney, shall be present at the examination of a witness, unless both parties are present, or represented by an agent or attorney, and the certificate shall state such fact, if party or agent is present." Nutter v. Ricketts, 6 Iowa, 92, arose and was decided before this statute was enacted, and hence is no authority for construing the statute. It is clear in this case, that the above section was violated. The objection to the deposition was, therefore, well taken. It was not necessary for the objector to show prejudice also; this the law presumes from its violation. If the appellant had shown affirmatively that there was no prejudice in any possible manner or degree, we will not now say or decide, that the objection might not have been properly overruled. But in the absence of such affirmative showing, as in this case, the ruling of the court was clearly right. | If it be shown that Revision, S 4082, requiring that both or neither of the parties shall be present at the taking of a deposition, has not been complied with, the deposition will on motion be suppressed. | "On taking a deposition on interrogatories, should party be present at the examination of a witness?" | 032724.docx | LEGALEASE-00139604-LEGALEASE-00139605 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 27,876 | 9,029 |
| 11993 | Abreu v. Callahan, 971 F. Supp. 799 | 24+116 | The most directly relevant case is the Supreme Court's decision in Mathews v. Diaz. In Mathews, the Court considered the constitutionality of a provision of the Social Security Act which conditioned the eligibility of aliens for participation in the federal Medicare Part B supplemental medical insurance program on continuous residence in the United States for five years and admission for permanent residence. The Court began its analysis by positing that aliens are not entitled to "all of the advantages of citizenship ... indeed, to ... be placed in a single homogenous legal classification." It recognized that Congress, "[i]n the exercise of its broad power over naturalization and immigration, ... regularly makes rules that would be unacceptable if applied to citizens" and that a distinction Congress between citizens and aliens "does not in itself imply that such disparate treatment is 'invidious.'" Having done so, however, it focused directly on the fact that the plaintiffs there had failed to meet all the requirements of the statute. The challenged classification ... distinguish between citizens and aliens. Rather, like Section 402 of the Welfare Reform Act, it classifies aliens into two groups, ineligible for a federal benefit program and one not. It proceeded to note the special importance of these matters for the political branches in matters affecting aliens, "[s]ince decisions in these matters may implicate our relations with foreign powers ... And an unanimous Court proceeded to uphold the challenged statute under a deferential standard of review, saying, "Since it is obvious that Congress has no constitutional duty to provide all aliens with the welfare benefits provided to citizens, the party challenging the constitutionality of the particular line Congress has drawn has the burden of advancing principled reasoning that will at once invalidate that line and yet tolerate a different line separating some aliens from other aliens. In this case, the appellees need not claim such a requirement. Thus, that line does not admit of a permanent resident. | Classification of citizens and lawful permanent resident alien veterans and military personnel and those who have worked for at least ten years, screen fund, and all other resident aliens, on other, for purposes of establishing eligibility for welfare benefits, was rationally related to legitimate federal interest in promoting naturalization, for equal protection purposes; Congress could have regarded lawful permanent resident alien veterans and military personnel and long time members of work force as having the interest ties of affinity to national community to degree greater than other permanent resident aliens whose experiences in country, as a broad generalization, have been more limited. U.S.C.A. Const. Amends. 5, 14; Personal Responsibility and Work Opportunity Reconciliation Act of 1996, § 402(a)(1), 8 U.S.C.A. § 1612(a)(1). | Is an Act of Congress that treats aliens differently than citizens considered invidious? | 000821.docx | USGA/LExE 00140451 - USGA/LExE 00140453 | Condensed, SA, Sub 0.69 | | 0 | | | 1 | 1 |
| 11994 | Howze v. Peacock, 84 Conn. 54 | 24+148(2) | A negotiable instrument expressed to be payable "on demand after date" it was is payable on demand, and it is paid, although it be made a bearer interest. Vreeland v. Hyde, 144 Mass. 118, 13 N. E. 37; O'Neil v. Magner, 81 Cal. 631, 633, 22 Pac. 876, 15 Am. St. Rep. 88; Turner v. Iron Chief Mining Co., 74 Wis. 355, 358, 43 N. W. 149, 5 L. R. A. 533, 17 Am. St. Rep. 168; Peninsular Savings Bank v. Hosie, 112 Mich. 351, 355, 70 N. W. 890. Such instruments are payable ... between maker and payee due and payable immediately, and suit can be brought upon them immediately. Wrenhd Savings Bank v. New Hartford, 78 Conn. 319, 328, 62 Atl. 81; Curtis v. Smith, 75 Conn. 420, 431, 53 Atl. 902; Trustees of Aims'House Farm v. Smith, 52 Conn. 434, 437. Aims'House Farm v. Smith, 52 Conn. 434, 437; Lockwood v. Crawford, 18 Conn. 361, 371. The statute of limitations begins to run against them immediately. Trustees of Aims'House Farm v. Smith, 52 Conn. 434, 437. As there has been no payment of interest or principal since June, 1890, recovery upon the note in suit is upon the facts found barred. | Where a negotiable note was payable on demand after that date, it was payable on demand, though providing that it should bear interest from date, and hence, as between the maker and payee, it was due and payable at once, and limitations began to run immediately. | Is an instrument payable on demand after date payable or not? | 000921.docx | USGA/LExE 00180350 - USGA/LExE 00180351 | Condensed, SA, Sub 0.77 | | 0 | | | 1 | |
| 11995 | McLeod v. Despain, 49 Or. 536 | 322H+1177 | A few takes appear to hold to the contrary rule. Indiana and Missouri are cited as holding that a deed or mortgage, or in connection with the name of a party to a written instrument, is sufficient to put purposes dealing with such trustee upon inquiry, and, in the absence of inquiry, they will be presumed to have known what they might have discovered. Appearance of the word "trustee," added to a payee's name in a note, or to a grantee's name in a deed or mortgage, or in connection with the name of a party to a written instrument, is sufficient to put purchaser of such instrument upon inquiry, and in the absence of inquiry, they will be presumed to have known what they might have discovered. If it was not ... Power v. Morrison, supra, the court relies upon and cites a note of Power v. Morrison, supra, the note was payable to one "James Castells, sheriff of St. Louis County." ... with the words "trustee," etc., are merely descriptio personae, and that such words are not sufficient to charge a purchaser of such a note with notice of any outstanding ... or limitations (if any) of the payer's power to pledge or sell, citing authorities of that state. | Appearance of the word "trustee," added to a payee's name in a note, or to a grantee's name in a deed or mortgage, or in connection with the name of a party to a written instrument, is sufficient to put purchaser of such instrument upon inquiry, and in the absence of inquiry, they will be presumed to have known what they might have discovered. | Does the word sheriff as a note denote a descriptio personae? | 000920.docx | USGA/LExE 00180356 - USGA/LExE 00180357 | Condensed, SA, Sub 0.73 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 19986 | In re D & K Aviation, 349 B.R. 169 | 51+2726.1(1) | Ohio law goes a step further in that it provides for a presumption in favor of renewal where a new note has been executed by the parties. In re Holland, 16 B.R. 83, 87"88 (Bankr.N.D.Ohio 1981); Madlener v. Greathouse, 31 Ohio Law Abs. 434, 439, 1939 WL 3309 (Ohio Ct.App.1939). The Holland decision contains a particularly comprehensive recitation of Ohio case law on this point: It is well settled in Ohio that renewals of notes, or changes in the form of the evidence of a precedent debt, do not create a new debt, or operate as a discharge or satisfaction of the old debt, unless it is expressly agreed between the parties. Hauenschild v. Standard Coffin Co., 10 Ohio Dec. 536, 8 Ohio N.P. 124, 124"125[, 1900 WL 1249] (Super.Ct.Cincinnati, 1900). See also, Beals v. Lewis, 43 Ohio St. 220, 1 N.E. 641 (1885); First National Bank v. Patton Co., 13 Ohio C.C. (n.s.) 289, 32 Ohio C.C. Dec. 627[, 1910 WL 663] (Hamilton County Cir.Ct.1910). Cf., In re Wyse Laboratories, Inc., 55 Ohio Law Abst. 321, 323[, 1949 WL 6591] (S.D.Ohio 1949); Madlener v. Greathouse, 31 Ohio Law Abst. 434, 439[, 1939 WL 3309] (Montgomery County Ct.App.1939); 40 O.Jur.2d 300, Negotiable Instruments and other Commercial Paper, s 247. The presumption is that it is a conditional, not an absolute, payment of the obligation. Madlener, supra at 439; Kuerze v. Western German Bank, 12 Ohio App. 412[, 1919 WL 181] (Hamilton County Ct.App.) aff'd, 100 Ohio St. 547, 127 N.E. 924 (1919). Furthermore, one Court has held the evidence must affirmatively and clearly show such to have been the agreement of the parties. Hauenschild v. Standard Coffin Co., supra 10 Ohio Dec. at 536, 8 Ohio N.P. 124[, 1900 WL 1249].Holland, 16 B.R. at 87"88. Consequently, it is the Trustee's burden to overcome this presumption and prove that the parties intended to extinguish Note 411 (and the security interest in the Airplane) when they executed Note 002. | Burden was on Chapter 7 trustee, as party asserting that new note that parties had executed in connection with postpetition loan transaction had extinguished prior note and released lender's security interest, to overcome presumption arising under Ohio law that new note simply renewed prior note. | Do renewals of notes create a new debt? | 010272.docx | LEGALEASE-00140257-LEGALEASE-00140258 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 19987 | State v. La Flame, 30 N.D. 489 | 63+1(2) | "That a deputy sheriff is not an executive officer of the state; he being, in fact, not an officer, but merely the deputy or agent of an officer, the sheriff; * * * that in contemplation of law the sheriff and his deputies are but one officer; and that an attempt to influence the acts of the deputy are, in law, attempts to enfluence the acts of the sheriff himself, hence an attempt to bribe a deputy is an attempt to bribe the sheriff, and must be so pleaded." | The crime of giving a bribe to a deputy sheriff held complete when the money was feloniously paid to influence future acts with reference to a possible future violation of law. | Is an attempt to bribe a deputy an attempt to bribe the sheriff? | Bribery - Memo #726 - C-JL.DOCX | ROSS-003301658-ROSS-003301659 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 19988 | City of Tampa v. State ex rel. Evans, 155 Fla. 177 | 296+2 | The legislature has power to grant pensions as a gratuity for public service rendered. In so doing it is essential that a finding be made that the services were rendered as a prerequisite to the grant. When the grant has been made it shall be liberally construed in favor of the grantee. See State ex rel. Holton v. City of Tampa, 119 Fla. 556, 159 So. 292, 98 A.L.R. 501; State ex rel. Hawkins v. Amos, 97 Fla. 675, 122 So. 8; Northern Inv. Corp. v. City of Cocoa, 118 Fla. 405, 158 So. 889; State ex rel. Givens v. Holland, 147 Fla. 396, 2 So.2d 735. | Where pension has been granted as a gratuity for public service rendered, the grant must be liberally construed in favor of the grantee. | Should the grant of pension be liberally construed? | Pension - Memo 34 - SB.docx | ROSS-003301099 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 19989 | Webb v. Glenbrook Owners Ass'n, 298 S.W.3d 374 | 388+352.4(1) | Jury questions must be supported by the pleadings. Gibbins v. Berlin, 162 S.W.3d 335, 341 (Tex.App.-Fort Worth 2005, no pet.); McReynolds v. First Office Mgmt., 948 S.W.2d 342, 345 (Tex.App.-Dallas 1997, no writ). See also Tex.R. Civ. P. 278 ("The court shall submit the questions, instructions, and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."). Although issues may be tried by consent, "written pleadings, before the time of submission, shall be necessary to the submission of questions...." Tex.R. Civ. P. 67; Gibbins, 162 S.W.3d at 342. Trial by consent does not occur where the complaining party properly objects to the submission of issues not raised by the pleadings. Harkey v. Tex. Employers' Ins. Ass'n, 146 Tex. 504, 509, 208 S.W.2d 919, 922 (1948). Stated differently, trial by consent is precluded where proper objection is made on the record before submission to the jury. Tex. Indus., Inc. v. Vaughan, 919 S.W.2d 798, 803 (Tex.App.-Houston [14th Dist.] 1996, writ denied). A clear abuse of discretion exists when the trial court submits a jury question that is neither supported by the pleadings nor tried by consent. Stephanz v. Laird, 846 S.W.2d 895, 902 (Tex.App.-Houston [1st Dist.] 1993, writ denied). | Jury questions must be supported by the pleadings. Vernon's Ann.Texas Rules Civ.Proc., Rule 278. | Should jury questions be supported by the pleadings? | 023442.docx | LEGALEASE-00140402-LEGALEASE-00140403 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 19990 | Hall v. Houghton, 37 Me. 411 | 307A+74 | In the caption to the deposition of Robinson, there is no certificate of the magistrate respecting notice to the adverse party, but it is certified that he was present, and did not object to the taking. As there is no evidence that he was notified, he might have been present for other purposes, and in the transaction of business inconsistent with taking the deposition; or he might not have been in a condition to know the fact of the taking, and may have been wholly ignorant of it; or, if then apprised of it, he may have been unable to attend to the taking personally, or by counsel presence, merely, is not evidence of the notice required, or proof of a waiver of notice; and there is no evidence of a consent of parties that the deposition should be used at the trial; it was therefore inadmissible against the objection. For this cause the exceptions must be sustained. The magistrate's certificate, it may be remarked, is evidence of those facts only, which he is required to state in the caption. He cannot extend his certificate to other facts to make them evidence, or to affect the case. The statement, then, by the magistrate, in the certificate, that the adverse party "did not object to the taking of said deposition," was extra-official and unauthorized, and cannot be received in evidence. 1 Phil. Ev. 382, 391; Cowen and Hill's Notes, 702, 741; 1. Greenl. Ev. " 498. | The magistrate's certificate that the party did not object is extraofficial. | Is a magistrate's certificate that a party does not object to extraofficial? | 032330.docx | LEGALEASE-00139849-LEGALEASE-00139850 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,973 | 21,876 | 9,079 |
| 19991 | Rollins v. William V. Frankel & Co., 196 Ariz. 350 | 106=13.1(8) | United States Supreme Court precedent also requires a plaintiff's claim to arise out of or relate to the defendant's forum activities before a defendant may exercise specific jurisdiction over the defendant. See, e.g., Burger King, 471 U.S. at 472, 105 S.Ct. at 2182; 85 L.Ed.2d 528 at 543; Helicopteros, 466 U.S. at 414, 104 S.Ct. at 1872; 80 L.Ed.2d at 415. See also Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir.1998); Armstrong v. Aramco Serv. Co., 155 Ariz. 345, 349, 746 P.2d 917, 921 (App.1987). If the nonresident defendant's forum-related activities "are not sufficiently connected to the plaintiff's claim to conclude that the plaintiff's claim arises out of" these activities, dismissal is warranted. Westphal v. Mace, 671 F.Supp. 665, 668 (D.Ariz.1987). | If the petitioner's claim and the non-resident defendant's forum-related activities are not sufficiently connected, is dismissal based on lack of jurisdiction warranted? | If the petitioner's claim and the non-resident defendant's forum-related activities are not sufficiently connected, is dismissal based on lack of jurisdiction warranted? | 031855.docx | USvLEAGE 00138327; USvLEAGE 00138328 | Condensed, Sub | 0.79 | 0 | | 1 | 1 | 1 |
| 19992 | Goodman v. Physical Res. Eng'g, 229 Ariz. 25 | 308=19.1 | Furthermore, whenever an agent acts, if there is no evidence that the agent is acting in that capacity when it engaged PRE's services to state the property. A principal is undisclosed if the third party has no notice that the agent is acting for a principal. Restatement § 1.04(2)(b) cf. Matter Taylor Co. v. Wierich, 2 Ariz.App. 154, 156, 406 P.2d 805 1 (1965) (for agency to avoid personal liability when acting on behalf of principal, agent must disclose agency and identify principal at time of transaction). It appears the majority of cases dealing with undisclosed principals arise in the context of third parties or agents attempting to hold the principal liable on a contract. When the principal is undisclosed, however, the third party can accurately assess the interests at stake, because the third party is unaware whether the person with whom it is dealing is or is not an agent. Restatement § 2.03 cmt. f. (if third party is induced to enter into the qualified transaction only, third party is not considered to believe actor has power to affect principal's legal relations) | A principal is undisclosed if the third party has no notice that the agent is acting for a principal. Restatement (Third) of Agency § 1.04(2)(b). | When is a Principal Undisclosed? | Principal and Agent Memo 102 - GF.docx | ROSS00113184-ROSS-00113185 | Condensed, SA | 0.87 | 1 | | 0 | 1 | 1 |
| 19993 | Watts v. Eufaula Nat. Bank, 76 Ala. 474 | 36Gr6 | Subrogation, being an equity springing from the relation between the parties, and created and enforced for the benefit and protection of the one in whose favor it originated, may be asserted or waived at pleasure. It may be that it is a question of intention, with the presumption that the surety intends to keep the debt alive, and with the presumption of subrogation, where he, in a particular case, pays the debt for his own benefit, to extinguish the title or demand, not only as to the creditor, but as between the surety and the principal debtor, the right of subrogation may be waived. --Houston v. Br. Bank at Huntsville, 25 Ala. 250; Croft v. Moore, 9 Watts, 451. Any positive act done by the surety, at the time of subsequent to payment, inconsistent with the enforcement of the right, will be considered as a waiver. Accepting an independent security, which is not coincident with, and the enforcement of which is not consistent, and can not be concurrent with the enforcement of the right of subrogation, displaces and defeats the latter right. In Copeer v. Jenkins, 32 Beav. 337, where two sureties, one being tenant for life, the other being a bond, and the other entitled to remainder, mortgaged one of them to a third person for the debt of the remainder-man, who alone personally bound to pay, and the tenant for life took from the remainder-man a covenant and indemnity against the mortgage, he is entitled to be subrogated to the benefit of the mortgage; that he pays off any part of the principal or interest of the mortgage paid off." | Where a surety pays for the defaults of his principal, he need not, to entitle him to the right of subrogation, at the time of payment signify his election and acceptance of such right, but it is sufficient if he show by unequivocal payment of the debt, and a tenant holding the creditor, in the absence of some act by him which amounts to a waiver. | Is the waiver of the right of subrogation a question of intention? | Subrogation - Memo # 1265 - C - SJ.docx | USvLEAGE 00200423; USvLEAGE 00200424 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 19994 | Wreidee v. City of San Diego, 176 Cal.App.4th 1302 | 268=93(74) | Proposition 218 defines a "special tax" as "any tax imposed for specific purposes," even if the proceeds are placed into a general fund. (Art. 13C, § 1, subd. (d).) It also provides, in relevant part, that "'[s]pecial taxes' includes any tax imposed for specific purposes, which is placed into a general fund." (Gov. Code, § 53721.) A "special tax" is a special tax if its revenues are expended for a specific purpose. (City of Roseville v. Community Redevelopment Agency (2000) 78 Cal.App.4th 1051, 1058, 93 Cal.Rptr.2d 314.) Proposition 13, by contrast, provides that "special taxes" may be imposed only if approved by a two-thirds vote. (Art. 13A, § 4.) To be a "special tax" under Proposition 13, the tax must be imposed, increased, or levied for a specific purpose and collected and apportioned to a specified fund. (See City of Woodlake v. Logan (1991) 230 Cal.App.3d 1058, 282 Cal.Rptr. 27.) A general tax, by contrast, is one whose revenues are deposited into the general fund and may be used for any and all governmental purposes. (Art. 13C, § 1, subd. (a).) As discussed below, a special tax, by definition, is a special-purpose tax, whereas a general tax is not. (Bay Area Cellular, supra, 162 Cal.App.4th at p. 693, 75 Cal.Rptr.3d 839; see also § 1, subd. (100% refund).) | Levy imposed by city to raise revenue to pay for the cost of collecting business taxes was a general tax that was void because it was imposed by the city council acting alone without the two-thirds vote as required by State Constitution, although the levy was a hybrid tax that had characteristics of both a general tax and a special tax, and in practical effect, the levy was an increase in the business tax, which was a general tax due to the fact that the proceeds were deposited in the general fund and made available for any and all governmental purposes, and the levy business tax proceeds were necessarily expended on the cost of administering the business tax program. West's Ann.Cal. Const. Art. 13C, § 2(b). | When is a special tax? | 065494.docx | USvLEAGE 00140307; USvLEAGE 00140308 | Condensed, SA, Sub 0.3 | | 1 | | 1 | 1 | 1 |
| 19995 | Fuller v. United States, 50 Ct.Cl. 108 | 34=21.3 | After the enactment of the Revised Statutes the subject seems to have obtained little attention in the Navy and Treasury Departments. In the latter the Revised Statutes were not deemed to require and change in the practice, and the matter continued to be treated as it had theretofore been under the "warranted mariner's rules," and consequently as warrant officers. At last the Navy Department again, in its practice, under the Revised Statutes of 1895, "mates are petty officers," article 28. The subject belongs to the Navy Department, and the Navy Regulations are given the force and effect of transitory orders, but the well considered act of the President himself for the guidance of the entire Navy is a work, in short, authorized by law and having in the Navy the force of law. | The Navy Regulations, 1893, which declare that "mates are petty officers," are authorized by law. | Are mates considered petty officers? | 036819.docx | USvLEAGE 00141645; USvLEAGE 00141646 | Condensed, SA | 0.87 | 1 | | 1 | 1 | 1 |

| ROW | Judicial Opinion | WRNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 21,876 | 9,079 |
| 19996 | Johansen v. Howland, 156 Iowa 314 | 265v5 | Exemption laws are liberally construed, and their operation favored by the courts. Here, it is clear that the assignor, Robert v. Howland, 18.14 Iowa, 1272, 28 N.W. 314, 2 A. L. R. 814, 156 So. v. Goode, 101 Iowa, 160, 70 N. W. 113, 35 L. R. A. 681, 63 Am. St. Rep. 376, Sohn v. Goode, 97 Iowa, 166, 118 N. E. 1030. The statute does not give a seller of personal property a lien thereon for the purchase price, and no lien attaches thereto until the execution is levied. The assignment of the note by the Motor Company to the appellant bank did not operate to transfer a lien on the property to it. The note was valid and binding, but was not stated in the relation to appellee of seller, but merely as the owner of a note executed by him. The judgment confers upon the note, and for any action for the purchase price of an automobile. The original seller received payment of the purchase price from the assignor. The assignor thereafter had no lien against the property or against the money. Cases cited by appellant, while having some bearing upon the question at issue, are in no wise controlling and but remote in point. The judgment of the court below is affirmed. | Automobile used by the owner, the head of a family, in earning a living, held exempt from execution to satisfy judgment for purchase money note, under the law of assignor, notwithstanding Code, § 4015, making exemptions against negotiable against an execution issued for the purchase money of property claimed to be exempt, and on which such execution is levied. | When will the assignor have the claim against the maker of the note for purchase money? | 010488.docx | LEGALEASE 00180184-LEGALEASE 00180185 | Condensed, SA, Sub 0.71 | | 839 | 1 | 1 | 1 | 1 |
| 19997 | United States v. Bertman, 686 F.2d 772 | 63v3 | In this case, the unlawful activity charged in the indictment was bribery of a public official in violation of 18 U.S.C.A. § 201. Under Hawaii law, coercion is a defense to a prosecution under this section, and Bertman could thus assert it as a defense to the Travel Act charge. Moreover, under Hawaii law, the defense is a non-affirmative one. See H.R.S. § 701-1[3]{22}; commentary to H.R.S. § 702-1040; 1-701-1040. Thus, the defendant need only raise some evidence of coercion, which when considered in light of any contrary government evidence, raises a reasonable doubt as to his guilt. Once he has done so, the burden shifts to the government to prove beyond a reasonable doubt facts which negate the defense. See commentary to H.R.S. §§ 703-115 and 710-1040. | Under Hawaii Law, coercion is a defense to a prosecution for bribery, that defense is a nonaffirmative one. HRS §§ 701-115(3), 710-1040. | Is coercion a defense to bribery? | 013578.docx | LEGALEASE 00180907-LEGALEASE 00180908 | Condensed, SA, Sub 0.83 | | | 1 | 1 | 1 | |
| 19998 | Ambler v. Phillips, 132 Pa. 161 | 113v3 | The work was measured by plaintiff, but by a fair number of cubic yards, it is difficult to say what was designated as "cores"; nor was the measurement" * This rule was given by Mr. Ambruse, a measurer called as a witness by plaintiff, as follows: "This rule given by Mr. Ambruse, a measurement is made by the Brickmakers' Association. We are not entitled to give prices in the work, by reason of the feet per cent, to three hundred per cent, on contracting work, the thirty-five feet per cent, to three hundred per cent, on constructive measurements. It varies from month to month, almost from day to day. As price of labor and materials advances, this is a question of general understanding. It is unknown to the measurement of such work; and upon the facts offered here, before a jury, which was (bivalent) the Brickmakers' Association may adopt a rule, which may itself formulates, and perhaps others who did not belong to their organization. We are entitled to know the rules under which they are bound by a usage or custom they measurement yesterday for the first time in my life. The usage or custom under this rule. The defendant Phillips testified at the trial: "I heard of constructive measurement in the Brickmakers' Association of which they are members, but are bound by a rule of this particular Association of which they had no knowledge. This very point was decided in Corcoran v. Chess, 58 Atl. Rep. 814, 874, where the court held that the defendants could not be bound by a rule of the Brickmakers' Association of which they had no knowledge, which they never heard, and which existed by usage, custom or otherwise, but was not generally or universally understood, and was not so far measured by an arbitrary rule, of which the contracting party had no knowledge. It may be the Brickmakers' Association may adopt a rule which may itself formulate, and perhaps others who do with it as a substitute for the right to drill, he was denied equal protection of the law, and the denial of a permit to drill for oil and gas was a taking of property without due process of law. The result would nonetheless be the same, and we agree. We also agree with other states that have a right to protect correlative rights, and a right to produce oil from a pool are limited by a duty not to injure the pool and cause waste. * * * The right of an individual owner to take oil or gas from his own premises or wild operation is limited only by a duty to other owners (1) not to injure the source of supply and (2) not to take an inequitable share of the oil and gas. 1 Emphasis added.) [I]nsofar as plaintiffs have offered to show that defendant's operations would tend to waste oil or gas, or otherwise affect their correlative rights, they are entitled to relief. Baldwin v. Kramer, supra. | A good custom should be certain, continuous, reasonable, distinct, ancient and so notorious as is probably have been known to the parties to the contract. | When can usage of trade or custom become so firmly imbedded in the law as to govern the rights of parties? | 014198.docx | LEGALEASE 00181882-LEGALEASE 00181883 | Condensed, SA, Sub 0.92 | | 1 | 1 | 1 | 1 | 1 |
| 19999 | Gilmore v. Oil & Gas Conservation Comm'n, 642 P.2d 773 | 260v92.79 | Appellant also relies on Bernstein v. Bush, 29 Cal.2d 773, 177 P.2d 913 (1947). To support that position, that prices of production of oil would be to injure the extent private interests. * * * This is a statute that prohibited the drilling of wells in certain areas, which prevented lessees from drilling a well to prevent drainage from a nearby well. The California court held that since it is not the duty of an individual owner to take oil as a substitute for the right to drill, he was denied equal protection of the law, and the denial of a permit to drill for oil and gas was a taking of property without due process of law. The result would nonetheless be the same, and we agree. We also agree with other states that have a right to protect correlative rights, and a right to produce oil from a pool are limited by a duty not to injure the pool and cause waste. * * * The right of an individual owner to take oil or gas from his own premises or wild operation is limited only by a duty to other owners (1) not to injure the source of supply and (2) not to take an inequitable share of the oil and gas. | In approving a plan of unitization, prevention of waste is of primary importance; the purpose of a unit producing oil is to produce a source of supply and not to take a disproportionate part of the oil and gas? | 022281.docx | LEGALEASE 00181249-LEGALEASE 00181250 | SA, Sub | 0.74 | | | | 1 | |
| 20000 | In re Opinion of the Justices, 133 Me. 525 | 371v343 | The term "property," is used in reference to taxation, means the corpus of an estate or investment, as distinguished from the annual gain or income from it. Property, in the legal and ordinary sense, is the corpus, the "res" or the thing itself, as distinguished from the fruit or income. It is the reverse, on the other hand (Id.Ed.) : "An income tax is not a tax on property with a constitutional requirement that taxation on property shall be in proportion to its value." Cooley on Taxation (4th Ed.), § 1751, Featherstone v. Norman, supra. | Income is not "property," and tax on income is not tax on property from which income is derived; income requiring tax on property to be uniform. Const. Amend. 36, art 9, § 7, 8. | Is income tax a tax on property? | 043148.docx | LEGALEASE 00180979-LEGALEASE 00180980 | Condensed, SA, Sub 0.69 | | | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20001 | Bender v. Pfaff, 38 F.2d 649 | 371v2001 | In Louisiana the earnings of the wife enter into the community, Civil Code, art. 2402, and are controlled by her, even as she may lend them without her consent, Civil Code, art. 2403. It is true the wife cannot contract without the authority of her husband, express or implied, but a law is not a debt created by contract. It is created by law, and a duty exists to pay it. No authorization by the husband is required for its validity. The wife may stand in judgment with her husband's authorization, Civil Code, art. 121. If he refuses to authorize, the judge may do so. Civil Code, art. 124 | Tax is debt created by law rather than "debt created by contract." | Is it a debt created by law? | 043195.docx | LEGALEASE 00141176-LEGALEASE 00141177 | Condensed, SA, Sub 0.88 | | 0 | 1 | | 1 | |
| 20002 | Bender v. Pfaff, 38 F.2d 649 | 371v2001 | In Louisiana the earnings of the wife enter into the community, Civil Code, art. 2402, and are controlled by her, even as she may lend them without her consent, Civil Code, art. 2403. It is true the wife cannot contract without the authority of her husband, express or implied, but a law is not a debt created by contract. It is created by law, and a duty exists to pay it. No authorization by the husband is required for its validity. The wife may stand in judgment with her husband's authorization, Civil Code, art. 121. If he refuses to authorize, the judge may do so. Civil Code, art. 124 | Tax is debt created by law rather than "debt created by contract." | Is it a debt created by contract? | 043197.docx | LEGALEASE 00141182-LEGALEASE 00141183 | Condensed, SA, Sub 0.88 | | 0 | 1 | | 1 | |
| 20003 | Matterhorn v. NCR Corp., 763 F.2d 866 | 25Tv200 | On the merits, we begin by noting that although Matterhorn's challenge to the arbitrability of its dispute over the 1980 purchase is not pinpointed to the arbitration clause, but is a challenge to the applicability of the "Universal Agreement" of which the arbitration clause is but one provision. Firms of first (Second) of Contracts, [...] (1980), the purpose of such clauses is to prevent oral modification by a contracting party's agent. And although Matterhorn's argument is that the consolidation may be a superseding written contract, the 1980 purchase order. In any event, in determining the issue of arbitrability we are not concerned with the merits of Matterhorn's claim. Our point is only that the claim turns not on the validity of the Universal Agreement as such but on whether a subsequent transaction nullified the agreement. The issue is much a question about the subsequent transaction is about the Universal Agreement itself. | Where parties have, though having previously signed "Universal Agreement" containing arbitration clause, thereafter signed contract that seemed to incorporate any part of terms containing arbitration clause, it may have intended and reasonably believed that it would not be forced to arbitrate disputes arising under the contract, and there was at least enough doubt to make the issue one for the district court rather than the arbitrator. 9 U.S.C.A. §§ 3, 4. | Can parties unless an agreement containing an arbitration clause be forced? | 007884.docx | LEGALEASE 00143063-LEGALEASE 00143064 | Condensed, SA, Sub 0.74 | | 0 | 1 | | 1 | |
| 20004 | Heib v. Paisley Fin., 121 F. Supp. 3d 1170 | 25Tv148 | The Federal Arbitration Act establishes a "liberal federal policy favoring arbitration agreements," F. Moses H. Cone, 460 U.S. at 24, 103 S.Ct. 927. Generally this policy requires courts to enforce an arbitration agreement as an arbitration in the forum specified. There are instances, however, where the arbitration forum specified in the arbitration agreement is unavailable. Few courts have addressed such a situation. [...] Trust LLC v. Mt. Hawley Ins. Co., 625 F.34 781, 940 (9th Cir.2010); Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir.2000); In re Salomon, 68 F. Supp.2d at 1184. As this Court reasoned in prior [...] this Court chose to follow the approach in Brown and Reddam for what to do when the forum or means specified for arbitration becomes unavailable. 68 F.Supp.2d at 1166. As this Court reasoned in Jones: When the reference to the unavailable forum is not integral to the parties agreement, is merely "an ancillary or logistical concern," the application of Section 5 [of the Federal Arbitration Act] to appoint a different arbitrator would not circumvent the intentions of the contract, when they favor of arbitration forum was integral to the agreement, however, such that the choice of that specific forum as arbitration absent the selected forum, application of Section 5 to appoint a substitute arbitrator is more problematic. After all, despite the "liberal federal policy favoring arbitration agreements," F. Moses H. Cone, 460 U.S. at 24, 103 S.Ct. 927, the Court must be mindful of the parties' intentions as expressed in the terms of their agreement. Matterhorn v. Sheeran Johnson Hutton, Inc., 514 U.S. 52, 57*54, 115 S.Ct. 1212 (1995). Noting that the "central purpose of the FAA is" to ensure that private agreements to arbitrate are enforced according to | Pursuant to the Federal Arbitration Act's liberal federal policy favoring arbitration agreements, courts are generally enforced, including requiring arbitration in the forum specified, in the instances when the arbitration forum specified in the arbitration agreement is unavailable. 9 U.S.C.A. § 5 et seq. | Can a substitute arbitrator be appointed when the selected forum is unavailable? | 007626.docx | LEGALEASE 00143301-LEGALEASE 00143302 | Condensed, SA 0.84 | | 0 | 1 | | 1 | |
| 20005 | Fatis, Utah State Tax Comm'n, 386 P.2d 1233 | 371v1480 | [findback added.] This section preserves the home domicile of members of the armed forces even though they may be living in another state for military purposes. Software, United States, 395 U.S. 169, 177*8, 89 S.Ct. 1648, 1651, 23 L.Ed.2d 286 (1969); and as taken under the provisions of the Soldiers' and Sailors' Civil Relief Act preserved Native American Servicemen's domicile from taxation in a distant state, the section forecloses the trust state from taxing the personal property of members of the armed services, stationed in that state, 38 U.S.3 386, 395, 86 S.Ct. 478, 483, 15 L.Ed.2d 416, 447*2 (1966). | Wages received by Native American who did not abandon his domicile on state reserve tax, Soldiers' and Sailor Civil Relief Act preserved Native American servicemen's immunity from taxation as well, Soldiers' and Sailors' Civil Relief Act of 1940, 5 S.14, as amended, 50 App. U.S.C.A. § 574. | Can the taxable domicile of servicemen be changed by military assignments according to the Soldiers' and Sailors' Civil Relief Act? | 008643.docx | LEGALEASE 00142278-LEGALEASE 00142279 | Condensed, SA, Sub 0.45 | | 0 | | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20006 | Harris v. Esterbrook, 226 N.W. 751 | 83E+481 | That appellant acquired title to the note by the transfer without indorsement is settled law. 5 Uni. Laws Ann. 198, Brannan's Neg. Ins. Law (4th Ed.) pp. 339, 340. Some courts hold that the transferee in good faith and for value becomes vested with legal title; others hold that the transferee becomes vested with equitable title. 1 Joyce's Def. Com. Paper (2d Ed.) p. 923, " 663. The statute itself says that "the transfer vests in the transferee such title as the transferor had therein." In Piper v. Hagen, 33 S. D. 491, 146 N. W. 692, 694, this court said: "The delivery of the note by Mrs. Wade [the payee] to the respondent for a valuable consideration and with the intent to pass the title to the note to him was sufficient to transfer the title, even though it had not been indorsed at all." | Assignee of note acquires title by transfer without indorsement (Rev. Code 1919, S 1753). | Can title be acquired by transfer absent an endorsement? | Bills and Notes - Memo 578 - RK.docx | ROSS-003331257-ROSS-003331258 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 20007 | United States v. Frost, 125 F.3d 346 | 306+35(9) | [T]he "intangible rights" theory is anchored upon the defendant's misuse of his public office for personal profit. "This doctrine of the deprivation of honest and faithful service has developed to fit the situation in which a public official avails himself of his public position to enhance his private advantage...." United States v. Dixon, 536 F.2d 1388, 1400 (2d Cir.1976). Conversely, misconduct of a fiduciary in the administration of exclusively private matters in his capacity as a private individual which does not involve the misuse of public office or public trust, is not actionable as a violation of the mail fraud statute under an intangible rights theory. United States v. Rabbitt, 583 F.2d 1014, 1024 (8th Cir.1978), cert. denied, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). | Private individual may commit mail fraud by breaching fiduciary duty and thereby depriving person or entity to which duty is owed of intangible right to honest services of that individual. 18 U.S.C.A. SS 1341, 1346. | What is the intangible rights theory? | 011329.docx | LEGALEASE-00143089-LEGALEASE-00143090 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 20008 | People v. Biane, 58 Cal. 4th 381 | 63+6(1) | We conclude that the Court of Appeal erred. Although neither the offer nor payment of a bribe in itself can establish that the offeror aided and abetted the separate crime of receiving the same bribe, the status of being the offeror or payor of a bribe does not disqualify that person, as a matter of law, from complicity in the offense of receiving the bribe. Whether the offeror is guilty of aiding and abetting the receipt of the bribe depends on whether there is evidence that, in addition to the offer or payment of the bribe, the offeror " "with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." " (People v. Gonzales and Soliz (2011) 52 Cal.4th 254, 295"296, 128 Cal.Rptr.3d 417, 256 P.3d 543.) Similarly, being the offeror or payor of a bribe does not disqualify that person, as a matter of law, from culpability for participating in a conspiracy to accept that same bribe. | Even if proven, allegation that defendant, a real estate developer, and codefendant, acting as his agent, offered or paid bribes to county supervisors to settle litigation by defendant's company against county did not categorically exempt defendant and codefendant from charges of aiding and abetting receipt of bribes, or of conspiracy to accept bribes, if they also used threats, intimidation, or coercion to aid, promote, encourage, or instigate commission of those crimes, with knowledge of briberecipient's unlawful purpose and with intent or purpose of committing, encouraging, or facilitating commission of recipient's offense. West's Ann.Cal.Penal Code SS 31, 86, 165. | Does being the offeror or payor of a bribe disqualify that person from culpability for participating in a conspiracy to accept that same bribe? | 011598.docx | LEGALEASE-00142704-LEGALEASE-00142705 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 20009 | United States v. Kincaid-Chauncey, 556 F.3d 923 | 63+14 | In addition, when an official acting with the intent to defraud, fails to disclose a personal interest in a matter over which he or she has decision-making power, the public is deprived of its right to honest services because it is deprived of its right either to disinterested decision making itself or full disclosure as to the official's motivation behind an official act. It is not enough for the Government to prove that the defendant failed to disclose such a conflict of interest. Rather, the Government must prove that the defendant acted with the intent to defraud. The Government proves intent to defraud if it proves that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension. A public official's duty to disclose material information need not be expressly imposed by statute or code because a public official inherently owes a fiduciary duty to the public to make governmental decisions in the public's best interest. | Jury instruction that described crime of bribery for purposes of charges of honest services wire fraud that were based upon elected official's alleged participation in bribery scheme accurately set forth applicable law when instruction explained that bribe required that elected official accepted something of value in conjunction with an intent to be influenced, and then contained numerous references to specific intent to defraud public. 18 U.S.C.A. S 1343. | "In relation to bribery, what is an intent to defraud?" | Bribery - Memo #384 - C - LB.docx | ROSS-003288839-ROSS-003288840 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 20010 | Clark v. Com., 996 S.W.2d 39 | 63+11 | In Commonwealth v. Benham, Ky., 816 S.W.2d 186 (1991), the Supreme Court set out the standard of appellate review for motions for directed verdict:On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.Id. at 187.Moreover, it is within the sole province of the jury to determine the weight and credibility of conflicting evidence. Brown v. Commonwealth, Ky., 558 S.W.2d 599 (1977).In this case, the Commonwealth presented sufficient evidence to support a reasonable inference that the appellant was guilty of bribery of a public servant. | Evidence that motorist was told that defendant would intercept and fix traffic violations in exchange for $100, that third-party gave money to defendant, and that traffic citation issued to motorist, which was presented at trial, had defendant's initials on it and a receipt to motorist indicating that the citation had been paid, but the paperwork on the disposition of the ticket was never sent to the Department of Transportation, was sufficient to support conviction for bribery of a public servant. KRS 521.020. | Is conflicting evidence in bribery the province of the jury to determine? | 011641.docx | LEGALEASE-00142922-LEGALEASE-00142923 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 20011 | United States v. Tri-No Enterprises, 819 F.2d 154 | 260+92.5(2) | First, Tri-No contends, the five-year statute of limitations found at 28 U.S.C. " 2462, for actions brought to enforce "any civil fine, penalty, or forfeiture ...," applies. But this contention fails because the reclamation fee SMCRA imposes is not a fine, penalty, or forfeiture. The reclamation fee is simply an assessment or excise tax on all coal produced for sale by surface or underground mining. United States v. Gary Bridges Logging and Coal Company, 570 F.Supp. 531, 532 (E.D.Tenn.1983); see Devil's Hole, 747 F.2d at 898 (reclamation fee is a "fee or excise tax"). Therefore, 28 U.S.C. " 2462 does not apply to an action to collect delinquent reclamation fees under SMCRA. | Reclamation fee imposed by the Surface Mining Control and Reclamation Act is not a "civil fine, penalty, or forfeiture" for purposes of five-year statute of limitations on actions to enforce fines, penalties, and forfeitures. 28 U.S.C.A. S 2462; Surface Mining Control and Reclamation Act of 1977, S 402(a), 30 U.S.C.A. S 1232(a). | "Is the reclamation fee a fine, penalty, or forfeiture?" | 021220.docx | LEGALEASE-00143271-LEGALEASE-00143272 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,073 |
| 20012 | Ford Motor Co. v. Simpson, 233 So. 3d 685 | 307A+563 | In Ferrara v. Walters, 919 So. 2d 388, 397 (Fla. 2005), the Florida Supreme Court discussed that a plaintiff should have a basis for a claim before using the term "fraud on the court" and found it interchangeable. The court distinguished normal fraud from intrinsic fraud, such opinion in DeClaire v. Yohanan, 453 So.2d 375, 377 (Fla.1984) In essence, extrinsic fraud is conduct which prevents a party from presenting his claim before the court, and the prevention itself becomes a collateral issue to the cause, whereas intrinsic fraud is the presentation of misleading information on an issue before the court that was tried or could have been tried 950 So.2d at 393"92. DeClaire explained that only what was "deemed to be fraud perpetrated directly on the court,"['noted Fraud on the court."Course] (Parent) Holdings, Inc. v. Morgan Stanley & Co., 20 So.3d 952, 957"958 (Fla. 4th DCA 2009). | Automobile manufacturer did not commit "fraud on the court" by making sham factual representations to the National Highway Traffic Safety Administration (NHTSA), which formed basis for NHTSA report entered in evidence against manufacturer in consumers' product-liability action against manufacturer; manufacturer's representations to NHTSA were not contradicted by evidence in the record, any alleged improper conduct by NHTSA report itself would have been intrinsic rather than extrinsic fraud, and manufacturer's challenged representations were made more than two years prior to motion to interfere with adjudication of motorists' actions. | "Is "intrinsic fraud," a term which can be used interchangeably with fraud on the court?" | 03928.docx | LEGALEASE 00163564-LEGALEASE-00163565 | Condensed, SA, 0.22 | | 0 | 1 | 1 | 1 | 1 |
| 20013 | Gordon v. Gatlin Commons Prop. Owners Ass'n, 199 So. 3d 1120 | 307A+563 | Where there is no justification for plaintiff's counsel's non-compliance in this case, and the law requires the trial court to consider specific factors before dismissing a complaint. "Before a court may dismiss a cause as a sanction, it must first consider the six factors delineated in Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993), and set forth explicit findings of fact in the order that imposes the sanction of dismissal." Bennett v. Citizens Fed. Sav. & Loan Ass'n of St. Mary's, Inc., 47 So.3d 412, 416 (Fla. 4th DCA 2011) (citation omitted). The six factors are: a. whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; b. whether the attorney has been previously sanctioned; c. whether the client was personally involved in the act of disobedience; d. whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; e. whether the attorney offered reasonable justification for noncompliance; and f. whether the delay created significant problems of judicial administration. 629 So.2d at 818.["Before considering these factors, if there is a less severe sanction available than dismissal with prejudice, the court should use it.'] | Where counsel is involved in the conduct to be sanctioned, a Kozel analysis of six factors is required before dismissal is ordered as a sanction for noncompliance with court order. | "If there is a less severe sanction available than dismissal with prejudice, should the court use it?" | Pretrial Procedure Memo #3821 - C- TM.docx | ROS5-00238984-ROS5-00238984 | Condensed, SA, Sub 0.83 | | 1 | 1 | 1 | 1 | 1 |
| 20014 | Millennium Park Joint Venture v. Houlihan, 241 Ill. App. 3d 13 | 371+288 | We note the public officials have no taxing power except that which is delegated to them by the legislature. Searls v. Agricultural Extension Div. (1951) 343 Ill. 286, 34 N.E.2d 20, 125 (1995), citing Ill. Const.1970, art. IX, 1. To the degree present law mandates a tax-efficient creation, and taxes can be levied, assessed and collected only in the manner expressly specified by the statute. People ex rel. Edie v. Lueder (In re) 30 Ill. 3d 271, 334 Ill. App. 3d 1031 (1978) A tax therefore "unauthorized" when the taxing body has no statutory power to levy. See, See, 4 § 4, Woodland Township (Imperial ed. 331 N. App. 3d 959, 906, 265 N. Dec. 290, 772 N.E.2d 688 (2002)) It has also been held that the action of a taxing body which has no statutory power is void as to the subject of the tax. Even the practices given any jurisdiction by statute, that is, all tax 369 Ill. App. 3d 15, and 2004 (2004). | Taxpayer was not required to exhaust its administrative remedies under its property tax code before challenging assessment if authority to determine that its concession permit to operate a restaurant in city park was a lease, which gave rise to a property tax obligation under permit, as permitted under "unauthorized as tax" doctrine; taxpayer was not attacking assessor's alleged mistake in its determination that permit was a lease, but rather, was challenging whether assessor had legal authority to tax the permit. S.H.A. 35 ILCS 200/23-5, 200/23-10, 200/23-15. | Is tax unauthorized when the taxing body has no statutory power to tax? | 04366.docx | LEGALEASE-00145021-LEGALEASE-00145022 | Condensed, SA | | 0 | 1 | 1 | 1 | 1 |
| 20015 | Guiffed Co. v. Sch. Dist. of Philadelphia, 309 Pa. Super. 177 | 371+2005 | Section 4 of the Act of 1931 (72 P.S. 26(10) provides as follows: "The tax shall be payable upon liquid fuels sold and delivered to or used by the Commonwealth, and every political subdivision thereof." As we understand the statute and judicial decisions of our Commonwealth, it is contested that the school district of Philadelphia is a governmental agency, and not a political subdivision, but is subject to the taxing such a governmental agency, it is not subject to the tax in question. The Act of May 25, 1937, p. 1037, was framed to cure in the original appropriation by the legislature as such political subdivisions. In the case of Com. v. Penn City Co., 303 Pa. 112, 154 A. 307, the court held that the City of Philadelphia is not required to pay the gasoline tax imposed by the Act of 1929 on gasoline purchased for the motor vehicles of the fire department of the city of Philadelphia, as general subdivisions may abstractthe governmental agencies in matters affecting the performance of their governmental functions. Consequently is this statute, which allows the collect state-revenue on fuel that is necessary at the taxpayer whether the act of 1931 did not actually terminate the fuel tax must cover gasoline used by a school district in this commonwealth." | State may tax its governmental agencies. | Can a state tax its governmental agencies? | Taxation - Memo #652 - C - DN.docx | ROS5-0002388/59 ROS5-00238/03011 | Condensed, SA | | 0 | 0 | 0 | 1 | 0 |
| 20016 | State ex rel. ACF Indus. v. Vieweg, 204 W. Va. 525 | 413+2 | In other words, "[t]he right to workmen's compensation benefits is wholly statutory. Under the workmen's compensation statutes of this state, a claimant has a right to receive benefits and the protector of workmen's compensation is authorized to grant such benefits, only insofar as he is empowered to do so by statute." Syl. pt. 2, Dunlap v. State Workmen's Compensation Commr., 155 W.Va. 704, 187 S.E.2d 116, 168 (1972). In the same amount does not receive benefits from the employer whose claims the workmen's compensation fund. See Meadows v. Lewis, 172 W.Va. 457, 307 S.E.2d 625, 630 (1983), Ramey v. State Workmen's Compensation Comm'r, 150 W.Va. 402, 474, 154 S.E.2d 502, 504 (1966). Begg v. State Workmen's Compensation Comm'r, 157 W.Va. 700, 716, 165 S.E.2d 162, 165 (1969). | The right to workmen's compensation benefits is wholly statutory. | Is the right to workers compensation statutory? | 04369.docx | LEGALEASE-00143177 LEGALEASE-00143178 | Condensed, SA | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20017 | United States v. Troop, 235 F.2d 123 | 63+1(1) | A good statement as to the purpose of the statute and of its essential nature, appears in Kemler v. United States, 1 Cir., 133 F.2d 235, 238, where the Court said: "The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of influencing official conduct. Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or another, be it a mistake on his part or a mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it. The statute is violated when a bribe is given or an offer to bribe is made regardless of the occasion therefor, provided it is done with the requisite intent and provided the acceptor or the offeree of the bribe is a person of the sort described in the statute. | Offense of attempted bribery of federal officer is complete upon tender of bribe to such officer with intent to influence his decisions and acts in an official capacity, and it is entirely immaterial that for some reason, subsequently determined, officer could not have brought about result desired by person offering bribe. 18 U.S.C.A. 201. | What is the gravamen of the offense prohibited by the statutes governing bribery? | 012221.docx | LEGALEASE-00143776-LEGALEASE-00143777 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 20018 | United States v. Sun Bear, 307 F.3d 747 | 350H+1263 | Our Eighth Circuit precedents reflect this commonsense approach to determining whether a given offense is a crime of violence. For example, we have held that burglary of a commercial building is a crime of violence under the guidelines. See United States v. Peltier, 276 F.3d 1003, 1006 (8th Cir.2002). In reaching this conclusion, we relied on United States v. Solomon, 998 F.2d 587, 590 (8th Cir.1993), a case decided under 18 U.S.C. " 924(e)(2)(B), which held that such a burglary "imposes a serious risk of harm to occupants, returning occupants, or interested passersby." See United States v. Hascall, 76 F.3d 902, 904 (8th Cir.1996). In addition, we have held that "every escape, even a so-called "walkaway" escape," "is a crime of violence." Nation, 243 F.3d at 472. The "variety of supercharged emotions" an escapee is likely to experience, including the fear of being captured, have led us to conclude that every escape is "a powder keg" with "the serious potential" to "explode into violence." Id. (citing United States v. Gosling, 39 F.3d 1140, 1142 (10th Cir.1994)). | Burglary of commercial property is a crime of violence in the Eighth Circuit, for purposes of the career offender guideline. U.S.S.G. SS 4B1.1, 4B1.2, 18 U.S.C.A. | Is burglary of a commercial building a crime of violence? | Burglary - Memo 231 - SB.docx | ROSS-003315204-ROSS-003315208 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 20019 | Spear v. Coon, 32 Conn. 292 | 307A+74 | It should have appeared from the certificate of the magistrate, or from other evidence, that the deposition was sealed up by him. The statute expressly provides that it must be sealed up by the magistrate. Rev. Stat. tit. 1, " 115. | It is not indispensable that magistrate should have certified upon deposition that it was sealed up by him. | Is it not indispensable that a magistrate should have certified upon deposition that it was sealed up by him? | 034522.docx | LEGALEASE-00144001-LEGALEASE-00144002 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 20020 | Pierce v. City of Hamilton, 40 Ohio App. 338 | 268+906 | The question before us is the issuance of general bonds, to be paid for by general taxation. That has always been recognized as a governmental act, and was so held in the case of State ex rel. City of Toledo v. Cooper, 97 Ohio St. 86, 119 N. E. 253, wherein the court declared in its syllabus: "Taxation is a sovereign function." | Since taxation is sovereign function, city's issuing general bonds payable by general taxation is governmental act. | Is taxation a sovereign function? | 045778.docx | LEGALEASE-00144521-LEGALEASE-00144522 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 20021 | Comer v. Micor, 436 F.3d 1098 | 25T+179 | We turn, then, to the single issue that was briefed and argued by the parties: whether the arbitration agreements apply to Comer's ERISA claim against Smith Barney. In Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185 (9th Cir.1986), we explained that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." Id. at 1187-88. Among these principles are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir.1995). In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries. See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, 269 F.3d 187, 195 (3d Cir.2001). | Nonsignatories to arbitration agreement can enforce agreement as third-party beneficiaries. | Can nonsignatories enforce arbitration agreements? | Alternative Dispute Resolution - Memo 716 - RK.docx | ROSS-003301943-ROSS-003301944 | Order, SA | 0.89 | 1 | 0 | 0 | 1 | |
| 20022 | United States v. Sorrow, 732 F.2d 176 | 164T+24(5) | Sorrow's argument that compulsion was a necessary element for his Hobbs Act conviction, 18 U.S.C.A. " 1951, fails under decided cases. A private person can commit extortion only through the use of "actual or threatened force, violence, or fear." 18 U.S.C.A. " 1951. If the property is obtained under color of official right, however, no showing of threats or violence is necessary. "The coercive element is supplied by the existence of the public office itself." United States v. Williams, 621 F.2d 123, 124 (5th Cir.1980), cert. denied, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). Compulsion is not an element in a Hobbs Act prosecution of a public official. "The government is merely required to prove that a public official obtained money to which he was not entitled and which he obtained only because of his official position." United States v. Hedman, 630 F.2d 1184, 1195 (7th Cir.1980), cert. denied, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); see United States v. Glass, 709 F.2d 669, 674 (11th Cir.1983). | If property is obtained under color of official right, no showing of threats or violence is necessary to sustain conviction under Hobbs Act. 18 U.S.C.A. S 1951. | What supplies the coercive element of extortion? | 012258.docx | LEGALEASE-00145085-LEGALEASE-00145086 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 20023 | Van Valkenburg v. Bradley, 14 Iowa 108 | 289+957 | "After the dissolution of a partnership, the power of the individual partners to bind the firm ceases, unless in matters necessary to settle up the unsettled business of the firm. If, at the dissolution of a partnership, one partner is authorized by the firm to settle up and arrange the business of the firm, such partner has the power to bind the firm by the execution of a note in liquidation of a debt, contracted by the partnership, before the dissolution, but not to create any new debt or liability." | A general authority to one partner, after the dissolution of a copartnership, to settle the business of the firm does not authorize him to renew in the name of the firm a pre-existing copartnership note, but an authority to so bind the firm may be given in the terms of dissolution, or by the assent of the other partners at the time of such renewal. | Does the power to bind the firm cease after dissolution of a partnership? | 022490.docx | LEGALEASE-00146400-LEGALEASE-00146401 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 20004 | Heckman v. Williamson Cty., 369 S.W.3d 137 | 313+1505 | Just as the Texas Constitution bars our courts from deciding a case when the plaintiff lacks standing, similarly a court cannot decide a case that has become moot during the pendency of the litigation. A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties "that is, if the issues presented are no longer "live," or if the parties lack a legally cognizable interest in the outcome. Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests. If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction. | Whether considering the standing of one plaintiff or many, the court must generally vacate any order or judgment previously issued and dismiss the case for want of jurisdiction | If a case is or becomes moot, must the court generally vacate any order or judgment previously issued and dismiss the case for want of jurisdiction? | 031558.docx | LEGALEASE 0018173-9 LEGALEASE-00183720 | Condensed, SA | 0.15 | | 1 | | 1 | |
| 20025 | Tinoboru v. Superior Court of Los Angeles Cty., 240 Cal. App. 2d 156 | 302+6561(1) | "Courts have inherent power to dismiss actions upon the grounds that they are frivolous or sham. Such a motion to dismiss is proper practice, but in each case the question arises whether the specific facts presented to the court constitute grounds for dismissal. Cunha v. Anglo California Nat. Bank of San Francisco, 34 P.2d 4, 6. | Where insofar as motion to strike was upon legal ground of irrelevancy, it was addressed to any particular allegation and no showing of irrelevancy was made, motion must be considered as one to strike or dismiss entire count on basis that it was sham. West's Ann.Code Civ.Proc. § 453. | Is a motion to dismiss an action on the ground that it is frivolous or shams a proper practice? | 031077.docx | LEGALEASE 0018 S465- LEGALEASE-00183466 | Condensed, SA | 0.15 | | 1 | 0 | 1 | |
| 20026 | Arteleree v. Dallas Indep. Sch. Dist., 498 S.W.2d 229 | 413+2 | It appears to us that the executrix's complaint of unfairness is primarily addressed to the terms of the statute. There is no common-law right to workers' compensation and the right to compensation is limited to that which the statute provides. The statutory scheme was constructed with the notion that compensation is paid in lieu of wages lost because of injury. Inasmuch as wages are payable periodically, the statute calls for compensation to be paid by the week. Because wages cease at death, compensation also ceases. Bailey, 383 S.W.2d at 563. | There is no common-law right to workers' compensation and the right to compensation is limited to that which the statute provides. Vernon's Ann.Texas Civ.St. arts. 8306 et seq., 8306, 5.12. | Is there a common-law right to workers' compensation? | Workers Compensation - Memo #12.2 MC.docx | ROSS-000395D14 ROSS-000395015 | Condensed, SA | 0.66 | | | 0 | 1 | |
| 20027 | Womes, R.I.S. v. First Pastoret Nat'g, Corp., 856 F. Supp. 1074 | 83+1481 | The Note was transferred pursuant to an allonge executed on June 20, 1993 and therefore the provisions of UCC §3-203 et seq. control. A transfer will control the effect and scope of the transfer. Under Va. Code Ann. § 8.3-203(1) "[an instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Moreover, such rights include all the transferor's rights to the instrument, whether by negotiation or otherwise, vests in the transferee all of the transferor's rights to the instrument (see official comment to Lawrence UCC Series "3" 203 (2) (Art 3). Moreover, "[a] transfer vests in the transferee any right of the transferor to enforce the instrument...." This fundamental UCC principle, of course, has reference to the "transferor's status as a holder or holder-in-due-course, but it serves further to illustrate the concept that the effect of a transfer of a negotiable instrument, such as the Note, is to transfer the rights in the instrument used to convey the rights held by the transferor. This concept is also reflected in the rule that the transferee must acquire rights in the instrument and the lender must have "dominion" or control" or "status" as a consequence of his cash, insertions or knowledge. | Can a transferee obtain the status of the transferor? | 1075b.docx | LEGALEASE 00394629- LEGALEASE-00394633 | Condensed, Order, SA | 0.69 | 1 | | | 1 | 1 |
| 20028 | Drummond v. White Oak Fuel Co., 104 W. Va. 368 | 260+5361 | When the word "surface" is used in a grant of land, it creates a severance of the land into two parts, and prima facie refers to the soil which may be the minerals; the minerals below "the surface constituting a separate estate. The grant of Coms'a of Nescafe County, 73 Kan. 339, 89 P. 750, Dolan v. Dolan, 70 W. Va. 76, 73 S. E. 90, Ann. Cas. 1013D, 125, A mere surface grant has sometimes been likened "to the upper story of a building, entitled to support from below but covering none of the sub[point land." Erickson v. Iriet Co., 35 Kan. 604, 609, 34 S. W. 161, 163. In using the word "surface," the layman in casual conversation, as well as the judge in a considered opinion, ordinarily refers only to the superficial part of the land. | "Surface," without qualifying phrase in deed, ordinarily means only superficial part of land | Does the word surface be the merely to the superficial part of land? | 021552.docx | LEGALEASE 00147716- LEGALEASE-00147727 | Condensed, SA | 0.87 | | 1 | | 1 | |
| 20029 | Begg v. New Jersey Car Co., 88 Ariz. 182 | 360+7351 | It is axiomatic that a locator must sell in good faith. | It is axiomatic that a locator must sell in good faith. | Should a locator act in good faith? | 021558.docx | LEGALEASE 00143986- LEGALEASE-00143987 | SA, Sub | 0.77 | | | 0 | 1 | |
| 20030 | Ayifree v. Grad Fibrx, 111 A.3.3d 569 | 229+4504 | Under 22 NYCRR 202.21, a court may dismiss an action when a plaintiff is unprepared to proceed on the date on which the action comes to trial. (22 NYCRR 202.21 (f)). To be relieved of the default, a plaintiff must demonstrate a reasonable excuse for the default and potentially meritorious cause of action (see Vera v. Soohoo, 99 A.D.3d 990, 992, 953 N.Y.S 2d 615). To be Supermarkets Inc., LLC, 83 A.D.3d 69, 919 N.Y.S 2d 883). On appeal, the defendants do not challenge the Supreme Court determination that the plaintiff demonstrated a reasonable excuse for her default. | Prior order denying purported factur manufacturers' motion for summary judgment in personal injury action arising when plaintiff allegedly sat on a chair and it collapsed was insufficient, by itself, to demonstrate that plaintiff had a potentially meritorious cause of action sounding in negligence or strict products liability, so as to warrant setting aside plaintiff's default; determination in the summary judgment order was based solely on discrete issue of whether defendants manufactured the chair, and did not address whether it was defective in some manner. N.Y.C.R.ules, § 202.27(b). | Can a court dismiss an action when a plaintiff is unprepared to proceed to trial at the call of the calendar? | 1026.docx | LEGALEASE 00095997- LEGALEASE-00095598 | Condensed, SA, Sub | 0.07 | | | | 1 | |
| 20031 | Nicurriv. N. Assur Co., 17 1708+1815 F.2d 160 | 229+4504 | If an alien sues a citizen, he must bring the suit in the district and division of which the defendant is an inhabitant, but if a citizen sues an alien, he may bring the suit in any jurisdiction where the alien may be found or where service may be had, and this jurisdiction, to wit, the good reason why both could not have been brought (if both are citizens of the United States). Here the service of summons was made against the alien wherever he may be found or where service may be had, as a result of Indiana, there seems to be no good reason why both could not have been brought, and, if the could, then the case is removed on application of the alien, if there is. If that, the jurisdictional amount is sufficient. | Suit by the alien against an alien may be in any federal district where alien may be found or served | Where can a citizen bring suit against an alien? | 007047.docx | LEGALEASE 0018 8398- LEGALEASE-00183899 | Condensed, SA, Sub | 0.83 | | | | 1 | |
| 20032 | Nicurriv. N. Assur Co., 17 1708+1815 F.2d 160 | 229+4504 | If an alien sues a citizen, he must bring the suit in the district and division of which the defendant is an inhabitant, but if a citizen sues an alien, he may bring the suit in any jurisdiction where the alien may be found or where service may be had, and this jurisdiction, to wit, the good reason why both could not have been brought (if both are citizens of the United States). Here the service of summons was made against the alien wherever he may be found or where service may be had, as a result of Indiana, there seems to be no good reason why both could not have been brought, and, if the could, then the case is removed on application of the alien, if there is. If that, the jurisdictional amount is sufficient. | Suit by the alien against an alien may be in any federal district where alien may be found or served | Where can a citizen bring suit against an alien? | 007047.docx | ROSS-000395569 ROSS-000395570 | Condensed, SA, Sub | 0.83 | | | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 20033 | Gerstner v. Intemal Tech., 2574182(1) LLP, 445 F. Supp. 2d 473 | 257+182(1) | Furthermore, and contrary to Plaintiff's implicit suggestion, Rosenblum is consistent with the Seventh Circuit's current teaching in such a case. The plaintiff in Rosenblum did not seek any directbenefit from the contract with the arbitration clause, as is the case here. Instead, the Rosenblum plaintiff sought a benefit asked for by the acquisition according to its allegations, whether or not he ever agreed to stay on with the company under the terms set forth in the employment agreement. See id., 299 F.3d at 661 (describing the two agreements as "separate, free-standing contracts," and adding that "[e]ach contract delineates rights and duties independent of the other and that pertain to a particular subject matter. One contract may be fully performed while the other is breached."). Thus, while Rosenblum is a useful example of a materially different situation under the Zurich American analysis (where, here, a situation where there merely is a logical connection of factual issues between the plaintiff's claim and the agreement containing the arbitration clause, such that arbitration is not required? This case presents a "close case. But arbitration is not warranted just because, absent a "direct" or "primary" benefit, and where Zurich American and controlling arbitration appellate precedent, calls for arbitration of Plaintiff's claims. | "When contracts are related, can each contract delineate rights and duties independent of the other?" | 007868.docx | LEGALEASE 0018917-LEGALEASE 0018918 | Condensed, SA, Sub 0.67 | | 0 | 1 | | 1 | |
| 20034 | Encompas Ins. v. Hagerty Ins. Agency, 2009 WL 160776 | 257+143 | Arbitration is a matter of contract between the parties. See Brott Gmers, v. Nolan Int'l Ltd., 538 F.3d 629, 632 (6th Cir. 2008). A party cannot be compelled to arbitrate disputes under the Profit-Sharing Agreement when it is not a signatory to that agreement or, whether there is an arbitration clause in the Agency Agreement Addendum expresses an intent to arbitrate disputes arising under the related contracts as well. In adjudicating disputes in a commercial context, the Sixth Circuit teaches that "an arbitration clause in a master or "umbrella" agreement that creates an agency relationship encompasses disputes arising as from a later contract that was entered into as a part of the relationship, even if the later contract itself lacks an arbitration clause." Panagos v. Intensive, Inc. v. Schwarz & Cohn, L.D. 289 F. App'x 482, 489 (6th Cir.2008); accord Nestle Waters No. Am., Inc. v. Bollman, 505 F.3d 498, 503 (6th Cir.2007). In the present case, the parties executed a fully integrated set of agreements at the outset of their relationship. As set forth in the background of fact, the basic contractual document is the Agency Agreement dated January 1, 2003. The Agency Agreement Addendum, which bore the same date, was expressly attached to and made a part of the underlying Agency Agreement. The Agency Agreement Addendum modified many important provisions of the underlying Agency Agreement, including among others several clauses that were completely rewritten was the arbitration clause, contained in paragraph VIF) of the Agency Agreement Addendum. The Charter Agency Addendum, also executed on January 1, 2003, embraced a more loosely integrated set of agreements related to the underlying Agency Agreement and contemplated a special program for the Charter Agent. The original Profit-Sharing Agreement, like the other addenda, referred expressly to the underlying contract documents, the Agency Agreement and was more closely a "As a matter of law there was no error in the trial court finding any arbitration assignment of funds held by the debtor in this case, Global Schit, Network, 119 B.R. at 552. Illinois statutes provide that the issuance of the attachment stops or stays the attachment of such funds was to transfer the title to the assignee, and the check was honored at the legal entirely, this could not be honored. Enix Tech. Network, Inc. v. Saddle Shop, Inc., 76 Ill.App.3d 445, 32 Ill.Dec. 289, 395 N.E.2d 177 (1st Dist.1979); accord Jno. Charles R. Hearn, Inc., 219 Ill.App.3d 980, 162 N.E.2d 846 (1st Dist.1974). | When is a dispute arbitrable pursuant to the arbitration clause in a related contract? | 007878.docx | LEGALEASE 0018933-LEGALEASE 0018934 | Condensed, SA, Sub 0.83 | | 0 | 1 | | 1 | |
| 20035 | In re Chicago, Missouri & 51+26:20 W. Ry. Co., 127 B.R. 839 | 51+26:20 | | Transfer of check occurs, for pre-liminal transfer purposes, on date that debtor's bank honors check, as opposed to date when debtor delivers check to creditor. Bankr.Code, 11 U.S.C.A. § 547(b). | Will the transfer of a check occur when it is honored by the bank? | 010602.docx | LEGALEASE 0018650-LEGALEASE 0018651 | Condensed, SA, Sub 0.74 | | 0 | 1 | | 1 | |
| 20036 | Montani v. Maldini, 80 Cal. 83H+174 App. 364 | 83H+174 | | Nonnegotiable instrument may be made negotiable between indorser and subsequent holders by indorsement in order; though intermediate indorsement is without recourse. | Can a nonnegotiable note become a negotiable note by indorsement? | Bits and Notes - Memo 460-5_57831.docx | ROSS-003280850-ROSS-003280851 | Condensed, SA, Sub 0.84 | | 0 | 1 | | 1 | |
| 20037 | Bridge v. Hubbard, 15 398+48 Mass. 96 | 398+48 | PARKER, C. J., observed that, the Court being divided in opinion in this case, he should deliver that, in which THATCHER and WILDE, Justices, concurred with him. The action is assumpsit upon a promissory note against the maker: and the evidence in the case was, that it was given for a usurious consideration, and is void. The action is brought by a person to whom it was indorsed, as will not appear that he indorsed for value, and who received it, without the knowledge that the latter note was void for usury, for the part of this indorsement was of a bona fide indoree without notice, being a mere substitute for the first note. Where it., being the maker of a note to B, which was void for usury, asked for credit beyond the maturity of the note, and B. agreed to give further credit if he could obtain other security, and A. obtained and furnished, as a new note, made by C. payable to and indorsed by D., which was received by B. and the profit is brought by the which was given up and cancelled; it was held that this new note was void in the hands of a bona fide indoree without notice, being a mere substitute for the first note. | Can a note be void if it is given for usurious consideration? | Bits and Notes - Memo 614-5_57892.docx | ROSS-003905556 | Condensed, SA, Sub 0.07 | | 0 | 1 | | 1 | |

3528

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 20038 | Gledhill v. Payson, 15 U.S. 66 | 8.307+197 | It has been argued, that these circumstances, to which Judge Marshall alludes, must be apparent on the face of the letter. But how can a person so reason for this opinion. It is neither warranted by the words of said Marshall, nor by his circumstances of the case to which he used them. "The mere answer of a merchant to the drawer of a bill, saying he will duly honor it, is no acceptance unless accompanied with certain circumstances..." | If a letter be not shown, its contents, whatever they may be, can give no credit to a bill of exchange. | When does a promise to accept a bill become acceptance? | 01095.docx | USALEXE 0014862-3 USALEXE 0014863 | Condensed, SA, Sub 0.92 | | 0 | | | 1 | 1 |
| 20039 | United States v. Bordallo, 857 F.2d 519 | 63+2(2) | Officially, Guam is an "unincorporated territory," 48 U.S.C. 1421a ("Guam is declared to be an unincorporated territory of the United States"). We have previously held that constitutional restrictions on the states... action in "state court" do not include actions in the courts of Guam unless Congress expressly so provides. See 18 U.S.C. 1443(3). Guam is not a state. In the absence of express congressional intent to include Guam within the prescriptions of this statute, we cannot hold that the statutory provisions apply to Guam. We therefore are compelled to reverse Bordallo's convictions for three counts of bribery under 18 U.S.C. 666, and one count of conspiracy to commit bribery under 18 U.S.C. 371. | Guam is not "state" for purpose of bribery statute, 666, apply to Guam? | Does the federal bribery statute, 666, apply to Guam? | 03202.docx | USALEXE 0014813- USALEXE 0014814 | Condensed, SA, Sub 0.9 | | 0 | 1 | | | |
| 20040 | Empress Casino Joliet Corp. v. Johnston, 763 F.3d 723 | 229+83,15(11) | Under RICO, the plaintiff "can only recover to the extent that [ ] he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Likewise, to state a claim under the Illinois Anti-Bribery statute, 18.1 U.S.C., must allege that a defendant made a bribe payment... the offense that can serve as a predicate for a RICO violation. 18 U.S.C. 1961(1). see also Salinas v. United States, 522 U.S. 52, 47-56, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). | Casino owners' action against Illinois governor and members of horse racing industry, alleging defendants violated Racketeer Influenced and Corrupt Organizations Act (RICO) by conspiring to exchange campaign contributions for enacting law... certain in-state casinos and placing the funds into a trust for the benefit of the horse racing industry, was not barred by rule against a payment in the state suits were materially different than the claims in casino owners' RICO actions. 18 U.S.C. 1961 et seq. | Can bribery of government officials serve as a predicate for a RICO violation? | 03241.docx | USALEXE 0014803- USALEXE 0014804 | Condensed, SA, Sub 0.25 | | 0 | | | 1 | |
| 20041 | Com. v. Baker, 146 Pa. Super. 559 | 63+1(1) | The appellant further contends that as he was released from the charge of bribery it follows that he is innocent of corrupt solicitation, which is but an attempted bribery, and an attempt to bribe, in the contemplation of the law, is bribery... The two crimes, however, bear the legislature of their own. One under section 303, is bribery, and the other under section 304, is corrupt solicitation to bribe, or other thing of nature to influence a public officer in the discharge of his performance or non-performance of his duties. Our court does not recognize the distinction between bribery and corrupt solicitation now exists. Construction Act, section 30 & 51, 3b. The mere fact that the evidence did not support the bribery charge, that is actual proving of money does not relieve the appellant of corrupt solicitation. | The statute provision, in enacting statute relating to bribery and that relating to corrupt solicitation of public officer, had in mind two separate offenses; the one bribery and the other offering or promising money or other thing of value to influence public officer in discharge or non-performance of his duties. 18 P.S. 55 4303; 4304; P.S. Const. art. 3, 16. 30, 31. | Are bribery and corrupt solicitation separate or distinct offenses? | 03284.docx | USALEXE 0014850- USALEXE 0014851 | Condensed, SA, Sub 0.56 | | 0 | | | 1 | |
| 20042 | United States v. O'Brien, 994 F.Supp.2d 167 | 63+6(1) | Not all payments seeking Every, however, qualify as bribes under 666. In Sun-Diamond, the Supreme Court held that payment made merely to "build a reservoir of good will that might ultimately affect one or more of a multitude of unspecified acts, now and in the future," or "buy[ing] favor," are not enough to constitute bribery under the gratuity statute. Sun-Diamond, 526 U.S. at 405, 119 S.Ct. 1402 (addressing scope of federal gratuity statute, " 201(c)(1)(A)). | Indictment charging former officials of Massachusetts Office of Probation with offenses arising out of alleged scheme to defraud involving the process of hiring probation officers, in exchange for political support, adequately alleged state legislators opportunities to fill positions in return for favorable action on appropriations and other legislation, sufficiently alleged payment of a quid pro quo, as required under Massachusetts bribery and gratuity statutes. M.G.L.A. c. 268A, 55 2(b)(i), 3(a). | Under gratuity statute, are payments made merely to build a reservoir of good will enough to sustain a conviction? | 03286.docx | USALEXE 0014834- USALEXE 0014835 | Condensed, SA, Sub 0.04 | | 0 | | | 1 | |
| 20043 | United States v. Welch, 327 F.3d 1081 | 63+2 | In the it the Supreme Court upheld the Travel Act conviction of a defendant who, with his brother-in-law, engaged in a scheme to steal confidential data from a geological exploration company. The three sought to bribe a company employee as the basis for the violation of the Travel Act. The Court held, "Congress intended 'bribery . . . in violation of the laws of the State in which committed' to encompass conduct in violation of state commercial bribery statutes." Perrin, 444 U.S. at 50, 100 S.Ct. 311. Given both the rich and language, we satisfy may label Utah Code Ann. ' 76-6-508, if construed literally does, not accommodate, the kind of bribery described here, nor the district court offered multiple reasons why, a part from ' 76-6-508(1)(a)'s actual language, that proposition did not apply in this case. | Utah bribery statute was not unconstitutionally vague as applied to members of committee bidding to host Winter Olympic Games, in prosecution alleging that defendants' bribery of members of International Olympic Committee (IOC) violated Travel Act; statute gave adequate guidance to law enforcement authorities as to whether defendants' bribery efforts constituted unlawful activity. 18 U.S.C.A. 5 1952. | Does Congress intend Travel Act to encompass conduct in violation of state commercial bribery statutes? | 03491.docx | USALEXE 0014842- USALEXE 0014843 | Condensed, SA, Sub 0.52 | | 0 | | | 1 | |

Appendix D

3529

| ROW# | Judicial Opinion | WNNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20044 | Freeman v. United States, 83 Fed. Cl. 530 | 393+1323 | Here, the court's "paramount obligation to exercise jurisdiction vested in it" was not absolved... the court concluded that the BLM had primary jurisdiction to determine the validity of the mining claims. | Considerations of judicial efficiency precluded granting request of owner of mining claims that continued suspension of the taking and pending determination of validity of the claims by the Department of the Interior (DOI) be conditioned on reimbursement of annual fees paid to DOI to maintain the claims; reimbursement were ordered prior to a validity determination, a later finding by DOI that plaintiff's claims were invalid might necessitate a subsequent motion requesting that owner refund the maintenance fees previously reimbursed to him by the government. | Does the BLM have primary jurisdiction to determine the validity of mining claims? | Mines and Minerals - Memo #69 - C - EB_57986.docx | ROSS-00029283-ROSS-00029284 | Condensed, SA, Sub 0.4 | 0.4 | 0 | | | 1 | |
| 20045 | Skaggs v. Union Pac. R. Co., 2012 Ark. 156 | 260+48 | In a decision dealing with a 1937 deed, however, this court expressly held, without further comment, that the reservation to "the mineral rights in, upon and under" property included... | Under Arkansas law between 1905 and 1957, oil and gas were "minerals," and, thus, a 1934 reservation of mineral rights in landowners' property included any rights to oil and gas. | Is a reservation of minerals sufficient to identify oil and gas? | 02533.docx | LEGALEASE 00148582-LEGALEASE 00148583 | Condensed, SA, Sub 0.04 | 0.77 | 0 | 1 | 1 | 1 | |
| 20046 | Peterson & Fitch v. State, 32 Tex. 477 | 289+1331 | A partnership can not be indicted by their firm name; the indictment should be against the members as individuals. | Where a partnership is guilty of a criminal offense, the partners should be indicted as individuals, and not as a firm. | Where a partnership is guilty of a crime, should an indictment be against the members as individuals and not the firm? | 07211.docx | LEGALEASE 00148909-LEGALEASE 00148910 | Condensed, SA | | 0 | 1 | | 1 | |
| 20047 | Tri-State Hosp. Supply Corp. v. United States, Intl. F.34.57.1 | 393+970 | We note that the government finds some support for its position in a series of other circuit decisions holding that the FTCA does not confer subject matter jurisdiction over the district court for claims seeking expenses incurred by states in fighting forest fires negligently set... | "Money damages," recoverable against United States under Federal Tort Claims Act (FTCA) for abuse of process and malicious prosecution, included attorney fees plaintiff expended defending itself in criminal prosecution, government's underlying torts, so long as law of place where torts allegedly occurred so provided. 28 U.S.C.A. §§ 1346(b)(1), 2680(h). | Do expenses incurred by states in fighting forest fires come under statutes like Tort Claims Act or The Federal Tort Claims Act? | 04760G.docx | LEGALEASE 00148622-LEGALEASE 00148623 | Condensed, SA | | 0 | | | 1 | |
| 20048 | Drum v. Zarkin, 527 F. Supp. 180 | 34+2911 | It is beyond question that a base commander has extremely broad authority to exclude civilians from his area and command, and great deference should be accorded such decisions... | Military bases are invaluable forum in which commercial activity may be limited. | Are military bases public fora? | 00078.docx | LEGALEASE 00149750-LEGALEASE 00149761 | Condensed, SA | 0.88 | 0 | | | 1 | |
| 20049 | Goldman v. Waldrich, 45 Cols. 537 | 34+97 | The purchaser in a blank indorsement warranted that the contracts and refused to allow the defendants to fill them does not, of itself, impose on him the condition that he must not part with the contract... | Assignment of a nonnegotiable contract does not carry a warranty that it will be performed, but assignee merely impliedly warrants it is what it purports to be, and when assignor transfers to assignee the contract by a railroad were assigned, the mere fact it subsequently canceled them and refused to allow the assignee to fill them did not impose any liability on assignor. | When the assignee warrants the contract will be genuine? | 01069B.docx | LEGALEASE 00149617-LEGALEASE 00149618 | Condensed, SA | | 0 | | | 1 | |
| 20050 | Mann v. Merchants' Union R.T. Co., 190 Ill. App. 224 | 83II+426 | In this State, notes indorsed in blank pass by mere delivery. Morris, Hall v. First Nat. Bank, 228 Ill. 221; Palmer v. Marshall, 60 Ill. 289; 292; Wilder v. Dietelf, 24 Ill. 199. | A note indorsed in blank passes by delivery. | Is a note indorsed in blank passes by delivery? | 01069D.docx | LEGALEASE 00149567-LEGALEASE 00149568 | Condensed, SA | 0.76 | 0 | | | 1 | |
| 20051 | Kingsley v. Fisher, 418 Md. | 266+872 | One who borrows money from a lender/creditor or mortgagee is designated as a "borrower/debtor" or "mortgagor." ... Whether the transaction is deemed a security interest or a "security interest" the law of mortgages is applied. | One who borrows money from a lender/creditor or mortgagee is designated as a "borrower/debtor" or "mortgagor." | Who is a borrower? | Creditors' Remedies - Memo 6 - RK_56038.docx | ROSS-00233156-ROSS-00233157 | Condensed, SA | 0.9 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20052 | Thomas v. Price, 631 F.Supp. 114 | 172H+244 | Section 27 of the Texas U.P.A., on its face, contemplates the possibility that the assignee of a partner's interest might be entitled to participate in management decisions, provided that the non-assigning partner(s) agree to such participation. Such a conclusion is not necessarily inconsistent with the general proposition that the assignee of a partnership interest may not interfere in the management of the partnership. See Bromberg, Crane and Bromberg on Partnership " 42 at 240 (West 1968). An examination of the cases in which this general rule has been invoked reveals that courts have been primarily concerned with the need to protect non-assigning partners from unwanted interference in partnership business. See Beckley v. Speaks, 39 Misc.2d 241, 240 N.Y.S.2d 553 (N.Y.Sup.Ct.1963) (in action by non-selling partner, purchaser of partnership interests of two of three partners in liquor store business found to have acquired selling partners' share of profits and surplus but not any right to interfere in partnership business), aff'd, 21 A.D.2d 759, 251 N.Y.S.2d 1015 (1st Dept.), appeal dismissed, 15 N.Y.2d 546, 202 N.E.2d 906, 254 N.Y.S.2d 362 (1964); Valley Springs Holding Corp. v. Carlson, 56 S.D. 163, 227 N.W. 841 (S.D.1929) (mortgagee who acquired partnership interest held not entitled to interfere in management or administration of partnership business). | Under New York law, assignment of partnership interest in bank, as security for nonrecourse note, entitled assignee's successors to participate directly in "the management, administration, affairs or control" of bank, upon occurrence of "Event of Default." Vernon's Ann.Texas Civ.St. art. 6132b, SS 24, 26, 27(1). | Is an assignee of a partnership interest entitled to interfere in the management of the partnership? | 022534.docx | LEGALEASE-00149881-LEGALEASE-00149882 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 20053 | Guinn v. Hoskins Chevrolet, 361 Ill. App. 3d 575 | 302+53(1) | "The theory of unjust enrichment is an equitable remedy based upon a contract implied in law." Nesby v. Country Mutual Insurance Co., 346 Ill.App.3d 564, 566, 281 Ill.Dec. 873, 805 N.E.2d 241 (2004). "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." Nesby, 346 Ill.App.3d at 567, 281 Ill.Dec. 873, 805 N.E.2d 241. In other words, "[w]here there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." Nesby, 346 Ill.App.3d at 567, 281 Ill.Dec. 873, 805 N.E.2d 241. See also People ex rel. Hartigan v. E & E Hauling, Inc., 153 Ill.2d 473, 497, 180 Ill.Dec. 271, 607 N.E.2d 165 (1992). However, a party may plead claims in the alternative, i.e., she may plead a claim for breach of contract as well as unjust enrichment. See Doyle v. Holy Cross Hospital, 186 Ill.2d 104, 120, 237 Ill.Dec. 100, 708 N.E.2d 1140 (1999) (Freeman, C.J., concurring in part, dissenting in part). See also Bureau Service Co. v. King, 308 Ill.App.3d 835, 841, 242 Ill.Dec. 191, 721 N.E.2d 159 (1999) (at the pleading stage, parties may plead alternative legal theories even if they are inconsistent). "Nonetheless, while a plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel." The Sharrow Group v. Zausa Development Corp., No. 04 C 6379, slip op. at """", 2004 WL 2806193 (N.D.Ill. December 6, 2004). | A party may plead claims in the alternative. | Can a party plead claims in the alternative? | 023640.docx | LEGALEASE-00149669-LEGALEASE-00149670 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 20054 | Morton v. Thornton, 259 N.C. 697 | 308+183(1) | So by express language the instrument, insufficient because of the failure to identify the assignee, appoints the three as agents with authority to each to act as agent. The appointment of an agent does not divest the owner of his property rights. The agent is not the real party in interest and cannot maintain an action. Choate Rental Co. v. Justice, 211 N.C. 54, 188 S.E. 609. | An agent is not real party in interest and cannot maintain an action. | Is the agent the party in interest to a contract? | 041383.docx | LEGALEASE-00149839-LEGALEASE-00149840 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 20055 | Morris v. Goss, 147 Me. 89 | 92+2455 | The Supreme Court of the United States well said in Leigh v. Green, 193 U.S. 79, 87, 24 S.Ct. 390, 392, 48 L.Ed. 623: "The right to levy and collect taxes has always been recognized as one of the supreme powers of the state, essential to its maintenance, and for the enforcement of which the legislature may resort to such remedies as it chooses, keeping within those which do not impair the constitutional rights of the citizen." | The Supreme Judicial Court has the power and duty to safeguard and protect within the borders of the State the fundamental principles of government vouchsafed by the State and Federal Constitutions. | Is the right to levy taxes a supreme power of the state? | Taxation - Memo # 840 - C - JL_58468.docx | ROSS-003280506-ROSS-003280507 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 20056 | Champion v. Gordon, 70 Pa. 474 | 83E+675 | No days of grace are allowed on a post-dated check drawn on a bank or banker. The same rule applies to such a check payable at a future day. | The Act of May 16, 1901, P.L. 194, S 85, 56 P.S. S 186, provides that "every negotiable instrument is payable at the time fixed therein without grace. When the day of maturity falls upon Sunday or a holiday the instrument is payable on the next succeeding business day. Instruments falling due on Saturday are to be presented for payment on the next succeeding business day, except that instruments payable on demand may, at the option of the holder, be presented for payment before twelve o'clock noon on Saturday when that entire day is not a holiday. See also Act of June 18, 1895, P.L. 198, 56 P.S. S 184 note, which provides that "all drafts and bills of exchange drawn at sight shall be and become due and payable on presentation, without grace, and shall and may, if dishonored, be protested on and immediately after such presentation. On all notes, drafts, checks, acceptances, bills of exchange, bonds or other evidences of indebtedness made, drawn or accepted by any person or corporation after this act shall take effect, and in which there is no expressed stipulation to the contrary, no grace, according to the custom of merchants, shall be allowed, but the same shall be due and payable as therein expressed without grace. All such notes, drafts, bills of exchange, checks or other paper falling due on Sunday or a legal holiday or day observed as such, or any half holiday, shall be deemed to be due on the next secular business day thereafter: provided, however, that all such notes, bills of exchange, drafts, checks, etc., shall not be protested on any Saturday but must be protested on the next secular or business day." A post-dated check under the prior law also was not entitled to days of grace. | Is days of grace given to postdated check? | 010002.docx | LEGALEASE-00150226-LEGALEASE-00150227 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order (839) | Condensed (15,944) | Substantive Additions (14,973) | Selection & Arrangement (22,876) | Multiple Differences (5,023) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20057 | Randolph v. Green Tree Fin. Corp.-Alabama, 244 F.3d 814 | 172H+1550 | What the Supreme Court said in the present case reinforces our decision. In reversing our earlier decision, the Court emphasized the "liberal federal policy favoring arbitration agreements," which is embodied in the FAA, and noted that it previously "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" Green Tree, 121 S.Ct. at 521 72) (citations and quotations omitted). See also Johnson, 225 F.3d at 379 ("Insofar as Congress's intent to broaden arbitrability is concerned, we find equal consideration to Congress's policy goals in enacting the FAA."). According to the Supreme Court, the last time this case was before us, we made the mistake of giving too little weight to the BJ[FAA's pro-arbitration policy. We decline to make that same mistake again. Giving full weight to the congressional policy embodied in the FAA, we hold that a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA. | Arbitration provision in loan agreement that barred pursuit of classwide relief for TILA violations was not unenforceable for that reason; borrower claims could still be arbitrated even though the ability to seek class action relief for TILA violations. Truth in Lending Act, § 130, 15 U.S.C.A. § 1640. | Can a contractual provision in an agreement to arbitrate TILA claims be enforceable? | Consumer Credit - Memo 86 PK_50005.docx | ROSS-003061338 ROSS-003061339 | Condensed_SA_SoB 0.76 | | 0 | 1 | 1 | 1 | 1 |
| 20058 | McKinny v. Regents of University of California, 44 Cal.App.4th 976 | 141H+990 | Campbell: "The California Constitution establishes the Regents [i.e., the University of California] as a 'public trust ... with full powers of organization and government.' (Cal. Const., art. IX, § 9, subd. (a).) We have observed that 'Article IX, section 9, grants the [Regents] broad powers to organize and govern the university and limits the Legislature's power to regulate either the university or the [Regents]. This contrasts with the comprehensive power of ***910 regulation the Legislature possesses over other state agencies.' (San Francisco Labor Council v. Regents of University of California (1980) 26 Cal.3d 785, 788 [163 Cal.Rptr. 460, 608 P.2d 277].) The grant of constitutional power to the University includes the grant of quasi-judicial powers, a view that is generally accepted in our jurisprudence. (Ishimatsu v. Regents of University of California (1968) 266 Cal.App.2d 854, 864 [72 Cal.Rptr. 756]; see also Adler v. Regents of University of California (1988) 198 Cal.App.3d 1086, 1091 [244 Cal.Rptr. 212].) The Regents may also exercise quasi-legislative powers, subject to legislative regulation. | The grant of constitutional power to the University of California includes the grant of quasi-judicial powers. West's Ann.Cal. Const. Art. 9, § 9(a). | Does a university have quasi-judicial powers? | 037043.docx | LEGALEASE-00150304-LEGALEASE-00150305 | Condensed_SA 0.87 | | 1 | 0 | 1 | 1 | 1 |
| 20059 | Natt Private Work v. Governor of Michigan, 274 Mich. App. 147 | 141H+990 | By the plain language of article 8, §§ 5 and 6, Michigan's public universities are autonomous only within their own spheres of authority. | Although constitutionally vimm, public universities are autonomous only within their own spheres of authority. | Are public universities autonomous and independent? | 037043.docx | LEGALEASE-00150414-LEGALEASE-00150415 | Condensed_SA_SoB 0.06 | | 1 | 0 | 1 | 1 | 1 |
| 20060 | Havi Trading & Dev., LP v. Cherokee Springs Ranches Prop. Owners Ass'n, 432 S.W.3d 383 | 156+26 | The doctrine of estoppel by deed precludes parties to a deed from denying the truth of any material fact asserted in the deed. BP Am. Prod. Co. v. Marshall, 342 S.W.3d 59, 69 (Tex.App.-San Worth 2011, pet. denied); Angell v. Bailey, 225 S.W.3d 834, 841 (Tex.App.-El Paso 2007, no pet.); see Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 583-84 (1941) ("It is held that the recital in a deed or in another binds the parties to the deed conveying the estate, and those who claim under them, and may estop them [the grantors] from claiming that the title or estate in the land did not pass by it. Estoppel by deed binds, and only the parties to the deed, but also their successors in interest, BTO Energy, 357 S.W.3d at 35; Angell, 225 S.W.3d at 841. | Estoppel by deed binds not only the parties to the deed, but also their successors-in-interest. | Does the recital of one deed in another bind the parties and forms a recoverance of title? | 010801.docx | LEGALEASE-00150320-LEGALEASE-00150321 | Condensed_SA 0.87 | | 1 | 0 | 1 | 1 | 1 |
| 20061 | Design Ben. Plans v. Enright, 940 F. Supp. 200 | 25T+461 | The court first considers whether DBP waived the mandatory mediation/arbitration provision of the Agent Agreement. All relevant case law, including that pertaining to the waiver doctrine, is clear to the court. One reason is that the question is used in a misleading fashion. In the Second Circuit, it involves two dimensions: whether that party which with it has only to abandon it in the very same decision in favor of a totality of circumstances test. See id. The court rejected the equity of the rigid pronounced to be present in its ruling that the movant need only show prejudice to obtain waiver. The Court determined that prejudice may be found in various ways, including whether the party engaged in litigation activity inconsistent with the mere later suit whether the party or party's failure to demand arbitration prior to when it did. The Court rejected the right to compel arbitration in this very case. See id. The court applies the totality of circumstances test set forth in Midwest Window, the test has undergone significant changes since 1980, some of which are relevant to it. | Insurance agency's filing of suit against former agent for breach of restrictive covenants against recruiting agents did not result in waiver of right to mediate and arbitrate counterclaim for commissions; filing of counterclaim injected matters to be arbitrated into the litigation, and agency immediately moved to compel mediation and arbitration. | Is commencement of a suit in court followed by an answer to the opposing party a sign the merits considered a waiver of the right to arbitrate by both parties? | Alternative Dispute Resolution - Memo 797 - LEGALEASE_00040... IB.docx | LEGALEASE-00040512-LEGALEASE-00040514 | Condensed_SA_Sub 0.74 | | 1 | 1 | 1 | 1 | 1 |
| 20062 | Brandon v. Hines, 439 A.2d 496 | 25T+279 | At common law, in a voluntary, independent arbitration, either party could revoke the submission at any time before the arbitrators had rendered the award; the submission is, in contemplation of law, a contract which could be broken at the pleasure of one of the parties without liability therefore. Bernhardt, supra 550 U.S. at 204, 76 S.Ct. at 276 (applying Vermont law); Saenger v. Arundel 1 S Ins Corp. 1S.W 2d.120, 1923, N.E. Baar Constitution etc., supra Edition, n.1, § 209, 428 A.2d at 14-311. The authority of the arbitrators thereupon ended, and any award thereafter was null and void. Saenger, supra at 207. The rule was different, however, for court-authorized arbitration: "Neither party has a right to revoke a submission made under a rule of court. It is made a matter of record in the court, and the Court...""'" Maierson v. Kidwell, 25 C. 12 Comb.609, 670 (1824). The United States Court of Appeals for the District of Columbia Circuit recently has adhered to the common law rule: § See generally 6A A. Corbin, Contracts § 1436, at 413 (1962). | Because parties could establish arbitrator's authority, they can engage in various ways, including extension of time period for rendering award by mutual agreement and waiver of time limitation by consent implied from conduct during arbitration. | Is an award made by an arbitrator after the revocation of his authority valid? | 007945.docx | LEGALEASE-00151408-LEGALEASE-00151409 | Condensed_SA_Sub 0.76 | | 0 | 1 | 1 | 1 | 1 |

3532

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 20003 | Guzman v. Chicago Hydraulic Press Brick Co., 166 Ill. 213 | 831=435 | A second indorsement of a note by the payee does not raise the presumption that its payment was a novation, and it can raise a question of guaranty, and not of indorsement. | It is claimed by the appellant that... [judicial opinion text] | Is parol evidence admissible to contradict or vary a contract of indorsement? | 010393.docx | LEGALEASE 00150376 / LEGALEASE 00150377 | Condensed_SA_Sub 0.91 | | 0 | 1 | 1 | 1 | 1 |
| 20004 | Popps v. United States, Meng & Tri Co., 205 N.Y. 181 | 309=D311 | One dealing with the agent of another without ascertaining the scope and reach of the powers delegated to him does so at his peril. | 67 The power of attorney, like any other contract... [judicial opinion text] | Should a party dealing with an agent, abide by the consequences if he transcends them? | 041480.docx | LEGALEASE 00151357 / LEGALEASE 00151358 | Condensed_SA_Sub 0.81 | | | | | 1 | |
| 20005 | Shamah v. Schweiger, 21 F. Supp. 2d 208 | 25T=436 | Arbitrators' denial of security breaker's request for adjournment and to be allowed to participate by telephone, made three months prior to arbitration proceedings, ... [copied headnote] | The Court, as described supra, must grant an order confirming the arbitration award unless the award is vacated, modified, or corrected... [judicial opinion text] | Is due process violated if an arbitration hearing proceeds in the absence of one of the parties when that party has constructive notice and his absence is the result of his decision not to attend? | 008019.docx | LEGALEASE 00151514 / LEGALEASE 00151515 | Condensed_SA_Sub 0.52 | | | | | 1 | |
| 20006 | Shaffer v. Heritage Bank 720 F.2d 1141 | 93=70 | To the extent an order finding borrowers in contempt for violating judgment which required them to pay $150,000 into escrow for bank and permitting bank to hire third party such money... [copied headnote] | First, to the extent the fine was intended to force Shaffers to pay the $150,000 to Heritage, the fine is unauthorized under Rule 70... [judicial opinion text] | Are the equitable remedies provided by the rules of civil procedure appropriate to aid execution of a money judgment? | Creditors' Remedies Memo 21 RC_59583.docx | ROSS-003279804 ROSS-003279805 | Condensed_SA_Sub 0.69 | | | | | 1 | |
| 20007 | Wolfe v. Tyler, 48 Tenn. 113 | 831=561 | An instrument made payable in current bank notes is not a negotiable paper, in the sense of the law merchant. | The plea of non est factum only in this case put in issue the execution of the note... [judicial opinion text] | Is a note payable in bank notes negotiable? | 009699.docx | LEGALEASE 00151793 / LEGALEASE 00151794 | Condensed_SA_Sub 0.89 | | | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20068 | O'Gasapian v. Danielson, 284 Mass. 27 | 38+57 | The findings do not bear out the contention that the defendant's interest in the note was not assigned by him to the intervener. The assignment was in statutory form, G. L. (Ter. Ed.) c. 183, appendix, form (9), was under seal and purported to assign the note as well as the mortgage. See Merritt v. Harris, 102 Mass. 326, 327, 328. The intention to assign the note was clearly manifested. See Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N. E. 827. Such an assignment was effective to transfer to the intervener the defendant's interest in the note even if the note was not endorsed (Westminster National Bank v. Graustein, 270 Mass. 565, 574, 170 N. E. 621) or delivered. Strong v. Jackson, 123 Mass. 60, 62, 25 Am. Rep. 19; Herman v. Connecticut Mutual Life Ins. Co., 218 Mass. 181, 185, 105 N. E. 450, Ann Cas. 1916A, 822; Ingram v. Mandler (C. C. A.) 56 F.(2d) 994, 996; Watson v. Goldstein, 176 Minn. 18, 24, 222 N. W. 509. Since the assignment was under seal it was valid and irrevocable by the assignor even without actual consideration. Williston on Contracts, " 440. And, as between the assignee and the maker of the note, neither consideration nor notice to the maker was essential to an assignment. Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N. E. 827. See G. L. (Ter. Ed.) c. 107, " 72; Brannan's Negotiable Instruments Law (5th Ed.) 472, 473. It follows, therefore, that the defendant had no equitable interest in the note or mortgage. | As between assignee and maker of note, notice to maker was not essential to assignment of note and mortgage. G.L., Ter.Ed., c. 107, S 72. | Is notice essential for an assignment? | Bills and Notes - Memo 934 - RK_59636.docx | ROSS-003297393-ROSS-003297394 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 20069 | Plattsmouth State Bank v. Redding, 128 Neb. 268 | 83E+481 | By "a paper attached thereto" is not meant an assignment which may be written as a separate instrument, but only such a paper as an allonge, which was defined under the old law merchant as a strip of paper tacked, that is, stapled, or firmly pasted, onto the instrument so as to become a part of it. That is to say, that when the back of a promissory note is filled with indorsements, then another sheet of similar size may be attached thereto for the sole purpose of furnishing room for further necessary indorsements. | Assignment of negotiable instrument payable to order may be written on separate instrument. Comp.St.1929, S 62-301. | Can an assignment of a note be written on a separate instrument? | 009928.docx | LEGALEASE-00151819-LEGALEASE-00151820 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 20070 | Huse v. Hamblin, 29 Iowa 501 | 8.30E+12 | Admitting the certificates of deposit to be negotiable under the law of New York, the state where they were issued and made payable, the question arises whether the rule of that state controls the rights and obligations of the holders and indorsees of the paper. The indorsements were made in this state. It is ruled in Thorp, Smith & Hanchett v. Craig, 10 Iowa, 461, that the law of the place of the contract of indorsement must govern the liability of the indorser. In that case it was held that a party who indorsed commercial paper in Iowa, payable in New York, must be notified of its dishonor according to our law, in order to be held liable thereon. This may be considered the settled rule of this state, and by the following authorities of other states: Williams v. Wade, 1 Met. 82; Dow v. Rowel, 12 N. H. 49; Dunn v. Adams, 1 Ala. 527; Yeatman v. Cullen, 2 Blackf. 240; Russell v. Buck, 14 Vt. 147; Allen v. Merchants' Bank, 22 Wend. 215. | The law of the place where the indorsement of paper is made will govern as to the rights and liability of the indorser and indorsee, rather than the law of the place where the instrument indorsed was made. | Which law governs the liability of the indorser? | Bills and Notes- Memo 1042- SB_60150.docx | ROSS-003322392-ROSS-003322393 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 20071 | Andrews v. Chevy Chase Bank, 545 F.3d 570 | 172H+1552 | Rescinding a loan transaction under TILA " "requires unwinding the transaction in its entirety and thus requires returning the borrowers to the position they occupied prior to the loan agreement." " Handy v. Anchor Mortgage Corp., 464 F.3d 760, 765 (7th Cir.2006) (quoting Barrett v. JP Morgan Chase Bank, N.A., 445 F.3d 874, 877 (6th Cir.2006)). TILA rescission is therefore considered a purely personal remedy. See, e.g., McKenna, 475 F.3d at 424"25; James, 621 F.2d at 731; LaLiberte, 53 Cal.Rptr.3d at 750"51. It is intended to operate privately, at least initially, "with the creditor and debtor working out the logistics of a given rescission."McKenna, 475 F.3d at 421; see also Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir.2005). Section 1635 sets forth certain deadlines and duties that apply to the creditor upon receipt of a notice of rescission from the debtor (e.g., return of earnest money, down payment, or other payments, and initiating the termination of the security interest); the statute, in turn, specifies the duties that apply to the debtor (e.g., tendering return of the property or its reasonable value). See " 1635(b). These procedures apply "except when otherwise ordered by a court," id., making it clear that when disagreements over the particulars of a given rescission arise, the court may tailor the remedy to the circumstances. | Truth in Lending Act (TILA) rescission is a purely personal remedy intended to operate privately, at least initially, with the creditor and debtor working out the logistics of a given rescission. Truth in Lending Act, S 125, 15 U.S.C.A. S 1635. | Is rescission a purely personal remedy? | 013880.docx | LEGALEASE-00151560-LEGALEASE-00151561 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 20072 | U.S. Bank, Nat. Ass'n v. Schaeffer, 160 Conn. App. 138 | 83E+728 | At the outset of this matter we believe it useful to summarize our existing jurisprudence on standing in foreclosure matters. The ability to enforce a note in Connecticut is governed by the adopted provisions of the Uniform Commercial Code. Pursuant to General Statutes " 42a"3"301, a "[p]erson entitled to enforce an instrument means the holder of the instrument" (Internal quotation marks omitted.) When a note is endorsed in blank, as in the present case, the note becomes payable to the "bearer" of the note. See General Statutes " 42a"3"205(b); see also RMS Residential Properties, LLC v. Miller, 303 Conn. 224, 231, 32 A.3d 307 (2011), overruled in part on other grounds by J.E. Robert Co. v. Signature Properties, LLC, 309 Conn. 307, 325 n. 18, 71 A.3d 492 (2013). When a person or entity has possession of a note endorsed in blank, it becomes the valid holder of the note. General Statutes " 42a"1"201(b)(21)(A). Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. See RMS Residential Properties, LLC v. Miller, at 231, 32 A.3d 307. | A party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. C.G.S.A. SS 42a-1-201(b)(21)(A), 42a-3-205, 42a-3-301. | When does a person become a valid holder of a note or instrument? | Bills and Notes- Memo 1101- ANM_60027.docx | ROSS-003308497-ROSS-003308498 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 22073 | Montesdeoca Mateo v. MacPherson, 54 Mac. 3d 339 | 365n1749 | The plaintiff may establish his standing by demonstrating that he is the holder of the mortgage note within the contemplation of the Uniform Commercial Code. Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an endorsement to blank or bears a special endorsement payable to the order of the plaintiff (see UCC 3-201, 3-204; Hartford Acc. & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 159, 544 N.Y.S.2d 573, 542 N.E.2d 1090 [1989]). A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession" (UCC 1-201[b][21]). Notably, the holder of an instrument whether or not he is the owner may transfer or negotiate it (see UCC 3-301). Wells Fargo Bank, N.A. v. Ostiguy, 127 A.D.3d 1375, 8 N.Y.S.3d 669 [3d Dept 2015] ). "Bearer" means a person in possession of a negotiable instrument" (UCC 1201[b][5]), and where the note is endorsed in blank, it may be negotiated by delivery alone [see UCC 3-201[1], 3-204 [1] ). "An endorsement in blank specifies no particular endorsee and may convert an endorsement" and "[a]n instrument payable to order and endorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially endorsed [UCC 3-204(2) )" (JPMorgan Chase Bank, Natl. Assn. v. Weinberger, 142 A.D.3d 643, 37 N.Y.S.3d 286 | To establish its standing to foreclose a mortgage by demonstrating that it is the holder of the mortgage note within the contemplation of the Uniform Commercial Code (UCC), a plaintiff, as the holder of a duly endorsed note in blank, is not required to submit proof that the person who endorsed the subject note to the plaintiff on behalf of the original lender was authorized to do so, since a signature on a negotiable instrument is presumed to be genuine or authorized. McKinney's Uniform Commercial Code §3-1-201(b)(21), 3-201(1), 3-204(2), 3-301, 3-307(1)(b). | Who is a bearer of a negotiable instrument? | Bills and Notes Memo 1051-JMM_50034.docx | ROS5-0010864/ROS5-0010861 0010864 | Condensed, Order, SA | 0.61 | 1 | 1 | | 1 | 1 |
| 22074 | Horton v. California Credit Corp., No. Phx. 8355, Supp. 2 d 479 | 172H+1596 | The Court agrees with Plaintiffs that they are entitled to the extended three-year rescission period on this basis. Section 226.23(b)(3) states that the extend of right to rescind "shall . . . expire on the earlier of the date the rescission period expires." 12 C.F.R. 226.16(b)(3); see also 15 U.S.C. 1635(a); In Semar v. Platte Valley Federal Savings & Loan Association, the Ninth Circuit concluded that Regulation Z "means that if the lender fails to fill in the expiration date of the rescission forms in a violation of the TILA." 791 F.2d 699, 704 [9th Cir. 1986] [quoting Williamson v. Lafferty, 698 F.2d 767, 768 [9th Cir. 1983]]). Moreover, "[t]echnical or minor violations of TILA or Regulation[]], as well as major violations, impose liability on the creditor and entitle the borrower to rescind". Accordingly, "[t]o ensure that the protection is protected[" the Ninth Circuit has concluded that TILA and Regulation Z "must be absolutely complied with and strictly enforced | Lender's failure to inform borrowers of specific numeric date when their right to rescind home equity line of credit agreement would expire gave borrowers right under Truth In Lending Act to extend three-year rescission period. Truth in Lending Act, § 125(a), 15 U.S.C.A. § 1635(a); 12 C.F.R. § 226.15(b)(3). | Does failure to fill in the expiration date of the rescission form is a violation of law? | Consumer Credit Memo 21 - R_60038.docx | ROS5-0032819/04-ROS5-003291905 | Condensed, SA, Sub D 71 | 0.71 | | 1 | | 1 | 1 |
| 22075 | Texas Tech Univ. Health Sci. Ctr. v. Buford, 134 S.W.3d 344 | 198H+770 | The State is afforded sovereign immunity both as to suit and as to liability unless the legislature expressly waives it. State v. Lueck, 290 S.W.3d 876, 880 [Tex.2009]. A state agency such as Texas Tech University Health Science Center, also is afforded the sovereign immunity. Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 [Tex.1976]. Sovereign immunity from suit deprives a trial court of subject matter jurisdiction over lawsuits against the State unless the State has consented to the suit. Miranda, 133 S.W.3d at 224. On the other hand, governmental immunity from liability is not jurisdictional, but is an affirmative defense. Id. Although often used interchangeably, sovereign immunity should not be confused with governmental immunity, they represent distinct concepts. Sovereign immunity is a common law doctrine that protects the State and the divisions of state government, including boards, hospitals, and universities. Goodson, 295 S.W.3d at 304. Governmental immunity, in the term applied to political subdivisions, such as cities, counties, and school districts to | Alleged negligence by county hospital and hospital personnel in dispensing of opioid patches to patient for pain management did not constitute use of tangible personal property by physicians at state university's health center who prescribed patches, as basis for waiving sovereign immunity under Tort Claims Act for patient's death from opioid toxicity, where personnel who dispensed patches were not employees of university health center. V.T.C.A., Civil Practice & Remedies Code § 101.021(2). | Does a University has sovereign immunity? | 014689.docx | LEGAELEASE-00152746-LEGAELEASE-00152747 | Condensed, SA, Sub 0.54 | 0.54 | | 1 | | 1 | 1 |
| 22076 | State ex rel. Gaines v. Canada, 342 Mo. 121 | 141E+831 | The right of a state to separate the races for the purpose of education is no longer an open question. Speaking in that question in Gong Lum et al. v. Rice et al., 275 U.S. 78, 85, 86, 48 S.Ct. 91, 93, 72 L.Ed. 172, the Supreme Court of the United States said: "The question here is whether a Chinese citizen of the United States is denied equal protection of the laws when he is classed among the colored races and furnished facilities for education equal to that offered to all, whether white, brown, yellow, or black. Were this a new question it would call for very full argument and consideration, but we think that it is the same question which has been many times decided to be within the constitutional power of the state legislature to settle without intervention of the federal courts under the federal Constitution" citing many cases. | The states can separate the races for the purpose of education. | Education - Memo # 187 - C_65_60034.docx | ROS5-0003212214-ROS5-00303211 | Condensed, SA | 0.93 | 1 | | | 1 | 1 |
| 22077 | Cullum v. McCool, 432 S.W.3d 829 | 30+3284 | In this premises liability case, we must determine whether the Cullums' complaint states a claim that is legally sufficient to survive Walmart's motion to dismiss. Linder Tenn. R. Civ. P. 12.02(6), the purpose of a motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. Trau-Med of Am., Inc. v. Allstate Ins., 71 S.W.3d 691, 696 [Tenn.2002]. "Our motion to dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded, or as a docket-clearing mechanism." Webb v. Nashville Area Habitat for Humanity, 346 S.W.3d 422, 437 [Tenn.2011]. In reviewing these motions, we are required to construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. Id. [internal citation omitted]. Therefore, we review the trial court's legal conclusions regarding the adequacy of the complaint de novo. Id. | A lower court's legal conclusions on a motion to dismiss for failure to state a claim are reviewed de novo and without any presumption of correctness. Rules Civ.Proc., Rule 12.02(6). | "In reviewing a motion to dismiss for failure to state a claim, is the court required to construe the complaint liberally?" | 037535.docx | LEGAELEASE-00152239-LEGAELEASE-00152240 | Condensed, SA, Sub 0.85 | 0.85 | | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20078 | Mitchell v. Lawson Milk Co., 40 Ohio St. 3d 190 | 413v2093 | In continuing a complaint upon a motion to dismiss for failure to state a claim, we must assume that all factual allegations contained in the complaint are true and make all reasonable inferences in favor of the non-moving party (a. Mitchell v. Lawson Milk Co. (1989) 40 Ohio St.3d 190, quoting Perez v. Cleveland (1993) 66 Ohio St.3d 397, in accord State, ex rel. Alford v. Willoughby Civil Serv. Comm. (1979), 58 Ohio St. 2d 221, 225; 12 O.O.3d 229). But before we may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery. O'Brien v. University Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. | Claim of intentional tort against employer will be dismissed, under exclusivity provisions of workers' compensation laws, a as failing to establish that plaintiff committed to relief unless complaint alleges facts showing that employer specifically desired to injure employee, or knew that injury to employee was certain or substantially certain to result from employer's act and despite this knowledge, still proceeded. R.C. 5 4121.80(G)(1); Rules Civ.Proc., Rule 12(B)(6). | Should a court considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted construe the complaint in the light most favorable to the plaintiff and presume all of the factual allegations to be true? | 037989.docx | LEGALEASE-00155084-LEGALEASE-00155085 | SA, Sub | 0.29 | 0 | | 1 | 1 | |
| 20079 | In re Alex Properties, 169 | 308v160.5 | Generally, the actions of an agent are imputed to the principal. | Generally, the actions of an agent are imputed to the principal, an exception is that if the agent has interests adverse to those of his principal. | Are the actions of an agent imputed to the Principal? | 042099.docx | LEGALEASE-00152271-LEGALEASE-00152272 | SA, Sub | 0.6 | 0 | | 1 | | |
| 20080 | Brannock v. Magoon, 141 Mo. App. 316 | 831v481 | And it is further contended that there was a sufficient transfer, in that the conveyance itself by its terms did operate as such. It is held that the title to a note may be transferred by a separate writing. McGee v. Roberteberger, 37 Mo. 169; Evans Mill v. McDaniel, 42 Mo. 473; Chapman, Kerr, 80 Mo. 276; Goddard v. Kerr, 80 Mo. 276. If the transaction is to be transferred as a ordinary contract entered into between two persons affecting the individual rights of property, the deed perhaps is supported by a valuable consideration. But Stephenson, the trustee, was entrusted with the property, and was not bound thereby unless the understood to carry out the trust. It was voluntary as to him. And there being no power of withdrawal as to the property, either good or valuable, it was also a voluntary conveyance so far as he is concerned. Notwithstanding a note may be transferred by separate writing, yet, if there was no valuable consideration therefor, it would be a nullity. | An assignment in trust of negotiable paper or chosen in action need not be registered, under the law relating to the registration of mortgages and trust of personalty. | How can the title to a note be transferred? | 007377.docx | LEGALEASE-00152988-LEGALEASE-00152989 | Condensed, SA, Sub | 0.94 | 0 | | 1 | | 1 |
| 20081 | Drake v. Hall, 68 Tenn. 282 | 308H+1174 | This brings us to the question of the effect of registration of the deed, assuming, as we do, that the description of the note is sufficient to pass the interest of Drake, as assignor to the trustee. Before this question, we consider this question was settled by the case of Allen v. Barr at 2 Head, 188, and Nippert & Stovall v. Burns et al., and that such was the transfer of negotiable paper or chose in action was not required to be registered, and in consequence the statutes of registration have no application. We have followed the rule in the case of Motley, Ed. v. Thompson, 2 Heis., 281, since the Code, saying there was but little difference in the act of 1831 and 1839, the argument shows this difference is that it probably that the precise point now made was not then suggested, based on principal, as of being as of the act applicable, we think the subject. The registration law would apply to such transfers, includes liens, money, goods, chattels, things in action, and evidences of debt, etc., covers the officially presented and in connection with the legal power of registration laws, still we think sections 2003 and 2004 of the Code are conclusive of this aspect of the case. The first section found in a chapter entitled "of Personal Property," provides "all mortgages and trusts of personalty shall be in writing, and proved and registered as hereinafter provided, to be valid and binding on creditors and subsequent creditors and purchasers." The question of the foregoing section do not apply to chose in action or purchase under the for value, and without notice. The next section, "the provisions of the foregoing section shall not be constructed to require the chose in action, but as a matter of deed, and without notice of those." This next section of this paper may be registered, and consequently this general provision of this section, as we understand its effect, requires that these need not be registered, and are thus excepted out of the general provision on the subject, and though being within the letter of the law, they are not within the spirit of the first section, for it is quite plain they are not excepted out of the letter of the that thus acquired, that is the mortgagee or deed of trust. | An assignment in trust of negotiable paper or chosen in action need not be registered, under the law relating to the registration of mortgages and trust of personalty. | Is transfer of a chose in action required to be registered? | Bills and Notes - Memo 840 - RK_60293.docx | ROSS-003293180-ROSS-003293181 | Condensed, SA, Sub 0.91 | | 0 | | 1 | | 1 |
| 20082 | Vitale v. Giamo, 103 A.D.3d 835 | 241v66(2) | Since the plaintiff failed to establish a trial a specified time of payment for the June 2001 and August 2001 advances, they were payable on demand (see Sterling Ave. Mobile, Inc. v. Golden Way Mobile Homes, Inc., A.D.3d 950, 951, 864 N.Y.S.2d 500; Cognetta v. Valencia Devs., Inc., 8 A.D.3d 319, 319, 778 N.Y.S.2d 80). Thus, pursuant to CPLR 213(2), the six-year statute of limitations for these causes of action began to run on the date the obligations were created (see Seattle Pac. Indus., Inc. v. Golden Valley Realty Assoc., 54 A.D.3d at 1137, 864 N.Y.S.2d 500; Cognetta v. Valencia Devs., Inc., 8 A.D.3d at 319, 778 N.Y.S.2d 80). | Parent / loans to son were repayable on demand absent specified time of repayment, and thus claims for repayment of loans accrued, and six-year statute of limitations period began to run, on date loans were made. McKinney's CPLR 213(2). | Does the loan become payable on demand when parties have not specified any time for repayment of loan? | 007762.docx | LEGALEASE-00153307-LEGALEASE-00153308 | Condensed, SA 0.05 | | 0 | 1 | | | |
| 20083 | Cohn v. Hill, 130 Tenn. 466 | 831v461 | This refers to irregular or accommodation indorsers as regular indorsers. Without proof of an agreement prior indorsers for defendant who first indorsed a subsequent indorser who has paid the note. The law fixes their prima facie liability in accordance with the actual order created. | Both at common law and under Negotiable Instruments Law, 55 64, 68, defendant who first indorsed a note for the accommodation of the maker, held liable at the suit of the subsequent accommodation indorser. | Can a prior agreement release prior indorsers for accommodation against a subsequent indorser? | Bills and Notes - Memo 884 - RK_60683.docx | ROSS-000278483-ROSS-000278484 | Condensed, SA, Sub 0.35 | | 0 | 1 | | | |
| 20084 | Chuisano v. Gilbert, 24 Ill. 291 | 8.301v10 | The note read in evidence in this case, specified no rate of interest, and in absence of any specified rate, the lot drawn at the common law rate of interest allowed on such contracts in the case of McKinley is no place of execution is specified, our statute has authorized the recovery of any interest, and the party is bound to recover more than 6 per cent, and by the general statute the notes shall bear a interest, or in his declaration, that the laws of New York authorized a recovery of a greater rate of interest, and should have stated the sum averments by proof. In this case there was no such averment, and there was, consequently, error in permitting proof of that fact. | A party will only be allowed to recover interest according to the law of the forum, in the absence of an express agreement, unless the alleged and proved that the law of the place of execution of the note itself fixes a higher rate. | When no rate of interest is specified in the contract, what is the standard of execution determines its rate? | 009871.docx | LEGALEASE-00153588-LEGALEASE-00153589 | Condensed, SA, Sub 0.64 | | 0 | 1 | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 20005 | American Cas Co. v. White, 737 SE 553 | 83 E+335 | A situation could develop, by mistake or otherwise, wherein the partnership exercises its option before the holder declares a default. In such case, the maker might well decline to cure an overdue payment or to make future payments because of the forfeiture. This exemplifies the reason why negotiable instruments may contain no other promise, order, obligation, or power except as authorized by the statute. | For future clause in notes executed by limited partner at time he acquired interest in limited partnership, providing that if partner did not timely make all payments owing under notes, then he would retroactively lose all interest in limited partnership, qualified as impermissible "other promise, order, obligation or power," which prevented promissory notes from qualifying as "negotiable instruments" under Georgia law. O.C.G.A. § 11-3-104(a). | Can a negotiable instrument contain any other obligation except as authorized by the statute? | Bits and Notes: Memo 911 - 96_60700.docx | ROS/USOS037458-ROS/USOS037459 -003307459 | Condensed, SA, Sub 0.1 | 0.1 | | 1 | 1 | 1 | |
| 20006 | American Cas Co. v. White, 737 SE 553 | 83 E+335 | A situation could develop, by mistake or otherwise, wherein the partnership exercises its option before the holder declares a default. In such case, the maker might well decline to cure an overdue payment or to make future payments because of the forfeiture. This exemplifies the reason why negotiable instruments may contain no other promise, order, obligation, or power except as authorized by the statute. | For future clause in notes executed by limited partner at time he acquired interest in limited partnership, providing that if partner did not timely make all payments owing under notes, then he would retroactively lose all interest in limited partnership, qualified as impermissible "other promise, order, obligation or power," which prevented promissory notes from qualifying as "negotiable instruments" under Georgia law. O.C.G.A. § 11-3-104(a). | Can a negotiable instrument contain an order not authorized by the statute? | Bits and Notes: Memo 912 - 96_60700.docx | ROS/USOS032317 | Condensed, SA, Sub 0.1 | 0.1 | | 1 | | 1 | |
| 20007 | American Cas Co. v. White, 737 SE 553 | 83 E+335 | A situation could develop, by mistake or otherwise, wherein the partnership exercises its option before the holder declares a default. In such case, the maker might well decline to cure an overdue payment or to make future payments because of the forfeiture. This exemplifies the reason why negotiable instruments may contain no other promise, order, obligation, or power except as authorized by the statute. | For future clause in notes executed by limited partner at time he acquired interest in limited partnership, providing that if partner did not timely make all payments owing under notes, then he would retroactively lose all interest in limited partnership, qualified as impermissible "other promise, order, obligation or power," which prevented promissory notes from qualifying as "negotiable instruments" under Georgia law. O.C.G.A. § 11-3-104(a). | Can a negotiable instrument contain an order not authorized by the statute? | 00987.docx | USAAEUK 0015527-USAAEUK 0015528 | Condensed, SA, Sub 0.1 | 0.1 | | 1 | | 1 | |
| 20008 | First Nat. Bank v. Payne, 111 Md. 291 | 83 E+416 | He was both the drawer and payee of the note. Now, while in a long line of decisions in this state, following Bowie v. Thomas, 2 Har. 460, it has been consistently and persistently held that where a person endorses a negotiable promissory note in blank, not being a party or indorsee thereof, he is to be treated prima facie as the maker of the note, yet it will be found on examination that in every one of these cases the power of the note was made by a third person. We have not found a case in our reports where it has even been applied to an indorsement of a note made payable to the order of the maker. Such a note was not negotiable and void contract at common law, but by the custom of merchants, after it had been negotiated, that is, after the drawer, as payee, had indorsed his own to its order, and delivered it to a third party, it was treated as a valid negotiable promissory note, payable to bearer, and has been so held in England since the decision of Smith v. Cannan, 2 E. & B. 35. | The doctrine that, when a person not a party to a note puts his name upon it before delivery, he thereby makes himself an original promissor, does not apply to a note payable to the maker, and indorsed before indorsement or negotiation by the maker. | Can a party who writes his name on the back of note of which he is not a payee or an indorsee be considered as the maker of the note? | 00916.docx | USAAEUK 0015676-USAAEUK 0015677 | Condensed, SA, Sub 0.75 | 0.75 | | 1 | | 1 | |
| 20089 | Schmidt v. Citibank, N. Dakota, N.A. (CDEG), 645 F. Supp. 214 | 34 t+3401 3) | To promote its objectives, Congress authorized private civil actions in which individual consumers function as private attorneys general who are awarded attorney fees and statutorily prescribed minimum damages if a creditor has violated truth-in-lending requirements. Such actions must be commenced "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). | Suit statement went to credit card customer by creditor which benefits contain information required by Truth in Lending Act constituted continuing violation of disclosure requirements for purpose of determining whether suit was timely filed. Consumer Credit Protection Act, §§ 102 et seq., 130(a), 130(e), 15 U.S.C.A. §§ 1601 et seq., 1601(a), | "If a creditor violates truth-in-lending requirements, can individual consumers function as private attorneys general?" | 03 8980.docx | USAAEUK 0015947-USAAEUK 0015948 | Condensed, SA, Sub 0.08 | 0.08 | | 1 | | 1 | |
| 20090 | Lucero v. Curators of Univ. of Missouri, 400 S.W.3d 1 | 141 E+1209 | With this purpose in mind, any intervention by the court would amount to substituted judgment on university's internal procedures for monitoring its faculty. Generally, courts have refrained from recognizing educational malpractice claims, either in tort or contract, on the premise that "[u]niversities must be allowed to flexibly to manage themselves and correct their own mistakes. Miller, 829 So.2d at 1061. In refusing to recognize a claim for educational malpractice, this court emphasized that "it is not our place to micromanage a university's daily operations. See Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc., 277 S.W.3d 696, 700 (Mo.App. W.D.2009) [explaining that "Court's have declined to become the overseers of both the day-to-day operation of the educational process as well as the formulation of its governing policies"] (internal quotations omitted). | Law student's claim that state university failed to sufficiently comply with its established procedures for monitoring its faculty raised questions concerning the reasonableness of the university's conduct in providing educational services, and thus, constituted a recognizable claim for educational malpractice, rather than a claim for breach of contract; student was effectively requesting the courts to supervise university's internal procedures for monitoring the professional responsibility of its faculty. | Do courts recognize educational malpractice claims? | 01011.docx | USAAEUK 0015864-USAAEUK 0015865 | Condensed, SA, Sub 0.42 | 0.42 | | 1 | | 1 | |
| 20091 | Barrett v. Conley, 35 Misc. 3d 2647 | 359 t+134 | In Union Dime Savings, etc. v. Wilmot, 94 N.Y. 221, the Court suggests that a subsequent bondholder may raise the defense of usury, but even then the Court cites the owner of the property in a mortgage from setting up the defense of usury, or he may in some legal way waive the defense, *** whenever or however it may be raised he was in the defense, takes his position, and can have no right to adjudge the usury than he had." | Borrower may waive defense of usury, or can be estopped from asserting it. General Business Law, §§ 371 et seq., 373. | Can an owner or borrower be estopped from setting up the defense of usury? | 01802.docx | USAAEUK 0015301-USAAEUK 0015302 | Condensed, SA, Sub 0.74 | 0.74 | | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20092 | United States v. Lilly, 810 F.3d 1205 | 308+99 | "Actual authority incorporates the concepts of express and implied authority." Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1278 (10th Cir.2000) (quoting Zions First Nat'l Bank v. Clark Clinic Corp., 762 P.2d 1090, 1094"95 (Utah 1988)); see Flemmi, 225 F.3d at 85 ("Actual authority may be conferred either expressly or by necessary implication."); H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed.Cir.1989) ("[I]mplied actual authority, like expressed actual authority, will suffice."). Express actual authority to bind the federal government exists "if"and only if"the Constitution, a federal statute, or a duly promulgated regulation grants such authority in clear and unequivocal terms." Flemmi, 225 F.3d at 85; see also Merrill, 332 U.S. at 385"86, 68 S.Ct. 1 (looking at a regulation to determine the limits of the Federal Crop Insurance Corporation's authority to insure the respondent's crops). On the other hand, actual authority may be implied "when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." H. Landau & Co., 886 F.2d at 324 (alteration in original) (quoting J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982)). That is, the authority must be "incidental to some other express grant of authority." Thomas, 35 F.3d at 1338; see also Flemmi, 225 F.3d at 85 ("[I]n the case of a federal agent, authority to do an act may be implied when that act is integral to the tasks assigned to him or otherwise necessary for the due accomplishment of those tasks."). Because implied actual authority emanates from an agent's core competency, "the agent must first possess express actual authority in the subject area at question" before implied authority may be invoked. Abrams v. Trunzo, 129 F.3d 1174, 1179 (11th Cir.1997). | Actual authority incorporates concepts of express and implied authority. | Can actual authority be implied? | Principal and Agent - Memo 233 - KC_60526.docx | ROSS-003279905-ROSS-003279906 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 20093 | In re Felt Mfg. Co., 371 B.R. 589 | 308+92(1) | In its complaint the Committee alleges numerous acts and omissions by the Count I Defendants that viewed in the light most favorable to the Committee would establish a breach of the fiduciary duties of officers and directors. FMC's culpability for the actions of its officers and directors, for purposes of the in pari delicto doctrine, is governed by applicable state law. Nisselson, 469 F.3d at 154; Adelphia Communications Corp. v. Bank of Am., N.A. (In re Adelphia Communications Corp.), 365 B.R. 24, 46 (Bankr.S.D.N.Y.2007). FMC was a New Hampshire corporation with its principal offices in New Hampshire during the time period that the Count I Defendants allegedly committed the relevant acts and omissions; therefore, New Hampshire law governs. New Hampshire has recognized the in pari delicto doctrine. Witte v. Desmarais, 136 N.H. 178, 187, 614 A.2d 116 (1992); Belisle v. Belisle, 88 N.H. 459, 461, 191 A. 273 (1937). A principal is chargeable with the acts of its agent while acting in its behalf. Saidel v. The Union Assurance Society, Ltd., 84 N.H. 232, 149 A. 78 (1930); Warren v. Dodge 83 N.H. 47, 53"54, 138 A. 297 (1927). However, representations by an agent not made contemporaneously with the transaction will not bind the principal. Cate v. Blodgett, 70 N.H. 316, 317, 48 A. 281 (1900). If the wrongful conduct of the Count I Defendants is imputed to FMC, then the parties would be in pari delicto under New Hampshire law. Belisle, 88 N.H. at 461, 191 A. 273. | Although, under New Hampshire law, a principal is chargeable with the acts of its agent while acting in its behalf, representations by an agent not made contemporaneously with the transaction will not to bind the principal. | Can a principal be charged with the acts of its agent while acting in its behalf? | Principal and Agent - Memo 295 - KC_60588.docx | ROSS-003282017-ROSS-003282018 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 20094 | Saidel v. Union Assur. Soc., 84 N.H. 232 | 308+158 | 2345 The policy by its terms was to be void "if the insured shall make any attempt to defraud the company, either before or after the loss." The fraudulent act may be a dishonest statement about the loss, and the success of the attempt is immaterial. Follett v. Co., 77 N. H. 457, 92 A. 956. And a principal is chargeable with the fraud of his agent while acting in his behalf. Concord Bank v. Gregg, 14 N. H. 331; Norton v. Bank, 61 N. H. 589, 592, 60 Am. Rep. 334. Accordingly, if either the plaintiff or Mitchelson, his agent and the chief beneficiary of the insurance at the time, intentionally overvalued the property burned and the plaintiff sought to have the defendant pay the full insurance on it, the defendant was released from liability. And if a false statement is made recklessly with a conscious indifference as to its truth and without caring whether it is true or false, its fraudulent character is made out. Graham v. Weber, 79 N. H. 393, 395, 109 A. 717; Shackett v. Bickford, 74 N. H. 57, 65 A. 252, 7 L. R. A. (N. S.) 646, 124 Am. St. Rep. 933. | Insured is chargeable with fraud of agent while acting in his behalf under provisions voiding fire policy for fraud before or after loss. | Can a principal be charged with the fraud of its agent while acting in its behalf? | Principal and Agent - Memo 296 - KC_60589.docx | ROSS-003282119-ROSS-003282120 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 20095 | Jensen v. Henneford, 185 Wash. 209 | 371+2001 | It is true that the Legislature has so labeled the 1935 act. But the legislative body cannot change the real nature and purpose of an act by giving it a different title or by declaring its nature and purpose to be otherwise, any more than a man can transform his character by changing his attire or assuming a different name. The Legislature may declare its intended purpose in an act, but it is for the courts to declare the nature and effect of the act. The character of a tax is determined by its incidents, not by its name. Aberdeen Savings & Loan Ass'n v. Chase, 157 Wash. 351, 289 P. 536, 290 P. 697, 71 A.L.R. 232; Culliton v. Chase, 174 Wash. 363, 25 P. (2d) 81; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638; Macallen Co. v. Massachusetts, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874, 65 A.L.R. 866; Educational Films Corporation v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400, 71 A.L.R. 1226; Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054. | Character of tax is determined by its incidents and not by its name. | Can the character of a tax be determined by its name? | Taxation - Memo # 894 - C - JL_60601.docx | ROSS-003297825-ROSS-003297826 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| | | | | | | | | | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | | | | | | |
| 22096 | Bettie v. Bugbee, 103 N.J.L. 658 | 171-cl301 | There is no distinction between such cases as the last mentioned and the case sub judice except that in the other the diseased agreed to pay the contract price by a provision in his will, and failed to do so by will or in any other way. Admittedly, such a case is not within the language of the statute. As we understand the opinion of the Supreme Court, it was held within the legislative intent even, apparently on the equitable theory of regarding that as done which ought to have been done. That reason is applicable in favor of a party to the original transaction who would be benefited by the application (Dixdell v. Monroe, 87 N.J. Eq. 338, 100 A. 238), but it is a novel application of it to invoke its operation in favor of a state tax. Moreover, the reason is inapplicable because there is no legal imposition exclusively of statutory origin (17 Cyc. 734, 735), and, further, because liability in taxation must be expressly imposed, and cannot be created by interpretation (State v. Rolf, 16 Atl. 126, and 38 N.J. Eq., p. 397) did not include the word "bonae." In this title, and was held ineffective, on constitutional grounds, as a tax on incomes. | "Tax" is legal imposition, exclusively of statutory origin. | Is law of statutory origin? | Taxation - Memo # 896 C - Li_CK00I.docx | ROSS-003029394-ROSS-003029395 | Condensed, SA | 0.95 | | 1 | | 1 | |
| 22097 | Corey Island II v. Pattullo Assoc 305, Dist., 72 PA Cmwlth 461 | 171-cl301 | Additionally, we believe that the language contained in subsection (a) of the third section of the resolution and the ordinance are instructive. These subsections are captioned "RATE AND BASIS OF TAX", and both provide that the tax imposed shall be "On each and every dollar of the whole or gross volume of business transacted." The phrase of tax, of course, cannot be the source of a tax to be determined by its substance and not by its label, since the legislature clearly (417 Pa. 315, 389 A.2d 264 (1963)), it is clear that the mere fact that the tax is labeled a "business privilege tax" does not necessarily make it one. Out of all of the foregoing, this source, and keeping in mind that ad valorem taxation must be strictly construed in favor of the taxpayer, Commonwealth v. McKee lands County, Inc. 105 A.2d 262 (1954), we are satisfied that the trial court correctly determined that these taxes fall within the purview of Section 8, and that they are invalid and illegal to the extent that they exceed the limitations and levy the provisions of Section 8. | Nature of tax is to be determined by its substance and not by its label | Can the nature of tax be determined by its label? | Taxation - Memo # 904 C - Li_CK609.docx | ROSS-003279152-ROSS-003279153 | Condensed, SA | 0.93 | | | | 1 | |
| 22098 | Weeks v. City of Oakland, 21 Cal. 3d 386 | 171-cl301 | In the ordinance itself, the levy at issue is described as a "license fee", and the city refers to it as an "occupation license" tax. We have noticed, of course, that the legislative designation of a particular tax, though persuasive, is not conclusive as to its nature. (Ex parte Braun, supra, 141 Cal. 204, 206, 74 P. 780.) In re Groves (1930) 47 Cal.App. 460, 466, 190 P. 852; see Stevens v. Franchise Tax Board (1977) 19 Cal.2d 862, 471, 138 Cal. Rptr. 569, 567 (2d 239.) The character of a tax is determined from its incidents, not its label. (Ainsworth v. Bryant (1949) 34 Cal.2d 465, 473, 211 P.2d 564; Ingels v. Riley (1936) 5 Cal.2d 154, 159, 53 P.2d | The character of a tax is ascertained from its incidents, not its label; the determination as to its nature is one of substance. (Per Curiam, with three Justices concurring, and two Justices concurring specially.) | Is the character of a tax ascertained from its incidents? | 04600B.docx | USGAEASE-00151459-USGAEASE-00151460 | Order, SA | 0.62 | 0 | | | 1 | |
| 22099 | Moyer v. West, 37 La. Ann. 8,301-c56 | | We have found it discover any such undertaking or provision in the contract, and it is a compensation of prefixed, and, therefore, we conclude that the obligation sued on is an unconditional one, therefore a note. | The words, "This is to certify that I am to pay," amount to a promise, and the unconditional obligation containing them is a promissory note. | Is a promissory note an unconditional promise to pay? | 009002.docx | USGAEASE-00154721-USGAEASE-00154722 | Condensed, SA | 0.36 | | 1 | | 1 | |
| 22100 | Mfd. & Fabon Nat. Bank v. Ellenstein's Estate, 172 Mo. App.804 | 83II-d16 | It is said in Daniel on Negotiable Instruments (5th Ed.) 5 684: If several persons, not partners, are makers or endorsers of a bill or note, the liability of each of them, where no only words are contained on the order of either others, or to the order of certain ones of them, in which case the liability varies according to the order either of the others, or to the order of certain ones of them, in which case the instruments the joint and several persons may authorize the other to indorse for him, and an assignment of his interest in the paper from one co-partner to another carries with it all the rights of the same (17 Cyc. 630 — and authorities there cited). See also, Allen v. Bank, 87 App. Div. 335, 84 N.Y. Supp. 1000; Rohmer v. Tackett, 92 U.S. 840, 24 L.Ed. 509, 13 F. Sup. 1, Charlotte (27 Cal.1630), Wood, 26 N.J. Law, 428; Foster v. Hill, 36 N. H. 526. This rule is embodied in the Negotiable Instruments Law 1001 Rev. Stat. 1909, which provides that, "where such an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others. | Where an accommodation-joint maker of a note payable to the maker's order sent it to another maker with implied instructions to indorse and sell, and the payee of another note with actual knowledge of his death, his estate was estopped to invoke the rule that death revokes authority granted, whether express or implied. | Can one joint payee indorse on behalf of the other? | Bills and Notes - Memo 1015 - HK.docx | USGAEASE-00045642-USGAEASE-00045643 | Condensed, SA, Sub D 73 | 0.36 | | 1 | | 1 | |
| 22101 | Biller v. Boswell, 9 Wyo. 57 | 24II-c621 | In the case of Illinois, as stated in McGuigan v. Rolfe, supra, the construction of the statute as to just where the time limit can be confined to cases where not only both parties resided out of the state when the action accrued, but both parties continued to reside out of the state, and "accrued" and can nowhere be plainer by the force of the living statute where he domiciled and "It will be noticed that this statute reads that the the action shall be limited, provided that a cause of action is barred by the Colorado statute, cannot maintain an action on a note executed to an action upon the note is suit, in this state, unless the marriage of the payee and endorser is suspended of the state of Colorado, discharged or enforced by any of them who have possession of it (b) it not in the alternative is payable to all of them and may be negotiated. | Though Miller, Rev.St.Colo. § 2916, provides that, where the person to whom a cause of action has accrued is a married woman, the time of limitations does not run until the disability of coverture is removed, the subsequent marriage of a woman who was single when her right to sue accrued did not prevent the running of the statute; and hence, under Rev.St. § 1846, providing that a cause of action barred in the state where it arose is barred, when a note executed by the Colorado statute, cannot maintain an action on a note executed to decedent, when the cause arose in Colorado while decedent was single, though she married before the action was barred. | Where a note is executed in one state, but made payable in where a cause of action on it arises in another state, and then another, will that governed by the law of the state where the note is made payable? | 009564.docx | USGAEASE-00154117-USGAEASE-00154118 | Condensed, SA, Sub D,19 | 0.19 | | 1 | | 1 | |
| 22102 | Midwest Indus. Funding Div. Of Rivers Lend Lease Bar Rate of Lockport, 97II-d d534 | 172H-c591 | Before the district court, both parties moved for summary judgment. Midwest relied upon the then current version of chapter 26, § 3-116 of the Illinois Revised Statutes (chap." 3-116 of the Uniform Commercial Code; Ill. Rev. Stat. ch. 26, 3-116 (1983). That paragraph stated: An instrument payable to the order of two or more persons(a) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it; (b) if not in the alternative is payable to all of them and may be negotiated. | Checks on which two separate names followed the language "pay to the order of" every jointly payable and could be negotiated only by the two parties whose names appeared on the checks, there was no indication that the checks were payable in the alternative. (U.S.C.A. ch. 26, P 3-116). | Is an instrument that is payable to the order of two or more persons if not in the alternative payable to all of them? | 009791.docx | USGAEASE-00154729-USGAEASE-00154730 | Condensed, SA, Sub D,53 | 0.53 | | 1 | | 1 | |

3539

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20103 | Davis v. Solomon, 101 Conn. 465 | 157+317(4) | It is the law that, in the absence of an agreement to the contrary as between themselves, successive accommodation parties are liable in the order in which their names appear, even though later signers knew that prior parties signed for accommodation. G. S. " 4426 (N. I. L. " 68); Noble v. Beeman-Spaulding Co., 65 Or. 93, 131 P. 1006, 46 L. R. A. (N. S.) 162; Brannan's The Negotiable Instrument Law, p. 117; Crawford's Negotiable Instruments, p. 72. The common law of this state was the same. Kirschner v. Conklin, 40 Conn. 77. | In action by accommodation indorsers against prior accommodation indorser, who was also payee, to fix liability under Gen.St.1918, S 4426 (Rev.1949, S 6360), in which payee alleged that there was an agreement between all indorsers to be jointly liable, evidence of payee as to statement by maker relative to agreement by plaintiffs as to liability of indorsers, without further proof, held hearsay as to existence of such agreement, where statements were made in absence of plaintiffs. | Will successive accomodation parties be made liable in the order in which their names appear in the absence of agreement to the contrary? | 009978.docx | LEGALEASE-00154681-LEGALEASE-00154682 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 20104 | Brown v. N. Country Cmty. Coll., 63 Misc. 2d 442 | 141E+990 | As an independent entity, the question as to the necessity for compliance with County Law Section 52, and General Municipal Law Sections 50"e and 50"i must be considered. It is significant that if the North Country Community College were located in the City of New York, compliance with General Municipal Law Section 50"e would be unquestionable (Education Law Section 6308). Certainly if the Legislature had intended to require injured parties to comply with General Municipal Law Sections 50"e and 50"i and other similar notice statutes, it could have readily required such when it added this provision in 1957. The North Country Community College is not a "public corporation" as required by General Municipal Law Section 50"e(1), (General Corporation Law Section 3(1)). A "community college" is not within the enumerated governmental units set forth in General Municipal Law Section 50"i. | Community college created by its sponsors pursuant to Education Law subject to approval of State University Trustees was an independent entity, and Supreme Court had jurisdiction over community college despite fact that no notice of claim of plaintiff was served on either sponsoring counties or on Board of Trustees. County Law S 52, subds. 1, 2; General Municipal Law SS 50-e, subd. 1, 50-i; Education Law SS 350 et seq., 351, subd. 2, 6302, subd. 1, par. a, 6306, subds. 1, 2, 6308; General Corporation Law S 3, subd. 1; Civil Service Law S 200 et seq. | Is a community college a public corporation? | 016778.docx | LEGALEASE-00154123-LEGALEASE-00154124 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 20105 | Kimball v. Schoff, 40 N.H. 190 | 156+33 | To this result there is one exception. Mrs. Kimball, the wife of G. Kimball, was one of the heirs of Henry Schoff, and she and her husband joined in a conveyance to the defendant of all her right and interest, as one of the heirs of her father, Henry Schoff, in his estate, with covenants of warranty. G. Kimball is consequently estopped by his own covenants of warranty to claim the share of his wife; and the plaintiff, his grantee, is equally bound. Here, then, we have an estoppel on each side--an estoppel against an estoppel-- and that, as the authorities say, sets the matter at large; in other words, the parties are in the same situation as if there were no warranties. Bro. Abr. 303, b. 183; Com. Dig., Estoppel, E. 9; Co. Litt. 352, b. (l.); Carpenter v. Thompson, 3 N. H. 204. The defendant, therefore, may hold the share of Mrs. Kimball in the island, if she has any, as heir of her father, but the plaintiff will be entitled to recover the residue. | S. conveyed with warranty to K. land claimed by S.'s father, and after the father's death purchased the land of the heirs, one of whom was the wife of K., and released, with her husband, all her right. Held, that K. could not claim against his own deed the share of his wife, though all the residue inured to him by estoppel, since it is a case of estoppel against estoppel, which sets the matter at large. | Does an estoppel against an estoppel set the matter at large? | Estoppel - Memo #68 - C - CSS_60867.docx | ROSS-003282780 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 20106 | Leaveau v. Primeaux, 117 So. 2d 304 | 156+22(2) | In Lewis v. King, 157 La. 718, 103 So. 19, 22, the Supreme Court of our state said:"Estoppel by warranty is an estoppel based on the principle of giving effect to the manifest intention of the grantor appearing on the deed, as to the lands or estate to be conveyed, and of preventing the grantor from derogating from or destroying his own grant by any subsequent act.' 21 C.J. p. 1061; Condit v. Bigalow, 64 N.J.Eq. 504, 513, 54 A. 160. | Where a party in an authentic act executed by him solemnly admits a fact, he is forever estopped from disputing not only the deed itself but every fact which the deed recites; such estoppel by deed applies with greater force when the warranty made by a grantor is involved. | Is estoppel by warranty based on the fundamental principle of giving effect to the manifest intention of the grantor appearing on the deed? | 018066.docx | LEGALEASE-00154211-LEGALEASE-00154212 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 20107 | Sealy v. Perdido Key Oyster Bar & Marina, 88 So. 3d 366 | 302+350(6) | The purpose of a motion to dismiss is to test the legal sufficiency of a complaint, not to determine factual issues. See Felder v. Dep't of Mgmt. Servs., Div. of Retirement, 993 So.2d 1031, 1034 (Fla. 1st DCA 2008). "For purposes of ruling on a motion to dismiss, the trial court may look no further than the four corners of the complaint, and all allegations in the complaint must be accepted as true." Nevitt v. Bonomo, 53 So.3d 1078, 1081 (Fla. 1st DCA 2010). Clearly, the trial court here looked beyond Appellant's complaint, and erred in doing so. Even if, as it appears, the court treated Appellee's motions as seeking judgment on the pleadings, the court reversibly erred because when ruling on such a motion, a court must accept as true the allegations of the party opposing the motion, and treat as false all allegations of the movant that were denied. See Holley v. Innovative Tech. of Destin, Inc., 803 So.2d 749, 750 n. 2 (Fla. 1st DCA 2001); accord Cuccarini v. Rosenfeld, 76 So.3d 328, 330 (Fla. 3d DCA 2011). | Trial court could not grant judgment on the pleadings dismissing architect's complaint against client for breach of contract, enforcement of construction lien, and account stated based on client's affirmative defenses alleging that architect failed to register with the Department of State the fictitious name under which he was doing business and failed to obtain a certificate of authorization from the Department of Business and Professional Regulation to provide architectural services under the fictitious name; architect denied the affirmative defenses in a responsive pleading, requiring trial court to treat them as false on a motion for judgment on the pleadings. West's F.S.A. SS 481.219(2), 865.09(9)(a). | "Is the purpose of a motion to dismiss to test the legal sufficiency of a complaint, not determine factual issues?" | 038490.docx | LEGALEASE-00154565-LEGALEASE-00154566 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 20108 | Cornelius v. River Ridge Ranch Landowners Ass'n, 202 P.3d 564 | 307A+435 | A trial court has discretion to dismiss an action with prejudice when a plaintiff fails to prosecute the action with due diligence. C.R.C.P. 41(b). However, that discretion is not without limits."The rules which permit a court to dismiss a case for inactivity are not meant to be rules of forfeiture, but rather guides for the efficient and orderly administration of the courts."Mizar v. Jones, 157 Colo. 535, 537, 403 P.2d 767, 769 (1965), repudiated on other grounds by Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co., 698 P.2d 1340, 1344 n. 5 (Colo.1985). Because the primary purpose of the courts is to provide a forum to settle litigable matters, a dismissal with prejudice is a drastic sanction to be applied only in extreme situations. Tell v. McElroy, 39 Colo.App. 431, 566 P.2d 374, 375 (1977), repudiated on other grounds by Lake Meredith Reservoir Co., 698 P.2d at 1344 n. 5. | Water court did not abuse its discretion in dismissing with prejudice property owner's pro se application for adjudication of water rights due to owner's failure to prosecute; property owner unreasonably delayed prosecution of his cases by failing to file any disclosures or respond to requests for information, thereby preventing opposers from preparing for trial. Rules Civ.Proc., Rules 37, 41. | Are rules which permit court to dismiss case for inactivity meant to be rules of forfeiture? | 06651.docx | LEGALEASE-00096607-LEGALEASE-00096608 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 23,876 | 9,073 |
| 20109 | State v. Arc Richfield Co., 142 A.3d 215 | 106+113(8) | The superior court "has discretion to decide in personal motions to dismiss for lack of personal jurisdiction on the basis of affidavits alone, to permit discovery, and to conduct an evidentiary hearing." Cooke v. Cavallaro, 163 N.J. 277, 278, 654 A.2d 970, 974 (1955). If...a court chooses to rule on a motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone, the party opposing the motion need make only a prima facie showing of jurisdiction...or, in other words, demonstrate facts which would support a finding of jurisdiction." Id. The nonmoving party is prima facie satisfy its burden and go beyond the pleadings and rely upon specific facts set forth in the record. Schwartz v. Frankenhoff, 169 Vt. 287, 293-94, 733 A.2d 74, 81 (1999). "In reviewing the trial court's legal conclusions concerning personal jurisdiction is nondeferential and plenary." Tarr v. Fra, 504 Vt. 380, 9, 107 Vt. 461, 166 A.3d 919. | That court properly exercised specific personal jurisdiction over manufacturer of gasoline additive, which was Delaware corporation headquartered in Texas, in Vermont's action against manufacturer alleging contamination of state waters; complaint alleged that manufacturer was one of several companies that refined, marketed, or sold gasoline additive containing additive into nationwide distribution system which manufacturer knew or should have known would bring its product into Vermont, expert stated that gasoline was commingled in various distribution centers, including center from which gasoline was trucked to Vermont, and manufacturer did not contest the allegations, but merely opposed Vermont's request for discovery to prove the allegations. 12 V.S.A. § 913(b). | "If a court chooses to rule on a motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone, should the party opposing the motion make only a prima facie showing of jurisdiction?" | 039279.docx | LEGALEASE 00156781- LEGALEASE 00156782 | Condensed, SA, 0.34 | | 0 | | 1 | 1 | |
| 20110 | Woodpark Ptrs, Ltd. v Pitts v Dister Const. Co., 620 So. 2d 645 | 289+1381 | An undisclosed principal, upon the revealing of his identity, has the right to bring suit to enforce the contract directly against the party who contracted with his agent (see Id., § 292; Carey Hall v Roush Blvd., 183 S.o.2d 345, 186 S.o.2d App ); Henry Hanks, Inc. v. Fresh Cut Farm, 39 S.W.2d 269; 281 Vt.; 20 398 review denied (Cal 1992); Cooper v. Epstein, 308 A.2d 540 (D.C. 1961); Vocaturo v McC Enterprise Developers Inc.Co 5 A.2d 343, 343 20; 20 398 review denied (1967); Standard Brick & Tile v. Pano, 56 Ga.App. 686, 193 S.E. 611 | Limited partnership had right of action to seek enforcement of contract executed before its articles of partnership were executed; partnership's agent who have contracted on behalf of partnership to be formed, so that the became partnership, or partnership may have acquired contractual rights of party to contract. LSA-C.C. arts. 435, 3517. | Can an undisclosed principal bring suit to enforce a contract directly against the party who contracted with the agent? | 043628.docx | ROSS-003287504-ROSS-003287515 | Condensed, SA, Sub 0.25 | | 1 | | 1 | | |
| 20111 | Earth Island Inst. v. U.S. Forest Serv., 442 F.3d 1147 | 149E+604(2) | As we stated in Native Ecosystems Council, "[o]ur case law permits the Forest Service to meet the wildlife species viability requirements by preserving habitat, but only where both the Forest Service's knowledge of what quality and quantity of habitat is necessary to support the species and the Forest Service's method for measuring the existing quantity of that habitat are reasonably reliable and accurate." 428 F.3d at 1250. In Austin, we noted that the black-backed woodpecker...is "[a] true habitat-dependent upon post-fire conditions." 428 F.3d at 1065. There, we concluded that the USFS had failed to provide a factual basis sufficient to satisfy the NEPA because the USFS did not disclose how the USFS determined that habitat levels were not critically low or how it planned to generate sufficient future habitat to ensure population from logging. We likewise conclude here that because the USFS's habitat analysis of the black-backed woodpecker haven't provided a factual basis for determining the quantity or quality of suitable habitat, they have not satisfy the NEPA. | United States Forest Service (USFS) improperly relied on habitat analysis and was required to conduct population surveys for fuels woodpecker and whiteface project's spring, management indicator species (MIS) in order to satisfy National Forest Management Act (NFMA) when drafting final environmental impact statement (FEIS) on logging projects following forest fires; the forest plan required population monitoring in form of MIS surveys. National Forest Management Act of 1976, § 6(g)(3)(B), 16 U.S.C.A. § 1604(g)(3)(B); National Environmental Policy Act of 1969, 3.2 et seq., 42 U.S.C.A. § 4321 et seq.; 36 C.F.R. § 219.14. | Is the Forest Service concerned with species viability? | Woods and Forests - Memo 81 RK_61327.docx | ROSS-001823750-ROSS-001823751 | Condensed, SA, 0.41 | | 1 | | 1 | | |
| 20112 | Watson v. Goldstein, 170 S.o.2d 1 Mon.-18 | 83+4511 | Does the agreement constitute a valid tender? The property involved is his right to receive from the defendant his entire personal property which he had possessed by virtue of the lease. There is hardly a discomfort though that plaintiff refuses to consumer the lease, evidence by the fact that it is the property, and the mortgage is merely an instrument otherwise, a lessee may be transferred without... G.S. 1 1002 (In the event of the rents) debt or lease account, it may be transferred only. The terms of the oral agreement, as supported by the facts of the act, offer the making of the oral agreement, effectually transferred the title to the intervenor. | Title to note may be effectually transferred by oral agreement without manual transfer and physical change of possession. Gen.St.1923, § 7092 (M.S.A. 3.33.39). | Could a note be transferred without indorsement? | 010795.docx | LEGALEASE 00155374- LEGALEASE 00155375 | Condensed, SA, Sub 0.72 | | 1 | | 1 | | |
| 20113 | Cohn v. Reid, 18 Mo. App. 115 | 343+2+10 | This is the order demanded by the very nature of the action. He is not suing for a rescission, or to obtain one, but for the results of consummation of an incomplete sale. On the proof that his plaintiff had breached his right to receive, process the law from. There is hardly a discomfort though that he refuses to receive, evidence by the fact of plaintiff's refusing to receive this law; the ward at Mellon v. Ford (18 Mich. 40); and the ... it may... (the ... of debt or but the intervenor even though... it was charged against the party trading the land. The court, in that case, said: "When the law has conveyed an exchange by the debtor in exchange of his property to reputable the bargain for fraud, he cannot reclaim from his... and the... or in conveyance, and a mere offer to "reach back" without such conveyance or tender is no rescission. | Where defendant by false and fraudulent misrepresentation induced plaintiff to trade a stock of merchandise for land, a proposition by the plaintiff to return the tender made before the institution of the suit to reconvey the land, was held not enough to entitle him to support the action; but, if not made until after the making of the offer after the filing of the suit, and issuance of the writ, the action was premature. | "Where land has been conveyed in exchange for personal property, and the grantee seeks to repudiate the bargain for fraud, is a mere offer to trade back without tendering a re-conveyance a rescission?" | Exchange of property - Memo 13 AM_55154.docx | ROSS-003089304-ROSS-003089310 | Condensed, SA, 0.47 | | 1 | | 1 | | |
| 20114 | Allen v. Burnet Realty, 801 N.W.2d 153 | 217+1611 | Second, we have stated that in an insurance contract, the insurer will have breached its duty to secure good-faith payment for the loss of the insured. See Avelson v. Laes-Darling Resch, 305 Minn. 241, 231.º3, 233 N.W.2d 73, 723 (1975) (1975) (stating that a contract that "requires the indemnitor to assume on behalf of the indemnitee for losses with which the indemnitor had no connection and over which it had no control" or a contract that "permits indemnity where the indemnity conduct bears no relationship to the loss" is an insurance contract), overruled on other grounds by Vonderhaar Plumbing & Heating Co. v. Fisher, 291 N.W.2d 83(81) (Minn.1980). First, in order to qualify as a direct loss of the value of the associate's action, that must the value of the associate's action, which [...] be such an insurer [...] an insurance contract does not fall within the scope of [Burnet Realty's] Independent Contractor Agreement." Therefore, Burnet Realty that is not itself insured, and it carries no cost of the rates insurance that would benefit the coverede depade, and in turn any losses. Because the LIA Program did not involve an insurance product. | "Legal administration program," by which real estate sales associates could purchase allocation of responsibility for errors of associate's work for broker, was not "insurance," for purposes of associate's claim that broker engaged in unauthorized sale of insurance, as broker was not assuming allocated for associate, broker had a strong connection with, and a certain amount of control over, the action of the associate that would cause the covered dispute and, in turn, to any losses, and program differed from a traditional insurance contract in several key respects, including that insurer wholly associate paid pursuant to program was not a "premium" for insurance, given that broker charged all associates a fixed fee under the program. M.S.A. 55.604.47, 82.63(3). | In an insurance contract does the insurer have any control over the losses suffered by the insured? | Insurance - Memo 59 - SM_64446.docx | ROSS-003088000-ROSS-003088001 | Condensed, SA, Sub 0.34 | | 1 | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20015 | Thompson v. Michigan Mut. Life Ins. Co., 56 Haw. App. 502 | 308v93 | In Toledo, etc., Co. v. Owen, supra, it is said: "That the authority of an agent is limited in the particular kind of business does not make him a special agent." | Powers of special agent and general agent are governed by same principles, acts by either within scope of authority being principal, difference being that general agent is authorized to transact all of principal business in all of business of particular character at particular place, while authority of special agent is confined to one or more specific acts. | Does limiting the authority of an agent make him a special agent? | 041599.docx | LEGALEASE 00155655-LEGALEASE 00155656 | Condensed, SA, Sub 0.56 | 0.56 | | | 1 | 1 | 1 |
| 20016 | Jones v. City of Macalline, 196 Ga. 526 | 268v70t(6) | * * * The use of streets and highways is not absolute and unrestricted. Such use is subject to reasonable regulation * * * "Schlesinger v. Atlanta, 161 Ga. 148, 129 S.E. 861, 863." The primary object of streets is for public passage. They should be kept open and unobstructed for that purpose. * * * The streets of the city are peculiarly within the police control for the purpose of preserving and protecting their use by the public as thoroughfares." Pitts v. Atlanta, 121 Ga. 567, 570, 49 S.E. 780, 794. 67 L.R.A. 796; 105 Ga. 862, 864. | The right to the use of streets is not absolute but subject to reasonable regulations and their use for the purpose of gain is special and extraordinary and may be prohibited or conditioned as the Legislature or municipality deems proper. | Is the right to conduct a street meeting absolute? | 014327.docx | LEGALEASE 00156280-LEGALEASE 00156281 | Condensed, SA, Sub 0.56 | 0.56 | 0 | 1 | | 1 | 1 |
| 20017 | State v. Guilford, 174 Minn. 457 | 279v77 | Equity may enjoin and abate public nuisances. Township of Hutchinson v. Filk, 4 Minn. 536, 47 N.W. 255; City of Duluth v. Leonard, 19 Minn. 162, 137 N.W. 740; State ex rel. Wilcox v. Gilbert, 126 Minn. 95, 147 N.W. 953, L.R.A. 1915D, 1; 148 Am. St. Rep. 100; Minn. 248, 211 N.W. 328; Town of Linden v. Fischer, 154 Minn. 354, 191 N.W. 901; 29 Cyc. 1233, 1236; 16 C. J. 171. ... 43 ... sports may sometimes be enjoined as a matter of public policy. 21 R.C.L. 1416. | Equity may enjoin and abate public nuisances. | Does equity have the jurisdiction to abate public nuisances? | Highways; Memo 428-RK_02344.docx | ROSS-003280328 | Condensed, SA 0.93 | 0.93 | 0 | 0 | 0 | | 1 |
| 20018 | Melcum v. Regents of Univ. of California, 151 Cal. App. 4th 168 | 302v34(2) | These general allegations, however, do not supersede those specifically relating to Melcum. As one court observed: "[G]eneral pleadings are controlled by specific allegations. ... Thus, where plaintiff alleges a permissible conclusion of law, such as the due performance of a condition precedent but also avers specific additional facts which either do not support such conclusion, or are inconsistent therewith, such specific allegations will control and a complaint which fails to state a cause of action will be rendered defective." [Citations.] [Cameron & Co. v. Security Pacific Business Credit, Inc. (1995) 221 Cal.App.3d 1371, 1387 1391, 272 Cal.Rptr. 187.] Because the allegations specifically relating to Melcum's remains did not state a cause of action for breach of contract, the trial court did not err in sustaining demurrers to those claims. | General pleadings are controlled by specific allegations; for example, where a plaintiff alleges a permissible conclusion of law, such as the due performance of a condition precedent, but also avers specific additional facts which either do not support such conclusion or are inconsistent therewith, such specific allegations will control and a complaint which fails to state a cause of action will be rendered defective. | Are general pleadings controlled by specific allegations? | Pleading - Memo 557-RMM_42275.docx | ROSS-003281452-ROSS-003281453 | Condensed, SA 0.5 | 0.5 | 0 | 0 | 0 | | 1 |
| 20019 | Thompson v. Bank of Am., N.A., 773 F.3d 741 | 83I+481 | First, under Tennessee law, a promissory note is a negotiable instrument, unless it contains a conspicuous statement that it is not negotiable. Tenn.Code Ann. s 47-7-104. A note can be sold or assigned to another party who then receives the right to enforce the note. Id. ss 47-3-201, 203, 301, 302. An assignment of a note is enforceable regardless of whether it is recorded. W.C. Early Co. v. Williams, 135 Tenn. 249, 186 S.W. 102, 103 (1916). An instrument may be enforced by, among others, the "holder" of the instrument. Tenn.Code Ann. s 47-7-301. Where an instrument is a blank endorsement, "a person in possession of the "bearer," meaning whoever possesses the note. Tenn.Code Ann. * * * | Under Tennessee law, assignment of a note is enforceable regardless of whether it is recorded. | Is it necessary to record an assignment to enforce it? | 010071.docx | LEGALEASE 00156425-LEGALEASE 00156460 | Condensed, SA 0.87 | 0.87 | 0 | 0 | 1 | | 1 |
| 20020 | State v. Mack, 735 So. 2d 126 | 67+16 | A person who serves as a "lookout" is a principal to burglary. State v. Brown, 504 So.2d 1036 (La.App. 5 Cir.1987), writ denied, 509 So.2d 1233 (La.1987). Mack admitted to Cpl. Young that she was a "lookout." Her actions clearly revealed that she made a "lookout." | Person who serves as a "lookout" is a principal to burglary. LSA-R.S. 14:24, 14:62.2. | Does serving as a look out make a person a principal in burglary? | Burglary - Memo 286-RK_42298.docx | ROSS-003227882-ROSS-003279883 | Condensed, SA 0.65 | 0.65 | 0 | 0 | | 1 | |
| 20021 | Johns v. Com., 10 Va. App. 283 | 67+9(1) | Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime. ... But a breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an entrance contrary to the will of the occupier of the house. | Even where a defendant's entrance into a building is contrary to the will of the occupier of the premises, the requirement that a person "breaks and enters * * * any * * * banking house * * * with intent to commit a robbery," under burglary statute, is not satisfied by the mere showing that the accused entered the premises with the intent to commit robbery contrary to the will of the occupier of the premises. Code 18.2-90. | What does 'actual breaking' in the context of burglary mean? | Burglary - Memo 304-RK.docx | LEGALEASE 00046288-LEGALEASE 00046289 | SA, Sub 0.02 | 0.02 | 0 | 0 | 1 | | |
| 20022 | State v. Peck, 539 N.W.2d 170 | 67+10.5( | Peck distinguishes these cases on the ground that this house was the marital residence of the parties rather than the separate property of the victim spouse in several of the cases. The flaw in Peck's argument is that he had paid the rent on this house and therefore had a "greater right" to possession. But even if Peck occupied the house and had some "greater right" to enter, and therefore could not be guilty of burglary. This is consistent with the common-law rule: There is no breaking in entering a building or dwelling, and therefore no burglary, if the person entering has a right to do so, although he may intend to commit, and may actually commit, a felony, and although he may enter in such a way that there would be a breaking if he had no right to enter. This is the case if a servant, or boarder, or joint occupant of a room, with the right to enter. | Under general rule, person who has general right of entry is guilty of burglary if he exceeds right either with respect to time or place of entering. | Can a person with a right to enter be guilty of burglary? | 013145.docx | LEGALEASE 00156611-LEGALEASE 00156612 | SA, Sub 0.83 | 0.83 | 0 | 1 | | | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20123 | Joslin v. Regan, 63 A.D.2d 466 | 371+2002 | While the label attached to an assessment is not dispositive of its true nature (see Franklin Society v. Bennett, 282 N.Y. 79, 84, 24 N.E.2d 854, 857), it may generally be said that "taxes are burdens of a pecuniary nature imposed generally upon individuals or property for defraying the cost of governmental functions" (Matter of Hanson v. Griffiths, 204 Misc. 736, 738, 124 N.Y.S.2d 473, 476, aff'd, 283 App.Div. 662, 127 N.Y.S.2d 819). They are in the strict sense "payable into the general fund of the government to defray customary governmental expenditures" (People v. Brooklyn Garden Apartments, 283 N.Y. 373, 380-381, 28 N.E.2d 877, 880). On the other hand, fees have been characterized as "a visitation of the costs of special services upon the one who derives a benefit from them" (Synagogue v. Roslyn Harbor, 40 N.Y.2d 158, 162, 386 N.Y.S.2d 198, 200, 352 N.E.2d 115, 117, emphasis in original). They are imposed to defray or help defray the cost of particular services (Matter of Hanson v. Griffiths, 204 Misc. 736, 738, 124 N.Y.S.2d 473, 476). "One of the legitimate purposes of filing fees is to "make the system self-sustaining and paid for by those who use it rather than by tax revenues drawn from the public at large." See United States v. Kras * * * 409 U.S. at 448, 93 S.Ct. 639" (Manes v. Goldin, 400 F.Supp. 23, 30-31). The filing charges provided for in section 2402 pertain to specific court proceedings and are payable one time only to the court within which the proceedings are brought, thus presumptively establishing them as fees and not taxes. | Label attached to an assessment is not dispositive of its true nature, i.e., whether a fee or a tax. Const. art. 3, S 22; art. 16, S 3. | Are taxes burdens of a pecuniary nature imposed generally upon individuals or property for defraying the cost of governmental functions? | Taxation - Memo # 997 - C - JL_62498.docx | ROSS-003293010-ROSS-003293012 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 20124 | Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130 | 360+127 | In San Juan Cellular, the court set out the precise confines of a "classic tax" versus a "classic fee." The "classic tax" is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large. See San Juan Cellular, 967 F.2d at 685. The "classic fee" is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise "money placed in a special fund to defray the agency's regulation-related expenses." Id. The San Juan Cellular court noted that most charges will not fall neatly into either extremity and the characteristics of the charge will tend to place it somewhere in the middle. See id. | Solid waste assessment charge imposed pursuant to West Virginia's Landfill Closure Act was "tax" rather than "fee," even though revenues were deposited into special fund and used for specific purpose, and therefore federal district court lacked subject matter jurisdiction over constitutional challenge to charge, pursuant to Tax Injunction Act (TIA); charge was imposed by state legislature and deposited into state treasury, charge was paid by citizens and businesses who paid waste collection service fees, and charge benefitted large segment of population, in that it was imposed pursuant to statute seeking to reduce environmental hazards of contaminated landfills and preserve safety of state's groundwater. 28 U.S.C.A. S 1341; W.Va.Code S 22-16-4(a, c). | Is a classic tax spent to benefit the community at large? | 046154.docx | LEGALEASE-00156459-LEGALEASE-00156460 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 20125 | In re M.S., 10 Cal. 4th 698 | 3.77E+11 | Both sections 422.6 and 422.7 require that the defendant specifically intend to deprive the victim of protected rights "because of" the victim's protected characteristic. Neither statute specifies whether that intent must be the sole reason behind the defendant's act or, if not, to what degree it must have motivated the defendant. The Court of Appeal construed "because of" to mean the defendant's discriminatory purpose must have been a "substantial factor" in the defendant's selection of the victim. All parties argue the Court of Appeal erred in this construction. They differ, however, on the correct interpretation of the statutory language. | "Apparent ability" within meaning of hate crime statute permitting conviction based on speech threatening violence against specific person or group of persons, if defendant had apparent ability to carry out threat, is construed objectively and implies that threat must be one that would reasonably tend to induce fear in victim. West's Ann.Cal.Penal Code S 422.6(c). | "How is the ""because of"" in hate crime statutes construed?" | 046665.docx | LEGALEASE-00156488-LEGALEASE-00156489 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 20126 | Border Nat. Bank of Eagle Pass, Tex., v. Am. Nat. Bank of San Francisco, 282 F. 73 | 8.30E+204 | A letter of credit is not required to be in any particular form. Even a formal letter of credit rarely, if ever, discloses on its face that the bank issuing it is secured. A bank is liable on its certified check to one who takes it upon the faith of its certification, though the drawer has nothing to his credit in the bank. Thompson v. St. Nicholas National Bank, 146 U.S. 240, 13 Sup.Ct. 66, 36 L.Ed. 956. Likewise the acceptance of a draft "affords a presumption of funds of the drawer in the hands of the acceptor. "Raborg v. Peyton, 2 Wheat. 385, 4 L.Ed. 268.And a promise to accept a draft is equivalent to an acceptance of it. Coolidge v. Payson, 2 Wheat. 66, 4 L.Ed. 185.There is no difference in principle between defendant's promise and the everyday acceptance of, or agreement to accept, a draft. The presumption that a bank will require security arises in one case as well as in the other; and that presumption is conclusive in favor of an innocent party, who changes his position in reliance upon it. Scudder v. Union National Bank, 91 U.S. 406, 414, 23 L.Ed. 245. | The acceptance of a draft affords a presumption of funds of the drawer in the hands of the acceptor. | Can a promise to accept be equivalent to its acceptance? | 009449.docx | LEGALEASE-00157602-LEGALEASE-00157603 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 20127 | Bryant v. Edson, 8 Vt. 325 | 8.30E+10 | But, as already shown, the days of grace are regulated generally by the place of payment. This note has in it expressly no place of payment. It is a promise to pay, generally. By what law are such contracts governed? Where are they considered payable? It has already been shown the residence of the parties does not govern it. | Days of grace are regulated by the law of the place of contract if no place of payment is specified. | Which law regulates the days of grace? | Bills and Notes-Memo 1411 - JK_63515.docx | ROSS-003323666-ROSS-003323667 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 20128 | United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. v. Manson, 105 Nev. 816 | 307A+690 | This action commenced on April 14, 1983, when Dorothy Manson filed her complaint. The five years for bringing the action to trial expired on April 14, 1988, and Local 350 had not brought the action to trial. Therefore, the district court was correct that dismissal was mandatory under NRCP 41(e). However, the court in its order stated that the expiration of five years "makes dismissal with prejudice mandatory...." | Dismissal of third-party plaintiff's claim because it was not brought to trial within five years of date original complaint was filed did not have to be with prejudice, and could be without prejudice if trial court, in its discretion, determined that justice so required. Rules Civ.Proc., Rule 41(e). | Does the expiration of five years makes dismissal with prejudice mandatory? | Pretrial Procedure - Memo # 10452 - C - KG_64147.docx | ROSS-003293344 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 20129 | In re Crane's Estate, 343 Ill. App. 327 | 336H+125 | The Supreme Court of Arkansas in passing upon the meaning of "with prejudice" has this to say: "The words "with prejudice", when used in an order of dismissal, have a definite and well-known meaning; they indicate that the controversy is thereby concluded. Discussing the meaning of these words, when used in a judgment of dismissal, Judge Butler said in the case of Union Indemnity Co. v. Benton County Lumber Co., 179 Ark. 752, 18 S.W.2d 327, 330: "This term has a well-recognized legal import; it is the converse of the term "without prejudice" and is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. * * *' Hence, the order of dismissal entered by the court on October 9, 1944, showed a complete adjudication of the controversy and was a bar to the subsequent action by appellant.' | Where plaintiff had instituted suit for an alleged breach of trust with respect to stock certificate, and court after affidavits and pleadings were filed by defendant, dismissed plaintiff's third amended complaint and ordered plaintiff to file a fourth amended complaint within 20 days, which plaintiff failed to do, and case was dismissed with prejudice, trial court had passed upon questions presented by pleadings, there was an adjudication of the merits of the litigation, and same plaintiff could not thereafter have her claim with respect to same stock certificate litigated as a claim in probate court against defendant's estate. S.H.A. ch. 110, SS 169, 172. | "Do the words ""with prejudice,"" when used in an order of dismissal, have a definite and well known meaning?" | Pretrial Procedure - Memo # 10497 - C - SHS_62763.docx | ROSS-003280816-ROSS-003280817 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20130 | Erskine v. Gardiner, 162 La. 83 | 307A+693.1 | "The dismissal of the suit carried with it the [dismissal of the] intervention. It cannot be claimed that, by joining the plaintiffs, the intervener became a plaintiff or substituted herself to the plaintiffs. If she has any right to the land in question, she will have to bring a proper proceeding to have the same recognized and enforced." | Dismissal of plaintiff's suit carries with it dismissal of intervention. | Does dismissal of a plaintiff's suit carry with it dismissal of intervention? | 025326.docx | LEGALEASE-00157058-LEGALEASE-00157059 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 20131 | United States v. Hoskins, 73 F. Supp. 3d 154 | 210+995 | The existence of an agency relationship is a "highly factual" inquiry, considering factors, such as "the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done." Cleveland v. Caplaw Enterprises, 448 F.3d 518, 522 (2d Cir.2006) (quoting Columbia Broad. Sys., Inc. v. Stokely"Van Camp, Inc., 522 F.2d 369, 375"76 (2d Cir.1975)). | Court could not resolve, on defendant's motion to dismiss indictment, his contention that the Foreign Corrupt Practices Act (FCPA) was unconstitutionally vague as applied to him because he could not have had fair notice that, as a member of a foreign parent company, he was also an agent of a domestic concern, as required to be prosecuted under the FCPA, in connection with scheme to bribe Indonesian officials to obtain contracts to build power stations in Indonesia; the resolution of defendant's challenge would require a more expansive factual record to be developed at trial regarding the highly factual nature of the alleged agency relationship. Foreign Corrupt Practices Act of 1977, S 104(a), 15 U.S.C.A. S 78dd-2(a). | Is the existence of an agency relationship highly factual? | Principal and Agent - Memo 432 - RK_63552.docx | ROSS-003321667-ROSS-003321668 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 20132 | Nazworth v. Swire Florida, 486 So. 2d 637 | 308+23(3) | The standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent. DeBolt v. Department of Health and Rehabilitative Services, 427 So.2d 221 (Fla. 1st DCA 1983); Restatement, supra, Section 250. More particularly, it is the right of control, and not actual control, which determines the relationship between the parties. Adams v. Department of Labor and Employment Security, 458 So.2d 1161 (Fla. 1st DCA 1984); LaGrande v. B & L Services, Inc., supra. | Conclusion that owner of shopping center maintained a degree of control over shopping center managers and that managers were not independent contractors of owner for purpose of liability for negligence of security guard hired by managers, was supported by evidence that owner had the right to control money spent by managers and required managers to insure the premises in such amounts and for such risks as owners determined. | What is the standard for determining whether an agent is an independent contractor? | Principal and Agent - Memo 496 - KK_63275.docx | ROSS-003281336-ROSS-003281337 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 20133 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+423 | Nonetheless, several other factors significantly reduce the likely deterrent value of the exclusionary rule in a civil deportation proceeding. First, regardless of how the arrest is effected, deportation will still be possible when evidence not derived directly from the arrest is sufficient to support deportation. As the BIA has recognized, in many deportation proceedings "the sole matters necessary for the Government to establish are the respondent's identity and alienage"at which point the burden shifts to the respondent to prove the time, place and manner of entry." Matter of Sandoval, 17 I. & N.Dec., at 79. Since the person and identity of the respondent are not themselves suppressible, see supra, at 3485, the INS must prove only alienage, and that will sometimes be possible using evidence gathered independently of, or sufficiently attenuated from, the original arrest. See Matter of Sandoval, supra, at 79; see, e.g., Avila"Gallegos v. INS, 525 F.2d 666 (CA2 1975). The INS's task is simplified in this regard by the civil nature of the proceeding. As Justice Brandeis stated: "Silence is often evidence of the most persuasive character.... [T]here is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak.... A person arrested on the preliminary warrant is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing *1044 mute." United States ex rel. Bilokumsky v. Tod, 263 U.S., at 153"154, 44 S.Ct., at 55"56. | Since person and identity of alien are not themselves suppressible as fruit of an illegal arrest, Immigration and Naturalization Service must prove only alienage in a deportation proceeding and that will sometimes be possible using evidence gathered independently of, or sufficiently attenuated from, original arrest. | Can deportation or removal proceedings be conducted without evidence derived directly from the arrest? | "Aliens, Immigration, and Citizenship - Memo 56 - RK_63924.docx" | ROSS-003321167-ROSS-003321168 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 20134 | Brown v. Worthington, 162 Mo. App. 508 | 294+89(6) | Because of this, it is said, though plaintiff was constrained to give his check and execute the note under duress practiced upon him by defendant on July 30th, he is not entitled to recover for the reason it appears that his personal check was promptly paid by his bank on presentment without a countermand from him and that he paid the note at maturity, 30 days thereafter, without objection, and this, too, when no duress whatever obtained. In other words, it is said, though duress obtained at the time the note and check were given, the transaction was subsequently ratified through payment made at a time when no duress appeared whatever. This matter pertaining to a ratification and as to whether or not duress continued until the payment was made was not submitted to the jury, and we believe it should have been, for the evidence warranted a finding of fact thereon. As we understand the record, the proof is by no means conclusive that plaintiff ratified the transaction by the subsequent payment of the check and note without objection when no restraint touching the exercise of his free will concerning the same appeared. | Plaintiff, having an option to purchase a lot of hogs from defendant, resold a portion of them, after which defendant demanded a sum in excess of the contract price, which plaintiff paid in order to get possession of the hogs for delivery to his vendee; the excess payment being made by means of a check and promissory note. Held, the check and note having been paid, that it was a question for the jury whether plaintiff had ratified the payment of the excess, it appearing that defendant retained a portion of the hogs as security for payment of the note, and that the note had been indorsed without recourse and was governed by the law of Michigan, where presumably possession of a note payable to order and duly indorsed by the payee is prima facie evidence of title in the holder, though defendant testified that he indorsed the note to a bank for collection. | "If a note is executed under duress, does subsequent payment or action on the basis of the note, amount to ratification or validation of the note?" | 009030.docx | LEGALEASE-00158745-LEGALEASE-00158746 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 20135 | Merchants' Nat. Bank of St. Paul v. Hanson, 33 Minn. 40 | 83E+525 | We are of the opinion that the case conclusively shows the defendant to have acquired the notes, not merely negligently, but in bad faith. The indorsements to the Bank of Breckenridge "for collection, account of Merchants' National Bank, St. Paul," upon their face indicated that the latter bank had, or at least claimed to have, the title to the notes, and that the Bank of Breckenridge (Luce) was its agent, with authority merely to collect. Rock Co. Bank v. Hollister, 21 Minn. 385; National Bank v. Clark, 23 Minn. 263. This assertion of title, as borne upon the notes themselves, was so placed as to show that it was presumably the last indorsement made. It is true, the prior indorsement by the payee to Power, being restrictive, did not show that the payee had parted with his title; but it was not necessary that the payee should have indorsed the notes in order to transfer his title. Pease v. Rush, 2 Minn. 107, (Gil. 89;) Foster v. Berkey, 8 Minn. 351, (Gil. 310;) Cassidy v. First Nat. Bank, 30 Minn. 86; S. C. 14 N. W. REP. 363. | L., an individual doing business under name of the Bank of B., holding several notes payable to himself by his name, or by the name of the Bank of B., indorsed the notes, and sent them to plaintiff, another bank, requesting plaintiff to discount them, and place the proceeds to his credit, which plaintiff did. Afterwards plaintiff returned the notes to L. for collection, having indorsed them. "Pay Bank of B., or order, for collection account of" plaintiff. L. having received the notes for collection, transferred them by indorsement before their maturity, with plaintiff's indorsements uncanceled upon them, to defendant, in payment of a pre-existing debt from L. to defendant. Defendant noticed the indorsements when he received the notes, but asked no questions, and no notice to him of plaintiff's rights was shown, except such as might be inferred from the facts stated. Held, that the indorsements were notice to defendant of plaintiff's title, and that defendant's conduct in forbearing to make inquiries was not merely proof of negligence, but, in the absence of anything to support a contrary conclusion, was proof of mala fides. | Is indorsement necessary for the transfer of title of a note? | Bills and Notes-Memo 1286-PR_63612.docx | ROSS-003279901-ROSS-003279902 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |

| | | | | | | | | | | Multiple Differences | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Selection & Arrangement | Substantive Additions | Condensed |
| | | | | | | | | | | 9,029 | 23,876 | 14,973 | 15,944 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,029 |
| 2016 | Green v. Wing Design, 998 F.Supp. 2266 | 172H+1342 | It should first be observed that the stated purpose of TILA is to give consumers a thorough understanding of what exactly he will need to do in order to use credit, as well as to provide meaningful and accurate disclosure of costs associated with consumer credit purchases. See 15 U.S.C. § 1601. Plaintiff's have aptly observed that the sufficiency of TILA mandated disclosures is to be reviewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor. See Edmonston v. AllierFin and Fund, Inc., 577 F.2d 291, 295 (5th Cir.1978) (holding that the proper standpoint for analyzing TILA disclosures is that of "ordinary layperson engaged in consumer credit transaction"); In re Cook, 76 B.R. 661, 664 (Bankr. C.D.Ill.1987)(noting that TILA disclosures should be construed through the eyes and understanding of the borrower, not the lender). | It should first be observed that the stated purpose of TILA is to give consumers a thorough understanding of what exactly he will need to do in order to use credit, as well as to provide meaningful and accurate disclosure of costs associated with consumer credit purchases. | Should the Truth in Lending Act (TILA) disclosures to be construed through the eyes of borrower or the lender? | 013817.docx | LEGALEASE-00158767-LEGALEASE-00158768 | SA_Sub | 0.72 | | 1 | 1 | 1 | |
| 2017 | Robert Bartin Eng & Equip. Co. v. Palmer, 569 Va. 206 | 183+1 | A "franchise" is incorporated hereditament and applies technically to | It is also to be observed that the term the laborer is to acquire under the terms of the statute a prior lien on the real and personal property of the company. The four pillars upon which the true meaning of a franchise rest is the real and personal property, a franchise is an incorporeal hereditament and is a technical sense applies to incorporeal bodies. The use of the word "franchise" precludes any idea that the legislature intend to include an individual employer within the scope of the statute. | Is a franchise an incorporeal hereditament? | Franchise_Memo Memo_643.docx | ROSS-003231050-ROSS-003231051 | Condensed_SA | 0.84 | | | 1 | | |
| 2018 | U.S. v. 175 Inwood Associates LLP, 330 F.Supp.2d 213 | 289+1309 | Under New York law, general partners in limited liability partnership are not protected as individuals from liability incurred by partnership; if assets of partnership are insufficient to satisfy liability, N.Y.Attorney's Partnership Law § 26. | As mentioned supra, Woldiger, Taub and Heffes are general partners in a limited liability partnership. In relevant part, Section 26 of New York Partnership Law provides (i) Except to a provided in subdivision (b) of this section, all partners are liable 1. Jointly and severally for everything for which the partnership, while any partner may enter into a partnership law partnership contract (b) Except as provided by subdivisions (c) and (d) of this section, no partner of a partnership which is a registered limited liability partnership is liable or accountable, directly or indirectly, for any debts, obligations, or liabilities of, or chargeable to, the registered limited liability partnership or each other partner or partners, whether arising in tort, contract or otherwise, which are incurred, created or assumed by such partnership while such partnership is a registered limited liability partnership, solely by reason of being such a partner or acting (or omitting to act) in such capacity or rendering professional services or otherwise participating (as an employee, consultant, contractor or otherwise) in the conduct of the other business or activities of the registered limited liability partnership. N.Y Partnership Law § 26 (McKinney 2004) | Is a partner of a limited liability partnership liable for any debts and obligations chargeable to the partnership? | Partnership_Memo_GP_54673.docx | ROSS-003283242-ROSS-003283243 | Condensed_SA | 0.82 | 1 | 0 | 0 | 1 | |
| 2019 | Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412 | 170B+2447 | A partnership, as an unincorporated entity, takes on the citizenship of each of its partners for purposes of determining diversity jurisdiction. 28 U.S.C.A. § 1332(a). | As mentioned supra, we have consistently held that the citizenship of a partnership or other unincorporated associations is determined by the citizenship of its partners or members. Swiger, 540 F.3d at 182. Accordingly, the citizenship of a partnership must be determined by the citizenship of each of its partners, and as with partnerships, where an LLC has, a union of its members, another LLC-member the citizenship of the association must then traced through however many layers of partners or members there may be to determine the citizenship of the LLC. Harris v. Tarmona Int'l, 18 F.3d 1541, 1544 (10th Cir.) | Is the citizenship of all partners relevant in determining the partnership citizenship? | 023014.docx | LEGALEASE-00158623-LEGALEASE-00158624 | SA_Sub | 0.72 | | 0 | 0 | 1 | |
| 2020 | Mcafee v. Mcafee, 2 3 Cal.App.3d 142 | 302+138 | Complaint and cross complaint are treated as separate actions for most purposes. | Unless the court otherwise directs, the normal order of proof in the trial of a case where there are pleaded both a complaint and cross complaint, for defendant produces evidence and the parties may then respectively offer the reply of proof. (Kopus v. Mickelson, 105 Cal.App.2d 45, 51, 232 P.2d 829 (1951); Castro v. Rogers of Irvine, of California, 153 Cal.App.2d 440, 442, 314 P.2d 61 (1957)) Hence, after Mrs. Mcafee's evidence, the court could direct defendant to present his evidence on both aspects of the case in chief. When he did not but offered his evidence as to the complaint filed against him, Mcafee was entitled to a nonsuit. Moreover, a complaint and a cross complaint are to, for most purposes, treated as separate actions. (Kopus of California v. Superior Court, 226 Cal. 179, 182 "183, 25 P.2d 858 (1933); National Electric Supply Co. v. Mount Diablo Unified School Dist., 187 Cal.App.2d 418, 422-23 Cal.Rptr. 884 (1961)) In the within action, the discretion of the court to order a severance and separate trials of such actions (Code Civ.Proc. s 1048; McArron v. Lewis, 153 Cal.App.3d 4, 7, 43 Cal.Rptr. 412 (1965); and the exercise of such discretion will not be interfered with on appeal except when there has been manifest abuse thereof. (McArthur v. Shaffer, 59 Cal.App.2d 724, 727, 139 P.2d 959 (1943).) | Are a complaint and cross complaint treated for most purposes treated as independent actions? | 023855.docx | LEGALEASE-00158466-LEGALEASE-00158467 | Condensed_SA | 0.95 | | | 1 | | |
| 2021 | Regis v. Missouri State Life Ins. Co., 227 F. App. 555 | 217+163A(3) | An agent having authority only to solicit applications and forward them to the home office is a soliciting agent. | In the proofs there is a great deal of testimony as to the statements and understandings between the appellee and soliciting agent at the time the application was signed, which in the opinion of this court has no bearing upon the case. An agent having authority only to solicit applications and forward to the home office, is a soliciting agent, and has no power to waive the provisions of a | Who is a soliciting agent? | Principal and Agent Memo-846-PR_63789.docx | ROSS-003292198 | Condensed_SA | | | | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20142 | Toras i Kedusha v. Itis & Game Comm'n, 334 U.S. 410 | 360+18.43 | But the foregoing emphasizes the tenuousness of the state's claim that it has power to neglect and exclude it lawful alien residents, and particularly certain racial and color groups within this class of inhabitants, from following occupation simply because Congress has put some such groups in special classification in exercise of its broad and wholly distinguishable powers over immigration and naturalization. The state's law here cannot be supported in the employment of its legislative authority because of policies adopted by Congress in the exercise of its power to treat separately and differently with aliens from countries composed of peoples of many diverse cultures, races, and colors. For those reasons the power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits. | State laws which impose discriminatory burdens upon entrance or residence of aliens lawfully within the United States conflict with constitutionally derived federal power to regulate immigration and are invalid. | Is the power of a state to apply to its laws exclusively to aliens narrow? | 000002.docx | LEGAEASE 00180095-LEGAEASE 00180096 | Condensed_SA | 0.75 | 0 | 1 | 1 | 1 | |
| 20143 | Keller v. City of Fremont, 719 F.3d 931 | 360+18.43 | Justice Kennedy's majority opinion began by reaffirming two powerful principles that govern these issues. First, the federal government "has broad, undoubted power over the subject of immigration and the status of aliens," authority that rests on the constitutional power to "establish an uniform Rule of Naturalization," Art. I, § 8, cl. 4, and the inherent sovereign's "inherent power as sovereign to control and conduct relations with foreign nations." Arizona, 132 S.Ct. at 2498. Second, by reaffirming the Supremacy Clause, Art. VI, cl. 2, Congress has virtually unfettered power to preempt state law.[1] "By enacting a statute containing an express preemption provision—or [2] by determining that "conduct in a field ... must be regulated by its exclusive governance," preemption doctrine may also be implied from the comprehensive scheme of federal regulatory regime or from the dominance of the federal interest being regulated. Id. at 2501. In addition, state laws are preempted when they conflict with federal law. Conflict preemption occurs when compliance with both federal and state law is impossible, and where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 2501 (quotation omitted). | In analyzing a preemption claim, a state may enact an otherwise valid law that does not unlawfully present aliens from residing within the state, notwithstanding the federal government's exclusive power in controlling the nation's borders. Immigration and Nationality Act, § 240, 8 U.S.C.A. § 1229a. | Does the government have the power to establish uniform rules. Control of naturalization? | 000051.docx | LEGAEASE 00180272-LEGAEASE 00180273 | Condensed_SA | 0.77 | | 1 | 0 | 1 | |
| 20144 | Case v. McKinnis, 107 Or. 233 | & 360+12 | The Negotiable Instruments Law was adopted in this state in 1899 (Laws 1899, p. 18), and has been in practice continuous. Farmers v. Harris, 43 Or. 505, 508, 117 Pac. 286; Manchester & Farmers' Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071, Ann. Cas. 1912A, 836; First National Bank v. Bach, 98 Or. 332, 336, 193 Pac. 1041. The section numbers in the act of 1899, with only a few exceptions, conform with the numbering of the uniform Negotiable Instruments Act as it appears in the standard text books and as it is found in most of the states which have adopted it, and so far construed to represent a scheme when may be referred to and designated by both its Code number and by the number given to it under the act of 1899, but the uniformity being there, whether alone or in combination with a scheme as the whole law or by it as an equation. | Where the Negotiable Instruments Law speaks it controls. | Where the Negotiable Instruments Law controls? | 010908.docx | LEGAEASE 00180358-LEGAEASE 00180359 | Condensed_SA_Sub | 0.93 | 0 | 1 | 1 | 1 | |
| 20145 | State v. Love, 271 Or. App. 545 | 129+107 | Subsection (a) and (3) of ORS 166.025 (1973) both prohibit specific types of conduct from being performed "in a public place." As part of the general discussion of the definition of "public place," the 1971 legislature also codified a definition of the term "public place." "'Public place' means a place to which the general public has access and includes, but is not limited to, hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence, and highways, streets, schools, places of amusement, parks, playgrounds and premises used in connection with public passenger transportation." ORS 161.015(9). In State v. Cip, 71 Or. App. 161 U.S. 646, 648, 16 U.S. 705, 709, 461 Eld. 838 (1896). Thus, we must look to the original of that term "public" to determine its exact meaning of the term "public" in reference to a physical place. | Term "public," as used in statute governing crime of second-degree disorderly conduct and requiring risk of "public inconvenience, annoyance or alarm," refers to interest shared by people of the community in general, regardless of whether conduct at issue occurred in a public place or not. West's Or.Rev. Stat. Ann. § 166.025. | How is the public place defined in the context of disorderly conduct? | 014051.docx | LEGAEASE 00190420-LEGAEASE 00190421 | Condensed_SA | 0.59 | 0 | 1 | 1 | 1 | |
| 20146 | Delaware Power & Light Co. v. City of Seaford, 575 A.2d 1089 | 18344 | A franchise is a right or privilege conferred by the state to a grantee, usually for the investment of some public purpose. Blair v. Chicago, 201 U.S. 400, 26 S.Ct. 427, 435, 50 L.Ed. 801 (1906); Greater Wilmington Transp. Auth. v. Wilmington Sch. Dist., 380 A.2d 454 (Del. 1977). Because of this public purpose, any ambiguity regarding the nature of the grant must be construed strictly against the grantee. Knoxville Water Co. v. City of Knoxville, 200 U.S. 22, 33, 26 S.Ct. 224, 227, 50 L.Ed. 353 (1906). In particular, exclusivity is not favored and will be recognized if it is explicit. Id. at 33. In the franchise, therefore, exclusion of the line on the franchise grantee to incorporate franchise grant to the State Department of insurance. The bonds were kept in the branch's separate account and the interest was entirely retained. The court separate from grantee's foreign operations. Under the circumstances present in this case, we conclude that the franchise right of the Canadian bond interest for purposes of calculating the franchise tax was not irrational. | Exclusivity is not favored and will only be recognized if it is explicit. | Are exclusive franchises favored under law? | Franchise - Memo 15 - KNR_64433.docx | RODS 00226767/4-RODS-0029/673 | Condensed_SA | 0.88 | | 1 | 1 | 1 | |
| 20147 | Zurich-Ins. Co. v. New York State Tax Comm'n, 144 A.D.2d 202 | 318+28 | Franchise taxes are separate and distinct from income taxes, as they are imposed on the privilege a state grants to a corporation to conduct business within its territory (see, Tax Law * 1502(a); Matter of Standard Mfg. Co. v. Tax Comm'n of State of N.Y., 114 A.D.2d 138, 140, 498 N.Y.S.2d 729, affd, 69 N.Y.2d 635, 511 N.Y.S.2d 229, 503 N.E.2d 694, appeal dismissed 481 U.S. 1044, 107 S.Ct. 2171, 95 L.Ed.2d 835). Here, the Canadian bonds were part of the assets which New York required petitioner Limited States branch to maintain for the privilege of exercising its corporate powers within this State. Net only was the branch subject to the State's supervisory sheets submitted to the United States branch to the State Department of Insurance. The bonds were kept in the branch's separate account and the interest was entirely retained. The court separate from petitioner's foreign operations. Under the circumstances present in this case, we conclude that the franchise tax classification of the Canadian bond interest for purposes of calculating the franchise tax was not irrational. | Franchise taxes are separate and distinct from income taxes, as they are imposed on the privilege a state grants to a corporation to conduct business within its territory. McKinney's Tax Law § 1501(a). | Is franchise tax distinct from income tax? | 010069.docx | LEGAEASE 00199450-LEGAEASE 00199451 | Condensed_SA | 0.82 | | 1 | 0 | 1 | |

3546

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 20148 | Maines Fin. v. Commonwealth Land Title Ins. Co., 643 So. 2d 295 | 217v1013 | The purpose of the closing service letter is to provide indemnity against loss due to a closing attorney's defalcation or failure to follow a lender's closing instructions. See, Lawyers Title Insurance Corp. v. Edmar Construction Co., 294 A.2d 865 (D.C.App.1972). It is clear from a reading of the closing service letter that it states Commonwealth's responsibility for the actions of its approved attorney. It is also clear that the closing service letter is not a title insurance policy. "Title insurance" is defined as "insurance of owners of property, or others having an interest therein or liens or encumbrances thereon against loss by encumbrance, or defective titles, or invalidity or adverse claim to title." " 27 § 10, Ala.Code 1975. | Closing letter which provided indemnity against loss due to closing attorney's defalcation or failure to follow a lender's closing instructions was not a title insurance policy and alleged breach thereof could not give rise to claim for bad faith refusal to pay. Code 1975, § 27-5-10. | Is a closing protection letter an insurance policy? | 019614.docx | USALEX-AE-00159861 USALEX-AE-00159882 | Condensed, SA, Sub 0.62 | | 0 | 1 | | 1 | 1 |
| 20149 | Thomas v. Price, 631 F.Supp. 114 | 172H>244 | Section 27 of the Texas U.P.A., on its face, contemplates the possibility that the assignee of a partner's interest might be entitled to participate in management decisions, provided that the non-assigning partner(s) agree to such participation. Such a conclusion is not necessarily inconsistent with the general proposition that the assignee of a partnership interest may not interfere in the management of the partnership. See Bromberg, Crane and Bromberg on Partnership *4.2 at 240 (Wisd 1968). An examination of the cases in which this general rule has been invoked reveals that courts have been primarily concerned with the need to protect non-assigning partners from unwanted interference in partnership business. See Rapoport v. 55 Perc. 9, 376 So.2d 24 (1964), 261 N.Y.S.2d 55 (1st Dep't 1965) (in action by non-selling partner, purchaser of partnership interest may be enjoined from purchasing assets out of partnership where there was no agreement for assignee's management not participate in management of business); aff'g 21 A.D.2d 70 S. 255 N.Y.S.2d 133 (1st Dept.) (partnership), appeal dismissed 15 N.Y.2d 966, 202 N.E.2d 304, 257 N.Y.S.2d 362 (1964); Valley Springs Holding Corp. v. Carlson, 56 S.D. 163, 227 N.W. 84 (1929) (mortgagee who has acquired partnership interest not entitled to interfere in management or administration of partnership business). | Under New York law, assignment of partnership interest in bank, as security for homeowner note, entitled assignee's succession to participate directly in "the management, administration, affairs or control" of bank, upon occurrence of "Event of Default." "amon's Ann. Texas Civ.St. art. 6132b, SS 26, 26, 27(1). | Is an assignee of a partnership interest entitled to interfere in the management of the partnership? | Partnership - Memo 166 - 58_64448.docx | ROSS-002958611-ROSS-003259612 | Condensed, SA, Sub 0.77 | | 0 | 1 | | 1 | 1 |
| 20150 | Fireburglery v. Jutery, 20 489 N.W.2d 148 Abb. N. Cas. 279 | 108H>1174 | It is well settled that one partner cannot make an assignment of copartnership property to a trustee for creditors without the assent of his copartner. This act of an assigning partner is void as to the nonassenting partner, and it is void as to the assets of the partnership. See Kelly v. March, 30 N.Y. 144, National Bank v. Sackett, 2 Abb. Pr. N.S. 286). A subsequent transaction is invalid if the partner is not rendered valid by a subsequent attempt to restore the proceeds of the property is transferred. | An assignment of partnership property, which is shown to be fraudulent as to the creditors by reason of the transfer, immediately before the assignment of the same, transfers all of the partner, is not rendered valid by a subsequent attempt to restore the proceeds of the property is transferred. | Can a partner make an assignment of partnership property to a trustee without the assent of his co partners? | Partnership - Memo 168 - 58_64467.docx | ROSS-002000847-ROSS-003269648 | Condensed, SA, Sub 0.47 | | 0 | 1 | | 1 | 1 |
| 20151 | Costa v. Bennett, 54 Mich. App. 93 | 1414>423 | The Supreme Court of California, in Roberts (decided May 6, 1976, 716, 273 N.W.2d 248 (1979), does not allay the confusion in the area. There the question of the applicability of governmental immunity to a school principal was not addressed. Westn, p. 716, 273 N.W.2d 248. In that case it was alleged that the principal was appraised of the dangerous condition of the cafeteria room and failed to take appropriate action to protect the students. Justices Levin, Kavanagh and Fitzgerald found that the complaint did state a claim against the principal. Chief Justice Coleman and Justice Moody found that the principal was performing discretionary activities that are of essence to government and was thus protected by governmental immunity. Westn, Supra, 716, 273 N.W.2d 248. Justice Williams, in Rush, supra, 734, 273 N.W.2d 248, would hold school principals who are liable only upon the showing of a ministerial act. Westn, supra, 734, 273 N.W.2d 248. | Extent to which school principal is protected by governmental immunity is independent upon whether the act complained of falls within principal's discretionary or ministerial powers. | Are principals protected by governmental immunity? | Education - Memo 335 - C-45_65185.docx | ROSS-003281172-ROSS-003281173 | Condensed, SA | 0.82 | | 0 | 1 | | 1 | 1 |
| 20152 | In re Acadia Ins. Co., 279 S.W.3d 777 | 156v139 | The record of the hearing on the competing motions provides the basis to determine whether or not the trial court abused its discretion. Acadia contends that the issue before the trial court was simply a matter of law, whereas, Bennan contends that the trial court was required to make a factual determination based on a legal conclusion based upon the factual finding. Both parties contend the issue of whether of the right of appraisal is the controlling issue in the case. We note, waiver is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. Tenneco, Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 643 (Tex.1996). A waiver of the right may spring from the law or from a contract, Id. The question of waiver is a question of fact, or question of law. Whether waiver has occurred is a question of fact for the trier of fact. | Whether waiver has occurred is a question of fact for the trier of fact. | Is waiver a question of fact? | 019124.docx | USALEX-AE-00161313 USALEX-AE-00161314 | Condensed, SA | 0.93 | | 0 | | | 1 | |

| ROW# | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 20153 | Beste v. ABA Energy Corp., 1215 Colo. App. 469 501 | 260v9 | Notably, Ohio courts had originally developed a distinction between the scope of a right-of-way in a developed and rural area similar to that addressed by Montgomery and Currens. However, in Ziegler v. Serviot Co. (1980) 13 Ohio St.3d 523, 14174, 12 Ohio Bar 244, the Ohio Supreme Court considered that "the steadily increasing process of rural urbanization" had rendered the distinction untenable (Id. at 527; 714). Accordingly, the court allowed the installation of a water line in a rural right-of-way without the consent of or compensation to the landowner, adopting a uniformly broad scope for rights-of-way regardless of location. In Weishaupt v. Cedarock Communications Corp. (Ohio 2003) 69 P.3d 236, 270, the plaintiff owned property adjacent to a county right-of-way in Oklahoma. The defendant, a telecommunications company, sought to lay fiber-optic cable in the right-of-way alongside the county road. As here, the landowner contended that the installation constituted a trespass that unreasonably burdened upon the highway easement that... is a further proper use of the land as there is a burden of easement that is a right-of-way to a city street," therefore plaintiff's land... As a matter of law, the Supreme Court of West Virginia sought to find whether the proper use of a public right-of-way similar to those in the present case questions the proper scope of a public right of way, noting that "[t]here is no difference, whether the question arises in regard to a rural highway right of way or to a city street." [Harold v. Gas Co. (1955) 141 W. Va. 182, 90 S.E.2d 451, 456, 453.] | County's approval of encroachment permit to private energy corporation to install pipeline for transportation of compressed natural gas as public right of way was not abuse of discretion; pipeline served public interest by providing efficient and effective transportation of important commodity. West's Ann.Cal.Gv. & H.Code § 1460. | Is there a difference whether the question of the proper scope of a public right of way arises in regard to a rural highway right of way or to a city street? | Highways - Memo 359 RK_6613.docx | ROSS-0003042-ROSS-0003042-ROSS-00330421 | Condensed_SA, Sub 0.81 | | 0 | | 1 | 1 | 1 |
| 20154 | Chevilla v. Pioneer State Mut. Ins. Co., 294 Mich. App. 260 | 217v1002 | For this Court to conclude that plaintiff's Claim is legally sufficient, we must decide that plaintiff as a policyholder, has ownership of Pioneer, and that policyholders have the same rights as shareholders with respect to Pioneer. While the general distribution of profits surplus to shareholders, which is a typical right possessed by... It is well established that... policyholders are owners of mutual insurance companies. Because of their ownership interest, policyholders of mutual insurance companies are both insureds and insurers. Camp.O of Pioneer... 521 N.W.2d 642 (1997). Moreover, defendants concede that plaintiffs have some form of ownership interest. | Because of their ownership interest, policyholders of mutual insurance companies are both insureds and insurers. | Are policy holders of mutual insurance companies insured or insurers? | 019538.docx | LEGALEASE-00011593-LEGALEASE-00101592 | Condensed_SA 0.85 | | | | | 1 |
| 20155 | Obico v. Sweets Fech. Inst., 556 So. 2d 540 | 30T4v490 | [When an action is prescribed, it is over. When an action is dismissed with prejudice, it is over.] The notice given for the plaintiff's objected to, which was to the effect that... The action may be thereafter may be relitigated, which would be... the end of their case, the end of the matter, and... by contrast, a dismissal without prejudice... holds the matter open and... | When an action is dismissed "with prejudice," that means it cannot be litigated again. | When an action is dismissed "with prejudice," can it be litigated again? | 042099.docx | LEGALEASE-00100591-LEGALEASE-00100592 | Condensed_SA 0.3 | | 0 | 1 | | 1 |
| 20156 | Wooley v. Lyon, 2173 R. 244 | 8.301v14 | The switch interaction given for the plaintiff's objected to, which was to the effect that the effect... the instrument of the promissory note... is... acknowledged his liability as indorser, and agreed to settle or pay the amount due, then it is immaterial... under the instrument law, whether the protest was legal or proper. This instruction, if faulty, could have done the defendant no harm, for the reason that the necessary steps under the law of this state were taken to charge defendant as indorser, viz., demand of payment, protest for nonpayment, and notice of non-payment addressed to defendant at proper place, all of which the evidence shows were actually made and given in accordance with our own law, where the defendant's liability became fixed, and it was immaterial whether or not the protest made or the protest that gave due notice... under the instruction to the law, 8. 1 tick. Rob. (La.) 712, in note to above case of Aymar v. Sheldon, We are disposed to adopt the rule that if the indorser lives in Michigan... | Notice and protest of negotiable paper is governed, in case of conflict, by the place where instrument is payable. | Which law governs the protest of a note? | Bills and Notes - Memo 1333 - RK_64238.docx | ROSS-003278480-ROSS-003278802 | Condensed_SA, Sub 0.94 | | 0 | 1 | 1 | 1 |
| 20157 | Bryant v. Edson, 8 Vt. 325 | 8.301v10 | This case must be decided upon the law of Vermont or Massachusetts, in neither of which is the law merchant of England exactly adopted. Where, by law, the days of grace are allowed, judge Story in his commentaries on page 299 lays down the general rule with respect to the allowance of a time of payment beyond the day fixed in negotiable instruments. He says, "This period of indulgence is commonly called the days of grace; so that, to which is to 3 days, that the usage of the place, on which a bill is drawn, and where payment of a bill or note is to be made, governs as to the number of the days of grace to be allowed thereon." In this rule he clearly refers to a case where the residence of the drawee is, the place where payment is to be made. | The allowance of grace on a bill of exchange is governed by the law of the place of payment. | Does the usage of the place where payment of a bill or note is to be made govern the days of grace? | 009596.docx | LEGALEASE-00162050-LEGALEASE-00162051 | Condensed_SA, Sub 0.87 | | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20158 | Wooley v. Lyon, 117 Ill. 244 | 30+4440 | The sixth instruction given for the plaintiff is objected to, which was to the effect that if, after the maturity of the notes, the defendant was informed of their non-payment, and, being so informed, acknowledged his liability as indorser, and agreed to settle or pay the amount due, then it is immaterial, under the Michigan law, whether the protest was legal or proper. This instruction, if faulty, could have done the defendant no harm, for the reason that the necessary steps under the law of this state were taken to charge defendant as indorser, viz., demand of payment, protest for non-payment, and notice of non-payment addressed to defendant at a proper place, all which the evidence shows were duly made and given in accordance with our own law, where the defendant's liability became fixed, and it was immaterial whether or not he made a subsequent promise to pay the notes. The notes being payable in this state, and the contract of indorsement being made in Michigan, and the indorser residing there, the law of the place where the notes were payable we consider governed as to time and mode of presentment for payment, manner of protests, and giving notice. 2 Pars. Notes & Bills, 344, 345; 1 Daniel, Neg. Inst. "" 911, 912; Rothschild v. Currie, 1 Adol. & E. (N. S.) 43; Hirschfeld v. Smith, L. R. 1 C. P. 350. There is a conflict of authority as to what law should govern in the giving of notice of dishonor,-whether the law of the place of payment or the law of the place where the indorsement is made. Aymar v. Sheldon, 12 Wend. 439, and some other American cases, hold the notice should be according to the law of the place of the indorsement; and see Redf. & B. Lead. Cas. Bills & Notes, 712, in note to above case of Aymar v. Sheldon. We are disposed to adopt the rule that the notice should be in accordance with the law of the place where the bill or note is made payable, as resting upon the better reason. | Indorser's liability on note becomes fixed on presentment, demand of payment, protest for nonpayment, and notice addressed to indorser and when this is done his subsequent promise is immaterial and erroneous instruction as to effect of promise was harmless error as against him. | Which law governs the time and mode of presentment for payment of a note? | Bills and Notes - Memo 1338 - RK_66241.docx | ROSS-003282833-ROSS-003282834 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 20159 | Strubel v. Capital One Bank (USA), N.A., 179 F. Supp. 3d 320 | 172H+1342 | In the absence of any dispute over the language or format of information disclosed to consumers, the question of whether "required disclosures have been made clearly and conspicuously" under TILA is a question of law to be resolved by the Court and not by a jury. Gambardella v. G. Fox & Co., 716 F.2d 104, 113 (2d Cir.1983). Conspicuousness is a question of law "not because judges are experts at graphic design, but because subjecting conspicuousness to fact-finding would introduce too much uncertainty into the drafting process." In re Bassett, 285 F.3d 882, 885 (9th Cir.2002); see also Smith v. Check"N"Go of Ill, Inc., 200 F.3d 511, 515 (7th Cir.1999) (observing that if conspicuousness were a matter of fact, then lenders using identical forms could have inconsistent outcomes at trial). The same principle applies to the issue of whether a disclosure is substantially similar to a model form. See, e.g., Karakus v. Wells Fargo Bank, N.A., 941 F.Supp.2d 318, 327"33 (E.D.N.Y.2013) (resolving substantial similarity question as a matter of law on motion to dismiss). The Court evaluates the adequacy of TILA disclosures "from the vantage point of a hypothetical average consumer"a consumer who is neither particularly sophisticated nor particularly dense." Id. at 330 (quoting Palmer v. Champion Mortg., 465 F.3d 24, 28 (1st Cir.2006)); see also Schwartz v. Comenity Capital Bank, No. 13 CIV. 4869 JGK, 2015 WL 410321.Under Second Circuit law, TILA "does not require perfect disclosure, but only disclosure which clearly reveals to consumers the cost of credit." Gambardella, 716 F.2d at 118. | Disclosures in a credit card solicitation were clear and conspicuous, as required by Truth in Lending Act (TILA) and implementing regulations, even if the disclosures used a difference typeface than that used in the model forms, where the text was set in 10-point type with white space separating the letters, words, and lines of text so that they could be easily distinguished, the text was printed in black ink on a white background, the typeface used was not unreasonably small compared to other commonly-used fonts, and the formatting of the required disclosures was substantially similar to the model forms. Truth in Lending Act S 122, 15 U.S.C.A. S 1632(a); 12 C.F.R. S 1026.60. | Is the question of whether required disclosures have been made clearly and conspicuously under TILA a question of law? | Consumer Credit - Memo 233 - RK.docx | LEGALEASE-00051733-LEGALEASE-00051734 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 20160 | Flick v. State, 455 N.E.2d 339 | 181+4 | Our statute does not require monetary gain for a conviction of forgery. What is required is proof of intent to defraud. Here there was sufficient evidence to establish this. The defendant paid Brenda Dillard to obtain unauthorized learners' permits and he provided Dillard with a list of names to use for the permits. One of the permits was in the name of an alias used by Earl William Nave. The other permit was issued in the name of Lawson Marlow, an alias often used by the defendant. The Marlow permit contained the defendant's address, and testimony showed no one besides the defendant lived at this address. Both of these permits were delivered to the defendant's apartment, and the defendant sold one of the permits to Nave for fifty dollars. From all of this, the jury could reasonably infer the defendant intended to defraud the state. | Monetary gain is not required for conviction of forgery and what is required is proof of intent to defraud. IC 35-43-5-2 (1982 Ed.). | Is monetary gain necessary to prove forgery conviction? | 018473.docx | LEGALEASE-00162007-LEGALEASE-00162008 | Order, SA, Sub | 0.84 | 1 | 0 | 1 | 1 | 1 |
| 20161 | Oahu Ry. & Land Co. v. Shaw, 12 Haw. 76 | 371+2327 | "The cardinal and well known rule of construction is that a statute exempting property from taxation is to be strictly construed. The general rule is settled and familiar, but its practical application is not free from difficulty. The statutes to which it has been applied differ in many particulars. A great diversity of opinion prevails, although all cases profess adherence to the cardinal rule. Some of the Courts enforce the rule with rigid strictness, holding that there must be actual use for railroad purposes and not merely a use for a purpose indirectly connected with the operation of the railroad, while other Courts extend the exemption to property incidentally connected with the operation of the railroad. As much as can be safely said is that in each particular case the question is one of legislative intention, that intention being gathered from the particular statute strictly construed against the corporation which claims that its property is exempt from taxation, and it appearing clearly that the property claimed as exempt is essential and not barely convenient to the operation of the railroad. The statement made does not advance us very far, for the question of importance and difficulty which must be solved is as to what property is reasonably necessary to the proper operation of the railroad." Elliott on Railroads Vol. 2, Sec. 750. | The fact that a railroad used coal plant for a number of years in a manner to render it liable to taxation under statute did not require taxation of coal plant after its use had been so changed as to bring the property within the clause of the statute authorizing exemption of railroad properties fairly necessary to the reasonable construction and operation of the road. | How should a court construe a statute exempting property from taxation? | 046343.docx | LEGALEASE-00161966-LEGALEASE-00161967 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 23,876 | 9,029 |
| 20162 | Austin v. Alderman of Boston, 74 U.S. 694 | 371+2003 | The right of taxation, where it exists, is necessarily unlimited in its nature. It carries with it inherently the power to embarrass and destroy. | The right of taxation, where it exists, is necessarily unlimited in its nature. | Is the right of taxation necessarily unlimited in its nature? | 048345.docx | LEGALEASE 00161968 LEGALEASE 00161969 | Condensed, SA | 0.55 | 0 | 1 | 1 | 1 | |
| 20163 | Hanton v. Seagate, 102 Ga. App. 44 | 83J+705 | For the purposes of this case it makes no difference whether the instrument was negotiable in the hands of Stor or his assignee, the maker made two separate contracts in one, and could not object to two lawsuits. It has even been held that where a negotiable instrument is indorsed to two or more indorsees severally an action by one of the several indorsees is proper and the other several indorsees are made parties to the case. See Annotation 169 A.L.R. p. 1055, following Blake v. Weiden, 291 N.Y. 134 ; 51 N.E.2d 677 ; 149 A.L.R. 1050. But in case of no equity, if the debtor or obligor in the chose accepts or consents to the partial assignment, he is bound. Farmer's & Merchants' Bank v. Riley, 75, p. 1128; Graham v. Southern Ry. Co., 173 Ga. 573, 161 S.E. 123, 60A L.R. 407; Shearer v. Shearer, 137 Ga. 51, 72 S.E. 428. | Where note for $4,389.93 was payable to three payees and recited that interest of one of the payees in the note was $1,000 assignee of that payee could maintain an action against the maker for $1,000 without indorsement of the other two payees and without their being made parties to the action. Code, SS 3-110, 14-403, 14-412. | In an action by one of the indorsers severally are all other indorsees brought in as parties? | 009307.docx | LEGALEASE 00162050 LEGALEASE 00162051 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | |
| 20164 | Drake v. Hall, 68 Tenn. 282 | 208H+1174 | This brings us to the question of the effect of registration of the deed, assuming, as we have said, that the description of the property is sufficient to pass the title on the theory of a parol gift. If the mortgages and trusts consider this question we are settled by the case of Allen v. Bain et al., 2 Head, 108, and Kramer v. Carter, the operation of the statute as to registration is limited to the registration of mortgages, deeds of trust, and other instruments of writing, by which any title or interest may be conveyed, etc. … We have followed this view in the case of Kelly, Ex'r, v. Thompson, 2 Hum., 282, in the case of trusts the difference to the real consideration of the gift, whether good or bad … [text continues] … required is to bring it into action, can have no effect as notice of the title thus acquired, that is by mortgage or deed of trust. | An assignment in trust of negotiable paper or chose in action need not be registered, under the law relating to the registration of mortgages and trusts of personalty. | Is it necessary to register a chose in action? | 009324.docx | LEGALEASE 00162995 LEGALEASE 00162996 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | |
| 20165 | State v. De Armijo, 18 N.M. 646 | 313P+1110 | The Supreme Court of Michigan, in the case of Wilson v. Circuit Judge, 87 Mich. 493, 49 N.W. 869, 14 Am. St. Rep. 173, held that a woman could be appointed deputy county clerk, not an officer of the court, a ministerial. A woman was held eligible to election as a county clerk, under a constitutional provision which provided that no person shall be chosen or elected to any office of trust in this State, and who shall have not resided in this state one year. … [text continues] … this section shall be construed to prohibit women citizens of the United States. Section 1 of chapter 134, Sess Laws 1909, which provides that "No person is governed by this Chapter. Act of the Territory of New Mexico." … Section 4 provides: "It shall be lawful for every male citizen … not only citizens thereby imposed upon the right to vote or hold public office in the United States, including those recognized as citizens by the treaty with the Republic of Mexico, etc. | Section 1 of chapter 134, Sess Laws 1909, which provides that "No person is governed by this Chapter. Act of the Territory of New Mexico." *** shall be entitled to vote or hold public office in this Territory," refers to the original act of Congress creating the Territory of New Mexico, and the only limitation thereby imposed upon the right to vote or hold public office are that such rights shall be exercised only by citizens of the United States, including those recognized as citizens by the treaty with the Republic of Mexico, etc. | Is a woman eligible to hold the office of clerk? | 013247.docx | LEGALEASE 00164128 LEGALEASE 00164129 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | |
| 20166 | Matter of Fmpl. Seisel from Sales, 497 N.W.2d 829 | 156+51 10(3) | Although not articulated as such by appellants, the substance of their argument touches on doctrines of waiver and estoppel. "Waiver," which is the intentional relinquishment of a known right, rests on intention while "estoppel" rests on misleading conduct. Bothun v. Anheuser, Educ. Agency, 275 N.W.2d 744, 751 (Iowa 1979). Clearly, appellants have shown no formal waiver by the State of its right to enforce ch. 217, 1987 notice of forfeiture. With respect to any implied waiver of its right to pursue forfeiture, a party seeking to establish waiver has the burden of proof. National Bank of Waterloo v. Moeller, 434 N.W.2d 887, … [text continues] … (1966). Such act must be inconsistent with any other intention than waiver of the right asserted. Id. at 890. Mere passivity may not support waiver. | More passivity may not support waiver. | Can mere passivity support waiver? | Estoppel - Memo DRC – CDL_60.58.docx | ROSS-003197381 ROSS-003197382 | Condensed, SA | 0.95 | 0 | 1 | 1 | 1 | |
| 20167 | McMenamy v. Main, 686 S.W.2d 874 | 302+72 | Plaintiff relies upon the decision of the Kansas City Court of Appeals in Ralston Purina Company v. Swathes, 342 S.W.2d 840 (Mo.App 1960), wherein an appeal was allowed and wherein an increase in the amount of damages made after appeal from the justice to the circuit court was approved where plaintiff had proceeded in both the justice court and the circuit court on the theory of breach of warranty. "The amount in dispute, whether much or little, was no part of the cause of action, hence increasing the amount of the damage the cause of action." Id. at 847/42. We believe the opinion of the Kansas City Court of Appeals accurately reflects the more modern approach. It has been consistently held that under our contemporary code pleading, the prayer is not a part of a petition Lafranca v. Lafranco, 285 S.W.2d 504, 517 (Mo.1955); Salmons v. Dun & Bradstreet, 349 Mo. 498, 162 S.W.2d 245, 223 (1942); Stephenson v. McClure, 606 S.W.2d 208, 213 fn. 13 (Mo.App.1980); Household Finance Corporation v. Avery, 476 S.W.2d 165, 167 (Mo.App.1972). The latter case states an appropriate statement of the modern rule: "The character of a cause of action must, of course, be determined from facts stated in the petition and not by the prayer or the money prayer the action by the pleader. [citations omitted] | Under contemporary code pleading prayer is not part of a petition. | Is the prayer a part of the petition? | Pleading - Memo 644 - RMM.docx | LEGALEASE 00055546 LEGALEASE 00055547 | SA, Sub | 0.95 | 0 | | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20168 | Zimmerman v. Zimmerman, 175 Or. 585 | 134+62(2) | As used in the foregoing statute, the words "resident" and "inhabitant" are used interchangeably. Stewart v. Stewart, 117 Or. 157, 242 P. 852. At common law, residence and domicile are not synonymous. Residence indicates merely a factual place of abode. The difference between three conceptions, that of sojourn, residence, and domicil (not now including domicil by operation of law) is one purely of intention. To become a sojourner, no intention whatever is necessary, merely the fact of personal existence in the place. For residence there is an intention to live in the place for the time being. For the establishment of domicil the intention must be not merely to live in the place but to make a home there." 1 Beale on Conflict of Laws, " 10.3, p. 109. | The words "resident" and "inhabitant", as used in statute requiring plaintiff to be an inhabitant of state at commencement of divorce suit and for one year prior thereto, and providing that such residence should be sufficient to give court jurisdiction, are used interchangeably. ORS 107.060. | "Are the words ""inhabitant"" and ""resident"" not synonymous?" | Domicile - Memo 64 - C - NK_67143.docx | ROSS-003296617-ROSS-003296618 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 20169 | Reese v. Reese, 179 Misc. 665 | 135+1 | "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." (State of Texas v. State of Florida, 306 U.S. 398, 424, 59 S.Ct. 563, 576, 830, 83 L.Ed. 817, 121 A.L.R. 1179. (Italics mine.) Personal residence can exist distinct from a matrimonial domicile. Gould v. Gould, 235 N.Y. 14, 29, 138 N.E. 490. A person may have several residences but only one domicile.Dicey on Conflict of Laws, 1896 Ed., p. 95; Warren's Heaton on Surrogate's Courts, Vol. 1, p. 140, 6th Ed.; Matter of Newcomb's Estate, 192 N.Y. 238, 250, 251, 84 N.E. 950. | Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of "domicile", and personal "residence" can exist distinct from a "matrimonial domicile" and a person may have several residences, but only one domicile. | "Can one have several residences, but only one domicile?" | Domicile - Memo 68 - C - SJ.docx | LEGALEASE-00054105-LEGALEASE-00054106 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 20170 | Campbell v. State, 525 S.W.3d 465 | 110+1042.3(1) | In any event, there is clearly no merit to appellant's argument on this point. In Davis v. State, 93 Ark. App. 443, 220 S.W.3d 248 (2005), we addressed this issue and held that the defendant's double-jeopardy rights were not offended by application of both the firearm-enhancement and the defendant's underlying aggravated-assault conviction. And in Scott v. State, 2011 Ark. App. 296, 2011 WL 1495996, we found no merit to the appellants' claim that aggravated robbery and the felony-enhancement statute required exactly the same proof and therefore constituted double jeopardy. In rejecting that argument, we wrote: Contrary to appellants' argument, the firearm enhancement under section 16"90"120 is not a substantive criminal offense; rather, it is a sentencing enhancement specifically intended to provide additional punishment for the use of a firearm during the commission of the underlying felony itself. Thus, the enhancement provision does not violate section 5"1"110(a)'s proscription against being convicted of more than one "offense" under the circumstances set out in the statute, and appellants' double-jeopardy rights were not violated. | Defendant failed to preserve appellate review of argument that firearm sentencing enhancement imposed by jury should be set aside because it constituted double jeopardy, in trial for first-degree murder in which jury found defendant guilty of manslaughter, where defendant did not object or raise a double jeopardy argument after jury returned its verdict and sentence enhancement at trial and instead first raised issue four days later in a motion for new trial. U.S. Const. Amend. 5; Ark. Const. art. 2, S 8; Ark. Code Ann. SS 5-1-110(b), 5-10-104(a)(3), 16-90-120(a). | Is the double-jeopardy clause offended when firearm enhancement law is used to enhance a defendant's sentence? | 014939.docx | LEGALEASE-00165487-LEGALEASE-00165488 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 20171 | In re Shulista, 451 B.R. 867 | 51+2972 | Interstate Grain's arguments here encapsulate the tension between the agricultural supply dealer lien scheme and Revised Article 9 (adopted in Iowa in 2001). Agricultural liens are created by statute, not contractual security agreements. White and Summers, " 30"9, at 74"75. Like almost all statutory liens, they were previously treated outside the UCC. Id. at 75. However, agricultural liens are now (through 2001 amendments) included in the scope of Revised Article 9 of the Iowa UCC. Iowa Code " 554.9109(1)(b). Agricultural liens, however, remain distinct from security interests created by consensual security agreements. Iowa Code " 554.9102(1)(3). As such, "agricultural liens are only partially incorporated into Article 9." Stockman Bank of Montana, 180 P.3d at 1134. For this reason, a leading treatise has noted that "the agricultural lien has one foot in Article 9 and one foot outside of it."White & Summers, " 30"9, at 75. The method of creating and perfecting agricultural liens often looks beyond Article 9 to the agricultural lien statute itself. Similarly, the agricultural lien statute refers to and utilizes the Article 9 scheme except where it notes otherwise. | While agricultural supply dealer, by failing to take steps required to perfect its agricultural supply lien except as to feed supplied between date of debtor-farmers' initial purchase of feed and its filing of financing statement 31 days later, held only an unperfected lien as to feed supplied thereafter, which was not entitled to superpriority over prior, perfected security interest of bank that provided financing for debtors pig farming operation, hearing would be scheduled to determine whether, because it supplied feed that increased value of pigs securing bank's claim, especially after notifying bank of its intent to continue supplying debtors with feed over the next five month, dealer was entitled to some sort of equitable lien that might have priority vis-a-vis bank for value of feed that it supplied more than 31 days after debtors' initial feed purchase. I.C.A. S 570A.4. | Are agricultural liens not security interests under the Uniform Commercial Code (UCC)? | 042799.docx | LEGALEASE-00166022-LEGALEASE-00166023 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 20172 | United States v. Fuentes, 107 F.3d 1515 | 350H+635 | This principle underlies the Supreme Court's recent opinion in Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), in which the Court held that consideration of prior convictions as relevant conduct in calculating a guideline sentence does not violate the Double Jeopardy Clause. The Court stated: [Section] 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in situations [where a defendant is prosecuted in more than one jurisdiction for the same criminal course of conduct] with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding). | Defendant's state convictions of stealing automobiles and selling their parts were relevant conduct under Sentencing Guidelines in federal prosecution for similar offenses, even though different automobiles were involved in state and federal convictions, and thus federal sentence was required to run concurrently with state sentences unless court imposed upward departure; offenses were committed with clear regularity and within very close time period, offenses shared purpose of making money by selling stolen parts, and offenses shared identical modus operandi. U.S.S.G. SS 1B1.3(a)(2), 5G1.3(b), 18 U.S.C.A. | Does the consideration of prior convictions in sentencing implicate or violate the Double Jeopardy Clause? | Double Jeopardy - Memo 1173 - C - SHB_68247.docx | ROSS-003280874-ROSS-003280875 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 20173 | Stotler & Co. v. Commodity Futures Trading Comm'n, 855 F.2d 1288 | 83H+4.1 | Stotler's challenge to its liability for Count III-that Allen was not required to register as an "associated person"-requires wading into the Act's registration scheme. "Registration is the kingpin in this statutory machinery, giving the Commission the information about participants in commodity trading which it so vitally requires to carry out its other statutory functions of monitoring and enforcing the Act."Flaxman v. CFTC, 697 F.2d 782, 787 (7th Cir.1983) (quoting CFTC v. British American, 560 F.2d 135, 139-40 (2d Cir.1977), cert. denied, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978)). | If a person acts as a salesman and solicits orders for a particular futures commission merchant, he may be an "associated person" with that merchant, within meaning of statute requiring registration of such persons with the Commodity Futures Trading Commission, even if he places some trades with other merchants; there is no requirement of "exclusivity" under the statute. Commodity Exchange Act, S 4k, as amended, 7 U.S.C.A. S 6k. | What is the kingpin in this statutory machinery of Commodity Exchange Act? | 013599.docx | LEGALEASE-00167039-LEGALEASE-00167040 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,073 |
| 2D174 | Keith v. Terano and JE, Feldman Co., 190 So. 2d 616 | 20>13 | Boundary disputes are subject to a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession. In the past there has been some confusion in this area, but the Court has clarified the distinction in Sims v. Reynolds. Butler, 165 So.2d 654 (Ala. 1974); Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975); Smith v. Brown, 282 Ala. 528, 213 So.2d 374 (1968); Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964); Duke v. Wimberly, 245 Ala. 639, 18 So.2d 544 (1944); Smith v. Bachus, 201 Ala. 534, 78 So. 898 (1918). But see, Davis v. Grant, 173 Ala. 6, 55 So. 210 (1911). See also Code 1975, §6-5-200(c). The rule governing this type of case is, in actuality, the form of statutory adverse possession. See Code 1975, §6-5-200(c); Berry v.Snyder, 288 Ala. 471, 262 So.2d 593 (1972). | Statutory adverse possession requires same elements as adverse possession by prescription, that is, actual, exclusive, open, notorious and hostile possession under claim of right, but if adverse possessor holds under color of title, he need not show possession of entire parcel from descend act or devise from possessor, he may acquire title in ten years, as opposed to 30 years required for adverse possession by prescription. Code 1975, §6-5-200. | Can a boundary line action include an adverse possession claim? | BATE00239.docx | LEGALEASE 00073493 LEGALEASE 00073494 | Condensed, Order, SA, Sub | 0.58 | 1 | 1 | 1 | 1 | |
| 2D175 | Virginia-Carolina Chem. Co. v. Rachels, 41 Ga. App. 221 | 34>22 | The chose in action sued on, being one involving a property right, was assignable. Sullivan v. Curling, 149 Ga. 96, 99 S. E. 533, S.A. L. R. 124. | Chose in action involving property rights held assignable. | Can a chose in action be assigned? | 07356.docx | LEGALEASE 00077620 LEGALEASE 00077622 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | |
| 2D176 | Hughes v. Beall, 264 S.W. 171 | 34>8 | The vested interest of James Richard Hughes passed, as a property right, to the trustee in bankruptcy, and is a subject-matter of sale by him. In re Burgin's Estate (D. C.) 237 Fed. 507; Hisle v. Meart Bros. (Tex.) 211 Fed. 841, 147 C. C. A. 535; In re Mahaney, 111 Fed. 498, 49 C. C. A. 429; In re Wood (D. C.) 210 Fed. 143. The expectancy of an heir is the subject-matter of a sale and conveyance. Hale v. Hollon, 90 Tex. 427, 39 S. W. 287, 36 L. R. A. 75, 59 Am. St. Rep. 819. | The expectancy of an heir is a subject matter of a sale and conveyance. | Is the subject matter of an heir a sale and conveyance related to the expectancy of an heir? | 05013.docx | LEGALEASE 00078089 LEGALEASE 00078090 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | |
| 2D177 | Lewis v. United States, 10 A.3d 646 | 110>59(1) | In differentiating between the offenses of arson and MDP, we have held that endangerment of human life is a necessary element of the crime of arson. Ingram v. United States, 592 A.2d 464, 467 (D.C. 1991), along with other grounds by Robinson v. United States, 608 A.2d 115, 116 (D.C. 1991). The offense of malicious destruction of property protects against injury or harm merely to property. "whereas, in contrast, it involves conduct endangering human life and offending the security of habitation or occupancy." Id. Wise compared to the distinction in Poulin v. United States, 909 A.2d 178, 163 (W.D.C. 2006), in which we held that so broad as to render the concept meaningless. To prove a defendant charged with arson "acted intentionally, and not merely negligently or accidentally, while consciously disregarding the risk of endangering human life and offending the security of habitation or occupancy." Id. (citing Ingram, supra, 460 A.2d at 175 (emphasis added)). see also Gaines v. United States, 2d A.3d 882, 870 (D.C.1997) (holding that, Thus, based on our prior decisions, it is clear that to convict a defendant of arson, the government must prove his malicious by showing that defendant intentionally set the fire and in doing so disregarded a known and substantial risk that his actions would endanger human life. | Panel of Court of Appeals was bound by prior panel decisions recognizing a "risk to human life" requirement for the crime of arson, and it would be inappropriate to consider removing or eliminating that element as a panel, rather than when sitting en banc. D.C. Official Code, 2001 §§ 22-301. | Is endangerment of human life a necessary element of arson? | 06365.docx | LEGALEASE 00078416 LEGALEASE 00078418 | Condensed, SA, Sub | 0.78 | 1 | 1 | 1 | 1 | |
| 2D178 | State v. Ward, 172 Conn. 163 | 110>138(1) | The information in the present case charged the defendant with embezzling $88.25 on or about November 25, 1970. The first test of the admissibility of any evidence is whether it is relevant. Our decisions have emphasized the principle that the court must be allowed wide discretion in its rulings on the relevancy of evidence. State v. Towns, 165 Conn. 61, 64, 327 A.2d 576; State v. Lombardo, 163 Conn. 241, 243, 304 A.2d 36; Johnson v. Newell, 160 Conn. 269, 276, 277, 278 A.2d 776; State v. Carnegie, 158 Conn. 264, 273, 259 A.2d 628. "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Federal Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77, 82, 291 A.2d 715, 718." Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case; however, proffered evidence must render the existence of a material fact in issue more certain or more probable than it would be without the evidence. Federal Department Stores, Inc. v. Board of Tax Review, supra; State v. Ralerger, 140 Conn. 57, 167 A.2d 245; see McCormick, Evidence § 248 (2 Ed. 1 972). We held to see how evidence that the defendant had paid $4000 cash for a power boat in 1969 logically increases the probability that he embezzled $88.25 in 1970 where evidence of sudden affluence may be relevant where it appears at or subsequent to the time of the alleged crime of embezzlement. Mandatory v. United States, 262 F.2d 624 (6th Cir.), cert. denied, 356 U.S. 921, 78 S. Ct. 1049, 3 L. ed cases cited therein. It appears from the transcript of the trial that the sudden acquisition of affluence occurred during a period of time preceding November, 1970, significantly more than the $88.25 alleged in the information.) This suspicion cannot alter the fact that the state only | First test of admissibility of any evidence is whether it is relevant. | What is the test of admissibility of evidence in a offence of embezzlement? | 10812.docx | LEGALEASE 00081445 LEGALEASE 00081447 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |

Appendix D

| ROW# | Judicial Opinion | WKNS Topic + Key Number | Copied Opinion Text | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 20179 | Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Servs., 2016 (4 App Dist) 131699 | 1661 | Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. | Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. Subrogation to the rights of the insurer against the party at fault under the equitable doctrine that an insurer pays a loss which in equity and good conscience ought to have been paid by the party responsible for the loss. "State Farm General Insurance Co. v. Stewart, 288 Ill.App.3d 678, 224 Ill.Dec. 310, 681 N.E.2d 821 (1997)" (quoting Dix Mutual Insurance Co. v. LaFramboise, 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622 (1992)). | What is the object of subrogation? | 06320.docx | LEGALEASE 00083916 - LEGALEASE 00083940 | Condensed, SA | 0.89 | 0 | | 1 | | |
| 20180 | Mizioer v. Conway, 45 Ariz. 463 | 1661 | Whether doctrine of subrogation applies depends on particular circumstances. | The first question involved in this appeal is the applicability of the right of subrogation as to the remedy made by the firm the respective roles above set forth. Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. It is creature of equity, and as was adopted from the Roman and civil law, the common law. Its purpose is the prevention of injustice and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience should pay it. It rests upon the principle that substantial justice should be attained, regardless of form, and is the mode which equity adopts to compel the ultimate payment of a debt which in equity and good conscience ought to be paid. The difficulty arises in its application to the innumerable complications of business, and no general rule can be laid down which will afford a test in all cases for its application. Whether it is applicable or not depends upon the particular facts and circumstances of each case as it arises. This remedy has been applied most extensively in the prevention of frauds, in jurisprudence, and the modern tendency is to extend its use rather than to restrict it. Which was originally limited to transactions between principals and sureties, it has now in a very liberal application, been enlarged being modified to meet the circumstances of cases as they arise. The general rule of equity is to subrogate a surety to the rights of the creditor, and subrogation is that he who seeks equity must do equity, and subrogation can be claimed only when a reasonable basis exists for it. There are three elements: (1) A valuable right; (2) a person who owes the right; and (3) a person who seeks to be subrogated in the benefit of that right. All cases can be placed under one of these three elements. The remedy of subrogation is never of mere legal right but is dependent upon the equities and circumstances of the particular case, and its application is controlled entirely by principles of equity. The claim on the part of him in whose place subrogation is sought, and some third person having a better equity, it will not be enforced. | Whether doctrine of subrogation applies depends on particular circumstances. | 05090.docx | LEGALEASE 00083720 - LEGALEASE 00083722 | Condensed, SA, Sub | 0.97 | 0 | | 1 | 1 | |
| 20181 | Navajo Nation v. Superior Court of State of Wash. for Yakima Cnty., 47 F. Supp. 2d 1233 | 205m138 | The ICWA defines "Indian custodian" as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, or control has been transferred by the parent of such a child." 25 U.S.C. s 1903(6). To be an "Indian custodian" requires that the biological parent transfer legal custody of it, or that it would have been in their physical custody. | The ICWA defines "Indian custodian" as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, or control has been transferred by the parent of such a child." 25 U.S.C. s 1903(6). | Who can be described as an "Indian custodian"? | 00823.docx | LEGALEASE 00083990 - LEGALEASE 00083991 | Condensed, SA, Sub | 0.39 | 0 | | 1 | | 1 |
| 20182 | Tulsa Prof'l Collection Servs. v. Pope, 485 U.S. 478 | 92×3937 | Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S., at 314, 70 S.Ct., at 657, established that state action affecting property must generally be accompanied by notification of that action: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In the years since Mullane the Court has adhered to these principles, balancing the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." Said due process requires notice by mail or other means as certain to ensure actual notice if the party's name and address are reasonably ascertainable. | Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S., at 314, 70 S.Ct., at 657, established that state action affecting property must generally be accompanied by notification of that action: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In the years since Mullane the Court has adhered to these principles, balancing the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." Said due process requires notice by mail or other means as certain to ensure actual notice if the party's name and address are reasonably ascertainable. | How is fairness of a method of notice determined? | 07998.docx | LEGALEASE 00089163 - LEGALEASE 00089165 | Condensed, SA, Sub | 0.42 | 0 | | 1 | | 1 |
| 20183 | Pavelecky v. McCarver, 595 P.3d 297 | 307A×581 | The superior court has discretion to dismiss cases that are not diligently prosecuted. Cooper v. Odom, 6 Ariz.App. 466, 469, 433 P.2d 646 (1967); see also, Gerow v. Covill, 192 Ariz. 9, 14, 960. | More delay can be the basis of dismissal? | 10284.docx | LEGALEASE 00095682 - LEGALEASE 00095683 | SA, Sub | 0.71 | 0 | 1 | | | 1 |
| 20184 | Mulberks Corp. v. McGuinness, 154 So. 3d 501 | 188×291 | An order dismissing a complaint for failure to state a cause of action is reviewed de novo. Stabile v. Plantation Gen. Hosp. Ltd. P'ship, 988 So.2d 683 (Fla. 4th DCA 2008). In considering a motion to dismiss, the trial court "is required to confine itself strictly to the allegations within the four corners of the complaint." Id. (quoting Health Application Systems, Inc. v. Hartford Life and Accident Ins. Co., 381 So.2d 294, 297 (Fla. 1st DCA 1980)). In considering a motion to dismiss, the trial court is limited to the four corners of the complaint, must accept all allegations in the complaint as true, and must draw all reasonable inferences in favor of the pleader. "Fox, Inc. Co., Ltd. v. Beelman, 895 So.2d 587, 590 (Fla. 3d DCA 2004). | "Well a motion for involuntary dismissal admit the legal sufficiency of the complaint, all well-pleaded facts and all reasonable inferences therefrom?" | 09905.docx | LEGALEASE 00095906 - LEGALEASE 00095907 | Condensed, SA, Sub | 0.37 | 0 | | 1 | 1 | |

Appendix D

3553

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,973 | 22,876 | 9,029 |
| 2016E | Gaston v. Kazs, 996 F. Supp. 67 | 393+553 | Kazs instead argues that the Bureau's action is out of the type which is reviewable more generally under the APA. The Act provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. 704. In particular, Kazs contends that a breach of contract action is "one for which a statute provides a remedy" and that the United States District Court of Federal Claims has jurisdiction over "any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. 1491(a)(1), and further district courts have concurrent jurisdiction over such a claim if it does "not exceed[] $10,000 in amount." Id. 1346(a)(2). | Administrative Procedure Act (APA) provides allowing for suit by person aggrieved the agency action does not apply to breach of contract actions against government. 5 U.S.C.A. §§ 702, 704. | Does the Administrative Procedure Act provide judicial review of bureau actions? | 004489.docx | USGALEX6 00116425-USGALEX6 00116426 | Condensed, SA, 0.74 | 0 | 1 | 1 | 1 | 1 |
| 2016L | Farman v. Farman, 25 Wash. App. 896 | 253+1081 | Our Supreme Court, from an early date, has held that the spouse who does not commit the tort cannot be held personally liable. See Werner v. Werner, 84 Wash. 2d 494, 119 P. 2d 714 (1941), and cases cited. The legislature expressed the same view when, in 1972, it amended the statutes governing community property. Formerly, the husband's property was insulated from liability for injuries committed by his wife. RCW 26.16.200 now provides for all injuries committed by a married person, there shall be no recovery against the separate property of the other spouse unless in cases when there would be joint responsibility if the marriage did not exist if implied under Sec. of this chapter. Community Property Law in Washington, 49 Wash L. Rev. 729, 834 (1974). | The spouse who does not commit the tort cannot be held personally liable. West's RCWA 26.16.190. | Is a spouse liable for the torts of the other spouse? | 004427.doc | USGALEX6 00116501-USGALEX6 00116502 | Condensed, SA, Sub 0.87 | | 1 | 1 | 1 | 1 |
| 2016T | People v. Mitchell, 132 Cal. App. 3d 389 | 203+509 | Facts similar to ours appear in Comrs. v. Goldberg (1977) 373 Mass. 249, 366 N.E.2d 744. Here the court faced a statutory death penalty but as to the common law definition provided until this case. The trial judge charged the jury on both murder and man slaughter as a unlawful on appeal following the form and Comrs. and a California adopted the common law definition of death, and similarly in case it is an urgent measure providing: "A person shall be pronounced dead if it is determined by a physician that the person has suffered a total and irreversible cessation of brain function. There shall be independent confirmation of death by another physician. Nothing in this chapter shall prohibit a physician from using other usual and customary procedures for determining death or the exclusive basis for pronouncing a person dead (Health & Saf. Code, 7180.) | When there is no statutory law defining death, courts may apply common law definition of death when there is no statutory definition? West's Ann Health & Safety Code § 7180. | Can the court accept common law definition of death when there is no statutory definition? | 002249.docx | USGALEX6 00119309-USGALEX6 00119310 | Condensed, SA, Sub 0.84 | | 1 | 1 | 1 | 1 |
| 2016U | Fischer v. Fischer, 197 S.W.3d 98 | 289+934 | For it is by a brief explanation of partnership dissolution is necessary. "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." "Dissolution is merely the commencement of the winding up of the business." The partnership continues for the limited purpose of winding up the business. "[D]issolution designates the point in time when the partners cease to carry on the business together; termination is the point in time when all the partnership affairs are wound up; winding up, the process of settling partnership affairs after dissolution." The right to dissolve is inseparable from the incident to every partnership, and therefore the right to dissolve is inseparable from the partnership. | Right to dissolve is inseparable incident to every partnership, and there can be no indissoluble partnership. | Do dissolvable partnership exist? | 002006.docx | USGALEX6 00128951-USGALEX6 00128952 | Condensed, SA | 0 | 1 | 0 | 1 | |
| 2016V | Sukenville v. Adams, 471 La. 3d+4823 Ann. 68 | | The plaintiff's appeal is supplement of a former action that has been noticed Code 5183, in which the facts are succinctly stated. The order of appeal was taken from a decree of the lower court which discontinuing the defendant's having been rendered against plaintiff on the principal of plaintiff's appeal to a suit to tax costs, and have execution to issue against the defendant therefor. It appears from our previous opinion that the plaintiff sought on one for divorce from the defendant on the ground of adultery; that the wife reconvened, denying and demand of the former, and by reconventional demand asked for separation from bed and board against her husband, the latter voluntarily discontinued her reconventional demand, and thus left matters in statu quo. The contention of the appellant is that, in this situation of the case when it was entered into the court of first instance, the defendant could not legally withdraw her reconventional demand to his prejudice, or, in other words, the reconventional demand having been once finally met and decided and the court rendered them once rendered before having maintained on the reversal thereof, and the remanding of the cause for a special purpose, the right of the plaintiff to have a new trial, to introduce his evidence, and to have judgment thereon on rendered in his favor in the | A defendant, whose judgment on a reconventional demand has been reversed, and the case remanded, may discontinue same; final judgment having been rendered against plaintiff on the principal demand, and that judgment having been affirmed on appeal. | Can a plaintiff discontinue his suit at any time prior to rendition of judgment? | 024960.docx | USGALEX6 00129325-USGALEX6 00129327 | Condensed, SA | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,029 |
| 20190 | United States v. Addonizio, 451 F.2d 49 | 1641-22 | Even assuming arguendo that the appellants are correct as to the state of the evidence and as to the instant exclusivity of the remedies we have concluded that no error was committed, for the court delivered an adequate charge on the legal question involved. As outlined in 18-A, supra, the essence of the crime of bribery is voluntariness, while the essence of extortion is duress. People v. Dioguardi, supra, footnote. Paramount, supra. Although the court did not mention the word "bribery" in its charge, it adequately set forth the characteristics distinguishing bribery from extortion. There was no need to instruct in detail as to an offense for which the defendants were not on trial. Bianchi v. United States, 219 F.2d 182 (8th Cir. 1955). The court charged that the jury had to find that the defendants had "wrongfully used actual fear * * * in order to induce Constad to pay them money * * * [i]t does not matter whether the alleged demands made under some form of compulsion. There is no crime under the Hobbs Act. The mere voluntary payment of money, unaccompanied by the [fear] of economic loss, would not constitute extortion." (emphasis supplied) This charge was entirely fair and adequately informed the jury of the issue before them. | Essence of crime of bribery is voluntariness while essence of extortion is duress. | What is the difference between the essence of bribery and the essence of extortion? | Bribery - Memo #655 - C-CS.docx | ROS-00328771 ROS-00328772 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 20191 | Read v. Patterson, 79 Tenn. 430 | 3034-74 | The fifth and sixth are exceptions of the character of said named exception, and are amenable. The seventh and last exception is because the official character of the justice taking the deposition is not shown in the caption or certificate. The form in this case, which does not contain any recital in the caption or certificate of the official character of the officer taking the deposition, is insufficient if that officer was a justice in the signature of the officer as it does in this case at the end of his certificate. | Neither the caption nor certificate need set forth the official character of the magistrate who takes a deposition; if his official character appears in his signature. | Should a deponent sign at the end of the deposition? | 03487.docx | LEGALEASE-00180574 LEGALEASE-00180575 | Condensed, SA | 0.69 | 0 | 1 | | 1 | |
| 20192 | United States v. Quinn, 514 F.2d 134 | 9650 | The court also hears our view that, in order to establish the quid pro quo essential to proving bribery, "the government need not show that the defendant actually intended to make payments to the benefit of specific official acts [or omissions]." United States v. Jennings, 160 F.3d 1006, 1014 (6th Cir.1998). In Jennings, the conviction was not the result of federal programs bribery under 18 U.S.C. "666(a)(2) for giving a series of cash payments to a city official responsible for awarding jobs renovating vacant housing units. The official had already on the memo, the official steered contracts to Jennings worth hundreds of thousands of dollars. At no time did the bribery conviction, the Court of Appeals emphasized that bribery required an intent to effect an exchange, but that "each payment need not be correlated with a specific official act. ... In other words, the intended exchange in bribery can be "this for those" or "these for those," not just "this for that."" Id. at 1014 (internal citation omitted). Thus, bribery is accomplished through an ongoing course of conduct, so long as evidence shows that the "favors and gifts flowing to a public official [are] in exchange for a pattern of official actions favorable to the donor." Id. (emphasis in original) (internal quotation omitted). | Taken as a whole, jury instruction that described crime of bribery for purposes of charges of honest services mail fraud that were based upon former mayor's alleged participation in bribery scheme accurately set forth applicable law when instruction explained that bribe required some specific quid pro quo, and specifically that a bribe required some action taken by payment giver... | "Can the intended exchange for bribery only be "this for that"?" | Bribery - Memo #805 - C-18.docx | ROS-00328732/ROS-00328732) | Condensed, SA, Sub | 0.42 | 0 | 1 | | 1 | |
| 20193 | Isaacson v. Whitman, 265 Or. 612 | 484+17(3.8) | We also conclude that the issue of defendant's negligence was for the jury. The privilege of having the right of way is not absolute. One having such privilege continues to have a duty to exercise due care. | Privilege of having right of way at uncontrolled intersection is not absolute, and one having the privilege continues to have a duty to exercise due care. | "In case of right of way, does a duty of care subsist?" | 019997.docx | LEGALEASE-00180664 LEGALEASE-00180665 | Condensed, SA | 0.23 | 0 | 1 | | 1 | |
| 20194 | Sharpe v. Gish, Sec. Int'l., 746 F.Supp. 2d 1772 | 21+9 | This argument is a novel one. After all, the Court routinely reviews and considers unsworn declarations on summary judgment, and it greatly prefers that formal or handwritten declarations that may be officially signed and promulgated. The Court does not recall ever holding an objection that "1784 mandates execution of any affidavit whose endorsement becomes impossible or subject to deliberate interpretation" when a defendant is correct, then the entire face of this District Court has been doing (revising list of New years and the judge) of this District Court have erred numerous times by reviewing these declarations. More to the point, applicable authorities do not support GGI position. Section 1746 does not use the word "handwritten" nor does this position. Defendant appeals court has rejected the interpretation of the statute that GGI proffers. See Williams v. Browman, 981 F.2d 901, 905 (6th Cir.1992) ("[W]e believe that the stated purpose of 28 U.S.C...1746 is accomplished whether the verification statement is handwritten or typewritten and that decision simply mentions in passing that the presented law does provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury." Maro v. Higgins, 146 Fed.Appx. 624, 626 (11th Cir. 2005) (Emphasis added). Moreover, a handwritten signature and date (which these declarations have) would be sufficient to satisfy the literal interpretation in bite of "1746 that a "handwritten averment, signed and dated." In the Eleventh District, a handwritten signature and date (which these declarations have) would be sufficient to satisfy the literal language in the Eleventh Circuit would have used more handwritten words to construe "1746 as establishing the use of typewritten declarations in | Rule regarding unsworn declaration did not require that entire declaration be handwritten; declaration providing a handwritten date and signature was sufficient. 28 U.S.C.A. § 1746. | Does a statement require a handwritten averment (which is signed and dated to be true under the penalties of perjury? | Affidavits - Memo 51 - _UnconflrmEdyDwnR_V_EtphPerp3L_3-GD.docx | ROS-00000219-ROS-00000220 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20195 | City of Mesa v. Home Builders Ass'n of Cent. Arizona, 111 Ariz. 29 | 371+2001 | It is true there is no language in Mesa's Charter which specifically authorizes the licensing of businesses as to the charters of Phoenix and Tucson, See Home Builders Association v. Riddel, Supra, but we think the language used when fairly accorded its plain meaning confers the power. It is elementary that the entire matter of taxation is statutory and does not existapart from statute, Board of Commissioners of Montgomery County v. Allen, 175 Kan. 460, 264 P.2d 916 (1953), overruled on other grounds, Phillips Petroleum Company v. Moore, 179 Kan. 482, 297 P.2d 183 (1956). Arizona's statute s 9-240(B)(18)(a) does expressly provide for the tax set forth in Mesa's Ordinance No. 748. The direct reference in the Charter to Article IX of the Arizona Statutes does not in our opinion mean that the tax is implied. | Matter of taxation is statutory and does not exist apart from statute. | Does the entire matter of taxation exist apart from statute? | 046575.docx | LEGALEASE-00166575-LEGALEASE-00166576 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 20196 | Salomon Forex v. Tauber, 8 F.3d 966 | 83H+6.1 | Tauber owes Salomon Forex the $26 million amount as a result of speculation on options and futures in foreign currencies. While Tauber claims his transactions with Salomon Forex are unenforceable because they did not comply with the CEA, the Treasury Amendment to the CEA, in exempting off-exchange transactions "in foreign currency," exempts off-exchange sales of options and futures in foreign exchange from CEA regulation. The trading between Salomon Forex and Tauber was off-exchange, involving individually negotiated deals between sophisticated traders, and was therefore excluded from CEA coverage by the Treasury Amendment. Tauber's argument that his trading with Salomon Forex was illegal under state law prohibiting bucket shops is equally ineffective because his trading involved legally enforceable futures and option contracts, not sham transactions. Finally, there is no bona fide dispute as to the amount of Tauber's indebtedness or the existence of any counterclaim to its enforcement. The judgment entered in favor of Salomon Forex is, therefore, affirmed. | Individually negotiated foreign currency option and futures transactions between sophisticated, large-scale foreign currency traders come within foreign currency exclusion to coverage of Commodity Exchange Act. Commodity Exchange Act, S 2(a)(1)(A), as amended, 7 U.S.C.A. S 2. | Does Commodity Exchange Act cover deals | 013648.docx | LEGALEASE-00166987-LEGALEASE-00166988 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 20197 | In re Ryan N., 92 Cal. App. 4th 1359 | 368+2 | Neither suicide nor attempted suicide is a crime under the criminal statutes of California or any other state. (In re Joseph G. (1983) 34 Cal.3d 429, 433, 194 Cal.Rptr. 163, 667 P.2d 1176; Donaldson v. Lungren (1992) 2 Cal.App.4th 1614, 1624, 4 Cal.Rptr.2d 59; Criminal Liability for Assisting Suicide (1986) 86 Colum. L.Rev. 348, 350.) "A majority of states, however, impose criminal penalties upon one who assists another to commit suicide. [Citations.] One reason for the existence of criminal sanctions for those who aid a suicide is to discourage those who might encourage a suicide to advance personal motives. [Citation.] Another reason is the belief that the sanctity of life is threatened by one who is willing to participate in taking the life of another, even at the victim's request. [Citation.] A third justification is that although the suicide victim may be mentally ill in wishing his [or her] demise, the aider is not necessarily mentally ill. [Citation.] ["] These reasons justify a criminal statute punishing the aiding and encouraging of suicide, although suicide itself is not illegal. The state's interest in such a situation involves more than just a general commitment to the preservation of human life.... Third parties, even family members, do not always act to protect the person whose life will end." (Donaldson v. Lungren, supra, 2 Cal.App.4th at p. 1624, 4 Cal.Rptr.2d 59.) | Neither suicide nor attempted suicide is a crime under the criminal statutes. | Is attempted suicide a crime? | Suicide - Memo 8 - AKA.docx | ROSS-003284143-ROSS-003284144 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 20198 | Oliver v. Coffman, 112 Ind. App. 507 | 302+367(6) | The line of demarcation between "ultimate facts" or "conclusions of fact", and "conclusions of law", is quite often shadowy and indistinct, and it is difficult, if not impossible, to formulate a definition that will distinguish a conclusion of law from a conclusion of fact or from an ultimate fact. Sometimes an allegation which ordinarily would be considered an allegation of fact will be regarded as a legal conclusion when based upon other allegations. An example is an allegation of the ownership of specific property. While considered an ultimate fact, if standing alone, it will be considered a conclusion of law where the pleader sets forth a claim of title, and upon the claim so pleaded alleges ownership. Wagner v. Law, 3 Wash. 500, 28 P. 1109, 29 P. 927, 15 L.R.A. 784, 28 Am.St.Rep. 56. | Trial court in ruling on a motion to make an allegation more specific should determine whether such allegation considered with other allegations is sufficiently definite and furnishes adverse party with sufficient information of opponent's claim to adequately prepare and present his case, instead of trying to determine whether such allegation states a conclusion of fact or of law or an ultimate fact. | Can ultimate facts and conclusions of law be distinguished? | Pleading - Memo 116 - RMM.docx | ROSS-003284797-ROSS-003284798 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 20199 | Landfill v. Pollution Control Bd., 74 Ill. 2d 541 | 1.49E+21 | The Board, which was created by the Act (Ill.Rev.Stat.1975, ch. 111 1/2, par. 1005(a)), serves both quasi-legislative and quasi-judicial functions within a statutorily established framework. It must determine, define, and implement the environmental control standards and may adopt rules and regulations (Ill.Rev.Stat.1975, ch. 111 1/2, pars. 1005(b), 1026, 1027). It has authority to conduct hearings upon, among other specified matters, complaints charging violations of the Act or of regulations thereunder and upon petitions for review of the Agency's denial of a permit as well as authority to hold other such hearings as may be provided by rule (Ill.Rev.Stat.1975, ch. 111 1/2, par. 1005(d)). It may adopt substantive regulations and procedural rules to accomplish the purposes of the Act (Ill.Rev.Stat.1975, ch. 111 1/2, pars. 1026, 1027). | Environmental Protection Act gives Environmental Protection Agency function of issuing permits and only gives Pollution Control Board authority to hold enforcement hearings only on separate citizen or agency complaints which do not challenge agency's performance of its duties, but, rather, allege that the activity contemplated causes or threatens pollution. S.H.A. ch. 1111/2, SS 1002(a)(v), (b), 1004(a, c, d, f-h), 1005(a, b, d), 1026, 1027, 1030, 1031(a-c), 1039, 1039(a), 1040. | Does the Pollution Control Board perform both quasi-legislative and quasi-judicial functions? | Environmental Law - Memo 43 - AKA.doc | ROSS-003289139-ROSS-003289140 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 20200 | In re AppOnline.com, 321 B.R. 614 | 8.30E+10 | The general rule is that the laws of the state where a note is executed and payable govern the interpretation of that note. See United States v. Guaranty Trust Co., 293 U.S. 340, 346"47, 55 S.Ct. 221, 79 L.Ed. 415 (1934); United States v. Pearson, No. 60 CV 690, 1967 U.S. Dist. LEXIS 10762, at (S.D.N.Y. May 18, 1967). When a note is executed in one state and payable in another, it is governed as to its nature, validity, interpretation and effect by the laws of the state where it is made payable. (citing Beadall v. Moore, 199 A.D. 531, 533"34, 191 N.Y.S. 826 (1st Dep't 1922)); see also Farmers' Trust Co. v. Bradshaw, 137 Misc. 203, 205, 242 N.Y.S. 598 (N.Y.City Ct.1930). Therefore, since both of the mortgage notes in question are payable in New York, the New York State UCC applies. | Under New York choice-of-law rules, general rule is that laws of state where note is executed and payable govern the interpretation of that note. | "In re AppOnline.com, Inc., 321 B.R. 614." | Bills and Notes - Memo 761 - KC_58512.docx | ROSS-003296314 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 21,876 | 9,079 |
| 20001 | Mitch v. Dreamworks Animation SKG Inc., 2016 L Supp. 54851 | 25T+143 | Additionally, the Court notes that Defendants' equitable estoppel argument fails to recognize the underlying purpose of the doctrine in this context: to prevent signatories to a contract with an arbitration clause from "simultaneously invok[ing] the duties and obligations ... under the [agreement] ... while seeking to avoid arbitration." Kramer, 705 F.3d at 1134; see also MetalClad Corp. v. Ventana Env. Org. P'ship, 109 Cal.App.4th 1705, 171 3d 13, 1 Cal.Rptr.3d 328 (Ct.App.2003) ("[Plaintiff] agreed to arbitration in the underlying written contract that now, in effect, seeks the benefit of that contract in the form of damages from [defendant], while avoiding its arbitration provision. Estoppel prevents this."). Defendants argue that it would be inefficient to compel Plaintiff Mitch to arbitrate his claims against Defendant Dreamworks but not compel arbitration for the nonsignatory Defendants. However, the Court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency. The Federal Arbitration Act requires piecemeal resolution when necessary to give effect to an arbitration agreement." Tracer Research Corp. v. Nat'l Env. Serv. Co., 42 F.3d 1292, 1294 (9th Cir.1994) (internal quotation marks omitted). Here, only one Defendant, Dreamworks, is a signatory to the arbitration clauses. The doctrine of equitable estoppel is "narrowly confined" when applied to compel arbitration as to nonsignatories, and Defendants have failed to demonstrate the limited applicability of equitable estoppel in this context. Murphy, 724 F.3d at 1223. | In deciding whether a dispute is arbitrable under Federal Arbitration Act (FAA), court must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. 9 U.S.C.A. § 2. | Can a court request the parties' agreement to arbitrate to achieve greater efficiency? | Alternative Dispute Resolution - Memo 99 - JS.docx | ROSS-003297272-ROSS-003297273 | 5A, Sub | 0.83 | | | | 1 | |
| 20002 | State ex rel. Old Denison Freight Line v. Daty, 369 S.W.3d 773 | 241+2(1) | Missouri law does not declare that a cause of action originates when tortious conduct occurs. Notably, the Supreme Court of Missouri has emphasized that "the mere occurrence of an injury itself does not necessarily coincide with the accrual of a cause of action" because "[s]uch a reading would not deprive the additional meaning" well is "capable of ascertainment" of any meaning." Martin v. Crowley, Wade and Milstead, Inc., 702 S.W.2d 57, 58 (Mo. banc 1985). However, the supreme court has also recognized that the proper interpretation of "capable of ascertainment" is "when plaintiff's damages should have been discovered and the injury and damages." Powel v. Chaminade College Preparatory, Inc., 197 S.W.3d 576, 581 (Mo. banc 2006) if damages are not capable of ascertainment at the time the wrong is done, the statute of limitations does not begin to run until later." Although this Court has not previously clearly articulated a specific standard, generally applicable test to be used in making this determination, a consistent approach is evident upon careful review of this Court's decisions from the past 40 years: the statute of limitations begins to run when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." Id. at 582 (quoting Business Men's Assurance Co. of America v. Graham, 984 S.W.2d 502, 507 (Mo. banc 1999) (emphasis in original). | A cause of action accrues, and "originates" for purposes of Missouri's statute of limitations borrowing statute, when and where the damages is sustained and is capable of ascertainment. V.A.M.S. § 516.190. | Does the law declare that a cause of action originates when tortious conduct occurs? | Action - Memo # 95 - C NO.docx | ROSS-003197062-ROSS-003197063 | Condensed, 5A, Sub | 0.86 | | 1 | | | |
| 20003 | Aziz, Sava & Kaide v. SVCORSTA V, 284 F. Supp. 2d 377 | 308+151(1) | Apparent authority terminates when a third party has notice of the termination. Id. at "125. Notice is acquired when the third party has reason to know, should know, or has been given a notification of the occurrence of an event from which, if reasonable, he would draw the inference that the principal does not consent to have the agent so act for him, Id. Reasonableness depends on the context of the ... | Under the federal common law of agency, one event that conveys notice of a termination of apparent authority to a third party is the termination of the agent's employment. | When is an apparent authority terminated? | Principal and Agent Memo 110 - RC_60260.docx | ROSS-003308338-ROSS-003308339 | Condensed, 5A, Sub | 0.59 | | 1 | | | |
| 20004 | First Nat. Bank v. Sproat, 78 Neb. 187 | 83T+663 | It appears from the discussion of counsel that the statute which prompted the trial court to direct a verdict for the defendant was that the offer of the note in evidence did not include the indorsement of the payee, and because of that failure to prove the indorsement the plaintiff was not entitled to recover. Proof of the indorsement, however, under the allegations of the petition and the evidence of ownership, was not indispensable to the plaintiff's case. In Mitchigan Mutual Life Insurance Co. v. Klatt, 2 Neb. (Unof.) 870, 90 N. W. 754, it was held that possession of a promissory note is prima facie evidence of ownership, and the one in equity for the foreclosure of a real estate mortgage, and the holding was in accord with the generally established doctrine that under the same statement of facts an action at law could not be maintained against the maker of the note. A point urged by the payee without indorsement or check payable to it, accompanied by manual delivery, is valid. French v. Bank, 79 N. Y. 522. A transferee of negotiable paper, without indorsement, may recover thereon by proving consideration. Ferris v. Wells, 68 Ga. 604. In Tuttle v. Fridley, 8 Minn. 79 (Gil. 48), it was held that where a promissory note, payable to the husband, is transferred by him directly to his wife, without indorsement, the title thereto vests in her so far as the maker is concerned, although she cannot give a good title to it; so that where a party holding the legal title to a note and taking possession of it, it acquired the ownership and possession of a promissory note may sue thereon by his own name as the real party in interest, though no indorsement of the note has been made to him by the payee. Pearson v. Cummings, 28 Iowa, 344. | The transferee of a negotiable promissory note, who has purchased the same in the usual course for value, may bring an action at law against the maker without proof of indorsement. | Can a promissory note payable to husband be transferred to the wife without indorsement and without valuable consideration? | Bills and Notes - Memo 870 - RK_59551.docx | ROSS-003309763-ROSS-003309764 | Condensed, 5A, Sub | 0.9 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 25205 | Latham v. Davenport Assumpsition High Cas. 495 N.W.2d 902 | 15 k8 | We find the district court's comparison to speed limit laws an like comparing apples to oranges. Generally, if there is a conflict between a statute and custom, the statute controls. Langlier v. Cavness, 230 Iowa 774, 778, 298 N.W.2d1, 4 (1941). Motorists are required to follow speed limit laws unless the motorist has a legal excuse. Drewsen v. Iowa Transit Lines, 216 Iowa 1327, 1332, 296 N.W. 428, 430 (1934). In this case, there are no mandatory statutes requiring Assumption to build its field in any specific manner. Second, parties can prove negligence by expert testimony or by custom. We cannot find any authority precluding a party from using a different method than that of the opposing party to prove or disprove negligence. See Ganzhorn v. Natl Dairy Corp. 278 N.W.2d 626, 624 (Iowa 1979) (alluding to the fact that the jury weighs custom against expert testimony to determine negligence). | Generally, if there is a conflict between a statute and custom, the statute controls. | If there is a conflict between a statute and custom which controls? | Customs & Usage - Memo 8 - JS.docx | ROSS-003103599 ROSS-003103600 | Condensed, SA | 0.91 | | 1 | | | |
| 25206 | In re Bavers, 43 B.R. 583 | 366 k1 | Although mistake states that have addressed equitable subrogation will not be limited to those cases. Courts have analyzed this under state law, jurisdictions who apply the doctrine with considerable adroitness. Because equitable subrogation is a state-law doctrine, whether equitable subrogation applies in this case presents a question of Mississippi law, for which there is limited authority. Where Mississippi law is lacking, its courts have looked to the law of other jurisdictions for guidance. See Robinson v. Lanford, 841 So.2d 1119, 1134* 25 (Miss.2003) (looking to decisions in Louisiana, Georgia and Illinois). To conform with this practice, this Court looks to the law of other states when necessary to supplement Mississippi law concerning equitable subrogation. This law acknowledges that the extent that decisions in this area are in general are highly fact specific, and there is general rule. See Forestry, 1145 (recognize that the forest service has the equitable subrogation of a subrogation exists in an instant case to determine where the right of subrogation arises as otherwise protected with the right | Under Mississippi law, the doctrine of equitable subrogation will not be applied unless the applicant's assets (a)et and innocent person will not be injured thereby. | Is equitable subrogation a state-law doctrine? | Subrogation - Memo 147 - VP.C docx | ROSS-003103438 l-ROSS-003103482 | Condensed, SA | 0.83 | | 1 | | | |
| 25207 | Native Ecosystems Council, 43 1+8 v. Weldon, 697 F.3d 1043 | 149 k1 | The NFMA and its implementing regulations grounds for forest planning and management by the Forest Service on two levels: (1) Forest level and (2) individual project level. See generally 16 U.S.C. 1604; see also Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 729* 30, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). On the forest level, the Forest Service develops a Land and Resource Management Plan (Forest plan), which consists of broad, long-term plans and objectives for the entire forest. Forest plans are designed to ensure that forest resources by balancing the consideration of environmental and economic factors. Citizens for Better Forestry v. U.S. Dep't of Agric., 341 F.3d 961, 966 (9th Cir.2003). The NFMA's purposes is to require that the Forest Service "provide for diversity of plant and animal communities" in managing national forests. 16 U.S.C." | There was a sufficient site-specific connection between challenged fuels reduction project in national forest and United States Forest Service's (USFS) alleged failure to conduct further evaluation of plan-level population decrease in excess of ten percent required by the forest plan, as required for environmental organization to challenge the plan-level evaluation, under the National Forest Management Act (NFMA); stand treatment has been shown to affect goshawk nesting territories, and the project required significant stand treatment in goshawk nesting territories, National Forest Management Act of 1976, 5 2 et seq., 16 U.S.C.A. $ 1600 et seq. | How are forests managed under NFMA? | Woods and Forests - Memo 5 - RK.docx | ROSS-003103789 ROSS-003103790 | Condensed, SA, Sub 0.25 | | 0 | 1 | | 1 | |
| 25208 | Devines Land & Timber Co. v. Angell, 475 So. 2d 1146 | 20+82 | Nor has either party established adverse possession for the 20-year period as required to acquire title is one of the evidence that prior period had been cut from this portion of the disputed land by both the Stanbridges and Drennen's grantors, and others (the unidentified Wessman who executed timber deed in 1939) as well. As we noted above, open acts of cutting timber do not amount to adverse possession. Moreover, although defendants assert possessory rights in cutting the timber, then neither had the exclusive possession which must be established to successfully maintain a claim of adverse possession. "One of the essential elements of adverse possession is that the possession must be exclusive." Two persons cannot hold the same property adversely to each other at the same time.*** Dawson v. Bauman, 274 Ala. 450, 654, 149 So.2d 283 (1962). We therefore conclude that the trial court's finding that the Stanbridges had acquired title through adverse possession to that part of the northeast quarter of the northeast quarter south of the Warrior River was incorrect and that | Recordation of deed or color of title for ten years is one of the requirements under the ten-year adverse possession statute (Code 1975, 6-5-200), which must be coupled with necessary elements of adverse possession for ten-year period in order to establish title by adverse possession. | Is exclusive possession an essential element of adverse possession? | Adverse Possession - Memo 9 - RM.docx | ROSS-003101075-ROSS-003101077 | Condensed, SA, Sub 0.74 | | 0 | 1 | | | |
| 25209 | Amalgamated Meat Cutters & Butcher Workmen of N. Am., Dist. Local No. 540 v. Neuhoff Bros. Packers, 481 F.2d 817 | 25 7+111 | In these circumstances it was not impermissible for the arbitrator, as a basic part of this decisional process, to establish what he considered an appropriate standard, i.e., proof beyond a reasonable doubt. We note, further, that the arbitrator's selection was consistent with general arbitration practice under similar agreements where the discharge involves criminal or quasi-criminal conduct. See Skaggs Stores Inc., 63 LA 201 at 123. 1239 United States Steel Corp., 1957. 29 L.A. 272, 276-77; Carroll County Memorial Hospital, 70 LA 714; 719-30 ___ L.A. 869, 892, Kroger Co., 1955, 25 L.A. 906, 907, 908. While this standard is perhaps offensive to judicial thinking, which might regard it peculiar that the more reasonable standard established for the question of guilt in criminal cases, the more difficult it is to prove, cf. Aaron, Some Procedural Problems in Arbitration, 1 0 Vand. L. Rev. 733, 748, 42 (1957), we are obliged to recognize that arbitration proceedings are sui generis. Washington, Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 1971, 143 U.S. App. D.C. 210, 447 F.2d 1234, 1238. | Arbitration proceedings are sui generis. | Is arbitration a sui generis proceeding? | 000077.docx | USAALEX-00115405-USAALEX-00115407 | Condensed, SA | 0.96 | | 0 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20210 | Peterson v. Wells Fargo Bank, 556 F. Supp. 1100 | 172H+242 | Finally, plaintiff contends that as a public service corporation, the Bank violated its common law duty not to arbitrarily discriminate between customers by charging customers who open credit card accounts after July 15, 1980, a 20 percent annual finance charge and charging all other customers an additional 2 percent finance charge on their outstanding balance. A bank is not a public service corporation. But even if it were, the obvious answer to plaintiff's contention is that the Bank has not arbitrarily discriminated against its pre-July 15, 1980, customers. In fact, all customers are being charged the same annual finance charge, namely, 20 percent. To the extent that old customers have to pay a larger dollar amount in finance charges than do post-July 15, 1980, customers, the distinguishing factor is the amount of outstanding balance. The old customers will naturally have a larger outstanding balance since they have used their credit cards for a longer period of time. Viewed in this light, the distinction is not discriminatory. See Alabama State Docks Department v. Bunge Corp., 655 F.2d 64, 66"67 (5th Cir.1981) (tariff which set progressive storage rates for grain stored in state facilities depending on the length grain had been stored as of the effective date of the act is neither unreasonable nor discriminatory by making a distinction between one who has already stored his goods for a length of time and one who has stored goods for a lesser time or for no time at all). | A bank is not a "public service corporation." | Can a bank be termed as a public service corporation? | Banks and Banking - Memo 5 - MS.docx | ROSS-003326123-ROSS-003326124 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 20211 | Bruce v. Landmark Cent. Bank & Tr. Co., 592 S.W.2d 198 | 195+27 | Contracts of guaranty should be interpreted like other types of contracts.Standard Meat Co. v. Taco Kid of Springfield, Inc., 554 S.W.2d 592, 595 (Mo.App.1977). All terms of the contract should be given effect. Wilshire Const. Co. v. Union Elec. Co., 463 S.W.2d 903, 906 (Mo.1971) | Contract of guaranty should be interpreted like other types of contracts; all terms of contract should be given effect. | Will a guaranty be treated like other contracts? | 000157.docx | LEGALEASE-00115433-LEGALEASE-00115435 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 20212 | Dees v. Distenfield, 618 F. Supp. 123 | 25T+114 | At the same time, these cases give little consideration to the mandate and policy of the Federal Arbitration Act, 9 U.S.C. " 1 et seq. and appear to assume that arbitration proceedings are inadequate to protect an investor's rights. By enacting the Federal Arbitration Act, Congress sought to make arbitration agreements as enforceable as all other contracts. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801 n. 12, 18 L.Ed.2d 1270 (1967). Congress intended to avoid the unnecessary expense and delay of litigation where parties had provided for the more efficient process of arbitration. Id. at 404, 87 S.Ct. at 1806; Cunningham v. Dean Witter Reynolds, Inc., 550 F.Supp. 578, 584 (E.D.Cal.1982). Moreover, arbitration under the Act "is intended to provide the parties to a dispute with a speedy and relatively inexpensive trial before specialists." Conticommodity Services Inc. v. Philipp & Lion, 613 F.2d 1222, 1224 (2d Cir.1980); New Process Steel Corp. v. Titan Industries Corp., 555 F.Supp. 1018, 1021 (S.D.Tex.1983). In this case, arbitration provides the parties with a neutral and expert determination of the dispute. Moreover, the Arbitration Act represents a strong public policy in favor of arbitration as an effective means of resolving disputes, Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); Scherk v. Alberto-Culver Co., 417 U.S. 506, 511"12, 94 S.Ct. 2449, 2453"54, 41 L.Ed.2d 270 (1974). Absent an indication from Congress that arbitration of Rule 10b"5 claims should not be permitted, the unqualified policy favoring arbitration should be enforced. See Hagstrom v. Breutman, 572 F.Supp. 692, 699 (N.D.Ill.1983). | By enacting Federal Arbitration Act, Congress sought to make arbitration agreements as enforceable as all other contracts; Congress intended to avoid unnecessary expense and delay of litigation where parties had provided for more efficient process of arbitration. 9 U.S.C.A. S 1 et seq. | What is the intention of the Arbitration process? | 004160.docx | LEGALEASE-00115641-LEGALEASE-00115642 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 20213 | McHorse v. Portland Gen. Elec. Co., 268 Or. 323 | 217+3342 | The presence or absence of the word "insurance" in the contract is not determinative of this issue, but the courts must look behind the terminology used by the parties and, viewing the contract in its entirety, ascertain what it was that the parties intended to accomplish.Richardson v. Railway Exp. Agency, 258 Or. 170, 482 P.2d 176 (1971); 1 Couch on Insurance (Second) 39, s 1.12 | Presence or absence of word "insurance" in contract is not determinative of whether contract is a policy of insurance such that beneficiary is entitled to recover attorney fees if settlement is not made within six months from filing of proof of loss and if beneficiary's recovery in action on the policy exceeds amount of any tender made by the defendant. ORS 743.114. | How do courts interpret the terminology of insurance contracts? | Insurance - Memo 12 - VP.docx | LEGALEASE-00000543-LEGALEASE-00000544 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 20214 | Sokol Holdings v. BMB Munai, 542 F.3d 354 | 25T+112 | Defendants' main argument is that Sokol, being a signatory to an arbitration contract, should be estopped from refusing the demand of BMB, a nonsignatory, to arbitrate Sokol's claims against the BMB defendants because those claims are "intertwined" with the arbitration contract (the Emir Contract) from which the dispute arises. It is black letter law that an obligation to arbitrate can be based only on consent. See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir.2003) ("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." (internal citation and quotation marks omitted)); accord Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir.2002) ("An agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems"an openness this country has been committed to from its inception.") Persons are generally entitled to have their dispute settled by the ruling of a court of law. Cf. Tice v. Am. Airlines, Inc., 162 F.3d 966, 968 (7th Cir.1998) ("It is a fundamental principle of American law that every person is entitled to his or her day in court."). It is essentially only by making a commitment to arbitrate that one gives up the right of access to a court of law in favor of arbitration. Most frequently such a commitment is made either by entering into an agreement to arbitrate or by entering into a relationship which is governed by an agreement to arbitrate. | Persons are generally entitled to have their dispute settled by ruling of court of law, and it is essentially only by making commitment to arbitrate that one gives up this right of access to court of law in favor of arbitration. | What is the black letter law relating to arbitration? | Alternative Dispute Resolution - Memo 73 - JS.docx | ROSS-003286232-ROSS-003286233 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 20215 | Gardner v. S.C. Dept of Revenue, 353 S.E.1 | 361=1407 | As a general rule, a party must establish prejudice as the result of another's failure to follow mandatory statutory procedures. *See Rose v. Beasley*, 327 S.C. 197, 489 S.E.2d 625 (1997) (where statutory procedures provide inadequate notice in order to hold the other party liable. | As a general rule, a party must establish prejudice as the result of another's failure to follow mandatory statutory procedures. *See Rose v. Beasley*, 327 S.C. 197, 489 S.E.2d 625 (1997) (where statutory procedures provide inadequate notice in order to hold the other party liable. | What should a party demonstrate to claim insufficient or defective notice? | Notice - Memo 20-B.docx | ROS5-00318700/ROS5-00318701 | Condensed, SA, Sub 0.65 | | 0 | | | 1 | 1 |
| 20216 | Am. Sur. Co. of New York v. Multnomah Cty., 171 Or. 287 | 177=13 | An averment of knowledge is not a conclusion of law. *Nettlemeyer v. Schwarze*, supra. It is a statement of fact, and an allegation of actual knowledge is not transformed into a mere conclusion of law by designating the source thereof. | An averment of knowledge is not a "conclusion of law," even if source of knowledge is designated. | Is the averment of knowledge a conclusion of law? | 003841.docx | LEGAEAXE-00115835-LEGAEAXE-00115836 | Condensed, SA, Sub 0.75 | | 0 | | | 1 | 1 |
| 20217 | Kane v. Chugh, 96 Mich. 436 | 184=4 | It has often been decided that a mere possibility is not the subject of assignment. A contingent claim against a foreign country to damages to be recovered | A mere possibility is not the subject of assignment. | Could mere possibility be the subject of an assignment? | 003896.docx | LEGAEAXE-00115907-LEGAEAXE-00115909 | Condensed, SA 0.37 | | 1 | 0 | 0 | 1 | |
| 20218 | Poplar Grove State Bank v. Powers, 218 Ill. App. 3d 509 | 184=19 | We believe the the plain meaning of section 2-209(a)(1) is that, for purposes of determining citizenship, the asset or thing of value claimed must have been present in this state when the defendant acquired his ownership or possessory interest of it. | Situs of debt, insofar as there can be one, is domicile of creditor. S.H.A. | Which is the situs of a debt? | Property - Memo 8 - AndI.docx | ROS5-00331663/ROS5-00331664 | Condensed, SA, Sub 0.92 | | | | | 1 | |

3640

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| J20219 | Sec. & Exch. Comm'n v. ESM Gov't Sec., 645 F.2d 310 | 349B46 | In holding that fraud, deceit or trickery is grounds for denying enforcement of an administrative subpoena, we agree that a well-established power of the courts to prevent abuse of process... "[T]he equitable power of the courts of a United States judge, sitting as a court of law, over their own process is to prevent abuse, oppression and injustice, and is inherent, and extensive and efficient as it may be requisite for the necessity for their exercise... " Camden v. Plotts, 124 U.S. 131, 145-46, 8 S.Ct. 379, 384, 31 L.Ed. 374 (1888). The Supreme Court's direction in Powell and Lasalle leaves no doubt that this power may be properly invoked in cases involving the enforcement of administrative subpoenas. We note that this power is associated with the supervisory power which is distinct from the Fourth Amendment exclusionary rule, although the grounds may sometimes overlap. See United States v. Payner, 447 U.S. 727, 735 n.8, 100 S.Ct. 2439, 2445 n.8, 65 L.Ed.2d 468 (1980). An agency subpoena must conform to certain Fourth Amendment requirements: "It is now well-settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." See v. City of Seattle, 387 U.S. 541, 544, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). We do not hold, however, that any violation of the Fourth amendment in the procurement of an administrative | In action brought by the Securities and Exchange Commission to enforce administrative subpoenas duces tecum against broker/dealer and government securities in which the broker/dealer alleged fraud and deceit by the SEC remedial power required for abuse of process; "[T]he equitable power of the courts of a United States judge, sitting as a court of law, over whether the SEC intentionally or knowingly misled broker/dealer about its investigation, or in review of broker/dealer's records where the broker/dealer was in fact misled, and whether the subpoena was result of the SEC's allegedly improper access to the records. If broker/dealer would establish that means to the three questions were affirmative, then enforcement of the subpoena would be an abuse of process and would be denied. | Are administrative subpoenas subject to Fourth Amendment requirements of the Constitution? | 00041.docx | LEGALEASE 00116364-LEGALEASE 00116365 | Condensed, SA 0.55 | | | | | |
| J20220 | Michigan Mutual Ins Mut. Ins. Co. v. Johnson, 244 F. Supp. 24 158 | 16+80 | The Seventh Amendment "which preserves the right to a jury trial as it existed at common law does not apply to admiralty actions, there was no common law right to a jury trial in such actions. Fitzgerald v. U.S. Lines Co., 374 U.S. 16, 20, 83 S.Ct. 1646, 1652, 10 L.Ed.2d 720 (1963); Koch v. Kimball, 28 F.Supp. 678 (W.D.Pa.1939)]; Waring v. Clarke, 46 U.S. (5 How.) 441, 12 L.Ed. 226 (1846). There are circumstances, however, where admiralty and law claims may be afforded a jury trial. For instance, when a plaintiff may invoke admiralty jurisdiction or jurisdiction under the Court's diversity jurisdiction or jurisdiction under Section 1333 or over the same cause of action, admiralty procedure will be followed only if the complaint so declares. Cooper v. Loper 519 F.2d 1045, 1048 (3d Cir.1975); [I]n these circumstances, where the right to a jury trial on the certain cause of action that were once solely within the Court's admiralty jurisdiction. See Powell v. Offshore Navigation, Inc., 644 F.2d 1063, 1066 (5th Cir.1981); Fitzgerald, 374 U.S. 16, 83 S.Ct. 1646 (conforming the two claims of Jones Act, which covers claims by injured seamen). Nevertheless, an action wherein the plaintiff properly invokes admiralty jurisdiction under Section 1333 is a ...maritime claim in admiralty. See Fed.R.Civ.P. 9(h), 38(e). In re Rauch, No. 91-73 (9), 1993 WL 738080, at *2 (D.N.J. Mar.1, 1993) (discussing simultaneous Owner's Liability Act ("LVOLA") claimants' motion for jury trial denied. | Where insurer brought suit first in coverage dispute with insured and properly invoked district court's admiralty jurisdiction, insurer's election of non-jury trial was protected and could not be undone by insured's assertion of intervenors/counterclaim that might have been subject to district court's admiralty jurisdiction, and thus jury trial, if brought in separate action. 46 U.S.C.A. § 30 1333, 1331(1); Fed.Rules Civ.Proc.Rule 9(h), 38(e), 28 U.S.C.A. | Is the right to trial by jury available in admiralty suits? | Admiralty Law - Memo 22 - J5.docx | ROSS-003229180-ROSS-003202801 | Condensed, SA 0.67 | | | | | |
| J20221 | Michigan State Employees Ass'n v. Michigan Liquor Control Comm'n, 232 Mich. App. 656 | 361+513(5) | MCLS, MSA 2.216 directs that when a court finds a portion of an act invalid, the remainder of the act should be enforced to the extent that it can be given effect consistent with the legislative intent. When enacting the APA, the Legislature intended to "provide procedural protection when a personal right, or a privilege is at stake," Medical Transp. v. State Boundary Comm., 401 Mich. 641, 671, 259 N.W.2d 326 (1977); Bundo, supra n. 402, 461 NW.2d 119; therefore, because an APA contested case comes within the APA even in the absence of an issue of Medicaid, 43, and 44, in the form of public notice and public hearing requirements regarding property. Because, see M.C.L. § 24.269; M.S.A. § 3.560(144); the remainder of the APA remain enforceable. A bailment occurs when goods, or other personal property, are delivered to another, who under contract either express or implied to agree to accept the delivery of the property for a particular purpose and then after the purpose of the bailment has been fulfilled, the bailee, pursuant to the contract, shall return the property to the bailor or otherwise dispose of the property as contemplated by the contract or as directed by the bailor. In Re Guardianship of Bailey, 1 L. Kan. 204, 29, 24 N.W.2d 351, 5 of bailment for mutual benefit, the bailee is liable for loss or damage to the subject of the bailment. | Provisions of Administrative Procedure Act (APA) that improperly authorized legislature's Joint Committee on Administrative Rules to disapprove rules were severable from remainder of APA and thus enforceable in view of procedural protections in the form of public notice and public hearing requirements regarding proposed rules. M.C.L.A. 55 8.5, 24.241-24.244, 24.245(9), 24.246(1) | Does the Administrative Procedure Act provide procedural protection where personal rights or a duty is at stake? | Administrative Law - Memo 11 - RK.docx | ROSS-003289424-ROSS-003289425 | Condensed, SA 0.5 | | | | | |
| J20222 | Liddle v. Salem Sch. Dist. No. 600, 249 Ill. App. 3d 768 | 50+4 | A bailment occurs when goods, or other personal property, are delivered to another, who under contract either express or implied to agree to accept the delivery of the property for a particular purpose and then after the purpose of the bailment has been fulfilled, the bailee, pursuant to the contract, shall return the property to the bailor or otherwise dispose of the property as contemplated by the contract or as directed by the bailor. In Re Guardianship of Bailey, 1 L. Kan. 204, 29, 24 N.W.2d 351, at 1155.) A plaintiff seeking to plead a bailment cause of action has the option of pleading a contract theory or a bailment theory. (Am.Nat'l Bank & Trust Co. v. Weyerhaeuser Co. (7th Cir. 1982), 692 F.2d 455, 463; Wausau Ins. Cos. v. All Chicago Messenger Serv., Inc. (1992), 151 Ill. 2d 372, 177 Ill.Dec. 42, 602 N.E.2d 867.) (...) In an action for breach of bailment, the plaintiff must prove: (1) an express or implied agreement to create a bailment; (2) delivery of the property in good condition; (3) bailee's acceptance of the property; and (4) bailee's failure to return the property or bailee's redelivery of the property in a damaged condition. Am. Nat'l Bank & Trust Co. of Chicago v. Weyerhaeuser Co., 692 F.2d 455, at 91 NW. | Both tangible and intangible property may be the subject of a bailment | What is the subject of a bailment? | 00288.docx | LEGALEASE 00116499-LEGALEASE 00116500 | Condensed, SA 0.93 | | | | | |
| J20223 | Alvarado v. Sersch, 262 Wis. 2d 74 | 272+250 | * 17 Thus, negligence and liability are distinct concepts. A.E. Investment, 62 Wis.2d at 484.65, 214 N.W.2d 764. After negligence has been found, a court may nevertheless limit liability for public policy reasons. Gritzner, 235 Wis.2d 781, * 24, 611 N.W.2d 906; Rockweit, 197 Wis.2d at 421, 541 N.W.2d 742; A.E. Investment, 62 Wis.2d at 484.65, 214 N.W.2d 764. This public policy considerations that might preclude liability if: (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; [or (6) allowing recovery would enter a field that has no sensible or just stopping point. Gritzner, 235 Wis.2d 781, * 27, 611 N.W.2d 906. | Negligence and liability are distinct concepts. | Are negligence and liability distinct concepts? | Negligence-Memo 10 - VP.docx | ROSS-003329460-ROSS-003310941 | Condensed, SA 0.95 | | | | | |

3542

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,573 | 27,876 | 9,079 |
| 2024 | Collin Cty. Dist. Attorney's Office v. Fourner, 453 S.W.3d 536 | 302v1 | Fourner argues on appeal that the District Attorney did not object to any hearing "testimony." However, there was no testimony at the hearing; there was only argument of counsel. Although Fourner's petition for expunction was verified, "[t]he law is well settled that a party's pleadings are not evidence of the facts alleged therein." ABD S., Inc. v. Mid-Box, Inc., 773 S.W.2d 492, 417 (Tex.App.-Dallas 1989, writ denied); see also Tex.Dep't of Pub. Safety v. Barham, No. 07-08-00147 CV, 2008 WL 4681876, at *4 (Tex.App.-Austin Oct. 3, 2008, no pet.) (memo.op.) ("The allegations alone in a verified petition, even being put in issue by a general denial, do not constitute proof of those allegations."). Fourner further argues on appeal that the District Attorney "stipulated to the facts to the [trial] court." While the record contains no formal stipulation to the facts by the District Attorney, we note the District Attorney's answer contained a statement that may be construed as a judicial admission by the District Attorney. See Holmes v. Jacksonville Daily Progress, 783 S.W.2d 512, 514 (Tex.App.-Tyler 1989, writ denied) (etc.). [A]while pleadings do not constitute proof [and a]re alleged in those pleadings may constitute judicial admission; see also Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 767 (Tex.1983) "Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence."). A judicial admission that the non-moving party is not entitled to the particular relief sought, it is not evidence, but serves as a substitute for evidence. Hercules Exploration, Inc. v. Halliburton Co., 658 S.W.2d 716, 719 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.). | A party's pleadings are not evidence of the facts alleged therein. | Are pleadings evidence? | 00405.docx | LEGALEASE-00105959 LEGALEASE-00105955 | Condensed, SA | 0.96 | 0 | | 0 | 1 | |
| 2025 | Hussain v. Boucher Pierce Refiners, 48 F. Supp. 2d 1164 | 50v1 | In Kansas, a bailment involves the "delivery of [one's own] property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it." M. Bruenger & Co. v. Dodge City Truck Stop, Inc., 234 Kan. 682, 685, 675 P.2d 864 (1984) (quoting 8 Am.Jur.2d, Bailments ' 2). A "bailee" is the "person who receives possession constituting bailment." M. Id. A "bailor" is the "person from whom the property is thus received." Id. In this case, plaintiff claims he was a bailor of property he deposited with the defendants, for the reasons set forth below, plaintiff's bailment theory cannot withstand the defendants' motion to dismiss. | Under Kansas law, "bailee" is person who receives possession or custody of property under circumstances constituting bailment; "bailor" is person from whom whom property is thus received. | Is a bailment who can be considered as a bailor? | Bailments Memo 15- JS.docx | ROSS-003384667 | Condensed, SA, Sub 0.78 | 0.78 | 0 | | 1 | 1 | |
| 2026 | Rosann v. Rosann, 372 Mont. 175 | 302v28 | Montana Rule of Civil Procedure 9(b) requires a party alleging fraud to plead the circumstances constituting fraud with sufficient particularity, but malice, intent, knowledge, and other condition of a person's mind may be alleged generally. To withstand a dismissal motion, the party alleging fraud must plead and prove (1) a representation; (2) its falsity; (3) its materiality [of the representation]; (4) speaker's knowledge of the falsity of the representation, or ignorance of its truth; (5) speaker's intent that it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and, (9) consequent and proximate injury caused by reliance on the representation. Knick v. McCann, 397 Mont. 388, 387, 149 P.2d 264, 587 Pd (1982). The key inquiry in evaluating a pleading's sufficiency is whether the pleading gives adequate notice to adversaries at enabling to prepare a responsive pleading. State Compensation Mut. Ins. Fund v. Berg, 279 Mont. 161, 177, 927 P.2d 975, 984 (1996). In another action to enforce the falsity of the representation; (4) speaker's knowledge of the falsity of the representation, or ignorance of its truth; (5) speaker's intent that it should be relied upon; but also the time and place of the representation. L.B. v. Montana Eighth Judicial Dist., 303 Mont. 161, Montana Eighth Judicial Dist. Mont. 161, 125 (1993). When a pleading alone does not give notice to adversaries an adequate pleading, it should be construed to consider the context in which the fraud is alleged to have occurred. Berg, 279 Mont. at 178, 927 P.2d at 985. However, allegations of fraud may not ordinarily be based on "information and belief," except as to matters peculiarly within the opposing party's knowledge. C. Heydon Ltd., 282 Mont. at 307-26, 884 P.2d at 256. | When is fraud pleading alone does not give sufficient notice to an adverse party, it is appropriate to consider the context in which the fraud is alleged to have occurred. (Sullus Civ.Proc., Rule 9(b). | What should be the key inquiry in evaluating a pleading's sufficiency? | 00485.7.docx | LEGALEASE-00116765 LEGALEASE-00116767 | SA Sub | 0.89 | 0 | | 1 | 1 | |
| 2027 | Litv. Maryland Dep't of Env't, 446 Md. 254 | 148v277 | A claim for inverse condemnation is not a tort in a traditional sense and has been treated routinely and differently than torts. In Neifert v. Dep't of Env't, 395 Md. 477, 502, 910 A.2d 1227, 1242 (2006), the Court of Appeals held that the notice requirements of the LGTCA, Md. Code, § 5-301 et seq., Ann. Md. Code § 5-301, is a predicate to filing suit. The plaintiff's inverse condemnation claim, however, was allowed to move forward, without the necessity of proof of compliance with the notice provision of the MTCA. Id. | General Assembly did not intend for a claim for inverse condemnation to come within the ambit of the notice provisions of either the Maryland Tort Claims Act nor the Local Government Tort Claims Act. West's Ann.Md.Code, State Government, § 12-101 et seq. | Can a claim for inverse condemnation be treated as a tort? | Eminent Domain - Memo 30 - AKA.doc | LEGALEASE-00002829 LEGALEASE-00002830 | Condensed, SA, Sub 0.42 | 0.42 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20228 | Mike v. Prof'l Clinical Lab., 781 F. Supp. 2d 1192 | 198H+709(2) | The common law of Oklahoma divides "actionable tortious conduct into (1) negligence, and (2) willful acts that result in intended or unintended harm." Parret v. UNICCO Service Company, 2005 OK 54, 127 P.3d 572 (citing Graham v. Keuchel, 1993 OK 6, 847 P.2d 342, 362). In the lower tier of tortious conduct lie three levels of negligence. Id. These are defined by statute in Oklahoma as slight negligence, ordinary negligence, and gross negligence. 25 O.S. 2001 "" 5 & 6. Slight negligence consists in the want of great care and diligence; ordinary negligence in the want of ordinary care and diligence; and gross negligence is the want of slight care and diligence. 25 O.S. 2001 " 6. Slight care or diligence is such as persons of ordinary prudence usually exercise about their own affairs of slight importance. 25 O.S. 2001 " 4. | Licensed Practical Nurse's (LPN) failure to abide by the terms of her license probation, which was imposed after employer forwarded drug test results to nursing board, was supervening cause of her injury of temporary suspension of her LPN license, precluding nurse's action against the testing facility for gross negligence under Oklahoma law; nurse suffered no injury from her probationary status, nurse was not publicly censured by board, and license was not revoked during probationary period. | How does the common law divide actionable tortious conduct? | 004818.docx | LEGALEASE-00116880-LEGALEASE-00116881 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 20229 | D.S. Sifers Corp. v. Hallak, 46 S.W.3d 11 | 50+31(1) | As indicated above, in a normal bailment situation, once a bailor establishes that a bailment relationship or contract exists and has been breached, the burden shifts to the bailee to prove that he exercised due care. Temple, 839 S.W.2d at 326. Thus, a rebuttablepresumption arises that the bailee was negligent. See State Farm Fire and Cas. Co. v. Emde, 706 S.W.2d 543, 547 (Mo.App.1986). This presumption exists, however, where the bailee has "sole, actual, and exclusive physical possession of the goods [.]" 8A am.Jur.2d Bailments " 233 (1997). The reason for this presumption and the shift of burden is that the bailor generally does not know the reason for the bailee's failure to return undamaged goods. See ray Brown, The Law of Personal Property " 11.8 (3d ed.1975). "To require the bailor to prove that the failure to return was due to the negligence of the bailee might impose on him a task impossible of accomplishment, and effectually deny recovery altogether." Id. Here, D.S. Sifers' property was not in the exclusive possession of BSB Partnership during the time in which the property was stored. Thus, the presumption of negligence does not arise to shift the burden to BSB Partnership to establish due care on their part. D.S. Sifers must provide some evidence that the damage occurred while in BSB Partnership's control. Because D.S. Sifers cannot establish this element, its claim against BSB Partnership based upon an implied bailment contract must fail and summary judgment in favor of BSB Partnership was proper. | In a normal bailment situation, once a bailor establishes that a bailment relationship or contract exists and has been breached, the burden shifts to the bailee to prove that he exercised due care; thus, a rebuttable presumption arises that the bailee was negligent. | Is the presumption of negligence rebuttable in a bailment? | 004965.docx | LEGALEASE-00116991-LEGALEASE-00116992 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 20230 | Clay v. Tryk, 177 Cal. App. 3d 119 | 3.16E+30 | Instead of this technical distinction, we rely on the more common usage of the term "tenant." In ordinary language, persons who share possession of the premises they hire are still considered "tenants." A dictionary definition of tenant includes "one who has the occupation or temporary possession of land or tenements of another ..." (Webster's New Collegiate Dict. (9th ed., 1984) p. 1214, emphasis added.) In legal contexts, as well, the term "tenant" is used to encompass "lodger." In Soave, supra, for example, the court used the terms "landlord" and "tenant" repeatedly when referring to proprietors and lodgers. (Soave v. Milliken, supra, 497 F.Supp. 254, 256"257, 259.) Also, in the Civil Code, the word "tenant" includes lodgers. (See, e.g., Civil Code, "" 1941.2, 1942.) Thus, "tenant" is commonly understood to include persons who share possession of the premises they rent.The record contains no evidence that the county supervisors intended "landlord-tenant" to be construed narrowly when they enacted the amendment to the shared housing restriction. There is therefore no reason not to interpret "tenant" in its broader sense.The broader interpretation of "tenant" is in accord with a number of principles of statutory construction. Section 11000 states, "[t]he provisions of law relating to a public assistance program shall be fairly and equitably construed to effect the stated objects and purposes of the program." Denying housing benefits to one who is obliged to pay rent solely because he shares possession cannot be considered equitable since there is a legitimate housing need which is not being met. As discussed, such a distinction does not further the goals of public assistance.In addition, it is well settled that an ordinary language interpretation of words in an ambiguous enactment is preferable to a technical definition. (Merrill v. Department of Motor Vehicles (1969) 71 Cal.2d 907, 918, 80 Cal.Rptr. 89, 458 P.2d 33; County of Los Angeles v. Frisbie (1942) 19 | Regulation of county welfare department prohibiting housing and utility payments to those in "shared housing" arrangements unless all members of household met general relief eligibility standards, and providing that "shared housing" did not include situations where an established or proven landlord-tenant relationship existed would be read to include lodgers who paid rent, despite fact that proprietors retained control of premises; to interpret regulation otherwise would create a irrebuttable presumption that persons who share possession of housing with people who are ineligible for general relief need not pay for their housing, and would render regulation invalid. West's Ann.Cal.Welf. & Inst.Code SS 17000, 17001. | What is the definition of a tenant? | 005085.docx | LEGALEASE-00117239-LEGALEASE-00117241 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 20231 | Cox v. Par., 66 Ohio App. 3d 138 | 233+1415(3) | "A landlord-tenant relationship exists only if the landlord transfers the right to possession of the leased property." | Landlord-tenant relationship was not created between parties so as to entitle prospective tenant to recover double damages and attorney fees for property owner's wrongful withholding of damage deposit, where prospective tenant never completed her part of landlord-tenant agreement by paying property owner full deposit plus one month's rent and owner never turned over possession of keys to prospective tenant. R.C. SS 5321.16, 5321.16(B, C). | Is possession by the tenant required to create a landlord tenant relationship? | 005090.docx | LEGALEASE-00117242-LEGALEASE-00117243 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 20232 | In re Isenbart, 255 B.R. 62 | 233+1062 | In substance, the CRP contract is not a lease and the payments are not rent. The CRP contract does not confer rights usually associated with a lease. Typically, in a lease, pursuant to landlord/tenant law, the tenant has some possessory right. Even in instances where the tenant need not have exclusive possession, the tenant has at least a right of shared possession. Under the CRP, however, the putative tenant, the government, has no possessory rights"shared or otherwise. The land is in the sole possession of the farmer, the putative landlord. | Typically, in lease, tenant is granted some possessory right; indeed, even in instances where tenant need not have exclusive possession, tenant at least has right of shared possession. | Does the tenant have a possessory interest in the leased premises? | 000491.docx | LEGALEASE-00117438-LEGALEASE-00117439 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 20233 | GBL Inc. v. First Ave. Inv. Corp., 526 N.W.2d 568 | 233+590 | | Lessee's rights can be no greater than lessor's. | Does the lessee have greater rights than the lessor? | 00054.docx | LEGALEASE-00127650-LEGALEASE-00127651 | Condensed, SA | 0.94 | 0 | 1 | 1 | 1 | |
| 20234 | Rhodes v. E. L. du Pont de Nemours & Co., 636 F.3d 88 | 37+420 | | In order to prove the plaintiffs' claims of trespass, Under West Virginia law, to constitute a trespass, the defendant inflicted a harmful bodily contact on the plaintiff | Does an actual noncontextual invasion of the plaintiff's property need to be proved to sustain an action for trespass? | 00774.docx | LEGALEASE-00127494-LEGALEASE-00127496 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 20235 | City of Newark v. New Jersey Sports & Exp. Auth., 12 N.J. Super. 523 | 148+3 | | Plaintiff contends that the act is void because the legislation failed to set forth sufficient standards for determining the authority in exercising the power of the turnpike, the amount of property to be taken, its cost, the kind of highway it should be with respect to width etc. | Is it necessary for the legislature to prescribe the standards that are to govern the administrative agency in the exercise of the powers the legislature delegates to it? | 00003.docx | ROSS-003285700-ROSS-003285701 | Condensed, SA, Sub 0.35 | 0.35 | 1 | 1 | 0 | | |
| 20236 | In re Sacramento Municipal Util, 117 B.R. 592 | 14594+190 | | Our conclusion is supported by the distinction between hotel guests and tenants under real property law. The term "distinguished from "tenant," "lodger," or "guest." While it has been observed that the distinction between a tenant and a guest, boarder, or lodger | Are guests mere licensees and not tenants because they do not acquire interests in the property? | 00503.docx | LEGALEASE-00121944-LEGALEASE-00121945 | Condensed, SA, Sub 0.69 | 0.69 | 0 | 1 | 1 | 1 | |
| 20237 | Hicks, Seeds & Abrasives v. Quilindrous, 366 So. 2d 999 | 302+3 | | Article 852 of the Code of Civil Procedure requires that all pleadings be in writing. Even when the court has agreed to permit an amendment, evidence admitted pursuant to such an amendment of the pleadings cannot be considered if the amendment is, in fact, never made. | Are oral pleadings permitted? | Pleading - Memo.25 ANS.docx | ROSS-003297379-ROSS-003297376 | Condensed, SA, Sub 0.84 | 0.84 | 1 | 1 | 1 | 1 | |
| 20238 | Mun. Light Boards of Reading & Wakefield, Mass. v. Fed. Power Comm'n, 450 F.2d 1341 | 317A+183 | | The Federal Power Act provides that any sale of charge made, demanded or received by any public utility for the electric energy that is not just and reasonable is hereby declared to be unlawful. | What is the primary aim of Federal Power Act? | 00896.docx | LEGALEASE-00128210-LEGALEASE-00128212 | Condensed, SA, Sub 0.74 | 0.74 | 1 | 1 | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,079 |
| 20239 | Ex parte Mountain Heating & Cooling, 867 So. 2d 1112 | 25T+211 | Federal courts applying the presumption in favor of arbitration have held that if any doubt about the construction or breach of the putative arbitration provision is to be resolved in favor of ordering arbitration... | Wording of arbitration provision in contract v. contract with the putative arbitration provision... | How do courts resolve doubts regarding the construction of a putative arbitration provision? | Alternative Dispute Resolution - Memo 285 - RK.docx | ROS5-002982137 ROS5-002982138 | Condensed, SA, Sub O.6 | | 0 | 1 | 1 | 1 | 1 |
| 20240 | Societe Nationale Algerienne Pour La Recherche, La Prod., Le Transp. et la Transformation et La Commercialisation des Hydrocarbures v Distrigas Corp., 80 B.R. 606 | 25T+515 | The federal bankruptcy courts, well-versed with the requisite authority in equity matters of law, are understandably reluctant to part with their broad jurisdictional... | Once arbitration has commenced, United States courts have opportunity at the arbitration award enforcement stage to ensure that legitimate interest in enforcement of the law has been addressed; and are entitled under convention of recognition and enforcement of foreign arbitral awards to refuse enforcement of award where such enforcement would be contrary to public policy of the country. 9 U.S.C.A. § 1 et seq. | Can courts refuse to enforce arbitration? | Alternative Dispute Resolution - Memo 288 - RK.docx | LEGALEASE-00005452 LEGALEASE-00005454 | Condensed, SA, Sub O.18 | | 0 | 1 | 1 | 1 | 1 |
| 20241 | In re U.S. Lines, 197 F.3d 631 | 25T+513 | The parties have entered into valid agreements to arbitrate their contract disputes, one of which call for international arbitration. Arbitration is favored in this country... | Like a statutory directive, the Federal Arbitration Act's mandate may be overridden by a contrary congressional command; even where arbitration clause is sought subject to an international arbitration agreement. 9 U.S.C.A. § 1 et seq. | Does federal policy favoring arbitration abate in international or interstate arbitration clause? | 00 1166.docx | LEGALEASE-00118406 LEGALEASE-00118407 | Condensed, SA, Sub O.82 | | 0 | 1 | 1 | 1 | 1 |
| 20242 | Columbia Gas Transmission Corp. v. An Exclusive Nat. Gas Storage Easement Beneath the Subterranean Geological Formation Beneath An 80 Acre Tract in Rush Twp., Holmes Co., Ohio, 688 F. Supp. 1245 | 148+1 | The Court recognizes that the power of eminent domain is a special and extraordinary power... | Power of eminent domain is special and limited power, and use of power must be construed more closely when exercised by private party rather than governmental entity. | How does the court recognize the power of eminent domain? | Eminent Domain - Memo 33 - RK.docx | ROS5-002984174 ROS5-002984175 | Condensed, SA, Sub 0.71 | | 0 | 1 | 1 | 1 | 1 |
| 20243 | United Elec. Coal Companies v. Rice, 80 F.2d 1 | 231H+1042 | Looking to the purpose, as well as to the words, of the Act, we are satisfied that the term "labor dispute" should be most broadly and liberally construed... | Where, after some operator had contracted with to labor union, many employees, although there was no controversy as to terms of employment, joined new union which demanded that operator break contract with old union and reinstated its discharged employees and directors... | What is a labor dispute? | Labor and Employment - Memo 21 - VP.docx | LEGALEASE-00005565 LEGALEASE-00005568 | Condensed, SA, Sub 0.39 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WNRS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,075 |
| 20244 | Haskell v. McClaud, 450 N.E.2d 691 | 46h+612 | "22 Pr'l [3. Partnership was held by partner's wrongful act] "Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefore to the same extent as the partner so acting or omitting to act. | Where client's money was in law partnership's possession when it was in partner's possession, even though partner deposited money in his personal account and converted it to his own use, since partner derived from client's plan and converted money to his own use only after he received it in ordinary course of partnership's business, trial court did not err in holding partnership responsible to client for compensatory damages. (C.23-4-1) to 23-4-1-61 (1982 Ed.). | Is a partnership bound by a partner's wrongful acts? | Partnership - Memo 3 5.8.2234.docx | ROSS 000196998-ROSS-000194909 | Condensed_SA, Sub 0.09 | 0 | | 1 | 1 | |
| 20245 | In re Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig., 864 F. Supp. 2d 451 | 25T+13(1) | "Arbitration is favored in the law." Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 526 (5th Cir.2000) (citation omitted). Accordingly, parties to arbitration agreements cannot avoid their contractual claims in tort, and proceeding against signatories and nonsignatories to the arbitration agreement... Furthermore, the Fifth Circuit has recognized that where an arbitration agreement can require a signatory to arbitrate its claims under an equitable estoppel theory, to whether to apply equitable estoppel is within the Court's discretion. Id. at 528. | Cellular telephone purchasers' breach of contract claims against telephone manufacturer based on issues with functionality of feature on phones were intertwined with purchasers' claims against wireless provider, and thus arbitration clause in provider's wireless services agreement applied to claims against manufacturer under equitable estoppel theory although manufacturer was not signatory to agreement; purchasers relied on terms of written agreement with provider in asserting claims against manufacturer, and complaints alleged that in order to maximize profits, manufacturer and provider co-marketed phone and entered into exclusivity agreement that required purchasers to obtain wireless services from provider. | Can parties avoid arbitration agreements by filing their claims in tort? | 001136.docx | LEG&LEGE 00118675-LEG&LEGE 00118676 | Condensed_SA, Sub 0.04 | | | 1 | 1 | 1 |
| 20246 | Local 205, Dirty & Soc. Agency Employees' Union, Dist. Council 1707 AFSCME, AFL-CIO v. Day Care Council of New York, 992 F. Supp. 388 | 25T+163(4) | The Union argues that the presumption favoring arbitrability, an accepted rule of construction in determining the scope of arbitration clauses in collective bargaining agreements, should apply... [long text] ...The Moses H. Cone principle requires that questions of arbitrability... | Section of the Federal Arbitration Act (FAA) imposing three-month limitation on filing motion to vacate arbitration award was not applicable to party which did not seek to vacate award originally set forth in the FAA, but which instead argued that award should be confirmed or corrected against it because it never agreed to arbitrate. 9 U.S.C.A. §§ 10, 12. | Does federal policy in favor of arbitration extend to situations in which the identity of the parties who have agreed to arbitrate is unclear? | 000656.docx | LEG&LEGE 00118700-LEG&LEGE 00118702 | Condensed_SA, Sub 0.84 | | | 1 | 1 | |
| 20247 | Hopkins v. Mississippi Valley Gas Co., 846 So. 2d 514 | 317H+103 | The attribution of negligence to a principal is 'extraordinarily dangerous' and 'terminates at the fence'... [long text] ...which the company is vested. 75 So. 2d 721, 725(?) (Miss.1998). | The duty of the utility company is to exercise reasonable care. | 000615.docx | LEG&LEGE 00110504-LEG&LEGE 0010550 | Condensed_SA | 0.93 | | 0 | | 1 | |
| 20248 | Bell v. Cen., 167 Va 526 | 38+41 | Crime has been defined as an offense which the law punishes directly, and is classified as treason, felonies, and misdemeanors. Treason is but an overt act defined by law... | "Crimes" are offense which law punishes directly, and are classified as treason, felonies, and misdemeanors, "treason" being an aggravated felony. | Is treason an aggravated felony? | Treason - Memo 9 RK.docx | ROSS 000298912-ROSS-000295013 | Condensed_SA, Sub 0.36 | | | 1 | 1 | |
| 20249 | In re Search Warrant for 415 Locust Street, Wilmington, Missouri, 272 S.W.3d 396 | 92L+4 | The Robertsons also captioned, "Motion, with Incorporated Suggestions in Support, to Quash Search Warrant, for Return of Seized Property, and for Other Related Relief." We judge a pleading by its subject matter, not its caption. Murphy v. Morley, 191 S.W.3d 120, 127, 129 (Mo.banc 2006). In their motion, the Robertsons contended that the application and the search warrant were overbroad. The application contained false, inaccurate, and misleading assertions; the application and search warrant were based on pretextual warrantless... [long text] ...command the return of all seized property to them. | The court judges a pleading by its subject matter and not its caption. | 000385.docx | LEG&LEGE 00118896-LEG&LEGE 00118898 | Condensed_SA, Sub 0.93 | | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 20230 | Matter of Keeler, 611 F.2d 157 (1979) 598 | | The definition of trade libel was addressed more directly in Ellis Inc. (Insur. 224 Cal.App.2d 69, 73, 36 Cal.Rptr. 256, 258 (1964): "Trade libel is defined as an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff (Rest.Torts § 626 and § 627 [Accord, 4 B. Witkin, Summary of California Law 3196, at 2396 (1974). Restatement of Torts § 626 (1938) defines trade libel as "one who without a privilege to do so publishes an untrue statement of fact which is disparaging to the quality of another's land, chattels or intangible thing, under circumstances which would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof would be determined thereby, is liable for pecuniary loss... | In view of fact that, under California law, willful conduct is not required to commit theft or trade disparagement, debt arising out of judgment on arbitration award that bankrupt was guilty of such torts was dischargeable in bankruptcy; Bankr. Act, 55 14 seq., 14(f), 17(a)(8), 11 U.S.C.A. 55 14 seq., 32(f), 35(a)(8). | What is trade libel? | 000990.docx | LEGALEASE 00103383 LEGALEASE 00103384 | Condensed_SA_Sub 0.59 | 0 | | | 1 | |
| 20231 | Moore v. Werner, 31 Mo. 508 | 506+7 | The only question marked in this case is whether the defendant is found here, our courts can lawfully take cognizance of actions for injuries to personal property committed beyond the limits of the state. Actions are either transitory or local. They are said to be transitory where the transaction on which they are founded might have taken place anywhere, but are local where their cause is in its nature necessarily local [1 Brook. 295.] The distinction exists in the nature of the subject of the injury complained of, and not in the means by which, or the place at which, the injury was effected. We know or my standard being movable, is the subject of injury as well in one county as another, as well in one state as another, but the cause of the affront of my land, which is immovable. If an agitor of cattle open a pin in his field, and negligently leaves his cattle to stray, whereby my horses or cattle escape their enclosure and so stray and trespass on me... (continues) ...complicated of courts of one state cannot be the settlement of a controversy that estate is local. The fault of the argument is in assuming that the injury to | The tort of local or transitory actions is the subject matter to which the injury's done, not the subject causing the injury. Injuries to persons and personal property are transitory, not local. | What is the distinction between local and transitory actions? | Venue - Memo SD-ANG.docx | LEGALEASE 00007460 LEGALEASE 00007462 | Condensed_SA_Sub 0.96 | 0 | | | 1 | |
| 20232 | Beaudette v. Massachusetts Bay Transp. Auth., 338 F. Supp. 14 189 | 272+19(4)(2) | A trespasser has been defined as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Sager v. Westfield, 26 Mass.App.Ct. 681, 685 n. 9, 574 E.2d 612 (1988)[quoting Restatement (Second) of Torts § 329 (1965)]. Trespass may occur from a involuntary mistake. 2 D'Amico, Inc. v. Boston, 345 Mass. 218, 223, n. 6, 186 N.E.2d 761 (1962) [citing Restatement of Torts § 166 (Restat. Torts § 166 cmt. c.1 17). Whether the decedent is a trespasser is a question of law for the court. Schofield, 386 Mass. 244, 433 N.E.2d 359. | Under Massachusetts law, trespass may occur from intrusion by mistake. | Can a trespass occur by mistake? | Trespass - Memo 64-JS.docx | ROSS-003151894ROSS-003152890 | Condensed_SA_Sub 0.89 | 0 | | | 1 | |
| 20233 | Ex parte Trombley, 31 Cal. 2d 801 | 231H+2526 | We return to the question whether an employer, who, having the ability to pay, refuses to pay them for performance when such are the demanded. "Loss of liquor" within the meaning of the provision which exempts "Loss of liquor" from the prohibition against constitutional guarantees of other states clearly shows that the provisions were adopted to protect the poor and honest debtor who is unable to pay his debts and were not intended to shield a dishonest man who takes an unconscionable advantage of another... (Debtor's and Proceedings Constitutional Convention, 1878-1879, 290-299; Code Civ. Proc., § 715; Gauk v. Gauk, 112 Cal. 114, 116 [44 Pac. 466]; see Clark v. State, 171 Ind. 104 [84 N.E. 584, 16 Am.Cas. 1225].) It has long been recognized that wages are in the ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, his wages will not be subject to the usual process where it is clear from Balloteria, 37 Cal. 611, 668 [161 P. 120]; re re Moffitt, 153 Cal.App.2d 217, 293 P.2d 174 Myers v. Idaho Spring, etc., Min. Co., 37 Cal.App. 321, 170 [173 P. 570; re re Bean, 29 Cal.App.2d 703] An employer who knows that wages are due has ability to pay them and still refuses to pay them acts willfully and necessarily intentionally does an act which prejudices the rights of his employee. Such conduct amounts to a "Case of fraud" within the meaning of the exception to the constitutional prohibition and may be punished by statute. | An employer who knows that wages are due, has ability to pay them and still refuses to pay them acts willfully and necessarily intentionally does an act which prejudices rights of his employee, and such conduct amounts to a "case of fraud" which may be punished by statute. Labor Code, 5 216(a); Const. art. 1, 5 15. | Is it essential to the public welfare that an employee receive his pay when it is due? | 000215.docx | LEGALEASE 00135206- LEGALEASE 00135207 | Condensed_SA_Sub 0.76 | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20254 | Alexander v. Avera St. Luke's Hosp., 768 F.3d 756 | 78+1110 | A. The ADA and ADEA Claims. The ADA and the ADEA define an "employee" as an individual employed by an employer. 42 U.S.C. " 12111(4); 29 U.S.C. " 630(f). In Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), the Supreme Court again considered the meaning of the statutory term "employee" when Congress has provided a "completely circular" definition that "explains nothing." Reversing a Fourth Circuit decision based upon "the declared policy and purposes" of the statute in issue, there ERISA, the Court reaffirmed a "well established" principle: "when Congress has used the term "employee" without defining it ... Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." Id. at 321, 322"23, 112 S.Ct. 1344 (quotation omitted). | Factors as to provision of employee benefits and tax treatment of individual weighed in favor of finding that pathologist was independent contractor of hospital, rather than employee protected by Americans with Disabilities Act (ADA) and Age Discrimination in Employment Act (ADEA); hospital did not provide benefits or malpractice insurance to pathologist, hospital did not withhold income and FICA taxes from pathologist's monthly compensation and reported his income on IRS Form 1099, rather than Form W-2, and pathologist reported his compensation as income of self-employed independent contractor. Americans with Disabilities Act of 1990, S 101(4), 42 U.S.C.A. S 12111(4); Age Discrimination in Employment Act of 1967, S 11(f), 29 U.S.C.A. S 630(f). | Who is an employee? | 003258.docx | LEGALEASE-00119230-LEGALEASE-00119231 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 20255 | State ex rel. Utilities Comm'n v. Lumbee River Elec. Membership Corp., 275 N.C. 250 | 317A+113 | In the absence of a valid grant of such right by statute, or by an administrative order issued pursuant to statutory authority, and in the absence of a valid contract with its competitor or with the person to be served, a supplier of electric power, or other public utility service, has no territorial monopoly, or other right to prevent its competitor from serving anyone who desires the competitor to do so. In Blue Ridge Electric Membership Corp. v. Duke Power Co., 258 N.C. 278, 128 S.E.2d 405, this Court said, "Unless compelled by some cogent reason, one seeking electric service should not be denied the right to choose between vendors." In Pitt & Greene Electric Membership Corp. v. Carolina Power & Light Co., 255 N.C. 258, 120 S.E.2d 749, and in Carolina Power and Light Co. v. Johnston County Electric Membership Corp., 211 N.C. 717, 192 S.E. 105, this Court recognized that, except as restricted by contract, electric membership corporations and public utility companies supplying electricity are free to compete in the rural areas of this State, notwithstanding the fact that such competition may result in substantial dupulication of electric power lines and other facilities. | Absent valid grant of such right by statute or by an administrative order issued pursuant to statutory authority and absent valid contract with its competitor or with person to be served, a supplier of electric power, or other public utility service,has no territorial monopoly or other right to prevent its competitor from serving anyone who desires the competitor to do so. | Does a person seeking electric service have the right to choose between vendors? | Electricity - Memo 32 - RK.docx | ROSS-003296225-ROSS-003296227 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 20256 | City of Colorado Springs v. Andersen Mahon Enterprises, LLP, 260 P.3d 29 | 148+2.1 | The reasons most frequently assigned by the courts for the general rule that mere plotting or planning in anticipation of a public improvement does not constitute a taking or damaging of the property affected arethat mere plotting and planning does not, in itself, amount to an invasion of property or deprive the owner of his use and enjoyment thereof; that the projected improvement may be abandoned by the condemnor and the property never actually disturbed; that the threat of condemnation is one of the conditions upon which an owner holds property; and that the general rule is in aid of the growth and expansion of municipalities. Kemper, 37 A.L.R.3d 127, " 4. | Generally, a taking of property occurs when the entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property. U.S.C.A. Const.Amend. 5; West's C.R.S.A. Const. Art. 2, S 15. | Can a plotting or planning in anticipation of a public improvement be considered a taking? | 002403.docx | LEGALEASE-00119504-LEGALEASE-00119505 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 20257 | People v. Dlugash, 41 N.Y.2d 725 | 203+520 | Preliminarily, we state our agreement with the Appellate Division that the evidence did not establish, beyond a reasonable doubt, that Geller was alive at the time defendant fired into his body. To sustain a homicide conviction, it must be established, beyond a reasonable doubt, that the defendant caused the death of another person. (Penal Law, s 125.00; CPL 70.20.) The People were required to establish that the shots fired by defendant Dlugash were a sufficiently direct cause of Geller's death. (People v. Stewart, 40 N.Y.2d 692, 697, 389 N.Y.S.2d 804, 807, 358 N.E.2d 487, 491; People v. Kibbe, 35 N.Y.2d 407, 412, 362 N.Y.S.2d 848, 851, 321 N.E.2d 773.) While the defendant admitted firing five shots at the victim approximately two to five minutes after Bush had fired three times, all three medical expert witnesses testified that they could not, with any degree of medical certainty, state whether the victim had been alive at the time the latter shots were fired by the defendant. Thus, the People failed to prove beyond a reasonable doubt that the victim had been alive at the time he was shot by the defendant. Whatever else it may be, it is not murder to shoot a dead body. (State v. Simpson, 244 N.C. 325, 333, 93 S.E.2d 425.) Man dies but once. | It is not murder to shoot a dead body. Penal Law S 125.00; CPL 70.20. | Can shooting a dead body be considered murder? | Homicide - Memo 77-RK.docx | ROSS-003286361-ROSS-003286362 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 20258 | State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A., 143 Cal. App. 4th 1098 | 217+3513(4) | "Subrogation has its source in equity and arises by operation of law (legal or equitable subrogation). [Citation.] It can also arise out of the contractual language of the insurance policy (conventional subrogation). [Citation.] The subrogation provisions of most insurance contracts typically are general and add nothing to the rights of subrogation that arise as a matter of law. [Citation.]" (Progressive, supra, 135 Cal.App.4th at p. 272, 37 Cal.Rptr.3d 434.) For example, the standard form fire insurance policy, contained in Insurance Code section 2071, includes a provision for subrogation, with the effect that the insurer may require from the insured an assignment of all rights of recovery against any loss to the extent that payment is made in full by the insurer. | While subrogation has its source in equity and arises by operation of law, it may also arise out of the contractual language of an insurance policy; subrogation provisions of most insurance contracts typically are general and add nothing to the rights of subrogation that arise as a matter of law. | Is equitable subrogation based on equity? | 002560.docx | LEGALEASE-00120039-LEGALEASE-00120040 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20259 | State v. Stevenson, 147 W. Va. 211 | 203+520 | There can be no murder without a homicide but the converse is not true. A homicide may be murder of the first degree, of the second degree, or voluntary manslaughter or involuntary manslaughter or it may be justifiable. State v. Galford, 87 W.Va. 358, 105 S.E. 237. A homicide becomes a criminal offense only if the corpus delicti is established just as in any other offense. In State v. Beale, 104 W.Va. 617, 141 S.E. 7, 141 S.E. 401, this Court said that to constitute the corpus delicti in a case of homicide two fundamental facts must be established: (1) the death; and (2) the existence of criminal agency as the cause thereof. When the State has established by the requisite proof the corpus delicti the presumption is that it is murder of the second degree. If the State would elevate the offense to murder of the first degree, the State must establish the characteristics of that crime and, conversely, if the prisoner would reduce it to manslaughter or justifiable homicide the burden of proof rests upon him. State v. Morrison, 49 W.Va. 210, 38 S.E. 481; State v. Douglass, 28 W.Va. 297; State v. Cain, 20 W.Va. 679. | There can be no murder without homicide, but the converse is not true. | Can there be murder without homicide? | Homicide - Memo 83 - RK.docx | ROSS-003283478-ROSS-003283479 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 20260 | People v. Shimonaka, 16 Cal. App. 117 | 203+520 | Defendant's counsel advance the rather singular contention that the verdict is not supported because the evidence does not bring the case within the definition of manslaughter, first, because the killing was not involuntary; and, second, it was not voluntary manslaughter, which consists of the unlawful killing of a human being without malice upon a sudden quarrel or in the heat of passion. "If, then," says the brief, "there does not appear to have been a sudden quarrel, and the defendant did not act in the heat of passion, the verdict would be unsupported by the evidence." Just what impelled defendant to kill Tenouye can only be surmised. The evidence justified the jury in finding that he killed him without apparent cause; that the killing was unlawful and under circumstances implying criminal intent. It would be a strange condition of the law that would acquit defendant because the jury found him guilty of a lesser crime than the one charged and proved. It is settled that the crime of murder necessarily includes the crime of manslaughter. People v. McFarlane, 138 Cal. 481, 71 Pac. 568, 72 Pac. 48, 61 L.R.A. 245. | The crime of murder includes manslaughter. | Does the crime of murder include manslaughter? | Homicide - Memo 86 - RK.docx | ROSS-003289623-ROSS-003289625 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 20261 | Kline v. 1500 Massachusetts Ave. Apartment Corp., 439 F.2d 477 | 233+1231 | Treating the modern day urban lease as a contract, this court in Javins, supra, recognized, among other things, that repair of the leased premises in a multiple dwelling unit may require access to equipment in areas in the control of the landlord, and skills which no urban tenant possesses. Accordingly, this court delineated the landlord's duty to repair as including continued maintenance of the rented apartment throughout the term of the lease, rightfully placing the duty to maintain the premises upon the party to the lease contract having the capacity to do so, based upon an implied warranty of habitability. | Duty of taking protective measures guarding entire premises and areas peculiarly under landlord's control against perpetration of criminal acts is on landlord, the party to lease contract having effective capacity to perform necessary acts. | Is the modern day apartment lease regarded as a contract? | 003288.docx | LEGALEASE-00120475-LEGALEASE-00120476 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 20262 | In re Johnson's Estate, 240 Cal. App. 2d 742 | 366+1 | The above notwithstanding, the court applied the rule or doctrine of equitable subrogation to the facts at bar. Said to be controlling precedent for such action is Estate of Kemmerrer, 114 Cal.App.2d 810, 251 P.2d 345, 35 A.L.R.2d 1393, wherein the decedent's mother paid for the funeral expenses and his mistress for the expenses incident to decedent's last illness. Each of the above payments was voluntarily made. Decedent's widow appealed from the order allowing reimbursement and disallowing her claim that the estate be set aside to her under sections 640 and 645, Probate Code, both governing estates under $2500. She contended that since the decedent's creditors above mentioned had received their money and therefore had no claim against his estate, such expenses are to be deemed "paid" within the meaning of section 645 and she, as the surviving widow, was entitled to receive the estate free of any claims by those who had assumed to arrange for care of decedent during his last illness and for his subsequent burial. The court perceived no difficulty in applying the doctrine of equitable subrogation to the factual situation there presented. Quoted with approval in support of such conclusion is this discussion of the rule in American Jurisprudence: "The doctrine of (equitable) subrogation is not a fixed and inflexible rule of law or of equity. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. Equity first applied the doctrine strictly and sparingly. It was later liberalized, and its development has been the natural consequence of a call for the application of justice and equity to particular situations.Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance and extent, and is no longer, as formerly, limited to sureties and quasi sureties, but is now broad and expansive and has a very liberal application. As now applied, it is broad enough to | Doctrine of equitable subrogation will be applied liberally to promote justice. | Is the doctrine of equitable subrogation the natural consequence of a call for the application of justice and equity to particular situations? | 003561.docx | LEGALEASE-00120323-LEGALEASE-00120325 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 20263 | People v. Baker, 20 N.Y.3d 354 | 315+40 | A thing in action is defined in Civil Code section 953 as "a right to recover money or other personal property by a judicial proceeding." (1) A thing in action includes a right of action for personal injury ( Justis v. Atchison etc. Ry. Co. (1910) 12 Cal.App. 639 [108 P. 328]), breach of contract ( Meserve v. Superior Court (1934) 2 Cal.App.2d 468 [38 P.2d 453]), or fraud ( Wikstrom v. Yolo Fliers Club (1929) 206 Cal. 461 [274 P. 959]). Although a limited definition could have been applied to things in action, the courts have expanded its coverage so that things in action "now represent things to the imagination in the light of tangible objects; and, as such, they are the subject of contract, sale, gift, mortgage, bailment, and pledge; and, under the provisions of our Codes, they are personal property, subject to taxation, attachment, execution, levy, and sale." ( Payne v. Elliot (1880) 54 Cal. 339, 341-342.) | A "thing in action" for purposes of Civil Code includes a right of action for personal injury, breach of a contract, or fraud. West's Ann.Civ.Code, S 953. | What does a thing in action include? | 002983.docx | LEGALEASE-00120437-LEGALEASE-00120438 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 23,876 | 9,079 |
| 20204 | In re Lamb, 86 B.R. 184 | 289=429 | The second question concerns Clipton Lamb's failure to take a large part in the management of the business. The public perception of a partnership may be that the partners will contribute equally and each have equal responsibilities in the management of the business, but this is not necessary for the existence of a partnership. Weiner v. Dedmon, 233 AA 854, 103 N.W.3d 1091 (Mo). Partners may agree that one will be the primary manager of the business. Dils v. DeLira Corp., 145 Cal.App.2d 124, 302 P.2d 397 (1956). Furthermore, partnerships are often created in which a "silent" partner contributes money, but not skill, and an active partner contributes his labor and openly manages the business. Watson v. Watson, 231 Ind. 385, 108 N.E.2d 893 (1951); Brodiers & Dreyer v. Conner, 117 Ga. 759, 45 S.E. 371 (1903); see also Garrett v. Hunnel, cited above; Driesbaum v. Lewis, cited above. The court believes this to be particularly true where, as here, the silent active partners even though Charles was not active in the day to day operation or | It is not necessary for existence of a partnership that the partners contribute equally and have equal responsibilities in management of the business. | What does a silent partner contribute to the partnership? | 0560.docx | LEGALEASE-00083714-LEGALEASE-00083715 | Condensed, SA, Sub 0.86 | 0.86 | 0 | 1 | | | |
| 20205 | Illinois Cent. R. Co. v. Franklin Cty, 387 Ill. 301 | 92=98 | Section 13 of the Public Utilities Act of 1913, Hurd's Ill Rev Stat 1913, chap. 111a, par. 10, defines the term "public utility," as used in the act, to mean and "include" every corporation, company or association who may be engaged in business of storing, warehousing or managing any equipment or property used, among other things, "for the storage or warehousing of goods." This, provision is followed by a definition of the term "warehouse," which is defined to include elevators or storehouses where grain is stored or handled for compensation. In the use of State Public Utilities Com. v. Monarch Refrigerating Co., 267 Ill. 528, 108 N.E. 716, 720, Ann.Cas.1916A, 528, it was contended that under the nearly expressio unius est exclusio alterius, this inclusion clause limited the application of the act to warehouses used for the storage of grain, as specified in the following clause defining "warehouse." It was argued that by the specific definition of warehouse, as including warehouses used for the storage of grain, the preceding language referring to warehouses used for the storage of goods was limited to warehouses used for the storage of grain, and did not extend to warehouses used for the storage of other goods. In answer to this argument it was stated that because the legislature uses the word "grain," instead of the word "goods," when it says that the term "warehouse" shall include "grain elevators or storehouses where grain is stored or handled," the meaning of the word "grain" in connection with the words "elevators or storehouses," is an indication of all other elevators or storehouses where any other property, goods or commodity is stored, under the rule that the general mention of things limited in its nature, in terms of general application of the act, to warehouses used for the storage of grain, as specified in the inclusion clause defining the term "warehouse." It was argued that by the specific definition of warehouse, as including warehouses used for the storage of grain, the preceding language referring to warehouses used for the storage of goods was limited to warehouses used for the storage of grain. The inclusion clause is not regarded as nearly the contention we did not regard. The reason "Expressio unius est exclusio alterius," should never be followed to the extent of overriding a different and clearly expressed intention. E.g. | Under general powers granted to Commerce Commission by Public Utilities Act, commission had employ power, even prior to 1917 amendment of statute defining compressor's powers respecting grade crossings, to require an existing grade crossing replaced, repaired, or relocated. Smith-Hurd Stats. c. 1112/1/2, S.62. | What does Section 13 of the Public Utilities Act define public utility as? | Public Utilities_Memo 71 - AM.docx | ROSS-003218 0824-ROSS-003284561 | Condensed, SA, Sub 0.88 | 0.88 | 0 | 1 | | | |
| 20206 | Wing v. Minnesota Dep't of Human Servs., 1287 I.M. 922 | 170BK=1667 | The Minnesota Supreme Court considered a statute similar to section 256.045 in Anderson v. Minnesota Department of Human Resources, 253 Minn. 278, 126 N.W.2d 264 (1964). There, the parties disputed whether a thirty day period of appeal applicable to final orders of the commissioner applied to a decision defining the issue, the court, after describing the original version of the relevant statute, a statute structured very much like the one at issue in this case: "The operating provision sets up a variety of such written notice of appeal upon all adverse parties within the time fixed for appeal. The original version of... with the language of the Minnesota Commission." Id. at 267 n. 6. That language prompted the Minnesota Industrial Commission to conclude that any person had to occur within the relatively short period of appeal limited to secure review of the commissioner's decision." Id at 267. For respondents to succeed on their interpretation of the prior version and noted that the new language in the statute... with proof of service..." with the commission." Id. at 267 (quoting Minn.Stat §176.041). The court held that ten days after a copy of the order has been filed or served, and thirty days after a copy of the order has been filed is filed with the Industrial Commission." Id. at 267-9. 6. That language prompted the Court held that it was "contrived" to apply the time limit to both actions. Id. at 269. Notably, the language in this statute differs from the general rule that Minnesota courts "in construing a statute granting a right of appeal... should seek to avoid forfeiture of the right." Id. | In reviewing an appeal from a grant of a motion to dismiss for failure to state a claim, the Court of Appeals construes the complaint in the light most favorable to the nonmoving party, Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. | To construing statute granting the right of appeal, should the court seek to avoid forfeiture of such right? | 003140.docx | LEGALEASE-00121611-LEGALEASE-00121612 | Condensed, SA, Sub 0.88 | 0.88 | 0 | 1 | | | |
| 20207 | Young Partners v. Bd. of Educ., Unified Sch. Dist. No. 214, Grant Cty., 284 Kan. 397 | 148=59 | Young contend that by authorizing school districts to condemn reversionary interests "for any purpose whatsoever," K.S.A. 72°8212(a)(b) violates the Fifth and Fourteenth Amendments to the United States Constitution. The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "[n]o private property [shall] be taken for public use, without just compensation." | While the legislature possesses no power to authorize the appropriation of one's property for a private use or purpose, the right to take private property for public use is inherent in the state, and the legislature may authorize the acquisition and appropriation of private property for a public use, provided the owner is compensated therefor. U.S.C.A. Const.Amend. 5. | How is Fifth Amendment made applicable to the states? | Eminent Domain - Memo 17+ - AK.docx | ROSS-003289 3804-ROSS-003283931 | Condensed, SA, Sub 0.06 | 0.06 | 0 | 1 | | | |

Appendix D

3570

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20268 | Allen v. Hawley, 6 Fla. 142 | 354+17.5 | Judge Story qualifies the doctrine by stating it to be so "in the absence of all positive stipulations to the contrary," (Story on Part., " 417) and thereby tacitly admits that the general rule may be modified by the contract or agreement of the parties. Chancellor Kent also recognizes the exception, and with his usual clearness, has stated the distinction between part ownership and partnership in this species of property. He says, "the cases recognize the clear and settled distinction between part owners and partners. Partnership is but a tenancy in common, and a person who has only a part interest in a ship is generally a part owner, and not a joint tenant or partner. As part owner he has only a disposing power over his own interest in the ship, and he can convey no greater title, but there may be a partnership as well as cotenancy in a vessel; and in that case one part owner, in the character of partner, may sell the whole vessel, and he has such an implied authority over the whole partnership effects as we have already seen. The vendee in a case free from fraud, will have an indefeasable title to the whole ship. When a person is to be considered as a part owner or as a partner in a ship, depends upon circumstances."--(3 Kent's Com., Sec. 45, p. 154, 4th Ed.) | As a general rule, the several owners of a merchant vessel or steamboat hold their respective interests as tenants in common, and not as copartners, and are to be governed by the laws applicable to that species of tenure; but to this rule there may be exceptions, either growing out of the express agreement of the parties, or to be implied from the nature and character of the business or adventure in which they may be about to engage. | "Can a part owner of a ship in the character of partner, sell only his own share?" | 021853.docx | LEGALEASE-00121197-LEGALEASE-00121198 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 20269 | Prince George's Hosp. Ctr. v. Advantage Healthplan Inc., 865 F. Supp. 2d 47 | 366+21 | Subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Thrasher"Lyon v. Illinois Farmers Ins. Co., 861 F.Supp.2d 898, 909 n. 1 (N.D.Ill.2012) (quoting Black's Law Dictionary (9th ed.2009)); see also Group Hospitalization and Medical Svcs., Inc. v. Richardson, 946 F.Supp. 50, 53 (D.D.C.1996). Equitable subrogation, also known as legal subrogation, "arises by operation of law or by implication in equity to prevent fraud or injustice." Black's Law Dictionary (9th ed.2009). Equitable subrogation may arise "when (1) the paying party has a liability, claim, or fiduciary relationship with the debtor, (2) the party pays to fulfill a legal duty or because of public policy, (3) the paying party is a secondary debtor, (4) the paying party is a surety, or (5) the party pays to protect its own rights or property." Id. "Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it, to prevent unjust enrichment. The rights of the party who paid the debt in no way depend upon showing a contract provision or formal assignment; evidence of payment is sufficient." Nat'l Union Fire Ins. Co. v. Riggs Nat'l Bank, 646 A.2d 966, 968 (D.C.1994). | "Out-of-network" hospital, which provided emergency services under the Emergency Medical Treatment and Active Labor Act (EMTALA) to Medicaid-eligible patients insured under managed care organization's (MCO) plan, failed to state equitable subrogation claim against MCO under District of Columbia (D.C.) law because it did not demonstrate that the patients would have claims for monetary compensation against MCO which would result in a "debt" that hospital extinguished, nor had hospital identified existing claims that the patients made against MCO for which hospital could step into their shoes to advance. Emergency Medical Treatment and Active Labor Act, S 1867(b)(1), 42 U.S.C.A. S 1395dd(b)(1). | Does the doctrine of equitable subrogation arise by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid? | Subrogation - Memo # 553 - C - AP.docx | ROSS-003314703-ROSS-003314704 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20270 | Am. Contractors Indem. Co. v. Saladino, 115 Cal. App. 4th 1262 | 366+7(1) | "Payment of a principal's debt by a surety is the prototypical situation in which the equitable right to subrogation arises. "Subrogation is the right to recover from the debtor-obligor. A surety, e.g., pays the principal debtor's obligation to the creditor, and in equity is substituted for the creditor, or subrogated to his rights against the debtor." (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, " 169, p. 848, italics in original.). | "Subrogation" is the right to recover from the debtor-obligor; a surety pays the principal debtor's obligation to the creditor, and in equity is substituted for the creditor, or subrogated to his or her rights against the debtor. | Is subrogation a right to recover from a debtor-obligor? | 044003.docx | LEGALEASE-00121354-LEGALEASE-00121355 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20271 | In re Darosa, 318 B.R. 871 | 366+1 | Three forms of subrogation exist. The first type is "conventional" or "contractual" subrogation, which arises from an express or implied agreement between the subrogor and subrogee. Hamada, 291 F.3d at 649. The second type is statutory subrogation, such as the type that arises by virtue of section 509(a). Id. The third type is "legal" or "equitable" subrogation. Id. | Three forms of subrogation exist: conventional or contractual subrogation, which arises from an express or implied agreement between subrogor and subrogee; statutory subrogation, which arises by virtue of statute; and legal or equitable subrogation. | Do three forms of subrogation exist? | Subrogation - Memo # 864 - ES.docx | ROSS-003285017-ROSS-003285018 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 20272 | Freeman & Co. v. Bolt, 132 Idaho 152 | 113+1 | Bolt also contends that the district court should have followed his allegedly unrebutted testimony at trial that all thirteen items Bolt requested as "costs" are customarily included within the definition of that term by contractors operating in south central Idaho. Even assuming this to be true, a custom of trade cannot be invoked against a party not in the same trade. In Smith v. Westervelt, the court stated: | Custom of trade cannot be invoked against a party not in the same trade. | Can a custom of trade be invoked against a party not in the same trade? | 014259.docx | LEGALEASE-00122519-LEGALEASE-00122520 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 20273 | Geller v. Schulman, 110 N.Y.S.2d 862 | 302+8(5) | For a first cause, the plaintiffs attempt to set forth a simple action for money had and received but the allegations are insufficient to state such a cause of action. An allegation of indebtedness is not an allegation of fact but of a conclusion of law. There is no allegation of a promise of defendant to pay any money to plaintiffs and there is no presumption that the payment of a sum of money implies a promise to repay or imports an obligation to repay. Tate v. American Woolen Co., 114 App.Div., 106, 99 N.Y.S. 678. Therefore, the motion to dismiss the first cause of action in the complaint is granted with leave, however, to plead over. | An allegation of indebtedness is not an allegation of fact but a conclusion of law. | Is an allegation of indebtedness an allegation of fact? | Pleading - Memo 130 - RMM.docx | ROSS-003285566-ROSS-003285567 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 20274 | Dan Cristiani Excavating Co. v. Money, 941 N.E.2d 1072 | 30+205 | First, we must review if Cristiani has waived this argument on appeal. Cristiani's motion in limine to preclude Lampton's testimony raised in advance the issue of whether Lampton would testify to hearsay statements by other doctors, which the trial court denied. However, a ruling on a motion in limine is independent from the admission of evidence at trial. Emerson v. State, 524 N.E.2d 314, 315 (Ind.1988) ("A denial of a motion in limine is not a final ruling on the admission of evidence."); see Perez v. Bakel, 862 N.E.2d 289, 295 (Ind.Ct.App.2007) ("[I]t is well-settled that in order to preserve error in the denial of a pretrial motion in limine, the appealing party must object to the admission of the evidence at the time it is offered."). | Excavating company waived for appeal issue of whether testimony of certified nurse life care planner regarding a life care plan prepared for grade checker was inadmissible because it served as an improper conduit for rehabilitation specialist who did not testify, in negligence action grade checker brought against excavating company after bulldozer ran over his foot; though company made a motion in limine to exclude nurse's testimony, when company during trial raised an objection to nurse's testimony trial court sustained the objection to the extent the question asked what the rehabilitation specialist told the nurse, nurse did not testify as to what rehabilitation specialist told her, nurse did not testify why any of the medical treatments were recommended, and company never raised an objection at trial to nurse's qualifications as an expert in the area of life care planning. Rules of Evid., Rule 702. | Is a ruling on a motion in limine independent from the admission of evidence at trial? | Pretrial Procedure - Memo # 103 - C - RY.docx | ROSS-003296889-ROSS-003296890 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20275 | Groves v. Ihsanullah, 2016-Ohio-7703 | 307A+3 | A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling. Thus, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." Defiance v. Kretz, 60 Ohio St.3d 1, 4, 573 N.E.2d 32, 35, (1991); citing State v. Grubb, 28 Ohio St.3d 199, 201"202, 503 N.E.2d 142, 145 (1986). | Counsel for deceased patient's mother did not, by inquiring on cross-examination of defense expert witness as to whether witness assumed patient had history of drug seeking, violate motions in limine limiting witness's testimony regarding substance and drug abuse opinions and excluding evidence concerning patient's prior emergency room encounters to request narcotic prescription refills and, thus, mother was prejudiced by trial judge's sanctioning of counsel through issuance of curative jury instruction, entitling mother to new trial in wrongful death and medical malpractice action against hospital and emergency care provider premised on patient's death due to prescription drug overdose; liminal motions were not final, and trial judge overruled defense objections to questioning. Rules Civ.Proc., Rule 59(A)(1). | Is a motion in limine a tentative ruling for trial purposes? | 024163.docx | LEGALEASE-00122048-LEGALEASE-00122049 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 20276 | Bay Point Properties v. Mississippi Transp. Comm'n, 201 So. 3d 1046 | 148+316 | Bay Point argues the trial court erred in granting MTC's motion in limine, limiting evidence of abandonment of the easement to the minutes of the Commission. We review evidentiary matters for an abuse of discretion. Ware v. Entergy Miss., Inc., 887 So.2d 763, 766 (Miss.2003). There is no abuse of discretion in granting a motion in limine "if the court determines that (1) the material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." Id. | It was within the trial court's discretion not to grant landowner's attorney fee request for $680,000 in full, but trial court's failure to award any reimbursement at all was manifestly wrong and in direct violation of statute providing that, where an inverse condemnation proceeding is instituted by the owner of any right, title or interest in real property because of use of his property in any program or project in which federal and/or federal-aid funds are used, the court, rendering a judgment for the plaintiff in such proceeding and awarding compensation for the taking of property, shall determine and award plaintiff such sum as will, in the opinion of the court, reimburse such plaintiff for his reasonable costs; Mississippi Transportation Commission (MTC) used federal funds to finance construction of the park, landowner was the plaintiff in this inverse-condemnation proceeding, and jury rendered a verdict for landowner in the amount of $500. West's A.M.C. S 43-37-9. | When does a grant of motion in limine is without an abuse of discretion? | 024404.docx | LEGALEASE-00122060-LEGALEASE-00122061 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 20277 | In re Flamingo 55, 378 B.R. 893 | 366+1 | Subrogation has a long history. See M.L. Marasinghe, An Historical Introduction to the Doctrine of Subrogation: The Early History of the Doctrine I & II, 10 Val. U.L.Rev. 45 & 275 (1976). See also Celotex Corp. v. Allstate Ins. Co. (In re Celotex Corp.), 289 B.R. 460, 467 (Bankr.M.D.Fla.2003) (citing the 1905 edition of Pomeroy's Equity Jurisprudence). But as with any venerable equitable doctrine, it is to be flexibly applied. It is "a legal fiction and because it is a creature of equity it "is enforced solely for the purpose of accomplishing the ends of substantial justice." " Taxel v. Chase Manhattan Bank, USA, N.A. (In re Deuel), 361 B.R. 509, 517 (9th. Cir. BAP 2006) (quoting Hamada, 291 F.3d at 649). As a consequence, the application of the legal principles involved must be undertaken with an eye to the relative equities. And it is to those equities that this opinion now turns. | As with any venerable equitable doctrine, subrogation is to be flexibly applied. | Is subrogation to be flexibly applied? | 043832.docx | LEGALEASE-00121810-LEGALEASE-00121812 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 20278 | Am. Transit Ins. Co. v. State, 225 A.D.2d 117 | 13+61 | Moreover, claimant's first cause of action fails because the damages allegedly sustained by claimant due to improper diversions of moneys from the Fund could not be calculated and, thus, are speculative in nature. A claim does not accrue until damages are ascertainable (see, Otis El. Co. v. State of New York, 52 A.D.2d 380, 383 N.Y.S.2d 920). Further, although claimant was not a party to the litigation, claimant's position and obligations under the Fund were altered and improved by the settlement. The repayments being made by the State will postpone the need for additional contributions from claimant and, thus, claimant's loss, if any, cannot be calculated until the State's repayments are complete. | Claim does not accrue until damages are ascertainable. | Does a claim accrue before damages are ascertainable? | Action - Memo # 169 - C CS.docx | ROSS-003282785-ROSS-003282787 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 20279 | In re Bounds, 495 B.R. 725 | 13+61 | "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1946). To possess a right to sue, some legal injury is required. Atkins v. Crosland, 417 S.W.2d 150, 153 (Tex.1967). Whereas discovery of that injury is relevant to the determination of when the statute of limitations begins to run, it is not relevant to the determination of when a cause of action accrues. Swift, 129 F.3d at 798. As a general rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996) (citations omitted). "[T]he focus, then, is upon the moment the injury occurred." Swift, 129 F.3d at 798. | Under Texas law, when act setting injury in motion is itself a completed wrong, such as an invasion of some personal or property right of plaintiff, the act and legal injury occur simultaneously, and cause of action "accrues" from time that act is committed, even though little, if any, actual damage occurs immediately upon commission of act. | Does the accrual of a cause of action mean the right to institute and maintain a suit? | Action - Memo # 65 - C - LK.docx | ROSS-003301644-ROSS-003301645 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20280 | Sec'y of Agric. v. Cent. Roig Ref. Co., 338 U.S. 604 | 23+3.4(1) | I. In making quota allotments the Secretary of Agriculture must of course keep scrupulously within the limits set by the Sugar Act of 1948. In devising the framework of control Congress fixed the flat quotas for the sugar-producing areas. Congress could not itself, as a practical matter, allot the area quotas among individual marketers. The details on which fair judgment must be based are too shifting and judgment upon them calls for too specialized understanding to make direct congressional determination feasible. Almost inescapably the function of allotting the area quotas among individual marketers becomes an administrative function entrusted to the member of the Cabinet charged with oversight of the agricultural economy of the nation. He could not be left at large and yet he could not be rigidly bounded. Either extreme would defeat the control system. They could be avoided only by laying down standards of such breadth as inevitably to give the Secretary leeway for his expert judgment. Its exercise presumes a judgment at once comprehensive and conscientious. Accordingly, Congress instructed the Secretary to make allotments "in such manner and in such amounts as to provide a fair, efficient, and equitable distribution" of the quota. | In making quota allotments under Sugar Act of 1948, Secretary of Agriculture must keep scrupulously within statutory limits, but has discretion commensurate with the legislative goal, requiring continuous detailed administrative supervision. Sugar Act of 1948, S 1 et seq., 7 U.S.C.A. S 1100 et seq. | What kind of allotments did Congress instruct the Secretary of Agriculture to make? | 006707.docx | LEGALEASE-00122643-LEGALEASE-00122644 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20281 | Alfred Dunhill of London v. Republic of Cuba, 425 U.S. 682 | 221+159 | In concluding that the act of state doctrine should not apply to the purely commercial acts of sovereign nations, Mr. Justice WHITE relies on the widespread acceptance of the "restrictive theory" of sovereign immunity, which considers an actual sovereign to be acting in a "private," or commercial, capacity. The restrictive theory of sovereign immunity has not been adopted by this Court. But even if we assume that it is the law in this country, it does not follow that there should be a commercial act exception to the act of state doctrine. | Refusal of sovereigns to repay funds mistakenly paid to them by American importers for prereimbursement cigar shipments, subsequent to 1960 Cuban "intervention" or nationalization of the business and assets of five cigar manufacturers, did not constitute an act of state or indicate that the intervention had governmental, as opposed to mere commercial, authority for the refusal to repay. | Does the act of state doctrine apply to the purely commercial acts of sovereign governments? | 019698.docx | LEGALEASE-00123714-LEGALEASE-00123716 | Condensed, SA, Sub 0.31 | | 0 | 1 | 1 | 1 | 1 |
| 20282 | Crystallex Int'l. Corp. v. Petroleos de Venezuela, S.A., 213 F. Supp. 3d 683 | 221+142 | CITGO/defendants contend that Plaintiff's claims are barred by the act of state doctrine, because resolution of Plaintiff's claims "would call into question the validity of an official act performed within the sovereign's territory." (D.I. 12 at 7). The act of state doctrine requires courts, in balancing the national interest with the desire of litigants to obtain decisions on the merits of their claims. See Textronics v. W.S. Kirkpatrick, Inc., 847 F.2d 1052, 1058 (3d Cir. 1988), Due to the separation of powers in such a scheme, the Supreme Court has not imposed "rigid rules to govern the doctrine's application." As applied by the courts responsible for making the determination on a case-by-case basis. Id. As part of this analysis, courts are called upon to "analyze the nature of the questioned conduct and the effect upon the parties, in addition to appraising the sovereign's role." Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1293 (3d Cir. 1979). The doctrine is "not lightly to be imposed." (Id., see also Envtl. Tectonics, 847 F.2d at 1060-61 (expressing "concerns with too sweeping an application of the doctrine"). | Act of state doctrine is not lightly to be imposed. | Is the act of state doctrine to be imposed lightly? | 019916.docx | LEGALEASE-00123600-LEGALEASE-00123601 | Condensed, SA, Sub 0.96 | | | 1 | 1 | 1 | 1 |
| 20283 | | 221+142 | Petitioners point out, however, that the facts necessary to establish respondent's claim and that establish that the contract was unlawful. Specifically, they note that in order to prevail respondent must prove that petitioner defrauded Amatex and Ajmerican officials received, payments that violate Nigerian law, which would, they assert, support a finding that the contract is invalid under Nigerian law. Assuming that to be true, it still does not suffice. The act of state doctrine is not some vague doctrine of abstention but a "principle of decision binding on federal and state courts alike." Sabbatino, supra, 376 U.S., at 427, 84 S.Ct., at 939 (emphasis added). As we said in Ricaud, "the act within its own boundaries of one sovereign State... becomes... a rule of decision for the courts of this country." 246 U.S., at 310, 38 S.Ct., at 314. Act of state issues only arise when a court must decide that, i.e., when the outcome of the case turns upon the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine. That is the situation here. Regardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires. Cf. Sharon v. Time, Inc., 599 F. Supp. 538, 561 (SDNY 1984) ("The issue in this litigation is not whether [the alleged] acts are valid, but whether they occurred"). | Act of state doctrine does not establish a exception to obligation of United States courts to decide cases and controversies properly presented to them. On the contrary, it requires that courts in some circumstances defer to legislative and executive acts of foreign governments, but merely requires that, in process of deciding, acts of foreign sovereigns taken within their own jurisdictions be deemed valid. | Is the act of state doctrine binding on federal and state courts alike? | International Law - Memo # 177 - C - PH3.docx | ROSS-003295104-ROSS-003295327 | Condensed, SA, Sub 0.79 | | | 1 | 1 | 1 | 1 |
| 20284 | United States v. Noriega, 746 F. Supp. 1506, aff'd, 117 F.3d 1206 | 110+79 | Grounded in customary international law, the doctrine of head of state immunity provides that a head of state is not subject to the jurisdiction of foreign courts, at least as to official acts taken during the ruler's term of office. In re Grand Jury Proceedings, Doe # 700, 817 F.2d 1108, 1110 (4th Cir.), cert. denied, 484 U.S. 890, 108 S.Ct. 212, 98 L.Ed.2d 176 (1987); In re Doe, 860 F.2d 40, 44 (2d Cir. 1988). The rationale behind the doctrine is to promote international comity and respect among sovereign nations by ensuring that leaders are free to perform their governmental duties without being subject to detention, arrest, or embarrassment in a foreign country's legal system. In re Grand Jury Proceedings, Doe # 700, 817 F.2d at 1110; see generally, Note, Resolving the Confusion Over Head of State Immunity: The Defined Right of Kings, 86 Colum. L.Rev. 169, 171 (1986). | Panamanian defendant who was brought before district court through military invasion filed a motion to dismiss affirmatively agreed not to raise foreign sovereign from doctrine in limine, which waived extradition treaty or by established practice thereunder, and thus was not entitled to have treaty-based connections to United States in violation of treaty; Treaty Providing for the Extradition of Criminals, May 25, 1904, United States-Republic of Panama, Art. I, 34 Stat. 2851. | Under the doctrine of head of state immunity, is the head of state not subject to the jurisdiction of foreign courts? | 020264.docx | LEGALEASE-00124115-LEGALEASE-00124116 | Condensed, SA, Sub 0.41 | | | 1 | 1 | 1 | 1 |
| 20285 | Dwyer v. Kansas City Missouri Sch. Dist., 451 S.W.3d 784 | 30+159 | Appellant's appeal is from the trial court's decision denying her motion in limine to prevent the testimony of psychological witnesses at the hearing to modify. In ruling on a motion in limine, a court determines in limine whether evidence is admissible to which it is directed. Fette v. Lindner, CoreLogic, 380 S.W.3d 51 (Mo. App.W.D.). A ruling on a motion in limine is interlocutory and thus is subject to change during trial. State v. Morgan, 366 S.W.3d 565, 577 (Mo. banc 2012) (citing State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc 1992). Franklin App. No. 06AP057 1234 and 06AP009"1235, 1 997 WL 362360, Because a trial court is free to change its ruling during trial, a motion in limine, in and of itself, preserves nothing for appellate review. State v. Evans, 992 S.W.2d 275, 284 (Mo. banc 1999); 68 S.W.3d 432, 436 (Mo. banc 2002). A ruling denying a motion in limine is interlocutory only and subject to change during the course of trial. Id. Denial of a motion in limine, in itself, preserves nothing for appeal. No appellate review... the ruling on the motion itself does not preserve the error for appellate review. Unless the proponent makes an offer of proof at trial showing what the evidence would have been and why it would be relevant. Evans, 992 S.W.2d at 284. State v. Anderson, 698 S.W.2d 849, 851 (Mo. banc 1985). Finally, when an objection to evidence is sustained, the party must make an offer of proof. Id. Gieffels, 702 S.W.2d at 78-79. A motion in limine preserves nothing for appeal. State v. Purlee, 839 S.W.2d at 592 (Mo. banc 1992). A trial court's ruling in limine is interlocutory only and subject to change during the course of trial. This ruling, in and of itself, preserves nothing for appeal. | Ruling on a motion in limine is interlocutory and subject to change during trial, and thus, it preserves nothing for appeal. | Is a trial court at liberty to change its ruling on a motion in limine once the hearing or trial has begun? | Pretrial Procedure - Memo # 235 - C - DR8.docx | ROSS-003211604-ROSS-003311609 | Condensed, SA, Sub 0.92 | | 0 | 1 | 1 | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 20286 | R & R Auto Ctr. v. Farmers Grp., 140 Cal. App. 4th 127 | 307A+3 | In so doing, we counter-apprise the whole-sale disposition of a case through judge-and-jury motions in limine. (See Estate of Lance v. Superior Court (2002) 98 Cal.App.4th 592, 120 Cal.Rptr.2d 594.) No matter how logical a moving party's motion in limine may be, a judge who wholesale engages in weighing the evidence on a motion in limine. A judge is in the ticklish situation of needing to judge the case in some manner, and on the other hand, to give the parties their day in court and let the jury weigh the evidence. While it may be tempting to look at a case in the macro sense, the deck is in the details. The moving party is concerned that the other party may be trying to use evidence for an improper purpose of being confused or misleading, without asking away the other party's hallowed right to a jury trial. (See Bonds v. Bank of America (2001) 89 Cal.App.4th 189, 195, 107 Cal.Rptr.2d 803.) | Trial court's ruling on motions in limine, precluding insured used car dealership from presenting any evidence on the action or business practice claim against insurer that had sold insured lemon law policy that covered only new cars, was tantamount to compelled summary ruling to balance competing concerns of moving insurer against right of insured to present evidence. West's Ann.Cal.Bus.& Prof.Code § 17200. | Should a judge generally weigh the evidence on a motion in limine? | 024203.docx | LEGALEASE 00125000-LEGALEASE 00125001 | Condensed, SA, SA 0.56 | | 0 | | | 1 | |
| 20287 | Owens-Illinois v. Armstrong, 326 Md. 107 | 115+227.5 | We agree with the Court of Special Appeals' conclusion that a cause of action in negligence does not accrue until each element is present. One must have evidence of each element." Armstrong, 87 Md.App. at 724-25, 591 A.2d at 556. In a negligence claim, a plaintiff must show damages before the plaintiff can establish a cause of action. Therefore, Armstrong's noneconomic damages must, of necessity, be determined at the time this cause of action accrues. The breach, duty, and causation elements naturally give rise to the requisite injury. Likewise in a strict liability claim, the existence of the other essential elements of the claim will not provide the resultant injury. Therefore, Armstrong's noneconomic damages must be determined under § 11-108. Standing. 3 Standard J. Proceedings: Article only if this "injury" came into existence on or after July... | Cause of action "arises," for purposes of determining applicability of statutory cap on noneconomic damages, when first comes into existence, rather than when it is discovered. Code, Courts and Judicial Proceedings, § 11-108. | Is a cause of action said to have arisen when facts exist to support each element? | 005386.docx | LEGALEASE 00124684-LEGALEASE 00124685 | Condensed, SA, SA 0.68 | | 1 | | | 1 | |
| 20288 | Slater v. Farmland Mut. Ins. Co., 334 N.W.2d 728 | 13+41 | Fundamental to our tort law is that a cause of action accrues only when all of the necessary elements have occurred. See, e.g., Osburn v. Stark, 252 N.W.2d 741, 745 (Iowa 1977); see also W. Prosser, Law of Torts 30, at 143 (4th ed. 1971). In the present case, the injury did not occur until March 1980. 539 F. At the two months later the employee did not discover. 517 S. Even if we assume, as the plaintiffs allege, that the defendant negligently inspected the cooperative before the effective date of the statute, the cause of action did not arise until the injuries became effective. We have said: "There must be actual loss to the interest of another before a cause of action arises. Generally, the wrong or negligence of the party charged gives rise to no right of action in anyone." Northwestern States Portland Cement Co. v. Board (Iowa 1973), 50 N.W.2d 741, 745 (Iowa 1977); see also W. Prosser, Law of Torts 30, at 143 (4th ed. 1971). | A cause of action accrues only when all the necessary elements have occurred. | Is a cause of action fundamental to tort law? | Action - Memo # 14 I.docx | ROSS 003186.587-ROSS-003185888 | Condensed, SA | 0.93 | | 1 | | | 1 | |
| 20289 | DiMercurio v. Sphere Drake Ins. PLC, 202 F.3d 71 | 25+5130 | We affirm. In our view that one-sided agreements to arbitrate are not favored. Indeed we believe, although section 4 provides for arbitration, the FAA evinces a strong policy to arbitrate coverage disputes. The fact that the company may proceed in court to recover premiums or that likely to be much more confined than a coverage dispute does not render the contract impermissible. See Mastrobuono v. Shearson/American Express Inc., 385 Mass. 813, 824, 414 N.E.2d 611, 618 (1982) (inclusion of a class in one-sided arbitration agreement, and close to-the-contract allowing one-party, not of either one, to demand arbitration is not "unconscionable" per se). | One-sided agreements to arbitrate are not favored. | Do courts favor one-sided agreements to arbitrate? | 007150.docx | LEGALEASE 00125549-LEGALEASE 00125550 | Condensed, SA | 0.92 | | 0 | | | 1 | |
| 20290 | REG Investments v. Alberti, 14 F. Supp. 3d 68 | 148+2.4 | Defendants are correct in noting that five Justices of the Supreme Court have concluded that the "de-obligation to pay money" test, if met, would render a taking "per se" violation of the Takings Clause. See, e.g., Unity Real Estate Co. v. Hudson, 178 F.3d 649, 674 (3d Cir. 1999); Parella v. Ret. Bd. of R.I. Emps. Ret. Sys., 173 F.3d 46, 58 (1st Cir. 1999); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1339 (Fed. Cir. 2001). The majority of the federal appellate courts to have held that a mere payment of money, without more, is not a taking within the meaning of the Fifth Takings Clause. As explained in Commonwealth Edison, these holdings take various forms. Some courts hold that, for a government obligation to pay money to be "property" within the meaning of the Takings Clause, See, e.g., Unity Real Estate Co. v. Hudson, 178 F.3d 649, 674 (3d Cir. 1999) (the application of a takings analysis to the repayment of money, See Atlas Corp. v. United States, 895 F.3d 745, 756 (Fed.Cir.1990) ("Requiring money to be spent is not a taking of property."). Other courts, taking a more transactional approach, have concluded that government-imposed obligations to pay money are not the sort of governmental action subject to the Takings Clause. See, e.g., Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1339 (Fed.Cir.1999) ("The principles of takings law that apply to real property do not apply in the same manner to obligations to pay money. In the typical regulatory takings case, the government's physical taking of real property, for example, that monetary obligations incidentally imposed on a property holder as part of an otherwise valid regulatory program are not compensable. See, e.g., United States v. Sperry Corp. | Decision of District of Columbia Alcohol Beverage Control Board, to issue license to restaurant/operator in opposition to interests of other officers to patrol surrounding area, did not violate Takings Clause, the operator could not establish a constitutionally recognized government-imposed obligation to pay money. U.S. Const. Amend. 5. | Is a government-imposed obligation to pay money susceptible to a taking analysis? | 017524.docx | LEGALEASE 00125020-LEGALEASE 00125021 | Condensed, SA, SA 0.88 | | 0 | | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 939 | 15,944 | 14,873 | 21,876 | 9,029 |
| 20295 | Miller v. S.C. Dep't of Revenue, 337 S.C. 601 | 149r2.1 | Where there is no reasonable investment-backed expectation, a regulation does not violate the takings clause. U.S.C.A. Const.Amend. 5. | In determining whether governmental regulation violates the takings clause, the Court must consider the economic impact of the regulation, the interference with reasonable investment-backed expectations, and the character of the governmental action. Eastern Enterprises v. Apfel, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). Where there is no reasonable investment-backed expectation, no taking will be found. Id.; Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). In this case, there is no ''investment-backed'' expectation because Mildcom invested nothing in obtaining its performance awards. | Can there be any taking where there is no reasonable investment-backed expectation? | 01756.docx | LEGALEASE-00225253 LEGALEASE-00225254 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 0 |
| 20292 | Bajo v. Osco Gda Co., 239 F.3d 440 | 221r342 | The act of state doctrine is not jurisdictional. | In reviewing the district court's treatment of this issue, we note first that contrary to the conclusion of the court, the act of state doctrine ''is not jurisdictional.'' Kirkpatrick & Co. v. Environmental Tectonics Corp, 79 F.2d 1516, 1202 (2d Cir.1985). Jurisdictional or not, however, the district court held that in this case its application was required and that as a result the district court could not exercise its diversity jurisdiction. Although the standard of review of a district court's decision on abstention is often described as an abuse of discretion standard, we have noted that in the abstention area that standard of review is somewhat more rigorous. Because we are considering an exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. Thus, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements. (internal citations, omitted) (standard of review, we reverse the district court | Is the act of state doctrine jurisdictional? | 02051.docx | LEGALEASE-00125284 LEGALEASE-00125286 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | 1 |
| 20293 | Sornwell v. NYP Holdings, 1 Misc. 3d 847 | 217r760 | Statements about professional basketball player in newspaper articles could be read as imputing crime of attempted assault to player, which, in light of prior publicity of incident in which player allegedly attempted to choke his former coach, was sufficiently serious to be actionable as libel per se without proof of special damages; articles stated that player reportedly ''took a swing'' at a sport on his yacht, that the witnesses reported that player ''busted the hand during a booze-fest on his yacht,'' and that employer sustained a ''bruised fist in this scuffle with no-gun.'' | While defendants acknowledge that the articles are arguably susceptible to the connotation that plaintiff committed an attempted assault, defendants apparently contend that this crime, a misdemeanor, is not sufficiently serious to support a claim of libel per se. (See more to support at 21-22.) The standards for determining whether the imputation of a crime is defamatory per se have been developed in slander cases. See, e.g., Liberman v Gelstein, 80 NY2d 429 (1992).) These cases, which may be extrapolated to libel cases, hold that any Enquirer/Star Group, 88 NY2d 1074 (1997), supra [libel action citing Liberman]). Hold that only statements regarding serious, in supported by minor statements are actionable as libelous per se (in Liberman, 80 NY2d at 435.) Such serious crimes as murder, burglary, larceny, arson, rape, and kidnapping fall squarely within the ambit of crimes that are actionable as slander per se. Id.) However, the courts have held that a serious misdemeanor may form the basis for a claim of defamation per se as long as (where, as here, it involves a crime that places another in fear of physical harm. (See DeFilippo v Kerins, 223 AD2d 843 [4d Dept 1996] (asking first degree of harassment as slander per se, which was dismissed 81 NY2d 1056 [1996], see also Sweeney v Prisoner's Legal Serv, 476 U.S. 164 [1986].) In other words, the trier of fact may reasonably read the articles here as imputing a crime which, though a misdemeanor, is sufficiently serious to support this harassment insufficient to support claim of slander per se under prior law which read harassment a violation, not a misdemeanor.) | Which various crimes can be actionable as slander per se? | 01397.docx | LEGALEASE-00125468 LEGALEASE-00125469 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20294 | Garnett Co. v. State, 571 A.2d 735 | 110r835(1) | There is an affirmative duty on trial courts to limit outside influences on juries. | The trial court has an affirmative duty to control all aspects of pretrial and trial proceedings. The very intent prior media coverage of jurors in this trial that caused legitimate concerns that jurors in this trial may be improperly influenced by extraneous factors or sources sufficient to endanger the defendant's right to a fair trial. The Order responded to those concerns in a reasonable manner without imposing the more onerous strictures of sequestration or closure of the courtroom. The judgment of the Superior Court is AFFIRMED. | Do trial courts have an affirmative duty to control all aspects of pretrial and trial proceedings? | 03209.docx | LEGALEASE-00125363 LEGALEASE-00125364 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | 1 |
| 20295 | In re Dir. of Prop. Valuation, 284 Kan. 592 | 317r311 | A tariff approved by a regulatory agency conclusively establishes the legal and contractual relationship between the regulated entity and its customers. | A tariff approved by a regulatory agency conclusively establishes the legal and contractual relationship between the regulated entity and its customers. See Cindi Media Assocs. LLC v. Qwest Corporation (Qwest), 262 Kan. 234, 306*35, 937 P.2d 1 (1997) (Tariffs are the terms and conditions which govern the relationship between the utility and its customers. ... A legally established tariff is presumed to be construed in the same manner as a statute.) Torin Operating Co. v. Babbitt, 172 F.Supp.2d 115, 123 (D.D.C.2001); see also Am.Cai, 24 Public Utilities '61, | Are tariffs terms and conditions that govern the relationship between a utility and its customers? | 04285.docx | LEGALEASE-00125115 LEGALEASE-00125116 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | 1 |
| 20296 | A. Copeland Enterprises v. Slidell Nem'l Hosp., 657 So.2d 1292 | 366r77 | Subrogation may result from either agreement of obligor or obligee or both with third person or directly from operation of law. LSA-C.C. art. 1825. | Celebrity sought payment of the sum owed; the third of this statute takes place during that Celebrity is legally owing and to the rights of those, English, and Johnson under their contract with the State, concerning Celebrity's standing to assert the homeowners' claims. Subrogation takes place by operation of law when an obligor pays with or for another pays the debt and has recourse against the other as a result of payment. Celebrity was bound to perform the elevation work required by the State's contract with the homeowner. As such, it was bound to pay for the homeowner on the performance of the work required by the State, having performed the work, it is now legally subrogated to the homeowner's rights against the State under the contract. | When does subrogation take place as a matter of law? | Subrogation_Memo_1002 - C-Cat.docx | LEGALEASE-00015365 LEGALEASE-00015366 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 20197 | Boerigter v. Aegis Defi Servs., 188 F. Supp. 2d 602 | 2571:86 | First, the court rejects Plaintiffs' argument that the arbitration provisions here are unenforceable because they lack consideration. Plaintiffs contend that to be enforceable an independent consideration. The Court finds, however, that Delaware law does not require an arbitration provision to be supported by independent consideration where, as here, the underlying employment agreement as a whole is supported by adequate consideration. The parties here only identified one case which addressed this specific issue, W792576.8, 1903 WL 1380278 (D. Del. Sept. 28, 2001). In PHA, the court held that "mutuality [of arbitration] is not a requirement of a valid arbitration clause, provided that the underlying contract is supported by consideration." [st. Century to Pamela S. assertions, the court in PHA made clear that arbitration clauses were plainly enforceable the arbitration clause at issue. Id. Although in reaching its conclusion, the PHA court cited De Farlo v. Green Tree Financial Corp. 8397-3d 171, 180 (3d Cir. 1999), which applied Pennsylvania law, the PHA court must also rely on specifically on Pennsylvania law to conclude it was bound in the majority position of federal and state courts which had considered the issue. See Boerig, 1637.3d at 1837-81 (collecting federal and state cases across jurisdictions). The conclusion that the "plain overtime need not be supported by separate consideration" when there was adequate consideration for the contract as a whole, Similarly, in Stein Parlo Builders, Inc. v. Nelson, the West Virginia Supreme Court "conclude[d] that the formation of a contract with multiple clauses only requires consideration for the entire contract, and not for each individual clause," under West Virginia law after surveying treatises, journals, and cases from numerous jurisdictions. | Employers' claims that employer failed to pay them for all of those hours worked and that employers' failure to pay them at proper pay rates, in violation of Delaware law including the Delaware Wage Payment and Collection Act (DWPCA), were governed by an arbitration provision in the employment agreements, where employees' complaint involved disputes over the employment terms and aspects of employment, and employer had moved to compel arbitration pursuant to the arbitration provision. 15 West's Del.C. § 1101 et seq. | Does an agreement to arbitrate have to be supported by adequate consideration for it to be valid? | 007175.docx | LEGALEASE 00125646-LEGALEASE 00125647 | Condensed_SA, Sub 0.83 | | 0 | 1 | 1 | 1 | 1 |
| 20198 | Gaffney v. Riverboat Workers, 454 of Indiana, 451 F.3d 424 | 454:9 | Riverboat requests that the plaintiffs could not have "reasonab[ly]" believed that the employer of vessels — who were "classified as Coast Guard inspectors" and who "voluntarily undertook the vessel's safety inspections" — could have believed that the "inspection standards did not require more severe injury" that a vessel was below the Coast Guard's standards. "Safety." (sup. Appellant Br. at 26. However, "18 U.S.C. § 7215 does not require that a seaman believe that there is a 'safety hazard' on board a vessel; rather, it requires that the "seaman believe that a violation of 46 U.S.C. Code 2113 Title 46, added by the Coast Guard regulations issued under that subtitle) has occurred." 1302, 1905 WL 1360478 (subtitle regulations reasonably and in good faith believed that the Coast Guard's approval of the MAY Riverboat's late to entitle it to operate while not complying with the Coast Guard regulations)... a Coast Guard regulation ..." 1316, 99 F.2d. at 2869. Coast Guard regulations provide that a chief or assistant engineer with a limited license is permitted to "serve within any horsepower limitations on vessels of any gross tons on inland waters," but not on other vessels. "46 C.F.R. § 10.107(c); see also 46 C.F.R. § 15.835. Although as a general matter, the Coast Guard has discretion to "vary the application of its inspection standards based on the intended operation of the vessel." Smith v. United States Coast Guard, 2205 Supp 2d275, 282 (D.S.A.V.2002) (discussing 46 C.F.R. § 176.200(a)), the Coast Guard is bound by a regulation that specifically restricts the exercise of this discretion. See Fradkin v. Slate, 1111 N.2711, 177 (D.C.Cir.1997) ("The Coast Guard, like the other agencies of the Federal Government, is generally bound by its own regulations."), and, by these regulations, the Coast Guard must exercise its discretion within the limits that Congress has set. The doctrine that the Coast Guard may not engage in arbitrary action, as here considered. | Although, as general matter, Coast Guard has discretion to vary application of its inspection standards based on intended operation of vessel, Coast Guard is bound by regulation that specifically restricts the exercise of this discretion. | Is the Coast Guard an agency which is bound to follow its own regulations? | 008884.docx | LEGALEASE 00126301-LEGALEASE 00126302 | Condensed_SA, Sub 0.9 | | 0 | 1 | 1 | 1 | 1 |
| 20199 | Marliae Steel Supply Inc. v. City of Detroit, 241 Mich. App. 116 | 149:2.1 | In the present case, a cause of action under 578, 571 N.W.2d 531, explained, "One of the fundamental principles of taxing jurisprudence is the 'nonaggregation' principle, This principle holds that when evaluating the effect of a regulation on a parcel of property, the effect of the regulation must be viewed with respect to the particular parcel or the portion" (Wiede sv., sloughdown Central, supra at 130, 593 U.S. 2646. Instead, the court must examine the effect of the regulation on the entire parcel, rather than just the affected portion of the parcel. Beccari's, L. Co. at 135 N.W.2d 535. | In regulatory takings other than categorical takings, a court must apply balancing test and engage in an ad hoc, factual inquiry, centering on three factors: (1) character of the government action, (2) economic effect of regulation on property, and (3) extent by which regulation has interfered with distinct, investment-backed expectations. | Is the concept of nonsegmentation, a fundamental principle of 017597.docx | 017597.docx | LEGALEASE 00126174-LEGALEASE 00126175 | Condensed_SA, Sub 0.56 | | 0 | 1 | 1 | 1 | 1 |
| 20200 | Werner v. Illinois Cent. R. Co., 379 Ill. 559 | 1342 | Further argument is made as to the meaning of the phrase 'arising in said city,' and the question is raised as to when and where did plaintiff's cause of action arise. This much is essential in Black v. Standard, M. etc., as leading case on this point. The court was considering what the legislature meant when it spoke of a cause of action arising in England. [The court said] understands a cause of action to arise where the act which brings into being the necessity for bringing the action. The pause, it went on to state, must have reference to time which led to the bringing of the action whence where the cause of action is taken whether or that is done which will ought to have been done. But the time when the cause of action occurs or within the place of a action the place where it occurs is the place where the cause of action arises. So then action might arise in this country by courts where a similar question arose. Hibernia National Bank v. Lacombe, 84 N. Y. 367, 38 Am Rep. 518; Bersch v. Grinnell, 181 U.S. 524, 251 N.W. 142; Wrightsville Hardware Co. v. Assets Realization Co., 159 App.Div. 849, 144 N.Y.S. 991. Under this rule it must be held that plaintiff's cause of action arose in Pana on Christian county. | A "cause of action" is that which brings into being the necessity for bringing an action, and a cause of action "arises" when that is not done which ought to have been done or that is done which ought not to have been done. | Is cause of action something which brings into being the necessity for bringing an action? | Action: Memo #127:C (K/05100228h261-K/05100228b262) (00328262) | K/05100228b261-K/05100228b262 (00328262) | Condensed_SA, Sub 0.82 | | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,079 |
| 25000 | Jones v. Crimmins, 96 S.W.3d 533 | 3412 | As early as 1953, the Supreme Court determined that "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian." Since that time, in reviewing issues which deal with the armed forces, the Supreme Court has regularly referred to the military as a "separate community" and reviewed claims against the military differently from claims against any other governmental body. Restrictions on constitutional rights which might have no rational basis in civilian society and survive in the military context because the unique war-making purpose of the armed forces makes such restrictions compelling. This is the regulating constitutional rights is based upon the need to maintain an effective operational fighting force. The distinct purpose of the armed forces is to protect the United States, and its interests, against the action of foreign nation-states, through the use of force. It is because of this unique purpose that the military demonstrates respect for duty and a commitment to discipline that is without counterpart in civilian society. Military effectiveness in wartime, however, requires extensive preparation. In order for soldiers, airmen and seamen to utilize those qualities necessary for success on the battlefield, with all its stress and anxiety, those qualities must be instinctive. Success in war is therefore contingent upon the development of those qualities in peacetime. The Supreme Court has stated that, "to accomplish its mission the military must foster instinctive obedience, unity, commitment and esprit de | Restrictions on constitutional rights which might have no rational basis in civilian society will survive in the military context because the unique war-making purpose of the armed forces makes such restrictions compelling. | Is the military a specialized community that is governed by law (as opposed to a separate from civilian society)? | Armed Services - Memo 40 - RA.docx | USA4EA0E-00016442 USA4EA0E-00016443 | Condensed, SA | 0.86 | 0 | 1 | | | |
| 25001 | Cook v. City of Topeka, 232 Kan. 334 | 79+46 | Serious Harmes v. People, 82 Colo. 461, 49 P. 153 (1908) wherein it was said "Judicial functions are determined by the intrinsic character of the duty or act itself, and not by the character of the official designated to perform it. An act in the performance of a ministerial duty is imperative; it is done in obedience to some legal mandate. It involves the exercise of no official discretion and the equipment of the proprietor of the act. In those respects it is wholly unlike an act in the performance of judicial | One test used to determine whether a clerk of a court is engaged in a judicial, quasi-judicial, or ministerial task is to see if a statute imposes a duty upon the clerk to act in a certain way leaving the clerk no discretion. | Are judicial functions distinguished from ministerial acts? | Clerk of Court - Memo 27 - RK.docx | USA4EA0E-00016470 USA4EA0E-00016471 | Condensed, SA | 0.57 | 0 | 1 | | | |
| 25003 | Dougoli Fish Corp. v. City of Fulton, 168 Misc. 170 | 156+110 | It is undisputed that plaintiff made payments on the 1931 and 1932 taxes before it discovered the absence of the seals. Defendants contend that by the act of payment plaintiff has waived the irregularity and cannot now take advantage of it. Plaintiff says it made the payments supposing the warrants were legal and valid, which it would not have done had it known the truth, and upon discovery of the fact it asserted the invalidity of the warrants as a defense to further payments. Waiver is an affirmative defense which must be pleaded (Read-O-Cide Co. v. Rubber Goods Mfg. Co., 231 App. Div. 341, 342, 97 N.Y.S. 72; Brennan & Co., Inc. v. Public National Bank of New York, 238 App. Div. 628, 631, 223 N.Y.S. 656; State v. Order of United Commercial Travelers of America, 158 App. Div. 746, 755, 144 N.Y.S. 506, while an affirmative defense must be pleaded (People ex rel. Corbett v. Naar, 208 N.Y. 372, 219, 101 N.E. 893). Defendants pleaded neither. | Waiver is an affirmative defense, and must be pleaded. | Is waiver an affirmative defense? | Pleading - Memo 133 - RMM.docx | ROSS 003286145-ROSS 003286146 | Condensed, SA, Sub | 0.95 | | | 1 | | |
| 25004 | Jango Nunn v. Slender, 170 Cal. App. 4th 1384 | 229+181(18) | "The Restatement, too, makes clear that some actual injury must have occurred to state "a recognized cause of action for an action of trespass." Although section 218 of the Restatement Second of Torts, dispossession alone, without further damages, is actionable (see id., par. (a) & com. g), and id., 421, at 401); but other forms of interference require some actual harm to the owner when personal property or the possessor's interests in it (id., pars. (b)-(d)). "The interest of a possessor of land, is not given legal protection by an action for nominal damages for harmless intermeddles with the chattel. In order that an actor who interferes with another's chattel may be liable, his conduct must affect some other and more important interest of the possessor. Therefore, one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected as stated in Clause (c). Sufficient legal protection of the possessor's interest in the mere inviolability of the chattel is afforded by the privilege to use reasonable force to protect his possession against even harmless interference. (id., com. e, pp. 421-422; italics added.)" (See Jamgotchian v. Slender (2003) 30 Cal.4th 1342, 1350-1351, 1 Cal.Rptr.3d 32, 71 P.3d 296.) | "Will a person be liable for trespass to chattels only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel?" | Trespass - Memo 211 - BP.docx | ROSS 003286459-ROSS 003286460 | Condensed, SA | 0.55 | 0 | | | 1 | |
| 25005 | Epperson v. State of Ark., 393 U.S. 97 | 1.41E+31 | Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. Our courts, however, have not failed to apply the First Amendment's mandate in our educational system where essential to safeguard the fundamental values of freedom of speech and inquiry and of belief. By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values. On the other hand, "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." Shelton v. Tucker, 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960). As this Court said in Keyishian v. Board of Regents, the First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom." 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967). | Does judicial intervention or interposition in the operation of the public school system require restraint? | 01d610.docx | USA4EA0E-00027056- USA4EA0E-00027057 | Condensed, SA, Sub | 0.71 | | | | | 1 |

3577

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20206 | A. P. & Sons, Inc. v. Johnson, 657 N.W.2d 292 | 95k1 | This Court has held that under ordinary circumstances, a property owner will not be held vicariously liable for work or materials furnished by a subcontractor to a contract between the contractor and a subcontractor, which an agent, property owner, or materials furnished by the contractor." Sherman v. Meyer, 162 N.W.2d 373, 374 (S.D.1981). A.P. & Sons, in an attempt to circumvent this legal rule, alleged that a partnership or a joint venture existed between Bauman and Johnson in the development of the Alvena... the partnership or joint venture, then the development of Wenkview subdivision because of the Alvena property owner for developing land. | There was no "actual agency" relationship between property owner and contractor who was developing property into a residential development, where there was no agreement that contractor was taking on risk of agent, property owner gave no directions to contractor or third parties that contractor was acting on property owner's behalf, contractor did not assume risk of principal, contractor did not receive any compensation from property owner for developing land. | "Will a property owner be held liable for work or materials furnished by a subcontractor to a contractor according to a where there was no agreement that contractor was taking on risk of agent, property owner gave no directions to contractor or third parties that contractor was acting on property owner's behalf, contractor did not assume risk of principal, contractor did not receive any profit from building houses, and contractor did not receive any compensation from property owner for developing land." | 021903.docx | LEGALEASE 00127235 - LEGALEASE 00127236 | Condensed, SA, Sub 0.3 | 0.3 | 0 | | 1 | 1 | |
| 20207 | Lucas v. Wright, 170 S.W.2d 924 | 311H+414 | We next decide from what we think was, however, privilege. While we think the trial court has acted in good faith, he has been too restrictive in his order. No doubt, he felt obligated to protect any confidence or privileged matter and was probably attempting to follow the procedure outlined by the Supreme Court with reference to such matters in Creer v. Tex. Co., 1267 S.W.2d 130... the record made on the hearing when the court made its order restricting the scope of the deposition and have also read the deposition thereafter taken and we have been unable to find any matter of confidence or privileged contended for except in two respects. The first, it was stated by Mr. Dickinson that there was geological information in his trust report which he felt were of a confidential nature. We can see no retained the geological information would have to be disclosed if it became material to the issues in the suit... against his wishes. This court has no desire to have facts disclosed which improperly intrude upon his privacy and personal affairs that we have been unable to see any sound reason why respondent is entitled to protection because of the mere fact that it might disclose some of his personal affairs... Since the order in this matter was not an interlocutory order but only to be exposed... father of Philip Lucas, for some 20 years in connection with his various businesses, he has knowledge of the properties. The partners, no doubt, shared many confidences. Since the older Lucas' death, the trust has succeeded to his interest... | Communications between partner and partner, though confidential in their nature, are not privileged. | Are communications between partners privileged? | 021953.docx | LEGALEASE 00127271 - LEGALEASE 00127272 | Condensed, SA, Sub 0.96 | 0.96 | | | 1 | 1 | |
| 20208 | Trammel's Lubbock Bail Bonds v. Lubbock Cty., 160 S.W.3d 145 | 150+73311 | Admittedly, we uncovered a case intimating that extreme delay in giving a surety notice that his bond has been forfeited may prejudice as a matter of law. The case is Bull v. Blum, 68 Tex. 299, 4 S.W. 489 (1887) wherein the claimant postponed urging its rights for twenty years. However, the Supreme Court restricted Bull to its facts. Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688 (1938, opinion adopted). In Turner, it is held that: "[A]cquiescence by the State after a delay ... delay, which works no injury or no disadvantage to another, is not such laches as will bar a right." Id. at 691. Furthermore, since the period involved in Turner consisted of more than five years, the court refused to hold that it equaled the type of extreme delay warranting an inference of prejudice. Id. So, to the extent that we are not bound by that delay as provided by law to the delay... may be to the extent which is true are very limited. | For "laches" to arise, one must unreasonably delay in asserting a legal or equitable right and the delay must cause another to, in good faith, change his position to his detriment. | "Except in case of extreme delay, is a delay which works no injury or no disadvantage to another for not such laches or will a right?" | 000861.docx | LEGALEASE 00127300 - LEGALEASE 00127301 | Condensed, SA 0.81 | 0.81 | | 0 | 1 | 1 | |
| 20209 | Crawford v. Metro, Life Ins. Co., 167 S.W.2d 955 | 13+63 | Laches, which is purely a creation of equity, is quite different from the statute of limitations. And in this case, if the facts warrant it, defendant's real complaint would have been laches, whereas if the lapse of time or delay has little to do with the matter, Tokash v. Workmen's Compensation Commission, 346 Mo. 100, 139 S.W.2d 978 (Mo.1940); Eighty Hundred Realty Co., Mo.App., 238 S.W.2d 760. The length of time may be much less or much more than the arbitrary time fixed by the statute of limitations, and each case must be determined by depending whether the opposite party has been placed in a disadvantageous position by reason of the delay. State ex rel. Frederick... Mo.App. 391, 41 S.W.2d 842; St. Louis Union Trust Co. v. Busch, 346 Mo. 1237, 145 S.W.2d 426. In the case of laches, the facts have no bearing so any real suggestion that a single witness has died or has removed from the locality, and not a record which defendant needed in the case has been lost or destroyed. And apart from all this, it appears from the evidence, has been in defendant's favor in that it has retained money belonging to plaintiff which for a much longer time than would have been permitted absent the delay. | "Laches" is purely a creation of equity, and the crucial question where laches is charged is whether the opposite party has been placed at a disadvantageous position by reason of the delay. | Is "laches" a creation of equity? | 000935.docx | LEGALEASE 00127805 - LEGALEASE 00127806 | Condensed, SA, Sub 0.84 | 0.84 | | 1 | 1 | | |
| 20210 | Virgilio v. U.S. Rubber Co., 85 R.I. 136 | 13+65 | The next main contention of petitioner is that his appeal from the action of the director in approving the agreements left them legally unapproved and hence respondent was entitled to payments thereunder and should have been adjudged in contempt. Assuming without deciding that the appeal did have that effect, this contention ignores the fact that the agreements when approved by the commission became effective as and when made. Therefore as a consequence nothing was owed to petitioner when the commission came to consider the petition to adjudge respondent in contempt. Equity speaks as of the time of its decree. | Equity speaks as of the time of its decree. | Does equity speak as of the time of its decree? | 000686.docx | LEGALEASE 00127841 - LEGALEASE 00127842 | Condensed, SA 0.93 | 0.93 | | 0 | 1 | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 20911 | Curtis-Wright Corp. v. Inc. VIII, of Garden City, 270 A.D. 916. | 134D | The finding that plaintiff had not abandoned the non-conforming use of the property involved is against the weight of the evidence. At the time of the commencement of this explicable action, the application for the permit for the non-conforming use had been denied, but subsequently the permit was granted and was in force at the time of the entry of the decree. As a renovated of that decree, the permit was denied. While hold that the ordinance is constitutional, but since equity speaks as of the time of the decree, plaintiff at that time was not in a position to attack the constitutionality of the ordinance. Avery Bus Construction Co. v. Thatcher, 278 N.Y. 221, 15 N.E.2d 587, 117 A.L.R. 1110; People v. Calvar Corporation, 286 N.Y. 419, 36 N.E.2d 644, 136 A.L.R. 1376. | Equity speaks of time of decree. | Does equity speak as of the time the decree? | Action - Memo # 903 - C Restless Heirloom Kitchen.docx | ROSS-003289957-ROSS-003289958 | Condensed, SA | 0.96 | | | | 1 | |
| 20912 | Brown v. Shannon, 280 Ky. 131# CV(2)(B) 88 | 231(#CV(2)(3)) | If it be argued that jurors are employees of the Commonwealth, and that the jurors whose compensation is in question here are de facto officers and, as such the facto officers, entitled to compensation, it is sufficient to say that the great weight of authority is that de facto officers are not entitled to compensation, and that this rule has been consistently followed in this state. Edwards v. Montgomery County, 270 Ky. 261, 110 S.W. 838; Jefferson Am.St.Rep. 343, 16 Ann.Cas. 483; Flavey County Superintendent, v. Barrett, 146 Ky. 712, 143 S.W. 38, Ann.Cas.1913C, 170. | De facto officers are not entitled to compensation. | Are de facto officers entitled to compensation? | 013007.docx | LEGALEASE-00138014-LEGALEASE-00138015 | Condensed, SA | 0.91 | 0 | | 0 | 1 | |
| 20913 | State Farm Mut. Auto. Ins. Co. v. State of Connecticut Dep't of Transp., 2015 WK 9241268 | 149z-2 | However, the constitutional requirement that a business be permitted a reasonable return on invested capital in financial health states that any particular level of profit above which is adequate to attract and retain invested capital. "Regulation may reduce somewhat the profit the business may make, limit stringently the return required on investment, "for investor" interests provide only one of the variables in the constitutional calculus of reasonableness." Jersey Central Power & Light Co. v. Cemetery Co., supra, 390 U.S. at 769. 88 S.Ct. at 1361, 20 L.Ed.2d at 337 (citing Commplain & Leverington Turnpike Rd. Co. v. Sandford, 164 U.S. 578, 596, 17 S.Ct. 198, 205, 41 L.Ed. 560, 566 (1896)). In price regulation, consideration of the investors' interests must be counterbalanced by considerations of the consumers' interests. Hope Natural Gas, supra, 320 U.S. at 603, 64 S.Ct. at 288, 88 L.Ed. at 345 (reiterating property interests "a balancing of the investor and the consumer interests"). Similarly, in Hutton Park Gardens, supra, 68 N.J. 543, 350 A.2d 1, the Court recognized that a constitutionally "fair" rate of return may require, or a surplus of an unintended opportunity for the profits on the part of the regulated business. The cost of return permitted need not be as high as provided in the industry prior to regulation nor as much as an investor might obtain by placing his capital elsewhere. Determination of what level of return is "just and reasonable" involves evaluation not only of the interests of the investor but also of those interests of the consumer and of the general public ought to be advanced by the regulatory legislation. [Id. at 570, 350 A.2d 1 (citations omitted).] | "Can a regulation limit stringently the return required on investment "for investor" interests provide only one of the variables in the constitutional calculus of reasonableness?" | "Can a regulation limit stringently the return required on investment "for investor" interests provide only one of the variables in the constitutional calculus of reasonableness?" | Eminent Domain - Memo 84 I - QP.docx | ROSS-003285143-ROSS-003285144 | Condensed, SA, Sub, O,B1 | 0.81 | 1 | | 1 | 1 | 1 |
| 20914 | Valentine v. Valentine, 134 AD, 664. | 307A+501 | The pleadings are not before us, but the order appealed from appears to have been made on the affidavit of the defendant's attorney, however, does not state any reason for vacating the order of discontinuance. It appears that the action was brought for the purpose of impressing a trust in favor of the plaintiff upon certain real property of the defendant, but nothing is shown which would make it inequitable for the plaintiff to discontinue. The defendant insists that the action is not in the proper form on the merits, but a defendant cannot compel a plaintiff to litigate against his will, merely for the satisfaction of winning a suit if the plaintiff does not wish to prosecute the action, the defendant cannot require him to do so. It was proper to deduct for the order of discontinuance ex parte. While the court retains control of the matter, and in a proper case has power to vacate such an order, that discretion can only be exercised when facts are presented justifying it. Matter of Butler, 101 N.Y. 309, N.Y.S. 538; Winters v. Winters, 124 N.Y. 140, 26 N.E. 293. | A defendant cannot compel plaintiff to prosecute the action against his will. | Can a defendant compel a plaintiff to prosecute the action against his will? | 020114.docx | LEGALEASE-00127798-LEGALEASE-00127799 | Condensed, SA | 0.93 | | 0 | | 1 | |
| 20915 | Allstate Indem. Co. v. ADT LLC, 110 F. Supp. 3d 856. | 366+33 | Allstate does not contend that the waiver is unconscionable or against public policy, but that it is unenforceable because Allstate has alleged "willful and wanton" misconduct, and if Allstate's provisions are not enforceable in cases of willful and wanton conduct." (R. 14, Pl.'s Resp. 4.) Allstate relies on language from the appellate division opinion in Scott-Sports Venture, LLC, 401 Ill.App.3d 110, 339 Ill.Dec. 596, 927 N.E.2d 1371 (2010), and Curran, Inc. v. Busse Environmental Services, No. 10 CV 2120, 2010 WL 3076996 (C.D. Ill. Sept. 6, 2010). Dolan and Curran, however, are distinguishable because they involved exculpatory provisions, not subrogation waivers. (see the Dolan and Hartford court's explored, subrogation waivers are not true exculpatory provisions. They merely allocate risk; they do not immunize the wrongdoer from all claims or leave them uncompensated. Bastian, 653 F.Supp. at 507(b); Hartford, 1217(N.W. 206, 264 N.W.2d at 416.) Plaintiff fails to cite any decision applying Illinois law in which the court refused to enforce a subrogation waiver where willful and wanton misconduct was alleged. | Under Illinois law, subrogation waivers are not true exculpatory provisions, but, rather, they merely allocate risk of loss; they do not immunize the wrongdoer from all claims or otherwise require the injured parties to give up all their claims or leave them uncompensated. | Can a waiver of subrogation be an exculpatory clause? | 043999.docx | LEGALEASE-00127957-LEGALEASE-00127958 | Condensed, SA, Sub,0,77 | 0.77 | | 0 | | 1 | 1 |

Appendix D

3579

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20316 | Boudreaux v. Scott's Boat Rentals, 184 F. Supp. 3d 343 | 366+35 | Louisiana law generally allows waivers of subrogation. Hudson v. Forest Oil, 2003 WL 21276385, at (E.D.La. June 2, 2003), affd 372 F.3d 742 (5th Cir.2004). However, the LOAIA invalidates some waivers of subrogation. The LOAIA applies to agreements that (1) pertain to an oil, gas, or water well and (2) are "related to exploration, development, production, or transportation of oil, gas, or water." Fontenot v. Chevron U.S.A. Inc., 676 So.2d 557, 564 (La.1996). An insurance contract that is ancillary to an agreement such as the master contract satisfies this test. Id. Neither side disputes that the MSA satisfies this two-part test. With respect to waivers of subrogation, the LOAIA provides: (B) Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee. ..(G) Any provision in any agreement...which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect. | Louisiana law generally allows waivers of subrogation. | Are waivers of subrogation legal? | Subrogation - Memo # 1169- C - SHB.docx | ROSS-003285380-ROSS-003285381 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 20317 | Empress Casino Joliet Corp. v. W.E. O'Neil Const. Co., 2016 IL App (1st) 151166 | 366+35 | In coming to this conclusion, we further find that in making their public policy argument, the plaintiffs confuse waivers of subrogation with exculpatory clauses. The law in Illinois is well settled that a waiver of subrogation is not an exculpatory clause. See, e.g., Allstate Indemnity Co. v. ADT LLC, 110 F.Supp.3d 856, 862 (N.D.Ill.2015) ("[S]ubrogation waivers are not true exculpatory provisions. They merely allocate risk of loss; they do not immunize the wrongdoer from all liability, nor do they require the injured parties to give up all their claims or leave them uncompensated."); see also Hartford v. Burns International Security Services, Inc., 172 Ill.App.3d 184, 122 Ill.Dec. 204, 526 N.E.2d 463 (1988); see also Bastian v. Wausau Homes Inc., 635 F.Supp. 201 (N.D.Ill.1986). | A waiver of subrogation is not an exculpatory clause. | Is a waiver of subrogation an exculpatory clause? | 043438.docx | LEGALEASE-00127792-LEGALEASE-00127793 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 20318 | In Matter of CUA Autofinder, 387 B.R. 906 | 366+35 | The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a question of intention. 83 C.J.S. Subrogation " 21 (2008). See Brookside Communities, LLC v. Lake Dow North Corp., 268 Ga.App. 785, 603 S.E.2d 31, (2004) (guarantor unambiguously waived any claims it might have had). In the case at bar, Movant used his personal funds to pay Debtor's obligation under the Escrow Agreement. Movant contends that he made the escrow payment under his personal guarantee of Debtor's obligations. Movant contends he made the payments as guarantor under his Unconditional Guaranty of Payment And Performance.14 Trustee contends that Movant was not legally obligated to make the escrow payment and that Movant was a mere volunteer who is not entitled to equitable subrogation. | Under Georgia law, whether right of subrogation has been waived is question of intention. | Is waiver of the right of subrogation a question of intention? | Subrogation - Memo # 1262 - C - TM.docx | ROSS-003285418-ROSS-003285419 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20319 | CompuServe Inc. v. Cyber Promotions, 962 F. Supp. 1015 | 92+2150 | Therefore, an interference resulting in physical dispossession is just one circumstance under which a defendant can be found liable. Defendants suggest that "[u]nless an alleged trespasser actually takes physical custody of the property or physically damages it, courts will not find the "substantial interference" required to maintain a trespass to chattel claim." (Defendant's Memorandum at 13). To support this rather broad proposition, defendants cite only two cases which make any reference to the Restatement.In Glidden v. Szybiak, 95 N.H. 318, 63 A.2d 233 (1949), the court simply indicated that an action for trespass to chattels could not be maintained in the absence of some form of damage. The court held that where plaintiff did not contend that defendant's pulling on her pet dog's ears caused any injury, an action in tort could not be maintained. Id. 63 A.2d at 235. In contrast, plaintiff in the present action has alleged that it has suffered several types if injury as a result of defendants' conduct. In Koepnick v. Sears Roebuck & Co., 158 Ariz. 322, 762 P.2d 609 (1988) the court held that a two-minute search of an individual's truck did not amount to a "dispossession" of the truck as defined in Restatement " 221 or a deprivation of the use of the truck for a substantial time. It is clear from a reading of Restatement " 218 that an interference or intermeddling that does not fit the " 221 definition of "dispossession" can nonetheless result in defendants' liability for trespass. The Koepnick court did not discuss any of the other grounds for liability under Restatement " 218. | Commercial online computer service was entitled to preliminary injunction enjoining defendant from sending unsolicited advertisements to any electronic mail (e-mail) address maintained by service; defendant's intentional use of service's proprietary computer equipment was actionable trespass to chattels for which First Amendment provided no defense, intrusions onto service's computer systems harmed service's business reputation and goodwill, it was improbable that granting injunction would cause substantial harm to defendant, as defendant could continue to send advertisements in other ways, and public interest would be advanced by court's protection of common-law rights of individuals and entities to their personal property. U.S.C.A. Const.Amend. 1. | Does liability for a trespass to chattel generally require some showing of damages? | 047289.docx | LEGALEASE-00128028-LEGALEASE-00128029 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20320 | RLI Ins. Co. v. S. Union Co., 341 S.W.3d 821 | 217+1702 | The objective of a waiver of subrogation clause is to enhance the effectiveness of insurance procurement clauses. Id. Insurance procurement clauses reflect an " 'intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk ... instead.' " Id. (quoting Acadia Ins. Co. v. Buck Constr. Co., 756 A.2d 515, 519 (Me.2000) (citation omitted)). The waiver of subrogation clause thus " 'avoids both parties having to face potential liability for the same risk.' " Id. (quoting Acadia Ins. Co., 756 A.2d at 519). Including MGE within the scope of intended third parties beneficiaries afforded protection by the waiver of subrogation provision set forth in paragraph 11.3.7 of the General Conditions negates the motivation MGE would otherwise have to pursue claims of contribution against the Construction Manager, subcontractors, or other persons or entities alleged to have been involved in creating the circumstances giving rise to the explosion. In fact, it is apparent that paragraph 11.3.7's specific reference to Owner's other forces as a class of persons covered by the waiver of subrogation provision was intended to afford the trades who did sign Triumph's AIA Contract the precise protection represented by the outcome of this case. | Insurance procurement clauses reflect an intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk instead. | Does the waiver of subrogation clause avoid both parties having to face potential liability for the same risk? | Subrogation - Memo # 1219 - C - SB.docx | ROSS-003330938-ROSS-003330939 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 20321 | In Matter of CUA Autofinder, 387 B.R. 906 | 366+35 | The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a question of intention. 83 C.J.S. Subrogation " 21 (2008). See Brookside Communities, LLC v. Lake Dow North Corp., 268 Ga.App. 785, 603 S.E.2d 31, 32"33 (2004) (guarantor unambiguously waived any claims it might have had). In the case at bar, Movant used his personal funds to pay Debtor's obligation under the Escrow Agreement. Movant contends that he made the escrow payment under his personal guarantee of Debtor's obligations. Movant contends he made the payments as guarantor under his Unconditional Guaranty of Payment And Performance.14 Trustee contends that Movant was not legally obligated to make the escrow payment and that Movant was a mere volunteer who is not entitled to equitable subrogation. | Under Georgia law, whether right of subrogation has been waived is question of intention. | Is waiver of the right of subrogation question of intention? | 043406.docx | LEGALEASE-00128302-LEGALEASE-00128303 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20322 | Vaughn v. DAP Fin. Servs., 982 S.W.2d 1 | 83E+482 | Unless otherwise stipulated, all contracts are freely assignable. Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 596 (Tex.1992). A non-negotiable note remains susceptible of assignment, as in the case of any other chose of action. Dillard v. NCNB Tex. Nat'l Bank, 815 S.W.2d 356, 360 (Tex.App."Austin 1991, no writ), overruled on other grounds, Amberboy v. Societe de Banque Privee, 831 S.W.2d 793, 797 (Tex.1992); Lexington Ins. Co. v. Gray, 775 S.W.2d 679, 682 (Tex.App."Austin 1989, writ denied), overruled on other grounds, Amberboy v. Societe de Banque Privee, 831 S.W.2d 793, 797 (Tex.1992); 10 C.J.S. Bills and Notes " 140, 165 (1995). DAP, although not a holder in due course of the guaranty as a negotiable instrument, is the contractual owner of the "guaranteed indebtedness" of Gierhart/Vaughn Construction Company, and the benefit of a contractual continuing guaranty ensuring payment thereof. Pursuant to the plain terms of the continuing guaranty, it is intended for and shall inure to the benefit of Texas American Bank, as well as "each and every person who shall from time to time be or become the owner or holder of any of the Guaranteed Indebtedness. " As a result, because Vaughn did not terminate the continuing guaranty, Vaughn is contractually liable to DAP for the Guaranteed Indebtedness of Gierhart/Vaughn Construction Company. | Even a nonnegotiable note remains susceptible of assignment. | Is a nonnegotiable note susceptible of assignment? | Bills and Notes - Memo 152 - RK.docx | ROSS-003312634-ROSS-003312635 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 20323 | Trammel's Lubbock Bail Bonds v. Lubbock Cty., 60 S.W.3d 145 | 150+72(1) | Admittedly, we uncovered a case intimating that extreme delay which goes unexplained may permit the fact finder to infer the existence of prejudice as a matter of law. The case is Dull v. Blum, 68 Tex. 299, 4 S.W. 489 (1887) wherein the claimant postponed urging his rights for twenty years. However, the Supreme Court restricted the scope of Dull in Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688 (1938, opinion adopted). In Turner, it held that "[e]xcept in case[s] of extreme delay like that in Dull ... delay, which works no injury or no disadvantage to another, is not such laches as will bar a right." Id. at 691. Furthermore, since the period involved in Turner consisted of "a little less than ten years", the court refused to hold that it equated the type of extreme delay warranting an inference of prejudice. Id. So, to the extent that the mere lapse of time itself may give rise to laches, the circumstances in which that is true are very limited. | For "laches" to arise, one must unreasonably delay in asserting a legal or equitable right and the delay must cause another to, in good faith, change his position to his detriment. | Can a delay which works no injury or no disadvantage to another is laches that bar a right? | 006329.docx | LEGALEASE-00129209-LEGALEASE-00129210 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 20534 | Seymour Investments, Ltd. v. Banco Santander S.A., 672 F.Supp2d... | 25T+134 | We turn first, as we must, to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., to provide that a written arbitration agreement in certain contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because of the FAA, federal courts are required to place arbitration clauses on equal footing with other contracts. See Ferrara v. Smith, Barney, Harris Upham & Co., 120 F.3d... [continues] | Because of the Federal Arbitration Act (FAA), federal courts are required to place arbitration clauses on equal footing with other contracts. 9 U.S.C.A. § 1 et seq. | Do federal courts interpret arbitration clauses broadly where possible? | 00718.docx | LEGALEASE-00229601-LEGALEASE-00229602 | Condensed_SA_Sub 0.89 | | 0 | 1 | | | |
| 20535 | Alcalde v. Carnival Cruise Lines, 798 F. Supp. 2d 1314 | 25T+140 | This Court now must determine whether arbitration can be compelled when a defendant does not in fact agree to the terms... [continues] | By stipulating to initiate judicial action choice of law provision in surfluer's agreement, which required application of Panamanian law to surfluer's personal injury claims, and agreeing to application of United States law, cruise line operator cured the deficiency in the agreement as written... underlier: agreement had a severability provision. 9 U.S.C.A. § 1 et seq. | Can a court choose to excise an invalid provision of an agreement, which required application of the arbitration agreement contains a severability provision? | Alternative Dispute Resolution - Memo 698 IN.docx | ROSS-003287205-ROSS-003287206 | Condensed_SA_Sub 0.45 | | 0 | 1 | | | |
| 20536 | People v. Van Tran, (2002) WL 110621 | 67+2 | For much the same reasons, the record contains substantial evidence to support appellant's conviction for second degree commercial burglary... [continues] | A burglary is complete when an entry with the requisite intent to commit grand or petty larceny or any felony is made. West's Ann.Cal.Penal Code § 459. | When is the crime of burglary complete? | 01206.docx | LEGALEASE-00129427-LEGALEASE-00129429 | Condensed_SA_Sub 0.86 | | 0 | 1 | | | |
| 20537 | Quinn v. State, 191 So. 3d 203 598 | 203+598 | The elements of burglary are (1) "breaking and entering the dwelling house or store door of itself dwelling 'house of another", and (2) "with the intent to commit some crime there."... [continues] | In prosecution for capital murder based on underlying felony of burglary, state was not required to prove the elements of assault, the offense defendant allegedly intended to commit when he broke into victim's dwelling, in which category of assault was intended, but only that defendant intended to commit some crime. West's A.M.C. § 97-17-21(2). | Does the crime of burglary include felonies and misdemeanors? | 01345.docx | LEGALEASE-00129655-LEGALEASE-00129656 | Condensed_SA_Sub 0.63 | | 0 | 1 | | | |
| 20538 | State v. Anderson, 2014 Ohio-542 | 67+2 | It is well settled in law, and the citations are necessary to establish that burglary and attempted burglary are offenses against property, not against persons... [continues] | Burglary and attempted burglary are offenses against the property and not against persons. | Is burglary an offense against the person? | Burglary - Memo 66 IN.docx | ROSS-003311751-ROSS-003311754 | Condensed_SA_Sub 0.45 | | 0 | | | 1 | |
| 20539 | Diss v. State, 256 Ind. 174 67+10 | 67+10 | No one could allege with certainty what particular property a defendant intended to steal when he broke into the house, nor... [continues] | Value of property is not of essence of offense of second degree burglary and failure to state such is not fatal. Burns' Ann.St. § 9-1327. | Is the value of the property taken relevant in second degree burglary? | Burglary - Memo 66 IN.docx | ROSS-003311980-ROSS-003311981 | Condensed_SA_Sub 0.8 | | 0 | 1 | | | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 2030 | Commercial & Sav. Bank of Lake City v. Ward, 646 S.C. 77 | 307A+531 | The appeal involves alleged errors in refusing the defendant's motion for a new trial, and in allowing the amendments to the complaint in the above. The defendant's motion for a new trial could not properly have been granted, for the reason that the action was one in equity, and in such cases such a motion cannot be entertained. Southern Railway v. Beaufort, 615 S.C. 266, 451 S.E. 2d 390. However, the objection is really to the prejudice of the court, which may be entertained at any stage of the case, even sua sponte by this court. | Am motion for new trial may not be granted in equity. | An motion for renault entertained or granted in such in equity? | 029959.docx | LEGALEASE 00239311- LEGALEASE 00239312 | Condensed_SA_Sub 0.91 | | 839 | 0 | | 21,876 1 | 9,029 1 |
| 2031 | Moseley v. Behringer, 184 S.W.3d 829 | 307A+508 | The granting of a renault is a ministerial act. Greenberg v. Brookshire, 640 S.W.2d 870 [Tex.1982] (orig. proceeding) (interpreting former rule 165 as predecessor...) The granting of a renault is a ministerial act, see also in re Martinez, 77 S.W.2d 462, 464 (Tex.App.-Corpus Christi 2001, orig. proceeding); In re Bridges 28 S.W.3d 191, 195 (Tex.App.-Fort Worth 2000, orig. proceeding). "[I]n the ordinary case, absent special statutory provisions, a plaintiff has an absolute right to take a renault." Greiner v. Jameson, 865 S.W.2d 493, 498 (Tex.1993) (orig.proceeding). | The granting of a renault is a ministerial act; plaintiff's right thereto exists until an open court unless defended has, prior to that time, filed pleadings seeking affirmative relief.[1] A trial court therefore has no discretion to grant or deny the defendant's timely motion for a renault except where the defendant has previously filed pleadings seeking affirmative relief... | Is the granting of a renault a ministerial act? | 025141.docx | LEGALEASE 00120558- LEGALEASE 00120559 | Condensed_SA_Sub 0.55 | | 0 | | 1 | 1 |
| 2032 | State ex rel. Miller v. Columbus, 77 Ohio App. 3d 699 | 405+1365 | However, to the extent that R.C. 743.09 is construed to require a municipality to provide free water services to entities touched outside of the municipality's corporate limits, the statute arguably conflicts with Section 6, Article 10, and Section 19, Article I, of the Ohio Constitution. See State ex rel. McCann v. Defiance (1958), 167 Ohio St. 313, 4 O.O.2d 365, 148 N.E.2d 221, paragraph two of the syllabus; and Ohio. 4 O.O.2d 370, 148 N.E.2d 221; see also; Alcorn v. Devilabell (1938), 31 Ohio App. 342, 147 N.E.2d 708... Several factors is a constitutional conflict. Luck v. Mawr, N.C. v. Summit City Bd. of Comm'rs. (1988), 36 Ohio St.3d 85, 521 N.E.2d 818, paragraph one of the syllabus, construed clothes of R.C. 743.09 is a constitutional... Mawr, N.C. v. Summit City Bd. of Comm'rs. (1988), 36 Ohio St.3d 85, 521 N.E.2d 818, paragraph one of the syllabus, construed clothes of R.C. 743.09 to require the city to provide water services absent a contractual obligation. In light of Harway Mawr, we decline to construe R.C. 743.09 to require the city to provide at no charge... Accordingly, even if R.C. 743.09 is constitutional as applied herein, we find no conflict between the foregoing statute and the challenged ordinance. | City ordinance disclaiming responsibility for maintaining fire hydrants attached to city water lines but located outside city's corporate limits did not conflict with statute requiring municipalities to provide free water service to public buildings only where located within municipality and authorizing municipality to charge school district for water services to extent that district is not located within municipality's corporate limits, R.C. 55 743.09, 743.15; Const. Art. 1, S 19; Art. 18, S 6, 6. | An contractual obligations required to municipally owned public utilities to sell their products to extraterritorial purchasers? | 042558.docx | LEGALEASE 00226418- LEGALEASE 00226419 | Condensed_SA_Sub 0.61 | | 0 | | 1 | 1 |
| 2033 | Sheridan v. State, Dep't of Health, 182 So. 3d 787 | 78+1708 | While a premisurely filed complain does not, by itself, divest the Commission of jurisdiction, it does not necessarily follow that the appropriate disposition in such actual cases is for the trial court to hold the lawsuit in abeyance pending the conclusion of the administrative process. The proper disposition of premisurely filed actions varies depending on the nature of the premature element and the circumstances surrounding the premature element and the circumstances surrounding the prematurity... Act Shuck v. Bank of America, N.A. 862 So.2d 20, 24 (Fla. 2d DCA 2005). When the element of a claim is curable prior to the passage of time, courts generally determine the appropriate disposition is abatement of the action until the claim matures. Id. (citing Thomas v. Suwannee County, 734 So.2d 492, 497 (Fla. 1st DCA 1998)). However, if the action is premature because one of the essential elements of the claim is contingent upon the occurrence of an event that may or may not occur, the appropriate disposition is dismissal. Id. at 24. | The Commission on Human Relations is not divested of jurisdiction of a timely filed discrimination charge, under the Florida Civil Rights Act (FCRA), when the claimant prematurely files a civil action based on that charge; in the context of the FCRA provision governing the effect of a civil action on the administrative process... | Does the appropriate disposition of premisurely filed actions vary depending on the nature of the premature element and the circumstances surrounding the premature act? | 000341.docx | LEGALEASE 00230179- LEGALEASE 00180190 | Condensed_SA_Sub 0.57 | | 0 | | 1 | 1 |
| 2034 | Barrow v. Bixby, 765 F.2d 79 # 501 | 78+1413 | As both opinions in I find recognized, party affiliation may sometimes be an acceptable requirement for some types of government employment. Public employees' first amendment rights may have to yield to the government's vital interest in maintaining governmental effectiveness and efficiency if their private political beliefs would interfere with their public duties. Id. at 386, 96 S.Ct. at 2686. The plurality concluded, however, that the governmental interest in effectiveness and efficiency is only outweighs their first amendment rights when party affiliation is an appropriate requirement for the effective performance of the public office involved. Id. at 388. This constitutional viewpoint is in a policy-making and confidential position. Employees in those positions are thus vulnerable to dismissal for their political affiliation. Id. at 375, 96 S.Ct. at 2690. | Fact that one deputy circuit clerk of court who had supported unsuccessful incumbent in reelection bid was transferred from management position to a predominately minimal job meant to yield to the successful challenger's bias where she refused to resign effectively dismissal unlawful if amendment as clerk, who was transferred to avoid possible dismissal; structure of the political affiliation even though political affiliation had no relevance to the ministerial position he held at time successor took office. U.S.C.A. Const.Amend. 1. | Can the political affiliation of an employee of the court result in his dismissal? | 013380.docx | LEGALEASE 00180389- LEGALEASE 00180390 | Condensed_SA_Sub 0.27 | | 0 | | 1 | 1 |
| 2035 | Jackson v. Merritt, 1892 WL 11463 | 307A+531 | Mr. Evans, in discussing the only description of non-suit known to the Maryland practice, says (page 164): "It is manifest from the definition that a non-suit must be either voluntary or involuntary. A voluntary one occurs after the jury is sworn; it is said that it is agreed there are other varieties of non-suits, but in our philosophy the distinction just alluded to is generally observed. A voluntary non-suit, it would seem, may be entered without reference to the plaintiff's wishes and at any stage of the action. It may be ordered on motion of the defendant... but it is an involuntary non-suit in which the plaintiff cannot be stricken out on motion in the discretion of the court it is in a policy-making... matter is whether there is good ground in the nature of things a compulsory non-suit can be stricken on any voluntary non-suit. But in our procedure. We have seen that nothing of the kind ever existed in Maryland, and we have examined every source of information as to the subject in this State and have been unable to find any trace of it." | The court cannot compel the plaintiff to submit to a renault without his consent. | Can the court compel the plaintiff to submit to a renault without his consent? | Pretrial Procedures Memo # 1565 - C - TM.docx | LEGALEASE 00203964- LEGALEASE 00203969 | Condensed_SA_Sub 0.93 | | 0 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 23,876 | 9,029 |
| 20336 | Sheridan v. State, Dep't of Health, 182 So. 3d 787 | 78 +1732 | While a prematurely filed complaint does not, by itself, divest the Commission of jurisdiction, it does not necessarily follow that the appropriate disposition in all such cases is for the trial court to hold the lawsuit in abeyance pending the resolution of the administrative process. The appropriate disposition of prematurely filed actions varies depending on the nature of the premature action and the circumstances surrounding the premature act. Shuck v. Bank of America, N.A., 862 So.2d 20 , 24 (Fla. 2d DCA 2003). When the premature element of a claim is curable simply by the passage of time, courts generally determine that the appropriate disposition is abatement of the action until the cause matures. Id. (citing Fountain v. Chu, Suwannee County, 734 So.2d 487 (Fla. 1st DCA 1999)). However, if the action is premature because one of the essential elements of the claim is contingent upon the occurrence of an event that may never occur, the appropriate disposition is dismissal. Id. at 25. | Former employee failed to exhaust administrative remedies prior to filing Florida Civil Rights Act (FCRA) action against Department of Health, where she commenced action before Commission on Human Relations made cause determination or the 180–day deadline passed, giving her opportunity to utilize the full 180–day investigatory period provided by FCRA, notwithstanding that she designated charge to Equal Employment Opportunity Commission (EEOC), and that she complied with EEOC's 90–day right to sue deadlines; EEOC's right to sue notice was like that 90–day window applicable only to federal law claims, right-to-sue notice put employee on notice that time limit for filing FCRA claims under state law remained, "may have differed," and right to sue notice did not operate to circumvent requirement under FCRA that Commission determine whether there was reasonable cause to believe violation occurred before former employee was authorized to file action. West's F.S.A. § 760.11(3). | "Is it appropriate to dismiss, if the action is premature because one of the essential elements of the claim is contingent upon the occurrence of an event that may or may not occur?" | 00043.docx | LEGALEASE-00130299-LEGALEASE-00130300 | Condensed, SA, SuB 0 | 0 | 0 | 1 | 1 | 1 | 1 |
| 20337 | NCR Corp. v. Korala Assocs., Ltd., 512 F.3d 807 | 25T+143 | KAL next argues that even if the SCA software was not installed on the ATM that it hacked into, under the 1998 Agreement, the claims are closely related and we should therefore compel NCR to arbitrate the SA claims as well. In Korala v. Plant, Inc., 2986 F.3d 765 (6th Cir.2005), we distinguished the two types of claims a party may be required to arbitrate: (1) those claims which the court in the arbitration agreement, and a second claim is not, the arbitrability of the second is governed by whether the second claim is substantially related to the first. On the one hand, a party cannot avoid arbitration simply by casting its claims as the court may examine whether the dispute is "factually intertwined" with the arbitrable claims. Id. On the other hand, when the question of the arbitrability of a second claim turns on a factual determination that is intertwined with the arbitrable claims, arbitration is appropriate ... [text continues] | Copyright infringement claim relating to automatic teller machines (ATM) software not installed on ATM that copyright holder loaned to alleged infringer under agreement entered into by parties was not subject to that agreement's arbitration clause requiring arbitration for "any controversy or claim arising out of or relating to" the agreement; to contract in software on the loaned ATM, which copyright infringement claim was subject to the agreement, the software not on the ATM had no obvious link to the agreement and finding such a link required too many inferential steps, and infringement claim relating to the copyright infringement claim relating to the software did not compel arbitration of both claims, as the claims were not identical. | Can a party avoid arbitration by renaming its claim? | Alternative Dispute Resolution - Memo 316 - RK.docx | LEGALEASE-00020142-LEGALEASE-00020143 | Condensed, SA, Sub 0.35 | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 20338 | Lew v. JPMorgan Chase & Co., 982 F.Supp.2d 1109 | 25T+205 | Stoh Nielsen held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." 559 U.S. at 684, 130 S.Ct. 1758. The Court had no occasion, however, to rule on whether the availability of class arbitration is a question for the court or an arbitrator to decide because the parties had "expressly stipulated that their agreement was silent on the issue of the class." Id. at 680, 130 S.Ct. 1758. The Court noted only that, in Bazzle, "the plurality decided" that the availability of class arbitration for a submission to decide. Id. Stoh Nielsen, therefore, does not stand for Bazzle's persuasive authority. Stoh Nielsen simply commands fidelity to contractual principles when determining agreements by both courts and arbitrators, without distinguishing their respective roles. See id. at 684, 130 S.Ct. 1758 ("[W]hile courts and arbitrators must give effect to the contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." (emphasis added)). Therefore, it does not conclusively direct Nielsen to assign the question of the availability of class arbitration to an arbitrator. Id. at 680, 130 S.Ct. 1758.The Court noted that, in Bazzle, "the plurality decides" that the availability of class arbitration is a question for the arbitrator to decide because it was "impermissible." Id. at 680, 130 S.Ct. 1758.The Court noted only that, in Bazzle, "the plurality decided" that the availability of class arbitration is a question for the arbitrator to decide, and not held that it would be inappropriate to leave to an arbitrator to decide the question whether an arbitration agreement that is ... [text continues] arbitration.—U.S. —, 133 S.Ct. 1740, 1750-51, 179 L.Ed.2d 741 (2011). | Generally, a court's role under the Federal Arbitration Act (FAA) on a motion to compel is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. | Do courts and arbitrators give effect to contractual limitations? | Alternative Dispute Resolution - Memo 345 - SKB.docx | ROSS-003300480-ROSS-003300481 | Condensed, SA | 0.86 | 0 | 0 | | 1 | 1 |
| 20339 | State v. Lundberg, 575 N.W.2d 589 | 35DH+445 | The multiple victim exception was first developed in cases where the defendant committed violent offenses against more than one person. See, e.g., State v. rel. Sonjack v. Tahash, 281 Minn. 210, 238 N.W.2d 616, 627 (1975) (holding that multiple, separate sentences proper for defendant's murders intentionally inflicted on three victims).However, the supreme court has subsequently expanded the exception to include offenses involving property offenses, or a combination of property offenses and violent offenses committed against the same person, only to non-property offenses. See State v. Schneider, 402 N.W.2d 779, 790 (Minn.1987) (affirming imposition of consecutive sentences for convictions for burglary, kidnapping, and first-degree murder against different persons); State v. Hodges, 386 N.W.2d 709, 711 (Minn.1986) (holding multiple sentences improper for burglary convictions merely because three people were present in house when it was burglarized, but ruling burglary is not "purely a property offense," and sentences for the offenses committed on two of the occupants, rather than the other victims are permissible); see also State v. Wigan, 521 N.W.2d 452, 95 (Minn.1986) (holding multiple separate sentences proper for separate sentence for arson-based solely on fact murder victim jointly lived in house with defendant). Because the multiple victim exception does not extend to crimes against the person, we cannot say the trial court abused its discretion in sentencing Lundberg on the two theft charges. | Concurrent sentences resulting in defendant serving approximately 180 days in jail for stealing approximately $2,000 in cash and checks from restaurant, causing approximately $7,500 in property damage, and breaking approximately 15,000 in retail-bottles operation that based upon in restaurant, did not unfairly exaggerate criminality of defendant's conduct, despite challenge to sentence as out of proportion sentence for a second theft conviction; the two victims' monies were kept in different locations and were separately targeted. | Is burglary purely a property offense? | Burglary - Memo 34 RK.docx | LEGALEASE-00020263-LEGALEASE-00020264 | Condensed, SA, Sub 0.65 | 0.65 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20340 | Rhoton v. State, 938 N.E.2d 1240 | 110+1172.1(3) | Again, the State charged Rhoton with burglary, as a Class A felony. Over Rhoton's objection, the trial court instructed the jury as follows:The crime of Burglary, a Class A felony with which the Defendant is charged in Count 2, is defined as follows:"A person who breaks and enters the building or structure of another person, with the intent to commit a felony therein, and who causes serious bodily injury to any other person, commits Burglary, a Class A felony." | Any error in instructing jury that Class A felony burglary did not require finding that defendant was armed with a deadly weapon when he broke and entered was harmless, as court entered judgment of conviction for Class C felony burglary to avoid a double jeopardy violation, and there was argument that state was required to show that defendant was armed with a deadly weapon in order to support conviction for Class C felony burglary or that the evidence was insufficient to support that conviction. West's A.I.C. 35-43-2-1. | When is burglary a Class A felony? | Burglary - Memo 76 - RK.docx | ROSS-003326293-ROSS-003326294 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 20341 | United States v. Chisolm, 166 F. Supp. 3d 1279 | 350H+1285 | At sentencing, the Government argued that the statute is divisible "because a person could commit a burglary by being on the curtilage or entering the structure." This argument is circular and misses the mark. As noted earlier, "structure" is defined for purposes of the burglary statute as including the curtilage of a building. " 810.011, Fla. Stat. (1986). In other words, "Florida does not consider burglary of the curtilage of a structure to be a crime distinct from burglary of that structure." United States v. Matthews, 466 F.3d 1271, 1274 (11th Cir.2006) (citing Henry v. State, 707 So.2d 370, 372 (Fla. lst DCA 1998)).Because the definition of "structure" includes "curtilage," burglary of a structure can be committed through burglary of curtilage only, which does not constitute generic burglary. Curtilage is not an alternative element but an inherent part of the definition of "structure." The inclusion of curtilage in the definition of "structure" thus renders the Florida burglary statute indivisible for all relevant purposes. | Defendant's prior Florida conviction for burglary was not a violent felony under the Armed Career Criminal Act (ACCA); Florida's burglary statute was broader than the generic burglary offense, as it included conveyances as well as structures and defined structure to include the curtilage of the structure, and Florida's burglary statute was not divisible, thus precluding application of the ACCA's modified categorical approach, as the statute defined structure overbroadly to include curtilage, rather than alternatively to include curtilage. 18 U.S.C.A. S 924(e); Fla. Stat. Ann. S 810.02. | Is the burglary of curtilage a generic burglary? | Burglary - Memo 83 - JK.docx | ROSS-003313691-ROSS-003313692 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 20342 | Martinez v. Rio Rancho Estates, 1979-NMCA-086, 4, 93 N.M. 187 | 307A+753 | Rule 16, R.Civ.P., N.M.S.A.1978, provides that the trial court may enter a pre-trial order which, "when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." It was said in State ex rel. State Highway Highway Dept. v. Branchau, 90 N.M. 496, 565 P.2d 1013 (1977), that the justification behind this rule is to prevent surprise and to get away from the "sporting" theory of justice. Since appellant admits that he learned of the witness's expertise several days before trial but took no action to advise opposing counsel or to have the name included in the list of witnesses contained in the pre-trial order, the court acted well within its discretionary power in refusing to disregard the limitations of the pre-trial order both times the witness was called. | Where plaintiff learned of his witness' expertise several days before trial but took no action to advise opposing counsel or have name included in list of witnesses contained in pretrial order, and where trial court suggested that damaging letter as to which witness was to testify be introduced through another witness, court properly refused to permit witness to take the stand on ground that name of witness was not included in pretrial order and his testimony would be a surprise to objecting defendant. | What is the justification behind rule providing for pretrial order to control subsequent course of action unless modified at trial to prevent manifest injustice? | 026460.docx | LEGALEASE-00131147-LEGALEASE-00131148 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 20343 | Thomas More Law Ctr. v. Obama, 651 F.3d 529 | 371+2001 | Under the taxing power, a " "tax" is an enforced contribution to provide for the support of government." United States v. La Franca, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551 (1930). The central objective of a tax is to "obtain[ ] revenue." Child Labor Tax Case, 259 U.S. 20, 38, 42 S.Ct. 449, 66 L.Ed. 817 (1922). A "penalty," by contrast, regulates conduct by establishing "criteria of wrongdoing and imposing its principal consequence on those who transgress its standard." Id. In placing a law on one side or the other of this divide, courts consider "the intent and meaning of the legislature" based on "the language of the act." A. Magnano Co. v. Hamilton, 292 U.S. 40, 46, 54 S.Ct. 599, 78 L.Ed. 1109 (1934). | Under the Constitution's taxing power, a "tax" is an enforced contribution to provide for the support of government, and the central objective of a tax is to obtain revenue; a "penalty," by contrast, regulates conduct by establishing criteria of wrongdoing and imposing its principal consequence on those who transgress its standard. (Per concurring opinion of Sutton, Circuit Judge, for a majority of the court.) U.S.C.A. Const. Art. 1, S 8, cl. 1. | What is the central objective of a tax? | Taxation - Memo # 160 - C- NA.docx | ROSS-003288227-ROSS-003288228 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 20344 | City of Vacaville v. Pitamber, 124 Cal. App. 4th 739 | 371+2001 | No rule requires scienter as a necessary element of every law imposing criminal penalties. "It is an established principle that every true crime (as distinguished from 'regulatory' or 'public welfare' offenses) ordinarily requires a general criminal intent or 'mens rea.' " (1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Elements, " 1, p. 198.) Statutes imposing taxes are regulatory statutes. " '[I]n the collection of taxes, the importance to the public of their collection leads the [L]egislature to impose on the taxpayer the burden of finding out the facts upon which his liability to pay depends, and meeting it at the peril of punishment." (People v. Allen (1993) 20 Cal.App.4th 846, 854-855, 25 Cal. 26 [quoting from United States v. Balint (1922) 258 U.S. 250, 252, 42 301].) "Where an affirmative act is involved, imposition of liability without proof of guilty intent or knowledge is constitutionally proper." (1 Witkin & Epstein, Cal. Criminal Law, supra, Elements " 19, p. 224.). | Statutes imposing taxes are regulatory statutes. | Are statutes imposing taxes regulatory statutes? | Taxation - Memo # 181 - C - SS.docx | ROSS-003304031-ROSS-003304032 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 20345 | People v. Allen, 20 Cal. App. 4th 846 | 371+2001 | There is no question that the collection of taxes serves a high public purpose. "The need of a state government for tax funds to carry out its legitimate governmental function is ... a compelling need...." (People v. Roper (1983) 144 Cal.App.3d 1033, 1042, 193 Cal.Rptr. 15.) Thus, tax statutes are regulatory or public welfare in nature. | Tax statutes are regulatory or public welfare statutes. | Are statutes imposing taxes regulatory statutes? | 044737.docx | LEGALEASE-00130900-LEGALEASE-00130901 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 20346 | Rural Tel. Coal. v. F.C.C., 838 F.2d 1307 | 371+2001 | We also find unacceptable MCI's argument that the twenty-five percent allocation is an exercise of taxing power that Congress has not delegated to the Commission, and that could not be delegated without violating the Taxing Clause, U.S. Const. art. I, " 8. In Brock v. Washington Metropolitan Area Transit Auth., 796 F.2d 481, 489 (D.C.Cir.1986), cert. denied, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987), we warned that "[t]he definition of "tax" in the abstract is a metaphysical exercise in which courts do not have occasion to engage." Rather, a regulation is a tax only when its primarypurpose judged in legal context is raising revenue. Id. at 488-89. There is no reasonable way to construe the NTS cost allocation as having the primarypurpose of raising federal revenue. Cf. South Carolina ex rel. Tindal v. Block, 717 F.2d 874, 887 (4th Cir.1983) (it is not an exercise of taxing power, but of the power to regulate commerce, to exact deductions from sales of all commercially marketed milk to offset cost of milk price support program), cert. denied, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984). | Regulation is a tax only when its primary purpose is raising revenue. | Is regulation the primary purpose of a tax? | 044767.docx | LEGALEASE-00130994-LEGALEASE-00130995 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 20047 | City of Providence v. Moulton, 27 F.Ad. 231 | 302+6(15) | Where fraud is pleaded either at law or in equity, facts which constitute the fraud must be clearly and explicitly set out so that the court and the pleader may judge whether the act complained of was fraudulent. This rule has general application to the allegations of fraud as a defense as well as a basis for relief. Fraud cannot be pleaded by way of conclusion only. Clements v. Eggleston, 216 Ala. 590, 114 So. 2. | Fraud cannot be pleaded by way of conclusion only. | 021021.docx | LEGALEASE-00132727; LEGALEASE-00132727 | Condensed, SA | 0.88 | | | | 1 | |
| 20048 | Black v. Don Schmid Motor, 232 Kan. 458 | 307A+752 | Regarding the provisions of the corresponding Federal Rule, Fed.R.Civ.Proc. 56, Wright & Miller, Federal Practice and Procedure, Civil § 2727 (1973), state: "Although Federal judges generally recognize the binding effect of the pretrial order, this does not mean that it is rigidly and pointlessly adhered to at trial. The application of conclusion always is viewed as a matter of judicial discretion. Thus, in the absence of an abuse of that discretion, it is not error for the court to permit the introduction of evidence or to give instructions on issues beyond the scope of the order or to hear witnesses not listed in accordance with the court's order.  In addition to allowing matter to be introduced that is outside the pretrial order in appropriate cases, courts have held that the order should be construed liberally so that it covers any of the possible legal or factual theories that might be embraced by its language. Even if the pretrial order cannot be interpreted to apply to the claim that is challenged as being outside its terms, relief still may be available because that it is otherwise proper the order may be modified to "prevent manifest injustice." | "In determining breadth of pretrial order, should an order be given liberal construction?" | 027236.docx | LEGALEASE-00131781-LEGALEASE-00131782 | Condensed, SA, Sub 0.9 | | | | | 1 | |
| 20049 | Blanchard v. Blanchard, 261 Ga. 11 | 371+2901 | "[T]he law is statutory and equitable considerations are inapplicable." Feary v. United States, 384 F. Supp. 1121, 122 F.Rs (1974), aff'd 518 F.2d 1461 (10th Cir. 1975). As further stated in Feary, supra at 1126: Congress, not the Courts, bears the responsibility for establishing the rules of taxation, and by so doing, exercises one of its indicia in its constitutional powers, the Courts cannot cut broad swaths to frustrate specific statutory language. [Cf.] The specific statutory language should not be frustrated by the courts' attempts to use equitable powers to tax the income of the custodial parent. | Is tax law statutory? | 040922.docx | LEGALEASE-00131971-LEGALEASE-00131972 | Condensed, SA | 0.89 | | | | 0 | |
| 20050 | Catlett v. New York Tel. Co., 48 A.D.3d 991 | 413+1 | On this zero of the record, in the absence of any proof as to whether light work might have been available in the claimant, and where claimant admittedly failed to seek such work, we are forced to conclude that the board's finding that his disability was a limiting factor, is speculative and does not have the support of substantial evidence, find that since light work had been refused same, the board could properly have found a partial injection between the disability and the loss of wages. The evidence presented here, however, only allows the conclusion that his wage loss during the period of question result solely from the strike. In these circumstances, the loss of work is "due to economic conditions associated with the disability," and therefore is not compensable (Matter of Maturzkowicz v. Maritime Milling Co., 184 A.2d 740, 235 N.Y.S.2d 426). | Loss of work resulting solely from strike is not compensable under workmen's compensation statute. | Workers Compensation - Memo #263.MC.docx | LEGALEASE-00023335-LEGALEASE-00023336 | Condensed, SA, Sub 0.9 | | | | | 1 | |
| 20051 | Evans v. United States, 504 U.S. 255 | 164H+241(1) | The requirement of a quid pro quo means that without a pretense of any entitlement to the payment, a public official violates § 1951 if he induced the payor to believe that absent payment the official is likely to abuse his office and its incumbent coercive power and ring of the public fear to give the prospective payor less favorable treatment that if he paid up. We do not doubt that the official would accept the cash in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods.  The inducement from the official is criminal if it is express or if it is implied from the words and actions, so long as he intends it to be so and the payor to interpret it. And I'd ask that pam to page 17 [including the instructions on corrupt intent], "As it is," corrupting "does with an instruction by pain with that defendant's "for real a law, but public, official fine that this is actually giving acquired that the rep that evidence, for an obtained that the actual of "with a bad purpose or even of motion of accomplish unlawful method or means?" This is more than doing something bad. This is somebody acting with a bad purpose or even motive to accomplish something unlawful. This is somebody who wants to do something unlawful." | Does bribery require that the official and the payor state the quid pro quo in express terms? | Bribery - Memo #242 - C- ROSS-000200830-ROSS-000200832 | ROSS-000200830-ROSS-000200832 | Condensed, SA, Sub 0.1 | | | | | 0 | |
| 20052 | United States v. Kay, 513 F.3d 461 | 63+14 | Jury instructions did not amount to improper general intent instruction, in bribery prosecution arising out of falsification of records; instruction did not tell government that defendants had charged under bribery and to prove that defendants conduct was illegal, where instructions "corruptly" element referred to "bad purpose" and "evil motive," instructions included in finding of "intents to violate the law," neither government nor defense counsel suggested in closing argument that defendants could be convicted if there was reasonable doubt of their knowledge of unlawfulness, and question from jury confirmed that it did not believe defendants could be convicted about their knowledge of unlawfulness. Foreign Corrupt Practices Act of 1977, 55 103(a), 104, 15 U.S.C.A. SS 78dd-1, 78dd-2; Securities Exchange Act of 1934, S 32, 15 U.S.C.A. S 78ff, 18 U.S.C.A. 2. | When is an act corruptly done? | Bribery - Memo #225 - C - ROSS-000200823 E8.docx | ROSS-000200823 | Condensed, SA, Sub 0.18 | | | | | 1 | |
| 20053 | United States v. Lisinski, 728 F.2d 887 | 63+1(1) | Lisinski contends that this is a case of bribery, not extortion, because of the fact that Patrice was willing to pay to influence official action and because there was no compulsion on Lisinski to pay. The argument is, routine in extortion cases and meritless on the facts of this case. Bribery and extortion are not mutually exclusive. See United States v. Kenny, 462 F.2d 1205 (3d Cir. 1976). "That such conduct may also constitute "classic" bribery" is not a relevant consideration." United States v. Braasch, 505 F.2d 139, 151 (7th Cir. 1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1564, 43 L.Ed.2d 775 (1975). Regardless of the fact that a prosecution for bribery might have been sustained, the facts of each case determine the adequacy sufficiency to sustain Lisinski's extortion conviction. See section 4, supra. | Are bribery and extortion are mutually exclusive? | Bribery - Memo #256 - C- ROSS-000286696-ROSS-000286697 | ROSS-000286696-ROSS-000286697 | Condensed, SA | 0.94 | | | | 0 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 20354 | Kelley v. Kelley, 214 N.E.2d 147 | 289×1140 | In support of its "justification" of the asset award to Willy, the majority cites RDL Illinois Complete Acts (Ill.) 805 ILCS 205, provides disposition of a Partnership interest. Except as provided in the partnership agreement, a partner does not cease to be a partner on assignment of all or any part... An assignment of a partnership interest does not dissolve a limited partnership or, unless otherwise provided in the partnership agreement, entitle the assignee to become a partner or to exercise any rights of a partner. Except as provided in the partnership agreement, a partner ceases to be a partner upon the assignment of all of his or her partnership interest... [emphasis added] | Husband's assignment of his general partner interest in limited partnership to wife pursuant to marital dissolution decree was effective as between husband and wife, though certificate of limited partnership was not amended as required under Illinois law; Revised Uniform Limited Partnership Act (RULPA) to reflect withdrawal of husband as general partner and admission of wife as general partner, and where wife was not a third party with respect to the partnership and she did not show she had been injured by the failure to amend the certificate of limited partnership. S.H.A. 805 ILCS 210/101, 210/801(2)(i, 3). | Does a partner cease to be a partner upon the assignment of all of his or her partnership interest? | 021216.docx | LEGALEAGLE 00131531 / LEGALEAGLE 00131532 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 20355 | Randall M. Sherman, Chartered v. State Farm Mut. Auto. Ins. Co., 266 Md. 714 | 379×746 | Under Md. Rule 2-322, a motion to dismiss for failure to state a claim serves the same function as the demurrer under former Rules 345 and 371b. Broadwater v. State, 303 Md. 461, 494 A.2d 934 (1985); P. Niemeyer and L. Richards, Maryland Rules Commentary, p. 213 (1984). Consequently, in considering the legal sufficiency of Sherman's complaint to state a cause of action for tortious interference, we must assume the truth of all relevant and material facts that are well-pleaded and all inferences which can be reasonably drawn from those pleadings. Faber v. Montgomery County, 300 Md. 139, 542, 479 A.2d 1121 (1984); Hoffman v. Key Fed. Sav. & Loan, 286 Md. 28, 416 A.2d 1265 (1979). On the other hand, any ambiguity or uncertainty in the allegations bearing on whether the complaint states a case of action must be construed against the pleader. Sharrow v. State Farm Mut., 280 Md. 408, 243 A.2d 541 (1968); Center v. Tanner, 225 Md. 271, 170 A.2d 220 (1961). | Attorney representing party injured in automobile accident stated cause of action against tort-feasor's insurer for tortious interference with contract, where he alleged that insurer capitalized on his client's inability to pay money by mailing client a negotiation settlement check, and that attorney refused to endorse the check and returned the check to insurer before depositing check with bank, alleging that insurer had asked attorney of his intention to settle directly with insurer, all for purpose of inducing client to repudiate his contract with attorney to deprive attorney of fee under contingent fee arrangement. | Will an ambiguity or uncertainty in the allegations, bearing on whether the complaint states a cause of action, be construed against the pleader? | 021214.docx | LEGALEAGLE 00131854 / LEGALEAGLE 00131855 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 20356 | De La Olsa v Wells Fargo Bank, N.A., 210 So. 3d 954 | 267×5511 | A judgment is a final adjudication of the merits of an action. Miami–Dade County, 110 So.2d 1, 7 (Fla. 1959). A judgment, which decrees a judgment in an equitable action. See Nichols v. Bodenwein, 107 Fla. 25, 146 So. 86, 91 (1932). An order is a command or direction of the court, but not a judgment. See instruction delivered to the trial court. Order, BLACK'S LAW DICTIONARY (10th ed. 2014). A proceeding generally encompasses certain other acts of litigation, such as a party's voluntary dismissal... | Order to reopen judgment that had dismissed with prejudice paternity action against putative father was not abuse of discretion, where trial court had not retained jurisdiction and dismissal on the merits or with prejudice. W.S.A. 806.07(1)(a). | "Does a '"proceeding"' generally encompasses certain acts of litigation that may, such as a party's voluntary dismissal?" | 027946.docx | LEGALEAGLE 00132609 / LEGALEAGLE 00132610 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 20357 | Inre Paternity of M.T.H., 140 Wn. 2d 843 | 285×174 | A motion to reopen a judgment is within the trial court's jurisdiction to entertain a motion to reopen the judgment. The defendant asserts that a dismissal with prejudice gives a judgment on the merits that the court had. Defendant is not entitled to a judgment on the merits. See Schwartz v. Fatoula, 367 P.2d 125, 130 (Wis.) 1985). We find no fault with this reasoning. However, the defendant then concludes that the prejudicial dismissal's similarity to a judgment on the merits deprives the court of jurisdiction over a matter not found to such. The defendant cites no cases from other jurisdictions supporting this conclusion. We are not... | Order to reopen judgment that had dismissed with prejudice paternity action against putative father was not abuse of discretion, where trial court had not retained jurisdiction and dismissal on the merits or with prejudice. W.S.A. 806.07(1)(a). | Is dismissal with prejudice tantamount to a judgment on the merits? | 026089.docx | LEGALEAGLE 00131652 / LEGALEAGLE 00131653 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20358 | Saum v. Widnall, 912 F. Supp. 1384 | 92×2544 | DOD v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Certain matters are so uniquely within the military's discretion that they are deemed to be entirely outside the competence and authority of the judicial branches of government. In Gilligan v. Morgan, for example, plaintiffs sought review of the policies, patterns and practices of the Ohio National Guard after the infamous shootings at Kent State University. Writing for the majority, Chief Justice Burger found plaintiffs' claims nonjusticiable. It is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the government as exercised by the legislative branch... | Under judicial policy called "discussion," which is akin to comity, federal courts are reluctant to intervene in or review internal military affairs; certain matters are so uniquely within military's discretion that they are subject to civilian control only by legislative and executive branches of government. | Is composition of the armed forces a matter of Congress and military? | 006824.docx | LEGALEAGLE 00131804 / LEGALEAGLE 00131805 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 20359 | Mack v. Rumsfeld, 609 F. Supp. 1561 | 34×C(1) | Plaintiffs claim the exclusionary policy violates their fundamental constitutional right to freedom of choice in family matters and constitutes an indubitable presumption as to the fitness of single parents for military service, all in violation of the due process clause of the Fifth Amendment. The regulations at issue here, however, do not interfere with plaintiffs' constitutional right to have, or not to have, a family. They simply prohibit plaintiffs, as single parents, from retaining in the Army or Air Force. There is no constitutional right to join the military. Lindenau v. Alexander, 663 F.2d 68 (7th), and Crawford v. Cushman, 531 F.2d at 1120. | There is no constitutional right to join the military. | Is there any constitutional right to join the military? | Armed Services - Memo 129 - fs.docx | LEGALEAGLE 00025567 / LEGALEAGLE 00025568 | Condensed, SA | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 20360 | Richie v. Weston, 141 Ohio App. 3d 176 | 38×90 | "In Ohio, an assignee 'stands in the shoes' of the assignor, and thus, an assignee succeeds to only those rights held by the assignor, and is therefore subject to the same defenses the assignor is subject to." The holder of the instrument (the assignee) has the same rights as the assignor. Apparently for this reason the cause in Ohio is that an assignee of a negotiable instrument stands in the shoes of the assignor; no he has the same title that the assignor had no better, no worse — and if the original could not recover, neither can the assignee. | "Standing in the shoes of another" means that the assignee stands in the shoes of the assignor or subrogee and succeeds to all the rights and remedies of the latter. | Does an assignee of a negotiable instrument stand in the shoes of the assignor? | 010961.docx | LEGALEAGLE 00131778 / LEGALEAGLE 00131779 | Condensed, SA | 0.41 | 0 | 1 | 1 | 1 | 1 |

3587

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 22,876 | 9,029 |
| 20161 | Vogel v. Am. Kiosk Mgmt., 371 F. Supp. 2d 122 | 170H+2154 | Rule 41(a) permits voluntary dismissal an action, meaning the totality of all component claims asserted against a single defendant... | In context of FLSA action brought by single employee asserting both unfair labor practices, (1)(A) by stipulation, or (2) by court order. See Fed.R.Civ.P. 41(a). Pursuant to Rule 41(a)(1)(i), voluntary dismissal by filing of an dismissal notice prior to defendant's service of an answer is effective... See Fed.R.Civ.P. 41(a)(1)(i). 29 U.S.C.A. § 216(b); Fed.Rules Civ.Proc.Rule 41, 28 U.S.C.A. | Does the plain language of Rule 41(a) of Civil Procedure permit the totality of all component claims asserted against a single defendant? | Pretrial Procedure - Memo # 226 - C - V4.docx | ROSS-003029059/ROSS-003029064 | Condensed, SA, Sub2 0.62 | | 0 | | 1 | | |
| 20162 | Mosely v. Graydon, 35 S.C.L. 7 | 83I+423 | The next thing to be noticed is the objection, that this writing of indorsement is not on the note but on a separate paper. Although the term "indorsement" in its etymological sense signifies a writing on the back of a bill or note... | An indorsement of a note its own to collect, and, if he fail to collect, the indorser to pay the same to the indorsee: though made on a separate piece of paper (the bill or note, called an allonge), it is sufficient. An indorsement on an annexed piece of paper to render the indorser liable to the indorsee. | Is an indorsement on an annexed piece of paper to the bill or note a sufficient indorsement? | 009482.docx | LEGALEASE-00134553 / LEGALEASE-00134554 | Condensed, SA, Sub 0.83 | | 1 | | | |
| 20163 | Closson v. Stearns, 4 Vt. 11 | 83I+425 | The plaintiff sued as endorsee of a promissory note executed by defendant. On producing the note it appeared that the endorsement was made and signed with a pencil... An indorsement written and signed with a pencil is a valid indorsement. | An indorsement written and signed with a pencil is a valid indorsement | Is an indorsement written and signed with a pencil a valid indorsement? | 009487.docx | LEGALEASE-00134589 / LEGALEASE-00134590 | Condensed, SA, Sub 0.94 | | 1 | | | |
| 20164 | Mirandona Bros. v. Danos, B, 36 So. 2d 159 | | Defendant's counsel points to what he considers a discrepancy in the $150 transaction. The statement reflects that the $150 was advanced on "9/6/46," while the note which purports to evidence it bears the date "9/3/46." We consider the variance in dates of no consequence in the evidence is convincing that in consideration of the $150 the note was issued... | That negotiable note was dated three days prior to date on which advance evidenced by note was made did not affect validity of note. | If a note is incorrectly dated, would it affect its validity? | Bills and Notes Memo 292 -DB.docx | ROSS-003291570 | Condensed, SA, Sub 0.7 | | 0 | | | |
| 20165 | United States v. Sunia, 643 F. Supp. 2d 51 | 91+73[4] | The government warns that this construction of the statute contradicts the Supreme Court's decisions in Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), and Sabri v. United States, 541 U.S. 600, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004)... | Member of Senate in American Samoa was not "agent" of American Samoa Department of Treasury or Education under statute governing fraud concerning programs receiving federal funds, as required to indict member based on alleged conspiracy to secure contractual payments relating hundreds of thousands of dollars in exchange for manufacturing and supplying classroom and library furniture for American Samoa Department of Education. 18 U.S.C.A. § 666(a)(1)(A). | Should a bribe affect federal funds before the bribe violates the federal bribery statute? | 011256.docx | LEGALEASE-00134310 / LEGALEASE-00134312 | Condensed, SA, Sub 0.59 | | 0 | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20366 | United States v. Lisinski, 728 F.2d 887 | 63+1(1) | Lisinski contends that this is a case of bribery, not extortion, because of the fact that Patras was willing to pay to influence official action and because there was no compulsion on Lisinski's part. This argument is routine in extortion cases and meritless on the facts of this case. Bribery and extortion are not mutually exclusive. United States v. Price, 617 F.2d 455 (7th Cir.1979). "That such conduct may also constitute "classic bribery" is not a relevant consideration." United States v. Braasch, 505 F.2d 139, 151 (7th Cir.1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975). Regardless of the fact that a prosecution for bribery might have been sustained, there exists more than adequate evidence to sustain Lisinski's extortion conviction. See section a, supra. | Bribery and extortion are not mutually exclusive. | Are bribery and extortion mutually exclusive? | 011276.docx | LEGALEASE-00134404-LEGALEASE-00134405 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 20367 | Rainwater v. Haynes, 244 Ark. 1191 | 371+2001 | Appellees' argument overlooks the fact that these special assessments are not really "taxes' in the usual and ordinary meaning of the word. While both are referable to the sovereign power of taxation, the words "taxes' on the one hand and "assessment", "special assessments' or "local assessments' on the other, ordinarily have distinct legal meanings. The word "taxes' refers to exactions laid by the government for purposes of general revenue. The word "assessments' refers to exactions laid for making local improvements for the benefit of property owners. The word "tax" does not include "assessments." Board of Improvement of Sewer Dist. No. 2, etc. v. Sisters of Mercy, 86 Ark. 109, 109 S.W. 1165, 15 Ann.Cas. 347; Martin v. Reynolds, 125 Ark. 163, 188 S.W. 4; Missouri Pacific R. Co. v. Izard Co. Highway Imp. Dist. No. 1, 143 Ark. 261, 220 S.W. 452. See, also, Wood v. Henderson, 225 Ark. 180, 280 S.W.2d 226. | The word "tax" does not include "assessments". | "Does the word ""tax"" include ""assessments""?" | 045034.docx | LEGALEASE-00134381-LEGALEASE-00134383 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 20368 | Rounsaville v. Cent. R. Co., 87 N.J.L. 371 | 413+1 | The federal Employers' Liability Act is an act, as its name imports, to regulate the liability of employers, and, as its body shows, is applicable only to liability in tort for negligence. No new right of action is given. All that is done is to take away certain defenses which had come to be thought unjust. The legal liability of the employer under the act does not depend upon the terms of the contract of service, and is neither increased nor diminished thereby. The amount of the pecuniary liability is in no way regulated or limited. The act applies only to certain classes of employers. In all these respects the Workmen's Compensation Act differs.Liability thereunder is contractual, and, while the contract liability is implied from silence, either party is at liberty to adopt or reject the statutory contract. A new right of action is given, of a character unknown to our law, at least for several centuries. The liability of the employer depends, not on any fault of his own or his servants, but on whether, by act or by silence, he has adopted the statutory terms. The amount of his pecuniary liability is fixed by statute and not by the verdict of a jury. Employer and employ" adopt, as a part of their contract, a novel method of procedure, in which the liability and the compensation are determined by the judge, instead of by a jury. And the compensation is ordinarily meant to be paid by installments, in lieu of wages, as it were, and may be changed if circumstances change. The scheme is more like a pension scheme than a liability for a breach of contract, or damages in tort. The difference between the two kinds of legislation is illustrated in our act. Section 1 is an employer's liability act similar to the act of Congress, and regulates the liability in a common-law action of tort. Section 2 creates and regulates the new statutory right. But for paragraph 8 of section 2 there might have been a double recovery, a recovery for the tort in a common-law action, and a recovery of the statutory compensation by means of the statutory | The federal Employers' Liability Act deals with an entirely separate matter from the New Jersey Workmen's Compensation Act. | Is the federal Employers Liability Act applicable to liability in tort for negligence? | 047997.docx | LEGALEASE-00134852-LEGALEASE-00134854 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 20369 | United States v. Cervone, 907 F.2d 332 | 63+1(1) | The statute's language speaks of a "thing of value" or "money," clearly indicating that tangible items or at least valuable services or entitlements were contemplated. The government cites no caselaw to support its intangible benefit theory, and we are aware of none. There have been convictions under the statute for transfers to a friend or relative of the representative at the behest of the representative, see, e.g., United States v. Carlock, 806 F.2d 535, 555 (5th Cir.1986) (business benefit to representative's daughter-in-law), cert. denied, 480 U.S. 949, 107 S.Ct. 1611, 94 L.Ed.2d 796 (1987); United States v. DeBrouse, 652 F.2d 383, 387"88 (4th Cir.1981) (payments to nominee of representative); United States v. Lanni, 466 F.2d 1102, 1107"09 (3d Cir.1972) (payments to representative's girlfriend), but this is not such a case. Moreover, it is anything but clear what intangible benefit Cervone received, and that benefit thus seems not only intangible but also unidentifiable. We decline to adopt such a formless interpretation of this criminal statute, particularly since the payoff to Ferguson seemingly could have been prosecuted under a proper indictment. | Intangible value to local union's business manager of continuing ability to influence corrupt union practices by transferring money from developer's site supervisor and subcontractor's president to head of coalition protesting subcontractor's alleged failure to hire minorities was not "thing of value" within meaning of statute prohibiting employers from paying thing of value to any officer or employee of labor organization; thus, supervisor and president could not be convicted of labor bribery. Labor Management Relations Act, 1947, S 302(a)(2), 29 U.S.C.A. S 186(a)(2). | Does a thing of value include tangible items under bribery statutes? | Bribery - Memo #483 - C-JL.docx | ROSS-003303628-ROSS-003303629 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 20370 | Peachtree Apartments v. Pallo, 317 S.W.3d 189 | 307A+517.1 | A motion to quash execution constitutes a special proceeding attacking enforcement of the judgment, and it is independent of the principal cause of action"here, the landlord's suit for rent and possession of the apartment. Carrow v. Carrow, 294 S.W.2d 595, 597 (Mo.App.St.L.Dist.1956). In this case, the tenant voluntarily withdrew his motion to quash execution on September 1, 2009. The tenant's withdrawal of his motion to quash is analogous to the voluntary dismissal of a case. Generally, dismissal disposes of the entire case. State ex rel. McMullin v. Satz, 759 S.W.2d 839, 840 (Mo. banc 1988). A voluntary dismissal becomes effective on the date it is filed with the court, and once a case is dismissed, it is as if the suit were never brought. State ex rel. Frets v. Moore, 291 S.W.3d 805, 812 (Mo.App. S.D.2009). And once a case is dismissed, the court loses all jurisdiction over it, and may take no further action. McMullin, 759 S.W.2d at 840; Frets, 291 S.W.3d at 812. Any attempted action on a dismissed case is a nullity. Id. | Any attempted action by a court on a dismissed case is a nullity. | "If a plaintiff attempts to voluntarily dismiss less than all the defendants without obtaining leave of court, is the dismissal ineffective?" | 028507.docx | LEGALEASE-00134933-LEGALEASE-00134934 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Copied Headnote | Judicial Opinion Text | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 20371 | Amos v. Prod. Credit. Co. v. Sayler, 814 S.W.2d 211 | 307Ak716 | Legislative continuance is mandatory, if a legislature requested, except when substantial existing rights will be defeated or abridged by delay of trial. | If properly requested, a legislative continuance is mandatory. See Tex.Civ.Prac. & Rem.Code Ann. §30.003 (Vernon 1986). Likewise, Tex.R.Civ.P. 254, states that the court shall continue the case if it appears to the court, by affidavit, that any attorney for any party to a case is a member of the legislature. The rule further states that on the filing of the affidavit the court shall continue the cause until thirty days after the adjournment of the legislature and the affidavit shall be proof of the necessity for the continuance. The right to a continuance shall be... | Is a legislative continuance mandatory? | Pretrial Procedure - Memo #1345 - C - VF.docx | ROSS/00291685-ROSS-00291686 | Condensed_SA_Sub 0.75 | | | | | | 1 |
| 20372 | People v. Grayson, 83 Cal. App.3d 516 | 110v207(8) | Since the act of placing a bet on a horse race is punishable as an offense separate from offense of receiving, holding, or forwarding the bet... | The first question is whether one who places a bet on a horse race is an accomplice of one who receives, holds, or forwards the bet, which is itself an offense by subdivision 3 of section 337a. By section 1111, Penal Code, an accomplice is defined as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."... | Can the giver and the receiver be accomplices in a bribery case? | 01.0559.docx | LEGALEASE-00156266-LEGALEASE-00156268 | Condensed_SA_Sub 0.78 | | | | | 1 | |
| 20373 | United States v. Stein, 250 F.3d 878 | 110v10I8.2 | Although district court's failure to instruct the jury on the causation requirement as to which three violations of Title 21 constituted the series of transactions that make up a continuing criminal enterprise (CCE) constituted Richardson error, defendant failed to establish plain error since there was no reasonable probability that the verdict would have been different... | Finally, we agree that "[t]he government alone bears the plain error burden under 18 U.S.C.A. § 2261(d)(2) when it proves something of value in exchange for testimony." Defendant's list of 471 specifically, 500 first argues that the government violated " 201(c)(2) by promising sentencing benefits to cooperating witnesses in exchange for their testimony. The defendant agreed to drop charges against a defendant if the defendant would plead guilty to another specified charge or charges and "cooperate fully and truthfully with the United States and provide all information known to him" regarding any criminal activity." (L.A. at 801.) Such cooperation included working against his co-defendants and disclosing his role in exchange for favorable treatment... | Does the government violate federal bribery laws when they promise immunity and possible sentence reductions in exchange for testimony at trial? | 01.0680.docx | LEGALEASE-00158357-LEGALEASE-00158358 | Condensed_SA_Sub 0.75 | | | | 1 | | |
| 20374 | United States v. Carson, 464 F.2d 424 | 63+1(2) | Defendant administrative assistant to member of Senate Judiciary Committee was clearly embraced within terms of the bribery statute, for purposes of a situation in which influence of the employee's specific authority to make a binding decision? | There is no doubt that federal bribery statutes have been construed to cover any situation in which the advice or recommendation of a Government employee can be unlawfully sought or an employee's specific authority for lack of power to make a binding decision. See United States v. Hood, 343 U.S. 148, 151, 72 S.Ct. 568, 570, 96 L.Ed. 886, cert. denied, Crawford v. United States, 344 U.S. 946, 895 Ct. 1280, 121 L.Ed. 2d 480 (1948); Diaz v. United States, 351 F.2d 1287 (5th Cir.1965); United States v. Labovitz, 251 F.2d 393 (3rd Cir.1958); United States v. Johnson, 337 F.2d 180, cert. denied, 381 U.S. 1, 781, 797, 79 S.Ct. 2, cert. denied, 351 U.S. 215, 7 S.Ct. 389, 100 L.Ed. 1440 (1956); Krogmann v. United States, 225 F.2d 220, 225 (6th Cir.1955); Irwin v. United States, 197 F.2d 297, 300 (6th Cir. 1951); Cawelti v. United States, 337 F.2d 420, 881 (8th Cir. 1964). The general foundation on which this interpretive approach rests is central to the administration of justice at all levels of representative democracy. It is a major concern of Government that those who seek to influence the conduct of elective evaluation and unbiased judgment on the part of those who participate in the threshing-out of official decisions. Therefore, society deals sternly with bribery which would substitute the will of an interested person for the judgment of a public official as the controlling factor in an official decision. The statute plainly prescribes this corrupt interference with the normal and proper functioning of government. | Are federal bribery statutes construed to cover any situation in which the advice or recommendation of a Government employee is clearly embraced within the terms of the bribery statute, for purposes of a situation in which influence of the employee's specific authority to make a binding decision? | 01.0705.docx | LEGALEASE-00156606-LEGALEASE-00156608 | Condensed_SA_Sub 0.79 | | | | | 1 | |
| 20375 | Am. Sur. Co. of New York v. Mahoney Co., 171 Or. 287 | 277+13 | An averment of knowledge is not a "conclusion of law," even if source of knowledge is designated. | An averment of knowledge is not a conclusion of law. Heidenガ v. Schlueter, supra, is an illustration of this; and an allegation of actual knowledge is not formed into a mere conclusion of fact by designating the source thereof. The averment of the check as "country treasure" it positively alleged. Under the authorities cited the fact charged the grasper with notice. The allegation was sufficient. | Is an averment of knowledge a conclusion of law? | 01.0342.docx | LEGALEASE-00156568-LEGALEASE-00156569 | Condensed_SA_Sub 0.75 | | | | | 1 | |

3590

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 20376 | Agri Process Innovations v. Enviroflo, 138 S.W.3d 181 | 10=432 | A party's response to a request for admission conclusively establishes a matter admitted unless the court permits withdrawal or amendment of the response. Rule 59.01(b). However, when the request or the response is fairly subject to more than one interpretation, the trial court may allow each party to argue its interpretation to the jury as opposed to giving conclusive effect to one of the interpretations. See Robertson Co. v. Field Prods. of St. Louis, Inc., 64 S.W.3d 12, 1210 (8th Cir.1991) ("The conclusive effect envisioned by the [federal] rule may not be appropriate where request for admission is subject to interpretation or is open to more than one interpretation."). Stated differently, the conclusive effect of Rule 36.01(b) only applies when the proposition sought to be established is clear and unambiguous. Moreover, "[t]rial courts have broad discretion in administering rules of discovery, which [an appellate court] will not disturb absent an abuse of discretion." Sabine ref. Oil Gardens R. Operating, LLC v. Gartner, 239 S.W.3d 608, 610 (Mo. banc 2007). | While counsel's closing argument would have been helpful to the jury in understanding the applicable rule if the connecting agency is fairly susceptible to more than one interpretation, will the trial court allow each party to argue its interpretation to the jury as opposed to giving conclusive effect to one of the interpretations? | "When is the response to a request for admission conclusively establishes a matter admitted unless the court permits withdrawal, and thus, was insufficient to rebut the presumption of agency raised by trial court's failure to verdict director to submit question of whether agent, in entering into contract, acted within the scope and authority of his agency, and to specifically define the term 'scope and course of agency'?" | Pretrial Procedure Memo 4 2939 - C - MS.docx | ROSS-0026929032 ROSS-0026929033 | Condensed, SA, Sub 0.3 | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 20377 | Bakerman v. R.H. Macy & Co., 33 A.D.2d 746 | | Plaintiff's right to examination is not unlimited. See Lipin v. City of New York, 271 App.Div. 981, 68 N.Y.S.2d 218 (2nd Dept.1947; 2-year limitation); Boender v. New York City Transit Authority, 21 A.D.2d 309, 250 N.Y.S.2d 83 (1st Dept.1961) (reverse limitation); Brady v. Catholic Charities, 11 A.D.2d 79, 201 N.Y.S.2d 614 (2nd Dept.1960) (reverse limitation); Fisher v. City of New York, 184 App.Div. 716, 172 N.Y.S.2d 390 (2nd Dept.1958) (six months limitation); Babcock v. Northern New York Utilities, Inc., 134 Misc. 2d, 207 N.Y.S.2d 512 (Supreme Court, Oneida County, 1970) (one-year limitation). | Plaintiff's right to examination not unlimited? | Is a plaintiff's right to examination not unlimited? | 03 1481.docx | LEGALEASE 00136954 LEGALEASE 00136955 | Condensed, SA 0.92 | 0.92 | 0 | | 1 | 1 | |
| 20378 | Agrusa v. Johnson, 156 Idaho 903 | 22 B=181.1(7) | Our decisions indicate an agent has a duty to disclose by informing the other party of his agency and the principal's identity. Idaho has stated that where there is a basic principle that an agent who enters into a contract on behalf of a corporation, but who fails to disclose the agency for his principal, and fails to disclose that corporation to the third party, is personally liable to the third party." McCarrey Construction, Inc., 94 Idaho at 93, 538 P.2d at 1220, this personal liability attaches whether the agency was undisclosed or partially disclosed. In McCloskey, we applied what has been known as the "generally accepted agency officer of a corporation, even though acting for the company, becomes liable as an obligation on a contract, until he agrees to effectuate the existence and of his relation to it, and fails to inform the other of his principal's identity, for the principal's undisclosed, agents have a duty to investigate." 2, See also Cont. Missouri Prof'l Serv, Inc. v. Shoemaker, 108 Mont. 65, 78, 395 P.2d 1 [contracting agent is liable to a party who enters into contract unless he discloses, or the third party has knowledge of, the agency and the identity of the principal.]). Followed by majority agent must inform the other party both of his agency and identity, the principal in other words, the agent must identify the other party the identity of the principal, and so inform the other party's "should have known." | What ability statements, submitted in support of his motion for summary judgment against wheat buyer for breach of commodities purchase contract, were insufficient to create a reasonable inference that seller disclosed his agency for his principal, and thus, seller could be held personally liable for the breach; the trial court found that at best, seller was acting for a partially disclosed principal and consequently liable on the contract, seller did not expressly himself informed buyer of the full name of his principal, and even though buyer endorsed buyer's checks with a stamp that listed his principal's full name, buyer had no duty to investigate the endorsements. | When can an agent be held personally liable? | 042146.docx | LEGALEASE 00136756 LEGALEASE 00136759 | Condensed, SA, Sub 0.64 | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 20379 | Doll v. Gottschmann, SW Neb. 370 | 32 D=412 | The last note of the series was indorsed paid. The indorsement was made at the time of the execution of the note which was never in fact delivered. The indorsement was an indorsement to defendant to sign for the purpose of his sale. Plaintiff agent made the indorsement for the purpose of selling his property. The indorsement is made by the agent of selling it, plaintiff's duty being as if the party had a right to transact business in that manner, though it is not the usual method. The indorsement in the first instance is a substantive part of the contract. Korth v. Farmer's & Merchant's State Bank, 77 Kan. 475, 94 Pac. 798, 15 L. R. A. (N.S.) 612, 127 Am.St.Rep. 428; Germania Russell S. Bank, 321, 12 N.W. 810, 45 Am. Rep. 126; First Nat'l Bk. Co. v. Sturgis, 74 Neb. 499, 104 N.W. 1055, 3 L.R.A. (N.S.) 138, 117 Am.St.Rep. 787; Bank 125, Kuhlmann Nat. Bank v. Clark, 52 Mo. App. 593; Hughes v. Kuhlman, 10 Colo. 383, 15 Pac. 700. The principle was stated in an early Massachusetts case as follows: "When the maker of a note, at the time it was signed by the maker, and as a part of the same transaction, indorsed thereon a promise, not to pay present instructions. A such as payee of a note may hold that the indorsement must be taken as part of the instrument, and that the payee could never maintain an action thereon." Barton v. Cotting, 46 Kan. 200, 38 Am. Dec. 342. The doctrine is the same, though the indorsement is unsigned. Hartley v. Wilkins, 4 Cam & 4, 173; West Nat. Bank v. Ham v. Clark, 52 Mo. App. 593; Hughes v. Kisler, 10 Colo. 383, 15 Pac. 700. The principle was stated in an early Massachusetts case as follows: "When the maker... | Where a vendor of realty takes a series of notes for deferred payments, and, when executed, indorses one of them paid and surrenders it pursuant to the contract to the maker of all the notes, the indorsement is a substantive part of the instrument, and should be so construed with the contract of sale to show the agreed consideration for the sale. | Is a memorandum at the back of an instrument a substantive part of the instrument? | 01863 9.docx | LEGALEASE 00137767 LEGALEASE 00137769 | Condensed, SA, Sub 0.87 | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 20380 | State v. Fitzpatrick, 125 Mont. 448 | 67=413(9) | | Evidence was insufficient to sustain conviction of burglary in the first degree in that such evidence totally failed to establish that the burglary was committed in the nighttime as defined in R.C.M. 1947, 55-96, 94-901, 94-902, 94-903, 94-904, 94-905. | Is night time burglary a first degree offense? | Burglary - Memo 100 6.docx | ROSS-00033888 ROSS-00033870 ROSS-00133870 | Condensed, SA, Sub 0.91 | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,564 | 14,973 | 22,876 | 9,079 |
| 20181 | Sino v. Black, 735 P.2d 925 | 307H+485 | In the second assignment, defendants contend that giving plaintiff attorney fees not expensed for contesting their original response and also fees and expenses for proving the authenticity of the agreement at trial was a double penalty. The amounts awarded under ORCP 46 C and ORCP 46 C are not penalties but are reimbursements for the expenses necessitated by an unreasonable refusal to admit the genuineness of the document. ORCP 46 C allows reimbursement for expenses incident to determining the sufficiency of the response separate from the expenses incurred due to the failure of proof... Plaintiff incurred the expenses in two different proceedings; there was no "double penalty." | Property owners did not act reasonably in contesting authenticity of document entered into by their predecessors for purposes of rule permitting award of fees and expenses for unreasonably refusing to respond to request for admission, even if they acted reasonably in contesting document's binding effect. Rules Civ.Proc., Rules 45, subd. C, 46, subd. C. | Is the purpose of ORCP 46 to reimburse a party for expenses incurred because of the need to prove facts that were unreasonably denied? | 00034B.docx | LEGAL0436 00137312- LEGAL0436 00137313 | Condensed, SA, Sub | 0.51 | 0 | 1 | | 1 | |
| 20182 | McKinney v. Hirstine, 257 Iowa 395 | 307H+725 | A "continuance" generally means only that the date of hearing a trial is postponed. It does not affect the merits of the case. It does not change any rulings that have been made; it leaves all matters as they were before, except that the time is extended. In State v. Roper, 118 N.W.2d 515, 524, 62 N.W.2d 253, 303 (Iowa 1954), we said: "Furthermore, while the word 'continuance' may mean only a postponement of a trial to a later date, where a trial is already in progress, we think its more common meaning is the postponement to a later date of the commencement of trial." | "Continuance" means only that date of hearing or trial is postponed; it does not affect merits of case, does not change any rulings that have been made, and leaves all matters as they were before, except that time is extended. | What does continuance mean? | Pretrial Procedure - Memo #4 725 - C - SU.docx | LEGAL0436 00027996- LEGAL0436 00027997 | Condensed, SA, Sub | 0.58 | 0 | 1 | | 1 | |
| 20183 | Matter of Mickler, 50 B.R. 818 | 50H+150(1) | Based on this record, the Court is satisfied that the Micklers never directly received any of the funds advanced by the insurance companies to Stricher. Nevertheless, whether Mickler can prevail on the defense of failure of consideration depends on whether an agency relationship existed between Mickler and Stricher. This is true, because if an agency relationship is established, a payment to the agent is deemed to be a payment to the principal. See, First National Bank v. Lorenzo, 112 Fla. 348, 150 So. 589 (1933). There is no doubt that Mickler and Elaine Stricher signed the authorization form, option and long term agreements with Kremer and Marundin on January 31, 1979. Thus, the essential questions are whether Stricher had the actual authority to receive money on their behalf; or if not, whether Mickler ratified Stricher's acts of collection of the money on his behalf. | Payment to an agent is deemed to be payment to the principal. | Is payment made to an agent deemed to be payment to the principal? | Principal and Agent Memo 78 - KC.docx | ROSS-0003046378-ROSS-003304680 | Condensed, SA, Sub | 0.93 | 0 | 1 | | 1 | |
| 20184 | Blair v. Rau, Tr. Servs., 193 Wash. App. 18 | 831H+426 | Washington's UCC defines "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1-201(a)(21)(A). Here, RCW 62A.1-201(a)(21) lays out, a holder of a note must both (1) be in possession of the note, and (2) the note "becomes payable to bearer and may be transferred by..." | A note indorsed in blank is payable to its bearer. West's RCWA 62A.3-205(B). | To whom is a blank note payable? | 00248A.docx | LEGAL0436 00138295- LEGAL0436 00138296 | Condensed, SA, Sub | 0.78 | 0 | 1 | | 1 | |
| 20185 | Colemen v. McCormick, 874 F.2d 1280 | 110+101, 110 | The method of jury selection in Coleman's case was similar to that which occurred in United States v. Anderson, 509 F.2d 312 (D.C.Cir.1974), cert. denied, 420 U.S. 991, 95 S.Ct. 1427 (1975). There, 200 or 300 jurors were called out for jury duty, but the defendant claimed that these jurors were not representative of a fair cross-section of the community. The jurors were not identified by their names, but by a juror number on a list. The court asked how many jurors would be able to serve. Sixty-eight jurors indicated they could be available, and each of these was selected for the panel. Id. at 321. On appeal the defendant contended the jurors consisted of volunteers and thus did not represent a cross-section of the community. Id. In holding this contention, the court speculated that the underlying complement of jurors represented a fair cross-section of the community and that "[w]hether the panel on the trial jury became any less so by reason of the technique the judge employed." Id. at 322. The court went on to hold, "The judge's panel selection anomaly or exclusion for the jury was demonstrably more difficult; that the jury empanel was made up of volunteers did not contend distinguished only by that quality." Id. (footnote omitted); see also United States v. Kennedy, 548 F.2d 608, 609 (2d Cir.1977); United States v. Kennedy, 548 F.2d 608, 614 (9th Cir.), cert. denied, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977). | Fair cross section challenge to constitutionality of jury venire could not be upheld absent evidence that person from lower socioeconomic areas of city, allegedly excluded from jury, formed distinctive group in community; even if fact that background excluded constituted significant number of persons so that its systematic exclusion from jury panels would support challenge. U.S.C.A. Const.Amend. 6. | In a bribery case, did the judge exclude anyone or any cognizable group when the sole criterion he employed was to serve longer? | Bribery - Memo #486 - C - EB.docx | ROSS-003019159-ROSS-003265591 | Condensed, SA, Sub | 0.74 | 0 | 1 | | 1 | |
| 20186 | People v. Aitkin, 217 Ill. 2d 66 | 110+1139 | In People v. Childress, 158 Ill.2d 275, 198 Ill.Dec. 794, 633 N.E.2d 635 (1994), however, this court explained that residential burglary is a lesser included offense of residential burglary. We accepted the parties' contention that these statutes prescribed mutually exclusive conduct. As the defendant observes, the two offenses are mutually exclusive. Residential burglary can be committed only in dwelling places, while simple burglary cannot occur in a dwelling place. The actor in the present case was attacked and killed in her own home, and thus the defendant could not have been guilty of burglary. Although the defendant failed to raise this point in the proceedings below, he now asks that his conviction for burglary be vacated. The State agrees that the conviction should be vacated, and we vacate the defendant's conviction for the offense of Children, 158 Ill.2d 303, 198 Ill.Dec. 794, 633 N.E.2d 635. | Question of whether an amendment to the residential burglary statute, making burglary a lesser-included offense of residential burglary, should be equally read retroactively was solely one of law, and thus Supreme Court review was de novo. S.H.A. 720 ILCS 5/19-3. | Is burglary lesser included offense than residential burglary? | Burglary - Memo 391- KM.docx | ROSS-003138825-ROSS-003189289 | Condensed, SA, Sub | 0.71 | 0 | 1 | | 1 | |
| 20187 | Guthrie v. Buckeye Carvel Fuel Co., 46 Ind. 543 | 307H+74 | SEC. 256. The deposition shall be written down by the officer, or by the deponent in the presence and under the direction of the officer, and after the same has been carefully read to or by the deponent, it shall be subscribed by him. | Though 2 Rev.St.1876, p. 141, § 256, provides that the deposition shall be subscribed by the deponent after the same is read to or by him, it is not necessary that the certificate show that such section was complied with. | Shall deposition be written down by a disinterested person? | 01085A.docx | LEGAL0436 00138870- LEGAL0436 00138871 | Condensed, SA, Sub | 0.17 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,973 | 22,876 | 9,029 |
| 20388 | Maddox v. State, 174 Md. App. 489 | 30TH+747.1 | The rule requiring the entry of scheduling orders was intended to promote the efficient management of the trial court docket, not to send additional opportunities for a court to dismiss meritorious claims for lack of strict compliance with arbitrary deadlines. In this vein, to achieve greater judicial efficiency through the use of case management techniques such as scheduling orders, trial courts must not lose sight of their primary responsibility, to render justice and resolve disputes in a fair and just manner. Scheduling orders are but the means to an end, not an end of and in themselves. | Scheduling orders are but the means to an end, not an end in and of themselves. | Are scheduling orders meant to be an end, not an end in and of themselves? | 031992.docx | LEGALEASE 00188555-00188556 | Condensed, SA | 0.84 | | | | | |
| 20389 | People v. McMann, 2003 WL 553403 | 67+3 | The California Supreme Court decided this issue against appellant's position in People v. Sparks (2002) 28 Cal.4th 71, 120 Cal.Rptr.2d 508, 47 P.3d 289 (Sparks.). The court held that the trial court did not err by instructing the jury that entry into the victim's bedroom with the specific intent to commit rape constituted a burglary in violation of section 459. (Sparks, at p. 87, 120 Cal.Rptr.2d 508, 47 P.3d 289.) The victim's house has a bedroom and she had invited the defendant, a magazine salesman, to enter the home. (Id. at p. 73, 120 Cal.Rptr.2d 508, 47 P.3d 289.) The court stated that California decisions, particularly People v. McCormack (1991), 234 Cal.App.3d 253, 285 Cal.Rptr. 504, upholding burglary convictions based upon entry into different types of rooms. "are consistent with common-law cases from other jurisdictions recognizing as burglary the entry (with requisite intent) from within a home, into a bedroom inside that home." (Sparks, at p. 86, 120 Cal.Rptr.2d 508, 47 P.3d 289, fn. omitted.) | Defendant could be convicted of burglary if he formed intent to steal after he entered a room, even if the room had his own structure from which item was taken. West's Ann.Cal.Penal Code § 459. | Does entry into any type of room, with the requisite intent, constitute burglary? | 012823.docx | LEGALEASE 00199121-00199122 | Condensed, SA, Sub 0.73 | | 0 | 1 | 1 | 1 | |
| 20390 | Second Measure v. Kim, 143 F. Supp. 3d 961 | 216H+71 | The cases cited by Second Measure do not stand for a contrary result. For example, Second Measure cites Miller v. Hall for the proposition that "[i]n the dissolution of a partnership, a partner cannot be required to retire or withdraw from the business, or the business cannot be dissolved, to avoid the consequences of an agreement to the contrary." 65 Cal.App.2d 200, 284, 150 P.2d 287 (1944). In Miller, however, the partnership dissolved after one partner suffered a stroke, and the other partner represented by their clients that the would continue the same business under a new name. Id. at 200, 150 P.2d 287. The trial court found that the continuing partner "had appropriated...the business. records and goodwill of the partnership." and the court ordered that partner to account to the other for half the value of the business. Id. at 203, 150 P.2d 287. The appellate court affirmed, reasoning that if a business's information and reputation are "appropriated by one of the former partners for his own use and benefit he may be required to account to the other for his interest therein such value." Id. at 205. Miller thus shows that one party cannot dissolve a partnership to appropriate the business of a partnership without liability to the other partner. | Under California common law, a partner cannot engage in the same line of business if they are required to seek dissolution or in accounting before bringing action against other partner following alleged breach of express partnership or joint venture agreement, where purported partner alleged that he was "shut out" of the business venture or joint venture agreement, and then the other partner converted it to his own use. | Can a partner reengage in the same line of business after the dissolution of partnership? | 022335.docx | LEGALEASE 00195214-00195215 | Condensed, SA 0.68 | | 0 | 1 | 1 | 1 | |
| 20391 | In re J.P., 365 S.W.3d 833 | 30+2239 | Absence of counsel alone is not good cause for a continuance. Tex.R. Civ. P. 253. When the basis for the motion for continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to his own fault or negligence. See State v. Crank, 666 S.W.2d 91, 94 (Tex.1984); see also Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.1986); Unless the record shows a clear abuse of discretion, we will not reverse a trial court's decision. Id. | Appellate court reviews a trial court's denial of a motion for continuance for abuse of discretion, unless the record shows a clear abuse of discretion, the appellate court will not reverse a trial court's decision. | Where a motion for continuance is based on the lack of counsel, must the movant show that the failure to be represented at trial was not due to their own fault or negligence? | 013064.docx | LEGALEASE 00199218-00199219 | Condensed, SA, Sub 0.67 | | 0 | 1 | 1 | 1 | |
| 20392 | Harrison v. Harrison, 597 S.W.3d 822 | 134+145 | Serial hiring and firing of attorneys for dilatory purposes would be a legitimate reason to deny continuance in appropriate circumstances. However, this record reveals no evidence that this case was delayed because Connie had fired her attorneys before. Nuñez had withdrawn, and nothing in the record indicates that a continuance was requested in connection with the withdrawal of any of her prior attorneys. The record does not reveal when Connie retained her attorney as a dilatory tactic. The primary source of delay in this case appears to be an attempted reconciliation. Connie's history of prior representation by other attorneys indicates that she could find prior attorneys to represent her under the circumstances in which they were retained; this history says nothing about her ability to retain a new attorney on the eve of trial after she withdrawal of her attorney based on the asserted reemployment offers. | Denial of wife's motion for continuance to obtain new counsel, in divorce action, after wife's attorney was permitted to withdraw 15 days before trial over wife's objection was abuse of discretion; attorney sought to withdraw due to nonpayment of fees but amount of fees due was not clearly established, there was no evidence that wife was able to pay attorney fees but refused to do so, attorney could have that motion for interim fees in order to prevent withdrawal if wife had unwilling to pay, and although wife had previously hired and fired three other attorneys, there was no evidence that case was delayed as result. V.T.C.A., Family Code § 6.503(a)(6); Vernon's Ann.Texas Rules Civ. Proc., Rule 245. | Will the actual hiring and firing of attorneys for dilatory purposes be a legitimate reason to grant or request continuance in appropriate circumstances? | 031870.docx | LEGALEASE 00199224-00199225 | Condensed, SA, 0.26 | | 0 | 1 | 1 | 1 | |
| 20393 | Fry v. Blauvelt, 818 N.W.2d 123 | 30+420 | Pretrial scheduling orders serve an important function in our civil justice system. By establishing the timing and order for disclosure of evidence in the trial court's controlling the direction of the litigation. See Caruso v. Pearce, 223 W. Va. 544, 678 S.E.2d 50, 57 (2009); See also Savannah Falco Indus., Inc., 352 Mont. 300, 216 P.3d 763, 769 (2009); It has been said that the purpose of a pretrial scheduling order is to establish discovery and partial preparation for trial in an efficient manner. Wash.App. 206, 313 P.2d 61, 639 (1996). By fixing time deadlines, a pretrial scheduling order stimulates the parties to focus their attention on the case. See Hall & Co. F. 10 advisory committee's notes to 1983 amendments (citing Report of the National Commission for the Review of Antitrust Laws and Procedures 28 (1979)); 1 James W. Moore, Moore's Federal Practice *16.02, at 13 F3 to 16-724 (2d ed.2012)). Time limits thus invoked in the litigation. Fed.R.Civ.P. 16 advisory committee's notes to 1983 amendments; citing the absence of a scheduling order...observe committee's notes, advisory committee's notes "Can result in lack of focus, inefficiency, and delay in disposition." 3 James W. Moore's Federal Practice *16.10 (2), at 1696. | Home remedying company was not entitled to a new trial after the trial court failed to enforce pretrial order regarding disclosure of exhibits against home owner, who disclosed new exhibits a day before trial, in breach of contract action; company was not prejudiced by owner's failure to include the exhibits in her original exhibit list, and the testimony concerning the new exhibits consisted of five pages of a trial transcript that exceeded 580 pages. (C.A. Rule 1 (1043).) | Does a scheduling order encourage orderly pretrial management and assist the trial court in controlling the direction of the litigation? | Pretrial Procedure Memo # 0322 - C - V4.docx | ROSS-002288721-ROSS-002288722 | Pretrial Procedure, SA 0.63 | | | | 1 | 1 | |

Appendix D

| ROW# | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 20594 | Lake v. McHugh, 817 F. Supp. 2d 4 | 34 422(6) | "The [Secretary of the Army] has broad discretion in administering the Board for Correction of Military Records... | Decision by Army Board for the Correction of Military Records (ABCMR) to deny former service member's request to upgrade his bad conduct discharge to general discharge was not arbitrary, capricious, or unsupported by substantial evidence... | Does the Secretary of the Army have broad discretion in correcting military records? | 00324.docx | LEGALEASE-00139479 LEGALEASE-00139481 | Condensed, SA, Sub 0.54 | 0.54 | 0 | 1 | | 1 | 1 |
| 20595 | Freeland v. Prince, 41 Me. 105 | 30 34=74 | In the case of Parsons v. Huff, 38 Maine, 137, the caption recited that the deponent was "first sworn to testify the truth, the whole truth, and nothing but the truth," but the words "relating to the cause or matter for which the deposition is to be taken," were omitted, and the omission was held to be fatal... | The fact that the caption of a deposition did not show that the deponent was duly sworn before giving his deposition, as required by statute governing depositions taken within the state, does not render the deposition inadmissible when taken out of the state... | "Is a recital in the caption that the deponent swears "to testify the truth and nothing but the truth"" likely defective?" | 03227.docx | LEGALEASE-00139446 LEGALEASE-00139448 | Condensed, SA, Sub 0.25 | 0.25 | | 1 | | 1 | 1 |
| 20596 | Felder v. Felder, 71 Ga. App. 860 | 38 49 | In Burrows v. Burrows, 240 Mass. 485, on page 488, 137 N.E. 923, at page 924, 20 A.L.R. 174, the court said : "The general rule is well established that attention, payable to wife and drawn against husband's general deposit account, does not assign any part of husband's funds... | An uncertified check, delivered by husband to his wife for use and affection, payable to wife and drawn against husband's general deposit account, does not assign any part of husband's deposit, and is revocable by husband's death or a valid claim against his estate... | Is the check delivered by the drawer to payee as a mere gift and not paid or accepted in the lifetime of the drawer revoked by his death nor a valid claim against his estate? | 00905.docx | LEGALEASE-00140061 LEGALEASE-00140062 | Condensed, SA, Sub 0.72 | 0.72 | | 1 | | 1 | 1 |
| 20597 | Clifford v. W. Hartford Creamery Co., 103 Vt. 229 | 56 64 | The intent and purpose of the Negotiable Instruments Act is to codify and make uniform the governing negotiable instruments, rather than to reform it. In order to establish uniformity it was necessary to change the common law in some states, but where changes were made, the statute generally has been the law in force... | Accommodation maker held entitled to subrogation to all rights and remedies of creditor, including mortgage, against accommodated party, whose debt accommodation maker was compelled to pay, not withstanding Negotiable Instruments Law G.L. 2868, 2899, 2929. | When the Negotiable Instruments Act is silent is it governed by the rules of equity including the law merchant? | Bills and Notes - Memo 131 - 5.docx | ROSS-003274/ROSS-ROSS-003270804 | Condensed, Order, 0.76 SA, Sub | 0.76 | | 1 | | 1 | 1 |
| 20598 | Parks v. Brown, 16 Ill. 454 | 810 440 | A plaintiff may strike out a blank indorsement upon a promissory note, payable to order, on the trial of a suit brought on the note. CITED: S 118, 141, 161, 162; 601, 741; 84, 141; This was a suit to recover amount commenced before a justice of the peace and taken by appeal to the Circuit Court of La Salle county... | A blank indorsement may be stricken out at the trial. | Can a blank indorsement be stricken out at the trial? | Bills and Notes - Memo 410 - 99.docx | ROSS-003288541 ROSS-003288542 | Condensed, SA, Sub 0.93 | 0.93 | | 1 | | 1 | 1 |
| 20599 | Liberty Nat. Bank & Tr. Co. v. Dvorak, 199 N.W.2d 414 | 376 53(3) | The purpose of a renewal note is to extend the time the debtor has within which to pay his obligation. This purpose is associated in the following language from 11 Am.Jur.2d, Bills and Notes, § 307 at page 332: "Whether a new note is a renewal of another note depends upon the intention of the parties. A renewal note in place of one evidencing a part of one engagement of a new obligation on the same terms and conditions, that is, the re-establishment of a particular contract for another period of time; its object is to extend and not to discharge the old debt. Moreover, it carries forward by the new paper or undertaking, whatever it may be. There may be a change of parties. These may be an increase of security. But there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the old obligation." (Emphasis added). | A guarantor of a note is exonerated by an act of creditor without consent of guarantor which changes original obligation of principal by substantially increasing principal debt and by providing for increased monthly payments extended over a longer period of time, even though original guaranty contained provisions whereby guarantor consented to any extension and renewal without notice. | When is an obligation renewed? | 01038.docx | LEGALEASE-00140227 LEGALEASE-00140228 | Condensed, SA, Sub 0.56 | 0.56 | 0 | 1 | | 1 | 1 |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 23600 | Bowers v. Oatman, 246 Mich. 674 | 83 (+736(7)) | It is said in the text of Joyce on Defenses to Commercial Paper (2d Ed.) § 247: "And it is no defense to a negotiable note that the payee was, in fraudulently induced to transfer the note to plaintiff. And in Prouty v. Roberts, 6 Cush. (Mass.) 19; 52 Am. Dec. 761, the court held that this was no defense to an action on a note, by an indorsee against the maker, that the note was obtained from the payee by means of fraudulent representations, of which the indorsee had knowledge, when he received the note." Crosby v. Roub, 16 Wis. 616; Hatton v. Robinson, 14 Pick. 416; Wheeler v. Guild, 20 Pick. 545; McArthur v. McLeod, 6 Jones (N. C.) 475; Bank of New Haven v. Perkins, 29 N. Y. 554; 84 Am. Dec. 337, § 15; McDonald v. Muscatine Nat. Bank, 27 Iowa 319, we think, is decisive of the case here. Judgment for plaintiff. NORTH, C. J., and FEAD, FELLOWS, WIEST, McDONALD, POTTER, and SHARPE, JJ., concur. | That note owned by plaintiff was transferred to him in fraud of payee held no defense to maker. | Can fraud be a defense to a negotiable note? | 031007.docx | USALEXAE-00193893 / USALEXAE-00193892 | Condensed, SA, Sub 0.89 | 0.89 | | | 1 | 1 | |
| 23601 | Gray v. City of Salem, 271 Mass. 495 | 363 (+38(6)(1)) | We need not consider whether this prior adjudication was rightly held a bar to the present bill. It was proper to raise, in a case such as this, that the question, if ever, defective, had been validated by St. Sp. St. 1915, c. 366, "The action of the city council of the city of Salem, or of the powers of said city, in granting pensions to [various persons named, among them] the defendant David R. Grady], is hereby confirmed and made valid to the extent same might have been valid if in the first place regularly performed of the charter and ordinances of the city and all other provisions of law had been complied with." It is evident that the Legislature intended thereby to confirm their pensions to the grantees named. We do not consider it needful to inquire whether the Legislature was rightly held a bar to plaintiff's connections, this bill exceeded the... to support a general claim for the benefit of an individual. Holden v. James, 11 Mass. 396, 4 Am. Dec. 174, and that "no act of the legislature can deprive the... reduce and legal effect of an existing contract, to the prejudice of either party, nor give validity to any contract... which shall be binding on the parties, or on the courts of law." King v. Dedham... others so legitimate public good is to be derived from it "where the... the only public advantages of such must be individual and collateral to the relief of private citizen." Opinion of the Justices, 175 Mass. 599, 602... | Legislature can ratify grant of pension where it could have authorized | | 032757.docx | USALEXAE-00190842 / USALEXAE-00190843 | Condensed, SA, Sub 0.97 | 0.97 | | | 1 | 1 | |
| 23602 | Voorhees v. Hawthorne Michaels Co., 151 Cal. App. 2d 688 | 30 (+74 | The following made by the real party in interest is insufficient to sustain the burden imposed upon him. The only substantiation of the trial judge's order (which is entirely under attack here) is a first judge's ruling and its interpretation by the real party in interest. The placing by Justice of a mere restrictive of the option, amounts to a usurpation of the judicial function and consequences unwarranted and arbitrary interpretation of the court's language "for a period that time he attempted to exercise the option." Moreover, the real party in interest loses sight of the fact that the trial judge's ruling was in connection with a motion to compel answers to a deposition. Even if we were to concede (which we do not) that the trial judge's language should compel him... to sustain the burden imposed upon him. Depositions and interrogatories are different procedures to each of which litigants have the right to resort in the same proceeding for the purpose of pretrial discovery. (Greyhound Corp. v. Superior Court, supra, 56 Cal.2d 355, 373, 15 Cal.Rptr. 90, 364 P.2d 266.) They are not mutually exclusive and, therefore, the option or oral procedure excludes the subsequent use of the other. (Oceanside Union School Dist. v. Superior Court, supra, 58 Cal. 211, 220, 23 Cal.Rptr. 393, 373 P.2d 431; Carlson v. Superior Court, 56 Cal.2d 431, 15 Cal.Rptr. 132, 364 P.2d 308.) In the Greyhound the Court pointed out the distinction between the function of the two procedures as follows: "A deposition is not final until read, signed and filed. Until that time it may be corrected of any prejudice charged. Certainly an answer at a deposition cannot be undermined by errors, until such time as the document is signed and filed. As such it may be valuable as a matter of pretrial discovery. But it does not adequately serve the same purpose as an interrogatory. The functions of the latter is twofold: it not only ferrets out material information which... | Since there is always an inherent possibility of error in the transcription of a deposition, a final opportunity for correction of the wording as completed should be given to the reading to any of the witnesses. West's Ann. Code Civ.Proc., §§ 2006, 2012, 2032. | "Is a deposition not final until read, signed and filed and until completed that time it may be corrected?" | Pretrial Procedure - Memo # 567 - C - BP.docx | ROSS-003238865-ROSS-003238866 | Condensed, SA, Sub 0.9 | 0.9 | 0 | | | | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20403 | Am. Fid. Co. of Montpelier, Vt. v. E. Ohio Sewer Pipe Co., 53 Ind. App. 335 | 366+35 | It is also a well"settled principle that, before equity may be invoked for the purpose of subrogation, diligence must be shown. Thomas v. Stewart, 117 Ind. 50, 18 N. E. 505, 1 L. R. A. 715. There is no allegation in the cross"complaint explaining why there was delay in seeking the remedy therein demanded until a suit was actually brought by a materialman to recover the amount due him for material furnished by him and used in the construction of the improvement. In Gring's Appeal, 89 Pa. 336, it is held that: "The right to subrogation is one of equity merely, and due diligence must be exercised in asserting it. Laches in taking advantage of the right will forfeit it as against one who is injured by such laches." In the case of Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204, it was held that if the person claiming the right of subrogation has unreasonably delayed in asserting such right, and in the meantime other persons have so acted in the premises, that to assert the right of subrogation would be inequitable, subrogation will not be allowed. In the case of Shattuck v. Belknap Savings Bank, 63 Kan. 443, 65 Pac. 643, it is said: "The right of subrogation and as well the right to make payment of a prior lien upon which the claim of subrogation may be National Bank, 76 Ala. 474, holds that: "Subrogation being an equity springing from the relation between the parties, and created and enforced for the benefit and protection of the one in whose favor it is originated, may be asserted or waived at pleasure." See, also, Sheldon on Subrogation (2d Ed.) " 41 et seq. | Municipal contractor's surety, who did not assert right to subrogation to money in city's hands until long after assignment of money and commencement of materialman's action against surety, cannot, because of laches, claim subrogation to money due principal. | Will subrogation be allowed if the person claiming the right of subrogation has unreasonably delayed in asserting such right? | Subrogation - Memo # 1256 - C - SHB.docx | ROSS-003290120-ROSS-003290121 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 20404 | In Matter of CUA Autofinder, 387 B.R. 906 | 366+35 | The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a question of intention. 83 C.J.S. Subrogation " 21 (2008). See Brookside Communities, LLC v. Lake Dow North Corp., 268 Ga.App. 785, 603 S.E.2d 31, 32"33 (2004) (guarantor unambiguously waived any claims it might have had). | Under Georgia law, whether right of subrogation has been waived is question of intention. | Is the waiver of the right of subrogation a question of intention? | 043570.docx | LEGALEASE-00140103-LEGALEASE-00140104 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 20405 | Osborn v. United States, 385 U.S. 323 | 63+3 | We reject the argument. Whatever continuing validity the doctrine of "impossibility," with all its subtleties, may continue to have in the law of criminal attempt,13 that body of law is inapplicable here. The statute under which the petitioner was convicted makes an offense of any proscribed "endeavor."And almost 50 years ago this Court pointed out the significance of that word: "The word of the section is "endeavor," and by using it the section got rid of the technicalities which might be urged as besetting the word "attempt," and it describes any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent. * * The section * * * is not directed at success in corrupting a juror, but at the "endeavor" to do so. Experimental approaches to the corruption of a juror are the "endeavor" of the section.'United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553. | Fact that informer, who had allegedly been employed by defendant to contact prospective juror in federal criminal case, never intended to carry out scheme did not preclude conviction, on theory of impossibility, for endeavoring to bribe member of jury panel. 18 U.S.C.A. S 1503. | Can the doctrine of impossibility be a defense to a charge of endeavor to bribe a juror? | 012046.docx | LEGALEASE-00141842-LEGALEASE-00141843 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 20406 | McDonald v. State, 57 Ala. App. 529 | 63+1(2) | "It seems that a bribe must involve something of value that is used to influence action or non-action.Value, though, is determined by the application of a subjective, rather than an objective, test, and the requirement of value is satisfied if the thing has sufficient value in the mind of the person concerned so that his actions are influenced.' | Term "value," within bribery statute prohibiting legislative, executive or judicial officers or their clerks, agents or employees from accepting or agreeing to accept a thing of value with the understanding that such person's decision is to be given on a particular side in any cause pending before him, is not limited to desirable things generally received in bribery cases; the test of value is the desire of a person for the thing in question. Code of Ala., Tit. 14, S 64. | Should the value of bribe be tested by whether the recipient subjectively attaches value to the thing received? | 012100.docx | LEGALEASE-00140734-LEGALEASE-00140735 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 20407 | Kelly v. Carroll, 223 Ill. App. 309 | 113+3 | The rule that a usage or custom affects contracts, generally rests upon the theory that the parties in making the contract had such custom in their minds and stipulated with reference to it, thereby making it a part of their contract. When existence of the custom has been proved, it has the force of law within the sphere where established and enters into the contracts of those within that sphere who have knowledge of its existence. A presumption of such knowledge may be shown by facts or circumstances. The custom must be uniform within some sphere and must have been long established and generally acquiesced in. Customs owe their origin to common consent and lack of uniform acquiescence in them shows the want of such consent. Swern v. Churchill, 155 Ill. App. 505; Klaub v. Vokoun, 169 Ill. App. 434. | A usage or custom, to be binding, must be so uniform, long established, and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, in the absence of anything to the contrary in their contract. | What are the elements of a valid custom? | 014160.docx | LEGALEASE-00141752-LEGALEASE-00141753 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 20408 | Hughes v. Stanley, 45 Iowa 622 | 113+3 | The first count of the petition sets up a verbal contract of sale of the wheat, the second the delivery of the wheat to defendant, under a usage, by the verbal agreement of the parties. It is alleged that, under this usage, the defendant received and so appropriated the wheat that the law implies a contract of sale. The second count of the answer sets up a usage or custom which was known to the parties, under which the wheat was delivered, to the effect that it should be stored with other grain in common bins and that the same number of bushels of other grain of the same grade should be regarded as the property of plaintiff and that defendant was not to be liable for its loss by fire. The pleadings show a usage and custom of trade, known to plaintiff, with reference to which the contract was made. It is, surely, competent for parties so to contract. They may make their contracts to accord with customs or usages and with reference thereto. This is an elementary principle of the law. The second count of plaintiff's petition is based upon a contract made with reference to a custom. | It is competent for parties to enter into a contract in accord with an established usage or custom recognized by both, and the contract will be binding upon them. | Can parties use custom known to them in contracts? | 014202.docx | LEGALEASE-00141886-LEGALEASE-00141887 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,079 |
| 29409 | Frontier Fuel v. Blocker Expl. Co., 709 P.2d 39 | 260v57 | Again, co-ownership alone does not result in a mining partnership, without an act by one co-owner... | Joint operation of an oil and gas venture is sufficient to give rise to "mining partnership" requires more than mere tenancy in common, working interest in lease, contribution of equipment, right to ground access, but requires joint operators to have choice and participation in control and management. | Does co-ownership give rise to a mining partnership? | D21302.docx | LEGALEASE-00161331-LEGALEASE-00161332 | Condensed, SA, Sub 0.47 | 0 | | 1 | | 1 |
| 29410 | Harrison-Wyatt v. Ratliff, 267 Va. 549 | 260v55(1) | The Supreme Court of Montana also considered the issue in Carbon County v. Union Reserve Coal Co., 271 Mont. 459, 898 P.2d 680 (1995)... | Surface landowners, who had conveyed all the coal in and under their land, retained right to gas, because coal bed methane (CBM) was a gas produced from the coal seams; CBM was a gas that existed freely in the coal seam and was a distinct mineral estate. | Is methane gas a constituent part of coal? | D21369.docx | LEGALEASE-00161916-LEGALEASE-00161917 | Condensed, SA, Sub 0.79 | 0 | | 1 | | 1 |
| 29411 | Anderson Living Tr. v. WPX Energy Prod., 306 F.R.D. 312 (D.N.M.), adhered to on reconsideration, 312 F.R.D. 620 | 170Ak113.7 | For the class verify, a generally comes into materialize condition when it is of sufficient quality to be accepted into the interstate pipeline system. See Vance v. Wolfe, 182 P.3d 261, 266 (Colo.2008); CIG Exploration, Inc. v. State, 2001 OK 37, 28 P.3d 234 (Okla.2001)... | In ruling on a motion to reconsider an interlocutory order, a court should consider the same standards and processes and postures, the motion for reconsideration in the order challenges, and any direct evidence the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the court's prior ruling. Fed. R. Civ. P. 54(b). | Is processing something that takes place in order for the gas to be marketable to interstate pipelines? | Mines and Minerals - Memo #31 - C - CB.docx | ROSS-000288951-ROSS-000288952 | Condensed, SA, Sub 0.79 | 0 | | 1 | | 1 |
| 29412 | Strickland v. Comm'ns & Cable of Chicago, 304 Ill. App. 3d 679 | 30Zv239 | The right to amend a complaint is not absolute. Spartan v. Tatham Home Federal Savings & Loan Ass'n, 227 Ill.App.3d 854, 915, 169 Ill.Dec. 878, 592 N.E.2d 363 (1992)... | The right to amend a complaint is not absolute. | Is the right to amend a complaint absolute? | D24501.docx | LEGALEASE-00140991-LEGALEASE-00140992 | Condensed, SA | 0 | | 0 | | 1 |

3597

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,029 |
| 19413 | McMillan v. City of Tacoma, 26 Wash. 358 | 371v2987 | It is suggested that the revenue law will not be continued as a part of local assessments which it fixes the tax... | The word "tax," as used in Amendatory Revenue Law 1899, p. 302, 1.32, declaring that the holder of a general tax certificate, before bringing an action to foreclose the lien, shall "pay the taxes that have accrued on the property," does not include assessments for street improvements. | What are local assessments enforced to serve? | 04537.docx | LEGALEUE-00146945-LEGALEUE-00146946 | Condensed, SA, Sub 0.89 | Condensed, SA, Sub 0.89 | 0 | | 1 | 1 | |
| 19414 | Boston & M.R R. v. Wilton R. Co., 67 N.H. 416 | 371v3463 | Except in cases involving questions of direct taxation under the Federal Constitution, the words "income taxes are taxes on property and not subject generally... | "Income tax" is not tax on property and "property tax" does not embrace income. | Does property tax embrace income? | 04355.docx | LEGALEUE-00146993-LEGALEUE-00146993 | Condensed, SA, Sub 0.87 | Condensed, SA, Sub 0.87 | 0 | | 1 | 1 | |
| 19415 | Montgomery Cty. v. Wolzen Landing Ltd. P'ship, 99 Md. App. 1 | 104v196.1 | "All property tax is a charge on the owner of the property by reason of his ownership alone without regard to any use that he might be made of it"... | "A property tax" is a charge on the owner of property by reason of his ownership alone without regard to any use that he might be made of it? | Development impact tax was "excise tax," rather than "property tax," which county had authority to enact under statute authorizing county to tax to same extent as state, with specified exceptions; tax was on size, not ownership, of property, tax was based on size and type of proposed development, not value of property, liens would rarely be placed on property for failure to pay tax, and tax was due before building permit was issued, not on any specific date. Acts 1963, c. 808, S 1. | | 04358.docx | LEGALEUE-00145039-LEGALEUE-00145040 | Condensed, SA, Sub 0.63 | Condensed, SA, Sub 0.63 | 0 | | 1 | 1 | |
| 19416 | Berry v. Costello, 62 R.I. 24 | 238v7(1) | Plaintiffs contend that the "privilege" of living in a mobile home is not a privilege subject to... | Illinois mobile home privilege tax was constitutional, even if considered to be a personal property tax. S.H.A. ch. 120, S 1200 et seq., 1208. | Can taxes be laid by a state on the exercise of personal rights and privileges? | 04623.docx | LEGALEUE-00141663-LEGALEUE-00141662 | Condensed, SA, Sub 0.64 | Condensed, SA, Sub 0.64 | 0 | | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,564 | 14,873 | 22,876 | 9,073 |
| 20417 | United Aircraft Int'l v. Greenlandair, 298 F. Supp. 1329 | 25H-145 | There is nothing incongruous about permitting arbitrators to resolve a dispute over contract for which he have previously a remedy in either Transit Corp. v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282 (1932), for example, a securities dealer who sought to enjoin arbitration under Dreyfus who is barge to cure the later's wheat contained a provision. "All thosewho bring this action to enforce the arbitration before the Committee on Grain of the New York Produce Exchange *** While the barge was being levered by Marine Transit's tug, it struck a canal wall and sank. One of us filed a claim for damages by which Transit's personnel and the tug in rem to recover damages for the negligent loss of the cargo. *** When the damaged in the District Court *** the inferior of dispute to arbitration in accordance with the provisions of the booking contract." The court ordered Marine Transit to submit to arbitration, and (confirmed the resulting award: The Court of Appeals affirmed. On certiorari, the Supreme Court said, as to the arbitrability of the dispute under the terms of the contract: "There is no question that the controversy between the petitioner and the respondents was within the arbitration clause of the booking contract. That provision was valid *** and, as it related to all disputes arising under the contract, it applied to the controversy with the Marine Transit Corporation as operating owner of the tug, Nat'l. Eagle, which was the contract." Dreyfus v. transportation." 284 U.S. at 269-270, 52 S.Ct. at 167. | The provision "Buyer's left to whatever remedies it may have at law for any claim of negligence", included in the contract for purchase of helicopters, was too neatly worded to bar regardless as a specific exception to provision, incorporated five pages and six articles further in the agreement, that "any disputes arising under this Contract shall be settled and finally determined by arbitration", and thus buyer's claim against seller for damages resulting from crash of helicopter was arbitrable. | Is there anything incongruous about permitting arbitration to resolve a dispute over conduct for which the law provides a remedy? | 007515.docx | LEGALEASE 00145181-LEGALEASE 00145182 | Condensed, SA, Sub 0.67 | | 0 | | | 1 | |
| 20418 | United States v. O'Brien, 994 F. Supp. 2.0 167 | 63-H(1) | Although the First Circuit has not addressed that precise issue, it has addressed several analogous issues in a recent recently involving the process of hiring probation officers, in alleging that defendants gave state inducement of funds under 18 U.S.C. * 666(a)(1)(A). In Conner'Ortiz, the court concluded that payments made for a legitimate purpose, for work that was indeed performed, are not necessarily bribes fall within the meaning of * 666(c). 861 F.3d at 36. The payments in question were part of a scheme to defraud honest city services, in violation, among other things, of conflict-of-interest rules. As to the applicability of the exception, * 666(c), the court found that "[t]he jury could rationally have concluded" that the payments "were not bona fide because they [were] part of conflict-of- interest rules prohibited [the recipient] from participating in such a scheme." But it went on to note "a scheme designed to evade conflict-of- interest rules is hardly legitimate or acceptable. That the payments were a device for funneling money for the [recipient's] services while violating the prohibition against his participation [in] the hiring is an [improper] person in relation to his position, official duty or employment, or to induce him to act in an interest or inducement which was prohibited or favorably to any person with respect to the issuance to the [recipient]. Scale v. discriminated, 235 La. 800, 106 So.2d 288, 290 (1958). It is an offense that to disturb the integrity of the government action, in a way which injures the trust confided by the people by corruption in the public service. Id. | Indictment charging former officials at Massachusetts Office of Probation with sufficient arising out of alleged corrupt scheme in the hiring process of hiring probation officers, in alleging that defendants gave state legislature the opportunity to fill probation positions to which those legislators were not legitimately entitled, alleged payment of a bribe, as required for bribery concerning programs receiving federal funds, 18 U.S.C.A. § 666(a)(2). | Does the bona fide exception apply to intentional misapplication of payments for legitimate purposes? | 011209.docx | LEGALEASE 00142363-LEGALEASE 00142363 | Condensed, SA, Sub 0.65 | | 1 | | | 1 | |
| 20419 | State v. Petitta, 59 So. 3d 1245 | 316P-693 | However, the State is not without recourse to criminally charge defendant for his alleged conduct. As generously noted by Judge Greitty in concurrence, the allegations of this matter could form a based-upon facts that are indictable under the statutes. See v. Petitta, 10-0221, pp. 6-7 (La.App. 4 Cir. 2/12/10), 35 So.3d 1100, 1103 (Guidry, J., concurring). The bona fides in which the record of public bribery is offered for violates LA.REV.STAT. 14:118.42(1), the offense of public bribery. Thus it on the basis for this count possibly violates LA.REV.STAT. 14:140, the offense of public bribery. Public bribery has been generally defined as the voluntary giving of offering to give, or the acceptance of or offer to accept, directly or indirectly, by any public officer, official or public employee, anything of value under the circumstances with the intent directly to influence the conduct in relation to his position, official duty or employment, or to induce him to act in an interest or induce inducement which was prohibited or favorably to any person with respect to the issuance to the [recipient]. Scale v. discriminated, 235 La. 800, 106 So.2d 288, 290 (1958). It is an offense that to disturb the integrity of the government action, in a way which injures the trust confided by the people by corruption in the public service. Id. | In a effort to assure that elected officials and public employees are independent and impartial, governmental decisions and policy are made at every level in government are free from improper influence. If influence and employment are not used for private gain, other than the remuneration provided by law, and that the public has confidence in the integrity of government, the Code of Governmental Ethics prescribes certain conflicts of interest, duty required by the Code of Governmental Ethics is set to become/recombinated is a prohibited conflict of interest. LA.R.S. 42:11(E)(B). | What is public bribery? | Bribery - Memo #91-2 - C ROSS-00218412ROSS-00218417 | ROSS-00218412ROSS-00218417 | Condensed, SA, Sub 0.56 | | 0 | | | 1 | |
| 20420 | State v. Hendricks, 66 Ariz. 235 | 142-(2) | "An officer's conduct need not be specifically prescribed by statute in order to be a public position, and it is sufficient that the acts complained of are by reason of natural implication from the powers specifically granted to satisfies," or his request, done in the line of office, "a bribe proposed unlawful conduct even in matters with such officer cannot finally determine may, nevertheless, constitute the inducement of action in matters within his official capacity: '11 C.J.S. Bribery, * 2, subsec. e(11). [Emphasis added] The district court and the government provided in this case on the assumption that the defendant knew resolution hire on trains, a discharge in 17 of the Bankruptcy Act 11 U.S.C. * 35(a)(1)(979), a discharge in bankruptcy does not release a debtor from "taxes which became legally due and owing by the bankrupt to the United States * * * within three years preceding bankruptcy." On appeal it argues that the "heat" years just that not, respectively, is indeterminate and not within the "heat" within." 17. In making this argument the defendants base the resolution fees to permit fees which a coal operator must pay for the privilege of conducting surface mining. 30 U.S.C. * 1232(a). | Directing highway travelers, who have been "fleeced" in gambling games at establishments along highways to proper authorities to pay their grievances, is sufficiently within highway patrolmen's duties as a peace officer such as one engaged in performing such duties relating to his office to warrant that the offer of money to influence patrolman's action in such regard constituted statutory offense of "offering a bribe". Code 1939, 53-12-1(A), 12-501, 12-501, 43-1702, 66-701, 44-501 & 53-203, 13-3002, 28-201 L.29. | Can the bribery of an officer to facilitate proposed unlawful conduct even in matters within his official capacity? | Bribery - Memo #41-2 - C ROSS-003188426-ROSS-003189427 | ROSS-003188426-ROSS-003189427 | Condensed, SA, Sub 0.12 | | 0 | | | 1 | |
| 20421 | United States v. River Coal 51-134,43.5 | | Abandoned mine reclamation fee is a "tax" for purposes of section of former Bankruptcy Act precluding discharge of taxes which became due and owing to the United States within three years preceding bankruptcy. Surface Mining Control and Reclamation Act of 1977, § 401(c)(1), 30 U.S.C.A. § 1231(c)(1); Bankr.Act, § 17, 11 U.S.C.(1976 Ed.) § 35. | Is the reclamation fee a tax? | 012212.docx | LEGALEASE 00141267-LEGALEASE 00141268 | Condensed, SA, Sub 0.5 | | 1 | | | 1 | |

3599

Appendix D