| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20422 | Reed v. Munn, 148 F. 737 | 150+427(1) | In Bissell v. Foss, 114 U.S. 252, 262, 5 Sup.Ct. 851, 854, 29 L.Ed. 126, the court held that there was no relation of trust or confidence between mining partners, which is violated by the sale and assignment by one partner of his share in the property and business to a stranger, or to one of his associates without the knowledge of the other. | Where a bill seeks to enforce an unrecorded trust interest in a mining claim, the legal title to which is an assignee of the locator, under a syndicate agreement, to the constitution of which the bill alleges the beneficiaries assented, it is error to decree a revocation and to revest the title of the mine in the beneficiaries who had waived a right to reclaim the mine itself, whether recovery should be limited to a share in the proceeds of the lease and sale under the syndicate agreement. | Is there a relation of trust or confidence between mining partners which is violated by the sale and assignment by one partner of his share in the property and business to a stranger? | 021318.docx | LEGALEASE-00142569-LEGALEASE-00142570 | Condensed, SA, Sub | 0.31 | 0 | 1 | | 1 | |
| 20423 | Savka v. Smith, 58 Ill. App. 3d 12 | 302+11 | Ordinarily it is improper to plead evidence in the complaint. However, when recovery is sought for injuries caused by another's violation of a statute or ordinance, that statute or ordinance must be pleaded even though it also is evidence. McCrotty v. Baltimore & Ohio Southwestern R. R. Co. (1921), 223 Ill App. 390. | Ordinarily it is improper to plead evidence in complaint, but if recovery is sought for injuries caused by another's violation of statute or ordinance, statute or ordinance must be pleaded even though it also is evidence. | Is it improper to plead evidence? | 023486.docx | LEGALEASE-00142780-LEGALEASE-00142781 | Condensed, SA, Sub | 0.3 | 0 | 1 | | 1 | 1 |
| 20424 | Watts v. Metro Sec. Agency, 346 S.C. 235 | 272+1525 | Pinson maintains the complaint was insufficient because Watts failed to allege necessary facts such as: 1) why Watts was at the Elite Ghana; 2) how long he had been at the club prior to the shooting; 3) Watts was a customer; and 4) Pinson was the landlord. We disagree. "The purpose of a pleading is fair notice to the opponent and the court." In this state, Rule 8, SCRCP, mandates that a pleading contain "ultimate facts" rather than "evidentiary facts" to state a cause of action. "Ultimate facts fall somewhere between the verbosity of 'evidentiary facts' and the sparsity of 'legal conclusions.'" The complaint here gave fair notice of Watts's claim, alleging as it did what we consider to be "ultimate facts." | Allegations in complaint, that defendant as an agent, servant, board member, or employee of alcohol-serving establishment owed duty to plaintiff and negligently failed to prevent gunman from shooting him, negligently failed to employ adequate security, and negligently served gunman alcohol while he was intoxicated and disorderly, and that defendant's negligence caused plaintiff's injury, were sufficient to state cause of action for negligence; complaint gave fair notice of claim by alleging ultimate facts. Rules Civ.Proc., Rule 8. | Do ultimate facts fall somewhere between the verbosity of evidentiary facts and the sparsity of legal conclusions? | 023492.docx | LEGALEASE-00142945-LEGALEASE-00142946 | Condensed, SA, Sub | 0.25 | 0 | 1 | | 1 | 1 |
| 20425 | Burriss v. Wise, 2 Ark. 33 | 307A+726 | The affidavit that was then filed and sworn to, shows that the continuance at the December term, 1838, was asked for and obtained on account of the absence and materiality of the evidence of James Wise and James F. Ellis, two of the defendant's witnesses. The affidavit which was filed and sworn to at the May term. 1839, shows that the motion which was made for a second continuance of the cause, was asked for on account of the materiality and absence of the testimony of James F. Ellis alone. The cause was once continued for James F. Ellis' testimony, and the second continuance was refused on the appellant's motion for the same identical evidence. The statute in regard to the subject of continuances declares, "that no suit shall be twice continued for the same cause." Revised Statutes, 631, section 85. | Where, at December Term, 1838, a cause was continued on account of the absence of A and B, two of defendant's witnesses; and at May Term, 1839, another affidavit for continuance is filed by him on account of the absence of A, one of the same witnesses, a continuance cannot be granted, because no suit can be twice continued for the same cause. | Can a suit be continued twice for the same cause? | Pretrial Procedure - Memo # 6100 - C - DHA.docx | ROSS-003301663-ROSS-003301664 | Condensed, SA, Sub | 0.58 | 0 | 1 | | 1 | |
| 20426 | McFall v. State, 235 Ga. 105 | 352H+401 | The age of the victim was not shown in the indictment. In Echols v. State, 153 Ga. 857, 860, 113 S.E. 170, 171, this court dealt with this same question. There we said: "It has already been decided by this court that "upon the trial of an indictment for rape it is competent to show that the female upon whom the crime was alleged to have been committed was under ten years of age, though the indictment contained no such allegation." McMath v. State, 55 Ga. 303. This case furnishes authority, therefore, for the admission of evidence that the female was unable to consent in a case where the indictment contained no allegation as to age. It would seem to follow necessarily from this ruling that the court is authorized to charge the principle of law that a female under fourteen years of age cannot consent, where the indictment contains no allegation as to age; for surely if evidence can be admitted on the question, the court can charge the jury the law in reference thereto. And see the case of Stephen v. State, 11 Ga. 225, where the indictment charged that the accused then and there "forcibly and against the her will, feloniously did ravish and carnally know" a named female, and where the indictment contained no allegation as to her age. See also Gosha v. State, 56 Ga. 36, where it was stated: "An infant under ten years of age cannot consent to sexual intercourse, and the fact that such is her age is conclusive that the act is done forcibly and against her will. ""Also Wright v. State, 184 Ga. 62(4), 190 S.E. 663; Latimer v. State, 188 Ga. 775(1), 4 S.E.2d 631. | Trial court did not err in charging at State's request that when act of sexual intercourse with girl under age of 14 is shown, law supplies essential element of force, in case in which defendant was charged with forcible rape, not statutory rape, but age of victim was not shown in indictment. Code, SS 26-2001, 26-2018. | Can an infant under ten years of age consent to sexual acts? | 043076.docx | LEGALEASE-00143402-LEGALEASE-00143403 | Condensed, SA, Sub | 0.8 | 0 | 1 | | 1 | 1 |
| 20427 | Edward Brown & Sons v. McColgan, 53 Cal. App. 2d 504 | 371+2233 | In Memphis Dock & Fwd. Co. v. Fort (Supreme Court of Tennessee, 1936), (170 Tenn. 109), 92 S.W.2d 408, 409, the court enlarges somewhat upon our own Supreme Court's statement just quoted, when it says: "The [excise] tax is not laid upon a particular corporate business or upon a particular transaction; it is upon the privilege of doing business as a corporation and exercising the corporate powers for the purpose of producing a profit. The source of the profit and the character of business carried on in the corporate name is immaterial. The tax is measured by the corporation's net profit result from whatever business may be done by the corporation in the exercise of powers conferred by the charter. (Citing cases.)" | The tax on privilege of exercising corporate franchises is not an "occupational tax" and is not imposed on the doing of business, though phrase "doing business" is used to describe the group intended to be taxed, but is imposed on the privilege of doing business as a corporation, and using the corporate mechanism with its advantages over other forms of doing business in the state. St.1935, p. 1246, S 4(3) (repealed 1951. See Revenue and Taxation Code, S 23001 et seq.); Const. art. 13, S 14. | Is the tax levied upon privilege of doing business an ""excise tax""? | 045577.docx | LEGALEASE-00142302-LEGALEASE-00142303 | Condensed, SA, Sub | 0.3 | 0 | 1 | | 1 | 1 |
| 20428 | Ellis v. Title Ins. & Tr. Co., 227 Cal. App. 2d 204 | 371+2060 | Taxes on real estate are a payment for governmental services. (See Alabama Power Co. v. Federal Power Commission, supra, 134 F.2d 602, 608.) Without itemizing them, suffice to say that many of these services are of a type directly essential to the maintenance and operation of a shopping center parking area. Furthermore, the payment of taxes upon the land used for parking purposes under the subject leases was essential to its continued use thereunder for those purposes by the parties thereto. In the event such taxes were not paid, the land would be sold under the delinquent tax provisions of the law; would not be subject to the parking privileges conferred by the lease; and the parking area operation contemplated thereby would cease. Thus, the payment of taxes, when considered as an expense incurred to obtain governmental services or essential to the continued use of the land occupied by the parking areas, properly was classified as an expense of maintaining and operating the parking areas occupying that land. | Taxes on realty are payment for governmental services. | Are taxes on real estate a payment for governmental services? | 045592.docx | LEGALEASE-00142481-LEGALEASE-00142482 | Condensed, SA, Sub | 0.95 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20429 | Am. Nat. Bank & Tr. Co. v. Dep't of Revenue, 242 Ill. App. 3d 716 | 371+2060 | All property is presumed to be subject to taxation. (Lutheran Child & Family Services v. Department of Revenue (1987), 160 Ill.App.3d 420, 424°25, 112 Ill.Dec. 173, 513 N.E.2d 587.) Statutes granting exemptions are construed strictly in favor of taxation. (Faith Christian Fellowship of Chicago, Illinois, Inc. v. Department of Revenue (1992), 226 Ill.App.3d 322, 324, 168 Ill.Dec. 396, 589 N.E.2d 796.) The party claiming the exemption has the burden of proving that the exemption applies. Girl Scouts of Du Page County Council, Inc. v. Department of Revenue (1989), 189 Ill.App.3d 858, 861, 137 Ill.Dec. 131, 545 N.E.2d 784. | All property is presumed to be subject to taxation. | Is property presumed to be subject to taxation? | 045644.docx | LEGALEASE-00142826-LEGALEASE-00142827 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 20430 | Kearney v. Treasurer of State, 415 S.W.3d 774 | 413+2 | "Worker's compensation law is entirely statutory, and when interpreting the law, we ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and, if possible, give effect to that intent." Honer v. Treasurer of State, 192 S.W.3d 526, 529 (Mo.App.E.D.2006) (citation omitted). "Provisions of an entire legislative act should be construed together and, if reasonably possible, all of its provisions must be harmonized." Edwards v. Hyundai Motor Am., 163 S.W.3d 494, 497 (Mo.App.E.D.2005). "[T]he law favors a statutory interpretation that tends to avert an unreasonable result." Id. | Worker's compensation law is entirely statutory. V.A.M.S. S 287.010 et seq. | Is workers compensation statutory in nature? | Workers Compensation - Memo #386 ANC.docx | ROSS-003303697 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20431 | Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494 | 25T+210 | We first consider whether FWDC has waived its right to arbitration by invoking the judicial process and forcing Miller to expend substantial amounts of time and money defending itself in that forum. Waiver of arbitration is not a favored finding, and there is a presumption against it. As the Supreme Court stated in Moses H. Cone Memorial Hospital v. Mercury Construction Company, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." See 9 U.S.C." 2. Nevertheless, under appropriate circumstances a waiver of arbitration may be found. Even in stressing the policy favoring arbitrability the Moses Cone Court noted that "Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." 460 U.S. at 22, 103 S.Ct. at 940. Here, of course, FWDC's first step was to move the parties into court; its belated attempt to arbitrate 3 " years later, after losing in court, can hardly be seen as moving the parties into arbitration "as quickly and easily as possible." | Waiver of arbitration is not a favored finding, and there is a presumption against it; nevertheless, under appropriate circumstances a waiver may be found. | Is there a presumption against waiver of arbitration? | 007701.docx | LEGALEASE-00144816-LEGALEASE-00144817 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 20432 | State v. Small, 2005 WL 678116 | 110+780(1) | The cautionary instruction regarding accomplice testimony is proper where there is some evidence of complicity, i.e., evidence that one aided or abetted another in committing the offense while acting with the kind of culpability required for commission of the offense. State v. Turpin, Cuyahoga App. No. 82658, 2003-Ohio-4953, at " 16, citing State v. Moritz (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268; State v. Coleman (1988), 37 Ohio St.3d 286, 525 N.E.2d 792; State v. Johnson (2001), 93 Ohio St.3d 240, 754 N.E.2d 796. | Trial court's failure to give cautionary instruction on credibility of accomplice testimony, alerting jurors that accomplices are witnesses with special motives that the average juror may never before have encountered, when defense counsel had clearly and timely requested instruction, was harmful error. R.C. S 2923.03(D). | Is cautionary instruction regarding accomplice testimony proper where there is some evidence of complicity? | Bribery - Memo #287 - C-EB.docx | ROSS-003302274-ROSS-003302275 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 20433 | State v. Otto, 529 N.W.2d 193 | 67+4 | Although this Court has not previously considered whether an attachedgarage falls within the statutory definition of "occupied structure" for purposes of the first-degree burglary statute, other states have considered similar questions. In general, most states which have addressed the issue have concluded that an attachedgarage falls within the definition of occupied structure or dwelling for purposes of burglary statutes similar to our own. See Wesolic v. State, 837 P.2d 130 (Alaska Ct.App.1992) (attached garage which was locked constituted "dwelling," thus entry to steal constituted first-degree burglary); People v. Cunningham, 265 Ill.App.3d 3, 202 Ill.Dec. 511, 637 N.E.2d 1247 (1994) (ordinarily attached garage is a "dwelling" because it is part of the structure in which the owner or occupant lives); State v. Segue, 637 So.2d 1173 (La.Ct.App.1994) (burglary conviction supported by evidence of entry into attachedgarage); State v. Lara, 92 N.M. 274, 587 P.2d 52 (N.M.Ct.App.1978) (burglary of garage is burglary of dwelling house because the garage was a part of the structure used as living quarters); State v. Murbach, 68 Wash.App. 509, 843 P.2d 551, 68 Wash.App. 1041, 843 P.2d 551 (1993) (for purposes of residential burglary statute, definition of "dwelling" includes attachedgarage). See also People v. Moreno, 158 Cal. App. 3d 109, 204 Cal.Rptr. 17 (1984); People v. Jiminez, 651 P.2d 395 (Colo.1982). But see People v. Donoho, 245 Ill.App.3d 938, 186 Ill.Dec. 1, 615 N.E.2d 805 (1993) (defendant charged with separate counts of burglary and residential burglary may have been acquitted of residential burglary had "dwelling" definition been properly limited; expressly refused to consider whether attachedgarage is part of house as a matter of law under residential burglary statute). | Attached garage is part of "occupied structure" for purposes of burglary statute, and thus a burglary conviction may be supported by proof that defendant entered attached garage with intent to commit crime, and it is not necessary to demonstrate entry into actual house itself. SDCL 22-1-2(28), 22-32-1. | Is an attached garage subject to a burglary? | 012916.docx | LEGALEASE-00144885-LEGALEASE-00144888 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 20434 | Dellinger Septic Tank Co. v. Sherrill, 94 N.C. App. 105 | 302+11 | Therefore, any indebtedness of defendants in this case at the time of the conveyance is a relevant circumstance. Plaintiff's evidence tended to show that defendants owed debts to plaintiff other than the 1931 judgment and that they had not been able to pay those debts. Plaintiff's failure to allege the debts in its complaint is of no consequence. A party is not required to plead evidence. Lea Co. v. N.C. Board of Transportation, 308 N.C. 603, 629, 304 S.E.2d 164, 181 (1983). Furthermore, the existence of the other debts is relevant on the issue of defendants' intent, and intent may be proved by evidence of "other acts" of defendants. Rule 404(b), N.C. Rules Evid. In this regard, Mr. Dellinger's testimony that he tried to collect the $5,000 owing on defendants' account shortly before the conveyance occurred is especially relevant to show defendants' intent in making the conveyance. | A party is not required to plead evidence. | Is a party required to plead evidence? | 023520.docx | LEGALEASE-00144129-LEGALEASE-00144130 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20435 | Schneider v. Spaeth, 133 So. 3d 1167 | 307A+746 | The requisite written finding of willfulness is, in part, to provide assurance that "the trial judge has made a conscious determination that the noncompliance was more than mere neglect or inadvertence." Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271, 1273 (Fla.1990). "[N]o 'magic words' are required but rather only a finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard." Id. Moreover, the trial court must include written findings supporting its ruling in the subject order, and "failure to do so constitutes reversible error." Petersen & Hawthorne, P.A. v. EMI Enters., Inc., 115 So.3d 1064, 1064 (Fla. 4th DCA 2013) (citation omitted); see also Kaufman ex rel. Yelnick v. FS Tenant Pool III Trust, 87 So.3d 1228, 1229 (Fla. 4th DCA 2012) (reversing a dismissal because the order failed to contain a finding that the failure to appear was willful and contumacious); Giemme, 92 So.3d at 922 (reversing default and final judgment based on trial court's order, entered after defendants failed to appear at case management conference, because that order failed to make the requisite finding that defendants' conduct was willful and contumacious). | Trial court could not enter default against defendant who failed to attend a mandatory case management conference absent a finding that her conduct was willful; order merely stated that the conference had been properly noticed and that defendant had been advised that her non-appearance would amount to an abandonment of her defense and give rise to a default. West's F.S.A. RCP Rule 1.200(c). | Is the requisite written finding of willfulness is to provide assurance that the trial judge has made a conscious determination that the noncompliance was more than mere neglect or inadvertence? | Pretrial Procedure - Memo # 5804 - C - CK.docx | ROSS-003302425-ROSS-003302426 | Condensed, SA, Sub | 0.68 | 0 | 1 | | 1 | 1 |
| 20436 | Atchison, T. & S. F. R. Co. v. Pearson, 6 Kan. App. 825 | 307A+74 | No one representing the plaintiff in error was present at the time the depositions were taken. They waived nothing required in the statute. They had the right to presume that the deposition would be taken in strict conformity with the statute. In the case of Goodhue v. Grant, 1 Pin. 556, the court says: "A deposition cannot be read in evidence unless it plainly and satisfactorily appears from the certificate of the justice that all the requirements of the statute have been fully complied with; and no presumption will be indulged in to supply any defect." In the states having statutes requiring what facts the certificate must show, the authorities require a strict conformity to the statutory requirements; but in states where depositions may be taken under a commission or rule of court, greater laxity prevails. Weeks, in his work on the Law of Depositions (section 454), says: "In order to prevent injuries to suitors from this mode of taking testimony, in which the opposite party is often not present to cross"examine, and which by unfair and fraudulent practices may be perverted in writing it down, or altered after it has been written, it has been the uniform rule in all the courts to exclude a deposition where anything required by the words of the statute authorizing it to be taken has been omitted, if such omission can possibly produce injury to the opposite party. But if it appear that no injury can possibly result from the omission, the courts have generally determined that it shall not exclude the deposition. | Under a statute requiring the certificate of an officer before whom a deposition has been taken to show that the deponent was first sworn "to testify the truth, the whole truth, and nothing but the truth," a certificate which shows that the deponents were sworn "to testify the whole truth of their knowledge touching the matter in controversy" is insufficient. | Can a deposition be read in evidence unless it plainly and satisfactorily appears from the certificate of the justice that all the requirements of the statute have been fully complied with? | 033099.docx | LEGALEASE-00144043-LEGALEASE-00144044 | Condensed, SA | 0.76 | 0 | 1 | 0 | | 1 |
| 20437 | Bergstrom v. Polk Cty., 2011 WI App 20, 331 Wis. 2d 678 | 30+3230 | The personal service requirements of Wis. Stat. 801.11 apply to a certiorari action commenced by the filing of a summons and complaint. See Wis. Stat. 801.02 (1) and (5), 801.11. It is undisputed that Bergstrom did not personally serve either the County or Mathy in the manner prescribed by Wis. Stat. 801.11. Generally, failure to properly serve a defendant is a fundamental defect fatal to the action, regardless of prejudice, Hagen v. City of Milwaukee Employe Ret. Sys. Annuity & Pension Bd., 2003 WI 56, 262 Wis.2d 113, 663 N.W.2d 268, and warrants dismissal of the plaintiff complaint, Bartels v. Rural Mut. Ins. Co., 2004 WI App 166, 275 Wis.2d 730, 687 N.W.2d 84. "Wisconsin requires strict compliance with its rules of statutory service, even though the consequences may appear to be harsh." Dietrich v. Elliott, 190 Wis 2d 816, 528 N.W.2d 17 (Ct.App.1995). We have previously stated that, if the service statutes "are to be meaningful, they must be unbending." Mech v. Borowski, 116 Wis.2d 683, 686, 342 N.W.2d 759 (Ct.App.1983). | Whether the special circumstances exception applies to excuse a plaintiff's failure to serve a summons and complaint in a manner prescribed by statute, and whether the facts establish the existence of special circumstances, are questions of law that an appellate court reviews independently. W.S.A. 801.11. | "Is failure to properly serve a defendant a fundamental defect fatal to the action, regardless of prejudice, and warrants dismissal of the plaintiff complaint?" | 033673.docx | LEGALEASE-00144169-LEGALEASE-00144170 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 20438 | Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249 | 266+1798 | Dismissal of an action as a sanction for a party's fraudulent conduct during the litigation is reviewed for abuse of discretion. Distefano v. State Farm Mut. Auto. Ins. Co., 846 So.2d 572 (Fla. 1st DCA 2003). The power to dismiss a case for fraud upon the court "is an extraordinary remedy found only in cases where a deliberate scheme to subvert the judicial process has been clearly and convincingly proved." Bologna v. Schlanger, 995 So.2d 526, 528 (Fla. 5th DCA 2008). A court certainly "possesses the authority to protect judicial integrity in the litigation process." Pino v. Bank of New York, 57 So.3d 950, 954 (Fla. 4th DCA 2011). However, the authority to dismiss actions for fraud or collusion "should be used "cautiously and sparingly," and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrong doing." Granados v. Zehr, 979 So.2d 1155, 1157 (Fla. 5th DCA 2008). | Dismissal with prejudice, due to alleged fraud upon the court, of mortgagee's foreclosure action was an abuse of the trial court's discretion, although mortgagers' motion to dismiss the complaint stated that statements in the complaint that mortgagee owned the mortgage and note and that it brought the suit in its capacity as a valid securitized trustee constituted fraud upon the court, where dismissal with prejudice was not supported by clear and convincing evidence advanced by the mortgagers of sufficiently unconscionable, deceitful conduct by the mortgagee. | Is the power to dismiss a case for fraud upon the court an extraordinary remedy found only in cases where a deliberate scheme to subvert the judicial process has been clearly and convincingly proved? | 034514.docx | LEGALEASE-00143876-LEGALEASE-00143877 | Condensed, Order, SA, Sub | 0.38 | 1 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 20439 | Jimenez v. Ortega, 179 So. 3d 483 | 30+3202 | "The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when the plaintiff has perpetrated a fraud on the court...." Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (citing Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992)). However, "the power of dismissal should be used cautiously and sparingly, and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrong doing." Granados v. Zehr, 979 So.2d 1155, 1157 (Fla. 5th DCA 2008). Courts must "always be mindful of the constitutional guarantee that the courts will be available to every person for redress of injury." Id. (citing Art. I," 21, Fla. Const.). Accordingly, while an appellate court reviews a trial court's dismissal sanction for abuse of discretion, "[a] more stringent abuse of discretion standard is appropriate because dismissal is an extreme remedy." Jacob v. Henderson, 840 So.2d 1167, 1169 (Fla. 2d DCA 2003). Here, Jimenez argues that the trial court erred by failing to dismiss Ortega's action despite Ortega's admission that he repeatedly lied under oath about the severity of his injuries, the constant presence and degree of pain, his inability to walk without assistance, his inability to drive, his inability to lead a normal life, and his inability to work. | While an appellate court reviews a trial court's dismissal sanction for abuse of discretion, a more stringent abuse of discretion standard is appropriate because dismissal is an extreme remedy. | "Does a trial court have the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when the plaintiff has perpetrated a fraud on the court?" | 034604.docx | LEGALEASE-00144017-LEGALEASE-00144018 | Condensed, SA | 0.86 | 0 | 1 | 0 | | |
| 20440 | Herman v. Intracoastal Cardiology Ctr., 121 So. 3d 583 | 30+3259 | When imposing the sanction of dismissal for fraud upon the court, trial courts should weigh the "policy favoring adjudication on the merits" with the need to "maintain the integrity of the judicial system." Arzuman, 843 So.2d at 952. Trial courts should reserve this sanction "for instances where the defaulting party's misconduct is correspondingly egregious." Id. (citation omitted). | Orders dismissing complaints for fraud upon the court are reviewed to determine if there has been an abuse of discretion. | "When imposing the sanction of dismissal for fraud upon the court, should trial courts weigh the policy favoring adjudication on the merits with the need to maintain the integrity of the judicial system?" | Pretrial Procedure - Memo # 6883 - C - VP.docx | ROSS-003302000-ROSS-003302001 | Condensed, SA, Sub | 0.69 | 0 | 1 | | 1 | 1 |
| 20441 | Hoy v. State, 53 Ariz. 440 | 63+5.1 | Our constitution merely provides that the preliminary examination required by its terms shall be held before a "magistrate", without defining the term. If our legislature had not seen fit to determine its meaning, the argument in the cases above cited might well be persuasive. However, the legislature, in chap. 115, R.C.1928, provided very comprehensively and explicitly for the proceedings to be followed in the determination of the guilt or innocence of one accused of a crime. The first section of this chapter reads as follows: "4927. Magistrate defined and designated. A magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offense. The chief justice and the judges of the supreme court, the judges of the superior court, justices of the peace and police magistrates in cities and towns are magistrates." The proceedings in regard to preliminary examination are set forth in chapter 116, R.C.1928, in much detail. In every portion of that chapter describing any action which is to be taken at a preliminary examination on a charge of felony, the person who is to conduct the examination is described as a "magistrate". We think it would be impossible for the statute to have made it plainer that a judge of the superior court has jurisdiction to conduct a preliminary examination. It is well known that our criminal code is taken to a great extent from that of California. In that state, the law provided, as in Arizona, that judges of the superior courts were magistrates. In the case of People v. Swain, 5 Cal.App. 421, 90 P. 720, 722, the court said: "It is readily to be observed from the foregoing provisions of our Penal Code that proceedings in criminal cases before a magistrate and those before a justice of the peace are entirely different and distinct, and are designed to accomplish widely different purposes. The proceeding before a justice of the peace acting in his ex officio capacity of magistrate is one of the two methods authorized under our | A judge of the superior court to which a defendant charged with bribery was held to answer on preliminary examination was a "magistrate" within purview of constitutional provision prohibiting prosecution for felony by information without the defendant having had or waived a preliminary examination before a magistrate, and hence defendant was legally held to answer under a preliminary examination held by such judge. Rev.Code 1928, SS 4515, 4927 et seq., 4948 et seq.; Const. art. 2, S 30 (A.R.S.). | "Does a justice of the peace, when exercising the powers of a magistrate, have equal authority with the justices of the Supreme Court and judges of the superior courts when acting in a similar capacity?" | 01680.docx | LEGALEASE-00092058-LEGALEASE-00092059 | Condensed, SA, Sub | 0.82 | 0 | 1 | | 1 | 1 |
| 20442 | United States v. Ganim, 225 F. Supp. 2d 145 | 63+6(3) | The Government notes that under the Second Circuit's limitation of the statute in United States v. Santopietro, 166 F.3d 88 (2d Cir.1999), the Government is required to prove "some connection between the bribe and a risk to the integrity of the federal[ly] funded program." Id. at 93. The Government also relies on Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), in which the Supreme Court held that the statute was constitutionally applied to a sheriff who accorded preferential treatment to an inmate in a jail operated under a series of agreements with the federal government, because this treatment was "a threat to the integrity and proper operation of the federal program." Id. at 61, 118 S.Ct. 469. Since "[a] facial challenge ... must establish that no set of circumstances exists under which the Act would be valid[,]" United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Government posits that the Supreme Court's holding in Salinas forecloses any claim that the statute is unconstitutional on its face. Finally, the Government argues that at trial, it "is prepared to establish a connection between the transactions sought to be influenced and the city's receipt of federal funds," Gov't Opp. [Doc. # 67] at 6, and that dismissal of the " 666 counts is thus inappropriate at this stage. | Indictment alleging that city received federal funds administered, inter alia, by three specified city agencies, and that mayor used his influence with city agencies, including the three named agencies, for the benefit of individuals and corporations who allegedly bribed him, sufficiently alleged violation of the federal-program bribery statute. 18 U.S.C.A. S 666. | "For purpose of bribery, what kind of connection between the bribe and the federal fund should be proved?" | 012322.docx | LEGALEASE-00145739-LEGALEASE-00145741 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20443 | Nguyen v. Hoang, 507 S.W.3d 360 | 115+15 | A partner's duty of loyalty includes "accounting to and holding for the partnership property, profit, or benefit derived by the partner" both in the conduct and winding up of the partnership business and from the partner's use of partnership property. Tex. Bus. Orgs. Code Ann. " 152.205(1) (West 2012). A partner may not compete or deal with the partnership in a manner adverse to the partnership. Id. " 152.205(3). Similarly, a partner's duty of care to the partnership and the other partners requires that he act in the conduct and winding up of the partnership business with the care of an ordinarily prudent person in similar circumstances. Id. " 152.206(a) (West 2012). He is presumed to satisfy this duty if he acts on an informed basis and exercises his rights and powers under the GPA and the partnership agreement in good faith and in a manner he reasonably believes to be in the best interest of the partnership. Id. " 152.206(b). A partner is liable to a partnership and the other partners for a breach of the partnership agreement or a violation of a duty to the partnership or other partners under the GPA that causes harm to the partnership or the other partners. Id. " 152.210 (West 2012). | Award of $93,109.75 to one family member for breach of parties' agreement and $212,208 for breach of partnership duties and of $72,170.48 to second family member for breach of partnership agreement and $132,418.26 for breach of partnership duties violated one satisfaction rule in action by family members who decided to purchase and operate chicken farm against other members; jury twice awarded family members for other member's decision to withhold 20 percent of profits to cover his and second other member's labor costs on two farms. | Does a partner become liable to the partnership and other partners for a breach of duty which causes harm to the partnership or other partners? | 022446.docx | LEGALEASE-00146331-LEGALEASE-00146332 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | |
| 20444 | Kalantary v. Mention, 756 A.2d 671 | 307A+641 | Rule 212, which governs pre-trial conferences in general, does not include sanctions for non-attendance. However, we have held that Rule 218 governs attendance at pre-trial conferences as well as at trials, because "[c]ounsel is under the same duty to appear at conciliatory or pre trial conferences as he or she is to appear for trial." Anderson v. Financial Responsibility Assigned Claims Plan, 432 Pa.Super. 54, 637 A.2d 659, 660 (1994) (quoting Lee v. Cel-Pek Industries, Inc., 251 Pa.Super. 568, 380 A.2d 1243, 1244 (1977)). Here, Appellant, who was the defendant, failed to appear at the settlement conference. Based on the proposition cited above, therefore, Rule 218(b), seems to govern. This rule provides simply that in the event the defendant fails to appear for trial, the plaintiff may proceed ex parte. | A trial court may not conduct an ex parte settlement conference when a defendant fails to appear at a mandatory settlement conference; it may only to proceed to trial. Rules Civ.Proc., Rule 218(b), 42 Pa.C.S.A. | "Is the rule setting forth procedure if party not ready when case is called for trial applies not only to trial, but also to pretrial conferences?" | Pretrial Procedure - Memo # 6557 - C - TM.docx | ROSS-003288369-ROSS-003288371 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 20445 | Mosley v. State, 908 N.E.2d 599 | 307A+552 | It is true that moot cases are ordinarily dismissed. Hill v. State, 592 N.E.2d 1229, 1230 (Ind.1992) ("We do not provide advisory opinions."); State ex rel. Goldsmith v. Super. Court of Marion County, 463 N.E.2d 273, 275 (Ind.1984) (same). But that is not always the case. The jurisdiction of federal courts is limited by Article III of the federal constitution to "cases and controversies," and that language has long been taken to prohibit advisory opinions. See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993); Flast v. Cohen, 392 U.S. 83, 96"97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Muskrat v. United States, 219 U.S. 346, 361, 31 S.Ct. 250, 55 L.Ed. 246 (1911); Hayburn's Case, 2 U.S. 408, 408, 2 Dall. 409, 1 L.Ed. 436 (1792). The Indiana Constitution has no comparable limitation on "the judicial power of the State" conferred on the courts by article 7, section 1 of the Indiana Constitution. This Court can, and does, issue decisions which are, for all practical purposes, "advisory" opinions. Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt. Inc., 643 N.E.2d 331, 336"37 (Ind.1994). Indeed, on occasion we have issued opinions with no case before us. See, e.g., In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441, 263 Ind. 350, 350"53, 332 N.E.2d 97, 97"99 (1975) (deciding, sua sponte, that legislation setting judicial examination standards and giving lay judges limited criminal jurisdiction was unconstitutional). | Moot cases are ordinarily dismissed, but that is not always the case. | Are moot cases ordinarily dismissed? | Pretrial Procedure - Memo # 6944 - C - SKG.docx | ROSS-003302905-ROSS-003302906 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 20446 | New York Hous. Auth. v. Fountain, 172 Misc. 2d 784 | 307A+560 | Proper service is required for jurisdiction. See e.g., Macchia v. Russo, 67 N.Y.2d 592, 505 N.Y.S.2d 591, 496 N.E.2d 680 (1986); see also Flannery v. General Motors Corporation, 214 A.D.2d 497, 625 N.Y.S.2d 556 (1st Dept.1995), aff'd. 86 N.Y.2d 771, 631 N.Y.S.2d 155, 655 N.E.2d 176 (1995). The result of an improper service is dismissal. See Royson Enterprise v. Gordon, NYLJ Jan 26, 1993 at 21, col. 5 (App.Term, 1st Dept.); 187 Concourse, supra at 249 (citing East 88th St. Corp. v. Thornhill, 84 N.Y.S.2d 794 (App.Term, 1st Dept.1948)); Judd Estates Inc. v. Zimmerman, 127 N.Y.S.2d 68 (App.Term, 1st Dept.1953). "If improper service or a true jurisdictional defect taints a proceeding, final judgment in landlord's favor may not be entered upon tenant's default." Central Park Gardens, Inc. v. Ramos, NYLJ April 9, 1984 at 13, col. 1; see also Roysen Enterprises v. Gordon, NYLJ Jan 26, 1993 at 21, col. 5; Scherer, Residential Landlord"Tenant Law in New York " 10:36, at 10"9 (1995 ed). | Result of improper service is dismissal. | Is the result of improper service dismissal? | Pretrial Procedure - Memo # 7069 - C - AP.docx | ROSS-003289955-ROSS-003289956 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 20447 | Damron v. Sledge, 105 Ariz. 151 | 307A+552 | There is no question but that the trial court has inherent power to dismiss a case which is collusive. Before doing so, however, it must hold a hearing and Take evidence which will prove or disprove the presence of such collusion. It cannot be held that as a matter of law collusion exists simply because a defendant chooses not to defend when he can escape all liability by such an agreement, and must take large financial risks by defending. | Courts have inherent power to dismiss a case which is collusive. | Will finding that suit is collusive result in its dismissal? | 035418.docx | LEGALEASE-00145062-LEGALEASE-00145063 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20448 | Rose v. Fiedler, 855 So. 2d 122 | 307A=46 | The record on appeal, however, does not support a finding that Rose herself participated in the misconduct or that she was aware in any real sense of the nature or extent of her attorney's mis-doings; indeed, the record suggests that Rose was in the hospital during much of the trial. Thus, a consideration of Kozel's factor 3, whether the client was personally involved in the act of disobedience, does not support dismissal. Given our supreme court's express purpose in Kozel not to promote a policy of dismissing cases because of lawyer disobedience without the client's involvement, the inclusion of that factor within the court's six-part test appears to establish an indispensable foundation for dismissal. Moreover, the court in Kozel seemed particularly concerned that, as in the instant case, the client was unaware that the case was on the brink of dismissal.Granted, the plaintiff is aware of the filing deadlines and is responsible for the action that she initiates. Nevertheless, dismissal is an unusually harsh sanction when neither the court nor the defendant is required to notify the plaintiff that dismissal is pending.Id. at 818 n. 2 | Dismissal of patient's medical malpractice action against doctors based on her attorney's misconduct during discovery was not warranted, even though attorney's disobedience with court was willful, deliberate, and contumacious, he had been previously sanctioned, his conduct caused prejudice to the opposing side, he offered no reasonable justification for non-compliance, and the delay created significant problems of judicial administration, where there was no evidence that the patient herself participated in her attorney's misconduct or that she was aware in any real sense of the nature or extent of her attorney's misdoings given that she was in the hospital for much of the trial. | "Would an attorney's misconduct result in a dismissal of an action, when clients involvement or complicity is lacking?" | 035548.docx | LEGALEASE-00146333-LEGALEASE-00146334 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | |
| 20449 | Clouston v. Bd. of Cty. Comm'rs of Johnson Cty., 11 Kan. App. 2d 112 | 413=2 | The Kansas Supreme Court reversed the order of restitution holding that the Workmen's Compensation Act did not provide any procedure for the "recovery back" of benefits paid during the pendency of an appeal. The court stated: "We believe … that in view of the provisions of the compensation act general rules relating to "restitution" have no application and that "recovery back" is not to be permitted. Nowhere in the act is there any provision authorizing a "recovery back." If the anomalous situation presented here is to be corrected it is within the power of the legislature to do so." Tompkins, 196 Kan. at 249, 409 P.2d 1009 | Common-law rules relative to doctrine of restitution are inapplicable under the Workmen's Compensation Act, K.S.A. 44-501 et seq. | Do the general rules relating restitution apply to the compensation act? | 11495.docx | LEGALEASE-00094771-LEGALEASE-00094772 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20450 | Howard v. Risch, 959 So. 2d 308 | 307A=315 | In Jacob, 840 So.2d at 1169, this court adopted the approach set forth by the Fifth District in Cox, 706 So.2d 43, to assess whether dismissal is merited based upon evidence of a plaintiff's fraud:The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117-18. Because "dismissal | Trial court lacked an evidentiary basis on which to conclude that driver perpetrated a fraud upon the court warranting dismissal by falsely answering an interrogatory question regarding his criminal history; only admissible evidence before the court was a certified copy of driver's past judgment and sentence and an affidavit from driver as to why he thought he was being honest when he answered the interrogatory, which evidence was insufficient to prove fraud. | Does a fraud that warrants dismissal of a complaint arise when it is clearly and convincingly demonstrated that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially? | 034919.docx | LEGALEASE-00146781-LEGALEASE-00146783 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 20451 | United States v. Lee, 846 F.2d 531 | 110=778(5) | The Lees find support for their theory in United States v. Barash, 365 F.2d 395 (2d Cir.1966). In that case, the Second Circuit decided that "if a government officer threatens serious economic loss unless paid for giving a citizen his due, the latter is entitled to have the jury consider this, not as a complete defense like duress but as bearing on the specific intent required for the commission of bribery." Id. at 401*02. The Lees also rely upon United States v. Peskin, 527 F.2d 71 (7th Cir.1975), cert. denied, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976), and United States v. McPartlin, 595 F.2d 1321 (7th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). | Jury instruction in bribery case, which stated that defendants, government contractors, had burden to prove affirmative defense that they were economically coerced into making bribes to government inspection official, improperly shifted burden of proof to defendants. | Does the presence of economic coercion have any effect on the intent requirement for a bribery conviction? | 012009.docx | LEGALEASE-00147722-LEGALEASE-00147723 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 20452 | State v. Lehman, 182 Mo. 424 | 210=771 | This brings us to the only remaining question in this cause; that is, as to the correctness of instructions No. 1 and 2. It is said by appellant that No. 1 disregards and is in conflict with section 27, art. 6, of the charter of the city of St. Louis. Counsel do not point out in what respect the conflict exists. If the suggestion of conflict means that the court failed to require the jury to find that the ordinance was prepared and submitted by the board of public improvements, with an estimate of the cost of the public work to be done indorsed thereon by the president of the board, as provided by section 27 of the charter, then we say, in answer to the suggestion, that it was not necessary for the court to submit to the jury the question as to the legality or illegality of the ordinance. If the ordinance was pending before the municipal assembly, and the defendant was bribed to vote in favor of it, or accepted a promise of a bribe to vote for it, then it became immaterial whether the ordinance was valid or invalid. It is not necessary, in order to constitute bribery, that the vote of the public official bribed should be on a measure that could be enforced. The crucial test may thus be stated: "Is a matter pending before the officer in his official capacity, or one that may be brought before him in such capacity?" It is not a question as to the force and vitality of the ordinance pending. It was a subject that the municipal assembly had the right to legislate upon. The ordinance was pending before it. Defendant was a member of that assembly. He was not only authorized to vote upon it, but it was his duty to do so; and any corrupt agreement or promise, which had for its purpose an improper influence upon his action in respect to said measure, has all the elements of bribery under the statute, and it makes no difference whether the measure is a valid one or not. This distinction is clearly drawn in State v. Ellis, 33 N. J. Law, 102, 97 Am. Dec. 707, State v. Butler (Mo. Sup.) 77 S. W. 560. | Rev.St.1899, S 2085 (V.A.M.S. S 558.020), declares that any public officer of a city, who shall directly or indirectly accept or receive any gift, etc., "or any promise or undertaking to make the same," under any agreement that his vote, opinion, judgment, or decision shall be given in any particular manner in any matter pending before him, shall be deemed guilty of bribery. An indictment charged that defendants, members of a house of delegates of a city, unlawfully entered into a certain corrupt bargain, agreement, etc., with B., by which money was by B. placed in the hands of one of the defendants thereupon selected by defendants to receive said sum, on the promise of said defendants that they would give their vote in favor of a certain measure. Held that, as the offense charged was having accepted a promise to make a gift in pursuance of an agreement to vote, the defendants need not be charged separately by indictment, and the indictment was sufficient, under section 2531 (V.A.M.S. S 545.210), providing that indictments shall not be deemed invalid for any defect or imperfection not tending to prejudice the substantial rights of the defendant on the merits. | "Is it necessary, in order to constitute bribery, that the vote of the public official bribed should be on a measure that can be enforced?" | Bribery - Memo #893 - C - LB.docx | ROSS-003285969-ROSS-003285971 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20453 | United States v. Hernandez, 731 F.2d 1147 | 282=136 | We recognize, of course, that Section 201 is to be broadly construed in order to effectuate its legislative purpose of deterring corruption. United States v. Evans, 572 F.2d 455, 580 (5th Cir.), reh'g denied, 576 F.2d 931, cert. denied sub nom. Gent v. United States, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). Furthermore, Section 201 requires only that something of value be offered or promised, not that a bribe actually be paid. United States v. Dixon, 658 F.2d 181, 191 (3d Cir.1981). The crime is consummated whether or not the offer is accepted by the offeree. United States v. Jacobs, 431 F.2d 754, 760 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). On the other hand, preparations for the commission of the crime are not parts of the crime. Krogmann v. United States, 225 F.2d 220, 227 (6th Cir.1955); United States v. Kemmel, 188 F.Supp. 736, 740 (D.C.Pa.1960), aff'd 295 F.2d 712 (3d Cir.1961), cert. denied, 368 U.S. 988, 82 S.Ct. 604, 7 L.Ed.2d 525 (1962). "The critical event in the commission of the crime is the actual giving or the offer to give or transfer money or other thing of value, absent which no offense is committed under the statute." United States v. O'Donnell, 510 F.2d 1190, 1194 (6th Cir.), cert. denied, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). | Witness bribery statute requires only that something of value be offered or promised, not that a bribe actually be paid. 18 U.S.C.A. S 201. | "Will any offense be committed under bribery statute, if the actual giving of money or other thing of value is absent?" | Bribery - Memo #919 - C JL_57457.docx | ROSS-003280949-ROSS-003280950 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | | |
| 20454 | United States v. Haese, 162 F.3d 359 | 110=508(2) | Section 201(c)(2) prohibits the giving, offering or promising anything of value to a witness for or because of his testimony. Haese relies upon United States v. Singleton, 144 F.3d 1343 (10th Cir.1998) reh'g en banc granted, opinion vacated, (10th Cir. July 10,1998). In Singleton, the court found that the prosecutor violated section 201(c)(2) and reversed the defendant's conviction based upon an accomplice's testimony at trial under a cooperation agreement. Id. at 1359*61. The accomplice agreed to testify truthfully in return for leniency, including the possibility of a 5K1.1 motion by the government. Id. at 1344. This Circuit, however, has rejected the applicability of the Singleton court's holding. United States v. Webster, 162 F.3d 308, 356*58 (5th Cir.1998). "[T]his circuit's precedents shows...that we consistently have upheld government efforts to provide benefits to witnesses in exchange for testimony...." Id. In addition, no other jurisdiction has adopted Singleton, and even the Tenth Circuit vacated the decision pending rehearing en banc. | Testimony of government's key witness was properly admitted, despite fact that he testified pursuant to a favorable plea agreement; statute prohibiting the giving, offering, or promising anything of value to witness for or because of his testimony was not violated by fact that witness' testimony was obtained in exchange for a favorable plea agreement. 18 U.S.C.A. S 201(c)(2). | Should governments efforts to provide benefits to witnesses in exchange for testimony be upheld by courts? | Bribery - Memo #921 - C JL_57459.docx | ROSS-003293805-ROSS-003293806 | Condensed, SA, Sub | 0.64 | 0 | 1 | | 1 | 1 |
| 20455 | People v. Garcia, 214 Cal. App. 2d 681 | 67=4 | <<214 Cal.App.2d 683>> Burglary is defined as theentry by a person of any house, room, apartment, tenement shop etc., with intent to commit larceny. (See Penal Code, sec. 459.) The statute does not require that there be a breaking into any structure. Burglary is committed if a person enters a store with the intent to commit theft and is guilty of burglary although the entry was made through the public entrance during business hours. (People v. Wilson, 160 Cal.App.2d 606, 325 P.2d 106.) In any event a room within a building may be burglarized. (People v. Young, 65 Cal. 225, 3 P. 813 [ticket office separated from the rest of the room by a partition which did not extend to the ceiling]; People v. Goldsworthy, 130 Cal. 600, 62 P. 1074 [entry into a basement].) The cage could be considered a room. Whether or not an accused had an intent to commit theft when he entered the building is for the trier of fact unless there is nothing from which it can be inferred. But the intent need not be in the mind of the defendant at the time he entered the building if he then forms that intent and enters a room in that building. (People v. Young, supra; accord People v. Gaytan, 38 Cal.App.2d 83, 100 P.2d 496; People v. Davis, 175 Cal.App.2d 365, 346 P.2d 248.) | A room within a building may be burglarized. West's Ann.Pen.Code, S 459. | Can a room within a building be subject to burglary? | 012973.docx | LEGALEASE-00147926-LEGALEASE-00147928 | Condensed, SA, Sub | 0.94 | 0 | 1 | | 1 | 1 |
| 20456 | Holtman v. State, 12 Md. App. 168 | 67=4 | We held in Sizemore v. State, 10 Md.App. 682, at page 689, 272 A.2d 824, at page 827:"One who breaks a church in the day or night with intent to commit murder or felony therein, or with intent to steal goods of the value of $100 or more is guilty of the storehouse breaking proscribed by Code, Art. 27, s 32. But a person who breaks a church is not guilty of the statutory burglary proscribed by Code, Art. 27, s 30(a) or the crime proscribed by s 30(b) because a necessary element of those offenses is that it be a dwelling house that be broken and a church is not a dwelling house." | Church was not dwelling house, and defendant accused of breaking into church was not guilty of daytime housebreaking. | Is church a dwelling house within as per the burglary law? | Burglary - Memo 246 - SB_57624.docx | ROSS-003292728-ROSS-003292731 | Condensed, SA, Sub | 0.8 | 0 | 1 | | 1 | 1 |
| 20457 | Lowe v. Union Oil Co. of California, 487 F.2d 477 | 260=14(1) | It is obvious that the United States has "otherwise provided" in connection with the Outer Continental Shelf. In 1953, Congress enacted the Outer Continental Shelf Lands Act, 43 U.S.C. '' 1331 et seq. That act, inter alia, asserted United States' ownership of and jurisdiction over minerals in and under the Outer Continental Shelf, extended the Constitution and laws of the United States to the shelf lands, and established an exclusive system of mineral leasing on the Outer Continental Shelf. The purpose of the Lands Act was to define a body of law applicable to the seabed of, subsoil of, and fixed structures on the Outer Continental Shelf. Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). | Plaintiffs' placer mining claims situated in the Outer Continental Shelf off the California coast were invalid where claims were filed under the general mining laws rather than under the Outer Continental Shelf Lands Act; by enacting the latter Act the United States had "otherwise provided" for disposition of such mineral interests within meaning of provision of general mining law that, except as otherwise provided, mineral deposits in lands belonging to the United States shall be free and open to exploration and purchase. 30 U.S.C.A. S 22; Outer Continental Shelf Lands Act, SS 2 et seq., 2(c), 4(a)(1), 8, 43 U.S.C.A. SS 1331 et seq., 1331(c), 1333(a)(1), 1337. | What is the purpose of the Lands Act? | 021568.docx | LEGALEASE-00147712-LEGALEASE-00147713 | Condensed, SA, Sub | 0.09 | 0 | 1 | | 1 | 1 |
| 20458 | Smith v. DeLoach, 556 So. 2d 786 | 307A=590.1 | We agree with the trial court that the taking of depositions is nonrecord activity. Further, the mere fact that a notice of deposition schedules the taking of a deposition for a future date does not assure that the deposition will be taken. It does not result in activity in the record on the future date. If rule 1.420(e) was interpreted, or amended, so that the scheduling of future discovery created record activity on the future compliance date, parties could frustrate the rule by setting depositions or other discovery at various times in the distant future. Our decision is consistent with dicta in Norflor Construction Corp. v. City of Gainesville, 512 So.2d 266 (Fla. 1st DCA 1987), review denied, 520 So.2d 585 (Fla.1988). | Taking of depositions is "nonrecord activity," for purposes of rule providing for dismissal for failure to prosecute when it appears on face of record that no activity has occurred for one year. West's F.S.A. RCP Rule 1.420(e). | Is the taking of depositions nonrecord activity? | Pretrial Procedure - Memo # 7492 - C - NC_57530.docx | ROSS-003278364-ROSS-003278365 | Condensed, SA, Sub | 0.68 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20459 | Wallisville Corp. v. McGuinness, 154 So. 3d 501 | 188+291 | The party moving for dismissal must "admit[ ] all well pleaded facts as true, as well as reasonable inferences that may arise from those facts." Id. (quoting Palumbo v. Moore, 777 So.2d 1177, 1178 (Fla. 5th DCA 2001)). "Further, a motion to dismiss cannot be granted based on an affirmative defense unless the defense appears on the face of a pleading." Pac. Ins. Co., Ltd. v. Botelho, 891 So.2d 587, 590 (Fla. 3d DCA 2004). | Fact issue as to the purpose of website visitor's $10,000 deposit with gambling website precluded dismissal, for failure to state a cause of action, of visitor's action against operators of the website for the return of the deposit; while it seemed likely that statute barring enforcement of gambling debts would bar recovery of the deposit, complaint contained no allegations as to the terms on which the deposit was being held, so as to enable trial court to decide the merits of website operators'affirmative defense raising the statute. West's F.S.A. S 849.26. | Should the party moving for dismissal for failure to state a cause of action admit all well pleaded facts as true? | Pretrial Procedure - Memo # 7607 - C - KBM.docx | ROSS-003286328 | Condensed, SA, Sub | 0.25 | 0 | 1 | | 1 | 1 |
| 20460 | Wallace v. Jones, 572 So. 2d 371 | 76E+444 | What constitutes failure to prosecute depends on the facts of the particular case. Under 41(b) failure to prosecute implies that the case has not yet come to trial and the merits of the plaintiff's case have not yet been heard. In Watson, supra, for example, the plaintiff, on September 15, 1982, filed a complaint against the defendants charging malpractice and fraud. 493 So.2d at 1278. One of the defendants filed his answers in a timely fashion and the other defendant never filed his answer. Id. On December 6, 1982, Watson's counsel petitioned the court to allow them to withdraw as her attorneys. The court granted this motion and gave Watson sixty additional days to retain new counsel. Six days beyond this court-imposed deadline, Watson moved that the court substitute counsel. The court granted this request but required Watson to answer all interrogatories within twenty-five days and to set the case for trial before December 6, 1983. Id. | Dismissal with prejudice of proceeding to hold former husband in contempt for failure to pay child support was inappropriate and abuse of discretion; former wife made prima facie case for relief, case had come to trial and there was no want of prosecution, wife did not violate court order that was necessary for preparation of trial litigation as well as trial itself, and there was no evidence that court considered less severe sanctions. Rules Civ.Proc., Rule 41(b). | Does failure to prosecute depend on the facts of the particular case? | Pretrial Procedure - Memo # 7746 - C - NS.docx | ROSS-003327112-ROSS-003327113 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 20461 | Wilson v. Salamon, 864 So. 2d 1122 | 307A+590.1 | The dispositive issue on appeal is whether an order permitting a foreign attorney to appear as co-counsel pursuant to the procedures contained in Florida Rule of Judicial Procedure 2.061 constitutes record activity for purposes of Florida Rule of Civil Procedure 1.420(e). Under existing case law, an order substituting counsel is a "passive" document that the supreme court does not regard as record activity. See Gulf Appliance Distribs., Inc. v. Long, 53 So.2d 706 (Fla.1951); Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla.1972); cf. Buss Aluminum Prods. v. Crown Window Co., 651 So.2d 694 (Fla. 2d DCA 1995) (holding unauthorized and tardy "reply" is not record activity). Because we cannot distinguish an order permitting the appearance of out-of-state counsel from the order substituting counsel in Gulf Appliance, we affirm the dismissal. | Order permitting a foreign attorney to appear as co-counsel, pursuant to the procedures contained in rules of judicial administration, was not "record activity" for purposes of rule governing dismissal of cause of action for failure to prosecute. West's F.S.A. RCP Rule 1.420(e); West's F.S.A. R.Jud.Admin.Rule 2.061. | Is a timely authorized reply to an affirmative defense is a pleading that constitutes record activity? | 11274.docx | LEGALEASE-00094501-LEGALEASE-00094503 | Condensed, SA, Sub | 0.62 | 0 | 1 | | 1 | 1 |
| 20462 | Strahanan Bros. Catering Co. v. Coit, 55 Ohio St. 398 | 231H+3061(2) | Whereamasterisundercontracttodelivertotheproprietorofacheeseandbutterfactoryquantitiesofmilktobeusedinthemanufactureofcheeseandbutter,andheknowinglydeliverstothe mixed milk, and knowing that the milk is to be mixed with the milk of other ownofthemilkofotherpatrons,andintrustsanddeliveryoaservant,who,inthec patrons, intrusts the delivery to a servant, who, in the course of such ourseofsuchemployment,deliversadulteratedmilk,themasterisliableforda employment, delivers adulterated milk, the master is liable for damages magesnecessarilyanddirectlyresultingbyreasonofsuchdelivery;anditisnota necessarily and directly resulting; and it is no defense that the servant defensetoshowthattheservant,withoutauthorityandpurposely,andtogratif adulterated such milk without authority, and merely to gratify his malice yhismalicetowardshisemployer,andwithintenttoinjurehim,adulteratedthe towards his employer, intending to injure him. milktodeliveredbymixingwithwater,andthatthemasterhadnoknowledge ofsuchadulteration.Insuchcasetherueofofdamagesiscompensationfortheinj ury.Bradbury,J.,dissenting. | Where one under contract to deliver to a cheese and butter factory pure milk, and knowing that the milk is to be mixed with the milk of other patrons, intrusts the delivery to a servant, who, in the course of such employment, delivers adulterated milk, the master is liable for damages necessarily and directly resulting; and it is no defense that the servant adulterated such milk without authority, and merely to gratify his malice towards his employer, intending to injure him. | Is the employer or master liable for the delivery of adulterated milk by his employee or servant in the course of his employment? | Adulteration- Memo 30-_11yKhPezokHMC-EaPGHTizxD16qKr2ac.docx | ROSS-000000116-ROSS-000000117 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 20463 | Chorpenning v. United States, 11 Ct. Cl. 625 | 25T+111 | Beyond question, to constitute a submission there must be words used which are apt to express the intention of both parties to make the submission. In Carnick & Ramsey's Case, (2 C. Cls. R., p. 126,) where an act of this description was construed, and where the Comptroller was authorized not only to "adjust," but also to "adjudge and award according to the principles of law, equity, and justice," this court held the words to constitute a submission to arbitration. Whether in this case words of such import have been used will now be considered. | A reference by congress to the postmaster general, directing him "to investigate and adjust the claims" of a mail contractor, making no provision for the satisfaction of his award, and exacting no reciprocal submission from the claimant, is not an arbitration. | "Does the submission of a claim by congress to a specific department with instructions to adjudge and award according to the principles of law, equity, and justice constitute arbitrament?" | 007840.docx | LEGALEASE-00148875-LEGALEASE-00148876 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 20464 | Trade & Transp. v. Nat. Petroleum Charterers Inc., 738 F. Supp. 789 | 25T+268 | Defendant argues that the death of Crocker necessitates the termination of the existing panel and vacating the final award on liability, made on consent, and requires selection of a new panel. In general, the courts have held that where a vacancy arises on an arbitral board as a result of death, before any Award has been made, the authority of the board is terminated. Backus"Brooks Co. v. Northern P.R. Co., 21 F.2d 4 (8th Cir.), cert. denied, 275 U.S. 562, 48 S.Ct. 120, 72 L.Ed. 427 (1927). The case at hand, however, must be differentiated in that the death of Mr. Crocker occurred after the close of the hearing on liability and after a unanimous Award on the submitted issue of liability. | Death of arbitrator after an award on liability does not terminate the authority of the remaining arbitrators to issue an award on damages, particularly where successor nominated by one of the parties has been accepted on the panel. | When is the authority of an arbitral board terminated? | Alternative Dispute Resolution - Memo 762 - RK_58095.docx | ROSS-003282062-ROSS-003282063 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 20465 | Farmers' & Traders' Bank v. Laird, 188 Mo. App. 322 | 8.30E+266 | We do not sanction the view of plaintiff that the agreement for a renewal is void for uncertainty.Where such agreement does not state the number of renewals it must be construed as an agreement to renew once only (1 Daniel on Negotiable Instruments [6th Ed.]" 159). And where it does not specify the time, the parties should be understood as contemplating that the terms of the original note would be repeated in the renewal, and that the new period of time allotted for the payment would be of the same duration as that provided in the original note | An agreement to renew a note is not void for uncertainty because it does not state how many renewals there may be or for how long. | How should an agreement to renew a note made at the time of executing is without stating the number of renewals be construed? | 010414.docx | LEGALEASE-00148371-LEGALEASE-00148372 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 20466 | Smith v. McKeller, 638 So. 2d 1192 | 8.30E+57 | Although Smith correctly asserts that the document is not a negotiable instrument, because it is not payable to the order of bearer, a document does not have to be negotiable to be classified as a promissory note. The issue of negotiability would be important only if the document had been transferred to a third party. Hence, because this action was brought by Smith, the original holder, we need not address the question of whether the document is a negotiable instrument. Instead, the pertinent question is whether the document is a promissory note, which is subject to a five year prescriptive period. | A document does not have to be negotiable to be classified as a promissory note. | Is negotiability an essential ability of a promissory note? | 010562.docx | LEGALEASE-00148693-LEGALEASE-00148694 | Condensed, SA | 0.87 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20467 | Tait's Ex'rs v. Hannum, 10 Tenn. 350 | 398+22 | A bill of exchange or a promissory note in an assurance within the statute, (Ord on Usury, 91,) and this assurance, if it be given upon an usurious contract or consideration, is declared a nullity. Does it make any difference in principle whether an instrument declared void by the law is made payable to the party making the contract, or to any other person? If it is the usury, and not the party to whom it is payable which avoids it, it surely can make no difference whether it is payable to A or B. | If a note is executed upon a usurious consideration, it is void, whether it is executed to the lender, or to a creditor of his by his direction. | Can a note be void if it is given for usurious consideration? | 010575.docx | LEGALEASE-00148458-LEGALEASE-00148459 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 20468 | Kennedy v. Heyman, 183 A.D. 421 | 83E+460 | As between the maker and the accommodated party, of course, the note represented no obligation whatever. It had no inception until it was delivered for value. As was recently said in Sabine v. Paine, 166 App. Div. 9, 151 N. Y. Supp. 735, "the note had no valid inception until its purchase and discount by plaintiff." In that case Mrs. Paine executed a note for the face amount of $2,100 to one Vacheron, who sold it to the plaintiff for $1,850. Under such circumstances the court held that the transaction was usurious, and that the paper was void. | A note given for the accommodation of the payee has no inception until it is delivered for value. | Can notes have inception before they are delivered? | 010579.docx | LEGALEASE-00148518-LEGALEASE-00148519 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 20469 | Jenkins v. Wachovia Bank, Nat. Ass'n, 309 Ga. App. 562 | 83E+522 | To be a "holder" of a negotiable instrument requires possession of the instrument, and it is undisputed that Jenkins never had possession of this check at any time. Further, Wachovia is not attempting to enforce the check against Jenkins. Thus, whether Wachovia is a "holder in due course" is irrelevant to her action. As the trial court correctly noted, "[h]older in due course status ... is not an affirmative claim which [Jenkins] may make against Wachovia for damages." | To be a "holder" of a negotiable instrument, for purposes of holder in due course status, requires possession of the instrument. West's Ga Code Ann. S 11-1-201(20). | To be a holder of an instrument is it necessary to have the possession of the instrument? | 010584.docx | LEGALEASE-00148604-LEGALEASE-00148605 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 20470 | Lebowitz v. McPike, 157 Conn. 235 | 101+1416(2) | It is interesting to note that the plaintiff, inter alia, alleged that he agreed to subscribe to 200 shares of common stock of the corporation and also that, during the course of the trial, he made the following claim: "He (the plaintiff) was buying the stock as an original issue of this corporation that was formed. He was the original subscriber." This court has held that "failure to form the projected company and a refusal or failure to issue the stock subscribed for, or inability to issue it, will constitute a failure of consideration" which "would be a complete legal defense to an action on the contract itself." Cramer v. Burham, 107 Conn. 216, 222, 223, 140 A. 477, 480. Although the court therein referred to an original agreement with the corporation, the same result would occur in connection with the attempted enforcement of a contract between the individuals herein. The subject matter is nonexistent for all purposes. A fortiori, if there is a failure of consideration because of the nonissuance of the stock under such an agreement with a corporation, the stock is nonexistent for the purposes of seeking a recovery on a contract between the individuals as entered into herein. Moreover, we have already held in a former trial involving this stock that, since "the stock was neither authorized nor issued, it could not constitute a valid consideration." Lebowitz v. McPike, 151 Conn. 566, 572, 201 A.2d 469, 471. Since it was neither authorized nor issued it did not have a valid existence; Fairfield County National Bank v. Hammer, 89 Conn. 592, 597, 95 A. 31; and could not be consideration for the contract between the plaintiff and the McPikes. The nonexistence of the stock was a valid excuse making the contract unenforceable since it was a substantial part of the contract and went to the root of it. See Neely v. White, 177 Va. 358, 366, 367, 14 S.E.2d 337. | Agreement pursuant to which plaintiff deposited $20,000 in account in name of corporation and agreed to sell stock for $26,000 to officers and directors of corporation could not be enforced by plaintiff due to failure of consideration, where stock was neither authorized nor issued by corporation. (Per Cotter, J., with one judge concurring and one judge concurring in the result.) | Whether a note should be authorized /signed or issued to have a valid existence? | Bills and Notes-Memo 682-PR_57912.docx | ROSS-003320901-ROSS-003320902 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20471 | Manufacturers Tr. Co. v. Lafayette Nat. Bank of Brooklyn in New York, 2 Misc. 2d 518 | 83E+452 | Frequently an endorsement is made by rubber stamp, or is affixed by the hand of someone other than the payee. It is the authority to endorse, and not the physical act of endorsement, that determines the validity of such endorsement. | It is the authority to endorse the check, and not the physical act of endorsement, that determines the validity of the endorsement. Negotiable Instruments Law, S 38. | What determines the validity of an indorsement? | Bills and Notes -Memo 701 -DB_58206.docx | ROSS-003308535 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 20472 | Minter v. State, 70 Tex. Crim. 634 | 63+6(4) | In Jackson v. State, 43 Tex. 421, the indictment charged that defendant offered to bribe a witness to avoid the service of legal process. The Supreme Court held that the indictment was not defective because it failed to allege that a subp?na or other process had previously been issued. | Indictment for bribing policeman not to arrest accused in violation of his duties held not defective because of its failure to allege what his duties were. | "Where the defendant offered to bribe a witness to avoid the service of legal process, does the indictment have to allege that a subpena or other process had previously been issued?" | 012416.docx | LEGALEASE-00148330-LEGALEASE-00148331 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 20473 | United States v. Ford, 435 F.3d 204 | 63+14 | The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo's specific intent to give or receive something of value in exchange for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken. | In prosecution for accepting a bribe as an agent of an organization receiving federal funds, jury instructions, in explaining both the meaning of "corruptly" and "intending to be influenced," misstated the requisite criminal intent; instructions appeared to have told the jury that the "corruptly" requirement was fully satisfied by the recipient's knowledge of the donor's intent and omitted any reference to the recipient's intent in accepting the thing of value, and thus did not clearly communicate specific intent element requiring recipient's intent to be influenced in official duties. 18 U.S.C.A. S 666(a)(1)(B). | Is the distinguishing feature of bribery and gratuity its intent element? | 012469.docx | LEGALEASE-00148628-LEGALEASE-00148629 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 20474 | United States v. Carson, 464 F.2d 424 | 63+1(2) | There is no doubt that federal bribery statutes have been construed to cover any situation in which the advice or recommendation of a Government employee would be influential, irrespective of the employee's specific authority (or lack of same) to make a binding decision. See United States v. Heffler, 402 F.2d 924 (3rd Cir. 1968), cert. denied, Cecchini v. United States, 394 U.S. 946, 89 S.Ct. 1280, 22 L.Ed.2d 480 (1969); Parks v. United States, 355 F.2d 167 (5th Cir. 1965); United States v. Labovitz, 251 F.2d 393 (3rd Cir. 1958); Wilson v. United States, 230 F.2d 521 (4th Cir.), cert. denied, 351 U.S. 931, 76 S.Ct. 789, 100 L.Ed. 1460 (1956); Krogmann v. United States, 225 F.2d 220, 225 (6th Cir. 1955); Hurley v. United States, 192 F.2d 297, 300 (4th Cir. 1951); Canella v. United States, 157 F.2d 470, 480-481 (9th Cir. 1946). | Defendant administrative assistant to member of Senate Judiciary Committee was clearly embraced within terms of the bribery statute, for purposes of situation in which influence of defendant was sought in connection with federal criminal charges that were being contemplated against other persons. 18 U.S.C.A. S 201(a). | Does the federal bribery statute cover situation where the advice or recommendation of a Government employee would be influential? | Bribery - Memo #973 - C_JL_57940.docx | ROSS-003294436-ROSS-003294437 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 20475 | Salinas v. United States, 522 U.S. 52 | 63+1(1) | The plain-statement requirement articulated in Gregory and McNally does not warrant a departure from the statute's terms. The text of " 666(a)(1)(B) is unambiguous on the point under consideration here, and it does not require the Government to prove federal funds were involved in the bribery transaction. | Bribe need not affect federal funds before bribe violates federal bribery statute. 18 U.S.C.A. S 666(a)(1)(B). | Does the text of federal bribery statute require the Government to prove federal funds were involved in the bribery transaction? | 012495.docx | LEGALEASE-00148414-LEGALEASE-00148415 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20476 | Valvoline Oil Co. v. Krauss, 156+3(3) 335 So. 2d 64 | 156+3(3) | A litigant is estopped or bound by allegations of fact in his pleadings, but not by allegations which are only pronouncements or conclusions of law. Scurria v. Russo, La.App., 134 So.2d 679; Lawrence v. Recouiley, La.App., 235 So.2d 437. However, "While a judicial confession under LSA-C.C. art. 2291 is defined as a declaration which a party makes in a judicial proceeding and is full proof against him, he is not estopped from contradicting his sworn allegations in the absence of a showing that his adversary was misled or deceived by reason of the averment. * * *" Mouledous v. Poirier, La.App., 221 So.2d 291 (1969). Also, a judicial admission in a pleading is not binding when made through an error in fact, such as through ignorance of or a misapprehension of the true facts. Modicut v. Rist, La.App., 98 So.2d 268; Grос v. United States Fidelity & Guaranty Company, La.App., 183 So.2d 670." | In concursus proceeding to have determined ownership of royalties allocable to disputed interest in oil-producing property, claimant wife would be estopped to deny that she executed 1947 property settlement agreement which was incorporated into judgment of Oklahoma court divorcing her from former husband, even though certified copy of settlement agreement attached to wife's answer in divorce action bore signature only of husband, where wife judicially confessed execution of agreement in her answer in divorce action and where former husband clearly relied on such admission when he later sold subject property as sole owner thereof. LSA-C.C. arts. 1790, 2291, 2446. | Is a party estopped from contradicting his sworn allegations in the absence of showing that his adversary was misled or deceived by reason of averment? | 017793.docx | LEGALEASE-00149013-LEGALEASE-00149014 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 20477 | City of New London v. New York, N.H. & H.R. Co., 85 Conn. 595 | 200+75.3 | The selectmen could discontinue only with the approbation of the town. Comp. Pub. Laws 1838, 344. This might be given before or after action by the selectmen. The method of discontinuance provided by statute must be strictly followed. Greist v. Amrhyn, 80 Conn. 280.Approbation of the town must be of the precise act of discontinuance made by the selectmen. Welton v. Thomaston, 61 Conn. 397, 399, 24 Atl. 333. | A town's approbation, required under Comp.Pub.St.1838, pp. 344, 346, in order that selectmen may discontinue a road, may be given either before or after action by the selectmen. | When is approbation given? | Highway- Memo 198-ANM_57960.docx | ROSS-003292843-ROSS-003292844 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 20478 | Ricker v. Morin Brick Co., 223 A.2d 536 | 48A+172(1) | In balance of 29 M.R.S.A. s 1191 is 29 M.R.S.A. s 1151 which imposes a duty upon the overtaking driver not within a business or residence district to give "audible warning with his horn or other warning device" before overtaking a preceding vehicle and grants such overtaking driver permission to pass to the right of such vehicle when the overtaken vehicle "is making or about to make a left turn." This statute was superimposed upon O'Malia v. Thomas (1923), 123 Me. 286, 287, 122 A. 773, which declared that due care of the part of the overtaking driver calls factually for "greater care" and Levesque v. Pelletier and Thibodeau (1932), 131 Me. 266, 273, 161 A. 198, 202, which declared that the overtaking driver "proceeds to pass at his peril" a preceding car, the operator of which is exercising due care. The application of these rules of the road as between the drivers of the overtaken and overtaking cars are typical jury problems. | Driver of overtaken automobile preparing to execute left turn from middle lane of three-lane road was entitled to assume that driver of overtaking vehicle would observe rules of road and exercise due care. | What must be followed by an overtaking driver? | 019055.docx | LEGALEASE-00148741-LEGALEASE-00148742 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 20479 | Entek GRB v. Stull Ranches, 885 F. Supp. 2d 1082 | 260+5.1(9.1) | Generally, a surface estate is subservient to a mineral estate, which is considered dominant. See Kinney"Coastal, 277 U.S. at 504, 48 S.Ct. 580; Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 926 (Colo.1997). The mineral estate impliedly carries with it a right to use as much of the surface as may be reasonably necessary for operations relating to the mineral estate. See Kinney"Coastal, 277 U.S. at 504"OS, 48 S.Ct. 580 (noting that, pursuant to federal mineral leases, the lessee has "the right to extract and remove the oil and gas [and] also the appurtenant right to use the surface so far as may be necessary"); Bourdieu v. Seaboard Oil Corp., 38 Cal.App.2d 11, 100 P.2d 528, 532 (1940) ("lessees have not only Homestead Act (SHRA), surface owner had not agreed to alter burden on a right to extract the oil and gas, but also the appurtenant right to enter and to use and occupy so much of the surface of the land"). | Federal subsurface-mineral-estate lessee failed to meet heightened burden of establishing success on merits as required for preliminary injunction compelling surface-estate owner to allow lessee to use access road across stretch of property, for which surface-estate owner held both surface and mineral estates, to reach oil well on federal land; generally applicable two-surface-owners rule would prohibit lessee from crossing one surface owner's property to reach property of another surface owner, lessee had not secured surface owner's consent or necessary bonds to use surface owner's property as required by Stock-Raising its surface estate via participation in unitization agreement among subsurface lessees, and lease did not permit lessee to unilaterally bind surface owner to unitization agreement. Mineral Leasing Act, § 17(m), 30 U.S.C.A. § 226(m); Stock-Raising Homestead Act, § 9, 43 U.S.C.A. § 299; 43 C.F.R. §§ 3101.1-2, 3186.1. | "In general, is a surface estate subservient to a mineral estate?" | 021179.docx | LEGALEASE-00148155-LEGALEASE-00148156 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 20480 | McClarty v. Sec'y of Interior, 408 F.2d 907 | 260+38(15.1) | In the U.S. Minerals Development Corporation case, the Secretary, impelled by the Coleman decision to breathe some life into the building stone statute, has defined guidelines for distinguishing between common varieties and uncommon varieties of building stone. These guidelines, as we discern them, are (1) there must be a comparison of the mineral deposit in question with other deposits of such minerals generally; (2) the mineral deposit in question must have a unique property; (3) the unique property must give the deposit a distinct and special value; (4) if the special value is for uses to which ordinary varieties of the mineral are put, the deposit must have some distinct and special value for such use; and (5) the distinct and special value must be reflected by the higher price which the material commands in the market place. We accept this analysis as representing a genuine effort by the Secretary to implement the admonition of the Coleman case that certain kinds of building stone are still subject to location under the mining laws. The result in the Minerals Development Corporation case was a remand for further hearing to develop further evidence regarding the price commanded by the stone there in question as compared to other building stone on the market. The evidentiary record was deficient on this issue. | In determining whether deposit of material covered by mining claim has special and distinct value because of some property, price at which it was sold in comparison with price for which material in other deposits without such property was sold was not the exclusive way of proving that deposit had distinct and special economic value. | What are the guidelines for distinguishing between common varieties and uncommon varieties of building stone? | Mines and Minerals - Memo #313 - C - EB_57764.docx | ROSS-003282227-ROSS-003282228 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 20481 | Gomes v. SociedadeLusitanaBeneficiente de Hawaii, 21 Haw. 683 | 217+346S | The making of a mark by the declarant was a sufficient signing of the declaration it having been intended as a signature. Zacharie v. Franklin, 12 Pet. 151, 160; Iowa L. & T. Co. v. Greenman, 63 Neb. 268; Jackson v. Tribble, 47 So. (Ala.) 310; Willoughby v. Moulton, 47 N. H. 205. The form of a declaration is of secondary importance to its substance when the intent of the declarant has been made clear, and the by-laws prescribing the form of declaration to be used may well be regarded as directory at least in a case where a prepared form was not available to the declarant. The authorities hold that provisions in the by-laws of a benefit society which are directory in character and intended merely for its own protection or convenience may be waived by it. | The making of a mark by a member of a benefit society on a declaration disposing of mortuary benefit was a sufficient signature where it was intended as a signature. | Can a mark be a signature? | Bills and Notes - Memo 768 -IS_58618.docx | ROSS-003295566-ROSS-003295567 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20482 | Nevill v. Hancock, 15 Ark. 511 | 58≠81 | In the case of Sterling & Snapp v. Bender, 7 Ark. 201, this court held that a bill or note endorsed in blank, is transferable by delivery only, and so long as the endorsement continues in blank, it makes the bill or note, in effect, payable to bearer. That, by the endorsement, the payee divests himself of the legal interest in the bill or note, and it is vested by delivery in the holder. That an endorsement in blank, constitutes a perfect transfer of the interest in the bill or note, and without the addition of other words, will vest the right of action, and all other rights, in the transferee and subsequent holders. | Bonds for money, by the statute of assignments, are placed upon the same footing as notes and other negotiable instruments, and an indorsement in blank transfers all the interest of the assignor which becomes vested in the holder or bearer. | Can a bill or note indorsed in blank is payable to bearer? | 010668.docx | LEGALEASE-00149659-LEGALEASE-00149660 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | |
| 20483 | Boos v. Barry, 485 U.S. 312 | 129≠101 | So narrowed, the congregation clause withstands First Amendment overbreadth scrutiny. It does not reach a substantial amount of constitutionally protected conduct; it merely regulates the place and manner of certain demonstrations. Unlike a general breach of the peace statute, see, e.g., Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), the congregation clause is site specific; it applies only within 500 feet of foreign embassies. Cf. Cox v. Louisiana, 379 U.S. 559, 568, n. 1, 85 S.Ct. 476, 483, n. 1, 13 L.Ed.2d 487 (1965) (ordinance prohibiting certain picketing "near" a courthouse upheld.") 22-1115 cited with approval as being less vague due to specification of 500 feet); Grayned, supra, 408 U.S., at 112, 120-121, 92 S.Ct., at 2301, 2305-2306 (upholding ban on picketing near a school; special nature of place relevant in judging reasonableness of restraint). Moreover, the congregation clause does not prohibit peaceful congregations; its reach is limited to groups posing a security threat. As we have noted, "where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." Grayned, supra, at 116, 92 S.Ct. at 2303. These two limitations prevent the congregation clause from reaching a substantial amount of constitutionally protected conduct and make the clause consistent with the First Amendment. | District of Columbia provision-prohibiting persons from displaying criticism of foreign government or from congregating within 500 feet of an embassy and refusing to disperse after having been ordered to do so by police-did not unconstitutionally require unequal treatment of labor and nonlabor activities in violation of the equal protection clause because another statute excluded labor picketing from the statute's general provisions, as the excluding statute's primary function of ensuring that the display clause did not prohibit labor picketing was largely preempted by the conclusion that the clause violated the First Amendment, while the congregation clause did not prohibit peaceful congregations, and would not be construed to protect violent labor congregations as required in order to find unequal treatment of nonlabor and labor picketing. U.S.C.A. Const.Amends. 1, 14; D.C.Code 1981, SS 22-1115, 22-1116. | Can the congregation clause withstand First Amendment? | 014461.docx | LEGALEASE-00149661-LEGALEASE-00149662 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 20484 | Masters v. Cent. Illinois Elec. & Gas Co., 15 Ill. App. 2d 95 | 30≠4803 | The rules applicable to the doctrine of former adjudication and estoppel by verdict have been defined by the Supreme Court in many cases. "An "estoppel by verdict" is but another branch of the doctrine of res judicata, and it rests upon the same principle of law; that is, that a matter once litigated between parties to a final judgment in a court of competent jurisdiction cannot again be controverted. When this doctrine is applied to a single question or point arising in the course of litigation which has finally been adjudicated, it is designated as an estoppel by verdict, and the same question or point cannot again be litigated between the same parties in the same or any other court at law or in chancery, and neither party, nor their privies, will be permitted to allege anything inconsistent with the finding upon that question.' Chicago Title & Trust Co. v. National Storage Co., 260 Ill. 485, 493, 103 N.E. 227, 231. | Where, as a result of a former trial and appeal in a negligence action, it was finally adjudicated, that plaintiffs were not guilty of contributory negligence derived through any negligence on the part of either a construction company involved, or plaintiffs' architect, upon a subsequent trial, plaintiffs were entitled to the benefit of such adjudication, and such judgment was binding upon all parties of record in the former action, and therefore, instructions which cast burden of proving that architect and construction company, as plaintiffs' agents, were free from negligence were erroneous and prejudicial. | Is an estoppel by verdict another branch of res judicata that rests up the principle that a matter once litigated to a final judgment in a court cannot again be controverted? | Estoppel - Memo #21 - C - CSS_58253.docx | ROSS-003293101-ROSS-003293102 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 20485 | United States v. YasithChhun, 513 F. Supp. 2d 1179 | 91≠393 | The Court finds the Terrell opinion's determination that the "at peace" requirement is a question of law to be in conflict with the weight of authority establishing that essential elements of a crime are questions of fact for a jury. See, e.g., Gaudin, 515 U.S. at 511*12, 115 S.Ct. 2310. A jury must ultimately decide whether the prosecution has carried its burden of proving beyond a reasonable doubt all essential elements of the 18 U.S.C. " 956(b) and 18 U.S.C. " 960 conspiracy charges, including whether the United States was "at peace" with Cambodia. Even where the "at peace" requirement is construed as a mixed question of law and fact, it is the jury that will apply a legal standard to the facts. See id. at 512, 115 S.Ct. 2310. | Issue of whether United States was "at peace" with Cambodia presented question of fact that could not be resolved on motion to dismiss indictment for conspiring to damage or destroy property of and to take part in military expedition against a foreign state with which the United States was "at peace," as "at peace" requirement was a element of those crimes. 18 U.S.C.A. SS 956(b), 960. | Is the at peace requirement a question of law and fact? | 021718.docx | LEGALEASE-00149825-LEGALEASE-00149826 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 20486 | Gayon v. McCarthy, 252 U.S. 171 | 221≠212 | As stated long ago by a noted Attorney General, in an opinion dealing with this statute: "A party may be retained by verbal promise or invitation for a declared or known purpose.If such a statute could be evaded or set at naught by elaborate contrivances to engage without enlisting, to retain without hire, to invite without recruiting, it would be idle to pass acts of Congress for the punishment of this or any other offenses." | Cr.Code, S 10, as amended by Act May 7, 1917, 18 U.S.C.A. S 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different from the usual employment with payment in money; and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. | Can a party be retained by a verbal promise? | Neutrality Laws - Memo 32- ANM_58653.docx | ROSS-003294563 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 20487 | Bryan v. Bartlett, 435 F.2d 28 | 8.30E+104 | The purpose of requiring a delivery is to make manifest the intention of the maker of a note that it be operative. Thus, even though a person executes a note in proper form, where he retains possession and control over it, it can reasonably be assumed that he did not intend for it to be effective. See generally, 1A Corbin, Contracts " 32 (1963). "Delivery" is defined in the NIL as a transfer of possession from one person to another (Uniform Negotiable Instruments Law " 191), and in the UCC as a voluntary transfer of possession (Uniform Commercial Code 1-201(14)). Of course, it is an elementary principle of agency that delivery to a principal's agent is the equivalent of delivery to the principal. Scolaro v. Bellito, 184 N.E.2d 604 (Ohio App. 1962). Where an instrument is no longer in the possession of a party whose signature is on it, there is a presumption of delivery. 11 Am.Jur. 2d, Bills & Notes," 272 (1963). | Delivery of note to principal's agent is equivalent of delivery to principal. | Is it an elementary principle of agency that delivery to a principal's agent is the equivalent of delivery to the principal? | Principal and Agent - Memo 144 - RK_58691.docx | ROSS-003280039-ROSS-003280040 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20488 | United States v. City of Columbia, Mo., 914 F.2d 151 | 371+2006 | We find that both the district court and the United States in this case are asking this court to take an excessively narrow approach to this problem. We are not prepared to reduce this case to a question of pure semantics and conclude that the PILOT is a tax because it is described as being "in lieu of a tax" or because in an implementing ordinance the City referred to it as one. Nor do we think it is wiser to consider dispositive the single fact that the PILOT is earmarked for the City's general revenue fund. Rather, it is our task to consider all the facts and circumstances of record in the case and assess them on the basis of the economic realities to determine the essential nature of the PILOT. See United States v. LaFranca, 282 U.S. at 572, 51 S.Ct. at 280 (holding that a particular charge was a penalty rather than a tax, and stating that "[n]o mere exercise of the art of lexicography can alter the essential nature of an act or a thing; and if an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such."); National R.R. Passenger Corp. v. City of New York, 882 F.2d 710, 715 (2d Cir.1989) (stating that "the label applied to an assessment by a state or local government does not determine whether the assessment is a tax or a non-tax."). Cf. United States v. City of Detroit, 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958) (stating that the Court must go "beyond the bare face of the taxing statute to consider all relevant circumstances" in determining whether a particular tax is levied on the federal government or a related private party). | Component of city's utility rate, known as "payment in lieu of taxes," charged to Veterans Administration hospital did not constitute impermissible tax on federal government but rather was simply profit component of city's utility rate, which was measured by lost tax revenue, despite federal government's claim that charge was referred to as "tax" in ordinance and was charged "in lieu of tax." U.S.C.A. Const. Art. 6, cl. 2. | "Where an exaction is clearly a penalty, can it be converted into a tax by calling it tax?" | 045924.docx | LEGALEASE-00149352-LEGALEASE-00149353 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | 1 |
| 20489 | KTO Energy Inc. v. Nikolai, 357 S.W.3d 47 | 156+26 | It is held that the recital of one deed in another binds the parties to the deed containing the recital, and those who claim under them, and may take the place of a deed and thus form a muniment of title. | All parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law. | Does the recital of one deed in another bind the parties and form a muniment of title? | Estoppel - Memo #46 - C - CSS_59035.docx | ROSS-003285222 | Condensed, SA | 0.17 | 0 | 1 | 0 | 1 | |
| 20490 | Amesquita v. Gilster-Mary Lee Corp., 408 S.W.3d 293 | 91+634 | We review de novo whether a petition states a claim. Fenlon v. Union Elec. Co., 266 S.W.3d 852, 854 (Mo.App.E.D.2008). A motion to dismiss for failure to state a claim upon which relief may be granted is solely a challenge to the adequacy of the plaintiff's petition. Stein v. Novus Equities Co., 284 S.W.3d 597, 601 (Mo.App.E.D.2009). We accept as true all factual allegations asserted in the petition. Id. The petition states a claim if the facts, if proven true, meet the elements of a recognized cause of action. Id. at 602. If the petition fails to allege facts essential to recovery, dismissal for failure to state a claim is proper. Id. | Employees could not maintain a claim for civil conspiracy against co-employees, where employees failed to state a negligence claim against co-employees, and employees failed to allege the breach of any independent duty proximately caused employees' injuries. | "If the petition fails to allege facts essential to recovery, is dismissal for failure to state a claim proper?" | Pretrial Procedure - Memo # 8180 - C - KBM_58987.docx | ROSS-003295173-ROSS-003295174 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 20491 | Newman v. City of Indianola, 232 N.W.2d 568 | 145+11.2(3) | In Bennett v. Greenwalt, 226 Iowa 1113, 1134, 286 N.W. 722, 732, the following statement from Cornelius v. Kromminga, 179 Iowa 712, 715, 161 N.W. 625, 626 is quoted: "If assessments of this class were to be treated as 'taxes' in the usual and ordinary meaning of that word, a different conclusion would doubtless have to be reached; but while, generally speaking, special assessments are generally imposed by an exercise of the taxing power, yet a clear distinction is everywhere recognized between a 'tax' in the proper sense of the word and a "special assessment." The former may be said to be a contribution or levy imposed upon property for general public purposes without regard to the question of special benefits conferred, while the latter is imposed only as a payment for special benefits conferred upon the property charged by an improvement the expense of which is thus to be met.' | Charge of $473.47, imposed by city, which owned and operated municipal electric utility and transmission lines, on owner of mobile home park who requested extension of electric service, was legal and valid under portion of statute which authorizes a city to assess a reasonable rate fixed by ordinance upon each tenement or other place supplied with light or power, and method employed was not an attempt to levy a tax. I.C.A. SS 368.2, 397.1, 397.27. | Are special assessments imposed through the taxing power? | Taxation - Memo # 883 - C - JL_58910.docx | ROSS-003285686-ROSS-003285687 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 20492 | Henry S. Miller Co. v. Bynum, 836 S.W.2d 160 | 29T+390 | Miller argues that Bynum offered no evidence to support an out-of-pocket or benefit-of-the-bargain measure of damages. See W.O. Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex.1988) (out-of-pocket and benefit-of-the-bargain are two measures of damages under the DTPA). However, the DTPA allows recovery for actual damages. Tex.Bus.& Com.Code ˜ 17.50(b)(1). This court has defined actual damages under the DTPA as "the total loss sustained [by the consumer] as a result of the deceptive trade practice."Kish v. Van Note, 692 S.W.2d 463, 466 (Tex.1985); Smith v. Baldwin, 611 S.W.2d 611, 617 (Tex.1981). Actual damages "includ[e] related and reasonably necessary expenses." Kish, 692 S.W.2d at 466; see also David F. Bragg, Philip K. Maxwell, Joe K. Longley, Texas Consumer Litigation ˜ 8.03 (2d ed. 1983 & Supp.1992). | Award of actual damages in amount equal to sum that lessee sought in lost capital investment was supported by evidence in lessee's suit against leasing agent for shopping center under Deceptive Trade Practices Act. V.T.C.A. Bus. & C. SS 17.41-17.63, 17.50(b)(1). | Can damages be recovered by loss sustained by deceptive practice? | Consumer Credit - Memo 108-IS_59230.docx | ROSS-003308628-ROSS-003308629 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20493 | Hodges v. Torrey, 28 Mo. 99 | 322H+481 | This case is unlike that of House v. Marshall, 18 Mo. 368, in which relief was given on account of misrepresentations as to the quality of the land made by the vendor to the purchaser. There land lying in Missouri was sold to one in Kentucky, who had never lived in Missouri, and who had never seen it. So, in the case of Smith v. Richards, 13 Pet. 26, which is a leading one on this subject, a sale was made of land lying in Virginia to a citizen of New York, who had never seen it. Here, it does not appear that the defendant was ignorant of the state of the land. His petition shows that he seeks relief on the ground that the improvements did not exist, which were represented to be on the land. The defendant says that he did not examine the land. As that subject was on his mind, why did he not make a clean breast of it, and state whether or not an examination of the land was necessary in order to be apprised of its state? For aught that appears, he might have lived within sight of it. Sugden says the rule of the civil law was simplex commendatio non obligat. If the settler merely made use of those expressions which are usual to settlers who praise at random the goods which they are desirous to sell, the buyer, who ought not to have relied upon such expressions, could not upon this pretext procure the sale to be dissolved. The same rule, he continues, prevails in our law and has received a very lax construction in favor of vendors. It has been decided that no relief lies against a vendor for having falsely affirmed that a person bid a particular sum for the estate, although the vendee was thereby induced to purchase it and was deceived in the value. Neither can a purchaser obtain any relief against a vendor for false affirmation of value; it being deemed the purchaser's own folly to credit a nude assertion of that nature. Besides, value consists in judgment and estimation, in which many men differ. (1 Sug. V. & P. 2.) | In order to make out a failure of consideration of a note given for land, so as to entitle the purchaser to relief, on the ground that the vendor made fraudulent misrepresentations as to certain improvements upon the land sold, it must appear that the misrepresentation was of something material, and constituting an inducement or motive to the contract. | Is a purchaser entitled to relief against a vendor for a false affirmation of value for estate? | Exchange of Property - Memo 42 - KK.docx | LEGALEASE-00040710-LEGALEASE-00040711 | Condensed, SA, Sub | 0.82 | 0 | 1 | | 1 | |
| 20494 | Pavalon v. Thomas Holmes Corp., 25 Wis. 2d 540 | 302+20 | If the defendant brokers in inducing and making the sale to plaintiff acted only on their own behalf and not as agents of appellant, the complaint spells out no cause of action against appellant. An allegation, therefore, that defendant brokers so acted as agents of appellant, or some other allegation which under the federal Securities Act would establish appellant's liability, is crucial to the first cause of action stating a cause of action against appellant. The complaint, however, contains no positive allegation that defendant brokers did so act as agents of appellant. The allegations with respect to agency are all phrased in the alternative and allege that defendant brokers acted either as agents or as principals. Under the authorities, allegations in the alternative are fatally defective. Anderson v. Minneapolis, St. Paul & S. S. M. Ry. Co. (1908), 103 Minn. 224, 114 N.W. 1123, 14 L.R.A.,N.S., 886; 41 Am.Jur., Pleading, sec. 41, p. 317. The first cause of action of the complaint, therefore, fails to state a cause of action and it was error not to sustain the demurrer thereto. | Allegations in the alternative are fatally defective. | Are allegations in the alternative fatally defective? | 023686.docx | LEGALEASE-00151274-LEGALEASE-00151275 | Condensed, SA | 0.96 | 0 | 1 | 0 | | 1 |
| 20495 | John Deere Co. v. Metzler, 51 Ill. App. 2d 340 | 91+492 | The acts of an agent are considered in law to be those of the principal. Thus a conspiracy does not exist between a principal and agent. (Poller v. Columbia Broadcasting System, Inc., 109 U.S.App.D.C. 170, 284 F.2d 599, and Newman v. Bastion"Blessing Co., 70 F.Supp. 447.) | A conspiracy does not exist between a principal and agent. | Can a conspiracy exist between a principal and an agent? | 041461.docx | LEGALEASE-00151282-LEGALEASE-00151283 | Condensed, SA | 0.79 | 0 | 1 | 0 | | 1 |
| 20496 | Theos & Sons v. Mack Trucks, 1999 Miss. App. Div. 14 | 308+99 | The existence of an agency relationship and the agent's authority to bind his purported principal may be demonstrated in two ways. "Actual authority arises from a manifestation of consent by the principal that another may act as his agent." Id. Alternatively, apparent authority results from conduct "by the principal which causes a third person reasonably to believe that a particular person has authority to enter into negotiations or to make representations as its agent." Id. See also, Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 16, 679 N.E.2d 191 (1997); Hudson v. Massachusetts Prop. Is. Underwriting Assn., 386 Mass. 450, 457, 436 N.E.2d 155 (1982). If a third person then changes his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized. For either actual or apparent authority to be found, there must be some intervention by the principal; "authority to do an act can be created by written or spoken words or other conduct of the principal..." Restatement (Second) of Agency "" 26, 27 (1958). | For either actual or apparent authority of agent to be found, there must be some intervention by the principal; authority to do an act can be created by written or spoken words or other conduct of the principal. Restatement (Second) of Agency SS 26, 27 (1958). | Can an agent bind his principal if he acts within the ambit of his authority to represent his principal? | 041476.docx | LEGALEASE-00151351-LEGALEASE-00151352 | SA, Sub | 0.76 | 0 | 0 | 1 | | 1 |
| 20497 | Am. Personality Photos v. Mason, 589 F. Supp. 2d 1325 | 25T+182(1) | "[I]t matters whether the party resisting arbitration is a signatory or not." Optibase, Ltd., 337 F.3d at 131 (citing Thomson"CSF, 64 F.3d at 779). "[A] court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party..." Optibase, Ltd., 337 F.3d at 131 (quoting Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97 (2d Cir.1999)). Compelling a non-signatory to arbitration requires "careful consideration." Choctaw, 271 F.3d at 406. | Mere fact that parties in arbitration and in separate court action may be related does not necessarily lead to a conclusion that arbitration should be compelled based on alternative estoppel theory; rather, in addition to intertwined factual issues, there must be the type of relationship which justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement. | Should a court be wary of imposing a contractual obligation to arbitrate on a non-contracting party? | Alternative Dispute Resolution - Memo 828 - RK_59513.docx | ROSS-003282139-ROSS-003282140 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 20498 | Holmes v. Williams, 69 Ill. App. 114 | 83E+458 | The guaranty over the appellant's name was written when this suit was begun. Her blank indorsement is, prima facie, a guaranty. Kingsland v. Koeppe, 35 Ill. App. 81; S. C., 137 Ill. 544. The holder of the paper was authorized to write the guaranty over the signature. Swigart v. Weare, 37 Ill. App. 258.As the declaration alleged that the guaranty was made after the delivery of the note to the payee, it was necessary to allege and prove a consideration for the guaranty. Featherstone v. Hendrick, 59 Ill. App. 497; White v. Weaver, 41 Ill. 409; Joslyn v. Collinson, 26 Ill. 61. | Blank endorsement on note was prima facie a guaranty, and holder of paper was authorized to write guaranty over signature. | Is a blank indorsement a prima facie guaranty? | Bills and Notes - Memo 875 - RK_59555.docx | ROSS-003310923-ROSS-003310924 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20499 | Anderson v. Wagner, 207 Neb. 87 | 172H+1349 | A security interest which is a first lien retained or acquired by a creditor in connection with the financing of the initial construction of the residence of the customer, or in connection with a loan committed prior to completion of the construction of that residence to satisfy that construction loan and permanent financing of that residence, whether or not the customer previously owned the land on which that residence is to be constructed." 12 C.F.R. s 226.9(g) (emphasis supplied). | All possible security interests which are retained or could be acquired in consumer's residence must be clearly explained by creditor. | What is the meaning of Security Interest? | Consumer Credit - Memo 31 - RK_59563.docx | ROSS-003279974-ROSS-003279975 | Condensed, SA | 0.73 | 0 | 1 | | 1 | |
| 20500 | McIlvoy v. Sharp, 485 S.W.3d 367 | 302+8(1) | We begin by analyzing whether the claims against JCCC, MVE, Roderick, Miller, and Hess were properly dismissed for failure to state a claim on which relief could be granted. "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." Stephens v. Dunn, 453 S.W.3d 241, 248 (Mo. App. S.D. 2014) (internal quotation omitted). "This Court does not attempt to weigh whether the alleged facts are credible or persuasive." Harris v. Presson, 445 S.W.3d 127, 129 (Mo. App. E.D. 2014) (internal quotation omitted). "Rather, we accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and we construe all allegations favorably to the pleader to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." Id. (internal quotations omitted). This Court "must affirm the trial court's ruling if the motion to dismiss could have been sustained on any of the meritorious grounds raised in the motion regardless of whether the trial court ruled on that particular ground." Kixmiller, 341 S.W.3d at 713. | To state a claim, a petition must invoke substantive principles of law entitling the plaintiff to relief and allege ultimate facts informing the defendant of what the plaintiff will attempt to establish at trial. | "In ruling on a motion to dismiss for failure to state a claim, does a court not attempt to weigh whether the alleged facts are credible or persuasive?" | 037506.docx | LEGALEASE-00151994-LEGALEASE-00151995 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 20501 | Bromwell v. Nixon, 361 S.W.3d 393 | 197+205 | The remaining issues on appeal involve the circuit court's dismissal of the Appellants' declaratory judgment petition. This Court reviews the dismissal of the declaratory judgment petition for failure to state a claim de novo. Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 768 (Mo. banc 2007). A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 306 (Mo. banc 1993). When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader. Id. The Court does not weigh the factual allegations to determine whether they are credible or persuasive. Id. Instead, this Court reviews the petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." State ex rel. Henley v. Bickel, 285 S.W.3d 327, 329 (Mo. banc 2009). | Requirement of Missouri Prisoner Litigation Reform Act (MPLRA) that indigent prison inmates pay percentage of their prisoner accounts to satisfy filing fee for writ of habeas corpus did not violate open courts clause of state constitution, where inmates failed to show that they were unable to file petitions for habeas corpus because of an inability to pay filing fee. V.A.M.S. Const. Art. 1, S 14; V.A.M.S. SS 506.360-506.390. | "When considering whether a petition fails to state a claim upon which relief can be granted, does a court not weigh the factual allegations to determine whether they are credible or persuasive?" | 037671.docx | LEGALEASE-00152343-LEGALEASE-00152344 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 20502 | Uniprop v. Morganroth, 260 Mich. App. 442 | 308+92(1) | A characteristic of an agent is that he is a business representative. His function is to bring about, modify, accept performance of, or terminate contractual obligations between his principal and third persons. | A characteristic of an agent is that he is a business representative; his function is to bring about, modify, accept performance of, or terminate contractual obligations between his principal and third persons. | Is business representative a characteristic of an agent? | 041504.docx | LEGALEASE-00152293-LEGALEASE-00152294 | SA, Sub | 0 | 0 | 0 | 1 | 1 | |
| 20503 | Meyer v. Weil, 37 La. Ann. 160 | 8.30E+56 | We have failed to discover any such understanding or provision in the contract, which is a compromise of a pending suit, and, therefore, conclude that the obligation sued on is an unconditional one, therefore a promissory note. | The words, "This is to certify that I am to pay," amount to a promise, and the unconditional obligation containing them is a promissory note. | "If an obligation in a contract is unconditional, is it a promissory note?" | 009025.docx | LEGALEASE-00153666-LEGALEASE-00153667 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 20504 | Kelly v. Thompson, 49 Tenn. 278 | 409+743 | As to the interest in the choses in action; the notes in the hands of the Clerk; that registration is unnecessary, is not an open question in this State. In the case of Allen v. Bain, 2 Head, 108, in construing the acts of 1831 and 1839, this Court said that, assignments of choses in action--and that would embrace legacies--was not intended by the Legislature to be included in the enumeration of instruments required to be registered. On page 107 it is written: "It has been held in this State, in one or more important cases decided some years ago, that our registry acts did not apply to assignments of choses in action." There is but little difference in the phraseology of these acts and of the Code; and we are unable to discover any difference in their meaning or evidence of an intention on the part of the Legislature to enlarge the old acts. | An assignment, trust deed, of choses in action, as legacies to secure creditors, is good against all persons, without registration. 1831, c. 90; 1839, c. 26. Code, 2030. | Is transfer of a chose in action required to be registered? | 009743.docx | LEGALEASE-00153000-LEGALEASE-00153001 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20505 | Cohn v. Hitt, 133 Tenn. 466 | 83E+461 | This refers to irregular or accommodation indorsers as well as regular indorsers. Without proof of an agreement prior indorsers for accommodation are liable in solido to a subsequent indorser who has paid the note. The law fixes their prima facie liability in accordance with the order of their names on the paper. In re McCord (D. C.) 174 Fed. 72; Goldman v. Goldberger, 208 Fed. 877, 126 C. C. A. 35; Wilson v. Hendee, 74 N. J. Law, 640, 66 Atl. 413; State Bank v. Kahn, 49 Misc. Rep. 500, 98 N. Y. Sup. 858; Harris v. Jones, 23 N. D. 488, 136 N. W. 1080. | Both at common law and under Negotiable Instruments Law, SS 64, 68, defendant who first indorsed a note for the accommodation of the maker, held liable at the suit of the subsequent accommodation indorser. | What is the extent of liability faced by an accommodation indorser over other accommodation indorsers? | 009829.docx | LEGALEASE-00153551-LEGALEASE-00153552 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20506 | Huntington v. Attrill, 146 U.S. 657 | 228+817 | Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal. | Laws N.Y.1875, c. 611, SS 21, 37, making the officers of a corporation liable for its debts in case they make any false certificate or report, and also, in the case of limited liability companies, rendering the stockholders liable to the full amount of the stock held by them, respectively, for all debts contracted by the company before the whole amount of capital stock has been paid in, is not a penal statute, in the international sense, so that a judgment recovered thereunder cannot be enforced in another state, and the decision of a court of another state that the judgment is not enforceable therein is a failure to give such judgment the full faith and credit required by the constitution of the United States (U.S.C.A. Const. article 4, S 1) and by Rev.St. S 905 (28 U.S.C.A. S 1738). | Are statutes giving private action penal in nature? | 013692.docx | LEGALEASE-00152892-LEGALEASE-00152893 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20507 | Hidden Brook Air v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246 | 308=96 | An agent's authority may be actual or apparent. Actual authority exists when an agent has the power "to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him." Minskoff v. American Exp. Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996) (quoting Restatement (Second) of Agency ° 7 cmt. a (1958)). Actual authority may be express or implied. The distinction between express and implied actual authority turns on the nature of the representation by which the principal delegates authority to that agent. Express authority is "[a]uthority distinctly, plainly expressed, orally or in writing." Nationwide Life Ins. Co. v. Hearst/ABC/Viacom Entm't Servs., 1996 WL 263008, at *8 (S.D.N.Y. May 17, 1996) (quoting Black's Law Dictionary 521 (5th ed.1979)), while implied authority exists "when verbal or other acts by a principal reasonably give the appearance of authority to the agent." 99 Commercial St., Inc. v. Goldberg, 811 F.Supp. 900, 906 (S.D.N.Y.1993). In addition, as Judge Weinfeld explained, under New York law, "implied authority" has also been defined as "a kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers." The general rule in New York with regard to implied authority is that "an agent employed to do an act is deemed authorized to do it in the manner in which business entrusted to him is usually done." | Actual authority of agent may be express or implied, and distinction turns on the nature of the representation by which principal delegates authority to agent. | Can actual authority be express? | 041522.docx | LEGALEASE-00152864-LEGALEASE-00152865 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20508 | Charleston Dry Cleaners & Laundry v. Zurich Am. Ins. Co., 355 S.C. 614 | 308=92(1) | We decline to recognize a general duty of due care from an independent insurance adjuster or insurance adjusting company to the insured, and thereby align South Carolina with the majority rule on this issue. See, e.g., Meineke v. GAB Business Servs., Inc., supra; Sanchez v. Lindsey Morden Claims Servs., Inc., supra; King v. National Security Fire and Cas. Co., supra; Velastequi v. Exchange Ins. Co., supra; Dear v. Scottsdale Ins. Co., supra. We note, however, that "the authorized acts of an agent are the acts of the principal." McL-Lee Acquisition Fund, L.P. v. Deloitte & Touche, 327 S.C. 238, 242, 489 S.E.2d 470, 472 (1997). In addition, a bad faith claim against the insurer remains available as a source of recovery for a plaintiff such as Dry Cleaners. Therefore, in a bad faith action against the insurer, the acts of the adjuster or adjusting company (agent) may be imputed to the insurer (principal). | The authorized acts of an agent are the acts of the principal. | "Are the authorized acts of an agent, the acts of the principal?" | 041592.docx | LEGALEASE-00153433-LEGALEASE-00153434 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 20509 | United States v. La Franca, 282 U.S. 568 | 295=1 | By section 35, supra, it is provided that upon evidence of an illegal sale under the National Prohibition Act, tax shall be assessed and collected in double the amount now provided by law. This, in reality, is but to say that a person who makes an illegal sale shall be liable to pay a "tax" in double the amount of the tax imposed by preexisting law for making a legal sale, which existing law renders it impossible to make. A "tax" is an enforced contribution to provide for the support of government; a "penalty," as the word is here used, is an exaction imposed by statute as punishment for an unlawful act. The two words are not interchangeable one for the other. No mere exercise of the art of lexicography can alter the essential nature of an act or a thing; and if an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such. | "Penalty" is an exaction imposed by statute as punishment for unlawful act. | What is the distinction between tax and penalty? | 045992.docx | LEGALEASE-00153255-LEGALEASE-00153256 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 20510 | Johnston v. Griest, 85 Ind. 503 | 95=47 | The case can not be distinguished from that of Harmon v. James, 7 Ind. 263. In that case the instrument read as follows: "May 14th, 1836. This is to show that I allow to give Willet James two hundred and fifty dollars, to be paid in two years after date, as witness my hand and seal." And it was held that it was not a promise to pay money. The principle upon which the case proceeds is, that there is no undertaking to pay, and consequently no obligation created. This is sound doctrine. Baird v. Thayer, 8 Blackf. 146; Ephraims v. Murdock, 7 Blackf. 10. This last case has, we are aware, been overruled upon one point, but not upon the point here involved. | An instrument: "This will certify that I do give to J. $100, the money to be paid as soon as my financial condition will allow; and, if I do not live to pay it, I wish it paid out of my estate,"-is not the subject of an action. | Can an action lie from a note if no obligation to pay is created? | 008992.docx | LEGALEASE-00154701-LEGALEASE-00154702 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 20511 | Perrino v. Salem, 243 B.R. 550 | 83E=498 | Nevertheless, MPL by voluntarily giving the instrument to Bond Brook, "delivered" the instrument to Bond Brook. See 11 M.R.S.A. ° 1°201(14). That delivery, however, as the Bankruptcy Court correctly concluded in its Decision, was not a "negotiation" of the instrument. See Decision at 18. Pursuant to 11 M.R.S.A. 3°1201, "negotiation" means (1) a transfer of possession, whether voluntary or involuntary, or an instrument by a person other than the issuer to a person who thereby becomes its holder. | Under Maine law, delivery of cashier's check to remitter that purchased instrument for payment to another party was not "transfer," but "issuance," of instrument to remitter, and did not make remitter either "holder" of instrument or "nonholder in possession...who ha[d] the rights of a holder"; accordingly, remitter could not enforce cashier's check against drawer, and did not have sufficient dominion over check to qualify as "initial transferee" thereof within meaning of transferee liability provision of the Bankruptcy Code. Bankr.Code, 11 U.S.C.A. S 550; 11 M.R.S.A. S 3-1301(2). | Does negotiation require transfer of possession? | Bills and Notes - Memo 851 - RK_61296.docx | ROSS-003325614-ROSS-003325615 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20512 | Midfirst Bank, SSB v. C.W. Haynes & Co., 893 F. Supp. 1304 | 83E+522 | In determining GNMA's status as a HDC, the first inquiry involves ascertaining whether GNMA was a holder. A holder is a "person who is in possession of an instrument drawn, issued, or indorsed to him or to his order or to bearer or in blank." S.C.Code Ann. § 36"1"201(20) (Law Co-op.Supp.1993). Because GNMA never had physical possession of the mortgage notes, the central focus becomes constructive possession. Although no South Carolina cases interpreting "holder" or "possession" as used in this context appear to exist, Mid"First cites authority from other jurisdictions in an effort to persuade the court to apply the concept of constructive possession. These cases generally hold that constructive possession exists when an authorized agent of the owner holds the note on behalf of the owner. See Corporacion Venezolana de Fomento v. Vintero Sales Corp., 452 F.Supp. 1108 (S.D.N.Y.1978); Schranz v. I.L. Grossman, Inc., 90 Ill.App.3d 507, 45 Ill.Dec. 654, 412 N.E.2d 1378 (1980); Billingsley v. Kelly, 261 Md. 116, 274 A.2d 113 (1971); Snyder v. Town Hill Motors, Inc., 193 Pa.Super. 578, 165 A.2d 293 (1960); Lazidis v. Goidl, 564 S.W.2d 453 (Tex.Civ.App.1978). "[T]he possession required by the Code to constitute a person a "holder" may be a constructive possession by delivery to one on his behalf. Thus a person is a "holder" of commercial paper when it is in the physical possession of his agent." 1 Ronald A. Anderson, Uniform Commercial Code § 1"201:106 (3d ed. 1981) (footnotes omitted). In order to find constructive delivery, the transferor must deliver the note "with the unmistakable intention of transferring title to the instrument." Corporacion Venezolana de Fomento, 452 F.Supp. at 1117 (citing Bacal v. National City Bank, 146 Misc. 732, 262 N.Y.S. 839 (2d Dist.1933); 2 Ronald A. Anderson, Uniform Commercial Code " 3"202:38, at 775 (2d ed. 1971)). | "Possession" required under South Carolina law to constitute a "holder" of negotiable instrument may be constructive possession by delivery to third party on first person's behalf. S.C.Code 1976, § 36-1-201(20). | When does constructive possession exist? | Bills and Notes - Memo 854 - RK.docx | LEGALEASE-00043676-LEGALEASE-00043677 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20513 | Jaronko v. Czerwinski, 117 Conn. 15 | 83E+455 | We are unable to find essential support, either direct or inferential, for the findings that the plaintiff and the defendants each signed under circumstances leading him to believe that he was binding himself only as a joint guarantor and for a proportionate part of the note. The conclusions to the same effect, being dependent upon these findings, must fall with them. In the absence of a proven agreement for joint liability, the defendants must be assumed to have contracted in contemplation of, and in accordance with, the statutory rule of successive liability. General Statutes, " 4385. "This doctrine rests upon very clear and satisfactory principles. Each indorser places his name upon the instrument, whether for accommodation or otherwise, knowing that he renders himself conditionally liable to every subsequent and successive indorser, and that he has his recourse against every antecedent party, for the whole amount which he may be obliged to pay. With such knowledge of his liabilities and his remedies he voluntarily assumes his relation to the instrument with others who assume a different relation, accompanied by increased or diminished risk of loss. And contribution does not arise between such successive indorsers for the accommodation of another party by operation of law, but only when established by special agreement." 1 Daniel, Neg. Inst. (6th Ed.) " 703, p. 783. The trial court was in error in holding otherwise. | Persons signing on back of note with printed form reading, "I hereby waive demand, protest, and notice of protest, and nonpayment of note and guarantee payment," held bound as indorsers successively liable for whole amount, and not as guarantors liable for proportionate part of total as among themselves. Gen.St.1930, §§ 4380, 4383, 4385 (Rev.1949, §§ 6355, 6358, 6360). | Does an indorser render himself conditionally liable to every subsequent and successive indorser when he places his name upon an instrument? | 009984.docx | LEGALEASE-00154685-LEGALEASE-00154686 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 20514 | Fisher v. Univ. of Texas at Austin, 133 S. Ct. 2411 | 92+3280(3) | Grutter made clear that racial "classifications are constitutional only if they are narrowly tailored to further compelling governmental interests." 539 U.S., at 326, 123 S.Ct. 2325. And Grutter endorsed Justice Powell's conclusion in Bakke that "the attainment of a diverse student body ... is a constitutionally permissible goal for an institution of higher education." 438 U.S., at 311"312, 98 S.Ct. 2733 (separate opinion).Thus, under Grutter, strict scrutiny must be applied to any admissions program using racial categories or classifications. | In determining whether means chosen by university to attain diversity in admissions are narrowly tailored to that goal, as required by Equal Protection Clause, reviewing court must verify that it is necessary for university to use race to achieve educational benefits of diversity; this involves careful judicial inquiry into whether university could achieve sufficient diversity without using racial classifications. U.S.C.A. Const.Amend. 14. | Is the attainment of a diverse student body a constitutionally permissible goal for an institution of higher education? | Education - Memo # 236 - C - KS_61012.docx | ROSS-003308115-ROSS-003308116 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 20515 | Carpenter v. Thompson, 3 N.H. 204 | 156+33 | When there is an estoppel against it, it sets the matter at large. | An estoppel against an estoppel sets the matter at large. | Does an estoppel against an estoppel set the matter at large? | 018043.docx | LEGALEASE-00153830-LEGALEASE-00153831 | Condensed, SA | 0.24 | 0 | 1 | 0 | 1 | 1 |
| 20516 | Ransom & Co. v. Stanberry, 22 Iowa 334 | 156+34 | There was nothing in the pleadings in relation to an estoppel, and it was error to admit the evidence in relation to it. At the common law, matter of estoppel should be specially pleaded as such. Chitty on Plead., vol. 1, p. 509. | Matter in estoppel must be specially pleaded, and it is error to admit evidence thereof unless so pleaded. | Should a matter of estoppel be specially pleaded? | Estoppel - Memo #69 - C - CSS_60868.docx | ROSS-003293315 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 20517 | Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429 | 156+52(1) | "Equitable estoppel is an "extraordinary remedy." Pulver v. Dougherty, 58 A.D.3d 978, 871 N.Y.5.2d 495, 496 (2009) (Slip Op.); E. Midtown Plaza Hous. Co. v. City of New York, 218 A.D.2d 628, 631 N.Y.S.2d 38, 38 (1995). Under New York law, the doctrine should be "invoked sparingly and only under exceptional circumstances." Abercrombie v. Andrew Coll., 438 F.Supp.2d 243, 265 (S.D.N.Y.2006) (quoting Matter of Gross v. New York City Health & Hosps. Corp., 122 A.D.2d 793, 505 N.Y.S.2d 678, 679 (1986)). | Equitable estoppel is an extraordinary remedy. | Is equitable estoppel an extraordinary remedy? | 018070.docx | LEGALEASE-00154213-LEGALEASE-00154214 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20518 | Willis Sears Trucking Co. v. Pate, 452 S.W.2d 782 | 302+30 | It may well be that in attacking the phrase, we are among those who are "tilting their lances at windmills" (45 Yale L.J. 918 (March 1936)). Nevertheless, we join with the authorities cited, and being unable to improve upon the language selected and used in the foregoing authorities condemning this neolegalism, we add our disapproval to that already heaped upon the overworked phrase. We note particularly that "the courts are unanimous in condemning the use of the term "and/or" in pleadings.' 118 A.L.R. at p. 1372. If plaintiffs' counsel meant the conjunctive, he should have employed the word "and"; but, if he meant to express the disjunctive, he should have used the word "or". Having used both, he expressed neither. Plaintiffs violated Rules of Civil Procedure, rule 45(b), in that the pleading did not "consist of a statement in plain and concise language of the plaintiff's cause of action." Millspaugh v. Northern Indiana Public Service Co., 104 Ind.App. 540, 12 N.E.2d 396 (Indiana App. in Banc, 1938). See also the collation of authorities found in Gunnells Sand Co. v. Wilhite, 389 S.W.2d 596, 598 (Waco Tex.Civ.App., 1965, error ref. n.r.e.), discussing the requirement of a pleading to support the admission of evidence. | Use in pleadings of term "and/or" is disapproved. Rules of Civil Procedure, rule 45(b). | Are use of the term and/or in pleadings condemned by the courts? | 023751.docx | LEGALEASE-00154611-LEGALEASE-00154612 | Condensed, Order, SA, Sub | 0.93 | 1 | 1 | | 1 | |
| 20519 | Rossman v. Fleet Bank (R.I.) Nat. Ass'n, 280 F.3d 384 | 172H+1344 | We have stated the requirement that disclosures be "reasonably understandable" does not require that they be understandable by the average consumer. Instead, we have said disclosures must be reasonably comprehensible "in light of the inherent difficulty or complexity of the" information disclosed. Applebaum, 226 F.3d at 220. The appropriate level of difficulty of understanding the disclosure is not an issue here. Instead, the inquiry is into what the disclosures are fairly understood to mean, a question not at issue in Applebaum. In any event, there is nothing complex about annual fees, so the intended audience is the ordinary consumer. | Allegations that credit card issuer solicited card holder's business with offer of credit account having no annual fee while intending to change terms of account shortly after holder's acceptance of offer supported claim that issuer's required disclosures of credit terms were misleading in violation of Truth in Lending Act (TILA), inasmuch as reasonable consumer would expect that stated terms were those that card issuer intended to provide, even if those terms could change. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | Do reasonably understandable disclosures have to be within the understanding of an average consumer? | Consumer Credit - Memo 173 - RK_61835.docx | ROSS-003325444-ROSS-003325445 | Condensed, SA, Sub | 0.16 | 0 | 1 | | 1 | 1 |
| 20520 | Marchand v. Asbestos Defendants, 52 So. 3d 196 | 92+3965(4) | To the contrary, our research revealed numerous cases in which affidavits have been submitted in proceedings involving exceptions of lack of personal jurisdiction. The case cited by plaintiffs involved an exception of prescription. This argument has no merit. For the reasons stated above, we affirm the trial court judgments granting Rapid"American's exceptions of lack of personal jurisdiction. | Defendant in asbestos case lacked requisite minimum contacts with forum required to exercise of personal jurisdiction to comply with due process; fact that defendant's principal business was to defend asbestos cases across the country, and fact that defendant had previously engaged in litigation in the forum, were insufficient to establish minimum contacts. U.S.C.A. Const.Amend. 14. | Can a defendant submit an affidavit in proceedings involving an exception of lack of personal jurisdiction? | 039348.docx | LEGALEASE-00154888-LEGALEASE-00154889 | Condensed, SA, Sub | 0.03 | 0 | 1 | | 1 | 1 |
| 20521 | Lee v. Weisman, 505 U.S. 577 | 92+1351 | These concerns have particular application in the case of school officials, whose effort to monitor prayer will be perceived by the students as inducing a participation they might otherwise reject. Though the efforts of the school officials in this case to find common ground appear to have been a good-faith attempt to recognize the common aspects of religions and not the divisive ones, our precedents do not permit school officials to assist in composing prayers as an incident to a formal exercise for their students. Engel v. Vitale, supra, 370 U.S., at 425, 82 S.Ct., at 1264. And these same precedents caution us to measure the idea of a civic religion against the central meaning of the Religion Clauses of the First Amendment, which is that all creeds must be tolerated and none favored. The suggestion that government may establish an official or civic religion as a means of avoiding the establishment of a religion with more specific creeds strikes us as a contradiction that cannot be accepted. | Public school's inclusion of "nonsectarian" prayer in school graduation ceremony constituted impermissible establishment of religion under establishment clause, by coercing student to stand and remain silent during giving of prayer, even though student was not required to join in message in any way and could meditate on own religion or let mind wander, and even though prayer and closing benediction involved approximately two minutes of total ceremony. U.S.C.A. Const.Amends. 1, 14. | Can school official assist in composing prayers as an incident to a formal exercise for their students? | 016818.docx | LEGALEASE-00156066-LEGALEASE-00156067 | Condensed, SA, Sub | 0.51 | 0 | 1 | | 1 | 1 |
| 20522 | Georgia High Sch. Ass'n v. Waddell, 248 Ga. 542 | 141E+766 | In Smith v. Crim, supra, we held that a high school football player has no right to participate in interscholastic sports and has no protectable property interest which would give rise to a due process claim. Pretermitting the question of "state action" which is the threshold of the 14th Amendment, we held that Smith was not denied equal protection by the rule of GHSA there involved. Similarly we find no denial of equal protection by the referee's error here. Were our decision to be otherwise, every error in the trial courts would constitute a denial of equal protection. We now go further and hold that courts of equity in this state are without authority to review decisions of football referees because those decisions do not present judicial controversies. The stay granted by this court on November 13, 1981, is hereby reaffirmed. | High school football referee's error in assessing penalty did not deny equal protection to football players. U.S.C.A.Const.Amend. 14. | Does a high school player have a right to participate in interscholastic sports? | 016820.docx | LEGALEASE-00156128-LEGALEASE-00156129 | Condensed, SA, Sub | 0.84 | 0 | 1 | | 1 | 1 |
| 20523 | Sinn v. Daily Nebraskan, 638 F. Supp. 143 | 141E+1196 | Although the Daily Nebraskan is a creature of the state, the campus newspaper is not an agency of the state for all purposes. Arrington v. Taylor, 380 F.Supp. 1348, 1359"1360 (M.D.N.C.1974), aff'd, 526 F.2d 587 (1975), cert. denied, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976). In its editorial decision making the Daily Nebraskan functions like a private newspaper. Thus, the exercise of editorial discretion does not constitute state action. | Decision of editorial staff of university newspaper not to print roommate advertisements in which advertisers stated their gay or lesbian orientation was an exercise of editorial discretion and did not constitute "state action" for purpose of constitutional claims brought by would-be advertisers; although paper was funded by the state and operated out of a university building, it was not an agency of the state for all purposes, and functioned like a private newspaper with respect to its editorial decision-making processes. | Is campus newspaper an agency of the state? | 016832.docx | LEGALEASE-00156278-LEGALEASE-00156279 | Condensed, SA, Sub | 0.16 | 0 | 1 | | 1 | 1 |
| 20524 | Monsanto Co. v. Milam, 494 S.W.2d 534 | 302+34(2) | We agree with the Court of Civil Appeals that plaintiff's pleading that defendant Hutson negligently permitted the gas to escape was a specific allegation of negligence on the part of Hutson and on the part of Monsanto through its employee, Hutson. We construe the general allegation that the "incident made the basis of this suit was proximately caused by the negligence of the defendants' as referable to and controlled by the preceding specific allegation. The specific allegation controls over the general allegation. See Universal Atlas Cement Company v. Oswald, 138 Tex. 159, 157 S.W.2d 636 (1941); Rankin v. Nash-Texas Company, 129 Tex. 396, 105 S.W.2d 195 (1937); Weingartens, Inc. v. Price, 461 S.W.2d 260 (Tex.Civ.App.1970, writ ref. n.r.e.). For the same rule in workmen's compensation and other cases, see Matthews v. General Accident Fire & Life Assurance Corp., 161 Tex. 622, 343 S.W.2d 251 (1961); Harkey v. Texas Employers' Ins. Ass'n., 146 Tex. 504, 208 S.W.2d 919 (1948); and Lewis v. Hatton, 86 Tex. 533, 26 S.W. 50 (1894). | Specific allegation controls over general allegation. | Do specific allegation control over the general allegation? | Pleading - Memo 569 - RMM_62377.docx | ROSS-003279625-ROSS-003279626 | Condensed, SA | 0.95 | 0 | 1 | | 0 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20525 | Jackson v. Bell, 123 So. 3d 436 | 142T+544(6) | We repeatedly have held that an action cannot be dismissed with prejudice for the nonmerits reason of lack of jurisdiction. A dismissal with prejudice indicates a dismissal on the merits. B.A.D. v. Finnegan, 82 So.3d 608, 614 (Miss.2012) ("a dismissal with prejudice indicates a ruling on the merits, which is not appropriate for a dismissal for want of jurisdiction"); Rayner v. Raytheon Co., 858 So.2d 132, 134 (Miss.2003) ("a dismissal with prejudice connotes an adjudication on the merits"). "If a court does not have subject matter jurisdiction to hear a case, then it cannot have power to decide issues of fact and law ... in order to ... adjudicat[e] on the merits." Cook v. Children's Med. Group, P.A., 756 So.2d 734, 743 (Miss.1999); see also Esco, 735 So.2d at 1006 ("Subject matter jurisdiction deals with the power and authority of a court to consider a case."). | Candidate's failure to attach attorney certificates to petition for judicial review of election contest regarding primary runoff election for position of county tax assessor, as required by statute governing such judicial review, warranted dismissal of petition without prejudice, rather than with prejudice, where, although attorney-certificate requirement was a condition precedent to jurisdiction attaching, a dismissal with prejudice indicated a dismissal on the merits, and judicial review of an election contest was unique unto itself, unlike a complaint in a civil matter; overruling Esco v. Scott, 735 So.2d 1002. Code 1972, § 23-15-927 (2011). | Does a dismissal with prejudice indicate a dismissal on the merits? | Pretrial Procedure - Memo # 10256 - C - SN_61761.docx | ROSS-003281287-ROSS-003281288 | Condensed, SA, Sub | 0.26 | 0 | 1 | | 1 | 1 |
| 20526 | Tucker v. Delta Reg'l Med. Ctr., 189 So. 3d 690 | 307A+46 | The Mississippi Supreme Court has provided that lesser sanctions "will not suffice if they do not cure the prejudice caused by the delay." Id. (citing Cox, 976 So.2d at 876 (26)). Furthermore, "we do not reverse trial judges who grant Rule 41(b) dismissals unless we find that, in so doing, they abused their discretion." Hanson v. Disotell, 106 So.3d 345, 347 (9) (Miss.2013). The supreme court has established that "either delay or contumacious conduct provides a sufficient basis for a trial judge to dismiss pursuant to Rule 41(b), provided that the trial judge finds that a lesser sanction would not serve the best interests of justice." Id. The supreme court has also held that a clear record a delay obviates the need for a showing of contumacious conduct. | Dismissal without prejudice of wrongful death action brought by patient's parent against hospital, rather than dismissal with prejudice, was appropriate sanction for parent's failure to comply with discovery requests; while it was undisputed that parent and her counsel disregarded demands from opposing counsel for discovery requests and made empty promises to produce responses, and parent and her counsel failed to attend hearing after months of their ignoring mandates from opposing counsel and court to respond to requests, court had not yet attempted any other means by which to garner the requested responses, including a court order. Rules Civ.Proc., Rule 37(b). | Will lesser sanctions than a dismissal with prejudice for failure to prosecute an action not suffice if they do not cure the prejudice caused by the delay? | 024685.docx | LEGALEASE-00155952-LEGALEASE-00155953 | Condensed, SA, Sub | 0.12 | 0 | 1 | | 1 | 1 |
| 20527 | Lapham v. Barrett, 1 Vt. 247 | 208+27 | It is impossible to perceive on what good ground the defendant can now exonerate himself from his obligation to save "Lapham harmless"; in other words, to replace the money Lapham had paid by his request. The defendant contends that this agreement must be considered as gratuitous, because the words "value received" import a consideration only in contracts regulated by the law merchant, but not in other parol contracts. In order to support a position which divests these words of all meaning, the distinction contended for should be established by the authority of some decided case. No such case is shown. On the contrary, the Supreme Court of this state have uniformly held, that the words "value received" import a consideration in notes given for specific articles, (D. Chipman, 345) and these instruments are unknown to the law merchant. So in New-York, 7 John. 321. and in 3 John. 3 &a. held that the words "value received" was sufficient evidence of consideration, even in a deed. | Acknowledgment of "value received" in contract to indemnify another for paying a note imports a consideration. | "Are the words ""value received"" sufficient evidence of consideration?" | Bills and Notes -Memo 1231 - JK_62256.docx | ROSS-003282019-ROSS-003282020 | Condensed, SA, Sub | 0.89 | 0 | 1 | | 1 | 1 |
| 20528 | Gutierrez v. State, 666 S.W.2d 248 | 67+46(2) | At approximately midnight, a security guard's suspicions were aroused when he noticed a man [appellant] pushing a wheel barrow to the side of a construction trailer. The guard summoned another guard and while approaching the construction site heard glass breaking. The guard directed the beam of a flashlight through a broken glass window in the trailer. Appellant was observed alone in the trailer and ordered out of the trailer. Appellant exited through the broken window. When asked what he was doing in the trailer, appellant replied that he "hadn't done nothing" and that he was in the trailer for the purpose of trying to make a phone call to his mother in Chicago. The construction company superintendent testified that he never gave appellant nor anyone else permission to enter the trailer that evening. In a prosecution for burglary, the intent to commit theft may be inferred from the circumstances; further, an entry made without consent in the nighttime is presumed to have been made with intent to commit theft. Mauldin v. State, 628 S.W.2d 793, 795 (Tex.Cr. App.1982). The State proved an entry at night without consent thus raising the presumption of intent to commit theft. Appellant's evidence only showed that the theft was not completed. Actual commission of a theft, however, is not a prerequisite to the commission of burglary. Phillips v. State, 538 S.W.2d 116, 117 (Tex.Cr.App.1976). Appellant argues that the testimony of the security guard who found appellant in the trailer was adequate to raise the issue of criminal trespass. We disagree. We conclude that at best the testimony shows only that appellant intended to call Chicago. A call placed at the expense of the owner of the premises would be theft in the absence of intent to make a collect call or to reimburse the owner. Appellant offered no evidence that he intended to do either. Appellant's first ground of error is overruled. | Trial court's charge, which contained definition of theft and theft of services, did not expand allegations in indictment which alleged burglary of a building with intent to commit theft, as both indictment and charge acquired proof that defendant entered building with intent to commit theft, and as actual commission of theft is not a prerequisite to commission of burglary, so that object of the theft was irrelevant. | Does burglary require the commission of a theft? | Burglary - Memo 289 - RK_62291.docx | ROSS-003285166-ROSS-003285167 | Condensed, SA, Sub | 0.78 | 0 | 1 | | 1 | 1 |
| 20529 | Edelen v. United States, 560 A.2d 527 | 67+9(2) | Entry as an element of a burglary is established by the penetration into a dwelling or similar edifice by any part of the defendant's body or by any instrument inserted into the edifice by the defendant to gain entry. See Perry v. State, 407 So.2d 183, 185 (Ala.Crim.App.1981); People v. King, 61 N.Y.2d 550, 555, 463 N.E.2d 601, 603, 475 N.Y.S.2d 260, 262 (1984); Commonwealth v. Gordon, 329 Pa.Super. 42, 53-55, 477 A.2d 1342, 1348 (1984). The entry in this case thus occurred when appellant's foot first crossed the threshold, by which time the complainant was already inside the apartment. It was at that point that the crime was complete, and not before. | "Entry," for purposes of burglary in the first degree, occurred when defendant crossed threshold of victim's apartment after forcing her to open door and enter before him, rather than point at which he stopped her outside apartment and ordered her to let him in. D.C.Code 1981, § 22-1801(a). | Does entry occur upon crossing of a threshold? | 013148.docx | LEGALEASE-00156603-LEGALEASE-00156604 | Condensed, SA, Sub | 0.55 | 0 | 1 | | 1 | 1 |
| 20530 | Elliott v. Deason, 64 Ga. 63 | 83E+481 | Delivery can be made to the absent. Any friend may receive the instrument on behalf of the transferee or beneficiary. This followed by ratification would suffice. | When negotiable paper is assigned to a married woman, or to a naked trustee for her use, both being absent, delivery may be made to a friend acting on her behalf, and the same will be as effective if made directly to her or to the trustee. | Does delivery have to be made to the grantee? | 009097.docx | LEGALEASE-00157091-LEGALEASE-00157092 | Condensed, SA, Sub | 0.32 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20531 | Walcott v. Manufacturers Hanover Tr., 133 Misc. 2d 725 | 83⊢426 | Plaintiff's indorsement had the effect of converting the check into a bearer instrument. The series of numbers having no restrictive effect, Mr. Walcott indorsed the check in blank, or otherwise stated, he simply signed his name. A blank indorsement under UCC " 3"204 subdivision (2) specifies no particular indorsee and may consist of a mere signature." Additionally, "An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone." Consequently, since plaintiff failed to limit his blank indorsement, the check was properly negotiated by delivery to third party defendant Bilko and properly cashed by them. | Payee's signature on back of his paycheck, which did not specify any particular endorsee and merely set forth payee's mortgage number, was a "blank endorsement," which had effect of converting paycheck into a bearer instrument, so that paycheck was properly negotiated by delivery to third party and properly cashed by third party at collecting bank. McKinney's Uniform Commercial Code S 3-204(2). | Whether an instrument payable to order and indorsed in blank becomes payable to bearer? | Bills and Notes-Memo 1272-ANM_63200.docx | ROSS-003278891-ROSS-003278892 | Condensed, SA, Sub | 0.4 | 0 | 1 | | 1 | 1 |
| 20532 | Miller v. New Amsterdam Cas. Co., 105 Ga. App. 174 | 38⊢31 | Each of the laborers whose check plaintiff cashed had two distinct rights. One was his right to payment as payee of a negotiable instrument. The other was the right (chose in action) to recover under the payment bond in the event he was not otherwise paid for his work on the project covered by the contract. The former right may be transferred by an indorsement in blank. Code Ann. " 14-401. The latter right (chose in action) may be transferred by an assignment. Here the laborers transferred whatever rights they had in the checks by indorsing them in blank. However, the blank indorsements did not per se operate as assignments of the laborers' separate and distinct rights (choses in action) to recover under the payment bond. In this State an assignment of a chose in action must be in writing; the meaning of a legal assignment is a transfer of title or interest by writing. Turk v. Cook, 63 Ga. 681. | "Legal assignment" is transfer of title or interest by writing. | What is legal assignment? | Bills and Notes-Memo 1273-ANM_63201.docx | ROSS-003305734 | Condensed, SA | 0.93 | 0 | 1 | | 0 | 1 |
| 20533 | Curtis v. Wasem, 96 Cal. App. 604 | 83⊢426 | It is the first contention of appellants that the plaintiff and her brother both testified that there was a written assignment of the note, and that this evidence was stricken out as a conclusion and not the best evidence, yet the plaintiff did not show any effort to get the written assignment nor lay any foundation for the introduction of oral evidence as to the contents of the written assignment, and that this constituted a complete failure of proof as to the assignment. There is other evidence, however, including an indorsement in blank on the back of the note and an identification of the signature of David Robbins thereon. Such a signature of the indorser without additional words is a sufficient indorsement (Civ.Code, " 3112), and such an indorsement is an assignment in writing. | Indorsement in blank on back of note is sufficient assignment in writing of note. Civ.Code, S 3112. | Is indorsement without additional words a sufficient indorsement? | Bills and Notes-Memo 1280-ANM_63206.docx | ROSS-003305854-ROSS-003305856 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20534 | State Fire Marshall v. Lee, 101 Mich. App. 829 | 92⊢1369 | A church school is not incidental to the church's ministry it is an integral part of the ministry, yet separate and distinct. The fire and safety regulations treat a church and a school separately. If a building is used as a church, the church fire and safety regulations apply. If as a school, the school fire and safety regulations apply. This building is used primarily as a school, so the latter apply. There is a compelling state interest to ensure the safety and welfare of all school children. In ensuring the safety of school children, the State is not violating the free exercise clause of our Constitution nor its establishment clause. This Court cannot prevent the teaching of the scriptures in a church, its Sunday school, during youth hours or prayer meetings, in its church day school, etc. This is protected by our First Amendment. | In insuring safety of school children through application of fire regulations, State was not violating free exercise clause of Constitution nor its establishment clause. U.S.C.A.Const. Amend. 1. | Does the state has a compelling interest to ensure the safety and welfare of school children? | 017233.docx | LEGALEASE-00157902-LEGALEASE-00157903 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 20535 | Reverse Mortg. Sols. v. Unknown Heirs, 207 So. 3d 917 | 266⊢1798 | But, before dismissing a case with prejudice, the court must consider and make explicit findings on the following factors:1) whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for noncompliance; and 6) whether the delay created significant problems of judicial administration.Kozel, 629 So.2d at 818. And because dismissal with prejudice is the "ultimate sanction in the adversarial system," it should be reserved for only the most egregious cases. Id. | Dismissal of mortgage foreclosure action with prejudice was not warranted on ground of mortgagee's failure to comply with court rule or order; dismissal was imposed as a sanction for actions of prior counsel in prior foreclosure action, and record did not support trial court's finding that prior counsel had repeatedly failed to comply with court orders in prior case. West's F.S.A. RCP Rule 1.420(b). | "Because dismissal of a case with prejudice is the ultimate sanction in the adversarial system, should it be reserved for only the most egregious cases?" | Pretrial Procedure - Memo # 10457 - C - KG_62736.docx | ROSS-003284235-ROSS-003284236 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 20536 | Chappelle v. S. Florida Guardianship Program, 169 So. 3d 291 | 307A⊢46 | "After considering these factors, if there is a less-severe sanction available than dismissal with prejudice, the court should use it." Bennett ex rel. Bennett, 67 So.3d at 427 (citing Ham v. Dunmire, 891 So.2d 492, 496 (Fla.2004)). "[A] trial court's failure to consider the Kozel factors in determining whether dismissal was appropriate is, by itself, a basis for remand for application of the correct standard." Ham, 891 So.2d at 500. "We have consistently required the record to show an express consideration of the Kozel factors." Vista St. Lucie Ass'n v. Dellatore, 165 So.3d 731, 735 (Fla. 4th DCA 2015) (citation omitted) (internal quotation marks omitted). "While no "magic words' are required, the trial court must make a "finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard.' " Ham, 891 So.2d at 495 (quoting Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271, 1273 (Fla.1990)). | Before a court may dismiss a cause as a sanction, it must first consider the six factors delineated in Kozel v. Ostendorf for entering dismissal as sanction and set forth explicit findings of fact in the order that imposes the sanction of dismissal. | "Although no ""magic words"" are required when a court dismisses a case with prejudice, should the court find the conduct leading to the order was willful?" | 024955.docx | LEGALEASE-00157235-LEGALEASE-00157236 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | | 9,029 |
| 20537 | In Interest of C.M., 532 N.W.2d 381 | 336H+85 | The court dismissed the first petition without prejudice. A dismissal without prejudice is, by definition, not res judicata."A dismissal "without prejudice" allows a new suit to be brought on the same cause of action. The words "without prejudice", as used in judgment, ordinarily import the contemplation of further proceedings, and, when they appear in an order or decree, it shows that the judicial act is not intended to be res judicata of the merits of the controversy." Black's Law Dictionary 1603 (6th ed. 1990). We have previously held that a dismissal without prejudice has no res judicata effect."A dismissal " "without prejudice," means that no right or remedy of the parties is affected, the use of the phrase simply shows that there has been no decision of the case upon the merits, and prevents the defendant from setting up the defense of res adjudicata." " | Dismissal without prejudice is, by definition, not res judicata. | "Does a dismissal ""without prejudice,"" mean that no right or remedy of the parties is affected?" | 025114.docx | LEGALEASE-00156907-LEGALEASE-00156908 | Condensed, SA | 0.93 | 0 | 1 | 0 | | 1 |
| 20538 | Elec. Equip. Express v. Donald H. Seiler & Co., 122 Cal. App. 3d 834 | 307A+693.1 | Appellants' argument that their cross-complaint was ineffectual until respondents could properly bring appellants into the action is similarly without merit. And as to matters occurring prior to judgment, the revival of corporate powers has the effect of validating the earlier acts and permitting the corporation to proceed with the action. (Peacock Hill Assn. v. Peacock Lagoon Constr. Co., supra, 8 Cal.3d 369, 373, 105 Cal.Rptr. 29, 503 P.2d 285.) Indeed, a suspended corporation may obtain a judgment against a defendant and such judgment will be retroactively validated once reinstatement occurs. (Traub, supra.) A cross-complaint is thus fully effective against a suspended corporation. Buttressing this conclusion is the fact that, contrary to appellants' assertion, if a complaint is dismissed the cross-complaint may stand on its own. (Tomales Bay etc. Corp. v. Superior Court (1950) 35 Cal.2d 389, 394-395, 217 P.2d 968; see 1 Cal.Jur.3d, Actions, ss 256, 269, pp. 747, 761-762.). | If complaint is dismissed, cross complaint may stand on its own. | "If a complaint is dismissed, can a cross complaint stand on its own?" | 025255.docx | LEGALEASE-00156841-LEGALEASE-00156842 | Condensed, SA | 0.94 | 0 | 1 | 0 | | 1 |
| 20539 | Wilck v. Herbert, 78 Cal. App. 2d 392 | 308+81(2) | Under the contract she was appointed "sole and exclusive representative." She did not have authority to contract for the sale or other disposition of a play, but had authority only to negotiate and to submit offers in regard thereto, since the agreement provided that she should submit any offer to him but that no agreement should be binding upon him without his signature. No price, terms, or conditions for the sale or disposal of a play were specified in the agency agreement, and it cannot be assumed, in view of the express language thereof, that she was invested with any discretion as to price, terms, or conditions of contracting. Ordinarily the mere appointment of an exclusive agent to sell certain property does not prevent the owner from making the sale himself without being liable for the agent's commission. 3 C.J.S., Agency," 179, p. 71; 2 C.J. 777. In Restatement, Agency, p. 1058, sec. 449, comment b, it is said: "A contract to give an 'exclusive agency' to deal with specified property is ordinarily interpreted as not precluding competition by the principal personally but only as precluding him from appointing another agent to accomplish the result. On the other hand, the grant of an "exclusive agency" to sell the products of a manufacturer or dealer in a specified territory is ordinarily interpreted as precluding competition by the principal in any form within the designated section. A contract to give the "exclusive sale" of specified property ordinarily indicates that the agent is to have the exclusive power. The use of the words "exclusive agency" or "exclusive sale" is not conclusive but, as in other cases involving interpretation, all the circumstances must be considered.' | Ordinarily the mere appointment of an exclusive agent to sell certain property does not prevent the owner from making the sale himself without being liable for the agent's commission. | Is use of the words exclusive agency or exclusive sale conclusive that an agent has exclusive power? | Principal and Agent - Memo 429 - RK_63549.docx | ROSS-003294109-ROSS-003294110 | Condensed, SA | 0.89 | 0 | 1 | 0 | | 1 |
| 20540 | Dawson v. Sec'y of State, 274 Mich. App. 723 | 371+2002 | Expressed slightly differently, our Supreme Court explained that no "bright-line test" exists to distinguish between fees and taxes, but there are several general characteristics to which a court should look. Bolt v. City of Lansing, 459 Mich. 152, 160, 587 N.W.2d 264 (1998). Generally, fees are proportionate payments given in exchange for, and to support, some technically optional benefit or service; taxes are compulsory payments intended to raise revenue for the benefit of the public as a whole. Id. at 161"162, 587 N.W.2d 264. "A true "fee" ... is not designed to confer benefits on the general public, but rather to benefit the particular person on whom it is imposed." Id. at 165, 587 N.W.2d 264. If the payment goes to benefit the general public, it is a tax. Id. at 165"166, 587 N.W.2d 264. | Taxes have a primary purpose of raising revenue, while fees are usually in exchange for a service rendered or a benefit conferred.(Per Wilder, P.J., with two justices concurring in part.) | "As opposed to taxes, is a fee designed to confer benefits on the general public?" | 044520.docx | LEGALEASE-00157375-LEGALEASE-00157376 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 20541 | Cambee's Furniture v. Doughboy Recreational, 825 F.2d 167 | 29T+264 | The South Dakota Franchise Act broadly defines a franchise fee as "any fee or charge ... for the right to enter into a business or to continue a business under a franchise agreement...." S.D. Codified Laws " 37-5A-3 (1986). The Act narrows this definition somewhat by excluding "(t)he purchase of goods or agreement to purchase goods at a bona fide wholesale price." " 37-5A-4(1). Hinks does not deny that the price he paid for Doughboy pools was a bona fide wholesale price, rather he urges that a franchise fee may be found in the requirement that he make a minimum purchase of a certain quantity of Doughboy's pools or expend a minimum dollar amount. | South Dakota Franchise Act provides that purchase of or agreement to purchase goods at bona fide wholesale price shall not be considered payment of franchise fee, without regard to quantity of merchandise distributor is required to purchase. SDCL 37-5A-4(1). | What is a franchise fee? | 018533.docx | LEGALEASE-00158754-LEGALEASE-00158755 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 20542 | Martin v. Dial, 57 S.W.2d 289+858 75 | 289+858 | We conclude that the contention, that the deed of the surviving partner to the land in controversy is void because it appears that a part of the consideration was the assumption and payment of renewed notes for which the partnership was not liable, is equally without merit. It is true that the general rule is that the power of a partner to make a contract binding upon the firm ceases upon the dissolution of the firm by the death of a partner. The surviving partner can enter into no contract which will bind the estate of the deceased partnership except such as is reasonably appropriate and necessary in settling its affairs. First National Bank v. Payne & Co.'s Assignees, 85 Va. 890, 9 S. E. 153, 3 L. R. A. 284. | It appeared that will of deceased partner gave all his property to wife, as independent executrix, to be held by her for support of children and of wife during her widowhood, and that at end of her widowhood property should vest in children in fee; that about three months after death of deceased partner large part of partnership debts was renewed by notes signed by surviving partner and by executrix; that about eight months after deceased partner's death, survivor, joined by executrix, executed oil and gas lease on partnership land to obtain funds for caring for partnership cattle during winter; and that about four years after deceased partner's death survivor, joined by executrix, deeded partnership land for purpose of discharging partnership indebtedness. | Does the power of the surviving partner to enter into contract to bind the partnership cease upon the death of a partner? | 022619.docx | LEGALEASE-00158647-LEGALEASE-00158648 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20543 | Vigue v. John Hancock Mut. Life Ins. Co., 147 Conn. 305 | 302+120(1) | In its answer, the defendant admitted the first thirteen words of paragraph four of the complaint and denied the last twenty-two words. It then departed from the established practice of setting up matters in avoidance as a special defense under Practice Book " 102 by labeling them "By Way of New Matter." The plaintiff, in his amended reply, admitted the last eleven words of paragraph three of the new matter in the answer and denied the first six words. He proceeded to answer and avoid the special defense by affirmative allegations which he labeled "By Way of New Matter" instead of "Reply to Special Defense." Practice Book, " 109. The defendant, in a rejoinder, then admitted the last eighteen words of the new matter in the reply but denied the remainder. Pleadings should be direct, precise and specific. When a pleader wishes expressly to admit or deny a portion of a paragraph, he must recite that portion. Practice Book, " 106. The court should not have to mathematically dissect the pleadings in order to understand them. The forms of pleadings and the rules governing their use are to be found in the Practice Book. Since 1879 it has served its purpose, occasional changes being adopted as the need is demonstrated. See Prefatory Note, Practice Book (1922). Innovations should not be put into practice ex parte by counsel. Suggestions to improve the practice should be submitted to the rules committee of the judges. | Pleadings should be direct, precise and specific, and when a pleader wishes expressly to admit or deny a portion of a paragraph, he must recite that portion, and should not express his admission or denial in terms of admitting or denying a specified number of the first or last words in such paragraph. Practice Book,, SS 102, 106, 109. | "Should pleadings be direct, precise, and specific?" | 023831.docx | LEGALEASE-00158765-LEGALEASE-00158766 | Condensed, Order, SA, Sub | 0.77 | 1 | 1 | | | |
| 20544 | Family Fin. Corp. v. Nat'l Sur. Corp., 180 Misc. 496 | 302+17 | A contingent or hypothetical pleading is improper. Such a pleading does not either deny or confess and avoid, as required by statute. Strook Plush Co. v. Talcott, 129 App.Div. 14, 113 N.Y.S. 214. | A contingent or hypothetical pleading does not either deny or confess and avoid, as required by statute, and is improper. | Is a contingent or hypothetical pleading improper? | Pleading - Memo 587 - RMM_64358.docx | ROSS-003282499-ROSS-003282500 | Condensed, SA | 0.39 | 0 | 1 | 0 | | 1 |
| 20545 | Pollock v. Deere & Co., 282 N.W.2d 735 | 307A+694 | The case of Windus v. Great Plains Gas, 254 Iowa 114, 116 N.W.2d 410 (1962) provides dispositive guidance as to the preclusive effect of a 215.1 dismissal. After noting that the dismissal and entry of judgment for costs was, absent subsequent revival, a final judgment as to the Then pending action, the Court states: "A dismissal without prejudice leaves the parties as if no action had been instituted. It ends the particular case but is not such an adjudication in itself as to bar a new action between the parties." 254 Iowa at 124, 116 N.W.2d at 415-16. We also made clear that a rule 215.1 dismissal cannot be equated with a rule 215 voluntary dismissal. 254 Iowa at 124, 116 N.W.2d at 416. | Any dismissal without prejudice pursuant to rule for dismissal for want of prosecution in an action that has been previously dismissed does not constitute an adjudication on the merits against plaintiff. Rules of Civil Procedure, rule 215.1. | Does a dismissal of an action without prejudice leave the parties as if no action had been instituted? | Pretrial Procedure - Memo # 11055 - C - SHS_63443.docx | ROSS-003298719-ROSS-003298720 | Condensed, SA, Sub | 0.65 | 1 | 1 | 1 | | 1 |
| 20546 | Baldwin v. Mollette, 527 S.W.3d 830 | 308+3(1) | In addition, we are troubled by two procedural issues. First, we address the appearance of Shawn Mollette representing his father as a party at the hearing. Based on a durable power of attorney, Shawn was allowed to stand in for his father in this matter. "[A] power of attorney is a form of agency." Moore v. Scott; 759 S.W.2d 827, 828 (Ky. App. 1988) (citation omitted). The scope of an agent's authority is limited to that which the principal confers upon the agent, or that which is reasonable for the agent or third parties to believe the principal intended to confer. Harfurth v. Horine, 266 Ky. 19, 98 S.W.2d 21, 24 (1936). In the instant case, the power of attorney appears to be a standard power of attorney and is limited to the powers conferred in the document. The power of attorney makes no specific reference to any duty or decision-making authority *835 for Shawn as related to James's status as permanent custodian of the children. | Power of attorney is a form of agency. | Is a power of attorney a form of agency? | 041709.docx | LEGALEASE-00158953-LEGALEASE-00158954 | Condensed, SA | 0.96 | 0 | 1 | 0 | | 1 |
| 20547 | S. Pac. Transp. Co. v. Cont'l Shippers Ass'n, 642 F.2d 236 | 308+5 | "Agency" is the fiduciary relation that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1348 (8th Cir. 1980) (quoting Restatement (Second) of Agency s 1 (1958)). Agency is a legal concept that depends upon the existence of certain factual elements: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. Id. Finally, it is clear that a corporation may become an agent of an individual or of another corporation. | Corporation may become agent of individual or of another corporation. | Can a corporation be an agent? | Principal and Agent - Memo 407 - RK_63961.docx | ROSS-003320763-ROSS-003320764 | Condensed, SA | 0.91 | 0 | 1 | 0 | | 1 |
| 20548 | Columbus & S. Ohio Elec. Co. v. Porterfield, 41 Ohio App. 2d 191 | 371+3602 | A careful look is required as to the tax position on that portion of energy purchased and consumed by the city. Such involves an examination of the troublesome question of the "incidence" of the tax. Counsel for all parties look to a decision of the Supreme Court in Huntington Natl. Bank v. Porterfield (1970), 23 Ohio St.2d 131, 263 N.E.2d 227, for guidance. The decision does not speak conclusively as to the question presented to this review, but it does contribute to settling the matter as to "incidence." Clearly, the Ohio sales tax is a tax on a consumer of goods. The Huntington decision decides who that consumer is and concludes that the contractor who constructed the Huntington Trust Building is the consumer, not the bank nor the retirement board. | Sales tax is tax on consumer of goods. | Is sales tax a tax on consumer of goods? | 046292.docx | LEGALEASE-00159087-LEGALEASE-00159088 | Condensed, SA | 0.95 | 0 | 1 | 0 | | 1 |
| 20549 | Fowler v. Brantly, 39 U.S. 318 | 83F+377 | A note over-due, or a bill dishonoured, is a circumstance of suspicion to put those dealing for it afterwards on their guard; and in whose hands it is open to the same defences it was in the hands of the holder, when it fell due. After maturity, such paper cannot be negotiated. | After the maturity of a negotiable promissory note or bill of exchange, it ceases to be negotiable. | Does a note or a bill negotiable after maturity? | 010614.docx | LEGALEASE-00160065-LEGALEASE-00160066 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 20550 | Giron v. City of Alexander, 693 F. Supp. 2d 904 | 35+63.4(15) | Leath did not have probable cause to cite Villanueva for public intoxication. Under Arkansas law: A person commits the offense of public intoxication if he or she appears in a public place manifestly under the influence of alcohol to the degree and under circumstances such that: (1) The person is likely to endanger himself or herself or another person or property; or (2) The person unreasonably annoys a person in his or her vicinity. | Arrestee did not appear in a public place, within meaning of Arkansas law, when he came outside his home at city police officer's request and stood in his driveway, as required to afford officer probable cause to cite arrestee for public intoxication. U.S.C.A. Const.Amend. 4; West's A.C.A. SS 5-71-101(6), 5-71-212. | When does a person commit the offense of public intoxication? | Disorder Conduct - Memo 14 - PR_64612.docx | ROSS-003280762-ROSS-003280763 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20551 | People v. Detroit United Ry., 162 Mich. 460 | 183+2 | We agree with Chief Justice Montgomery that the cases presented do not involve an interference with any vested right of the company as assignee of the Fairview Railway, but resolves itself into a question of the construction of the ordinance. The rule that the terms of the franchise must be construed strictly against the respondent, as held in West Bloomfield Township v. Railway, 146 Mich. 198, 109 N. W. 258, 117 Am. St. Rep. 628, is applicable here. | The terms of a franchise must be construed strictly against the grantee. | Should franchises be strictly construed? | Franchise - Memo 45 - KNR_64640.docx | ROSS-003278791-ROSS-003278792 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 20552 | Pritza v. Vill. of Lansing, 405 Ill. App. 3d 634 | 217+2774 | Defendants further argue that section 143a"2 also does not apply because the coverage under the IMLRMA agreement is not an insurance "policy," and defendants are not insurers; rather, Lansing's participation in the IMLRMA is self-insurance. We agree.The Illinois Supreme Court firmly established that governmental self-insurance pools are not "insurance"as defined in the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1"101 et seq. (West 2000)). Antiporek v. Village of Hillside, 114 Ill.2d 246, 249, 102 Ill.Dec. 294, 499 N.E.2d 1307, 1308 (1986).The court in Antiporek described the Intergovernmental Risk Management Agency (IRMA) as "an alternative to conventional commercial insurance, is a risk-management pool in which only Illinois municipalities may participate." Antiporek, 114 Ill.2d at 247"48, 102 Ill.Dec. 294, 499 N.E.2d at 1308. The plaintiff had argued that the IRMA is more analogous to an insurance company than to a system of self-insurance because participants must pay a specified premium in consideration for indemnification from IRMA on the occurrence of enumerated perils. Antiporek, 114 Ill.2d at 249, 102 Ill.Dec. 294, 499 N.E.2d at 1308. The plaintiff further argued that, unlike self-insurance, IRMA provides indemnification from funds already expended by the municipality, so there is no reason to extend immunity to it. Antiporek, 114 Ill.2d at 250, 102 Ill.Dec. 294, 499 N.E.2d at 1308. | Agreement between village and risk management pool for automobile liability coverage was not an insurance "policy," but rather village's participation in the pool was self-insurance, and thus statutes requiring insurance policies to include underinsured motorist coverage did not require village and pool to offer underinsured motorist coverage to village police officer who was injured in a motor vehicle accident; funds at risk in the pool were municipal funds, rather than funds belonging to for-profit risk takers. S.H.A. 215 ILCS 5/143a-2(4); 625 ILCS 5/7-203; 745 ILCS 10/1-101 et seq. | Are governmental self-insurance pools insurance? | 019608.docx | LEGALEASE-00159738-LEGALEASE-00159739 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 20553 | Matter of Minton Group, 46 B.R. 222 | 289+558 | In other words, the interest grants no individually exercisable rights to the partner. Thus it is said that "a partner has no personal right in any specific partnership property ... and any real estate which the partnership owns is considered personalty." La Russo v. Paladino, 109 N.Y.S.2d 627, 630 (Sup.Ct.1951), aff'd., 280 App.Div. 988, 116 N.Y.S.2d 617 (1952). | While debtor, as general partner, "owned" a particular, circumscribed interest in partnership's property, it did not own the property itself and, because debtor exercised too few rights in regard to the property to qualify it as owner thereof, bankruptcy trustee had no power to reach transactions involving the property, nor did the automatic stay reach it. Bankr.Code, 11 U.S.C.A. SS 362, 544. | Does an interest of a partner grant him individually exercisable rights? | 022648.docx | LEGALEASE-00159929-LEGALEASE-00159930 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 20554 | Simmons v. Dixon, 306 So. 2d 67 | 336H+85 | The judgment of dismissal of December 17, 1971 recites: "It is ordered that further proceedings be barred or dismissed at plaintiff's cost." The judgment would not dismiss plaintiff's suit "with prejudice", therefore, the dismissal must have been entered "without prejudice." LSA-C.C.P. Art. 561 provides for the automatic dismissal of an action in which no prosecution has been had for a period of five years. It also recites that upon ex parte application of the defendant, a final order of dismissal may be entered. Article 561 is silent as to whether the dismissal shall be with or without prejudice. In DeSalvo v. Waguespack, 187 So.2d 489 (La.App.4th Cir. 1966), it was held that when an action is dismissed for procedural insufficiency and not on the merits, it should normally be dismissed without prejudice to its renewal because, in such circumstances, no adjudication on the merits has taken place. | Where judgment of dismissal for lack of prosecution ordered that further proceedings be barred or dismissed at plaintiff's cost but did not dismiss plaintiff's suit "with prejudice," dismissal of suit was entered "without prejudice" and did not constitute a bar to another suit on same cause of action. LSA-C.C.P. arts. 561, 1673. | "When an action is dismissed for procedural insufficiency and not on the merits, should it be dismissed without prejudice to its renewal because no adjudication on the merits has taken place?" | 039847.docx | LEGALEASE-00159479-LEGALEASE-00159480 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20555 | Subway Restaurants of Bloomington-Normal v. Topinka, 322 Ill. App. 3d 376 | 371+3602 | Subway has failed to rebut the Department's justification. Subway claims that the uniformity clause would be violated if students who purchase food and beverages at Subway's on-campus restaurants have to pay ROT while students who purchase food products at other university-run cafeterias in the State do not have to pay ROT. Contrary to Subway's contention, the ROT is a tax on the seller, not on the buyer of the goods. See First National Bank v. Jones, 48 Ill.2d 282, 288, 269 N.E.2d 494, 497 (1971), quoting National Bank of Hyde Park v. Isaacs, 27 Ill.2d 205, 207, 188 N.E.2d 704, 705 (1963) (ROT " is levied upon the seller, and the custom of passing the burden to the buyer by means of a price increase does not alter its nature. It is the legal incidence of the tax that controls ' '). | Retailer's Occupation Tax is a tax on the seller, not on the buyer of the goods. S.H.A. 35 ILCS 120/2; Ill.Admin. Code title 86, S 130.2005(a)(2-4). | Is the Retailer's Occupation Tax a tax on the seller? | Taxation - Memo 1113 - C - VA_64516.docx | ROSS-003282077-ROSS-003282078 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 20556 | Sharper Image Corp. v. Miller, 240 Conn. 531 | 371+3602 | This case requires us to examine the purpose and application of the Connecticut use tax, and the statutory scheme attached to that tax. "The Sales and Use Tax[es] Act [General Statutes " 12"406 et seq.] imposes both taxes and places their ultimate burden on the purchaser .... The two taxes are [however] different in conception ... [and] are assessments upon different transactions.... A sales tax is a tax on the freedom of purchase. A use tax is a tax on the enjoyment of that which was purchased.... [G]enerally a sales tax is imposed on items acquired within the state and a use tax is imposed on items acquired outside the state for use within this state." | "Sales tax" is tax on freedom of purchase. | "Is a ""sales tax"" a tax on freedom of purchase?" | Taxation - Memo 1119 - C - NS_64521.docx | ROSS-003309765-ROSS-003309766 | Condensed, SA | 0.93 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20557 | Bank of Orange Cty. v. Colby, 12 N.H. 520 | 8.30E+10 | The residence of the parties to this note, at the time it was executed, does not appear from the case, nor does it seem to be material. Story's Confl. of Laws 265. The note was executed within the state of Massachusetts. No place is designated where it is to be paid, and it is therefore payable generally. There is nothing in the case, then, to take it out of the general rule, that the lex loci contractus must determine the construction to be given to it, and the obligation and duty it imposes. 6 N. H. Rep. 150, Douglass vs. Oldham, and cases cited; Dow vs. Rowell, 12 N.H. 49. "To bring a contract within the general rule of the lex loci, it is not necessary that it should be payable exclusively in the place of its origin. If payable every where, then it is governed by the law of the place where it is made, for the plain reason that it cannot be said to have the law of any other place in contemplation to govern its validity, its obligation, or its interpretation." Story's Confl. of Laws 264, " 317. And the holder takes it as it was originally made, and as it was in the place where it was made. Ditto 264, 284, 286. | A note naming no place of payment must be construed according to the lex loci contractus. | Does lex loci contractus determine the construction of a note? | Bills and Notes -Memo 1378- JK_66280.docx | ROSS-003280336-ROSS-003280337 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 20558 | Bank of Orange Cty. v. Colby, 12 N.H. 520 | 8.30E+10 | The residence of the parties to this note, at the time it was executed, does not appear from the case, nor does it seem to be material. Story's Confl. of Laws 265. The note was executed within the state of Massachusetts. No place is designated where it is to be paid, and it is therefore payable generally. There is nothing in the case, then, to take it out of the general rule, that the lex loci contractus must determine the construction to be given to it, and the obligation and duty it imposes. 6 N. H. Rep. 150, Douglass vs. Oldham, and cases cited; Dow vs. Rowell, 12 N.H. 49. "To bring a contract within the general rule of the lex loci, it is not necessary that it should be payable exclusively in the place of its origin. If payable everywhere, then it is governed by the law of the place where it is made, for the plain reason that it cannot be said to have the law of any other place in contemplation to govern its validity, its obligation, or its interpretation." Story's Confl. of Laws 264, " 317. And the holder takes it as it was originally made, and as it was in the place where it was made. Ditto 264, 284, 286. | A note naming no place of payment must be construed according to the lex loci contractus. | What must the lex loci contractus determine? | Bills and Notes -Memo 1388- JK_66288.docx | ROSS-003323670-ROSS-003323671 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 20559 | People v. Etkin, 277 A.D.2d 599 | 110=1044.1(2) | Although defendant's argument includes a claim that the prosecutor violated a promise to recommend only probation at sentencing, it is undisputed that the promise was conditional and one of the conditions, to which defendant knowingly and voluntarily agreed, was not satisfied. The remainder of defendant's argument concerns the severity of the sentence, an issue encompassed by defendant's waiver of the right to appeal (see, People v. Hidalgo, 91 N.Y.2d 733, 737, 675 N.Y.S.2d 327, 698 N.E.2d 46; People v. Kwiatkowski, 263 A.D.2d 552, 694 N.Y.S.2d 779, lv. denied 93 N.Y.2d 1021, 697 N.Y.S.2d 580, 719 N.E.2d 941). In any event, we see no abuse of discretion in County Court's conclusion that some jail time should be imposed and we find no extraordinary circumstances which would warrant a reduction of the sentence in the interest of justice. | By moving to withdraw his guilty plea on the ground that it was coerced, defendant preserved his challenge to the voluntariness of both his plea and the waiver of his right to appeal. | Can a defendant waive his or her right to appeal the severity of a sentence? | 012513.docx | LEGALEASE-00161427-LEGALEASE-00161428 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | 1 |
| 20560 | Berry v. Michigan Racing Com'r, 116 Mich. App. 164 | 315T+33 | A majority of those jurisdictions considering the issue have concluded that horse racing is an activity requiring strong police regulation to protect the public interest. E.g., Division of Pari-Mutuel Wagering v. Caple, 362 So.2d 1350, 1355 (Fla., 1978); Dare v. State, 159 N.J.Super. 533, 388 A.2d 984 (1978); O'Daniel v. Ohio State Racing Comm., 37 Ohio St.2d 87, 307 N.E.2d 529, 533 (1974); Sandstrom v. California Horse Racing Board, 31 Cal.2d 401, 189 P.2d 17 (1948), cert. den. 335 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369 (1948), but see Brennan v. Illinois Racing Board, 42 Ill.2d 352, 247 N.E.2d 881 (1969). As stated in Dare v. State, supra : "The danger of clandestine and dishonest activity inherent in the business of horse racing has been well recognized. Garifine v. Monmouth Park Jockey Club, 29 N.J. 47, 55 [148 A.2d 1] (1959). The business itself and the legalized gambling which accompanies its activities are strongly affected by a public interest. State v. Garden State Racing Ass'n, 136 N.J.L. 173, 175 [54 A.2d 916] (E. & A.1947). Corruption in horse racing activities is regarded as an affront to a publicly sponsored sport with the potential of far reaching consequences. State v. Sipp, 149 N.J.Super. 459, 460 [374 A.2d 48] (App.Div.1968)." Dare v. State, supra, 159 N.J.Super. 536-537, 388 A.2d 984. | Strong public interest justifies close regulation of horse racing, an activity accompanied by legalized gambling and thereby especially susceptible to fraud and corruption. M.C.L.A. S 431.71(4). | Is corruption in horse racing activities regarded as an affront to a publicly sponsored sport with the potential for far reaching consequences? | Bribery - Memo 1107 - C - ML_65566.docx | ROSS-003281118-ROSS-003281119 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 20561 | Meyer v. Chagrin Falls Exempted Vill. Sch. Dist. Bd. of Educ., 9 Ohio App. 3d 320 | 156=83(1) | Waiver is the voluntary surrender or relinquishment of a known legal right by agreement, or a failure to act upon a right plainly indicating an intention not to claim such right. Motz v. Root (1934), 53 Ohio App. 375, 4 N.E.2d 990. Estoppel precludes an individual from asserting a claim where that individual has misrepresented or willfully concealed facts from another with the intent to have the other act, and where the other is induced to so act to his injury or detriment. New York Central RR. Co. v. General Motors Corp. (N.D.Ohio 1960), 182 F.Supp. 273. | School librarian's conduct in applying for and receiving retirement benefits did not necessarily indicate her intention to give up her right to continued employment, since she may have been concerned about her financial situation, and she may have anticipated extended period of time before her dispute with school board was resolved; since librarian did not willfully conceal or make misrepresentations about her plan to object to her superannuation in order to induce school board to act, and school board did not identify any injury or detriment resulting from any alleged misrepresentations, librarian was not precluded by waiver or estoppel from asserting her claim of wrongful termination. | Is a waiver the voluntary surrender of a known legal right? | 018174.docx | LEGALEASE-00161857-LEGALEASE-00161858 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20562 | Cole v. Wilson, 127 Me. 316 | 48A+244(6) | Under these circumstances, the jury was justified in finding him guilty of negligence in not stopping his car. Not on account of the fog. The driver of an automobile encountering a heavy fog while on his way home may proceed at a reasonable speed and is not obliged to stop and wait for the fog to lift in order to escape a charge of negligence. He must, however, exercise a degree of care consistent with the existing conditions. Johnson v. State of New York, 104 Misc. Rep. 403, 175 N. Y. S. 299, 303. But because of the blinding glare of the lights. If the operator of a machine is blinded by the light from another vehicle so that he is unable to distinguish an object in front, reasonable care requires that he bring his vehicle to a stop and a failure to do so justifies a charge of negligence. O'Bierne v. Stafford, 87 Conn. 354, 87 A. 743, 46 L. R. A. (N. S.) 1183; Jacquith v. Worden, 73 Wash. 349, 132 P. 33, 48 L. R. A. (N. S.) 827; Buzick v. Todman, 179 Iowa, 1019, 162 N. W. 259; Jolman v. Alberts, 192 Mich. 25, 158 N. W. 170; Hammond v. Morrison, 90 N. J. Law, 15, 100 A. 154; Topper v. Maple, 181 Iowa, 786, 165 N. W. 28; Woodhead v. Wilkinson, 181 Cal. 599, 185 P. 851, 10 A. L. R. 291. | Evidence held to justify finding of driver's negligence in not stopping automobile when blinded by lights of other cars. | Will the driver of an automobile in heavy fog be held liable for negligence if he proceeds at a reasonable speed consistent with the existing conditions? | 018790.docx | LEGALEASE-00161639-LEGALEASE-00161640 | Condensed, SA, Sub | 0.9 | 0 | 1 | | 1 | |
| 20563 | Nulter v. State Rd. Comm'n of W. Virginia, 119 W. Va. 312 | 200+165 | A state highway is the property of the state, and use of the highway is subject to the control of the state. | A state highway is the property of the state, and its use is subject to state's control. | Do public highways belong to the State? | 018797.docx | LEGALEASE-00161627-LEGALEASE-00161628 | Condensed, SA | 0.19 | 0 | 1 | 0 | 1 | |
| 20564 | Pittsburgh, C., C. & St. L.R. Co. v. Iddings, 28 Ind. App. 504 | 200+182 | Where a road runs north and south on a township line, the north half is assigned for construction and repairs to the township on the west side of the line and the south half is assigned for construction and repairs to the township on the east side, to be under the control of, and kept in order by, the township trustee of the township to which they are assigned. Section 5090h, Horner's Rev. St. 1897 (section 6848, Burns' Rev. St. 1894). However, an injury to a highway be occasioned, it devolves upon the trustee to cause needed repairs. It is to be "kept in order" by him. Certainly, the township has such an interest in the keeping of the road in repair that, whether or not it can properly be said to have a property right in the highway, it is the legal protector of the public easement, and it suffers a pecuniary loss through the wrongful injury of the road which necessitates an expenditure of money for repairs, and damages so sustained by the township it may recover from the wrongdoer. See Elliott, Roads & S.,"" 442, 720; Town of Centerville v. Woods, 57 Ind. 192. The right of action has accrued when the injury has been consummated. The amount of damages may be estimated, being the amount which has been or will be expended necessarily in making the repairs. Town of Troy v. Cheshire R. Co., 23 N. H. 83, 55 Am. Dec. 177. See, also, St. Louis, V. & T. H. R. Co. v. Town of Summit, 3 Ill. App. 155. | The right of action has accrued when the injury has been consummated. | When has the right of action accrued? | Highways - Memo 452 - RK_66352.docx | ROSS-003284070-ROSS-003284071 | Condensed, SA | 0.95 | 0 | 1 | | 1 | |
| 20565 | Korzun v. Chang-Keun Yi, 207 W. Va. 377 | 48A+235 | This case arises upon certified question from the United States District Court for the Northern District of West Virginia and presents the issue of whether a self-insured automobile rental company is an "insurance company" within the meaning of West Virginia Code " 56"3"31(h)(7) (Supp.1999) for purposes of effecting service of process on behalf of a nonresident motorist driver. After examining the applicable statutory provisions, we conclude that the statutory definition of "insurance company" does include entities such as self-insured automobile rental companies and accordingly, answer the certified question in the affirmative. | A self-insured automobile lessor was an "insurance company" within the meaning of statute permitting service of process on a nonresident driver's insurance company, even though the lessor did not issue insurance policies. Code, 56-3-31(g), (h)(7). | Is a self-insured automobile rental company an insurance company? | Insurance - Memo 121 - SNJ_65778.docx | ROSS-003283449-ROSS-003283450 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 20566 | Antonofsky v. Goldberg, 144 Conn. 594 | 302+370 | While our courts have followed a liberal policy in passing upon claims of variance between pleading and proof, it is still the law that the allegations of the complaint provide the measure of recovery. The plaintiff alleged in his complaint a state of facts and asserted that they spelled out one or more specified acts of negligence which caused his injuries. He sought to recover, however, on proof of materially different facts, on which he asked that the defendants be found guilty of negligent acts not specified in his complaint. The test was whether the variance misled or prejudiced the defendants on the merits of the case. Reciprocal Exchange v. Altherm, Inc., 142 Conn. 545, 552, 115 A.2d 460; Malone v. Steinberg, 138 Conn. 718, 721, 89 A.2d 213; Frosch v. Sears, Roebuck & Co., 124 Conn. 300, 303, 199 A. 646; Epstein v. M. Blumenthal & Co., 114 Conn. 195, 199, 158 A. 234. There was nothing in the complaint to put either the defendant Goldberg or the defendant Gardner fairly upon notice that the plaintiff would claim that the sole proximate cause of his injuries was the sudden braking of the Goldberg car. The trial court was correct in directing a verdict for the defendants for the reason that the plaintiff produced no evidence which would justify the jury in finding that his injuries were caused as alleged in the complaint. | Allegations provide the measure of recovery. | Do allegations of a complaint provide the measure of recovery? | Pleading - Memo 604 - RMM_65789.docx | ROSS-003292388-ROSS-003292389 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 20567 | Tsafatinos v. Family Dollar Stores of Florida, 116 So. 3d 576 | 287+51(3) | It is true, as Mr. Tsafatinos contends, that when a complaint appears to be capable of being amended to properly state a cause of action it should not be dismissed with prejudice, as it was here, without affording the third-party plaintiff the chance to amend. See Kapley v. Borchers, 714 So.2d 1217, 1218 (Fla. 2d DCA 1998). However, Mr. Tsafatinos' claim for common law indemnity is not capable of amendment to state a cause of action as Mr. Tsafatinos previously asserted in his pleadings that he was not in possession or control of the property and thus he cannot be vicariously liable for the Sugases' injuries. Therefore, the trial court correctly dismissed this count of Mr. Tsafatinos' complaint. See Welch, 818 So.2d at 649. | Landlord's claim against tenant for breach of contract on the basis of failure to name landlord as an additional insured on its commercial general liability (CGL) policy or its self-insurance policy could not be maintained as a third-party claim, where related claim for common law indemnification failed to state a cause of action. West's F.S.A. RCP Rule 1.180(a). | "When a complaint appears to be capable of being amended to properly state a cause of action, should it be dismissed with prejudice without affording the third-party plaintiff the chance to amend?" | Pretrial Procedure - Memo 11558 - C - NC_65809.docx | ROSS-003278760-ROSS-003278761 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20568 | Watson v. Lillard, 493 So. 2d 1277 | 307A+587 | The power to dismiss for failure to prosecute is inherent in any court of law or equity, being a means necessary to the orderly expedition of justice and the court's control of its own docket. It can be exercised sua sponte where a motion by a party is lacking. Link v. Wabash R.R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Where a motion is made, its disposition is governed by Rule 41(b), which is the same under the federal system or our own rules of civil procedure. A substantial body of law has grown up around the federal rule. It does not, of course, bind us as precedent, but it provides useful guidelines for our consideration. | Court's dismissal of plaintiff's medical malpractice action for failure to prosecute after plaintiff's "personal differences" resulted in use of three different sets of competent counsel and she repeatedly missed deadlines set by trial judge was not abuse of discretion, especially as there was no record of evidence presented at hearing supporting conclusion that plaintiff's failure to prosecute action was attributable to her disabilities. | "Is the power to dismiss an action for want of prosecution, inherent to the courts, necessary as a means to the orderly expedition of justice?" | 040451.docx | LEGALEASE-00161050-LEGALEASE-00161051 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | |
| 20569 | Carter v. Hill, 31 Haw. 264 | 371+2201 | In discussing the power of Congress or the power of the state or territorial legislatures in income tax matters it is necessary to keep in mind the twofold theory of jurisdiction in such matters, which is that in certain instances the jurisdiction of the government and the courts is over the person of the taxpayer, while in others it is over the income or property taxed. Quoting from Shaffer v. Carter, 252 U. S. 37, 49, 50: "Governmental jurisdiction in matters of taxation, as in the exercise of the judicial function, depends upon the power to enforce the mandate of the State by action taken within its borders, either in personam or in rem according to the circumstances of the case, by arrest of the person, seizure of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like. * * * | When property, owned by a resident of this Territory, consisting of shares of stock of a foreign corporation, state bonds, municipal bonds of mainland cities, Liberty bonds, federal farm loan bonds, deposits in a foreign bank and an undivided share of a trust estate held in trust by a foreign corporation, none of which securities have ever been actually in this Territory, but have at all times been physically present in the State of New York and under the complete control and management of the owner's agent, acting under a power of attorney which gives him unlimited discretion in the use and control of all of said securities without consultation with the owner, and when said attorney in fact, in the exercise of the powers conferred upon him, invests and reinvests said securities at his own will and in accordance with his own judgment, said securities have a fixed business situs in the State of New York, and have not, under the common-law doctrine expressed in the maxim, mobilia sequuntur personam, their situs in the Territory of Hawaii, and under section 1388, Rev Laws 1925, the owner is not liable for a tax on the income derived from said securities. | Does the governmental jurisdiction in matters of taxation depend on the power to enforce the mandate of the State by action taken within its borders? | 046314.docx | LEGALEASE-00160779-LEGALEASE-00160780 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |
| 20570 | Thompson v. Dep't of Labor & Indus., 194 Wash. 396 | 413+108 | In the Guerrieri Case, it was held that the operation of a freight or passenger elevator did not make the operator a workman under the act, because the act indicates "a legislative intent to cover classes of business rather than particular pieces or kinds of machinery." | The employer's business or industry, rather than employee's activities, determine whether latter is within provisions of Workmen's Compensation Act. Rem.Rev.Stat. §§ 7673 et seq., 7675. | "Under the Workmen's Compensation Act, is there a legislative intent to cover classes of business rather than particular pieces or kinds of machinery?" | Workers' Compensation Memo 700 - C - ANC_65533.docx | ROSS-003281176 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | |
| 20571 | Kucel v. Walter E. Heller & Co., 813 F.2d 67 | 170B+3061 | Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex.1984). For cases involving contracts with choice-of-law clauses, the rule remains that if the parties agree that the contract will be governed by the laws of a particular state, then that intention prevails. See Austin Building Co. v. National Union Fire Insurance Co., 432 S.W.2d 697, 701 (Tex.1968) | Award of attorney fees in diversity case depends on law of state whose rules govern substantive claims. | Will the intent of the parties prevail when they agree that the contract will be governed by the laws of a particular state? | Bills and Notes - Memo 1340 - RK_66243.docx | ROSS-003307614 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 20572 | Weisbrod v. Ely, 767 P.2d 171 | 289+1041 | In his third argument, Weisbrod contends that the district court refused to grant him a formal accounting and that this refusal was error. He bases this contention on W.S. 17"13"405, which provides, inter alia, that a partner has a right to a formal account when he has been wrongfully excluded from the partnership or when a partner is accountable as a fiduciary under the provisions of W.S. 17"13"404. It is not necessary to consider the possible application of W.S. 17"13"405 in this instance because the right to an account described therein is merely supplemental to the right to an account under W.S. 17"13"615. | Trial court did not abuse its discretion in conducting accounting of partnership business without appointment of master, given simple nature of accounting, which involved determination of withdrawing partner's interest in partnership and his right to profits. W.S.1977, § 17-13-615. | Does a partner have a right to a formal accounting when he has been wrongfully excluded from the partnership? | 022696.docx | LEGALEASE-00162249-LEGALEASE-00162250 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | |
| 20573 | Smoot v. Judd, 161 Mo. 673 | 8.30E+10 | 1. The case was tried on the theory that the note was a Missouri contract, and subject to our laws, and that was probably correct, although it was signed by Mrs. Smoot in Kentucky, mailed to her husband here, who signed it, and returned it to Kentucky, where it was delivered to the payee, who was a resident of that state. No place of payment is mentioned in the note, but as the makers lived here, and, so far as the married woman's obligation is concerned, the property charged with its payment being in Missouri, this may be considered as the place intended for the performance of the contract. The law of the place where the contract is to be performed is the law of the contract. That point, however, is not very material in this case, because in 1887 the common"law disability of a married woman to incur a general personal liability by making a promissory note was the law in this state, and, if there was a statute in Kentucky removing such disability, it has not been pleaded or proven. | The law of the place where a contract is to be performed is the law of the contract, and a note signed by a married woman in Kentucky, which was returned to her husband at their home in Missouri, who signed and returned it to Kentucky, where it was delivered to the payee, a resident of that state, is a Missouri contract, no place of payment being mentioned, and the property charged with its payment being in Missouri. | Is the law of the place where the contract is to be performed is the law of the contract? | Bills and Notes - Memo 1298 - RK_66203.docx | ROSS-003309882-ROSS-003309883 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | |
| 20574 | Smoot v. Judd, 161 Mo. 673 | 8.30E+10 | The case was tried on the theory that the note was a Missouri contract, and subject to our laws, and that was probably correct, although it was signed by Mrs. Smoot in Kentucky, mailed to her husband here, who signed it, and returned it to Kentucky, where it was delivered to the payee, who was a resident of that state. No place of payment is mentioned in the note, but as the makers lived here, and, so far as the married woman's obligation is concerned, the property charged with its payment being in Missouri, this may be considered as the place intended for the performance of the contract. The law of the place where the contract is to be performed is the law of the contract. That point, however, is not very material in this case, because in 1887 the common"law disability of a married woman to incur a general personal liability by making a promissory note was the law in this state, and, if there was a statute in Kentucky removing such disability, it has not been pleaded or proven. | The law of the place where a contract is to be performed is the law of the contract, and a note signed by a married woman in Kentucky, which was returned to her husband in Missouri, who signed and returned it to Kentucky, where it was delivered to the payee, a resident of that state, is a Missouri contract, no place of payment being mentioned, and the property charged with its payment being in Missouri. | Is the law of the place where the contract is to be performed the law of the contract? | Bills and Notes - Memo 1302 - RK_66207.docx | ROSS-003306148-ROSS-003306149 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20575 | Shoe & Leather Nat. Bank v. Wood, 142 Mass. 563 | 8.30E+10 | The notes in suit were made in Massachusetts, for it is well settled that the contract of the maker is not complete till the delivery of the notes, and they were delivered in Massachusetts by mail. Where a contract is signed in one state, and received or delivered in another, by mail, the place of contract is the latter state. Chapman v. Cottrell, 13 Wkly.Rep. 843; Lawrence v. Bassett, 5 Allen, 140; Bell v. Packard, 69 Me. 105; Cook v. Moffat, 5 How. 297; Fant v. Miller, 19 Grat. 47; Hart v. Wills, 52 Iowa, 56; S.C. 2 N.W.Rep. 916. The notes were indorsed and discounted in Massachusetts. They were, however, dated at Louisville, Kentucky, and payable at the Kentucky National Bank. It is submitted that the law of Massachusetts, the place where the said notes were delivered and made and indorsed, is to govern these notes. By the law of Massachusetts and the law-merchant, no equities existing between the maker and payes are admissible in a suit against the maker by a bona fide indorsee for value taking before maturity without notice. | In general, commercial paper executed in one state, and made payable in another, is governed by the laws of the state in which it is payable. | Which law controls when a note is signed in one state and delivered in another state? | Bills and Notes - Memo 1303 - RK_66208.docx | ROSS-003281349 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 20576 | Greenlee v. Hardin, 157 Miss. 229 | 8.30E+10 | This court, in a long line of decisions, has held that where a promissory note is executed in one state, payable in another, the parties thereto will be presumed to have contracted with reference to the law of the state of payment; and therefore the nature, validity, interpretation, and effect of the note will be governed thereby. This presumption, however, is not absolute, and will "be controlled by the actual truth of the case, when ascertained; or, in other words, by the intention of the parties, to be collected from the contract itself, and all the surrounding circumstances." Brown v. Freeland, 34 Miss. 181. In that case it was held that where a contract made in one state, to be performed in another, would be valid where made, but void where to be performed, the parties thereto, in the absence of evidence to the contrary, would be presumed to have intended the law of the place of making to govern. This rule was approved in American Freehold Land & Mortgage Co. v. Jefferson, 69 Miss. 770, 12 So. 464, 30 Am. St. Rep. 587; and Commercial Bank v. Auze, 74 Miss. 609, 21 So. 754. | Parties dating note in Florida and making it payable there, in absence of evidence to contrary, "located" contract in Florida and subjected it to laws thereof. | Which will governs when a contract is made in one state and performed in another? | Bills and Notes - Memo 1352 - RK_66255.docx | ROSS-003326297-ROSS-003326298 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 20577 | Certification from the United States Dist. Court for the E. Dist. of Washington in Crossler v. Hille, 136 Wash. 2d 287 | 104+48 | Absent specific authority to the contrary, a board of county commissioners has no authority to interfere with an elected official's hiring decision. Osborn v. Grant County, 130 Wash.2d 615, 623, 926 P.2d 911 (1996). In Osborn, the board of commissioners argued it should have some say in the irresponsible hiring decisions of elected officials and pointed to RCW 36.16.070 to support its argument. The board argued RCW 36.16.070 expressly required the elected official to seek the consent of the Grant County Commissioners before making hiring decisions. We did not agree and held once the board creates and funds the positions, the county officer is the party who names the individuals to fill those positions. Osborn, 130 Wash.2d at 622, 926 P.2d 911; see also Thomas v. Whatcom County, 82 Wash. 113, 124, 143 P. 881 (1914) (once the board has authorized the hiring of deputies in a county office, "the officer in whose office the deputies are to serve, being responsible on his bond for their conduct, has the absolute right to determine the personnel of such deputies...."); Jackson v. Thurston County, 127 Wash. 41, 43 44, 219 P. 840 (1923) (the sheriff, being responsible on his official bond for the acts of his deputies, had the right of appointment). The commissioners have the ability to authorize and fund a position, but this authority does not extend to specific personnel decisions. As we stated, "[i]f an official makes a poor hiring decision, the official is accountable not to the board of commissioners, but to the public." Osborn, 130 Wash.2d at 624, 926 P.2d 911. | Absent specific authority to the contrary, a board of county commissioners has no authority to interfere with an elected official's hiring decision. | Who is an official accountable to when he makes a poor hiring decision? | 013585.docx | LEGALEASE-00164090-LEGALEASE-00164091 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 20578 | Paine, Webber, Jackson & Curtis v. Conaway, 515 F. Supp. 202 | 349B+5.20 | The court agrees with the plaintiff that a commodity futures contract is not a security. See Moody v. Bache & Co., 570 F.2d 523, 525 (5th Cir. 1978); SEC v. Continental Commodities Corp., 497 F.2d 516, 520 n.9 (5th Cir. 1974). Further, "(a) commodity future contract is no more or less than an option; the purchaser agrees to take delivery, or the seller agrees to make delivery, of a specified quantity of a specified commodity at a specified future time at a specified price." Moody v. Bache & Co., 570 F.2d at 526, quoting McCurnin v. Kohlmeyer & Co., 340 F.Supp. 1338, 1341 P.2d 911. | A commodity futures contract is not a security, but contract for future purchase or sale of Treasury bill is covered by Rule 10b-5 of the Securities and Exchange Commission, and thus fact that underlying commodity was a Treasury bill, itself a security, precluded summary judgment on customer's counterclaim asserting that dealer recklessly or with intent to deceive made misrepresentations and omissions in connection with sale of Treasury bill futures contracts, in violation of Rule 10b-5. | Is a commodity futures contract a security? | Commodity Futures Trading Regulation - Memo 6 - C - JL_67117.docx | ROSS-003280735-ROSS-003280736 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 20579 | State v. State Bd. of Assessors, 65 N.J.L. 516 | 371+2346 | It is, therefore, a purely educational association, and falls directly within the proviso of the act under color of which the imposition has been made. The learned attorney general asks us to read into this proviso a limitation that it shall not extend to associations conducted for the private benefit of stockholders; but we are referred to no authority, and can find none, for such judicial legislation. The proviso excepts charitable or educational associations. No fair interpretation can limit it to such associations as are purely charitable. It has already been settled that the general exemption from taxation of school houses, given by the general tax act (Revision, p. 1152), is not destroyed by the fact that the school may be conducted for private gain. Englewood School v. Chamberlain, 55 N. J. Law, 292, 26 Atl. 913. We must give like effect to the plain language of the statute sub judice | A purely educational association is not subject to assessment under "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof," approved April 18, 1884, and its supplements, 3 Gen.St. p. 3335 et seq., N.J.S.A. 54:13-1 to 15, 54:14-1 to 6, although formed under the general corporation act, with capital stock, and conducted for the private benefit of the stockholders. | Does the general tax act give a general exemption from taxation to school houses? | 017155.docx | LEGALEASE-00164134-LEGALEASE-00164135 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20580 | Quandt v. Quandt, No. 288864, 2010 WL 1565562 | 134+919(3) | In reviewing the trial court's distribution of the Avoca and Hough Road properties we note that these parcels were not addressed or even acknowledged to exist in the judgment of separate maintenance. Technically, the distribution of the sale proceeds from the Hough Road property is rendered moot as one-half of the net proceeds of plaintiff's share of this property was directly paid to defendant at the time of sale in 2005 and plaintiff did not seek legal intervention at that time. With reference to the Avoca property, it is undisputed the parcel was obtained during the marriage and before entry of the judgment of separate maintenance. While the original intent was to develop this property into a trailer park, those plans were abandoned and the parcel remains vacant. As this property is a marital asset, having been acquired during the term of the parties' marriage, the failure to include it within the separate maintenance agreement supports the trial court's award of one-half interest of plaintiff's share of the property to defendant as silence does not constitute a waiver. As defined by our Supreme Court in Kelly v. Allegan Co. Circuit Judge, 382 Mich. 425, 427, 619 N.W.2d 916 (1969), "[a] true waiver is an intentional, voluntary act and cannot arise by implication. It has been defined as the voluntary relinquishment of a known right." In other words, "conduct that does not express any intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence." Moore v. First Security Cas. Co., 224 Mich.App. 370, 376, 568 N.W.2d 841 (1997). Because these properties were not contained in the judgment of separate maintenance and were marital assets, the trial court properly distributed these parcels on an equitable basis. Plaintiff, by failing to raise a specific argument or provide any evidence regarding the appreciation of these properties during the parties' separation or the lack of defendant's contribution to such | The trial court did not err in the distribution of real property through the judgment of divorce, despite husband's contention that it was not consistent with the terms of a separate maintenance. The parcels were not addressed or even acknowledged to exist in the judgment of separate maintenance. Further, the distribution of the sale proceeds from one of the properties was directly paid to wife at the time of sale, five years prior, and husband did not seek legal intervention at the time. | Is conduct that does not express any intent to relinquish a known right a waiver? | Estoppel - Memo 283 - CSS_66555.docx | ROSS-003294422-ROSS-003294423 | Condensed, SA, Sub | 0.76 | 0 | 1 | | 1 | 1 |
| 20581 | Hawthorne v. State, 58 Miss. 778 | 203+941 | In the first case found in our reports involving an interpretation of the act of 1839 with respect to murder (McDaniel v. The State, 8 Smed. & M. 401), it was held that every homicide is presumed to be committed with malice aforethought, and that the words "premeditated design" are the same in legal effect as the words "malice aforethought," and that the law presumes malice from the use of a deadly weapon; and that these presumptions, if unopposed, may amount to full proof, and that they stand until a contrary and stronger presumption is raised by the evidence. | A charge, upon a trial for murder, stating in effect that, if the homicide is proved under certain circumstances, the law presumes murder, and that it devolves upon the accused to show circumstances excusing his act, was erroneous; it not being coupled with the charge that such circumstances might be made to appear by the evidence introduced by the state, as well as by that introduced by the accused. | Is malice aforethought equivalent to premeditated design or deliberate design? | 019414.docx | LEGALEASE-00164042-LEGALEASE-00164043 | Condensed, SA, Sub | 0.29 | 0 | 1 | | 1 | 1 |
| 20582 | Edelstein v. Goldstein, 2011 WL 721490 | 46H+565 | The economic loss doctrine provides that "where an action is based entirely on a breach of the terms of a contract between the parties and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." While some exceptions to the economic loss doctrine have been recognized, none are applicable here. Similarly, Delaware courts have recognized that, in the context of legal malpractice, a claimant cannot assert both negligence and breach of contract claims based on the same conduct because tort claims and breach of contract claims are not alternative theories of recovery for the same acts. | The law firm that was hired by client to work on a legal matter concerning his late parents' estate did not commit professional negligence during its representation of client. Client alleged that law firm failed to prepare for trial, disregarded client's instructions, and settled client's case for less than it was worth, but client failed to present the expert testimony required to establish the applicable standard of care and law firm's breach of that standard. Client failed to offer concrete information about his proffered expert witness's professional experience to show that the proffered expert was qualified to render an opinion regarding the adequacy of law firm's performance of its duties to client. | "In the context of legal malpractice, can a claimant assert both negligence and breach of contract claims based on the same conduct?" | 006387.docx | LEGALEASE-00164981-LEGALEASE-00164982 | Condensed, SA, Sub | 0.1 | 0 | 1 | | 1 | 1 |
| 20583 | Oblix v. Winiecki, 374 F.3d 488 | 25T+146 | Standard-form agreements are a fact of life, and given " 2 of the Federal Arbitration Act, 9 U.S.C. " 2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals. See, e.g., Carbajal v. H & R Block Tax Services, Inc., 372 F.3d 903 (7th Cir. June 24, 2004); Metro East Center for Conditioning and Health v. Qwest Communications International, Inc., 294 F.3d 924 (7th Cir 2002); Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361 (7th Cir 1999); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir.1997). Agreements to arbitrate employment-related subjects, including claims of employment discrimination, are treated the same for this purpose as agreements to arbitrate labor-relations matters, building leases, disputes about patent royalties, and controversies among participants in reinsurance treaties. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). | Arbitration clauses in employment contract were sufficiently broad to cover disputes about payment allegedly due and discriminatory discharge in violation of Title VII; one section of contract provided for arbitration of "any dispute or controversy arising out of or relating to...the amount of salary compensation, severance, or other similar amount owing," and another section calling for arbitration of any dispute or controversy "arising out of or relating to" employment agreement picked up employee's contention that her discharge was discriminatory. Civil Rights Act of 1964, S 701 et seq., 42 U.S.C.A. S 2000e et seq. | Are agreements to arbitrate employment issues treated the same as agreements to arbitrate labor-relations matters? | 008043.docx | LEGALEASE-00165010-LEGALEASE-00165011 | Condensed, SA, Sub | 0.41 | 0 | 1 | | 1 | 1 |
| 20584 | Holden v. Deloitte & Touche LLP, 390 F. Supp. 2d 752 | 170B+3053 | As Judge Gettleman alluded, numerous federal decisions have permitted third-party beneficiaries to enforce arbitration clauses. See, e.g., Collins v. Int'l Dairy Queen, Inc., 2 F.Supp.2d 1465, 1468, 1471 (M.D.Ga.1998); KMart Corp. v. Balfour Beatty, Inc., 994 F.Supp. 634, 635°37 (D.Vi.1998). In MS Dealer, the Eleventh Circuit stated that nonsignatories to a contract are allowed to compel arbitration "when the parties to a contract together agree ... to confer certain benefits thereunder upon a third party, affording that third party right of action against them under the contract." 177 F.3d at 947 (citation omitted). | Federal law, rather than state law, applied to question as to whether nonsignatory could compel a signatory party to arbitrate. | When can nonsignatories to a contract compel arbitration? | 008068.docx | LEGALEASE-00165034-LEGALEASE-00165035 | Condensed, SA, Sub | 0.8 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 20585 | Envtl. Barrier Co. v. Slurry Sys., 540 F.3d 598 | 25T+198 | That is the sense in which standing to arbitrate should be understood: is the petitioner a proper party to raise a particular claim in the arbitration? This explains why courts have not hesitated to hold that standing is a matter for the arbitrator to resolve, even though (as we note in a moment) arbitrability is usually an issue for the court. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-58, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Cfr. Typographical Union No. 16 v. Chi. Sun-Times, Inc., 860 F.2d 1420, 1424 (7th Cir.1988) ("Procedural issues, including the standing of a party to the arbitration, ... are for the arbitrator, so long as the subject matter of the dispute is within the arbitration clause.") (emphasis omitted); United Steelworkers of Am., AFL-CIO-CLC v. Smoke-Craft, Inc., 652 F.2d 1356, 1360 (9th Cir.1981) ("Whether the Steelworkers had standing as a party to the arbitration to proceed with that arbitration, which had been properly commenced, was a procedural matter for the determination of the arbitrator."). SSI submitted the standing question to the arbitrator on its own initiative, and it was proper for the arbitrator to decide it. Focusing particularly on standing, the district court noted that "SSI's ... objection to EBC's standing to enforce the arbitration clause relates to EBC's alleged breach of other contract provisions." Reiterating that this kind of issue is for the arbitrator, the court found that "[t]he arbitrator's conclusion ... is thus subject to deferential review, which it easily survives." | Standing is matter for arbitrator to resolve. | Is standing to arbitrate a matter for the arbitrator to resolve? | 008070.docx | LEGALEASE-00165026-LEGALEASE-00165027 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 20586 | In re Advisory Opinion of The Governor, 334 So.2d 561 | 284+21 | No aspect of clemency powers exists by virtue of a legislative enactment, and none could. These powers are "derived" solely from the Constitution. The exclusivity of the exercise of clemency powers by the executive branch is further buttressed in the area under consideration by the procedural requirements of the Constitution itself. When that document sufficiently prescribes rules for the manner of exercise, legislative intervention into the manner of exercise is unwarranted. That is the situation here. | Governor's clemency powers are derived solely from the Constitution. West's F.S.A.Const. art. 4, § 8. | Where are clemency powers derived from? | Pardon and Parole - Memo 4 - RK_67519.docx | ROSS-003319171-ROSS-003319172 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20587 | State v. Dick, 951 So. 2d 124 | 284+21 | The governor has exclusive authority over matters of clemency pursuant to Article IV, " 5(E). Bosworth, 627 So.2d at 632. The power to commute sentences is an incident of the power to pardon, constitutionally vested in the governor. State v. Chase, 329 So.2d 434, 437 (La.1976). Were we to adopt the defendants' contention that La.Rev.Stat. 15:308 provides authority for sentencing courts to reduce the defendants' sentences after they became final, this would, in effect, allow the judiciary to exercise the power of commutation, a power constitutionally reserved exclusively to the executive branch. The legislature, enacting the statute with deliberation and cognizant of these constitutional articles, did not intend nor did it provide for these offenders to have their final sentences reduced by the courts. | The Governor has exclusive constitutional authority over matters of clemency. LSA-Const. Art. 4, § 5(E). | Is the governors power to grant clemency exclusive? | 021784.docx | LEGALEASE-00164916-LEGALEASE-00164917 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 20588 | Keane v. Local Boundary Comm'n, 893 P.2d 1239 | 371+3633 | We have stated that the "public purpose" concept in this provision is not capable of precise definition. Wright v. City of Palmer, 468 P.2d 326, 330 (Alaska 1970); Walker v. Alaska State Mortgage Ass'n, 416 P.2d 245, 251 (Alaska 1966); DeArmond v. Alaska State Dev. Corp., 376 P.2d 717, 721 (Alaska 1962). Under even the broadest of definitions, however, I have difficulty finding any legitimate public purpose in locating the meeting in Hawaii. The use of the dues mandatorily paid by ABA members, which I agree with Justice Dimond constitute public monies, to hold the meeting outside Alaska seems to me to be clearly prohibited by Article IX, Sec. 6 of the Alaska Constitution. | Use of revenue from sales and use tax on fish to establish savings account for future public purposes was "public purpose," within meaning of constitutional provision stating that no tax shall be levied except for public purpose; therefore, sales and use tax on fish had "public purpose." Const. Art. 9, § 6. | "Can the phrase public purpose within the meaning of taxation, be given a precise definition?" | Taxation - Memo 1229 - C -JL.docx | LEGALEASE-00054705-LEGALEASE-00054706 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 20589 | People ex rel. Detroit & H.R. Co. v. Salem Twp. Bd., 20 Mich. 452 | 268+963 | This legislation cannot be sustained under the taxing power. There is no power in the State to authorize a tax for private purposes. Taxes can only be levied for public purposes or to accomplish some government end.— Cooley Const. Lim., 487, 211, 212; Hansen v. Vernon, 27 Iowa; 3 Western Jurise. 145; 21 Pa. St. 168; 22 Wis., 666-7; 31 Pa. St., 189; 39 Pa. St., 82; 21 Pa. St., 169. | The power of the legislature to authorize a municipal corporation to tax the inhabitants in aid of the construction of local improvements or public works is limited to taxes in aid of purposes of a strictly public character; i.e., to objects for which, by settled usage, government is expected to make provision, rather than to those which are usually left to private enterprise. The power should not be exercised in aid of the construction of a railroad to be owned and operated by a private corporation, although such road may facilitate travel to or within the limits of the municipal corporation. | Can any tax be imposed for a private purpose? | 046423.docx | LEGALEASE-00164951-LEGALEASE-00164952 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 20590 | Ortega v. Salt Lake Wet Wash Laundry, 108 Utah 1 | 413+186 | The optional group includes employers of agricultural and domestic laborers and employers having less than three persons regularly employed. The mandatory group includes the state and each county, city, town, and school district therein, and every person, firm, or corporation having in service three or more employees regularly employed, except the optional groups. As far as the "employee" is concerned, the term is broad enough to cover all employment relationships. | The term "employer" in the Compensation Act is broad enough to cover all employment relationships. Utah Code 1943, 42-1-1 et seq., 42-1-40. | What does the term employer encompass? | 048577.docx | LEGALEASE-00164661-LEGALEASE-00164662 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 20591 | Hollowell v. N. Carolina Dep't of Conservation & Dev., 206 N.C. 206 | 413+238 | Again, in Re Moore (Ind. App.) 187 N. E. 219, a laborer, injured while working in a furnace room of the State Teachers' College without expecting pay from said college and under an arrangement existing between the college, unemployment relief agencies, and township trustee for furnishing unemployed men to the college without cost, was held not to be an "employee," nor was the college, the relief agencies, or the trustee, an "employer," within the meaning of the Indiana Workmen's Compensation Act. | Employee's right to demand pay for his services from employer is essential to his right to compensation in case of injury sustained by accident arising out of and in course of employment; "employee" being one who works for another for wages or salary (Pub.Laws 1929, c. 120, § 2). | "If there is no expectation of pay, are you an employee under the Compensation Act?" | 048814.docx | LEGALEASE-00164717-LEGALEASE-00164718 | Condensed, Order, SA, Sub | 0.43 | 1 | 1 | 1 | 1 | 1 |
| 20592 | In re Gateway Ethanol, 415 B.R. 486 | 349A+10 | Third, the Court rejects Dougherty's argument that a disguised sale is present because the TO/Boiler was specially designed for the Gateway ethanol plant. Although custom designed equipment may be indicative of a sale, in this case the evidence convinces the Court that the common features of the TO/Boiler predominate over those which are unique to the Lurgi installation. The testimony of the President of IPE establishes that the equipment after removal would be useful in other situations. | Under Illinois law, custom-designed equipment may be indicative of a sale, for purposes of determining whether an agreement is a true lease or a disguised sale/security agreement. S.H.A. 810 ILCS 5/1-201(37) (2005). | Can a custom-designed equipment be indicative of a sale? | 042774.docx | LEGALEASE-00165950-LEGALEASE-00165951 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20593 | Thornton v. W. & S. Fin. Grp. Benefiex Plan, 797 F. Supp. 2d 796 | 241+14 | Under Kentucky law, "[a] breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty arising independently of any contractual duties between the parties, however, may support a tort action." | Under Kentucky law, former employee's claims against employer for violation of Kentucky Wage and Hour Act and breach of fiduciary duty "related to" his employment, as required for application of provision in employment agreement that required claims relating to employment to be brought within six months of employee's termination; employee alleged that employer violated Act and breached duty by failing to pay employee's retention incentive benefits within 14 days of termination, and both claims thus related to employer's decision to deny wages or compensation. KRS 337.055. | Should a breach of a duty which arises under the provisions of a contract between the parties be redressed under contract? | Action - Memo 943 - C_1Vh1gOn0krGivvxKo_GBHVsctzO38bke.docx | ROSS-000000021 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 20594 | Valenzuela v. ADT Sec. Servs., 820 F. Supp. 2d 1061 | 170A+2492 | Furthermore, it is well recognized in California that " "courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." " Erlich v. Meneses, 21 Cal.4th 543, 551, 87 Cal.Rptr.2d 886, 981 P.2d 978 (1999), citing Freeman & Mills v. Belcher Oil Company, 11 Cal.4th 85, 107, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995). The failure to perform a contractual obligation is never a tort unless it constitutes a failure to perform an independent legal duty. Id. at 551, 87 Cal.Rptr.2d 886, 981 P.2d 978. Whether a defendant owes a duty of care arising from a source outside of the parties' contract is a question of law. The mere negligent breach of a contract is insufficient to give rise to tort damages. See id. at 552, 87 Cal.Rptr.2d 886, 981 P.2d 978. While California courts have recognized tortious breach of contract claims in the insurance contract context, the "insurance cases represent "a major departure from traditional principles of contract law" " and "any claim for automatic extension of that exceptional approach ... should be carefully considered." Id. at 553, 87 Cal.Rptr.2d 886, 981 P.2d 978. | Genuine issue of material fact existed as to whether security services company's breach of contract caused damages suffered by jewelry store owners, precluding summary judgment in owner's breach of contract claim under California law. | Is whether a defendant owes a duty of care arising from a source outside of parties' contract a question of law? | Action - Memo 965 - C_1Pb5vtV_wwiia8nf_uO_r6Lm-wSpQ_dn0p.docx | ROSS-000000055-ROSS-000000056 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 20595 | Wells Fargo Bank, N.A. v. Barber, 85 F. Supp. 3d 1308 | 186+8 | When confronted with a "true" conflict-of-laws question, a federal court sitting in diversity must apply the forum state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "As a preliminary matter, the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc." Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir.2007). Once the legal issue has been characterized, the court applies the choice of law rules that the forum state applies to that category. Id. | Under Florida law, in determining whether a debtor's transfer is fraudulent as to her creditor under Florida Uniform Fraudulent Transfer Act (FUFTA), court may consider any factor it deems relevant and should look to the totality of the circumstances determining actual fraud. West's F.S.A. § 726.101 et seq. | In determining a choice of law question, as a preliminary matter, should a court characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc.? | Action - Memo 971 - C_1haDzKFer3B_XGgdYt6_NM2Xbv-B5sUC-.docx | ROSS-000000067-ROSS-000000068 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 20596 | Mallen v. Merrill Lynch, Pierce, Fenner & Smith Inc., 605 F. Supp. 1105 | 83H+72 | First, some legislators made clear their desire that pending investigations by the SEC of abuses not previously under the CFTC's jurisdiction and pending court proceedings should continue unabated. Johnson at 7; Van Wart at 689. The fear that the enactment of the amendment would affect pending proceedings proved well-founded. One court subsequently found that the SEC was stripped of standing to file suit based on violations uncovered in an investigation which was pending when the 1974 amendments were enacted. SEC v. Univest, Inc., 405 F.Supp. 1057 (N.D.Ill.1975). One state held that suits brought under securities laws for a commodities transaction were made moot, even if the suit was in the appeals process when the amendments were enacted. See Clayton Brokerage Co. v. Mouser, 531 S.W.2d 805 (Tex.1975); State v. Monex Int'l, Ltd., 527 S.W.2d 804 (Tex.Civ.App.1975). | Savings clause for federal and state court jurisdiction provided in Commodity Exchange Act was meant to protect pending Securities and Exchange Commission investigations and on-going court proceedings, to protect state court jurisdiction over contracts claims which formed basis of futures contract, to protect federal court jurisdiction over antitrust claims, and to preserve private causes of action in federal courts under commodities law, however, savings clause does not preserve private cause of action under federal securities statutes when underlying transaction is clearly "commodity"; declining to follow Westlake v. Abrams, 504 F.Supp. 337; Taylor v. Bear Stearns & Co., 572 F.Supp. 667. | Did the 1974 amendment to Commodity Exchange Act strip the Security Exchange Commission of standing to file suit based on violation of Commodity Exchange Act? | 013654.docx | LEGALEASE-00167001-LEGALEASE-00167002 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 20597 | In re Bevis Co., 201 B.R. 923 | 349A+10 | Because 552 (b) establishes the rights of secured creditors like North Side to continue their interests post-petition, the existence of North Side interest in the proceeds of the equipment turns on whether the debtor was owner or lessee of the equipment. The designation on the agreement as a "lease" is not determinative of the question. | For purposes of determining whether transaction was lease or security, designation on the agreement as a "lease" is not determinative; rather, the court looks to state law for guidance on the issue. | Is designation on the agreement as a ""lease"" not determinative? | 042664.docx | LEGALEASE-00166973-LEGALEASE-00166974 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 20598 | In re Merritt Dredging Co., 839 F.2d 203 | 51+2576.5(2) | Whether a putative lease actually represents a security agreement depends primarily upon the intent of the parties. S.C. Code Ann. " 36-1-201(37). The intent of the parties must be measured by the application of an objective standard to the facts of each case. 1 G. Gilmore, Security Interests in Personal Property " 11.2 at 338 (1965). | Parties to barge charter intended agreement to be security agreement, in that agreement allowed charterer to purchase barge for no additional consideration after twelve monthly "rental" payments, though charterer was not obligated to renew three-month "lease," and thus, under South Carolina law, charterer's trustee in bankruptcy had interest superior to owner, who failed to perfect its interest in barge. S.C.Code 1976, SS 36-9-102(1), 36-9-103(2), 36-9-105(1)(h); Bankr.Code, 11 U.S.C.A. 5544(a)(1). | Does intent of parties govern determination of whether a putative consumer lease represents a security agreement? | 042687.docx | LEGALEASE-00167071-LEGALEASE-00167072 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 20599 | In re Montgomery Ward, 469 B.R. 522 | 51+2834 | Courts have used several factors to analyze the economic realities of a transaction when making a determination regarding the nature of an agreement. A primary indicator of the agreement's nature is how ownership is allocated. Dena Corp., 312 B.R. at 169. An agreement cannot be a true lease where the purported lessor retains no ownership interest in the property at the end of the lease or the economic value of the property was exhausted. Id.; United Air Lines, Inc. v. HSBC Bank USA (In re UAL Corp.), 307 B.R. 618, 632 (Bankr.N.D.Ill.2004) (explaining that true leases revert back to the lessor with substantial value remaining). | Appropriate treatment of claim for lease rejection damages filed against Chapter 11 debtor required bankruptcy court to determine whether purported ground lease and sublease agreement were truly leases or constituted financing arrangement, and therefore bankruptcy court had "related to" jurisdiction, post-plan confirmation, to determine true character of agreements. 11 U.S.C.A. S 365; 28 U.S.C.A. SS 157, 1334(b). | Can an agreement be a true lease where the purported lessor retains no ownership interest in the property at the end of the lease? | 042723.docx | LEGALEASE-00166741-LEGALEASE-00166742 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 20600 | E.R.K. ex rel. R.K. v. Hawaii Dept. of Educ., 728 F.3d 982 | 141E+861 | The IDEA requires states to provide a "free appropriate public education" to all children with disabilities residing in the state "between the ages of 3 and 21, inclusive 20 U.S.C. " 1412(a)(1)(A). As a result, a student's eligibility for IDEA services ordinarily ends on his twenty-second birthday. See L.A. Unified Sch. Dist. v. Garcia, 669 F.3d 956, 959 (9th Cir.2012). The statute creates an exception to the age limit, however. A state's duty to provide special education to children with disabilities does not extend to children aged 3 through 5 or 18 through 21 "to the extent that [the duty's] application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges." 20 U.S.C. " 1412(a)(1)(B)(i). | Hawaii statute that barred both general-education students and students who received special education services under IDEA from attending public school after the last day of school year in which they turned 20 violated IDEA, since it denied public education to special-needs students aged 20 to 21 while offering it, in form of Community Schools for Adults, to students without special needs. Individuals with Disabilities Education Act, SS 602(9, 27), 612(a)(1)(B)(i), 20 U.S.C.A. SS 1401(9), 1401(27), 1412(a)(1)(B)(i); HRS S 302A-1134(c). | Is there an age bar to provide FAPE under IDEA? | 017333.docx | LEGALEASE-00167330-LEGALEASE-00167331 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20601 | Henry v. Com., 63 Va. App. 30 | 181+9 | However, "[w]here the "falsity lies in the representation of facts, not in the genuineness of execution," it is not forgery." Gilbert v. United States, 370 U.S. 650, 658, 82 S.Ct. 1399, 1404, 8 L.Ed.2d 750 (1962) (quoting Marteney v. United States, 216 F.2d 760, 763"64 (10th Cir.1954)).Furthermore, "[f]orgery is a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. Though a forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document."3 Wayne R. LaFave, Substantive Criminal Law " 19.7(j)(5) (2d ed.2003) (footnotes omitted). | In order for defendant's conviction for forgery of a public record to be upheld, with respect to false information provided by defendant to court clerk which was incorporated into financial documents to determine defendant's eligibility for indigent defense services, the Commonwealth was required to prove that defendant's conduct with respect to the financial statements altered the genuineness and authenticity of those documents, making them not in fact what they purported to be. West's V.C.A. § 18.2-168. | Is falsity in the representation of the facts alone a forgery? | 04796.docx | LEGALEASE-00077086-LEGALEASE-00077088 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 20602 | Hill v. Cross Country Settlements, 402 Md. 281 | 366+1 | Subrogation and unjust enrichment are related legal theories and share many overlapping legal principles. We previously described the relationship between subrogation and unjust enrichment: ""the object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one, who, injustice, equity, and good conscience, should pay it. It is an appropriate means of preventing unjust enrichment."" Podgurski v. OneBeacon Ins. Co., 374 Md. 133, 141, 821 A.2d 400, 405 (2003) (quoting 10 S. Williston, A Treatise on the Law of Contracts 1265 (Walter. H.E. Jaeger 3d ed.1957)). | Subrogation is also a remedy invoked by courts to prevent unjust enrichment, and for this purpose it is appropriate in any case where restitution is warranted and the remedy can be given without working injustice. | Is the object of equitable subrogation the prevention of injustice? | Subrogation - Memo 127 - VP C.docx | ROSS-003285405-ROSS-003285407 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | 1 |
| 20603 | Sands v. Andino, 404 Pa. Super. 238 | 217+2792 | Aside from her mention of time and judicial resources, appellant is unable to identify any other public policy which would be undermined by the enforcement of the consent clause. Although no case has previously addressed this subject, we find that the consent clause furthers, rather than violates public policy. First, we note that appellant seeks to apply the judgment against appellee, who was not a party to the judgment and who did not have notice of the litigation or an opportunity to participate therein. As appellee correctly observes, such a result would be inimical to appellee's due process rights. At a minimum, due process requires that parties be accorded notice and an opportunity to be heard, and these rights "must be granted at a meaningful time and in a meaningful manner." Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 569 (1972). Enforcement of the judgment against appellee, who had neither notice or an opportunity to be heard, would thus deprive appellee its right to due process. | Consent to be bound provision in automobile policy furthered, rather than violated, public policy; enforcement of judgment against an insurer who had neither notice nor opportunity to be heard would deprive insurer of right to due process and be contrary to law of Commonwealth. 40 P.S. § 2000(e)(2); U.S.C.A. Const.Amends. 5, 14. | What are the fundamental components of due process? | 10826.docx | LEGALEASE-00089253-LEGALEASE-00089255 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 20604 | Elliott v. Navistar, 65 So. 3d 379 | 150+87(2) | The plaintiffs' final argument is that the trial court erred in concluding that their claims against the bus companies should be barred by the doctrine of laches. " 'Laches' is defined as neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar." Ex parte Grubbs, 542 So.2d 927, 928 (Ala.1989) (citing Black's Law Dictionary 787 (5th ed.1979)). It is an equitable doctrine applied by the courts to prevent a party that has delayed asserting a claim to assert that claim after some change in conditions has occurred that would make belated enforcement of the claim unjust. Ex parte Grubbs, 542 So.2d at 929. A party asserting laches as a defense is generally required to show that the plaintiff has delayed in asserting a claim, that that delay is inexcusable, and that the delay has caused the party asserting the defense undue prejudice. Id. The plaintiffs argue that laches cannot bar a claim if the statute of limitations has not yet run on that claim; they also argue that, regardless, they did not delay in asserting their claims against the bus companies and that, even if this Court were to find that they had delayed, there is no evidence indicating that the bus companies were unduly prejudiced by any such delay. The bus companies argue that the doctrine of laches may bar a claim even if the statute of limitations has not expired and that the plaintiffs did in fact delay in asserting their claims and that that delay has caused the bus companies undue prejudice. The bus companies have cited numerous cases in support of their argument that the doctrine of laches should be applied in this case, regardless of whether the statute of limitations has run, see Multer v. Multer, 280 Ala. 458, 463, 195 So.2d 105, 109 (1966), Alabama Cablevision Co. v. League, 416 So.2d 433, 435 (Ala.Civ.App.1982), and United States of America v. Olin Corp., 606 F.Supp. 1301, 1309 | Doctrine of laches did not bar action by parents of school-bus passengers, and guardians and next friends of passengers, against bus companies arising from injuries suffered by passengers in bus accident, where action involved a claim for money damages subject to a statute of limitations and statute of limitations had not yet run on claims. | "Where the issue involved in litigation is a legal one, is the statute of limitations applicable and the defense of laches may not be interposed?" | 01664.docx | LEGALEASE-00092031-LEGALEASE-00092033 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20605 | People v. Creegan, 121 Cal. 554 | 110+1159.5 | The connection of Creegan with the forgery depends upon the testimony of Seaver and McCosta. Seaver was, by his own admission, an accomplice, and, in order to permit his testimony to be considered by the jury, it was necessary to have other evidence which, in itself, without the testimony of Seaver, tended to connect Creegan with the commission of the crime. Section 1111 of the Penal Code is as follows: "A conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence which, in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." The testimony of McCosta is the link in the chain of evidence by which the prosecution sought to show that Creegan was implicated in the forgery, and to make the testimony of Seaver available against him. But, if McCosta was also an accomplice, the jury would be required to disregard his testimony, equally with that of Seaver. Whether he was an accomplice was therefore a vital fact to be determined by the jury. The relation which it was shown he bore to the transaction was such as to authorize the defendants to claim that he was particeps criminis, and the prosecution vigorously sought to resist this claim, and the jury were instructed by the court in accordance with the above provisions of section 1111 of the Penal Code. It must be assumed from the verdict that, upon the evidence before them, the jury found that he was not an accomplice, and if this evidence was properly received their verdict must be accepted as conclusive of the fact. | Where the only corroborating evidence given under Pen.Code, § 1111, requiring the testimony of an accomplice to be corroborated, was by a witness claimed to be also an accomplice, the question whether he was such was for the jury, and its verdict, from which it must be assumed (defendant being found guilty) that he was found not to be an accomplice, is conclusive of that fact, if the evidence thereon was properly received. | Is the question whether a person was an accomplice determined by the jury? | 01687.docx | LEGALEASE-00092072-LEGALEASE-00092075 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | | |
| 20606 | Trice v. Bridgewater, 51 S.W.2d 797 | 50+35 | Appellants present assignments of error in which they contend that appellee should not have been permitted to recover for injuries to the automobile he was driving at the time of the collision because same did not belong to him. Appellee alleged that while he did not own said car at the time of collision, he had custody and control thereof and was required to have the same repaired and did so. He testified that the car belonged to his brother, but that he personally paid for the repair of the same. Appellee being the bailee of said car at the time it was injured, had a right to sue and recover herein for the damage resulting from such injury. He was responsible to the owner for such damage and apparently conceded such liability by personally paying for the necessary repairs. Waggoner v. Snody, 98 Tex. 512, 516, 85 S. W. 1134; Panhandle & S. F. Ry. Co. v. Jackson (Tex. Civ. App.) 8 S.W.(2d) 256, 257, par. 4; 5 Tex. Jur. p. 1032, § 22, and authorities cited in the several notes thereto. | Bailee of automobile at time of injury may sue for damage resulting from injury. | Does a bailee have a right to sue? | 004947.docx | LEGALEASE-00117078-LEGALEASE-00117080 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 20607 | Mix v. McCoy, 22 Mo. App. 488 | 237+111 | In my judgment, drunkenness is not mitigation in an action of slander; if not, it was properly excluded, whether pleaded or not. | In an action for slander, evidence of drunkenness is not admissible to rebut the presumption of malice and mitigate damages. | Is drunkenness a mitigating circumstance in an action for slander? | Libel and Slander - Memo 202 - BP.docx | ROSS-003284433-ROSS-003284434 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 20608 | Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809 | 25T+143 | Defendants cite Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir.1959). In that case, the court held that fraud in the inducement of the agreement is arbitrable. The arbitration clause in that case stated, in pertinent part: Any complaint, controversy or question which may arise with respect to this contract that cannot be settled by the parties thereto. Id. at 404, 411 and 412. The court added, "It would be hard to imagine an arbitration clause having greater scope than the one before us." Id. at 412. | Claim of fraud in the inducement of a settlement agreement fell within scope of arbitration clause that provided for arbitration of any issue "believed to constitute a breach or violation" of the agreement. | Is fraud in the inducement of an agreement arbitrable? | 007207.docx | LEGALEASE-00127386-LEGALEASE-00127387 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | | |
| 20609 | State v. Thomson, 71 Wash. App. 634 | 67+9(0.5) | One kind of felonious conduct is felonious entry. Felonious entry is entry that is burglarious, as opposed to entry that is lawful or trespassory. RCW 9A.52.020-.030; RCW 9A.52.070-.080. | "Felonious entry" is entry that is burglarious, as opposed to entry that is lawful or trespassory. West's RCWA 9A.52.020-9A.52.030, 9A.52.070-9A.52.080. | What constitutes felonious entry? | Burglary - Memo 80 - JK.docx | ROSS-003312762-ROSS-003312763 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 20610 | United States v. Brocksmith, 991 F.2d 1363 | 110+1130(5) | Brocksmith raises sixteen different arguments on appeal, some containing as many as eight subparts. He challenges the sufficiency of the evidence on all counts and the length of his sentence, objects to five witnesses' testimony, claims his trial attorney was ineffective and should have been disqualified, alleges prejudicial comments and ex parte communications by the district judge, and criticizes the jury instructions and voir dire questions. Many of these arguments were not made before the district court, are barely a page long in Brocksmith's oversized brief, and are wholly unsupported with case authority. Counsel bears responsibility for narrowing the issues presented on appeal from the entire universe of possible objections to the proceedings below to the small set of arguments that offer a legitimate chance for success. A client is disserved when the most meritorious arguments are drowned in a sea of words. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.) (quoting Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.)), cert. denied, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991). Undeveloped and unsupported claims are waived. See id. | Undeveloped and unsupported claims are waived on appeal. | Are undeveloped and unsupported claims waived? | Adulteration- Memo 15- VP.docx | ROSS-003317237-ROSS-003317238 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 20611 | Satarino v. A.G. Edwards & Sons, 941 F. Supp. 609 | 25T+421 | In Rojas v. TK Communications, Inc., 87 F.3d 745 (5th Cir.1996), the Fifth Circuit held that a discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. " 2000e et seq., was subject to compulsory arbitration. Id. at 748. The employee-plaintiff signed an employment agreement that provided, with exceptions not pertinent here, that "any action contesting the validity of this Agreement, the enforcement of its financial terms, or other disputes shall be submitted to arbitration." Id. at 746 (quoting arbitration clause of employment agreement). The panel held inter alia that the district court had correctly found that the arbitration clause's inclusion of "any other disputes" was sufficiently broad to encompass the plaintiff's Title VII claims. Id. at 748"49. | Trainee broker's ADA and FMLA claims were subject to compulsory arbitration pursuant to training agreement and broker agreement providing that any controversy arising in respect to broker's employment shall be arbitrated and New York Stock Exchange (NYSE) rule mandating arbitration of any controversy between registered representative and any member organization arising out of employment. Family and Medical Leave Act of 1993, 55 2-404, 29 U.S.C.A. 55 2601-2654; Americans with Disabilities Act of 1990, 5 2 et seq., 42 U.S.C.A. 5 12101 et seq. | "Do courts recommend arbitration when arbitration agreement contains the language requiring any action contesting the providing the validity of the Agreement, the enforcement of its financial terms, or any other disputes, submitted to arbitration?" | 007554.docx | LEGALEASE-00135823-LEGALEASE-00135824 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20612 | Gaines v. Fitzgibbons, 168 La. 260 | 83E+418 | "It may be stated as a general rule that a valid equitable assignment of a debt or other chose in action, whether evidenced by writing or not, may be made by parol, and usually it is not important whether an assignment is in writing or by parol." S Corp. Jur. 900 (Assignment, " 65). "As a general rule a valid assignment may be made of a debt or account by a mere delivery, with intent to assign, of a bill or statement of the account." S Corp. Jur. 904 (Assignment, " 70). | Nonnegotiable promissory notes are transferable and assignable by mere delivery. | Are promissory notes transferable by mere delivery? | 009510.docx | LEGALEASE-00140600-LEGALEASE-00140601 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | |
| 20613 | Fox v. Nichter Const. Co., 978 N.E.2d 1171 | 336H+12 | "Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." K.S. v. State, 849 N.E.2d 538, 540 (Ind.2006). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." GKN Co. v. Magness, 744 N.E.2d 397, 400 (Ind.2001). "In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts." Id. | In determining whether to allow the use of collateral estoppel, the trial court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. | "In ruling on a motion to dismiss for lack of subject matter jurisdiction, may a trial court weigh the evidence to determine the existence of the requisite jurisdictional facts?" | 033811.docx | LEGALEASE-00142461-LEGALEASE-00142462 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |
| 20614 | Rocka Fuerta Const. Inc. v. Southwick, 103 So. 3d 1022 | 30+80(3) | An order dismissing a case as a sanction will be upheld absent an abuse of discretion. Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002). However, while trial courts have the inherent authority to dismiss actions based on fraud, that power should be used "cautiously and sparingly," and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrong doing. Granados v. Zehr, 979 So.2d 1155, 1157 (Fla. 5th DCA 2008). In other words, the extreme sanction for a dismissal should be imposed only where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). When reviewing a case for fraud, the court should consider the proper mix of factors and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Because dismissal sounds the "death knell of the lawsuit," courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious. Id.; see Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993). | Contractor's appeal from trial court's award of attorney fees and costs to corporation under statute authorizing such an award as a sanction for raising unsupported claims or defenses was premature, where trial court's order, which also dismissed contractor's lawsuit against corporation, made no determination of the amount of fees to be imposed as a sanction. West's F.S.A. S 57.105. | "Should the extreme sanction of a dismissal be imposed only where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme?" | 034624.docx | LEGALEASE-00144582-LEGALEASE-00144583 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 20615 | Rossman v. Fleet Bank (R.I.) Nat. Ass'n, 280 F.3d 384 | 172H+1344 | We have stated the requirement that disclosures be "reasonably understandable" does not require that they be understandable by the average consumer. Instead, we have said disclosures must be reasonably understandable "in light of the inherent difficulty or complexity of the" information disclosed. Applebaum, 226 F.3d at 220. The appropriate level of difficulty of understanding the disclosure is not an issue here. Instead, the inquiry is into what the disclosures are fairly understood to mean, a question not at issue in Applebaum. In any event, there is nothing complex about annual fees, so the intended audience is the ordinary consumer. | Allegations that credit card issuer solicited card holder's business with offer of credit account having no annual fee while intending to change terms of account shortly after holder's acceptance of offer supported claim that issuer's required disclosures of credit terms were misleading in violation of Truth in Lending Act (TILA), inasmuch as reasonable consumer would expect that stated terms were those that card issuer intended to provide, even if those terms could change. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Is there a requirement that disclosures should be reasonably understandable? | 013712.docx | LEGALEASE-00155728-LEGALEASE-00155729 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 20616 | Friedburgher v. Jaberg, 20 Abb. N. Cas. 279 | 10BH+1174 | But the execution of a general assignment operates practically a dissolution of the firm. It was said in Welles v. March (supra), "An assignment to a trustee of all the funds and effects of the partnership for the benefit of creditors is the exercise of a power without the scope of the partnership enterprise, and amounts of itself to a suspension or dissolution of the partnership itself." If the insanity of the one partner does not directly and ipso facto operate a dissolution of the firm, it does not indirectly have that effect by clothing the other partner with a power to dissolve by making the general assignment. | Where a partner, three days before an assignment of the firm property for the benefit of creditors, transferred firm assets in payment of his individual debt, and selected his creditor as assignee of the firm, the facts were held sufficient to show fraudulent intent. | Does the assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts lead to dissolution of partnership? | 021807.docx | LEGALEASE-00158566-LEGALEASE-00158567 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 20617 | California Serv. Station etc. Assn. v. Union Oil Co., 232 Cal. App. 3d 44 | 29T+270(5) | However, the PMPA strikes a balance between the interests of franchisees in being free from arbitrary and discriminatory terminations, and the franchisors' need to terminate franchises under appropriate circumstances and respond to changing market conditions. (May"Som Gulf, Inc. v. Chevron U.S.A., Inc., supra, 869 F.2d at p. 921; Freeman v. BP Oil, Inc., Gulf Products Div. (11th Cir.1988) 855 F.2d 801, 803.) Under the PMPA there are two types of franchises: the regular franchise described in 15 United States Code section 2801(1), and the trial franchise described in 15 United States Code section 2803(b)(1). In essence, a trial franchise is any franchise wherein the franchisee has not had a prior franchise relationship with the franchisor, and the initial term of which is for a period of not more than one year. (15 U.S.C. " 2803(b)(1)(C).) The good cause requirement for nonrenewal or termination of a regular franchise is not required for terminating a trial franchise. (15 U.S.C. "" 2802, 2803(a)(1); Freeman v. BP Oil, Inc., Gulf Products Div., supra, at p. 802; Esquivel v. Exxon Co., U.S.A. (W.D.Tex.1988) 700 F.Supp. 890, 891.) The only requirement forterminating a trial franchise is that proper notice must be given at the conclusion of the initial term. (15 U.S.C. " 2803(b)(1)(D).) | Retail petroleum products franchisor's policy of permitting "regular franchisees," who had automatic right of renewal and protection from arbitrary termination, from assigning their rights to successor transferee and allowing any such successors to have only a "trial franchise" terminable after one year without cause, violated statute precluding franchisor from withholding consent to assignment of franchise. West's Ann.Cal.Bus. & Prof.Code S 21148(a). | What is the meaning of the term trial franchise? | 018544.docx | LEGALEASE-00159344-LEGALEASE-00159345 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20618 | Hart v. Town of Shafter, 348 Ill. App. 3d 713 | 200+79.2 | Once established, a public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute (see 605 ILCS 5/6-303 (West 2000)) or abandoned. Nonuse of the road, standing alone, is insufficient to establish an abandonment of the highway by the public. Chicago & Eastern Illinois Ry. Co., 353 Ill. at 165"66, 187 N.E. at 157; Feldler v. Crook, 208 Ill.App.3d 1012, 1025, 153 Ill.Dec. 888, 567 N.E.2d 1115, 1124 (1991). Rather, an abandonment will be found only where the public has acquired the legal right to another road or where the necessity for another road has ceased to exist. Chicago & Eastern Illinois Ry. Co., 353 Ill. at 165, 187 N.E. at 157; Yaste v. Rust, 169 Ill.App.3d 800, 803, 120 Ill.Dec. 214, 523 N.E.2d 1125, 1127 (1988). | Nonuse of a road, standing alone, is insufficient to establish an abandonment of the highway by the public. | Can a public highway lose its character as a public road? | 018900.docx | LEGALEASE-00161809-LEGALEASE-00161810 | Condensed, SA | 0.87 | 0 | 1 | | 0 | 1 |
| 20619 | Valdez v. Walck, 2014 WL 1314871 | 307A+587 | The district court has discretion to determine whether to dismiss an action on the basis of inactivity. Summit Elec. Supply Co., Inc. v. Rhodes & Salmon P. C., 2010"NMCA"086, 148 N.M. 590, 241 P.3d 188. On appeal, we review such a decision for abuse of discretion. See id. A district court abuses its discretion when it "exceeds the bounds of reason, all the circumstances before it being considered." Id. (internal quotation marks and citation omitted). There is no particular standard affixed to the satisfaction of the requirement of this rule as each case must be determined on its respective facts and circumstances. See id. | Trial court did not abuse its discretion by dismissing counterclaims of defendant landowner in action by landowner of 95 acres against property owner whose land also adjoined 51 disputed acres to quiet title to the disputed acres and the 95 acres and in which defendant landowner brought counterclaims to quiet title to the disputed land and tort damages for trespass by cattle, assault, harassment, and intentional infliction of emotional duress, where defendant took no action to advance his claims in excess of three years following conclusion of bench trial on equitable claims. NMRA, Rule 1-041(E)(1). | Do courts have discretion in determining whether to dismiss a case for inactivity? | Pretrial Procedure - Memo #8398 - C - KG_59260.docx | ROSS-003280580-ROSS-003280581 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 20620 | United States v. Lourdes Santiago, 194 F. Supp. 2d 82 | 34+40(5) | Military bases are not public fora. See United States v. Albertini, 472 U.S. 675, 686, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). Hence public entry thereto can be barred, as a compelling government interest in maintaining national security at such installations is ever-present. Id. Moreover, our Nation's Founding Fathers specifically saw to it that Congress have the constitutional authority to enact statutes such as 18 U.S.C. ° 1382. See U.S. Const. Art. I Sec. 8 cl. 13"15 ("The Congress shall have Power... To provide and maintain a Navy; to make rules for the Government and Regulation of the land and naval Forces; to provide for calling for the Militia to execute the law of the Union, suppress Insurrections and repel Invasions; to provide for organizing, arming and disciplining the Militia..."). See also U.S. Const. Am. II (recognizing that a well regulated Militia is necessary to the security of a free State). | Military bases are not public fora; hence public entry thereto can be barred. 18 U.S.C.A. § 1382. | Are military bases public fora? | Armed Services - Memo 327 - RK_58600.docx | ROSS-003280803-ROSS-003280804 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 20621 | Reserve Plan v. Schleider, 208 Misc. 805 | 83E+334 | Likewise, in Cartwright v. Gray, 127 N.Y. 92, 99, 27 N.E. 835, 837, 12 L.R.A. 845, the Court of Appeals defined a promissory note in the following terms: "A promissory note is defined to be a written engagement by one person to pay absolutely and unconditionally to another person therein named, or to the bearer, a certain sum of money at a specified time or on demand. Story, Prom.Notes, ° 1; Coolidge v. Ruggles, 15 Mass. 387. It must contain the positive engagement of the maker to pay at a certain definite time, and the agreement to pay must not depend on any contingency, but be absolute, and at all events." | Where note required payment of certain sums in monthly installments, but provided that in case of death of maker, all payments not due at date of death should be cancelled, the note was not a "negotiable instrument" for lack of unconditional promise to pay a sum certain, and defenses of general denial, breach of warranty and breach of agreement lay against holder of note. Negotiable Instruments Law, § 20, subd. 2. | What is a promissory note? | Bills and Notes- Memo 642-IS_58213.docx | ROSS-003283533-ROSS-003283534 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 20622 | In re Celotex Corp., 472 F.3d 1318 | 366+2 | Fibreboard argues that even if the Bankruptcy Code excludes its claim, Florida law entitles it to an equitable subrogation claim. The Florida Supreme Court has held equitable subrogation appropriate where "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla.1999) (emphasis added). "Subrogation ... is not available to a party who pays his own debt." Nova Info. Sys., Inc. v. Greenwich Ins. Co., 365 F.3d 996, 1005 (11th Cir.2004) (citing Dade County Sch. Bd in refusing to allow an equitable subrogation claim by a party which was already contractually obligated to pay the debt). | Under Florida law, subrogation is not available to a party who pays his own debt. | Is subrogation given to one who merely pays his or her own debt? | Subrogation - Memo 210 - RM C.docx | ROSS-003284436-ROSS-003284437 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 20623 | United States v. Jho, 534 F.3d 398 | 354+2 | With the port-based nature of the offense conduct in mind, we now turn to whether international law limits the prosecution of the oil record book counts. "A sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction." Wilson v. Girard, 354 U.S. 524, 529, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957). In Cunard S.S. Co. v. Mellon, the Supreme Court recognized "that the territory subject to [United States'] jurisdiction includes the land areas under its dominion and control, the ports, harbors, bays and other enclosed arms of the sea along its coast and a marginal belt of the sea extending from the coast line outward a marine league, or three geographic miles." 262 U.S. 100, 122, 43 S.Ct. 504, 67 L.Ed. 894 (1923) (emphasis added). [(Further, "[i]t is part of the law of civilized nations that, when a merchant vessel of one country enters the ports of another for the purposes of trade, it subjects itself to the law of the place to which it goes, unless, by treaty or otherwise, the two countries have come to some different understanding."] ) Mali v. Keeper of the Common Jail, 120 U.S. 1, 11, 7 S.Ct. 385, 30 L.Ed. 565 (1887) ("Wildenhus' Case"); see United States v. Diekelman, 92 U.S. 520, 525, 23 L.Ed. 742 (1875) ("The merchant vessels of one country visiting the ports of another for the purpose of trade subject themselves to the laws which govern the port they visit, so long as they remain."); Restatement (Third) of Foreign Relations Law ° 512, reporter's note 5 (1987) (same). A state's exercise of jurisdiction over foreign-flagged ships in its ports is permissive, and a port state may, based on comity concerns, decide not to exercise its jurisdiction. See Widenhus' Case, 120 US. at 12, 7 S.Ct. 385; Thomas J. Schoenbaum, 1 Admiralty and Maritime Law ° 3-12, at 148 (4th Ed.2004). However, the United States has decided to exercise its criminal jurisdiction in this case, | Traditional statement of "law of the flag" doctrine provides that a merchant ship is part of the territory of the country whose flag she flies, and that actions aboard that ship are subject to the laws of the flag state. | "Is merchant vessel entering the ports of another for the purposes of trade, subjects itself to the law of the place to which it goes?" | International Law - Memo # 1027 - C - RY.docx | ROSS-003285161-ROSS-003285163 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20624 | Wolters v. Am. Republic Ins. Co., 149 N.H. 599 | 366+1 | The doctrine of subrogation has its origins in equity. See Dimick v. Lewis, 127 N.H. 141, 145, 497 A.2d 1221 (1985). A party's right to subrogation can arise either by contract, statute, or common law or equitable principles. Moulton v. Groveton Papers Co., 114 N.H. 505, 510, 323 A.2d 906 (1974); see also 16 L. Russ & T. Segalla, Couch on Insurance 3d " 222:6, at 222-27 (2000). | The doctrine of subrogation has its origins in equity. | Does doctrine of subrogation has its origins in equity? | Subrogation - Memo 374 - VP C.docx | ROSS-003282247-ROSS-003286249 | Condensed, SA | 0.86 | 0 | 1 | | 0 | 1 |
| 20625 | E. Gottschalk & Co. v. Cty. of Merced, 196 Cal. App. 3d 1378 | 371+2571 | Many long-term leases do amount to a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest. If we were to hold that long-term leases do not amount to a change of ownership and are not subject to property tax reappraisal, a large loophole would be created allowing in effect a transfer of ownership without reappraisal because the fee was not technically transferred. We do not believe that this was the intent of the voters when the initiative was passed. | Revenue and Taxation Code sections reasonably interpreted "change of ownership," in constitutional article governing property tax reappraisals, to include creation of leasehold interest for term of 35 years or more. West's Ann.Cal.Rev. & T.Code SS 60, 61, 61(c)(1); West's Ann.Cal. Const. Art. 13A, S 2(a). | Do long term leases amount to change of ownership? | Landlord and Tenant - Memo 61 - ANG A.docx | ROSS-003288755-ROSS-003288757 | Condensed, SA, Sub | 0.45 | 0 | | 1 | 1 | 1 |
| 20626 | Prestridge v. Lazar, 132 Miss. 168 | 366+1 | Appellant contends that he was not a volunteer in discharging said mortgages for the purpose of freeing the title to said land. The reason and philosophy of the principle involved should be kept in mind in determining this question. The doctrine of subrogation is "one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice." It does not rest on contract, but upon principles of natural equity. The courts should rather incline to extend than restrict the operation of the doctrine. It applies wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection. Robinson v. Sullivan, 102 Miss. 581, 59 South. 846. | The doctrine of subrogation applies wherever any person other than a mere volunteer pays a debt or demand which in equity or good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where one has such an interest in property as makes it necessary for him to get in an outstanding claim or equity for its protection. | Is the doctrine of subrogation one of equity and benevolence? | Subrogation - Memo 168 - ANG C.docx | ROSS-003295233-ROSS-003295235 | Condensed, SA | 0.6 | 0 | 1 | | 1 | 1 |
| 20627 | Dep't of Revenue v. Young Am. Builders, 358 So. 2d 1096 | 371+2013 | It has wisely been said that the power to tax is the power to destroy. The Department of Revenue has no power to tax. That power is reposed solely in the legislature. A tax sought to be imposed without legislative authority is a nullity. The rule promulgated by the Department of Revenue and struck down by the Summary Final Judgment from whence this review is sought, is without statutory basis in that it seeks to extend the tax far beyond the parameters of the legislative enactment. | Department of Revenue has no power to tax; such power is reposed solely in the Legislature. | Does the department of Revenue have the power to tax? | Taxation - Memo 1339 - C - AAK_68533.docx | ROSS-003295644 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 20628 | People v. Ebert, 401 Ill. App. 3d 958 | 48A+422.1 | A party may file a motion in limine to obtain an order before trial excluding inadmissible evidence. People v. Smith, 248 Ill.App.3d 351, 357, 187 Ill.Dec. 380, 617 N.E.2d 837 (1993). When a motorist files a motion in limine to bar breath test results, the State must establish a sufficient foundation for admission of the evidence. See People v. Kilpatrick, 216 Ill.App.3d 875, 880'81, 159 Ill.Dec. 877, 576 N.E.2d 546 (1991). While the decision to grant or deny a motion in limine is normally left to the discretion of the trial court (People v. Jenkins, 383 Ill.App.3d 978, 988'89, 322 Ill.Dec. 523, 891 N.E.2d 536 (2008)), the question presented here is whether the State laid a legally sufficient foundation for its Breathalyzer evidence by substantially, but not strictly, complying with applicable regulations governing Breathalyzer evidence. That is a question of law, which we will review de novo. See People v. Moore, 207 Ill.2d 68, 75, 278Ill.Dec.36,797N.E.2d631(2003). | When a motorist files a motion in limine to bar breath test results, the State must establish a sufficient foundation for admission of the evidence. | Is the decision to grant or deny a motion in limine left to the discretion of the trial court? | Pretrial Procedure - Memo 567 - RK.docx | ROSS-003299069-ROSS-003299070 | Condensed, SA | 0.85 | 0 | 1 | | 0 | 1 |
| 20629 | Etheridge v. Schlesinger, 362 F. Supp. 198 | 34+1 | Defendants have sought to characterize this policy as "purely discretionary acts of the United States Navy (which) ... must not be interfered with by this Court". Defendants do not, nor indeed could they, seriously argue that said discretionary acts need not be bounded by the Constitution; for it is well-settled, fortunately, that the military is not immune to the provisions of that document. See Burnett v. Tolson, supra, Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970), O'Mara v. Zebrowski, 447 F.2d 1085 (3rd Cir. 1971). | The military is not immune to the provisions of the Constitution. | Is the military immune to the provisions of the constitution? | Armed Forces - Memo 14 - RK.docx | ROSS-003299156-ROSS-003299157 | Condensed, SA | 0.88 | 0 | 1 | | 0 | 1 |
| 20630 | Hawkins Const. Co. v. Peterson Contractors, 970 F. Supp. 2d 945 | 208+67 | Hawkins likewise argues that its complaint is sufficient to state a claim against both of these defendants for equitable indemnity, contribution, and equitable subrogation. "At common law, one who is compelled to pay damages resulting from the negligence of another, has a cause of action for indemnity against the tort-feasor." New Amsterdam Cas. Co. v. Boaz"Kiel Const. Co., 115 F.2d 950, 951 (8th Cir.1940). "[T]he right to indemnity is generally regarded as equitable in nature." Warner v. Reagan Buick, Inc., 240 Neb. 668, 676, 483 N.W.2d 764, 770 (Neb.1992). "Under Nebraska law, indemnification is available when one party is compelled to pay money which in justice another ought to pay...." Id.; see also Downey v. W. Cmty. Coll. Area, 282 Neb. 970, 989"90, 808 N.W.2d 839, 854"55 (Neb.2012). Contribution involves the sharing of loss between parties who are jointly liable. Warner, 483 N.W.2d at 771. "Subrogation involves a substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities." Blue Cross & Blue Shield of Nebraska, Inc. v. Dailey, 268 Neb. 733, 739"40, 687 N.W.2d 689, 696 (2004) (citing Jensen v. Board of Regents, 268 Neb. 512, 684 N.W.2d 537 (2004)). Hawkins contends that these three causes of action are equitable in nature and are not the same as professional negligence. | Under Nebraska law, lack of privity of contract between prime contractor and sub-consultants hired by subcontractor to provide design and engineering services for intermediate foundation improvement project barred contractor's claims against sub-consultants for equitable indemnity, contribution, and equitable subrogation, even if contractor worked directly with sub-consultants on design documents. | "Does subrogation involve substitution of one person in place of another with reference to a lawful claim, demand, or right? " | Subrogation - Memo 170 - ANG C.docx | ROSS-003301814-ROSS-003301815 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | | |
| 20631 | George v. Haas, 311 Ill. 382 | 95+101(1) | The word "executed" is used with a variety of meanings, and in general and common use means the signing of a written instrument. It was so used in this case as a statement of fact that the defendant signed the note in this state, with the further fact that it was delivered in this state, and the conclusion of law was that it was governed by the law of this state. Not saying whether or not a contract would be regarded as completed in this state by delivery to the post office in a case like this, where there was no previous agreement and the defendant did not comply with the proposition or sign the note with Dr. Malikowski's indorsement, but wrote the note sued upon and offered it by mail to Nelson for what he owed him, the conclusion that the contract was so completed is of no consequence, and does not determine the validity of the contract, nor the liability of the defendant to comply with his promise. If a contract is executed in one state, to be performed in another state or country, the law of the place where the contract is to be performed will determine its validity and the nature and extent of the obligation. If a contract is made in one state, to be performed in another, and the states are governed by different laws, the law of the place where the contract is to be performed will prevail over the law where the contract was entered into, and it will be enforced under the law of the place of performance. Parties are presumed to contract with reference to the law of the state where their contract is to be performed, and to be governed by such law, rather than the law of the state where the contract was entered into. This rule has been declared and applied in practically every variety of contract, including bills of exchange, promissory notes, and checks drawn in another state payable in this. McAllister v. Smith, 17 Ill. 328, 65 Am. Dec. 651; Mason v. Dousay, 35 Ill. 424, 85 Am. Dec. 368; Lewis v. Headley, 36 Ill. 433, 87 Am. Dec. 227; Adams v. Robertson, 37 Ill. 45; Roundtree v. | Parties presumed to contract with reference to law of state where contract is to be performed. | Which law governs if a contract is executed in one state to be performed in another state or country | Bills and Notes - Memo 1341 - RK_66244.docx | ROSS-003307541-ROSS-003307542 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 20632 | White Eagle v. City of Fort Pierre, 2002 S.D. 68 | 30+3206 | We have previously determined that the appropriate standard of review for a trial court's dismissal of a claim for failure to prosecute is abuse of discretion. London v. Adams, 1998 SD 41, 12, 578 N.W.2d 145, 148. Under this standard, we uphold the decision if "in view of the law and the circumstances" it was reasonably made. Id. (citation omitted). The decision to dismiss will not stand if it is "not justified by, and clearly against, reason and evidence." Id. Additionally, the following "guiding principles of law" assist our review.First, this Court ordinarily will not interfere with the trial court's ruling in these matters. Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. An unreasonable and unexplained delay has been defined as an omission to do something "which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights." Third, the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal. Fourth, the plaintiff has the burden to proceed with the action. The defendant need only meet the plaintiff step by step. Finally, the dismissal of the cause of action for failure to prosecute should be granted when, after considering all the facts and circumstances of the case, the plaintiff can be charged with lack of due diligence in failing to proceed with reasonable promptitude. | A decision to dismiss for failure to prosecute will not stand if it is not justified by, and clearly against, reason and evidence. SDCL 15-11-11, 15-30-16. | "Does the plaintiff have the burden to proceed with an action, to avoid dismissal?" | Pretrial Procedure - Memo # 10710 - C - SK_62686.docx | ROSS-003308920-ROSS-003308921 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | |
| 20633 | United States v. Terrell, 731 F. Supp. 473 | 221+212 | This court has previously found that the question whether the United States was "at peace" with Nicaragua during the time alleged in the indictment is not a question of the sufficiency of the Government's proof but is rather a question of law. However, to avoid the prospect of a lengthy trial in the event Defendants' Motion to dismiss is valid, the court held an evidentiary hearing. For the reasons stated below, the court also finds that the United States was not "at peace" with Nicaragua from October, 1984, through March, 1985, and that Counts I, II, V, and VI must be dismissed. | United States was not "at peace" with Nicaragua from October 1984 through March 1985 when defendant allegedly shipped and transported weapons, thus precluding prosecution of defendants under Neutrality Act; facts showed that following passage of legislation cutting off congressional funding to Contras for ten months, administration continued to seek and coordinate aid for Contras from other sources and that Contras, funded in part by executive branch, continued their attempt to overthrow Sandinista government. 18 U.S.C.A. § 960. | Is the question whether the United States is at peace a question of law? | Neutrality Laws - Memo 15 - RK_58648.docx | ROSS-003319865-ROSS-003319866 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 20634 | In re Ryan N., 92 Cal. App. 4th 1359 | 368+2 | Neither suicide nor attempted suicide is a crime under the criminal statutes of California or any other state. (In re Joseph G. (1983) 34 Cal.3d 429, 433, 194 Cal.Rptr. 163, 667 P.2d 1176; Donaldson v. Lungren (1992) 2 Cal.App.4th 1614, 1624, 4 Cal.Rptr.2d 59; Criminal Liability for Assisting Suicide (1986) 86 Colum. L.Rev. 348, 350.) "A majority of states, however, impose criminal penalties upon one who assists another to commit suicide. [Citations.] One reason for the existence of criminal sanctions for those who aid a suicide is to discourage those who might encourage a suicide to advance personal motives. [Citation.] Another reason is the belief that the sanctity of life is threatened by one who is willing to participate in taking the life of another, even at the victim's request. [Citation.] A third justification is that although the suicide victim may be mentally ill in wishing his [or her] demise, the aider is not necessarily mentally ill. [Citation.] ["] These reasons justify a criminal statute punishing the aiding and encouraging of suicide, although suicide itself is not illegal. The state's interest in such a situation involves more than just a general commitment to the preservation of human life.... Third parties, even family members, do not always act to protect the person whose life will end." (Donaldson v. Lungren, supra, 2 Cal.App.4th at p. 1624, 4 Cal.Rptr.2d 59.) | Neither suicide nor attempted suicide is a crime under the criminal statutes. | Is suicide a crime? | Suicide - Memo 3 - AKA.docx | ROSS-003325446-ROSS-003325447 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20635 | Ferguson v. Corinthian Colleges, 733 F.3d 928 | 360+18.15 | Pursuant to the Supremacy Clause of the United States Constitution, "the FAA preempts contrary state law." Id. at 1158. In enacting the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). We are thus prohibited from applying any state statute that invalidates an arbitration agreement. Allied*Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Nor may we apply any other state law that "prohibits outright the arbitration of a particular type of claim." Concepcion, 131 S.Ct. at 1747. | Under the Federal Arbitration Act (FAA), court may not apply any other state law that prohibits outright the arbitration of a particular type of claim. 9 U.S.C.A. § 1 et seq. | Does the FAA preempt contrary state law? | Alternative Dispute Resolution - Memo 340 - RK.docx | ROSS-003326830-ROSS-003326831 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 20636 | People's National Bank v. Allison, 377 P.3d 1285 | 195+1 | A guaranty is a "promise to answer for the debt, default or miscarriage of another person." 15 O.S.2011, " 321. The obligations of a guarantor "are purely contractual." Founders Bank & Trust Co. v. Upsher, 1992 OK 35, " 10, 830 P.2d 1355, 1361. The guarantor's promise "creates a collateral obligation independent and separately enforceable from that of the principal debtor ... and the inquiry must, in each case, focus on the precise terms of the guarantor's undertaking"the dimension or breadth of the promise."Riverside Nat'l Bank v. Manolakis, 1980 OK 72, "9, 613 P.2d 438, 441. The parties' intent at the time they entered into the agreement controls the meaning of the written contract, and the precise terms and the extent of the guarantor's promise "govern the breadth of the obligation."Upsher, 1992 OK 35, at " 10, 830 P.2d at 1361. Intent of the parties is gathered from the entire written agreement and where the contractual language is free from ambiguity, the terms therein are the "only legitimate evidence of what the parties intended."Id. at " 11, at 1362. "Whether contract language is ambiguous is a question of law for the court." M.J. Lee Constr. Co. v. Oklahoma Transp. Auth., 2005 OK 87, " 11, 125 P.3d 1205, 1210. If unambiguous, the contract's meaning is also a question of law for the court. Id. Such questions of law are reviewed de novo. Id. Further, under Oklahoma law, guaranty agreements are construed most strongly against the guarantor. JPMorgan Chase Bank, N.A. v. Specialty Restaurants, Inc., 2010 OK 65, " 9, 243 P.3d 8, 13, as corrected (Nov. 22, 2010). Finally, because the interpretation, application, and effect of certain statutes are also central to this controversy, we apply a de novo standard of review. Samman v. Multiple Injury Trust Fund, 2001 OK 71, " 8, 33 P.3d 302, 305. | The obligations of a guarantor are purely contractual. 15 Okla. Stat. Ann. § 321. | Are the obligations of guarantors contractual in nature? | 04088.docx | LEGALEASE-00077269-LEGALEASE-00077270 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | |
| 20637 | Mellon Bank, N. A. v. Pritchard-Keang Nam Corp., 651 F.2d 1244 | 25T+213(3) | A second reason to carefully scrutinize the proffered grounds for appellate jurisdiction is that arbitration agreements, freely bargained for, are a favored means of resolving contractual disputes. "The policy of the Federal Arbitration Act is to promote arbitration to accord with the intention of the parties and to ease court congestion. All doubts are to be resolved in favor of arbitration. Whenever possible, the courts will use the Federal Arbitration Act to enforce agreements to arbitrate." Galt v. Libbey-Owens-Ford Glass Company, 376 F.2d 711, 714 (7th Cir. 1967) (citations omitted); see USM Corp. v. GKN Fasteners, Ltd., supra, 574 F.2d at 20. "[F]ederal law is to be implemented in such a way as to make the arbitration effective and not to erect technical and unsubstantial barriers such as were the mode in the early days when arbitration was viewed by many courts with suspicion and hostility." Erving v. VirginiaSquires Basketball Club, 468 F.2d 1064, 1068 (2d Cir. 1972). Although we recognize that this policy could as well be fostered by accepting jurisdiction and finding in favor of arbitration on the merits, we think it better to carefully examine the basis for jurisdiction on appeal. In that way, we afford parties to arbitration agreements fewer opportunities to delay or forestall arbitration proceedings, thus ensuring that arbitration remains a rapid and efficient means to resolve disputes | Order granting motion to stay further district court proceedings pending arbitration of disputes between two parties in action could not be considered appealable under the Enelow-Ettelson rule as an injunction, even though interposition of an arbitration agreement was clearly an equitable defense, where original cause of action could not have been maintained at law in cases preceding single form of action because both complaint and counterclaim requested equitable relief in form of restitution of stock and were essentially equitable in nature. 28 U.S.C.A. §§ 1291, 1292, 1292(a)(1). | How can federal law be implemented to make arbitration effective? | 004224.docx | LEGALEASE-00115613-LEGALEASE-00115615 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 20638 | Beacon Syracuse Assocs. v. City of Syracuse, 560 F. Supp. 188 | 360+104 | In Superior Savings, the notice requirement which the plaintiff relied on was specifically provided for by a local ordinance. Here, the alleged consent requirement was not defined by reference to any state law. In fact, under New York law, such a consent requirement may well be ultra vires. A municipality has no power to make any agreement or deal which will in any way control or embarrass its legislative powers and duties. Neither the police power of the State itself nor that delegated by it to a municipality is subject to limitation by private contract; nor is the exercise of such power to be alienated, surrendered or limited by any agreement or device. Zoning of properties by a municipality, being legislative in character, cannot be bargained or sold. The rezoning of a parcel of property by a municipality based in any way upon an offer or agreement by an owner of property is inconsistent with, and disruptive of, a comprehensive zoning plan. Levine v. Town of Oyster Bay, 46 Misc.2d 106, 259 N.Y.S.2d 247, 252 (Sup.Ct., Nassau Co.1964) (quoting R. Crolly and C. Norton, Zoning by Contract with Property Owner, N.Y.L.J., Apr. 6, 1955); Concordia Collegiate Institute v. Miller, 301 N.Y. 189, 93 N.E.2d 632 (1950); Janas v. Town Board and Zoning Board of Appeals, 51 A.D.2d 473, 382 N.Y.S.2d 394 (4th Dep't 1976). | Owner of property subject to urban renewal plan could not recover from state agency or adjoining property owners for breach of a contract entered into between state agency and adjoining property owners, since it was not a beneficiary entitled to enforce the contract, and since there was no breach of that contract. | Can zoning of property by a municipality be bargained? | Zoning and Planning - Memo 14 - ANG.docx | ROSS-003283718-ROSS-003283720 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20639 | Joyce's Submarine Sandwiches v. California Pub. Employees' Ret. Sys., 195 Ga. App. 748 | 302+303 | Joyce's also contends the trial court erred by permitting the dispossessory affidavit to be expanded by unverified amendments. See Fleming v. Fleming, 141 Ga. App. 51, 53, 232 S.E.2d 391. The failure to verify is an amendable defect (Mellon Bank, N.A. v. Coppage, 243 Ga. 219, 253 S.E.2d 202), and affidavits are amendable as other pleadings (Hyman v. Leathers, 168 Ga.App. 112, 308 S.E.2d 388). Since there is no evidence that Joyce's was prejudiced by permitting the affidavits to be amended, the trial court did not err by allowing the affidavit to be amended to add the verification (Bandy v. Hosp. Auth. of Walker County, 174 Ga.App. 556, 332 S.E.2d 46), and the fact that the amendment was verified after the trial does not change this result (Benson v. Sullivan, 162 Ga.App. 829, 830, 293 S.E.2d 380). See also McClindon v. Wright, 160 Ga.App. 348, 287 S.E.2d 74. | Failure to verify pleading is amendable defect. | Are affidavits amendable to the same extent as other pleadings? | 003779.docx | LEGALEASE-00115822-LEGALEASE-00115823 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 20640 | State v. White, 115 Wis. 2d 696 | 361+1123 | This court has not had an opportunity to consider what constitutes "alter[ing] the writing of another." Black's Law Dictionary defines "alter" in the following manner:To make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affected. To change partially. To change in one or more respects, but without destruction of existence or identity of the thing changed; to increase or diminish.Black's Law Dictionary 77 (6th ed. 1990). Webster's definition is similar: "to cause to become different in some particular characteristic ... without changing into something else." Webster's Third New International Dictionary 63 (1993). The common thread in these definitions is the notion that alteration envisions changes to something already in existence. Thus, in the context of forgery, an alteration occurs when an existing document is changed or modified. See People v. Versaggi, 83 N.Y.2d 123, 608 N.Y.S.2d 155, 629 N.E.2d 1034, 1038 (1994) ("As commonly understood, alter means to change or modify."). | In absence of legislative definition of term or particular meaning in law, court gives words their ordinary meaning. | How is the term alter commonly understood by the courts? | Forgery - Memo 19 - JS.docx | LEGALEASE-00000849-LEGALEASE-00000851 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20641 | American Exp. Bank Ltd. v. Banco Espa%25nol de Credito, S.A., 597 F.Supp.2d 394 | 172H+791 | Next, the parties dispute whether AEB's guaranties and Banesto's counter guaranties, assuming New York law applies, are subject to letter-of-credit law, particularly Article 5 of the New York Uniform Commercial Code. Banesto contends that AEB's guaranties are "functionally and legally equivalent" to international letters of credit, and thus subject to letter-of-credit law (Def.'s First Mem. 15.) AEB counters that the instruments are simple contracts, not subject to Article 5. (See Pl.'s First Mem. 5.) The practical significance of the dispute is that if letter-of-credit law applies, Banesto can take advantage of the "material fraud" exception recognized in Article 5. See N.Y. U.C.C. " 5"109 (McKinney 2006). The Court agrees with Banesto, and holds that both the guaranties and the counterguaranties are governed by letter-of-credit law. | Under New York law, the typical letter-of-credit transaction involves three legal relationships: (1) an underlying contractual relationship between the party that obtains the letter of credit, the "applicant," and the party entitled to draw on it, the "beneficiary,"; (2) a relationship between the party that issues the letter of credit, the "issuer," and the applicant concerning the terms and amount of the credit; and (3) a relationship between the issuer and the beneficiary, which embodies the issuer's commitment to honor drafts or other demands for payment presented by the beneficiary or a transfer beneficiary upon compliance with the terms and conditions specified in the credit. | Is letter of credit equivalent to guaranty? | 003949.docx | LEGALEASE-00115882-LEGALEASE-00115883 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 20642 | Philadelphia Gear Corp. v. Federal Deposit Ins. Corp., 751 F.2d 1131 | 157+450(5) | We acknowledge that a standby letter of credit is similar in many respects to a surety's contract to guaranty a principal's debt. Indeed some commentators refer to it as a "guaranty letter of credit." See Verkuil, Bank Solvency and Guaranty Letters of Credit, 25 Stan.L.Rev. 716 (1973). The drafters of Article 5 of the Uniform Commercial Code reflected commercial practice when they described issuing banks' expectations that their customers will put in funds before banks make disbursements under a letter or at least reimburse a bank immediately afterwards. U.C.C. " 5"117, Official Comment. The UCC drafters also contended that the issuing bank "assumes minimum risks as against its customer." U.C.C. " 5"109. Official Comment 1 | Provision of standby letter of credit that credit represented thereby would be automatically reinstated from time to time for any sum or sums up to $145,000 was ambiguous as to whether monetary limitation referred to claims in the aggregate or per presentation, warranting resort to extrinsic evidence. | Is a standby letter of credit similar to a guaranty? | Guaranty - Memo 15 - AKA.docx | LEGALEASE-00000961-LEGALEASE-00000962 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 20643 | Duke Energy Int'l Peru Investments No. 1 Ltd. v. Republic of Peru, 892 F. Supp. 2d 53 | 25T+352 | Remanding an arbitral award is an exceptional remedy, "a procedure to avoid if possible, given the interest in prompt and final arbitration." Ethyl Corp. v. United Steelworkers of America, AFL"CIO, 768 F.2d 180, 188 (7th Cir.1985). This Circuit has strongly cautioned against remanding arbitral awards, finding that in the "balance between rooting out possible error and ... assuring that judgment be swift and economical ... the latter must generally prevail." Sargent v. Paine Webber Jackson & Curtis, Inc., 882 F.2d 529, 533 (D.C.Cir.1989). Indeed, remand "frustrate[s] the basic purposes of arbitration: to resolve disputes speedily and to avoid the expense and delay of extended court proceedings." Fed. Commerce & Nav. Co. v. Kanematsu"Gosho, Ltd., 457 F.2d 387, 389 (2d Cir.1972); see also Rich v. Spartis, 516 F.3d 75, 81 (2d Cir.2008) (arbitration awards subject to very limited review "in order to avoid undermining the twin goals of arbitration"). | The ambiguity necessary to a court to remand an arbitral award requires something more substantial than a disagreement between the parties; rather, the award must be so ambiguous that a court is unable to discern how to enforce it, with the arbitrator's intent hopelessly difficult to determine. | Will a technical judicial review of arbitration awards frustrate the basic purpose of arbitration? | Alternative Dispute Resolution - Memo 20 - JS.docx | LEGALEASE-00001526-LEGALEASE-00001527 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 20644 | Broadwell v. Imms, 14 Ala. App. 437 | 38÷7 | It is well settled that contingent rights are assignable at law when coupled with a present interest in the assignor. For instance, if the assignor is under an existing contract with another to perform some service or to do some act, he may validly assign the wages or compensation that in the future will accrue to him upon the performance of the act or service, and this in consideration of and as security for either a present indebtedness or for advances which he may find it necessary to obtain. Wellborn v. Buck, 114 Ala. 277, 21 South. 786; Southern Wesco Supply Co. v. Hammond, 11 Ala.App. 493, 66 South. 941; Park Robertson Hdw. Co. v. Copeland, 11 Ala.pp. 447, 66 South. 880; American Trust & Savings Bank v. O'Barr, 67 South. 794. However, since such an assignment is an assignment of something that has at the time merely a potentiality, and not an actuality-compensation to be thereafter earned by the assignor under an existing contract, and not compensation already earned by him-the assignee's right thereto is, like the assignor's right would be in the absence of such an assignment, contingent, depending for its maturity, or for its ripening into an absolute right, upon the performance by the assignor of the service for which the compensation was promised. Therefore the assignee cannot recover anything unless at the time of bringing the suit the assignor has fully performed the contract so as to entitle him, in the event there had been no assignment, to recover thereon; or unless he has so far performed it as that he could, but for the assignment, recover on a quantum meruit. The assignee acquires the same, but no greater right than the assignor has to recover. In other words, he must abide the case of the latter, from whom he buys such a contingent right, and whose performance of the service contracted for is a condition precedent to the maturity of the right. Park Robertson Hdw. Co. v. Copeland, 11 Ala.App. 447, 66 South. 880; Payne v. Mobile, 4 Ala. | Contingent rights are assignable; but, where the right to receive payment under an executory contract is assigned, the assignee cannot recover unless the assignor has so performed that he could recover. | Can contingent rights be assigned? | Assignments - Memo 40 - JS.docx | LEGALEASE-0001585-LEGALEASE-0001587 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20645 | White v. City of Elk River, 840 N.W.2d 43 | 414÷1300 | As a general matter, a municipality may regulate the use of privately owned land within its borders to guide the development of the community. This authority to regulate land use is granted to municipalities by the Legislature through the state's zoning enabling act; therefore, the scope of that authority is defined by statute. See Minn.Stat. "" 462.351".365 (2012); see also Minn.Stat. " 462.357, subd. 1("For the purpose of promoting the public health, safety, morals, and general welfare, a municipality may by ordinance regulate ... the uses of land...."). We have long upheld a municipality's authority to enact zoning ordinances as a legitimate exercise of its police power. Hawkins v. Talbot, 248 Minn. 549, 551, 80 N.W.2d 863, 865 (1957). But we also have recognized limitations "both constitutional and statutory" on that authority. See id. at 551, 80 N.W.2d at 865 | Municipality lacked the authority to terminate a nonconforming use by requiring the property owner to obtain a conditional-use permit to continue the use and then revoking the conditional-use permit; the only ways for a municipality to terminate a nonconforming use of land was by exercise of its eminent domain power, upon a showing that the use was discontinued for a period of more than one year, that the use was destroyed by fire or other peril to the extent of greater than 50 percent of its estimated market value, or that the use was a nuisance. M.S.A. SS 465.01, 462.357. | Can a municipality regulate the use of privately-owned land as part of a community-development plan? | Zoning and Planning - Memo 21 - JS.docx | LEGALEASE-0001590-LEGALEASE-0001591 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 20646 | Fort Trumbull Conservancy v. Alves, 262 Conn. 480 | 149E÷652 | It is axiomatic that whether particular substances constitute "natural resources of the state" within the meaning of " 22a"16 presents a question of statutory interpretation. Paige v. Town Plan & Zoning Commission, 235 Conn. 448, 454, 668 A.2d 340 (1995); Red Hill Coalition, Inc. v. Town Plan & Zoning Commission, 212 Conn. 727, 735, 563 A.2d 1347 (1989). Fortunately, in deciding whether the oil or the landfills constitute natural resources of this state, we are not required to write on a blank slate, because both Red Hill Coalition, Inc., and Paige give us guidance. In Red Hill Coalition, Inc. v. Town Plan & Zoning Commission, supra, at 735"40, 563 A.2d 1347, we concluded that "prime agricultural land" is not such a resource within the meaning of the act. In Paige v. Town Plan & Zoning Commission, supra, at 454"63, 668 A.2d 340, we concluded that "trees and wildlife" are such natural resources, irrespective of whether they have economic value. Of more importance to the present case, moreover, in Paige, we distinguished Red Hill Coalition, Inc., as follows: "Prime agricultural land is different from what is claimed to be a natural resource in this case. Prime agricultural land is not naturally occurring. It id., at 463, 668 A.2d 340. Thus, reading Red Hill Coalition, Inc., and Paige together, I would conclude that, as the defendants in the present case suggested at oral argument before this court, an essential element of a natural resource under the act is that it be a resource occurring naturally that has not been subject to human alteration. | Conservation organization had standing, under section of the Environmental Protection Act authorizing actions for declaratory and injunctive relief against unreasonable pollution, to sue city and city building official to prevent issuance of permits allowing demolition of 39 buildings, although city and building official had no jurisdiction to consider environmental ramifications of issuing demolition permits, where organization alleged that issuance of permits would unreasonably pollute, impair, deplete or destroy the public trust in air, water, land or other natural resources of the state; overruling Connecticut Post Ltd. Partnership v. South Central Connecticut Regional Council of Governments, 60 Conn.App. 21, 25, 758 A.2d 408. C.G.S.A. S 22a-16. | Does prime agricultural land form a part of natural resources? | 004545.docx | LEGALEASE-00116372-LEGALEASE-00116374 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 20647 | Landmark Med. Ctr. v. Gauthier, 635 A.2d 1145 | 106÷100(1) | Most of the jurisdictions that have considered the modern application of the necessaries doctrine have generally held that judicial expansion of the doctrine to include both spouses is the appropriate measure. We follow the pattern of these jurisdictions. In particular we adopt much of the New Jersey Supreme Court's analysis. | Expansion of common-law doctrine of necessaries to hold both spouses liable for mutual support would be applied retroactively to hold wife liable for medically necessary expenses incurred by husband before his death, in light of clear foreshadowing of expansion from evolving role of women in society, policy of marital partnership, and absence of substantial hardship to wife. | Is the doctrine of necessaries applicable to both spouses? | 004796.docx | LEGALEASE-00116737-LEGALEASE-00116738 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | | 9,029 |
| 20648 | Com. v. Redline, 391 Pa. 486 | 203+500 | Although degrees of murder were, and still are, unknown to the common law, three classes of homicide are there recognized, the term "homicide" being generic and embracing every killing of a human being by another: 1 Warren, Homicide, " 54 (Perm.Ed.); IV Blackstone, Commentaries,. The classifications of homicide at common law are (1) justifiable, (2) excusable and (3) felonious. "The first has no share of guilt at all; the second very little; but the third is the highest crime against the law of nature that man is capable of committing": IV Blackstone, Commentaries,. A justifiable homicide is such as is committed either by command or, at least, with the permission of the law, e. g., execution of a convicted criminal, apprehension of an escaping felon, etc.; an excusable homicide is such as is committed either per infortunium (i. e., accidentally) or se defendendo (i. e., in self defense): IV Blackstone, Commentaries,; and a felonious homicide (i. e., murder) occurs when a person of sound memory and discretion unlawfully and feloniously kills any human being in the peace of the sovereign with malice prepense or aforethought, express or implied: see IV Blackstone, Commentaries,; 1 Warren, Homicide, " 63; 1 Wharton, Criminal Law, " 419 (12th Ed.). | Three classes of homicide recognized by common law are justifiable, excusable and felonious. | What are the classifications of homicide? | 004767.docx | LEGALEASE-00117069-LEGALEASE-00117070 | Condensed, SA | 0.93 | 0 | 1 | 0 | | 1 |
| 20649 | Golden Mountain Realty Inc. v. Severino, 36 Misc. 3d 346 | 233+1975 | 9 NYCRR " 2200.2 defines "Tenant" as "A tenant, subtenant, lessee, sublessee or other person entitled to the possession or to the use or occupancy of any housing accommodation." This is an extremely broad definition of tenant and clearly extends to include occupants of the apartment, beyond the tenant of record.This broad definition of tenant has been recognized by the courts. In Duell v. Condon, 84 N.Y.2d 773, 622 N.Y.S.2d 891, 647 N.E.2d 96 (1995) the Court of Appeals held.Within the New York City rent stabilization scheme, the term "tenant" is narrowly defined to include only a "person or persons named on a lease as lessee or lessees, or who is or are a party or parties to a rental agreement" (9 NYCRR 2520.6[d] ).... (Rent control law broadly defines " tenant" as any person who is entitled to possession or use or occupancy of the premises (Administrative Code " 26"403[m] ).Id. at 782, 622 N.Y.S.2d 891, 647 N.E.2d 96 | Landlord failed to make out prima facie case or cause of action in summary holdover proceeding seeking possession of rent controlled apartment, where landlord's predicate notice alleged that respondent was either subtenant or licensee that landlord could evict under accelerated eviction statute, but landlord did not obtain certificate of eviction from Division of Housing and Community Renewal (DHCR), as required to evict subtenant, and respondent was not licensee subject to immediate eviction following death of former tenant of record. McKinney's RPAPL S 713(7); 9 NYCRR 2204.1(a), 2204.6(d). | What is the definition of a tenant? | Landlord and Tenant - Memo 08 - RK.docx | LEGALEASE-00003550-LEGALEASE-00003552 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 20650 | Clifford v. Hughson, 992 F. Supp. 661 | 233+501 | To state a claim for common law fraud under New York law, a plaintiff must allege (1) a material, false representation by a defendant; (2) made with the intent to defraud; (3) reasonable reliance upon the representation by the plaintiff; (4) causing damage to the plaintiff. Katara v. D.E. Jones Commodities Inc., 835 F.2d 966, 970"71 (2d Cir.1987); Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214 (1969). See also ABF Capital Management v. Askin Capital Management, L.P., 957 F.Supp. 1308, 1323 (S.D.N.Y.1997) (same). Here, plaintiffs allege that defendants Hughson and JLE defrauded them (1) by failing to disclose Hughson's prior relationship with their attorney, Schadt and (2) by misrepresenting to them that Hughson would make a good faith effort to assist in furthering the success of the restaurant. Neither of these alleged misrepresentations or omissions constitutes fraud. First, in order for an omission to constitute fraud, a defendant must have a duty to disclose information to the plaintiff. Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank N.A., 731 F.2d 112, 123 (2d Cir.1984); Frigitemp Corp. v. Financial Dynamics Fund, Inc., 524 F.2d 275, 283 (2d Cir.1975). A duty to disclose arises only when " "the parties enjoy a fiduciary relationship," " or " "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." " Grumman Allied Industries, Inc. v. Rohr Industries, Inc., 748 F.2d 729, 738"39 (quoting Aaron Ferer & Sons Ltd., 731 F.2d at 123). Plaintiffs do not anywhere allege that defendants Hughson or JLE, as commercial landlords, had a fiduciary relationship to plaintiffs. The "landlord-tenant relationship is not ordinarily a fiduciary one." In re Caulfield, 192 B.R. 808, 818 (Bktcy. E.D.N.Y.1996) (citing cases). Cf. N.Y. Gen. Obl. Law " 7"103 (requiring that landlord not commingle security deposits with his | Landlord-tenant relationship is not ordinarily a fiduciary one. | Is the relationship between a landlord and tenant fiduciary in nature? | Landlord and Tenant - Memo 11 - RK.docx | ROSS-003285786-ROSS-003285788 | Condensed, SA | 0.97 | 0 | 1 | 0 | | 1 |
| 20651 | Landry v. LeBlanc, 416 So. 2d 247 | 185+72(1) | Topsoil is immovable as tracts of land with their component parts are immovables. LSA"C.C. Art. 462. Comment (c) to Art. 462 provides: "Lands may be defined as portions of the surface of the earth. The ownership of land carries, by accession, the ownership of "all that is directly above and under it." C.C. Art. 505 (1870)."4 Related thereto is the Louisiana Mineral Code Section listing substances to which the code applies: "The provisions of this Code are applicable to... rights to explore for or mine or remove from the land the soil itself..." LSA"R.S. 31:4. The right to minerals is an incorporeal immovable. LSA"R.S. 31:18. Thus, whether Civil Code or Mineral Code articles are applied, the result remains the same that the interest asserted herein is to an immovable. cf. LSA"R.S. 31:2. Plaintiff-owner's topsoil did not become movable by its placement in trucks to be hauled away. | Verbal sale of immovable property, i.e., topsoil, was null, notwithstanding that parties had preexisting lease agreement, since oral lease did not effect ownership transfer of immovable topsoil. LSA-C.C. arts. 462, 2275, 2440. | Can topsoil be treated as immovable property? | 005149.docx | LEGALEASE-00117355-LEGALEASE-00117356 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20652 | People v. Frye, 7 Cal. App. 4th 1148 | 203+504 | Defendant contends that the trial court essentially directed a verdict against him by giving special instruction number six. This challenged instruction reads: "In these instructions, in the definitions of the crimes in question, the word "unlawful" is used. A killing, or an attempted killing, or the use of force or violence, or the attempted use of force or violence is considered in the law to be unlawful unless it is excusable, for example, because it was committed by accident, or justifiable, for example, because it was committed in self defense. It is undisputed in this case that each of the acts in question was an unlawful act." Defendant contends that by giving this instruction the court failed to require the jury to find each element of the charged offenses. (See People v. Hedgecock (1990) 51 Cal.3d 395, 407, 272 Cal.Rptr. 803, 795 P.2d 1260; People v. Figueroa (1986) 41 Cal.3d 714, 726, 224 Cal.Rptr. 719, 715 P.2d 680.) | In absence of factors of excuse or justification, use of fatal physical force or violence against another person is unlawful. West's Ann.Cal.Penal Code § 189.5. | "Is every killing considered to be unlawful unless expressly excused, or justified by the law?" | 000416.docx | LEGALEASE-00117718- LEGALEASE-00117719 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 20653 | State v. Buckles, 508 N.E.2d 54 | 207+1 | The trial court relied on two cases for the proposition that I.C. 35-46-1-3 defines only consanguineous relationships: State v. Tucker (1910), 174 Ind. 715, 93 N.E. 3, and State v. Anderson (1985), Ind.App., 484 N.E.2d 640. These cases are clearly distinguishable from the facts here. In each, the defendant had been charged with incest for having engaged in sexual relations with his niece by marriage. The Tucker case involved the then-extant version of Indiana's incest statute which listed specific pairs of family relationships between whom sexual intercourse was forbidden. Among the pairs listed was the following: "if any uncle or aunt shall have sexual intercourse with his or her niece, or nephew, having knowledge of his or her relationship, or if any nephew or niece shall have sexual intercourse with his or her aunt or uncle, such nephew or niece being over the age of sixteen years and having knowledge of his or her relationship, he or she shall be guilty of incest...." | Under current incest statute, stepfather and stepdaughter who engaged in sexual intercourse did not both have to be charged with crime in order to convict stepfather. IC 35-46-1-3 (1982 Ed.). | Is an uncle or aunt engaging in sexual intercourse with a nephew or niece guilty of incest? | 000472.docx | LEGALEASE-00117748- LEGALEASE-00117749 | Condensed, SA, Sub | 0.81 | 0 | 1 | | 1 | 1 |
| 20654 | Harrington v. Harrington, 151 So. 648 | 289+410 | "A partnership once formed and put into action becomes, in contemplation of law, a moral being, distinct from the persons who compose it. *** The partners are not the owners of partnership property. It belongs to the ideal being which has the control and administration thereof to enable it to fulfill its legal duties and obligations. The partners own the residuum." Posner v. Little Pine Lumber Co., 157 La. 74, 102 So. 16, 18. | Partnership once formed becomes a being, distinct from persons composing it, and property belongs to it, not partners. | Does the partnership property belong to the partners? | 022393.docx | LEGALEASE-00118062- LEGALEASE-00118063 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 20655 | Newman v. Legal Servs. Corp., 628 F. Supp. 535 | 231H+1 | This court holds that the District of Columbia would recognize a public policy exception to the at-will employment doctrine consistent with the Supreme Court of New Jersey's decision in Pierce. The District has long recognized a public policy exception to a landlord's right to evict a tenant-at-will. Edwards v. Habib, 397 F.2d 687 (D.C.Cir.1968), cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). The right to employment is as fundamental a right as the right to housing. Thus, this court holds that the District of Columbia would recognize a public policy exception to the at-will employment doctrine. | Right to employment is as fundamental a right as the right to housing. | Is the right to employment a fundamental right? | 001363.docx | LEGALEASE-00117839- LEGALEASE-00117840 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | 1 |
| 20656 | Bachus v. Bachus, 216 Ark. 802 | 302+3 | The difficulty, however, is not merely that there is no evidence in the record; there is also lacking any pleading to which the judgment might be said to be responsive. Our Civil Code requires that pleadings be in writing. Ark.Stats.1947, " 27"1101. The purpose of this requirement is to enable each party to know what issues are to be tried. Beasley v. Haney, 96 Ark. 568, 132 S.W. 646. Even before the Code was adopted we recognized the need for written pleadings in any case when a statute contemplated their use. In Neal v. Newland, 4 Ark. 459, Newland brought suit against Meeks Neal and attached certain property. Benjamin Neal obtained leave to interplead and assert a claim to the property. The case was continued at his request, but at the next term it was tried without the interplea having been filed. In reversing the judgment we said that there was no issue for the court to try. "This proceeding by way of interpleader partakes of an equitable character. Its object is to save unnecessary litigation, because the title can be tried and determined with the same facility as if a new action was instituted. But such interpleader must be in writing, and embody sufficient matter to make up an issue * * * and support a verdict and judgment. This was not done. There was no action in court." | Pleadings are required by Civil Code to be in writing in order that each party may know what issues are to be tried. Ark.Stats. S 27-1101. | Must pleadings be in writing? | Pleading - Memo 33 - TH.docx | ROSS-003284402-ROSS-003284404 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 20657 | Brewer v. Big Lake State Bank, 378 S.W.2d 948 | 289+774 | "On the contrary, in all contracts concerning negotiable paper, the act of one partner binds all * * * if it appears on the face of the paper to be on partnership account, and to be intended to have a joint operation; and the holder may, at his election, enforce payment either jointly against the firm or separately against the party whose signature is attached * * *. Where two or more unite in partnership for carrying on a particular trade or other purpose, they become in point of law, so identified with each other that the acts and admissions of any one with reference to the common object are the acts and declarations of all and are binding upon all. The very constitution of this relationship furnishes a presumption that each individual partner is an authorized agent for the rest * * *. And the acts and representations of parties may be conclusive evidence of their partnership in favor of strangers who are not cognizant of their private arrangements, but who must be guided by external indications, although as between themselves they are not partners * * *. Hence, if a person has represented himself to be a partner, and has been trusted as such, he is bound by that representation, and it is no defense for him to show that he was not in fact a partner * * *. Every partner ha an implied authority to bind his copartners by the making of notes and the drawing and accepting of bills for commercial purposes consistent with the object to the partnership * * *" (Emphasis ours). | Presumption is that each individual partner is an authorized agent for other partners. | Are partners also agents for other partners? | 022209.docx | LEGALEASE-00118184- LEGALEASE-00118185 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 20658 | Town of Gurley v. M & N Materials, 143 So. 3d 1 | 148÷2.1 | This is not the first case in which this Court has had the opportunity to discuss federal "regulatory taking" jurisprudence in the context of a claim under " 23 of the Alabama Constitution. In Alabama Department of Transportation v. Land Energy, Ltd., 886 So.2d 787 (Ala.2004), the Court affirmed an inverse-condemnation award under " 23 of the Alabama Constitution based on a "taking" of surface-mineable coal. In so doing, the Court relied upon the doctrine of law of the case in relation to a failure of the State (specifically, the Alabama Department of Transportation ("ADOT")) to object at trial to a jury instruction that the plaintiff was entitled to recover for a "taking" if the jury found that the actions of the State had prevented the plaintiff from mining the coal from its property. Indeed, ADOT committed itself in that case to a position that a "taking" could occur for purposes of " 23 by a so-called "regulatory taking." 886 So.2d at 799. Accordingly, this Court provided the following explanation of ADOT's position in that case, helpful to the present case because of its instructive discussion of federal "regulatory taking" jurisprudence:"ADOT ... state[s] that""There are two distinct kinds of taking: physical takings and regulatory takings. A physical taking requires a physical invasion or occupation of the property or that the owner be otherwise dispossessed of the property. A regulatory taking occurs where the owner retains the property, but its use is now regulated to such a degree that it is the legal equivalent of a taking. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).""ADOT further asserts that the "takings jurisprudence of the U.S. Supreme Court has recognized two types of compensable regulatory takings: Categorical and partial." It contends that a categorical taking is one in which all economically viable use, meaning all economic value, has been absorbed by the regulatory imposition. By process of elimination, it concludes that the alleged taking | Constitutional provision for compensation to owner upon municipal corporation's taking of property did not allow for compensation to property owner for administrative or regulatory taking; constitution provided for compensation only for taking, injury, or destruction of property through physical invasion or disturbance of property, specifically by construction or enlargement of municipal corporation's works, highways, or improvements. Const. Art. 12, § 235. | When does a regulatory taking of property occur? | 001442.docx | LEGALEASE-00118575-LEGALEASE-00118576 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20659 | Trustees of the Graphic Communications Intern. Union Upper Midwest Local 1M Health and Welfare Plan v. Bjorkedal, 516 F.3d 719 | 289÷685 | The Trustees recognize that the " 1301 definition of employer does not apply directly to " 1145 liability, but argue that it applies in this case because the Agreement explicitly incorporated the definition. The Agreement incorporates the Rules and Regulations of the Fund, which provide that "the term "employer" shall be as defined in ERISA section 4001(b)(1) [29 U.S.C. " 1301(b)(1)]. In cases of common control, all trades or businesses which are under common control as defined in [I.R.C.] Section 414(c) will be considered as a single employer." (Appellees' Add. at 5.) The Trustees focus much of their argument on whether the rental partnership is a business under common control with Nordic Press within the meaning of " 1301(b)(1). But Vander Plaats signed the Agreement in his capacity as "V.P. Secretary" of Nordic Press, Inc. (Appellees' Add. at 11, not on behalf of the rental partnership. Just as a corporation acts through its officers, a partnership acts through its partners. See Minn.Stat. " 323A.0301(1) ("An act of a partner ... for apparently carrying on in the ordinary course the partnership business ... binds the partnership."). Vander Plaats was not a partner in the rental operation and did not sign the Agreement expressly on its behalf. While Nordic Press is free to obligate itself to whatever contractual provisions it chooses, one entity cannot obligate another entity, even a related entity, without the second entity's consent. To the extent an individual signs an agreement purporting to bind related entities, the person so signing must first have authority to act for those separate and distinct entities. Thus, we need not decide whether there is evidence to establish that the rental partnership is a trade or business under common control with Nordic Press unless the evidence first creates a material question of fact regarding whether Vander Plaats (or through him Nordic Press) had the authority to bind any other entities under common control. In other | Rental partnership of two of printing company's shareholders that leased property to printing company did not ratify printing company's signing of collective bargaining agreement allegedly on behalf of rental partnership as a controlled entity, so as to make rental partnership liable for printing company's contractual obligations; agreement was not signed on behalf of the rental partnership, there was no evidence that rental partnership confirmed, approved, or sanctioned alleged act of signing agreement on behalf of the partnership as a controlled entity, there was no evidence that the partners had "full knowledge" that the agreement was signed on behalf of partnership or that the signing could bind the rental partnership, and partnership did not have constructive knowledge as the partnership did not benefit from agreement. | Does a partnership act through its partners? | 001862.docx | LEGALEASE-00118787-LEGALEASE-00118788 | Condensed, SA, Sub | 0.63 | 0 | 1 | | 1 | 1 |
| 20660 | Com. v. Skufca, 457 Pa. 124 | 203÷507 | Although we have expressly rejected the tort theory of causation in assessing criminal responsibility, Commonwealth v. Root, Supra, it has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. Commonwealth v. Stafford, 451 Pa. 95, 301 A.2d 600 (1973); Commonwealth v. Cam, 449 Pa. 228, 296 A.2d 753 (1972); Commonwealth v. Johnson, 445 Pa. 276, 284 A.2d 734 (1971); Commonwealth v. Cheeks, 423 Pa. 67, 223 A.2d 291 (1966); Commonwealth ex rel. Peters v. Maroney, 415 Pa. 553, 204 A.2d 459 (1964). Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with the conduct to achieve the result. Commonwealth v. Stafford, Supra. Here the substantial relation between appellant's conduct which constituted the misdemeanor, and the deaths of her children satisfies the causation requirement. Although suffocation due to the fire was the immediate medical cause of the children's death, appellant's unlawful conduct in leaving them locked in the room, without supervision, for several hours, susceptible to numerous foreseeable dangers, was the legal cause of their death. Accord, Delay v. Brainard, 182 Neb. 509, 156 N.W.2d 14 (1968); People v. Ogg, 26 Mich.App. 372, 182 N.W.2d 570 (1970). But see, People v. Rodriguez, 186 Cal.App.2d 433, 8 Cal.Rptr. 863 (1961). The fire produced its fatal result only because of the defenseless position the young victims were left in through their mother's unlawful conduct. Cf., Commonwealth v. Feinberg, 433 Pa. 558, 253 A.2d 636 (1969). | Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing death even though other factors combined with that conduct to achieve the result. | Is criminal responsibility confined to a sole or immediate cause of death? | 001741.docx | LEGALEASE-00118854-LEGALEASE-00118855 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20661 | Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 | 83+80.5 | The key statutory provisions are ss 2, 3, and 4 of the United States Arbitration Act of 1925. Section 2 provides that a written provision for arbitration "in any maritime transaction or a contract evidencing a transaction involving commerce * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' Section 3 requires a federal court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement. Section 4 provides a federal remedy for a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," and directs the federal court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored. | Transactions in "commerce", within United States Arbitration Act, are not limited to contracts between merchants for interstate shipment of goods. 9 U.S.C.A. SS 1, 2. | Are written arbitration provisions in contracts involving commerce enforceable under the Federal Arbitration Act (FAA)? | Alternative Dispute Resolution - Memo 240 - RK.docx | LEGALEASE-00006947-LEGALEASE-00006948 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | 1 |
| 20662 | Louisiana United Bus. Ass'n Cas. Ins. Co. v. J & J Maint., 133 F. Supp. 3d 852 | 334+3 | "The question, then, is whether [R.S. 23:1101 et seq.] confer upon the employer a separate and independent cause of action ... against the third person tortfeasor or whether there is but one cause of action, ex delicto, which the compensation paying employer or the injured employee is accorded the right to assert separately or jointly. Considering [these provisions], it seems plain that there is but one cause of action recognized for the recovery of damages resulting from a single tort. However, the right of redress against the tortfeasor has been extended by the provisions to the injured workman's employer..." Marquette Cas. Co., 103 So.2d at 271. Louisiana courts recognize a firm distinction between a right of action and a cause of action, as reflected in Marquette's holding. Coulon v. Gaylord Broadcasting, 433 So.2d 429, 430 (La.Ct.App. 4th Cir.1983), writ denied, 439 So.2d 1073 (La.1983), abrogated on other grounds by Gugliuzza v. KCMC, Inc., 593 So.2d 845, 846 (La.Ct.App. 2d Cir.1992). | Claims brought by workers' compensation insurer for subcontractor, stemming from fatal injury sustained by subcontractor's worker while working on remodeling project at United States Army fort, arose under Louisiana's tort law, rather than workers' compensation law, and thus removal of insurer's action was not precluded by statute prohibiting removal of state workers' compensation actions; workers' compensation laws did not create separate cause of action but only extended right of action, laws'imposition was merely procedural, and nothing in insurer's claims raised substantial question relating to workers' compensation. LSA-R.S. 23:1021 et seq. | Do courts recognize the distinction between a right of action and a cause of action? | Action - Memo 14 - MS.docx | ROSS-003288275-ROSS-003288276 | Condensed, SA, Sub | 0.35 | 0 | 1 | | 1 | 1 |
| 20663 | Alford v. State, 243 Ga. App. 212 | 207+14 | Alford asserts that the evidence was insufficient to establish his conviction for incest because the State failed to prove that he engaged in sexual intercourse, an essential element of the offense of incest. OCGA " 16"6"22(a). Since sufficient evidence existed to prove the occurrence of sexual intercourse as discussed above, we find no merit to this claim. OCGA " 16"6"22(a)(1); Raymond v. State, 232 Ga.App. 228, 229(1), 501 S.E.2d 568 (1998) (evidence of even slight penetration sufficient to satisfy the intercourse element of incest). | Finding that defendant engaged in sexual intercourse with his daughter, as required to support incest conviction, was supported by daughter's testimony that defendant "raped" her and that he put his penis into her vagina. O.C.G.A. S 16-6-22(a). | Is slight penetration sufficient to constitute incest? | Incest - Memo S8 - RK.docx | ROSS-003284653-ROSS-003284654 | Condensed, SA, Sub | 0.54 | 0 | 1 | | 1 | 1 |
| 20664 | White Current Corp. v. Vermont Elec. Co-op., 158 Vt. 216 | 145+11(4) | Case law from other jurisdictions supports our conclusion that White Current is not a utility. The distinguishing characteristic of a utility is its duty to serve the public without discrimination. See City of Phoenix v. Kasun, 54 Ariz. 470, 475, 97 P.2d 210, 212 (1939) (distinguishing characteristic of public utility is devotion of private property to efficient public use at proper rates); In re Wind Power Pacific Investors"III, 67 Haw. 342, 345, 686 P.2d 831, 833"34 (1984) ("The term "public utility" implies a public use," the regulation of which ensures efficient, nondiscriminatory service to public at fair rates.); Peoples Energy Corp. v. Illinois Commerce Commission, 142 Ill.App.3d 917, 930, 97 Ill.Dec. 115, 125"26, 492 N.E.2d 551, 561"62 (1986) (mere sale of electricity does not render seller a utility; public utility implies public use and duty to serve the public without discrimination); Marano v. Gibbs, 45 Ohio St.3d 310, 311, 544 N.E.2d 635, 637 (1989) (public utility characterized by public concern). The Alabama Supreme Court has recognized that "not all purveyors of energy commodities are "public utilities," even though they sell and distribute their products under statutory regulation." Coastal States Gas Transmission Co. v. Alabama Public Service Commission, 524 So.2d 357, 360 (Ala.1988). White Current does not have a duty to serve the public. As a small power producer, it sells its product in bulk to one purchaser. It is the purchaser that is bound to provide indiscriminate service to the public at proper rates. The cooperative utilities, therefore, and not White Current, were responsible for filing the letter of intent pursuant to General Order 45 . | Federal regulation exempting small power producers from state law or regulation respecting rates of electric utilities and financial and organizational regulation of electric utilities did not eliminate requirement that letter of intent executed between small power producer and electric cooperatives be filed with the Public Service Board (PSB) pursuant to General Order 45 which requires utilities to file contracts, including letters of intent, for purchase or sale of electrical energy, considering that General Order does not directly regulate rates, finances or organization of utilities. | Are all purveyors of energy commodities public utilities? | 001977.docx | LEGALEASE-00119668-LEGALEASE-00119669 | Condensed, SA, Sub | 0.65 | 0 | 1 | | 1 | 1 |
| 20665 | Gillespie v. Colonial Life & Acc. Ins. Co., 2009 WL 890579 | 25T+146 | The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." 9 U.S.C. " 1, et seq.; John Hancock Mutual Life Ins. Co. v. Olick, 151 F.3d 132, 136 (3d Cir.1998) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).The FAA applies to written arbitration provisions contained in any contract evidencing a transaction involving interstate or foreign commerce, requiring that agreements to arbitrate be enforceable to the same extent as other contracts. 9 U.S.C. "" 1, 2; Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178 (3d Cir.1999). The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court ... for an Order directing that such arbitration proceed in the manner provided in the agreement." 9 U.S.C. " 4. However, before a district court orders arbitration, the FAA requires the court to make the following threshold determinations: (1) whether the parties entered into a valid arbitration agreement, and (2) whether the specific dispute falls within the scope of that agreement. Olick, 151 F.3d at 136 (explaining that "district court need only engage in a limited review to ensure that the dispute is arbitrable"). | Insurance company could compel arbitration of an agent's sexual harassment, breach of contract, and tort claims on the ground that the arbitration clause in the agreement between them was broad and encompassed each of her claims. The breadth of the language of the clause established that it was intended to apply to any claim, controversy or dispute related to the business relationship between the parties. Further, the claim of sexual harassment and retaliation was inextricably connected to the breach of contract and tort claims because these claims arose from the allegedly wrongful treatment of the agent during her business relationship with the company. 9 U.S.C.A. S 1, et seq. | Does the Federal Arbitration Act apply to contracts involving foreign commerce? | 002804.docx | LEGALEASE-00119739-LEGALEASE-00119740 | Condensed, SA, Sub | 0.51 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20666 | Hamilton v. United States, 26 App. D.C. 382 | 203+522 | upon which the appellant was tried and convicted, which is in the common-law form, is as follows: "That one William W. Hamilton, late of the District aforesaid, on the twentieth day of June in the year of our Lord one thousand nine hundred and four and at the District aforesaid, with force and arms in and upon a certain Mary Elizabeth Butler, otherwise called Lizzie Lyman, in the peace of God and of the United States then and there being, feloniously, purposely, and of his deliberate and premeditated malice did make an assault, and that he, the said William W. Hamilton, with both the hands of him, the said William W. Hamilton, about the neck of the said Mary Elizabeth Butler, otherwise called Lizzie Lyman, and her the said Mary Elizabeth Butler, otherwise called Lizzie Lyman, then and there feloniously, purposely, and of his deliberate and premeditated malice did choke, suffocate, and strangle; and that the said William W. Hamilton, a certain necktie about the neck of her the said Mary Elizabeth Butler, otherwise called Lizzie Lyman, then and there feloniously, purposely, and of his deliberate and premeditated malice did fix, tie, and fasten, and that the said William W. Hamilton with the necktie aforesaid, the neck of her, the said Mary Elizabeth Butler, *386 otherwise called Lizzie Lyman, then and there feloniously, purposely, and of his deliberate and premeditated malice did further choke, suffocate, and strangle; of which said choking, suffocating, and strangling of the neck of her the said Mary Elizabeth Butler, otherwise called Lizzie Lyman, by both of the hands of him the said William W. Hamilton, as well as by the said necktie, she, the said Mary Elizabeth Butler, otherwise called Lizzie Lyman, then and there instantly died. | The definition of murder in Code, S 798, D.C.Code 1929, T. 6, S 21, is declaratory of the common law, and is not a new or statutory definition. | Is murder a common law crime? | 002854.docx | LEGALEASE-00119753-LEGALEASE-00119754 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 20667 | Bergin v. Texas Beef Grp., 339 S.W.3d 312 | 118A+271 | Reviewing the record for evidence that the "cause of action" Texas Beef asserted in the Randall County suit accrued there, we note that a cause of action embraces every fact necessary to be shown in order to recover. Commercial State Bank v. Algeo, 331 S.W.2d 84 (Tex.Civ.App.-Eastland 1959, writ dismissed). Summarized, the proof required for Texas Beef to obtain its requested declaratory relief was that the feedlot located in Hansford County was an agricultural operation as defined by Agriculture Code " 251.002(1); that it was lawfully in operation one year or more; and that the feedlot conditions the Bergins alleged caused a nuisance existed substantially unchanged since the established date of operation according to Agriculture Code " 251.003. See Holubec, 111 S.W.3d at 38. | Under general venue provision in effect at time feed lot operator filed action for declaratory judgment that neighbors' complaint for nuisance against feed lot based on emission of airborne dust was barred under Agriculture Code's statute of repose, venue was appropriate in county where nuisance cause of action accrued, and not county where operator received letters from neighbors' attorney which asserted injury from emissions, threatened litigation, and made offer of settlement. V.T.C.A., Agriculture Code S 251.004(a); V.T.C.A., Civil Practice & Remedies Code S 15.001. | Does a cause of action need to embrace every fact necessary to be shown in order to recover? | Action - Memo 27 - ANG.docx | ROSS-003295362-ROSS-003295364 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 20668 | Brown v. Mortg. Elec. Registration Sys., 738 F.3d 926 | 334+2 | Finally, Brown's argument concerning the conflation of two types of illegal exactions in Arkansas is without merit. Under Arkansas law, an illegal-exaction action as a matter of law is a class action brought on behalf of all taxpayers. Parker v. Perry, 355 Ark. 97, 131 S.W.3d 338, 346 (2003) ("We have repeatedly held that an illegal-exaction suit is a collective single action prosecuted on behalf of all affected taxpayers."); Worth, 89 S.W.3d at 878. There are two types of illegal-exaction cases under Arkansas law"illegal-tax cases and public-funds cases. Brewer v. Carter, 365 Ark. 531, 231 S.W.3d 707, 709 (2006). A public-funds case is one in which the taxes are being misapplied or illegally spent, and an illegal-tax case involves a tax that is itself illegal. Id. Brown argues that she pled a public-funds case, which is not brought on behalf of all taxpayers. Arkansas cases involving the misuse of public funds, however, proceed on a class theory that includes all Arkansas taxpayers. See, e.g., McGhee v. Ark. State Bd. of Collection Agencies, 360 Ark. 363, 201 S.W.3d 375, 376"77 (2005) ("This is an action pursuant to Article 16, Section 13, of the Arkansas Constitution to protect the taxpayers of the State of Arkansas from alleged misuse of public funds.... [and] [o]ur common law makes an illegal-exaction suit under Article 16, Section 13, of the Arkansas Constitution a class action as a matter of law."). Thus, the type of illegal-exaction suit pled under Arkansas law does not alter the class membership. | Arkansas circuit clerk's removed illegal-exaction claim under Arkansas law, alleging various originators and servicers of loans used the Mortgage Electronic Registration System (MERS) to avoid paying recording fees on mortgage assignments and, thus, deprived Arkansas counties of revenue, was a "class action" within the statutory definition of the Class Action Fairness Act (CAFA); although clerk's complaint asked the court to certify a class under the Arkansas constitutional provision defining an illegal-exaction action rather than under the Federal Rule of Civil Procedure governing class actions or the similar Arkansas rule, the judicially-created procedure for bringing an illegal-exaction claim provided a mechanism for plaintiffs to pursue a class action to collectively resist illegal taxation. 28 U.S.C.A. S 1332(d)(1)(B); Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.; A.R.S. Const. Art. 16, S 13; 16 A.R.S. Rules Civ.Proc., Rule 23. | "What is an ""illegal exaction action""?" | Action - Memo 29 - ANG.docx | ROSS-003312477-ROSS-003312479 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 20669 | Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586 | 148+2.10(7) | In sum, Nollan and Dolan restrain governments from using the permitting process to do what the Takings Clause would otherwise prevent"i.e., take a specific property interest without just compensation. Those cases have no application when governments impose a general financial obligation as part of the permitting process, because under Apfel such an action does not otherwise trigger the Takings Clause's protections. By extending Nollan and Dolan's heightened scrutiny to a simple payment demand, the majority threatens the heartland of local land-use regulation and service delivery, at a bare minimum depriving state and local governments of "necessary predictability." Apfel, 524 U.S., at 542, 118 S.Ct. 2131 (opinion of KENNEDY, J.). That decision is unwarranted"and deeply unwise. I would keep Nollan and Dolan in their intended sphere and affirm the Florida Supreme Court | Extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation; as in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury. U.S.C.A. Const.Amend. 5. | Does the imposition of a general obligation to pay money trigger the just compensation requirement of the takings clause? | 002724.docx | LEGALEASE-00120211-LEGALEASE-00120212 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20670 | Republic Tobacco Co. v. N. Atl. Trading Co., 381 F.3d 717 | 237>1 | Federal constitutional law adds another layer of limitations on the kind of defamatory statements for which a defendant may be found liable. At common law, defamation was a strict liability tort, but constitutional doctrine has imposed culpability, or fault, requirements in most cases. See New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The level of culpability is determined by whether the statement was of public concern and whether the plaintiff is a public or private figure. Moreover, overlapping with the common law rule, the First Amendment protects statements on matters of public concern that are not provably false. See Milkovich, 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). For further discussion of various First Amendment limitations to defamation actions see Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure "" 20.33"20.35 (2d. ed.1992). | To make out defamation claim under Illinois law, plaintiff must show that defendant made false statement concerning him, that there was unprivileged publication to third party with fault by defendant, which caused damage to plaintiff. Restatement (Second) of Torts § 588 (1977). | Was defamation a strict liability tort under common law? | 002905.docx | LEGALEASE-00119919-LEGALEASE-00119920 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 20671 | Brewer v. State, 341 P.3d 1107 | 148>17 | Firefighting is undoubtedly an exercise of the State's police power, as we acknowledge above. But we decline to hold that the police power is coextensive with the doctrine of necessity, i.e., that because firefighting is an exercise of the police power, all damage caused during the State's firefighting activities is per se necessary and therefore not compensable under the takings clause. We agree with an observation of a federal claims court: "If the police power exception to just compensation is limited only by the sovereign power of the Government ... it becomes the exception which swallows the rule, an intolerable result." In the context of firefighting, as we explain below, the doctrine of necessity requires that there be an imminent danger and an actual emergency giving rise to actual necessity; otherwise, damage may be compensable under the Takings Clause even though it is caused by the State's otherwise valid exercise of the police power. | State's action in conducting burnouts of vegetation on landowners' property to deprive advancing wildfires of fuel was an exercise of its police power to fight fires, and thus the damage that was caused to property was for a public use, as was required for landowners' claim that they were entitled to just compensation under Takings Clause; important aspect of police power was suppression and prevention of forest fires, State's entry upon private land for purpose of controlling fire was explicitly authorized by statute, and fighting wildfires, even on private property, was of benefit to the public as a whole regardless of whether only individual landowners were immediately benefited. Const. Art. 1, S 18; AS 41.15.040, 41.15.045. | "When the police power exception to just compensation is limited only by the sovereign power of the Government, what could be the possible result?" | 003087.docx | LEGALEASE-00120347-LEGALEASE-00120348 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 20672 | People v. Hopkins, 38 Misc. 2d 459 | 350H>1276 | Adultery, as thus defined, does not require that the act shall be voluntary as to each of the parties' (Signs v. State, 35 Okla Cr. 340, 344, 250 P. 938, 940). "Where both the circumstances of force and consanguinity are present, it is not less incest because the element of rape is added, and it is not less rape because perpetrated upon a relative" (People v. Stratton, 141 Cal. 604, 608"609, 75 P. 166, 167"168). "In our judgment the better reasoning supports the conclusion that the consent of the female is not necessary to constitute the crime of incest by the male. It is his intent and his act that the law punishes him for" (David v. People, 204 III. 479, 486"487, 68 N.E. 540, 542). "[T]he male may be convicted of incest even though he accomplished the act without the consent of the female and against her will" (Gaston v. State, 95 Ark. 233, 235, 128 S.W. 1033, 1034). | Defendant's conviction of fornication in a Pennsylvania court did not necessarily adjudicate that the female consented to the sexual acts and consequently it did not necessarily contradict the operative facts on which the defendant's subsequent convictions in the same Pennsylvania court involving the same woman on charges of rape and assault with intent to rape depended, where defendant who had been convicted of assault with intent to rape in New York contended that Pennsylvania convictions could not be considered as felonies in determining defendant's status under New York law as a second felony offender. 18 P.S.Pa. SS 4721, 4722; Penal Law, S 1941. | Is the consent of the female necessary to constitute incest by the male? | Incest - Memo 71 - RK.docx | ROSS-003325578-ROSS-003325579 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 20673 | Spacecon Specialty Contractors v. Bensinger, 713 F.3d 1028 | 237>48(1) | Colorado courts have indicated "a matter is of public concern whenever it embraces an issue about which information is needed or is appropriate, or when the public may reasonably be expected to have a legitimate interest in what is being published." Williams v. Continental Airlines, Inc., 943 P.2d 10, 17 (Colo.App.1996) (quotations omitted). | Any bias against construction contractor on part of filmmaker did not render messages conveyed in documentary film about contractor's alleged use and abuse of foreign workers matters of purely private rather than public concern, and, thus, actual malice standard was still applicable to contractor's defamation claim against filmmaker under Colorado law, even though filmmaker was a consultant for union, which paid for the film, and he delegated many of the critical film-making tasks to union members, knowing that union was embroiled in a campaign against contractor based on its alleged failure to pay employees area standards wages and benefits. | What is considered a matter of public concern? | 003333.docx | LEGALEASE-00120618-LEGALEASE-00120619 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 20674 | Pan Am Sys. v. Hardenbergh, 871 F. Supp. 2d 6 | 92>2161 | We can also tell from the Complaint that the speech at issue in this case involves matters of public concern. Matters of public concern are those that can be "fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146"47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Matters of private concern are those that address "matters only of personal interest." Id. Courts determine whether a statement pertains to a public concern by assessing its "content, form and context." Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). | In determining under Maine law whether an allegedly defamatory statement impacts a matter of public concern, so as to be protected by First Amendment, the relevant community need not be very large and the relevant concern need not be of paramount importance or national scope; rather, it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested. U.S.C.A. Const.Amend. 1. | What is considered a matter of public concern? | Libel and Slander - Memo 156 - RK.docx | ROSS-003312381-ROSS-003312382 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 20675 | Johnson v. Citimortgage, 351 F. Supp. 2d 1368 | 237>5 | Under Georgia law, no proof of special damages is necessary in the case of libel per se. General damages are recoverable. Weatherholt v. Howard, 143 Ga. 41, 84 S.E. 119 (1915). However, where the defamatory words do not constitute libel per se, special damages, such as loss of employment, income, or profits, must be pleaded. Hood v. Dun & Bradstreet, Inc., 486 F.2d 25 (5th Cir.1973), cert. denied, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974). Libel per se is a publication charging that one is guilty of a crime, dishonesty or immorality. Rosanova v. Playboy Enterprises, Inc., 411 F.Supp. 440, 445 (S.D.Ga.1976), aff'd, 580 F.2d 859 (5th Cir.1978). To be actionable, the statement must be both false and malicious. Mathews v. Atlanta Newspapers, Inc., 116 Ga.App. 337, 340, 157 S.E.2d 300 (1967). Malice is inferred from the nature of the defamation. Rosanova, 411 F.Supp. at 445. | Under Georgia law, malice is inferred from nature of defamation. West's Ga.Code Ann. S 51-5-1. | How is malice inferred in defamation? | Libel and Slander - Memo 161 - RK.docx | ROSS-003284755-ROSS-003284756 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 20676 | Hood v. Dun & Bradstreet, 335 F. Supp. 170 | 237>4 | The word "malice" in Georgia defamation law may be used in two quite different ways. As the court explicated in Ajouelo v. Auto-soler, 61 Ga.App. 216, 6 S.E.2d 415, 419 Malice in the law of defamation may be used in two senses: First, in a special and technical sense to denote absence of lawful excuse or to indicate absence of privileged occasion. Such malice is known as "implied" malice or "malice in law." There is no imputation of ill will with intent to injure. Second, "malice" involving intent of mind and heart, or ill will against a person and is classified as express malice or "malice in fact." | Use of "malice" in general definition of libel means only implied malice or lack of lawful excuse. | What is malice in the law of defamation? | 003350.docx | LEGALEASE-00120829-LEGALEASE-00120830 | Condensed, SA | 0.83 | 1 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20677 | Sugg v. Hopkins, 11 F.2d 517 | 289+426(1) | The plaintiffs not having had the intention to become partners, the partnership relation did not exist between them, unless the express or implied agreement governing their relations in the transaction in which they were associated had the legal effect of making them partners. We shall not attempt to define a partnership, or to enumerate the elements essential to the existence of that relationship. It is enough to determine whether the relation between the plaintiffs did or did not have one authoritatively recognized requisite of a partnership. Though, under the arrangement between plaintiffs, one of them contributed property and the other services to carry on a joint business for their common benefit, and Ferguson was to pay to Sugg one-half of the amount of any loss sustained, and was to be paid by Sugg one-half of the amount of any net profit realized, they were not partners, if Ferguson was not a part owner of the sheep or their increase, or the profits therefrom as they accrued. There is no partnership between persons associated in business, where one of them is the sole owner of the property or capital employed therein, and of the increase or profits as they accrue, and so long as they are undivided. One is not a partner who has no proprietary interest in profits as profits. Meehan v. Valentine, 12 S.Ct. 972, 145 U.S. 611, 36 L.Ed. 835; Freeman v. Huttig Sash & Door Co., 153 S.W. 122, 105 Tex. 560, Ann. Cas. 1916E, 446; Buzard v. Bank of Greenville, 2 S.W. 54, 67 Tex. 83, 60 Am.Rep. 7; Fink v. Brown (Tex. Com. App.) 215 S.W. 846; Rosenblum v. Springfield Produce Brokerage Co., 137 N.E. 357, 243 Mass. 111; Petition of Williams (C.C.A.) 297 F. 696; 20 R.C.L. 828, 834. | One is not a partner who has no proprietary interest in profits as profits. | Is proprietary interest in the business a necessary element in partnership? | 003401.docx | LEGALEASE-00120841-LEGALEASE-00120842 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 20678 | Patteson v. City of Peoria, 318 Ill. App. 245 | 231H+2242 | In State Public Utilities Commission v. Monarch Refrigerating Co., 267 Ill. 528, 108 N.E. 716, Ann.Cas.1916A, 528, the refrigerating company did a general warehouse business, operating a cold storage plant for the accommodation of the public, and the question was whether it was a public utility within the meaning of the Public Utilities Act (Laws 1921, p. 702.)Section 10 of the act defined a public utility as meaning any corporation, individual, etc., that, among other things, owned or operated any plant, equipment or property for the production, storage, transmission, sale, delivery or furnishing of heat, cold, light, power, electricity or water; or for the storage or warehousing of goods. It further provided that "the term "warehouse," when used in this Act, includes all elevators or storehouses where grain is stored for a compensation, whether the property stored be kept separate or not." It was contended that this provision excluded the refrigerating company from the terms of the act, but the court held that the several provisions of the act must be considered together, so as to give effect to the legislative intent. The opinion then calls attention to the fact that the business could well come under the term "public utility" as used in the act, aside from any mention of warehouses therein, and holds that it is obvious that the legislature did not intend to exclude all other warehouses where goods or commodities other than grain are stored for compensation. This case is another example of where the legislative intent was specifically expressed, as including all warehouses, in that portion of the section preceding the provision as to those for the storage of grain. How it tends to uphold the contention of appellants is not apparent. | Policewomen, police matrons, and clerks of identification bureau were not "policemen" within Policemen's Minimum Wage Act defining policemen to mean any member of a regularly constituted police department of a city and to include the chief of police, assistant chief of police, chief of detectives, captains, lieutenants, sergeants, plain-clothes men, and patrolmen, in view of Policemen's Annuity and Benefit Fund Act of 1921, expressly including terms policewoman, police matron and secretary of such police department in the definition of policemen. S.H.A. ch. 24, SS 860a, 860b; S.H.A. ch. 24, SS 11-1, 11-2, 956. | What does Section 10 of the Public Utilities Act define public utility as? | 042562.docx | LEGALEASE-00120937-LEGALEASE-00120938 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 20679 | Whipple v. Hill, 14 La.Ann. 437 | 354+21 | The part owners of a ship or steamboat are tenants in common, and not partners, and each one only sell his own share therein, and not the entirety of the ship or boat, as he could do in cases of partnership. Story on Partnership, * 419. | The ownership of a steamboat used in carrying persons and merchandise remains in the partners individually, the use only being brought into the partnership which such transactions create. Therefore the ordinary partnership creditors of the owners have no right to be paid in preference to the individual creditors out of the proceeds of the boat received on policies of insurance. | Are part owners of a ship partners to each other? | 021849.docx | LEGALEASE-00121148-LEGALEASE-00121149 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 20680 | In re B.C. Rogers Poultry, 455 B.R. 524 | 366+2 | Accordingly, a party who is not a party to a contract may assert a right of equitable subrogation based on the equities of the situation. The doctrine of equitable subrogation applies "whenever any person, other than a mere volunteer, pays a debt or demand which in equity and good conscience should have been paid by another, or where one finds it necessary for his own protection to pay the debt for which another is liable." First Nat'l Bank of Jackson v. Huff, 441 So.2d 1317, 1319 (Miss.1983). The principle of equitable subrogation is not reserved only for the rights of a creditor. Indeed, "a surety can be subrogated not only to the rights of the creditor, but also the rights of the principal on whose behalf the surety paid." In re Big Idea Prods., Inc., 372 B.R. 388, 397 (Bankr.N.D.Ill.2007); see Ellis v. Powe, 645 So.2d 947, 951 (Miss.1994) ("Subrogation is the substitution of one person in the place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities"); accord Travelers Indem. Co. v. Clark, 254 So.2d 741, 745 (Miss.1971); Oxford Prod. Credit Ass'n. v. Bank of Oxford, 196 Miss. 50, 16 So.2d 384, 388 (1944). CIT contends that Rogers and Williams' claim fails because (1) the letters of credit did not satisfy the entire debt owed by BCR, and (2) CIT was not unjustly enriched. | Provision of Mississippi's version of Uniform Commercial Code (UCC) addressing subrogation in letter of credit transactions removes the independence principle as a basis for denying equitable subrogation in letter of credit transactions, although statute, by conferring subrogation rights only after beneficiary has been paid, maintains integrity of independence principle. West's A.M.C. S 75-5-117. | Does a surety subrogate to the rights of only those creditors whom it pays on the principal's behalf? | 043908.docx | LEGALEASE-00121117-LEGALEASE-00121118 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20681 | Neu v. Gibson, 928 N.E.2d 556 | 219=36(1) | The nature of equitable subrogation is, as its name indicates, equity. The doctrine substitutes one who fully performs the obligation of another, secured by a mortgage, for "the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." Restatement (Third) of Property " 7.6(a) (1997); see Bank of New York v. Nally, 820 N.E.2d 644, 653 (Ind.2005). This avoids an inequitable application of the general principle that priority in time gives a lien priority in right. See Jones v. Rhoads, 74 Ind. 510, 513 (1881). In considering whether to order subrogation and thus bypass the general principle of priority, courts base their decisions on the equities, particularly the avoidance of windfalls and the absence of any prejudice to the interests of junior lienholders. Nally, 820 N.E.2d at 653. | Equitable subrogees were not entitled to interest at rate provided for in mortgage of which they assumed first lien position following purchase of real property; equitable subrogees' position was different from mortgagee they helped pay off at closing, since they were not simply swappers of debt, but exposed themselves to both market risk and market reward, and court's earlier ruling giving them priority was a substantial step of equity which largely rescued them from the calamity that might have otherwise befallen them of ending up in line behind another mortgagee. | Is equity the nature of equitable subrogation? | Subrogation - Memo # 677 - C - NO.docx | ROSS-003297053-ROSS-003297055 | Condensed, SA, Sub | 0.31 | 0 | 1 | | 1 | 1 |
| 20682 | Liberty Nat. Life Ins. Co. v. Cox, 98 Ga. App. 582 | 368=1 | This was a suit to recover additional indemnity on account of accidental death of the insured on two policies of life insurance. One of the policies contained an exclusion under the additional benefits provision that where death resulted from suicide whether sane or insane such benefits would not be provided, and the other contained an exclusion that where death resulted from self-destruction whether sane or insane such benefits would not be provided. The evidence showed that the deceased took his 22 caliber rifle and went out of the house stating to his wife (the plaintiff) that he was going hunting; that he stopped in the back yard and squatted down petting his Boxer dog and was last seen holding the rifle in his right hand and thus engaged some five or ten minutes before the witnesses heard the fatal shot, and that upon hearing the shot, the witnesses found the deceased lying on his back mortally wounded by a bullet fired at close range. There was testimony that the insured had never evidence an intention to commit suicide and the evidence otherwise affirmatively showed that he had no difficulties which would apparently induce such an intent. There was evidence that the gun was defective and could be accidentally discharged merely by being jolted, and the death certificate introduced stated that the cause of death was suicide and that the fatal wound was self-inflicted. The jury found for the plaintiff and the defendant made a motion for a new trial which was amended by the addition of one special ground amplifying the general grounds, and the exception here is to the judgment overruling that motion. Held: The term "self-destruction" as used in the exclusion of policy benefits under the double indemnity provision of the second policy will be construed to mean intentional self-destruction, and when so construed is synonymous with the word "Suicide." Colonial Life & Acc. Ins. Co. v. Croom, 96 Ga.App. 264, 265, 99 S.E.2d 554. Accidental self-destruction is not legally suicide. | Accidental self-destruction is not legally "suicide". | Is accidental self-destruction suicide? | 044452.docx | LEGALEASE-00121044-LEGALEASE-00121046 | Condensed, SA | 0.98 | 0 | 1 | | 0 | 1 |
| 20683 | Rowlette v. State, 188 N.C. App. 712 | 148=2.23 | The United States Supreme Court affirmed, stating, "[f]rom an early time, this Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time." Id. at 526, 102 S.Ct. at 790, 70 L.Ed.2d at 749 (emphasis added). The Supreme Court "has never required the State to compensate the owner for the consequences of his own neglect.... It is the owner's failure to make any use of the property-and not the action of the State-that causes the lapse of the property right; there is no "taking" that requires compensation." Id. at 530, 102 S.Ct. at 792-93, 70 L.Ed.2d at 751-52. The courts of several other states have cited Texaco in upholding the constitutionality of their states' unclaimed property acts. | State's retention of dividends and interest accrued on abandoned property while property was in possession of Treasury was not unconstitutional taking, since it was owners' abandonment of property, and not any overt action by State, that resulted in deprivation. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. Const. Art. 1 S 19; West's N.C.G.S.A. S 116B-64. | Does state have power to transfer property to another after its abandonment for a certain period of time of time? | 017416.docx | LEGALEASE-00121821-LEGALEASE-00121823 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 20684 | Com. v. Huggins, 68 A.3d 962 | 110=451(3) | A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion. Commonwealth v. Cook, 544 Pa. 361, 676 A.2d 639, 647 (1996). Accordingly, a ruling admitting evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." Commonwealth v. Minich, 4 A.3d 1063, 1068 (Pa.Super.2010) (citations omitted). Moreover, in cases involving the admission of expert testimony: | Allowing drug enforcement agent to testify, in jury trial, as both an expert, for limited purpose of decoding drug jargon, and a layperson, regarding his personal perceptions during drug investigation and his opinion that defendant was one of the parties to an intercepted telephone conversation, was not improper in prosecution for criminal conspiracy and delivery or possession with intent to deliver a controlled substance; trial court specifically directed Commonwealth to delineate between agent's expert and fact-based opinions, which it did, and defense counsel was permitted to engage in rigorous cross-examination of agent regarding his expertise and the substance of his testimony. Rules of Evid., Rules 701, 702, 704, 42 Pa.C.S.A. | Is a trial court granted broad discretion in its ruling on evidentiary issues? | Pretrial Procedure - Memo # 101 - C - SJ.docx | LEGALEASE-00012030-LEGALEASE-00012031 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 20685 | State ex. rel. Dominion Freight Line v. Dally, 369 S.W.3d 773 | 241=2(1) | Missouri law does not declare that a cause of action originates when tortious conduct occurs. Notably, the Supreme Court of Missouri has emphasized that "the mere occurrence of an injury itself does not necessarily coincide with the accrual of a cause of action" because "[s]uch a reading would deprive the additional language "and is capable of ascertainment" of any meaning." Martin v. Crowley, Wade and Milstead, Inc., 702 S.W.2d 57, 58 (Mo. banc 1985). However, the supreme court has also rejected that the proper interpretation of "capable of ascertainment" is "when plaintiff subjectively should have discovered the injury and damages." Powel v. Chaminade College Preparatory, Inc., 197 S.W.3d 576, 581 (Mo. banc 2006).[I]f damages are not capable of ascertainment at either the time of the wrong or the time of [actual] discovery of the wrong and resulting damages, then what is the test for when damages are capable of ascertainment? Although this Court has not previously clearly articulated a specific, generally applicable test to be used in making this determination, a consistent approach is evident upon careful review of this Court's decisions from the last 40 years: the statute of limitations begins to run when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." | Because a cause of action originates when it accrues, Missouri's statute of limitations borrowing statute not only determines when a cause of action accrues but where it accrues for purposes of determining whether the borrowing statute operates to bar an action. V.A.M.S. S 516.190. | Does the law declare that a cause of action originates when tortious conduct occurs? | 005332.docx | LEGALEASE-00122577-LEGALEASE-00122578 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20686 | Dotlich v. Tucker Hester, 49 N.E.3d 571 | 46H+502 | The court found that, under Indiana law, a legal malpractice claim consists of four elements: an attorney-client relationship, negligence, proximate cause, and damages, and that a claim "based on negligently advising a client to file a bankruptcy petition accrues, at the latest, at the time the petition is filed." Strada Design Associates, 326 B.R. at 237; see also Alvarez, 224 F.3d at 1279 (same); In re Bounds, 495 B.R. 725, 732 (W.D.Tex.2013) (same); Dow, 132 B.R. at 859°60 (same). The court noted that Dotlich's counterclaim alleged that "Tucker breached his duty of care by filing Dotlich's bankruptcy petition" and that "Tucker's breach was the proximate cause of Dotlich's damages." Id. at 18°19 (citing In re Seven Seas Petroleum, Inc., 522 F.3d 575, 583 (5th Cir.2008) (the facial allegations of the complaint limit and guide the accrual analysis)). | The elements of an action for legal malpractice are: (1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff. | Do the facial allegations in the complaint limit and guide the court's analysis of when a cause of action accrues? | 05190.docx | LEGALEASE-00084906-LEGALEASE-00084907 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 20687 | Cunard S.S. Co. v. Mellon, 262 U.S. 100 | 23H+281 | The merchant ship of one country voluntarily entering the territorial limits of another subjects herself to the jurisdiction of the latter. The jurisdiction attaches in virtue of her presence, just as with other objects within those limits. During her stay she is entitled to the protection of the laws of that place and correlatively is bound to yield obedience to them. Of course, the local sovereign may out of considerations of public policy choose to forego the exertion of its jurisdiction or to exert the same in only a limited way, but this is a matter resting solely in its discretion. The rule, now generally recognized, is nowhere better stated than in The Exchange, 7 Cranch, 116, 136, 144 (3 L. Ed. 287), where Chief Justice Marshall, speaking for this court, said: "The jurisdiction of the nation within its own territory is necessarily exclusive and absolute. It is susceptible of no limitation not imposed by itself. Any restriction upon it, deriving validity from an external source, would imply a diminution of its sovereignty to the extent of the restriction, and an investment of that sovereignty to the same extent in that power which could impose such restriction. | In view of Act Nov. 23, 1921, c. 134, 42 Stat. 223, § 3, supplemental to the National Prohibition Act, the act is operative throughout the territorial limits of the United States, subject only to the exception with respect to the Panama Canal and Panama Railroad contained in title 3, § 20, of the original act, 41 Stat. 305, 27 U.S.C.A. § 63, and applies to all merchant vessels, whether foreign or domestic, when within the territorial waters of the United States, but does not apply to domestic vessels when outside such waters. | Is jurisdiction of a nation within its own territory necessarily exclusive and absolute? | 019881.docx | LEGALEASE-00123277-LEGALEASE-00123278 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 20688 | Jillian Mech. Corp. v. United Serv. Workers Union Local 355, 882 F. Supp. 2d 358 | 25T+210 | As a preliminary matter, if the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist. See Specht v. Netscape Communications Corp., 306 F.3d 17, 26 (2d Cir.2002); Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir.1972). Generally, when the parties disagree on whether an agreement was ever reached, a court must decide that question as an initial matter. Telenor Mobile Comm. AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir 2009). The Second Circuit has held that "questions about whether a contract was ever made ... are presumptively to be decided by the court even without a specific challenge to the agreement to arbitrate." Id. | On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists, and if there is, the court must then determine whether the particular dispute falls within the scope of arbitration clause. | How do courts construe an arbitration agreement if the contract embodying the purported arbitration agreement never existed? | 007154.docx | LEGALEASE-00125553-LEGALEASE-00125554 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 20689 | Macon Tel. Pub. Co. v. Elliott, 165 Ga. App. 719 | 237+123(10) | Appellee is the Betty Elliott named in the article, and after demanding and failing to receive a retraction she commenced this action under Code Ann. " 105-703 (Ga.L.1893, p. 131), alleging that the statements were not made by her and that they were false and maliciously defamatory. A jury returned a verdict for appellee of $50,000 actual and $150,000 punitive damages. Held:Code Ann. " 105-703, supra, provides: "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of any individual and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel, the publication of such libelous matter being essential to recovery." | Jury question was presented as to whether newspaper reporter was aware that statements attributed to plaintiff were false when they were published and therefore trial court did not err in denying newspaper's motion for directed verdict and judgment notwithstanding the verdict on issue of its liability for punitive damages in libel action. Code, SS 81A-150(a), 105-703. | What is newspaper libel? | 021102.docx | LEGALEASE-00125473-LEGALEASE-00125474 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20690 | Prestridge v. Lazar, 132 Miss. 168 | 366+1 | Appellant contends that he was not a volunteer in discharging said mortgages for the purpose of freeing the title to said land. The reason and philosophy of the principle involved should be kept in mind in determining this question. The doctrine of subrogation is "one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice." It does not rest on contract, but upon principles of natural equity. The courts should rather incline to extend than restrict the operation of the equities. It applies wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection. Robinson v. Sullivan, 102 Miss. 581, 59 South. | The doctrine of subrogation applies wherever any person other than a mere volunteer pays a debt or demand which in equity or good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where one has such an interest in property as makes it necessary for him to get in an outstanding claim or equity for its protection. | Does the doctrine of subrogation rest on a contract or principles of natural equity? | Subrogation - Memo 1023 - C -CAT.docx | ROSS-003311650-ROSS-003311651 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20691 | In re Johnson's Estate, 240 Cal. App. 2d 742 | 366+1 | The above notwithstanding, the court applied the rule or doctrine of equitable subrogation to the facts at bar. Said to be controlling precedent for such action is Estate of Kemmerer, 114 Cal.App.2d 810, 251 P.2d 345, 35 A.L.R.2d 1393, wherein the decedent's mother paid for the funeral expenses and his mistress for the expenses incident to decedent's last illness. Each of the above payments was voluntarily made. Decedent's widow appealed from the order allowing reimbursement and disallowing her claim that the estate be set aside to her under sections 640 and 645, Probate Code, both governing estates under $2500. She contended that since the decedent's creditors above mentioned had received their money and therefore had no claim against his estate, such expenses are to be deemed "paid" within the meaning of section 645 and she, as the surviving widow, was entitled to receive the estate free of any claims by those who had assumed to arrange for care of decedent during his last illness and for his subsequent burial. The court perceived no difficulty in applying the doctrine of equitable subrogation to the factual situation there presented. Quoted with approval in support of such conclusion is this discussion of the rule in American Jurisprudence: "The doctrine of (equitable) subrogation is not a fixed and inflexible rule of law or of equity. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. Equity first applied the doctrine strictly and sparingly. It was later liberalized, and its development has been the natural consequence of a call for the application of justice and equity to particular situations. Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance and extent, and is no longer, as formerly, limited to sureties and quasi sureties, but is now broad and expansive and has a very liberal application. As now applied, it is broad | Doctrine of equitable subrogation will be applied liberally to promote justice. | Is the doctrine of equitable subrogation the natural consequence of a call for the application of equity to particular situations? | 044416.docx | LEGALEASE-00125218-LEGALEASE-00125219 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 20692 | State v. Connelly, 104 N.C. 794 | 146+21 | We are of opinion that the statute, thus enlarged in its scope, does not embrace clerks of the superior courts and like public officers. While its provisions are general and comprehensive within a prescribed limit, that limit is, it seems to us, clearly defined. The words "any officer," as employed in it, in their orderly connection, are not used in an unlimited and independent sense, but they have a limited meaning and application. They are separated only by a comma from the next succeeding word, which designates a second class of persons, and this word is likewise so separated from that which follows it, and so on; and thus they refer to and are connected with the word "corporation," as if the sentence in which they are found were "any officer of any corporation," etc. Indeed, in their proper relation and connection, this sentence expresses their true meaning. The word "corporation" limits all the preceding words as to the classes of persons they each designate, just as the other words "person or copartnership," next succeeding to it, limit the preceding words in their sense and application. So that the words "any officer," as used, imply any officer of any corporation, and not generally any public officer, such as clerks of the superior court and like officers. If the legislature intended to embrace such public officers generally, it would most likely have done so in plain, direct terms, not leaving its purpose to conjecture and inference. Statutory criminal offenses are not created simply by implication; the purpose to create them must appear in terms or by necessary implication clearly to be seen. | Code, S 1014, which declares that, if any officer, agent, etc., of any corporation shall embezzle any money, he shall be guilty of a felony, does not embrace clerks of the superior courts and like public officers. | Is a clerk of a court a public officer? | Clerks of court - Memo 10 - VP.docx | LEGALEASE-00015517-LEGALEASE-00015518 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 20693 | People v. Tainter, 304 Ill. App. 3d 847 | 203+709 | The crux of involuntary manslaughter is recklessness. "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by that statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Emphasis added.) 720 ILCS 5/4-6 (West 1994). | The crux of involuntary manslaughter is recklessness. S.H.A. 720 ILCS 5/9-3. | Is mental state of involuntary manslaughter considered as recklessness? | 019372.docx | LEGALEASE-00125725-LEGALEASE-00125726 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 20694 | Los Angeles Cty. Employees Ass'n, SEIU, 81 Cal. App. 4th 164 | 316P+27 | The interpretation of "attach's" in the civil service context was before us in Seidler v. Municipal Court (1993) 12 Cal.App.4th 1229, 16 Cal.Rptr.2d 90. There, we explained: "Whether Government Code section 72002.1 applies to [a particular position] ... depends on the meaning given the word "attach's." The word is not defined expressly in the code. However, the meaning given the word can be implied from its use in companion statutes. Article 4 of chapter 9 of title 8 of the Government Code specifies the officers and attach's which may be appointed in the municipal court districts of Los Angeles County. The statutes authorize the appointment by the judges of a court administrator "who shall be the clerk" and authorize the court administrator to appoint additional personnel. (Gov.Code, '' 72750.4?72754.) In municipal court districts of a specified size, the judges may appoint a jury commissioner who shall "hold office at the pleasure of ... the judges." (Id., ' 72757.) | Deputy court clerks for municipal court were "attach ]=s" of the municipal court within meaning of statute requiring civil service commission to administer civil service provisions to attach ]=s of municipal court, and thus deputy court clerks were entitled to civil service rights that were generally applicable to officers and employees of county. West's Ann.Cal.Gov.Code S 72002.1. | What are attachs? | 013422.docx | LEGALEASE-00126276-LEGALEASE-00126277 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20695 | State v. Canady, 116 Wash. 2d 853 | 227+6 | Despite the foregoing, the lower courts found that the judge who issued the warrant had de facto authority over Canady. This issue was not decided in Eng because the defendant in Eng conceded that the court had de facto authority over him. Eng, at 195, 776 P.2d 1336. Canady never conceded this issue; he has challenged it from the outset. The cases cited as controlling by the Court of Appeals, State v. Smith, 52 Wash. App. 27, 756 P.2d 1335 (1988) and State v. Franks, 7 Wash. App. 594, 501 P.2d 622 (1972), are not on point because those cases involved invalid judges rather than invalid courts. The appropriate rule here is that stated in Higgins v. Salewsky, 17 Wash. App. 207, 212, 562 P.2d 655 (1977). Under a constitutional government such as ours, there can be no such thing as an office de facto, as distinguished from an officer de facto. Hence, the general rule that the acts of an officer de facto are valid has no application where the office itself does not exist. Boyer v. Fowler, 1 Wash.Terr. 101 (1860); 3 E. McQuillin, The Law of Municipal Corporations " 12.104 (3d ed. rev. 1973); De jure office as condition of a de facto officer, Annot., 99 A.L.R. 294 (1935). | Judge pro tempore who issued search warrant could not have acquired de facto authority where department in which judge was sitting was not created by ordinance until two years after defendant's arrest; no de jure office existed that would have permitted judge pro tempore to be de facto officer. West's RCWA 35.20.020; U.S.C.A. Const.Amend. 4. | Are the acts of an officer de facto valid when the office itself does not exist? | 013492.docx | LEGALEASE-00126319-LEGALEASE-00126320 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 20696 | Peat, Marwick, Mitchell & Co. v. Superior Court, 200 Cal. App. 3d 272 | 307A+3 | The court's inherent power to curb abuses and promote fair process extends to the preclusion of evidence. Even without such abuses the trial court enjoys "broad authority of the judge over the admission and exclusion of evidence." (3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, " 1707.) As the People observe, trial courts regularly exercise their "basic power to insure that all parties receive a fair trial" by precluding evidence. (Castaline v. City of Los Angeles (1975) 47 Cal.App.3d 580, 592, 121 Cal.Rptr. 786 [exclusion of 11th-hour witness' testimony to prevent surprise]; Clemens v. American Warranty Corp. (1987) 193 Cal.App.3d 444, 451, 238 Cal.Rptr. 339; Hyatt v. Sierra Boat Co. (1978) 79 Cal.App.3d 325, 337, 145 Cal.Rptr. 47.) In so doing trial courts generally employ the "motion in limine," which is "not expressly authorized by statute" but is within the trial court's "inherent power to entertain and grant." (3 Witkin, op. cit. supra, " 2011.) "The scope of such motion is any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial." (Clemens v. American Warranty Corp., supra, 193 Cal.App.3d at p. 451, 238 Cal.Rptr. 339, citations omitted.) Its purpose is to avoid the unfairness caused by the presentation of prejudicial or objectionable evidence to the jury, and the "obviously futile attempt to 'unring the bell.'..." (Hyatt v. Sierra Boat Co., supra, 79 Cal.App.3d at p. 337, 145 Cal.Rptr. 47.) | A court's inherent power to curb abuses and promote fair process extends to the preclusion of evidence. | Is a motion in limine expressly authorized by statute or is it within the trial courts inherent power to entertain and grant such motions? | 037516.docx | LEGALEASE-00125880-LEGALEASE-00125881 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 20697 | Neel v. Strong, 114 S.W.3d 272 | 316P+351 | The Supreme Court has held that an individual is an officer of the state only if that individual exercises the sovereign power of the state "with some continuity and without control of a superior power other than the law." State ex rel. Webb v. Pigg, 363 Mo. 133, 249 S.W.2d 435, 438 (banc 1952) (reviewing Mo. Const. Article VII, Section 13). In legal actions on behalf of the state, only the Attorney General may represent the state with sovereign power. "The attorney general shall institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state..." Section 27.060 RSMo 2000. The Attorney General does have the power to appoint assistant attorneys general as necessary to properly perform the duties of his office. However, assistant attorneys general hold their positions at the pleasure of the attorney general and maintain authority only under the discretion of the attorney general. Section 27.020.1 RSMo 2000. | Attorneys who represented the State in tobacco-related litigation were "special assistant attorneys general" who maintained their authority only under the discretion of the Attorney General, and therefore, because the attorneys could not freely exercise their duties, they were not "public officers" for compensation purposes. V.A.M.S. Const. Art. 4, S 21; V.A.M.S. S 27.020, subd. 1. | When is an individual who exercises the sovereign power of the state considered an officer of the state? | 013471.docx | LEGALEASE-00126794-LEGALEASE-00126795 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 20698 | Skip Kirchdorfer v. United States, 6 F.3d 1573 | 148+298 | A "permanent" physical occupation does not necessarily mean a taking unlimited in duration. Hendler v. United States, 952 F.2d 1364, 1376 (Fed.Cir.1991). A "permanent" taking can have a limited term. Id. In Hendler, this court concluded that the distinction between "permanent" and "temporary" takings refers to the nature of the intrusion, not its temporal duration. Id. at 1377. A "permanent" physical occupation, as distinguished from a mere temporary trespass, involves a substantial physical interference with property rights. See id. | Issue of whether subcontractor abandoned temporary warehouse on military base when Navy broke into, entered, and assumed control of warehouse after contract dispute arose between subcontractor and contractor of housing construction project did not preclude finding of compensable taking under Fifth Amendment; however, it was relevant to question of duration of government-authorized physical intrusion for purposes of determining what compensation was just. U.S.C.A. Const.Amend. 5. | Does distinction between permanent and temporary takings refers to its temporal duration? | 017675.docx | LEGALEASE-00127127-LEGALEASE-00127128 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 20699 | Padilla v. Rumsfeld, 352 F.3d 695 | 402+1018 | The government contends that the President has the inherent authority to detain those who take up arms against this country pursuant to Article II, Section 2, of the Constitution, which makes him the Commander"in"Chief, and that the exercise of these powers domestically does not require congressional authorization. Moreover, the argument goes, it was settled by Quirin that the military's authority to detain enemy combatants in wartime applies to American citizens as well as to foreign combatants. There the Supreme Court explained that "universal agreement and practice" under "the law of war" holds that "[l]awful combatants are subject to capture and detention as prisoners of war by opposing military forces" and "[u]nlawful combatants are likewise subject to capture and detention, but in addition they are subject to trial and punishment by military tribunals for acts which render their belligerency unlawful." 317 U.S. at 30"31, 63 S.Ct. 1. Finally, since the designation of an enemy combatant bears the closest imaginable connection to the President's constitutional responsibilities, principles of judicial deference are said by the government to assume heightened significance. | President's detention of American citizen on American soil as an "enemy combatant" was not authorized by statute allowing the use of appropriated funds for "expenses incident to the maintenance, pay, and allowances of prisoners of war, other persons in the custody of the Army, Navy or Air Force whose status is determined by the Secretary concerned to be similar to prisoners of war, and persons detained in the custody of (the Armed Services) pursuant to Presidential proclamation." 10 U.S.C.A. S 956(5). | Does the Commander in Chief have the authority to capture those who take up arms against America? | 008361.docx | LEGALEASE-00128091-LEGALEASE-00128092 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20700 | Employees Ret. Sys. v. Lewis, 109 Ga. App. 476 | 316P+252 | The county is the relevant political subdivision because it is the contracting unit here. The term "county officer" has been variously applied under different constitutional and statutory provisions. To be termed and classified as a county officer within the provisions of Art. XI, Sec. II, Par. I of the Constitution (Code Ann. " 2*7901), he must be: (1) elected by the qualified voters of the county; (2) hold office for four years; (3) be a resident of the county for two years; and (4) be a qualified voter. Houlihan v. Saussy, 206 Ga. 1, 5, 55 S.E.2d 557. The following have been held county officers within these constitutional requirements; an ordinary [Lee v. Byrd, 169 Ga. 622, 151 S.E. 28]; a clerk of the superior court [McGill v. Simmons, 172 Ga. 127(1), 157 S.E. 273]; a tax collector, tax receiver and sheriff [Truesdel v. Freeney, 186 Ga. 288, 292, 197 S.E. 783]; a county treasurer [Bradford v. Justices of the Inferior Court, 33 Ga. 332; Massenburg v. Commissioners of Bibb County, 96 Ga. 614, 23 S.E. 998]; and a coroner [McBrien v. Starkweather, 43 Ga.App. 818(4), 160 S.E. 548]. Though not within the constitutional provisions the following have been held to be statutory county officers: a member of the board of commissioners and revenues [Rhodes v. Jernigan, 155 Ga. 523(2), 117 S.E. 432; Malone v. Minchew, 170 Ga. 687(2), 153 S.E. 773; Sweat v. Barnhill, 171 Ga. 294(9), 155 S.E. 18; Hulgan v. Thornton, 205 Ga. 753, 757, 55 S.E.2d 115], a county school superintendent [Culbreth v. Camady, 168 Ga. 444, 148 S.E. 102; Altman v. Taylor, 178 Ga. 689, 692, 173 S.E. 828; Marshall v. Walker, 183 Ga. 44, 187 S.E. 81]; a member of the county board of education [Stanford v. Lynch, 147 Ga. 518, 94 S.E. 1001; Clarke v. Long, 152 Ga. 619, 111 S.E. 31], a county school commissioner "equivalent to a member of the board of education [McLain v. State, 71 Ga. 279, and a clerk of the board of county commissioners [Cooper v. State, 101 Ga. 783, 29 S.E. 22]. | Sheriff is regarded as "county officer" within constitutional provision, relating to election, terms of office and removal of county officers. Const. art. 11, 5 2, par. 1; Code, SS 24-201, 24-2811. | Is a clerk of the superior court a county officer? | Clerks of court - Memo 65 - RK.docx | LEGALEASE-00017554-LEGALEASE-00017555 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20701 | Watts v. Manheim Twp. Sch. Dist., 84 A.3d 378 | 102+260(5) | Nevertheless, a school district is "authorized to prescribe rules and regulations only to the extent of carrying into effect the will of the Legislature as expressed in a statute." Wyland, 52 A.3d at 582 (quoting Pa.Cmwlth.2008)). A school district does not have the discretion to disregard a statutory mandate. Wyland. | School district's appeal of trial court's decision granting divorced parent a permanent injunction and directing the district to resume busing services for his child to and from parent's residence was not frivolous, and therefore parent was not entitled to counsel fees and damages for delay; although the district did not prevail on appeal, it nevertheless presented a justifiable question for review. Rules App.Proc., Rule 2744, 42 Pa.C.S.A. | Is a school district authorized to prescribe rules and regulations only to the extent of carrying into effect the will of the Legislature as expressed in a statute? | Education - Memo # 33 - C - SU.docx | ROSS-003286702-ROSS-003286703 | Condensed, SA, Sub | 0.12 | 0 | 1 | | 1 | 1 |
| 20702 | RLI Ins. Co. v. S. Union Co., 341 S.W.3d 821 | 217+1702 | Our conclusion serves the policy underlying the use and enforcement of waiver of subrogation provisions. A waiver of subrogation provision " 'in effect simply require[s] one of the parties to the contract to provide [property] insurance for all of the parties.' " Nodaway Valley Bank v. E.L. Crawford Constr., Inc., 126 S.W.3d 820, 828 (Mo.App. W.D.2004) (quoting Tokio Marine & Fire Ins. Co., Ltd. v. Employers Ins. of Wausau, 786 F.2d 101, 105 (2d Cir.1986)). The objective of a waiver of subrogation clause is to enhance the effectiveness of insurance procurement clauses. Id. Insurance procurement clauses reflect an " 'intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk ... instead.' " Id. (quoting Acadia Ins. Co. v. Buck Constr. Co., 756 A.2d 515, 519 (Me.2000) (citation omitted)). The waiver of subrogation clause thus " 'avoids both parties having to face potential liability for the same risk.' " Id. (quoting Acadia Ins. Co., 756 A.2d at 519).Including MGE within the scope of intended third parties beneficiaries afforded protection by the waiver of subrogation provision set forth in paragraph 11.3.7 of the General Conditions negates the motivation MGE would otherwise have to pursue claims of contribution against the Construction Manager, subcontractors, or other persons or entities alleged to have been involved in creating the circumstances giving rise to the explosion. In fact, it is apparent that paragraph 11.3.7's specific reference to Owner's other forces as a class of persons covered by the waiver of subrogation provision was intended to afford the trades who did sign Triumph's AIA Contract the precise protection represented by the outcome of this case. | Insurance procurement clauses reflect an intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk instead. | Does the waiving a subrogation clause avoid potential liability for two parties? | Subrogation - Memo # 1136 - C - TJ.docx | ROSS-003312250-ROSS-003312252 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20703 | Jack v. Wong Shee, 33 Cal. App. 2d 402 | 366+35 | However, the chief claim of respondent is that the appellants never pleaded or proved a right of subrogation and made no request that they be subrogated to the rights of the Mercantile Trust Co. and of Kepner under his first trust deed. Respondent argues that since the appellants elected to stand upon their legal rights under the Mercantile Mortgage Co. trust deed, to cause the property to be sold thereunder, and to assert legal title acquired by virtue of such sale, they have waived their right of subrogation. It is true that under the law as it exists today the right of subrogation is not one which a party may assert by his own action, but is one which may be asserted only in a civil action. Offer v. Superior Court, 194 Cal. 114, 117, 228 P. 11; 23 Cal.Jur., p. 945; 25 R.C.,L., p. 1391, sec. 74. And it is further true that a right of subrogation may be waived. 25 R.C.L., p. 1393, sec. 76; 60 C.J., p. 722, sec. 33. Respondent's position is that there is neither allegation nor proof of facts sufficient to justify subrogation because the appellants have not alleged the existence of the Jack mortgage and prayed that, because of their mistake, they be subrogated to the rights of the Mercantile Trust Co. Appellants, on the other hand, contend that they have alleged all the facts, and that under a prayer for general relief they are entitled to subrogation. The essential difficulty with appellants' position is that while they have alleged and proved facts which would have entitled them to subrogation, they have also alleged and proved facts which show that they have waived their right of subrogation. The cross-complaint, after alleging the execution of the various mortgages and trust deeds, alleges that Loui Hoy and Wong Shee were in default on the Mercantile Mortgage Co. trust deed and that The Shoong Investment Co. caused the trustee under said deed of trust to sell the property under the provisions of that trust deed; and that at such sale The Shoong Investment Co. purchased the property and paid the | The right of subrogation may be waived. | Can the right of subrogation be waived? | Subrogation - Memo # 1062 - C - NS.docx | ROSS-003300429-ROSS-003300431 | Condensed, SA, Sub | 0.99 | 0 | 1 | 1 | 1 | 1 |
| 20704 | Kamm v. City of Portland, 132 Or. 311 | 148+264 | There is another ground upon which the quashing of the writ must be sustained. While the statute to which we have referred provides that the writ shall be concurrent with the right of appeal, that statute has been held to mean that an appeal and review cannot both be taken at the same time. Whether that was the proper construction to be given to the statute is no longer an open question. In Cooper v. Bogue, 92 Or. 122, 179 P. 658, 659, this court, speaking through Mr. Justice Benson, said: "Can a party prosecute an appeal from a judgment while a writ of review to the same court is still pending? This question has been definitely answered in the negative by this court, in the case of Clubine v. City of Merrill, 83 Or. 87, 163 P. 85. The two remedies are concurrent, but they cannot be exercised at the same time."On rehearing (92 Or. 122, 180 P. 103, 104), speaking through Mr. Justice Burnett, the court said: "What we undertook to decide, and did decide, was that under the statute, L. O. L. " 605, the writ of review and the remedy by appeal are concurrent, so that, if a litigant is dissatisfied with the result of a case in an inferior court, he may choose either of the two remedies as he may be advised; but, having made his election, it amounts to a waiver of the other proceeding."Again, in Beebe v. City of St. Helens, 124 Or. 638, 264 P. 845, Mr. Justice Belt, speaking for the court, said: "It is well settled in this jurisdiction that, while appeal and writ of review are concurrent remedies, they cannot be prosecuted at the same time." In the Clubine Case, supra, the court, speaking through Mr. Chief Justice McBride, said: "While review and appeal are concurrent remedies, a party cannot exercise both at the same time (citing authorities). If the appeal were pending, review would not lie." | Order quashing writ of review calling on court to pass on same questions as presented by appeal from city council's condemnation proceedings, held proper. ORS 34.040, n3S8.510. | Can a party prosecute an appeal from a judgment while a writ of review to the same court is pending? | 008224.docx | LEGALEASE-00129115-LEGALEASE-00129116 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20705 | McClure v. Conner, 259 Ga. 678 | 30+358 | We have held, however, that under the Appellate Practice Act, an appeal which, standing alone, would be subject to discretionary-appeal procedures, is appealable as a matter of right if it is classifiable as a cross appeal to an appealable order. OCGA " 5-6-34(c); Brown v. Assoc. Fin., etc., Corp., supra; Southeast Ceramics, Inc. v. Klem, 246 Ga. 294, 271 S.E.2d 199 (1980); Executive Jet Sales v. Jet America, 242 Ga. 307, 248 S.E.2d 676 (1978).In Centennial Ins. Co. v. Sandner, Inc., 259 Ga. 317, 380 S.E.2d 704 (1989), we have recently held, in a case involving multiple parties, that a party can file a cross appeal against another party who is not an appellant in the main appeal. | Prospective purchaser's appeal of $1,533 in damages awarded in tortious interference with contractual rights action against owner of adversing sign on property, which was filed as independent appeal in Court of Appeals, but which was transferred by Court of Appeals to Supreme Court, was properly before Supreme Court as cross appeal to prospective vendor's appeal of award of specific performance of real estate sales contract and damages, even though prospective vendor was not party to prospective purchaser's appeal of judgment against sign owner, and thus rule requiring that application for discretionary appeal be made when there is action for damages and result is judgment of $2,500 or less was applicable. O.C.G.A. SS 5-6-34(c), 5-6-35(a)(6), 5-6-37, 5-6-38. | Can an appellee institute a cross appeal against a party other than the appellant? | 008269.docx | LEGALEASE-00129579-LEGALEASE-00129580 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 20706 | Mediterranean Enterprises v. Ssangyong Corp., 708 F.2d 1458 | 25T+143 | Ssangyong argues that the arbitration clause "was designed to cover "any" disputes between the parties." MEI argues that the phrase "arising hereunder" means "arising under the contract itself" and was not intended to cover "matters or claims independent of the contract or collateral thereto." Neither side points to, and additional research has not uncovered, cases in this circuit which define "arising hereunder" in the context of an arbitration agreement. However, we are persuaded by a line of cases from the Second Circuit that MEI's interpretation is the more reasonable one. | Arbitration clause in agreement providing for arbitration of any disputes "arising hereunder" was not designed to cover any dispute between parties, but, rather, only those relating to interpretation and performance of contract itself. | What does the phrase arising hereunder in an agreement mean? | Alternative Dispute Resolution - Memo 523 - RK.docx | ROSS-003286518-ROSS-003286519 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 20707 | Abbott ex rel. Abbott v. Burke, 199 N.J. 140 | 1.41E+216 | Nonetheless, the Abbott I Court did address preliminarily some of the constitutional issues. In particular, the Court found "the thorough and efficient education clause ... does not require 'the legislature to provide the same means of instruction for every child in the state.' "Id. at 291 [495 A.2d 376] (quoting Landis v. Ashworth, 57 N.J.L. 509, 512 [31 A. 1017] (Sup.Ct.1895)). The Court noted differences in the districts "may result in different levels of spending required to achieve the same educational opportunity." Id. at 292 [495 A.2d 376]. The Court noted concerns regarding municipal overburden3 and reliance on local tax base for funding. Id. at [495 A.2d 376]. | School Funding Reform Act's (SFRA) use of census-based method for funding one-third of the cost of special education in school districts did not violate constitutional provision regarding funding of public school system, even if districts had a greater concentration of special education students than was estimated under the census-based method; the SFRA funded the other two-thirds of special education costs by allocating an excess dollar amount for each special education student in a district, and extraordinary aid was provided to reimburse districts for the expense of providing special education for those students whose costs were extraordinary, meaning above either $40,000 or $55,000 depending on whether the services were provided in-district. N.J.S.A. Const. Art. 8, S 4, par. 1; N.J.S.A. 18A:7F-43 et seq. | Does the thorough and efficient education clause require legislature to provide same means of instruction for every child in state? | Education - Memo # 96 - C - SU.docx | ROSS-003300265-ROSS-003300366 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20708 | Ashe v. Distribuidora Norma Inc., 965 F. Supp. 2d 212 | 170A+1278 | Lastly, the Court further considered a potential monetary sanction against the defendants for the tardiness of the disclosure of their expert witness and the expert's report. The Court deems a monetary sanction a close matter although ruled unnecessary, at this stage of the proceedings, as there is no harm caused to the plaintiff, and the delay was short lived. However, the non-complying party is always reminded and forewarned that a party that fails to comply with the Court's management orders does it at his or her own risk. "[A] litigant who ignores a case-management deadline does it at his peril ... We have made it clear that district courts may punish such dereliction in a variety of ways.... [L]itigants have an unflagging duty to comply with clearly communicated case-management orders...." Rosario"D"az v. Gonz"lez, 140 F.3d 312, 315 (1st Cir.1998). The Court reminds the parties that the matter is not merely non-compliance with a management order, but involves preclusion of an expert due to extreme misconduct by the defendants' under Young v. Gordon, 330 F.3d at 81. | Before ordering the potential preclusion of an expert witness as a sanction for non-compliance with court-imposed deadline regarding disclosure of experts, the court must examine various factors: (1) the opponent-party's ability to overcome its adverse effects, i.e., harmlessness; (2) the history of litigation; (3) the late disclosure's impact on the district court's docket; and (4) the sanctioned party's need for the precluded evidence. Fed.Rules Civ.Proc.Rules 26, 37, 28 U.S.C.A. | Do litigants have an unflagging duty to comply with clearly communicated case-management orders? | 026584.docx | LEGALEASE-00129964-LEGALEASE-00129965 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | |
| 20709 | Negrin v. Kalina, 2010 WL 2816809 | 25T+143 | Because the arbitration clause is narrow, the next question is "whether the dispute is over an issue that is on its face within the purview of the clause, or over some collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Louis Dreyfus Negoce, 252 F.3d at 224 (internal quotation marks omitted). "[A] collateral matter will generally be ruled beyond its purview." Id. | Arbitration clause contained in garment company's articles of incorporation and bylaws did not require the arbitration of plaintiff owner's breach of fiduciary duty and fraud and conversion claims against defendant owners. The dispute arose out of an alleged conspiracy to oust plaintiff owner from the company by encouraging a creditor to withhold a substantial rental payment, thereby triggering an eviction action and a seizure of plaintiff owner's assets. However, the arbitration clause was narrow and only covered disputes relating to distribution of profits, liquidation, and non-performance. | Are collateral matters beyond the purview of narrowly drawn arbitration clauses? | 007446.docx | LEGALEASE-00131409-LEGALEASE-00131410 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 20710 | Wiley v. Snedaker, 2000 PA Super 413, 6, 765 A.2d 816 | 307A+93 | Finally, in a footnote the trial court provides an alternative basis for it ruling. It writes: An additional ground for precluding the testimony is that Plaintiff failed to list Dr. Snyder as a potential witness and did not list the deposition transcript as a potential exhibit in her Pre Trial Statement. See Pa.R.C.P. 212.2(c)(1). Trial Court Opinion, 6/20/00, at n. 4. The purpose of a pre-trial statement is to prevent surprise. In this instance the testimony of this witness was obtained at the defendant's direction, under oath, and the purpose of Rule 212.2(c)(1) is not thwarted by the admission of this testimony. | Purpose of a pre-trial statement is to prevent surprise. Rules Civ.Proc., Rule 212.2(c)(1), 42 Pa.C.S.A. | What is the purpose of a pre-trial settlement? | Pretrial Procedure - Memo # 1648 - C - PB.docx | ROSS-003301364-ROSS-003301365 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 20711 | In re Hight, 426 B.R. 258 | 371+3400 | But focusing upon the existence or not of a prepetition relationship between the debtor and the creditor does not fit well with obligations arising from a governmental authority's ability to assess taxes. The problem, of course, is that there is no "relationship" between the governmental unit and the targeted payee other than the minimal relationship necessary to subject the taxpayer to that authority's power. As the court in Turner itself observed: Taxing authorities have no contractual arrangement with debtors. A taxing authority's rights commence with the filing of a tax return. 420 B.R. at 714. See also Dukeshere Farms, Inc. v. Ball, 405 Mich. 1, 15, 273 N.W.2d 877, 883 (1979) (Taxes are "exactions or involuntary contributions of money the collection of which is sanctioned by law and enforceable by the courts."). | Taxing authorities have no contractual arrangement with debtor-taxpayers; taxing authority's rights commence with the filing of tax return. | Is tax an exaction or involuntary contribution of money? | Taxation - Memo # 77 - C - SS.docx | ROSS-003288510-ROSS-003288511 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 20712 | Carter v. Doll House II, 69 F. Supp. 3d 1351 | 25T+146 | The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24'25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, the Eleventh Circuit has held that "[b]ecause arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties," Klay v. All Defendants, 389 F.3d 1191, 1203 (11th Cir.2004). Moreover, "if the parties had intended retroactivity, they would have explicitly said so." Thomas v. Carnival Corp., 573 F.3d 1113, 1119 (11th Cir 2009) (abrogated on other grounds); see also Azevedo v. Carnival Corp., 08"2051B"CIV, 2008 WL 2261195, (S.D.Fla.2008) (noting that while other circuits hold that broad arbitration clauses could be applied to disputes that arose prior to the arbitration contract, that is not the rule in the Eleventh Circuit). Accordingly, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." Id. (citations omitted). | Independent contractor agreement between gentlemen's club and dancers did not contain any indication that it would be applied retroactively, and thus dancers who signed agreement were only required to arbitrate Fair Labor Standards Act (FLSA) claims against club that accrued after the date they signed agreement. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b). | Do the parties to a contract need to explicitly state that an arbitration clause should apply retroactively? | 007478.docx | LEGALEASE-00132397-LEGALEASE-00132398 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 20713 | State ex rel. Bldg. Owners & Managers Ass'n of Milwaukee v. Adamany, 64 Wis. 2d 280 | 233+1837 | Plaintiffs also argue that the statute fails because it is a property tax law which fails to operate uniformly on all property. Uniformity is required by the Wisconsin Constitution in respect to property taxes.We find that the conflicting arguments in respect to uniformity miss the mark, for we see none of the indicia of a tax law in sec. 539. 1 Cooley, Taxation (4th ed., 1924), sec. 1, p. 61, said: "Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs."This definition was expressly approved in Fitch v. Wisconsin Tax Comm. (1930), 201 Wis. 383, 387, 230 N.W. 37. | Statute providing that tax reductions due to property tax relief should be passed on from landlords to tenants was not unconstitutional for lack of public purpose, where the statute dealt with a matter within the general concern of government and of legislation. Laws 1973, c. 90, S 539. | Is tax a contribution from persons and property levied to support a government and its needs? | 044684.docx | LEGALEASE-00131666-LEGALEASE-00131667 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20714 | State v. Savoie, 67 N.J. 439 | 164T+15 | The most authoritative definition of "by color of his office" appears to be that set forth in 1 Burdick, Law of Crime (1949) s 275, p. 395, and quoted in State v. Welesh, supra (10 N.J. at 372, 91 A.2d at 759). This requires that the service rendered "must be apparently, or pretended to be, within official power or authority, and the money must be taken in such apparent or claimed authority". The rendition by a public officer of a service in his private capacity, for which he receives or demands payment, is not technically extortion because not made under color of office. 3 Wharton, Criminal Law and Procedure (1957), s 1393, pp. 790-791. This distinction has been the basis for frequent exculpation of this offense. Collier v. State, 55 Ala. 125 (Sup.Ct.1876); United States v. Sutter, 160 F.2d 754, 756 (7 Cir. 1947); Commonwealth v. Francis, 202 Pa.Super. 313, 191 A.2d 884, 889 (Super.Ct.1963), Cert. den. 375 U.S. 985, 84 S.Ct. 517, 11 L.Ed.2d 472 (1964). | For commission of crime of extortion, it is not required that there be coercive or oppressive use of powers of office for purpose of taking the money or thing of value, or that there be demand by the officer preceding the taking. N.J.S.A. 2A:105-1. | What is the definition of under color of office for purposes of bribery? | Bribery - Memo #293 - CE8.docx | LEGALEASE-00022474-LEGALEASE-00022475 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | |
| 20715 | Best v. Nokomis Nat. Bank, 76 Ill. 608 | 83E+729 | Appellant makes the point that the plaintiff was not the legal holder of the drafts, nor had it any interest therein; that the indorsement to R. A. Betts, cashier, transferred the legal interest to him. The answer to this is, the record does not show any indorsement of the bills when they were offered in evidence. This court held, in Brinkley v. Going, Breese, 366, 2d ed., that a payee of a note, although he may have written an assignment on the back of it, can maintain an action thereon in his own name. The indorsement is in the power and control of the payee, and he may strike it out or not, as he thinks proper, and the possession of the note by the payee is, unless the contrary appears, evidence that he is the bona fide holder of it. And the same doctrine is held in Parks v. Brown, 16 Ill. 454. | A payee of a note, although he may have written an assignment on the back of it, can maintain an action thereon in his own name, and by describing himself as "assignee" of the person to whom he made the assignment may be rejected as surplusage. | Can a payee strike out the endorsement or the assignment indorsed on the back of the note if he chooses? | 010191.docx | LEGALEASE-00133672-LEGALEASE-00133673 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 20716 | Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000 | 413+1939.11(3) | Respecting the second, it is said that the act is a complete and exclusive code, containing definite terms which alone govern all questions of substantive right in cases such as the one at bar; that such terms are to be found in sections 3308 (a) and 3305 (a) of the Revised Statutes of 1929 (Mo. St. Ann. ss 3308 (a), 3305 (a), pp. 8242, 8238), and are to be liberally construed pursuant to section 3374 of the act (Mo. St. Ann. s 3374, p. 8293). Also our attention is directed to the well"known practice of this court and our several Courts of Appeals to apply sedulously the rule of liberal construction. Quite naturally and consistently we have no disposition to depart from that rule, wherever it may find proper application in proceedings brought under the act. Illustrative among a number of cases are Wahlig v. Grocer Co., 325 Mo. 677, 29 S.W.(2d) 128, 130; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.(2d) 601; Teague v. LacledeChristy Clay Products Co., 331 Mo. 147, 52 S.W.(2d) 880; Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 60 S.W.(2d) 44, 87 A.. L. R. 953, and Ransdell v. International Shoe Co., 329 Mo. 47, 44 S.W. (2d) 1, 82 A. L. R. 1249. | Whether person killed in accident was employee within meaning of Workmen's Compensation Act held question of law as respects power of Supreme Court to review Compensation Commission's findings and conclusions. V.A.M.S. S 287.020. | Is the workmens compensation act a complete code governing all questions of substantive rights under its terms? | 047979.docx | LEGALEASE-00133598-LEGALEASE-00133599 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20717 | Slay v. Wheeler, 84 S.W.2d 841 | 83E+573 | This brings to us a consideration of the last, and, no doubt, the controlling law question in the case. It is in substance raised by appellees' counter propositions 5 and 6, as follows:"5. An indorsement which purports to transfer to the indorsee a part only of the amount payable on a note, or merely an interest in the note, as in the instant case, is void and transfers no interest at all. | Where payees of note indorsed entire instrument to plaintiff and made contemporaneous agreement retaining part interest therein, indorsement held not "split indorsement" so as to render note non-negotiable, and plaintiff was entitled to recover to extent of interest in note (Vernon's Ann.Civ.St. art. 5934, S 32). | Is an indorsement which purports to transfer to the indorsee a part of the amount payable on a note void? | 010208.docx | LEGALEASE-00133898-LEGALEASE-00133899 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 20718 | Feldheim v. Plaquemines Oil & Dev. Co., 282 So. 2d 469 | 101+1434 | In a case involving a negotiable promissory note rather than a certificate of stock, the Louisiana Supreme Court in Zapata v. HonorineCifreo and ElijaBoweyre, 26 La.Ann. 87, 88 (1874) said, "It was competent for the plaintiff, as agent, to treat the instrument as between himself and all other persons Except his principal, as his own." | Uniform Stock Transfer Law providing, inter alia, that title to a certificate and to the shares represented thereby can be transferred by delivery of certificate endorsed either in blank or to a specified person by person appearing in certificate to be owner of shares did not preclude trial court, in proceeding to determine ownership of stock certificate endorsed in blank and delivered to owner's nephew who was her agent and attorney, from inquiring whether owner intended endorsement to transfer ownership of certificate to nephew or whether owner entrusted endorsed certificate to nephew in order to facilitate use of certificate as means of producing cash in case of need. LSA-R.S. 12:621-12-643, 12:624, 12:630, 12:641. | Can an agent treat an instrument as his own? | 009477.docx | LEGALEASE-00134426-LEGALEASE-00134427 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 20719 | Potter v. Tucker, 11 Ala. App. 466 | 8.30E+60 | "Date in general is not essential to a bill or note. If there be no date, it will be considered as dated at the time it was made." Aldridge v. Bank, 17 Ala. 45, 47. | Date in general is not essential to a bill or note; if there be no date it will be considered as dated at the time it was made. | What happens when no date is expressed in the bill or note? | 010237.docx | LEGALEASE-00134036-LEGALEASE-00134037 | Condensed, SA | 0.23 | 0 | 1 | 0 | 1 | |
| 20720 | Smith v. First Nat. Bank of Atlanta, 837 F.2d 1575 | 170A+1686 | Rule 36(b) "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Fed.R.Civ.P. 36 advisory committee's note. Smith has not satisfactorily shown on this appeal that the district court was wrong in deciding that withdrawal has prejudiced her in maintaining the action on the merits.The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the trier of fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions. Brook Village North Assoc. v. General Elec. Co., 686 F.2d 66, 70 (1st Cir.1982). | Requisites for withdrawal of admissions under federal rules were met; defendant's failure to timely respond to request for admissions was inadvertent and at most excusable neglect, and plaintiff was provided with opportunity to establish that delay in responding to request for admissions affected her ability to obtain appropriate discovery. Fed.Rules Civ.Proc.Rule 36(b), 28 U.S.C.A. | Is the prejudice contemplated by a rule withdrawing or amending admissions simply that a party who obtained the admission now has to convince the jury of its truth? | 028828.docx | LEGALEASE-00134446-LEGALEASE-00134447 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20721 | Brunner v. Morrison, 123 N.J. Eq. 224 | 371+2001 | What, in the final analysis, are taxes? Our courts have uniformly held that a tax in its essential characteristics is not a debt nor in the nature of a debt. A property tax is an exaction, an impost, levied by authority of a municipality upon property within its borders for the support of the municipality. It is neither a debt nor a contractual obligation. It is a charge upon the land in question. City of Camden v. Allen, Sup., 26 N.J.L. 398; Freeholders of Atlantic County v. Weymouth Township, 68 N.J.L. 652, 653, 54 A. 458; Baker v. East Orange, 95 N.J.L. 365, 367, 111 A. 681, affirmed 96 N.J.L. 267, 114 A. 926; Schradin v. Harry W. Bealer Co., 114 N.J.Eq. 459, 461, 168 A. 854, affirmed 117 N.J.Eq. 443, 176 A. 321. Cf. 6 McQuillin, Mun. Corp., 2d Ed. 1928, * 2519, pp. 268, 269. If all that be true and we have recently (1933) held it to be so (Township Committee of Township of Piscataway v. First Nat. Bank of Dunellen 111 N.J.L. 412, 168 A. 757, 90 A.L.R. 423) notwithstanding our broadly phrased statute relating to set-offs against a municipality, chapter 243, P.L.1927, p. 459, Comp.St.Supp.1930, * 37299, then to allow respondent the credit it seeks would, in our opinion, be to circumvent, and to run afoul of, the entire basic philosophy of taxation. For if taxes are for the support of government, it is difficult to understand how a set-off, such as is here sought to be exacted, could possibly support the poor, educate the young, provide police and fire protection build roads, pay public officials, employees, and tax pledged obligations, or support or carry on any other of the myriad obligations, duties, and functions of a governing body. Indeed, "to hold that a tax is liable to set-off would be utterly subversive of the power of government and destructive of the very end of taxation." City of Camden v. Allen, supra, 26 N.J.L. 398, at p. 399. See, also, Improvement Co. v. Assessors of Trusts of Sea Isle City, Sup., 61 N.J.L. 476, 477, 39 A. 1063, and McQuillin, op.cit. supra, * 2567, p. 367, and compare | A "tax," in its essential characteristics, is not a debt nor in nature of debt. | Is a tax generally a debt? | Taxation - Memo # 331 - C - NA.docx | ROSS-003290935-ROSS-003290937 | Condensed, SA, Sub | 0.97 | 0 | 1 | 1 | 1 | 1 |
| 20722 | Moore v. Mitchell, 30 F.2d 600 | 371+2001 | Taxes are imposts, not debts, collected for the support of the government. Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197. The form of procedure to collect them cannot change their character. No contractual or quasi contractual obligation to pay arises out of the assessment. The enforcement of revenue laws rests, not on consent, but on force and authority. State of Colorado v. Harbeck, 232 N.Y. 71, 133 N.E. 357. An action for debt cannot be maintained to collect a tax in the New York state courts. City of New York v. McLean, 170 N.Y. 374, 63 N.E. 380; Matter of Mattbie v. Lobsitz Mills Co., 223 N.Y. 227, 119 N.E. 389. See, also, City of Boston v. Turner, 201 Mass. 190, 87 N.E. 634. With the appellees and the property without the state, and the estate being administered in New York, the effort to collect a tax, for a political subdivision of Indiana, is repugnant to the settled principles of private international law, which preclude one state from acting as a collector of taxes for a sister state, and from enforcing its penal or revenue laws as such. The revenue laws of one state have no force in another. The taxing power of a state is, by the federal Constitution (Amendment 14), limited to persons and property within its jurisdiction. Wisconsin v. Pelican Ins. Co., 127 U.S. 266, 8 S.Ct. 1370, 32 L.Ed. 239. | Assessment of taxes does not raise contractual or quasi contractual obligation to pay. | Is a tax liability quasi-contractual? | 045090.docx | LEGALEASE-00133986-LEGALEASE-00133987 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 20723 | Obermiller v. Baasch, 284 Neb. 542 | 386+11 | Liability for trespass exists if an actor intentionally enters land in the possession of another, or causes a thing or third person to do so. Id. A trespass can be committed on, above, or beneath the surface of the land. Id. In the present case, the appellants intentionally constructed a fence along the boundary of Lot 9 on the appellees' land. As explained above, Lot 9 and the accreted land at issue are owned by the appellees; therefore, the appellants constructed this fence on land owned by the appellees. This fence blocks trails and access from Lot 9 to the appellees' accreted property. Because the appellants' construction of a fence on the appellees' land prevents the enjoyment of the appellees' rights of possession and property in the land, see id., it constitutes a trespass. | A trespass can be committed on, above, or beneath the surface of the land. | Where can a trespass be committed? | 047409.docx | LEGALEASE-00134822-LEGALEASE-00134823 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |
| 20724 | United States v. Menendez, 132 F. Supp. 3d 635 | 63+1(1) | First, the reasoning of Citizens United and later cases centers on whether the real value of independent expenditures to a candidate can justify limits placed on contributions. In contrast, bribery under " 201(b), which is defined as the corrupt acceptance of "anything of value" with the intent to be influenced in the performance of an official act, turns on a subjective definition of "anything of value." See, e.g., United States v. Renzi, 769 F.3d 731, 744 (9th Cir.2014) (The term "anything of value" is "defined broadly to include "the value which the defendant subjectively attaches to the items received." " (quoting United States v. Gorman, 807 F.2d 1299, 1305 (6th Cir.1986))); United States v. Williams, 705 F.2d 603, 623 (2d Cir.1983) ( "Corruption of office occurs when the officeholder agrees to misuse his office in the expectation of gain, whether or not he has correctly assessed the worth of the bribe."). Notwithstanding the statement in Citizens United that independent expenditures have no actual value to candidates, a jury could find that Defendant Menendez placed value, albeit subjective, in the earmarked donations given to Majority PAC by Melgen. | Physician's contributions to Super political action committee (PAC) could constitute "thing of value" under federal bribery statute, even if bona fide Super PAC was barred from coordinating its expenditures with candidate; jury could find that candidate placed value, albeit subjective, on earmarked donations given to Super PAC by physician, and that contributions had value to Super PAC. 18 U.S.C.A. S 201. | "When a defendant is being prosecuted for bribery, is the phrase anything of value interpreted objectively or subjectively?" | 011600.docx | LEGALEASE-00135008-LEGALEASE-00135009 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20725 | George W. Garig Transfer v. Harris, 226 La. 117 | 95+303(4) | Following trial of the case on the merits the trial judge, in his written reasons for judgment, expressed the view that he "had jurisdiction of the res, that is, the certificate in question," and therefore "had jurisdiction to proceed with the case, since ownership [of the certificate] was the principal issue," as reflected by the prayer of the petition; he also found that a reading of the petition showed there was clearly no merit to the other exceptions; and on the merits, concluded "that the contract under consideration here cannot be properly labeled either a contract of sale or a contract to sell, but more properly a contract conditioned upon an event happening over which neither of the parties had absolute control," and was governed by the provisions of the LSA'Civil Code declaring "When an obligation has been contracted on condition that an event shall happen within a limited time, the condition is considered as broken, when the time has expired without the event having taken place. If there be no time fixed, the 010123010124CONFIDENTIALcondition may always be performed, and it is not considered as broken, until it is become certain that the event will not happen", Art. 2038, but "The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it," Art. 2040. There was judgment decreeing the plaintiff to be the owner of Certificate 297"A, and ordering the City National Bank of Baton Rouge, Escrow Agent, to deliver to the plaintiff the contract of sale of said certificate and to the defendant the $4,000. While the Court, in its written reasons for judgment, expressed the opinion that "the plaintiff failed to show with sufficient clarity the damages sought, and hence that part of its demand will be rejected," the judgment is silent on the point. | A party whose obligation depends upon a condition may not rely, in defense, on nonperformance of the condition where it was through his fault it was not performed. LSA-C.C. art. 2040. | When is a condition fulfilled? | Bills and Notes- Memo 174- VP.docx | LEGALEASE-00025837-LEGALEASE-00025838 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20726 | Johnston v. Dean, 48 La. Ann. 100 | 307A+716 | No legal showing was made for a continuance, and we cannot disturb the judgment. No statement was made that the counsel were absent because of physical disability. It has been repeatedly held that a continuance will not be granted on account of the absence of counsel engaged in professional business elsewhere. Cameron v. Lane, 36 La. Ann. 716; Kohn v. Short, 18 La. Ann. 291; Brown v. Faulk, 12 La. 599. In cases of continuance the judge is vested with large discretion, and we will not disturb his ruling unless it is manifestly a gross abuse of the discretion with which he is vested. In this case an associate counsel was present, and we presume the case could have been tried without manifest injury to plaintiff. Evidently, this was the opinion of the district judge, and, as his ruling was based on several decisions of this court, we will affirm it. Judgment affirmed. | It was proper to refuse a continuance on account of the absence of leading counsel, not shown to have been absent on account of sickness, when associate counsel was present. | Will a continuance not be granted on account of the inability of counsel to attend in court? | 029358.docx | LEGALEASE-00136125-LEGALEASE-00136126 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20727 | Colvin v. Nelson, 4 La. Ann. 544 | 307A+723.1 | After judgment was rendered, an application was made by the counsel for the defendant for a new trial, inasmuch as, since the trial of the cause, a will of the deceased donor had been discovered and admitted to probate, and this will disposed of the property which was the subject of donation. Of this no affidavit was offered, as the Code of Practice requires. Art. 561. The judge refused to grant the new trial. A petition of intervention of the executor under the will was, at the same time, attempted to be filed, but the judge refused to admit it, on the ground that it would retard the decision of the cause. We think the judge did not err. The intervention would necessarily embarrass and complicate the case before the court, which turned upon the validity of the donation, and was so decided. The property going back to the succession, the questions arising under the will are to be determined when its execution is enforced. We think the course adopted by the judge, tending to preserve simplicity and order in the proceedings, was the best for the interest of both parties. | An intervention can retard the cause. Therefore, a vendor, though, if cited in warranty, he would be entitled to a continuance to call in warranty his vendors, is not, if he voluntarily intervenes. | Can an intervention retard the decision of the cause? | 030286.docx | LEGALEASE-00136884-LEGALEASE-00136885 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 20728 | In re Feldman's Estate, 387 Ill. 568 | 8.30E+186 | Opposed to the foregoing principles is the statement found in numerous cases that where the body of the note and a marginal memorandum differ as to date of maturity the provision in the body of the instrument is controlling. (Union State Bank of Minneapolis v. Benson, 38 N.D. 396, 165 N.W. 509, L.R.A.1918C, 345; Rivet & Sons v. Durand, 53 R.I. 48, 163 A. 476; Sharpe v. Nat. Bank of Commerce, Tex.Civ.App., 1925, 272 S.W. 321; Bush's Adm'r v. Bush, 276 Ky. 126, 122 S.W.2d 972; 10 C.J.S., Bills and Notes, " 44.) Other authorities apparently go so far as to say that words and figures in the margin constitute no part of a note, although we believe a close analysis of such cases will disclose that such marginal memoranda are simply held to be ineffective or immaterial when the body of the note fixed a definite amount or date. Fisk v. McNeal, 23 Neb. 726, 37 N.W. 616, 8 Am.St.Rep. 162; Langdale v. People, 100 Ill. 263; Merritt v. Boyden & Son, 191 Ill. 136, 60 N.E. 907, 85 Am.St.Rep. 246. And in support of what might be considered a modification or combination of the above rules of construction there are cases which hold that while a marginal memorandum is note controlling over the body of the note it can be looked to in resolving an ambiguity appearing in the body of the note. Corgan v. Frew, 39 Ill. 31, 89 Am.Dec. 286; People v. Lewinger, 252 Ill. 332, 96 N.E. 837, Ann.Cas.1912D, 239. Somewhere in the foregoing rules and principles lies the answer to the case at hand, the solution of which is obviously debatable. | Where note was dated March 1, 1931, and promised on or before date to pay a named person $3,000 with interest at 5 per cent. per annum from date until paid at named bank and contained in lower left-hand margin the statement "Due Mar. 1, 1939," the note matured on March 1, 1939. S.H.A. ch. 98, SS 27, 31, 47, 73, 78. | Will marginal notation(s) be regarded as part of a note if it conflicts with the terms of its main body? | 010159.docx | LEGALEASE-00137812-LEGALEASE-00137813 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20729 | Prins v. S. Branch Lumber Co., 20 Ill. App. 236 | 83E+542 | The contract between the original parties to the paper is to be gathered from all that appears on it; or, as it is said, "the contract must be collected from the four corners of the document," and any memorandum made by agreement of parties before signing will bind all parties to the instrument, and all who have or may be legally presumed to have notice thereof. 1 Dan. on Negotiable Instruments, Sec. 149 et seq., and authorities cited. In Jones v. Fales, 4 Mass. 245, the suit was brought upon a note on which, at the left side thereof, were written the words [Foreign Bills] included in brackets. Chief Justice Parsons said: "It is a reasonable conclusion that they must be all taken to be the words of the maker of the note, written before it was delivered to the promisee, and not the words of the promisee. If they are the words of the promisor they must be considered either as idle words, or as a part of the promise to which he gave his signature. I am not authorized to consider them as words without meaning; and I do not think it material whether they were part of the original contract, or added in explanation of it. For when the promisee took the note with these words on it, he was subject to the explanation in the memorandum, if it was one, as much as he would be bound by these words, if they were a part of the promise." | Where the words "order of" were stricken from printed blanks on which note was written, and "this note is not negotiable" was written in red ink on the margin, subsequent holder of note was put on notice of agreement that note should not be negotiated, and took subject to equities between the original parties. | Does the word foreign bills written underneath or in the margin of a note are a part of contract? | 010189.docx | LEGALEASE-00137842-LEGALEASE-00137843 | | 0.76 | 0 | 1 | | 1 | 1 |
| 20730 | Carleton v. State, 29 Ohio App. 187 | 28+1.5(4) | This court is not inclined to follow the claim of counsel for the defendant that a dog is not property, or of value, and is not the subject of burglary or larceny. In our opinion, a careful reading of the case of Hill v. Micham, 116 Ohio St. 549, 157 N. E. 13, and a study of the learned opinion of the court in that case, of the reasoning therein contained, can lead to but one conclusion, and that is that a dog is property of value and is a subject of larceny and burglary. It may be urged that the cited case is not on all fours with the case at bar, and, while that may be, yet we cannot escape the line of reasoning contained in the opinion in the cited case, and it occurs to us that, if the identical question here raised has never been fully passed upon by our Supreme Court, there is no better time or place than the present for its presentation for final determination by the highest court in our state. In making this suggestion, we have in mind the record in this case, which, if true, clearly, conclusively, and affirmatively shows that there are no extenuating circumstances in behalf of the defendant here. | Dog is subject of larceny and burglary. Gen.Code, S 12438. | Can a dog be a subject of a burglary? | Burglary - Memo 154 - JS.docx | ROSS-003331019-ROSS-003331021 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 20731 | Greenberger, Krauss & Tenenbaum v. Catalfo, 293 Ill. App. 3d 88 | 46H+1236 | When Betty's most recent motion for continuance was presented in the case sub judice, the circuit judge telephoned both Betty and her dentist to satisfy himself as to the bona fides of the medical condition which she claimed prevented her travel to Chicago. Following those telephone calls, the judge noted for the record that he had "no trouble understanding Mrs. Catalfo" and that her doctor gave the impression that "her problems were mostly cosmetic in nature." Further, the court observed, "I don't know why she couldn't travel." The court exercised its discretion and denied Betty's motion for yet another continuance. That denial was not arbitrary, was well within the court's sound discretion, and will not be disturbed on appeal. Sinram, 227 Ill.App.3d at 243, 169 Ill.Dec. 248, 591 N.E.2d 128. | Whether sanctions will be imposed under Supreme Court Rule, allowing sanctions against parties and their attorneys who sign documents that are interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in cost of litigation, is within sound discretion of circuit court and decision will not be reversed on appeal absent abuse. Sup.Ct.Rules, Rule 137. | Would a denial of another continuation of action be the discretion of the Court? | 031499.docx | LEGALEASE-00137168-LEGALEASE-00137169 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 20732 | Pesson v. Kleckley, 526 So. 2d 1220 | 308+100(2) | We next examine the question of Gerald LeBlanc's authority to bind Kleckley to the terms of the addendum. An agent is defined as one who acts for or in the place of another by authority from the latter. La.C.C. art. 2985 et seq.; Craft v. Trahan, 351 So.2d 277 (La.App. 3rd Cir.1977), writ denied 353 So.2d 1336 (La.1978). An actual agency relationship may be either express or implied. For some acts an agent's authority must be express. This is true for the agent to buy, sell, contract a loan, acknowledge a debt, draw or endorse promissory notes, and generally where the acts to be done are not merely those of administration or such as facilitate such acts. La.C.C. art. 2997; Hugh O'Connor, Inc. v. J. Robert Autenreith, Inc., 343 So.2d 1090 (La.App. 4th Cir.1977) , writ denied 345 So.2d 59 (La.1977). We think the act of binding a principal to the terms of a lease is one of those types of acts requiring express power. For LeBlanc to have had actual authority to bind Kleckley personally to the addendum the power given must have been express. | Agent must be given express power in order to have actual authority to bind principal personally to lease or addendum thereto. | When should the agents authority be express? | Principal and Agent - Memo 69 - KC.docx | ROSS-003291284-ROSS-003291285 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20733 | State v. Garcia-Gutierrez, 830 N.W.2d 919 | 67+10 | Here, the burglary statute contains a clear mens rea requirement to establish that some type of burglary has occurred"that the defendant must enter a building without consent and "with intent to commit a crime." Minn.Stat. " 609.582, subd. 1. But subdivision 1(b), which sets out the elements to establish the degree of burglary, and thus substantially raise the potential penalty imposed from possible imprisonment for up to one year (fourth-degree burglary), id., subd. 4, to up to twenty years (first-degree burglary), id., subd. 1, is silent on whether a defendant must knowingly possess a dangerous weapon to be convicted of first-degree burglary. | Defendants who entered victim's home and stole a safe containing a gun did not knowingly possess the gun, as required to support conviction for first degree burglary while possessing a dangerous weapon, absent any showing that defendants were aware that safe contained a gun or that there was something about the safe that suggested that it contained a gun. M.S.A. S 609.582. | What is the mens rea required for burglary? | Burglary - Memo 166 - KNR.docx | ROSS-003318566-ROSS-003318568 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 20734 | Tumelaire v. Naples Estates Homeowners Ass'n, 137 So. 3d 596 | 307A+375 | Finally, we conclude the court properly allowed the disclosure of information on who hired Tumelaire's accountant and the fees that he is being paid. Tumelaire has named the accountant as an expert in her case, and "where the discovery sought is directed to a party about the extent of that party's relationship with a particular expert, the balance of the interests shifts in favor of allowing the pretrial discovery." Allstate Ins. Co. v. Boecher, 733 So.2d 993, 997 (Fla.1999). No relief is warranted on this claim. | Mobile home park's homeowners association, which was sued by park resident and which alleged that resident was acting as park owner's agent in order to gain access to association's documents for owner's benefit, was entitled to discovery of information on who hired resident's accountant and the fees that accountant was being paid, where resident named accountant as an expert in her case. | "Where the discovery sought is directed to a party about the extent of that party's relationship with a particular expert, does the balance of the interests shift in favor of allowing the pretrial discovery?" | Pretrial Procedure - Memo # 4541 - C - PC.docx | ROSS-003304208-ROSS-003304209 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 20735 | Moncier v. Green, 182 Va. 368+165 127 | 308+165 | We said in the case of Amalgamated Clothing Workers v. Kiser, 174 Va. 229, 6 S.E.(2d) 562, 125 A.L.R. 1251: "A contract can only be ratified by the person who had the power to authorize it. Ratification is a substitute for original authority. Here the defendant did not have the power to ratify it. 2 Am. Jur. Agency, Sec. 216, page 173." | A contract can only be ratified by the person who had the power to authorize it. | Who can ratify a contract? | Principal and Agent - Memo 118 - KC.docx | ROSS-003291208-ROSS-003291209 | Condensed, SA | 0.76 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20736 | Dechio v. Raymark Indus., 114 Conn. App. 58 | 413+48 | I agree with the majority that the resolution of the fund's appeal turns on the construction of " 31"355. Our workers' compensation scheme is in derogation of the common law; see Willoughby v. New Haven, 123 Conn. 446, 454, 197 A. 85 (1937) ("the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope"); and the workers' compensation commission must act strictly within its authority. Nationwide Mutual Ins. Co. v. Allen, 83 Conn.App. 526, 532, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004). General Statutes " 31"355(b) provides in relevant part that "[w]hen an award of compensation has been made under the provisions of this chapter against an employer who fail[s] ... or is unable to pay ... and whose insurer fail[s] ... or is unable to pay ... such compensation shall be paid from the Second Injury Fund. The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund...." (Emphasis added.) | In construing workers' compensation law, courts must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the law. | Are workers compensation rights in derogation of common law? | Workers' Compensation Memo #281 ANC.docx | ROSS-003290998-ROSS-003290999 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | |
| 20737 | Roberts v. United States, 741 F.3d 152 | 34+5(8) | As an initial matter, we cannot fault the Board for relying upon the advisory opinions it received. The Board is obliged to provide a "reasoned explanation," Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C.Cir.1995), but any agency may meet that obligation by referring the reader to "clearly relevant sources other than a formal statement of reasons," Envtl. Def. Fund, Inc. v. EPA, 465 F.2d 528, 537 (D.C.Cir.1972). Indeed, we have looked before to the reasoning of an advisory opinion in upholding a decision of this very Board. See Mueller v. Winter, 485 F.3d 1191, 1199 (2007) (affirming reasonableness of the Board's position where it had "substantially concur[ed]" in the view of the Navy Personnel Command). | Under the unusually deferential application of the arbitrary or capricious standard of the Administrative Procedure Act (APA) under which Court of Appeals reviews a decision of a military corrections board, the board must give a reason that a court can measure against the arbitrary or capricious standard of the APA. 5 U.S.C.A. S 706(2)(A). | Is a military board of correction obliged to provide a reasoned explanation for its decision by referring to a clearly relevant source? | 008520.docx | LEGALEASE-00139381-LEGALEASE-00139382 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 20738 | Prochazka v. United States, 104 Fed. Cl. 774 | 34+13.5(3) | The United States Supreme Court has long held that "[C]ongress has the right to give, withhold, distribute, or recall [monetary benefits to military pensioners], at its discretion." United States v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 27 L.Ed. 352 (1883). The Department of the Navy ("Navy"), however, does not have the authority to interpret an Act of Congress, to change an officer's statutorily determined mandatory retirement date, albeit to achieve a personnel policy to advance junior officers. See United States v. Larionoff, 431 U.S. 864, 869, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (holding that a " 'soldier's entitlement to pay is dependent upon statutory right," and that accordingly the rights of the affected service members must be determined by reference to the statutes and regulations[.]" (quoting Bell v. United States, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961))). But, that is what happened in this case. | Navy's statutory interpretation to determine Judge Advocate General Corps (JAGC) officer's service creditable prior to enactment of Defense Officer Personnel Management Act (DOPMA) and his mandatory retirement date was unreasonable, in denying him six years of active duty pay and reducing his monetary pension benefits in order to advance careers of younger JAGC officers, based merely on officer's enlistment in Naval Reserve JAGC on entering law school rather than waiting to enlist in Regular Navy JAGC after graduating from law school, since Navy could have and should have computed pre-DOPMA total commissioned service for officer in Regular Navy JAGC or Naval Reserve JAGC consistent with Navy's stated policy of providing equality of treatment for all officers of Regular Navy, regardless of source from which procured. 10 U.S.C.(1976 Ed.) S 6388(b). | "Does Congress have the right to give, withhold, distribute, or recall monetary benefits to military pensioners at its discretion?" | 008560.docx | LEGALEASE-00140047-LEGALEASE-00140048 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 20739 | Cooper v. Bailey, 52 Me. 230 | 83E+405 | As an indorsement with the initials of the indorser is sufficient, so one with the surname of the payee must be deemed valid. If the note had been payable to Lynn, he might have passed the title by indorsing his surname only. As he could thus transfer a note by the indorsement of his own surname, so, by a similar indorsement, he could transfer the note of Perkins, more especially when the indorsement thus made was adopted and approved by him. | An indorsement in only the surname of the payee is valid. | Is an endorsement in only the surname of the payee valid? | 009529.docx | LEGALEASE-00140652-LEGALEASE-00140653 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 20740 | Allen v. Hillman, 215 Mich. 312 | 51+2650(3) | Was such indebtedness contracted prior to October 29, 1915, when the first of such conveyances was made? We think it satisfactorily appears that the notes, which were the bases of the claims filed with the referee, were renewals of others extending back to the date mentioned. It will serve no useful purpose to incorporate the evidence relating-thereto in this opinion. The renewals will not be treated as a payment of the original notes. McMorran v. Murphy, 68 Mich. 246, 36 N. W. 60; Preston Nat. Bank v. Pierson, 112 Mich. 435, 70 N. W. 1013; Gladwin State Bank v. Dow, 212 Mich. 521, 180 N. W. 601. | Renewal notes given by bankrupt after his alleged fraudulent conveyance will not be treated as payment of the original notes, relative to whether the indebtedness represented thereby was contracted before the conveyance. | Does renewal amount to payment? | Bills and Notes- Memo 334- GP.docx | ROSS-003301545-ROSS-003301546 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 20741 | In re Smoak, 461 B.R. 510 | 83E+728 | Under Ohio law, the holder of a negotiable instrument, including a promissory note, has the right to enforce it. Ohio Revised Code " 1303.31(A)(1) [UCC 3"301]; In re Foreclosure Cases, 521 F.Supp.2d 650, 653 (S.D.Ohio 2007); Nat'l City Mtge. Co. v. Piccirilli, 2011 WL 3819795 (Ohio Ct.App. Aug. 24, 2011).4 See also Hwang, 438 B.R. at 665 (holder of a negotiable instrument is the real party in interest under California law). Ohio Revised Code " 1301.01(T)(1) [UCC 1"201)5 defined "holder" with respect to a negotiable instrument as either: a) a person in possession of the instrument if the instrument is payable to bearer; or b) the person identified in the instrument when that person is in possession of the instrument if the instrument is payable to an identified person. Through the blank endorsement, the Note became bearer paper. Bank of NY Mellon is the holder of the Note as Trustee for the Securitization Trust because it holds the original note and an endorsement, not to a particular person or entity, but instead in blank. Densmore v. Litton Loan Servicing, L.P. (In re Densmore), 445 B.R. 307, 310 (Bankr.D.Vt.2011), citing In re Samuels, 415 B.R. 8, 20 (Bankr.D.Mass.2009) (Possession of the note with a blank endorsement creates standing because the bank was the holder); Wilson v. Countrywide Home Loans, Inc. (In re Wilson), 442 B.R. 10, 15 (Bankr.D.Mass.2010) ("By virtue of its possession of a note indorsed in blank, Deutsche Bank is the holder of the note."). In addition, Ocwen can enforce the note because it acts as the agent for the Bank of New York Mellon. See Exhibit F. As the holder, for all the reasons explained, Bank of NY Mellon is the real party in interest. | Under Ohio's version of Uniform Commercial Code (UCC), bank which, as trustee for mortgage securitization trust, had physical possession of debtors' original promissory note and endorsement in blank was holder of note, and thus was real party in interest with standing to assert proof of claim in debtors' Chapter 13 case. Ohio R.C. S 1303.31(A)(1); S 1301.01(T)(1) (Repealed). | How do the statutes define a holder of a negotiable instrument? | Bills and Notes- Memo 366-IS.docx | ROSS-003288078-ROSS-003288079 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20742 | Tivoli Ventures v. Bumann, 870 P.2d 1244 | 38~71 | Tivoli filed a complaint against Bumann and Tallman on August 17, 1990, seeking the amount due under the note. Bumann and Tallman moved for summary judgment contending that the six-year statute of limitations set forth in section 13"80"103.5(1)(a), 6A C.R.S. (1987), barred Tivoli's claim. The trial court ruled that section 13"80"103.5(1)(a) did not apply. The trial court concluded that Tivoli, as an assignee of the note, was in the shoes of the assignor and acquired the right to sue within the time period set forth in 28 U.S.C. " 2415(a) (1988), which governs the FDIC.] | As a general principle of common law, assignee stands in shoes of assignor. | Can an assignee stand in the shoes of the assignor? | 010337.docx | LEGALEASE-00139779-LEGALEASE-00139780 | Condensed, SA | 0.87 | 0 | 1 | | | 1 |
| 20743 | Bleitz v. Bryant Lumber Co., 113 Wash. 455 | 38~54 | Appellant contends that the written order to the bank amounted to an equitable assignment from the respondent to the bank of the amount sued on, and that it was not necessary to show that it had been accepted by the appellant. If it be admitted that appellant's position in this regard is correct, yet we must reach the same general result as that reached by the department. Before this instrument will be treated as an equitable assignment, it must be shown that there was a valuable consideration for the assignment."An equitable assignment must be supported by a valuable consideration and is an essential and necessary element." S Corpus Juris, 933. | Seller's order to buyer to remit proceeds to third party held not an equitable assignment, in absence of a showing of a valuable consideration for the assignment, as there can be no equitable assignment without proof of consideration therefor. | Is consideration an important element of equitable assignment? | Bills and Notes -Memo 483 -DB.docx | ROSS-003288801-ROSS-003288802 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20744 | Hurlbut v. Quigley, 180 Cal. 265 | 83E~629 | "An indorsement is a written contract of which the law declares the effect; and when counted upon it is the foundation of the action." Haines v. Tharp, 15 Ohio, 133; Goldman v. Davis, 23 Cal. 256; Citizens' Bank v. Jones, 121 Cal. 32, 53 Pac. 354. Where an indorser precedes his signature by a statement such as that in the indorsement above shown, it constitutes "a valid indorsement with an enlarged liability"; such enlargement in the present case being a waiver of some of the conditions imposed by law upon the payee in favor of the indorser. Buck v. Davenport Savings Bank, 29 Neb. 407, 45 N. W. 776, 26 Am. St. Rep. 392; Helmer v. Commercial Bank, 28 Neb. 474, 44 N. W. 482; Heard v. Dubuque, etc., Bank, 8 Neb. 10, 30 Am. Rep. 811. | The writing above indorsers' names, declaring that they waive presentment, etc., is a part of the contract of indorsement, enlarging liability. | What constitutes an indorsement with enlarged liability? | Bills and Notes- Memo 520-PR.docx | ROSS-003302255 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 20745 | Com. v. Doughty, 55 Pa. Super. 88 | 200~166 | It must be treated as elementary law, that public roads are laid out and opened for the use of all persons on equal terms, that is, to all who comply with the reasonable regulations of the duly constituted authorities. Primarily the duly constituted authority is the commonwealth, and its right acting through the legislature, to prescribe what may and what may not be operated upon the public highways of the state has never been challenged, and it is equally well settled that having such power the commonwealth may in its discretion delegate its authority either in whole or in part to its various municipal divisions. If the modern improved road will not stand the use of the old style cleat or spike-wheeled traction engine, the latter must yield, as it is of less importance to the public at large than the use of the highway by the traveling public. The enforcement of the rule will necessarily result in the design of a wheel which will serve the purpose of the owner of the engine and not destroy the highway. The commissioners had ample authority to formulate this rule and enforce it as a reasonable precaution to preserve the highways under their control. | Act May 11, 1911, P.L. 244, authorizing county commissioners to adopt reasonable rules as to the use of highways, is constitutional. | Who has the right to prescribe on what may be operated in a highway? | Highways- Memo 176 - ANM.docx | ROSS-003291048-ROSS-003291049 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 20746 | In re Advisory Opinion to the Governor, 98 Fla. 843 | 296~1 | Manifestly, if the Legislature has power to grant pensions for past military or naval services, which is generally and we think correctly conceded, it also has the power to grant pensions for past civilian services. | Statute granting pension for past services to state and carrying necessary appropriation held valid, and Governor authorized to countersign warrant therefor. Laws 1929, c. 14533; F.S.A.Const. art. 4, S 24; art. 9, S 2. | Does the legislature have the power to grant pensions to past civilians? | 022761.docx | LEGALEASE-00140496-LEGALEASE-00140497 | Condensed, SA | 0.01 | 0 | 1 | | 1 | |
| 20747 | MacLeod v. Fernandez, 101 F.2d 20 | 375~23 | "A "pension" is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure. People v. Retirement Board, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; Porter v. Loehr, 332 Ill. 353, 163 N.E. 689; Pecoy v. City of Chicago, 265 Ill. 78, 106 N. E. 435. For this reason it is held that a pensioner has no vested right in a pension fund. It has also been held that the character of a pension fund is not changed by compulsory contributions by way of exactions from the salaries or wages of public officers and employees. It is said that such payments into the fund are not in fact payments by the officer or employee, and the employment is accepted" [and continued] "with knowledge that certain amounts will be deducted each month and placed in the pension fund; that the money is not first segregated from the public fund so as to become private property and then turned over to the pension fund, but is set aside or transferred from one public fund to another, and remains public money over which the person from whose salary it is deducted has no control, and in which he has no right.  * * * | The Puerto Rican retirement statute of 1923 providing for optional payments to pension fund did not give government employee a vested right to recover a pension but merely a possible contingent right in the future, and such contingent right disappeared when the statute was repealed in 1925 by an act creating a compulsory pension fund. Laws Puerto Rico 1923, Sp.Sess., No. 22; Laws Puerto Rico 1925, No. 104. | Does the pensioner have a vested right in a pension? | 022766.docx | LEGALEASE-00140510-LEGALEASE-00140511 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 20748 | Palm Beach Newspapers v. Burk, 504 So. 2d 378 | 326~410 | We review Palm Beach Newspapers, Inc. v. Burk, 471 So.2d 571 (Fla. 4th DCA 1985), wherein over the objection of both the prosecutor and the accused, petitioners (the press) sought to be present at pretrial discovery depositions and to obtain copies of depositions which had not been transcribed or filed with the trial court. The trial judge ruled, essentially, that the taking of depositions was not a judicial proceeding and there was no right of access by the public or press until such depositions were filed with the court. On appeal, the district court (en banc) held that the press has no constitutional, first amendment, right of access to the taking of pretrial depositions in a criminal case and the right of access to depositions did not accrue until they were filed with the clerk of the court. | The press does not have any right under the Public Records Law to obtain copies of unfiled depositions in criminal proceedings. West's F.S.A. SS 119.01 et seq., 119.07. | Is taking of deposition a judicial trial and is not regarded as a public hearing? | 031560.docx | LEGALEASE-00139755-LEGALEASE-00139756 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 20749 | Com. v. Hurley, 311 Mass. 78 | 110~446 | Of course, the failure of the municipal officers to accept the offer of the defendant and to join with him in executing a corrupt bargain is no defence. Commonwealth v. Murray, 135 Mass. 530; Commonwealth v. Donovan, 170 Mass. 228, 49 N.E. 104; Commonwealth v. Tsaffaras, 250 Mass. 445, 145 N.E. 922. | In prosecution for offering a bribe to a municipal officer, the telegrams sent by defendant were to be considered in the light of the circumstances in which they were sent. | Is the failure of the public officers to accept the offer of the defendant and to join with him in executing a corrupt bargain a defence? | Bribery - Memo #698 - C-JL.docx | ROSS-003288664 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20750 | St. James v. Embury-Martin Lumber Co., 219 Mich. 115 | 113+3 | We think the contentions and statement quoted well sustained by the testimony of many experienced lumbermen, and that the parties must be held to have contracted with reference to such custom. We think the custom so clearly established as to overcome the reluctance generally attending the admission of customs into the law (see Strong v. Grand Trunk Railroad Co., 15 Mich. 206, 93 Am. Dec. 184; 17 C. J. 496), and that it is shown to be certain, definite, uniform, and notorious. Pennell v. Delta Transportation Co., 94 Mich. 247, 53 N. W. 1049; Fogarty v. Michigan Central Railroad Co., 180 Mich. 422, 147 N. W. 507. But the custom must be reasonable and lawful. See Strong v. Grand Trunk Railroad Co., supra, 17 C. J. 467. That it is general and established raises a presumption of its reasonableness. Cox v. Charleston F. & M. Ins. Co., 3 Rich. Law (S. C.) 331, 45 Am. Dec. 771. | A custom must be reasonable and lawful to be sustained. | Must a custom be reasonable? | 014156.docx | LEGALEASE-00141748-LEGALEASE-00141749 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 20751 | Congregation B'Nai Sholom v. Martin, 382 Mich. 659 | 113+17 | We have held the defense of custom or usage may be asserted. Custom may be binding if certain, definite, uniform and notorious. In addition to the discussion of custom contained in many of the cases already cited in this opinion on the point that definite and complete contracts may not be altered by custom, the discussions and holdings in the following Michigan cases are pertinent: Hutchings v. Ladd (1868), 16 Mich. 493; Van Hoesen v. Cameron (1884), supra; Lamb v. Henderson (1886), supra; Stringfield v. Vivian (1886), 63 Mich. 681, 30 N.W. 346; Pennell v. Delta Transportation Co. (1892), 94 Mich. 247, 53 N.W. 1049; Eaton v. Gladwell (1896), 108 Mich. 678, 66 N.W. 598; Kenyon v. Charlevoix Improvement Co. (1903), 135 Mich. 103, 97 N.W. 407; Karwick v. Pickands (1912), 171 Mich. 463, 137 N.W. 219; Welling v. Kalamazoo Lumber Co. (1913), 177 Mich. 340, 143 N.W. 73; People, for Use of New Jersey Terra Cotta Co. v. Traves (1915), 188 Mich. 415, 154 N.W. 120; Tatro v. Baker-Fisk-Hugill Co. (1921), 215 Mich. 623, 184 N.W. 449; Chaney v. Lake Drive Garage (1930), 252 Mich. 412, 233 N.W. 602; Redding v. Snyder (1958), 352 Mich. 241, 89 N.W.2d 471. | Custom cannot change a definite contract. | Can custom change a definite contract? | 014190.docx | LEGALEASE-00141866-LEGALEASE-00141867 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | 1 |
| 20752 | Black v. Ashley, 80 Mich. 90 | 113+3 | Before any custom can be admitted into the law, it must appear that the usage has been general and uniform, the custom peaceably acquiesced in, and not subject to contention and dispute, and it must be certain. Broom, Leg. Max. (5th Amer. Ed.) 828. Here the facts are not in any manner in controversy that the defendants were accustomed to leave all freight transported by the Alaska with Ashley & Mitchell, and they gave the notice to the consignee. The consignees in the present case for a long time acquiesced in the arrangement. Under such circumstances, it cannot be said that the defendants regarded their liability as common carriers as continuing until Ashley & Mitchell had given the notice to the consignees, and a reasonable time thereafter had elapsed to remove the goods. The contract of carriage must be construed in the light of the surrounding circumstances, and the custom which prevailed of depositing the goods with third parties, from whom the consignees not only received the notice, but to whom they receipted; and in this view of the case the liability of the defendant as common carriers ended when they had safely deposited the goods with Ashley & Mitchell. It cannot matter, so far as the rights of the defendants are concerned, that Ashley & Mitchell may not be holden to any greater liability than that of warehouseman. The consignees had assented by custom to receive the goods in this manner, and the delivery to Ashley & Mitchell in good condition, as when taken, relieved the defendants from any further responsibility under the circumstances. If Ashley & Mitchell had been an intermediate carrier, and there was nothing appearing in the contract of carriage by which the defendants as first carriers were holden as insurers to the end of the route, then, under well-settled rules, the defendants would have been relieved of all liability by a safe delivery to Ashley & Mitchell. Rickerson Roller-Mill Co. v. Grand Rapids & I. R. Co., 67 Mich. 110, 34 N. W. Rep. | Before any custom can have effect, it must have been general, uniform, acquiesced in, and be certain. | When can a custom be admitted into the law? | 014194.docx | LEGALEASE-00141874-LEGALEASE-00141875 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 20753 | Reading Metal Craft Co. v. Hopf Drive Associates, 694 F.Supp. 98 | 170B+2740 | The nature of a joint venture has further been described thus: "A joint venture has been likened to a limited partnership"not limited in a statutory sense as to liability, but as to scope and duration. Thus, one distinction between a joint venture and a partnership is that the former relates to a single transaction (though it may be continued over several years), while the latter relates to a general business of a particular kind. Joint ventures are also distinguishable from partnerships in that the authority of one joint venturer to act as the agent of the others is more limited than the agency of a member of a partnership."Id. " 1578 (footnote omitted). New York case law has specifically said that "[j]oint venturers are subject to the same rules as a technical partnership. Generally speaking, the principles of law of partnership apply to a joint venture, at least by analogy (Napoli v. Domnitch, 34 Misc.2d 237, 226 N.Y.S.2d 908, modified on other grounds, 18 A.D.2d 707, 236 N.Y.S.2d 549)...." John's, Inc. v. Island Garden Center of Nassau, Inc., 49 Misc.2d 231, 236, 49 Misc.2d 1086 (1966), aff'd per curiam, C.J. Zonneveld & Sons, Inc. v. Island Garden Center, Inc., 280 N.Y.S.2d 34, 53 Misc.2d 1021 (1967). The conceptualization of a joint venture as a kind of limited partnership is useful in determining the issue of proper venue for a joint venture within the limitations of 28 U.S.C.A." 1391(a). FSI Group v. First Federal Savings and Loan Association, 502 F.Supp. 356 (S.D.N.Y.1980) would allow venue for a limited partnership to be placed in the district where it has its principal place of business: | Under New York law, personal jurisdiction could be asserted over Florida limited partnership which was member of New York joint venture in dispute arising out of contract between subcontractor and joint venture for construction of shopping center which was owned by joint venture. N.Y.McKinney's CPLR 302. | Is a joint venture identical to a limited partnership? | Partnership - Memo 399 - TB.docx | LEGALEASE-00030982-LEGALEASE-00030983 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20754 | Genesco v. T. Kakiuchi & Co., 815 F.2d 840 | 25T+145 | Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation. See Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350, 1352 (11th Cir.1986) (per curiam); N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722, 727 (8th Cir.1976). Here, the district court found that Genesco was an experienced textile concern with economic power equal to that of Kakiuchi*Japan. It also found no impediment to the validity of the agreement. On the contrary, the widespread use of arbitration clauses in the textile industry puts a contracting party, like Genesco, on notice that its agreement probably contains such a clause. See N & D Fashions, 548 F.2d at 726 & n. 8; Avila Group, Inc. v. Norma J. of California, 426 F.Supp. 537, 541 n. 10 (S.D.N.Y.1977). Thus, the district court properly concluded that Genesco was bound to arbitrate disputes arising under the signed sales confirmation forms. Genesco does not contest these findings, but claims instead that it never specifically agreed to the arbitration clauses. Such misapprehends our inquiry. We focus not on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract. See N & D Fashions, 548 F.2d at 727. | American buyer's claim of fraudulent inducement against Japanese seller based on allegations that seller, through pattern of bribery, fraudulently induced it to enter into series of sales transactions involving overpriced, defective, or otherwise inappropriate goods was subject to arbitration pursuant to clause in sales confirmation forms used by Japanese seller in its transactions with American buyer requiring "all claims and disputes of whatever nature arising under this contract" to be referred to arbitration, calling into doubt In re Kinoshita & Co., 287 F.2d 951 (2d Cir.). 9 U.S.C.A. SS 1-14. | Do courts focus on whether there was subjective agreement as to each clause in a contract? | 007510.docx | LEGALEASE-00143170-LEGALEASE-00143171 | Condensed, SA, Sub | 0.56 | 0 | 1 | | 1 | |
| 20755 | Coastal States Trading v. Zenith Nav. S. A., 446 F. Supp. 330 | 25T+514 | In so holding, the McCreary court distinguished the language of the Convention from that of Section 3 of the Arbitration Act, 9 U.S.C. s 3, which has been interpreted by the Supreme Court as allowing commencement of an action by attachment, if such procedure is otherwise available under applicable law. Barge "Anaconda" v. American Sugar Refining Company, 322 U.S. 42, 44, 64 S.Ct. 863, 88 L.Ed. 1117 (1944). Moreover, Judge Learned Hand has ruled in this Circuit that the existence of an arbitration clause in a contract does not necessarily deprive the plaintiff of provisional remedies, such as prearbitration attachment in a suit covered by Section 3. Murray Oil Products Co., Inc. v. Mitsui & Co., Ltd., 146 F.2d 381 (2d Cir. 1944). | Even though defendant vessel owner, in suit brought by consignee to recover value of cargo of oil lost when vessel disappeared at sea, was Panamanian corporation, and even though dispute was properly referable to arbitration, convention on recognition and enforcement of foreign arbitral awards did not apply to preclude consignee from attaching vessel owner's assets where consignee was citizen of United States and where vessel owner's principal place of business was New York City, thereby making it "citizen of United States" for purposes of bringing dispute within exception to convention's applicability provided for actions arising out of contracts entirely between citizens of United States. Fed.Rules Civ.Proc. rule 64, 28 U.S.C.A.; CPLR N.Y. 6201, subd. 1; 9 U.S.C.A. SS 3, 201 et seq., 202. | Does the existence of an arbitration clause in a contract deprive a promisee of usual provisional remedies? | 007662.docx | LEGALEASE-00143388-LEGALEASE-00143389 | Condensed, SA, Sub | 0.08 | 0 | 1 | | 1 | 1 |
| 20756 | Reed v. Roark, 14 Tex. 329 | 8.30E+82 | A note in pencil is valid (and proves its contents) while it is legible.It seems that where a note is written in pencil, to go over it with ink is not a material alteration, and will not vitiate it, although it be done without the consent of the maker by a party claiming under it. In order to raise the objection that a note has been fraudulently altered (in this case the note was filed with the petition and prayed to be taken as part thereof) the maker must allege, under oath, not only the alteration, but also that it was not made by his authority nor with his consent. | A note in pencil is valid while legible. | Is a note written in pencil valid? | 009667.docx | LEGALEASE-00142706-LEGALEASE-00142707 | Condensed, SA | 0.93 | 0 | 1 | 0 | | 1 |
| 20757 | United States v. Sun-Diamond Growers of California, 941 F. Supp. 1262 | 63+1(2) | The Sixth Circuit has held that the [gratuity statute] is to reach all situations in which a government agent's judgment concerning his official duties may be clouded by the receipt of an item of value given to him by reason of his position." United States v. Gorman, 807 F.2d 1299, 1304 (6th Cir.1986), cert. denied, 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987). In United States v. Evans, 572 F.2d 455 (5th Cir.), cert. denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978), the Fifth Circuit stated: | Anti-gratuity statute, prohibiting giving of "thing of value" to official "for or because of any official act performed or to be performed by any public official," was not void for vagueness, on facts of present case, for failure to distinguish between wrongful conduct on one hand and innocent gifts or legitimate reasons for acts on the other, and government was consequently not required to prove specific intent to reward public official or expectation of quid pro quo before statute could be applied to payments made by defendant agricultural cooperative to allow former Secretary of Agriculture to attend tennis tournament and for his girlfriend to be with him when he gave speech before industry association in Greece; statute as interpreted provided sufficient notice of prohibited conduct, giving of thing of value because of official's position. | What is the purpose of unlawful gratuity statute? | 012169.docx | LEGALEASE-00142366-LEGALEASE-00142367 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 20758 | Phillips Petroleum Co. v. Corp. Comm'n, 1956 OK 313, 312 P.2d 916 | 92+4475 | Cities Service Gas Co. v. Peerless Oil & Gas Company, 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190, wherein it was held a state may adopt reasonable regulations to prevent economic and physical waste of natural gas and to protect correlative rights of owners through ratable taking, or to protect the economy of the state. | Statute, which requires natural gas producer to make a portion of its gas available for use in pumping water for irrigation of agricultural lands from which the gas was produced, even though producer had not theretofore dedicated its property to suchuse, and which authorizes the Corporation Commission to fix prices, terms and conditions under which the gas shall be made available, is not a valid regulation under the police power but would, if enforced, constitute a taking of producer's property without due process of law. 52 O.S.Supp. SS 248-256; 82 O.S.1951, SS 1-104, 2, 111-276.19, 126; O.S.1951 Const. art. 2, S 24; art. 7, S 2. | Can a state adopt reasonable regulations to prevent economic and physical waste of natural gas? | 021629.docx | LEGALEASE-00142098-LEGALEASE-00142099 | Condensed, SA, Sub | 0.5 | 0 | 1 | | 1 | 1 |
| 20759 | Thompson v. U.S., 87 Fed.Cl. 728 | 289+1174 | A false certificate obviously does not comply with the statute and by its very nature cannot constitute compliance. The statute requires not only the names of the persons comprising the fictitious partnership but they must be stated truthfully.A person should not be permitted to do business under a fictitious name and be protected by a certificate which falsely represents the names of the partners to be some other persons. The very object of the statute would be thwarted if such evasion of the statute were countenanced. Schwarz & Gottlieb, Inc., v. Marcuse, 175 Cal. 401, 165 P. 1015. This prohibition applies to an action for declaratory relief by an assignee as well as to the maintenance of another type of action. Bank of America N32. T. & S. A. v. National Funding Corporation, 45 Cal.App.2d 320, 114 P.2d 49, supra. | Limited partnerships must distinguish between: (1) their limited partners, who have limited liability but are unable to participate in the management of the partnership, and (2) their general partners, who may participate in the management of the partnership but are personally liable for its debts. | Must a fictitious partnership state the names of the persons comprising the partnership truthfully on the certificate? | 022420.docx | LEGALEASE-00143394-LEGALEASE-00143395 | Condensed, SA | 0.64 | 0 | 1 | | 0 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20760 | Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity Partners, 722 F.Supp.2d 854 | 220=3913 | A joint venture is included within the definition of a partnership under section 7701(a)(2). "The elements of a joint venture are: (a) A contract (express or implied) showing that it was the intent of the parties that a business venture be established; (b) an agreement for joint control and proprietorship; (c) a contribution of money, property, and/or services by the prospective joint venturers; and (d) a sharing of profits, but not necessarily of losses (although some jurisdictions require that there be a sharing of losses)." Podell v. Comm'r of Internal Rev., 55 T.C. 429, 431, 1970 WL 2303 (1970); see also Ballou v. United States, 370 F.2d 659, 674 (6th Cir.1966) ("controlling consideration is whether the parties intend to join in a business venture"). The concept of a joint venture is similar to the concept of a partnership, with a primary distinction being that "a joint venture is generally established for a single business venture (even though the business of managing the venture to a successful conclusion may continue for a number of years) while a partnership is formed to carry on a business for profit over a long period of time." Podell, 55 T.C. at 432. | The concept of a joint venture under the Internal Revenue Code (IRC) is similar to the concept of a partnership, with a primary distinction being that a joint venture is generally established for a single business venture, even though the business of managing the venture to a successful conclusion may continue for a number of years, while a partnership is formed to carry on a business for profit over a long period of time. 26 U.S.C.A. S 7701(a)(2). | Is joint venture included within the definition of a partnership? | 022436.docx | LEGALEASE-00143464-LEGALEASE-00143465 | SA, Sub | 0.62 | 0 | 0 | | 1 | 1 |
| 20761 | Atchison, T. & S. F. R. Co. v. Pearson, 6 Kan. App. 825 | 307A=74 | No one representing the plaintiff in error was present at the time the depositions were taken. They waived nothing required in the statute. They had the right to presume that the deposition would be taken in strict conformity with the statute. In the case of Goodhue v. Grant, 1 Pin. 556, the court says: "A deposition cannot be read in evidence unless it plainly and satisfactorily appears from the certificate of the justice that all the requirements of the statute have been fully complied with; and no presumption will be indulged in to supply any defect." | Under a statute requiring the certificate of an officer before whom a deposition has been taken to show that the deponent was first sworn "to testify the truth, the whole truth, and nothing but the truth," a certificate which shows that the deponents were sworn "to testify the whole truth of their knowledge touching the matter in controversy" is insufficient. | Will no presumption be indulged in to supply any defects in the requirements of the statute relative to the taking of depositions? | 033077.docx | LEGALEASE-00142508-LEGALEASE-00142509 | Condensed, SA, Sub | 0.34 | 0 | 1 | | 1 | 1 |
| 20762 | Bank of Commerce & Tr. Co. v. Senter, 149 Tenn. 569 | 371=2013 | In Railroad Co. v. Harris, 99 Tenn. 701, 43 S. W. 119, 53 L. R. A. 921, the court said: "The Constitution of the state (article II, " 28) recognizes only two general kinds of taxation"–ad valorem and privilege. These cover the whole domain of taxation, and beyond these the Legislature may not go in the imposition of taxes. Memphis v. Memphis City Bank, 91 Tenn. 588; Reelfoot Lake Levee District v. Dawson, 97 Tenn. 151, 168, 169. In respect of the subjects of the latter kind the legislative discretion has a very comprehensive range. At the least, any occupation, business, employment, or the like affecting the public, may be classed and taxed as a privilege. Turnpike Cases, 92 Tenn. 372; Kurth v. State, 86 Tenn. 135; Jenkins v. Ewin, 8 Heisk. 456; Wiltse v. State, lb. 544; State v. Schlier, 3 Heisk. 281; Columbia v. Guest, 3 Head, 414; Robertson v. Hennegar, 5 Sneed, 258; French v. Baker, 4 Sneed, 193; Mabry v. Tarver, 1 Hum. 94." | Under Const. art. 2, S 3, the right to select the measure and subjects of taxation lies within the discretion of the Legislature, subject to definite constitutional limitations which may not be overstepped. | Does ad valorem and privilege taxes cover the whole domain of taxation and beyond that which legislature may not go in imposition of taxes? | Taxation - Memo # 695 - C - SS.docx | ROSS-003304989-ROSS-003304990 | Condensed, Order, SA, Sub | 0.78 | 1 | 1 | | 1 | 1 |
| 20763 | CAVU Co. v. Martinez, 2014-NMSC-029 | 371=2060 | We begin our analysis with the recognized and potentially conflicting principles which must provide the boundaries of our decision. The first is that "[p]roperty is presumed to be subject to taxation." Georgia O'Keeffe Museum v. Cnty. of Santa Fe, 2003"NMCA"003, 32, 133 N.M. 297, 62 P.3d 754; see also 3.6.7.16(A) NMAC ("Real property owned by a nongovernmental entity is presumed to be subject to taxation under .. the Property Tax Code unless an exemption [is] claimed and allowed [under] this section."). The second is the broad and brief constitutional command that "all property used for educational or charitable purposes .. shall be exempt from taxation." N.M. Const. art. VIII, " 3. Use for educational purposes has been held to mean "the direct, immediate, primary and substantial use of property that embraces systematic instruction in any and all branches of learning from which a substantial public benefit is derived." NRA Special Contribution Fund v. Bd. of Cnty. Comm'rs, 1978"NMCA"096, 35, 92 N.M. 541, 591 P.2d 672 (internal quotation marks omitted). The corresponding NRA eligibility test consists of three parts: (1) use that is direct, immediate, primary, and substantial, (2) use that embraces systematic instruction in any and all branches of learning, and (3) use that imparts a substantial public benefit. See id. Because this three-pronged eligibility test accommodates a broad range of interpretations, we look next to the history of the exemption and the policy considerations our appellate courts have identified to guide our analysis. | Property is presumed to be subject to taxation. | Is property presumed to be subject to taxation? | Taxation - Memo # 700 - C - KBM.docx | ROSS-003288892-ROSS-003288893 | Condensed, SA | 0.97 | 0 | 1 | | 1 | 1 |
| 20764 | Banc of Am. Sec. LLC v. Indep. Tube Corp., 2010 WL 1780321 | 25T=414 | Finally, to the extent that Independence Tube argues that its actions did not prejudice BOA, the presence of prejudice is not a prerequisite to a finding of waiver. See St. Mary's Med. Ctr., 969 F.2d at 590 ("[W]here it is clear that a party has forgone its right to arbitrate, a court may find waiver even if that decision did not prejudice the non-defaulting party."); see also In re Wireless Telephone 911 Calls Litig., No. MDL"1521, 03 C 2597, 2005 WL 2709286 (N.D.Ill. Oct.20, 2005) ("It is doubtful that plaintiffs would be greatly prejudiced by a forum change, but that does not alter our conclusion [that a defendant waived its right to arbitrate].").In any event, when viewed in a light most favorable to Independence Tube, the record plainly shows that Independence Tube's litigation actions did prejudice BOA. Based on Independence Tube's decision to file a complaint with the Court, BOA took a number of actions that it otherwise may not have taken. Specifically, over the course of nearly a year BOA responded to discovery disputes (R. 49, Def.'s Resp. to Pls.' R. 56.1 Statement), submitted motion-to-dismiss briefing (R. 49, Def.'s R. 56.1(b)(3)(C) Statement of Additional Facts), and submitted other court filings (R. 49, Def.'s Resp. to Pls.' R. 56.1 Statement). | A purchaser of auction-rate-securities (ARS) waived its right to arbitrate its claims against the ARS seller through litigation of the claims for nearly a year rather than filing an arbitration claim. The ARS purchaser acted inconsistently with its right to file an arbitration claim with the Financial Industry Regulatory Authority (FINRA) by choosing to file and pursue a complaint in federal court and continuously attempting to use the federal courts and procedural mechanisms to litigate, only filing its FINRA arbitration claim after learning that one of its claims might be dismissed with prejudice. Furthermore, ARS purchaser failed to present evidence that it was uncertain about its right to arbitrate or that the seller was not prejudiced by the litigation in order to qualify for an exception to the general waiver-by-litigation-conduct rule. | Can courts find waiver if it is clear that a party has forgone its right to arbitrate? | 007706.docx | LEGALEASE-00144821-LEGALEASE-00144826 | Condensed, SA, Sub | 0.33 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20765 | Oltmanns v. Oltmanns, 241 N.C. App. 326 | 134+1251 | Plaintiff's argument also highlights the fact that the order granting divorce from bed and board is now moot for purposes of appellate review. Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law. Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action.If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. | Husband abandoned argument, on appeal in divorce action, that trial court erred in classifying post-separation depreciation of marital home and parties' vacation home as marital property, where husband failed to cite any case law supporting his assertion. Rules App.Proc., Rule 28(a). | "Should a case be dismissed, if the questions originally in controversy between the parties are no longer at issue?" | 034288.docx | LEGALEASE-00144803-LEGALEASE-00144804 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20766 | E.C. v. Virginia Dep't of Juvenile Justice, 283 Va. 522 | 197+232 | Our jurisprudence provides that a case is moot and must be dismissed when the case or controversy that existed between litigants has ceased to exist.Whenever it appears or is made to appear that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded. Only real controversies and existing rights are entitled to invoke the exercise of their powers. | Juvenile sex offender's release from parole supervision during pendency of his petition for writ of habeas corpus did not render case moot, where collateral consequences imposed on offender by his challenged juvenile adjudication were sufficient to sustain continued controversy, and relief sought, a determination that adjudications which imposed such consequences were invalid because of ineffective assistance of counsel and that juvenile was entitled to new trial, was within court's habeas jurisdiction. West's V.C.A. 55 8.01-654, 8.01-662. | Is a case moot and to be dismissed when the case or controversy that existed between litigants has ceased to exist? | 034321.docx | LEGALEASE-00144285-LEGALEASE-00144286 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 20767 | Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249 | 266+1785(2) | Fraud upon the court is an egregious offense against the integrity of the judicial system and is more than a simple assertion of facts in a pleading which might later fail for lack of proof. As defined in Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (affirming dismissal for fraud upon the court):The requisite fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense. | Issue of mortgagee's compliance or lack thereof with statute that required mortgagee to give satisfactory security of 25% of the market value of its outstanding capital stock was not properly before the trial court at the pre-answer stage of the litigation; it was a possible affirmative defense or counterclaim which would be determined upon averments of fact in a responsive pleading and sufficient proof of those facts. West's F.S.A. S 660.27. | Is fraud on the court an egregious offense against the integrity of the judicial system? | Pretrial Procedure - Memo # 6890 - C - NC.docx | ROSS-003302888 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 20768 | Bruns v. Dep't of State Revenue, 725 N.E.2d 1023 | 48A+37 | The Indiana Supreme Court observed that Croop did not live in Elkhart with the intention of giving up his domicile in Sturgis or come to Elkhart with the intention of acquiring a new domicile. See id. Although the Court's analysis in Croop focused mainly on the issue of domicile, the Indiana Supreme Court also offered guidance in the area of residency. For example, the Court determined that when a person has residences in different states, that person is taxable at the original domicile, unless opening of the second home involved abandonment of the original domicile. See id. at 277. Affirming the lower court's determination that the taxpayer was not domiciled in Indiana, the Court noted that the taxpayer had left his original place of residence temporarily with the intention of returning to Michigan. See id at 278. According to the Indiana Supreme Court in another case, the question of residency is a "contextual determination to be made by a court upon a consideration of the individual facts of any case." In the Matter of Evrard, 263 Ind. 435, 440, 333 N.E.2d 765, 768 (1975) (emphasis added) (establishing clarification of laws regarding voting and residency). | Employee of State of Indiana who resided in Illinois was not required, under Indiana statutes relating to motor vehicle excise taxes, to come into violation of his home state's laws by registering his car in Indiana, in absence of any statute allowing dual registration of one car in two states. West's A.I.C. 6-6-5-2, 6-6-5-6, 9-13-2-78(1), 9-18-2-1, 9-18-2-2; S.H.A. 625 ILCS 5/3-401(a). | In which domicile should a taxpayer who has two residences in different states be taxed? | 045759.docx | LEGALEASE-00144458-LEGALEASE-00144459 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 20769 | United States v. Phillips, 219 F.3d 404 | 111H+4 | In determining the proper meaning of "agent" as applied in this case we start with its statutory language. Under " 666(a)(1) and (b), the defendant must be "an agent of an organization, government, or agency" that receives in excess of $10,000 in a one-year period. See also United States v. Moeller, 987 F.2d 1134, 1137 n. 9 (5th Cir.1993)("The defendant must be an "agent" of a "government agency" that receives in excess of $10,000 from the federal government within a one-year period."). Subsection (d)(1) broadly defines "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." The question is whether this definition"conceding the elasticity of its general wording"properly can be read to make the tax assessor's office an agent of the parish for purposes of this " 666 prosecution. As part of " 666, subsection (d)(1) must be read in the context of that statute whose purpose is to protect the integrity of federal funds. We know from the Supreme Court's decision in Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 473"74, 139 L.Ed.2d 352 (1997), that the funds in question need not be purely federal, nor must the conduct in question have a direct effect on federal funds. | Violation of federal money laundering statute requires showing that financial transactions in question were proceeds from either theft in connection with federally funded program or proceeds in connection with mail fraud. 18 U.S.C.A. S 1956(a)(1)(B)(i). | Should the funds in question be purely federal in order to apply federal bribery statute? | 012289.docx | LEGALEASE-00145376-LEGALEASE-00145378 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20770 | United States v. Bonito, 57 F.3d 167 | 63+1(2) | We acknowledge the force of this argument. On the other hand, there are a number of factors in favor of construing " 666 to cover corruption of agents of a federally funded organization even in those official activities that do not implicate their organization's own funds. First, the actual wording of the statute arguably allows room for a more expansive reading. "Business," broadly defined, includes "work," "professional dealings," "one's proper concern," and "serious work or endeavor that pertains to one's job." American Heritage Dictionary 180 (1973). Also, at least on its face, the statute does not say that the thing of value of $5,000 must be that of the affected organization. It says only that the corruption must be in connection with the organization's business or transaction "involving" a thing of value of $5,000 or more. In addition, we have already extended the statute beyond corruption in a local organization's administration of a federally funded program. United States v. Coyne, 4 F.3d at 110. The rationale for this was stated most succinctly by the Fifth Circuit: "It is sufficient that Congress seeks to preserve the integrity of federal funds by assuring the integrity of the organization that receives them." United States v. Westmoreland, 841 F.2d 572, 578 (5th Cir.1988). Yet, if the organization has no financial stake whatsoever in the corrupted business, how far, if at all, should " 666 reach beyond the organization whose integrity is sought to be protected to satisfy the requirement that more than $5,000 be involved? | Under federal statute proscribing bribery of officials of public and private entities receiving federal funds, in connection with any "business, transaction or series of transactions" of such entities involving at least $5,000, term "business" means something different from, and often broader than, "transaction" and includes dealings of government official in connection with discrete transaction, as such definition complements the sense of "transaction," which implies concluded business agreement. 18 U.S.C.A. § 666(a)(2). | How is business defined under federal bribery statute? | 012311.docx | LEGALEASE-00145661-LEGALEASE-00145662 | Condensed, SA, Sub | 0.66 | 0 | 1 | | 1 | 1 |
| 20771 | W. Union Tel Co v. Topping, 66 F.2d 1006 | 170A+888 | In applying the rule that pleadings and proof must correspond, rigid exactitude is not in all cases required. Nash v. Towne, 5 Wall. 689, 698, 18 L.Ed. 527; Standard Oil Co. v. Brown, 218 U.S. 78, 84, 30 S.Ct. 669, 54 L.Ed. 939. A "trifling variance" that has not misled a party in maintaining his case on the merits, or a variance "where the allegation and proof substantially correspond," should not be regarded as material or be allowed to impede the court in its effort "to give judgment according to law and the right of the cause." Allen v. Bunting, 18 N.J.Law, 299, 301; Standard Oil Co. v. Brown, 218 U.S. 78, 84, 30 S.Ct. 669, 671, 54 L.Ed. 939; Liverpool & London & Globe Ins. Co. v. Gunther, 116 U.S. 113, 6 S.Ct. 306, 29 L.Ed. 575; Baltimore & P.R. Co. v. Cumberland, 176 U.S. 232, 238, 20 S.Ct. 380, 44 L.Ed. 447. And so, evidently, thought the learned trial judge. In consequence, his ruling and his charge as to the time of the accident were not, on the facts of the case, error. | Exact correspondence between pleadings and proofs is not required, particularly where there is substantial correspondence and adversary is not misled. | Must pleadings and proof correspond? | Pleading - Memo 443 - RMM_57492.docx | ROSS-003280405-ROSS-003280406 | Condensed, SA, Sub | 0.85 | 0 | 1 | | 1 | 1 |
| 20772 | N. Am. Properties v. McCarran Int'l Airport, 2016 WL 699864 | 307A+46 | District courts in Nevada may sanction abusive litigation practices through their inherent powers. Young v. Johnny Ribeiro Bldg., Inc., 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). A court's inherent power to sanction is designed "to protect the dignity and decency of its proceedings and to enforce its decrees, and thus it may issue contempt orders and sanction or dismiss an action for litigation abuses." | Trial court did not abuse its discretion by imposing case-ending sanctions without first holding evidentiary hearing, in property owner's action against county to recover compensation for county's regulatory per se taking; record reflected multiple hearings during which owner presented its contentions regarding whether it misrepresented standing and committed discovery violations, and, thus, court provided owner with more than one meaningful opportunity to present evidence and arguments regarding its misconduct before issuing sanctions. | Does a court have inherent power to protect the dignity and decency of its proceedings and to enforce its decrees? | 035108.docx | LEGALEASE-00146104-LEGALEASE-00146105 | Condensed, SA, Sub | 0.25 | 0 | 1 | | 1 | 1 |
| 20773 | Braun v. Powell, 77 F. Supp. 2d 973 | 110+1189 | A defendant or plaintiff who fails to produce evidence, when he is ordered to do so, is in default and the case may go against him on this ground. In Hauer v. Christon (1969), 43 Wis.2d 147, 168 N.W.2d 81, the court recognized the inherent power of a court to dismiss a defendant's answer or a plaintiff's complaint when the party was not prepared for trial or when there was a failure to produce evidence ordered to be produced, on the ground that the necessity of the court to maintain the orderly processing of cases and the dispatch of justice required it. We think the analogy is applicable here. When a convict escapes and puts himself in a position where he cannot aid the court which needs his testimony in the determination of his petition, he has frustrated the administration of justice, made it impossible for the court to consider his petition, and has abandoned his application for relief on the merits.Id. at 735"36, 211 N.W.2d 463. | Remedy for a public trial violation is to vacate the conviction and order a new trial, not only where the harm in a particular case is sufficiently egregious to justify that result, but in any case where the public trial right is violated and the public nature of the trial cannot be restored by another remedy; defendant is not required to show specific prejudice as a condition of having the conviction vacated and receiving a new trial. U.S.C.A. Const.Amend. 6. | Is a defendant or plaintiff who fails to produce evidence in default and case can go against him on this ground? | 035133.docx | LEGALEASE-00146005-LEGALEASE-00146006 | Condensed, SA, Sub | 0.51 | 0 | 1 | | 1 | 1 |
| 20774 | Zach v. Nebraska State Patrol, 14 Neb. App. 579 | 413+1174 | Because the right of recovery of workers' compensation benefits is purely statutory, see Oham v. Aaron Corp., 222 Neb. 28, 382 N.W.2d 12 (1986), I begin by quoting the language of Neb.Rev. Stat. " 48"151(4) (Reissue 2004) as follows: Injury and personal injuries mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The terms include disablement resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in such employment. The terms include an aggravation of a preexisting occupational disease, the employer being liable only for the degree of aggravation of the preexisting occupational disease. The terms do not include disability or death due to natural causes but occurring while the employee is at work and do not include an injury, disability, or death that is the result of a natural progression of any preexisting condition. | State trooper's relatives stated claim for relief under workers' compensation law when they alleged that state trooper suffered an "accident" resulting in a personal injury inasmuch as the sudden stimulus, namely being advised of the consequences of trooper's error which ultimately resulted in citizens' deaths in bank robbery, caused trooper's brain to undergo physical changes which, in turn, led trooper to a state of mind which overruled his will to the extent that even knowledge of the consequences of the act of suicide did not prevent trooper from taking his own life. | Is the right to and amount of recovery under workmens compensation are purely statutory? | 11497.docx | LEGALEASE-00094573-LEGALEASE-00094574 | Condensed, SA, Sub | 0.41 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20775 | State v. Hodge, 121 N.C. App. 209 | 36+2 | The title of a bill may be considered in determining legislative intent. State ex relCobey v. Simpson, 333 N.C. 81, 423 S.E.2d 759 (1992). Chapter 1374of the 1973 SessionLaws, enacting G.S. " and G.S. " 14-58.2, was entitled "An Act to Define the TermsHouse and Building as Used in the Arson and Other Burnings Statutes to Include Mobile Homes and to Make the Crime of Arson Include the Burning of a Mobile Home." "Where possible, statutes should be given a construction which, when practically applied, will tend to suppress the evil which the Legislature intended to prevent." State v. Vickers, 306 N.C. 90, 98-99, 291 S.E.2d599, 605 (1982) (quoting In re Hardy, 294 N.C. 90, 240 S.E.2d 367 (1978)). "[A]rson is anoffense against the security of the habitation." Id. at 100, 291 S.E.2d at 606. | Arson is offense against security of habitation. | Is arson an offense against the security of the habitation? | Arson - Memo 11 - ANG_62185.docx | ROSS-003280908-ROSS-003280909 | Condensed, SA, Sub | 0.94 | 0 | 1 | | 1 | |
| 20776 | Hannah v. State, 3 Md. App. 325 | 67+4 | Likewise, we find no merit in the Appellant's argument that since nothing was found to be missing, there could be no burglary. The crime of burglary consists of the breaking and entering of the dwelling house of another in the nighttime with intent to commit a felony. Hall v. State, 1 Md.App. 392, 230 A.2d 473. A church may be the subject of common law burglary. McGraw v. State, 234 Md. 273, 199 A.2d 229; Dortch and Garnett v. State, supra. Here the open entrance door which had been secured earlier was evidence of the breaking; the fingerprints of the Appellant and the other evidence demonstrated that the Appellant had entered; and the arson was certainly evidence of an intent to commit a felony. It is well settled that in prosecutions for burglary, intent may be inferred from the circumstances. Irving v. State, 230 Md. 364, 187 A.2d 313. | Church may be subject of common-law burglary. | Can a church be the subject of burglary law? | Burglary - Memo 247 - S8_57625.docx | ROSS-003280389-ROSS-003280390 | Condensed, SA | 0.95 | 0 | 1 | | 1 | |
| 20777 | Dortch v. State, 1 Md. App. 173 | 67+4 | It is definitely established in this State, at least, that a church can be the subject of the common law crime of burglary. McGraw v. State, 234 Md. 273, 199 A.2d 229 (1964), cert. den. 379 U.S. 862, 85 S.Ct. 124, 13 L.Ed.2d 64.It is argued on behalf of the Appellants, however, that the phrase "dwelling house of God" does not carry the meaning "church" so as to bring this case within McGraw, supra. | A church can be subject of common-law crime of burglary. | Can a church be the subject of the burglary law? | 012980.docx | LEGALEASE-00147912-LEGALEASE-00147913 | Condensed, SA | 0.86 | 0 | 1 | | 0 | 1 |
| 20778 | Freeman v. United States Dep't of Interior, 83 F. Supp. 3d 173 | 260+17(1) | The D.C. Circuit has noted, however, that "[e]ven without a patent, claimants can maintain their mining rights indefinitely so long as they comply with federal, state, and local requirements" for a valid claim. Orion Reserves, 553 F.3d at 699 (citing 30 U.S.C. "" 26, 28). These possessory interests are "unpatented" claims and give the owner equitable title, as opposed to "patented" claims, in which a private owner has been bestowed full legal title. | Interior Board of Land Appeals' (IBLA) decision to employ Mineral Commodity Price Policy's six-year pricing average for nickel in determining validity of unpatented claims under General Mining Law, rather than examining nickel prices as of claimant's contest proceeding, was reasonable and supported by evidence, even though price of nickel surged at time of proceeding, where IBLA was permitted to use historical pricing in making its validity determination, and use of historical pricing resulted in estimated prices that a person of ordinary prudence would have relied on in determining whether to develop claims. 30 U.S.C.A. § 23. | "Even without a patent, can claimants maintain their mining rights indefinitely?" | Mines and Minerals - Memo #279 - C - EB_57473.docx | ROSS-003293924 | Condensed, SA, Sub | 0.29 | 0 | 1 | | 1 | 1 |
| 20779 | Olson v. Olson, 2014 Ark. 53 | 211+2380 | The only remaining argument for discussion is Tina's contention that the circuit court erred by dismissing her claim for alimony to the extent that the dismissal was with prejudice or functioned as a ruling on the merits. As we said earlier, a circuit court is authorized to dismiss a claim upon a party's failure to prosecute pursuant to Rule 41(b). Gore, supra., Such dismissals are ordinarily without prejudice, Wolford, supra. In the decree, the circuit court did not expressly dismiss the claim with prejudice. Therefore, we construe the court's decree as dismissing the claim for alimony without prejudice. We find no error on this point. | Mother failed to preserve for Supreme Court review claim that trial court lacked statutory authority to award permanent legal custody of child to father at six-month review hearing, to terminate reunification services, and to terminate proceedings, all without notice to mother, where mother did not raise claim at trial. West's A.C.A. § 9-27-365. | Is a court authorized to dismiss a claim upon a party's failure to prosecute? | 11072.docx | LEGALEASE-00094295-LEGALEASE-00094296 | Condensed, SA, Sub | 0.46 | 0 | 1 | | 1 | 1 |
| 20780 | United States v. Yacoubian, 24 F.3d 1 | 92+2838 | The court went on to say that although aliens are entitled to the protection of the Constitution and laws of this country they "continue to be aliens," and "remain subject to the power of Congress to expel them ... whenever, in its judgment, their removal is necessary or expedient for the public interest." Thus, the act providing for the alien's deportation was not rendered invalid by its retroactivity. Id. So, too, with the case at hand. Application of the later-enacted deportation provision, 8 U.S.C. " 1251(a)(2)(C), to Yacoubian is proper. | Retroactive application of firearm (destructive device) conviction deportation provision to alien convicted of firearm offense did not violate ex post facto clause of United States Constitution, although alien argued that his imminent deportation would constitute impermissible double criminal punishment for firearm offense of which he was deportable, convicted; ex post facto clause only applies to criminal laws, and deportation proceedings are civil in nature, and thus ex post facto clause has no application to them. U.S.C.A. Const. Art. 1, 55 9, cl. 3, 10, cl. 1; Immigration and Nationality Act, § 241(a)(2)(C), as amended, 8 U.S.C.A. § 1251(a)(2)(C). | Are aliens entitled to the protection of the Constitution and laws of this country? | 007031.docx | LEGALEASE-00148278-LEGALEASE-00148279 | Condensed, SA, Sub | 0.16 | 0 | 1 | | 1 | 1 |
| 20781 | Oil & Gas Ventures-First 1958 Fund, Ltd. v. Kung, 250 F. Supp. 744 | 170B+2836 | The defendant's position is based upon a contention that prior to the Judicial Code revision of 1948, in the absence of any express statutory provision fixing venue in suits against aliens, the courts generally held that an alien could be sued only in the district in which he could be served.The defendant argues that section 1391(d) is a codification of, and was enacted to give effect to, previously existing case law, which forecloses a literal reading of the new section. In support he points to the Reviser's Notes which, without detailed discussion, state that the section was "added to give statutory recognition to the weight of authority concerning a rule of venue as to which there has been a sharp conflict of decisions." | Venue in action against alien, who was resident of Texas, could properly be laid in New York district, under statute providing that alien may be sued in any district, and was not limited to district in which alien could be served. 28 U.S.C.A. S 1391(d). | Where can a citizen bring suit against an alien? | Aliens_Immigration and Citizenship-Memo 33 - KK.docx | LEGALEASE-00037846-LEGALEASE-00037847 | Condensed, SA, Sub | 0.65 | 0 | 1 | | 1 | 1 |
| 20782 | W & T Travel Servs. v. Priority One Servs., 69 F. Supp. 3d 158 | 25T+135 | The Supreme Court has explained that "there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." Nolde Bros., 430 U.S. at 253, 97 S.Ct. 1067. For example, to hold otherwise "would preclude the entry of a postcontract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination" of the parties' agreement. Id. at 251, 97 S.Ct. 1067. Indeed, in this case it was after the plaintiff terminated the Subcontract through its material breach that the defendant brought its first demand for arbitration and received an award that was affirmed by both this Court and the D.C. Circuit. See Priority One Servs., Inc., 825 F.Supp.2d at 46, aff'd, 502 Fed.Appx. 4, 6 (D.C.Cir.2013). If agreements to arbitrate ended upon termination of the agreement, a party could avoid agreed-upon arbitration of a dispute simply by terminating the agreement or waiting until the agreement ended to assert a claim. | Contractor's material breach of subcontract for transportation services, which involved terminating the subcontract, which should have been automatically renewed for two years when customer exercised the first two one-year options for extension of prime contract, did not terminate the subcontract's arbitration provision, with respect to subcontractor's claim for lost profits under subcontract during prime contract's third and fourth option years. | Does the duty to arbitrate terminate automatically upon expiration of the contract? | 007874.docx | LEGALEASE-00148927-LEGALEASE-00148928 | Condensed, SA, Sub | 0.57 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20783 | Provident Sav. Bank v. United Jersey Bank, 287 N.J. Super. 303 | 172H+624 | N.J.S.A. 12A:1-201(43) defines an unauthorized signature as follows: Unauthorized signature or indorsement means one made without actual or apparent authority and includes a forgery. | "Missing signature" check is a check with "unauthorized signature" within meaning of N.J.S.A. 12A:1-201(43), so that customer's failure to notify drawee bank of such unauthorized signature within one-year period required by N.J.S.A. 12A:4-406(4) precluded customer from recovering amount of check due to negligence of drawee bank. | Does an unauthorized signature include forgery? | Bills and Notes- Memo 462-IS_57873.docx | ROSS-003294294-ROSS-003294295 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 20784 | Hasman v. Canman, 136 Cal. App. 91 | 241+50(1) | When the courts hold that a provision for renewal contained within an instrument is a valid provision (Morehouse v. Allen, supra), it necessarily implies the court's willingness to enforce the same. Likewise, the general policy of the law is to give effect to every valid provision of a contract not unlawful or against public policy. | Note "hereby renewed from year to year" at holder's option, if not paid at maturity, was so renewed by holder's forbearance to sue thereon, without any action clearly indicating that she did not desire to enforce payment, so that suit brought thereon within four years after year of last renewal was not barred by limitations. Code Civ.Proc. S 337. | Is the provision for renewal contained within a contract, note or instrument valid and enforceable? | Bills and Notes- Memo 465-IS_57876.docx | ROSS-003305707 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 20785 | Liberty Nat. Bank & Tr. Co. v. Dvorak, 199 N.W.2d 414 | 195+53(3) | The purpose of a renewal note is to extend the time the debtor has within which to pay his obligation. This purpose is enunciated in the following language from 11 Am.Jur.2d, Bills and Notes & 307, at page 332:"Whether a new note is a renewal of another note depends upon the intention of the parties. A renewal signifies the substitution in place of one engagement of a new obligation on the same terms and conditions; that is, the re-establishment of a particular contract for another period of time. An obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be. There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the old obligation." (Emphasis added.) | A guarantor of a note is exonerated by an act of creditor without consent of guarantor which changes original obligation of principal by substantially increasing principal debt and by providing for increased monthly payments extended over a longer period of time, even though original note contained provisions whereby guarantor consented to any extension and renewal without notice. | What is the purpose of renewal note? | Bills and Notes- Memo 615-IS_57885.docx | ROSS-003280953-ROSS-003280954 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 20786 | Vasko v. Hermansky, 109 Neb. 563 | 8.30E+143 | If the consideration of a note fails, no recovery can be had upon said note by the payee thereof or by his indorsee, unless such indorsee be an innocent and bona fide holder. Warder, Bushnell &Glessner Co. v. Myers, 70 Neb. 15, 96 N. W. 992; Johnson v. Chilson, 29 Neb. 301, 45 N. W. 462; Newton Wagon Co. v. Diers, 10 Neb. 284, 4 N. W. 995. | In an action on notes, evidence held to sustain finding for defendant makers, for the reason that the consideration, the assignment of a lease, failed, because of the inability of the payee to perform. | Can there be recovery if the consideration of a note fails? | 010535.docx | LEGALEASE-00148466-LEGALEASE-00148467 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 20787 | Kennedy v. Heyman, 183 A.D. 421 | 83E+460 | As between the maker and the accommodated party, of course, the note represented no obligation whatever. It had no inception until it was delivered for value. As was recently said in Sabine v. Paine, 166 App. Div. 9, 151 N. Y. Supp. 735, "the note had no valid inception until its purchase and discount by plaintiff." In that case Mrs. Paine executed a note for the face amount of $2,100 to one Vacheron, who sold it to the plaintiff for $1,850. Under such circumstances the court held that the transaction was usurious, and that the paper was void. | A note given for the accommodation of the payee has no inception until it is delivered for value. | Can the note have no inception? | 010573.docx | LEGALEASE-00148436-LEGALEASE-00148437 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 20788 | The Elmbank, 72 F. 610 | 38+87 | In equity, the assignment of a part of a debt or fund is good, and will be enforced. Grain v. Aldrich, 38 Cal. 514; O'Dougherty v. Paper Co., 81 N.Y. 496, 500; Risley v. Bank, 83 N.Y. 318; Daniels v. Meinhard, 53 Ga. 359; Etheridge v. Vernoy, 74 N.C. 800; Lapping v. Duffy, 47 Ind. 51; Fordyce v. Nelson, 91 Ind. 447; Bower v. Stone Co., 30 N.J.Eq. 171; Gardner v. Smith, S Heisk. 256; County of Des Moines v. Hinkley, 62 Iowa, 637, 17 N.W. 915; Bank v. Kimberlands, 16 W.Va. 555; Pom. Eq. Jur. Secs. 169, 1270-1285. Nor is the consent of the debtor necessary to an effectual assignment, in equity, of part of an entire debt. James v. Newton, 142 Mass. 368, 8 N.E. 122. The mere fact that the assignment is in the form of an order to pay does not make it any the less binding or enforceable in equity. | One taking an equitable assignment of part of a fund or chose in action, as security for a pre-existing debt alone, is not a bona fide purchaser for value, and cannot acquire priority over a previous assignment of the same character, by first giving notice of the assignment to the person holding the fund. | In equity, can assignment of a part of a debt be considered good? | Bills and Notes- Memo 675-PR_57905.docx | ROSS-003278614 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 20789 | McLendon v. Brewster, 286 So. 2d 513 | 83E+426 | The Transfer or delivery of a "bearer" note to a pledgee is the only formality required for the pledge of such a note. The pledgee of a bearer note, therefore, becomes the holder of that note when it is delivered to him, and he may enforce payment of it as can any other holder. Baker Bank & Trust Co. v. Behrnes, 217 So.2d 461 (La.App. 1 Cir. 1968). | Where collateral mortgage note was payable to "future holder" and endorsed in blank by maker, it was payable to bearer and transferable by mere delivery. LSA-R.S. 7:9, 7:30, 7:191. | Can a pledgee of a note be a holder? | Bills and Notes- Memo 678-PR_57908.docx | ROSS-003321041 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20790 | Brannock v. Magoon, 141 Mo. App. 316 | 95+52 | It is said: "A consideration may be good in law, though it be of no value to the party to whom it moves. If it be a damage or inconvenience to the other party, that will be sufficient." Williams v. Jensen, 75 Mo. 681; Houck v. Frisbee, 66 Mo. App. 16; Lamp Co. v. Mfg. Co., 64 Mo. App. 115. | It is not necessary to a good consideration that the person contracting should receive any benefit; it is sufficient if the other party be subjected to loss or inconvenience. | If a consideration causes damage would it be a sufficient consideration? | 010602.docx | LEGALEASE-00148390-LEGALEASE-00148391 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 20791 | United States v. Rosner, 485 F.2d 1213 | 110+772(6) | Conspiracy, of course, is an agreement plus an overt act, and the possibility of success has never been thought to be of its essence. (United States v. Kelerman, 431 F.2d 319 (2 Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970).) Bribery, as defined in 18 U.S.C. " 201(b), prohibits offering anything of value to a public official. We have said that "[s]ection 201(b) is violated even though the official offered the bribe is not corrupted, or the object of the bribe could not be attained . . . ." United States v. Jacobs, 431 F.2d 754, 759-760 (2 Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 reh. denied, 403 U.S. 912, 91 S.Ct. 2210, 29 L.Ed.2d 690 (1971). | In prosecution for conspiracy, obstruction of justice and bribery arising from defendant's alleged purchase of certain material purportedly related to grand jury investigation and obtained from United States attorney's office, defendant who raised defense of entrapment was not entitled to requested charge that, though grand jury minutes had been obtained several days after other material, separate independent inducement by Government was not required to be shown as to grand jury minutes where there could have been no misapprehension by jury with respect to the matter as evidence showed a single continuous course of dealing and no one suggested that there had been anything but a single continuing inducement. 18 U.S.C.A. SS 2, 201(b), 371, 1503, 3237. | Is the statute prohibiting bribery of public officials and witnesses violated even though the official offered the bribe has not been corrupted? | 012452.docx | LEGALEASE-00148288-LEGALEASE-00148289 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 20792 | In re Tomlin, 280 B.R. 374 | 289+459 | A partnership agreement can be amended only in compliance with the partnership agreement. Aztec Petroleum Corp. v. MHM Co., 703 S.W.2d 290 (Tex.App.Dallas 1985, no writ.) | Under Texas law, partnership agreement can be amended only in compliance with partnership agreement. | Can a partnership agreement be amended in a manner that does not comply with the partnership agreement? | 022519.docx | LEGALEASE-00148905-LEGALEASE-00148906 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20793 | United States v. Schweppe, 38 F.2d 595 | 34+79(3.1) | If it appeared from the record here that appellee had full knowledge of his condition at the time of reinstatement or at the time of conversion of the alleged insurance, there would be much force in appellant's contention. However, appellee, in making application for the converted insurance, stated in writing that he was disabled on account of injury or disease. He did not attempt to state the extent thereof, nor apparently was he required to do so under the act. No medical examination was necessary, and the record fails to disclose that there was any such examination. In the light of the verdict of the jury, it is apparent that the proceedings subsequent to July 1, 1919, were the result of a mutual mistake on the part of the government and the appellee. There was no insurance to be reinstated and none to be converted. It seems to us that it would work a serious injustice to hold that, where there was a mutual mistake on the part of the government and the appellee, such mistake should be permitted to operate as an estoppel as to one of the parties, and prevent him recovering for his total and permanent disability. Some courts have held that war risk insurance contracts and the law under which they were issued should be construed liberally in favor of the soldier. United States v. Cox (C.C.A.) 24 F.(2d) 944; United States v. Eliasson (C.C.A.) 20 F.(2d) 821. The government has pursued a liberal policy toward the soldiers who willingly offered their lives to the government in its hour of trial, and the doctrine of estoppel under the circumstances here presented ought not to be applied. We think the trial court was correct in holding there was no estoppel. | Insured in war risk policy was required to surrender endowment policy before recovery for total disability on original policy. | Should war risk insurance policies be construed liberally? | 008789.docx | LEGALEASE-00149770-LEGALEASE-00149771 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 20794 | Lucas v. Byrne, 35 Md. 485 | 83E+426 | Chesley vs. Taylor, 3 Gill, 255, decides, that the blank endorsement and delivery of the bill, constituted the party to whom it was delivered the absolute owner of the bill, and conferred upon the holder the power to fill up the blank with a full assignment of the interest to himself--that this can be done at the trial, and is to be regarded for the purposes of the suit, as having been made when the instrument was endorsed--that this supports his declaration that the instrument had been endorsed to him before the suit--that the rights of the holder of a bond or single bill, delivered and endorsed in blank, are in this respect similar to those of the holder and endorser of a promissory note, giving him the power to make a complete assignment. | A bill, note, or draft indorsed in blank is transferable by delivery only. | "Does a blank endorsement and delivery of the bill constitute the party to whom it was delivered, absolute ownership of the bill?" | 010375.docx | LEGALEASE-00149714-LEGALEASE-00149715 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 20795 | Meyer v. Weil, 37 La. Ann. 160 | 3.30E+56 | We have failed to discover any such understanding or provision in the contract, which is a compromise of a pending suit, and, therefore, conclude that the obligation sued on is an unconditional one, therefore a promissory note.) | The words, "This is to certify that I am to pay," amount to a promise, and the unconditional obligation containing them is a promissory note. | Does a promissory note have to be unconditional? | 010638.docx | LEGALEASE-00149447-LEGALEASE-00149448 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 20796 | Phelps-Roper v. Strickland, 539 F.3d 356 | 92+1845 | In Frisby, the Court upheld as constitutional an ordinance that completely prohibited focused residential picketing "before or about" a residence. Frisby, 487 U.S. at 483, 108 S.Ct. 2495 ("[I]n order to fall within the scope of the ordinance the picketing must be directed at a single residence."). The ordinance did not specify a specific distance from which picketing was prohibited, and the Frisby Court did not further elaborate. See Vittitow v. City of Upper Arlington, 43 F.3d 1100, 1111 (6th Cir.1995) (Martin, J., dissenting) ("If Frisby created a "zone," we have no idea how large the "zone" is, i.e. how far back from the front of a house picketers must be, et cetera."); Vendisse v. City of Fargo, 78 F.3d 1264, 1269 (8th Cir.1996) ("[U]pon a careful reading of Frisby, we do not find that its holding defined the outer parameters of "focused" residential picketing."). The Frisby Court observed that a "complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." The Court found that "the "evil" of targeted residential picketing is created by the medium of expression itself," given that residents targeted by picketing are "trapped within the home, and because of the unique and subtle impact of such picketing," residents are "left with no ready means of avoiding the unwanted speech." Thus, the Court held that the ordinance was narrowly tailored because "the picketing prohibited by the [ ] ordinance is speech directed primarily at those who are presumptively unwilling to receive it." | Ohio statute prohibiting picketing or other protest activities within "fixed buffer zone" of 300 feet of any residence, cemetery, funeral home, church, synagogue, or other establishment during or within one hour before or one hour after funeral or burial service was narrowly tailored to meet Ohio's legitimate interest in protecting funeral attendees from unwanted communication, for purposes of First Amendment overbreadth challenge to statute; statute restricted only time and place of speech directed at funeral or burial service. U.S.C.A. Const.Amend. 1; Ohio R.C. S 3767.30. | Can picketing be prohibited by an ordinance? | Disorderly Conduct-Memo 99-PR_SB533.docx | ROSS-003278293-ROSS-003278294 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20797 | Vittitow v. City of Upper Arlington, 43 F.3d 1100 | 268+622 | Two cases in particular inform our analysis of this issue. First, in Frisby, a group of anti-abortion activists challenged a Brookfield, Wisconsin, ordinance that, like the Upper Arlington ordinance discussed above, prohibited residential picketing. Specifically, the ordinance provided: "It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield."487 U.S. at 477, 108 S.Ct. at 2498. In upholding the ordinance, the Court, unlike the lower courts, construed it narrowly to avoid constitutional difficulties.Under the Court's reading, "to fall within the scope of the ordinance the picketing must be directed at a single residence."The Court added: "General marching through residential neighborhoods, or even walking a route in front of an entire block of houses, is not prohibited by this ordinance. Accordingly, we construe the ban to be a limited one; only focused picketing taking place solely in front of a particular residence is prohibited." | Where ordinance prohibiting residential picketing was unconstitutionally overbroad as written, Court of Appeals would not take extraordinary measure of saving ordinance by accepting representations by city's counsel as to how ordinance would be enforced, as Supreme Court did in Frisby v. Schultz ; it was not clear what representations Court of Appeals had received, it was not clear that counsel could bind city's legislative body or its police department, and city's idea of what constituted enforcement procedure that did not offend Constitution conflicted with Supreme Court precedent. U.S.C.A. Const.Amend. 1; Upper Arlington, Ohio, Code S 517.17. | Can picketing be prohibited by an ordinance? | Disorderly Conduct-Memo 99-.docx | LEGALEASE-00039075-LEGALEASE-00039076 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 20798 | State v. Ober, 34 La. Ann. 359 | 156=62.2(1) | We think otherwise. In the case of the State v. Taylor, 28 A. 462, it was held: "That the State is bound by her judicial pleadings and admissions, the same as private persons, and is entitled to no greater right or immunity as a litigant, than they are. The doctrine of estoppel applies to the State just as it does to individuals." Nor is this rule of law varied by the fact that there are others interested in the subject matter of the proceedings conducted by the State. If any persons have been injured by the action of the State, good faith and a sense of justice should incline the State to make reparation, as all other fiduciaries should do under like circumstances, even admitting their existence; but such conditions cannot affect the rules of law nor modify the liability and status of the State, in a judicial proceeding in a suit where the State seeks to recover the lands as owner, and where the legal title under the federal grant was vested solely in the State. This view of the case dispenses with the consideration of other questions involved. | The doctrine of estoppel applies to the state as well as to private individuals. | Does the doctrine of estoppel apply to the state just as it does to individuals? | Estoppel - Memo #25 - CSS.docx | LEGALEASE-00039111-LEGALEASE-00039112 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 20799 | McKean v. Carroll Cty., 324 Ill. 243 | 200=99 | In Goodwine v. County of Vermilion, 271 Ill. 126, 110 N. E. 890, this court held that this section of the statute authorized county boards to appropriate funds to aid in the construction of roads and bridges in counties whenever in the judgment of a majority of their members the public interest required them to do so; that the law left it entirely to the discretion of the boards as to when, where, to what extent, and in what manner they would grant such aid. While the act of 1917 did repeal acts and parts of acts, it did not purport to repeal this section. Repeal of laws by implication is not favored, and it is only where there is a clear repugnance between two laws, and the provisions of both cannot be carried into effect, that the later law must prevail and the former be considered repealed by implication. Where two statutes are enacted which have relation to the same subject, the earlier continues in force, unless the two are clearly inconsistent with, and repugnant to, each other, or unless in the later statute some express notice is taken of the former plainly indicating an intention to repeal it. People v. Burke, 313 Ill. 576, 145 N. E. 164; Village of Glencoe v. Hurford, supra. | County may pay for rights of way for construction of state hard roads. Bond Issue Act 1917, S 12, S.H.A. ch. 121, S 277; S.H.A. ch. 34, S 57; State Highways Act 1921, SS 7, 11, S.H.A. ch. 121, SS 297, 301; Hard Road Construction Act 1921, S 2, S.H.A. ch. 121, S 283; Laws 1925, p. 326, S.H.A. ch. 34, S 25, cl. 11. | Does the county board have the power to aid in the construction of roads? | 019105.docx | LEGALEASE-00149615-LEGALEASE-00149616 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 20800 | United States v. YasithChhun, 513 F. Supp. 2d 1179 | 221=212 | On the other hand, the Government argues that the original meaning of "at peace" is a "state of affairs that exists between two countries where neither has declared war on the other." (Gov.'s Mot. 12.) The Government points to two cases, United States v. Burr, 25 F. Cas. 201 (C.C.D.Va.1807) (No. 14694A) and United States v. Smith, 27 F. Cas. 1192 (C.C.D.N.Y.1806) (No. 16,342), as authority. In Burr, a decision authored by Chief Justice Marshall while sitting by designation on the circuit court, Aaron Burr was charged with a military expedition against Spain after Spain's invasion of United States' territory. The Burr decision contrasted a state of peace with a state of war. The court ultimately held that the two nations remained "at peace" once the United States' government had not determined that Spain's invasion was an act of war nor decided to take any action against Spain. The court reasoned that only the government can make such "an election" to act against a foreign nation. Burr, 25 F. Cas. at 201. In Smith, another case involving United States' Spain relations, the court stressed that only Congress may decide when the United States is no longer "at peace" with a foreign nation because Article I, section 8 of the United States Constitution gives it exclusive power to declare war. Smith, 27 F. Cas. at 1231."32 | Use of term "at peace" did not render void for vagueness statutes criminalizing damage or destruction to property of foreign state or taking part in military expedition foreign state with whom United States is "at peace," as people of ordinary intelligence would understand "at peace" to mean the absence of war. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. SS 956(b), 960. | What is the meaning of the term at peace? | Neutrality Laws - Memo 19 - RK_58652.docx | ROSS-003296231-ROSS-003296232 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 20801 | McDaniel v. Harleysville Mut. Ins. Co., 84 So. 3d 106 | 217=3557 | Harleysville argues on appeal that the trial court's judgment can be affirmed because it was entered as a result of the McDaniels' failure to prosecute their action. We disagree. We recognize that it is within a trial court's discretion to dismiss an action pursuant to Rule 41(b), Ala. R. Civ. P., when a party has failed to prosecute its action under circumstances evidencing purposeful delay, willful default, or some other contumacious conduct on the part of that party. See Riddlesprigger v. Ervin, 519 So.2d 486, 487'88 (Ala.1987). However, in the present case, the language of the trial court's December 20, 2010, order dismissing the McDaniels' action indicates that the order of dismissal was based on a consideration of the merits of Harleysville's motion. Although the order notes that counsel for the McDaniels did not appear for the hearing on the motion to dismiss, the order reflects that it was entered as a result of the trial court's "due consideration" of the pending motion, not because of a lack of diligence by the McDaniels in prosecuting their action. Further indicating that the trial court did not conclude that the action was due to be dismissed for failure to prosecute is the fact that the trial court set aside its December 20, 2010, order in part, despite a lack of argument in the McDaniels' postjudgment motion relative to any possible failure to prosecute their action. Indeed, the first time in this entire action that an issue has been raised as to a possible failure to prosecute on the part of the McDaniels is in Harleysville's appellate brief; no such suggestion is contained in the record of the proceedings below | Default declaratory judgment entered in federal court action in favor of home builder's insurer was not binding on home purchasers who were not parties to the action; as a result, they were free to litigate the issue of coverage determined by that judgment in a separate action seeking to apply insurance money to satisfy their judgment against home builder. | Is it within a court's discretion to dismiss an action when a party has failed to prosecute its action under circumstances evidencing purposeful delay or some other contumacious conduct on the part of that party? | 036714.docx | LEGALEASE-00149972-LEGALEASE-00149973 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20802 | McKoy v. McKoy, 214 N.C. App. 551 | 30+3202 | Rule 41(b) provides in pertinent part that, "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim therein against him." N.C.R. Civ. P. 41(b). Thus, under Rule 41(b), a claim may be dismissed for one of three reasons: failure to prosecute the claim, failure to comply with the rules of civil procedure, or failure to comply with a court order. Spencer v. Albemarle Hosp., 156 N.C.App. 675, 678, 577 S.E.2d 151, 153 (2003).Although Rule 41(b) only explicitly references dismissal as a possible sanction for default, our courts have recognized that the trial court has the "inherent power" under the rule to impose lesser sanctions. Daniels v. Montgomery Mut. Ins. Co., 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987); accord McLean v. Mechanic, 116 N.C.App. 271, 275, 447 S.E.2d 459, 461 (1994) (observing that "[a]lthough a dismissal with prejudice pursuant to Rule 41(b) is available as a sanction," such a dismissal "is not the only available sanction"), disc. review denied, 339 N.C. 738, 454 S.E.2d 653"54 (1995). While certainly not exhaustive, other sanctions the trial court may impose include "[a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings" Daniels, 320 N.C. at 674, 360 S.E.2d at 776 (quoting Rogers v. Kroger Co., 669 F.2d 317, 321"22 (5th Cir.1982)). | If the trial court undertakes an analysis of less drastic sanctions, a resulting order of dismissal will be reversed on appeal only for an abuse of discretion. Rules Civ.Proc., Rule 41(b), West's N.C.G.S.A. § 1A-1. | Can a claim be dismissed for a failure to comply with a court order? | 036892.docx | LEGALEASE-00150114-LEGALEASE-00150115 | Condensed, SA, Subt | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 20803 | Cosmopolitan Tr. Co. v. Leonard Watch Co., 249 Mass. 14 | 83E+481 | Upon the question whether the judge erred in directing a verdict for the plaintiff, it is necessary to consider whether there was sufficient evidence of a transfer of the note to the savings department independent of the testimony of O'Brien. As the note bore no indorsement, in the hands of the transferee it would be regarded as an assignment. Barker v. Barth, 192 Ill. 460, 471, 61 N. E. 388. A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim. Williston, Contracts, vol. 1, " 424; Southern Mutual Life Insurance Ass'n v. Durdin, 132 Ga. 495, 64 S. E. 264, 131 Am. St. Rep. 210; Christmas v. Russell, 14 Wall. 69, 84, 20 L. Ed. 762. The important thing is the act and the evidence of intent; formalities are not material. Nor is it necessary that there should be any consideration where the question arises between the assignee and the debtor. Cummings v. Morris, 25 N. Y. 625; Stone v. Frost, 61 N. Y. 614; Chase v. Dodge, 111 Wis. 70, 86 N. W. 548; Wardner, Bushnell & Glessner Co. v. Jack, 82 Iowa, 435, 439, 48 N. W. 729. | Assignments made by words or acts. | Can assignments be made by acts? | 009048.docx | LEGALEASE-00151114-LEGALEASE-00151115 | Condensed, SA, Subt | 0.97 | 0 | 1 | 1 | 1 | 1 |
| 20804 | Forsyth v. Day, 41 Me. 382 | 308+173(2) | In Weed v. Carpenter, 4 Mend. 219, it was held that where a man repeatedly, for three or four years, permitted his friend to indorse his name on bills and notes with his knowledge and without objection, a jury would be authorized to find authority for such indorsements. | In an action on a note to which the defendant's name was signed by another person, other notes signed in the same manner and by the same person, subsequent to the date of the note in suit, or of whose existence the defendant was not shown to have knowledge before its execution and delivery, are not competent evidence from which the jury can infer original authority from the defendant to the party signing the note in suit, or a subsequent ratification or adoption of such signing. | Can there be authority for indorsements when a man had permitted his friend to forge his name as indorser of numerous bills? | 009704.docx | LEGALEASE-00151134-LEGALEASE-00151135 | Condensed, SA, Subt | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 20805 | In re Feldman's Estate, 387 Ill. 568 | 8.30E+186 | Opposed to the foregoing principles is the statement found in numerous cases that where the body of the note and a marginal memorandum differ as to date of maturity the provision in the body of the instrument is controlling. | Where note was dated March 1, 1931, and promised on or before date to pay a named person $3,000 with interest at 5 per cent. per annum from date until paid at named bank and contained in lower left-hand margin the statement "Due Mar. 1, 1939," the note matured on March 1, 1939. S.H.A. ch. 98, SS 27, 31, 47, 73, 78. | Will marginal notation be regarded as part of a note if it conflicts with the terms of its main body? | Bills and Notes -Memo 216-DB.docx | LEGALEASE-00040584-LEGALEASE-00040585 | Condensed, SA, Subt | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 20806 | Williams v. Osbon, 75 Ind. 280 | 83E+402 | The "finding is," that, prior to the maturity of said notes, "said Williams assigned said notes, in writing, to the defendant Joseph Neblon." This is not a finding that he "endorsed" the notes. It was held in Keller v. Williams, 49 Ind. 504, that an averment in the complaint, that the note was "'assigned in writing" was not equivalent to an averment that it was endorsed; and we think a finding that the appellant "assigned the notes in writing" is not a finding that he "endorsed" them. The words are not synonymous. The word "'endorsement" has a known legal signification, and implies a transfer by a writing upon the instrument. Cooper v. Drouillard, 5 Blackf. 152; Kern v. Hazlerigg, 11 Ind. 443. The word "assigned" has no such signification, but implies that the assignment was made upon a separate instrument. In Keller v. Williams, supra, WORDEN, J., says: "The averment is, that the note was assigned in writing. It may have been assigned in some separate instrument, and not upon the note; and the inference is that the assignment was in a separate instrument, as, had it been upon the note, the term endorsed would have been more appropriately used." | The term "indorsement" implies a transfer by writing upon the instrument. | What does the term endorsement imply? | Bills and Notes-Memo 1143-PR_59409.docx | ROSS-003297029-ROSS-003297030 | Condensed, SA, Subt | 0.93 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20807 | Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 | 25T+515 | The contractual arbitration provision in Hooters allowed the employer, but not its employees, "to bring suit in court to vacate or modify an arbitral award when it [the employer] can show, by a preponderance of the evidence, that the panel exceeded its authority." Id. at 939. The Hooters arbitration clause required employees to provide the company notice of any claim, including " 'the nature of the Claim' " and " 'the specific act(s) or omission(s) which are the basis of the Claim,' " as well as "a list of all fact witnesses with a brief summary of the facts known to each," but the company was not required to file any responsive pleadings, notice of its defenses, or lists of witnesses. Id. at 938. The contract provided that arbitrators were to be chosen from a list of arbitrators "created exclusively by Hooters"; the employer was free to place on that list arbitrators with "existing relationships, financial or familial" with the company. Id. at 939. Furthermore, once proceedings began, employees were not permitted to raise any matters not raised in the initial notice, nor were the employees allowed to audio or videotape the arbitration hearing though the company was permitted to do this. Id. | Given applicability of equitable estoppel doctrine to nonsignatories to arbitration agreements governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Convention did not preclude enforcement of arbitral award against buyer of industrial saw and in favor of foreign manufacturer, based on contract between manufacturer and distributor, on grounds that Convention required United States courts to enforce international arbitration agreements only against parties to an agreement in writing. 9 U.S.C.A. S 201. | Can a party sue in court to vacate or modify an arbitral award? | Alternative Dispute Resolution - Memo 826 - RK_59511.docx | ROSS-003282686-ROSS-003282687 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | |
| 20808 | Kent v. Curtis, 4 Mo. App. 121 | 10BH+937 | The case of O'Brien v. Coulter, 2 Blackf. 421, is sometimes cited as authority for the position that a judgment is not necessary to give jurisdiction to equity; but in that case the debtor was dead, and the creditors had no complete remedy at law. It is conceived that the dictum of Chief Justice Marshall, in Russell v. Clark's Executors., 7 Cranch, 89,--"It is also true that if a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance to that court, which will not require that the claim should be first established in a court of law,"--refers to cases where the legal remedy is not open to the creditor, otherwise the dictum does not seem to be supported by the adjudged cases. It is not easy to see how a distinction can be made on the ground that there is a fund accessible only by the aid of a court of chancery. Equity does not regard the mere form which property may happen to take; and whether the property is real estate or money, it may with equal propriety be said that there is a fund accessible only by the aid of a court of chancery. The cases where the property of the debtor has been attached are expressly put upon the ground that the creditor has acquired a lien, and that this fact gives the jurisdiction. Stone v. Anderson, 26 N. H. 516; Tappan v. Evans, 11 N. H. 327; Hunt v. Field, 9 N. J. Eq. 36. | An insolvent purchased land the deed to which was taken in the name of his wife, who furnished only a small part of the consideration. Nearly the whole of the purchase price was paid by the debtor with his own money and money belonging to a third person arising out of sales of the third person's goods by the debtor. The debtor after the conveyance erected buildings on the land, which were paid for by him out of his own money and out of the proceeds of the sales of the third person's goods. The debtor had no property out of which the claim of the third person could be satisfied. Held, that the third person could not maintain a creditor's bill against the debtor without first having obtained a judgment at law against him, though such judgment would have been unavailing. | If a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery where should the application be made? | 014076.docx | LEGALEASE-00151533-LEGALEASE-00151535 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 20809 | Mercer v. Lancaster, 5 Pa. 160 | 95+54(1) | It must be admitted that, on the face of the note, without more, the plaintiff is entitled to recover; but it is urged that the note is without consideration. In fact, it is an ordinary mercantile transaction, and whether viewed as accommodation paper or a note, drawn by Pearce to Mercer, and by him endorsed to Lancaster, with the special purpose of enabling the latter to raise money to relieve himself from a responsibility previously contracted as surety, it imports a legal and valid consideration. And in addition to this view of the case, which would be decisive, it is obvious it puts Lancaster in a worse position than he would have been had not the note been executed, and this has been repeatedly held to be a consideration sufficient to support a promise. The original notes, for which the note in suit, was a substitute, having arrived at maturity, Lancaster had a right to require Marshall forthwith to proceed by adversary process, if necessary, to collect the money due. But this unquestionable right he debars himself from by accepting a note at ninety days, for it would be contrary to his agreement, and consequently a wrong to C. M. Pierce and Mercer, to require the immediate collection of the money by adversary process. A consideration is sufficient, if it arise from any act of the plaintiff, from which the defendant or a stranger derives any benefit, however small, if such act is performed by the plaintiff, with the assent, express or implied, of the defendant; or by reason of any damage, or any suspension, or forbearance of the plaintiff's right at law, or in equity, or any possibility of loss occasioned to the plaintiff by the promise of another, although no actual benefit accrues to the party undertaking; Hind v. Holdship, 2 Watts, 104. Here then was a detriment to the plaintiff, and forbearance or suspension of an equitable right, which, as we have seen, constitutes a sufficient consideration. | If any of the elements of such test be established, the consideration becomes sufficient to support a promise, although its inadequacy may be grossly disproportionate to the promise. The smallest spark of benefit or accommodation is sufficient to sustain an action of assumpsit. | What constitutes sufficient consideration? | Bills and Notes - Memo 824 - RK.docx | LEGALEASE-00041335-LEGALEASE-00041336 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 20810 | Dellums v. Smith, 577 F. Supp. 1449 | 46+6 | The Court declined to issue the requested subpoenas on the ground that such testimony of the cabinet members was immaterial. William Paterson, a Supreme Court Justice and participant in the Constitutional Convention, presided over the trial and handed down the court's opinion. He first examined the Neutrality Act and found that it "is expressed in general, unqualified terms; it contains no condition, no exception; it invests no dispensing power in any officer or person whatsoever." Justice Paterson then determined that the Constitution itself does not create such an exception for the President. "This instrument [the Constitution], which measures out the powers and defines the duties of the President, does not vest in him any authority to set on foot a military expedition against a nation with which the United States is at peace." In conclusion, Justice Paterson stated that "the law under consideration is absolute" and "requires universal obedience." | Attorney General could not refuse to conduct preliminary investigation under Ethics in Government Act on whether President, Secretaries of State and Defense, and other executive officials violated Neutrality Act by supporting paramilitary operations against Nicaragua on ground that the operations were authorized by the President since the Neutrality Act applied to all persons, including the President. 18 U.S.C.A. S 960; 28 U.S.C.A. SS 591-598. | Does the Neutrality Act dispense power in any officer or person whatsoever? | Neutrality Laws - Memo 26 - RK_59615.docx | ROSS-003279617-ROSS-003279618 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20811 | Redmon v. Davis, 115 Colo. 415 | 361+1617(13) | There seems to be little pertinent authority on this point. The Attorney General cites Purifoy, State Treasurer, v. Teasley, Probate Judge, 188 Ala. 416, 66 So. 6. The main point in that case was the holding that a widow could be a pensioner under a state act, Gen.Acts 1911, p. 690, " 27, which provided that the unexpended portion of a pension check could be applied toward the funeral expenses of the pensioner, where payment could not otherwise be provided. Plaintiffs point out that case is unlike the instant one, in that the Alabama act provided simply that the unexpended portion of a check already issued during the pensioner's lifetime, should be applied toward funeral expenses; whereas, in the instant case a definite payment is provided after the death of the pensioner to cover funeral and burial expenses. | The statute entitled "An act to promote public welfare by providing for pensions to aged persons in need", and providing in the body of the act for payment of funeral expenses of needy aged persons, is not violative of constitutional requirement that act relate to only one subject expressed in title. Laws 1937, c. 201, S 10, as amended by Laws 1939, c. 131; Const. art. 5, S 21. | Can a widow be a pensioner? | Pension - Memo 72 - SB_59619.docx | ROSS-003280972-ROSS-003280973 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 20812 | Kennedy v. Heyman, 183 A.D. 421 | 83E+460 | As between the maker and the accommodated party, of course, the note represented no obligation whatever. It had no inception until it was delivered for value. As was recently said in Sabine v. Paine, 166 App. Div. 9, 151 N. Y. Supp. 735, "the note had no valid inception until its purchase and discount by plaintiff." In that case Mrs. Paine executed a note for the face amount of $2,100 to one Vacheron, who sold it to the plaintiff for $1,850. Under such circumstances the court held that the transaction was usurious, and that the paper was void. | A note given for the accommodation of the payee has no inception until it is delivered for value. | What is the inception of the note? | 010443.docx | LEGALEASE-00152392-LEGALEASE-00152393 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 20813 | Nationstar Mortg. v. MacPherson, 56 Misc. 3d 339 | 266+1749 | The plaintiff may also establish its standing by demonstrating that it is the holder of the mortgage note within the contemplation of the Uniform Commercial Code. Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an endorsement in blank or bears a special endorsement payable to the order of the plaintiff (see UCC 1"201; 3"202; 3"204; Hartford Acc. & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 159, 544 N.Y.S.2d 573, 542 N.E.2d 1090 [1989] ). A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession" (UCC 1"201[b][21] ). Notably, the holder of an instrument whether or not he is the owner may enforce payment in his own name (see UCC 3"301); Wells Fargo Bank, N.A. v. Ostiguy, 127 A.D.3d 1375, 8 N.Y.S.3d 669 [3d Dept.2015] ). " "Bearer" means  a person in possession of a negotiable instrument" (UCC 1"201[b][5] ), and where the note is endorsed in blank, it may be negotiated by delivery alone (see UCC 3"202[1], 3"204 [2] ). "An endorsement in blank specifies no particular endorsee and may consist of a mere signature" and "[a]n instrument payable to order and endorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially endorsed (UCC 3"204[2] )" (JPMorgan Chase Bank, Natl. Assn. v. Weinberger, 142 A.D.3d 643, , 37 N.Y.S.3d 286). | To establish its standing to foreclose a mortgage by demonstrating that it is the holder of the mortgage note within the contemplation of the Uniform Commercial Code (UCC), a plaintiff, as the holder of a duly endorsed note in blank, is required only to demonstrate that it had physical possession of the note prior to commencement of the action, and in such cases, it is unnecessary to give factual details of the delivery in order to establish that possession was obtained prior to a particular date, since a plaintiff in possession of a note endorsed in blank is without obligation to establish how it came into possession of the instrument in order to be able to enforce it. McKinney's Uniform Commercial Code SS 1-201(b)(21), 3-202(1), 3-204(2), 3-301. | Can a holder of an instrument enforce payment even though he is not an owner? | Bills and Notes-Memo 1050-ANM_60033.docx | ROSS-003282699-ROSS-003282700 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20814 | Farmers' & Traders' Bank v. Laird, 188 Mo. App. 322 | 8.30E+266 | We do not sanction the view of plaintiff that the agreement for a renewal is void for uncertainty. Where such agreement does not state the number of renewals it must be construed as an agreement to renew once only(1 Daniel on Negotiable Instruments [6th Ed.] " 159). And where it does not specify the time, the parties should be understood as contemplating that the terms of the original note would be repeated in the renewal, and that the new period of time allotted for the payment would be of the same duration as that provided in the original note. | An agreement to renew a note is not void for uncertainty because it does not state how many renewals there may be or how long. | "Where an agreement to renew the note does not state the number of renewals, how do courts construe such agreements?" | 010770.docx | LEGALEASE-00152489-LEGALEASE-00152490 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 20815 | Green v. JPMorgan Chase Bank, N.A., 937 F. Supp. 2d 849 | 83E+426 | Green contends that the indorsement is not valid, but the summary judgment record suggests otherwise. It is not clear from the record whether CTX indorsed the Note on the back of the last page or on an allonge. Even if the indorsement is, as Green asserts, on an allonge, however, the indorsement would be valid: "The use of an allonge, without more, does not create an automatic fact issue" as to whether the indorsement is valid.Casterline v. OneWest Bank, F.S.B., No. 2:12"CV"00150, 2012 WL 6630024, (S.D.Tex. Dec. 19, 2012) (citing Sw. Resolution Corp. v. Watson, 964 S.W.2d 262, 264 (Tex.1997)); see also Tex. Bus. & Com.Code " 3.204, cmt. 1 ("An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement."). Green has pointed to no other indication that the indorsement is suspect. Moreover, Green has not affirmatively alleged that the indorsement is fraudulent. See Martinez v. Bank of Am., N.A., No. SA"12"CV"462"XR, 2013 WL 489992, at (W.D.Tex. Feb. 7, 2013) (finding no irregularity in allonge with two indorsements "absent any affirmative factual allegations impugning the validity of the indorsement to Defendant"). The MSJ Defendants' evidentiary appendix states that the copy of the Note in the record "is a true and correct copy." Defs.' App., Ex. A," B. The Court accepts this representation. Because the mere use of an allonge does not give rise to a fact issue, and because Green has pointed to no other evidence that the indorsement is invalid, the Court concludes that there is no factual dispute as to whether the indorsement is valid. | Even if note executed to purchase home was indorsed in blank on allonge, indorsement was valid, under Texas law, providing that indorsement on allonge was valid, even though there was sufficient space on instrument for indorsement, and that instrument indorsed in blank became payable to bearer and could be negotiated by transfer of possession alone until specially indorsed, and thus, holder of note and deed of trust securing payment of note was entitled to collect on note by foreclosing on home, as blank indorsement made note payable to person possessing note. V.T.C.A., Bus. & C. S 3.205(a, b). | "Can use of allonge to a note without more, create an automatic fact issue as to whether the indorsement is valid?" | 010828.docx | LEGALEASE-00152257-LEGALEASE-00152258 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20816 | Cumming v. Bd. of Ed. of Richmond Cty., 175 U.S. 528 | 92+3278(1) | The Constitution of Georgia provides: "There shall be a thorough system of common schools for the education of children in the elementary branches of an English education only, as nearly uniform as practicable, the expenses of which shall be provided for by taxation, or otherwise. The schools shall be free to all children of the state, but separate schools shall be provided for the white and colored races." Art. 8, " 1. | A decision by a state court, denying an injunction against the maintenance by a board of education of a high school for white children, while failing to maintain one for colored children also, for the reason that the funds were not sufficient to maintain it in addition to needed primary schools for colored children, does not constitute a denial of equal protection of the law or equal privileges of citizens of the United States. | Does a State have the right to separate races for education? | 016691.docx | LEGALEASE-00152750-LEGALEASE-00152751 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20817 | Chapman v. Sollars, 38 Ohio St. 378 | 200+147 | It was decided in Craig v. Heis, 30 Ohio St. 550, that assessments under the Two-Mile Road Improvement Acts constitute a lien upon the lands assessed. In addition to the arguments found in the opinion in that case, I will name one or two considerations tending to the same conclusion. In Oreake v. Beasley, 26 Ohio St. 315, it was held that these assessments were not a personal charge against the owner of lands assessed, hence, the charge, or lien upon the land, is the only security provided for their payment. Again, the act of April 11, 1876 (73 Ohio L. 218), gives to the treasurer of the county the right to enforce the lien of taxes and assessment by action. Assessments under the Two-Mile Improvement Acts have uniformly been regarded as within the meaning of this act. | A purchaser at a tax sale of land delinquent for the nonpayment of assessments under the two mile road improvement law, after the sale has proved invalid on account of a defective description, may recover from the owner the tax, interest, and penalty, interest subsequently accruing, and taxes afterwards paid. | Are assessments for road improvements considered liens? | Highways - Memo 329 - RK_60191.docx | ROSS-003292278 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 20818 | Simmons v. State, Dep't of Children & Family Servs, 171 So. 3d 1147 | 30+3279 | "Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." Industrial Companies, Inc. v. Durbin, 02*0665, p. 6 (La.1/28/03), 837 So.2d 1207, 1213 (citations omitted). Accordingly, "[e]very reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial." (citation omitted). | In reviewing a trial court's ruling sustaining an exception of no cause of action, the appellate court should conduct a de novo review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. | "In determining whether a petition should be dismissed for failure to state a cause of action, should every reasonable interpretation be accorded the language of a petition in favor of maintaining its sufficiency?" | 037995.docx | LEGALEASE-00152742-LEGALEASE-00152743 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | 1 |
| 20819 | Williams v. Osbon, 75 Ind. 280 | 83E+481 | The "finding is," that, prior to the maturity of said notes, "said Williams assigned said notes, in writing, to the defendant Joseph Neldon." This is not a finding that he "endorsed" the notes. It was held in Keller v. Williams, 49 Ind. 504, that an averment in the complaint, that the note was "'assigned in writing" was not equivalent to an averment that it was endorsed; and we think a finding that the appellant "assigned the notes in writing" is not a finding that he "endorsed" them. The words are not synonymous. The word "'endorsement" has a known legal signification, and implies a transfer by a writing upon the instrument. Cooper v. Drouillard, 5 Blackf. 152; Kern v. Hazlerigg, 11 Ind. 443. The word "assigned" has no such signification, but implies that the assignment was made upon a separate instrument. In Keller v. Williams, supra, WORDEN, J., says: "The averment is, that the note was assigned in writing. It may have been assigned in some separate instrument, and not upon the note; and the inference is that the assignment was in a separate instrument, as, had it been upon the note, the term endorsed would have been more appropriately used." | The term "assign" implies that the assignment was made on a separate instrument. | What does the word assigned imply? | Bills and Notes - Memo 835 - RK_60288.docx | ROSS-003293802 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 20820 | In re McCord, 174 F. 72 | 83E+471 | The counsel for Squier's trustee contends that this statute has changed the rule, and that McCord, and in fact each of the prior indorsers, is liable to Squier's trustee for the whole amount of the note; and the counsel cites sections 55 and 114 of the statute in support of his claim. Section 55 provides that an accommodation party to a negotiable instrument is liable to a holder for value, notwithstanding that such holder, at the time of taking the instrument, knew the accommodation party received no value. The section does not mean that one accommodation indorser is necessarily liable to another accommodation indorser, who takes up the paper, for the full amount of the instrument. The extent of the liability depends upon the agreement among themselves, express or implied, of the several accommodation indorsers. When two or more accommodation indorsers lend their names in order that a third person can borrow money from some other person on the instrument thus indorsed, the implied agreement is that each accommodation indorser shall be liable as between themselves for his proportionate share of the sum mentioned in the instrument. The provision in section 114 that any person who indorses a negotiable instrument before delivery is liable to the parties subsequent to the payee, it seems to me, states what is the presumption, in the 74 absence of any evidence showing what the facts are as regards the rights and liabilities of the various parties as between themselves. In other words, this section was not intended to change the well-established rule of law that parol evidence is always admissible to show what the true relations of the various parties are in fact. See Witherow v. Slayback, 158 N.Y. 649, 53 N.E. 681, 70 Am.St.Rep. 507, and cases there cited; also Kohn v. Consolidated Butter & Egg Co., 30 Misc.Rep. 725, 63 N.Y.Supp. 265. | The mere fact that indorsers of a note are accommodation indorsers, and known to each other to be so, is not sufficient to change the general rule of law that prior indorsers are liable in solido to subsequent indorsers who have paid the note; but an express agreement is necessary to render them liable ratably as between themselves. | What is the extent of liability faced by an accommodation indorser over other accommodation indorsers? | Bills and Notes - Memo 883 - RK_60682.docx | ROSS-003305455-ROSS-003305456 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20821 | Bishop v. Chase, 156 Mo. 158 | 83E+542 | This addition is called, in the adjudged cases and elementary treatises, an "allonge." That device had its origin in cases where the back of the instrument had been covered with indorsements or writing, leaving no room for further indorsements thereon. But, perhaps, an indorsement upon a piece of paper, attached in the manner indicated, would now be deemed sufficient to pass the legal title, although there may have been, in fact, room for it on the original instrument. The case of Crosby v. Roub, 16 Wis. 616, goes further, and holds that an indorsement or transfer of a promissory note may be on another paper attached to and made a part of the note, and that it is not essential to a transfer of a note by this method that there should have been a physical impossibility of writing the indorsement or transfer on the note itself, but it may be on another paper attached to the note, whenever necessity or the convenience of the parties requires it. But the courts of Iowa, Illinois, and Nebraska have all refused to follow that case. In Franklin v. Twogood, 18 Iowa, 515, the Racine & Mississippi Railroad Company received a negotiable note payable to itself. Before the maturity of the note the railroad company executed its bond, payable "to - or bearer," for a certain sum, and as collateral security for the bond it assigned and transferred the note, describing it. The railroad company attacked the bond, note, and mortgage securing the same, which were attached together by eyelets, and sold them before maturity to an innocent holder, who sued upon the note. The suit was defended upon the ground that the note was without consideration, but plaintiff claimed that the bond, being attached to the note, amounted to an indorsement, and that the bond was merely an allonge. | An indorsement of a note written on a separate piece of paper, reciting that the note, with deed of trust accompanying, was placed as collateral security for a loan on another note, and attached to the original and collateral notes by a pin, where there is plenty of room on the note for the indorsement, was insufficient to invest the transferee with the rights of a bona fide purchaser. | What can be done when there is physical impossibility of writing of an indorsement on the note itself? | 009879.docx | LEGALEASE-00153611-LEGALEASE-00153612 | Condensed, SA | 0.78 | 0 | 1 | 1 | 1 | |
| 20822 | Carroll Cty. Sav. Bank v. Strother, 28 S.C. 504 | 83E+356 | Our next inquiry, therefore, is whether this is a negotiable note; and this depends upon the effect of three stipulations contained in the note: (1) For the payment of "all counsel fees and expenses in collecting this note, if it is sued or placed in the hands of counsel for collection;" (2) the provision whereby the payee is invested with "full power of declaring this note due, and take possession of said engine and saw-mill, at any time they may deem this note insecure, even before the maturity of the same;" (3) the promise to pay the amount named, "with exchange on New York." So far as we are informed, we have no direct authority in this state as to the effect of either the first two stipulations inserted in a paper which is in form of a note. In Bank v. Gary, 18 S. C. 287, it was intimated, though not decided, that an agreement to pay counsel fees would deprive a paper of its negotiability, because it imported into the contract an element of uncertainty as to the amount agreed to be paid. So, in Wallace v. Dyson, 1 Speer, 127, and Barnes v. Gorman, 9 Rich. Law. 297, obligations in the form of notes, promising to pay specified sums of money for the hire of slaves, and also to furnish clothing, pay taxes, etc., were held not to be promissory notes under statute of Anne, and of course, therefore not negotiable. | A contract to pay money which authorizes the payee to declare it due whenever deemed insecure is not a negotiable note. | Are notes promising to pay specified sums of money for the hire of slaves promissory notes? | 010008.docx | LEGALEASE-00153690-LEGALEASE-00153691 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 20823 | Shrewsbury v. Pocahontas Coal & Coke Co., 219 F. 142 | 156+38 | At the time this deed was executed the grantor had only an equitable title to the coal and minerals conveyed. But the deed contained a covenant of general warranty, and this had the effect, under the settled law of West Virginia, of transferring to the grantees the legal title afterwards acquired. Thus in Summerfield v. White, 54 W.Va. 311, 46 S.E. 154, the Supreme Court of Appeals lays down the rule regarding the effect of a covenant of general warranty as follows: "A conveyance without warranty by mere estoppel cuts off the assertion of any title or claim which the grantor had at the time of the conveyance, but it will not operate to pass to the grantee any title afterwards acquired by the grantor. If, however, there is a general warranty in the deed, it not only cuts off the existing title of the grantor, but precludes him from setting up any after-acquired title. It does more. Such after-acquired title inures to the benefit of the grantee and passes to him." | A conveyance to the grantor of land subsequent to his deed to another with warranty inures to the benefit of his grantee. | Does a conveyance without warranty by mere estoppel cut off the assertion of any title or claim which the grantor had at the time of the conveyance? | Estoppel - Memo #65 - C - CS5_60355.docx | ROSS-003278826-ROSS-003278827 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20824 | Carlton v. United States, 385 F.2d 238 | 220+3179 | Section 1031 of the I.R.C. of 1954, 26 U.S.C. " 1031 (1964) provides, in pertinent part, that the gain realized on the exchange of property of like kind held for productive use or investment shall not be recognized except to the extent that "boot" or cash is actually received. There is little doubt that the ranch property and the Lyons and Fernandez properties are of like kind, and that the properties were held by the appellants for productive use. The only question presented here is whether the transfer of the properties constituted a sale or an exchange. | The very essence of an "exchange," for purposes of statute conferring advantage of tax free exchange, is the transfer of property between owners, while the mark of a "sale" is the receipt of cash for the property. 26 U.S.C.A. (I.R.C.1954) § 1031. | Should the gain realized on the exchange of property of like kind held for productive use or investment be recognized only to the extent of cash received? | 018335.docx | LEGALEASE-00153730-LEGALEASE-00153731 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 20825 | Standard Title Ins. Co. v. United Pac. Ins. Co., 364 F.2d 287 | 308+12 | No statute or cases have been cited which require an agency contract to be in writing. Generally an agency contract is not required to be in writing. See State ex rel. Kugler v. Tillatson, Sup.Ct.M., 312 S.W.2d 753, 755; 2 C.J.S. Agency " 20, 25 and 26. | Generally, agency contract is not required to be in writing. | Does an agency agreement have to be in writing? | Principal Agent - Memo 26 - AM_60513.docx | ROSS-003279306-ROSS-003279307 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 20826 | Fulton Cty. v. T-Mobile, S., 305 Ga. App. 466 | 371+2776 | Finally, in McLeod v. Columbia County,24 the Court determined that a monthly stormwater utility charge assessed against owners of developed property within a designated area based on the amount of impervious surface area located on their property was a fee and not a tax. The Court cited Gunby's definition of a tax and emphasized the following factors in reaching its conclusion: the charge was voluntary; the properties charged received a special benefit not received by others; and, unlike a tax, the charge was not imposed upon undeveloped property owners, "who neither significantly contributed to nor caused" the stormwater drainage problems underlying the charge.26 | Taxpayer, a wireless telecommunications provider, could obtain refund of $101,618.66 from county for amount of 9-1-1 charges it paid on behalf of prepaid wireless service customers, even though charges were not ad valorem taxes or license fees; charges were taxes, and taxpayer erroneously paid $101,618.66 to county in connection with its prepaid wireless customers during refund period. West's Ga.Code Ann. §§ 46-5-120 et seq., 48-5-380(b). | Is stormwater utility charge a fee or a tax? | 045984.docx | LEGALEASE-00153227-LEGALEASE-00153228 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 20827 | Schmid v. Feldman, 230 Ga. App. 500 | 198H+804 | In Carnes v. Carnes, 138 Ga. 1, 74 S.E. 785 (1912), the Supreme Court held that "[i]n order to make an affidavit, there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath. There must be some solemnity, not mere telephone talk. Long-distance swearing is not permissible." Id. at 6(3), 74 S.E. 785. In Redmond v. Shook, 218 Ga.App. 477, 462 S.E.2d 172 (1995), the notary administered the oath over the telephone to the affiant, who was in Pennsylvania. Relying on Carnes, we affirmed the trial court's grant of summary judgment to the defendant, holding that "an oath cannot be administered over the telephone in Georgia." Id. at 477(1), 462 S.E.2d 172. | Expert affidavit filed with medical malpractice complaint was not properly notarized and was invalid, where expert signed affidavit in Michigan and oath was administered over telephone by paralegal in Georgia. O.C.G.A. § 9-11-9.1. | Can an oath be administered over telephone? | Affidavits - Memo 49 - _16PGeX4MXRjPISWna2 oxPwSyUOgOcOD_t.docx | ROSS-000000195-ROSS-000000196 | Condensed, SA, Sub | 0.69 | 0 | 1 | | 1 | |
| 20828 | Mason v. Metcalf, 63 Tenn. 440 | 8.30E+56 | The definition of a promissory note given by Story and Parsons, and approved by this court, requires that it shall contain an absolute and unconditional promise to pay--that the promise shall not be contingent. Tested by this definition, we are forced to hold, that the written instrument used on in this case is not a promissory note. The promise to pay is not absolute and unconditional, but it is made to depend on the contingency that Hambleton ""produces said Alman's receipt." If this receipt is not produced, then the promise is not binding. The production of the receipt is a condition precedent to the obligatory character of the promise. As it was not certain that the receipt would be produced, for that reason this contingency is fatal to the character of the paper as a promissory note. Upon the production of the receipt the promise becomes absolute, and for its breach suit might be brought, but not on the paper as a promissory note, but on it as the evidence of a contract between the parties upon which a recovery would be had in damages. | A promise in writing to refund a sum of money received from another, upon condition that a certain receipt be produced, is not a promissory note, and where judgment was rendered thereon for the holder by a magistrate, from which the other party appealed, it was error in the circuit court to render judgment against the sureties on the appeal bond for the amount of the justice's judgment, damages and costs as provided by § 3162 of the Code, although the penalty in the bond was in double that amount, and conditioned to comply with and perform the judgment of the circuit court. The judgment against the sureties should have been for damages and costs only under § 3163 of the Code. | Is a promissory note an unconditional promise to pay? | Bills and Notes - Memo 1003 - RK_61283.docx | ROSS-003325831 | Condensed, SA, Sub | 0.35 | 0 | 1 | | 1 | 1 |
| 20829 | Van Lunen v. State Cent. Sav. Bank of Keokuk, Iowa, 751 F. Supp. 145 | 83E+416 | To argue that the intent of the parties controls the payee designation ignores theplain meaning of the statute. An "instrument is payable to the order of two or more persons if not in the alternative is payable to all of them and may be negotiated only by all of them." Iowa Code " 554.3116(b) (1985) (emphasis added). Since the Heinhold check was made payable to the order of "Stockport Farm Supply" on the first payee line and "L.PS" ona second and distinct payee line, the court finds that it is not payable in the alternative and could benegotiated only by obtaining endorsements from both Stockport and plaintiff. Even looking to the intent of the parties under the Swiss Baco analysis, one must conclude that this is a two-party check. | Check made payable to order of one payee on first payee line and second payee on second and distinct payee line could be negotiated only by obtaining endorsements from both payees where check was not made payable in alternative. I.C.A. § 554.3116(b). | Is an instrument that is payable to the order of two or more persons if not in the alternative payable to all of them? | Bills and Notes - Memo 860 - RK_61305.docx | ROSS-003321787-ROSS-003321788 | Condensed, SA, Sub | 0.67 | 0 | 1 | | 1 | 1 |
| 20830 | Ewing v. Sills, 1 Ind. 125 | 83E+481 | It is objected that the sum sued for was beyond the magistrate's jurisdiction. It is said that, when the assignee sues the assignor of a promissory note, the foundation of his claim is the amount paid by the former to the latter on the assignment; and that if the principal and interest added at the time of the assignment exceed a hundred dollars, then, in a suit on such assignment, a magistrate can take no jurisdiction. Whether this position is correct or not, in the abstract, need not now be decided, as it cannot be made to affect this case. Here, the date of the note is not given, and we must presume it the same as the date of the note. The interest, therefore, accrued to the holder and not to the payee, and the original consideration, as between the parties to this suit, must be presumed to be but fifty dollars, the face of the note. | Where the date of an assignment is not shown, it will be presumed to have been at the date of the note. | If a date is not listed is it presumed as the date of the note? | Bills and Notes - Memo 944 - RK_60804.docx | ROSS-003293161 | Condensed, SA, Sub | 0.88 | 0 | 1 | | 1 | 1 |
| 20831 | Davis v. Solomon, 101 Conn. 465 | 157+317(4) | It is the law that, in the absence of an agreement to the contrary as between themselves, successive accommodation parties are liable in the order in which their names appear, even though later signers knew that prior parties signed for accommodation. G. S. " 4426 (N. I. L. " 68); Noble v. Beeman-Spaulding Co., 65 Or. 93, 131 P. 1006, 46 L. R. A. (N. S.) 162; Brannan's The Negotiable Instrument Law, p. 117; Crawford's Negotiable Instruments, p. 72. The common law of this state was the same. Kirschner v. Conklin, 40 Conn. 77. | In action by accommodation indorsers against prior accommodation indorser, who was also payee, to fix liability under Gen.St.1918, § 4426 (Rev.1949, § 6360), in which payee alleged that there was an agreement between all indorsers to be jointly liable, evidence of payee as to statement by maker relative to agreement by plaintiffs as to liability of indorsers, without further proof, held hearsay as to existence of such agreement, where statements were made in absence of plaintiffs. | In what order are accommodation parties liable? | Bills and Notes - Memo 973 - RK_61310.docx | ROSS-003296916-ROSS-003296917 | Condensed, SA, Sub | 0.08 | 0 | 1 | | 1 | 1 |
| 20832 | Stasher v. Harger-Haldeman, 58 Cal. 2d 23 | 172H+112 | Substantial compliance, as the phrase is used in the decisions, means actual compliance in respect to the substance essential to every reasonable objective of the statute. But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of non-compliance and thereby transformed into a windfall for an unscrupulous and designing buyer. (See Ridge v. Boulder Creek etc. School Dist. (1943) 60 Cal.App.2d 453, 458[2], 140 P.2d 990.) Section 2982 and its companion provisions of the Civil Code constitute a shield, not a sword, for the use of buyers in proper cases. Thus, in General Motors Accept. Corp. v. Kyle (1960), supra, 54 Cal.2d 101, 4 Cal.Rptr. 496, 351 P.2d 768, this court made it clear that subdivision (a) of section 2982 must not "be availed in a manner which will give a windfall to the conditional purchaser" (id. at p. 106[1], 4 Cal.Rptr. 496, 351 P.2d 768), and that the purpose of the statute "is merely to protect, not to enrich, the buyer in cases of purely formal violations' (id. at p. 113 (15), 4 Cal.Rptr. 496, 351 P.2d 768). As will hereinafter be shown, that language is particularly applicable to the case at bench | Automobile conditional sale contract substantially complied with requirements of statute concerning purchase of automobiles under an instalment contract as to "cash price", "down payment", which included an item for discount, and the fees to be paid by seller to public officer as license fee and vehicle registration fee, and purchaser was not entitled to rescission and to restitution of down payments under contract, which though typographical error misstated number of payments to be made. West's Ann.Civ.Code, §§ 2981, subd. (e), 2982, subds. (a-e). | "Do the disclosure provision of the Automobile Sales Finance Act (ASFA), and its companion provisions of the Civil Code, constitute a shield for the use of buyers?" | 014018.docx | LEGALEASE-00154589-LEGALEASE-00154590 | Condensed, SA, Sub | 0.57 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20833 | Ferguson Enterprises v. Astro Air Conditioning & Heating, 137 So. 3d 613 | 195+85(1) | "[A] motion to dismiss for failure to state a cause of action is not a substitute for a motion for summary judgment, and in ruling on such a motion, the trial court is confined to a consideration of the allegations found within the four corners of the complaint." Meadows Cmty. Ass'n v. Russell"Tutty, 928 So.2d 1276, 1280 (Fla. 2d DCA 2006) (quoting Consuegra v. Lloyd's Underwriters at London, 801 So.2d 111, 112 (Fla. 2d DCA 2001)). As we explained in Meadows, "[t]he availability of a remedy ... is reached after, not before, the determination of a plaintiff's rights." | Allegations by the surviving corporation of a merger with seller that guarantors personally guaranteed repayment of buyer's debts, and that buyer and guarantors owed surviving corporation more than $90,000, were sufficient to state a cause of action against guarantors for breach of guaranty. West's F.S.A. § 607.1106(1). | Is a motion to dismiss for failure to state a cause of action or a substitute for a motion for summary judgment? | 038619.docx | LEGALEASE-00154559-LEGALEASE-00154560 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 20834 | Rossman v. Fleet Bank (R.I.) Nat. Ass'n, 280 F.3d 384 | 172H+1344 | We have stated the requirement that disclosures be "reasonably understandable" does not require that they be understandable by the average consumer. Instead, we have said disclosures must be reasonably understandable "in light of the inherent difficulty or complexity of the" information disclosed. Applebaum, 226 F.3d at 220. The appropriate level of difficulty of understanding the disclosure is not an issue here. Instead, the inquiry is into what the disclosures are fairly understood to mean, a question not at issue in Applebaum. In any event, there is nothing complex about annual fees, and the intended audience is the ordinary consumer. | Allegations that credit card issuer solicited card holder's business with offer of credit account having no annual fee while intending to change terms of account shortly after holder's acceptance of offer supported claim that issuer's required disclosures of credit terms were misleading in violation of Truth in Lending Act (TILA), inasmuch as reasonable consumer would expect that stated terms were those that card issuer intended to provide, even if those terms could change. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | What is a reasonably understandable form of disclosure? | Consumer Credit - Memo 174 - RK_61836.docx | ROSS-003278566-ROSS-003278567 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 20835 | Kratz v. Countrywide Bank, 2009 WL 3063077 | 172H+1561 | The Fourth, Sixth and Eighth Circuits have also approved of conditioning rescission on the borrower's tender of loan proceeds. Powers v. Sims & Levin, 542 F.2d 1216, 1222 (4th Cir.1976) ("What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due."); Rudisell v. Fifth Third Bank, 622 F.2d 243, 254 (6th Cir.1980) ("[TILA] clearly does not require the debtor to tender first. It contemplates the creditor tendering first. But upon the creditor fulfilling its obligations under the statute, the debtor then must tender. Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor.") FDIC v. Dev. Co., 938 F.2d 889, 890 (8th Cir.1991) ("TILA generally provides that the creditor shall perform first (i.e., return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, 15 U.S.C. " 1635(b), including conditioning rescission upon the debtor's prior return of the principal."). | Mortgagors were required to tender loan proceeds in order to rescind the loan for the mortgagee's failure to include the rescission date on refinancing documents. Without a tender, rescission would not restore the status quo ante. The mortgagors had lived in their home for seventeen months without paying and could not pay. To effectively rescind the loan transaction, keep the property, and have the loan removed, they needed to pay the loan proceeds net of finance charges. Truth in Lending Act, § 125(a), (b), 15 U.S.C.A. § 1635(a), (b); 12 C.F.R. § 226.23(a)(3), (b)(1), (d)(1)-(3). | Does the TILA provision relating to rescission require the debtor to tender first? | Consumer Credit - Memo 193 - RK_61855.docx | ROSS-003281026-ROSS-003281027 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 20836 | Pineda v. Williams-Sonoma Stores, 51 Cal. 4th 524 | 172H+1698 | In 1990, the Legislature enacted former section 1747.8 (Assem. Bill No. 2920 (1989"1990 Reg. Sess.) " 1), seeking "to address the misuse of personal identification information for, inter alia, marketing purposes, and [finding] that there would be no legitimate need to obtain such information from credit card customers if it was not necessary to the completion of the credit card transaction." (Absher, supra, 164 Cal.App.4th at p. 345, 78 Cal.Rptr.3d 817.) The statute's overriding purpose was to "protect the personal privacy of consumers who pay for transactions with credit cards." (Assem. Com. on Finance & Insurance, Analysis of Assem. Bill No. 2920 (1989"1990 Reg. Sess.) as amended Mar. 19, 1990, p. 2.) | The Song-Beverly Credit Card Act provision prohibiting merchants from requesting and recording "personal identification information" concerning the cardholder is not strictly construed under the rule for construing penal statutes. West's Ann.Cal.Civ.Code § 1747.08(b). | Does the law protect the personal privacy of consumers who pay for transactions with credit cards? | Consumer Credit - Memo 8 - AM_61948.docx | ROSS-003297585-ROSS-003297586 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 20837 | Terminiello v. City of Chicago, 337 U.S. 1 | 268+642(4) | But a judgment of conviction based on a general verdict under a state statute was set aside in that case, because one part of the statute was unconstitutional. The statute had been challenged as unconstitutional and the instruction was framed in its language. The Court held that the attack on the statute as a whole was equally an attack on each of its individual parts. | Where ordinance of the city of Chicago as construed and applied by municipal court at least contained parts that were unconstitutional, and verdict was general and might have been based on invalid clauses, it was not necessary to consider whether as construed the ordinance was defective in its entirety, and conviction could not be sustained. | Can conviction under a statute can be set aside? | Disorderly Conduct - Memo 157 - PR_61953.docx | ROSS-003278560 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 20838 | Huntington Nat. Bank v. Comm'r of Internal Revenue, 90 F.2d 876 | 308+92(1) | We agree that the sale was a completed transaction in December, 1927, and the gains taxable as income for that year. Nothing remained to be done by the seller of the stock in 1927 except to deliver the certificates, properly indorsed, to make the proceeds of the sale subject to its demand. Moreover, the general rule is that receipt by an agent is receipt by the principal. Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297. It is urged that a broker is not merely an agent, that, when he makes a sale of corporation shares and delivers his own or borrowed shares, the transaction constitutes a "short sale," and is not completed until the customer delivers to the broker a like number of shares. It is the general understanding, however, that a short sale is a contract for the sale of shares which the seller does not own, or which are not so within his control as to be available for delivery when under the rules of the stock exchange delivery must be made. Provost v. United States, 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352. The petitioner owned the certificates, was able to deliver them, and did in fact promptly deliver them to the broker. If the broker wished them to transferred from a fiduciary, it was for reasons of his own, and, if he made a short sale, it was for his own account and not for the petitioner, who had authorized no short sale for its account. Rumi v. Commissioner of Internal Revenue, 83 F.(2d) 257, 258 (C.C.A. 2); Hoffman v. Commissioner, 71 F.(2d) 929 (C.C.A. 2); Commissioner of Internal Revenue v. Ferree, 84 F.(2d) 124 (C.C.A. 3). As was said in the Rumi Case, "When the evidence of realization is a sale of personal property, it is not always necessary to deliver the property before there may be a deduction of a loss (or return of a gain). It is enough that the obligation to deliver is so fixed that the loss is reasonably certain in fact and ascertainable in amount, " citing Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 | Generally, receipt by agent is receipt by the principal. | Is receipt by an agent a receipt by the principal? | Principal and Agent - Memo 338 - RK_61926.docx | ROSS-003295031-ROSS-003295032 | Condensed, SA, Sub | 0.97 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20839 | A & E Parking v. Detroit Metro. Wayne Cty. Airport Auth., 271 Mich. App. 641 | 48B+454 | Appellants place great reliance on the Supreme Court's opinion in Bolt v. City of Lansing, 459 Mich. 152, 587 N.W.2d 264 (1998). In Bolt, supra at 154ˮ155, 587 N.W.2d 264, the Court considered whether a particular storm water service charge, "imposed on each parcel of real property" located in Lansing, was a "user fee" as opposed to a "tax" levied in violation of the Headlee Amendment, Const 1963, art 9, ˮ 31. The Court stated that it had "articulated three primary criteria to be considered when distinguishing between a fee and a tax." Id. at 161, 587 N.W.2d 264. First, a user fee serves "a regulatory purpose rather than a revenue-raising purpose." Id. Second, "user fees must be proportionate to the necessary costs of the service." Id. at 161ˮ162, 587 N.W.2d 264. Third, a user fee is voluntary, paid only by those who use the service in question. Id. at 162, 587 N.W.2d 264. Appellants contend that, under the Bolt test, the CAFs constitute taxes. | Commercial access fees (CAFs) imposed by airport authority on hotels and parking and limousine companies providing shuttles services to airport constituted permissible fees and not illegal taxes under Headlee Amendment to State Constitution, which prohibits units of local government from levying any tax not authorized by law or charter without voter approval; authority was expressly permitted to impose fees, shuttle service providers obtained a benefit from the very existence of the airport, and thus authority was entitled to use the revenue obtained from the CAFs to fund the airport as a whole, shuttle service providers were not being forced to pay the CAFs but could choose, if they wished to avoid the fees, to attempt to obtain business elsewhere, and the CAFs were not arbitrary in their amounts, but instead were based on a study commissioned by the authority and were in accordance with similar fees imposed at other airports. M.C.L.A. Const. Art. 9, § 31; M.C.L.A. § 259.120(1). | What are the three primary criteria to be considered when distinguishing between a fee and a tax as articulated by the courts? | 046108.docx | LEGALEASE-00155789-LEGALEASE-00155790 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 20840 | Am. Petrofina Co. of Texas v. Nance, 859 F.2d 840 | 170B+2036 | Nevertheless, defendants' characterization of the 1984 amendments as a tax measure is incorrect. The investment of the unclaimed monies admittedly produces state revenue. But the funds which the amendments direct the plaintiffs to transfer are debts their owners are entitled to collect. Oklahoma is merely using the money of others to generate revenue for itself. The law does not exact a tax. "The mere fact a statute raises revenue does not imprint upon it the characteristics of a law by which the taxing power is exercised." State ex rel. Tindal v. Block, 717 F.2d 874, 887 (4th Cir.1983), cert. denied, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984). | State law requiring holders of proceeds due owners of unclaimed mineral interests situated within state to turn over such proceeds to state tax commission to be held and invested for state was not a "state tax law" within meaning of Tax Injunction Act as it did not enact a tax; thus, district court could exercise jurisdiction over declaratory constitutional challenge to the law. 28 U.S.C.A. SS 1331, 1341; 60 Okl.St.Ann. SS 651-687, 658.2-658.8. | "If a statute raises revenue, does it mean such statute has the characteristics of a law by which the taxing power is exercised?" | Taxation - Memo # 981 - C - JL_61815.docx | ROSS-003282765-ROSS-003282766 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 20841 | State v. Rodriguez, 521 S.W.3d 1 | 110+1139 | The State is correct that some school searches fall under the special needs exception. Under the special needs exception, a warrantless search is reasonable when " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (quoting New Jersey v. T.L.O., 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring in judgment)). In New Jersey v. T.L.O., a teacher at Piscataway High School in Middlesex County, N.J., discovered two girls smoking in a lavatory. Id. at 328, 105 S.Ct. 733. The teacher notified a principal, who then searched T.L.O.'s purse and found a pack of cigarettes and a pack of rolling papers, and, after a further search, marijuana, plastic bags, small bills, and a ledger of students owing money. Id. at 328-29, 105 S.Ct. 733. The principal turned the evidence of drug dealing over to the police. Id. The Court rejected the argument that the warrantless search by the principal violated the Fourth Amendment and held that public schools presented a "special need," which allowed a departure from the warrant and probable cause requirements. Id. at 341, 105 S.Ct. 733. The Court said that the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Id. at 344, 105 S.Ct. 733. The Court held that school teachers and administrators could search students without a warrant if: (1) there exists "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school," and (2) the search is "not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 341-42, 105 S.Ct. 733. That standard was met in T.L.O.bien. | The appellate court reviewing a ruling on a motion to suppress makes a de novo determination of the legal significance of the facts as found by the trial court, including the determination of whether a specific search or seizure was reasonable. U.S. Const. Amend. 4. | Does the legality of the search of a student depend simply on the reasonableness of the search? | Education - Memo # 287 - C - KS_62337.docx | ROSS-003281547-ROSS-003281549 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 20842 | Jones v. Elliott, 4 La. Ann. 303 | 83E+732 | Phelps is the payee of the note, upon which this suit is brought against Elliott, the maker. The transfer of the title to a promissory note is not restricted to the form of an endorsement merely. It may be assigned by an independent instrument. In a court of common law the mere assignee of a negotiable instrument, not endorsed by the payee, would not be permitted to sue in his own name; but a court of equity would aid the assignee in its collection, and certainly there is no objection under our system to the assignee suing in his own name. See Hughes v. Harrison, 2 La. 92 | The assignee of a promissory note, transferred by a separate instrument, may sue in his own name. | Can an assignee maintain an action or sue in his own name? | 009069.docx | LEGALEASE-00156514-LEGALEASE-00156515 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 20843 | O'Gasapian v. Danielson, 284 Mass. 27 | 83E+481 | The findings do not bear out the contention that the defendant's interest in the note was not assigned by him to the intervener. The assignment was in statutory form, G. L. (Ter. Ed.) c. 183, appendix, form (9), was under seal and purported to assign the note as well as the mortgage. See Merritt v. Harris, 102 Mass. 326, 327, 328. The intention to assign the note was clearly manifested. See Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N. E. 827. Such an assignment was effective to transfer to the intervener the defendant's interest in the note even if the note was not endorsed (Westminster National Bank v. Graustein, 270 Mass. 565, 574, 170 N. E. 621) or delivered. Strong v. Jackson, 123 Mass. 60, 62, 25 Am. Rep. 19; Herman v. Connecticut Mutual Life Ins. Co., 218 Mass. 181, 185, 105 N. E. 450, Ann Cas. 1916A, 822; Ingram v. Mandler (C. C. A.) 56 F.(2d) 994, 996; Watson v. Goldstein, 176 Minn. 18, 24, 222 N. W. 509. Since the assignment was under seal it was valid and irrevocable by the assignor even without actual consideration. Williston on Contracts, ° 440. And, as between the assignee and the maker of the note, neither consideration nor notice to the maker was essential to an assignment. Cosmopolitan Trust Co. v. Leonard Watch Co, 249 Mass. 14, 19, 143 N. E. 827. See G. L. (Ter. Ed.) c. 107, ° 72; Brannan's Negotiable Instruments Law (5th Ed.) 472, 473. It follows, therefore, that the defendant had no equitable interest in the note or mortgage. | Assignment of note and mortgage in statutory form under seal transferred assignor's interest in note though note was not indorsed or delivered (G.L.(Ter.Ed.) c. 183, appendix, form (9)). | Is an assignment effective if the transfer is without delivery? | 009083.docx | LEGALEASE-00157123-LEGALEASE-00157124 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 20844 | Shackelford v. Hooker, 54 Miss. 716 | 8.30E+118 | It is the right of the holder of a bill of exchange to insist upon an absolute unconditional acceptance, and he may decline a conditional one, and protest. 1 Daniel on Negotiable Instruments, " 508. If he takes a qualified or conditional acceptance, he does so at his own risk. A conditional acceptance makes a new contract between the payee and acceptor, expressed in the terms employed by the acceptor. He names the condition on which he will pay, and can only be held bound by averment and proof that the condition has been performed. The writing itself gives no information of what "advances" were referred to; to ascertain by testimony aliunde on what account, and to what extent and for what purpose made, does not vary or contradict the writing, but gives certainty to that to which the writing itself points. If it had been shown by testimony that Shackelford had advanced, from time to time, $100, and that the general words of the acceptance alluded to repayment of that sum, it would not be questioned but that all the facts might have been brought out by testimony, to give definiteness to the sense in which the parties used the word "advances." | A conditional acceptance by the drawee of a bill of exchange, held not to render him liable thereon till the fulfillment of the condition. | What is a conditional acceptance of a bill of exchange? | 009451.docx | LEGALEASE-00157634-LEGALEASE-00157635 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20845 | Goldman v. KPMG LLP, 173 Cal. App. 4th 209 | 156+52(2) | So, if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement. In other words, a signatory to an agreement with an arbitration clause cannot " 'have it both ways' "; the signatory "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." (Grigson v. Creative Artists Agency, L.L.C. (5th Cir.2000) 210 F.3d 524, 528 (Grigson ).) As Grigson sums it up, "[t]he linchpin for equitable estoppel is equity" (Ibid.) | The linchpin for equitable estoppel is equity, or fairness. | Is the linchpin for equitable estoppel fairness? | Estoppel - Memo #166 - C - CSS_62570.docx | ROSS-003294467-ROSS-003294468 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 20846 | J.L. v. B.N., 210 So. 3d 1136 | 30+82(3) | "As a general rule, interlocutory orders become unenforceable upon a final judgment of dismissal." Ex parte W.L.K., 175 So.3d 652, 661 (Ala.Civ.App.2015) (citing Maddox v. Maddox, 276 Ala. 197, 199, 160 So.2d 481, 483 (1964) (discussing Duss v. Duss, 92 Fla. 1081, 111 So. 382 (1927))). Generally, the dismissal of an action operates to annul previously entered orders, rulings, or judgments. See Ex parte Sealy, L.L.C., 904 So.2d 1230, 1236 (Ala.2004) (quoting 27 C.J.S. Dismissal and Nonsuit " 39 (1959)) (holding that a voluntary dismissal renders the proceedings a nullity and " 'carries down with it previous proceedings and orders in the action' "); McNairy v. McNairy, 416 So.2d 735, 736 (Ala.1982) ("The motion to dismiss was granted by the circuit court, which also held for naught all prior orders of the probate court."). See also 24 Am.Jur.2d Dismissal " 89(2008)." | Generally, an appeal cannot be taken from an order setting aside a judgment or order because further proceedings are contemplated by the trial court, and, therefore, the judgment or order is considered interlocutory. Rules Civ.Proc., Rule 60(b). | "Does the dismissal of an action operate to annul previously entered orders, rulings, or judgments?" | 025135.docx | LEGALEASE-00156993-LEGALEASE-00156994 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 20847 | Simonsen v. Arizona Dep't of Corr., 2009 WL 1600401 | 228+181(15.1) | The State had already been dismissed from the lawsuit when the ADOC employees filed their summary judgment motion. Thus, the trial court could not grant summary judgment in favor of the State, nor would it have been proper for the State to join the employees' motion. Cf. Crawford v. Crawford, 20 Ariz.App. 599, 600, 514 P.2d 1050, 1051 (1973) ("The general rule is that once having dismissed an action, the trial court has no jurisdiction to grant affirmative relief to the parties based on their subsequent petitions for affirmative relief."). Additionally, Simonsen would have had no reason or opportunity to develop or identify any evidence relevant to his claim against the State if that evidence was not also relevant to his claim against the employees. | Genuine issue of material fact as to whether forcing prisoner to choose between a diet that met his medical needs and a diet that would not violate his religious beliefs constituted a substantial burden on his religious practice precluded summary judgment in favor of prison's employees in prisoner's action alleging violation of federal Religious Land Use and Institutionalized Persons Act (RLUIPA). Religious Land Use and Institutionalized Persons Act of 2000, 5 2 et seq., 42 U.S.C.A. 5 2000cc et seq. | "Once having dismissed an action, does the trial court have no jurisdiction to grant affirmative relief to the parties based on their subsequent petitions for affirmative relief?" | Pretrial Procedure - Memo # 10664 - C - SN_62648.docx | ROSS-003308796-ROSS-003308797 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 20848 | Sperl v. C.H. Robinson Worldwide, 408 Ill. App. 3d 1051 | 48A+245(28) | In determining whether a person is an agent or an independent contractor, the court's cardinal consideration is the right to control the manner of work performance, regardless of whether that right was actually exercised. Commerce Bank v. Youth Services of Mid'Illinois, Inc., 333 Ill.App.3d 150, 266 Ill.Dec. 735, 775 N.E.2d 297 (2002). Another significant factor is the nature of work performed in relation to the general business of the employer. Ware v. Industrial Comm'n, 318 Ill.App.3d 1117, 252 Ill.Dec. 711, 743 N.E.2d 579 (2000). Other factors to consider are: (1) the right to discharge; (2) the method of payment; (3) the provision of necessary tools, materials, and equipment; (4) whether taxes are deducted from the payment; and (5) the level of skill required. Commerce Bank, 333 Ill.App.3d at 153, 266 Ill.Dec. 735, 775 N.E.2d 297; Ware, 318 Ill.App.3d at 1122, 252 Ill.Dec. 711, 743 N.E.2d 579. No single factor is determinative, and the significance of each may change depending on the work involved. Roberson, 225 Ill.2d at 175, 310 Ill.Dec. 380, 866 N.E.2d 191. | Evidence of close alignment of semi-tractor driver's services in transporting load at request of motor carrier broker, method of payment, and provision of materials for delivery, supported jury's finding that principal-agent relationship existed between broker and driver, as required to support finding, in wrongful death action, that broker was vicariously liable for driver's negligence in causing motor vehicle accident; broker was in business of transportation logistics, handling means and methods of hauling freight for its customers, broker's business necessarily required service of semi-tractor drivers, and nature of driver's work, in hauling freight for customers from one location to another, was directly related to, if not the same as, general transportation business conducted by broker. | How to determine whether a person is an agent or an independent contractor? | Principal and Agent - Memo 479- PR_63270.docx | ROSS-003319884-ROSS-003319885 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20849 | Russell v. Dep't of Air Force, 915 F. Supp. 1108 | 308+1 | Restatement (Second) of Agency " 1 defines agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." The one for whom action is to be taken is the "principal" and the one who is to act is the "agent." The one for whom services in his affairs and who controls or has the right to control the physical conduct of the "servant" in the performance of the service. Restatement (Second) of Agency " 2. "Principal" is further described as "disclosed" if, "at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity." " 4. Unless otherwise agreed, a person making a contract with another as an agent for a disclosed principal does not become a party to the contract and is not liable on the contract. " 320. However, if the agent of a disclosed principal makes an authorized contract with a third person, the liability of the principal depends upon the agreement between the agent and the other party. " 146. | One for whom action is to be taken is the "principal" and the one who is to act is the "agent." Restatement (Second) of Agency § 1. | Who is a principal? | Principal and Agent - Memo 501 - KK_63280.docx | ROSS-003322933-ROSS-003322934 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 20850 | Am. Trucking Associations v. Sec'y of State, 595 A.2d 1014 | 83+63.15 | Lee, however, did not implicate the commerce clause. In Lee, the plaintiff challenged the registration fee imposed on attorneys by the Supreme Judicial Court on the ground that it violated constitutional provisions restricting the power to tax to the Legislature. In upholding the Court's power to impose a fee on attorneys, we distinguished the license fee power from the taxing power, noting that "license fees are part of a regulatory program and are intended to cover costs of administering such a program under the police power of government." Lee, 422 A.2d at 1004. Lee, however, dealt with the distribution of power between the Court and the Legislature and not with the distribution of power between the states and the federal government. Thus Lee has little bearing on the issues before us. | After determination that flat tax imposed on hazardous material carriers was unconstitutional burden on interstate commerce, state could not be allowed to retain administrative portion of fee, absent legislative intent to create such program. 29 M.R.S.A. § 246-D; U.S.C.A. Const. Art. 1, § 8, cl. 3. | Can license fee be distinguished from taxes for being part of a regulatory program? | 044531.docx | LEGALEASE-00157442-LEGALEASE-00157443 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 20851 | SDCO St. Martin v. City of Marlborough, 5 F. Supp. 3d 139 | 268+956(1) | Whether a charge is a lawful fee or an unlawful tax "must be determined by its operation rather than its specially descriptive phrase." Denver Street, 970 N.E.2d at 275. In Emerson College, the Supreme Judicial Court identified the three traits that distinguish fees from taxes. | Under Massachusetts law, in addition to general taxes, a municipality may also charge fees for the use of specific municipally provided services or as an exercise of police power. | Does a specially descriptive phrase of a charge determine whether the charge is a fee or a tax? | 044561.docx | LEGALEASE-00157131-LEGALEASE-00157132 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | 1 |
| 20852 | Kessler v. State, 850 S.W.2d 217 | 110+38 | Section 8.05(a) does not define the term "imminent." The State contends all the evidence was properly excluded because a threat of imminent death or serious bodily injury requires a present threat, not a future threat, citing Devine v. State, 786 S.W.2d 268 (Tex.Crim.App.1989), and certainly not a past threat. The State maintains that although Devine dealt with "fear of imminent bodily injury or death" in conjunction with a robbery charge, the construction of the term "imminent" remains the same. The Court in Devine commented that although Texas courts have not defined the term, other state courts have defined "imminent" to mean "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near," "certain, immediate, and impending," and "threatening to occur immediately." Id. at 270 (citations omitted). As noted by the Court in Devine, Black's Law Dictionary defines "imminent" to mean "near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." BLACK'S LAW DICTIONARY 676 (rev. 5th ed. 1979); Devine, 786 S.W.2d at 270'71. | "Threat of imminent death or serious bodily injury," for purposes of statute providing duress defense to criminal charge, means present threat. V.T.C.A., Penal Code § 8.05(a, c). | What does imminent mean for the purposes of a conviction for making threats? | Threats - Memo #158 - C - LB.docx | LEGALEASE-00047707-LEGALEASE-00047708 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 20853 | People's Sav. Bank of Blakesburg v. Smith, 210 Iowa 136 | 172H+517 | It is clearly apparent that there is a vast distinction as to liability upon a negotiable certificate of deposit and one that is nonnegotiable. On the nonnegotiable certificate of deposit, the bank's obligation is only to the payee, and any assignee thereof stands in no better position than the original payee. On the negotiable certificate of deposit, the bank's obligation is to pay whomsoever may be the rightful holder, when due, and a third party may become the holder thereof in due course. It must be borne in mind that in the instant case the certificate of deposit, given in exchange for the notes, is negotiable as well as the notes, and that any holder in due course of either of the instruments took the same free from prior defenses which might have been asserted as against them. | Bank's obligation is only to payee on nonnegotiable certificate of deposit. | Does an assignee stand in a better position than the original payee? | 009287.docx | LEGALEASE-00158208-LEGALEASE-00158209 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 20854 | Brown v. Bell, 291 Ark. 116 | 191+31(2) | The appellant contends the court erred in holding the notes could be given or beneficially transferred absent indorsement of the decedent who was the payee of the notes. She contends that the bill of sale was an assignment of the notes which we held was prohibited by the Uniform Commercial Code in McIlroy Bank v. First National Bank of Fayetteville, 252 Ark. 558, 480 S.W.2d 127 (1972). In that case a bank took possession of a note made payable to its debtor as security for the debtor's obligation to the bank. The bank returned the note to the debtor who held it for a year and reduced it to judgment without the knowledge of the bank. The bank claimed it had a valid equitable assignment of the note. We pointed out that assignment of notes is not permitted under Ark.Stat.Ann. "" 85'3"201 through 85"3"208 (Add.1961). We said that those sections permit a note to be transferred or negotiated but not assigned. | While indorsement of note payable "to order" was required to negotiate in favor of one who becomes a holder in due course, donor's rights in such instrument may be transferred by gift without indorsement. Ark.Stats. §§ 85-3-201 to 85-3-208, 85-3-201 comment, 85-3-202(1). | Does a promissory note be transferred or negotiated in order to assign it to another? | Bills and Notes - Memo 1434 - RK.docx | LEGALEASE-00047843-LEGALEASE-00047844 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20855 | Downs v. Hammett Properties, 899 So. 2d 792 | 322H+1276 | An ordinance that restricts the subdivision of property is not a "defect" or "vice" in the "thing sold" within the meaning of this article; it is merely a restriction on the use of the property. Consequently, it is unnecessary to apply La. C.C. art. 2521, which states that a seller owes no warranty for defects that a reasonable prudent buyer of such things should have discovered. "Defect" and "vice" have been described as a "physical imperfection or deformity, a lacking of a necessary component or level of quality." Williams v. Louisiana Machinery Company, Inc., 387 So.2d 8, 11 (La.App. 3d Cir.1980). Further, the property may be suitable for many uses upon which such an ordinance has no impact. | Alleged failure of homeowner and homeowner's president to apprise landowner of existing subdivision regulations or ordinances before transaction in which home and land were exchanged was not a redhibitory vice, and thus landowner could not prevail in redhibition action alleging that homeowner and president defrauded landowner; regulations or ordinances were matters of public record and easily and equally attainable by landowner prior to exchanging home for land. LSA-C.C. arts. 1954, 2520, 2524. | Is an ordinance that restricts the subdivision of property a defect or vice in the thing sold or is it a mere restriction on the use of the property? | Exchange of Property - Memo 25 - DB_64039.docx | ROSS-003278666 | Condensed, SA, Sub | 0.29 | 0 | 1 | | 1 | 1 |
| 20856 | W. River Bridge Co. v. Dix, 47 U.S. 507 | 92+2708 | A distinction has been attempted, in argument, between the power of a government to appropriate for public uses property which is corporeal, or which may be said to be in being, and the like power in the government to resume or extinguish a franchise. The distinction thus attempted we regard as a refinement which has no foundation in reason, and one that, in truth, avoids the true legal or constitutional question in these causes; namely, that of the right in private persons, in the use or enjoyment of their private property, to control and actually to prohibit the power and duty of the government to advance and protect the general good. We are aware of nothing peculiar to a franchise which can class it higher, or render it more sacred, than other property. A franchise is property, and nothing more; it is incorporeal property, and is so defined by Justice Blackstone, when treating, in his second volume, chap. 3, page 20, of the Rights of Things. It is its character of property only which imparts to it value, and alone authorizes in individuals a right of action for invasions or disturbances of its enjoyment. Vide Bl. Comm., Vol. III., chap. 16, p. 236, as to injuries to this description of private property, and the remedies given for redressing them. A franchise, therefore, to erect a bridge, to construct a road, to keep a ferry, and to collect tolls upon them, granted by the authority of the State, we regard as occupying the same position, with respect to the paramount power and duty of the State to promote and protect the public good, as does the right of the citizen to the possession and enjoyment of his land under his patent or contract with the State, and it can no more interpose any obstruction in the way of their just exertion. | A "franchise" is incorporeal property, and nothing more, and its character of property imparts to it value, and alone authorizes in individuals a right of action for invasions or disturbances of its enjoyment. | Is a franchise a property? | 018611.docx | LEGALEASE-00158940-LEGALEASE-00158942 | Condensed, SA, Sub | 0.88 | 0 | 1 | | 1 | 1 |
| 20857 | Sugimoto v. Exportadora de Sal, S.A. de C.V., 233 Cal. App. 3d 165 | 30+790(1) | Plaintiffs correctly say the superior court had no jurisdiction to dismiss the actions in light of 28 United States Code section 1446, subdivision (d) (hereinafter section 1446(d)) which provides that after a civil action is removed to federal court: "the State court shall proceed no further unless and until the case is remanded." (Emphasis added.) Without specifically referring to section 1446(d), the court argues the dismissals are in accord with federal law eliminating further state proceedings until remand. This argument incorrectly presumes, however, that a "dismissal" is the legal equivalent of a "stay." A "dismissal" and a "stay" are not the same. When a court orders a "stay", the action, although dormant, remains pending in that court. Following a "dismissal" the action is no longer pending. And even though the dismissed action can be refiled it must overcome additional procedural obstacles, including but not limited to, applicable statutes of limitations. | Appeal from order dismissing without prejudice actions that had been removed to federal court was not moot on theory that plaintiffs could request court to set aside dismissals and stay cases until remand; even if such option were available, it would not render appeal moot in sense of precluding reviewing court from being able to grant effectual relief. 28 U.S.C.A. § 1446(d). | "Are the terms ""dismissal"" and ""stay"" not the same?" | Pretrial Procedure - Memo # 11009 - C - SKG_64128.docx | ROSS-003296602-ROSS-003296603 | Condensed, SA, Sub | 0.61 | 0 | 1 | | 1 | 1 |
| 20858 | United States v. Hoskins, 73 F. Supp. 3d 154 | 210+995 | The existence of an agency relationship is a "highly factual" inquiry, considering factors, such as "the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done." Cleveland v. Caplaw Enterprises, 448 F.3d 518, 522 (2d Cir.2006) (quoting Columbia Broad. Sys., Inc. v. Stokely *Van Camp, Inc., 522 F.2d 369, 375*76 (2d Cir.1975)). | Court could not resolve, on defendant's motion to dismiss indictment, his contention that the Foreign Corrupt Practices Act (FCPA) was unconstitutionally vague as applied to him because he could not have had fair notice that, as a member of a foreign parent company, he was also an agent of a domestic concern, as required to be prosecuted under the FCPA, in connection with scheme to bribe Indonesian officials to obtain contracts to build power stations in Indonesia; the resolution of defendant's challenge would require a more expansive factual record to be developed at trial regarding the highly factual nature of the alleged agency relationship. Foreign Corrupt Practices Act of 1977, § 104(a), 15 U.S.C.A. § 78dd-2(a). | What are the factors considered in the existence of an agency relationship? | Principal and Agent - Memo 464-PR_63787.docx | ROSS-003292173-ROSS-003292174 | Condensed, SA, Sub | 0.23 | 0 | 1 | | 1 | 1 |
| 20859 | Kowalczyk v. Swift & Co., 329 Ill. 308 | 413+2097 | The Compensation Act and the Child Labor Act are separate and distinct statutes passed for different purposes, and they have no relation to each other except where such relation is expressly made by reference. The Compensation Act is complete within itself and makes provision for compensation in certain cases therein specifically provided. It defines what employments shall be deemed extrahazardous, but the employments so specified only have reference to the right of compensation under the act, and the act does not attempt to fix a standard for any other purpose. If plaintiff in error was engaged in an occupation declared to be extrahazardous under the Compensation Act, he could not recover compensation under that act, as his remedy, if he was illegally employed, was under the Child Labor Act. | Remedy of minor illegally employed is under Child Labor Act, though engaged in occupation declared extrahazardous under Compensation Act. | Does the compensation act define what employment shall be deemed extra hazardous? | 048638.docx | LEGALEASE-00158200-LEGALEASE-00158201 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20860 | Estate of Jack ex rel. Blair v. United States, 54 Fed. Cl. 590 | 220+4193 | Defendant cites the United States Supreme Court's holdings in Elkins v. Moreno, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978) and Toll v. Moreno, 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982), to suggest that aliens who are in the United States under a valid nonimmigrant visa can develop the subjective intent to remain in the United States indefinitely and, therefore, can legally establish domicile. The Court in Elkins v. Moreno found that a certain class of temporary nonimmigrant aliens could establish domicile, but in doing so the Court looked closely at the intent of Congress when Congress established the particular visa classification. See Elkins v. Moreno, 435 U.S. at 664-665, 98 S.Ct. 1338. The Court determined that under the law, "were a G-4 alien to develop a subjective intent to stay indefinitely in the United States he would be able to do so without violating [the law or the regulations] or the terms of his visa ... [and he/she] would not necessarily be subject to deportation ... [or] have to leave and re-enter the country in order to become an immigrant." Id. at 666-667. The Court found that Congress did not specifically limit the ability of G-4 visa holders to establish legal domicile. Id. at 664. | Canadian citizen employed in the United States on the date of his death, who was admitted to the United States under TC and TN nonimmigrant, temporary professional classifications, was legally capable of forming an intent to be domiciled in the United States for purpose of determining whether his property holdings outside the United States were includable in his gross estate for calculation of estate tax. 26 U.S.C.A. SS 2031(a), 2101; 26 C.F.R. S 20.0-1(b)(1). | Can a G4 alien stay without violating regulations if he develops a subjective intent to stay in the United States indefinitely? | "Aliens, Immigration and Citizenship - Memo 112 - RK_64754.docx" | ROSS-003319479-ROSS-003319480 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | |
| 20861 | Nadal-Ginard v. Holder, 558 F.3d 61 | 24+109 | As to the sufficiency of that evidence, although the government has not explicitly argued the point, we are doubtful of our jurisdiction to consider the evidence of alienage in this case, as Nadal"Ginard's prior convictions appear to bring him within the ambit of the jurisdiction-stripping provisions of 8 U.S.C. " 1252(a)(2)(C). In any event, we note that at no point did Nadal"Ginard offer the U or BIA any evidence capable of casting a reasonable doubt upon the examining officer's decision to inspect him as an alien, or upon the government's evidence. Moreover, evidence Nadal"Ginard adduced during his administrative hearings tended to support the examining officer's actions and the government's evidence of alienage. Specifically, his marriage license lists his place of birth as Arta, Spain, and we have held that an individual born abroad is presumed to be an alien and bears the burden of rebutting that presumption by a fair preponderance of the evidence. Leal Santos v. Mukasey, 516 F.3d 1, 4 (1st Cir.2008). The record offers no support for the conclusion that Nadal"Ginard carried that burden.6 We therefore have no basis to upset the BIA's factual finding that Nadal"Ginard was an alien for purposes of his removal hearings. See 8 U.S.C. " 1252(b)(4)(B) (administrative findings of fact are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary"). | Given alien's failure, in removal proceeding, to offer any evidence capable of casting a reasonable doubt on decision to inspect him as an alien, evidence, including his Spanish passport and greencard, as well as fact that his marriage license listed his birthplace as Spain, was sufficient to support alienage finding. Immigration and Nationality Act, S 242(b)(4)(B), 8 U.S.C.A. S 1252(b)(4)(B). | Does an individual born abroad is presumed to be an alien and bears the burden of rebutting that presumption? | 006974.docx | LEGALEASE-00159260-LEGALEASE-00159261 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 20862 | Smith v. Nelson Land & Cattle Co., 212 F. 56 | 83E+356 | The notes are undoubtedly Kansas contracts; and, while we are not bound to follow the view expressed by the highest tribunal of the state upon general principles of the common law merchant (Oates v. National Bank, 100 U.S. 239, 25 L.Ed. 580; Railroad Co. v. National Bank, 102 U.S. 14, 26 L.Ed. 61; Dygert v. Vermont Loan & Trust Co., 94 Fed. 913, 37 C.C.A. 389; Northern Nat. Bank v. Hoopes [C.C.] 98 Fed. 935; Phipps v. Harding, 70 Fed. 471, 17 C.C.A. 203, 30 L.R.A. 513), when, however, a state has adopted a negotiable instrument law by statute, we must give force and effect to such law in all cases where the same is applicable. We do not find, however, that section 5254, Gen.Kan.Stat. 1909, has changed the common law merchant as to the fundamental requirements of negotiable instruments. It provides that such instruments: (1) Must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on | The time of payment of certain notes, negotiable in form, was not rendered uncertain and their negotiability destroyed by a provision of a mortgage, securing them, that the whole sum might be declared due and payable in the event of certain contingencies. | "An instrument to be negotiable, should it be payable on demand at a determinable future time?" | 010953.docx | LEGALEASE-00160417-LEGALEASE-00160418 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 20863 | State v. Mayor, Etc., of City of Paterson, 56 N.J.L. 471 | 371+2233 | The question presented in this case is whether our general laws authorize municipalities to levy taxes more corporate franchises. That such franchises are taxable as property is settled by the judgment in State Board of Assessors v. Central R. Co., 48 N. J. Law, 146, 4 Atl. 578, but whether they are included among the subjects of municipal taxation is another question, dependent upon the proper construction of the laws delegating the taxing power to municipal bodies. The defendant, in support of the present tax, first invokes the act of 1866 (Revision, p. 1150), the second section of which enacts that all real and personal estate, whether owned by individuals or corporations, shall be liable to taxation. The form of expression adopted in this enactment suggests, I think, that it was designed to reach only those species of property which were usually owned both by individuals and by corporations, and that other species, such as offices, which are owned by individuals almost exclusively, and franchises, which are owned by corporations almost exclusively, were not within the purview of the law. This suggestion is strengthened by the third section, which declares that the term "real estate" shall be construed to include all lands, all water power thereon or appurtenant thereto, and all buildings and erections thereon or affixed to the same, trees and underwood growing thereon, and all mines, quarries, peat and marl beds, and all fisheries, and that personal estate shall include goods and chattels of every description, including steamboats and other vessels, money, debts due or owing from solvent debtors, public stocks, and stocks in corporations; nor under Revision, p. 196, S 105, providing that "the real and personal estate of every corporation shall be taxed the same as the real and personal estate of an individual." Such a definition of these terms, although that is not | The franchise of a corporation is not taxable under Act 1866, Revision, p. 1150, wherein, section 3, real estate is declared to include all lands, all water power thereon or appurtenant thereto, and all buildings and erections thereon or affixed to the same, trees and underwood growing thereon, and all mines, quarries, peat and marl beds, and all fisheries, and that personal estate shall include goods and chattels of every description, including steamboats and other vessels, money, debts due or owing from solvent debtors, public stocks, and stocks in corporations; nor under Revision, p. 196, S 105, providing that "the real and personal estate of every corporation shall be taxed the same as the real and personal estate of an individual." | Is franchise a taxable property? | 018489.docx | LEGALEASE-00159870-LEGALEASE-00159872 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20864 | First Union Tr. & Sav. Bank v. Mississippi Power Co., 167 Miss. 876 | 101+2261 | We will consider first whether the franchise of the hotel company was conveyed by the mortgage. The term "corporate franchise" ordinarily refers to the primary franchise of a corporation; that is, the right and privilege granted by the state of being a corporation and doing such things as are authorized by the charter. Franchises of a corporation are divisible into, first, the corporation or general franchises; second, special or secondary franchises. The former is the right to exist as a corporation, while the latter are certain rights and privileges conferred upon existing corporations. The primary franchise is vested in the individuals who compose the corporation, while the special or secondary franchises of a corporation are vested in the corporation itself. The primary franchise of a corporation cannot be conveyed or mortgaged in the absence of legislative authority so to do, but special or secondary franchises, other than such as are charged with a public use, may ordinarily be conveyed or mortgaged under a general power granted to a corporation to dispose of its property. The primary franchise of a corporation cannot be sold under execution issued on a judgment against it, but its special or secondary franchises may be. Section 904, Code 1906, of which section 4155, Code 1930, is a rescript, has no reference to the primary franchise of a corporation, but to special or secondary franchises. Gulf Refining Co. v. Cleveland Trust Co., 108 So. 158 (not reported [in State report] but to be reported in either 166 or 167 Miss.). | Statutory provision that mortgage of corporate "franchise" shall not be valid against debt contracted in carrying on corporate business refers not to primary franchise, but to special or secondary franchises (Code 1930, S 4155). | What does the term corporate franchise refer to? | 018541.docx | LEGALEASE-00159292-LEGALEASE-00159294 | Condensed, SA, Sub | 0.85 | 0 | 1 | | 1 | |
| 20865 | Fitzgerald v. State, 26 N.E.3d 105 | 377E+48(1) | Once the defendant asserts a claim of self-defense, the State bears the burden of disproving the existence of one of the elements of the claim. Mariscal v. State, 687 N.E.2d 378, 381 (Ind.Ct.App.1997), trans. denied. The State may rebut a claim of self-defense by affirmatively showing that the defendant did not act to defend himself or another by relying on the evidence elicited in the case-in-chief. Id. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence challenge. [Rodriguez v. State, 714 N.E.2d 667, 670 (Ind.Ct.App.1999), trans. denied ].Wilcher v. State, 771 N.E.2d 113, 116 (Ind.Ct.App.2002). | Evidence was insufficient to establish defendant acted without fault, an element necessary to support defendant's claim of self defense, during prosecution for Class C felony intimidation; defendant was attempting to flee from a staged robbery that the victim had planned to cover up a theft from the victim's employer, and from a witness's perspective defendant had sprayed the victim in the face with pepper spray and forcibly took the victim's bag. West's A.I.C. 35-41-3-2, 35-45-2-1(b)(2)(A). | How may the State affirmatively rebut a claim of self defense? | 046896.docx | LEGALEASE-00160278-LEGALEASE-00160279 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 20866 | Butler v. Paine, 8 Minn. 324 | 83E+361 | The first question to determine is, whether this is a negotiable instrument under the law-merchant. The statutes of our State leave notes and bills to be construed by the common law applicable to such paper, no material changes having been made. Comp. Stats., 375. It will not not be disputed that a negotiable bill or note must be payable in money. The whole question, therefore upon this bill arises upon the word "currency." Considerable authority exists upon paper of this character. In the case of Farwell vs. Kennett, 7 Missouri, 595, a bill payable in "currency" was held not to be a bill of exchange. A note payable in "current bank notes," is not negotiable. Gray vs. Donahoe, 4 Watts, 400. A note payable in "notes of the chartered banks of Pennsylvania," is not negotiable. McCormick vs. Trotter, 10 Serg. & Rawle, 94. A check drawn in New York upon a bank in Mississippi, payable in "current bank notes," is not negotiable. Little vs. The Phoenix Bank 7 Hill 359. This case affirms the case reported in 2 Hill, 425. A note made, negotiated, and payable in New York, in "Canada money" is not negotiable. Thompson vs. Sloan, 23 Wend., 71. There are other cases of similar import in the books. Various reasons are assigned by the courts for these decisions; but generally they hold that the terms used do not signifymoney. | A promissory note or bill of exchange, payable in currency, is payable in money, and is negotiable. | "Is a note payable in currency or in current funds, prima facie negotiable?" | 009651.docx | LEGALEASE-00160763-LEGALEASE-00160764 | Condensed, SA, Sub | 0.93 | 0 | 1 | | 1 | 1 |
| 20867 | Easley v. E. Tennessee Nat. Bank, 138 Tenn. 369 | 83E+551 | The Supreme Court of North Dakota reviewed the cases on the question of reasonable time and said: "It is well established that a note payable on demand is due within a reasonable time after its date, and there are practically no authorities which hold that such a reasonable time can be extended beyond a year." McAdam v. Grand Forks Mercantile Co., 24 N. D. 645, 140 N. W. 725, 47 L. R. A. (N. S.) 246. | Demand certificate of deposit, stipulating no interest after 12 months, negotiated more than year after date, is negotiated unreasonable time after issuance, and one who takes it is not holder in due course, under Thompson's Shannon's Code, S 3516a52. | Can there be an extension of time on a note payable on demand? | Bills and Notes -Memo 59 - AM.docx | LEGALEASE-00050310-LEGALEASE-00050311 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 20868 | Langbein v. Bd. of Zoning Appeals of Town of Milford, 135 Conn. 575 | 414+1270 | Schools have been generally held suitable in a residence zone. Bassett, Zoning, p. 196; Yokley, Zoning Law & Practice, p. 383. The principle of construction that words are to be given their plain and natural meaning, Johnston v. City of Hartford, 96 Conn. 142, 151, 113 A. 273, is of little help, since reference to any standard dictionary will show that "school" has many definitions. Webster's New International Dictionary, Vol. 38, Words and Phrases, Perm.Ed., page 304. An early Connecticut case states that "school" is a generic term denoting an institution for instruction or education. American Asylum for Education and Instruction of Deaf and Dumb v. President, etc., of Phoenix Bank, 4 Conn. 172, 177, 10 Am.Dec. 112. State v. Leighton, 35 Me. 195, 198, held that a private school for the teaching of writing was a school within the meaning of the statute construed. | Schools are generally held suitable in an area zoned for residential purposes. | Are schools suitable in residence zones? | Education - Memo 314-C - KS_65572.docx | ROSS-003281722-ROSS-003281723 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | 1 |
| 20869 | Larey v. Taliafero, 57 Ga. 443 | 184+14 | While we do not agree with the circuit judge in the view he took of the case, we do not feel constrained to order a new trial. There is positive evidence that the defendant below said, at the time of the swap, that he would warrant the mule to be sound in every respect. That declaration was, doubtless, intended as a representation, and was understood to be such by the other party. That it amounted to a warranty, would not strip it of its character as a representation. | When one, in trading property, says he will warrant it to be sound in every respect, his declaration may amount to a representation as well as to a warranty. | Can a declaration amount to a warranty? | 018382.docx | LEGALEASE-00161795-LEGALEASE-00161796 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20870 | Gen. Housewares Corp. v. Nat'l Sur. Corp., 741 N.E.2d 408 | 217+2101 | As earlier noted, fortuity is a concept inherent to insurance. "Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event." Meyer v. Building and Realty Serv. Co. (1935) 209 Ind. 125, 134, 196 N.E. 250, 253-54, trans. Denied(emphasis supplied). "Implicit in the concept of insurance is that the loss occur as a result of an event that is fortuitous, rather than planned, intended, or anticipated." RUSS AND SEGALLA, supra, " 102:7 at 17. Insurance is "applicable only to some contingency or act to occur in [the] future." BLACK'S LAW DICTIONARY 721 (5th ed. 1979). Thus, the known loss doctrine is not so much an exception, limitation, or exclusion as it is a principle intrinsic to the very concept of insurance. SEE RUSS AND SEGALLA, supra, " 102:9 at 25. Therefore, despite the fact that the policies at issue failed to mention the known loss doctrine, we hold that it is applicable to these policies. | "Insurance" is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event; thus, fortuity is a concept inherent to insurance. | Is fortuity an inherent feature of insurance? | 019626.docx | LEGALEASE-00161505-LEGALEASE-00161506 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20871 | Love v. Money Tree, 279 Ga. 476 | 217+1107 | In Georgia, insurance is defined as "a contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies." Here, the auto club undertakes to pay a specified amount of money to its members upon the occurrence of determinable contingencies. Moreover, by enlisting numerous members, the club distributes individual losses among a large group of purchasers. Several courts have considered similar plans to be insurance under definitions similar to the one set forth in OCGA " 33-1-2(2). Moreover, a leading treatise on insurance takes the position that auto club memberships should be considered insurance.] | Statute invalidating agreements to arbitrate disputes regarding contracts of insurance was enacted to regulate the business of insurance and would be impaired by application of the Federal Arbitration Act (FAA), and, thus, McCarran-Ferguson Act prohibited the FAA from preempting the statute and prevented enforcement of arbitration agreement in lender's collection action against borrowers who had purchased automobile club memberships. 9 U.S.C.A. S 2; McCarran-Ferguson Act, S 2, 15 U.S.C.A. S 1012(b); West's Ga.Code Ann. S 9-9-2(c)(3). | Are automobile club memberships insurances? | Insurance - Memo 88 - SNJ_65781.docx | ROSS-003284821-ROSS-003284822 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 20872 | Campbellsville Lumber Co. v. Hubbert, 112 F. 718 | 1708+3073 | For the purposes of this case, we may assume that the legislature of Kentucky did not exceed its constitutional powers in providing the very stringent remedies found in the act approved March 18, 1878, and the law amending that act approved February 27, 1882. The power to impose a tax or raise money by general assessment for a public purpose is a very high attribute of sovereignty, and can only be exercised when authorized by express legislative authority. Supervisors v. Rogers, 7 Wall. 175, 19 L.Ed. 162; Rees v. City of Watertown, 19 Wall. 107, 116, 22 L.Ed. 72; Heine v. Levee Com'rs, 19 Wall. 655, 22 L.Ed. 223; Thompson v. Allen Co., 115 U.S. 550, 6 Sup.Ct. 140, 29 L.Ed. 472; McLean Co. Precinct v. Deposit Bank of Owensboro, 81 Ky. 254; Grand Rapids School Furniture Co. v. Trustees of School Dist. No. 29, 102 Ky. 556, 44 S.W. 98. | The powers granted by acts of the Kentucky legislature approved March 18, 1878, and February 27, 1882, authorizing a court in which a judgment is recovered against Taylor county on county bonds to assess the taxpayers to collect such judgment, may be exercised by a federal court. | Can the power to impose a tax only be exercised when authorized by express legislative authority? | 046326.docx | LEGALEASE-00160829-LEGALEASE-00160830 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 20873 | State v. Anthony, 860 N.W.2d 10 | 410+88 | "We have recognized two distinct ways in which a defendant may give up his rights: waiver and forfeiture." State v. Pinno, 2014 WI 74, " 56, 356 Wis.2d 106, 850 N.W.2d 207. Waiver ""is the intentional relinquishment or abandonment of a known right." " Ndina, 315 Wis.2d 653, " 29, 761 N.W.2d 612 (quoting United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). "[W]aiver typically applies to those rights so important to the administration of a fair trial that mere inaction on the part of a litigant is not sufficient to demonstrate that the party intended to forgo the right. "State v. Soto, 2012 WI 93, " 37, 343 Wis.2d 43, 817 N.W.2d 848. | Defendant forfeited his right to testify at trial on charge of first degree intentional homicide by displaying stubborn and defiant conduct that presented a serious threat to both the fairness and reliability of the criminal trial process as well as the preservation of dignity, order, and decorum in the courtroom; defendant repeatedly and forcefully indicated that he would disobey trial court's evidentiary rulings and testify as to irrelevant, time-consuming, and confusing issues including allegedly wrongful armed robbery conviction that was over 40 years old, his race, his religion, and his childhood, and threatened that he would need to be carried out of courtroom if he could not testify freely. U.S.C.A. Const.Amends. 5, 6, 14. | Does waiver apply to rights so important to the administration of a fair trial that mere inaction is not sufficient to demonstrate a party intended to forgo the right? | 018192.docx | LEGALEASE-00161902-LEGALEASE-00161903 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 20874 | Iowa Contractors Workers' Comp. Grp. v. Iowa Ins. Guar. Ass'n, 437 N.W.2d 909 | 217+1001 | While it is true that the Group does assume some risk, it does not assume all of the risks. This is so because of the joint and several liability provision. As explained by one treatise writer,[a]ll insurance contracts concern risk transference, but not all contracts concerning risk transference are insurance. The complex bundle of risks from a venture gives rise to a variety of kinds of legal risk transference, some of which are not regarded as insurance for any purpose, and some of which are regarded as insurance for one purpose but not for another. Even in states having the broadest statutory or decisional definitions of insurance, which if literally applied would include all or nearly all contracts transferring risk, many arrangements literally within such definitions are not treated as insurance transactions in legal contexts.R.E. Keeton, Insurance Law 6 (1971). | Contract is one of "insurance" if it meets following test: one party, for compensation, assumes risk of another; party who assumes risk agrees to pay certain sum of money on specified contingency; and payment is made to other party or party's nominee. | Are all contracts concerning risk transference an insurance? | Insurance - Memo 92 - SNJ_65946.docx | ROSS-003278496-ROSS-003278497 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | 1 |
| 20875 | Inhabitants or Northampton v. Commissioners of Hampshire Cty., 145 Mass. 108 | 371+2641 | The objections which the petitioner in the case at bar makes, that the fund is taxed where the securities, etc., are not kept; that the fractions of it permitted to be taxed are taxed at different rates, according to the exigencies of the different towns entitled to tax,-all exist in the general laws relating to the taxation of trust property. It is not necessary, in order that taxes should be proportional, that the rate should be identical in all the municipal corporations of the state. However widely rates may differ, it cannot be held that they are not proportional on account of differences of that nature. | St.1849, c. 96, S 4, providing that funds of corporation known as "Smith Charities," for taxation purposes be equally apportioned among eight towns, named in the testamentary trust, or such of them as should not have forfeited their rights therein, apportionment to be made and assessors of each town notified by the trustees, on or before May 1st in each year, and that portions of funds thus assigned to the towns respectively, might be assessed therein in all the taxes legally rated and assessed by the towns, does not conflict with Const. pt. 2, c. 1, S 1, art. 4, requiring proportional and reasonable assessments, rates, and taxes. | Should the tax rate be identical in all municipal corporations throughout the state? | 046372.docx | LEGALEASE-00162070-LEGALEASE-00162071 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20876 | Clarey v. Union Cent. Life Ins. Co., 143 Ky. 540 | 217+1091(7) | The decisions of this court are in harmony and accord with the principle thus announced, and in Ford v. Buckeye State Ins. Co., 6 Bush, 133, 99 Am. Dec. 663, this court held that where a contract, made in Indiana, was not enforceable under the laws of that state it would not be enforced in this state. And in Jameson v. Gregory's Ex'r, 4 Metc. 363, it was held that the legality of a contract must be decided by the laws of the state in which it was made. In Archer v. National Ins. Co., 2 Bush, 226, it was held that the validity and legality of a contract executed in Indiana must be determined by the laws of that state. In Young v. Harris, 14 B. Mon. 556. 61 Am. Dec. 170, this court, through Chief Justice Marshall. said: "The general principle determining the law by which a contract is to be construed is that, unless the place appointed for its payment be different from that in which it is made, it is to be governed by the law of the place where it is made, which is the lex loci contractus." In Western Union Telegraph Co. v. Eubanks & Russell, 100 Ky. 591, 38 S. W. 1068, 36 L. R. A. 711, 66 Am. St. Rep. 361, 18 Ky. Law Rep. 995, it is said that "the general rule is that the law of the place where the contract is to be performed governs, subject, of course, to the rule that a contract which is void by the law of the place where made is void everywhere." And in Hyatt v. Bank of Kentucky, 8 Bush, 193, it was held, where a note was executed in Louisiana, that as between the maker of the note and the payee its legal effect must be determined by the law of that state. | An insurance policy which provided that no action might be brought upon it more than one year after the death of the insured was issued by an Ohio corporation to a resident of Wisconsin. After the contract was made, the insured removed to Kentucky, where he lived for some years before his death. In a suit on the policy, brought more than a year after the death of insured, the plaintiff in her pleadings admitted that the condition, as to the bringing of the suit, was valid both in Ohio and Wisconsin. Held, that the law of one of those two states governed the construction of the contract, and the condition as to the time of suit being valid in those states it will be recognized as valid in Kentucky, though such condition is regarded as contrary to the public policy of Kentucky. | "If a note is executed by a maker in a payee in one state, will the law of that state control?" | Bills and Notes - Memo 1307 - RK_66212.docx | ROSS-003321759-ROSS-003321760 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | |
| 20877 | Johnston v. Gawtry, 83 Mo. 339 | 8.30E+10 | The decree is unobjectionable in point of form, and the facts specifically found by it support the relief granted. Mrs. Gawtry had a separate estate and her contract in reference to the other parties to the instrument is that of a joint promissor or joint maker, and of a surety for the maker to the payee. Powell v. Thomas 7 Mo. 440; Lewis v. Harvey, 18 Mo. 74; Kuntz v. Temple, 48 Mo. 26; Good v. Martin, 5 Otto 90; Chadwick v. Vanness, 35 N. J. 525. The proof is clear that Mrs. Gawtry's signature for the purpose of being delivered and negotiated to the payee in the city and state of New York, and such place of delivery is the one where the note first became a complete contract and is the place of the contract; wherever signed it is the place of contract and the validity of the contract is to be governed by the law of New York. Lawrence v. Bassett, 5 Allen 140; Lee v. Sellick, 33 N. Y. 615;Cook v. Litchfield, 5 Sandf. 337. This rule governs in the case of a married woman. | The state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract. | Does delivery of a note complete the contract? | Bills and Notes - Memo 1359 - RK_66261.docx | ROSS-003321744-ROSS-003321745 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 20878 | Bell v. Packard, 69 Me. 105 | 253+109(1) | Our opinion is that the note was made and intended by the parties to be paid in Skowhegan. For although it was signed in Cambridge, it was delivered to the payee in Skowhegan; and it was not a completed contract until delivered. This proposition needs no citation of authorities, still we cite Lawrence v. Bassett, 5 Allen, 140, as precisely in point. | A promissory note written in Maine, but signed in Massachusetts by citizens there, and then returned by mail to the payee in Maine, is a note made in Maine, and to be construed by the laws thereof. So, where one of the makers of such a note, thus written and signed, was a married woman, who signed it as surety for her husband, and by the laws of Massachusetts she could not thus bind herself there, the note is to be construed by the laws of Maine, which authorize her to contract for any lawful purpose. | Does delivery of a note complete the contract? | 009240.docx | LEGALEASE-00162749-LEGALEASE-00162750 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | |
| 20879 | Rivera v. Shinseki, 654 F.3d 1377 | 34+138 | The Veterans Court acknowledged that the Department of Veterans Affairs ("DVA"), both at the time of Mr. Ortiz's 1980 appeal and now, has operated under a duty to read the documents that a claimant files in support of his appeal liberally and sympathetically in deciding if the claimant has sufficiently alleged an error of fact or law. 38 C.F.R. " 19.116 (1980) (obligation to construe filing liberally); see Comer v. Peake, 552 F.3d 1362, 1368 (Fed.Cir.2009) (same, under current regulation). Moreover, we have held that the Board is required to address all issues reasonably raised on appeal, even if the issue might not be directly raised in the veteran's appellate filings when read in isolation. Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed.Cir.2009); Comer, 552 F.3d at 1368 (DVA obliged to consider entitlement to TDIU benefits, even when not specifically raised in the formal appeal, if the record contains "persuasive and pervasive evidence" of unemployability). | Veteran sufficiently identified issue on appeal from denial of his motion to reopen previously-disallowed claim for disability benefits via his correspondence with Veterans Court, even if he did not make explicit statement that he disagreed with regional office's conclusion that he failed to offer new and material evidence, where that was sole issue decided by regional office. 38 U.S.C.A. S 7105(d)(3). | Does the Department of Veterans Affairs (DVA) operate under a duty to read the documents that a claimant files in support of his appeal? | Armed Services - Memo 361 - RK_66881.docx | ROSS-003292072-ROSS-003292073 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | |
| 20880 | Curran v. Merrill Lynch, Pierce, Fenner & Smith, 622 F.2d 216 | 349B+5.17 | The fourth factor, whether the implication of a private right would infringe on an area of state concern is not crucial here since Cort v. Ash, supra, 422 U.S. at 84-85, 95 S.Ct. at 2091, indicates that a court should imply a private remedy when relegation to state law would frustrate the purpose of the federal statute. This factor favors the implication of a private right of action since the regulation of commodity futures trading should be of federal concern. | Alleged unfulfilled and proximate promise of a "common enterprise" with other customers did not itself bring actual agreement between parties with respect to discretionary trading account in commodity futures within definition of a "security" for purpose of registration requirements and enforcement provisions of federal securities laws, though customers may have hoped that broker's control over a number of accounts would increase agent's clout in market, customers always understood that the return would be based on one-to-one vertical relationship with broker. Securities Act of 1933, 5 5, 15 U.S.C.A. S 77e; Securities Exchange Act of 1934, S 10, 15 U.S.C.A. S 78j. | Is the regulation of the commodities futures industry a federal concern? | Commodity Futures Trading Regulation - Memo 4 - C -JL.docx | LEGALEASE-00052808-LEGALEASE-00052809 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 20881 | People v. Smith, 128 Misc. 2d 733 | 110+29(12) | t is true that in criminalizing as rape sexual intercourse with an intoxicated person, the Legislature specifically defined the crime in terms of the victim's being "prevented from resisting by any intoxicating or anesthetic substance." (" 261, subd. (a)(3).) It is also true that in criminalizing as rape sexual intercourse with an unconscious person, the Legislature specifically defined the crime in terms of the victim being "incapable of resisting" due to being "unconscious or asleep." (" 261, subd. (a)(4)(A).) It does not follow, however, that just because the Legislature did not use similar language in defining the crime of sexual battery, the Legislature must have intended to criminalize sexual touching of a person who is too intoxicated to consent to the touching or who is unconscious. | Convictions for rape of an intoxicated woman and rape of an unconscious woman, arising from one act of sexual intercourse, could not both stand, and judgment would be modified to strike conviction for rape of an unconscious woman. West's Ann.Cal.Penal Code S 261(a)(3, 4). | Does sexual intercourse with a sleeping victim amount to the crime of rape? | 043141.docx | LEGALEASE-00164084-LEGALEASE-00164085 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20882 | Bd. of Directors of St. Francis Levee Dist. v. Bodkin, 108 Tenn. 700 | 405+2861 | The supreme court of Arkansas has had occasion to consider the nature and character of this board, and has adjudged it a public corporation clothed with governmental duties and functions, including the power to buy and collect public taxes. Carson v. St. Francis Levee Dist., 59 Ark. 536, 27 S. W. 590; Memphis Land & Timber Co. v. St. Francis Levee Dist., 64 Ark. 258, 42 S. W. 763. It is well settled that the property and assets of municipal corporations held and used for public purposes cannot be seized and appropriated by creditors to the payment of their debts. "The property of a municipal corporation, which is essentially public in its nature, is held by the corporation in trust for the public, and is necessary for the exercise of its corporate municipal function, and cannot be sold to satisfy the debts of the corporation." 20 Am. & Eng. Enc. Law (2d Ed.) 1190. In Klein v. City of New Orleans, 99 U.S. 149, 25 L. Ed. 430, Waite, C. J., states the reason for this rule with much force and clearness. viz.: "If the lands are held by the corporation for public purposes, and the ground rents are part of the public revenue, it is well settled they cannot be levied on and sold. Property and revenue necessary for the exercise of these powers become part of the machinery of government, and to permit a creditor to seize and sell them to collect his debt would be to permit him in some degree to destroy the government itself. The test in such cases is as to the necessity of the property for the due exercise of the functions of the municipality." State v. Tiedemann, 69 Mo. 306, 33 Am. Rep. 498; Fleishel v. Hightower, 62 Ga. 324. | An Act of the Legislature incorporating a Board of Directors and authorizing it to build, rebuild, and repair leevees for the protection of a large district from overflow; to make all necessary contracts, and to levy taxes upon the inhabitants of the district and collect them, and to issue bonds for said purposes, constitutes such Board of Directors a public corporation, clothed with governmental duties and functions of the same general class as cities and counties. | Can lands held for public purposes be levied or sold? | 014106.docx | LEGALEASE-00165100-LEGALEASE-00165102 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 20883 | In re T.P., 803 S.E.2d 1 | 106+21 | On appeal, the respondent-mother asserted errors "not associated with subject matter jurisdiction[,]" but we nevertheless determined ex mero motu that the trial court lacked jurisdiction to enter its order. Id. at 443, 581 S.E.2d at 794-95. In our decision, we stated that "[t]o be valid, a pleading or motion must include a request or demand for the relief sought, or for the order the party desires the trial court to enter[.]" Id. at 446, 581 S.E.2d at 795. We ruled that "an examination of petitioner's motion reveal[ed] that it nowhere ask[ed] for the termination of respondent's parental rights" and did not "reference any of the statutory provisions governing termination of parental rights." Id. at 445-46, 581 S.E.2d at 796-97. Indeed, we noted that the motion "fail[ed] to request any relief, judgment, or order from the trial court." Id. at 446, 581 S.E.2d at 797. Notably, in holding that the trial court lacked subject matter jurisdiction to enter the order, we stated that "a trial court's general jurisdiction over the type of proceeding or over the parties does not confer jurisdiction over the specific action." Id. at 447, 581 S.E.2d at 797 (citation omitted and emphasis added). | Court cannot undertake to adjudicate a controversy on its own motion; rather, it can adjudicate a controversy only when a party presents the controversy to it, and then, only if it is presented in the form of a proper pleading, and thus, before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question. | Should a pleading or motion include a request or demand for the relief sought? | 023973.docx | LEGALEASE-00164635-LEGALEASE-00164636 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 20884 | Pac. Grove-Asilomar Operating Corp. v. Cty. of Monterey, 43 Cal. App. 3d 675 | 371+2311 | Appellants contend that the above case is distinguishable on its face because it involves personal property tax. Such a distinction is without merit. Section 612, relied on by the court for its holding applies to the assessment of taxes in general. Assessment of a tax in this case would be as self-defeating as an assessment of a tax in the General Dynamics Corp. case. All state-owned propety is exempt from taxation. (People v. Chambers, 37 Cal 2d 552, 233 P.2d 557.) | All state-owned property is exempt from taxation. West's Ann.Rev. & Tax.Code, S 107. | Is all state-owned property exempt from taxation? | 046462.docx | LEGALEASE-00164565-LEGALEASE-00164566 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 20885 | Mizell v. Atty. Gen. of State of N.Y., 586 F.2d 942 | 135H+99 | However, in Benton v. Maryland, supra, Palko was overruled and the double jeopardy clause was held to be so fundamental to our scheme of justice that "the same constitutional standards apply against both the State and Federal Governments."395 U.S. at 795, 89 S.Ct. at 2063. In his opinion below Judge Nickerson rejected the State's contention that the difference between the federal and New York rules concerning when jeopardy attaches was merely technical or mechanical. | Where jury was impaneled and sworn on a Wednesday, where, on following day, trial court was informed that two state witnesses who had been subpoenaed had failed to appear, where prosecutor asked for continuance until following Monday, where there was no indication that either of two witnesses would be unavailable by Monday, where jury had not been sequestered and continuance would not have required them to serve beyond their appointed term, and where only reason given by trial court for failure to grant continuance was convenience of jury, neither ends of public justice nor manifest necessity required discharge of jury and mistrial, and thus, subsequent trial of petitioner was barred by double jeopardy. U.S.C.A.Const. Amend. 5. | Is protection against double jeopardy fundamental to the criminal justice system? | 016661.docx | LEGALEASE-00165257-LEGALEASE-00165258 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 20886 | Gen. Elec. Capital Corp. v. FPL Serv. Corp., 986 F. Supp. 2d 1029 | 50+2 | Iowa Code " 554.9102, cmt. 3(b). Parties may, however, agree to treat a general lease as a more specific "finance lease." See id. " 554.13103, cmt. (g) ("If a transaction does not qualify as a finance lease, the parties may achieve the same result by agreement ...."); but see id. ("For a transaction to qualify as a finance lease it must first qualify as a lease."). Parties may not agree to treat a transaction as a lease. See Wolfe, 795 N.W.2d at 76 ("[W]hile Lake MacBride and Frontier could have agreed to treat a lease as a finance lease, they could not agree to treat a sale with a security interest as a lease."). | Under Iowa law, if a lease agreement retains or creates a security interest, the agreement cannot qualify as a lease or a finance lease because an agreement retaining or creating a security interest is specifically excluded from the statutory definition of a lease. I.C.A. S 554.13103(1)(j). | Can parties agree to treat a general lease as a more specific finance lease? | ROSS-003280559 | | Secured Transactions - Memo 16 - C - VA_67959.docx | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 20887 | In re Purdy, 490 B.R. 530 | 349A+10 | Resolution of whether the document at issue is a lease or a secured transaction "focuses on the economics of the transaction, not the intent of the parties." D. Leibson and R. Nowka, The Uniform Commercial Code of Kentucky, " 9.01[2][e][i] (3d ed. 2004). A review of the Leases shows that the Debtor did not have the option to terminate and had the right to use the cows for the term of the Lease. The next inquiry is then whether one of the four conditions cited above also exists. | Under Arizona law, if alleged lease is not terminable by lessee and one or more statutorily enumerated conditions is present, then document is a security agreement per se, and court's analysis ends. A.R.S. S 47-1203. | Does resolution of whether document at issue is lease or security agreement focus on economics? | 042744.docx | LEGALEASE-00165763-LEGALEASE-00165764 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20888 | Vance v. Rumsfeld, 701 F.3d 193 | 34+33 | Of course a defense to damages liability does not create damages liability, but plaintiffs contend that " 2000dd"1(a) assumes that this liability already exists, so personal liability must have Congress's blessing. That assumption is unwarranted. Congress often legislates to make doubly sure that federal employees will not be personally liable. The Westfall Act, 28 U.S.C. " 2679, is an example of that strategy. (Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), and Ali v. Rumsfeld, supra, discuss that law's scope and effects.) The Public Health Service Act, 42 U.S.C. " 233(a), is another. See Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010). Section 7(a) of the Military Commissions Act, 28 U.S.C. " 2241(e)(2), is a third. It forbids awards of damages to aliens detained as enemy combatants. See Al"Zahrani v. Rodriguez, 669 F.3d 315 (D.C.Cir.2012). The existence of safeguards against personal liability does not imply legislative authorization for the judiciary to create personal liability. | Detainee Treatment Act's creation of a defense to damages liability for military interrogators and their superiors does not create damages liability. Detainee Treatment Act of 2005, Div. A, S 1004(a), 42 U.S.C.A. S 2000dd-1(a). | Does the existence of statutory safeguards against personal liability imply legislative authorization for the judiciary to create personal liability? | 14472.docx | LEGALEASE-00082015-LEGALEASE-00082016 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 20889 | Ethridge v. TierOne Bank, 226 S.W.3d 127 | 366+31(4) | There is no general rule regarding when the doctrine of equitable subrogation applies. Its application depends on the facts of the case. This equitable doctrine, explained in Anison v. Rice, 282 S.W.2d 497, 503 (Mo.1955), "is enforced whenever the person paying the debt stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit." | The doctrine of equitable subrogation is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit. | Is there a general rule concerning when the doctrine of equitable subrogation is applicable? | 05095.docx | LEGALEASE-00083748-LEGALEASE-00083750 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | 1 |
| 20890 | Kerr v. Grand Foundries, 451 S.W.2d 26 | 307A+501 | The right to a non-suit has never been regarded as an absolute right, Rosen v. Grattan (Mo.App.) 369 S.W.2d 882. We conclude that Fenton v. Thompson, supra, rules the issue of the right to appeal a judgment of voluntary dismissal without prejudice after submission. The case at bar is distinguishable in that the judgment of voluntary dismissal without prejudice was granted prior to submission. | Where plaintiff had agreed, upon granting of prior motion for continuance, to forego right of voluntary nonsuit at any subsequent date, finding that there was no binding waiver and granting of plaintiff's subsequent motion for leave to dismiss without prejudice, made before submission of case, was not error as defendant would not lose any right of defense and plaintiff would gain no undue advantage by granting of motion. | Is the right to a nonsuit absolute? | 01695.docx | LEGALEASE-00092034-LEGALEASE-00092035 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 20891 | Wallisville Corp. v. McGuinness, 154 So. 3d 501 | 188+291 | Furthermore, appellees' motion to dismiss based on section 849.26 raised an affirmative defense. See Young, 122 So.2d at 619. Affirmative defenses "cannot ordinarily be raised by motion to dismiss" unless "the face of the complaint is sufficient to demonstrate the existence of the defense." Ramos v. Mast, 789 So.2d 1226, 1227 (Fla. 4th DCA 2001); see also Fla. R. Civ. P. 1.110(d) ("Affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b) (1"). | Fact issue as to the purpose of website visitor's $10,000 deposit with gambling website precluded dismissal, for failure to state a cause of action, of visitor's action against operators of the website for the return of the deposit; while it seemed likely that statute barring enforcement of gambling debts would bar recovery of the deposit, complaint contained no allegations as to the terms on which the deposit was being held, so as to enable trial court to decide the merits of website operators'affirmative defense raising the statute. West's F.S.A. S 849.26. | Can affirmative defenses be raised by motion to dismiss? | 11377.docx | LEGALEASE-00094019-LEGALEASE-00094020 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 20892 | Nw. Nat. Ins. Co. v. Crockett, 857 S.W.2d 757 | 83E+482 | Negotiation of an instrument is a transfer of that instrument in such a way that the transferee becomes a holder. Tex.Bus. &Com.Code Ann. " 3.302(a) (Vernon 1968); Holder status depends upon delivery plus proper indorsement. Lawson v. Gibbs, 591 S.W.2d 292 (Tex.Civ.App."Houston [14th Dist.] 1979, writ ref'd n.r.e.). In the absence of an indorsement to the plaintiff, the plaintiff is not entitled to a presumption of ownership. Tex.Bus. &Com.Code Ann. " 3.201(c) (Vernon 1968). The non-negotiable note is nevertheless susceptible of assignment. Dillard v. NCNB Texas Nat. Bank, 815 S.W.2d 356 (Tex.App."Austin 1991, no writ), overruled in part by Amerboy v. Societe de Banque Privee, 831 S.W.2d 793 (Tex.1992); see also First Nat'l Bank in Grand Prairie v. Lone Star Life Ins. Co., 524 S.W.2d 525 (Tex.Civ.App."Dallas) (opinion on rehearing), writ ref'd n.r.e., 529 S.W.2d 67 (Tex.1975). | Nonnegotiable note is nevertheless susceptible of assignment. | Is a non-negotiable note susceptible of assignment? | 09937.docx | LEGALEASE-00095628-LEGALEASE-00095629 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 20893 | Com. v. Reinhold, 325 S.W.3d 272 | 217+1001 | Both lower court decisions correctly concluded that the shifting of risk from one party to another was a necessary component of an insurance contract. The United States Supreme Court agrees with this principle, describing insurance as, "an arrangement for transferring and distributing risk." Group Life & Health Insurance Co. v. Royal Drug Co., 440 U.S. 205, 211, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). The lower court decisions, however, incorrectly determined that the Medi"Share program did not shift risk because each individual member remains personally liable for paying his own medical bills. We note that even under conventional health insurance plans a member remains personally liable to the medical provider for payment. Key to the Court of Appeals decision were the uncontroverted facts that Medi"Share disclaimed any liability for members' medical expenses and guaranteed payment of no claims, that Medi"Share informed its members that it was not a substitute for insurance, that any medical bill payments were considered voluntary donations from other members, and that Medi"Share does not pay member claims, but, rather, claims are paid by the transfer of money from one member's sub-account to another, and from there sent to the medical care provider. | Agreement signed by members of religious-based system for sharing medical costs was a "contract for insurance," and thus operator of system was engaged in unauthorized sale of insurance, since agreement provided for shifting of risk of medical expenses; although agreement contained a disclaimer that system was not intended to be a replacement for health insurance and was intended to be a purely charitable endeavor, operator pooled member payments to pay medical bills as claims for payment were submitted, used actuarial tables to calculate amount of member payments, and emphasized in advertising is that it was an economical alternative to conventional health insurance programs. KRS 304.1-030. | Is risk a nature of insurance? | 00210.docx | LEGALEASE-00115662-LEGALEASE-00115663 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20894 | Louisiana United Bus. Ass'n Cas. Ins. Co. v. J & J Maint., 133 F. Supp. 3d 852 | 334+3 | "The question, then, is whether [R.S. 23:1101 et seq.] confer upon the employer a separate and independent cause of action ... against the third person tortfeasor or whether there is but one cause of action, ex delicto, which the compensation paying employer or the injured employee is accorded the right to assert separately or jointly. Considering [these provisions], it seems plain that there is but one cause of action recognized for the recovery of damages resulting from a single tort. However, the right of redress against the tortfeasor has been extended by the provisions to the injured workman's employer..." Marquette Cas. Co., 103 So.2d at 271. Louisiana courts recognize a firm distinction between a right of action and a cause of action, as reflected in Marquette's holding. Coulon v. Gaylord Broadcasting, 433 So.2d 429, 430 (La.Ct.App. 4th Cir.1983), writ denied, 439 So.2d 1073 (La.1983), abrogated on other grounds by Gagliuzza v. KCMC, Inc., 593 So.2d 845, 846 (La.Ct.App. 2d Cir.1992). | Claims brought by workers' compensation insurer for subcontractor, stemming from fatal injury sustained by subcontractor's worker while working on remodeling project at United States Army fort, arose under Louisiana's tort law, rather than workers' compensation law, and thus removal of insurer's action was not precluded by statute prohibiting removal of state workers' compensation actions; workers' compensation laws did not create separate cause of action but only extended right of action, laws'imposition was merely procedural, and nothing in insurer's claims raised substantial question relating to workers' compensation. LSA-R.S. 23:1021 et seq. | Do courts recognize the distinction between a right of action and a cause of action?2. | 002009.docx | LEGALEASE-00119379-LEGALEASE-00119380 | Condensed, SA, Sub | 0.35 | 0 | 1 | | 1 | 1 |
| 20895 | Auers v. Progressive Direct Ins. Co., 878 N.W.2d 350 | 217+2787 | Respondent and amicus curiae's arguments relying on Swanson ignore the important difference between a subrogation lien and a collateral source. "Subrogation "is the substitution of another person in place of the creditor to whose rights he or she succeeds in relation to the debt, and gives to the substitute all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted.' " RAM Mut. Ins. Co. v. Rohde, 820 N.W.2d 1, 5 (Minn.2012) (quoting 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance " 222:5 (3d ed.1995)). Subrogation in the insurance context "involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor)." Medica, Inc. v. Atl. Mut. Ins. Co., 566 N.W.2d 74, 76 (Minn.1997). "Upon payment of a loss, the insurer is subrogated in a corresponding amount to the insured's right of action against any third party whose wrongful conduct caused the loss." RAM, 820 N.W.2d at 5*6 (emphasis added). | Discount of approximately $85,869.59 that health insurer negotiated with providers was "collateral source" reducing past medical expenses below $100,000 limit of automobile liability coverage, even though accident victim's surviving spouse had paid for assignment of health insurer's subrogation rights, and, thus, tortfeasor was not underinsured; health insurer only had subrogation lien in amount paid. M.S.A. S 548.251(2). | "Is subrogation the substitution of a person for a creditor to whose rights the substitute succeeds in relation to the debt, and which gives the creditor all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted?" | 044027.docx | LEGALEASE-00121550-LEGALEASE-00121552 | Condensed, SA, Sub | 0.56 | 0 | 1 | | 1 | 1 |
| 20896 | GLC Inv. Co. v. Pub. Serv. Comm'n of State of N.Y., 136 A.D.2d 857 | 362+5 | When utility service is discontinued, the economic loss to the utility must be balanced against the public interest (id., at 858, 484 N.Y.S.2d 300). In light of Lawrence Park's generally poor financial condition and the need to expeditiously reach a settlement, the PSC properly concluded that the settlement's failure to provide a conversion contribution did not constitute a sufficient reason to reject the settlement. A decision not to have approved the stipulation before July 1, 1986 would have initiated disputes over the status of Lawrence Park's franchise and who was responsible for serving Lawrence Park's customers. Also of concern was the loss of the Village's liability insurance. Considering all these factors, the PSC decision was rational and supported by the record (see, Matter of Campo Corp. v. Feinberg, 279 App.Div. 302, 307, 110 N.Y.S.2d 250, affd. 303 N.Y. 995, 106 N.E.2d 70). | Public Service Commission's approval of steam and electricity utility abandonment settlement allowing remaining funds to be paid to abandoned utility's parent company, instead of establishing fund for abandoned steam customers who would have to convert to electricity was rationally based on conclusion that large operating losses made it appropriate for parent company to receive whatever proceeds remained after outstanding bank loans were satisfied. McKinney's Public Service Law SS 83, 85; U.S.C.A. Const.Amends. 5, 14. | Should the economic loss to a utility be balanced against the public interest if such utility is terminated or discontinued? | Public Utilities - Memo 248 - AM.docx | ROSS-003288401-ROSS-003288402 | Condensed, SA, Sub | 0.42 | 0 | 1 | | 1 | 1 |
| 20897 | A.L. Jones Co. v. Bowman Dairy Co., 209 Ill. App. 579 | 113+19(3) | Where there is no testimony tending to show a general custom as claimed by plaintiff and his own witnesses testify that they know nothing of a custom with other dealers and that their conclusions are drawn from their own experiences, such evidence is insufficient to establish a custom. | Evidence was insufficient to establish a general custom to the effect that a person hired to draw away manure from a barn became the owner thereof and could dispose of it for his own profit so as to entitle plaintiff to recover for breach of contract whereby plaintiff was to remove manure from defendant's barn during the period of one year for the sum of $50 per month. | Can custom be found when parties are unable to articulate standards used by opposing parties? | 014207.docx | LEGALEASE-00141896-LEGALEASE-00141897 | Condensed, SA, Sub | 0.23 | 0 | 1 | | 1 | 1 |
| 20898 | Reading Metal Craft Co. v. Hopf Drive Associates, 694 F.Supp. 98 | 170B+2740 | The nature of a joint venture has been described thus:"A joint venture has been likened to a limited partnership"not limited in a statutory sense as to liability, but as to scope and duration. Thus, one distinction between a joint venture and a partnership is that the former relates to a single transaction (though it may be continued over several years), while the latter relates to a general business of a particular kind. Joint ventures are also distinguishable from partnerships in that the authority of one joint venturer to act as the agent of the others is more limited than the agency of a member of a partnership."Id. " 1578 (footnote omitted). New York case law has specifically said that "[j]oint venturers are subject to the same rules as a technical partnership. Generally speaking, the principles of law of partnership apply to a joint venture, at least by analogy (Napoli v. Domnitch, 34 Misc.2d 237, 226 N.Y.S.2d 908, modified on other grounds, 18 A.D.2d 707, 236 N.Y.S.2d 549)...' John's, Inc. v. Island Garden Center of Nassau, Inc., 269 N.Y.S.2d 231, 236, 49 Misc.2d 1086 (1966), aff'd per curiam, C.J. Zonneveld & Sons, Inc. v. Island Garden Center, Inc., 280 N.Y.S.2d 34, 53 Misc.2d 1021 (1967). The conceptualization of a joint venture as a kind of limited partnership is useful in determining the issue of proper venue for a joint venture within the limitations of 28 U.S.C.A." 1391(a). FSI Group v. First Federal Savings and Loan Association, 502 F.Supp. 356 (S.D.N.Y.1980) would allow venue for a limited partnership to be placed in the district where it has its principal place of business. | Under New York law, personal jurisdiction could be asserted over Florida limited partnership which was member of New York joint venture in dispute arising out of contract between subcontractor and joint venture for construction of shopping center which was owned by joint venture. N.Y.McKinney's CPLR 302. | Questionis a joint venture identical to a limited partnership? | 022371.docx | LEGALEASE-00141999-LEGALEASE-00142000 | Condensed, SA, Sub | 0.81 | 0 | 1 | | 1 | 1 |
| 20899 | Collins v. State, 691 So. 2d 918 | 352H+35 | A review of both the capital and statutory rape statutes reveals that age is a critical element of each crime. "Crimes such as statutory rape and sexual assault, in the instant case are defined by the ages of the persons involved." Washington v. State, 645 So.2d 915, 919 (Miss.1994). "The age of the victim makes or breaks the conviction." Id. This Court recently held that the age of the accused was "a sine qua non of the crime of capital rape requiring proof by the state at trial." Fisher v. State, 690 So.2d 268 (Miss.1996). | Age is critical element of crimes of capital and statutory rape; capital rape requires rape of a child under age 14, while statutory rape requires carnal knowledge of unmarried person of previously chaste character younger than himself or herself and over 14 and under 18 years of age. Code 1972, SS 97-3-65(1), 97-3-67. | Is the State required to prove the age of the accused at trial? | 043112.docx | LEGALEASE-00143480-LEGALEASE-00143481 | Condensed, SA, Sub | 0.4 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20900 | United States v. Howell, 838 F.3d 489 | 350H+1262 | This court's decisions as to the effect of such a plea are in tension. Before we consider those decisions, however, an explanation of the so-called "categorical" and "modified categorical" approaches is necessary. In determining if a prior conviction is for an offense enumerated or defined in a Guidelines provision, we generally apply the categorical approach and look to the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which defendant was convicted. We do not consider the actual conduct of the defendant in committing the offense. If the offense is an enumerated offense, such as burglary, we first determine the elements contained in the generic, contemporary meaning of that offense. | In determining if prior conviction is for "crime of violence" under Sentencing Guidelines, Court of Appeals generally applies categorical approach and looks to offense's elements enumerated or defined by Guideline section and compares those elements to elements of prior offense for which defendant was convicted, but does not consider defendant's actual conduct in committing offense. U.S.S.G. § 4B1.2. | Is burglary an enumerated offense? | 012837.docx | LEGALEASE-00145015-LEGALEASE-00145018 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20901 | Doe By & Through Doe v. Montessori Sch. of Lake Forest, 287 Ill. App. 3d 289 | 91+513 | "Injury" is defined as "[a]ny wrong or damage done to another, either in his [or her] person, rights, reputation, or property." Black's Law Dictionary 785 (6th ed. 1990); Restatement (Second) of Torts " 7 (1965). Two recent opinions, Western States Insurance Co. v. Bobo, 268 Ill.App.3d 513, 205 Ill.Dec. 930, 644 N.E.2d 486 (1994), and Scudder v. Hanover Insurance Co., 201 Ill.App.3d 921, 147 Ill.Dec. 386, 559 N.E.2d 559 (1990), have concluded that an intent to harm can be inferred as a matter of law when an adult engages in unwanted touching and sexual abuse of another, especially a minor. Therefore, we believe in a logical extension of those holdings to determine that when an adult engages in unwanted touching, unlawful restraint, or similar conduct concerning a minor, an injury occurs. | Parents of minor child allegedly sexually abused by preschool teacher could maintain independent causes of action against teacher and her employer for fraudulent concealment, intentional infliction of emotional distress, and civil conspiracy, as such causes of action involved conduct directed at parents. | Can intent to harm be inferred as a matter of law in cases involving minors? | 042986.docx | LEGALEASE-00147978-LEGALEASE-00147979 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 20902 | Mills v. Stark, 4 N.H. 512 | 28+95(1) | A man has a right to drive his cattle along the public highways, and if in exercising this right he use ordinary care and diligence and the cattle escape into the adjoining enclosures without his fault, he is not liable for any damage they may do. 2 H. Bl. 527, Dovaston v. Payne. | Where cattle escape from the close of A., owing to a defect in his fence, and cross the highway into the close of B., which is opposite, through a defect in the fence of B., the latter may lawfully take the cattle as a distress for the damage they have done. | Can cattles be driven in public highways? | Highways -Memo 249-IS_57965.docx | ROSS-003308168-ROSS-003308169 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 20903 | Kratz v. Countrywide Bank, 2009 WL 3063077 | 172H+1561 | The Fourth, Sixth and Eighth Circuits have also approved of conditioning rescission on the borrower's tender of loan proceeds. Powers v. Sims & Levin, 542 F.2d 1216, 1222 (4th Cir.1976) ("What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due."); Rudisell v. Fifth Third Bank, 622 F.2d 243, 254 (6th Cir.1980) ( "[TILA] clearly does not require the debtor to tender first. It contemplates the creditor tendering first. But upon the creditor fulfilling its obligations under the statute, the debtor then must tender. Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor.") FDIC v. Dev. Co., 938 F.2d 889, 890 (8th Cir.1991) ("TILA generally provides that the creditor shall perform first (i.e., return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, 15 U.S.C. " 1635(b), including conditioning rescissions upon the debtor's prior return of the principal."). | Mortgagors were required to tender loan proceeds in order to rescind the loan for the mortgagee's failure to include the rescission date on refinancing documents. Without a tender, rescission would not restore the status quo ante. The mortgagors had lived in their home for seventeen months without paying and could not pay. To effectively rescind the loan transaction, keep the property, and have the loan removed, they needed to pay the loan proceeds net of finance charges. Truth in Lending Act, § 125(a), (b), 15 U.S.C.A. § 1635(a), (b); 12 C.F.R. § 226.23(a)(3), (b)(1), (d)(1)-(3). | Does the TILA provision relating to rescission require the creditor to tender first? | Consumer Credit - Memo 194 - RK_61856.docx | ROSS-003320101-ROSS-003320102 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 20904 | Fairley v. Turan-Foley Imports, 864 F. Supp. 4 | 172H+1341 | In sum, Fairley's complaint clearly alleges wrongdoing by the Defendant, but wrongdoing alone does not automatically trigger application of the TILA's provisions. The TILA "encourages the informed use of credit by requiring lenders to disclose terms that will allow consumers to compare different offers and enter into contracts intelligently," Jensen v. Ray Kim Ford, Inc., 920 F.2d 3, 4 (7th Cir.1990) (citing 15 U.S.C. sec. 1601). The forgery in this case, however, did not affect Fairley's ability to shop intelligently because she was not bound by the terms of any installment contract prepared by Turan"Foley. Accord ("Reprehensible as it would be for a lender to concoct and forge a more onerous substitute and sell it to a credit company in the hope that the consumer would fail to notice the difference, we do not find that the [TILA] prohibits or provides a civil remedy for such conduct."). | TILA encourages informed use of credit by requiring lenders to disclose credit terms and thereby allow consumers to compare different offers and enter into contracts intelligently. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq. | Does TILA prohibit forged contracts? | 013776.docx | LEGALEASE-00155510-LEGALEASE-00155511 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 20905 | Nies v. Dist. Court in & for Woodbury Cty., 179 Iowa 326 | 23H+182 | We are not overlooking that her actual intent or want of knowledge is in one sense immaterial. If she knew that malta was being put in and it turns out that malta was an intoxicating liquor, then, in contemplation of law, she knew that the injunction against her was being violated, and consented to the violation. The distinction is this: If all she knew in fact was that soft drinks were about to be put in, she is not criminally liable, because a soft drink is not an intoxicating liquor. If she knew that malta was being put in and that was in fact an intoxicating beverage, then it is not material that she believed malta was not an intoxicating liquor. As somewhat bearing on this point and another, we call attention to Potter v. Harvey, 30 Iowa, 502, which holds that, though it is the rule that one who pays after he knows representations made at the sale are false is estopped to claim damages on account of such representations, yet, this is not so if his contract was made through an agent and the principal was ignorant of the false representations having been made, although he knew the facts showing their falsity. | If landlord of hotel knew that soft drinks were to be served and did not know that intoxicating liquors were to be served, she was not criminally liable for contempt by violating injunction against sales of intoxicating liquors; but, if she knew that a drink called "malta" was to be sold and it was in fact intoxicating, she was criminally liable, though she thought it was a soft drink. | Is a person who knows that the representations of seller were false estopped from afterward claiming damage for such false representations? | 041746.docx | LEGALEASE-00158975-LEGALEASE-00158976 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20906 | People v. Snowburger, 113 Mich. 86 | 178+14 | Statutes in many states have been passed providing that whoever sells, or keeps or offers for sale, adulterated milk, or milk to which water or other foreign substance has been added, shall be punished, etc. Under these statutes, it has been decided many times that the risk is upon the seller of knowing that the article he offers or on sale is not adulterated, and that it is not necessary in and indictment under such as statute to allege or prove criminal intent or guilty knowledge. Com.v.Smith,103 Mass.444; Com.v.Warren,160 Mass.533,36 N.E.308; People v .Cipperly, 101 N.Y.634,4 N.E.107. The same rule that no criminal intent is necessary has been held to apply under an act for bidding the sale of oleomargarine or other imitations of dairy products, unless express notice begiven to the purchaser. Bayles v.Newton,50 N.J.Law,549,18 Atl.77; Com.v.Gray,150 Mass.327,23N.E.47.The English rule is in keeping with the doctrine in this country on this subject .Roberts v.Egerton,L.R.9Q.B.494.The statute not requiring knowledge on the part of these alert to make the offense complete, weare satisfied that the conviction must be sustained. No case has been cited,and weare notable to find one,where a contrary doctrine is laid down.The act may work hard shipin man y cases,butth at questions one to be addressed to the legislature, and not to the courts.As we have said, it was with in the power of the legislature to pass the act making it an offense punishable with fine and imprisonment to sell adulterated food or drink, although the person selling the same has no knowledge that it is adulterated. Under this statute, one making sales must do so at his peril. The conviction is affirmed | The seller's ignorance of the adulteration is no defense to a prosecution under Pub.Acts 1895, No. 193, SS 1-3, providing that no person shall sell or offer for sale any adulterated article of food or drink; section 8 forbidding any person to "knowingly" offer for sale falsely labeled cheese, and there being no like qualification of the other prohibitions of the act. | Whether knowledge needs to be proved for an offence to sell adulterated milk? | Adulteration - Memo 60-_1Hi3I0KqVsyYrM2ZhDJM2dVtDQkAPSIso.docx | ROSS-000000143-ROSS-000000144 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 20907 | Hillis Homes v. Snohomish Cty., 97 Wash. 2d 804 | 104+192 | We turn now to consider whether the fees should be correctly characterized as taxes. Taxes are imposed to supply revenue for the public treasury. State ex rel. Nettleton v. Case, 39 Wash. 177, 182, 81 P. 554 (1905). Not all demands for payment made by a governmental body are taxes. We have pointed out that "if the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed." Spokane v. Spokane Police Guild, 87 Wash.2d 457, 461, 553 P.2d 1316 (1976). The characterization of the development fees will, therefore, turn on a determination of the primary purpose of the fees we not taxes. If, on the other hand, the primary purpose of the fees is to raise money, the fees are not regulatory, but fiscal, and they are taxes. | The "development fees" imposed by counties on new residential subdivisions and housing proposals constituted "taxes" where ordinances imposing the fees were intended to raise money rather than to regulate residential developments, and thus ordinances imposing such fees were invalid. West's RCWA Const.Art. 7, 5 5; Art. 11, SS 4, 11. | Can a legislation with primary purpose of regulation be classified as a tax | Taxation - Memo # 1002 - C - JL_62476.docx | ROSS-003280852-ROSS-003280853 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 20908 | Norwegian Twp. v. Schuylkill Cty. Bd. of Assessment Appeals, 74 A.3d 1124 | 371+2394 | Moreover, the current use of the property, and not an indefinite, prospective use, controls in the court's determination of tax exemption. Appeal of Municipal Authority of Borough of West View, 381 Pa. 416, 422, 113 A.2d 307, 310 (1955). A taxpayer may overcome speculative use of a property by proving that it spent sufficient funds towards the development of the property for public use. Senior Citizen, 678 A.2d at 432. | Substantial evidence supported the trial court's conclusion that Board of Assessment Appeals failed to meet its burden to prove taxability of township's property; sole evidence that the Board placed into record was tax assessment record card and picture of the property, establishing only that the property was currently vacant, and township produced ample evidence to show that property was actually and regularly being used for public purpose and to support court's finding that property was available to public for recreational activities, had been used by township to benefit public, and that township had made good-faith effort to develop the land for a park or playground, and though not required for property to be tax-immune/exempt, court also found that the township made a good-faith effort to develop the property. Const. Art. 8, S 2. | How can a taxpayer overcome the speculative use of a property? | Taxation - Memo 1284 - C - MV_68463.docx | ROSS-003293909 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 20909 | Manufacturers & Traders Tr. Co. v. Murphy, 369 F. Supp. 11 | 8.30E+282 | First, that because Brownsworth was not a regular customer at M & T bank that the cashing or giving of a cashier's check was not in good faith generally. This argument overlooks the fact that the Silvercreek manager of plaintiff's branch bank called Murphy's bank in Meadville to verify the account and the sufficiency of funds on this check which appeared authentic on its face. Therefore, we reject this argument. It must be kept in mind that the law favors negotiability of a negotiable instrument. First National Bank v. Goldberg, 340 Pa. 337, 17 A.2d 377 (1941); In re Gerber's Estate, 337 Pa. 108, 9 A.2d 438 (1939); International Finance Corp. v. Philadelphia Wholesale Drug Co., 312 Pa. 280, 167 A. 790 (1933). | Law favors negotiability of negotiable instruments. | Does the law favour negotiability of negotiable instruments? | Bills and Notes - Memo 110 - ANG.docx | ROSS-003298488-ROSS-003298489 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 20910 | Erie Ins. Co. v. George, 681 N.E.2d 183 | 217+3517 | Subrogation is a doctrine of equity long recognized in Indiana. It applies whenever a party, not acting as a volunteer, pays the debt of another that, in good conscience, should have been paid by the one primarily liable. See, e.g., Loving v. Ponderosa Sys., Inc., 479 N.E.2d 531, 536"37 (Ind.1985). When a claim based on subrogation is recognized, "a court substitutes another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the right of the creditor in relation to the debt." Matter of Estate of Devine, 628 N.E.2d 1227, 1230 n. 4 (Ind.Ct.App.1994). It is settled that "[s]ubrogation confers no greater right than the subrogar had at the time the surety or indemnitor became subrogated. The subrogator [sic] insurer stands in the same position as the subrogor, for one cannot acquire by subrogation what another, whose rights he claims, did not have." American States Ins. Co. v. Williams, 151 Ind.App. 99, 106, 278 N.E.2d 295, 300 (1972) (internal quotation marks and citation omitted). The ultimate purpose of the doctrine, as with other equitable principles such as contribution, is to prevent unjust enrichment. 73 Am.Jur. 2D Subrogation " 4 (1974). This string of established common-law maxims adds up to: (1) Erie, having paid George for medical bills allegedly caused by Kellenberger's negligence, has acquired an interest in George's claim against Kellenberger to that extent; but (2) Erie gets no more than George had before the payment. | Subrogation clause in automobile insurance policy was at best ambiguous as to whether insurer had any contractual right to bring subrogation claim prior to insured's resolution of personal injury claim against tort-feasor where it did not alert lay reader that consequence of independent action would be to deprive insured of choice of forum; thus, clause did not afford independent right to suit prior to resolution of insured's claim. | Will a court substitute another person in place of a creditor when a claim based on subrogation is recognized? | Subrogation - Memo 400 - RM C.docx | ROSS-003311824-ROSS-003311825 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20911 | Tizon v. Com., 60 Va. App. 1 | 35=63.4(16) | Applying this standard of review, we find ample evidence supporting the jury's verdicts finding Tizon guilty of second-degree murder and of using a firearm during the commission of that murder. "In Virginia, every unlawful homicide is presumed to be murder of the second degree." Pugh v. Commonwealth, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982). "Murder at common law is a homicide committed with malice, either express or implied." Id.; see also Canipe v. Commonwealth, 25 Va.App. 629, 642, 491 S.E.2d 747, 753 (1997). Second-degree murder does not require a specific intent to kill. See Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989)."It is quite clear that one may slay maliciously without actually intending to kill." Ronald J. Bacigal, Criminal Offenses and Defenses 339 (2011"12). If he acts with malice, the accused need only intend "to perform the conduct" causing the victim's death. Id. at 340. | Police officer was not required to have probable cause to believe that defendant had acted with premeditation or malice in committing homicide, in order to arrest defendant, in case in which defendant was later prosecuted for second-degree murder; facts known to arresting officer, including presence of dead body with gunshot wounds, handgun dropped by defendant, and neighbor's report that defendant stated she had shot victim, established probable cause for any number of other arrestable offenses, and quantum of probable cause was not required to be specific to a murder charge. U.S.C.A. Const.Amend. 4. | Is specific intent to kill required for second degree murder? | Homicide - Memo 99 - RK.docx | ROSS-003312106-ROSS-003312107 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 20912 | Merriman Investments v. Ujowundu, 123 So. 3d 1191 | 308=1 | In cases involving an agent's wages, federal taxation cases provide some guidance. There, it is generally accepted "that where an agent earns income on behalf of the principal within the scope of the agency and remits the income to the principal according to the agency relationship, the income is the principal's and not the agent's." If a member of a religious order earns income as an agent of and on behalf oftheorder, and gives that money to the order pursuant to his vow of poverty, that sum becomes income to the order and the individual is not taxed on it. Conversely, if a member of a religious order earns income in his individual capacity and gives the money to the order pursuant to his vow of poverty, that sum is income to him and is subject to federal income tax. Because of the potential for fraud, the courts require proof of an actual agency. ("To prove assignment of income on an agency theory ... [taxpayers] must show that a contractual relationship existed between their secular employers and their religious order, and that the religious order controlled or restricted the taxpayers' use of the money purportedly turned over to the order."). | Evidence was insufficient to establish that an agency relationship existed between judgment debtor, a hospital employee, and religious order, and thus the trial court erred in dissolving the writ of garnishment for judgment debtor's wages on the basis that the wages did not belong to her but belonged to the order; there was no evidence from religious order acknowledging that judgment debtor acted as its agent or that it controlled the actions of debtor. West's F.S.A. S 77.07. | "Where an agent earns income on behalf of the principal within the scope of the agency and remits the income to the principal according to the agency relationship, does the income belong to the principal or the agent? " | Principal Agent - Memo 39 - VP_58559.docx | ROSS-0033191B5 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 20913 | In re B.C. Rogers Poultry, 455 B.R. 524 | 366=38 | The Court must measure Rogers and Williams' subrogation claim in the same way as the subrogation claim of a secondary party. A standby letter of credit resembles, to a certain extent, a guarantee for another's performance. Subrogation has been defined as "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Black's Law Dictionary 1563"64 (9th ed. 2009). Under Mississippi law, two different types of subrogation exist: (1) equitable subrogation that arises from operation by law, and (2) conventional subrogation that arises from contract. Union Mortg., Banking & Trust Co. v. Peters, 72 Miss. 1058, 18 So. 497, 500 (1895). Accordingly, a party who is not a party to a contract may assert a right of equitable subrogation based on the equities of the situation. The doctrine of equitable subrogation applies "whenever any person, other than a mere volunteer, pays a debt or demand which in equity and good conscience should have been paid by another, or where one finds it necessary for his own protection to pay the debt for which another is liable." First Nat'l Bank of Jackson v. Huff, 441 So.2d 1317, 1319 (Miss.1983). The principle of equitable subrogation is not reserved only for the rights of a creditor. Indeed, "a surety can be subrogated not only to the rights of the creditor, but also the rights of the principal on whose behalf the surety paid." In re Big Idea Prods., Inc., 372 B.R. 388, 397 (Bankr.N.D.Ill.2007); see Ellis v. Powe, 645 So.2d 947, 951 (Miss.1994) ("Subrogation is the substitution of one person in the place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities"); accord Travelers Indem. Co. v. Clark, 254 So.2d 741, 745 (Miss.1971); Oxford Prod. Credit Ass'n. v. Bank of Oxford, 196 Miss. 50, 16 So.2d 384, | In determining whether subrogation remedy would result in prejudice or injury to subrogor, rendering equitable subrogation unavailable under Mississippi law, courts consider (1) whether applying equitable subrogation will prevent unjust enrichment, and (2) whether the party seeking equitable subrogation has clear equities that are superior to the competing equities of third parties who would be affected by the subrogation remedy. | "When can the doctrine of ""equitable subrogation"" be applied?" | Subrogation - Memo 176 - ANG C.docx | ROSS-003325036-ROSS-003325038 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 20914 | Cahn v. Reid, 18 Mo. App. 115 | 343=2410 | Now, whether this testimony related to one occasion or two, we cannot say. If the time spoken of by plaintiff was prior to the time when he, his attorney, and the sheriff went to defendant's office, the action was not brought out of time. If, however, there was but one offer and tender, and that, after making the affidavit, filing the suit, and issuing the writ, we think the action premature and that it should abate. The rescission is the first thing to be done and is an absolute pre-requisite to the right to sue. It is said in Pearsal v. Chapin (44 Pa. St. 9-12), that "in actions of ejectment, replevin, trover, assumpsit, or other form, for the purpose of recovering back anything, as on the rescission of a contract, the very first thing to be done, after showing that the plaintiff parted with the thing in pursuance of the contract alleged, is, to show that the plaintiff has rescinded the contract, by doing, or offering to do, all that was necessary and reasonably possible to restore the parties to the condition in which they were before the contract, and then to show that he had good ground to rescind it. This is the order demanded by the very nature of the action. He is not suing for a rescission, or to obtain one, but for the results or consequences of a rescission, on the ground that he has already exercised his right to rescind, given by the law. There is hardly a discordant thought in the reports, that these are the essential elements of a rescission, and of the action founded upon it in case of fraud." To the same effect is the case of Melton v. Smith (65 Mo. 315). The case of Wilbur v. Flood (16 Mich. 40), was, like this, an exchange of goods for real estate, in which fraud was charged against the party trading the land. The court, in that case, said: "Where land has been conveyed in exchange for personal property, and the grantee seeks to repudiate the bargain for fraud, he cannot reclaim his goods without tendering a re-conveyance; and a mere offer to "trade back" without such conveyance or tender, is no rescission. | Where defendant by false and fraudulent misrepresentations induced plaintiff to trade a stock of merchandise for land, a proposition by plaintiff to rescind the trade, and a tender by him of a deed to the land, the proposition and tender being made before the institution of a replevin action to recover the goods, were a sufficient rescission to support the action; but, if not made until after the making of the affidavit, the filing of the suit, and issuance of the writ, the action was premature. | "When a grantee seeks to repudiate a bargain for fraud, can he reclaim his goods without tendering a re-conveyance? " | Exchange of Property - Memo 13 - RK.docx | ROSS-003325276-ROSS-003325277 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20915 | People v. Goins, 136 Ill. App. 3d 582 | 67+2 | One of defendant's contentions on appeal, not raised below, is that the residential burglary statute (Ill.Rev.Stat.1983, ch. 38, par. 19-3) is unconstitutional. The same arguments advanced in support of this position have been decided by this court in People v. Sturlic (1985), 130 App.3d 120, 85 Ill.Dec. 587, 474 N.E.2d 1, where we found the residential burglary statute was not unconstitutional. Thus, we adhere to that decision and again reject the arguments made against the constitutionality of the statute. | Residential burglary statute, S.H.A. ch. 38, P 19-3, is constitutional. | Are residential burglary statutes constitutional? | Burglary - Memo 64 - RK.docx | ROSS-003327917-ROSS-003327918 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 20916 | Wolsey, Ltd. v. Foodmaker, 144 F.3d 1205 | 25T+114 | According to Judge Weinstein's analysis, parties agree to submit to arbitration under the FAA when they "agree to submit a dispute for a decision by a third party." See AMF Inc., 621 F.Supp. at 460. In addition, according to the Third Circuit's analysis, the parties must not only agree to submit the dispute to a third party, but also agree not to pursue litigation "until the process is completed." See Harrison, 111 F.3d at 350. Neither the Third Circuit nor Judge Weinstein held that the arbitrators's decision must be binding for the FAA to apply. Judge Weinstein stated that "[t]he arbitrator's decision need not be binding in the same sense that a judicial decision needs to be to satisfy the constitutional requirement of a justiciable case or controversy." AMF Inc., 621 F.Supp. at 460, and the Third Circuit explicitly declined to address "the question whether the FAA applies to nonbinding arbitration in general." Harrison, 111 F.3d at 350. | Arbitration need not be binding in order to fall within scope of Federal Arbitration Act (FAA). 9 U.S.C.A. 5 2. | Is an arbitrators decision as binding as a judicial decision? | Alternative Dispute Resolution - Memo 4 - VP.docx | LEGALEASE-00000100-LEGALEASE-00000101 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 20917 | People v. Warner, 104 Mich. 337 | 181+8 | It is next argued that the names to the order were fictitious, and therefore the crime of forgery was not committed. The common"law definition of "forgery" is "a false making, or a making mala animo of any written instrument with intent to defraud."The present case is clearly within this definition. The authorities, moreover, lay down the rule as follows: "Signing fictitious names, or the names of nonexisting firms or persons, to an instrument, with an intention to defraud, is a false making, and constitutes forgery."8 Am. & Eng. Enc. Law, 471, and authorities there cited. The judgment is affirmed. The other justices concurred. | Though the names of both the drawee and the payee of a forged check be fictitious, the false making of it within intent to defraud constitutes forgery. | What is forgery under common law? | Forgery - Memo 1 - RMM.docx | LEGALEASE-00000130-LEGALEASE-00000131 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 20918 | LSREF2 Cobalt (TX) v. 410 Centre LLC, 501 S.W.3d 626 | 83E+308 | On appeal, 410 Centre and Urbahns argue that Cobalt failed to conclusively establish its claims because it did not prove that the foreclosure was properly conducted and that Cobalt was the "holder" of the guaranty. But these arguments are not directed at elements of Cobalt's claims. Cobalt was not required to prove that the foreclosure was properly conducted in order to recover on the note. See Hudspeth, 985 S.W.2d at 479 (listing the elements to recover a deficiency on a note); Clark, 658 S.W.2d at 295"96 (same). Nor was Cobalt required to prove that it was the "holder" of the note in order to recover under the guaranty. A guaranty is not a negotiable instrument. See Tex. Bus. & Com. Code Ann. " 3.104(a) (West Supp.2015). Thus, Cobalt was not required to prove it was the "holder" of the guaranty. The evidence, however, did conclusively establish that the guaranty was assigned to Cobalt. | A guaranty is not a negotiable instrument. | Is guaranty a negotiable instrument? | Guaranty - Memo 4 - RM.docx | ROSS-003296228-ROSS-003296230 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 20919 | Rudbart v. N. Jersey Dist. Water Supply Comm'n, 238 N.J. Super. 41 | 277+11 | We consider next whether defendants' failure to give notice by mail to the noteholders of the early redemption was such unconscionable or unfair conduct. The leading cases dealing with the fairness of notice have involved the requirements of the Due Process Clause of the Fourteenth Amendment. In that context, the courts have recognized that the fairness of a method of notice "depends on the particular circumstances." Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Where substantial property rights are involved, ordinarily "within the limits of practicality notice must be such as is reasonably calculated to reach interested parties." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950). Notice by publication in the newspaper is considered adequate under some circumstances, especially where it is supplemental to other action likely to reach the affected party or where it is not reasonably possible or practical to give more adequate notice. Id., 339 U.S. at 316"318, 70 S.Ct. at 658"659. However, if substantial rights are involved, no other notice is likely to come to the attention of the affected party and it is feasible to provide more reliable notice, publication is not considered a fair form of notice. Id., 339 U.S. at 318"320, 70 S.Ct. at 659"660. The Court aptly observed in Mullane that: Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. Publication may theoretically be available for all the world to see, but it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property | Notice by publication in newspaper is considered adequate under some circumstances, especially where it is supplemental to other action likely to come to attention of affected party or where it is not reasonably possible or practical to give more adequate notice; however, if substantial rights are involved, no other notice is likely to come to attention of affected party and it is feasible to provide more reliable notice, publication is not considered a fair form of notice. | How is fairness of a method of notice determined? | 10508.docx | LEGALEASE-00089366-LEGALEASE-00089368 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20920 | Grannis v. Ordean, 234 U.S. 385 | 92+3975 | The fundamental requisite of due process of law is the opportunity to be heard. Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 236, 44 L. ed. 747, 750, 20 Sup. Ct. Rep. 620; Simon v. Craft, 182 U. S. 427, 436, 45 L. ed. 1165, 1170, 21 Sup. Ct. Rep. 836. And it is to this end, of course, that summons or equivalent notice is employed. But the inherent authority of the states over the titles to lands within their respective borders carriers with it, of necessity, the jurisdiction to determine rights and interests claimed therein by persons resident beyond the territorial limits of the state, and upon whom the ordinary judicial process cannot be served. The logical result is that a state, through its courts, may proceed to judgment respecting the ownership of lands within its limits, upon constructive notice to the parties concerned who reside beyond the reach of process. That this constitutes "due process' within the meaning of the 14th Amendment was recognized in Pennoyer v. Neff, supra, and is no longer open to question. Huling v. Kaw Valley R. & Improv. Co. 130 U. S. 559, 563, 32 L. ed. 1045, 1047, 9 Sup. Ct. Rep. 603; Arndt v. Griggs, 134 U. S. 316, 320, et seq., 33 L. ed. 918, 919, 10 Sup. Ct. Rep. 557; Lynch v. Murphy, 161 U. S. 247, 251, 40 L. ed. 688, 689, 16 Sup. Ct. Rep. 523; Roller v. Holly, 716 U. S. 398, 403, 44 L. ed. 520, 522, 20 Sup. Ct. Rep. 410. It is not disputed that the statutory scheme of publication and mailing, as established in Minnesota, for giving notice to nonresident defendants in actions quasi in rem, is, in its general application, sufficient to comply with the 14th Amendment. But the statute provides that "the summons shall be addressed by name to all the owners and lien holders who are known," and the contention is that the mistake of name in the present instance was fatal. | Service by publication and mailing of summons in partition, conformably to the local law, naming as party defendant Albert Guilfuss, assignee, and Albert B. Guilfuss, satisfied the due process of law clause of U.S.C.A. Const.Amend. 14, conferring jurisdiction, so as to render a judgment binding on Albert B. Guilfuss, assignee as to his lien; he not having appeared. | What are the requisites of a notice under due process? | Notice - Memo 1 - VP.docx | ROSS-003285448-ROSS-003285451 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20921 | State v. Stough, 318 Mo. 1198 | 110+134(2) | While the joint affidavit, filed in support of this application, recites that the affiants reside in different localities in the county, and purports to give their addresses, it does not appear, on the face of the affidavit, that such addresses, or places of residence, are located "in different neighborhoods of the county," as required by the statute. Moreover, this court has held that, "as the affidavits of these five or more persons from different neighborhoods is to operate as the proof of prejudice, in lieu of the inquiry conducted by the court as heretofore,the affidavits should state facts, and not legal conclusions, so that the court can determine whether the witness is competent to express an opinion on the subject." State v. Bradford, 314 Mo. 698, 285 S. W. loc. cit. 500. And in the separate concurring opinion of White, J., in the Bradford Case, it was further held that:"The five affidavits take the place of the two affidavits, and also dispense with additional proof. These five affidavits must come from citizens in different neighborhoods of the county. Therefore a joint affidavit would not satisfy the statute; there must be five separate affidavits which show the situation in five different neighborhoods of the county." Same, loc. cit. 500 (314 Mo. 698). | Joint affidavit for change of venue for prejudice of inhabitants, not showing affiants lived in different neighborhoods, held insufficient. Rev.St.1919, S 3973, as reenacted by Laws 1921, p. 206 (V.A.M.S. S 545.490). | Should an affidavit state facts or conclusions? | 003795.docx | LEGALEASE-00115826-LEGALEASE-00115828 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 20922 | Kunkel v. Fisher, 106 Wash. App. 599 | 20+60(2) | Although adverse possession and easements by prescription are often treated as equivalent doctrines, they have different histories and arise for different reasons. Adverse possession promotes the maximum use of the land, encourages the rejection of stale claims to land and, most importantly, quiets title in land. Easements by prescription do not necessarily further those same goals. Their principal purpose is to protect long-established positions. Easements by prescription are disfavored in the law because they effect a loss or forfeiture of the rights of the owner. On the other hand, adverse possession is not disfavored. The differences in the historical origins and rationales behind prescriptive easement and adverse possession have resulted in a single but important difference in how they are applied. | Under the doctrines of both prescriptive easement and adverse possession, a use is not adverse if it is permissive. | What purpose does the doctrine of adverse possession serve? | Adverse Possession - Memo 11 - AKA.docx | LEGALEASE-00000869-LEGALEASE-00000870 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | 1 |
| 20923 | Cox v. Weed Sewing-Mach. Co., 57 Miss. 350 | 309+6 | It is here insisted that the instrument sued on was a guaranty, and that notice of its acceptance by the plaintiff, and of the credit given under it, should have been given to the sureties, Cox and Deason. We do not consider the instrument sued on a guaranty, in the sense in which it has been held that a guarantor is entitled to notice of its acceptance and of the credit given under it. A guaranty has been defined to be a collateral engagement to answer for the debt, default or miscarriage of another person. De Colyar on Guaranty, 1. Brandt, in his excellent work on Suretyship and Guaranty, " 1, says: "A surety or guarantor is one who becomes responsible for the debt, default, or miscarriage of another person. The words "surety" and "guarantor" are often used indiscriminately as synonymous terms; but while a surety and a guarantor have this in common, that they are both bound for another person, yet there are points of difference between them which should be carefully noted." And, proceeding to point out this difference, the same author says: "A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning.... On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join." Tested by these rules, the defendants, Cox and Deason, would not be guarantors. They are joint obligors with Gibson, and not separate contractors. Their contract and liability are exactly the same as Gibson's. They bound themselves to do exactly what Gibson bound himself to do, neither more nor less. No breach of the bond can occur as to Gibson which is not equally a breach as to them, and what is a good performance as to Gibson is equally good as to them. Their promise is joint and several with Gibson's, original as his is, and not collateral to it in any sense whatever. Their counsel admit that, as to this | The sureties on a bond conditioned to answer for the defaults of a sewing-machine agent, who is the principal obligor, and to whom the bond is delivered, are neither guarantors nor sureties on a guaranty, and are not entitled to notice of the obligee's acceptance of the bond, or of the agent's subsequently contracted debts. | How is a surety different from a guarantor? | Guaranty - Memo 17 - AKA.docx | LEGALEASE-00000965-LEGALEASE-00000966 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20924 | In re Kreisler, 407 B.R. 321 | 51+2932 | Whether the Debtor is a guarantor, that is secondarily liable under the terms of the Note, or a surety that is primarily liable, First Commercial "will have no cause of action [against the Debtor] until the principal has defaulted...." See Earth Foods, 325 Ill.Dec. 671, 898 N.E.2d at 724. Although First Commercial attempts to draw a significant line between a surety and a guarantor, for the most part, the differences between the two legal relationships are merely academic. See id. ("[A]side from the parties' status as parties to the original or a collateral contract, the most significant implications of the distinction [between a guarantor and surety] ... are that (1) some jurisdictions do not allow guarantors, who are not parties to the original contract, to be joined in the creditor's suit against the principal; and (2) guarantors are often entitled to notice of the principal's default."). The Trustee correctly notes that Illinois courts have long recognized that a "surety is generally not liable on his undertaking unless his principal is liable and in default on the underlying debt." First Arlington Nat'l Bank v. Stathis, 90 Ill.App.3d 802, 46 Ill.Dec. 175, 413 N.E.2d 1288, 1294 (1980) (internal quotation omitted) (emphasis supplied). This is critical and outcome determinative for this matter. | Regardless of whether Chapter 7 debtor was treated as guarantor or surety on bank debt for which he had agreed to be liable, claim that creditor had filed for debtor's liability as guarantor/surety had to be disallowed, where bank, the principal obligor, had not defaulted and was continuing to make routine payments pursuant to terms of underlying promissory note; however, order disallowing claim would be without prejudice to creditor's ability to move for reconsideration if bank defaulted. 11 U.S.C.A. S 502(j). | How is a surety different from a guarantor? | 003955.docx | LEGALEASE-00115890-LEGALEASE-00115891 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 20925 | Clough v. Cook, 10 Del. Ch. 175 | 358+22 | In Tritton v. Foote, 2 Bro. C. C. 636, s. c., 2 Cox, 171, Lord Thurlow, Chancellor, decreed specific performance of a covenant in a lease to renew under the same covenants exclusive of the covenant of renewal. There is some question whether this is correct. See note to the above case in 29 Eng. Rep. Reprint, 353. But however that may be, the lessee is necessarily entitled to have the same kind of a lease, even if it makes it perpetually renewable from year to year, for such was clearly so stated in legal effect in the lease. So also the contract will be enforced against a grantee of the lessor who took title with notice of the lease and its agreement for renewal. 3 Pomeroy's Equity Jurisprudence, * 1405, note 2; Haughwout v. Murphy, 22 N. J. Eq. 531, 547. In the latter case the court said: "If the vendor should again sell the estate of which, by reason of the first contract, he is only seised in trust, he will be considered as selling it for the benefit of the person for whom, by the first contract, he became trustee, and therefore liable to account. *** Or the second purchaser, if he have notice at the time of the purchase of the previous contract, will be compelled to convey the property to the first purchaser". | A covenant to renew from year to year at the lessee's option in a lease of real estate is enforceable against a purchaser of the property with notice of the lease and the covenant to renew. | "Can a second purchaser, having notice of a previous contract, be compelled to convey to a former purchaser holding such previous contract?" | 05026.docx | LEGALEASE-00078091-LEGALEASE-00078092 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 20926 | Bonnell v. Bargeron, 162 Ga. 804 | 20+4 | It will be observed that Mrs. Lydia Bonnell took only a life estate in the property conveyed by the deed to her husband as trustee by her father, with the power of disposal by will of such property, and in default of such appointment the land and premises should belong to her "children in fee simple absolutely." It appears from the petition that Mrs. Bonnell did devise the land in question to her son, Lawrence Bonnell, who is the plaintiff in the present suit. It also appears from the petition that during the lifetime of Mrs. Bonnel she executed a loan deed to the land in controversy, and that the land was sold under foreclosure proceedings, and the same was bought by the predecessors in title of the defendants. It will be observed that the deed from David Bailey to John C. Bonnell, trustee for Lydia Bonnell, was executed on July 6, 1866, and the trust thereby created became executed on the passage of the Married Woman's Act in December, 1866. Trammell v. Inman, 115 Ga. 874 (2), 42 S. E. 246; Follendore v. Follendore, 110 Ga. 359, 362, 35 S. E. 676; Overstreet v. Sullivan, 113 Ga. 891, 39 S. E. 431. As already observed, Mrs. Bonnell executed a fee-simple title to the land in controversy to the loan company, under which the defendants claim title with possession for more than 20 years. Mrs. Bonnell could convey to the loan company no greater estate than she already had, which was only a life estate with power of disposition by will. Therefore, it follows that the purchasers at the sheriff's sale under the loan deed secured only such interest in the land in controversy as Mrs. Bonnell had, and that, as already stated, was only a life estate. See Howard v. Henderson, 142 Ga. 1, 82 S. E. 292 | Where, under deed in trust to pay usufruct to grantee's wife and to convey to persons wife by will should appoint, and in default of appointment land was to belong to wife's children, grantee held legal title in trust, not only to wife's interest, but to contingent remainders of children, parties holding adversely under color of title for more than prescriptive period before wife's death held to have good title thereto. | What happens when a life tenant conveys a greater estate than they possess? | 004239.docx | LEGALEASE-00115980-LEGALEASE-00115982 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 20927 | Dell Webb Communities v. Carlson, 817 F.3d 867 | 170B+2235 | The Court in Stolt"Nielsen S.A. v. AnimalFeeds International Corp. took its refusal to "'force unwilling parties to arbitrate' contrary to their expectations" one step further. 559 U.S. at 686, 130 S.Ct. 1758 (quoting First Options, 514 U.S. at 945, 115 S.Ct. 1920). There, it announced a rule for determining whether an arbitration agreement permits class arbitration. The Court found that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." Id. at 685, 130 S.Ct. 1758. Rather, the Court held that parties cannot be forced to arbitrate on a class-wide basis absent "a contractual basis for concluding that the party agreed to do so." Id. at 684, 130 S.Ct. 1758. | Federal Arbitration Act (FAA) does not create any independent federal-question jurisdiction, but rather only permits federal district court to compel arbitration when court would have jurisdiction over suit on underlying dispute, through diversity of citizenship or some other independent basis. 9 U.S.C.A. S 1 et seq. | Can parties be forced to arbitrate on a class-wide basis? | Alternative Dispute Resolution - Memo 54-JS.docx | ROSS-003285819-ROSS-003285820 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 20928 | W. Media v. Merrick, 224 Mont. 28 | 192+1 | Western Media contends Merrick's sale of the radio station included goodwill though not specifically mentioned. We agree. The contract transferred "all fixed and other assets, tangible and intangible" to Western Media. Goodwill is considered to be an intangible asset of a business. 38 Am.Jr.2d Goodwill " 3, pp. 913"14. | Goodwill is intangible asset of business. | Is the nature of goodwill intangible? | Good Will - Memo 1 - RK_62191.docx | ROSS-003278740-ROSS-003278741 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20929 | Edwards Aquifer Auth. v. Bragg, 421 S.W.3d 118 | 148+2.1 | However, takings claims fall into two distinct categories and occur at different times depending on whether the taking arises in the context of a statutory condemnation context or arises in an inverse condemnation context. See Kopplow Dev., Inc. v. City of San Antonio, 399 S.W.3d 532, 536 (Tex.2013). In a statutory condemnation proceeding under Property Code section 21.042, generally, the government compensates the owner before appropriating property, either by paying a mutually agreed price or by paying the value as determined at the statutory proceeding. Westgate, Ltd. v. State, 843 S.W.2d 448, 452 (Tex.1992). Property Code Chapter 21 governs condemnation proceedings when "an entity with eminent domain authority wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages...." Tex. Prop.Code " 21.012(a) ("[T]he entity may begin a condemnation proceeding by filing a petition in the proper court."). A condemnation proceeding may be commenced to condemn real property or to acquire water rights. See id. "" 21.0111".0121. The assessment of damages when a portion of or an entire tract or parcel of real property is condemned is made "according to evidence presented at the [condemnation] hearing." Id. " 21.042. These assessments are made at the time of trial because that is the time at which the government's authority to condemn is determined. See id. " 21.003 ("A district court may determine all issues, including the authority to condemn property and the assessment of damages, in any suit ..."); see also Danforth v. United States, 308 U.S. 271, 283"84, 60 S.Ct. 231, 84 L.Ed. 240 (1939) (in a condemnation proceeding, a taking does not occur until compensation is determined and paid); City of Fort Worth v. Corbin, 504 S.W.2d 828, 830 (Tex.1974) (compensation for land taken by eminent domain is measured by market value of land at time of taking because "[t]his is the | Knowledge of existing regulations at the time property is purchased is to be considered in determining whether a regulation interferes with landowner's investment-backed expectations as would support a regulatory takings claim. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, S 17. | How are taking claims in relation to eminent domain categorized under the law? | Eminent Domain - Memo 18 - AKA.doc | LEGALEASE-00002806-LEGALEASE-00002807 | Condensed, SA, Sub | 0.86 | 0 | 1 | | | 1 |
| 20930 | Tatum v. The Dallas Morning News, 493 S.W.3d 646 | 237+1 | Defamation has two forms: slander and libel. Austin v. Inet Techs., Inc., 118 S.W.3d 491, 496 (Tex.App."Dallas 2003, no pet.). Slander is an oral defamation. Id. This case involves libel, which is a defamation expressed in written or other graphic form. See Tex. Civ. Prac. & Rem.Code Ann. " 73.001 (West 2011). | "Slander" is an oral defamation. | Is slander a form of oral defamation? | Libel and Slander-Memo -8 - RM.docx | ROSS-003281607-ROSS-003281608 | Condensed, SA | 0.88 | 0 | 1 | 1 | 0 | 1 |
| 20931 | Koo Pil Chung v. Hair Trend USA, 322 Ga. App. 429 | 30+440 | A trial court without venue lacks authority to issue an order or judgment, and any such order or judgment is void. First American Title Ins. Co. v. Broadstreet, 260 Ga App. 705, 707(1), 580 S.E.2d 676 (2003). OCGA " 9"11"8(a)(2) requires that the "original complaint shall contain facts upon which the court's venue depends ..." Where the complaint fails to set forth facts establishing venue it is subject to dismissal. Chancey v. Hancock, 225 Ga. 715, 716, 171 S.E.2d 302 (1969). Further, [w]hen there has been no actual service, the judgment can successfully be collaterally attacked for lack of personal jurisdiction as void, because there has been no real default for failure to answer a complaint that was never served, and thus, OCGA " 9"11"12(b) and affirmative defenses cannot be waived. (Citation and punctuation omitted.) Focus Healthcare Med. Ctr., Inc. v. O'Neal, 253 Ga.App. 298, 299, 558 S.E.2d 818 (2002). Here, the facts do not show that actual service was made. | A notice of appeal divests the trial court of jurisdiction to supplement, amend, alter, or modify the judgment while the appeal of that judgment remains pending. West's Ga.Code Ann. 5-5-6-46(a). | Is a judgment of a trial court without venue void? | Venue - Memo 17 - RK.docx | ROSS-003324522-ROSS-003324523 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20932 | Patel v. State, 60 N.E.3d 1041 | 203+503 | We cannot conclude that this would be permissible under Baird. We acknowledge that, unlike Patel's baby, the victim's fetus in Baird was not delivered alive or as the result of an abortion. But we read our supreme court's opinion in Baird as standing for the unremarkable proposition that illegal abortions are governed by "the provisions regulating abortion" (now in Title 16), and not the feticide statute (still in Title 35). Since the legislature enacted the feticide statute in 1979, it has been used to prosecute third parties who knowingly terminate pregnancies by using violence against the expectant mother without her consent. See, e.g., Shane v. State, 716 N.E.2d 391 (Ind.1999) (shooting); Hicks v. State, 690 N.E.2d 215 (Ind.1997) (shooting); Baird, 604 N.E.2d 1170 (strangulation); Perigo v. State, 541 N.E.2d 936 (Ind.1989) (beating with baseball bat); Abbott v. State, 535 N.E.2d 1169 (Ind.1989) (shooting). This is the first case that we are aware of in which the State has used the feticide statute to prosecute a pregnant woman (or anyone else) for performing an illegal abortion, as that term is commonly understood. We find this to be an abruptdeparture from the foregoing cases as well as the much more recent Kendrick v. State, in which the State used the feticide statute to prosecute a bank robber who shot a pregnant teller in the abdomen. 947 N.E.2d 509 (Ind.Ct.App.2011), trans. denied, cert. denied (2012). In its appellate brief in Kendrick, the State "ma[de] clear that the victim of feticide is the mother (the one whose pregnancy has been terminated)." Id. at 514 n. 7. The State's about-face in this proceeding is unsettling, as well as untenable under Baird. | The statute prohibiting feticide does not apply to pregnant women who have abortions. West's A.I.C. 35-42-1-6. | Can a pregnant woman be charged with the crime of feticide? | 000420.docx | LEGALEASE-00117726-LEGALEASE-00117728 | Condensed, SA, Sub | 0.94 | 0 | 1 | | 1 | 1 |
| 20933 | Mangano v. Town of Babylon, 111 A.D.3d 801 | 313A+114 | A manufacturer who places a defective product into the stream of commerce may be liable for injuries or damages caused by such product (see Gebo v. Black Clawson Co., 92 N.Y.2d 387, 392, 681 N.Y.S.2d 221, 703 N.E.2d 1234; Liriano v. Hobart Corp., 92 N.Y.2d 232, 235, 677 N.Y.S.2d 764, 700 N.E.2d 303; Amatulli v. Delhi Constr. Corp., 77 N.Y.2d 525, 532, 569 N.Y.S.2d 337, 571 N.E.2d 645). Depending upon the factual circumstances, a person injured by a defective product may maintain causes of action under the theories of strict products liability, negligence, or breach of warranty (see Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204). | Depending upon the factual circumstances, a person injured by a defective product may maintain causes of action under the theories of strict products liability, negligence, or breach of warranty. | Is a manufacturer liable for injuries resulting from placing a defective product into the stream of commerce? | Products Liability - Memo 15 - TH.docx | ROSS-003284610-ROSS-003284611 | Condensed, SA | 0.71 | 0 | 1 | 0 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20934 | Traditional Cat Assn. v. Gilbreath, 118 Cal. App. 4th 392 | 302÷360 | We find the reasoning of the court in Firth v. State persuasive. As the court in Firth v. State noted, the need to protect Web publishers from almost perpetual liability for statements they make available to the hundreds of millions of people who have access to the Internet is greater even than the need to protect the publishers of conventional hard copy newspapers, magazines and books. Importantly, the interests in free expression, which the court in Firth v. State found were worthy of protection by application of the single-publication rule to Web pages, are the very same interests which the court in Shively v. Bozanich relied upon in rejecting the notion the single-publication rule should be subject to any discovery exception. Given the protection the court gave those interests in Shively v. Bozanich, we have very little doubt that, like the court in Firth v. State, our Supreme Court would find that those interests require application of the single-publication rule to Web page publication. | A motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute requires a trial court to engage in a two-step process: first, the court decides whether the defendant has made a threshold prima facie showing that the defendant's acts, of which the plaintiff complains, were ones taken in furtherance of the defendant's constitutional rights of petition or free speech in connection with a public issue; if the court finds that such a showing has been made, then the burden shifts to the plaintiff to establish a probability of prevailing on the claim by making a prima facie showing of facts that would, if proved, support a judgment in the plaintiff's favor. West's Ann.Cal.C.C.P. S 425.16. | Does the single publication rule apply to content published on the internet? | 000827.docx | LEGALEASE-00117874-LEGALEASE-00117875 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 20935 | Sadlier v. Payne, 974 F. Supp. 1411 | 78÷1088(5) | Moreover, the plaintiff asserts that because the defendants acted in a court that displayed the offending yellow-fringed flag they engaged in "constructive treason" by "betraying the state into the hands of a foreign power." Yet the doctrine of constructive treason has never been adopted in the United States. | Inmate who sued state judge, state prosecutor and defense attorney for civil rights and constitutional violations and "constructive treason" had to show that his convictions or sentences were reversed on direct appeal, expunged by executive order, declared invalid by state tribunal, or called into question by federal court's issuance of writ of habeas corpus, as claims were based on constitutional violations that occurred in relation to underlying state criminal convictions. 42 U.S.C.A. S 1983. | Is the doctrine of constructive treason adopted in the United States? | 000880.docx | LEGALEASE-00117819-LEGALEASE-00117820 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 20936 | Palmer v. Scott, 68 Ala. 380 | 289÷674(3) | The testimony shows, that the money sued for went into the business, and was used by the firm of D. M. Scott & Co., a mercantile partnership, and there is no proof that it was ever accounted for, or paid to the owner. This was money which, ex "quo et bono, belonged to the insurance company. The mercantile firm had no right to, or interest in it. It was money had and received by the mercantile partnership for the use of the rightful owner, the insurance company. This created a legal liability on the partnership, whether McConnell knew it or not. He can not retain the money, which went into, and was used by the firm and refuse to account for it, on the ground that he was not informed of its use. Hogan & Co. v. Reynolds, 8 Ala. 59, and authorities on the briefs of counsel. Mercantile partnerships are presumed to have authority to borrow money, and each partner is presumed to have authority to sign the partnership name to paper, commercial or otherwise, in evidence or liquidation of the firm's debts.--Richardson v. French, 4 Metc. (Mass.) 577; Coll. on Part. (6th Ed.), " 412. The Circuit Court erred both in the charge given and in the charge refused. | Where an agent collected money belonging to his principal and mingled it with the money of a firm of which he was a member, and it was used by the firm, a partnership liability was created, though the other partner was ignorant of the conversion. | Do mercantile partnerships have the right to borrow money? | 001864.docx | LEGALEASE-00118791-LEGALEASE-00118793 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 20937 | BEG Investments v. Alberti, 34 F. Supp. 3d 68 | 148÷2.1 | Defendants are correct in noting that five Justices of the Supreme Court have rejected the theory that "an obligation to pay money constitutes a taking." Commonwealth Edison Co v. United States, 271 F.3d 1327, 1339 (Fed.Cir.2001) (explaining the plurality holding in Eastern Enterprises v. Apfel, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998)). Since then, a majority of the federal appellate courts have held that a mere payment of money, without more, is not a taking within the meaning of the Takings Clause. As explained in Commonwealth Edison, these holdings take various forms.Some courts have squarely held that money is not "property" within the meaning of the Takings Clause. See, e.g., Unity Real Estate Co. v. Hudson, 178 F.3d 649, 674"78 (rejecting the application of a takings analysis to the tax imposed by the Coal Act); Atlas Corp. v. United States, 895 F.2d 745, 756 (Fed.Cir.1990) ("Requiring money to be spent is not a taking of property."). Other courts, taking a more transactional approach, have concluded that government-imposed obligations to pay money are not the sort of governmental actions subject to a takings analysis. See Branch v. United States, 69 F.3d 1571, 1576"77 (Fed.Cir.1995) ("[T]he principles of takings law that apply to real property do not apply in the same manner to statutes imposing monetary liability."); Meriden Trust & Safe Deposit Co. v. FDIC, 62 F.3d 449, 455 n. 2 (2d Cir.1995) (per se takings analysis is inapplicable to congressional imposition of monetary liability); Commercial Builders v. Sacramento, 941 F.2d 872, 876 (9th Cir.1991) (a purely financial exaction does not constitute a taking). And still other courts have touched upon this issue in holding, for example, that monetary obligations incidentally imposed on a property holder as the result of the government's physical taking of real property (i.e., the cost of moving a business from condemned property) are not compensable. See, e.g., United States v. General Motors Corp., | Payment of money is not a taking within the meaning of the Takings Clause. U.S. Const. Amend. 5. | Can government-imposed payment of money result in a compensable taking? | 001533.docx | LEGALEASE-00118967-LEGALEASE-00118968 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 20938 | Palmer v. Scott, 68 Ala. 380 | 289÷674(3) | The testimony shows, that the money sued for went into the business, and was used by the firm of D. M. Scott & Co., a mercantile partnership, and there is no proof that it was ever accounted for, or paid to the owner. This was money which, ex "quo et bono, belonged to the insurance company. The mercantile firm had no right to, or interest in it. It was money had and received by the mercantile partnership for the use of the rightful owner, the insurance company. This created a legal liability on the partnership, whether McConnell knew it or not. He can not retain the money, which went into, and was used by the firm and refuse to account for it, on the ground that he was not informed of its use. Hogan & Co. v. Reynolds, 8 Ala. 59, and authorities on the briefs of counsel. Mercantile partnerships are presumed to have authority to borrow money, and each partner is presumed to have authority to sign the partnership name to paper, commercial or otherwise, in evidence or liquidation of the firm's debts.--Richardson v. French, 4 Metc. (Mass.) 577; Coll. on Part. (6th Ed.), " 412. The Circuit Court erred both in the charge given and in the charge refused. | Where an agent collected money belonging to his principal and mingled it with the money of a firm of which he was a member, and it was used by the firm, a partnership liability was created, though the other partner was ignorant of the conversion. | Does a mercantile partnership have the right to borrow money? | 002291.docx | LEGALEASE-00119147-LEGALEASE-00119149 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20939 | Richardson v. Big Indian Creek Watershed Conservancy Dist. of Gage & Jefferson Ctys., 181 Neb. 776 | 148+146 | Benefits resulting from public improvements where property is taken by condemnation are of two kinds, special and general. Special benefits are those which are peculiar to the tract taken, whereas general benefits are those which arise from the fulfillment of the public object which justified the taking. The burden of proving special benefits is on the condemner. The following from Backer v. City of Sidney, 166 Neb. 492, 89 N.W.2d 592, draws the distinction: "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. In other words the special benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to a desirable object, or in various other ways. | "General benefits" are those which arise from fulfillment of public object which justified the taking. | What are general benefits under taking? | Eminent Domain -Memo 98-VP.docx | LEGALEASE-00008150-LEGALEASE-00008151 | Condensed, SA | 0.91 | 0 | 1 | | | 1 |
| 20940 | Ford Hydro-Elec. Co. v. Town of Aurora, 206 Wis. 489 | 317A+101 | This case furnishes the test to be applied in ascertaining whether plaintiff was a public utility.The fact that it serves a single customer is not determinative. The question is whether the plant is built and operated to furnish power to the public generally. If it is, then the fact that it has presently only a single customer will not prevent it from being a public utility. An application of this test makes it clear that plaintiff is not a public utility. The record discloses that it was organized solely for the purpose of furnishing power to the Ford Motor Company, which owned all of its stock and as to which it was a subsidiary. Its plant was not built or operated for furnishing power to the public generally. The fact that it has only one customer is not an accidental or a temporary condition. Only one customer was ever intended, and the change to a public utility form of organization was for the sole purpose of acquiring the right to condemnation. The company has not one foot of transmission line in this state; has made no effort to sell power in this state; has no facilities; has no franchises; and sought no franchises during the period before the surrounding country was pre-empted by other utilities. It has filed no schedule of rates. Upon the whole record, it must be concluded that there was no intention on the part of the plaintiff to operate its plant for the furnishing of power to the public generally, and that, whatever may be its potentialities, it is not presently a public utility under the rule laid down in the case of Cawker v. Meyer, cited supra. | Test of "public utility" does not depend on power corporation's number of customers, but whether its plant was built and operated to furnish power to public generally. St.1929, S 76.02 (W.S.A.). | Can a single customer be a public utility? | 001971.docx | LEGALEASE-00119656-LEGALEASE-00119657 | Condensed, SA, Sub | 0.88 | 0 | 1 | | 1 | 1 |
| 20941 | Middlesex Mut. Assur. Co. v. Vasil, 89 Conn. App. 482 | 366+1 | We reiterate that the goal of equitable subrogation is to avoid injustice by requiring payment from the party that occasioned the harm. Westchester Fire Ins. Co. v. Allstate Ins. Co., supra, 236 Conn. at 371, 672 A.2d 939. In such a case, when financial injustice and some potential for economic waste collide, subrogation jurisprudence places the weight of authority on preventing injustice. Accordingly, we extend the right of subrogation when the lease language supports its use | The object of equitable subrogation is the prevention of injustice; it is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. | What is the goal of equitable subrogation? | 002581.docx | LEGALEASE-00120143-LEGALEASE-00120144 | Condensed, SA | 0.45 | 0 | 1 | | 0 | 1 |
| 20942 | Mortg. Elec. Registration Sys. v. Roberts, 366+31(4) | 366+31(4) | This Court is required to give full effect to the purpose of these statutes: "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...." KRS 446.080. The rule in Wells Fargo meets this requirement because it allows equitable subrogation only in the relatively rare cases in which the subsequent lender has neither actual nor constructive notice of the existing lien. As an example, equitable subrogation would be available under the Wells Fargo approach if a party committed fraud such that the existing lien could not be located even by doing a proper title search. See State Savings Trust Company v. Spencer, 201 S.W. 967 (Mo.Ct.App.1918) (allowing subrogation when the borrower forged a subordination document and caused marginal satisfaction to be entered on the record of the deed). In such an instance, when the fraud is such that it is impossible to know a prior lien existed, the party had no actual or constructive knowledge. While the Wells Fargo rule means that equitable subrogation will rarely be available, the rule ensures that full effect is given to the intent and objects of the recording statutes. The statutory scheme will be overridden by the judicially created doctrine of equitable subrogation only in those rare circumstances in which equity truly requires it. | Equity and economic-policy claims made by mortgage holder were insufficient to necessitate a departure from the "Wells Fargo rule," under which equitable subrogation was not available if the lender had constructive knowledge of an existing lien, even if allowing equitable subrogation would have facilitated refinancing, and in theory, stemmed the threat of foreclosure, where such economic concerns were for the legislature, and not the courts, and the legislature had the option of addressing such long-term effects by creating an exception to the recording statutes for mortgage refinancing situations. KRS 446.080. | Is equitable subrogation a judicially favored doctrine? | Subrogation - Memo 42 -RM.docx | ROSS-003285879-ROSS-003285881 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 20943 | Republic of Rwanda v. Uwimana, 255 B.R. 669 | 51+3376(5) | As noted previously, an ambassador has authority to administer the funds of his or her country. However, just because an ambassador possesses authority does not mean that every exercise of that authority is valid. First Fidelity Bank v. Government of Antigua & Barbuda, 877 F.2d 189, 192 (2d Cir.1989). In First Fidelity, the Second Circuit addressed the issue of whether Antigua was bound by the actions of its ambassador, which included borrowing $250,000 to build a casino, and after failing to repay the loan, entering into a consent order on the country's behalf. The court determined that "an ambassador's actions under color of authority do not, as a matter of law, automatically bind the state that he represents. The facts of a given case must be examined, and the agency law of developed states ... provides the proper framework for that examination." Id. at 193.Thus, this court will turn to Maryland law to determine whether, assuming he feared for his life, Uwimana breached his fiduciary duty and committed a defalcation when he used the | Debtor's actions, in capacity as former ambassador of foreign government, in paying $30,000 to attorney for legal assistance in obtaining asylum for himself and other members of embassy after foreign government was overthrown and debtor-ambassador was directed to leave United States, was in nature of fiduciary "defalcation," such as would preclude discharge of any resulting indebtedness, though foreign government's former president had died under suspicious circumstances, and though debtor-ambassador had reason to fear that his life might be in danger unless he obtained asylum; there is no "fear of life" exception under "defalcation" provision of Bankruptcy Code. Bankr.Code, 11 U.S.C.A. § 523(a)(4). | Does an ambassadors action under color of authority automatically bind the state that the ambassador represents? | 003018.docx | LEGALEASE-00120533-LEGALEASE-00120534 | Condensed, SA, Sub | 0.32 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 0 | 1 | |
| 20944 | Smelcher v. State, 33 Ala. App. 326 | 203+520 | We have found no cases from this jurisdiction specifically holding that murder in the first degree and robbery may be joined in one indictment in separate counts.Murder is an offense against the person. While robbery is an offense against property, it is also an offense against the person, and in this aspect clearly is of the same nature as the crime of murder, and of the same family of crimes. Moreover, this court has held that "assault with intent to murder" and "assault with intent to rob" are offenses of the same general nature and belong to the same family of crimes. Wilson v. State, 31 Ala.App. 232, 14 So.2d 382. Analogically, the doctrine of the Wilson case, supra, necessarily leads to the conclusion that murder and robbery should be so considered. | "Murder" is an offense against the person. | Is murder an offense against the person? | 003176.docx | LEGALEASE-00120487-LEGALEASE-00120488 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 20945 | People v. Zajaczkowski, 293 Mich. App. 370 | 207+5 | In holding that stepsiblings were related by affinity, the Armstrong Court noted that the Random House College Dictionary (rev. ed.) defined "affinity" as "a 'relationship by marriage or by ties other than those of blood'" and that "[t]he common and ordinary meaning of affinity is marriage."Armstrong, 212 Mich.App. at 128, 536 N.W.2d 789. Consequently, the Court ruled that the "defendant and the victim were related by affinity because they were family members related by marriage."Id. Thus, the accepted meaning of affinity is a relationship that originates through marriage. | Although genetic testing indicated that victim's father was not defendant's biological father, defendant, who was convicted of first-degree criminal sexual conduct, lacked standing to challenge that he was the legitimate issue of the victim's father, who had been married to defendant's mother, and that he, therefore, was not "by blood" or "affinity" related to victim within meaning of criminal sexual conduct statute, providing that person is guilty of criminal sexual conduct in first degree if he engages in sexual penetration with victim and he is related to victim by blood or affinity to fourth degree; because defendant was conceived and born during his mother's marriage to victim's father, the strong presumption of legitimacy arose, and only defendant's mother and his legal father could rebut presumption with clear and convincing evidence in proper legal proceeding. | Does a relationship between a step-brother and step-sister come under the term affinity? | 003189.docx | LEGALEASE-00120545-LEGALEASE-00120546 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 20946 | People v. Hopkins, 38 Misc. 2d 459 | 35DH+1276 | Adultery, as thus defined, does not require that the act shall be voluntary as to each of the parties' (Signs v. State, 35 Okla.Cr. 340, 344, 250 P. 938, 940). "Where both the circumstances of force and consequently are present, it is not less incest because the element of rape is added, and it is not less rape because perpetrated upon a relative" (People v. Stratton, 141 Cal. 604, 608'609, 75 P. 166, 167'168). "In our judgment the better reasoning supports the conclusion that the consent of the female is not necessary to constitute the crime of incest by the male. It is his intent and his act that the law punishes him for" (David v. People, 204 Ill. 479, 486'487, 68 N.E. 540, 542). "[T]he male may be convicted of incest even though he accomplished the act without the consent of the female and against her will" (Gaston v. State, 95 Ark. 233, 235, 128 S.W. 1033, 1034). | Defendant's conviction of fornication in a Pennsylvania court did not necessarily adjudicate that the female consented to the sexual acts and consequently it did not necessarily contradict the operative facts on which the defendant's subsequent convictions in the same Pennsylvania court involving the same woman on charges of rape and assault with intent to rape depended, where defendant who had been convicted of assault with intent to rape in New York contended that Pennsylvania convictions could not be considered as felonies in determining defendant's status under New York law as a second felony offender. 18 P.S.Pa. SS 4721, 4722; Penal Law, S 1941. | Is the guilt or innocence of an accused in a prosecution for incest affected by the consent of the prosecutrix? | 003194.docx | LEGALEASE-00120550-LEGALEASE-00120551 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 20947 | State v. Kuntz, 130 Mont. 126 | 207+1 | This information likewise both before and after amendment followed in substance the language of our statute. The original as well as the amended statement of the offense intelligibly charges sexual intercourse by a father with his daughter. This is the gist of the crime denounced by the statute, which was not altered in the least by the amendment, in effect, that Kuntz was a married man, not single or unmarried, as at first the information had described him. Accordingly his case is ruled by State v. Crighton, 97 Mont. 387, 34 P.2d 511, rather than by State v. Fisher, supra. | Whether a father is married or unmarried at time he commits incest with daughter is not a material ingredient of incest, and, in either event, father is guilty. | Does it matter if a person who commits incest is married or unmarried? | 003207.docx | LEGALEASE-00120564-LEGALEASE-00120565 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 20948 | Spacecon Specialty Contractors v. Bensinger, 713 F.3d 1028 | 237+48(1) | Whether a matter is of public concern "must be determined on a case-by-case basis." Williams, 943 P.2d at 17. "In determining whether statements  involve a matter of public concern, [a court] must analyze the content, form, and context of the statements, in conjunction with the motivation or "point" of the statements as revealed by the whole record." McIntyre, 194 P.3d at 525 (quotation omitted); accord Snyder v. Phelps, """ U.S. """", 131 S.Ct. 1207, 1216, 179 L.Ed.2d 172 (2011). "[T]he balance should be struck in favor of a private plaintiff if his or her reputation has been injured by a non-media defendant in a purely private context." Williams, 943 P.2d at 18; accord People v. Ryan, 806 P.2d 935, 939'40 (Colo.1991); Rowe v. Metz, 195 Colo. 424, 579 P.2d 83, 84'85 (1978). Nevertheless, in Colorado, "[p]ublic concern is interpreted broadly." Hoeper v. Air Wisc. Airlines Corp., 232 P.3d 230, 241 (Colo.App.2009). | Any bias against construction contractor on part of filmmaker did not render messages conveyed in documentary film about contractor's alleged use and abuse of foreign workers matters of purely private rather than public concern, and, thus, actual malice standard was still applicable to contractor's defamation claim against filmmaker under Colorado law, even though filmmaker was a consultant for union, which paid for the film, and he delegated many of the critical film-making tasks to union members, knowing that union was embroiled in a campaign against contractor based on its alleged failure to pay employees area standards wages and benefits. | How do Courts determine whether statements involve a matter of public concern? | 003331.docx | LEGALEASE-00120616-LEGALEASE-00120617 | Condensed, SA | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 20949 | Cmty. Tr. Bank of Mississippi v. First Nat. Bank of Clarksdale, 150 So. 3d 683 | 366+31(4) | When determining whether equitable subrogation should apply, "[t]he controlling consideration is the actual facts. The question is : What is a natural justice under the actual facts of the situation?" Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923). Ultimately, determining whether equitable subrogation applies is done on a case-by-case basis. See Huff, 441 So.2d at 1319. Above all, subrogation must be equitable to the parties involved. "The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles." Id. "The doctrine of subrogation is one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice. It does not rest on contract, but upon principles of natural equity." Prestridge, 95 So. at 838 (internal citation omitted). Accordingly, although certain factors may weigh more heavily for or against subrogation, ultimately it is awarded only after carefully weighing all of the facts and circumstances and deciding what the fairest result would be. | To allow secondary lien holder subrogation over primary lien holder would be inequitable, regardless of whether secondary lien holder had actual knowledge of primary lien holder's lien; secondary lien holder was on constructive notice of the lien by virtue of its having been recorded in the office of the chancery clerk, allowing secondary lien holder to subrogate itself to the primary lien holder position would result in prejudice to primary lien holder not only by the amount of the new loan it would be placed behind, but also by the fact that loan involved two completely unknown and unanticipated parties, and secondary lien holder could file a claim against the title insurance company that insured against the risk of an intervening lien and negligently failed to inform anyone about it. West's A.M.C. S 89-5-7. | What is the controlling consideration when determining whether equitable subrogation should apply? | Subrogation - Memo 72 - VP C.docx | ROSS-003324091-ROSS-003324092 | Condensed, SA | 0.32 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20950 | Goodpaster v. City of Indianapolis, 736 F.3d 1060 | 148+2.1 | The bar owners next raise a takings claim, contending that the smoking ban goes "too far" and thus constitutes a taking. Takings jurisprudence encompasses four basic claims: permanent physical invasion, deprivation of all beneficial economic use, exactions, and partial regulatory takings. Lingle v. Chevron, U.S.A., Inc., 544 U.S. 528, 538"39, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). The bar owners' argument calls to mind the partial regulatory takings line of cases,4 and thus will be evaluated in accordance with Pennsylvania Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), and its progeny. A court applying Penn Central considers several factors to determine whether a diminution in value amounts to a taking: (1) the nature of the government action, (2) the economic impact of the regulation, and (3) the degree of interference with the owner's reasonable investment-based expectations. Bettendorf v. St. Croix Cty., 631 F.3d 421, 430 (7th Cir.2011). These factors do not provide a "set formula" for determining whether a taking has occurred, but rather are "designed to bar Government from forcing some people alone to bear public burdens which, in fairness and justice, should be borne by the public as a whole ..." Penn Central, 438 U.S. at 123"24, 98 S.Ct. 2646 (internal quotations omitted). | On a claim for partial regulatory taking, it is inappropriate to consider only the loss due to prohibited uses, without also considering the many profitable uses to which the property could still be put. U.S.C.A. Const.Amend. 5. | Is physical invasion an element of takings jurisprudence? | 003105.docx | LEGALEASE-00120693-LEGALEASE-00120694 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 20951 | City of Gulfport v. Orange Grove Utilities, 735 So. 2d 1041 | 148+9 | If the property is acquired through eminent domain, this section requires the exercise be consistent with Sections 11-27-1 through 11-27-51. Id. In this regard, we have held, "municipal utility statutes are subordinate to contrary provisions of the 1956 Act if it is clear that the legislature so intended." Cities of Oxford, Carthage, Louisville, Starkville & Tupelo, 704 So.2d at 69 (citing Mississippi Pub. Serv. Comm'n v. City of Jackson, 328 So.2d 656 (Miss.1976)). The provisions of the 1956 Act include the Municipally Owned Utilities Act and the Municipal Electric Power Plant Law of 1936 ("" 21-27-11, et seq. and 77-5-401, et seq.). Cities of Oxford, Louisville, Starkville & Tupelo, 704 So.2d at 69. | City lacked authority to condemn sewer and water utility's facilities up to five miles beyond the city limits; statute entitling municipality to condemn the facilities of any utility within the corporate limits of such municipality controlled over the general grant of authority in the Municipal Electric Power Plant Law. Code 1972, SS 21-27-11 et seq., 21-27-39, 77-3-17. | Are municipal utility statutes subordinate to the contrary provisions of the Public Utilities Act 1956 if the legislature intends it? | Public Utilities - Memo 63 - AM.docx | ROSS-003298306-ROSS-003298307 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20952 | Christus Spohn Health Sys. Corp. v. Ven Huizen, 2011 WL 1900174 | 92+2314 | The Ven Huizens also argue that the statute violates the Takings clauses of the United States and Texas Constitutions. See U.S. Const. amend V; Tex. Const. art. 1, "17. The three part test for identifying a constitutional taking is: (1) the state intentionally performed certain acts; (2) resulting in a taking of property; (3) for public use. Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex.1980). They urge that the "Takings clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation." The Ven Huizens claim that they have a private property interest in their common-law cause of action for damages for medical negligence. However, what they claim was taken was a right to bring a medical malpractice action apart from the provisions of the Tort Claims Act. Sections 285.071 and 285.072, however, do not bar individuals from filing a healthcare liability claim against a hospital district management contractor. Rather, the statute requires that the claim is subject to the Tort Claims Act. Even if we were to conclude that the right to file a health care liability claim unencumbered by the tort claims act was a constitutionally protected property interest, we find no evidence or authority that there was any taking for public use without just compensation. Therefore, the statute does not violate the Takings clause. | Statute permitting governmental immunity for contractors of hospital districts did not violate open courts doctrine of state constitution; statute did not prevent the filing of medical malpractice action, as plaintiffs suggested, rather the statute required claims against a hospital district management contractor to satisfy the prerequisites set forth in the tort claims act. Vernon's Ann.Texas Const. Art. 1, S 13; V.T.C.A., Health & Safety Code S 285.071. | Is the intentional act of state an element in constitutional taking? | 017352.docx | LEGALEASE-00120909-LEGALEASE-00120910 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 20953 | Borough of Grove City v. Pennsylvania Pub. Util. Comm'n, 95 Pa. Cmwlth. 188 | 317A+114 | Here the PUC, and we, must harmonize Section 2471 of The Borough Code with the Public Utility Code, which at 66 Pa.C.S. "" 1101 empowers the PUC by Certificate of Public Convenience to authorize utilities to serve the public in defined territories and at 66 Pa.C.S. " 1102(a)(2) forbids certificated utilities to abandon service without obtaining a PUC Certificate of Public Convenience. | Extent of a utility's service territory may be altered only by order of the Public Utility Commission. | Should the Borough Code and the Public Utility Code be read or harmonized with each other? | 042561.docx | LEGALEASE-00120935-LEGALEASE-00120936 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 20954 | Consumers Energy Co. v. United States, 84 Fed. Cl. 152 | 148+81.1 | A direct government appropriation or physical invasion of private property effects a taking in its most basic form. Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537, 125 S.Ct. 2074, 71 S.Ct. 670, 95 L.Ed. 809 (1951) (holding that the federal government's seizure and operation of a coal mine to prevent a coal miners' strike constituted a taking)). There may also be a regulatory taking. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (explaining that government regulation of private property may sometimes be so burdensome that it is the same as a direct appropriation). Regulatory takings are further subdivided into categorical (or per se) takings and non-categorical. Lingle, 544 U.S. at 538, 125 S.Ct. 2074. Regarding its real property, according to Consumers Energy, this case involves both a categorical and a non-categorical regulatory taking. Pl.'s Resp. at 11. | To allege a taking a plaintiff must possess a valid property right affected by government action that purportedly constitutes a taking. | How does a taking by direct government appropriation or physical invasion of private property effects? | Eminent Domain - Memo 167 - GP.docx | ROSS-003285713-ROSS-003285714 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20955 | Consumers Energy Co. v. United States, 84 Fed. Cl. 152 | 148+2.33 | The Court's analysis is similar to the one employed regarding the taking of vested contract rights. The Federal Circuit has repeatedly emphasized that a takings claim has limited application when the rights and obligations of the parties have been created by contract, as they have been here. Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed.Cir.2001) (quoting Sun Oil Co. v. United States, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.")); see also St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385"86 (Fed.Cir.2008); Bailey v. United States, 53 Fed.Cl. 251, 256"57 (2002) (Damich, C.J.), aff'd, 341 F.3d 1342 (Fed.Cir.2003). When rights exist independent of a contract the remedies should not be restricted to contract remedies. See Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed.Cl. 30, 34"35 (1998). Here, however, Consumers Energy has no rights to the removal of HLW and/or SNF apart from the Standard Contract. | Failure of government to perform standard contract for disposal of spent nuclear fuel did not effect a "taking" of electric utility's vested contract rights, where utility retained full range of remedies of associated with breach of contract action, and government had already been found liable for breach. | Does a takings claim have application when the rights and obligations of the parties have been created by contract? | Eminent Domain - Memo 169 - GP.docx | ROSS-003300533-ROSS-003300534 | Condensed, SA, Sub | 0.76 | 0 | 1 | | 1 | 1 |
| 20956 | Newcombe v. Adolf Coors Co., 157 F.3d 686 | 237+19 | Under Cal. Civ.Code " 45a, a plaintiff may only prevail on a claim for libel if the publication is libelous on its face or if special damages have been proven. Newcombe has not met either requirement. A publication is libelous on its face only if there is no need to have explanatory matter introduced. Cal Civ.Code " 45a. The determination as to whether a publication is libelous on its face is one of law, and is to be measured by the effect the publication would have on the mind of the average reader. MacLeod v. Tribune Publishing Co., Inc., 52 Cal.2d 536, 547, 343 P.2d 36 (1959). Newcombe has presented no evidence that an average person viewing the advertisement would think that it was defamatory to suggest that the pitcher was endorsing alcohol. The only way an average person viewing the advertisement might think that it was defamatory was if the person was made aware of Newcombe's status as a recovering alcoholic; this is a textbook example of "explanatory matter." | Determination as to whether a publication is libelous on its face is one of law, and is to be measured by the effect the publication would have on the mind of the average reader. West's Ann.Cal.Civ.Code 5 45a. | When will statements or publications be libelous on its face? | Libel and Slander - Memo 181 - AKA.docx | ROSS-003310502-ROSS-003310504 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | 1 |
| 20957 | Daley-Sand v. W. Am. Ins. Co., 387 Pa. Super. 630 | 217+2793(2) | However, as the subrogee stands in the precise position of the subrogor the subrogee should be limited to recovering in subrogation the amount received by the subrogor ... for equity will not allow the subrogee's claim to be placed ahead of the subrogor's. Allstate Insurance Co. v. Clarke, 364 Pa.Super. 196, 201, 527 A.2d 1021, 1023 (1987). Thus, whatever the contractual language regarding subrogation, the equitable nature of subrogation is not altered. Finally, subrogation is not an inflexible legal concept but, as an exercise of equitable powers, it is to be carried out with an: exercise of a proper equitable discretion, with a due regard for the legal and equitable rights of others. American Surety Co. of New York v. Bethlehem National Bank of Bethlehem, 116 F.2d 75, rev'd on other grounds, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241, 138 A.L.R. 509 (1941). | Underinsured motorist carrier's exercise of contractual right to withhold consent to insured's settlement with tort-feasor until carrier could research its subrogation opportunities frustrated public policy requiring underinsured motorist coverage; carrier failed to show that withholding of consent and consequent refusal to pay benefits was in good faith or was reasonable. 75 Pa.C.S.A. §§ 1701 et seq., 1731(a). | "As equitable doctrine, should subrogation be applied only in the exercise of a proper equitable discretion, with due regard for legal and equitable rights of others?" | 043689.docx | LEGALEASE-00121294-LEGALEASE-00121295 | Condensed, SA, Sub | 0.52 | 0 | 1 | | 1 | 1 |
| 20958 | Employers Ins. of Wausau v. Com., Dep't of Transp., 581 Pa. 381 | 366+1 | We now turn to the question of whether the Board of Claims should also hear the equitable subrogation claim as one "arising from a contract with the Commonwealth." Initially, we note that this Court and intermediate courts have made clear that a subrogation claim, in substance, is equitable in nature, and therefore does not sound in assumpsit. For example, in Jacobs v. Northeastern Corp., 416 Pa. 417, 206 A.2d 49 (1965), this Court quoted the United States Supreme Court indicating "[t]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relationship between the parties." Id. at 53 (quoting Memphis & Little Rock R.R. v. Dow, 120 U.S. 287, 301-02, 7 S.Ct. 482, 30 L.Ed. 595 (1887)); see also Gildner v. First Nat. Bank & Trust Co., 342 Pa. 145, 19 A.2d 910, 915 (1941) ("The doctrine of subrogation was adopted from the civil law and is based not on contract but on considerations of equity and good conscience."); Furia v. City of Philadelphia, 180 Pa.Super. 50, 118 A.2d 236, 238 (1955) ("Subrogation is an equitable doctrine and its basis is the doing of complete, essential and perfect justice between all parties without regard to form."); Roush v. Gelnett, 31 Pa. D. & C. 4th 420 (Com.Pl. Snyder Co.1996) ("[T]he doctrine of subrogation is based on considerations of equity and good conscience .. to promote justice .. [and] is granted as a means of placing the ultimate burden of the debt on the person who should bear it. It is not a matter of contract or privity") | "Equitable subrogation" is a creature of equity and is independent of any contractual relations. | Is the doctrine of subrogation based on principles of equity and enforced to bring about substantial justice? | 043745.docx | LEGALEASE-00121524-LEGALEASE-00121526 | Condensed, SA, Sub | 0.94 | 0 | 1 | | 1 | 1 |
| 20959 | Abish v. Nw. Nat. Ins. Co. of Milwaukee, 924 F.2d 448 | 170B+3333 | "Exoneration is the equitable right of a surety to compel its principal to pay his or her debt and thereby discharge the surety's obligation under its bond. See Filner v. Shapiro, 633 F.2d 139, 142 (2d Cir 1980); Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2d Cir.1936) ("In equity, ... before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obligated to make inroads into his own resources when the loss must in the end fall upon the principal.") (citations omitted); Restatement of Security " 112 (1941). Quia timet is the right of the surety to compel its principal to place the surety "in funds" sufficient to prevent anticipated future losses, where a surety has reasonable grounds to believe that its principal will not perform his obligations ...." | Surety's claims for quia timet and exoneration did not satisfy definition of "injunction" for purposes of statute authorizing appeal from interlocutory district court orders granting, continuing, modifying, refusing or dissolving injunctions orrefusing to dissolve or modify injunction; district court was not asked to grant injunctive relief nor did court construe surety's motion as one for preliminary injunction and order denying relief requested would not cause serious or irreparable co nsequences since nature of relief sought was monetary compensation and there was no reason why surety could not be made whole upon resolution of merits. 28 U.S.C.A. 5 1292(a)(1). | Does the existence of a principal's duty to pay give a surety an equitable right to call upon principal to exonerate him from liability by discharging debt when it becomes due? | 044093.docx | LEGALEASE-00121710-LEGALEASE-00121711 | Condensed, SA, Sub | 0.18 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20960 | Garcia v. U.S. Bank, 141 F. Supp. 3d 490 | 379+114 | Like conversion, trespass to chattels is a willful, independent tort. See Mahdavi v. NextGear Capital, Inc., No. 1:14cv648, 2015 WL 1526538, at (E.D.Va. Apr. 3, 2015) (noting that both trespass to chattels and conversion are intentional torts). The duty not to intermeddle with the personal property of another is "owed by everyone to everyone." See Hewlette, 318 F.Supp.2d at 337. Plaintiffs pled a violation of this duty by alleging the Defendant took possession of their boat and personal property without authorization. The Defendant, therefore, is not entitled to the protection of the economic loss rule, which protects only those defendants who have breached only contractual duties. See City of Richmond, 918 F.2d at 447. This case is not one where "no cause of action would exist but for the violation of the contractual duties of the parties." Bennett v. Bank of America, N.A., No. 3:12CV34"HEH, 2012 WL 1354546, at (E.D.Va. Apr. 18, 2012). Accordingly, the Defendant's Motion is DENIED with respect to Count IV of the Complaint. | In Virginia, to support a claim that a party's actions both breached contract terms and tortiously breached a duty, the tort alleged must be an independent, willful tort, not merely a claim of negligence. | "Is conversion and trespass to chattels a willful, independent tort?" | Trespass - Memo 126 - AKA.docx | ROSS-003283334-ROSS-003283335 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | |
| 20961 | Miller, DuBrul & Peters Mfg. Co. v. Laidlaw-Dunn-Gordon Co., 17 Ohio Dec. 499 | 289+433 | Corporations have no power to become members of a partnership. Cook, Priv. Corp. Sec. 678; Catskill Bank v. Gray, 14 Barb. 471; 3 Kent 23; Karrick v. Hannaman, 168 U. S. 328 [18 Sup. Ct. Rep. 135; 42 L. Ed. 484]; Collyer, Partnership; Story, Partnership Sec. 2; Lindley, Partnership Chap. 1, p. 12; Bouvier's Law Dict. citing, Delaney v. Van Aulen, 84 N. Y. 16; Connolly v. Davidson, 15 Minn. 519 [2 Am. Rep. 154]; London Assur. Co. v. Drennen, 116 U. S. 461 [6 Sup. Ct. Rep. 442; 29 L. Ed. 688]; Gill v. Kuhn, 6 Serg. & R. 333; Merchants' Nat. Bank v. Wehrmann, 69 Ohio St. 160 [68 N. E. Rep. 1004]; Parsons, Partnership (4 ed.) 60; Bates, Partnership Sec. 75; Snyder v. Chamber of Commerce, 53 Ohio St. 1 [41 N. E. Rep. 33]. | An association composed of numerous persons, firms and corporations engaged in the metal trades, in order to adopt a uniform basis of just and equitable dealings between members and their employees and to investigate and adjust any question arising between members and employees, was not a copartnership nor an organization for profit, and membership therein by a corporation was not inconsistent with the character of the corporation, nor was there an unlawful delegation of powers from the directors. | Do corporations have the power to become members of a partnership? | Partnership - Memo 127 - RK.docx | ROSS-003298662-ROSS-003298663 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 20962 | Allison v. Comm'n for Lawyer Discipline, 374 S.W.3d 520 | 46H+1004 | Allison further alleges that the trial court's admission of Allison's prior disciplinary hearings was in violation of Allison's motion in limine. A motion in limine is a procedural device that allows parties to identify, prior to trial, certain evidentiary rulings the court may be asked to make. Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex.App.-Houston [14th Dist.] 2000, no pet.). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions or introducing prejudicial evidence before the jury without first asking the trial court's permission. Absent a jury, a motion in limine is irrelevant; therefore, a motion in limine is improper in a bench trial. See Unitarian Universalist Serv. of Boston v. Lebrecht, 670 S.W.2d 402, 405 n. 1 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.); see also Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain, 446 N.E.2d 626, 629 (Ind.Ct.App.1983). | Attorney was not permitted to limit evidence to be brought before the trial court in attorney disciplinary proceeding by motion in limine, as trial was to the bench. | "Absent a jury, is a motion in limine irrelevant?" | 024238.docx | LEGALEASE-00121872-LEGALEASE-00121873 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 20963 | CNL APF Partners, LP v. Dep't of Transp., 307 Ga. App. 511 | 30+3209 | CNL contends that the trial court erred in denying its motion in limine. "A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. Irrelevant evidence that does not bear directly or indirectly on the questions being tried should be excluded." We review the court's ruling on a motion in limine for abuse of discretion. | Appellate courts review the trial court's ruling on a motion in limine for abuse of discretion. | Is a motion in limine properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial? | Pretrial Procedure - Memo # 410 - C - S8.docx | ROSS-003325221-ROSS-003325222 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | |
| 20964 | Gateway United Methodist Church of Gulfport, Mississippi v. Mississippi Transp. Comm'n, 147 So. 3d 900 | 30+3366 | An appellate court's standard of review regarding the admission or exclusion of evidence is abuse of discretion. There is no abuse of discretion by the trial court in granting a motion in limine if: "(1) the material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." Ware v. Entergy Miss., Inc., 887 So.2d 763, 766 (6) (Miss.2004) (internal citation omitted). For questions of law, the standard of review is de novo. Id. | An appellate court's standard of review regarding the admission or exclusion of evidence is abuse of discretion. | Is there an abuse of discretion in granting a motion in limine if material is inadmissible and statements are prejudicial? | 024266.docx | LEGALEASE-00122285-LEGALEASE-00122286 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 20965 | Pagosa Oil & Gas v. Marrs & Smith P'ship, 323 S.W.3d 203 | 13+61 | Sombrero argues that this breach of contract claim was not a compulsory counter-claim because it was not mature at the time of the prior litigation. A claim is mature when it has accrued. Id. at 208"10. In the case of a continuing contract, the limitations period begins to run at the earlier of the following events: (1) when the obligations are completed; (2) when the contract is terminated according to its terms; or (3) when the contract is anticipatorily repudiated by one party, and the repudiation is adopted by the other party. Hubble v. Lone Star Contracting Corp., 883 S.W.2d 379, 382 (Tex.App.-Fort Worth 1994, writ denied). In other words, when one party attempts to repudiate the contract despite its ongoing obligations, the injured party has the option to treat the contract as still in force and retain its right to sue on the contract; or to treat the breaching party's repudiation as a complete breach and terminate the contract immediately. See F.D. Stella Prod. Co. v. Scott, 875 S.W.2d 462, 464 (Tex.App.-Austin 1994, no writ). | A claim is mature when it has accrued. | Is a claim mature when it has accrued? | Action - Memo # 47 - C - LK.docx | ROSS-003297646-ROSS-003297647 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20966 | Wallace v. Kato, 127 S. Ct. 1091 | 241+58(7) | While we have never stated so expressly, the accrual date of a " 1983 cause of action is a question of federal law that is not resolved by reference to state law. The parties agree, the Seventh Circuit in this case so held, see 440 F.3d, at 424, and we are aware of no federal court of appeals holding to the contrary. Aspects of " 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles. See Heck, supra, at 483, 114 S.Ct. 2364; Carey v. Piphus, 435 U.S. 247, 257*258, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Under those principles, it is "the standard rule that [accrual occurs] when the plaintiff has "a complete and present cause of action," " Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941)), that is, when "the plaintiff can file suit and obtain relief," Bay Area Laundry, supra, at 201, 118 S.Ct. 542. There can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date. | Fact that, at time arrestee appeared before examining magistrate and was bound over for trial, no conviction had yet occurred, did not preclude commencement of running of limitations period on arrestee's 1983 unlawful arrest claim against city police officers; no rule prevented action that would impugn anticipated future conviction from being brought prior to occurrence of, and setting aside of, that conviction. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983. | Is the standard rule that a claim accrues when the plaintiff has a complete and present cause of action? | Action - Memo # 69 - C - LK.docx | ROSS-003289306-ROSS-003289308 | Condensed, SA, Sub | 0.64 | 0 | 1 | | 1 | 1 |
| 20967 | Dos Picos Land Ltd. P'ship v. Pima Cty., 225 Ariz. 458 | 148+316 | A regulatory taking is not a less intrusive subset of "takings" generally, but rather a distinct method by which a governmental entity deprives an owner of his or her property rights. Not every regulation amounts to a taking, but only one that ""goes too far." " Ranch 57, 152 Ariz. at 225, 731 P.2d at 120, quoting Pa. Coal Co., 260 U.S. at 415, 43 S.Ct. 158. Once regulation has impermissibly interfered with the owner's economic or other interests in the property, the taking is complete; there are not different degrees of "taking." Lingle, 544 U.S. at 539*40, 125 S.Ct. 2074 (finding of regulatory takings dependent on extent to which government actions interfere with private rights). Here, the trial court implicitly found the regulations became a taking when they went ""too far' " by effectively limiting Dos Picos's use of its property to be consistent with the surrounding county land used as a mountain preserve and park. Although a court may determine that governmental regulations have "denie[d] all economically beneficial or productive use of land," justifying compensation without further analysis of the benefits to the public versus the cost to the landowner, this still does not convert a regulatory taking into a physical one. Lucas, 505 U.S. at 1015, 112 S.Ct. 2886; see also Lingle, 544 U.S. at 548, 125 S.Ct. 2074 (distinguishing a physical taking from "a Lucas-type "total regulatory taking""). | County's denial of landowners' request for special use permit to build road across southern portion of property amounted to regulatory, rather than physical taking, and thus, landowners were not entitled to award of attorney fees and other litigation expenses in inverse condemnation action. A.R.S. § 11-972(B). | Does every regulatory intrusion on property rights amounts to a taking? | 017512.docx | LEGALEASE-00124604-LEGALEASE-00124605 | Condensed, SA, Sub | 0.78 | 0 | 1 | | 1 | 1 |
| 20968 | Drexel Burnham Lambert Grp. Inc. v. Galadari, 610 F. Supp. 114, 777 F.2d 877 | 106+512 | In Canada Southern Railway Co. v. Gebhard, 109 U.S. 527, 539, 3 S.Ct. 363, 371, 27 L.Ed. 1020 (1883), the Supreme Court held that the "true spirit of international comity" required American courts to defer to a Canadian bankruptcy procedure that blocked the pursuit of individual claims. In Clarkson Co. v. Shaheen, 544 F.2d 624, 631 (2d Cir.1976), the Court of Appeals held similarly, and added that allegations of fraud interposed to defeat comity must be demonstrated by "clear and convincing evidence." These cases establish a presumption that American courts should defer to bankruptcy proceedings in other countries which are essentially fair. Under New York law as well, foreign decrees and proceedings will be given respect under principles of international comity in the absence of significant countervailing public policy reasons, even if the result under the foreign proceeding would be different than under American law. Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 279, 265 N.E.2d 739, 744, 317 N.Y.S.2d 315, 322 (1970). See also Intercontinental Hotels Corporation v. Golden, 15 N.Y.2d 9, 13, 203 N.E.2d 210, 211, 254 N.Y.S.2d 527, 529 (1964) (international comity applies unless it would require "approval of a transaction which is inherently vicious, wicked, or immoral, and shocking to the prevailing moral sense"). Therefore, even when the act of state doctrine does not apply for reasons of extraterritoriality, quasi-judicial proceedings in foreign states are entitled to presumptive respect. | District court should have afforded New York corporation reasonable discovery and evidentiary hearing before dismissing corporation's action for default on promissory note executed by foreign citizen and partnership on grounds of international comity where decree establishing committee of receivers to liquidate assets of citizen and partnership was foreign government's first attempt to frame insolvency law, so that American courts had no experience with that government's bankruptcy practices and procedures. | Is there a presumption that courts should defer to bankruptcy proceedings in other countries which are essentially fair? | 020266.docx | LEGALEASE-00125483-LEGALEASE-00125484 | Condensed, SA, Sub | 0.66 | 0 | 1 | | 1 | 1 |
| 20969 | Clientron Corp. v. Devon IT, 35 F. Supp. 3d 665 | 25T+515 | When the action is brought in a court of this country by a citizen of a foreign country against one of our own citizens ... and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect. In re Christoff's Estate, 411 Pa. 419, 192 A.2d 737, 739 (1963) (quoting Hilton, 159 U.S. at 205, 16 S.Ct. 139). "While the comity doctrine does not reach the force of obligation, it creates a strong presumption in favor of recognizing foreign judicial decrees." United States ex rel. Saroop v. Garcia, 109 F.3d 165, 169 (3d Cir.1997). | Arbitration award in favor of Taiwanese supplier of thin-client computer components and against buyer was final and binding under Taiwan law, as required for supplier to establish prima facie case for recognition of foreign money judgment under Pennsylvania Uniform Foreign Money Judgment Recognition Act (UFMJRA); arbitration law of Taiwan did not indicate that there were binding arbitrations and non-binding arbitrations, and rather, stated concisely that "an (arbitration) award shall, insofar as relevant, be binding on the parties and have the same force as a final judgment of a court," and buyer failed to present any evidence suggesting that statutory provision was subject to revision or alteration by contractual agreement between parties. 42 P.S. §§ 22005, 22009. | "While comity doctrine does not reach force of obligation, does it create a strong presumption in favor of recognizing foreign judicial decrees?" | International Law - Memo # 484 - MC.docx | ROSS-003312556-ROSS-003312557 | Condensed, SA, Sub | 0.35 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20970 | Bryant v. Int'l Sch. Servs., 502 F. Supp. 472, 675 F.2d 562 | 78+1549 | ISS asserts that its policies and practices in awarding contracts to teachers at the American School in Isfahan were immunized from attack on Title VII grounds by the act of state doctrine and by the defense of foreign compulsion. The act of state doctrine precludes inquiry into the validity of a foreign sovereign's act and requires American courts to respect private claims based on the contention that the damaging act of another nation violates American law. Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1292-1293 (3d Cir. 1979). The foreign compulsion defense, developed in the context of antitrust litigation, shields from liability the acts of parties carried out in obedience to the mandate of a foreign government, Interamerican Refining Corp. v. Texaco Maracaibo, Inc., 307 F.Supp. 1291, 1296 (D.Del.1970). | Proof that 97 out of 98 local-hire contracts went to married women was not alone sufficient to establish prima facie case of disparate impact, in equal employment opportunity case, in face of other uncontested evidence, and although plaintiffs were not required to use actual labor market or applicant figures to show disparate impact, they were required, in peculiar circumstances of case, to offer at least comparative statistics by which court could infer invidious disparate impact. Civil Rights Act of 1964, S 703, 42 U.S.C.A. S 2000e-2. | Does the act of state doctrine preclude inquiry into the validity of a foreign sovereign's act and require American courts to respect private claims based on the contention that damaging an act of another nation violates American law? | 020426.docx | LEGALEASE-00124354-LEGALEASE-00124355 | Condensed, SA, Sub | 0.35 | 0 | 1 | | 1 | 1 |
| 20971 | Marquis Fin. Servs. of Indiana Inc. v. Peet, 365 S.W.3d 256 | 30+241 | Dr. Peet's sixth point contends that the trial court erred in denying his Motion In Limine and Motion for JNOV or, in the alternative, a New Trial. To preserve an issue that evidence was improperly admitted, it is not enough for a party to rely solely on the ruling denying a motion in limine. "Rulings on motions in limine are interlocutory and subject to change during the course of the trial." Hancock v. Shook, 100 S.W.3d 786, 802 (Mo. banc 2003) (quoted in Peters v. General Motors Corp., 200 S.W.3d 1, 15 (Mo.App.2006)). "A motion in limine, by itself, preserves nothing for appeal." Hancock, 100 S.W.3d at 802; Peters, 200 S.W.3d at 15. See also Wilkerson v. Prelutsky, 943 S.W.2d 643, 646 (Mo. banc 1997). | Defendant's bare assertion that the trial court should enter a judgment for defendant and against financial services company, in defendant's oral motion for a directed verdict at the close of all the evidence on financial services company's unjust enrichment claim, was insufficient to comply with the rule that required a motion for a directed verdict to state the specific grounds therefore, and thus, preserved nothing for review, and could not be preserved by his motions for judgment notwithstanding the verdict (JNOV) or a new trial. V.A.M.R. 72.01(a). | Are rulings on motions in limine subject to change during the course of the trial? | 024365.docx | LEGALEASE-00124310-LEGALEASE-00124311 | Condensed, SA, Sub | 0.22 | 0 | 1 | | 1 | 1 |
| 20972 | Schexnayder v. Bridges, 190 So. 3d 764 | 388+62(3) | Initially, we note that the trial court has great discretion when considering evidentiary matters such as motions in limine. Heller v. Nobel Insurance Group, 2000"0261 (La.2/2/00), 753 So.2d 841, 841; Maldonado v. Kiewit Louisiana Co., 2012"1868 (La.App. 1st Cir.5/30/14), 152 So.3d 909, 922, writ denied, 2014"2246 (La.1/16/15), 157 So.3d 1129. Evidence that is not relevant is not admissible. See La Code Evid. art. 402. Whether evidence is relevant is within the discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. Hunter v. State ex rel. LSU Medical School, 2005"0311 (La.App. 1st Cir.3/29/06), 934 So.2d 760, 763, writ denied, 2006"0937 (La.11/3/06), 940 So.2d 653. Indeed, a trial court has much discretion to regulate the evidence a jury hears. Beaucoudray v. Walsh, 2007"0818 (La.App. 4th Cir.3/12/09), 9 So.3d 916, 928, writ denied, 2009"0832 (La.5/29/09), 9 So.3d 168. Moreover, a trial court should consider the improper inferences a jury might make from evidence of a physician's personal history and of a medical licensing board's reports and/or investigations when balancing the probative value of evidence with the danger of its unfair prejudice. Id., 9 So.3d at 929. | Trial court did not abuse its discretion, in motorist's negligence action arising from three-vehicle collision, in allowing motorist's former supervisor to be called as a rebuttal witness after defendants had presented their case-in-chief and rested; motorist's counsel had attempted unsuccessfully to call supervisor as witness during motorist's case-in-chief, and supervisor's testimony was not a surprise and was principally cumulative, since it merely reiterated a point previously made by motorist when he testified that he had been terminated from his employment after informing supervisor that he could no longer work due to his back pain. LSA-C.C.P. art. 1551(B). | Does the trial court have great discretion when considering evidentiary matters such as motions in limine? | 027793.docx | LEGALEASE-00125057-LEGALEASE-00125058 | Condensed, SA, Sub | 0.47 | 0 | 1 | | 1 | 1 |
| 20973 | State Farm Mut. Auto. Ins. Co. v. Superior Court, 121 Cal. App. 4th 490 | 30+4821 | State Farm's Motion to Determine Applicable Law, though not expressly provided for in the Code of Civil Procedure, is the equivalent of an in limine motion that seeks to resolve a conflict of laws or choice of law issue. (See, e.g., Blakesley v. Wolford (3d Cir.1986) 789 F.2d 236; Weiss v. La Suisse, Societe D'Assurances (S.D.N.Y.2003) 293 F.Supp.2d 397, 400"402; In re W.R. Grace & Co. (Bankr.D.Del.2002) 281 B.R. 852, 855; Northland Ins. Co. v. Trucktops Corp. of America (N.D.Ill.1995) 914 F.Supp. 216.) "Such motions are generally brought at the beginning of trial, although they may also be brought during trial when evidentiary issues are anticipated by the parties." (People v. Morris (1991) 53 Cal.3d 152, 188, 279 Cal.Rptr. 720, 807 P.2d 949, italics added, disapproved on another point in People v. Stansbury (1995) 9 Cal.4th 824, 830, fn. 1, 38 Cal.Rptr.2d 394, 889 P.2d 588; accord, *503 Kelly v. New West Federal Savings (1996) 49 Cal.App.4th 659, 669, 56 Cal.Rptr.2d 803.) Just as an in limine motion is not itself a "trial," neither was State Farm's Motion to Determine Applicable Law. And, here, the trial court's denial of State Farm's Motion to Dismiss"a ruling with which we agreed"can hardly be considered a "trial." | Statute permitting peremptory challenge of judge in new trial following his reversal was not applicable to proceedings on remand, which had determined that Illinois, not California, law applied to dispute; determination regarding what law governed was made before a jury of plaintiffs' causes of action could be adjudicated, and the granting of the prior writ petition, which corrected the trial court's ruling that California law applied, would not result in a "new trial" to which the statute could apply. West's Ann.Cal.C.C.P. S 170.6(a)(2). | Is a motion to determine the law to be applied in a case the equivalent of an in limine motion that seeks to resolve a conflict of laws or choice of law issue? | Pretrial Procedure - Memo # 256 - C - LN.docx | ROSS-003311351-ROSS-003311352 | Condensed, SA, Sub | 0.56 | 0 | 1 | | 1 | 1 |
| 20974 | Cmty. Tr. Bank of Mississippi v. First Nat. Bank of Clarksdale, 150 So. 3d 683 | 366+31(4) | When determining whether equitable subrogation should apply, "[t]he controlling consideration is the actual facts. The question is: What is natural justice under the actual facts of the situation?" Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923). Ultimately, determining whether equitable subrogation applies is done on a case-by-case basis. See Huff, 441 So.2d at 1319. Above all, subrogation must be equitable to the parties involved. "The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles." Id. "The doctrine of subrogation is one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice. It does not rest on contract, but upon principles of natural equity." Prestridge, 95 So. at 838 (internal quotation omitted). Accordingly, although certain factors may weigh more heavily for or against subrogation, ultimately it is awarded only after carefully weighing all of the facts and circumstances and deciding what the fairest result would be. | To allow secondary lien holder subrogation over primary lien holder would be inequitable, regardless of whether secondary lien holder had actual knowledge of primary lien holder's lien; secondary lien holder was on constructive notice of the lien by virtue of its having been recorded in the office of the chancery clerk, allowing secondary lien holder to subrogate itself to the primary lien holder position would result in prejudice to primary lien holder not only by the amount of the new loan it would be placed behind, but also by the fact that lien involved two completely unknown and unanticipated parties, and secondary lien holder could file a claim against the title insurance company that insured against the risk of an intervening lien and negligently failed to inform anyone about it. West's A.M.C. 5 89-5-7. | What controlling consideration determines whether equitable subrogation should apply? | Subrogation - Memo 1004 - C - CAT.docx | ROSS-003312357-ROSS-003312358 | Condensed, SA, Sub | 0.32 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20975 | Florida Farm Bureau Ins. Co. v. Martin, 377 So. 2d 827 | 217+3515(1) | Although we express no opinion as to whether the execution of the subrogation receipt modified the common law doctrine of subrogation, we note that the court further held that the execution of the receipt pursuant to the subrogation clause did not affect the applicability of the normal rule of subrogation. See also Skauge v. Mountain States Telephone and Telegraph Company, 565 P.2d 628 (Mont.1977); 16 Couch on Insurance 2d s 61:61 (2d Ed. 1966). It has also been stated Since subrogation is an offspring of equity, equitable principles apply, even when the subrogation is based on contract, except as modified by specific provisions in the contract. In the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tortfeasors. Lyon v. Hartford Accident and Indemnity Company, 25 Utah 2d 310, 480 P.2d 739, 744 (Utah 1971) (footnotes omitted). Here, Farm Bureau could have proceeded independently against the tortfeasor by taking an assignment and subrogation agreement. State Farm Mutual Automobile Insurance Company v. Robbins, 237 So.2d 208 (Fla .4th DCA 1970). Otherwise, the subrogation clause does not appear to grant Farm Bureau any additional rights to those already existing under the common law rule of subrogation. | Where parties stipulated that owners' property damage resulting from fire totaled $110,000, that recovery from tort-feasor's insurer would be the maximum policy limit of $50,000, and that recovery from tort-feasor would be maximum collectable amount of $2,500 and where owner's fire insurer paid owners approximately $42,535 for fire losses, owners' insurer was not entitled to subrogation from funds recovered by its insureds in suit against tort-feasor and tort-feasor's insurer because owners' damage of $110,000 exceeded total recovery of $95,035. | Is subrogation an offspring of equity? | Subrogation - Memo 1016 - C - CAT.docx | ROSS-003308944-ROSS-003308945 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 20976 | Maryland Cas. Ins. Co. v. Welchel, 257 Ga. 259 | 97C+114(12) | "Any unlawful dominion over or damage done to the personal property of another constitutes a trespass for which damages may be recovered." OCGA " 51-10-3. The action of trespass to personality is "concurrent with" the action of trover and conversion, although the two actions are not "entirely coextensive." 28 EGi. 79, Trover & Conversion," 2 (1985 Rev.). "Trespass will doubtless lie for acts of interference with goods where trover will not.... The chief principle in the field of conversion is undoubtedly found in the idea of interference with the dominion which is incident to the general or special ownership of chattels. This conception is entirely different from the idea of damage to the property itself which is inseparable from trespass..." Id. | A plaintiff may not, by election of remedies in conversion action, hold defendant strictly liable for loss of property converted, where defendant is unable to return property as result of theft of property by third party, if theft was not reasonably foreseeable by defendant. O.C.G.A. SS 44-12-151, 44-12-153. | Is the action of trespass to personality concurrent with the action of conversion? | Trespass - Memo 197 - RK.docx | ROSS-003325918-ROSS-003325919 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 20977 | Hart v. Guardian Tr. Co., 75 N.E.2d 570 | 241+58(5) | 'A cause of action must be complete before an action can be commenced. The established rule is that one's case must depend upon the rights of the parties as they exist at the commencement of the action. Rights of a plaintiff in a civil action cannot be contingent upon uncertain events, as, for example, the time the writ may be served. No right of action can be said to accrue until the claim or right upon which it is founded has matured.' | The statute of limitations commenced to run against causes of action by superintendent of banks in charge of liquidation of insolvent bank against directors for losses allegedly caused by maladministration of directors and for consequential damages flowing therefrom at time alleged acts of maladministration occurred, and operation of statute could not be suspended, as to a single cause of action, to postpone accrual of claim for consequential damage. | Should a cause of action be complete before an action can be commenced? | Action- memo # - PC334.docx | ROSS-003299847 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 20978 | Austin v. Abney Mills, 824 So. 2d 1137 | 413+1199.10 | Under Louisiana law, a cause of action accrues when a party has a right to sue. Cole, supra n. 15, at 1086. For a negligence cause of action to accrue, three elements are required: fault, causation and damages. The sine qua non for the accrual of a cause of action is damages. Owens v. Martin, 449 So.2d 448 (La.1984). | So-called "manifestation" theory, under which "manifestation" is defined as exhibiting symptoms of disease such that employee was disabled and could not work, was not appropriate for determining when former employee's cause of action accrued in a long-latency occupational disease case in which employee suffered from malignant pleural mesothelioma; adoption of "manifestation" theory effectively circumvented due process prohibition of divesting employee of a vested property right and had negative and serious impact on the role of prescription and the doctrine of contra non valentem. U.S.C.A. Const.Amend. 14; LSA-Const. Art. 1, S 2. | Are damages the sine qua non for the accrual of a cause of action? | Action memo# 294 C- PC.docx | ROSS-003316967 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 20979 | Vance v. Rumsfeld, 701 F.3d 193 | 402+1144 | The Supreme Court's principal point was that civilian courts should not interfere with the military chain of command"not, that is, without statutory authority. Chappell observed that military efficiency depends on a particular command structure, which civilian judges could mess up without appreciating what they were doing. 462 U.S. at 300, 103 S.Ct. 2362. The court observed that Congress has ample authority, under its constitutional power to "make Rules for the Government and Regulation of the land and naval Forces" (Art. I " 8 cl. 14), to provide for awards of damages and other kinds of judicial review of military decisions. *200 When Congress does not exercise that power"or when, as we explain in a moment, it exercises that power without providing for damages against military wrongdoers"the judiciary should leave the command structure alone. "Matters intimately related to ... national security are rarely proper subjects for judicial intervention." Haig v. Agee, 453 U.S. 280, 292, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981). | "Military authority exception" to the Administrative Procedure Act, which prohibited judicial review of military authority exercised in the field in time of war or in occupied territory, barred action against federal government by American citizens, who allegedly were subjected to abusive interrogation and mistreatment during detention by unidentified soldiers and others in military chain of command while citizens were in Iraq working for private security firm. 5 U.S.C.A. S 701(b)(1)(G). | Should courts interfere with the military chain of command? | 008832.docx | LEGALEASE-00126756-LEGALEASE-00126757 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 20980 | Wirtz v. Orr, 533 S.W.2d 468 | 30+4421 | The intent of the parties should have been submitted to the jury. In Trinity Universal Insurance Company v. Ponsford Brothers, 423 S.W .2d 571 (Tex.1968), the court stated: [(A jury may not be called upon to construe the legal effect of an instrument. Knutson v. Ripson, 163 Tex. 312, 354 S.W.2d 575 (1962); Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358 (1944). The jury may, however, resolve an ambiguous intent, and the issue asked about intent as a fact issue. Skelly Oil Co. v. Archer, supra; Ellisor v. Kennedy, 128 S.W.2d 842 (Tex.Civ.App.1939, writ ref.).' | In action, which arose out of ambiguous contract for sale and exchange of plaintiffs' apartment complex and defendants' farm and in which plaintiffs sought to recover on theory that they were due more monies out of the closing and that they were entitled to more silage, submission of issues whether jury found from preponderance of evidence that under the contract a plaintiff was not to pay $18,000 to a defendant and that defendant was obligated in an amount equal to silo mortgage was reversible error, in that jury should have been asked to resolve question of intent of parties rather than questions as to legal effect of contract. | Can a jury be called to construe the legal effect of an instrument? | Exchange Of Property - Memo 60 - ANG.docx | ROSS-003286580-ROSS-003286581 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20981 | Anaheim Gardens v. United States, 33 Fed. Cl. 24 | 148+2.2 | In prior cases, the court has considered whether administrative foot-dragging can constitute a taking within the meaning of the Fifth Amendment. Courts sometimes refer to such cases as "temporary takings." See, e.g., Dufau v. United States, 22 Cl.Ct. 156, 163 (1990), aff'd, 940 F.2d 677 (Fed.Cir.1991); 1902 Atlantic Ltd. v. United States, 26 Cl.Ct. 575, 581 (1992). Each of these cases acknowledged the United States Supreme Court doctrine that governmental actions which temporarily deny owners the use of their property must be justly compensated under the Fifth and Fourteenth Amendments. First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 318, 107 S.Ct. 2378, 2387°88, 96 L.Ed.2d 250 (1987); see also Agins v. Tiburon, 447 U.S. 255, 263, n. 9, 100 S.Ct. 2138, 2143, n. 9, 65 L.Ed.2d 106 (1980); Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 204, 105 S.Ct. 3108, 3125°26, 87 L.Ed.2d 126 (1985). | Although extraordinary delays in process of government decision making may give rise to temporary taking claim, mere fluctuations in value during process of government decision making, absent extraordinary delay, are incidents of ownership which cannot be considered as "taking" in constitutional sense. U.S.C.A. Const.Amends. 5, 14. | Can administrative foot-dragging constitute a taking under the law? | 017644.docx | LEGALEASE-00126850-LEGALEASE-00126851 | Condensed, SA, Sub | 0.65 | 0 | 1 | | 1 | 1 |
| 20982 | Penrod Drilling Co. v. Johnson, 414 F.2d 1217 | 170B+2819(6) | The definition of an association given in 7 C.J.S. Associations ", 1, at p. 19, is as good as any: "An "association" is a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise.' In Houghton v. Grimes, 1926, 100 Vt. 99, 135 A. 15, 18, the Court said that "at common law an unincorporated association, as regards its rights and liabilities, is fundamentally a large partnership." And in People v. Brander, 1910, 244 Ill. 26, 91 N.E. 59, the Court was on safe ground in simply saying that "the term "association" is a word of vague meaning.' | For venue purposes only there cannot be any recognizable difference between unincorporated partnership and unincorporated association for purpose of interpreting statute expanding concept of corporate residence standards which are applied with respect to residence or similar concepts concerning unincorporated associations. 28 U.S.C.A. S 1391(c). | Are unincorporated associations partnerships? | 022054.docx | LEGALEASE-00128980-LEGALEASE-00128981 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 20983 | Maricle v. Spiegel, 213 Neb. 223 | 30+14(4) | The defendants (Spiegel) appealed, and the plaintiff appeals from the judgment in favor of Mobil. Although the plaintiff has denominated her appeal as a cross-appeal, since she filed notices of appeal, the matter will be treated as an appeal. The plaintiff and Mobil are appellees and an appellee cannot cross-appeal against another appellee. Buffalo County v. Richards, 212 Neb. 826, 326 N.W.2d 179 (1982); Hansen v. Hasenkamp, 192 Neb. 530, 223 N.W.2d 44 (1974). | Appellee cannot cross appeal against another appellee. | Can an appellee cross appeal against another appellee? | Appeal and error - Memo 85 - RK.docx | ROSS-003300734-ROSS-003300735 | Condensed, SA, Sub | 0.88 | 0 | 1 | | 1 | 1 |
| 20984 | People v. Cooper, 53 Cal. 3d 1158 | 67+2 | If the purse had been stolen in a burglary rather than a robbery, under the majority's holding 8 would be an accessory regardless of when the burglar dropped the purse, for the simple reason that asportation is not an element of the offense of burglary. (Maj. opn., ante, p. 459 of 282 Cal.Rptr., p. 751 of 811 P.2d.) | Asportation is not element of burglary. | Is asportation an element of burglary? | Burglary - Memo 59 - RK.docx | ROSS-003313674-ROSS-003313675 | Condensed, SA | 0.88 | 0 | 1 | | | 1 |
| 20985 | Gort v. Gort, 185 So. 3d 607 | 257A+137.1 | While the rules are silent on whether a petition can be voluntarily dismissed prior to an adjudicatory hearing, common sense dictates that a petitioner has that ability. Katke v. Bersche, 161 So.3d 574 (Fla. 5th DCA 2014), is helpful. There, in ruling on a petition for a writ of prohibition, the Fifth District implicitly recognized the voluntary dismissal of a petition to determine incapacity prior to an adjudicatory hearing. Id. at 575-76. A party may voluntarily dismiss any claim, and such a dismissal, if accepted by the trial court, deprives the court of jurisdiction over the subject matter of the claim dismissed." Cutler v. Cutler, 84 So.3d 1172 (Fla. 3d DCA 2012). The plaintiff's right to voluntarily dismiss its own lawsuit is almost absolute, with exceptions for fraud on the court and child custody. Tobkin v. State, 777 So.2d 1160, 1162 (Fla. 4th DCA 2001). | Settlement agreement, which required older brother to voluntarily dismiss a petition to determine younger brother's incapacity, and required younger brother and cousin to provide older brother with notice of the younger brother's medical events, copies of his financial statements, and the deed to his house, did not violate state law or public policy, even though no adjudicatory hearing was held, and the three-member examining committee found younger brother to be incapacitated and lacking the capacity to contract, where the guardianship and probate rules did not prohibit a party voluntarily dismissing a petition to determine incapacity, or mandate an adjudicatory hearing. West's F.S.A. S 744.331(1-3). | "Can a party voluntarily dismiss any claim, and such a dismissal, if accepted by the trial court, deprives the court of jurisdiction over the subject matter of the claim dismissed?" | Pretrial Procedure - Memo # 1159 - C- BP.docx | ROSS-003300929-ROSS-003300930 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 20986 | Arnold v. Marcom, 49 Tenn. App. 161 | 307A+501 | It is to be noted that the appellant here was defendant in the proceedings in question and it is generally true that a defendant cannot take a non-suit. See Section 20"1311 T.C.A., dealing with the right of plaintiffs to take a non-suit.In Administration of Estates in Tennessee by Higgins, Section 753, it is said,"When, however, a will has been proved in the Probate Court in a manner characterized as solemn in form, the judgment is forever conclusive upon all parties having notice of the proceeding unless fraud has intervened." | Generally defendant cannot take nonsuit. T.C.A. S 20-1311. | Can a defendant take nonsuit? | 039511.docx | LEGALEASE-00129352-LEGALEASE-00129353 | Condensed, SA, Sub | 0.89 | 0 | 1 | | 1 | 1 |
| 20987 | Eagle Fabricators v. Rakowitz, 344 S.W.3d 414 | 13+60 | n its arguments, Eagle treats the trial court's order solely as a severance, and does not explain why we should hold that the trial court erred in setting aside its initial order consolidating the two cases"an act sometimes referred to as "deconsolidating" the cases. A trial court has "not only the authority but the responsibility to review any pre-trial order upon proper motion." Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex.1985). That is precisely what the trial court did here, and even without Rakowitz's motion for rehearing, the record shows both substantive and procedural reasons for the trial court's action. | Order setting aside consolidation of steel erector's breach of contract claim against steel fabricator based on nonpayment of services performed on project for construction of middle school, high school, and firehouse with erector's claim against bond insurer on same project was not abuse of discretion, since fabricator's motion for consolidation was filed four weeks before trial on breach of contract claim, and therefore, consolidation added new party to case that was to be soon tried before jury, which would have necessitated setting new trial date in case that had already been set for trial four times, and motion for consolidation was heard at hearing attended only by fabricator's counsel. Vernon's Ann.Texas Rules Civ.Proc., Rule 174. | Does a trial court have not only the authority but the responsibility to review any pre-trial order upon a proper motion? | 026377.docx | LEGALEASE-00130101-LEGALEASE-00130102 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20988 | Reeves v. Travelers Ins. Companies, 421 A.2d 47 | 30+3258 | Although in this case the Superior Court rested its decision to dismiss plaintiff's case with prejudice on M.R.Civ.P. 16(d), it was imposing a sanction for noncompliance with a discovery order, and its action may equally find support in M.R.Civ.P. 37(b)(2).4 The discovery rules (M.R.Civ.P. 26 through 37) are informed by a philosophy of litigation similar to that governing the pretrial conference. "[P]rior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Wright & Miller, Federal Practice and Procedure s 2001 at 15 (1970). It is the purpose of both the discovery rules and the pretrial conference to eliminate the sporting theory of justice, Tiedman v. American Pigment Corp., 253 F.2d 803, 808 (4th Cir. 1958), and to enforce full disclosure. Meaningful pretrial conferences and liberal discovery are two of the principal devices available to effectuate the purpose of the Maine Rules of Civil Procedure "to secure the just, speedy and inexpensive determination of every action." See M.R.Civ.P. 1. Conduct of counsel or his client that frustrates the beneficent purposes of Rule 16 and of discovery orders must be appropriately penalized. | An appellate court reviews propriety of sanction imposed under Rules of Civil Procedure for failure to comply with discovery or failure to comply with pretrial order by an abuse of discretion standard. Rules of Civil Procedure, Rules 16(d), 37(b)(2). | What is the purpose of both the discovery rules and the pretrial conference? | 026391.docx | LEGALEASE-00130024-LEGALEASE-00130027 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20989 | Reeves v. Travelers Ins. Companies, 421 A.2d 47 | 30+3258 | Although in this case the Superior Court rested its decision to dismiss plaintiff's case with prejudice on M.R.Civ.P. 16(d), it was imposing a sanction for noncompliance with a discovery order, and its action may equally find support in M.R.Civ.P. 37(b)(2).4 The discovery rules (M.R.Civ.P. 26 through 37) are informed by a philosophy of litigation similar to that governing the pretrial conference. "[P]rior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Wright & Miller, Federal Practice and Procedure s 2001 at 15 (1970). It is the purpose of both the discovery rules and the pretrial conference to eliminate the sporting theory of justice, Tiedman v. American Pigment Corp., 253 F.2d 803, 808 (4th Cir. 1958), and to enforce full disclosure. Meaningful pretrial conferences and liberal discovery are two of the principal devices available to effectuate the purpose of the Maine Rules of Civil Procedure "to secure the just, speedy and inexpensive determination of every action." See M.R.Civ.P. 1. Conduct of counsel or his client that frustrates the beneficent purposes of Rule 16 and of discovery orders must be appropriately penalized. | An appellate court reviews propriety of sanction imposed under Rules of Civil Procedure for failure to comply with discovery or failure to comply with pretrial order by an abuse of discretion standard. Rules of Civil Procedure, Rules 16(d), 37(b)(2). | What is the purpose of both the discovery rules and the pretrial conference? | 026395.docx | LEGALEASE-00130107-LEGALEASE-00130109 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 20990 | Caruso v. Pearce, 223 W. Va. 544 | 307A+587 | "The purpose of a scheduling order is to encourage careful pretrial management and to assist the trial court in gaining and maintaining control over the direction of the litigation." As one treatise states:Rule 16 is explicitly intended to encourage active judicial management of the case development process and of trial in most civil actions. Judges must fix deadlines for completing the major pretrial tasks, and judges are encouraged to actively participate in designing case-specific plans for positioning litigation as efficiently as possible for disposition by settlement, motion, or trial. | Dismissal of injured motorist's complaint against driver and driver's employer for failure to prosecute was abuse of discretion; case involved cross- and third-party claims with multiple parties, period of inactivity was just over one year, trial court had not issued scheduling order, and motorist's attorney, although less than diligent in ascertaining status of case, reasonably believed that written discovery between all parties had not yet been completed. Rules Civ.Proc., Rule 41(b). | Does a scheduling order encourage pre-trial management? | 026570.docx | LEGALEASE-00129935-LEGALEASE-00129936 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 20991 | World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 | 25T+143 | Judge Cooper, in two memorandum decisions, ruled that the issue of laches was to be decided by the court rather than by a jury, that the facts pertaining to the issue were "hotly contested" by the parties, and that Bethlehem had not sustained its burden of proving that World unreasonably and prejudicially delayed in bringing the petition. Judge Cooper also ruled, by implication, that the issue of waiver was to be decided by the arbitrators rather than by the court. Consequently, he ordered Bethlehem to proceed to arbitration. Bethlehem appeals from this order, arguing that it was entitled to a jury trial on the issues of laches and waiver, or, alternatively, that at least it was entitled to a hearing before the judge where it would have opportunities to present oral testimony on its behalf and to cross-examine World's witnesses with reference to these issues. | Contract providing for arbitration of any dispute or difference arising between parties as to any matter or thing arising out of or relating to contract was broad enough to cover defense of waiver of rights under arbitration clause, and the issue of waiver was correctly left to the arbitrators. | Can a dispute regarding the waiver of arbitration be referred to arbitration? | Alternative Dispute Resolution - Memo 531 - RK.docx | LEGALEASE-00020128-LEGALEASE-00020129 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 20992 | Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 | 25T+146 | "Connected with" also connotes the necessity of some direct connection; if it did not, the term would be meaningless. Cf. Ethicon Endo"Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572, 1578 (Fed.Cir.1996) (construing a patent claim and stating that "[i]f, as Ethicon argues, "connected to" should be read broadly to include elements which are connected directly or indirectly, then ... the "connected to" limitation would be meaninglessly empty"). | All of cruise ship employee's claims against her employer, arising from her alleged drugging and rape by fellow crewmembers and employer's alleged destruction of evidence and refusal to provide her with proper medical treatment, were not subject to arbitration simply because employee was a "seaman"; plain language of arbitration provision contained in parties' contract imposed limitation that, to be arbitrable, parties' dispute had to relate to, arise from, or be connected with employee's crew agreement or the employment services that she performed for the cruise line, and so though the arbitration provision was broad, it was not limitless. 9 U.S.C.A. S 1 et seq.; 9 U.S.C.A. SS 201-208. | How is the term connected with used in a contract provision? | 007444.docx | LEGALEASE-00131403-LEGALEASE-00131404 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20993 | In re Cox Enterprises Set-top Cable Television Box Antitrust Litig., 835 F.3d 1195 | 25T+143 | The authority relied on by Plaintiffs does not persuade us to the contrary. In Russell v. Citigroup, Inc., 748 F.3d 677 (6th Cir. 2014) the court held that an arbitration agreement did not apply to litigation between the employee and employer that had commenced before the agreement was executed. The agreement covered "employment-related disputes ... which ... arise between" the employer and employee. In part the court based its conclusion on the language of the agreement. It said that "[t]he use of the present-tense 'arise' rather than the past-tense 'arose' or 'present-perfect' 'have arisen,' suggests that the contract governs only disputes that begin 'that begin 'that arise'in the present or future. The present tense usually does not refer to the past." Id. at 679. This analysis has some force. But it cannot overcome our Zink precedent. What Russell says about arise could also be said about the word arising in Zink (Russell distinguished have arisen, not arising, from the word arise) and we said in Zink that the "only ... reasonable interpretation" of the arising language was that it applied to a dispute predating the arbitration agreement. In any event, the agreement in Russell did not include the language "or in any way relate to" that appears in the agreement here. And the word relate does not have the same temporal connotation as arise; we can say that something arises at a particular point in time; but relate is broader and includes a relationship in subject matter that is independent of time. | Antitrust claims by cable service subscribers against cable company, that company allegedly tied its premium cable service to rental of set-top box, fell within scope of arbitration agreement, even though claims arose from events that occurred prior to agreement to arbitrate, since arbitration agreement stated that parties agreed to arbitrate "any and all claims or disputes" that "arise out of or in any way relate to" agreement, services, products, or bills, and term "relate" was broader than term "arise" and included relationship in subject matter that was independent of time. | Does the use of the term arise suggest suggests that the contract governs only disputes that begin that arise in the present or future? | 007454.docx | LEGALEASE-00131423-LEGALEASE-00131424 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 20994 | State v. Derby, 462 N.W.2d 512 | 67+10 | Third-degree burglary is committed by:Any person who enters an unoccupied structure, with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22-30A constituting a misdemeanor... | Defendant's entry of liquor store through window after business hours met unlawful entry requirement of third-degree burglary, as distinguished from shoplifting or retail theft. SDCL 22-30A-19.1, 22-32-8. | What is burglary in the third degree? | Burglary - Memo 38 - RK.docx | ROSS-003300179-ROSS-003300180 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 20995 | United States v. Giggey, 589 F.3d 38 | 350H+1285 | Class C burglaries as defined under Maine law are a residual category which, by contrast to class A or B burglaries, do not involve firearms, other dangerous weapons, entry into dwellings or the infliction or attempt to inflict bodily injury. See Giggey, 551 F.3d at 44 (Lipez, J., concurring in judgment). Accordingly, a class C burglary does not have as an element physical force against another, nor is it one of the crimes (such as burglary of a dwelling) expressly named in the guideline. The question then is whether the class C burglary viewed categorically creates a risk of physical injury comparable to that of the crimes listed in section 4B1.2(a)(2) of the guidelines. Begay, 128 S.Ct. at 1585. | Prior class C non-dwelling burglary in Maine, viewed categorically, had not created risk of physical injury comparable to that of crimes listed in United States Sentencing Guideline for career offenders, and thus could not be considered "crime of violence" for career offender purposes, as applied to defendant after he pleaded guilty to maliciously destroying building by fire that had been owned by organization that received federal financial assistance. 18 U.S.C.A. § 844(f); 28 U.S.C.A. § 994(h); U.S.S.G. §§ 4B1.1(a, b), 4B1.2(a), 18 U.S.C.A.; 17-A M.R.S.A. § 401. | What is a Class C felony burglary? | Burglary - Memo 78 - JK.docx | ROSS-003300209-ROSS-003300210 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 20996 | Walmsley v. Whitfield, 24 La. Ann. 258 | 307A+693.1 | The defendant, appellee, contends that with the dismisal of the principal suit intervention necessarily fell to the ground, and cites 3 An. 331; 4 An. 279; 9 An. 54; 14 An. 426. | The dismissal, on motion of the defendant, of the main action, carries with it the dismissal of an intervention filed in the case. | Does the dismissal of principal suit carry a dismissal of intervention? | 026767.docx | LEGALEASE-00130329-LEGALEASE-00130330 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 20997 | Walton v. New York State Dep't of Corr. Servs., 13 N.Y.3d 475 | 371+2002 | A tax is a charge that a government exacts froma citizen to defray the general costs of government unrelated to any particular benefit received by that citizen (see generally American Ins. Assn. v. Lewis, 50 N.Y.2d 617, 623, 431 N.Y.S.2d 350, 409 N.E.2d 828 [1980] ). Only legislative bodies have the power to impose taxes (see N.Y. Const, art III, " 1). Municipalities and administrative agencies engaged in regulatory activity can assess fees that need not be legislatively authorized as long as " the fees charged [are] reasonably necessary to the accomplishment of the regulatory program" (Suffolk County Bldrs. Assn. v. County of Suffolk, 46 N.Y.2d 613, 619, 415 N.Y.S.2d 821, 389 N.E.2d 133 [1979] ). In the regulatory arena, fees must bear at least "a rough correlation to the expense to which the State is put in administering its licensing procedures or to the benefits those who make the payments receive" (see American Ins. Assn., 50 N.Y.2d at 622, 431 N.Y.S.2d 350, 409 N.E.2d 828; see generally National Cable Television Assn., Inc. v. United States, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 [1974] ). Typically, fees are paid to obtain access to a government service or benefit, such as the fees paid to obtain licenses to practice professions in particular jurisdictions. | Commissions received by Department of Correctional Services (DOCS) from telecommunications provider pursuant to contract, consisting of percentage of provider's revenues from inmate-originated collect calls, were neither a tax, in usurpation of New York Constitution's separation of powers doctrine, nor an improper fee; commissions were expense voluntarily incurred by provider and encompassed within tariff filed with regulatory agencies, and thus not a tax or fee as to provider, and could not be transformed into tax or fee merely by virtue of provider's passing them on to call recipients. McKinney's Const. Art. 3, § 1, Art. 16, § 1; McKinney's Tax Law § 1133(b, c). | Is tax a charge? | Taxation - Memo # 38 - C - CK.docx | ROSS-003301784-ROSS-003301786 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 20998 | Walton v. New York State Dep't of Corr. Servs., 13 N.Y.3d 475 | 371+2002 | A tax is a charge that a government exacts froma citizen to defray the general costs of government unrelated to any particular benefit received by that citizen (see generally American Ins. Assn. v. Lewis, 50 N.Y.2d 617, 623, 431 N.Y.S.2d 350, 409 N.E.2d 828 [1980] ). Only legislative bodies have the power to impose taxes (see N.Y. Const, art III, " 1). Municipalities and administrative agencies engaged in regulatory activity can assess fees that need not be legislatively authorized as long as " the fees charged [are] reasonably necessary to the accomplishment of the regulatory program" (Suffolk County Bldrs. Assn. v. County of Suffolk, 46 N.Y.2d 613, 619, 415 N.Y.S.2d 821, 389 N.E.2d 133 [1979] ). In the regulatory arena, fees must bear at least "a rough correlation to the expense to which the State is put in administering its licensing procedures or to the benefits those who make the payments receive" (see American Ins. Assn., 50 N.Y.2d at 622, 431 N.Y.S.2d 350, 409 N.E.2d 828; see generally National Cable Television Assn., Inc. v. United States, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 [1974] ). Typically, fees are paid to obtain access to a government service or benefit, such as the fees paid to obtain licenses to practice professions in particular jurisdictions. | Commissions received by Department of Correctional Services (DOCS) from telecommunications provider pursuant to contract, consisting of percentage of provider's revenues from inmate-originated collect calls, were neither a tax, in usurpation of New York Constitution's separation of powers doctrine, nor an improper fee; commissions were expense voluntarily incurred by provider and encompassed within tariff filed with regulatory agencies, and thus not a tax or fee as to provider, and could not be transformed into tax or fee merely by virtue of provider's passing them on to call recipients. McKinney's Const. Art. 3, § 1, Art. 16, § 1; McKinney's Tax Law § 1133(b, c). | Is tax a charge that a government exacts from a citizen? | Taxation - Memo # 39 - C - CK.docx | ROSS-003301254-ROSS-003301256 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 20999 | Marks v. Comm'r of Revenue, 875 N.W.2d 321 | 371+3483 | First, we may look to the purpose of the law. BCBSM, Inc. v. Comm'r of Revenue, 663 N.W.2d 531, 533 (Minn.2003); see also Minn.Stat. " 645.16(1), (4) (directing courts to ascertain legislative intent by examining "the occasion and necessity for the law" and "the object to be attained" by the law). Income taxes are founded upon an individual's obligation to contribute to the costs associated with the services, benefits, and protections provided by government. Luther v. Comm'r of Revenue, 588 N.W.2d 502, 509 (Minn. (citing Maguire v. Trefry, 253 U.S. 12, 14, 40 S.Ct. 417, 64 L.Ed. 739 (1920)). That is why Minnesota's income tax regime is meant to tax individuals and entities that have significant contacts with the state. See id.; see also, e.g., Minn.Stat. " 290.17, subd. 2 (taxing wages, even of nonresidents, if their work was performed in Minnesota). | The income tax statute defining "resident" to mean any individual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in the state allows the Commissioner of Revenue to count all the days a taxpayer is physically present in the state to determine whether the taxpayer is a resident, including days spent in the state as a domiciliary. M.S.A. § 290.01(7)(b). | "Are income taxes founded upon an individual's obligation to contribute to the costs associated with the services, benefits, and protections provided by government?" | Taxation - Memo # 42 - C - CK.docx | ROSS-003331054-ROSS-003331055 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | |
| 21000 | Madol v. Dan Nelson Auto. Grp., 372 F.3d 997 | 394+229 | As we have noted before, even when a magistrate judge is hearing a matter pursuant to his or her limited authority to make a "recommended disposition," "a claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review." Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir 2000). Given the arguments that the plaintiffs asserted before the magistrate judge, and the principles contained in Prima Paint and later cases, it would have served no purpose for either the magistrate judge or the district court to conduct an evidentiary hearing or provide more time for discovery, since there are no disputed issues of material fact bearing on the propriety of granting the defendants' motion. The law required that the plaintiffs' claims be referred to arbitration because their arguments of unconscionability "cannot fairly be limited to the making of the arbitration clause," Houlihan, 31 F.3d at 695. The plaintiffs failed to preserve the issue of the DRA's validity for review by the district court because they did not make any discernible arguments to the magistrate judge that go to the making of the arbitration agreement itself. We note, moreover, that the plaintiffs acknowledged in a hearing before the district court that they were not arguing that the DRA is "in and of itself invalid," but that their theory was that "the transactions as a whole from start to finish" were unconscionable. | Even when magistrate judge is hearing matter pursuant to his limited authority to make "recommended disposition," claimant must present all his claims squarely to magistrate judge to preserve them for review. | Do courts refer claims to arbitration when arguments of unconscionability cannot be limited to the making of the arbitration clause? | Alternative Dispute Resolution - Memo 571 - RK.docx | ROSS-003300011-ROSS-003300012 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 21001 | Bohatch v. Butler & Binion, 977 S.W.2d 543 | 289+804 | Partnerships exist by the agreement of the partners; partners have no duty to remain partners. The issue in this case is whether we should create an exception to this rule by holding that a partnership has a duty not to expel a partner for reporting suspected overbilling by another partner. The trial court rendered judgment for Colette Bohatch on her breach of fiduciary duty claim against Butler & Binion and several of its partners (collectively, "the firm"). The Court of appeals held that there was no evidence that the firm breached a fiduciary duty and reversed the trial court's tort judgment; however, the court of appeals found evidence of a breach of the partnership agreement and rendered judgment for Bohatch on this ground. 905 S.W.2d 597. We affirm the court of appeals' judgment. | Partners have no obligation to remain partners; at heart of partnership concept is principle that partners may choose with whom they wish to be associated. | Do partners have a duty to remain partners in the partnership? | Partnership - Memo 310 - SB.docx | ROSS-003285932-ROSS-003285933 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 21002 | Martin v. Reynolds Metals Corp., 297 F.2d 49 | 170A+1581 | Their second contention, which is that the provision for taking samples of forage, feed, air, water, soil, vegetation and mineral supplements for testing is beyond the scope of Rule 34, we find equally without merit. The word 'inspection' has a broader meaning then just looking. The dictionary (Funk & Wagnalls New Standard Dictionary) defines 'inspect' as 'to examine carefully or critically, investigate and test officially, as to inspect food' and an 'inspection' as 'especially, a critical investigation or scrutiny'. We think that 'investigation', when liberally construed, includes the sampling and testing here contemplated. (cf. the majority opinion in Fisher v. United States Fidelity & Guaranty Company, CA 7, 246 F.2d 344, at p. 350) It appears that in a prior action a similar order to this was made and was in effect for some months. If appellants were concerned, as they now profess to be, with possible damage to their property, they could readily have made a showing as they were given an opportunity to do. Under the circumstances, the court could conclude that any damage they might suffer would be negligible. We find nothing in Rule 34 to the effect that one entry only may be ordered. The number should depend upon the necessities of the case. No showing is made that more entries are permitted than are needed. | Word "investigation" under Federal Rule of Civil Procedure pertaining to discovery and production of documents and things for inspection would include taking of samples of forage, feed, air, water, soil, vegetation, and mineral supplements on cattle raisers' land by aluminum plant operator who feared action by cattle raisers based on alleged damage to cattle from fluorides discharged from aluminum plant. Fed.Rules Civ.Proc. rule 34, 28 U.S.C.A. | "Does the word ""inspection"" have a broader meaning than just looking, and means to examine carefully or critically, investigate and test officially, especially a critical investigation or scrutiny?" | Pretrial Procedure - Memo # 1995 - C - UG.docx | ROSS-003328318-ROSS-003328319 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21003 | Christus Santa Rosa Health Care Corp. v. Botello, 424 S.W.3d 117 | 19BH+804 | A nonsuit extinguishes a case or controversy from "the moment the motion is filed" or an oral motion is made in open court; the only requirement is "the mere filing of the motion with the clerk of the court." Shadowbrook Apts. v. Abu'Ahmad, 783 S.W.2d 210, 211 (Tex.1990) (per curiam). If a defendant has a pending claim for affirmative relief, however, the plaintiff's nonsuit is effective for its own claims, but not for the defendant's claims. Thus, barring an affirmative claim against the plaintiff, the effect of a nonsuit is to extinguish the case or controversy regarding the plaintiff's claims without an adjudication of their merits"i.e., the nonsuit's effect is to render the merits of the plaintiff's case moot. See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon, 195 S.W.3d 98, 100 (Tex.2006); see also Epps v. Fowler, 351 S.W.3d 862, 868 (Tex.2011) (holding nonsuit terminates case from the moment it is filed). Nonsuits have also been described as putting the parties back in the position they were in before the suit was filed. See, e.g., Crofts v. Court of Civil Appeals for the Eighth Supreme Judicial Dist., 362 S.W.2d 101, 104 (Tex.1962) (noting nonsuit "places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought"); Hagberg v. City of Pasadena, 224 S.W.3d 477, 484 (Tex.App.-Houston [1st Dist.] 2007, no pet.) ("When a party nonsuits a legal action, the parties are put back in the same positions as before the filing of the suit."); Salinas v. Aguilar, No. 04"11"00260"CV, 2012 WL 848147, (Tex.App.-San Antonio Mar. 14, 2012, no pet.) (mem. op.) ("As a result of the nonsuit, it was as if [plaintiff] had never brought suit in the first place."). | Nonsuited defendant on health care liability claim (HCLC) did not remain a party to the action, for purposes of determining whether plaintiff's faxing of expert report to that defendant during nonsuit period that preceded the refiling of claim complied with requirement of timely serving expert report, by virtue of fact that defendant's request, corrected a discovery response during nonsuit period. V.T.C.A., Civil Practice & Remedies Code § 74.351(a). | "Is barring an affirmative claim against the plaintiff, the effect of a nonsuit is to extinguish the case or controversy regarding the plaintiff's claims without an adjudication of their merits?" | Pretrial Procedure - Memo # 2249 - C - SKG.docx | ROSS-003301432-ROSS-003301433 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | |
| 21004 | State ex rel. Bldg. Owners & Managers Ass'n of Milwaukee v. Adamany, 64 Wis. 2d 280 | 233+1837 | Plaintiffs also argue that the statute fails because it is a property tax law which fails to operate uniformly on all property. Uniformity is required by the Wisconsin Constitution in respect to property taxes.We find that the conflicting arguments in respect to uniformity miss the mark, for we see none of the indicia of a tax law in sec. 539. 1 Cooley, Taxation (4th ed., 1924), sec. 1, p. 61, said:"Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs."This definition was expressly approved in Fitch v. Wisconsin Tax Comm. (1930), 201 Wis. 383, 387, 230 N.W. 37. | Because statute providing that tax reductions due to property tax relief should be passed on by landlords to tenants would require the landlord to collect less rent than the leases obligated the renters to pay, enforcement of the statute would impair the contractual obligation on these leases in violation of the United States and State Constitutions. Laws 1973, c. 90, S 539, U.S.C.A.Const. art. 1, S 10; W.S.A.Const. art. 1, S 12. | Is a tax an enforced proportional contribution? | 044682.docx | LEGALEASE-00131656-LEGALEASE-00131657 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 21005 | Rehg v. Illinois Dep't of Revenue, 152 Ill. 2d 504 | 96H+10 | Analysis of these factors supports a "civil" designation for the Act. Collection of a tax does not result in the imposition of an "affirmative disability or restraint" upon the plaintiff. (Cf. Kennedy v. Mendoza-Martinez (1963), 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644, 661 (statute which divested persons who fled the country to avoid the draft of their citizenship involved an affirmative disability or restraint).) On the contrary, monetary assessments, such as those imposed under the Act, are traditionally regarded as a form of civil relief. (See United States v. Ward (1980), 448 U.S. 242, 256, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742, 754 (Blackmun, J., concurring, joined by Marshall, J.).) Furthermore, while criminal statutes generally come into play only upona finding of scienter, liability under the Act is absolute and does not depend upona finding of criminal intent. See Kennedy v. Mendoza-Martinez (1963), 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644, 661 (a sanction that "comes into play only ona finding of scienter" might be indicative of a criminal proceeding). | Monetary penalty imposed by Cannibis and Controlled Substances Tax Act was not so punitive as to negate civil tax label since collection of tax did not result in imposition of affirmative disability or restraint and liability under Act was absolute and did not depend upon the finding of criminal intent. S.H.A. ch. 120, P 2151 et seq. | Are monetary assessments traditionally regarded as a form of civil relief? | Taxation - Memo # 271 - C - SS.docx | ROSS-003301223-ROSS-003301224 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21006 | United States v. Colacurcio, 659 F.2d 684 | 63+3 | Further, appellants' insistence that extortion can be a defense to bribery is incorrect. See United States v. McPartlin, 595 F.2d 1321 (7th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Therefore, even if the appellants were subjected to extortion, they can still be convicted on the bribery charge. | Extortion cannot be a defense to bribery. | Can extortion be a defense to bribery? | Bribery - Memo #299 - C - JL.docx | ROSS-003300859-ROSS-003300860 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21007 | Swenson v. Erickson, 90 Ill.App. 358 | 289+674(1) | A partner is not liable for tort of copartner not committed within the scope of partnership business. Gilbert v. Emmons, 42 Ill. 147; Rosenkrans v. Barker, 115 Ill. 331; Grund v. Van Vleck, 69 Ill. 478; Durant v. Rogers, 71 Ill. 121; Titcomb v. James, 57 Ill. App. 296; Callahan v. Hyland, 59 Ill. App. 347. | Partner could not be held liable in action for malicious prosecution instituted solely by another partner in name of firm, since tort of one partner was not imputable to another partner who took no part in it. | Is a partner liable for tort of a copartner not committed within the scope of partnership? | 022092.docx | LEGALEASE-00133493-LEGALEASE-00133494 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 21008 | Beckwith v. Dahl, 205 Cal. App. 4th 1039 | 30+3279 | We reject Dahl's argument that because she did not specifically promise to present the trust documents to MacGinnis before his surgery, her statements were too vague or indefinite to constitute fraud. A demurrer merely tests the legal sufficiency of the pleadings. (CCTV, supra, 35 Cal.3d at p. 213, 197 Cal.Rptr. 783, 673 P.2d 660.) The only requirement at the pleading stage is that the allegations must be pled with particularity and specificity. Beckwith has met this requirement because, as discussed above, the allegations in the complaint were not vague. Beckwith clearly alleged Dahl made specific promises to prepare and deliver trust documents to MacGinnis, but she did not intend to prepare them at all when she made that promise. Dahl is essentially arguing that Beckwith misunderstood her statements and misconstrued her intent. However, "[f]raudulent intent is an issue for the trier of fact to decide." (Diamond Woodworks, Inc. v. Argonaut Ins. Co. (2003) 109 Cal.App.4th 1020, 1046, 135 Cal.Rptr.2d 736.) "It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct." (CCTV, supra, 35 Cal.3d at p. 213, 197 Cal.Rptr. 783, 673 P.2d 660.) | When reviewing an order sustaining a demurrer for failure to state a cause of action, the question of plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court. | Is it the ordinary function of a demurrer to test the truth of the plaintiff's allegations? | 023194.docx | LEGALEASE-00132918-LEGALEASE-00132919 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 21009 | Gorsage v. Steinmann-McCord & Co., 138 Kan. 400 | 302+8(15) | "Aside from the defect as to notice, there is a manifest lack of particulars in the petition of facts which would constitute a sufficient charge of fraud and dishonesty. The defendant only bound itself to pay plaintiff for losses sustained by acts of fraud, dishonesty, theft, forgery, embezzlement, wrongful abstraction, or willful misapplication committed by the employee. The charge made against Roberts in the petition is that he made untrue reports of the business done and is only the equivalent of a charge that plaintiff had been defrauded by fraudulent representations. Wherein the reports were fraudulent so as to cause plaintiff to suffer a pecuniary loss is not stated. Did he make false entries in the books as to goods purchased or as to goods sold, or did he wrongfully make false entries of expenses incurred or fail to enter all the expenses in the books that were incurred and payable, is not answered by the reports or the allegations in the petition. It is not enough to employ epithets or general averments of fraud, but the particular facts constituting the fraud must be set out to make a good pleading. In State ex rel. v. Williams, 39 Kan. 517, 18 P. 727, it was said:"'Where fraud and illegality are charged as grounds for the cancellation of a contract, the specific facts constituting the fraud and illegality must be set forth. A mere general averment of fraud and illegality, without stating the facts on which the charge is based, presents no issue, and no proof is admissible thereunder." (Syl. 1.) | Petition alleging that seller fraudulently represented value of bonds and extent of property securing them, without stating facts on which charge was based, held demurrable. Rev.St.Supp.1931, 17-1230. | Does a mere charge of fraud present an issue? | 023245.docx | LEGALEASE-00133024-LEGALEASE-00133025 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21010 | Aetna Cas. & Sur. Co. v. Dini, 169 Ariz. 555 | 307A+751 | Rule VI(a)(2), (3) of the Superior Court Uniform Rules of Practice, 178 A.R.S., requires that the joint pretrial statement contain the contested issues of fact and law which the parties agree or believe are material. The joint pretrial statement filed by the parties listed contested issues of fact and law but did not list as an issue whether the husbands were acting for and on behalf of the community at the time they stole the funds. The first time the issue was raised was one day before trial when appellants announced to the judge that they intended to dispute community liability. The judge stated that the liability of the community had never been an issue up to that time, was not made an issue in the pretrial statement and, therefore, could not be raised at trial. Appellants contend they adequately raised the issue of community liability by agreeing with plaintiff that one of the issues of contested law was, as stated in their joint pretrial memoranda, "Are defendants liable to plaintiff?" We agree with the lower court that such statement does not raise the issue of community liability. The pretrial statement serves to narrow the scope of the legal and factual issues to those which are truly legitimate, prevents surprises and facilitates the trial of the case. The pretrial statement controls the subsequent course of the litigation. Carlton v. Emhardt, 138 Ariz. 353, 674 P.2d 907 (App.1983). In order to raise an issue such as whether or not the husbands were acting for and on behalf of the community when they stole the funds, more specificity is required by the rule than the general statement "Are defendants liable to plaintiffs?" | General statement in joint pretrial memoranda, "Are defendant's liable to plaintiff," was insufficient to raise issue of whether or not husbands acted on behalf of their respective marital communities when they stole funds from insurance company and, thus, where liability of community was not specifically raised until one day before trial, it could not be raised at trial. A.R.S. S 13-2314, subd. G; 178 A.R.S. Super.Ct.Uniform Prac.Rules, Rule VI(a)(2, 3). | What does a pretrial statement serve? | 027127.docx | LEGALEASE-00133099-LEGALEASE-00133100 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21011 | Pulley v. Detroit Eng'g & Mach. Co., 378 Mich. 418 | 413+880.4 | We properly do prescribe and have prescribed the statutory interpretation of "wage-earning capacity." It appears in Hood, supra, and it was quoted with approval in Pigue v. General Motors Corporation, 317 Mich. 311, at pp. 316-317, 26 N.W.2d 900, at p. 903: "What is meant by the term "wage earning capacity after the injury"? It is not limited to wages actually earned after injury, but such a holding would encourage malingering, and compensation is not a pension. On the other hand mere capacity to earn wages, if "nondescript" by reason of injury, affords no measure unless accompanied by opportunity to obtain suitable employment. Opportunity is circumscribed by capacity of the injured and openings to such a wage earner." | "Wage-earning capacity" after injury is not limited to wages actually earned after injury and is not mere capacity to earn wages unless accompanied by opportunity to obtain suitable employment. Comp.Laws 1948 and Supp.1961, SS 411.1-417.14a, 412.9-412.11 and as amended by Pub.Acts 1965, No. 44. | Is workmens compensation a pension? | 047864.docx | LEGALEASE-00132908-LEGALEASE-00132909 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 21012 | Kaletha v. Hall Mercantile Co., 157 Minn. 290 | 413+46 | n cases of this character, we must recognize that such acts as are necessary to the life, comfort, and convenience of the employee while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. The lighting of a cigarette with a match is not in itself attended by the slightest hazard. It was rendered dangerous to appellant only by the presence of this false beard, which was inflammable. The employer was not negligent in furnishing the beard, for the right of appellant to compensation does not arise out of tort, but exists by reason of the Workmen's Compensation Act (Gen. St. 1913, '' 8195-8230). Manifestly, the injury received resulted from a risk incidental to the employment. | It was the intention of the Legislature that an employee's recovery under the Workmen's Compensation Act should be speedy, certain, and definite. | "Does the right to workmens compensation arise out of tort, or does it exist by reason of the Workmens Compensation Act?" | 047899.docx | LEGALEASE-00133128-LEGALEASE-00133129 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21013 | Cummings v. Gassett, 19 Vt. 308 | 8.30E+186 | But, at least, the note was admissible under the count for money had and received. Edgell v. Stanford, 6 Vt. 551. The memoranda at the side of the note are no part of it, as those memoranda, only, are so considered, which contain "an important qualification of the contract." Fletcher v. Blodgett, 16 Vt. 26. Exon v. Russell, 4 M. & S. 505. Williams v. Waring, 10 B. & C. 2, [21 E. C. L. S. 11.] Stone v. Metcalf, 1 Stark. 53, [2 E. C. L. 292.] Pierce v. Butler, 14 Mass. 303. Bayl. on Bills 35, n. (a.) 36, n. (b.) Sanders v. Bacon, 8 Johns. 379. Therefore the court cannot infer, from these memoranda, that the note was executed for any other consideration than cash. | A memorandum on the margin of a note, merely specifying certain items of property at certain sums, the sum total of which, as added together, was equal to the sum on the face of the note, cannot be treated as part of the note for the purpose of showing that the consideration was other than money, so as to defeat an action for money had and received. | Are the memoranda at the side of the note a part of it? | Bills and Notes -Memo 256-VP.docx | ROSS-003330511-ROSS-003330512 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21014 | Miller Elec. Co. v. DeWeese, 589 Pa. 167 | 30=343.1 | The Superior Court relied on two cases in quashing Birmingham's appeal. In Freidenbloom v. Weyant, 814 A.2d 1253 (Pa.Super.2003), the plaintiff filed a praecipe to discontinue the action, and the defendant filed a motion for attorney's fees under " 2503(9), 36 days later. Freidenbloom, at 1256. The Freidenbloom court determined the motion was untimely, citing 42 Pa.C.S. " 5505 for the proposition that a trial court retains jurisdiction to act on a motion for attorney's fees that is filed within 30 days after final resolution of a case. The court stated:A trial court's jurisdiction generally extends for thirty days after the entry of a final order:Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.42 Pa.C.S. " 5505. After the 30 day time period, the trial court is divested of jurisdiction. A praecipe to discontinue a case constitutes a final resolution of all issues. Further, a praecipe for discontinuance has the same effect as a judgment entered in favor of the defendant. Thus, since a praecipe for discontinuance constitutes a final resolution of the case and has the effect of a final judgment, a trial court may consider a petition for fees filed within a period of 30 days after the filing of the praecipe. In summary, requests for counsel fees under 42 Pa.C.S.A. " 2503 are part of the principal claim and must be determined as part of that claim.Freidenbloom, at 1255 (citations and footnote omitted). Since the defendant filed his motion for fees beyond the 30"day period in which the trial court retained jurisdiction, the court held the trial court lacked the authority to act on it. The Superior Court vacated the trial court's order granting the motion, deeming it a "nullity." Id., at 1256. | Where a garnishee succeeds in securing a verdict in its favor, yet is subsequently denied its entitlement to attorney fees by order of court, the garnishee may appeal within 30 days of the date of the denial, regardless of when final judgment was entered. 42 Pa.C.S.A. § 2503(3). | Does a praecipe for discontinuance have the same effect as a judgment entered in favor of the defendant? | Pretrial Procedure - Memo # 2610 - C - KA.docx | ROSS-003304085-ROSS-003304086 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | |
| 21015 | Gort v. Gort, 185 So. 3d 607 | 257A=137.1 | "A party may voluntarily dismiss any claim, and such a dismissal, if accepted by the trial court, deprives the court of jurisdiction over the subject matter of the claim dismissed." Cutler v. Cutler, 84 So.3d 1172 (Fla. 3d DCA 2012). The plaintiff's right to voluntarily dismiss its own lawsuit is almost absolute, with exceptions for fraud on the court and child custody. Tobkin v. State, 777 So.2d 1160, 1162 (Fla. 4th DCA 2001). | Settlement agreement, which required older brother to voluntarily dismiss a petition to determine younger brother's incapacity, and required younger brother and cousin to provide older brother with notice of the younger brother's medical events, copies of his financial statements, and the deed to his house, did not violate state law or public policy, even though no adjudicatory hearing was held, and the three-member examining committee found younger brother to be incapacitated and lacking the capacity to contract, where the guardianship and probate rules did not prohibit a party voluntarily dismissing a petition to determine incapacity, or mandate an adjudicatory hearing. West's F.S.A. § 744.331(1-3). | "May a party voluntarily dismiss any claim, and such a dismissal, if accepted by the trial court, deprives the court of jurisdiction over the subject matter of the claim dismissed?" | 028295.docx | LEGALEASE-00133658-LEGALEASE-00133659 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21016 | Guie v. Byers, 95 Wash. 492 | 95=159 | In general these words apply to the particular debt and instruments between the same parties or their successors. But it has also been said that "renewal" means "the substitution of a new right or obligation for another of the same nature," and that "it is not a word of art; it has no legal or technical significance." Anderson's Law Dictionary. Sponhaur v. Malloy, 21 Ind. App. 287, 52 N. E. 245. In Lowry Nat. Bank v. Fickett, 122 Ga. 489, 50 S. E. 396, it was held that:"There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the obligation. If the obligation changes, there can be no renewal, because there can be no such thing as the re-establishment of an old obligation by the creation of a new obligation different in character." | In general, "renewal," as applied to promissory instruments, means change of something old for something new. | Can there be a renewal if the obligation changes? | Bills and Notes - Memo 276- VP.docx | ROSS-003290301-ROSS-003290302 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21017 | Tapco Europe Ltd. v. Red Square Corp., 2015 WL 7353487 | 307A=483 | Withdrawal of admissions should be granted when upholding the admission would practically eliminate any presentation of the merits of the case; where withdrawal would prevent manifest injustice; and where the party who obtained the admissions failed to prove that withdrawal would result in prejudice to that party. Westmoreland v. Triumph Motorcycle Corp., 71 F.R.D. 192 (D.Conn.1976). The test of prejudice turns on whether a party opposing the withdrawal is rendered less able to obtain the evidence required to prove the matters which had been admitted. Teleprompter of Erie, Inc. v. City of Erie, 567 F.Supp. 1277 (W.D.Pa.1983); Rabil v. Swafford, 128 F.R.D. 1 (D.D.C.1989).Dwight v. Girard Medical Center, 154 Pa.Cmwlth. 326, 623 A.2d 913, 916 (Pa.Cmwlth.1993) (footnote omitted).Furthermore, if the subject matter of the admissions is broad and far-reaching, a court should permit with drawal in the absence of badfaith or substantial prejudice. Teleprompter of Erie, Inc.; Szatanek v. McDonnell Douglas Corp., 109 F.R.D. 37 (W.D.N.Y.1985). Moreover, requests for admissions must call for matters of fact rather than legal opinions and conclusions. California v. The Jules Fribourg, 19 F.R.D. 432 (N.D.Cal.1955). Since conclusions of law are not within the permissible scope of requests for admissions under Rule 4014, those statements in the requests for admissions which constitute conclusions of law are not properly before the court. Commonwealth v. Diamond Shamrock Chemical Co., 38 Pa.Commonwealth Ct. 89, 391 A.2d 1333 (1978). | Refusal to permit buyer of building materials to withdraw its answers to requests for admissions that were deemed admitted by operation of law was not an abuse of discretion, in action brought by seller for failure to pay for materials; buyer was properly served with requests yet "sat on it" for over four months, buyer did not submit any proposed responses to requests until it filed a motion for reconsideration of the order entering judgment on admissions, and proposed responses were mostly either admissions or inadequate vague, general denials and unspecified allegations. Rules Civ.Proc., Rule 4014(b), 42 Pa.C.S.A. | "If subject matter of admissions is broad and far-reaching, should a court permit a withdrawal of admissions in absence of bad faith or substantial prejudice?" | 028697.docx | LEGALEASE-00134058-LEGALEASE-00134059 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21018 | United States v. Carson, 464 F.2d 424 | 110k438.1 | There is no doubt that federal bribery statutes have been construed to cover any situation in which the advice or recommendation of a Government employee would be influential, irrespective of the employee's specific authority (or lack of same) to make a binding decision. See United States v. Heffler, 402 F.2d 924 (3rd Cir. 1968), cert. denied, Cecchini v. United States, 394 U.S. 946, 89 S.Ct. 1280, 22 L.Ed.2d 480 (1969); Parks v. United States, 355 F.2d 167 (5th Cir. 1965); United States v. Labovitz, 251 F.2d 393 (3rd Cir. 1958); Wilson v. United States, 230 F.2d 521 (4th Cir.), cert. denied, 351 U.S. 931, 76 S.Ct. 789, 100 L.Ed. 1460 (1956); Krogmann v. United States, 225 F.2d 210, 225 (6th Cir. 1955); Hurley v. United States, 192 F.2d 297, 300 (4th Cir. 1951); Canella v. United States, 157 F.2d 470, 480-481 (9th Cir. 1946). The policy foundation on which this interpretive approach rests is central to the administration of justice at all levels of representative democracy. | Where court, prior to trial, ordered counsel for both parties to listen to tapes to determine where they disagreed as to words heard on the tapes, where parties agreed that the transcripts accurately reflected the words on the tapes, with certain exceptions as to which it was agreed that the transcripts would contain the version believed accurate by each party, and where government agreed with most of the changes sought by defense counsel, it was not an abuse of discretion to admit the tapes and transcripts into evidence, in prosecution for conspiracy to travel in interstate commerce in furtherance of bribery, and for perjury, nor to allow jury to retain the transcripts during trial and during their deliberations. 18 U.S.C.A. SS 371, 1621. | Is the bribery statute applicable where the advice or recommendation of the government employee would be influential? | 011489.docx | LEGALEASE-00135874-LEGALEASE-00135875 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 21019 | Ex parte Mattox, 683 S.W.2d 93 | 63k1(1) | Mattox argues that " 32.43(c) does not give adequate notice of the conduct it prohibits. He asserts that because the economic gain or advantage need not accrue to the person to whom the offer is made, a person could be prosecuted for offering a benefit to a fiduciary of whom he had no knowledge. Mattox finds a similar problem with the definitions of "fiduciary" and "beneficiary" contained in " 32.43(a), arguing that it is impossible for an individual to know if the person to whom he offers a benefit is a fiduciary. These arguments fail when it is recalled that the State must prove that the offeror acted with the requisite culpable mental state. | Statute which defines and proscribes commercial bribery is not strict liability statute, but criminalizes only those offers of benefits, acceptance of which are in consideration for breach of fiduciary duty, and state must prove knowledge that offeree is fiduciary and that fiduciary would violate duty owed to his beneficiary or otherwise cause harm to his beneficiary by accepting offered benefit. V.T.C.A., Penal Code SS 1.07(a)(6), 32.43(a-c). | Should the culpable mental state of the offeror be shown for the prosecution of commercial bribery? | Bribery - Memo #344 - C JL.docx | ROSS-003290361-ROSS-003290362 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 21020 | United States v. Rooney, 37 F.3d 847 | 63k2 | As is evident in many of our cases dealing with bribery, a fundamental component of a "corrupt" act is a breach of some official duty owed to the government or the public at large. In United States ex rel. Sollazzo v. Esperdy, 285 F.2d 341 (2d Cir.), cert. denied, 366 U.S. 905, 81 S.Ct. 1049, 6 L.Ed.2d 204 (1961), we said that "[b]ribery in essence is an attempt to influence another to disregard his duty while continuing to appear devoted to it or to repay trust with disloyalty." Id. at 342. Similarly, in United States v. Jacobs, 431 F.2d 754 (2d Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971), we pointed out that "[t]he evil sought to be prevented by the deterrent effect of [the bribery statute] is the aftermath suffered by the public when an official is corrupted and thereby perfidiously fails to perform his public service and duty." Id. at 759. Finally, in United States v. Zacher, 586 F.2d 912 (2d Cir.1978), we recognized that "[t]he common thread that runs through common law and statutory formulations of the crime of bribery is the element of corruption, breach of trust, or violation of duty." Id. at 915. | Manifest purpose of statute prohibiting theft or bribery concerning programs receiving federal funds is to safeguard finite federal resources from corruption and to police those with control of federal funds. 18 U.S.C.A. S 666. | What is the fundamental component of a corrupt act prohibited by bribery statute? | Bribery - Memo #371 - C JL.docx | ROSS-003303594-ROSS-003303595 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21021 | United States v. Owens, 697 F.3d 657 | 63k11 | The Government admits that the issuance of the certificates of occupancy in this case "does not have an easily-quantified exact dollar value." Section 666(a) is ambiguous on the question of how to measure value, and we and other circuits have adopted a variety of approaches to determine the value of the subject matter of a bribe when it is an intangible benefit or its value is difficult to quantify. The easiest and most obvious way is by looking at how much someone in the market was willing to pay for the benefit and an official was willing to take to provide the benefit"the value of the bribe. This means that the bribe amount "may suffice as a proxy for value; at least it provides a floor for the valuation question." Robinson, 663 F.3d at 275; see also United States v. Townsend, 630 F.3d 1003, 1012 (11th Cir.2011) ("[T]he value of an intangible in the black market of corruption is set at the monetary value of what a willing bribe-giver gives and what a willing bribe-taker takes in exchange for the intangible."); United States v. Marmolejo, 89 F.3d 1185, 1194 (5th Cir.1996) (arriving at an estimate of the value of conjugal visits obtained through the bribery of prison officials "in the same way an appraiser would value an asset"by looking at how much a person in the market would be willing to pay for them") (citation omitted). This method of valuation does not help the Government meet its burden in this case; Owens' acceptance of two $600 bribes in exchange for the issuance of the certificates falls far short of the $5,000 threshold. | Evidence was insufficient to support zoning inspector's conviction of two counts of federal program bribery for accepting two $600 bribes in exchange for issuing certificates of occupancy for four newly constructed homes; because government failed to put forth any evidence linking the mortgages and the construction costs to the value of the issuance of certificates, it failed to prove that the subject matter of the bribes met the statutory $5,000 threshold. 18 U.S.C.A. S 666(a)(1)(B). | What is the easiest and most obvious way to determine the value of the subject matter of the bribe? | Bribery - Memo #377 - C - LB.docx | ROSS-003316188-ROSS-003316189 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21022 | Kurtz v. Morse Oil Co., 114 Conn. 336 | 48Ak246(8) | The court in its charge indicated that the traveled portion of the highway was "no what portion was occasionally traveled but what portion was usually or customarily traveled." As it is a matter of common knowledge that the shoulders of a road are only occasionally traveled, and the hardened surface is the portion customarily traveled the jury, if they followed this instruction could hardly have reached any other conclusion than that the hardened surface of the road constituted the traveled portion of it. The court, however, also charged that there were "undoubtedly conditions existing in which the traveled portion is not so limited to the hard or paved part," and that it was a question of fact for the jury as to "where the traveled portion of the highway at that point was." This permitted the jury to find that the traveled portion of the highway at that point extended beyond the paved portion, and included the dirt shoulder of the road. As already indicated, we think the statute permits and requires a construction that the traveled portion of the highway comprises only that portion intended for normal travel, excluding the dirt shoulders on either side. There was error in this portion of the charge. | In action for death of driver of automobile which collided with passing truck at curve in macadamized highway, instruction on what constitutes "traveled portion" held erroneous. Gen.St.1930, S 1639 (Rev.1949, S 2489). | What is meant by traveled portion of the highway? | Highways -Memo 92 - GP.docx | LEGALEASE-00026027-LEGALEASE-00026028 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21023 | Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553 | 30+3279 | In order to survive demurrer, we have held that a complaint must allege[] sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action. Hubbard v. Dresser, Inc., 271 Va. 117, 122*23, 624 S.E.2d 1, 4 (2006) (citation and internal quotation marks omitted). | Because the decision whether to grant a demurrer involves issues of law, the appellate court reviews the circuit court's judgment de novo. | "To survive demurrer, must a complaint allege sufficient facts to constitute a foundation in law for the judgment sought?" | Pleading - Memo 333 - RMM.docx | ROSS-003304187-ROSS-003304188 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21024 | First Nat. Bank v. Wolfson, 271 Mass. 292 | 83E+629 | G. L. c. 107, * 91, provides that as respects one another indorsers are liable prima facie in the order in which they indorse, but evidence is admissible to show that as between or among themselves they have agreed otherwise. There was no finding that the indorsers signed as joint parties or intended to be bound otherwise than in the order in which they indorsed. Bamford v. Boynton, 200 Mass. 560, 562, 86 N. E. 900. In Weeks v. Parsons, 176 Mass. 570, 575, 58 N. E. 157, the finding was made that it was intended and understood that the indorsements were to be joint and not several. It is unnecessary to decide whether the rights of the parties would be the same if they had been found to have entered into a joint undertaking as indorsers. The word "instrument" refers to one that is negotiable, G. L. c. 107, * 18; and to be negotiable the instrument must conform to the statutory requirements. G. L. c. 107, * 23. If the waiver appears among the terms preceding the signature of the maker, and to which he subscribes, the first part of section 133 applies. In contrast to this part of the section is the provision relating to a waiver above the name of an indorser which binds him only. The indorsement must be written on the instrument itself or upon a paper attached thereto. G. L. c. 107, * 54. The second part of section 133 refers to a waiver above the signature of any such indorser. Parties to a promissory note may make as part of their contract contemporaneous stipulations "not contained in the body of the instrument," but appearing elsewhere upon it. Barnard v. Cushing, 4 Metc. 230, 231, 38 Am. Dec. 362; Shaw v. First Methodist Episcopal Society, 8 Metc. 223, 226; Costelo v. Crowell, 127 Mass. 293, 294, 34 Am. Rep. 367. | Waiver of demand, protest, and notice of nonpayment printed above first indorsement on note was part of contract of first indorser only. G.L. c. 107, SS 18, 86, 133 (M.G.L.A. c. 106 SS 1-201(1, 4, 5, 14, 20, 44), 3-102(1) (a, e), 3-104(2) (a, d), 3-202, 3-303, 3-410(1), 3-402, 3-511(6)). | Can the parties to a promissory note make as part of their contract contemporaneous stipulations appearing elsewhere upon the note? | Bills and Notes -Memo 240 -VP.docx | ROSS-003305029-ROSS-003305030 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21025 | People v. Hernandez, 2002 WL 1472661 | 110+29(11) | Defendant argues that this case is factually indistinguishable from Bauer. We disagree. The two cases are actually quite different both legally and factually. The legal distinction is that Bauer did not involve punishment for burglary as this case does. Both robbery and theft, the crimes at issue in Bauer, make punishable the act of taking property. ("" 211, 484.) Burglary does not require any taking, but involves an entry that invades the victim's possessory interest in a building or other enclosure. The burglary statute is not necessarily aimed at the danger posed by the intended theft. The statute is aimed at the danger caused by the unauthorized entry itself. (People v. Davis (1998) 18 Cal.4th 712, 721, 76 Cal.Rptr.2d 770, 958 P.2d 1083.) The nature of the criminal act involved in burglary, therefore, is quite different than the act of robbery or theft. One may take a number of items of property in the course of one criminal act of taking. But each burglarious entry is generally a separately punishable act | Substantial evidence supported trial court's implied finding that defendant's offenses of vehicle tampering and burglary were independent criminal acts warranting separate punishment; even though defendant's two acts were part of a course of criminal conduct, the one was not incidental to the other, as defendant entered garage, rummaged about car that was in the garage, took from the car and left the garage, and then proceeded to enter an unlocked car that was parked in driveway and rummage about in it. West's Ann.Cal.Penal Code SS 459, 460; West's Ann.Cal.Vehicle Code S 10852. | Are burglary and theft separate acts? | 012756.docx | LEGALEASE-00137414-LEGALEASE-00137416 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21026 | City of Osceola v. Gjellefald Const. Co. of Forest City, 220 Iowa 685 | 302+8(1) | Under our system of pleading, section 11111, subd. 3, Code 1931, a pleading must plead ultimate facts. "A pleader must plead the ultimate facts in the case. He cannot plead conclusions by themselves. A good pleading consists of the statement of the ultimate facts in the case, and, when so stated, the pleader has a right to plead his conclusion based upon those facts." Townsend v. Armstrong (Iowa) 260 N. W. 17, 18; Taylor County Farm Bureau v. Board, 218 Iowa, 937, 252 N. W. 498. In a suit on a bond, as is the case at bar, section 11217, Code 1931, provides that "The party suing thereon shall notice the conditions and allege the facts constituting the breaches relied on." As stated in the Townsend and Taylor County Farm Bureau Cases, if a petition states facts sufficient to constitute a cause of action, it may further state the conclusions to which such facts lead. The trial court, therefore, could properly have refused to strike the statements of the petition which were conclusions, if the petition contained a sufficient statement of facts, or, if the trial court required the plaintiff to amend and state sufficient facts to furnish a basis for such conclusions. | Pleadings should state facts, and not mere conclusions. | Should a good pleading consist of the statement of the ultimate facts? | Pleading - Memo 347 - RMM.docx | ROSS-003290257-ROSS-003290258 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 21027 | Wortham v. State, 5 Ark. App. 161 | 67+41(3) | A case substantially similar to the one at bar is Norton v. State, 271 Ark. 451, 609 S.W.2d 1 (1980). In that case, the Court said:At most, the evidence revealed that appellant was standing inside the doorway of an office building which he had illegally entered and from which nothing was taken, speaking to his friends passing by. Although criminal intent is by nature subjective and usually provable only by circumstantial evidence, it remains an independent and indispensible element of the crime of burglary and cannot be presumed from another fact, the establishment of which is also essential to a conviction of burglary. | Where defendant was merely seen inside open door of residence and State made no attempt to show purpose which defendant might have had for being there and did not offer proof of any intent on part of defendant to commit a crime, jury's finding that defendant intended to commit offense of burglary could only have been based upon speculation and conjecture, even though defendant ran when a young girl in house saw him and screamed, and conviction would be reversed. Ark.Stats. S 41-2002. | Is the intent required for burglary subjective? | 012793.docx | LEGALEASE-00138967-LEGALEASE-00138970 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21028 | United States v. Rodriguez, 790 F.3d 951 | 110+494 | A reckless disregard for the safety of human life has both a subjective and an objective component. First, the defendant must be aware of the risk his conduct created (here, that the laser had the ability to blind or distract a pilot enough to cause a crash). United States v. Trinidad"Aquino, 259 F.3d 1140, 1145"46 (9th Cir.2001); United States v. Albers, 226 F.3d 989, 994"95 (9th Cir.2000), cert. denied, 531 U.S. 1114, 121 S.Ct. 859, 148 L.Ed.2d 773 (2001). As the Supreme Court recognized in Farmer v. Brennan, "[t]he criminal law[ ] [ ] generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware." 511 U.S. 825, 836"37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). | The fact that defendant intentionally shined laser pointer at a helicopter was not, in and of itself, sufficient to support jury finding that he acted with reckless disregard for the safety of human life, as required to support his conviction for attempting to interfere with the safe operation of an aircraft; government's own expert testified that it was impossible for even an experienced laser professional to tell a laser's power merely by observing it and that the general public was unaware that 90 percent of green lasers imported into the United States were stronger than allowed by federal regulations. 18 U.S.C.A. S 32(a)(5), (a)(8). | What is relevant inquiry in finding recklessness? | Disorderly Conduct-Memo 48- GP.docx | ROSS-003317594-ROSS-003317595 | Condensed, SA, Sub | 0.1 | 0 | 1 | | 1 | |
| 21029 | Newman v. Newman, 245 A.D.2d 353 | 134+139 | As in Battaglia (supra, at 933, 457 N.Y.S.2d 915), neither a complaint nor a responsive pleading was ever served in this action, thereby giving to the plaintiff herein the "absolute and unconditional right to discontinue [his] action without seeking permission through a court order, merely through the service of the notice upon defendant" (see, Giambrone v. Giambrone, 140 A.D.2d 206, 528 N.Y.S.2d 58). When an action is discontinued, it is as if it had never been; everything done in the action is annulled and all prior orders in the case are nullified (Brown v. Cleveland Trust Co., 233 N.Y. 399, 135 N.E. 829; Weldotron Corp. v. Arbee Scales, 161 A.D.2d 708, 555 N.Y.S.2d 844; Mahle Print. Press and Mfg. Co. v. Amtorg Trading Corp., 278 App.Div. 682, 103 N.Y.S.2d 493). | Husband's voluntary discontinuance ended entire divorce action, and, therefore, action could not proceed upon wife's counterclaim. McKinney's CPLR 3217(a), par. 1. | "Where no pleadings have been served, does a plaintiff have the absolute and unconditional right to discontinue an action without seeking judicial permission by serving a notice upon the defendant?" | 038543.docx | LEGALEASE-00139131-LEGALEASE-00139133 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | 1 |
| 21030 | United States v. Jefferson, 562 F. Supp. 2d 719 | 372+1017 | When a public official has been bribed, he breaches his duty of honest, faithful and disinterested service. While outwardly purporting to be exercising independent judgment in passing on official matters, the official has been paid for his decisions, perhaps without even considering the merits of the matter. Thus, the public is not receiving what it expects and is entitled to, the public official's honest and faithful service. | Indictment will sufficiently charge violation of honest services law if fraud statute where it alleges that public official intentionally failed to disclose existence of direct interest in matter on which he is passing. 18 U.S.C.A. SS 1343, 1346. | What duties of a public official are breached in bribery? | 011936.docx | LEGALEASE-00139617-LEGALEASE-00139618 | Condensed, SA, Sub | 0.43 | 0 | 1 | | 1 | 1 |
| 21031 | Dynalectron Corp. v. Union First Nat. Bank, 488 F. Supp. 868 | 172H+907 | D.C.Code s 3-116 (1973) provides that a check payable to two or more payees in the alternative is negotiable with only one endorsement whereas a check payable jointly to two or more payees is not negotiable without the endorsements of all payees. Whether the checks in the instant case are payable in the alternative or payable jointly turns on the meaning of the symbol "/", known as a virgule. The virgule is normally used to separate alternatives. Thus, a bank exercising reasonable care and acting in good faith would necessarily interpret a check drawn to two payees whose names are separated by a virgule as being drawn payable to the payees in the alternative. Ryland Group, Inc. v. Gwinnett County Bank, 151 Ga.App. 128, 258 S.E.2d 776 (1979). Contrary to Plaintiff's contentions, in the instant case the Defendant bank was under no duty to inquire concerning the intent of the drawer of the check. Moreover, the affidavit of Floyd J. Crosslin, submitted by the Plaintiff, indicates that the drawer prepared the checks in the manner at issue upon explicit instructions from Shrader and not because the drawer was itself concerned with whether they were payable either jointly or in the alternative. | Under Washington D.C. Code, a check drawn payable to two payees whose names are separated by a virgule is payable to the payees in the alternative and, hence, bank was not guilty of negligence and conversion in accepting and crediting such a check on signature of only one of the payees. D.C.C.E. S 28:3-116. | What is a Virgule? | 010259.docx | LEGALEASE-00140111-LEGALEASE-00140112 | Condensed, SA, Sub | 0.74 | 0 | 1 | | 1 | 1 |
| 21032 | Plunkett v. Bd. of Pension Comm'rs of City of Hoboken, 113 N.J.L. 230 | 268+200(2) | The legislative purpose is not open to doubt. The statutory scheme is to make retirement compulsory at the age of sixty-five years, and optional with the member after he has reached the age of fifty years, unless he shall sooner sustain "permanent disability in the performance of his duty," in which event he shall, upon the certificate of the departmental surgeon or physician, or other physician designated by the pension commission, be retired upon the prescribed pension. "Retirement" connotes membership surrendered or lost at the instant of time it becomes effective. Moreover, honorable service is a sine qua non. The underlying considerations for this policy are manifest. A contrary policy would make for departmental inefficiency. The inducement for efficient and conscientious service, after the member attained the age of fifty years, would be immeasurably lessened, if he could, in the event of a conviction of charges of misconduct, insist that his dismissal be accompanied by the statutory pension. It is not incumbent upon a municipality, or other division of government, to establish a system of pensions. It is rather a question of public policy. The pensioning of civil servants, as well as those in private employment, is designed primarily to attain a high standard of service, at a relatively low wage cost. A basic consideration is that a guaranty against want, when the years of productivity have ended, will heighten the morale of the workers and enhance the quality of the service rendered. And that being so, it goes without saying that one of its fundamental purposes is to secure good behavior and the maintenance of reasonable standards of discipline during service. | "Honorable service" is that characterized by or in accordance with principles of honor, and one so serving is scrupulously upright, and shows a fine regard for obligations as to conduct, and honorable service without limit as to time is necessary for recovery of statutory pension by fireman who has honorably served for 20 years. N.J.S.A. 43:16-1. | What is the fundamental purpose of the pensioning of civil servants? | 022776.docx | LEGALEASE-00140532-LEGALEASE-00140533 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | 1 |
| 21033 | In re Ricketts Const. Co., 441 B.R. 512 | 371+2005 | In addition, Virginia courts strictly construe the power to tax. In Tultex, the Court remarked that " 'statutes imposing taxes are to be construed most strongly against the government, and in favor of the citizen, and are not to be extended beyond the clear import of the language used. Whenever there is just doubt, the doubt should absolve the taxpayer from his burden.' " 250 B.R. at 564 (citing City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)). The clear import of section 58.1"3942(C) is to create a lien in the assessed property"not all of the Debtor's property. Therefore, the Code of Virginia does not permit the City to obtain a lien against the Fund by assessing taxes against the Debtor's motor vehicles. | Virginia courts strictly construe the power to tax. | "In re Ricketts Const. Co., Inc., 441 B.R. 512." | Pretrial Procedure - Memo # 5360 - C - SU.docx | LEGALEASE-00030118-LEGALEASE-00030119 | Condensed, SA | 0.93 | 0 | 1 | | 0 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21034 | Flex Techs. v. Am. Elec. Power Co., 41 N.E.3d 174 | 230+31.2(1) | A Civ.R. 12(B)(1) motion allows a trial court to dismiss a complaint when the trial court lacks subject-matter jurisdiction at the time the complaint was filed. The issue under Civ.R. 12(B)(1) is "whether any cause of action cognizable by the forum has been raised in the complaint." State ex rel. Bush v. Spurlock, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989), citing Avco Fin. Servs. Loan, Inc. v. Hale, 36 Ohio App.3d 65, 67, 520 N.E.2d 1378 (10th Dist.1987). Appellate courts review a decision to dismiss under such a motion de novo, employing the same standard as the trial court. Howard v. Supreme Court of Ohio, 10th Dist. Franklin Nos. 04AP*1093, 04AP*1272, 2005-Ohio-2130, 2005 WL 1022911, 6, citing Kramer v. Installations Unlimited, Inc., 147 Ohio App.3d 350, 352, 2002-Ohio-1844, 770 N.E.2d 632 (5th Dist.). | Trial court's dismissal of customer's complaint against electric utility, based on exclusive jurisdiction of Public Utilities Commission of Ohio (PUCO) over claim, did not deprive customer of a right to a trial by jury for its claim that power surgescaused equipment damage; prior to the adoption of the state constitution, there was no common law right to a jury trial in a case against a public utility that allegedly violated its service obligation. Const. Art. 1, 5 5. | Is the issue under a motion to dismiss for lack of jurisdiction over the subject matter whether any cause of action cognizable by the forum has been raised in the complaint? | 032882.docx | LEGALEASE-00140049-LEGALEASE-00140050 | Condensed, SA, Sub | 0.42 | 0 | 1 | | 1 | |
| 21035 | Stephens v. Joyal, 45 Vt. 325 | 307A+68 | The deposition of Richard Moore was properly excluded. All parties to the suit, both plaintiffs and defendants, must be correctly named in the caption and certificate of the deposition. Dupy v. Wickwire, 1 D. Chip. 237; Swift v. Cobb et als. 10 Vt. 282; Haskins v. Smith et als. 17 Vt. 263. | A deposition under a citation and caption as in a suit of "A.S. v. M.J., Administratrix," in a case docketed as "A.S. v. J.J.'s Estate," held to be admissible, M.J. being the defendant in fact. | "In the caption of a deposition, must all parties be individually and correctly named?" | 033386.docx | LEGALEASE-00140686-LEGALEASE-00140687 | Condensed, SA, Sub | 0.31 | 0 | 1 | | 1 | 1 |
| 21036 | State v. Talbert, 233 N.C. App. 403 | 257A+469(2) | Under the Uniform Code of Military Justice, rape is always, and under any circumstances, deemed as a matter of law to be a crime of violence. United States v. Bell, 25 M.J. 676 (A.C.M.R.1987), rev. denied, 27 M.J. 161 (C.M.A.1988); United States v. Myers, 22 M.J. 649 (A.C.M.R.1986), rev. denied, 23 M.J. 399 (C.M.A.1987). As stated in Myers, military courts "specifically reject the oxymoronic term of "non-violent rape." The more enlightened view is that rape is always a crime of violence, no matter what the circumstances of its commission." Myers, 22 M.J. at 650. " Among common misconceptions about rape is that it is a sexual act rather than a crime of violence." United States v. Hammond, 17 M.J. 218, 220 n. 3 (C.M.A.1984). | Defendant's second-degree rape conviction, pursuant to statutory section defining second-degree rape as vaginal intercourse with another person who is mentally disabled, mentally incapacitated, or physically helpless, involved the "use of force or threat of serious violence," and thus, defendant's conviction constituted an "aggravated offense," as required to support trial court's order requiring defendant to enroll in lifetime satellite-based monitoring (SBM); defendant was convicted ofraping a physically helpless victim, such that nature of the crime and elements of the offense necessarily involved a threat of violence against the victim. West's N.C.G.S.A. SS 14-27.3(a)(2), 14- 208.6(1a), 14-208.40(a). | Is rape under the Uniform Code of Military Justice deemed as a matter of law to be a crime of violence? | Armed Services - Memo 245 - TB.docx | LEGALEASE-00030541-LEGALEASE-00030542 | Condensed, SA, Sub | 0.02 | 0 | 1 | | 1 | 1 |
| 21037 | Salmer v. Lathrop, 10 S.D. 216 | 307A+76.1 | Were the contention of counsel for defendants tenable, every immaterial change in the title of an action, made pursuant to an order of the court by way of amendment, substitution, or intervention after taking a deposition, and before trial, would be sufficient to exclude all evidence thus procured, though otherwise subject to no objection. "Statutes directing that the envelope or wrapper covering a deposition shall be indorsed with the style of the cause and otherwise have been liberally construed, the prevailing object being only to preserve the purity of the deposition." 6 Enc. Pl. & Prac. p. 535. Under a system which, looking to substance rather than form, requires courts to disregard trivial errors or informalities, and, to promote justice, allows liberal amendments as to parties, a deposition taken in a cause, and relating to the subject-matter upon which the action is based, should not be suppressed, at the instance of parties defendant, for the sole reason that the title of the cause as instituted, and as the same existed at the taking of said deposition, is found to be indorsed upon the sealed envelope in which the same was transmitted, instead of the title as subsequently amended, and containing the names of additional, though disinterested, parties plaintiff. | It is no ground for exclusion of deposition that after it was taken for plaintiff, and returned in envelope bearing title of the cause, as prescribed by Comp. Laws, S 5292, other persons were, by amendment, made plaintiffs; the issues not being materially changed or defendant prejudiced thereby. | Does return on a deposition envelope serve the purpose to preserve the purity of the return? | Pretrial Procedure - Memo # 5460 - C - TM.docx | LEGALEASE-00031317-LEGALEASE-00031318 | Condensed, SA, Sub | 0.77 | 0 | 1 | | 1 | 1 |
| 21038 | Cleveland Raceways v. Bowers, 163 N.E.2d 73 | 371+2005 | First. The power to tax is the power to destroy, even if plaintiffs have a property interest subject to taxation. | The power to tax is the power to destroy. | Is the power to tax the power to destroy? | Taxation - Memo # 594 - C - NS.docx | ROSS-003316725-ROSS-003316726 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 21039 | Severstal U.S. Holdings v. RG Steel, 865 F. Supp. 2d 430 | 25T+114 | These provisions prohibit double-recoveries under the SPA for the same "Loss" via indemnification and a purchase price adjustment. The agreement contemplates that a claim under the SPA can have a dual nature, such as those that are capable of being asserted as proposed post-closing adjustments or a claim for indemnification. For example, if a "Loss" has already been addressed by being "reflected as a liability in the calculation of Final Net Working Capital," the party responsible for the Loss has no indemnity obligation in respect of such Loss. SPA " 8.02(c)(vii). Additionally, if a breach of Section 2.23 has already been addressed by "tak[ing] [that Loss] into account in the calculation of Final Net Working Capital," RG Steel would have no claim for indemnification for such Loss. SPA " 2.23. This prohibition on double-recoveries for the same harm is only necessary because the parties agreed to have more than one avenue of recovery. Because the SPA does not direct how such a dual-natured claim must be asserted, the presumption is for arbitrability. | Under the Federal Arbitration Act (FAA), courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms. 9 U.S.C.A. S 1 et seq. | Do courts presume arbitrability when the agreement does not direct how dual-natured claims must be asserted? | Alternative Dispute Resolution - Memo 606 - RK.docx | ROSS-003287018-ROSS-003287019 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21040 | United States v. Bordallo, 857 F.2d 519 | 63+1(2) | Guam is not a state.In the absence of express congressional intent to include Guam within the proscriptions of this statute, we cannot hold that the statutory provisions apply to Guam. We therefore conclude that to reverse Bordallo's convictions for three counts of bribery under 18 U.S.C. 371. | Guam is not "state" for purposes of bribery statute applicable to agent of state agency. 18 U.S.C.A. S 666. | Do bribery statutes apply to non-states? | 011211.docx | LEGALEASE-00142384-LEGALEASE-00142385 | Condensed, SA, Sub | 0.7 | 0 | 1 | | 1 | 1 |
| 21041 | United States v. McElroy, 910 F.2d 1016 | 63+1(2) | The conduct prohibited by " 215(a), which is limited to acts that are done "corruptly," is described in sufficiently plain terms to permit an ordinary person to understand what conduct is prohibited. Giving and accepting things of value are not vague concepts. The term "corruptly" is ordinarily understood as referring to " "act[s] done voluntarily and intentionally and with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means. The motive to act corruptly is ordinarily a hope or expectation of either financial gain or other benefit to oneself or some profit or benefit to another." " United States v. Brunson, 882 F.2d 151, 154 n. 2 (5th Cir.1989) (quoting district court's instructions with respect to " 215(a)). | Under federal bank bribery statute prohibiting acts done "corruptly," motive to act corruptly is ordinarily hope or expectation of either financial gain or other benefit to oneself or some profit or benefit to another. 18 U.S.C.A. S 215(a). | What does corruptly mean? | Bribery - Memo #246 - C - EB.docx | ROSS-003301591-ROSS-003301592 | Condensed, SA, Sub | 0.69 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21042 | Berdick v. Costilla, 97 So. 3d 316 | 30+3284 | This court reviews de novo the final judgment of dismissal for failure to state a cause of action. See Meadows Cmty. Ass'n v. Russell"Tutty, 928 So.2d 1276, 1278 (Fla. 2d DCA 2006). "[I]n ruling on a motion to dismiss a complaint for failure to state a cause of action, [a court is] confined to a consideration of the allegations found within the four corners of the complaint."Thompson v. Martin, 530 So.2d 495, 496 (Fla. 2d DCA 1988) (citing Bricker v. Kay, 446 So.2d 1151 (Fla. 3d DCA 1984)). "A motion to dismiss is not a substitute for a motion for summary judgment...." Id. (citing Dunnell v. Malone & Hyde, Inc., 425 So.2d 646 (Fla. 3d DCA 1983)). "The purpose of a motion to dismiss is to test the legal sufficiency of a complaint, not to determine factual issues." Sealy v. Perdido Key Oyster Bar & Marina, LLC, 88 So.3d 366, 367"68 (Fla. 1st DCA 2012). | Appellate court reviews de novo the final judgment of dismissal for failure to state a cause of action. | Is the purpose of a motion to dismiss for failure to state a cause of action and to test the legal sufficiency of a complaint? | 033863.docx | LEGALEASE-00143548-LEGALEASE-00143549 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 21043 | Wyoming State Tax Comm'n v. BHP Petroleum Co. Inc., 856 P.2d 428 | 260+87 | Ad valorem taxes are taxes on production. Union Pacific Resources Co. v. State, 839 P.2d 356, 361 (Wyo.1992). The unit agreements do not provide to relieve mineral owner lessor from tax lien that arises when lessee of production ownership for any unit operator; rather, the agreements provide the unit operator with rights related to producing oil and gas. The delegation in the unit agreements here is much more limited than the State indicates. The delegation here is analogous to a corporation delegating to an officer the authority to receive tax notices and taxes from different corporate divisions and remit them to the tax assessor. This delegation of administrative duty does not cause the officer to be personally liable for the taxes and his personal assets levied against and sold. | Statute dealing with liability for taxes on product removed was intended to relieve mineral owner lessor from tax lien that arises when lessee of land has failed to pay ad valorem taxes on production from land; language of statute protects lessors of mineral production land from tax liens when their lessees do not properly pay tax assessed to them. W.S.1977, S 39-3-101(d). | "Is an ad valorem tax, a tax on production?" | 045572.docx | LEGALEASE-00142252-LEGALEASE-00142253 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 21044 | Pfeffer v. State, 226 Ark. 825 | 83+72 | In my view, if the majority opinion stands its effect will be far-reaching and open the doors to bootleggers of cigarettes and also liquor, [the liquor traffic tax and transportation of liquor, "" 48"921, 48"925, 48"934, Ark.Stats.1947]. At the outset I want to point out that the majority opinion, in the last paragraph, states that "the State has no authority to levy a tax on property while it is being transported in interstate commerce." It is not my understanding that we are dealing here with a tax on property. The cigarette tax is not a tax on property but is an excise, or a tax on the privilege of holding or possessing cigarettes for personal use or for any other purpose in the state of Arkansas. " 84"2304, Ark.Stats. 1947 provides: "There is hereby levied the following excises or privilege tax..." "There is a material distinction between an excise and a property tax. An excise tax has been defined to be a tax imposed upon the performance of an act, engaging in on occupation, or the enjoyment of a privilege. It is usually imposed directly by the legislature, without an assessment, while a property tax is ordinarily computed upon valuation and levied either where the property is situated or at the owner's domicile. Head v. Cigarette Sales Co., 188 Ga. 452, 4 S.E.2d 203, 207. | The state of Arkansas has no authority to levy a tax on property while it is being transported in interstate commerce. U.S.C.A.Const. art. 1, S 8, cl. 3. | Is there a material distinction between excise tax which has been defined to be a tax imposed upon the performance of an act and that of a property tax ordinarily computed upon valuation and levied either where the property is situated or at the owner's domicile? | Taxation - Memo # 740 - C - UG.docx | ROSS-003290268-ROSS-003290269 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 21045 | Peck v. Safway Steel Prod., 262 Va. 522 | 413+2166 | Code " 65.2"307 provides that the rights and remedies granted under the Act "shall exclude all other rights and remedies" of an employee or his estate at common law or otherwise. The only exception to this exclusivity provision is set forth in Code " 65.2"309(A), which states, in pertinent part, that an employee or his personal representative can maintain an action at law against the person who caused the injury, provided such person is an "other party." We have said that, to be an "other party," a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured. See, e.g., Pfeifer v. Krauss Construction Co., 262 Va. 262, 267, 546 S.E.2d 717, 719 (2001); Fowler v. International Cleaning Service, 260 Va. 421, 428, 537 S.E.2d 312, 315 (2000). Thus, in the present case, we must determine whether the trial court correctly ruled that Safway was engaged in White's trade, occupation, or business, thereby barring the Plaintiff's action. | Subcontractor that provided and installed scaffolding from which worker for general contractor fell and was killed was not "other party" within meaning of exception to exclusivity provision of workers' compensation statute, where subcontractor did not merely deliver materials or equipment to job site but provided over 5,000 man-hours of labor in installing scaffolding. Code 1950, SS 65.2-307, 65.2-309, subd. A. | Are the rights and remedies provided in the Workers Compensation Act exclusive of all other rights and remedies of an employee or his estate at common law or otherwise? | 048151.docx | LEGALEASE-00142134-LEGALEASE-00142135 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21046 | United States v. Giggey, 501 F. Supp. 2d 237 | 350H+1285 | Finally, I emphasize what others have already noted: there is a deep Circuit split on this issue. The First Circuit is clear that a burglary of any structure is always, categorically, a crime of violence; only the Eighth Circuit follows the First. United States v. Hascall, 76 F.3d 902 (8th Cir.1996). The other Circuits that have addressed the question (Fourth, Fifth, Sixth, Tenth, Eleventh) all hold that burglary of a non-dwelling is not per se a crime of violence. See, e.g., United States v. Wilson, 168 F.3d 916 (6th Cir.1999); United States v. Jackson, 22 F.3d 583 (5th Cir.1994) ("Jackson I"); United States v. Harrison, 58 F.3d 115 (4th Cir.1995); United States v. Smith, 10 F.3d 724 (10th Cir.1993); United States v. Spell, 44 F.3d 936 (11th Cir.1995). This differing interpretation of the career offender Guideline is not merely a matter of esoteric interest to judges and lawyers. In fiscal year 2006 there were 2,124 career offender sentences. Of sentences appealed, 72 involved application of the 4B1.2 definition of crime of violence. This particular Circuit split creates real and significant nationwide disparity in sentencing. Here, for example, if Giggey had been prosecuted in the Fourth, Fifth, Sixth, Tenth or Eleventh Circuits, he would not be a career offender and would be facing only 63 to 78 months. A primary reason that Congress adopted Sentencing Guidelines was to avoid these sorts of disparities in sentencing practices among federal judges from district to district around the country. This particular disparity has existed since at least 1993. The Commission apparently has tried to deal with it, but for reasons unknown has been unable to craft a solution. The Circuits' differing interpretations of the Commission's language therefore cry out for Supreme Court intervention to articulate a single national standard based upon the Guideline language as it stands. | Arson defendant's two previous state burglary convictions were crimes of violence making him a career offender, more than doubling his prison range, even though one of the prior offenses was the burglary of a garage, for which he received only 90 days in a county jail, and the second was a burglary of a redemption center, for which he received only four months in jail. 28 U.S.C.A. S 994(h); U.S.S.G. S 4B1.2; 18 U.S.C.A. | Is burglary of a non-dwelling a crime of violence? | Burglary - Memo 233 - SB.docx | ROSS-003314291-ROSS-003314293 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21047 | Swaim v. Stephens Prod. Co., 359 Ark. 190 | 405v1493 | Other jurisdictions have concluded that mineral interests in land are subject to the doctrine of accretion. For example, in Ely v. Briley, 959 S.W.2d 723 (Tex.App.-Austin 1998), where landowners filed suit against an oil and gas lessee claiming mineral royalties from the accreted property, the Texas Court of Appeals decided that a mineral interest is a property interest irrespective of whether or not the mineral interest is constructively severed from the land. "Because a constructively severed mineral estate is a property interest of equal dignity as a surface estate, it logically should be subject to accretion." Id. at 726. Likewise, another division of the Texas Court of Appeals recently adopted the same approach. Siegert v. Seneca Resources Corp., 28 S.W.3d 680 (Tex.App.-Corpus Christi 2000). | Owners of property adjacent to river, as riparian owners, became owners of additional land formed by accretion, which ownership encompassed both the surface and mineral rights. West's A.C.A. S 22-5-404. | Is a mineral estate subject to accretion? | Mines and Minerals - Memo #179 - C - EB.docx | ROSS-003288909-ROSS-003288910 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 21048 | Christian v. Counseling Res. Assocs., 60 A.3d 1083 | 30v3631 | Henceforth, parties who ignore or extend scheduling deadlines without promptly consulting the trial court, will do so at their own risk. In other words, any party that grants an informal extension to opposing counsel will be precluded from seeking relief from the court with respect to any deadlines in the scheduling order. By the same token, if the trial court is asked to extend any deadlines in the scheduling order, the extension should not alter the trial date. Counsel may face a compressed time period to complete discovery, or the filing of dispositive motions, but the most important aspect of the scheduling order "the trial date" will be preserved. In the unusual circumstance where the trial court does decide to postpone the trial date, litigants should expect that the trial will be rescheduled after all other trials already scheduled on the court's docket. | The Supreme Court reviews a trial court's decision refusing to modify a trial scheduling order for abuse of discretion. | Does parties who ignore or extend scheduling deadlines without promptly consulting the trial court do so at their own risk? | 033546.docx | LEGALEASE-00143643-LEGALEASE-00143644 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21049 | In re M.W., 181 So. 3d 1263 | 17v251 | [F]raud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." | Unsworn statements made by mother's counsel during case management conference, indicating that mother was not permitted to see her child until she signed paperwork consenting to adoption, was not a sufficient evidentiary basis to support finding that mother committed fraud on the court, and thus trial court improperly denied mother's motion to withdraw consent to adoption as a sanction for the alleged fraud, although adoption agency representatives attested that mother spent considerable time with her child before executing consent form; neither mother nor her subsequent counsel made any assertions regarding mother's inability to see child prior to consenting to adoption, and there was no evidence that counsel made the statements in reliance on information received from mother. | Does fraud on the court occur where it can be demonstrated that a party has sentiently set in motion some unconscionable scheme? | Pretrial Procedure - Memo # 6746 - C - DA.docx | ROSS-003289828-ROSS-003289829 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21050 | Middleton v. Hager, 179 So. 3d 529 | 307A v563 | Importantly, "the trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court." Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998). However, "because 'dismissal sounds the death knell of the lawsuit,' courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). | Trial court did not abuse its discretion in rejecting conclusion of magistrate, to whom court referred motorist's motion to dismiss for fraud upon the court, that vehicle passenger's numerous affirmative lies and misrepresentations fell "just short" of establishing a deliberate scheme to subvert the judicial process, and thus properly granted motion and dismissal of action against motorist in connection with a rear-end collision with prejudice; court determined that magistrate's findings were supported by competent substantial evidence, and findings were clear that passenger lied under oath on several occasions about her involvement in a prior automobile collision and her treatment for injuries, which were substantially the same as those allegedly suffered in instant case. West's F.S.A. RCP Rule 1.490. | "Because dismissal for fraud upon the court sounds the death knell of the lawsuit, should courts reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious?" | 034473.docx | LEGALEASE-00143929-LEGALEASE-00143930 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 21051 | Montgomery Cty. v. Maryland Econ. Dev. Corp., 204 Md. App. 282 | 371v2218 | The State recordation tax is "in the nature of an excise tax imposed upon the privilege of recording certain instruments, including, among other things, the transfer of title to real property," and is not a tax on the property itself. Dean v. Pinder, 312 Md. 154, 165, 538 A.2d 1184 (1988) (citation omitted). "A property tax is a charge on the owner of the property by reason of his ownership alone without regard to any use that might be made of it ... [while] the modern conception of an excise tax includes any tax not levied directly on the ownership of property as such." Montgomery Cty. v. Waters Landing Ltd. P'ship, 99 Md.App. 1, 14, 635 A.2d 48, aff'd, 337 Md. 15, 650 A.2d 712 (1994) (citations and internal quotation marks omitted). | Maryland Economic Development Corporation (MEDCO) was not exempt from recordation tax imposed on deed of trust transferring security interest in real property from MEDCO to bank, pursuant to statute providing that MEDCO was exempt from payment of taxes imposed on its real property and activities and taxes imposed on the income from those properties or activities, where agreement between MEDCO and bank made MEDCO responsible for payment of recordation tax; recordation tax was not a tax imposed on MEDCO's properties or activities or the revenues therefrom, but instead was an excise tax imposed upon the privilege of recording the deed of trust, which MEDCO had agreed to pay but which MEDCO even though it was not obligated to pay. West's Ann.Md.Code, Economic Development, S 10-129; West's Ann.Md.Code, Tax-Property, S 12-111. | "What is a ""property tax""?" | Taxation - Memo # 730 - C - NS.docx | ROSS-003289809-ROSS-003289810 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 21052 | Lahti v. Fosterling, 357 Mich. 578 | 413v62 | Although parties may make certain assumptions about worker's compensation benefits when entering into a pension plan, benefits and liabilities in the worker's compensation statute "do not create rights protected by the Contract Clause." Romein v. General Motors Corp., 436 Mich. 515, 534, 462 N.W.2d 555 (1990). As this Court has stated, "'The subject matter of workmen's compensation reposes within the control of the legislature. A law enacted pursuant to rightful authority is proper, and private contracts are entered into subject to that governmental authority.' " Lahti v. Fosterling, 357 Mich. 578, 592, 99 N.W.2d 490 (1959), quoting In re Schmidt v. Wolf Contracting Co., 269 A.D. 201, 207'208, 55 N.Y.S.2d 162 (1945)). Thus, those party to a private pension would have no protected rights in worker's compensation benefits, and their contract would be subject to changes in the worker's compensation law. Similarly, plaintiff did not have a protected right to worker's compensation benefits, and thus his pension, although statutory, is a contract subject to changes in the worker's compensation law. | The 1955 Amendment of the Workmen's Compensation Law eliminating restriction limiting medical benefits to four six-month periods is retrospective, and the Legislature intended the amendment to be applicable to an existing award entered prior to effective date of amendment, and intended to allow, on proper application and proofs, additional medical benefits even though all previous benefit periods had been exhausted. Comp.Laws Supp. 1954, S 412.4. | Does the subject matter of workmen compensation repose within the control of the legislature? | Workers Compensation - Memo #421 ANC.docx | LEGALEASE-00034804-LEGALEASE-00034805 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 21053 | United States v. Orenuga, 430 F.3d 1158 | 63+3 | Under 18 U.S.C. " 201(b)(2)(A), a "public official" commits bribery if he or she "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for ... being influenced in the performance of any official act." The Supreme Court has made it clear that the "acceptance of the bribe is the violation of the statute, not performance of the illegal promise." United States v. Brewster, 408 U.S. 501, 526, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). In other words, "[t]he illegal conduct is taking or agreeing to take money for a promise to act in a certain way." Id. | Possible lawful and proper performance of act by public official had there been no bribe was not defense to crime of bribery. 18 U.S.C.A. S 201(b)(2)(A). | Is taking or agreeing to take money for a promise to act in a certain way solely sufficient to constitute crime of bribery? | 012287.docx | LEGALEASE-00145366-LEGALEASE-00145367 | Condensed, SA, Sub | 0.77 | 0 | 1 | | 1 | 1 |
| 21054 | United States v. Rooney, 37 F.3d 847 | 110+1186.1 | As is evident in many of our cases dealing with bribery, a fundamental component of a "corrupt" act is a breach of some official duty owed to the government or the public at large. In United States ex rel. Sollazzo v. Esperdy, 285 F.2d 341 (2d Cir.), cert. denied, 366 U.S. 905, 81 S.Ct. 1049, 6 L.Ed.2d 204 (1961), we said that "[b]ribery in essence is an attempt to influence another to disregard his duty while continuing to appear devoted to it or to repay trust with disloyalty." Id. at 342. Similarly, in United States v. Jacobs, 431 F.2d 754 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971), we pointed out that "[t]he evil sought to be prevented by the deterrent effect of [the bribery statute] is the aftermath suffered by the public when an official is corrupted and thereby perfidiously fails to perform his public service and duty." Id. at 759. Finally, in United States v. Zacher, 586 F.2d 912 (2d Cir.1978), we recognized that "[t]he common thread that runs through common law and statutory formulations of the crime of bribery is the element of corruption, breach of trust, or violation of duty." Id. at 915. | Defendant's convictions of making false statement and concealing material fact in a submission to government had to be vacated upon invalidation of joined count for corruptly soliciting thing of value intending to be influenced in connection with federally funded project, upon which defendant was also convicted, where prosecution's depiction of defendant vis-a-vis his dealings with contractor on real estate development had decidedly pejorative connotation that was of sort to arouse jury, such evidence was unrelated to making false statement counts, prosecution encouraged jury to consider evidence on corrupt solicitation count as bearing on defendant's culpability on false statement counts, and government's case on false statement counts was not overwhelming. 18 U.S.C.A. SS 666(a)(1)(B), 1001. | What is the fundamental component of a corrupt act under bribery statute? | 012297.docx | LEGALEASE-00145409-LEGALEASE-00145410 | Condensed, SA, Sub | 0.3 | 0 | 1 | | 1 | 1 |
| 21055 | Skilling v. United States, 561 U.S. 358 | 372+1014(10) | In view of this history, there is no doubt that Congress intended " 1346 to reach at least bribes and kickbacks. Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine. To preserve the statute without transgressing constitutional limitations, we now hold that " 1346 criminalizes only the bribe-and-kickback core of the pre-McNally case law. | Congress intended the honest services fraud statute to reach at least bribes and kickbacks. 18 U.S.C.A. S 1346. | Does honest-service fraud statute criminalize any conducts other than bribe and kickback? | 012301.docx | LEGALEASE-00145579-LEGALEASE-00145580 | Condensed, SA, Sub | 0.75 | 0 | 1 | | 1 | 1 |
| 21056 | State v. Office of Pub. Def. ex rel. Muqqddin, 285 P.3d 622 | 67+9(2) | The right to exclude also implies some notion of a privacy interest. See Rakas v. Illinois, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude."). It is the invasion of privacy and the victim's feeling of being personally violated that is the harm caused by the modern burglar, and the evil that our society is attempting to deter through modern burglary statutes. See State v. Martinez, 122 Idaho 158, 832 P.2d 331, 336 (Idaho Ct.App.1992) (Burglar "was not sentenced for misdemeanor injury to property, but for the more serious invasion of privacy and security represented by the crime of burglary."); Arabie v. State, 699 P.2d 890, 894 (Alaska Ct.App.1985) (A lawful entry "imposes no ... invasion of privacy on the property holder so as to render the culprit guilty of burglary."); State v. Tixier, 89 N.M. 297, 299, 551 P.2d 987, 989 (Ct.App.1976) ("Burglary is an offense against the security of the building."). | Defendant's act of penetrating van's gas tank with a nail did not constitute an "entry," for purposes of burglary statute; abrogating, State v. Rodriguez, 101 N.M. 192, 679 P.2d 1290, State v. Gonzales, 145 N.M. 110, 194 P.3d 725. West's NMSA S 30-16-3. | Is burglary an offense against the security of a building? | Burglary - Memo 208 - JS.docx | ROSS-003288972-ROSS-003288975 | Condensed, SA, Sub | 0.76 | 0 | 1 | | 1 | 1 |
| 21057 | Prudhomme v. Imperial Fire & Cas. Ins. Co., 671 So. 2d 1116 | 217+2695 | The term household embraces a collection of persons as a single group with one head living together under one roof. It is "a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.' " Brown v. Trahan, 526 So.2d 1216, 1219 (La.App. 3 Cir.1988); Buxton v. Allstate Ins. Co., 434 So.2d 605 (La.App. 3 Cir.1983); Leteff v. Maryland Casualty Company, 91 So.2d 123 (La.App. 1 Cir.1956). Whether a person is or is not a resident of a household is a question of law as well as fact that is to be determined from all the facts of each case. The question is largely one of intention. The intention of a person to be a resident of a particular place is determined by his expressions at a time not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. Andrade v. Shiers, 516 So.2d 1192 (La.App. 2 Cir.1987), appeal after remand, 564 So.2d 787 (La.App. 2 Cir.), writ denied, 567 So.2d 1128 (La.1990) [citing Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3 Cir.), writ denied, 334 So.2d 217 (La.1976) ]. Residency is a matter of intention and choice, rather than location. Bearden v. Rucker, 437 So.2d 1116 (La.1983). Although residency is dependent on the facts of each case, the principal test is physical presence with the intention to continue living there. Miley v. La. Farm Bureau Cas. Ins. Co., 599 So.2d 791 (La.App. 1 Cir.), writ denied, 604 So.2d 1313 (La.1992). | Whether person is or is not resident of household, for purposes of coverage under automobile insurance policy covering relatives who are residents of insured's household, is question of law as well as fact that is to be determined from all facts of each case. | "Is the principal test, physical presence with the intention to continue living at a place although residency is dependent on the facts of each case?" | 014506.docx | LEGALEASE-00145907-LEGALEASE-00145908 | Condensed, SA, Sub | 0.84 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21058 | Kukles v. Reinert, 256 S.W.2d 435 | 322H+65 | The law is well settled in Texas that Oil and Gas in place under land are regarded as real estate and that conveyances of same are subject to the same rules governing the conveyance of real estate. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703. It is likewise well settled that the description of the land must be so definite and certain upon the face of the instrument itself, or by other writing referred to, that the land can be identified with reasonable certainty. Norris v. Hunt, 51 Tex. 609; Greer v. Greer, 144 Tex. 528, 191 S.W.2d 848, citing numerous authorities. It is further the law that while the deed itself need not contain all the identifying descriptive matter of other descriptive matter be brought into the deed, the reference to them must be made with certainty, and nothing can be left to doubtful inference. Davis v. Kirby Lumber Co., Tex.Civ.App., 158 S.W.2d 888, W/E Ref Want Merit. | A deed will not be declared void for uncertainty of description if it is possible by any rules of construction to ascertain from description, aided by extrinsic evidence, what property it is intended to convey, and it is sufficient if description points out and indicates the premises so that by applying description to land involved it can be found and identified, particularly where party dealing with the land knew its location within a larger tract of which it is a part. | Are oil and gas in place under land regarded as real estate and conveyances thereof subject to the same rules governing the conveyance of real estate? | Mines and Minerals - Memo #240 - C - CSS.docx | ROSS-003287549-ROSS-003287550 | Condensed, SA, Sub | 0.48 | 0 | 1 | | 1 | 1 |
| 21059 | Perkins v. Caldwell, 363 S.W.3d 149 | 268+159(6) | The question presented by the merits of Appellant's claim is whether the Board gave Appellant a reasonable opportunity to present evidence on the issue of bias. See Brown, 728 S.W.2d at 596. Section 536.063(3) states that "[r]easonable opportunity shall be given for the preparation and presentation of evidence bearing on any issue raised." Brown, 728 S.W.2d at 596. However, a threshold question in any appellate review of a controversy is the mootness of the controversy. State ex rel. Chastain v. City of Kansas City, 968 S.W.2d 232, 237 (Mo.App. W.D.1998). In terms of justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy. Id. "The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction." State ex rel. Wilson v. Murray, 955 S.W.2d 811, 812*13 (Mo.App. W.D.1997). When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. Chastain, 968 S.W.2d at 237. "Even a case vital at inception of the appeal may be mooted by an intervenient event which so alters the position of the parties that any judgment rendered merely becomes a hypothetical opinion." Gilroy*Sims and Assoc. v. City of St. Louis, 697 S.W.2d 567 (Mo.App. E.D.1985). | Despite former alderman's impeachment and removal, she would no longer be occupying her elected position of alderman, and thus, her claim that she was entitled to reinstatement as alderman because the trial court erred in upholding board of aldermen's impeachment and removal of former alderman from her office, and that the board should have disqualified mayor and allowed former alderman to question the board as to any bias or prejudgment it may have had against her, were moot; expiration of former alderman's term of office made the relief sought impossible, and to reinstate alderman would have required ousting the present duly elected office holder. V.A.M.S. § 536.063(3). | Will a case be moot and dismissed if an event occurs that makes a court's decision unnecessary? | 035391.docx | LEGALEASE-00145659-LEGALEASE-00145660 | Condensed, SA, Sub | 0.54 | 0 | 1 | | 1 | 1 |
| 21060 | Santorso v. Bristol Hosp., 2010 WL 1545785 | 241+130(10) | Most of the case law applying the statute arises out of disciplinary dismissals of the first action, i.e., "cases dismissed for a variety of punitive reasons, such as failure to attend a scheduled pretrial conference ... or the failure to close the pleadings in a timely manner." (Citation omitted.) Id., at 553-54, 915 A.2d 314. In such cases a plaintiff has the "burden of establishing the right to avail ... herself of the statute"; Stevenson v. Peerless Industries, Inc., 72 Conn.App. 601, 607, 806 A.2d 567 (2002); by making "a factual showing that the prior dismissal was a "matter of form" in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." (Internal quotation marks omitted.) Id. | Patient's first medical malpractice action, in which the patient's complaint was struck due to his counsel's failure to file the statutorily required good faith certificate and an opinion letter from a similar health care provider, failed due to a "matter of form" within meaning of savings statute. Thus, the savings statute allowed the patient's widow to file a new malpractice action within one year after the determination of the first action. The decision from patient's first suit was not on the merits. Further, the hospital was not unduly prejudiced by the actions of the patient's attorney. C.G.S.A. SS 52-190a(a), 52-592(a). | "Do ""disciplinary dismissals,"" for savings statute purposes refer to cases dismissed for a variety of punitive reasons?" | 035475.docx | LEGALEASE-00145963-LEGALEASE-00145964 | Condensed, SA, Sub | 0.18 | 0 | 1 | | 1 | 1 |
| 21061 | Grove Isle Ass'n v. Grove Isle Assocs., LLLP, 137 So. 3d 1081 | 241+180(7) | Affirmative defenses, such as statute of limitations and laches, are generally matters raised in an answer and not a motion to dismiss. Rigby v. Liles, 505 So.2d 598, 601 (Fla. 1st DCA 1987). However, where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the defense bars the action as a matter of law, a motion to dismiss raising the defense is properly granted. Saltponds Condo. Ass'n v. Walbridge Aldinger Co., 979 So.2d 1240, 1244*45 (Fla. 3d DCA 2008); Alexander v. Suncoast Builders, Inc., 837 So.2d 1056, 1057 (Fla. 3d DCA 2002). Because affirmative defenses may be avoided by facts pled in a reply, the allegations of the complaint must also conclusively negate the plaintiff's ability to allege facts in avoidance of the defense by way of reply or dismissal is inappropriate. Rigby, 505 So.2d at 601; Saltponds Condo. Ass'n v. McCoy, 972 So.2d 230, 231 (Fla. 3d DCA 2007). | Date of accrual of condominium association's unjust enrichment claims arising out of condominium unit owners' payment of maintenance costs for facilities outside the condominium, as provided in declaration of condominium, and their payment of club membership fees and dues allegedly prohibited by the declaration, could not be determined from the four corners of the complaint, and thus trial court could not dismiss the claims on the basis of the four-year statute of limitations; complaint did not allege when unit owners began making such payments. West's F.S.A. § 95.11(3)(p). | Would it be appropriate if the allegations of the complaint negate the plaintiff's ability to allege facts in avoidance of the defense by way of reply or dismissal? | Pretrial Procedure - Memo # 7935 - C - NS.docx | ROSS-003304951-ROSS-003304952 | Condensed, SA, Sub | 0.39 | 0 | 1 | | 1 | 1 |
| 21062 | Pinghua Zhao v. Montoya, 329 P.3d 676 | 92+3562 | The Legislature's inherent authority and discretion to exercise the State's power of taxation is plenary "except in so far as limited by the Constitution." Edmunds v. Bureau of Revenue of N.M., 1958*NMSC*112, 15, 64 N.M. 454, 330 P.2d 131 (internal quotation marks and citation omitted); see also Flynn, Welch & Yates v. State Tax Comm'n, 1934*NMSC*001, 18, 38 N.M. 131, 28 P.2d 889 ("'The power of taxation is inherent in the state, and may generally be exercised through its Legislature without let or hindrance, except in so far as limited by the Constitution.' " (citation omitted)). Thus, the Legislature has broad taxing authority and may enact any law regarding taxation that is not expressly or inferentially prohibited by the Constitution. See Albuquerque Metro. Arroyo Flood Control Auth. v. Swinburne, 1964*NMSC*206, 19, 74 N.M. 487, 394 P.2d 998. | New Mexico's property tax system did not violate the equal protection clauses of the state and federal constitutions on the basis it carved out unequal treatment for property that had recently been sold, because it furthered legitimate state interests in fostering neighborhood preservation and stability by permitting older owners to pay progressively less in taxes than new owners, and was part of a systematic and definite plan to provide that all similar properties be valued in a like manner; new homeowners were treated differently from old homeowners when their properties were assessed at their current and correct value for the year in which their property taxation was being determined, but from that point forward enjoyed the benefit of a 3% valuation limitation on residential property. U.S.C.A. Const.Amend. 14; West's NMSA Const. Art. 8, S 1(A); West's NMSA S 7-36-21.2. | Can the state's power of taxation be exercised without let or hindrance? | 045815.docx | LEGALEASE-00146164-LEGALEASE-00146165 | Condensed, SA, Sub | 0.03 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21063 | In re Brien, 128 B.R. 220 | 163+37 | The case held that where a deceased employee was entitled to apply for total disability compensation but failed to do so, the surviving spouse could not bring a claim for the deceased employee's permanent total disability benefits. The deceased contended, unsuccessfully, that worker's compensation due, but unpaid, at the time of death is a contractual right vesting in the employee, and that it should be paid to the personal representative of his estate. The majority, however, ruled that worker's compensation benefits derive solely from legislative enactments, and only if rights and benefits are specifically conferred by the Worker's Compensation Act can it be said that they exist. The court said (288, 401 N.W.2d 585): The compensation act is devoid of any suggestion that a dependent can, after the death of the worker, claim benefits that the worker chose not to claim. That does not mean that a dependent ... has no post-mortem rights under the act. The compensation act specifically provides death benefits when death results from the injury and the deceased leaves a person dependent upon him for support. The act also provides for a death benefit when the injured employee dies other than as the proximate result of the injury. | Under Wisconsin law, worker's widow had direct entitlement to workers' compensation claim settlement that expert testified was death benefit claim, and benefits received by widow were accordingly exempt from claims of widow's bankruptcy trustee and from claims of hospital which had treated worker. W.S.A. 102.27(1), 102.46, 102.47, 102.51. | When does the rights and benefits under workers compensation act said to exist? | Workers Compensation Memo #497 ANC.docx | ROSS-003300456-ROSS-003300457 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | |
| 21064 | United States v. Rooney, 37 F.3d 847 | 110+1186.1 | As is evident in many of our cases dealing with bribery, a fundamental component of a "corrupt" act is a breach of some official duty owed to the government or the public at large. In United States ex rel. Sollazzo v. Esperdy, 285 F.2d 341 (2d Cir.), cert. denied, 366 U.S. 905, 81 S.Ct. 1049, 6 L.Ed.2d 204 (1961), we said that "[b]ribery in essence is an attempt to influence another to disregard his duty while continuing to appear devoted to it or to repay trust with disloyalty." Id. at 342. Similarly, in United States v. Jacobs, 431 F.2d 754 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971), we pointed out that "[t]he evil sought to be prevented by the deterrent effect of [the bribery statute] is the aftermath suffered by the public when an official is corrupted and thereby perfidiously fails to perform his public service and duty." Id. at 759. Finally, in United States v. Zacher, 586 F.2d 912 (2d Cir.1978), we recognized that "[t]he common thread that runs through common law and statutory formulations of the crime of bribery is the element of corruption, breach of trust, or violation of duty." Id. at 915. | Defendant's convictions of making false statement and concealing material fact in a submission to government had to be vacated upon invalidation of joined count for corruptly soliciting thing of value intending to be influenced in connection with federally funded project, upon which defendant was also convicted, where prosecution's depiction of defendant vis-a-vis his dealings with contractor on real estate development had decidedly pejorative connotation that was of sort to arouse jury, such evidence was unrelated to making false statement counts, prosecution encouraged jury to consider evidence on corrupt solicitation count as bearing on defendant's culpability on false statement counts, and government's case on false statement counts was not overwhelming. 18 U.S.C.A. SS 666(a)(1)(B), 1001. | Is breach of official duty a component of a corrupt act under bribery statute? | 012378.docx | LEGALEASE-00147737-LEGALEASE-00147738 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 21065 | United States v. O'Donnell, 510 F.2d 1190 | 110+113 | For example, the Swann court's reliance on cases determining that venue under the Public Corruption Act, 18 U.S.C. Sec. 201, is in the district where the bribe is passed or the attempt to bribe is made is, in our view, inapposite. An analysis of the bribery statute makes it clear that the essence of the offense is not the effect which the bribe may have or may be intended to have upon the conduct of the public official, but rather the actual giving or transfer of money or other thing of value, or the offer to transfer money or other thing of value to a public official. See Krogmann v. United States, 225 F.2d 220, 227 (6th Cir. 1955). The critical event in the commission of the crime is the actual giving or the offer to give or transfer money or other thing of value, absent which no offense is committed under the statute. In view of the focus of the statute upon these physical aspects, it is not unreasonable to conclude that venue must be laid in the district in which the events occurred. On the other hand, under Sec. 1503, any corrupt attempt, regardless of the means employed, whether by the offer of money or otherwise, to impede or obstruct the due administration of justice is made a punishable offense. It cannot be said that the focus of the statute is exclusively upon any possible means which may be employed. Rather, it is upon the intended effect of any corrupt conduct of whatever description upon the administration of justice by the courts. Under Sec. 1503, the effect of corrupt conduct is always intended to occur only at one place; viz., the place or district in which the court sits or in which the proceeding is pending. In contrast, under the bribery statute, the intent to influence the conduct of a public official in no way depends upon where the public official may be at the time. The place of the intended result is irrelevant and the statute does not focus upon it. | Where statute under which defendant was charged did not prescribe venue for offense, it was necessary to determine from other sources the place where the statutory offense must be deemed to have been committed. 18 U.S.C.A. S 1503; Fed.Rules Crim.Proc. rules 21, 21(b), 18 U.S.C.A.; U.S.C.A.Const. art. 3, S 2, cl. 3; Amend. 6. | "Will any offense be committed under bribery statute, if the actual giving of money or other thing of value is absent?" | 012383.docx | LEGALEASE-00147742-LEGALEASE-00147743 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21066 | State v. Lambert, 263 Or. App. 683 | 67+4 | In short, because the tents could be considered "buildings" under the burglary statute, the court did not err in denying defendant's motion for a judgment of acquittal on the two burglary charges. | Tent used at municipal water testing site was a "building," as element of second degree burglary, since tent had been adapted for use as municipal water bureau's place of business; in order to make the tent suitable for use as a testing facility, bureau employees brought in large equipment that was too heavy to easily move about bureau property, they also set up a work bench, and smaller tools and equipment would typically be brought into the tent while employees were conducting tests. West's Or.Rev. Stat. Ann. S 164.215. | Is a tent a building under burglary law? | Burglary - Memo 251 - SB_57629.docx | ROSS-003280383-ROSS-003280384 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 21067 | Smith v. Davidson, 58 So. 3d 177 | 307A+690 | " 'In Alabama, and many federal courts, the interest in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff. Smith v. Wilcox County Bd. of Educ., 365 So.2d at [659] 661 [ (Ala.1978) ]. See, e.g., Boazman v. Econ. Laboratory, Inc., 537 F.2d 210 (5th Cir.1976); Pond v. Braniff Airways[, Inc.], 453 F.2d 347 (5th Cir.1972). Willful default or conduct is a conscious or intentional failure to act. Welsh v. Automatic Poultry Feeder Co., 439 F.2d 95 (8th Cir.1971). "Willful" is used in contradistinction to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct.' "Selby v. Money, 403 So.2d 218, 220"21 (Ala.1981); see also Burton v. Allen, 628 So.2d 814, 815 (Ala.Civ.App.1993)." | The decision whether to enter an involuntary dismissal is within the sound discretion of the trial court, and such a dismissal will be reversed on appeal only if the trial court exceeded its discretion; however, because dismissal with prejudice is a drastic sanction, it should be applied only in extreme situations. Rules Civ.Proc., Rule 41(b). | "For purposes of involuntary dismissal due to willful default or noncompliance with court orders is " "willful" " default or conduct a conscious or intentional failure to act?" | 10900.docx | LEGALEASE-00094832-LEGALEASE-00094833 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21068 | Bird v. Shearson Lehman/Am. Exp., 926 F.2d 116 | 25T=412 | The instant case does not raise such concerns. Bird signed the agreement that contained the arbitration clause. He cannot complain that his rights were bargained away by a third party. Although Shea did not sign the agreement, her interests and claims are essentially identical to Bird's. Under such circumstances, requiring Shea to arbitrate does not work an injustice. Cf. Barrowclough, supra, 752 F.2d at 938"39 (beneficiaries are bound by principal's agreement to arbitrate when they "claim no present entitlement to the [benefits] and press no claims separate from his"). | Federal Arbitration Act required enforcement of pension plan's arbitration agreement with brokerage firm, although plan claimed firm breached fiduciary duties under ERISA. Employee Retirement Income Security Act of 1974, S 2 et seq., 29 U.S.C.A. S 1001 et seq.; 9 U.S.C.A. S 1 et seq. | When are beneficiaries bound by a principal's agreement to arbitrate? | 007858.docx | LEGALEASE-00148895-LEGALEASE-00148896 | Condensed, SA, Sub | 0.51 | 0 | 1 | | 1 | |
| 21069 | Sibley v. Phelps, 60 Mass. 172 | 8.30E+57 | The court are of opinion, that these exceptions must be sustained. We are not aware of any case, in which it has been held, that promissory notes, taken out of the operation of the statute of limitations by being signed by an attesting witness, are limited to negotiable notes. The words in the statute of 1786, c. 52, " 5, are, "any note in writing, &c. whereby such person shall promise to pay any sum of money." The same meaning we think is intended to be expressed in Rev. Sts. c. 120, " 4, by the term "promissory note." Negotiability is not an essential quality of a promissory note. No definition, that we are aware of, embraces negotiability as a quality of a promissory note. Story on Notes, " 1; 2 Bl. Com. 467; Kyd on Bills, (3d ed.) 18; Chit. Bills, (10th Am. ed.) 516; Bayley on Bills, (2d Am. ed.) 1, 29. "A promissory note is, in contemplation of law, entitled to all the privileges belonging to such an instrument, by the commercial law, as well as by common law, without being negotiable." Story on Notes, " 3. The exception of the statute of limitations has been applied to notes in writing not negotiable. Grinnell v. Baxter, 17 Pick. 386; Commonwealth Ins. Co. v. Whitney, 1 Met. 21. | Negotiability is not an essential element of a note. | Is negotiability an essential ability of a promissory note? | Bills and Notes- Memo 643-IS_58214.docx | ROSS-003280503-ROSS-003280504 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 21070 | Jerstad v. Warren, 73 Or. App. 387 | 83E=402 | The principal problem with defendants' argument, quoted above, is that neither "transfer" under ORS 73.2010 nor "surrender" under ORS 73.6030(2) requires that an instrument be negotiated; therefore, LIA's failure to prove that the note was endorsed by the bank is not fatal to its claim. Although negotiation is one form of transfer, it is not the only one. See generally Perry & Greer, Inc. v. Manning, 282 Or. 25, 31"32, 576 P.2d 791 (1978); Scheid v. Shields, 269 Or. 236, 240, 524 P.2d 1209 (1974). | Negotiation is not the only form of transfer of a promissory note. | Whether negotiation is one form of transfer? | Bills and Notes- Memo 670-PR_57901.doc | ROSS-003323630 | Condensed, SA, Sub | 0.87 | 0 | 1 | | 1 | 1 |
| 21071 | Kelly v. State, 191 Ark. 674 | 67=42(1) | Appellant's first contention for reversal is that the verdict of the jury is contrary to the law. By section 2 of Act No. 67 of 1921 (page 70) burglary is defined as follows: "Burglary is the unlawful entering a house, tenement, railway car or other building, boat, vessel or water craft with the intent to commit a felony. | Evidence that some one broke and entered chicken house at night and stole therefrom chickens worth $12, and that some of chickens were subsequently recovered from witness who testified that he bought them from defendant held to sustain conviction for burglary (Acts 1921, p. 70, S 2). | Is boat or vessel a subject of burglary? | 013032.docx | LEGALEASE-00148802-LEGALEASE-00148803 | Condensed, SA, Sub | 0.12 | 0 | 1 | | 1 | 1 |
| 21072 | Turner v. Com., 33 Va. App. 88 | 67=7 | Code " 18.2-89 provides, inter alia, that, "[i]f any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary ...." "an offense identical to common law burglary, save that the element of intent is expanded to include intent to commit a larceny." Rash v. Commonwealth, 9 Va.App. 22, 24, 383 S.E.2d 749, 750 (1989). The dual elements, "dwelling house" and "of another," "were essential because common-law burglary found its theoretical basis in the protection of man's rightofhabitation," 2 Wayne R. LaFave, Substantive Criminal Law " 8.13(c) (1986), an embodiment of "the ancient notion that a man's home was his castle and ... he had the right to feel safe therein." Rash, 9 Va.App. at 25, 383 S.E.2d at 751; see Clarke v. Commonwealth, 66 Va. (25 Gratt.) 908 (1874). Thus, "the term "dwelling house" in Code " 18.2-89 means a place which human beings regularly use for sleeping[,]" and the crime was, "'at common law, primarily an offense against the security of [another's] habitation, and that is still the general conception of it.' " Rash, 9 Va.App. at 26, 25, 383 S.E.2d at 751 (citation omitted). | Defendant's acts in breaking and entering trailer home occupied by his estranged wife, accompanied by defendant's requisite unlawful intent, offended wife's right of habitation and constituted burglary, notwithstanding his joint ownership of that home, which was their former marital residence; defendant's proprietary interest was relegated to wife's superior possessory interest and right to exclusive habitation, as wife enjoyed sole occupancy of home following her separation from defendant one year earlier, with defendant continuously residing elsewhere, and as result of his post-separation assault on wife, defendant had been ordered by court to have no contact with her, which restriction clearly precluded his habitation of home. Code 1950, SS 18.2-90, 18.2-91. | Do burglary statutes protect the right of habitation? | 013036.docx | LEGALEASE-00148804-LEGALEASE-00148805 | Condensed, SA, Sub | 0.36 | 0 | 1 | | 1 | 1 |
| 21073 | Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304 | 24+766 | An early federal circuit court case acknowledged that U.S. citizens could be liable for aiding and abetting a violation of U.S. treaties or the law of nations. Henfield's Case, 11 F.Cas. 1099 (C.C.Pa.1793) (noting that "they who commit, aid, or abet hostilities against these powers, or either of them, offend against the laws of the United States, and ought to be punished; and consequently, that it is your duty, gentlemen, to inquire into and present all such of these offences, as you shall find to have been committed within this district"); see also Talbot v. Jansen, 3 U.S. 133, 167"68, 3 Dall. 133, 1 L.Ed.540 (1795). | Complaint in action alleging that defendant, an American citizen, violated the law of nations and conspired to persecute the lesbian, gay, bisexual, transgender, and intersex (LGBTI) community in Uganda, sufficiently set out actionable conduct undertaken by defendant in the United States to establish jurisdiction under the Alien Tort Statute (ATS). 28 U.S.C.A. S 1350. | Is a citizen liable for violation of a treaty? | Neutrality Laws - Memo 8 - ANM_58001.docx | ROSS-003279710 | Condensed, SA, Sub | 0.41 | 0 | 1 | | 1 | 1 |
| 21074 | Wilkerson v. Buras, 152 So. 3d 969 | 30+4174 | Because dismissal is the harshest of punishments, the law favors and justice requires that an action be maintained whenever possible so that the aggrieved party has his day in court. Thus, any action or step taken to move the case toward judgment should be considered. If the plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon his lawsuit, dismissal is not warranted. Hinds, 57 So.3d at 1183"84. | Although the trial court erred when it failed to order the sheriff to serve parents with notice of the dismissal of their wrongful death complaint based on abandonment, the error was harmless; parents received notice of the dismissal, and they were not denied judicial review of the dismissal. LSA-C.C.P. art. 561(A)(3). | Is a dismissal warranted if the plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon his lawsuit? | Pretrial Procedure - Memo # 8015 - C - CK_58370.docx | ROSS-003312141-ROSS-003312142 | Condensed, Order, SA, Sub | 0.3 | 1 | 1 | | 1 | 1 |
| 21075 | Frady v. Irvin, 245 Ga. 307 | 30E+176 | Further, we hold that the quoted in-court testimony of Mrs. Frady constitutes uncontradicted evidence of her ratification of the warranty deed as a conveyance of her 4/6 undivided interest in the real estate to the appellee. A ratification relates back to the act ratified and takes effect as if the act had been originally authorized. A ratification once made may not be revoked. Code Ann. s 4-303; Higgins v. D. & F. Elec. Co., 110 Ga.App. 790, 799, 140 S.E.2d 99 (1964). | Ratification once made may not be revoked. Code, S 4-303. | Can ratification by the principal be revoked? | Principal and Agent - Memo 132 - KC.docx | LEGALEASE-00038750-LEGALEASE-00038751 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21076 | S. Nat. Life Realty Corp. v. People's Bank of Bardstown, 178 Ky. 80 | 309+115(1) | In the solution of this, we shall look briefly at what our fathers learned to know as "The Law Merchant," of which our Negotiable Instruments Law is a codification. No one can trace the law merchant or the lex mercatoria to its origin. Those interested in its history are referred to 8 C. J. p. 44, " 31 et seq.; 3 R. C. L. p. 835, " 8; Daniels on Negotiable Instruments, " 1; and to the appendix in 3 Cranch. It is a part of the English common law, but no one can say when it became so.One of the provisions of Magna Charta (chapter 30) is for the protection of merchants in their "Old and rightful customs." The law merchant introduced rules and practices that to the lawyer, steeped in the principles of the common law, seemed to be quite anomalous. It has been said of it that "Established as it has been by ancient usage [the law merchant], is frequently arbitrary, and not deducible from logical considerations." Farmers' National Bank v. Sutton Manufacturing Co. (C. C. A.) 52 F. 191, 194, 17 L. R. A. 595. It would perhaps be better to say that it is often impossible to give logical reasons for the rules of the law merchant because they result from our adherence to precedents founded when made upon plain and valid reasons that are now lost in the twilight of antiquity. | Negotiable Instruments Act, § 58, in view of sections 29, 52, 119, 120, and 191, held not to affect defense of sureties on note that payee, in whose hands it remained, surrendered collateral deposited by principal maker. | Is Negotiable Instruments Act a codification of common law? | Bills and Notes -Memo 620 -DB.docx | LEGALEASE-00038930- LEGALEASE-00038931 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21077 | Mason v. Metcalf, 63 Tenn. 440 | 8.30E+56 | The definition of a promissory note given by Story and Parsons, and approved by this court, requires that it shall contain an absolute and unconditional promise to pay--that the promise shall not be contingent. | A promise in writing to refund a sum of money received from another, upon condition that a certain receipt be produced, is not a promissory note, and where judgment was rendered thereon for the holder by a magistrate, from which the other party appealed, it was error in the circuit court to render judgment against the sureties on the appeal bond for the amount of the justice's judgment, damages and costs as provided by S 3162 of the Code, although the penalty in the bond was in double that amount, and conditioned to comply with and perform the judgment of the circuit court. The judgment against the sureties should have been for damages and costs only under S 3163 of the Code. | Does a promissory note have to be unconditional? | Bills and Notes- Memo 724-PR_58228.docx | ROSS-003308746 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 21078 | People v. Losinger, 63 Misc. 2d 577 | 129+111 | Nevertheless, the Courts of this State have not hesitated to sustain convictions where defendants have laid down on the street to block trucks, or jumped police barricades to stop vehicular traffic. (See People v. Galamison, 43 Misc.2d 72, 250 N.Y.S.2d 325 and People v. Penn, 48 Misc.2d 634, 265 N.Y.S.2d 155.) | Where defendants in staging anti-Vietnam war skits in presence of Christmas shopping crowds did not directly affect vehicular traffic and there was no violence or threat of violence on part of other defendants or onlooking crowds, defendants were properly exercising their rights under First Amendment of United States Constitution. U.S.C.A.Const. Amend. 1. | Can convictions be sustained when the defendants laid down on the streets or jumped police barricades to block traffic? | 014440.docx | LEGALEASE-00149549- LEGALEASE-00149550 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 21079 | Davis v. Parris, 289 Ga. 201 | 409+62 | If a will expressly stated that it was joint and mutual, and the surviving testator benefitted from the mutual promises made therein, then there was an enforceable contract not to revoke. Johnson v. Harper, 246 Ga. 124(1), 269 S.E.2d 16 (1980) (will evidenced an irrevocable contract where will was joint and mutual, and the survivor benefitted from the mutual promises made therein). See also C & S Nat. Bank v. Leaptrot, 225 Ga. 783, 786, 171 S.E.2d 555 (1969). "A written agreement between A and B whereby A agrees to convey certain described real estate to B in consideration of B's agreement to convey certain described real estate to A is such valuable consideration as will support an enforceable contract." Webb v. Smith, 220 Ga. 809, 812, 141 S.E.2d 899 (1965) (a joint will executed by two testators was held to be mutual for the reciprocities made therein). Even if a joint and mutual will is technically revoked (i.e., by survivor's remarriage), interested parties may still have an action on the underlying contract not to revoke and obtain the remedy of specific performance. Johnson v. Harper, supra, 246 Ga. at 125*126, 269 S.E.2d 16; C & S Nat. Bank v. Leaptrot, supra, 225 Ga. at 786*787, 171 S.E.2d 555 ("It is the contract and not the mutual will which is irrevocable."). | The law in effect when husband and wife allegedly made contract not to revoke joint will, not probate code that was enacted many years after execution of joint will, would be applied to determine whether a contract actually existed. West's Ga.Code Ann. S 53-1-1. | "Even if a joint and mutual will is technically revoked, can the interested parties have an action on the underlying contract not to revoke and obtain the remedy of specific performance?" | 018352.docx | LEGALEASE-00149575- LEGALEASE-00149576 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21080 | United States v. Curtiss-Wright Exp. Corp., 14 F. Supp. 230 | 402+1324 | The foregoing is quoted from the "sentence" of the court, and follows a statement of its opinion reading: "It has been long settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute." | Absence of a proviso in joint resolution declaring unlawful the sale of arms or munitions of war in United States if the President, under certain conditions, makes proclamation to that effect, preserving right to prosecute after expiration of resolution and proclamation for offenses committed before expiration held not to prevent such prosecution, in view of statute declaring repeal of statute shall not have effect of extinguishing any liability incurred under such statute in absence of express provision. Joint Resolution May 28, 1934, 48 Stat. 811; Proclamation of May 28, 1934, 48 Stat. 1744; 1 U.S.C.A. S 29. | Can a punishment be inflicted after the expiration of a law? | Neutrality Laws - Memo 13 - RK_58646.docx | ROSS-003282045 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 21081 | United States v. Curtiss-Wright Exp. Corp., 14 F. Supp. 230 | 402+1324 | The foregoing is quoted from the "sentence" of the court, and follows a statement of its opinion reading: "It has been long settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute." | Absence of a proviso in joint resolution declaring unlawful the sale of arms or munitions of war in United States if the President, under certain conditions, makes proclamation to that effect, preserving right to prosecute after expiration of resolution and proclamation for offenses committed before expiration held not to prevent such prosecution, in view of statute declaring repeal of statute shall not have effect of extinguishing any liability incurred under such statute in absence of express provision. Joint Resolution May 28, 1934, 48 Stat. 811; Proclamation of May 28, 1934, 48 Stat. 1744; 1 U.S.C.A. S 29. | Can penalties be inflicted after expiration of a law? | 021714.docx | LEGALEASE-00149818- LEGALEASE-00149819 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21082 | Naccari v. Namer, 809 So. 2d 1157 | 13+70 | This court has been reluctant to uphold dismissals in cases where it appeared a plaintiff had not evidenced an intention to abandon a case. Instead, this court has been very liberal in its interpretation of La. C.C.P. art. 561. Thus, in Charpentier v. Goudeau, 95-2357 (La.App. 4 Cir. 3/14/96), 671 So.2d 981, this court held that where the plaintiffs had mailed an interrogatory to the defendant but had failed to file in the record an article 1313 certification reflecting service of the interrogatory by mail, such service was a step in the prosecution thus precluding dismissal of the action for abandonment. Further, in Manale, supra, we stated:Before an action can be dismissed as abandoned under Article 561, it must be certain that the claim has not been seriously pursued. Article 561 is to be liberally construed and any action or step taken to move the case toward judgment must be considered. The law favors maintaining an action whenever possible, so that a party may have its day in court, and Article 561 is not designed to dismiss cases on technicalities. | Any formal discovery served on all parties constitutes a step in the prosecution or defense of an action sufficient to interrupt abandonment, regardless of whether it is filed in the record. LSA-C.C.P. art. 561. | Should it be certain that the claim is not being seriously pursued before an action can be dismissed as abandoned? | 036576.docx | LEGALEASE-00149493-LEGALEASE-00149494 | Condensed, Order, SA, Sub | 0.8 | 1 | 1 | 1 | 1 | 1 |
| 21083 | Hardesty v. Cabotage, 1 Ohio St. 3d 114 | 241+127(5) | Such a result comports with the purpose of the Civil Rules. "The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies." Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175, 297 N.E.2d 113 [63 O.O.2d 262, 269]. Decisions on the merits should not be avoided on the basis of mere technicalities; pleading is not " "a game of skill in which one mistake by counsel may be decisive to the outcome [rather] the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80" Foman v. Davis (1962), 371 U.S. 178, 181-182, 83 S.Ct. 227, 229-230, 9 L.Ed.2d 222. | Plaintiffs' amended malpractice complaint brought against defendant hospital related back to date of original complaint despite dismissal of original complaint where plaintiffs filed motion to amend complaint prior to dismissal of original complaint, trial court took no action at all upon the motion to amend, claim asserted in amended complaint was identical to original pleading and related to the same conduct, transactions or occurrences therein, and where defendant hospital had received actual notice of the action prior to tolling of statute of limitations. Rules Civ.Proc., Rule 15(C); R.C. S 2305.11. | Is the spirit of the rules of civil procedure the resolution of cases upon their merits, not upon pleading deficiencies? | 036742.docx | LEGALEASE-00150041-LEGALEASE-00150042 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 21084 | People v. Moore, 285 A.D.2d 827 | 352H+288 | Intent is a state of mind and if it is not capable of complaining witness nor surrounding circumstances. People v. Coolidge, 26 Ill.2d 533, 187 N.E.2d 694 (1963). An intent to commit rape need not be expressed. People v. Bush, 19 Ill.2d 151, 166 N.E.2d 91 (1960). It may be inferred from the conduct of the accused, the character of the assault, the words spoken, and the surrounding circumstances. People v. Coolidge, supra, 66, 222 N.E.2d 142, 144 (Ill. App. Ct. 1966) | Where defendant did not snatch pocketbook of complaining witness nor accost her nor attempt to rob her, but rather seized her by the throat and dragged her to a place of concealment and tried to overcome her resistance by force and where he did not desist when she fought him off and kept mauling her when she hit him with the few things she had at hand, intent to commit rape was inferred from defendant's conduct, even though initial assault took place in daylight and on public street. S.H.A. ch. 38, SS 4-4, 8-4(a). | Does an intent to commit rape need to be expressed? | Sex Offence - Memo 126 - RK.docx | LEGALEASE-00039652-LEGALEASE-00039653 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 21085 | Lane Cty. v. State of Oregon, 74 U.S. 71 | 371+2761 | We are the more ready to adopt this view, because the greatest of English elementary writers upon law, when treating of debts in their various descriptions, gives no hint that taxes come within either; while American State courts, of the highest authority, have refused to treat liabilities for taxes as debts, in the ordinary sense of that word, for which actions of debt may be maintained. | Taxes imposed by a state government on the people of the state are not "debts" within the meaning of the legal tender acts. | Should liabilities for taxes be treated as debts? | 045899.docx | LEGALEASE-00149990-LEGALEASE-00149991 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21086 | People v. Old Second Nat. Bank, 347 Ill. 640 | 371+2850 | The third count consisted of the common counts. The demurrer alleged that there was a misjoinder of causes of action in the declaration. The common counts are counts in assumpsit, and depend upon a contract, express or implied. Taxes are not contractual obligations. People v. Dummer, 274 Ill. 637, 113 N. E. 934. Under section 230 of the Revenue Act the proper remedy for the collection of unpaid taxes is an action of debt. In Guinnip v. Carter, 58 Ill. 296, it was held to be error to join in the same declaration counts in assumpsit and counts in debt. Where a declaration contains several counts and one of the counts is good, a general demurrer to the declaration will not be sustained even if the other counts are bad. Knapp, Stout & Co. v. Ross, 181 Ill. 392, 55 N. E. 127. The declaration contained one good count, and it was sufficient to sustain the judgment. | Taxes are not contractual obligations; remedy for collection being action of debt, not common counts. S.H.A. ch. 120, S 557. | Are taxes contractual obligations? | 045915.docx | LEGALEASE-00149313-LEGALEASE-00149314 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21087 | Jennings v. Bd. of Sup'rs of Northumberland Cty., 281 Va. 511 | 414+1032 | "Zoning is a legislative power vested in the Commonwealth and delegated by it, in turn, to various local governments for the enactment of local zoning ordinances." Byrum v. Board of Supervisors, 217 Va. 37, 39, 225 S.E.2d 369, 371 (1976) ; accord National Mar. Union v. City of Norfolk, 202 Va. 672, 680, 119 S.E.2d 307, 312 (1961). Thus, a locality's zoning powers are " "fixed by statute and are limited to those conferred expressly or by necessary implication." " Board of Supervisors v. Countryside Inv. Co., 258 Va. 497, 503, 522 S.E.2d 610, 613 (1999) (quoting Board of Supervisors v. Horne, 216 Va. 113, 117, 215 S.E.2d 453, 455 (1975)). Localities have been delegated authority to include in their zoning ordinances "reasonable regulations and provisions" "[f]or the granting of special exceptions under suitable regulations and safeguards[.]" Code " 15.2*2286(A)(3). A governing body is also authorized to "reserve unto itself the right to issue such special exceptions," "notwithstanding any other provisions of this article." Id. | County had zoning authority over portion of propose marina construction which extended into bay tributary beyond its mean low-water mark and into the Commonwealth's tidal, navigable waters; statute provided that county's authority "shall embrace all wharves, piers, docks and other structures erected along the waterfront of such locality" and extending into bay and its tidal tributaries, and county had concurrent authority with Virginia Marine Resources Commission (VMRC) to regulate the construction of piers upon state-owned bottomlands where the pier was also "erected along the waterfront of such locality." West's V.C.A. SS 15.2-3105, 28.2-1200, 28.2-1202(A). | Are a locality's zoning powers fixed by statute? | 048838.docx | LEGALEASE-00149309-LEGALEASE-00149310 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 21088 | Perry v. Lockert, 414 F. Supp. 169 | 309+175 | This principle is not a novel one. In the 1869 case of Overton v. Harding,46 Tenn. (6 Coldwell) 375 (1869), the Tennessee Supreme Court ruled that an indorser (alternately referred to by the court as a surety) on a note "has no remedy against the maker, (i.e., principal) for costs incurred by him in his own defense." The court distinguished such as "indorser for value" from an "accommodation indorser," declaring that the latter "may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: 1 Parsons on Con., 33; Sedgwick on Dam., 297, 335." | Under Tennessee law, a compensated surety, as opposed to accommodation surety, in absence of an indemnity agreement or controlling statute may not recover from its principal the expenses which it incurs in defending a suit brought by an obligee against the principal and surety as codefendants, unless it has first satisfied some portion of principal's obligation. | Can an accommodation indorser recover from the maker? | 009694.docx | LEGALEASE-00150406-LEGALEASE-00150407 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21089 | Zdrowski v. Rieck, 119 F.Supp.3d 643 | 141E+893 | Like the IEP, a BIP is a creation of the IDEA implementing regulations. A child with a disability who is removed from the child's current placement ... must ... receive, as appropriate, a functional behavioral assessment, and behavioral intervention services and modifications, that are designed to address the behavior violation so that it does not recur. | Mother's federal and state disability rights claims arising from school district's alleged failure to test student for autism and to refer student, who was eventually diagnosed with autism spectrum disorder, to special education fell within district's "child find" obligations under IDEA, and thus mother's claims were subject to IDEA's exhaustion requirement, even though she did not specifically include IDEA claim in her complaint. Individuals with Disabilities Education Act, S 615(l), 20 U.S.C.A. S 1415(l); 34 C.F.R. SS 104.32, 104.35. | Does a child with a disability receive a functional behavioral assessment under IDEA? | Education - Memo #115 - C - BR_58732.docx | ROSS-003297778-ROSS-003297779 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21090 | W. Kendall Holdings v. Downrite Eng'g Corp., 112 So. 3d 614 | 30=3281 | The test on a motion to dismiss is not whether the plaintiff can prevail at trial, but whether the complaint states a cause of action. | A dismissal order is reviewed de novo, and the allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff. | "Is the test on a motion to dismiss not whether the plaintiff can prevail at trial, but whether the complaint states a cause of action?" | 036986.docx | LEGALEASE-00150324-LEGALEASE-00150325 | SA, Sub | 0.28 | 0 | 0 | | 1 | |
| 21091 | Doe 30's Mother v. Bradley, 58 A.3d 42 | 307A=681 | All of the defendants have moved to dismiss under Delaware Superior Court Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss, the Court must read the complaint generously, accept all of the well-plead allegations contained therein as true, and draw all reasonable inferences in a light most favorable to the non-moving party. A complaint is well-plead if it puts the opposing party on notice of the claim being brought against it. | Generally, the universe of facts considered in a motion to dismiss are those plead within the confines of the complaint; however, parties may submit matters outside the pleading when presenting or opposing a motion to dismiss. Superior Court Civil Rule 12(b). | Is a complaint well-pled if it puts the opposing party on notice of the claim being brought against it? | 036987.docx | LEGALEASE-00150332-LEGALEASE-00150333 | Condensed, SA, Sub | 0.42 | 0 | 1 | | 1 | 1 |
| 21092 | Keller v. Beckenstein, 122 Conn. App. 438 | 249=34 | We begin by setting forth our standard of review. "A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.... [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) Bacon Construction Co. v. Dept. of Public Works, 294 Conn. 695, 706, 987 A.2d 348 (2010). "A motion to dismiss tests ... whether, on the face of the record, the court is without jurisdiction.... When a ... court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light ... In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.... The motion to dismiss ... admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) State v. Marsh & McLennan Cos., 286 Conn. 454, 463"64, 944 A.2d 315 (2008). "Ripeness is a justiciability doctrine, which implicates the court's subject matter jurisdiction." Bloom v. Miklovich, 111 Conn.App. 323, 336, 958 A.2d 1283 (2008). | For a vexatious litigation claim to be ripe for adjudication, the party must allege, among other facts, that the allegedly vexatious litigation has terminated in its favor. | "In deciding a jurisdiction question raised by a pretrial motion to dismiss, should a court take the facts to be those alleged in the complaint?" | 037276.docx | LEGALEASE-00150768-LEGALEASE-00150769 | Condensed, SA | 0.88 | 0 | 1 | 0 | | 1 |
| 21093 | Brandon v. Hines, 439 A.2d 496 | 25T=354 | At common law, in a voluntary, independent arbitration, either party could revoke the submission at any time before the arbitrators had rendered the award, as long as the party acted without fraudulent intent. Bernhardt, supra 350 U.S. at 204, 76 S.Ct. at 276 (applying Vermont law); Sangster v. Quantrill, 1 Hay. & Haz. 18, 19-20 (D.C.1841); R.E. Bean Construction Co., supra 139 Vt. at 209, 428 A.2d at 311. The authority of the arbitrators thereupon ended, and any award thereafter was null and void. Sangster, supra at 20. The rule was different, however, for court-authorized arbitration: "Neither party has a right to revoke a submission made under a rule of Court. It would be a contempt of the Court." Masterson v. Kidwell, 2 D.C. (2 Cranch) 669, 670 (1826).The United States Court of Appeals for the District of Columbia Circuit recently has adhered to this view. See John W. Johnson, Inc., supra at 10-14, 231 F.2d at 763-67. See generally 6A A. Corbin, Contracts s 1438, at 413 (1962). | However an arbitration proceeding may have begun, whether with or without court participation, once an arbitration tribunal has rendered award, winning party may ask the court to confirm the award and enter judgment accordingly. | Can a party revoke a submission made under a rule of court? | 007947.docx | LEGALEASE-00151410-LEGALEASE-00151411 | Condensed, SA | 0.77 | 0 | 1 | 0 | | 1 |
| 21094 | U.S. Fid. & Guar. Co. v. Peoples Nat. Bank of Kewanee, 24 Ill. App. 2d 275 | 205H=75 | The absence of an endorsement by the holder is, in our view, more serious than a forged endorsement for the reason that the former is easily discernible while the latter is the result of an error in the identification of the payee. If, as has been said, it is the duty of the cashing bank to know to a positive certainty the identification of the payee or the payees named therein and its failure so to do imposes a duty of reimbursing the drawee, it seems abundantly clear that the failure to secure the endorsement of all the payees imposes an even greater duty on the cashing bank. While the defendant bank in this case seeks to find a defense in the position that it was merely acting as an agent for collection on behalf of its depositor, Moden, the record herein and the authorities indicate that in fact this was a deposit available for immediate withdrawal and not a true collection. Finally, it is our conclusion that the rule is that a drawer-drawee and a damaged payee each has a cause of action against a cashing bank for damages sustained where the cashing bank fails to obtain the endorsements of all co-payees on a check or draft, Gustin-Bacon Mfg. Co. v. First National Bank, 306 Ill. 179, 137 N.E. 793; Independent Oil Men's Association v. Fort Dearborn National Bank, 311 Ill. 278, 142 N.E. 458; see also American National Bank of Denver, v. First National Bank, 1954, 130 Colo. 557, 277 P.2d 951. | Payment of draft by drawer-drawee without discovering that the endorsements of two of the named payees were missing and failure of drawer-drawee to notify cashing bank for a period of six months of the missing endorsements did not constitute such negligence as would preclude recovery by drawer-drawee from cashing bank, where drawer-drawee properly advised cashing bank upon discovery of missing endorsements and drawer-drawee's failure to discover the missing endorsements did not in the first instance induce bank to cash draft and such failure did not result in change of position by cashing bank to its detriment. S.H.A. ch. 26, S 3-116. | Is forged endorsement result of an error in the identification of the payee? | Bills and Notes - Memo 812-PR_59307.docx | ROSS-003281371-ROSS-003281372 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 21095 | Hall v. Burton, 29 Ill. 321 | 8.30E=298 | In the case of Wilder v. DeWolf, 24 Ill., 191, this court held, that whilst such "a note is inoperative until it is negotiated, yet, when the maker indorses and delivers it, that it then becomes fully invested with all the attributes of such an instrument, and subject to all of its incidents." This precise question was before the court, and was then decided. This action is against the maker and indorser, and he became liable, as such, the moment he indorsed and delivered these notes. By that simple act, he became both maker and indorser, and liable to respond to all the liabilities of either. | A note made payable to the order of the maker becomes, by his indorsement and delivery, like a note made to the order of any other person. | When does a note become fully invested with the attributes of the instruments? | Bills and Notes-Memo 1146-PR_59412.docx | ROSS-003293637 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21096 | Hall v. Burton, 29 Ill. 321 | 8.30E=298 | In the case of Wilder v. DeWolf, 24 Ill., 191, this court held, that whilst such "a note is inoperative until it is negotiated, yet, when the maker indorses and delivers it, that it then becomes fully invested with all the attributes of such an instrument, and subject to all of its incidents." This precise question was before the court, and was then decided. This action is against the maker and indorser, and he became liable, as such, the moment he indorsed and delivered these notes. By that simple act, he became both maker and indorser, and liable to respond to all the liabilities of either. The other objections urged upon the trial have been examined with care, and are regarded as possessing no force. Upon this entire record, no error is perceived, and the judgment of the court below is therefore affirmed. | A note made payable to the order of the maker becomes, by his indorsement and delivery, like a note made to the order of any other person. | When does a note become subject to all of its incidents? | Bills and Notes-Memo 1151-PR_59416.docx | ROSS-003325970 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

Appendix D

3720

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21097 | McKindly v. Dunham, 55 Wis. 515 | 308+105(4) | The only question here is, what was his apparent or ostensible authority in this one act? "His implied agency cannot be construed to extend beyond the obvious purposes for which it was apparently created." "The intention of the parties, deduced from the nature and circumstance of this particular case, constitutes the true ground of exposition of the extent of his authority." Story, Ag. ° 87; Wright v. Hood, 49 Wis. 235; [S. C. 5 N. W. REP. 488.] A principal is responsible for any act of his agent which justifies a party dealing with him in believing that he has given the agent his authority to do such act, (1 Parsons, Cont. 44; Kasson v. Noltner, 43 Wis. 647;) or, as Pothier says, "if the agent does not exceed the power with which he was ostensibly invested." This agent did not appear or pretend to have any other authority from the plaintiff than to solicit orders for goods, and send them to the plaintiffs. This is all he did in this case, and all he pretended he had authority to do. In this he could not possibly do his principal any harm. To this extent they authorized him and trusted him; but they might not have been willing to trust him further with the large and dangerous power of receiving payments, and they did not, so far as is possible to infer from this transaction. But it is said by the learned counsel for the respondent the agent Kilbourn sold the goods to the defendant, and in this power to sell is implied the further power to receive the consideration or payment therefor, and the learned judge of the circuit court in effect so charged the jury, as follows: "Presumptively, Mr. Dunham had the right to pay this bill to the person from whom he purchased the goods," (meaning Kilbourn, the agent;) and again: "The plaintiffs sending the goods to Dunham upon that sale or order, presumptively Kilbourn had the right to collect that debt." If what Kilbourn did could properly be called a sale of the goods, even then this instruction is questionable as an abstract statement of the law; for it does | An agent who merely solicits orders for goods, and forwards them to his principal to be filled, has no implied authority to receive payment therefor. | Is a principal responsible for an agents act if he justified the party dealing with the agent in believing that he has given the agent authority? | Principal and Agent - Memo 187 - KC.docx | LEGALEASE-00041126- LEGALEASE-00041128 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 21098 | Everdell v. Carrington, 154 A.D. 500 | 308+147(2) | 3 The defendant, as said, knew the terms of the lease, and when he paid in a manner different from therein provided he was bound to know the authority of Cleary to receive the sum paid; otherwise, he paid at his peril. The general rule is that a party dealing with an agent must ascertain the extent of the powers delegated to him, and "must abide by the consequences if he transcends them." Porges v. U. S. Mortgage & Trust Co., 203 N. Y. 181, 96 N. E. 424; Craighead v. Peterson, 72 N. Y. 279, 28 Am. Rep. 150. | A person dealing with an agent is bound at his peril to inquire and ascertain the extent of the agent's authority. | "Should a party dealing with an agent, abide by the consequences if he transcends them?" | Principal and Agent - Memo 194 - KC_59475.docx | ROSS-003296701-ROSS-003296702 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21099 | Marzano v. Proficio Mortg. Ventures, 942 F. Supp. 2d 781 | 25T+200 | Upon finding Plaintiffs' claims subject to arbitration pursuant to their respective employment agreements with First Liberty and Proficio, this Court would typically issue an order compelling the parties to arbitrate those claims. See, e.g., McGreal v. AT & T Corp., 892 F.Supp.2d 996, 1003"04 (N.D.Ill.2012); Price v. NCR Corp., 908 F.Supp.2d 935, 946 (N.D.Ill.2012); Trustmark Ins. Co. v. Transam. Occidental Life Ins. Co., 484 F.Supp.2d 850, 855 (N.D.Ill.2007). The FAA provides that, upon finding that the claims are arbitrable, a court shall compel arbitration upon the petition of "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. ° 4. Here, however, neither First Liberty nor Proficio have petitioned the Court to compel arbitration pursuant to the FAA. District courts should not sua sponte enforce arbitration clauses.Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc., 502 F.3d 740, 746 (7th Cir.2007) (analogizing forum selection clauses and arbitration clauses and reversing the district court's sua sponte dismissal); Beauperthuy v. 24 Hour Fitness USA, Inc., No. 06"0715 SC, 2006 WL 3422198 (N.D.Cal. Nov. 28, 2006) (upon finding that claims are arbitrable, "the Court cannot, sua sponte, order parties to arbitration"); In re Standard Tallow Corp., and Kil"Mgmt., 901 F.Supp. 147, 151 (S.D.N.Y.1995) ("Although the court expressly finds that an agreement to arbitrate all disputes between the parties in London does in fact exist, ... [t]he court [ ] does not have before it a proper petition to compel arbitration there and the court refuses to provide such relief sua sponte. For these reasons, the petition is denied and no order is issued directing arbitration."); see also Amiron Dev. Corp. v. Sytner, No. 12"CV"3036 JS ETB, 2013 WL 1332725, (E.D.N.Y. Mar. 29, 2013) (holding that the court had "no authority to sua sponte enforce an arbitration provision"); | Threshold questions of substantive arbitrability which a court may properly decide include: (1) whether the parties are bound by a given arbitration agreement, and (2) whether an arbitration clause in a binding contract applies to a particular type of controversy. 9 U.S.C.A. § 1 et seq. | Can the district courts enforce arbitration clauses sua sponte? | 007976.docx | LEGALEASE-00151439- LEGALEASE-00151440 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21100 | Davis v. Miller, 88 Iowa 114 | 401+7.5(4) | We are next required to determine whether the blank indorsement of a negotiable promissory note, payable, by its terms, at a designated place, requires the indorser, when his liability becomes fixed, to pay the note at such place, when he resides outside the county where it is situated. Section 2586 of the Code is as follows: "Except where otherwise provided herein, personal actions must be brought in a county wherein some of the defendants actually reside. But, if none of them have any residence within the state, they may be sued in any county wherein either of them may be found. But in all actions upon negotiable paper, except when made payable at a particular place, in which any maker of such paper, being a resident of this state, is made defendant, the place of trial shall be limited to a county wherein some one of the makers of such paper resides." It is contended by appellee that the first clause of that section is applicable to this action. It is clear that the remainder is not, for the reason that the note in suit is made payable at a particular place; the makers are nonresidents of the state, and are not actual parties to the action. The appellant claims that section 2581 of the Code authorized the bringing of the action in Jones county. That section is as follows: "When, by its terms, a written contract is to be performed in any particular place, action for a breach thereof may be brought in the county wherein such place is situated." Whether the claim of appellant is well founded depends upon the nature and extent of the obligation created by the indorsement. An indorsement constitutes a new agreement with the indorsee, by which the indorser agrees that the instrument will be paid at maturity, and, if it is not so paid upon proper demand, that he will pay it, if duly notified of the default. 2 Pars. Notes & B. 23; Tied. Com. Paper, " 259; 2 Amer. & Eng. Enc. Law, 284. The liability of the maker of a negotiable instrument is determined by the law of the place where it is to be performed, but the | Code, 1873, 5 2586 (I.C.A. 5 616.17), provides that, with certain exceptions, personal actions must be brought in a county wherein some of the defendants actually reside. Section 2581 (I.C.A. 5 616.7) provides that, when a written contract is to be performed in any particular place, action for a breach thereof may be brought in the county wherein such place is situated. Held, that the blank indorsement of a note payable at a particular place does not require the indorser to pay at that place, and unless, therefore, he is a resident of the county, no action can be brought against him therein. | Does the law where the contract took place govern the liability of the indorser? | 010014.docx | LEGALEASE-00151774-LEGALEASE-00151776 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 21101 | Reagan v. City of Newport, 43 A.3d 33 | 200+79.1 | He then cited Almy v. Church, 18 R.I. 182, 187, 26 A. 58, 60 (1893) and Knowles v. Knowles, 25 R.I. 325, 330, 55 A. 755, 757 (1903), for the proposition that this Court repeatedly has indicated "that abandonment of a public roadway can only occur in the manner provided by law." Further, the trial justice interpreted our declarations in O'Reilly v. Town of Glocester, 621 A.2d 697, 700 (R.I.1993), that the Abandonment Statute "contains a number of requirements that a town must fulfill before successfully abandoning a right-of-way" and that "[t]he law is clear in Rhode Island that a town cannot abandon its obligation to maintain a right-of-way by simply failing to fulfill its maintenance obligations," to mean that the Abandonment Statute's procedures are the "exclusive means" by which a municipality may abandon a public highway. | Abandonment statute was exclusive manner by which city could abandon public highway that was no longer being used as highway. Gen.Laws 1956, 5 24-6-1(a). | Can a town abandon its obligation to maintain a right-of-way? | Highways - Memo 306 - RK_59599.docx | ROSS-003296183-ROSS-003296184 | Condensed, SA, Sub | 0.82 | 0 | 1 | | 1 | 1 |
| 21102 | United States v. Lue, 134 F.3d 79 | 24+102 | This is not to say that foreign nationals on our soil are without any protection from federal governmental action under the equal protection component of the Fifth Amendment. They do enjoy such protection; however, it is constrained in light of the responsibility of the political branches to regulate the relationship between the United States and noncitizens. See, e.g., United States v. Duggan, 743 F.2d 59, 76 (2d Cir.1984); see also Plyler v. Doe, 457 U.S. 202, 219 n. 19, 102 S.Ct. 2382, 2396 n. 19, 72 L.Ed.2d 786 (1982). "The fact that all persons, aliens and citizens alike, are protected by the [Fifth Amendment's] Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship...." Mathews, 426 U.S. at 78, 96 S.Ct. at 1890. Rather, as the Court in Mathews acknowledged, an array of constitutional and statutory provisions rests on the assumption that there are legitimate distinctions between citizens and aliens that "may justify attributes and benefits for one class not accorded the other." Id. In short, "[t]he fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.'" "Id. at 80, 96 S.Ct. at 1891. | State or local laws that disadvantage aliens are presumptively invalid under equal protection clause, while federal laws doing same are accorded substantial deference. U.S.C.A. Const.Amends. 5, 14. | Can distinctions between citizens and aliens justify attributes and benefits for one class not accorded to the other? | 006878.docx | LEGALEASE-00152556-LEGALEASE-00152557 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21103 | Parkinson v. Finch, 45 Ind. 122 | 8.30E+173 | In Davis v. McAlpine, supra, the note was payable at a private bank, and the question was, whether it was governed by the law merchant. The court quote the above section of the statute. It is there shown that, under the statute of 1843, notes were governed by the law merchant when they were payable at a chartered bank. The court there say: "We think a note payable at a bank is, in legal contemplation, payable in the bank; and that a note payable at or in a bank is, in such contemplation, payable to the holder, or his agent, in the bank, at its counter." It was further held, that it was not necessary under the above section that it should be a chartered bank, or a bank of issue, but that it would be sufficient if it was payable at a private bank of deposit or discount. There are three kinds of banks, viz., banks of deposit, banks of deposit and discount, and banks of deposit, discount, and circulation. Notes payable in either of these kinds of banks within this State would be governed by the law merchant. | A person who signs a note purporting to be negotiable and payable at a bank in Indiana, in an action brought by a bona fide holder, is not estopped from showing that there was no such bank as the one described in the note. | Is it necessary for a note to be paid in chartered bank? | 009684.docx | LEGALEASE-00152394-LEGALEASE-00152395 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21104 | Jerstad v. Warren, 73 Or. App. 387 | 83E+402 | The principal problem with defendants' argument, quoted above, is that neither "transfer" under ORS 73.2010 nor "surrender" under ORS 73.6030(2) requires that an instrument be negotiated; therefore, LIA's failure to prove that the note was endorsed by the bank is not fatal to its claim. Although negotiation is one form of transfer, it is not the only one. Perry & Greer, Inc. v. Manning, 282 Or. 25, 31"32, 576 P.2d 791 (1978); Scheid v. Shields, 269 Or. 236, 240, 524 P.2d 1209 (1974). ORS 73.6030(2) provides: "Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee as provided in ORS 73.2010." | Negotiation is not the only form of transfer of a promissory note. | Is negotiation the only form of transfer? | 009725.docx | LEGALEASE-00152570-LEGALEASE-00152571 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21105 | Farmers' & Traders' Bank v. Laird, 188 Mo. App. 322 | 8.30E+266 | We do not sanction the view of plaintiff that the agreement for a renewal is void for uncertainty. Where such agreement does not state the number of renewals it must be construed as an agreement to renew once only (1 Daniel on Negotiable Instruments [6th Ed.] " 159). And where it does not specify the time, the parties would be understood as contemplating that the terms of the original note would be repeated in the renewal, and that the new period of time allotted for the payment would be of the same duration as that provided in the original note. | An agreement to renew a note is not void for uncertainty because it does not state how many renewals there may be or for how long. | What happens when an agreement does not state the number of renewals? | 010344.docx | LEGALEASE-00152390-LEGALEASE-00152391 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21106 | Wilcox v. Commerce Bank, 55 F.R.D. 134 | 170A+182.5 | The same liberal construction has been applied to the statutory procedure in Truth in Lending cases. As Judge Frankel observed when considering the species of "private attorney general" created by the act's " 130(e), "The language should be construed liberally in light of its broadly remedial purpose."Ratner v. Chemical Bank New York Trust Company, 329 F.Supp. 270, 280 (S.D.N.Y.1971). Hence there has been an inevitable conflict between the class action and the statutory procedure, which has been reflected in widely divergent results in the courts. | Class action was not superior to other available methods for fair and efficient adjudication of controversy with respect to whether bank which issued credit cards to three individual plaintiffs made inadequate disclosure of finance charges in violation of Truth in Lending Act; accordingly, action was not maintainable as class action. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq.; Fed.Rules Civ.Proc. rule 23(a, b), (b) (3), (c) (1), 28 U.S.C.A. | Is the Truth in Lending Act be liberally construed? | 013687.docx | LEGALEASE-00152063-LEGALEASE-00152064 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 21107 | Wilcox v. Commerce Bank, 55 F.R.D. 134 | 170A+182.5 | The same liberal construction has been applied to the statutory procedure in Truth in Lending cases. As Judge Frankel observed when considering the species of "private attorney general" created by the act's " 130(e), "The language should be construed liberally in light of its broadly remedial purpose."Ratner v. Chemical Bank New York Trust Company, 329 F.Supp. 270, 280 (S.D.N.Y.1971). Hence there has been an inevitable conflict between the class action and the statutory procedure, which has been reflected in widely divergent results in the courts. | Class action was not superior to other available methods for fair and efficient adjudication of controversy with respect to whether bank which issued credit cards to three individual plaintiffs made inadequate disclosure of finance charges in violation of Truth in Lending Act; accordingly, action was not maintainable as class action. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq.; Fed.Rules Civ.Proc. rule 23(a, b), (b) (3), (c) (1), 28 U.S.C.A. | Why should the Truth in Lending Act be liberally constructed? | 013689.docx | LEGALEASE-00152449-LEGALEASE-00152450 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 21108 | Sterlane v. Fleming, 236 Iowa 480 | 200+79.1 | To constitute an abandonment there must be "a relinquishment or surrender of rights or property by one person to another. It includes both the intention to abandon and the external act by which the intention is carried into effect." 1 Words and Phrases, Perm.Ed., 55. | A highway once shown to exist is presumed to continue to exist, and abandonment is a fact which must be proved by clear and satisfactory evidence by one asserting such abandonment. | What needs to be shown in order to prove abandonment? | 018692.docx | LEGALEASE-00152509-LEGALEASE-00152510 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 21109 | Burton v. Hansford, 10 W. Va. 470 | 83E+458 | In the case of Ray et al v. Sampson, 22 How., 341, Justice Clifford, in delivering the opinion of the court, states the law thus: "When a promissory note, made payable to a particular person or order, is first endorsed by a third person, as in this case such third person is held to be an original promisor, guarantor or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. If he put his name on the back of the note at the time it was made, as surety for the maker, and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered a joint maker of the note. On the other hand, if his endorsement was subsequent to the making of the note, and he put his name thereon at the request of the maker, pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as a guarantor. But if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his endorsement would be inoperative until it was endorsed by the payee, he would then only be liable as second endorser in the commercial sense, and as such would clearly be entitled to the privileges which belong to such endorsers." | A stranger who indorses negotiable paper at the time it is made is prima facie liable to the payee, at his election at any time, either as original promisor or as guarantor. | When can a third person be held as a guarantor? | 009849.docx | LEGALEASE-00153568-LEGALEASE-00153569 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21110 | Gay v. Rooke, 151 Mass. 115 | 8.30E+33 | In order to constitute a good promissory note, there should be an express promise on the face of the instrument to pay the money. A mere promise, implied by law, founded on an acknowledged indebtedness, will not be sufficient. Story, Prom. Notes, " 14; Brown v. Gilman, 13 Mass. 158 While such promises need not be expressed in any particular form of words, the language used must be such that the written undertaking to pay may fairly be deduced therefrom. Insurance Co. v. Whitney, 1 Metc. 21. In this view, the instrument sued on cannot be considered a promissory note. It is an acknowledgment of a debt only; and, although from such an acknowledgment a promise to pay may be legally implied, it is an implication from the existence of the debt, and not from any promissory language. | An instrument in writing, in the form: "I O U, E. A. Gay, the sum of seventeen dolls. 5/100, for value received. John R. Rooke,"-is not a promissory note. | Can an instrument constitute a promissory note if there is no express promise to pay? | Bills and Notes -Memo 1023 - JK_60734.docx | ROSS-003278311-ROSS-003278312 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21111 | Sierra Club Iowa Chapter v. Iowa Dep't of Transp., 832 N.W.2d 636 | 200+103.2 | We review the district court's grant of a motion to dismiss a petition for correction of errors at law. Iowa R.App. P. 6.907; see also Rucker v. Taylor, 828 N.W.2d 595, 598 (Iowa 2013). Dismissal of the petition is only appropriate if, when viewing the petition in the light most favorable to the plaintiff, " "the plaintiff's claim could not be sustained under any state of facts provable under the petition." " Griffen v. State, 767 N.W.2d 633, 634 (Iowa 2009) (quoting Sanford v. Manternach, 601 N.W.2d 360, 363 (Iowa 1999)). The parties agree our review is for correction of errors at law. | Motion in which environmental group and its members requested enlargement or expansion of trial court's findings and conclusions challenged several factual findings, and thus motion tolled 30-day period to file notice of appeal regarding trial court's dismissal of proceeding seeking review of decision of Iowa Department of Transportation (IDOT) to locate highway adjacent to and through two nature preserves; group and members challenged trial court's summary decisions, which involved legal issues with underlying questions of fact, trial court did not definitively specify whether it found proceeding to involve hypothetical or concrete facts, and trial court did not address appropriate standard of review. I.C.A. Rules 1.904(2), 6.101(1)(b). | Is a dismissal of a petition only appropriate if the plaintiff's claim could not be sustained under any state of facts provable under the petition? | 038015.docx | LEGALEASE-00152870-LEGALEASE-00152871 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 21112 | Fulton Cty. v. T-Mobile, S., 305 Ga. App. 466 | 371+2246 | In Luke v. Dept. of Natural Resources,19 the Court relied on Gunby in ruling that fees paid by the owner and operator of an underground storage tank (UST) used in the retail gasoline business for participation in a UST Trust Fund did not constitute a tax because they were not " exacted"; rather, the owner's participation in the Fund was voluntary.20 | The 9-1-1 charge imposed by county on wireless telephone service providers pursuant to the Georgia Emergency Telephone Number 9-1-1 Service Act of 1977 was a tax under state law; charge was not voluntary, as it was exacted pursuant to Act and county resolution, purpose of charge was to raise revenue for 9-1-1 system, not as compensation for service rendered by it, and those who paid 9-1-1 charge, whether provider or its customers, received no benefit not received by general public, since all members of public could access 9-1-1 system. West's Ga.Code Ann. S 46-5-120 et seq. | Can voluntary payment constitute a tax? | 046002.docx | LEGALEASE-00153277-LEGALEASE-00153278 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21113 | United States v. Shenise, 43 F. Supp. 2d 1190 | 317+17 | The Taylor Grazing Act and the applicable regulation do not define wilful behavior. In similar cases involving Forest Service regulations, courts have held that intent is not an essential element of cattle intruding on Forest Service Land. See, United States v. Larson, 746 F.2d 455, 456 (8th Cir. 1984). | Grazing trespass on Bureau of Land Management (BLM) land is "public welfare offense," for which mental element of intent may be proven by proof of guilty act itself. Taylor Grazing Act, § 2, 43 U.S.C.A. S 315a; 43 C.F.R. S 9264.1(a). | Is intention an essential element of cattle intruding on forest service land? | Woods and Forests - Memo 87 - SB_60795.docx | ROSS-003295844-ROSS-003295845 | Condensed, SA, Sub | 0.22 | 0 | 1 | | 1 | |
| 21114 | Morissette v. United States, 342 U.S. 246 | 234+3(1) | The pilot of the movement in this country appears to be a holding that a tavernkeeper could be convicted for selling liquor to an habitual drunkard even if he did not know the buyer to be such. Barnes v. State, 1849, 19 Conn. 398. Later came Massachusetts holdings that convictions for selling adulterated milk in violation of statutes forbidding such sales require no allegation or proof that defendant knew of the adulteration. Commonwealth v. Farren, 1864, 9 Allen 489; Commonwealth v. Nichols, 1865, 10 Allen 199; Commonwealth v. Waite, 1865, 11 Allen 264. Departures from the common-law tradition, mainly of these general classes, were reviewed and their rationale appraised by Chief Justice Cooley, as follows: 'I agree that as a rule there can be no crime without a criminal intent, but this is not by any means a universal rule. * * * Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible." People v. Roby, 1884, 52 Mich. 577, 579, 18 N.W. 365, 366. | Under statute providing that whoever embezzles, steals, purloins or knowingly converts government property is punishable by fine and imprisonment, "knowing conversion" requires more than knowledge that defendant was taking the property into his possession, and he must have had knowledge of the facts, though not necessarily the law that made the taking a conversion. 18 U.S.C.A. S 641. | Do convictions for selling adulterated milk in violation of statutes require allegation or proof that defendant knew of the adulteration? | Adulteration-Memo 5 - _1t8ysuS_2pGsagm0iae-LNbvOdz2rncfW.docx | ROSS-000000162-ROSS-000000163 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 21115 | Stone v. Midland Multifamily Equity REIT, 334 S.W.3d 371 | 30+242(2) | As to Midland's contention that Stone failed to preserve error regarding any hearsay objection, we agree. An objection that an affidavit contains hearsay is an objection to the form of the affidavit. Green v. Indus. Specialty Contractors, 1 S.W.3d 126, 130 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Contrary to Stone's contention on appeal that the trial court overruled his objections to Midland's summary judgment evidence, the trial court granted Midland summary judgment without addressing Stone's objections. The record contains no rulings on any hearsay objections. Consequently, Stone failed to preserve any hearsay complaint for appellate review. See Tex.R.App. P. 33.1(a)(2). | For purposes of preservation of error, an appellate court treats a party's objections to defects in the "form" and the "substance" of an affidavit differently; a defect in the substance of an affidavit is not waived by failure to obtain a ruling from the trial court on the objection and may be raised for the first time on appeal, whereas a defect in the form of an affidavit must be objected to in the trial court and the opposing party must have the opportunity to amend the affidavit, such that failure to obtain a ruling from the trial court on an objection to the form of an affidavit waives the objection. | Is an affidavit which contains hearsay an objection to the form of affidavit? | Affidavits - Memo 60 - _1o-ho93fMN73R8xGe4u1s5EWoPQ_uVVt.docx | ROSS-000000217-ROSS-000000218 | Condensed, SA | 0.1 | 0 | 1 | | 1 | |
| 21116 | Freas v. Jones, 15 N.J.L. 20 | 21+10 | It would seem impossible to shut one's eyes to the truth so effectually, as to exclude the conviction, that the affidavit must have been made at, or after the execution of the bond--and consequently that 1830 was written by mistake instead of 1832. It is probable, however, the court were satisfied of this, but supposed it to be a fatal error, and one that could not be corrected according to their rules of practice. But I consider the date unimportant, provided the affidavit was sufficient. A date is not essential to an affidavit. If untrue, perjury may be assigned upon it, though it may have no date, or a wrong or impossible one, and the true time of making it, may be averred and proved. If it is an affidavit in the cause, if it states that the appeal is not prosecuted for delay, and that the party verily believes he has a just defence upon the merits, and if it was filed with the Justice at the time of demanding the appeal, it is sufficient. Such appears to be the case in this instance, and the court ought not to have dismissed the appeal, on the ground of the self evident mistake in the date affixed to the jurat. | A date is not essential to an affidavit, and, if a date is stated erroneously, the mistake may be shown. | Is date an essential part of an affidavit? | Affidavits - Memo 84 - _12oy4XPoVQZ92yHTLD AqRBN2BNrN47sv.docx | ROSS-000000262-ROSS-000000263 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 21117 | Gay v. Rooke, 151 Mass. 115 | 8.30E+56 | In order to constitute a good promissory note, there should be an express promise on the face of the instrument to pay the money. A mere promise, implied by law, founded on an acknowledged indebtedness, will not be sufficient. Story, Prom. Notes, " 14; Brown v. Gilman, 13 Mass. 158 While such promises need not be expressed in any particular form of words, the language used must be such that the written undertaking to pay may fairly be deduced therefrom. Insurance Co. v. Whitney, 1 Metc. 21. In this view, the instrument sued on cannot be considered a promissory note. It is an acknowledgment of a debt only; and, although from such an acknowledgment a promise to pay may be legally implied, it is an implication from the existence of the debt, and not from any promissory language. Something more than this is necessary to establish a written promise to pay money. It was therefore held in Gray v. Bowden, 23 Pick. 282, that a memorandum on the back of a promissory note, in these words, "I acknowledge the within note to be just and due," signed by the maker, and attested by a witness, was not a promissory note signed in the presence of an attesting witness, within the meaning of the statute of limitations. In England, an IOU, there being no promise to pay embraced therein, is treated as a due-bill only. The cases which arose principally under the stamp act are very numerous, and they have held that such a paper did not require a stamp, as it was only evidence of a debt. 1 Daniel, Neg. Inst. " 36; 1 Rand.Com. Paper, " 88; Fesenmayer v. Adcock, 16 Mees. & W. 449; Melanotte v. Teasdale, 13 Mees. & W. 216; Smith v. Smith, 1 Fost. & F. 539; Gould v. Coombs, 1 C.B. 543; Fisher v. Leslie, 1 Esp. 425, Israel v. Israel, 1 Camp. 499; Childers v Boulnois, Dowl. & R.N.P. 8; and Beeching v. Westbrook, 8 Mees. & W. 412. | The following instrument: "I O U, E. A. Gay, the sum of seventeen dolls. 5/100, for value received. John R. Rooke"-is an acknowledgment of debt by the maker, and not a note. | Is acknowledgment of a debt a promissory note? | Bills and Notes - Memo 1004 - RK_61284.docx | ROSS-003284032-ROSS-003284033 | Condensed, SA, Sub | 0.9 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21118 | Thweatt v. Jackson, 838 S.W.2d 725 | 83E+481 | Our conclusion finds further support in the federal courts. In Mountain States Financial Resources Corp. v. Agrawal, 777 F.Supp. 1550, 1552 (W.D.Okla.1991), the defendants in a suit on promissory notes argued that the six-year statute of limitations contained in section 1821 applied only to actions brought by the FDIC, not the FDIC's assignees. In rejecting this argument, the court stated:They [the defendants] do not dispute that had the FDIC brought the action, the six-year limitations period would apply. An assignee stands in the shoes of the assignor, and acquires all of the assignor's rights and liabilities in the assignment. This general principle and a strong public policy require that the FDIC's assignee acquire the six-year limitations period provided by " 1821(d)(14)(A). | Assignee of promissory note obtained Federal Deposit Insurance Corporation's right to assert claim under six year statute of limitation provided by Financial Institutions Reform, Recovery, and Enforcement Act, even though state law provided only four-year statute of limitations. V.T.C.A., Civil Practice & Remedies Code S 16.004; Federal Deposit Insurance Act, SS 2(11), 2(11)(d)(14), as amended, 12 U.S.C.A. SS 1821, 1821(d)(14). | Does the FDICs assignee acquire its six-year limitations period? | Bills and Notes - Memo 957 - RK_60815.docx | ROSS-003308703-ROSS-003308704 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 21119 | Anderson v. Border, 75 Mont. 516 | 157+423(6) | A person who places his signature upon an instrument, otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. Section 8470, R. C. 1921. The Negotiable Instruments Act deals with negotiable instruments only so long as they are in the hands of holders in due course. If in other hands, they are subject to the same defenses as if nonnegotiable. U. S. Nat. Bk. v. Shupak, 172 P. 324, 54 Mont. 542; Merchants' Nat. Bk. v. Smith, 196 P. 523, 59 Mont. 280, 15 A. L. R. 430. As to one another, all the indorsers are liable in the order of their indorsement; but evidence is admissible as between themselves that they have otherwise agreed, and joint indorsers are deemed to have indorsed jointly and severally. Section 8475, R. C. 1921.Case 3: Bronner v. Walrath, 208 A.D. 758.Topical Quote 1: The presumption created by the form of the Christman note is that the four parties signing it were joint and several makers, and became jointly and severally liable. National Surety Co. v. Seaich, 171 App. Div. 414, 157 N. Y. Supp. 422; Negotiable Instruments Law, " 36. Each was liable to pay the whole amount. But, if one paid more than his share, he might have contribution from the others.Morgan v. Smith, 70 N. Y. 537; Aspinwall v. Sacchi, 57 N. Y. 331, 337. And in determining the proportion of contribution, regard would be had only to the solvent debtors. Kimball v. Williams, 51 App. Div. 616, 65 N. Y. Supp. 69. If the evidence here changes that presumption at all, it tends to show that Alvin was maker, and the other three signers were sureties, and so were jointly and severally liable. | Parol evidence held admissible to show that accommodation indorsers of note had not bound themselves personally (Rev.Codes 1921, SS 7538, 8459, 8475, 10517, 10521). | In what order are indorsers liable? | Bills and Notes - Memo 972 - RK_61309.docx | ROSS-003319173-ROSS-003319174 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21120 | Phillips Petroleum Co. v. Harnly, 348 S.W.2d 856 | 8.30E+27 | A draft is a common term for a bill of exchange. Black's Law Dictionary, 4th Edition, 1951. The Negotiable Instruments Act, Art. 5939 et seq., Sec. 126, V.A. C.S., defines a bill of exchange as follows: "A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." As Phillips was both the drawer and drawee, Art. 5940, Sec. 130 is also material here. | A "draft" is a common term for a "bill of exchange". Vernon's Ann.Civ.St. arts. 5939 et seq., 5940, SS 126, 130; art. 5948, S 191. | What is a draft? | Bills and Notes - Memo 986 - RK_61315.docx | ROSS-003282883 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21121 | Hernandez v. Teachers Coll., Columbia Univ., 153 A.D.3d 1241 | 141E+1178 | " "Strong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance" " (Sarwar v. New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech., 150 A.D.3d 913, 914, 54 N.Y.S.3d 96, quoting Matter of Susan M. v. New York Law School, 76 N.Y.2d 241, 245, 557 N.Y.S.2d 297, 556 N.E.2d 1104). "Unlike disciplinary actions taken against a student, institutional assessments of a student's academic performance, whether in the form of particular grades received or actions taken because a student has been judged to be scholastically deficient, necessarily involve academic determinations requiring the special expertise of educators" (Matter of Susan M. v. New York Law School, 76 N.Y.2d at 245, 557 N.Y.S.2d 297, 556 N.E.2d 1104 [citation omitted]; see Maas v. Cornell Univ., 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966). "Although decisions made by educational institutions as to academic issues are not completely beyond the scope of judicial scrutiny, review is restricted to special proceedings under CPLR article 78, and only to determine whether the decision was arbitrary, capricious, irrational, or in bad faith" (Sarwar v. New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech., 150 A.D.3d at 914, 54 N.Y.S.3d 96; see Eidlisz v. New York Univ., 15 N.Y.3d 730, 731'732, 906 N.Y.S.2d 520, 932 N.E.2d 876; Keles v. Hultin, 144 A.D.3d 987, 988, 42 N.Y.S.3d 235; Matter of Zanelli v. Rich, 127 A.D.3d 774, 775, 8 N.Y.S.3d 357; Keles v. Trustees of Columbia Univ. in the City of N.Y., 74 A.D.3d 435, 435, 903 N.Y.S.2d 18). | Although decisions made by educational institutions as to academic issues are not completely beyond the scope of judicial scrutiny, review is restricted to special administrative proceedings, and only to determine whether the decision was arbitrary, capricious, irrational, or in bad faith. McKinney's CPLR 7801 et seq. | Can courts intervene in controversies relating to an educational institution's judgement of a student's academic performance? | 016800.docx | LEGALEASE-00153865-LEGALEASE-00153866 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 21122 | Hanson v. Disotell, 106 So. 3d 345 | 30+3206 | With respect to subject matter jurisdiction, our review of the Trial Court's granting of the motion to dismiss also is de novo. Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn.2000). The Trial Court considered matters outside the pleadings. Under different circumstances, this would necessitate treating the motion to dismiss as though it were a motion for summary judgment. A motion to dismiss, however, need not be converted into a motion for summary judgment if a trial court considers external evidence only to determine whether it has subject matter jurisdiction. Staats v. McKinnon, 206 S.W.3d 532, 543 (Tenn.Ct.App.2006). | Supreme Court does not reverse trial judges who grant dismissals for failure to prosecute unless it finds that, in so doing, they abused their discretion. Rules Civ.Proc., Rule 41(b). | Should a motion to dismiss not be converted into a motion for summary judgment if a trial court considers external evidence? | Pretrial Procedure - Memo # 9372 - C - AC_61058.docx | ROSS-003294652-ROSS-003294653 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21123 | Lessard v. Velsicol Chem. Corp., 2009 WL 1089362 | 307A+676 | A trial court may dismiss a case for want of prosecution: (1) when a party fails to appear at a hearing or trial; (2) when the case has not been disposed of within the Supreme Court's time standards; or (3) under the trial court's inherent power to dismiss, when the case has not been prosecuted with due diligence. See Tex.R. Civ. P. 165a; Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999); Rotello, 671 S.W.2d at 509; Bilnoski v. Pizza Inn, Inc., 858 S.W.2d 55, 57 (Tex. App.- Houston [14th Dist.] 1993, no writ). The trial court's authority to dismiss is derived both from rule 165a of the Texas Rules of Civil Procedure and from its inherent power to manage its own docket. Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex.1976); Burton v. Hoffman, 959 S.W.2d 351, 353 (Tex.App.-Austin 1998, no pet.). | Trial court did not abuse its discretion when it dismissed chemical contamination claims for want of prosecution as proper notice was given. The property owners argued that they did not receive adequate notice of the trial court's intent to dismiss their case because the notice was promulgated by the chemical corporation via its joint motion to dismiss for want of prosecution and not by the trial court itself. They argued that the chemical corporation's joint motion was only sufficient to inform them of the corporation's intentions and gave no indication of the trial court's intentions. However, the Texas Supreme Court has held that either notice of the trial court's intent to dismiss or notice of the actual order of dismissal is sufficient notice. | Is authority to dismiss derived both from rules of civil procedure and from court's inherent powers? | 038756.docx | LEGALEASE-00154250- LEGALEASE-00154251 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 21124 | Fontanetta v. Doe, 73 A.D.3d 78 | 307A+684 | As Professor Siegel has noted in his Commentary to CPLR 3211, there is "a paucity of case law" as to what is considered " 'documentary' under (CPLR 3211(a)(1).)" (Siegel, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C3211:10, at 21*22). From the cases that exist, it is clear that judicial records, as well as documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are "essentially undeniable," would qualify as "documentary evidence" in the proper case (id.; see 2 N.Y. Prac., Com. Litig. in New York State Courts " 7:60, 2d. ed.). For example, in (Matter of Casamassima v. Casamassima, 30 A.D.3d 596, 818 N.Y.S.2d 233), this Court held that a trust agreement qualified as "documentary evidence" in a dispute between co-trustees. | Printed materials created in connection with hospital's peer review of surgeon, including letters, summaries, opinions, and conclusions of hospital's agents and employees, did not constitute "documentary evidence," within meaning of statute permitting motions to dismiss on documentary evidence, and thus dismissal of surgeon's action against hospital officials for unfair competition, tortious interference with contract, tortious interference with business relations, and defamation on basis of statutory immunity was not warranted. McKinney's CPLR 3211(a)(1). | "Will '"documentary evidence"' include judicial records, as well as documents reflecting out-of-court transactions?" | 039295.docx | LEGALEASE-00154761- LEGALEASE-00154762 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 21125 | State v. Camillo, 382 N.J. Super. 113 | 282+118 | or to the enactment of N.J.S.A. 2C:29"1 in 1979, a defendant could be convicted of the common-law crime of obstruction of justice in the absence of physical interference. "Under the common law it was a misdemeanor to do any act which prevents, obstructs, impedes, or hinders the due course of public justice." State v. Cassatly, 93 N.J.Super. 111, 118, 225 A.2d 141 (App.Div.1966), certif. denied, 48 N.J. 448, 226 A.2d 435 (1967). Similarly, before enactment of the current statute, the statutory offense of obstruction also lacked "physical" interference as an element of the crime. It provided that: "[a]ny person who in any place, public or private ... obstructs, molests or interferes with any person lawfully therein ... is a disorderly person." State v. Lashinsky, 81 N.J. 1, 6, 9, 404 A.2d 1121 (1979) (citing N.J.S.A. 2A:170"29 (person who obstructs or interferes with person lawfully in public or private place is a disorderly person)). The statute did not "import the notion that the prohibited conduct must be physical in nature." see also State v. Smith, 46 N.J. 510, 513"14, 520, 218 A.2d 147 (verbal disturbance in a public meeting sufficient to meet requirements for finding of guilt under N.J.S.A. 2A:170"29), cert. denied, 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966); State v. Taylor, 38 N.J.Super. 6, 29"30, 118 A.2d 36 (App.Div.1955) (actual physical interference with police officer not a prerequisite to conviction); cf. N.J.S.A. 2A:99"1, repealed by L. 1978, c. 95, eff. Sept. 1, 1979 ("Any person who knowingly and willfully obstructs, resists ... person duly authorized, in serving or executing ... process or order of court, or who assaults, beats or wounds any such officer ... while he is engaged in serving or executing the same, ... is guilty of a misdemeanor). | Defendant's act of refusing to provide his name, date of birth, and social security number to state trooper who required the information to prepare an incident report did not constitute physical interference with trooper's orders, as required to sustain conviction for obstructing the administration of the law. N.J.S.A. 2C:29-1(a). | Is a person who interferes with a person lawfully in a public place a disorderly person? | Disorderly Conduct - Memo 156 - RK_61881.docx | ROSS-003295163-ROSS- 003295164 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21126 | Giron v. City of Alexander, 693 F. Supp. 2d 904 | 35+63.4(15) | A person commits the offense of public intoxication if he or she appears in a public place manifestly under the influence of alcohol to the degree and under circumstances such that:(1) The person is likely to endanger himself or herself or another person or property; or(2) The person unreasonably annoys a person in his or her vicinity. | Arrestee did not appear in a public place, within meaning of Arkansas law, when he came outside his home at city police officer's request and stood in his driveway, as required to afford officer probable cause to cite arrestee for public intoxication. U.S.C.A. Const.Amend. 4; West's A.C.A. SS 5-71-1(D)(6), 5-71-212. | When is the offense of public intoxication said to be committed? | Disorderly Conduct - Memo 147- JK_61891.docx | ROSS-003280052 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 21127 | Giron v. City of Alexander, 693 F. Supp. 2d 904 | 35+63.4(15) | A person commits the offense of public intoxication if he or she appears in a public place manifestly under the influence of alcohol to the degree and under circumstances such that:(1) The person is likely to endanger himself or herself or another person or property; or(2) The person unreasonably annoys a person in his or her vicinity. | Arrestee did not appear in a public place, within meaning of Arkansas law, when he came outside his home at city police officer's request and stood in his driveway, as required to afford officer probable cause to cite arrestee for public intoxication. U.S.C.A. Const.Amend. 4; West's A.C.A. SS 5-71-1(D)(6), 5-71-212. | What is public intoxication? | Disorderly Conduct - Memo 148- JK_61892.docx | ROSS-003281669-ROSS- 003281670 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 21128 | Stromberg v. People of State of Cal., 283 U.S. 359 | 110+1172.1(4.4) | A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment. The first clause of the statute being invalid upon its face, the conviction of the appellant, which so far as the record discloses may have rested upon that clause exclusively, must be set aside. | Invalidity of one of clauses of statute will require reversal of conviction thereunder, where court authorized conviction for violating any one clause. | Can conviction under a statute can be set aside? | 014387.docx | LEGALEASE-00155420- LEGALEASE-00155421 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 21129 | People v. Hochwender, 20 Cal. 2d 181 | 371+2001 | The defendants insist that the tax is a claim arising upon contract within the meaning of section 707. The contention cannot be sustained. In the early case of Perry v. Washburn, 20 Cal. 318, 350, it was held: "Taxes are not debts due by contract, express or implied." That case has been consistently and uniformly followed. It was cited and approved in Spurrier v. Neumiller, 37 Cal.App. 683, 174 P. 338, 341, where it was said: "Taxes are not debts, nor founded upon contract; but they are charges upon persons or property to raise money for public purposes, and the general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. We must recently reiterated the rule in Southern Service Co. v. County of Los Angeles, 15 Cal.2d 1, 97 P.2d 963, 969, stating, "The general relationship of sovereign and tax payer is not founded on nor does it create any contractual rights," citing Perry v. Washburn, supra, and Spurrier v. Neumiller, supra. | "Taxes" are not "debts" nor "founded upon contract" but they are charges upon persons or property to raise money for public purposes and the general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. | Are taxes debts due by contract? | 046083.docx | LEGALEASE-00154980- LEGALEASE-00154981 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21130 | Ex parte Orozco, 201 F. 106 | 221+211 | It is said by the respondent that this power of summary arrest and detention is derived from the provisions of section 14 of the Penal Code. This section, forming part of the chapter on the subject of "offenses against neutrality," so far as it affects the present inquiry, makes it lawful for the "President or such other person as he shall have empowered for that purpose, to employ the land and naval forces" for two purposes, to wit: (1) for the purpose of taking possession of and detaining vessels, etc.; and (2) for the purpose of preventing the carrying on of any military expedition or enterprise from the territory or jurisdiction of the United States against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States are at peace. In analyzing the section, it will be observed that in reference to vessels express power is conferred to seize and detain; but no power is conferred, in terms, authorizing the arrest and imprisonment of persons. The President may employ the army in preventing the carrying on of a military expedition from our own territory against the Republic of Mexico, and his discretion in calling out the military forces for that purpose is not subject to the review and control of the courts. | Pen.Code, S 14, 22 U.S.C.A. S 461, held not to authorize the president to use the military power in time of peace to arrest without a warrant and imprison without the benefit of a trial a person within the United States merely suspected of intention to organize an expedition in aid of a revolution in his own country with which the United States is at peace. | Can the President employ the army in preventing the carrying on of a military expedition and does his discretion in calling out the military forces for that purpose subject to the review and control of the courts? | Neutrality Laws - Memo 2 - KC_62359.docx | ROSS-003292188-ROSS-003292189 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21131 | United States v. Murphy, 84 F. 609 | 221+212 | A military expedition or a military enterprise may consist of few or many men. Eighteen or twenty four men may compose such an expedition or enterprise as well as eighteen hundred or twenty four hundred. The existence or character of the military expedition or the military enterprise does not require concerted action on the part of a large number of individuals. The defendant, as before stated, is charged in the fifth count, not with preparing the means for a military expedition, but with preparing the means for a military enterprise. The words "military enterprise" are somewhat broader in meaning than the words "military expedition." | A combination of a number of men in the United States, with a common intent to proceed in a body to a foreign territory, and engage in hostilities, either by themselves or in co-operation with others, against a power with whom the United States are at peace, constitutes a military expedition, when they actually proceed from the United States, whether they are then provided with arms, or intend to secure them in transit. It is not necessary that all the persons shall be brought in personal contact with each other in the United States, or that they shall be drilled, uniformed, or prepared for efficient service. | "In terms of military, is the word 'military enterprise broader than the word 'military expedition'?" | Neutrality Laws - Memo 4 - KC_62361.docx | ROSS-003281009-ROSS-003281010 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 21132 | Quinton v. Kuffer, 221 Ill. App. 3d 466 | 30+3554 | In contrast, when the grounds do not appear on the face of the pleadings, but must be established by affidavits or depositions, the defendant may contest the complaint through either a motion to dismiss under section 2"619 (Ill.Rev.Stat.1989, ch. 110, par. 2"619) or a motion for summary judgment. (4 R. Michael, Illinois Practice: Civil Procedure Before Trial " 41.2, at 295 (1989).) Although a motion for summary judgment "almost necessarily assumes that a cause of action has been stated" (Janes, 57 Ill.2d at 406, 312 N.E.2d at 609), when negligence is alleged, in the absence of any showing upon which the court could infer the existence of a duty, no recovery would be "470 possible as a matter of law, and summary judgment in favor of defendants would be proper (Barnes v. Washington (1973), 56 Ill.2d 22, 27, 305 N.E.2d 535). If what is contained in the papers on file would constitute all the evidence before the court and would be insufficient to go to a jury but would require a court to direct a verdict, summary judgment should be entered. Pyne v. Witmer (1989), 129 Ill.2d 351, 358, 135 Ill.Dec. 557, 543 N.E.2d 1304. | Granting or denying of motion for summary judgment is not discretionary, and de novo standard of review is applied. | "When the grounds for a dismissal do not appear on the face of the pleadings, but are established by affidavits or depositions, can a defendant contest the complaint by either a motion to dismiss or a motion for summary judgment?" | Pretrial Procedure - Memo # 10171 - C - SK_62174.docx | ROSS-003321004-ROSS-003321005 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21133 | Kelly v. State, 191 Ark. 674 | 67+42(1) | Appellant's first contention for reversal is that the verdict of the jury is contrary to the law. By section 2 of Act No. 67 of 1921 (page 70) burglary is defined as follows: "Burglary is the unlawful entering a house, tenement, railway car or other building, boat, vessel or water craft with the intent to commit a felony." | Evidence that some one broke and entered chicken house at night and stole therefrom chickens worth $12, and that some of chickens were subsequently recovered from witness who testified that he bought them from defendant held to sustain conviction for burglary (Acts 1921, p. 70, S 2). | Can a boat or vessel be subject to burglary? | 013030.docx | LEGALEASE-00156413-LEGALEASE-00156414 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 21134 | Seabolt v. Com., 2014 WL 5410238 | 110+1037.1(2) | Pursuant to the truth-in-sentencing statute, the Commonwealth is permitted to introduce evidence of the nature of prior offenses for the purposes of securing a PFO conviction. KRS 532.055(2)(a). In Mullikan v. Commonwealth, 341 S.W.3d 99 (Ky.2011), this Court defined the scope of permissible evidence of the nature of prior offenses as limited to "conveying to the jury the elements of the crimes previously committed." We note that Seabolt does not challenge the evidence presented by the clerk, but instead alleges that the Commonwealth's closing argument ran afoul of our Mullikan rule. It is well settled that attorneys are not permitted to argue facts not in evidence or not reasonably inferable from the evidence during closing arguments. Garrett v. Commonwealth, 48 S.W.3d 6, 16 (Ky.2001).Seabolt correctly submits that "forced entry" or "breaking in" is not an element of second-degree burglary. However, the prosecutor's statement did not rise to the level of palpable error. | Prosecutor's closing argument during penalty phase that defendant "was breaking in houses" in reference to prior second-degree burglary conviction did not constitute palpable error in second-degree burglary prosecution; statement appeared to have been little more than an attempt to further explain elements of persistent felony offender charge, statement was not reasonably calculated to stir jurors' emotions and was not repeated, and statement did not invoke images of a violent or aggressive past offense. KRS S11.030, 532.055(2)(a); Rules Crim.Proc., Rule 10.26. | Is forced entry an element of burglary? | 013150.docx | LEGALEASE-00156605-LEGALEASE-00156606 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 21135 | Smoot v. Judd, 161 Mo. 673 | 8.30E+10 | 1. The case was tried on the theory that the note was a Missouri contract, and subject to our laws, and that was probably correct, although it was signed by Mrs. Smoot in Kentucky, mailed to her husband here, who signed it, and returned it to Kentucky, where it was delivered to the payee, who was a resident of that state. No place of payment is mentioned in the note, but as the makers lived here, and, so far as the married woman's obligation is concerned, the property charged with its payment being in Missouri, this may be considered as the place intended for the performance of the contract. The law of the place where the contract is to be performed is the law of the contract. That point, however, is not very material in this case, because in 1887 the common"law disability of a married woman to incur a general personal liability by making a promissory note was the law in this state, and, if there was a statute in Kentucky removing such disability, it has not been pleaded or proven. | The law of the place where a contract is to be performed is the law of the contract, and a note signed by a married woman in Kentucky, which was returned to her husband at their home in Missouri, who signed and returned it to Kentucky, where it was delivered to the payee, a resident of that state, is a Missouri contract, no place of payment being mentioned, and the property charged with its payment being in Missouri. | What law governs a contract? | Bills and Notes - Memo 1295 - RK_63502.docx | ROSS-003292405-ROSS-003292406 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21136 | Walcott v. Manufacturers Hanover Tr., 133 Misc. 2d 725 | 83E+426 | The series of numbers having no restrictive effect, Mr. Walcott indorsed the check in blank, or otherwise stated, he simply signed his name. A blankindorsement under UCC " 3"204 subdivision (2) "specifies no particular indorsee and may consist of a mere signature." Additionally, "An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone " Consequently, since plaintiff failed to limit his blankindorsement, the check was properly negotiated by delivery to third party defendant Bilko and properly cashed by them. | Payee's signature on back of his paycheck, which did not specify any particular endorsee and merely set forth payee's mortgage number, was a "blank endorsement," which had effect of converting paycheck into a bearer instrument, so that paycheck was properly negotiated by delivery to third party and properly cashed by third party at collecting bank. McKinney's Uniform Commercial Code § 3-204(2). | Does indorsement in blank specifies any indorsee? | 010880.docx | LEGALEASE-00157411-LEGALEASE-00157412 | Condensed, SA | 0.31 | 0 | 1 | | 1 | 1 |
| 21137 | Bureau Mktg. Serv. of Osceola v. Lewis, 220 Iowa 662 | 172H+574(3) | Further in this case, 151 Md. 514, 522, 135 A.383, 387, 49 A. L. R. 1366, on page 1371, the opinion says: "The payee of a check can protect his own rights by the form of his indorsement. If he neglects his own interest and indorses in blank instead of restrictively, and thereby enables his agent for collection to use the paper as its own, the loss occasioned by the title to the negotiable paper not being in the agent should be borne by the payee, whose own improvident act afforded the agent an opportunity to transfer the negotiable paper pursuant to its purport. Innocent subsequent parties should not suffer for reliance upon a negotiable instrument and its indorsement according to their tenor. The rule adopted has the merit of affording such parties the protection of the negotiable paper according to its terms, and finds support in its tendency to protect the integrity of negotiable paper and to give greater security to financial transactions by the assurance that the law will commonly give to checks and other negotiable paper the effect ascribable to their form and content." The note to this case, in 49 A. L. R. beginning on page 1373, cites the United States Supreme Court, the courts of last resort of Colorado, Illinois, Indiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New York, North Carolina, Oklahoma, Pennsylvania, and West Virginia, and the cases cited fully support the doctrine laid down in the opinion. To the same effect is Italian American Bank of Denver v. Carosella, 81 Colo. 214, 254 P. 771, 58 A. L. R. 250, with a note beginning at page 259. | Bank acting as correspondent bank and receiving negotiable instruments from one apparently clothed with title thereto and crediting amount of proceeds and then honoring checks or drafts against such deposit, or applying same on overdraft on faith of the negotiable instruments is "holder for value." | When is loss occasioned by title to negotiable paper borne by the payee? | 010887.docx | LEGALEASE-00157436-LEGALEASE-00157437 | Condensed, SA, Sub | 0.81 | 0 | 1 | | 1 | 1 |
| 21138 | Swift & Co. v. Bankers Tr. Co., 280 N.Y. 135 | 8.30E+11 | In Union Nat. Bank v. Chapman, 169 N.Y. 538, 543, 62 N.E. 672, 673, 57 L.R.A. 513, 88 Am.St.Rep. 614, this court stated "some general principles which appear to be settled beyond controversy, (1) All matters bearing upon the execution, the interpretation and the validity of contracts, including the capacity of the parties to contract thereto, are determined by the law of the place where the contract is made; (2) all matters connected with its performance, including presentation, notice, demand, etc., are regulated by the law of the place where the contract, by its terms, is to be performed." More recently we have said that "as a general rule, the validity of a contract is determined by the law of the jurisdiction where made, and if legal there is generally enforcible anywhere." Straus & Co. v. Canadian Pacific R. Co., 254 N.Y. 407, 414, 173 N.E. 564, 567. That law governs, we have also said, "in matters bearing upon the capacity of the parties to contract and upon the execution, the interpretation and the validity thereof." United States Mortgage & Trust Co. v. Ruggles, 258 N.Y. 32, 38, 179 N.E. 250, 251, 79 A.L.R. 802. Cf. American Law Institute, Restatement of the Law of Conflict of Laws, "" 332 and 358. | The validity of checks made payable to a nonexisting person in belief that payee actually existed, induced by fraud of maker's employee, the scope of the order to pay and the person authorized to receive payment as affecting maker's right to recover from bank which paid the checks on forged indorsement, were fixed at the inception of the instrument and by the law of the place where the instruments had their inception. Negotiable Instruments Law § 28, subd. 3; SS 111, 210, 321; Smith-Hurd Stats.Ill. c. 98, § 29. | Is the validity of a contract governed by the place where the contract was made? | 010924.docx | LEGALEASE-00157934-LEGALEASE-00157935 | Condensed, SA, Sub | 0.58 | 0 | 1 | | 1 | 1 |
| 21139 | Hamilton v. Hamilton, 296 N.C. 574 | 156+52.15 | "The lapse of time, when properly pleaded, is a technical legal defense. Nevertheless, equity will deny the right to assert that defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith. "The doctrine of equitable estoppel is based on an application of the golden rule to the everyday affairs of men. It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed. . . . Its compulsion is one of fair play. " " Id. at 579, 108 S.E.2d at 891 (quoting McNeely v. Walters, 211 N.C. 112, 113, 189 S.E. 114, 115 (1937)). See also Watkins v. Central Motor Lines, Inc., supra. | Neither bad faith, fraud nor intent to deceive is necessary before the doctrine of equitable estoppel can be applied. | Is equitable estoppel based on an application of the golden rule to the everyday affairs of men? | 017827.docx | LEGALEASE-00156809-LEGALEASE-00156810 | Condensed, SA | 0.84 | 0 | 1 | | 1 | 1 |
| 21140 | Coursey v. Coursey, 141 Ga. 65 | 156+52(1) | But estoppel is not a conveyance of title. Its office is to prevent denial by one affected by it, not to affirmatively transfer title. In Thornton v. Ferguson, 133 Ga. 825, 67 S. E. 97, 134 Am. St. Rep. 226, it was held that an estoppel in pais on account of representations made by the owner of land, which induced another person to extend credit and to accept a mortgage on the land from a third person, is not operative against a subsequent grantee of the owner of the land, who is a bona fide purchaser for value and without notice. See, also, Brian v. Bonvillain, 52 La. Ann. 1794, 28 South. 261. | "Estoppel" is not a conveyance of title. Its office is to prevent denial by one affected by it, not to affirmatively transfer title. | Is estoppel a conveyance of title? | Estoppel - Memo #162 - C - CSS_62566.docx | ROSS-003279594-ROSS-003279595 | Condensed, SA | 0.77 | 0 | 1 | | 0 | 1 |
| 21141 | Como v. City of Beaumont, Texas, 345 S.W.3d 786 | 302+111.48 | The trial court dismissed Como's case with prejudice. "In general, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect." Sykes, 136 S.W.3d at 639. We must distinguish a case in which the plaintiff has failed to allege sufficient jurisdictional facts from a case where plaintiff's pleadings and the jurisdictional evidence affirmatively show that all of the plaintiff's factual complaints concern a matter in which the defendant retains immunity from suit. Tex. Dep't of Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex.2002). | Owner of commercial building that city condemned as public nuisance and later demolished had sufficient opportunity to amend her pleadings with respect to race-based equal protection claim, in response to city's plea to the jurisdiction on immunity grounds, such that dismissal with prejudice was appropriate, where owner amended her petition after city showed that owner had not been treated disparately from owners of other properties identified by owner, but owner neither changed the factual allegations of equal protection claim nor requested leave to further amend her pleadings. U.S.C.A. Const.Amend. 14. | Is a dismissal with prejudice improper when the plaintiff is capable of remedying a jurisdictional defect? | Pretrial Procedure - Memo # 10491 - C - TM_62759.docx | ROSS-003281837-ROSS-003281838 | Condensed, SA, Sub | 0.06 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 21142 | Drees Co. v. Hamilton Twp., 132 Ohio St. 3d 186 | 414+1382(4) | The fact that the township's resolution calls the assessments "fees" is certainly not sufficient to establish that the assessments are not taxes. In order to determine whether certain assessments are taxes, we must analyze "the substance of the assessments and not merely their form." State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow, 62 Ohio St.3d 111, 116, 579 N.E.2d 705 (1991), fn. 5. Although this court has stated that "[i]t is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations where the words "tax" and "fee" arise," id. at 117, 579 N.E.2d 705, we can look to our own case law and that of other jurisdictions for guidance in making our determination in this case. | "Impact fee," an assessment imposed by limited home rule township upon applicants for zoning certificates for new construction or redevelopment within township's unincorporated areas, was a tax, not a fee, and thus assessment violated limited home rule statute; although revenue generated by assessment was placed in segregated fund, stated purpose of assessment was to guarantee consistent level of services to all members of community, revenue generated by assessment was spent on typical township expenses inuring to the benefit of the entire community, such as roads, fire, police, and parks, revenue was not earmarked to ensure that it was spent to improve area around particular property upon which assessments had been imposed, assessed parties got no particular service above that provided to any other taxpayer for the fee that they paid, and any refund of assessment was dependent on whether township had spent revenue from assessment. R.C. S 504.04(A)(1). | "In order to determine whether certain assessments are taxes, must the court analyze the substance of the assessments and their form?" | Taxation - Memo # 1058 - C - JL_62707.docx | ROSS-003278846-ROSS-003278847 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 21143 | De La Paz v. Coy, 786 F.3d 367 | 393+1463 | Nor would a Bivens remedy provide meaningful compensation to the victims, especially in cases like those before us. When the victims of an illegal stop and arrest are removable aliens, the damages available in a Bivens action would be minimal. Not only do Frias and García not seek damages for detention in these cases, but such damages would not be available (absent unconstitutional physical abuse) precisely because they have no right not to be detained. See Lopez-Mendoza, 468 U.S. at 1048, 104 S.Ct. at 3488 ("The constable's blunder may allow the criminal to go free, but we have never suggested that it allows the criminal to continue in the commission of an ongoing crime."). They are no less removable just because the manner of their apprehensions violated the Fourth Amendment. See id. (noting that illegal aliens are "person[s] whose unregistered presence in this country, without more, constitutes a crime").In many removal cases, the government does not need any evidence collected at the time of arrest to prove that a person is removable. See id. at 1043, 104 S.Ct. at 3487 (explaining that in removal proceedings the government need only prove alienage "that will sometimes be possible using evidence gathered independently of, or sufficiently attenuated from, the original arrest"). Thus, it is hard to see what compensation"if any"Frias and García would be entitled to under the facts of this case. In any event, as has been noted above, the aliens' ultimate remedies lie in pursuing termination of removal proceedings through the INA's many available avenues. In certain cases, the exclusion of exculpatory evidence might be sought if there is an "egregious violation[ ] of [the] Fourth Amendment or other liberties that might ... undermine the probative value of the evidence obtained." Id. at 1050, 104 S.Ct. at 3489. | Undocumented aliens involved in immigration enforcement actions were barred from bringing Bivens actions against United States Customs and Border Patrol agents who arrested them following traffic stops, alleging that agents violated their Fourth Amendment rights in connection with the stops and arrests; even though Immigration and Nationality Act (INA) did not provide damages for unlawful arrests and stops of aliens, INA did provide alternative comprehensive remedial scheme to address such violations, and special factors counseled against extending Bivens liability for unlawful arrests and stops of aliens, since immigration enforcement proceedings already provided significant deterrence for such violations, successful Bivens action for removable aliens would not likely result in meaningful compensation, and constitution granted Congress power to regulate immigration. U.S. Const., art. I, S 8, cl. 4; U.S.C.A. Const.Amend. 4; 8 U.S.C.A. SS 1229(a)(1), 1357(a)(2),(5), (c); 8 C.F.R. 287.8(c)(2)(i). | Can deportation or removal proceedings be conducted without evidence derived directly from the arrest? | 006995.docx | LEGALEASE-00159188-LEGALEASE-00159189 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 21144 | Federal Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504 | 172H+1482 | Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages.See 15 U.S.C. " 1692k(a); see also Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir.2003) ("[C]ourts have held that actual damages are not required for standing under the FDCPA"). As a district court in the Second Circuit recently noted "[t]he interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation." Jacobson, 434 F.Supp.2d at 138. The court in Jacobson continued: | Collection notice is deceptive, in violation of Fair Debt Collection Practices Act (FDCPA), when it can be reasonably read to have two or more different meanings, one of which is inaccurate. Fair Debt Collection Practices Act, S 807, 15 U.S.C.A. S 1692e. | What damages can a consumer recover if a debt collector violates the FDPA? | 013809.docx | LEGALEASE-00158620-LEGALEASE-00158622 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 21145 | Monroe v. Hamilton, 60 Ala. 226 | 289+928 | An assignment by a partner, of all his interest in the partnership property, to a stranger, operates a dissolution of the partnership, of necessity: "it gives rise to a state of things altogether incompatible with the prosecution of a partnership concern." The other partners may not have confidence in the assignee, and they may well say that they have not with him entered into a common adventure, nor consented that he should exercise the authority of a partner; nor may the assignee choose to risk his credit and property in an adventure with them.--Marquand v. N. Y. Man. Co. 17 Johns. 525; Parsons on Part. 400. | H., who was an equal partner of M. in cultivating a crop, executed to M. a mortgage on his entire interest as security for an individual debt which M. had become liable to pay, and stipulating that, since the crop would be gathered before the maturity of the debt, M. should take possession and dispose of the crop for their mutual benefit; M. to hold H.'s half of the net profits in trust for H., to be applied to the payment of the secured debt, and the balance of H.'s moiety to be paid over to H. Held, that the mortgage did not operate a dissolution, nor affect the duties and liabilities of H. as a partner. | Does an assignment by one partner of all his interest in the partnership to a stranger dissolve the partnership? | 021806.docx | LEGALEASE-00158564-LEGALEASE-00158565 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 21146 | Williams v. S. Union Co., 364 S.W.3d 228 | 307A+693.1 | "Generally, a nonsuit occurs when a court order terminates a cause of action without prejudice." Rickner v. Golfinopoulos, 271 S.W.3d 32, 34 (Mo.App.2008). " "The taking of a nonsuit amounts to, and has the effect of, a dismissal of the case as to one or all the defendants. It is not a final disposition of the cause of action on the merits, but is a final termination of the particular suit." " Rainwater v. Wallace, 351 Mo. 1044, 174 S.W.2d 835, 838 (1943) (citations omitted). " "[I]t has practically been held that the word "nonsuit" ... means any judgment or discontinuance or dismissal whereby the merits are left untouched[.]" " Turner v. Mo."Ks."Tx. R. Co., 346 Mo. 28, 142 S.W.2d 455, 459 (1940) (quoting Wetmore v. Crouch, 188 Mo. 647, 87 S.W. 954, 955 (1905)). Thus, "a judgment of nonsuit and a judgment of dismissal serve the same purpose, have the same legal effect, and arrive at the same end, and hence should be treated alike and allowed the same office in the everyday administration of the law." Wetmore, 87 S.W. at 956. | A judgment of nonsuit and a judgment of dismissal serve the same purpose, have the same legal effect, and arrive at the same end, and hence should be treated alike and allowed the same office in the everyday administration of the law. | "Does the taking of a nonsuit amounts to, and has the effect of, a dismissal of the case as to one or all the defendants?" | Pretrial Procedure - Memo # 10955 - C - PC_63719.docx | ROSS-003285039-ROSS-003285040 | Condensed, SA | 0.77 | 0 | 1 | 1 | 0 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21147 | Guardianship of Lyle, 77 Cal. App. 2d 153 | 307A+514 | Some suggestion has been made that the order "Off Calendar" is equivalent to a dismissal. That suggestion should be disposed of at this point. A court calendar is a list of causes awaiting hearing on motion or trial. 6 Words and Phrases, Perm. Ed., p. 9. The words "Court Calendar" are sometimes used in the sense of a court docket. There are well recognized classes of calendars, such as civil, criminal, probate, ordinary, summary, short cause, small claims, default, jury, trial by court, motion, law, equity, etc. The court for good cause has discretion in the control and regulation of its calendar or docket. (64 Corpus Juris, p. 46, '" 26 et seq.) It is permissible for good cause to delay a trial or hearing to a later date or to drop or strike a case from the calendar, to be restored on motion of one or more of the litigants or on the court's own motion. "Off Calendar" is not synonymous with "dismissal." "Off" merely means a postponement whereas a "dismissal" in a judicial proceeding has reference to a cessation of consideration. Courts have control of pleadings in a case until a valid final judgment is rendered. (64 Corpus Juris, p. 48, sec. 30.) | Where a petition was filed seeking appointment of a guardian over incompetent, and thereafter another filed a petition praying for appointment of guardian for the incompetent, and the second petition was filed with the first petition and given the same court number, and thereafter attorney for one who filed first petition sought dismissal of that petition and court ordered the petition "Off Calendar", the order was not equivalent to a dismissal, since "Off Calendar" is not synonymous with "dismissal" but merely means a postponement. | "Is ""off calendar"" not synonymous with ""dismissal""?" | 025727.docx | LEGALEASE-00158426-LEGALEASE-00158427 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21148 | Segretario v. Stewart-Warner Corp., 9 Conn. App. 355 | 307A+699 | "Generally speaking, a nonsuit is the name of a judgment rendered against a party in a legal proceeding upon his inability to maintain his cause in court, or when he is in default in prosecuting his suit or in complying with orders of the court. Galvin v. Birch, 98 Conn. 228, 232, 118 A. 826 [1922]." Jaquith v. Revson, 159 Conn. 427, 430, 270 A.2d 559 (1970). When the plaintiff is nonsuited, "[t]he judgment entered [is] one entitled as of nonsuit...." (Emphasis added.) Galvin v. Birch, supra, 98 Conn. at 230, 118 A. 826; Galvin v. Birch, 97 Conn. 399, 400, 116 A. 908 (1922). | Denial of motion to set aside nonsuit entered against intervening plaintiff in products liability action was erroneous where based on timeliness of motion rather than ruling on specific ground alleged in motion that failure of intervening plaintiff's counsel to appear at pretrial conference was due to counsel's secretary's failure to record date of conference on calendar. Practice Book 1978, §§ 265, 337, 338, 377; C.G.S.A. § 52-212. | "When the plaintiff is nonsuited, is the judgment entered one entitled as of nonsuit?" | 025746.docx | LEGALEASE-00158651-LEGALEASE-00158652 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 21149 | Amesquita v. Gilster-Mary Lee Corp., 408 S.W.3d 293 | 30+3284 | In reviewing the trial court's dismissal for failure to state a claim, we give the petition its broadest intendment and construe the allegations favorably to the plaintiff. Cornelius v. CJ, 302 S.W.3d 176, 178 (Mo.App.E.D.2009). Our review is confined to the facts alleged in the petition and the exhibits incorporated therein by reference. Id. A petition may not be dismissed based on an affirmative defense unless the petition establishes "on its face and without exception" that the defense applies. Id. (quoting K.G. v. R.T.R., 918 S.W.2d 795, 797 (Mo. banc 1996)). | The Court of Appeals reviews de novo whether a petition states a claim. | Can the petition be dismissed unless it establishes on its face without exception that the defense applies? | Pretrial Procedure - Memo # 11089 - C - KS.docx | LEGALEASE-00048587-LEGALEASE-00048588 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 21150 | Markland v. Travel Travel Southfield, 810 S.W.2d 81 | 308+1 | In argument to the trial court, the Marklands maintained that a travel agent is an agent of the customer and if something goes awry, the agent is liable under a breach of contract. Where a travel agent is an agent of the customer. As the court said in George v. Lemay Bank & Trust Co., 618 S.W.2d 671, 674 (Mo.App.1980), the relationship of principal and agent arises out of contract, express or implied. It is an agreement whereby one person, the agent, consents with another, the principal, to act on behalf of the principal subject to the control of the principal. | Travel agent is agent of customer. | "Is travel agent, an agent of the customer or traveler?" | Principal and Agent - Memo 468-PR_63791.docx | ROSS-003295087-ROSS-003295088 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 21151 | Armstrong Const. Co. v. Thomson, 64 Wash. 2d 191 | 308+1 | We agree that the architect should be deemed the agent of the owner (Clark v. Fowler, 58 Wash.2d 435, 363 P.2d 812), and that the plans and specifications were a part of the contract between owner and builder even though so construing them creates an ambiguity requiring oral testimony to resolve. Brown v. Poston, 44 Wash.2d 717, 269 P.2d 967. And we affirm the holding in Ericksen v. Edmonds School District No. 15, 13 Wash.2d 398, 125 P.2d 275, that the owner impliedly warrants to the builder that the plans and specifications furnished to the builder are workable and sufficient. | An architect is agent of owner. | Can an architect be deemed as the agent of the owner? | Principal and Agent - Memo 525 - RK_63983.docx | ROSS-003306897-ROSS-003306898 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 21152 | United States v. Szabo, 760 F.3d 997 | 15A+1302 | Where protected speech is at issue, the degree to which the government may regulate such speech depends on the nature of the forum. Preminger v. Principi, 422 F.3d 815, 823 (9th Cir.2005) (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). VA medical facilities are "non-public" fora, Preminger v. Peake, 552 F.3d 757, 765 (9th Cir.2008), and the government's power to regulate speech "is at its greatest when regulating speech in a non-public forum." Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 961 (9th Cir.2011) (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44*46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). For this reason, restrictions on speech in VA medical facilities do not violate the First Amendment so long as they are (1) reasonable in light of the purpose served by the forum and (2) viewpoint neutral. United States v. Kokinda, 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); Peake, 552 F.3d at 765. | Regulation's facial validity may only be raised outside of designated forum when that forum is somehow inadequate. 5 U.S.C.A. § 703. | Does the degree to which the government may regulate protected speech depend upon the nature of the forum? | 014293.docx | LEGALEASE-00160018-LEGALEASE-00160019 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21153 | May v. Harris Mgmt. Corp., 2004-2657 (La. App. 1 Cir. 12/22/05), 928 So. 2d 140 | 156+52(6) | It is difficult to recover under the theory of detrimental reliance, because estoppel is not favored in our law. Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975); Barnett v. Bd. of Trustees for State Colleges & Universities, 00-1041 (La.App. 1 Cir 6/22/01), 809 So.2d 184, 189. All estoppel claims must be examined carefully and strictly. Kibbe v. Lege, 604 So.2d 1366, 1370 (La.App. 3 Cir.), writ denied, 606 So.2d 540, 541 (La.1992). In this case, the questions to be answered are: (1) Did HMC make a representation or promise to May on which she relied? (2) Was May's reliance justifiable or reasonable? (3) Did this reliance work to May's detriment? We must separately analyze each element of May's claim. | Estoppel is not favored in the law. (Per Carter, C.J., with one judge concurring.) | Is estoppel not favored in law? | 017918.docx | LEGALEASE-00159988-LEGALEASE-00159989 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21154 | First Union Tr. & Sav. Bank v. Mississippi Power Co., 167 Miss. 876 | 101+2476 | We will consider first whether the franchise of the hotel company was conveyed by the mortgage. The term "corporate franchise" ordinarily refers to the primary franchise of a corporation; that is, the right and privilege granted by the state of being a corporation and doing such things as are authorized by the charter. Franchises of a corporation are divisible into, first, the corporation or general franchises; second, special or secondary franchises. The former is the right to exist as a corporation, while the latter are certain rights and privileges conferred upon existing corporations. The primary franchise is vested in the individuals who compose the corporation, while the special or secondary franchises of a corporation are vested in the corporation itself. The primary franchise of a corporation cannot be conveyed or mortgaged in the absence of legislative authority so to do, but special or secondary franchises, other than such as are charged with a public use, may ordinarily be conveyed or mortgaged under a general power granted to a corporation to dispose of its property. The primary franchise of a corporation cannot be sold under execution issued on a judgment against it, but its special or secondary franchises may be. Section 904, Code 1906, of which section 4155, Code 1930, is a rescript, has no reference to the primary franchise of a corporation, but to special or secondary franchises. Gulf Refining Co. v. Cleveland Trust Co., 108 So. 158 (not reported [in State report] but to be reported in either 166 or 167 Miss.). | Trust deed attempting to convey "franchises" of corporation was ineffectual as regards corporation's special or secondary franchises, because "franchises" was not sufficiently specific (Code 1930, § 4155). | What are general and secondary franchises? | Franchise - Memo 40 - KNR_64636.docx | ROSS-00329418S-ROSS-003294186 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21155 | New Orleans Pub. Serv. Inc. v. Citizens Utilities Co., 726 So. 2d 1012 | 212+1383 | Appellee has correctly argued that per se irreparable harm has occurred once the franchise was invaded by LSGI. See Frost v. Corporation Commission, 278 U.S. 515, 521, 49 S.Ct. 235, 73 L.Ed. 483 (1929). In other words, within the four corners of the franchise agreement is the franchisee's right to provide service without fear of competition from other entities. Thus, the franchise is exclusive vis-"-vis franchise competitors. Therefore, the mere act of contracting by a third party to provide services already being provided by the franchisee is the harm, which the appellee seeks to remedy by seeking the permanent injunction. An injunction is a proper remedy where the franchises of a corporation or its rights thereunder are being invaded. Town of Coushatta, supra at 827. Though the franchise itself is non-exclusive, it is, nevertheless, a valuable property right. Id; cf. U.S. v. Slay, 717 F.Supp. 689 (E.D.Mo.1989). | Owner of a franchise, although not exclusive, is entitled to relief by way of an injunction against a threatened or actual injury to his property rights through illegal non-franchise competition. | Do non-exclusive franchise create a property right? | Franchises - Memo 23 - KNR_65697.docx | ROSS-003308477-ROSS-003308478 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | 1 |
| 21156 | In re Sturman, 222 B.R. 694 | 51+3068 | The central question that needs to be decided is whether the Partners hold their interests in the Assemblage as tenants in common or as tenants in partnership. The difference between the two tenancies is significant because Code " 363(h) only authorizes the sale of interests in property held by tenants in common, joint tenants and tenants by the entirety. While the statute is silent as to tenants in partnership, it has generally been held that since a tenancy in partnership is a well recognized form of tenancy, Congress would have included it among the tenancies expressly covered by the statute if that had been its intention. | Balance of equities favored sale of real estate assemblage which involuntary Chapter 7 debtors owned, as tenants in common, with their mother's probate estate and sister who did not consent to sale, even assuming that debtors held only legal title and that beneficial interest was in family partnership, where debtors held majority legal title to assemblage as well as 60% interest in subject partnership, where sister, during nine year course of case, had never moved to lift stay to proceed with state court partnership liquidation, and where sale of assemblage in state court liquidation would double expenses that trustee would incur without providing any additional protection for sister's interest, would require state court judge to learn complex nine-year history of matter, and would result in expiration of existing purchase bid while multi-million dollar asset of estates sat untouched for another six months until partnership agreement expired by its terms. Bankr.Code, 11 U.S.C.A. § 363(h). | Is tenancies in partnership a recognized form of partnership? | 022650.docx | LEGALEASE-00159956-LEGALEASE-00159957 | Condensed, SA, Sub | 0.37 | 1 | 1 | 1 | 1 | 1 |
| 21157 | Galli v. Kirkeby, 398 Mich. 141E+374 527 | 141E+374 | Both parties have referred to Lovitt v. Concord School District, 58 Mich.App. 593, 228 N.W.2d 479 (1975). The operative facts in Lovitt were that teacher-coaches had run a particularly severe football practice session in August heat and a student died of heat prostration. That Court held the school district superintendent and principal clothed in governmental immunity. However, that Court held that the negligence of teacher-coaches was personal and as a consequence they did not enjoy governmental immunity. | Hiring and/or supervising of public school personnel and making of relevant policy are "governmental functions" within the meaning of Tort Immunity Act and, hence, board of education was immune from suit for its own negligence in allegedly failing to exercise due care in hiring and supervising elementary school superintendent, who during school hours allegedly committed repeated homosexual attacks on minor student. M.C.L.A. SS 691.1401, 691.1407. | Are principals protected by governmental immunity? | 017223.docx | LEGALEASE-00160992-LEGALEASE-00160993 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 21158 | Lewin v. Telluride Iron Works Co., 272 F. 590 | 233+1643 | But an estoppel is an indispensable element of a waiver. Where there is no estoppel, there is no waiver. Hampton Stave Co. v. Gardner, 154 Fed. (8 th C.C.A.) 805, 808, 83 C.C.A. 521; Ins. Co. v. Wolff, 95 U.S. 326, 332, 24 L.Ed. 387; Assurance Co. v. Building Ass'n, 183 U.S. 308, 357, 22 Sup.Ct. 133, 46 L.Ed. 213; Society v. McElroy, 28 C.C.A. 365, 372, 83 Fed. 631, 640; Rice v. Fidelity & Deposit Co., 103 Fed. 427, 435, 43 C.C.A. 42, 45; United Firemen's Ins. Co. v. Thomas, 82 Fed. 406, 27 C.C.A. 42, 92 Fed. 127, 34 C.C.A. 240, 47 L.R.A. 450; Williams v. Neely, 67 C.C.A. 171, 180, 134 Fed. 1, 11, 69 L.R.A. 232. And the indispensable elements of an estoppel are: (1) Ignorance of the party who invokes the estoppel, or of him from whom such party derives his claim, in this case the trustee or the bankrupt; (2) a representation by the party estopped which misleads; (3) and an innocent and detrimental change of the party asserting the estoppel in reliance upon the representation. Northern Assur. Co. v. Grand View Bldg. Co., 101 Fed. (8th C.C.A.) 77, 85, 41 C.C.A. 207. The record in this case fails to establish that either the bankrupt who must have known the terms of his contract and his failure to pay his rent and taxes when this sheriff's sale was made, or the trustee whose duty it was to learn the facts regarding this matter and to elect whether he would take the leasehold estate or abandon it, were ignorant of the situation in which all parties stood, or that they were led to believe by the mere silence and inaction of the lessor that it neither claimed nor had any lien, or that either of them was induced to change his situation or action to his detriment by such silence or inaction of the lessor. There was, therefore, no waiver of its lien by the San Miguel Company as against the bankrupt or his trustee. | "Estoppel" is an indispensable element of a waiver, and estoppel does not exist unless there is ignorance by the party who invokes the estoppel, a misrepresentation by the other party and a detrimental change by the party asserting estoppel in reliance upon misrepresentation, so that a landlord does not waive his lien by mere inaction which did not mislead the lessee or his trustee in bankruptcy as to the true situation. | Is there no waiver where there is no estoppel? | 018108.docx | LEGALEASE-00161235-LEGALEASE-00161236 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21159 | Parsons v. Halliburton Energy Servs., 237 W. Va. 138, 785 S.E.2d 844 | 95+227 | To rely upon the doctrine of waiver under the common law, a party is not required to show prejudice or detrimental reliance caused by the opposing party's waiver of a contract right. As Chief Justice Davis stated, "The doctrine of waiver focuses on the conduct of the party against whom waiver is sought, and requires that party to have intentionally relinquished a known right. There is no requirement of prejudice or detrimental reliance by the party asserting waiver." Potesta v. U.S. Fid. & Guar. Co., 202 W. Va. 308, 315°16, 504 S.E.2d 135, 142°43 (1998). | Under general principles of state contract law, waiver requires proof of a voluntary act which implies a choice by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on. | Does the doctrine of waiver focus on the conduct of the party against whom waiver is sought? | Estoppel - Memo 248 - CSS_65224.docx | ROSS-003279526-ROSS-003279527 | Condensed, SA | 0.55 | 0 | 1 | | | 1 |
| 21160 | Den Hartog v. City of Waterloo, 847 N.W.2d 459 | 268+225(3) | Section 306.10 grants an agency the "power, on its own motion, to alter or vacate and close any" road system, and similarly, "to establish new" roads as part of the road system it currently controls. Iowa Code " 306.10. In establishing a road, the agency "need not cause a hearing to be held but may do so." " 306.18. When vacating or closing any road or part thereof, by contrast, the agency must generally hold a hearing regarding the closing, and provide the requisite notice to all "adjoining property owners," among other enumerated parties. 3 " 306.11 ("Hearing"place"date."); " 306.12 ("Notice"service."); " 306.13 ("Notice"requirements."). | Land in question constituted unused right-of-way, and therefore municipality was not permitted to sell or transfer it to a developer without first following the statutory procedure mandating notice to the present owners of adjacent property and to the persons who owned the land at the time it was acquired for road purposes; statutory requirements were applicable to both land acquired for highway purposes but never used, and land acquired for highway purposes and previously or currently in use, rather than only to property acquired, but never used for, highway purposes. I.C.A. S 306.23(1). | Does a county have to provide notice in order to lawfully discontinue a road? | 018856.docx | LEGALEASE-00161751-LEGALEASE-00161752 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 21161 | Fitzgerald v. State, 26 N.E.3d 105 | 377E+48(1) | Once the defendant asserts a claim of self-defense, the State bears the burden of disproving the existence of one of the elements of the claim. Mariscal v. State, 687 N.E.2d 378, 381 (Ind.Ct.App.1997), trans. denied. The State may rebut a claim of self-defense by affirmatively showing that the defendant did not act to defend himself or another by relying on the evidence elicited in the case-in-chief. Id. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence challenge. [Rodriguez v. State, 714 N.E.2d 667, 670 (Ind.Ct.App.1999), trans. denied | Evidence was insufficient to establish defendant acted without fault, an element necessary to support defendant's claim of self defense, during prosecution for Class C felony intimidation; defendant was attempting to flee from a staged robbery that the victim had planned to cover up a theft from the victim's employer, and from a witness's perspective defendant had sprayed the victim in the face with pepper spray and forcibly took the victim's bag. West's A.I.C. 35-41-3-2, 35-45-2-1(b)(2)(A). | Who bears the burden of disproving the elements of a defendant's claim of self-defense? | 046894.docx | LEGALEASE-00160801-LEGALEASE-00160802 | Condensed, SA | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 21162 | Bank of Orange Cty. v. Colby, 12 N.H. 520 | 8.30E+10 | The residence of the parties to this note, at the time it was executed, does not appear from the case, nor does it seem to be material. Story's Confl. of Laws 265. The note was executed within the state of Massachusetts. No place is designated where it is to be paid, and it is therefore payable generally. There is nothing in the case, then, to take it out of the general rule, that the lexlocicontractus must determine the construction to be given to it, and the obligation and duty it imposes. 6 N. H. Rep. 150, Douglass vs. Oldham, and cases cited; Dow vs. Rowell, 12 N.H. 49. "To bring a contract within the general rule of the lexloci, it is not necessary that it should be payable exclusively in the place of its origin. If payable every where, then it is governed by the law of the place where it is made, for the plain reason that it cannot be said to have the law of any other place in contemplation to govern its validity, its obligation, or its interpretation." Story's Confl. of Laws 264, " 317. And the holder takes it as it was originally made, and as it was in the place where it was made. Ditto 264, 284, 286. | A note naming no place of payment must be construed according to the lex loci contractus. | Should lex loci contractus determine the obligation and duty a note imposes? | 009190.docx | LEGALEASE-00162644-LEGALEASE-00162645 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 21163 | Barefield v. State, 14 Ala. 603 | 63+16 | We think that in order to consummate the crime under this act, it must be shown, that the cause or proceeding was pending before the officer, at the time the gift, or promise was made; or that the cause, or proceeding, was afterwards instituted before the officer, or so instituted, that in the ordinary mode of proceeding, the same would come before him. | An offer to bribe a justice of the peace corruptly to decide a cause not then pending, but afterwards to be instituted before him, the bribe not being accepted or the suit instituted, though indictable at common law, is not punishable by confinement in the penitentiary, under the statute of Alabama. | Does an act of bribery require that the cause or proceeding be pending before the officer at the time the gift or promise was made? | 012576.docx | LEGALEASE-00162550-LEGALEASE-00162551 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 21164 | Andrews v. Chevy Chase Bank, FSB, 240 F.R.D. 612 | 118A+305 | The "sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." Smith v. Cash Store Mgmt., 195 F.3d 325, 328 (7th Cir.1999). The standard for determining whether a disclosure is sufficient is an objective one. Smith v. Check"N"Go of Ill., Inc., 200 F.3d 511 (7th Cir.1999). Further, "whether a particular disclosure is clear for purposes of TILA is a question of law that depends on the "contents of the form, not on how it affects any particular reader." " Handy, 464 F.3d at 764 (quoting Check"N"Go of Ill., Inc., 200 F.3d at 515). Similarly, whether a disclosure is conspicuous is a question of law. Check"N"Go of Ill., Inc., 200 F.3d at 515. | Commonality requirement for class certification was satisfied in suit seeking declaratory judgment that mortgagors could rescind adjustable rate mortgage loan for bank's violation of Truth in Lending Act (TILA) disclosure requirements; whether defendant's disclosures of payment schedule, cost of the loan as an annual percentage rate (APR), and variable interest rate feature of the loan violated TILA was question common to class. Truth in Lending Act, S 125, 15 U.S.C.A. S 1635; Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A. | Is whether a disclosure is conspicuous a question of law? | Consumer Credit - Memo 227 - RK_66296.docx | ROSS-003295110-ROSS-003295111 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 21165 | Paladino v. Adelphi Univ., 89 A.D.2d 85 | 141E+954 | The courts should not become engaged in determining the propriety of the course of instruction adopted by a private school. Despite the absence of a constitutional or statutory predicate, the reluctance on the part of the judicial branch to interfere with the educational policies adopted for public schools should be equally applicable to private institutions. The educational malpractice cases serve to define the function and role of the judiciary in relation to educational institutions generally. Simply put, the courts should refrain from becoming overseers of the learning process. As was stated in Hunter v. Board of Educ. of Montgomery County, 47 Md.App. 709, 425 A.2d 681, 684°685, mod. 292 Md. 481, 439 A.2d 582, supra. | If a private school were to accept a student's tuition and thereafter provide no educational services, an action for breach of contract might lie and, similarly, if the contract were to provide for certain specified services such as for example, a designated number of hours of instruction and the school failed to meet its obligation, a contract action with appropriate consequential damages might be viable. | Should courts become engaged in determining the propriety of courses of instruction adopted by a private school? | 017266.docx | LEGALEASE-00162126-LEGALEASE-00162127 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 21166 | Frey v. Hauke, 171 Neb. 852 | 289+989 | As stated in 40 Am.Jur., Partnership, s 323, p. 356: "One of the ordinary duties of partners is to keep true and correct books showing the firm accounts, such books being at all times open to the inspection of all the members of the firm. This duty primarily rests on the managing or active partner, and he cannot defeat the rights of his copartner to a settlement and a proper distribution of the assets by failing to keep his accounts." | Managing partner of bowling alley who acquiesced in rate of depreciation of partnership business set up by accountant was not entitled to market value of business rather than book-rate depreciation in determining his interest in partnership. | Can a managing partner defeat the rights of his co-partner to a settlement and a proper distribution of the assets by failing to keep his accounts? | Partnership - Memo 595 - SNP_66404.docx | ROSS-003284368-ROSS-003284369 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21167 | Campus Commc'ns v. Dep't of Revenue, State of Fla., 473 So. 2d 1290 | 371+3602 | A sales tax is an excise tax. An excise tax is "an indirect tax levied somewhere in the chain of manufacture and distribution." Rutledge v. Chandler, 445 So.2d 1007, 1009 (Fla 1984). An excise tax is a tax on the exercise of a privilege. City of DeLand v. Florida Public Service Commission, 119 Fla. 804, 161 So. 735 (1935). The sales tax is a tax upon the exercise of the privilege of engaging "in the business of selling tangible personal property at retail in this state." " 212.05, Fla Stat. The sales tax is levied at the point when "a sale [is made] to a consumer or any person for any purpose other than for resale." " 212.02(3)(a). | A sales tax is a "excise tax," which is a tax on exercise of a privilege. | "Is a sales tax an ""excise tax""?" | 046400.docx | LEGALEASE-00162494-LEGALEASE-00162495 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 21168 | Clarey v. Union Cent. Life Ins. Co., 143 Ky. 540 | 217+1091(7) | The decisions of this court are in harmony and accord with the principle thus announced, and in Ford v. Buckeye State Ins. Co., 6 Bush, 133, 99 Am. Dec. 663, this court held that where a contract, made in Indiana, was not enforceable under the laws of that state it would not be enforced in this state. And in Jameson v. Gregory's Ex'r, 4 Metc. 363, it was held that the legality of a contract must be decided by the laws of the state in which it was made. In Archer v. National Ins. Co., 2 Bush, 226, it was held that the validity and legality of a contract executed in Indiana must be determined by the laws of that state. In Young v. Harris, 14 B. Mon. 556. 61 Am. Dec. 170, this court, through Chief Justice Marshall. said: "The general principle determining the law by which a contract is to be construed is that, unless the place appointed for its payment be different from that in which it is made, it is to be governed by the law of the place where it is made, which is the lex loci contractus." In Western Union Telegraph Co. v. Eubanks & Russell, 100 Ky. 591, 38 S. W. 1068, 36 L. R. A. 711, 66 Am. St. Rep. 361, 18 Ky. Law Rep. 995, it is said that "the general rule is that the law of the place where the contract is to be performed governs, subject, of course, to the rule that a contract which is void by the law of the place where made is void everywhere." And in Hyatt v. Bank of Kentucky, 8 Bush, 193, it was held, where a note was executed in Louisiana, that as between the maker of the note and the payee its legal effect must be determined by the law of that state. | An insurance policy which provided that no action might be brought upon the maker and payee? it more than one year after the death of the insured was issued by an Ohio corporation to a resident of Wisconsin. After the contract was made, the insured removed to Kentucky, where he lived for some years before his death. In a suit on the policy, brought more than a year after the death of insured, the plaintiff in her pleadings admitted that the condition, as to the bringing of the suit, was valid both in Ohio and Wisconsin. Held, that the law of one of those two states governed the construction of the contract, and the condition as to the time of suit being valid in those states it will be recognized as valid in Kentucky, though such condition is regarded as contrary to the public policy of Kentucky. | Which law determines the legal effect of a note made between the maker and payee? | Bills and Notes - Memo 1304 - RK_66209.docx | ROSS-003281523-ROSS-003281524 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 21169 | Ingersoll-Rand Fin. Corp. v. Atl. Mgmt. & Consulting Corp., 717 F. Supp. 1067 | 349A+226 | Federal Courts sitting in diversity actions must look to the forum state's choice of law to determine which state's law applies. Klaxton Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021"22, 85 L.Ed. 1477 (1941); Blakesley v. Wolford, 789 F.2d 236, 238 (3d Cir.1986). Under New Jersey law, the validity of a contract is governed by the law of the place of contracting. See Ingersoll"Rand Financial Corp. v. Anderson, No. 86"4036, Slip Op. at 6 (D.N.J. April 13, 1987); Jaclyn, Inc. v. Edison Brothers Stores, Inc., 170 N.J.Super. 334, 348, 406 A.2d 474 (Law Div.1979).  In New Jersey, if a note is made payable in a certain place, "it is to be treated in all respects as if made there without regard to the place where it is dated or delivered." Commercial Credit Corp. v. Boyko, 103N.J.L. 620, 626, 137 A. 534 (E. & A.1927); See also Anderson, Slip Op. at 7 (analyzing which law to apply to interpret an Acknowledgment and Agreement entered into between IRFC and certain individual investors of another limited partnership and concluding that because payment was to be made in New Jersey, New Jersey law applied). | New Jersey law governed action by New Jersey secured payee on notes being held as security, even though all other principals in transaction were based in Florida; payments on notes were to be made in New Jersey. | How will a note be treated if it is made payable at a particular place? | Bills and Notes - Memo 1363 - RK_66264.docx | ROSS-003279571-ROSS-003279572 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21170 | Ingersoll-Rand Fin. Corp. v. Atl. Mgmt. & Consulting Corp., 717 F. Supp. 1067 | 349A+226 | Federal Courts sitting in diversity actions must look to the forum state's choice of law to determine which state's law applies. Klaxton Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021"22, 85 L.Ed. 1477 (1941); Blakesley v. Wolford, 789 F.2d 236, 238 (3d Cir.1986). Under New Jersey law, the validity of a contract is governed by the law of the place of contracting. See Ingersoll"Rand Financial Corp. v. Anderson, No. 86"4036, Slip Op. at 6 (D.N.J. April 13, 1987); Jaclyn, Inc. v. Edison Brothers Stores, Inc., 170 N.J.Super. 334, 348, 406 A.2d 474 (Law Div.1979).  In New Jersey, if a note is made payable in a certain place, "it is to be treated in all respects as if made there without regard to the place where it is dated or delivered." Commercial Credit Corp. v. Boyko, 103N.J.L. 620, 626, 137 A. 534 (E. & A.1927); See also Anderson, Slip Op. at 7 (analyzing which law to apply to interpret an Acknowledgment and Agreement entered into between IRFC and certain individual investors of another limited partnership and concluding that because payment was to be made in New Jersey, New Jersey law applied). | New Jersey law governed action by New Jersey secured payee on notes being held as security, even though all other principals in transaction were based in Florida; payments on notes were to be made in New Jersey. | Is a note made payable at a particular place treated with all respect as if it were made there regardless of the place where it is dated or delivered? | 009252.docx | LEGALEASE-00162757-LEGALEASE-00162758 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21171 | Precious Metals Assocs. v. Commodity Futures Trading Comm'n, 620 F.2d 900 | 83H+54 | The business of trading contracts for specified amounts of commodities to be sold or bought in the future is an integral component of the American investment scheme. Essentially, two distinct contract forms are involved. A commodity futures contract is an agreement to buy or sell a specified quantum of a specified commodity for a pre-determined price at a specified future date. A commodity option contract, on the other hand, gives a right to buy or sell a specified quantum of a specified commodity for a predetermined price (strike price) at a specified future date. A contract entitling its owner to purchase a commodity is referred to within the industry as a "put"; one authorizing a sale is a "call." | Commodity Futures Trading Commission was justified in ordering futures commission merchant and associated person to cease and desist from solicitation and sale of commodity options, despite fact that they had voluntarily discontinued their limited risk forward contract program which was found to be in violation of statute prohibiting commodity options trading, where there was no assurance that, without imposition of such an order with its attendant penalties for violation, they would not adopt the same game plan for an option under yet another name. | What is a commodity futures contract? | 013656.docx | LEGALEASE-00164166-LEGALEASE-00164167 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 21172 | Mayor & Council of Crisfield v. Pub. Serv. Comm'n, 183 Md. 179 | 183+11 | The abandonment of a franchise is a question of intention or, as some times stated, an intention to abandon is an essential element of abandonment. 37 C.J.S., Franchises, " 26, p. 184; Tehama County v. Pacific Gas & Electric Co., 33 Cal.App.2d 465, 91 P.2d 936; City of Osceola v. Middle States Utilities Co., supra. There is a complete absence of facts to show any such intention in the case at bar. | Abandonment of franchise requires intention to abandon. | Is abandonment of franchise a question of intention? | Franchise - Memo 65 - KNR_67268.docx | ROSS-003280037-ROSS-003280038 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21173 | Bordentown & S.A. Tpk. Rd. v. Camden & A.R. & Transp. Co., 17 N.J.L. 314 | 183+5 | Before proceeding to examine the validity of those several pleas, it becomes necessary to decide the question raised by the defendants' counsel, as to the substance of the declaration; for it is an established rule, that on a demurrer to a plea, if the prior pleading be defective in substance, judgment must be given against the party pleading it. It is insisted that this declaration, though in form is in case, is in substance a declaration in trespass, or that the injury charged to be done, is a trespass vi et armis, or that it contains a complaint both in case and trespass, being an illegal joinder of actions; and therefore that judgment should be rendered against the plaintiffs, on this demurrer. The injury complained of, is that the defendants constructed a rail road parallel and near to the plaintiffs' road, and crossing it in six different places, and used it with engines, so that it became dangerous for travellers to pass and repass on the plaintiffs' road, whereby the plaintiffs have been disturbed in their franchise. The complaint sets forth, is that the defendants, by the use of engines along and over the turnpike road, hindered and disturbed the plaintiffs in their franchise, and in the receipt of their accustomed tolls. For a disturbance of a franchise, case is clearly the proper form of remedy. Here the injury is consequential and not direct, it is hindering travellers from passing on the road; by means of the fire and smoke, noise and unusual appearances of the defendants' machines, used adjacent to, as well as upon the road; whereby the plaintiffs have lost their accustomed tolls; and although in describing the mode in which this injury has been effected, the plaintiffs have charged among other things, an entry on their lands, yet such entry is not distinctly alleged as the ground of complaint. | Case will lie for the disturbance of a franchise. | Can a legal action lie for the disturbance of franchise? | 018597.docx | LEGALEASE-00163135-LEGALEASE-00163136 | Condensed, SA, Sub | 0.97 | 0 | 1 | 1 | 1 | 1 |
| 21174 | Chicago, R.I. & P.R. Co. v. City of Iowa City, 288 N.W.2d 536 | 183+7 | In the present case it is not necessary to resolve the question of whether the city had authority to grant a franchise. A franchise is not an alienable possessory interest. 37 C.J.S. Franchises s 8 at 152; 36 Am.Jur.2d, Franchises, s 2. In any event, the city lacked authority to grant an easement. Since the railroad's position on this issue is anchored to the city's authority to grant an easement and not a mere franchise, it follows that the trial court did not err in finding that the city-Nash lease was valid and subsisting until November 10, 1975. | A franchise is not an alienable possessory interest. | Are franchises alienable? | 018599.docx | LEGALEASE-00163171-LEGALEASE-00163172 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |
| 21175 | In re Qualia Clinical Serv., 441 B.R. 325 | 349A+10 | This agreement, which shifts all risk to Qualia, is a disguised loan rather than a true sale. Where the "seller" retains "virtually all of the risk of noncollection," the transaction cannot properly be considered a true sale. Nickey Gregory Co., LLC v. AgriCap, LLC, 597 F.3d 591, 602 (4th Cir.2010). See also Fireman's Fund Ins. Cos. v. Grover (In re Woodson), 813 F.2d 266 (9th Cir.1987) (finding transaction to have been a disguised loan where seller insured buyer against loss); Bear v. Coben (In re Golden Plan of California, Inc.), 829 F.2d 705, 709*10 (9th Cir.1986) (finding that there had been a true sale where "investors received no contractual guarantee of repayment or compensation in case of foreclosure. Such assumption of risk strongly suggests that the ... investors were not in a creditor-debtor relationship"); Major's Furniture Mart, Inc., 602 F.2d at 545 ("In the instant case the allocation of risks heavily favors Major's claim to be considered as an assignor with an interest in the collectibility of its accounts. It appears that Castle required Major's to retain all conceivable risks of uncollectibility of these accounts"); NetBank, FSB v. Kipperman (In re Commercial Money Center, Inc.), 350 B.R. 465, 484 (9th Cir. BAP 2006) (finding transaction to have been a loan where seller "(1) has none of the potential benefits of ownership and (2) is contractually allocated none of the risk of loss"); CF Motor Freight v. Schwartz (In re De'Pen Line, Inc.), 215 B.R. 947, 951 (Bankr.E.D.Pa.1997) (finding there had not been a true sale where "the risks which are characteristic of a true sale are not accepted by DIL in the Agreement"); Ables v. Major Funding Corp. (In re Major Funding Corp.), 82 B.R. 443, 448 (Bankr.S.D.Tex.1987) (finding there had not been a true sale where "investors did not shoulder the normal risks of ownership" | Purported contract for purchase and sale of debtor's accounts receivable was not true sales agreement but in nature of disguised financing agreement, pursuant to which debtor retained ownership interest in accounts despite its purported sale thereof to capital funding company outright, where contract, by requiring debtor to repurchase accounts if they proved uncollectible for any reason, placed risk of uncollectibility entirely on debtor; accordingly, when capital funding company filed financing statement to perfect security interest in accounts, it thereby effected transfer of "interest of the debtor in property," of kind potentially subject to avoidance as preference. 11 U.S.C.A. S 547(b). | "In determining whether parties intended a sale or a loan for security, is the issue how risks are contractually allocated when the transactions were entered into?" | 042814.docx | LEGALEASE-00164020-LEGALEASE-00164021 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 21176 | People v. Carlson, 183 Misc. 2d 630 | 3.77E+24 | Similarly, in State v. Keller, 40 Ore.App. 143, 146, 594 P.2d 1250, 1252 (1979), the Court of Appeals of Oregon, in what seems to be a case of first impression, held that spitting on another can constitute "offensive physical contact" within the meaning of the harassment statute. "[S]pitting on another can be an interference with the physical integrity of the victim that is comparable to striking, slapping, etc." (State v. Keller, 40 Ore.App., at 146, 594 P.2d, at 1252.)) | Defendant's alleged act of spitting in victim's face subjected victim to "physical contact," for purposes of prosecution for aggravated harassment in second degree. McKinney's Penal Law S 240.30, subd. 3. | "Can spitting on another constitute ''offensive physical contact'' within the meaning of the harassment statute?" | 047025.docx | LEGALEASE-00163515-LEGALEASE-00163516 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 21177 | State v. Cramer, 789 N.W.2d 164 | 377E+48(2) | In State v. Fratzke, 446 N.W.2d 781, 783 (Iowa 1989), the court recognized that the harassment statute contains a "constitutional safety valve" so as to not punish merely unpopular speech. That safety valve is the requirement that the communication be "without legitimate purpose" to be actionable as harassment. Iowa Code * 708.7(1)(b); State v. Button, 622 N.W.2d 480, 485 (Iowa 2001). Because under Iowa Code section 708.7(1)(a), "there must be a specific intent to threaten, intimidate, or alarm, the only legitimate purpose that will avoid the criminal status conferred by the statute would be a legitimate purpose to threaten, intimidate, or alarm." State v. Evans [Evans I], 672 N.W.2d 328, 331 (Iowa 2003). There is no claim that such purpose existed in the present case. | There was sufficient evidence that harassment defendant intended to communicate threats contained in letter to his ex-girlfriend to ex-girlfriend's current boyfriend. Although the letter was addressed to defendant's ex-girlfriend and primarily communicated to the ex-girlfriend, there were two places where the defendant's intent to communicate the threats to the current boyfriend were clear. "I'll fuck (your boyfriend) up. You can tell him that," showed defendant expected the boyfriend to learn of the threat, and, later in the letter, the defendant briefly addressed the boyfriend directly, not in the third person. I.C.A. S 708.7(1)(a). | "What is the ''constitutional safety valve'' contained within the harassment statute?" | ROSS-003297101-ROSS-003297102 | "Threats, Stalking and Harassment - Memo 251 - C - L8_66856.docx" | | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21178 | In re Montgomery Ward, 469 B.R. 522 | 51+2834 | Courts have used several factors to analyze the economic realities of a transaction when making a determination regarding the nature of an agreement. A primary indicator of the agreement's nature is how ownership is allocated. Dena Corp., 312 B.R. at 169. An agreement cannot be a true lease where the purported lessor retains no ownership interest in the property at the end of the lease or the economic value of the property was exhausted. Id.; United Air Lines, Inc. v. HSBC Bank USA (In re UAL Corp.), 307 B.R. 618, 632 (Bankr.N.D.Ill.2004) (explaining that true leases revert back to the lessor with substantial value remaining). In addition to the allocation of ownership risk, courts have also considered factors such as whether: | Appropriate treatment of claim for lease rejection damages filed against Chapter 11 debtor required bankruptcy court to determine whether purported ground lease and sublease agreement were truly leases or constituted financing arrangement, and therefore bankruptcy court had "related to" jurisdiction, post-plan confirmation, to determine true character of agreements. 11 U.S.C.A. S 365; 28 U.S.C.A. SS 157, 1334(b). | Can there be a true lease when the lessor has no ownership interest? | 021016.docx | LEGALEASE-00164975-LEGALEASE-00164976 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21179 | In re Montgomery Ward, 469 B.R. 522 | 51+2834 | Simply labeling an agreement a "lease" does not necessarily create a true lease. In re Dena Corp., 312 B.R. 162, 169 (Bankr.N.D.Ill.2004); Marriott Family Restaurants v. Lunan Family Restaurants (In re Lunan Family Restaurants), 194 B.R. 429, 450 (Bankr.N.D.Ill.1996). Instead, such a label creates a rebuttable presumption that the agreement is a true lease. Lunan, 194 B.R. at 450. Thus the burden of demonstrating that a lease is a disguised security agreement rests with the party challenging the nature of the lease. In re Pillowtex, Inc., 349 F.3d 711, 716 (3d Cir.2003). See also In re Buehne Farms, Inc., 321 B.R. 239, 243 (Bankr.S.D.Ill.2005) ("the burden of proving whether the agreements are disguised security agreements or true leases rests with the party who would lose if no evidence were presented."). | Appropriate treatment of claim for lease rejection damages filed against Chapter 11 debtor required bankruptcy court to determine whether purported ground lease and sublease agreement were truly leases or constituted financing arrangement, and therefore bankruptcy court had "related to" jurisdiction, post-plan confirmation, to determine true character of agreements. 11 U.S.C.A. S 365; 28 U.S.C.A. SS 157, 1334(b). | Does labeling an agreement a lease make it a true lease? | 021026.docx | LEGALEASE-00164965-LEGALEASE-00164966 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21180 | C. V. Floyd Fruit Co. v. Florida Citrus Comm'n, 128 Fla. 565 | 238+7(1) | "A legislature cannot make a private purpose a public purpose, or draw to itself or create the power to authorize a tax or a debt for such a purpose, by its mere fiat.' Dodge v. Mission Township, 107 F. 827, 46 C.C.A. 661, 54 L.R.A. 242. | The tax imposed on each standard-packed box of oranges, grapefruit, and tangerines grown in state for purpose of providing fund for advertising such citrus fruits was for public purpose and valid since the protection and promotion of the citrus industry in Florida is matter of public concern. F.S.A. S 599.05; F.S.A.Const.Fla. art. 9, S 5. | Can the legislature by its mere fiat make a private purpose a public purpose in order to authorize a tax? | 046417.docx | LEGALEASE-00164947-LEGALEASE-00164948 | Condensed, SA | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 21181 | Bowens v. Gen. Motors Corp., 608 So. 2d 999 | 413+1057 | There is no dispute that LIGA stands in place of Anglo-American, Bonded's insolvent worker's compensation insurer. Under La.R.S. 22:1382(A)(2), LIGA is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." Therefore, it appears LIGA (standing in place of the insurer for plaintiff's immediate employer) and GM (as plaintiff's statutory employer) should be cast in judgment in solido, with GM given indemnity rights against LIGA.5 As the court in Jones v. Southern Tupelo Lumber Co., 257 La. 869, 244 So.2d 815, 817 (1971), stated: The courts below correctly cast all of the defendants solidarily, for when an employee is entitled to compensation and under R.S. 23:1061 or R.S. 23:1063 has sued the principal or the principal contractor together with the contractor or subcontractor, the liability of such defendants is solidary. The purpose of these statutes is to expand financial responsibility and to prevent the evasion of the workman's compensation law by the principal's or the principal contractor's interposing between himself and the employee an impecunious contractor or subcontractor. Under these statutes the claimant is entitled to proceed against the principal (or principal contractor) or the contractor (or subcontractor) or both as he chooses. The indemnification clauses, however, have the effect of finally imposing the loss of the principal or principal contractor upon the claimant's immediate employer. | Because self-insurance is merely method of complying with workers' compensation laws and is not equivalent to possession of insurance policy, nonduplication of recovery section of statute governing Louisiana Insurance Guaranty Association (LIGA) did not apply to worker's claim against self-insured car manufacturer, and LIGA was liable for compensation benefits; presence of self-insurer does not preclude liability on part of LIGA to plaintiff for compensation benefits. LSA-R.S. 22:1382, subd. A(2), 22:1386(1), 23:1061. | "In workers compensation, when does liability become a solidary?" | 048775.docx | LEGALEASE-00164273-LEGALEASE-00164274 | Condensed, SA | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 21182 | In re Montgomery Ward, 469 B.R. 522 | 51+2834 | Simply labeling an agreement a "lease" does not necessarily create a true lease. In re Dena Corp., 312 B.R. 162, 169 (Bankr.N.D.Ill.2004); Marriott Family Restaurants v. Lunan Family Restaurants (In re Lunan Family Restaurants), 194 B.R. 429, 450 (Bankr.N.D.Ill.1996). Instead, such a label creates a rebuttable presumption that the agreement is a true lease.Lunan,194 B.R. at 450. Thus the burden of demonstrating that a lease is a disguised security agreement rests with the party challenging the nature of the lease. In re Pillowtex, Inc., 349 F.3d 711, 716 (3d Cir.2003). See also In re Buehne Farms, Inc., 321 B.R. 239, 243 (Bankr.S.D.Ill.2005) ("the burden of proving whether the agreements are disguised security agreements or true leases rests with the party who would lose if no evidence were presented."). | Appropriate treatment of claim for lease rejection damages filed against Chapter 11 debtor required bankruptcy court to determine whether purported ground lease and sublease agreement were truly leases or constituted financing arrangement, and therefore bankruptcy court had "related to" jurisdiction, post-plan confirmation, to determine true character of agreements. 11 U.S.C.A. S 365; 28 U.S.C.A. SS 157, 1334(b). | Does a label create a rebuttable presumption that the agreement is a true lease? | Secured Transactions - Memo 21 - C - VA_67964.docx | ROSS-003284941 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21183 | State v. Vorhees, 342 S.W.3d 446 | 110+1036.10 | And, to establish plain error during closing argument, a defendant must make a sound, substantial showing that manifest injustice or a miscarriage of justice will result if relief is not granted. Id. Furthermore, appellate courts are especially wary of a claim that the trial court failed to declare a mistrial sua sponte "because generally the double jeopardy clause of the Fifth Amendment to the United States Constitution bars retrial if a judge grants a mistrial in a criminal case without the defendant's request or consent." State v. White, 291 S.W.3d 354, 359 (Mo.App. S.D.2009). Likewise, it is appropriate for the State to urge the jury to "uphold the law and protect children from sexual predation[.]" State v. Wolf, 326 S.W.3d 905, 908 (Mo.App. S.D.2010). | State's question of an investigating officer as to whether she believed victim's allegations that defendant, victim's father, had raped victim was permissible, after defendant had broached the subject of officer's initial conclusions as to victim's credibility and her cessation of prior investigation involving the same parties, and thus, trial court did not commit plain error in overruling defendant's objection to State's question. | Are appellate courts especially wary of a claim that the trial court failed to declare a mistrial sua sponte? | Double Jeopardy - Memo 502 - C - SN_68281.docx | ROSS-003278427-ROSS-003278428 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21184 | Pierson v. State, 398 S.W.3d 406 | 135H+96 | A bedrock principle of constitutional law is that a State may not put a defendant in jeopardy twice for the same offense. Arizona v. Washington, 434 U.S. 497, 502, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); see also United States v. Newton, 327 F.3d 17, 21 (1st Cir.2003). "[A]s a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." Washington, 434 U.S. at 505, 98 S.Ct. 824. "Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." " Id. at 503, 98 S.Ct. 824. | For purposes of double jeopardy analysis, if a defendant consents to a mistrial, the state is not required to demonstrate manifest necessity before bringing the same charge again. U.S.C.A. Const.Amend. 5. | Can State put a defendant in jeopardy twice for the same offense? | 015984.docx | LEGALEASE-00166339-LEGALEASE-00166340 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 21185 | State v. Schmear, 28 Wis. 2d 126 | 135H+95.1 | he defendant claims that all he asked for was a mistrial but the trial court granted him a new trial. The trial court cannot be foreclosed from granting the relief which necessarily follows from the request for a mistrial. A mistrial is not a judgment of acquittal and, therefore, normally the defendant should expect to be tried again. Early in the history of this state it was held it was not error for a court to grant a new trial because the defendant had not asked for it. In re Keenan, supra. | "Mistrial" is not judgment of acquittal. | Is mistrial not a judgment of acquittal? | Double Jeopardy - Memo 574 - C - SHB_68353.docx | ROSS-003279308-ROSS-003279309 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |
| 21186 | In re Chicago, Missouri & W. Ry. Co., 127 B.R. 839 | 349A+10 | Those courts which have adopted the minority view of transfer upon delivery have done so under either of two equally untenable theories. The first theory contends that the transfer of debtor's interest in property "relates back" to delivery of the check if the check is honored within ten days of its delivery. See In re Advance Indus., 63 B.R. 677, 678 (Bankr.N.D.Iowa 1986); In re Sider Ventures & Servs. Corp., 47 B.R. 406 (S.D.N.Y.1985). The reasoning is that honor of the check amounts to "perfection" of an interest in debtor's property within the meaning of " 547(e)(1)(B) and serves to insulate the transaction from preference liability. However, the legislative history of " 547(e) clearly restricts its application to secured transactions, H.R.Rep. No. 595, 95th Cong., 1st Sess. 374"75 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 89 (1978), and a check is not a security interest. Ill.Rev.Stat. ch. 26, par. 1"201(37) (1985). See In re Arnett (Ray v. Security Mut. Fin. Corp.), 731 F.2d 358, 362 (6th Cir.1984). | Under Illinois law, check is not a security interest. Ill.S.H.A. ch. 26, P 1-201(37). | Is a check not a security interest? | Secured Transactions - Memo 162 - C - DHA_68484.docx | ROSS-003281408-ROSS-003281409 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 21187 | Gee v. Brown, 144 S.W.3d 844 | 315+138 | A careful reading of the decision in Superior Oil, however, supports the decision of the trial court. The court in Superior Oil plainly stated "[w]e have found no case, in this state, where one having nothing but a life estate has been able by any act or declaration of his own to enlarge that life estate to a fee." 242 Ky. at 826, 47 S.W.2d at 980 (emphasis added). The court further held: One having a life estate and nothing more cannot by any possession, act or declaration of his own enlarge that estate, and limitation does not run against the remainderman until the life estate falls in; but if, through some act correct or erroneous, valid or invalid, not his own, but of the remainderman or of some one in privity with the remainderman, the apparent life tenant acquires some color of title incompatible with the existence of a life estate and a remainder estate, even though by a void act or instrument, and takes and holds possession thereunder and not as life tenant, and the remainderman knows of such entry holding and possession and of the nature thereof, a cause of action then accrues to the remainderman, and if he takes no steps then, or within the statutory period, he must suffer the consequences. 242 Ky. at 827, 47 S.W.2d at 981 (emphasis added). The court took great pains to distinguish earlier cases in which ostensible life estates ripened into fees through adverse possession. The common thread in each of those cases was that some will or deed generated by someone, other than the life tenant, created a claim of title, other than the life estate, in favor of the life tenant. | Intestate decedent's wife, who inherited life estate in decedent's property as dower, could not convert life estate to fee interest by virtue of her transaction conveying her interest to her attorney, who then deeded purported fee interest to wife, although wife asserted claim of adverse possession of fee; wife created affidavit of descent, by which she purported to own fee interest by adverse possession, and her actions while in possession, including farming land, leasing tobacco, raising livestock, and paying property taxes, were not inconsistent with duties of a life tenant. | "Can a person having a life estate and nothing more, enlarge the estate by any possession, act or declaration?" | 03645.docx | LEGALEASE-00077166-LEGALEASE-00077167 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 21188 | State v. Stough, 318 Mo. 1198 | 110+134(2) | While the joint affidavit, filed in support of this application, recites that the affiants reside in different localities in the county, and purports to give their addresses, it does not appear, on the face of the affidavit, that such addresses, or places of residence, are located "in different neighborhoods of the county," as required by the statute. Moreover, this court has held that, "as the affidavits of these five or more persons from different neighborhoods is to operate as the proof of prejudice, in lieu of the inquiry conducted by the court as heretofore,the affidavits should state facts, and not legal conclusions, so that the court can determine whether the witness is competent to express an opinion on the subject." State v. Bradford, 314 Mo. 698, 285 S. W. loc. cit. 500. And in the separate concurring opinion of White, J., in the Bradford Case, it was further held that: "The five affidavits take the place of the two affidavits, and also dispense with additional proof. These five affidavits must come from citizens in different neighborhoods of the county. Therefore a joint affidavit would not satisfy the statute; there must be five separate affidavits which show the situation in five different neighborhoods of the county." Same, loc. cit. 500 (314 Mo. 698). | Joint affidavit for change of venue for prejudice of inhabitants, not showing affiants lived in different neighborhoods, held insufficient. Rev.St.1919, S 3973, as reenacted by Laws 1921, p. 206 (V.A.M.S. S 545.490). | Does an affidavit state facts or conclusions? | 07327.docx | LEGALEASE-00077577-LEGALEASE-00077579 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21189 | In re Stevenson, 2008 WL 748927 | 366+31(4) | Soon thereafter, Stevenson declared bankruptcy and stopped making mortgage payments. But HSBC could not foreclose because Smith had not signed the HSBC deed of trust. HSBC filed this suit in Bankruptcy Court seeking equitable subrogation. The doctrine of equitable subrogation permits courts to declare that the owner of a mortgage (HSBC) has the same rights as an earlier-in-time owner of another mortgage (Wells Fargo) on the same property, if certain conditions are met. The purpose of equitable subrogation is "to prevent forfeiture and unjust enrichment." Eastern Savings Bank, FSB v. Pappas, 829 A.2d 953, 957 (D.C.2003) (internal quotation marks omitted). | Under District of Columbia law as predicted by the Court of Appeals for the District of Columbia, deed of trust lender's knowledge, at time it agreed to refinance an earlier mortgage signed by debtor and her son, that son would not agree to sign deed of trust because he felt that interest rate was too high did not prevent lender, after advancing funds on deed of trust signed only by debtor in order to pay off earlier mortgage, from asserting claim to be equitably subrogated to rights of prior mortgagee, where deed of trust lender, by advancing funds other than as volunteer to completely pay off prior mortgage on which it was not primarily liable, satisfied all of requirements for equitable subrogation, given that subrogation would not work any injustice on son, but simply require him to honor indebtedness that he voluntarily assumed by signing prior mortgage, while preventing him from obtaining windfall of an unencumbered interest in mortgage/deed of trust property without having advanced even a penny for that benefit. | Is the purpose of equitable subrogation to prevent forfeiture and unjust enrichment? | Subrogation - Memo 161 - ANG C.docx | ROSS-003283884-ROSS-003283885 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 21190 | Unifund CCR Partners v. Shah, 407 Ill. App. 3d 737 | 172H+103 | Plaintiff's use of the affidavit in support of its claim to defendant's account is problematic. Affidavits are " "a substitute for testimony taken in open court" " (Robidoux v. Oliphant, 201 Ill.2d 324, 338, 266 Ill.Dec. 915, 775 N.E.2d 987 (2002) (quoting Fooden v. Board of Governors of State Colleges & Universities of Illinois, 48 Ill.2d 580, 587, 272 N.E.2d 497 (1971))), but this does not mean that they are also substitutes for formally executed contracts of assignment under the Collection Agency Act. Section 8b explicitly requires proof of an assignment that "satisfies the requirements of this Section" (225 ILCS 425/8b(e) (West 2008)). As we have already found, one of section 8b's requirements is that an assignment be proven by a written contract of assignment. The plain language of the statute provides only a single method of proving the existence of an assignment, and this method does not include affidavits. Given that "[t]he plain language of a statute is the most reliable indication of legislative intent" (JPMorgan Chase Bank, N.A. v. Earth Foods, Inc., 238 Ill.2d 455, 461, 345 Ill.Dec. 644, 939 N.E.2d 487 (2010)), the legislature did not intend to allow assignments to be proven by affidavit. | Assignment of account to collection agency had to be manifested in a written contract that was completely separate from any contract to list the account with the agency; when statutes, which stated that assignee and owner of a non-negotiable chose in action could sue thereon in his or her own name and that account could be assigned to a collection agency to enable collection of the account in the agency's name as assignee for the creditor, were read together, they implied that assignment of account had to be manifested by a legal document in the formal sense, that is, by a written contract of assignment. S.H.A. 225 ILCS 425/8b(a); 735 ILCS 5/2-403. | Can affidavits be a substitute to testimony? | 003792.docx | LEGALEASE-00115675-LEGALEASE-00115677 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 21191 | Gatewood v. Gatewood, 75 Va. 407 | 38+31 | But if the party making the payment does not occupy the position of surety for the debt, as a general rule he cannot claim to be entitled as assignee unless by agreement with the creditor. Subrogation is, however, a very different thing from an assignment. It is the act of the law, and the creature of a court of equity, depending not upon contract, but upon the principles of equity and justice. It presupposes an actual payment and satisfaction of the debt secured by the mortgage.But although the debt is paid and satisfied, a court of equity will keep alive the lien for the benefit of the party who made the payment, provided he is security for the debt, "has such an interest in the land" as entitles him to the benefit of the security given for its payment. | The right arising from the assignment of a mortgage must be distinguished from a mere right of subrogation to the lien of the mortgage creditor. Assignment is the act of the parties, and depends generally upon intention. When the nature of the transaction is such as imports a payment of the debt, and a consequent discharge of the mortgage, there can, of course, be no assignment, for the lien of the mortgage is extinguished by the payment. | Is the right of subrogation founded upon contract? | 003631.docx | LEGALEASE-00120446-LEGALEASE-00120447 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 21192 | Tornatta Investments v. Indiana Dep't of Transp., 879 N.E.2d 660 | 148+266 | Next, we observe that a "taking within the meaning of eminent domain includes the "diminution in value" of a landowner's property." See Jenkins v. Bd. of County Comm'rs of Madison County, 698 N.E.2d 1268, 1271 (Ind.Ct.App.1998), trans. denied. "However, "highest and best use" represents a component of damages to be considered once the issue of taking is resolved in favor of the landowner." Id. "Stated differently, once a taking has been established, then damages may be based upon the highest and best use of the property at the time of the taking." Id. (emphasis added). Where the landowner has not established a taking, "the question is whether the action of the governmental entity diminished the value of the property in its present use." Id. | There are two stages in an action for inverse condemnation; first, the landowner must show that he or she has an interest in land that has been taken for a public use without having been appropriated under eminent domain laws, and if the trial court finds that a taking has occurred, the matter proceeds to the second stage where the court appoints appraisers and assesses damages. | "On what factor must the damages be based, once a taking has been established?" | 017398.docx | LEGALEASE-00121230-LEGALEASE-00121231 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21193 | K.D. v. Chambers, 951 N.E.2d 855 | 198H+806 | We review for an abuse of discretion a trial court's ruling on a pretrial motion in limine. Chacon v. Jones"Schilds, 904 N.E.2d 286, 288"89 (Ind.Ct.App.2009). The trial court's grant of such motions is an adjunct of its inherent authority to admit and exclude evidence. Butler v. Kokomo Rehab. Hosp., Inc., 744 N.E.2d 1041, 1046 (Ind.Ct.App.2001), trans. Denied.We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. Id. | Until the medical review panel issues its opinion on a proposed medical malpractice complaint as to whether the evidence supports the conclusion that defendant acted or failed to act within the appropriate standards of care as charged in the complaint, the trial court has no jurisdiction to hear and adjudicate the malpractice claim. West's A.I.C. 34-18-8-4, 34-18-10-17(e). | Is the trial court's grant of a pretrial motion in limine an adjunct of its inherent authority to admit and exclude evidence? | 030893.docx | LEGALEASE-00124952-LEGALEASE-00124953 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 21194 | Luther v. Comm'r of Revenue, 588 N.W.2d 502 | 371+3406 | To satisfy the second requirement of the due process analysis, a tax must reflect a rational relationship between the income attributed to the state for tax purposes and the " "values connected with the taxing state." " Moorman Mfg. Co. v. Bair, 437 U.S. 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (citing Norfolk & Western R. Co. v. State Tax Comm'n, 390 U.S. 317, 325, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968)). "The income tax is founded upon the protection afforded to the recipient of the income by the government, in his right to receive the income and in his enjoyment of the income when in his possession. That government provides for him all the advantages of living in safety and in freedom and of being protected by law. It gives security to life, liberty and the other privileges of dwelling in a civilized community. It exacts in return a contribution to the support of that government measured by and based upon the income, in the fruition of which it defends him from unjust interference." | Application of nondomiciliary resident statute to taxpayer, a Florida domiciliary who maintained abode in state and spent more than half of tax year in state, did not implicate commerce clause by violating her right to interstate travel; requirement that taxpayer pay state income tax was triggered by conduct that took place wholly within state and that did not substantially affect interstate commerce and taxpayer's contacts with state provided an adequate basis for state to tax her worldwide net income. U.S.C.A. Const. Art. 1, S 8, cl. 3; M.S.A. S 290.01, subd. 7(2). | What are income taxes founded upon? | 045152.docx | LEGALEASE-00130585-LEGALEASE-00130586 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21195 | Billingsley v. St. Louis Cty., 70 F.3d 61 | 92+1475(9) | In the present case, we believe that the existing law did not clearly prohibit dismissal of a county council administrative assistant based on her lack of political loyalty to the legislator to whom she was exclusively assigned. We have recognized that government employees' "first amendment rights may have to yield to the government's vital interest in maintaining governmental effectiveness and efficiency if their private political beliefs would interfere with their public duties." Barnes v. Bosley, 745 F.2d 501, 505 (8th Cir.1984), cert. denied, 471 U.S. 1017, 105 S.Ct. 2022, 85 L.Ed.2d 303 (1985). We held in Barnes that political affiliation was not an appropriate requirement for employees in a clerk of court's office who mainly performed ministerial duties. 745 F.2d at 508. The defendants in that case attempted to show that the plaintiffs held policymaking positions because they were involved with mailing procedures and the dress code and ordered office supplies. Id. We held, however, that those duties did not encompass areas that would be influenced by the plaintiffs' political viewpoints. Id. | Government worker who performs technical, ministerial tasks cannot be discharged based on his political beliefs. U.S.C.A. Const.Amend. 1. | Is an employees political affiliation an appropriate requirement for performing ministerial duties? | 013382.docx | LEGALEASE-00130833-LEGALEASE-00130834 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | |
| 21196 | Watson v. Goldstein, 176 Minn. 18 | 83E+511 | Does the agreement constitute a valid transfer? The property involved is personal. It is only from the standpoint of the personal property involved that plaintiff prosecutes this proceeding. The debt, evidenced by the note, is the property, and the mortgage is merely an incident thereto. A note may be transferred without indorsement. G. S. 1923, " 7092. Like a mere debt or book account, it may be transferred orally. The terms of the oral agreement, supported by the book entries, as between the parties thereto, effectually transferred the title to the intervener. Murphy v. Bordwell, 83 Minn. 54, 85 N. W. 915, 52 L. R. A. 849, 85 Am. St. Rep. 454; Burton v. Gage, 85 Minn. 355, 88 N. W. 997; Hurley v. Bendel, 67 Minn. 41, 69 N. W. 477; Lewis v. Bush, 30 Minn. 244, 15 N. W. 113; Slimmer v. State Bank of Halstad, 134 Minn. 349, 159 N. W. 795; Jackson National Bank v. Christensen, 146 Minn. 303, 178 N. W. 494; Carlson v. Stafford, 166 Minn. 481, 208 N. W. 413; Merchants' National Bank v. State Bank, 172 Minn. 24, 214 N. W. 750. Intervener's rights accruing from such transfer cannot be affected by the plaintiff's effort to recover in this action. Indeed, plaintiff by garnishment can reach only that which defendant may demand from the garnishee. A physical delivery is not essential to a valid transfer of title thereto. Rail v. Little Falls Lumber Co., 47 Minn. 422, 50 N. W. 471; E. L. Welch Co. v. Lahart El. Co., 122 Minn. 432, 142 N. W. 828. The intent to transfer is clear. Defendant parted with all power of control and relinquished all right to the property. We reach the conclusion that a valid transfer was made. | Title to note may be effectually transferred by oral agreement without indorsement and physical change of possession. Gen.St.1923, S 7092 (M.S.A. S 335.195). | Is physical delivery essential for a valid transfer of title? | 009593.docx | LEGALEASE-00140576-LEGALEASE-00140577 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21197 | Williamson v. Osenton, 232 U.S. 619 | 170B+2413 | The very meaning of domicil is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined. But that she could sue a citizen of the state in which her husband resided in the federal court. | Where a wife justifiably left her husband and removed to another state with no intent of living elsewhere, she acquired a domicile in the latter state, so that she could sue a citizen of the state in which her husband resided in the federal court. | "Is ""domicile"" a technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined?" | 014502.docx | LEGALEASE-00144466-LEGALEASE-00144467 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 21198 | United States v. Santopietro, 166 F.3d 88 | 110+1438 | In the Supreme Court, Salinas contended that the "Government must prove the bribe in some way affected federal funds." Salinas, 522 U.S. at ****, 118 S.Ct. at 473. The Court rejected this contention: "The enactment's expansive, unqualified language, both as to bribes forbidden and the entities covered, does not support the interpretation that federal funds must be affected to violate " 666(a)(1)(B)..... The prohibition is not confined to a business or transaction which affects federal funds." Id. However, the Court noted that it "need not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds, for in this case the bribe was related to the housing of a prisoner in facilities paid for in significant part by federal funds themselves." Id. at ****, 118 S.Ct. at 474 (emphasis added). | Any error resulting from failure to instruct jury in prosecution under federal bribery statute that it had to find connection between alleged corruption and requisite federal funding was forfeited and could not be raised on motion to vacate, given absence of request at trial for such instruction or objection to lack of instruction, and given defendants' failure to show cause and prejudice excusing failure to raise issue on direct appeal. 18 U.S.C.A. S 666(a)(1)(B). | "In prosecution for bribery, does the government have to prove the bribe in some way affected federal funds?" | 012493.docx | LEGALEASE-00148426-LEGALEASE-00148427 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 21199 | Adusumelli v. Steiner, 740 F. Supp. 2d 582 | 170B+2384 | "[States] can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens within the United States or the several states. State laws which impose discriminatory burdens upon the entrance or residence of aliens lawfully within the United States conflict with th[e] constitutionally derived federal power to regulate immigration, and have accordingly been held invalid." Toll, 458 U.S. at 11, 102 S.Ct. 2977 (quoting Takahashi, 334 U.S. at 419, 68 S.Ct. 1138); DeCanas v. Bica, 424 U.S. 351, 358 n. 6, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) (same). This rule, established in Takahashi and relied upon in Graham and Flores de Otero, flows from two constitutional provisions: the Naturalization Clause, which gives Congress power to "establish an uniform Rule of Naturalization," Art. I, " 8, cl. 4; and the Supremacy Clause. Art. VI, cl. 2. See Flores de Otero, 426 U.S. at 602, 96 S.Ct. 2264. | Eleventh Amendment barred claims against state agencies asserted by nonimmigrant aliens challenging constitutionality of state statute governing licensing of pharmacists, although aliens could state claims for injunctive relief against agency heads in their official capacities pursuant to Ex Parte Young doctrine. U.S.C.A. Const.Amend. 11; N.Y.McKinney's Education Law S 6805(1)(6). | Can states add or take from the conditions lawfully imposed by Congress upon the residence of aliens in the United States? | 006989.docx | LEGALEASE-00159182-LEGALEASE-00159183 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 21200 | State v. Rathbun, 287 Or. 421 | 135H+98 | Nor should there be any dispute as to the defendant's "valued right to have his trial completed by a particular tribunal" once trial has begun. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). These considerations must bow, however, to the sense of the rule formulated in the early case of United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824) providing that the attachment of jeopardy is annulled if the prior prosecution is terminated because "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." See also, Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) and State v. Cole, 286 Or. 411, 595 P.2d 466 (1979). | Where first prosecution was terminated because jury was unable to reach verdict, and the inability of jury to reach verdict was assumed to have been caused by misconduct of bailiff, provision of Oregon Constitution prohibiting person from being put in jeopardy twice for same offense prevented application of statute permitting subsequent prosecution when previous prosecution was terminated on basis that jury was unable to agree upon verdict, and thus the prosecution of defendant was barred. U.S.C.A.Const. Amends. 5, 6; Const. art. 1, S 12; ORS 1.025(1), 17.305, 131.515(1), (2)(c, d), 131.525. | "If jeopardy is properly annulled for any reason, do proceedings stand upon a same footing as if a defendant had never been in jeopardy?" | 015824.docx | LEGALEASE-00166595-LEGALEASE-00166596 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21201 | Otter v. Gen. Ins. Co., 34 Cal. App. 3d 940 | 308+1 | General asserts that Otter was not an agent. With equal assurance INA pronounces that he was. We need go no further than Civil Code section 2295, which defines an agent, to assert that Otter Was the agent of Jefferson Motors. It states: "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called 'agency.'" "Agent" is synonymous with "representative." (Sunset Milling & Grain Co. v. Anderson (1952) 39 Cal.2d 773, 778, 249 P.2d 24.) Once one reaches the conclusion, as the trial court properly did, that Otter's trip was partially to demonstrate the Lincoln automobile he was driving to a potential purchaser of a Lincoln, then Jefferson's friend, Otter, driving with his permission, became his agent, his representative, quite as certainly as though one of the regular salesmen of Jefferson Motors had been the driver. Jefferson satisfied the trial judge by his statements in the record that dealers of luxury automobiles do not bludgeon prospective purchasers into buying their product. It is reasonable to believe that the apparently casual showing of the car by a weekend guest was an application of the "soft-sell" calculated to take Mr. Breuner into the salesrooms of Jefferson Motors better than any other method Mr. Jefferson could have employed. We will not pronounce that determination in the trial court's findings to be error. Also, it appears to us to be axiomatic that since this was a demonstration, since a demonstration must be made by someone, and since it was made neither by Jefferson nor a regularly employed salesman, the "someone" who showed the car, Otter, was his agent. Substitute the word "representative" if you please; "representative" and "agent" as used in subdivision (f) of Insurance Code section 11580.1 in 1965 and as paraphrased in General's policy I(v) quoted above, are synonymous. | "'representative' is synonymous with 'agent.' West's Ann.Civ.Code, 5 2295. | "Is "'agent'" synonymous with ""representative"'? " | Principal and Agent - Memo 582-5B_63598.docx | ROSS-003280997-ROSS-003280998 | Condensed, Order, SA, Sub | 0.96 | 1 | 1 | 1 | 1 | 1 |
| 21202 | Harris v. McKay, 138 Va. 448 | 308+92(1) | That case is not controlling here, since in the instant case the persons with whom the promise to assume and pay was made are suing the assumers and alleging that one of the assumers acted through a duly authorized agent. Where, as here, the agent's authority is proved, no question of privity can arise. The doctrine of principal and agent--whether disclosed or undisclosed--recognizes that privity of contract exists. The act of the agent is the act of the principal. | Where an agent's authority is proved, no question of privity can arise. The doctrine of principal and agent, whether disclosed or undisclosed, recognizes that privity of contract exists between the principal and one dealing with the agent. The act of the agent is the act of the principal. | Is the act of the agent the act of the principal? | Principal and Agent - Memo 342 - RK_61930.docx | ROSS-003281600-ROSS-003281601 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21203 | ACE Am. Ins. Co. v. Sandberg, Phoenix & Von Gontard, PC., 900 F. Supp. 2d 887 | 46H+32 | In broad terms, subrogation is the substitution of a person or entity in place of a creditor to whose rights he succeeds in relation to a debt. A subrogated insurer stands in the shoes of the insured, inheriting the rights of the insured and subject to any defenses a third party would have against the insured. Couch on Insurance " 222:5 (3rd edition). A distinction often is made between conventional (or "contractual") subrogation and legal (also referred to as "common law" or "equitable") subrogation. Legal subrogation arises by operation of law, while conventional subrogation arises by convention or the contract of the parties. "Otherwise stated, the insurer's right to subrogation may rest either upon the operation of law, arising upon the fact of payment made by the insurer, or upon the contract between the insurer and the insured expressly providing for subrogation." Couch on Insurance " 222:20 (3rd edition). | Under Illinois choice of law rules, applying a "most significant contacts" test, the law of Illinois, not Missouri, governed the viability of equitable subrogation claims asserted by excess and umbrella insurers against a law firm whose alleged malpractice in representing their insured in underlying litigation purportedly caused the insurers to pay an inflated amount to settle the lawsuit; while the firm had its principal place of business in Missouri, it also had four Illinois offices, two named attorneys were licensed in Illinois, the injury was the forced payment of the huge settlement, which was mandated by a judge's order issued in Illinois, and the conduct causing the injury, the alleged malpractice, was best viewed as having occurred in Illinois, where the case was litigated. Restatement (Second) of Conflict of Laws S 145. | What is the distinction between conventional or contractual subrogation and legal or equitable subrogation? | Subrogation - Memo 184 - ANG C.docx | ROSS-003282247-ROSS-003282249 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 21204 | Florida Farm Bureau Ins. Co. v. Martin, 377 So. 2d 827 | 217+3515(1) | Although we express no opinion as to whether the execution of the subrogation receipt modified the common law doctrine of subrogation, we note that the court further held that the execution of the receipt pursuant to the subrogation clause did not affect the applicability of the normal rule of subrogation. See also Skaggs v. Mountain States Telephone and Telegraph Company, 565 P.2d 628 (Mont.1977); 16 Couch on Insurance 2d s 61:61 (2d Ed. 1966). It has also been stated Since subrogation is an offspring of equity, equitable principles apply, even when the subrogation is based on contract, except as modified by specific provisions in the contract. In the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tortfeasors. Lyon v. Hartford Accident and Indemnity Company, 25 Utah 2d 310, 480 P.2d 739, 744 (Utah 1971) (footnotes omitted). Here, Farm Bureau could have proceeded independently against the tortfeasor by taking an assignment and subrogation agreement. State Farm Mutual Automobile Insurance Company v. Robbins, 237 So.2d 208 (Fla. 4th DCA 1970). Otherwise, the subrogation clause does not appear to grant Farm Bureau any additional rights to those already existing under the common law rule of subrogation. | Where parties stipulated that owners' property damage resulting from fire totaled $110,000, that recovery from tort-feasor's insurer would be the maximum policy limit of $50,000, and that recovery from tort-feasor would be maximum collectable amount of $2,500 and where owner's fire insurer paid owners approximately $42,535 for fire losses, owners' insurer was not entitled to subrogation from funds recovered by its insureds in suit against tort-feasor and tort-feasor's insurer because owners' damage of $110,000 exceeded total recovery of $95,035. | "Do equitable principles apply, even when the subrogation is based on a contract since subrogation is an offspring of equity? " | Subrogation - Memo 84 - RM C.docx | ROSS-003285237-ROSS-003285238 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21205 | Denver & R.G.W.R., Co. v. Pub. Utilities Comm'n, 142 Colo. 400 | 70+8 | The whole theory upon which the structure of Public Utility Commission powers is based is that of a regulated monopoly. In Archibald v. Public Utilities Commission, 115 Colo. 190, 171 P.2d 421, 423, it was said that: 'The theory of regulated monopoly is based upon the fact that, except as shown, it is better to have fewer utilities who can make a reasonable return upon their investments and thus give the public better and more expeditious service, than to throw the doors open so that, although the number of operators may be increased, service to the public may become disorganized.' | The validity of an order of the Public Utilities Commission enlarging the services that a carrier may render is to be tested by the same rules as the powers based on that of a regulated monopoly?" rules governing the issuance of a new certificate to a new carrier. | "Is the structure of the Public Utility Commission (""PUC"") powers based on that of a regulated monopoly?" | Public Utilities - Memo 176 - AM.docx | ROSS-003285308-ROSS-003285309 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21206 | State v. Letell, 103 So. 3d 1129 | 350H+642 | The federal and state constitutions both provide that no person shall twice be put in jeopardy of life or liberty for the same offense. U.S. Const. amend. V; La. Const. art. I, " 15. The Double Jeopardy Clause protects the accused against multiple punishments for the same offense as well as a second prosecution for the same offense after acquittal or conviction. | Trial court adequately considered statutory criteria and did not manifestly abuse its discretion in sentencing defendant convicted of vehicular homicide and fourth-offense operating a vehicle while intoxicated (DWI) to consecutive terms of 30 years for DWI and 30 years for vehicular homicide; defendant had been convicted of multiple DWI offenses and had been on felony probation therefor at least twice, current offenses took one life and endangered others, and defendant's criminal history and probation history indicated there was little likelihood that he could be rehabilitated. LSA-C.Cr.P. art. 894.1(A)(1, 3), (B)(5, 9, 12). | Do federal and state constitutions provide that no person shall be put in jeopardy twice for the same criminal offense? | Double Jeopardy - Memo 919 - C - SK_6770B.docx | ROSS-003293640-ROSS-003293641 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 21207 | United States v. Lopreato, 83 F.3d 571 | 63+16 | In Burns, the Court held that Rule 32 requires a sentencing court to provide the parties with prior notice of its intent to depart from the Guidelines sua sponte. Id. at 136, 111 S.Ct. at 2186. The Court explained that "[b]ecause the Guidelines place essentially no limit on the number of potential factors that may warrant a departure ..., no one is in a position to guess when or on what grounds a district court might depart, much less to "comment" on such a possibility in a coherent way." Id. at 136-37, 111 S.Ct. at 2186. | Presentence report (PSR) prepared by probation officer indicated that alternative fine was available on convictions of pension plan trustee for receiving unlawful payments and, thus, trustee had sufficient notice to support sentencing court's imposition of $250,000 alternative fine as departure sentence. 18 U.S.C.A. S 3571(b)(3); Fed.Rules Cr.Proc.Rule 32, 18 U.S.C.A. | Is the sentencing court required to provide the parties with prior notice of its intent to depart from the Guidelines sua sponte? | Bribery - Memo 1057 - C - ML_65545.docx | ROSS-003296981-ROSS-003296982 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 21208 | Cheek v. United States, 498 U.S. 192 | 220+S263.35 | The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system. See, e.g., United States v. Smith, 5 Wheat. 153, 182, 5 L.Ed. 57 (1820) (Livingston, J., dissenting); Barlow v. United States, 7 Pet. 404, 411, 8 L.Ed. 728 (1833); Reynolds v. United States, 98 U.S. 145, 167, 25 L.Ed. 244 (1879); Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 68, 30 S.Ct. 663, 666, 54 L.Ed. 930 (1910); Lambert v. California, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957); Liparota v. United States, 471 U.S. 419, 441, 105 S.Ct. 2084, 2096, 85 L.Ed.2d 434 (1985) (WHITE, J., dissenting); O. Holmes, The Common Law 47-48 (1881). Based on the notion that the law is definite and knowable, the common law presumed that every person knew the law. This common-law rule has been applied by the Court in numerous cases construing criminal statutes. See, e.g., United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); Hamling v. United States, 418 U.S. 87, 119-124, 94 S.Ct. 2887, 2808-2911, 41 L.Ed.2d 590 (1974); Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). | Defendant's good-faith belief that income tax law was unconstitutional as applied to him did not provide defense to charges of willfully attempting to evade income taxes and failing to file income tax returns, notwithstanding claim that, because of his belief in the unconstitutionality of the tax laws as applied to him, the income tax laws could not legally impose any duty upon him of which he should have been aware. 26 U.S.C.A. SS 7201, 7203. | Is the rule ignorance of law is no defense to criminal prosecution a part of legal system? | Disorderly Conduct- Memo 52- GP.docx | ROSS-003305063-ROSS-003305064 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21209 | Bologna v. City & Cty. of San Francisco, 192 Cal. App. 4th 429 | 24+113 | Significantly, the Assembly Committee on Judiciary reported that the bill "to require that the agency arresting any person for a narcotic violation must notify the appropriate agency of the United States having charge of deportation matters when there is reason to believe that said person is not a citizen of the United States' was considered and passed as part of a package of measures that were all designed "to prevent narcotics from entering the Country." [Citation.] [] Finally, if the chief legislative purpose of Section 11369 was the regulation of immigration rather than the sales and use of narcotics, the measure would not have been limited to persons arrested only for narcotics offenses...." (Fonseca v. Fong, supra, at pp. 940"941, 84 Cal.Rptr.3d 567.)] | Purpose of California statute requiring state authorities to notify federal authorities about the immigration status of drug arrestees is to combat the illegal drug trade. West's Ann.Cal.Health & Safety Code S 11369. | Was the chief legislative purpose of Section 11369 the regulation of immigration rather than of the sales and use of narcotics? | "Aliens, Immigration and Citizenship - Memo 145 - RK_64783.docx" | ROSS-003308371-ROSS-003308372 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21210 | See v. City of Seattle, 387 U.S. 541 | 349+79 | We therefore conclude that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure. We do not in any way imply that business premises may not reasonably be inspected in many more situations than private homes, nor do we question such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product. Any constitutional challenge to such programs can only be resolved, as many have been in the past, on a case-by-case basis under the general Fourth Amendment standard of reasonableness. We hold only that the basic component of a reasonable search under the Fourth Amendment "that it not be enforced without a suitable warrant procedure"is applicable in this context, as in others, to business as well as to residential premises. Therefore, appellant may not be prosecuted for exercising his constitutional right to insist that the fire inspector obtain a warrant authorizing entry upon appellant's locked warehouse. | Administrative entry, without consent, upon portions of commercial premises which are not open to public may only be compelled through prosecution or physical force within framework of warrant procedure. U.S.C.A.Const. Amend. 4. | Can commercial premises which are open to the public be reasonably inspected in more situations than private homes? | Inspection - Memo 7 - SH.docx | ROSS-003308780-ROSS-003308782 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21211 | Macchiavelli v. Shearson, Hammill & Co., 384 F. Supp. 21 | 25T+119 | Courts have taken a liberal attitude as to the subjects cognizable in arbitration. Michael v. SS Thanasis, 311 F.Supp. 170 (N.D.Cal.1970). Breaches of contract are the archetypal kinds of disputes referable to arbitration. Aerojet-General Corporation v. American Arbitration Association, 478 F.2d 248 (9th Cir. 1973); Ross v. Twentieth Century Fox, 236 F.2d 632 (9th Cir. 1956). So strong, in fact, is the policy of enforcement of arbitration agreements to decide disputes based upon the contract that: "It has been held that a complaint sounding in tort will not in itself prevent arbitration if the underlying contract embraces the disputed matter." Legg, Mason & Co., Inc. v. Mackall & Coe, Inc., 351 F.Supp. 1367 (D.C.D.C.1972). The allegation of Regulation T violations is a subject referable to arbitration. Robinson v. Bache & Co., 227 F.Supp. 456 (S.D.N.Y.1964). Finally, although plaintiffs fails to specify the federal rules dealing with credit transactions which defendant is alleged to have violated, it is clear that the Federal Arbitration Act is as applicable to controversies based upon statutes as to controversies based on the contract. Wilko v. Swan, 346 U.S. 427, 432, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In line with the liberal policy favoring arbitration, it must be concluded that plaintiff's unspecified and general allegations of credit violations are appropriately referable to arbitration. Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962); Metro Industries v. Terminal Construction Co., 287 F.2d 382 (2d Cir. 1961), cert den. 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24. | Breaches of contract are the archetypal kinds of disputes referable to arbitration. 9 U.S.C.A. S 1 et seq. | Does a complaint sounding in tort prevent arbitration if the underlying contract embraces the disputed matter? | Alternative Dispute Resolution - Memo 351 - RK.docx | ROSS-003310566-ROSS-003310568 | SA, Sub | 0.93 | 0 | 0 | | 1 | |
| 21212 | Aetna Life Ins. Co. v. McLaughlin, 370 S.W.2d 229 | 388+194(11) | We are of the view there was no error in overruling the objection made to the charge. The objection was that it failed to state deceased's understanding of the nature and probable consequences of his acts did not have to be rational. The definition as given made no requirement that his understanding be a rational one. In the light of the evidence adduced the court was seeking to find out if deceased purposed to take his life. Even though a person be insane to come within the exclusion of the policy he must have a purpose to take his life. Suicide is intentional self-destruction. Under the evidence no issue of insanity, apart from intoxication, was raised. The evidence does show deceased drank whiskey almost continuously from 7 p. m. Friday until his death early Sunday morning. It shows he was drunk. Dr. Crain testified a person could drink to the extent he could not form an intention to take his life. There was, we think, sufficient evidence to raise the issue of temporary insanity produced by the drinking of intoxicants. We are also of the view that if he was so drunk he could form no intention to take his life, then he did not commit suicide even if he walked in front of the bus, and we think it was tried on such theory. In any event, the charge given was sufficient to inquire if deceased purposed to take his life and there is no suggestion that his understanding of the nature and probable consequences of his act must be a rational one. | Instruction, in action on group accidental death policy excepting death resulting from suicide, that suicide is intentional self-destruction and that one may commit suicide although insane or intoxicated so long as act is result of exercise of his own will in any degree, and he understands nature and probable consequences of his act, was not objectionable on ground that it failed to state that insured's understanding of nature and probable consequences of his acts did not have to be rational or on ground that it was comment on weight of evidence. | Is suicide an intentional act? | Suicide - Memo 2 - AKA.docx | ROSS-003314222-ROSS-003314223 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 21213 | Kaiser v. Doll-Pollard, 398 Ill. App. 3d 652 | 401+2 | As a third distinction between this case and Jackson, we note the policy considerations that supported the Fourth District's decision there. The Jackson court explained that the legislative intent behind our venue statute was to protect a defendant from having to defend a lawsuit in a county with "little or no relation to the defendant or the transaction that is the subject of the lawsuit." Jackson, 363 Ill.App.3d at 278, 299 Ill.Dec. 726, 842 N.E.2d at 769. The court expressed a concern that finding venue in McLean County on the facts before it could lead to absurd results. The court explained as follows: "For example, the legislature could not have intended for a urology surgeon to be sued in a county when the surgeon's only connection to that county is that the patient was referred to him by a urologist in that county. Nor could the legislature have intended for a cancer specialist to be sued in a county when the specialist's only connection to that county is that he reviewed a patient's records that were brought from there." (Emphasis in original.) Jackson, 363 Ill.App.3d at 278, 299 Ill.Dec. 726, 842 N.E.2d at 769. | Phrase "transaction or some part thereof" in statute making venue proper in any county "in which the transaction or some part thereof occurred out of which the cause of action arose" includes all the facts that the plaintiff bears the burden of proving. S.H.A. 735 ILCS 5/2-101. | What is the legislative intent behind the venue statute? | Venue - Memo 35 - RM.docx | ROSS-003315938-ROSS-003315939 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 21214 | Prince George's Hosp. Ctr. v. Advantage Healthplan Inc., 865 F. Supp. 2d 47 | 366+21 | Subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Thrasher*Lyon v. Illinois Farmers Ins. Co., 861 F.Supp.2d 898, 909 n. 1 (N.D.Ill.2012) (quoting Black's Law Dictionary (9th ed.2009)); see also Group Hospitalization and Medical Svcs., Inc. v. Richardson, 946 F.Supp. 50, 53 (D.D.C.1996). Equitable subrogation, also known as legal subrogation, "arises by operation of law or by implication in equity to prevent fraud or injustice." Black's Law Dictionary (9th ed.2009). Equitable subrogation may arise "when (1) the paying party has a liability, claim, or fiduciary relationship with the debtor, (2) the party pays to fulfill a legal duty or because of public policy, (3) the paying party is a secondary debtor, (4) the paying party is a surety, or (5) the party pays to protect its own rights or property." Id. "Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it, to prevent unjust enrichment . The rights of the party who paid the debt in no way depend upon showing a contract provision or formal assignment; evidence of payment is sufficient." Nat'l Union Fire Ins. Co. v. Riggs Nat'l Bank, 646 A.2d 966, 968 (D.C.1994). | "Out-of-network" hospital, which provided emergency services under the Emergency Medical Treatment and Active Labor Act (EMTALA) to Medicaid-eligible patients insured under managed care organization's (MCO) plan, failed to state equitable subrogation claim against MCO under District of Columbia (D.C.) law because it did not demonstrate that the patients would have claims for monetary compensation against MCO which would result in a "debt" that hospital extinguished, nor had hospital identified existing claims that the patients made against MCO for which hospital could step into their shoes to advance. Emergency Medical Treatment and Active Labor Act, S 1867(b)(1), 42 U.S.C.A. S 1395dd(b)(1). | "Will equitable subrogation arise when the paying party has a liability, claim, or fiduciary relationship with the debtor?" | Subrogation - Memo 253 - VP C.docx | ROSS-003322310-ROSS-003322311 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 21215 | Auers v. Progressive Direct Ins. Co., 878 N.W.2d 350 | 217+2787 | Respondent and amicus curiae's arguments relying on Swanson ignore the important difference between a subrogation lien and a collateral source. "Subrogation "is the substitution of another person in place of the creditor to whose rights he or she succeeds in relation to the debt, and gives to the substitute all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted." " RAM Mut. Ins. Co. v. Rohde, 820 N.W.2d 1, 5 (Minn.2012) (quoting 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance " 222:5 (3d ed.1995)). Subrogation in the insurance context "involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor)." Medica, Inc. v. Atl. Mut. Ins. Co., 566 N.W.2d 74, 76 (Minn.1997). "Upon payment of a loss, the insurer is subrogated in a corresponding amount to the insured's right of action against any third party whose wrongful conduct caused the loss." RAM, 820 N.W.2d at 5*6 (emphasis added). A subrogation lien is "an equitable lien impressed on moneys on the ground that they ought to go to the insurer." Sereboff v. Mid Atlantic Med. Servs., Inc., 547 U.S. 356, 368, 126 S.Ct. 1869, 1877, 164 L.Ed.2d 612 (2006) (citing 4 Palmer, Law of Restitution " 23.18(d), at 470). | Discount of approximately $85,869.59 that health insurer negotiated with providers was "collateral source" reducing past medical expenses below $100,000 limit of automobile liability coverage, even though accident victim's surviving spouse had paid for assignment of health insurer's subrogation rights, and, thus, tortfeasor was not underinsured; health insurer only had subrogation lien in amount paid. M.S.A. S 548.251(2). | "Is subrogation the substitution of one person for another so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies, and securities?" | Subrogation - Memo 309 - RM C.docx | ROSS-003323410-ROSS-003323411 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 21216 | In re Harmon, 444 B.R. 696 | 366+31(4) | "In general, [the] purpose [of equitable subrogation] is to prevent the unjust enrichment of the debtor who owed the debt that is paid." First Nat'l Bank of Kerrville v. O'Dell, 856 S.W.2d 410, 415 (Tex.1993) (citing Smart v. Tower Land and Inv. Co., 597 S.W.2d 333, 337 (Tex.1980)). Equitable subrogation is inappropriate, however, if "superior or equal equities of others would be prejudiced" by its application. Fleetwood, 786 S.W.2d at 554 (quoting Sanger Bros. v. Walker Dry Goods Co., 207 S.W. 348, 349 (Tex.Civ.App.1918, writ ref'd)). | Under Texas law, equities warranted equitable subrogation of lender in borrowers' mortgage refinance transaction to prior lien on borrowers' homestead of mortgagee that was paid off through funds obtained in refinance transaction where borrowers' position vis-a-vis their obligations to lender had already been improved greatly due to court's invalidation of lender's lien under state constitution, lender, which had extended loan with principal balance of $1,268,598.87, plus 14% interest annually, could at most recover through subrogation $986,992.06 payoff amount, plus 6% interest, borrowers were active participants in attempt to dodge state's home equity laws underlying invalidation of lender's lien, and borrowers never made any payments to lender. Vernon's Ann.Texas Const. Art. 16, S 50(c, e). | Is purpose of the equitable subrogation to prevent the unjust enrichment of debtor who owed the debt that was paid by party seeking subrogation? | Subrogation - Memo 378 - VP C.docx | ROSS-003326208-ROSS-003326209 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 21217 | Kjerstad v. Ravellette Publications, 517 N.W.2d 419 | 388+178 | The granting of motions in limine to prevent the admission of prejudicial evidence is one method of achieving this duty. A motion in limine has been defined as:[A] motion, heard in advance of jury selection, which asks the court to instruct the [party], its counsel and witnesses not to mention certain facts unless and until permission of the court is first obtained outside the presence and hearing of the jury Lapasinskas v. Quick, 17 Mich.App. 733, 170 N.W.2d 318, 319 (1969). The Lapasinskas court went on to state:If prejudicial matters are brought before the jury, no amount of objection or instruction can remove the harmful effect, and the [party] is powerless unless he wants to forego his chance of a trial and ask for a mistrial. Once the question is asked, the harm is done.Lapasinskas, 170 N.W.2d at 319. Thus, the purpose of the motion in limine is to prevent prejudicial evidence from reaching the ears of the jury. | On motion for directed verdict, trial court must accept evidence that is most favorable to party against whom motion is sought, and must indulge all legitimate inferences that can fairly be drawn from evidence in favor of nonmoving party. | "Do motions in limine seek a court order requiring parties, attorneys, and witnesses not to disclose certain facts unless and until permission of the court is first obtained outside the presence and hearing of the jury? | Pretrial Procedure - Memo # 920 - C - T1.docx | ROSS-003327650-ROSS-003327651 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 21218 | Eagle Fabricators v. Rakowitz, 344 S.W.3d 414 | 13+60 | In its arguments, Eagle treats the trial court's order solely as a severance, and does not explain why we should hold that the trial court erred in setting aside its initial order consolidating the two cases-an act sometimes referred to as "deconsolidating" the cases. A trial court has "not only the authority but the responsibility to review any pre-trial order upon proper motion." Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex.1985). That is precisely what the trial court did here, and even without Rakowitz's motion for rehearing, the record shows both substantive and procedural reasons for the trial court's action. | Order setting aside consolidation of steel erector's breach of contract claim against steel fabricator based on nonpayment of services performed on project for construction of middle school, high school, and firehouse with erector's claim against bond insurer on same project was not abuse of discretion, since fabricator's motion for consolidation was filed four weeks before trial on breach of contract claim, and therefore, consolidation added new party to case that was to be soon tried before jury, which would have necessitated setting new trial date in case that had already been set for trial four times, and motion for consolidation was heard at hearing attended only by fabricator's counsel. Vernon's Ann.Texas Rules Civ.Proc., Rule 174. | Do a trial court have not only the authority but the responsibility to review any pre-trial order upon a proper motion? | Pretrial Procedure - Memo # 1405- C - SHB.docx | ROSS-003328254-ROSS-003328255 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 21219 | Sheldon v. Kivett, 110 N.C. 408 | 231+174(18) | The original affidavit was defective in the particulars in which it was amended. Faulk v. Smith, 84 N. C. 501. But it is settled that it could be amended by leave of the court, granted in its discretion, even though the first affidavit were wholly insufficient. Brown v. Hawkins, 65 N. C. 645; Branch v. Frank, 81 N. C. 180; Bank v. Blossom, 92 N. C. 695; Penniman v. Daniel, 93 N. C. 332; Cushing v. Styron, 104 N. C. 338, 10 S. E. Rep. 258. In those cases the action began in the superior court. For a stronger reason the power of amendment existed here, where the action began in a magistrate's court, in which the same regularity of procedure is not to be expected, and the Code, " 908, provides that in such cases the court can amend "either in form or substance." State v. Norman, 14 S. E. Rep. 968, (at this term.) Manufacturing Co. v. Barrett, 95 N. C. 36. In the affidavit by the agent it is not required that the reasons why it was not made by the principal should be set out, as in the verification of pleadings. Bruff v. Stern, 81 N. C. 183. After the amendment of the affidavit in this case it was again brought to Bank v. Frankford, 61 N. C. 199. After warrant was issued, publication for four successive weeks at the court house and four other public places was made, as required by Code, " 350. | Where an affidavit for attachment in a justice's court, on the ground that defendant is a nonresident, is defective in failing to state that the amount claimed is due on a justice's judgment, or that defendant cannot be found in the state after due diligence, the superior court, on appeal, may amend in the state after due diligence, the superior court, on appeal, may amend so as to state such facts, under Code, S 908, providing that in such cases the court may amend "either in form or in substance." | Should an affidavit be re-sworn after amendment? | Affidavits - Memo 17 - MS.docx | LEGALEASE-00001002- LEGALEASE-00001004 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21220 | Nies v. Town of Emerald Isle, 780 S.E.2d 187 | 148+2.42 | "Generally speaking, state law defines property interests[.]" Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection, 560 U.S. 702, 707"08, 130 S.Ct. 2592, 2597, 177 L.Ed.2d 184, 192 (2010) (citations omitted). North Carolina's ocean beaches are made up of different sections, the delineation of which are important to our decision. Fabrikant v. Currituck Cty., 174 N.C.App. 30, 33, 621 S.E.2d 19, 22 (2005). The "foreshore," or "wet sand beach," is the portion of the beach covered and uncovered, diurnally, by the regular movement of the tides. Id. The landward boundary of the foreshore is the mean high water mark. "Mean high water mark" is not defined by statute in North Carolina, but our Supreme Court has cited to a decision of the United States Supreme Court in discussing the meaning of the "mean" or "average high-tide." Fishing Pier, Inc. v. Town of Carolina Beach, 277 N.C. 297, 303, 177 S.E.2d 513, 516 (1970). The United States Supreme Court decision cited by Fishing Pier defined "mean high tide" as the average of all high tides over a period of 18.6 years. Borax Consol. v. City of Los Angeles, 296 U.S. 10, 26"27, 56 S.Ct. 23, 31, 80 L.Ed. 9, 20 (1935) | Beach-driving ordinances, which included ordinance permitting public driving on area of beach from foreshore to ten feet seaward of dune closest to ocean, did not constitute physical invasion of dry sand beach portion of property owners' ocean-front property, and thus was not taking under Takings Clause; public beach driving across dry sand beach was permissible pursuant to public trust rights, property owners had never had right to exclude public traffic from public trust dry sand beach portions of property, town had authority to both ensure public access to ocean beaches and to impose appropriate regulations pursuant to its police power, and contested beach-driving ordinances did not create a right of public relative to property, but rather regulated right public already enjoyed. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. SS 1-45.1, 77-20, 160A-308. | Which law creates and defines property rights? | Property - Memo 4 - ANG..docx | LEGALEASE-00001419- LEGALEASE-00001420 | Condensed, SA, Sub | 0.28 | 0 | 1 | | 1 | 1 |
| 21221 | Stephens v. Thompson, 177 Ga. App. 528 | 50+2 | "A bailment is a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." OCGA " 44-12-40. The transfer of property by a seller to a prospective purchaser on approval clearly creates a bailment under the statute. See Harris v. Whitehall Chevrolet Co., 55 Ga.App. 13011, 189 S.E. 392 (1936). | Transfer of property by seller to prospective purchaser on approval creates "bailment" under O.C.G.A. S 44-12-40. | Does bailment involve the delivery of property? | 07385.docx | LEGALEASE-00079049- LEGALEASE-00079050 | Condensed, SA, Sub | 0.75 | 0 | 1 | | 1 | 1 |
| 21222 | Sorensen v. Sorensen, 769 P.2d 820 | 157+572 | We believe to the contrary. We note at the outset, that goodwill is and must be distinguished from a professional practitioner's future earning capacity, an issue many fully addressed below. A number of jurisdictions have held that goodwill is not, however, per se synonymous with future earning capacity. | Valuation of $62,000 placed on goodwill of husband's dental practice for purposes of equitable distribution was sufficiently supported by testimony of wife's expert, who was employed by brokerage firm that had been in business over 18 years and sold more than 250 dental practices and who had personally been involved in 12 appraisals and six sales of practices; expert derived goodwill figure by considering factors such as history of earnings, length of time husband had been in practice, number of patients, location of practice, facilities and equipment, accounts receivable, and transferability of profits to prospective buyer, goodwill value expressed as factor equaling 34% of gross receipts was on low end of scale for dental practices in state, and husband's expert who attempted to rebut testimony was not involved in sale and valuation of dental practices. | Is future earning capacity per se goodwill? | Goodwill - Memo 13 - ANG..docx | LEGALEASE-00002164- LEGALEASE-00002166 | Condensed, SA, Sub | 0.65 | 0 | 1 | | 1 | 1 |
| 21223 | Garber Bros. v. Evlek, 122 F. Supp. 2d 375 | 212+1383 | Similarly, in Bowne of Boston v. Levine, the case that most fully considers the question of good will in this context, the court preliminary enjoined Ian Levine, Bowne's former salesman and vice president of sales, from soliciting business from clients and customers of Bowne's that had been assigned to him by Bowne or that he had made sales to during his time there. The court found that the corporate printing business involved goodwill, which "is generated by repeat business with existing customers or by referrals to potential customers,"and that the goodwill belonged to Bowne, because it "nurtured goodwill, through the work of Levine, in the customers covered by the non-solicitation agreement," provided Levine "with an unlimited expense account to entertain clients," and had hired Levine "to use his knowledge, skill, and personality to cultivate relationships with his clients." Bowne, 1997 WL 781444, at *3. See also Shipley Co. v. Clark, 728 F.Supp. 818, 827 (D.Mass.1990) (issuing preliminary injunction against two former salesmen enjoining them from working for a competitor or soliciting their former employer's customers because they might injure their former employer's good will); Neeco, Inc. v. Computer Factory, Inc., Civ. A. No. 87"1921"Z, 1987 WL 16161 (D.Mass. Aug.19, 1987) (issuing preliminary injunction because former employer may "try to stop the harm to its goodwill that may come from [former sales agent's] use in her new job of knowledge of plaintiff's customers or from her prior association with them on behalf of plaintiff"); Kroeger v. Stop & Shop Cos., 13 Mass.App.Ct. 310, 432 N.E.2d 566, 570 (1982) (noting in dicta that "salesmen or sales managers have the capacity to injure the goodwill of their former employers"). | Wholesale service company for gas stations and convenience stores was likely to succeed on its claim that it had protectable interest in its good will that would be harmed if enforcement of restrictive covenant was denied, and thus was entitled to preliminarily enjoin former sales representative from soliciting business from customers with whom he had developed relationship with on company's behalf; good will was important to company's business, and company expended significant sums to develop good will. | Is goodwill generated by repeat business with existing customers? | 00439I.docx | LEGALEASE-00116671- LEGALEASE-00116673 | Condensed, SA, Sub | 0.71 | 0 | 1 | | 1 | 1 |
| 21224 | Petty v. Chrysler Corp., 343 Ill. App. 3d 815 | 192+1 | "Goodwill is the value of a business or practice that exceeds the combined value of the physical assets." * In re Marriage of Talty, 166 Ill.2d 232, 238, 209 Ill.Dec. 790, 652 N.E.2d 330 (1995). Courts have also defined goodwill as the advantages that a business enjoys over its competitors as a result of its name, location and owner's reputation. Russell v. Jim Russell Supply, Inc., 200 Ill.App.3d 855, 862-63, 146 Ill.Dec. 152, 558 N.E.2d 115 (1990). Not all businesses possess goodwill, which is an intangible asset. Russell, 200 Ill.App.3d at 863, 146 Ill.Dec. 152, 558 N.E.2d 115. | Goodwill is the value of a business or practice that exceeds the combined value of the physical assets. | Do all businesses have goodwill? | 00440S.docx | LEGALEASE-00116591- LEGALEASE-00116592 | Condensed, SA | 0.82 | 0 | 1 | 0 | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21225 | Androscoggin Cty. Sav. Bank v. Campbell, 282 A.2d 858 | 172H+520 | "The commercial bank is one which receives deposits, makes discounts, and issues notes. They are lenders and borrowers. They may or may not pay interest on deposits subject to check. The law gives certain powers to commercial banks which are not invested in savings banks. Business banks are chartered by both the state and the nation. They may now serve as guardian, receiver, trustee. The depositor pays his debts by orders upon the bank in the form of checks. The savings banks adopt plans to restrain the depositor from making sudden calls for any considerable amount of his deposit. From a social point of view, the commercial bank plays an important part in supplementing the currency and investments are as a rule of a more permanent character than those of commercial banks." | Actions of mutual savings bank in amending its bylaws to permit a classification of deposit accounts subject to withdrawal by check and in permitting its depositors and customers to open such accounts were not authorized by statute. 9 M.R.S.A. SS 401 et seq, 441-732, 443, 477, subd. 5, 511, 564. | "What constitutes a commercial bank, under the law?" | Banks and banking - Memo 16 - JS.docx | ROSS-003298077-ROSS-003298078 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 21226 | Paige v. Town Plan & Zoning Comm'n of Town of Fairfield, 235 Conn. 448 | 414+1383(5) | Finally, the defendants argue that this case is controlled by Red Hill Coalition, Inc. v. Town Plan & Zoning Commission, supra, 212 Conn. 727, 563 A.2d 1347. In that case, we held that prime agricultural land is not a natural resource under ".22a"19. Prime agricultural land is different from what is claimed to be a natural resource in this case. Prime agricultural land is a subcategory of land subject to human alteration that is kept barren of plant and animal life that would otherwise eventually live on it through natural succession. Agricultural land is not naturally occurring. Consequently, the concerns expressed by this court in Red Hill Coalition, Inc., that including prime agricultural land within the reach of the act would lead to irrational results do not apply here. | Even if trees and wildlife had no economic value, town plan and zoning commission deciding whether to grant request to subdivide, excavate, and fill property was obligated to consider whether proposed development would unreasonably destroy natural resource and whether any feasible and prudent alternatives existed. C.G.S.A. S 22a-19. | Is prime agricultural land considered a natural resource? | Environmental Law - Memo 25 - JS.docx | ROSS-003284811-ROSS-003284813 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 21227 | City of Oakland v. Oakland Raiders, 31 Cal. 3d 656 | 148+13 | Citing the foregoing discussion, the appellate court in Sutfin v. State of California (1968) 261 Cal.App.2d 50, 53, 67 Cal.Rptr. 665, reversed a lower court judgment in holding that under the forerunner to article I, section 19 of the California Constitution the taking or damaging of private property for public use was compensable, "whether said property be real or personal." (Fn. omitted.) Because condemnation and inverse condemnation, in our view, are merely different manifestations of the same governmental power, with correlative duties imposed upon public entities by the same constitutional provisions, both the Sutfin holding and Professor Van Alstyne's discussion are pertinent to the case before us. | So long as adequate controls are imposed upon retransfer of condemned property to private ownership, "public purpose" which justifies taking may be so served and protected. West's Ann.C.C.P. SS 1240.050, 1240.120(b). | Can condemnation and inverse condemnation be identified as different forms of the same limitation on governmental power? | Eminent Domain - Memo 7 - AKA.doc | LEGALEASE-00002469-LEGALEASE-00002470 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 21228 | United States v. Bengali, 11 F.3d 1207 | 350H+976 | In Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Court stated:[T]here are two essential elements of a Hobbs Act crime: interference with commerce, and extortion. Both elements have to be charged. Neither is surplusage and neither can be treated as surplusage. The charge that interstate commerce is affected is critical since the federal government's jurisdiction of this crime rests only on that interference.Id. at 218, 80 S.Ct. at 273"74. Later in Stirone, the court made it clear that the Hobbs Act is not to be narrowly applied. "That Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." Id. at 215, 80 S.Ct. at 272. | Two level increase for Hobbs Act defendant's leadership role in extortion offense was supported by evidence that defendant made original contacts with victim, made most of the threatening statements, and collected the money. U.S.S.G. S 3B1.1, 18 U.S.C.A.App. | Is the Hobbs Act to be narrowly applied? | Extortion - Memo 5 - RK.docx | ROSS-003298899-ROSS-003298900 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21229 | State v. Foret,188 So. 3d 154 | 217+1022 | It is well settled that legislatures can pass laws that limit a person's rights based on past criminal convictions. In Hawker v. People of New York, the United States Supreme Court held that there was no ex post facto issue when a state statute prohibited the practice of medicine by a person with a past conviction, even though this consequence was not contemplated at the time of the conviction. Subsequent cases have held that other such consequences, including mandatory deportation, present no ex post facto problem. Notwithstanding the fact that immigration consequences are broadly deemed as "collateral" to a conviction, the Supreme Court's 2001 decision in I.N.S. v. St. Cyr recognized that changes in the consequences of a conviction can constitute a "new legal consequence" that cannot be imposed retroactively without clear congressional intent. | Sledge Jeansonne Louisiana Insurance Fraud Prevention Act and Louisiana Unfair Trade Practice and Consumer Protection Act (LUPTA) operated prospectively only, and therefore could not be retroactively applied to conduct occurring prior to the effective dates of statutes; Sledge Jeansonne Act created statutory right and authority of Louisiana Attorney General to bring civil action to collect damages and penalties against individuals who committed insurance fraud and was thus, clearly substantive law, legislature did not expressly provide that either statute applied retroactively, and conduct regulated by statutes was criminal conduct. LSA-R.S. 22:1931 et seq; LSA-R.S. 51:1401 et seq. | Can a persons rights be limited based on his past convictions? | Convicts- Memo 01 - JS.docx | ROSS-003288204-ROSS-003288205 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 21230 | Team Enterprises v. W. Inv. Real Estate Tr., 647 F.3d 901 | 149E+445(1) | Even though the action causing the entry of pollutants does not have to be intentional, the entry must be "unauthorized" to support a cause of action for trespass. Id. at 681; see also Cnty. of Santa Clara v. Atl. Richfield Co., 137 Cal.App.4th 292, 40 Cal.Rptr.3d 313, 333 (2006) ( "Where the owner of property voluntarily places a product on the property and the product turns out to be hazardous, the owner cannot prosecute a trespass cause of action against the manufacturer of that product because the owner has consented to the entry of the product onto the land."). Team, however, did not present any evidence that either the Rescue 800 or the PCE entered the property without Team's consent. Moreover, Team's employees contaminated the soil by pouring the wastewater down the drain, and "one cannot commit an actionable interference with one's own possessory right." Cappogeannis, 15 Cal.Rptr.2d at 799. Because Team's contamination of the land was not a trespass against itself, Street may not be held liable for assisting in a trespass. | Under useful product doctrine, manufacturer of "filter-and-still" machine for filtering and recycling water lacked requisite intent to qualify as "arranger," for purposes of dry cleaning store operator's contribution action under Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA); manufacturer's intent was not inferable from machine's design, even if machine when used by operator generated wastewater containing dissolved perchlorethylene (PCE) such that operator had not choice but to dispose of wastewater by pouring it into sewer, as self-evident purpose of machine was to recover and recycle usable PCE that would otherwise be discarded. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, S 107(a)(3), 42 U.S.C.A. S 9607(a)(3). | Should the action causing the entry of pollutants have to be intentional to cause a trespass? | 000754.docx | LEGALEASE-00117476-LEGALEASE-00117477 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 21231 | Schuman v. Greenbelt Homes, 212 Md. App. 451 | 233+1076 | Schuman also argues that the smoke entering his unit amounted to a trespass. A trespass is "an intentional or negligent intrusion upon or to the possessory interest in property of another." Bittner v. Huth, 162 Md.App. 745, 752, 876 A.2d 157 (2005). Thus, there must be an interference with the owner's possession of the property. | Assuming existence of a landlord-tenant relationship between cooperative housing association and its members, association's failure to stop unit owner's neighbor from smoking did not go to the essence of association's contractual obligations, and thus did not breach any implied covenant of quiet enjoyment, where neighbor's smoking cigarettes on his outdoor patio for up to an hour and a half each evening did not amount to a nuisance. | Is an intrusion on a party's right or interest in exclusive possession of his or her property considered a trespass? | Trespass - Memo 30 - RK.docx | LEGALEASE-00004269-LEGALEASE-00004271 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21232 | Khan v. Shiley Inc., 217 Cal. App. 3d 848 | 313A+155 | "Products liability is the name currently given to the area of the law involving the liability of those who supply goods or products for the use of others to purchasers, users, and bystanders for losses of various kinds resulting from so-called defects in those products."(Prosser & Keeton, Torts (5th ed. 1984) " 95, p. 677, emphasis added.) Possible theories of recovery include strict liability in tort, negligence (i.e., in creating or failing to discover a flaw, in failing to warn or failing adequately to warn, or in the sale of a defectively designed product), and breach of warranty (express and implied). | Plaintiff who alleges product is defective must prove that product has malfunctioned to establish liability for injury caused by defect; owner of product, functioning as intended but containing inherent defect which may cause product to fail in future, does not have action against manufacturer. | What is products liability law? | 000639.docx | LEGALEASE-00117881-LEGALEASE-00117882 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 21233 | Al-Salamah Arabian Agencies Co. v. Reece, 673 F. Supp. 748 | 83+80.5 | Courts interpret the Arbitration Act broadly to encourage arbitration and to relieve congestion in the courts. See Seaboard Coastline Railroad Co. v. National Rail Passenger Corp., 554 F.2d 657 (5th Cir.1977). In view of that policy, the Fourth Circuit Court of Appeals has ruled that any "contract made by an American corporation with a foreign one, upon which it remains liable, and of which it is in fact both an essential party and the real beneficiary involves commerce with a foreign country." Reynolds Jamaica Mines v. La Societe Navale Caennaise, 239 F.2d 689, 693 (4th Cir.1956).A later district court opinion interpreted the Reynolds' definition of foreign commerce to include contracts between American and foreign corporations that are negotiated in a foreign country and are to be performed in that country. See El Hoss Engineering and Transportation Co. v. American Independent Oil Co., 183 F.Supp. 394 (S.D.N.Y.1960), rev'd on other grounds, 289 F.2d 346 (2d Cir.1961). Based on this precedent, the court concludes that the contract in this action is covered by the Arbitration Act. | Marketing services contract entered into in Saudi Arabia concerning sale and renewal of insurance policies in Saudi Arabia involved foreign commerce, and hence, was covered by Arbitration Act. 9 U.S.C.A. 5 1 et seq. | What is the policy behind the Federal Arbitration Act? | 001150.docx | LEGALEASE-00118387-LEGALEASE-00118388 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21234 | Barton v. Industrial Com'n of State of Utah, 723 P.2d 392 | 413+212 | First, the word "firm" has traditionally been held to include partnerships. Black's Law Dictionary 578 (5th ed. 1979), for example, defines "firm" as a "business entity or enterprise," an "unincorporated business," or a "partnership of two or more persons." In Bufton v. Hoseley, 236 Or. 12, 386 P.2d 471 (1963), the defendants claimed that the plaintiff's complaint was faulty in referring to a firm rather than to a partnership.The court found the allegations of the complaint sufficient, noting that the word "firm" commonly denotes a partnership. Id. 386 P.2d at 472. Similarly, in Ramirez v. United States, 514 F.Supp. 759 (D.P.R.1981), the court was faced with interpreting the word "firm" as it appeared in the Food Stamp Act. The court stated, "[W]e are dealing with a conventional term which means name, style or title under which a company transacts business and which is synonymous with company, house, commercial house, partnership and concern." Id. at 764. See also Wood v. Universal Creditors Ass'n, 112 Ga.App. 203, 144 S.E.2d 462 (1965); Firestone Tire & Rubber Co. v. Webb, 207 Ark. 820, 182 S.W.2d 941 (1944) (word "firm" is synonymous with partnership); Thomas-Bonner Co. v. Hooven, Owens & Rentschler Co., 284 F. 377 (D.Ohio 1922) ("firm" in its common acceptance implies partnership). | Family partnership ranch with five or fewer nonfamily employees was "firm" within meaning of statute exempting such agricultural employers from responsibility for workers' compensation benefits. U.C.A.1953, 35-1-42(2)(a, b). | Does the word firm mean partnership? | Partnership - Memo 36 - JS_62235.docx | ROSS-003278789-ROSS-003278790 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21235 | Murrell v. Murrell, 33 La.Ann. 1233 | 289+412 | Plaintiffs contend, and defendants deny, that it was a universal partnership. In our Civil Code, Art. 2829, a universal partnership is defined to be a contract by which the parties agree to make a common stock of all the property they respectively possess. | A partnership not embracing all the property of each partner is not a universal partnership. | What are the elements of a universal partnership? | 001853.docx | LEGALEASE-00118777-LEGALEASE-00118778 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21236 | Sadlier v. Payne, 974 F. Supp. 1411 | 78+108B(5) | Conceptually, constructive treason "is an attempt to establish treason by circumstantiality, and not by the simple genuine letter of the law, and therefore is highly dangerous to public freedom." 87 C.J.S. Treason " 1 (1954). This doctrine developed under English law where it was made a crime to "compass or imagine the Death of ... the King." Steffan v. Perry, 41 F.3d 677, 713 (D.C.Cir.1994) (Wald, J. dissenting) (quoting Statute of Treasons, 25 Edw. III). "This became the crime of "constructive treason," which was enforced against supposed "compassers' and "imaginers' even when no overt act other than mere words or agreement corroborated an intent to carry out the regicide." Id. (citations omitted). This doctrine, however, is expressly repudiated by the Constitution, which states that "treason against the United States consists only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort... [and that] [n]o person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court." U.S. Const. art. III, " 3. By its express language, the Constitution limits conviction for the crime of treason to particular overt acts. No other form of treason has been recognized. Even though the plaintiff has no standing to enforce the criminal law in a private civil action, the plaintiff's claim of constructive treason is contrary to the express words of the Constitution and, therefore, has no merit whatsoever. | Inmate who sued state judge, state prosecutor and defense attorney for civil rights and constitutional violations and "constructive treason" had to show that his convictions or sentences were reversed on direct appeal, expunged by executive order, declared invalid by state tribunal, or called into question by federal court's issuance of writ of habeas corpus, as claims were based on constitutional violations that occurred in relation to underlying state criminal convictions. 42 U.S.C.A. 1983. | Will an attempt to establish treason by circumstantiality constitute constructive treason? | 001634.docx | LEGALEASE-00119068-LEGALEASE-00119069 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21237 | Musson v. Lake, 45 U.S. 262 | 8.30E+11 | There is, however, another question, entirely independent of the statute and the decision of the Supreme Court of Louisiana, which may be decisive of the case before this court; and that question is, Whether the contract between the holder and indorser of the bill in controversy is to be governed by the law of Louisiana, where the bill was payable, or by the law of Mississippi, where it was drawn and indorsed. The place where the contract is to be performed is to govern the liabilities of the person who has undertaken to perform it. The acceptors resided at New Orleans; they became parties to the bill by accepting it there. So far, therefore, as their liabilities were concerned, they were governed by the law of Louisiana But the drawers and indorsers resided in Mississippi; the bill was drawn and indorsed there; and their liabilities, if any, accrued there. The undertaking of the defendant was, as before stated, that the drawers should pay the bill; and that if the holder, after using due diligence, failed to obtain payment from them, he would pay it, with interest and damages. This part of the contract was, by the agreement of the parties, to be performed in Mississippi, where the suit was brought, and is now depending. The construction of the contract, and the diligence necessary to be used by the plaintiffs to entitle them to a recovery, must, therefore, be governed by the laws of the latter State. Story on Bills, " 366; 4 Peters, 123; 2 Kent's Common. 459; 13 Mass. R. 4; 12 Wend. R. 439; Story on Bills, " 76; 4 Johns. R. 119; 12 Johns. R. 142; 5 East, 124; 3 Mass. R. 81; 3 Cowen, 154; 1 Cowen, 107; 5 Cranch, 298. | Liabilities of drawers and endorsers of bill of exchange were governed by law of state where bill was drawn and endorsed. | Does the law of the place of performance of a contract govern the contract and the liabilities of the person contracting? | 13343.docx | LEGALEASE-00081407-LEGALEASE-00081408 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 21238 | State v. Automatic Merchandisers of Am., 64 Wis. 2d 659 | 29T+161 | A line of decisions of this court relating to what constitutes a "public utility" is applicable to this situation. The definition of "public utility" is found in Sec. 196.01(1), Stats. and basically provides that an enterprise is a public utility if it involves the furnishing of any of the listed services "to the public." The cases recognize the difficulty of defining "public" and the necessity of looking to each case's own peculiar facts and circumstances. Cawker v. Meyer (1911), 147 Wis. 320, 326, 133 N.W. 157. The cases recognize that the number of people involved is not controlling and that "the public" may be only one person. Ford Hydro-Electric Co. v. Town of Aurora (1932), 206 Wis. 489, 240 N.W. 418. The important factor is whether there is some particular relationship between the parties. Cawker v. Meyer, supra, 147 Wis. at p. 326, 133 N.W. 157 | Use of the term "the public," in statute which prohibits the making of any deceptive or misleading representation to the public in connection with the sale of a product does not mean that the statement must be made to a large audience, as in some situations, one person may constitute the public. W.S.A. 100.18(1). | Can a single customer be a public utility? | Public utilities - Memo 27 - RM.docx | LEGALEASE-00008206-LEGALEASE-00008207 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 21239 | Usibelli Coal Mine v. United States, 54 Fed. Cl. 373 | 220+4958 | Viewed in terms of the twin types of claims that can arise under the Tucker Act, such refund suits fit snugly within the category of so-called "illegal exaction cases," defined by the Court of Claims in its seminal decision in Eastport Steamship Corp. v. United States, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967), as "those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Indeed, Eastport and other cases specifically classify refund suits as involving such illegal exaction claims. 372 F.2d at 1007 (noting "tax refund suits" are among "those in which "the Government has the citizens's money in its pocket" "). Comparatively, then, both in its common law origins, as well as under Tucker Act jurisprudence, a tax refund suit does not involve a demand for damages based on the existence of some money-mandating statute or Constitutional provision. See Economy Plumbing & Heating Co., Inc. v. United States, 200 Ct.Cl. 31, 470 F.2d 585, 587"88 (1972). The latter type of "money-mandating" case, of course, involves the second major category of claim that can arise under the Tucker Act, those in which a "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Eastport, 372 F.2d at 1007. | A taxpayer obtaining a money judgment in a suit seeking monetary damages stemming from its payment of an excise tax found violative of the Export Clause of the Constitution is not entitled to award of prejudgment interest under statute authorizing such award when judgment is rendered "for any overpayment in respect of any internal-revenue tax," as a suit for damages arising out of the violation of the Export Clause is not a suit for an "overpayment" within the meaning of the statute. U.S.C.A. Const. Art. 1, S 9, cl. 5; 28 U.S.C.A. S 2411. | "What is an ""illegal exaction action""?" | 002449.docx | LEGALEASE-00119923-LEGALEASE-00119925 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 21240 | State v. Lee, 196 Miss. 311 | 361+1132 | The rule of construction generally applicable to statutes is that, unless the contrary sufficiently appears, words in a statute are to be interpreted according to their usual and most common sense, and for this usual and most common sense, the courts may, as a proper course, resort to the standard dictionaries in general use among the people; and doing so we find the definition of daughter as commonly used to be as follows: "The female offspring of a man or woman; an immediate female descendant." Or turning to the law dictionaries we find: 1 Bouv. Law Dict., Rawle's Third Revision, p. 757: "Daughter, a female child; an immediate female descendant." Black's Law Dictionary, "Daughter, an immediate female descendant." See, also, 17 C.J. p. 1131; 25 C.J.S., Daughter, p. 1005. In considering what was charged in an indictment by the use of the word daughter it was said in People v. Kaiser, 119 Cal. 456, 51 P. 702, 703, that "the word "daughter" means, and is generally understood to mean, "an immediate female descendant," and not an adopted daughter, a stepdaughter or a daughter-in-law." | The meaning of "daughter" as commonly used is the female offspring of a man or woman, an immediate female descendant. | How is the term daughter legally described? | 003205.docx | LEGALEASE-00120562-LEGALEASE-00120563 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21241 | Gaynor v. Williams, 366 So.2d 1243 | 217+2278(9) | Furthermore, it does not matter that the ownership of the apartment house was not Gaynor's only or main occupation. See Wiley v. Travelers Ins. Co., 534 P.2d 1293 (Okl.1974); Stern v. Ins. Co. of North America, 62 N.J. 582, 303 A.2d 883 (1973). The only case cited by the appellant for the contrary proposition, Southern Guaranty Ins. Co. v. Duncan, 131 Ga.App. 761, 206 S.E.2d 672 (1974), is not persuasive and is, in any case, meaningfully distinguishable. The policy involved there defined "business" as a "trade, profession or occupation, including farming . . ." The policy involved in this case, however, states only that the term "business" includes trade, profession or occupation." Since the word "includes" is a term of expansion, Jacksonville Terminal Co. v. Blanshard, 77 Fla. 855, 82 So. 300 (1919); Greyhound Lines, Inc. v. City of Chicago, 24 Ill.App.3d 718, 321 N.E.2d 293, 302 (1974), the definition here must be read to mean that business includes, but is not limited to the "trade, profession or occupation" of the insured. Both the "common understanding of the term . . . ," Braley v. American Home Assurance Co., 354 So.2d 904, 907 (Fla. 2d DCA 1978), cert. denied, 359 So.2d 1210 (Fla 1978), and the decided cases show that Gaynor's "business pursuits" included the activity involved here. | Ownership of apartment complex, even though it was not insured's only or main occupation, constituted "business pursuit" within meaning of policy exclusion in umbrella personal liability policy, and policy therefore did not provide coverage for accident arising out of operation of apartment complex. | "Can business be defined to include a trade, profession or occupation?" | Partnership - Memo 87 - RK.docx | ROSS-003284763-ROSS-003284764 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21242 | Mangum v. State, 64 So. 3d 503 | 210+541 | An indictment must contain all the essential elements of the crime charged in order for a defendant to be properly convicted. Jackson (" 23). The essential elements of the crime of murder are that: "(1) the defendant killed the victim; (2) without authority of law; and (3) with deliberate design to effect his death." Brown v. State, 965 So.2d 1023, 1030 (" 27) (Miss.2007). Mangum's 1980 indictment states: The Grand Jurors for the State of Mississippi, taken from the body of good and lawful persons of the [First] Judicial District of Hinds County, in the State of Mississippi ... upon their oaths present: That Gerald Lee Mangum in said District, County[,] and State on the 18th day of July, A.D., 1980[,] did then and there willfully, unlawfully, feloniously[,] and of his malice aforethought kill and murder John Edgar Simmons[,] a human being[,] contrary to the form of the statute in such cases and provided, and against the peace and dignity of the State of Mississippi.Mangum argues that the indictment was insufficient as it excluded an essential element of the crime of murder. Mangum claims that it should have also included the phrase, "not in necessary self-defense." | Indictment must contain all the essential elements of the crime charged in order for a defendant to be properly convicted. | Is killing without the authority of law an element of murder? | Homicide - Memo 103 - RK.docx | LEGALEASE-00010422-LEGALEASE-00010423 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | 1 |
| 21243 | Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 | 92+4372 | Under the balancing approach outlined in Mathews, some administrative procedure for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding of essential services. The customer's interest is self-evident. Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety. And the risk of an erroneous deprivation, given the necessary reliance on computers, is not insubstantial. | Final notice contained in municipal utility's bills, stating that payment was overdue and that service would be discontinued if payment was not made by a certain date, was not reasonably calculated to inform customers of availability of procedure forprotesting proposed termination of utility service as unjustified, and thus deprived customers of notice to which they were entitled under the due process clause. U.S.C.A.Const. Amend. 14. | Is utility service a necessity of modern life? | | 003519.docx | LEGALEASE-00120891-LEGALEASE-00120892 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 21244 | State v. Steele, 224 Neb. 476 | 257A+439.1 | The statute involved in Hartman required that the Public Service Commission have a decision within 30 days of a hearing. The decision at issue in Hartman was not on file at the expiration of the 30"day period. There, we held that the 30"day limit was not a mandate, but a directive. The language of the statute provides that except for a showing of good cause, "a decision of the commission shall be made and filed within thirty days after completion of the hearing or after submission of affidavits in nonhearing proceedings." (Emphasis supplied.) See Neb.Rev.Stat. " 75"128 (Reissue 1986). | Defendant, who was acquitted by reason of insanity in prosecution for possession of short shotgun and being felon in possession of firearm and who was committed to mental hospital for 90-day evaluation period, was not prejudiced by failure of mental hospital and trial court to provide and review report by examining psychiatrist ten days prior to expiration of 90-day evaluation period or by failure of trial court to hold evidentiary hearing prior to expiration of 90-day evaluation period; statute setting forth time limits for evaluation of defendant was directory and not mandatory. Neb.Rev.St. §§ 29-3701, 29-3702. | Should the Public Service Commission have a decision for an issue within 30 days of a hearing? | Public Utilities - Memo 62 - AM.docx | ROSS-003285487-ROSS-003285488 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 21245 | Aetna Life Ins. Co. v. McLaughlin, 370 S.W.2d 229 | 388+194(11) | We are of the view there was no error in overruling the objection made to the charge. The objection was that it failed to state deceased's understanding of the nature and probable consequences of his acts did not have to be rational. The definition as given made no requirement that his understanding be a rational one. In the light of the evidence adduced the court was seeking to find out if deceased purposed to take his life. Even though a person be insane to come within the exclusion of the policy he must have a purpose to take his life. Suicide is intentional self-destruction. Under insanity, no issue of insanity, apart from intoxication, was raised. The evidence does show deceased drank whiskey almost continuously from 7 p. m. Friday until his death early Sunday morning. It shows he was drunk. Dr. Crain testified a person could drink to the extent he could not form an intention to take his life. There was, we think, sufficient evidence to raise the issue of temporary insanity produced by the drinking of intoxicants. We are also of the view that if he was so drunk he could form no intention to take his life, then he did not commit suicide even if he walked in front of the bus, and we think it was tried on such theory. In any event, the charge given was sufficient to inquire if deceased purposed to take his life and there is no suggestion that his understanding of the nature and probable consequences of his act must be a rational one. | Instruction, in action on group accidental death policy excepting death resulting from suicide, that suicide is intentional self-destruction and that one may commit suicide although insane or intoxicated so long as act is result of exercise of his own will in any degree, and he understands nature and probable consequences of his act, was not objectionable on ground that it failed to state that insured's understanding of nature and probable consequences of his acts did not have to be rational or on ground that it was comment on weight of evidence. | Is suicide self-destruction? | Suicide - Memo 23 - AKA.docx | ROSS-003287534-ROSS-003287536 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21246 | Richards v. Harper, 864 F.2d 85 | 334+21 | Even under our liberal standard for evaluating the dismissal of a pro se action, the court concluded correctly that Richards' vague and conclusory allegations were insufficient. See Mann v. City of Tucson, Dept. of Police, 782 F.2d 790, 793 (9th Cir.1986) (charges beyond negligence were entirely conclusory and unsupported by facts alleged in complaint). In Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.1982), we dismissed a pro se civil rights complaint because it lacked specific factual allegations showing the defendants' participation in the alleged discriminatory practice. That occurred here. We do not supply essential elements of a claim that were not initially pleaded. Soffer v. City of Costa Mesa, 798 F.2d 361, 363 (9th Cir.1986); Ivey, 673 F.2d at 268. | Removal of civil case against state senator from state to federal court was proper, though senator was not served with process prior to removal and federal court did not issue new process; senator waived lack of process by making general appearance, filing responsive pleading without disputing personal jurisdiction, and not questioning lack of service in his brief on appeal. | Will courts supply essential elements of a claim that are not initially plead? | 022929.docx | LEGALEASE-00122115-LEGALEASE-00122116 | Condensed, SA, Sub | 0.52 | 0 | 1 | | 1 | 1 |
| 21247 | Browning v. Hickman, 235 W. Va. 640 | 30+3361 | A circuit court is vested with the authority to modify its own in limine rulings."Once a trial judge rules on a motion in limine, that ruling becomes the law of the case unless modified by a subsequent ruling of the court. A trial court is vested with the exclusive authority to determine when and to what extent an in limine order is to be modified." Syl. pt. 4, Tennant v. Marion Health Care Foundation, 194 W.Va. 97, 459 S.E.2d 374 (1995).Syl. Pt. 2, Adams v. Consolidated Rail Corp., 214 W.Va. 711, 591 S.E.2d 269 (2003). "[J]udges in ongoing proceedings normally have some latitude to revise their own earlier rulings." Tennant, 194 W.Va. at 113, 459 S.E.2d at 390. Moreover, as the United States Supreme Court has recognized, a pre-trial "ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in [a party's] proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." Luce v. United States, 469 U.S. 38, 41"42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) | A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard. | Is a pre-trial ruling subject to change when the case unfolds? | 024220.docx | LEGALEASE-00122042-LEGALEASE-00122043 | Condensed, SA | 0.87 | 0 | 1 | 0 | | 1 |
| 21248 | In re Fiedler, 2016 PA Super 3 | 30+3209 | A motion in limine is used before trial to obtain a ruling on the admissibility of evidence. Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc., 933 A.2d 664 (Pa.Super.2007). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." Parr v. Ford Motor Co., 109 A.3d 682, 690 (Pa.Super.2014), appeal denied, """ Pa. """", 123 A.3d 331 (2015). A trial court's decision to grant a motion in limine "is subject to an evidentiary abuse of discretion standard of review." Id. | A trial court's decision to grant a motion in limine is subject to an evidentiary abuse of discretion standard of review. | What is a motion in limine? | Pretrial Procedure - Memo 363 - RK.docx | ROSS-003309146-ROSS-003309147 | Condensed, SA | 0.8 | 0 | 1 | 0 | | 1 |
| 21249 | In re Estate of Gassmann, 2015 ND 188 | 30+3370 | A motion in limine is a procedural tool to ensure that potentially prejudicial evidentiary matters are not discussed in the presence of the jury. Williston Farm Equip., 504 N.W.2d at 550; Shark v. Thompson, 373 N.W.2d 859, 864 (N.D.1985). The pre-trial exclusion of evidence by a motion in limine, however, is a preliminary order regarding the admissibility of evidence and does not dispense with the need for the proponent of evidence to make an offer of proof as trial so the district court can consider the proffered evidence in the context of other evidence presented during trial. In re Rubey, 2013 ND 190, 838 N.W.2d 446; Nesvig v. Nesvig, 2006 ND 66, 712 N.W.2d 299; Williston Farm Equip., at 550. In the absence of an offer of proof about the substance of the excluded evidence, our review is limited. In Rubey; Williston Farm Equip., at 550. A self-represented litigant is held to the same procedural rules as litigants represented by counsel, and "we do not apply statutes or rules differently when a party is self-represented." Schwab v. Zajac, 2012 ND 239, 823 N.W.2d 737 (quoting Mills v. City of Grand Forks, 2012 ND 56, 813 N.W.2d 574). | A district court has discretion to balance the probative value of proffered evidence against unfair prejudice and other relevant dangers, and the Supreme Court reviews that determination under the abuse-of-discretion standard. Rules of Evid., Rule 403. | Is a pre-trial exclusion of evidence by a motion in limine considered a preliminary order regarding the admissibility of evidence? | 041169.docx | LEGALEASE-00124091-LEGALEASE-00124092 | Condensed, SA, Sub | 0.78 | 0 | 1 | | 1 | 1 |
| 21250 | Slater v. Farmland Mut. Ins. Co., 334 N.W.2d 728 | 13+61 | Fundamental to our tort law is that a cause of action accrues only when all the necessary elements have occurred. See, e.g., Giltner v. Stark, 252 N.W.2d 743, 745 (Iowa 1977); see also W. Prosser, Law of Torts " 30, at 143 (4th ed. 1971). In the present case, the injury did not occur until March 12, 1979, over two months after the effective date of section 517.5. Even if we assume, as the plaintiffs allege, that the defendant negligently inspected the cooperative before the effective date of the statute, the cause of action did not accrue until after the statute became effective. We have said: "There must be actual loss to the interest of another before a cause of action accrues. Generally, the wrong or negligence of the party charged gives in itself no right of action to anyone." Wolfswinkel v. Gesink, 180 N.W.2d 452, 456 (Iowa 1970); 65A C.J.S. Negligence " 175, at 306 (1966). In other words, a cause of action does not arise until the injury occurs. City of Ottumwa v. Nicholson, 161 Iowa 473, 479, 143 N.W. 439, 442 (1913); see also, 1 Am.Jur.2d Actions " 88, at 618 (1962). | A cause of action accrues only when all the necessary elements have occurred. | Must there be an actual loss to another for a cause of action? | Action - Memo # 345.docx | ROSS-003288162-ROSS-003288163 | Condensed, SA | 0.93 | 0 | 1 | 0 | | 1 |
| 21251 | Sourcecorp v. Norcutt, 229 Ariz. 270 | 266+1376 | Mosher said that "no general rule can be stated which will afford a test for equitable subrogation] in all cases." Id. at 468, 46 P.2d at 112. Instead, "[w]hether it is applicable or not depends upon the particular facts and circumstances of each case as it arises." Id., 46 P.2d at 112. Noting "the modern tendency" to extend the doctrine's use, id., 46 P.2d at 112, the Court also observed that. [A] mere volunteer, who has no rights to protect, may not claim the right of subrogation, for one who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation or an assignment of the debt, pays the debt of another, is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. | Fact that home purchasers had obtained title insurance, from which they allegedly could recoup their losses, did not preclude home purchasers, who paid off a mortgage loan on the home, from receiving equitable subrogation, as basis for priority over judgment lien which had not been discovered by the title insurer. | Does the application of the doctrine of equitable subrogation depend upon the particular facts and circumstances of each case? | 043841.docx | LEGALEASE-00125098-LEGALEASE-00125099 | Condensed, SA, Sub | 0.59 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21252 | In re Estate of Scott, 208 Ill. App. 3d 846 | 217+3513(4) | Rights to subrogation originated in equity, and they may now arise in common-law, or through statute or contract. (See Dworak v. Tempel (1959), 17 Ill.2d 181, 190-92, 161 N.E.2d 258.) Medical subrogation clauses in insurance contracts are generally enforceable; furthermore, if such a clause is enforceable, it is not common-law concepts of subrogation but the contract terms that control. See Spirek v. State Farm Mutual Automobile Insurance Co. (1978), 65 Ill.App.3d 440, 449, 21 Ill.Dec. 817, 382 N.E.2d 111. | Medical subrogation clauses in insurance contracts are generally enforceable; furthermore, if clause is enforceable, it is not common-law concepts of subrogation but contract terms that control. | Can a right of subrogation arise by statute or contract? | 044335.docx | LEGALEASE-00125228-LEGALEASE-00125229 | Condensed, SA | 0.62 | 0 | | 1 | 0 | 1 |
| 21253 | Am. Alternative Ins. Corp. v. Hudson Specialty Ins. Co., 938 F. Supp. 2d 908 | 217+3506(1) | Traditionally, the covenant of good faith and fair dealing arises from the agreement between the insured and the insurer. See Fireman's Fund Ins. Co. v. Maryland Cas. Co., 21 Cal.App.4th 1586, 1599, 26 Cal.Rptr.2d 762 (1994) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."). However, even without an underlying agreement, California law allows primary and excess insurers to recover from one another for their bad faith refusal to accept a reasonable settlement offer under the theory of equitable subrogation. Fireman's Fund Ins. Co. v. Maryland Cas. Co., 21 Cal.App.4th 1586, 26 Cal.Rptr.2d 762 (1994). Equitable subrogation allows the insurer to "stand[ ] in the shoes of the insured" and assert all claims against another insurer which the insured himself could have asserted. Id. at 1595*97, 26 Cal.Rptr.2d 762. "The doctrine of [equitable] subrogation is not a fixed and inflexible rule of law or of equity.... [It is] the natural consequence of a call for the application of justice and equity to particular situations." Han v. United States, 944 F.2d 526, 529 (9th Cir.1991) (quoting In re Estate of Johnson, 240 Cal.App.2d 742, 744*45, 50 Cal.Rptr. 147 (1966)). | Primary liability insurer could not maintain claim for equitable indemnity under California law against excess liability insurer, since there was no underlying contractual relationship between the parties and, consequently, no independent duty of good faith and fair dealing. | Is the doctrine of equitable subrogation the natural consequence of a call for the application of equity to particular situations? | Subrogation - Memo 985 - C - CAT.docx | ROSS-003284959-ROSS-003284961 | Condensed, SA | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21254 | Cmty. Tr. Bank of Mississippi v. First Nat. Bank of Clarksdale, 150 So. 3d 683 | 366+31(4) | When determining whether equitable subrogation should apply, "[t]he controlling consideration is the actual facts. The question is: What is natural justice under the actual facts of the situation?" Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923). Ultimately, determining whether equitable subrogation applies is done on a case-by-case basis. See Huff, 441 So.2d at 1319."The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles." Id. "The doctrine of subrogation is one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice. It does not rest on contract, but upon principles of natural equity." Prestridge, 95 So. at 838 (internal quotation omitted). Accordingly, although certain factors may weigh more heavily for or against subrogation, ultimately it is awarded only after carefully weighing all of the facts and circumstances and deciding what the fairest result would be. | To allow secondary lien holder subrogation over primary lien holder would be inequitable, regardless of whether secondary lien holder had actual knowledge of primary lien holder's lien; secondary lien holder was on constructive notice of the lien by virtue of its having been recorded in the office of the chancery clerk, allowing secondary lien holder to subrogate itself to the primary lien holder position would result in prejudice to primary lien holder not only by the amount of the new loan it would be placed behind, but also by the fact that loan involved two completely unknown and unanticipated parties, and secondary lien holder could file a claim against the title insurance company that insured against the risk of an intervening lien and negligently failed to inform anyone about it. West's A.M.C. S 89-5-7. | Does the determination of the applicability of equitable subrogation ultimately done on a case-by-case basis? | 044418.docx | LEGALEASE-00125271-LEGALEASE-00125272 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 21255 | Stevens v. United States, 21 Cl. Ct. 195 | 23+3.4(4) | The partnership alleges that the inconsistencies among the various determinations made at the agency level concerning the partnership's eligibility for subsidies indicates that the government did not use a fair and rational procedure for making its decisions. An agency's decision would be arbitrary or capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Assn. v. State Farm Mut., 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). | Denial of farm partnership's application for participation in wheat subsidy program was not arbitrary and capricious; partnership was not producer under relevant statutory and regulatory provisions, inasmuch as individual partners were not actively engaging in farming and did not share risks of producing a crop. Agricultural Adjustment Act of 1938, S 385, 7 U.S.C.A. S 1385; Agricultural Act of 1949, S 412, as amended, 7 U.S.C.A. S 1429. | When would an agencys decision be considered arbitrary and capricious? | Agriculture - Memo 13- SB.docx | ROSS-003327063-ROSS-003327064 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 21256 | Twp. of W. Windsor in Cty. of Mercer v. Nierenberg, 285 N.J. Super. 436 | 148+124 | The Legislature's experience with the Blighted Area Act (N.J.S.A. 40:55-21 to -21.13) is instructive. The Act was amended in 1967 to require that the value of property acquired in connection with the redevelopment of a blighted area "shall be ... no less than the value as of the date of the declaration of blight by the governing body upon report by [a] planning board." L. 1967, c. 218. This provision was carried over when the Act was repealed and is now contained in N.J.S.A. 20:3-38. In enacting this provision, the Legislature recognized that "the ordinary and natural consequence of a declaration of blight is to trigger a decline in value." Newark Housing Authority v. Ricciardi, 176 N.J.Super. 13, 18, 422 A.2d 78 (App.Div. "Because the alternative valuation date is based on the presumption that a blight declaration will adversely affect value, the Legislature did not impose on condemnees the obligation to prove that an actual decline in value between the declaration date and the taking date was in fact attributable to the declaration." Id. at 19, 422 A.2d 78. | In incorporating into Eminent Domain Act three alternative enumerated events for fixing date of valuation of condemned property, Legislature intended to protect condemnee from a substantial decrease in value of the property which is attributable to the cloud of condemnation caused by condemnor's acts; statute was designed also to protect the condemnor where value of the property substantially increased because of proposed governmental taking. N.J.S.A. 20:3-30. | What is the ordinary and natural consequence of a declaration of blight under the statutes eminent domain? | Eminent Domain - Memo 288 - GP.docx | ROSS-003300013-ROSS-003300014 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 21257 | Chew v. KPMG, LLP, 407 F. Supp. 2d 790 | 95+1.11(3) | In determining whether there was procedural unconscionability, courts look to whether a party lacked meaningful choice. Brennan, 198 F.Supp.2d at 382. Courts focus on evidence of high pressure or deceptive tactics, as well as on disparity in the bargaining power between the parties. Id. Inequality in bargaining power alone, however, is not sufficient to render an arbitration agreement unenforceable. Gold Jv. Deutsche Aktiengesellschaft, 365 F.3d [144], 150 [ (2d Cir.2004) ]. | A finding of procedural unconscionability under New York law requires the party seeking to avoid the contract to prove both procedural and substantive unconscionability. | How do courts determine procedural unconscionability? | 007235.docx | LEGALEASE-00127229-LEGALEASE-00127230 | Condensed | 0.65 | 0 | 1 | 0 | 0 | |
| 21258 | Moses v. Nat'l Bank, 149 U.S. 298 | 8.30E+58 | Every negotiable promissory note, even if not purporting to be "for value received," imports a consideration. Mandeville v. Welch, S Wheat. 277; Page v. Bank, 7 Wheat. 35; Townsend v. Derby, 3 Metc. (Mass.) 363. And the indorsement of such a note is itself prima facie evidence of having been made for value. Riddle v. Mandeville, S Cranch, 322, 332. | It is not essential to a bill of exchange that it should contain the words "for value received." | Do the words for value received import consideration to promissory note? | Bills and Notes - Memo 124 - BP.docx | LEGALEASE-00016792-LEGALEASE-00016793 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21259 | Okanogan Cty. v. Johnson, 156 Wash. 515 | 200+158 | Appellant seems to question the right of the county to try out the question of its title to the road in an action to abate a nuisance, but cites no authority in support of his position. Our statutes clearly recognize obstructions or encroachments upon public highways as being nuisances, and Rem. Comp. Stat. " 9920, provides:"The remedies against a public nuisance are indictment (or information), a civil action, or abatement. The remedy by indictment (or information) shall be as regulated and prescribed in this title. When a civil action for damage is resorted to the practice shall conform to the provisions of sections 943 to 946, supra."The right of a municipal corporation to bring such an action has been recognized by this court in Mason County v. McReavy, 84 Wash. 9, 145 P. 993.We see no reason why the appellant was in anywise limited in his defense by the form in which the action was brought, or how he would have been in any better position if the county had brought a suit to quiet title.Finding no error, the judgment is affirmed. | County may try question of its title to road in action to abate obstructions therein as public nuisance. Rem.Comp.Stat. S 9920. | Is right of a municipal corporation to bring action for a remedy against a public nuisance recognized? | 019293.docx | LEGALEASE-00126877-LEGALEASE-00126878 | Condensed, SA, Sub | 0.88 | 0 | 1 | | 1 | 1 |
| 21260 | Young v. Delaney, 647 A.2d 784 | 46H+160 | On August 14, 1990, appellant Young sent another memorandum to her former partners expressing her view that there was no agreement governing dissolution and that she would "proceed with [the] wind-down activities under the legal principles applicable in the absence of an agreement." Appellee Delaney wrote appellant a note asking for clarification. The following day, appellant sent another memorandum to her former partners explaining her position as follows:Our dissolution is governed by the Uniform Partnership Act, because we have no express partnership agreement setting up procedures for dissolution. We are proceeding with a wind-down of the partnership business, not a continuation. But the partnership is not terminated until the wind up is completed; that is, the business is "continued" for the limited purpose of winding down to termination. | Law partners' alleged agreement to annually distribute profits in excess of parties' annual draws pursuant to majority vote could be continued and effectuated during wind up phase of dissolved partnership, if partners so intended, where parties' agreement did not mention need for annual meetings of partners to determine distribution of excess profits. D.C.Code 1981, SS 41-132, 41-134(a)(1). | Is termination the last event which takes places in winding up a partnership? | 021933.docx | LEGALEASE-00127250-LEGALEASE-00127251 | Condensed, SA, Sub | 0.54 | 0 | 1 | | 1 | 1 |
| 21261 | Parry v. Administrators of Tulane Educational Fund, 828 So.2d 30 | 141E+1142 | A joint venture, in contrast, is defined as resulting from "the undertaking by two or more persons to combine their property or labor in the conduct of a particular line of trade or general business, for joint profits, creating the status of partnership." Villarrubia v. Roy, 162 So.2d 86, 89 (La.App. 4th Cir.1964).Similarly, a partnership is "a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial profit." La. C.C. art. 801. Comment (d) to that Article states:The partnership is an entrepreneurial association and, as such, all partners have ... the responsibility to share the risk among themselves. The phrase "at mutual risk" reflects this concept. Although certain other contracts, such as ... employment contracts, resemble the contract of partnership, the risk element of the partnership contract is one factor that distinguishes it from those other types. La. C.C. art. 2801, Official Comment (d). | University medical school faculty member's petition alleging that university was violating agreement with faculty members by not crediting money derived from work performed at hospital was a claim for additional compensation, not some other type of contractual claim, and thus three-year limitations period for compensation for services, not ten-year catch-all limitations period, applied to faculty members' class action lawsuit against university, although fees from patients for medical services had already been collected by university, since agreement was cooperative faculty group practice agreement, agreement did not create joint venture or partnership, and damages sought in petition consisted of "unpaid income." LSA-C.C. arts. 3494(1), 3499. | Is risk an important part of a partnership? | 021956.docx | LEGALEASE-00127275-LEGALEASE-00127276 | Condensed, SA, Sub | 0.26 | 0 | 1 | | 1 | 1 |
| 21262 | Mike Vaughn Custom Sports v. Piku, 15 F. Supp. 3d 735 | 231H+111 | The Piku defendants contend that a prerequisite to liability under Michigan common law for breach of the duty of loyalty is an employment relationship. The premise of that argument is flawed. *752 "Under principles of agency, an agent owes his principal a duty of good faith, loyalty, and fair dealing." H.J. Tucker & Associates, Inc. v. Allied Chucker & Eng'g Co., 234 Mich.App. 550, 574, 595 N.W.2d 176, 188 (1999) (citing Burton v. Burton, 332 Mich. 326, 337, 51 N.W.2d 297 (1952)). "The Michigan courts have held that an agent of a principal owes a fiduciary obligation to the principal not to appropriate the opportunity of the principal for his own benefit." United Rentals (N. Am.), Inc. v. Keizer, 202 F.Supp.2d 727, 743 (W.D.Mich.2002) (citing Central Cartage Co. v. Fewless, 232 Mich.App. 517, 591 N.W.2d 422, 426 (1998)). "[T]he law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal." Sweeney & Moore v. Chapman, 295 Mich. 360, 363, 294 N.W. 711, 712*713 (1940). "Although the parameters of this duty are not well-defined, some general rules exist. For example, an employee may take steps to establish a competing business while still employed without breaching the duty of loyalty, but the employee may not actually compete with his employer." In re Sullivan, 305 B.R. 809, 819 (Bankr.W.D.Mich.2004). | Under Michigan law, a claim for breach of fiduciary duty and breach of duty of loyalty is really the opposite of a misappropriation claim in that it is the agent or employee that withholds information or conceals activity of his own when the relationship gives rise to a duty to disclose, whereas the essence of a misappropriation claim is the theft of the employer's information. M.C.L.A. S 445.1908(1). | Can an agent act in a dual capacity in which his interest conflicts with his duty? | Principal and Agent - Memo 41 - BP.docx | ROSS-003286897-ROSS-003286898 | Condensed, SA, Sub | 0.71 | 0 | 1 | | 1 | 1 |
| 21263 | State v. Baca, 1997-NMSC-018 | 67+9(2) | In clarifying the modern purpose of the burglary statute, our Supreme Court noted that the traditional understanding of the purpose of the burglary statute "is to protect possessory rights with respect to structures and conveyances, and to define prohibited space." Id. 42 (internal quotation marks and citations omitted). The Court further clarified that fundamental "among the possessory interests that [the] burglary [statute] is designed to protect is the right to exclude." Id. 41. Implied within the right to exclude is "some notion of a privacyinterest." Id. 42. And it is that privacyinterest, "the feeling of violation and vulnerability that occurs when a burglar invades" a personal or prohibited space, that our burglarystatute is meant to protect against. Id. 43. | Defendant's entry into members-only retail store, as non-member, was not unauthorized entry, and he thus did not commit crime of burglary, even if he was aware that his companion who presented a membership card was also non-member, since there was no particular security or privacy interest at stake inside store that justified departure from presumption that retail store was open to public; defendant's entry into shopping area of store did not implicate feeling of violation and vulnerability associated with burglary, there was no unique security interest served by store's membership policies, and defendant's entry into store, albeit deceptive, granted him access to otherwise open shopping area. West's NMSA S 30-16-3. | What is the interest that the burglary statute protects? | 012693.docx | LEGALEASE-00128066-LEGALEASE-00128067 | Condensed, SA, Sub | 0.06 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21264 | N. Tr. Co. v. Consol. Elevator Co., 142 Minn. 132 | 366+35 | Appellant contends that the ant contends that the original holders of the storage receipts had a right of action against respondent for the conversion of their grain, and that it has become subrogated thereto. We are not here concerned with the rights of appellant as against the Grain Company. Those rights have been asserted in the action which resulted in the recovery of a judgment against it. If respondent is liable to appellant at all, liability must arise through some application of the rule whereby a surety who has made good the default of his principal is subrogated to the rights and remedies of creditors of the principal against third persons. The doctrine of subrogation is of purely equitable origin and nature. Whether a case for its application arises in favor of a surety as against third persons depends upon the balance of equities between them and the surety. It does not arise where the result would be prejudicial to innocent purchasers. The object of subrogation is to place the charge where it ought to rest by compelling the payment of the debt by him who ought in equity to pay it. It will never be enforced when the equities are equal or the rights not clear. The right may be modified or extinguished by contract. It expires if it appears that at the time of payment the purpose was not to keep the debt alive, but to extinguish it. When it is sought to enforce the right, something more must be shown than that defendant could have been compelled by the original creditor to pay the debt. While a surety may assert the right against one with whom he had no contractual relations, it must appear that the defendant participated, with notice, in the illegal act of the principal which served to bring about the loss. The right to recover from a third person does not stand on the same footing as the right to recover from the principal. As to the latter, the right is absolute-as to the former, it is conditional. These principles find support in the following cases: Ahern v. Freeman, 46 Minn. 156, 48 | Right of subrogation expires if it appears that at time of payment the purpose was not to keep debt alive, but to extinguish it; and, when it is sought to enforce the right, something more must be shown than that defendant could have been compelled by original creditor to pay debt. | Can a right of subrogation be modified or extinguished by contract? | 043436.docx | LEGALEASE-00127781-LEGALEASE-00127782 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21265 | Bombolaski v. First Nat. Bank, 55 Ind. App. 172 | 8.30E+104 | The question of negotiability or no negotiability of a note is one of construction or interpretation. It is determined by the nature and conditions of the instrument, when considered in the light of the law subject to which it is made. The quality and characteristics of a note as to its negotiability, or the want of it, attach at the time and at the place such note has its legal inception. When its obligations attach and it comes into legal being, it is either negotiable or non-negotiable, and the quality thus impressed upon it at its inception will not be altered, either by lapse of time or change of place. If a note is non-negotiable in the state or country where it has its legal origin, it cannot become negotiable because at a subsequent time it is carried or transmitted to another jurisdiction. Unquestionably the note in suit had its legal inception in Indiana, and if it is to be construed by the lex loci contractus, it was non-negotiable in this state, and it was therefore non-negotiable in Illinois or any other state. It was payable, however, in the state of Illinois, and if the lex loci solutions is to control its interpretation, it was negotiable in Indiana at the time of its inception, and it was therefore negotiable in Illinois or in any other state | As between the original parties, delivery involves not only a change of possession but also an intent that the note shall become effective. | Can a note become negotiable after it is transmitted to another jurisdiction? | 009342.docx | LEGALEASE-00128994-LEGALEASE-00128995 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21266 | Citizens Nat. Bank in Abilene v. Cattleman's Production Credit Ass'n., 617 S.W.2d 731 | 401+5.2 | The essential venue facts under Exception 12 are (1) that the nature of the suit is one for foreclosure of a lien, and (2) that the subject property to the lien is situated in the county of suit. Pierson v. Pierson, 136 Tex. 310, 150 S.W.2d 788, 790 (1941). The first is a question of law, to be determined from the allegations in plaintiff's petition. It is the "ultimate or dominant purpose" of the suit, as pleaded, that controls this determination. Pinkston v. Johnson, 578 S.W.2d 184, 185 (Tex.Civ.App. Waco 1979, no writ); Texaco, Inc. v. Gideon, 366 S.W.2d 628, 631 (Tex.Civ.App. Austin 1963, no writ). The second is a fact question which plaintiff must prove by extrinsic evidence at the venue hearing. Cactus Drilling Co. v. Ozark Gas & Oil Co., 546 S.W.2d 628, 630 (Tex.Civ.App. San Antonio 1977, writ dism.). In our case the second venue fact was proved by the parties' stipulation. For reversal, defendants contend that plaintiff's petition does not plead a suit for lien foreclosure | Plaintiff's suit did not fail to qualify as a suit for foreclosure of a mortgage or other lien under venue statute stating that suit for foreclosure or mortgage or other lien may be brought in county where property is situated on ground that plaintiff did not allege in his complaint that debtor was in default where plaintiff's petition was not attacked by special exceptions asserting its insufficiency on any ground to state a cause of action for lien foreclosure, plaintiff pleaded for judgment establishing a lien in its favor against property secured by debtor's indebtedness and for a declaration that plaintiff has present right of foreclosure under its deed of trust securing the payment of indebtedness upon default. Vernon's Ann.Civ.St. art. 1995, subd. 12. | Is the dominant purpose of a lawsuit a question of fact or a question of law? | 047485.docx | LEGALEASE-00128872-LEGALEASE-00128873 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 21267 | Kool Radiators v. Evans, 229 Ariz. 532 | 106+207.1 | As a threshold matter, "[w]e are obligated to examine our jurisdiction over an appeal...." Grand v. Nacchio, 214 Ariz. 9, 15, ¶ 12, 147 P.3d 763, 769 (App.2006) (citing Cordova v. City of Tucson, 15 Ariz.App. 469, 470, 489 P.2d 727, 728 (1971)).We may resolve only those appeals authorized by statute. Cordova, 15 Ariz.App. at 470, 489 P.2d at 728 (citing Ginn v. Superior Court (Molloy), 1 Ariz.App. 455, 404 P.2d 721 (1965)). KRI challenges the court's dismissal of its amended complaint without prejudice, which is not a final, appealable order. McMurray v. Dream Catcher USA, Inc., 220 Ariz. 71, 74, " 4, 202 P.3d 536, 539 (App.2009) (citing L.B. Nelson Corp. of Tucson v. W. Am. Fin. Corp., 150 Ariz. 211, 217, 722 P.2d 379, 385 (App.1986)); Grand, 214 Ariz. at 15, " 12, 147 P.3d at 769 (citing R.L. Harris & Co. v. Houck, 22 Ariz. 340, 341, 197 P. 575, 575 (1921)); see also Ariz.Rev.Stat. ("A.R.S.") section 12²2101 (West 2012) (identifying appealable judgments and orders). As a result, we cannot examine the merits of the dismissal on appeal. | Although the Court of Appeals cannot invoke its appellate jurisdiction to review an order awarding attorney fees entered with a dismissal without prejudice, it can invoke its special action jurisdiction to review a challenge to such an order. A.R.S. S 12-120.21(A)(4); 17B A.R.S. Special Actions Rules of Proc., Rule 1. | Is a court obligated to examine its jurisdiction over an appeal? | 008242.docx | LEGALEASE-00129466-LEGALEASE-00129467 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21268 | Mazurek v. Great Am. Ins. Co., 284 Conn. 16 | 30+80(6) | "Neither the parties nor the trial court, however, can confer jurisdiction upon [an appellate] court." Ebenstein & Ebenstein, P.C. v. Smith Thibault Corp., 20 Conn.App. 23, 25, 563 A.2d 1044 (1989). The right of appeal "is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met." State v. Curcio, 191 Conn. 27, 30, 463 A.2d 566 (1983). | Partial summary judgment for property owner that disposed of all claims except negligent employment of incompetent or untrustworthy contractor did not create a final judgment from which injured worker could appeal, where parties agreed that injured worker withdraw remaining claim, which was sanctioned by the trial court, in order to create an artificial final judgment to the effect that worker merely put remaining claims on hold pending appeal. C.G.S.A. SS 51-197a, 52-263; Practice Book 1998, S 61-1. | Can a trial court confer jurisdiction upon an appellate court? | Appeal and error - Memo 71 - RK.docx | LEGALEASE-00019050-LEGALEASE-00019051 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21269 | Orenic v. Illinois State Labor Relations Bd., 127 Ill. 2d 453 | 231H+1109 | Carlson as Decisive PrecedentRather tentatively, the four chief judges assert in their brief that our decision in County of Kane v. Carlson (1987), 116 Ill.2d 186, 107 Ill. Dec. 569, 507 N.E.2d 482, "at least arguably" resolved the issues raised in the present cause and that we "could" find in their favor on grounds of res judicata. In Carlson, we held that, for purposes of the Act, a circuit court clerk rather than a chiefjudge was "the" employer of his deputy clerks. (116 Ill.2d at 200, 107Ill. Dec. 569, 507 N.E.2d 482.) In that case, the County of Kane had already conceded that it was not "the" employer of the deputy clerks. (116 Ill.2d at 200, 107 Ill.Dec. 569, 507 N.E.2d 482.) After our opinion was filed, the circuit court clerk moved that we recall our mandate and issue a revised mandate specifically determining that he was his deputy clerks' sole employer. We then entered an order on April 27,1987, denying the motion and stating: "The court resolved the question raised in this motion at page 6 of the slip opinion in this cause." That page contained the holding that a circuit court clerk was the employer of his deputy clerks. See Carlson, 116 Ill.2d at 200, 107 Ill. Dec. 569, 507 N.E.2d 482. | State Labor Relations Board cannot consider counties to be joint employers of courts nonjudicial employees for purposes of collective bargaining under State Public Labor Relations Act, in that state, personified by chief judge of each circuit, is sole employer of all court employees; save for setting and paying salaries and providing facilities, subject to ultimate court power, counties are entitled to no other role in regard to court's nonjudicial employees that might arguably be considered role of joint employer. S.H.A. ch. 48, P 1601 et seq. | Is the circuit clerk the employer of deputy clerks? | Clerks of court - Memo 103 - RK.docx | ROSS-003300219-ROSS-003300220 | Condensed, SA, Sub | 0.55 | 0 | 1 | | 1 | 1 |
| 21270 | Martin v. Bd. of Labor Appeals, 227 Mont. 145 | 307A+676 | There is inherent power in a district court, in the exercise of sound discretion, to dismiss an action for failure to prosecute. See Jangula v. United States Rubber Co. (1967), 149 Mont. 241, 425 P.2d 319 and cases cited therein. However, the trial court's discretion is not without bounds. "'[I]t must be borne in mind that courts "exist primarily to afford a forum to settle litigable matters between disputing parties." ' Brymerski v. City of Great Falls (1981), 195 Mont. 428, 431-432, 636 P.2d 846, 848. Further, the policy favoring the resolution of a case on its merits is more compelling than the underlying policy of Rule 41(b) of preventing unreasonable delays. Brymerski, 195 Mont. at 432, 636 P.2d at 849. Courts recognize the need to balance judicial efficiency against a plaintiff's right to meaningful access to the judicial system. | District court abused its discretion in dismissing case for failure to prosecute, on one day's notice to plaintiff, while parties were waiting decision on plaintiff's motion for summary judgment and motion for judgment on the record, ten months after the parties had filed a stipulation that the case was fully submitted on the briefs. Rules Civ.Proc., Rule 41(b). | Must district courts balance concerns of judicial efficiency against a party's right to meaningful access to a judicial system? | 041220.docx | LEGALEASE-00129416-LEGALEASE-00129417 | Condensed, SA, Sub | 0.57 | 0 | 1 | | 1 | 1 |
| 21271 | Barton v. State, 797 So. 2d 67+9(0.5) 1276 | | Barton, however, contends that the more recent supreme court case of Drew v. State, 773 So.2d 46 (Fla.2000), is controlling. In that case, the court held that the sole act of removing hubcaps or tires from a motor vehicle does not constitute a burglary. See id. at 46. However, the court, in reaching its decision, did not find conflict with the Braswell opinion. The court explained, "Similarly, in Braswell, defendant's sticking his hand into the bed of the pickup truck (entry) may be distinguished from the removal of the object (the crime intended to be committed)." Id. at 52. It concluded that "the removal of a portion of the conveyance must be to facilitate the commission of an offense within the conveyance ... [and] not seek to punish as burglary conduct which should be treated as larceny." Id. at 52 (citation omitted). | A proper analysis of the offense of burglary must focus both on the act constituting the entry and the intent to commit an offense therein. | Does the removal of tires from a vehicle constitute burglary? | Burglary - Memo 51 - RK.docx | ROSS-003287247-ROSS-003287248 | Condensed, SA | 0.83 | 0 | 1 | | 0 | 1 |
| 21272 | State v. Waddy, 63 Ohio St. 3d 424 | 37+365 | Obviously aggravated burglary is not implicit with kidnapping. Also, kidnapping is not implicit within aggravated burglary. Unlike robbery or rape, burglary does not inherently require the victim's restraint. Cf. Jenkins, supra, 15 Ohio St.3d at 198, 15 OBR at 340, 473 N.E.2d at 295, fn. 29; State v. Logan (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345. Nor does inflicting physical harm, as required for aggravated burglary under R.C. 2911.11(A)(1), necessarily require the victim's restraint; even if it did, Waddy imposed further restraint on Mason by tying her up. Thus, aggravated burglary under either R.C. 2911.11(A)(1) or (3) is not an allied offense of similar import to kidnapping. The trial court correctly refused merger. This proposition is overruled. | Aggravated assault, aggravated robbery, and burglary convictions were supported by victim's identification of defendant's voice, evidence that fibers found at crime scene matched those in defendant's gloves, and evidence that defendant was in possession of victim's stolen car keys. | Does burglary require the victims restraint? | 013228.docx | LEGALEASE-00129711-LEGALEASE-00129712 | Condensed, SA, Sub | 0.64 | 0 | 1 | | 1 | 1 |
| 21273 | Villafani v. Trejo, 251 S.W.3d 466 | 307A+518 | Trejo argues and the court of appeals concluded that the nonsuit of Trejo's claims against Villafani rendered moot the interlocutory order denying Villafani's motion and deprived the court of appeals of jurisdiction. Under Texas law, parties have an absolute right to nonsuit their own claims for relief at any time during the litigation until they have introduced all evidence other than rebuttal evidence at trial. Tex.R. Civ. P. Rule 162; In re Bennett, 960 S.W.2d at 38. One unique effect of a nonsuit is that it can vitiate certain interlocutory orders, rendering them moot and unappealable. See Blackmon, 195 S.W.3d at 101 (pending appeal of trial court's denial of plea to the jurisdiction required to be dismissed after nonsuit in trial court); In re Bennett, 960 S.W.2d at 38; see also Gen. Land Office of State v. OXY U.S.A., Inc., 789 S.W.2d 569, 571 (Tex.1990) (holding temporary injunction extinguished by nonsuit and dismissing appeal as moot). | Patient's nonsuit of medical malpractice claims against physician after failing to provide expert report within 180 days of suit did not vitiate physician's right to appeal denial of request for sanctions, regardless that trial court had denied physician's motion for sanctions prior to dismissal. Vernon's Ann.Texas Civ.St. art. 4590i(d) (Repealed); Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a party have an unqualified and absolute right to file a non-suit? | Pretrial Procedure - Memo # 1283 - C - KS.docx | ROSS-003326565-ROSS-003326567 | Condensed, SA, Sub | 0.59 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 21274 | Perry v. Sera, 623 A.2d 1210 | 307A≈46 | These allegations gave the trial court a sufficient basis to find that appellee had been prejudiced. A party's failure to respond to discovery impairs another's ability to prepare for trial is highly relevant to determining whether prejudice... (full opinion text) | Party's failure to respond to discovery impairs another's ability to prepare for trial is highly relevant to determining whether prejudice necessary to justify dismissal for failure to comply with discovery orders has been shown. | "Does the failure of a party to meet pre-trial deadlines prejudices the other party, who is subject to the deadlines as well?" | 026572.docx | LEGALEASE-00129837-LEGALEASE-00129838 | Condensed, SA, Sub | 0.91 | 0 | 1 | | 1 | |
| 21275 | United States v. Mullins, 800 F.3d 866 | 63≈11 | To prove bribery under 18 U.S.C. " 666(a)(1)(B) the government must show that a public agent solicited "corruptly anything of value" in connection with a transaction of $5,000 or more. 18 U.S.C. " 666(a)(1)(B)... (full opinion text) | Evidence was sufficient to support bribery conviction of defendant, who was former county director of public affairs and communications; defendant altered vendors' invoices to remain under $25,000 and kept himself in approval process, defendant required and received cash kickbacks from vendors when they received their fees under ruse that kickbacks were for subcontractors, and payments were given as reward or bribe for buying defendant's influence in obtaining future awards from county. 18 U.S.C.A. S 666(a)(1)(B). | "How is ""corruptly"" defined under the bribery statute?" | Bribery - Memo #85 - C - CSS.docx | ROSS-003313634-ROSS-003313635 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 21276 | Powell v. Kevin Coleman Mental Health Ctr., 101 Ohio App. 3d 706 | 307A≈517.1 | The Ohio Supreme Court held in Zimmie v. Zimmie (1984), 11 Ohio St.3d 94, 11 OBR 396, 464 N.E.2d 142, that "after its voluntary dismissal, an action is treated as if it had never been commenced." Id. at 95, 11 OBR at 397, 464 N, E.2d at 144. See, also, Johnston v. Cartwright (C.A.8, 1965), 344 F.2d 773. In applying the rule of Zimmie to the present case, the voluntary dismissal of this case by appellant on March 14, 1994 deprived the trial court of further jurisdiction over the cause and its journal entry of March 21, 1994 was entered without jurisdiction, and therefore, is null and void. Such entry is of no legal effect and no appeal can originate from it. | Voluntary dismissal of medical malpractice lawsuit in trial court deprived trial court of further jurisdiction over the cause, and court's subsequent journal entry declaring prior partial summary judgment final on all claims was null and void. | "After its voluntary dismissal, is an action treated as if it had never been commenced?" | Pretrial Procedure - Memo # 2337 - C - KG.docx | ROSS-003288208-ROSS-003288209 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21277 | United States v. Mullins, 800 F.3d 866 | 63≈11 | To prove bribery under 18 U.S.C. " 666(a)(1)(B) the government must show that a public agent solicited "corruptly anything of value" in connection with a transaction of $5,000 or more. 18 U.S.C. " 666(a)(1)(B); see United States v. Blagojevich, 794 F.3d 729, 736 (7th Cir.2015); United States v. Robinson, 663 F.3d 265, 271 (7th Cir.2011). An agent acts corruptly when he understands that the payment given is a bribe, reward, or gratuity. See United States v. Hawkins, 777 F.3d 880, 882 (7th Cir.2015). To attack the sufficiency of the bribery conviction, Mullins raises two arguments, but they are both meritless. | Evidence was sufficient to support bribery conviction of defendant, who was former county director of public affairs and communications; defendant altered vendors' invoices to remain under $25,000 and kept himself in approval process, defendant required and received cash kickbacks from vendors when they received their fees under ruse that kickbacks were for subcontractors, and payments were given as reward or bribe for buying defendant's influence in obtaining future awards from county. 18 U.S.C.A. S 666(a)(1)(B). | How does an agent act corruptly in regards to federal bribery? | 011355.docx | LEGALEASE-00133152-LEGALEASE-00133153 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 21278 | Walker v. Rivera, 820 F. Supp. 2d 709 | 197≈275.1 | An initial issue to be addressed is whether this scheme, for which the jury convicted Petitioner under both "honest services" and pecuniary mail fraud, necessarily involved a bribe or kickback. It is well settled that while bribery must involve a quid pro quo, there is no need to prove an expressed agreement by the parties. United States v. Quinn, 359 F.3d 666, 673 (4th Cir. 2004). As Justice Kennedy stated in a concurring opinion in Evans v. United States, 504 U.S. 255, 274, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992), a quid pro quo occurs with a public official "if he intends the payor to believe that payment of the official is likely to abuse his office and his trust to the detriment and injury of the prospective payor or to give the prospective payor less favorable treatment if the quid pro quo is not satisfied." Justice Kennedy went on to observe that "the official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." Id. | Instruction on unconstitutionally broad "honest services" mail fraud statute, as to defendant's scheme to deprive others of his "honest services" as state senator by soliciting business with hospital for temporary services agency that he owned, was harmless error, precluding defendant from establishing actual prejudice or actual innocence to excuse procedural default as required for S 2241 habeas relief, since evidence at trial revealed that defendant received bribe involving quid pro quo by obtaining $2.6 million in business for his temporary services agency in exchange for his assistance in state legislature with pending legislation that could have had $40 million impact on hospital, and record supported jury's conviction for pecuniary mail fraud based on same fraudulent scheme. 18 U.S.C.A. SS 1341, 1346; 28 U.S.C.A. S 2241. | "In a charge involving bribery, does an expressed agreement by the parties is to be proved?" | Bribery - Memo #270 - C - JL.docx | ROSS-003287194-ROSS-003287196 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 21279 | Bump v. Stewart, Wimer & Bump, P.C., 336 N.W.2d 731 | 46H≈148 | Without deciding that point, we rest the decision denying inclusion of goodwill in the corporation's value on ethical considerations also discussed by the trial court. "Goodwill" may be defined as "the ability of a particular law firm to attract clients either because of the firm's name, the firm's physical location, or the concomitant reputation of the lawyers employed by the firm." Annot., 79 ALR 3d 1243, 1244 (1977). Few courts have faced this precise issue, but those that have encountered it have held the goodwill of a law practice is not an asset which may be sold or transferred for consideration. | Independent considerations of existence of employment contract and evidence of damage to ousted member of professional legal corporation arising from alleged tortious interference with employment contract by other shareholders, individual members of the firm would have been justified in terminating an employment contract between the ousted attorney and the corporation in that the other shareholders had interest in preserving established law practice, and came to view their relationship with ousted attorney as detrimental to their practice; absent evidence that wrongful means were employed in separating ousted attorney from the group, there was no tortious interference with a contract. | Is goodwill the ability of a law firm to attract clients? | 022153.docx | LEGALEASE-00133555-LEGALEASE-00133556 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21280 | Wilson v. Doehler-Jarvis Div. of Nat'l Lead Co., 358 Mich. 510 | 413+11 | "The matter of compensation payable to an injured employee is one in which the State and public are interested. Harrington v. Department of Labor and Industry, 252 Mich. 87, 233 N.W. 361. It is not a private matter between the employer and employee | Primary purpose of Workmen's Compensation Act is to provide compensation for disability or death resulting from occupational injuries or diseases or accidental injury to, or death of, workmen; and statute is a remedial one enacted primarily for benefit of men who work in pursuits subject to its provisions; and it is for benefit of injured workmen and not injured employers. Comp.Laws 1948, SS 413.13, 438.7. | Is the public interested in matters of compensation payable to an injured employee? | 047975.docx | LEGALEASE-00133454-LEGALEASE-00133455 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21281 | Norris v. McHugh, 857 F. Supp. 2d 1229 | 78+1116(3) | It has long been established that United States military personnel may not bring actions based on injuries suffered incident to their service in the armed forces.Walch v. Adjutant Gen.'s Dep't of Tex., 533 F.3d 289, 294 (5th Cir.2008) (citing Feres v. United States, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950)). This rule"the Feres doctrine or the intra-military immunity doctrine"is "premised on the disruptive nature of judicial second-guessing of military decisions." Walch, 533 F.3d at 296 (citing United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 99 L.Ed. 139 (1954)). In particular, courts must be "[concerned] with the disruption of [t]he peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court." Chappell v. Wallace, 462 U.S. 296, 304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (alterations in original) (internal quotation marks and citations omitted). | A dual-status military technician may bring suit under Title VII or the ADEA, but only for claims arising out of his or her status as a civilian. Age Discrimination in Employment Act of 1967, 29 U.S.C.A. S 633a(a); Civil Rights Act of 1964, 42 U.S.C.A. S 2000e-16(a). | Can United States military personnel bring actions based on injuries suffered incident to their service in the armed forces? | 008415.docx | LEGALEASE-00133818-LEGALEASE-00133819 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21282 | United States v. Dimora, 750 F.3d 619 | 282+139 | And by we, I mean the jury. As Judge Sutton explained in Terry, "most bribery agreements will be oral and informal" such that one must build on "inferences taken from what the participants say, mean and do." 707 F.3d 607, 613 (6th Cir.2013). Ephemeral "[m]otives and consequences, not formalities, are the keys for determining whether a public official entered an agreement to accept a bribe." Id. (internal quotation marks omitted). Fortunately, these are "all matters that juries are fully equipped to assess," as juries are "quite capable of," if not most expert at, "deciding the intent with which words were spoken or actions taken as well as the reasonable construction given to them by the official and the payor." Id. (internal quotation marks omitted). | Evidence that defendant, a county official, participated in a phone call in which he coached a co-conspirator in alleged bribery and fraud schemes about what to say to government investigators, telling the co-conspirator that "you didn't pay for your job," and "I didn't pay for my job," was sufficient to support conviction for obstruction of justice. | Can bribery agreements be oral and informal? | Bribery - Memo #170 - C JL.docx | LEGALEASE-00023890-LEGALEASE-00023892 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21283 | Cary v. State, 507 S.W.3d 750 | 63+3 | In the bribery statute, "benefit" is defined as anything reasonably regarded as pecuniary gain or pecuniary advantage.Tex. Penal Code " 36.01(3). As we have discussed, a notable exception to the definition of "benefit" under sections 36.02(a)(1) and (a)(2)"the subdivisions under which Stacy was charged"are political contributions. Id." 36.02(d). As an exception to the offense, the State must prove beyond a reasonable doubt that any benefits that Stacy offered to Wooten were not political contributions. Id. " 2.02. A "contribution" is a direct or indirect transfer of money, goods, or services, or anything of value,6 and a contribution is a political one if it can be characterized as a campaign or officeholder contribution. Tex. Elec. Code " 251.001(5). A "campaign contribution" is one that is given or offered "with the intent that it be used in connection with a campaign for elective office or on a measure." Id. " 251.001(3). | The political-contribution exception to the statute setting forth the offense of bribery excludes all political contributions without regard to whether they are within the allowable legal limits. Tex. Penal Code Ann. S 36.02(d). | "What's the definition of ""benefit"" in bribery statute?" | 011514.docx | LEGALEASE-00135504-LEGALEASE-00135505 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21284 | In re Convery, 166 N.J. 298 | 46H+1011 | A brief comment is appropriate on the dissent of the DRB member who argued that respondent's conduct was bribery. I respect that sincerely-held view. The majority of the Court, however, takes a better approach by avoiding a discussion of the merits of the bribery issue. And the DRB majority expressed a better view when it stated in its opinion that "it would do "violence to the procedures that govern our disciplinary function" to analogize respondent's misconduct to a bribery offense." (Citation omitted). There simply is no verdict or plea to support bribery, and it is presumptuous and unfair to "find" it here. The United States Attorney did not charge bribery; a federal jury did not convict him of bribery; and respondent did not plead guilty to bribery. Similarly, the State did not charge respondent with bribery. We cannot come to a conclusion on the issue without a complete record. In State v. Schenkolewski, 301 N.J.Super. 115, 141, 693 A.2d 1173 (App.Div.), certif. denied, 151 N.J. 77, 697 A.2d 549 (1997), a case involving defendants indicted for bribery who claimed that they only intended to engage in lobbying, the court found that "it would be for the jury to decide with what subjective intent these defendants accepted the money." So too, I am uncomfortable finding bribery in general or deciding questions of intent in particular without traditional safeguards that attend a criminal proceeding.We should not surmise whether this is bribery or not, as does the DRB dissent. If the United States Attorney and the State of New Jersey did not indict and convict respondent of bribery, neither should we. | Record in attorney disciplinary case arising from federal misdemeanor conviction for promising employment or other benefit as consideration for any "political activity" refuted claim that attorney reasonably assumed that his conduct in seeking freeholder's assistance with board of adjustment fell within parameters of permissible lobbying efforts; attorney promised freeholder and his son that attorney would assist son in obtaining permanent employment with county in exchange for freeholder's assistance in obtaining favorable votes from two zoning board members for project proposed by attorney's client. 18 U.S.C.A. S 600; RPC 8.4(b). | "In a bribery case, is it for the jury to decide with what subjective intent the defendants accepted the money?" | 011622.docx | LEGALEASE-00135879-LEGALEASE-00135880 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 21285 | United States v. Sullivan, 332 U.S. 689 | 198H+982 | The term "misbranded" as used in s 301(k) therefore is not one of uniform connotation. On the contrary, its meaning is variable in relation to the different commodities and the sections defining their misbranding. So also necessarily is the meaning of "any other act," which produces those misbranding consequences. Each of the three sections therefore must be taken into account in determining the meaning and intended scope of application for s 301(k) in relation to the specific type of commodity involved in the particular sale, if Congress' will is not to be overridden by broadside generalization glossed upon the statute. As might have been expected, Congress did not lump food, drugs and cosmetics in one indiscriminate hopper for the purpose of applying s 301(k), either in respect to misbranding or as to "any other act" which produces that consequence. Brief reference to the several misbranding sections incorporated by reference in s 301(k) substantiates this conclusion. | The scope of offense of misbranding a food, drug, device or cosmetic while such article is held for sale after shipment in interstate commerce is not to be judicially narrowed as applied to drugs by envisioning extreme possible applications of different misbranding statutory provisions with respect to food or cosmetics. Federal Food, Drug, and Cosmetic Act, S 301(k), 21 U.S.C.A. S 331(k). | Is the meaning of the term misbranded variable in relation to the different commodities and sections defining it? | 006589.docx | LEGALEASE-00136854-LEGALEASE-00136855 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21286 | United States v. Fernandez, 722 F.3d 1 | 63+1(1) | The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo's specific intent to give or receive something of value in exchange for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken. | Even if legislation that is the subject of bribes is revenue-neutral on its face, to satisfy the "involving" requirement of the federal bribery statute, prohibiting an agent from, inter alia, accepting or agreeing to accept anything of value "intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more," it is sufficient if the direct and foreseeable effect of that legislation would be to give the individual offering the bribe a particular desired result, assuming that the transaction involved something of value of $5,000 or more. 18 U.S.C.A. S 666(a)(1)(B). | What is the line separating a bribe from an illegal gratuity? | Bribery - Memo #462 - C JL.docx | ROSS-003303883-ROSS-003303884 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 21287 | Culbertson v. C.I.R., 168 F.2d 979 | 220+3944 | Neither the Constitution, the statutes, nor public policy requires that partnerships between fathers and sons be outlawed or discouraged. The desire of a father in any age or clime, with a business that he cherishes and a son that he loves, to have such son with him in his business and to carry it on when he no longer can, was not rendered an anathema by the Lusthaus and Tower cases, and aberrations from the salutary rules announced in those cases should not now do so. | Evidence established that partnership entered into by father with his four sons in cattle raising business was a real, bona fide "partnership" entered into for benefit of partnership, so that it should be recognized as valid for federal income tax purposes. | Is a father-son partnership recognized by law? | 022285.docx | LEGALEASE-00136416-LEGALEASE-00136417 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 21288 | McAleer v. McAleer, 394 S.W.3d 613 | 30+3239 | When a motion for continuance is based on the lack of counsel, the movant "must show that the failure to be represented at trial was not due to their own fault or negligence." Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.1986). When the motion for continuance is based on inadequate discovery, the appellate court considers the following non-exclusive factors: (1) the length of time the case has been on file; (2) the materiality of the discovery sought; and (3) whether due diligence was exercised in obtaining discovery. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 161 (Tex.2004). | The trial court has broad discretion to deny or grant a motion for continuance, and the appellate court will not reverse the trial court's decision absent a clear abuse of discretion. | "When the ground for a continuance is the withdrawal of counsel, must the movant show that the failure to be represented at trial was not due to her own fault or negligence?" | Pretrial Procedure - Memo # 3422 - C - PC.docx | LEGALEASE-00026267-LEGALEASE-00026268 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | 1 |
| 21289 | United States v. Langston, 590 F.3d 1226 | 234+15(3) | Nothing in the text of the statute prohibits the Government from charging a defendant as an agent of the state and as an agent of a state agency. See United States v. Pretty, 98 F.3d 1213, 1219 (10th Cir.1996) (noting that defendant was simultaneously an agent of the state and an agent of the state treasury). In fact, numerous courts have recognized the dual agent status of a defendant under s 666 charge. See, e.g., Pretty, 98 F.3d at 1219; United States v. Moeller, 987 F.2d 1134, 1138 (5th Cir.1993) (defendants were agents of two state agencies-one that controlled the other for which they actually worked); United States v. Madryk, 970 F.Supp. 642, 643-44 (N.D.Ill.1997) (municipal code made city Alderman an agent of both the city and the city council). | For purposes of statutory prohibition against theft and bribery concerning programs receiving federal funds, employee of agency entity cannot be agent of principal entity unless legal construct establishes such relationship. 18 U.S.C.A. S 666. | Is an agent of a state agency also an agent of the state? | Bribery - Memo #491 - C CSS.docx | ROSS-003290141-ROSS-003290142 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21290 | State v. Amor, 168 Mont. 122 | 67+41(5) | Entry in the nighttime with felonious intent is an essential element of burglary in the firstdegree. State v. Copenhaver, 35 Mont. 342, 89 P. 61. This Court in State v. Solis, 163 Mont. 293, 295, 516 P.2d 1157, 1158, has recently stated "Commission of a burglary is predicated upon the "entry" with the requisite felonious intent. Hence, the burglary occurs at the time of the entry upon the premises. | To establish entry in the nighttime under first-degree burglary statute, substantial evidence must be presented by state establishing time when entry occurred. R.C.M.1947, SS 94-902, 94-905. | Is night time burglary a first degree offense? | 012602.docx | LEGALEASE-00137583-LEGALEASE-00137584 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21291 | People v. Helms, 141 A.D.3d 1138 | 350H+1281 | However, I respectfully disagree with the majority that this distinction amounts to a difference in the "elements" of the crime of burglary under the respective state statutes. Since 1965, when the Penal Law was substantially updated and recompiled, New York's burglary statute has been structured with "two basic elements ... (1) unlawfully entering or remaining in premises, and (2) intent to commit a crime therein" (3d Interim. Rpt. of Temp. St. Commn. on Rev.of Penal Law and Crim Code, 1964 N.Y. Legis Doc No. 14 at 23). As part of these revisions, the Penal Law also adopted four levels of culpable mental state (intentionally, knowingly, recklessly and negligently), as "borrow[ed]" from Model Penal Code " 2.02 (William C. Donnino, Practice Commentary, McKinney's Cons Laws of N.Y., Book 39, Penal Law " 15.00 at 83). The culpable mental state of "knowingly" relates to the conduct embodied in the first element of the crime of burglary, i.e., entering or remaining unlawfully (see Penal Law " 15.15 [1] ). | Defendant's prior Georgia burglary conviction was not equivalent to New York felony, and thus defendant could not be sentenced as second felony offender based on that conviction; New York burglary statute contained knowledge requirement that Georgia statute did not. McKinney's Penal Law S 140.25(2); West's Ga.Code Ann. S 16-7-1. | Is a culpable mental state required for burglary? | 013324.docx | LEGALEASE-00137573-LEGALEASE-00137574 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21292 | Roberts v. Finkel, 46 A.D.2d 878 | 302+354 | While rules of pleading have been substantially liberalized, "it is clear that, under the CPLR, the statements in pleadings are still required to be factual, that is, the essential facts required to give "notice" must be stated. * * * Nevertheless, a party may supplement or round out his pleading by conclusory allegations or by "stating legal theories explicitly" if the facts upon which the pleader relies are also stated.' (Foley v. D'Agostino, 21 A.D.2d 60, 63, 248 N.Y.S.2d 121, 125). | Complaint against corporation and three of its alleged officers for slander, fraud, interference with contractual relations, conspiracy, and prima facie tort was subject to being dismissed for failure to state a cause of action, even though it contained allegations which might have been appropriate to some or all of alleged torts, where allegations were pleaded in form of a single cause of action contrary to statutory requirements, and, though damage seemed to be attributed to alleged defamation, plaintiff failed to fulfill further requirement of setting forth particular words claimed to have been uttered by individual defendants. CPLR 3014, 3016(a). | Can a party supplement or round out his pleading by conclusory allegations? | 023375.docx | LEGALEASE-00137680-LEGALEASE-00137681 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 21293 | Kornfeld v. NRX Techs., 93 A.D.2d 772 | 8.30E+74 | Neither is the character of the notes altered as a result of another provision affording to plaintiffs the right to convert the notes into common stock at any time prior to the due date. This does not materially alter the nature of the instruments and they remain instruments for the payment of money only .A prima facie case has been made by proof of the notes and the failure to make payment in accordance with their terms (Seaman-Andwall Corp. v. Wright Mach., The notes provide for payment as of the due date, but permit acceleration upon default in the payment of interest. This right to accelerate likewise does not change the nature of the instruments. Defendants may not validly contend that the notes were never to be paid and that the transaction was essentially an investment. Any such proof, which is at complete variance with the terms of the written instruments, would be inadmissible under the parol evidence rule. (F.H. Loeffler Co., Inc. v. Port, 40 A.D.2d 900, 337 N.Y.S.2d 570; Chase Manhattan Bank, N.A. v. Kahn, 66 A.D.2d 704, 411 N.Y.S.2d 245). | Provision affording to plaintiffs right to convert notes into common stock at any time prior to due date did not materially alter nature of instruments, which remained instruments for payment of money only. | Does acceleration change the nature of the instrument? | 009411.docx | LEGALEASE-00138852-LEGALEASE-00138853 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21294 | Wilson v. Gooding, 303 F. Supp. 952 | 129+109 | The question of constitutionality of this statute is exceedingly complex and difficult. None of the reported cases that have come to this Court's attention have dealt with the precise issues presented herein, yet many cases have dealt with at least some aspects of the instant statute. First Amendment rights have assumed a protected place in our jurisprudence. Great care must be taken in this area to assure that vague or overbroad laws do not infringe upon these rights. See, e.g., Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Since speech is normally intended to change the opinions or reinforce the opinions of others, problems arise as to the extent to which mere speech may be curbed when it provokes others into action. The cases reflect the view that peaceful expression of even unpopular views is permitted and even encouraged. | Georgia statute providing that any person who shall, without provocation, use to or of another, and in his presence, opprobrious words or abusive language, tending to cause a breach of the peace shall be guilty of a misdemeanor is unconstitutionally vague and broad and is not authorized by freedom of speech provision of First Amendment. Code Ga. § 26-6303; U.S.C.A.Const. Amend. 1. | Do First Amendment rights have a protected place in our jurisprudence? | Disorderly Conduct-Memo 50- GP.docx | ROSS-003317207-ROSS-003317208 | Condensed, SA, Sub | 0.59 | 0 | 1 | | 1 | 1 |
| 21295 | City of Lakewood v. Koenig, 160 Wash. App. 883 | 307A+372 | Determining a PRA penalty involves two steps: (1) determining the number of days the requester was denied access, and (2) determining the appropriate per-day penalty between $5 and $100 depending on the agency's actions. Yousoufian V, 168 Wash.2d at 459, 229 P.3d 735. The trial court may consider a number of mitigating and aggravating factors in setting the penalty amount, including a PRA requester's foreseeable economic loss. Yousoufian V, 168 Wash.2d at 461¹62, 467¹68, 229 P.3d 735. Further, a defendant may obtain discovery on damages even when the plaintiff has not specified what damages he or she seeks. Clarke, 133 Wash.App. at 778, 138 P.3d 144. The defendant is entitled to anticipate what the plaintiff is likely to claim as damages. Clarke, 133 Wash.App. at 778, 138 P.3d 144 (defendant could discover plaintiff's tax returns, even though plaintiff had not specified damages, because State could anticipate that it was likely she would claim lost wages; earnings were relevant to that issue). | City was entitled to discovery in declaratory judgment action seeking determination that it had fully complied with requester's request for information pursuant to Public Records Act (PRA); rules of civil procedure applied in PRA actions, and rules permitted parties to obtain discovery and there was nothing in the rules to limit their application to plaintiffs, and rules provided adequate protection to requesters as they limited materials that could be obtained through discovery. West's RCWA 42.56.001 et seq.; CR 26. | "For purposes of discovery, is a defendant entitled to anticipate what the plaintiff is likely to claim as damages?" | 031089.docx | LEGALEASE-00138348-LEGALEASE-00138349 | Condensed, SA, Sub | 0.48 | 0 | 1 | | 1 | 1 |
| 21296 | Dearborn Fire Fighters Union, Local No. 412, I. A. F. F. v. City of Dearborn, 394 Mich. 229 | 268+78 | In People v. Love, 309 Mich. 557, 16 N.W.2d 72 (1944), the rule was applied to find that an auditor whose work was performed independently and was without power to determine policies was not a public officer. A deputy register of deeds was found to be such an officer in Kent County Register of Deeds v. Kent County Pension Board, 342 Mich. 548, 70 N.W.2d 765 (1955).16 Probate Court stenographers were construed to be public employees, not public officers, in Meiland v. Wayne Probate Judge, 359 Mich. 78, 101 N.W.2d 336 (1960). | The constitutional and statutory powers of a home rule city to establish the conditions of public employment are subject to the power of the legislature. M.C.L.A. § 423.231 et seq.; M.C.L.A.Const.1963, art. 4, § 48; art. 7, § 22. | Is an auditor with no power to determine policies a public officer? | Bribery - Memo #578 - CSS.docx | ROSS-003302095-ROSS-003302096 | SA, Sub | 0.57 | 0 | 0 | | 1 | 1 |
| 21297 | LeBlanc v. Petco, 647 F.2d 617 | 413+2252 | In Louisiana, but for article 2203 a release would adversely affect the remaining solidary obligors. Their right to contribution from the released tortfeasor would be defeated by the release because their right to contribution exists solely as a result of their being subrogated to the rights of the creditor against other solidary obligors; where one solidary obligor is released, the creditor has no rights against him to which the remaining obligors may be subrogated. Thus, the remaining obligors would be left without a right of contribution against the released obligor. See Danks v. Maher, 177 So.2d 412 (La.Ct.App.1965). In contrast, American Home's waiver of its right of subrogation against ARCO had no effect whatever on the relative liabilities of ARCO, Petco, and Hughes to LeBlanc; these defendants have already made equal one-third payments in satisfaction of the $50,000 settlement made with LeBlanc, and the outcome of this suit will have no effect on them. Accordingly, we decline to treat the waiver of subrogation in this case as a release under article 2203. | Compensation carrier's lien on amount recovered by injured employee from three third-party tort-feasors was not subject to reduction by one-third because of carrier's contractual waiver of any right of subrogation against one of those parties. LSA-C.C. art. 2203. | "When a creditor settles with and grants a remission as to one of two solidary obligors, can the creditor thereafter claim one-half the debt from the obligor who has not been released whether the obligation be one arising in contract or tort?" | 043187.docx | LEGALEASE-00139321-LEGALEASE-00139322 | Condensed, SA, Sub | 0.76 | 0 | 1 | | 1 | 1 |
| 21298 | Ex parte Tulley, 199 So. 3d 812 | 92+4700 | In Reed v. State, 372 So.2d 876 (Ala.1979), a member of the legislature was charged with the felony offense of bribery. The jury found the defendant guilty of the misdemeanor offense of attempting to bribe under former " 13"9"3, Ala.Code 1975. This Court held that the defendant's conviction for the misdemeanor was a nullity because any inchoate offense of attempt had been subsumed by the definition of the felony offense of bribery in former " 13"5"31, Ala.Code 1975. The Court reversed the conviction and rendered a judgment of acquittal. In Casey v. State, 925 So.2d 1005 (Ala.Crim.App.2005), the defendant filed a Rule 32, Ala. R.Crim. P., petition challenging the trial court's jurisdiction to accept his guilty plea. The defendant was indicted for first-degree robbery, and on February 28, 1983, he pleaded guilty to attempted robbery in the first degree. The definition of robbery had been enlarged and expanded by the 1977 Criminal Code so as to include attempted robbery in the definition of robbery. The State conceded that the defendant's conviction was void and that it should be set aside. In Crane v. State, 964 So.2d 1254 (Ala.Crim.App.2007), the defendant was indicted for first-degree robbery but pleaded guilty to attempted first-degree robbery, which was a separate offense that no longer exists under the new Criminal Code. Because the defendant had pleaded guilty to a nonexistent offense, the Court of Criminal Appeals held that the trial court lacked jurisdiction to render a judgment and to impose a sentence against the defendant for attempted first-degree robbery. | Statute that criminalized the act of carrying a pistol on private property did not provide for a punishment, and therefore statute on its face violated due-process guarantees, where statute did not expressly provide for a punishment for its violation, and another statute defined an offense as "conduct for which a sentence to a term of imprisonment, or the death penalty, or to a fine is provided by any law of this state or by any law, local law, or ordinance of a political subdivision of this state." U.S.C.A. Const.Amend. 14; Code 1975, § 13A-11-52. | Can an accused charged with the felony offense of bribery be convicted of a misdemeanor under the general attempt statute? | 011929.docx | LEGALEASE-00139667-LEGALEASE-00139668 | Condensed, SA, Sub | 0.65 | 0 | 1 | | 1 | 1 |
| 21299 | Brenton Bros. v. Dorr, 213 Iowa 725 | 108H+454 | The Tennessee Court in the case of Smith v. U. S. Fire Ins. Co., 126 Tenn. 435, 150 S. W. 97, 45 L. R. A. (N. S.) 266, Ann. Cas. 1913E, 196, holds that the Legislature may make a chose in action subject to levy under execution, and holds that a right of action is subject to levy under execution. To the same effect see Starke v. Beckwith Special Agency, 227 N. Y. 42, 124 N. E. 96. | Proceedings under execution levied on claim in counterclaim for breach of contract against judgment plaintiffs held properly stayed pending disposition of case in which counterclaim was filed (Code 1931, S 11672). | Can the Legislature make choses in action subject to levy under execution? | 010440.docx | LEGALEASE-00140706-LEGALEASE-00140707 | Condensed, SA, Sub | 0.44 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21300 | Ventres v. Town of Farmington, 192 Conn. 663 | 200+78 | In their briefs and during oral argument, both parties argue extensively on the issue of the town's rights to the land in dispute after the 1787 conveyance and after the discontinuance in 1978. They both cite the same cases for the identical propositions of law, but then disagree as to their application in this particular case. Both parties cite the line of cases beginning with Peck v. Smith, 1 Conn. 103 (1814) and continuing to Luf v. Southbury, 188 Conn. 336, 449 A.2d 1001 (1982). Essentially, these cases hold that the taking of a highway creates no interest in fee, the presumption being that the landowners whose lands abut the highway continue to be owners of the soil to the middle of the highway. Luf v. Southbury, supra, 341, 449 A.2d 1001; Peck v. Smith, supra, 110. Rather, the taking of a highway creates a public easement of travel allowing the public to pass over the highway at will. Peck v. Smith, supra, 110; Luf v. Southbury, supra, 188 Conn. 341, 449 A.2d 1001. | Developer had no right to relief under statute providing that property owners bounding a discontinued highway shall continue to have right-of-way over it to nearest or most accessible highway, since developer's property did not abut discontinued segment of road, and since developer still had access to public road system. C.G.S.A. S 13a-55. | Does the taking of a highway create an interest in the fee? | 019013.docx | LEGALEASE-00140368-LEGALEASE-00140369 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 21301 | Williams v. Liberty Mut. Fire Ins. Co., 187 So. 3d 166 | 106+40.11(7) | A dismissal with prejudice indicates a ruling on the merits of the case, but a dismissal for lack of jurisdiction necessarily does not implicate the merits of the case. See Jackson v. Bell, 123 So.3d 436, 439 ( 7) (Miss.2013) ("[A] dismissal for lack of jurisdiction is not a dismissal on the merits, and thus may not be with prejudice."); B.A.D. v. Finnegan, 82 So.3d 608, 615 ( 27) (Miss.2012) (court could not dismiss case with prejudice for lack of subject-matter jurisdiction). Thus, a court must issue a dismissal on jurisdictional grounds without prejudice. The dismissal of Stafford should have been without prejudice. | Stipulation, which indicated that insurer waived any statute of limitations bar in Tennessee, failed to fulfill statutory requirements for forum non conveniens dismissal for insurer, in motorist's Mississippi action against driver of second vehicle and her insurer alleging that driver negligently caused automobile accident; motorist lacked alternate forum in which to file her suit, as she filed suit in Mississippi on last day she could have filed suit in Tennessee, and, thus, tolling of statute of limitations in Tennessee could not have applied. West's A.M.C. S 11-11-3(4)(b). | Does a dismissal with prejudice indicate a ruling on the merits of the case? | 032894.docx | LEGALEASE-00140074-LEGALEASE-00140075 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 21302 | United States v. Valdes, 437 F.3d 1276 | 63+1(1) | To establish the offense, the government must prove that the defendant (1) is a public official who (2) accepts, receives, etc. anything of value (3) for or because of any official act performed or to be performed. See United States v. Ahn, 231 F.3d 26, 31 (D.C.Cir.2000). An "illegal gratuity "can take one of three forms": (1) a reward for past action, (2) an enticement to maintain a position already taken, or (3) an inducement to take or refrain from some future official action." See id. (quoting and citing Schaffer, 183 F.3d at 841-42). | Payments received by defendant, a police officer, from informant posing as a judge for information retrieved by defendant's use of computer data base linked to state data bases concerning fictitious individuals were not "for or because of an official act," as required to sustain conviction for receipt of an illegal gratuity. 18 U.S.C.A. S 201(c)(1)(B). | How many forms can an illegal gratuity take? | 012141.docx | LEGALEASE-00141939-LEGALEASE-00141940 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 21303 | Duesing v. Udall, 350 F.2d 748 | 260+5.1(10) | Appellants do not contradict Assistant Secretary Carver's statement in the Todd decision that at the hearing held December 9 and 10, 1957,4 on the proposed revision of 43 C.F.R. 192.9, there was testimony both in support of and in opposition to advocates of leasing. The agreement by the Bureau of Land Management and the Fish and Wildlife Service represented their considered judgment that the division made is the proper method of balancing the several components of the public interest in this area. In a case like this the court does not seek to make a de novo determination. It suffices if there was reasonable basis for the executive department to reach its conclusion. Appellants have not made a tender sufficient to overcome the presumption of validity of administrative action. The court does not presume to substitute its discretion for that of the Secretary. | Noncompetitive applicants for oil and gas leases of public lands declared a moose refuge failed to overcome presumption of validity of Secretary of Interior's denial of application. | Can the court presume to substitute its discretion for that of the Secretary? | 021275.docx | LEGALEASE-00141513-LEGALEASE-00141514 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21304 | Beggs v. Brooker, 79 S.W.2d 642 | 289+760 | "That a partnership creditor has no specific lien, either legal or equitable, upon partnership assets, any more than any individual creditor has upon the estate of his debtor, is so firmly established that citation of authority in support of the proposition is useless. * * * "If the partners are not themselves in a condition to enforce an equitable lien upon the partnership property, the creditors of the partnership cannot enforce a lien derived from them or from one of them. The equity of the partnership creditor continues so long as the equity of the individual partner continues, and no longer." " | Generally, garnishment may not be used to impound partnership assets in suit against one of partners on his individual debt. | Can the creditors of a partnership enforce equitable liens if the partners are not in a condition to enforce it? | 022402.docx | LEGALEASE-00141912-LEGALEASE-00141913 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | 1 |
| 21305 | Sims v. Ahrens, 167 Ark. 557 | 371+2013 | In Ouachita County v. Rumph, 43 Ark. 525, it was held that the right to impose taxes upon citizens and property for the support of the state government may be restricted by the Constitution, but needs no clause to confer it. The court said that by article 2, " 23, of the Constitution, the state's ancient right of taxation is fully and expressly conceded. But it is said that article 16, " 5, limits all taxation to taxes on property and certain occupations and privileges. Such view is contrary to the weight of authority.In Cooley on Constitutional Limitations (7th Ed.) p. 713, in discussing the question it is said "It is evident, therefore, that the express provisions, which are usual in state Constitutions, that taxation upon property shall be according to value, do not include every species of taxation; and that all special cases like those we have here referred to are, by implication, excepted." | Legislature may select subjects of taxes and classify them under Constitution. Per Hart and Humphreys, JJ. | Can the right to impose taxes upon citizens and property be restricted by the constitution? | Taxation - Memo # 626 - C - SN.docx | ROSS-003302311-ROSS-003302312 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21306 | Cosmopolitan Tr. Co. v. Leonard Watch Co., 249 Mass. 14 | 83E+481 | 56 Upon the question whether the judge erred in directing a verdict for the plaintiff, it is necessary to consider whether there was sufficient evidence of a transfer of the note to the savings department independent of the testimony of O'Brien. As the note bore no indorsement, in the hands of the transferee it would be regarded as an assignment. Barker v. Barth, 192 Ill. 460, 471, 61 N. E. 388. A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim.Williston, Contracts, vol. 1, * 424; Southern Mutual Life Insurance Ass'n v. Durdin, 132 Ga. 495, 64 S. E. 264, 131 Am. St. Rep. 210; Christmas v. Russell, 14 Wall. 69, 84, 20 L. Ed. 762. The important thing is the act and the evidence of intent; formalities are not material. Nor is it necessary that there should be any consideration where the question arises between the assignee and the debtor. Cummings v. Morris, 25 N. Y. 625; Stone v. Frost, 61 N. Y. 614; Chase v. Dodge, 111 Wis. 70, 86 N. W. 548; Wardner, Bushnell & Glessner Co. v. Jack, 82 Iowa, 435, 439, 48 N. W. 729. That no consideration is required to constitute a valid assignment is seen in cases of gifts by assignment of savings bank accounts. Sheedy v. Roach, 124 Mass. 472, 26 Am. Rep. 680; Davis v. Ney, 125 Mass. 590, 28 Am. Rep. 272; Taft v. Bowker, 132 Mass. 277. The uncertainty, apparent from O'Brien's testimony, as to what consideration was given by the savings department for the note, does not affect the validity of the assignment, as none was required. Nor did its validity depend upon giving notice to the debtor. Thayer v. Daniels, 113 Mass. 129. Apart from the testimony of O'Brien it is manifest that the note was entered in the savings department books on February 28. This is corroborated by the entries on the envelope, which include an item of $30 as interest paid February 28, and the entries of interest payments until the closing of the bank, and it is plain that the note was in... | Assignments made by words or acts. | Does a valid assignment of a note require intent to make the assignee owner of a claim? | 009602.docx | LEGALEASE-00142656-LEGALEASE-00142657 | Condensed, SA, Sub | 0.99 | 0 | 1 | 1 | 1 | 1 |
| 21307 | Fairway Development Co. v. Title Ins. Co. of Minnesota, 621 F. Supp. 120 | 289+928 | Under Ohio Rev.Code * 1777.03, where members of a general partnership change, the partnership must file a new certificate of partnership, unlike a limited partnership, which simply may amend its certificate of partnership. The fact that the Uniform Partnership Law makes this distinction supports a finding that the authors of the Uniform Partnership Act recognized that a change of the members of a general partnership in fact changes the original partnership and requires a new certificate, as opposed to an amendment to the original certificate. | Under Ohio law, partnership was not an entity in itself but was made up of three members, so that partnership ceased upon transfer by two partners of their entire respective bundles of partnership rights to remaining partner and a third-party purchaser. Ohio R.C. S 1775.01 et seq. | Is it necessary to file a new certificate of partnership when there is any change to the partnership members? | 022412.docx | LEGALEASE-00143236-LEGALEASE-00143237 | Condensed, SA, Sub | 0.51 | 0 | 1 | | 1 | 1 |
| 21308 | McMillan v. City of Tacoma, 26 Wash. 358 | 371+2987 | We think such was not the intention. The subject under consideration is that of general taxation. The title of the act of 1897 is, "An act to provide for the assessment and collection of taxes in the state of Washington" (Laws 1897, p. 136). The act of 1899 is simply amendatory of the act of 1897. Every detail of the revenue statutes relates to the assessment, levy, and collection of general taxes upon all property, real and personal, which is not specially declared as exempt. The theory upon which general taxation proceeds is entirely distinct from that of local assessments. General taxation is sought to be enforced against all classes of property upon an ad valorem basis, while local assessments are limited to real property within a given district, and are based entirely upon the theory of special benefit by which the value of property is enhanced in excess of the general good. General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience, and for the additional benefit of private property holders. These differences have made it necessary to recognize taxation and local assessments as distinct subject, and, unless a general revenue law contains provisions which clerly are intended to relate to local assessments, it must be held that they are not included within the operation of the law. | The word "tax," as used in Amendatory Revenue Law 1899, p. 302, S 20, declaring that the holder of a general tax certificate, before bringing an action to foreclose the lien, shall "pay the taxes that have accrued on the property," does not include assessments for street improvements. | Is general taxation enforced to serve the necessary purposes of government? | 045602.docx | LEGALEASE-00142499-LEGALEASE-00142501 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21309 | Allied Sanitation v. Waste Mgmt. Holdings, 97 F. Supp. 2d 320 | 25T+182(2) | Although "the issue is fact-specific and there are no bright-line rules," S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir.1998) (citing Leadertex, 67 F.3d at 25), "waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." Rush, 779 F.2d at 887. Thus, "[m]ere delay in seeking arbitration, absent prejudice to the opposing party, does not constitute waiver." Com'Tech Assocs. v. Computer Assocs. Int'l, 938 F.2d 1574, 1576 (2d Cir.1991). "Sufficient prejudice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." Cotton v. Slone, 4 F.3d 176, 179 (1993) (internal citations omitted). The Second Circuit has also recognized that "[p]rejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." Kramer v. Hammond, 943 F.2d 176, 178 (2d Cir.1991). This type of prejudice, therefore, precludes a party "sensing an adverse court decision" from having "a second chance in another forum." Rush, 779 F.2d at 890 (quotation omitted). | Asset purchaser's conduct in opposing initial summary judgment motion on liability issue, opposing certification of class of plaintiffs who sold their assets in return for purchaser's stock, waiting for about two months after certification of the class before invoking the arbitration clause, and thereafter opposing second summary judgment motion, did not result in waiver of its right to arbitrate; purchaser assumed an essentially defensive posture in seeking to avoid litigation with a major stockholder who neither initiated the class action litigation nor asserted itself as a major player in the litigation and its efforts were not inconsistent with its arbitration rights. | When is prejudice considered substantive? | 007718.docx | LEGALEASE-00144833-LEGALEASE-00144834 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 21310 | United States v. Orenuga, 430 F.3d 1158 | 63+3 | Under 18 U.S.C. * 201(b)(2)(A), a "public official" commits bribery if he or she "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for ... being influenced in the performance of any official act." The Supreme Court has made it clear that the "acceptance of the bribe is the violation of the statute, not performance of the illegal promise." United States v. Brewster, 408 U.S. 501, 526, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). In other words, "[t]he illegal conduct is taking or agreeing to take money for a promise to act in a certain way." Id. | Possible lawful and proper performance of act by public official had there been no bribe was not defense to crime of bribery. 18 U.S.C.A. S 201(b)(2)(A). | Is acceptance of the bribe the violation the statute or is it the performance of the promise? | 011414.docx | LEGALEASE-00143830-LEGALEASE-00143831 | Condensed, SA, Sub | 0.77 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21311 | United States v. Mandel, 591 F.2d 1347 | 306+35(10) | In its charge to the jury on the mail fraud counts of the indictment, the district court did not instruct the jury on the issue of bribery. The terms bribe, bribery, and in return for were not defined for the jury. As we said in United States v. Arthur, 544 F.2d 730, 734, 735 (4thCir. 1976), "not every gift, favor or contribution to a government or political official constitutes bribery. . . . "Bribery" imports the notion of some more or less specific Quid pro quo for which the gift or contribution is offered or accepted. . . . The crucial distinction between "goodwill" expenditures and bribery is . . . the existence or nonexistence of criminal intent that the benefit be received by the official as a Quid pro quo for some official act, pattern of acts, or agreement to act favorably to the donor when necessary." We think that it was necessary for the district court to give Arthur type instructions in its charge to the jury on the mail fraud counts.13 It is indisputable that based upon the allegations contained in the indictment14 and evidence adduced at trial the jury could have premised appellants' convictions of mail fraud on a finding that a scheme to defraud involving bribery existed. The failure by the district court to instruct the jury on the distinction between legally innocent benefits and bribes in the context of the mail fraud counts leads us to the conclusion that the jury may easily have been misled. If the jury found no bribery, it could not have convicted on that theory, although it might have on the alternate theory of furnishing false facts or concealment of true facts, as we have discussed earlier. | Although most mail fraud prosecutions of public officials which allege bribery also allege that a state bribery law or law prohibiting the taking of additional fees has been violated, such an allegation is not necessary to bring the alleged scheme within the purview of the mail fraud statute. 18 U.S.C.A. S 1341. | What is the distinction between bribery and goodwill expenditures? | 012217.docx | LEGALEASE-00143764-LEGALEASE-00143765 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | |
| 21312 | Bosque v. Rivera, 135 So. 3d 399 | 307A+563 | Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998). Because dismissal sounds the "death knell of a lawsuit," courts must reserve this remedy for instances where a party's conduct is "egregious." Id. The dismissal of a lawsuit for fraud on the court is an extraordinary remedy to be utilized only when a deliberate scheme to subvert the judicial process has been clearly and convincingly proved. Bologna v. Schlanger, 995 So.2d 526, 528 (Fla. 5th DCA 2008). As we explained in Bologna, "poor recollection, dissemblance, even lying, can be well managed through cross-examination." Id. | Although District Court of Appeal reviews a dismissal for fraud on the court under an abuse of discretion standard, that standard of review is somewhat narrowed to take into account that the dismissal must be established by clear and convincing evidence. | "Because dismissal sounds the death knell of a lawsuit, should courts reserve this remedy for instances where a party's conduct is egregious?" | 034495.docx | LEGALEASE-00144183-LEGALEASE-00144184 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 21313 | People v. Pignatello, 15 Misc. 3d 833 | 110+273(4.1) | Under Penal Law " 200.35, "a public servant is guilty of receiving unlawful gratuities when he solicits, accepts or agrees to accept any benefit for having engaged in official conduct which he was required or authorized to perform, and for which he was not entitled to any special or additional compensation." Penal Law " 110.00 provides that "a person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." The operative language in section 200.10, bribe receiving in the third degree, is similar to that of section 200.35; section 200.10 provides that "a public servant is guilty of bribe receiving in the third degree when he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that his vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced" (emphasis added). | When crime is of type that is impossible to attempt, defendant may still plead guilty to otherwise non-existent attempt in context of bargained for plea, where court is permitted to accept negotiated plea to hypothetical lesser offense. | When is a defendant guilty of the crime of bribe receiving in the third degree? | Bribery - Memo #857 - C - I8.docx | ROSS-003300779-ROSS-003300780 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 21314 | United States v. Crozier, 987 F.2d 893 | 63+1(2) | The "for or because of" language of this statute includes both past acts supporting a gratuity theory and future acts necessary for a bribery theory.Moreover, " 201(c)(1)(A), the section which covers gratuities given to federal officials, provides, "[w]hoever ... gives, offers, or promises anything of value to any public official ... for or because of any official act performed ..." shall be subject to fines and imprisonment. 18 U.S.C. " 201(c) (emphasis added). It is the "for or because of" language in " 201(c)(1)(A) which distinguishes it as a gratuity section from the bribery prohibitions found in " 201(b)(1), which applies to payments or agreements to make payments of benefits to a public official or to "influence" or "induce" official action. S.Rep. No. 2213, 87th Cong., 2d Sess. (1962), reprinted in 1962 U.S.C.C.A.N. 3852, 3856"57 (discussing former " 201). It logically follows, therefore, that where Congress used the same language in two statutes, the second of which was enacted to supplement the first, the same meaning should be applied to both. | Any payment that defendant subjectively believes has value, including a loan, constitutes thing "of value" within meaning of federal bribery of an official statute. 18 U.S.C.A. SS 201, 201(c)(1)(B), 666(c); 18 U.S.C.(1958 Ed.Supp.IV) S 201(g). | "According to bribery statute, does the for or because of language support both gratuity theory and bribery theory?" | 012333.docx | LEGALEASE-00145836-LEGALEASE-00145838 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21315 | United States v. Myers, 692 F.2d 823 | 63+3 | Whitney v. United States, 99 F.2d 327, 331 (10th Cir. 1938). As the Seventh Circuit has said, in rejecting a claim that a bribe was not received in return for being influenced because the event requiring influence had already occurred, "The phrase ['in return for'] brings into play the purpose of the bribe and thus the mind of the bribe-payer." United States v. Arroyo, 581 F.2d 649, 654 (7th Cir. 1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 838, 59 L.Ed.2d 34 (1979). Construing a similar statute proscribing receipt of money for the promise of a public office, 18 U.S.C. " 215 (1952) (a predecessor of 18 U.S.C. " 201 (1976)), the Supreme Court upheld a conviction despite the fact that the public office, though authorized, was not in existence. United States v. Hood, 343 U.S. 148, 72 S.Ct. 568, 96 L.Ed. 846 (1952). "Whether the corrupt transaction would or could ever be performed is immaterial. We find no basis for allowing a breach of warranty to be a defense to corruption." Id. at 151, 72 S.Ct. at 569. With respect to the bribery statute, we believe the defense of fraud is equally unavailable.18 If Myers was "playacting" and giving false promises of assistance to people he believed were offering him money to influence his official actions, he violated the bribery statute.19 | Lack of intent to keep promise made for a bribe is not a defense to a charge of corrupt receipt of money by a public official. 18 U.S.C.A. S 201. | "Under bribery statute, can breach of warranty by the official be a defense to corruption?" | 012340.docx | LEGALEASE-00145857-LEGALEASE-00145858 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21316 | Bohatch v. Butler & Binion, 977 S.W.2d 543 | 46H+158 | Courts in other states have held that a partnership may expel a partner for purely business reasons. See St. Joseph's Reg'l Health Ctr. v. Munos, 326 Ark. 605, 934 S.W.2d 192, 197 (1996) (holding that partner's termination of another partner's contract to manage services performed by medical partnership was not breach of fiduciary duty because termination was for business purpose); Waite v. Sylvester, 131 N.H. 663, 560 A.2d 619, 622"23 (1989) (holding that removal of partner as managing partner of limited partnership was not breach of fiduciary duty because it was based on legitimate business purpose); Leigh v. Crescent Square, Ltd., 80 Ohio App.3d 231, 608 N.E.2d 1166, 1170 (1992) ("Taking into account the general partners' past problems and the previous litigation wherein Leigh was found to have acted in contravention of the partnership's best interests, the ouster was instituted in good faith and for legitimate business purposes."). Further, courts recognize that a law firm can expel a partner to protect relationships both within the firm and with clients. See Lawlis v. Kightlinger & Gray, 562 N.E.2d 435, 442 (Ind.App.1990) (holding that law firm did not breach fiduciary duty by expelling partner after partner's successful struggle against alcoholism because "if a partner's propensity toward alcohol has the potential to damage his firm's good will or reputation for astuteness in the practice of law, simple prudence dictates the exercise of corrective action ... since the survival of the partnership itself potentially is at stake"); Holman v. Coie, 11 Wash.App. 195, 522 P.2d 515, 523 (1974) (finding no breach of fiduciary duty where law firm expelled two partners because of their contentious behavior during executive committee meetings and because one, as state senator, made speech offensive to major client). Finally, many courts have held that a partnership can expel a partner without breaching any duty in order to resolve a "fundamental schism."See Waite, | Partner in law firm can be expelled from partnership for accusing, in good faith, another partner of overbilling without subjecting partnership to tort damages for breach of fiduciary duty. | Can a partner be expelled purely for business reasons? | 022474.docx | LEGALEASE-00146382-LEGALEASE-00146383 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 21317 | Missouri Bankers Ass'n v. St. Louis Cty., No. E099333, 2013 WL S629426 | 13+6 | "As a general rule, moot cases must be dismissed." Warlick v. Warlick, 294 S.W.3d 128, 130 (Mo.App.2009) (citations omitted). Although the Court has discretion to decide a case if it so chooses once the case has been argued and submitted, ... there is no reason to do so herein. The County has abandoned its enforcement efforts and will not resume then in light of the General Assembly's unfortunate decision to affirmatively withdraw this opportunity from Missouri residents. See State ex rel.Glendinning Companies of Connecticut Inc. v. Letz, 591 S.W.2d 92, 96 (Mo.App.1979) (suggesting that construction of extant administrative regulation could be moot by virtue of a newly enacted state statute nullifying it, had the regulation at issue in fact been nullified by the statute). Accordingly, the case should be dismissed and remanded to the Circuit Court for vacation of the judgment and dismissal of the lawsuit. | Mootness implicates justiciability, and therefore courts may dismiss a case for mootness sua sponte. | Should a moot claim be dismissed? | 034695.docx | LEGALEASE-00145442-LEGALEASE-00145443 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21318 | Sw. Oil Co. v. State of Tex., 217 U.S. 114 | 361+1535(20) | But it is contended that the statute contravenes the 14th Amendment, in that it denies to the Oil Company the equal protection of the laws. This position is based mainly on the ground that the statute, by imposing a tax on wholesale dealers of coal oil, naphtha, benzin, mineral oils refined from petroleum, and all other mineral oils, while omitting to put any such tax whatever on wholesale dealers in other articles of merchandise,"such, for instance, as sugar, bacon, coal, and iron,"so discriminates against wholesale dealers in the several articles specified in " 9 as to deny them the equal protection of the laws. This view gives to the Amendment a scope that could not have been contemplated at the time of its adoption. The tax in question is conceded to be an occupation tax simply. It was imposed under the authority of the state Constitution, providing that the legislature may "impose occupation taxes, both upon natural persons and upon corporations other than municipal, doing any business in this state ... except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax." [Art. 8, " 1.] It is not questioned that the state may classify occupations for purposes of taxation. In its discretion it may tax all, or it may tax one or some, taking care to accord to all in the same class equality of rights. The statute, in respect of the particular class of wholesale dealers mentioned in it, is to be referred to the governmental power of the state, in its discretion, to classify occupations for purposes of taxation. The state, keeping within the limits of its own fundamental law, can adopt any system of taxation or any classification that it deems best for the common good and the maintenance of its government, provided such classification be not in violation of the 14th Amendment. | The possible invalidity under the due process of law clause of the federal Constitution of the provisions as to penalties, contained in Gen.Laws Tex.1905, c. 148, S 9, taxing wholesale dealers in oils, does not invalidate the wholly independent provisions of that statute for the collection by civil suit of the taxes due the state. | Is the state required by Constitution to adopt the best possible taxation system? | 045877.docx | LEGALEASE-00146297-LEGALEASE-00146298 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21319 | Mance v. Mercedes-Benz USA, 901 F. Supp. 2d 1147 | 25T+182(1) | "Conversely, in certain circumstances, a nonsignatory can compel a signatory to arbitrate. For instance, a nonsignatory can enforce an arbitration agreement as a third-party beneficiary. Also, a signatory can be compelled to arbitrate at the non-signatory's insistence under "an alternative estoppel theory"'"i.e., "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." " Id. at 830"31 (quoting Thomson"CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 778 (2d Cir.1995) and citing Comer, 436 F.3d at 1101) (internal citations and quotation marks omitted). Indeed, "courts have generally found ... [that] arbitration is more likely to be attained when the party resisting arbitration is a signatory." Amisil, 622 F.Supp.2d at 831 (citing CD Partners, LLC v. Grizzle, 424 F.3d 795, 799 (8th Cir.2005); Merrill Lynch Investment Managers v. Optibase, Ltd., 337 F.3d 125, 131 (2d Cir.2003); Thomson"CSF, 64 F.3d at 779). | A signatory can be compelled to arbitrate at the non-signatory's insistence under an alternative estoppel theory, that is, because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations. | Is arbitration more likely to be attained when the party resisting arbitration is a signatory? | 10743.docx | LEGALEASE-00094043-LEGALEASE-00094044 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21320 | United States v. Yonan, 800 F.2d 164 | 319H+50 | The State's Attorney's Office Count. In Count One of the fourth superseding indictment the government charged Yonan with violating 18 U.S.C. " 1962(c)2 by associating with the Cook County State's Attorney's Office and conducting its affairs through a pattern of racketeering activity, that activity being seven acts of bribery involving an Assistant State's Attorney. The district court dismissed this count as legally insufficient because of its conviction that Yonan could not be said to have associated with the State's Attorney's Office. The district court identified two characteristics of persons who associate with enterprises for RICO purposes: 1. All have a relationship with the enterprise characterized by a stake or interest in the goals of the enterprise"legitimate or illegitimate. 2. All are associated with the enterprise as such, not merely with some other individual who is "employed by or associated with" the enterprise but is off on a frolic and detour of his or her own. 623 F.Supp. at 884"85. The district court concluded that Yonan shared neither of these characteristics, since he committed acts designed to undermine the office and thus had no interest in its goals, and since he had contact merely with a non-policymaker within the office who clearly was pursuing independent goals of his own. | Alleged relationship between defendant, who was charged with operating affairs of his law practice through a pattern of racketeering by bribing assistant state's attorney in order to influence disposition of some of his cases, and state's attorney's office was sufficient to allege that defendant was "associated" with that office for purposes of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C.A. S 1962(c). | "What are the characteristics of people who ""associate with"" enterprises for RICO purposes?" | 09968.docx | LEGALEASE-00095062-LEGALEASE-00095063 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21321 | Buie v. Com., 21 Va. App. 526 | 67+4 | Marquez argues that a person could be convicted under subsection A for burglarizing a subsection B structure, such as a vehicle, in which someone was living. But he cites no case in which a New Mexico court has considered"much less accepted"this proposition. The interpretation he urges simply has not been borne out by the case law. And, in fact, the few cases that have interpreted subsection A point to the opposite conclusion. Subsection A of the burglary statute is not susceptible to the broad interpretation that Marquez asks the Court to give it. The locational element of New Mexico residential burglary is limited to fixedstructures and does not extend to movable structures, such as vehicles, set out in the separate non-residential burglary subsection. | In order for structure to be subject of burglary, it must be permanently affixed to ground at time of unlawful entry. Code 1950, S 18.2-90. | Does burglary require permanently fixed structures? | Burglary - Memo 256 - SB.docx | LEGALEASE-00036873-LEGALEASE-00036876 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21322 | Grove Isle Ass'n v. Grove Isle Assocs., LLLP, 137 So. 3d 1081 | 30+3200 | Affirmative defenses, such as statute of limitations and laches, are generally matters raised in an answer and not a motion to dismiss. Rigby v. Liles, 505 So.2d 598, 601 (Fla. 1st DCA 1987). However, where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the defense bars the action as a matter of law, a motion to dismiss raising the defense is properly granted. Saltponds Condo. Ass'n v. Walbridge Aldinger Co., 979 So.2d 1240, 1244"45 (Fla. 3d DCA 2008); Alexander v. Suncoast Builders, Inc., 837 So.2d 1056, 1057 (Fla. 3d DCA 2002). Because affirmative defenses may be avoided by facts pled in a reply, the allegations of the complaint must also conclusively negate the plaintiff's ability to allege facts in avoidance of the defense by way of reply or dismissal is inappropriate. Rigby, 505 So.2d at 601; Saltponds Condo. Ass'n v. McCoy, 972 So.2d 282, 231 (Fla. 3d DCA 2007). | A trial court's order granting a motion to dismiss is reviewed de novo. | Are affirmative defenses generally matters raised in an answer and not a motion to dismiss? | 11248.docx | LEGALEASE-00094358-LEGALEASE-00094359 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | 1 |
| 21323 | PNC Bank, Nat. Ass'n v. Inlet Vill. Condo. Ass'n, 204 So. 3d 97 | 266+1335 | When considering a motion to dismiss, trial courts are not permitted to "go beyond the four corners of the complaint in considering the legal sufficiency of the allegations." Barbado v. Green & Murphy, P.A., 758 So.2d 1173, 1174 (Fla. 4th DCA 2000). Similarly, trial courts generally may not consider affirmative defenses, such as collateral estoppel, at the motion to dismiss stage. Id. Consideration of affirmative defenses, however, is permissible "where a plaintiff specifically incorporates prior proceedings into his complaint." Kowallek v. Lee Rehm, 183 So.3d 1175, 1177 (Fla. 4th DCA 2016). | Condominium association's involuntary dismissal from mortgagee's prior foreclosure action as sanction for mortgagee's discovery violations did not preclude, based on doctrine of collateral estoppel, mortgagee's entitlement to safe harbor protection under statute governing condominium assessments in mortgagee's subsequent declaratory judgment action against association; dismissal as sanction did not render assessment lien superior to mortgage lien, as basis for precluding safe harbor, and issue of lien priority was never otherwise litigated in prior proceeding, so that application of doctrine of collateral estoppel was unwarranted. West's F.S.A. S 718.116(1)(b)(1), (1)(f). | Would it be permissible to consider affirmative defenses at the motion to dismiss phase where a plaintiff incorporates prior proceedings into his complaint? | 036321.docx | LEGALEASE-00147630-LEGALEASE-00147631 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 21324 | U.S. ex rel. Mikes v. Straus, 931 F. Supp. 248 | 25T+146 | Plaintiff argues that the employment agreement between plaintiff and defendants bars the litigation of any claim arising during the period of employment. Plaintiff's vague reference to this court's previous decision sheds little light on this argument. In our previous decision, we held that plaintiff's retaliatory discharge claim involves issues surrounding the employment requirements contained in plaintiff's employment agreement. Mikes II, 889 F.Supp. at 755. Because the parties agreed to arbitrate all "disagreements, claims, questions or controversies which may arise out of or relate to [the] Agreement," we held that plaintiff's retaliatory discharge claim was subject to arbitration. Id. However, we distinguished plaintiff's qui tam action: Because plaintiff's qui tam action is completely outside the scope of the Agreement, it is not covered by the arbitration clause. The Agreement relates solely to the terms of plaintiff's employment by PCCA. However, plaintiff's qui tam claims in no way impinge on her employee status. Even if plaintiff had never been employed by defendants, assuming other conditions were met, she would still be able to bring a suit against them for presenting false claims to the government.... [P]laintiff's qui tam action clearly does not fall within her agreement to arbitrate. | Former employers' extortion counterclaim to former employee's qui tam action was not required to be arbitrated under employment agreement; counterclaim was outside scope of agreement and therefore not covered by arbitration clause. 31 U.S.C.A. S 3729 et seq. | Can retaliatory discharge claims be submitted to arbitration? | 007864.docx | LEGALEASE-00148911-LEGALEASE-00148912 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21325 | Kennedy v. Bank of Ephraim, 594 P.2d 881 | 195+99 | Plaintiffs next argue that the judgment against them for $42,951.33, noted ante, should be reduced to half that amount in accordance with the law of contribution among co-obligors. Plaintiffs also contend that the Court erroneously instructed the jury in this matter. The evidence shows that Bartons' involvement in the Barclays Bank matter in the previous lawsuit was similar to their involvement in the Ephraim Bank note here. Barton signed a letter of guarantee, guaranteeing the debt of Charles R. Kennedy with Barclays Bank, and received none of the proceeds or other consideration. It is clear that Barton was merely an accommodation party as that term is defined by Section 70A-3-415.(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.(5)An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party. | Where defendant signed letter of guarantee guaranteeing plaintiffs' debt, and received none of the proceeds or other consideration, defendant was merely an "accommodation party", and as such, where he had paid judgment on the debt, he was entitled to judgment against plaintiffs for the full amount he was required to pay, and provided for contribution among codebligors was not applicable. U.C.A.1953, 70A-3-415; U.C.C. S 3-415 comment. | Is accommodating party liable to the party accommodated? | Bills and Notes - Memo 641- ANM.docx | LEGALEASE-00037979-LEGALEASE-00037980 | Condensed, SA, Sub | 0.55 | 0 | 1 | | 1 | |
| 21326 | Burrows v. W.U. Tel. Co., 86 Minn. 499 | 83E+580 | This presents a question somewhat difficult of solution. We have found no case in the books presenting exactly the same facts. It is well settled that a bank has no authority to pay out the money of its depositors upon a check where the name of the payee has been forged. It is also the law that where the entire transaction is fictitious, and the payee and check have no existence in fact, at no time does such a check obtain legal status, no matter whether parties deal with it in good faith or not. It has been decided that where a check has been issued, payable to a certain party as payee, and another party of the same name comes into possession of it either by mistake or fraud, and forges the signature of the real party, this does not give the check any legal status, so as to protect a bank against which it was drawn. Mead v. Young, 4 Term R. 28; Graves v. Bank, 17 N. Y. 205; Clothing Co. v. Crosswhite, 124 Mo. 34, 27 S. W. 397, 26 L. R. A. 568, 46 Am. St. Rep. 424. The authorities on this subject are quite thoroughly reviewed in the note to Land Title & Trust Co. v. Northwestern Nat. Bank (Pa.) 46 Atl. 420, 50 L. R. A. 75, 79 Am. St. Rep. 717, and thus summarized "Whatever the true theory may be, it is apparent from the foregoing cases that the drawer of a check, draft, or bill of exchange, who delivers it to an impostor, supposing him to be the person whose name he has assumed, must, as against the drawee or a bona fide holder, bear the loss, where the impostor obtains payment of or negotiates the same. On the other hand, if the check, draft, or bill is delivered to an impostor who has assumed to be the agent of the person named as payee, the loss will not fall on the drawer, at least if he was free from negligence, and there was a real person bearing that name, whom he intended to designate as payee." But not one of the cases then reviewed presents exactly the same state of facts as are now under consideration. | A telegraph company which, upon order by telegraph, issues and delivers its check by mistake to the wrong party, is liable in the amount thereof to an innocent purchaser for value, who takes the same upon his indorsement. Prima facie such indorser is the payee intended, and a purchaser who takes the check from him in good faith, believing him to be the payee, is not called upon to inquire any further than may be necessary to establish the identity of the indorser and the party to whom the check was delivered as payee. | "Should the drawer of a check, draft or bill of exchange, who delivers it to an impostor, supposing him to be the person whose name he has assumed, bear the loss where the impostor obtains payment of or negotiates the same?" | Bills and Notes -Memo 528-PR_58210.docx | ROSS-003292166-ROSS-003292168 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 21327 | Milwaukee Cty. v. Northrop Data Sys., 602 F.2d 767 | 95+129(1) | Other courts have held that upon the adoption of the Uniform Commercial Code the period of limitations therein prescribed supersedes preexisting statutes. See e.g., Sesow v. Swearingen, 552 P.2d 705 (Okl.1976)3 and cases there cited. The Supreme Court of Wisconsin recognized in Columbian Banking Co. v. Bowen, 134 Wis. 218, 114 N.W. 451, 452, (1908), that the negotiable instrument statute was enacted for the purpose of furnishing a certain guide in the determination of questions relating to commercial paper, and in the absence of ambiguity was controlling, and "reference to case law as it existed prior to the enactment is unnecessary and is liable to be misleading". We think the same reasoning is applicable with respect to the Uniform Commercial Code. We conclude that s 402.725(1) is controlling. Accordingly the one-year limitation is applicable only if the County is a "merchant" as defined in the Code. | County which, pursuant to solicited bids in conformity with specifications prepared by county, purchased a computerized laboratory information system, was a "merchant" for purposes of limitation under Wisconsin Uniform Commercial Code, and thus county and seller could properly vary six-year limitation period of Code by contract provision limiting such period to one year. W.S.A. 402.101 et seq., 402.104(1), 402.725(1). | Is the negotiable instrument law enacted for the purpose of furnishing a certain guide for the determination of all questions relating to commercial paper? | 010620.docx | LEGALEASE-00148660-LEGALEASE-00148661 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21328 | Treat v. Pierce, 53 Me. 71 | 266+2184 | The precise question here is, whether the unauthorized publication of notice of foreclosure can be made good and operative from its date, by a subsequent assent. It is not a case of contract between parties but an attempt to enforce a legal right by a proceeding partaking of the nature of a judicial proceeding, requiring certain public acts, and a record thereof in the public registry. The rights and interests of other parties are involved. The date of the first publication is the essential thing to determine the future rights of all interested. In Clark v. Peabody, 22 Maine, 500, it was held that the ratification, by the payee of a note, of an indorsement thereof, made by one assuming to act as his agent, without authority from him, can operate only as an indorsement made at the time of the ratification. The indorsement in that case was made before suit, but the ratification was after the commencement of the suit. The Court held that, "when a certain thing must be done by one having power to do it, as a pre-requisite to constitute a liability of a party who had no agency in the act, the ratification of the performance thereof, by one unauthorized, cannot create a liability where none existed before." | The unauthorized signing and publishing of a notice of foreclosure cannot, by a subsequent ratification by the mortgagee, be rendered operative from the time of its first publication. When the first publication of a notice is invalid, the foreclosure is void. | How does ratification of an indorsement without authority by payee operate? | 010626.docx | LEGALEASE-00148723-LEGALEASE-00148724 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21329 | United States v. Romano, 879 F.2d 1056 | 63+1(2) | In Dixson, the Court held that the director of a private organization administering federal funds that had been granted to the city of Peoria was a "public official" under the bribery statute. Id. at 501, 104 S.Ct. at 1182. The Court stressed that the bribery statute was drafted with broad jurisdictional language, id. at 491-92, 104 S.Ct. at 1177, to reach all people performing activities for the federal government, regardless of the form of federal authority. Id. at 496, 104 S.Ct at 1179-80. | An engineer technician continued his status as employee of Environmental Protection Agency, after he agreed to plead guilty to a crime and become an undercover agent, and, thus, was a "public official" under federal bribery statute. 18 U.S.C.A. S 201(a). | Was the bribery statute drafted with broad or narrow jurisdictional language? | 012430.docx | LEGALEASE-00148073-LEGALEASE-00148074 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21330 | Colbert v. State, 78 So. 3d 111 | 67+4 | We construe the term "attached porch" narrowly in the accused's favor. See State v. Hamilton, 660 So.2d 1038, 1044 (Fla.1995). The state has argued in favor of a broader interpretation for the term. The facts herein do not warrant an expansive definition and the state's argument is rejected. In determining how narrowly to construe the term, the line between those areas falling within its reach, and those falling outside of it, are drawn logically. The structure of section 810.011(2) is significant in this regard, because it ensures that any area deemed an "attached porch" is part of the "dwelling." This reflects the legislature's intent to accord to an "attached porch" the same protection for one's right of habitation as is accorded a "dwelling." Indeed, the burglary statute "finds its theoretical basis and origin in the protection of a person's right of habitation." Hamilton, 660 So.2d at 1043. | Area in front of victim's townhome from which his bicycle was taken, consisting of concrete pad and mulch that were partially covered by garage eave and townhome's second floor balcony, which was not supported by posts, was not an "attached porch," and thus did not fall within the definition of "dwelling" for purposes of the burglary statute; the area was located in the front, rather than the rear, of the townhome and maintained neither posts nor a sufficient enclosure to visually indicate it was an extension of, rather than just near, the townhome, area was only partially covered by balcony and eave of garage, there was no personal property within area suggesting it was a logical extension of the dwelling, and area was open to unknown, uninvited people. West's F.S.A. §§ 810.011(2), 810.02(3)(b). | Do burglary statutes protect the right of habitation? | Burglary - Memo 265 - RK_58147.docx | ROSS-003321618-ROSS-003321619 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 21331 | Duffield v. San Francisco Chem. Co., 205 F. 480 | 260+27(2) | "By the term 'placer claim," as here used, is meant ground within defined boundaries which contains mineral in its earth, sand, or gravel, ground that includes valuable deposits not in place; that is, not fixed in rock, but which are in a loose state, and may in most cases be collected by washing or amalgamation without milling. By 'veins or lodes,' as here used, are meant lines or aggregations of metal imbedded in quartz or other rock in place." | A lode claim peaceably located within the boundaries of a void placer claim which was at the time actually unoccupied held valid. | What is a placer claim? | Mines and Minerals - Memo #261 - C - EB_57982.docx | ROSS-003280510-ROSS-003280511 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21332 | Duffield v. San Francisco Chem. Co., 205 F. 480 | 260+16 | "By the term 'placer claim," as here used, is meant ground within defined boundaries which contains mineral in its earth, sand, or gravel, ground that includes valuable deposits not in place; that is, not fixed in rock, but which are in a loose state, and may in most cases be collected by washing or amalgamation without milling. By 'veins or lodes,' as here used, are meant lines or aggregations of metal imbedded in quartz or other rock in place." | A deposit of calcium phosphate in veins or beds between well-defined rock walls held subject to location only as a lode claim under Rev.St. § 2320 (30 U.S.C.A. § 23). | Are veins or lodes meant lines or aggregations of metal imbedded in quartz or other rock in place? | 021521.docx | LEGALEASE-00148570-LEGALEASE-00148571 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 21333 | Wiles v. Maddox, 26 Mo. 77 | 10BH+377 | Partnership property is the primary fund for the payment of partnership debts, and one partner has no share in the partnership property except what remains after the payment of all debts and liabilities of the firm, and each partner has the right to have the partnership property applied to the payment of the joint debts before any one of the partners or his vendee or individual creditor can claim any right thereto. Neither partner has a separate interest in any part of the property belonging to the partnership, though each has an undivided joint interest in the whole; but this interest is not in any particular portion separate from the mass. The right of one partner to the possession of the whole is to hold for the benefit of the firm, and he has no right to sever any specific portion and hold it for his own use or to the exclusion of the other partners. | In levying execution against a single partner on his interest in the partnership property, the sheriff may seize and take possession of the entire partnership property, or any portion thereof, and deliver possession thereof to the execution purchaser. | What is the partnership property the primary fund for? | Partnership - Memo 471 - JK_58156.docx | ROSS-003296762-ROSS-003296763 | Condensed, Order, SA, Sub | 0.71 | 1 | 1 | 1 | 1 | 1 |
| 21334 | F. M. Strickland Printing & Stationery Co. v. Chenot, 45 S.W.2d 937 | 289+507 | The true test is that there must be a community of interest, a joining as principals by the parties, in carrying on a business for their joint profit. To subject a person not ostensibly a partner to liability for debts as a partner there must be some contract, to which he is a party, with respect to a community of profits, which gives him control as a principal over the conduct of the business. A community of profits implies a community of losses, but the implication may be rebutted. The law never presumes the existence of a partnership, but he who asserts its existence has the burden of showing such existence. Partners ordinarily have equal dominion over the partnership property, and equal voting power, and a majority rules. The power to expel a partner from the firm does not ordinarily exist. Hughes v. Ewing, 162 Mo. 261, 62 S.W. 465; Hely v. Hinerman, 303 Mo. 147, 260 S.W. 471; Graf Distilling Co. v. Wilson, 172 Mo.App. 612, 156 S.W. 23; Ellis v. Brand, 176 Mo.App. 383, 158 S.W. 705. | Where contract is in writing, unaffected by extraneous facts, whether partnership exists is question of law for court. | Does the existence of a partnership need to be proven? | 022527.docx | LEGALEASE-00148937-LEGALEASE-00148938 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 21335 | Burrows v. W.U. Tel. Co., 86 Minn. 499 | 83E+580 | The authorities on this subject are quite thoroughly reviewed in the note to Land Title & Trust Co. v. Northwestern Nat. Bank (Pa.) 46 Atl. 420, 50 L. R. A. 75, 79 Am. St. Rep. 717, and thus summarized: "Whatever the true theory may be, it is apparent from the foregoing cases that the drawer of a check, draft, or bill of exchange, who delivers it to an impostor, supposing him to be the person whose name he has assumed, must, as against the drawee or a bona fide holder, bear the loss, where the impostor obtains payment of or negotiates the same. On the other hand, if the check, draft, or bill is delivered to an impostor who has assumed to be the agent of the person named as payee, the loss will not fall on the drawer, at least if he was free from negligence, and there was a real person bearing that name, whom he intended to designate as payee." But not one of the cases there reviewed presents exactly the same state of facts as are now under consideration. | A telegraph company which, upon order by telegraph, issues and delivers its check by mistake to the wrong party, is liable in the amount thereof to an innocent purchaser for value, who takes the same upon his indorsement. Prima facie such indorser is the payee intended, and a purchaser who takes the check from him in good faith, believing him to be the payee, is not called upon to inquire any further than may be necessary to establish the identity of the indorser and the party to whom the check was delivered as payee. | "What is the liability of drawer of check, who delivers it to an imposter?" | 009701.docx | LEGALEASE-00149673-LEGALEASE-00149675 | Condensed, SA | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 21336 | Bank of Conway v. Stary, 51 N.D. 399 | 83E+433(1) | It is, of course, elementary that, in the absence of a statute, a general indorser is not a surety, nor is he entitled to the rights that belong to the surety relation. | Accommodation indorser, indorsing note before delivery under Comp. Laws 1913, §§ 6914, 6948, 6949, is not surety within sections 6675-6689, so as to have right under section 6683 thereof to require creditor, on penalty of exoneration of surety, to proceed against principal or to pursue any other remedy in his power which surety cannot himself pursue. | Can an indorser be a surety? | Bills and Notes - Memo 720 - ANM_58225.docx | ROSS-003294572 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 21337 | Farmers Nat. Bank of Waseca v. Brown, 198 Minn. 195 | 83E+731(4) | Further in the Negotiable Instruments Act, " 37, Mason's Minn.St.1927," 7080, it is provided: "A restrictive indorsement confers upon the indorsee the right (2) To bring any action thereon that the indorser could bring." Under that section it is uniformly held that an indorsee "for collection" may bring suit in his own name. Brannan's Negotiable Instruments Law, p. 481; Trude v. Fulton, 207 Ill.App. 216; see Alabama City, G. & A. Ry. Co. v. Kyle, 202 Ala. 552, 81 So. 54. Prior to the enactment of the Negotiable Instruments Act the rule was otherwise in this state. See Rock County National Bank v. Hollister, 21 Minn. 385. | Indorsee of note for collection held "real party in interest" entitled to bring action on note. Mason's Minn.St.1927, §§ 7080, 7094, 7235, 9165. | Can an Agent sue on his own name? | Bills and Notes - Memo 726-PR_58230.docx | ROSS-003310767-ROSS-003310768 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 21338 | Elec. City Brick Co. v. Hagler, 168 Ga. 836 | 366+7(7) | As we view the record in this case, one of the controlling issues is whether the plaintiff is entitled to the benefit of the doctrine of subrogation. The Civil Code of 1910, § 3552, declares that "payment by a surety or indorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal cost to which he may have been subjected by the default of his principal." "Where a negotiable promissory note, indorsed in blank and discounted at a bank, is paid to the bank at maturity by a surety thereon, title to the note passes to the surety by mere delivery, and no written assignment by the bank is necessary" Youmans v Puder, 13 Ga. App. 785, 80 S. E. 34. | Indorser guaranteeing note held "surety" or "indorser," not "guarantor," and was entitled to be subrogated to payee's rights to extent of his payment (Civ.Code 1910, SS 3538, 3552). | Can a title to a note be passed to a surety by mere delivery? | Bills and Notes -Memo 992-DB_58716.docx | ROSS-003282189-ROSS-003282190 | Condensed, SA | 0.74 | 0 | 1 | | 1 | |
| 21339 | City of Nyssa v. Dufloth, 184 Or. App. 631 | 210+1005 | On appeal, defendants also assert that, "[i]f the Nyssa four foot ordinance falls into "type two" of the Robertson analysis, the trial court erred in denying the defendants the opportunity to present evidence." That argument is resolved by ORS 135.630. A demurrer can be raised for a number of reasons, but all of the reasons require a showing that, on its face, the accusatory instrument is inadequate. For instance, when a challenge is made to the constitutionality of the underlying statute on which the defendant is being charged, it is a challenge under ORS 135.630(4) that such a statute is incapable of providing the basis for a conviction. See, e.g., State v. McKenzie, 307 Or. 554, 560, 771 P.2d 264 (1989) ("If a statute is constitutionally too vague, then the facts alleged in an indictment under such a statute do not and cannot constitute an offense."). Such a challenge is resolved on the face of the demurrer. State v. Horn, 57 Or. App. 124, 128, 643 P.2d 1338 (1982) ("In order to prevail on a demurrer on constitutional grounds, defendants must show that the statute under which they were charged is overbroad (or vague) on its face.") emphasis added).The resolution of a demurrer requires a ruling as a matter of law, that the statute being challenged either is, or is not, constitutional. See State v. Weber, 172 Or. App. 704, 714, 19 P.3d 378 (2001) ("Because the citation was facially sufficient, the court properly denied the demurrer." (footnote omitted; emphasis added)). Thus, the trial court did not err in denying defendant's request to put on evidence in this case. | A demurrer is limited to the face of the charging instrument. | Is a demurrer on constitutional grounds sustainable if the statute is vague or overbroad on its face? | 014434.docx | LEGALEASE-00149595-LEGALEASE-00149596 | Condensed, SA | 0.96 | 0 | 1 | | 1 | |
| 21340 | Fowler v. N. Carolina Dep't of Revenue, 775 S.E.2d 350 | 371+3482 | Two circumstances must concur in order to establish a domicile: first, residence, and secondly, the intention to make it a home, or to live there permanently, or, as some of the cases put it, indefinitely. To effect a change of domicile, therefore, the first domicile must be abandoned with no intention of returning to it, and actual residence taken up in another place coupled with the intention to remain there permanently or indefinitely." (citations omitted); see also In re Estate of Severt, 194 N.C.App. 508, 515, 669 S.E.2d 886, 891 (2008) ("Domicile is ... a question of fact.") (quoting In re Will of Marks, 259 N.C. 326, 331, 130 S.E.2d 673, 676 (1963) (discussing in which state a testator's will could be properly probated, noting: "Domicile is, however, a question of fact. Different courts may reach different conclusions with respect to this factual question.")). As such, we review the trial court's order under the substantial evidence test. Cape Med. Transp., Inc., 162 N.C.App. at 22, 590 S.E.2d at 14 (citation omitted). | Substantial evidence supported trial court's determination, in income and gift tax proceeding, that taxpayers changed their domicile from North Carolina to Florida on the day after they entered into a binding agreement to sell majority interest in successful business, which sale was set to occur the next month; taxpayers' accountant advised them to establish a new domicile prior to sale of business, and one day after they entered into agreement, they flew to Florida and attempted to acquire Florida driver's licenses, attempted to register to vote, attempted to acquire a post-office box, attempted to register their dog, and registered one vehicle, albeit as non-residents, and stayed at the Florida home they purchased several years earlier. 17 NCAC 6B.3901 (2011); West's N.C.G.S.A. SS 105-134(1), 105-134.1(12) (Recodified). | What circumstances must concur in order to establish a domicile? | 014522.docx | LEGALEASE-00149123-LEGALEASE-00149124 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 21341 | Heien v. Crabtree, 364 S.W.2d 271 | 17+118 | "It is to be noticed that here the parties are undertaking to inherit property from Hicklin P. and Bertha Hunnicutt by establishing the status of Helen Mar as their adopted daughter. This is in effect the reverse of the true principle of estoppel. "Estoppel can never be invoked to establish facts, but may only be used to prevent parties from relying upon facts which do exist." | Party cannot be estopped because of his failure to do that which he owed no duty to do; and since alleged adopted child owed no duty to execute documents of adoption and any duty in that regard was upon alleged adoptive parents, no estoppel could arise in their favor or in favor of those claiming under them. | Can an estoppel be invoked to establish facts? | Estoppel - Memo #26 - CSS_58258.docx | ROSS-003281048-ROSS-003281049 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 21342 | In re Forked Deer Drainage Dist., 133 Tenn. 684 | 405+2801 | In respect of taxes, proper, we have a line of cases holding distinctly that the power to levy taxes can be delegated by the Legislature only to counties and incorporated towns. Smith v. Carter, 131 Tenn. 1, 173 S. W. 430, and cases therein cited. | A drainage district is a governmental agency to which power to levy special assessments may be properly delegated. | Can the power of taxation be delegated to incorporated towns by the Legislature? | 019107.docx | LEGALEASE-00149453-LEGALEASE-00149454 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21343 | In re Forked Deer Drainage Dist., 133 Tenn. 684 | 405+2801 | In respect of taxes, proper, we have a line of cases holding distinctly that the power to levy taxes can be delegated by the Legislature only to counties and incorporated towns. Smith v. Carter, 131 Tenn. 1, 173 S. W. 430, and cases therein cited. | A drainage district is a governmental agency to which power to levy special assessments may be properly delegated. | Can the power of taxation be delegated to counties by the Legislature? | Highways -Memo 289 - DB_58546.docx | ROSS-003293750 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21344 | Stark v. McLaughlin, 45 Idaho 112 | 92+4064 | "A highway district in Idaho is not a political municipality created for governmental purposes, but its powers are specially limited to the construction of highways for the benefit of the inhabitants and property therein, and its power to tax is not unlimited." Kinama Highway Dist. v. O. S. L. R. Co. (C. C. A.) 298 F. 431. (railbus). | In view of required notices of election for organization and issuance of bonds and right of appeal, Highway District Law held not to deprive owner of property without due process of law (U.S. Const.Amend. 14; Const.Idaho, art. 1, S 13; C.S. SS 1490, 1492-1495, 1510, 1551, 1552, 1554, 1555, 3434, 3509). | Is the power of a highway district to tax unlimited? | Highways -memo 291 - DB_58548.docx | ROSS-003282670 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 21345 | Stark v. McLaughlin, 45 Idaho 112 | 200+90 | "Highway districts as intended by the Highway District Law, supra, cannot be said to correspond identically with other public corporations, or counties, or municipal corporations, or cities, towns and villages. They are quasi municipal corporations, not political municipalities, not created for purposes of government, but for a special purpose, namely, that of improving the highways within the district." Strickfaden v. Greencreek Highway District, supra. | In view of required notices of election for organization and issuance of bonds and right of appeal, Highway District Law held not to deny equal protection of law (U.S. Const.Amend. 14; Const.Idaho art. 1, S 13; C.S. SS 1490, 1492-1495, 1510, 1551, 1552, 1554, 1555, 3434, 3509). | Is highway district a political municipality? | 019111.docx | LEGALEASE-00149503-LEGALEASE-00149504 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21346 | Perry v. Lockert, 414 F. Supp. 169 | 309+175 | This principle is not a novel one. In the 1869 case of Overton v. Harding, 46 Tenn. (6 Coldwell) 375 (1869), the Tennessee Supreme Court ruled that an indorser (alternately referred to by the court as a surety) on a note "has no remedy against the maker, (i.e., principal) for costs incurred by him in his own defense." The court distinguished such an "indorser for value" from an "accommodation indorser," declaring that the latter "may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: 1 Parsons on Con., 33; Sedgwick on Dam., 297, 335." | Under Tennessee law, a compensated surety, as opposed to accommodation surety, in absence of an indemnity agreement or controlling statute may not recover from its principal the expenses which it incurs in defending a suit brought by an obligee against the principal and surety as codefendants, unless it has first satisfied some portion of principal's obligation. | Does an indorser have a remedy against the maker for the cost incurred by him in his own defence? | 009690.docx | LEGALEASE-00150124-LEGALEASE-00150125 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21347 | In re Forked Deer Drainage Dist., 133 Tenn. 684 | 405+2801 | The case of Smith v. Carter involved an effort to vest a power to tax in a board of commissioners of a road improvement district who were not agencies of a county; the proposed district being composed of fractional parts of two counties. In the instant case we did not have to deal with a delegation of the taxing power proper; if so, the doctrine of Smith v. Carter would compel an affirmance of the judgment below. In such case the constitutional provision is specific, clearly applicable and inhibitory. | A drainage district is a governmental agency to which power to levy special assessments may be properly delegated. | Is the Road Improvement District an agency of the county? | 019091.docx | LEGALEASE-00150528-LEGALEASE-00150529 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21348 | United States v. McFadden, 238 F.3d 198 | 48A+335 | The term "traffic" is defined in the VTL as "[p]edestrians, ridden or herded animals, vehicles, bicycles, and other conveyances either singly or together while using any highway for purposes of travel." See N.Y. Veh. & Traf.Law ° 152 (McKinney's 1996). A "traffic infraction" is a violation of "any law, ordinance, order, rule or regulation regulating traffic which is not declared by this chapter or other law of this state to be a misdemeanor or a felony." The term "traffic" thus includes bicycles, and Section 19-176(b) is accordingly a "law, ordinance, order, rule or regulation regulating traffic" that is, setting forth a traffic infraction. McFadden argues that the term "highway" excludes the sidewalk and, therefore, that Section 19-176(b) does not regulate "traffic" because a bicycle ridden on the sidewalk is not "traffic" under the VTL. This argument is unpersuasive because following the somewhat confusing provisions of New York's traffic laws makes clear that, in fact, a highway-in a technical sense-includes the sidewalk. | Defendant who rode his bicycle on a sidewalk did not violate New York statute requiring bicyclists riding on roadways to ride near the right-hand curb or near a suitable right-hand shoulder. N.Y.McKinney's Vehicle and Traffic Law S 1234(a). | "Is traffic defined as pedestrians, ridden or herded animals, vehicles, and other conveyances either singly or together while using any highway for the purpose of travel?" | Bills and Notes- Memo 452-PR_59324.docx | ROSS-003282308-ROSS-003282309 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21349 | Haskell v. Mitchell, 53 Me. 468 | 83E+551 | The note in suit was sold and assigned by delivery before and indorsed after its maturity. Before it was indorsed, and up to the time of its indorsement, a suit to enforce its payment must have been brought in the name of the payee. If so brought, it would have been competent for the maker to show fraud or a failure of consideration by way of defence. The plaintiff, by his purchase, acquired only the rights of an assignee. The indorsement after maturity enables the plaintiff to maintain an action in which he was entitled prior to such indorsement. Such is the well settled law of this State, though it may be otherwise in England. Calder v. Billington, 15 Maine, 398; Savage v. King, 17 Maine, 301. | An assignment and delivery of a negotiable promissory note before maturity, without an indorsement by the payee until after maturity, gives to the assignee only the rights of the payee. | Can a negotiable instrument be assigned before maturity? | 010798.docx | LEGALEASE-00151130-LEGALEASE-00151131 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21350 | Daniggelis v. Pivan, 159 Ill. App. 3d 1097 | 308+132(1) | The undisputed facts of the instant case reveal that Rita Pivan, P.M.C., Abramson, and Finder entered into their individual finance agreements with Daniggelis through an agent, either Pivan or Wilson. The authority of these agents is uncontested. The long established rule, enunciated by our supreme court in Taylor v. Taylor (1858), 20 Ill. 650, is that all the acts of an agent performed within the scope of his agency bind the principal and are regarded as the principal's own acts. (20 Ill. 650, 652.) Applying this rule to the instant case, we reach the conclusion that Rita Pivan and P.M.C. are bound by the acts of Pivan (their agent), and Abramson and Finder are bound by the acts of Wilson (their agent). | Lenders were bound by acts of their agents who entered into individual finance agreements with borrower. | Is a principal bound by all the acts of an agent performed within the scope of his agency? | Principal and Agent - Memo 196 - KC_59476.docx | ROSS-003282333-ROSS-003282334 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 21351 | Mut. Ben. Life Ins. Co. v. Zimmerman, 783 F. Supp. 853 | 217+3626 | If the court determines the dispute falls within the scope of the arbitration agreement, it must refer the dispute to arbitration without considering the merits. Painewebber, 921 F.2d at 511. This policy eases the workload of the courts without jeopardizing the rights of the parties because "the arbitrators appointed by the parties are presumably specialists, familiar not only with the relevant statutory and common law but also with custom and usage of the trade." Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir.1983); see also Sharon Steel, 735 F.2d at 778. | Claim for breach of fiduciary duty by managing agent of reinsurance pool was within scope of narrow arbitration clause in reinsurance pool management agreement, though agreement did not identify agent's fiduciary duties as managing agent, since there would not be fiduciary relationship without the management agreement; however, claims against other parties for tortious interference with fiduciary relations did not arise under the management agreement and were not within the scope of the arbitration clause. | Are the arbitrators appointed by the parties presumably specialists? | 007961.docx | LEGALEASE-00151424-LEGALEASE-00151425 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 21352 | Horvath v. Bank of New York, N.A., 641 | 266+1442 | The facts of the case are largely undisputed; the parties primarily disagree on their meaning. On October 23, 2006, America's Wholesale Lender ("AWL") and John Horvath agreed to terms on a loan secured by a deed of trust on Horvath's property at 11599 Water Oak Court in Woodbridge, VA. Under the loan, Horvath received $650,000 and agreed to pay it back in monthly installments starting on December 1, 2006. Samuel I. White agreed to serve as the trustee for the loan and Mortgage Electronic Registration Systems, Inc. ("MERS") became the beneficiary. The terms of the note and the deed of trust clarified that AWL could freely transfer the note at any time, stating, "the Lender may transfer this note." To drive that point home, the note clarified that "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder." " | Transferee note holder had authority under Virginia law to enforce note by appointing substitute trustee and foreclosing on property, since note had been endorsed in blank, meaning it was bearer paper and enforceable by whoever possessed it, note and deed of trust demonstrated that parties intended to allow documents to be freely transferred and there was no alteration to note or deed of trust at any time, there was no change in its terms of payment, borrower was in default on his obligations, and note was in holder's hands when foreclosure sale took place. West's V.C.A. SS 8.3A-104, 8.3A-201(b), 8.3A-203(b), 8.3A-205(b), 8.3A-302(a). | Who can be called a note holder? | Bills and Notes- Memo 348-PR_60211.docx | ROSS-003309088 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 21353 | Klauber v. Biggerstaff, 47 Wis. 551 | 83E+680 | A bank-note is constantly and universally, both at home and abroad, treated as money--as cash; and paid and received as cash; and it is necessary for the purposes of commerce that their currency should be established and secured." | The word "currency," in a certificate of deposit, means money, including bank notes, which, though not an absolute legal tender, are issued for circulation by authority of law, and are in actual and general circulation at the locus in quo at par with coin. | Are bank notes equivalent to money? | 009784.docx | LEGALEASE-00153354-LEGALEASE-00153355 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 21354 | Metzerott v. Ward, 10 App. D.C. 514 | 83E+129(1) | The evidence in the case shows that John H. Metzerott signed the note in the place where he intended to sign it, that his mistake, if mistake there was, arose from his ignorance of law, and was one of law and not of fact, and was not such an error as could be corrected by oral testimony under any circumstances, and especially not under the circumstances disclosed. Where a promissory note made payable to a particular person, or order, as in this case, is first endorsed by a third person, said third person is held to be an original promissor, guarantor, or indorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. Rey v. Simpson, 22 How. 341; see also Bank v. Wilson, 5 App. D. C. 8. | Where the giving of a note suspends all right of action on the original indebtedness for the amount of which the note is given, such suspension is a sufficient consideration for the note to bind all parties who sign it, whether they all derive personal benefit from such suspension or not. | When can a third person be held as an endorser? | 009851.docx | LEGALEASE-00153570-LEGALEASE-00153571 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21355 | Comerica Bank v. Mann, 13 F. Supp. 3d 1262 | 101+2544(2) | A principal is bound by the statements of its agent made while the agent was acting within the scope of his authority. Thomkin Corp. v. Miller, 156 Fla. 388, 24 So.2d 48, 49 (1945); Am. Lead Pencil Co. v. Wolfe, 30 Fla. 360, 11 So. 488, 491 (1892); Banco Santander Puerto Rico v. Select Title Serv. Inc., 692 So.2d 950, 952 (Fla.Dist.Ct.App.3d 1997). "The agent's authority may be conferred by writing, by parol [evidence], or it may be inferred from the related facts of the case." Thomkin Corp., 24 So.2d at 49. | Registered agent for company chartered under Cayman law did not have authority to receive notice of disposition of collateral on behalf of company or its principal, as required for disposition of collateral by secured party to be commercially reasonable under Florida law, although agent had authority to accept service of process and other notices. West's F.S.A. S 679.613. | Is a principal bound by the statement of an agent? | 041547.docx | LEGALEASE-00153453-LEGALEASE-00153454 | Condensed, SA, Sub | 0.27 | 0 | 1 | | 1 | 1 |
| 21356 | Maryland Econ. Dev. Corp. v. Montgomery Cty., 431 Md. 189 | 371+2218 | The County argues that ED " 10"129(a) was not intended to exempt MEDCO from "any" tax. In this regard, the County draws a distinction between direct taxes and excise taxes. As this Court has explained, a direct tax is a property tax, which "is a charge on the owner of property by reason of his ownership alone without regard to any use that might be made of it."Weaver v. Prince George's County, 281 Md. 349, 357, 379 A.2d 399, 403 (1977) (citation omitted). In contrast, an excise tax is "defined as a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege" which "is said to embrace every form of taxation that is not a burden directly imposed on persons or property." Id. at 357"58, 379 A.2d at 404 (citation and quotation marks omitted). The recordation tax at issue here is "an excise tax imposed upon the privilege of recording the deed." Dean v. Pinder, 312 Md. 154, 159, 538 A.2d 1184, 1187 (1988). | Economic development article which exempted Maryland Economic Development Corporation (MEDCO) from "any" requirement to pay taxes or assessments on its properties or activities exempted MEDCO from both direct and excise taxes, and thus, exempted MEDCO from obligation to pay recordation tax for recording of deed of trust on its property that secured loan from lender. West's Ann.Md.Code, Economic Development, S 10-129(a). | What is property tax? | 046025.docx | LEGALEASE-00153334-LEGALEASE-00153335 | Condensed, SA, Sub | 0.55 | 0 | 1 | | 1 | 1 |
| 21357 | Carroll Cty. Sav. Bank v. Strother, 28 S.C. 504 | 83E+356 | Our next inquiry, therefore, is whether this is a negotiable note; and this depends upon the effect of three stipulations contained in the note: (1) For the payment of "all counsel fees and expenses in collecting this note, if it is sued or placed in the hands of counsel for collection," (2) the provision whereby the payee is invested with "full power of declaring this note due, and take possession of said engine and saw-mill, at any time they may deem this note insecure, even before the maturity of the same;" (3) the promise to pay the amount named, "with exchange on New York." So far as we are informed, we have no direct authority in this state as to the effect of either the first two stipulations inserted in a paper which is in form of a note. In Bank v. Gary, 18 S. C. 287, it was intimated, though not decided, that an agreement to pay counsel fees would deprive a paper of its negotiability, because it imported into the contract an element of uncertainty as to the amount agreed to be paid. So, in Wallace v. Dyson, 1 Speer, 127, and Barnes v. Gorman, 9 Rich. Law. 297, obligations in the form of notes, promising to pay specified sums of money for the hire of slaves, and also to furnish clothing, pay taxes, etc., were held not to be promissory notes under statute of Anne, and of course, therefore not negotiable. So, also in Read v. McNulty, 12 Rich. Law, 445, a promise in writing to pay a certain sum of money at a specified time, "with current rate of exchange," was held not to be a promissory note, under the statute of Anne, by reason of the uncertainty imported into the contract by the words quoted, as the rate of exchange was variable. It will be observed, however, that, in the three cased last cited, the stipulations inserted rendered the amount payable at maturity of the paper uncertain; whereas, in the case under consideration, the only uncertainty as to the amount arises after maturity, and after the paper would thereby lose its negotiability, and hence these cases are not | A contract to pay money which authorizes the payee to declare it due whenever deemed insecure is not a negotiable note. | Can a promissory note be used to hire a slave? | Bills and Notes - Memo 1002 - PR RK_61282.docx | ROSS-003307693-ROSS-003307694 | Condensed, SA, Sub | 0.95 | 0 | 1 | | 1 | 1 |
| 21358 | Gay v. Rooke, 151 Mass. 115 | 8.30E+33 | In order to constitute a good promissory note, there should be an express promise on the face of the instrument to pay the money. A mere promise, implied by law, founded on an acknowledged indebtedness, will not be sufficient. Story, Prom. Notes, " 14; Brown v. Gilman, 13 Mass. 158 While such promises need not be expressed in any particular form of words, the language used must be such that the written undertaking to pay may fairly be deduced therefrom. Insurance Co. v. Whitney, 1 Metc. 21. In this view, the instrument sued on cannot be considered a promissory note. It is an acknowledgment of a debt only; and, although from such an acknowledgment a promise to pay may be legally implied, it is an implication from the existence of the debt, and not from any promissory language. Something more than this is necessary to establish a written promise to pay money. It was therefore held in Gray v. Bowden, 23 Pick. 282, that a memorandum on the back of a promissory note, in these words, "I acknowledge the within note to be just and due," signed by the maker, and attested by a witness, was not a promissory note signed in the presence of an attesting witness, within the meaning of the statute of limitations. In England, an IO'U, there being no promise to pay embraced therein, is treated as a due-bill only. The cases which arose principally under the stamp act are very numerous, and they have held that such a paper did not require a stamp, as it was only evidence of a debt. 1 Daniel, Neg. Inst. " 36; 1 Rand.Com. Paper, " 88; Fesenmayer v. Adcock, 16 Mees. & W. 449; Melanotte v. Teasdale, 13 Mees. & W. 216; Smith v. Smith, 1 Fost. & F. 539; Gould v. Coombs, 1 C.B. 543; Fisher v. Leslie, 1 Esp. 425, Israel v. Israel, 1 Camp. 499; Childers v Boulnois, Dowl. & R.N.P. 8; and Beeching v. Westbrook, 8 Mees. & W. 412. | An instrument in writing, in the form: "I O U, E. A. Gay, the sum of seventeen dolls. 5/100, for value received. John R. Rooke,"-is not a promissory note. | Can a note in writing signed by witness be considered as promissory note? | 009005.docx | LEGALEASE-00154715-LEGALEASE-00154716 | Condensed, SA, Sub | 0.91 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | | 9,029 |
| 21359 | Pyle v. Bituminous Cas. Corp., 42 Tenn. App. 145 | 336H+126 | In the note to Section1463, supra, Tyrev. Magness, 33Tenn. 276, is cited as one of the authorities for the statement in the text. Tyrev. Magness, 33Tenn. 276, held: "Res Judicata. Where suit is brought by an assignee of a note against the makers, who recover judgment against the assignee on the merits, upon a cause of defense that existed against the note before the assignment, and the assignor was notified of the defence so as to enable him to litigate the matter with the defendants, the assignor cannot afterwards, by erasing the assignment, maintain a suit against the same parties on the note. In such case the assignee succeeded to the interest of the assignor, and held in privity with him". Cited in: Cornelius v. City of Memphis, 3 Tenn.Ch. 5, 7. | Where declarations in suits arising from automobile accident alleged that automobile was being operated with consent of defendant, it became incumbent on defendant to present defense to charge, and having failed to defend after constructive and actual notice of pendency of suits, default judgments, rendered against defendant and unappealed within 30 days after rendition, became binding and conclusive on defendant. | Can an assignor erase the assignment in order to maintain a suit against the same parties on the note? | Bills and Notes - Memo 947 - RK_60807.docx | ROSS-003292225 | Condensed, SA | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 21360 | Smith v. Fid. Consumer Disc. Co., 898 F.2d 896 | 172H+1342 | Through TILA, Congress sought to remedy the "divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them." Johnson v. McCrackin "Sturman Ford, Inc., 527 F.2d 257, 262 (3d Cir.1975). Indeed, the congressionally stated purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. " 1601(a). TILA, as a remedial statute which is designed to balance the scales "thought to be weighed in favor of lenders," is to be liberally construed in favor of borrowers. Bizier v. Globe Financial Services, 654 F.2d 1, 3 (1st Cir.1981). See Johnson, 527 F.2d at 262. | Although consumer lender's actions in prematurely beginning performance of loan transaction violated Truth in Lending Act, lender's actions did not constitute failure to deliver either required material disclosure or required rescission notice to debtor, as would warrant rescission of loan under Act. Truth in Lending Act, S 102 et seq., 125, 15 U.S.C.A. SS 1601 et seq., 1635; Truth in Lending Regulations, Regulation Z, S 226.23(b), c), 15 U.S.C.A. foll. S 1700. | Should Truth in Lending Act (TILA) be constructed in favor of lenders or borrowers? | Consumer Credit - Memo 154 - IS_61197.docx | ROSS-003280614-ROSS-003280615 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 21361 | Regents of Univ. of Michigan v. Ewing, 474 U.S. 214 | 141E+1182 | Ewing's claim, therefore, must be that the University misjudged his fitness to remain a student in the HHMInha program. The record unmistakably demonstrates, however, that the faculty's decision was made conscientiously and with careful deliberation, based on an evaluation of the entirety of Ewing's academic career. When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. Cf. Youngberg v. Romeo, 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982). | University faculties have the widest range of discretion in making judgments as to academic performance of students and their entitlement to promotion or graduation. | Should judges show great respect for the facultys professional judgement when asked to review the substance of an academic decision? | Education - Memo # 247 - C - KS_61021.docx | ROSS-003281534-ROSS-003281535 | Condensed, SA | 0.79 | 0 | 1 | 1 | 0 | 1 |
| 21362 | In re Cornerstone Homes, 544 B.R. 492 | 266+1412 | According to the Trustee, "[a]t least two courts have recognized the incongruity between the negotiation of a note under Article 3 and the misstatement of law set forth [in Collymore and its progeny]"" citing Bank of New York Mellon v. Deane, 970 N.Y.S.2d 427, 430 (N.Y. Sup.Ct. Kings Cnty.2013) and HSH Nordbank AG v. Barclays Bank PLC, 986 N.Y.S.2d 866 (N.Y.Sup.Ct.N.Y.Cnty.2014) (ECF AP No. 14 60) (emphasis added). However, neither decision served to overrule Collymore "as they were issued by lower courts" nor did they hold that an assignee was not entitled to enforce a note and mortgage by reason of a written assignment. See Deane, 970 N.Y.S.2d at 433"34 (discussing the common confusion between the terms "holder" and "assignee" and stating that "[w]hatever the rights of a person to enforce an instrument by reason of ... assignment, a person is not a "holder" by reason of ... assignment alone"). | Written assignments executed by individual investors who had previously loaned money to Chapter 11 debtor's business, and who were the lawful owners and holders of individual lender notes and mortgages, by which these individual investors purported to transfer to banks to whom these written assignments were delivered their individual lender mortgages, "together with the bond or obligation described in the mortgage," were sufficient under New York law to give banks standing to enforce mortgages, and to make the banks secured creditors for the more than $13 million that they advanced to debtor in connection with consolidation of earlier, individual mortgage loans, even in absence of endorsement and physical delivery of individual mortgage notes. | Can a person become a holder by reason of delivery? | 010858.docx | LEGALEASE-00155322-LEGALEASE-00155323 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 21363 | Anthony v. Anthony, 642 F. Supp. 2d 1366 | 172H+1341 | Other circuits have, however, ruled that TILA liability cannot arise from forgeries. In Jensen v. Ray Kim Ford, Inc., 920 F.2d 3 (7th Cir.1990), the plaintiffs purchased a new car and later discovered, due to a discrepancy in the monthly payments, that the contract was not the one they signed and was a forgery. The Seventh Circuit noted that a forged contract is a nullity, and the plaintiffs were not obligated under it. Because TILA requires disclosures only "to the person who is obligated," the Seventh Circuit concluded that TILA did not provide a remedy for the forgery. (citing 15 U.S.C. " 1631); see also MacDermid v. Discover Financial Services, 488 F.3d 721 (6th Cir.2007) (holding that a wife's fraudulent conduct in obtaining a credit card in both her and her husband's name did not render the creditor liable for failing to send the husband the required disclosures). | Homeowner's lack of assent to forged mortgage refinancing covenants never contractually obligated homeowner, under Florida law, as required for "consummation" of contract, within meaning of TILA disclosure requirements for providing good faith estimates of credit terms and correcting any inaccuracies prior to consummating residential mortgage transactions, and thus, TILA provided homeowner no remedy against lender. Truth in Lending Act, S 128(b), 15 U.S.C.A. S 1638(b); 12 C.F.R. S 226.2(a)(13). | Is a forged contract a nullity? | Consumer Credit - Memo 197 - RK_61859.docx | ROSS-003319193-ROSS-003319194 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21364 | United States v. Szabo, 760 F.3d 997 | 92+2039 | Where protected speech is at issue, the degree to which the government may regulate such speech depends on the nature of the forum. Preminger v. Principi, 422 F.3d 815, 823 (9th Cir.2005) (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). VA medical facilities are "non-public" fora, Preminger v. Peake, 552 F.3d 757, 765 (9th Cir.2008), and the government's power to regulate speech "is at its greatest when regulating speech in a non-public forum," Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 961 (9th Cir.2011) (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44"46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). For this reason, restrictions on speech in VA medical facilities do not violate the First Amendment so long as they are (1) reasonable in light of the purpose served by the forum and (2) viewpoint neutral. United States v. Kokinda, 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); Peake, 552 F.3d at 765. | Department of Veterans Affairs (VA) regulation prohibiting disorderly conduct in VA medical facilities was reasonable in light of purpose served by such facilities, and thus its application to veteran who yelled obscenities and made threats of physical violence to receptionist, doctor, and security guard did not violate First Amendment as applied, even if veteran's speech was protected, where regulation was viewpoint neutral, and sought to prohibit disturbances because purpose of VA facilities was to serve and care for veterans, many veterans had heightened sensitivities, and disturbances, including loud noises, could trigger psychological reactions from VA patient population. U.S.C.A. Const.Amend. 1; 38 C.F.R. S 1.218(a)(5). | Can speech be regulated by the Government? | Disorderly Conduct - Memo 145 - JK_61889.docx | ROSS-003283275-ROSS-003283276 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21365 | United States v. Szabo, 760 F.3d 997 | 15A+1302 | Where protected speech is at issue, the degree to which the government may regulate such speech depends on the nature of the forum. Preminger v. Principi, 422 F.3d 815, 823 (9th Cir.2005) (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). VA medical facilities are "non-public" fora, Preminger v. Peake, 552 F.3d 757, 765 (9th Cir.2008), and the government's power to regulate speech "is at its greatest when regulating speech in a non-public forum," Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 961 (9th Cir.2011) (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44*46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). For this reason, restrictions on speech in VA medical facilities do not violate the First Amendment so long as they are (1) reasonable in light of the purpose served by the forum and (2) viewpoint neutral. United States v. Kokinda, 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); Peake, 552 F.3d at 765. | Regulation's facial validity may only be raised outside of designated forum when that forum is somehow inadequate. 5 U.S.C.A. § 703. | Does the regulation of speech depend on the nature of the forum? | Disorderly Conduct- Memo 146- JK_61890.docx | ROSS-003293531-ROSS-003293532 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21366 | U.S. Insulation Sales Corp. v. Jones-Blair Co., 491 S.W.2d 226 | 241+201 | In Smock v. Fischel, 146 Tex. 397, 207 S.W.2d 891, 892 (1948), the Supreme Court decided this identical question by saying, through Chief Justice Hickman:"It is a well-established rule that when a plaintiff fails to appear and prosecute his case, the court can not try the plaintiff's cause of action, but the only remedy is to dismiss the same. * * * We see no reason why this same rule should not apply to a defendant's cross-action when the defendant fails to appear and prosecute the same. * * * Under these circumstances the court should not have rendered judgment against the defendant on his cross-action, but should have dismissed the same."To the same effect are Freeman v. Freeman, 160 Tex. 148, 327 S.W.2d 428, 431 (1959), and the numerous cases cited therein. | Where defendant, sued on sworn account, had notice of trial date but did not appear, trial court should not have rendered judgment against defendant on its counterclaim but should have merely dismissed the same, even though the counterclaim was allegedly barred by the two-year statute of limitations. Vernon's Ann.Civ.St. art. 5526. | Can court try the case for a party where party fails to appear and prosecute his case? | 039229.docx | LEGALEASE-00155289-LEGALEASE-00155290 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 21367 | Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls, 536 U.S. 822 | 141E+745 | In Vernonia, this Court held that the suspicionless drug testing of athletes was constitutional. The Court, however, did not simply authorize all school drug testing, but rather conducted a fact-specific balancing of the intrusion on the children's Fourth Amendment rights against the promotion of legitimate governmental interests. See id., at 652*653, 115 S.Ct. 2386. Applying the principles of Vernonia to the somewhat different facts of this case, we conclude that Tecumseh's Policy is also constitutional. | School board's policy requiring all students who participated in competitive extracurricular activities to submit to drug testing was a reasonable means of furthering the school district's important interest in preventing and deterring drug use among its schoolchildren, and therefore did not violate Fourth Amendment; students affected by policy had a limited expectation of privacy, degree of intrusion caused by policy was negligible given the method of collection of urine samples, and the only consequence of a failed drug test was to limit student's privilege of participating in extracurricular activities. U.S.C.A. Const.Amend. 4. | Is suspicionless drug testing of student athletes constitutionally permissible? | Education - Memo # 278 C - KS.docx | LEGALEASE-00045650-LEGALEASE-00045651 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 21368 | Tracfone Wireless v. Comm'n on State Emergency Commc'ns, 397 S.W.3d 173 | 371+2150 | In the present Constitution there is a declaration that taxation must be uniform, but no direct prohibition against double taxation. But a prohibition against double taxation was hardly necessary, because there cannot be such a thing as double taxation where the taxation is uniform. "Double taxation" means taxing twice, for the same purpose, in the same year, some of the property in the territory in which the tax is laid without taxing all of it. If all the property in the territory upon which the tax is imposed is taxed twice and for the same purpose and in the same year, then there is double taxation, this is not double taxation in the sense that such taxation is prohibited, because, within constitutional limits, if the tax is uniform, the amount of it is in the discretion of the taxing authorities and it may all be levied at one time, or it may be the subject of several levies.31 | Double taxation violates the equal and uniform clause of state constitution not so much because two taxes are assessed, but the problem is that the double-tax burden is imposed on some taxpayers but not on others; this unequal imposition is what offends common constitutional requirements of uniformity. Vernon's Ann.Texas Const. Art. 8, § 1(a). | What does double taxation mean? | 046072.docx | LEGALEASE-00156310-LEGALEASE-00156312 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 21369 | Cooper v. State, 2017 WL 5623582 | 67+6 | Next, appellant contends the evidence was insufficient to prove the State's allegation in the indictment that Charles Willingham occupied and controlled thehome burglarized. Appellant argues that it was necessary for the State to prove that Charles Willingham was present at the time of the burglary. Since Willingham was not present, appellant contends the evidence was insufficient. We disagree. In Kizer v. State, 400 S.W.2d 333 (Tex.Cr.App.1966), at 335, we said:"It is contended that the evidence is not sufficient to support the conviction on the ground that Sam Lawson nor any member of his family (sic) were occupying the house as a private residence on July 23."It is not essential that the family or occupant be personally present at the very time the residence is burglarized in order to constitute the offense of burglary of a private residence at night. It is sufficient if it is actually used at the time as a private residence, within the meaning of this article, even though at the time it was burglarized the family was temporarily absent. Handy v. State, 46 Tex.Cr.R. 406, 80 S.W. 526; Warren v. State, 120 Tex.Cr.R. 58, 47 S.W.2d 288." | In prosecution for burglary of a habitation, it was not necessary for State to prove that owner of home was present at time of the burglary. | Does a home have to be occupied to commit burglary? | 013028.docx | LEGALEASE-00156411-LEGALEASE-00156412 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 21370 | People v. Schmidt, 161 Ill. App. 3d 278 | 110+795(2.35) | Burglary requires a determination that "without authority (one) knowingly enters with intent to commit therein a felony or theft." (Ill.Rev.Stat.1985, ch. 38, par. 19"1.) The burglary, as charged, requires proof of the intent to commit theft, but not the theft. Theft under section 16"1(d) does not require an entry, nor does it require the intent to commit the initial theft, but a theft must have been committed by someone else. Thus, the burglary charge does not include the theft element necessary for a conviction under section 16"1(d). Neither the State's charge in the present case nor the State's proof included the section 16"1(d) elements. | Defendant charged with burglary was entitled to instruction on theft, even though theft was not lesser included offense of burglary, where defendant contended that he did not enter home, but had merely picked up items which third party had dropped. S.H.A. ch. 38, PP 5-2, 16-1(d). | Does burglary require the commission of a theft? | 013096.docx | LEGALEASE-00156549-LEGALEASE-00156550 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21371 | United States v. Hascall, 76 F.3d 902 | 350H+128S | In Fiore, 983 F.2d at 4, the First Circuit held that "burglary of a commercial building poses a potential for episodic violence so substantial as to" be a crime of violence. After first recognizing the specific reference to burglary of a dwelling in section 4B1.2, the court turned its attention to the otherwise clause. Id. Looking to dicta in Taylor, 495 U.S. at 594, 110 S.Ct. at 2156, the court noted the statement that commercial burglaries often pose a far greater risk of harm than burglaries of dwelling places. Fiore, 983 F.2d at 4. The First Circuit recognized its recurrent holding that commercial burglary is a violent felony under section 924(e) of the Armed Career Criminal Act. Id. That earlier First Circuit decisions referred to the Armed Career Criminal Act and the interpretation of that is identically worded otherwise clause was a distinction without a difference. Id. | Second-degree burglary of commercial building involved conduct that presented serious potential risk of physical injury to another, as required to be "crime of violence," for purposes of career offender provision of Sentencing Guidelines. U.S.S.G. §§ 4B1.1, 4B1.2, 18 U.S.C.A. | Can breaking into a commercial building be considered a violent felony? | Burglary - Memo 303 - RK_62305.docx | ROSS-003280517-ROSS-003280519 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21372 | W. Virginia Div. of Izaak Walton League of Am. v. Butz, 522 F.2d 945 | 411+8 | Turning to that part of Section 476 which requires that the timber "before being sold, shall be marked and designated", we find the statutory language to be simple and unambiguous. The term "marked" in the context of forestry is well defined and means "selection and indication by a blaze, paint or marking hammer on the stem of trees to be felled or retained". "Designate", on the other hand, is a much broader term and merely means to "indicate". The two words are not synonymous or interchangeable and in using them conjunctively it is evident that Congress intended that the Forest Service designate the area from which the timber was to be sold and, additionally, placed upon the Service the obligation to mark each individual tree which was authorized to be cut. This plain reading of the statutory language is buttressed by reference to the statement of Gifford Pinchot, the first Chief of the Forest Service, in his 1898 Surveys of Forest Reserves. | As used in Organic Act provision that timber in national forest, before being sold, shall be marked and designated, "marked" means selection and indication by a blaze, paint or marking hammer on the stem of trees to be felled or retained, and "designate" means to indicate, and as the words are not synonymous, forest service must not only designate that area from which timber is to be sold, but mark each individual tree authorized to be cut. 16 U.S.C.A. § 476. | What is the meaning of designate? | Woods and Forest - Memo 89 - SB_63602.docx | ROSS-003282450-ROSS-003282451 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 21373 | Bank of New York v. F.D.I.C., 453 F. Supp. 2d 82 | 172H+460 | NextBank was a national banking association established in 1999 to issue consumer credit cards, primarily through the internet. (Pl.'s Mot. for J. as to Liability ["Pl.'s Mot."] Ex. A at 4, 11.) By February 2002, NextBank had 1.2 million credit card holders and accounts totaling approximately $1.9 billion. (Christensen Decl. Ex. 3 ["Ltr. 2/12/02"] at 1187; Wigand Dep. Ex. 4 at 2.) | Assuming issue of whether now-defunct bank entered into master indenture with securitization investors was a question for New York contract law, bank and indenture trustee for the interests of investors who purchased asset-backed securities from a trust established by bank intended the transaction documents, including master indenture and transfer and servicing agreement, to be construed together as a single agreement; each of the transaction documents contained repeated references to provisions of the other documents, making the documents interdependent, and ten of eleven examples of opinion letters from outside counsel sent to prospective investors unequivocally described bank as having entered into master indenture. | Was NextBank established to issue consumer credit cards through the internet? | Consumer Credit - Memo 17- AM_63848.docx | ROSS-003280361-ROSS-003280362 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 21374 | Stouffer Corp. v. Breckenridge, 859 F.2d 75 | 170B+2447 | he reasons for the rule we here adopt are well explained in the above-cited decisions from the Third, Fourth and Seventh Circuits. A limited partnership is one form of unincorporated association, and the court has long required consideration of the citizenship of all members of such associations. Therefore, this rule is "more consonant with Supreme Court precedent." Elston Inv., Ltd. v. David Altman Leasing Corp., 731 F.2d at 438. No one suggests that Congress has ever intended diversity jurisdiction to extend to partnerships whose limited partners include citizens of the same state as an opposing party. Colonial Resources Corp. v. Cambria Sav. & Loan Ass'n, 554 F.2d at 1262. Any change should come from Congress. New York State Teachers Retirement Sys. v. Kalkus, 764 F.2d at 1019; Elston, at 439. | Citizenship of limited partners had to be considered in determining diversity jurisdiction in action involving limited partnership. 28 U.S.C.A. § 1332(a)(1), (c). | s limited partnership a form of unincorporated association? | Partnership - Memo 517-GP.docx | LEGALEASE-00048009-LEGALEASE-00048010 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21375 | Payne v. Slate & Gardner, 39 Barb. 634 | 241+143(1) | In Darling v. March, (22 Maine Rep. 184,) Shepley, J. gives the effect of the dissolution, in these words: "The dissolution operates as a revocation of all authority for making new contracts. It does not revoke the authority to arrange, liquidate, settle and pay those before created. For these purposes each member has the same power as before dissolution. If an account existing before the dissolution be presented to one of the former partners, he may decide whether it should be paid or not, even though it be a disputed claim. He may decide whether due notice has been given on commercial paper, and may make or refuse payment accordingly. | Whoever makes a promise or an acknowledgment, either orally or in writing, which is to have the effect to rescue a debt from the statute of limitations, must be the party to be charged, or duly authorized by such party. | Does the dissolution of a partnership operate as a revocation of all authority to make new contracts? | Partnership - Memo 521 - GP_64061.docx | ROSS-003283179-ROSS-003283180 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21376 | Taylor v. New Jersey Title Guarantee & Tr. Co., 70 N.J.L. 24 | 217=3571 | To support the second count the plaintiff relies on the first clause of the conditions, insisting that it legally shows an "eviction under an adverse title guaranteed against." In Barton v. West Jersey Title Co., 64 N. J. Law, 24, 44 Atl. 871, the question was suggested whether the policy there under consideration (and the present policy is like it) did not require eviction by due process of law to warrant a claim under this clause. But assuming that to be unnecessary, an eviction under the adverse title guarantied against is certainly essential, and in this respect the count is defective. Supposing that it alleges an adverse title and an eviction, it leaves it to mere inference that the latter resulted from the former. Such an inference is not a necessary one-an inference of law; and the rules of pleading require the pleader either to aver directly the facts which constitute his claim or to set forth the circumstances from which those facts necessarily, by intendment of law, result. 1 Chitty's Pl. 222. The general averment of performance by the plaintiff of conditions required of him to be done, which is found in each of these counts, does not supply their defects. The final judgment or decree upon the lien and the eviction under an adverse title are not things to be done by the plaintiff, and so are not covered by this averment. Nor are they, I apprehend, conditions such as are intended by the statutory rule which sanctions this general averment in pleading. They constitute the very elements of the loss for which the defendant is to be answerable-as the death of the insured in a life policy and the burning of the building in a fire policy-and are distinct from the conditions upon which depends the responsibility of the defendant for the loss when it occurs. Only such conditions are embraced within the statutory permission to aver performance generally. | An averment is a declaration that A. purchased land at a tax sale, and ever since has lawfully held the land against plaintiff, is not legally equivalent, in an action on a policy of title insurance, to an averment that plaintiff was evicted under the title conveyed by such sale. | Do the rules of pleading require the pleader to aver directly the facts which constitute his claim? | 023834.docx | LEGALEASE-00158852-LEGALEASE-00158853 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 21377 | Tenney v. E. Warren Lumber Co., 43 N.H. 343 | 101=2435 | "It seems to have been settled or recognized as law in courts of justice, by judges distinguished by their learning and wisdom, in successive generations, and under different governments, that, in order to bind the principal or constituent, and make the instrument his deed, the agent or attorney must set to it the name and seal of the principal or constituent, and not merely his own." Stackfield v. Little, 1 Greenl. 231, and authorities cited; Brinley v. Mann, 2 Cush. 337, and authorities cited; Ang. & Am. Corp. 168, and authorities cited; Ang. & Am. Corp. 109, and authorities cited; 6 Pick. 203; Stone v. Wood, 8 Cow. 455, and authorities cited; 7 Cran. 304; 1 Hanson (Ohio) 390, 394; Hatch v. Ball, 14 Pet. 19; Story Agency 137, 139; 18 Ark. 269; 12 U. S. Dig. 158; 1 Cow. Phill., note 889, 468, 1287, notes; and cases cited on the other side | A deed in this form: "We, the E. W. L. Co., in consideration of $5,000 to us paid, etc., do give, grant," etc.; "we, the E. W. L. Co., do hereby covenant," etc.; "if the E. W. L. Co. shall pay," etc.; and concluding, "In witness whereof we have hereunto set our hands and seals," etc.; signed, "D. E. F., President," etc., and seal, "E. S. C., Treasurer," etc., and seal,-is the deed of the corporation, if the agents were authorized to execute it. | Does an agent need to name the principal in order to bind him? | 041685.docx | LEGALEASE-00158914-LEGALEASE-00158915 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 21378 | Pulaski Cty. v. Lincoln, 9 Ark. 320 | 104=104 | But there is a question which arises out of the manner in which the commissioners performed their trust, which it becomes important to consider. This was a special agency delegated for a particular purpose, and must be strictly pursued. 2 J. R. 48; 5 id. 56. 26 Wend. 192. 1 Wash. C. C. R. 174. It was a power conferred on three commissioners jointly to do a certain act. The rule is, that, where there are joint agents, they must all join in executing the agency. 6 Pick. 198, 3 id. 232. 12 Mass. 185; id. 189. Story says "that where an authority is given to two or more persons to do an act, the act is valid to bind the parties only when all of them concur in doing it, for the authority is construed strictly, and the power understood to be joint and not several." Story on Agency, 46. This power was executed by only two of the commissioners, as stated in the bill (which, by agreement, is taken as, true,) and as proven by the exhibits. If this be true, the authorities are clear and conclusive that two of the commissioners were competent to execute this trust, and that their acts are not binding on the county, and are void. | The county court has the power to provide a house for the poor, and may appoint commissioners to select and contract for a site therefor, and when the acts of such commissioners are ratified by the court, they become as valid as if done directly by the court. | "When there is no intent that joint agents may act severally, will actions taken by the agents be invalid unless executed by all agents?" | Principal and Agent - Memo 376 - RK.docx | LEGALEASE-00048727-LEGALEASE-00048728 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21379 | Chapman v. Gerard, 456 F.2d 577 | 141E=1234 | An alien lawfully residing in the United States is entitled to equal protection under the Fourteenth Amendment. See Graham v. Richardson, 403 U.S. 365, 371, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Takahashi v. Fish and Game Comm., 334 U.S. 410, 420, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Truax v. Raich, 239 U.S. 33, 39, 36 S.Ct. 7, 60 L.Ed. 131 (1915). See also Hosier v. Evans, 314 F.Supp. 316, 319-20 (D.V.I.1970). This does not, however, necessarily prevent a particular legislature from excluding aliens residing within its state or territory from realizing certain privileges enjoyed by non-alien residents if the exclusion has "a rational basis and bears a reasonable relationship to the special interest sought to be protected by [such a] legislative enactment." See Chapman v. Gerard, 341 F.Supp. 1170 (D.V.I.1970); cf. Graham v. Richardson, supra, 403 U.S. at 371, 91 S.Ct. 1848 at 852. As noted by the Graham opinion, though, "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." 403 U.S. at 372, 91 S.Ct. at 1852; accord, Takahashi v. Fish & Game Comm., supra, 334 U.S. at 420, 68 S.Ct. 1138. | Statute barring residents of Virgin Islands from participating in territorial scholarship fund solely by reason of their alienage could not be sustained on theory that fund was created to foster pool of qualified citizens capable of filling government offices or on theory that participation in fund was a privilege rather than a right, and scheme of exclusion was arbitrary, invidious and without reasonable nexus to the special interest allegedly sought to be protected. 17 V.I.C. SS 173, 176(a); Revised Organic Act of 1954, S 29, Vol. 1, V.I.C.; U.S.C.A.Const. Amend. 14. | Are aliens entitled to equal protection under the Fourteenth Amendment? | "Aliens, Immigration and Citizenship - Memo 80 - RK_64814.docx" | ROSS-003322931-ROSS-003322932 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 21380 | GMAC v. Everett Chevrolet, 179 Wash. App. 126 | 95=194 | A demand note is payable immediately on the date of its execution. This court in Allied set forth the proper rule regarding such matured obligations:An instrument is payable immediately if no time is fixed and no contingency specified upon which payment is to be made. A demand note is payable immediately on the date of its execution"that is, it is due upon delivery thereof, and, unless a statute declares otherwise, or a contrary intention appears expressly or impliedly upon the face of the instrument, a right of action against the maker of a demand note arises immediately upon delivery and no express demand is required to mature the note or as a prerequisite to such right to action, commencement of a suit being sufficient demand for enforcement purposes. | Security agreement contained a demand obligation, and, thus, any duty of good faith did not limit right of lender on line of credit to demand repayment by borrower at any time for any reason or no reason, where upon-demand provision stated that borrower agreed upon demand to pay to lender the amount it advanced or was obligated to advance by the manufacturer or distributor for each vehicle with interest, which was express demand language on its face, the provision appeared to be a material clause governing the parties' lending relationship, provision was in the second paragraph of the security agreement, which suggested that the parties intended their relationship to be controlled by the upon-demand terms, and if the agreement were construed in any other way, the provision would have been rendered meaningless. | When is an instrument payable if no time is specified for repayment? | Bills and Notes - Memo 74 - DB_64595.docx | ROSS-003293176-ROSS-003293177 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21381 | MacKellar Assocs. v. Serigraph, No. 07-12468, 2009 WL 73660 | 170A+2492 | Serigraph raises the same arguments and presents the same evidence in support of its contention that the doctrines of waiver and equitable estoppel bar MacKellar's claims. As observed by the Wisconsin Supreme Court, "[w]hile the words "waiver" and "estoppel" are often used interchangeably, they represent distinct but related doctrines." Milas v. Labor Assoc. of Wis., Inc., 214 Wis.2d 1, 571 N.W.2d 656, 659 (Wis.S.Ct.1997). Because they are distinct doctrines, each is addressed separately, beginning with waiver. | Sales representative firm's actions did not constitute waiver of contractual rights as a matter of law under Wisconsin law, precluding summary judgment in favor of manufacturer. The firm had sued for contractual pre-termination commissions and penalty damages under the Wisconsin Sales Commission Act. While the firm had accepted commission payments, it had repeatedly challenged the amounts paid. Also it was unclear whether the sales firm knew that the contract giving rise to the commission payments was in still force after the original manufacturer was acquired by the current manufacturer. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A. | Do waiver and estoppel represent distinct but related doctrines? | Estoppel - Memo #221 - C - CSS_64619.docx | ROSS-003279513-ROSS-003279514 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | |
| 21382 | Greene v. Rothschild, 60 Wash. 2d 508 | 70+321(23) | The partners could not avoid liability for the wrongful acts of their apparent agent without giving to the public proper notice of termination of the agency. The nature of the requirement is correctly set forth in 1 Restatement, Agency 2d, 334, " 136, as follows:"(3) Except as to the persons included in Subsection (2), the principal can properly give notification of the termination of the agent's authority by:"(a) Advertising the fact in a newspaper of general circulation in the place where the agency is regularly carried on; or"(b) giving publicity by some other method reasonably adapted to give the information to such third person." | Evidence in taxicab passenger's personal injury action that taxicab driver at time of intersectional collision had been driving for 81/212 hours continuously did not require giving of instruction that fatigue of driver of taxicab, which may have impaired his driving ability, was not defense because of duty owed by common carrier to passenger. | Can a principal give notification of the termination of the agent's authority by any method reasonably adapted to give the information to such third person? | 041295.docx | LEGALEASE-00159471-LEGALEASE-00159472 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | |
| 21383 | State v. Hogan, 480 So. 2d 288 | 350H+8 | "Generally we have held that a sentence is excessive and unconstitutional if it is grossly out of proportion to the severity of the crime, in light of the harm caused to society. An unconstitutionally excessive sentence is one that shocks our sense of justice and is nothing more than the purposeless and needless imposition of pain and suffering. State v. Goode, 380 So.2d 1361 (La.1980); State v. Bonanno, 384 So.2d 355 (La.1980). | General sentencing enhancement statute (LSA-R.S. 14:34, 14:95; LSA-C.Cr.P. art. 893.1) applicable when a firearm is used in commission of a felony, does not impose cruel, unusual, and excessive punishment and is not constitutionally infirm on its face or as applied. U.S.C.A. Const.Amend. 8. | When is a sentence considered excessive? | 012528.docx | LEGALEASE-00161515-LEGALEASE-00161516 | Condensed, Sub | 0.33 | 0 | 1 | 1 | 1 | |
| 21384 | Volpe v. Marina Parks, 101 R.I. 80 | 268+663(2) | We hold, therefore, that there was a dedication of the street alone and no more. In his answer and in his statutory notice, respondent Dickerson concedes that the fee in the westerly 10 feet of the street immediately adjacent to the easterly end of lot 3 is in complainants. He follows the presumption of ownership to the middle of the street as it has been set forth by this court on several occasions. See Davis v. Girard, 74 R.I. 125, 131, 59 A.2d 366, and Adams v. John R. White & Son, Inc., 41 R.I. 157, 161. 103 A. 230. | Where owner of tract extending to bay on the east platted a part and laid out thereon several streets, one bounding the plat on the southeasterly side, and about a year and five months after he died the city abandoned the street, a deed by his two children, to whom he had left all his property equally after selling the platted land, to the easterly half of the street together with the land southeast thereof to mean high-water mark conveyed good fee simple title. | Is the owner of premises bounded on a public highway presumed to own the fee to the middle line of the highway? | 018815.docx | LEGALEASE-00161643-LEGALEASE-00161644 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | |
| 21385 | Finney v. Terrell, 276 S.W. 340 | 226H+3 | The subject of joint adventure is comparatively of modern origin.It was unknown at common law, being regarded as within the principle governing partnerships. And, while some jurisdictions hold that the joint adventure is not identical with partnership, it is everywhere regarded as of a similar nature and governed by the same rules of law. A distinction lies in the fact that a partnership is ordinarily formed for the transaction of a business of a particular kind and character, while joint adventure, as a general accepted term, relates to the single transaction, although the latter may comprehend a business to be continued for a period of years. There is such a kinship and similarity in the principle that the distinction is remote. This transaction under our law would be from the facts treated as a joint adventure and enterprise of the parties | "Joint adventure" similar to partnership, except that it generally relates to a single transaction. | Are joint ventures regarded as within the principles governing partnerships? | 022750.docx | LEGALEASE-00162540-LEGALEASE-00162541 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | |
| 21386 | Toney v. C. Courtney, 191 So. 3d 505 | 350H+1546 | We review the trial court's order dismissing a complaint with prejudice under the de novo standard of review. See Davis v. Bay Cty. Jail, 155 So.3d 1173, 1175 (Fla. 1st DCA 2014). At this stage in the proceedings, we are required to accept as true the amended complaint's well-pleaded factual allegations and to draw all reasonable inferences from the allegations in the appellant's favor. See Hall v. Knipp, 982 So.2d 1196, 1198 (Fla. 1st DCA 2008). We are also cognizant that "a complaint that simply strings together a series of sentences and paragraphs containing legal conclusions and theories does not establish a claim for relief." Davis, 155 So.3d at 1177 (Makar, J., concurring in part, dissenting in part). | Allegations in prisoner's amended complaint against two physicians and a nurse supported the objective prong of a § 1983 claim for deliberate indifference to a serious medical need in violation of Eighth Amendment prohibition against cruel and unusual punishment; prisoner alleged that he had a diagnosis of celiac disease, a gluten or wheat allergy, that nature of his meals was particularly important because he was also an insulin-dependent diabetic, that for the majority of time alleged in his amended complaint he did not receive gluten-free meals, and that, as a result, he regularly consumed gluten, which, due to his celiac disease, caused vomiting, stomach pains, headaches, fatigue, and skin irritation. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983. | "Will a complaint that simply strings together a series of sentences and paragraphs containing legal conclusions and theories, establish a claim for relief?" | Pleading - Memo 619 - RMM.docx | LEGALEASE-00052090-LEGALEASE-00052091 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | |
| 21387 | Stockbridge Energy v. Taylor, 359 P.3d 181 | 307A+695 | We find that the "reasonable time" contemplated by the Court in Kelly, would not include a time longer than the one-year savings clause period, 12 O.S." 100, or that of the remaining applicable statute of limitations, whichever is longer. Here, Stockbridge's amendment of the petition more than four years after the initial dismissal exceeds the one-year savings clause as well as the statutes of limitation applicable to the claims in question, the largest of which would have been three years. There is no question that the petition was defective as evidenced by the trial court's ruling. It is not the duty of the defendant to preserve the plaintiff's claims, rather, it is the plaintiff's obligation to timely amend pleadings and comply with court rulings. Accordingly, we reverse the opinion of the Court of Civil Appeals, finding the trial court appropriately dismissed the claims against the individual defendants, Taylor and Groninger. | The "reasonable time" that the trial court must allow the plaintiff to amend the petition after dismissal would not include a time longer than the one-year savings clause period or that of the remaining applicable statute of limitations, whichever is longer. 12 Okl.St.Ann. §§ 100, 2012(G). | Is it the duty of the defendant to preserve the plaintiff's claims? | 040131.docx | LEGALEASE-00162358-LEGALEASE-00162359 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21388 | Fed. St. & P. V. Pass. Ry. Co. v. City of Pittsburg, 226 Pa. 419 | 371÷2003 | A statement of a few rules and principles of law about which there is and can be no dispute will be helpful to a proper understanding of the questions involved in this proceeding. While taxation is an incident of sovereignty absolutely necessary to maintain government, the authority to impose taxes depends upon express legislative grant, and not upon incidental governmental power. There is no such thing as taxation by implication. The burden is always upon the taxing authority to point to the act of assembly which authorizes the imposition of the tax claimed. Taxation is a sovereign state governmental power not possessed by municipalities or municipal divisions unless delegated to them. In other words, municipalities have no implied power of taxation and must look to the statutory grant for such authority as they possess in the imposition of taxes. In Pennsylvania it has been uniformly held that the real estate of a public or quasi public corporation material to the exercise of its corporate franchises is not subject to assessment and taxation for local purposes in the absence of legislative authority imposing such taxes. | While taxation is an incident of sovereignty necessary to maintain government, the authority to impose taxes depends upon express legislative grant, and not upon incidental governmental power, and there is no such thing as taxation by implication. | Can the power of taxation be possessed by municipalities without delegation? | 046331.docx | LEGALEASE-00161930-LEGALEASE-00161931 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | |
| 21389 | Williams v. Osbon, 75 Ind. 280 | 83E÷402 | The "finding is," that, prior to the maturity of said notes, "said Williams assigned said notes, in writing, to the defendant Joseph Neldon." This is not a finding that he "endorsed" the notes. It was held in Keller v. Williams, 49 Ind. 504, that an averment in the complaint, that the note was "'assigned in writing" was not equivalent to an averment that it was endorsed; and we think a finding that the appellant "assigned the notes in writing" is not a finding that he "endorsed" them. The words are not synonymous. The word "'endorsement" has a known legal signification, and implies a transfer by a writing upon the instrument. Cooper v. Drouillard, 5 Blackf. 152; Kern v. Hazlerigg, 11 Ind. 443. The word "assigned" has no such signification, but implies that the assignment was made upon a separate instrument. In Keller v. Williams, supra, WORDEN, J., says: "The averment is, that the note was assigned in writing. It may have been assigned in some separate instrument, and not upon the note; and the inference is that the assignment was in a separate instrument, as, had it been upon the note, the term endorsed would have been more appropriately used." | The term "indorsement" implies a transfer by writing upon the instrument. | Does the word assigned have a known legal signification? | 009318.docx | LEGALEASE-00162977-LEGALEASE-00162978 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | |
| 21390 | People v. Flannel, 25 Cal. 3d 668 | 106÷100(1) | California's rule on the effect of an unreasonably held belief in the need to defend is almost universally supported by those legal commentators who have given in consideration. In the words of two scholars it is "the more humane view that, while (the defender) is not innocent of crime, he is nevertheless not guilty of murder; rather, he is guilty of the in-between crime of manslaughter." (LaFave & Scott, Handbook on Criminal Law (1972) p. 397; see also Model Pen.Code, s 201.3, coms. at pp. 40-46 (Tent.Draft No. 9, 1959); Model Pen.Code, s 3.09, coms. at p. 78 (Tent.Draft No. 8, 1958).) In short, the state has no legitimate interest in obtaining a conviction of murder, by virtue of defendant's unreasonable belief, the jury entertains a reasonable doubt whether defendant harbored malice. Likewise, a defendant has no legitimate interest in complete exculpation when acting outside the range of reasonable behavior. (Cf. People v. St. Martin (1970) 1 Cal.3d 524, 83 Cal.Rptr. 166, 463 P.2d 390.) The vice is the element of malice; in its absence the level of guilt must decline. | As to cases not yet tried as of date of Supreme Court opinion, November 13, 1979, rule in homicide cases that an honest but unreasonable belief in the need to defend negates element of malice and reduces offense to manslaughter is a general principle of law for purposes of jury instruction and therefore trial courts are under an obligation to give such an instruction sua sponte when appropriate. | Is vice an element of malice? | 019395.docx | LEGALEASE-00164056-LEGALEASE-00164057 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | |
| 21391 | McKissick v. Pickle, 16 Pa. 140 | 75÷30 | The only real question here is, had the grantor such an interest in land after the grant to the trustees as could be levied on and sold by the sheriff; and could the purchaser at sheriff's sale take advantage of the condition broken? In Pennsylvania, all possible rights and titles--contingent or otherwise--in lands where there is real interest, may be taken in execution--every scintilla of interest may be thus sold: 1 Yeates 427; id. 27. Even if the land be in the possession of another claiming by a paramount title: 3 W. & Ser. 114, Janett v. Tomlinson. | The declaration or admission of one of the trustees of a charitable trust in real estate, that the trust title had been devested, cannot affect the right of the persons interested under the trust. The trustees have no right to relinquish the trust property. | Can all possible contingent interests in land be taken in execution? | 014093.docx | LEGALEASE-00165089-LEGALEASE-00165090 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | |
| 21392 | Com. v. Keenan, 365 Pa. Super. 437 | 135H÷52 | We employ a unitary analysis of the state and federal double jeopardy clauses since the protections afforded by each constitution are identical.Commonwealth v. Sojourner, 513 Pa. 36, 518 A.2d 1145, 1149 n. 6 (1986); Commonwealth v. Simons, 342 Pa.Super. 281, 286, 492 A.2d 1119, 1122 (1985), citing Commonwealth v. Hude, 492 Pa. 600, 425 A.2d 313 (1980); Commonwealth v. Gravely, 486 Pa. 194, 404 A.2d 1296 (1979); Commonwealth v. Beaver, 317 Pa.Super. 88, 463 A.2d 1097 (1983). The protections afforded by double jeopardy are generally recognized to fall within three categories-(1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense.Commonwealth v. Frisbie, 506 Pa. 461, 485 A.2d 1098, 1100 (1984) citing Commonwealth v. Tarver, 493 Pa. 320, 426 A.2d 569 (1981). | Reprosecution on same charges in county with jurisdiction was not barred by double jeopardy following setting aside of guilty verdict and ordering of new trial for lack of subject matter jurisdiction in original county, as there was no proof that Commonwealth intended to engage in prosecution which it knew would result in outcome favorable to defense. U.S.C.A. Const.Amend. 5. | What are the three categories of protection that double jeopardy cover? | 016082.docx | LEGALEASE-00165829-LEGALEASE-00165830 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | |
| 21393 | Herlihy Moving & Storage v. Adecco USA, 2010 WL 3607483 | 170A÷2497.1 | The "tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." "If the tort claim is factually intertwined with the breach of contract claim such that the two may not be separated, recovery cannot be had for both." Id. (citation omitted). | Genuine issue of material fact existed as to whether an oral contract executed between temporary employment agency and a moving company included the requirement that the agency provide candidates that had their criminal histories checked. The owner of the company testified that he told an agency employee to perform background checks, that employee agreed that they would, and that the agency failed to do so. Further, the company could not claim that the term "background check" was ambiguous as their computer system had a tab for "background" which included criminal records files. Fed.Rules Civ.Proc.Rule 56(c) (2), 28 U.S.C.A. | "If a tort claim is factually intertwined with a breach of contract claim, can recovery be had for both?" | 006381.docx | LEGALEASE-00166795-LEGALEASE-00166796 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21394 | Sharer v. Creative Leasing, 612 So. 2d 1191 | 50+20 | Nor is there any indication that the lessee would receive the functional equivalent of ownership. "Additionally, ownership tax benefits under the lease were reserved exclusively to the lessor, another traditional indication that the parties intended to enter a true lease agreement. See, e.g., American Standard Credit, Inc. v. National Cement Co., 643 F.2d 248, 266 (5th Cir.1981) (holding that lessor's retention of investment tax credit on purportedly leased property manifested intent of parties to enter true lease agreement); Colonial Leasing (Co. v. Larson Bros. Construction Co., 731 P.2d 483, 487 (Utah 1986) ). | Lessor of truck was not entitled to recover 5% late fee applicable to late "rental payments," under lease agreement, on amounts owing following termination of agreement, as upon termination, rental payments merged into termination loss amount and there were no more late rental payments. Code 1975, § 8-8-8. | Is the alleged lessor's ownership of the tax benefits associated with leased equipment a traditional indication? | 042638.docx | LEGALEASE-00166927-LEGALEASE-00166928 | Condensed, SA, Sub | 0.5 | 0 | 1 | | 1 | 1 |
| 21395 | Kesling v. Countrywide Home Loans, 2011 WL 227637 | 170A+2491.8 | Countrywide claims that the Deed of Trust authorized it to impose inspection fees upon Kesling in the event of default. (See Def.'s Mot. Summ. J., Deed of Trust, CTW (providing that if borrower fails to make loan payments as required by the Note, "Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property" and that "[a]ny amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.")). The court agrees that this language in the Deed of Trust authorized Countrywide to charge Kesling reasonable fees for inspections of the property to assure that it remained occupied and was in acceptable condition. Further, contrary to Kesling's allegations, it does not appear that " 46A"2"127(g) prohibited Countrywide from assessing reasonable inspection fees pursuant to the Deed of Trust, inasmuch as the court has been presented no basis for concluding that such fees could "not legally be added to the existing obligation" within the meaning of " 46A"2"127(g). To the contrary, " 46A"2"115(a), another provision of the WVCCPA, expressly permits consumer loan agreements that provide for recovery of "reasonable expenses" incurred as a result of "realizing on a security interest." This provision seems to provide statutory authorization for Countrywide's imposition of reasonable inspection fees. The court also has no basis for concluding, based on the uncontroverted facts, that Countrywide assessed the inspection fees in an "unfair or unconscionable" manner in violation of " 46A"2"128(c). Because it appears that Countrywide was legally authorized to assess the inspection fees, it is entitled to summary judgment as to Count IV | A genuine issue of material fact existed as to whether the lender's return of two partial loan payments to the borrower before the foreclosure process had begun was due to insufficient funds. Therefore, summary judgment in favor of the lender was precluded in borrower's claim that lender violated the West Virginia Consumer Credit and Protection Act. Although the lender asserted that the borrower had insufficient funds, the lender relied on a spreadsheet that failed to clarify the reasons for the returned payments and consequently provided no support for the contention. Furthermore, the borrower testified that he had sufficient funds at all times and when the lender stopped taking money out of his bank account, he sent money orders that were sent back to him right away. West Virginia Code 5 46A-2-115; West's Ann. W.Va.Code, 46A-1-101. | Can loan agreements permit recovery of reasonable expenses? | 01251.docx | LEGALEASE-00081611-LEGALEASE-00081612 | Condensed, SA, Sub | 0.52 | 0 | 1 | | 1 | 1 |
| 21396 | Grannis v. Ordean, 234 U.S. 385 | 92+3975 | Aside from her mention of time and judicial resources, appellant is unable to identify any other public policy which would be undermined by the enforcement of the consent clause. Although no case has previously addressed this subject, we find that the consent clause furthers, rather than violates public policy. First, we note that appellant seeks to apply the judgment against appellee, who was not a party to the judgment and who did not have notice of the litigation or an opportunity to participate therein. As appellee correctly observes, such a result would be inimical to appellee's due process rights. At a minimum, due process requires that parties be accorded notice and an opportunity to be heard, and these rights "must be granted at a meaningful time and in a meaningful manner." Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 569 (1972). Enforcement of the judgment against appellee, who had neither notice or an opportunity to be heard, would thus deprive appellee its right to due process. Sup. Ct. Rep. 557; Lynch v. Murphy, 161 U. S. 247, 251, 40 L. ed. 688, 689, 16 Sup. Ct. Rep. 523; Roller v. Holly, 716 U. S. 398, 403, 44 L. ed. 520, 522, 20 Sup. Ct. Rep. 410. It is not disputed that the statutory scheme of publication and mailing, as established in Minnesota, for giving notice to nonresident defendants in actions quasi in rem, is, in its general application, sufficient to comply with the 14th Amendment. But the statute provides that "the summons shall be addressed by name to all the owners and lien holders who are known," and the contention is that the mistake of name in the present instance was fatal. | Service by publication and mailing of summons in partition, conformably to the local law, naming as party defendant Albert B. Gulifuss, assignee, and Albert B. Gulifuss, satisfied the due process of law clause of U.S.C.A. Const.Amend. 14, conferring jurisdiction, so as to render a judgment binding on Albert B. Gulifuss, assignee as to his lien; he not having appeared. | What are the fundamental components of due process? | 07093.docx | LEGALEASE-00089148-LEGALEASE-00089150 | Condensed, Sub | 0.78 | 0 | 1 | | 1 | 1 |
| 21397 | Martin v. Hickenlooper, 90 Utah 150 | 366+1 | In Emmert v. Thompson, 49 Minn. 386, 52 N.W. 31, 32 Am.St.Rep. 566, decided in 1892, it was stated: "It has been well said that the doctrine of subrogation has been steadily growing and expanding in importance, and becoming more general in its application to various subjects and classes of persons. It is not founded upon contract, but is the creation of equity, - is enforced solely for accomplishing the ends of substantial justice; and, being administered upon equitable principles, it is only when an applicant has an equity to invoke, and where innocent persons will not be injured, that a court can interfere."] | Doctrine of subrogation, which is purely equitable doctrine borrowed from civil law, is highly favored in equity. | Does the doctrine of subrogation rest on a contract or principles of natural equity? | 044320.docx | LEGALEASE-00125026-LEGALEASE-00125027 | Condensed, SA, Sub | 0.82 | 0 | 1 | | 1 | 1 |
| 21398 | United States v. Casson, 434 F.2d 415 | 342+2 | I concur in the result and agree that the bill amending the burglary statute became law at 3:05 P.M., December 27, 1967, when the President signed it. I do not agree to the implication in Part IV of the opinion, that the appellant was not bound by the amended statute unless knowledge of both crimes became effective at 3:05 p. m. when it was signed by the President and not before. D.C.C.E. 55 22-1801, 22-1801(a), 22-2901; 1 U.S.C.A. 5 112; U.S.C.A.Const. art. 1, 5 9, cl. 3. | Federal statute for District of Columbia, defining crime of burglary in first degree and increasing minimum and maximum punishments therefor and increasing minimum punishment for robbery by amending prior laws on both crimes became effective at 3:05 p. m. when it was signed by the | Is burglary a crime malum in se? | 012685.docx | LEGALEASE-00136051-LEGALEASE-00136052 | Condensed, SA, Sub | 0.38 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21399 | Cosmopolitan Tr. Co. v. Leonard Watch Co., 249 Mass. 14 | 83E+481 | Upon the question whether the judge erred in directing a verdict for the plaintiff, it is necessary to consider whether there was sufficient evidence of a transfer of the note to the savings department independent of the testimony of O'Brien. As the note bore no indorsement, in the hands of the transferee it would be regarded as an assignment. Barker v. Barth, 192 Ill. 460, 471, 61 N. E. 388. A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim. Williston, Contracts, vol. 1, ' 424; Southern Mutual Life Insurance Ass'n v. Durdin, 132 Ga. 495, 64 S. E. 264, 131 Am. St. Rep. 210; Christmas v. Russell, 14 Wall. 69, 84, 20 L. Ed. 762. The important thing is the act and the evidence of intent; formalities are not material. Nor is it necessary that there should be any consideration where the question arises between the assignee and the debtor. Cummings v. Morris, 25 N. Y. 625; Stone v. Frost, 61 N. Y. 614; Chase v. Dodge, 111 Wis. 70, 86 N. W. 548; Wardner, Bushnell & Glessner Co. v. Jack, 82 Iowa, 435, 439, 48 N. W. 729. That no consideration is required to constitute a valid assignment is seen in cases of gifts by assignment of savings bank accounts. Sheedy v. Roach, 124 Mass. 472, 26 Am. Rep. 680; Davis v. Ney, 125 Mass. 590, 28 Am. Rep. 272; Taft v. Bowker, 132 Mass. 277. The uncertainty, apparent from O'Brien's testimony, as to what consideration was given by the savings department for the note, does not affect the validity of the assignment, as none was required. Nor did its validity depend upon giving notice to the debtor. Thayer v. Daniels, 113 Mass. 129. Apart from the testimony of O'Brien it is manifest that the note was entered in the savings department books on February 28. This is corroborated by the entries on the envelope, which include an item of $30 as interest paid February 28, and the entries of interest payments until the closing of the bank; and it is plain that the note was in possession of the savings | Assignments made by words or acts. | Is it necessary to indicate the intention of the owner in an assignment? | Bills and Notes - Memo 574 - RK.docx | ROSS-003032026-ROSS-003302028 | Condensed, SA, Sub | 0.99 | 0 | 1 | | 1 | 1 |
| 21400 | TCF v. City of St. Louis, 402 S.W.3d 176 | 23H+682 | A threshold question in this matter is the mootness of the controversy. State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001); State ex rel. Chastain v. City of Kansas City, 968 S.W.2d 232, 237 (Mo.App.W.D.1998) (applying the doctrine of mootness in a writ context). With respect to justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy. Chastain, 968 S.W.2d at 237. Because mootness implicates the justiciability of a case, the court may dismiss a case for mootness sua sponte. Id. When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed. Id.; see also Reed, 41 S.W.3d at 473. In determining whether a case is moot, we may consider matters outside the record. Id.; Id. | City's appeal of circuit court's reversal of administrative revocation of nightclub operator's liquor license was moot, and did not fall within any exception to the mootness doctrine; operator voluntarily surrendered its liquor license and closed its night club after appeal had been argued and submitted, and the case did not present an unsettled legal issue of public interest and importance of a recurring nature that would escape review unless the appellate court exercised its discretionary jurisdiction. | Should moot cases be dismissed? | 035404.docx | LEGALEASE-00144953-LEGALEASE-00144954 | Condensed, SA, Sub | 0.41 | 0 | 1 | | 1 | 1 |
| 21401 | United States v. Blahowski, 324 F.3d 592 | 350H+664(5) | In United States v. Hascall, 76 F.3d 902, 906 (8th Cir.1996), we held that burglary of a commercial building is a "crime of violence" as defined in " 4B1.2. We observed that this Guideline specifically designates "burglary of a dwelling" as a crime of violence, but does not refer to burglary of a commercial building. U.S.S.G. " 4B1.2(1)(ii). Nevertheless, we recognized that the clause in " 4B1.2 defining a crime of violence as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" contained identical language to the definition of "violent felony" under 18 U.S.C. " 924(e)(8)(ii) of the Armed Career Criminal Act. Hascall, 76 F.3d at 904. We had previously held that attempted second-degree burglary posed a serious risk of physical injury under this definition in section 924(e). Id. (citing United States v. Solomon, 998 F.2d 587, 590 (8th Cir.1993)). Since there was no reason to conclude that these two identically worded clauses had different meanings, and since burglary of a commercial building posed at least as serious if not greater risk of physical injury than attempted second-degree burglary, we concluded that burglary of a commercial building was a crime of violence under the "otherwise clause" of " 4B1.2(1)(ii) of the Sentencing Guidelines. Id. The evidentiary facts specific to a defendant's actual conduct in the course of committing a burglary are irrelevant in determining whether that conviction is a predicate offense under the career offender guideline. We have since followed Hascall on a number of occasions. United States v. Stevens, 149 F.3d 747, 749 (8th Cir.1998) ("the burglary of non-residential property qualifies as a crime of violence"); United States v. Nation, 243 F.3d 467, 471, n. 1 (8th Cir.2001) (stating that burglary of a commercial building is a crime of violence under Hascall ); United States v. Peltier, 276 F.3d 1003, 1006 (8th Cir.2002), cert. denied 537 U.S. 862, 123 S.Ct. 246, 154 L.Ed.2d 103 | Amendment to application notes for career offender sentencing guideline, stating that the offense of conviction, that is, the conduct of which defendant was convicted, was object of inquiry in determining application of the guideline, did not require sentencing court to examine specific evidence of defendant's actual conduct during the course of committing a particular commercial burglary used as predicate offense, in order to determine whether the defendant engaged in conduct that posed a serious potential risk of physical injury to another, as would warrant application of the guideline; Court of Appeals panel decision prior to amendment held that underlying facts specific to defendant's conduct in committing commercial burglary were irrelevant in determining whether it qualified as predicate offense under guideline, and amendment did not substantively alter the prior version of application note. U.S.S.G. S 4B1.2(1)(ii) (1997). | Can breaking into a commercial building be considered a violent felony? | 013129.docx | LEGALEASE-00156540-LEGALEASE-00156542 | Condensed, SA, Sub | 0.59 | 0 | 1 | | 1 | 1 |
| 21402 | Easley v. E. Tennessee Nat. Bank, 138 Tenn. 369 | 83E+551 | The Supreme Court of North Dakota reviewed the cases on the question of reasonable time and said "it is well established that a note payable on demand is due within a reasonable time after its date, and there are practically no authorities which hold that such a reasonable time can be extended beyond a year." McAdam v. Grand Forks Mercantile Co., 24 N. D. 645, 140 N. W. 725, 47 L. R. A. (N. S.) 246. | Demand certificate of deposit, stipulating no interest after 12 months, negotiated more than year after date, is negotiated unreasonable time after issuance, and one who takes it is not holder in due course, under Thompson's Shannon's Code, S 3516a52. | The trial court has broad discretion in dismissing frivolous or malicious in forma pauperis actions? | 010489.docx | LEGALEASE-00160921-LEGALEASE-00160922 | Condensed, SA, Sub | 0.38 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21403 | Tello v. Royal Caribbean Cruises, Ltd., 939 F. Supp. 2d 1269 | 354+166(4) | "An employer may be vicariously liable to third parties under the principle of respondeat superior for damages and injuries caused by its employee's negligent acts which are committed within the scope and course of his employment." Liberty Mut. Ins. Co. v. Electronic Sys., Inc., 813 F.Supp. 802, 805 (S.D.Fla.1993). "[T]he doctrine of respondeat superior applies to hold a carrier responsible for the defaults of its crew." Muratore v. M/S Scotia Prince, 845 F.2d 347, 353 (1st Cir.1988). Vicarious liability may also be established by showing an "agency relationship," which involves (1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. Lobegeiger v. Celebrity Cruises, Inc., 869 F.Supp.2d 1350, 1356 (S.D.Fla.2012). | Cruise ship passenger, whose son fell overboard and presumably drowned after bartenders served him multiple drinks, stated a plausible claim for respondeat superior or agency liability in her suit against cruise line operator under the Death on the High Seas Act (DOHSA) for her son's wrongful death, to the extent that crewmembers may have been negligent in over-serving, failing to assist, failing to monitor, failing to safeguard, or failing to promptly search for son. 46 U.S.C.A. S 30302. | How is vicarious liability established? | Principal and Agent - Memo 573-S8_63589.docx | ROSS-003278727-ROSS-003278728 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 21404 | Fin. Ctr. Fed. Credit Union v. Brand, 967 N.E.2d 1080 | 366+17 | Our Supreme Court redefined the doctrine of equitable subrogation, which has been recognized in Indiana for more than a century, in Bank of New York v. Nally, 820 N.E.2d 644, 651 (Ind.2005). "The nature of equitable subrogation is, as its name indicates, equity." Neu v. Gibson, 928 N.E.2d 556, 560 (Ind.2010). "Subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt." Nally, 820 N.E.2d at 651 (citation omitted). In other words, "[t]he doctrine substitutes one who fully performs the obligation of another, secured by a mortgage, for "the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." " Neu, 928 N.E.2d at 560 (quoting Restatement (Third) of Property " 7.6(a) (1997)); see also Nally, 820 N.E.2d at 653. "This avoids an inequitable application of the general principle that priority in time gives a lien priority in right." Neu, 928 N.E.2d at 560 (citation omitted). "In considering whether to order subrogation and thus bypass the general principle of priority, courts base their decisions on the equities, particularly the avoidance of windfalls and the absence of any prejudice to the interests of junior lienholders." Id.; see also Nally, 820 N.E.2d at 653. Equitable subrogation is " "a highly favored doctrine, which is to be given a liberal application." " Nally, 820 N.E.2d at 652 (quoting Osterman v. Baber, 714 N.E.2d 735, 738 (Ind.Ct.App.1999), trans. denied.) | Although preserving the rights of intervening creditors who record their interests is "plainly equitable," leapfrogging a senior claim is precisely what equitable subrogation is designed to prevent. | Does the doctrine of equitable subrogation avoid an inequitable application of the general principle that priority in time gives a lien priority in right? | Subrogation - Memo 370 - T1.docx | ROSS-003283998-ROSS-003284000 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | 1 |
| 21405 | In re Cox Enterprises Set-top Cable Television Box Antitrust Litig., 835 F.3d 1195 | 170B+3053 | The authority relied on by Plaintiffs does not persuade us to the contrary. In Russell v. Citigroup, Inc., 748 F.3d 677 (6th Cir. 2014) the court held that an arbitration agreement did not apply to litigation between the employee and employer that had commenced before the agreement was executed. The agreement covered "employment-related disputes ... which ... arise between" the employer and employee. In part the court based its conclusion on the language of the agreement. It said that "[t]he use of the present-tense 'arise' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggests that the contract governs only disputes that begin-that arise-in the present or future. The present tense usually does not refer to the past." Id. at 679. This analysis has some force. But it cannot overcome our Zink precedent. What Russell says about arise could also be said about the word arising in Zink (Russell distinguished have arisen, not arising, from the word arise) and we said in Zink that the "only ... reasonable interpretation" of the arising language was that it applied to a dispute predating the arbitration agreement. In any event, the agreement in Russell did not include the language "or in any way relate to" that appears in the agreement here. And the word relate does not have the same temporal connotation as arise; we can say that something arises at a particular point in time; but relate is broader and includesa relationship in subject matter that is independent of time. | When the Federal Arbitration Act (FAA) states that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract, it is referring to the law of the state that governs the contract. 9 U.S.C.A. S 2. | Does the use of the term 'arise' suggest suggests that the contract governs only disputes that begin that arise in the present or future? | Alternative Dispute Resolution - Memo 561 - RK.docx | ROSS-003287026-ROSS-003287027 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 21406 | Sourcecorp v. Norcutt, 229 Ariz. 270 | 366+31(4) | We adopt the Restatement approach and reject any requirement of an "agreement" as a condition for equitable subrogation. To be sure, parties may achieve subrogation by agreement, such as through an assignment of a promissory note and related mortgage. See Restatement " 7.6 cmt. a (distinguishing "conventional subrogation" by assignment or agreement from equitable subrogation). Equitable subrogation, however, does not turn on contractual principles, but instead on the concern to prevent unjust enrichment. That goal is served by allowing subrogation when a party pays a mortgage to protect an interest in the property, irrespective of an express or implied agreement that the party will succeed to the position of the prior lienholder. | A person who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Restatement (Third) of Property (Mortgages) S 7.6. | Does equitable subrogation turn on contractual principles? | Subrogation - Memo 213 - RM C.docx | ROSS-003299773-ROSS-003299774 | Condensed, SA | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 21407 | Order of Ry. Conductors & Brakemen v. Clinchfield R. Co., 278 F. Supp. 322 | 25T+301 | The contracting parties themselves invoked, with a specific condition precedent, the statutory arbitration procedures of the Railway Labor Act. The Court, as in the case of all agreements, must give effect to the intent of the parties as evidenced by the agreement of the agreement(s) (themselves) which will be liberally construed to that end. Had the parties to this agreement intended to bypass the arbitration mechanism of the Railway Labor Act as an aid in the resolution of the dispute here involved, they could easily have said so. The Court further observes that although an arbitration agreement has the formal aspects of a contract, it nevertheless, by its very nature, assumes the absence of an agreement between the parties, other than the basic agreement on the mode of settlement. Arbitration is, then, a method, a means, a procedure, rather than an agreement." Arlington Towers Land Corp. v. John McShain, Inc., D.C.D.C. (1957), 150 F.Supp. 904, 923(3). | The court, in determining validity of an arbitration award, must give effect to intent of the parties as evidenced by the agreement itself, which will be liberally construed to that end. | Is arbitration a formal contract? | Alternative Dispute Resolution - Memo 35 - JS.docx | ROSS-003300736-ROSS-003300737 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 21408 | Burton v. Hansford, 10 W. Va. 470 | 83E+458 | In the case of Ray et al v. Sampson, 22 How., 341, Justice Clifford, in delivering the opinion of the court, states the law thus: "When a promissory note, made payable to a particular person or order, is first endorsed by a third person, as in this case such third person is held to be an original promisor, guarantor or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. If he put his name on the back of the note at the time it was made, as surety for the maker, and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered a joint maker of the note. On the other hand, if his endorsement was subsequent to the making of the note, and he put his name thereon at the request of the maker, pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as a guarantor. But if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his endorsement would be inoperative until it was endorsed by the payee, he would then only be liable as second endorser in the commercial sense, and as such would clearly be entitled to the privileges which belong to such endorsers."\ | A stranger who indorses negotiable paper at the time it is made is prima facie liable to the payee, at his election at any time, either as original promisor or as guarantor. | When can a third person be held as an endorser? | Bills and Notes - Memo B94 - RK_60693.docx | ROSS-003305606-ROSS-003305607 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21409 | Matson v. Frank, 86 Wash. 669 | 266+2131(3) | It seems plain from these sections that the court is authorized to allow a reasonable sum for counsel fees upon the judgment in mortgage foreclosures. In Exchange National Bank v. Wolverton, 11 Wash. 108, 39 Pac. 248, in a foreclosure action where the mortgage was substantially the same as it is in this case, and in referring to the same statutes, it was held that an attorney's fee was proper to be allowed upon the judgment. In Poteen v. Blasher, 9 Wash. 460, 37 Pac. 710, we held that the notes and mortgage were to be construed as one transaction. | Under Rem. & Bal.Code, SS 474, 475, RCW 4.84.010, 4.84.020, an attorney's fee held properly taxed as costs, where the note provided for such fee, but the mortgage did not. | Can notes and mortgage be construed as one transaction? | Bills and Notes - Memo 8 - KC_61000.docx | ROSS-003308457-ROSS-003308458 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 21410 | Lewis v. Farmers Ins. Exch., 315 Mich. App. 202 | 217+2661 | In Armstrong, 212 Mich.App. 121, 536 N.W.2d 789, this Court construed affinity as the word is used in the second-degree criminal sexual conduct statute, MCL 750.520c(1) ("The actor is related by blood or affinity ... to the victim."). At issue in that case was whether a victim of sexual assault and her stepbrother, who was the perpetrator of the assault, qualified as relatives by affinity under MCL 750.520c(1), despite the fact that they did not qualify as relatives under the Michigan Supreme Court's definition of affinity in Bliss, 149 Mich. at 608, 113 N.W. 317 (the definition recently reiterated by the Michigan Supreme Court in Zajaczkowski, 493 Mich. at 13"14, 825 N.W.2d 554). Armstrong, 212 Mich.App. at 122"129, 536 N.W.2d 789. Citing a 1950 decision of the Washington Supreme Court,4 the Armstrong Court concluded that "the term "affinity" is not capable of precise definition" and further stated that "at common law, whether someone was related to another by affinity depended upon the legal context presented." Id. at 125, 536 N.W.2d 789. Ultimately, the Armstrong Court concluded that, whether the statutory context at issue in that case, "the relation between a stepbrother and a stepsister" was one of affinity. Id. at 128, 536 N.W.2d 789. | Relationship by blood is an alternative to a relationship by marriage, i.e., by affinity, for purposes of statute defining term "relative" as a person related by marriage, consanguinity, or adoption, as that term is used in statute providing that personal protection insurance (PIP) benefits are recoverable by the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident; relationship by affinity or marriage consists of the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other, and the degrees of affinity are computed in the same way as those of consanguinity or kindred, and as such, husband is related, by affinity, to all the blood relatives of his wife, and the wife is related, by affinity, to all the blood relatives of the husband. M.C.L.A. S 500.3114(1). | Does a relationship between a step-brother and step-sister come under the term affinity? | Incest - Memo 68 - RK.docx | ROSS-003311549-ROSS-003311550 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 21411 | Clark v. Widnell, 51 F.3d 917 | 34+15 | The government concedes, however, when substantial constitutional rights are in jeopardy, a civilian court could exercise jurisdiction over military affairs. Indeed, in Lindenau v. Alexander, 663 F.2d 68, 70 (10th Cir.1981), we dealt with such a circumstance. Although we ultimately denied judicial review, we adopted the four-part test of Mindes v. Seaman, 453 F.2d 197, 201-02 (5th Cir.1971), which established those areas in which a federal court could appropriately review military action. Noting the traditional reluctance of courts to intervene in military affairs, Schlesinger v. Ballard, 419 U.S. 498, 510, 95 S.Ct. 572, 578-79, 42 L.Ed.2d 610 (1975), and the role of federal courts in the "internal affairs of the military is narrow and restricted," Schulke v. United States, 544 F.2d 453, 455 (10th Cir.1976), we held courts may review military action to determine whether military officials have acted within the scope of their powers. Lindenau, 663 F.2d at 71. Additionally, courts may entertain actions against military officials "for violating their own regulations" and "questioning the constitutionality of statutes relating to the military, executive orders, and regulations." Id. Also included in the scope of review are "[c]ourt-martial convictions alleged to involve errors of constitutional proportions" and selective service "induction procedures." Id. (citation omitted); see also Noyd v. McNamara, 378 F.2d 538, 540 (10th Cir.) (Wide discretion is given to the military to decide what constitutes "for the good of the service."), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967). | Decision of Secretary of the Air Force in calling to active duty reserve officer, who participated in armed services health professions scholarship program, after officer changed specialties without permission, did not involve any unauthorized action that would justify interference by civilian courts; officer appeared, not as civilian student, but as reserve officer in Air Force seeking to prevent issuance of order from his military superior, and thus thrust civilian courts squarely into dispute founded upon his personal unwillingness to comply with authority he freely accepted in exchange for furtherance of his professional education by the taxpayers. 10 U.S.C.A. SS 2120-2127. | Is wide discretion given to the military to decide what constitutes "good service"?" | Armed Services - Memo 57 - RK.docx | ROSS-003312607-ROSS-003312608 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21412 | Deutsche Bank Nat'l Tr. Co. v. Burke, 117 F. Supp. 3d 953 | 266+1409 | An assignment is a manifestation by the owner of a right to transfer such right to the assignee. Hermann Hosp. v. Liberty Life Assur. Co., 696 S.W.2d 37, 44 (Tex.App."Houston [14th Dist.] 1985). An existing right is a precondition for a valid assignment. Pain Control Institute, Inc. v. GEICO Gen. Ins. Co., 447 S.W.3d 893, 899 (Tex.App."Dallas 2014). An assignee "stands in the shoes" of the assignor but acquires no greater right than the assignor possessed. John H. Carney & Assocs. v. Texas Prop. & Cas. Ins. Guar. Ass'n, 354 S.W.3d 843, 850 (Tex.App."Austin 2011). An assignment cannot be made by a dead man; it is a transfer by one existing party to another existing party of some valuable interest. Pool v. Sneed, 173 S.W.2d 768, 775 (Tex.Civ.App."Amarillo 1943). | Under Texas law, purported assignment of deed of trust from "Mortgage Electronic Registration System (MERS), as nominee for the lender, its successors and assigns" was void and invalid, where lender did not exist when assignment was signed, lender's successor had ceased existence before assignment and all of its assets were sold, and there was no evidence that MERS was nominee or agent of any successor or assign of original lender. | Should there be an existing right for an assignment to be valid? | Assignments - Memo 8 - MS.docx | ROSS-003289209-ROSS-003289210 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21413 | Ward v. Vibrasonic Labs., 236 Mont. 314 | 302+237(1) | The contract presented to Ward was indeed insurance under this definition. Vibrasonic claims this policy was simply a warranty. We disagree.A warranty promises indemnity against defects in an article sold, while insurance indemnifies against loss or damage resulting from perils outside of and unrelated to defects in the article itself.State ex rel. Duffy v. Western Auto Supply Co. (1938), 134 Ohio St. 163, 16 N.E.2d 256, 259.The contract refers to a standard factory warranty which lasts for one year. The insurance was sold separately by the Vibrasonic agent approximately three weeks after the contract was signed, and as set out above, protected against loss or damage, not defects in the hearing aid itself. | Trial court did not err in permitting buyer to amend his complaint to conform to evidence presented at trial concerning fraudulent misrepresentation in sale of insurance policy covering hearing aid. | What is the difference between a warranty and insurance? | Insurance - Memo 15 - VP.docx | LEGALEASE-00000204-LEGALEASE-00000205 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21414 | Hunt v. Nw. Airlines, 600 F.2d 176 | 231H+1625 | We do not believe that the legislative history mandates a different scope of review for section 184 than that allowed under section 153. The Supreme Court in International Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, 695, 83 S.Ct. 956, 964, 10 L.Ed.2d 67 (1963), Quoting from Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 10, 124 F.2d 235, 244 (1941), determined that legislative history revealed the congressional intent that airline system board awards would " "have legal effect, not merely that of private advice." " The Court stated that in passing the 1936 amendments Congress intended to extend to the airline industry the same benefits and obligations applicable to the railroad industry. Id. at 685, 83 S.Ct. 956. Therefore, congressional intent requires identical court treatment of airline board decisions under section 184 and railroad board decisions under section 153, and this has been the continuing policy of the courts. Rossi v. Trans World Airlines, 350 F.Supp. 1263, 1269 (C.D.Cal.1972), Aff'd, 507 F.2d 404 (2d Cir. 1974); See Eastern Air Lines, Inc. v. Transport Workers Union Local 553, 580 F.2d 169 (5th Cir. 1978); Giordano v. Modern Air Transport, 504 F.2d 882 (5th Cir. 1974); Rosen v. Eastern Air Lines, Inc., 400 F.2d 462 (5th Cir. 1968), Cert. denied, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969); Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l, 373 F.2d 136 (8th Cir.), Cert. denied, 389 U.S. 327, 88 S.Ct. 77, 19 L.Ed.2d 83 (1967). This is a sound policy because "[t]he main function of arbitration and of System Adjustment Boards is to serve as a "substitute for and not a prelude to litigation." " Rossi v. Trans World Airlines, supra, 350 F.Supp. at 1273, Quoting from Farris v. Alaska Airlines, Inc., 113 F.Supp. 907, 908 (N.D.Wash.1953). | When Airline Adjustment Board has determined that discharge of employee was justified, case was determined on its merits, and Board's decision was final and binding on the courts, and independent review of such claims in federal court was not appropriate on same claims as were submitted to System Board for full hearing on the merits. Railway Labor Act, S 204 as amended 45 U.S.C.A. S 184; U.S.C.A.Const. Amends. 5, 14. | What is the primary function of arbitration? | Alternative Dispute Resolution - Memo 33 - JS.docx | LEGALEASE-00000352-LEGALEASE-00000354 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21415 | Mazur v. Young, 507 F.3d 1013 | 195+64 | But like the guarantor in Richard, the Youngs are wrong. To find in favor of the Youngs, both the district court and the majority opinions impermissibly conflate the Land Contract and the guaranty contract. As was held to be the case in Richard, Mazur's claim against the Youngs stems from their obligations under the quite separate (albeit related) guaranty contract and "thus is simply not a post-forfeiture claim for "money payments due or in arrears under the [land] contract." " (Richard, 2006 WL 2355096, at *3, quoting Section " 5750). And as United States v. Leslie, 421 F.2d 763, 766 (6th Cir.1970) has emphasized in the similar context of a guaranteed mortgage, "[t]he guaranty is an obligation separate from the mortgage note.... [T]he obligation of guaranty is distinct from the debt" under the mortgage. | Guarantors who personally secured payment of land contract between vendor and third party purchaser did not assume additional and lasting obligations to vendor that continued past forfeiture, under guaranty agreement stating that guarantors' obligations "shall remain fully binding" even though vendor may have "released" purchaser from "performance of its obligations under such Land Contract," as required for guarantors to be liable to vendor for deficiency after vendor elected forfeiture as remedy, under Michigan law, since vendor's judgment for possession after forfeiture extinguished, not merely released purchaser from, land contract, leaving vendor no legal basis to pursue further claim of breach of contract against guarantors. M.C.L.A. SS 600.5744(1), 600.5750. | Is a guaranty separate and distinct from a mortgage? | Guaranty- Memo 12 - JS.docx | ROSS-003284145-ROSS-003284146 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 21416 | State v. Champoux, 252 Neb. 769 | 92+3902 | In Eckstein v. City of Lincoln, supra, the appellant challenged a city ordinance limiting the use of private walls within the city limits for domestic purposes to only those properties where the city's water distribution system was not available. We stated.The right to full and free use and enjoyment of one's property in a manner and for such purposes as the owner may choose, so long as it is not for the maintenance of a nuisance or injurious to others, is a privilege protected by law, and one of which a property owner may not be deprived without due process of law. The owner's right to use his property is subject, however, to reasonable regulation, restriction, and control by the state in the legitimate exercise of its police powers. The test of legitimacy is the existence of a real and substantial relationship between the exercise of those powers in a particular manner, and the peace, public health, public morality, public safety, or the general welfare of the city. [Citation omitted.]...There must be a reasonable relationship between the object the ordinance seeks to accomplish and the means by which it operates. [Citation omitted.] There must be a clear, real, and substantial connection between the assumed purpose of the enactment and its actual provisions.(Emphasis supplied.) Eckstein v. City of Lincoln, 202 Neb. at 744, 277 N.W.2d at 93. | In cases involving due process challenges under state Constitution, when fundamental right or suspect classification is not involved in legislation, legislative act is a valid exercise of police power if act is rationally related to legitimate state interest. Const. Art. 1, S 3. | Is the right to full and free use and enjoyment of one's property a privilege protected by law? | Property - Memo 11 - ANG.docx | LEGALEASE-00001319-LEGALEASE-00001320 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21417 | United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574 | 231H+1556(3) | Thus the run of arbitration cases, illustrated by Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 becomes irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor isputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself. | Since any attempt by court to infer a purpose to exclude certain claims from arbitration under collective bargaining agreement necessarily comprehends the merits, court should view with suspicion an attempt to persuade it to become entangled in the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator. | Can arbitration be substituted for litigation under commercial law? | 004154.docx | LEGALEASE-00116239-LEGALEASE-00116241 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| | | | | | | | | | 0 | 1 | 1 | 1 | 1 |
| 21418 | Meleyco P'ship No. 2 v. City of W. St. Paul, 874 N.W.2d 440 | 414+1007 | As a general matter, a municipality may regulate the use of privately-owned land as part of a community-development plan. White v. City of Elk River, 840 N.W.2d 43, 49 (Minn.2013). Although a municipality's authority to enact zoning ordinances is a legitimate exercise of its police power, that authority is subject to certain constitutional and statutory limitations. Id. (citing Hawkins v. Talbot, 248 Minn. 549, 551, 80 N.W.2d 863, 865 (1957)). One limitation is the municipality's authority to terminate nonconforming uses.2 Id. When a nonconforming use lawfully exists before an adverse zoning change takes effect, constitutional and statutory protections permit the use to continue. Krummenacher, 783 N.W.2d at 726. Minn.Stat. " 462.357, subd. 1e(a) (2012) provides statutory protection for nonconforming uses:Except as otherwise provided by law, any nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair, replacement, restoration, maintenance, or improvement, but not including expansion....In keeping with this "grandfathering" principle, WSPZO " 4.2(1) provides that "[a]ny Structure or Use lawfully existing upon the Effective Date of this Ordinance may be continued at the size and in the manner of operation existing upon such date except as hereinafter specified." WSPZO " 37.7(1) addresses the principle concerning signs specifically: "A Sign that is legally established upon the effective date of this Ordinance may be continued at the size and in the manner of operation existing upon such date except as specified in this Section." The issue in this case involves determining how and when, under the city's zoning ordinance, a nonconforming use loses its lawful status due to discontinued use or abandonment. | Although a municipality's authority to enact zoning ordinances is a legitimate exercise of its police power, that authority is subject to certain constitutional and statutory limitations, including the municipality's authority to terminate nonconforming uses. | Can a municipality regulate the use of privately-owned land as part of a community-development plan? | 004260.docx | LEGALEASE-00116111-LEGALEASE-00116112 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21419 | City of S. Pasadena v. Volpe, 418 F. Supp. 854 | 149E+698 | 3. There is no automatic right to an injunction under the National Environmental Policy Act (NEPA), Federal Aid to Highway Act (FAHA) or the California Environmental Quality Act (CEQA). The decisional process in this court is one of balancing the equities and it is often a most difficult task. (Aberdeen & Rockfish R. R. v. Students Challenging Regulatory Agency Procedures, 409 U.S. 1207, 1217-18, 93 S.Ct. 1, 34 L.Ed.2d 21 (1972)). | Court has power and discretion, after balancing of equities, to allow portion of project to be performed even though provisions of National Environmental Policy Act and California Environmental Quality Act have not been met fully, where such partial work upon project is necessary for protection of public interest and halting of project in its entirety will pose threat to public welfare and safety of community's inhabitants. National Environmental Policy Act of 1969, S 102, 42 U.S.C.A. S 4332; West's Ann.Cal.Public Resources Code, S 21100. | Is the decisional process for judges one of balancing? | 004535.docx | LEGALEASE-00116351-LEGALEASE-00116352 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 21420 | Moore v. Moore, 414 S.C. 490 | 192+1 | "In contrast, [p]ersonal goodwill is associated with individuals." Wilson, 706 S.E.2d at 361. "It is that part of increased earning capacity that results from the reputation, knowledge and skills of individual people." Id. "The implied assumption is that if the individual were not there, the clients would go elsewhere." Business Valuation Resources, LLC, BVR's Guide to Personal v. Enterprise Goodwill 19 (Adam Manson & David Wood eds., 2011) [hereinafter BVR's Guide ]. "Accordingly, the goodwill of a service business, such as a professional practice, consists largely of personal goodwill." Wilson, 706 S.E.2d at 361. "[A]ny value that attaches to a business as a result of this "personal goodwill" represents nothing more than the future earning capacity of the individual and is not divisible [in a divorce proceeding]." Yoon, 711 N.E.2d at 1269. In the family court setting, future earning capacity based on a spouse's reputation, knowledge and skills' personal goodwill"is considered nonmarketable and thus not property subject to division. See Butler v. Butler, 541 Pa. 364, 663 A.2d 148, 156 (1995) ("[W]here there has been an award of alimony, ... to also attribute a value to goodwill that is wholly personal to the professional spouse, would in essence result in a double charge on future income."). | "Personal goodwill" is associated with individuals, and it is that part of increased earning capacity that results from the reputation, knowledge, and skills of individual people. | Does goodwill of a service business consist largely of personal goodwill? | Goodwill - Memo 7 - RK.docx | ROSS-003285477-ROSS-003285478 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21421 | Marsh USA Inc. v. Cook, 354 S.W.3d 764 | 95+65.5 | Marsh sought an agreement not to compete from Cook to protect the company's goodwill"namely, the relationships the company has developed with its customers and employees and their identities, due in part to Cook's performance as a valued employee. The Act provides that "goodwill" is a protectable interest. Tex. Bus. & Com.Code " 15.50(a); see also Mann Frankfort, 289 S.W.3d at 848 (quoting Tex. Bus. & Com.Code " 15.50(a)); Shershunoff, 209 S.W.3d at 648 (same); Peat Marwick, 818 S.W.2d at 386. Texas law has long recognized that goodwill, although intangible, is property and is an integral part of the business just as its physical assets are. Alamo Lumber Co. v. Fahrenthold, 58 S.W.2d 1085, 1088 (Tex.Civ.App.-Beaumont 1933, writ ref'd); Taormina v. Culicchia, 355 S.W.2d 569, 573 (Tex.Civ.App.-El Paso 1962, writ ref'd n.r.e.). Goodwill is defined as:the advantage or benefits which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant and habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.Taormina, 355 S.W.2d at 573; see also Black's Law Dictionary 703 (7th ed.1999) (defining "goodwill" as "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business ..."). The Act recognizes Marsh's goodwill as an interest worthy of protection. | Stock options given in consideration for noncompete agreement were reasonably related to employer's interest in protecting its goodwill, namely the relationships employer had developed with its customers and employees and their identities, due in part to coverantor's performance as a valued employee, and thus covenant not to compete was ancillary to an otherwise enforceable agreement, as required by the Covenants Not to Compete Act. V.T.C.A., Bus. & C. S 15.50(a). | Can goodwill which is intangible be considered an integral part of the business? | 004399.docx | LEGALEASE-00116557-LEGALEASE-00116559 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21422 | Liberty Mut. Ins. Co. v. Zurich Ins. Co., 402 Ill. App. 3d 37 | 213H+11(1) | As an innkeeper, Ritz'Carlton had a duty to safeguard the property of its guests. National Malted Food Corp. v. Crawford, 254 Ill App. 415, 424 (1929); see 740 ILCS 90/1 et seq. (West 1996). The innkeeper has duties similar to those involved in a bailment with respect to property brought onto the innkeeper's premises. See Blakemore v. Coleman, 701 F.2d 967, 969 (D.C.Cir.1983); Federal Insurance Co. v. Beverly Hills Hotel Corp., 202 Cal.App.2d 120, 127, 20 Cal.Rptr. 502, 507 (1962); Kammerer v. Graymont Hotel Corp., 337 Ill.App. 434, 435"36, 86 N.E.2d 383 (1949). The bailee has custody of property subject to bailment. Maryland Casualty Co. v. Holmsgaard, 10 Ill.App.2d 1, 9, 133 N.E.2d 910 (1956). Similarly, the innkeeper has custody of the property of its guests, and, in the course of its work, it assumes a duty to protect that property. The guests property falls in possessory control of the hotel, and it forms an essential part of the hotel's work of protecting its guests' property. | The innkeeper has custody of the property of its guests, and, in the course of its work, it assumes a duty to protect that property; the guests' property falls in possessory control of the hotel, and it forms an essential part of the hotel's work of protecting its guests' property. S.H.A. 740 ILCS 90/1 et seq. | Does the bailee have custody of property? | Bailment - Memo 18 - ANG.docx | ROSS-003298607-ROSS-003298608 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 21423 | Ex parte Algoe, 74 Neb. 353 | 361+1624(6) | The purpose of the clause of our Constitution above quoted, was to prevent surreptitious legislation; and, if the title to an act is sufficiently comprehensive to indicate to the Legislature and the public the matters actually embraced therein, it cannot be said to violate that provision of the fundamental law. From the language of the title to the act in question, it was to be expected that the Legislature would define blackmail and extortion. The meaning of the word "blackmail" is well known and understood, and its definition as it appears in the body of the act is just what we would expect it to be by a glance at its title. Rapalje says: "Blackmail is an extortion of hush money; obtaining value from a person as a condition of refraining from making an accusation against him, or disclosing some secret calculated to operate to his prejudice." And extortion is a synonymous term. The provisions of the act in question are clearly expressed by this definition, and it is not to be believed that the Legislature was, or that the public will be, deceived by the title as to what is contained in the body of the act. We are therefore of opinion that the passage of the act was in all respects a valid exercise of legislative power. | Laws 1901, p. 493, c. 93, providing penalties for blackmail, extortion, and kindred felonies, expresses the subject of the act in the title with sufficient clearness to meet the requirements of Const. art. 3, § 11. | Does blackmail imply an extortion of hush money? | 005055.docx | LEGALEASE-00117115-LEGALEASE-00117116 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21424 | United Gov't Sec. Officers of Am., Int'l Union v. Exelon Nuclear Sec., 24 F. Supp. 3d 460 | 231H+1553 | Ordinary principles of contractual construction apply to the interpretation of arbitration clauses, and the contract containing the arbitration agreement must be read as a whole. See CardioNet, 751 F.3d at 173"75; Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776, 595 F.3d 128, 131"32 (3d Cir.2010) ("[T]he court is limited to the construction of the arbitration clause and any contractual provisions relevant to its scope." (emphasis added)). Although doubts as to the breadth (or "scope") of an arbitration clause are to be resolved in favor of arbitration, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), such a presumption of arbitrability applies"much like Chevron deference"only to the extent that the clause's language is ambiguous, CardioNet, 751 F.3d at 172"73; see also, e.g., Granite Rock, 130 S.Ct. at 2847. "Otherwise, the plain language of the contract controls," CardioNet, 751 F.3d at 172"73, because "arbitration is still a creature of contract and a court cannot call for arbitration of matters outside the scope of the arbitration clause." Rite Aid, 595 F.3d at 131 (quoting United Steelworkers of Am., AFL"CIO/CLC v. Rohm & Haas Co., 522 F.3d 324, 332 (3d Cir.2008)). And, further, principles of contract construction relating to ambiguity require that courts not "distort the meaning of the language or strain to find an ambiguity," Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 172 (3d Cir.2006) (citing Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659, 663 (1982)); rather, courts should read contracts "to avoid ambiguities if possible," Nationwide Mut. Ins. Co. v. Chiao, 186 Fed.Appx. 181, 185 (3d Cir.2006) (quoting St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 525 (3d Cir.1981)). | Federal courts apply same standard to resolve requests to compel arbitration under Labor Management Relations Act and Federal Arbitration Act. 9 U.S.C.A. § 1 et seq.; Labor Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185. | Can a court order arbitration of a matter that is outside the scope of the arbitration clause? | 005193.docx | LEGALEASE-00116848-LEGALEASE-00116850 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 21425 | Cousins v. McNeel, 96 So. 3d 846 | 59+42 | The trial court's judgment included language sufficient to indicate that it was awarding McNeel double statutory damages, pursuant to " 9"13"62. Additionally, the trial court specifically found that Cousins had acted wantonly, which, when used in an action for trespass, "means simply an invasion of the plaintiffs' premises with knowledge of the violation of plaintiffs' rights." Calvert & Marsh Coal Co. v. Pass, 393 So.2d 955, 956 (Ala.1980). See also Martin v. Glass, 84 So.3d 131(Ala.Civ.App.2011) (plurality opinion) (affirming award of nominal and punitive damages awarded to landowner in trespass action against logger who cut several of landowner's trees on the basis that evidence supported trial court's finding that logger had acted wantonly; landowner had asked logger twice to leave her property and to cease cutting of timber, but logger returned and continued cutting). | Trial court did not commit reversible error in locating the boundary line between adjacent properties in action seeking a judgment declaring the boundary line; although trial court failed to identify the location of fence in describing boundary line, trial court relied on the evidence before it and long-standing principles of property law, trial court relied on language contained in deed that was before the court, and description of boundary line relied on landmarks and provided stated measurements from those landmarks to define the boundary. Code 1975, § 35-3-3. | What is the meaning of wantonness in a trespass action? | 000748.docx | LEGALEASE-00117446-LEGALEASE-00117447 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 21426 | Jackass Mt. Ranch v. S. Columbia Basin Irr. Dist., 175 Wash. App. 374 | 148+266 | " 81 JMR's argument that SCBID knew that a landslide was a substantially certain consequence of its failure to take preventive measures is essentially a claim that SCBID failed to act. Failure to act is affiliated with a negligence claim and does not support the intentional act needed for trespass. See Price v. City of Seattle, 106 Wash.App. 647, 660, 24 P.3d 1098 (2001). The trial court properly dismissed JMR's trespass claim. | A claim for inverse condemnation exists where the alleged damage or taking was caused by a governmental entity's affirmative act of constructing a public project to achieve a public purpose. West's RCWA Const. Art. 1, § 16. | Can a failure to act fulfill the intentional act element required for a claim of trespass? | Trespass - Memo 42 - RK.docx | ROSS-003315384-ROSS-003315385 | SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21427 | S. Nat. Gas Co. v. Mound Co., 229 F. Supp. 422 | 260+92.84 | The Louisiana Supreme Court in O'Meara, maintains a similar position. The Court cautioned that "it is apparent that the Legislature has delegated to the commissioner of conservation, the authority to find the facts upon which the law is to be applied." 212 La. 745, 33 So.2d 506, 509. | Mineral lessees who contended that a defendant's well illegally produced oil from sand which had been sealed off, by order, from sand from which production was permitted so as to unjustly enrich defendant, depriving them of property in violation of code and who sought accounting were required to exhaust their administrative remedies before the Commissioner of Conservation, though several days after suit was filed, defendant sold its allegedly offending oil interests to a third party. LSA-R.S. 30:12. | Does the Commissioner of conservation have the authority to find the facts upon which the law is to be applied? | Administrative Law - Memo 50 - RK.docx | ROSS-003311778-ROSS-003311779 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21428 | Lowe v. Swanson, 639 F. Supp. 2d 857 | 92+4509(23) | Incest was not a crime under the common law. See Grossenbacher v. State, 49 Ohio App. 451, 454, 3 O.O. 313, 197 N.E. 382 (1934); People v. Tobias, 25 Cal.4th 327, 331, 106 Cal.Rptr.2d 80, 21 P.3d 758, 760 (2001) (citing People v. Baker, 69 Cal.2d 44, 49, 69 Cal.Rptr. 595, 442 P.2d 675 (1968)); State v. Sauls, 190 N.C. 810, 130 S.E. 848 (1925) (citing State v. Keesler, 78 N.C. 469 (1878) (dismissing indictment for defendant's improper intercourse with his daughter as not contrary to any statutory offense and unindictable under the common law)). It is a statutory offense. Ibid. Early American jurisprudence as exemplified in South Carolina, applied the statute of 32 H.VIII, ch. 38, which declared "all persons to be lawful that be not prohibited by God's law to marry" with God's law supplied by the 18th chapter of the Book of Leviticus. While marriage contrary to God's law was unlawful, the act of incest itself was not criminal. See State v. Barefoot, 2 Rich. 209, 31 S.C.L. 209,1845 WL 2580 at /Ann Ct 1945) | Rational basis scrutiny, not strict scrutiny, applied to a criminal defendant's substantive due process challenge to an Ohio incest statute which prohibited sexual relations between the defendant and his adult, opposite-sex step-child; the defendant claimed that application of the statute to his circumstances infringed on his fundamental right to consensual sexual relationships within the privacy of the home. U.S.C.A. Const.Amend. 14; Ohio R.C. S 2907.03(A)(5). | Is incest a common law crime? | 000441.docx | LEGALEASE-00117756-LEGALEASE-00117757 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21429 | Clemente v. Espinosa, 749 F. Supp. 672 | 237+33 | Under the common law of defamation, a plaintiff who proves that statements made about him were slander per se may recover even substantial sums without evidence of actual loss. The existence of an injury is presumed from the fact of publication. Agriss v. Roadway Exp., Inc., 483 A.2d at 470 (Pa.Super.1984); Restatement (Second) Torts " 570 (1977). This does not mean that a Court should exercise unbridled discretion in compensating a plaintiff for such harms as personal humiliation, impairment of reputation, and mental anguish. Gertz v. Robert Welch, Inc., 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974). It is the view of most courts that, as a matter of fairness, the fact-finder should not be allowed to presume too much. Sharon v. Time, Inc., 599 F.Supp. 538, 586 (S.D.N.Y.1984). In some cases a nominal recovery may be sufficient to "vindicate the injury." Lasky v. American Broadcasting Companies, Inc., 631 F.Supp. 962, 974 (S.D.N.Y.1986) (quoting, Airlie Foundation, Inc. v. Evening Star Newspaper Co., 337 F.Supp. 421, 431 (D.D.C.1972)). Nominal damages are appropriate where there has exists an " "invasion of a right, but no real, substantial or serious loss or injury has been established." " Weider v. Hoffman, 238 Ambridge, 413 Pa. 442, 197 A.2d 721 (1964)). | Under Pennsylvania common law of defamation, plaintiff who proves that statements made about him were slanderous per se may recover even substantial sums without evidence of actual loss; existence of injury is presumed from fact of publication. | When are nominal damages appropriate? | Libel and Slander - Memo 82 - TH.docx | ROSS-003398620-ROSS-003398622 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21430 | Tossow v. State, 2003 WL 738331 | 386+84 | "The relation of landlord and tenant is always created by contract, either express or implied. The reservation or payment of rent, however, is not essential to the creation of the relation, though it is a usual incident of tenancy." Stubblefield v. Jones, 230 S.W. 720, 721 (Tex.Civ.App.-El Paso 1921, writ ref'd). "An occupant of real estate may be found to have been a tenant of the owner of the property although there appears to have been no express contract between them either written or oral, and although the occupant may not have agreed or become obligated to pay rental or other consideration." City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516, 520 (Tex.1942). The relation of landlord and tenant is a question of fact and may be proved or disproved by parol evidence. Brown, 12 S.W.2d at 545. | Evidence was sufficient to support defendant's conviction for criminal trespass upon the property of a residential treatment center; defendant was asked to leave premises and refused to do so until police were called and arrested him for trespass, although defendant claimed that, as a program participant he was a tenant of the center, and his program fee constituted rent, there was no evidence of a written or oral contract, and mere payment of rent, assuming defendant did pay rent, was insufficient to show tenancy. V.T.C.A., Penal Code S 30.05. | Can the relation between a landlord and a tenant be disproved by parol evidence? | Landlord and Tenant - Memo 41 - ANG.docx | ROSS-003296467-ROSS-003296468 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 21431 | Davis v. Michigan Dept. of Corrections, 746 F.Supp. 662 | 170B+3442 | Plaintiff's pro se status does not excuse his procedural shortcomings. Although modern pleading is less rigid than in the past, courts have not dismantled all pleading barriers. Wells, 891 F.2d at 593. It is not unreasonable to ask that if a person is to be subject to suit, the person should be properly named and clearly notified of the potential for payment of damages individually. Id. (citing Brandon v. Holt, 469 U.S. 464, 474, 105 S.Ct. 873, 879, 83 L.Ed.2d 878 (1985) (Burger, C.J., concurring in judgment)). Although pro se complaints are to be held to a less stringent standard than formal pleadings drafted by lawyers, courts have not been willing to abrogate basic pleading essentials in pro se suits. Wells, 891 F.2d at 594 (citations omitted). | Inmate could not take good faith appeal of decisions that correctional officer who was sued in official capacity was not "person" within meaning of S 1983, that Eleventh Amendment barred suit against Michigan Department of Corrections, that officer's alleged verbal assault did not violate Eighth Amendment, and that inmate did not plead equal protection claim with requisite specificity, and, thus, inmate was not entitled to appeal in forma pauperis. 28 U.S.C.A. SS 1915, 1915(a); U.S.C.A. Const.Amends. 8, 14. | Is modern pleading less rigid than in the past? | 001508.docx | LEGALEASE-00118556-LEGALEASE-00118557 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 21432 | Dominium Austin Partners v. Emerson, 248 F.3d 720 | 25T+141 | Congress demonstrated a strong national policy in favor of arbitration when it enacted the FAA. See Dobbins v. Hawk's Enters., 198 F.3d 715, 717 (8th Cir.1999). "From this strong policy flows a "broad principle of enforceability" of arbitration provisions." Id. (quoting Southland Corp. v. Keating, 465 U.S. 1, 11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). Arbitrability is reviewed de novo to the extent that it depends on contract interpretation, but the court's fact findings are reviewed for clear error. See PCS Nitrogen Fertilizer, L.P. v. The Christy Refractories, L.L.C., 225 F.3d 974, 978 (8th Cir 2000). | Fact that certain corporate parties who made up controlling limited partner in limited partnership were not parties to the same partnership agreements as individual limited partners who were suing corporate parties for breach of fiduciary duty did not preclude enforcement of arbitration clause in partnership agreements; individual partners made allegations which treated corporate parties as signatories to agreements. | Does the national policy in favor of arbitration create a broad principle of enforceability of arbitration provisions? | Alternative Dispute Resolution - Memo 219 - RK.docx | ROSS-003285106-ROSS-003285107 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21433 | Goesele v. Bimeler, 55 U.S. 589 | 288+13 | These universal partnerships have been adopted into the common law. Mr. Justice Story thus defines them: "By universal partnerships, we are to understand these, that where the parties agree to bring into the firm all their property, real, personal, and mixed, and to employ all their skill, labor, services, and diligence, in trade or business, for the common and mutual benefit, so that there is an entire communion of interest between them. Such contracts are within the scope of the common law, but they are of very rare existence." Story on Part. 104. | An association of separatists emigrated from Germany to this country; and B., their leader, purchased a tract of wild land in Ohio on credit, and took a deed thereof in his own name; and it was verbally agreed between the members of the association that each family should select as much land as it could cultivate, and pay for the same with the fruits of its industry. The members afterwards signed articles of association, renouncing all individual property, and agreeing to hold all their property in common, under the management of a board of directors elected by this society, and to labor in common for the good of the whole community, and for the comfortable maintenance of each member. The association afterwards obtained an act of incorporation and B. signed the articles, and put the lands under the control of the society. Held, that the heirs of one of the members who signed the articles of association could not maintain a bill in equity against B. and the other members for a partition of the lands. | What are the elements of a universal partnership? | Partnership - Memo 51 - RK.docx | ROSS-003282779 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 21434 | Wells v. Clackamas Gastroenterology Associates, P.C., 271 F.3d 903 | 78+1111 | Clackamas contends that Strother v. Southern California Permanente Medical Group, 79 F.3d 859 (9th Cir.1996), directs the court to use the "economic realities test" in this case. Strother, however, is distinguishable from this case and does not address the split between Dowd and Hyland regarding the status of shareholders of a professional corporation. In Strother, a case arising under state law, we held that partners can, under appropriate circumstances, be deemed to be employees for the purposes of the employment discrimination laws. | Professional medical corporation's physician-shareholders were "employees" for purposes of determining whether corporation had enough employees to be covered by ADA, where they were directors, they actively participated in management and operation of medical practice, and they had employment agreements with corporation. Americans with Disabilities Act of 1990, S 101(4, 5), 42 U.S.C.A. S 12111(4, 5). | Can a partner be regarded as an employee? | Partnership - Memo 55 - RK.docx | ROSS-003286142-ROSS-003286144 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 21435 | Davis v. Holland, 31 S.W.3d 574 | 102+128 | On appeal, this court found that Mr. Sweatt had stated a cognizable claim under U.S.C. 42 " 1983, but we revisited the question of venue. We noted that Tenn.Code.Ann. " 41"21"803 did not apply, because it was not yet in effect when Antonio Sweatt filed his petition. We reasoned that a claim for violation of civil rights must be considered a transitory action because it can arise anywhere. The general law in regard to transitory actions therefore applied, which is that "the action may be brought in the county where the cause of action arose or in the county where the defendant resides or is found." Tenn.Code.Ann. " 20"4"101(a). | Inmate was not entitled to file another claim at least until he finished paying off court costs from earlier action found to be both malicious and frivolous. T.C.A. SS 41-21-807(h), 41-21-812. | Is a claim for violation of civil rights a transitory action? | Venue - Memo 54- ANG.docx | ROSS-003311251-ROSS-003311252 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21436 | Appeal of Seacoast Anti Pollution League, 125 N.H. 465 | 145+8 | In a recent case in which the propriety of ex parte communications made by a prior chairman of the commission was questioned, this court pointed to the above-quoted statutory code of conduct as demonstrating the legislative recognition of the need for neutrality and impartiality and reminded the PUC that:"as long ago as 1929 this court recognized that the PUC was created by the legislature as a "state tribunal, imposing upon it important judicial duties." Parker-Young Co. v. State, 83 N.H. 551, 556, 145 A. 786, 789 (1929). When it is not acting in a rule-making capacity but in an adjudicative one, see 3 K. DAVIS, supra " 14.5, at 24-28, the procedural posture of the PUC is different. "If private rights are affected by the board's decision the decision is a judicial one." Petition of Boston & Maine Corp., 109 N.H. 324, 327, 251 A.2d 332, 336 (1969) (decision of PUC, closing railroad grade crossing, was judicial). | Fact that one alternative to approving additional monies for construction of a nuclear reactor was bankruptcy of the company building the reactor did not preclude the Public Utilities Commission from deferring determination of alternatives until after a financing decision on company's petition for additional money, where antipollution league opposing financing approval did not show that relative merits of bankruptcy and financing could have been assessed before August 31, 1984, the date determined to be date which decision on additional financing had to be made or result in a de facto denial. RSA 369:1 et seq. | Are decisions of administrative boards considered judicial when they affect private rights? | 002355.docx | LEGALEASE-00119432-LEGALEASE-00119433 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 21437 | Farrior v. State, 728 So. 2d 203+523 691 | | 710 So.2d at 1365 (citations omitted). The appellant contends that " 13A"5"40(a)(17) implicates his fundamental right to be free from cruel and unusual punishment. Therefore, he argues that we should apply the strict scrutiny test, rather than the rational basis test, to determine whether " 13A"5"40(a)(17) violates his equal protection rights. This argument is without merit. Section 13A"5"40(a)(17) does not implicate any of the appellant's fundamental rights. As we stated in May, the intentional murder of a person in a vehicle is the act sought to be prohibited by " 13A"5"40(a)(17). Id. And, " "murder is not a constitutionally protected activity." " Id., quoting Ex parte Woodard, 631 So.2d 1065, 1068 (Ala.Cr.App.1993), cert. denied, 662 So.2d 929 (Ala.), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994). | Equal Protection Clause is not violated by statute making murder capital if defendant committed the murder by or through the use of a deadly weapon while the victim was in a vehicle. U.S.C.A. Const.Amend. 14; Code 1975, S 13A-5-40(a)(17). | Is murder a constitutionally protected activity? | 002868.docx | LEGALEASE-00119773-LEGALEASE-00119774 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21438 | Daley-Sand v. W. Am. Ins. Co., 387 Pa. Super. 630 | 217+2793(2) | Finally, subrogation is not an inflexible legal concept but, as an exercise of equitable powers, it is to be carried out with an exercise of a proper equitable discretion, with a due regard for the legal and equitable rights of others.American Surety Co. of New York v. Bethlehem National Bank of Bethlehem, 116 F.2d 75, rev'd on other grounds, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241, 138 A.L.R. S09 (1941). | Underinsured motorist carrier's exercise of contractual right to withhold consent to insured's settlement with tort-feasor until carrier could research its subrogation opportunities frustrated public policy requiring underinsured motorist coverage; carrier failed to show that withholding of consent and consequent refusal to pay benefits was in good faith or was reasonable. 75 Pa.C.S.A. SS 1701 et seq., 1731(a). | Is subrogation an inflexible legal concept? | 002524.docx | LEGALEASE-00120131-LEGALEASE-00120132 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 21439 | Melrose Gates v. Chor Moua, 875 N.W.2d 814 | 30+3554 | Generally, there are two types of subrogation: equitable and conventional. Medica, Inc. v. Atl. Mut. Ins. Co., 566 N.W.2d 74, 77 (Minn.1997). Equitable subrogation has its origins in common law, and its purpose is to place the responsibility for the payment of the debt upon the one who in equity ought to pay it. Id. (citing Westendorf ex rel. Westendorf v. Stasson, 330 N.W.2d 699, 703 (Minn.1983)). Conventional subrogation is contractual and springs from the agreement between the insured and the insurer. Id. Under conventional subrogation, the parties may grant greater subrogation rights under the contract than would be recognized in equity. Id. (citing 16 George J. Couch, Couch on Insurance 2d " 61:3 (rev. ed.1983)). But even under conventional subrogation, the terms of subrogation are governed by equitable principles unless the contract clearly and explicitly provides to the contrary. Id. (citing Westendorf, 330 N.W.2d at 703). | District court's decision on cross motions for summary judgment dismissing an equitable claim on the ground that, as a matter of law, the requirements for equitable relief were not met, was required to be reviewed de novo, where the facts were undisputed and the district court did not weigh equitable factors. | Does equitable subrogation have its origins in common law? | 002530.docx | LEGALEASE-00119852-LEGALEASE-00119853 | Condensed, Order, SA, Sub | 0.67 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21440 | Bank of Am., N.A. v. Prestance Corp., 160 Wash. 2d 560 | 366=31(4) | The Restatement posits a subrogee's knowledge of junior interests is irrelevant. See Restatement (Third) " 7.6 cmt. e, at 520 ("[S]ubrogation can be granted even if the payor had actual knowledge of the intervening interest.... The question in such cases is whether the payor reasonably expected to get security with a priority equal to the mortgage being paid."). The American Law Institute (ALI) properly emphasizes equitable subrogation's concern of unjust enrichment: "Subrogation is an equitable remedy designed to avoid a person's receiving an unearned windfall at the expense of another." Id. cmt. a. And junior lienholders will be unjustly enriched whether the subrogee knew about them or not. | Washington Supreme Court would adopt the approach of the Restatement (Third) of Property, under which a refinancing mortgagee's actual or constructive knowledge of intervening liens does not automatically preclude a court from applying equitable subrogation. Restatement (Third) of Property (Mortgages) § 7.6. | What is the purpose of the doctrine of equitable subrogation? | 002590.docx | LEGALEASE-00119975-LEGALEASE-00119976 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 21441 | State ex rel. Philipp Transit Lines v. Pub. Serv. Comm'n, 552 S.W.2d 696 | 317A=150 | In Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453 (1967), the court upheld the "notation" procedures utilized by the Civil Aeronautics Board. The C.A.B. was working under similar statutory language as the Missouri Public Service Commission. The court in Braniff concluded that the required forum need not be physically present at any one time and that the board was allowed "to proceed with its members acting separately, in their various offices, rather than jointly in conference." 379 F.2d at 460. The court reasoned that the workload involved made this procedure quite reasonable and even drew an analogy between that notational voting system and the procedure used by the court itself. T.S.C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777 (S.D.Texas, 1960), aff'd per curiam sub nom. Herrin Transp. Co. v. United States, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961). | Report and order of Public Service Commission did not conform to statutory requirements and, hence, was voidable and subject to attack in proceeding for review when adopted pursuant to a notational voting procedure and not at a public meeting of which notice had been given. Section 386.130 RSMo 1969, V.A.M.S.; Laws N.Y.1907, c. 429, §§ 3, 4, 11. | "For a board to conduct its proceedings, is it required that the forum need to be physically present at any one time?" | Administrative Law - Memo 181 - RK.docx | ROSS-003311371-ROSS-003311372 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 21442 | Charlebois v. United States, 54 Ct. Cl. 183 | 34=13.1(1) | It is a well-settled principle that an officer upon his original entry into the service of the Government is not entitled to the emoluments of the office until he has executed the oath of office, and in cases where a bond is required, until he has given bond. Williams v. United States, 23 C. Cls., 46. While an officer already in the service may be promoted from one office to another and, after he has qualified in the higher office receive the pay of the same for the period between the date of eligibility and date of execution of the oath of office, this is only upon the express authority of Congress and does not apply to cases where the officer is receiving pay of the same into the service. Toulon v. United States, 52 C. Cls. 133. | Act. Aug. 29, 1916, 39 Stat. 625, changed the designation of clerk, Quartermaster Corps, to field clerk. No new office was created by the act, and executive action was unnecessary to determine the status of its beneficiaries. It was intended that the clerks named should receive the allowances from the date of the approval of the act. | "Is it necessary for a consul before he receives his commission or enters upon the duties of his office, to give a bond?" | Ambassadors and Consuls - Memo 2 - TH.docx | LEGALEASE-00009012-LEGALEASE-00009013 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 21443 | Gay v. Hudson River Elec. Power Co., 182 F. 279 | 106=508(2.1) | This court, on the bills of complaint herein and other papers, the complainants being citizens of the state of Massachusetts and defendants citizens of the state of New York, granted an order to show cause why receivers of the various properties of all the defendants herein should not be appointed, with power to take possession of and operate such properties, etc. The bill alleged that all the eight defendant companies were being operated as one, under one management and indirectly through one ownership, by way of control and ownership of stock, etc., and that such corporations were insolvent, and that their properties were being mismanaged and wasted, etc. This application resulted in the appointment of receivers on the 29th day of October, 1908, and their qualification as such. They immediately took possession of such properties by order of this court, and have been in possession thereof and operating them since. These properties consist in the main of water powers and plants generating and supplying electricity and electric power mainly on and along the Hudson river. The dam at Spiers Falls, on that river, holds back the water of the river, except in times of high water, and except as discharged by the ordinary running of the plants of some of the defendants. The said corporations supply electrical power and light to the public and are quasi public corporations. | Rev.St. § 720; 28 U.S.C.A. § 2283, provides that an injunction shall not be granted by any federal court to stay proceedings in any court of a state, except where such injunction would be authorized by any law relating to proceedings in bankruptcy. Section 716; 28 U.S.C.A. § 1651, says that the federal court shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law. Held, that section 720 was modified by section 716, and hence, where a federal court, in the exercise of its concurrent jurisdiction, has taken possession of all the property of certain corporations in receivership proceedings, it will enjoin the prosecution of suits against such corporations in the state court, by which the property so taken may be seriously impaired and the operations of the receiver seriously interfered with. | Are Electric companies termed as quasi-public corporations? | 003069.docx | LEGALEASE-00120305-LEGALEASE-00120306 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 21444 | Lowe v. Swanson, 639 F. Supp. 2d 857 | 92=4509(23) | In contrast, consensual stepparent / adult stepchild relationships are not criminalized in the incest statute that "[c]onsent is a defense under this section to incest with or upon a stepson or stepdaughter, but consent is ineffective if the victim is less than 18 years old." In the State of Washington, age, not consent, is the crucial factor against its prohibition of sexual intercourse with a "descendant," defined as "stepchildren and adopted children under eighteen years of age." See West's Rev.Code of Wash. " 9A.64.020(3)(a); State v. Farrington, 35 Wash.App. 799, 669 P.2d 1275 (1983) (consent is not an issue in an incest charge). In the State of Nebraska, incest with stepchildren occurs only when the child is a "minor" under Neb. Rev. St. " 28"703 ("any person who engages in sexual penetration with his or her minor stepchild commits incest."). The Supreme Court of Massachusetts has provided a thorough statutory comparison of state laws noting 20 states do not punish any form of affinal incest and seven states plus Massachusetts punish affinal incest only with children or when nonconsensual. See Commonwealth v. Rahim, 441 Mass. at 278"79 & n. 7"8, 805 N.E.2d at 17"18. Further, the Model Penal Code does not criminalize affinal incest. See ULA Model Penal Code " 230.2 (and see explanatory note at Pt. II Art. 230); Rahim, 441 Mass. at 280, 805 N.E.2d at 19. But in minority jurisdictions, as Ohio, neither age nor consent will negate the crime of incest. E.g., McCaskill v. State, 55 Fla. 117, 45 So. 843, 845 (1908); Smith v. State, 6 S.W.3d 512 (Tenn.Crim.App.1999); State v. Benson, 81 Ohio App.3d 697, 612 N.E.2d 337 (1992); State v. Freeman, 155 Ohio App.3d 492, 801 N.E.2d 906 (2003); People v. Facey, 115 A.D.2d 11, 16, 499 N.Y.S.2d 517, 520 (N.Y.A.D. 4 Dept.1986) ("Prosecutions involving consenting adults are rare."). | Rational basis scrutiny, not strict scrutiny, applied to a criminal defendant's substantive due process challenge to an Ohio incest statute which prohibited sexual relations between the defendant and his adult, opposite-sex step-child; the defendant claimed that application of the statute to his circumstances infringed on his fundamental right to consensual sexual relationships within the privacy of the home. U.S.C.A. Const.Amend. 14; Ohio R.C. § 2907.03(A)(5). | Is consent an issue in a charge of incest? | 003191.docx | LEGALEASE-00120547-LEGALEASE-00120549 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 21445 | People v. Tobias, 25 Cal. 4th 327 | 110=59(5) | The California cases all apply essentially the same reasoning, flowing from dictum in our opinion in People v. Stratton (1904) 141 Cal. 604, 75 P. 166 [Stratton]. In that case, we considered whether the same conduct could constitute both rape and incest. The defendant asserted the crime of incest required the consent of both parties. If one party did not consent, he argued, the crime was rape, but not incest, regardless of family relationship. (Id. at pp. 607'608, 75 P. 166.) We noted several out-of-state decisions that had adopted that holding, but we rejected it, concluding that the consent of one's sexual partner was not an element of the crime of incest. (Id. at p. 608'609, 75 P. 166.) At the close of our opinion, we added the following dictum: "If the prosecutrix, being of the legal age of consent, consents to the incestuous intercourse, unquestionably she is particeps criminis, and her testimony, like that of any other accomplice, uncorroborated, is insufficient to uphold a conviction. [Citation.] But if ... she is the victim of force, or fraud, or undue influence, or is too young to be able to give legal assent, so that she does not willfully and willingly join in the incestuous act, she cannot be regarded as an accomplice. [Citation.]" (Id. at p. 609, 75 P. 166, second italics added & fn. omitted.) | Child under 18 who had consensual incestuous sexual relationship with her father was victim, not perpetrator, of that incest, and, thus, child was not accomplice, and jury instructions on accomplice testimony were not warranted. West's Ann.Cal.Penal Code 55 285, 1111. | Is the consent of both parties an element of the crime of incest? | Incest - Memo 72 - RK.docx | ROSS-003311293-ROSS-003311294 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21446 | Wood v. Hustler Magazine, 736 F.2d 1084 | 379=354 | The Court substantially altered the direction of First Amendment law in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). See generally, Wade, The Communicative Torts and the First Amendment, 48 Miss.L.J. 671, 692'97 (1977); Robertson, Defamation and the First Amendment: In Praise of Gertz v. Robert Welch, Inc., 54 Tex.L.Rev. 199 (1976). Abandoning Rosenbloom 's focus on whether defamatory matter was a matter of public concern, the Gertz Court established a public figure-private figure dichotomy. See Braun v. Flynt, 726 F.2d at 249 & n. 6. Defendants who published statements concerning public figures were entitled to heightened protection because (1) the press required "breathing space" in conveying information about public figures; (2) public figures could be said, in some sense, to have sought out or volunteered for notoriety or public discussion, and (3) public figures had access to media in which they could respond to and attempt to correct false statements. By contrast, the states had a greater interest in protecting private figures who had not "invite[d] attention and comment" and who generally "lack effective opportunities for rebuttal." Id. at 344, 94 S.Ct. 3009. The Court held that, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." Id. at 347, 94 S.Ct. at 3010. After Gertz, states were permitted to establish negligence as a standard of care in defamation actions by private plaintiffs so long as the recovery was limited to actual damages. To recover punitive damages, however, private plaintiffs were required to satisfy the New York Times actual malice standard. Most state courts considering the question in the wake of Gertz adopted negligence as the minimum standard of liability required by the Constitution for defamation actions by private plaintiffs. | Under Texas law, magazine publisher could be held liable for actual damages for negligently placing private figures in offensive false light; in regard to private figures, showing of reckless disregard was not required. | What is the minimum standard of liability required to establish defamation? | 003302.docx | LEGALEASE-00120587-LEGALEASE-00120589 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21447 | In re Tsurukawa, 287 B.R. 515 | 289=639 | All partners are jointly and severally liable for "any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners ...." Cal. Corp.Code '' 15013 (West 1977); see also Cal. Corp.Code '' 15014, 15015 (West 1977). The law of agency applies to a partnership. Cal. Corp.Code '' 15004 (West 1977). " An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Cal. Civ.Code " 2295 (West 1985). "Every partner is an agent of the partnership for the purpose of its business...." Cal. Corp.Code " 15009 (West 1977 & Supp.1990). Each partner acts as principal for himself or herself and as agent for the copartners in the transaction of partnership business. Tufts v. Mann, 116 Cal.App. 170, 177, 2 P.2d 500, 503 (1931). In addition, "a general partner's liability is the same as that of a principal for the fraud of his agent while acting within the scope of his authority." Pearson v. Norton, 230 Cal.App.2d 1, 14'15, 40 Cal.Rptr. 634, 642 (1964) (finding partner-wife liable for partner-husband's fraud in sale of partnership property). | Under California law, each partner acts as principal for him/herself and as agent for copartners in transacting partnership business. | Does the law of agency apply to a partnership? | Partnership - Memo 85 - RK.docx | ROSS-003286204-ROSS-003286205 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21448 | Jones v. Nationwide Prop. & Cas. Ins. Co., 613 Pa. 219 | 30=3691 | In determining the legality of Nationwide's practice of reimbursing Jones from its subrogation recovery only a pro rated portion of the deductible, we must first consider subrogation and the made whole doctrine generally. We have repeatedly held that subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss. Valora, 939 A.2d at 320. Subrogation allows the subrogee (in this case the insurer) to step into the shoes of the subrogor (the insured) to recover from the party that is primarily liable (the third party tortfeasor) any amounts previously paid by the subrogee to the subrogor (in this case, the amount of damage to the vehicle less the deductible). See e.g. Ario v. Reliance Insur. Co., 602 Pa. 490, 980 A.2d 588, 594'95 (2009). As well-stated by the Superior Court,[W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense.Allstate Ins. Co. v. Clarke, 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987). While subrogation rights may be contractually determined, as in this case, those rights are still subject to equitable principles. See Valora, 939 A.2d at 320. | Issue of whether the pro rata reimbursement of an insured's deductible from the insurer's subrogation recovery in a collision coverage case violated the common law made whole doctrine presented a question of law subject to plenary review. | Is subrogation an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss? | Subrogation - Memo 54 - RM C.docx | ROSS-003297008-ROSS-003297009 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21449 | In re Corbin, 506 B.R. 287 | 83E+712 | In general, "subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right.... Subrogation places the party paying the loss or claim (the "subrogee") in the shoes of the person who suffered the loss ("the subrogor"). Thus, when the doctrine of subrogation applies, the subrogee succeeds to the legal rights and claims of the subrogor with respect to the loss or claim." Hamada v. Far East Nat'l Bank (In re Hamada), 291 F.3d 645, 649 (9th Cir.2002). See also Han v. United States, 944 F.2d 526, 529 (9th Cir.1991); Milgard Tempering, Inc. v. Darosa (In re Darosa), 318 B.R. 871, 877 (9th Cir. BAP 2004). | Under Washington law, an accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party. West's RCWA 62A.3-419. | Is a subrogee put in the place of a party to whose rights he is subrogated through subrogation? | 003650.docx | LEGALEASE-00120456-LEGALEASE-00120457 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 21450 | Philadelphia Newspapers v. Hepps, 475 U.S. 767 | 237+101(4) | Appellees brought suit for defamation against appellants in a Pennsylvania state court. Consistent with Gertz, supra, Pennsylvania requires a private figure who brings a suit for defamation to bear the burden of proving negligence or malice by the defendant in publishing the statements at issue. 42 Pa.Cons.Stat. ° 8344 (1982). As to falsity, Pennsylvania follows the common law's presumption that an individual's reputation is a good one. Statements defaming that person are therefore presumptively false, although a publisher who bears the burden of proving the truth of the statements has an absolute defense. See 506 Pa. 304, 313°314, 485 A.2d 374, 379 (1984). See also 42 Pa.Cons.Stat. ° 8343(b)(1) (1982) (defendant has the burden of proving the truth of a defamatory statement). Cf. Gertz, supra, 418 U.S., at 349, 94 S.Ct., at 3011 (common law presumes injury to reputation from publication of defamatory statements). See generally Eaton, The American Law of Defamation Through Gertz v. Robert Welch, Inc., and Beyond: An Analytical Primer, 61 Va.L.Rev. 1349, 1352°1357 (1975) (describing common-law scheme of defamation law). | Where plaintiff is private figure and media speech concerning plaintiff is of public concern, plaintiff seeking to recover damages for defamation must bear burden of showing falsity of speech, as well as fault; in such cases, common-law presumption that defamatory speech is false cannot be applied. U.S.C.A. Const.Amend. 1. | Does the defendant have the burden of proving the truth of a defamatory statement? | 003352.docx | LEGALEASE-00120831-LEGALEASE-00120832 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21451 | Shaffer v. ACS Gov't Servs., 321 F. Supp. 2d 682 | 170B+3053 | As a preliminary matter, this Court agrees with the Eastern District of New York's determination that claims under the Jury System Improvement Act are subject to arbitration under the FAA. See McNulty v. Prudential°Bache Securities, 871 F.Supp. 567 (E.D.N.Y.1994). As that Court concluded, "[t]here is no evidence in the statute's text or legislative history that Congress intended to remove claims under the Jurors' Act from arbitration; nor is there an inherent conflict between arbitration and the purposes of the Act." Id. at 569. | Court must apply state-law principles governing contracts when analyzing formation of agreement to arbitrate, and federal substantive law in analyzing arbitrability. | Are claims pursuant to the Jury System Improvement Act arbitrable under the Federal Arbitration Act (FAA)? | 007094.docx | LEGALEASE-00122438-LEGALEASE-00122439 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 21452 | In re Conservatorship of Kane, 134 Cal. App. 4th 254 | 196+54 | Interest income is the ""private property" of the owner of the principal." (Phillips v. Washington Legal Foundation, supra, 524 U.S. at p. 172, 118 S.Ct. 1925.) However, the Fifth Amendment is satisfied so long as the owner is paid for what is taken, i.e., put in the same position monetarily as he or she would have occupied if the property had not been taken. (United States v. Reynolds, supra, 397 U.S. at p. 16, 90 S.Ct. 803.) "That the "taker" may reap a profit above and beyond the value of the property interest taken does not entitle the person from whom the property is taken to share in those profits." (Carroll v. State Bar, supra, 166 Cal.App.3d at p. 1204, 213 Cal.Rptr. 305.) Any such additional value does not represent an actual loss and therefore payment for it is not justified. It is a "loss" suffered by no one in fact. (United States v. Chandler"Dunbar Co. (1913) 229 U.S. 53, 76, 33 S.Ct. 667, 57 L.Ed. 1063.) In other words, the award cannot be enhanced by any gain to the taker. (Carroll v. State Bar, supra, 166 Cal.App.3d at pp. 1204°1205, 213 Cal.Rptr. 305.) | Individual conservatorship estates were not entitled to procedural due process right to receive notice and opportunity to be heard prior to implementation of statute providing for deposit into county general fund of interest credited to public guardian's pooled conservatorship estates account which exceeded amount properly credited to each individual estate; under statute, each estate received amount it would have received had funds not been invested in pooled trust account, and thus individual estates had no protectable property interest in excess interest. U.S.C.A. Const.Amend. 14; West's Ann.Cal.Prob.Code § 7642. | Is interest income the private property of the owner of the principal? | Eminent Domain - Memo 189 - GP.docx | ROSS-003299601-ROSS-003299602 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21453 | Witte v. Williams, 8 S.C. 290 | 8.30E+63 | Mr. Chitty, in his work on Bills, page 25, says: "It is not, however, necessary that there should be three different parties to a bill; there are sometimes only two; as where a person draws on another payable to his own order; and, indeed, a bill will be valid where there is only one party to it, for a man may draw on himself payable to his own order. In such cases, however, the instrument may be treated as, in legal operation, a promissory note, and declared on accordingly, but in practice it is usual to declare upon the instrument as if it were a bill not admitting the identity of drawer and drawee." The objection thus taken by the presiding Judge to one of the bills cannot prevail, and, in conformity with our views herein expressed, the judgment must be set aside and the case remanded for a trial. It is accordingly ordered. | A bill of exchange is not invalid as a regular and formal bill of exchange because it is payable to the drawee. | Is it necessary that there should be three different parties to a bill of exchange? | 018319.docx | LEGALEASE-00122275-LEGALEASE-00122277 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21454 | Point Ruston v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am., 2010 WL 3732984 | 170A+2515 | Further, at least with regard to the first passage, the rhetorical device used by Buglisoi negates the impression that his statement implied a false assertion of fact. Buglisoi's use of a question mark serves two purpose: it makes clear his lack of definitive knowledge about the issue and invites the reader to consider the possibility of other justifications for the defendants' actions. As the Fourth Circuit noted:A question can conceivably be defamatory, though it must reasonably be read as an assertion of a false fact; inquiry itself, however embarrassing or unpleasant to its subject, is not an accusation. The language cannot be tortured to "make that certain which is in fact uncertain."Chapin, 993 F.2d at 1094 (citation omitted); see also Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, 39 F.3d 191, 195°96 (8th Cir.1994). Indeed, the First Circuit has explicitly distinguished a question like Buglisoi's from the statements found actionable in Milkovich: "[W]hile the author's readers implicitly were invited to draw their own conclusions from the mixed information provided, the Milkovich readers implicitly were told that only one conclusion was possible." Phantom Touring, Inc., 953 F.2d at 731; see also Beverly Hills Foodland, 39 F.3d at 196.Partington, 56 F.3d at 1157. | A genuine issue of material fact existed as to whether statements made by a carpenter's union regarding an employer were defamatory. Therefore summary judgment was precluded in favor of the union in the employer's defamation claim. The employer alleged that the union made statements that were not only false, or at least deceptively misleading in context, but also that the statements were made with actual malice. The union made statements regarding the employer's alleged emission of toxic waste and dangerous chemicals after negotiations in a labor dispute broke down. | Can questions be defamatory? | 021075.docx | LEGALEASE-00122299-LEGALEASE-00122300 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21455 | Adderhold v. Adderhold, 426 So.2d 457 | 289+507 | It is especially difficult to determine if a partnership relationship exists where, as here, there is no written agreement."The courts, both at common law and under the Uniform Act, have recognized that no one fact or circumstance can be taken as a conclusive test, nor is it possible to state any number of facts that would in all cases be decisive of the existence of a partnership relation. In the last analysis there is no arbitrary test for determining the existence of a partnership, and each case must be decided according to its own peculiar facts."59 Am.Jur., Partnerships." 39 (1971). | Where there is no written agreement between parties, and question is whether as between the two a partnership existed, the question is one of part law and part fact. | Is there an arbitrary test used to determine the existence of a partnership? | Partnership - Memo 157 - RK.docx | ROSS-003285545-ROSS-003285546 | Condensed, SA | 0.72 | 0 | 1 | | 1 | |
| 21456 | Onewest Bank, FSB v. Alessio, 182 So. 3d 855 | 307A+563 | This court has "condemned the use of motions in limine to summarily dismiss a portion of a claim." Rice v. Kelly, 483 So.2d 559, 560 (Fla. 4th DCA 1986). "The purpose of a motion in limine is generally to prevent the introduction of improper evidence, the mere mention of which at trial would be prejudicial." Dailey v. Multicon Dev. Inc., 417 So.2d 1106, 1107 (Fla. 4th DCA 1982). A motion in limine may not serve as an unnoticed alternative to a motion to dismiss or a motion for summary judgment. Rice, 483 So.2d at 560. | The six Kozel factors a trial court is required to consider in determining whether dismissal with prejudice is warranted due to an attorney's misconduct are: (1) whether the attorney's disobedience was willful, deliberate, or contumacious, ratherthan an act of neglect or inexperience; (2) whether the attorney has been previously sanctioned; (3) whether the client was personally involved in the act of disobedience; (4) whether the delay prejudiced the opposing party through undue expense, lo ss of evidence, or in some other fashion; (5) whether the attorney offered reasonable justification for noncompliance; and (6) whether the delay created significant problems of judicial administration. | "Is the purpose of a motion in limine generally to prevent the introduction of improper evidence, the mere mention of which at trial would be prejudicial? | Pretrial Procedure - Memo # 236 - C - ANC.docx | ROSS-003326129-ROSS-003326130 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 21457 | Colvin v. Louisana Patient's Comp. Fund Oversight Bd., 2006-1104 (La. 1/17/07) | 360+200 | Under Louisiana law, a cause of action accrues when a party has the right to sue. Landry v. Avondale Industries, Inc., 03"0719 (La.12/3/03), 864 So.2d 117. A negligence cause of action will arise only upon the happening of a wrongful act and the existence of an injury resulting in legally cognizable damages. Walls v. American Optical Corp., 98"0455 (La.9/8/99), 740 So.2d 1262. The plaintiffs in the case sub judice allege that they have suffered economic damages as well as general damages arising from, inter alia, the alleged intentional infliction of emotional and mental distress on the part of the PCFOB in failing to properly administer their claims. These damages were sustained by the plaintiffs in Bossier Parish, their parish of domicile. | Medical malpractice plaintiffs' causes of action against the Patient's Compensation Fund Oversight Board (PCFOB), seeking declaratory and monetary relief for negligent adjustment and administration of their underlying medical malpractice claims, arose in East Baton Rouge Parish, and thus, because venue was proper in either the district court of the judicial district in which the state capitol was located or in the district court having jurisdiction in the parish in which the cause of action arose, venue was only proper in East Baton Rouge Parish; given that actions sought recovery based on administrative decisions of the PCFOB which were made in East Baton Rouge Parish, operative facts which supported plaintiffs' entitlement to recovery occurred in East Baton Rouge Parish. LSA-R.S. 13:5104(A). | Does a cause of action accrue when a party has the right to sue? | Action - Memo # 52 - C - LK.docx | ROSS-003300693-ROSS-003300694 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 21458 | Fed. Energy Regulatory Comm'n v. Barclays Bank PLC, 105 F. Supp. 3d 1121 | 241+105(1) | Gabelli v. SEC, """ U.S. """", 133 S.Ct. 1216, 1217, 185 L.Ed.2d 297 (2013), in considering a fraud action brought by the SEC, held that "the five-year clock in " 2462 begins to tick when the fraud occurs, not when it is discovered." "That is the most natural reading of the statute. In common parlance a right accrues when it comes into existence. Thus, the standard rule is that a claim accrues when the plaintiff has a complete and present cause of action." Id. at 1220 (internal quotation marks and citations omitted). Courts have found that administrative proceedings are subject to 28 U.S.C. " 2462 and that the clock begins to tick on the date of the underlying violation. See Johnson v. S.E.C., 87 F.3d 484, 492 (D.C.Cir.1996); 3M Co. (Minnesota Min. & Mfg.) v. Browner, 17 F.3d 1453, 1462 (D.C.Cir.1994); National Parks & Conserv. Ass'n, Inc. v. Tenn. Valt. Auth., 502 F.3d 1316, 1322 (11th Cir.2007). See also U.S. v. Core Laboratories, Inc., 759 F.2d 480, 482"84 (5th Cir.1985) ("The progress of administrative proceedings is largely within the control of the Government. A limitations period that began to run only after the government concluded its administrative proceedings would thus amount in practice to little or none"). | Administrative proceedings before Federal Energy Regulatory Commission (FERC) concerning alleged market manipulation by electricity traders contained the basic elements common to adversarial adjudication, and thus were sufficient to toll five-year limitation period for FERC's action to affirm the civil penalties assessed against the traders; traders were afforded multiple opportunities to provide responses throughout the process, and submitted hundreds of pages of arguments and exhibits in their defense. Federal Power Act, 5 31(d)(3)(B), 16 U.S.C.A. 5 823b(d)(3)(B); 28 U.S.C.A. 5 2462. | Does a claim accrue when the plaintiff has a complete and present cause of action? | Action- Memo # 76 - C - LK.docx | ROSS-003312434-ROSS-003312435 | Condensed, SA, Sub | 0.52 | 0 | 1 | | 1 | 1 |
| 21459 | United States v. Postal, 589 F.2d 862 | 221+308 | The self-execution question is perhaps one of the most confounding in treaty law. "Theoretically a self-executing and an executory provision should be readily distinguishable. In practice it is difficult." Reiff, The Enforcement of Multipartite Administrative Treaties in the United States, 34 Am.J.Int'l L. 661, 669 (1940). A treaty may expressly provide for legislative execution. An example is found in articles 27 through 29 of the Convention on the High Seas, each of which begins with the preamble "Every State shall take the necessary legislative measures to . . . ." Such provisions are uniformly declared executory. See Foster v. Neilson, 27 U.S. (2 Pet.) 253, 311-12, 7 L.Ed. 415 (1829); Dickinson, Supra, at 448. And it appears that treaties cannot affect certain subject matters without implementing legislation. "A treaty cannot be self-executing . . . to the extent that it involves governmental action that under the Constitution can be taken only by the Congress." Restatement (Second) of Foreign Relations Law of the United States s 141(3) (1965). Thus, since article 1, section 9 of the Constitution prohibits the drawing of money from the treasury without congressional enactment, it is doubtful that a treaty could appropriate moneys. The Over the Top, S F.2d 838, 845 (D.Conn.1925) (dictum); S. Crandall, Treaties s 74 (2d ed. 1916). The same appears to be the case with respect to criminal sanctions. The Over the Top, S F.2d at 845; Dickinson, Supra, at 449-50. | Self-executing treaties may act to deprive United States, and hence its courts, of jurisdiction over property and individuals that would otherwise be subject to such jurisdiction. Act Jan. 23, 1924, Art. I et seq., 43 Stat. 1761; U.S.C.A.Const. art. 6, cl. 1 et seq. | Can treaties be self-executing? | International Law - Memo 332 - RK.docx | ROSS-003324871-ROSS-003324872 | Condensed, SA, Sub | 0.82 | 0 | 1 | | 1 | 1 |
| 21460 | Tatum v. The Dallas Morning News, 493 S.W.3d 646 | 237+7(1) | In light of Milkovich, Neely, and Bentley, we conclude that the column's gist that the Tatums were deceptive when they wrote Paul's obituary is sufficiently verifiable to be actionable in defamation. Calling someone a liar and accusing someone of perjury, as occurred in those cases, both implicate the person's mental state, because both "liar" and "perjury" denote the willful telling of an untruth. Nevertheless, the Milkovich Court concluded that calling someone a liar and accusing someone of perjury are both sufficiently verifiable to support a defamation claim. 497 U.S. at 19"21, 110 S.Ct. 2695. | Examples of defamation per se include (1) accusing someone of a crime, (2) accusing someone of having a foul or loathsome disease, (3) accusing someone of serious sexual misconduct, and (4) disparaging another's fitness to conduct his or her business or trade. | Is calling someone a liar defamatory? | 021079.docx | LEGALEASE-00122564-LEGALEASE-00122565 | Condensed, SA | 0.57 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21461 | Estate of Mills ex rel. Mills v. Mangsong, 44 Kan. App. 2d 399 | 30+3936 | When a party alleges that an order in limine has been violated, the trial court must determine (1) whether the order has been violated and, if so, (2) whether the party alleging the violation has established substantial prejudice resulting from that violation. City of Mission Hills v. Sexton, 284 Kan. 414, 434, 160 P.3d 812 (2007). Because the trial court is in the best position to determine whether a violation occurred and to determine the degree of prejudice any violation may have caused, the trial court's determination on these matters will not be disturbed absent a clear abuse of discretion. Steinman v. Krisztal, 247 Kan. 324, 328, 799 P.2d 475 (1990). | If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the appellate court should not intervene. | "When a party alleges that an order in limine has been violated, what must the trial court determine?" | Pretrial Procedure - Memo # 382 - C - SSB.docx | ROSS-003283779-ROSS-003283780 | Condensed, SA | 0.78 | 0 | 1 | 0 | | 1 |
| 21462 | ARW Expl. Corp. v. Aguirre, 45 F.3d 1455 | 25T+413 | The Federal Arbitration Act, 9 U.S.C. " 1"16, evinces a strong federal policy in favor of arbitration. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains the broad and sweeping language that these clauses possess. AT & T Technologies, 475 U.S. at 650, 106 S.Ct. at 1419. This presumption may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. All doubts should be resolved in favor of coverage. Id. Courts are to "rigorously" enforce agreements to arbitrate. McMahon, 482 U.S. at 226, 107 S.Ct. at 2337. Moreover, the agreement to arbitrate need not be in a single document or writing. Midland Tar Distillers v. M/T Lotos, 362 F.Supp. 1311, 1313 (S.O.N.Y.1973). | Conclusion by arbitrator, that corporation which had signed agreements to arbitrate federal securities law claims was alter ego of its sole shareholder, so that arbitration agreement could be extended to shareholder, did not preclude federal court from making its own determination as to whether corporate veil could be pierced; arbitrator does not have power to determine whether party is subject to arbitration. | Does an arbitration agreement have to be embodied in a single writing or document? | 007173.docx | LEGALEASE-00125570-LEGALEASE-00125571 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21463 | Bank of Am., N.A. v. Prestance Corp., 160 Wash. 2d 560 | 366+31(4) | The Restatement posits a subrogee's knowledge of junior interests is irrelevant. See Restatement (Third) " 7.6 cmt. e, at 520 ("[S]ubrogation can be granted even if the payor had actual knowledge of the intervening interest.... The question in such cases is whether the payor reasonably expected to get security with a priority equal to the mortgage being paid."). The American Law Institute (ALI) properly emphasizes equitable subrogation's concern of unjust enrichment: "Subrogation is an equitable remedy designed to avoid a person's receiving an unearned windfall at the expense of another." Id. cmt. a. And junior lienholders will be unjustly enriched whether the subrogee knew about them or not. | Washington Supreme Court would adopt the approach of the Restatement (Third) of Property, under which a refinancing mortgagee's actual or constructive knowledge of intervening liens does not automatically preclude a court from applying equitable subrogation. Restatement (Third) of Property (Mortgages) § 7.6. | Does equitable subrogation avoid unearned windfalls? | 044306.docx | LEGALEASE-00124806-LEGALEASE-00124807 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 21464 | Pauly v. U.S. Dep't of Agri., 348 F.3d 1143 | 23+3.5(1) | We review de novo the district court's grant of summary judgment. League of Wilderness Defenders v. Forsgren, 309 F.3d 1181, 1183 (9th Cir.2002). Pursuant to the Administrative Procedure Act (APA), agency decisions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. " 706(2)(A). An agency's interpretation of its own regulations is entitled to deference unless it is plainly erroneous, inconsistent with the regulation, or based on an impermissible construction of the governing statute. See Forsgren, 309 F.3d at 1183. | Since district court's partial remand to United States Department of Agriculture (USDA) was extremely narrow and merely required a mechanical recalculation of recapture amount under current agency regulations, order affirming USDA's determination that appreciation in the value of farm was due under farmers' shared appreciation agreement (SAA) with USDA was final for appeal purposes. 28 U.S.C.A. § 1291; Agricultural Credit Act of 1961, § 353, 7 U.S.C.A. S 2001. | When is an agencys interpretation of its own regulation not entitled to deference? | 006711.docx | LEGALEASE-00125762-LEGALEASE-00125763 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 21465 | Fullenkamp v. Veneman, 383 F.3d 478 | 23+3.5(2) | In statutory construction cases, "[t]he first step ½ to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (citation omitted). The plaintiffs argue that the plain language of " 7982 unambiguously requires the Secretary to make transition payments without limitation. They point out that subsection (h) requires payment on eligible production and note that Congress did not limit the definition of "eligible production" in either subsection (a) or (h). They argue that if Congress had intended the cap to apply to transitional payments, it could have written the statute to say so in subsection (h) itself. As the Secretary points out, however, subsection (h) provides that payments shall be made "482 according to the formula in subsection (c)," which incorporates the payment quantity in subsection (d), the subsection that includes the payment cap. Thus, according to this reading of the statute, the fact that subsection (h) itself does not include a limitation on quantity is not determinative because the payment formula for which it provides incorporates the payment cap in subsection (d)(2). | Secretary of Agriculture's interpretation of statute creating federal Milk Income Loss Contract Program so as to make transition payments to eligible milk producers subject to payment cap was reasonable; statutory language, legislative history, and overall structure and purpose of the statute did not sufficiently clarify intention of Congress with regard to the application of the cap to transition payments, and therefore, Secretary's reasonable interpretation of the statute would be upheld. Farm Security and Rural Investment Act of 2002, S 1502, 7 U.S.C.A. S 7982. | What is the first step in statutory construction cases? | Agriculture - Memo 15-SB.docx | ROSS-003285877-ROSS-003285878 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 21466 | Nationwide Ins. Co. v. Ohio Dep't of Transp., 61 Ohio Misc. 2d 76 | 272+220 | A cause of action accrues when the claim or right on which it is founded has matured so that an action can be brought upon it. This is usually completed at the moment when the wrong done by the defendant produces the injury to the plaintiff.Minster Loan & Sav. Co. v. Laufersweiler (1940), 67 Ohio App. 375, 21 O.O. 326, 36 N.E.2d 895; Kerns v. Schoonmaker (1831), 4 Ohio 331; Squire v. Guardian Trust Co. (1947), 79 Ohio App. 371, 47 Ohio Law Abs. 203, 35 O.O. 144, 72 N.E.2d 137. Accordingly, plaintiff's cause of action fully accrued to it on December 4, 1987, which is the date upon which defendant's tree allegedly fell upon the automobile of plaintiff's insured. As previously mentioned, this date was well before the effective date of the amendment to R.C. 2743.10(A). | Ordinarily, there is no duty to control conduct of third person by preventing him or her from causing harm to another, absent special relationship between the actor and the third person which gives rise to duty to control, or between the actor and another which gives the other the right to protection; thus, liability in negligence will not lie absent special duty owed by particular defendant. | Does a cause of action accrue at the moment of a wrong? | 006478.docx | LEGALEASE-00126226-LEGALEASE-00126227 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21467 | Courtney v. Harris, 355 So. 2d 1039 | 217+3521 | Other circuits appear to have taken the position that, absent conventional subrogation, payment by the insurer to insured under the policy's medical payment coverage provision does not result in legal subrogation of the insurer to the rights of the insured. The rationale supporting this result seems to be that ". . . subrogation arises only in favor of one who pays the debt of another, and not in favor of one who pays the debt in performance of his own covenants." See: "Medical Insurer's Right of Subrogation," 73 A.L.R.3d 1140, 1148. We agree, being of the view that such medical payments are in response to a contractual obligation which arises from premium payments to the insurance company. | Automobile liability insurer of plaintiff in personal injury suit arising out of automobile accident was not entitled, in absence of any contractual right of subrogation, to be subrogated to plaintiff's recovery to extent necessary to reimburse it for medical expenses advanced plaintiff under its policy. LSA-C.C. arts. 2160, 2161, subd. 3, 2315. | In whose favor does subrogation arise? | Subrogation - Memo 973 - C - ES.docx | ROSS-003300557-ROSS-003300558 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21468 | Los Angeles Cty. v. Metro. Cas. Ins. Co. ofNew York, 135 Cal. App. 26 | 13+61 | Applied to a cause of action, the term to "accrue" means to arrive, to commence, to come into existence, to become a present enforceable demand. Eising v. Andrews, 66 Conn. 58, 33 A. 585, 50 Am. St. Rep. 75. "A cause of action accrues from the time the right to sue for the breach attaches." Walker v. Bowman, 27 Okl. 172, 111 P. 319, 320, 30 L. R. A. (N. S.) 642, Ann. Cas. 1912B, 839. A cause of action does not "accrue" until the party owning it is entitled to begin and prosecute an action thereon. It accrues at the moment when he has a legal right to sue on it, and no earlier. Jocque v. McRae, 142 Mich. 370, 105 N. W. 874. Many other cases might be cited to the same effect. Amy v. Dubuque, 98 U. S. 470, 25 L. Ed. 228; McGuigan v. Rolfe, 80 Ill. App. 256; Port Arthur Rice M. Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S. W. 926, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629; In re Hanlin's Estate, 133 Wis. 140, 113 N. W. 411, 17L. R. A. (N. S.) 1189, 126 Am. St. Rep. 938. | A cause of action does not "accrue" until the party owning it is entitled to begin and prosecute action thereon. | Does the word accrue means to become a present and enforceable demand? | Action - Memo # - C 319-T.I.docx | ROSS-003286445-ROSS-003286446 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 21469 | Brown v. Herbert, 43 F. Supp. 3d 1229 | 78+1424 | Defendant, therefore, has waived his various immunity defenses by not raising them in his Answer, as was his duty under Rule 8(c)(1) of the Federal Rules of Civil Procedure, or opposing or mentioning Plaintiffs' assertion of their Section 1983 claim in their Complaint, their Motion for Summary Judgment, and their Opposition to Defendant's Cross-Motion. The court must view this as a conscious decision on the part of Defendant, a decision that has consequences under the orderly administration ofjustice in the federal courts. "Failure to plead an affirmative defense results in a waiver of that defense." Bentley v. Cleveland Cnty. Bd. of Cnty. Comm'rs, 41 F.3d 600, 604 (10th Cir.1994). This is so well settled a principle under the Federal Rules of Civil Procedure that "the very possibility of waiver makes it important (and certainly prudent) to plead all appropriate affirmative defenses," specifically to avoid waiver. H.S. Field Servs. v. CEP Mid-Continent, LLC, No. 12-cv-531-JED-FHM, 2013 WL 5407862, at *1, 2013 U.S. Dist. LEXIS 137341, at *3-*4 (N.D.Okla. Sept. 25, 2013). | Defendant was adequately on notice that plaintiffs were seeking money damages in addition to injunctive and constitutional relief, such that defendant was required to raise affirmative defenses of prosecutorial immunity or qualified immunity to S 1983 claim in order to avoid waiving them, where plaintiffs unambiguously asserted specific injuries in complaint that entitled them to monetary damages, plaintiffs explicitly sought to recover all of their attorney fees, costs, and expenses incurred in the action pursuant to S 1988 "and any other relief that this Court may order," and, in their prayer for relief, they included their claim under S 1983 with the rest of their constitutional claims and followed their request pursuant to S 1988 with specific request that District Court "award such other relief as it may deem just and proper." 42 U.S.C.A. SS 1983, 1988; West's U.C.A. S 76-7-101. | Does the failure to plead an affirmative defense result in the waiver of that defense? | Pleading - Memo 196 - RMM.docx | ROSS-003290240-ROSS-003290241 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 21470 | Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. #у1, 16 F. Supp. 3d 294 | 149E+656 | Finally, Plaintiffs Ostrom and MacDonald each bring a claim for trespass. Under New Jersey law, "[t]respass constitutes the unauthorized entry (usually of tangible matter) onto the property of another." NJTA v. PPG Indus., Inc., 16 F.Supp.2d 460, 478 (D.N.J.1998) (citations omitted) (applying N.J. law). Thus, Plaintiffs must prove two elements: (1) an unauthorized entry (2) onto their property. Rowe, 262 F.R.D. at 463. As a claim for trespass centers on the right of property owners to exclude others from their domain, New Jersey law plainly requires proof of exclusive possession as an element of trespass. State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 488, 468 A.2d 150, 157 (N.J.1983); In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig., MDL No. 1358(SAS), 2014 WL 840955, at (S.D.N.Y. Mar. 3, 2014) (applying N.J. law). "[A] trespass on property, whether real or personal, is actionable, irrespective of any appreciable injury." Pinkowski v. Twp. of Montclair, 299 N.J.Super. 557, 571, 691 A.2d 837, 843"44 (N.J.App.Div.1997) (citation omitted). Here, both Plaintiffs' theory of liability seems to be that Defendant's sewage spills caused an unlawful entry into a waterway in their respective backyards. | Citizens alleged injury under Clean Water Act (CWA), as required for standing to bring claims against operator of wastewater treatment plant; citizens alleged that they used allegedly affected area and were persons for whom aesthetic and recreational values of area around river would be lessened as a result of permit violations, alleged that waters of the river had become murky and smelled of sewage, and presented additional evidence of sewage overflows negatively affecting recreational centers that they patronized. U.S.C.A. Const. Art. 3, S 1 et seq.; Federal Water Pollution Control Act, S 101(a), 33 U.S.C.A. S 1251(a). | "Can trespass on property, whether real or personal, be actionable, irrespective of any appreciable injury?" | 047283.docx | LEGALEASE-00126700-LEGALEASE-00126701 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21471 | Pinnock v. Int'l House of Pancakes Franchisee, 844 F. Supp. 574 | 148+2.2 | The Fifth Amendment provides that private property may not be taken for public use without just compensation. A cornerstone of the law of takings is that if a regulation has the effect of establishing a permanent physical occupation, it will be a taking. Nollan v. California Coastal Commission, 483 U.S. 825, 831, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987) (requiring the granting of an easement as a condition to rebuild a home is a taking). An invasion will constitute a taking even if the amount taken is insubstantial. Loretto v. Teleprompter Manhattan CATV, 458 U.S. 419, 430, 102 S.Ct. 3164, 3173, 73 L.Ed.2d 868 (1982). The Loretto Court noted that:[W]hen the "character of the governmental action" is a permanent physical occupation of the property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit, or has only minimal economic impact on the owner.Id. at 434"35, 102 S.Ct. at 3175. Therefore, when a law results in a permanent physical occupation of property, the government must compensate the landowner. | Expenditure of funds by restaurant owner necessary to make restrooms in its facility accessible to individuals in wheelchairs, if required under ADA, would not be a taking of private property for public use without just compensation in violation of the Fifth Amendment; requiring owner to comply with ADA would not be physical invasion of its property, ADA would not deny owner all economically beneficial or productive use of its land, and barrier removal requirements clearly forward stated objectives of ADA. Americans with Disabilities Act of 1990, S 2(b)(1, 2), 42 U.S.C.A. S 12101(b)(1, 2); U.S.C.A. Const.Amend. 5. | An invasion will constitute a taking even if the amount taken is insubstantial? | 017673.docx | LEGALEASE-00127122-LEGALEASE-00127123 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | WKNS Topic + Key Number | Judicial Opinion | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21472 | United States v. Sanford Ltd., 880 F. Supp. 2d 9 | 354+2 | In this, it is clear that the defendants are at least partially correct. Because the Court holds that the APPS does not apply extraterritorially, the law that would apply to the conduct of the San Nikunau on the high seas is that of New Zealand. To say that New Zealand law applied to conduct aboard the San Nikunau, however, is not necessarily to say that New Zealand law was the exclusive source of the San Nikunau's legal obligations. See Dix, 534 F.3d at 406 ("The law of the flag doctrine does not mandate that anything that occurs aboard a ship must be handled by the flag state."). This is because, as the Supreme Court noted nearly 90 years ago:The merchant ship of one country voluntarily entering the territorial limits of another subjects herself to the jurisdiction of the latter. The jurisdiction attaches in virtue of her presence, just as with other objects within those limits. During her stay she is entitled to the protection of the laws of that place and correlatively is bound to yield obedience to them.Cunard, 262 U.S. at 124, 43 S.Ct. 504. Hence, when a foreign-flagged merchant vessel chooses, out of commercial purpose, to call on United States ports, a quid pro quo takes place: The ship agrees to put its operations into conformity with United States law, and in exchange the United States allows it to call on the port and do business there. Indeed, if the ship does not comply, the United States may bar the ship from port, depriving it of access to the lucrative American market. See 33 U.S.C. " 1228; 33 C.F.R. " 151.07(b). The Supreme Court has long recognized this principle. See Patterson v. Eudora, 190 U.S. 169, 178, 23 S.Ct. 821, 47 L.Ed. 1002 (1903) ( "[T]he implied consent to permit [foreign merchant vessels] to enter our harbors may be withdrawn, and if this implied consent may be wholly withdrawn, it may be extended upon such terms and conditions as the government sees fit to impose."). | The law-of-the-flag doctrine did not bar United States from prosecuting owner of commercial fishing vessel, which was registered under the flag administration of New Zealand, and its employee for their failure to make entries in the oil record book (ORB) of the vessel, in violation of the Act to Prevent Pollution from Ships (APPS); crewmembers responsible for maintaining the ORB aboard vessels had a duty under the APPS to ensure that their ORBs were in compliance with United States law before they entered United States navigable waters. Act to Prevent Pollution from Ships, SS 3(e), 9(f), 33 U.S.C.A. SS 1902(e), 1908(f). | "Is a merchant ship of one country, voluntarily entering the territorial limits of another, subject to the latter's jurisdiction?" | 019863.docx | LEGALEASE-00126975-LEGALEASE-00126976 | Confirmed, SA, Sub | 0.68 | 0 | 1 | | 1 | 1 |
| 21473 | Khaldei v. Kaspiev, 135 F. Supp. 3d 70 | 167+15 | As noted by other decisions from this district, New York courts "continue to apply two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine." The first-and more stringent-standard is satisfied where "the misconduct and unfaithfulness 'substantially violates the contract of service' such that it 'permeate the employee's] service in its most material and substantial part.' By comparison, the second standard requires that the agent's misconduct "rise to the level of a breach of a duty of loyalty or good faith." In other words, it is sufficient that the employee "acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment." An agent who is found to be faithless in the performance of his fiduciary duties is generally liable for all compensation from the date of the breach. See Carco Grp., 383 Fed. Appx. at 76. | Under New York law, agent for World War II photographer and photographer's heir, who received photographic prints from photographer and heir for purpose of selling them, was liable to heir for any prints that were missing or were believed to have been disposed of by seller through undocumented transactions. N.Y.McKinney's Arts and Cultural Affairs Law S 12.01(1). | Is an agent who is found to be faithless in the performance of his fiduciary duties liable for all compensation from the date of the breach? | Principal Agent Memo 52 - RM.docx | ROSS-003303774-ROSS-003303776 | Confirmed, SA, Sub | 0.64 | 0 | 1 | | 1 | 1 |
| 21474 | In re Hyang Ran Hwang, 452 B.R. 187 | 366+14.2 | The burden of proof is on the one claiming equitable subrogation. Id. | While judgment lien holder would not be considered a "good faith purchaser" itself, against which equitable subrogation could not be imposed under Texas law, Chapter 7 trustee, in his strong-arm capacity, would stand in shoes of good faith purchaser. 11 U.S.C.A. S 544(a)(3). | Is the burden of proof on the one claiming equitable subrogation? | 044257.docx | LEGALEASE-00127083-LEGALEASE-00127084 | Condensed, SA, Sub | 0.75 | 0 | 1 | | 1 | 1 |
| 21475 | Bolding v. Camp, 296 S.W. 1116 | 260+99(1) | The rule is well stated in a federal case [Bigelow v. Elliot, Fed. Cas. No. 1399, 1 Cliff. 28], which holds that persons who jointly participate in the profits of trade or business ostensibly carried on by another for his sole use and benefit, are equally liable, when discovered, with the ostensible owner to all creditors of the firm, whose debts were contracted during the time of such participation without knowledge of the same, or of the actual relation between the parties at the time the credit was given and that liability exists notwithstanding the parties may have privately stipulated that they shall not be partners and in contemplation of law really are not such as between themselves. A study of the various cases upon the question will show the above statement to be in accord with a great majority of these cases. The term "secret partner " is sometimes used as synonymous with dormant partner, and sometimes in a slightly different and broader sense. In the Am. & Eng. Enc. of Law, the following definition of dormant partner is given: "A dormant partner is one who takes no active part in the business, and whose name does not appear in the title of the partnership, and who is unknown to those who give credit to the firm." The same work designates a secret partner as "one who participates in the business but keeps his relations with the firm a secret," thus making participation or nonparticipation in the business the distinction between the two, while later in the discussion of the cases, the distinction is practically obliterated, several cases being cited to the effect that a dormant partner may act as clerk, or agent." 1 Rowley's Modern Law of Partnership, " 139; 20 R. C. L. p. 1072, " 318, page 1057, " 302. | One purchasing interest in mining lease being developed by parties holding no stock in corporation or association held "dormant partner." | Are the terms dormant and secret partners used synonymously? | 021980.docx | LEGALEASE-00128904-LEGALEASE-00128906 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | 1 |
| 21476 | Gort v. Gort, 185 So. 3d 607 | 89+414 | While the rules are silent on whether a petition can be voluntarily dismissed prior to an adjudicatory hearing, common sense dictates that a petitioner has that ability. Kelbe v. Bersche, 161 So.3d 574 (Fla. 5th DCA 2014), is helpful. There, in ruling on a petition for a writ of prohibition, the Fifth District implicitly recognized the voluntary dismissal of a petition to determine incapacity prior to an adjudicatory hearing. Id. at 575"76."A party may voluntarily dismiss any claim, and such a dismissal, if accepted by the trial court, deprives the court of jurisdiction over the subject matter of the claim dismissed." Cutler v. Cutler, 84 So.3d 1172 (Fla. 3d DCA 2012). The plaintiff's right to voluntarily dismiss its own lawsuit is almost absolute, with exceptions for fraud on the court and child custody. Tobkin v. State, 777 So.2d 1160, 1162 (Fla. 4th DCA 2001). | The lack of a termination date in settlement agreement, which required older brother to voluntarily dismiss a petition to determine younger brother's incapacity, and required younger brother and cousin to provide older brother with notice of the younger brother's medical events, copies of his financial statements, and the deed to his house, did not render the agreement unenforceable; the facts giving rise to the petition to determine incapacity provided the reasonable interpretation that the settlement agreement was to terminate upon the younger brother's death. | "Is the plaintiff's right to voluntarily dismiss its own lawsuit almost absolute, with exceptions for fraud on the court and child custody?" | 026042.docx | LEGALEASE-00129459-LEGALEASE-00129460 | Condensed, SA, Sub | 0.35 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21477 | Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 | 25T+146 | Similarly, "related to" marks a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond. As the Supreme Court has explained in the ERISA pre-emption context, "related to" is limiting language and "[i]f "relate to" were taken to extend to the furthest stretch of its indeterminacy," it would have no limiting purpose because "really, universally, relations stop nowhere." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (quotation marks omitted). The same rationale applies here. | All of cruise ship employee's claims against her employer, arising from her alleged drugging and rape by fellow crewmembers and employer's alleged destruction of evidence and refusal to provide her with proper medical treatment, were not subject to arbitration simply because employee was a "seaman"; plain language of arbitration provision contained in parties' contract imposed limitation that, to be arbitrable, parties' dispute had to relate to, arise from, or be connected with employee's crew agreement or the employment services that she performed for the cruise line, and so though the arbitration provision was broad, it was not limitless. 9 U.S.C.A. S 1 et seq.; 9 U.S.C.A. SS 201-208. | What does the term related to as used in a contract provision mean? | 007405.docx | LEGALEASE-00131366-LEGALEASE-00131367 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 21478 | McLaughlin v. Bailey, 240 N.C. App. 159 | 231H+759 | The reasoning of Jenkins and Bland was adopted by this Court in Carter v. Marion, 183 N.C.App. 449, 645 S.E.2d 129 (2007), review denied, appeal dismissed, 362 N.C. 175, 658 S.E.2d 271 (2008). The plaintiffs in Carter were former deputy clerks of court who claimed that they had been terminated from their employment for political reasons, in violation of their rights to free speech under the North Carolina Constitution. On appeal, we discussed the holdings of the United States Supreme Court in Elrod, and in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), which held that public employees could be discharged "for not being supporters of the political party in power" if "party affiliation is an appropriate requirement for the position involved." Carter, 183 N.C.App. at 453, 645 S.E.2d at 131. The Carter opinion also discussed the holding of Jenkins that "deputies actually sworn to engage in law enforcement activities on behalf of the sheriff" could be lawfully terminated for political reasons, and noted that Jenkins based its holding on the facts that [D]eputy sheriffs (1) implement the sheriff's policies; (2) are likely part of the sheriff's core group of advisors; (3) exercise significant discretion; (4) foster public confidence in law enforcement; (5) are expected to provide the sheriff with truthful and accurate information; and (6) are general agents of the sheriff, and the sheriff is civilly liable for the acts of his deputy Carter at 454, 645 S.E.2d at 131 (citing Jenkins at 1162"63). Utilizing the analysis of Jenkins and Knight, Carter held that "political affiliation is an appropriate requirement for deputy clerks of superior court." Id. In sum Government employees generally are protected from termination because of their political viewpoints. But this Court and various federal appeals courts repeatedly have held that deputy sheriffs and deputy clerks of court may be fired for political reasons such as supporting their elected boss's opponents during an | While there may be a right to terminate an employment contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. | Can deputy clerks be fired for political reasons? | Clerks of court - Memo 121 - RK.docx | LEGALEASE-00020328-LEGALEASE-00020330 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21479 | In re Enlarging, Extending & Defining Corp. Limits & Boundaries of City of Biloxi, 109 So. 3d 529 | 268+29(3) | Trial courts have a right to expect compliance with their scheduling orders, "and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril." Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1042 (Miss.2003). "[L]itigants must understand that there is an obligation to timely comply with the orders of our trial courts.. "At some point the train must leave." " Id. at 1043 (quoting Guaranty Nat'l Ins. Co. v. Pittman, 501 So.2d 377 (Miss.1987)). Biloxi failed to raise a lack of proof of notice at the trial court and pursuant to the scheduling order, despite years of opportunities to do so. Only after the final result did not comport with Biloxi's desired outcome did it raise the notice issue. Clearly, allowing such a strategy could create perverse incentives and a massive waste of judicial resources. Because Biloxi failed to raise this issue with the trial court during years of extensive participation in the case, it waived this argument. See Jones, 592 So.2d at 970. Notice under the annexation statutes is a matter of personal, not subject matter, jurisdiction, thus the failure to prove notice does not automatically mandate dismissal for want of jurisdiction, particularly under the facts of this case, where notice was properly provided. In so holding, we do not diminish the import of a municipality providing proper proof of notice in the chancery court. We merely hold, under the specific facts of this particular case, that the failure to do so does not automatically deprive the chancery court, or this Court, of jurisdiction. | All twelve factors pertinent to the reasonableness of a proposed annexation must be considered by the trial court, but no one factor is dispositive. | Do trial courts have a right to expect compliance with their scheduling orders? | 026448.docx | LEGALEASE-00130457-LEGALEASE-00130458 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | 1 |
| 21480 | Trimble v. Coleman Co., 200 Kan. 350 | 157+553(4) | "The pretrial conference provided for by K.S.A. 60-216 has become an important part of our procedural process designed, among other things, to acquaint each party in advance of trial with the respective factual contentions of the parties upon matters in dispute, thus reducing the opportunity for maneuver and surprise at the trial, and enabling all parties to prepare in advance for trial. At pretrial conference the court may make any determination that will aid in the fair, orderly and efficient disposition of the action. (p. 519, p. 915 of 419 P.2d) | Pretrial deposition of expert on properties of natural gases was properly excluded at trial of action for deaths from carbon monoxide poisoning because expert's answers were to hypothetical questions asked in the alternative so that the answers would not aid jury in interpreting technical facts or assist in understanding material evidence and hypothesis upon which each question was presented was not sufficiently founded on facts in evidence. | What is the essential purpose of a pretrial conference procedure? | 026747.docx | LEGALEASE-00130262-LEGALEASE-00130263 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 21481 | Daniels v. USAgencies Cas. Ins. Co., 92 So. 3d 1049 | 307A+19 | It is not an abuse of the district court's wide discretion in discovery matters to entertain a motion for summary judgment before discovery has been completed. It is within the trial court's discretion to render a summary judgment or require further discovery. Thomas v. Willis Knighton Medical Center, 43,176 (La.App.2d Cir.4/30/08), 981 So.2d 807, 814, writ denied, 2008"1183 (La.9/19/08), 992 So.2d 932. While parties must have a fair opportunity to conduct discovery and present their claims, there is no absolute right to delay action on a motion for summary judgment until discovery is complete. Welch v. East Baton Rouge Parish Metropolitan Council, 2010"1532 (La.App. 1st Cir.3/25/11), 64 So.3d 249, 254; Green v. State Farm General Ins. Co., 35,775 (La.App.2d Cir.4/23/02), 835 So.2d 2, 6. A suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of material fact, and the plaintiff does not show a probable injustice in proceeding with the suit. Welch, 64 So.3d at 254. | Trial courts have broad discretion when regulating pretrial discovery, which discretion will not be disturbed on appeal absent a clear showing of abuse. | "Should a suit be delayed pending discovery when it appears at an early stage that there is no genuine issue of material fact, and the plaintiff does not show a probable injustice in proceeding with the suit?" | 026914.docx | LEGALEASE-00130645-LEGALEASE-00130646 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21482 | Miller v. Lankow, 801 N.W.2d 120 | 307Ak434 | We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990) (quoting County of Solano v. Delancy, 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." Patton, 538 N.W.2d at 119. The duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. [ ]See id. at Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. See id. at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. Id. at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. Id. | Party in custody of evidence that may be relevant to potential legal claim is not required to provide potentially responsible parties actual notice of nature and timing of any action that could lead to destruction of evidence. | Does the duty to preserve evidence exist whenever a party knows or should know that litigation is reasonably foreseeable? | Pretrial Procedure - Memo # 2154 - C - PC.docx | ROSS-003287398-ROSS-003287399 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | |
| 21483 | 100 Harborview Drive Condo. Council of Unit Owners v. Clark, 224 Md. App. 13 | 307Ak45 | In Maddox v. Stone, this Court, in reviewing the above language, concluded [A]lthough scheduling orders should not be applied in a manner that is "unyieldingly rigid," litigants must make good faith and reasonable efforts to substantially comply with the court's deadlines[.] 174 Md.App. at 499, 921 A.2d 912 (citing Naughton v. Bankier, 114 Md.App. 641, 653, 691 A.2d 712 (1997)). We have deemed substantial compliance with a scheduling order to be sufficient where the opposing party has not suffered prejudice. See, e.g., Wormwood v. Batching Sys., Inc., 124 Md.App. 695, 702"05, 723 A.2d 568 (1999). Still, the overriding tenet persists that, "[t]he decision to admit or exclude "expert" testimony is within the broad discretion of the trial court and that decision will be sustained on appeal unless it is shown to be manifestly erroneous." Kleban v. Eghran"Sabet, 174 Md.App. 60, 61, 920 A.2d 606 (2007) (quoting Wood v. Toyota Motor Corp., 134 Md.App. 512, 520 n. 8, 760 A.2d 315 (2000)) (internal quotation marks omitted). | Condominium council sued by unit owner for violations of his right to disclosure of records under Maryland Condominium Act (MCA) was not entitled to present testimony of accounting expert on legal issue of whether detailed billing reports of legal counsel were part of the financial books and records that a condominium association is required to keep, as expert was not timely disclosed pursuant to scheduling order. West's Ann.Md.Code, Real Property, § 11-116. | Is substantial compliance with a scheduling order sufficient where the opposing party has not suffered prejudice? | Pretrial Procedure - Memo # 1501 - C - NC.docx | ROSS-003300561-ROSS-003300562 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 21484 | Corr v. Metro. Washington Airports Auth., 740 F.3d 295 | 391v38 | Under Virginia law "[a] tax is an enforced contribution imposed by the government for governmental purposes or public needs. It is not founded upon contract or agreement." Westbrook, Inc., v. Town of Falls Church, 185 Va. 577, 39 S.E.2d 277, 280 (1946). Virginia courts ask whether a given exaction is "a bona fide fee-for-service or an invalid revenue-generating device." Eagle Harbor, L.L.C. v. Isle of Wight Cnty., 271 Va. 603, 628 S.E.2d 298, 304 (2006) (internal quotation marks omitted). "[T]olls are user fees [and not taxes] when they are "nothing more than an authorized charge for the use of a special facility." " Elizabeth River Crossings OpCo, LLC v. Meeks, 286 Va. 286, 749 S.E.2d 176, 183 (2013) (quoting Hampton Roads Sanitation Dist. Comm. v. Smith, 193 Va. 371, 68 S.E.2d 497, 501 (1952)). | Tolls imposed for passage on certain road were user fees and not taxes prohibited by Virginia constitution for being imposed by airport authority, rather than by Virginia legislature, for expansion of rail system; motorists paid tolls in exchange for particularized benefit of expanding rail system and for use of that road, motorists voluntarily chose to use toll road, motorist who objected to toll could take another route, and tolls were collected solely to fund the rail project. West's V.C.A. Const. Art. 1, § 6. | Is tax an enforced contribution which is not founded upon contract or agreement under a state law? | | 044686.docx | LEGALEASE-00131672-LEGALEASE-00131673 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | |
| 21485 | Rogers v. M.O. Bitner Co., 738 P.2d 1029 | 226H+3 | Considering Westcor's express authority to sell Park City lots and the district court's finding that Westcor had financial responsibility for installing improvements, it was not clear error to find that the assignment of contracts to third parties for the purpose of financing the subdivision improvements qualified as conduct in the ordinary course of the venture's business. Although Monson and Badger clearly had their own agenda as to how they could profit from the Bitner Company-Westcor venture without expending any out-of-pocket sums, the district court could have concluded that the relationship between Monson and Badger did not limit or interfere with the joint venture between the Bitner Company and Westcor and that their relationship was in the nature of a subpartnership.A subpartnership is a so-called partnership formed between a member of a partnership and a third person for a division of the profits coming to him from the partnership enterprise, by an agreement of such a character as to disclose the essentials necessary to a partnership between the partner and the third person... The subpartners are partners inter se, but a subpartner does not become a member of the partnership since there is no agreement between him and the other partners.... Consequently, a subpartner is not liable for the debts of the partnership. However, the subpartner may be held liable for debts which may be regarded as debts of the subpartnership. 59 Am. Jur. 2d Partnership " 16, at 941"42 (1971). In light of the district court's finding that the loan from Bennett was used to pay for improvements in the Park City subdivision, one of Westcor's express obligations under its joint venture agreement with Bitner Company, the burden to repay the debt justifiably may be placed on the joint venturers | Joint venturers stand in same relationship to each other as partners, and thus principles governing liability of one partner for fraudulent assignment of partnership assets for benefit of partnership apply. U.C.A.1953, 48-1-10. | Does a subpartner become a member of the partnership if there is no agreement between him and the other partners? | | 022066.docx | LEGALEASE-00133461-LEGALEASE-00133462 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21486 | Rogers v. M.O. Bitner Co., 738 P.2d 1029 | 226H+80 | Considering Westcor's express authority to sell Park City lots and the district court's finding that Westcor had financial responsibility for installing improvements, it was not clear error to find that the assignment of contracts to third parties for the purpose of financing the subdivision improvements qualified as conduct in the ordinary course of the venture's business. Although Monson and Badger clearly had their own agenda as to how they could profit from the Bitner Company-Westcor venture without expending any out-of-pocket sums, the district court could have concluded that the relationship between Monson and Badger did not limit or interfere with the joint venture between Bitner Company and Westcor and that their relationship was in the nature of a subpartnership.A subpartnership is a so-called partnership formed between a member of a partnership and a third person for a division of the profits coming to him from the partnership enterprise, by an agreement of such a character as to disclose the essentials necessary to a partnership between the partner and the third person.... The subpartners are partners inter se, but a subpartner does not become a member of the partnership since there is no agreement between him and the other partners....Consequently, a subpartner is not liable for the debts of the partnership. However, the subpartner may be held liable for debts which may be regarded as debts of the subpartnership. 59 Am. Jur. 2d Partnership " 16, at 941"42 (1971). In light of the district court's finding that the loan from Bennett was used to pay for improvements in the Park City subdivision, one of Westcor's express obligations under its joint venture agreement with Bitner Company, the burden to repay the debt justifiably may be placed on the joint ventures. | Evidence supported finding that subdivision vendor and purchaser/developer of subdivision lots were engaged in joint venture such that vendor could be held liable for damages incurred by purchasers of two subdivision lots when developer failed to make improvements as promised; agreement between vendor and purchaser/developer provided that selling price was calculated on basis of anticipated profits from sale of developed lots rather than value of raw land, and, nine days after vendor "sold" subdivision, vendor signed escrow agreement with county guaranteeing completion of improvements. | Is a subpartner liable for to the debts due to the creditors of the firm? | 022068.docx | LEGALEASE-00133463-LEGALEASE-00133465 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | |
| 21487 | Cunningham v. Aluminum Co. of Am., 417 N.E.2d 1186 | 413+2124 | The purpose and history behind workmen's compensation schemes are well chronicled, and we need not perform an extensive review here. For our present purpose, it suffices to say that the legislation developed in response to the recognition that the common law provided the injured worker a highly unsatisfactory remedy, since his claim was vulnerable to the formidable defenses of contributory negligence, assumption of risk, and the fellow servant rule. The Act is basically a mechanism which provides the injured worker a guaranteed, speedy remedy, and the costs of industrial injuries, initially borne by the employer through insurance, are eventually absorbed by the consumer. It goes without saying that such legislation must of necessity distinguish between employers and employees. | Employee and employer were not "similarly circumstanced" under Workmen's Compensation Act and thus employee's constitutional challenge to Act for failure to contain provision prohibiting employer who has engaged in intentional misconduct from invoking benefits of Act while providing that proof of such misconduct bars an injured employee's claim for compensation did not state cognizable equal protection claim. IC 22-1-1-10, 22-3-2-1 et seq., 22-3-2-6, 22-3-3-8 (1976 Ed.); Const. Art. 1, S 23; U.S.C.A.Const. Amend. 14, S 1. | Is the purpose and history behind workmen's compensation schemes well chronicled? | Workers Compensation - Memo #141 ANC.docx | ROSS-003288576-ROSS-003288577 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 21488 | United States v. Fattah, 223 F. Supp. 3d 336 | 63+3(1) | Section 1346 provides that "a scheme or artifice to defraud," as used in " 1343, the wire fraud statute, "includes a scheme or artifice to deprive another of the intangible right of honest services." See 18 U.S.C. " 1346. The Supreme Court held in Skilling v. United States, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010), that "" 1346 covers only bribery and kickback schemes." Id. at 367, 130 S.Ct. 2896. Under the bribery statute, 18 U.S.C. " 201, it is unlawful for a public official to accept anything of value in return for being influenced in the performance of an official act. A promise to perform an official act is sufficient to constitute a bribery offense if done in exchange for a thing of value, whether or not the official act ever occurs. See McDonnell v. United States, """ U.S. """", 136 S.Ct. 2355, 2371, 195 L.Ed.2d 639 (2016). The Supreme Court in McDonnell reiterated: "Under this Court's precedents, a public official is not required to actually make a decision or take an action on a "question, matter, cause, suit, proceeding or controversy"; it is enough that the official agreed to do so." Id. An act to be official "must involve a formal exercise of governmental power" and be something specific and focused. See id. at 2372; United States v. Birdsall, 233 U.S. 223, 234, 34 S.Ct. 512, 58 L.Ed. 930 (1914). | Under the bribery statute, it is unlawful for a public official to accept anything of value in return for being influenced in the performance of an official act; a promise to perform an official act is sufficient to constitute a bribery offense if done in exchange for a thing of value, whether or not the official act ever occurs. 18 U.S.C.A. S 201. | What are the keys for determining whether a public official entered into an agreement to accept a bribe? | Bribery - Memo #171 - C - JL.docx | LEGALEASE-00023893-LEGALEASE-00023894 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 21489 | Frisbie v. United States, 157 U.S. 160 | 92+1121(1) | The pension granted by the government is a matter of bounty. "No pensioner has a vested legal right to his pension. Pensions are the bounties of the government, which congress has the right to give, withhold, distribute, or recall at its discretion. Walton v. Cotton, 19 How. 355." U. S. v. Teller, 107 U. S. 64, 68, 2 Sup. Ct. 39. | Act June 27, 1890 (26 Stat. 182), S 4 (38 U.S.C.A. S 324), making it misdemeanor for an attorney to receive more than $10 for prosecuting a claim for a pension, is not unconstitutional as an interference with the liberty of contract, as a pension is a bounty, over which congress has full control. | Is pension a vested right? | Pension - Memo 2 - MS.docx | ROSS-003291635-ROSS-003291636 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 21490 | Superadio Ltd. Pship v. Winstar Radio Prods., 446 Mass. 330 | 25T+314 | The Legislature may, by express statutory grant, confer the power of contempt on others. See Lawson v. Rowley, 185 Mass. 171, 172"173, 69 N.E. 1082 (1904) (statute expressly gave to justices of peace power to punish contempt by fine, but absent further express grant to punish in any other way, power limited to punishment by fine). See also Certain Underwriters at Lloyds London v. Argonaut Ins. Co., 264 F.Supp.2d 926, 943"945 (N.D.Cal.2003). The Legislature did not expressly grant to arbitrators the power to punish contempt, and absent such a grant, it should not be inferred. See Lawson v. Rowley, supra. | Arbitration may not award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provisions or otherwise transcends the limits of the contract of which the agreement to arbitrate is but a part. | "Do justices of the peace have power to punish, by fine or imprisonment, disorderly conduct interrupting judicial proceedings before them?" | Pretrial Procedure - Memo # 3017 - C - NE.docx | LEGALEASE-00024293-LEGALEASE-00024294 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21491 | Kilburn v. Fort Bend Cty. Drainage Dist., 411 S.W.3d 33 | 104+144 | The fundamental difference between negligence and an intentional tort is the specific intent to inflict injury. See Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406 (Tex.1985); Cabazos, 177 S.W.3d at 113. The gist of a claim for trespass to realty is the injury to the right of possession. Coastal Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1, 9 (Tex.2008) (citing Pentagon Enters. v. Sw. Bell Tel. Co., 540 S.W.2d 477, 478 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.)). It is an intentional tort in the sense that "it involves the intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know the act he intends to commit is such a violation." Warwick Towers Council of Co'Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P., 298 S.W.3d 436, 447 (Tex.App.-Houston [14th Dist.] 2009, no pet.). | Allegations in property owners' complaint, that county employees, during course of performing excavation work on creek running through their land, were bound by duty to exercise reasonable care, breached that duty by failing to plan or perform the work with reasonable care, and as proximate result of the breach, owners suffered property damages arising out of use by county and its employees of motor-driven equipment, stated a claim of negligence, not trespass, for purposes of sovereign immunity under Texas Tort Claims Act; fact that employees intentionally entered the property and undertook excavation work did not, standing alone, transform owners' negligence claim into a trespass claim, as dispositive inquiry was whether employees intended specific damages they caused. V.T.C.A., Civil Practice & Remedies Code § 101.021. | What is the gist of a claim for trespass to realty? | 047395.docx | LEGALEASE-00134793-LEGALEASE-00134794 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 21492 | United States v. O'Donnell, 510 F.2d 1190 | 110+113 | For example, the Swann court's reliance on cases determining that venue under the Public Corruption Act, 18 U.S.C. Sec. 201, is in the district where the bribe is passed or the attempt to bribe is made is, in our view, inapposite. An analysis of the bribery statute makes it clear that the essence of the offense is not the effect which the bribe may have or may be intended to have upon the conduct of the public official, but rather the actual giving or transfer of money or other thing of value, or the offer to transfer money or other thing of value, absent which no offense is committed under the statute. In view of the focus of the statute upon these physical aspects, it is not unreasonable to conclude that venue must be laid in the district in which the events occurred. On the other hand, under Sec. 1503, any corrupt attempt, regardless of the means employed, whether by the offer of money or otherwise, to impede or obstruct the due administration of justice is made a punishable offense. It cannot be said that the focus of the statute is exclusively upon any possible means which may be employed. Rather, it is upon the intended effect of any corrupt conduct of whatever description upon the administration of justice by the courts. Under Sec. 1503, the effect of corrupt conduct is always intended to occur only at one place; viz., the place or district in which the court sits or in which the proceeding is pending. In contrast, under the bribery statute, the intent to influence the conduct of a public official in no way depends upon where the public official may be at the time. The place of the intended result is irrelevant and the statute does not focus upon it. | Where statute under which defendant was charged did not prescribe venue for offense, it was necessary to determine from other sources the place where the statutory offense must be deemed to have been committed. 18 U.S.C.A. § 1503; Fed.Rules Crim.Proc. rules 21, 21(b), 18 U.S.C.A.; U.S.C.A.Const. art. 3, § 2, cl. 3; Amend. 6. | "Under the bribery statute, is the essence of the offense the transfer of money?" | 011547.docx | LEGALEASE-00135382-LEGALEASE-00135383 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21493 | United States v. Holzer, 840 F.2d 1343 | 306+35(10) | But all this means is that if Holzer accepted bribes from Worsek, he was guilty of extortion as well; it does not necessarily follow that if he extorted money from Worsek, he must have accepted a bribe from him. At least formally, bribery contains an element that extortion does not: that money was offered with the intention of influencing the recipient. See Perkins & Boyce, Criminal Law 533 (3d ed. 1982). This element was stated explicitly in the jury instructions on bribery. It could be argued, however, that every person who knuckles under to an extortionate demand does so intending to influence the extortionist not to carry out his threat, and that this should be enough to prove bribery. Yet there is some authority that one can be a victim of extortion but not a briber, United States v. Shober, 489 F.Supp. 393, 403 (E.D.Pa.1979); Hornstein v. Paramount Pictures, Inc., 22 Misc.2d 996, 37 N.Y.S.2d 404, 412'13 (Cty.Ct.1942), aff'd, 292 N.Y. 468, 55 N.E.2d 740 (1944), and that would surely be right in a case where the victim had paid the extortionist at the point of a gun, though the present case is far removed from this, and perhaps in every case of extortion under color of right the extortionist is also a bribe-taker. | Former Illinois judge's mail fraud convictions under intangible rights doctrine could not stand after McNally v. U.S., and judge also could not be convicted of that crime based on breach of fiduciary duty in connection with his extraction of "loans" from lawyers with cases before him or from persons who sought appointment as receivers; constructive trust was imposed not because judge intercepted money intended for state or failed to account for money received on state's account, but in order to deter bribery by depriving bribed official of benefit thereof. 18 U.S.C.A. § 1341. | Is it possible for one to be a victim of extortion but not a briber or wrongdoer? | Bribery - Memo #401 - C-EB.docx | ROSS-003290107-ROSS-003290108 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21494 | Jaffe In re Mahoney Hawkes, LLP, 289 B.R. 285 | 51+3555 | There is little case law in Massachusetts on the liability of individual partners in a limited liability partnership.10 Dow v. Donovan, 150 F.Supp.2d 249, 255 (D.Mass.2001), involved a discrimination claim of a former law firm associate for termination after having been denied elevation to the partnership. Judge Keeton explained that he had before him a case of first impression for Massachusetts on the issue of individual partner liability in a limited liability partnership. He described the individual partners' liability as follows:The Limited Liability Partnership was set up to allow limited liability partners to protect non-partnership assets against liability for the wrongs of the partnership under certain conditions in a Limited Liability Partnership, limited liability partners cannot be vicariously liable for the wrongs of the partnership. The liability of each depends on proof of some wrongful act or omission by that individual partner. This statute does not mean that partners in a Limited Liability Partnership can never be liable in a discrimination suit. It means that the plaintiff must demonstrate that the individual partner was negligent or committed some other kind of wrongful act, error, or omission that produced discrimination against the plaintiff. Id. at 267'68 | Proposed Chapter 11 plan did not properly provide for release of, and issuance of permanent injunction to protect, liability insurer that, in making substantial monetary contributions to plan, was only fulfilling its contractual obligation to debtor-insured; to extent that insurer had paid limits of policy, suit against insurer was not suit against debtor and would not deplete assets of estate. | Is a limited liability partner vicariously liable for the torts of the partnership? | 022259.docx | LEGALEASE-00136281-LEGALEASE-00136282 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21495 | In re Enlarging, Extending & Defining Corp. Limits & Boundaries of City of Biloxi, 109 So. 3d 529 | 268+29(3) | Trial courts have a right to expect compliance with their scheduling orders, "and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril." Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1042 (Miss.2003). "[L]itigants must understand that there is an obligation to timely comply with the orders of our trial courts.... "At some point the train must leave." " Id. at 1043 (quoting Guaranty Nat'l Ins. Co. v. Pittman, 501 So.2d 377 (Miss.1987)). Biloxi failed to raise a lack of proof of notice at the trial court and pursuant to the scheduling order, despite years of opportunities to do so. Only after the final result did not comport with Biloxi's desired outcome did it raise the notice issue. Clearly, allowing such a strategy could create perverse incentives and a massive waste of judicial resources. Because Biloxi failed to raise this issue with the trial court during years of extensive participation in the case, it waived this argument. See Jones, 592 So.2d at 970. Notice under the annexation statutes is a matter of personal, not subject matter, jurisdiction, thus the failure to prove notice does not automatically mandate dismissal for want of jurisdiction, particularly under the facts of this case, where notice was properly provided. In so holding, we do not diminish the import of a municipality providing proper proof of notice in the chancery court. We merely hold, under the specific facts of this particular case, that the failure to do so does not automatically deprive the chancery court, or this Court, of jurisdiction. | A court may consider seven subfactors in determining whether a municipality has the financial ability to provide municipal services to the proposed annexation area (PAA): (1) the municipality's present financial condition, (2) sales tax revenue history, (3) recent equipment purchases, (4) the financial plan and department reports proposed for implementing and fiscally carrying out the annexation, (5) fund balances, (6) bonding capacity, and (7) expected amount of revenue from taxes in the proposed annexation area. | Do courts have a right to expect compliance with their scheduling orders? | Pretrial Procedure - Memo 4 4556 - C - VA.docx | ROSS-003291156-ROSS-003291157 | Condensed, SA, Sub | 0.68 | 0 | 1 | | 1 | |
| 21496 | Fry v. Blauvelt, 818 N.W.2d 123 | 30+4270 | The cooperation of parties during pretrial stages of litigation is essential. Judge McIlhvaine observed fifty years ago that "[w]ithout the active cooperation of the trial attorneys, and their diligent preparation of the cases for pretrial, the whole purpose of pretrial will fail." John W. McIlvaine, A District Judge's Views as to the Means of Insuring Compliance by Counsel with the Pretrial Procedures, 29 F.R.D. 191, 408 (1961). The failure of a party to meet pretrial deadlines not only undermines the goals of the schedule, but also prejudices the other party, who is subject to the deadlines as well. See Perry v. Sera, 623 A.2d 1210, 1220 (D.C.1993); see also Barrow v. Abramowicz, 931 A.2d 424, 431 (Del.2007) (stating "the pretrial order is tantamount to a contract between the parties for conducting pretrial preparation"). A party's failure to comply with pretrial procedure divests the trial court's control over the administration of justice in the case and places it in the hands of recalcitrant or otherwise dilatory counsel. See Link v. Wabash R.R., 291 F.2d 542, 547 (7th Cir. 1961). | Home remodeling company was not entitled to a new trial after the trial court failed to enforce pretrial order regarding disclosure of exhibits against home owner, who disclosed new exhibits a day before trial, in breach of contract case; company was not prejudiced by owner's failure to include the exhibits in her original exhibit list, and the testimony concerning the new exhibits consisted of five pages of a trial transcript that exceeded 580 pages. I.C.A. Rule 1.1004(3). | Does the failure of a party to meet pretrial deadlines undermine the goals of the schedule? | Pretrial Procedure - Memo 4 4801 - C - AC.docx | ROSS-003301293-ROSS-003301295 | Condensed, SA, Sub | 0.57 | 0 | 1 | | 1 | 1 |
| 21497 | Snodgrass v. State, 67 Tex. Crim. 451 | 67+24 | The first complaint is that the court erred in not quashing the indictment, because it did not allege whether the burglary was committed in the daytime or nighttime. It has been held by this court that it would be the better practice to so allege, though such an allegation is not essential to its validity or sufficiency. Conoly v. State, 2 Tex. App. 412; Summers v. State, 9 Tex. App. 396; Gonzales v. State, 12 Tex. App. 657; Carr v. State, 19 Tex. App. 636, 53 Am. Rep. 395. And, where a private residence is burglariously entered in the daytime, the punishment is the same as for any other ordinary burglary. Holland v. State, 45 Tex. Cr. R. 172, 74 S. W. 763; Williams v. State, 42 Tex. Cr. R. 606, 61 S. W. 395, 62 S. W. 1057. It is only the burglary of a private residence in the nighttime that is made a separate and distinct offense. In this case the entry, if made, was made in the daytime as shown by all the evidence. | An indictment simply charging burglary, without stating whether committed by day or night, is sufficient for daytime burglary. | What is the punishment for daytime burglary? | 012607.docx | LEGALEASE-00137617-LEGALEASE-00137618 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21498 | Thompson v. State, 252 Ark. 1 | 67+9(0.5) | While we are not convinced by appellant's argument that there was no breaking, a discussion of that contention is unnecessary since there was substantial evidence that there was an entry, and we have held that both a breaking and entry need not be shown to convict of burglary; either is sufficient to constitute the crime. As early as 1903, this court held that it was not necessary to prove both a breaking and entering to make out a case of burglary. See Minter v. State, 71 Ark. 178, 71 S.W. 944; also Ingle and Michael v. State, 211 Ark. 39, 198 S.W.2d 996. Of course, this is in accord with our statute, Ark.Stat.Ann. s 41°1001 (Repl.1964) which defines burglary as follows:Burglary is the unlawful breaking orentering a house, tenement, railroad car, automobile, airplane, or any other building, although not specially named herein, boat, vessel, or water craft, by day or night, with the intent to commit any felony or larceny.' | Both a breaking and entry need not be shown to convict of burglary; either is sufficient to constitute the crime. | Is both breaking and entering necessary for burglary? | 012710.docx | LEGALEASE-00137476-LEGALEASE-00137478 | Condensed, SA | | 0.88 | 0 | 1 | 0 | 1 | |
| 21499 | Dyer v. State, 2002 WL 1732980 | 110+2182 | In his second issue, appellant argues that the prosecutor struck at him over his counsel's shoulder by objecting to jury argument made by his counsel. The exchange at issue is:Defense: When you think about the offense itself, I can hardly think of a less serious burglary. Burglary is serious, it's a felony offense, I am not making light of it. A burglary of somebody's home is a very serious offense, but there are burglaries and there are burglaries. The kind of people that commit burglaries can do, as you know, unspeakable things to the people in that house and their wives and their children.Prosecutor: Your Honor, I object, it's a different range of punishment, it's outside the record.Defense: I object to that statement, Your Honor.Court: I will sustain his objection.Defense: I object to the statement of the prosecutor as being argument at an improper time and attacking the defendant over the shoulder of counsel.Court: His objection was sustained. Move along. Your objection is overruled. | Prosecutor did not, by way of objection, attack the defendant over defense counsel's shoulder when defense counsel stated during sentencing phase of trial "I can hardly think of a less serious burglary" and prosecutor objected and stated "it's a different range of punishment, it's outside the record"; rather, the prosecutor's objection was timely and proper. | Is burglary a serious offense? | Burglary - Memo 165 - JS.docx | ROSS-003331025-ROSS-003331027 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21500 | Cator v. Martin, 57 Md. 397 | 10BH+1184 | But the petition in the case at bar, would not be good under the law of Massachusetts. It is directed specially against the Misses Martin & Marr, as partners, and does not make the distinct allegation that both the partnership and the partners, individually are insolvent. This it ought to do. A partnership cannot be said to be insolvent while any of the partners are able to pay its debts. Here the petition is apparently directed entirely against the partnership, and all of its allegations are very indefinite. Dearborn vs. Keith, 5 Cush., 226; Parker vs. Philips, 2 Cush., 175; Hanson vs. Paige, 3 Gray, 239. | A joint proceeding against several as partners will not lie under the insolvent law. Proceedings must be taken against each separately. | Can a partnership be called insolvent if any of the partners are able to pay its debts? | 022242.docx | LEGALEASE-00137751-LEGALEASE-00137752 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21501 | State v. Peter, 798 N.W.2d 552 | 129+127 | he other complaint about appellants' conduct involved the manner or the delivery of their speech, in which appellants were so loud and angry that they disturbed and annoyed others. But appellants yelled in their natural voices, without the use of any sound amplification equipment. Their protest occurred on a downtown Minneapolis street, during afternoon rush hour, in a mixed use neighborhood that included businesses, residences, and entertainment establishments. Loud and even boisterous conduct is protected under Minnesota law, when that conduct is "expressive and inextricably linked to [a] protected message." The state basically relies on one case to support its position that appellants' loud yelling is not protected by the First Amendment, In re Welfare of T.L.S., 713 N.W.2d 877, 879"81 (Minn.App.2006). That case involved a juvenile who was loudly "shrieking," screaming profanities in a school building, and disrupting the running of the school. The conduct in T.L.S. was non-expressive conduct unrelated to any substantive message, and it occurred inside a school building while school was in session. Appellants assert that regulation of conduct of an unruly student in a school building is not equivalent to restrictions on the manner of political protest on a public sidewalk in a busy urban area, and that the state's reliance on T.L.S. is thus misplaced. We agree. | Defendants, who were animal rights activists, were not using fighting words when they yelled, while protesting in front of fur shop, that they knew where owner and his mother lived and that they knew his vehicle license plate number and, therefore, content of their speech did not fall outside scope of protected speech, as required to support convictions for disorderly conduct. U.S.C.A. Const.Amend. 1. | When is loud and boisterous conduct protected? | Disorderly Conduct-Memo 40- PR.docx | ROSS-003318569-ROSS-003318570 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21502 | State v. Goeson, 65 N.D. 706 | 361+1617(25) | It may not be out of place to call attention to the fact that while this appeal involves the validity of the demurrer to the answer and the answer says the tax imposed is "confiscatory and discriminatory," there is nothing in the answer pointing out wherein the tax is confiscatory and discriminatory. Such statement is a mere conclusion of law and is disregarded on the demurrer. As pointed out in 49 C. J. 44, "a conclusion of law does not aid the pleading and will be disregarded in determining the sufficiency of the facts alleged." "A pleading which depends on conclusions of law, without stating the facts on which they are based, is fatally defective." 49 C. J. 46. It needs no citations to sustain this rule; but see Security National Bank of Fargo v. Dougherty et al., 53 N. D. 1, 204 N. W. 847; Houghton Implement Co. v. Vavrosky, 15 N. D. 308, 109 N. W. 1024 | Statute imposing mileage charge on motortrucks operating on state highways solely in interstate commerce held to comply with Constitution requiring bill to cover but one subject (Laws 1933, c. 162; Const. S 61). | "Is a pleading which depends on conclusions of law, without stating the facts on which they are based, fatally defective?" | Pleading - Memo 359 - RMM.docx | ROSS-003290591-ROSS-003290592 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21503 | Rivera v. City of New York, 306 A.D.2d 456 | 307A+224 | Secondly, CPLR " 3116(a) provides for a 60"day period for making corrections to a deposition. It states that "if the witness (whether or not a party to the action) fails to sign the deposition within 60 days after it has been submitted for signing, it may be used at trial as if it had been signed. No changes to the transcript may be made more than 60 days after the submission to the witness." Id. Courts, however, have interpreted the 60"day period as not being a rigid statute of limitations; it is presumably extended pursuant to CPLR " 2004. See e.g., Binh v. Bagland USA, Inc., 286 A.D.2d 613, 730 N.Y.S.2d 317 (1st Dept.2001) (Court held that the trial court "properly exercised its discretion in forgiving plaintiff for a three-month delay in furnishing the errata sheet correcting deposition testimony"); Rodriguez v. OD & P Const., Inc., 194 Misc.2d 284, 752 N.Y.S.2d 799 (N.Y.Sup.Ct.2002) (Trial court permitted plaintiff to rely upon an amended deposition in opposition to a motion for summary judgment, despite a 47"day delay in furnishing errata sheet). | Defendant waived any objection to plaintiff's 60 day delay in revising errata sheet outlining purported corrections to her deposition testimony by waiting three years to bring motion to strike; plaintiff was significantly prejudiced by three year delay and defendant offered no reason for three year delay. McKinney's CPLR 3013, 3116(a). | "If the witness fails to sign the deposition within 60 days after it has been submitted for signing, may it be used at trial as if it had been signed?" | 031701.docx | LEGALEASE-00138425-LEGALEASE-00138426 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21504 | United States v. Caro-Muniz, 406 F.3d 22 | 63+1(1) | We review challenges to the constitutionality of a statute de novo. See Planned Parenthood v. Heed, 390 F.3d 53, 57 (1st Cir.2004). In Sabri v. United States, 541 U.S. 600, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), the United States Supreme Court held that section 666 was not an unconstitutional exercise of congressional authority under the Spending Clause, U.S. Const. Art. I, " 8, cl. 1, or the Necessary and Proper Clause, U.S. Const. Art. I, " 8, cl. 18. Sabri, 124 S.Ct. at 1942"43.Specifically, the Court stated it is true ... that not every bribe or kickback offered or paid to agents of governments covered by " 666(b) will be traceably skimmed from specific federal payments, or show up in the guise of a quid pro quo for some dereliction in spending a federal grant. But this possibility portends no enforcement beyond the scope of federal interest, for the reason that corruption does not have to be that limited to affect the federal interest. Money is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value. Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there. And officials are not any the less threatening to the objects behind federal spending just because they may accept general retainers. It is certainly enough that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest, such as that provided here, and on a bribe that goes well beyond liquor and cigars.Id. at 1946 (internal citations omitted). Caro suggests a narrow reading of Sabri, whereby we would view the Supreme Court's decision as only standing for the proposition that section 666 is facially valid. Under this interpretation, Caro suggests that this court may entertain as-applied challenges to the constitutionality of section 666 in instances where it is established that there exists no direct connection between charged | Government was not required to prove nexus between bribery and municipality's receipt of federal funds in order to convict mayor of bribery. 18 U.S.C.A. S 666. | "Does statute prohibiting bribery intended to influence an organization that received federal funds in excess of $10,000 in a one-year period exceed Congress's authority under the Spending Clause?" | 011952.docx | LEGALEASE-00139349-LEGALEASE-00139351 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21505 | 100 Harborview Drive Condo. Council of Unit Owners v. Clark, 224 Md. App. 13 | 307A+45 | 174 Md.App. at 499, 921 A.2d 912 (citing Naughton v. Bankier, 114 Md.App. 641, 653, 691 A.2d 712 (1997)). We have deemed substantial compliance with a scheduling order to be sufficient where the opposing party has not suffered prejudice. See, e.g., Wormwood v. Batching Sys., Inc., 124 Md.App. 695, 700″05, 723 A.2d 568 (1999). Still, the overriding tenet persists that, "[t]he decision to admit or exclude "expert" testimony is within the broad discretion of the trial court and that decision will be sustained on appeal unless it is shown to be manifestly erroneous." Kleban v. Eghran"Sabet, 174 Md.App. 60, 61, 920 A.2d 606 (2007) (quoting Wood v. Toyota Motor Corp., 134 Md.App. 512, 520 n. 8, 760 A.2d 315 (2000)) (internal quotation marks omitted). | Condominium council sued by unit owner for violations of his right to disclosure of records under Maryland Condominium Act (MCA) was not entitled to present testimony of accounting expert on legal issue of whether detailed billing reports of legal counsel were part of the financial books and records that a condominium association is required to keep, as expert was not timely disclosed pursuant to scheduling order. West's Ann.Md.Code, Real Property, § 11-116. | Is a substantial compliance with a scheduling order sufficient where the opposing party has not suffered prejudice? | 030970.docx | LEGALEASE-00139165-LEGALEASE-00139166 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21506 | Diamond v. C. I. R., 492 F.2d 286 | 220+3920 | Reg. " 1.721-1 presumably explains and interprets " 721, perhaps to the extent of qualifying or limiting its meaning. Subsec. (b)(1), particularly relied on here, reads in part as follows: "Normally, under local law, each partner is entitled to be repaid his contributions of money or other property to the partnership (at the value placed upon such property by the partnership at the time of the contribution) whether made at the formation of the partnership or subsequent thereto. To the extent that any of the partners gives up any part of his right to be repaid his contributions (as distinguished from a share in partnership profits) in favor of another partner as compensation for services (or in satisfaction of an obligation), section 721 does not apply. The value of an interest in such partnership capital so transferred to a partner as compensation for services constitutes income to the partner under section 61 . . ." | Taxpayer who, in exchange for arranging financing for purchase of building, obtained income by virtue of receiving partnership interest which was limited to share of profits to be earned was not entitled to deduct a share of partnership unamortized loan expense. 26 U.S.C.A. (I.R.C.1954) § 708(b)(1)(B). | Is each partner entitled to repayment of their contributions to the partnership property? | 022335.docx | LEGALEASE-00139624-LEGALEASE-00139625 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 21507 | Zinke v. Orskog, 422 S.W.3d 422 | 307A+517.1 | Supreme Court Rule 67.02 permits a plaintiff to dismiss a civil action without prejudice without order of the court at any time prior to trial. Section 516.230 RSMo, commonly referred to as the "savings statute," provides that, if the plaintiff suffers a "nonsuit," he may refile his action within one year after the nonsuit. A voluntary dismissal without prejudice is a species of nonsuit. King v. Gaub, 75 S.W.3d 916, 918 (Mo.App.S.D.2002). The calculation of the one-year time period under Section 516.230 commences when the voluntary dismissal, or nonsuit, is effective. i.e. on the date it is filed. Id. at 917. | Once a permitted voluntary dismissal is filed, there is nothing pending before the trial court on which it is permitted to act, though the court may enter administrative orders such as those with regard to the assessment of costs. V.A.M.S. § 516.230; V.A.M.R. 67.02. | Is a voluntary dismissal without prejudice a species of nonsuit? | Pretrial Procedure - Memo # 2480 - C - SI.docx | ROSS-003288598-ROSS-003288599 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | 1 |
| 21508 | Monitronics Int'l v. Veasley, 323 Ga. App. 126 | 30+4456 | At the outset, we note that Georgia's appellate courts are required to construe agreements in a manner that respects the parties' sacrosanct freedom of contract. Indeed, it is well settled that contracts will not be avoided by the courts on the grounds that they violate public policy, "except where the case is free from doubt and where an injury to the public interest clearly appears." It is also well settled that exculpatory clauses in which a business seeks to relieve itself from its own negligence are valid and binding in this State, "and are not void as against public policy unless they purport to relieve liability for acts of gross negligence or wilful or wanton conduct." Nevertheless, because exculpatory clauses may amount to "an accord and satisfaction of future claims and waive substantial rights, they require a meeting of the minds on the subject matter and must be explicit, prominent, clear and unambiguous." Moreover, any ambiguities in exculpatory clauses are "construed against the drafters." | Any error in instructing jury that home-security company had a duty to comply with industry standards was not harmful to company in negligence action by homeowner who was raped by an intruder after company misinformed her as to the reason an alarm was triggered after she arrived at home and failed to inform her that alarms had been triggered at her home multiple times that day; as demonstrated by special-verdict form, jury found that company's conduct constituted a failure to exercise ordinary care to homeowner and a failure to act without increasing the danger or harm to her. | "Are exculpatory clauses valid and binding, and are void as against public policy when a business relieves itself from its own negligence?" | 043307.docx | LEGALEASE-00139475-LEGALEASE-00139476 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21509 | Waters v. Waters, 498 S.W.2d 236 | 83E+401 | Sec. 201:12 reads as follows:"The fact that a transferee lacking a necessary indorsement is not the holder does not mean that the transferee cannot establish his right as assignee and enforce the obligation. To the contrary, a transferee although he has neglected to obtain the indorsement necessary to make him a holder may enforce a note, foreclosure on collateral, and obtain a deficiency judgment against the debtor." | A promissory note can lawfully be transferred without a written assignment or an endorsement of the legal owner and holder thereof. V.T.C.A., Bus. & C. § 3.201(c). | Can a note be transferred when it is not indorsed by the transferee? | 009578.docx | LEGALEASE-00140484-LEGALEASE-00140485 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | 1 |
| 21510 | Paterson v. City of Granite City, 78 Ill. App. 3d 821 | 268+200(7) | A pension has been defined as a state allowance paid out of the public treasury to individuals or their representatives based upon valuable or meritorious services rendered or the satisfaction of certain  conditions, such as age, term of service, or loss or damages sustained while in public service. (City of Duncan v. Bingham (Okl.1964), 394 P.2d 456, 460; Murrell v. Elder-Beerman Stores Corp. (C.P.1968), 16 Ohio Misc. 1, 239 N.E.2d 248, 254.) It is conferred upon severance from service, and for that reason, it has been held that suspension or reduction of benefits is in order when the pensioner re-enters public service or receives income from other sources. (People ex rel. Luthardt v. Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago (1st Dist. 1934), 273 Ill.App. 387; Berry v. Portsmouth (4th Cir. 1977), 562 F.2d 307; Board of Trustees v. People (1949), 119 Colo. 301, 203 P.2d 490.) While a pension is a bounty springing from the graciousness and appreciation of the sovereign, the primary object of which is to induce efficient, conscientious and honorable service, such benefits may be given, withheld, distributed or recalled at its pleasure. People ex rel. Judges Retirement System of Illinois v. Wright (1942), 379 Ill. 328, 332-33, 40 N.E.2d 719; Miner v. Swafford (2nd Dist. 1925), 239 Ill.App. 346, 350; Hozer v. State, Dept. of Treasury, Consol. Police and Firemen's Pension Fund Commission (1967), 95 N.J.Super. 196, 230 A.2d 508, 510. | A municipal ordinance enacted in 1964, prior to home rule powers, which purported to require city to pay disabled municipal employees difference between their normal wages and amount available under state disability statutes, was an attempt to confer a benefit in form of a lifetime pension not authorized by General Assembly either expressly or impliedly and was thus void, and thus a former fireman, retired due to a work-related injury, was not entitled to recover amounts claimed due under ordina nce. S.H.A. ch. 24, §§ 10-3-2, 10-3-3, 10-4-1, 11-6-1; ch. 1081/212, §§ 4-110, 4-118; S.H.A.Const. 1970, art. 7, § 6; Ill.Rev.Stat.1963, ch. 24, § 10-2-4. | Is a pension a state allowance paid out of public treasury? | Pension - Memo 22 - SB.docx | ROSS-003291154-ROSS-003291155 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21511 | Montgomery Cty., Md. v. Fed. Nat. Mortg. Ass'n, 740 F.3d 914 | 371+2218 | And this level of scrutiny is not altered because a regulation exempts an entity from state taxation. The Counties' analogy to the Fifth and Fourteenth Amendments fails because there is no independent constitutional protection for the States' right to tax. To be sure, Congress must speak clearly when preempting a State's traditional powers, including the power to tax. See Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 345, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994). But Congress's intent to exempt Fannie Mae and Freddie Mac from state taxation in the present case could not be clearer"the statutes provide that Fannie Mae and Freddie Mac "shall be exempt from all taxation now or hereafter imposed by any State ... or by any county." 12 U.S.C. " 1723a(c)(2); id. " 1452(e). The Supreme Court has often recognized Congress's power to exempt entities from state taxation, but it has never indicated that such an exercise of power would be subject to strict scrutiny. See, e.g., Ariz. Dep't of Revenue v. Blaze Constr. Co., 526 U.S. 32, 38, 119 S.Ct. 957, 143 L.Ed.2d 27 (1999) ("Whether to exempt [the government contractor] from Arizona's transaction privilege tax ... rests ... with Congress"); United States v. New Mexico, 455 U.S. 720, 737, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) ("If the [tax] immunity of federal contractors is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision"); United States v. City of Detroit, 355 U.S. 466, 474, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958) ("[T]his is not to say that Congress, acting within the proper scope of its power, cannot confer [tax] immunity by statute where it does not exist constitutionally"). And more particularly, in Arizona Public Service Co. v. Snead, 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979), the Court upheld a federal law invalidating a discriminatory New Mexico tax on the transmission of electricity where "Congress had a rational basis for finding that the New Mexico tax | State and local taxes imposed on transfer and recordation of real property were not taxes on real property, and thus did not fall within real property tax exclusions from general tax exemption provision of charters for Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac). Federal National Mortgage Association Charter Act, S 309(c)(2), 12 U.S.C.A. S 1723a(c)(2); 12 U.S.C.A. S 1452(e); West's Ann.Md.Code, Tax-Property, SS 12-103, 13-203; S.C.Code 1976, SS 12-37-30, 12-37-210, 12-37-610. | Is there any independent constitutional protection for states' right to tax? | 045424.docx | LEGALEASE-00140411-LEGALEASE-00140412 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | |
| 21512 | United States v. Galbreath, 8 F.2d 360 | 95+138(3) | It might well be argued that in this case bribery was committed, and that therefore the authority just cited is exactly in point. It was expressly decided, in Ex parte George E. Winters, 10 Okl.Cr. 592, 140 P. 164, 51 L.R.A.(N.S.) 1087, 1090, that one who holds himself out as an officer, and as such solicits or accepts a bribe, cannot defeat the charge by saying that as a matter of law he had no right to act as such officer. As said by the court, "If he was officer enough to solicit and accept a bribe, he was also officer enough to be sent to the penitentiary for so doing." In strong similarity to the facts of the present case, there it had been shown that under the law a state prohibition officer had not the power to appoint deputies. | Where money paid as bribe and recipient convicted of extortion, held money should be deposited in registry of court, under Act Jan. 7, 1925, 18 U.S.C.A. S 3612, and liquor law violator who made such payment was not entitled to recover it, regardless of 18 U.S.C.A. S 201. | Can a person holding himself out as an officer defeat a charge of bribery on the ground that he had no legal right to act in the capacity he assumed? | Bribery - Memo #742 - C - JL.DOCX | LEGALEASE-00030661-LEGALEASE-00030662 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21513 | Sturges v. Buckley, 32 Conn. 18 | 113+3 | To the kind of business carried on by the defendant the law of usage is unquestionably applicable; and the general rules of this law are too trite to require the citation of authorities. A custom must be established; it must be reasonable, and it must not be inconsistent with the principles of law or public policy, or the provisions of an express contract. The custom in this case is obnoxious to no objection from these rules. | The custom, to be binding, must be followed in all cases by all persons following the business, and must have been established so long that all persons in the business to which the custom relates, living in the vicinity, could be presumed to have known of it, and acted in reference thereto. | Does a custom have to be reasonable? | 014216.docx | LEGALEASE-00141920-LEGALEASE-00141921 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 21514 | Barash v. Seaton, 256 F.2d 714 | 260+5.1(4) | On June 5, 1953, appellant filed an application with the Secretary of the Interior for a noncompetitive oil and gas lease covering 954.51 acres of acquired land.1 Acquired land is Government owned land which was acquired from private ownership. Public land is Government owned land which was part of the original public domain. For leasing procedures, both are governed by the provisions of " 17 of the Mineral Leasing Act of 1920, as amended, 30 U.S.C.A." 226.2 | Memorandum from acting director of geological surveys that part of acquired lands, upon which applicant for lease had subsequently filed application for noncompetitive oil and gas lease, was believed to be within known geological structure of producing field did not constitute a determination that land was within such structure as provided by statute requiring Secretary of Interior to issue lease to acquired lands to first applicant, if land is not within any known geological structure of a producing oil or gas field, and applicant was entitled to lease. Mineral Leasing Act for Acquired Lands, SS 1 et seq., 3, 30 U.S.C.A. SS 351 et seq., 352. | Is Public land Government owned land which was part of the original public domain? | Mines and Minerals - Memo # 116 - C - EB.docx | ROSS-003289066-ROSS-003289067 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 21515 | Nicolai v. Fed. Hous. Fin. Agency, 928 F. Supp. 2d 1331 | 371+2695 | As Nicolai rightly points out, "A state's power to tax is of the "utmost importance" and [is] vigorously protected ...." (Doc. # 31 at 7) (citing Bode v. Barrett, 344 U.S. 583, 585, 73 S.Ct. 468, 97 L.Ed. 567 (1953)). Accordingly, the Supreme Court "has repeatedly said that tax exemptions are not granted by implication." Okla. Tax Comm'n v. United States, 319 U.S. 598, 606, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943). Instead, such exemptions "must be unambiguously proved." United States v. Wells Fargo Bank, 485 U.S. 351, 354, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988). However, if "the statutory language is unambiguous and the statutory scheme is coherent and consistent," then the "inquiry must cease." Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (internal quotation omitted). "It is well settled that the starting point for interpreting a statute is the language of the statute itself." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 56, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (internal quotation omitted). | County clerk had standing to bring action against Federal Home Loan Mortgage Corporation (Freddie Mac), Federal National Mortgage Association (Fannie Mae), and Federal Housing Finance Agency (FHFA), seeking to recover transfer taxes that defendants allegedly owed for real estate transactions, plus interest, where state law vested Florida's Department of Revenue with authority to administer the transfer tax, and county clerk, as agent for the Department, had a duty to ensure that the tax was paid. West's F.S.A. SS 201.02, 201.11. | How important is a state's power to tax? | 045509.docx | LEGALEASE-00141775-LEGALEASE-00141776 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 21516 | Fynnetics (Hong Kong) Ltd., 25T+139 v. Quantum Grp., 293 F.3d 1023 | 25T+139 | The arbitration provision in this case contemplated that "[a]ny claim or controversy arising between the parties hereto in connection with this Agreement ... shall be determined by arbitration." This court has characterized similar provisions as extremely broad and capable of an expanse reach. See id. at 909"10. In Kiefer, the relevant arbitration provision stated that "[a]ny controversy or claims arising out of or relating to [the Agreements] shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Id. at 909. There, we noted that "[b]road arbitration clauses ... necessarily create a presumption of arbitrability." Id. at 910. We believe that such a presumption arises in this case given the expansive language of the arbitration provision in the Quantum"Fynnetics license agreement and its similarity to the provision in Kiefer. | The district court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. | Do broad arbitration clauses create a presumption of arbitrability? | Alternative Dispute Resolution - Memo 613 - RK.docx | ROSS-003288644-ROSS-003288645 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21517 | United States v. Locke, 471 U.S. 84 | 92+2632 | Claimants thus must take their mineral interests with the knowledge that the Government retains substantial regulatory power over those interests. Cf. Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 413, 103 S.Ct. 697, 706, 74 L.Ed.2d 569 (1983). In addition, the property right here is the right to a flow of income from production of the claim. Similar vested economic rights are held subject to the Government's substantial power to regulate for the public good the conditions under which business is carried out and to redistribute the benefits and burdens of economic life. See, e.g., National Railroad Passenger Corporation v. Atchison, T. & S.F.R. Co., 470 U.S. 451, 468 "469, 105 S.Ct. 1441, "'''', 84 L.Ed.2d 432 (1985); Usery v. Turner Elkhorn Mining Co., supra; see generally Walls v. Midland Carbon Co., 254 U.S. 300, 315, 41 S.Ct. 118, 121, 65 L.Ed. 276 (1920) ("[i]n the interest of the community, [government may] limit one [right] that others may be enjoyed"). | Even with respect to vested property rights, a legislature generally has power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties; as long as the constraint or duty imposed is a reasonable restriction designed to further legitimate legislative objectives, legislature acts within its powers in imposing such new constraints or duties. | Should claimants take their mineral interests with the knowledge that the Government retains substantial or significant regulatory power over those interests? | 021344.docx | LEGALEASE-00142814-LEGALEASE-00142815 | Condensed, SA | 0.55 | 0 | 1 | 0 | | |
| 21518 | Harris Cty. Hous. Auth. v. Rankin, 414 S.W.3d 198 | 30+3212 | Subject-matter jurisdiction is essential to the authority of a court to decide a case. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex.1993). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. Id. at 446. The absence of subject-matter jurisdiction may be raised in various procedural vehicles such as a motion to dismiss for lack of jurisdiction. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000). | Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. | May the absence of subject-matter jurisdiction be raised in various procedural vehicles such as a motion to dismiss for lack of jurisdiction? | 033805.docx | LEGALEASE-00142378-LEGALEASE-00142379 | Condensed, SA | 0.81 | 0 | 1 | 0 | | 1 |
| 21519 | E.I. DuPont De Nemours & Co. v. Sidran, 140 So. 3d 620 | 307A+563 | "Fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." " Robinson v. Weiland, 988 So.2d 1110, 1111 n. 1 (Fla. 5th DCA 2008) (quoting Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998)); see Wenwei Sun v. Aviles, 53 So.3d 1075, 1077 (Fla. 5th DCA 2010) (accord). While "a trial court has the inherent power to impose sanctions on a party who destroys evidence or perpetrates a fraud on the court," that power should be exercised with great restraint because the courts of this state favor adjudications on the merits. Babe Elias Builders, Inc. v. Pernick, 765 So.2d 119, 120 (Fla. 3d DCA 2000); Tramel v. Bass, 672 So.2d 78, 83 (Fla. 1st DCA 1996) (accord); see also Rocka Fuerta Constr. Inc. v. Southwick, Inc., 103 So.3d 1022, 1024 (Fla. 5th DCA 2012) ("[T]he inherent authority to dismiss actions based on fraud . . should be used "cautiously and sparingly," and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrong doing." [quoting Granados v. Zehr, 979 So.2d 1155, 1157 (Fla. 5th DCA 2008)]); Gautreaux v. Maya, 112 So.3d 146, 149 (Fla. 5th DCA 2013) ("When reviewing a case for fraud, the court should consider the proper mix of factors and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system." (quoting Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998))); Wenwei, 53 So.3d at 1077 (accord). | To support a dismissal based upon a fraud on the court, the court must find the false testimony was directly related to the central issue in the case. | "Does ""fraud on the court"" occur where it can be demonstrated that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter?" | 034007.docx | LEGALEASE-00143176-LEGALEASE-00143177 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 21520 | Cty. of San Diego v. State of California, 15 Cal. 4th 68 | 360+111 | Through adoption of Proposition 13 in 1978, the voters added article XIII A to the California Constitution, which "imposes a limit on the power of state and local governments to adopt and levy taxes. [Citation.]" (County of Fresno v. State of California (1991) 53 Cal.3d 482, 486, 280 Cal.Rptr. 92, 808 P.2d 235 (County of Fresno).) The next year, the voters added article XIII B to the Constitution, which "impose[s] a complementary limit on the rate of growth in governmental spending." (San Francisco Taxpayers Assn. v. Board of Supervisors (1992) 2 Cal.4th 571, 574, 7 Cal.Rptr.2d 245, 828 P.2d 147.) These two constitutional articles "work in tandem, together restricting California governments' power both to levy and to spend for public purposes." (City of Sacramento v. State of California (1990) 50 Cal.3d 51, 59, fn. 1, 266 Cal.Rptr. 139, 785 P.2d 522.) Their goals are "to protect residents from excessive taxation and government spending. [Citation.]" (County of Los Angeles v. State of California (1987) 43 Cal.3d 46, 61, 233 Cal.Rptr. 38, 729 P.2d 202 (County of Los Angeles).). | Constitutional prohibition on state creation of unfunded mandates for local governments prohibits state from shifting to counties the costs of state programs for which the state assumed complete financial responsibility before adoption of the amendment. West's Ann.Cal. Const. Art. 13B, § 6. | What are the goals of constitutional provisions pertaining to tax and government spending limitations? | 045329.docx | LEGALEASE-00142483-LEGALEASE-00142484 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 21521 | Bd. of Assessment Appeals v. AM/FM Int'l, 940 P.2d 338 | 371+2341 | In light of the stipulated facts, it is beyond dispute that AM/FM's use of the Property does confer some benefit on various governmental entities and public utilities.13 It is AM/FM's burden, however, to demonstrate that this use relieves a governmental function and inures to the benefit of the public. See Security Life & Accident Co. v. Heckers, 177 Colo. 455, 458, 495 P.2d 225, 226 (1972) (holding that burden is on the taxpayer who claims an exemption to clearly establish the right to such exemption). Ad valorem property taxes are intended to raise revenue to defray the general expenses of the taxing entity. See Zelinger v. City & County of Denver, 724 P.2d 1356, 1358 (Colo.1986). Property taxes are a critical source of funding through which government is able to provide essential services such as police and fire protection, public health care and hospitals, public utility facilities, and schools.Thus, property tax exemptions are reserved for circumstances where there is a distinct showing of public benefit. | Determination as to whether property is used for strictly charitable purposes within meaning of tax exemption statute must be made on case-by-case basis to determine whether such use satisfies statutory and constitutional requirements. | "Are ""ad valorem property taxes"" intended to raise revenue to defray general expenses of taxing entity?" | 045579.docx | LEGALEASE-00142292-LEGALEASE-00142293 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21522 | Williams v. Liberty Mut. Fire Ins. Co., 187 So. 3d 166 | 30+3211 | A dismissal with prejudice indicates a ruling on the merits of the case, but a dismissal for lack of jurisdiction necessarily does not implicate the merits of the case. See Jackson v. Bell, 123 So.3d 436, 439 ( 7) (Miss.2013) ("[A] dismissal for lack of jurisdiction is not a dismissal on the merits, and thus may not be with prejudice."); B.A.D. v. Finnegan, 82 So.3d 608, 615 ( 27) (Miss.2012) (court could not dismiss case with prejudice for lack of subject-matter jurisdiction). Thus, a court must issue a dismissal on jurisdictional grounds without prejudice. The dismissal of Stafford should have been without prejudice. Williams also argues the circuit court erred in finding that Stafford did not waive any objections to jurisdiction by entering a general appearance rather than a special appearance. Williams further contends the circuit court erred in finding Stafford was a Tennessee resident, and in finding personal service on Stafford would not comport with due process. According to Williams, the circuit court also misapplied Mississippi Rule of Civil Procedure 4, applied the incorrect legal standard in finding the Mississippi long-arm statute did not apply, and erred in applying immunity to Stafford. We consolidate and clarify these issues. | Jurisdictional issues are reviewed pursuant to a de novo standard of review. | Must a court issue a dismissal on jurisdictional grounds without prejudice? | Pretrial Procedure - Memo # 5689 - C - KBM.docx | ROSS-003302882-ROSS-003302883 | Condensed, SA | 0.94 | 0 | | 0 | | 1 |
| 21523 | Jones v. LaFrance Leasing Ltd. P'ship, 110 A.D.3d 1032 | 307A+44.1 | A court has the discretion to sanction a party which has failed to comply with court-ordered discovery by striking part or all of a pleading (see CPLR 3126[3]; Kihl v. Pfeffer, 94 N.Y.2d 118, 122, 700 N.Y.S.2d 87, 722 N.E.2d 55; Dokaj v. Ruxton Tower Ltd. Partnership, 91 A.D.3d 812, 814, 938 N.Y.S.2d 101; Maffai v. County of Suffolk, 36 A.D.3d 765, 766, 829 N.Y.S.2d 566). " 'If the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity' " (Northfield Ins. Co. v. Model Towing & Recovery, 63 A.D.3d 808, 809, 881 N.Y.S.2d 135, quoting Kihl v. Pfeffer, 94 N.Y.2d at 123, 700 N.Y.S.2d 87, 722 N.E.2d 55). | Trial court was within its discretion in precluding elevator repair company from claiming that it did not have prior notice of elevator's allegedly defective conditions, at trial in action to recover damages for wrongful death, where company failed to produce evidence in response to court's directive and plaintiffs' repeated discovery demands, it failed to provide a consistent and credible explanation as to why it failed to do so, and its failure to produce its records as directed was willful. McKinney's CPLR 3126(3). | "If the credibility of court orders and the integrity of the judicial system are to be maintained, can a litigant ignore court orders with impunity?" | 034571.docx | LEGALEASE-00144193-LEGALEASE-00144194 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 21524 | Douglas Aircraft Co. v. Johnson, 13 Cal. 2d 545 | 371+2060 | "The distinction between a tax on a privilege and a propertytax is many times a close one. Generally speaking, the function of a propertytax is to raise revenue.Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police powers, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved. 37 Cor.Jur., p. 171, " 9, and cases cited. | Generally, a "property tax" is for revenue and does not impose restriction on use of property taxed, whereas a "privilege tax," though also passed for revenue and as such to be distinguished from "license tax," is imposed on right to exercise privilege, and its payment is condition precedent to exercise of privilege. | "What is a ""property tax""?" | 045695.docx | LEGALEASE-00144502-LEGALEASE-00144503 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21525 | Jordan v. Sears, Roebuck & Co., 651 A.2d 358 | 413+934.6 | We conclude there is nothing in the plain language or legislative history of section 62*B to suggest that the Legislature intended an immediate coordination of benefits when an employee rolls pension funds over into an IRA. We have previously held that "the rights of a party under the Workers' Compensation Act are purely statutory." Lavoie v. International Paper Co., 403 A.2d 1186, 1191 (Me.1979). See also Cote v. Georgia*Pacific Corp., 596 A.2d 1004 (Me.1991). Because the Legislature has not expressed an intent to allow an immediate coordination of benefits in the case of an employee who rolls over pension money into an IRA, we conclude that "[n]either the language nor the purpose of the statute requires us to vacate the Commissioner's decision." Nielsen, 600 A.2d at 1112. | Statute governing coordination of workers' compensation benefits, and permitting reduction of benefits by after-tax amount of payments received or being received under employee benefit plan, did not permit employer to a coordination of compensation benefits when employee rolled pension benefits over into individual retirement account (IRA) until those funds were distributed from IRA; since claimant was not required to pay taxes on funds that had been rolled over, he had not "received" a "payment" of pension benefits pursuant to the statute. 39 M.R.S.A. § 62-B (Repealed). | Are Workers Compensation Act rights purely statutory? | 048217.docx | LEGALEASE-00144336-LEGALEASE-00144337 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 21526 | Tate v. Clements, 16 Fla. 339 | 241+143(3) | As to business not connected with the partnership business, one partner cannot bind his copartner by a contract not within the scope of the partnership business, and a knowledge of the limited nature of the partnership may be inferred from circumstances. Livingston vs. Bonvell, 4 John., 251; Long vs. Carter, 3 Iredell, 238; Minor vs. Downie, 19 Vt., 14; Daniel on Negotiable Instruments, 358. | An admission or promise by a partner after dissolution of the partnership, and before suit is barred on a firm-debt, to pay such debt, does not prevent the running of the statute as to other partners, though the creditor is ignorant of the dissolution. | Can a partner bind his copartners by a contract not within the scope of the partnership business? | Partnership - Memo 459 - RK.docx | ROSS-003301082-ROSS-003301083 | Condensed, SA | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 21527 | State v. Moler, 269 Kan. 362 | 67+4 | The pertinent statute is K.S.A. 21'3715, which provides in part:"Burglary is knowingly and without authority entering into or remaining within any:"(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;"(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or"(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein." (Emphasis added.) | Lean to attached to enclosed workshop for use as a carport, which was permanently and entirely open on one side was not "other structure" under burglary statute. K.S.A. 21-3715(b). | Is a mobile home a dwelling under burglary statute? | Burglary - Memo 249 - SB_57627.docx | ROSS-003325327-ROSS-003325330 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21528 | Blankenship v. State, 780 S.W.2d 198 | 110+1159.5 | The key issue before this Court is whether the evidence was sufficient to prove Weeks' house a "habitation" as that word is used in the burglary statute, V.T.C.A., Penal Code 30.02. Texas law divides burglary of realty into two categories: burglary of buildings and burglary of habitations. See V.T.C.A., Penal Code 30.02. The former burglary is a second degree felony (unless certain conditions are met) but the latter burglary is always a first degree felony. Id. at (c) and (d). | Determination of whether burglarized place is a "building" or "habitation" under burglary of habitation statute will be overturned on appeal only if defendant can show that no reasonable trier of fact could have found the place to have been a habitation; overruling Jones v. State, 532 S.W.2d 596. | What are the different categories of burglary? | Burglary - Memo 253 - SB_57631.docx | ROSS-003294265-ROSS-003294269 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 21529 | Polo Mfg. Co. v. Parr, 8 Neb. 379 | 8.30E+186 | The rule results from the principle that the construction of the note is to be gathered from the whole of it, as well from the words on the back as those on the face. Therefore, a memorandum upon the back of a note, made by agreement of the parties before signing, will bind all the parties to it. The instruction, therefore, is not erroneous. From a careful examination of the entire record, it is clear that there is no error of which the plaintiff can complain, and it is apparent that justice has been done in rendering judgment for the defendants. The judgment is therefore affirmed. | A stipulation on the back of a note is as much a part of the instrument as if set out in its body. | Is memorandum at back of note made by agreement of parties before signing is binding on all the parties? | Bills and Notes -Memo 606 -DB_57719.docx | ROSS-003278457-ROSS-003278458 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21530 | NHL Tr. v. Sands, 733 So.2d 1288 | 83E+733 | Regardless of the credibility of Carter's affidavit, it is clear from the record that plaintiff is the holder of the note as it was presented in true form to the district court. The allonge attached to the note indicates that on January 22,1997 plaintiff became owner and holder of the note after a transfer from National Heritage and Life Insurance. Such proof meets, if not exceeds, a prima facie case that NHL is the holder of the note. Under the law, the holder of the note is entitled to enforce the note. La. R.S. 10:3-301, FGB Realty Advisors, Inc. v. Riedlinger, 95-2276 (La.App. 4 Cir. 4/3/96), 671 So.2d 560, 564, writ denied, 96-1299 (La.7/1/96), 676 So.2d 101.Case 2: FGB Realty Advisors, Inc. v. Riedlinger, 671 So. 2d 560, 564 | There was no issue of note being misplaced or lost, in action to collect on note, where, as noted by district court on face of holder's petition, original note, allonge and authentic act of notice and acceleration were filed in vault of district court. | Is the holder of the note entitle to enforce the note? | Bills and Notes-Memo 1026 - SB_60152.docx | ROSS-003282964 | Condensed, SA, Sub | 0.66 | 0 | 1 | | 1 | |
| 21531 | United States v. Jefferson, 674 F.3d 332 | 63+14 | The Sun°Diamond Court declined, therefore, to read the illegal gratuity statute so broadly as to prohibit "gifts given by reason of the donee's office." 526 U.S. at 408, 119 S.Ct. 1402. To do so, the Court reasoned, "would criminalize, for example, token gifts to the President based on his official position and not linked to any identifiable act"such as the replica jerseys given by championship sports teams each year during ceremonial White House visits[."] Id. at 406°07, 119 S.Ct. 1402. Warning against an expansion of the illegal gratuity statute to prohibit such gifts, the Court advised that "a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." Id. at 412, 119 S.Ct. 1402. Thus, the Court ruled that gifts by a trade group of farmers to the Secretary of Agriculture, at a time when matters affecting the farmers were pending in the Department, were not barred by the illegal gratuity statute, because such offerings were not directly connected to any specific official act or acts taken or to be taken on the matters of interest to the farmers. Id. at 414, 119 S.Ct. 1402. | Jury instructions given in bribery trial of congressman correctly stated the applicable law; instructions permitted jury to find that performing constituent services was a settled official practice of defendant's congressional office and, second, that African trade issues were "matters" or "causes" that were pending before him, and jury was then entitled to conclude that defendant's actions in connection with both constituent requests and the promotion of trade in Africa in exchange for bribe payments fell under the umbrella of his "official acts." 18 U.S.C.A. S 201(a)(3). | Can the gratuity statute be read to prohibit gifts given by reason of the donee's office? | Bribery - Memo #977 - C_JL_57944.docx | ROSS-003084437-ROSS-003308438 | Condensed, SA, Sub | 0.5 | 0 | 1 | | 1 | 1 |
| 21532 | Wallsville Corp. v. McGuinness, 154 So. 3d 501 | 188+291 | An order dismissing a complaint for failure to state a cause of action is reviewedde novo. Stubbs v. Plantation Gen. Hosp. Ltd. P'ship, 988 So.2d 683, 684 (Fla. 4th DCA 2008). In considering a motion to dismiss, the trial court "may not properly go beyond the four cornersof the complaint in testing the legal sufficiency of the allegations set forth therein." Id. (quotingHewett-Kier Constr., Inc. v. Lemuel Ramos & Assocs., Inc., 775 So.2d 373, 375 (Fla. 4th DCA2000)). The party moving for dismissal must "admit[ ] all well pleaded facts as true, as well asreasonable inferences that may arise from those facts." Id. (quoting Palumbo v. Moore, 777So.2d 1177, 1178 (Fla. 5th DCA 2001)). "Further, a motion to dismiss cannot be grantedbased on an affirmative defense unless the defense appears on the face of a pleading." Pac.Ins. Co., Ltd. v. Botelho, 891 So.2d 587, 590 (Fla. 3d DCA 2004). | Fact issue as to the purpose of website visitor's $10,000 deposit with gambling website precluded dismissal, for failure to state a cause of action, of visitor's action against operators of the website for the return of the deposit; while it seemed likely that statute barring enforcement of gambling debts would bar recovery of the deposit, complaint contained no allegations as to the terms on which the deposit was being held, so as to enable trial court to decide the merits of website operators'affirmative defense raising the statute. West's F.S.A. S 849.26. | Can a motion to dismiss be granted on the basis of an affirmative defense unless that defense is established on the face of the pleadings? | Pretrial Procedure - Memo # 7594 - C - SHS_57802.docx | ROSS-003282475-ROSS-003282476 | Condensed, SA, Sub | 0.37 | 0 | 1 | | 1 | 1 |
| 21533 | State v. Hardy, 963 S.W.2d 516 | 361+1374 | The State argues that appellee had no subjective expectation of privacy in the results of his blood tests because the tests belong to the hospital, not appellee. The State also contends that this Court must utilize the rule that the issuance of a subpoena to a third party does not violate a defendant's rights. Relying on United States v. Miller, 425 U.S. 435, 444, 96 S.Ct. 1619, 1624°1625, 48 L.Ed.2d 71 (1976), the State directs the Court's attention to this general rule and explains that it applies "even if a criminal prosecution is contemplated at the time the subpoena is issued." The State's argument, however, oversimplifies the Supreme Court's analysis in Miller. The Supreme Court, following the general rule that a subpoena directed to a third party does not implicate a defendant's rights, concluded that there was no legitimate expectation of privacy in financial records maintained by a bank°viz., checks, deposit slips, financial statements and monthly statements. That Court focused on several factors in reaching this conclusion: (1) all the documents contained information that was voluntarily released to the bank; (2) checks are negotiable instruments intended for use in commercial transactions, not as confidential communications; and, (3) one stated purpose for enacting the federal law that requires banks to retain these records is "because they have a high degree of usefulness in criminal tax, and regulatory investigations and proceedings." Id. at 443°44, 96 S.Ct. at 1624°25 (internal quotations omitted). These characteristics of financial records refuted the defendant's claim that although they were in the possession of a third party, they were protected by a right of privacy that society would recognize as reasonable. | Court of Criminal Appeals generally presumes that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. | Whether checks are confidential communications? | 010653.docx | LEGALEASE-00149692-LEGALEASE-00149693 | Condensed, SA, Sub | 0.89 | 0 | 1 | | 1 | 1 |
| 21534 | Williams v. Liberty Mut. Fire Ins. Co., 187 So. 3d 166 | 106+13.5(5) | We must now examine whether the circuit court had jurisdiction over Stafford. Williams claimed that Stafford was a Mississippi resident. We must, therefore, determine Stafford's domicile. The elements indicating one's domicile include: "(1) an actual residence voluntarily established in said county, (2) with the bona fide intention of remaining there, if not permanently, at least indefinitely." Smith v. Smith, 194 Miss. 431, 434, 12 So.2d 428, 429 (1943). "The intent necessary is the intent that an established residence shall be reasonably permanent. The intent must be to make a home at the moment and not in the future." Id. | Long-arm statute did not allow for personal jurisdiction over driver of second vehicle, who was Tennessee resident, in motorist's action against driver and her insurer alleging that driver negligently caused automobile accident; accident occurred in Tennessee, neither party contracted with the other in Mississippi, and, even if driver engaged in business in Mississippi by appearing in circuit court, contracting with Mississippi bail bondsman, and retaining attorney in Mississippi, statute barred use of its doing-business prong to establish jurisdiction by nonresident plaintiff, including motorist, who was also Tennessee resident. West's A.M.C. S 13-3-57. | What do elements indicating one's domicile include? | Domicile - Memo # 35 - C - SA_58237.docx | ROSS-003279026-ROSS-003279027 | Condensed, SA, Sub | 0.05 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21535 | Williams v. Liberty Mut. Fire Ins. Co., 187 So. 3d 166 | 106+13.5(5) | We must now examine whether the circuit court had jurisdiction over Stafford. Williams claimed that Stafford was a Mississippi resident. We must, therefore, determine Stafford's domicile. The elements indicating one's domicile include: "(1) an actual residence voluntarily established in said county, (2) with the bona fide intention of remaining there, if not permanently, at least indefinitely." Smith v. Smith, 194 Miss. 431, 434, 12 So.2d 428, 429 (1943). "The intent necessary is the intent that an established residence shall be reasonably permanent. The intent must be to make a home at the moment and not in the future." Id. | Long-arm statute did not allow for personal jurisdiction over driver of second vehicle, who was Tennessee resident, in motorist's action against driver and her insurer alleging that driver negligently caused automobile accident; accident occurred in Tennessee, neither party contracted with the other in Mississippi, and, even if driver engaged in business in Mississippi by appearing in circuit court, contracting with Mississippi bail bondsman, and retaining attorney in Mississippi, statute barred use of its doing-business prong to establish jurisdiction by nonresident plaintiff, including motorist, who was also Tennessee resident. West's A.M.C. S 13-3-57. | What is the intent necessary to establish domicile? | 014526.docx | LEGALEASE-00149311-LEGALEASE-00149312 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 21536 | City of Wichita Falls v. Thomas, 523 S.W.2d 312 | 268+429 | The trial court found that under these facts the Thomas property was not "abutting property" to the Collard Street improvement in the case of State v. Fuller, 407 S.W.2d 215 (Tex.Sup., 1966) the term "abutting owner" was defined as follows:"The term "abutting owner," when used in relation to highways, ordinarily refers to one whose land actually adjoins the way, although it is sometimes used loosely without implying more than a close proximity. See Black's Law Dictionary, 3rd ed. 1944; 25 Am.Jur. Highways s 153.' | Evidence supported finding that plaintiff's property, which was separated from street by a triangular strip of land which belonged to city but which was not used as a right-of-way, was not "abutting property" subject to street improvement assessment. Vernon's Ann.Civ.St. art. 1105b, S 6. | What does the term abutting owner refer to? | 019077.docx | LEGALEASE-00149724-LEGALEASE-00149725 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 21537 | Helvering v. Wheeling Mold & Foundry Co., 71 F.2d 749 | 220+4315 | However, we do not so interpret the contract between the parties, for we think that the agreement of the vendee to pay the lawful debts of the taxpayer was broad enough to include the assessment against it for income taxes. It is true that a tax is not a debt in the ordinary sense of the word resting upon a contract, express or implied, but a burden imposed by the government in the exercise of its power to raise money for public purposes. Lane County v. Oregon, 7 Wall. 71, 19 L.Ed. 101; Meriwether v. Garrett, 102 U.S. 472, 513, 26 L.Ed. 197. Nevertheless, a tax may be considered a debt within the meaning of a statute, if the legislative intent can be plainly inferred. Thus it was held in Price v. U.S. 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373, that the word "debts" includes taxes in R.S. Sec. 3466 (31 USCA 191), which provides that whenever any person indebted to the United States is insolvent, or the estate of a deceased debtor is insufficient to pay all the debts due by the deceased, the debts due the United States shall be first satisfied; and it was pointed out that in the absence of another remedy made exclusive, an action of debt lies to recover taxes where the amount due is certain or may be made certain. It was thought that the purpose of the statute should not be defeated by unnecessarily restricting the application of the word within a narrow or technical meaning, as was done under different circumstances in the cases cited. | Transferee of all assets and business of corporation engaged in manufacturing steel and iron products, under clause in contract requiring transferee to pay and discharge all "debts" of transferor corporation, held liable for unpaid excess profits tax assessed against transferor for year in which transfer was made. Revenue Act 1926, S 280(a)(1), 26 U.S.C.A.Int.Rev.Acts, page 212. | Are taxes imposed for public purposes? | 045897.docx | LEGALEASE-00149229-LEGALEASE-00149230 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 21538 | Womack v. McCook Bros. Funeral Home, 194 La. 296 | 371+2001 | Taxes are not debts. Debts are obligations for the payment of money founded upon contract, express or implied. Taxes are imposts levied for the support of the government, or for some special purpose authorized by it. The consent of the tax-payer is not necessary to their enforcement." Meriwether v. Garrett, 102 U.S. 472, 513, 26 L.Ed. 197. See, also, Lane County v. Oregon, 7 Wall. 71, 19 L.Ed. 101; and State of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 140, 51 L.Ed. 284. Consequently, the sale of plaintiff's interest in the community was null and void and not an informality within the contemplation of Article 3543 of the Revised Civil Code, as amended by Act No. 231 of 1932, curable by the prescription of two years. | "Taxes" are imposts levied for support of government or for some special purpose authorized by it, consent of taxpayer being unnecessary to their enforcement, and are not "debts" which are obligations for payment of money founded upon contract, express or implied. | Is the consent of the tax-payer necessary to their enforcement? | 045901.docx | LEGALEASE-00149247-LEGALEASE-00149248 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 21539 | United States v. City of Columbia, Mo., 914 F.2d 151 | 371+2006 | The district court believed that "[t]he correct approach for determining whether a charge is a tax is found in United States v. Maryland, 471 F.Supp. 1030, 1036 (D.Md.1979)." City of Columbia, 709 F.Supp. at 179. There the court addressed whether a state's charge of an "environmental surcharge" against federal agencies purchasing electricity within the state was a tax. The court relied on the definition provided in United States v. LaFranca, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931), where the Court stated that a tax is an "enforced contribution to provide for the support of government." The Maryland court noted that it was clear that Maryland's surcharge was used to benefit the general public, and went on to state that "[t]he fact that obvious benefits accrue to the general public conclusively establishes that Maryland's environmental surcharge is a tax and not a utility rate." Maryland, 471 F.Supp. at 1036 (citation omitted). Relying on Maryland, the district court in this case believed that the dispositive feature of the PILOT that establishes that it is a tax is the fact that it is earmarked for the City's general revenue fund, which benefits the general public and not just utility customers. City of Columbia, 709 F.Supp. at 180. | Component of city's utility rate, known as "payment in lieu of taxes," charged to Veterans Administration hospital did not constitute impermissible tax on federal government but rather was simply profit component of city's utility rate, which was measured by lost tax revenue, despite federal government's claim that charge was referred to as "tax" in ordinance and was charged "in lieu of tax." U.S.C.A. Const. Art. 6, cl. 2. | Are taxes enforced contribution to the government? | 045921.docx | LEGALEASE-00149345-LEGALEASE-00149347 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 21540 | Trimble v. State, 4 Blackf. 435 | 156+113 | The obligors in an administration-bond are estopped, by the recital in the bond, from denying the appointment of the administrator. A Pick. Rep., 386; see, also, 3 Id., 38. Numerous other cases might be cited to the same effect. See, Com. Dig. "Estoppel," A. 2. But in the language of Judge Daggett, in the case of Stow v. Wyse, 2 Conn. Rep., 214, "without multiplying authorities upon a point rendered clear by numerous cases, it is sufficient to state, that where a party has solemnly admitted a fact by deed under his hand and seal, he is estopped not only from disputing the deed itself, but every fact which it recites." | If the declaration show that the defendant is estopped to deny the facts contained in his plea, the plaintiff need not reply the estoppel, but demur. | "In an administration bond, are the obligors estopped from denying the appointment of the administrator?" | Estoppel - Memo #40 - C_59029.docx | ROSS-003293233-ROSS-003293234 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21541 | Schultes v. Eberly, 82 Ala. 242 | 371+2016 | The Cullman school"district is not created a corporation in terms; but we shall regard it, by implication, a public corporation, being for public purposes, as otherwise it would be a palpable violation of the constitutional prohibition, "No power to levy taxes shall be delegated to individuals or private corporations." There being no express authority conferred, the power to delegate must be implied; but the implication only extends to such public corporations as are established exceptions to the general rule of incompetency to delegate. | The legislative assembly has no right to delegate the power of taxation to a school district. | Whom can the power to tax be delegated to? | 045975.docx | LEGALEASE-00150248-LEGALEASE-00150249 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21542 | Welsh v. Ebersole, 75 Va. 651 | 185+35 | It is in the nature of a warranty that the maker will pay the note upon presentation at maturity, and if not so paid, he, the endorser, will, upon due and reasonable notice of the dishonor of the note, pay the same to the holder. The term "endorse," therefore, when applied to bills of exchange and other negotiable instruments, imports a transfer of the legal title. But with respect to bonds and other securities not negotiable, the equitable title passes by assignment only. And this court in Bank of Marietta v. Pindall, 2 Ran. 475, said, as to these common law obligations, endorsement is not equivalent to assignment. As to these assignments meaning more than endorsement: it means endorsement by one party with intent to assign and an acceptance of that assignment by the other party. That case, however, and the case of Freeman's Bank v. Ruckman, 16 Gratt. 126, seem to establish fully the doctrine that endorsement of the obligee's name upon the bond accompanying the transfer may be declared on as a common law assignment, and that an averment that the instrument was endorsed and delivered is in effect an averment that it was assigned. Both of these cases were, however, decided upon a demurrer to the declaration. | In an action to recover the amount of a bond, executed by a third person to defendant, transferred to plaintiff with defendant's name indorsed thereon in blank, the declaration contained three counts. In the first count plaintiff declared on the bond as assigned to him by defendant. The second count alleged that the third person was indebted to plaintiff for the purchase-money for a tract of land sold by plaintiff to him, and that the third person preferred to give personal security for the debt rather than a loan on the land, and offered defendant as a guarantor, who, in consideration of the premises and the fact that plaintiff would not reserve a vendor's lien, guarantied the payment of the debt, which guaranty was evidenced by the bond of the third person payable to defendant, and indorsed by him to plaintiff; that plaintiff obtained judgment on the bond against the third person, but recovered nothing. Held, that plaintiff was not precluded from proving his case by parol testimony, and recovering on it when so proved. | Is the endorsement of a non- negotiable note equivalent to its assignment? | 010371.docx | LEGALEASE-00151148-LEGALEASE-00151149 | | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 21543 | Morris v. Preston, 93 Ill. 215 | 83E+540 | If the purchases in good faith the law will protect him. With all such paper possession is evidence of ownership, and the commercial value of such paper would be greatly impaired and its negotiability would be destroyed if the taker was required to investigate the title and to seek for latent equities before receiving it. But the law has imposed no such burthen upon him until he has notice, or knowledge of facts which on inquiry would lead to notice. | Bills and notes indorsed in blank pass by delivery. The purchaser is not bound to inquire as to the title of the holder, unless he has knowledge of facts which, on inquiry, would lead to notice. So held as to notes placed in the hands of a banker, to sell for the payee as her agent, but who pledged them to secure a debt owing by himself to another bank; there being nothing to excite the pledgee's suspicion that her indorsement in blank did not make him absolute owner. | Is possession of notes evidence of title or ownership? | 010803.docx | LEGALEASE-00151242-LEGALEASE-00151243 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 21544 | Ingram v. Mortg. Elec. Registration Sys., 94 A.3d 523 | 266+1409 | The plaintiffs also contend that there is a factual dispute as to the validity of the endorsement of the note in blank by IndyMac. We also resolved this issue in Mruk. In Mruk, 82 A.3d at 533, we recognized the validity of endorsements in blank and concluded that "[t]he plaintiffs['] unsupported challenges to the validity of the endorsement in blank are not sufficient to create a disputed issue of material fact." Similarly, here, plaintiffs have pointed to no evidence to support their contention that the note was invalidly endorsed to Deutsche Bank. | No evidence existed to support mortgagors' contention that promissory note that was endorsed in blank was invalidly endorsed to the note holder. | Is validity of endorsement in blank recognized? | Bills and Notes-Memo 1169-ANM_59668.docx | ROSS-003282481-ROSS-003282482 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 21545 | Gomes v. Cty. of Monmouth, 444 N.J. Super. 479 | 268+741.25 | In considering these arguments, we adhere to the well-established principle that before a court dismisses a civil complaint with prejudice, it must "search the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart"Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App.Div.1957)). | Notice provisions of Tort Claims Act do not require courts to treat private independent contractors to a governmental agency as a public entity that must be served with tort claims notices as a precondition to them being sued. N.J.S.A. 59:8-8, 59:8-9. | "Before a court dismisses a civil complaint with prejudice, should it search the complaint in depth and with liberality?" | Pretrial Procedure - Memo # 8473 - C - SKG_59172.docx | ROSS-003282071-ROSS-003282072 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21546 | Crest Res. v. Dan Blocker Petroleum Consultants, 865 F. Supp. 2d 1113 | 308+99 | "Actual authority may be expressed and implied." Id. "Express authority is delegated to an agent by words of the principal that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal." Id. "Implied authority is the authority of an agent to do whatever is necessary and proper to carry out the agent's express powers." Therefore, implied agency "exists only as an adjunct to express actual authority," and "an agent who does not have express authority cannot have implied authority." Id. | Under Texas law, apparent authority to act for principal is based on estoppel, and only the conduct of the principal in leading a third party to believe that the agent has authority may be considered; therefore, a reviewing court looks to acts of participation, knowledge, or acquiescence by the principal. | When is an agents authority implied? | 041432.docx | LEGALEASE-00151194-LEGALEASE-00151195 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 21547 | Estate of Orbie Coggins ex rel. Brooks v. Wapato Point Mgmt. Co. Health & Welfare Plan, 22 F. Supp. 3d 1152 | 231H+1549(12) | Even if the grievance procedure did not apply directly to Plaintiff's claim, however, Plaintiff would be estopped from evading the requirement to exhaust administrative remedies. "Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." " Comer, 436 F.3d at 1101 (quoting Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 (5th Cir.2004)). In Comer, the Ninth Circuit held that equitable estoppel did not obligate Comer to arbitrate his claim because there was no evidence that he had knowingly exploited the investment management agreements that contained the arbitration clauses. Id. at 1102. Comer had not sought to enforce the terms of the agreements, "[n]or did he do so by bringing [the] lawsuit, which he base[d] entirely on ERISA, and not on the investment management agreements." Id. | Estate of deceased employee was equitably estopped from evading the requirement that he exhaust the grievance procedure set forth in the collective bargaining agreement (CBA) before filing Employee Retirement Income Security Act (ERISA) action against employer, alleging that estate was entitled to more than $10,000 in life insurance benefits because the employer breached its fiduciary duty by failing to notify employee about the termination of life insurance coverage of two times employee's annual salary; the CBA's grievance procedure constituted the sole and exclusive method of adjusting all complaints or disputes related to employee's benefits, and estate argued that life insurance coverage of two times employee's annual salary remained in place at conclusion of CBA negotiations. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq. | Does equitable estoppel preclude a party from claiming the benefits of a contract? | 007997.docx | LEGALEASE-00151460-LEGALEASE-00151461 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 21548 | Anchor Loan Co. v. Willett, 137 N.E.2d 532 | 83E+481 | The question is further raised as to the alleged failure to notify defendant of the assignment. This argument is not tenable since there is no law requiring notification of an assignment. Further, the argument could have no merit in any event herein since the evidence discloses that the defendant knew that Anchor Loan was the owner since he made payments on the note at the office of Anchor Loan. | The assignor of a note is not required to give the parties to the note notification of an assignment. | Is notice essential for an assignment? | 009926.docx | LEGALEASE-00151795-LEGALEASE-00151796 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 21549 | Antanuos v. First Nat. Bank of Arizona, 508 F. Supp. 2d 466 | 172H+1362 | 15 U.S.C. " 1635(a) (emphasis added). The plain statutory text of " 1635 provides that a debtor's right to rescind arises only when the loan transaction is secured by the debtor's "principal dwelling." Although TILA itself does not define a "principal dwelling," Title 12 of the Code of Federal Regulations implementing TILA, known as Regulation Z, provides some guidance. First, Regulation Z defines a "dwelling" as "a residential structure that contains 1 to 4 units, whether or not that structure is attached to real property." 12 C.F.R. " 226.2(a)(19) (2007). Second, it provides that "[a] consumer can only have one principal dwelling at a time. Thus, a vacation or other second home would not be a principal dwelling." 12 C.F.R. " 226 Supp. I, Section 226.2(a)(24)(3) (2007) (emphasis in original); see also Scott v. Wells Fargo Home Mortgage, Inc., 326 F.Supp.2d 709, 715 (quoting Scott v. Long Island Sav. Bank, 937 F.2d 738, 741 (2d Cir.1991)). | Truth in Lending Act (TILA) applies only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor; credit transactions secured by real or personal property used for other purposes, such as commercial rental property, fall outside the scope of TILA's coverage. Truth in Lending Act, § 104, 15 U.S.C.A. § 1603; 12 C.F.R. § 226.3(b). | What is the definition of Dwelling? | Consumer Credit - Memo 30 - RK_59562.docx | ROSS-003293759-ROSS-003293760 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21550 | JPMorgan Chase Bank, Nat. Ass'n v. Weinberger, 142 A.D.3d 643 | 266+1791 | Here, the Bank established, prima facie, that it had standing to prosecute this action by demonstrating that it was in physical possession of the note, which was annexed to the complaint, at the time the action was commenced (see Aurora Loan Servs., LLC v. Taylor, 25 N.Y.3d at 362, 12 N.Y.S.3d 612, 34 N.E.3d 363; Deutsche Bank Natl. Trust Co. v. Leigh, 137 A.D.3d 841, 842, 28 N.Y.S.3d 86; Emigrant Bank v. Larizza, 129 A.D.3d 904, 905, 13 N.Y.S.3d 129). The homeowner's contention that the vice president's affidavit was insufficient to establish the Bank's standing since it failed to give factual details as to the physical delivery of the note is without merit. "An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed" (UCC 3"204[2] ). " 'Bearer' means a person in possession of a negotiable instrument" (UCC 1"201[b][5] ). There is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into possession of the instrument in order to be able to enforce it (see UCC 3"204[2] ). Moreover, it is unnecessary to give factual details of the delivery in order to establish that possession was obtained prior to a particular date (see Aurora Loan Servs., LLC v. Taylor, 25 N.Y.3d at 362, 12 N.Y.S.3d 612, 34 N.E.3d 363). | In order to establish standing to bring foreclosure action, it is unnecessary to give factual details of delivery of the note in order to establish that possession was obtained prior to a particular date. | "When a note is endorsed in blank, can it be negotiated by delivery alone?" | Bills and Notes-Memo 1052-ANM_60035.docx | ROSS-003309012-ROSS-003309013 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21551 | Miron Rapid Mix Concrete Corp. v. Bank Hapoalim, B.M., 105 Misc. 2d 630 | 172H+591 | The primary issue raised herein revolves around the meaning of the (/), or virgule, between the names of the two payees on the check in question. By various dictionary definitions, the symbol (/), or virgule, denotes the disjunctive or alternative. "Virgule" is defined as follows: "In modern printing and writing, a short slanting stroke drawn between two words, usually "and" and "or" (thus, and/or), and indicting that either may be used by the reader to interpret the sense." (Webster's New International Dictionary of the English Language.) (Funk & Wagnalls Standard Desk Dictionary, the Random House Dictionary of the English Language, UnAbridged (1966), and the American Heritage Dictionary of the English Language (1969)). | Check made payable to order of two payees whose names are separated by diagonal slash, or "virgule" symbol, is properly paid by bank with endorsement of only one of named payees. Uniform Commercial Code, S 3-116. | Is a short slanting stroke drawn between two words a virgule? | 010753.docx | LEGALEASE-00152465-LEGALEASE-00152466 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21552 | Steed v. Bain-Holloway, 356 P.3d 62 | 30+3200 | The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts. Darrow v. Integris Health, Inc., 2008 OK 1, 7, 176 P.3d 1204, 1208. Generally, a petition may be dismissed as a matter of law for two reasons: (1) lack of any cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Indiana National Bank v. State Department of Human Services, 1994 OK 98, 4, 880 P.2d 371, 375. A trial court's judgment dismissing a petition is reviewed de novo. Porter v. Oklahoma Farm Bureau Mutual Ins. Co., 2014 OK 50, 9, 330 P.3d 511, 514. | A trial court's judgment dismissing a petition is reviewed de novo. | Can a petition generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory? | 037609.docx | LEGALEASE-00151937-LEGALEASE-00151938 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | 1 |
| 21553 | First Nat. Bank v. Sprout, 78 Neb. 187 | 83E+863 | It appears from the discussion of counsel that the reason which prompted the trial court to direct a verdict for the defendant was that the offer of the note in evidence did not include the indorsement of the payee, and because of the failure to prove the indorsement the plaintiff was not entitled to recover. Proof of the indorsement, however, under the allegations of the petition and the evidence of ownership, was not indispensable to the plaintiff's case. In Michigan Mutual Life Insurance Co. v. Klatt, 2 Neb. (Unof.) 870, 90 N. W. 754, it was held that possession of a promissory note is prima facie evidence of its ownership. That action was one in equity for the foreclosure of a real estate mortgage, and the holding was in accord with the equitable rule; but it does not follow that under the same statement of facts an action at law could not be maintained against the maker of the note. A parol transfer by the payee without indorsement of a check payable to order, accompanied by manual delivery, is valid. Freundt. Bank, 76N. Y. 352. A transferee of negotiable paper, without indorsement, may recover thereon by proving consideration. Farris v. Wells, 68 Ga. 604. In Tullis v. Fridley, 9 Minn. 79 (Gil. 68), it was held that where a promissory note, payable to the husband, is transferred by him directly to his wife, without indorsement, the title thereto vests in her so far as the maker is concerned, although she paid no valuable consideration for such transfer. A person who has acquired the ownership and possession of a promissory note may bring suit thereon in his own name as the real party in interest, though no indorsement of the note has been made to him by the payee. Pearson v. Cummings, 28 Iowa, 344. | The transferee of a negotiable promissory note, who has purchased the same in the usual course for value, may bring an action at law against the maker without proof of indorsement. | Is a parol transfer by the payee without indorsement of a check payable to order accompanied by manual delivery valid? | Bills and Notes - Memo 834 - RK_60287.docx | ROSS-003283021-ROSS-003283022 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21554 | In re J.H. Jackson Co., 15 F.2d 614 | 51+3063.1 | If there had been no answer on the part of Jackson, there would have been a statement that he had the books, etc., and nothing to controvert that, so the order would have passed. But by the filing of the answering affidavit there was in substance a pleading offered, setting forth new matter; that is, new in the form of a pleading. But this new matter is obviously false, in the sense of being wholly unworthy of belief. It formally introduced a defense, but the defense was sham; i.e., one which is palpably false. Witherell v. Wiberg, 4 Sawy. 232, Fed. Cas. No. 17,917. Now a sham answer or a sham defense may be stricken out, and the case is then left as if no defense had been offered. The practice is too familiar in New York to need citations. | Defense of loss of books by leaving in taxicab held properly stricken as sham, and turnover order properly entered. | Is a sham defense one which is palpably false? | 023706.docx | LEGALEASE-00153293-LEGALEASE-00153294 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21555 | Green v. Green, 64 Md. App. 122 | 134+781 | Resolution of this issue requires scrutiny of the word "acquired" as used in Section 3"6A"01(e). As previously explained the Court of Appeals has defined the term as "the on-going process of making payment for property." Harper, supra [294 Md.] at 80, 448 A.2d 916. We hold under the facts of this case that the payment of taxes is not a part of the ongoing process of paying for property fully purchased prior to the marriage. Property tax is the "charge on the owner of a property by reason of his ownership alone without regard to any use that might be made of it." Weaver v. Prince George's Co., 281 Md. 349, 357, 379 A.2d 399 (1977) (emphasis added) [and cases cited therein]. "A tax on the mere right to own or have property is a property tax." Id. (emphasis added). Simply stated, payment of property tax does not involve the acquisition of land. We do not believe that the legislature intended that the joint payment of a tax incident to ownership of property would change the characterization of nonmarital to marital property. | In determining monetary award of marital property, court shall determine which property is marital property, determine value of all marital property, and may then grant monetary award as an adjustment of the equities in rights of parties concerning marital property, whether or not alimony is awarded. Code, Family Law S 8-201(e). | Is property tax a tax on the mere right to own or have property? | Taxation - Memo # 908 - C - JL_60613.docx | ROSS-003293223-ROSS-003293224 | Condensed, SA | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21556 | Brown v. Bell, 291 Ark. 116 | 191+31(2) | The appellant contends the court erred in holding the notes could be given or beneficially transferred absent indorsement of the decedent who was the payee of the notes. She contends that the bill of sale was an assignment of the notes which we held was prohibited by the Uniform Commercial Code in McIlroyBankv. FirstNationalBankofFayetteville,252Ark. 558, 480S.W.2d127 (1972). In that case a bank took possession of a note made payable to its debtor as security for the debtor's obligation to the bank. The bank returned the note to the debtor who held it for a year and reduced it to judgment without the knowledge of the bank. The bank claimed it had a valid equitable assignment of the note. We pointed out that assignment of notes is not permitted under Ark.Stat.Ann. "" 85"3"201 through 85"3"208 (Add.1961). We said that those sections permit a note to be transferred or negotiated but not assigned | While indorsement of note payable "to order" was required to negotiate in favor of one who becomes a holder in due course, donor's rights in such instrument may be transferred by gift without indorsement. Ark.Stats. SS 85-3-201 to 85-3-208, 85-3-201 comment, 85-3-202(1). | Is an assignment of a note permitted? | Bills and Notes - Memo 959 - RK_60817.docx | ROSS-003320876-ROSS-003320877 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21557 | Sweezy v. State of N.H. by Wyman, 354 U.S. 234 | 92+1078 | It is the business of a university to provide that atmosphere which is most conducive to speculation, experiment and creation. It is an atmosphere in which there prevail "the four essential freedoms' of a university"to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." The Open Universities in South Africa 10"12. (A statement of a conference of senior scholars from theUniversity of Cape Town and the University of the Witwatersrand, including A. v. d. S. Centlivres and Richard Feetham, as Chancellors of the respective universities. | Where college professor was questioned by state Attorney General, pursuant to authorization by state Legislature, concerning content of professor's lectures and his knowledge of particular political party and its adherents, contempt conviction for refusal to answer was an invasion of professor's liberties in the areas of academic freedom and political expression. U.S.C.A.Const. Amends. 1, 5, 14; Const.N.H. pt. 1, art. 15; RSA N.H. S88:1-S88:16. | Does the university have an essential freedom to determine for itself on academic grounds who may be admitted to study? | 016792.docx | LEGALEASE-00153836-LEGALEASE-00153837 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 21558 | Estate of Linnick, 171 Cal. App. 3d 752 | 46H+266(1) | "The nature of an action and the issues involved are to be determined, not from the appellation given the pleading, but from the facts alleged and the relief that they support." (Bloniarz v. Roloson (1969) 70 Cal.2d 143, 149, 74 Cal.Rptr. 285, 449 P.2d 221; accord (De Lancie v. Superior Court (1982) 31 Cal.3d 865, 869, 183 Cal.Rptr. 866, 647 P.2d 142; Shimmon v. Moore (1951) 104 Cal.App.2d 554, 557, 232 P.2d 22.) In the case at bar, the Estate filed a complaint under Probate Code section 615.5 The Estate requested a citation be issued to Berg & Spire requiring them to give a full accounting of the monies received or to be received under the contingent fee contract between Bankers Life and the law firm. The Estate also requested if the court found these funds in fact belonged to the Estate, the court should order the law firm to pay the funds already received to the Estate and relinquish any claim to future payments. This latter relief sought exceeded the scope of section 615. | Attorney representing vendor of property under contingent fee arrangement did not, at time he died, have a sufficient claim to attorney fees to entitle his estate to bring, under West's Ann.Cal.Prob.Code S 851.5, which provides for hearing of petition by decedent's estate concerning any claim involving property allegedly wrongfully possessed by another, an action against law firm which succeeded decedent/attorney for fees paid firm on completion of sale of property. | Does the appellation given to a pleading determine the nature of an action and the issues involved? | Pleading - Memo 537-RMM_61225.docx | ROSS-003292613-ROSS-003292614 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21559 | Seminole Tribe of Florida v. State, Dep't of Revenue, 202 So. 3d 971 | 336H+284 | "Typically affirmative defenses, like res judicata in this case, cannot be properly considered on a motion to dismiss." May v. Salter, 139 So.3d 375, 376 (Fla. 1st DCA 2014). However, there is an exception to the rule when the prior litigation is plain from the face of the complaint and the party properly requests the court to take judicial notice of prior proceedings. See Livingston v. Spires, 481 So.2d 87, 88 (Fla. 1st DCA 1986). | The doctrine of res judicata makes a judgment on the merits conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action. | "Can affirmative defenses, like res judicata, be properly considered on a motion to dismiss?" | Pretrial Procedure - Memo # 9354 - C - KS_61246.docx | ROSS-003279128 | Condensed, SA | 0.38 | 0 | 1 | 1 | 0 | 1 |
| 21560 | Headwaters v. Bureau of Land Mgmt., Medford Dist., 914 F.2d 1174 | 149E+601 | Our role is limited to ensuring that the BLM based its decision "on a consideration of the relevant factors" and that it did not commit "a clear error of judgment." Marsh, 109 S.Ct. at 1861 (internal quotations and citation omitted). Based upon this limited scope of review, we have little difficulty upholding the BLM decision. The agency was advised of Sisco's testimony, the Lande study, and the owl sighting. However, the BLM credited the conclusions of its own experts in deciding that the additional information was not significant. While the merits of that decision may be fairly debated, we cannot say that the agency committed a "clear error of judgment." An agency is entitled to rely upon the reasonable conclusions of its own experts. As in Marsh, "having determined based on careful scientific analysis that the new information was of exaggerated importance, the [agency] acted within the dictates of NEPA in concluding that supplementation was unnecessary. Even if another decision-maker might have reached a contrary result, it was surely not "a clear error of judgment" for the [agency] to have found that the new and accurate information contained in the documents was not significant and that the significant information was not new and accurate.". It was not arbitrary or capricious to conclude that Headwaters's "new" evidence was either not credible, lacking significance, or adequately addressed in the existing statements. | Section of NEPA requiring federal agency to give detailed statement on alternatives to the proposed action and to describe appropriate alternatives does not require the consideration of alternatives whose effect cannot be reasonably ascertained, and whose implementation is deemed remote and speculative; furthermore, an agency need not consider alternatives which are infeasible, ineffective, or inconsistent with the basic policy objectives for the management of the area. National Environmental Policy Act of 1969, S 102, 42 U.S.C.A. S 4332. | Can an agency rely upon the reasonable conclusions of its own experts? | Woods and Forests - Memo 84 - RK_61329.docx | ROSS-003294195-ROSS-003294196 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21561 | Lockett v. Planned Parenthood of Indiana, 42 N.E.3d 119 | 156+12 | The doctrine of estoppel springs from equitable principles and is designed to aid in the administration of justice where, without its aid, injustice might result. Levin v. Levin, 645 N.E.2d 601, 604 (Ind.1994). Equitable estoppel is available only as a defense. Town of New Chicago v. City of Lake Station, 939 N.E.2d 638, 653 (Ind.Ct.App.2010). The party claiming estoppel has the burden to show all facts necessary to establish it. *136 Id. 653 (citing Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n, 819 N.E.2d 55, 67 (Ind.2004)). "The party claiming equitable estoppel must show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." Money Store Inv. Corp. v. Summers, 849 N.E.2d 544, 547 (Ind.2006). | Various "estoppel" doctrines, including estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel, promissory estoppel, and judicial estoppel, are all based on the same underlying principle: one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other. | Is equitable estoppel available only as a defense? | 018093.docx | LEGALEASE-00155370-LEGALEASE-00155371 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21562 | Noble v. Nugent, 89 Ill. 522 | 308+105(3) | The authority of an agent being limited to a particular business, does not make it special; it may be as general in regard to that as if its range was unlimited. Anderson v. Coonley, 21 Wendell, 279. The acts of a general agent, or one whom a man puts in his place to transact all his business of a particular kind, will bind the principal so long as the agent keeps within the scope of his authority, though he may act contrary to his private instructions. The United States Life Insurance Co. v. The Advance Co. 80 Ill. 549; Harris v. Simmerman et al. 81 Id. 413. | A., through the agency of C., obtained a loan of money from B., who lived some distance away in the country, said loan being secured by a deed of trust from A. to C., and one of the notes given therefor being made payable to C. It appeared that C. had been for a number of years B.'s agent in loaning and collecting his money, and that C. was in the habit of making statements to him of the funds which had passed through his hands. B. admitted that he had received from C. the money due on some of the notes which had been paid by A. to C., and also certain installments of interest on another of the notes, after the same had matured. Held, that A., having received no notice from B. not to pay over the money to C., was protected in making subsequent payments to C. | Does the authority of an agent being limited to a particular business make it special? | 041598.docx | LEGALEASE-00155633-LEGALEASE-00155634 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 21563 | Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876 | 316P+286 | In short, the University functions in some ways like an independent sovereign, retaining a degree of control over the terms and scope of its own liability. Given the University's unique constitutional status, it is not surprising that the Legislature would take a deferential approach when authorizing damages actions against the University. Thus, section 8547.10, subdivision (c), gives the University the flexibility appropriate to a semiautonomous branch of the state government to create its own mechanism for resolving whistleblower retaliation claims, but it also provides an alternative remedy when the University's remedy is withheld. A damages action in state court may afford complainants a more favorable forum because the fact finder in state court is not a University employee, and because other procedural protections apply, such as evidentiary rules, testimony under penalty of perjury, and cross-examination of witnesses. But the appropriateness of granting these procedural protections to University whistleblowers is a matter of policy that is not for this court to determine. | Existence of inactive bill that would amend statute governing whistleblower complaints against the University of California in a way that paralleled earlier amendment of statute governing whistleblower complaints by other state employees was relevant to analysis of legislative history of unamended statute, to show that restrictive language of unamended statute was brought to Legislature's attention and therefore that Legislature's failure to amend that section was not necessarily a matter of ina dvertence or oversight. West's Ann.Cal.Gov.Code §§ 8547.8(c), 8547.10(c). | Do universities function in some ways like an independent sovereign? | 016852.docx | LEGALEASE-00156333-LEGALEASE-00156334 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 21564 | Gay v. City of Wichita Falls, 457 S.W.3d 499 | 156+62.4 | Governmental immunity from suit defeats a trial court subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. Texas Dept. of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 225*26 (Tex.2004). To invoke a trial court jurisdiction, a plaintiff suing a municipality must allege a valid waiver of governmental immunity and plead sufficient facts demonstrating jurisdiction. Id. at 226. In reviewing a ruling on a plea to the jurisdiction, we do not consider the merits of the cause of action, but examine only the plaintiff pleadings and any evidence relevant to the jurisdictional inquiry. Id. at 227; County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.2002). Pleadings must be construed liberally in the plaintiffs favor. Miranda, 133 S.W.3d at 227. The existence of subject matter jurisdiction is a question of law that we review de novo. IT'Davy, 74 S.W.3d at 855. If the suit is barred by governmental immunity, dismissal with prejudice is mandatory. Harris County v. Sykes, 136 S.W.3d 635, 637 (Tex.2004). | City was immune from suit from retired city employees' promissory estoppel claim against city arising out of denial of employees' claims for long-term disability benefits; applicable statutory waiver of governmental immunity applied only to a written contract, and an implied contract was not a written contract. V.T.C.A., Local Government Code S 271.152. | "If a suit is barred by governmental immunity, is dismissal with prejudice mandatory?" | Pretrial Procedure - Memo # 10240 - C - NE_61745.docx | ROSS-003294062-ROSS-003294063 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 21565 | Chamberlain v. New Hampshire Fire Ins. Co., 55 N.H. 249 | 217+3567 | A payment to the plaintiff would be a bar to a recovery by White, because by the terms the payment was to be so made, and White assented to it. Although the equitable interest of the assignee will be protected, yet ordinarily and at common law he cannot maintain a suit upon the original policy in his own name, but must sue in the name of the assignor. But if the insurer, upon notice of the assignment, promises the assignee to pay the insurance to him in case of loss, the assignee can, upon proper averments, maintain a suit upon this policy in his own name. Pierce v. Ins. Co., 50 N. H. 297; Foster v. Ins. Co., 2 Gray 216. There seems to be no difference in principle between the case cited and the case at bar, and the practical difference consists in this,--that in the former, the promise to pay was made upon a good consideration, subsequent to the issuing of the policy, and in the latter, it was made upon an equally valid consideration at the time of issuing the policy. | A mortgagee, who, with the mortgagor's consent, obtains a fire policy upon the mortgaged premises, payable in case of loss to the mortgagee, who paid the premium, the mortgagor having no negotiations with the company, is the proper party to maintain an action on the policy to recover, not only the extent of his own interest, but also the interest of the mortgagor secured by the policy. | Can an assignee sue in the name of the assignor? | 009067.docx | LEGALEASE-00156518-LEGALEASE-00156519 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 21566 | Nordin v. First Tr. & Sav. Bank of Pasadena, 118 Cal. App. 697 | 83E+374 | An endorsement may be in blank notwithstanding words which limit or enlarge the liability of the endorser, such as "without recourse" or "demand, notice and protest waived." " It is held in Eames v. Crosier et al., 101 Cal. 260, 35 P. 873, that the effect of an indorsement in blank is to make the paper payable to the holder, not as an indorsee, but as the bearer. Section 3115 of the Civil Code provides that: "An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery." It is the holding in Curtis v. Wasem, 96 Cal. App. 604, 274 P. 607, that an indorsement in blank upon the back of a note is a sufficient indorsement without additional words, and is an assignment in writing. | Payee's indorsement of mortgage notes in blank and deposit of them with bank as collateral made them negotiable and transferable by delivery. Civ.Code S 3115. | Is indorsement without additional words a sufficient indorsement? | 010884.docx | LEGALEASE-00157431-LEGALEASE-00157433 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21567 | Adden v. Middlebrooks, 688 F.2d 1147 | 92+3964 | When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader. | Power of federal court entertaining case based on diversity of citizenship to exercise personal jurisdiction over nonresident defendants turns on two independent considerations: whether applicable state rule or state potentially confers in personam jurisdiction over defendants and, if it does, whether assertion of such jurisdiction is commensurate with due process. U.S.C.A.Const.Amends. 5, 14; 28 U.S.C.A. S 1332. | Can it appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test when a court reviews the sufficiency of a complaint? | 024773.docx | LEGALEASE-00156709-LEGALEASE-00156710 | Condensed, SA, Sub | 0.4 | 0 | 1 | | 1 | 1 |
| 21568 | Duffy v. Lawyers Title Ins. Co., 972 F. Supp. 2d 683 | 122A+13 | Plaintiffs contend that Fidelity is liable for deceptive conduct through the actions of its closing agent First County, because First County acted with express authority on the terms of the agency agreement between itself and Fidelity. "'An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent.' " AT & T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1434 (3d Cir.1994) (quoting Sears Mortg. Corp. v. Rose, 134 N.J. 326, 634 A.2d 74, 79 (1993)). Vicarious liability due to an agency relationship can be based on the agent's actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency " 2.01 (2006). | Under Pennsylvania law, no agency relationship existed between title agent and title insurer for anything outside scope of selling title insurance, and thus insurer was not vicariously liable for agent's participation in mortgage rescue scam, where agency agreement stated that "any escrow or closing business conducted by Agent is not within the scope of this Agreement," and payoff liens and encumbrances by agent in connection with transactions at issue were undertaken in agent's role as closing agent, insurer's participation in contract did not occur until after premium was remitted, current title insurance policies that were issued to purchasers of properties were still open, and insurer had no contact with defrauded owners. | When is an agency relationship created? | Principal and Agent - Memo 491 - KK_62694.docx | ROSS-003278769-ROSS-003278770 | Condensed, SA, Sub | 0.23 | 0 | 1 | | 1 | 1 |
| 21569 | State v. Lanclos, 980 So. 2d 643 | 48A+361 | After examining the statute, we found that the money collected did not go to court services, or to any other entity associated with the judicial system. Instead, the money went to a private, nonprofit corporation to be used at its discretion for domestic violence programs. Because the "fee" was not assessed to defray the expenses of litigation or to support the court system, and was a revenue raising measure designed to fund a particular social program, we found that the "fee" imposed by the statute was, in reality, a tax. Safety Net, 692 So.2d at 1041. We noted that "[a] charge that has as its primary purpose the raising of revenue, as opposed to the regulation of public order, is a tax. Id. Moreover, a tax is a charge that is unrelated to or materially exceeds the special benefits conferred upon those assessed." Id. [citing Audubon Insurance Co. v. Bernard, 434 So.2d 1072, 1074 (La.1983); 4 Cooley, The Law of Taxation, Ch. 29, " 1784 (4th ed.1924) ]. | Statutory assessment of $5 if motor vehicle offense was committed on the Huey P. Long Bridge or the Lake Pontchartrain Causeway Bridge was a "tax" funded through the judiciary in violation of the separation of powers; the cost was collected to supplement police salaries and acquire and maintain police equipment, and although police department could be considered a link in the chain of the criminal justice system, police salaries and uniform equipment and maintenance were too far attenuated from the administration of justice to be legitimate court cost. LSA-Const. Art. 2, SS 1, 2; LSA-R.S. 32:57(G). | "Where an imposition materially exceeds the special benefits conferred upon those assessed, is such imposition a tax?" | 044512.docx | LEGALEASE-00157335-LEGALEASE-00157336 | Condensed, SA, Sub | 0.37 | 0 | 1 | | 1 | 1 |
| 21570 | Fjeldahl v. Homer Co-Op. Ass'N, 11 Alaska 112 | 101+1577 | "Employment" means act of employing, state of being employed, that which engages or occupies, that which consumes time or attention, office or post of business, service, or occupation. Davis v. Lincoln County, 1928, 117 Neb. 148, 219 N.W. 899, 900. While perhaps other words than "employed" or "employment" could have been more aptly used in the pleadings in this case, the use of those words can not in any manner have deceived or misled the Association. Moreover, in the lien law we find the following: "Sec. 2085. No mistake in formality or lack of statement, either in the lien notice or the pleadings, shall be ground for dismissal or unnecessary delay in the action to foreclose a lien. * * *" | In action by co-operative corporation members against corporation to recover value of fish caught by members and marketed by corporation, complaint alleging that members were "employed" by corporation, and that "contract of employment" required corporation to pay certain price for fish to members, was not insufficient, notwithstanding that proof did not disclose a contract of employment in the ordinary sense, since the word "employment" could also mean "engaged" in fishing. Comp.Laws Alaska 1933, SS 2051, 2085, 2093. | "Is employment in general defined as the act of employing, the state of being employed, or that which consumes time or attention, occupation?" | Worker's Compensation - Memo #638 - C - ANC_63496.docx | ROSS-003298778-ROSS-003298779 | Condensed, SA, Sub | 0.24 | 0 | 1 | | 1 | 1 |
| 21571 | Bible Believers v. Wayne Cty., Mich., 805 F.3d 228 | 92+1847 | Moreover, despite Glasson's ultimate conclusion, the court in Glasson made clear that police officers "may discharge their duty of preserving the peace by ... removing the speaker for his own protection" when a hostile audience would unreasonably subject law enforcement to physical injury. 518 F.2d at 909. Such a pronouncement echoes a recurrent principle: the First Amendment does not afford one an unfettered right to exercise free speech in the face of jeopardizing the safety of members of the public. Police officers are charged with protecting the " 'lives, limbs, health, comfort, and quiet of all persons.' " Grider v. Abramson, 180 F.3d 739, 752 (6th Cir.1999) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). And the Supreme Court has made plain that when a "clear and present danger" of disorder or other "immediate threat to public safety" appears, "the power of the state to prevent or punish is obvious."Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). No court has ever recognized a First Amendment right that is so absolute that it can stymie police efforts to cope with highly volatile situations. Markedly, this court has emphasized that police officers must take the actions necessary to protect the physical safety of citizens and the overall public order. See Grider, 180 F.3d at 752. | When peaceful speaker, whose message is protected by First Amendment, is confronted by hostile crowd, state may not silence speaker as expedient alternative to containing or snuffing out rioting individuals' lawless behavior; overruling Glasson v. City of Louisville, 518 F.2d 899. U.S.C.A. Const.Amend. 1. | "Whether the state has the power to prevent or punish when a clear and present danger of riot, disorder, interference with traffic upon public streets, or other immediate threat to public safety, peace or order, appear?" | 014333.docx | LEGALEASE-00158887-LEGALEASE-00158888 | Condensed, SA, Sub | 0.78 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21572 | E.M. Bailey Distrib. Co. v. Conagra, 676 S.W.2d 770 | 183+3 | Any review of the law of franchise or privilege in a given jurisdiction can be ascertained only by a patient and careful examination of the course of judicial decisions in the light of constitutional provisions and legislative enactments. Under the early English law, Blackstone defines a franchise as "a royal privilege or branch of the king's prerogative subsisting in the hands of a subject." 2 B.L. Common. 37. Speaking for the United States Supreme Court, Mr. Justice Bradley observed that generalized and divested of the special form which it assumes under a monarchy based on feudal conditions, a franchise is a right, privilege or power of public concern, which ought not to be exercised by private individuals but should be reserved for public control either by the government directly or by public agents. Such rights and powers must exist under every form of society. See California v. Central Pacific Railway Co., 127 U.S. 1, 8 S.Ct. 1073, 32 L.Ed. 150 (1888). In American law, a franchise is defined as a special privilege conferred by the government on individuals or corporations which does not belong to the citizens generally by a common right. The term "franchise" generally includes privilege. (Per Winternheimer, J., dissenting) 45 C.J.S. Corporations, Volume 12, " 34.03 Franchises, p. 9. | While a license in respect to real property can be defined as a personal privilege to do acts upon land of the licensor of a temporary nature which are revocable at will of licensor, a franchise is neither temporary or personal and it is not revocable at will of grantor. (Per Winternsheimer, J., with two Justices concurring and one Justice concurring result.) | Is franchise a privilege? | Franchises - Memo 12 - ANG_65684.docx | ROSS-003281449-ROSS-003281450 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21573 | Levine v. Michel, 35 La.Ann. 1121 | 300+2.5 | The law expressly licensed the pilots to form associations for the furtherance of their interests; that much granted. It was not a matter of much moment how this association should take place, or by what name it should be called. Whilst every association of persons does not imply a partnership, it is certain that every partnership implies an association. In this instance, as in so many others, we find nothing in the name. | The Louisiana pilot laws do not inhibit a partnership or association of pilots to further their common interests. | Is partnership an association? | 022625.docx | LEGALEASE-00158695-LEGALEASE-00158696 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 21574 | Palmer Nat. Bank v. Van Doren, 260 Mich. 310 | 253+109(1) | The contract is an Illinois contract. The law of the place of making "or place of performance," rather than the law of the domicile of a married woman, governs as to her capacity to contract. A renewal note is regarded as a continuation of the original note Molsons Bank v. Berman, 224 Mich. 606, 195 N. W. 75, 35 A. L. R. 1289, N. J. Title Guarantee & Trust Co. v. McGrath, 246 Mich. 553, 562, 224 N. W. 755. In John A. Tolman Co. v. Reed, 115 Mich. 71, 72 N. W. 1104, we held a contract of guaranty dated in Illinois, signed in Michigan, and mailed to the guarantee in Illinois, where payments, if any, were to be made, was an Illinois contract. See Proposed Final Draft No. 2, " 336, and comment B thereunder of the American Law Institute Restatement of the Conflict of Laws. | Note executed and delivered in Illinois by married woman resident of Michigan as surety for brother's indebtedness to Illinois bank, and renewals of such note subsequently executed and mailed from Michigan, held Illinois contract. | Is a renewal note regarded as a continuation of the original note? | 010912.docx | LEGALEASE-00160352-LEGALEASE-00160353 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21575 | Travelers Ins. Co. v. Walkovak, 390 S.W.2d 75 | 413+1102 | While appellee stated that he tried to conceal his disability from his employer and that he could not have done the work without help from his fellow employees, such testimony does not raise the issue of estoppel insofar as the insurer is concerned. There is no showing of a change in position on the part of the insurer as a result of its reliance on any conduct of or statements made to it by the claimant. 22 Tex.Jur.2d, Estoppel, " 4. It has been held that estoppel is never employed as a means of inflicting punishment for unlawful or wrongful act. Worsham Buick Co. v. Isaacs, 121 Tex. 587, 51 S.W.2d 277, 86 A.L.R. 232. | That worker had tried to conceal his disability from his employer and that he could not have done his work without help from his fellow employees would not work estoppel against him and in favor of insurer which had not changed position in reliance on such conduct. | Is estoppel employed as a means of inflicting punishment for an unlawful or wrongful act? | Estoppel - Memo #204 - CSS_64540.docx | ROSS-003278734-ROSS-003278735 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21576 | Borre v. United States, 940 F.2d 215 | 306+35(9) | Illinois law treats franchises and licenses as distinct. Franchises usually are exclusive, while licenses are not. But this difference is not pertinent to the legal analysis established by McNally. Whether a franchise is "property" for purposes of Illinois law is irrelevant: the contract in McNally likely was property for purposes of Kentucky law. Neither McNally nor Toulabi nor any of the cases in the other circuits asks how a state characterizes the document; these cases ask instead how the characteristics of the permission relate to the legal criteria established by the Supreme Court. Having the existence of a federal felony turn on language in musty state cases makes about as much sense as the holding in United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), that the antitrust laws follow the ancient rule against restraints on alienation. Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), overruled Schwinn after concluding that state property law is unrelated to the functions of federal antitrust law. So too with the state law of franchises and federal mail fraud prosecutions. | Under Illinois law, village had a property interest in cable television franchise and that property interest could be the subject of a mail fraud offense. 18 U.S.C.A. S 1341. | Is franchise distinct from licence? | 018479.docx | LEGALEASE-00159621-LEGALEASE-00159623 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 21577 | Bank of Fairfield v. Spokane Cty., 173 Wash. 145 | 371+2233 | "Franchises," which is the term applied to the subject under discussion, are of three kinds: (1) The franchise "to be," often designated as the corporate or creative franchise, which is the grant of corporate life from the state or United States. (2) The franchise "to do," which is the privilege granted to a corporation, when organized, to perform certain acts and carry on certain business; it is the corporation's power of activity, and naturally and impliedly goes with its right of existence. And (3) "special franchises," which are privileges accorded to certain corporations not enjoyed by others in general; these are generally denominated as public utility franchises. Since the first two classes are so inseparably connected with each other they are usually referred to as "primary franchises," and the third class as "secondary franchises." In this case we are concerned only with the so-called primary franchises, so that the immediate question before us is whether the corporation's primary franchise, its right to exist and do business, is subject to an ad valorem, or property, tax. | Corporate franchises, to extent of worth when taken in connection with other property to which they give superadded value, are subject to direct property tax. Rem.Rev.Stat. S 11135; Const. art. 7, S 2. | What are the different kinds of franchises? | 018563.docx | LEGALEASE-00159483-LEGALEASE-00159484 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21578 | Allen v. Burnet Realty, 801 N.W.2d 153 | 217>1611 | Our conclusion that the LA Program is not insurance is confirmed by looking at the LA Program's details and comparing them to our case law and typical contracts for insurance. First, the LA Program does not expose Burnet Realty to any additional risk for which it would not already be liable. We have stated that an "elementary insurance principle[ ]" is that "[i]n exchange for the payment of a premium, an insurer assumes certain risks that otherwise would be the obligation of the insured." Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co., 396 N.W.2d 229, 233 (Minn.1986). Here, Burnet Realty is not assuming additional risk that would otherwise be allocated to the sales associate. Minnesota Statutes 82.63, subd. 3 (2010), states that "[e]ach broker shall be responsible for the acts of any and all of the broker's sales people and closing agents while acting as agents on the broker's behalf." Burnet Realty, as the real estate broker, is statutorily responsible for the sales associates' actions. See also Handy v. Garmaker, 324 N.W.2d 168, 173 (Minn.1982) (concluding that the employer "had no knowledge of [the sales agent's] activities, took no part in any of the transactions, and [wa]s otherwise blameless"). Therefore, Burnet Realty was not assuming new risk in exchange for Allen's payment of a premium. | "Legal administration program," by which real estate sales associates agreed to allocation of expenses should a dispute arise related to associate's work for broker, was not "insurance," for purposes of associate's claim that broker engaged in unauthorized sale of insurance, as broker was not assuming additional risk that would otherwise be allocated to associate, broker had a strong connection with, and a certain amount of control over, the actions of associate that would lead to the covered dispute and, in turn, to any losses, and program differed from a traditional insurance contract in several key respects, including that annual fee associate paid pursuant to program was not a "premium" for insurance, given that broker charged all associates a fixed fee under the program. M.S.A. SS 60K.47, 82.63(3). | Is LA or LAP considered to be insurance? | 019580.docx | LEGALEASE-00159998-LEGALEASE-00159999 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 21579 | Allen v. Burnet Realty, 784 N.W.2d 84 | 217>1560 | Our conclusion that the LA Program is not insurance is confirmed by looking at the LA Program's details and comparing them to our case law and typical contracts for insurance. First, the LA Program does not expose Burnet Realty to any additional risk for which it would not already be liable. We have stated that an "elementary insurance principle[ ]" is that "[i]n exchange for the payment of a premium, an insurer assumes certain risks that otherwise would be the obligation of the insured." Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co., 396 N.W.2d 229, 233 (Minn.1986). Here, Burnet Realty is not assuming additional risk that would otherwise be allocated to the sales associate. Minnesota Statutes 82.63, subd. 3 (2010), states that "[e]ach broker shall be responsible for the acts of any and all of the broker's sales people and closing agents while acting as agents on the broker's behalf." Burnet Realty, as the real estate broker, is statutorily responsible for the sales associates' actions. See also Handy v. Garmaker, 324 N.W.2d 168, 173 (Minn.1982) (concluding that the employer "had no knowledge of [the sales agent's] activities, took no part in any of the transactions, and [wa]s otherwise blameless"). Therefore, Burnet Realty was not assuming new risk in exchange for Allen's payment of a premium. | "Legal assistance" program by which independent contractor real estate sales associates, pursuant to terms set forth in independent contractor agreement, paid real estate broker an annual fee in return for the broker's payment of attorney fees in sales-related disputes, arbitrations, or lawsuits against the contractor, and which limited contractor liability, had the principal purpose and object of selling real estate, and was not "insurance" or "indemnity for hire," thus precluding contractor's claim that broker engaged in unauthorized sale of insurance; in light of the broker-contractor relationship, the legal assistance program functioned as an arrangement to share potential risk of a dispute in the sales process, and the broker, by requiring adherence to its policies, exercised a degree of control over the risk of incurring losses. M.S.A. S 60K.47. | Is LA or LAP considered to be insurance? | Insurance - Memo 57 - SNJ.docx | LEGALEASE-00049473-LEGALEASE-00049474 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 21580 | Pope v. TT of Lake Norman, 505 F. Supp. 2d 309 | 217>1001 | The Attorney General's conclusion is also persuasive in that it reflects the well-settled principle that "a warranty covers defects in the article sold while insurance indemnifies against damage from perils outside the article." GAF Corp. v. County School Brd., 629 F.2d 981, 983 (4th Cir.1980). In this case, it is clear that Etch's limited warranty protects customers in the event the product fails as a theft deterrent. Accordingly, to the extent that Plaintiffs' claims are based upon their allegations that Etch is insurance, these claims are dismissed. | Window etching system with which vehicles sold by a dealership were equipped, purporting to deter the theft by making resale of stolen vehicles more difficult and risky, was a "warranty" within the meaning of a North Carolina statute providing that warranties did not constitute insurance; the system was sold by a third party for $349, and included a guarantee to pay $5,000 in the event it failed to deter theft of the vehicle. West's N.C.G.S.A. S 58-1-15(b). | Does insurance indemnify against damage from outside perils? | 019582.docx | LEGALEASE-00160063-LEGALEASE-00160064 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 21581 | Bowens v. Gen. Motors Corp., 608 So. 2d 999 | 413>1057 | In the present case, it was stipulated by the parties that GM was self-insured for worker's compensation purposes.6 LIGA concedes that the statute uses the word "policy," but argues that the distinction is only a matter of semantics and there is no practical difference between GM providing its own worker's compensation coverage or purchasing that coverage in a policy. We disagree. This court has held that "self-insurance is, in actuality, not insurance at all." Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991). Interpreting the Louisiana Motor Vehicle Safety Responsibility Law (LMVSRL), we held that self-insurance was merely one of the four methods of meeting the requirements of that law, but was not the same as an insurance policy: "[w]hile Louisiana courts have consistently recognized that a certificate of self-insurance indicates the self-insurer possesses sufficient assets to satisfy judgments if found legally liable, the courts have refused to consider a certificate of self-insurance an insurance "policy." " Id. at 1238. See also Jones v. Henry, 542 So.2d 507 (La.1989); Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981), writ denied, 409 So.2d 654 (La.1982). While it is true those cases involved self-insurance under the provisions of the LMVSRL, we see no practical difference between self-insurance under that statute and self-insurance under the worker's compensation law as set forth in La.R.S. 23:1181.7 Self-insurance is simply one method of complying with La.R.S. 23:1181; it is not the equivalent of an insurance policy. The language of La.R.S. 22:1386 is unambiguous: it applies only to those persons having claims "against an insurer and any provision in an insurance policy." [emphasis added]. Clearly, plaintiff's claim against GM is not against an "insurer," nor is it based on an insurance policy. | Because self-insurance is merely method of complying with workers' compensation laws and is not equivalent to possession of insurance policy, nonduplication of recovery section of statute governing Louisiana Insurance Guaranty Association (LIGA) did not apply to worker's claim against self-insured car manufacturer, and LIGA was liable for compensation benefits; presence of self-insurer does not preclude liability on part of LIGA to plaintiff for compensation benefits. LSA-R.S. 22:1382, subd. A(2), 22:1386(1), 23:1061. | Is self-insurance in actuality insurance? | Insurance - Memo 79 - SNJ_64655.docx | ROSS-003280600-ROSS-003280601 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21582 | New Jersey Div. of Taxation v. Selective Ins. Co. of Am., 399 N.J. Super. 315 | 309+5 | Further, we have recognized that suretyship and liability insurance are different."While surety bonds have been included within definitions of insurance for some purposes, suretyship is not generally considered to be insurance." New Jersey Property-Liability Ins. Guar. Ass'n v. Hill Intern., Inc., 395 N.J.Super. 196, 202, 928 A.2d 836 (App.Div.2007). An obligee for whose benefit the obligor obtains a surety bond may proceed on the bond when the obligor defaults.Under the common law, " "[T]he principal and sureties are equally and primarily liable in case of a breach of [the bond's] conditions and the liability of the sureties is, within the terms of the contract and controlling statutes, coextensive with that of the principal.' " In re Estate of Lash, 169 N.J. 20, 28, 776 A.2d 765 (2001) (quoting 34 C.J.S. Executors and Administrators " 900 (1998)).[Id. at 203, 928 A.2d 836.] | While surety bonds have been included within definitions of insurance for some purposes, "suretyship" is not generally considered to be "insurance." | Is suretyship the same as insurance? | 019622.docx | LEGALEASE-00160026-LEGALEASE-00160027 | Condensed, SA | 0.83 | 0 | 1 | 0 | | 1 |
| 21583 | James L. Haven & Co. v. Goodel, 12 Ohio Dec.Reprint 465 | 289+957 | And the power to settle and adjust the affairs of the partnership, does not authorize the use of the partnership name for that purpose. Perrin v. Keene, 19 Me., 355; Parker v. Macomber, 18 Pick., 505; Woodworth v. Downer, 13 Vermont, 522, Abel v. Sutton 3 Esp., 108; Hamilton v. Seaman, 1 Carter, Ind., 188; Waite v. Foster, 33 Me., 424; Brooks v. Holland, 21 Conn., 388; 3 Rich. Eq., 119; Lockwood v. Comstock & Bissell, 4 McLean, 383. | One member of a firm cannot bind another by making or indorsing negotiable paper in the firm name after the dissolution of the partnership, though the proceeds of the paper are applied to the payment of partnership debts. | Does the power to settle and adjust the affairs of the partnership authorize a partner to use the partnerships name for that purpose? | Partnership - Memo 489 - SB_64852.docx | ROSS-003283044-ROSS-003280345 | Condensed, SA | 0.49 | 0 | 1 | | 1 | 1 |
| 21584 | McCall v. Moss, 112 Ill. 493 | 157+410 | Partnership contracts may be made by verbal agreement, and written contracts for a partnership may be altered, modified and changed, or provisions in waived; and this may be shown by acts, usages and acquiescence. Parsons on Partnership, 7, 238, 519; Collyer on Partnership, sec. 209; Geddes v. Wallas, 2 Bligh, 397; Jackson v. Sedgwick, 1 Swanst. 460; England v. Cushing, 8 Beav. 129; McGregor v. Pulling, 1 Freeman's Ch. 357. | An entry or charge on the books of a defunct partnership may be explained by proof and corrected although three years after the charge was made the bookkeeper transferred the account to the books of a succeeding firm, in which one of the members of the original firm was a partner. | Can a written contract for a partnership be altered orally? | 022584.docx | LEGALEASE-00160170-LEGALEASE-00160171 | Condensed, SA | 0.33 | 0 | 1 | | 1 | 1 |
| 21585 | Magneson v. C.I.R., 753 F.2d 1490 | 220+3184 | The significant differences between the tenancy in common and the partnership interests lie in the voluntary and involuntary alienability of the property. Basically, the tenancy in common interest is freely alienable, but specific partnership property is not. Because the whole premise of section 1031(a) is that the taxpayer's intent is not to alienate the property, we believe that alienability distinctions are not dispositive. If at the time of the exchange, as here, the taxpayer intends to contribute the property to a partnership for a general partnership interest, and the partnership's purpose is to hold the property for investment, the holding requirement of section 1031(a) is satisfied despite the limited alienability of specific partnership property. | Property acquired in like-kind exchange with intention of contributing it to limited partnership in return for general partnership interest was "held for investment" and no gain was recognized. 26 U.S.C.A. SS 721, 1031(a). | Can a tenancy in partnership be freely alienable like a tenancy in common? | 022649.docx | LEGALEASE-00159942-LEGALEASE-00159943 | Condensed, SA, Sub | 0.7 | 0 | 1 | | 1 | 1 |
| 21586 | Disc. Tire Co. of Washington v. State, Dep't of Revenue, 121 Wash. App. 513 | 371+3672 | An item of tangible personal property may not, however, be subject both to use tax and sales tax. WAC 458"20"178(2). Once an item has been subjected to the sales tax, it may not later be subjected to use tax. | Tires which were returned to tire retailer, pursuant to optional, extended warranty that was sold separately to customers, were "damaged" or "defective" within meaning of administrative rule entitling retailer to tax credit for refunded sales tax, and thus tire retailer was entitled to credit for sales tax remitted on sales of replacement tires, as original tires had previously been taxed. West's RCWA 82.32.300; WAC 458-20-108. | "Is an item of tangible property subject to both, use tax and sales tax?" | Taxation - Memo 1073 - C - SJ.docx | LEGALEASE-00050078-LEGALEASE-00050079 | Condensed, SA, Sub | 0.52 | 0 | 1 | | 1 | 1 |
| 21587 | People v. Etkin, 277 A.D.2d 599 | 63+16 | Although defendant's argument includes a claim that the prosecutor violated a promise to recommend only probation at sentencing, it is undisputed that the promise was conditional and one of the conditions, to which defendant knowingly and voluntarily agreed, was not satisfied. The remainder of defendant's argument concerns the severity of the sentence, an issue encompassed by defendant's waiver of the right to appeal (see, People v. Hidalgo, 91 N.Y.2d 733, 737, 675 N.Y.S.2d 327, 698 N.E.2d 46; People v. Kwiatkowski, 263 A.D.2d 552, 694 N.Y.S.2d 779, lv. denied 93 N.Y.2d 1021, 697 N.Y.S.2d 580, 719 N.E.2d 941). In any event, we see no abuse of discretion in County Court's conclusion that some jail time should be imposed and we find no extraordinary circumstances which would warrant a reduction of the sentence in the interest of justice. | Trial court did not abuse its discretion in imposing some jail time for defendant who pled guilty to one count of bribing a witness, where there were no extraordinary circumstances that warranted a reduction of his sentence. | Can a defendant waive his or her right to appeal the severity of a sentence? | Bribery - Memo 1052 - C - ML_65542.docx | ROSS-003283890 | Condensed, SA, Sub | 0.74 | 0 | 1 | | 1 | 1 |
| 21588 | Ribaudo v. La Salle Inst., 45 A.D.3d 556 | 315T+127 | In Hardwicke, the Supreme Court held that a private boarding school could be liable as a passive abuser under the CSAA. Id. at 94, 902 A.2d 900. There, the plaintiff alleged the Musical Director of the school abused him over the course of two years, and the school itself knew or should have known of the abuse. Id. at 74, 902 A.2d 900. The Court noted that in order to hold a passive sexual abuser liable under the statute, a plaintiff must demonstrate the defendant is: "(1) a person (2) standing in loco parentis (3) within the household." Id. at 86, 902 A.2d 900. The Court first found the boarding school was a "person" under the statute. Id. at 91, 902 A.2d 900. It next determined the school satisfied the role of "in loco parentis " because it. | Basketball player assumed the risk of injury from running into concrete wall while playing basketball in private high school's gymnasium, where risk of colliding with the wall was inherent in the sport, condition of the wall was open and obvious, and there was no evidence that school's failure to pad the wall created a risk beyond those inherent in the sport, or that position of the wall or lack of padding violated any applicable standards relating to basketball courts. | Can a school be liable as a passive abuser? | 017243.docx | LEGALEASE-00161084-LEGALEASE-00161085 | Condensed, SA, Sub | 0.37 | 0 | 1 | | 1 | 1 |
| 21589 | Woods v. West, 37 S.W.2d 129 | 322H+1009 | In the case of Black v. Rockmore, 50 Tex. 88, the Supreme Court says: "That the homestead right is subordinate to the vendor's lien has been held in that [Robertson v. Paul, 16 Tex. 472] and other cases, and has since been incorporated into our organic law. It has also been decided by this court that the mere fact that a new note was given for the purchase-money, or that it embraced other and different considerations, or that a mortgage or deed of trust was taken to secure the same. would not, of itself, necessarily defeat the vendor's lien as a conclusive presumption of law; but that they are questions of fact, to be decided from the circumstances of the case. Swain v. Cato, 34 Tex. 395; Wasson v. Davis, 34 Tex. 159; Flanagan v. Cushman, 48 Tex. 241." | General rule is vendor of land has lien to secure purchase money. | Is the homestead right subordinate to a vendors lien? | Exchange of Property - Memo 89 - RK_66315.docx | ROSS-003323969-ROSS-003323970 | Condensed, SA, Sub | 0.91 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21590 | Howle v. Aqua Illinois, 2012 IL App (4th) 120207 | 307A+622 | Citing the above case, the Second District explained the purpose of a pleading as follows: "A pleading produces an issue asserted by one side and denied by the other so that a trial may determine the actual truth." Golf Trust of America, L.P. v. Soat, 355 Ill.App.3d 333, 336, 290 Ill.Dec. 977, 822 N.E.2d 562, 565 (2005). See also the following discussion of pleadings contained in Nichols Illinois Civil Practice:"A pleading consists of a party's formal allegations of or defenses.The primary purpose of pleadings is to apprise one's adversary and the court of the nature of the claim or defense asserted. Pleadings present, define, and narrow the issues and limit the proof to be submitted at trial and facilitate the specification of the real issues to be tried. A pleading produces an issue asserted by one side and denied by the other so that a trial may determine the truth." 2 Nichols Illinois Civil Practice ° 26:1, at 6°7 (rev. 2011). | A claim concerning the negation of a plaintiff's pleadings, such as a defendant's assertion of "not true" to a pleading, is appropriately resolved either at trial or in a fact-based motion, such as a motion for summary judgment, not in a motion to dismiss based on defects or defenses. S.H.A. 735 ILCS 5/2-619(a)(9), 5/2-1005. | "Do pleadings present, define, and narrow the issues and limit the proof to be submitted at trial?" | Pleading - Memo 606 - RMM_65791.docx | ROSS-003280030-ROSS-003280031 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | |
| 21591 | Corliss v. Bowers, 281 U.S. 376 | 220+4027 | But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed-the actual benefit for which the tax is paid. If a man directed his bank to pay over income as received to a servant or friend, until further orders, no one would doubt that he could be taxed upon the amounts so paid. It is answered that in that case he would have a title, whereas here he did not. But from the point of view of taxation there would be no difference. The title would merely mean a right to stop the payment before it took place. The same right existed here although it is not called a title but is called a power. The acquisition by the wife of the income became complete only when the plaintiff failed to exercise the power that he reserved. Saltonstall v. Saltonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. Ed. 565; Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410. Still speaking with reference to taxation, if a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given by assent or by failure to express dissent. The income that is subject to a man's unfettered command and that he is free to enjoy at his own opinion may be taxed to him as his income, whether he sees fit to enjoy it or not. We consider the case too clear to need help from the local law of New York or from arguments based on the power of Congress to prevent escape from taxes or surtaxes by devices that easily might be applied to that end. | Income from revocable trust may constitutionally be taxed to grantor, though actually paid to beneficiary (Revenue Act 1924, ss 219(g)(h), 26 USCA s 960 note). | What is taxation concerned with? | Taxation - Memo 1139 - C - JL_65653.docx | ROSS-003293231-ROSS-003293232 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 21592 | Mayes v. Chrysler Credit Corp., 37 F.3d 9 | 195+78(1) | The Equal Credit Opportunity Act pertinently provides, in general terms, that a creditor may not "discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. ° 1691(a)(1). At the time Chrysler secured Mayes' guaranty in 1985, a regulation of the Federal Reserve Board"the then-operative version of 12 C.F.R. ° 202.2(e)"expressly provided that a guarantor was not an "applicant."See Morse v. Mutual Federal Savings & Loan Ass'n, 536 F.Supp. 1271, 1278 (D.Mass.1982) (Aldrich, J.). | Although lender's insistence that corporate president's spouse also sign guaranty of corporate indebtedness, as prerequisite to lender's approval of corporate loan, may have violated the Equal Credit Opportunity Act (ECOA) and permitted president to bring suit under the ECOA if his spouse had not signed guaranty and if loan was not approved, lender's conduct did not permit president's spouse, having executed guaranty, to raise lender's alleged violation of policies embodied in the ECOA as defense to suit on guaranty; as to president's spouse, lender's conduct did not violate any policy embodied in the ECOA at time guaranty was signed and loan proceeds were advanced. Consumer Credit Protection Act, S 701(a)(1), as amended, 15 U.S.C.A. S 1691(a)(1). | Is a guarantor also an applicant? | 013845.docx | LEGALEASE-00162604-LEGALEASE-00162605 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 21593 | City of N. Little Rock v. Graham, 278 Ark. 547 | 371+2002 | Taxes are enforced burdens exacted pursuant to statutory authority. Miles v. Gordon, 234 Ark. 525, 353 S.W.2d 157 (1962). Municipal taxes are those imposed on persons or property within the corporate limits, to support the local government and pay its debts and liabilities, and they are usually its principal source of revenue. 16 E. McQuillin, Municipal Corporations ° 44.02 (3rd ed. 1979). | Where contested charge was not for specific, special service, but means of raising revenue to pay additional money for services already in effect, charge was "tax" and not "fee." Ark.Stats. SS 17-2002, 19-4514(e)(1). | What are municipal taxes? | Taxation - Memo 1014 - C - JL_66472.docx | ROSS-003293220 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21594 | State ex rel. Davis v. Rogers, 79 Mo. 283 | 371+2064 | Can anything be more dangerous or injurious, than the admission of a principle which authorizes every state and every corporation in the Union, which possess the right of taxation, to burden the exercise of this power at their discretion? If the right to impose a tax exists, it is a right which in its nature acknowledges no limits. It may be carried to any extent within the jurisdiction of the state or corporation which imposes it, which the will of each state or corporation may prescribe. The tax on government stock is a tax on the contract, a tax on the power to borrow money on the credit of the United States, and consequently repugnant to the constitution." | Under Rev. St. U. S. S 3701, 31 U.S.C.A. S 742, declaring that all stocks, bonds, treasury notes, and other obligations of the United States shall be exempt from taxation by state or municipal authority, the capital of a private bank consisting of United States bonds is not subject to taxation by the state. | Is it legal to tax on government stock? | 046376.docx | LEGALEASE-00162079-LEGALEASE-00162080 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21595 | Pugh v. Cameron's Adm'r, 11 W. Va. 523 | 398+2(1) | Judge Daniels in delivering the opinion of the court in Wilson v. Lazier et al., 11 Gratt. 477, said: "It seems to be well settled that a negotiable note made in a particular country, is to be deemed a note governed by the law of that country, whether it is expressly made payable there or is payable generally, without naming any particular place; since at most under the latter circumstances, it is as much payable in that country as elsewhere." In Findley v. Hall & Colcord, 12 Ohio 610 the note sued on was as follows:"SANTE FE, August 27, 1849.One day after date, we or either of us, promise to pay to Jacob Hall and Jonathan Colcord, or to their order, the sum of three thousand one hundred and ninety-six dollars, ($3,196.00) for value received, negotiable and payable without defalcation or discount, together with interest at the rate of ten per cent per annum from due. | When the defense of usury is not available to the principal, it cannot be to the surety; and where a bill made by the principal in Ohio, and taken to Virginia and there signed by the surety, was usurious by the law of that country, whether it is expressly made payable there or is payable Virginia, but valid in Ohio, the surety cannot defend by recourse to the law of Virginia. | Is a note made in a particular country deemed a note governed by the law of that country? | Bills and Notes - Memo 1315 - RK_66220.docx | ROSS-003292484-ROSS-003292485 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21596 | Hai Yang Liu v. 88 Harborview Realty, 5 F. Supp. 3d 443 | 118A×275 | The determination of a party's citizenship for purposes of 28 U.S.C. " 1332 is a mixed question of fact and law. Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir.2000). An individual's citizenship is determined by his or her domicile. Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir.1998). A person's "domicile" is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Id. (quotation marks and citation omitted). At any given time, a person can only have one domicile. Palazzo, 232 F.3d at 42. Residence, alone, is not the equivalent of domicile, although it is prima facie evidence of domicile. Broadstone Realty Corp. v. Evans, 213 F.Supp. 261, 265 (S.D.N.Y.1962). | Complaint of member of limited liability company (LLC) against LLC and other individuals, alleging claims under New York law concerning disputed real estate transactions and investments in New York City and seeking a declaratory judgment that he was a member of LLC, failed to properly allege jurisdiction based on diversity of citizenship; member's allegation that he was a resident of South Carolina was contradicted by LLC's membership list and Internal Revenue Service (IRS) 1065 forms, which implied that member maintained a residence in New York, and member included 20 Doe defendants, all of whom allegedly were members of the LLC and resided in New York, although LLC's membership list showed 26 members, some of whom resided in Connecticut, Kentucky, and Minnesota. 28 U.S.C.A. S 1332. | "Is residence not the equivalent of domicile, although it is prima facie evidence of domicile?" | Domicile - Memo 44 - C AB_67123.docx | ROSS-003295980-ROSS-003295981 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | |
| 21597 | State ex rel. Rader v. Pataskala, 2016-Ohio-1215, 61 N.E.3d 618 | 316P×155 | (" 32) Appellees raised waiver as an affirmative defense in their answer to appellant's complaint. Waiver is a voluntary relinquishment of a known right. State ex rel. Wallace v. State Med. Bd. of Ohio, 89 Ohio St.3d 431, 435, 732 N.E.2d 960 (2000). Waiver is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional. State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors, 75 Ohio St.3d 611, 616, 665 N.E.2d 202 (1996). The burden is on the public employer to prove that waiver applies, and it may be enforced if the employer had a duty to perform and changed its position as a result of the waiver. Chubb v. Ohio Bur. of Workers' Comp., 81 Ohio St.3d 275, 279, 690 N.E.2d 1267 (1998). | Former city employee's retirement was voluntary, rather than involuntary, and thus could operate as waiver of right to challenge city's disciplinary proceedings in which he was demoted by appeal to Personnel Board of Review; former employee's only alternative was not reduction in work, as he had the alternatives of retiring, continuing to work in demoted position, or following disciplinary process through to its own conclusion, and in midst of conversations regarding scheduling of appeal to Board and possible settlement, former employee submitted his notice of retirement to the surprise of his own counsel. | Does waiver apply generally to all personal rights and privileges? | Estoppel - Memo 296 - C - CSS_66649.docx | ROSS-003285191-ROSS-003285192 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | |
| 21598 | Bull v. Sykes, 7 Wis. 449 | 266×952 | "As to the kinds of property which may be mortgaged, it may be stated that, in equity, whatever property, personal or real, is capable of an absolute sale may be the subject of a mortgage." 2 Story's Eq. Jur., " 1021. "Therefore, rights in remainder and reversion, possibilities coupled with an interest, rents, franchises and choses in action, are capable of being mortgaged." The bargainee under a contract for sale and conveyance of real estate has such an interest in the land that it is a matter of almost daily occurrence, for courts to entertain suits to enforce the specific performance of such agreements. The relation between the parties under such contracts is said by this court, in the case of Button vs. Schroyer, 5 Wis., 598, to be analogous to that of an equitable mortgagor and mortgagee; the bargainee having the right to be relieved against a forfeiture for non-compliance with the contract when he offers to perform within a reasonable time, and the bargainor having the right to foreclose the equity of the delinquent bargainee. That a mortgage, given by a person holding under a contract of this nature, has been held valid; see Purmont vs. McCrea et al., 5 Paige, 620. The respondent took an assignment of Sykes' contract with full knowledge of the existence of the mortgage given to H. C. Bull & Co., and therefore he can claim no greater equities than Sykes could himself. It is even alleged in the complaint that the respondent, in consideration of the assignment of the contract to him by Sykes, agreed and promised to discharge the mortgage when it fell due. And although this promise is not such an one, perhaps, as would be enforced in law, yet it does not weaken the equities of the case against him. | Where a vendee of land, who has paid part of the purchase money and made improvements, mortgages his interest, and subsequently assigns his rights under the contract to one having notice, the title of the purchaser, if completed by the assignee, inures to the benefit of the mortgagee. | Can franchises be mortgaged? | 018589.docx | LEGALEASE-00163009-LEGALEASE-00163010 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21599 | Vorbeck v. Betancourt, 107 So. 3d 1142 | 30×199 | Despite the pleading deficiencies outlined above, we agree with the Vorbecks that the dismissal should have been without prejudice. It is well established that "a dismissal with prejudice should not be ordered without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action." Kairalla v. John D. & Catherine T. MacArthur Found., 534 So.2d 774, 775 (Fla. 4th DCA 1988). "Where a party may be able to allege additional facts to cause of action or to support another cause of action based on a different legal theory, dismissal with prejudice is an abuse of discretion." Kapley v. Borchers, 714 So.2d 1217, 1218 (Fla. 2d DCA 1998). | Siblings who owned 50 percent interests in two companies failed to preserve for appellate review the argument that dismissal of their pure bill of discovery, which sought to compel defendant owner of remaining 50 percent interests to produce companies' business records, should not have been with prejudice, where siblings did not seek leave to amend complaint at any point during the litigation before trial court, failed to contemporaneously object when trial court orally pronounced that it was going to grant motion to dismiss with prejudice, and did not file a motion for rehearing to amend after order of dismissal was entered. | "Where a party can be able to allege additional facts to support its cause of action or to support another cause of action based on a different legal theory, is dismissal with prejudice an abuse of discretion?" | 040794.docx | LEGALEASE-00163845-LEGALEASE-00163846 | Condensed, Order, SA, Sub | 0.14 | 1 | 1 | 1 | 1 | 1 |
| 21600 | Sanchez v. Martin, 378 S.W.3d 581 | 198H×804 | The El Paso Court of Appeals has recently addressed the situation in which a claimant amends his pleadings to add a new claim after the defendant has filed a motion to dismiss attacking the claimant's expert reports. See Simmons v. Texoma Med. Ctr., 329 S.W.3d 163, 176?81 (Tex.App.-El Paso 2010, no pet.). The court analogized the situation to summary-judgment practice, in which the general rule is that new claims added after the filing of a summary-judgment motion cannot properly be dismissed if the motion is not amended to encompass the new claims. Id. at 177. There is an exception, however, if the grounds for summary judgment are broad enough to encompass the subsequently added claims or negate an element of those claims. Id. In Simmons, the plaintiff added a claim for violations of the "patient's bill of rights" after the defendant filed its motion to dismiss, and the trial judge dismissed the entire case even though the defendant did not amend its motion to dismiss. Id. at 167, 176 | A claimant cannot avoid the medical expert report requirements by recasting a health care liability claim as a different cause of action; that is, courts look to the underlying nature of the claims and allegations, and not to the labels used by the claimant, to determine whether the medical expert report requirement applies. V.T.C.A., Civil Practice & Remedies Code S 74.101. | Can new claims added after the filing of a summary judgment motion properly be dismissed if the motion is not amended to encompass the new claims? | 040802.docx | LEGALEASE-00164136-LEGALEASE-00164137 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21601 | Geckles v. State, 177 Ga. App. 70 | 110+1037.1(2) | Appellant also argues that under OCGA " 16"1"8 his "acquittal" of the incest charge in Indictment No. 23163 barred his subsequent prosecution for rape in Indictment No. 23738. Again assuming arguendo that both indictments concerned the same conduct, this assertion has no merit. "Although "questions of double jeopardy in Georgia must now be determined under the expanded statutory proscriptions (set forth in OCGA "" 16"1"6, 16"1"7, and 16"1"8 [Cits.])," State v. Estevez, 232 Ga. 316, 317, 206 S.E.2d 475 (1974), the statutory provisions are triggered only after a defendant has been initially placed in jeopardy. "A defendant is placed in jeopardy when, in a court of competent jurisdiction with a sufficient indictment, he has been arraigned, has pled and a jury has been impaneled and sworn." Shaw v. State, 239 Ga. 690, 692, 238 S.E.2d 434 (1977)." Caldwell v. State, 171 Ga.App. 680, 320 S.E.2d 888 (1984). Since appellant had not been placed in jeopardy under Indictment No. 23163, the provisions of OCGA " 16"1"8 did not attach to the dismissal of the incest count of that indictment. | Nothing in State's closing argument to jury amounted to improper comment on defendant's right not to incriminate himself, and in any event, defendant's failure to raise any objection in that regard at trial presented no grounds for reversal on appeal. U.S.C.A. Const.Amend. 5. | "Can a defendant be placed in jeopardy when he has been arraigned, has pled, and a jury has been impaneled and sworn?" | Double Jeopardy - Memo 1020 - C - KG_67735.docx | ROSS-003283364-ROSS-003283365 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 21602 | United States v. Bushay, 34 F. Supp. 3d 1260 | 180+95 | The specific facts of a transaction determine whether a security interest or a lease is created. But a security interest exists if [ (1) ] the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and ... [ (2) ]the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement. Id. " 1("201(37). | An owner's legal interest in property does not evaporate upon entering into a lease with a defendant whose offense conduct gives rise to criminal forfeiture; so lessors have statutory standing to pursue the return of their property in an ancillary proceeding. Comprehensive Crime Control Act of 1984, S 303(n), 21 U.S.C.A. S 853(n). | Do the specific facts of a transaction determine whether a security interest or a lease is created? | 042871.docx | LEGALEASE-00165690-LEGALEASE-00165691 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 21603 | Nat. Gas Pipeline Co. of Am. v. 3.39 Acres of Land, More or Less, in Cameron Par., Louisiana, 2009 WL 2135151 | 25T+114 | There is a strong federal policy favoring arbitration, however, that right to arbitration may be waived. A "waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." "Waiver of arbitration is not a favored finding, and there is a presumption against it." Waiver is ordinarily the knowing and voluntary relinquishment of a known right. "It is well established that where a party asserts the right to demand arbitration during pretrial proceedings, the party later opposing a motion to compel arbitration necessarily bears a heavy burden in showing waiver." Any doubts "concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." | Natural gas company was entitled to compel arbitration against a second gas company seeking a right of way through a leasehold estate held by the original gas company. The two companies were parties to an interconnect agreement that required the companies to design and construct an interconnection in a location the was mutually agreeable to both and to resolve any disputes through arbitration. The contract, which involved interstate commerce, was within the ambit of the FAA and thus the court was able to compel arbitration. Natural Gas Act, S 1, 15 U.S.C.A. S 717; 9 U.S.C.A. S 2. | Can the right to arbitrate be waived? | 09375.docx | LEGALEASE-00096304-LEGALEASE-00096305 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 21604 | Van Staphorst v. Pearce, 4 Mass. 258 | 10BH+854 | If, secondly, this be considered as a bill drawn by Blandow & Co. in favor of the plaintiffs, there can be no doubt of the responsibility of the defendant, upon his acceptance. It is not necessary that the whole of a bill be on the same side of the paper on which it is written. If, on the whole, there was a valuable consideration paid, and an intention to create a bill of exchange, it will be construed as such, if possible. The paper, in this case, comes precisely within Chitty's definition of a bill of exchange. In Heylin vs. Adamson, it is said by Lord Mansfield, that every endorsement creates a new bill of exchange. And in the case of Gibson & Al. vs. Minot & Al. in error, Lord C. B. Eyer, who differed from the other judges as to the plaintiffs' right to recover in that action, agrees that if they had declared upon a bill drawn by the endorsers, payable to the plaintiffs, or their order, they might have recovered. | An acceptor of a bill of exchange cannot set up, as a defense to the indorsee, that he has been intrusted by the creditors of the indorser through whom as factor, the plaintiff derives his title. | Should every indorsement of a bill be considered as a new bill? | 009028.docx | LEGALEASE-00126875-LEGALEASE-00126876 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21605 | McLaughlin v. Bailey, 240 N.C. App. 159 | 106+97(1) | The reasoning of Jenkins and Bland was adopted by this Court in Carter v. Marion, 183 N.C.App. 449, 645 S.E.2d 129 (2007), review denied, appeal dismissed, 362 N.C. 175, 658 S.E.2d 271 (2008). The plaintiffs in Carter were former deputy clerks of court who claimed that they had been terminated from their employment for political reasons, in violation of their rights to free speech under the North Carolina Constitution. On appeal, we discussed the holdings of the United States Supreme Court in Elrod, and in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), which held that public employees could be discharged "for not being supporters of the political party in power" if "party affiliation is an appropriate requirement for the position involved." Carter, 183 N.C.App. at 453, 645 S.E.2d at 131. The Carter opinion also discussed the holding of Jenkins that "deputies actually sworn to engage in law enforcement activities on behalf of the sheriff" could be lawfully terminated for political reasons, and noted that Jenkins based its holding on the facts that [D]eputy sheriffs (1) implement the sheriff's policies; (2) are likely part of the sheriff's core group of advisors; (3) exercise significant discretion; (4) foster public confidence in law enforcement; (5) are expected to provide the sheriff with truthful and accurate information; and (6) are general agents of the sheriff, and the sheriff is civilly liable for the acts of his deputy.Carter at 454, 645 S.E.2d at 131 (citing Jenkins at 1162"63). Utilizing the analysis of Jenkins and Knight, Carter held that "political affiliation is an appropriate requirement for deputy clerks of superior court." Id. In sum:Government employees generally are protected from termination because of their political viewpoints. But this Court and various federal appeals courts repeatedly have held that deputy sheriffs and deputy clerks of court may be fired for political reasons such as supporting their elected boss's opponents during an | Although the Court of Appeals is not bound by federal case law, the Court may find the analysis and holdings of federal case law persuasive. | Can deputy clerks be fired for political reasons? | 013398.docx | LEGALEASE-00131239-LEGALEASE-00131241 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 21606 | Isaacson v. Wirklan, 245 Or. 612 | 48A+171(8) | We also conclude that the issue of defendant's negligence was for the jury. The privilege of having the right of way is not absolute. One having such privilege continues to have a duty to use due care. | Privilege of having right-of-way at uncontrolled intersection is not absolute, and one having the privilege continues to have a duty to exercise due care. | Is the privilege of the right of way an absolute privilege? | 018999.docx | LEGALEASE-00148656-LEGALEASE-00148657 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21607 | Hempstead v. Easton, 33 Mo. 142 | 156+26 | There can be no estoppel upon one party unless the other is equally estopped. Mutuality is a necessary ingredient of an estoppel. Mrs. Denoyer was not estopped, because she was a married woman and could not be so bound, and consequently Russell was not estopped either. Hempstead was no party to the deed to Russell, and was, therefore, not estopped by anything contained in it. Neither, therefore, was Russell estopped from claiming adversely to Hempstead. (Cottle v. Snyder, 10 Mo. 764.) | Estoppels by deed must be mutual and bind both parties or neither. | Is mutuality a necessary ingredient of an estoppel? | Estoppel - Memo #33 - C - CSS_59022.docx | ROSS-003279364 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 21608 | Wise v. Fuller, 29 N.J. Eq. 257 | 184+23 | A purchaser is not entitled to relief against a vendor for a false affirmation of value, it being deemed his own folly to credit a nude assertion of that nature. Besides, value consists in judgment and estimation, in which men necessarily differ. 1 Sugd. on Vend. 3. But a remedy will lie against a vendor for falsely affirming that a greater rent is paid for the estate than is actually reserved, for that is a fact within his own knowledge. Ib. 5; Lysney v. Selby, 2 Ld. Raym. 1118; Dobell v. Stevens, 3 B. & C. 623. And so a willful misrepresentation by a vendor affirming that the income from his public house has been greater than in truth it was, is an actionable fraud. Bowring v. Stevens, 2 Car. & P. 337. The fact that a price in excess of its market value is paid for a thing, standing alone, is never evidence of fraud. Mere inadequacy of consideration will never substantiate a charge of fraud. In equity, inadequacy of value is, in general, of itself, no ground for impeaching a contract (Beninger v. Corwin, 4 Zab. 257, 259); but, with other circumstances of suspicion, it may constitute an element of proof in establishing fraud. 2 Chit. on Con. 1050. | A vendor's statement to the vendee that he is receiving a greater rent than that in fact reserved, or that the income from the property is greater than the true income, constitutes an actionable false representation, because of its being a statement of a matter peculiarly within the vendor's knowledge. | Is a purchaser entitled to relief against a vendor for a false affirmation of value for estate? | Exchange Of Property - Memo 42 - KK_59101.docx | ROSS-003307126-ROSS-003307127 | Condensed, Order, SA, Sub | 0.74 | 1 | 1 | 1 | 1 | 1 |
| 21609 | Bell v. Norwood, 7 La. 95 | 157+441(11) | It is further considered by the defendant, that in relation to the two notes sued on, the plaintiff, who was the original payee, and appears to have endorsed them, cannot recover without showing a re-transfer to himself. Both the notes were drawn by Norwood in favor of the plaintiff, and by him endorsed in blank, and both show a subsequent endorser in blank. This court has held, that re-possession of a note once specially endorsed by the payee, is not evidence of title, but that it is, if the transfer is in blank. [Sprigg v. Cuny's Heirs] 7 Martin, N. S. 253. | Parol evidence cannot be received of a promise to pay interest on a note which bears none. | Is re-possession of a bill or note considered as evidence of title? | Bills and Notes - Memo 849 - RK_61294.docx | ROSS-003292921-ROSS-003292922 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21610 | Mayes v. Chrysler Credit Corp., 37 F.3d 9 | 172H+1451 | The Equal Credit Opportunity Act pertinently provides, in general terms, that a creditor may not "discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. " 1691(a)(1). At the time Chrysler secured Mayes' guaranty in 1985, a regulation of the Federal Reserve Board"the then-operative version of 12 C.F.R. " 202.2(e)"expressly provided that a guarantor was not an "applicant." See Morse v. Mutual Federal Savings & Loan Ass'n, 536 F.Supp. 1271, 1278 (D.Mass.1982) (Aldrich, J.). | Section of Equal Credit Opportunity Act (ECOA), prohibiting any creditor from discriminating against loan applicant on basis of sex or marital status, was initially designed, at least in part, to curtail practice among creditors of refusing to grant wife's credit application without guaranty from her husband. Consumer Credit Protection Act, S 701(a)(1), as amended, 15 U.S.C.A. S 1691(a)(1). | Is a guarantor also an applicant? | Consumer Credit - Memo 231 - RK_66300.docx | ROSS-003283238-ROSS-003283239 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 21611 | Fishman v. Murphy ex rel. Estate of Urban, 433 Md. 534 | 266+1749 | Legal subrogation applies to cases where a third party, to protect its own interests, pays the debt of another. Bachmann, 316 Md. at 414, 559 A.2d at 369. A person who acts as a volunteer or intermeddler in paying another's debt is not entitled to subrogation under this category of equitable subrogation; however, when he or she pays the debtor's claim due to mistake or fraud, subrogation is available. Hill v. Cross Country Settlements, LLC, 402 Md. 281, 313, 936 A.2d 343, 362 (2007). This form of subrogation may apply even in the absence of an express or implied agreement. Id. As we stated in Hill, "the object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice and is the mode which equity adopts to compel the ultimate payment of a debt by one, who, in justice, equity, and good conscience should pay it." 402 Md. at 312, 936 A.2d at 362. Subrogation substitutes one creditor for another, with the substitute creditor having only the rights of the previous creditor. Id. Equitable subrogation is appropriate in situations where it is necessary to prevent unjust enrichment, even if the plaintiff has not argued that it is entitled to equitable subrogation. See Bachmann, 316 Md. at 410, 559 A.2d at 367. | A "bona fide purchaser," or innocent purchaser, entitled to bring a foreclosure action, exists when a party acquires property for valuable consideration, in good faith, and without notice of another's prior claim to the property. | "Does legal subrogation apply to cases where a third party, to protect its own interests, pays the debt of another?" | Subrogation - Memo 137 - VP C.docx | ROSS-003284665-ROSS-003284666 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21612 | Adolph Ramish v. Woodruff, 2 Cal. 2d 190 | 83k+525 | The majority decisions are the better reasoned and are in accordance with the policy of free circulation of commercial paper as a substitute for money and with the spirit and purpose of the Negotiable Instruments Law. In Mangold & Glandt Bank v. Utterback, 54 Okl. 655, 160 P. 713, 715, L. R. A. 1917B, 364, after quoting section 4113 of the Oklahoma Revised Laws of 1910, which is identical with section 3144 of our Civil Code and with section 63 of the Negotiable Instruments Law, all of which provide: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity," the Oklahoma court said: "It will be observed from section 4113 that the tendency of the law, when the status of a party who places his name upon the back of a negotiable instrument is under consideration, is to resolve all doubtful cases towards holding the same to be a commercial indorsement in due course. This rule is founded upon commercial necessity. The unshackled circulation of negotiable notes is a matter of great importance. The different forms of commercial instruments take the place of money. To require each assignee, before accepting them, to inquire into and investigate every circumstance bearing upon the original execution and to take cognizance of all the equities between the original parties, would utterly destroy their commercial value and seriously impede business transactions." In Richmond Guano Co. v. Walston, supra, similar language is used; "The decisions years ago on this important question were chaotic. In more recent years, and especially since the passage among the states over the nation of the Negotiable Instruments Laws to make the laws more uniform, the decisions are more in accord, and the great wealth hold that the indorsement, as in the present case, 'Demand, notice, and protest | Finding that note had been indorsed in blank so as to cut off defenses of maker against original payee held warranted, though indorsement recited that indorser guaranteed payment. | What is referred by an indorsement with an enlarged liability? | Bills and Notes-Memo 976-IS_58952.docx | ROSS-003294057-ROSS-003294058 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 21613 | In re Clean Burn Fuels, 492 B.R. 445 | 349Ak+117 | A principal may appoint an agent to act on the principal's behalf in the same capacity in which the principal can act on his own behalf. 2A C.J.S. Agency " 1. The agency relationship need not be express and, instead, may be implied from the words or conduct of the parties. at" 43. An agency relationship exists only when the principal exercises a right of control over the agent, with the intent that the agent achieves the principal's purpose in dealings with third parties. Vares v. Vares, 154 N.C.App. 83, 87, 571 S.E.2d 612, 615 (2002), Julian v. Lawton, 240 N.C. 436, 440 82 S.E.2d 210, 213 (1954). Thus, the agent acts for the principal under the principal's actual or apparent grant of authority. 2A C.J.S. Agency " 1. | Language in contract between Chapter 7 debtor and party that had agreed to provide it with all of the corn that it needed for use in production of ethanol, to effect that party would retain title to corn even after it had been delivered to debtor's plant, until corn was transported from storage bins at debtor's facility and passed over weight belt to building where ethanol was produced, whereupon debtor would become liable for payment based upon weight of corn utilized in ethanol production process, was ineffective under North Carolina law to prevent title to corn from passing to debtor once "delivery," as defined by parties' contract to occur upon unloading of corn at debtor's plant, had taken place; though parties may have contemplated that seller would retain title until corn was actually introduced into ethanol production process and debtor became liable for payment, this contract language reserved for seller only a security interest in corn after it was delivered, such that corn became "property of the estate" upon debtor's bankruptcy filing. 11 U.S.C.A. § 541(a)(1). | Does an agency relationship need to be express? | Principal and Agent - Memo 421 - RK_63541.docx | ROSS-003296343-ROSS-003296344 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 21614 | Cmty. Tr. Bank of Mississippi v. First Nat. Bank of Clarksdale, 150 So. 3d 683 | 366k+31(4) | When determining whether equitable subrogation should apply, "[t]he controlling consideration is the actual facts. The question is: What is natural justice under the actual facts of the situation?" Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923). Ultimately, determining whether equitable subrogation applies is done on a case-by-case basis. See Huff, 441 So.2d at 1319. "The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles." Id. "The doctrine of subrogation is one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice. It does not rest on contract, but upon principles of natural equity." Prestridge, 95 So. at 838 (internal quotation omitted). Accordingly, although certain factors may weigh more heavily for or against subrogation, ultimately it is awarded only after carefully weighing all of the facts and circumstances and deciding what the fairest result would be | To allow secondary lien holder subrogation over primary lien holder would be inequitable, regardless of whether secondary lien holder had actual knowledge of primary lien holder's lien; secondary lien holder was on constructive notice of the lien by virtue of its having been recorded in the office of the chancery clerk, allowing secondary lien holder to subrogate itself to the primary lien holder position would result in prejudice to primary lien holder not only by the amount of the new loan it would be placed behind, but also by the fact that loan involved two completely unknown and unanticipated parties, and secondary lien holder could file a claim against the title insurance company that insured against the risk of an intervening lien and negligently failed to inform anyone about it. West's A.M.C. § 89-5-7. | Is the determination of whether equitable subrogation applies done on a case-by-case basis? | Subrogation - Memo 52 - RM C.docx | ROSS-003299263-ROSS-003299264 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 21615 | State Auto Ins. Companies v. Whirlpool Corp., 62 F. Supp. 3d 857 | 170Ak+222 | Broadly speaking, equitable subrogation "rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer." Pitts v. Revocable Trust of Knueppel, 2005 WI 95, 34, 282 Wis.2d 550, 698 N.W.2d 761 (citing Garrity v. Rural Mut. Ins. Co., 77 Wis.2d 537, 541, 253 N.W.2d 512 (1977)); see also Universal Forest Prods. E. Div., Inc. v. Morris Forest Prods., LLC, 558 F.Supp.2d 893, 901 (E.D.Wis.2008). This is exactly what is happening in this case. Several insureds were allegedly injured by Whirlpool. Pursuant to the insurance policies State Auto subsidiaries issued, it compensated the insureds for their injuries. As such, State Auto was under "sufficient compulsion" to pay the debts of its subsidiaries. See Transamerica Ins. Co., 125 F.3d at 397. Given that the volunteer rule is intended to be a narrow exception to the doctrine of equitable subrogation, the court, therefore, concludes that State Auto may assert subrogation rights on behalf of those same subsidiaries. | Insured, who lived within the Western District of Wisconsin and thus could not be added as an involuntary plaintiff in subrogation action brought by insurance company seeking to recover payments made to insureds for property damage caused by an alleged defect in a valve installed in manufacturer's dishwashers and washing machines, was not a required party, and therefore, would be dropped from the action; insurance company asserted that it paid insured's loss in full without requiring him to pay his $2,500 deductible, and company had not pursued insured for his deductible. Fed.Rules Civ.Proc.Rules 19, 21, 28 U.S.C.A. | What does equitable subrogation rest upon? | Subrogation - Memo 171 - ANG C.docx | ROSS-003309894-ROSS-003309896 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 21616 | Foreman v. United Fin. Cas. Co., 966 F. Supp. 2d 1091 | 217+3514(2) | Here, the double recovery provision in Defendants' policies does not amount to subrogation. As a legal term of art, subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Thayer, 991 P.2d at 449 (quoting Black's Law Dictionary 1440 (Brian A. Garner ed., 7th ed., West 1999)). | Duplicate recovery clause in automobile insurance policies did not amount to de facto subrogation in violation of Montana's public policy against subrogation before the insured had been made whole; rather, the duplicate recovery clause was a valid double-recovery exclusion of optional collision coverage under the policy, it did not give insurer authority to substitute itself for insureds, and insureds received coverage for premiums they had paid. MCA 61-6-103. | Is subrogation the substitution of one party for another whose debt the party pays? | Subrogation - Memo # 544 - C - SU.docx | ROSS-003322438-ROSS-003322439 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21617 | In re First Transit Inc., 499 S.W.3d 584 | 307A+434 | The record in this case reveals that the court never journalized a date certain on which trial would commence. The last entry relative to trial set the case for trial the "week of 1-21-80." This entry merely indicated a general period of time during which trial would commence, but did not notify appellant or her counsel of any specific trial date on which an appearance would be required. Absent the setting of a specific trial date by journal entry, no sanction may be imposed upon a litigant for failure to appear at trial. Similarly, since the trial memorandum was to be submitted seven days prior to the trial date, because no specific trial date was set and journalized, appellant was uninformed of the date by which the trial memorandum was actually due. Therefore no sanction could be imposed for appellant's failure to submit a trial memorandum. | Trial court failed to consider imposing lesser discovery sanctions, as required before it could impose "death penalty sanction" of excluding all expert's testimony, based on bus company and driver's violation of court order by producing expert's documents regarding simulation of automobile collision only two days before deposition and less than 30 days before wrongful death trial, even though order warned that all of expert's testimony would be excluded if order was violated. Tex. R. Civ. P. 215.2, 215.3. | "Could a sanction be imposed for the failure to submit a trial memorandum? | Pretrial Procedure - Memo # 478 - C - LK.docx | ROSS-003328825-ROSS-003328826 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | |
| 21618 | Nationwide Mut. Ins. Co. v. First State Ins. Co., 213 F. Supp. 2d 10 | 25T+363(10) | Courts also have recognized that arbitrators frequently are experienced and familiar with the matters they are asked to decide. The Seventh Circuit has commented that, "people who arbitrate do so because they prefer a tribunal knowledgeable about the subject matter of their dispute to a generalist court with its austere impartiality but limited knowledge of subject matter." Merit, 714 F.2d at 679. As a result, an arbitration often represents a "tradeoff between impartiality and expertise." Id. The Second Circuit similarly has stated that "a principal attraction of arbitration is the expertise of those who decide the controversy. Expertise in an industry is accompanied by exposure, in ways large and small, to those engaged in it, and the dividing line between innocuous and suspect relationships is not always easy to draw." In re Andros CompaniaMaritima, S.A., 579 F.2d 691, 700 (2d Cir.1978). | Correction of arbitration award was required to conform amount in written award with award as orally stated by arbitrators at conclusion of hearing, where amount of written award clearly represented both amount owing and interest at rate requested by party, but rejected by panel. | Why do parties prefer to arbitrate? | 06325.docx | LEGALEASE-00078387-LEGALEASE-00078389 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 21619 | Franklin Iron & Metal Corp. v. Ohio Petroleum Underground Storage Tank Release Comp. Bd., 117 Ohio App. 3d 509 | 15A+2212 | This, however, is not the effect in the current case, nor do we believe it was the result in Senders, because the legislature's direction as to fund coverage and eligibility is not ambiguous. Therefore, adherence to the legislature's mandate does not prevent either the fire marshal or the board from carrying out a lawful function. In this context, we note the Supreme Court's admonition in Frantz that the intent of a statute must be determined from the language, and if the intent is clearly expressed, "the statute may not be enlarged or abridged." 51 Ohio St.3d at 145, 555 N.E.2d at 632. In addition, an unambiguous statute is "not subject to judicial modification under the guise of interpretation." Id. | Regulation that impermissibly adds to or subtracts from statute is one means of creating clear conflict with statute rendering regulation invalid, and another would be regulation that intends to clarify but is not reasonable or supportable interpretation of statute. R.C. S 3737.91(D)(1); Ohio Admin. Code S 3737-1-04(E)(1, 3). | Is an unambiguous statute subject to judicial modification? | 004037.docx | LEGALEASE-00116362-LEGALEASE-00116363 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21620 | City Nat'l Bank v. City of Beckley, 213 W. Va. 202 | 371+2027 | Because banking was a "business activity or occupation" for which the state previously imposed its B & O tax, municipalities are authorized under the provisions of West Virginia Code " 8"13"5 to continue to impose this type of tax. See W.Va Code "" 8"13"5; 11"13"2k (1983) (repealed W.Va. Acts 1989, 1st Ex.Sess., ch. 2). The essential nature of the banking business, as we discussed in Morris v. Marshall, 172 W.Va. 405, 305 S.E.2d 581 (1983), is the receipt of deposits. "Having a place of business where deposits are received and paid out on checks, and where money is loaned upon security, is the substance of the business of a banker." Warren v. Shook, 91 U.S. 704, 710, 23 L.Ed. 421 (1875). "Strictly speaking, the term "bank" implies a place for the deposit of money, and that is the most obvious purpose and a primary function of such an institution." 10 Am. Jur.2d Banks " 1 (1963). "The chief functions of a "bank" involve the receipt of deposits from the general public, repayable to the depositors on demand or at a fixed time, the use of deposit funds for secured loans, and the relationship of debtor and creditor between the bank and the depositor." 1 Banks and Banking 6 (1973). See also Oulton v. German Savings and Loan Society, 84 U.S.(17 Wall.) 109, 21 L.Ed. 618 (1872); Congress Industries, Inc. v. Federal Life Ins. Co., 114 Ariz. 361, 560 P.2d 1268 (1977); State v. Jefferson Finance Co., 163 La. 1005, 113 So. 355 (1927); State ex rel. Compton v. Buder, 308 Mo. 253, 271 S.W. 770 (1925); Williams v. Fidelity Loan & Savings Co., 142 Va. 43, 128 S.E. 615 (1925). | In the construction of tax laws, courts still must apply general rules of statutory construction with a view toward upholding the legislative intent; strict construction should not be used to defeat tax legislation that is reasonably clear in its meaning. | What are the chief functions of a bank as identified under the law? | Banks and banking - Memo 21 - JS.docx | ROSS-003284713-ROSS-003284714 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21621 | State v. Swayze, 30 La. Ann. 1323 | 203+909 | The judge charged the jury "that, where the killing is proved, malice is presumed by the law from the fact of killing, and that it was incumbent on the accused to prove any matter of excuse or extenuation," etc. This unqualified charge was too broad: the law throws around the prisoner, as a protective mantle, a presumption of innocence, whatever may be the crime for which he stands indicted. That rule has been adopted by, and-now-is in force in nearly every civilized State of the world. What would be its value and what would become of it, if the naked proof that the prisoner has killed, were to import-as a legal inference, that he has killed with malice and premeditation and that he is guilty of murder. Those adverse presumptions cannot co-exist: homicide is not always criminal: it may be justifiable and excusable: one may, without being guilty of any offence, kill in self-defence, to protect his property, to prevent a felony, in case of shipwreck and accidents, or in the lawful execution of the lawful mandate of a competent court. Were the criminality of the act attached and linked to the unqualified proof of the act itself, the killing once established, though it may be either justifiable or excusable, the State would be dispensed from proving the guilt of the accused, and he-under that perverted doctrine-would have to prove his innocence. | The jury are to infer malice only from the surrounding circumstances. It is not an implication of law from the act of killing. | Will homicide always be a criminal act? | Homicide - Memo 5-JS.docx | ROSS-003284425-ROSS-003284426 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21622 | Com. v. Leone, 286 Va. 147 | 92+2355 | However, when the General Assembly granted circuit courts the jurisdiction to restore those rights, it limited the territorial jurisdiction of circuit courts to adjudication of petitions for restoration filed by persons who reside within the territorial jurisdiction of the circuit court. See Code " 18.2"308(C). Territorial jurisdiction is synonymous with venue. Kelso v. Commonwealth, 282 Va. 134, 139, 710 S.E.2d 470, 473 (2011). Territorial jurisdiction is the "authority over persons, things or occurrences located in a defined geographic area." Porter v. Commonwealth, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008) (citation and internal quotation marks omitted). Territorial jurisdiction, unlike subject matter jurisdiction, can be waived. Id. at 229, 661 S.E.2d at 427. However, it was not waived in this case. The Commonwealth clearly objected to the circuit court adjudicating Leone's petition because he was not a resident of Virginia Beach | The General Assembly has the power under the Virginia Constitution to determine the jurisdiction of the courts of the Commonwealth. West's V.C.A.Const. Art. 6, § 1. | Are territorial jurisdiction and venue synonymous? | 005171.docx | LEGALEASE-00117258-LEGALEASE-00117259 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21623 | Rockwell Int'l Corp. v. Wilhite, 143 S.W.3d 604 | 386+2 | Kentucky law allows recovery under trespass in either of three instances: (1) the defendant was engaged in an extra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass. The Court has not discovered any Kentucky case stating the "elements" of a negligent trespass theory. However, Kentucky would follow the Restatement (Second) of Torts " 165 as do numerous other jurisdictions. | Recovery is allowed for trespass in either of three instances: (1) the defendant was engaged in an extra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass. | When does the law allow for recovery under trespass? | Trespass - Memo 43 - RK.docx | ROSS-003287695-ROSS-003287696 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21624 | Litz v. Maryland Dep't of Env't, 446 Md. 254 | 268+741.25 | Under common law, a trespass claim is generally "an intentional or negligent intrusion upon or to the possessory  interest in property of another." Schuman v. Greenbelt Homes, Inc., 212 Md.App. 451, 475, 69 A.3d 512, 526 cert. denied sub nom. Schuman v. Greenbelt Homes, 435 Md. 269, 77 A.3d 1086 (2013) (citation and quotation marks omitted). In Ms. Litz's Third Amended Complaint, she alleged that the "Town, County, DHMH and the State are invading and have invaded Litz's property by approving residential septic systems in the Town that channel polluted ground water and discharge those waters in unnatural and harmful quantities, qualities, and rates of flow onto Litz's property." In our earlier opinion in this litigation, we found that the complaint alleged a continuing cause of action on this score because, in the light most favorable to Ms. Litz, "a trier of fact could conclude that the Town's duties were ongoing and continuous." Litz I, 434 Md. at 648"49, 76 A.3d at 1091. In specific reference to the trespass claim, we concluded that | Tort of trespass is subject to the notice of claim requirement of the Local Government Tort Claims Act. West's Ann.Md.Code, Courts and Judicial Proceedings, § 5-304(d). | What is a trespass? | 000766.docx | LEGALEASE-00117503-LEGALEASE-00117504 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21625 | Com. v. Ramsey, 76 Mass. App. Ct. 844 | 110+1169.1(10) | Fourth, the judge's charge on the incest indictment was favorable to the defendant. Even though the defendant's incest was alleged to have occurred between October 22, 2001, and November 14, 2002, the judge instructed the jury under the old incest "860 statute, which restricted the crime to natural sexual intercourse with another in a prohibited line of consanguinity. However, that statute was only applicable to pre-May 1, 2002, allegations. See Commonwealth v. Smith, 431 Mass. 417, 422"424, 728 N.E.2d 272 (2000) (limiting incest to penile-vaginal penetration; other sexual activity excluded by incest statute). The current statute, G.L. c. 272, " 17, as amended by St.2002, c. 13, would have covered a great deal more of the defendant's acts that occurred between May 1, 2002, and November 14, 2002. | The trial court committed prejudicial error when it admitted into evidence the victim's hospital records from her hospitalization following an alleged suicide attempt, in prosecution for incest; the records contained multiple repetitions by hospital staff of the allegations of abuse, and the central determination before the jury was the credibility of the victim. | Is incest limited to penile-vaginal penetration? | Incest - Memo 57 - RK.docx | ROSS-003285930-ROSS-003285931 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 21626 | Tincher v. Omega Flex, 628 Pa. 296 | 30+3348 | We have recently stressed in multiple cases that the common law "develops incrementally, within the confines of the circumstances of cases as they come before the Court." Scampone, 57 A.3d at 604 (quoting Maloney v. Valley Med. Facilities, Inc., 603 Pa. 399, 984 A.2d 478, 489"90 (2009)). Cause of action at common law evolve through either directly applicable decisional law or by analogy and distinction. Id.; accord City of Philadelphia v. Cumberland County Bd. of Assessment Appeals, 622 Pa. 581, 81 A.3d 24, 54 (2013). Among the duties of courts is "to give efficacy to the law ... and though they cannot make laws, they may mould the forms of the ancient laws to the exigency of the new case." Reed v. Garvin's Executors, 1821 WL 1898 at (Pa.1821). Notably, its equitable powers afford the Court the authority to modify the common law forms of action to the right involved, rather than limiting the authority to testing the right by the forms of action. See Kase v. Kase, 34 Pa. 128, 1859 WL 8779 at (Pa.1859). See also Pa. Const. art. V, " 10(c) (Supreme Court has power "to prescribe general rules governing practice, procedure and the conduct of all courts ... if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant ...."); e.g., Pa.R.C.P. No. 1001(b) ("There shall be a civil action in which shall be brought all claims for relief heretofore asserted in (1) the action for assumpsit, (2) the action of trespass, and (3) the action in equity"). | On appeal, Supreme Court examines jury instructions to determine whether the trial court abused its discretion or offered an inaccurate statement of law controlling the outcome of the case. | How do causes of action at common law evolve? | Action - Memo 31 - ANG.docx | ROSS-003325243-ROSS-003325245 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21627 | Dantzler Lumber & Exp. Co. v. Columbia Cas. Co., 115 Fla. 541 | 217k3517 | As to the nature and doctrine of subrogation, in 25 R. C. L. 1313, it is said: "The doctrine of subrogation is generally considered to have been derived, and the term itself borrowed, from the civil law, though some authorities regard the Roman Law as its source. However this may be, it has long been an established branch of equity jurisprudence. It does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine, therefore, which will be applied or not according to the dictates of equity and good conscience, and considerations of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate, securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expression of the rule has so nearly covered the field that it may now be said that, wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded. | If public accountants engaged to audit employer's books negligently failed to discover employee's embezzlements, beginning in 1927, until 1931, surety on fidelity bond during such time would, upon payment of bond liability, be subrogated pro tanto to employer's rights against accountants. | "Will the remedy of equitable subrogation be applied in all cases where demanded by the dictates of equity, good conscience, and public policy?" | 002618.docx | LEGALEASE-00120112-LEGALEASE-00120114 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | |
| 21628 | Vogt v. Schroeder, 129 Wis. 2d 3 | 217k3523(4) | This argument has a surface plausibility, but it overlooks the fact that subrogation is an equitable doctrine and depends upon a just resolution of a dispute under a particular set of facts. 6A Appleman, Insurance Law and Practice, sec. 4051, p. 110. Equity does not lend itself to the application of black letter rules. Hence, only under fact situations where an equitable result will follow should the statements quoted above be applied literally. | Where insurance contract provided for subrogation only if underinsurer first made payment to its insured, insured could not accept settlement offered by tort-feasor's insurer without precluding underinsurer's subrogation rights against tort-feasor. | "Because equity does not lend itself to the application of black letter rules, does subrogation depend upon a just resolution of a dispute under a particular set of facts?" | 044140.docx | LEGALEASE-00121788-LEGALEASE-00121789 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 21629 | United States v. Riverside Bayview Homes, 474 U.S. 121 | 1.49E+122 | We have frequently suggested that governmental land-use regulation may under extreme circumstances amount to a "taking" of the affected property. See, e.g., Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). We have never precisely defined those circumstances, see id., at 123-128, 98 S.Ct., at 2658-61; but our general approach was summed up in Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), where we stated that the application of land-use regulations to a particular piece of property is a taking only "if the ordinance does not substantially advance legitimate state interests ... or denies an owner economically viable use of his land." Moreover, we have made it quite clear that the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking. See Hodel v. Virginia Surface Mining & Reclamation Assn., 452 U.S. 264, 293*297, 101 S.Ct. 2352, 2369*71, 69 L.Ed.2d 1 (1981). The reasons are obvious. A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent "economically viable" use of the land in question can it be said that a taking has occurred. | Corps of Engineers may transfer to the states the authority to issue permits to discharge dredged or fill material into navigable waters if the states have devised federally approved permit program; absent such an approved program, the Corps retains jurisdiction to issue such permits for all waters of United States. Federal Water Pollution Control Act Amendments of 1972 (Clean Water Act), SS 301, 404, 502, as amended, 33 U.S.C.A. SS 1311, 1344, 1362. | Can the mere assertion of jurisdiction by an agency and the issuing of proposed regulations effect a taking? | 017485.docx | LEGALEASE-00123147-LEGALEASE-00123148 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 21630 | State ex rel. KCP & L Greater Missouri Operations Co. v. Missouri Pub. Serv. Comm'n, 408 S.W.3d 153 | 30k3015 | "When tariffs are superseded by subsequent tariffs that are filed and approved, the superseded tariffs are generally considered moot and therefore not subject to consideration because superseded tariffs cannot be corrected retroactively." Id. at 334 (internal quotation omitted). However, the parties have requested that we exercise our discretion to invoke an exception to the mootness doctrine and review the issues in this case. We have recognized that " "[i]t is not unusual in public-utility rate cases for new tariffs to overtake proceedings involving old tariffs." " Id. at 334 (quoting State ex rel. City of Joplin v. Pub. Serv. Comm'n, 186 S.W.3d 290, 296 (Mo.App. W.D.2005)). "Invocation of [an] exception to the mootness doctrine is within this [c]ourt's discretion when it is demonstrated that the case in question presents an issue that[:] (1) is of general public interest; (2) will recur; and (3) will evade appellate review in future live controversies." Id. at 334*35. | A threshold question in any appellate review of a controversy is the mootness of the controversy. | Are tariffs generally considered moot if they are superseded by subsequent tariffs that are filed and approved? | Public Utilities - Memo 133 - AM.docx | ROSS-003284621-ROSS-003284623 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21631 | Jones v. Nationwide Prop. & Cas. Ins. Co., 613 Pa. 219 | 30+3691 | In determining the legality of Nationwide's practice of reimbursing Jones from its subrogation recovery only a pro rated portion of the deductible, we must first consider subrogation and the made whole doctrine generally. We have repeatedly held that subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss. Valora, 939 A.2d at 320. Subrogation allows the subrogee (in this case the insurer) to step into the shoes of the subrogor (the insured) to recover from the party that is primarily liable (the third party tortfeasor) any amounts previously paid by the subrogee to the subrogor (in this case, the amount of damage to the vehicle less the deductible). See e.g. Ario v. Reliance Insur. Co., 602 Pa. 490, 980 A.2d 588, 594"95 (2009). As well-stated by the Superior Court,[W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense.Allstate Ins. Co. v. Clarke, 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987). While subrogation rights may be contractually determined, as in this case, those rights are still subject to equitable principles. See Valora, 939 A.2d at 320. | Issue of whether the pro rata reimbursement of an insured's deductible from the insurer's subrogation recovery in a collision coverage case violated the common law made whole doctrine presented a question of law subject to plenary review. | Does subrogation place the ultimate burden of a debt upon the party primarily responsible for the loss? | Subrogation - Memo 988 - C - CAT.docx | ROSS-003326084-ROSS-003326085 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21632 | Holmquist v. New England Tel. & Tel. Co., 637 A.2d 852 | 372+971 | Plaintiffs seek to establish discrimination by arguing that the PUC's decision in Lewiston, Greene & Monmouth Tel. Co. v. New England Tel. & Tel. Co., No. F.C. 1902 (M.P.U.C.1972), forbids any differences between telephone services provided to similarly-situated customers. They misinterpret that decision. There the PUC held that "customers substantially similarly situated should receive comparable and substantially similar treatment in measuring the degree of the relative burden the various classes of customers might reasonably be expected to assume by the way of paying rates and charges for ... services." Id. at 24. This decision does not require that there be no differences between services. Rather, when "comparable services" are provided, customers should pay "comparable rates and charges" for those services. Id. at 23. The decision thus is but one facet of the statutory requirement that there be no "unjust discrimination" by a utility. See 35-A M.R.S.A. " 702(1) (1988). Mere differences are not unjust discrimination. Gifford v. Central Maine Power Co., 217 A.2d 200, 202 (Me.1966). Only differences which cannot be justified on a legitimate basis are illegal. See Central Maine Power Co. v. Public Utilities Comm'n, 405 A.2d 153, 177-78 (Me.1979). | Record on appeal from order of Public Utilities Commission dismissing complaint of independent telephone company against carrier disclosed that Commission had promptly and seriously considered consumer complaints as required by previous decision. 35-A M.R.S.A. S 702, subd. 1. | Is unjust discrimination by utilities allowed? | | 042336.docx | LEGALEASE-00125720-LEGALEASE-00125722 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21633 | In re Lewis' Estate, 37 Pa. D. & C. 463 | 51+3376(3) | Under common law, the surety, upon satisfying his principal's obligation, is subrogated to the rights and remedies of the creditor against the principal connected with the debt. In re Elizalde's Estate, 182 Cal. 427, 188 P. 560 (1920). By paying the required bond payment, Fidelity assumed all the rights Murry had against Martin, including the right to assert nondischargeability under " 523(a)(4). See, e.g., 3 Collier on Bankruptcy, 523.14 at 523-111 to 523-112 (15th ed. 1993). | Arizona law imposes upon business partners a fiduciary duty within meaning of the discharge exception for debt for fraud or defalcation while acting in fiduciary capacity. Bankr.Code, 11 U.S.C.A. S 523(a)(4). | Is surety subrogated to the rights and remedies of the creditor against the principal? | Subrogation - Memo # 654 - C - SA.docx | ROSS-003285431-ROSS-003285432 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 21634 | In re Davis' Estate, 5 Whart. 530 | 289+956 | A partnership may be dissolved by the act of God, by the act of the party, and by the act and operation of law. This partnership was dissolved by an agreement, the particulars of which are not stated; Davis quitting the concern, leaving Desauque in possession of the store and stock, with a general authority to wind up the business of the firm. As a general principle, when a partnership is ended in any of the modes mentioned, no one of the partners can make use of the partnership estate, in a manner inconsistent with the settlement of the joint estate. The object of the association having terminated, it follows that one of the partners cannot create any new obligation binding the firm; for after a dissolution nothing remains to be done, except to arrange the affairs of the partnership; but until they are finally arranged, the connection between the parties subsists; and for this purpose, and until a settlement takes place, the partnership continues. | After the dissolution of a partnership by agreement, the partner who is authorized to settle the estate may borrow money on the credit of the firm for the purpose of paying the debts of the firm; and if the credit is given in good faith, though with a knowledge of the dissolution, and the money is faithfully applied to the liquidation of the joint debts, the creditor has a claim against the firm, and is not to be considered as a creditor merely of the partner borrowing. | Can a partnership come to an end by an act of god? | Partnership - Memo 189 - RK.docx | ROSS-003299611-ROSS-003299613 | Condensed, SA | 0.51 | 0 | 0 | 1 | | |
| 21635 | Arizona Corp. Comm'n v. Reliable Transp. Co., 86 Ariz. 363 | 48A+84 | The very material differences in the extent of regulation of common and contract motor carriers suggest the legislative rationale to be given effect in defining the two classes of carriers. Under the doctrine of "regulated monopoly," which is "the basic law of the state" (see Old Pueblo Transit Co. v. Arizona Corp. Commission, 1958, 84 Ariz. 389, 390, 329 P.2d 1108, 1109), it is obvious that certain motor carriers are deemed to be so affected with the public interest and welfare that they should be regulated in the interest of the public; other carriers which are not so affected need not be subject to such stringent regulation. | On appeal from Superior Court judgment vacating commission orders granting contract motor carrier permits, Supreme Court's scope of review was not same as that of court below, and test in Supreme Court was whether there was substantial evidence to support finding of Superior Court that order of commission was unlawful. A.R.S.Const. art. 15, S 17; A.R.S. S 40-254. | Is the doctrine of regulated monopoly the basic law of the state? | | 042456.docx | LEGALEASE-00127528-LEGALEASE-00127529 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 21636 | Smith v. Rohrbaugh, 2012 PA Super 208 | 115+64 | While subrogation rights are addressed in terms of Subchapter B first-party benefits, subrogation can be a matter of contract in adversarial actions. While there is always a legal right to subrogation, that right, like any, can be waived or modified by agreement of the parties. If an insurer waives its right to collect against the tortfeasor, we see no reason why the courts should interfere with that arrangement.8 In this instance, the waiver of subrogation rights may have disadvantaged State Farm, but State Farm is a sophisticated party and is free to enter into an agreement that might prove financially imprudent. | Statutory provision that precluded the recovery of uninsured motorist (UM) benefits in a damages action against a tortfeasor was not designed or intended to require the offset of underinsured motorist (UIM) benefits from a damages award, and thus, trial court was precluded from molding jury verdict in favor of driver injured in rear-end collision to 0 on the basis driver had received $75,000 in UIM benefits; overruling Pusl v. Means, 982 A.2d 550. 75 Pa.C.S.A. S 1722. | Can subrogation be a matter of contract in adversarial actions? | | 043557.docx | LEGALEASE-00127810-LEGALEASE-00127811 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21637 | Garcia v. Munnerlyn, 191 Misc. 2d 689 | 115+206(5) | In the present case, where defendants sought to conduct the physical examination before the time that plaintiffs were permitted to file a notice of trial, relieving defendants of their waiver will not result in prejudice since their action will remain on the trial calendar. Counsel for the parties, indeed, are required to be in Trial Term on August 1, 2002, to conference this case with the Trial Term Judge. In a short and sensitive opinion, the court underscored the importance of a preliminary conference and orders that emanate from such conferences. Justice James H. Shaw, Jr. stated that preliminary conferences (1) facilitate and enhance discovery and (2) enable courts to decide on which cases need to be referred to Civil Court pursuant to CPLR 325(d). Id. at 635, 685 N.Y.S.2d 884. | Compliance conference order in personal injury case, requiring defendants to designate a doctor to conduct independent medical examination (IME) within ten days, was proper, although such time period was minimum required by law. | What is the useful function of a preliminary conference? | 026619.docx | LEGALEASE-00130097-LEGALEASE-00130098 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21638 | Com. ex rel. Dep't of Justice v. A. Overholt & Co., 331 Pa. 182 | 23H+487 | In Cope's Estate, 191 Pa. 1, 21, 42 A. 79, 45 L.R.A. 316, 71 Am.St.Rep. 749, this court, after quoting this section, said (page 81): "The words, "all taxes' must necessarily be construed to include property tax, inheritance tax, succession tax, and all other kinds of tax the subjects of which are susceptible of just and proper classification. By necessary implication, the first clause of that section recognizes the authority of the legislature to justly and fairly, but never argislature to justly those subjects of taxation with the view of effecting relative equality of burdens. These limitations on the power of the legislature mean something. They are plainly intended to secure, as far as possible, uniformity and relative equality of taxation, by prohibiting, generally, the exemption of a certain part of any recognized class of property, and subjecting the residue to a tax that should be borne uniformly by the entire class, and by guarding against any other device that necessarily or intentionally infringes on the established rules of uniformity and relative equality which, as we have seen, underlie every just system of taxation." In 26 R.C.L., page 37, sec. 21, it is stated "Taxes are either specific or ad valorem. Specific taxes are of a fixed amount by the head or number, or by some standard of weight or measurement and require no assessment other than a listing or classification of the subjects to be taxed. An ad valorem tax is a tax of a fixed proportion of the value of the property with respect to which the tax is assessed, and requires the intervention of assessors or appraisers to estimate the value of such property before the amount due from each taxpayer can be determined. | The liquor floor tax law imposing tax of $2 per gallon regardless of value of liquor, on spirituous and vinous liquors stored in commonwealth between effective date of law and date of ratification of Twenty-First Amendment to Federal Constitution by three-fourths of the states violated provision of State Constitution requiring uniformity in taxes and the due process and equal protection provisions of Federal Constitution. 47 P.S. S 780 et seq.; P.S.Const. art. 9, S 1; U.S.C.A.Const. Amend. 14, S 1. | What are the types of taxes? | 045428.docx | LEGALEASE-00130681-LEGALEASE-00130682 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21639 | Com. ex rel. Dep't of Justice v. A. Overholt & Co., 331 Pa. 182 | 23H+487 | In Cope's Estate, 191 Pa. 1, 21, 42 A. 79, 45 L.R.A. 316, 71 Am.St.Rep. 749, this court, after quoting this section, said (page 81): "The words, "all taxes' must necessarily be construed to include property tax, inheritance tax, succession tax, and all other kinds of tax the subjects of which are susceptible of just and proper classification. By necessary implication, the first clause of that section recognizes the authority of the legislature to justly and fairly, but never argislature to justly those subjects of taxation with the view of effecting relative equality of burdens. These limitations on the power of the legislature mean something. They are plainly intended to secure, as far as possible, uniformity and relative equality of taxation, by prohibiting, generally, the exemption of a certain part of any recognized class of property, and subjecting the residue to a tax that should be borne uniformly by the entire class, and by guarding against any other device that necessarily or intentionally infringes on the established rules of uniformity and relative equality which, as we have seen, underlie every just system of taxation." In 26 R.C.L., page 37, sec. 21, it is stated "Taxes are either specific or ad valorem. Specific taxes are of a fixed amount by the head or number, or by some standard of weight or measurement and require no assessment other than a listing or classification of the subjects to be taxed. An ad valorem tax is a tax of a fixed proportion of the value of the property with respect to which the tax is assessed, and requires the intervention of assessors or appraisers to estimate the value of such property before the amount due from each taxpayer can be determined. | The liquor floor tax law imposing tax of $2 per gallon regardless of value of liquor, on spirituous and vinous liquors stored in commonwealth between effective date of law and date of ratification of Twenty-First Amendment to Federal Constitution by three-fourths of the states violated provision of State Constitution requiring uniformity in taxes and the due process and equal protection provisions of Federal Constitution. 47 P.S. S 780 et seq.; P.S.Const. art. 9, S 1; U.S.C.A.Const. Amend. 14, S 1. | What is a specific tax? | 045441.docx | LEGALEASE-00130683-LEGALEASE-00130684 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21640 | People v. Vertrees, 169 Cal. 404 | 67+36 | The only testimony of burglary of the first degree is found in the statement of Noble which is quoted herein. The time of entering a building is one of the essential elements of the crime of burglary of the first degree, and that constituent of the offense may not be proved by the confession of the defendant alone. | In a prosecution against V. for burglary with intent to steal papers used in proceedings before the grand jury, leading up to an indictment against K., evidence that defendant showed witnesses a check drawn by K. in favor of V. is not admissible. | Is time a material ingredient of burglary? | Burglary - Memo 71 - RK.docx | ROSS-003287453-ROSS-003287454 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 21641 | Klingensmith v. James B. Clow& Sons, 273 Mich. 48 | 101+2928 | In Molsons Bank v. Berman, 224 Mich. 606, 195 N. W. 75, 77, 35 A. L. R. 1289, this court held, "a note is but evidence of the debt, which still exists if the note is lost or destroyed, and is not extinguished until it is in fact paid in money or something expressly accepted as such." | Receiver of debtor corporation appointed on application of creditor to whom renewal notes were executed subsequent to giving of unfiled chattel mortgage to another creditor held entitled to recover value of mortgaged property from such mortgagee, since receiver was representing "subsequent creditor". Comp.Laws 1929, S 15353. | Is a note evidence of the debt or liability? | 009475.docx | LEGALEASE-00134414-LEGALEASE-00134415 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21642 | State v. Leshore, 358 P.3d 878 | 110=2139 | As previously stated, the jury found Jordan guilty of one count of aggravated burglary, two counts of aggravated battery, and one count of aggravated  assault. Under K.S.A.2014 Supp. 21"5807(a)(1), a person commits an aggravated burglary by entering a structure without authority "with intent to commit a felony, theft or sexually motivated crime therein." (Emphasis added.) An aggravated battery occurs when a person knowingly caus[es] great bodily harm to another person or disfigurement of another person ... or knowingly caus[es]  physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A.2014 Supp. 21"5413(b)(1)(A) and (C). (Emphasis added.) Furthermore, a person commits an aggravated assault by "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A.2014 Supp. 21"5412(a). (Emphasis added.) Thus, the culpable mental state associated with aggravated burglary is "intentionally," and the culpable mental state associated with aggravated battery and aggravated assault is "knowingly." | Prosecutor's statement during closing argument, stating that it was defendant's intention all along to get the $480 that she was not legally entitled to get without her husband's permission, or without her husband's signature on the check, did not constitute prosecutorial misconduct in forgery case; prosecutor was discussing the claims the State had to prove, including intent to defraud, and prosecutor was not asserting a personal opinion about defendant's guilt. | What is the culpable mental state for aggravated burglary? | Burglary - Memo 95 - MS.docx | ROSS-003305060-ROSS-003305062 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 21643 | Pepper v. Triplet,864 So.2d 181 | 28=66.5(1) | The defendant argued that the trial court should have made a specific finding that the plaintiff had committed a trespass. While it is clear that the plaintiff intentionally entered the defendant's immovable property when he knew that his entry was unauthorized, the plaintiff may have had an affirmative defense to a criminal trespass charge under La.Rev.Stat. 14:63(C)(2), because the defendant's yard was not both fenced and posted with "no trespassing" signs as required by La.Rev.Stat. 14:63(E)(3). Nevertheless, the plaintiff's conduct does amount to a delict under La. Civ.Code art. 2315 in that he knowingly entered the defendant's property without his authorization. Article 2315 of the Civil Code provides in pertinent part that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. A civil trespass is defined as the unlawful physical invasion of the property or possession of another. Dickie's Sportsman's Centers, Inc. v. Department of Transp. and Development, 477 So.2d 744, 750 (La.App. 1st Cir.), writ denied, 478 So.2d 530 (La.1985). And a trespasser has been defined as "one who goes upon the property of another without the other's consent." Williams v. J.B. Levert Land Co., Inc., 162 So.2d 53, 58 (La.App. 1st Cir.), writ refused, 245 La. 1081, 162 So.2d 574 (1964); see also Britt Builders, Inc. v. Brister, 618 So.2d 899, 903 (La.App. 1st Cir.1993). Under these facts, then, it is clear that the plaintiff committed a trespass. | Neighbor failed to show that dog owner failed to exercise reasonable care in trying to prevent any damages to his neighbors that might be caused by his dog, and therefore, neighbor failed to establish that owner was negligent for injuries he sustained when the dog attacked him in the owner's yard; neighbor's behavior in entering owner's fenced yard without permission amounted to a trespass, neighbor knew dog was present in the yard and was territorial, and owner had discussed with neighbor's mother an earlier incident in which a child had been bitten by the dog. | Who is defined as a trespasser? | | 047385.docx | LEGALEASE-00134783-LEGALEASE-00134784 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 21644 | United States v. Gjieli, 717 F.2d 968 | 63=1(1) | In Krogmann v. United States, 225 F.2d 220, 225 (6th Cir.1955) the Court held that " 201 was applicable where the advice and recommendation of a public official would be influential even though the public official did not have the authority to make the final decision. Indeed, Krogmann explicitly recognized that it was the intent of the briber which was controlling. The defendant in Krogmann claimed that there was insufficient evidence to establish that the defendant public official had authority over the property which was to be sold as surplus. After reviewing the evidence, the Court explained that the briber's intent to corrupt and not achievement of the desired result was the controlling consideration:in addition, the offense charged was complete upon the payment of the money to [the bribee] with the intent to influence his action with respect to the sale of surplus property. The evidence was sufficient to show that appellants were interested in the surplus property at Oak Ridge and made the payments for the purpose of influencing [the bribee's] action with respect to such property. Whether the attempt was successful or what the officer did in attempting to perform his side of the bargain are accordingly immaterial. Wolf v. United States, 6 Cir., 292 F. 673, 675; Curtis v. State, 113 Ohio St. 187, 191, 148 N.E. 834; Underhill on Criminal Evidence, 4th Edition, Sec. 715. | Definitional section of statute governing offense of bribery of public official imposes no requirement that a bribed "employee" be acting in any official function before public official requirement may be satisfied; rather, the phrase "any official function" was intended to modify only "person acting for or on behalf of the United States," and not officer or employee. 18 U.S.C.A. SS 201, 201(a). | "For a charge of bribery, is the successful attempt or what the officer did in attempting to perform his side of the bargain immaterial?" | Bribery - Memo #421 - C E8.docx | ROSS-003290379-ROSS-003290380 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 21645 | Pjetrovic v. Home Depot, 411 S.W.3d 639 | 30=3239 | When a request for a continuance is based on the withdrawal of counsel, it is the duty of the movant to show that the withdrawal was not due to negligence or fault on the part of the movant. Villegas, 711 S.W.2d at 626; Pandozy v. Shamis, 254 S.W.3d 596, 601 (Tex.App.-Texarkana 2008, no pet.). The Texas Supreme Court has suggested that it may be the trial court's duty to see that an attorney's withdrawal will not result in foreseeable prejudice to the client. Villegas, 711 S.W.2d at 626 ("In this case, the trial court abused its discretion because the evidence shows that Villegas was not negligent or at fault in causing his attorney's withdrawal."). Assuming, without deciding, an attorney's withdrawal is grounds to request a modification to a scheduling order, we are confident that the requirement of lack of negligence and fault would apply as well. Because Pjetrovic has failed to show his first attorney's withdrawal was not due to negligence or fault of Pjetrovic, error has not been established. | The ruling on a motion for continuance is reviewed for a clear abuse of discretion. | "When the ground specified in a motion for a continuance is the withdrawal of counsel, must movants show that the failure to be represented at trial was not due to their own fault or negligence?" | 029443.docx | LEGALEASE-00136412-LEGALEASE-00136413 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21646 | Ex parte M & F Bank, 58 So. 3d 111 | 30k3396 | It is unclear to this Court how M & F's provision of advice and assistance to Altman, Toffel, and Porterfield concerning Toffel's motion to have M & F's own mortgage rendered invalid or ineffective constitutes compromise negotiations. Further, as the circuit court explained, Rule 408, Ala. R. Evid., does not place a complete bar on the discovery of evidence concerning negotiations and settlements. It merely limits the admissibility of such evidence. Specifically, "a party seeking discovery of evidence relating to settlement negotiations must make a 'particularized showing' that the requested documents are relevant and likely to lead to the discovery of admissible evidence." Ex parte Water Works & Sewer Bd. of Birmingham, 723 So.2d 41, 44 (Ala.1998) (citing Bottaro v. Hatton Assocs., 96 F.R.D. 158, 160 (E.D.N.Y.1982)). | The Supreme Court reviews a trial court's discovery orders only in certain exceptional cases, one of which is when a privilege is disregarded. | Does the law place a complete bar on the discovery of evidence concerning negotiations and settlements? | Pretrial Procedure - Memo # 4840 - C - 55.docx | ROSS-003290812-ROSS-003290813 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 21647 | Cochran v. United States, 19 Cl. Ct. 455 | 1708k3092 | This court's holding is also consistent with the cases that have used "value" to determine the minerality of a substance. Estate of Charles O. Fairbank v. United States, 164 Ct.Cl. 1, 10 (1964); United States v. Isbell Constr. Co., 78 I.D. 385, 394*396 (1971); Op. Solicitor M°36379 (Dep't Interior Oct. 3, 1956). In Fairbank, the court stated that the test of minerality is whether the known conditions on the appropriate date are such as reasonably to engender the belief that the lands contain minerals of such quality and quantity as would render their extraction profitable and justify expenditures to that end. In Isbell Constr., the Solicitor stated that "valuable" deposits of gravel were minerals and could be reserved to the United States under a reservation of minerals. Isbell Constr., 78 I.D. at 390. In the Solicitor's Opinion, because gravel could be sold at a profit, it would be considered a mineral, "[t]hese concepts of 'value' and "existence of a market" have also been long applied by the authorities in construing mineral reservations in grants of private lands...." Op. Solicitor M°36379 at 3 (citations omitted) | Federal law governed dispute between Indian mineral interest owners and United States Government over owners' entitlement to compensation for removal of gravel from property. | What is the test of minerality? | 021175.docx | LEGALEASE-00139335-LEGALEASE-00139337 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 21648 | State Oil & Gas Bd. v. Mississippi Mineral & Royalty Owners Ass'n, 258 So. 2d 767 | 260k92.52 | I am of the opinion that the order of the board which is based upon the above premises and not upon evidence of waste is arbitrary and capricious. The correlative and co-equal rights of the royalty owners were inundated by the evidence directed to the economic interests of the petitioners who seek increased profit over what appears to be good profit as an incentive to the industry. The language of the Supreme Court of Oklahoma in re the Application of Peppers Refining Company, 272 P.2d 416, 424 (Okl.1954), though limited to a single reservoir, not statewide as here, answered a similar argument most precisely as follows:In our opinion it is more important to secure to each lessor, lessee, and owner of mineral rights in a field, his ratable share of the production therefrom and to prevent underground waste, than it is to secure to some, the maximum profits from drilling and producing operations. * * *See also 7 Oil & Gas Repl. 1471 (1957), as well as 5 Oil & Gas Rep. 1219 (1956), Application of Champlin Refining Co., 296 P.2d 176 (Okl.1956), and 3 Oil & Gas Rep. 1385 (1954). | Orders of state oil and gas board amending its statewide rules to widen and increase spacing pattern for oil and gas wells drilled below 12,000 feet and in Pennsylvanian and older formations below a measured depth of 3,500 feet, to a drilling unit of 80 acres for an oil well and a drilling unit of 640 acres for a gas well were not arbitrary or capricious and were not beyond board's power. Code 1942, SS 6132-01, 6132-10. | "Is it more important to secure each lessor, lessee, and owner of minerals rights in a field, his ratable share of the production therefrom and to prevent underground waste, than it is to secure to some, the maximum profits from drilling and producing operations?" | 021648.docx | LEGALEASE-00139363-LEGALEASE-00139364 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 21649 | Fuentes v. United States, 107 Fed. Cl. 348 | 34k5(8) | Although the "Secretary of the Army has broad discretion to release reserve officers from active duty," this discretion is limited by the Army's regulations.Groves, 47 F.3d at 1145. Administrative separations from active duty are governed by Army Regulation 635*200, Active Duty Enlisted Administrative Separations (June 6, 2005). Pursuant to the regulation, the Army may not separate a reservist or a National Guard member from active duty because his term of service has ended if the reservist is entitled to be processed through the disability system. Army Reg. 635*200 " 4*2 (a soldier that is "physically unfit for retention ... but who w[as] accepted for, or continued in, military service ..., will not be separated because of [Expiration of Term of Service] unless processing for separation because of physical disability is waived"); see also Army Reg. 635*40 " 3*7 (Feb. 8, 2006) (an active reservist whose "normal scheduled date of ... separation occurs during the course of ... disability evaluation may ... be retained in the service until ... completion of disability evaluation if otherwise eligible for referral into the disability evaluation system...."). | Even if the merits of a military decision are committed wholly to the discretion of the military, a court still may address a challenge to the particular procedure followed in rendering a military decision. | Is the discretion of the Secretary of Army limited by the Armys regulations even though he has broad discretion to release officers from active duty? | 008572.docx | LEGALEASE-00140129-LEGALEASE-00140130 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21650 | Bank of Am., N.A. v. Ash, 2015 OK CIV APP 69 | 266k1138 | " "Renew" or "renewal" as applied to or used in notes, certificates of deposit, and bills of exchange implies and requires execution of new instrument." Clifford v. U.S. Fidelity & Guaranty Co., 1926 OK 564, " 18, 119 Okla. 133, 249 P. 938. An "extension" of time or payment means a valid and binding contract to delay the enforcement of the instrument. CJS Bills and Notes, " 142. The word "modify" means to alter or change in incidental or subordinate features, or to enlarge, extend, limit or reduce. Cartwright v. Atlas Chemical Industries, Inc., 1981 OK 4, " 8, 623 P.2d 606, 610. | The question of whether the giving of a new note and mortgage satisfies the first note and mortgage on the same property is a question of fact concerning the parties' intent at the time the subsequent note and mortgage were executed. | What does renewal require? | 009544.docx | LEGALEASE-00140690-LEGALEASE-00140691 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21651 | Boyd v. Corbitt, 37 Mich. 52 | 83E+731(4) | The collecting agent can sue in his own name on paper payable to bearer and indorsed in blank (Brigham v. Gurney 1 Mich. 349 and note); so can a bank sue in its own name with the consent of the owner of the paper (Lobdell v. Merch and Mfrs' Bank 33 Mich. 408); so can an executor if the paper belongs to the estate and is payable to bearer (Knapp v. Lee 42 Mich. 42), and an agent can of course sue in his own name after paying to his principal the amount due (Coy v. Stiner 53 Mich. 42); an indorsee suing in justice's court is presumed to own the paper on which he sues (Wilson Sewing Machine Co. v. Spears 50 Mich. 534), but if the note is indorsed to the justice himself, for collection, suit cannot be brought before him (West v. Wheeler 49 Mich. 505). The title that passes by indorsement to the collecting agent is not a beneficial interest (Sutherland v. First National Bank of Ypsilanti 31 Mich. 230), but is only in trust (Moore v. Hall 48 Mich. 145); but a guaranty of collection indorsed by the payee of a note passes title to it. Russell & Co. v. Klink 53 Mich. 161 | An indorsee of a note for purposes of collection merely can maintain an action on the note in his own name. | Whether a guaranty of collection indorsed by the payee passes title? | 010290.docx | LEGALEASE-00139865-LEGALEASE-00139866 | Condensed, SA, Sub | 0.9 | 0 | 1 | | 1 | 1 |
| 21652 | United States v. Myers, 692 F.2d 823 | 110+1030(3) | (3)a. "Coaching" and the "Playacting" Defense. The appellants' "coaching" claim seeks to create a due process violation by combining an erroneous interpretation of the bribery statute with an unrealistic assessment of the facts. The first step in the argument is taken when the appellants contend that "playacting" is a defense to bribery. It is not. Since Myers appears to be the first public official in a reported federal decision to defend a bribery charge on the ground that he intended to keep the bribe but not to keep the promise he made to the bribe-payer,16 it is not surprising that the appellate reports have not dealt explicitly with the claim. The statute proscribes the corrupt receipt of money by a public official "in return for: (1) being influenced in his performance of any official act ...." The phrase "in return for" appeared in the statute in 1962 when Congress revised and consolidated various public corruption statutes. This phrase makes it clear that bribery under section 201(c) requires a promise of a future act in exchange for the money given to the public official, an element not required for receipt of an unlawful gratuity under section 201(g), which punishes receipt of a gratuity paid "for or because of" performance of a future or past official act. United States v. Niederberger, 580 F.2d 63, 68^59 (3d Cir.), cert. denied, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978); United States v. Brewster, 506 F.2d 62, 71^72 (D.C. Cir. 1974). As the Supreme Court said in United States v. Brewster, supra, 408 U.S. at 526, 92 S.Ct. at 2544, construing the bribery statute, "[t]he illegal conduct is taking or agreeing to take money for a promise to act in a certain way." But the text of the 1962 revision perpetuates the preexisting ambiguity as to whether the promise given by the public official must be one that he intends to carry out. A prior statute, 18 U.S.C. ° 205 (1958), had required that a Congressman receive the bribe "with the intent to have his action ... influenced." This somewhat awkward | Defendant who fails to assert entrapment as a factual defense at his trial cannot assert it as a legal defense to his conviction. | Is defendants playacting a defense to bribery? | 011980.docx | LEGALEASE-00140849-LEGALEASE-00140850 | Condensed, SA | 0.94 | 0 | 1 | 0 | | 1 |
| 21653 | Gonzales v. Gilliam, 506 S.W.2d 650 | 157+351 | It has been stated in Utilities Indemnity Exchange v. Burks, 7 S.W .2d 1112 (Tex.Civ.App.*San Antonio 1928, writ dismissed):' . . . it is not hinted that there had been any tampering with the deposition or any fraud connected with the correction of the jurat or the delivery of the deposition. The law was substantially complied with, the details required in the return of depositions being merely to guard them from alteration and to secure the safe delivery to the court. A reasonable compliance with the law is sufficient in the absence of any charge of fraud. | Where medical records showed that cervical laminectomy was performed on passenger injured in rear-end collision, and surgeon's detailed description of operation plus his postoperative treatment and opinions were included, doctor's statement in his final diagnosis that passenger had "cervical disc" at specified time rested in reasonable medical certainty and was admissible. | "Is a reasonable compliance with law regarding a return of depositions sufficient, in absence of a charge of fraud?" | 032124.docx | LEGALEASE-00141294-LEGALEASE-00141297 | Condensed, SA, Sub | 0.33 | 0 | 1 | | 1 | 1 |
| 21654 | Perrin v. United States, 444 U.S. 37 | 63+1(1) | In rejecting Nardello's argument that Congress intended to adopt the common-law meaning of the term "extortion," the Court stated: "In light of the scope of the congressional purpose we decline to give the term "extortion" an unnaturally narrow reading . . . and thus conclude that the acts for which appellees have been indicted fall within the generic term extortion as used in the Travel Act." 393 U.S. at 296, 89 S.Ct., at 539. We are similarly persuaded that the generic definition of bribery, rather than a narrow common-law definition, was intended by Congress. | Bribery of private employee prohibited by state criminal statute violates the Travel Act which makes it a federal offense to travel or to use any facility in interstate commerce to commit "bribery * * * in violation of the laws of the State in which committed." 18 U.S.C.A. S 1952. | "Should the term bribery be read generically, and is the generic definition of the crime broader than its strict common law definition?" | 011606.docx | LEGALEASE-00142784-LEGALEASE-00142785 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 21655 | Murray v. Billings Garfield Land Co., 187 F. Supp. 3d 1203 | 260+48 | After reviewing these persuasive authorities, the Montana Supreme Court held that scoria is not a mineral. Farley, 890 P.2d at 380. Scoria is used in road construction, which did not "elevate scoria to the status of a compound which is "rare and exceptional in character" and therefore, a "mineral." " Id. (quoting Holland, 540 P.2d at 550°551). Since scoria does not possess any special properties to make it a rare and exceptional, scoria was not included in the mineral estate. Farley, 890 P.2d at 381. | Under Montana law, a material's inclusion in the scientific definition of "mineral" is not determinative of whether it is a "mineral" under a mineral deed. Mont. Code Ann. S 82-4-403(6). | Is Scoria a mineral? | 021391.docx | LEGALEASE-00143448-LEGALEASE-00143449 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 21656 | Williamson v. Osenton, 232 U.S. 619 | 170B+2413 | The second subdivision of the question may be answered with even less doubt than the first. The very meaning of domicil is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined. Bergner & E. Brewing Co. v. Dreyfus, 172 Mass. 154, 157, 70 Am. St. Rep. 251, 51 N. E. 531. In its nature it is one; and if in any case two are recognized for different purposes, it is a doubtful anomaly. Dicey, Confl. L. 2d ed. 98. The only reason that could be offered for not recognizing the fact of the plaintiff's actual change, if justified, is the now vanishing fiction of identity of person. But if that fiction does not prevail over the fact in the relation for which the fiction was created there is no reason in the world why it should be given effect in any other. However it may be in England, that in this country a wife in the plaintiff's circumstances may get a different domicil from that of her husband for purposes of divorce is not disputed and is not open to dispute. Haddock v. Haddock, 201 U. S. 562, 571, 572, 50 L. ed. 867, 870, 871, 26 Sup. Ct. Rep. 525, 5 Ann. Cas. 1. | A change of domicile is effected by removal from one state to another with intent of making a home there for an indefinite time, though the motive for the change is the bringing of a suit in a federal court on the ground of diverse citizenship. | "Is ""domicile"" a technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined?" | Domicile - Memo # 25 - C - SA.docx | LEGALEASE-00033737-LEGALEASE-00033738 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 21657 | Miller Land & Mineral Co. v. State Highway Comm'n of Wyoming, 757 P.2d 1001 | 260+55(2) | In Chittim v. Belle Fourche Bentonite Products Co., 60 Wyo. 235, 149 P.2d 142 (1944), this Court agreed with approval two definitions of a "mineral" in arriving at the conclusion that bentonite is a mineral. These definitions are: " 'any form of earth, rock, or metal of greater value while in place than the enclosing country or superficial soil,' " and " '[t]he real test seems to be the character of the deposit as occurring independently of the mere soil, valuable in itself for commercial purposes, that is, near enough to a market to have a value.' " Id. at 146. However, these definitions are more productive of protracted litigation than of justice in arriving at a decision as to whether gravel is a mineral. | Interpretation of instrument to determine whether ambiguity exists is question of law for courts to decide, although courts may augment general rules by considering pertinent extrinsic factors when interpreting conveyance of mineral interest. | Is bentonite a mineral? | 021498.docx | LEGALEASE-00145035-LEGALEASE-00145036 | Condensed, SA, Sub | 0.66 | 0 | 1 | | 1 | 1 |
| 21658 | Republican Party of New Mexico v. New Mexico Taxn. and Revenue Dept., 283 P.3d 853 | 326+585(2) | "As a general rule, this Court does not decide moot cases." Gunaji v. Macias, 2001"NMSC"028, 9, 130 N.M. 734, 31 P.3d 1008. When no actual controversy exists for which a ruling by the court will grant relief, an appeal is moot and ordinarily should be dismissed. Id. In New Mexico, however, courts recognize two exceptions to the prohibition on deciding moot cases: cases which present issues of substantial public interest, and cases "which are capable of repetition yet evade review." Id. 10. A case presents an issue of substantial public interest if it involves a constitutional question or affects a fundamental right such as voting. See Garcia v. Dorsey, 2006"NMSC"052, 17, 140 N.M. 746, 149 P.3d 62 (procedural due process); Cobb v. State Canvassing Bd., 2006"NMSC"034, 24"28, 140 N.M. 77, 140 P.3d 498 (Election Code); Gunaji, 2001"NMSC"028, 10, 130 N.M. 734, 31 P.3d 1008 (election contest); Mowrer v. Rusk, 95 N.M. 48, 52, 618 P.2d 886, 890 (1980) (separation of powers); see also State ex rel. Newsome v. Alarid, 90 N.M. 790, 793, 568 P.2d 1236, 1239 (1977) (describing "the right to inspect public documents" as an issue of public importance). An issue is "capable of repetition" yet evading review "if the issue is likely to arise in a future lawsuit, regardless of the identity of the parties. Gunaji, 2001"NMSC"028, 11, 130 N.M. 734, 31 P.3d 1008; see also Cobb, 2006"NMSC"034, 29"32, 140 N.M. 77, 140 P.3d 498 (time frame of election); Howell v. Heim, 118 N.M. 500, 503, 882 P.2d 541, 544 (1994) (budget crisis). The Court's review of moot cases that either raise an issue of substantial public interest or are capable of repetition yet evading review is discretionary. See Cobb, 2006"NMSC"034, 14, 140 N.M. 77, 140 P.3d 498 (noting that the Court "may review moot cases" that fall within either of the two exceptions). | The scope of the Governor's executive privilege was an issue of substantial public interest and therefore the Supreme Court would address the issue de novo in appeal challenging redaction of information in documents requested under the Inspection of Public Records Act (IPRA), even though the documents that originally gave rise to the lawsuit underlying the appeal were no longer in dispute. West's NMSA S 14-2-1 et seq. | Will an action be dismissed if the issues therein are or have become moot? | 034735.docx | LEGALEASE-00144995-LEGALEASE-00144996 | Condensed, SA, Sub | 0.77 | 0 | 1 | | 1 | 1 |
| 21659 | E.E.O.C. v. Peat, Marwick, Mitchell and Co., 775 F.2d 928 | 78+1508 | The record before the district court makes clear that PM is a partnership. PM possesses the commonly accepted attributes of a partnership. Its partners make contributions to capital, share profits and losses, and vote on partnership matters.The partners must sign the partnership agreement and all partners must approve any amendments to the agreement. The entire partnership votes on candidates for admission. Partners must agree to devote all their professional time and attention to the partnership. The partnership files partnership information tax returns and distributes Form K-1 to its partners. The partnership does not enter into employment agreements with any of the partners. The record clearly distinguishes the role of the PM partners from that of their employees.1 Most significantly, the EEOC made clear in open court that it was "not contending that PM is a sham partnership." (Tr. p. 25) | In order to obtain enforcement of subpoena duces tecum issued to partnership, Equal Employment Opportunity Commission was not required to make showing that company's partners were in fact employees for purposes of Age Discrimination in Employment Act, or that Commission had reason to believe partnership's retirement practices and policies were violative of Act, where subpoena was issued for legitimate purpose of determining whether retirement practices and policies discriminated against individuals classified as employees for purposes of Act. Age Discrimination in Employment Act of 1967, S 2 et seq., 29 U.S.C.A. S 621 et seq. | Does a partner need to devote all his attention and skill to the business of the firm? | 022443.docx | LEGALEASE-00146305-LEGALEASE-00146306 | Condensed, SA, Sub | 0.3 | 0 | 1 | | 1 | 1 |
| 21660 | Bentkowski v. Trafis, 2015 Ohio, 56 N.E.3d 230 | 115+57.22 | In X"S Merch. Inc. v. Wynne Pro, L.L.C., 8th Dist. Cuyahoga No. 97641, 2012 Ohio 2315, 2012 WL 1885156, we stated that "dismissals under Civ.R. 12 (B) (6) for failure to state a claim upon which relief can be granted are akin to dismissals pursuant to Civ.R. 41(B) (1) in that they are "fundamentally unfair" in the absence of prior notice and an opportunity to respond." Id. citing Mayrides v. Franklin Cty. Prosecutor Office, 71 Ohio App.3d 381, 594 N.E.2d 48 (10th Dist.1991). We also stated that: "the only instances of when a sua sponte dismissal of a complaint without notice is appropriate are when the complaint is frivolous or the plaintiff cannot succeed on the facts stated in the complaint." X"S Merch. at fn. 2, citing Dunn v. Marthers, 9th Dist. Lorain No. 05CA008838, 2006-Ohio-4923, 2006 WL 2714682. | A trial court may dismiss a claim for intentional infliction of emotional distress for failure to state a claim when the alleged conduct does not, as a matter of law reach the level of extreme and outrageous conduct. Rules Civ.Proc., Rule 12(B)(6). | "When is a sua sponte dismissal of a complaint without notice, appropriate?" | 035211.docx | LEGALEASE-00145810-LEGALEASE-00145811 | Condensed, SA, Sub | 0.7 | 0 | 1 | | 1 | 1 |
| 21661 | Boyd v. Merritt, 177 W. Va. 472 | 413+1820 | This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions. Petitioner here does not allege that the legislative rule is constitutionally infirm, nor do we perceive any constitutional obstacle to its application. | Upon appeal from Compensation Commissioner to Workmen's Compensation Appeal Board, Board is not bound by findings of fact of Commissioner, but itself becomes fact-finding tribunal, with authority to enter such order or make such award as Commissioner should, in its opinion, have entered or made upon case before him. | "Does the Court sit as a superlegislature, or is it the legislatures duty to consider the facts, establish, policy, and embody the policy in legislation?" | Workers Compensation - Memo #504 ANC.docx | ROSS-003287014-ROSS-003287015 | Condensed, SA, Sub | 0.43 | 0 | 1 | | 1 | 1 |
| 21662 | Cumberland Cty. Hosp. Sys. v. N.C. Dep't of Health & Human Servs., 242 N.C. App. 524 | 15A+1746 | "A case is "moot" when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Thus, the case at bar is moot if [an intervening event] had the effect of leaving plaintiff with no available remedy." Roberts v. Madison Cty. Realtors Ass'n, Inc., 344 N.C. 394, 398"99, 474 S.E.2d 783, 787 (1996) (citation omitted). "[A] moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim [.]" Yeager v. Yeager, 228 N.C.App. 562, 565, 746 S.E.2d 427, 430 (2013) (citations omitted). Moreover, "[i]f the issues before the court become moot at any time during the course of the proceedings, the usual response is to dismiss the action" for lack of subject matter jurisdiction. Simeon v. Hardin, 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994) (citation omitted). | In cases appealed from administrative tribunals, appellate court reviews questions of law de novo and questions of fact under the whole record test. | "Should moot cases be dismissed, when the court lacks subject matter jurisdiction?" | 10913.docx | LEGALEASE-00094153-LEGALEASE-00094154 | Condensed, SA, Sub | 0.83 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21663 | Morehouse v. Allen, 213 Cal. 1 | 8.30E+266 | Provisions such as contained in the contract of novation or substituted note of June 6, 1922, for renewal from year to year, have been before the reviewing courts of this state, but have never been declared invalid. Kleinsorge v. Kleinsorge, 133 Cal. 412, 65 P. 876; Caffaro v. Romani, 70 Cal. App. 448, 450, 233 P. 412. The plaintiff does not question the effect of the contract of novation itself, but contends that the note sued on, the maturity of which is concededly controlled by the maturity of the contract of novation, by its terms definitely matured on June 6, 1927. He bases this contention on the argument that "maturity" and "renewal" are two different or distinct things. In other words, if we correctly interpret the plaintiff's contention, it is that, inasmuch as the note sued on provides that the time of its payment shall automatically be extended to the same date as the maturity of any novation or substitution of the note of February 15, 1921, and since the maturity date of the substituted note is, so he claims, June 6, 1927, the note sued on automatically becomes due on the latter date, which he calls the "fixed" date of maturity; and that the date of payment as it may be changed or extended by the exercise of the option to renew, is something other than the maturity date of the note. | "Maturity date" of substituted note, which fixed date note sued on was payable, was date on which it became payable. | "Is the provision for renewal contained within a contract, note or instrument valid and enforceable?" | 010413.docx | LEGALEASE-00148705-LEGALEASE-00148706 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 21664 | Brush v. Scribner, 11 Conn. 388 | 83E+558 | The defendant's counsel contended, that although Osler & Co. were indebted to the plaintiff, at the time this note was remitted, yet, as they had not given him any farther credit, on the faith of the note before notice, he must be considered as their agent, & c. Lord Tenterden held, that he must be considered identified with Osler & Co.; and if they could not recover, the plaintiff could not. And upon the motion for a new trial, the same learned judge remarks: "We think the plaintiff stands in the same situation as Osler & Co., who sent the note to him. They were mutually agents for each other. Then he goes and states the balance due the plaintiff, but states that he did not give Osler & Co. any further credit, than if the note had not been transmitted." In this case, instead of placing the decision upon the broad ground that prior indebtedness was not a valuable consideration, which would have at once disposed of the case, the court take the ground, that the plaintiff was the agent of Osler & Co., and must stand or fall with them. This case, therefore, impliedly admits, that a prior indebtedness, under other circumstances, might have been a sufficient consideration. | A promissory note, made by A., and indorsed in blank by B., was intrusted to C., who had no interest in it, to get it discounted at the bank for A.'s benefit. C. fraudulently delivered it to D., who, acting fairly, and without knowledge of the fraud, received it in satisfaction and extinction of a pre-existing debt against C. In an action by D. against B. as indorser, it was held that D. was a bona fide holder of the note for a valuable consideration, and as such was entitled to recover. | is a preexisting debt a sufficient consideration? | 010424.docx | LEGALEASE-00148470-LEGALEASE-00148471 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21665 | First Nat. Bank v. Foote, 12 Utah 157 | 172H+424 | The third question is the one most argued and relied on by appellants. Their position is that the agreement between Hague and the appellants was that the note was not to become complete until signed by Whitmore; that the bank took it charged with Hague's knowledge of this agreement; that, even if respondent was not bound by Hague's representations, because of his individual interest in the transaction when "207 the note was received, Hague's knowledge is to be imputed to it; that, even if this be not so, the note having been delivered in violation of the condition that Whitmore should sign, it devolved upon the respondent to show that it was a holder in good faith, for value, without notice of the note's infirmity. The general rule is well established that a principal is bound by the representations of his agent, made in the transaction of the principal's business, within the real or apparent scope of his authority, and that the knowledge of the agent concerning the business which he is transacting for his principal is to be imputed to his principal. | A bank that takes for value a note signed by its cashier and others, without knowledge of a representation by the cashier to his co-makers that it would not be delivered until signed by the president of the bank, does not thereby ratify the cashier's representations. | Is an agents knowledge imputed to the principal? | 041367.docx | LEGALEASE-00148558-LEGALEASE-00148559 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 21666 | State ex rel. Kennamore v. Thompson, No. W200900034COAR3JV, 2009 WL 2632759 | 76E+150.1 | In her brief, Ms. Kennamore first asserts that the trial court incorrectly applied the doctrine of judicial estoppel. The doctrine of judicial estoppel provides a litigant who has deliberately taken a position in one judicial proceeding will not, as a matter of law, be allowed to advantage his or herself by taking an inconsistent position in another suit. See, e.g., Melton v. Anderson, 32 Tenn.App. 335, 222 S.W.2d 666 (Tenn.Ct.App.1948). In Melton, this Court specifically said:A general statement of the doctrine of judicial estoppel is that where one states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he [or she] will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same. | Trial court's deviation from the child support guidelines by awarding child support retroactively from date of filing of petition to establish paternity rather than from date of child's birth was not an abuse of discretion. The trial court provided written findings that the mother had committed fraud by telling her husband that he was the father throughout divorce proceedings, that the husband supported the child until the divorce, and that the true father had no basis to know that he was the father until the paternity suit was filed. West's T.C.A. SS 36-2-311(1)(11)(A), 36-5-101(e)(1)(A). | "Under judicial estoppel where one states on oath in former litigation a given fact as true, will he be permitted to deny that fact in subsequent litigation although the parties may not be the same?" | 017946.docx | LEGALEASE-00149125-LEGALEASE-00149126 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 21667 | Philadelphia Ass'n for relief of Disabled Firemen v. Wood, 39 Pa. 73 | 371+2010 | The state can delegate the taxing power to local corporations, for local purposes; but it must be for a purpose in which the community taxed has an interest: Talbot v. Dent, 9 B. Monroe 508. See also Cheany v. Hoover, Ibid. 345; Vanch v. Smith, 5 Paige, Ch. R. 159; see McMasters v. The Commonwealth, 3 Watts 292; Stetson v. Kempton, 13 Mass. 272; 2 Shepley 373. These authorities show that the purposes of taxation must be for subjects of public interest. | It is inherent in the very definition and nature of a tax that it shall be laid for a public purpose only. | Can taxing power be delegated? | Taxation - Memo # 870 - C - JL_59071.docx | ROSS-003278950-ROSS-003278951 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21668 | Heald v. City of Cleveland, 27 Ohio Dec. 435 | 268+911 | It must be conceded that public moneys should only be used for a public purpose. "No authority, or even dictum, can be found which asserts that there can be any legitimate taxation when the money to be raised does not go into the public treasury, or is not destined for the use of the government or some of the governmental divisions of the state." Hanson v. Vernon, 27 Iowa 28 [1 Am. Rep. 215]. | A city, under its home rule charter as provided by the 1912 amendment to the constitution, S 3, art. 18, under Gen.Code, S 3939, and under S 3, art. 1 of the Constitution, relating to right of people to assemble, had no authority to issue bonds to be used primarily for a building for exposition purposes, or to use portions of the auditorium for lodge rooms, concert halls, show rooms, or theaters as purely private enterprises. | Are there any authorities that allow the money raised through taxation not to go into the public treasury? | 045968.docx | LEGALEASE-00150606-LEGALEASE-00150607 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21669 | State v. Moyle, 299 Or. 691 | 3.77E+07 | So, too, at common law, it was an offense to commit "any wilful deed without lawful justification or excuse, which unreasonably disturbed the public peace and tranquility, or tended strongly to cause such a disturbance." Perkins, Criminal Law 400 (2d Ed.1969).10 At common law a breach of the peace could occur either by a public disturbance or by disturbing a single individual. The use of abusive, insulting or opprobrious language in a public place was a breach of the peace, but such language had to be accompanied by "personal violence, either actually inflicted or immediately threatened" if the speaker was to be indicted for disturbing an individual Ware v. Branch Circuit Judge, 75 Mich. 488, 492, 42 N.W. 997 (1889); State v. Steger, 94 W.Va. 576, 119 S.E. 682 (1923); see Comment, A Breach of the Peace By the Spoken Word, 33 Conn.Bar J. 114, 115 (1959). | Harassment statute does not violate State Constitution's freedom of expression provision on theory that the effect that is proscribed, causing fear of injury to persons or property, merely mirrors a prohibition of words themselves since criminal laws have historically protected against certain emotional harms. Const. Art. 1, S 8; ORS 166.065(1)(d). | Is it an offense to commit any wilful deed without lawful justification or excuse which unreasonably disturb the public peace and tranquility? | 014319.docx | LEGALEASE-00151290-LEGALEASE-00151291 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | |
| 21670 | Carlson v. City of Tallahassee, 240 So. 2d 866 | 92+1851 | Petitioner's reliance upon Bachellar v. Maryland, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970), is unavailing. The incident giving rise to Bachellar's arrest did not involve an attempted trespass upon public property Which had been reserved for a private meeting. On the contrary, it occurred on an open sidewalk in front of a United States Army Recruiting Station in downtown Baltimore. There the court recognized that the convictions of the demonstrators could constitutionally have rested on a finding that they sat or lay across a public sidewalk with the intent of fully blocking passage along it or that the conviction could constitutionally have rested on a finding that the demonstrators refused to obey police commands to stop obstructing the sidewalk and refused to move on. The court reversed however, not because the demonstrators were entitled to engage in the foregoing conduct, but because the jury might have convicted under the instructions given to the jury simply because the views of the demonstrators were offensive to some of the hearers. | Petitioner did not have a constitutional right to display his sign of protest and to enter for that purpose a municipal facility rented by supporters of presidential candidate, and petitioner in so doing unlawfully attempted to interfere with exercise of First Amendment rights of persons who reserved stadium for their meeting, and thus was guilty of disturbing the peace in violation of city ordinance when he forcibly attempted to enter the stadium. U.S.C.A.Const. Amend. 1; F.S.A. S 871.01. | Does conviction for blocking passage along sidewalk and refusal to obey police commands to stop obstructing sidewalk violate Constitution? | 014343.docx | LEGALEASE-00150812-LEGALEASE-00150813 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21671 | Groff v. State, 171 Ind. 547 | 178+14 | The offense under consideration is thus defined: "It shall be unlawful for any person to manufacture for sale within this state, offer for sale therein, or sell within this state, any drug, or article of food which is adulterated, or misbranded. For the purpose of this act, an article shall be deemed as adulterated. Second. If any substance has been substituted wholly, or in part, for the article." Acts 1907, p. 153, c. 104, " 2. Guilty intent is not an ingredient in the crime, as we have seen; hence the rule that governs in that large class of offenses, which rest upon criminal intent, has no application here. Cases like this are founded largely upon the principle that he who voluntarily deals in perilous articles must be cautious how he deals. The sale of oleomargarine in an adulterated form, or as a substitute for butter, is a crime against the public health. Whoever, therefore, engages in its sale, or in the sale of any article interdicted by the law, does so at his peril, and impliedly undertakes to conduct it with whatever degree of care is necessary to secure compliance with the law. He may conduct the business himself, or by clerks or agents; but, if he chooses the latter, the duty is imposed upon him to see to it that those selected by him to sell the article to the public obey the law in the matter of selling; otherwise, he, as the principal and the responsible proprietor of the business, is liable for the penalty imposed by the statute. | Acts 1907, p. 153, c. 104, S 2 (Burns' Ann.St. S 35-1202), makes it unlawful for any person to offer for sale or sell any adulterated or misbranded article of food. Held, that guilty knowledge or intent was not an element of such offense. | Is the principal liable when his employee disobeys the law in the manner of selling? | Adulteration - Memo 34_1eJV53GdOB4CyI4b wGNWwi4TO9vm0Xc4. docx | ROSS-000000106-ROSS-000000107 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21672 | Shoe & Leather Nat. Bank v. Wood, 142 Mass. 563 | 8.30E+07 | But the notes in suit, as appears by the bill of exceptions, were indorsed. They were not assigned. They were indorsed in the regular course of business, and there is nothing to show that they were intended to come within the purview of that statute, and the facts do not bring them within it. This statute in no wise affects the negotiability of notes under the law-merchant. An assignment is not an indorsement within the law-merchant, and an assignor is not liable as an indorsor. Lyons v. Divelbis, 22 Pa.St. 185; Kilpatrick v. Heaton, 3 Brev. 92; Crosby v. Roub, 16 Wis. 645. If the notes in suit had been assigned, the statutes might havehad some force, but it does not touch the question of indorsement, and it does not appear but what the law of Kentucky is the same as that of Massachusetts as regards the transfer by indorsement, and the rights of indorsees. | Statute giving maker right to set up defenses against payee or intermediate assignee before notice of assignment is constitutional and valid although changing operation of law merchant so far as it affects contracts within state. | Is an assignment an indorsement? | Bills and Notes - Memo 832 - RK_60138.docx | ROSS-003280314-ROSS-003280315 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21673 | Wells Fargo Bank, NA v. Ostiguy, 127 A.D.3d 1375 | 228+181(25) | In support of its cross motion and in opposition to defendants' motion, plaintiff produced the mortgage, the unpaid note, the notice of default sent to defendants and the affidavit of Shae E. Herman, its vice-president of loan documentation, attesting to defendants' default and failure to cure. Despite this proof, Supreme Court found that, as to standing, plaintiff's admitted sale of the loan to Freddie Mac was fatal to its claim that it was the lawful holder of the note and mortgage at the time this action was commenced. We cannot agree. Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff (see UCC 1"201 [former(20) ]; 3"202; 3"204; Hartford Acc. & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 159, 544 N.Y.S.2d 573, 542 N.E.2d 1090 [1989]; DH Cattle Holdings Co. v. Smith, 195 A.D.2d 202, 208, 607 N.Y.S.2d 227 [1994]; see also Nationstar Mtge., LLC v. Davidson, 116 A.D.3d 1294, 1296, 983 N.Y.S.2d 705 [2014], lv. denied 24 N.Y.3d 905, 2014 WL 4637016 [2014]; Deutsche Bank Trust Co. Ams. v. Codio, 94 A.D.3d 1040, 1041, 943 N.Y.S.2d 545 [2012]; Mortgage Elec. Registration Sys., Inc. v. Coakley, 41 A.D.3d 674, 674, 838 N.Y.S.2d 622 [2007] ). Notably, "[t]he holder of an instrument whether or not he [or she] is the owner may transfer or negotiate it[, and] discharge it or enforce payment in his [or her] own name" (UCC 3"301 [emphasis added]; see generally Glens Falls Indem. Co. v. Chase Natl. Bank, 257 N.Y. 441, 445, 178 N.E. 751 [1931]; Gates v. Manufacturers Hanover Trust Co./ Capital Region, 98 A.D.2d 829, 829, 470 N.Y.S.2d 492 [1983], abrogated on other grounds Golden v. Citibank, N.A., 23 N.Y.3d 935, 936, 988 N.Y.S.2d 121, 11 N.E.3d 194 [2014] ). Here, the note was originated by plaintiff and a copy submitted on the motion, alleged to be in plaintiff's possession at the time it commenced this action, is endorsed in blank. | Genuine issue of material fact as to whether servicer of mortgage loan actually possessed underlying note at time foreclosure action against mortgagor was commenced, so as to have standing to bring suit as holder, precluded summary judgment in action to foreclose mortgage on real property. McKinney's Uniform Commercial Code § 3-301. | Can a holder of an instrument enforce payment even though he is not an owner? | 010715.docx | LEGALEASE-00152400-LEGALEASE-00152401 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 21674 | Kubic v. MERSCORP Holdings, 416 S.C. 161 | 326+139 | At the outset, we find the trial court erred in declining to dismiss the suit on the ground this was a novel issue. Although our Court has held that "important questions of novel impression should not be decided on a motion to dismiss," this general rule does not apply when the determinative facts are not in dispute. See Unisys Corp. v. S. Carolina Budget & Control Bd. Div. of Gen. Servs. Info. Tech. Mgmt. Office, 346 S.C. 158, 165, 551 S.E.2d 263, 267 (2001). Where, as here, the question is one of simple statutory construction, a trial court should not deny a meritorious motion merely because the question is one of first impression. | Statute authorizing a clerk of court or register of deeds to reject and remove fraudulent documents from the public record did not impliedly give such officials the power to commence litigation to remediate the record; statute was not enacted for the special benefit of the officials, but merely offered guidance as to how they should carry out their job duties, and in fact gave the person presenting a document the power to commence suit to require the clerk of court or register of deeds to accept a document for filing or to prevent him or her from removing a document. Code 1976, § 30-9-30(B). | "Does the general rule that important questions of novel impression should not be decided on a motion to dismiss, not apply when the determinative facts are not in dispute?" | Pretrial Procedure - Memo # 8699 - C - TJ_59737.docx | ROSS-003293563-ROSS-003293564 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 21675 | Newton v. Bramlett, 55 Ill. App. 661 | 83E+423 | On the first trial of the case (it has been twice tried) the attorney for appellee added over the signature of the indorser these words: "And for value received I guarantee the payment of the within note." The declaration then contained a count upon a guaranty, and this addition was made by the attorney under the impression that the facts attending the original transaction showed an undertaking by the appellant to assume such responsibility, and that, under the law, it was competent to write a guaranty over the signature.Subsequently the conclusion was reached that such a view of the matter was erroneous; the third count, which alleged that defendant guaranteed the note, was dismissed, and the added words were stricken out of the indorsement, leaving it precisely as it was at first.Appellant contends that by such addition and erasure he was wholly discharged from all liability on the premises. This addition was made in open court after the introduction of proof supposed to be sufficient to show an intention to guarantee the note, and was supposed by counsel and also by the court to be authorized. There was no fraudulent intention, and as the addition was erased no harm was done.It has been held repeatedly that where a note is indorsed in blank and the indorsement is filled up in such a way as to state the contract incorrectly it is competent to correct it by striking out or otherwise. | Where an incorrect addition was made to an endorsement of a note in open court after introduction of proof supposed to be sufficient to show intention to guaranty the note, it could be stricken out, and there being no fraud and no injury, it would not discharge the endorser from the contract really made. | When a writing states the contract incorrectly is it proper to correct it? | 009818.docx | LEGALEASE-00153539-LEGALEASE-00153540 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21676 | 534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick, 90 A.D.3d 541 | 307A+679 | On a motion to dismiss affirmative defenses pursuant to CPLR 3211(b), the plaintiff bears the burden of demonstrating that the defenses are without merit as a matter of law (see e.g. Vita v. New York Waste Servs., LLC, 34 A.D.3d 559, 559, 824 N.Y.S.2d 177 [2006]; Santilli v. Allstate Ins. Co., 19 A.D.3d 1031, 1032, 797 N.Y.S.2d 226 [2005] ). In deciding a motion to dismiss a defense, the defendant is entitled to the benefit of every reasonable intendment of the pleading, which is to be liberally construed (Warwick v. Cruz, 270 A.D.2d 255, 255, 704 N.Y.S.2d 849 [2000] ). A defense should not be stricken where there are questions of fact requiring trial (see e.g. Atlas Feather Corp. v. Pine Top Ins. Co., 128 A.D.2d 578, 578"579, 512 N.Y.S.2d 844 [1987] ). | In deciding motion to dismiss defense, defendant is entitled to benefit of every reasonable intendment of the pleading, which is to be liberally construed. McKinney's CPLR 3211(b). | Should the court not dismiss a defense where there remain questions of fact requiring a trial? | 038097.docx | LEGALEASE-00153396-LEGALEASE-00153397 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21677 | Bridgeview Health Care Ctr., Ltd. v. Clark, 816 F.3d 935 | 308+99 | In applying the regulatory definition of a fax sender, we hold that agency rules are properly applied to determine whether an action is done "on behalf" of a principal. See 47 C.F.R. " 64.1200(f)(10). There are three types of agency: (1) express actual authority, (2) implied actual authority, (3) apparent authority. See Moriarty v. Glueckert Funeral Home, Ltd., 155 F.3d 859, 866 (7th Cir.1998). If Clark was acting as the principal to B2B's agent, he would have made B2B his agent in one of these three ways, but it is clear that that none of them applies here. | To create apparent authority, principal must speak, write, or otherwise act toward third party, and his conduct must make third party reasonably believe that he has consented to action done on his behalf by someone purporting to act for him. | Can actual authority be express? | Principal and Agent - Memo 232 - KC_60525.docx | ROSS-003284225-ROSS-003284226 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21678 | Nogales Serv. Ctr. v. Atl. Richfield Co., 126 Ariz. 133 | 388+243 | Tucker dealt with the various truck stops accounts in the area of special problems, on matters of investment and discounts. Although the evidence was that he did not have authority to grant the alleged across-the-board discount, he did have authority to grant certain discounts such as volume discounts, gasoline merchandising discounts and dealer temporary aid discounts. On the subject of an agent disobeying the principal it was observed by Judge Learned Hand in the case of Kidd v. Thomas A. Edison, Inc., 239 F. 405 (S.D.N.Y.1917), aff'd, 242 F. 923 (2nd Cir. 1917) that "it makes no difference that the agent may be disregarding his principal's directions, secret or otherwise, so long as he continues in that larger field measured by the general scope of the business intrusted to his care."239 F. at 407. | Refusal to give instructions which were requested by plaintiff in suit for breach of a products agreement and which discussed inherent authority of an agent was not error where, aside from fact that plaintiff made only a general objection to refusal, instructions requested conflicted with and contradicted instruction which was given without objection and which told jury that agreement was binding only if there was actual or apparent authority. 16 A.R.S. Rules of Civil Procedure, Rule 51(a). | Does it make any difference if the agent disregards the principals secret? | 041545.docx | LEGALEASE-00153412-LEGALEASE-00153413 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21679 | In re Krueger's Estate, 11 Wash. 2d 329 | 371+3332(1) | "There is no distinction between such cases as those just mentioned and the case sub judice, except that in the latter the deceased agreed to pay the contract price by a provision in his will, and failed to do so by will or in any other way. Admittedly, such a case is not within the language of the statute. As we understand the opinion of the Supreme Court, it was held within the legislative intendment, apparently on the equitable theory of regarding that as done which ought to have been done. That maxim is applicable in favor of a party to the original transaction who would be benefited by its application (Goodell v. Monroe, 87 N.J.Eq. 328, 100 A. 238), but it is a novel application of it to invoke its operation in favor of a state tax. Moreover, there is no equity involved in this case. A tax is a legal imposition exclusively of statutory origin (37 Cyc. 724, 725), and, naturally, liability to taxation must be read in the statute, or it does not exist." | The inheritance tax statute was enacted for purpose of taxing the right to receive property transmitted in various ways, all of which relate either to testamentary dispositions or to dispositions of assets designed to evade the inheritance tax, and it was not the purpose of the statute to impose an inheritance tax upon transfers of property made in ordinary course of business and for an adequate, valuable consideration. Rem.Rev.Stat. S 11201. | Is tax a legal imposition? | 046014.docx | LEGALEASE-00153305-LEGALEASE-00153306 | Condensed, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21680 | State v. Brand, 506 So. 2d 702 | 350H+41 | Defendant further asserts the trial court erred by stating its intention to deter similar actions by other state employees by the sentence imposed on defendant. While it is not improper for the court to take into account larger sociological concerns in imposing sentence, as long as the sentence is particularized to the defendant, a desire to teach others a lesson is not an acceptable basis for the penalty imposed on defendant. State v. Vampran, 459 So.2d 1333 (La.App. 1st Cir.1984). As in Vampran, while it is apparent the trial court's concern over the seriousness of the offense is valid, it is apparent that its outrage prevented it from imposing a properly individualized sentence. We find, therefore, that the trial court erred by considering improper factors which are either not supported by admissible evidence or which are inappropriate in the imposition of sentence. | Deterrence of similar actions by other state employees was improper consideration for sentencing safety enforcement officer for public bribery. LSA-R.S. 14:118; LSA-C.Cr.P. art. 894.1. | Is a desire to teach others a lesson an acceptable basis for imposing a sentence? | 012535.docx | LEGALEASE-00156407-LEGALEASE-00156408 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21681 | Expro Americas v. Walters, 179 So. 3d 1010 | 30+3203 | "A dismissal with prejudice indicates a dismissal on the merits."Jackson v. Bell, 123 So.3d 436, 439 (Miss.2013). A Rule 41(b) dismissal "operates as an adjudication upon the merits." Miss. R. Civ. P. 41(b). It is appropriate for failure to prosecute or to comply with the rules of civil procedure or any order of court, or after the plaintiff has completed the presentation of his evidence "in an action tried by the court without a jury" when the plaintiff has shown no right to relief upon the facts and the law. Id. The chancellor did hear the preliminary injunction case in full, and the evidence makes it abundantly clear that Expro had no chance whatsoever of success on its only claims in the complaint against H &H"for breach of contract, when no contract existed, and misappropriation of trade secrets, when no trade secret existed. | If the trial court applies the correct legal standard in granting a motion for involuntary dismissal, the Supreme Court must affirm the decision, regardless of what any one of the members of the Court individually might have ruled had they been the judge, unless there is a definite and firm conviction that the court below committed clear error. Rules Civ.Proc., Rule 41(b). | Does a dismissal with prejudice indicate a dismissal on the merits? | Pretrial Procedure - Memo # 10256 - C - SN.docx | LEGALEASE-00045983-LEGALEASE-00045984 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 21682 | Collins v. Sigmon, 299 S.C. 464 | 228+829(1) | A dismissal of a case "without prejudice means that the plaintiff can reassert the same cause(s) of action by curing the defects that led to dismissal. By contrast, dismissals with prejudice are intended to bar relitigation of the same claim."FREIDENTHAL, KANE & MILLER, CIVIL PROCEDURE 651 (1985).Rule 41(b) of the Federal Rules of Civil Procedure provides: Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for failure to join a party under Rule 19, operates as an adjudication upon the merits. | Federal judge's sua sponte dismissal of suit, based on failure to prosecute, constituted res judicata as to similar points raised in counterclaim in state action; under federal rules dismissal operated as adjudication upon merits. Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A. | "Does a dismissal of a case ""without prejudice"" mean a plaintiff can reassert her complaint by curing defects that led to the dismissal?" | 025025.docx | LEGALEASE-00156665-LEGALEASE-00156666 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 21683 | Godfredson v. JBC Legal Grp., P.C., 387 F. Supp. 2d 543 | 91+472 | Similarly, the only other case plaintiff points to in support, Harris v. NCNB National Bank of North Carolina, 85 N.C.App. 669, 355 S.E.2d 838, 843 (1987), dealt with the issue of the use of legal process as the basis for a claim of extortion. In Harris, the court defined extortion as "wrongfully obtaining anything of value from another by threat, duress, or coercion." Id. (citing Black's Law Dictionary at 696 (4th ed. rev.1968)). The court determined that "[a] statement of intention to file suit to enforce one's claimed legal rights is neither a threat nor the exercise of unlawful or wrongful coercion." Id. Plaintiffs argue that if the tort of extortion did not exist, the court would simply have said so. This court feels that the North Carolina Court of Appeals could, and did, hold that even assuming arguendo that such a tort existed, the plaintiffs in Harris could not make out such a claim. This is not sufficient support to indicate that such a cause of action exists. | To make out action under North Carolina law for damages caused by acts committed pursuant to formed conspiracy, plaintiff must show: (1) agreement between two or more persons; (2) to do wrongful act; (3) commission of some overt act by one member of conspiracy in furtherance of objectives; and (4) damage to plaintiff as result of actions of conspirators. | Is a statement of intention to file a suit to enforce one's claimed legal rights a threat? | Threats - Memo #118 - C - LB_62506.docx | ROSS-003285115-ROSS-003285116 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21684 | Green v. Interstate United Mgmt. Servs. Corp., 748 F.2d 827 | 156+85 | Section 90 is, of course, an extension of the equitable doctrine of estoppel, see id. comment a, "a flexible doctrine, to be applied ... as the equities between the parties preponderate." Straup v. Times Herald, 283 Pa.Super. 58, 71, 423 A.2d 713, 720 (1980) (discussing promissory estoppel). We cannot say that the district court abused its equitable discretion in refusing to allow full-scale enforcement of the promises allegedly relied upon, given their manifestly contingent nature. We will therefore affirm the district court's limitation of recovery on the promissory-estoppel claim to reliance damages. | District court did not abuse its equitable discretion in refusing to allow full-scale enforcement of promises to enter into lease, given their manifestly contingent nature; thus, limitation of recovery on promissory estoppel claim to reliance damages was proper. | Is estoppel a flexible doctrine? | Estoppel - Memo #147 - C - CSS_62348.docx | ROSS-003297108-ROSS-003297109 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21685 | Compton v. Shopko Stores, 93 Wis. 2d 613 | 30=3471(2) | In Stocum Straw Works v. Industrial Comm., 232 Wis. 71, 78, 79, 286 N.W. 593, 597 (1939), this court discussed in general the meaning of the word "employment": "Webster defines the word 'employment' as:" "That which engages or occupies; that which consumes time or attention; occupation; office or post of business; service, as agricultural employments; public employment." "And defines the word 'employed' as:" "To occupy; busy; devote; concern; as, to employ time in study; to employ one's energies to advantage. To make use of the services of; to have or keep at work; to give employment to; to intrust with some duty; or behest; as, to employ a hundred workmen; to employ an envoy . . . . | Generally, findings of fact by trial court will not be upset on appeal unless they are against great weight and clear preponderance of evidence. | "Is employment in general defined as the act of employing, the state of being employed, or that which consumes time or attention, occupation?" | 047702.docx | LEGALEASE-00157728-LEGALEASE-00157729 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21686 | State v. Moyle, 299 Or. 691 | 3.77E+26 | So, too, at common law, it was an offense to commit "any wilful deed without lawful justification or excuse, which unreasonably disturbed the public peace and tranquility, or tended strongly to cause such a disturbance." Perkins, Criminal Law 400 (2d Ed.1969).10 At common law a breach of the peace could occur either by a public disturbance or by disturbing a single individual. The use of abusive, insulting or opprobrious language in a public place was a breach of the peace, but such language had to be accompanied by "personal violence, either actually inflicted or immediately threatened" if the speaker was to be indicted for disturbing an individual. Ware v. Branch Circuit Judge, 75 Mich. 488, 492, 42 N.W. 997 (1889); State v. Steger, 94 W.Va. 576, 119 S.E. 682 (1923); see Comment, A Breach of the Peace by the Spoken Word, 33 Conn.Bar J. 114, 115 (1959). | "Alarm" required to be raised for a threat to come within the prohibitions of harassment statute means more than mere inconvenience or feelings of anguish which are the result of angry or imposing words; it means being placed in actual fear or terror resulting from sudden sense of danger. ORS 166.065(1)(d). | "Whether the use of abusive, insulting or opprobrious language in a public place amounts to breach of the peace?" | 014329.docx | LEGALEASE-00158836-LEGALEASE-00158837 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21687 | Landry v. Istre, 510 So. 2d 1310 | 322H+1276 | With respect to redhibition, the Civil Code provides the following pertinent articles:Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.La C.C. art. 2520.Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices. La C.C. art. 2521,andA declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principle motive for making the purchase. La C.C. art. 2529. | Transferee who exchanged immovable property plus balance of $90,000 for immovable property was entitled to have contract of exchange rescinded on account of lesion, if difference between balance paid and total value of six-acre tract was greater than one half value of six-acre tract; thus, rescission would be warranted if value of property received was $60,000 or less at time of exchange. LSA-C.C. art. 2666. | Is redhibition the avoidance of a sale on account of some vice or defect in the thing sold which renders it useless? | 018307.docx | LEGALEASE-00158891-LEGALEASE-00158892 | Condensed, SA | 0.46 | 0 | 1 | 1 | 0 | 1 |
| 21688 | Stroock Plush Co. v. Talcott, 129 A.D. 14 | 302=16 | And then follows a statement of facts which, in such case, would be, it is claimed, a defence and also a counterclaim. That is to say, if the contract was made, nay, more, only if it was made on or about June 15th, the facts then alleged would be a defence and a counterclaim. The rule that contingent or hypothetical pleading is not allowed and is not good is too ancient and has been too often reiterated to need discussion. It suffices to refer to the recent text books where the cases are collected and the rule stated""if that be deemed necessary. 6 Encyc. Pl. & Pr. p. 270; Phillips on Code Pl. "" 240, 357; Maxwell on Code Pleading, p. 395; Bliss on Code Pl. "" 340. The few cases which are sometimes cited as contrary to the rule are really not so when you come to analyze them attentively. | Hypothetical pleadings are bad. | Is contingent pleading allowed? | 023841.docx | LEGALEASE-00159228-LEGALEASE-00159229 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 21689 | Katiroll Co. v. Kati Junction, 33 F. Supp. 3d 359 | 382T+1436 | "New York law with respect to disloyal or faithless performances of employment duties is grounded in the law of agency, and has developed for well over a century." That is, the duty of loyalty means an agent is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Under New York law, however, duty of loyalty claims are "limited to cases where the employee, acting as the agent of the employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." | To succeed on a claim for trade dress infringement under Lanham Act, plaintiff must prove that: (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between plaintiff's goods and those of defendant's. Lanham Act, S 43(a), 15 U.S.C.A. S 1125(a). | What does an agents duty of loyalty entail? | Principal and Agent - Memo 521 - RK_63979.docx | ROSS-003308601-ROSS-003308602 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 21690 | Dep't of Health & Human Servs., Aging & Disability Servs. Div. v. Pub. Utilities Comm'n of Nevada, 2015 WL 3489549 | 372=613 | But, if neither cost-causation nor any similar nexus is required to render a surcharge "just and reasonable," and if instead a "liberal" reading of NRS 427A.797 tasks the PUC legislatively with using its rate-setting authority to underwrite social programs completely untethered from its utility rate-setting context as to the section's constitutionality. Under such an interpretation, NRS 427A.797's surcharge provision would essentially be an "enforced contribution to raise revenue" instead of one created "to reimburse the state for special services rendered to a given party." Starr v. Governor, 148 N.H. 72, 802 A.2d 1227, 1229 (N.H.2002). And, despite its official title, the contribution mandated by NRS 427A.797's surcharge provision would therefore be not a surcharge, but a tax. | Public Utilities Commission misinterpreted statute governing programs to provide devices for telecommunication to persons with impaired hearing or hearing when it altered the budget for deaf-and-hard-of-hearing centers that the Department of Health and Human Services, Aging and Disability Services Division (ADSD) had submitted, and, thus, exceeded its statutory authority. NRS 427A.797. | Is a "tax" an enforced contribution to raise revenue?" | 046245.docx | LEGALEASE-00159862-LEGALEASE-00159863 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 21691 | Dlaikan v. Roodbeen, 206 Mich. App. 591 | 141E+931 | When the claim involves the provision of the very services (or as here refusal to provide these services) for which the organization enjoys First Amendment protection, then any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law. In this regard there can be no distinction between a church providing a liturgical service in its sanctuary and providing education imbued with its religious doctrine in its parochial school. A civil court should avoid foray into a "property dispute" regarding admission to a church's religious or educational activities, the essence of its constitutionally protected function. Borgman v. Bultema, 213 Mich. 684, 703, 182 N.W. 91 (1921) (expulsion of clergy or members). To do so is to set foot on the proverbial slippery slope toward entanglement in matters of doctrine or ecclesiastical polity. | Circuit court was without jurisdiction to resolve parents' claims of intentional misrepresentation, negligence, and breach of contract against parochial school and its representative for school's refusal to admit children, in that claims involved essentially ecclesiastical policies and services for which the organization enjoys First Amendment protection. U.S.C.A. Const.Amend. 1; MCR 2.116(C)(4). | Should a civil court avoid foray into a property dispute regarding religious or educational activities? | 017237.docx | LEGALEASE-00161054-LEGALEASE-00161055 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21692 | Baker v. State, 17 S.W. 144 | 231+164(3) | To render a party liable, under the statute, for obstructing a public road, the act must have been done "willfully," (Pen. Code, art. 405,) and the word "willful," as used in the statute, means with evil intent, or legal malice, or without reasonable ground for believing the act to be lawful. (Thomas v. State, 14 Tex. App. 200; Shubert v. State, 16 Tex. App. 645; Trice v. State, 17 Tex. App. 43; Loyd v. State, 19 Tex. App. 321.) The judgment is reversed, and the cause remanded. | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | What does the term willful mean in public road statutes? | 018787.docx | LEGALEASE-00161635-LEGALEASE-00161636 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 21693 | Reneau v. Mossy Motors, 622 F.2d 192 | 172H+1341 | It is now well-settled that an objective standard is used in determining violations of TILA.It is not necessary that the plaintiff-consumer actually have been deceived in order for there to be a violation. In fact, consumers who are aware of the true terms of a contract are more able to see that these terms are not clearly and conspicuously disclosed on the installment sales contract form.Thus, the purpose of the Act is more readily served by allowing lawsuits by these consumers who are less easily deceived.The remedial scheme in the TIL Act is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case. | An injured consumer is not an indispensible prerequisite to a conclusion that the Truth in Lending Act or Regulation Z has been violated. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq.; Truth in Lending Regulations, Regulation Z, § 226.1 et seq., 15 U.S.C.A. following section 1700. | Does the consumer have to actually be deceived for there to be a violation of TILA? | Consumer Credit - Memo 235 - RK.docx | LEGALEASE-00051735-LEGALEASE-00051736 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 21694 | Hobbs v. Ludlow, 199 Ind. 733 | 241+169 | Where no place of payment is expressed in a note it is presumed to be payable at the place of date (Tillotson v. Tillotson [1867] 34 Conn. 335, 337; Bigelow v. Burnham [1891] 83 Iowa, 120, 49 N. W. 104, 32 Am. St. Rep. 294; 8 C. J. 1012), or at the place of execution (Blodgett v. Durgin [1859] 32 Vt. 361), or at the residence of the maker (Gage v. McSweeney [1902] 74 Vt. 370, 52 A. 969; McCruden v. Jonas [1896] 173 Pa. 507, 34 A. 224, 51 Am. St. Rep. 774; Baily v. Birkhofer [1904] 123 Iowa, 59, 98 N. W. 594; Oxnard v. Varnum [1885] 111 Pa. 193, 2 A. 224, 56 Am. Rep. 255; 3 R. C. L. 911). | Defendant could not be held liable in Indiana on note made in sister state, where action was barred in sister state wherein defendant had continuously resided. Burns' Ann.St. SS 2-602, 2-606. | Is a promissory note presumed to be payable where dated if no other place of payment is mentioned in the note? | 009226.docx | LEGALEASE-00162773-LEGALEASE-00162774 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21695 | Corbett v. Riddle, 209 F. 811 | 51+2062 | The contention that the contract, because made in Pennsylvania, is not subject to the recording laws of Virginia is without merit. "Whoever sends property" to another state "impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides." Hervey v. Rhode Island Locomotive Works, supra. Liability of property to be sold under execution must be determined by the law of the state where it is situated rather than by that of the state where its owner lives. | A bankruptcy court having first acquired jurisdiction of the bankrupt's estate by the filing of a petition in bankruptcy, such jurisdiction is exclusive of the right of the state court to entertain jurisdiction of an action in detinue by a claimant to recover property alleged to belong to the estate. | Under what law is the liability of property to be sold under execution determined by? | Creditors' Remedies - Memo 25 - RK_67494.docx | ROSS-003279827-ROSS-003279828 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 21696 | Heffelfinger v. Dep't of Pub. Welfare, 789 A.2d 349 | 198H+471(6) | Finally, DPW points out that estoppel can only be claimed by one who acted in ignorance of the true state of facts and who was without means of informing himself of their existence. Livingston v. Livingston, 275 Pa.Super. 285, 418 A.2d 724 (1980); Divine Providence Hosp. v. Department of Public Welfare, 76 Pa.Cmwlth. 188, 463 A.2d 118 (1983). It notes that a certified elder law attorney represented Petitioner and that the Pennsylvania Standard was in effect years before the transfers were made. | Three consecutive monthly transfers of $9,000.00 each to irrevocable trust rendered applicant ineligible for Medicaid funding for nursing home care for a five-month period; the Department of Public Welfare (DPW) properly divided $27,000 by the average monthly cost to a private patient, even though its policy clarifications required a penalty for full months only and treatment of each transfer is treated as a separate event with its own penalty period. Social Security Act, § 1917(c)(1)(E)(i), as amended, 42 U.S.C.A. § 1396p(c)(1)(E)(i); 55 Pa. Code §§ 178.104(d), 275.4(h)(2)(i). | Can an estoppel be claimed by one who has acted in ignorance of the true state of facts and who was without means of informing himself of their existence? | Estoppel - Memo 318 - C - CSS_67200.docx | ROSS-003292185-ROSS-003292186 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 21697 | United States v. Rosenberg, 888 F.2d 1406 | 110+1192 | The case sub judice concerns the double jeopardy clause's protection against successive prosecutions for the same offense. The protection against successive prosecution is rooted in the "constitutional policy of finality for the defendant's benefit." United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). The Court in Brown explained that this policy protects the accused from repeated litigation of facts underlying a prior acquittal, and from the prosecutor's desire to secure additional punishment where the government is dissatisfied with the result of the first trial. 432 U.S. at 165"66, 97 S.Ct. at 2225 (citations omitted). | On remand of prosecution for substantive bombing offenses, Government would be given opportunity to argue for existence of "due diligence" exception to double jeopardy and to demonstrate that, despite exercise of such diligence, it did not discover evidence linking conspiracy to bombings until after two defendants had been convicted of conspiracy at trial in another district. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. SS 2, 844(f). | Does policy protect an accused from attempts to relitigate facts underlying prior acquittal and from attempts to secure additional punishment after prior conviction and sentence? | 016126.docx | LEGALEASE-00165873-LEGALEASE-00165874 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 21698 | Apache Corp. v. W & T Offshore, 626 F.3d 789 | 38+1 | Moreover, to the extent Apache argues that W & T owns an interest in the Block 151 platform such that the law requires payment for decommissioning costs, this argument fails as contrary to Louisiana law. Apache avers that W & T acquired an interest in Block 151 from its predecessor, Vastar, because the assignment from Vastar to W & T specifically included all of Vastar's working interest in the Block 151 platform. This phrase, however, does not necessarily mean that Vastar actually owned rights in the Block 151 platform. Rather, it means that Vastar assigned whatever rights it happened to have in the Block 151 platform out of an abundance of caution. A party cannot assign what it does not own. See Town of Homer v. United Healthcare of La., Inc., 948 So.2d 1163, 1169 (La.App. 2d Cir.2007)("An assignor cannot assign any rights greater than that which he held."(citations omitted). | Under Louisiana law, a party cannot assign what it does not own. | Can an assignor assign any rights greater than which it did not own? | 07362.docx | LEGALEASE-00077575-LEGALEASE-00077576 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | 1 |
| 21699 | Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co., 176 Wash. App. 185 | 217+3528 | There are, in effect, two features to subrogation. The first is the right to reimbursement. The second is the mechanism for the enforcement of the right. The right to reimbursement may arise by operation of law, termed legal or equitable subrogation, or by contract, called conventional subrogation. Ross v. Jones, 174 Wash. 205, 216, 24 P.2d 622 (1933). | Subcontractor's insurer was not entitled to award of attorney fees pursuant to Olympic Steamship doctrine, which permitted an award of attorney fees to an insured who successfully sued an insurer to obtain insurance coverage, in subrogation action against general contractor's insurer stemming from subcontractor's insurer's complete defense of general contractor in personal injury action filed by employee of subcontractor; having failed to produce evidence of assignment or contractual right, subcontractor's insurer lacked standing to assert those claims of the insured, and insurer's claim instead arose from its own equitable subrogation rights as the paying insurer, not the rights of the insured. | What are the features to subrogation? | 05558.docx | LEGALEASE-00083783-LEGALEASE-00083784 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21700 | Ex parte State Farm Mut. Auto. Ins. Co., 118 So. 3d 699 | 46H+309 | This case involves subrogation for medical expenses paid under an automobile-insurance contract by the insurer to the injured insured following an automobile accident and the issue whether the insurer is responsible for a pro rata share of the insured's attorney fees in collecting those expenses from the tortfeasor. Subrogation is an equitable doctrine the purpose of which is to provide for a proper allocation of payment responsibility. See International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala.1989). Subrogation seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it. Id. There are, in effect, two features to subrogation: (1) the right to reimbursement and (2) the mechanism for the enforcement of the right to reimbursement. Subrogation creates in the insurer, by contract or equity, a right to be reimbursed. The enforcement of the reimbursement interest is tempered by the principle that the insured and/or a tortfeasor may not knowingly prejudice the right of the insurer to be reimbursed. See, e.g., Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams, 365 So.2d 315 (Ala.Civ.App.1978) (recognizing that a medical-expenses-payment subrogation clause did not constitute an impermissible assignment of a personal-injury claim but merely impressed a lien upon the proceeds of any recovery obtained by the insured from the tortfeasor); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Anderson, 48 Ala.App. 172, 263 So.2d 149 (1972) (same). Thus, if the insurer wishes to receive the benefit of the funds recovered by the insured's attorney, the insurer must share in the attorney fees of recovering those funds from the tortfeasor or the tortfeasor's insured. See, e.g., Government Emps. Ins. Co. v. Capulli, supra, and Blue Cross & Blue Shield of Alabama v. Freeman, 447 So.2d 757 (Ala.Civ.App.1983). | Limited appearance of automobile insurer to protect its subrogation interest with regard to $5,000 medical payment to insured, and no more, did not constitute active participation, as required to avoid application of the common-fund doctrine; it was the efforts of insured's attorney that resulted in $35,000 settlement and reimbursement to insurer of $5,000 medical-expenses payment. | What are the features of subrogation? | Subrogation - Memo 277 - ANG C.docx | ROSS-003284126-ROSS-003284127 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21701 | Kerr v. Grand Foundries, 451 S.W.2d 26 | 307A+501 | The right to a non-suit has never been regarded as an absolute right, Rosen v. Grattan (Mo.App.) 369 S.W.2d 882. We conclude that Fenton v. Thompson, supra, rules the issue of the right to appeal a judgment of voluntary dismissal without prejudice after submission. The case at bar is distinguishable in that the judgment of voluntary dismissal without prejudice was granted prior to submission. | Right to a nonsuit is not absolute. | Is the right to a nonsuit absolute? | 02208.docx | LEGALEASE-00092118-LEGALEASE-00092119 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 21702 | Wildflower v. St. Johns River Water Mgmt. Dist., 179 So. 3d 369 | 30+3200 | Appellee's motion to dismiss asserted affirmative defenses, such as res judicata and lack of standing, which would require some factual proof in order to be sustained. Affirmative defenses "ordinarily cannot be raised by motion to dismiss." Duncan v. Prudential Ins. Co., 690 So.2d 687, 688 (Fla. 1st DCA 1997). However, "an exception is made when the face of the complaint is sufficient to demonstrate the existence of the defense." Ramos v. Mast, 789 So.2d 1226, 1227 (Fla. 4th DCA 2001). There is nothing on the face of the second amended complaint that suggests that Appellant lacks standing, as it is alleged to be the owner of the property in question and the entity carrying out the activities which are or may be adversely impacted by Appellee's exercise of its jurisdiction. Thus, it was error to dismiss the second amended complaint with prejudice based upon lack of standing. | Standard of review of an order dismissing a complaint with prejudice is de novo. | What are the exceptions for an affirmative defense to be raised by motion to dismiss? | 11237.docx | LEGALEASE-00094641-LEGALEASE-00094642 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 21703 | Medix Ambulance Serv. v. Superior Court, 97 Cal. App. 4th 109 | 307A+1 | Where a statute provides for a "hearing," it does not necessarily demand the parties be given an opportunity to orally argue the case. As our Supreme Court recently noted, the terms "hear" and "hearing" "when used in a legal sense do not necessarily encompass oral presentations." (Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1247, 82 Cal.Rptr.2d 85, 970 P.2d 872.) A statute referring to a " 'hearing' does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent." (Id. at p. 1247, 82 Cal.Rptr.2d 85, 970 P.2d 872.) In Gwartz v. Superior Court (1999) 71 Cal.App.4th 480, 482, 83 Cal.Rptr.2d 865 and in Mediterranean Construction Co. v. State Farm Fire & Casualty Co. (1998) 66 Cal.App.4th 257, 262*264, 77 Cal.Rptr.2d 781, this court concluded that the context of the statute governing summary judgment motions required an oral hearing. Parties are also entitled to oral argument in "critical pretrial matters" where there is a "real and genuine dispute." (Titmas v. Superior Court (2001) 87 Cal.App.4th 738, 742, 104 Cal.Rptr.2d 803 (whether the attorney-client privilege applied); see also TJX Companies, Inc. v. Superior Court (2001) 87 Cal.App.4th 747,751, 104 Cal.Rptr.2d 810 (whether suit should proceed as a class action) ). We analyze the procedures employed here under those criteria. | Parties are entitled to oral argument in critical pretrial matters where there is a real and genuine dispute. | Are litigants entitled to oral argument? | 032076.docx | LEGALEASE-00124459-LEGALEASE-00124460 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | 1 |
| 21704 | Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia, 129 F. Supp. 3d 589 | 241+95(16) | First, while MGAG (with some support from the record) contends that it was exercising Option 2 in the best interest of all of the hedging pool Members, "[i]t is ... well settled that an agent may serve two masters simultaneously, so long as the objectives of one master are not contrary to the objectives of the other." White, 33 S.W.3d at 724. Arguably, when the Town turned over its right to hedge natural gas volumes to MGAG and MGAG undertook that responsibility, it did so for the Town's benefit, thereby creating a principal-agent relationship. | Town knew or should have known of municipal gas authority's actions regarding execution of hedges, allegedly in violation of the Tennessee Consumer Protection Act (TCPA), over a year before town brought action against the gas authority, and thus town's action under the TCPA was not timely pursuant to it, under which one-year statute of limitations period began running when a person discovered the unlawful act, despite town's claim that it did not ascertain the full extent of its loss until a later date, where, over one year prior to town initiating TCPA action, gas authority had informed town that it had executed allegedly unauthorized hedges, that town would not be permitted to reduce its volumes, and that town would be obligated to accept the prices imposed by the hedges, to which town responded that it did not recognize the hedges, and gas authority responded again that town was bound by any hedges gas authority had put in place. West's T.C.A. § 47-18-110. | Can an agent act in a dual capacity in which his interest conflicts with his duty? | 041748.docx | LEGALEASE-00127132-LEGALEASE-00127133 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21705 | State v. Hodges, 386 N.W.2d 709 | 110=29(11) | Although the multiple-victim exception clearly permits three assault convictions if a burglar assaults three different people after entering a house, the exception does not allow three burglary convictions simply because three people were present in the house when it was burglarized. Although the crime of burglary carries with it some special risks to life and is not therefore purely a property offense, State v. Nunn, 297 N.W.2d 752, 754 (Minn.1980), it nonetheless is classified in the criminal code under the heading "Damage or Trespass to Property." Thus, we believe that for the purpose of section 609.04, the burglarious entry of one dwelling should justify only one burglary conviction. Under this approach, the commission of other crimes, such as assault or robbery, against the occupants of the dwelling after entry is made may beadditionally punished with convictions and sentences on the basis of one extra conviction and sentence per victim of the other crimes, but only one burglary conviction would be allowed. | Burglarious entry of one dwelling justifies only one burglary conviction; however, if burglar commits other crimes, such as assault or robbery, against occupants of dwelling after entry, he may be additionally punished on basis of one extra conviction and sentence per victim of other crimes. M.S.A. § 609.04. | Is burglary purely a property offense? | 013182.docx | LEGALEASE-00131321-LEGALEASE-00131322 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21706 | Farris v. Boyke, 936 S.W.2d 197 | 30=3213 | We are aware that Marsh generally stands for the proposition that obtaining an extension of time to file responsive pleadings does not operate to waive any of the defenses and objections set forth in Rule 55.27 (a). Nevertheless, Marsh also implicitly recognizes that cases involving the use of long arm statutes and the requirement of showing minimum contacts with the forum state, or the lack thereof, necessitate the presentation of intricate facts to the trial court. To aid in this endeavor it is necessary that litigants use discovery procedures to obtain these facts from each other. This, of course, is subject to the trial court power pursuant to Rule 56.01 (c) to restrict the scope of such discovery request. See State ex rel. Deere and Co. v. Pinnell, 454 S.W.2d 889, 894 (Mo. banc 1970). | Determination of whether personal jurisdiction exists is for trial court, but sufficiency of evidence to make prima facie showing that trial court may exercise personal jurisdiction is question of law which is reviewed independently on appeal. | "To prove jurisdictional factum, may a proponent resort to discovery or other evidence relevant to that purpose?" | 032090.docx | LEGALEASE-00138527-LEGALEASE-00138528 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21707 | Elsner v. E-Commerce Coffee Club, 126 So. 3d 1261 | 30=3311 | "[T]he disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant."Friedman v. Heart Inst. of Port St. Lucie, 863 So.2d 189, 194 (Fla.2003) (quoting Straub v. Matte, 805 So.2d 99, 100 (Fla. 4th DCA 2002)). But, "where materials sought by a party "would appear to be relevant to the subject matter of the pending action," the information is fully discoverable." Bd. of Trs. of the Internal Improvement Trust Fund v. Am. Educ. Enters., LLC, 99 So.3d 450, 458 (Fla.2012) (citations omitted). "The concept of relevancy has a much wider application in the discovery context than in the context of admissible evidence at trial." Id. | Trial court rulings on discovery issues must stand except in extraordinary cases. | "Can the disclosure of personal financial information during discovery cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant?" | 030942.docx | LEGALEASE-00138948-LEGALEASE-00138949 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | 1 |
| 21708 | City of New London v. Miller, 60 Conn. 112 | 268=480 | An assessment for benefits isnotordinarilyincluded in the term "taxes." Whitmore v. Hartford, 96 Conn. 511, 523, 114 A. 686; City of New London v. Miller, 60 Conn. 112, 116, 22 A. 499. Section 169f, as the defendant contends, deals entirely with general taxes and does not relate to assessments for special benefits. This section was not amended by " 270g, although we inadvertently so stated in City of Bridgeport v. Schwarz Bros. Co., 131 Conn. 50, 54, 37 A.2d 693. While " 337e relates to taxes of the same general character, it also refers to tax liens, and " 270g amended it to includeassessment liens in terms that leave no room for judicial construction. The word "tax" was to include any valid permanent improvement liens or assessment. Such liens and assessments were expressly brought within the statute and, unless excluded by the context, the other provisions of " 337e would have applied to them. | An assessment for street improvements cannot be made against one only of several joint owners of abutting property, for the benefits accruing to the whole property, but must be either separately against each owner or jointly against all. | "Is an assessment for benefits included in the term ""taxes""?" | 045683.docx | LEGALEASE-00143091-LEGALEASE-00143092 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 21709 | Scheid v. Shields, 269 Or. 236 | 83E=401 | The UCC does provide that there can be transferees of instruments who are not "holders." ORS 73.2010 and 73.2020. "Transfer" is the all-encompassing term used by the UCC to describe the act which passes an interest in the instrument to another. ORS 73.2010, 73.2020. | "Transfer" is the all-encompassing term used by the Uniform Commercial Code to describe the act which passes an interest in an instrument to another. ORS 73.2010, 73.2020. | Whether negotiation is one form of transfer? | 010588.docx | LEGALEASE-00148612-LEGALEASE-00148613 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21710 | Bridgeview Health Care Ctr., Ltd. v. Clark, 816 F.3d 935 | 308=99 | In applying the regulatory definition of a fax sender, we hold that agency rules are properly applied to determine whether an action is done "on behalf" of a principal. See 47 C.F.R. " 64.1200(f)(10). There are three types of agency: (1) express actual authority, (2) implied actual authority, (3) apparent authority. See Moriarty v. Glueckert Funeral Home, Ltd., 155 F.3d 859, 866 (7th Cir.1998). If Clark was acting as the principal to B2B's agent, he would have made B2B his agent in one of these three ways, but it is clear that that none of them applies here.2 | To create apparent authority, principal must speak, write, or otherwise act toward third party, and his conduct must make third party reasonably believe that he has consented to action done on his behalf by someone purporting to act for him. | Can actual authority be implied? | 041524.docx | LEGALEASE-00152896-LEGALEASE-00152897 | Condensed, SA | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 21711 | Karonis v. Visible Spectrum, 2015 IL App (2d) 150019 | 30=4069 | A section 2"615 motion to dismiss challenges the legal sufficiency of a complaint. Kanerva v. Weems, 2014 IL 115811, 383 Ill.Dec. 107, 13 N.E.3d 1228. A court deciding a section 2"615 motion must accept all well-pleaded facts in the complaint as true, and it should dismiss the complaint only where no set of facts could be proven that would entitle the plaintiff to recover. We review de novo an order granting a motion to dismiss under section 2"615 of the Code. Kanerva, 2014 IL 115811, 383 Ill.Dec. 107, 13 N.E.3d 1228. | Appellate Court may affirm a dismissal on any basis appearing in record. | In ruling on a motion to dismiss which challenges the legal sufficiency of a complaint, should a court accept as true all well-pleaded facts in the complaint? | Pretrial Procedure - Memo # 8651 - C - KS_60218.docx | ROSS-003279400-ROSS-003279401 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21712 | Columbia Cnty. Bank v. Newman Park, 177 Wash. 2d 566 | 366=31(4) | Equitable subrogation allows one party to step into the shoes of a second party who is owed a debt or obligation and to receive the benefit of that debt or obligation, in the absence of any contractual agreement or assignment of rights between those two parties or the debtor. See Winters v. State Farm Mut. Auto. Ins. Co., 144 Wash.2d 869, 875, 31 P.3d 1164 (2001). Subrogation is permitted without assignment in order to prevent unjust enrichment. See Prestance, 160 Wash.2d at 576, 160 P.3d 17. Unjust enrichment is an equitable doctrine; thus this sort of subrogation is called equitable subrogation. | Washington Supreme Court would adopt in full the subrogation section of the Restatement (Third) of Property: Mortgages, which sets forth a "protect some interest" rule of subrogation when a party fully performs a secured obligation of another party; overruling BNC Mortgage, Inc. v. Tax Pros, Inc., 111 Wash.App. 238, 46 P.3d 812. Restatement (Third) of Property: Mortgages § 7.6. | Is subrogation permitted without assignment to prevent unjust enrichment? | Subrogation - Memo 182 - ANG C.docx | ROSS-003283396-ROSS-003283397 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 21713 | Garcia v. U.S. Bank, 141 F. Supp. 3d 490 | 349A+230 | Count IV alleges a claim in tort for trespass to chattels. For the Defendant's seizure of the boat and personal property stored on the boat. Compl. "" 22"24. A trespass to chattels claim arises when a party "intentionally uses or intermeddles with personal property in rightful possession of another without authorization." America Online, Inc. v. IMS, 24 F.Supp.2d 548, 550 (E.D.Va.1998). One who commits a trespass to chattels is liable to the rightful possessor "if the chattel is impaired as to its condition, quality, or value." Id. The trespasser is liable for actual damages suffered by reason of the loss of the use of the property. Vines v. Branch, 244 Va. 185, 190, 418 S.E.2d 890, 894 (1992). | Borrowers' allegations that lender repossessed and later sold their boat that served as collateral securing loan that financed boat and that lender failed to provide them notice of sale were sufficient to state claim for violation of notice requirements of Uniform Commercial Code (UCC), as adopted into Virginia law, providing that secured party intending to sell or otherwise dispose of collateral was required to provide notice of such disposition to borrower 10 days or more before earliest time of disposition of collateral. West's V.C.A. S 8.9A-609, 8.9A-611, 8.9A-612. | When does a trespass to chattels claim arise? | Trespass - Memo 124 - RK.docx | ROSS-003285117-ROSS-003285118 | Condensed, SA, Sub | 0.18 | 0 | 1 | | 1 | 1 |
| 21714 | Alex & Ani v. Elite Level Consulting, 31 F. Supp. 3d 365 | 29T+131 | Agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Lawrence v. Anheuser"Busch, Inc., 523 A.2d 864, 867 (R.I.1987) (quoting Restatement (Second) Agency " 1(1) (1958)). An agency relationship exists where: (1) the principal manifests that the agent will act for him; (2) the agent accepts the undertaking; and (3) the parties agree that the principal will be in control of the undertaking. Butler v. McDonald's Corp., 110 F.Supp.2d 62, 66 (D.R.I.2000). "It is essential to the relationship that the principal have the right to control the work of the agent, and that the agent act primarily for the benefit of the principal." Lawrence, 523 A.2d at 867. | Alleged deception of jewelry buyer, which allegedly induced jewelry manufacturer into selling jewelry at discounted rates with understanding that jewelry would not be resold, did not occur primarily and substantially in Massachusetts, and thus buyer did not violate Massachusetts Consumer Protection Law, although buyer allegedly resold jewelry to retailer, which sold jewelry at Massachusetts stores, and jewelry was shipped by Massachusetts distribution company, where deception took place principally in Utah, Colorado, and California, which was where buyer and corporations that allegedly procured jewelry for retailer were based, manufacturer was based in Rhode Island, and Massachusetts distribution company was not complicit in alleged scheme. M.G.L.A. c. 93A, S 11. | Is it essential that the principal have the right to control the work of the agent? | Principal and Agent - Memo 505 - KK_63283.docx | ROSS-003292951-ROSS-003292952 | Condensed, SA, Sub | 0.05 | 0 | 1 | | 1 | 1 |
| 21715 | City of St. Louis v. Polinsky, 190 Mo. 516 | 178+1.8(3) | It is within the common knowledge that the quality of milk depends largely upon the nature of the food that cows are fed upon, that cows fed upon grass, clover, or other fresh green food give a quality of milk superior in richness and appearance to that drawn from cows fed on refuse, slops, or winter foods. By adding annetto to the white milk or cream given by winter fed or poorly fed cows, a deception is practiced upon the milk-consuming public by making this milk of inferior quality assume the rich and golden appearance of superior milk. Such conduct is a fraud and deception upon the public, and an unfair advantage over honest competitors who refuse to resort to such deception against which the ordinance is leveled, and we hold it was clearly within the charter power of the city referred in St. Louis v. Liessing; Weigand v. Dist. Columbia, 22 D. C. App. 559, 571; Plumley v. Massachusetts, 155 U. S. 461, 575, 15 Sup. Ct. 154, 39 L. Ed. 223, and cases cited; Capital City Dairy Co. v. Ohio, 183 U. S. 238, 22 Sup. Ct. 120, 46 L. Ed. 171; State v. Schlenker, 112 Iowa, 642, 84 N. W. 698, 51 L. R. A. 347, 84 Am. St. Rep. 360; State v. Campbell, 64 N. H. 402, 13 Atl. 585, 10 Am. St. Rep. 419. | An ordinance forbidding the sale of milk and cream containing coloring matter, being to prevent deception on the public and unfair advantage over honest competitors, is within the authority granted by the city charter to inspect milk, to secure the general health by any necessary measure, and to pass all ordinances expedient in maintaining the health and welfare of the city, its trade, commerce, and manufactures. | Will the quality of milk depend on food that cows are fed? | Adulteration- Memo 61-SB_60116.docx | ROSS-003294728-ROSS-003294729 | Condensed, SA, Sub | 0.65 | 0 | 1 | | 1 | 1 |
| 21716 | Dugan v. Dugan, 92 N.J. 423 | 192+1 | As distinguished from tangible assets, intangibles have no intrinsic value, but do have a value related to the ownership and possession of tangible assets. Some intangibles, such as a trademark, trade name or patent, are related to an identifiable tangible asset. Goodwill, which is another intangible, is not. Often referred to as "the most "intangible" of the intangibles," D. Kieso & J. Weygandt, Intermediate Accounting 570 (3d ed.1980), goodwill is essentially reputation that will probably generate future business. Lord Eldon expressed that thought in Cruttwell v. Lye, 17 Ves. 335, 346, 34 Eng. Rep. 129, 134 (Ch. 1810): "The good-will, which has been the subject of sale, is nothing more than the probability, that the old customers will resort to the old place." | Attorney's goodwill is to be differentiated from earning capacity, in that it reflects not simply possibility of future earnings, but probability based on existing circumstances and enhanced earnings reflected in goodwill are to be distinguished from license to practice profession and educational degree. | Is goodwill a probability that old customers will resort to the old place? | Goodwill - Memo 11 - ANG..docx | ROSS-003297749-ROSS-003297750 | Condensed, SA, Sub | 0.61 | 0 | 1 | | 1 | 1 |
| 21717 | Cox v. Reinhardt, 41 Tex. 591 | 83E+740 | It clearly appears upon the face of the petition of Reinhardt, the plaintiff in the District Court, that the note for two hundred dollars was not due when he brought his suit upon it. It has been held by this court that days of grace were only allowed by our former statute on bills and notes assignable and negotiable by law, which are contracts between merchant and merchant, their factors and agents. | Suit cannot be brought upon a note on the day it is payable, unless by attachment, and as upon a debt not due. | Is days of grace allowed in contracts between merchant and merchant? | Bills and Notes -Memo 997-DB_58721.docx | ROSS-003307661 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | 1 |
| 21718 | Maryland Cas. Ins. Co. v. Welchel, 257 Ga. 259 | 379+200 | "Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." OCGA " 51-10-3. The action of trespass to personalty is "concurrent with" the action of trover and conversion, although the two actions are not "entirely coextensive." 28 EGi 79, Trover & Conversion, " 2 (1985 Rev.). "Trespass will doubtless lie for acts of interference with goods where trover will not... The chief principle in the field of conversion is undoubtedly found in the idea of interference with the dominion which is incident to the general or special ownership of chattels. This conception is entirely different from the idea of damage to the property itself which is inseparable from trespass..." Id. | Tow truck operator was not liable to insurer of vehicle for tortious interference with insurer's subrogation rights on claim for loss of vehicle, since insurer had no subrogation claim against operator for conversion of vehicle. | Can trespass lie for the interference of goods? | Trespass - Memo 108 - JS.docx | ROSS-003324852-ROSS-003324853 | Condensed, SA, Sub | 0.7 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21719 | Mull v. Motion Picture Indus. Health Plan, 937 F. Supp. 2d 1161 | 231H+461 | Finally, as to Count Four, a request for attorneys fees and costs pursuant to ERISA section 502(g)(1), 29 U.S.C. " 1132(g)(1), the Court agrees with the defendants (MTD at 24"25) that requests for damages or attorneys fees and costs are not properly asserted as independent causes of action. Cf. Nelson v. Original Smith & Wesson Business Entities, 2010 WL 7125186, (D.Alaska May 18, 2010) ("The Court need not address Counts 5 and 6 for damages and punitive damages, as such claims are not independent causes of action."), recon. denied, 2010 WL 7125187 (D.Alaska June 14, 2010), aff'd, 449 Fed.Appx. 581 (9th Cir.2011). Moreover, it is premature to consider the appropriate form of relief until the plaintiffs win a judgment on one of their substantive claims. See Jarvis v. Allstate Ins. Co., 2012 WL 3647452, (D.Mont. Aug. 23, 2012) (denying motion for partial summary judgment and noting that "attorneys fees issues .. are premature at this time"); Hulihan v. Reg. Transp. Comm'n of So. Nevada, 2012 WL 2060955, (D.Nev. June 7, 2012) ("[T]his Court denied without prejudice Defendants' Motion for Attorney's Fees and Costs as premature because there has yet to be an entry of final judgment."), COA den., 2012 WL 3135681 (D.Nev. Aug. 1, 2012). | The plan administrator is not determined under ERISA by the actions or responsibilities of a particular party, but by the language in the coverage documents. Employee Retirement Income Security Act of 1974, S 3(16)(A), 29 U.S.C.A. S 1002(16)(A). | Can requests for damages or attorney fees and costs be asserted as independent causes of action? | Action - Memo # 204 - C T.I.docx | ROSS-003328382-ROSS-003328383 | SA, Sub | 0.81 | 0 | 1 | 1 | | |
| 21720 | Columbia Asset Recovery Grp. v. Kelly, 177 Wash. App. 475 | 13+6 | Equitable subrogation is applied broadly " "to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.' " Tri"City Constr. Council v. Westfall, 127 Wash.App. 669, 675, 112 P.3d 558 (2005) (internal quotation marks omitted) (quoting In re Liquidation of Farmers & Merchs. State Bank of Nooksack, 175 Wash. 78, 85"86, 26 P.2d 631 (1933)). However, "there is no absolute right of equitable subrogation"; instead, it is "based upon the circumstances of each case and the demands of justice for an equitable result." Westfall, 127 Wash.App. at 674, 112 P.3d 558. Thus, the party seeking equitable subrogation must be in greater need of equity than its adversary. Livingston v. Shelton, 85 Wash.2d 615, 619, 537 P.2d 774 (1975). Once a party is subrogated, it "step[s] into the lender's shoes to the extent of the current obligation." Columbia Cmty. Bank v. Newman Park, LLC, 177 Wash.2d 566, 574, 304 P.3d 472 (2013). | Courts avoid considering moot cases in order to avoid the danger of an erroneous decision caused by the failure of parties, who no longer have an existing interest in the outcome of a case, to zealously advocate their position. | Must a party seeking equitable subrogation be in greater need of equity than its adversary? | Subrogation - Memo 162 - ANG C.docx | ROSS-003328865-ROSS-003328866 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | 1 |
| 21721 | Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Services, 974 F. Supp. 2d 64 | 16+80 | The "American system" generally requires each party to pay its own attorneys' fees unless a statute or contract permits recovery.Mullane v. Chambers, 333 F.3d 322, 337-38 (1st Cir. 2003). Puerto Rico law grants attorneys' fees in certain circumstances, and, pursuant to such law, the First Circuit Court of Appeals allows attorneys' fees in diversity cases, where appropriate. Templeman v. Chris Craft Corp., 770 F.2d 245, 250 (1st Cir. 1985) (citing Pan Am. World Airways, Inc. v. Ramos, 357 F.2d 341, 342 (1st Cir. 1966)). In admiralty cases, however " even when the Court could hear the case through diversity jurisdiction " the Court does not apply Puerto Rico law regarding attorneys' fees; rather the Court applies admiralty law. Id.; see also Clarendon Am. Ins. Co. v. Fernandez-Rodriguez, 1999 AMC 2885 (D.P.R. 1999) (stating "[a]lthough attorneys' fees are awarded in admiralty cases for disputes which are normally not the subject of admiralty, the case at bar [sic] does not hinge on an aspect which remains unaddressed by maritime law, but rather on an allegation of a breach of a maritime insurance contract."). "Under admiralty law, a court has inherent power 'to assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"Id. (quoting Gradmann& Holler GMBH v. Cont'l Lines, S.A., 679 F.2d 272, 274 (1st Cir. 1982) (internal quotations omitted). | When a defendant brings a counterclaim to a plaintiff's admiralty claim, and it is so intertwined with the main action that the resolution of both claims hinges on the same factual determinations, the defendant's counterclaim cannot be heard by a jury. U.S.C.A. Const.Amend. 7; Fed.Rules Civ.Proc.Rule 38(e), 28 U.S.C.A. | "Under admiralty law, when can a court assess attorneys fees?" | 004106.docx | LEGALEASE-00116326-LEGALEASE-00116328 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | 1 |
| 21722 | Envtl. Def. Fund v. Froehlke, 348 F. Supp. 338 | 149E+700 | While the decision in the Aberdeen R. Co. v. SCRAP case reflects only the view of one member of the Supreme Court, we are confident that the Chief Justice stated the applicable law when he said that "The decisional process for judges is one of balancing and it is often a most difficult task." | General principles of equity are applicable in determining whether injunction should be granted for a violation of the National Environmental Policy Act and application of those principles controls exercise of court's discretion under the circumstances. National Environmental Policy Act of 1969, SS 101, 102, 102(2)(C), 42 U.S.C.A. SS 4331, 4332, 4332(2)(C). | Is the decisional process for judges one of balancing? | Environmental Law - Memo 20 - JS.docx | ROSS-003298128-ROSS-003298129 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 21723 | Litz v. Maryland Dep't of Env't, 446 Md. 254 | 148+293(1) | Under common law, a trespass claim is generally "an intentional or negligent intrusion upon or to the possessory interest in property of another." Schuman v. Greenbelt Homes, Inc., 212 Md.App. 451, 475, 69 A.3d 512, 526 cert. denied sub nom. Schuman v. Greenbelt Homes, 435 Md. 269, 77 A.3d 1086 (2013) (citation and quotation marks omitted). In Ms. Litz's Third Amended Complaint, she alleged that the "Town, County, DHMH and the State are invading and have invaded Litz's property by approving residential septic systems in the Town that channel polluted ground water and discharge those waters in unnatural and harmful quantities, qualities, and rates of flow onto Litz's property." In our earlier opinion in this litigation, we found that the complaint alleged a continuing cause of action on this score because, in the light most favorable to Ms. Litz, "a trier of fact could conclude that the Town's duties were ongoing and continuous." Litz I, 434 Md. at 648"49, 76 A.3d at 1091. In specific reference to the trespass claim, we concluded that | Property owner's complaint sufficiently stated a cause of action for inverse condemnation by alleging that failure of state, Department of the Environment, county, and town to address pollution and sewage problems led directly to the substantial devaluing of her property, on which she had operated a popular lake-front recreational campground, and its ultimate loss through foreclosure. West's Ann.Md. Const. Art. 3, S 40. | Is an intrusion on a party's right or interest in exclusive possession of his or her property considered a trespass? | 000729.docx | LEGALEASE-00117553-LEGALEASE-00117555 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21724 | Mulhearn v. Fed. Shipbuilding & Dry Dock Co., 2 N.J. 356 | 106=236 | The proper delegation of legislative power to administrative agencies within the executive department is not an infringement of Article III. The Legislature cannot delegate all its power. Schechter Poultry Corp. v. United States, 295 U.S. 495, 529-530, 55 S.Ct. 837, 79 L.Ed. 1570, 1580, 97 A.L.R. 947 (1935), and in delegating segments of its power it must set up adequate rational standards to guide the administrative body to whom it is entrusting the exercise of such delegated power.  State v. Traffic Telephone Workers, 2 N.J. 335, 66 A.2d 616 (1949), in considering any delegation of legislative power. And it must be remembered that what the Legislature delegates it may at any time withdraw. Neither is the grant to administrative agencies of the power to adjudicate controversies within the various fields of administrative activity a violation of Article III, for every administrative adjudication is subject to the doctrine of the supremacy of law or, as it has often been called, the Rule of Law. If an administrative adjudication is repugnant to the state or the federal Constitution or the law of the land as, e.g., a treaty, or is ultra vires a statute, it is subject to attack by judicial review. Nowhere is the right of judicial review of administrative determinations more strictly enforced than in this State, whereby Article VI, Section V, paragraph 4, of the Constitution, prerogative writs with the uncertainty resulting from their discretionary character have been superseded by "proceedings for review, hearing, and relief as of right in civil cases." | The Division of Workmen's Compensation of the Department of Labor and Industry is not an "inferior court" within the constitution providing for appeals to the Supreme Court on certification, but is an administrative tribunal in a department that is a component part of the executive establishment. N.J.S.A.Const.1947, art. 3; art. 6, S 5, par. 1; Rules of Supreme Court, rules 1:5-2, 1:5-3. | Is it necessary for the legislature to prescribe standards that are to govern the administrative agency in the exercise of the powers the legislature delegates to it? | 000337.docx | LEGALEASE-00117689-LEGALEASE-00117690 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | |
| 21725 | Trappey v. Lumbermens Mut. Cas. Co., 77 So.2d 183 | 413=295 | "Partnership is being distinct from persons composing it and civil person with distinct rights and attributes. First Nat. Bank [of Shreveport] v. Davis, [La.]App.1933, 147 So. 93." | Plaintiff, who was manager and supervisor of bottling plant owned by commercial partnership, which carried compensation insurance, and who had been given a 1/616 interest in the partnership but who retained his position and received his wages without change, was an "employee", and he had a cause of action against insurance carrier for eye injury received after he had been given partnership interest. LSA-C.C. art. 2801. | Is a partnership a civil person having civil rights? | 022373.docx | LEGALEASE-00118082-LEGALEASE-00118083 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21726 | Dahl v. City of Shawnee, 130 P.3d 1247 | 110=1043(2) | As the appellees point out, the 30"day time period under K.S.A. 60"2101(d) is applicable to this case because K.S.A. 12"1750 et seq. does not provide another means for appealing a decision of a governing body and because the City Council was exercising a quasi-judicial function. In his brief, Dahl acknowledges that the City Council was exercising a quasi-judicial function in this case. We agree. "A decision of a legislative body is quasi-judicial if a state or local law (1) requires notice to the community before the action, (2) requires a public hearing pursuant to notice, and (3) requires the application of criteria established by law to the specific facts of the case. [Citation omitted.]" Heckert Construction Co. v. City of Ft. Scott, 278 Kan. 223, 224, 91 P.3d 1234 (2004).Here, the City Council was required to notify the community of a hearing concerning whether Dahl's structure was unsafe or dangerous. See K.S.A. 12"1752. In addition, the City Council was required to conduct a public hearing and to apply the criteria established by law to the specific facts of the case. See K.S.A. 12"1753. Therefore, the City Council's decision was quasi-judicial in nature. | Defendant's objection to introduction of preliminary hearing testimony of murder victim's girlfriend was sufficiently specific to preserve issue for appeal; defendant objected to girlfriend's failure to appear and to introduction of her preliminary hearing transcript. | When is a decision of a legislative body quasi-judicial in nature? | 002365.docx | LEGALEASE-00119442-LEGALEASE-00119443 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21727 | Doe v. Corp. of President of Church of Jesus Christ of Latter-Day Saints, 141 Wash. App. 407 | 211=1518 | Moreover, another section of chapter 26.44 RCW grants immunity from civil liability to "[a] person who, in good faith and without gross negligence, cooperates in an investigation arising as a result of a report made pursuant to this chapter." RCW 26.44.060(5). However, "[t]his subsection does not apply to a person who has caused or allowed the child abuse or neglect to occur." RCW 26.44.060(5). A grant of immunity from liability clearly implies that civil liability can exist in the first place. Accordingly, we conclude that a private cause of action is implied under the mandated reporting statute. | A private cause of action is implied under statute mandating the report of abuse or neglect. West's RCWA 26.44.030(1)(a). | Does a grant of immunity from liability imply that civil liability exists? | Action - Memo 51 - MS.docx | ROSS-003322629-ROSS-003322630 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 21728 | Young v. Gannett Satellite Info. Network, 837 F. Supp. 2d 758 | 237=1 | "The "innocent construction" rule provides that if a statement is "susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." " Gilbert v. WNIR 100 FM, 142 Ohio App.3d 725, 756 N.E.2d 1263, 1275 (2001) (quoting Seth v. WFMJ Television, Inc., 134 Ohio App.3d 796, 732 N.E.2d 451, 459°460 (1999)). However, the innocent construction rule "protects only those statements that are reasonably susceptible of an innocent construction." Gupta v. The Lima News, 139 Ohio App.3d 538, 744 N.E.2d 1207, 1214 (2000) (quoting McKimm v. Ohio Elections Comm., 89 Ohio St.3d 139, 729 N.E.2d 364, 372 (2000)). "To construe a publication in an unreasonable manner in order to give it an innocent interpretation is itself incompatible with the rule's requirement that words be given their "natural and obvious meaning." " Id. (quoting McKimm, 729 N.E.2d at 372). The question of whether an innocent defamatory meaning of a statement is to be adopted is a question of law. See Holley v. WBNS 10TV, Inc., 149 Ohio App.3d 22, 775 N.E.2d 579, 584 (2002); Sweitzer v. Outlet Commc'ns, Inc., 133 Ohio App.3d 102, 726 N.E.2d 1084, 1091 (1999) ("Under the innocent constructionrule, whether a statement is defamatory will essentially always be a question of law."). | To prove a claim of defamation under Ohio law: (1) there must be the assertion of a false statement of fact; (2) that the false statement was defamatory; (3) that the false defamatory statement was published by defendants; (4) that the publication was the proximate cause of the injury to the plaintiff; and (5) that the defendants acted with the requisite degree of fault. | What is the innocent construction rule? | 002896.docx | LEGALEASE-00119900-LEGALEASE-00119902 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 21729 | Lefrock v. Walgreens Co., 77 F. Supp. 3d 1199 | 237=41 | Additionally, "malice is an essential element of slander." Lundquist v. Alewine, 397 So.2d 1148, 1149 (Fla. 5th DCA 1981). This Court has previously held that "[f]alse statements which suggest that someone has committed a dishonest or illegal act are defamatory per se" and are, therefore, clothed in a presumption of malice. Shaw v. R.J. Reynolds Tobacco Co., 818 F.Supp. 1539, 1541°42 (M.D.Fla.1993). However, that presumption "ceases to exist where the Defendant has a qualified privilege to make the statements." Id. | Under Florida law, pharmacist's statements to pharmacy customers about qualifications of doctor who issued their prescriptions were privileged, precluding doctor's slander per se claims against pharmacy; statements were made at time customers attempted to fill prescriptions, purpose of statements was to inform customers about doctor, and pharmacist had duty beyond robotically following doctor's instructions. | Is malice an essential element of slander? | Libel and Slander - Memo 144 - RK.docx | ROSS-003312528-ROSS-003312529 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21730 | Melrose Gates v. Chor Moua, 875 N.W.2d 814 | 30+3554 | Tenants, however, argue that the de novo standard of review is inappropriate in this case because the district court weighed equitable factors. As we have recognized, "[t]he doctrine of subrogation is of purely equitable origin and nature." N. Trust Co. v. Consol. Elevator Co., 142 Minn. 132, 138, 171 N.W. 265, 268 (1919). Ordinarily, this court "review[s] a district court's decision to award equitable relief for abuse of discretion." Dakota Cty. HRA v. Blackwell, 602 N.W.2d 243, 244 (Minn.1999). | District court's decision on cross motions for summary judgment dismissing an equitable claim on the ground that, as a matter of law, the requirements for equitable relief were not met, was required to be reviewed de novo, where the facts were undisputed and the district court did not weigh equitable factors. | Is the purpose of subrogation purely equitable? | Subrogation - Memo # 675 - C - NO.docx | ROSS-003285133-ROSS-003285134 | Condensed, SA, Sub | 0.38 | 0 | 1 | | 1 | |
| 21731 | Welenco v. Corbell, 126 F. Supp. 3d 1154 | 29T+421 | Under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." In re iPhone Application Litig., 844 F.Supp.2d 1040, 1069 (N.D.Cal.2012) (quoting Intel Corp. v. Hamidi, 30 Cal.4th 1342, 1350"51, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003)). A trespasser is liable when the trespass diminishes the condition, quality or value of personal property. eBay, Inc. v. Bidder's Edge, Inc., 100 F.Supp.2d 1058, 1071 (N.D.Cal.2000). "An interference (not amounting to dispossession) is not actionable, under modern California and broader American law, without a showing of harm." In re iPhone Application Litig., 844 F.Supp.2d at 1069. One who intentionally intermeddles with another's chattel is liable "only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected...." Jamgotchian v. Slender, 170 Cal.App.4th 1384, 1401, 89 Cal.Rptr.3d 122 (2009). | A customer list may qualify as a trade secret under the California Uniform Trade Secrets Act because of its economic value when its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested and plaintiff took reasonable steps to protect this information. West's Ann.Cal.Code S 3426.1(d). | "Can a trespasser be held liable when the trespass diminishes the condition, quality or value of the property?" | Trespass - Memo 128 - AKA.docx | ROSS-003284986-ROSS-003284987 | SA, Sub | 0.61 | 0 | 0 | | 1 | 1 |
| 21732 | Cook, Perkiss & Liehe v. N. California Collection Serv. Inc., 911 F.2d 242 | 29T+28 | In determining that NCC's advertisement was not actionable, Magistrate Wilken compared it to a statement found to be puffery in Metro Mobile Cts, Inc. v. Newvector Communications, Inc., 643 F.Supp. 1289 (D.Ariz.1986) rev'd without opinion, 803 F.2d 724 (9th Cir.1986).3 The district court in Metro Mobile stated that: " 'Puffing' has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers."Id. at 1292. It found the following statement to be puffery, and therefore not actionable under Section 43(a) of the Lanham Act: "We ask you: Would you prefer to do business with the phone company with the best technology, lower rates, and better customer service?" Id. at 1293. Magistrate Wilken found NCC's advertisement to be similar to this advertisement in that they both imply lower rates and better services than those of a competitor. She stated that "Here, the implication of the advertisement is an exaggerated claim that defendants' costs are lower than any competing attorney's. It is beyond the realm of reason to assert, as plaintiffs do, that a reasonable consumer would interpret this as a factual claim upon which he or she could rely." | Statements in collection agency's advertisement implying that agency offered same collection services as lawyers at lower price were mere "puffery" and not actionable as false advertising. Lanham Trade-Mark Act, S 43(a), as amended, 15 U.S.C.A. S 1125(a). | What is puffery? | Libel and Slander - Memo 191 - BP.docx | LEGALEASE-00011919-LEGALEASE-00011920 | Condensed, SA, Sub | 0.79 | 0 | 1 | | 1 | 1 |
| 21733 | Onewest Bank, FSB v. Alessio, 182 So. 3d 855 | 307A+563 | This court has "condemned the use of motions in limine to summarily dismiss a portion of a claim." Rice v. Kelly, 483 So.2d 559, 560 (Fla. 4th DCA 1986). "The purpose of a motion in limine is generally to prevent the introduction of improper evidence, the mere mention of which at trial would be prejudicial." Dailey v. Multicon Dev. Inc., 417 So.2d 1106, 1107 (Fla. 4th DCA 1982). A motion in limine may not serve as an unnoticed alternative to a motion to dismiss or a motion for summary judgment. Rice, 483 So.2d at 560 | The six Kozel factors a trial court is required to consider in determining whether dismissal with prejudice is warranted due to an attorney's misconduct are: (1) whether the attorney's disobedience was willful, deliberate, or contumacious, ratherthan an act of neglect or inexperience; (2) whether the attorney has been previously sanctioned; (3) whether the client was personally involved in the act of disobedience; (4) whether the delay prejudiced the opposing party through undue expense, lo ss of evidence, or in some other fashion; (5) whether the attorney offered reasonable justification for noncompliance; and (6) whether the delay created significant problems of judicial administration. | Does a motion in limine serve as an unnoticed alternative to a motion to dismiss or a motion for summary judgment? | Pretrial Procedure - Memo # 237 - C - ANC.docx | ROSS-003284633-ROSS-003284634 | Condensed, SA, Sub | 0.25 | 0 | 1 | | 1 | 1 |
| 21734 | Carr v. Jacuzzi Bros., 133 Ga. App. 70 | 343+2734(2) | The same would be true as to the repairs that plaintiff says he will have to do for his customers at some time in the future, if that were a recoverable item, but it is not. Hughes v.Brown, 109 Ga.App. 578(1),139 S.E.2d 403; Bennett v. Asso. Food Stores, Inc., 118 Ga.App. 711, 714(2), 165 S.E.2d 581; Allen Tile & Marble Co. v. Vinyl Plastics, Inc., 99 Ga.App. 186, 188, 107 S.E.2d 881. "The rule of law that no person can bring an action until he has been actually damaged is applicable here." Terrell v. Stevenson, 97 Ga. 570, 572, 25 S.E. 352. | Evidence which included, inter alia, testimony of buyer of pumps that he had kept no record as to the cost of labor or material used in repairing and replacing allegedly defective pumps presented insufficient information to enable a jury to reach a conclusion as to damages without speculation or guesswork. | Can a person bring an action before he has been actually damaged? | 005578.docx | LEGALEASE-00123911-LEGALEASE-00123912 | Condensed, SA, Sub | 0.44 | 0 | 1 | | 1 | 1 |
| 21735 | State v. Francis, 111 So. 3d 529 | 110+1168(2) | "Second degree murder is the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La.R.S. 14:30.1(A)(1). "It is well-settled that the act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person." State v. Thomas, 10"269, p. 7 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, 1215 writ denied, 10"2527 (La.4/1/11), 60 So.3d 1248, cert. denied, """ U.S. """, 132 S.Ct. 196, 181 L.Ed.2d 102 (2011) (citations omitted). | Any Confrontation Clause error in second degree murder prosecution in admitting autopsy report to show that cause of victim's death was a gunshot wound was harmless, as other evidence showed that defendant fired a bullet into the victim's head and the victim died as a result. U.S.C.A. Const.Amend. 6. | Is an act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person? | 019343.docx | LEGALEASE-00123390-LEGALEASE-00123391 | Condensed, SA, Sub | 0.41 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21736 | Shovah v. Mercure, 44 F. Supp. 3d 504 | 241+95(4.1) | "In common parlance a right accrues when it comes into existence." Gabelli v. Securities and Exchange Comm'n, "'" U.S. "'"", 133 S.Ct. 1216, 1222, 185 L.Ed.2d 297 (2013). "The 'standard rule' is that a claim accrues when the plaintiff has a complete and present cause of action." Id. (quoting Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)). However, in certain cases, courts have applied a "discovery rule" to statutes of limitations. The discovery rule typically applies when a "plaintiff would have reasonably .. had difficulty discerning the fact or cause of injury at the time it was inflicted." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir.1998). The discovery rule postpones the accrual of a cause of action when the potential plaintiff is unaware that he has been injured at the time the wrongful conduct occurred. Shovah argues that, applying the discovery rule, the statute of limitations under " 2255(b) did not begin to run until he made a causal connection between his emotional harm and the alleged childhood sexual abuse. According to the First Amended Complaint, Shovah made this connection within six years of the filing of this action. | Assuming arguendo that discovery rule applied, plaintiff's cause of action against Catholic priest under statute providing civil remedy for certain child victims of sexual abuse accrued, and six-year statute of limitations began to run, on date plaintiff discovered the unlawful conduct, which was date when the abuse itself occurred. 18 U.S.C.A. S 2255(a, b). | Does a right accrue when it comes into existence? | International Law - Memo # 520 - C - SU.docx | ROSS-003311794-ROSS-003311795 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 21737 | Bishop v. Miller, 412 S.W.3d 758 | 30+3387 | In this issue, Reunion principally challenges the reliability of Woods's testimony. Generally, challenges to the reliability of expert testimony must be preserved by proper and timely objection in the trial court. See, e.g., RDG P'ship v. Long, 350 S.W.3d 262, 268 (Tex.App.-San Antonio 2011, no pet.) ("When a reliability challenge requires the appellate court to evaluate the underlying methodology, technique, or foundational data used by an expert, an objection must be timely made in order to preserve a sufficiency complaint with regard to the expert's testimony."). It is difficult to tell on this record whether Reunion preserved these arguments. Reunion states in a footnote that it filed a motion to exclude Woods's testimony and that although the motion was not included in the clerk's record, Reunion has requested the clerk prepare a supplemental record containing the motion. No such record has been filed. See generally Tex. First Nat'l Bank v. Ng, 167 S.W.3d 842, 865'66 (Tex.App.-Houston [14th Dist.] 2005, judgm't vacated w.r.m.) (discussing supplementation of the record and refusing to consider supplemental record filed after opinion originally issued). In the reporter's record immediately prior to the beginning of Woods's testimony, there is a discussion regarding a motion in limine, but a motion in limine would not preserve arguments for the exclusion of the witness's testimony. See, e.g., Perez v. Spring Branch I.S.D., No. 14"10"00058"CV, 2011 WL 742601, at n. 6 (Tex.App.-Houston [14th Dist.] March 3, 2011, pet. denied). During that discussion, there is a reference to an earlier "Robinson hearing" (possibly a hearing on the admissibility of Woods's testimony, see E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549 (Tex.1995), and Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 576 (Tex.2006)), but, again, no transcript from that hearing appears in the record. Nonetheless, for purposes of this appeal, we will assume without deciding that Reunion's arguments | Appellate courts generally review challenges to the admission of expert testimony under an abuse of discretion standard, but when a trial court admits expert testimony that is challenged on appeal as constituting no evidence, the appellate court will review the reliability of the expert testimony using a de novo standard of review. | Will a motion in limine preserve arguments for the exclusion of a witness's testimony? | 024252.docx | LEGALEASE-00122633-LEGALEASE-00122634 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21738 | Potts v. Barrett Div., Allied Chem. & Dye Corp., 48 N.J. Super. 554 | 217+1851 | Suicide (felo de se) was a felony at common law. It ranked as an infamous crime, the penalty being forfeiture of the estate of the decedent and ignominious burial in the highway with a stake driven through the body. Such forfeiture was abolished by our first Constitution of 1776, Art. XVII, and remains proscribed to this day. N.J.S. 2A:152'2, N.J.S.A. Attempt at suicide was likewise an indictable offense at common law, and was designated a misdemeanor in this State. N.J.S. 2A:85'1 and 2A:85'5, N.J.S.A.; State v. Carney, 69 N.J.L. 478, 55 A. 44 (Sup.Ct.1903); State v. Lafayette, 15 N.J.Misc. 115, 188 A. 918 (C.P.1937); and see State v. Ehlers, 98 N.J.L. 236, 241, 119 A. 15, 25 A.L.R. 999 (E. & A.1922). | Where insurance policy was issued under private plan section of Temporary Disability Benefits Law and provided benefits for employees disabled and prevented from performing duties of employment as result of injury or sickness, policy was to be read in the light of the stated purposes of the Temporary Disability Benefits Law. N.J.S.A. 43:21-26, 32. | Is attempting to commit suicide an indictable offense? | 044463.docx | LEGALEASE-00122558-LEGALEASE-00122559 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 21739 | Moore v. Verizon Commc'ns Inc., 2010 WL 3619877 | 372+997(1) | Defendants argue that Plaintiffs' claims for breach of contract and tortious interference fail "because Verizon California has no contractual obligation to Plaintiffs to guarantee unauthorized charges will never appear on their bills." (Defs.' Mtn. at 14.) Relying on one small portion of the Verizon California Local Exchange Tariff filed with the Commission ("Schedule D & R"Definitions and Rules"), Defendants assert that no portion of the tariff addresses third-party billing or imposes on Verizon California an obligation to prevent unauthorized charges from appearing on bills. (Ring Decl., Ex. I.) It is true that a "tariff ... is the document that governs the rights and liabilities between a public utility ... and its customers." Pink Dot, Inc. v. Teleport Communications Group, 89 Cal.App.4th 407, 410 n. 1, 107 Cal.Rptr.2d 392 (2001) (citing Cal. Pub. Util.Code " 489(a)). However, the remainder of the tariff has not been placed before this Court. At the pleading stage, to state a claim for breach of contract, a plaintiff must allege: (1) a contract; (2) plaintiff's performance of the contract; (3) defendant's breach; (4) resulting damage to the plaintiff. McDonald v. John P. Scripps Newspaper, 210 Cal.App.3d 100, 104, 257 Cal.Rptr. 473 (1989). Plaintiffs have done that here. Whether Plaintiffs can prove Defendants' billing practices breach a contractual obligation is a question left for a summary judgment motion or trial; it is not appropriate to "test the evidence at this stage." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1550 (9th Cir.1994) (superseded in part by statute, In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1091 (9th Cir.2002)). | Class action composed of consumers failed to state a claim against a wireline telephone service provider under the Communications Act, alleging that the provider's billing-related conduct violated the Act. The provider distributed its services through subsidiary companies that were responsible for billing and collecting. While the consumers acknowledged that billing and collection services provided by the subsidiaries were not subject to regulation under the Act, they argued that the provider sometimes purchased the accounts receivable from the third-parties and then billed and collected from those customer directly, which constituted billing and collecting on behalf of itself. However, consumers failed to cite authority to support their position and the services billed for were those of a third-party, which still were not considered communication services within the meaning of the Act. Communications Act of 1934, SS 201(b), 206, 207, 47 U.S.C.A. SS 201(b), 206, 207; 47 C.F.R. S 64.2401. | Is a tariff a document governing the rights and liabilities between a public utility and a customer? | 042275.docx | LEGALEASE-00124610-LEGALEASE-00124612 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21740 | Nishnabotna Valley Rural Elec. Co-op. v. Iowa Power & Light Co., 161 N.W.2d 348 | 15A+2212 | In Elk Run Telephone Company v. General Telephone Company of Iowa, supra, we considered the constitutionality and validity of the broad powers conferred on the commission by Chapter 490A. We held the sections of the chapter considered to be constitutional. In so holding, we recognized the broad powers of the commission: "The general purpose and policy of Chapter 490A is to vest in the Iowa Commerce Commission broad control and supervision over those who furnish what is frequently referred to as public services." As recognized in the Elk Run case, we have never held such powers in an administrative body carry with them power to legislate. The Iowa Commerce Commission's power must be exercised within the standards and guidelines set by the legislature. | Commission or board may not change law by giving to statute or act interpretation or construction of which its words are not susceptible. | Is the State Commerce Commission authorized by Chapter 490A to supervise public utilities? | 042577.docx | LEGALEASE-00125146-LEGALEASE-00125147 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21741 | U.S. Bank Nat. Ass'n v. State Bank & Tr. Co., 45 F. Supp. 3d 582 | 278+4 | In simplest terms, "[n]ovation is the substitution of a new obligation for an old one, which is thereby extinguished." Schumpert v. Dillard, 55 Miss. 348, 1877 WL 7437, at *4 (Miss.1877). As understood in modern law, it "is generally defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by a substitution of a new creditor." " Ainsworth v. Lee, 218 Miss. 813, 818, 67 So.2d 905, 907 (Miss.1953) (quoting 39 Am.Jur., p. 255, Sec. 2). In Ainsworth, the Mississippi Supreme Court identified "three kinds of novation: (1) where the debtor and creditor remain the same, but a new debt takes the place of the old one; (2) where the debt remains the same but a new debtor is substituted; and (3) where the debt and debtor remain, but a new creditor is substituted." id. at 817"18, 67 So.2d 905 (citation omitted). | Under Mississippi law, new home-equity line of credit (HELOC) issued to husband and new deed of trust executed by him, upon maturity of original HELOC issued to husband and then-living wife, were renewals, rather than novations, of original HELOC and original deed of trust, for purposes of determining whether new deed of trust had priority over intervening deed of trust, which secured a refinancing loan which had paid the then-outstanding balance of original HELOC, which was not closed when it was paid off, and for which cancellation of original deed of trust had not been requested; promissory note for new HELOC was for amount owing on original HELOC when it matured, credit application for note indicated a purpose to "Renew" the original HELOC, disbursement request signed by husband expressly described the loan as "a secured renewal" of HELOC, deed of trust beneficiary stamped HELOC as "RENEWED NOT PAID," and new deed of trust recited that it was "an extension and renewal of" original deed of trust. West's A.M.C. S 89-5-21(5). | Does novation extinguish the old contract? | 021772.docx | LEGALEASE-00125648-LEGALEASE-00125649 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 21742 | Peat, Marwick, Mitchell & Co. v. Superior Court, 200 Cal. App. 3d 272 | 106+209(1) | The court's inherent power to curb abuses and promote fair process extends to the preclusion of evidence. Even without such abuses the trial court enjoys "broad authority of the judge over the admission and exclusion of evidence." (3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, " 1707.) As the People observe, trial courts regularly exercise their "basic power to insure that all parties receive a fair trial" by precluding evidence. (Castaline v. City of Los Angeles (1975) 47 Cal.App.3d 580, 592, 121 Cal.Rptr. 786 [exclusion of 11th-hour witness' testimony to prevent surprise]; Clemens v. American Warranty Corp. (1987) 193 Cal.App.3d 444, 451, 238 Cal.Rptr. 339; Hyatt v. Sierra Boat Co. (1978) 79 Cal.App.3d 325, 337, 145 Cal.Rptr. 47.) In so doing trial courts generally employ the "motion in limine," which is "not expressly authorized by statute" but is within the trial court's "inherent power to entertain and grant." (3 Witkin, op. cit. supra, " 2011.) "The scope of such motion is any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial." (Clemens v. American Warranty Corp., supra, 193 Cal.App.3d at p. 451, 238 Cal.Rptr. 339, citations omitted.) Its purpose is to avoid the unfairness caused by the presentation of prejudicial or objectionable evidence to the jury, and the "obviously futile attempt to "unring the bell"..." (Hyatt v. Sierra Boat Co., supra, 79 Cal.App.3d at p. 337, 145 Cal.Rptr. 47.) | Appellate court would review substantive contentions of petition for review by extraordinary writ challenging preclusion order under the second of two orders, although the petitioner did not properly challenge that order, where the Supreme Court had directed the appellate court to afford writ review and the review of the prior order would be futile, as it would involve review of a moot order. | "Is the purpose of a motion in limine to avoid the obviously futile attempt to ""unring the bell""?" | 037533.docx | LEGALEASE-00125886-LEGALEASE-00125887 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 21743 | Rural Water Dist. No. 4, Douglas Cty., Kan. v. City of Eudora, Kan., 659 F.3d 969 | 405+2112 | However, the cases under which the Kansas Supreme Court has favorably compared a water district's powers to those of a public utility appear limited to the realm of eminent domain. Nor is it clear the reasoning underlying a favorable comparison between public utilities and water districts is even applicable to a case where a water district seeks some form of federal aid to protect it from market competition. For example, in General Communications System, Inc. v. State Corp. Commission, 216 Kan. 410, 532 P.2d 1341, 1348 (1975), the Kansas Supreme Court held that, for the issuance of public utility certificates, "necessity does not necessarily mean there must be a showing of absolute need," but rather that "the word "necessity" means a public need which the public is inconvenienced to the extent of being handicapped." It is unclear how this use of the word "necessity" for a "public need" would apply by analogy to the exercise of powers reserved to water districts for at least the incidental benefit of protection from competition. Furthermore, we are reminded that under Kansas law, any reasonable doubt as to the existence of a water district's power must be resolved against its existence. | City's threat to either de-annex protected area or force appraisal process may violate statute prohibiting curtailment of any service provided by water district or association that is recipient of federal loan by dissuading potential customers from seeking water service from protected water district if customer is effectively forced to make choice between either ceasing water service from water district or finding new provider for all other public services. Agricultural Act of 1961, S 306(b), 7 U.S.C.A. S 1926(b). | What does the word necessity imply in reference to public utilities? | Public Utilities - Memo 213 - AM.docx | LEGALEASE-00017040-LEGALEASE-00017041 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 21744 | Smith v. Rohrbaugh, 2012 PA Super 208 | 115+64 | While subrogation rights are addressed in terms of Subchapter B first-party benefits, subrogation can be a matter of contract in adversarial actions. While there is always a legal right to subrogation, that right, like any, can be waived or modified by agreement of the parties. If an insurer waives its right to collect against the tortfeasor, we see no reason why the courts should interfere with that arrangement. In this instance, the waiver of subrogation rights may have disadvantaged State Farm, but State Farm is a sophisticated party and is free to enter into an agreement that might prove financially imprudent. | Statutory provision that precluded the recovery of uninsured motorist (UM) benefits in a damages action against a tortfeasor was not designed or intended to require the offset of underinsured motorist (UIM) benefits from a damages award, and thus, trial court was precluded from molding jury verdict in favor of driver injured in rear-end collision to 0 on the basis that driver had received $75,000 in UIM benefits; overruling Pusl v. Means, 982 A.2d 550. 75 Pa.C.S.A. S 1722. | Can subrogation be an issue of contract in adversarial claims? | 043216.docx | LEGALEASE-00127207-LEGALEASE-00127208 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21745 | Dakota, Minnesota & E. R.R. Corp. v. Wisconsin & S. R.R. Corp., 657 F.3d 615 | 315+497 | DM & E also argues that it can maintain a trespass suit without proof of damages. That would be true if the suit charged trespass to real property, because such a suit is a common device for determining property rights, and specifically for preventing the alleged trespasser from obtaining the plaintiff's property by adverse possession. Wis. Stat. § 893.28; Jacque v. Steenberg Homes, Inc., 209 Wis.2d 605, 563 N.W.2d 154, 159 (1997); Restatement (Second) of Torts ° 163 and comment. d (1965); Martin v. Amerman, 133 S.W.3d 262, 267 (Tex.2004). [[B]ut a suit for trespass to personal property is not a title-proving device, so, as with other torts, damage must be proved. Wisconsin Telephone Co. v. Reynolds, 2 Wis.2d 649, 87 N.W.2d 285, 287-88 (1958); Van Alstyne v. Electronic Scriptorium, Ltd., 560 F.3d 199, 208 (4th Cir.2009); Restatement, supra, ° 218. | Under Wisconsin law, the rails on a railroad's right of way are fixtures that are part of the real property to which they are attached. | Do damages have to be proven in a suit for trespass to personal property? | Trespass - Memo 217 - RK.docx | ROSS-003325929-ROSS-003325930 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | |
| 21746 | Wachovia Fin. Servs. v. Dune Harbor, 948 N.E.2d 339 | 266+1333 | Lefty's states that under Indiana Trial Rule 41(A)(1)(b), its non-consent to the stipulation among Wachovia, Dune Harbor, and the Additional Loan Guarantors precludes the trial court from entering summary judgment pursuant to and according to the stipulation. Trial Rule 41(A)(1)(b) states that a plaintiff may dismiss an action without order of the court "by filing a stipulation of dismissal signed by all parties who have appeared in the action." However, we note that the stipulation at issue was not executed by Wachovia "without order of the court," and that Trial Rule 41(A)(2) is the applicable rule, which provides for a court's dismissal of a claim "upon such terms and conditions as the court deems proper." As to the permitted effect upon counterclaims and cross-claims, a court may dismiss the action so long as the counterclaim or cross-claim "can remain pending for independent adjudication by the court." Id. "The test for determining the propriety of a voluntary dismissal is whether or not the party opposing the dismissal would be substantially prejudiced by dismissal." Hidden Valley Lake Prop. Owners Ass'n v. HVL Utilities, Inc., 445 N.E.2d 575, 576 (Ind.Ct.App.1983) (opinion on reh'g). Lefty's has not demonstrated how or contended that the trial court's dismissal pursuant to the stipulation prejudiced its counterclaim or cross-claim. Indeed, Wachovia appeals following the trial court's summary judgment in favor of Lefty's on its counter- and cross-claim. Without more, we decline to take action regarding this alleged error. | Dwelling unit sales provision that was part of purchase option made in connection with a failed real estate development did not create a vendor's lien that would take priority over lender's recorded mortgage, where provision contained unfulfilled conditions precedent, namely entry into a development agreement and sale of residential units. | Is the test for determining the propriety of a voluntary dismissal whether or not the party opposing the dismissal would be substantially prejudiced by the dismissal? | Pretrial Procedure - Memo # 949 - C - SK.docx | ROSS-003313812-ROSS-003313813 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21747 | All. for the Wild Rockies v. Savage, 209 F. Supp. 3d 1181 | 15A+1741 | A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. "[Summary judgment is an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did" based upon the "evidence in the administrative record." City &Cnty.of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997). | Judicial review under the Administrative Procedure Act (APA) is narrow but searching and careful, and courts need not uphold agency actions where there has been a clear error of judgment. 5 U.S.C.A. § 701 et seq. | When is a party entitled to summary judgment? | Woods and Forests - Memo 44 - RK.docx | ROSS-003300391-ROSS-003300392 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 21748 | Wright v. Miller, 989 N.E.2d 324 | 30+3870 | We continue to recognize the trial court's inherent powers in "maintaining its dignity, securing obedience to its process and rules, rebuking interference with the conduct of business, and punishing unseemly behavior," Major, 822 N.E.2d at 169, and we encourage trial judges to actively oversee and manage the cases pending before them. The use and enforcement of case management orders and deadlines are essential to sound judicial administration.But we conclude that the circumstances of the present case warranted some lesser, preliminary, or more pointed sanction fashioned to address counsel's unsatisfactory conduct in this case without depriving the plaintiffs of their ability to present the merits of their case at trial. Accordingly, we hold that the trial court's exclusion of the plaintiffs' expert witness was inconsistent with the logic and effect of the facts and circumstances presented. | Appellate courts presume that the trial court will act in accord with what is fair and equitable in each case, and thus, appellate courts will only reverse trial court's discovery sanctions if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. | Are the use and enforcement of case management orders and deadlines essential to sound judicial administration? | Pretrial Procedure - Memo # 1439 - C - SKG.docx | ROSS-003287586-ROSS-003287587 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 21749 | Russell v. H & H Metal Contractors, 2011-27 (La. App. 3 Cir. 6/1/11) | 413+1396 | Louisiana Code of Civil Procedure Article 1551 provides for pretrial orders and "gives a court wide discretion to provide for ... pretrial order[s] and to insure that the terms of the pretrial order are enforced." Vernon v. Wade Correctional Inst., 26,053, p. 5 (La.App. 2 Cir. 8/19/94); 642 So.2d 684, 688. Although the trial court has wide discretion in determining whether to modify a pretrial order, it must be tempered by "the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly." Id. at 689. Notably, one of the bases for pretrial procedure is the avoidance of surprise. Id. | Letter from workers' compensation claimant's last treating physician, which was received by employer the day before administrative hearing, was inadmissible to prove that claimant was temporarily and totally disabled (TTD) from date of accident, though claimant's previously filed pretrial statement listed that physician as a potential witness and all medical records as potential exhibits; notes from claimant's last visit with that physician did not indicate, as did the letter, that claimant had a ten percent impairment rating or that claimant needed a functional capacity evaluation. LSA-R.S. 23:1317. | Is the avoidance of surprise a base for pretrial procedure? | | 026872.docx | LEGALEASE-00131242-LEGALEASE-00131243 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21750 | Unified Concern for Children v. Caputo, 320 N.W.2d 643 | 413=934.4 | The sole issue in this case is whether the employer and insurance carrier are entitled to a credit in the amount of $7825.74 against the permanent partial disability award for overpayment of healing period benefits. Claimant asserts that such a credit is improper because section 85.34(3), The Code, only provides that the party paying compensation is entitled to a credit for healing period benefits when the healing period is followed by a total permanent disability. We do not believe that the interpretation urged by the claimant would serve to further the general purposes of the workers compensation act. In fact, we believe such an interpretation would ultimately frustrate one of the major purposes of the act, i.e. "to provide prompt payment to a covered employee in the event of injury arising out of and in the course of employment." See Blizek v. Eagle Signal Company, 164 N.W.2d 84, 85 (Iowa 1969). We are cognizant of the fact that this law is for the benefit of workers and should be liberally construed to achieve that end. However, the act is not a charity, and compensation should be paid as a matter of contract, not as a gratuity. Bulman v. Sanitary Farm Dairies, 247 Iowa 489, 494, 73 N.W.2d 27, 30 (1955). | Employer and insurance carrier were entitled to credit against permanent partial disability award for overpayment of healing period benefits to employee. I.C.A. SS 85.1 et seq., 85.34, subd. 3. | What is one major function of the Workmens Compensation Act? | Workers Compensation - Memo #167 ANC.docx | LEGALEASE-00022348-LEGALEASE-00022349 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | |
| 21751 | Rogers v. M.O. Bitner Co., 738 P.2d 1029 | 226H=80 | A subpartnership is a so-called partnership formed between a member of a partnership and a third person for a division of the profits coming to him from the partnership enterprise, by an agreement of such a character as to disclose the essentials necessary to a partnership between the partner and the third person.... The subpartners are partners inter se, but a subpartner does not become a member of the partnership since there is no agreement between him and the other partners.... Consequently, a subpartner is not liable for the debts of the partnership. However, the subpartner may be held liable for debts which may be regarded as debts of the subpartnership. 59 Am. Jur. 2d Partnership ° 16, at 941°42 (1971). In light of the district court's finding that the loan from Bennett was used to pay for improvements in the Park City subdivision, one of Westcor's express obligations under its joint venture agreement with Bitner Company, the burden to repay the debt justifiably may be placed on the joint venturers. | Evidence supported finding that subdivision vendor and purchaser/developer of subdivision lots were engaged in joint venture such that vendor could be held liable for damages incurred by purchasers of two subdivision lots when developer failed to make improvements as promised; agreement between vendor and purchaser/developer provided that selling price was calculated on basis of anticipated profits from sale of developed lots rather than value of raw land, and, nine days after vendor "sold" subdivision, vendor signed escrow agreement with county guaranteeing completion of improvements. | What is the meaning of subpartnership? | 022063.docx | LEGALEASE-00133458-LEGALEASE-00133460 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 21752 | State v. Ice & Fuel Co., 166 N.C. 366 | 101=2612 | In Grant v. U. S., 13 Arizi. 388, 114 Pac. 955, it is held: "A corporation can form a criminal intent, and have the knowledge essential, provided the officers representing it have such knowledge or intent." To the same effect U. S. v. Supply Co., 215 U. S. 50, 30 Sup. Ct. 15, 54 L. Ed. 87, and Standard Oil Co. v. State, 117 Tenn. 664, 100 S. W. 705, 716, 10 L. R. A. (N. S.) 1015, in which last the court cited many cases holding: "The criminal intent of the agent being imputed to the corporation." | In view of section 2831, subd. 6, defining "person" as including bodies corporate, a corporation may be convicted of obtaining money by false pretenses under Revisal, S 3432, though it cannot be imprisoned. | Can a corporation form a criminal intent? | 006541.docx | LEGALEASE-00134056-LEGALEASE-00134057 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 21753 | Henle v. Bodin, 54 S.D. 46 | 266=1825 | But, if appellants were the owners of the south 60 feet of this land, and, by dedication, the city of Beresford acquired the right given by section 6541, R. C. 1919, to use this north 40 feet for street purposes, appellants would still be the "owners of the soil and freehold of the street in front of such lot to the center thereof, incumbered only by the easement in the public for passing and repassing over the same, and the rights of the municipality to use the same, or permit its use, for municipal purposes, as authorized by law." Edmison v. Lowry, 3 S. D. 77, 52 N. W. 583, 17 L. R. A. 275, 44 Am. St. Rep. 774; Donovan v. Allert, 11 N. D. 289, 91 N. W. 441, 58 L. R. A. 775, 95 Am. St. Rep. 720; section 360, R. C. 1919. Certainly the ownership of the 40°foot strip in appellants and their predecessors in interest as well as in their grantee and mortgagor, Bodin, has not been weakened by their uninterrupted possession for over 30 years, and by the fact that it has been assessed, not as a street but as private property for 20 years. If the conveyance of property fronting on a highway is presumed to carry title to the center thereof unless the fee is expressly reserved, as held by this court in Sweatman v. Bathrick, 17 S. D. 138, 95 N. W. 422, does the grantee receive less when the deed describes the land to the middle of the street as in the case at bar? Whatever the extent of the city's interest in this 40°foot strip, appellants had an interest therein which they could and did convey to Bodin and which Bodin could and did mortgage. To limit appellants' foreclosure to the south 60 feet of the premises was, as between appellants and respondent, an unwarranted restriction to a part of the property mortgaged; and, for this reason, the judgment appealed from should be reversed. Because of uncertainties arising out of the conflict in the evidence and stipulations, judgment will not be directed for appellants, but a new trial will be granted as prayed for. | Restricting foreclosure to premises not embraced in stipulation as constituting part of street held error, where premises were not so used. | "When a state acquires private property for highway right of way, does it merely acquire an easement?" | Highways -Memo 108 -DB.docx | LEGALEASE-00023993-LEGALEASE-00023994 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 21754 | Pjetrovic v. Home Depot, 411 S.W.3d 639 | 30=3239 | When a request for a continuance is based on the withdrawal of counsel, it is the duty of the movant to show that the withdrawal was not due to negligence or fault on the part of the movant. Villegas, 711 S.W.2d at 626; Pandozy v. Shamis, 254 S.W.3d 596, 601 (Tex.App.-Texarkana 2008, no pet.). The Texas Supreme Court has suggested that it may be the trial court's duty to see that an attorney's withdrawal will not result in foreseeable prejudice to the client. Villegas, 711 S.W.2d at 626 ("In this case, the trial court abused its discretion because the evidence shows that Villegas was not negligent or at fault in causing his attorney's withdrawal."). Assuming, without deciding, an attorney's withdrawal is grounds to request a modification to a scheduling order,11 we are confident that the requirement of lack of negligence and fault would apply as well. Because Pjetrovic has failed to show his first attorney's withdrawal was not due to negligence or fault of Pjetrovic, error has not been established. | The ruling on a motion for continuance is reviewed for a clear abuse of discretion. | "When a request for a continuance is based on the withdrawal of counsel, is it the duty of the movant to show that the withdrawal was not due to negligence or fault on the part of the movant?" | 029476.docx | LEGALEASE-00136508-LEGALEASE-00136509 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21755 | State ex rel. Meeks v. Reaves, 416 S.W.3d 351 | 31SP+52 | "Without question, the right of a party to depose witnesses and as such adverse parties is an absolute one." State ex rel. Von Pein v. Clark, 526 S.W.2d 383, 385"86 (Mo.App.1975); see, e.g., Norkunas v. Norkunas, 480 S.W.2d 92, 94 (Mo.App.1972) (holding that it was reversible error to prevent a party from deposing witnesses because the error materially affected the merits of the action); see generally Rule 57.03. In the absence of a civil rule or statute that makes Rule 57.03 inapplicable to Chapter 455 proceedings, we hold that Relator has the right to depose Petitioner and prepare his defense against the full order of protection which Petitioner is seeking. As this Court has noted, such an order can have "significant collateral consequences." Glover v. Michaud, 222 S.W.3d 347, 351 (Mo.App.2007); see also S.D. v. Wallace, 364 S.W.3d 252, 254 n. 4 (Mo.App.2012). Because Respondent abused his discretion in denying Relator's motion to compel Petitioner's deposition, Relator is entitled to relief. Accordingly, we hereby enter a permanent writ in prohibition by which we order Respondent to: (1) vacate his order denying Relator's motion to compel; and (2) permit Relator to depose Petitioner prior to conducting the hearing on whether to enter a full order of protection. | Subject of ex parte adult abuse protection order was entitled to depose petitioner and prepare his defense against full order of protection. V.A.M.S. § 455.010 et seq.; V.A.M.R. 57.03. | Is the right of a party to depose witnesses and as such adverse parties absolute? | 031456.docx | LEGALEASE-00137596-LEGALEASE-00137597 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21756 | Ogden Livestock Shows v. Rice, 108 Utah 228 | 115+138 | Township of Livingston v. Parkhurst, 122 N.J.L. 598, 7 A.2d 627, is another case involving damage to a public bridge from overloading. The case involved a suit by the township for damages caused by the overloading of a small wooden bridge. The bridge had a capacity of 15 tons but its capacity was not posted. It was fairly well constructed and in good condition. The bridge was designed to handle passenger cars, delivery trucks and coal trucks. The defendants took a truck hauling a 28 to 30 ton shovel across the bridge causing it to collapse. The trial court nonsuited the plaintiff. On appeal the judgment of the lower court was reversed. The holding of the Supreme Court was that there was a duty on the part of one using the highways and public bridges to use them with reasonable care. | Where stockyards' lessee constructed wooden bridge with 38-foot span supported by five beams, 18x12 inches, having no supports under them, and bridge collapsed when truck with, with load, weighed about 15 tons, was driven thereon while hauling cement for contractor doing work for stockyards, judgment for lessee against trucker was reduced from $900 to $800 and affirmed. | Who has the duty to take reasonable care in using highways and bridge? | Highways- Memo 115- ANM.docx | ROSS-003302809-ROSS-003302810 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21757 | Bd. of Trustees of Internal Improvement Tr. Fund v. Am. Educ. Enterprises, 99 So. 3d 450 | 73+17 | Generally, private individual financial information is not discoverable when there is no financial issue pending in the case to which the discovery applies. See Friedman v. Heart Inst. of Port St. Lucie, 863 So.2d 189, 194 (Fla.2003); Anderson v. Ross, 778 So.2d 481, 481"82 (Fla. 4th DCA 2001) ("Ordinarily the financial records of a party are not discoverable unless the documents themselves or the status which they evidence is somehow at issue in the case."). However, "where materials sought by a party "would appear to be relevant to the subject matter of the pending action," the information is fully discoverable." See Friedman, 863 So.2d at 194 (quoting Epstein v. Epstein, 519 So.2d 1042, 1043 (Fla. 3d DCA 1988)). | Overbreadth is not a proper basis for certiorari review of discovery orders; disapproving Redland Company, Inc. v. Atlantic Civil, Inc., 961 So.2d 1004; Stihl Southeast, Inc. v. Green Thumb Lawn & Garden Center Newco, Inc., 974 So.2d 1200. West's F.S.A. Const. Art. 5, § 4(b)(3). | Is private individual financial information not discoverable when there is no financial issue pending in the case to which the discovery applies? | Pretrial Procedure - Memo # 4529 - C - NS.docx | ROSS-003330533-ROSS-003330534 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 21758 | Wright v. Miller, 989 N.E.2d 324 | 30+3870 | We continue to recognize the trial court's inherent powers in "maintaining its dignity, securing obedience to its process and rules, rebuking interference with the conduct of business, and punishing unseemly behavior," Major, 822 N.E.2d at 169, and we encourage trial judges to actively oversee and manage the cases pending before them. The use and enforcement of case management orders and deadlines are essential to sound judicial administration. But we conclude that the circumstances of the present case warranted some lesser, preliminary, or more pointed sanction fashioned to address counsel's unsatisfactory conduct in this case without depriving the plaintiffs of their ability to present the merits of their case at trial. Accordingly, we hold that the trial court's exclusion of the plaintiffs' expert witness was inconsistent with the logic and effect of the facts and circumstances presented. | Appellate courts presume that the trial court will act in accord with what is fair and equitable in each case, and thus, appellate courts will only reverse trial court's discovery sanctions if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. | Are use and enforcement of case management orders and deadlines essential to sound judicial administration? | 031148.docx | LEGALEASE-00138647-LEGALEASE-00138648 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 21759 | Mt Holly Citizens in Action v. Twp. of Mount Holly, 2008 WL 4757299 | 148+277 | An Article III court lacks subject matter jurisdiction over claims that are unripe. The Supreme Court has explained that claims relying upon " "contingent future events that may not occur as anticipated, or indeed may not occur at all," " are unripe for adjudication and must be dismissed. Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 580"81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure " 3532, p. 112 (1984)). In determining the ripeness of a claim, the court must "evaluate both the fitness of the issues for judicial consideration and the hardship to the parties of withholding court consideration." Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). | A citizen group's civil rights claims were ripe for adjudication. The citizen's group alleged that the township's planned demolition of minority occupied housing was discriminatory both in intent and effect. The complaint alleged that the Township had already acquired 219 residential units out of the 329 homes in the redevelopment area, and that at least 73 of the units had been demolished. Additionally, the town council had passed an ordinance stating that the township did or would be the owner of all homes in the redevelopment area. The ordinance authorized the use of eminent domain proceedings in conjunction with the acquisition of the homes, and the township had commenced eminent domain proceedings against at least one property owner. | Should an action be dismissed for lack of subject matter jurisdiction if the issue presented involves a future event beyond the control of the parties which may never occur? | 032956.docx | LEGALEASE-00141212-LEGALEASE-00141213 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 21760 | Akron Steel Fabricators Co. v. Krupp Plastics & Rubber Mach. (USA), 950 F. Supp. 836 | 25T+145 | Genesco, 815 F.2d at 845. Genesco received these forms without objection and returned some of them with the initials or signature of a company representative. When a dispute arose, the parties disputed whether the arbitration clause was enforceable. The district court found that Genesco was an experienced business with notice that arbitration agreements are common in the textile industry. Genesco argued on appeal that it did not specifically agree to the arbitration clauses. The court of appeals said that such an argument "misapprehends our inquiry. We focus not on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract." Id. at 846 (emphasis added). | Arbitration agreement contained in purchase order issued by buyer of conveyor system was binding upon seller, even though purchase order was not issued until after fundamental price, order and quality provisions had been agreed upon; there was prior course of dealing between parties, in which same purchase order form with arbitration agreement had been used. | Do courts focus on whether there was subjective agreement as to each clause in a contract? | Alternative Dispute Resolution - Memo 608 - RK.docx | LEGALEASE-00031900-LEGALEASE-00031901 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21761 | Qualls v. State Farm Lloyds, 226 F.R.D. 551 | 29T+369 | In this case, the court of appeals reversed because it concluded that expert testimony was not necessary:The Fulghams argue that this case is similar to the detection and repair of a deteriorating pipeline in Scurlock Oil Co. v. Harrell, 443 S.W.2d 334, 337 (Tex.Civ.App."Austin 1969, writ ref'd n.r.e.). There, the court determined that because the owner of a pipeline had the duty of ordinary care to "protect people and property in the vicinity of the line from the types of harm ordinarily resulting from such line, ... it has a duty to properly install and maintain its lines and to avoid dangers from occurrences such as leaks and breaks in the line." Id. "A pipe that has deteriorated to a point where it will no longer contain the liquid that it was meant to contain is not a fact so peculiar to a specialized industry that the defect can only be established through expert testimony." Id. We conclude that the inspection and detection of loose and rusty bolts connecting parts of a trailer is not a "fact so peculiar to a specialized industry" and is within the experience of a layperson, like a leaking pipe. | Insured was required to produce expert testimony on his theory that faulty sewer pipe caused mold to develop in home, in lawsuit against insurer alleging breach of standard Texas homeowners policy, breach of common law duty of good faith and fair dealing, and violations of Insurance Code and Texas Deceptive Trade Practices Act (DTPA), since specific cause was not within general experience and common sense of lay person and insurer provided expert testimony that another source was likely cause of mold. V.A.T.S. Insurance Code, arts. 21.21, 21.55; V.T.C.A., Bus. & C. S 17.41 et seq; Fed.Rules. Evid.Rule 701, 28 U.S.C.A. | Does the owner of a pipeline have the duty of ordinary care to protect the people and property in the vicinity of the line from the types of harm ordinarily resulting from such line? | Mines and Minerals - Memo #166 - C - CSS.docx | ROSS-003291080-ROSS-003291081 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 21762 | Christian Bus. Phone Book v. Indianapolis Jewish Cmty. Relations Council, 576 N.E.2d 1276 | 46H+86 | We cannot support such a terminal result here. Dismissal is a remedy which is not favored in this state because "in our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." Fulton v. Van Slyke (1983), Ind.App., 447 N.E.2d 628, 634-635. In numerous cases, our appellate courts have held that dismissal should not be granted unless less drastic sanctions will not suffice. See, Fulton, 447 N.E.2d at 635-637 (citing numerous Indiana and federal decisions); Breedlove v. Breedlove (1981), Ind.App., 421 N.E.2d 739, 741. | Action by corporation which filed complaint without benefit of attorney should not have been dismissed where attorney had appeared for corporation prior to hearing on dismissal motion. West's A.I.C. 34-1-60-1. | Is a dismissal not favored because the opportunity to be heard is a litigant's most precious right? | 033865.docx | LEGALEASE-00143552-LEGALEASE-00143553 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21763 | Cumberland Cty. Hosp. Sys. v. N.C. Dep't of Health & Human Servs., 242 N.C. App. 524 | 15A+1836 | "A case is "moot" when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Thus, the case at bar is moot if [an intervening event] had the effect of leaving plaintiff with no available remedy." Roberts v. Madison Cty. Realtors Ass'n, Inc., 344 N.C. 394, 398"99, 474 S.E.2d 783, 787 (1996) (citation omitted). "[A] moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim [.]" Yeager v. Yeager, 228 N.C.App. 562, 565, 746 S.E.2d 427, 430 (2013) (citations omitted). Moreover, "[i]f the issues before the court become moot at any time during the course of the proceedings, the usual response is to dismiss the action" for lack of subject matter jurisdiction. Simeon v. Hardin, 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994) (citation omitted). | In conducting "whole record review," appellate court must examine all the record evidence in order to determine whether there is substantial evidence to support the agency's decision. | Should an action be dismissed for lack of subject matter jurisdiction if the issues before the court become moot? | 034181.docx | LEGALEASE-00144592-LEGALEASE-00144593 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21764 | E.I. DuPont De Nemours & Co. v. Sidran, 140 So. 3d 620 | 307A+563 | Although a finding of fraud on the court generally has been premised on a proven outright lie on a critical issue, or the destruction of determinative evidence, whatever "scheme" of fraud a court finds must be supported by clear and convincing evidence that goes to "the very core issue at trial": To support a dismissal the court must find the "false testimony was directly related to the central issue in the case." Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002); see also Ramey v. Haverty Furniture Cos., 993 So.2d 1014, 1019 (Fla. 2d DCA 2008). It is the moving party's burden to establish by clear and convincing evidence that the non-moving party has engaged in fraudulent conduct warranting dismissal. Cross v. Pumpco, Inc., 910 So.2d 324, 327 (Fla. 4th DCA 2005).Gilbert v. Eckerd Corp. of Fla., Inc., 34 So.3d 773, 775"76 (Fla. 4th DCA 2010). | To support a dismissal based upon a fraud on the court, the court must find the false testimony was directly related to the central issue in the case. | Is it the moving party's burden to establish by clear and convincing evidence that the non-moving party has engaged in fraudulent conduct warranting dismissal? | 034372.docx | LEGALEASE-00144011-LEGALEASE-00144012 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | 1 |
| 21765 | People v. Pignatello, 15 Misc. 3d 833 | 110+273(4.1) | That argument ignores the difference in the language between the crimes of receiving unlawful gratuities and ones related to bribery and bribe receiving. The essence of the crime of receiving unlawful gratuities is the action of the public servant in soliciting, accepting or agreeing to accept a benefit. He or she need not actually receive the gratuity in order to have committed the crime; the crime is complete upon the solicitation or agreement to accept. The essence of the crimes of bribery or bribe receiving, on the other hand, "is not the payment of money, but rather the agreement or understanding' under which a witness accepts or agrees to accept a benefit." People v. Harper, 75 N.Y.2d 313, 317, 552 N.Y.S.2d 900, 552 N.E.2d 148 (1990); see also People v. Tran, 80 N.Y.2d 170, 177"78, 589 N.Y.S.2d 845, 603 N.E.2d 950 (1992).Those crimes are complete when an agreement or understanding has been achieved, at least in the mind of defendant; the bribe giver or the bribe receiver, as the case may be, has, however, attempted to commit that crime by the mere offer or solicitation of the bribe. | When crime is of type that is impossible to attempt, defendant may still plead guilty to otherwise non-existent attempt in context of bargained for plea, where court is permitted to accept negotiated plea to hypothetical lesser offense. | Is the payment of money important to a prosecution for bribery? | 012273.docx | LEGALEASE-00145160-LEGALEASE-00145161 | Condensed, SA | 0.79 | 0 | 1 | 1 | 0 | 1 |
| 21766 | N. Arizona Properties v. Pinetop Properties Grp., 151 Ariz. 9 | 266+2073 | The other Arizona case cited in the footnotes, but not cited in the briefs, is Smith v. Second Church of Christ, Scientist, 87 Ariz. 400, 351 P.2d 1104 (1960). In Smith two restrictive covenants were involved. The 1913 covenant provided that the "grantee shall erect no dwellings on said land the cost of which shall be less than $4,000.00 each and ... that no barns, garages or other buildings whatsoever shall be erected on said land until after the construction of said dwellings shall be well under way." Our Supreme Court said: "A dwelling is, of course, a building suitable for residential purposes and does not include a Church." Id. at 405, 351 P.2d at 1107. Certainly, this definition runs contra to Northern's argument. | Exemption from deficiency judgment for single one or two-family "dwelling" did not require that dwelling constitute someone's permanent residence or normal place of abode and did not preclude investment use. A.R.S. S 33-729, subd. A. | Is church a dwelling house within as per the burglary law? | 012976.docx | LEGALEASE-00147918-LEGALEASE-00147921 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21767 | Com. v. Rondeau, 27 Mass. App. Ct. 55 | 282+173 | The defendant argues that under the statute an "endeavor" is synonymous with an "attempt." He contends that his conduct as shown by the evidence amounted to nothing more than a preparation and that under the law of attempt the Commonwealth must present evidence of an overt act leading to the commission of the crime. The defendant's argument was rejected in United States v. Russell, 255 U.S. at 143, 41 S.Ct. at 261. In Russell, the defendant approached a prospective juror's wife and inquired of her whether her husband was favorable to an acquittal, for, if he were, he might receive a bribe from the defendant. The defendant argued to the Court that his conduct did not amount to a crime because at most it was nothing more than a preparation for an attempt. The Court, however, noted that the defendant was charged with a violation of a section of the Criminal Code of the United States which provided that "[w]hoever corruptly ... shall endeavor to influence, intimidate, or impede ... any juror...." The Court stated that an "endeavor" was not the same as an attempt, and "by using [endeavor] the [statute] got rid of the technicalities which might be urged as besetting the word "attempt"....". Ibid. We agree with the proposition that an " 'endeavor" connotes a somewhat lower threshold of purposeful activity than "attempt." " United States v. Lazaros, 611 F.2d 940, 941 (1st Cir.1979); United States v. Buffalano, 727 F.2d 50, 53 (2d Cir.1984). As a result, we need not reach the question whether the defendant's activities could be considered an "attempt." | While it was not unlawful to offer money to victim of assault and battery, but was unaware that woman to whom he attempted to offer money to drop pending charges against another, had been robbery and assault and battery victim, was for jury and was not grounds for dismissal of indictment. M.G.L.A. c. 268, S 13B. | How is the term endeavor different than attempt for the offense of corruptly endeavoring to influence petit juror? | 012404.docx | LEGALEASE-00148141-LEGALEASE-00148142 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | |
| 21768 | United States v. Myers, 692 F.2d 823 | 316P+1057 | Whitney v. United States, 99 F.2d 327, 331 (10th Cir. 1938). As the Seventh Circuit has said, in rejecting a claim that a bribe was not received in return for being influenced because the event requiring influence had already occurred, "The phrase ["in return for"] brings into play the purpose of the bribe and thus the mind of the bribe-payer." United States v. Arroyo, 581 F.2d 649, 654 (7th Cir. 1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 838, 59 L.Ed.2d 34 (1979). Construing a similar statute proscribing receipt of money for the promise of a public office, 18 U.S.C. " 215 (1952) (a predecessor of 18 U.S.C. " 201 (1976)), the Supreme Court upheld a conviction despite the fact that the public office, though authorized, was not in existence. United States v. Hood, 343 U.S. 148, 72 S.Ct. 568, 96 L.Ed. 846 (1952). "Whether the corrupt transaction would or could ever be performed is immaterial. We find no basis for allowing a breach of warranty to be a defense to corruption." Id. at 151, 72 S.Ct. at 569. With respect to the bribery statute, we believe the defense of fraud is equally unavailable. If Myers was "playacting" and giving false promises of assistance to people he believed were offering him money to influence his official actions, he violated the bribery statute. | Congressman could not be convicted of violation of statute prohibiting members of Congress from receiving compensation for services rendered in relation to any proceeding in which the United States is interested merely by accepting money for giving advice about immigration. 18 U.S.C.A. S 203(a). | Is the defense of fraud available under bribery statute? | 012504.docx | LEGALEASE-00148340-LEGALEASE-00148341 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 21769 | United States v. Garrido, 713 F.3d 985 | 110+1038.1(4) | Importantly, Sun'Diamond was primarily concerned with limiting the scope of illegal gratuities under " 201(c). Id. at 405"14, 119 S.Ct. 1402. Because " 201(c) criminalizes the giving of "anything of value," with no threshold monetary requirement, underlying Sun'Diamond was a need to distinguish between illegal gratuities and "token gifts" given "by reason of the recipient's mere tenure in office." Id. at 406, 408, 119 S.Ct. 1402. Thus, requiring an official act under " 201(c) was necessary because "a contrary holding would criminalize a wide array of presumptively legal gift giving, like giving officials a hat or a hot dog." United States v. Abbey, 560 F.3d 513, 521 (6th Cir.2009) (discussing the reasoning in Sun"Diamond ). Under " 201(c), an official act is therefore the "limiting principle" that distinguishes "an illegal gratuity from a legal one." United States v. Ganim, 510 F.3d 134, 146 (2d Cir.2007). | Jury instructions on charges of honest services wire and mail fraud that allowed conviction if official acted or made decision based on his own personal interests, including receiving benefit from undisclosed conflict of interest, permitted conviction based upon failure-to-disclose theory that was subsequently determined to be unconstitutional in Supreme Court's decision in Skilling v. United States, resulting in error that was "plain," under plain error rule, on appellate review. 18 U.S.C.A. SS 1341, 1343, 1346; Fed.Rules Cr.Proc.Rule 52(b), 18 U.S.C.A. | What is the limiting principle that distinguishes the illegal gratuity from a legal one? | Bribery - Memo #991 - C - JL_57750.docx | ROSS-003293361-ROSS-003293362 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21770 | Panter v. Miller, 165 Ga. App. 266 | 228+185(2) | The trial court erred in granting the father partial summary judgment for two reasons. First, " "Under the rule of the Code, and the decisions of this court thereunder, admission made in pleadings constitute a conclusive presumption of law, unless and until altered by amendment. Even though such admissions be so altered or withdrawn, they can still be used as evidence on the trial, but, in such event, not as solemn admissions in judicio so as to estop the party making them from denying them. Code '" 38-402, 38-404, 38-114; Mims v. Jones, 135 Ga. 541, 544 (69 SE 824); Lydia Pinkham Medicine Co. v. Gibbs, 108 Ga. 138, 140-41 (33 SE 945);" Field v. Manly, 185 Ga. 464, 466 (195 SE 406) (1938)." Citizens & Southern Realty Investors v. L.G. Balfour Co., 152 Ga.App. 852, 853, 264 S.E.2d 304 (1980). | On summary judgment, the testimony of each party is construed against him if it is contradictory, vague or equivocal. | Can admissions in pleadings be used as solemn admissions in judicio to estop the party making them from denying them after they are withdrawn? | 017854.docx | LEGALEASE-00148956-LEGALEASE-00148957 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 21771 | Wright v. Jackson Mun. Airport Auth., 300 So. 2d 805 | 156+68(2) | It is also argued that landowners are judicially estopped. In Sullivan v. McCallum, 231 So.2d 801 (Miss.1970), it is stated.Judicial estoppel differs from equitable estoppel in that it is not necessary to show elements of reliance and injury since it is based on position of litigation between the same parties by requiring orderliness and regularity in pleading. Great Southern Box Co. v. Barrett, 231 Miss. 101, 94 So.2d 912 (1957). It normally arises from the taking of a position by a party to a suit that is inconsistent with a position previously asserted. 231 So.2d at 803. | Landowners, who were awarded monetary judgment in airport's 1971 eminent domain proceeding to acquire fee simple title and who had instituted an inverse condemnation proceeding in 1963 to recover for taking of avigation easement, were not judicially estopped from claiming damages for avigation easement where it did not appear that landowners' positions in the two suits were inconsistent. | Does judicial estoppel differ from equitable estoppel in that it is not necessary to show reliance and injury? | Estoppel - Memo #7 - C - CSS_58265.docx | ROSS-003280427-ROSS-003280428 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 21772 | Baker v. State, 17 S.W. 144 | 231+164(3) | To render a party liable, under the statute, for obstructing a public road, the act must have been done "willfully," (Pen. Code, art. 405;) and the word "willful," as used in the statute, means with evil intent, or legal malice, or without reasonable ground for believing the act to be lawful. (Thomas v. State, 14 Tex. App. 200; Shubert v. State, 16 Tex. App. 645; Trice v. State, 17 Tex. App. 43; Loyd v. State, 19 Tex. App. 321.) The judgment is reversed, and the cause remanded. | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | Does the criminality of the offense of obstructing a public road depend on whether it was done willfully? | 018672.docx | LEGALEASE-00148644-LEGALEASE-00148645 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21773 | Matter of Park Nursing Ctr., 766 F.2d 261 | 51k2131 | There is, it is true, some precedent suggesting that the requirement of a meritorious defense should not apply when relief is sought under Rule 60(b)(4) because the judgment is void. Textile Banking Co. v. Rentschler, 657 F.2d 844 (7th Cir.1981). According to the Seventh Circuit's rule, if the manner of service of process is unconstitutional, the District Court would be required to set aside the default judgment without a showing of a meritorious defense by the defendant. Certainly when the judgment is void altogether, it is difficult to fault the Seventh Circuit's position. Here the judgment is not void on its face. The first class mail rule is not invalid on its face. It is necessary to look at the facts to determine the fairness of notice. In such a situation there is no unfairness in requiring defendant to plead a defense which, if true, would be meritorious. | Rule of notice in bankruptcy proceedings is adequate if it meets following conditions in addition to cost effectiveness: rule must reasonably be calculated to achieve actual notice, and there must be available procedure, either as part of the rule or as part of the general rules of civil procedure under which a person who fails to receive notice, through no fault of his own, has some available remedy for setting aside judgment of default entered against him. | How is fairness of a method of notice determined? | Notice - Memo 8 - VP_62198.docx | ROSS-003281SBD-ROSS-003281582 | Condensed, SA | 0.47 | 0 | 1 | 0 | | |
| 21774 | Helvering v. Wheeling Mold & Foundry Co., 71 F.2d 749 | 220k4315 | "The word 'debt,' in its technical meaning as applied to common-law actions, is not synonymous with the word 'tax.' Lane County v. Oregon, 74 U.S. (7 Wall.) 71, 19 L.Ed. 101. But the word 'debt' is not always used with this limited technical meaning. A 'tax' may or may not be a debt under a particular statute, according to the sense in which the word is found to be used. U.S. v. Chamberlin, 219 U.S. 254, 31 S.Ct. 155, 55 L.Ed. 204. The word 'debt' is frequently used in its well-recognized sense as that which is due from one person to another; that which one person is bound to pay another; a thing owing; an obligation; a liability. The character of a tax is well known. It is a charge or burden laid upon persons or property for public purposes; a forced contribution authoritatively imposed. When it is imposed annually-that is, when the law provides for its imposition- it is, before its due date, a liability in future, imposed by law, and when finally imposed it becomes a fixed liability, a thing owing, a matured obligation. | Transferee of all assets and business of corporation engaged in manufacturing steel and iron products, under clause in contract requiring transferee to pay and discharge all "debts" of transferor corporation, held liable for unpaid excess profits tax assessed against transferor for year in which transfer was made. Revenue Act 1926, § 280(a)(1), 26 U.S.C.A.Int.Rev.Acts, page 212. | Does debt and tax have the same meaning? | 045891.docx | LEGALEASE-00149179-LEGALEASE-00149180 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 21775 | Lawson v. Bank of Bladenboro, 203 N.C. 368 | 172H+588 | In the above case, the suit was not against the agent who made full disclosures of the purpose of Justice, and the note was not turned over to distant place, against whom he receives paper for collection on party in Justice by the agent bank, but returned to the plaintiff bank. Full warning was made by the collecting bank and the makers of the note. The plaintiff bank sued the makers of the note. The court said, at page 375 of 157 N. C., 72 S. E. 1016: "In our opinion this letter gave clear intimation to plaintiff that if the money was retained it was to be in settlement of the claim, and under our decisions further recovery may not be allowed. Aydlett v. Brown, 153 N. C. 334, 69 S. E. 243; Armstrong v. Lonon, 149 N. C. 434, 63 S. E. 101; Cline v. Rudisill, 126 N. C. 523, 36 S. E. 36. It is urged that plaintiff did not know the peculiar character of the tender when the letter was received, transmitting the payment, but he knows it now, and insists on retaining the money. The principle applicable is very well stated in 30 Cyc. p. 1267, as follows: It is a well-settled principle of ratification that the principal must ratify the whole of an agent's unauthorized act, or not at all, and cannot accept its beneficial results and repudiate its burdens. It follows that, as a general rule, if a principal, with full knowledge of all the material facts, takes and retains the benefits of the unauthorized act of his agent, he thereby ratifies such act, and with the benefits accepts the burdens resulting therefrom." R. R. v. R. R., 147 N. C. 385, 61 S. E. 185, 23 L. R. A. (N. S.) 223, 125 Am. St. Rep. 550 (15 Ann. Cas. 363)." | As respects liability, where bank receives paper for collection on party in distant place, it employs at place of payment is agent of owner and not of bank. | "Is it a well-settled principle of ratification that the principal should ratify the whole of an agent's unauthorized act, or not at all, and cannot accept its beneficial results and repudiate its burdens?" | 010383.docx | LEGALEASE-00150756-LEGALEASE-00150757 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21776 | Beach v. Ocwen Fed. Bank, 140 L. Ed. 2d 566 (1998) | 266+1710 | The declared purpose of the Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); see Mourning v. Family Publications Service, Inc., 411 U.S. 356, 363°368, 93 S.Ct. 1652, 1657°1660, 36 L.Ed.2d 318 (1973). Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights. See "" 1631, 1632, 1635, 1638. Failure to satisfy the Act subjects a lender to criminal penalties for noncompliance, see " 1611, as well as to statutory and actual damages traceable to a lender's failure to make the requisite disclosures, see " 1640. Section 1640(e) provides that an action for such damages "may be brought" within one year after a violation of the Act, but that a borrower may assert the right to damages "as a matter of defense by recoupment or set-off" in a collection action brought by the lender even after the one year is up. | Three-year period for rescinding loan agreement under Truth-in-Lending Act (TILA) clearly precluded right of action after specified time; accordingly, it was not a statute of limitation, and mortgagors could not assert right to rescind as recoupment defense in foreclosure action brought by mortgagee more than three years after consummation of loan transaction; abrogating, In re Barsky, 210 B.R. 683; In re Botelho, 195 B.R. 558; In re Shaw, 178 B.R. 380; Federal Deposit Ins. Corp. v. Ablin, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379; Community Nat. Bank & Trust Co. of N.Y. v. McClammy, 138 A.D.2d 339, 525 N.Y.S.2d 629; Dawe v. Merchants Mortgage and Trust Corp., 683 P.2d 796. Truth in Lending Act, § 125(f), 15 U.S.C.A. § 1635(f). | Does the TILA assure a meaningful disclosure of credit terms? | Consumer Credit - Memo 78 - KC_59001.docx | ROSS-003279915-ROSS-003279916 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21777 | Beach v. Ocwen Fed. Bank, 140 L. Ed. 2d 566 (1998) | 266+1710 | The declared purpose of the Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. " 1601(a); see Mourning v. Family Publications Service, Inc., 411 U.S. 356, 363"368, 93 S.Ct. 1652, 1657"1660, 36 L.Ed.2d 318 (1973). Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights. See "" 1631, 1632, 1635, 1638. Failure to satisfy the Act subjects a lender to criminal penalties for noncompliance, see " 1611, as well as to statutory and actual damages traceable to a lender's failure to make the requisite disclosures, see " 1640. Section 1640(e) provides that an action for such damages "may be brought" within one year after a violation of the Act, but that a borrower may assert the right to damages "as a matter of defense by recoupment or set-off" in a collection action brought by the lender even after the one year is up. | Three-year period for rescinding loan agreement under Truth-in-Lending Act (TILA) clearly precluded right of action after specified time; accordingly, it was not a statute of limitation, and mortgagors could not assert right to rescind as recoupment defense in foreclosure action brought by mortgagee more than three years after consummation of loan transaction; abrogating, In re Barsky, 210 B.R. 683; In re Botelho, 195 B.R. 558; In re Shaw, 178 B.R. 380; Federal Deposit Ins. Corp. v. Ablin, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379; Community Natl. Bank & Trust Co. of N.Y. v. McClammy, 138 A.D.2d 339, 525 N.Y.S.2d 629; Dawe v. Merchants Mortgage and Trust Corp., 683 P.2d 796. Truth in Lending Act, § 125(f), 15 U.S.C.A. § 1635(f). | Does the TILA enable consumers to compare various credit terms available? | 013965.docx | LEGALEASE-00150544-LEGALEASE-00150545 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21778 | Beach v. Ocwen Fed. Bank, 140 L. Ed. 2d 566 (1998) | 266+1710 | The declared purpose of the Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. " 1601(a); see Mourning v. Family Publications Service, Inc., 411 U.S. 356, 363"368, 93 S.Ct. 1652, 1657"1660, 36 L.Ed.2d 318 (1973). Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights. See "" 1631, 1632, 1635, 1638. Failure to satisfy the Act subjects a lender to criminal penalties for noncompliance, see " 1611, as well as to statutory and actual damages traceable to a lender's failure to make the requisite disclosures, see " 1640. Section 1640(e) provides that an action for such damages "may be brought" within one year after a violation of the Act, but that a borrower may assert the right to damages "as a matter of defense by recoupment or set-off" in a collection action brought by the lender even after the one year is up. | Three-year period for rescinding loan agreement under Truth-in-Lending Act (TILA) clearly precluded right of action after specified time; accordingly, it was not a statute of limitation, and mortgagors could not assert right to rescind as recoupment defense in foreclosure action brought by mortgagee more than three years after consummation of loan transaction; abrogating, In re Barsky, 210 B.R. 683; In re Botelho, 195 B.R. 558; In re Shaw, 178 B.R. 380; Federal Deposit Ins. Corp. v. Ablin, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379; Community Natl. Bank & Trust Co. of N.Y. v. McClammy, 138 A.D.2d 339, 525 N.Y.S.2d 629; Dawe v. Merchants Mortgage and Trust Corp., 683 P.2d 796. Truth in Lending Act, § 125(f), 15 U.S.C.A. § 1635(f). | Does the TILA enable consumers to avoid uninformed use of credit? | Consumer Credit - Memo 80 - KC_59003.docx | ROSS-003294666-ROSS-003294667 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 21779 | In re Appointment of Viewers, 406 Pa. 6 | 148+156 | The appellee has undoubtedly withheld from the commonwealth a large sum which he ought to have paid for taxes, and his moral duty unquestionably now is to pay it, but he cannot be compelled to perform that duty unless there is a right in the commonwealth to enforce it as a legal one. All taxation is statutory, and, while it is the duty of every citizen to bear his just proportion of the burden of supporting national, state and local government, he cannot be compelled to do so except in a way provided by a statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. They can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute. Are the assessments and reassessments made by the appellants sanctioned by any statute? If they are not, they are void. * * * | Where tax assessments were improperly made in name of someone other than name of registered owner and sheriff's sale to satisfy assessment was void because registered owner was not named in foreclosure proceeding, and land was condemned after sheriff's sale, whatever rights taxing authorities had to amend assessment prior to condemnation were lost after condemnation, and heirs of former owner were entitled to condemnation award, and were not estopped from opposing amendment of liens. | Can taxes be collected in a way other than that pointed out by the statute? | 045950.docx | LEGALEASE-00150510-LEGALEASE-00150511 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 21780 | Fay v. Witte, 262 N.Y. 215 | 83E+810 | He was, therefore, not liable as an unqualified indorser. The reason assigned for this conclusion in the opinion of the Appellate Division was that an indorsement implies two things: One, a transfer of the note; second, a promise to pay if a maker fails to do so. Witte, it was said, by having assigned the note transferring title, impliedly excluded the second condition or implication"the promise to pay upon default. | Payee's name being on back of note, he was presumed to be unqualified indorser unless there were words expressing different intention. Negotiable Instruments Law, § 36, subd. 6, and §§ 68, 113. | What does the term endorsement imply? | 010801.docx | LEGALEASE-00151222-LEGALEASE-00151223 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 21781 | Town of Burnside v. City of Indep., 372 Wis. 2d 802 | 30+3234 | Arcadia's arguments regarding the identity of the claims in this case closely track its allegation that the three annexation ordinances were "in effect, one ordinance." Independence denied that allegation from Arcadia's complaint, but, more importantly, the allegation is itself only a conclusion regarding the legal effect of the annexation ordinances. Legal conclusions pleaded in a complaint are not accepted and are insufficient to withstand a motion to dismiss. Data Key Partners v. Permira Advisers, LLC, 2014 WI 86, 18, 356 Wis.2d 665, 849 N.W.2d 693. | Interpretations of statute of limitations and other statutes affecting the timeliness of a party's assertion of a legal claim ordinarily present questions of law reviewed de novo. | Are legal conclusions pleaded in a complaint not accepted and are insufficient to withstand a motion to dismiss? | 037839.docx | LEGALEASE-00152073-LEGALEASE-00152074 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 21782 | Stephan v. Martin, 396 P.3d 723 | 106+90(2) | "The statutes and case law require that every attorney of fact carry out their fiduciary obligations in the best interests of the principal and to avoid self-dealing and conflicts of interest. I find that in this case, I find no self-dealing or conflict of interest to this point. Should the power of attorney submitted the Bankers Life statements to get payment? Yeah, probably. Yes, that would have been very good. Was that some type of plot against her mother? I think not, and it's been cured, if it was. Bankers Life has paid those matters. They've been taken care of. | While panel of court of appeals must carefully consider each precedent cited to it, it also must uphold its duty to correctly determine law in each case that comes before it, and in doing so, may respectfully disagree with another panel's opinion. | Does a person appointed as an attorney has a fiduciary obligation to avoid self dealing and conflicts of interest? | Principal Agent-Memo 30-AM_60521.docx | ROSS-003293185-ROSS-003293186 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21783 | Great Am. Ins. Co. of New York v. Lowry Dev., 576 F.3d 251 | 217+1871 | It is certainly true that an agent's authority is not limitless. Instead, the agent has only such powers as are conferred by the principal. Gulf Guar. Life Ins. Co. v. Middleton, 361 So.2d 1377, 1382 (Miss.1978). In a precedent the district court relied upon, a bank did not have authority to agree with the insured's agent to cancel the original policy without consent and without notice. Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653, 654"55 (1919). In so holding, the Mississippi Supreme Court wrote that "an agency to procure insurance does not necessarily confer the power to cancel insurance." Id. (internal quotation marks omitted). Here, though, the only evidence was that Groves's authority to act on behalf of Lowry with respect to insurance was all but plenary. Importantly, the authority the agent was questionably exercising was not a right to terminate. It was simply the right to receive notice of modification. | Mississippi's notice statute, which stated that a cancellation, reduction in insurance coverage, or nonrenewal was not effective unless notice was mailed or delivered to the insured, allowed agents to receive the notice. West's A.M.C. S 83-5-28(1). | Is an agents authority limitless? | Principal and Agent - Memo 293 - KC_60586.docx | ROSS-003282260-ROSS-003282261 | Condensed, SA, Sub | 0.73 | 0 | 1 | | 1 | 1 |
| 21784 | Jones v. United States, 124 A.3d 127 | 110+1032(1) | Mr. Jones argues that the record contains insufficient evidence that he was guilty of attempted threats. Assuming that the government was required to prove that Mr. Jones possessed specific intent to threaten,7 the record contains sufficient evidence that Mr. Jones intended to threaten Mr. Eshman with bodily harm by telling him, "I'm going to smack the shit out of you." Mr. Jones's insistence that his statement was "rendered benign by [its] context," In re S.W., 45 A.3d 151, 156 (D.C.2012), is unavailing. Even if the statement was made in a "normal tone of voice," a reasonable factfinder could conclude that Mr. Jones possessed specific intent to threaten Mr. Eshman with serious bodily harm given the tumultuous and emotionally charged nature of their relationship and the fact that Mr. Jones later started yelling and gesticulating at Mr. Eshman in the hallway. It also is not a defense that Mr. Eshman was only startled by the threat because "[a] person can be guilty of threats without causing the target of the threats to fear serious bodily harm or injury." Gray v. United States, 100 A.3d 129, 136 (D.C.2014) (citation omitted). Viewing the evidence in the light most favorable to the government, we conclude that the evidence is sufficient to sustain Mr. Jones's conviction. | Any error in amendment of information from charging misdemeanor threats, which triggered statutory right to a jury trial, to attempted threats, which did not, on day of trial did not prejudice defendant, and therefore did not constitute plain error, where defendant never requested a jury trial and never objected to the amendment. D.C. Official Code, 2001 Ed. S 16-705(b). | Can a person be guilty of threats without causing the target of the threats to fear serious bodily harm or injury? | 046734.docx | LEGALEASE-00153517-LEGALEASE-00153518 | Condensed, SA, Sub | 0.71 | 0 | 1 | | 1 | 1 |
| 21785 | Groff v. State, 171 Ind. 547 | 178+14 | Theoffenseunderconsiderationisthusdefined:"Itshallbeunlawfulforanypersontomanufactureforsalewithinthisstate,offerforsaletherein,orsellwithinthisstate,anydrug,orarticleoffoodwhichisadulterated,ormisbranded.Forthe purposeofthisact,anarticleshallbedeemedasadulterated:Second.Ifanysubstancehasbeensubstitutedwholly,orinpart,forthearticle."Acts1907,p.153,c.104,"2.Guiltyintentisnotaningredientinthecrime,aswehaveseen,hencetherulethatgovernsinthatlargeclassofoffenses,whichrestuponcriminalintent,hasnoapplicationhere.Caseslikethisarefoundedlargelyupontheprincipletathewhovoluntarilydealsinperilousarticlesmustbecautioushowhedeals.Thesaleofoleomargarineinanadulteratedform,orasasubstituteforbutter,isacrimeagainstthepublichealth.Whoever,therefore,engagesinitssale,orinthesaleofanyarticleinterdictedbythelaw,doessoathisperil,andimpliedlyundertakestoconductitwithwhatsoeverdegreeofcareisnecessarytosecurecompliancewiththelaw.Hemayconductthebusinesshimself,orbyclerksoragents;but,ifhechoosesthelatter,thedutyisimposeduponhimtoseetoitthathoseselecteddoyhimtoselltheairticletothepubicobeythelawwithematteroflselling,otherwise,he,astheprincipalandtherespons(bleproprietorofthebusiness,isliableforthepenaltyimposedbythestatute. | Acts 1907, p. 153, c. 104, S 2 (Burns' Ann.St. S 35-1202), makes it unlawful for any person to offer for sale or sell any adulterated or misbranded article of food. Held, that guilty knowledge or intent was not an element of such offense. | Should the employee who sells the article to the public obey the law in the manner of selling it? | Adulteration - Memo 38 - _1VfK9b4Bon80bqI1ZX5SSwRFkC4lVH7Xr.doc | ROSS-000000112-ROSS-000000113 | Condensed, SA, Sub | 0.8 | 0 | 1 | | 1 | 1 |
| 21786 | Palmer v. Poor, 121 Ind. 135 | 83E+793 | The appellant's complaint is founded on a promissory note which it is alleged was executed by the appellee to A. J. Selby, by Selby indorsed to Theodore Fields, and by the latter to the appellant, before maturity and for value. The note is negotiable by the law-merchant. The third paragraph of the appellee's answer admits that he signed the note, but avers that after it was signed it was altered without his knowledge or consent by inserting the figure "8" before the words "per cent. interest," thus making it bear interest at the rate of 8 per cent. annum, whereas, as it was written when signed, it did not bear interest. The alteration in the note was a material one, and would undoubtedly vitiate the note had it remained in the hands of the payee. It is a material alteration to add an interest clause, even without any fraud on the holder's part. 3 Rand. Com. Paper," 1256. This conclusion is fully sustained by the decided cases. Hert v. Oehler, 80 Ind. 83; Bowman v. Mitchell, 79 Ind. 84, and cases cited; Schrewind v. Hacket, 54 Ind. 248; Shanks v. Albert, 47 Ind. 461; Boustead v. Cuyler, 116 Pa. St. 551, 8 Atl. Rep. 848, 1 Amer. & Eng. Cyclop. Law, 509. The ruling question, therefore, is whether the material alteration will avoid the note in the hands of the appellant. | Proof that note had been altered after execution was inferable under answer denying defendant made note, and it was competent to prove want of delivery. | Does changing interest terms constitute a material alteration? | 009017.docx | LEGALEASE-00154747-LEGALEASE-00154748 | Condensed, SA, Sub | 0.88 | 0 | 1 | | 1 | 1 |
| 21787 | Yale v. Flanders, 4 Wis. 96 | 347+4 | Note under seal not negotiable. Parkinson v. McKim, 1 Pin., 214. But may be assigned by parol. Carringtonv. Eastman, 650. Grantor, who omits to seal deed, not estopped from denying that deed is sealed. Davis v. Judd, 6 Wis., 85. | It is not necessary that every one signing should have a separate seal, or that there shall be as many seals as signatures, but one may sign and adopt the seal of another party. | Can a note be assigned by parol? | Bills and Notes - Memo 942 - RK_60850.docx | ROSS-003282913 | Condensed, SA, Sub | 0.22 | 0 | 1 | | 1 | 1 |
| 21788 | Nelson v. First Nat. Bank of Killingley, 69 F. 798 | 157+489 | The integral error in the trial of this case is that the court below admitted in evidence the certificate of protest of the note in suit made by a notary public of the state of Connecticut. The objection urged to it is that the note stood upon the same footing as an inland bill of exchange, that such a bill requires no protest, and hence the certificate was not an official act, and is incompetent. This objection cannot be sustained on the ground that this was an inland bill or inland note, as distinguished from a foreign bill or foreign note. A bill of exchange drawn in one of the states of the United States, payable in another, is a foreign bill, under the settled interpretation of the commercial law in the national courts. Bank v. Daniel, 12 Pet. 32, 53, 54; Buckner v. Finley, 2 Pet. 586, 592; Dickens v. Beal, 10 Pet. 572, 579. | On an issue of the value of stock of a corporation in the hands of a receiver under a statute of the state creating it, in proceedings for its dissolution as insolvent, the opinions of competent witnesses as to the value of stock are admissible. | "Is a bill of exchange drawn in one of the states of the United States, payable in another, a foreign bill?" | Bill and Notes - Memo 15 - KC_61939.docx | ROSS-003296793-ROSS-003296794 | Condensed, SA, Sub | 0.71 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21789 | All Purpose Vending v. City of Philadelphia, 127 Pa. Cmwlth. 415 | 92+1892 | While a legislative declaration as to the type of tax exacted is entitled to great weight and deference, "the nature of a tax depends upon its incidence, and not upon its label. If, therefore, in reality, i.e., in its practical operation and effect, the tax is not what it purports to be, the realities control." Commonwealth v. Eastman Kodak Co., 385 Pa. 607, 612, 124 A.2d 100, 102, cert. denied, 352 U.S. 952 (1956). Since license fees are levied for regulatory purposes and taxes solely for the raising of revenue, Pittsburgh Milk Co. v. City of Pittsburgh, et al., 360 Pa. 360, 365-66, 62 A.2d 49, 52 (1948), the reality herein is that the challenged charge is assessed purely for the latter purpose and not for the former, as would be the case involving a license fee. | That administrative review options to contest tax on taxpayers' for profit coin-operated mechanical amusement devices for film or video presentations were coupled with sanctions for noncompliance did not constitute prior restraint on taxpayers' freedom of speech. U.S.C.A. Const.Amend. 1. | Is a legislative declaration entitled to any weight when determining the nature of a tax? | Taxation - Memo # 931 - C - JL_61483.docx | ROSS-003293853-ROSS-003293854 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | |
| 21790 | Vrooso v. Cargill Meat Sols., 18 Neb. App. 202 | 413+256 | Black's Law Dictionary 84 (9th ed. 2009) defines the term "alien" as follows:A person who resides within the borders of a country but is not a citizen or subject of that country; a person not owing allegiance to a particular nation.... In the United States, an alien is a person who was born outside the jurisdiction of the United States, who is subject to some foreign government, and who has not been naturalized under U.S. law.Thus, under its plain and ordinary meaning, work status is not involved in the definition of "alien." In Economy Packing v. Illinois Workers' Comp., 387 Ill.App.3d 283, 901 N.E.2d 915, 327 Ill.Dec. 182 (2008), the court held that the plain meaning of "aliens" in the Illinois Workers' Compensation Act includes not only foreign-born citizens that can legally work in the United States, but also those that cannot. | As a general proposition, an illegal alien is an employee or worker who is covered by the Workers' Compensation Act. West's Neb.Rev.St. § 48-115(2). | Who is an alien? | MEMORANDUM _1V5ZUq74JgSBoacwPZ AgSpGySUtJXQjSivatMyV r1O-c.docx | ROSS-000000320-ROSS-000000321 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | |
| 21791 | Curtis v. Wasem, 96 Cal. App. 604 | 83E+426 | The payee of a check can protect his own rights by the form of his indorsement. If he neglects his own interest and indorses in blank instead of restrictively, and thereby enables his agent for collection to use the paper as its own, the loss occasioned by the title to the negotiable paper not being in the agent should be borne by the payee, whose own improvident act afforded the agent an opportunity to transfer the negotiable paper pursuant to its purport. Innocent subsequent parties should not suffer for reliance upon a negotiable instrument and its indorsement according to their tenor. The rule adopted has the merit of affording such parties the protection of the negotiable paper according to its terms, and finds support in its tendency to protect the integrity of negotiable paper and to give greater security to financial transactions by the assurance that the law will commonly give to checks and other negotiable paper the effect ascribable to their form and content. | Indorsement in blank on back of note is sufficient assignment in writing of note. Civ.Code, § 3112. | When is loss occasioned by title to negotiable paper borne by the payee? | Bills and Notes-Memo 1281-ANM_63207.docx | ROSS-003279010-ROSS-003279011 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | |
| 21792 | Watrel v. Com., Dep't of Educ., 513 Pa. 61 | 156+85 | Further, the appellant argues that the appellee should be estopped from refusing to accept his payment and grant retirement credit for the tenth year as contemplated by the Settlement Agreement. Estoppel is an equitable remedy that arises when by one's acts, representations or silence, he induces another to believe that certain facts are true, and that other person reasonably relies on that belief to his prejudice. The gist of estoppel is a misrepresentation. Murphy v. Burke, 454 Pa. 391, 311 A.2d 904 (1973). Considering the relevant Findings of Fact set forth above, there is no evidence of misrepresentation on the part of the appellee and no evidence of reasonable reliance by the appellant. On the contrary, the evidence shows that appellant relied on his own judgment in reaching an agreement with the appellee. | Doctrine of promissory estoppel did not apply to require Retirement Board to accept terminated college president's retirement contribution in order that retirement benefits would vest where agreement between Department of Education and president, which by its terms did not require Board to accept check, was drafted by president who willingly agreed to terms that defeated bargained for result, and there was no evidence that deception was perpetrated by Department of Education. | Is the gist of estoppel a misrepresentation? | Estoppel - Memo #168 - C - CSS_62571.docx | ROSS-003293751-ROSS-003293752 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | |
| 21793 | Wallace v. Sinclair, 114 Cal. App. 2d 220 | 308+92(1) | Agency is the relation that results from the act of one person, called the principal, who authorizes another, called the agent, to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the purpose of the principal. The heart of agency is expressed in the ancient maxim: "Qui facit per alium facit per se." See 2 C.J.S., Agency, " 1, p. 1023. The extent of the agency is measured by the authority conferred upon the agent, actually or ostensibly and his power is sufficient to do everything that is necessary, proper or usual to accomplish the purpose of the principal. Civil Code, secs. 2315, 2316, 2317, 2318, 2319, 2320, 2330. The agent has actual authority defined by section 2316 unless limited by the principal, and his ostensible authority is unlimited except as to those persons having knowledge of the restrictions imposed upon the agency, sec. 2318. | The extent of an agency is measured by the authority conferred upon the agent, actually or ostensibly, and his power is sufficient to do everything that is necessary, proper or usual to accomplish the purpose of the principal, and the agent has actual authority as defined by the Civil Code, unless limited by the principal, and his ostensible authority is unlimited except as to those persons having knowledge of the restrictions imposed upon the agency. Civ.Code, SS 2315-2320, 2330. | What is the ancient maxim which expresses the heart of agency? | Principal and Agent - Memo 417 - RK_63537.docx | ROSS-003309648-ROSS-003309649 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | |
| 21794 | Janssen v. State, 842 N.W.2d 680 | 266+708 | The State charged Janssen with third-degree harassment, a specific intent crime. See Iowa Code " 708.7(1)(a)(1) (2007) ("A person commits harassment when, with intent to intimidate, annoy, or alarm another person, the person ... [c]ommunicates with another by ... writing ... without legitimate purpose and in a manner likely to cause the other person annoyance or harm."); State v. Evans, 671 N.W.2d 720, 724 (Iowa 2003) ("[H]arassment is a specific intent crime."). In defense, Janssen's attorney asserted his client's telephonic and written comments were made for the legitimate purpose of addressing her dental care. The district court accepted that defense in conjunction with Janssen's telephonic communications but not in conjunction with her written comments. Based on the written comments, the court found Janssen guilty as charged. | Under the doctrine of implied preemption, mortgagee's state law counterclaims against mortgagors for unjust enrichment, abuse of process, civil conspiracy, and tortious interference with prospective business relationships, which were premised on mortgagors aggregate actions in federal bankruptcy court, were preempted by the federal bankruptcy code; federal jurisdiction over bankruptcy proceedings was exclusive, there was a need for uniformity in the bankruptcy arena, and there were federal sanctions available to mortgagee for the filing of frivolous and malicious pleadings in bankruptcy court. U.S. Const. art I, S 8, cl. 4; 28 U.S.C.A. S 1334(a). | Is harassment a specific intent crime? | 046898.docx | LEGALEASE-00157832-LEGALEASE-00157833 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | |
| 21795 | S.W. Croes Family Tr. v. Small Bus. Admin., 446 N.W.2d 55 | 302+236(7) | Common law pleading was a system of technical rules and principles whereby technical propriety had to be observed to produce a justiciable issue. These technical rules are obsolete under the modern Rules of Civil Procedure. "The object of pleading is not to destroy but to advance the ends of justice." 71 C.J.S. Pleading " 1, at 18 (1951). Accord: Katin et al. v. Crispel, 22 N.J.Misc. 394, 395-397, 39 A.2d 183, 184 (N.J.Cir.1944). | Nothing in the record indicated that defendants could clear up confusion they created even if they were allowed to amend their pleadings one more time, especially since they did not desire to amend in some minor respect but, rather, sought major amendment, which went to heart or grounds of litigation; therefore trial court did not abuse its discretion in denying defendants' motion to amend. | Is advancing the ends of justice the object of pleading? | 023836.docx | LEGALEASE-00158878-LEGALEASE-00158879 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21796 | Haltom Oil Co. v. Phillips Petroleum Co., 304 F.2d 95 | 101+2709 | We have been unable to find a satisfactory definition of the term "cancellation," as used in the statute. Cancellation of a negotiable instrument is a manifestation by act of intention with reference thereto to render same ineffacious as a legal obligation. This act manifesting the intention may take several forms; for instance, the surrender of the instrument to the obligor, the erasure of the signature of the obligor, destruction of the instrument, or the marking of same cancelled. It is not necessary that a cancellation be supported by a consideration. 10 C.J.S., Bills and Notes, " 475, p. 1035.' | Under provision in contract, each substantive paragraph of which was independent and distinct, to effect that oil company had theretofore sold to jobber bulk station and equipment, purchase price of which was covered by promissory note, that oil company was to purchase from jobber for total consideration of $30,000 said property and equipment and that oil company agreed to cancel note covering jobber's purchase price, balance due on note must be set off or credited against payment by oil company of $30,000 and oil company was not required to pay $30,000 in addition to cancelling balance due on note. | What is cancellation of a negotiable instrument? | Bills And Notes -Memo 53- AM_64597.docx | ROSS-003283292-ROSS-003283293 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 |
| 21797 | Farmers Ins. Exch. v. Enter. Leasing Co., 281 Va. 612 | 95+1.1 | Farmers' reliance on this rule is misplaced because the rule applies to insurers, not self-insurers, such as Enterprise. We have recognized that there is a distinction between insurance companies and self-insurers. Yellow Cab Co. of Virginia v. Adinolfi, 204 Va. 815, 818, 134 S.E.2d 308, 310 (1964). Likewise, there is a distinction between self-insurance and insurance. "Insurance is a matter of contract." Id. (internal quotation marks omitted). "A necessary element of insurance is the existence of a contract between insurer and insured." Id With self-insurance, there is neither an insured nor an insurer. In fact, self-insurance does not involve the transfer of a risk of loss, but rather a retention of that risk, making it the "antithesis of insurance." Physicians Ins. Co. v. Grandview Hosp. and Med. Ctr., 44 Ohio App.3d 157, 542 N.E.2d 706, 707 (1988). In effect, self-insurance operates as "assurance" that judgments will be paid. Northern Indiana Pub.Serv. Co. v. Bloom, 847 N.E.2d 175, 185 (Ind.2006). | The law favors the making of contracts between competent parties for a valid purpose. | Is existence of a contract a necessary element of insurance? | 019592.docx | LEGALEASE-00159529-LEGALEASE-00159530 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 |
| 21798 | Am. States Ins. Co. v. Utah Transit Auth., 699 P.2d 1210 | 217+2777 | UTA obtained its certificate of self-insurance when it demonstrated that it was possessed and would continue to be possessed of the ability to pay judgments against it. That certificate serves as an equivalent for a policy and satisfies the requirement of furnishing security. U.C.A., 1953, " 31"41"5(1)(b). However, a certificate of self-insurance negates the existence of a policy of insurance requiring an offer of UM coverage but permitting rejection. A self-insurer cannot offer insurance to itself, nor can it reject the insurance so tendered. A certificate of self-insurance is not really insurance or a policy of insurance; it is simply an assurance that judgments will be paid. U.C.A., 1953, " 41"12"34; Guercio v. Hertz Corp., 40 N.Y.2d 680, 389 N.Y.S.2d 568, 358 N.E.2d 261 (1976). Section 41"12"21.1 clearly, by its own terms, cannot be made to apply to self-insurers. | Public transit authority, as a qualified self-insurer, was not required to provide uninsured motorist coverage for its passengers. U.C.A.1953, 31-41-5(1)(b). | Is self-insurance in actuality insurance? | 019620.docx | LEGALEASE-00160012-LEGALEASE-00160013 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 |
| 21799 | Baker v. State, 17 S.W. 144 | 231+164(3) | To render a party liable, under the statute, for obstructing a public road, the act must have been done "willfully," (Pen. Code, art. 405;) and the word "willful," as used in the statute, means with evil intent, or legal malice, or without reasonable ground for believing the act to be lawful. (Thomas v. State, 14 Tex. App. 200; Shubert v. State, 16 Tex. App. 645; Trice v. State, 17 Tex. App. 43; Loyd v. State, 19 Tex. App. 321.) | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | Does liability for obstructing a public road depend on the fact that it was done willfully? | 018786.docx | LEGALEASE-00161633-LEGALEASE-00161634 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 |
| 21800 | Baker v. State, 17 S.W. 144 | 231+164(3) | To render a party liable, under the statute, for obstructing a public road, the act must have been done "willfully," (Pen. Code, art. 405;) and the word "willful," as used in the statute, means with evil intent, or legal malice, or without reasonable ground for believing the act to be lawful. (Thomas v. State, 14 Tex. App. 200; Shubert v. State, 16 Tex. App. 645; Trice v. State, 17 Tex. App. 43; Loyd v. State, 19 Tex. App. 321.) | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | Does a person have to act willfully in order to be held liable or obstruction of a public road? | 018839.docx | LEGALEASE-00161763-LEGALEASE-00161764 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 |
| 21801 | Battle v. Corp. of Mobile, 9 Ala. 234 | 83+82.35 | The power of taxation is a necessary accompaniment of the power of legislation, and is limited only by the extent of that power. It necessarily, therefore, operates upon all persons and property belonging to the body politic. Its relinquishment ought not to be presumed, but rather should be demonstrated by those who claim exemption. [Providence Bank v. Billings, 4 Peters, 514.] | The city of Mobile, under its charter authority to tax real and personal property within the city, may lawfully assess a steamboat plying on the Alabama river, if owned by citizens of the state resident in Mobile, though it is registered and enrolled as a coasting vessel under the laws of the United States. | What does the power of taxation operate on? | Taxation - Memo 1148 - C - JL_65482.docx | ROSS-003293132 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 |
| 21802 | Maddox v. Duncan, 143 Mo. 613 | 83E+459 | It is a rule of universal application in commercial law that every indorsement of a promissory note, whether for accommodation or otherwise, is essentially a new contract, independent of any contract obligations of the maker. Edw. Bills (3d Ed.) " 383; Beach, Mod. Cont. " 605; Tied. Com. Paper, " 256; Dunnigan v. Stevens, 122 Ill. 396, 13 N. E. 651; Trabue v. Short, 18 La. Ann. 257; Trimble v. Thorne, 16 Johns. 152; Aymar v. Sheldon, 12 Wend. 439; Hunt v. Standart, 15 Ind. 35. In Furgerson v. Staples, 82 Me. 159, 19 Atl. 158, it is said: "The indorsement of a note is a new contract. The indorser engages that the note shall be paid according to its tenor; that is, upon proper presentment, demand, and notice. He engages that it is genuine, and the legal obligation that it purports to be, and that he has title to it, and a right to indorse it." | The indorser of a note does not become a guarantor by an indorsement waiving notice and demand, and guarantying payment. Judgment (1895) 62 Mo. App. 474, reversed. | Is an endorsement considered an original contract? | 009264.docx | LEGALEASE-00162739-LEGALEASE-00162740 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 |
| 21803 | First Nat. Bank v. Sprout, 78 Neb. 187 | 83E+863 | It appears from the discussion of counsel that the reason which prompted the trial court to direct a verdict for the defendant was that the offer of the note in evidence did not include the indorsement of the payee, and because of the failure to prove the indorsement the plaintiff was not entitled to recover. Proof of the indorsement, however, under the allegations of the petition and the evidence of ownership, was not indispensable to the plaintiff's case. In Michigan Mutual Life Insurance Co. v. Klatt, 2 Neb. (Unof.) 870, 90 N. W. 754, it was held that possession of a promissory note is prima facie evidence of its ownership. That action was one in equity for the foreclosure of a real estate mortgage, and the holding was in accord with the equitable rule; but it does not follow that under the same statement of facts an action at law could not be maintained against the maker of the note. A parol transfer by the payee without indorsement of a check payable to order, accompanied by manual delivery, is valid. Freund v. Bank, 76 N. Y. 352. | The transferee of a negotiable promissory note, who has purchased the same in the usual course for value, may bring an action at law against the maker without proof of indorsement. | Is the transfer of a check by parol valid? | Bills and Notes - Memo 1445 - RK_66503.docx | ROSS-003278904-ROSS-003278905 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21804 | First Nat. Bank v. Sprout, 78 Neb. 187 | 83E+863 | It appears from the discussion of counsel that the reason which prompted the trial court to direct a verdict for the defendant was that the offer of the note in evidence did not include the indorsement of the payee, and because of the failure to prove the indorsement the plaintiff was not entitled to recover. Proof of the indorsement, however, under the allegations of the petition and the evidence of ownership, was not indispensable to the plaintiff's case. In Michigan Mutual Life Insurance Co. v. Klatt, 2 Neb. (Unof.) 870, 90 N. W. 754, it was held that possession of a promissory note is prima facie evidence of its ownership. That action was one in equity for the foreclosure of a real estate mortgage, and the holding was in accord with the equitable rule; but it does not follow that under the same statement of facts an action at law could not be maintained against the maker of the note. A parol transfer by the payee without indorsement of a check payable to order, accompanied by manual delivery, is valid. Freund v. Bank, 76 N. Y. 352. A transferee of negotiable paper, without indorsement, may recover thereon by proving consideration. Farris v. Wells, 68 Ga. 604. In Tullis v. Fridley, 9 Minn. 79 (Gil. 68), it was held that where a promissory note, payable to the husband, is transferred by him directly to his wife, without indorsement, the title thereto vests in her so far as the maker is concerned, although she paid no valuable consideration for such transfer. A person who has acquired the ownership and possession of a promissory note may bring suit thereon in his own name as the real party in interest, though no indorsement of the note has been made to him by the payee. Pearson v. Cummings, 28 Iowa, 344. | The transferee of a negotiable promissory note, who has purchased the same in the usual course for value, may bring an action at law against the maker without proof of indorsement. | Does a parol transfer of a check need to be accompanied by manual delivery to be valid? | Bills and Notes - Memo 1446 - RK_66504.docx | ROSS-003282879-ROSS-003282880 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 21805 | Howe v. Waysman, 12 Mo. 169 | 186+189 | Equity will permit a creditor of an estate to sue the debtor, where there is collusion between the latter and the executor; a fortiori it will sustain a suit where the very fund appropriated by law for the payment of the debt is withheld by a fraudulent grantee. In the case of Bayard v. Hoffman above cited, Chancellor Kent comes to the conclusion from a review of the cases, that the doctrine is not law, that voluntary settlements of property which a creditor could not reach by legal process are valid against creditors, even if made by insolvent debtors. He observes, he would be sorry to find this the doctrine of the court. It seems to be too encouraging to fraudulent alienations, and a debtor under the shelter of it might convert all his property into stock and settle it upon his family in defiance of his creditors, and to the utter subversion of justice. Money may too, now, be taken in execution. Turner v. Fendall, 1 Cranch, 117; Hardy v. Dobbin, 12 Johns. R. 220; Means v. Vance, 1 Bay's S. C. R. 39. | A father who was in failing circumstances bought property with his own money, and procured it to be conveyed to his minor children, and afterwards sold the same for a valuable consideration. Held, in an action of trover by the minors to recover the value of the property, that the conveyance to the minors was void as to the subsequent purchaser from the father. | Can money be taken in execution? | 014097.docx | LEGALEASE-00165093-LEGALEASE-00165094 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 21806 | Davis ex rel. Zaire Ali Rose v. Pleasant, 68 So. 3d 679 | 30+3435 | "Whether a person is or is not a resident of a household is a question of law as well as fact that is to be determined from all the facts of each case." Prudhomme v. Imperial Fire & Cas. Ins. Co., 95"1502, p. 3 (La.App. 3 Cir. 4/3/96), 671 So.2d 1116, 1118; see also Berryhill v. Entergy New Orleans Inc., 05"0005 (La.App. 4 Cir. 8/3/05), 925 So.2d 12. "The intention of a person to be a resident of a particular place is determined by his expressions at a time not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life." Id. "Although residency is dependent on the facts of each case, the principal test is physical presence with the intention to continue living there." Id., 95"1502, p. 3, 671 So.2d at 1119. | Appellate courts review findings of fact using the clearly wrong/manifestly erroneous standard of review; during review, the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court and that the record establishes the finding is not clearly wrong or manifestly erroneous. | Does a determination of residency involve consideration of both fact and intention? | Domicile - Memo 63 - C - NK.docx | LEGALEASE-00054095-LEGALEASE-00054096 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 21807 | Littlefield v. Roberts, 1968 OK 180, 448 P.2d 851 | 390+89(1) | In St. Louis & S.F.R. Co. v. Mann, 79 Okl. 160, 192 P. 231, we held that an estoppel cannot be set up against a party ignorant of the state of affairs, or whose conduct was based on a pure mistake. In Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680, we held that a party who pleads an estoppel must be one who, in good faith, has been misled to his injury and it may not be used as an instrument of fraud, but only to prevent injustice. | Children and grandchildren of deceased grantor, seeking to impose resulting trust on land conveyed by grantor to herself and defendant as joint tenants failed to prove that prior to and at time of execution and delivery of deed that grantor had depended upon defendant to assist her in transacting her business, that grantor had been incapable of transacting her business affairs or that a close, confidential relationship existed between grantor and defendant. | Can an estoppel be set up against a party whose conduct was based upon pure mistake? | 018268.docx | LEGALEASE-00164421-LEGALEASE-00164422 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 21808 | Barrows v. Nw. Mem'l Hosp., 153 Ill. App. 3d 83 | 198H+275 | Pleadings present, define, and narrow the issues, and limit the proof needed at trial. Pleadings are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial. The object of pleadings is to produce an issue that one side asserts and the other side denies, so that a trial may determine the actual truth. (People ex rel. Fahner v. Carriage Way West, Inc. (1981), 88 Ill.2d 300, 307-08, 58 Ill.Dec. 754, 430 N.E.2d 1005, 1008.) Attacking defects in pleadings points out the defects so that the complainant will have an opportunity to cure them before trial. The granting of a motion to strike and dismiss is within the sound discretion of the trial court. Harvey v. Mackay (1982), 109 Ill.App.3d 582, 586, 65 Ill.Dec. 167, 440 N.E.2d 1022, 1025 | Private hospital's exclusion of person from medical or surgical staff for unreasonable, arbitrary, capricious, or discriminatory considerations entitles that person to relief in courts of equity, but court will not intervene, if exclusion is based on sound and reasonable exercise of discretionary judgment; modifying Mauer v. Highland Park Hospital Foundation, 90 Ill.App.2d 409, 232 N.E.2d 776 (Ill.App. 2 Dist.); Rao v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis, 140 Ill.App.3d 442, 94 Ill.Dec. 686, 488 N.E.2d 685 (Ill.App. 5 Dist.); Knapp v. Palos Community Hospital, 125 Ill.App.3d 244, 80 Ill.Dec. 442, 465 N.E.2d 554 (Ill.App. 1 Dist.); Spencer v. Community Hospital of Evanston, 87 Ill.App.3d 214, 42 Ill.Dec. 272, 408 N.E.2d 981 (Ill.App. 1 Dist.); declining to follow Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 46 A.2d 298. | Is the purpose of attacking defects in pleadings to point out defects so that complainant will have opportunity to cure them before trial? | 041056.docx | LEGALEASE-00164519-LEGALEASE-00164520 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21809 | Nelson v. First Nat. Bank of Killingley, 69 F. 798 | 157+489 | Is the certificate of protest of a promissory note drawn in one of the United States, signed by residents of that state, and payable in another, competent evidence in the state of Minnesota of either the presentment, demand, dishonor, or notice of dishonor of the note? The first alleged error in the trial of this case is that the court below admitted in evidence the certificate of protest of the note in suit made by a notary public of the state of Connecticut. The objection urged to it is that the note stood upon the same footing as an inland bill of exchange, that such a bill requires no protest, and hence the certificate was not an official act, and is incompetent. This objection cannot be sustained on the ground that this was an inland bill or inland note, as distinguished from a foreign bill or foreign note. A bill of exchange drawn in one of the states of the United States, payable in another, is a foreign bill, under the settled interpretation of the commercial law in the national courts. Bank v. Daniel, 12 Pet. 32, 53, 54; Buckner v. Finley, 2 Pet. 586, 592; Dickens v. Beal, 10 Pet. 572, 579. | On an issue of the value of stock of a corporation in the hands of a receiver under a statute of the state creating it, in proceedings for its dissolution as insolvent, the opinions of competent witnesses as to the value of stock are admissible. | Is a bill drawn in one state but payable in another a foreign bill of exchange? | Bill and Notes - Memo 15 - RK.docx | ROSS-003298999-ROSS-003299000 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21810 | Wildflower v. St. Johns River Water Mgmt. Dist., 179 So. 3d 369 | 302+359 | Appellee's motion to dismiss asserted affirmative defenses, such as res judicata and lack of standing, which would require some factual proof in order to be sustained. Affirmative defenses "ordinarily cannot be raised by motion to dismiss." Duncan v. Prudential Ins. Co., 690 So.2d 687, 688 (Fla. 1st DCA 1997). However, "an exception is made when the face of the complaint is sufficient to demonstrate the existence of the defense." Ramos v. Mast, 789 So.2d 1226, 1227 (Fla. 4th DCA 2001). There is nothing on the face of the second amended complaint that suggests that Appellant lacks standing, as it is alleged to be the owner of the property in question and the entity carrying out the activities which are or may be adversely impacted by Appellee's exercise of its jurisdiction. Thus, it was error to dismiss the second amended complaint with prejudice based upon lack of standing. | In ruling upon a motion to strike pleading as sham, trial court must resolve all doubts in favor of the pleading. West's F.S.A. RCP Rule 1.150(a). | Can an affirmative defense ordinarily be raised by motion to dismiss? | 11226.docx | LEGALEASE-00094526-LEGALEASE-00094527 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 21811 | City of New Orleans v. Scramuzza, 507 So. 2d 215 | 371+3402 | Classification of a tax must be determined by its operational effect rather than by the descriptive language used in drafting the enactment. The realities of the tax must be examined; its substance, not its form. Trainer v. U.S., 800 F.2d 1086 (Fed.Cir.1986). To ascertain a precise definition of an income tax would prove to be a near impossible task. Such a definition must necessarily vary to conform to the various systems of income taxation. | City's earnings tax was local "income tax" prohibited by State Constitution. LSA-Const. Art. 7, SS 1 et seq., 4(C). | Should the realities and substance of a tax be examined rather than its form? | 044972.docx | LEGALEASE-00131893-LEGALEASE-00131894 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 21812 | Sutton v. FedFirst Fin. Corp., 226 Md. App. 46 | 30+3200 | "A trial court may grant a motion to dismiss if, when assuming the truth of all well-pled facts and allegations in the complaint and any inferences that may be drawn, and viewing those facts in the light most favorable to the non-moving party, "the allegations do not state a cause of action for which relief may be granted." " Latty v. St. Joseph's Soc. of Sacred Heart, Inc., 198 Md.App. 254, 262'63, 17 A.3d 155 (2011) (quoting RRC Northeast, LLC v. BAA Md., Inc., 413 Md. 638, 643, 994 A.2d 430 (2010)). The facts set forth in the complaint must be "pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice." RRC, 413 Md. at 644, 994 A.2d 430. | Court of Special Appeals reviews the grant of a motion to dismiss de novo. | Should facts set forth in a complaint be pleaded with sufficient specificity to survive a motion to dismiss because bald assertions and conclusory statements by the pleader will not suffice? | Pretrial Procedure - Memo # 8176 - C - MS_58986.docx | ROSS-003278684-ROSS-003278685 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21813 | Douglass v. Rowland, 540 S.W.2d 252 | 156+53 | In Duke v. Hopper (1972 Tenn.App., W.S.) 486 S.W.2d 744 this mCourt observed as follows regarding estoppel: "There are three kinds of estoppel; viz: (1) by record, (2) by deed, and (3) by matter in pais. Denny v. Wilson County (1955) 198 Tenn. 677, 281 S.W.2d 671. Estoppel in pais is an estoppel that does not arise from a record or written instrument, but arises from the conduct or silence of a party and is sometimes referred to as equitable estoppel. In the true sense, all matters of estoppel arise in equity, for the purpose of the existence of the doctrine is to prevent inconsistency and fraud resulting in an injustice. | It is not necessary that party against whom estoppel is charged should have intended to deceive; it is sufficient if he intended that his conduct should induce another to act upon it. | Are the three kinds of estoppel? | Estoppel - Memo #31 - C - CSS_59020.docx | ROSS-003280086 | Condensed, SA | 0.71 | 1 | 1 | 1 | 0 | 1 |
| 21814 | Ogden Livestock Shows v. Rice, 108 Utah 228 | 115+138 | Township of Livingston v. Parkhurst, 122 N.J.L. 598, 7 A.2d 627, is another case involving damage to a public bridge from overloading. The case involved a suit by the township for damages caused by the overloading of a small wooden bridge. The bridge had a capacity of 15 tons but its capacity was not posted. It was fairly well constructed and in good condition. The bridge was designed to handle passenger cars, delivery trucks and coal trucks. The defendants took a truck hauling a 28 to 30 ton shovel across the bridge causing it to collapse. The trial court nonsuited the plaintiff. On appeal the judgment of the lower court was reversed. The holding of the Supreme Court was that there was a duty on the part of one using the highways and public bridges to use them with reasonable care. | Where stockyards' lessee constructed wooden bridge with 38-foot span supported by five beams, 18x12 inches, having no supports under them, and bridge collapsed when truck which, with load, weighed about 15 tons, was driven thereon while hauling cement for contractor doing work for stockyards, judgment for lessee against trucker was reduced from $900 to $800 and affirmed. | Is there a duty to use reasonable care so as not to cause damage to highways and bridges? | 018870.docx | LEGALEASE-00161727-LEGALEASE-00161728 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 21815 | Wright v. Tower Loan of Mississippi, 679 F.2d 436 | 172H+1342 | Tower then argues that the "Other" charges "did not mislead, confuse or in any way hinder the borrowers." This argument, however, is specious, for we have often, and explicitly, held that a plaintiff need not prove that he was actually deceived to recover under TILA.} | Whether lender has violated Truth in Lending Act or Regulation Z by making an additional, nonrequired disclosure depends on facts of each case, but lender bears burden of proving compliance. Truth in Lending Act, SS 102-186 as amended 15 U.S.C.A. SS 1601-1667e; Truth in Lending Regulations, Regulation Z, S 226.1 et seq., 15 U.S.C.A. foll. S 1700. | Does the consumer have to actually be deceived for there to be a violation of TILA? | 013851.docx | LEGALEASE-00162610-LEGALEASE-00162611 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21816 | Culbertson v. Nelson, 93 Iowa 187 | 83E+348 | The first section is a re-enactment of the statute of Anne, before referred to,giving to promissory notes the same character as bills of exchange under the law merchant. It hasno application to this case. Section 2085 has been in force ever since 1851, and it has uniformlybeen held that a bill of exchange or promissory note, to be such, and to be possessed of thestributes of negotiability under the law merchant, must be certain as to payor, payee, amount,time, and place of payment. Smith v. Marland, 59 Iowa, 649, 13 N. W. 852; Gordon v. Anderson(Iowa) 49 N. W. 86; Bank v. Taylor, 67 Iowa, 572, 25 N. W. 810; Woodbury v. Roberts, 59Iowa, 348, 13 N. W. 312; Hollen v. Davis, 59 Iowa, 444, 13 N. W. 413; Miller v. Poage, 56Iowa, 96, 8 N. W. 799. So it has been held that a note payable "in currency," or "incurrent funds," is not prima facie negotiable. Rindskoff v. Barrett, 11 Iowa, 172; Huse v.Hamblin, 29 Iowa, 501. So we think that, even should it be held that this statute is applicable tothe case, yet certainty in amount is essential to establish the character and negotiability ofa billor note. Such a holding in no way conflicts with the rule announced in the case of Iron Works v.Cuppy, 41 Iowa, 104. | A bill of exchange drawn for a stated sum "with exchange" is not a negotiable instrument by the law merchant, for want of certainty in the sum to be paid. | "Is a note payable 'in currency' or 'in current funds,' prima facie negotiable" | Bills and Notes - Memo 76 - KC_65101.docx | ROSS-003281125-ROSS-003281126 | Condensed, SA, Sub | 0.87 | 0 | 1 | | 1 | 1 |
| 21817 | Schouwink v. Ferguson, 191 Mich. 284 | 73+60 | It appearing by the record that relator's license expired May 1, 1916, and that thecertificate of authority expired February 29, 1916, we have nothing before us but abstractquestions of law, which do not rest upon existing facts or rights. The questions involved aremoot questions, and the case becomes a moot case, which we must decline to consider. When itappears by the record that action by the court would be futile, by reason of the lapse of time, thecase will be dismissed. Howe v. Doyle, 154 N. W. 62; Carlson v. Common Council of Munishing,155 N. W. 418. | Where certificate of authority of surety company on bond offered by operator of motor bus under municipal ordinance expires before presentation on writ of certiorari of ruling on petition for mandamus to compel acceptance of bond, writ of certiorari will be dismissed. | "Will a case be dismissed when it appears by record that action by court would be futile, by reason of lapse of time?" | Pretrial Procedure - Memo # 7490 - C - KG_57528.docx | ROSS-003282462 | Condensed, SA, Sub | 0.53 | 0 | 1 | | 1 | 1 |
| 21818 | Forsman v. United Fin. Cas. Co., 966 F. Supp. 2d 1091 | 217+3514(2) | Subrogation is an equitable doctrine designed to compel the ultimate payment of anobligation by the person "who in justice, equity and good conscience should pay it." Skauge v.Mt. Sts. T. & T., 172 Mont. 521, 565 P.2d 628, 630 (1977). Subrogation is against the publicpolicy of Montana if it occurs before the insured is made whole, including compensation forattorney's fees. Steinke v. Safeco Ins. Co. of Am., 270 F.Supp.2d 1196, 1199 (D.Mont.2003)(citing Swanson v. Hartford Ins. Co. of the Midwest, 309 Mont. 269, 46 P.3d 584 (2002)).However, "in Montana, parties to an insurance contract may include provisions that excludecoverage without violating public policy if the exclusion applies to optional, rather thanmandatory coverage." See Newbury, 184 P.3d at 1027. The provisions regarding optionalcoverage in an insurance contract are thus "at the sole discretion of the parties to the contract."Id. "Therefore, where an insured is injured in a vehicle, it is permissible for a policy to limit oreven exclude coverage to the extent other primary insurance like that of the driver and/ortortfeasor is available and required to be payable." Bohn v. Allstate Indem. Co., 2010 WL4286357 at (D.Mont., Oct. 19, 2010) (citing Newbury, 184 P.3d at 1028). In Montana, collisioncoverage is optional. See Mont.Code Ann. " 61"6"103; Newbury, 184 P.3d at 1027. | Duplicate recovery clause in automobile insurance policies did not amount to de facto subrogation in violation of Montana's public policy against subrogation before the insured had been made whole; rather, the duplicate recovery clause was a valid double-recovery exclusion of optional collision coverage under the policy, it did not give insurer authority to substitute itself for insureds, and insureds received coverage for premiums they had paid. MCA 61-6-103. | "Is subrogation an equitable doctrine designed to compel the ultimate payment of an obligation by the person who in justice, equity, and good conscience should pay it? " | Subrogation - Memo 141 - VP C.docx | ROSS-003285769-ROSS-003285770 | Condensed, SA, Sub | 0.66 | 0 | 1 | | 1 | 1 |
| 21819 | In re Bosley, 446 B.R. 79 | 322H+1166 | This Court has previously explained the circumstances under which the principle ofequitable subrogation applies: Equitable subrogation arises in equity to prevent fraud orinjustice and usually arises when (1) the paying party has a liability, claim or fiduciaryrelationship with the debtor; (2) the party pays to fulfill a legal duty or because of public policy;(3) the paying party is a secondary debtor; (4) the paying party is a surety; or (5) the party paysto protect its own rights or property. In re Hutchins, 400 B.R. 403, 413 (Bankr.D.Vt.2009)(quoting Lawlor v. Chittenden Trust Co. (In re Lawlor), 2005 Bankr.LEXIS 2935, 2005 WL4122833, *2 (Bankr.D.Vt. Dec.15, 2005)). "This equitable doctrine, which has as its goal theadvancement of justice and the prevention of injustice, is used "only in extreme cases borderingon if not reaching the level of fraud." " Id. (citing Rouse v. Chase Manhattan Bank, U.S.A. (Inre Brown), 226 B.R. 39, 44 (W.D.Mo.1998)). In its earlier ruling, the Court specificallyaddressed the purpose equitable subrogation is intended to serve: Subrogation is an equitycalled into existence for the purpose of enabling a party secondarily liable, but who has paid thedebt, to reap the benefit of any securities or remedies which the creditor may hold against theprincipal debtor and by the use of which the party paying may thus be made whole. It is adoctrine which has particular approval in Vermont as between insurer and insured. Subrogationarises when one man is compelled to pay a debt for which another is primarily liable and which,in good conscience, should have been discharged by the latter. Subrogation is an equity creatureakin to and derived from the law of unjust enrichment and restitution. The general rule is that anobligor or insurer making a payment for which it is not liable is making a "voluntary" paymentand cannot be subrogated. Although the general rule has not been applied specifically toinsurance law by Vermont, the rule is applied in Vermont to | Under Vermont law, if party is in possession of sufficient facts concerning another's interest in property to call upon him to inquire, he is charged with notice of such facts as diligent inquiry would disclose. | Does equitable subrogation arise in equity to prevent fraud and injustice? | Subrogation - Memo 249 - VG C.docx | ROSS-003286161-ROSS-003286163 | Condensed, SA, Sub | 0.92 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21820 | Robertson v. Sullivan, 102 Miss. 581, 59 So. 846 | 366+3(4) | In order to reach a correct solution of this controversy, it is not necessary for us to review the various decisions of this court cited by counsel, but simply to keep in view certain elementary principles of the law of subrogation, with which these decisions are in full accord. "Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities." Words and Phrases, vol. 7, page 6722. "The doctrine is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him, and also of the debtor." 37 Cyc. 363. As was said by Chief Justice Sharkey in Blackwell v. Davis, 2 How. 812, the doctrine of subrogation is "the offspring of natural justice, and courts should rather incline to extend than to restrict the operation of a principle so elevated and pure." It applies, in general, "wherever any person, other than a mere volunteer, pays a debt or demand which in equity or in good conscience should have been satisfied by another, or where a liability of one person is discharged out of the fund belonging to another, and where one person is compelled for his own protection, or that of some interest which he represents, to pay a debt for which another is primarily liable, or wherever a denial of the right would be contrary to equity and good conscience." 27 Am. & Eng. Ency. of Law (2d Ed.) 203. And "whenever a party has such an interest in property as makes it incumbent on him to put in an outstanding claim or equity for its | Cotenant of land subject to vendor's lien, who took a new deed from the grantor and had the lien canceled, held subrogated to the rights of the vendor as against the other cotenants. | "Is the object of subrogation the doing of complete, essential, and perfect justice between all parties?" | Subrogation - Memo 128 - VP C.docx | ROSS-003286190-ROSS-003286191 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 21821 | Sourcecorp v. Norcutt, 227 Ariz. 463 | 228+793(5) | These statutes and principles do not, however, necessarily compel the rejection of the Norcutts' equitable subrogation argument. The very nature of equitable subrogation is to substitute a party into the position of another. If the Norcutts are entitled to equitable subrogation as they claim, then they would be substituted into the position of Zions Bank, and their interest would be deemed to have attached before the judgment lien. | A judgment creditor holding a lien upon real property may seek to satisfy the judgment from the property even if the debtor transfers the property to a third party. A.R.S. § 12-1553(2). | Is the nature of equitable subrogation to substitute a party into the position of another? | Subrogation - Memo 239 - VG C.docx | ROSS-003312355-ROSS-003312356 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 21822 | James T. Scatuorchio Racing Stable v. Walmac Stud Mgmt., 941 F. Supp. 2d 807 | 29T+151 | An accounting is an equitable remedy and is defined as "an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due." Karem v. Bryant, 370 S.W.3d 867, 871 (Ky.2012) (citing 1 Am.Jur.2d Accounts and Accounting " 52) (quotation marks omitted). The Kentucky Court of Appeals recently opined that "[t]he underlying theory [of a claim for an accounting] is unjust enrichment"an accounting primarily prevents unjust enrichment by mandating the return of any benefit received as a result of a breach of fiduciary duty. To maintain an accounting, the claimant must have a contractual or fiduciary relationship with the defendant against whom the accounting is directed and an interest in the monies or property subject to the accounting." Gentry v. Cremeens, No. 2008"CA"830"MR, 2009 WL 1491358, at *2, 2009 Ky.App. Unpub. LEXIS 139, at *5 (Ky.Ct.App. May 29, 2009) (citation and quotations omitted); see also Holley Performance Prods. v. Keystone Auto. Operations, Inc., No. 1:09"CV"53"TBR, 2009 WL 3613735, at *3, 2009 U.S. Dist. LEXIS 102709, at *7 (W.D.Ky. Oct. 28, 2009) ("An accounting is a detailed statement of the debits and credits between parties arising out of a contract or a fiduciary relation. It is a statement in writing of debts and credits or of receipts and payments.") (quotation marks and citation omitted). Simply alleging a claim for an accounting is insufficient to withstand a motion to dismiss; rather, a plaintiff must furnish a sufficient legal basis for the request. | Agreement between owner of thoroughbred stallion and breeding farm, for the services of managing breeding career of race horse, was not subject to New Jersey Consumer Fraud Act (NJCFA); services to manage stud's career was not something sold to the general public, but instead a service highly particularized and unique, and the parties, as sophisticated breeders and competitive racers who entered into complex, multi-million dollar contracts with the aid of counsel, were not typical consumers. N.J.S.A. 56:8-1 et seq. | What is accounting? | 01990.docx | LEGALEASE-00077050-LEGALEASE-00077051 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 21823 | Granite Valley Hotel Ltd. P'ship v. Jackpot Junction Bingo & Casino, 559 N.W.2d 135 | 209+241(1) | The same is true with the federal power of eminent domain.And it is clearly established that the power of eminent domain extends both to intangibles, see Cincinnati v. Louisville & Nashville R.R. Co., 223 U.S. 390, 400, 32 S.Ct. 267, 268"69, 56 L.Ed. 481 (1912), and to the product of intellectual activity, see Interdent Corp. v. United States, 488 F.2d 1011, 203 Ct.Cl. 296 (1973) (per curiam). Nixon v. Administrator of Gen'l Svcs., 408 F.Supp. 321, 357 n. 49 (D.D.C.1976). | When both state court and tribal court have jurisdiction to entertain dispute involving question central to governance of Indian tribe, doctrine of comity generally divests state court of jurisdiction, as a matter of federal law, if state court's retention of jurisdiction would interfere with matters of tribal self-government. | Does the power of eminent domain extend to both intangibles and the product of intellectual activity? | Eminent Domain - Memo 41 - RK.docx | ROSS-003283921-ROSS-003283922 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 21824 | United States v. Atl. Mut. Ins. Co., 298 U.S. 483 | 393+1027(1) | Various means of enforcing such contribution have become well recognized, such as a suit in rem in admiralty against ship or cargo, a suit in personam in admiralty against ship owner or cargo owner, and an action at law or a suit in equity against ship owner or cargo owner. Save for exceptional rulings afterwards disapproved, the courts in dealing with such suits and actions have regarded the right to contribution as accruing and becoming enforceable upon the arrival of the ship at the port of destination and the delivery of the cargo. In reason the rule could not well be otherwise, for every element of the right is then present. That the amount of the required contribution may then be unliquidated is no obstacle, for in proper sequence liquidation comes after accrual, and can be made in the suit or action where the right is presented for adjudication. In this regard a claim for contribution does not differ from many others where at the time of accrual the recoverable damages or amount due remains unliquidated. As was well said in a related case, "The law is familiar enough in actions of tort and in many actions in contract, with liabilities which are presently due, although unliquidated." | Insurer's claim as subrogee of cargo owners against United States, as owner of carrying transport, for contribution in "general average," held to have "accrued" when transport reached its destination and delivered remaining cargo to owners, even though claim was not then liquidated, as against contention claim accrued when adjuster rendered a general average statement, and hence, more than six years having elapsed since such accrual date, claim was barred by limitations. Jud.Code SS 145(1), 156; 28 U.S.C.A. SS 1491, 2501. | Should damages be liquidated before a cause of action can arise? | Action - Memo # 151 - CS.docx | LEGALEASE-00012553-LEGALEASE-00012554 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21825 | Florida Peninsula Ins. Co. v. Ken Mullen Plumbing, 171 So. 3d 194 | 302+245(1) | "The policy behind the doctrine [of equitable subrogation] is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge." Kala Invs., Inc. v. Sklar, 538 So.2d 909, 917 (Fla. 3d DCA 1989) (citing E. Nat'l Bank v. Glendale Fed. Sav. & Loan Assoc., 508 So.2d 1323, 1324 (Fla. 3d DCA 1987)). Application of the doctrine "depends upon the facts and circumstances of each case "having for its basis the doing of complete and perfect justice between the parties without regard to form." " Id. (citation omitted) (quoting Dantzler Lumber & Exp. Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116, 119 (1934)); see also Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, 769 So.2d 484, 486 (Fla. 4th DCA 2000) ("Equitable subrogation is "founded on the proposition of doing justice without regard to form. The doctrine exists to prevent unjust enrichment." " (quoting Benchwarmers, Inc. v. Gorin, 689 So.2d 1197, 1199 (Fla. 4th DCA 1997)) (internal quotation marks omitted)). | Homeowners insurer that was sued by insureds for water damage allegedly caused by defective plumbing had automatic right to amend third-party complaint against plumber that had not filed responsive pleading, but had only filed motion to dismiss. West's F.S.A. RCP Rule 1.190(a). | What facts and circumstances does the application of equitable subrogation depend upon? | Subrogation - Memo 1008 – C - CAT.docx | ROSS-003310604-ROSS-003310605 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | | |
| 21826 | Brown v. ConocoPhillips Pipeline Co., 47 Kan. App. 2d 26 | 30+3662 | It is unnecessary to examine whether the district court erred by failing to weigh the above four elements. Before the above elements can be applied, the first question which must be addressed is whether an equitable remedy is appropriate in the first place. "[E]quity never flies in the face of positive law, nor is it invokable to unsettle thoroughly established legal principles." Moore v. McPherson, 106 Kan. 268, 273, 187 P. 884 (1920). A party cannot obtain an equitable remedy unless there is a wrong for which a remedy is necessary. First Nat'l Bank & Trust Co. v. Wetzel, 42 Kan.App.2d 924, 929, 219 P.3d 819 (2009). Thus, to be entitled to an injunction, Brown must have suffered a wrong requiring an equitable remedy. | Appellate courts generally will not interfere with a district court's grant or denial of an injunction unless the district court abused its discretion; however, when an appeal frames questions of law, including the threshold legal requirements for injunctive relief in a particular case, appellate review is unlimited. | Can a party obtain an equitable remedy without a wrong for which a remedy is necessary? | Subrogation - Memo 984 - C - CAT.docx | ROSS-003284521-ROSS-003284522 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 21827 | Westfield Ins. Grp. v. Affinia Dev., 982 N.E.2d 132 | 30+3554 | Waiver of liability clauses are valid expressions of the parties' freedom to contract. Hanover Ins. Co. v. Cunningham Drug Stores, 8th Dist. No. 44066, 1982 WL 5341, (May 6, 1982). Ohio courts have held that "such a clause which mutually prohibits the owner [and] contractor from enforcing their rights against each other for damages caused by fire or other perils covered by insurance is not void as being against public policy." Acuity v. Interstate Const., Inc., 11th Dist. No. 2007*P0074, 2008-Ohio-1022, 2008 WL 625097, quoting Insurance Co. of North America v. Wells, 35 Ohio App.2d 173, 177, 300 N.E.2d 460 (10th Dist.1973). Ohio courts have repeatedly held that waiver-of-subrogation provisions are valid and enforceable. Nationwide Mutual Fire Ins. Co. v. Sonitrol, Inc. of Cleveland, 109 Ohio App.3d 474, 482, 672 N.E.2d 687 (8th Dist.1996); Len Immke Buick, Inc. v. Architectural Alliance, 81 Ohio App.3d 459, 464, 611 N.E.2d 399 (10th Dist.1992). | Appellate court reviews a summary judgment de novo and without deference to the trial court's determination. | Can you enforce a waiver of subrogation clause? | 043206.docx | LEGALEASE-00127205-LEGALEASE-00127206 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21828 | Schwartzco Enterprises LLC v. TMH Mgmt., 60 F. Supp. 3d 331 | 184+41 | A pleading need not contain " "detailed factual allegations," " but must contain more than "an unadorned, the-defendant- unlawfully-harmed-me accusation." Iqbal, at 678, 129 S.Ct. 1937, quoting Twombly, at 555, 127 S.Ct. 1955 (other citations omitted). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, at 679, 129 S.Ct. 1937. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, at 679, 129 S.Ct. 1937. A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, at 678*679, 129 S.Ct. 1937. | When a plaintiff alleges a breach of fiduciary duty by conduct not amounting to fraud, such as breach of a duty of care, disclosure, or loyalty, the general pleading standards apply, as set out by rule requiring that a claim be a plain and short statement showing that the pleader is entitled to relief, not the heightened standards of rule requiring that, in all averments of fraud or mistake, the circumstances constituting fraud or mistake be stated with particularity. Fed.Rules Civ.Proc.Rules 8(a), 9(b), 28 U.S.C.A. | Is reciting bare legal conclusions insufficient? | 023169.docx | LEGALEASE-00130356-LEGALEASE-00130357 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 21829 | Lee v. Konrad, 337 P.3d 510 | 102+194.18 | A "[t]respass is an unauthorized intrusion or invasion of another's land." Consent is generally considered to be an affirmative defense to trespass. Indeed, "consent marks a deficiency in the plaintiff's prima facie case at the most fundamental level; where the plaintiff consents, the defendant's act is simply not tortious." | In action for attorney fees, wherein neighbor's attorneys contracted with the Alaska Public Employees Association (APEA), and neighbor was entitled to receive legal services at a contractually reduced rate, the trial court was not justified in using attorneys' customary hourly rates and awarding some fraction of the result, when the most objective estimation of the value of the attorneys' services was simply the rate they agreed to accept in exchange for participating in the APEA benefits plan, or $140 per hour. Rules Civ.Proc., Rule 82. | Is consent a defense to a claim of trespass? | 047305.docx | LEGALEASE-00133247-LEGALEASE-00133248 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 21830 | Westfield Ins. Grp. v. Affinia Dev., 982 N.E.2d 132 | 30+3554 | Waiver of liability clauses are valid expressions of the parties' freedom to contract. Hanover Ins. Co. v. Cunningham Drug Stores, 8th Dist. No. 44066, 1982 WL 5341, (May 6, 1982). Ohio courts have held that "such a clause which mutually prohibits the owner [and] contractor from enforcing their rights against each other for damages caused by fire or other perils covered by insurance is not void as being against public policy." Acuity v. Interstate Const., Inc., 11th Dist. No. 2007*P0074, 2008-Ohio-1022, 2008 WL 625097, quoting Insurance Co. of North America v. Wells, 35 Ohio App.2d 173, 177, 300 N.E.2d 460 (10th Dist.1973). Ohio courts have repeatedly held that waiver-of-subrogation provisions are valid and enforceable. Nationwide Mutual Fire Ins. Co. v. Sonitrol, Inc. of Cleveland, 109 Ohio App.3d 474, 482, 672 N.E.2d 687 (8th Dist.1996); Len Immke Buick, Inc. v. Architectural Alliance, 81 Ohio App.3d 459, 464, 611 N.E.2d 399 (10th Dist.1992). | Appellate court reviews a summary judgment de novo and without deference to the trial court's determination. | Is a waiver-of-subrogation provision valid and enforceable? | Subrogation - Memo # 1269 - C - SHS.docx | ROSS-003303622-ROSS-003303623 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21831 | Succession of McCord v. C.I.R., 461 F.3d 614 | 220+3011 | The term "partnership interest" means the interest in the partnership representing any partner's right to receive distributions from the partnership and to receive allocations of partnership profit and loss. | On appeal from tax court, determination of nature of property rights transferred is question of state law that Court of Appeals reviews de novo. | What does the term partnership interest mean? | 022434.docx | LEGALEASE-00143450-LEGALEASE-00143451 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21832 | Wilkins v. Wilkinson, 2002 WL 47051 | 284+85 | In Culver v. City of Warren (1948), 84 Ohio App. 373, 83 N.E.2d 82, paragraph six of the syllabus, the Court of Appeals for Trumbull County held that "[a]ctions or opinions are "moot" when they are or have become fictitious, colorable, hypothetical, academic or dead, and their distinguishing characteristic is that they involve no actual, genuine, live controversy the decision of which can definitely affect existing legal relations." This court has held that "[a] 'moot case" is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy.' " (Citation omitted.) "Courts do not concern themselves with controversies that are not justiciable." Davies v. Columbia Gas & Elec. Corp. (1946), 70 N.E.2d 655, 47 Ohio Law Abs. 225, 228, reversed on other grounds (1949), 151 Ohio St. 417, 86 N.E.2d 603; see, also, Central Motors Corp. v. Pepper Pike (1983), 9 Ohio App.3d 18, 19, 457 N.E.2d 1178 ("[m]oot cases are dismissed because they no longer present a justiciable controversy. The requested relief has been obtained, it serves no further purpose, it is no longer within the court's power, or it is not disputed"). | Parolee stated a cause of action in complaint for new parole revocation hearing on ground that use of video conferencing, without justification for depriving parolee his right to confront witnesses, violated his due process rights; parolee and attorney were unable to make eye contact with witnesses, and camera "froze up" on several occasions that prevented parolee and hearing officer from observing demeanor of witnesses. U.S.C.A. Const.Amend. 5, 14. | Are moot cases dismissed because they no longer present justiciable controversy? | Pretrial Procedure - Memo # 6939 - C - DHA.docx | ROSS-003316409-ROSS-003316410 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 21833 | Roach v. Hedges, 419 S.W.3d 46 | 1.41E+205 | Despite arguing that a duty existed, Roach now attempts to disavow his claim and points to the appellees' denial of their duty via a request for admissions. However,"[p]leading in the alternative is of course a standard legal practice, and absent extraordinary circumstances such alternative pleading is not binding as a judicial admission." Huddleston v. Hughes, 843 S.W.2d 901, 904"05 (Ky.App.1992). | School principals, school plant operator, and school maintenance worker were immune from suit under recreational use statute as the owner of the school playground at which visitor allegedly received an injury after school hours, absent a showing of a willful or malicious failure to guard or warn, even if the defendants lacked the ability to decide if the land would be open to the public and the employees would be indemnified by school district, where the plant operator and maintenance worker's employment contract with the school district conferred duties that would give rise to negligence liability, and both principals had a duty to supervise school personnel, including those charged with maintenance of the school's grounds. KRS 411.190(1)(b), (3, 4, 6). | Is pleading in the alternative a standard legal practice? | 023636.docx | LEGALEASE-00149279-LEGALEASE-00149280 | Condensed, SA | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 21834 | Patton Children's Tr. v. Hamlin, 2008 WL 3863475 | 390+246 | The landowners further assert that, as a matter of law, Ulmer is estopped from claiming he had the authority to act on behalf of the trust because he was aware Say was identified as PCT's trustee in the deed when it was filed. Estopped by deed stands for the general proposition that "all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law." Angell v. Bailey, 225 S.W.3d 834, 841 (Tex.App.-El Paso 2007, no pet.). | An individual who claimed to be the trustee of a trust was authorized to request legal representation on behalf of the trust, in connection with landowners' declaratory judgment action against the trust for a declaration that the trust and the individual had no interest in certain real property. Thus, the attorney retained by the individual had authority to file an answer on the trust's behalf in that action. The individual had made sworn statements in response to the landowners' discovery requests that he was the trust's trustee, and he testified at the hearing on the landowner's motion to show authority that he had been the trust's trustee since its inception. Furthermore, another court had issued an order declaring that the individual was the trustee since the trust's inception. | Does the recital of facts bind both the parties to the deed and their privies? | 017996.docx | LEGALEASE-00150622-LEGALEASE-00150623 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 21835 | Hoerner v. First Nat. Bank of Jackson, 254 So. 2d 754 | 185+158(2) | "Estoppel of this character arises from the conduct of a party, using the word "conduct" in its broadest meaning as including his spoken words, his positive acts, and his silence when there is a duty to speak, and proceeds on the consideration that the author of a misfortune shall not himself escape the consequences and cast the burden on another. Accordingly, it holds a person to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so, under all the circumstances of the case, has in good faith relied thereon and been misled to his injury.' Of like effect is 31 C.J.S. Estoppel s 59, page 236. Cf. Kelso v. Robinson, 172 Miss. 828, 161 So. 135, 137, where it is said that this "doctrine lies at the foundation of morals; it is based on equity and good conscience." See also Martin v. Hartley, 208 Miss. 112, 43 So.2d 875. The two positions taken by Stokes are likewise inconsistent . . . | Where there was nothing to indicate that approval required of guarantor for loans by bank to corporation, of which guarantor was 50% shareholder, was required to be in writing, testimony offered by bank that subsequent loans were made by it only after approval of guarantor had been obtained by telephone conversations was not inadmissible as constituting parol evidence varying terms of a contract required by law to be in writing but rather should have been permitted in evidence not only to portray procedure used in obtaining guarantor's approval of the loans but also to determine whether his approval was in fact obtained. | Does estoppel arise from silence with a duty to speak? | 017852.docx | LEGALEASE-00156989-LEGALEASE-00156990 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 21836 | Reiss v. Societe Centrale Du Groupe Des Assurances Nationales, 235 F.3d 738 | 170B+3785 | It seems to us that the question of Juliard's actual or apparent authority to act for Soc'r"t" and/or GAN S.A. in its dealings with Reiss is inextricably intertwined with the issue of FSIA jurisdiction. To find a significant nexus between Soc'r"t"s and/or GAN S.A.'s commercial activity in this country in its dealings with Reiss and Reiss' cause of action for a finder's fee requires a determination that Juliard had actual or apparent authority to act on behalf of Soc'r"t" and/or GAN S.A. The evidentiary material that sheds light on FSIA jurisdiction will also shed light on this matter. For now, it is sufficient to observe that the Amended Complaint does state a claim for breach of contract and in quantum meruit against Soc'r"t" and/or GAN S.A. It is well-settled that "[a]ctual authority is created by direct manifestations from the principal to the agent," Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1088 (2d Cir.1997) (internal quotation marks omitted), and apparent authority depends on some conduct by the principal, communicated to a third party, which reasonably gives the appearance that the agent has authority to conduct a particular transaction, see Ben"Reuven v. Kidder, Peabody & Co., 241 A.D.2d 504, 661 N.Y.S.2d 28, 29 (1997). As to apparent authority, a principal may be bound by a person's actions if the principal conducts himself in a manner that leads a third party to believe that the purported agent possesses authority. See Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243, 251 (2d Cir.1996). | Further fact development was required as to whether federal district court sitting in New York had personal jurisdiction in finder's fee case over two French corporations that were instrumentalities of French government, under commercial exception togeneral sovereign immunity provided for in Foreign Sovereign Immunities Act (FSIA), based upon claimed status of finder as agent for corporations in connection with the acquisition of two subsidiaries by an American corporation. 28 U.S.C.A. S 160 2 et seq. | How is actual authority created? | 042053.docx | LEGALEASE-00157866-LEGALEASE-00157867 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 | |
| 21837 | Columbia Asset Recovery Grp. v. Kelly, 177 Wash. App. 475 | 13+6 | Equitable subrogation is applied broadly " "to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " Tri"City Constr. Council v. Westfall, 127 Wash. App. 669, 675, 112 P.3d 558 (2005) (internal quotation marks omitted) (quoting In re Liquidation of Farmers & Merchs. State Bank of Nooksack, 175 Wash. 78, 85"86, 26 P.2d 631 (1933)). However, "there is no absolute right of equitable subrogation"; instead, it is "based upon the circumstances of each case and the demands of justice for an equitable result." Westfall, 127 Wash.App. at 674, 112 P.3d 558. Thus, the party seeking equitable subrogation must be in greater need of equity than its adversary. Livingston v. Shelton, 85 Wash.2d 615, 619, 537 P.2d 774 (1975). Once a party is subrogated, it "step[s] into the lender's shoes to the extent of the current obligation." Columbia Cmty. Bank v. Newman Park, LLC, 177 Wash.2d 566, 574, 304 P.3d 472 (2013). | Courts avoid considering moot cases in order to avoid the danger of an erroneous decision caused by the failure of parties, who no longer have an existing interest in the outcome of a case, to zealously advocate their position. | Is equitable subrogation an absolute right? | 05098.docx | LEGALEASE-00083707-LEGALEASE-00083708 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21838 | Anti-Defamation League of B'Nai B'rith, Pacific Southwest Regional Office v. F.C.C., 403 F.2d 169 | 372+1124 | Attacking a group presents a harder problem. Under the law of libel, defamation of a broad group or class is not usually actionable. And this kind of speech, detestable as some of its anti-Semitic and racist aspects may be, approaches the area of political and social commentary. To this extent it makes a stronger claim for First Amendment protection. I share the desire of the Commission and the court to foster free and full debate on political and social issues. For this reason, broadcasters should not be so burdened in this area that they would shy away from presenting controversial issues. | Record reflected substantial evidence, including fact that broadcasting company offered Anti-Defamation League free equal time to respond to paid broadcasts of commentator who allegedly made offensive comments concerning persons of the Jewish faith, in support of Federal Communications Commission's decision to renew license of the broadcasting company. U.S.C.A.Const. Amend. 1. | Can statements against large groups of people support an action for defamation? | 005098.docx | LEGALEASE-00117274-LEGALEASE-00117275 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 21839 | People v. Mau, 377 Ill. 199 | 181+31 | CommonlawforgeryisdefinedinBishop'sNewCriminalLaw,volume2,paragraph523,asfollows:"Forgery,attthecommonlaw,isthefalsemakingormaterial lyaltering,withintenttodefraudofanywritingwhich,ifgenuine,mightappearto ntlybeoflegalefficacyorthefoundationofalegalliability.***Reducedtothebri efestexpression,"Forgeryistheftaudulentmakingofafalsewriting,which,ifge nuine,wouldbeapparentlyofsomelegalefficacy."ButinparagraphS84thelea rnedauthor,underthetitle"Makingnone'sownnameafalsewritingtodefrau d,"says:"1.HownrEngland.-Cokesaysthatforgery"isproperlytakewhenthea ctisdoneinthenameofanot herperson."Itethasbolyaidownthefurtherdoctrine,whichseemstorestona nceintatjudication,andwhichthefEnglishcommissioner saffirmedintheirrep ort:D'&A1,that expressesafhallwdater."Andtheltemersihave,theofafalse... | An indictment, which alleged that city comptroller, who had custody and control of city's account books and records and whose duty it was upon presentment of special assessment bonds for payment to prepare in triplicate a special assessment disbursement sheet upon which mayor and treasurer relied in executing warrant and authorization for payment, fraudulently prepared a special assessment disbursement sheet, which falsely stated that certain bonds were owned by a fictitious person, by reason of which a warrant and authorization for payment to order of fictitious person were issued, charged the offense of "forgery" under statute. Smith-Hurd Stats. c. 38, S 277. | Doesfalsemakingfallwithintheambitofcommonlawforgery? | Forgery - Memo 12 - RM.docx | ROSS-000177646-ROSS-000177649 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 21840 | Orchards Assocs. v. Planning Bd. of Town of N. Salem, 114 A.D.2d 850 | 149E+689 | ThescopeofreviewforsubstantiveenvironmentaldeterminationsmadepursuanttoSEQRAisverylimited.Adeterminationastotheenvironmentalconsequencesofaproposedprojectmaybeannulledonlyifitisirrational,arbitraryandc apricious,orunsupportedbysubstantialevidence(see,Horns Internationl usinessMachines[App.Div.],493N.Y.S.2d184,AldrichvPattison,107A.D.2d2 58,486N.Y.S.2d23;TownofHempsteadv.Flacke,82A.D.2d183,441N.Y.S.2d4 87).Consequently,"thecourtshavealloweedStateorlocal"leadagencies"consi derablelatitudeintheexerciseofdiscretiononsubstantiveenvironmentalmat ters"(Horns InternationalBusinessMachines,supra,493N.Y.S.2dp.188).App lyingtheaforementionedstandardofreviewtotheinstantdetermination,wefi ndthattheplanningboard'sconclusionsconcerningtraffic,sewageanddraina geimpactsaresupportedbysubstantialevidenceintherecord.Foreexample,w hilethetrafficstudyseparatedndwhalfofpetitioner sstatesthanoroadimpro vementswouldberequiredbaccommodatethefirst300,000squarefeetofco mmercialdevelopment,anarrayotherexpertopinionsonthistopicweresub mittedtotheplanningboard,includingthereportofaconsultantretainedbyth eConcernedResidentswhichcriticizedpetitioners'trafficstudyandcametoac ontraryconclusiononthesuuesoftrafficcapacityandsafety.Likewise,thefindi ngsofoneconsultingfirmthattheproject'sproposedepticktankwastedisposal systemwoulddepositdangeruslevelsofnitratesinthearea'sgroundwater,al thoughinconsistentwithotherprofessionalopinionsonthematter,provid edasufficientbasisfortheplanningboard'sdeterminationthattheproposedsy stemwouldcreateseverehealthrisks.Moreover,therecordadequatelysuppo rtstheboard'sconclusionthattheFGEISdidnotcontainsatisfactoryprocedure stominimizetheseadversenimpactsorthefarmfuleffectsofexcesivestorew aterrunoff. | Scope of review of substantive environmental determinations made pursuant to the State Environmental Quality Review Act (McKinney's ECL S 8-0101 et seq.) is limited, with authority to annul determination as to environmental consequences of proposed project only if determination is irrational, arbitrary and capricious, or unsupported by substantial evidence. | Dothecourtsallowstateorlocalagenciesconsiderablelatitudeinthe exerciseofdiscretiononsubstantiveenvironmentalmatters? | Environmental Law - Memo 38 - AKA.doc | ROSS-000177650-ROSS-000177652 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21841 | Columbia Asset Recovery Grp. v. Kelly, 177 Wash. App. 475 | 13+6 | Equitable subrogation is applied broadly " "to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " Tri"City Constr. Council v. Westfall, 127 Wash. App. 669, 675, 112 P.3d 558 (2005) (internal quotation marks omitted) (quoting In re Liquidation of Farmers & Merchs. State Bank of Nooksack, 175 Wash. 78, 85"86, 26 P.2d 631 (1933)). However, "there is no absolute right of equitable subrogation"; instead, it is "based upon the circumstances of each case and the demands of justice for an equitable result." Westfall, 127 Wash.App. at 674, 112 P.3d 558. Thus, the party seeking equitable subrogation must be in greater need of equity than its adversary. Livingston v. Shelton, 85 Wash.2d 615, 619, 537 P.2d 774 (1975). Once a party is subrogated, it "step[s] into the lender's shoes to the extent of the current obligation." Columbia Cmty. Bank v. Newman Park, LLC, 177 Wash.2d 566, 574, 304 P.3d 472 (2013). | Courts avoid considering moot cases in order to avoid the danger of an erroneous decision caused by the failure of parties, who no longer have an existing interest in the outcome of a case, to zealously advocate their position. | Is there an absolute right of equitable subrogation? | Subrogation - Memo 163 - ANG C.docx | ROSS-003287990-ROSS-003287991 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 21842 | Am. Family Mut. Ins. Co. v. Nat'l Heritage Builders, 404 Ill. App. 3d 584 | 307A+622 | In urging reversal, American Family argues that, once it paid McGrath's claim under the Policy, it was equitably subrogated to his rights of action against the wrongdoers responsible for the loss to the extent of its payment to McGrath. It asserts that this equitable subrogation is independent of any rights under the Policy. Patrick Plunkett and Northern Heritage argue that, because the Policy provides for contractual subrogation, American Family is not entitled to any recovery under an equitable subrogation theory. | A motion to dismiss based on legal insufficiency of the pleadings tests the legal sufficiency of the complaint, whereas a motion to dismiss based on defects or defenses outside the pleading that defeat the claim admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint which defeats the claim. S.H.A. 735 ILCS 5/2-615, 2-619. | Is equitable subrogation dependent on the terms of the policy? | Subrogation - Memo 218 - RM C.docx | ROSS-003327862-ROSS-003327863 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21843 | Norfolk & Portsmouth Belt Line Railroad Company v. M/V MARLIN, 2009 WL 3363983 | 157+543.5 | Although these principles for calculating damages are instructive, a Court sitting in admiralty is a court of equity and has the authority to award what is fair and just in light of all the facts and circumstances of the case. See BP Exploration, 147 F.Supp.2d at 341 ("[I]t is clear that a federal court sitting in admiralty is not tied to any strict rules of the common law, but has the authority to make equitable decisions, considering all of the facts and circumstances of the individual case.")Gateway W. Ry. Co. v. Am. River Transp.Co.,887 F.Supp. 201, 202 (C.D.Ill.1995)("[A] court sitting in admiralty is privileged to exercise flexibility and award what is fair.").(The David Pratt, 7 F. Cas. 22, 24 (D.Me.1839) (No. 3597) ("A court of admiralty is ... a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction."). | Marine surveyor did not qualify to testify as an expert witness regarding the pre-incident value of the fendering system of railroad company's bridge, damaged after shipping company's bulk carrier boat allided into it. Marine surveyor opined that years of wear and marine borers caused such heavy deterioration to the piles of the fendering system that at the time of the allision, the piles were one-hundred percent depreciated and therefore, costs incurred by railroad company for its removal and reconstruction were not recoverable from the vessel's owner. However, while marine surveyor had extensive experience evaluating the nature and extent of damages and estimating the costs of repairs after an incident, he did not have any experience, training, or specialized knowledge in estimating the pre-incident value of a structure. | Does an admiralty court have the privilege to exercise flexibility? | 04993.docx | LEGALEASE-00078126-LEGALEASE-00078127 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | |
| 21844 | Landers v. Bollinger Amelia Repair, 403 Fed. Appx. 954 | 170B+3448 | "It is well-established that maritime law encompasses the gangway. It is also well-established that a vessel owner has a 'fundamental duty' to provide its crew members with a reasonably safe means of boarding and departing from the vessel." Florida Fuels v. Citgo Petroleum Corp., 6 F.3d 330, 332 (5th Cir. 1993) (internal citations omitted). "Under general maritime law, a vessel owner has 'an absolute nondelegable duty to provide a seaworthy vessel' to crew members." Id. (quoting Brister v. A.W.I. Inc., 946 F.2d 350, 355 (5th Cir. 1991)). This duty is irrespective of "fault or the use of due care.'" Id. (quoting Brister, 946 F.2d at 355). "The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel. The usual relationship for recovery has been referred to as three-cornered: master, i.e., owner or operator, vessel and shipworker." Daniels v. Florida Power & Light Co., 317 F.2d 41, 43 (5th Cir. 1963). For these reasons, "[i]t is well-settled [] that the doctrine of 'seaworthiness' is not applicable to a dock owner who does not occupy the position of owner or operator of the vessel." Florida Fuels, 6 F.3d at 332. Moreover, "[a]bsent a maritime status between the parties, a dock owner's duty to crew members of a vessel using the dock is defined by the application of state law, not maritime law." Id. | While notice of appeal specifically referred only to district court's order denying motion to reopen and not to underlying summary judgment ruling, the Court of Appeals would review summary judgment ruling, where order and ruling were intertwined, and both parties briefed the issues related to summary judgment ruling, such that appellee would not be prejudiced. | What is the fundamental duty of a vessels owner? | Admiralty Law - Memo 21 - JS.docx | ROSS-003300771-ROSS-003300773 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | |
| 21845 | Schuman v. Greenbelt Homes, 212 Md. App. 451 | 233+1377 | Schuman also argues that the smoke entering his unit amounted to a trespass. A trespass is "an intentional or negligent intrusion upon or to the possessory interest in property of another." Bittner v. Huth, 162 Md.App. 745, 752, 876 A.2d 157 (2005). Thus, there must be an interference with the owner's possession of the property. | Generally, in the absence of an actual or constructive eviction, a tenant will have a claim for damages caused by conduct by the landlord that strikes at the essence of its obligations under the lease. | What is a trespass? | Trespass - Memo 6 - RK.docx | ROSS-003285723-ROSS-003285724 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 21846 | Embee Advice Establishment v. Holtzmann, Wise & Shepard, 191 A.D.2d 194 | 134+910(4) | Order, Supreme Court, New York County (Harold Tompkins, J.), entered on or about May 7, 1992, which denied defendant-appellant's motion to dismiss the fourth and fifth causes of action of the complaint, unanimously affirmed, with costs. This is a motion addressed to the sufficiency of the pleadings. Modern pleading rules focus upon whether the pleader has a cause of action, not whether he has properly stated one, and in making that determination, accompanying affidavits may be referred to for the limited purpose of remedying any defects in the pleadings (Barrows v. Rozansky, 111 A.D.2d 105, 107, 489 N.Y.S.2d 481). In this case, when the allegations of the complaint and the affidavits submitted in opposition to defendant-appellant's motion to dismiss are read together, it is apparent that plaintiff has pleaded an adequate claim for relief pursuant to Judiciary Law " 487. To the extent that plaintiff's claims are indefinite, a bill of particulars and discovery are defendant's proper remedies (Daukas v. Shearson, Hammill & Co., 26 A.D.2d 526, 270 N.Y.S.2d 760). | Wife's express representations in settlement agreement precluded her claims that husband fraudulently misrepresented his finances to her. | What is the focus of modern pleading rules? | Pleading - Memo 45 - ANG.docx | ROSS-003284847-ROSS-003284848 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |
| 21847 | Sourcecorp v. Norcutt, 227 Ariz. 463 | 228+793(5) | Equitable subrogation is an equitable doctrine, the purpose of which is to prevent injustice. Mosher, 45 Ariz. at 468, 46 P.2d at 112. It is intended "to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it" and to prevent a windfall at the expense of another. Rowley Plastering Co. v. Marvin Gardens Dev. Corp., 180 Ariz. 212, 214, 883 P.2d 449, 451 (App.1994) (citing Kilpatrick v. Superior Court, 105 Ariz. 413, 422, 466 P.2d 18, 27 (1970)). Application of the doctrine may be denied, however, where intervening rights would be prejudiced by the subrogation. Peterman"Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank of Ariz., 2 Ariz.App. 321, 326, 408 P.2d 841, 846 (1965). "While it was originally limited to transactions between principals and sureties, it now has a very liberal application, its principle being modified to meet the circumstances of cases as they arise." Mosher, 45 Ariz. at 468, 46 P.2d at 112. "[T]he modern tendency is to extend its use rather than to restrict it." Id. The doctrine of equitable subrogation "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." Rowley, 180 Ariz. at 214, 883 P.2d at 451 (quoting Kilpatrick, 105 Ariz. at 423, 466 P.2d at 28) | A judgment creditor holding a lien upon real property may seek to satisfy the judgment from the property even if the debtor transfers the property to a third party. A.R.S. S 12-1553(2). | Does equitable subrogation compel the ultimate payment of a debt and prevent a windfall at the expense of another? | Subrogation - Memo 30 - VP.docx | ROSS-003283759-ROSS-003283760 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21848 | 1701. Rest. on Second v. Armato Properties, 83 A.D.3d 526 | 233+832 | "Ordinarily, a party cannot be compelled to litigate and, absent special circumstances, leave to discontinue a cause of action should be granted [unless] the party opposing the motion can demonstrate prejudice if the discontinuance is granted" (see St. James Plaza v. Notey, 166 A.D.2d 439, 560 N.Y.S.2d 670 [1990] ). Under the circumstances of this case, Supreme Court correctly denied landlord's motion. Landlord sought to discontinue its counterclaim for declaratory judgment in Supreme Court and then pursue similar relief in Civil Court, notwithstanding that tenant had cross-moved for leave to amend its complaint, which should be freely granted (CPLR 3025[b] ), seeking to add a cause of action for declaratory relief related to the same subject matter. Moreover considerable discovery had already occurred in relation to landlord's counterclaim. Thus, it would have been inequitable to allow landlord to discontinue its counterclaim at this point in the litigation (see St. James Plaza v. Notey at 440, 560 N.Y.S.2d 670). | Lease extension and modification agreement unambiguously permitted tenant to renew lease, where extension agreement stated that other than as modified by the document itself, the terms of earlier lease remained "in full force and effect," renewal option had been available to tenant under terms of earlier lease, and extension agreement had clearly not modified the option. | Can a party be compelled to litigate and leave to discontinue a cause of action granted absent special circumstances? | Pretrial Procedure - Memo # 999 - C - SK.docx | ROSS-003314546-ROSS-003314547 | Condensed, SA, Sub | 0.64 | 0 | 1 | | 1 | 1 |
| 21849 | Bradley v. Bradley, 206 N.C. 249 | 30+3653 | A voluntary dismissal can be considered a "proceeding" allowing relief under Rule 60(b). Carter v. Clowers, 102 N.C.App. 247, 252-53, 401 S.E.2d 662, 665 (1991). Rule 60(b)(4) allows for relief from a judgment, order, or proceeding when it is "void." N.C. Gen.Stat. " 1A-1, Rule 60(b)(4) (2009). "In the context of Rule 60(b)(4), a judgment is void 'only when the issuing court has no jurisdiction over the parties or subject matter in question or has no authority to render the judgment entered.' " Chandak v. Electronic Interconnect Corp., 144 App. 258, 262, 550 S.E.2d 25, 28 (2001) (quoting Burton v. Blanton, 107App. 615, 616, 421 S.E.2d 381, 382 (1992)) (emphasis added). | When properly on appeal, orders concerning the appointment of a receiver are reviewed under an abuse of discretion standard. | "Can a voluntary dismissal be considered a ""proceeding"" for purposes of rule allowing relief?" | Pretrial Procedure - Memo # 2315 - C - NS.docx | ROSS-003300927-ROSS-003300928 | Condensed, SA | 0.82 | 0 | 1 | | 1 | |
| 21850 | Berry v. Nat'l Med. Servs., 292 Kan. 917 | 30+3727 | When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, this court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably drawn from the facts alleged in the petition. Using those facts and inferences, we then decide whether the plaintiff has stated a claim upon which relief can be granted. Because Kansas is a notice-pleading state, the petition is not intended to govern the entire course of the case. Rector v. Tatham, 287 Kan. 230, 232, 196 P.3d 364 (2008). Berry asserts the following, which we accept as true for our analysis. | The existence of a legal duty is a question of law over which the appellate court exercises unlimited review. | Does a petition govern the entire course of the case under notice pleading? | 027067.docx | LEGALEASE-00133062-LEGALEASE-00133063 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 21851 | Point Intrepid v. Farley, 215 N.C. App. 82 | 106+26(3) | Generally, a voluntary dismissal, even without prejudice, "terminates a case and precludes the possibility of an appeal." Dodd v. Steele, 114 N.C.App. 632, 636, 442 S.E.2d 363, 366 (citing Lloyd v. Carnation Co., 61 N.C.App. 381, 384, 301 S.E.2d 414, 416 (1983)), disc. rev. denied, 337 N.C. 691, 448 S.E.2d 521 (1994). However, a voluntary dismissal of claims does not necessarily act as a bar against other related but independent claims; as our state's Supreme Court has stated, "[d]ismissal does not deprive the court of jurisdiction to consider collateral issues such as sanctions that require consideration after the action has been terminated."Bryson v. Sullivan, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992); see Dodd, 114 N.C.App. at 634, 442 S.E.2d at 365 ("Furthermore, neither the dismissal of a case nor the filing of an appeal deprives the trial court of jurisdiction to hear Rule 11 motions."); VSD Commc'ns, Inc. v. Lone Wolf Publ'g Group, Inc., 124 N.C.App. 642, 644, 478 S.E.2d 214, 216 (1996) (noting that after a voluntary dismissal, motions for attorneys' fees "have a life of their own"). | "Abuse of discretion" occurs where the court's ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision; a trial court does not reach a reasoned decision, and thus abuses its discretion, when its findings of fact are not supported by competent evidence. | "Does a voluntary dismissal, even without prejudice, terminate a case and precludes the possibility of an appeal?" | 027936.docx | LEGALEASE-00132937-LEGALEASE-00132938 | Condensed, SA | 0.71 | 0 | 1 | | 1 | |
| 21852 | Anderson v. State, 21 Okla. Crim. 135 | 268+636 | In Payne v. State, 10 Okl. Cr. 314, 136 Pac. 201, it is held: "An application for a continuance, for the term, on the ground of the absence of leading counsel, is properly denied, where the defendant is duly represented by his other counsel." In the body of the opinion it is said: "To reverse the case on the ground here set up with reference to the absence of counsel would be to place it within the power of counsel to control the running of the courts and the disposition of cases." See, also: Vance v. Territory, 3 Okl. Cr. 208, 105 Pac. 307; Snyder Co- op. Ass'n v. Brown et al., 172 Pac. 789. | A county court is without jurisdiction to try municipal offenses. | "Will an application for a continuance on the ground of the absence of leading counsel be denied, where the defendant is duly represented by his other counsel?" | Pretrial Procedure - Memo # 3460 - C - KS.docx | ROSS-003291691-ROSS-003291692 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 21853 | Duke Energy of Indiana v. City of Franklin, 69 N.E.3d 471 | 212+1078 | [10] It is settled law that "in a trespass claim a plaintiff must prove that he was in possession of the land and that the defendant entered the land without right."Aberdeen Apts. v. Cary Campbell Realty All., Inc., 820 N.E.2d 158, 164 (Ind.Ct.App.2005) (citation and quotation marks omitted), trans. denied. "We are also mindful of the traditional rule that an action for trespass to real estate "cannot be maintained for an invasion of a right of way or easement." " Ind. Mich. Power Co. v. Runge, 717 N.E.2d 216, 227 (Ind.Ct.App.1999) (quoting State ex rel. Green v. Gibson Circuit Ct., 246 Ind. 446, 449, 206 N.E.2d 135, 137 (1965)). "This rule is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of a chattel or land." " Id. (quoting Green, 246 Ind. at 449, 206 N.E.2d at 137). Duke does not dispute that its interest in the parcels at issue is non-possessory, nor does it argue that cases such as Indiana Michigan Power and Green are no longer good law. Whatever defects in the City's title may exist, Duke may not exclude the City (or any other entity) from the intersection or challenge the construction of the intersection on that basis. | The grant or denial of a preliminary injunction rests within the sound discretion of the trial court, and appellate review is limited to whether there was a clear abuse of that discretion. | Is the plaintiff required to prove the defendant entered the land without right for a claim of trespass? | 047362.docx | LEGALEASE-00135230-LEGALEASE-00135231 | Condensed, SA, Sub | 0.85 | 0 | 1 | | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21854 | Roseman v. Mahony, 86 A.D. 377 | 30=4459 | By section 51 of the negotiable instruments law (chapter 612, p. 727, Laws 1897) it is provided that "an antecedent or pre-existing debt constitutes value." But the holder of the note must give up the debt, either wholly or qualifiedly, in order to constitute consideration. He must part with something; if not with the debt, at least with the right to sue upon it for some determinate period. The taking of the debtor's note raises no presumption that it is in payment of the debt, and there was here no circumstance or suggestion that the plaintiff extended the time for payment, or did any other act which would have prevented him from surrendering the note and resorting to the original indebtedness. He tried the case on the issue solely of a money consideration given at the time of the taking of the note, without a pretense on the part of any one that it was taken in payment of a debt, and he cannot be permitted to disturb a just result by predicating error upon a refusal to charge upon an issue not embraced within the evidence. Kane v. N. Y., N. H. & H. R. Co., 132 N. Y. 160, 166, 30 N. E. 256. | Although an instruction has been erroneously refused, if its rejection has produced no injury to the party asking it, the judgment will not be reversed therefor. | When does a pre-existing debt constitute a consideration? | Bills and Notes- Memo 311-PR.docx | ROSS-003317449-ROSS-003317450 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 21855 | State v. Mitchell, 106 Ariz. 492 | 350H+531 | In State v. Hutton, 87 Ariz. 176, 349 P.2d 187, the defendant was charged with burglary and grand theft. The entering into the building with the "intent to commit grand (theft) or petty theft, or any felony," constitutes burglary. It is not necessary to prove that he actually committed the theft or the other crimes enumerated. Hence, the actual theft could be eliminated, and the burglary would still stand, and the burglary could be eliminated and theft would still stand. In deciding this question we said:"Defendant says that this section protects him from double punishment because the burglary and theft were committed in one transaction. We cannot agree. The above statute covers a situation where the same act is punishable in different ways under different sections of the law. Under such a situation, he can be punished for only one offense. Burglary and theft are two separate and distinct acts. To constitute burglary it is not necessary that theft be committed  In this case, it was only necessary that the breaking and entering be made with the intent to commit grand theft. To consummate theft, it is essential that after the burglary is completed, the additional act of actually stealing be committed. We have had occasion to construe the aforementioned section of the statute and held in effect that for the section to operate to prevent double punishment, the two alleged crimes must have identical components. State v. Westbrook, 79 Ariz. 116, 285 P.2d 161, 53 A.L.R.2d 619. The elements constituting burglary and theft are entirely different. One may be committed without the other." | Where defendant was charged with attempted kidnapping while armed with a gun and assault with a deadly weapon, to wit, a gun, there would have been no evidence of attempted kidnap while armed with a gun without assault with gun, and evidence necessary to convict on attempted kidnapping charge could not be withdrawn from assault charge without having complete lack of proof of latter, defendant could not properly be sentenced under both counts, and it was necessary to vacate conviction of assault with deadly weapon. A.R.S. S 13-1641. | Are burglary and theft separate acts? | Burglary - Memo 164 - JS.docx | ROSS-003290203-ROSS-003290205 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 21856 | State v. Steed, 357 P.3d 547 | 13=6 | absence of a justiciable controversyBecause Ms. Steed has conceded that her claim is technically moot, we now consider whether her challenge to the freeze order meets the exception to our mootness doctrine. "An argument is moot [i]f the requested judicial relief cannot affect the rights of the litigants." In other words, an appeal is moot if the controversy is eliminated such that it renders the relief "requested impossible or of no legal effect."Once a court has determined that there is no jurisdiction due to the absence of a justiciable controversy, "its immediate duty is to dismiss the action." | Freeze orders under the Asset Preservation Statute are not inherently short in duration so as to likely evade review, and therefore, a claim challenging such an order does not satisfy the exception to the mootness doctrine. West's U.C.A. S 77-38a-601. | "Once a court has determined that there is no jurisdiction due to the absence of a justiciable controversy, is its immediate duty to dismiss the action?" | Pretrial Procedure - DHA.docx | ROSS-003288917-ROSS-003288918 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 21857 | Mainor v. Jones, 190 Ohio App. 3d 300 | 228=379(1) | "[O]nce a party has answered or appeared a default judgment is improper. See Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hospital Assoc. (1986), 28 Ohio St.3d 118], 28 OBR 216], 502 N.E.2d 599. [D]ismissals for procedural irregularities are not highly favored and dismissal for nonappearance at a pre-trial conference should be used sparingly and only in extreme situations. Willis v. RCA Corp. (1983), 12 Ohio App.3d 1], 12 OBR 57], 465 N.E.2d 924." Untch v. N. Valley Contrs., Stark App. No. 2008"CA"00237, 2009-Ohio-3271, 2009 WL 1911950. | To prevail on motion for relief from judgment, movant must demonstrate that: (1) he has a meritorious defense or claim to present if relief is granted, (2) he is entitled to relief under one of the grounds stated in rule governing relief from judgment, and (3) motion for relief is made within a reasonable time. Rules Civ.Proc., Rule 60(B). | Is dismissal for procedural irregularities not highly favored? | 033479.docx | LEGALEASE-00140409-LEGALEASE-00140410 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 21858 | Morss v. Palmer, 15 Pa. 51 | 307A+74 | H. B. Wright, for defendant. caption and certificate of the justice show all that is necessary to admit the depositions. A general certificate is sufficient. The justice need not certify at the conclusion of each. A witness may not subscribe his deposition: Moulson v. Hargrave, 1 Ser. & R. 201. A commission, to be admissible, must show the return of the commissioner as to the manner of its execution: Scott v. Horn. 9 Barr 409. Ibid., ROGERS, J.: "They should return that the commissioner has executed, and the manner of executing it ought not to be left to conjecture." In Nussear v. Arnold, 13 Ser. & R. 323, ruled a sufficient execution, if the commissioners annex their names to the deposition, and the envelope is sealed. To same point, see Balis v. Cochran, 2 Johns. 417. | Several depositions may be included in one certificate, if it is sufficiently formal. It is not necessary that a separate certificate should be appended to each deposition. | When admissible, should a commission required to show the return of the commissioner as to the manner of its execution? | Pretrial Procedure - Memo # 5725 - C - DHA.docx | ROSS-003288053-ROSS-003288054 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 21859 | Mainor v. Jones, 190 Ohio App. 3d 300 | 228=379(1) | "[O]nce a party has answered or appeared a default judgment is improper. See Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hospital Assoc. (1986), 28 Ohio St.3d 118], 28 OBR 216], 502 N.E.2d 599. [D]ismissals for procedural irregularities are not highly favored and dismissal for nonappearance at a pre-trial conference should be used sparingly and only in extreme situations. Willis v. RCA Corp. (1983), 12 Ohio App.3d 1], 12 OBR 57], 465 N.E.2d 924." Untch v. N. Valley Contrs., Stark App. No. 2008"CA"00237, 2009-Ohio-3271, 2009 WL 1911950. | To prevail on motion for relief from judgment, movant must demonstrate that: (1) he has a meritorious defense or claim to present if relief is granted, (2) he is entitled to relief under one of the grounds stated in rule governing relief from judgment, and (3) motion for relief is made within a reasonable time. Rules Civ.Proc., Rule 60(B). | Should the dismissal for nonappearance at a pre-trial conference be used only in extreme situations? | 033480.docx | LEGALEASE-00140976-LEGALEASE-00140977 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21860 | Jimenez v. Ortega, 179 So. 3d 483 | 30+3202 | "It is well-settled law "that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution [he] has subverted to achieve [his] ends.""Metro. Dade Cty. v. Martinsen, 736 So.2d 794, 795 (Fla. 3d DCA 1999) (quoting Hanono v. Murphy, 723 So.2d 892, 895 (Fla. 3d DCA 1998)). Here, the trial judge was shocked about the extent and number of lies that Ortega had told, finding that they went on and on and on. Nevertheless, instead of sanctioning Ortega's misconduct, the trial court did nothing. This was an abuse of discretion. | While an appellate court reviews a trial court's dismissal sanction for abuse of discretion, a more stringent abuse of discretion standard is appropriate because dismissal is an extreme remedy. | Should the party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding not be permitted to continue to employ the very institution he has subverted to achieve his ends? | 034037.docx | LEGALEASE-00145107-LEGALEASE-00145108 | Condensed, SA | 0.69 | 0 | 1 | | | |
| 21861 | In re Commitment of J.M., 62 N.E.3d 1208 | 257A+40.6(12) | [4] J.M. appeals her involuntary commitment at Northeastern. However, we first acknowledge Northeastern's response that, as J.M.'s ninety-day commitment has expired, her appeal is moot. Northeastern is correct. "When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." In re J.B., 766 N.E.2d 795, 798 (Ind.Ct.App.2002) (citing In re Lawrance, 579 N.E.2d 32, 37 (Ind.1991)). | Involuntary commitment of patient was warranted since reasonable fact-finder could have concluded that patient presented a substantial risk to herself or others; patient's family described patient as delusional and hallucinatory, that patient had made threats against them, and that they were fearful of patient, patient had been belligerent and threatening to staff, such that she had to be restrained and secluded on various occasions, and doctor stated that patient had no clear shelter or ability to care for herself and that patient had not been willing to take necessary medications. West's A.I.C. 12-7-2-53, 12-26-2-5(e)(1). | Is a case deemed moot and dismissed when court is unable to render effective relief to party? | 035288.docx | LEGALEASE-00145531-LEGALEASE-00145532 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 21862 | Piser v. State Farm Mut. Auto. Ins. Co., 405 Ill. App. 3d 341 | 157+370(1) | "The phrase "affirmative matter" encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 115, 189 Ill.Dec. 31, 619 N.E.2d 732, 735 (1993). An " '[a]ffirmative matter" is something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint.'" Golden v. Mullen, 295 Ill.App.3d 865, 869, 230 Ill.Dec. 256, 693 N.E.2d 385, 389 (1997), citing Fancher v. Central Illinois Public Service Co., 279 Ill.App.3d 530, 534, 216 Ill.Dec. 55, 664 N.E.2d 692, 695 (1996). "The trial court must construe the motion and supporting documents in the light most favorable to the nonmovant." Tolan & Son, Inc. v. KLLM Architects, Inc., 308 Ill.App.3d 18, 24, 241 Ill.Dec. 427, 719 N.E.2d 288, 293 (1999). We review the trial court's rulings on section 2"619 motions de novo. DeLuna, 223 Ill.2d at 59, 306 Ill.Dec. 136, 857 N.E.2d at 234. | Basic rules of evidence require that a party must lay the proper foundation for the introduction of a document into evidence. | Would an affirmative matter for purpose of involuntary dismissal refute crucial conclusions of law or material fact contained in or inferred from the complaint? | Pretrial Procedure - Memo # 7547 - C - SHS.docx | ROSS-003286291-ROSS-003286292 | Condensed, SA | 0.88 | 0 | 1 | | 0 | 1 |
| 21863 | Brock v. Bowein, 99 So. 3d 580 | 222+13 | Well-established principles should guide the circuit court in its consideration of a motion to dismiss for failure to state a cause of action. "When ruling on a motion to dismiss for failure to state a cause of action, the trial court must accept the material allegations as true and is bound to a consideration of the allegations found within the four corners of the complaint." Murphy v. Bay Colony Prop. Owners Ass'n, 12 So.3d 924, 926 (Fla. 2d DCA 2009). "[T]he purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not to determine issues of fact." Curtis v. Henderson, 777 So.2d 1017, 1018 (Fla. 2d DCA 2000). "[T]he court is not permitted to speculate as to whether the allegations will ultimately be proven." Maciejewski v. Holland, 441 So.2d 703, 704 (Fla. 2d DCA 1983). "[A] motion to dismiss should not be granted on the basis of an affirmative defense ... unless that defense is established on the face of the pleadings."Patterson v. McNeel, 704 So.2d 1070, 1072 (Fla. 2d DCA 1997). "A motion to dismiss is not a substitute for a motion for summary judgment." Al'Hakim, 787 So.2d at 941; see also Cowder v. Hillsborough Cnty., 715 So.2d 954, 955 (Fla. 2d DCA 1998) ("The court may not transform a motion to dismiss into a motion for summary judgment."). | Complaint by clerk of circuit court was sufficient to state a claim for interpleader in action against school board and landowner, which was defendant in school board's "quick take" eminent domain action, even if clerk failed to qualify as an innocent stakeholder; clerk had only to allege that he was or could be exposed to double or multiple liability based on more than one claim to the accrued interest held in the court registry, and it was unnecessary for clerk to allege the common law requirements for strict interpleader. | Can a motion to dismiss be granted on the basis of an affirmative defense unless that defense is established on the face of the pleadings? | 035773.docx | LEGALEASE-00148184-LEGALEASE-00148185 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 21864 | B.R. v. Vaughan, 427 N.J. Super. 487 | 198H+750 | Upon a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is "searched to determine if a cause of action can be found within its four corners." Van Natta Mechanical Corp. v. Di Staulo, 277 N.J.Super. 175, 180, 649 A.2d 399 (App.Div.1994). Where a plaintiff fails to allege facts sufficient to support a claim for relief, the complaint should be dismissed. Camden County Energy Recovery Assoc., L.P. v. N.J. Dep't of Envtl. Prot., 320 N.J.Super. 59, 64, 726 A.2d 968 (App.Div.1999), aff'd o.b., 170 N.J. 246, 786 A.2d 105 (2001). | State and its agencies had no duty to notify long-term partner of community health center client that client was infected with the human immunodeficiency virus (HIV) or that she was at risk of contracting HIV from client; any such disclosure would have violated laws regarding confidentiality of acquired immune deficiency syndrome (AIDS) and HIV infection records and information since client gave no written authorization to agencies allowing for disclosure of his HIV status. N.J.S.A. 26:5C-7, 26:5C-8. | "Where a plaintiff fails to allege facts sufficient to support a claim for relief, should the complaint be dismissed?" | Pretrial Procedure - Memo # 8448 - C - NS_59147.docx | ROSS-003084433-ROSS-003084434 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 21865 | Donovan v. Florida Peninsula Ins. Co., 147 So. 3d 566 | 241+6(1) | The court also dismissed Donovan's suit based on her alleged failure to comply with a notice of loss provision in the contract. "The trial court cannot go beyond the four corners of the complaint in deciding the merits of a motion to dismiss. When confronted with a motion to dismiss, the court is required to take the allegations of the complaint as true and to decide only questions of law." Rohatynsky v. Kalogiannis, 763 So.2d 1270, 1272 (Fla. 4th DCA 2000) (citations omitted). However, "[a] trial court is not bound by the four corners of the complaint where the facts are undisputed and the motion to dismiss raises only a pure question of law." Metro. Cas. Ins. Co. v. Tepper, 969 So.2d 403, 405 (Fla. 5th DCA 2007) (citation omitted). | Statute requiring an action for breach of a property insurance contract to be brought within five years of the date of loss, rather than within five years of the date the cause of action accrued, could not be applied retroactively to insured whose breach of contract cause of action against property insurer accrued before statute's effective date; statute did not contain evidence of legislative intent for retroactive application, either on its face or in its legislative history, and statute did not contain a savings clause allowing a period of time for those with existing causes of action to file suit, such as would indicate legislative intent for retroactive application. West's F.S.A. § 95.11(2)(e). | Can the trial court go beyond the four corners of the complaint in deciding the merits of a motion to dismiss? | Pretrial Procedure - Memo # 8694 - C - KS_59732.docx | ROSS-003285791-ROSS-003285792 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 21866 | Dare v. State on Behalf of Dep't of Law & Pub. Safety, Div. of New Jersey Racing Comm'n, 159 N.J. Super. 533 | 92+4292 | Regulations imposing strict liability regardless of individual knowledge or fault have been upheld in a variety of situations. In United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), reh'g den. 320 U.S. 815, 64 S.Ct. 367, 88 L.Ed. 492 (1943), it was held that conscious fraud was not a necessary element in a prosecution for shipping misbranded or adulterated articles in interstate commerce in violation of the Federal Food, Drug and Cosmetic Act. In a prosecution for selling adulterated milk it was not necessary to show that the seller had knowledge that the milk was below standard. Vandegrift v. Meihle, 66 N.J.L. 92, 49 A. 16 (Sup.Ct. 1901). | Racing Commission rules requiring all persons charged with care of horse to protect it from administration of drugs and declaring that trainer is responsible for condition of horse places absolute responsibility upon trainer when horse has been administered drug, the rules are consonant with statutory purposes and within authority delegated to Commission and suspension of license of trainer whose horse was found to have been administered drug did not deny due process, even though it was not found that trainer either directly administered drug, knew of administration of it or was negligent in his care of horse, thus permitting the drugging. N.J.S.A. 5:5-22 to 92, 30, 33, 71. | "In a prosecution for adulterated milk, s it necessary to show that the seller had knowledge that the milk was below the standard?" | Adulteration - Memo 40-_1HiQHTp6fURJ1hj29u-q90yeIXnTuDInIu.doc | ROSS-000000121-ROSS-000000122 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21867 | Brown v. Krause, 30 Ill. App. 360 | 30+3511 | Bigelow on Fraud, p. 421, Ed. 1888: "In case real property has been conveyed to the injured party, it is not enough to tender back the conveyance, for that would not restore the title to the former owner; the grantee should tender a reconveyance. A mere offer in the case of an exchange of lands to 'trade back' would, therefore, be insufficient." The learned author, on the same page, holds that the same rule applies to infants and married women. | A finding or decree supported by some competent evidence, or substantially supported by the evidence, will not be disturbed. | "Where land has been conveyed in exchange for personal property, and the grantee seeks to repudiate the bargain for fraud, is a mere offer to trade back without tendering a re-conveyance a rescission?" | 018410.docx | LEGALEASE-00155078-LEGALEASE-00155079 | Condensed, SA, Sub | 0.72 | | 1 | | 1 | 1 |
| 21868 | McDonald's Restaurants of Florida v. Doe, 87 So. 3d 791 | 73+17 | We recognize that discovery of irrelevant materials does not necessarily cause irreparable harm. See Vreeland, 973 So.2d at 671. Here, however, the orders are overbroad, void of solicitude for trade secrets, and lack a showing of need by Ms. Doe. Our concern is heightened by Ms. Doe's apparent theory that a franchisor is a guarantor or insurer of every act of a franchisee or its management company. See Mobil Oil Corp. v. Bransford, 648 So.2d 119, 120 (Fla.1995) (explaining that franchisor creates "an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee"); Madison v. Hollywood Subs, Inc., 997 So.2d 1270, 1271 (Fla. 4th DCA 2009) (holding that where day-to-day operations were within sole control of the franchisee no agency relationship existed with franchisor). "[I]t is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship." Hickman v. Barclay's Int'l Realty, Inc., 5 So.3d 804, 806 (Fla. 4th DCA 2009) (citing Parker v. Domino's Pizza, Inc., 629 So.2d 1026, 1027 (Fla. 4th DCA 1993)). | In premises liability action brought by employee of management company for fast food restaurant franchisee, trial court's discovery order, directing franchisor to produce trade secrets documents, departed from the essential requirements of law, such that certiorari review was appropriate; trial court ordered production of potential trade secrets information without conducting an in camera review of all the items, and apparently, the franchisee did not even possess some of these items, and they might not be relevant. | Does the right of control determine an agency relationship? | Principal and Agent - Memo 450 - RK_63570.docx | ROSS-003294701-ROSS-003294702 | Condensed, SA, Sub | 0.58 | 0 | 1 | | 1 | 1 |
| 21869 | Williams v. Neely, 134 F. 1 | 83E+735 | The basis of waiver is estoppel, and where there is no estoppel there is no waiver. | A sound reason why the holder of a note ought not in equity and good conscience to recover its face value is a good equitable defense, though it constitutes neither a counterclaim or offset nor an affirmative cause of action. | Is there no waiver where there is no estoppel? | Estoppel - Memo 230 - C - CSS.docx | LEGALEASE-00050593-LEGALEASE-00050594 | Condensed, SA, Sub | 0.63 | 0 | 1 | | 1 | 1 |
| 21870 | United States v. Robinson, 744 F.3d 293 | 350H+676 | A "waiver is the intentional relinquishment or abandonment of a known right." Wood v. Milyard, ""U.S. """, 132 S.Ct. 1826, 1835, 182 L.Ed.2d 733 (2012) (quotation marks omitted). Waiver is to be distinguished from "forfeiture," which is "the failure to make the timely assertion of a right." Kontrick v. Ryan, 540 U.S. 443, 458, n. 13, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Courts may review a forfeited claim for plain error. United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).2 But when a claim is waived, it is not reviewable on appeal, even for plain error. Id. Rather, a valid waiver means that there was "no error at all." United States v. Keeter, 130 F.3d 297, 300 (7th Cir.1997). The case at hand is one of waiver, not forfeiture. "A party who identifies an issue, and then explicitly withdraws it, has waived the issue." United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir.2002). | Sentencing court's treatment of prior marijuana possession conviction of defendant convicted of conspiracy to distribute cocaine as yielding a prior sentence, rather than as relevant conduct, for purpose of calculating defendant's criminal history score, was warranted, even though the marijuana possession conviction and sentence occurred during the time frame of the conspiracy, where the marijuana possession conviction was for conduct unrelated to the conspiracy offenses. U.S.S.G. SS 1B1.3, 4A1.2, 18 U.S.C.A. | "Has a party who identified an issue, and then explicitly withdraws it, waived the issue?" | 018112.docx | LEGALEASE-00161259-LEGALEASE-00161260 | Condensed, SA, Sub | 0.44 | 0 | 1 | | 1 | 1 |
| 21871 | Nugent v. Unum Life Ins. Co. of Am., 752 F. Supp. 2d 46 | 170A+1104 | The D.C. Court of Appeals has held that all contracts contain an implied duty of good faith and fair dealing, which means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Allworth v. Howard Univ., 890 A.2d 194, 201 (D.C.2006) (quoting Hais v. Smith, 547 A.2d 986, 987 (D.C.1988)). "If the party to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." Id. (quoting Hais, 547 A.2d at 987'88). Such a cause of action sounds in contract, not tort.Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action.. | Motions to strike matter from a pleading are generally disfavored, and requests to strike should usually be denied unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation, or unless it can be shown that no evidence in support of the allegation would be admissible. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A. | "If the party to a contract evades the spirit of the contract, can he or she be liable for breach of the implied covenant of good faith and fair dealing?" | Action - Memo 952 - C _1ChbqS7tRmTOJx1RW EqHarN8r3Akbx i.docx | ROSS-000000031-ROSS-000000032 | Condensed, SA, Sub | 0.6 | 0 | 1 | | 1 | 1 |
| 21872 | Piser v. State Farm Mut. Auto. Ins. Co., 405 Ill. App. 3d 341 | 157+370(1) | The phrase "affirmative matter" encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 115, 189 Ill.Dec. 31, 619 N.E.2d 732, 735 (1993). An " '[a]ffirmative matter" is something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." Golden v. Mullen, 295 Ill.App.3d 865, 869, 230 Ill.Dec. 256, 693 N.E.2d 385, 389 (1997), citing Fancher v. Central Illinois Public Service Co., 279 Ill.App.3d 530, 534, 216 Ill.Dec. 55, 664 N.E.2d 692, 695 (1996). "The trial court must construe the motion and supporting documents in the light most favorable to the nonmovant." Tolan & Son, Inc. v. KLLM Architects, Inc., 308 Ill.App.3d 18, 24, 241 Ill.Dec. 427, 719 N.E.2d 288, 293 (1999). We review the trial court's rulings on section 2'619 motions de novo. DeLuna, 223 Ill.2d at 59, 306 Ill.Dec. 136, 857 N.E.2d at 236. | Basic rules of evidence require that a party must lay the proper foundation for the introduction of a document into evidence. | Will an affirmative matter refute crucial conclusions of law or material fact contained in or inferred from the complaint? | 10156.docx | LEGALEASE-00095654-LEGALEASE-00095655 | Condensed, SA | 0.88 | 0 | 1 | | 1 | 0 |
| 21873 | Calibraro v. Bd. of Trustees of Buffalo Grove Firefighters' Pension Fund, 367 Ill. App. 3d 259 | 361+1217 | A section 2-619 motion to dismiss admits the legal sufficiency of the complaint. 735 ILCS 5/2-619 (West 2012). The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. In re Estate of Gallagher, 383 Ill.App.3d 901, 903, 322 Ill.Dec. 330, 890 N.E.2d 1249 (2008). Although a section 2-619 motion to dismiss admits the legal sufficiency of a complaint, it raises defects, defenses, or some other affirmative matter appearing on the face of the complaint or established by external submissions, that defeat the plaintiff's claim. Ball v. County of Cook, 385 Ill.App.3d 103, 107, 324 Ill.Dec. 548, 896 N.E.2d 334 (2008). | When two statutes conflict, more specific statute controls that which is more general. | "Can a motion to dismiss raise defects, defenses, or other affirmative matter appearing on the face of the complaint or established by external submissions that defeat the plaintiff's claim?" | 09712.docx | LEGALEASE-00096124-LEGALEASE-00096125 | Condensed, SA | 0.88 | 0 | 1 | | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 21874 | Biggs v. N. Carolina Home Ins. Co., 88 N.C. 141 | 217>3051 | When one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract. Under any other rule, every principal would be at the mercy of his agent, however carefully he might limit his authority. It is true the power and authority of an agent may always be safely judged of by the nature of his business, and will be deemed to be at least equal to the scope of his duties. | A provision in a fire policy, rendering it void if the title to the property insured be changed in any way other than by succession by reason of death, or if the policy be assigned without written assent of the company indorsed thereon, is reasonable and just; but it does not apply to a stock of goods disposed of in the ordinary course of trade, unless the sale be in mass or a new member be admitted into the firm. | "Is the principal at the mercy of his agent, however carefully he might limit his authority?" | 041657.docx | LEGALEASE-00155710-LEGALEASE-00155711 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 21875 | Eisler v. United States, 170 F.2d 273 | 393>232(2) | Although he is an alien, appellant stood before the Committee in much the same position as does any citizen of the United States. On cease an law fully ern sue an dresides in his country he becomes invested with the rights except those incid ent altocit izen ship, guaranteed by the Constitution to all people with in our borders. See Mr. Justice Murphy, concurring, Bridge ex-Wixon, 1945, 326 U.S.135,161,65 S.Ct.1443,89L.Ed.2103.Correl at ively, an alien res ident owes at em por a ryallegianceto theG overn men tof the United States,and he assumes duties an dobligations which don otd i ff erm at er i ally from those of native-bornor natural ized citizens; he is bound to obey all the laws of the country, not immediately relating to citizenship,and is equally am en able with citizens of any infraction of those laws. Carlisle v. United States,1872,16Wall.147,21L.Ed.426;Leonhard v. Eley,10Cir.,1945,151F.2d409,and cases cited therein.The alien r es id ent may be required to make contr i but ion to the support of our Government;in Leonhard v. Eley, supra, an din United States v. Lamothe,2Cir.,1945,152F.2d340,it was held that an alien may lawfully be inducted for national defense; serv ic ein time of war: To continue exemplification of the general lack of discriminati on against aliens, it has been held that an alien even mere under crimina l prosecuti on in a United States civil court must be afforded the usual constitutional safeguards.Shinny Now v. United States, 5Cir.,1945,148F.2d696. | Deliberate and intentional refusal of witness to testify before congressional investigating committee violated statute regardless of profession of good faith. 2 U.S.C.A. S 192. | Does an alien domiciled or residing in the United States owe a temporary allegiance to the country? | Aliens_Immigration and_1nH36gJWxIdv4CqBkTKvna841_luwfkZd1.docx | ROSS-000000296-ROSS-000000297 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 21876 | Graham v. Town of Latta, S.C., 417 S.C. 164 | 30>3603 | Trespass to land is an interference with another's present right of possession. See generally Prosser and Keeton on Torts " 13. The historical requirements for recovery under the common law action of trespass include "an invasion (a) which interfered with the right of exclusive possession of the land, and (b) which was a direct result of some act committed by the defendant." Id. at 67. Trespass has been defined as "any intentional invasion of the plaintiff's interest in the exclusive possession of his property." Hawkins, 358 S.C. at 296, 594 S.E.2d at 565 (citations omitted). "To constitute actionable trespass, however, there must be an affirmative act, invasion of land must be intentional, and harm caused must be the direct result of that invasion." Id. at 296, 594 S.E.2d at 565-66 (quoting Snow v. City of Columbia, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct.App.1991)). "The gist of trespass is the injury to possession, and generally either actual or constructive possession is sufficient to maintain an action for trespass." Id. at 296, 594 S.E.2d at 566. | The grant or denial of new trial motions rests within the sound discretion of the trial judge and her decision will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law. | Is trespass to land an interference with another's present right of possession? | Trespass - Memo 268 - JS.docx | ROSS-003291317 | Condensed, SA | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 21877 | Am. Family Mut. Ins. Co. v. N. Heritage Builders, 404 Ill. App. 3d 584 | 307>622 | The right of subrogation originated as a creature of chancery as a doctrine which allowed a person compelled to pay the debt or claim of another to succeed to that person's rights with respect to the debt or claim so paid. This common law or equitable right of subrogation is a remedial device utilized to prevent unjust enrichment. Dix Mutual Insurance Co. v. LaFramboise, 149 Ill.2d 314, 319, 173 Ill.Dec. 648, 597 N.E.2d 622 (1992). Now, a right of subrogation may also arise by statute or contract. In re Estate of Scott, 208 Ill.App.3d 846, 848, 153 Ill.Dec. 647, 567 N.E.2d 605 (1991). In this case, we address the question left unanswered by the supreme court in Schultz v. Gotlund, 138 Ill.2d 171, 173, 149 Ill.Dec. 282, 561 N.E.2d 652 (1990); namely, the effect of an express contractual subrogation provision on a common law or equitable subrogation theory of recovery. Schultz, 138 Ill.2d at 173, 149 Ill.Dec. 282, 561 N.E.2d 652. | A motion to dismiss based on legal insufficiency of the pleadings tests the legal sufficiency of the complaint, whereas a motion to dismiss based on defects or defenses outside the pleading that defeat the claim admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint which defeats the claim. S.H.A. 735 ILCS 5/2-615, 2-619. | Is common law or equitable right of subrogation a remedial device utilized to prevent unjust enrichment? | Subrogation - Memo 355 - NS C.docx | ROSS-003312729-ROSS-003312730 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 21878 | Am. Family Mut. Ins. Co. v. N. Heritage Builders, 404 Ill. App. 3d 584 | 307>622 | Where the right of subrogation is created by the terms of an enforceable contract, the contract terms control, rather than common law or equitable principles. Benge v. State Farm Mutual Automobile Insurance Co., 297 Ill.App.3d 1062, 1071, 232 Ill.Dec. 172, 697 N.E.2d 914 (1998). As stated in Couch on Insurance, "where the right of an insurer to subrogation is expressly provided for in the policy, its right must be measured by, and depend solely on, the terms of such provisions." Couch on Insurance Law " 222:23, at 222"51 (3rd ed.2000). Stated otherwise, common law or equitable subrogation cannot stand in the face of an express contractual right of subrogation. See Benge, 297 Ill.App.3d at 1071, 232 Ill.Dec. 172, 697 N.E.2d 914; Capitol Indemnity Corp. v. Strike Zone, S.S.B. & B. Corp., 269 Ill.App.3d 594, 596, 206 Ill.Dec. 943, 646 N.E.2d 310 (1995); In re Estate of Scott, 208 Ill.App.3d at 848, 153 Ill.Dec. 647, 567 N.E.2d 605. We conclude, therefore, that whatever right of subrogation American Family acquired in this case by reason of its having paid McGrath for the damage to his residence, it acquired pursuant to the subrogation provision of the Policy, not by virtue of any equitable or common law principle. | A motion to dismiss based on legal insufficiency of the pleadings tests the legal sufficiency of the complaint, whereas a motion to dismiss based on defects or defenses outside the pleading that defeat the claim admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint which defeats the claim. S.H.A. 735 ILCS 5/2-615, 2-619. | Can common law or equitable subrogation stand in the face of an express contractual right of subrogation? | Subrogation - Memo 248 - VG C.docx | ROSS-003323298-ROSS-003323299 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |