# EXHIBIT 27

# Editorial Manual

## Policies and Guidelines for Headnoting

### Judicial Editorial



Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0002864

## Administration and Procedures

### Absence, Illness, and Vacation

Update the department calendar on the Hub as far in advance as possible concerning vacations, medical appointments, flex-time, and any other changes to your regular schedule. Any time off may be subject to approval by your supervisor. Call or e-mail your supervisor if you are ill and will not report for work, or if you will unexpectedly be more than two hours late. Time off for vacation, sick time, and floating holidays must also be entered on Workday and MyTime.

### Time Tickets

Fill out your time ticket each day. Record the project and a task number for each project worked on during the day. After headnoting classes have ended, editors who are formally on revision should charge only time spent face to face with a revisor to the training number.
Vacation and Floating Holidays may be taken in full-day and half-day increments only. Sick time should be used only if you are out for the entire day.  Employees may use the MyTime code "Non-Project Time: Out of Office --- Other Non-Worked Time" for short absences for medical appointments or illness. Please talk to your supervisor if you are unsure about whether/when to use this code.
If you are going to be out of the office for an entire day or more, because of vacation or for some other reason, submit your time ticket beforehand.

### Selection of Cases

Priority cases (Priority 1-4) should be done first. You should only take one of these priority cases at a time, in order to ensure that customers get our editorial enhancements faster.

Thereafter, cases with older file dates should be headnoted before cases with more recent file dates. In other words, the cases should generally be headnoted on a first-in, first-out basis. This system best fulfills our customers' needs and expectations.

Do not take all of your cases for the day when you first arrive at work. Rather, check the priority queue periodically throughout the day for new priority cases that need to be headnoted.

At least 10% of caseheading time should be spent headnoting unreported opinions, unless otherwise directed.

At least 10% of a Federal Team editor's time should be spent headnoting NYS cases.

### Work In Progress

You should have no more than 3 cases assigned to yourself at any one time. If you need to have more than 3 cases out at a time due to extenuating circumstances, talk to your supervisor.

1

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Priority cases should be completed within 24 hours. Non-priority cases should be completed within three days.

Any cases on your desk or assigned to you in Workflow should be completed before you go on vacation.

## Priority Cases

Priority cases are designated by number. The lower the number, the higher the priority. To keep the cases on schedule and roughly in order, do not take more than 2 priority cases at a time and take cases at or near the top of the queue.

At times, a non-priority case will be elevated to a priority status, thereby requiring these cases to be expedited. If you are asked to headnote such a case, please complete it as soon as possible.

Priority cases include opinions from the United States Supreme Court, the federal Courts of Appeals, and the states' highest courts, along with some other designated jurisdictions. Priority cases also include non-priority cases that have been expedited as described above.

## Mems

Occasionally, an editor may select a case that has no points of law. When this happens, send an e-mail to a revisor to confirm that the case is in fact a mem. If the revisor agrees, and no codenote is needed for the case (see note in subsequent paragraph), click on the "End" button in the upper-right corner of the Summary Tool, next to the "Submit" and "Unassign" buttons. This will end the "Write Summary" instance for that case, so that it can be published as a mem only.  Federal district court cases that have no headnotable points of law are not published as mems in F.Supp. So after using the "End" button, these cases should be referred to a revisor to contact Cases Input Support and request a publication change to Westlaw only.

Decisions that are mems commonly do not include any points of law that are supported by reasoning or facts, or they consist only of a description of the procedural history and a disposition. Generally, the presence of abstract points within a decision would not prevent a "mem" designation. However, a decision with no concrete points may be headnoted if one or more abstract points are particularly novel or significant. In that case, the abstract headnote may be linked to the synopsis holding. Certain types of cases, such as Federal Appendix cases, NYS cases, or attorney discipline decisions, are more likely to be mems.

Even though the case is a mem, you should still review it for KeyCite history. E-mail Cases-KeyCite Errors with any indirect history.  Also, e-mail that group with any error in the direct history.  Finally, make any KeyCite statute reference.  Create the codenote in JWB, validate, and click on "Submit."

## Completion of Cases

Do not submit a case on our editorial systems unless all of the features are finished. Features are loaded to Westlaw after the case is submitted. If a case is submitted before all features are finished, so incomplete features are loaded to Westlaw, it will look bad to our customers, who will think they are not getting what they pay for.

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0002866

## Scheduling

Please be sure that your supervisor is aware of your schedule. If you are telecommuting, be available via e-mail to answer queries from classifiers and others in the Eagan office. If anyone (telecommuter or otherwise) has a variance from his or her schedule, it should be entered on the department calendar on the Hub.

## Classifier Returns

Responses to a classifier return should be made within four hours for Priority 5-8 cases. Responses should be made within two hours for Priority 3-4 cases. Returns for U.S. Supreme Court and hot cases should be handled ASAP.

Changes suggested by a classifier should normally be accepted, especially when the purpose is to more clearly focus the headnote on the topic and line to which it will be classified.

The editor remains responsible for the headnote and should carefully examine all changes for correctness, in both substance and form. The editor should not approve a change which the editor does not feel is proper. If the editor has a question about the propriety of a suggested correction, the editor should consult a revisor.

In the e-mailed response to the classifier, the editor should paste in the modified versions of the summaries at issue, so that the classifier and revisor can see the modified summaries without needing to enter the case.  If many headnotes contain the same change, it is not necessary to include every headnote in the response, but just one as an example.

## Copyrights and Photocopying

Thomson Reuters respects the copyrights of others. No unauthorized copying of copyrighted non-Thomson Reuters materials is permissible.

Editors may make copies for internal use of publications and documents from the West library that are covered by the Copyright Clearance Center, which includes more than 1.75 million publications. If the material is not covered, the library staff may be able to obtain an authorized copy from another source.

If you wish to copy material for outside distribution, or if you have questions concerning the CCC license, ask your supervisor to contact our copyright counsel.

## Errors in Opinions

Errors in an opinion should not be fixed or queried to the publishing coordinators by the editor. Errors should be queried to the Judicial Content Corrections e-mail group. If an error must be resolved before editorial features can be completed, specifically state that you are waiting for a response.

For other errors, you can submit the case without waiting for a response. Corrected errors will be routed to Dave Probst for potential use on our Judicial Editorial Hub group.

If text appears to be missing from a case in JWB, notify the Judicial Content Corrections e-mail group.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Sensitive Information and Privacy Issues

If an opinion refers to an individual's sensitive or private information (examples below), please e-mail your manager and Maggie Padilla for possible masking or redacting of such information. Do not include the sensitive or private information in the e-mail. Instead just identify the case at issue, the type of information it contains, and the paragraph number(s) that contain the information (e.g., "serial no. 2020123456 includes a social security number in paragraph 10"). Also, do not share the sensitive or private information with other colleagues.

Reportable personal information includes: social security numbers, bank numbers, alien registration numbers, driver's license numbers, credit card numbers, federal employee identification numbers (FEIN), federal identification numbers (FIN), passport numbers, and Cedula/national identification numbers. At this time, we do not redact dates of birth, state ID numbers, street addresses, phone numbers, e-mail addresses, or IP addresses.

If a court has referred to a minor by name in a juvenile delinquency case or a child abuse or neglect case, and it appears from the title or otherwise that the court intends to preserve the minor's anonymity, please bring the case to the attention of your manager and Maggie Padilla.

## Court Information Errors

If our editorial systems incorrectly designate the court that is the source of a case being headnoted (for example, a bankruptcy court opinion has a court line for a district court opinion, or a state supreme court opinion has a court line for court of appeals opinion) the issue should be resolved before you complete the case. Please bring the case to the attention of your supervisor.

## Cases Mentioning Thomson Reuters

Cases in which West Publishing/Thomson Reuters is a party should be routed to a manager for review.

Cases in which the Court comments positively or negatively on a Thomson Reuters product, including our editorial features, should also be routed to a manager.

4

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Corrections to Features

### Education Law Reporter Summaries

To add an omitted Education Law Reporter summary after the original submit in a JWB case, open a new universal summary window, create the Education Law Reporter summary, and re-submit the case. Do not make modifications to the original universal summary window.

To make revisions to an existing Education Law Reporter summary in a JWB case, you need to e-mail the corrections to the group Cases Fast Special Pubs. If the changes are major, e-mail them the entire revised summary, including the subheading and headline. You will need to give the serial number of the case and tell them that the new summary should supersede the original summary.

When an Education Law Reporter summary is added, an Education topical highlight should be added as well. This can be done by checking the topical highlight box in the window containing the newly created Education Law Reporter summary. See Corrections to Features - Westlaw Highlights and Bulletins (Addition of Omitted Summaries)

### FCN Summaries

To add a previously omitted Federal Case News (FCN) summary after the original submit in a JWB case, do not reuse the existing universal summary window. Instead, open a new universal summary window, create the FCN summary, and then re-submit the case.

To make corrections to an existing FCN, you will need to e-mail FCN Corrs with the corrections or, if the changes are major, e-mail the entire revised summary. You will need to include the serial number of the case and indicate that the new summary should supersede the original summary. You do not need to make changes in the existing universal summary window.

The subject line of the e-mail should say:  FCN Correction - [Full Serial Number]

### Headnotes and Synopses

Changes can be made to the headnotes or synopsis in a JWB case at any time for Westlaw purposes. Just make the changes, validate, and re-submit.  (Note the two exceptions below)

However, if you receive a message when you reenter the case that a classifier has the features reserved, you should notify the classifier that you need to make changes before proceeding, unless you have entered the case in response to a classifier return.

Also, if you receive a message when you open the case that the case has been placed in an advance sheet, you need to e-mail the changes to the CasesCARTeam as well, so that they can make sure the changes appear in print. Mention in your message that you will also submit the changes in the Summary Tool for purposes of Westlaw.

5

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Issue Slips (ITI)

Make the change to the issue slip in the Universal Summary window in the Summary Tool and re-submit the case. Also, e-mail the change to the Judicial Summary Corrections group so that they can ensure the relevant database gets updated. In your e-mail, include the topic, sub-topic, and headline portions of the issue slip, even if not all parts need correction.

## KeyCite for Cases

New indirect history references can be added to a JWB case after the original submit. Create the indirect history and then re-submit the case. Existing indirect history references can also be deleted or modified in JWB after the submit. Make the necessary changes in JWB by right-clicking on the same instance of the cited case in the opinion and either deleting or updating the history phrase, and then re-submit the case.

## KeyCite for Statutes

A codenote may be added, modified, or deleted in a JWB case after the initial submit of editorial features. Make the necessary change and then re-submit the case. But you must still contact the Judicial Editorial Codenotes group to ensure that the KeyCite history for the code citation is properly updated on Westlaw.

## Westlaw Highlights and Bulletins

### Addition of Summaries

Do not delete the existing issue slip or any existing summaries, and do not just add a new publishing location to an existing universal summary. Instead, open a new universal summary window in JWB and fill in the topic, subtopic, headline, and paragraph fields. Choose the appropriate publishing locations to which the summary will be sent, save the summary, and then re-submit the case.

### Changes to Summaries

Do not make changes to the existing universal summary window in JWB. Instead, send an e-mail to the Judicial Summary Corrections group to make corrections to an existing summary. Include the serial number for the case, all of the Westlaw databases that the summary was sent to, and the existing headline and summary. You will need to explain to the revisors what changes to the existing headline and summary are needed. Include a copy of the modified summary, with the changes highlighted.

## Patent Slips

After the initial submit of editorial features, existing patent history cannot be changed from the Summary Tool. This will prevent you from changing just one part of an existing patent slip (i.e., just the classification, history phrase, or one of the patent numbers.) You should delete the existing patent slip entirely and recreate the modified patent slip as needed. Re-submit the case

6

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

when finished, but also e-mail the Cases-KeyCite Errors group to have the history treatment removed or modified for the patent.

You can create entirely new patent slips after the initial submit without e-mailing the Cases-KeyCite Errors group. Re-submit the case after creating the new patent slip.

7

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**TR-0002871**

## Headnotes Generally

### Points of Law

Each point of law made by the court is to be reflected in a headnote. A point of law is a statement of what the law is in the abstract or the result which it compels on the facts of the case. It is to be distinguished from statements of fact and from reasoning.

### Accuracy

The headnote must accurately, completely, and precisely reflect the facts and law stated. Insofar as possible, the court's language should be used. Irrelevant facts and superfluous words should not be included.

### Conciseness and Clarity

The headnote must be clear and concise. All facts essential to the contention and the holding, but only the essential facts, should be included.

A headnote should generally not exceed 800 characters.

### Completeness

The headnote must be able to stand alone, and no reference to the opinion or any other headnote should be necessary for it to be understood.

### One Point

Each headnote should, ordinarily, contain a single point of law. Do not string two or more related points together with semicolons. However, multiple points may be included to compare and contrast or to show how they operate in conjunction with each other.

> **EXAMPLE**
>
> **OPINION**: An accused's remedy for unreasonable seizure and search of his person is the exclusion of any evidence obtained in the unauthorized search. To forestall the admission of improperly seized evidence, an accused should file a motion to suppress the evidence. The accused must obtain a ruling on his motion to suppress. Calloway v. State, 743 S.W.2d 645, 650 (Tex.Cr.App.1988). By failing to obtain a ruling on a motion to suppress and failing to object at trial to the introduction of the offending evidence, an accused presents no error for appellate review. Calloway, 743 S.W.2d at 650; Dunavin v. State, 611 S.W.2d 91, 94 (Tex. Cr.App. (Panel Op.) 1981).
>
> **WRONG ABSTRACT HEADNOTE**: Accused's remedy for unreasonable seizure and search of his person is exclusion of any evidence obtained in unauthorized search; to forestall admission of improperly seized evidence, accused should file a motion to suppress evidence, and accused must obtain a ruling on his motion to suppress.

Although the concepts in the above example are related, they classify to multiple Key Numbers. The tipoff is that this headnote combines multiple sentences within the opinion. Often, each

8

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

sentence is its own headnote and should be made that way. An exception may be if the first sentence is followed by a second sentence which starts out consequently or therefore.

> **EXAMPLE**
>
> **WRONG CONCRETE HEADNOTE**: Jury that convicted defendant of aiding and abetting arson at joint trial did not inevitably use codefendants out-of-court statements as substantive evidence against defendant, where statements did not directly implicate defendant; moreover, district courts cautionary instructions sufficiently cured any danger of prejudice from admission of statements.

## Key Topic Selection

A caseheader must put a preliminary Key Number topic on every headnote, so it can be routed to the appropriate classifier upon completion of the case. It is important to be as accurate as possible, to expedite classification and assure Westlaw currency and accuracy. The KeyTopicSelection tool found in the "Help Files" menu in JWB will assist that effort.

When you click on the tool you will get a long, scrollable list of keywords linked to suggested Key Number topics. Above that is a search box, in which you can quickly type a key word or phrase related to the case or headnote at issue. If the search term is in the list, it will automatically scroll up, and hitting "Enter" will bring up the suggested topic or topics.

If the search term is not in the list, it may be because the classification is too obvious (e.g., most workers' comp determinations go to the topic Workers' Compensation), or because the relevant classification scheme is too complicated to try to describe in this limited format. However, it could mean the search term was merely omitted, and might very well be worth adding. If you suspect that is the case, let the lead classifier know so it can be added when the list is updated.

> **EXAMPLES**
>
> Term – by subject matter:
>
> > trademarks
> >
> > > ► Trade Regulation
> >
> > letters of credit
> >
> > > ► Banks and Banking
>
> Term - by statute name:
>
> > Magnuson-Moss Act
> >
> > > ► Consumer Protection
> > >
> > > ► Arbitration (arbitration issues)
> > >
> > > ► Sales (warranty issues)
> >
> > OSHA
> >
> > > ► Labor Relations
>
> Term - by relevant legal term:
>
> > summary judgment
> >
> > > ► Judgment (state)

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

► Federal Civil Procedure (federal)

harmless error

► Appeal and Error (state civil)

► Federal Courts (federal civil)

► Criminal  Law (criminal prosecutions)

Term - by seminal case:

Miranda

► Criminal Law

McDonnell-Douglas

► Civil Rights

## Dicta

The editor need not be concerned with whether a statement is dicta. If the court purports to make a statement of law, a headnote should usually be made.

## Assignment of Errors and Contentions

The editor should keep in mind the assignment of error or contention being disposed of. However, the headnote should be written so that the actual issue being decided will clearly appear, even if the assignment or contention is presented in broader or more general terms.

## Boilerplate

Do not make a headnote for uncontested statements of well-known law for which the court cites a higher authority in its jurisdiction. See Abstract Headnotes – Trite Headnotes.

## Statement of Facts

Mere mathematical computations or statements of facts are not to be made as headnotes. However, we do make points dealing with the propriety of damages awards or attorney fees.

## Predicate Facts

If the court makes a concrete holding based on the facts of the case but does not state any of the relevant facts anywhere in the opinion, no headnote is made.

For example, in New York cases, the court will often make a sufficiency of the evidence point but does not refer to the facts explaining why the evidence was sufficient. Evidence was sufficient to sustain a murder prosecution. may be all that the court says. In that case, do not make any headnote.

If the court rejects a claim of error by stating that the lower court did not do what the party claimed it did, or that the record does not support the allegation, no headnote is made.

10

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

If the ruling is that the lower court's action did not constitute a particular type of error or that the court's actions as described adequately performed a task which the party claims was not performed, a headnote should be made.

If the court states that the facts are not as claimed, there generally should be no headnote, unless the court resolves the issue using the facts as it sees them or makes a hypothetical based on the party's asserted facts.

**EXAMPLE**

The defendant alleges that he was not given access to a semen stained dress to conduct testing. The Court of Appeals says that no, the defendant was given access to the dress but chose not to avail himself of the opportunity.

► No headnote would be required under this example unless there was a dispute as to whether the opportunity to access the dress was adequate.

## Prior Holdings

Statements introduced with language such as This court has held... or The ABC Court held. .. are not to be made as headnotes unless it is clear that the court is agreeing with or reiterating the holding it describes.

## Statutes and Rules

Headnotes should not be made of mere recitations of statutes, rules, or regulations, whether or not they are in quotes. If a court makes an abstract statement of law about a statute, rule, or regulations which is followed only by a citation to that statute, rule, or regulation, it is most likely that the court is merely paraphrasing the statute, rule, or regulation. If you are unsure, you should check the statute, rule, or regulation to be sure before making a decision on whether to make the point.

**EXAMPLE**

**OPINION**: Whoever, having knowledge or not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the persons resistance or powers of resistance, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery. Minn. Stat. Ann. § 609.24.

► The court is stating verbatim what the statute sets forth. A headnote is not needed.

## Court Headnotes

The headnotes must reflect all points made in court headnotes, except if the headnote is a recitation of a statute, rule, or regulation. In some cases, this will result in needing to make abstract headnotes for material that could otherwise have been omitted as trite or historical. The caseheader may have to include appropriate context, break the headnote up into smaller headnotes, or make other appropriate changes so the court headnotes are more in line with our style. However, court headnotes containing only policy discussion that would not conform to our headnoting style do not need to be reflected in the headnotes.

If the court headnote summarizes the result in the case, that language should be worked into a concrete headnote.

11

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

If there is a conflict between the court headnote language and the language in the opinion, use the latter. The language of the court headnote may be changed or enlarged to provide necessary context or to properly identify the parties, etc. Please note that some jurisdictions (such as Kansas) may make court headnotes that do not appear verbatim in the language of the opinion. In that instance, please put the headnote number for the headnote in the paragraph that most closely tracks the language set forth in the court headnote.

Court headnotes appear in cases from Kansas, Nebraska, Ohio, Minnesota, and West Virginia. Court headnotes in Connecticut, New Jersey and Michigan are copyrighted by the state and must not be used verbatim. (Click on the links to see the Chapter on State Requirements.)

## Remedial Relief

Do not make a headnote stating that certain relief will or will not be granted when that is the obvious and natural result of the courts substantive holding.

For example, assume an opinion says, "Plaintiff failed to state claim for intentional infliction of emotional distress. Therefore, the complaint will be dismissed."

It is obvious that a complaint that fails to state a claim will be dismissed. The only headnote to make would be that the plaintiff failed to state a claim. The editor would not make a separate headnote on dismissal nor would the editor include the dismissal language in a headnote on failure to state a claim.

## Hypothetical Headnotes

Hypothetical of what the law would be under different facts or if a particular issue were before the court are not usually reflected in headnotes, especially when the issue is not closely related to those actually before the court. A headnote may be made if the court is unequivocal in its statement and the statement concerns a matter which the court has not previously decided or which is otherwise of obvious importance, although the preference would be to include the hypothetical language in a concrete headnote that disposes of the issue at hand. If the court states what would likely or probably be the holding, no headnote is made. If the court rejects a party's version of the facts but states what its ruling would be if the facts were as claimed, a headnote should generally be made.

## Law of Other Jurisdictions; District of Columbia

When a court of one state or jurisdiction determines a point that is controlled by another state's or country's law, the headnote should include the phrase "under _____ law."

When a federal court decision is based on the law of a state or the law of another country, such a fact should be disclosed in the headnotes by including the phrase "under _____ law. "

Abstract headnotes of another jurisdiction's law need be made only if the court is then applying the foreign law, not if the court is merely describing the foreign law for purposes of illustration or comparison.

A headnote based on local District of Columbia law should disclose that fact if the opinion is not from the District of Columbia. If the headnote involves a matter unique to the District of Columbia, the digest topic District of Columbia should be used.

**EXAMPLE**

Sensitivity: Confidential

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0002876

To state a cause of action for negligence under Illinois law, a plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach.

## Footnotes and Appendices

A point of law made in a footnote should be stated in a headnote. Material in appendices should not be headed, unless it has been expressly adopted by the court.

## Designation of Courts

Where the court refers to itself in a headnote, use common sense when determining what term to substitute for "we" or "our."

An opinion may state, for example, "Our function in construing a statute is to ascertain and give effect to the intent of the legislature."

This would be the function of any court. Therefore, it would be appropriate to write: Court's function in construing a statute is to ascertain and give effect to the intent of the legislature.

If the court is referring to a function that can only be performed by that particular court, such as the Supreme Court, the name of that court should appear in the headnote.

## KeyCite

If the court overrules, abrogates, or recedes from a prior case, or disapproves of one of its prior cases or a case from an inferior court, that information should be included at the end of the most relevant headnote. The information should be separated from the main body of the headnote by a semicolon, and should include the complete name of the case being acted upon, along with a complete citation, which includes any parallel citations. (The information should also be noted in the synopsis next to the corresponding point of law.)

> **EXAMPLE**
>
> Calculation of attorney fees award against employer, based on its "unreasonable or vexatious delay" in paying workers' compensation benefits, was properly predicated on employer's delay in paying claimant's medical expenses as well as its delay in paying claimant compensation for lost wages; overruling *Childress v. Industrial Comm'n*, 93 Ill.2d 144, 66 Ill.Dec. 280, 442 N.E.2d 841. 820 Ill. Comp. Stat. Ann. 305/16, 19(k).

See <u>KeyCite – Indirect History: Overruling, Abrogating, Receding From, and Disapproving</u>.

## Form of Headnotes

### Construction

The resolution of the dispute at issue should usually be stated first in the headnote, before the supporting facts and where and although clauses.

Facts supporting the courts holding may be introduced by where, meaning given that. Any facts in the where clause must have been resolved. They cannot be in dispute in the case. Facts or claims urged by the losing party may be prefaced with although, or notwithstanding. Although or

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

notwithstanding clauses should be placed between the initial headnote holding and before the where clause.

Do not include court rules or statutes in where clauses. Phrases such as under statute... or for purposes of rule providing that... should be used. The court's holding must never be in a where clause or any other dependent clause.

### EXAMPLE 1

**OPINION**: To the extent appellants argue that Mr. Work's particular professional schooling and experience were insufficient to qualify him as an expert, we disagree. We emphasize that the determination whether an individual is qualified to offer expert testimony lies within the trial court's sound discretion. Mr. Work has a Master of Social Work degree, with a psychiatric specialty, and 17 years of experience in the mental health field. The record reflects that, prior to testifying, Mr. Work consulted with Dr. Gaither, reviewed the charts, and conducted an interview with each appellant. Mr. Work therefore had sufficient familiarity with appellants' respective conditions to hold his opinion with reasonable medical and psychological certainty. Appellants offered no evidence, through either direct testimony or cross-examination of Mr. Work, that Mr. Work's opinion differed in any regard from that of Dr. Gaither or Dr. Neracs or from the information in appellants' respective charts. The trial court's decision to admit Mr. Work's testimony was not an abuse of discretion. Compare State v. McDonald, 89 Wash.2d 256, 268-69, 571 P.2d 930 (1977), overruled on other grounds by State v. Sommerville, 111 Wash.2d 524, 760 P.2d 932 (1988) (psychiatric social worker with 3 1/2 years of clinical experience was qualified to provide expert testimony about the defendant's sanity).

**WHERE CLAUSE**: Witness was qualified to give expert testimony at probable cause hearings in involuntary commitment proceedings on mental conditions of detainees, where witness had Masters of Social Work degree with a psychiatric specialty, had 17 years of experience in mental health field, and consulted with treatment facility's physician, reviewed detainee's charts, and interviewed each detainee prior to testifying. Wash. Rev. Code Ann. § 71.05.010 et seq.; Wash. R. Evid. 702.

### EXAMPLE 2

**OPINION**: The State additionally argues the failure of section 120.50 to specifically identify a violation as a criminal offense, or to set forth a criminal punishment therefor, does not necessitate dismissal of the State's charges. We agree. The law is well established that an administrative rule or regulation need not provide for criminal sanctions or constitute a criminal offense in order to form the basis of an official misconduct charge. People v. Samel, 115 Ill.App.3d 905, 911-12, 71 Ill.Dec. 738, 451 N.E.2d 892, 896-97 (1983); People v. Thoms, 50 Ill.App.3d 398, 401-02, 8 Ill.Dec. 479, 365 N.E.2d 717, 719 (1977) (prosecution under section 33-3(b) could be based upon violations of supreme court rules that did not constitute a criminal offense or provide for penalties); see also People v. Davis, 281 Ill.App.3d 984, 989, 217 Ill.Dec. 934, 668 N.E.2d 119, 123 (1996) (holding official misconduct charge can be based on violation of administrative rule or regulation, despite that rule or regulation not carrying any criminal penalty). Accordingly, defendants may be charged under sections 33-3(b) and (c) of the Code even though section 120.50 neither explicitly constitutes a criminal offense nor contains a penalty provision.

**ALTHOUGH CLAUSE**: Alleged violation of administrative regulation prohibiting Department of Corrections employees from socializing with inmates could provide basis for criminal charge of official misconduct against employees, although regulation neither

14

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

explicitly constitutes a criminal offense nor contains a penalty provision. 720 Ill. Comp. Stat. Ann. 5/33-3; Ill.Admin. Code, tit. 20, § 120.50.

### EXAMPLE 3

**RIGHT** (EXAMPLE OF THOUGH CLAUSE PLACEMENT): Finding that six-year-old victim was competent to testify in prosecution for aggravated criminal sexual abuse was not an abuse of discretion, although her testimony concerning alleged criminal conduct was inconsistent, where victim spelled her name, told court her age, birthday, address, and names of people with whom she lived, and she could tell the difference between telling a lie and telling the truth. 720 Ill. Comp. Stat. Ann. 5/12-16.

### EXAMPLE 4

**WRONG** (POINT MISTAKENLY BURIED IN WHERE CLAUSE): Prosecutor's comment in closing argument regarding murder defendant's failure to call his mother as a witness was not improper, where it was proper for prosecutor to comment on a defendant's failure to call an allegedly favorable witness.

►In the above example, the point is really that the prosecutor can comment on a failure to call a favorable witness. Hence, the headnote should be:

**RIGHT**: Prosecutor could comment in closing argument on defendant's failure to call his mother as a witness in his favor in murder prosecution.

## Key Words and Principles: Online Research

The key words and principles of the opinion must be disclosed in the headnotes. The headnotes will be used for Westlaw research. When a decision depends on the application of a doctrine, rule, or principle, the doctrine involved must be mentioned in the headnote. This includes the popular name of the doctrine if it is disclosed in the opinion.

## Abstract and Concrete

Abstract points are those which state general principles of law. Headnotes for these points are written in the present tense. For example:

> Reviewing court will not overturn trial court's conclusion in a bench trial unless it is against the manifest weight of the evidence.

Concrete points are those which set forth the application of the law to the facts of the case. Headnotes for these points are written in the past tense. For example:

> Acts of bank's employee in failing to fulfill his job duties, ignoring obvious evidence of customer's check-kiting scheme, and steadfastly denying such a scheme when confronted with clear evidence of it were dishonest under employee dishonesty coverage of bank's fidelity bond.

When the court makes both an abstract point and a concrete point for the same proposition, each should be reflected in a headnote. If the concrete point made by the court is merely the abstract point written in the past tense without any additional facts, make only the abstract point.

Do not mix abstract and concrete statements of the law in one headnote. Generally, a headnote should either be all abstract or all concrete.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Court's Holding

Make a direct statement of the principle of law rather than a factual statement of the result. The type of pleading which presented the issue is generally irrelevant and need not be indicated. The same is true of the fact that the lower court ruled properly or improperly. Thus, the headnote should state whether evidence was admissible, not whether court properly admitted it. The headnote should state that a party was not entitled to fees, not that the court did not err in denying them.

### EXAMPLE 1

**OPINION**: During voir dire, Carr testified that he intentionally placed the test dummy upright in the seat even though he believed that Ducharme was slumped in his seat, in order to demonstrate the physical principle that the dummy would continue to move forward following impact until something stopped it, as well as to illustrate that a properly restrained occupant in the upright position would not have hit the steering wheel. Thus, the challenged evidence was not offered "to show that the accident occurred in the precise manner indicated by the test" but to demonstrate, in part, that the plaintiff's version of events might be inaccurate. Calvanese v. W.W. Babcock Co., 10 Mass.App.Ct. at 730, 412 N.E.2d 895. "The evidence was competent for this purpose, and the judge did not abuse (her) discretion by admitting it." Ibid. The additional differences cited by Ducharme, between the test conditions and the circumstances surrounding the accident, "did not require exclusion of the evidence as a matter of law." Id. at 731, 412 N.E.2d 895. Rather, Ducharme was entitled to cross-examine Carr regarding the alleged discrepancies and to argue to the jury that his opinions should be rejected as a result of his reliance on the flawed test. See Bechtel v. Paul Clark, Inc., 10 Mass.App.Ct. 685, 689, 412 N.E.2d 143 (1980) ("dissimilarities affect the weight of the evidence and not its admissibility") .

**WRONG**: Evidence of automobile crash test performed with test dummy upright in seat was properly admitted in products liability action to contradict plaintiff driver's version of how accident occurred and to show that properly restrained occupant would not have hit steering wheel.

►The issue in the above example is whether the evidence was admissible, not whether the trial court followed the correct procedure in admitting the evidence. Hence, the headnote should read as follows:

**RIGHT**: Evidence of automobile crash test performed with test dummy upright in seat was admissible in products liability action to contradict plaintiff driver's version of how accident occurred and to show that properly restrained occupant would not have hit steering wheel.

### EXAMPLE 2

**WRONG**: Trial court did not err in rejecting murder defendant's instruction concerning benefit of the doubt in event jury found defendant guilty of some offense but was unclear as to which particular charged offense he had committed, where substance of proposed instruction was covered by instructions setting out elements of charged offenses, requisite proof for each, and reasonable doubt standard.

**RIGHT**: Substance of proposed instruction, concerning benefit of the doubt in the event jury found defendant guilty of some offense but was unclear as to which particular charged offense he had committed, was adequately covered by instructions setting out elements of charged offenses, requisite proof for each, and reasonable doubt standard.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Assumption of Facts

Do not beg the question by stating the resolution of a procedural matter when the true issue is the substantive legal rights of the parties. Do not write a headnote which takes as given that which is at the core of the issue. Do not bury the holding in a where clause.

17

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -**
**ATTORNEYS' EYES ONLY**

TR-0002881

## Abstract Headnotes

### In General

Abstract headnotes are generally applicable principles of law adopted by the court. They are written in the present tense and do not refer to the facts of the case, though they may include some general factual context. Each abstract headnote should ordinarily address a single legal issue.

**WRONG**

10. Statutes

A statute should be interpreted to give effect to the legislative intent; every word in the statute should be given its plain meaning.

**RIGHT**

10. Statutes

A statute should be interpreted to give effect to the legislative intent.

11. Statutes

Every word in a statute should be given its plain meaning.

### Historical Points

Do not make headnotes from court statements prefaced with terms such as "we have held that" unless there is specific language indicating that the court is adopting that principle. Have held points are generally historical background.  The court's subsequent application of the principle is insufficient, by itself, to warrant making an abstract headnote.

### Recitation of Statutes etc.

Do not make abstract headnotes from recitations of statutes, rules, regulations, or constitutional provisions. If a point is supported only by citation to a statute, rule, regulation, or constitutional provision, (i.e., there is no case cite following the point), more likely than not the court is merely reciting the language of the provision, and no headnote need be made. If in doubt, look up the statute, rule, or regulation and compare its language with the court's language in the opinion. If the court's language obviously varies enough from that of the statute that it could be considered interpretation, make the point.

### Restatements and Treatises

Do not make abstract headnotes from quotations from Restatements or Treatises unless there is specific language indicating that the court is adopting that principle.  See Restatement Adoption or Rejection.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002882

## Proofreading

Take care in proofreading abstract headnotes to ensure that you eliminate any reference to "we," "this court," "this state" etc.

**WRONG**

35. Appeal and Error

On appeal we review conclusions of law de novo.

**RIGHT**

35. Appeal and Error

On appeal the Supreme Court reviews conclusions of law de novo.

## Hybrids

Do not make hybrid headnotes, part abstract and part concrete.

**WRONG**

13. Homicide (hybrid)

Intent may be established by circumstantial evidence, and therefore, evidence was sufficient to support murder conviction.

**RIGHT**

13. Homicide (abstract)

Intent required for murder may be established by circumstantial evidence.

14. Homicide (concrete)

Testimony of defendant's brother that defendant "hated" the victim and stated often, including immediately prior to shooting, that he would "get" the victim provided sufficient circumstantial evidence of intent to support murder conviction.

## Statute Citations

When an abstract headnote directly relates to a statute, the statutory context should ordinarily be included. Any relevant statute should be cited it at the end of the headnote.

**WRONG**

45. Civil Rights

Discrimination because of a person's sex includes sexual harassment of the person.

**RIGHT**

45. Civil Rights

Discrimination because of a person's sex, which is prohibited under Civil Rights Act (CRA), includes sexual harassment of the person. Mich. Comp. Laws Ann. § 37.2103(i).

See also, Statutes and Related Materials, and Citations to Constitutional Provisions.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Dispositive Abstract Headnotes

If a court comes to an abstract conclusion of law, and that conclusion is dispositive of the case before it as well as a broader range of cases, make the dispositive abstract point, and if it is significant, include the dispositive abstract point in the synopsis. Making a concrete point in a case that has been decided based on a broad abstract principle may mislead the customer into thinking that the concrete result in the case has something to do with the facts of the particular case.

## Unreported Cases

Generally, do not make abstract headnotes for unreported cases, except when such a headnote represents the disposition of an argument or a holding by the court. If the abstraction is dispositive, there is no need to make a corresponding concrete. See Dispositive Abstract Headnotes section above.

### EXAMPLE 1 - Dispositive Abstract Headnote

**OPINION**: We first address Ettinger's attempt to appeal from the pre-trial judgment of the district court denying his motion for summary judgment. The district court found that material issues of fact prevented summary judgment in favor of Ettinger. The case then proceeded to a bench trial on the merits after which the district court entered a final judgment for Milvets. This court "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits." Chesapeake Paper Prods. Co. v. S & W Eng'g, 51 F.3d 1229, 1237 (4th Cir.1995). Accordingly, we decline to review the district court's pretrial judgment on Ettinger's motion for summary judgment.

**HEADNOTE**: Court of Appeals will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits.

### EXAMPLE 2 - Dispositive Abstract Headnote

**OPINION**: Ettinger first argues that Milvets' revenue sharing obligation under the Teaming Agreements was iron clad and was not conditioned on his own performance under the contract. We have construed Maryland law to the contrary, however, concluding that"[p]erformance of the contract by parties suing on it is a condition precedent to recovery." Hubler Rentals Inc. v. Roadway Express, Inc., 637 F.2d 257, 260 (4th Cir.257) (citing Wischhusen v. Spirits Co., 163 Md. 565, 163 A. 685 (1933)). "[U]nder Maryland law, a party suing on the contract must first prove his own performance, or an excuse for nonperformance, in order to recover for any breach by the opposing party."

**HEADNOTE**: Under Maryland law, a party suing on the contract must first prove his own performance, or an excuse for nonperformance, in order to recover for any breach by the opposing party.

## Trite Headnotes

*Published State High Courts; U.S. Supreme Court; Published Federal Court of Appeals Opinions:* Make all abstract headnotes. Do not omit any abstract headnote on the ground that it is "trite."

20

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

*Published State and Federal Trial Court Opinions; State Intermediate Appellate Opinions*: Make all abstract headnotes that are not trite.

Trite abstract headnotes are familiar statements of the law that are commonly referred to by the courts. They include:

- Familiar points dealing with summary judgment and motions to dismiss. But the point should not be considered trite if a particular claim is identified, e.g., "Where intent and state of mind are in dispute, summary judgment is ordinarily inappropriate in an employment discrimination case."

- Familiar standard of review points that would normally classify to "Appeal and Error" or "Federal Courts." But the point should not be considered trite if it identifies a standard of review for a specific issue that is not commonly addressed, e.g., "Imposition of Rule 11 sanctions is reviewable de novo, but the choice of sanction is reviewable under an abuse of discretion standard.")

- Familiar points about administrative review that do not identify a particular agency

- General statutory construction points that do not construe a particular statute

- Ineffective assistance of counsel points that state the familiar *Strickland* standard

- Points stating familiar sufficiency of the evidence standards, including Texas "legal sufficiency" and "factual sufficiency" points

For more examples, see the Hub document containing trite and nontrite headnote examples: [Trite headnote document](#)

Editors may also sometimes skip common abstractions in fields of law in which they are familiar, such as family law, torts, or criminal procedure. Even if the court is stating a familiar concept, the editor should still make an abstract point if the court expresses the concept in an unfamiliar way, applies it to a new situation, or imports it from another jurisdiction. Also, an otherwise trite point should be made if it disposes of a contested issue.

This guideline for omitting trite abstract headnotes based on familiarity has a broader application to federal cases than to state cases, where its applicability will vary depending on the jurisdiction that the case is from and the case's subject matter. The fact that a headnote is common in one state would not by itself justify omitting the headnote in a case from another state. The guideline would in general be more applicable to cases from high receipt states, such as Florida, Texas, Louisiana, New York, and California, and to cases involving commonly litigated subject matter, such as criminal law, employment law, and family law.

### EXAMPLES OF TRITE HEADNOTES

**Trite Summary Judgment:**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

In determining whether summary judgment is appropriate, court must view evidence and any inference from it in light most favorable to the nonmoving party.

On motion for summary judgment, moving party has burden to establish absence of any genuine issue of material fact.

**Trite Motion to Dismiss**

21

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

In ruling on motion to dismiss, complaint is construed in light most favorable to plaintiff, and all allegations of fact are taken as true.

In considering motions to dismiss, trial courts are confined to considering facts alleged on the face of the complaint.

## Trite Standard of Review:

Questions of law are subject to a de novo review.

Court of Appeals does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact.

Appellate court's review of questions of fact is limited to determination of whether findings were clearly erroneous.

## Trite Statutory Construction:

Words in a statute should be construed according to their plain and ordinary meaning.

Primary rule in statutory construction is to give effect to legislature's intent.

## Trite Ineffective Assistance:

To prevail on a claim of ineffective assistance of counsel, defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

To prove actual prejudice in a claim of ineffective assistance of counsel, defendant must demonstrate that there is a reasonable probability that the result of the proceedings would have been different had it not been for counsel's deficient performance.

Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

## Trite Sufficiency of Evidence:

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

In determining whether the evidence is factually sufficient, the reviewing court must weigh all of the evidence in the record.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002886

## Types of Headnotes

### Summary Judgment Headnotes

#### Fact Issues Preclude Summary Judgment

In general, when issues of fact exist and summary judgment is therefore denied or precluded, the headnote should state that a genuine issue of material fact precludes summary judgment, describe what the fact issue relates to, and state the nature of the action. The editor should not enter into a description of the disputed facts after a semicolon or in a "where" clause. It is not necessary to cite the summary judgment rule (e.g., Rule 56) at the end of this type of headnote. The editor also should not use the question for jury style which is reserved for motions for directed verdict and for judgment notwithstanding the verdict.

If the point concerns summary judgment affidavits, summary judgment proof, motion practice or prematurity, the point is not covered by this discussion and the caseheader should not attempt to shoehorn the headnote into this type of analysis. Likewise, if the court resolves the point on the basis that the complaint does not state a claim (which the court can do on summary judgment), the point should be made the way that is proper for making a failure-to-state-a-claim point, without including summary judgment context. Or if an appellate court holds that a summary judgment needs to be reversed because the trial court was mistaken as to the law at issue, the headnote should simply state the correct law.

Federal Rule of Civil Procedure 56 has been modified to say "genuine dispute," rather than "general issue." It is permissible to write the headnote in terms of a "genuine dispute" in a federal case (or a case from a state employing the same rule language), if the court phrases its conclusion that way in the opinion. Follow copy.

In some of the incorrect examples below, there are no descriptions of the type of actions involved. Or, there is unnecessary detail as to why there is an issue of fact. Moreover, some of the headnotes would read better if the phrase "precluding summary judgment" did not break up "material issues of fact" and "existed."

#### EXAMPLE 1

**WRONG**: Material issues of fact, precluding summary judgment, existed as to whether surgeon negligently damaged patient's urethra while performing hysterectomy and bilateral salpingo-oophorectomy; patient gave deposition testimony that physician told her urethra might have been stitched during surgery, and medical expert's report stated patient's urethra condition was caused by the surgery.

**RIGHT**: Genuine issue of material fact existed as to whether surgeon negligently damaged patient's urethra while performing hysterectomy and bilateral salpingo-oophorectomy, precluding summary judgment in medical malpractice action.

**RIGHT** (alternately): Genuine issue of material fact as to whether surgeon negligently damaged patient's urethra while performing hysterectomy and bilateral salpingo-oophorectomy precluded summary judgment in medical malpractice action.

#### EXAMPLE 2

**WRONG:** Material issues of fact, precluding summary judgment, existed as to whether physicians sued for malpractice could invoke the short statute of limitations for claims

23

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

against city employees; there were questions regarding the terms under which the physicians, admittedly employed by a for-profit hospital, were transferred to a city hospital for intern and residency purposes. McKinney's General Municipal Law § 50-k, subd. 6.

►In this wrong example, the material issue of fact is really a legal conclusion. The issues of fact are after the semicolon.

**RIGHT:** Genuine issues of material fact existed regarding terms under which physicians, admittedly employed by a for-profit hospital, were transferred to city hospital for intern and residency purposes, precluding summary judgment on issue of whether physicians could invoke the short statute of limitations for claims against city employees in medical malpractice action. McKinney's General Municipal Law § 50-k, subd. 6.

### EXAMPLE 3

**WRONG:** Genuine issue of material fact existed as to whether apartment complex and owner, having obligation and opportunity to do so, failed to warn firefighters of toxic chemical reaction involving water and sodium hydroxide in storage area, thus precluding summary judgment for complex and owner on gross negligence claim; while property manager who made emergency call testified that she told dispatcher she had a chemical reaction and needed foam, and that she later told firefighter before he went inside that there was a chemical reaction, firefighters presented evidence they thought they were answering a standard smoke-in-an-apartment call.

**RIGHT:** Genuine issue of material fact existed as to whether apartment complex and owner, having obligation and opportunity to do so, failed to warn firefighters of toxic chemical reaction involving water and sodium hydroxide in storage area, precluding summary judgment for complex and owner on gross negligence claim.

Generally, do not start out an issue of fact summary judgment point with the in action language. Save that for the end.

### EXAMPLE 4

**WRONG:** In action by tenant against manufacturer for violation of Alabama Extended Manufacturers Liability Doctrine (AEMLD), genuine issue of material fact existed as to whether chief executive officer of sliding glass door manufacturer actually saw and tested sliding glass door that was in tenant's apartment when she was attacked, and whether door was in same condition that it was at time of attack, precluding summary judgment. Ala. Code, § 7-2-315.

**RIGHT:** Genuine issue of material fact existed as to whether chief executive officer of sliding glass door manufacturer actually saw and tested sliding glass door that was in tenant's apartment when she was attacked and whether door was in same condition that it was at time of attack, precluding summary judgment in action by tenant against manufacturer for violation of Alabama Extended Manufacturer's Liability Doctrine (AEMLD). Ala. Code, § 7-2-315.

If the factual dispute relates to a particular element of or a defense to a cause of action, that element or defense should be mentioned.

### EXAMPLE 5

Genuine issue of material fact as to whether pedestrian was in a crosswalk when he was struck by motorist's vehicle precluded summary judgment on grounds of contributory negligence in pedestrian's negligence action against motorist.

24

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

### EXAMPLE 6

Genuine issue of material fact as to whether a gust of wind that allegedly pushed pedestrian into intersection before he was hit by motorist's vehicle or motorist's excessive speed was proximate cause of accident precluded summary judgment in pedestrian's negligence action against motorist.

Because headnotes stating that a "genuine issue of material fact precluded summary judgment" classify by the nature of the claim or cause of action, rather than by the fact issue, it is permissible to combine fact issues in a single headnote going to a claim or cause of action, where the discussions of the individual fact issues are perfunctory or not worth breaking out.

### EXAMPLE 7

Genuine issues of material fact existed as to whether airport police officer's actions in instructing fellow officer to deploy stun gun against bicyclist were objectively reasonable in light of facts and circumstances confronting officer, and as to nature of bicyclist's physical injuries as result of stun gun, precluding summary judgment on bicyclist's §1983 excessive force claim against officer. U.S. Const. Amend. 4; 42 U.S.C.A. §1983.

In some cases, the court may note that a particular document, deposition, affidavit, or other piece of evidence creates a genuine issue of material fact. This alternative format may be used in those rare cases: "Evidence of X created genuine issue of material fact as to..., precluding summary judgment in action Z." If there is a list of evidence creating the fact issue, as there is in most cases, do not use this format.

## Summary Judgment Is Warranted Based on the Law

When summary judgment was properly granted or improperly denied, there is no fact question. Consequently, the editor should ignore the motion and make the underlying substantive point, unless the issue involves the quality of the summary judgment evidence offered. (See Summary Judgment Affidavits and Evidence.) A substantive point is generally favored if it can be supported by the text of the opinion.

If the point is substantive, the editor should not mention the words "summary judgment" or "genuine issue of material fact" anywhere in the headnote, nor should the headnote refer to "testimony" or "evidence." The headnote should not be phrased in terms of whether a party or the evidence "established" (or failed to establish) a claim or an element of a claim, which suggests that a trial occurred. A point should not appear to be a "hybrid" of substantive and evidentiary matter.

### EXAMPLE 1

**OPINION:** The plaintiff argues that the questions of whether the deviation from the road was foreseeable and whether the plaintiff was riding his bicycle with due care are factual issues that should have gone to a jury. Although foreseeability is a necessary component of duty; Waters v. Autuori, supra, 236 Conn. at 827, 676 A.2d 357; "the conclusion that a particular injury to a particular plaintiff or class of plaintiffs possibly is foreseeable does not, in itself, create a duty of care.... (F)oreseeability is not commensurate with duty, and proof of foreseeability does not establish the existence of a duty of care." (Citations omitted; internal quotation marks omitted.) Id., at 827-28, 676 A.2d 357.

We conclude that the trial court was correct in its determination, as a matter of law, that the defendant could not reasonably foresee the possibility of an accident such as the

25

plaintiff's and that even if such a possibility existed, it was too remote to create a duty in the defendant. Clohessy v. Bachelor, supra, 237 Conn. at 45-46, 675 A.2d 852.

**WRONG:** Trial court could render summary judgment for telephone local exchange carrier (LEC) on basis that carrier did not owe bicyclist a duty of care, in bicyclist's negligence action against carrier, arising from bicyclist's collision with equipment mounted on telephone pole, despite contention that whether bicyclist's deviation from road was foreseeable and whether bicyclist was riding bicycle with due care were factual issues that should have gone to jury, where trial court correctly determined, as a matter of law, that carrier could not reasonably foresee possibility of accident such as that of bicyclist and that, even if such possibility existed, it was too remote to create duty in carrier. Restatement (Second) of Torts s 368(b).

**RIGHT:** Telephone local exchange carrier (LEC) could not reasonably foresee possibility of bicyclist's collision with equipment mounted on telephone pole, and thus, carrier had no duty to bicyclist and was not liable in negligence for collision.

### EXAMPLE 2

**OPINION:** Although, the documents submitted in support of Teleflex's opposition to the motion for summary judgment call into question whether English Bayou is currently being used for commerce, they do not contradict the evidence submitted by Trahan which shows that the bayou is susceptible to being used as a highway for commerce. After examining the pleadings, depositions, and affidavits, we find it has been established that English Bayou is "susceptible of being used in [its] natural and ordinary condition as [a] highway[ ] for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on the water." Naquin, 768 So.2d at fn. 4. Accordingly, under the facts of this case, we find that no question of fact remains as to the navigability of English Bayou. Therefore, the trial court correctly granted Trahan's motion for partial summary judgment.

**WRONG:** Evidence supported finding that bayou where boat owner was injured was a navigable waterway, for the purpose of owner's tort action against manufacturer of boat steering cable; expert geographer testified that he saw evidence of commercial pull-boat logging and that pull boat barges are 40-50 feet in length, historian testified that Native Americans used to bayou to conduct trade, that ferry used to exist on bayou, and that equipment needed for a pumping station would have been transported by boat up the bayou, affidavit of commercial fisherman stated that he fished commercially on the bayou and that he saw pull boat logging on the bayou as a boy, and affidavit of property owned provided that his family cut timber and floated it down the bayou to the river, and then on to lumber mills.

**RIGHT:** Bayou where boat owner was injured when boat's steering cable broke was susceptible to being used as a highway for commerce, and thus was a "navigable waterway," for purpose of owner's action alleging manufacturer of boat steering cable was liable under maritime products liability and general maritime law.

Although a substantive headnote is preferred when summary judgment is granted in the vast majority of cases, avoid writing a substantive headnote that tells the reader nothing more than what they already know. In those instances consider whether a procedural headnote would be more robust or a better reflection of the parties' dispute. See Summary Judgment Affidavits and Evidence.

### EXAMPLE 3

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0002890

**WRONG (weak substantive headnote):** Joint compound manufacturer was not liable for homeowner's death from mesothelioma where nothing indicated that the compound he used contained asbestos.

**RIGHT (a more developed procedural point):** Deposition testimony of homeowner's son, recalling seeing his father use dry-mix joint compound with defendant manufacturer's name on the bag nearly 40 years earlier, was speculative, and did not raise a genuine issue of material fact that would preclude summary judgment on claim that homeowner's mesothelioma was caused by exposure to defendant's product; even though some of defendant's products sold at the time still contained asbestos, son could not recall any labels or wording, beyond the company name.

## Summary Judgment Ruling Based on Complete Lack of Evidence

When the court disposes of a claim on summary judgment due to a complete lack of evidence to support the plaintiff's claim, the headnote should not mention evidence or testimony discussed by the court, but may mention a lack of evidence on a particular claim or element. These types of headnotes will be classified to the substantive topics, not Judgment. A headnote may be written in this manner even if the court mentions that some evidence was presented, if the court then discounts that evidence for some reason and is then essentially left with "no evidence." The discussion of why the evidence presented was deficient may warrant a separate headnote directed to the flaws in the evidence (which would require summary judgment context).

### EXAMPLE 1:

**OPINION:** In this personal injury action, plaintiff alleges that the movement of a tractor caused her to fall. On June 27, 2000, plaintiff was walking with her daughter and grandson on the plaza abutting the Metropolitan Museum of Art. Her daughter and grandson were walking in front of her, when her grandson turned and warned her that a tractor was backing up on the sidewalk.

Plaintiff was deposed on three separate occasions. She testified at these depositions that she saw the tractor and altered her direction by taking three to four steps to her right. She did not alter her speed of walking. After taking three or four steps to her right, she fell to the ground, sustaining injuries. On each occasion, plaintiff testified that she did not know, and did not find out what caused her to fall….

Although plaintiff argued that the backing of the tractor frightened her and caused her to fall, there is no evidence to support these conclusions. Plaintiff repeatedly testified that she did not know why she fell and she never testified that she was frightened or that the tractor made contact with her body. Plaintiff therefore failed to set forth a prima facie case of negligence against any defendant.

**WRONG:** Backing of tractor on sidewalk outside of museum was not proximate cause of pedestrian's fall; although pedestrian claimed that the tractor frightened her and caused her to fall, she repeatedly testified that she did not know why she fell and never testified that she was frightened or that the tractor made contact with her body.

**RIGHT:** Backing of tractor on sidewalk outside of museum was not proximate cause of pedestrian's fall, absent showing that the tractor frightened her and caused her to fall or that the tractor made contact with her body.

### EXAMPLE 2:

27

Sensitivity: Confidential

HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY

OPINION: The plaintiff allegedly sustained injuries when she tripped and fell in the alley between her house and the adjacent house owned by the defendant Frank Giambanco, or on the abutting sidewalk. Giambanco established his prima facie entitlement to judgment as a matter of law by submitting the plaintiff's deposition testimony, which revealed that she was unable to state the cause of her fall. The plaintiff's own deposition testimony that she did not know what caused her fall was fatal to her complaint because the trier of fact would be required to base its finding of proximate cause on pure speculation (see Curran v. Esposito, 308 A.D.2d 428, 429, 764 N.Y.S.2d 209; Sanchez v. City of New York, 305 A.D.2d 487, 758 N.Y.S.2d 824). In opposition to the motion, the plaintiff failed to present evidence sufficient to raise a triable issue of fact as to Giambanco's liability. Therefore, the Supreme Court erred in denying Giambanco's motion for summary judgment.

WRONG: Pedestrian's deposition testimony that she did not know what caused her fall was fatal to her action against abutting landowner to recover for injuries allegedly sustained when she tripped and fell in alley between her house and landowner's house, or on the abutting sidewalk, as trier of fact would be required to base its findings of proximate cause on pure speculation.

RIGHT: There was no evidence of what caused homeowner's trip and fall in alley between her house and adjacent house, or on abutting sidewalk, and thus homeowner could not prevail on personal injury claim against adjacent owner.

## First Stage of Summary Judgment Process and Movant's Burden

In some instances, the court may analyze the first step of a summary judgment motion, namely, the movant's burden to show entitlement to judgment as a matter of law before the burden shifts to the nonmovant to raise a fact issue. This is particularly true in New York cases. This is sometimes referred to as a "prima facie" showing of entitlement to summary judgment. A headnote directed to this stage of the summary judgment process should include summary judgment context and generally need not indicate that the movant (if successful) has shifted the burden of raising a fact issue to the nonmovant. This type of headnote will classify to Judgment (in state cases). However, a substantive headnote, if supported by the text of the opinion, may be preferable. The examples below are not intended to reflect every situation, and variations in court opinions may call for a different approach. Consult a revisor if you have questions.

### EXAMPLE 1

OPINION: The plaintiff allegedly was injured when he slipped and fell on a patch of ice in a parking lot owned and operated by the defendant, Incorporated Village of Rockville Centre. After depositions were conducted, the Village moved for summary judgment dismissing the complaint on the ground that it had not received prior written notice of the icy condition. . . In support of its motion, the Village relied upon the deposition testimony of its Deputy Superintendent of Public Works. However, the Deputy Superintendent did not unequivocally testify that the Village had no prior written notice of the subject icy condition, and he did not testify that he had conducted any search to determine whether such notice had indeed been received by the proper statutory designee. . . Under these circumstances, the Deputy Superintendent's testimony was insufficient to satisfy the Village's prima facie burden of showing that it had no prior written notice of the subject icy condition.

HEADNOTE: On motion for summary judgment in slip-and-fall personal injury action, deposition testimony of village's deputy superintendent of public works regarding prior

28

written notice of icy condition which allegedly caused fall was insufficient to establish village's prima facie entitlement to judgment as a matter of law, where deputy superintendent did not unequivocally testify that village had no prior written notice of the subject icy condition, and he did not testify that he had conducted any search to determine whether such notice had indeed been received by the proper statutory designee.

### EXAMPLE 2

**HEADNOTE:** Lender moving for summary judgment in suit on promissory note established his prima facie entitlement to judgment as matter of law by submitting promissory note and loan agreement signed by defendant, coupled with his own affidavit asserting that defendant failed to repay loan in accordance with terms of note.

However, if a party establishes a prima facie case, and is entitled to judgment as a matter of law because its opponent has failed to raise a triable issue of fact, only a substantive headnote should be written:

### EXAMPLE 3

**OPINION:** The defendant. . . which had, inter alia, a license with the City to operate a concession stand and a skate rental service at the rink, was properly awarded judgment as a matter of law. (Defendant) established, prima facie, that it did not employ any of the individuals allegedly involved in the accident and was not responsible for maintaining or supervising the ice rink . . . In opposition, the plaintiff failed to raise a triable issue of fact.

**WRONG:** Operator of concession stand and skate rental service at city-owned ice skating rink, moving for summary judgment in ice skater's personal injury suit, established prima facie entitlement to judgment as matter of law, by presenting evidence that it did not employ any of individuals allegedly involved in accident and was not responsible for maintaining or supervising rink.

**RIGHT:** Operator of concession stand and skate rental service at city-owned ice skating rink was not liable for skater's injuries in trip and fall accident, where operator did not employ any of the individuals allegedly involved in the accident and was not responsible for maintaining or supervising the rink.

## Fact Issues Exist, but Other Issues Merit Summary Judgment

If the court finds that a fact issue exists on one ground which would preclude summary judgment, but then grants summary judgment on another ground, no headnote need be made that a genuine issue of material fact existed on the first ground so as to preclude summary judgment.

## Continuance for Discovery at Summary Judgment

If the court determines that the summary judgment opponent was not entitled to delay summary judgment to conduct further discovery, the headnote may be structured like the following.

29

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0002893

> Trial court was not required to grant plaintiffs a continuance to conduct additional discovery before ruling on defendant's summary judgment motion, where plaintiffs provided no details concerning the evidence they expected to develop through additional discovery or why further discovery was necessary. Cal. Civ. Proc. Code § 437c(h).

It is necessary to include summary judgment context in headnotes about discovery at the summary judgment stage. It is not sufficient to merely cite to Fed. R. Civ. P. 56(d), or a state counterpart provision, at the end of the headnote.

## Summary Judgment Affidavits and Evidence

If a court decides that certain summary judgment evidence, such as an affidavit, declaration or document, does not meet evidentiary requirements, the headnote on that evidentiary issue must include the summary judgment context and should focus on the evidentiary requirement at issue.

Summary judgment evidence must comply with the requirements of the summary judgment rule. Possible issues as to affidavits include whether the affiant has personal knowledge of the facts stated therein, or is competent to give an opinion on the issue, or whether the affidavit is conclusory or speculative. The issue may be whether an affidavit sets forth facts as would be admissible in evidence. If the point is the admissibility of evidence, the summary judgment context must still be included. Common evidentiary objections at summary judgment are hearsay, lack of foundation, and relevance.

Avoid headnotes saying that summary judgment evidence "was insufficient" (or "sufficient") to establish something. Instead focus on the particular evidentiary problem, e.g., lack of personal knowledge, conclusory allegations, hearsay, relevance, etc. Alternatively, in the context of the grant of summary judgment, consider whether a headnote should be written substantively without summary judgment context. See Summary Judgment is Warranted Based on the Law , Summary Judgment Ruling Based on Complete Lack of Evidence.

### HEADNOTE EXAMPLES

> Even if vendors' summary judgment affidavits denying knowledge of any foundational cracks in house they sold to purchasers had been uncontroverted, they were not the type of "interested witness" affidavits upon which summary judgment could have been based, where inference was raised that purchasers knew of cracks prior to sale, vendors' subjective awareness of cracks could not have been readily controverted, vendors failed to conclusively show that purchasers could have discovered cracks through ordinary care and due diligence, and purchasers claimed they declined to inspect house in reliance on vendors' assurances regarding lack of known problems in house. Tex. Bus. & C. Code §§ 17.41-17.63; Tex. R. Civ. P. 166a(c).

> Summary judgment affidavit of motorist's chiropractor was speculative and lacked probative value in determining whether motorist's back problems after automobile accident were a "serious injury" under no-fault statute, where it detailed only one six-year-old office visit, failed to mention his treatment of motorist for over three years before accident, and omitted his prior opinion that motorist's injuries were not permanent. McKinney's Insurance Law § 5102(d).

> Seller's inventory of its own goods purporting to indicate that at least a subset of the goods it provided to buyer were conforming was an unsworn, unauthenticated document

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002894

and, thus, was inadmissible to oppose buyer's motion for summary judgment in its breach of contract action against seller. Fed. R. Civ. P. 56(e); Fed. R. Evid. 901.

Statements in former law clerk's declaration, including that he "was not in a professional capacity," that he "did not perform exempt tasks during my employment as a Law Clerk II," that he "was not engaged in work covered by the professional exemption," and that he was "misclassified," were conclusory and could not create a triable issue of fact sufficient to defeat summary judgment on clerk's claim that he was a non-exempt employee entitled to overtime compensation. Cal. Code Regs. tit. 8, § 11040(1)(A)(3).

### EXAMPLE 1

**Note:** This opinion discusses only an evidentiary point about a summary judgment affidavit, such that an evidentiary headnote is warranted.

**OPINION:** As an initial matter, the court considers defendant's argument that plaintiff's affidavit should be disregarded to the extent it is inconsistent with her prior deposition testimony and sworn statement to the Kansas Human Rights Commission ("KHRC"). It is well established that a party opposing a motion for summary judgment cannot establish a genuine issue of fact by offering an affidavit which conflicts with the affiant's prior deposition testimony. Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986). In this case, defendant argues that plaintiff's evidence of retaliation conflicts with her prior statements that defendant discriminated against her based on its perception that she was disabled by alcoholism. The court disagrees. Plaintiff did answer deposition questions about plaintiff's claim of disability discrimination. The court concludes that these questions were not so open-ended as to permit plaintiff to discuss her allegations of retaliation. In other parts of plaintiff's deposition, she did discuss evidence of retaliation. Therefore, plaintiff's affidavit discussing retaliation does not conflict with her prior deposition testimony about disability discrimination. Furthermore, it is immaterial that plaintiff did not include allegations of retaliation in her KHRC complaint. Plaintiff could not pursue these claims with the KHRC, so there was no reason for her to raise these issues at the administrative level.

**HEADNOTE:** Former employee's summary judgment affidavit discussing retaliation as motive for her discharge did not conflict with her prior deposition testimony about disability discrimination, so as to warrant disregarding the affidavit; while employee did answer deposition questions about her claim of disability discrimination, those questions were not so open-ended as to permit her to discuss her allegations of retaliation, and in other parts of her deposition, she did discuss evidence of retaliation.

### EXAMPLE 2

**Note:** Although this opinion mentions a summary judgment affidavit, the Court resolves the point in a substantive manner. Even assuming the allegations in the affidavit are true, the Court concludes that the plaintiff physician is a limited purpose public figure. Only a substantive headnote is warranted.

**OPINION:** In their motion for summary judgment, the defendants characterized Swate as a limited purpose public figure. Unlike a private-figure plaintiff, a public-figure plaintiff must prove "actual malice" in order to maintain a libel action against a media defendant. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 281, 84 S.Ct. 710, 726–27,

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

11 L.Ed.2d 686 (1964). In his third issue, Swate contends that a fact issue exists about whether he is a limited purpose public figure. Swate relies on his affidavit wherein he states,

> I have not been an advocate or attempted to influence the resolution of any public controversies. I have been drawn into court and state action by anti-abortion zealots. I have not been an advocate for any issue that would affect the general public.

Swate contends that because these statements are uncontroverted, the defendants failed to prove that he was a limited purpose public figure. Swate's affidavit, however, is insufficient to characterize Swate as a private figure.

The United States Supreme Court delineated the circumstances under which a person is considered a public figure in *Gertz v. Welch,* 418 U.S. 323, 351, 94 S.Ct. 2997, 3012–13, 41 L.Ed.2d 789 (1974). In *Gertz,* the Court held that a person may become a public figure if: (1) he achieves so much fame or notoriety that he becomes a public figure for all purposes and in all contexts, or (2) he voluntarily injects himself, or is drawn, into a particular controversy and becomes a public figure for a limited range of issues. *See Gertz,* 418 U.S. at 351, 94 S.Ct. at 3012–13. The second circumstance applies to Swate's lawsuit. That is, is Swate a public figure for the issues discussed in the allegedly defamatory communication?

The 24 articles presented by the defendants support the conclusion that Swate is a public figure for the purposes of this lawsuit. These articles date back to 1986 and, if true, describe a medical practice that can only be characterized as atrocious. The type of behavior described by the articles is certainly the type of information that interests the public. Although Swate may not have voluntarily injected himself into controversy, he has certainly been drawn into controversy, so much so that the trial court properly concluded as a matter of law that Swate is a public figure for the purposes of this lawsuit. As a limited purpose public figure, Swate must prove malice to maintain his cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.002 (Vernon 1997).

**WRONG (evidentiary):** Summary judgment affidavit of physician was insufficient to characterize him as private figure for purposes of determining his standard of proof in libel suit against newspaper, publisher, and reporter, where affidavit stated that he had not been an advocate or attempted to influence the resolution of any public controversies, he had not been drawn into court by antiabortion zealots, and he had not been an advocate for any issue that would affect the general public.

 **RIGHT (substantive):** Plaintiff physician was "limited purpose public figure," required to prove actual malice in order to maintain libel action, stemming from newspaper article critical of his medical practice; despite physician's claim that he had not voluntarily injected himself into controversy, physician was drawn into controversy by 24 prior articles which, if true, described a medical practice that could only be characterized as atrocious. Tex. Civ. Prac. & Rem.Code Ann. §73.002. (W &P for "limited purpose public figure" would be appropriate)

32

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

### Non-Trite Summary Judgment Headnotes

While there are many abstract summary judgment headnotes that qualify as trite because they are frequently repeated, do not automatically omit every abstract headnote mentioning summary judgment. Some issues come up less frequently than the typical summary-judgment-standard boilerplate, and it is appropriate to capture those as abstract headnotes. Some examples of non-trite summary judgment headnotes are:

> Personal knowledge requirement for summary judgment affidavits is met in Freedom of Information Act (FOIA) cases by an affidavit or declaration from an agency employee responsible for supervising the records search; there is no need for the agency to supply affidavits from each individual who participated in the actual search. 5 U.S.C.A. § 552; Fed. R. Civ. P. 56.

> Summary judgment affidavit which is contrary to prior sworn statements of affiant is not admissible if court determines that purpose of subsequent affidavit is to create sham fact issue. Fed. R. Civ. P. 56.

> When summary judgment affidavit does not comply with basic requirements set forth in rule, offending portions should be stricken or disregarded by court. Fed. R. Civ. P. 56(e).

See also, the section on Trite Headnotes.

## Directed Verdicts, JNOV, and JMOL

When an appellate court, in passing on the propriety of a ruling on a motion for directed verdict, judgment notwithstanding the verdict (JNOV), or (in federal cases) judgment as a matter of law (JMOL), or a trial court ruling on one of these motions, uses the phrase the jury might find, or the jury would have been justified in finding, or an equivalent phrase, the headnote should ordinarily state that evidence presented a question for the jury. This type of motion may also be called a motion for judgment on the evidence (see, e.g., Indiana Rule of Trial Procedure 50). The editor should not say precluding directed verdict, precluding JNOV, or precluding JMOL.

If the court upholds a directed verdict, JNOV, or JMOL and decides the issue as a matter of law, a substantive headnote should be made on the facts.

If an appellate court decides that the issue was for the jury on a motion for directed verdict, JNOV, or JMOL, but then also decides that the evidence sustains the verdict of the jury on that issue, the holding should ordinarily be covered by a single concrete headnote regarding the sufficiency of the evidence to support the jury's verdict. However, a sufficiency-of-the-evidence headnote should generally not be made when a federal district court or other trial court denies a post-trial motion for JNOV or JMOL by saying sufficient evidence supported the jury's verdict. Weighing the sufficiency of the evidence is the role of an appellate court, not a trial court. In this situation, the headnote should instead state that the evidence presented a question for the jury.

In either case, the words directed verdict, JNOV, or JMOL, or a statement that the trial court properly granted or denied a directed verdict, JNOV, or JMOL, should not appear in the headnote.

#### EXAMPLE 1

**WRONG**: City bore joint statutory responsibility, with state, for safety of portion of arterial highway which passed through city, and thus, city was not entitled to directed verdict, in consolidated personal injury and wrongful death suits brought by survivors of driver and automobile passengers killed and by automobile passenger injured when

33

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

oncoming vehicle crossed over defective and unsafe median barrier and collided with their automobile, on issue of whether city was obligated to undertake capital expenditure for replacement of unsafe median barriers on highway. McKinney's Highway Law § 349-b et seq.

**RIGHT**: Issue of whether city was obligated to undertake capital expenditure for replacement of unsafe median barriers on highway was for jury in consolidated personal injury and wrongful death suits brought by survivors of driver and automobile passengers killed and by automobile passenger injured when oncoming vehicle crossed over defective and unsafe median barrier and collided with their automobile. McKinney's Highway Law § 349-b et seq.

## EXAMPLE 2

**OPINION**: This case, however appears to be a classic battle of the experts. Two medical experts for Tolivert testified she sustained a permanent injury. However, Dr. Hoffman testified for the defense that Tolivert had not sustained a permanent injury as a result of either or both of the accidents, and he did not believe that her later-developed condition of schizophrenia was related to the accidents.

He based his testimony on his examination of Tolivert, the fact that her x-rays and MRI were negative, and other doctors' examinations of her several months after the accidents, which showed a normal range of motion and normal reflexes and strengths. He agreed with Tolivert's counsel that if pain alone equated to permanent injury, she had a permanent injury. However, he testified he often treats patients who complain of pain, without assigning them an impairment rating of a permanent injury. He testified he believed there needed to be some evidence beyond complaints of pain to establish a permanent injury. Otherwise, he said, there are no criteria other than subjective complaints. Since she had full functional ability, he could not assign her an impairment rating based merely on her complaints of pain.

Although Toliverts's counsel did an excellent job of getting Dr. Hoffman to agree with his hypothetical questions, still a fair reading of the transcript reveals Dr. Hoffman's expert opinion was that Tolivert did not sustain a permanent injury as a result of the two accidents. Thus, the issue was properly submitted to the jury. But even if our reading of the transcript in this regard is erroneous, the issue was still one for the jury.

**RIGHT**: Whether motorist sustained permanent injury as a result of either or both automobile accidents was issue for jury in motorist's personal injury action against two different drivers arising out of two separate accidents.

## EXAMPLE 3

**OPINION**: Jackson fails to meet these specified conditions. Since we determined that an ambiguity existed within the Buy-Sell Agreement, the ambiguity is a question of fact for the jury to resolve. Hence, Jackson is unable to prove its entire case as a matter of law. Jackson claims that in order for us to direct the verdict in its favor, it seeks for us to interpret the Buy-Sell Agreement using evidence which it has presented. (FN1) Upon review of Jackson's directed verdict motion we need to look to the evidence as presented by Holdings, the defending party, rather than Jackson's evidence as the moving party. Point denied.

**RIGHT**: Evidence of parties' intent upon entering into ambiguous buy-sell agreement for business created issue for jury in action for breach of agreement.

34

Sensitivity: Confidential

## Jury Instructions

### Whether Jury Instructions Correctly State the Law

Where there is no question as to the language of a jury instruction, or its propriety, but merely whether the law stated therein is accurate or erroneous law, the headnote should be a direct statement of the correct principle of law.

**EXAMPLE 1**

**OPINION**: Veasey contends that the trial court erred by refusing to give his requested charge on mistake of fact under OCGA § 16-3-5. He claims that he was mistaken as to the age of the victim because the youth worked in the bar area of the resort, worked at least 40 hours per week, and had a Mustang vehicle.

Knowledge of the victim's age is not an element of the crime of child molestation, notwithstanding Veasey's claim to the contrary. See Tant v. State, 158 Ga.App. 624, 625(2), 281 S.E.2d 357 (1981). Since a mistaken belief as to the victim's age would not have justified the act, a charge on mistake was not warranted. Id. Smiley v. State, 34 Ga.App. 513(1), 130 S.E. 359 (1925).

**WRONG**: Defendant charged with child molestation was not entitled to jury instruction on defense of mistake as to victim's age, as knowledge of victim's age was not an element of offense. Ga. Code Ann. § 16-3-5.

**RIGHT**: Knowledge of the victim's age is not an element of the crime of child molestation. Ga. Code Ann. § 16-6-5.

Note that in the incorrectly-written headnote, the point is buried in an as clause.

**EXAMPLE 2**

**OPINION**: Our conclusion that an employer may be liable for the retaliatory acts of co-workers, however, does not require us to reverse the jury verdict in this case in favor of UVSC. The instruction given restricted UVSC's liability to the acts of management-level and supervisory personnel. As we have explained, for UVSC to be liable for a campaign of co-worker harassment, management-level or supervisory personnel must either have orchestrated or have known about and condoned the conduct of Gunnell's co-workers. Consequently, the instruction correctly alerted the jury that it would have to find some management or supervisory involvement in the retaliatory conduct to hold UVSC liable for coworker retaliation. The jury chose not to so find.

**WRONG**: District court properly instructed jury so as to limit employer's liability for retaliation under Title VII to acts of supervisory personnel; because employer could be liable for co-worker harassment only if supervisory personnel orchestrated or knew about and condoned the harassment, instruction correctly alerted jury that it would have to find some supervisory involvement in retaliatory conduct to hold employer liable for co-worker retaliation. Civil Rights Act of 1964, § 704(a), as amended, 42 U.S.C.A § 2000e-3(a).

**RIGHT**: Employer could be liable for co-worker harassment only if supervisory personnel orchestrated or knew about and condoned the harassment. Civil Rights Act of 1964, § 704(a), as amended, 42 U.S.C.A. § 2000e-3(a).

35

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Whether Evidence Warrants Jury Instruction

Another type of jury instruction point addresses whether the evidence warrants the giving of a particular instruction. In that instance, the sufficiency of the evidence either in favor of giving the instruction or not giving the instruction should be mentioned. Also, do not use the term charge when referring to a jury instruction. Use instruction. Charge could mean a charge of an indictment or the like.

### EXAMPLE 1

**WRONG**: Trial court properly refused to give deliberate ignorance instruction in securities fraud prosecution, where evidence demonstrated that defendant had actual knowledge that instruments he attempted to sell were counterfeit but chose to disregard that knowledge and, thus, did not warrant the instruction.

**RIGHT**: Deliberate ignorance instruction was not warranted in securities fraud prosecution, where evidence demonstrated that defendant had actual knowledge that instruments he attempted to sell were counterfeit, but chose to disregard that knowledge.

### EXAMPLE 2

Adverse missing witness jury instruction was justified by robbery defendant's failure to call two available alibi witnesses who were with defendant and his mother before robbery occurred, although witnesses could not have verified defendant's presence in his mother's home at time of crime, given that defendant and his mother would have been more credible if other witnesses had corroborated their testimony, omitted testimony related to facts of alibi defense, and alibi was crucial in identification case.

## Propriety of Jury Instruction

Where the court determines the propriety of language of a jury instruction, the nature of the action and alleged infirmity, together with the court's conclusion, should appear. Also, if the court addresses the issue of whether the instruction invades the province of the jury, it is imperative that that language appear in the headnote.

### EXAMPLE 1

**OPINION**: Defendant next assigns error to the trial court's instructions to the jury with respect to mitigation, arguing that the trial court's definition of mitigation unfairly limited the range of evidence that a juror might find to be a basis for a sentence less than death. The trial court instructed the jury that a mitigating circumstance is a fact or group of facts that do not constitute a justification or excuse for a killing or reduce it to a lesser crime than first-degree murder, but that may be considered as extenuating or reducing the moral culpability of the killing or make it less deserving of extreme punishment than other first-degree murders. This instruction was drawn directly from the relevant pattern jury instruction. It was not error. This assignment of error is without merit.

**RIGHT**: Jury instruction at capital sentencing proceeding did not unfairly limit range of evidence that jurors could find to be a basis for a sentence less than death, by providing that a mitigating circumstance was a fact or group of facts that did not constitute a justification or excuse for a killing or reduce it to a lesser crime than first-degree murder, but that may be considered as extenuating or reducing the moral culpability of the killing or make it less deserving of extreme punishment than other first-degree murders.

### EXAMPLE 2

36

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**OPINION**: According to defendant, the evidence supporting the (f)(6) diminished capacity" statutory mitigating circumstance showed that he was a compulsive voyeur under the influence of alcohol; that he was unable to resist the urge to "peep"; and that once he entered the Hudsons' apartment, he was unable to stop himself from committing the crimes. The trial court instructed jurors that they would find the (f)(6) mitigating circumstances "if you find that the defendant had drunk a sufficient quantity of alcohol, that the defendant was under the influence of that alcohol, and also suffered from voyeurism, and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Thus, the jury was not precluded from considering the evidence of diminished capacity that defendant offered in mitigation; therefore, defendant has suffered no constitutional violation.

**RIGHT**: Jury instructions on mitigating circumstance for diminished capacity satisfied defendant's constitutional right to be free from cruel or unusual punishment by allowing jury to consider defendant's evidence on issue during penalty phase of capital murder trial, despite jury's failure to find that defendant's voyeurism and alcohol consumption established diminished capacity; jury was free to disbelieve evidence or to conclude that evidence was not convincing. N.C. Gen. Stat. Ann. § 15A-2000(f)(6).

## Limitation of Actions

Headnotes on limitation of actions should not be a mere recitation of dates with the conclusion that the statute has run.

Limitations points generally fall into three categories:

1. which statute of limitations applies
2. when the claim accrued or the limitations period began to run
3. whether the limitations period was tolled

The headnote should focus on the appropriate underlying issue.

### Which Statute of Limitations Applied

When the issue presented is which statute of limitations applies, the court will frequently be choosing among alternatives. In that case, note the statutes being rejected as well as the one being selected.

#### EXAMPLE

One-year statute of limitations period in all-risk homeowners insurance policy, rather than 18-month statutory period for fire insurance policies, applied to suit arising out of claim for water damage caused by ice dam, since inclusion of coverage against peril of fire did not transform homeowners policy into a standard fire insurance policy. Conn. Gen. Stat. Ann. § 38a-307

### When the Claim Accrued or the Limitations Period Began to Run

Typically a claim accrues and the limitations period begins to run at the same time. Yet there are times when a court will make some distinction between the events and focus on one or the other. It is best to follow the court's language in characterizing the issue.

37

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

### EXAMPLE

**OPINION**: The Brownings had a right to seek relief as soon as they received the corrected tax statement in February 1993 and realized that they were obligated on a contract with an incorrect price. Thus, their action for fraud was time-barred by the time they filed suit in October 1996.

**HEADNOTE**: Cause of action for fraud accrued, and three-year limitations period began to run, when purchasers received corrected tax statement showing that purchased acreage was less than innocently misrepresented by vendors. Wash. Rev. Code Ann. § 4.16.080(4).

When heading a limitations point involving the discovery rule, it is important, for classification purposes, that the headnote reveal the discovery aspect, and not disguise it in the form of ordinary accrual. Use of the phrase "discovery rule" or language such as "knew or had reason to know" should be sufficient to flag the issue.

### EXAMPLE 1

**WRONG**: ADA claims of organization that advocated for rights of homeless people, stemming from relocation of homeless services to new facility, accrued, triggering limitations period under analogous Virginia Rights of Persons with Disabilities Act, no later than day the new facility opened its doors for business. Americans with Disabilities Act of 1990, § 201 et seq., 42 U.S.C.A. § 12131 et seq.; Va. Code Ann. § 51.5-40 et seq.

**RIGHT**: Organization that advocated for rights of homeless people knew or had reason to know of its ADA claims stemming from relocation of homeless services to new facility, triggering applicable limitations period under analogous Virginia Rights of Persons with Disabilities Act, no later than day the new facility opened its doors to the public. ,Americans with Disabilities Act of 1990, § 201 et seq., 42 U.S.C.A. § 12131 et seq.; Va. Code Ann. § 51.5-40 et seq.

### EXAMPLE 2

**WRONG**: Ex-wife's cause of action against ex-husband to enforce divorce decree, which required ex-husband to pay ex-wife a portion of his retirement benefits, accrued at time when parties' daughter told ex-wife that ex-husband had retired and started a business using his retirement benefits. Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

**RIGHT**: Ex-wife's cause of action against ex-husband to enforce divorce decree, which required ex-husband to pay ex-wife a portion of his retirement benefits, accrued under the discovery rule at time when parties' daughter told ex-wife that ex-husband had retired and started a business using his retirement benefits. Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

## Whether the Limitations Period was Tolled

The reasons a limitations period may be tolled vary among jurisdictions, and may include, among other reasons, that the plaintiff is a minor or imprisoned or insane or otherwise disabled, that the defendant has left or fled the jurisdiction, that an appeal or related action is pending, or that a stay is in effect.

### EXAMPLE

Injunctions entered in mortgagor's fraud action against mortgagee did not toll limitations period for mortgagee's foreclosure claim, where injunctions merely prevented mortgagee

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0002902

from conducting a foreclosure sale or otherwise dispossessing mortgagor of interest in subject property but did not restrain mortgagee from filing suit for judicial foreclosure of lien. Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a, c).

## Abuse of Discretion

It is generally desirable to say something more substantive than that some action by a trial court was or was not an abuse of discretion.

If it is obvious that the trial court's ruling was right or wrong, the editor should write the headnote substantively, rather than in terms of abuse of discretion. For example, if an appellate court says that the trial court did not abuse its discretion in imposing Rule 11 sanctions, the headnote should generally be written in terms of whether Rule 11 sanctions were appropriate or were warranted.

As another example, if an appellate court says that a trial court did not abuse its discretion in admitting evidence, the headnote should reflect that the evidence was admissible. If admitting the evidence was an abuse of discretion, the headnote should reflect that the evidence was not admissible.

If the court states the issue in two ways, one in terms of abuse of discretion and one in substantive terms, write the headnote substantively.

In the gray area where the editor is unable to determine whether the court has clearly decided an issue substantively, the editor may use the abuse of discretion language in writing the headnote. Do not overstate the court's conclusion if the appellate court is truly deferring to the trial court's exercise of discretion.

## Preservation/Waiver

Concrete headnotes are required for points pertaining to whether an issue has been preserved for appeal or whether a party has waived an issue for appellate review, provided the court gives reasoning for this conclusion. These are not to be omitted on the ground that such points may not be major points in the case. However, these types of points should not be included in the synopsis holdings, unless the preservation/waiver conclusion is dispositive of the appeal or the appellate court is setting a new standard or clarifying existing rules.

### EXAMPLE

Defendant failed to preserve for appellate review his claim that he was prejudiced by admission of evidence of his codefendant's gang affiliation, although defendant objected to such evidence at trial, where defendant did not include the issue in his post-trial motion for new trial.

## Ineffective Assistance of Counsel

Cite the Sixth Amendment in ineffective assistance points, unless it's absolutely clear the court is applying only state law. In that situation, the state provision(s) should be cited

With the *Strickland* test, it is best to think of the words "counsel was ineffective" as embracing both deficiency and prejudice. Thus, "counsel was deficient in…" means half the test is satisfied, while "counsel was ineffective" ordinarily means a Sixth Amendment violation is established. Often two concrete headnotes will be needed, with a headnote addressing the court's discussion for each prong.

39

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## SCENARIOS:

**No Trial Court Error:** If the ineffectiveness claim is based on counsel's conduct with regard to alleged trial court error, and the court resolves the claim by saying there was no such error, write the headnote to that underlying claim, and make no mention of counsel.

### EXAMPLE

**OPINION:** Defendant claims that he received ineffective assistance of counsel as a result of trial counsel's failure to object to the admission of photographs depicting the victim's headless corpse. The defendant claims the photographs should have been excluded because they were unduly gruesome. We reject such arguments. The trial court properly weighed the relevance of the photographs, to show the crime scene and the manner of the killing, against their gruesomeness, and correctly concluded that their probative value was not substantially outweighed by the danger of unfair prejudice.

**HEADNOTE**: Probative value of photographs depicting victim's headless corpse, to show crime scene and manner of killing, was not substantially outweighed by danger of unfair prejudice, in guilt phase of capital murder trial.

If the court says there was trial court error, that counsel was deficient in his response to that error, and that defendant was or was not prejudiced, write one headnote to the error point and another headnote to the prejudice prong of the *Strickland* test. The deficiency prong need not be addressed separately. It will be addressed backhandedly in the prejudice prong by language such as "counsel's failure to object to…prejudiced defendant and, thus, constituted ineffective assistance…"

**Both Deficiency and Prejudice Prongs Addressed:** If a court says counsel was deficient but then, as part of a separate discussion, goes on to say defendant was or was not prejudiced, the points should ordinarily be in separate headnotes, so long as it is clear that the conclusion that counsel was deficient is not itself determinative of the ineffective assistance issue. For the deficient performance headnote, state something like: "Counsel's failure to...amounted to deficient performance, as element of ineffective assistance claim…" For the prejudice headnote, describe the counsel's conduct as deficient performance (since the court has already decided this), state whether defendant was or was not prejudiced, and state definitively whether there was or was not ineffective assistance. Something like: "Counsel's deficient performance in failing to...did/did not prejudice defendant and, thus, did/did not amount to ineffective assistance…"

In a matter not involving alleged underlying trial court error, if the court says counsel was not deficient, make that headnote, and, if the court goes on to gratuitously say, with sufficient distinct analysis to justify another headnote, that defendant was not prejudiced, make another separate headnote. Include ineffective assistance of counsel context in both.

It is especially critical to include ineffective assistance context in the concrete headnote on the prejudice prong in order to distinguish *Strickland* prejudice from harmless error analysis, plain error analysis, etc.

**Deficiency Prong Skipped or Assumed:** The court may assume or skip over the deficiency prong and simply say that defendant was not prejudiced by counsel's alleged actions or inaction. In that case, the headnote should read something like "Defense counsel's failure to… did not prejudice defendant, and thus could not amount to ineffective assistance…"

**Reasonable Trial Strategy:** When the court determines that there was no ineffective assistance, because counsel's conduct represented a reasonable trial strategy, the headnote should say something like "counsel's conduct…was reasonable trial strategy, and therefore was not ineffective assistance."

40

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**Possible Templates:**

**Deficient Performance:**

Defense counsel's failure to... amounted to deficient performance, as element of ineffective assistance claim...

Defense counsel's failure to...was not deficient performance and, thus, was not ineffective assistance...

Defense counsel's conduct…was reasonable trial strategy and, therefore, was not ineffective assistance...

**Prejudice:**

Counsel's failure to object to...prejudiced defendant and, thus, constituted ineffective assistance...

Defense counsel's failure to...did not prejudice defendant and, thus, did not amount to ineffective assistance...

Counsel's deficient performance in failing to...did/did not prejudice defendant and, thus, did/did not amount to ineffective assistance…

**Synopsis holdings:**

In cases with multiple holdings, one synopsis holding saying "counsel's failure to...was/was not ineffective assistance" may be used to cover two separate concrete headnotes on the deficiency and prejudice prongs for that claim. In that scenario, link the synopsis holding to the first concrete headnote addressing the ineffective assistance claim.

In lengthy cases in which the defendant unsuccessfully raises multiple ineffective assistance claims (such as death penalty cases), it is permissible to have just one holding saying "defendant was not denied effective assistance of counsel," or to group some of the ineffective assistance claims together in one holding, e.g., "counsel's failure to exercise peremptory strikes against prospective jurors did not amount to ineffective assistance." Link the synopsis holding to the first relevant concrete headnote.

## Encounters with Police

An encounter between a police officer and a suspect typically involves a series of discrete steps that may need to be addressed in separate headnotes. You need address only those issues that are disputed and resolved. If, for example, a court says it need not address whether an encounter was transformed from an investigatory stop into an arrest, because police did not have a reasonable suspicion of criminal activity, you would make the point that police did not have a reasonable suspicion of criminal activity sufficient to justify an investigatory stop. Among the possible issues:

### Arrests

- Is the encounter consensual or does it qualify as an investigatory stop? Or an arrest?
- Was a consensual encounter transformed into an investigatory stop?
- Was there a reasonable suspicion justifying the investigatory stop?
- Was there justification for a frisk during a lawful stop?

41

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

- Could the police seize an article discovered during a lawful frisk?
- Was a lawful investigatory stop transformed into an arrest?
- Was there probable cause for an arrest?
- Were there grounds for a warrantless arrest?
- Were there grounds for a citizen's arrest?

**Searches**

- Was the place searched one where there was a reasonable expectation of privacy?
- Does the defendant have standing to challenge the search?
- Was there probable cause for a warrantless search?
- Were there exigent circumstances justifying a warrantless entry?
- Did the supporting affidavit provide probable cause justifying a search warrant?
- Did the search warrant sufficiently describe the premises to be searched?
- Did the search warrant sufficiently describe the object of the search?
- Was the warrant properly executed?
- Was an item seized in plain view?
- Was the criminal nature of the item apparent?
- Did police exceed the scope of the search warrant?
- Was the search incident to a lawful arrest?

**Statements**

- Was the suspect in custody?
- Was the suspect being interrogated?
- Was the suspect given proper *Miranda* warnings?
- Did the suspect invoke his right to counsel?
- Did the suspect reinitiate the communication with police?
- Was a confession voluntary and intelligent?
- Was a confession sufficiently corroborated?

**Exclusionary Rule**

- Given that the search/stop/arrest was unlawful, was the resulting evidence subject to suppression?
- Was the evidence tainted by the constitutional violation?
- Was the evidence the "fruit of the poisonous tree"?
- Did the evidence fall within an exception to the exclusionary rule, such as the good faith exception to the exclusionary rule, the independent source doctrine, or the inevitable discovery doctrine?

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002906

## Purpose of Statute Points

Headnotes should be made when a court describes the purpose of a statute, unless that purpose is a recitation of the statute or self-evident from the statute. Headnotes do not need to be made from general discussions of legislative history, e.g., "Congress enacted ERISA in order to…"

### EXAMPLES

Purpose of statute prohibiting purchase of alcohol by minors for their consumption or the consumption of others is to protect the welfare of children from the danger of alcohol. Mass. Gen. Laws Ann. ch. 138, § 34A.

## Restatement Adoption or Rejection

A court's decision to adopt or reject a section of a Restatement as the governing law in its jurisdiction is a headnoteable event.

However, merely citing to the Restatement as an authority is not a decision to adopt the Restatement. There needs to be express words of adoption by the Court

Reference in headnotes to standards adopted by courts from the Restatement should include specific mention of the standard. The standard must be fully explained. A simple statement such as Restatement of Torts 2d, Section 1-212 has been adopted, is not permissible.

### EXAMPLE

Restatement (Second) of Torts section, providing that one who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, would be adopted. Restatement (Second) of Torts § 652C.

This type of headnote need not be made when the court is merely noting that a Restatement section has been adopted or rejected in the past.

Where the court's rule or ruling is based on the Restatement, it should be cited at the end of the headnote. For citation styles, see Statutes and Related Materials - Restatements.

## Construction of Instruments

A headnote on the construction or validity of contracts, wills, licenses, charters, leases, city ordinances, etc., should ordinarily contain a brief summary thereof. Where the particular language of the instrument becomes critical, it should be quoted verbatim.

### EXAMPLE

Provisional employees were "temporary employees" for purposes of the notice requirement of city ordinance providing that, if the discharge is not for disciplinary reasons, permanent employees must be given 45 days' notice and temporary employees must be given ten days' notice. (Note that a W & P reference would be appropriate here.)

43

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Defamation

In concrete headnotes involving defamation issues, parties should be given characterizations more specific than "plaintiff" and "defendant" if possible. Describe the parties in relation to the making of the statements at issue, e.g., "celebrity" and "author of unauthorized biography of celebrity." Specific characterizations should be preferred in the synopsis as well.

Factual context as to the nature of the statements and the circumstances in which they were made should be included in substantive concrete headnotes. In describing the statements at issue, either use the actual language of the statements or a description of the precise nature of the statements in terms of why they would be thought defamatory by the average person.

For example, "statements by parent of student to principal accusing football coach of sexually abusing student" (if supported by the opinion) is better than "statements by parent of student to principal accusing football coach of misconduct."

It is also important to describe the person or persons to whom the allegedly defamatory statements were made, e.g., "the school principal."

When a defamation defendant asserts a privilege, be specific as to the precise nature of that privilege. Identify the privilege as absolute or conditional, if possible. Also, identify the specific privilege at issue if it is given, e.g., a "fair report privilege," "privilege for statements made in judicial proceedings," or "privilege involving a common duty or common interest."

## Damages

Headnotes dealing with the excessiveness or adequacy of particular awards of damages for personal injury should indicate the precise nature of the injuries, whether they are temporary or permanent, and important facts, if available, such as the plaintiff's age, sex, and occupation. The headnote should identify the type of damages at issue. The headnote should also mention the dollar figure awarded if the quantum of damages is at issue.

The factual setting and nature of the action may be disclosed when necessary to ensure a complete understanding of the case.

Undisputed items of special damages, such as hospital expenses, loss of wages, etc., need not be mentioned when there is no dispute as to the recovery for those items.

Care should be taken in using the correct damage terminology in the headnote. Damages refer to the award. Hence, a plaintiff is entitled to damages or a damages award, not a damage award.

### EXAMPLE

Injured motorist was entitled to exemplary damages of $10,000 for accident in which her vehicle was struck by off-duty police officer's unmarked police car, given that officer's blood alcohol level four hours after accident was 0.15%, witnesses saw officer driving erratically, evidence supported conclusion that officer's intoxication contributed to his ability to respond appropriately to situation, and officer acted with conscious indifference to the consequences by driving home after consuming at least six drinks in the preceding hours. La. Civ. Code Ann. art. 2315.4.

44

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Why Evidence is Admissible

In addressing an issue as to the admissibility of evidence, the editor should note what evidence is involved and why it is admissible. A determination of admissibility will likely involve one of the following issues:

- Is the evidence or testimony relevant?
- Is the probative value of the evidence substantially outweighed by danger of unfair prejudicial?
- Does the evidence qualify as evidence of habit or custom or routine practice?
- Is evidence of other crimes or acts proffered for something other than to show propensity to commit a crime?
- Is the evidence hearsay or does it come within a hearsay exception?
- Does the evidence have a proper foundation or is it properly authenticated?
- Is a document the original or does it meet the requirements for admitting a reproduction?
- Is a document a public record?
- Is a witness competent?
- Is testimony based on personal knowledge?
- Is an expert qualified?
- Is an issue appropriate for expert or lay opinion?
- Is testimony privileged?
- Is the evidence appropriate for impeachment?
- May the court take judicial notice?
- Does the evidence relate to a subsequent remedial measure?
- Does it pertain to settlement negotiations or plea negotiations?
- Is it evidence of liability insurance?

> **EXAMPLE**
>
> Statements of defendant's children, that "daddy is downstairs starting a fire," were admissible at capital murder trial under excited utterance exception to hearsay rule.

If the dispute relates to the application of the exclusionary rule, you would not likely refer to admissibility at all. Instead focus on the substantive issue or on the applicability of the exclusionary rule, if appropriate. Potential issues include:

- Was a search or arrest valid?
- Was a custodial interrogation proper?
- Is the evidence sufficiently attenuated from any illegality?
- Were identification procedures unduly suggestive?
- Is there an independent basis for an in-court identification?
- Does the exclusionary rule apply to this type of conduct by police?
- Did the good faith exception to the exclusionary rule apply?

The propriety of admission of evidence also often depends on the time it is offered. When material, the headnote must disclose whether evidence was offered in chief, rebuttal, in the guilt phase of a capital murder trial or the penalty phase, etc. It may also be necessary to disclose whether testimony was given on direct, cross-examination, or redirect examination.

> **EXAMPLE**
>
> Rebuttal testimony by witness about collateral acts of extraneous misconduct that defendant in sexual assault case allegedly committed against her was not admissible as

45

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

relevant to sexual assault charge, but was admissible to impeach defendant regarding his faithfulness, where defendant asserted during direct examination that he had not had any affairs until after his wife's accusations, thereby opening the door to the issue of his marital fidelity.

Rule 403 of the Federal Rules of Evidence (along with analogous state rules) deals with the excludability of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Most often the court addresses the issue of whether the probative value of the evidence outweighs its prejudicial effect. It is not enough in such a headnote to merely mention that the admission of the evidence would be prejudicial. The editor must include whether the probative value of the evidence outweighs its prejudicial effect.

### EXAMPLE

Probative value of any evidence of son's alleged intoxication at fraternity party, where son died after falling off balcony, was not outweighed by its prejudicial effect, in parents' negligence action against property owner and others. Fed. R. Evid. 403.

Probative value of evidence of defendant's previous firearm-related arrest was not substantially outweighed by its prejudicial effect in prosecution for being a felon in possession of a firearm; government did not place undue emphasis on arrest when it was introduced into evidence, nor did it refer to such evidence in its closing argument, and district court twice instructed jury that such evidence could be considered only for limited purposes. 18 U.S.C.A. § 922(g)(1); Fed. R. Evid. 403, 404(b).

Probative value of the trial court allowing victim to remove her prosthetic eye in the presence of the jury to demonstrate the severity of her injury was not outweighed by danger of unfair prejudice, during prosecution for aggravated battery; to establish aggravated battery, the State was required prove defendant had inflicted an injury on the victim "that caused protracted loss or impairment of the function of a bodily member or organ," and the removal of prosthetic eye was relevant and probative given the State's burden to prove a protracted injury. Ind. Code Ann. § 35-42-2-1.5(2); Ind. R. Evid. 403.

## Sufficiency of Evidence

In addressing whether there is sufficient evidence to support a conclusion, the court will often detail the evidence throughout many pages of the opinion. Obviously, not all of the evidence discussed can be included in the headnote. The editor must sift through the evidence, considering such factors as whether any of the evidence is more interesting than any of the other evidence recited, whether some evidence addresses particular elements required for the cause of action or criminal offense, and whether the court stresses any particular evidence.

Be careful in setting forth the legal conclusion that is supported by the evidence. In the grand scheme of things, the ultimate issue in the case may be whether an involuntary manslaughter conviction is supported by the evidence. However, in arriving at that conclusion, the court must first determine whether the defendant acted recklessly. If that is the case, that should be specifically mentioned in the headnote.

### EXAMPLES

46

Sensitivity: Confidential

There was sufficient evidence that defendant acted recklessly in leaving her three-month-old child unattended in car for four hours on summer day, resulting in his death by heat stroke, to support her conviction for involuntary manslaughter; evidence indicated that defendant left child in car to get some uninterrupted sleep, and fact that each of car's back windows was opened about four inches indicated that defendant knew car could become hot.

Evidence that defendant did not drop his pistol until after he punched and kicked victim was sufficient to establish that defendant was armed during the beating, as required to support armed violence conviction.

What kind of evidence is at issue may also be important to the headnote whether the evidence is circumstantial or accomplice witness testimony.

### EXAMPLE

Evidence, particularly the testimony of a police officer who had observed the offense, was sufficient to support a conviction for unlawful delivery of a controlled substance, although no money or contraband was found on defendant when he was searched minutes after the offense. 720 Ill. Comp. Stat. Ann. 570/401(d).

A where clause may be used in a sufficiency of the evidence point if the where clause gives the reason for why the evidence was sufficient and is not a mere listing of the evidence which supports the conviction. In the example below, the evidence was sufficient because of the victim's testimony regarding what happened. If other evidence was listed along with the testimony, a where clause would not be appropriate.

### EXAMPLE

**RIGHT:** Sufficient evidence supported attempted murder conviction, where victim testified that defendant and three or four other men confronted him, that defendant said "Let's kill this punk," and that one man held victim while defendant punched him in jaw and hit him several times in face with 40 ounce beer bottle.

**WRONG:** Sufficient evidence supported conviction for delivery of controlled substance, where undercover officer testified that he made controlled buy of narcotics, he radioed description of seller and location to enforcement team, approximately five minutes later enforcement team had two people in custody, undercover officer identified defendant as seller, and other person in custody was in possession of marked $10 bill used in controlled buy.

Where a case presents a controversy both as to the weight and sufficiency of the evidence and as to the law applicable to the facts found, the weight and sufficiency point and the substantive law decision should be separately stated.

Do not make sufficiency of evidence points for findings of fact in federal district court cases. Sufficiency of evidence points should only be made for conclusions of law.

## Pleading

Many pleading issues, as raised by a motion to dismiss for failure to state a claim, actually challenge the right of recovery under governing law, even though the court's language may be steeped in the language of pleading. Only rarely is the actual wording of the pleading at issue. Only rarely would language "...failed to state a claim" be appropriate in a headnote. If the point is that plaintiff failed to allege ..., as required to state a claim for ... that will be a pleading point.

47

Procedural language regarding dismissal, such as "and thus dismissal was warranted," should not be included.

If the right of recovery is what is really at issue, the headnote will involve such issues as

- existence of (private) right of action
- existence or scope of right
- possibility of liability
- existence or scope of duty
- requirement(s) for particular entitlement
- what is, or is not, required for a certain cause of action
- whether a requirement of the cause of action is satisfied
- whether some injury would amount to injury required for a particular cause of action
- right to recover for certain injuries
- standing
- immunity or lack thereof

### EXAMPLE 1

**OPINION:** Similarly, General Adams' investigation into ways to have Dr. Sabow's medical license revoked, again allegedly coming in response to the Sabows' efforts to find out more about Colonel Sabow's death, also supports a cause for intentional infliction under California law. General Adams alleged use of illegitimate means (instructing Marine Corps personnel to investigate ways in which Dr. Sabow's medical license could be attacked) to fulfill impermissible ends (silent criticism and prevent further inquiries about the military's investigation) clearly supports a claim for intentional infliction.

Moreover, the outrageousness of General Adams' alleged conduct is magnified because the target of his attack was a constitutionally protected property interest, namely Dr. Sabow's medical license. See Schware v. Board of Bar Examiners, 353 U.S. 232, 238-39, 77 S.Ct. 752, 755-56, 1 L.Ed.2d 796 (1957) (holding that a professional's license is a protected property interest); Suckow v. Board of Medical Examiners, 182 Cal. 247, 187 P. 965, 966 (1920) ("The right to practice medicine is, like the right to practice any other profession, a valuable property right, in which, under the Constitution and laws of the state, one is entitled to be protected and secured." (internal quotations omitted)). In sum, the district court's dismissal of the part of the Sabows' intentional infliction claim based on the actions of the NIS and JAG investigators is affirmed. The Sabows successfully stated a claim, however, for intentional infliction of emotional distress based on the March 1991 meeting and the alleged attempt to investigate Dr. Sabow.

**WRONG:** Family of Marine Corps officer who died of gunshot wound stated a claim for intentional infliction of emotional distress under California law based on conduct of Marine Corps general in relation to decedent's brother, a doctor who questioned conclusion of investigators that death was a suicide; complaint alleged that general instructed Marine Corps personnel to investigate ways in which brother's medical license could be attacked; alleged use of illegitimate means to fulfill impermissible ends of silencing criticism of military's investigation supported claim.

48

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**RIGHT:** Allegation that Marine Corps general instructed Marine Corps personnel to investigate ways in which medical license of deceased officer's brother could be attacked, in order to silence criticism and prevent further inquiries about military's investigation into officer's death, alleged extreme and outrageous conduct as required to state claim, under California law, for intentional infliction of emotional distress.

### EXAMPLE 2

**OPINION:** Physician's complaint, which alleged that hospital received federal funds and summarily suspended his staff privileges because of his race, stated a claim under civil rights statute prohibiting racial discrimination in any program or activity receiving federal financial aid. Civil Rights Act of 1964, § 601, 42 U.S.C.A. § 2000d and that it has impermissibly discriminated against him based on his race. As discussed above, this states a Title VI claim under Wrenn.

**RIGHT:** Physician stated a claim under civil rights statute prohibiting racial discrimination in any program or activity receiving federal financial aid by alleging that hospital which received federal funds summarily suspended his staff privileges because of his race. Civil Rights Act of 1964, § 601, 42 U.S.C.A. § 2000d.

### EXAMPLE 3

**OPINION:** We affirm, substantially for the reasons stated in its thoughtful and detailed opinions below, the district court's dismissal under Fed.R.Civ.P. 12(b)(6) of (i) Drake's claims based on Delta's alleged violations of drug testing regulations, because there is no implied private right of action for employees under those regulations.

**RIGHT:** There is no implied private right of action for violations of Federal Aviation Administration (FAA) drug testing regulations. 49 U.S.C.A. § 46101(a); 14 C.F.R. Pt. 121, App. I.

On the rare occasion when the court denies a motion to dismiss because of a factual dispute, a headnote like the following might be appropriate:

### EXAMPLE

Issue of whether claim was barred by statute of limitations could not be resolved at motion to dismiss phase because of factual dispute as to when plaintiff learned or reasonably could have learned of alleged ….

## Error Headnotes

It is important to be precise when referring to error. The distinctions between error, harmful error, prejudicial error, reversible error, plain error, invited error, and clear error are very significant to our customers. The precise nature of the error also greatly affects the classification of the headnote.

**Often, two headnotes will be required** to dispose of an error. The first headnote typically will discuss whether error occurred in the first instance or whether a challenge to the error was preserved, while the second headnote will address whether the error was plain error, reversible error, clear error, prejudicial error, harmful error, etc.

A headnote that there was underlying error should not say "trial court erred..." Instead it should say, for example, that some witness was incompetent, or some evidence was irrelevant, or some sentence was excessive, or some instruction created confusion. A second headnote will say, for example, that the error in admitting the testimony of the incompetent witness was or was not

49

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

harmful (or prejudicial, or reversible) in light of the other evidence presented or the other actions taken by the trial court.

If a challenge to the underlying error was not preserved, the court may discuss whether it was **plain or fundamental error.** If the court resolves the plain error issue by saying there was no underlying error, just make the underlying point. E.g., the court says there was no plain error in allowing certain argument because the argument represented a proper plea for justice, just make the underlying point that the specified argument was a proper plea for justice.

A determination of **clear or manifest error** strictly applies only to finding of fact. If an appellate court purports to find some conclusion of law "clearly erroneous," the underlying substantive point should ordinarily be picked up.

The **invited error** doctrine precludes a party from obtaining relief based on an error it effectively requested. For example, if a party claims submitting some issue to the jury created confusion, but that party is the one that requested the issue be submitted to the jury, no relief would be available. "Any error in admission of allegedly confusing self-defense instruction to jury was invited error, which provided no basis for relief from murder conviction, where instruction was requested by defendant."

On some occasions, the court may not decide whether there was error at all, but will discuss whether it was **harmless**. An example of a standard construction for this instance is, "Trial court's error, if any, in allowing prosecutor to ask murder defendant to comment on credibility of another witness was harmless, where defendant simply reiterated his claim that he did not speak with witness in any depth at all."

## Elements of Test

When creating a headnote that refers to elements of a test or the like and the court emphasizes the elements by giving them numbers, Roman numerals, or letters, you may follow copy. It is not necessary to change Roman numerals or letters to Arabic numbers, to change brackets to parentheses, or to add an open parenthesis if the court omitted that, e.g., "1), 2)." However, do not insert numbering for elements or factors in your headnote if the Court does not use numbering. Also, do not phrase the elements as questions. If the Court sets out the elements as questions, you should reword them.

---

**EXAMPLE**

**WRONG:** Under Ohio law, test for determining whether unconstitutional provision may be severed asks: (1) Are constitutional and unconstitutional parts capable of separation so that each may read and may stand by itself? (2) Is unconstitutional part so connected with general scope of whole as to make it impossible to give effect to apparent intention of legislature if clause or part is stricken out? (3) Is insertion of words or terms necessary in order to separate constitutional part from unconstitutional part, and to give effect to former only?

**RIGHT:** Under Ohio law, test for determining whether unconstitutional provision may be severed requires consideration of: (1) whether constitutional and unconstitutional parts are capable of separation so that each may read and may stand by itself, (2) whether unconstitutional part is so connected with general scope of whole as to make it impossible to give effect to apparent intention of legislature if clause or part is stricken out, and (3) whether insertion of words or terms is necessary to separate constitutional part from unconstitutional part, and to give effect to the former.

50

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

## Attorney Discipline

Attorney discipline cases should be headnoted in accord with the rules governing other types of cases, though the caseheader should be circumspect in his/her description of the attorney's conduct and violations, taking special care to ensure that the court has in fact found the attorney to have committed the acts.

Headnotes should generally be made for any developed discussion of whether the attorney's conduct has violated a disciplinary rule.

### EXAMPLE

Attorney's false assurances to client that he had prepared and filed a judgment entry to document custody and support agreement violated professional rules prohibiting a lawyer from neglecting an entrusted legal matter, failing to carry out a contract of professional employment, and engaging in conduct involving dishonesty. Code of Prof.Resp., DR 1-102(A)(4); DR 6-101(A)(3); DR 7-101(A)(2).

There will also generally be a concrete dispositional headnote that notes the sanction warranted by the attorney's conduct, and possibly mentions significant circumstances in aggravation or mitigation.

### EXAMPLE

Permanent disbarment was appropriate sanction for attorney's conduct in seriously neglecting client's cases, repeatedly deceiving clients regarding filing of pleadings on their behalf, and ignoring investigative inquiries and resulting disciplinary proceedings, especially in light of prior discipline for other serious misconduct. [cite relevant rules of professional conduct]

Sufficiency of the evidence points are generally disfavored, as such a headnote runs the risk of describing the attorney's conduct in too much detail. Also, a headnote concluding that certain conduct violates as disciplinary rule is certainly more useful to researchers, and a sufficiency of evidence headnote would classify to a less valuable weight and sufficiency line.

The mandate in the synopsis for such cases should typically be something like "Disbarment ordered" or "Suspension ordered," not just "So ordered."

## Practice Points

Statements as to the proper or preferred practice should be reflected in a headnote. If possible, they should be appended to a headnote which approves or criticizes the practice actually pursued in the case.

### EXAMPLES

Although the better practice is to attach a copy of the proposed pleading as an exhibit to motion papers, on a motion for permission to serve an amended answer, so that appellate court may review it in conjunction with court's examination of motion's potential merit, that omission may be overlooked when the party opposing the application has failed to allege prejudice.

Trial judge's refusal to allow defense counsel to reopen his cross-examination of victim to impeach her with prior convictions was not an abuse of discretion, although better practice would have been to allow counsel to reopen, where counsel had opportunity to

51

use victim's prior convictions and failed to do so, yet otherwise did effective job of impeaching her credibility.

## Burden of Proof

Statements as to which party has the burden of proof or of producing evidence on a particular issue should be represented in a headnote, as should statements as to what degree of proof is required.

### EXAMPLE

South Carolina Highway Department, county, and city had burden of proof on their claim that Surface Transportation Board (STB) had exclusive jurisdiction over private landowner's action claiming ownership to property that railroads had quitclaimed to county and city.

## Presumptions and Judicial Notice

Statements regarding presumptions, including what they are, whether they are rebuttable, and whether they are mandatory, should be reflected in a headnote.

### EXAMPLE

Human Rights Act plaintiff must establish a prima facie case of discrimination which gives rise to a rebuttable presumption that employer unlawfully discriminated. 75 Ill. Comp. Stat. Ann. 5/1-101 et seq.

A headnote should be made when a court states that something is or is not a matter of common knowledge or that the court will or will not take judicial notice of a particular fact or type of fact, even though there is no opposing contention.

### EXAMPLES

Court of Appeals would take judicial notice of the legislative history, including reports or Senate and Assembly committees, of an ambiguous statute in ascertaining its meaning.

Appeals Court does not take judicial notice of zoning by-laws.

## Standard of Review

Statements as to the standard of review on appeal from a lower court or a governmental agency should be reflected in the headnote, unless the statements are trite. Headnotes should be made both for general standards and for any particular standard that might apply in the case because of a procedural anomaly. A standard of review headnote is not required to be abstract, and can possibly or preferably be a concrete headnote based on the court's language.

### EXAMPLE

On appeal from the denial of a petition for relief from the statute that precludes a suit for damages against a public entity unless a timely written claim has been presented to that entity, the standard of review is abuse of discretion. Cal. Gov't Code, § 945.4.

52

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**TR-0002916**

## Bracketed Numbers

### In General

If a case has more than one headnote, a bracketed number corresponding to each numbered headnote will be inserted in the opinion. This is done by linking the headnotes to paragraphs of the opinion. Even if there is only a single headnote, it must be linked to the opinion.

### Abstract Headnotes

The bracketed number for an abstract headnote should appear on the paragraph where that statement is made. This is true even when the court's discussion of the abstract issue extends over more than one paragraph, leading up to the court's statement of the abstract principle (often prefaced with words like "we hold that" or "we conclude that"). In that case, the bracketed number should not be placed at the beginning of the court's discussion, but in the paragraph where the abstract principle is ultimately stated.

If there are multiple abstract headnotes in a paragraph, they should appear in the same order as the pertinent sections of the text. If there are headnotable points in the opinion's footnotes, they should be ordered in accord with the placement of the footnotes, see Bracketed Numbers: Footnotes.

If you are making an abstract headnote that tracks a court headnote, but the precise language of that court headnote does not appear in the body of the opinion, place the bracketed number on the paragraph that contains language that most closely resembles the court headnote. If you are unable to determine where to put the bracketed number, ask for help from a revisor.

Some courts will state their abstract holding in the first paragraph of the opinion, or in a "conclusion" paragraph at the end of the opinion. Generally, the abstract headnotes should not be placed in those paragraphs, but rather in the appropriate intervening paragraph where the court also states that holding. An exception can be made on those rare occasions in which the court clearly states the abstract holding at the beginning or end of the opinion and fails to do that anywhere else.

### Concrete Headnotes

If a concrete point of law is taken from a discussion that extends over more than one paragraph, place the number at the beginning of the discussion, unless it extends over several paragraphs that include the court's recitation of abstract principles and/or discussion of prior holdings, in which case the number should be placed at the point where the court begins the primarily concrete discussion of its holding.

A concrete headnote should be placed in a paragraph that identifies the concrete issue and/or first addresses the issue in terms of the facts of the case. The headnote should not be placed in a paragraph that consists only of abstract principles.

On occasion, the court will state its concrete holding in the first paragraph of the opinion. However, the court will then set forth the facts of the case and only later address the issue and then restate its holding. The headnote number should be inserted where the court later addresses the issue. The headnote number should not be inserted in the paragraph at the beginning of the

53

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

opinion. Wisconsin and California are the state courts most apt to state the holding immediately in the beginning of the opinion and then address the issue and restate the holding later.

EXAMPLE

**OPINION**: Home Security of America Insurance Services, Inc., sued two former employees and an insurance-agency competitor, seeking damages for a variety of business torts. After a lengthy trial, the jury found in Home Security's favor on all of its claims and set its damages at $407,000 (plus $50,000 punitive damages against two of the individual defendants). In post-verdict proceedings, the trial court granted the defendants' motion for directed verdict on all but one of the damage questions, effectively reducing the jury's damage award to $7,000. The court's ruling was based on its determination that, while there was evidence to support the jury's findings on essentially all of the "liability" questions, Home Security had failed to prove that the defendants' actions were a cause of its losses.

And while the parties frame the issues somewhat differently, we see the central question on appeal as whether there was any evidence in the record to support a finding by the jury that the defendants' acts were a substantial factor in reducing Home Security's profits. Because our review of the record satisfies us that such evidence exists, we hold that the court erred in nullifying the jury's answers to the damage questions. We also conclude that the trial court acted properly when it set aside the jury's findings of unfair competition on the part of four of the five defendants. Finally, Home Security's arguments have not persuaded us that the punitive damage award should be reinstated. We therefore affirm in part and reverse in part.

▶ In the above opinion, the headnote numbers should not go at the beginning of this second paragraph. Instead, the numbers should be placed later in the opinion when the court discusses the issues.

Likewise, do not be led astray by a court's statement of "we hold" appearing at the end of an opinion or section of the opinion. More often than not, this is a recitation of the court's concrete point, but the discussion of the point begins earlier in the opinion and relies on discussion occurring earlier in the opinion.

There may be clues as to where to place a headnote number. For instance, the court may divide the issues into different sections of the opinion, such as I, II or A, B. The concrete point can often be placed at the beginning of each section. However, the editor should keep in mind that courts will sometimes begin a section with a general discussion, and then address multiple issues in that section. In that situation, each concrete headnote should be placed where the court begins its discussion of a specific issue. Also, the editor should keep in mind the general principle that concrete headnotes are not to be placed in paragraphs containing only abstract statements.

The court may also begin its discussion of an issue with language such as the party contends or the party alleges. A paragraph containing this language can be a good location to place the concrete headnote on the issue, subject to the limitations otherwise noted in this section.

If a court identifies multiple concrete issues in one paragraph, but then goes on to address each concrete issue separately in different paragraphs, the corresponding headnotes should not all be placed in that one paragraph. They should be placed in those paragraphs where the court begins the concrete discussion of each issue.

54

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

## Multiple Opinions

If points are made from more than one opinion, as when points are made from a concurring or rehearing opinion or from combined opinions in a federal district court, continue the numbering sequentially through the opinions.

When making headnotes from another opinion which the court has adopted and set out as a quote, bracketed numbers may be placed at the beginning of paragraphs within the quoted material.

## Footnotes

If a headnote is made from language in a footnote, insert the number at the beginning of the paragraph from which the footnote is dropped. If other headnotes are made from that paragraph, number the headnotes as though the point in the footnote was made at the exact place in the paragraph where the footnote is dropped.  See also Special Placement.

## Appendices

If there is language in an appendix which must be headed, place the bracketed numbers in the appendix itself, not in the opinion that adopts the appendix.

## Special Placement

Numbers cannot be inserted next to centered division headings, mandates, or the names of authoring judges. If a headnote is made from language in a footnote dropped from a part of an opinion to which a bracketed number cannot be attached, the number should be inserted at the beginning of the preceding or following paragraph, whichever seems most appropriate.

Bracketed numbers normally may not be placed at the beginning of a block quote (also called a subparagraph.) If a headnote is taken from a subparagraph, the bracketed number belongs at the beginning of the first previous non-indented paragraph, unless the subparagraph is the beginning of a section. JWB will usually place the bracketed numbers in the correct location automatically. In the rare instance when a block quote begins a section of the opinion or the beginning of an opinion, bracketed numbers may be inserted by the quote. In JWB, if you create a headnote on a block quote that begins a section, or otherwise does not have a "parent" paragraph, you will receive a message asking whether you want to link the headnote to the subparagraph.  Clicking on "yes" will link the headnote to the block quote.

## Magistrate Judge Opinions

When a federal district court judge adopts a report and recommendation of a United States Magistrate Judge, place the headnote numbers in the body of the Magistrate Judge's opinion.

 If headnotes are made from both the district court opinion and the magistrate's opinion, treat the case as a multiple opinion case, numbering the headnotes consecutively.

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**TR-0002919**

## Style Guidelines

### Grammar

Correct English grammar and punctuation are to be used. Strunk and White's *Elements of Style* should generally be followed.

Each headnote must be a complete sentence.

Articles such as a, an, and the may be used in headnotes. However, articles should be stripped from headnotes to shorten a lengthy point.

Pronouns should be used only when there is no ambiguity as to the antecedent. Do not replace a court's use of he in a headnote with she and vice versa, despite a well-meaning intention of creating gender-equity.

Do not omit the proper form of the verb to be, even before not. Thus: Defendant was not entitled to counsel at line-up, rather than: Defendant not entitled to counsel at line-up.

### Punctuation

Standard punctuation is used. Strunk and White's *Elements of Style* should generally be followed.

Use the serial comma: A, B, and C (not A, B and C).

Dashes copied from the content in JWB may be kept in editorial features, and do not need to be replaced with commas. However, the format of those dashes (known as "en" dashes or "em" dashes) should be maintained, and should not be replaced with hyphens or double-hyphens. Although the dashes have a small "n" or "m" above the line (see screenshots below), those characters get converted to the correct style of dash on Westlaw and in print.

"En" dash and "Em" dash characters: $\underline{\text{n}}$ $\underline{\text{m}}$

The need to use a semi-colon in an abstract headnote may indicate that two separate headnotes are needed.

Semi-colons may be used in concrete headnotes to set forth supportive reasoning when the reasoning consists of a mix of facts and legal rationale. A "where" clause should generally be used in concrete headnotes to set forth a list of facts. The real point of a concrete headnote should not be buried after a semi-colon or placed in a "where" clause.

### EXAMPLES

#### Use of "where" clause to introduce facts:

Officer had reasonable suspicion that defendant was driving under the influence, and thus officer's request that defendant perform field sobriety tests was constitutional seizure under *Terry*, where officer smelled intoxicants on defendant's breath and noticed his movements were sluggish and that his speech was slurred and repetitive, and officer observed open beer can with straw behind passenger's seat. U.S. Const. Amend. 4; Wash. Const. art. 1, § 7.

56

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Use of semi-colon to introduce mix of facts and legal rationale:**

Defendant who was initially sentenced to 73 to 100 months' imprisonment for attempted second degree sexual offense had right to be present when trial court amended judgment and resentenced him to term of 73 to 148 months in prison, even if trial court was simply correcting a mistake in amending the judgment; prison term ultimately imposed upon defendant substantially increased the maximum term, and such a change in sentence could only be made in defendant's presence where he or his attorney would have opportunity to be heard.

## Capitalization

Capitalize the full name of federal and state agencies, officers, and acts. Do not capitalize terms used generically and do not capitalize the names of local agencies. For example, Department of Labor (federal agency), Environmental Protection Agency (federal agency); Department of Corrections (state agency); city council; county commissioners; county board of zoning appeals.

Generally, do not capitalize the titles of documents, including motions, except in quotations.

For rules related to constitutional references, see Citations to Constitutional Provisions – Capitalization.

References to race, nationality, or ethnic groups should always be capitalized. For example, Hispanic, African-American, Latino, Latina, and Caucasian are words that must be capitalized in our enhancements. The words Native American, or American Indian, and any tribe or band must also be capitalized. On the other hand, black and white are typically not capitalized, such as white employee, etc. See also, Party Characterizations – Race or Ethnic Groups and Inclusive Language Guidelines.

## Quotations

It is not necessary to include quoted material from statutes, instructions, documents, etc. within quotes unless the exact language is critical to the decision. Avoid using long quotes. It is better to paraphrase or to combine a series of short quotes containing the critical language. Unnecessary language within a quote may be omitted and replaced with an ellipsis. If language must be quoted, the quotes should be exact, including punctuation and capitalization.

## Italics

Case names used in headnotes and other features should be italicized. No other words (including Latin terms like de novo or res ipsa loquitur) should be italicized.

## Statements vs. Questions

Headnotes should be written in the form of a declarative statement, not in the form of a question.

**WRONG:** The test for determining waiver of an arbitration clause is two-pronged: (1) did the party seeking arbitration substantially invoke the judicial process, and (2) did the opposing party prove that it suffered prejudice as a result?

57

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**RIGHT:** The test for determining waiver of an arbitration clause is two-pronged and looks at (1) whether the party seeking arbitration substantially invoked the judicial process, and (2) whether the opposing party proved that it suffered prejudice as a result.

## Redundancies

Avoid the construction "provision providing." This is redundant. Instead, consider such alternatives as "clause providing" or "section providing." Similarly, do not use "decision deciding."

It may be preferable to avoid phrases such as "defendant's conviction" or "defendant's sentence" or "prosecution of defendant" to the extent it is clear that it is the defendant who is being convicted, sentenced, or prosecuted.

## Numbers

As a general rule, numbers 1 through 10 should be spelled out in editorial features (e.g., "one," "ten"). Numerical digits should be used for numbers over 10 (e.g., "11," "12").

The same practice should be followed for ordinal numbers. That is, use "first," "second," "third," etc., for ordinal numbers through "tenth." Use 11th , 12th etc., for larger ordinal numbers, except when referring to amendments to the United States Constitution (e.g., "Eleventh Amendment," "Fourteenth Amendment").

As an exception to the general rule, you should use digital numbers less than 10 in the following contexts:

- Time of day ("3:00 p.m." instead of "three in the afternoon")
- Dollar amounts ("$5.35" instead of "five dollars and 35 cents"; "$4 million" instead of "four million dollars")
- Fractions and decimals ("2 ½" instead of "two and one half"; "3.75" instead of "three and 75 hundredths")
- Percentages ("5%" instead of "five percent")

## Court's Language

When possible, use the court's language to describe issues, legal concepts, and holdings. The editor should not use a different term simply because it is thought to be better, although the court's language should not be followed if it conflicts with the Inclusive Language Guidelines. When the court uses proper names or plaintiff, defendant, appellee, and appellant, the editor should use a proper descriptive term. It may be appropriate to use generic terms like "plaintiff" and "defendant" in a headnote if the description of the parties is not evident from the case, or the headnote deals with trial or appellate procedure and the party descriptions do not add any benefit to the headnote.  See Party Characterizations.

58

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Terms of Art and Local Terms

Use terms of art and the local practice terms used in the opinion. Special care must be taken to use the proper terms in Louisiana because of its civil law origins. When using local terms, be sure that the headnote has sufficient context for practitioners in other states to understand the holding.

## Popular Statutes

If a statute has a popular name, whether indicated by the court's discussion or known to the editor, it should be included in the headnote. If it is not used in the opinion, the editor should be very certain that it is used properly. See also, Court's Language.

Editors should not use a court's shorthand name for a statute unless the editor does not capitalize it. For example, if the name of the statute is the Wrongful Death and Punitive Damages Recovery Act, editors should not call the statute the Wrongful Death Act in their headnotes, but calling it a wrongful death statute would be appropriate.

**The following statutes and rules, and only these, are sufficiently well known to be used without further description:** § 1983, § 1981, § 1988, Title VII, Title IX, Article III (of the U.S. Constitution), Rule 11 (civil cases), § 10(b) and Rule 10b-5 (securities cases), article 78 (New York). You may also refer to 401(k) plans, section 8 housing, and Subchapter S corporations, and Bankruptcy Chapters 7, 9, 11, 12, and 13.

If a Bankruptcy chapter or the term 401(k) is being used as a modifier (e.g., "Chapter 7 debtor," "401(k) plan") and the terms of the statute aren't at issue (e.g., in a divorce headnote), you need not cite the relevant bankruptcy statute or to 26 U.S.C.A. 401(k). Otherwise, statutes referred to in a headnote should be cited at the end of the headnote. This includes citing McKinney's CPLR 7801 et seq. when a New York "article 78" proceeding is mentioned.

In habeas cases, a petition brought under 28 U.S.C.A. § 2241 may be referred to in the features as a § 2241 habeas petition to better distinguish this statute from other federal post-conviction statutes. See also, Federal Cases – Habeas Corpus.

## Popular Case Names

### Cases that Do Not Require a Description:

When the name of a case is the popular name for a rule, use the name as well as a description of the rule. The detail necessary in the description will depend on how well known the case name is, both nationally and within the jurisdiction, and the context provided by the rest of the headnote. Some headnotes will provide sufficient context through the facts and holding to make the rule obvious. A few cases, such as *Miranda*, *Terry*, *Batson*, *Daubert*, *Brady*, *Bivens*, *McDonnell-Douglas*, *Erie*, *Noerr-Pennington*, and *Rooker-Feldman*, are so well known as to never require description. *Younger* abstention, *Burford* abstention, and *Colorado River* abstention are also sufficient descriptions of those doctrines. You may also refer to an *Anders* brief or *Alford* plea, without further description of these cases. Although *Blakely v. Washington*, *Apprendi v. New Jersey*, and *United States v. Booker* may be referred to as merely *Blakely*, *Apprendi*, and *Booker*, some additional description of the relevant holding is required.

*Chevron* deference is sufficiently well known that it generally does not require a description. However, *Skidmore* deference and *Auer* deference are lesser known, and require some description. See the Editorial Glossary for descriptions of these deference doctrines.

59

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002923

Any case other than those listed requires some description.

Note that caseheaders should put case names in italics, but that no other words in a headnote (such as Latin terms like de novo or res ipsa loquitur) should be italicized.

The fact that a particular case name appears in the popular case name list in JWB does not dispense with the requirement of including a description of the relevant holding along with the case name, unless the case is one of the exceptions noted above.

### Retroactive or Prospective Application of a Case:

When drafting a headnote that requires mention to a particular case, such as whether the rule announced in a particular prior decision applies to the present case, the attorney editor should be sure to refer to the entire case name and describe what the holding is in that case. Do not refer generally to a decision or Court of Appeals decision. In JWB cases, a national reporter citation should be included with the italicized case name in order to facilitate linking on Westlaw.

> **EXAMPLE**
>
> The Supreme Court decision in *Gophers v. Larson*, 242 N.W.2d 51, in which the Court held that a graduate of the University of Illinois College of Law was not entitled to attend basketball games at the University of Minnesota, applied prospectively only.

### Case Names in JWB:

The popular case name widget should be used to insert common case names into the text of the synopsis or a headnote. If a case name is not included in the popular case name list, include a national reporter citation with the italicized case name in the synopsis or headnote text.

This ensures that the case is linked in the headnote or synopsis on Westlaw.

To minimize the intrusiveness of adding a citation to a headnote or synopsis, use only the national reporter cite (e.g. *Padilla v. Kentucky*, 130 S.Ct. 1473, instead of *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284).

When the case name is part of the name of a test, doctrine, or factor, it is acceptable to include the cite after the entire phrase, e.g., *Cassisi* doctrine, 396 So.2d 1140, or *Sleekcraft* factor, 599 F.2d 346. In order to preserve the customers' ability to search for phrases like "*Cassisi* doctrine," or "*Sleekcraft* factor," it is preferred to insert the cite that way, instead of:

> *Cassisi*, 396 So.2d 1140, doctrine
>
> or
>
> factor set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341

Before adding a case name to a headnote, when the case name is not in the popular case name list, consider whether including the case name really adds anything of value to the headnote, and leave out the case name if it does not.

For more details on inserting case names in features in JWB, see Appendix G in the JWB Summary Tool Documentation.

60

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Income Tax Forms

The following federal income tax forms -- Form 1040, Form 1099, W-2, and W-4 – may be referred to by name in editorial features, as long as the headnote or other editorial feature includes sufficient context for the reader to understand the nature of the form. There are different variations of Form 1099, e.g. 1099-DIV, 1099-C, 1099-MISC. It is acceptable to include the extension with the form name, but context should be included to make clear what the extension refers to.

Consult with a revisor before referring to any other tax form by name in an editorial feature.

### EXAMPLES

Payor of income reflected in federal income tax Form 1099 was a "business" for purposes of hearsay exception for records of regularly conducted activity and self-authentication rule for certified domestic records of a regularly conducted activity. Fed. R. Evid. 803(6), 902(11).

A creditor's issuance of an IRS Form 1099-C, Cancellation of Debt, does not legally extinguish or cancel a debt, for purposes of the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA). Fair Credit Reporting Act, § 602 et seq., 15 U.S.C.A. § 1681 et seq.; Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.

Plumbing subcontractor was not "employee" covered under general contractor's business insurance policy, even though subcontractor was insured under contractor's workers' compensation policy, where contractor did not provide subcontractor with health insurance or other employee benefits and did not withhold taxes or pay social security or unemployment taxes on his behalf, and subcontractor determined his own hourly rate, submitted invoices to contractor on behalf of his business, received IRS Form 1099-MISC, for miscellaneous income, as opposed to W-2 wage statement, and, at contractor's request, obtained his own liability coverage.

Failure to use the word "mandatory" to describe taxpayer's duty to file income tax return did not render defective the instruction booklet accompanying Form 1040, used for individual income tax returns.

## Acronyms

If there is a common acronym or an acronym generally used in its field for a term used in the headnote, it should be included in parentheses immediately after the term. Thereafter in the same headnote, only the acronym need be used.

If a case involves a statute which is commonly referred to by its acronym, such as ERISA, IDEA, or ADEA, and the full name is used in the parallel statute citation at the end of the headnote, it is sufficient to use only the acronym in the headnote. If in doubt as to whether a statute name will be spelled out at the end of the headnote, consult the Citation Styles file. The full name of a statute should appear in the text of the headnote in addition to the citation when it is not immediately obvious what the acronym refers to.

### EXAMPLE

Pension plan administrator was not a fiduciary under ERISA. Employee Retirement, Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

61

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Do not include ad hoc court-created acronyms of convenience in your features. These are shorthand creations the court uses in its particular case. They are not common, recognized, or likely to be used by researchers. Some examples of ad hoc acronyms include: FAC (first amended complaint), COL (conclusions of law), FDA (first draft agreement), and BI (bodily injury).

The following acronyms may be used without their corresponding compound terms: AIDS, ALJ, anti-SLAPP, ATM, CAT scan, CPA, CT-scan, DNA, DVD, FBI, GPS, HIV, HVAC, IRS, IQ, LSD, MRI, NASDAQ. Please continue to use both the acronym and compound term when they relate to a central issue in the case.

"VA hospital" and "FDA approved" may be used without spelling out the full terms, but the corresponding full term should still be used with the acronym when VA or FDA are used on their own.

"Fannie Mae" and "Freddie Mac" should be used with their corresponding full terms: Federal National Mortgage Association (Fannie Mae), Federal Home Loan Mortgage Corporation (Freddie Mac).

## Agency Titles

When referring to a federal or state agency or its head, the full title must be used the first time reference is made to it in each headnote. If the agency is usually known by its initials, place the initials in parentheses after the full agency name. Thereafter, the term Department, Secretary, etc. or its well-known initials may be used. The names of state and federal agencies are capitalized.

It is not necessary to do the following: Department of Transportation (Department) before you refer to Department later in the headnote. By doing so, the editor is including unnecessary verbiage. In all likelihood, there will be an acronym for the agency, such as DOT, that will be more appropriate than the use of Department.

It is not necessary to include the name of the state when naming the agency in a state case unless the agency is from a different jurisdiction or the acronym for the agency name includes the state name. The name of the state should be included in the agency name in federal cases. Local agencies should be referred to generically, such as county zoning board or city housing department, unless the case involves law which applies only to that municipality. The names of local agencies are not capitalized.

## Generic Use of Trade Names

A trademark or trade name may not be used generically to describe a class of persons or things. For example, the trademarked term "Realtor" may not be used to describe a real estate agent. Other prohibited terms include Xerox, JetSki, Kleenex, Jell-O, BandAid, Baggie, Intoxilizer, Breathalyzer, Frisbee, Rollerblade, Mace, Go-Ped, Bush Hog, Taser, Blackberry, PowerPoint, Velcro, Blu-ray, and Rolodex. Instead of using a trademarked term in headnotes, use a generic equivalent, including in products liability cases:

| Trademarked Term | Generic Equivalent |
| --- | --- |
| Baggie | plastic bag |

62

| | |
|---|---|
| Blackberry, iPhone | smartphone |
| Blu-ray | digital storage disc, high definition optical storage disc |
| Breathalyzer | breath test machine |
| Bush Hog | brush cutter |
| Frisbee | toy flying disc |
| Go-Ped | motorized scooter |
| Intoxilizer | breath test machine |
| JetSki | personal watercraft |
| Kleenex | tissue |
| Little League | youth baseball, national youth baseball organization (or softball) |
| Mace | pepper spray |
| PowerPoint | computerized presentation, presentation software |
| Realtor | real estate agent |
| Rollerblades | in-line skates |
| Rolodex | rotating card file |
| Taser | stun gun |
| Velcro | (fabric) fastener |
| Xerox | photocopy |

See also Intellectual Property – Generic Use of Trademarks

## Products Liability Cases

Proper names should not be used in headnotes to refer to the product at issue in products liability cases, including the brand names of drugs. Instead, use a descriptive term.

However, proper names may be used in products liability summaries to refer to the product at issue.

See also Generic Use of Trade Names and Drug Names in this section, and Universal Summaries – Styles.

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -**
**ATTORNEYS' EYES ONLY**

TR-0002927

## Drug Names

Do not use the brand names of drugs in headnotes, including in products liability cases. Instead, use a description of the drug, for example: "arthritis drug," "blood pressure medication," "contraceptive drug," "flu vaccine."

You may use the generic name for a drug in headnotes if the generic name is provided in the Court's opinion and including the generic name would be helpful in understanding the case, but you must include a description of the drug as well. For example, you may use the name ibuprofen with a description such as "non-steroidal anti-inflammatory drug."

Brand names of drugs may be used in Westlaw highlights and other summaries, especially products liability summaries, to the extent the brand name conveys an understanding of the case or its significance more efficiently than a general description.

See also Products Liability Cases in this section, and Universal Summaries – Styles.

## Internet Terms

Terms "internet" and "world wide web": Use the terminology used by the court. The terms "internet" and "world wide web" are not the same. The "internet" is a global system of interconnected computer networks. In contrast, the "world wide web" is one of the services transferred over these networks.

Use the term "website" rather than "Web site."

You may use the following suggested terms for internet service providers or popular websites:

    internet service provider (ISP): AOL, Comcast

    video-sharing website: YouTube

    digital content store or digital content service: iTunes Store, Google Play, Amazon (Music and Video Store), Netflix

    social networking website: Facebook, Instagram, Google+

    professional networking website: LinkedIn

    auction website: eBay

    travel website: Priceline, Expedia

    blog: Huffington Post, SCOTUS blog

    microblog: Twitter

    microblog post: tweet

    internet search engine: Google, Bing, Yahoo

    dating website: eHarmony, Match.com

    classified advertising website: craigslist

    web-based e-mail provider: Gmail/Google, Yahoo Mail, Outlook

    web-based conferencing application, video (or audio) conferencing application: WebEx, Skype

    online, user-edited encyclopedia: Wikipedia

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -**
**ATTORNEYS' EYES ONLY**

**TR-0002928**

ride-sharing service: Uber, Lyft

online payment service:  Paypal

internet-based image publishing service, internet-based file share service: Shutterfly

image messaging application, multimedia messaging application: Snapchat

A website cannot sue or be sued. When referring to one of these internet entities as a party, use a parallel descriptive term. For example, in the case of a suit by or against YouTube, you could say "operator of video-sharing website."

## Technological Devices

You may use the following suggested terms for technological devices, and related platforms and manufacturers:

tablet computer: iPad, Samsung Galaxy

e-book reader: Kindle

smartphone: iPhone, Samsung, Blackberry

cell phone: a "cellular telephone" may be referred to as a "cell phone"

> **Note**: smartphones and cell phones are not the same thing, although some courts seem to use the terms interchangeably. Smartphones have a mobile operating system, cell phones do not. If the court is not clear about the type of device, follow copy.

mobile operating system: Android, iOS

software manufacturer: Microsoft, Oracle, Apple

hardware manufacturer (be specific on type of hardware): Dell, Apple, Samsung

digital storage disc, high definition optical storage disc: Blu-ray

desktop computer

laptop computer

wearable technology:

> smartglasses or smart glasses: Google Glass

> smartwatch or smart watch: Samsung, Motorola, Apple

## Well-Known Events

As a general rule, proper names should not be used for events or natural disasters in the synopsis or headnotes for a case. However, proper names may be used for well-known events or natural disasters in Westlaw highlights or other summaries when the proper name conveys an understanding of the case or its significance more efficiently than a generic reference.

Exceptions: You may refer to these events and natural disasters by name in headnotes and synopses to the extent the particular name is relevant and necessary for an understanding of the issue.

65

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

- 9/11 Terrorist Attacks: use "terrorist attacks of September 11, 2001" and/or "World Trade Center" when necessary

- Hurricane Katrina, Hurricane Sandy, and other well-known hurricanes

- COVID-19 pandemic: use "COVID-19 pandemic" and/or "COVID-19"

Please check with a revisor before using a proper name for any other event or natural disaster in headnotes and synopses.

## Profanity and Racial Epithets

Do not use profanity or racial epithets in headnotes or other editorial features unless the terms are directly relevant to the issue at hand, such as in headnotes concerning race discrimination or sexual harassment, intentional infliction of emotional distress, or fighting words outside of the protection of the First Amendment.

When it is appropriate to include profanity or a racial epithet in a feature, use the full term in quotation marks. Do not use modified versions of the terms like "N word" or "f---". However, if the Court uses only such modified versions in its opinion, then follow copy in the editorial features.

EXAMPLES

Alleged actions of African-American employee's supervisors, including making racially derogatory comments, giving employee less-desirable work assignments, and using word "nigger" when talking to other employees, were not sufficiently severe or pervasive to support hostile work environment claim under Minnesota Human Rights Act (MHRA); while use of racially derogatory terms was undoubtedly inappropriate and offensive, there was no evidence that challenged comments were in any way physically threatening, comments were spread out over more than two years of employment, comments did not affect employee's work performance, and employee asked to be reinstated to his prior position two days after he was fired. Minn. Stat. Ann. § 181.832

Trial court acted within its discretion when it held defendant in direct contempt in summary fashion when defendant twice told judge to "go fuck yourself" following sentence for other offense, absent any showing that court lost its composure.

Under Colorado law, fast food restaurant manager's single comment of calling mother a "black bitch" was the type of single insult or unkind act insufficient to constitute outrageous conduct, as required for family's claim of intentional infliction of emotional distress against restaurant chain.

## Cross-References

Party Characterizations – Proper Names

Party Characterizations – Correlative Terms

Party Characterizations - Decedents

Party Characterizations – Disability Headnotes

Party Characterizations – Race or Ethnic Groups

Party Characterizations – Immigration Cases

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Style Guidelines**

Synopsis – Parties

Synopsis – Nature of Action

Synopsis – Identity of Lower Court or Tribunal

Synopsis - Holdings

Synopsis – Abbreviations

Universal Summary – Styles

Citations to Constitutional Provisions – Capitalization

67

Sensitivity: Confidential

## Party Characterizations

Also see Inclusive Language Guidelines.

### In General

The parties must be clearly identified and characterized. The terms used to describe the parties should generally reflect their legal relationship to each other, i.e., landlord and tenant, shipper and carrier. In some cases, notably tort cases, the terms may describe the parties' factual relationship to each other, i.e., motorist and pedestrian, customer and store owner. A party must not change characterizations within a headnote.

### Inclusive Language

When deciding how to describe parties in editorial features, take care to avoid using terms that may be considered offensive, demeaning, outdated, or emotionally charged. Do not use party characterizations that perpetuate stereotypes about race, ethnicity, sex, gender, religion, class, economic status, ability status, marital status, sexual orientation, nationality, or other statuses. Also, do not include information regarding a party's social identity or status unless it is relevant to the cause of action.

See the Inclusive Language Guidelines for specific guidelines on these matters:

- Abortion
- Adoption
- Disabilities
- Ethnicity and Race
- Gender Identity
- Immigration Status
- Legitimacy
- Male/Female
- Religion
- Sexual Orientation

### Suggested Party Characterizations

| ISSUE | PARTIES |
|---|---|
| Adoption | biological mother and father, birth mother, birth father, birth parent, (prospective) adoptive parents, adoptive child |
| Adverse possession | adverse possessor or claimant, record owner |
| Advertising | advertising agency, advertiser, publisher |
| Annexation | proposed annexation area, annexing (city), objector |
| Annuity | issuer, annuitant |
| Armed Services | serviceman or servicemember |

68

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Party Characterizations**

| | |
|---|---|
| Arrest | arrestee, arresting officer |
| Assisted reproduction | sperm donor; biological mother, father, parents; gestational mother; intended mother, intended parents, father, parents, genetic parents, domestic partner |
| Automobile accidents | left-turning/right-turning, leading/following/trailing/oncoming/passing/backing/braking/parked/stopped, overtaking, westbound/eastbound/southbound/northbound (vehicle/driver/motorist) |
| Bankruptcy | debtor (not bankrupt), creditor |
| Boundaries | adjoining landowners, common grantor (possibly) |
| Carriers | carrier, shipper, consignee (possibly) |
| Charter | vessel owner, charterer |
| Child support and custody | mother and father, custodial and non-custodial parent, obligor and obligee parent |
| Civil Rights | exoneree (preferred over former inmate) |
| Cohabitants | (if relevant, lesbian or gay, male or female (possibly)) cohabitants, unmarried couple |
| Commercial paper | drawer, drawee bank, depositary bank, intermediary bank, payor bank, collecting bank, presenting bank |
| Commitment | (involuntary or voluntary) committee, offender or sex offender (for civilly committed sex offenders) |
| Condominium unit | owner, owners' association, property manager |
| Conservatorship | conservator, conservatee or protectee, (alleged) incompetent (possibly) |
| Consignment | consignor, consignee |
| Construction | project owner, (construction) lender, developer, construction manager, architect, engineer, (general or prime) contractor, (electrical/plumbing/excavation) subcontractor, subsubcontractor, supplier, materialman, worker, laborer |
| Contempt | contemnor |
| Contract for deed | contract holder, vendor, purchaser |
| Cooperative | conversion sponsor, tenant shareholder, cooperative or tenants corporation (NY) |
| Corporations | <u>corporations</u>: shareholder, director, officer; <u>closely held corporation</u>: principal, (minority or majority) shareholder; <u>related corporations</u>: affiliated, parent, subsidiary, sister, grandparent; <u>merger</u>: surviving or acquiring, and absorbed or acquired; <u>nonprofit corporations</u>: members; <u>proxy contest</u>: (proxy) contestant; successor and predecessor |
| Covenants | covenantee, covenantor |
| Credit cards | issuer or issuing bank, cardholder, retailer |
| Deed of Trust | trustee, grantor, trustor, trust deed beneficiary, grantee, mortgagee, mortgagor (generally use mortgagee/mortgagor only if the court does) |
| Detainer | receiving state, sending state, prisoner |
| Detention | detainee |
| Distributorship | manufacturer or supplier, distributor |
| Easements | servient tenement owner, dominant tenement owner |
| Elections | (successful or defeated) candidate |
| Eminent domain | (land)owner or condemnee, condemner or city, county, etc |
| Employment agency | employment agency, employee or worker, client (company) |
| ERISA | participant or beneficiary, plan, administrator, fiduciary |
| Escrow | depositor, escrow agent, grantee or promisee or obligee |
| Extradition | demanding or receiving state, sending state, accused (possibly fugitive) |
| Factoring | principal, factor |
| Freedom of information | requester, agency |
| Garbage | Hauler |
| Garnishment | garnishor, garnishee, debtor |
| Grand jury | witness, target (of investigation) |
| Guaranty | guarantor, (principal) obligor |
| Guardianship | guardian, ward |
| Hotels | innkeeper or hotel or motel, guest |
| Implied consent | motorist or driver (not defendant), arresting officer, testing official |
| Indemnity | indemnitee, indemnitor |
| Insanity | insanity acquittee |

69

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**Party Characterizations**

| | |
|---|---|
| Insurance | insurer, insured, tortfeasor, excess insurer, primary insurer, automobile insurer, uninsured motorist, underinsured motorist, UM, UIM carrier |
| Interpleader | (adverse) stakeholder, claimants |
| Judgment | judgment creditor, judgment debtor |
| Land sales | vendor, (prospective) purchaser, broker, real estate agent (not realtor) |
| Letter of credit | issuing bank, customer or account party, beneficiary, confirming bank |
| Licensing | licensor, licensee |
| Liens | lienor or lienholder |
| Limited Liability Company | members (usually), managers (usually) |
| Loans | lender, borrower, finance company, credit bureau or credit reporting agency |
| Mechanics lien | materialman, supplier, project owner |
| Medical malpractice | physician (or specialty), patient |
| Medicare/medicaid | provider, (fiscal) intermediary, recipient, claimant |
| Mortgages | mortgagee, mortgagor, mortgage holder, assignee of mortgage |
| Motions | movant, nonmovant |
| Notes | payee, maker, holder |
| Oil lease | operator, lessee, lessor, working interest owner, overriding royalty interest owner, leasehold owner |
| Options | optionor, optionee |
| Partnership | limited partner, general partner, managing partner, funding partner, withdrawing partner, continuing partner |
| Patents | patentee, alleged infringer |
| Paternity | (birth) mother, putative father (thereafter adjudicated father), presumed father |
| Pledges | pledgee, pledgor |
| Pretrial diversion | pretrial divertee |
| Products liability | manufacturer, distributor, seller; consumer, user, buyer |
| Public contracts | contractor, government or city, state, etc bidding  successful bidder, unsuccessful or disappointed bidder or protestant |
| Rent control | rent-stabilized tenant, landlord |
| Sales of personalty | buyer, seller |
| Salvage | salvor, vessel, vessel owner |
| Seamen | seaman, vessel, vessel owner |
| Secured transactions | secured party |
| Securities | issuer, shareholder, fraud investor, corporation, broker, brokerage firm, introducing broker, clearing broker, independent auditor, financial advisor, IPO issuer, promoter, broker-dealer, underwriter, tender offer, tender offeror, target corporation |
| Slip and fall (in store) | customer or patron, store, store owner (on sidewalk)  pedestrian |
| Social security | claimant or applicant, widows and children's benefits, widow, surviving child, deceased wage earner |
| Supervised release | supervised releasee (do not use probationer) |
| Suretyship | principal or obligor, surety, obligee (possibly) |
| Travel | passenger, travel agent, tour operator, airline |
| Trusts | settlor (grantor or trustor if used by court), trustee, beneficiary |
| URESA | rendering or initiating state, responding state |
| Viaticals | life insurer, insured/policyholder/viator, viatical settlement company (company enters "viatical contract" whereby it buys viator's rights to his policy which then becomes a "viatical") |
| Waters | (upper or lower) riparian landowner, rights holder |
| Wills | testator, legatee, devisee, beneficiary, proponent, contestant or objector |
| Workers' compensation | employer, workers' compensation carrier, workers' compensation claimant |
| Zoning | developer or applicant or landowner, objector, protestant or neighboring or adjoining landowner (possibly) |

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002934

## Assuming the Answer

Do not use a term to describe a party which assumes the result of the case. Do not call someone an agent if the issue is whether he was an agent. If the particular point being made is based on the courts resolution of another issue earlier in the opinion, such as when the court discusses duties resulting from the fact that the court has now determined that someone was an agent, the applicable term may be used.

## Procedural Points

The terms plaintiff, defendant, appellee, and appellant may be appropriate in procedural points in which the nature of the suit is unimportant.

## Proper Names

Proper names generally should not be used for parties, except for federal and state government agencies and for organizations which are sui generis. Sui generis organizations are one-of-a-kind entities that can be referred to by name. They include:

- YMCA
- YWCA
- Red Cross
- Amtrak
- Boy Scouts
- Girl Scouts
- Lloyd's (in insurance cases, for example "Lloyd's syndicate," "Lloyd's name")
- Veterans of Foreign Wars (VFW)
- Roman Catholic Church
- National Basketball Association (NBA)
- National Collegiate Athletic Association (NCAA)
- National Football League (NFL)
- National Hockey League (NHL)
- Major League Baseball
- Better Business Bureau (BBB)

Political parties can be referred to by name to distinguish between parties or candidates ("Republican Party nomination," "Democratic candidate").

Mortgage Electronic Registration System (MERS) may be referred to by name in mortgage and deed of trust cases, but the summary should also identify the capacity in which MERS is acting, e.g., nominee for lender (or beneficiary of deed of trust), lender's assignee, or assignor of mortgage or note. Keep in mind that some procedural points may not need the MERS term when the identity of the party is not important.

71

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -**
**ATTORNEYS' EYES ONLY**

Please check with a revisor before using other terms which you believe are sui generis.

For use of trade names in headnotes, see Style Guidelines—Generic Use of Trade Names, and Intellectual Property—Generic Use of Trademarks.

## Correlative Terms

Use correlative terms to describe the parties within a feature. Thus, use husband and wife, not husband and mother; landlord and tenant or lessor and lessee, not a mixture of the two.

## Criminal Proceedings

In most criminal cases, the term defendant is appropriate. Terms such as arrestee may sometimes be preferable. In post-conviction and habeas corpus proceedings, use defendant, arrestee, or other appropriate term in headnotes dealing with the criminal prosecution and appeal, and use the term petitioner or movant in headnotes dealing with issues related to the post-conviction or habeas procedure.

Conciseness can sometimes be achieved by using an adjective before the term defendant to indicate the offense involved, i.e., Hobbs Act defendant, thus eliminating the need to use language such as in prosecution for violation of the Hobbs Act. However, the adjective should not be more than two words and usually not more than one. Thus, robbery defendant or armed robbery defendant is sometimes useful, whereas the use of the term "possession of cocaine with intent to distribute defendant" says more about the editor than it does about the defendant. The bottom line is that this is the construction of last resort. Try to avoid using offenses to modify the noun defendant.

## Quasi-Criminal Proceedings

Care must be taken with terminology in administrative cases that are somewhat criminal in nature or are related to criminal cases, such as driver's license revocation cases and forfeiture. The affected party is usually not a defendant in such cases and is not charged with or prosecuted for something. The party is definitely not convicted of anything.

In a civil rights case brought by a plaintiff who was wrongfully convicted, refer to the plaintiff as an exoneree, rather than a former inmate.

## Multiple Parties

When there is more than one party to whom a descriptive term is applicable, the parties must be differentiated. This is done by applying an adjective that reflects the action the party took or the party's role in the transaction which is relevant to the point being made, i.e., on-coming motorist and left-turning motorist or payor bank and payee bank. If one such entity is a party to the action and the other is not, it is permissible to refer to, e.g., plaintiff seaman and other seaman. Terms such as plaintiff distributor and defendant distributor are also acceptable. The terms first corporation and second corporation and the like should be used only as a last resort.

**EXAMPLE**

Northbound motorist was not liable for injuries sustained by on-coming motorist in collision, where northbound motorist's vehicle was stopped at traffic light when on-

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

coming motorist lost consciousness and crossed over into northbound motorist's lane, causing collision.

## Parties With Multiple Roles

A party may be referred to by different terms in different headnotes as the issues change. Within a single headnote, a party should be referred to by only one term. If absolutely necessary to show a party's relationship to two or more other parties, a hyphenated term, such as husband-maker may be used. This should be done only rarely. Usually, there is an appropriate term which, with proper context, will provide the necessary clarity. In other cases, an adjective may be sufficient, e.g., corporate manufacturer.

## Decedents

Great care should be used when referring to a decedent or deceased person in a headnote. A deceased person cannot drive, attack, purchase, or do any acts done by the living. In other words, do not use decedent or deceased party when referring to something only a live person can do. If absolutely necessary in wrongful death actions, one may speak of plaintiff's decedent.

### EXAMPLE

**WRONG:** Emergency exception to Tort Claims Act's waiver of sovereign immunity applied to wrongful death action against city, based on deputy fire chief's alleged failure to adequately warn motorist of flood waters, where deputy fire chief, responding to an emergency situation caused by flood water, parked his vehicle across the road so that cars could not drive past it into the water, activated his emergency lights, honked his horn as each vehicle approached, and decedent drove past, with no acknowledgment of the emergency vehicle, did not slow down, and was swept away by flood water. Tex. Civ. Prac. & Rem. Code Ann. §§101.055, 101.060.

Moreover, when referring to a deceased person's spouse, use widow or widower, rather than decedent's wife or decedent's widow. If it is appropriate to refer to a deceased party, do not use decedent and description of party. The correct terminology would be deceased party.

### EXAMPLE

**WRONG:** Antenuptial agreement under which wife received no portion of decedent husband's property, other than what he might have left her by his will, was not substantively unfair; parties' clear contractual intent was evinced by fact that antenuptial agreement and subsequent wills and trusts disposed of parties' respective property in same manner. Minn. Stat. Ann. § 519.11.

**RIGHT:** Antenuptial agreement under which widow received no portion of deceased husband's property, other than what he might have left her by his will, was not substantively unfair; parties' clear contractual intent was evinced by fact that antenuptial agreement and subsequent wills and trusts disposed of parties' respective property in same manner. Minn. Stat. Ann. § 519.11.

## Disability Headnotes

Physical and mental disability information should be included in editorial features only if relevant to the case. When including disability information, emphasize personhood over disability by referencing the person before the disability. For example, say "patient with epilepsy," instead of

73

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

"epileptic patient." In addition, avoid negative terms such as "stricken with," "suffering from," or "victim of." For example, say "child with cerebal palsy" instead of "child stricken with cerebal palsy."

The phrase "wheelchair-bound," as in wheelchair-bound airline passenger or wheelchair-bound employee, is regarded as disrespectful and should not be used in your editorial features. Similarly, do not say that someone is "confined" to a wheelchair, as if he can never leave it. Use something like "airline passenger using wheelchair" or "employee using wheelchair" if the wheelchair is actually relevant to something in your feature.

Avoid using the phrase "mentally retarded" in editorial features if the court does not use it. Limit the use of this phrase to instances when it is a statutory or regulatory term or is the court's term for a particular area of the law, e.g., case law determining whether an offender is "mentally retarded" for purposes of the death penalty. In other situations, the preferred term is "developmentally disabled."

For further guidance on referring to disabilities in editorial features, see the Inclusive Language Guidelines.

## Businesses and Finance Companies

Be extremely careful in describing different business entities. For instance, do not refer to a party as a partner merely because a party entered into a business arrangement with another person if that business arrangement was not a legal partnership. Likewise, do not refer to a business entity as a partnership or corporation if it was not legally formed as such an entity. If you are unsure what the business organization structure is, just call it a business.

Unless the court uses the term, do not use "financier" as a party designation for a lender or finance company. It is not a legal term, and tends to suggest an individual rather than an institution.

## Race or Ethnic Groups

Mention ethnicity or race in editorial features only when it is relevant to the case. When a reference to ethnicity or race is relevant, avoid racial stereotypes and describe groups, ethnicity, or race precisely.

Follow copy when referring to individuals of a particular race, nationality or ethnic group in editorial features. For example, if a court says an employee is black, say "black employee." On the other hand, if the court says an employee is African-American, say "African-American employee."

For further guidance on referring to ethnicity or race in editorial features or on capitalization, see the Inclusive Language Guidelines and Style Guidelines—Capitalization.

## Immigration Cases

Include the citizenship of the alien in the synopsis and in relevant headnotes in immigration cases when it is known (while still retaining the term "alien"). Not all headnotes require the addition of the citizenship information, such as headnotes that deal primarily or solely with procedural aspects, or headnotes that deal with general statements about immigration law. For these types of headnotes, the alien's citizenship is not relevant and should not be mentioned.

74

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002938

**HEADNOTE EXAMPLES**

Alien seeking asylum failed to establish past persecution in Kenya, even though she testified that she...

Guerrilla organization's attempt to conscript alien, a Guatemalan native, into its military forces did not necessarily constitute "persecution on account of political opinion" ....

Guatemalan guerrilla organization's attempt to conscript alien into its military forces did not necessarily constitute "persecution on account of political opinion" ....

**SYNOPSIS EXAMPLE**

Alien, a native of El Salvador, petitioned for review of the decision of the Board of Immigration Appeals (BIA), 2007 WL 3114791, denying her petition for withholding of removal.

See the Inclusive Language Guidelines for further information about immigration status.

75

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

## Synopsis

### Parties

The parties should usually be identified by the terms used in the headnotes which show their relationship to each other and to the issues in the case. Proper names are not used. The names of government bodies and agencies may be used. When referring to a government employee, indicate which governmental entity to which the employee belongs.

The synopsis need not disclose that an injured party's spouse is also a party if that fact is not relevant to any issue in the case or if the spouse is a pro forma party because of community property law. A separate sentence may be appropriate when a spouse seeks to recover for loss of consortium.

If the opinion relates only to a third-party claim or counterclaim, no more than a passing reference to the parties involved solely with the main claim is needed.

Editors should maintain the distinction between a plaintiff who is a survivor of a decedent and one who is a survivor but sues as representative of the decedent's estate. If the plaintiff is suing in both capacities, that should be noted.

If suit is brought in a representative capacity, that should be indicated.

Any substitution of parties during the course of the litigation, including those resulting from the death of a party, should be noted.

The use of "plaintiff" and "defendant" should be avoided. Their use is appropriate in cases that involve only procedural or discovery matters or in cases in which the text does not allow any other characterization.

See also, Party Characterizations.

### Nature of Action

The synopsis should briefly indicate who is suing whom and what the case is about. A few words of detail should be used when they will help distinguish the case from others of its genre. Specific theories relied on by the parties should be included. Specific types of relief sought, such as declaratory or injunctive relief, should also be included. The synopsis should not begin with the name of the court.

#### EXAMPLE

**WRONG:** The Circuit Court, Lake County, Jack Hoogasian, J., awarded benefits.

If the points relate solely to a third-party claim or a counterclaim, only a passing reference to the main action is needed.

The style "Appeal was taken from order of..." should be used rarely. If used at all, it would be primarily for opinions with little substance.

Where a clear understanding of the opinion requires facts in addition to those supplied by the opinion, the editor may select necessary facts from prior opinions for inclusion in the synopsis. Additional facts that are clearly necessary to an understanding of the opinion may also be taken from concurring and dissenting opinions, if it is absolutely clear that they are not disputed.

76

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

In trial level opinions especially, the motions before the court should generally be set out in a separate sentence, rather than as the opening of the "held that" sentence. This will place the motions in the "Background" section of the synopsis rather than the "Holdings" section, giving the synopsis a better appearance.

### EXAMPLE

**WRONG:**

Background**:** Taxpayers and their business entities sued tax advisor, alleging claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), breach of fiduciary duty, fraud, negligence, and tortious interference with contract in connection with advice they received.

Holdings**:** On defense motions to stay litigation of seven counts pending arbitration of such claims, and for dismissal of two counts as relief in aid of arbitration, the District Court, Jones, J., held that:

(1)...

(2)...

**RIGHT:**

Background: Taxpayers and their business entities sued tax advisor, alleging claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), breach of fiduciary duty, fraud, negligence, and tortious interference with contract in connection with advice they received. Defense moved to stay litigation of seven counts pending arbitration of such claims, and for dismissal of two counts as relief in aid of arbitration.

Holdings: The District Court, Jones, J., held that:

(1)...

(2)...

## Administrative Review

In cases in which a party is seeking judicial review of a decision of an administrative agency, the synopsis should start with a description of the judicial proceeding, i.e., how the case got into court. It should not begin with a description of the administrative proceedings.

**RIGHT:** Employer petitioned for review of decision of Workers' Compensation Appeals Board (WCAB) which affirmed workers' compensation judge's unapportioned permanent partial disability award for claimant's back injury.

**WRONG:** Workers' compensation claimant sought benefits for back injury. A workers' compensation judge determined claimant sustained a permanent partial disability of 48 percent and declined to apportion the permanent disability. The Workers' Compensation Appeals Board (WCAB) affirmed. Employer petitioned for review.

Parties may utilize various procedures to obtain judicial review of an administrative decision, such as an appeal, a petition for review, or a state-specific procedure such as an article 78 proceeding in New York or a petition for special action in Arizona. Be precise as to the method of review sought. If no method of review is identified in the opinion, the synopsis can state that a party "sought review" of the administrative decision, e.g.,

77

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Taxpayer, a nonresident corporation, sought review of Department of Revenue's denial of nonbusiness interest deductions that taxpayer claimed on amended income tax returns. The Circuit Court, Cook County, James M. McGing, J., affirmed. Taxpayer appealed.

If the decision under review is that of a federal or state agency, the proper name of the agency should be given. If the case provides the name of the administrative law judge, hearing officer, commissioner, workers' compensation judge, or other administrative officer who presided over a previous phase of the case, include that name in the synopsis, along with whatever title the court uses. If no name is provided, or the entire administrative panel is named, simply leave it out of the synopsis. Do not query its omission.

If the appeal is from the order of a municipal body, the name of the municipality is not included, but the body should be identified: city civil service board, county zoning board of appeals, school board, etc.

### EXAMPLE

Landowners sought review of city zoning board of appeals' denial of variance for their agricultural-zoned land that they had been leasing for use as automobile storage and landscaping and boiler repair businesses. The District Court, Douglas County, W. Russell Bowie III, J., affirmed. Landowners appealed.

## Identity of Lower Court

The court that initially decided the dispute should be identified with its full name and the county, judicial district, and/or parish that it serves. The full name of the trial judge should be included, if provided in the opinion being headnoted, a lower court opinion, the MultiMediaRepository (MMR), or the docket available on Westlaw. If the lower court judge was sitting by assignment, this should be noted, e.g., Ronald L. Johnson, Retired Judge, sitting by assignment. Include the division of the lower court, particularly if it is descriptive such as "Probate Division," "Domestic Relations Division," or "Municipal Division."

Include a docket number for the lower court in those jurisdictions that require it: Alabama, Arizona, California, Louisiana, Maryland, Ohio, Pennsylvania, and the Eleventh Circuit. If the docket number is not provided in the opinion for these jurisdictions, look it up in MMR. In other jurisdictions, you may leave the docket number for the lower court in the synopsis if it is copied over or prepopulated with other court information.

This is the general order in which the parts of the lower court information should appear: court name, county/judicial district/parish, division (if any), docket number, judge name, citation (if any). Example:  The Court of Common Pleas, Lehigh County, Civil Division, No. 2012-C-3692, John Smith, J., 2012 WL 555111, granted anesthetist's motion for summary judgment.

**Multiple judges**: If multiple judges were involved in the lower court proceedings, each judge should be mentioned. If possible, identify what each judge did. E.g.,

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002942

> **Background:** Following denial of his motion to suppress by the Supreme Court, New York County, Ronald A. Zweibel, J., defendant pled guilty in the Supreme Court, Charles H. Solomon, J., to second-degree criminal possession of a weapon. Defendant appealed.

If you are unable to determine what each judge did, list the judges together. E.g.,

> **Background**: Defendant was convicted in the Supreme Court, New York County, Smith and Jones, JJ., of second-degree murder. Defendant appealed.

The name of a judge for a decision that is not relevant to the current decision, and thus not mentioned in the synopsis, need not be included.

**Mandamus proceedings:** In an original mandamus proceeding in an appellate court challenging a ruling by a trial court judge, include the trial court information in the synopsis when such information is provided by the appellate court.

**Multiple references to same judge:** When the procedural history of a case requires referring to the trial court more than once in the synopsis, as when there is a prior appeal in the case, you may include the full name of the trial judge when describing the first trial court action (e.g., John Q. Smith, J.,) and then just use the trial judge's last name when describing subsequent trial court actions (e.g., Smith, J.). However, to do this, you must be certain that the trial judge was the one who took both actions. If you are unsure whether the judge whose decision is currently on appeal was the judge in prior proceedings, include the trial judge's name only when describing the decision being challenged on appeal. The authoring judge (if any) should always be included in the first line of the Holdings section of the synopsis, even if the judge's name is included earlier in the synopsis; if the name is included earlier, the last name only may be used.

## Lower Court Disposition

The disposition of the case by the lower court or tribunal must be indicated. The description of the disposition should be brief. The disposition of preliminary motions need not be noted unless it is germane to the issues on appeal. The lower court's reasoning should generally not be noted. Unless it is relevant to the issues raised on appeal, trial court procedures, such as the making and disposing of various motions, should not be mentioned.

In a civil case, if the editor has information that trial was by bench or by jury, the synopsis should reveal that. In a criminal case, given the strong presumption of a jury trial, only a bench trial need be noted. Also, in a criminal case, if the defendant was convicted upon a guilty plea or pleaded no contest (nolo contendere), that fact should be noted in the synopsis. (e.g., "Defendant pled guilty in the District Court, Natrona County, Daniel L. Forgey , J., to involuntary manslaughter." or "Defendant was convicted pursuant to a no contest plea in the Circuit Court, Winnebago County, Scott C. Woldt, J., of armed robbery.")

Any citations to the published decisions of the trial court should be included in the synopsis. Citations to Westlaw-only opinions may be used for federal district court, Bankruptcy Court, and Tax Court opinions, and for state trial court opinions, to the extent the citation takes the researcher to an opinion, not a mem. An editor must review the trial court decision on Westlaw prior to including the citation, in order to ensure that the decision is more than just an order or judgment, but includes some legal discussion by the court. A citation should generally be included after the name of the trial court and the judge, although it may be included elsewhere in

79

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

the sentence if the synopsis would be clearer as a result. (For examples, see Synopsis - Intermediate Appeal)

## Intermediate Appeal

If there was a decision by an intermediate court, that fact and the court's action should be noted and the court should be identified. If the intermediate court was a trial court of general jurisdiction reviewing the decision of a court of limited jurisdiction, the intermediate court should be identified by full name, county, and full name of the trial judge. If the intermediate court was an appellate court, it should be identified by its full name, but the name of the authoring judge is not included. If there was a trial de novo, that should be indicated.

Any citations to the published decision of the intermediate court or federal district court should be included in the synopsis. All parallel cites must be included. Westlaw cites may be included in the synopsis, to the extent the citation takes the researcher to an opinion, not a mem. Federal Appendix cites should be included. A citation should generally be included after the name of the court and judge (if included), although it may be included elsewhere in the sentence if the synopsis will be clearer as a result.

### EXAMPLE 1

Background: Plaintiff brought action... The United States District Court for the Northern District of Illinois, Smith, J., 2001 WL 123456, granted summary judgment for the plaintiffs, and defendant appealed. The Court of Appeals, 78 F.3d 910, vacated and remanded.

Holdings: On remand, the District Court held that ...

### EXAMPLE 2

Background: Plaintiff brought action... The United States District Court for the Northern District of Illinois, Smith, J., 123 F.Supp.2d 456, granted summary judgment for the plaintiffs and awarded attorney fees, 2001 WL 123456. Defendant appealed.

Holdings: The Court of Appeals held that...

### EXAMPLE 3

Background: Plaintiff brought action... The United States District Court for the Southern District of Ohio, Timothy S. Hogan, United States Magistrate Judge, 2006 WL 2850524, recommended that defendant's motion to dismiss be granted, and Susan J. Dlott, J., 2006 WL 2850511, adopted report and recommendation. Plaintiff appealed.

## Appellate Procedure

Cases reach the appellate courts by various methods, including appeal, writ of error, certiorari, mandamus, etc. The methods for seeking review typically vary between jurisdictions and between court levels within a jurisdiction. Track the court's language as much as possible.

The party seeking review should be identified if possible. E.g., "Employee appealed." "State was permitted to take interlocutory appeal." "Husband filed application for discretionary review."

If review is being sought of only a portion of the judgment, or of a preliminary ruling, that should be indicated.

80

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Prior Appeals

If there have been prior appeals, those appeals and their disposition should be included in the synopsis, along with any citations to the West Federal or Regional Reporter, preceded by any parallel citations to official reporter or state reports, if available.

Westlaw citations should be used for prior unreported opinions, including trial court opinions and administrative decisions, to the extent the citation takes the researcher to an opinion, not a mem.

Trial court opinions may be cited if the trial court is acting in a trial court capacity or in an appellate capacity.

Full-text-table (FTT) opinions may be cited using the Westlaw citation; the reporter citation for FTT opinions should not be used.

We are no longer using dash citations for cases that will be published in print but are not yet reported.  A Westlaw citation is sufficient.

RIGHT:  2006 WL 1234567

WRONG:  ___ S.W.3d ____, 2006 WL 1234567

For further information on what citations may be included, see Synopsis – Citations to Direct History.

## Issuing Court

The court issuing the opinion being headnoted should be identified by its proper name, as provided in the court/judge widget. Also following the style in the court/judge widget, authoring judges for federal district court cases or other trial court opinions should be referred to by their full name. Authoring judges in appellate opinions should generally be referred to by their last name only. (Note: there will be some exceptions to this, such as when more than one judge on the appellate panel has the same last name or if the court has requested that full names be used, such as the Wisconsin Supreme Court. The widget will be set up accordingly.) These rules apply to majority, plurality, concurring, and dissenting opinions. No reference to an author is made if the opinion is per curiam, and "Per Curiam" should not be included with the issuing court information in the synopsis.

If the authoring judge is sitting by assignment or sitting by designation, this needs to be noted in the synopsis. This rule also applies to any concurring or dissenting judges noted at the end of the synopsis.

### EXAMPLES

The Court of Appeals, Louis F. Oberdorfer, District Judge, sitting by assignment, held that: (1) …

Buckingham, Senior Judge, sitting by designation, concurred in result.

If the court issuing the opinion is a trial court, the county (city or judicial district) where the court sits should not be included in the description of the court in the synopsis. For example, a synopsis would state: "The Court of Common Pleas, Christopher Brown, J., held that…" rather than "The Court of Common Pleas, Franklin County, Christopher Brown, J., held that…"

If the court has taken prior action, such as denying a motion to dismiss, or if the opinion is on rehearing, that should be noted, especially if there is a citation to the prior action or opinion. If the decision is on rehearing, but the opinion gives no indication of what result, if any, was reached

81

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

initially, the synopsis should simply note that the opinion is on rehearing, without attempting to indicate the result reached on original hearing.

## En Banc Cases

If you know, either from an express statement in the opinion or from the list of judges, that a court that usually sits in smaller panels is sitting en banc, you should include that information in your synopsis. E.g., "On rehearing en banc, the Court of Appeals, Smith, J., held that..." or "The Court of Appeals, en banc, Smith, J., held that..."

Note, however, that while the Mississippi Court of Appeals sits in panels, all the judges note whether they concur, etc. with the panel decision. Do not use "en banc" for this court unless it specifically notes that it is in fact sitting en banc.

## Holdings

The synopsis must include a concise summary of the court's most important holdings. A holding should not be a verbatim repetition of the corresponding headnote but, rather, should generally be a more concise statement of the point in the headnote, generally without any material usually found in a "where" clause.

Points dealing with procedure, especially appellate procedure and unpreserved issues, should generally not be included as holdings unless they are dispositive of the appeal. These points should be included when the court's discussion of the issue indicates that it is setting a new standard or clarifying existing rules.

If more than one holding is set out in the synopsis, the holdings should be numbered, with the numbers in parentheses. Also, use a colon before you list the holdings.

The holdings should be separated by semicolons if there are more than two. If there are only two holdings, use "and" and a comma to separate the holdings. The word "and" should precede the last holding, unless the last point would indicate a result contrary to that indicated by the preceding points, in which case "but" should be used.

As a general rule, do not make more than seven holdings per case.

### EXAMPLES

One holding: The Court of Appeals, Smith, J., held that police had a reasonable suspicion of criminal activity justifying an investigatory stop.

Two holdings: The Court of Appeals, Smith, J., held that: (1) police had a reasonable suspicion of criminal activity justifying an investigatory stop, and (2) state presented sufficient evidence of intent to support first-degree murder conviction.

More than two holdings: The Court of Appeals, Smith, J., held that: (1) police had a reasonable suspicion of criminal activity justifying an investigatory stop; (2) state presented sufficient evidence of intent to support first-degree murder conviction; and (3) life sentence was not excessive.

## First Impression

If a holding is truly one of first impression, that should be mentioned in the Holdings section of the synopsis. If all of the holdings relate to issues of first impression, or there is only one holding,

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

you may include the language at the beginning of your Holdings section, e.g., "As matters of first impression, the Supreme Court, Blue, J., held that: (1) ..., and (2) ... Otherwise, the first impression language should be placed immediately after the number of the relevant holding, e.g., "The Supreme Court, Gray, J., held that: (1) …, and (2) as matter of first impression, …"

A matter is one of first impression if has not been previously addressed by the court or the higher courts in its system. The fact that lower or co-equal courts within the system or other courts in other systems have addressed the issue does not vitiate first impression status.

"First impression" language may be used in the Holdings field, even where it is not present in the opinion, when the court employs its equivalent, e.g., "there is no reported case in the jurisdiction" or, in a federal Court of Appeals case, "we join our sister circuits" or "there is a split of authority among our sister circuits" (and then proceeds to decide the issue). Where the court characterizes the issue as one of "apparent first impression," you should use that phrase. You may also use the phrase "apparent first impression" when the court employs similar, hedged language, e.g., "our research has not revealed any caselaw on the subject," or "this case raises a novel issue," unless it is apparent the word "novel" is being used to indicate the issue is new, rather than unaddressed.

When the court identifies a case as a "case of first impression," and then addresses multiple issues without specifying which issues are the ones of first impression, do not attempt to guess which issues are the ones of first impression. If you are unsure which issues are the first impression issues, do not put first impression language in the individual holdings in the synopsis and do not put "as matters of first impression" before "the court held that…" Instead, you may state "In a case of first impression, the court held that…"

## Overruling, Abrogating, etc.

If another case is clearly and unqualifiedly overruled, abrogated, receded from, or disapproved of, that should be mentioned: The Supreme Court held that..., overruling *State v. Ginnow*, 123 N.W.2d 456. The reference should be separated from the holding by a comma and should include the complete title of the case being acted upon, along with all parallel citations to the case. There should generally be no more than 7 affected cases listed with a synopsis holding. If there is not a clear way to narrow down a larger number of cases actually affected, talk to a revisor. (See also KeyCite: Overruling, Abrogating, Receding, and Disapproving.)

## Multiple Opinions

If headnotes that should be reflected in the synopsis have been made from more than one opinion, the author of each opinion should be noted after the number of the relevant holding. The numbering of holdings should be continuous throughout the synopsis.

### EXAMPLE

The District Court of Appeal, Davis, J., held that: (1) age of the offender was not an element of the offense; and (2) in a concurring opinion for a majority of the court, Wallace, J., further held defendant was estopped from asserting that jury's finding as to his age precluded retrial; and (3) trial court lacked authority under District Court of Appeal's mandate to grant the motion to dismiss.

83

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Mandate

The court's disposition of the appeal should be noted in a separate paragraph at the end of the synopsis. If the court's mandate includes specific directions or other detail, it may be summarized with a simple phrase, such as "Reversed and remanded with directions." Editors must carefully note distinctions between "reversed," "reversed and remanded," "reversed and rendered," "dismissed," etc. *Follow the language of the court's mandate as closely as possible.*

The mandate used by the editor should be clear as to whether it is being applied to the action of the trial court, the action of an intermediate court, or both: "Judgment of Court of Appeals affirmed," or "Judgment of Court of Appeals affirmed and circuit court reversed," etc.

If the opinion is that of a trial court, the mandate should indicate the court's action, such as "Judgment for plaintiff" or "Motion to dismiss granted," although the type of motion need not be mentioned in the mandate if it is identified earlier in the synopsis. If the opinion disposes of a plethora of motions, or if the actual order to be entered is not clear, the phrase "Ordered accordingly" may be used, but the phrase is to be avoided.

Use the mandate "Motion denied." or "Petition granted." rather than simply "Denied." or "Granted.," so that it is clearer what exactly is being denied or granted. Likewise, if an appellate court is explicitly dismissing an appeal (as opposed to the case entirely), use the mandate "Appeal dismissed" rather than simply "Dismissed."

## See Also References

A "see also" reference is made at the bottom of the synopsis, after the mandate and any concurrences or dissents. This allows the editor to provide the reader with a cite to another case in situations where the cite could not be included in the body of the synopsis, but the editor believes the reader might find the cited case interesting or useful to the reader's understanding of the citing case. A "see also" case usually involves the same or related parties. It may or may not be a related reference. If the case is a related reference and you would like to cite it, consider whether to include it in the body of the synopsis where its place in the procedural chain and why it might be useful could be made apparent.

The decision whether to make a "see also" reference to a case is discretionary. The cited case should be one that would be useful or interesting to someone researching the citing case. There is no requirement that a related reference either be cited in the body of the synopsis or be made into a "see also." Some situations where you should consider making a "see also" reference include the following:

- The cited and citing cases have been designated Precede and Follow (when you are heading both the Precede and Follow cases, if you put a "see also" in one, you should put a "see also" in the other).

- The cited case is a separate, distinct case arising out of the same set of facts as the citing case, perhaps involving the same or related parties and claims.

- The cited case is a distinct underlying proceeding.

- The cited case is a related reference that was not cited in the opinion of the citing case.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Dissenting and Concurring Judges

The names of judges who dissent or concur on a limited basis, or who have felt moved to write an additional opinion, should be noted in separate paragraphs following the mandate:

> Nealy, C.J., dissented.

> Evans, J., concurred in the result only.

> Blackmar, J., filed specially concurring opinion.

> Pagel, J., filed an opinion concurring in part and dissenting in part in which Lucas, J., joined.

Concurring and dissenting judges should be referred to (either full name or last name only) as they are designated in JWB.

If a concurring or dissenting judge who is included in the synopsis is sitting by assignment, this needs to be noted.

> David C. Buckingham, Senior Judge, sitting by assignment, concurred in result.

In United States Supreme Court opinions only, Justices who did not participate should be noted: "Justice Scalia did not participate." Otherwise, judges who are not sitting or are disqualified need not be mentioned.

If a concurring or dissenting judge provides only a one-sentence explanation for why the judge is concurring or dissenting, and the case does not identify the statement as an "opinion," the synopsis should refer to this judge as concurring or dissenting "with statement," rather than having filed an opinion. (Exception: per the style for Louisiana cases, these judges should be referred to as having "assigned reasons."  See LA-5. Assigned Reasons.)

### EXAMPLE

#### Opinion:

VANDE WALLE, Chief Justice, dissenting.

Because I would not approve of an award of attorney fees in any amount in this case, I respectfully dissent.

#### Synopsis:

Vande Walle, C.J., dissented with statement.

## Citations to Direct History

Direct history citations are references to prior and subsequent opinions of various courts in the same case. Citations to published opinions in the direct history should appear in the synopsis. Mems and jacketed mems, in general, should not be cited. Table cites, other than cites for full-text table (FTT) opinions, should not be included. Westlaw citations should be used for prior unreported opinions, including trial court opinions and administrative decisions, to the extent the citation takes the researcher to an opinion that is not a mem. FTT opinions may be cited using the Westlaw citation; the reporter citation for FTT opinions should not be used, even if that is the cite given in the History Viewer in JWB. Citations to the Federal Appendix should be included.

When including a Westlaw citation in the synopsis, do not include any parallel reporter citations, including official state reporter citations. Use just the Westlaw citation.

85

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Do not include citations to public domain cites or to other unofficial, non-West publications. For example, a cite to a BNA reporter should not be included (105 Fair Empl.Prac.Cas. (BNA) 280). Public domain cites typically start with the year of the decision, followed by an abbreviation for the court at issue, followed by a decision number. Some examples: 2009 Ark.App. 96, 1997 ND 1, 2000 WI App 7.

The following states use public domain cites: Arkansas, Colorado, Illinois, Louisiana, Maine, Maryland, Montana, New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, South Dakota, Utah, Vermont, Wisconsin, and Wyoming. The following federal courts use public domain cites: the Sixth Circuit U.S. Court of Appeals, the U.S. District Court for South Dakota, the U.S. District Court for New Hampshire, and the United States Bankruptcy Court.

Do not include citations to denial of certiorari by the U.S. Supreme Court. Do include all cites to reversals or vacaturs by that court.

All parallel citations, excluding the prohibited citations noted above, must be included in the synopsis. When there are parallel citations, the state reporter citation should precede the National Reporter system citation. For United States Supreme Court citations, the order is U.S., S.Ct., L.Ed.

Related references are references to other opinions in the case that are not in the direct line of appeals and remands. They may be included in the synopsis if relevant to an issue in the opinion, but need not be included. For more information about related references, see Synopsis – Verification of Direct History.

In post-conviction and habeas corpus cases, if there was a reported or unreported opinion on the direct appeal from the conviction, the citation will appear in the direct history for the case and should be included in the synopsis. If there are citations to more than one opinion dealing with the direct appeal, only the cite to the final opinion affirming the conviction need be given. In federal habeas proceedings involving a state court conviction, the citation to the last state court opinion considering a post-conviction proceeding should also be included. All citations to prior opinions in the current habeas or post-conviction proceedings should be included in the synopsis.

Citations to opinions dealing with proceedings which preceded the opinion being headed should be noted in the body of the synopsis (but see exceptions in special requirements for California and Indiana), while opinions in subsequent proceedings should be noted at the end, following the mandate and the notation of the special concurrences and dissents.

### EXAMPLE

Affirmed.

Selya, J., filed a dissenting opinion.

Opinion reversed on appeal, 72 F.3d 911.

"See also" references are references to related cases, and should be included at the very end of the synopsis after the mandate and the notation of any special concurrences or dissents.  (For more information on "see also" references, see Synopsis – See Also References.)

### EXAMPLE

Affirmed.

See also 143 N.E.2d 1012.

For information on a caseheader's responsibility to verify direct history, see Synopsis – Verification of Direct History.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002950

## Verification of Direct History

You are required to verify the direct history when you headnote a case. To do so, pull up your case on Westlaw by using the "W" button in the JWB Summary Tool, and then view the direct history, if any, associated with the case. You must determine whether the KeyCite direct history indicated on Westlaw is correct and whether there are cases in the direct history that you need to include in your synopsis. If KeyCite is correct, your verification is complete. If the direct history on Westlaw omits a case or otherwise is not correct, you should e-mail Cases-Keycite Errors, advising them of the error. Simply citing an omitted case in the synopsis does not provide them with sufficient notice of an error.

When a court notes that it is affirming a decision on grounds different from those relied on below, or if it otherwise indicates it is not completely affirming the decision, the Case History should not simply be "Affirmed," even if the court gives that as its mandate. If the Case History simply says Affirmed, it needs to be corrected to say, for example, "Affirmed on other grounds," or "Affirmed in part." However, you may still use Affirmed as the mandate for your synopsis if that's all the court gives as its mandate.

The KeyCite direct history term "affirmed but criticized" applies when an appellate court affirms a lower court's decision, but explicitly criticizes the lower court's reasoning in some way. If there is no explicit criticism, but the court affirms on grounds different from those used by the lower court, the history "affirmed on other grounds" should be used.

A related reference is a type of direct history. The same case must be involved for a related reference to be made. It is used when there is no more specific history phrase to describe the relationship between the two opinions because one ruling does not directly act on the other.

If one proceeding resolves a discovery dispute and a later opinion resolves the merits, without commenting on the propriety of the discovery rulings, this would be a related reference.

If one decision rules on a summary judgment motion and a later decision deals with the issue of attorney fees and costs, they are related references.

Rulings by an appellate and a lower level court should get a more direct link (such as on remand to) if one is available. However, if we are missing intervening decisions, so that one ruling does not directly lead to or act on the next, related reference treatment might be appropriate.

Related reference treatment will also be appropriate when a federal proceeding is related to a state proceeding that cannot be captured by links such as postconviction/habeas relief or certified question action.

If a prior case is linked to your case as a related reference, every other decision in the chain of that prior case will also be linked as a related reference.

## Certified Questions

When a state court issues an opinion in response to a certified question from a federal court, the synopsis should follow the usual format for describing the parties and the nature of the action, as well as the courts that have taken prior action. The synopsis should follow the usual format for listing the court's holdings. The mandate should be "question answered" or "certification denied" if no other language is used by the court.

If the opinion only consists of the court's indication that a question will be certified, the case is not to be headed. It is to be made a "mem." However, if the case contains discussion or reasoning about the question to be certified, a headnote (and other applicable features) may be made.

87

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Upon return of a certified question to the certifying court, if the certifying court merely implements the answer to the question without any further analysis, bring the case to a revisor as it may be a "mem." See, e.g., 2007 WL 247785:

> In light of the Florida Supreme Court's resolution of these issues, the district court correctly reformed the policy and correctly rejected plaintiffs' contention that they are entitled to uninsured motorist coverage under § 627.727. Accordingly, we affirm the district court's grant of final judgment in favor of Michigan Mutual on all of plaintiffs' claims.

A headnote or headnotes may be called for, however, if the opinion that answered the question was not published and headnoted.

## Advisory Opinions

When a court issues an advisory opinion in response to a question from a state official, the synopsis should identify the party propounding the question and the general nature of the question. The phrase "The Justices of the Supreme Court were of the opinion (answered) (advised) that..." The mandate should be "question answered" or "answer declined" if no other language is used by the court.

## Abbreviations

The following abbreviations should be used for judges' titles:

### State Court Cases

*(In New Jersey, use the letters appearing after the judge's name.)*

Associate Judge--  J.

Associate Presiding Judge--  P.J. (appellate court only)

Chancellor--  Spell out

Chief Judge or Justice--  C.J.

Circuit Judge-- J.

Commissioner--  Spell out

District Judge --  J. (except in New Mexico, then use D.J.)

Judge or Justice--  J.

Judicial Hearing Officer (NY only)-- J.H.O.

President Judge(Pa.)--  Spell out

Presiding Judge--  P.J. (appellate court only)

Senior Judge--  Spell out

Surrogate--  S.

Vice Chief Justice (Oklahoma)--  V.C.J.

**NOTE**: When the judge is an acting judge, such as "Acting Chief Judge," do not abbreviate "Acting" but do use the pertinent abbreviation, if any: "Acting C.J."

88

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

### Federal Lower Court Cases

*(Use these abbreviations when headnoting a federal lower court opinion.)*

Bankruptcy Judge-   J.

Chief Bankruptcy Judge-   Chief Judge

Chief District Judge--  Chief Judge

District Judge--   J.


Magistrate Judge--   United States Magistrate Judge

Senior District Judge--  Spell out

### Federal Courts of Appeals and United States Supreme Court Cases

*(Use these abbreviations for authors of opinions at these levels only.)*

Bankruptcy Judge--   J.

Chief Bankruptcy Judge--  Chief Judge

Chief Circuit Judge (Justice)--  Chief Judge (Justice)

Circuit Judge (Justice)--  Spell out

District (Chief) Judge--  District Judge

Magistrate Judge--   United States Magistrate Judge

Senior Circuit Judge (Justice)--  Spell out

Senior District Judge--  Senior District Judge

Supreme Court (Chief) Justice-- (Chief) Justice (followed by name)

**NOTE:** The abbreviation for the plural of judge and of justice is JJ., and for presiding judge it is P.JJ.

89

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

## Universal Summaries

### Features

The following types of slips/summaries are to be created using the Universal Summary widget:

- In This Issue
- Federal Case News
- Education Law Slip
- Education Law Summary
- Westlaw Legal Bulletin
- Westlaw Topical Highlights
- Westlaw State Bulletins

### Issue Slips

Issue slips are made for every state and federal opinion, including U.S. Supreme Court cases. The slips include the topic, subtopic, and headline fields of the universal summary. They embody a very short statement of the main holding in the case.

Issues slips are used for multiple purposes. They display prominently with search results on Westlaw. They also appear in the first pages of each print advance sheet, in order to alert customers to the nature of the decisions contained in the advance sheet. In addition, the headline portion of the issue slip is also used for Westlaw highlights and bulletins and for the Education Law Summary.

The first word of the headline is capitalized and the headline should end with a period. Verbs must be used in the headline, and contractions may not be used. The headline should generally not exceed 150 characters. Currently, due to issues with Westlaw display, neither italics nor blue popular case names should be included in the headline field of the universal summary. If you need to refer to a case name in the ITI, just use regular text.

To the extent possible, the headline should include sufficient details in order to distinguish the case at hand from others on the same subject. Attorneys want facts that are similar to the facts they are dealing with. However, if a combination of facts supports the court's conclusion, such that it would be misleading to single out only one or two facts in the headline, it may be appropriate for the issue slip to state a broader conclusion.

#### EXAMPLES

**GENERIC:**  FAMILY LAW – Child Protection:  State proved by clear and convincing evidence that parental rights should be terminated.

**BETTER:**  FAMILY LAW – Child Protection:  Mother's gambling addiction warranted termination of her parental rights.

**GENERIC:**  CRIMINAL JUSTICE – Pleas:  Defendant's guilty plea was voluntarily, knowingly, and intelligently entered.

90

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**BETTER:** CRIMINAL JUSTICE – Pleas: Defendant's exchange with his attorney about religion and family did not coerce him into pleading guilty to producing child pornography.

These issue slips are appropriately precise about the issue:

HEALTH-Mental Health: Testimony, not merely a certificate of medical examination, was required to recommit patient.

GOVERNMENT-Tobacco: City ordinances imposing tax on tobacco products violated legislative act concerning tobacco taxation.

INSURANCE-Automobile: Tort judgment for less than liability policy limits precluded claim for UIM benefits.

## Federal Case News (FCN)

A Federal Case News paragraph should be made for every published, headed case from the United States Supreme Court, the United States Courts of Appeals, the United States District Courts, the United States Bankruptcy Courts, the Court of International Trade, the Court of Federal Claims, the United States Court of Appeals for the Armed Forces, the United States Court of Appeals for Veterans Claims, and the Judicial Panel on Multidistrict Litigation.

Do not make FCNs for Federal Appendix cases.

Do not make FCN summaries for cases from the Merit System Protection Board or the United States Military Courts of Criminal Appeals.

If the case warrants a topical highlight or bulletin, under the standards for creating those features, the caseheader should simply create an identical FCN summary. If the case does not warrant a topical highlight or bulletin, and the caseheader is creating only an FCN summary, he should select the point of law which is the most significant or of the greatest interest. In general, substantive issues should be given preference over procedural issues, and issues of federal law should be given preference over issues of state law. However, these are only guidelines.

An FCN summary is created from the topic, subtopic, and paragraph of the universal summary.

See Styles below for information on how to create an FCN in JWB.

## Education Law Slips and Summaries

Education Law Slips and Summaries for the Education Law Reporter should be created for reported and unreported cases dealing with educational issues or education-related parties. Summaries should be made for all cases involving educational issues. In cases involving educational institutions or other education-related parties, an editor should err on the side of making an education law reporter summary if the party's educational status could in some way be relevant to an issue, or if the administrator of an educational institution could possibly be interested in the case. It is not necessary for a case to cite to education-related statutes or cases. However, if the decision is merely about litigation procedures unrelated to the party's educational status, then a summary may be omitted.

Some other examples of cases where a summary may not be needed include property tax cases when the school district is just one of the taxing entities, and a specific school tax is not involved, and medical malpractice cases against a university or university hospital when the university connection is irrelevant. Examples of cases where summaries should be made would include an employment discrimination suit by a school or college employee, a sexual abuse case brought by

91

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

students allegedly abused while at a religious school, or a suit about a motor vehicle accident involving a school bus. These summaries should be automatically duplicated to the Education Topical Highlight.

An education law summary is created from the topic, subtopic, headline, and paragraph of the universal summary. An education law slip is created from the subtopic and headline of the universal summary. The caseheader must choose the topic "Education" to create these features. Once the editor selects the main topic "Education" and a subtopic in the Universal Summary window and includes a summary in the paragraph field, the JWB Summary Tool will automatically select "Education Law Reporter Summary" and "Education Law Slip" as publishing locations and automatically duplicate the summary to the Education Topical Highlight (WTH). In addition, the editor should manually select any relevant state bulletin (WSB) in reported cases. See Westlaw State Bulletins. Any relevant WSBs may also be selected for those unreported cases involving unusual or interesting issues. However, a state bulletin need not be made if the case (reported or unreported) is more than 6 months old.

To create an education law slip and summary when there is an existing universal summary covering a different issue, or having a different topic and subtopic, the caseheader needs to create a second universal summary.

See Styles below for information on how to create an Education Law Summary in JWB.

## Westlaw Legal Bulletin (WLB)

WLB is a "general news" database, covering the most significant developments across the entire spectrum of the law. This includes: (1) any current, significant development for which we do not have a topical highlights database; (2) the most significant of all developments in the topical highlights; and (3) all significant damages and legal services points. The WLB summary is created from the topic, headline, and paragraph from the universal summary.

Westlaw Bulletin-U.S. Supreme Court (WLB-SCT) covers all significant actions by the United States Supreme Court.

See Styles below for information on how to create a WLB in JWB.

## Westlaw Topical Highlights (WTHs)

The WTH databases cover any current, significant development within the law of the topic designated by the database name. The WTH summary is created from the topic, subtopic, headline, and paragraph of the universal summary. The topics covered by WTH are Antitrust, Bankruptcy, Business Organizations, Commercial Law, Copyrights, Criminal Justice, E-Commerce, Education, Energy and Utilities, Environmental Law, Estate Planning and Probate, Family Law, Finance and Banking, GLBT (Gay Lesbian Bisexual Transgender Law), Health, Insurance, Labor and Employment, Litigation, Maritime Law, Native Americans, Patents, Products Liability, Real Property, Securities Regulation, Taxation, and Trademarks.

See Styles below for information on how to create a WTH in JWB.

## Westlaw State Bulletins (WSB)

Westlaw State Bulletins are created for the benefit of practitioners in certain states, to direct them to cases that might be of interest to them. In general, the bulletins are made for significant and

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

recent decisions from the courts of the WSB state and from federal courts whose jurisdiction extends to the WSB state.

When a caseheader makes a WTH or WLB for a state court decision from a state covered by a Westlaw State Bulletin (i.e., California, Florida, Illinois, Louisiana, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, Texas, Washington), she should make a duplicate WSB.

Reported decisions of a WSB state's high court should presumptively get a WSB summary, except decisions concerning attorney discipline or routine matters of criminal or family law.

When a caseheader makes a WTH or WLB for a decision from a federal district court located in a WSB state, he should make a duplicate WSB if the summary construes the law of the WSB state or federal law.

When a caseheader makes a WTH or WLB for a decision from a federal court of appeals for a circuit that includes a WSB state, she should make a duplicate WSB if the summary construes federal law or the law of the WSB state. She should not make a duplicate WSB if the summary construes the law of another state.

The Third, Fifth, and Ninth Circuits each include two WSB states. If a WTH or WLB for a Fifth Circuit decision construes federal law, the caseheader should make a WSB for both Louisiana and Texas. If the summary construes Louisiana law, the caseheader should make a WSB for Louisiana but not for Texas (and vice versa). If the summary construes Mississippi law, no WSB should be made. The same goes for Third Circuit summaries with respect to Pennsylvania and New Jersey, and for Ninth Circuit summaries with regard to California and Washington.

When a caseheader makes a WTH or WLB for a decision from the United States Court of Appeals for the Federal Circuit, which has nationwide jurisdiction, a WSB should be made only if the summary construes state law from a WSB state.

A caseheader may make a WSB without a WTH or WLB if his summary covers a significant issue of local law that will be of little interest outside the WSB state.

The WSB is created from the topic, headline, and paragraph of the universal summary.

See Styles below for information on how to create a WSB in JWB.

## Westlaw Highlights Databases

The following is a list of current highlights and bulletins databases with their Westlaw database identifiers.

**General News**

- Westlaw Bulletin (WLB)

**Court-Specific**

- Westlaw Bulletin-U.S. Supreme Court (WLB-SCT)

**Jurisdictional (State Bulletins)**

- California (WSB-CA)
- Florida (WSB-FL)
- Illinois (WSB-IL)
- Louisiana (WSB-LA)

93

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002957

- Massachusetts (WSB-MA)
- New Jersey (WSB-NJ)
- New York (WSB-NY)
- Ohio (WSB-OH)
- Pennsylvania (WSB-PA)
- Texas (WSB-TX)
- Washington (WSB-WA)

**Highlights (always topic-specific)**

- Antitrust (WTH-ATR)
- Bankruptcy (WTH-BKR)
- Business Organizations (WTH-BUS)
- Commercial Law (WTH-CML)
- Copyrights (WTH-COPY)
- Criminal Justice (WTH-CJ)
- E-Commerce (WTH-EC)
- Education (WTH-ED)
- Energy and Utilities (WTH-EN)
- Environmental Law (WTH-ENV)
- Estate Planning and Probate (WTH-EPP)
- Family Law (WTH-FL)
- Finance and Banking (WTH-FIN)
- GLBT (WTH-GLB)
- Health (WTH-HTH)
- Insurance (WTH-IN)
- Labor and Employment (WTH-LB)
- Litigation (WTH-LTG)
- Maritime Law (WTH-MRT)
- Native Americans (WTH-NAM)
- Patents (WTH-PAT)
- Products Liability (WTH-PL)
- Real Property (WTH-RP)
- Securities Regulation (WTH-SEC)
- Taxation (WTH-TAX)

Sensitivity: Confidential

HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY

- Trademarks (WTH-TMK)

## Highlight Selection

Developments in the law must be both significant and current to be summarized for the Westlaw highlights and bulletins.

### Significance

A significant development occurs when a court (a) announces a new rule of law, or (b) modifies a preexisting rule of law.

Significant developments may also occur when a court (a) applies a rule of law to a fact situation where it is not usually applied, or (b) reaches an unusual, surprising or unexpected result based upon application of a rule of law to a seemingly ordinary or straightforward state of facts (e.g., the court says sticking a gun into someone's face and demanding money is not robbery).

Court labels, such as "first impression," "novel," and "not previously addressed," may flag significant developments. KeyCite references may also flag significant points.

A point of law may be significant if the court gives no supporting citations for its conclusion, or qualifies citations with "But cf." (translation: "but compare").

Significant points also occur when courts address so-called "hot" issues, i.e., emerging law which may no longer be first impression but is legally, politically and/or socially sensitive (e.g., abortion, assisted suicide).

Social newsworthiness -- items that are reported in newspapers and through radio, television and other lay media -- may indicate significance. However, this significance fades quickly the longer the gap between the media coverage and our own.

In general, the higher the court -- whether on the state or the federal level -- the more significant its pronouncements. Be more liberal in making highlights from the top courts.

Damages awards of $1 million or more are presumptively significant. Smaller awards may, however, also be significant, e.g., if the victim would have been expected to collect more or less under the facts and circumstances.

The caseheader should make an E-Commerce summary for every Internet case. If the summary is also worthy of inclusion in another WTH database, the caseheader will have to create a second universal summary.

Bankruptcy summaries should be made for all U.S. bankruptcy court cases, all U.S. bankruptcy appellate panel cases, all U.S. district court cases dealing with bankruptcy issues, and all U.S. Court of Appeals cases on appeal from the bankruptcy court or on appeal from the district court but dealing with bankruptcy issues.

In addition to the topics of E-Commerce and Bankruptcy, be liberal in making topical highlights from the following areas: Antitrust, Education Law, Energy&Utilities, Estate Planning & Probate, GBLT, intellectual property topics, Maritime Law, Native Americans, Products Liability, Taxation

Caseheaders should be selective in creating summaries for family law and criminal law.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002959

### Currency

Developments generally should be from cases no more than 6 months old by filing date. Exceptions should be rare. Education law summaries and highlights should be made regardless of age.

## Duplication of Highlights and Bulletins

Westlaw Bulletin - In addition to making WLB summaries for significant developments within non-Topical Highlights topics, caseheaders should duplicate to WLB summaries of the most significant developments they summarize for the Topical Highlights. They should also duplicate all damages and legal services summaries made for a WTH database.

Westlaw Topical Highlights - Duplication between WTH databases is the exception, rather than the rule. While the scope of each of these databases in general acts as a cut-off for the others, the rare development that has primary significance in more than one area of law should be summarized for each of the respective topical databases. To duplicate a WTH, the caseheader will need to make a new universal summary for each topical highlight.

Westlaw State Bulletins - Caseheaders should duplicate for the applicable WSB all WTH and WLB summaries that arise from or interpret the law of the WSB state. This includes any federal case which interprets that state's law. Caseheaders should also duplicate summaries construing federal law if they are from the WSB state courts, a federal district court within the WSB state, or a federal court of appeals for a circuit that includes the WSB state. See Westlaw State Bulletins.

## Topics and Subtopics

The caseheader must choose a topic and subtopic from the Uniform Topics list in the universal summary widget. When the case is submitted, the topic and subtopic selected by the caseheader will be used as the topics and subtopics for the various features

For example, a caseheader has an interesting point about child custody. On JWB she chooses the topic Family Law. Looking at the subtopics under Family Law in the Uniform Topics list, she will find that Child Custody is an appropriate subtopic.

## Styles

For all cases except United States Supreme Court cases, universal summary paragraphs are created by selecting the most significant concrete or dispositive abstract headnote and copying that headnote to the paragraph field in the Universal Summary widget in JWB. To copy the headnote text to the paragraph field, highlight the text of the headnote in the Features window, right click, and select "Create Universal Summary Paragraph." Be careful to select only the text of the headnote. Headnote numbers, topics, citations, and headnote properties should not be included in the universal summary paragraph. You may also simply copy and paste the text of the headnote into the universal summary paragraph field.

The universal summary should generally not be more than 800 characters long and should be an exact copy of the most significant concrete or dispositive abstract headnote. Avoid selecting a headnote that would be a mere recitation of the ITI. No additional language or information, including first impression language, should be added. However, if the universal summary includes an uncommon statute acronym, include the full name of the statute. If the statute

96

acronym is common (e.g., ERISA, ADA, ADEA, CERCLA, NEPA, etc.), there is generally no need to include the full name of the statute.

Currently, due to issues with Westlaw display for the headline portion of the universal summary, neither italics nor blue popular case names should be included in the headline field of the universal summary. If you need to refer to a case name in the headline, just use regular text. However, italics and popular case names should be included in the paragraph field.

See also, Style Guidelines.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Words and Phrases

### In General

Words and Phrases is a print publication comprised of headnotes defining legal terms. Westlaw also has a Words and Phrases database, and Words and Phrases (WP) is available as a search field in caselaw databases. These are all useful tools for researchers to find legal definitions for words and phrases. Words and Phrases are particularly useful to contract and insurance practitioners because of the importance of standardized phrases in contracts and policies.

Words and Phrases (W&P) references are not limited to technical legal terms nor to pure definitions. Headnotes which give examples of particular legal terms are also good W&P candidates.

A W&P headnote should involve a repeatable phrase, usually from a statute or contract, or a legal rule or doctrine. Also, the point of the headnote should turn on the word or phrase. A W&P should not be based on definitional context tacked onto a point about something else.

### EXAMPLE

No W&P for "lodestar amount":

Lodestar amount of attorney fees, that is reasonable hours times a reasonable rate, may be adjusted to account for subjective factors.

### How to Create a Words and Phrase

Each word, phrase, or clause must be specially marked in the JWB Summary Tool. This is done by highlighting the word, phrase, or clause in an open headnote, and then clicking on the green "WP" icon that appears above the summary text in the headnote window. The word, phrase, or clause will then appear in quotation marks and will be shaded in green in JWB. Note that the W&P term should not be in parentheses.

### What Word or Phrase Should Be Used

Unimportant preliminary words, such as prepositions, should be omitted from the W&P term, unless they are a part of the word, phrase, or clause construed. The leading or principal word should appear first in the W&P term, if possible. If the leading or principal word did not appear first and instead a word, such as doctrine, appeared first, the publication would list many different words and phrases under "doctrine of…," which is not as helpful to the researcher.

**WRONG:** "Doctrine of res judicata" provides that final judgment on the merits is conclusive as to rights of parties, creating absolute bar to subsequent action involving same claim, demand, or cause of action.

**RIGHT:** "Res judicata doctrine" provides that final judgment on the merits is conclusive as to rights of parties, creating absolute bar to subsequent action involving same claim, demand, or cause of action.

**RIGHT:** Doctrine of "res judicata" provides that final judgment on the merits is conclusive as to rights of parties, creating absolute bar to subsequent action involving same claim, demand, or cause of action.

98

Sensitivity: Confidential

In some instances, however, the word doctrine must be included as part of the word and phrase for the headnote to make sense, but the word should be included at the end.

> **EXAMPLE:** "Avoidable consequences doctrine" allows jury to relieve defendant of responsibility for consequences of injury to the extent that jury finds that plaintiff acted unreasonably and thereby enhanced his or her damages.

Except in unusual cases, the index phrase should not exceed four or five words. The W&P term should not be in parentheses.

In determining how much of a particular phrase to use, generally favor the entire operant phrase, even if the ruling arguably turns on only a portion of it.

For example, even if a Bankruptcy section 523 case arguably turned on whether an injury was "willful," a researcher interested in "willful injury" cases will likely search for "willful injury," figuring that searching only for "willful" would generate an overbroad result.

> **WRONG:** "Willful" injury, within meaning of dischargeability exception, is deliberate or intentional invasion of legal rights of another. 11 U.S.C.A. § 523(a)(6).

> **RIGHT:** "Willful injury," within meaning of dischargeability exception, is deliberate or intentional invasion of legal rights of another. 11 U.S.C.A. § 523(a)(6).

## Abstract and Concrete Phrases

When an abstract definition is stated in one headnote and the concrete example of that definition as applied to the particular facts of the case is set forth in another headnote, both headnotes should have Words and Phrases references.

> **ABSTRACT:** Police officers are on "emergency call," for purposes of exception to political subdivision's liability for death or injury caused by an employee's negligent operation of motor vehicle, if they witness illegal activity and are pursuing an alleged wrongdoer. Ohio Rev. Code Ann. § 2744.02(B)(1)(a).

> **CONCRETE:** Police officers pursuing driver who fled traffic stop were on an "emergency call'' for purposes of exception to political subdivision liability for death or injury caused by an employee's negligent operation of motor vehicle, even though police pursuit in such circumstances was prohibited by officers' departmental policies. Ohio Rev. Code Ann. § 2744.02(B)(1)(a).

However, while it is appropriate to make a W&P in abstract headnotes setting forth definitions of common concepts like "plain error" or "hearsay," a W&P should not be made for concrete headnotes saying whether a certain error was plain error or whether certain evidence was hearsay, due to the large number of concrete headnotes addressing those concepts. See Common Phrases.

## References in Multiple Headnotes

Several headnotes in a case may use the same W&P term. Sometimes, multiple abstract definitions of the same term can be combined into one headnote, but they may also be in separate

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

headnotes. Also, a court may include multiple concrete examples of things that fit the definition of that term, in which case the editor should make as many W&P references as needed.

## Negative Definitions

Negative, as well as positive, types of definitions or constructions should be included as W&P terms. A word, phrase, or clause may be defined or construed by what it is not, as well by what it is.

### EXAMPLE

Dog which was a family pet was not a "wild animal" for purposes of law making owners of wild animals liable for injuries caused by those animals.

Editors should also make separate W&P references in a single headnote when the headnote indicates that something is "X" rather than "Y." One W&P would be for X and the other for Y.

## Synonymous Words or Phrases

Where the court holds that certain words, phrases, or clauses are or are not synonymous, only the word, phrase, or clause the court is purporting to define should be used.

### EXAMPLE

"Territorial jurisdiction" is synonymous with venue; it is the authority over persons, things or occurrences located in a defined geographic area.

**(W&P for "territorial jurisdiction," but no W&P for "venue")**

## Putting Words and Phrases in Context

A headnote containing a statement that a certain set of facts come within the definition of some term in a constitutional provision, statute, ordinance, contract, bond, will, etc., should include enough relevant context to explain the significance of the term. In other words, describe why it matters whether the facts come within the definition.

### EXAMPLE

**WRONG**: For purposes of Railway Labor Act, "minor disputes" are those growing out of grievances or out of interpretation or application of agreements covering rate of pay, rules, or working conditions and involve controversies over meaning of existing collective bargaining agreement. Railway Labor Act § 2, as amended, 45 U.S.C.A. § 151a.

**RIGHT**: For purposes of Railway Labor Act section making minor disputes subject to binding arbitration before the National Railway Adjustment Board (NRAB), "minor disputes" are those growing out of grievances or out of interpretation or application of agreements covering rate of pay, rules, or working conditions and involve controversies over meaning of existing collective bargaining agreement. Railway Labor Act § 2, as amended, 45 U.S.C.A. § 151a.

**RIGHT**: "Minor disputes," which are subject to binding arbitration before the National Railway Adjustment Board (NRAB) pursuant to the Railway Labor Act, are those

100

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002964

> growing out of grievances or out of interpretation or application of agreements covering rate of pay, rules, or working conditions and involve controversies over meaning of existing collective bargaining agreement. Railway Labor Act § 2, as amended, 45 U.S.C.A. § 151a.

In the above incorrect example, the reader knows that "minor disputes" has something to do with the Railway Labor Act but does not know specifically what the effect of a minor dispute is. The correct examples make the result clear.

Also, to the extent possible, use the same term that is used in the constitutional provision, statute, ordinance, bond, will, etc. For example, if the statute uses "dog" but the court uses "dogs," use "dog," if possible. This last rule is not an absolute one but expresses a preferential treatment of the issue.

## Dictionary Definitions

If a court quotes a definition from a dictionary and it is clear that the court is accepting that dictionary definition to define, for example, a statutory or contractual term, that definition may be made into a W&P reference. The editor must make sure to include the appropriate legal context.

A mere reference to a dictionary definition without explicit or implicit words of adoption should not be made into a W&P reference.

## Common Phrases

Headnotes that set forth examples of legal concepts generally should not be made into Words and Phrases if the terms being defined are too common. For example, do not make a W&P out of examples of what does or does not constitute ineffective assistance of counsel. Basically, there are thousands of headnotes setting forth what does and does not constitute ineffective assistance of counsel or due process, and making words and phrases out of these terms does not make sense. Other examples where a W&P reference is unnecessary include where a court says a certain statement is hearsay or an admission, or it says that a property division is equitable, or it concludes that one person is another's agent.

### EXAMPLES

W&P references would not be appropriate for the following headnotes:

Mere failure to object is not ineffective assistance of counsel. U.S. Const. Amend. 6.

Substantive due process violations are generally those that are so arbitrary and unreasonable that they lack a substantial relation to the public health, safety and welfare. U.S. Const. Amend. 14.

Trial court's imposition of 25-year sentence for Class B felony of first-degree assault, which was outside the statutorily permissible range of punishment, was plain error, where State neither pled nor proved defendant to be a persistent offender as was necessary for trial court to extend the maximum term of 15 years. Mo. Ann. Stat. § 558.016(7).

Execution of murder defendant who suffered from schizophrenia and paranoia did not constitute cruel and unusual punishment. U.S. Const. Amend. 8.

However, keep in mind there are some terms or phrases, like "search" or "custody," for which W&Ps should be made for headnotes setting forth examples, despite the more common nature of the term or phrase. Consider whether a customer would expect to be able to do a W&P search for

101

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

the particular term, and whether the term is limited to one or few areas of law and has substantive meaning.

### EXAMPLES

Nonconsensual extractions of biological samples that may be used for DNA profiling are "searches" entitled to the protection of the Fourth Amendment. U.S. Const. Amend. 4.

Defendant was not in "custody" for Miranda purposes when officer ordered him to stop and place his hands on his car, where defendant exited the vehicle of his own accord after police officer arrived, officer did not physically restrict or touch defendant, officer explained that he was investigating a report of narcotics possession, and defendant voluntarily indicated he had marijuana in his vehicle.

A routine traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment even though the purpose of the stop is limited and the resulting detention quite brief. U.S. Const. Amend. 4.

Additionally, W&P references are appropriate for abstract headnotes setting out straightforward definitions of common terms. There is not a separate "triteness" standard for W&Ps apart from the triteness standard for abstracts. For example, if you are compelled to headnote "Substantial evidence is defined as …," you are committed to make the W&P invited by that phrase, notwithstanding that that particular W&P has been made thousands of times.

### EXAMPLES

W&Ps would be appropriate for the following headnotes:

"Plain error" is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

"Cruel and unusual punishments" under the Eighth Amendment are those that are incompatible with the evolving standards of decency that mark the progress of a maturing society or that involve the unnecessary and wanton infliction of pain on an inmate. U.S.. Const. Amend. 8.

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless an exception to the hearsay rule applies. Conn. Code of Evidence, § 8-3.

## When Court Uses Quotation Marks

Just because a court puts a term in quotation marks does not mean that the term is appropriate for a Words & Phrases reference. The quotes may only indicate emphasis, borrowed phrasing, or a term of art. On the other hand, the fact that a court does not put a word, phrase, or clause in quotes does not preclude making a W&P.

## Headnotes Setting Forth Elements

Generally, a headnote merely setting forth the elements of a doctrine, cause of action, or offense should not generate a W&P unless the essence of the point is definitional.

## EXAMPLES

102

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Words and Phrases**

No W&P for "fraud":

To establish fraud, plaintiffs must demonstrate that they justifiably relied on a material misrepresentation knowingly made by defendants and, as a result, suffered some injury.

No W&P for "criminal conspiracy":

Requisite elements of criminal conspiracy are intent to commit felony, agreement with another person to commit felony, and overt act in furtherance of agreement. Ind. Code Ann. § 35-41-5-2.

No W&P for "adverse possession":

To establish a claim of adverse possession, the claimant must prove by clear and convincing evidence that his possession of the subject property was continuous, hostile, actual, open, notorious, and exclusive for the statutory period.

W&P appropriate for "malicious injury":

"Malicious injury" under discharge exception for debts for willful and malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.  11. U.S.C.A. § 523(a)(6).

Sensitivity: Confidential

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0002967

## Headnote Properties

### Overview

Headnote Properties is a feature in the JWB Summary application that allows editors to assign certain required and optional properties to a headnote.

Editors must select a required property on each headnote. The failure to select a required property will result in a nonoverideable validation error.

Optional properties should be selected for those headnotes that meet the criteria of an optional property as described below.

### Required Properties

Currently, the only required property is to designate a headnote as abstract or concrete. Abstract points are those which state general principles of law. Headnotes for these points are written in the present tense. Concrete points are those which set forth the application of the law to the facts of the case. Headnotes for these points are written in the past tense. Do not mix abstract and concrete statements of the law in one headnote. Generally, a headnote should either be all abstract or all concrete.

### Optional Properties

#### Circuit Split Resolution

Circuit Split Resolution covers SCOTUS headnotes resolving a split in the Circuits of the Courts of Appeals and state supreme court headnotes resolving a split in their appellate divisions. Do not tag headnotes from lower courts with this property. For example, this property should not be used for a federal Court of Appeals resolution of a split in the district courts.

When tagging a headnote from a state supreme court as a Circuit Split Resolution, make sure that the state is a jurisdiction with appellate divisions. The following states have appellate divisions:

- Arizona (2 divisions)
- California (6 districts)
- Florida (5 districts)
- Illinois (5 districts)
- Indiana (5 districts)
- Louisiana (5 circuits)
- Missouri (3 districts)
- New York (4 appellate divisions)
- Ohio (12 districts)

104

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

- Tennessee (3 grand divisions)
- Texas (14 divisions)
- Washington (3 divisions)
- Wisconsin (4 disttricts)

## First Impression

Tag headnotes from cases resolving an issue of first impression. A matter is one of first impression if has not been previously addressed by the court or the higher courts in its system. The fact that lower or co-equal courts within the system or other courts in other systems have addressed the issue does not vitiate first impression status. A matter is not an issue of first impression just because it is the first time heard by a judge, as opposed to the court or higher courts in its system.

Tag headnotes as First Impression even where this language is not present in the opinion, when the court employs its equivalent, e.g.,

- "There is no reported case in the jurisdiction."
- In a federal Court of Appeals case, "we join our sister circuits"
- Hedged language, e.g., "our research has not revealed any caselaw on the subject," or "this case raises a novel issue," unless it is apparent the word "novel" is being used to indicate the issue is unique or unusual, rather than unaddressed.

More than one headnote could be assigned as First Impression for the same issue, e.g., a concrete headnote and abstract headnote on the same issue. However, when the court identifies a case as a "case of first impression," and then addresses multiple issues without specifying which issues are the ones of first impression, do not attempt to guess which issues are the ones of first impression. In this situation, you would not tag any of the headnotes with First Impression.

Favor the First Impression property over the "New or Modified Legal Standard" Headnote Property. If you tag a headnote with the First Impression property, do not double it to the New or Modified Legal Standard property.

## New or Modified Legal Standard

Tag SCOTUS and state supreme court headnotes establishing a new or modified legal standard. Use the following criteria for identifying a new or modified legal standard:

- A split in the Circuits, but the court ultimately resolves the issue using a third test/theory/etc. that has not been used by either side of the split. *In this situation, New or Modified Legal Standard can be used in conjunction with Circuit Split Resolution.*
- The court resolves the issue by modifying/limiting/abrogating/overruling a previous holding it had made. This also includes "disapproving" or "receding from" when used as a case-killing reference. *Exclusive of other optional properties.*
- The court resolves the issue by extending a previous holding it had made into a different area of law, to a completely different factual scenario, etc. *Exclusive of other optional properties.*

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

TR-0002969

- The court resolves an issue by establishing a new legal standard on an issue that it is addressing for the first time, but the issue is not identified with language supporting the First Impression property. *Exclusive of other optional properties.*

  - Favor abstract headnotes over concrete headnotes
  - Look at the main holdings of the case

## Headnote Properties in JWB

he Headnote Properties appear below the statute field in the Headnote Widget. The required properties appear first and have radio button "or" selectors. The optional properties appear below the required properties, with check box selectors allowing for multiple selections.

Assigned headnote properties also appear on each headnote in the Features Widget, at the bottom of the headnote.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002970

# KeyCite for Cases

## Overview

Westlaw provides direct and indirect history (positive and negative) for a case. Direct history sets forth the chain of rulings in the case for which we have opinions and orders (e.g., affirmances, reversals, remands, determinations on remand, etc.) It is entered by KeyCite analysts, and verified by the caseheader. Caseheaders must report any instance of incorrect direct history to Cases-Keycite Errors. For information on verifying direct history, see Synopsis – Verification of Direct History.

Indirect history (referred to as "Negative Citing References" on Westlaw) deals with the treatment of a case, or a point therein, by the same or another court in a different case. Positive indirect history consists of those cases cited by a court that are not treated negatively. KeyCite programmatically assigns stars to these cases to indicate depth of treatment. There is no editorial intervention. Negative indirect history consists of cases that have treated the subject case negatively. Caseheaders have the primary responsibility for creating negative treatments.

Citation services are extremely competitive, so it is important to pick up all negative treatments. Other services cannot match the depth of our analysis, which gives us a distinct advantage over the competition. Also, our terms are more precise.

## General Considerations

### Deciding whether negative treatment is warranted

KeyCite lists cases cited in an opinion as "positive citing references" or "negative citing references." There is no category "neutral citing references." Thus, any case that you do not treat negatively will be listed positively. In close cases where you are not sure whether to treat a case offered in support of a losing position, this exerts considerable pull in favor of treatment.

Negative treatment only means that there is at least one proposition in the cited case that is treated negatively or recognized as having been treated negatively. That the cited case is treated positively in all other respects is no reason to forego negative treatment, though, in a close case, the citing court's overall favorable regard for a case would argue against treatment.

Be liberal without being indiscriminate. In a close case, treatment is supportable if you think a researcher interested in the cited case would want to know about it ("Calling into Doubt" can convey a possibility of negativity). If a party cites a case for a position which the court rejects with limited discussion, some treatment, likely "distinguishing" or "declining to extend," is called for. Of course, if the court rejects the offered precedent as actually supporting its ruling, no treatment is called for.

Material you tend to downgrade for headnoting purposes may have greater saliency for KeyCite purposes. Generally, footnotes contain a greater intensity of treatments than the body of the opinion. String cites and quoted matter may have interior "recognizing" events.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002971

### Choosing between multiple treatments

Where the treatment of a case could be characterized several ways, choose the treatment which is the strongest, without overstating the negativity.

Where a case contains multiple treatments of a single case, generally choose the strongest.

See Hierarchy of Terms.

The red and yellow flags on the KeyCite screen are generated programmatically, with KeyCite analysts having discretion to manually change the color if the flag generated seems inappropriate. A sense of what flag color might be generated by a particular treatment can influence which treatment you select. KeyCite will automatically generate a red flag for the case-killing treatments "Overruling," "Abrogating," "Receding from," or "Disapproving." Beyond that, the program generates flag colors according to jurisdictional rules based on treatment and court level. Treatments short of case-killing can generate red flags (e.g., the citing court declining to follow or disagreeing with a court at the same level). In such a case, the red flag would only indicate strong contrary authority.

### Research/Revisor Assistance

Westlaw searches should generally not be undertaken except to validate decisions regarding red-flag and potentially red-flag treatments.

Freely seek advice from a revisor when you are uncertain about potential red-flag events.

In a non-red-flag situation, the correct treatment will often be apparent from the face of the case.

When in non-red-flag situations the correct treatment is not apparent, in general the editor should do the necessary research, but the editor can take it to a revisor when appropriate, based on a weighing of the strength of the possible treatment and likelihood that the research will be especially time-consuming.

### KeyCite Review by Revisors in U.S. Supreme Court Cases

All United States Supreme Court cases are to be routed to a federal revisor for review of KeyCite references, after headnoting is completed.

## Decisions Receiving KeyCite Treatment

Any case that we have in house can receive KeyCite treatment. Citations to administrative decisions, such as NLRB rulings, tax memoranda and immigration decisions, can also be treated.

Sometimes the court provides only a Lexis or other non-West citation, or only a docket number, suggesting the opinion is not published. This is no reason to decline to make the treatment. Send an e-mail to the Cases-Keycite Errors group, and a KeyCite analyst (KCA) will search for the case. If we have it, the treatment will be entered.

We do not treat non-U.S. law.

A "mem" opinion can produce KeyCite treatments. Before sending it on, review the case, and e-mail any treatments, with the serial number of the case to Cases-Keycite Errors.

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**TR-0002972**

## Indirect vs. Direct History

If a decision is in a direct relationship with another decision, it generally cannot also be in an indirect relationship.  However, we do have the ability to create an indirect history relationship for a cited case in the direct history chain in limited circumstances, especially when a court is saying something critical about a cited case that would not adequately be captured in the direct history. In the rare circumstance where you think indirect history (other than "distinguishing") would be warranted for a cited case that is part of the direct history chain, see a revisor.

No reference is made if a court notes that another decision has been reversed or vacated. For example, sometimes in a parenthetical after a cite, a court will mention that the cited decision has been modified or limited and then cites the case that does so. If the modifying or limiting case is the same as the modified or limited case, that is direct history. If the modifying or limiting case is a different case, that is indirect history and a reference should be made. Some quick research may be needed to verify this.

Though a writ proceeding challenging a criminal conviction, most commonly one in habeas, is a different, indeed civil, case, KeyCite links the direct history of the two proceedings, because the denial or grant of the writ can have the effect of an affirmance or a reversal.  Accordingly, the writ proceeding cannot negatively treat other cases within the chain.

For information on the inclusion of direct history citations in the synopsis, see Synopsis – Citations to Direct History

For information on an editor's responsibility to verify direct history, see Synopsis – Verification of Direct History

### Creating KeyCite Indirect History References

►To create an indirect history reference for a cited case that appears linked (i.e., blue and underlined) in the Content Viewer in JWB:

1. Right-click in the name of the cited case in the Content Viewer.
2. Select Indirect History from the right-click menu.
3. Select the appropriate phrase from the dialog box and click on the Save & Close button.

The KeyCite treatment will appear in highlighted red letters to show that the reference has been made.

►To create an indirect history reference for a cited case that JWB has not recognized (indicated by ordinary black text or shaded grey text in the Content Viewer), e-mail the Cases-KeyCite Errors group. Give them the serial number for the case you are headnoting and the citation for the cited case, and ask them to make the history reference.

►To delete or edit an existing indirect history reference that appears in red:

1. Right-click on a cited case in the Content Viewer with an existing KeyCite reference.
2. Select Indirect History from the right-click menu.
3. Click on the Delete button to remove the reference, or select a new history phrase and then click on the Update & Close button.

►To delete or edit an existing indirect history reference that appears in yellow (these are indirect history references created by KeyCite analysts or by attorney editors before Summarization), right-click on the instance of the cited case where the yellow history phrase appears in the

109

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

opinion, select Indirect History from the right-click menu, and then either delete or update the history phrase. This change will be processed when the case is submitted in JWB. If the existing indirect history is either "overruling," "abrogating," "receding from," or "disapproving of," please make the change and e-mail Matthew Buell to inform him of your action.

▶After a case has been submitted in JWB, new indirect history relationships can be added, and existing indirect history relationships can be deleted or modified. Just open the case in JWB, make the necessary history changes in the Content Viewer, and then re-submit the case.

## KeyCite Terms for Negative Indirect History

### Terms at a Glance

ABROGATING—Notwithstanding that the court did not use a form of the word "overrule," it is apparent, upon analysis, that the result of the court's ruling is that the rule of the cited case is no longer good law.

CALLED INTO DOUBT BY CONSTITUTIONAL AMENDMENT, STATUTE, RULE OR REGULATION—Enactment of a constitutional amendment, statute, rule, or regulation may affect the continuing validity of some proposition in the cited case.

CALLING INTO DOUBT—The continuing viability of the cited authority is questionable, or sufficient negativity or possibility of negativity is directed to the cited case that we would want to alert a researcher to it, but no other reference fits.

DECLINING TO EXTEND—The court declines to extend a rule, holding, rationale or comment of the cited case.

DECLINING TO FOLLOW—The court does not follow the rule or holding of the cited case, but without providing reasons that would support a more particular treatment.

DISAGREEING WITH—The court does not follow the rule, result or reasoning of the cited case, and is critical of the cited case. That the court, faced with a choice of approaches, picks one, may be taken as implicit criticism of the losing approach.

DISAPPROVING—The court specifically states it disapproves of the cited case, or disapproves of the case to the extent of any inconsistency. The court must use the word "disapprove."

DISTINGUISHING—The court reaches a different result than the cited case on a matter, because there is something different about the two cases.

FOLLOWING WITH RESERVATIONS—The court is critical of the holding, reasoning or rule of the cited case, but applies it, or reaches the same result, because of stare decisis or because the cited case is binding authority.

LIMITING—The court restricts the rule of the cited case, usually to its facts. This treatment should be used almost exclusively when the court uses the word "limit," or an equivalent like "restrict."

MODIFYING—The court modifies the rule, usually a test, of the cited case, while continuing to apply the test.

NOT FOLLOWING AS DICTA—The court does not follow a proposition of the cited case, for the single reason that it was not necessary to the disposition.

110

Sensitivity: Confidential

NOT FOLLOWING ON STATE LAW GROUNDS—A state court (or federal court in its shoes) does not follow the rule in the cited federal case because the federal court based its ruling on federal law, while the state court (or federal court in its shoes) is basing its ruling on state law.

OVERRULING—The court specifically states it overrules the cited case, or overrules the case to the extent of any inconsistency. The court must use the word "overrule."

RECEDING FROM—The court specifically states that it is receding or retreating from the rule of the cited case. The court must use a form of either "recede" or "retreat."

RECOGNIZING ABROGATION OF—It is apparent, usually upon analysis, that the rule of the cited case is no longer good law due to an intervening judicial decision, but the citing court does not supply us with the term overruled.

RECOGNIZING DISAGREEMENT WITH—The court notes that the cited case has been criticized on result, rationale, or any other aspect, by other courts, including concurring or dissenting opinions of those courts, or by other authorities such as law reviews or commentaries.

RECOGNIZING DISAPPROVAL OF—The court notes, often by parenthetical to a cited case, that the decision has been disapproved. The court must use some form of the word "disapprove."

RECOGNIZING IMPLIED OVERRULING OF—The court notes that the rule of the cited case has been impliedly or effectively overruled by an intervening case. This treatment should be used only when the court uses some form of the word "overrule" and the overruling is characterized as implied.

RECOGNIZING LIMITATION OF—The court notes that the rule of the cited case has been limited by intervening caselaw.

RECOGNIZING MODIFICATION OF—The court notes that the rule of the cited case has been modified by intervening caselaw.

RECOGNIZING OVERRULING OF—The court notes, often by parenthetical to a cited case, that the decision has been overruled. The court must use some form of the word "overrule."

REJECTING—The court specifically states that it "rejects" the cited case.

SUPERSEDED BY CONSTITUTIONAL AMENDMENT, STATUTE, RULE OR REGULATION—It is apparent, usually upon analysis, that a constitutional amendment, statute, rule or regulation has invalidated a proposition in the cited case (which was decided before the enactment).

### Abrogating

▶Go to Terms at a Glance.

**Note:** when this treatment is properly used, it must also appear in the relevant headnote and synopsis holding, except for the limited exception set forth in Special Cases below.

### Definition of Term

The result of the citing court's ruling is that the rule of the cited case is no longer good law, but the court does not expressly use the term "overruling." Courts almost never say they are "abrogating" a case. This treatment is generated by alert editorial analysis.

### Elements

1. The citing court is one capable of overruling the cited court,

111

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

2. A majority of the court agree with the treatment, and

3. The result of the citing court's ruling is that the rule of the cited case is no longer good law.

Words like "disavow," "repudiate," "wrongly decided," "we have previously done X, we shall hereafter do Y" or "case A should no longer be followed" can indicate the cited case is no longer good law.  Make sure the citing case is not doing something less, like distinguishing, modifying or limiting the cited case; essentially, you must be able to say the same result could not now be reached.

### Jurisdictional Considerations

The citing court must be capable of overruling the cited court. So the term cannot be applied when the cited court is higher than, or outside the judicial system of, the citing court.  Also, a mere panel of an appellate court is generally incapable of overruling a prior panel opinion of the same court.  Generally, only the en banc court can overrule a panel opinion. Freely seek the advice of a revisor if you have any doubts about the ability of the citing court to abrogate the cited court.

### Special Cases

If a higher court is presented with a choice of two or more lines of lower court authority, and chooses one, the others are effectively abrogated, even if the high court does no more than set up the dichotomy at the beginning of its discussion, and never again revisits or uses negative language toward cases on the losing side.  These cases are now "bad law."

In the rare case where a high court resolves such a conflict without revealing the holdings of the cited cases or what side of the divide they are on, you should turn the issue over to a revisor, who will do the research necessary to determine proper treatments.

Some Courts of Appeal allow a mere panel to overrule or abrogate a prior panel if the panel opinion has been circulated among all members of the court without objection. Do not assume this has happened unless it is expressly noted in the opinion (usually in an early footnote).

Although a federal district judge cannot abrogate a decision of another judge of the same court, if a judge rules contrary to his own prior ruling, that prior ruling should be treated as abrogated, because, at least before that judge, the cited case is no longer good law.  Contrary to standard practice, such a treatment should not be added to a holding or headnote, as the prior decision was not binding authority in the first place.

If a federal court, in an earlier case, predicted state law, and the state thereafter said that prediction was wrong, the federal court, on revisiting the issue, may abrogate its prior ruling, if the jurisdictional requirements are satisfied.  This is a desirable result, as the state ruling would not have generated a red flag on the earlier case.

### Traps for the Unwary

Because federal district court opinions are not binding authorities except on the parties, a federal district judge cannot abrogate the decision of another district judge of the same court.

Generally, an appellate panel cannot abrogate a ruling of the same panel.

### Called into Doubt by Constitutional Amendment, Statute, Rule or Regulation

▶ Go to Terms at a Glance.

112

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002976

### Definition of Term

The citing case believes that enactment of a constitutional amendment, statute, rule, or regulation may affect the continuing validity of some proposition in the cited case. This treatment also applies when the citing court recognizes that another case recognized such an event.

### Elements

1. A constitutional amendment (possibly a proposition), statute (promulgated by a legislature or by referendum), rule (promulgated by a court) or regulation (promulgated by an agency),

2. A cited case, decided before the enactment, and

3. The enactment may possibly invalidate some proposition in the cited case.

### Jurisdictional Considerations

None. The negativity does not originate from the citing court, rather, the court is only recognizing the potential negativity of an enactment.

### Special Cases

The Sentencing Guidelines are considered regulations for purposes of this treatment, because they are promulgated by an agency, the U.S. Sentencing Commission.

## Calling into Doubt

▶ Go to Terms at a Glance.

### Definition of Term

This treatment has come to serve multiple functions, ranging in strength from the "doubtful," to a much weaker "catchall" for uncategorizable negativity, or the mere possibility of some form of negativity. (For limitations to the catchall function, see Jurisdictional Considerations below.)

### Elements

1. The citing court literally says the cited authority is questionable, or

2. The citing case expresses negativity toward the cited case, but there is no good fit among the other treatments, or jurisdictional considerations make them unavailable, or

3. The citing case expresses veiled negativity toward the cited case, leaving uncertainty as to:  a) whether there actually is negativity, b) the strength of any negativity, and/or c) the form that negativity should take.  Exercising editorial judgment, the editor should treat the case if he believes a researcher should be alerted to the negativity, and allowed to sort out that negativity for himself.

### Jurisdictional Considerations

Theoretically, any court, no matter how low, can call any other court into doubt.  However, as a practical matter, given the original concept of "calling into doubt" as a strong treatment, it should not be resorted to as a "catchall" to express a lower court's negativity toward its high court. "Declining to extend" is likely available.

113

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

TR-0002977

### Special Cases

If an intermediate appellate court declines to follow its high court in the belief that the high court would overrule itself, or rule differently because of intervening events, use "calling into doubt."

This treatment may be used if the citing case notes that the cited case assumed something without deciding it, that the assumption figured into the decision, but that the assumption is questionable. The decision rests on a suspect basis, and should be flagged.

We have no treatment "clarifying." Usually, the clarification is intended only for the benefit of an incredulous party, and does not give rise to treatment. But if the clarification tends to call the cited case into doubt, that treatment may be called for.

This treatment can be used when a lower court declines to follow a higher court because the higher court's opinion was unpublished and without precedential value, but additionally criticizes that decision or reaches a contrary result. (If a lower court declines to follow a higher court solely because the higher court's opinion is unpublished, use "declining to extend").

### Traps for the Unwary

If the citing court is negatively disposed toward the cited case, but follows it anyway, the more appropriate treatment is "following with reservations."

## Declining to Extend

> ►Go to Terms at a Glance.

### Definition of Term

The citing case declines to extend a rule, holding, rationale, or comment of the cited case.

### Elements

1. The citing case declines to extend a rule, holding, rationale, or even comment of the cited case (e.g., the issue was different, the law should not be so expanded). Where the court does not favor us with the words "distinguishing" or "declining to extend," and you are undecided between those treatments, "declining to extend" should be generally thought to concern matters of law, while "distinguishing" should be thought to concern matters of fact. Further effort choosing between the two is not time well spent.

2. Unlike most other treatments, this treatment has no requirement that the citing case reach a result contrary to that of the cited case. So it can be used when the citing case reaches a result consistent with the cited case, but declines to use its doctrine, theory or reasoning (also consider "following with reservations"). A citing court can decline to extend an abstract principle or a comment in the cited case.

### Jurisdictional Considerations

None. Any court can decline to extend a ruling of any other court, no matter what level or jurisdiction.

### Special Cases

"Declining to extend" can serve as the "treatment of last resort" when the citing court does not reveal enough about the holding of the cited case, yet you believe treatment is called for. It is not unusual for a case to be offered by a party or even the court as representing a position that the

114

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**TR-0002978**

court rejects, but in such a perfunctory manner that you cannot even infer the outcome of the case to say it has been distinguished. Nevertheless, depending on the court's language, some treatment may be called for, on the theory that the court is declining the offer to extend the cited case.

Language such as, "The cited case does not stand for the proposition the party claims," has the sense of a "declining to extend." On the other hand, "The cited case actually supports the opposite (ultimately winning) position" is obviously positive treatment. Closer to the borderline, the language, "The party misreads the cited case" may warrant treatment, depending on the culpability of counsel's misreading. At the margins, consider: (1) is any negativity more about the case (which may warrant KeyCite treatment) or counsel's misguided attempt to argue it? and (2) if I do not treat this case, is it an acceptable result that KeyCite will, by default, treat the cited case positively?

 "Declining to extend" on its face seems to convey a notion of stemming growth, but, conceptually, it can also be thought to embrace the idea of the citing court not accepting a limiting principle in the cited case.

"Declining to extend" should be used when a court declines to give a decision retroactive effect.

"Declining to extend" can be used when a lower court declines to follow a higher court solely because the higher court's opinion was a plurality, or was unpublished and thus without precedential value. "Disagreeing with" or "declining to follow" might be thought to raise jurisdictional concerns. If the lower court additionally criticizes the higher court's opinion or reaches a contrary result, use "calling into doubt."

### Traps for the Unwary

Where the court says the case offered by the losing party actually supports the winning party, no treatment is called for. This is positive history.

When a court applies a particular doctrine or exception, such as the *Miranda* doctrine, the *Rooker-Feldman* doctrine, or the *Ex Parte Young* exception, but states that the doctrine "does not apply" because elements of the doctrine have not been met, you should not make a "declining to extend" reference. The court's treatment of the case is positive, not negative, if the court is applying the cited doctrine. A "declining to extend" reference may be appropriate if the court says the doctrine or exception is not the appropriate test in the particular situation.

## Declining to Follow

▶ Go to Terms at a Glance.

### Definition of Term

The citing case simply does not follow the rule of the cited case. This treatment may be used even when the citing case does not expressly criticize the cited case. Negative treatment is implied by the fact that the court reached a contrary result. If there is additional criticism of the cited case, "disagreeing with" would be appropriate.

### Elements/Jurisdictional Considerations

1.  The citing case reaches a result contrary to that of the cited case, and

2.  The cited case must be one the citing court is not bound to follow.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002979

### Special Cases

A court may cite a case or cases in support of its position, but then tag on other cases preceded by the words "contra," "but see," "but cf.," "compare," or "cf.," without so much as a parenthetical indication of their results. "Contra" clearly conveys the idea of a contrary result, and should generate further research, without further research. However, the other phrases, even "but see," may not indicate negativity, but possibly only cases involving similar issues or different ways of getting to the same place. A quick WL search of the first, and possibly the second, case in the string, and a quick view of the synopsis holding of the case, should be enough to tell you what the court intends by citing these cases, and whether that is a treatable event.

Use "declining to follow" when a court does not follow its own prior decision because that decision is unpublished, but use "disagreeing with" if the court also criticizes the prior decision. If a lower court does not follow the decision of a higher court because it is unpublished and thus without precedential value, use "declining to extend." If the lower court additionally criticizes the higher court's opinion or reaches a contrary result, use "calling into doubt."

### Traps for the Unwary

When a court declines to follow its higher court because it believes that court would rule differently now, we do not use "decline to follow," because it ostensibly conflicts with the rule that a court cannot decline to follow a higher court. Typically, "calling into doubt" is used.

Do not use "declining to follow" if the reason the citing case declines to follow the cited case is that it is distinguishable. The latter treatment conveys more information.

Do not use "declining to follow" when a court declines to apply the cited cases only because a party failed to preserve an argument for appeal.

If the citing case declines to follow the cited case for the sole reason that it was later reversed, vacated or a rehearing was ordered, no treatment is called for, as the treating event turns entirely on direct history. If the citing case offers additional criticism, treatment would be called for; consider "disagreeing with."

A court may note a split of authority, but next to a cited case note parenthetically "citing cases" or "collecting cases." A case that only cites or collects authority has not stated any position that can be disagreed with.

A court may note a proposition and that it has been discredited, followed by cites. Before treating those cases, make sure they stand for the discredited proposition and were not the cases that discredited the proposition.

This treatment should not be used for a choice of law issue, where the court chooses to apply one state's law over another. Such a holding does not go to the persuasiveness of the state's laws, but rather, to the technical requirements of the choice of law doctrine.

This treatment should not be used when the court declines to give a case res judicata or collateral estoppel effect to a prior decision. Those doctrines bind parties, not courts. A holding on such matters does not diminish the authority of the cited cases, but rather, goes to the technical requirements of those doctrines.

This treatment should not be used where the citing case says that principles of "law of the case" preclude it from applying the cited case. This does not go to the persuasiveness of the cited case, rather, it involves technical matters.

116

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Disagreeing With

▶ Go to Terms at a Glance.

### Definition of Term

The citing case does not follow the rule, result or reasoning of the cited case, and, by use of some form of the word "disagree" or otherwise, conveys its opinion that the cited case was wrong in that regard.

### Elements/Jurisdictional Considerations

1. The citing case reaches a different result than the cited case, or does not follow its rule or reasoning.

2. Additionally, there is an indication that the citing case thinks the cited case is wrong or at least suboptimal, conveyed by literal use of the word "disagree," direct criticism, or adoption of a contrary position, and

3. The cited court must be one the citing court is not bound to follow.

### Special Cases

When a court notes a split of authority or approaches, takes a side, and criticizes the holding/reasoning of the rejected line of cases, use this treatment (of course, if the cited court is the same or an inferior court, this is likely an "abrogation"). If the court provides no criticism of the substance of the rejected line of cases, or refuses to follow the rejected case or cases for a nonsubstantive reason, such as the fact that the decision was issued in another jurisdiction and is not binding, then "declining to follow" would be the appropriate treatment.

In the rare case where the court notes a conflict among co-equal courts in the same jurisdiction, but cites the cases in conflict without identifying their holding or what side of the divide they are on, and then resolves the conflict, you should turn the issue over to a revisor, who will do the research necessary to determine proper treatments.

This treatment should be used when a state high court declines to follow a federal court's prediction of that state's law. Though the cited federal case is arguably "bad law," a state court cannot overrule or abrogate a decision from another court system.

This treatment can be used when a Federal Court of Appeals panel reaches a decision on state law contrary to a different panel's prediction of state law, because an intervening high court decision determined the law was not as that prior panel predicted. The limitations on one panel overruling another preclude use of "abrogating."

If a court notes a conflict among jurisdictions, and then takes a position without ever noting the positions of the cited cases, take the case to a revisor, who will do the research necessary to add the proper treatments.

### Traps for the Unwary

This treatment should not be used when a lower court rules contrary to its high court in the belief that changes in the legal landscape would now compel the high court to overrule itself. Use "calling into doubt."

A court may note a split of authority, but next to a cited case note parenthetically "citing cases" or "collecting cases." A case that only cites or collects authority has not stated any position that can be disagreed with.

117

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002981

This treatment should not be used for a choice of law issue, where the court chooses to apply one state's law over another. Such a holding does not go to the persuasiveness of the states' laws, but rather, to the technical requirements of the choice of law doctrine being applied.

This treatment should not be used when the court declines to give a case res judicata or collateral estoppel effect to a prior decision. Those doctrines bind parties, not courts. A holding on such matters does not diminish the authority of the cited cases, but rather, goes to the technical requirements of those doctrines.

This treatment should not be used where the citing case says that principles of "law of the case" preclude it from applying the cited case. This does not go to the persuasiveness of the cited case, but rather involves technical matters.

## Disapproving

▶ Go to Terms at a Glance.

**Note:** When this treatment is used, it must also appear in the relevant headnote and synopsis holding, except for the limited exception set forth in Traps for the Unwary below.

### Definition of Term

This is a potentially case-killing treatment, and should only be used when the court uses the term.

### Elements/Jurisdictional Considerations

This term is commonly used as a case-killing reference in several jurisdictions, including California and Florida. It is case-killing in any jurisdiction when used by a high court with respect to its own decisions or decisions of a lower court within its system. When used by an intermediate appellate court, it should be regarded as case-killing only if the court has precedential authority over the cited court. Ask a revisor for assistance if it is unclear if the court is using the term as a case-killing reference.

### Special Cases

None. This term can only be used when the court uses it.

### Traps for the Unwary

If the lead opinion purports to disapprove a case, but without majority support, you must use a weaker treatment, likely "calling into doubt."

The "disapproving" treatment does not need to be added to the headnote or synopsis if the citing court does not have binding precedential authority over the cited court.

## Distinguishing

▶ Go to Terms at a Glance.

### Definition of Term

The nature of a distinguishing event is that there is something different about the two cases that compels the citing court to reach a different result than the cited case did. The court does not have to use the actual term "distinguish" for this treatment to apply. See Traps for the Unwary, below.

118

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002982

## Elements

1. The citing case reaches a different result than the cited case. Generally, you need at least a strong sense from the court's characterization of the case and the context of the discussion that the case reached a contrary result. That the cited case is a familiar one (e.g., *Bivens*) which you happen to know the result of does not, by itself, satisfy the "different result" requirement, though that knowledge would provide sufficient corroboration of an inference that can be taken from the opinion.

2. The citing case reaches its different result because there is something different, usually factually, about the cases (by way of contrast, "declining to extend" should be thought to concern matters of law), and

3. The citing court engages the cited case with respect to the issue, that is, the proposed treatment should arise in the context of a discussion suggesting a "distinguishing" exercise (this is to avoid having to treat a case mentioned in another discussion that happens to have a different result)

## Jurisdictional Considerations

None.

## Special Cases

A court can give its whole-hearted endorsement to the general rule of the cited case, and yet reach a different concrete result which would warrant treatment. In a multi-part test situation, you can distinguish a case based on the result on a particular element, even though the cited case reached the same ultimate result.

## Traps for the Unwary

Courts actually use the term "distinguish" only about half the time they distinguish a case. Many other distinguishing events can be identified by standard phrases such as "unlike this case," "the cited case is inapposite" or "the cited case does not apply." Some other phrases that may indicate that a case is being distinguished include "the cited case does not control/bind/govern," "the cited case is not similar/relevant," "appellant's reliance on the cited case is misplaced," and "the cited case does not support/aid/inform/persuade/help."

The most common error arises when the citing case characterizes the rule of the cited case abstractly, in a way that makes it look like its result was the opposite of the citing case. In some of these cases, the cited court will have actually reached the same concrete result as the citing case. Often you get a strong sense from the context and the tenor of the discussion, that the cited case reached the opposite result, and you can distinguish it. If the nature of the discussion suggests the cited case reached a different result, but you have some lingering doubt, a quick WL search of the cited case and view of the synopsis holdings should indicate the result. However, if the text of your opinion gives no suggestion that the cited case reached a different result, do not spend time looking up cited cases to determine the result reached. "Distinguishing" references need to have some support in the opinion itself.

If the citing case notes that the cited case is distinguishable, but then goes on to apply it or reach a consistent position, there is no treatment. This is positive history. The rule of the cited case is being extended.

When the citing court recognizes that case X distinguished case Y, this event is too remote to warrant a treatment. (That is, we do not have any treatment for "recognizing distinguishing of.")

119

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

When the citing court notes that the result in its case is different than the cited case because a different version of a statute, regulation, rule or constitutional provision now exists, "superseded by statute, etc." or "called into doubt by statute, etc.," should be used instead of "distinguishing."

When a court applies a particular doctrine or exception, such as the *Miranda* doctrine, the *Rooker-Feldman* doctrine, or the *Ex Parte Young* exception, but states that the doctrine "does not apply" because elements of the doctrine have not been met, you should not make a "distinguishing" reference. The court's treatment of the case is positive, not negative, if the court is applying the cited doctrine. A "distinguishing" reference may be appropriate if the court says the doctrine or exception is not the appropriate test in the particular situation, or the court says the facts in the case setting forth the doctrine or exception were different than from the facts of the present case.

## Following with Reservations

▶Go to Terms at a Glance.

### Definition of Term

The citing case is critical of the holding, reasoning or rule of binding caselaw, but applies it, or reaches the same result, because it is binding. Generally, this treatment is used when a court reluctantly reaches its decision because of stare decisis, or when an intermediate appellate court follows its high court, but with reservations or outright criticism.

### Elements

1. The citing case adopts the rule of, or reaches the same result as, the cited case, but

2. The citing case criticizes the rule or reasoning of the cited case, or notes criticism without refuting it.

### Jurisdictional Considerations

Because this treatment entails the notion that the citing court is bound to follow the cited court, the cited court must be the same or a higher court in the system.

### Special Cases

This treatment may be used where a federal court reluctantly follows a state's law, because that law is binding.

If a court notes criticism of a cited case, but does not agree with the criticism, "recognizing disagreement with" may be appropriate instead.

## Limiting

▶Go to Terms at a Glance.

### Definition of Term

The court restricts the rule of the cited case, usually to its facts. Because this term is such a precise and well-defined judicial tool, it should be used principally when the court uses the term "limit," or an equivalent like "restrict."

120

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

### Elements

1. The citing case limits,
2. The cited case to its facts, or the reach of the holding of the cited case.

### Jurisdictional Considerations

The citing and cited court are necessarily in the same system, and the citing court must be equal to or higher than the cited court. In other words, a court cannot limit a case from a higher court or from a court outside its system. If the jurisdiction conditions are not present, declining to extend may be appropriate instead.

## Modifying

▶ Go to Terms at a Glance.

### Definition of Term

The court modifies the rule, usually a test, of the cited case, while continuing to apply the test.

### Elements

1. The citing court changes or adds elements to some test, while
2. Continuing to apply the test.

### Jurisdictional Considerations

A lower court cannot modify its higher court's test. But any court can accept a test from another court system with modifications.

### Special Cases

This treatment can be used when a court adopts a test from another jurisdiction, but modifies it.

We have no treatment "clarifying." Usually, the clarification is intended only for the benefit of an incredulous party, and does not give rise to treatment. In the rare instance where the clarification essentially modifies the court's prior ruling, "modified by" would be an appropriate treatment.

## Not Following as Dicta

▶ Go to Terms at a Glance.

### Definition of Term

The citing case does not follow the proposition of the cited case because it was not necessary to the disposition in the cited case.

### Elements

1. The proposition of the cited case is one that was not necessary to that court's disposition, or the citing court literally describes the proposition as "dicta,"
2. The citing case does not follow the proposition from cited case, and

121

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002985

3. The citing case does not follow that proposition because the proposition was not necessary to the disposition, rather than for some other reason, like the citing court disagrees with the dicta (which would warrant "disagreeing with" if jurisdictional considerations for that treatment are satisfied).

### Jurisdictional Considerations

Any court is jurisdictionally capable of "not following as dicta" the ruling of any other court. However, in determining whether additional criticism warrants stronger treatment, jurisdiction should be considered.

### Traps for the Unwary

This is a very weak treatment. Often the citing case will have additional criticism of the cited case, warranting stronger treatment.

## Not Following on State Law Grounds

▶ Go to Terms at a Glance.

### Definition of Term

The citing court (a state court or federal court in its shoes) does not follow the rule in the cited federal case because the federal court based its ruling on federal law, while the state court (or federal court in its shoes) is basing its ruling on state law. The federal result need not be contrary for this treatment to apply.

### Elements/Jurisdictional Considerations

1. The citing court must be a state court or a federal court standing in its shoes,

2. The cited case must be federal,

3. The cited case applied federal law,

4. The citing case does not follow the cited case,

5. Because the federal case applied federal law, and the citing case will apply state law.

### Special Cases

None. This is a very precise treatment, and has no wiggle room.

### Traps for the Unwary

This treatment is not to be used when a *federal court* does not follow the rule in a *state case* because the state case was based on state law while the federal court is basing it ruling on federal law. Use "declining to follow."

This treatment should not be used when a state or federal court picks one state's law over another's. "Disagreeing with" or "declining to follow" is more likely appropriate.

## Overruling

▶ Go to Terms at a Glance.

122

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Note:** When this treatment is used, it must also appear in the relevant headnote and synopsis holding, though note an exception in Traps for the Unwary.

### Definition of Term

This term is to be used only when the court uses it. It may be used even if the court appends the apparently qualifying language, "to the extent of any inconsistency." If the effect of the court's decision is the same as an overruling but it does not use a form of the word "overrule," use "abrogating."

### Elements/Jurisdictional Considerations

Courts which state that they are overruling a case are generally aware of the requirements for using that term. But jurisdictional questions can arise in intermediate panel opinions. Given the importance of getting case-killing treatments right, see a revisor if you have any doubts in such a case.

### Special Cases

If a court overrules a decision which had overruled an earlier decision, inform Cases-KeyCiteErrors of this event. (See Undoing of Negative History)

### Traps for the Unwary

If a lead opinion purports to overrule a cited case without majority support, you must dial down the treatment, likely to "calling into doubt." (See KeyCite–Indirect History-Plurality Opinions)

## Receding From

▶ Go to Terms at a Glance.

**Note:** When this treatment is used, it must also appear in the relevant headnote and synopsis holding, if the treatment is being used as a case-killing reference.

### Definition of Term

This term is generally regarded as case-killing, particularly in Florida, and should be used only when the court uses a form of either "recede" or "retreat."

### Elements/Jurisdictional Considerations

This term can be used as a case-killing reference, particularly in Florida. It is considered a case-killing reference in any jurisdiction when used by a high court with respect to its own decisions or decisions of a lower court within its system. Jurisdictional questions can arise in intermediate panel opinions. Given the importance of getting case-killing treatments right, see a revisor if you have any doubts as to whether the court is using the term as a case-killing reference.

### Special Cases

None. This term is very precise.

### Traps for the Unwary

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0002987

When a court recognizes that case X receded from case Y, use "recognizing abrogation of" if the underlying "receding from" treatment was case-killing, such as in Florida. Otherwise, use "recognizing limitation of." There is no "recognizing receding from" treatment.

## Recognizing Abrogation of

▶ Go to Terms at a Glance.

### Definition of Term

It is apparent that the rule of the cited case is no longer good law due to an intervening decision, but the citing court does not supply us with the term overruled.

### Elements/Jurisdictional Considerations

1. The citing case reveals information allowing you to conclude that

2. The cited case is no longer good law,

3. By virtue of an intervening decision,

4. By a court that is jurisdictionally capable of abrogating the cited case (regardless of whether the cited case had actually been addressed by the intervening decision).

### Special Cases

Where a court says a line of authority was "reversed" by a later case (suggesting a direct history relationship), but it is clear the relationship is actually indirect, "recognizing abrogation of" is called for.

Where a court notes that a case or doctrine has been "superseded" by subsequent case law, "recognizing abrogation of" is called for.

When a court notes that case X has "receded from" Case Y, and the underlying "receding from" reference was case-killing, use "recognizing abrogation of." If the underlying "receding from" reference was not case-killing, use "recognizing limitation of."

### Traps for the Unwary

Where a court says a case was "abrogated' by a subsequent case which is actually in the same direct history chain, no treatment is called for.

When a citation to a case is followed by a reference to a subsequent reversal, vacation, or grant of rehearing, do not succumb to the temptation of characterizing this as a "recognizing abrogation of" treatment, or call the cited case into doubt, in the belief that the event will otherwise elude KeyCite. This is not indirect history, and it will not have eluded negativity. It is direct history that should have been picked up by KeyCite analysts.

Do not use this treatment when a court recognizes that a cited case is no longer valid due to a change in statute, rule, regulation or constitutional provision, or the court recognizes that another court has made such a ruling. Instead, use "superseded by statute, etc."

## Recognizing Disagreement With

▶ Go to Terms at a Glance.

124

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0002988

### Definition of Term

The court notes that a case or other authorities (see below) expressed disagreement with or criticized the cited case, on result, rationale, or any other aspect of the opinion.

### Elements

1. The citing case notes that

2. The cited case has been disagreed with or criticized by,

3. A subsequent decision or other authorities (which include concurring or dissenting opinions, commentaries and law reviews).

### Jurisdictional Considerations

Though jurisdictional concerns preclude our use of "disagreeing with" when a lower court criticizes or rules to the contrary of its higher court, the added attenuation of a "recognizing" treatment alleviates those concerns for "recognizing disagreement with." A lower court can be recognized to disagree with its higher court, because any such disagreement can be assumed to have been within the bounds of which lower courts can criticize, or rule to the contrary of, their higher courts.

### Special Cases

This treatment can be used to recognize an intervening court's criticism of a case that the citing case follows, if the criticism is on a different matter (of course, if the recognized disagreement is on the same matter on which the citing court follows the cited case, the citing case is, minimally, declining to follow the intervening case).

This treatment should be used when the citing court notes that a federal court's prediction or interpretation of state law has been contradicted by an opinion of a court in that state (though the prediction is now arguably bad law, a state court cannot abrogate a federal decision).

The reference to "other authorities" means that this treatment may be used where the cited case has been criticized by concurring or dissenting opinions of other courts, or even by other authorities such as law reviews or commentaries, regardless of whether the citing court agrees with the cited case on the matter (even if the citing court essentially disagrees with the "other authorities" on the matter, there is no case to treat).

There is not a correlative "recognizing X" treatment for every treatment "X." So this treatment may be used to capture an intervening court rejecting, declining to follow, following with reservations, or even calling into doubt the cited case.

### Traps for the Unwary

If a citing court notes a conflict of authorities, but does not decide between them, resist the temptation to treat each line, on the theory that each disagrees with the other, as we have no assurance that a researcher could research either line of authority and find criticism of the opposing cases. Researchers have made that specific complaint of such treatments.

For the same reason, where a court resolves a conflict of authorities (prompting your negative treatment of the losing side), do not recognize the losing side's disagreement with the winning side. The winning side is positive history. However, when the citing court expressly notes that one of the cases on the losing side disagreed with an identified case on the winning side, or was otherwise critical of the case, "recognizing disagreement with" should be used for that case on the winning side.

125

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

There are no treatments for "recognizing distinguishing of," or "recognizing declining to extend." No attempt should be made to capture those through "recognizing disagreement with," as they have simply been deemed too attenuated to warrant a treatment. (Consider, however, whether your case might be distinguishing or declining to extend the case.) Similarly, hypothetical treatments "recognizing not following on state law grounds" and "recognizing not following as dicta" are too weak to elevate to treatment as "recognizing disagreement with."

"Recognizing disagreement with" should not be used when the citing case notes that a concurrence or dissent in the cited case disagreed with the lead opinion. That is neither indirect, nor history.

## Recognizing Disapproval of

▶ Go to Terms at a Glance.

### Definition of Term

This term should be used only when some form of the word "disapprove" is associated with the cited case.

### Elements

1. The citing case notes that
2. The cited case has been disapproved of
3. By an intervening decision.

### Traps for the Unwary

Many such treatments are appended by parenthetical to cites to authority, often in string cites, which can escape notice.

## Recognizing Implied Overruling of

▶ Go to Terms at a Glance.

### Definition of Term

The court notes that the rule of the cited case has been impliedly or effectively overruled by an intervening case. This term should be used only when the court uses some form of the word "overrule" and the overruling is characterized as implied.

### Elements

1. Citing case notes that
2. The cited case has been impliedly or effectively overruled,
3. By an intervening decision

### Traps for the Unwary

Because this treatment should only be used when some form of the word "overrule" is present, "recognizing abrogation of" should be used when case-killing implications are drawn without use of that word.

126

Sensitivity: Confidential

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0002990

## Recognizing Limitation of

▶ Go to Terms at a Glance.

### Definition of Term

The court notes that the rule of the cited case has been limited by an intervening case.

### Elements

1. The citing case notes that

2. The cited case has been limited

3. By an intervening decision.

### Jurisdictional Considerations:

The intervening court that "limited" the cited case must be one that is jurisdictionally capable of doing so (see Jurisdictional Considerations for "Limiting").

### Special Cases

This treatment may be used when a court recognizes that another court has declined to give the cited case retroactive effect. The jurisdictional consideration noted above would not apply in this situation.

This treatment may be used when a court recognizes that case X has "receded from" case Y, if the underlying "receding from" reference was not case-killing. If the underlying "receding from" reference was case-killing, use "recognizing abrogation of."

### Traps for the Unwary

This treatment is not to be used when the citing court notes that the cited case limited its own holding to the facts.  That is neither negative nor a treatment.

## Recognizing Modification of

▶ Go to Terms at a Glance.

### Definition of Term

The court notes that the rule of the cited case has been modified by an intervening case.

### Elements

1. The citing case notes that,

2. The cited case has been modified,

3. By an intervening decision.

### Jurisdictional Considerations

The intervening court that "modified" the cited case cannot be one that is jurisdictionally incapable of doing so (see Jurisdictional Considerations for "Modifying").

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002991

### Traps for the Unwary

When a cite to a case is followed by "modified by (case X)" that is generally direct history, and not a proper subject for indirect treatment. However, in the rare situation where case X has a different name than the cited case, it may be a different case, in an indirect relationship. But there is still a possibility that the cases are the same, that just the name has been changed to reflect subsequent changes in parties. A quick WL session may be necessary to sort that out, before you treat the case.

## Recognizing Overruling of

▶ Go to Terms at a Glance.

### Definition of Term

The citing case notes that the rule of the cited case has been expressly overruled by an intervening case. The citing case should use some form of the word "overrule." It is of no consequence that the overruling is said to be partial. Most overrulings are.

### Elements

1. The citing case notes that,

2. The cited case has been overruled,

3. By an intervening decision.

### Traps for the Unwary

Most such treatments are appended by parentheticals to cites, often in string cites, which can escape notice.

A court may say a statute, rule, regulation, or constitutional provision has "overruled" a decision. This should be treated as "superseded by statute, etc." Technically, only courts "overrule."

A court may refer to a reversal of a case on appeal as an "overruling." That is a mischaracterization of direct history. See Indirect vs. Direct History.

If a court notes that case X overruled case Y, and then says it is overruling case X, do not apply a "recognizing overruling of" treatment to the now-restored case Y. That would be confusing to a researcher. But do notify Cases-KeyCiteErrors about the restoring of case Y, so that the necessary history change can be made for that case. (See Undoing of Negative History).

Sometimes a court will note that a case has been overruled on a point, and then separately treat (usually distinguish) another aspect of the cited case. Generally, the latter, ostensibly weaker, treatment should trump the former, since a "recognizing overruling of" treatment would likely only repeat negativity already in KeyCite. However, if there is anything in the court's discussion that would lead you to think the "overruling" treatment might not have been made in the prior case, or the court's "recognizing overruling of" treatment was controvertible or entailed some discussion, that would be the more valuable treatment.

That the citing court follows the overruled case on another point does not preclude treatment.

## Rejecting

▶ Go to Terms at a Glance.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0002992