# EXHIBIT 28

THOMSON REUTERS

# Summarization Manual

## Judicial Editorial



Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040273

# Contents

JUDICIAL EDITORIAL – SUMMARY OVERVIEW .................................................................8

    TOP 11 RULES FOR HEADNOTING .........................................................................................8
    HEADNOTE EXAMPLE ............................................................................................................9

WESTLAW TIPS FOR CASEHEADING .....................................................................................10

ABSTRACT HEADNOTES—GENERALLY ...............................................................................15

ABSTRACT HEADNOTES—EXAMPLES ..................................................................................16

    EXAMPLE 1 ...........................................................................................................................16
    EXAMPLE 2 ...........................................................................................................................17
    EXAMPLE 3 ...........................................................................................................................18
    EXAMPLE 4 ...........................................................................................................................19
    EXAMPLE 5 ...........................................................................................................................20
    EXAMPLE 6 ...........................................................................................................................21

CONCRETE HEADNOTES—TEMPLATES ...............................................................................23

CONCRETE HEADNOTES—HYPOTHETICAL .......................................................................25

BASIC CONCRETE HEADNOTES—AT A GLANCE ...............................................................27

    *Component* ............................................................................................................................27
    COMMONLY USED CLASSIFICATION TOPICS ......................................................................28
    *Criminal Procedure* ............................................................................................................28
    *Crimes* ................................................................................................................................28
    *Civil Procedure* ..................................................................................................................28
    *Commercial Law* ................................................................................................................28
    *Government* .........................................................................................................................29
    *Employment Law* ...............................................................................................................29
    *Estate Planning* ..................................................................................................................29
    *Family Law* ........................................................................................................................29
    *Real Property* .....................................................................................................................29
    *Torts* ...................................................................................................................................29

CONCRETE HEADNOTES—EXAMPLES ..................................................................................30

    EXAMPLE 1 ...........................................................................................................................30
    EXAMPLE 2 ...........................................................................................................................33

NONSTANDARD COURT NAMES .............................................................................................37

SYNOPSIS—GENERAL ELEMENTS ........................................................................................38

    A. BACKGROUND SECTION (1-5) ........................................................................................38
    B. HOLDINGS SECTION (6-7) ..............................................................................................39
    C. POST-TEXT (8-9) .............................................................................................................39

SYNOPSIS—TEMPLATES .........................................................................................................40

    CRIMINAL ............................................................................................................................40
    CIVIL ...................................................................................................................................41
    VARIATIONS .........................................................................................................................42

SYNOPSIS—EXAMPLES ............................................................................................................43

IN THIS ISSUE (ITI) SLIPS .........................................................................................................52

    ISSUE SLIPS ..........................................................................................................................52

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040274

MAIN HEADINGS ............................................................................................................. 52

**PROCEDURAL POSTURES** ....................................................................................... **56**

I. OVERVIEW ............................................................................................................... 56
II. CIVIL PROCEDURAL POSTURES ......................................................................... 56
III. CRIMINAL PROCEDURAL POSTURES ............................................................... 58
IV. FAMILY LAW PROCEDURAL POSTURES ........................................................... 60
V. HUB PAGES ............................................................................................................. 61

**KEYCITE FOR STATUTES—IN GENERAL** .......................................................... **62**

**KEYCITE FOR STATUTES—GUIDELINES** ........................................................... **63**

MULTIPLE TREATMENTS: ........................................................................................... 63
CITATION STYLE: ........................................................................................................ 63
PRIOR VERSIONS: ....................................................................................................... 63
RECOGNIZING REFERENCES: .................................................................................... 63
CORRECTIONS/SUPERSEDING OPINIONS: ............................................................. 63
UNDOING NEGATIVE HISTORY: ............................................................................... 63
MAGISTRATES' RECOMMENDATIONS: .................................................................... 64

**KEYCITE FOR STATUTES—UNCONSTITUTIONAL AS APPLIED** .................. **64**

**KEYCITE FOR STATUTES—JWB FUNCTIONALITY** ........................................ **65**

**KEYCITE FOR STATUTES—TROUBLESHOOTING** .......................................... **66**

**KEYCITE FOR STATUTES—TREATMENT CODES** ........................................... **66**

   ***RED FLAG TREATMENTS*** ................................................................................ ***66***
   ***YELLOW FLAG TREATMENTS*** ........................................................................ ***68***

**CRIMINAL LAW** ......................................................................................................... **70**

WRONGFULLY OBTAINED EVIDENCE ...................................................................... 70
ERROR/ABUSE OF DISCRETION ............................................................................... 70
SEVERANCE ................................................................................................................. 70
SPEEDY TRIAL ............................................................................................................ 70
ADMISSIBILITY OF EVIDENCE ................................................................................. 70
PRESERVATION AND OTHER APPEAL POINTS ....................................................... 71
CHARACTERIZATION OF OFFENSE CHARGED ....................................................... 71
SENTENCING ............................................................................................................... 71
POSTCONVICTION RELIEF/HABEAS CORPUS ......................................................... 72
INSTRUCTIONS ........................................................................................................... 72
INEFFECTIVE ASSISTANCE OF COUNSEL ............................................................... 73

**TYPES OF HEADNOTES—SUFFICIENCY OF EVIDENCE** .............................. **75**

**TYPES OF HEADNOTES—SUFFICIENCY OF EVIDENCE EXAMPLES** .......... **78**

EXAMPLE 1 .................................................................................................................. 78
EXAMPLE 2 .................................................................................................................. 80
EXAMPLE 3 .................................................................................................................. 83

**TYPES OF HEADNOTES—SUMMARY JUDGMENT** ........................................... **88**

TYPES OF HEADNOTES—SUMMARY JUDGMENT DECISION TREE ..................... 90
TYPES OF HEADNOTES—SUMMARY JUDGMENT EXAMPLE ............................... 91

**TYPES OF HEADNOTES—DIRECTED VERDICT/JNOV** .................................... **93**

**KEYCITE DIRECT** ...................................................................................................... **95**

DEFINITION ................................................................................................................. 95

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040275

Verification of Direct History ....................................................................................................95
Cite in Synopsis ........................................................................................................................95
Related References ....................................................................................................................96
"See also" References ...............................................................................................................96
Subsequent Opinions ................................................................................................................97
Postconviction and Habeas Corpus Cases ...............................................................................97
Dash Cites..................................................................................................................................97
Docket Review for Lower Court Judge .....................................................................................98
Synopsis Examples...................................................................................................................101
Exercise ...................................................................................................................................102

**SYNOPSIS ISSUES** ...............................................................................................................**106**
Administrative Review ............................................................................................................106
First Impression .......................................................................................................................107
Overruling, Abrogating, Receding, and Disapproving............................................................109
Certified Questions ..................................................................................................................110
Advisory Opinions ...................................................................................................................111
Specific Relief ..........................................................................................................................113

**UNIVERSAL SUMMARY** .....................................................................................................**114**
Types of Paragraphs ...............................................................................................................114
How to Make Universal Summaries ........................................................................................114
Selection Criteria .....................................................................................................................115
Judicial Summary Application – Hierarchy ............................................................................116
Viewing Highlights on Westlaw .............................................................................................117
Circuit Map ..............................................................................................................................119

**CONSTITUTIONAL LAW HEADNOTES** ...........................................................................**120**
Writing Statute Unconstitutional Headnotes ..........................................................................120
Writing Criminal Law Headnotes Involving Constitutional Protections ...............................121
Miscellaneous Matters.............................................................................................................122
First Amendment ......................................................................................................................122
Due Process ..............................................................................................................................122
Vagueness/Overbreadth ...........................................................................................................123
Fair Trial...................................................................................................................................123
Equal Protection .......................................................................................................................123
Rational Basis ..........................................................................................................................123
Separation of Powers ...............................................................................................................124
Preemption ...............................................................................................................................124
Standing ...................................................................................................................................124
Ex Post Facto............................................................................................................................124
Fourth Amendment ..................................................................................................................124
Right to Remain Silent .............................................................................................................124
Double Jeopardy ......................................................................................................................124
*Miranda* and *Batson*...........................................................................................................125
Ineffective assistance of counsel .............................................................................................125
Confrontation ...........................................................................................................................125
Speedy Trial .............................................................................................................................125
Eighth Amendment...................................................................................................................126
Deliberate Indifference ............................................................................................................126

**CONSTITUTIONAL LAW OUTLINE** ..................................................................................**127**

**CONSTITUTIONAL LAW FOR CASEHEADERS** ..............................................................**128**
History......................................................................................................................................128
General Structure .....................................................................................................................128

*Thomson Reuters – Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040276

Separation of Powers................................................................................................128
Case or Controversy................................................................................................128
U.S. Constitution v. State Constitutions....................................................................129
OTHER PROVISIONS OF THE ORIGINAL CONSTITUTION ................................................129
Commerce Clause....................................................................................................129
Ex Post Facto Clauses.............................................................................................130
Full Faith and Credit Clause.....................................................................................130
D.  Supremacy Clause..............................................................................................130
THE BILL OF RIGHTS ...................................................................................................131
Civil Provisions........................................................................................................131
Criminal Provisions..................................................................................................135
THE 14TH AMENDMENT .................................................................................................144
Due Process.............................................................................................................144
Equal Protection.......................................................................................................145
OTHER PROVISIONS ....................................................................................................147
State Sovereign Immunity.........................................................................................147

CONSTITUTIONAL LAW HEADNOTES PRACTICE PROBLEMS .........................148
PROBLEM 1 - FOURTH AMENDMENT................................................................................148
PROBLEM 2 – FIRST AMENDMENT – FREE SPEECH .........................................................148
PROBLEM 3 - DUE PROCESS..........................................................................................149
PROBLEM 4 – EIGHTH AMENDMENT – DELIBERATE INDIFFERENCE.....................................150
PROBLEM 5 - VAGUENESS.............................................................................................151
PROBLEM 6 – VAGUENESS – SECOND EXAMPLE...............................................................151

TYPES OF HEADNOTES—CONSTRUCTION OF INSTRUMENTS .......................153
EXAMPLE 1 ................................................................................................................154
EXAMPLE 2................................................................................................................155

TYPES OF HEADNOTES—ERROR ............................................................................156
EXAMPLE A................................................................................................................160
EXAMPLE B................................................................................................................161
EXAMPLE C:  PLAIN ERROR..........................................................................................163

MISCELLANEOUS ISSUES—WORDS & PHRASES ..............................................168
GUIDELINES FOR CREATING WORDS AND PHRASES.........................................................170

MATERIAL FACT TAGGING – GUIDELINES AND EXAMPLES............................174
I. WHAT IS A MATERIAL FACT?......................................................................................174
II. WHAT ARE NOT MATERIAL FACTS..............................................................................175
III. GENERAL TAGGING GUIDELINES................................................................................177
IV. LENGTH OF FACTS..................................................................................................178
V. PATENT CASES.......................................................................................................179
VI. CASE EXAMPLES....................................................................................................179

JURISDICTIONAL REQUIREMENTS .........................................................................184
TYPES OF SPECIAL REQUIREMENTS...............................................................................184
Docket Numbers.......................................................................................................184
Procedural Mechanisms...........................................................................................184
Lower Court Information............................................................................................184
Citations and Court Names.......................................................................................185
Special Note on Hawaii............................................................................................185
STATUTES – CITATION ORDER........................................................................................186
STATUTES – CITATION ORDER:  EXAMPLES......................................................................186
USING APPROPRIATE STYLES........................................................................................186
REPEALED AND FORMER STATUTES...............................................................................187

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040277

Federal "Popular Name" Statutes ....................................................................................187

**COURT HEADNOTES** ...........................................................................................................**188**

Law of Other Jurisdictions ...........................................................................................193
*Examples.* .................................................................................................................*194*

**TYPES OF HEADNOTES—PLEADING** ..............................................................................**195**

Example 1 .......................................................................................................................198
Example 2 .......................................................................................................................199
Example 3 .......................................................................................................................200
Example 4 .......................................................................................................................200

**TYPES OF HEADNOTES—ADMISSIBILITY OF EVIDENCE** ...........................................**202**

EXAMPLE 1 ....................................................................................................................203
EXAMPLE 2 ....................................................................................................................204
EXAMPLE 3 ....................................................................................................................205
EXAMPLE 4 ....................................................................................................................206
EXAMPLE 5 ....................................................................................................................207

**TYPES OF HEADNOTES—INSTRUCTION ISSUES** ........................................................**212**

1. Whether Jury Instructions Correctly State the Law ....................................................212
2. Whether Evidence Warrants Instruction or Whether Issue Should Go to Jury .............212
3. Propriety of Jury Instruction .....................................................................................212
Example 1 .......................................................................................................................213
Example 2 .......................................................................................................................214
Example 3 .......................................................................................................................215
Example 4 .......................................................................................................................216
Example 5 .......................................................................................................................217

**PARTY CHARACTERIZATIONS** ......................................................................................**221**

In General .....................................................................................................................221
Assuming the Answer ...................................................................................................221
Procedural Points ..........................................................................................................221
Proper Names ...............................................................................................................221
Correlative Terms .........................................................................................................221
Multiple Parties ............................................................................................................221
Parties With Multiple Roles ..........................................................................................222
Decedents .....................................................................................................................222

**INCLUSIVE LANGUAGE GUIDELINES** ..........................................................................**223**

**STATUTE AND CASE CHARACTERIZATION** ..................................................................**224**

**ACRONYMS** .....................................................................................................................**225**

Examples ........................................................................................................................226

**TYPES OF HEADNOTES—DAMAGES** ..............................................................................**227**

Checklist for Damages Headnotes ................................................................................228
Classification of Damages Headnotes ...........................................................................228
TYPES OF HEADNOTES—Damages Examples .............................................................231
Example 1 .......................................................................................................................231
Example 2 .......................................................................................................................232

**TYPES OF HEADNOTES—LIMITATIONS** .......................................................................**233**

Outline .........................................................................................................................233
EXAMPLE 2 ....................................................................................................................235

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040278

LIMITATIONS - EXERCISE 1 ...........................................................................................236
LIMITATIONS - EXERCISE 2 ...........................................................................................237
LIMITATIONS - EXERCISE 3 ...........................................................................................239

**MISCELLANEOUS ISSUES—ABUSE OF DISCRETION** ...........................................**240**

**TYPES OF HEADNOTES—MISCELLANEOUS** ...........................................................**243**

**PLURALITY OPINIONS AND "PER LEGENDS"** .........................................................**245**

PER LEGENDS GENERALLY ...........................................................................................245
PLURALITY OPINIONS (COUNTING HEADS) .................................................................245
MAJORITY NON-LEAD OPINIONS (THIS IS RARE) .......................................................245
EXAMPLE ......................................................................................................................246

**TOPIC SELECTION** .......................................................................................................**251**

**KEYCITE INDIRECT—IN GENERAL** ..........................................................................**252**

**KEYCITE INDIRECT—EXAMPLES** ............................................................................**271**

**APPENDIX** ....................................................................................................................**274**

**CASE ENHANCEMENTS CHECKLIST** .........................................................................**275**

**KEYCITE AT A GLANCE** ..............................................................................................**276**

**TOP 11 RULES FOR HEADNOTING** ............................................................................**277**

**SUGGESTED PARTY CHARACTERIZATIONS** ...........................................................**278**

**INCLUSIVE LANGUAGE GUIDELINES** ......................................................................**282**

**INTERNET TERMS** .......................................................................................................**291**

**TECHNOLOGICAL DEVICES** ......................................................................................**291**

**ABBREVIATIONS – JUDGES' TITLES** ........................................................................**292**

STATE COURT CASES ...................................................................................................292
FEDERAL LOWER COURT CASES .................................................................................293
FEDERAL COURTS OF APPEALS AND UNITED STATES SUPREME COURT CASES ........293

**JWB KEYBOARD SHORTCUTS:** ..................................................................................**294**

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040279

Summarization Training Materials
November 2020

## JUDICIAL EDITORIAL – Summary Overview

### Top 11 Rules for Headnoting

1. Generally, the editor should follow the court's language when creating headnotes. However, it is important to remember that each headnote must have enough context to stand on its own, and make sense to a reader who doesn't have the opinion.
2. Abstract headnotes should be in present tense, while concretes should be in past tense.
3. Don't make abstract headnotes when the court is quoting a statute.
4. Especially in abstract headnotes, use "a court," or "Court of Appeals," not "The Court."
5. When characterizing parties, describe their relationship to one another, using correlative terms like "employer" and "employee," rather than "employer" and "nurse," but avoid "plaintiff" and "defendant."
6. When possible, write concrete headnotes substantively, not procedurally.
7. Generally, a concrete headnote should start by stating the legal conclusion, followed by a semi-colon and the court's rationale, including facts supporting the conclusion. For example:
   *Terminated female employee was not replaced by someone outside her protected class, nor did she show that a similarly situated male employee was treated more favorably, as required to support her gender discrimination claims under Title VII; while employee sought a promotion that she did not receive, female co-worker was selected for that promotion, and employee pointed to no similarly situated male comparator who was treated more favorably. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.*
8. Headnotes generally should not be more than 800 characters long.
9. Headnotes should include a statutory citation at the end whenever one is available. See example in Rule 7.
10. When choosing a preliminary classification topic, do your best, but do not spend too much time.  Consider looking at the JWB help file, or clicking on a cited, published case in your court's opinion, and choosing the topic that appears on the relevant headnotes in that case.
11. An ITI (Universal Summary Headline) can usually be copied from the synopsis holding representing the most important headnote, and a highlight or FCN summary (Universal Summary Paragraph) can be made by copying that headnote verbatim. The ITI should not exceed 150 characters, and the highlight should not typically exceed 1200 characters.

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040280

Headnote Example

> **[1]** Terminated female employee was not replaced by someone outside her protected class, nor did she show that a similarly situated male employee was treated more favorably, **[2]** as required to support her **[3]** gender discrimination claims under Title VII; **[4]** while employee sought a promotion that she did not receive, **[5]** female co-worker was selected for that promotion, and employee pointed to no similarly situated male comparator who was treated more favorably. **[6]** Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

1. <u>Legal conclusion</u>. This is the court's holding or finding on the narrow issue the court is considering, including references to parties and their actions.
2. <u>Transition phrase</u>. Consider "as required to support," "as would support," "precluding," "and thus," "was entitled to," or "was not entitled to," depending on the relationship between the conclusion and the claim.
3. <u>Claim</u>. Describe the nature of the claim, identifying the cause of action or the statute under which the claim is brought.
4. <u>Counterargument</u>. When possible, identify and briefly describe the best argument on the losing side; start with "while" to signal that this argument did not prevail.
5. <u>Reasoning</u>. Include facts or principles that explain why the court decided in favor of the winning party. Consider conjunctions between facts or reasons like "as", "since", "so" or "and".
6. <u>Statute citation</u>. Cite the statute under which the claim arises, if there is one, or any other statute mentioned in the headnote.

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040281

Summarization Training Materials
November 2020

## Westlaw Tips for Caseheading

1. First things first, make sure your search is set to **"All State and Federal"**:



2. Search for a case by serial number:



3. Search for a case by UUID:



*Thomson Reuters - Proprietary Information*

Page 10

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040282

Summarization Training Materials
November 2020

4.  Search headnote text:



5.  Search synopsis text:



*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040283

Summarization Training Materials
November 2020

6. **Search for case by party name or title:**



7. **Use Meta button to read ITI (WestlawNext only, not Westlaw Edge):**





416 F.3d 1356
United States Court of Appeals,
Federal Circuit.

LION RAISINS, INC., and Lion Bros., Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040284

Summarization Training Materials
November 2020



*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040285

Summarization Training Materials
November 2020

8. **Search Westlaw Bulletins and Topical Highlights:**



Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040286

Summarization Training Materials
November 2020

## ABSTRACT HEADNOTES—Generally

Abstract headnotes are (1) generally applicable (2) principles of law (3) adopted, implicitly or explicitly, by the court.

Abstract headnotes are written in the present tense, while concrete headnotes, applying the law to the facts of the case, are written in past tense. Avoid making hybrid headnotes, half abstract and half concrete.

Abstract headnotes should cover a single issue. The goal is not to have more than one Key Number on a headnote. If the points come from separate sentences in the opinion, they should generally appear in separate headnotes.

Cite any relevant statutes at the end of an abstract headnote.

Do not make abstract headnotes out of factual statements.

Do not make abstract headnotes out of "historical points" indicating what was held in other cases (we have held, this case held) unless there is some adoptive language (x court held ABC, and we agree; as we have held...)

Do not make abstract headnotes out of surveys of the law, when the court merely sets out rules that were applied in different times or in different jurisdictions or in different legal contexts, before coming to a decision about what the rule should be in the present case.

Do not make abstract headnotes out of recitations of constitutional provisions, statutes, rules, treatises, etc. (The First Amendment prohibits any law respecting the establishment of a religion.)

Generally follow the court's language, but add appropriate context and terms of art to abstract headnotes.

Footnotes are a common source of abstract headnotes.

Proofread, particularly for the words WE or THIS COURT and change to "the court," "the appellate court," "the trial court," or some other generic phrase.

Do not make trite abstract headnotes in cases from a trial court or intermediate appellate court.

Do not make any abstract headnotes in unpublished cases unless an abstract headnote disposes of an argument and obviates the need for a corresponding concrete headnote.

The bracketed number for an abstract headnote belongs on the paragraph where the corresponding text appears. (Because the bracketed number for a concrete headnote is supposed to appear at the beginning of the court's discussion of an issue, typically where the court says "party X argues A," it is common for a number of bracketed numbers for abstract headnotes to appear after the bracketed number for the concrete headnote, but before the paragraph resolving issue A.)

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040287

## ABSTRACT HEADNOTES—Examples
Example 1

Although in some jurisdictions a plaintiff may be required to present evidence to "eliminate other causes that may fairly arise from the evidence[,]" *Kaplon v. Howmedica, Inc.,* 83 F.3d 263, 267 (8th Cir.1996) (applying Arkansas law) (internal quotation omitted), the Missouri Supreme Court has held that in order to make a submissible case on causation, a plaintiff is not required "to exclude every causative factor, save that for which the defendant is liable." *Kircher v. Purina Mills, Inc.,* 775 S.W.2d 115, 117 (Mo.1989) (en banc). Nor is a plaintiff required to "prove an absolutely positive causal connection." Id.

\*      \*      \*      \*      \*      \*      \*      \*      \*

Although some courts require a plaintiff to present evidence to "eliminate other causes that may fairly arise from the evidence[,]" *Kaplon v. Howmedica, Inc.,* 83 F.3d 263, 267 (8th Cir.1996) (applying Arkansas law) (internal quotation omitted), in Missouri a plaintiff is not required "to exclude every causative factor, save that for which the defendant is liable." *Kircher v. Purina Mills, Inc.,* 775 S.W.2d 115, 117 (Mo.1989) (en banc). Nor is a plaintiff required to "prove an absolutely positive causal connection." Missouri Practice Book (West).

\*      \*      \*      \*      \*      \*      \*      \*      \*

Although in Arkansas a plaintiff may be required to present evidence to "eliminate other causes that may fairly arise from the evidence[,]" *Kaplon v. Howmedica, Inc.,* 83 F.3d 263, 267 (8th Cir.1996) (applying Arkansas law) (internal quotation omitted), to make a submissible case on causation, in Missouri a plaintiff is not required to exclude every causative factor, save that for which the defendant is liable, *Kircher v. Purina Mills, Inc.,* 775 S.W.2d 115, 117 (Mo.1989) (en banc), or to prove an absolutely positive causal connection. Id.

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040288

Summarization Training Materials
November 2020

## Example 2

Although the warrant authorized the search for and seizure of "notes and ledgers of illegal drug transactions and documents related to homicides," these papers do not appear to come within those categories. Beck's argument thus really is not that the participation of federal agents invalidated the search, but that the seizure of papers the warrant did not cover invalidated the entire search and seizure.

This court has held that the invalidity of part of a search warrant does not require suppression of material seized pursuant to another and valid part of the warrant. See United States v. Fitzgerald, 724 F.2d 633, 637 (1983) (en banc) ("[W]e hold that the infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant ... but does not require the suppression of anything described in the valid portions of the warrant ...."), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984). There is no reason why this principle should not also apply to sustain the seizure of property pursuant to a valid portion of a search warrant even though other property may have been seized without authorization in the warrant.

Beck makes the related argument that the police's rummaging through and seizing his private papers converted the search into a constitutionally impermissible general search. "A flagrant disregard for the limitations of the search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized during the search." Marvin v. United States, 732 F.2d 669, 674-75 (8th Cir.1984). The seizure of Beck's personal papers, however, even if unauthorized by the warrant, did not constitute such a "flagrant disregard" for the limitations of the warrant as to require invalidation of the entire search.

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY                                                    TR-0040289

## Example 3

Before the state can introduce a defendant's incriminating statements made during custodial interrogation, it must show that the defendant knowingly, intelligently and voluntarily waived his right to remain silent. Ouk, 516 N.W.2d at 184 (citing Miranda, 384 U.S. 436, 86 S.Ct. 1602). We have held that the determination whether a juvenile's waiver of his right is knowing, intelligent and voluntary is a fact question dependent upon the totality of the circumstances. State v. Hogan, 297 Minn. 430, 440, 212 N.W.2d 664, 671 (1973). Factors to be considered in this test include the child's age, maturity, intelligence, education, experience, and the presence or absence of parents. Ouk, 516 N.W.2d at 185.

\*     \*     \*     \*     \*     \*     \*     \*     \*

We have noted that "before the state can introduce a defendant's incriminating statements made during custodial interrogation, it must show that the defendant knowingly, intelligently and voluntarily waived his right to remain silent." Ouk, 516 N.W.2d at 184 (citing Miranda, 384 U.S. 436, 86 S.Ct. 1602). The determination whether a juvenile's waiver of his or her rights is knowing, intelligent and voluntary is a fact question dependent upon the totality of the circumstances. State v. Hogan, 297 Minn. 430, 440, 212 N.W.2d 664, 671 (1973). Factors to be considered in this test include the child's age, maturity, intelligence, education, experience, and the presence or absence of parents. Dickey, Criminal Law, U. of Wis. Press.

\*     \*     \*     \*     \*     \*     \*     \*     \*

As we have noted, before the state can introduce a defendant's incriminating statements made during custodial interrogation, it must show that the defendant knowingly, intelligently and voluntarily waived his right to remain silent. Ouk, 516 N.W.2d at 184 (citing Miranda, 384 U.S. 436, 86 S.Ct. 1602).  The determination whether a juvenile's waiver of his or her rights is knowing, intelligent and voluntary is a fact question dependent upon the totality of the circumstances, considering such factors as the child's age, maturity, intelligence, education, experience, and the presence or absence of parents. Ouk, 516 N.W.2d at 185.

\*     \*     \*     \*     \*     \*     \*     \*     \*

Before the state can introduce a defendant's incriminating statements made during custodial interrogation, it must show that the defendant knowingly, intelligently and voluntarily waived his right to remain silent. Ouk, 516 N.W.2d at 184 (citing Miranda, 384 U.S. 436, 86 S.Ct. 1602). As we have held, the determination whether a juvenile's waiver of his or her rights is knowing, intelligent and voluntary is a fact question dependent upon the totality of the circumstances. State v. Hogan, 297 Minn. 430, 440, 212 N.W.2d 664, 671 (1973). "Factors to be considered in this test include the child's age, maturity, intelligence, education, experience, and the presence or absence of parents." Dickey, Criminal Law, U. of Wis. Press.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040290

Summarization Training Materials
November 2020

## Example 4

Even when a defendant has knowingly, intelligently and voluntarily waived his or her right to remain silent, the state still must show the voluntariness of a confession by a preponderance of the evidence. State v. Andrews, 388 N.W.2d 723, 730 (Minn.1986). The test of voluntariness is whether the actions of the police, together with other circumstances surrounding the interrogation "were so coercive, so manipulative, so overpowering that [the defendant] was deprived of his ability to make an unconstrained and wholly autonomous decision to speak as he did." State v. Pilcher, 472 N.W.2d 327, 333 (Minn.1991). The inquiry, like that involved in the determination of the legitimacy of a defendant's waiver of his right to remain silent, includes consideration of factors such as the defendant's age, maturity, intelligence, education, experience and ability to comprehend; the lack of or adequacy of warnings; the length and legality of detention; the nature of the interrogation; and whether the defendant was deprived of physical needs or denied access to friends. Id.

We previously have addressed many of those factors in determining the constitutional validity of Jones' waiver of his right to remain silent, and we decline to repeat ourselves here. See Williams, 535 N.W.2d at 287 (stating that analysis of the two issues significantly overlaps). [discussion omitted]

We have held that confessions extracted by the use of deceit and stress- inducing interrogation techniques are inadmissible. State v. Garner, 294 N.W.2d 725, 727 (Minn.1980). We also have stated, however, that the use of false information does not by itself render a confession inadmissible. State v. Moorman, 505 N.W.2d 593, 600 (Minn.1993). Instead, this court will ask whether the deceit is the kind that would make an innocent person confess. See Williams, 535 N.W.2d at 288. Only when the answer to this question is yes, will we conclude that the statement was given involuntarily.

\*       \*       \*       \*       \*       \*       \*       \*       \*

Confessions extracted by the use of deceit and stress- inducing interrogation techniques are inadmissible. State v. Garner, 294 N.W.2d 725, 727 (Minn.1980). However, the use of false information does not by itself render a confession inadmissible. State v. Moorman, 505 N.W.2d 593, 600 (Minn.1993). Instead, this court will ask whether the deceit is the kind that would make an innocent person confess. See Williams, 535 N.W.2d at 288. Only when the answer to this question is yes, will we conclude that the statement was given involuntarily.

\*       \*       \*       \*       \*       \*       \*       \*       \*

Confessions extracted by the use of deceit and stress- inducing interrogation techniques are inadmissible. Criminal Law in a Nutshell (West). However, "the use of false information does not by itself render a confession inadmissible." Id. Instead, this court will ask whether the deceit is the kind that would make an innocent person confess. See Williams, 535 N.W.2d at 288. Only when the answer to this question is yes, will we conclude that the statement was given involuntarily.

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040291

Example 5

Defendant's motion for summary judgment is subject to the following well-established standards. A party is entitled to summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Helm Financial Corp. v. MNVA Railroad, Inc., 212 F.3d 1076, 1080 (8th Cir.2000) (citing Fed.R.Civ.P. 56(c)). An issue of material fact is genuine if it has a real basis in the record. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir.1992). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." Hartnagel, 953 F.2d at 395.

*       *       *       *       *       *       *       *

Defendant's motion for summary judgment is subject to the following well-established standards:

A party is entitled to summary judgment only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. An issue of material fact is genuine if it has a real basis in the record. A genuine issue of fact is material if it might affect the outcome of the suit under governing law.

Smith v. Jones, 1000 F.2d 999 (citations omitted).

*Thomson Reuters – Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040292

Summarization Training Materials
November 2020

## Example 6

¶ 5 The issue in this case is whether the police officer's warrantless entry into the home was constitutional. The trial court ruled that the flight from the officer constituted reasonable suspicion. The trial court found that the warrantless entry was justified by the flight, coupled with a belief that exigent circumstances--that is, destruction of evidence--were present. We disagree.

¶ 6 In reviewing the suppression order, we are presented with a mixed question of fact and law. State v. Hughes, 2000 WI 24, ¶ 15, 233 Wis.2d 280, 607 N.W.2d 621, cert. denied, 531 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 (2000). We review the trial court's findings of fact under the clearly erroneous standard. Id. Whether the Constitution was violated, however, is a question of law which we review independently. Id.

¶ 7 The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Wisconsin Constitution is essentially the same. Wis. Const. art. I, § 11.

¶ 8 "Warrantless searches 'are per se unreasonable under the fourth amendment, subject to a few carefully delineated exceptions' that are 'jealously and carefully drawn.' " State v. Kryzaniak, 2001 WI App 44, ¶ 14, 241 Wis.2d 358, 624 N.W.2d 389 (citations omitted). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " Welsh v. Wisconsin, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (citation omitted). A fundamental safeguard against unnecessary invasions into private homes is the Fourth Amendment's warrant requirement, imposed on all governmental agents who seek to enter the home for purposes of search or arrest. Id . The Fourth Amendment stands for the right of a person to retreat into his/her own home and there be free from unreasonable governmental intrusion. Payton v. New York, 445 U.S. 573, 589- 90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent" who may be caught up in the "competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

¶ 9 If the police do not have a warrant, they bear the heavy burden of trying to demonstrate exigent circumstances to overcome the presumption of unreasonableness. Welsh, 466 U.S. at 750. Four factors have been identified that, when measured against the time needed to obtain a warrant, constitute the exigent circumstances required for a warrantless entry: (1) an arrest made in "hot pursuit"; (2) a threat to the safety of a suspect or others; (3) a risk that evidence would be destroyed; and (4) a likelihood that the suspect would flee. State v. Smith, 131 Wis.2d 220, 229, 388 N.W.2d 601 (1986).

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040293

## CONCRETE HEADNOTES—Basic Structure

A concrete headnote is one which sets forth the court's application of the law to the facts of the case.

**Components:**
1.  Court's **legal conclusion**, i.e., resolution of the underlying argument (some cases will involve one legal conclusion that follows from another)
2.  **Countervailing facts** (if any), usually introduced with an "although" clause
3. **Supporting reasoning** (facts and/or legal rationale).  Commonly introduced with either a semicolon or a "where" clause.
4. **Citations** to relevant provisions (if any)

**Example:**
Trial counsel's failure to provide notice to State of defendant's alibi witnesses was reasonable trial strategy and, thus, was not ineffective assistance in murder trial, although defendant repeatedly asked counsel to provide such notice, where counsel investigated purported alibi and determined it would be perjurious and unfavorable to defendant. U.S. Const. Amend. 6.

**Steps to Consider in Writing a Concrete Headnote:**
1. What is the core legal issue to focus on?
2. How should the parties be referred to?
3. What facts are relevant and essential to the point?
4. What context is needed for the point to stand on its own?
5. Any countervailing facts?
6. Any relevant citations?

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040294

Summarization Training Materials
November 2020

## CONCRETE HEADNOTES—Templates

"Where" clause.

(Court's resolution of disputed issue) where (undisputed supporting facts).
Police officer had probable cause to search defendant's suitcase, where drug dog
alerted to the suitcase while sniffing it in airport baggage area.

"Although" clause. ("even if," "regardless of whether")

(Court's resolution of disputed issue) although (undisputed countervailing facts).
Police officer had probable cause to search defendant's suitcase, although drug dog
that alerted to the suitcase while sniffing it in airport baggage area had a cold.

Both "Where" and "Although" clauses.

(Court's resolution of disputed issue) although (undisputed countervailing facts)
where (undisputed supporting facts).
Police officer had probable cause to search defendant's suitcase, although drug dog
that alerted to the suitcase while sniffing it in airport baggage area had a cold, where
defendant grabbed the suitcase and attempted to run away when he saw the dog
sniffing it.

"Since" or "Because" clauses.

(Court's resolution of disputed issue) since (supporting rationale).
Police officer had probable cause to search defendant's suitcase after a drug dog
alerted to the suitcase in an airport baggage area, since a reasonable person in the
officer's position would have concluded that the suitcase contained contraband.

"And thus" clause.

(Court's resolution of disputed issue) and thus (nonobvious consequence) where
(undisputed supporting facts).
Police officer searched defendant's suitcase in good faith, and thus suppression of
cocaine he found in suitcase was not required, where officer observed drug dog alert
to the suitcase in airport baggage area, and officer was unaware that the dog had a
cold.

Fun with semicolons.

In place of a "where" clause when facts are lengthy
Police officer had probable cause to search defendant's suitcase; suitcase had just
arrived on a flight from Columbia, drug dog alerted to the suitcase while sniffing it in

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040295

Summarization Training Materials
November 2020

airport baggage area, and defendant grabbed the suitcase and attempted to run away when he saw the dog sniffing it.

**To introduce mixed facts and rationale**
Police officer had probable cause to search defendant's suitcase; drug dog alerted to the suitcase while sniffing it in airport baggage area, and officer's later discovery that the dog had a cold did not make his decision to search the bag unreasonable.

Editors' little friends: "who" and "which."

Police officer <u>who</u> observed drug dog alert to suitcase in airport baggage area had probable cause to . . .
Police officer's observation of suitcase <u>which</u> had just arrived on a flight from Columbia gave officer probable cause to . .

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040296

Summarization Training Materials
November 2020

## CONCRETE HEADNOTES—Hypothetical

On a sunny spring day, Tim, an employee of Thomson Reuters, decided to go for a walk on his lunch break. While on his walk, Tim decided to cross Westcott Road, a busy city street with a 45-miles-per-hour speed limit. Tim started to cross Westcott near its intersection with one of the entrance roads to Thomson Reuters, at a spot where there was no marked crosswalk. Halfway across, Tim noticed that one of his shoes was untied, and, without looking to see if there was any oncoming traffic, stooped over to tie it. At the same time, Patty was driving eastbound down Westcott in her Ford Explorer SUV at a speed of 60 miles per hour. Suddenly, she saw Tim tying his shoe in her lane of traffic and slammed on her brakes. But it was too late. The Explorer struck Tim, breaking his arm. Of course, he sued Patty.

Following trial, the Dakota County District Court entered a directed verdict in Patty's favor, and Tim filed an appeal. On appeal, Tim argued that the accident was caused by Patty's excessive speed, while Patty argued that the accident was Tim's fault. The Court of Appeals ruled that the proximate cause of the accident was Tim's decision to suddenly bend down to tie his shoe, not Patty's excessive speed. The court's opinion concluded with the following: "The plaintiff's negligence, not the defendant's excessive speed was the proximate cause of the accident. It was not foreseeable that the plaintiff would suddenly bend down and tie his shoe. Therefore, the district court did not err when it granted the defendant's directed verdict motion."

**You are now attempting to write a concrete headnote for this case:**

How would you refer to Tim and Patty?
What is the legal issue?
What facts are relevant?

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040297

Here are a couple of CORRECT ways to headnote this:

Motorist's excessive speed was not proximate cause of her collision with pedestrian, where pedestrian, while crossing road at a spot with no marked crosswalk, bent down to tie his shoe without looking to see if there was oncoming traffic.

Pedestrian's negligence in bending down to tie his shoe while crossing street outside a marked crosswalk without looking to see if there was oncoming traffic, rather than motorist's excessive speed, was proximate cause of motorist's collision with pedestrian; it was not foreseeable that the pedestrian would suddenly bend down to tie his shoe.

**Here are a couple of WRONG ways to headnote this:**

Directed verdict was properly entered in favor of motorist who struck pedestrian while pedestrian was tying his shoe, where motorist's excessive speed was not proximate cause of the accident.

Where employee was walking on his lunch break, crossed street outside a marked crosswalk, and bent down to tie his shoe, SUV owner's excessive speed was not proximate cause of her collision with the employee.

**Remember to FOCUS on the underlying legal issue.**

Having characterized the parties, it is tempting to write the headnote in terms of their relationship to each other. This will sometimes be appropriate, but often, the underlying issue is the parties' relationship to a legal doctrine. Compare:

Motorist's excessive speed was not proximate cause of her collision with pedestrian, where...

With:

Motorist who struck pedestrian while exceeding the speed limit was not liable for pedestrian's injuries, where pedestrian, while crossing road at a spot with no marked crosswalk, bent down to tie his shoe without looking to see if there was oncoming traffic, and thus motorist's conduct was not proximate cause of the accident.

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040298

## Basic Concrete Headnotes—At a Glance

| Component | Description | Example 1 | Example 2 | Example 3 |
|---|---|---|---|---|
| Holding | The court's resolution of the underlying argument. | A defendant was not "in custody" when he confessed to murder, before being warned of his rights, | Possible future availability in state of brain cancer treatment using antineoplastons did not impose on physician, who headed university hospital's neuro-oncology service and moderated neuro-oncology tumor board, a duty to disclose such treatment to parents whose child was being treated at hospital for brain tumor, | Action by clients against law firm was governed by two-year statute of limitations for tort actions, |
| Therefore Thus | If needed, any additional legal conclusion. | …and therefore his statement was not obtained in violation of *Miranda*, | …and therefore nondisclosure could not amount to medical malpractice, | |
| Although/ Even though | Any facts or other matter weighing against the resolution. | …although defendant was at police station, surrounded by visibly armed officers, when he made confession, | | …even though clients alleged distinct causes of action for negligence, breach of contract, and breach of fiduciary duty, and did not designate action as one for legal malpractice, |
| Where | Fact supporting the resolution. | …where defendant was not yet suspect in murder, he came to station of his own accord, and he blurted out confession after desk sergeant asked whether he needed assistance. | …where that treatment was currently prohibited in state under statutes governing proper approval of drugs and medicines for use in cancer treatment. | …where crux of each claim was that law firm did not provide clients with adequate legal representation, and clients did not allege any conduct that could constitute breach of contract or fiduciary duty. |
| Citations | Citations to any relevant constitutional provision, statute, rule, regulation, restatement, model instruction, etc. | U.S. Const. Amend. 5. | Cal. Health & Safety Code §§ 109300, 109325. | Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). |

Sensitivity: Confidential

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

Summarization Training Materials
November 2020

## Commonly Used Classification Topics

### Criminal Procedure

| | | |
|---|---|---|
| Arrest | Extradition and Detainers | Pardon and Parole |
| Bail | Forfeitures | Prisons |
| Criminal Law | Grand Jury | Searches and Seizures |
| District and Prosecuting | Habeas Corpus | Sentencing and Punishment |
| Attorneys | Indictment and Information | |
| Double Jeopardy | Jury | |

### Crimes

| | | |
|---|---|---|
| Arson | Extortion and Threats | Prostitution |
| Assault and Battery | Forgery | Rape |
| Bribery | Fraud | Receiving Stolen Goods |
| Burglary | Homicide | RICO |
| Conspiracy | Incest | Robbery |
| Contempt | Kidnapping | Sex Offenses |
| Controlled Substances | Malicious Mischief | Threats, Staling & |
| Counterfeiting | Obstruction of Justice | Harassment |
| Escape | Perjury | Weapons |

### Civil Procedure

| | | |
|---|---|---|
| Action | Damages | Parties |
| Administrative Law and | Declaratory Judgment | Pleading |
| Procedure | Evidence | Pretrial Procedure |
| Alternative Dispute | Federal Civil Procedure | Process |
| Resolution | Federal Courts | Removal of Cases |
| Appeal and Error | Injunction | Statutes |
| Attorney and Client | Interest | Trial |
| Compromise and | Judgment | Venue |
| Settlement | Jury | Witnesses |
| Costs | Limitation of Actions | |
| Courts | Mandamus | |

### Commercial Law

| | | |
|---|---|---|
| Antitrust and Trade | Copyrights and IP | Partnership |
| Regulation | Corporations and Business | Patents |
| Bankruptcy | Orgs. | Sales |
| Banks and Banking | Frauds, Statute of | Secured Transactions |
| Bills and Notes | Implied and Constructive | Securities Regulation |
| Carriers | Contracts | Trademarks |
| Consumer Credit | Insurance | Telecommunications |
| Contracts | Joint Ventures | Usury |

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040300

## Government

Aliens, Immigration, and
Citizenship
Asylums and Assisted
Living Facilities
Automobiles
Counties
Constitutional Law
Education
Election Law

Environmental Law
Health
Internal Revenue
Intoxicating Liquors
Municipal Corporations
Mental Health
Public Assistance
Public Contracts
Public Employment

Public Contracts
Public Utilities
Records
Social Security
States
Taxation
Zoning and Planning

## Employment Law

Labor and Employment
Public Employment

Unemployment
Compensation

Worker's Compensation

## Estate Planning

Descent and Distribution
Executors and
Administrators

Gifts
Trusts
Wills

## Family Law

Adoptions
Child Custody
Child Support

Divorce
Guardian and Ward
Infants

Marriage and Cohabitation
Protection of Endangered
Persons

## Real Property

Adverse Possession
Boundaries
Common Interest
Communities
Deeds
Easements
Eminent Domain

Joint Tenancy
Landlord and Tenant
Lis Pendens
Mines and Minerals
Mortgages and Deeds of
Trust
Nuisance

Quieting Title
Tenancy in Common
Vendor and Purchaser
Water Law
Zoning and Planning

## Torts

Animals
Assault and Battery
Civil Rights
Conversion and
Civil Theft

False Imprisonment
Fraud
Health
Libel and Slander
Malicious Prosecution

Negligence
Products Liability
RICO
Torts

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040301

Summarization Training Materials
November 2020

## CONCRETE HEADNOTES—Examples

Example 1

Court of Appeals of Kentucky.

Harry C. STEWART, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

HOWERTON, Chief Judge.

Harry C. Stewart appeals from a judgment of the Kenton Circuit Court and sentence of five years' imprisonment for second-degree burglary entered November 29, 1988. His sentence was enhanced to ten years as a persistent felony offender II, KRS 532.080(2). We affirm.

Stewart was arrested for second-degree burglary when his ex- girlfriend, Rosemary Gent, reported to police that Stewart told her he had stolen some tools and other items from the residence of Claude Hicks. The burglary took place sometime between April 28 and May 1, 1988, and was reported to police on May 9, 1988. At trial, the only evidence against Stewart was the testimony of Gent, Hicks, a patrolman who responded to the call, and a police detective who was later assigned to investigate the case. Hicks testified as to the items stolen. In addition to testifying that Stewart told her he stole the items, Gent also testified that she saw the items in his apartment.

At oral argument, the briefed issue concerning the supposed hearsay testimony was dropped. The remaining issue is whether a basement with no interior entrance to the house was a dwelling within the meaning of KRS 511.010(2). Stewart argues it was not and thus he was entitled to a directed verdict of acquittal. At oral argument, defense counsel stated that if Stewart were guilty of anything, it should be burglary in the third degree, entering or remaining unlawfully in a building. KRS 511.040(1). Burglary in the second degree requires entering or remaining unlawfully in a dwelling, with intent to commit a crime. KRS 511.030(1). "Dwelling" is defined in KRS 511.010(2) as "a building which is usually occupied by a person lodging therein."

At common law, the offense of burglary was aimed at the security of the habitation rather than the security of property. Annot., 43 ALR 2d 831, 835 (1955) [hereinafter "43 ALR 2d"]. Historically, this protection was not limited to the house itself, but extended to certain outbuildings, even though these might be physically separated from the house, as these were considered part aicind parcel of the dwelling. Id. at 835. Generally, if a structure's use "contributes materially to the

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

comfort and convenience of habitation in the dwelling house," Id. at 838, then it will be considered part of the dwelling for purposes of the burglary statute. In the present case, Hicks testified that he had his laundry room, a refrigerator, and a workshop in the basement. As such, it appears that the presence of these items would meet the use test for the comfort and convenience of the occupants of the house. Id. at 835, 838. If a detached outbuilding can be considered part of the dwelling, depending on its proximity to the house and the use put to it, Id., then a basement under the same roof as the house presents an even stronger case. See Mitchell v. Commonwealth, 88 Ky. 349, 354, 11 S.W. 209 (1889).

In Mitchell, the defendant was found guilty of feloniously breaking and entering a dwelling house by forcibly opening a cellar door and taking property. 88 Ky. at 350, 11 S.W. 209. The applicable statute was broader than our present KRS 511.010(2) in that it proscribed "felonious[ly] break [ing] any dwelling-house, or any part thereof, or any outhouse belonging to or used with any dwelling-house." 88 Ky. at 350, 11 S.W. 209. Nevertheless, the reasoning used in that case compels us to believe that a cellar or basement under almost any statutory scheme would be considered part and parcel of the dwelling, whether it could be reached from the interior of the house or only from an exterior door. In Mitchell, the court stated, 88 Ky. at 353- 354, 11 S.W. 209:

> The law throws around [the dwelling house] its protecting mantle because it is the place of family repose. It is therefore proper not only to secure the quiet and peace of the house in which [the family] sleep[s], but also any and all outbuildings which are properly appurtenant thereto, and which, as one whole, contribute directly to the comfort and convenience of the place as a habitation. If this reasoning be correct, then any which are not so situated, or are not so used, should not be regarded as a part of the dwelling, although they may, in fact, be within the curtilage. If there for other distinct purposes, as, for instance, a storehouse for the vending of goods, or a shop for blacksmithing, and the dwelling is equally convenient and comfortable without them, and they are not, in fact, a part of it, as by being under the same roof, so that the breaking into them will not disturb the peace and quiet of the household, then they should not be regarded as a part of it in considering the crime of burglary, or the offense named in the statute. (Armour v. The State, 3 Humphreys, 379.)

> If, however, an outhouse, having no internal communication with the dwelling proper, may be considered as so appurtenant to it that burglary may be committed therein, surely it would seem it should be so held as to a cellar under the dwelling, although there may be no means of internal communication between them. It is under the same roof. It is a part of the house in which the occupant and his family sleep. It is essentially part and parcel of the habitation. (Emphasis in original.)

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040303

Summarization Training Materials
November 2020

In California v. Zelaya, 194 Cal.App.3d 73, 239 Cal.Rptr. 289 (1987), the defendant was found guilty of first-degree residential burglary when he broke into a garage and basement of an apartment building. The basement held locked storage areas for the tenants. The court held that areas of the apartment house entered by the defendant were functionally connected with and an integral part of the building's living quarters so as to be part of an "inhabited dwelling house" within the meaning of California Penal Code § 460. 239 Cal.Rptr. at 291. "Dwelling," as defined in KRS 511.010(2), closely resembles that in Zelaya. Therefore, we believe that Mitchell, while relying on a broader definition of "dwelling," is still applicable in this situation.

Even though Hicks's basement could not be reached without going outside his house and entering a separate, locked door, it was correctly determined by the trial court to be part and parcel of the residence. Mitchell, 88 Ky. at 354, 11 S.W. 209; see also Mason v. Commonwealth, 101 Ky. 397, 399, 41 S.W. 305 (1897).

The standard for directing a verdict has been stated:

With the evidence viewed in the light most favorable to the Commonwealth, if the totality of the evidence is such that the trial judge can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt, then the evidence is sufficient and the case should be submitted to the jury. If the evidence cannot meet this test it is insufficient and a directed verdict of acquittal should be granted. Commonwealth v. Sawhill, Ky., 660 S.W.2d 3, 4 (1983).

Based on the testimony of Gent, reasonable minds could find Stewart guilty of second-degree burglary. Thus, the trial court did not err in refusing to direct a verdict.

Based on the above, the judgment of the Kenton Circuit Court is affirmed.

All concur.

**Trial Court:** The Circuit Court for Kenton County

**Trial Judge:** Douglas M. Stephens

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040304

Summarization Training Materials
November 2020

Example 2

Supreme Court of Alabama.

Willis Lee DANIEL

v.

ALABAMA POWER COMPANY

MADDOX, Justice.

This case presents the question whether the trial court erred in entering summary judgment against the appellant on his complaint alleging the tort of outrageous conduct.

Even though the parties briefed and argued the issue of whether plaintiff's complaint was preempted by § 301, Labor Management Relations Act, 29 U.S.C. § 185 (because he had previously filed a grievance under that Act), we will not address that issue because our holding on the summary judgment issue is dispositive.

On October 18, 1979, Willis Lee Daniel, an appliance repairman with Alabama Power Company ("APCo"), allegedly received an on-the-job injury to his lower back while removing an oven from a cabinet. As a result of the alleged injury, Daniel was placed on sick leave by APCo. An examination by an APCo physician revealed no apparent lower back injury sustained by Daniel. Despite the APCo physician's report, Daniel insisted that he was experiencing severe

lower back pain. On June 23, 1980, Daniel returned to work and was assigned to a clerical position. Daniel was told by the APCo physician not to lift any item heavier than 25 pounds.

Daniel asserted that while working at his clerical position at APCo, he was threatened by an APCo supervisor and was told by another APCo supervisor to quit "feigning" his lower back injury. On July 8, 1980, Daniel, complaining of severe lower back pain, was placed on sick leave, vacation leave, and then extended sick leave. After Daniel had exhausted his APCo leave, on October 13, 1980, he was placed on personal leave through January 11, 1981.

On January 12, 1981, Daniel returned to work and accepted a bill collector's position with APCo. On January 14, after complaining to his supervisor that the walking involved with his new position aggravated his lower back pain, Daniel failed to report to work. On January 27, Daniel's union representative filed a grievance with APCo. In that grievance, Daniel complained that APCo had refused to pay its share of insurance premiums on him. On January 29, 1981, a second grievance was filed with APCo, alleging that Daniel had been placed in an incorrect pay category when he assumed his bill collector's position. On February 6, 1981, APCo notified Daniel that he had been discharged on that date for not reporting to work. Finally, on February 13, 1981, Daniel filed a third grievance, complaining of his discharge. In

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040305

that grievance, Daniel alleged that APCo had systematically attempted to deprive him of his insurance benefits and that APCo, through its employees, had continuously discriminated against him and coerced, threatened, and intimidated him and his family since his accident occurred. In a letter dated May 20, 1981, the union and APCo settled the three grievances lodged by Daniel's union representative. Under the settlement agreement, Daniel was reinstated with APCo and was placed on leave for long-term disability purposes effective July 23, 1980; also, APCo agreed to retroactively pay its share of the insurance premiums on Daniel that had not been paid when Daniel was placed on personal leave of absence from work on October 14, 1980, through January 11, 1981. Despite that settlement, both Daniel and his union representative declared that it did not "settle" Daniel's outrage suit against the company, which had previously been filed.

On December 15, 1980, Daniel had filed an action against APCo and APCo's insurance company, Protective Life Insurance Company. In that complaint, Daniel alleged that APCo and its insurer had conspired to deny him his insurance benefits after his accident. On May 28, 1981, Daniel filed an amended complaint that asserted his claim against APCo based on alleged outrageous conduct. After filing three unsuccessful motions for summary judgment, APCo filed a fourth motion for summary judgment on April 22, 1988, which the trial court granted on August 17, 1988. In its order, the trial court stated that Daniel's claims were preempted by 29 U.S.C. § 185 and that, as a matter of law, he had not presented even a scintilla of evidence supporting his tort of outrageous conduct claim.

Daniel asserts that there were questions of material fact as to whether APCo, through its representatives, had committed the tort of outrageous conduct against him. The standard for review of motions for summary judgment was stated by this Court in Cabaniss v. Wilson, 501 So.2d 1177, 1182 (Ala.1986):

"The standard of review applicable to motions for summary judgment is well settled: A motion for summary judgment may be granted only when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Fountain v. Phillips, 404 So.2d 614, 618 (Ala.1981). Furthermore, all reasonable doubts concerning a genuine issue of material fact must be resolved against the moving party. Couch v. Dothan-Houston County Airport Authority, Inc., 435 So.2d 14 (Ala.1983)."

Because Daniel filed his complaint before June 11, 1987, APCo's burden of proof on its motion for summary judgment is measured by the "scintilla rule," which requires a trial judge to deny a motion for summary judgment if there is a scintilla of evidence supporting the nonmovant's position. See Ala.Code 1975, § 12-21-12.

Applying the law relating to the tort of outrageous conduct to the present case, we find it clear that there was no genuine issue of material fact to be presented to a factfinder. In his deposition, Daniel testified concerning a number of circumstances that he maintains would create a genuine issue of material fact regarding his allegation of outrageous conduct. First, Daniel claims that while he was at work one of his superiors accused him of "feigning" his back injury.

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Furthermore, he claims that another supervisor at work challenged him to a fistfight. Finally, he claims that another supervisor ridiculed him at work by suggesting that he pull two tables together and lie upon them if his back pain became too severe.

This Court first recognized the tort of outrageous conduct in American Road Serv. Co. v. Inmon, 394 So.2d 361 (Ala.1980). In that case, this Court stated that in order for a plaintiff to establish the tort of outrageous conduct, the emotional distress to which the plaintiff is subjected must be so "extreme" that no reasonable person could be expected to endure it. "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365.

In Inmon, this Court summarized the evidence presented by the plaintiff in that case, as follows:

"Thus, the tendencies of Inmon's evidence showed that he had been harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification. His evidence also established emotional distress resulting in loss of weight and insomnia. It is sufficient here to state that the company's representatives testified that their investigation related to allegations of a 'kickback' scheme involving Inmon and Michael McCue, a claims supervisor in Baltimore. Inmon's honesty was also questioned through his relationship with a salvage buyer.

"After considering the entire record, we have concluded that the conduct of American Road Service Company toward Inmon does not meet the requirements of the cause of action we have recognized above. There is no evidence upon which reasonable people could base the belief that the company intended to cause Inmon severe emotional distress. The Brady telephone conversations, for example, do not reveal any such intent, even though at one point, according to Inmon, Brady said that he had been told to wait until Sunday night to notify Inmon that he was to report to Detroit the next afternoon at 1:00 o'clock. Any resentment springing from such impersonal treatment is not the severe emotional distress contemplated by this tort."

394 So.2d at 367. In a few cases, this Court has recognized the statement of an actionable claim of outrageous conduct where the disputed conduct was "extreme" in nature. In Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989), this Court held that a plant supervisor's persistent and calculated sexual harassment of his female employees at work presented evidence from which a jury could reasonably find the supervisor guilty of the tort of outrageous conduct. Also, in Whitt v. Hulsey, 519 So.2d 901 (Ala.1987), this Court stated that a landowner's deliberate use of a bulldozer so as to cause gravestones to be broken and pushed aside, presented

*Thomson Reuters - Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040307

evidence from which a jury could conclude that the landowner's behavior amounted to the tort of outrageous conduct, and in National Sec. Fire & Cas. Co. v. Bowen, 447 So.2d 133 (Ala.1983), this Court held that the use of threatening and assaultive behavior on the part of an insurance company's investigators against its insured and his family in an attempt to force the insured to drop his claim against the insurance company created the kind of "extreme" emotional distress in the insured that the tort of outrageous conduct was meant to address.

Because the tort of outrageous conduct carries punitive damages, "it is a limited remedy to be applied only in egregious circumstances." Busby, supra.

We have examined Daniel's evidence of APCo's alleged outrageous conduct-- that one of its supervisors accused him of "feigning" his back injury, that one supervisor challenged him to a fistfight, and that another supervisor told him to lie upon two tables pushed together, if his back pain became too severe at work--and we hold that these alleged acts of misconduct do not represent the kind of "extreme" conduct that the tort of outrageous conduct was meant to remedy. In Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala.1989), this Court held that despite a co-employee's awareness of a fellow employee's job-related injury, that co-employee's attempt to coerce the injured employee to allege that she was hurt off the job did not amount to conduct so extreme as to constitute the tort of outrageous conduct. Clearly, if the conduct in Lowman was not "outrageous," then how can Daniel's claims in this case be deemed to be "outrageous"? We hold, as a matter of law, that the alleged conduct was not so "extreme" as to constitute the tort of outrageous conduct; therefore, the summary judgment in favor of APCo was not erroneous.

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.


HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
JONES, J., concurs in the result.

Trial Court: The Circuit Court for Cleburne County,

Trial Judge: Samuel H. Monk, II

Docket Number: CV-80-58

*Thomson Reuters – Proprietary Information*

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040308

Summarization Training Materials
November 2020

## NONSTANDARD COURT NAMES

| COURT | NAME |
|-------|------|
| Alabama Intermediate Court | Court of **Civil Appeals/Court of Criminal Appeals** |
| California Intermediate Court | **Court of Appeal** |
| Connecticut Intermediate Court | **Appellate Court** |
| District of Columbia High Court | **Court of Appeals** |
| Florida Intermediate Court | **District Court of Appeal** |
| Hawai'i Intermediate Court | **Intermediate Court of Appeals** |
| Illinois Intermediate Court | **Appellate Court** |
| Louisiana Intermediate Court | **Court of Appeal** |
| Maine High Court | Supreme Judicial **Court** |
| Maryland High Court | Court of Appeals |
| Maryland Intermediate Court | Court of **Special Appeals** |
| Massachusetts High Court | **Supreme Judicial Court** |
| Massachusetts Intermediate Court | Appeals Court |
| New Jersey Intermediate Court | Superior **Court, Appellate Division** |
| New York High Court | Court of **Appeals** |
| New York Intermediate Court | **Supreme Court, Appellate** Division |
| New York Trial Court | **Supreme Court** |
| Oklahoma Intermediate Court | Court of **Criminal Appeals/Court of** Civil Appeals |
| Pennsylvania Intermediate Court | Superior Court/Commonwealth Court |
| Tennessee Intermediate Court | **Court of Appeals/Court of Criminal Appeals** |
| Texas High Court | **Supreme Court/Court of Criminal Appeals** |
| West Virginia High Court | Supreme Court of Appeals |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040309

## SYNOPSIS—General Elements

## A. BACKGROUND SECTION (1-5)

1. Parties
   a. show relationship to each other and issues in case  (party characterization section of the manual)
   b. no proper names, except state and federal government agencies
   c. avoid "plaintiff" and "defendant" if possible
   d. no need to mention spouse if not at issue; leave out peripheral parties
   e. note if suit is brought in a representative capacity
   f. note substitution of parties (due to death or other)

2. Nature of action
   a. essential facts and theories
      * essential facts should be presented as early as possible
      * include facts & theories in statement of case before describing trial court's holding
      * include brief facts to distinguish the case from other cases in the same genre (e.g. "medical malpractice action arising from alleged failure to diagnose cancer")
      * can look to prior opinions in the same case for help
      * identify the relief sought (especially injunctive or declaratory relief); generally, if plaintiff is seeking only damages, there is no need to mention it.
   b. only passing reference to main action is needed if opinion deals with counterclaim or third-party claim

3. Identify lower court
   a. full name, county/judicial district, and full name of trial judge
   b. abbreviations (refer to synopsis chapter in manual)
   c. docket number, if required (more later)
   d. see special requirements for individual states in manual

4. Lower court's disposition
   a. keep brief; focus on contested dispositions
   b. no need to mention preliminary dispositions, if not at issue on appeal
   c. do not note trial court's reasoning
   d. mention jury trial or bench trial; in criminal cases, omit jury trial

5. Who appealed/appellate procedure
   a. note any intermediate appeals (appellate court or court of general jurisdiction)
      *include any reported citations from prior proceedings (more details later)
   b. identify method of appeal (appeal, writ of certiorari, mandamus, etc.)

MUST HAVE AT LEAST ONE SENTENCE BEFORE "HELD THAT" SENTENCE, OR
BACKGROUND SECTION IS BLANK

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## B. HOLDINGS SECTION (6-7)

6. Identify court issuing the opinion, and its author
   a. state cases: use full name of authoring judge if that is how it appears on JWB; otherwise can just use last name
   b. federal cases: use just last name of authoring judge, unless it is known that the judge is designated by his or her full name
   c. abbreviations (refer to synopsis chapter of manual)
   d. per curiam (do not note this in the synopsis)
   e. en banc (note only if the court normally doesn't sit en banc)
   f. remember nonstandard court names

7. Holdings
   a. concise statement of main holdings; not just repeat of headnotes
   b. generally do not include points of appellate procedure, unless setting or clarifying standard
   c. number if more than one (commas if two, semicolons if more than two)
   d. but, and
   e. no more than seven holdings as a general rule
   f. link holdings to appropriate headnotes on IOP

## C. POST-TEXT (8-9)

8. Mandate
   a. note distinctions (e.g., "reversed," "reversed and remanded, "reversed and remanded with directions," "reversed and rendered")
   b. if there is possibility of confusion, note whether mandate is affecting trial court or intermediate appellate court
   c. "Ordered accordingly" may be used, but should be avoided
   d. trial court mandates (Motion granted; judgment entered for defendant, etc.)
   e. dropdown feature on JWB

9. Identify concurring and dissenting judges
   a. which concurring judges to mention
   b. identify judges & if they wrote opinion
      (e.g. Johnson, J., concurred in result only.
      Johnson, J., filed opinion concurring in result only.)
   d. no need to mention judges which did not participate, except for opinions of the United States Supreme Court
   e. identify judges who join in concurring or dissenting opinions

10. "See also" references used occasionally.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040311

## SYNOPSIS—Templates

Criminal

Defendant was convicted in the [trial court, X county, judge] of [list offenses].  Defendant appealed.

The [appellate court, judge] held that:
(1) holding 1;
(2) holding 2; and
(3) holding 3.

[Mandate].
[Concurring or Dissenting Judges].

**Example:**

Defendant was convicted in the Superior Court, King County, George Finkle, J., of distribution of controlled substance. Defendant appealed.

The Court of Appeals, Johnson, C.J., held that:
(1) officers' warrantless search of vehicle in tavern parking lot following their arrest of defendant in tavern's bathroom was not a lawful search incident to arrest;
(2) exigent circumstances did not justify officers' search of vehicle; and
(3) prosecutor made improper remarks during closing argument.

Reversed.
Brown, J., filed dissenting opinion in which Lucas, J., joined.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## Civil

[Party A] brought action against [Party B] for [describe action].  The [trial court, X county, judge] [describe disposition].  [Party A/B] appealed.

The [appellate court, judge] held that:
(1) holding 1;
(2) holding 2; and
(3) holding 3.

[Mandate].
[Concurring or Dissenting Judges].

**Example:**

Owner of servient tenement filed a complaint against owner of dominant tenement to remove cloud of title to a strip of land, arguing that an easement had terminated. Owner of dominant tenement asserted a counterclaim for a declaratory judgment that a perpetual easement for ingress and egress had been created by a deed. The Chancery Court, Hancock County, Jennifer T. Schloegel, J., found that the easement was created with the intent to establish a perpetual easement for ingress and egress onto servient tenement. Owner of servient tenement appealed.

The Court of Appeals, Lee, C.J., held that:
(1) deed was ambiguous;
(2) chancellor's finding of a perpetual easement for ingress and egress was supported by substantial credible evidence; and
(3) owner of dominant tenenment failed to establish prescriptive easement.

Affirmed.
Tindell, J., concurred in result only.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040313

Summarization Training Materials
November 2020

## Variations

1. Special requirements for certain states and federal cases

2. Prior appeal; complex procedural history

3. Criminal
   a. postconviction relief/habeas corpus
   b. decision of trial court
   c. pled guilty or challenging sentence

4. Civil
   a. Third-party claim or counterclaim is focus of decision
   b. Administrative review

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040314

Summarization Training Materials
November 2020

## SYNOPSIS—Examples

Supreme Court of Texas.
DYNEGY, INC., Petitioner,
v.
Terry W. YATES, individually, and Terry W. Yates, P.C.,
Respondents.

No. 11–0541.
Aug. 30, 2013.
Rehearing Denied March 21, 2014.

**Background:** Attorney brought breach of contract and fraud claims against corporation for non-payment of attorney fees following attorney's representation of corporation's former officer. After jury trial, the 127th Judicial District Court, Harris County, Sharolyn P. Wood, J., awarded damages to attorney on the fraud claim. Corporation appealed. The San Antonio Court of Appeals, 345 S.W.3d 516, reversed judgment on fraud claim but rendered judgment for attorney on breach of contract claim. Corporation petitioned for review.

**Holdings:** The Supreme Court, Green, J., held that:
(1) corporation met initial burden to establish applicability of statute of frauds' suretyship provision to corporation's oral promise to pay attorney fees, and
(2) attorney waived argument that, under main purpose exception to statute of frauds, oral agreement was enforceable despite being an agreement to pay debt of another.

Reversed and rendered.

Devine, J., dissented and filed opinion.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040315

Summarization Training Materials
November 2020

Court of Appeals of Maryland.
OCEAN CITY, MD., CHAMBER OF COMMERCE, INC.
v.
Daniel J. BARUFALDI.

No. 77, Sept. Term, 2012.
Sept. 24, 2013.

**Background:** Former employee brought action against former employer, alleging violations of the Wage Payment and Collection Law (WPCL). Following trial, the Circuit Court, Worcester County, Thomas C. Groton, III, J., entered judgment on jury verdict for employee. Employee filed motion for attorney fees. The Circuit Court denied the motion. Employee and employer appealed. The Court of Special Appeals, 196 Md.App. 1, 7 A.3d 643, affirmed the jury's verdict, but vacated the denial of the motion for attorney fees. On remand, the Circuit Court again denied employee's request for attorney fees. Employee appealed. The Court of Special Appeals, 206 Md.App. 282, 47 A.3d 1097, reversed and remanded. Employer petitioned for certiorari.

**Holding:** The Court of Appeals, McDonald, J., held that trial court could not use factors relevant to fee-shifting scheme under Employee Retirement Income Security Act (ERISA) in determining whether to award employee attorney fees under WPCL.

Affirmed.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040316

Summarization Training Materials
November 2020

Court of Appeal of Louisiana,
Fourth Circuit.
Dr. David MILLAUD, et al.
v.
The CITY OF NEW ORLEANS.

No. 2013–CA–1152.
April 30, 2014.

**Background:** Property owners sought review of decision of board of zoning adjustments affirming decision of city's department of safety and permits that held that property lost its nonconforming use status. Neighbors intervened in action. The District Court, Orleans Parish, No. 2011–08686, Tiffany G. Chase, J., affirmed. Owners appealed.

**Holdings:** The Court of Appeal, Joy Cossich Lobrano, J., held that:

(1) intervenors were prohibited on appeal from raising the exception of prescription, and

(2) property lost its nonconforming use status due to owners' failure to complete restoration of the property and reestablish business operations within one year of the issuance of permit for electrical work on the property.

Affirmed.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040317

Summarization Training Materials
November 2020

Supreme Court of Georgia.
JOHNSON
v.
The STATE.

No. S10G0617.
June 13, 2011.

**Background:** Defendant was convicted in the Superior Court, Muscogee County, Bobby Peters, J., of armed robbery, aggravated assault, and burglary, and sentenced to life without parole on armed robbery, since it was his second such conviction. Defendant appealed. The Court of Appeals, 301 Ga.App. 423, 687 S.E.2d 663, affirmed. Defendant petitioned for writ of certiorari, which was granted.

**Holdings:** The Supreme Court, Carley, P.J., held that:
(1) counsel's failure to adequately inform defendant of plea offer was deficient performance, and
(2) deficient performance prejudiced defendant.

Reversed and remanded with directions.

Melton, J., dissented and filed opinion in which Hines, J., joined.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040318

Summarization Training Materials
November 2020

Supreme Court of Appeals of
West Virginia.
David BALLARD, Warden, Mount Olive Correctional Complex,
Respondent Below, Petitioner
v.
Brian Bush FERGUSON, Petitioner Below, Respondent.

No. 12-1028.
Submitted Oct. 16, 2013.
Decided Oct. 25, 2013.

**Background:** Following affirmance on direct appeal of defendant's conviction for first-degree murder, 216 W.Va. 420, 607 S.E.2d 526, defendant filed petition for writ of habeas corpus. The Circuit Court, Monongalia County, Phillip D. Gaujot, J., granted petition. State appealed.

**Holdings:** The Supreme Court of Appeals, Davis, J., held that:
(1) defense counsel's failure to make any independent investigation of evidence that another suspect had committed the murder was deficient performance, and
(2) defense counsel's deficient performance prejudiced defendant and, thus, was ineffective assistance of counsel.

Affirmed.

Loughry, J., dissented, with opinion, in which Workman, J., joined.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040319

Summarization Training Materials
November 2020

Missouri Court of Appeals,
Western District.
In re Ryan FERGUSON, Petitioner,
v.
Dave DORMIRE, Superintendent, Jefferson City Correctional
Center, Respondent.

No. WD 76058.
Nov. 5, 2013.

**Background:** Following affirmance of murder conviction, 229 S.W.3d 612, denial of postconviction relief, 325 S.W.3d 400, and denial of petition for writ of habeas corpus, petitioner filed an original petition for writ of habeas corpus in the Court of Appeals.

**Holdings:** The Court of Appeals, Cynthia L. Martin, J., held that:
(1) rather than seeking certiorari review of circuit court's denial of habeas relief, petitioner properly filed original habeas petition in the Court of Appeals;
(2) petitioner established "cause" element of cause and prejudice test with respect to his procedurally defaulted *Brady* claim involving police officers' undisclosed interview with the wife of State's identification witness;
(3) petitioner established "prejudice" element of cause and prejudice test based on State's failure to disclose evidence; and
(4) petitioner established *Brady* violation in State's failure to disclose evidence impeaching witness's purported ability to identify petitioner.

Writ granted.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040320

Summarization Training Materials
November 2020

Supreme Court, Appellate Division, Third Department, New York.
In the Matter of the Claim of Geoffrey PERRIN, Appellant,
v.
BUILDERS RESOURCE, INC., et al., Respondents.
Workers' Compensation Board, Respondent.

April 10, 2014.

**Background:** Worker's compensation claimant appealed decision of Workers' Compensation Board, which, among other things, ruled that home health aide services provided to claimant by his sister were reimbursable at rate of $12 per hour.

**Holding:** The Supreme Court, Appellate Division, McCarthy, J., held that claimant was not aggrieved by rate set by Workers' Compensation Board, and thus lacked standing to appeal.
   Appeal dismissed.

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040321

Summarization Training Materials
November 2020

United States District Court,
E.D. New York.
Darian TRENT, Sr., Plaintiff,
v.
TOWN OF BROOKHAVEN, Defendant.

No. 08–CV–3481(JS)(AKT).
Aug. 15, 2013.

**Background:** Discharged African-American town employee, who worked as part-time laborer in town's department of waste management, brought action against town, alleging that he was discriminated against in violation of Title VII and Americans with Disabilities Act (ADA), and asserting defamation claim under state law. Town moved for summary judgment.

**Holdings:** The District Court, Seybert, J., held that:
(1) employee was not similarly situated to full-time Caucasian co-worker;
(2) town's proffered reason for terminating employee was not pretext for racial discrimination;
(3) temporal proximity between employee's injury and his discharge, along with employee's speculation that he was discharged due to his injuries, were not sufficient to establish that town's proffered reason for terminating him was pretext for disability discrimination;
(4) employee's failure to set forth in complaint defamatory words allegedly used by supervisor warranted dismissal of defamation claim; and
(5) supervisor's alleged statements about employee's car were not reasonably susceptible to defamatory meaning.

Motion granted.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040322

Summarization Training Materials
November 2020

United States Court of Appeals,
Eleventh Circuit.
Nadine KEITH, as Administrator for the Estate of Godfrey Cook, Gary
Maddox, Willetta Gray, Plaintiffs–Appellees,
v.
DeKALB COUNTY, GEORGIA, et al., Defendants,
Thomas Brown, individually as DeKalb County Sheriff, Defendant–Appellant.

No. 13–11250.
April 23, 2014.

**Background:** Administrator of estate of pretrial detainee who was murdered
by fellow inmate in jail's mental health unit brought action against county,
county sheriff, and correctional officers, alleging under § 1983 that
defendants violated detainee's substantive due process rights. The United
States District Court for the Northern District of Georgia, No. 1:10–cv–
02590–SCJ, denied sheriff's motion for summary judgment based on
doctrine of qualified immunity. Sheriff appealed.

**Holdings:** The Court of Appeals, Tjoflat, Circuit Judge, held that:
(1) administrator failed to establish that sheriff was deliberately indifferent
with respect to officer's use of personal cell phone within jail;
(2) sheriff was entitled to qualified immunity on claim that he was
deliberately indifferent to safety of detainee with respect to housing mental
health inmates;
(3) administrator failed to show that sheriff was subjectively aware that jail's
policy of requiring officers to alert mental health staff when relocating
mental health inmates was disregarded on widespread basis;
(4) prior murder did not provide requisite notice to sheriff that training
provided to officers was constitutionally deficient; and
(5) sheriff was entitled to qualified immunity from claim that he failed to
train or supervise officers.

Reversed.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040323

## In This Issue (ITI) Slips

### Issue Slips

Issue slips are made for every state and federal opinion, including U.S. Supreme Court cases. The slips include the topic, subtopic, and headline fields of the universal summary. They embody a very short statement of the main holding in the case. Issue slips also display prominently with search results on Westlaw. They appear in the first pages of each print advance sheet, and the headline portion of the issue slip is used for Westlaw highlights and bulletins and for the Education Law Summary.

The first word of the headline is capitalized and the headline should end with a period. Verbs must be used in the headline, and contractions may not be used. The headline should generally not exceed 150 characters. Currently, due to issues with Westlaw display, neither italics nor blue popular case names should be included in the headline field of the universal summary. If you need to refer to a case name in the ITI, just use regular text.

Select a topic and subtopic from the drop-down menu.

### Main Headings

| | |
|---|---|
| Administrative Practice | Insurance |
| Agriculture | International Law |
| Antitrust | Judicial Administration |
| Bankruptcy | Labor and Employment |
| Business Organizations | Legal Services |
| Civil Rights | Litigation |
| Commercial Law | Maritime Law |
| Copyrights | Military Law |
| Criminal Justice | Native Americans |
| E-Commerce | Patents |
| Education | Products Liability |
| Energy and Utilities | Real Property |
| Environmental Law | Securities Regulation |
| Estate Planning and Probate | Social Security |
| Family Law | Taxation |
| Finance and Banking | Torts |
| Government | Trademarks |
| Government Contracts | Transportation |
| Health | Veterans |
| Immigration | |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Summarization Training Materials
November 2020

*FROM SUPREME COURT ADVANCE SHEET.*

# IN THIS ISSUE

**CRIMINAL JUSTICE—Confrontation.** Expert testimony referring to DNA profile as having been produced from semen found on victim was admissible in rape trial. Williams v. Illinois ............................................................................. 2221

—**Fines.** The rule of *Apprendi* applies to the imposition of criminal fines. Southern Union Co. v. U.S. ................................................................. 2344

—**Habeas Corpus.** Sixth Circuit erred by consulting its own precedents in determining what was "clearly established Federal law" under AEDPA. Parker v. Matthews ............................................................................. 2148

—**Sentencing.** Lenient penalties applied to defendants who committed crack cocaine offenses prior to, but were sentenced after, statute's effective date. Dorsey v. U.S. ..................................................................................... 2321

**ENERGY AND UTILITIES—Telecommunications.** Federal Communications Commission failed to provide fair notice to broadcasters about change in policy on indecency. F.C.C. v. Fox Television Stations, Inc. .............................................. 2307

**LABOR AND EMPLOYMENT—Hours and Wages.** Pharmaceutical sales representatives were exempt from FLSA's minimum wage and maximum hours requirements. Christopher v. SmithKline Beecham Corp. ........................................ 2156

—**Public Employment.** Discharged federal employees could not seek direct review in district court. Elgin v. Department of Treasury ................................................... 2126

—**Unions.** Public-sector union that imposes special assessment must provide fresh *Hudson* notice to nonmembers, who must affirmatively consent. Knox v. Service Employees Intern. Union, Local 1000 ...................... 2277

**NATIVE AMERICANS—Contracts.** Inadequacy of lump-sum appropriation to pay all contractors did not alter government's obligation to pay. Salazar v. Ramah Navajo Chapter ...................................................... 2181

—**Government.** United States waived immunity from suit challenging acquisition of land in trust for Indian tribe. Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak ..... 2199

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040325

Summarization Training Materials
November 2020

JWB Screenshot  - Note cross-references for subtopics.



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040326

## Issue Slip Examples

Bad example:

> FAMILY LAW-Child Protection:  State proved by clear and convincing evidence that parental rights should be terminated.

This is too generic.  It merely states the legal requirement and says whether the requirement was met.  It could describe any one of a thousand cases. Attorneys want facts that are similar to the facts they are dealing with. Here is a rewrite:

> FAMILY LAW-Child Protection:  Termination of mother's parental rights was warranted because of her gambling addiction.

Two more examples of issue slips that are too generic:

> CRIMINAL JUSTICE-Searches and Seizures:  Officer lacked probable cause for warrantless entry into defendant's apartment.

> CRIMINAL JUSTICE-Pleas:  Plea agreement was not constitutionally infirm.

These issue slips are appropriately precise:

HEALTH-Mental Health:  Testimony, not merely a certificate of medical examination, was required to recommit patient.

GOVERNMENT-Tobacco:  City ordinances imposing tax on tobacco products violated legislative act concerning tobacco taxation.

INSURANCE-Automobile:  Tort judgment for less than liability policy limits precluded claim for UIM benefits.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040327

# PROCEDURAL POSTURES

## I. Overview

Procedural postures represent the procedural motions, requests, and objections parties make during litigation. Common examples include a motion for summary judgment or motion to dismiss. They also include the appellate posture of the case, if applicable. This editorial enhancement will enable customers to filter Westlaw search results by the procedural posture of the case. For example, they can view only those opinions decided on appeal from a motion for summary judgment. This will allow customers to more quickly find relevant case law.

## II. Civil Procedural Postures

### A. Core Guidelines

- Add postures for any motion, request, or objection that is brought and ruled on by your court.
  - Add the posture regardless of whether there is discussion of the motion. (E.g., a simple statement of "Motion for Attorney Fees is denied" is sufficient to warrant a posture.)
  - If the court states that a motion was brought, but does not rule on it, it should not be included.
- If an appellate court refers to motions/postures from lower court proceedings, include them only IF the court addresses and disposes of them.
  - If the court merely refers to the existence of a motion or posture, like in the background section, and does not further address and dispose of it, it should not be included.
- Only select postures that were initiated by a motion, objection, or request.
  - Do not make implied, or sua sponte, postures.
  - If a civil complaint includes a request for attorney fees or an injunction, and your court rules on these things, use "Motion for Attorney's Fees" or "Motion for Permanent Injunction," even though the request was part of the original complaint, and not a separate motion.
- All appellate postures should be tagged first, followed by any trial court postures.
  - The appellate postures are listed at the beginning of the hierarchy.
  - Trial court postures can be tagged in any order.
- Be sure to capture all levels of appellate posture.
  - While adding "On Appeal" once is sufficient if the case has been appealed more than once, a case from a Supreme Court may also warrant a "Petition for Discretionary Review" or "Petition for Writ of Certiorari" posture.
- When deciding between two postures, choose the more specific posture.
  - For example, choose "Motion to Dismiss for Failure to State a Claim" rather than "Motion to Dismiss" if your court is deciding a motion under Fed. R. Civ. P. 12(b)(6).
- Keep an eye out for postures especially in the last paragraph of an opinion. Often, courts address issues like attorney fees or costs at the very end of an opinion. If the court makes a ruling based on a request or motion, even without discussion, choose the applicable posture.

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040328

- Do not include postures for awards of costs or fees in the mandate, unless supported by language indicating that a motion or request for costs was made.

## B. Additional Guidelines

- **"Judgment" posture:** for purposes of this project, a "judgment" is rendered when a particular issue is entirely disposed of and the clerk is to enter a judgment so the prevailing party can collect (where appropriate).
  - Granting a petition, or granting or denying a motion, such as a motion for summary judgment, is generally not a "judgment."
  - Entering an order is generally not a "judgment," unless it is an order to the clerk to enter the judgment.
- **"Judgment" and "Summary Judgment" postures**: these postures are not typically used together.
  - Do not select both of these postures when your court is addressing only summary judgment.
  - You may select both of these postures when an appellate court is addressing a trial court's handling of both a motion for summary judgment and entry of judgment following a trial (rare).
- **"Review of Administrative Decision" posture**: this posture should be used when a court is reviewing a decision of an administrative agency, like a workers' compensation board, or deciding a challenge to federal agency action under the Administrative Procedures Act.
  - Use the "Review of Administrative Decision" posture even if the court decision on the initial review is labeled an "appeal."
  - Use both "On Appeal" and "Review of Administrative Decision" if there is a lower-level court case that reviews an administrative decision, and the lower court decision is then appealed to a higher court.
- **"Summary Disposition" postures:** We have "Motion for Summary Disposition" lines under Motion to Dismiss, Motion for Summary Judgment, and Motion for Judgment on the Pleadings, which can be used for cases from Michigan and other states that have motions for summary disposition. If you can't determine what kind of motion it is, please check with a revisor.
- **"Motion for Reconsideration" posture:** this posture should be used in all cases that indicate that a party has filed a motion for reconsideration, and the court makes a decision on that motion for reconsideration.
  - This posture applies even when the issuing court focuses on a party's right to relief with respect to the underlying motion, rather than focusing on whether the party was entitled to reconsideration of the initial decision.
- **"Original Jurisdiction" posture:** there are only two areas where this posture applies. First, U.S. Supreme Court cases involving suits between states as parties, usually over territorial or water rights disputes (very rare). Second, there are specialized federal and state courts with original jurisdiction over specific types of matters.
- **Attorney discipline and judicial discipline:**
  - For attorney discipline cases, use "Proceeding on Attorney Discipline."
  - For judicial discipline cases, use "Proceeding on Judicial Discipline."
  - While the opinion you are working with may have been issued by an appellate-level court, do not add "On Appeal" unless you are in a state where an attorney or judicial officer can appeal from a discipline decision.
- **"Other" posture:** please e-mail Jeff Willhite every time you select the "other" posture, including the serial number and the specific motion at issue so that

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040329

posture selections can be reviewed for consistency and new postures can be created.

**C. Jurisdictional Considerations**

- **Procedural postures are not being added to the following case types**
  - Military Justice
  - Patent Trial and Appeal Board (PTAB)
  - Merit System Protection Board (MSPB)
  - Mandate-only cases from New York or Ohio
- **Bankruptcy Postures:** Bankruptcy cases are handled by the Bankruptcy Law Specialty Team.  If you get a bankruptcy case, see Brian Ahrens to have it reassigned to a bankruptcy team member.
- **Admiralty Postures:**  These postures are in the civil filter, with the notation (ADM).
- **Tax Court Posture:**  The "Tax Court petition" posture is in the civil filter, with the notation (FTX).  This posture should only be used in U.S. Tax Court cases.
- **Louisiana-specific Postures**: these are currently available in the civil hierarchy and are followed by the notation (LA).

## III.   Criminal Procedural Postures

### A. Core Guidelines

- Unless an exception applies, select postures based on the stage of the proceeding that an issue was raised by a motion, objection, or other request of a party.
  - Do not add a posture if you are unsure whether the issue was raised in the trial court or if you know that it was not raised in the trial court.
  - Do not add a posture if the court does not make it clear at what stage of the proceeding the issue was raised.
- Use "Appellate Review" as the first posture for any appeal or direct review of a lower court decision (e.g. petition for writ of certiorari, petition for discretionary review, etc.)
- Use "Post-Conviction Review" for any collateral review of a conviction, like a habeas proceeding.
  - For appeals of post-conviction review proceedings, use "Appellate Review" and "Post-Conviction Review," in that order.
  - "Post-Conviction Review" is exclusive of all other postures, except "Appellate Review."
- Due to their unique nature, "Plea Challenge or Motion" and "Jury Selection Challenge or Motion" should be used whenever a corresponding motion, objection, petition, or request is made at any stage in the trial court in a criminal case.
- Except for sentencing issues on post-conviction review, the "Sentencing or Penalty Phase Motion or Objection" posture should be used for motions, objections, or requests made in the trial court, regardless of the stage of the proceeding in which the sentencing issue was raised.
- Only select postures from the criminal list.
- Do not use "Other" in criminal cases.

### B. Additional Guidelines

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040330

- It is acceptable to have only "Appellate Review" as a posture on a case if you cannot determine whether a motion, objection or request was made at the trial level.
- Sex offender issues generally go to sentencing or commitment, but can come up at other stages of the trial.
- In cases where you can determine that a motion, objection, or request was made in the trial court, anything that would be treated as a sentencing issue (e.g., would classify to 350H Sentencing and Punishment), such as a motion for reduction of sentence, should receive the "Sentencing or Penalty Phase Motion or Objection" posture.
- For juvenile delinquency proceedings, use only "Juvenile Delinquency Proceeding" and "Appellate Review," if applicable. Don't include any other postures.
- Use the "Expungement Proceeding" posture for petitions for certificate of innocence.
- The postures for Expungement Proceeding, Commitment Proceeding, and Forfeiture Proceeding are exclusive.  Don't include any other postures when choosing these selections.

### C.  List of Criminal Postures

 *  *The example motions below reflect the stage of the trial in which they typically appear. If a motion occurs at a different stage of the trial, add the posture reflecting that stage of the trial. Note that some postures apply at any stage of the proceedings.*

1. **Bail or Custody Motion** (e.g., motion to reduce bail)
2. **Plea Challenge or Motion** (e.g., motion to withdraw guilty plea; **made at any stage of the criminal case**)
3. **Preliminary Hearing or Grand Jury Proceeding Motion or Objection**
4. **Pre-Trial Hearing Motion**
     a.  Common pre-trial motions include:
     o  Motion to dismiss
     o  Motion to suppress
     o  Motion for change of venue
     o  Discovery (*Brady*) motions
     o  Motion for continuance
     o  Competency to stand trial
5. **Jury Selection Challenge or Motion** (any challenge to jury selection or composition, **made at any stage of the criminal case**)
   **E.g.,** *Batson* challenge
6. **Trial or Guilt Phase Motion or Objection**
     Includes opening statements, witness testimony, admission of evidence, closing argument, jury instructions, jury deliberations, verdict, and substitution of counsel during trial
7. **Post-Trial Hearing Motion**
   Common post-trial motions include:
     o  Motion for new trial
     o  Motion for judgment of acquittal
     o  Motion for JNOV
8. **Sentencing or Penalty Phase Motion or Objection (made at any stage of the criminal case,** *except when treated as a motion for post-conviction relief)*
   Includes post-sentencing modifications (resentencing), restitution, revocation of supervised release, and sentencing enhancements
9. **Appellate Review**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040331

Includes direct appeal, petition for writ of certiorari, petition for discretionary review, and *Anders* brief as a motion to withdraw as counsel

10. **Post-Conviction Review (exclusive of all other postures,** *except Appellate Review*)
Includes habeas relief, motion to vacate conviction, Sec. 2255 motion to vacate, and post-conviction discovery

11. **Expungement Proceeding (exclusive of all other postures)** (includes petitions for certificate of innocence)

12. **Juvenile Delinquency Proceeding (exclusive of all other postures,** *except Appellate Review and Post-Conviction Review*)

13. **Commitment Proceeding (exclusive of all other postures)** (both a criminal and civil posture; includes sex offenders)

14. **Forfeiture Proceeding (exclusive of all other postures)**

## IV. Family Law Procedural Postures

### A. Core Guidelines

- Only select postures initiated by a motion, objection, or request.
- Tag appellate postures first, followed by trial court postures.
- Use appellate postures from civil hierarchy.
- Civil postures supplement family law postures.
- Favor family law postures over civil postures.
- Choose the most specific posture applicable.
- Juvenile delinquency proceedings classify to the criminal posture "Juvenile Delinquency Proceeding."
- Include postures for collateral requests for property division, spousal support, and child custody when a party files a petition for divorce so long as those requests are ruled on by the court.
- If the issue on appeal is tangential to the underlying action, such as a motion to intervene or a motion for change of venue, don't include a posture for the underlying petition if it is not discussed and ruled on by the appellate court.

### B. Temporary v. Permanent Alimony

- Look to timing of request and length of award.
- Assume the alimony is temporary if:
  - the request was made during the pendency of the divorce proceeding to support the non-monied spouse during the proceeding,
  - the court awarded alimony for a finite period of time to allow the non-monied spouse to get back on his or her feet (rehabilitative alimony),
- Assume the alimony is permanent if the court awarded alimony until the monied spouse retired or the non-monied spouse remarried.

### C. Neglect and Dependency Proceedings

1. Labels for petitions and motions may differ from state to state, especially in neglect and dependency proceedings.
   1. Indiana: Children in Need of Services (CHINS)
   2. Louisiana: Child in Need of Care (CINC)
   3. Minnesota: Child in Need of Protection or Services (CHIPS)

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

TR-0040332

Summarization Training Materials
November 2020

4.   Montana: Youth in Need of Care
5.   New Jersey:  refers to parents "charged" with "abuse or neglect."  Includes "Title 9" proceedings.
6.   New York:  Administration for Children's Services (ACS)
7.   Vermont: Child in Need of Care or Supervision

## V. Hub Pages

Check out the Hub pages below for additional guidelines and FAQs regarding the postures.

- Civil Postures: https://thehub.thomsonreuters.com/docs/DOC-2679840
- Criminal Postures: https://thehub.thomsonreuters.com/docs/DOC-2675706
- Family Law Postures: https://thehub.thomsonreuters.com/docs/DOC-2791213

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040333

## KEYCITE FOR STATUTES—In General

Editors must add negative KeyCite treatment to federal, state, and District of Columbia statutes and regulations, United States Sentencing Guidelines, or state constitutional provisions when they are found to be unconstitutional, preempted, or otherwise invalid by a case being headnoted. Adding the treatment will cause a flag to be placed on the affected provision on Westlaw, to alert our customers that it may no longer be good law.

In addition to creating KeyCite flags, adding such history creates a feature, called "West Codenotes," that will appear following the headnotes on Westlaw and in print.

West Headnotes (1)



1   Costs 👉 Constitutional and Statutory Provisions
    Costs 👉 Effect of Statutes
    Retroactive application of attorney fee provision of the Tort Reform Act, to cause of action accruing prior to effective date of the Act, violated the retroactive laws provision of the Georgia Constitution.
    West's Ga Const Art 1 § 1 Par 10; **West's** Ga Code Ann § 9-11-68(**b**)(**1**).

    4 Cases that cite this headnote

**West Codenotes**

**Limited on Constitutional Grounds**
West's Ga Code Ann § 9-11-68(**b**)(**1**)

---

**MIKESELL v. RP MOTORSPORTS, INC.**   Ga. 535
Cite as 660 S.E.2d 534 (Ga. 2008)

torney fee provision of Tort Reform Act violated the Georgia Constitution.

Reversed.

**Costs ⬅4, 194.22**

Retroactive application of attorney fee provision of the Tort Reform Act, to cause of action accruing prior to effective date of the Act, violated the retroactive laws provision of the Georgia Constitution. West's Ga.Const. Art. 1, § 1, Par. 10; West's Ga.Code Ann. § 9-11-68(b)(1).

---

West Codenotes

**Limited on Constitutional Grounds**
West's Ga.Code Ann. § 9-11-68(b)(1)

of the Tort Reform Act of 2005. Appellant contends that this provision violates Art. I, Sec. I, Par. X of the Georgia Constitution as applied because it is a retroactive application of law which alters vested rights. We agree. See *Fowler Properties v. Dowland,* 282 Ga. 76(1), 646 S.E.2d 197 (2007). Consistent with our recent decision in *Fowler,* OCGA § 9–11–68, which was not effective until February 2005, cannot constitutionally be applied to appellant's cause of action which accrued in September 2002 and for which a legal complaint was filed in February 2003. Our conclusion that OCGA § 9–11–68 is unconstitutional "renders it unnecessary to pass upon the other ground[s] of attack upon the constitutionality of this act." *Floyd County v. Scoggins,* 164 Ga. 485, 490, 139 S.E. 11 (1927).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040334

Codes editors review the KeyCite treatments as they are loaded to Westlaw and may change the treatment you choose. Also, a treatment originally entered by a Cases editor may be downgraded programmatically or manually due to subsequent events, such as an amendment to the statute.

# KEYCITE FOR STATUTES—Guidelines

## Multiple Treatments:
If the court has more than one treatment to a particular statute, the editor must choose which treatment to make. Presently KeyCite can accept only one treatment for each statute section separately displayed on Westlaw. Any primary reference (such as "Held Unconstitutional" or "Negative Treatment Reconsidered") should be made before any recognizing reference. If there are multiple primary references, make the one that is strongest, in accord with the definitions in KeyCite for Statutes: Statutory Treatment Codes.  Similarly, the editor must make only one codenote if the court treats different subsections of a statute differently. Again, choose a primary reference over a recognizing reference. (If the treatment you are not making is a "recognizing" type reference, e-mail the information to the Cases-Codenotes email group for possible manual entry of the original history.)

## Citation Style:
The statutes must be put in the correct TR style in the Codenote, so the statutes are recognized, and the KeyCite flags are generated, as your features are loaded to Westlaw. If you put a treated statute in non-TR style, there is the potential that no KeyCite flag will be generated, or that the flag will be generated for the wrong statute or constitutional provision. (Note that KeyCite errors generate more customer complaints than any other feature we create.)

## Prior Versions:
If the court is treating or recognizing treatment of, a former version of a statute, you must cite to the current version of the statute in the codenote, with no reference to any year in the citation. Then, to show that a former version is at issue, choose one of the "prior version" treatments from the list of treatment codes.

## Recognizing References:
Do not make a "recognizing" reference if the citation to the affected provision is not included in your case. Some customers have been confused by the fact that KeyCite flags are generated by cases that do not contain citations to the affected statutes. E-mail these instances to the Cases-Codenotes email group in case there is a reason to make the underlying direct treatment.

## Corrections/Superseding  Opinions:
If a case you previously headed comes back with corrections or amendments that affect any of your statutory treatments, e-mail the changes to the Cases-Codenotes email group.

If you get a superseding opinion, you have to recreate any Codenotes that were in the original case. If there are any changes to the statutory treatments in the original opinion, e-mail those changes to the Cases-Codenotes email group.

## Undoing Negative History:
If you have a case which vacates, reverses, overrules or otherwise undoes a prior statute treatment, inform the Cases-Codenotes email group, in addition to creating a "Negative Treatment Reconsidered" or "Negative Treatment Vacated" codenote.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040335

## Magistrates' Recommendations:

If a magistrate, in a report and recommendation that has not been adopted, holds a statute unconstitutional, the proper treatment term is "Validity Called Into Doubt."

# KEYCITE FOR STATUTES—Unconstitutional As Applied

Usually, if the court's ruling of unconstitutionality is "as applied," it will use those words. If the court does not use those words, there is a presumption that "Held unconstitutional by" will be the correct treatment. In rare instances, the ruling will be "as applied," even though the court did not use those words.

Generally, an "as applied" ruling is based on the specific facts of the case, while a facial challenge is based on an aggregate of unconstitutional applications or a defect in the terms of the statute itself. If the question is whether the statute is unconstitutional as applied to a particular individual, entity or situation, the ruling is "as applied."

1. Holdings based on special legislation, single subject, separation of powers, Fourteenth Amendment enforcement powers could not be "as applied."

2. A holding that a statute could not be validly enacted under a constitutional provision or was not a proper exercise of the legislature's power under a provision could not be "as applied."

3. An overbreadth holding would be facial, as would a due process "lack of reasonable relationship" holding.

4. Rulings that a statute is void, invalid, void ab initio, or struck down could not be "as applied."

5. Analysis as to whether an unconstitutional provision is severable from the rest of the act would indicate that the provision was void, invalid, void ab initio or struck down.

6. Vagueness can be facial or as applied.

7. Ex post facto and impairment of contract rulings tend to be as applied.

8. A court can overturn a conviction because the statute cannot be constitutionally applied to defendant. That would generate a treatment. If the court overturns a conviction, mentioning constitutional considerations, but declining to use a form of the word "apply," consider whether you might nevertheless have an "unconstitutional as applied" treatment for the statute of conviction.

9. A statute which is unconstitutional on its face is unconstitutional in all its applications. Thus, if there remain constitutional applications, you probably have an "unconstitutional as applied" treatment.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040336

# KEYCITE FOR STATUTES—JWB Functionality

1) To create a KeyCite for Statutes reference in JWB:

a) Position the cursor on the statute citation in the opinion.

b) Right click and choose Create Codenote

c) Choose the appropriate treatment phrase from the list provided.

d) Edit the style of the statute citation if necessary and expand any ranges of section numbers in the dialog to allow recognition of the citation by the system. (See below). The full code citation must be used (i.e. if just § 2000e appears in the Codenote, change it to 42 U.S.C.A. § 2000e).



e) Click Ok. The reference will appear as a new paragraph at the bottom of the window containing the editorial features for the case. If multiple references are created in the same case, a separate paragraph for each treatment phrase will be created with all the statutes given that treatment listed together below the phrase.

2) **Do not list a range of statute sections in a code note**, such as §§ 16-20. If you do that, flags will be generated only on § 16 and § 20. Instead, list each discrete section, separated by commas, such as §§ 16, 17, 18, 19, 19a, 20. Similarly, "et seq." should not be used in a codenote to designate multiple sections. List each affected section. A quick look at Westlaw should disclose the breakdown of the sections.

3) The citation must be in a style recognized by our cite recognition program to get picked up for KeyCite, and the full citation must be used. Because the Codenote will appear in our print products, the statute should be put in our TR style. For bad cites, refer to the Editorial Manual, the style sheet, a revisor, or your manager to determine the correct style and edit the citation accordingly in the dialog box.

4) Federal statute citations should not include the popular name (if any) of the act.

5) The Codenote citations should designate the relevant subsections if merely a portion of a statute is affected.

6) If, after you have completed a case, you find you neglected to make a treatment, you can still make the reference on JWB.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040337

## KEYCITE FOR STATUTES—Troubleshooting

1. No citation. If a case directly treats a statute, etc., but does not include the citation for it, you should attempt to look it up on Westlaw. If you have any question about the correct cite, check with a revisor. If an opinion recognizes that another case has treated a statute, but does not include any citation for it, do not make a "recognizing" treatment. Rather, e-mail the Cases-Codenotes email group the case number and the pertinent language of the case, and they will decide whether to add a direct treatment to the original case.

2. Insufficiently particular citation. If the court gives you only an et seq. citation or a range, but you suspect, and confirm from a single quick WL search, that only particular sections are affected, include only the affected sections in the code note. If you are uncertain what particular sections are affected, and cannot settle the issue in a single quick WL search, check with a revisor.

3. Range expansion. If the court holds an entire series of provisions unconstitutional, preempted, or otherwise invalid, you must list each individual affected provision in the code note. If you cannot determine the affected provisions from a quick WL search, check with a revisor.

4. Uncodified laws. If the case invalidates a ballot measure, initiative, public act, session law, house bill, or other similar enactment, you must list the corresponding statutory codification in the codenote. Consult a revisor or e-mail Codes, and they should be able to provide you with a proper cite. If the provision is one that will not be codified, such as an appropriations measure, a codenote should still be made, referring to the bill, public act, or other provision.

5. Courtesy calls: If a case being headnoted has some potential impact on a statute, etc., that is not captured by a code note, let a revisor know so Codes may be alerted. For example, if the court says it is "correcting" an obvious typographical error in the statute, you would likely make no reference, but should let your manager know. Or if a court says there is a transcription error on one of our products or (even better) a competitor's product.

## KEYCITE FOR STATUTES—Treatment Codes

### RED FLAG TREATMENTS

(In descending order of strength)

HELD UNCONSTITUTIONAL BY: The court holds a state statute unconstitutional under state or federal law, a federal statute unconstitutional under federal law, or a state constitutional provision unconstitutional under federal or state law. This treatment would apply most often when the court holds a statute unconstitutional on its face. It would also apply where the court strikes down a constitutional amendment or statute because of some irregularity in its enactment. This treatment should be used when the court says a provision is both unconstitutional and preempted. This treatment should not be used if the court holds that the statute is unconstitutional as applied.

PREEMPTED BY: The court holds that a state statute, a right of action under a state statute, or a constitutional provision is preempted (literally or effectively under the Supremacy Clause) by federal law (rule, regulation, statute, constitution, or even treaty). The essential nature of the ruling is that the state statute cannot operate here, because of the constitutional supremacy of federal law. "Preempted" should be used when the provision or cause of action is completely preempted. "Limited on Preemption Grounds" should be used when the provision or cause of action remains

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040338

viable in some circumstances. A court may say a statute is preempted or superseded, but only mean it as a matter of statutory construction, such as when a more particular statute is said to supersede or preempt a more general one. Make no reference in that case. This treatment will usually be supported by the court's use of some form of the word "preempt." It is not, however, a necessary condition of the treatment. If the essential nature of the ruling is that the state provision cannot operate because of the primacy of federal law, you should make the treatment. If the court says "federal law would preempt any state requirement that..." and you can pinpoint from the case a state statute with that requirement, make the reference. Use this reference if the court says the provision is "preempted as applied." Use this reference if a state statute is said to be "superseded" or the like, by an Interstate Compact.

UNCONSTITUTIONAL AS APPLIED BY: The court holds a statute unconstitutional as applied to the facts of the particular case. If the court does not use a form of the word "apply," you should still use this reference if the essence of the court's ruling is that the statute is unconstitutional as applied rather than on its face. If the court rules that a statute is unconstitutional both on its face and as applied use "held unconstitutional by." Use "limited on constitutional grounds by" when the court narrowly construes a statute to avoid a conflict with a constitutional provision. See KeyCite for Statutes: "As Applied" Rulings for distinguishing facial from "as applied' rulings."

HELD UNCONSTITUTIONAL AS NOT SEVERABLE: If the court holds one section unconstitutional, and then holds the rest of the sections of the enactment unconstitutional as not severable, you should make this reference for those other sections.

HELD INVALID: This will typically be used when a court holds a regulation invalid as violating its enabling statute or as improperly promulgated. It may, in rare instances, be used for statutes if they are invalidated for a reason other than constitutionality or preemption.

RECOGNIZED AS REPEALED BY IMPLICATION: The court notes that a statute has been repealed by implication. The essential nature of the ruling is that the operation of a statute is cut back by the subsequent passage of a statute covering the same area. This is to be distinguished from the situation where the operation of a general statute is cut back by a more specific statute (the more specific statute may have even been the first one enacted). That situation generates no reference, even though the court uses such terms as "supersedes," "preempts," or "overrides." The reference should be used primarily when the court uses a form of the words "repeal" and "imply" but can be used where it is clear that that is the essential nature of the ruling.

RECOGNIZED AS UNCONSTITUTIONAL BY: The court notes that some court has found a statute or other provision unconstitutional. This treatment would apply whether that prior ruling was facial or as applied. Do not make the reference if the court actually disagrees and finds the statute is constitutional. This reference may be used when a court in one state notes that a court in another state has found a statute in that other state unconstitutional.

RECOGNIZED AS PREEMPTED BY: The court notes that some court has found a statute or other provision preempted. Do not make the reference if the court actually disagrees and finds the statute not preempted.

RECOGNIZED AS INVALID: The court notes that some court has found a regulation, or some other provision, invalid. Do not make this treatment if the court disagrees and finds the provision valid.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040339

## YELLOW FLAG TREATMENTS

(In descending order of strength)

LIMITED ON CONSTITUTIONAL GROUNDS BY: The court narrowly construes a particular provision to avoid a federal or state constitutional conflict. This reference should itself be narrowly construed. No reference is made if the court narrowly construes a statute for other non-constitutional reasons. It should only be used where the court narrowly construes language to not apply when, on its face, it seems to, in contrast to where the court declines to expansively construe a provision to apply beyond its literal language. This reference may be used if the court rules that a statute may not be applied retrospectively, due to constitutional concerns. It should not be used when the court declines to apply a statute retrospectively, based on a finding that its requirements are procedural.

LIMITED ON PREEMPTION GROUNDS BY: The court narrowly construes a statute to avoid preemption, or holds a state provision preempted only insofar as it relates to a federal area, leaving the provision operable in a purely state context.

VALIDITY CALLED INTO DOUBT: Mainly, this reference is to be used when the court notes that a statute might be unconstitutional or preempted, but, for whatever reason, the court does not decide the question. This reference may also be used when the court issues a preliminary injunction against enforcement of a statute, when only a plurality believes a statute is unconstitutional or preempted, or when the court holds a statute superseded or preempted by a rule or another statute in such a way as to be totally inoperable. Do not use this reference, or any other, when the court rules only that a complaint states a claim of unconstitutionality or preemption.

LIMITATION RECOGNIZED BY: The court notes that the statute has been narrowly construed to avoid a constitutional conflict.

UNCONSTITUTIONAL AS NOT SEVERABLE FROM PRIOR VERSION: When an unconstitutional section is amended, this treatment will, in theory, be used by Codes editors to downgrade to yellow the flag on sections which were previously red-flagged as unconstitutional as not severable.

PRIOR VERSION HELD UNCONSTITUTIONAL BY: This treatment should be used where the court holds that a prior version of a provision (which for some reason applies instead of the current version) is unconstitutional. If the court notes that some court found a prior version unconstitutional, use "prior version recognized as unconstitutional by."

PRIOR VERSION PREEMPTED BY: This treatment can be used when a court holds that a prior version of a provision (which for some reason applies instead of the current version) is preempted. If the court notes that some court found a prior version preempted, use "prior version recognized as preempted by."

PRIOR VERSION HELD UNCONSTITUTIONAL AS APPLIED BY: This treatment can be used when a court rules that a prior version of the provision (which for some reason applies instead of the current version) is unconstitutional as applied.

PRIOR VERSION HELD UNCONSTITUTIONAL AS NOT SEVERABLE: When a provision previously held unconstitutional as not severable is amended, this treatment applies.

PRIOR VERSION RECOGNIZED AS REPEALED BY IMPLICATION: The court notes that some court has found the prior version of a statute to be repealed by implication.

PRIOR VERSION RECOGNIZED AS UNCONSTITUTIONAL BY: The court notes that some court has found a prior version of the statute or state constitutional provision unconstitutional (or that the statute was found unconstitutional and later amended).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040340

PRIOR VERSION RECOGNIZED AS PREEMPTED BY: The court notes that some court has found a prior version of the statute preempted.

PRIOR VERSION LIMITED ON CONSTITUTIONAL GROUNDS BY: The court narrowly construes a prior version of a statute to avoid a constitutional issue.

PRIOR VERSION LIMITED ON PREEMPTION GROUNDS BY: The court narrowly construes a prior version of a statute to avoid preemption.

PRIOR VERSION HELD INVALID: The court holds the prior version of a regulation or other provision invalid.

PRIOR VERSION RECOGNIZED AS INVALID:  The court notes that some court found a prior version of a regulation or other provision invalid.

PRIOR VERSION'S VALIDITY CALLED INTO DOUBT BY: The court questions whether a prior version of the statute might have been unconstitutional or preempted.

PRIOR VERSION'S LIMITATION RECOGNIZED BY: The court recognizes that a prior version was narrowly construed to avoid a constitutional issue.

NEGATIVE TREATMENT RECONSIDERED BY: This reference is used when a case reverses, vacates, overrules, or abrogates another decision that held provision unconstitutional, preempted, or otherwise invalid and finds that the provision is in fact valid.  In addition to making a "negative treatment reconsidered" code note for the now-valid provision in the case being headnoted, send an e-mail to the Cases-Codenotes email group, so that the KeyCite flag generated by the previous decision can be adjusted.

NEGATIVE TREATMENT VACATED BY:  This reference is used when a case reverses, vacates, overrules, or abrogates another decision that held a statute, etc., unconstitutional or invalid, but does not pass on the constitutional issue.  In addition to making a "negative treatment vacated" code note for the affected provision in the your case, send an e-mail to the Cases-Codenotes email group, so that the KeyCite flag generated by the previous decision can be adjusted.  If an opinion you are heading recognizes that a decision treating a provision has been vacated without passing on the constitutional issue, e-mail Cases-Codenotes so that the underlying treatment can be added.

UNCONSTITUTIONAL AS REENACTED: This reference will only be used by Codes editors.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040341

## CRIMINAL LAW

### Wrongfully obtained evidence

Indicate whether search or arrest was lawful, valid, reasonable, or violated Fourth Amendment, not whether evidence was admissible, if at all possible.

If there is genuine issue about suppression, make it in separate headnote, indicating the unlawful conduct, e.g., "Use of overbroad search warrant required suppression of drugs seized in search pursuant to that warrant," not "Drugs illegally seized were required to be suppressed."

Suppression points are procedural, often requiring procedural context, while lawfulness of police conduct points are not, and don't require that context.

Identification points—Often the point is the effect of an unlawful pretrial identification on some subsequent ID, either pretrial or in-court—If so, the point should so indicate.

Indicate offense in short manner,

E.g., photographic ID of defendant as robber was not so suggestive as to require exclusion of subsequent in-court ID, where victim had opportunity to view robber for ten minutes in good lighting during crime.

### Error/Abuse of Discretion

Try to avoid trial court erred/abused its discretion in . . . .

E.g., Trial court abused its discretion in denying defendant's motion for severance—Should be Defendant was entitled to severance of her murder trial from codefendant's trial.

### Severance

Indicate what is being severed—Defendants, indictments, charges, counts—follow language, picking that which is most precise.

Sometimes court use whether joinder was initially proper as a ground for severance—maintain distinction.

### Speedy Trial

Make separate points for factors that are separately discussed.

May also make a summary type point in addition to the "factors" points

Prejudice as factor. Delay did not prejudice defendant—need to add, "and thus did not violate defendant's constitutional right to speedy trial."

Indicate the basis of the speedy trial issue, state or federal constitutional right, statute, or rule.

## Admissibility of Evidence

Describe evidence somewhat precisely.

Indicate ground of admission or objection—relevant to show motive.

Indicate whether evidence was admissible or inadmissible.

Indicate crime(s)—This often may be done in shorthand manner, and is unnecessary if crime is apparent from headnote.

Avoid error/ abuse of discretion language.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040342

## Preservation and Other Appeal Points

What precisely did defendant do/not do to preserve issue for review—failed to file motion for new trial, did not object, objection on relevancy grounds did not preserve hearsay claim.

Although it is often helpful to mention the type of crime, the headnote doesn't need to be so precise—murder, instead of first-degree murder using deadly weapon in cruel manner within 1 mile of public elementary school.

Harmless Error

Clearly indicate what the error was—"Violation of confrontation clause in admitting hearsay was harmless," not "Error in admitting hearsay was harmless."

Distinguish between "Error was not harmless" and "Conduct was reversible error"— The former resolves a single legal issue, assuming that there was error, while the latter makes two points, both that there was error and that the error was not harmless.

Plain error--make clear

Don't just say "Error did not infringe on defendant's substantial rights"; add "and thus was not plain (or was harmless) error"—The tests vary from state to state, and it isn't always clear whether court is talking about plain or harmless error.

## Characterization of Offense Charged

Degree of specificity depends on type of headnote.

Robbery, murder, or even just homicide is often sufficient in procedural points, such as preservation of error or discovery headnotes.

In headnotes listing elements of offense, be precise in describing the offense. This is where it may be relevant to indicate that offense is "first-degree murder using deadly weapon in cruel manner within 1 mile of public elementary school."

Try to avoid starting out headnote with "In prosecution for . . . .,"

If the "in prosecution for" language is necessary, it can generally be used later in the headnote.

Try to avoid using "Third-degree battery defendant" as a means to characterize the crime

Many mistakes result from using burglary instead of robbery, or the reverse. Please be careful in characterizing the crime.

## Sentencing

### Guidelines

Be precise, departure, offense level adjustment, base offense level

Often, court uses enhancement.

Indicate what issue is involved—e.g., dual use of guidelines factor, grouping.

Guideline applicable—indicate what guideline is applied, what is the offense of conviction, and what guideline the unsuccessful party wanted applied, e.g., "Fraud Sentencing Guideline, rather than Guideline for perjury, applied in sentencing defendant convicted of making false statement under penalty of perjury in bankruptcy proceeding."

Cites to Guidelines—be precise.

If court (or headnote) is unclear as to issue involved, we can look up cited guideline to give a clue, e.g., 2F1.1 commentary n. 11, which allows upward departure in

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040343

Summarization Training Materials
November 2020

sentencing for fraud if amount of loss does not capture the seriousness of the offense.

Death Penalty

Indicate that headnote involves death penalty, even in abstract aggravating or mitigating circumstance points.

Indicate offense if not obvious from context—not needed where obvious, such as when aggravating factor is that "murder was especially heinous."

Concrete procedural points also need death penalty context.

Headnotes indicating whether the death penalty is excessive or disproportionate or excessive in a given case should state the pertinent aggravating and mitigating circumstances. If there are many factors, pick out the most important.

Habitual Offender

Indicate in headnote the type of sentence: "Sentence of 30 years imposed on defendant convicted of robbery as second offender was not excessive."

Conviction qualifies under Habitual Offender Law—indicate whether conviction qualifies as predicate offense or as offense of conviction.

Procedural points—indicate that proceeding is habitual offender proceeding, not just sentencing proceeding.

Probation

Excessiveness of sentence—state that sentence was imposed upon revocation of probation, if that is the case.

Condition points should so state, e.g., restitution imposed as condition of probation was valid.

Be careful not to use parole instead of probation, or probation instead of parole.

## Postconviction Relief/Habeas Corpus

Procedural points should disclose where the default occurred, the nature of the Default, and the result of the default—that claim could not be raised in second habeas proceeding.

Be clear on issue, whether conduct is ground for postconviction relief, whether conduct violates due process, or both.

Harmless error—often means habeas relief or postconviction relief.

Motion to vacate under 28 U.S.C.A. 2255 is not a habeas corpus proceeding, but, rather, is a motion to vacate, or a postconviction relief motion.

## Instructions

Substance, not instruction, if that is the point, e.g., instruction was correct statement of the law, e.g., if the opinion states that instruction correctly stated that the degree of proof in criminal cases is proof beyond a reasonable doubt, the headnote may state: "Proof beyond a reasonable doubt is the degree of proof required in a criminal case.

If the issue is the wording of the instruction, or the necessity of giving a requested instruction, though, instruction language should be included in headnote, e.g.: "Defendant was not entitled to requested instruction defining beyond a reasonable doubt as belief beyond moral certainty, where instruction given by court used substantially the same language."

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040344

"Instruction defining beyond a reasonable doubt as belief without using 'moral certainty' language was sufficient, where later instruction required 'abiding conviction.'"

"Defendant charged with first-degree murder was not entitled to charge on lesser-included offense of third-degree jaywalking, where evidence indicated that perpetrator intentionally crossed street toward victim and shot him in chest, and only dispute was whether defendant or his identical twin shot victim."

## Ineffective Assistance of Counsel

1. Cite the Sixth Amendment in ineffective assistance points, unless it's absolutely clear the court is applying only state law.

2. Familiar abstract points citing to *Strickland* may be regarded as trite. That is, generally do not pick these points up except in cases from state high courts, the federal courts of appeals, or the United States Supreme Court.

3. With the *Strickland* test, it is best to think of the words "counsel was ineffective" as embracing both deficiency and prejudice. Thus, "counsel was deficient in..." means half the test is satisfied, while "counsel was ineffective" ordinarily means a Sixth Amendment violation is established.

4. If the ineffectiveness claim is based on counsel's conduct with regard to alleged trial court error, and the court resolves the claim by saying there was no such error, write the headnote to that underlying claim, and make no mention of counsel.

Example: Defendant claims that he received ineffective assistance of counsel as a result of trial counsel's failure to object to the admission of photographs depicting the victim's headless corpse. The defendant claims the photographs should have been excluded because they were unduly gruesome. We reject such arguments. The trial court properly weighed the relevance of the photographs, to show the crime scene and the manner of the killing, against their gruesomeness, and correctly concluded that their probative value was not substantially outweighed by the danger of unfair prejudice.

Headnote: Probative value of photographs depicting victim's headless corpse, to show crime scene and manner of killing, was not substantially outweighed by danger of unfair prejudice, in guilt phase of capital murder trial.

5. If the court says there was trial court error, that counsel was deficient in his response to that error, and that defendant was or was not prejudiced, write one headnote to the error point and another headnote to the prejudice prong of the Strickland test. The deficiency prong need not be addressed separately. It will be addressed backhandedly in the prejudice prong by language such as "counsel's failure to object to...prejudiced defendant, as element of claim of ineffective assistance..."

6. If a court says counsel was deficient but then, as part of a separate discussion, goes on to say defendant was or was not prejudiced, the points should ordinarily be in separate headnotes, so long as it is clear that neither one is itself determinative of the ineffective assistance issue. Say something like, "as element of claim of ineffective assistance."

7. In a matter not involving alleged underlying trial court error, if the court says counsel was not deficient, make that headnote, and, if the court goes on to gratuitously say, with

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

sufficient distinct analysis to justify another headnote, that defendant was not prejudiced, make another separate headnote. Include ineffective assistance of counsel context in both.

8. The court may assume or skip over the deficiency prong and simply say that defendant was not prejudiced by counsel's alleged actions or inaction. In that case, the headnote should read something like "Defense counsel's failure to... did not prejudice defendant, and thus could not amount to ineffective assistance...

9. When the court determines that there was no ineffective assistance, because counsel's conduct represented a reasonable trial strategy, the headnote should say something like "counsel's conduct...was reasonable trial strategy, and therefore was not ineffective assistance."

10. Notwithstanding that your headnotes have resolved the ineffectiveness points against defendant on some underlying basis, it may be appropriate, in the synopsis, to just say "defendant was not denied effective assistance of counsel" or "counsel was not deficient in..."

11. Be careful to distinguish between *Strickland* prejudice and harmless error analysis, etc.

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040346

## TYPES OF HEADNOTES—Sufficiency of Evidence

Assume a fact situation involving a motorist striking a pedestrian who was allegedly in a crosswalk. The pedestrian has sued for personal injuries.

**Introduction:** In a standard headnote, the facts are undisputed, but the parties dispute the legal consequence of those facts. We state the legal consequence first, and introduce the facts after a "where" clause or a semi-colon. When the parties dispute the facts, but not their legal consequence, the issue will usually be whether the evidence is sufficient. This happens in criminal cases, when there is a dispute over whether the evidence supported a conviction or established an element of an offense. In civil cases, there can be similar disputes over whether evidence established a cause of action or one of its elements.

<u>Templates:</u>

--If the evidence can be briefly summarized, put it before the fact that it establishes. You may also need to state the legal consequence of that fact:

*Evidence that pedestrian's shoe was found 50 feet from crosswalk was sufficient to establish that he was not in the crosswalk when he was struck by motorist, supporting motorist's contributory negligence defense in pedestrian's personal injury action.*

--Countervailing evidence can be introduced with a "despite evidence that" clause:

*Evidence that pedestrian's shoe was found 50 feet from crosswalk was sufficient to establish that he was not in the crosswalk when he was struck by motorist, supporting motorist's contributory negligence defense in pedestrian's personal injury action, despite evidence that skid marks from motorist's vehicle were found within the crosswalk.*

--If there's a lot of evidence, it's O.K. to put it after a semicolon:

*Evidence was sufficient to establish that pedestrian was not in the crosswalk when he was struck by motorist, supporting motorist's contributory negligence defense in pedestrian's personal injury action; pedestrian's shoe was found 50 feet from crosswalk, a group of nuns all swore that the pedestrian was outside the crosswalk, and a photograph taken at the time of impact showed that the crosswalk was at least 20 feet away.*

--Undisputed testimony can be introduced with a "where" clause:

*Evidence was sufficient to support motorist's contributory negligence defense in pedestrian's personal injury action, where several witnesses testified that the pedestrian was outside a marked crosswalk when he was struck by motorist's vehicle.*

--Don't mix testimony and other evidence in a "where" clause:

*Evidence was sufficient to support motorist's contributory negligence defense in pedestrian's personal injury action, where several witnesses testified that the pedestrian was outside a marked crosswalk when he was struck by motorist's vehicle, and his shoe was found 50 feet from the crosswalk.*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040347

**Fact Findings in Trial Level Cases:** In trial level cases, (most commonly, federal district court) a court that is sitting as the fact finder will examine the evidence and make a finding of fact. Do not make a headnote in this situation, because making such findings is an intrinsic function of a trial court. Only an appellate court can rule on whether the evidence is sufficient to support a finding. On the other hand, if the trial court is reviewing a finding of an administrative body, a sufficiency point can be made.

**Substantive vs. Sufficiency Headnotes:** There can be a gray area in which it is unclear whether to make a sufficiency of the evidence headnote or a more substantive headnote. In that situation, it is usually better to make a substantive headnote using a "where" clause.

Your decision to write this as a substantive or sufficiency headnote will affect classification and the value of the headnote to the customer. Headnotes helping a customer win on the law are generally more useful. Research in cases turning on the sufficiency of the evidence is more difficult.

Consider the topic Robbery, especially lines 3-10 and 24-24.50.

**Failure of Proof Points:**

Occasionally, a court will make a substantive holding based on the absence of certain evidence. The court will often use language like "here, there was no evidence. . ." or "without evidence that. . ." In that situation, make a substantive headnote and use the words "absent evidence that" to introduce the missing proof:

Pedestrian who was struck by motorist's car was contributorily negligent, absent evidence that he was walking within a crosswalk at time of accident.

You will often need to make decisions about facts to include and exclude in headnotes on the sufficiency of the evidence. Give priority to facts that make the case unique and explain the result. Here's an example:

**Headnote 3**

Evidence was sufficient to support trial court's finding that passenger allegedly injured in collision with truck grossly and deliberately exaggerated the impact of the collision and her resultant injuries; passenger's testimony of a powerful impact contradicted that of truck driver and of driver of vehicle in which passenger was riding, passenger's shoulder injury changed sides of her body inexplicably, and claims that she was overcome with so much pain she could not comb her own hair were contradicted by the groomed state of her hair at trial.

Hamilton v. Wild, 917 So.2d 695 (La.App. 2 Cir.,2005)

The editor identified facts making this case unique and omitted. Here's the court's analysis (emphasis added):

We next note that the trial judge found the following: that Mr. Wild's tractor-trailer was not in the center lane; that Mr. Wild's right turn blinker was illuminated; that Minnie's testimony that the impact was "powerful" contradicted the testimony given

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

both by Shaunda and Mr. Wild; that Minnie alleged that she was so overcome with pain that she was unable to comb her hair, yet her hair was perfectly groomed and included a decorative ornament piece **(and no testimony was given suggesting someone else did this for her)**; that the shoulder pain experienced by Minnie changed from one side of her body to the other seemingly without explanation; and that **Minnie did not follow the instructions of her attending physician, Dr. Kamm.**

The trial judge further concluded that Minnie's testimony was "confusing" and "self-serving" and noted that **Shaunda and Minnie looked at each other and smiled or laughed at one another at inappropriate times during trial**. Finally, the trial judge noted that no accident report was offered into evidence and City Court Judge Randy Collins rejected Minnie's claim.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040349

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Sufficiency of Evidence Examples

EXAMPLE 1

Court of Appeals of Ohio, Ninth District, Lorain County.

The STATE of Ohio, Appellee,

v.

BENTLEY, Appellant.

CACIOPPO, Judge.

David Mitchell Bentley appeals his robbery conviction, R.C. 2911.02(A), with a specification of a prior aggravated felony conviction, and his conviction for failure to comply with an order of a police officer, R.C. 4511.02(B). We affirm.

On July 28, 1989, Joseph Swidecki was in Nina's Bar in Lorain waiting for the patrons to leave so that he could close the premises for his wife, the bar's owner. At approximately 1:30 a.m., Swidecki left the bar to get a pack of cigarettes he had left in his car.

As Swidecki went to his car, he saw David Bentley, defendant-appellant, with another man. The two men followed Swidecki to his car. When Swidecki arrived at his car, he turned to Bentley and asked him if he was looking for a fight. Bentley, with his fists raised, replied, "No, I want your wallet."

Swidecki did not surrender his wallet, but was in fear when Bentley reached into his own shirt as if he were reaching for a weapon. Swidecki backed away and Bentley then left to go to his car.

Immediately following this incident, Swidecki saw a Lorain police officer in a police patrol car in the vicinity of the bar. Swidecki reported the incident to the officer. The officer saw Bentley and his companion seated in an automobile at the scene and approached Bentley's automobile. Bentley responded by driving away at a high rate of speed. The officer pursued Bentley for four blocks. Suddenly, Bentley slowed the automobile to a speed of fifteen miles per hour. Bentley then opened the door of his moving vehicle and rolled onto the street. The vehicle stopped when it hit the street curb.

The officer stopped his vehicle and pursued Bentley on foot. He eventually found Bentley hiding in some nearby bushes. Swidecki identified Bentley at the scene of the attempted robbery. Bentley was subsequently indicted on one count of robbery with a specification of a prior aggravated felony conviction, and one count of failure to comply with an order of a police officer.

A jury convicted Bentley of both counts as charged in the indictment following a two-day trial in the Lorain County Court of Common Pleas. A hearing was held to determine the specification pertaining to the robbery conviction. Bentley admitted that he had a prior conviction for an aggravated felony. Bentley was sentenced to a term of eight to fifteen years at the *35

Orient Correctional Facility with a minimum sentence of eight years of actual incarceration. Further, he was sentenced to a term of six months in the Lorain County Jail on the second count, to be served concurrently with his sentence for robbery. Bentley asserts a single assignment of error.

Assignment of Error

"The trial court erred in finding that there was sufficient evidence to sustain a conviction for robbery where the evidence failed to satisfy the 'use or threat of immediate force' element required under R.C. 2911.02(A), robbery."

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040350

Bentley contends there was insufficient evidence to support his robbery conviction. Further, he alleges the trial court erred in failing to grant his motion for a directed verdict pursuant to Crim.R. 29. We disagree.

A claim of insufficient evidence requires a determination whether any rational trier of fact could find all the essential elements of the offense beyond a reasonable doubt after viewing, but not weighing, the probative evidence and construing reasonable inferences most favorably to the prosecution. State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720. In reviewing the trial court's ruling on a motion for acquittal, an appellate court construes the evidence in a light most favorable to the state. The appellate court must determine whether reasonable minds could reach different conclusions as to proof beyond a reasonable doubt for each element of the crime charged. State v. Bridgeman (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. "A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eley (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

In the instant case, Bentley contends there was insufficient evidence to prove the element of the use or threat of immediate use of force in R.C. 2911.02(A). This subsection states:

"No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."

"The use or threat of immediate use of force element of the offense of robbery * * * is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." State v. Davis (1983), 6 Ohio St.3d 91, 6 OBR 131, 451 N.E.2d 772, paragraph one of the syllabus. This court has noted that a defendant's actions and demeanor may support a finding of a threat of force. State v. Carter (1985), 29 Ohio App.3d 148, 150, 29 OBR 165, 168, 504 N.E.2d 469, 471.

Under the above standard, the evidence would support the conviction of robbery beyond a reasonable doubt. During the confrontation, Bentley raised his fists and demanded that Swidecki, a sixty-seven-year-old retiree, give him his wallet. When Swidecki refused to surrender the wallet, Bentley reached into his own shirt as if he were reaching for a weapon. Swidecki moved away from Bentley where he could be seen by passersby and Bentley unexpectedly retreated to his automobile.

Consequently, this court finds that, as a matter of law, Bentley's actions constituted a threat of force that would cause fear sufficient to induce a person to part with his property and temporarily suspend his power to exercise his will. Therefore, appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

QUILLIN, P.J., and MAHONEY, J., concur.

**Trial Court:** Court of Common Pleas, Loraine County

What court language supports writing this as a substantive headnote?

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040351

Summarization Training Materials
November 2020

EXAMPLE 2

Court of Appeal of Louisiana,

Fourth Circuit.

STATE of Louisiana

v.

Wayne BALLOM.

Before GARRISON, KLEES and BECKER, JJ.

KLEES, Judge.

Defendant Wayne Ballom was charged by bill of information with possession with intent to distribute marijuana, a violation of R.S. 40:966 and on the day of trial, the bill was amended to charge the defendant with distribution of marijuana, also a violation of R.S. 40:966. After trial, the jury found him guilty as charged and was later sentenced to five years at hard labor. He was later adjudicated a second felony offender and the original sentence was vacated and the defendant was sentenced as a second offender to five years at hard labor.

On April 9, 1985, at approximately 11:45 a.m., Officers Farve and Fortunato, while patrolling the Calliope Project, an area known for its drug activity, observed the defendant and his friend, Joseph Dcquirsey, standing facing each other on the corner of Thalia and Dorgenois Streets. The officers were in an unmarked police car and were wearing street clothes. When they were within a few feet of these two men, they further observed them exchange objects. Dcquirsey passed money to Ballom from his left hand to Ballom's right hand. Then Ballom transferred an unknown object from his right hand to Dcquirsey's right hand. Suspecting that a drug sale had just occurred, the officers decided to investigate further. As they pulled up next to Ballom and Dcquirsey, Ballom and Dcquirsey began to walk away from each other.

The officers exited the car. Farve followed Dcquirsey. Dcquirsey walked down Dorgenois Street toward James Kelly, a known narcotics dealer. As he walked, he dropped an unlit, hand-rolled marijuana cigarette from his right hand to the ground. Farve picked up the cigarette and arrested Dcquirsey.

Ballom walked to the steps of 1408 S. Dorgenois Street and sat down. Fortunato approached him, identified himself and asked him to stand up. Ballom refused. Fortunato noticed that Ballom appeared to be hiding something behind his back. Fortunato forced Ballom to stand up. He then found a lit marijuana cigarette butt where Ballom had been sitting. Farve told Fortunato that Dcquirsey had just dropped a marijuana cigarette which they observed Ballom give to him. The Ballom was then placed under arrest and searched. In his pockets, $192.00 in small bills were found.

Ballom and Dcquirsey testified at trial that they had just finished smoking one marijuana cigarette (the one found on defendant) and were in the process of finding a light for a second one (the unlit one dropped by Dcquirsey) when the police drove up. They denied that a sale occurred.

**Errors Patent**

A review of the record for errors patent reveals none.

**Assignment of Error**

In his sole assignment of error defendant contends that there was insufficient evidence to support his conviction for *distribution*, as opposed to mere *possession*, of marijuana.

When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040352

trier of fact could have found proof beyond a reasonable doubt to each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). In addition, when circumstantial evidence partly forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1983). The elements must be proven such that every reasonable hypothesis of innocence is excluded. R.S. 15:438. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.

In this case, the officers observed Dcquirsey give Ballom money in return for an unknown object which Ballom placed in Dcquirsey's right hand. Immediately thereafter, Dcquirsey dropped the object in his right hand. This object was an unlit marijuana cigarette. These facts show that Ballom knowingly and intentionally distributed the marijuana to Dcquirsey. The jury heard Ballom and Dcquirsey testify that they were merely sharing a marijuana cigarette, and that Ballom had not sold one to Dcquirsey. The jury did not find these self-serving stories credible. Dcquirsey's credibility was impeached when under cross-examination by the state he admitted to only one previous conviction. Nontheless when confronted by the prosecutor he admitted to nine other prior convictions for various crimes, including attempted theft, robbery, purse snatching and simple battery. This Court is not free to challenge the jury's credibility determination under those circumstances.

Moreover, the cases cited by the defendant in support of his argument are inapposite. State v. Hills, 498 So.2d 240 (La.App. 4th Cir.1986) includes a charge for possession with intent to distribute. The defendant was not charged with distribution; consequently, the case concerned whether the surrounding circumstances evidenced his intent to distribute. No exchange even occurred. In State v. Harvey, 463 So.2d 706 (La.App. 4th Cir.1985) the defendant as in Hills, was charged with possession with intent to distribute, not actual distribution. At issue was whether the defendant, who was present in the house in which drugs were found, had constructive possession of the drugs. This case is similarly inapplicable to the facts presented here where the police witnessed the sale of a marijuana cigarette by Ballom.

This assignment of error is without merit.

Accordingly, the conviction and sentence appealed from is hereby affirmed.

AFFIRMED.

**Trial Court:** Criminal District Court, Parish of Orleans

**Trial Judge:** Shirley Wimberly

**What is the defense attorney hoping to gain on appeal? How does this affect the way to write the headnote?**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040353

<u>Solution</u>

**State v. Ballom**

**Controlled Substances**

Evidence that police officers observed defendant's companion give defendant money in return for unknown object which was subsequently discovered to be an unlit marijuana cigarette was sufficient to support conviction for distribution, as opposed to mere possession, of marijuana, despite evidence that defendant and companion claimed they were merely sharing a marijuana cigarette. LSA–R.S. 40:966.

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040354

Summarization Training Materials
November 2020

EXAMPLE 3

Supreme Court of Wyoming.

David Roy CONINE, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff)

Dec. 12, 2008

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

------------------------------------------------------

GOLDEN, Justice.

A jury convicted Appellant David Roy Conine of aggravated assault and battery. On appeal, Conine challenges the sufficiency of the evidence to sustain his conviction and asserts reversible error based on alleged instances of prosecutorial misconduct during voir dire and opening statement. We affirm.

## ISSUES

Conine presents the following issues:

I. Was the evidence legally insufficient to support a conviction for aggravated assault when, in the manner used, the allegedly deadly weapon—a frying pan—caused only minor injuries?

II. Did the prosecutor during voir dire improperly precondition the jury to conclude that the frying pan was a deadly weapon?

III. Did the prosecutor improperly vouch for the credibility of the alleged victim when he told the jury that Jerry Cox seems to be "a pretty honest man"?

## FACTS

In October 2006, Conine and the victim, Jerry Cox, resided at the Lazy U Bunkhouse, a boarding house with individual bedrooms and shared common areas for cooking and socializing. On the evening of October 10, Cox was in the kitchen area preparing his dinner when Conine approached him and started a verbal altercation regarding an incident that had occurred several days earlier. Cox tried to ignore Conine, but Conine continued to become more aggressive. Cox eventually turned away from Conine in an attempt to halt the exchange. When he turned back around, Conine punched him several times about the head and face and then hit him with an aluminum frying pan on the left side of his *159 face, his right jaw, and the top of his head. As a result of Conine's actions, Cox lost a tooth and suffered significant pain, bruising and swelling to his face and head.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040355

Summarization Training Materials
November 2020

The State charged Conine with aggravated assault and battery, alleging that Conine knowingly caused bodily injury to Cox with a deadly weapon; to wit, the frying pan. Following a one-day trial, during which both Conine and Cox testified and provided differing accounts of the events surrounding the altercation and Cox's resulting injuries, the jury found Conine guilty on the charged offense.[1] The district court subsequently sentenced Conine to a term of imprisonment of three to eight years. This appeal followed.

## DISCUSSION

### A. Sufficiency of the Evidence

Conine questions the sufficiency of the evidence to sustain his conviction. When reviewing a sufficiency of the evidence claim, we analyze the evidence, and any applicable inferences that may be reasonably drawn from it, in the light most favorable to the State. *Dettloff v. State,* 2007 WY 29, ¶ 22, 152 P.3d 376, 383 (Wyo.2007); *Grissom v. State,* 2005 WY 132, ¶ 24, 121 P.3d 127, 136 (Wyo.2005). We have consistently held that it is the jury's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Sotolongo–Garcia v. State,* 2002 WY 185, ¶ 11, 60 P.3d 687, 689 (Wyo.2002). We will not substitute our judgment for that of the jury but will only determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Grissom,* ¶ 24, 121 P.3d at 136; *Pacheco v. State,* 2004 WY 160, ¶ 6, 102 P.3d 887, 889 (Wyo.2004); *Sotolongo–Garcia,* ¶ 11, 60 P.3d at 689; *Lane v. State,* 12 P.3d 1057, 1063 (Wyo.2000).

Conine was convicted of aggravated assault and battery under Wyo. Stat. Ann. § 6–2–502(a)(ii) (LexisNexis 2007), which states in pertinent part: "A person is guilty of aggravated assault and battery if he ... knowingly causes bodily injury to another with a deadly weapon." At trial, and in accordance with the statute, the district court instructed the jury that it should not convict Conine unless it found, beyond a reasonable doubt, that he caused bodily injury to Cox with a deadly weapon:

The necessary elements of the crime of Aggravated Assault and Battery, as charged in the Information, are:

1. On or about the 10th day of October, 2006;

2. In Campbell County, Wyoming;

3. The Defendant, David Roy Conine;

4. Knowingly caused;

5. Bodily injury to another person, Jerry Cox;

6. With a deadly weapon.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040356

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

The district court instructed the jury on these statutory definitions of the elements of the offense:2

"Bodily injury" means physical pain, illness or any impairment of physical condition.

"Deadly weapon" means but is not limited to a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury.

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment *160 of the function of any bodily member or organ.

In attacking the sufficiency of the evidence, Conine first argues the evidence failed to support the jury's finding that the frying pan used to assault Cox constituted a deadly weapon. Conine asserts that the jury could not properly have viewed the frying pan as a deadly weapon because Cox suffered only minor injuries. According to Conine, the frying pan could only have been deemed a deadly weapon if, in the manner it was used, it actually caused serious bodily injury to Cox.

The problem with Conine's argument is that the statutes governing his conviction do not require that the weapon used on Cox in fact cause serious bodily injury; they only require that Cox incurred bodily injury caused by Conine's use of an object which, in the manner it was used, was **reasonably capable** of producing death or serious bodily injury. The State was not required to prove, nor was the jury required to find, that Cox suffered serious bodily injury when Conine hit him with the frying pan. To convict Conine, the jury only needed to find from the State's evidence that Conine caused bodily injury to Cox by attacking him with an object that might reasonably cause serious bodily injury or death.

Conine also argues that, even if deemed a deadly weapon, there was no evidence from which the jury could rationally conclude that the frying pan, rather than his fists, caused Cox's bodily injuries. Conine's argument simply ignores the testimony and evidence presented at trial. Cox specifically remembered receiving three distinct blows from the frying pan: the first to the left side of his face with what felt like the bottom of the pan; the second to the top of his head with the inside of the pan; and the third to his right jaw with what felt like the edge of the pan. According to Cox, the blow to his jaw was in the area just below where he lost the tooth. Cox also testified that he felt pain in his face and head,

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040357

particularly the jaw and scalp areas from those blows, and continued to have pain for approximately two weeks, along with difficulty chewing. In addition, a police officer and paramedic responding to the Bunkhouse testified, without objection, that Cox reported being struck multiple times in the face with the frying pan. They testified Cox had quite a bit of facial swelling and redness to the sclera of his eye, which was consistent with the reported blows received from the frying pan. The frying pan, which was admitted at trial, showed extensive damage—it was extremely bent and deformed. Finally, Conine admitted striking Cox once with the frying pan on the head.

Viewing the evidence as a whole, and affording the State every favorable inference which may be fairly and reasonably drawn from it, we have no trouble concluding the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt the frying pan caused Cox bodily injury. We likewise have no trouble concluding the evidence was sufficient to permit a rational jury to find beyond a reasonable doubt the frying pan was a deadly weapon. Applying common sense and experience, the jury could have rationally determined the frying pan, when used as Conine did to beat Cox about the head and face, was reasonably capable of causing serious bodily injury or death. In sum, we find ample evidence to support Conine's conviction for aggravated assault and battery.

**Pay attention to the defense attorney's arguments and the way the court resolves them. How many concrete HNs can you identify in this discussion? Will they be substantive or sufficiency of the evidence points?**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040358

**Solutions**

**HN 3**

**Assault and Battery**



**Assault with dangerous or deadly weapon**

Frying pan used in assault could be a "deadly weapon," even if victim suffered only minor injuries; aggravated assault statute did not require that the weapon actually caused serious bodily injury, but it only required that defendant caused bodily injury by attacking victim with an object that could reasonably cause serious bodily injury or death. West's Wyo.Stat.Ann. §§ 6–1–104(a), 6–2–502(a)(ii).

**HN 4**

**Assault and Battery**



**Dangerous or deadly weapons in general**

Evidence supported conclusion that frying pan used in assault, rather than defendant's fists, caused bodily injury, thus supporting aggravated assault and battery conviction; victim remembered receiving three distinct blows from the frying pan, he testified that blow to his jaw was in the area just below where he lost the tooth and that he felt pain in his face and head, particularly the jaw and scalp areas from those blows, and continued to have pain for approximately two weeks, along with difficulty chewing, and police officer and paramedic testified about victim's report of the blows. West's Wyo.Stat.Ann. § 6–2–502(a)(ii).

HN 5

**Assault and Battery**



**Dangerous or deadly weapons in general**

Evidence supported conclusion that frying pan used to strike victim three times in head and face was deadly weapon within meaning of aggravated assault and battery statute; the jury could have rationally determined the frying pan, when used to beat victim about the head and face, was reasonably capable of causing serious bodily injury or death. West's Wyo.Stat.Ann. §§ 6–1–104(a), 6–2–502(a)(ii).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040359

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Summary Judgment

Assume a fact situation involving a motorist striking a pedestrian who was allegedly in a crosswalk.  The pedestrian has sued for personal injuries.

**Introduction:** A summary motion is a pretrial motion that tests whether the evidence is sufficient to go to trial.  On appeal, most summary judgment issues concern whether the motion was correctly granted. Our analysis depends on the appellate court's ruling.

**Motion Correctly Granted:**  If a grant of summary judgment is upheld, we assume the facts are undisputed and incorporate them into a "where" clause. Write a substantive headnote without mentioning summary judgment:

*Motorist who struck pedestrian was negligent, where pedestrian was in a crosswalk.*

**NOT:** *Summary judgment was properly granted in favor of pedestrian in his personal injury action against motorist, where evidence was undisputed that pedestrian was in crosswalk when he was struck by motorist.*

**Motion Incorrectly Granted:**  If summary judgment wasn't warranted, we write that there was a "genuine issue of material fact" that "precluded summary judgment."  Such headnotes are classified to the topic **"Judgment."**  Use the following **template**:

Genuine issue of material fact as to whether (describe issue) precluded summary judgment in action (describe action).

*Genuine issue of material fact as to whether pedestrian was in the crosswalk when he was struck by motorist precluded summary judgment in pedestrian's personal injury action.*

There is no need to discuss the underlying evidence if the nature of the action is otherwise described.  Any discussion of the evidence is optional:

*Evidence that that pedestrian's shoe was found 50 feet from crosswalk raised genuine issue of material fact as to whether pedestrian was in the crosswalk when he was struck by motorist, precluding summary judgment in pedestrian's personal injury action.*

**Summary Judgement Precluded on Some Issues:** Sometimes, summary judgment can be precluded as to some issues, but not others.  This can happen in a civil case in which multiple claims are raised, only some of which survive summary judgment. In that case, you need to specify the issue:

*Genuine issue of material fact as to whether pedestrian was in the crosswalk when he was struck by motorist precluded summary judgment on issue of proximate cause in pedestrian's personal injury action.*

**Summary Judgment Evidence:** Don't confuse "precluding summary judgment" points with points dealing with what evidence can be considered on a motion for summary judgment. The court's discussion will often deal with whether a summary judgment affidavit can be considered. In that case, write a substantive headnote:

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040360

*Summary judgment affidavit of motorist's attorney could not be used to show that pedestrian was outside of a crosswalk at the time he was struck by motorist, where affidavit was not based on attorney's personal knowledge.*

**Pointers to Keep in Mind:**

The grant of summary judgment or affirmance of a summary judgment is a ruling as a matter of law based on undisputed facts.

Courts are not supposed to weigh evidence when ruling on the motion or when reviewing a trial court's decision though it seems they sometimes do.

A summary judgment does not establish facts in the sense that a trial does. Don't write headnotes giving the impression a trial occurred if the case was decided on summary judgment.

The denial of a summary judgment motion merely moves the case to trial. An appellate court decision affirming denial sends the case back for trial. Most of the time an appellate decision reversing a summary judgment sends the case for trial. The slate is wiped clean.

Headnotes about procedural matters at the summary judgment stage need summary judgment context.

**Practices to Avoid:**

For HNs intended to be substantive:
 Any language about sufficiency or weight of the evidence;
 Any mention of a party, document, or piece of evidence establishing some fact;
 Any mention of or allusion to the documents or depositions before the trial court;
 Any use of the term "summary judgment."

For HNs mentioning SJ:
 Avoid mentioning sufficiency of pleadings or allegations of complaint to state a claim;
 Any mention that one party is entitled to victory, i.e., no hybrids.

**Follow the mandate:**

Begin your analysis by asking if the appellate court is affirming or reversing a summary judgment motion. Or if the case is a trial court opinion, ask whether the court is granting or denying a summary judgment motion. The answer to these questions will most often determine what type of headnote to write.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040361

## TYPES OF HEADNOTES—Summary Judgment Decision Tree

Here is a decision tree that can help with some variations:



**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040362

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Summary Judgment Example

Supreme Court of Rhode Island.

David PACIA

v.

FORTE BROS., INC., et al.

MURRAY, Justice.

This case is before the court on the plaintiff's appeal from a Superior Court ruling of summary judgment in favor of the defendant Forte Bros., Inc. We vacate the judgment of the Superior Court and sustain the appeal. We remand the case to the Superior Court since in our opinion there are more findings of fact to be determined.

In light of the pleadings, interrogatories, and affidavits, the facts so far adduced may briefly be summarized as follows. On October 9, 1984, at 10:15 p.m., plaintiff, David Pacia, was traveling north on Power Road in Pawtucket, Rhode Island, when his car came into contact with a raised manhole cover and its rim. Upon contact plaintiff damaged his automobile and sustained personal injuries. The defendant Forte Bros., Inc., was completing road-construction work pursuant to Rhode Island contract No. 8343 for defendant city of Pawtucket.

The plaintiff asserts that defendant Forte Bros., Inc., is responsible for his injuries and related expenses because defendant negligently created this hazard by failing to warn of unsafe road conditions and failing to light the location properly. On March 30, 1988, plaintiff submitted an affidavit stating that on October 9, 1984, he came in contact with the manhole cover and no warning barrels were in place. On April 28, 1988, the resident engineer, Frederick W. McDonnell, filed an affidavit stating that on October 9, 1984, he inspected the job site where defendant Forte Bros., Inc., was working, and barrels were placed over safety hazards in compliance with the contract. It remains to be determined upon an evidentiary hearing what time span is involved and how the time, position of the barrels, and control of the work site relate to proximate cause. The fact that barrels were properly placed at a different time does not dispose of this issue.

This court reviews the propriety of a summary judgment order by the same standards as the trial justice. Lawrence v. Anheuser-Busch, Inc., 523 A.2d 864, 867 (R.I.1987); Steinberg v. State, 427 A.2d 338, 340 (R.I.1981). "We examine the pleadings and affidavits in the light most favorable to the nonmoving party and decide if an issue of material fact exists. If not, we determine if the moving party was entitled to summary judgment as a matter of law." Lawrence, 523 A.2d at 867; Russo v. Cedrone, 118 R.I. 549, 555, 375 A.2d 906, 909 (1977); Super. R. Civ. P. 56.

Applying the standard to this case, we find that there are material issues of fact which cannot be resolved on summary judgment.

For this reason we vacate the judgment, sustain the appeal, and remand the case to the Superior Court in accordance with this opinion.

**What is the factual dispute?**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040363

**SOLUTION**

**Pacia v. Forte Bros.**

**Judgment**

Genuine issue of material fact as to whether warning barrels were in place at time of accident precluded summary judgment for highway contractor in negligence action brought by motorist who was injured when his car came into contact with a raised manhole cover while traveling through construction site.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040364

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Directed Verdict/JNOV

Assume a fact situation involving a motorist striking a pedestrian who was allegedly in a crosswalk. The pedestrian has sued for personal injuries.

**Directed Verdict, JNOV**

**Introduction:**  We analyze directed verdict motions and JNOV motions in the same way. Both motions test whether the evidence is sufficient to go to the jury. A directed verdict motion is made before the case goes to the jury. A JNOV motion is made after the jury has returned its verdict, and allows the court to "second guess" its ruling on a directed verdict motion.

**Motion Correctly Granted:** If a grant of a directed verdict or JNOV is upheld, the facts are undisputed, and a substantive headnote is made, using a "where" clause. Don't mention the underlying motion.

**Motion Incorrectly Granted:**  If directed verdict or JNOV wasn't warranted it's because the evidence created an issue of fact for the jury. The headnote is written by summarizing the evidence and stating that it raised a "fact issue for the jury." Unlike a summary judgment headnote, we don't need to say "precluding directed verdict" or "precluding JNOV":

Evidence in personal injury action that pedestrian's shoe was found 50 feet from crosswalk raised fact issue for jury as to whether he was in the crosswalk when he was struck by motorist.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040365

Summarization Training Materials
November 2020

| Trial Court Ruling | Appellate Court Decision | Headnote | Exceptions | Caveats | Classification |
|---|---|---|---|---|---|
| Grants SJ | Reverses | Follow template. | Trial court made legal error. | Make sure HNs convey the law. | Judgment or Federal Civil Procedure. |
| Grants SJ | Affirms | State the holding/law. | Parties dispute whether particular piece of evidence creates factual issue. | | Substantive topic. Exception classifies to Judgment or Federal Civil Procedure. |
| Denies SJ | Affirms | Follow template | | Make sure HNs convey the law. | Judgment or Federal Civil Procedure. |
| Denies SJ | Reverses | State the holding/law. | | | |
| Grants DV/JNOV | Reverses | Follow template. | Trial court made legal error. | | Substantive topic |
| Grants DV/JNOV | Affirms | State the holding/law. | | | Substantive topic |
| Denies DV/JNOV | Affirms | Follow template. | | | Substantive topic |
| Denies DV/JNOV | Reverses | State the holding/law. | | | Substantive topic |

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040366

Summarization Training Materials
November 2020

# KEYCITE DIRECT

## Definition

Direct history citations are references to prior and subsequent opinions of various courts in the same case.

## Verification of Direct History

You are required to verify the direct history when you headnote a case. To do so, pull up your case on Westlaw by using the "W" button in the Judicial Workbench (JWB), and then view the direct history, if any, associated with the case.

You can also access your case on Westlaw using a serial number search with the serial number in an appropriate database. Example: snum(2037123456)

Once you access your case on Westlaw, you must determine whether the KeyCite direct history indicated on Westlaw is correct and whether there are cases in the direct history that you need to include in your synopsis. If KeyCite is correct, your verification is complete. **If the direct history on Westlaw omits a case or otherwise is not correct, you should e-mail Cases-KeyCite-Errors, advising them of the error.** Simply citing an omitted case in the synopsis does not provide them with sufficient notice of an error.

## Cite in Synopsis

Citations to published opinions in the direct history should appear in the synopsis.

Citations to Westlaw-only opinions, including trial court opinions, should be included to the extent the citation takes the researcher to an opinion that is not a mem.

For published opinions, all **parallel citations**, excluding the prohibited citations noted below, must be included in the synopsis. When there are parallel citations, the state reporter citation should precede the National Reporter system citation. For United States Supreme Court citations, the order is U.S., S.Ct., L.Ed.

When including a Westlaw-only citation in the synopsis, do not include any parallel reporter citations, including official state reporter citations. Use just the Westlaw citation.

Mems and jacketed mems, in general, should not be cited.

Table cites, other than cites for full-text table (FTT) opinions, should not be included.

FTT opinions may be cited using the Westlaw citation; the reporter citation for FTT opinions should not be used, even if that is the cite given in the history information on JWB.

Citations to the Federal Appendix should be included.

Do not include citations to **public domain cites** or to other **unofficial, non-West publications.** For example, a cite to a BNA reporter should not be included (105 Fair Empl.Prac.Cas. (BNA) 280). Public domain cites typically start with the year of the decision, followed by an abbreviation for the court at issue, followed by a decision number. Some examples: 2009 Ark.App. 96, 1997 ND 1, 2000 WI App 7.

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040367

The following states use public domain cites:  Arkansas, Colorado, Illinois, Louisiana, Maine, Maryland, Montana, New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, South Dakota, Utah, Vermont, Wisconsin, and Wyoming.  The following federal courts use public domain cites:  Sixth Circuit U.S. Court of Appeals, U.S. District Court for South Dakota, U.S. District Court for New Hampshire, and U.S. Bankruptcy Court.

Do not include citations to denial of certiorari by the U.S. Supreme Court.  Do include all citations to reversals or vacaturs by that court.

## Related References

A **related reference** is a type of direct history.  They are references to other opinions in the case that are not in the direct line of appeals and remands.  They may be included in the synopsis if relevant to an issue in the opinion but need not be included.

The same case must be involved for a related reference to be made.  It is used when there is no more specific history phrase to describe the relationship between the two opinions because one ruling does not directly act on the other.

If one proceeding involves a discovery dispute and a later opinion resolves the merits, without commenting on the propriety of the discovery rulings, this would be a related reference.

If one decision rules on a summary judgment motion and a later decision deals with the issue of attorney fees and costs, they are related references.

Rulings by an appellate and a lower level court should get a more direct link (such as on remand to) if one is available.  However, if we are missing intervening decisions, so that one ruling does not directly lead to or act on the next, related reference treatment might be appropriate.

Related reference treatment will also be appropriate when a federal proceeding is related to a state proceeding that cannot be captured by links such as postconviction/habeas relief or certified question action.

If a prior case is linked to your case as a related reference, every other decision in the chain of that prior case will also be linked as a related reference.

## "See also" References

A "see also" allows an editor to provide the reader with a citation to another case in situations where the citation could not be included in the body of the synopsis but the editor believes the reader might find the cited case interesting or useful to the reader's understanding of the citing case.  A "see also" case usually involves the same or related parties.  It may or may not be a related reference.

A "see also" event is an occasional occurrence.

Make the "see also" reference at the bottom of the synopsis on a separate line after the mandate and any concurrences or dissents.

The decision whether to make a "see also" reference is discretionary.  Some situations where you should consider making a "see also" reference include:

*Thomson West – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040368

Summarization Training Materials
November 2020

- **The cited case is a separate, distinct, case arising out of the same set of facts as the citing case, perhaps involving the same or related parties and claims.  Possible scenarios:  multi-car crash or toxic tort
- **The cited case is a distinct underlying proceeding.  Possible scenario:  legal malpractice
- **The cited case is a related reference that was not cited in the opinion of the citing case.

## Subsequent Opinions

Put the citation after the mandate.

Example:

Affirmed.
Selya, J., dissented and filed opinion.
Reversed on appeal, 72 F.3d 911.

## Postconviction and Habeas Corpus Cases

In **post-conviction** and **habeas corpus** cases, if there was a reported or unreported opinion on the direct appeal from the conviction, the citation will appear in the direct history for the case and should be included in the synopsis.  If there are citations to more than one opinion dealing with the direct appeal, only the cite to the final opinion affirming the conviction need be given.  In federal habeas proceedings involving a state court conviction, the citation to the last state court opinion considering a post-conviction proceeding should also be included.  All citations to prior opinions in the current habeas or post-conviction proceedings should be included in the synopsis.

## Dash Cites

Do not use **dash citations** for cases that will be published in print but are not yet reported.  A Westlaw citation is sufficient.

RIGHT:  2019 WL 1234567

WRONG:  ___S.W.3d___, 2019 WL 1234567

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040369

Summarization Training Materials
November 2020

## Docket Review for Lower Court Judge

When a missing lower court judge is not available in the issuing court's opinion, a lower court's opinion, or MMR, follow these steps to determine if the information is available in the case's docket available on Westlaw:

**(1) Open the case in Westlaw, and go to the filings tab:**
Example 1: Federal Case – the lower court information in the issuing opinion does not contain a lower court judge name, and there are no history documents available



Example 2: State Case – the lower court information in the issuing opinion does not contain a lower court judge name, and, upon review, the documents in the history tab do not indicate the lower court judge name



**(2) Look for any available dockets in the Filings Tab on Westlaw. There may be no dockets, one docket, or multiple dockets available:**

Tip: The filings tab will sometimes include appellate briefing, transcript requests, or other case-related documents. If there are a lot of documents, click "Dockets" in the View menu (shown by red arrow below), and it will filter out everything but the dockets. There is no need to review the briefs or other case-related documents to find the lower court judge name.

Example 1 – Federal case, one docket:



Example 2 – State case, both Court of Appeals docket and Supreme Court docket are available:

*Thomson West - Proprietary Information*

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040370

Summarization Training Materials
November 2020



**(3) Review dockets for lower court information. You may need to scroll down to find the lower court docket entry:**

Example 1: Federal Court



Tip: The initials after a federal district court docket number provided in the issuing court's opinion (here, MTT), match the initials of the judge found in the lower court information, giving an increased confidence that the correct judge has been identified.

Example 2: State Court
If the lower court information section of the docket does not indicate a trial judge, as in the first clip below, scroll down to the docket entries and see if the trial judge is noted there:

No judge located in Lower Court information section of the docket:



But, upon scrolling down to docket entries, the lower court judge name is listed in one of the entries:



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040371

**Tip:** Note that the docket number provided in the issuing court's opinion matches the case number in the docket entry, increasing confidence that the correct trial judge has been identified.

(4) Use the judge widget to add the lower court judge name to the synopsis, if found in the docket.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040372

## Synopsis Examples

**(1) CT state high court case:  parallel cites**

Joint tenant brought action to partition real property...The Superior Court, Judicial District of New London, D. Michael Hurley, trial judge referee, ordered X.  Other joint tenant appealed.  The Appellate Court, 54 Conn.App. 444, 735 A.2d 871, affirmed.  The Supreme Court Katz, J., held that...

**(2) Federal trial court case:  a published cite and a WL cite in the same synopsis**

Plaintiff brought action...The United States District Court for the Northern District of Illinois, Smith, J., 2001 WL 123456, granted summary judgment for the plaintiff, and defendant appealed. The Court of Appeals, 78 F.3d 910, vacated and remanded.  On remand, the District Court held that...

**(3) Federal appellate case:  a published cite and a WL cite from the same trial court; potential related reference event**

Plaintiff brought action...The United States District Court for the Northern District of Illinois, Smith, J., 123 F.Supp.2d 456, granted summary judgment for plaintiff and awarded attorney fees, 2002 WL 987654. Defendant appealed.

**(4)  Federal appellate case:  two WL cites from the same trial court**

Plaintiff brought action...The United States District Court for the Southern District of Ohio, Timothy S. Hogan, United States Magistrate Judge, 2006 WL 2850524, recommended that defendant's motion to dismiss be granted, and Susan J. Dlott, J., 2006 WL 2850511, adopted report and recommendation. Plaintiff appealed.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040373

## Exercise

**Opinion Text Excerpt**

Supreme Court of Connecticut.
Maria FERNANDES
v.
Eyvind RODRIGUEZ et al.
No. 16198.
Argued Sept. 26, 2000.
Decided Dec. 12, 2000.

KATZ, J.

The sole issue in this certified appeal is whether the Appellate Court properly determined that in an action for the partition of real property the trial court could order, as relief, the payment of money to the named defendant, Eyvind Rodriguez, [FN1] by the plaintiff, Maria Fernandes, and order the defendant to execute and deliver to the plaintiff a quitclaim deed to the subject property. The defendant claimed that the trial court had no statutory authority to render such a judgment because the court was limited to ordering either a partition in kind or a sale of the property. The Appellate Court held that the trial court in this case properly could render a judgment requiring the execution of the quitclaim deed conveying the property to the plaintiff and the payment of money damages to the defendant. *Fernandes v. Rodriguez*, 54 Conn.App. 444, 445, 735 A.2d 871 (1999). We disagree and reverse the judgment accordingly.

\* \* \*

Synopsis:

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040374

Summarization Training Materials
November 2020

<u>KeyCite History Display</u>

**History**
(Showing 3 documents)

**Direct History**

⚑   1     Fernandes v. Rodriguez, 54 Conn.App. 444, 735 A.2d 871 (Conn.App. Aug 10, 1999) (NO. 17646)

    *Certification Granted in Part by*

Ⱨ   2     Fernandes v. Rodriguez, 251 Conn. 907, 739 A.2d 264 (Conn. Oct 06, 1999) (NO. 16198)

    *AND Judgment Reversed by*

➡   3     Fernandes v. Rodriguez, 255 Conn. 47, --- A.2d ---, 2000 WL 1772572 (Conn. Dec 12, 2000) (NO. SC16198)

<u>Direct History Case Opinion Text  (54 Conn.App. 444, 735 A.2d 871)</u>

Appellate Court of Connecticut.
Maria FERNANDES
v.
Eyvind RODRIGUEZ et al.
No. 17646.
Argued Dec. 10, 1998.
Decided Aug. 10, 1999.

 Joint tenant brought action to partition residential property that was purchased with other joint tenant for investment purposes. The Superior Court, Judicial District of New London, Michael Hurley, judge trial referee, ordered other joint tenant to transfer interest in property to joint tenant in exchange for payment of money. Other joint tenant appealed. The Appellate Court, Dupont, J., held that: (1) payment of money in exchange for transfer of title was appropriate remedy; (2) evidence supported finding that other joint tenant's interest in property was minimal; and (3) evidence did not support finding that other joint tenant could have lived in apartment on premises.
 Affirmed in part, reversed in part, and remanded.
 Lavery, J., dissented and filed opinion.

West Headnotes

[1] KeyCite this headnote

266 Mortgages
 266IV Rights and Liabilities of Parties
  266k218 Action on Indebtedness Secured
   266k218.1 k. In General.

266 Mortgages
 266X Foreclosure by Action

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040375

266X(B) Right to Foreclose and Defenses
266k394 Default in Payment
266k395 k. In General.

Remedy of mortgagee for nonpayment is either at law on a promissory note if mortgagor has signed a note, or in equity for foreclosure of mortgage.

[2] KeyCite this headnote

266 Mortgages
266X Foreclosure by Action
266X(A) Nature and Form of Remedy
266k383 k. Remedies in Personam and in Rem.

Both of mortgagee's remedies for nonpayment, those being at law on a promissory note if mortgagor has signed a note, or in equity for foreclosure of mortgage, may be pursued in foreclosure suit, although remedies are separate and distinct causes of action.
***
**Direct History Case Opinion Text (739 A.2d 264)**

Supreme Court of Connecticut.
Maria FERNANDES
v.
Eyvind RODRIGUEZ et al.
Decided Oct. 6, 1999.
Eyvind Rodriguez, pro se, in support of the petitioner.

The named defendant's petition for certification for appeal from the Appellate Court, 54 Conn.App. 444, 735 A.2d 871 (1999), is granted, limited to the following issue:

"In this partition action, did the Appellate Court properly conclude that the trial court had the equitable power to order the named defendant to convey his interest in the property to the plaintiff and the plaintiff to pay the named defendant money damage?"

The Supreme Court docket number is SC 16198.
Conn. 1999.

END OF DOCUMENT

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040376

Summarization Training Materials
November 2020

**Sample Synopsis**

Joint tenant brought action to partition residential property that was purchased with other joint tenant for investment purposes. The Superior Court, Judicial District of New London, D. Michael Hurley, judge trial referee, ordered other joint tenant to transfer interest in property to joint tenant in exchange for payment of money. Other joint tenant appealed. The Appellate Court, 54 Conn.App. 444, 735 A.2d 871, affirmed in part, reversed in part, and remanded. Other joint tenant petitioned for certification. After grant of certification, the Supreme Court, Katz, J., held that...

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040377

## SYNOPSIS ISSUES

### Administrative Review

If the initial resolution was by an administrative agency of the state, the name of the agency should be given. If the case provides the name of the administrative law judge, hearing officer, commissioner, workers' compensation judge, or other administrative officer who presided over a previous phase of the case, include that name in the synopsis, along with whatever title the court uses. If no name is provided, simply leave it out of the synopsis. Do not query its omission.

If the appeal is from the order of a municipal body, the name of the municipality is not included, but the body should be identified: city civil service board, county zoning board of appeals, school board, etc.

**Examples**

1. *Garcia v. St. Louis County*, 916 S.W.2d 263.

Workers' compensation claimant sought review of decision of Labor and Industrial Relations Commission affirming decision of administrative law judge (ALJ) awarding him benefits for work-related injury for which his employer was liable and for preexisting injury for which Second Injury Fund was liable. The Court of Appeals, Crandall, J., held that claimant was not permanently and totally disabled as result of combination of his previous disabilities with his last injuries, for purposes of determining Second Injury Fund's liability.
Affirmed.

2. *Geampa v. Walck*, 222 A.D.2d 1072, 636 N.Y.S.2d 515.

Landowners petitioned to set aside town zoning board of appeals' denial of their application for use variance to allow dog kennel at their residence. The Supreme Court, Niagara County, Mintz, J., granted petition, and board appealed. The Supreme Court, Appellate Division, held that landowners' failure to show that they could not realize reasonable rate of return by use of their property as residence, without dog kennel, justified denial of application.
Reversed; petition dismissed.

3. *ANR Pipeline Co. v. F.E.R.C.*, 71 F.3d 897, 315 U.S.App.D.C. 189, Util. L. Rep. P 14,071.

Interstate natural gas pipeline petitioned for judicial review of Federal Energy Regulatory Commission (FERC) orders allowing natural gas local distribution company (LDC) to charge blended rates for its interstate pipeline service. The Court of Appeals, Rogers, Circuit Judge, held that, in refusing to limit natural gas company's authority to use blended rates for its interstate pipeline service, FERC improperly departed from established precedent without reasoned explanation.
Reversed in part and remanded.

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040378

Summarization Training Materials
November 2020

## First Impression

If a point of major significance is truly one of first impression within the jurisdiction, that should be mentioned in the synopsis: The Supreme Court, Gray, J., held, as a matter of first impression, that commitment statute did not authorize involuntary medication.

<u>Example</u>

U.S. v. Siebe, 58 F.3d 161.

### Sample Synopsis:

Defendant was convicted in the United States District Court for the Eastern District of Texas, Joe J. Fisher, J., pursuant to his guilty plea, of possession of cocaine with intent to distribute and money laundering, and he appealed. The Court of Appeals, Trimble, District Judge, sitting by designation, held that: (1) as matter of first impression, fact that defendant as police officer was issued firearm did not, by itself, support Sentencing Guidelines enhancement for possession of firearm during commission of drug trafficking claim, and (2) defendant was not entitled to offense level reduction for acceptance of responsibility.

Affirmed in part; vacated and remanded.

### Opinion Text:

Appellant Siebe pleaded guilty to possession of cocaine with the intent to distribute and money laundering. He was sentenced to a term of 480 months imprisonment for the cocaine possession and to a concurrent 240 month term for money laundering, followed by a five year term of supervised release. Two issues are raised on appeal. These issues concern the assignment of two points for possession of a firearm during the commission of a drug trafficking offense and the court's refusal to assign a two point reduction for acceptance of responsibility.

 Enhancement for Firearm Possession

Appellant first asserts that the district court erred in enhancing his sentence for possession of a firearm during the commission of a drug trafficking crime pursuant to U.S.S.G. § 2D1.1(b)(1) predicated solely upon the presumption that he possessed a firearm because he was a police officer. This presumption was based upon the fact that Siebe, as a police officer, was assigned a firearm. The district court's decision on this issue is reviewed for clear error. United States v. Devine, 934 F.2d 1325, 1339, 33 Fed.R.Evid.Serv. 981 (5th Cir. (Tex.) 1991), cert. denied, 502 U.S. 1065, 112 S.Ct. 954, 117 L.Ed.2d 121 (1992).

§ 2D1.1(b)(1) of the U.S.S.G. states that a district court may increase a defendant's offense level by two points if the defendant possessed a dangerous weapon during the commission of a drug offense. The Government must prove by a preponderance of the evidence that the defendant possessed such a weapon during the commission of the drug offense. United States v. Aguilera-Zapata, 901 F.2d 1209, 1215 (5th Cir.1990).

To meet this burden, generally the Government must prove that the weapon was found in the same location as the drug or the weapon was a part of the drug transaction. See United States v. Hooten, 942 F.2d 878, 881 (5th Cir. (Tex.) 1991) (remanded for determination of whether such evidence linking weapon, drugs and defendant existed); United States v.

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040379

McKeever, 906 F.2d 129, 134 (5th Cir. (Tex.) 1990) (possession found because house where gun was found contained materials for processing amphetamine and thus became part of the situs of the offense); United States v. Vasquez, 874 F.2d 250, 251 (5th Cir. (Tex.) 1989) (no possession shown where evidence failed to show sufficient connection between gun owned by defendant and stored in his home and possession of drugs several miles away when defendant was not convicted of conspiracy).

**Explanation:**

The district court in the case at bar based its decision upon a presumption that Siebe was an armed police officer. This is a case of first impression. This court has not addressed the question of whether a presumption based upon the fact that a defendant is a police officer can be used for an enhancement under the Guidelines. In the case at bar there is no evidence absent such a presumption that Siebe possessed a firearm during the commission of the offense. Although the FBI found ninety guns in Siebe's residence, they found no drugs or drug paraphernalia in the residence. There was no evidence of Siebe's drug trafficking activities.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040380

Summarization Training Materials
November 2020

## Overruling, Abrogating, Receding, and Disapproving

When a decision overrules, abrogates or recedes from a prior case, or disapproves of one of its prior cases or a case from an inferior court, that information must be included in the most relevant headnote and synopsis holding. The reference is placed at the end of the headnote, separated from the main body by a semicolon, and should include the complete title of the case being acted upon, along with all parallel citations to the case. The references should also be included in the synopsis as part of the most relevant holding.

### **Example**

Calculation of attorney fees award against employer, based on its "unreasonable or vexatious delay" in paying workers' compensation benefits, was properly predicated on employer's delay in paying claimant's medical expenses as well as its delay in paying claimant compensation for lost wages; overruling *Childress v. Industrial Comm'n*, 93 Ill.2d 144, 66 Ill.Dec. 280, 442 N.E.2d 841. S.H.A. 820 ILCS 305/16, 19(k).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040381

## Certified Questions

When a state court issues an opinion in response to a certified question from a federal court, the synopsis should follow the usual format for describing the parties and the nature of the action, as well as the courts that have taken prior action. The synopsis should follow the usual format for listing the courts' holdings. The mandate should be "question answered" or "certification denied" if no other language is used by the court.

If the opinion only consists of the court's indication that a question will be certified, the case is not to be headed. It is to be made a "mem."

However, if the case contains discussion or reasoning about the question to be certified, a headnote (and other applicable features) may be made.

**Examples**

1. *West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 87 N.Y.2d 148, 661 N.E.2d 967, 638 N.Y.S.2d 394, 64 USLW 2376.

Subcontractor sued general contractor and surety to recover sums due under subcontract. The United States District Court for the Southern District of New York, Charles L. Brieant, J., 872 F.Supp. 1212, granted summary judgment in favor of subcontractor, and defendants appealed. The United States Court of Appeals for the Second Circuit, 49 F.3d 48, certified questions. The Court of Appeals, Smith, J., held that pay-when-paid provision that forces subcontractor to assume risk that owner will fail to pay general contractor is void and unenforceable as contrary to public policy.

Question answered.

2. *State v. Green*, 667 So.2d 756, 20 Fla. L. Weekly S597.

Defendant was convicted in the First District Court, Gadsden County, of sexual abuse. Defendant appealed. The District Court of Appeal reversed and certified questions. The Supreme Court, Overton, J., held that: (1) if alleged victim of child sexual abuse recants at trial, victim's prior inconsistent statement is not admissible when taken as discovery generally, as opposed to preservation of trial testimony, and (2) prior inconsistent statement of recanting alleged victim of child sexual abuse is not sufficient, in and of itself, to sustain conviction.

Questions answered; decision approved in part, quashed in part.

3. *Capers v. State*, 670 So.2d 967, 21 Fla. L. Weekly D17.

Defendant was convicted in the Circuit Court for Santa Rosa County, Frank Bell, J., of multiple sexual offenses involving his stepdaughters, both minors, and received sentences that departed upwardly from sentencing guidelines. Defendant appealed. The District Court of Appeal held that under new sentencing guidelines, vulnerability of the victim due to age is an aggravating circumstance justifying departure from guidelines, even if victim's age is an element of the offense.

Affirmed in part; remanded in part; question certified

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040382

Summarization Training Materials
November 2020

## Advisory Opinions

When a court issues an advisory opinion in response to a question from a state official, the synopsis should identify the party propounding the question and the general nature of the question. The phrase "The Justices of the Supreme Court were of the opinion (answered) (advised) that..."  The mandate should be "question answered" or "answer declined" if no other language is used by the court.

### Examples

Opinion Text:

Supreme Court of New Hampshire.
OPINION OF THE JUSTICES (Alternate Jurors).
No. 93-137.

The following Resolution No. 5, requesting an opinion of the justices, was adopted by the Senate on March 4, 1993, and filed with the Supreme Court on March 9, 1993:

"Whereas, there is pending in the Senate, SB 61, 'An act relative to substitution of alternate jurors after final submission of a case to a jury;' and

"Whereas, SB 61, proposes to amend RSA 500-A:13 to establish procedures allowing an alternate juror to be substituted after the final submission of a case to the jury in either a civil or criminal case; and

"Whereas, the New Hampshire Senate, in considering this proposed legislation, is unsure and uncertain as to the constitutionality of the procedure proposed for substitution of alternate jurors after a case has been finally submitted to the jury; and

"Whereas, a Constitutional defect in the procedure for substituting alternate jurors would adversely affect the fair administration of justice and deprive citizens of the right to trial by jury; and

"Whereas, Art. 74, Part II of the New Hampshire Constitution authorizes the Senate to request an opinion of the Justices of the Supreme Court upon such important questions of law pending and awaiting consideration and action by the Senate; now, therefore, be it:

"Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Is the procedure for substitution of an alternate juror after a civil case is finally submitted to the jury, as proposed in SB 61, permitted by the provisions of Art. 20, Part I of the New Hampshire Constitution, which guarantees the right to trial by jury in civil cases?

2. Is the procedure for substitution of an alternate juror after a criminal case is finally submitted to the jury, as proposed by SB 61, permitted by the provisions of Art. 15, Part I of the New Hampshire Constitution, which guarantees the right of trial by jury in criminal cases?

3. Is the procedure proposed by SB 61 otherwise permitted by the New Hampshire Constitution?

That the senate clerk transmit a copy of this resolution to the Justices of the New Hampshire Supreme Court."

The following response is respectfully returned...

### Synopsis:

Question was propounded by Senate to the Justices of the Supreme Court regarding proposed statutory amendment allowing substitution of alternate jurors after deliberations have begun. The Justices of the Supreme Court were of the opinion that...
Question answered.

*Thomson West – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040383

Summarization Training Materials
November 2020

Opinion Text:

Supreme Judicial Court of Massachusetts.

OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

On July 29, 1993, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court submit their answers to the questions set forth in an order adopted by the House of Representatives on June 16, 1993, and transmitted to this court on June 22, 1993. The order indicates that there is pending before the General Court, a bill House No. 5217, entitled "An Act relative to the incorporation of new city from various existing precincts in the city of Boston." A copy of the bill was transmitted with the order. The order recites that the bill is not a home rule petition and that it was neither voted by the city council nor signed by the mayor of Boston.

Because of doubts concerning the constitutionality of the bill if it were enacted into law, the order seeks the opinions of the Justices on the following questions:

"1. Is this bill, which deals solely with certain precincts within the city of Boston and requires certain actions to be performed and elections held in certain precincts of said city, properly before the General Court or is it in violation of section 8 of amended article 2 of the Constitution of the Commonwealth?

"2. Is this bill, for the incorporation of a city as a corporate entity, in conformity with powers reserved to the General Court under the provisions of section 8 of amended article 2 of the Constitution of the Commonwealth?"

Synopsis:

Questions were propounded by the House of Representatives of the Commonwealth to the justices of the Supreme Judicial Court concerning constitutionality of bill by which portion of existing city might become separate city. The justices of the Supreme Judicial Court were of the opinion that...

Questions answered.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040384

Summarization Training Materials
November 2020

## Specific Relief

**Nature of Action**

The synopsis should briefly indicate who is suing whom and what the case is about. A few words of detail should be used when they will help distinguish the case from others of its genre.  Specific theories relied on by the parties should be included.  Specific types of relief sought, such as declaratory or injunctive relief, should also be included.  The synopsis should not begin with the name of the court.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040385

## Universal Summary

### Types of Paragraphs

The universal summary window is used to create several distinct types of features:

**Topical Highlight.** These are topic specific, and do not have to be as important as Westlaw Bulletin (WLB). They may overlap with WLB.

**Westlaw Bulletin.** These take the most significant Topical Highlight paragraphs, important cases in areas of the law not covered by a topical highlight, and any other newsworthy case.

**State Bulletin.** They do not have to be made for every case from the state, and may overlap Topical Highlight and WLB coverage. Covered states are currently: MA, NY, NJ, PA, OH, IL, FL, TX, LA, CA, WA.

**Issue slip.** This must be prepared for all cases. They should generally be 150 characters or less.

**Federal Case News.** These must be made for all federal cases, except Federal Appendix cases. They may overlap with WLB, Topical Highlight and State Bulletin paragraphs.

**Education Law Summaries and Slips.** These should be made for all cases in which an educational institution is a party, if that status is relevant to the underlying issues. Also, these should be made whenever an education-related issue is discussed, regardless of whether a school is a party. This feature is now coextensive with the Education Law topical highlight.

### How to Make Universal Summaries

For all cases except United States Supreme Court cases, universal summary paragraphs are created by selecting the most significant concrete or dispositive abstract headnote and copying that headnote to the paragraph field in the Universal Summary widget in JWB. To copy the headnote text to the paragraph field, highlight the text of the headnote in the Features window, right click, and select "Create Universal Summary Paragraph." Be careful to select only the text of the headnote. Headnote numbers, topics, citations, and headnote properties should not be included in the universal summary paragraph. You may also simply copy and paste the text of the headnote into the universal summary paragraph field.

The universal summary should generally not be more than 800 characters long and should be an exact copy of the most significant concrete or dispositive abstract headnote. Avoid selecting a headnote that would be a mere recitation of the ITI. No additional language or information, including first impression language, should be added. However, if the universal summary includes an uncommon statute acronym, include the full name of the statute. If the statute acronym is common (e.g., ERISA, ADA, ADEA, CERCLA, NEPA, etc.), there is generally no need to include the full name of the statute.

The In This Issue (ITI) slip is also used as the headline for the universal summary and is created in the same manner as other issue slips. Select a topic and subtopic from the drop-down menu.

The headline should usually be less than 150 characters.

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Summarization Training Materials
November 2020

## Selection Criteria

Selecting cases for topical highlights is largely discretionary. Editors need to be fairly selective in the larger topics, and less selective in smaller topics, or topics that have traditionally been more inclusive.

**Be Selective:** Criminal Justice, Family Law, Health, Labor & Employment, Litigation.

**Use Discretion:** Business Organizations, Commercial Law, Environmental Law, Finance and Banking, Insurance, Real Property, Securities Regulation.

**Usually Highlight:** Antitrust, Bankruptcy, E-Commerce, Education Law, Energy & Utilities, Estate Planning & Probate, Intellectual Property, Maritime Law, Products Liability, Taxation.

Federal editors should be more liberal in selecting cases for highlights and Westlaw Bulletin than state editors.

A court's recognition that an issue is one of first impression is usually a good reason to make a highlight.  This should be noted in the highlight paragraph.  However, compare a first impression issue in California with one in North Dakota.

Overruling and unconstitutional Keycite references can also be reasons to make a highlight paragraph.

Large damages awards, or an unexpected result (man bites dog) usually warrant a highlight paragraph.

**Be more selective when making highlights for cases more than 6 months old (except education law).**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040387

## Judicial Summary Application – Hierarchy



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Summarization Training Materials
November 2020

## Viewing Highlights on Westlaw

1.  Enter **database identifier** (here WTH-**CJ**)

2.  **Cases added in the last two weeks will be listed,** together with ITI headlines.



*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040389

Paragraphs can be viewed by clicking on cite. Paragraphs are linked to the opinion itself.



HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY

TR-0040390

Summarization Training Materials
November 2020

## Circuit Map



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040391

## Constitutional Law Headnotes

Generally, a cite to a constitutional provision in a headnote must be supported by language in the body of the headnote invoking that provision. This requirement may be satisfied by the actual language of the constitutional provision or by language that unambiguously invokes the provision, like search, seizure, self-incrimination, or ineffective assistance. A general reference to a "constitutional" issue is insufficient to support a cite to a particular constitutional provision.

 WRONG: City's failure to hold a hearing before terminating city accountant violated accountant's constitutional rights. U.S. Const. Amend. 14.

 RIGHT: City's failure to hold a hearing before terminating city accountant violated accountant's due process rights. U.S. Const. Amend. 14.

On the other hand, if the court is not clear as to what constitutional provision is being discussed, do not guess which provision is at issue, even by looking up prior cited cases. A headnote stating only that certain conduct or a certain provision is or is not constitutional is classifiable. Constitutionality points tend to double classify to the subject matter and the constitutional protection. A headnote saying only that something is or is not constitutional may lack the specificity required for a constitutional classification, but still classify to the subject matter.

The First, Fifth, and Fourteenth Amendments each contain multiple protections. Generally, the specific protection should be specified. Do not cite the First, Fifth, or Fourteenth Amendment in a headnote otherwise lacking any mention of a specific protection simply because the supporting opinion language appears in the middle of a due process, equal protection, or First Amendment discussion or seems to vaguely invoke those protections.

Finally, any time you write a headnote stating that a statute, regulation, or federal sentencing guideline is unconstitutional, a codenote will need to be created.

## Writing Statute Unconstitutional Headnotes

1. In the body of the headnote, be as particular as you can in describing the affected provision. If the result of the court's holding is that a statute is unconstitutional or preempted, make sure you write the headnote so that it is clear that a statute is affected. For instance, do not say "Immigration authorities could not detain alien..." Rather, say something like "Statute requiring detention of alien... violated due process."

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040392

2. If the statute is unconstitutional as applied, use of the word "applied" in the headnote can make that clear. The appearance of a facial ruling should be avoided. This distinction is important for the KeyCite for statutes/regs product.

3. You may have to look up the cite or style for a constitutional provision. These can be found in the manual.

4. The precision demanded for codenotes should be reflected in the headnotes. Do not use an et seq or range cite in the headnote, unless the court is ruling on the entire act. If the court's ruling only affects certain sections, but the court gives you only an et seq cite, you, possibly in coordination with a verifier or a Codes editor, will have to determine the affected sections and cite only those sections in your codenote. If the holding of unconstitutionality goes to a subsection, so should your cite.

5. In a federal case ruling on a state statute, name the state whose provision is affected.

6. If the court says a section of a statute is unconstitutional (and you make that headnote and that negative treatment), and then the court looks at other sections and determines they are not severable and strikes them down too, make a separate headnote and treatment for that event as well. The severability point would classify to Statutes.

7. Acronym-expansion entries for "U.S. Const. Amend. 4" and other constitutional amendments and provisions are very useful.

## Writing Criminal Law Headnotes Involving Constitutional Protections

In criminal cases involving sequential police actions (e.g., stop, search, detention, confession, etc), each discrete step generally should be addressed in a separate headnote.

The manual contains a useful listing of the particular issues that may arise. Such a headnote should be written as a snapshot of the facts before the officer and should not be written in terms of the trial evidence of those facts. Reasonable suspicion and probable cause are formed from the facts before the officer at the time of the encounter, not from the testimony the officer relates at trial.

> RIGHT: Police officer had reasonable suspicion of criminal activity justifying *Terry* stop of driver to investigate him for drunk driving and to remove keys from ignition to ensure officer safety, where officer observed a bottle of vodka in front seat's center console and saw that driver had passed out behind the wheel. U.S. Const. Amend. 4.

> WRONG: Police officer had reasonable suspicion of criminal activity justifying *Terry* stop of driver to investigate him for drunk driving and to remove

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

keys from ignition to ensure officer safety, where officer testified that he observed a bottle of vodka in front seat's center console and saw that driver had passed out behind the wheel. U.S. Const. Amend. 4.

Although issues like probable cause to search or voluntariness of confession arise in the context of a motion to suppress or the admissibility of evidence at trial, headnotes generally should not mention the evidentiary consequences. However, there are exceptions for doctrines that connect police actions to evidentiary consequences, like "fruit of the poisonous tree," "inevitable discovery," "independent source," and the "good faith" exception to the exclusionary rule.

## Miscellaneous Matters

Generally, it is permissible to follow the court's opinion on issues of capitalization of constitutional provisions. Thus, either "Equal Protection Clause" or "equal protection clause" may be used. Amendment numbers should always be capitalized. (e.g. "Fourth Amendment").

An editor should point out if the court is specifically applying a state constitutional provision or is applying both a state provision and the corresponding federal provision.

When a state court refers to a constitutional provision such as due process, equal protection, or double jeopardy, but does not specify whether it is referring to the state or federal constitutional provision, the presumption is to include a citation to the federal provision at the end of the headnote.  Include a citation to the state constitutional provision, rather than the federal, if the court specifies that it is deciding the matter under the state constitution only.  Include citations to both the federal and the state provisions if the court indicates it is deciding the matter under both constitutions.

## First Amendment

Headnotes involving First Amendment issues should identify the specific First Amendment protection at issue. For example, the following headnote is too vague:

> WRONG:  Statutory prohibition against campaign contributions by parochial schools violated First Amendment. U.S. Const. Amend. 1.

The issue in the headnote could be freedom of religion, freedom of speech, or even freedom of association. It should be identified. If a court speaks only of a First Amendment violation without identifying the specific protection, it is permissible to merely say "violated the First Amendment." There is a "classification of last resort" available for such points.

## Due Process

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040394

Summarization Training Materials
November 2020

The applicable cite to due process in an opinion involving state action is the 14th Amendment; the applicable cite to due process in an opinion involving federal action is the Fifth Amendment. Do not cite both.
Fourteenth Amendment due process limits the exercise of personal jurisdiction by federal courts sitting in diversity. Fifth Amendment due process applies to federal question cases.

Do not cite the 14th Amendment on the theory that another cited amendment only applies to the state by operation of the 14th Amendment, unless the incorporation doctrine is actually involved.

Headnotes discussing due-process requirements for the exercise of personal jurisdiction (minimum contacts, purposeful availment, etc.) should mention due process in the body if the court identifies due process as the source of the requirement. No due-process context or cite is required if the court does not make that connection, as these concepts can have other sources.

## Vagueness/Overbreadth

Both the First Amendment and the Due Process Clause have vagueness and overbreadth doctrines. A headnote about vagueness or overbreadth should make clear which constitutional provision is at issue, if possible, and cite that provision.

## Fair Trial

When the court discusses fair trial as a due process concept, cite the 14th or 5th Amendment (depending on whether state or federal action is involved). Cite the 6th Amendment when the court discusses fair trial as a 6th Amendment concept. Cite neither when the court is unclear.

## Equal Protection

The Equal Protection Clause is in the Fourteenth Amendment. Thus, it applies only to state action. There is no Fifth Amendment Equal Protection Clause. Rather, federal action is subject to scrutiny under the "equal protection component" of the Due Process Clause of the Fifth Amendment. Such language need not be used in an equal protection headnote about federal action. It is sufficient to say that equal protection was not denied, and cite the Fifth Amendment. The important thing is to not give the impression that the Fifth Amendment contains the words "equal protection" or has an "Equal Protection Clause."

## Rational Basis

Both due process and equal protection have notions of "rational basis" and "reasonableness." Before tacking constitutional consequences onto such language, make sure you know which clause is being applied.

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL ·
ATTORNEYS' EYES ONLY

TR-0040395

## Separation of Powers

Article I says "[all] legislative Powers herein granted shall be vested in a Congress of the United States." Article II says "The executive Power shall be vested in a President." Article III states "The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Despite the existence of these provisions, you do not need to cite to any particular article unless the court specifically refers to it. The same would be true of any state separation-of-powers issue. Headnotes are generally written in terms of whether particular legislation violated the separation-of-powers doctrine.

## Preemption

Unless the Supremacy Clause enters the court's preemption discussion, it need not be cited.

## Standing

A cite to Article III is not necessary unless the court specifically refers to Article III or refers to constitutional standing. The applicable state constitutional provision should be cited if it is at issue. Constitutional standing (an Article III requirement) should be distinguished from prudential notions of standing. An acronym-expansion entry for U.S. Const. art. 3, § 2, cl. 1 is quite handy.

## Ex Post Facto

U.S. Const. art. 1, section 9, cl. 3 prohibits federal ex post facto laws; U.S. Const. art. 1, section 10, cl. 1 prohibits state ex post facto laws. Headnotes should usually be written in terms of whether a statute applies retroactively in violation in ex post facto principles.

## Fourth Amendment

The Fourth Amendment should be cited in most headnotes involving searches, seizures, arrests, and stops, unless the court indicates that it is deciding the issue on some other ground, such as a state constitutional provision or a statutory provision (e.g. a statute imposing a knock-and-announce requirement). It is not necessary to specifically refer to the Fourth Amendment in the text of the headnote in order to cite the Fourth Amendment.

## Right to Remain Silent

The Fifth Amendment should be cited in a headnote referring to the right to remain silent. The headnote need not mention the Fifth Amendment.

## Double Jeopardy

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

The Fifth Amendment should be cited in a headnote involving the protection against double jeopardy. It is not necessary to specifically refer to the Fifth Amendment in the text of the headnote; the words "double jeopardy" are sufficiently evocative. Many states have their own constitutional or statutory protections. "Double jeopardy" is probably not an appropriate description for the latter. There is a classification topic Double Jeopardy.

## *Miranda* and *Batson*

Generally, headnotes referring to *Miranda* and *Batson* do not have to cite to any particular constitutional provision, unless the headnote refers to a specific provision. The problem is that those cases can invoke more than one constitutional provision.

## Ineffective assistance of counsel

Headnotes referring to ineffective assistance of counsel generally should cite to the Sixth Amendment, even if the Sixth Amendment is not specifically mentioned in the headnote text, unless it is clear the court is applying only state law (that is very rare). However, when the so-called *Miranda* "right to counsel" is involved, the Fifth Amendment should be cited.

Where an ineffectiveness claim is based on counsel's response, or lack of response, to alleged trial court error or prosecutorial misconduct, and the court resolves the claim by holding there was no such error or misconduct, write the headnote to that underlying claim. There is no need to mention counsel or the right to effective assistance. Be careful, in this regard, to distinguish between *Strickland* prejudice and harmless/prejudicial error respecting the underlying issue.

## Confrontation

Headnotes regarding the constitutional right to confrontation should cite to the Sixth Amendment, and it is unnecessary to specifically refer to the Sixth Amendment in the headnote's text. The headnote should reference confrontation. Headnotes addressing whether statements are "testimonial" under *Crawford* should have confrontation context and cite the Sixth Amendment.

## Speedy Trial

Sixth Amendment speedy trial issues are to be distinguished from statutory speedy trial issues. The classification outline for *Barker v. Wingo* issues is very robust. Granular writing is urged. Each element has a separate line, and there is even a separate line for the balancing of the elements. Statutory speedy trial issues are written quite differently and generally concern when the clock begins to run or whether a particular period of delay is excludable from a statutory period.

*Thomson West – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**The Sixth Amendment right to speedy trial attaches at the time of arrest or indictment. Contrast pre-indictment delay, which is a matter of due process.**

## Eighth Amendment

The words "cruel and unusual punishment" are sufficiently evocative of the Eighth Amendment that the body of the headnote would not need to specifically refer to the Eighth Amendment. Headnotes involving cruel and unusual punishment should cite the Eighth Amendment, unless the court specifically states that a state constitutional provision is at issue.

## Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs implicates the Eighth Amendment's proscription against cruel and unusual punishment, but deliberate indifference to the serious medical needs of a pretrial detainee or a convicted but unsentenced prisoner implicates due process (5th or 14th Amendment, depending on the actor).

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040398

# CONSTITUTIONAL LAW OUTLINE

**History**

**General Structure**
>    Separation of Powers
>    Case or Controversy
>    U.S. Constitution v. State Constitutions

**Provisions of the Original Constitution**
>    Commerce Clause
>    Ex Post Facto Clauses
>    Full Faith and Credit Clause
>    Supremacy Clause

**The Bill of Rights**
>    Civil Provisions
>>        Establishment Clause
>>        Free Association Clause
>>        Free Exercise Clause
>>        Due Process (federal)
>>        Equal Protection (federal)
>>        Takings Clause
>>        Jury Trial

>    Criminal Provisions
>>        Searches and Seizures
>>        Self-Incrimination
>>        Double Jeopardy
>>        Confrontation of Witnesses
>>        Effective Assistance of Counsel
>>        Jury Trial
>>        Speedy Trial
>>        Cruel and Unusual Punishment

**The 14th Amendment**
>    Due Process
>    Equal Protection

**Other Provisions**
>    State Sovereign Immunity

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040399

Summarization Training Materials
November 2020

# CONSTITUTIONAL LAW FOR CASEHEADERS

## History

The current constitution was written in 1787. It replaced the "Articles of Confederation," which had proven to be ineffective. Because the constitution as written did not clearly protect individual rights, 10 amendments specifically listing such rights were ratified in 1791. These are referred to as the "Bill of Rights." Following the Civil War of 1861-1865, the so-called "Civil War Amendments" were adopted. These abolished slavery (Amend. 13), gave former slaves the right to vote (Amend. 15), and, in the 14th Amendment, guaranteed the rights of "due process" and "equal protection" to all citizens.

## General Structure

The constitution sets out the powers of the three branches of the federal government: the legislative, the executive, and the judicial. These are spelled out in Articles I, II, and III respectively. It is designed to avoid giving any one branch of the government too much power. Fortunately for caseheaders, most provisions are seldom litigated.

## Separation of Powers

(U.S. Const. art. 1, § 1 et seq.; art. 2, § 2 et seq.; art. 3, § 1 et seq.) This requirement is inherent in the general structure of the constitution. One branch of the federal government (legislative, executive, judicial) may not encroach on the domain or exercise of powers of the other branches. States often have their own separation of powers restrictions. Write headnotes in terms of whether particular legislation violated the separation of powers doctrine:

*Quasi-judicial functions exercised by Child Support Enforcement Division in seeking child support **did not violate** constitutional **separation** of **powers** doctrine or unified judiciary provision; in child support proceedings, Division was required to follow civil rule on child support proceedings, and had to rely on courts to enforce its orders, and its orders were subject to judicial review.*

*Civil Commitment of Sexually Violent Predators Act **did not violate separation** of **powers** doctrine by allegedly allowing judiciary to create third degree felonies for failure to comply with treatment and supervision requirements; rather, legislature created third degree felony offense for noncompliance, and merely allowed judiciary to order requirements necessary to ensure offender's compliance with treatment and supervision in order to protect community.*

## Case or Controversy

(U.S. Const. art. 3, § 2, cl. 1.) This provision limits federal courts' jurisdiction to "cases" and "controversies." It does not apply to states. It precludes federal courts from giving advisory opinions on federal constitutional questions, no matter how interesting. Write headnotes in terms of whether a case of controversy is presented:

*Factors weighed against a finding that a genuine threat of prosecution existed against mayor, by Hawai'i Campaign Spending Commission (CSC), under state campaign spending laws for fundraising activities, as would support existence of a **case** or **controversy** for subject matter **jurisdiction**; general intent to violate statute in future was not a concrete plan, mayor did not have a credible fear of prosecution, and there was no evidence that any*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040400

Summarization Training Materials
November 2020

*of the statutes had ever been enforced as CSC executive director sought to enforce them in his administrative complaint against mayor.*

*Qui tam plaintiff's* **action** *on behalf of the United States against federal government agency and members of its board of directors acting in their official capacity* **did not present** *any* **"case** *or* **controversy"** *over which court could exercise* **jurisdiction** *under the False Claims Act; any money judgment recovered by plaintiff would merely redistribute government funds from one agency to another.*

Related to the case or controversy requirement are the concepts of **standing**, **ripeness**, and **mootness**. Write headnotes in terms of those doctrines. You do not need to mention the case or controversy requirement on which they are based. A cite to Article III is not necessary unless the court specifically refers to Article III or refers to constitutional standing.

(Plaintiff) had standing to bring action...
Action for... was ripe for review, where...
Action seeking... was not moot, where...

## U.S. Constitution v. State Constitutions

All states have their own constitutions. They are the supreme law in each state, but are superseded by the Federal Constitution to the extent they are inconsistent. (See discussion on the Supremacy Clause). As a practical matter, most state constitutions parallel the Federal Constitution, and their provisions are usually interpreted in the same way. If the court is specifically applying a state constitutional provision, or is applying both a state provision and the corresponding federal provision, the editor should point that out. Common state constitutional provisions that have no federal parallel include those guaranteeing a right to privacy or barring legislation with more than one subject:

*Failure to disperse statute did not* **violate** *defendant's rights under state* **constitution** *to freedom of movement and association or* **right** *to* **privacy**; *statute's limit on freedom of association and movement was only within the immediate vicinity of participants' disorderly conduct.*

*Including the multi-state lottery provisions in appropriations bill did not* **violate single-subject** *rule of state* **constitution.**

# Other Provisions of the Original Constitution

## Commerce Clause

(U.S. Const. art. 1, § 8, cl. 3).  Gives Congress the authority to enact legislation regulating interstate commerce, and implicitly, via the "dormant commerce clause," restricts states from enacting laws that burden interstate commerce. For caseheading purposes, the most common commerce clause issue will be whether a state statute burdens interstate commerce in violation of the Commerce Clause:

*Security Takeover Disclosure Act's requirement that all offerors file a registration statement before making a takeover bid for a target company applied even-handedly to both intrastate and interstate offerors and, thus, did not discriminate against interstate commerce* **in violation of** *the* **Commerce Clause.**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040401

*New York county's enforcement of state's food labeling regulations, though non-discriminatory, imposed undue burden on interstate commerce, **in violation of** dormant **Commerce Clause**; county subjected food packagers to different, heightened net weight standard than that which federal law mandated.*

## Ex Post Facto Clauses

(U.S. Const. art. 1, § 9, cl. 3, U.S. Const. art. 1, § 10, cl. 1). Prohibits state governments and the federal government from retroactively criminalizing an action that was legal when done. Headnotes should usually be written in terms of whether a statute applies retroactively in violation of ex post facto principals:

*As **retroactively** applied to defendant who was 15 years old at time of charged aggravated murder, statutory amendments that subjected a person 21 years of age or older to criminal prosecution in general division of court of common pleas, regardless of age at time of alleged offense and without any necessity of a bindover proceeding in juvenile court, did not **retroactively** criminalize defendant's conduct so as to violate **Ex Post Facto Clause**.*

*Amendments to sex offender registration statute, which **retroactively** applied registration requirements to defendant, did not constitute affirmative disability or restraint, so as to render retroactive application unconstitutional under **Ex Post Facto** clauses of state and federal constitutions, where registration and verification requirements were not onerous, much potential public embarrassment was attributable to underlying conviction, which was already public, and registration fulfilled legitimate governmental interest.*

*Amended statute permitting Kansas Parole Board (KPB) to defer parole hearings for up to 10 years was procedural and, thus, could apply **retroactively** to prisoner without violating **Ex Post Facto Clause**.*

## Full Faith and Credit Clause

(U.S. Const. art. 4, § 1.) This provision requires the states to give full faith and credit to the laws and judgments of other states. When headnoting, the issue is usually whether a judgment from one state is enforceable in another state:

*Trial court was required to give **full faith** and **credit** to prior Oregon child support order; only issue before trial court was arrearages, and arrears due under Oregon order vested when they became due and constituted a final **judgment**.*

## D. Supremacy Clause

(U.S. Const. art. 6, cl. 2). Makes federal law the supreme law of the land. Federal law, if validly enacted, preempts any conflicting state law. This is why "preempted" is included in our Keycite for Statutes database, which covers statutes that have been held unconstitutional. Make headnotes in terms of whether a statute has been preempted. There is no need to mention or cite to the Supremacy Clause:

*To extent that Puerto Rican **statute** provided for automatic expiration of harbor pilot's license, which was issued by Puerto Rico Ports Authority (PRPA), on account of pilot attaining age of 70, **statute was preempted by**, and violated, the ADEA; Puerto Rican **statute** was equivalent of mandatory retirement plan based on age.*

Individual state claims can also be preempted by federal law:

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040402

*Employer's state law claim for tortious interference with contractual relations against union and its business agent **was preempted by** the LMRA, where determination of whether defendants tortiously interfered with employer's contracts with its customers by delaying and disrupting employer's business operations required consideration and interpretation of parties' collective bargaining agreement (CBA).*

## The Bill of Rights

## Civil Provisions

### Establishment Clause

(U.S. Const. Amend. 1.)  This First Amendment provision prohibits any governmental entity from endorsing one religion over another. Write headnotes in terms of whether the establishment clause was violated. As with all First Amendment headnotes, merely noting that the First Amendment was violated is insufficient:

*State department of corrections' funding of halfway house with program of rehabilitation having significant Christian element for treatment of parole violators **did not violate establishment clause**; offenders were free to choose between halfway house and secular programs, there was no evidence that parole officers were influenced by their own religious beliefs in recommending halfway house or other programs to offenders, and all other programs with which state contracted were secular.*

*School board **violated Establishment Clause** in allowing prayers "in the name of Jesus" at board meetings, even if prayers did not disparage other religious faiths and did not proselytize, where invocation was almost always offered by same individual, and no individuals of other religions ever gave invocation.*

Establishment clauses are almost always newsworthy and controversial, and make good highlights candidates.

### Free Exercise Clause

(U.S. Const. Amend. 1.)  This provision prohibits state or federal government restrictions on the free exercise of religion.  Like the establishment clause, write headnotes in terms of whether the free exercise clause was violated:

*School district's denial of religious organization's request for access to certain elementary school bulletin-boards to promote meetings and activities **did not violate** the Free Exercise Clause; school district's restriction was neutral and generally applicable, because it limited access to the bulletin board forum to particular speakers and subject matters, and those limitations were based upon legitimate pedagogical, professional, or safety concerns, not religious criteria.*

*Virginia constitutional provision, barring churches and religious institutions from incorporating, **violated Free Exercise Clause** of First Amendment; provision was neither facially neutral toward religion or of general applicability, and state advanced no state interest supporting provision, much less compelling interest required to sustain its constitutionality.*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040403

### Free Speech Clause

(U.S. Const. Amend. 1.) This provision prohibits state or federal government restrictions on free speech. Cases decided under the Free Speech clause can raise a variety of issues. A common issue is whether certain activity is actually "speech" entitled to First Amendment protection:

*State health department employee's private acknowledgement to her supervisor that she had heard rumors of an affair between supervisor and another department employee was not **protected speech** under **First Amendment**.*

*Judicial candidate's campaign literature, stating candidate's intent to "help law enforcement by putting criminals where they belong--behind bars," and to "bend over backward" to protect victims was not **protected speech** under the **First Amendment**; statements promised favorable treatment for certain parties and witnesses, and created genuine concern that defendants and criminal defense lawyers would not be facing a fair and impartial tribunal.*

Given that certain conduct amounts to protected speech, the issue is often whether government conduct amounts to an impermissible prior restraint on free speech:

*Township ordinance regulating licensing of sexually oriented businesses failed to provide for prompt judicial determination of township board's administrative action, and thus constituted **prior restraint** on speech in violation of **First Amendment**, where ordinance failed to require specific time limits for completion of judicial review, and failed to specify that status quo was required to be maintained during that period and during judicial review.*

*City's sign ordinance provisions regarding temporary signs were unconstitutional **prior restraints** on speech, under the **First Amendment**; provisions provided director of planning and zoning with unbridled discretion to permit or prohibit expressive activity, i.e., provisions gave director discretion to issue temporary permits, but did not provide precise and objective criteria for director to consider.*

Statutes can also be **vague** or **overbroad** if they restrict constitutionally protected activity:

*Student handbook policies relating to discipline, student responsibility, and technology which permitted students to be disciplined for "abusive," "offensive," "harassing," or "inappropriate" behavior, were **overbroad** in violation of students' First Amendment **free speech** rights; policies were not linked within the text to speech that substantially disrupted school operations.*

*County ordinance prohibiting public fondling of genitals was not **overbroad** in violation of **free speech** clause, although ordinance did not appear to except legitimate theatrical performances from fondling prohibition; county had no theatres, and county attorney represented that county had no intention of enforcing ordinance's provisions on any theatrical production which had serious artistic merit.*

*City ordinance prohibiting street performances in historic district, and defining "perform" as including, but not being limited to, eight specific types of street*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040404

*performances, was not unconstitutionally **vague** on its face, so as to violate **free speech** guarantees.*

### Free Press Clause

(U.S. Const. Amend. 1.) This provision prohibits state or federal government restrictions on the press. Many issues, such as prior restraint, vagueness, and overbreath, are analyzed the same as free speech issues. One important application of this clause is to limit defamation suits against the press. If a defamatory article about a "public figure" is published, the publisher can be liable for defamation only of the defamatory material was published "recklessly" or with "actual malice." Even though these cases implicate the free press clause, there is no need to mention or cite to the First Amendment:

*Former husband of well-known singer **was not a "public figure,"** and thus was not required to make showing of actual malice to recover in defamation action based on statements in newspaper gossip column regarding his acrimonious divorce from singer; husband had not sought publicity for himself personally, even considering that his personal business involved the promotion of celebrities.*

*Evidence was insufficient to establish that sports magazine acted with actual malice as to truth of statements in article that professional boxer, who **was a public figure**, was a knowing participant in the fixing of one of his matches, and had used cocaine with his opponent in allegedly fixed match after the match, and thus, First Amendment barred recovery by boxer in his libel action against magazine.*

### Free Association Clause

(U.S. Const. Amend. 1.) This provision prohibits state or federal government restrictions on the right to peaceably assemble. Although an important constitutional protection, it is not litigated as much as speech and religious protections. Some examples:

*Homeless individual's exclusion from neighborhood in which his attorney resided following his conviction for drug offense, under city ordinance banning persons arrested for or convicted of drug offenses from "drug exclusion zones," **violated** his right to **freedom** of **association**; individual had no readily available, realistic alternative to communicate with his attorney.*

*Superintendent's exclusion of parents of expelled high school student from school property did not, in fact, prevent either parent from voting in board of education elections, and thus parents' rights to **freedom** of **association** and assembly were not **violated**; mother voted on school property twice since exclusion was in place, father voted on school property on one occasion, and parents could have voted in person at county clerk's office or by absentee ballot.*

### Due Process/ Equal Protection (federal action)

(U.S. Const. Amend. 5.) The due process clause of the 5th Amendment requires the federal government to provide certain basic protections and implicitly bars it from discriminating against similarly situated persons based on race, religion, gender, country of origin, or certain other statuses. The analysis of

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040405

due process/equal protection issues under the 5th Amendment is the same as that applied to state and local governments under the 14th Amendment. Editors should be sure they cite the correct amendment at the end of their headnotes.

### Takings Clause

(U.S. Const. Amend. 5.) The Takings Clause prohibits state or federal governments from "taking" private property for public use, without just compensation. It provides the authority for "inverse condemnation" claims. Usually, the issue will be whether governmental action amounts to a "taking." The requirement that the government pay just compensation is an obvious consequence:

*The discharge of a government entity's judgment debt in a bankruptcy proceeding **was not a "taking"** in violation of the **Fifth Amendment**.*

*Special assessment imposed on utilities by the Energy Policy Act for the decontamination and decommissioning of the government's uranium enrichment facilities **was not a "taking"** of property within meaning of the Takings Clause of the **Fifth Amendment**.*

*City's denial of permit to build convenience store unless it were granted expanded right-of-way along relevant property for street purposes **was a "taking"** in violation of **Fifth Amendment**, absent showing by city that traffic near store would change as result of change in land use.*

### Jury Trial

(U.S. Const. Amend. 7.) This provision preserves the right to jury trial at common law in civil cases in state or federal court. Courts take the Amendment's "preserved" language quite literally, and determine the scope of the right with reference to jury trials as they were conducted in 1791 at the time the Bill of Rights was adopted. In other words, courts will try to analyze a newly-created cause of action to one existing in 1791 in determining whether a right to a jury trial exists:

*Foreign Sovereign Immunities Act's denial of **jury trial** to construction company suing foreign sovereign's bank for anticipatory repudiation of irrevocable documentary letter of credit did not violate **Seventh Amendment**; actions against foreign states were not known at common law in **1791** and are not analogous to any actions so known, and thus **Seventh Amendment** did not apply.*

Although they are interesting cases, they are encountered much more rarely than 6th Amendment jury trial cases in the criminal context.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040406

Criminal Provisions

**Searches and Seizures**

(U.S. Const. Amend. 4). The Fourth Amendment generally prohibits unreasonable searches and seizures by either state or federal agents. It requires a reasonable suspicion of criminal activity to justify an investigatory stop (*Terry* stop), and requires probable cause to believe a crime has been committed to justify a search or arrest warrant. It also limits circumstances under which warrantless arrests and searches are permitted.

Because so many issues can be raised in a search and seizure case, caseheaders need to be quite specific when describing the underlying issue. A lot of factual detail is also needed. A threshold issue is often whether a "search" or a "seizure" occurred in the first place:

*Actions of officers who entered defendant's residential property while looking for a woman for whom they had an outstanding arrest warrant **did not amount to a "search"** under the Fourth Amendment, even if they had no viable information that would lead them to believe the woman would be at defendant's residence, and thus, their observations while on the property were a proper basis for a **search** warrant, absent any showing that the officers' entry onto the property violated a reasonable expectation of privacy.*

*Actions of police officer in shining spotlight and flashlight into car, parked in front of recently burglarized business at 1:15 in the morning, and having fogged windows indicating presence of someone in vehicle, **did not amount to impermissible search**; officer's use of spotlight and flashlight to see what would be observable in daylight was not unreasonable intrusion into private affairs.*

If a police officer has conducted an investigatory stop (or Terry stop, depending on the court's language), the issue is whether it is supported by a reasonable suspicion of criminal activity:

*Police officer had reasonable **suspicion** to believe that criminal activity was afoot, so as to justify **investigatory** stop of vehicle; stop occurred at approximately 2:00 a.m. in area where there was generally no foot or vehicle traffic at that hour, stop occurred shortly after, and a mere 50 yards away, from where pedestrian had fled police after observing approach of police cruiser.*

*Investigating officer had **reasonable suspicion** that drug defendant was armed, as required to warrant pat-down search incident to **investigatory** detention; defendant and co-defendant matched description given in anonymous tip reporting that hotel room's occupants were about to sell one pound of crack cocaine, defendant was found in bed with covers pulled up to his neck, investigating officer saw movement under blanket and ordered defendant to put his hands up, and defendant refused to comply, keeping his hands under blanket.*

If a search or an arrest is made pursuant to a warrant, the issue will be whether the warrant was supported by probable cause:

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040407

*Search warrant authorizing seizure of defendant's letters to his brother and father was supported by **probable cause** that letters would contain information regarding firing of shots at witness against defendant, with intent of preventing witness's attendance and testimony at trial; police officers' affidavits explained tumultuous relationship between defendant and witness, defendant's harassing of witness, witness's belief that defendant played role in shooting, and defendant's incriminating statements contained in four letters written to family members from jail.*

*Affidavit supplied **probable cause** to issue **warrant authorizing search** of specific address, for presence of drugs; informant stated that he had sold very large quantities of cocaine to defendant charged with drug violations, involving that location, and police independently corroborated informant's statements through tape recorded telephone conversations between defendant and informant. and investigations linking defendant to those locations.*

In most cases, the search will have been made without a warrant. Such a search is illegal, unless one of the exceptions to the warrant requirement applies. Fortunately for prosecutors, there are many:

a) **Search incident to arrest.** A police officer, for his own protection, can search a suspect and the surrounding area while making an arrest:

*Police officer's **search** of defendant's car after his arrest of defendant, who produced apparent drugs from his pocket during pat-down, was within permissible scope of **search incident** to **arrest** even though defendant pulled his car into a parking lot and exited his vehicle before the officer, who was following defendant in an unmarked police car after discovering a license tag violation, pulled his unmarked car into the parking lot, exited his vehicle, approached defendant, and told him the tags did not match the registered car, where the officer approached defendant within moments after he observed defendant exit his car and defendant was in close proximity to his car when the officer approached.*

b) **Automobile Exception.** The police can search a car following the arrest of its driver, even if the driver is no longer physically present:

*Search of van in which defendant was backseat passenger, which uncovered firearm allegedly in defendant's possession, was permissible under **automobile exception** to warrant requirement; after police, who stopped van for defective brake light, arrested driver and front seat passenger for possession of cocaine and imitation air pistol, respectively, they had probable cause to believe that van might contain other drugs or weapons.*

***Automobile exception** to **search** warrant requirement did not apply where suspect's car was legally parked in his residential parking space, suspect and his only alleged cohort were not in the vehicle or near it and did not have access to it, and the police seized the automobile without a warrant, placed it on a wrecker, and hauled it away to be searched at a later date.*

c) **Consent.** The police can conduct a search without probable cause if they obtain the consent of a person with authority over the area to be searched. (People usually consent, even if they know that a search will uncover contraband.) The issue in headnotes is usually whether the consent was voluntary:

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040408

> *Motorist's oral **consent** to **search** of his vehicle was **voluntary**; officers did not handcuff motorist, draw their guns, or use other coercive tactics to obtain **consent**, motorist was not under arrest when he consented, and officer told him he was free to leave.*

d) **Emergency.** (Also called "exigent circumstances.") During an emergency, the police can enter areas that they would otherwise need a warrant to enter. Often, the issue is whether an emergency truly existed:

> ***Exigent circumstances** justified **warrantless** entry into home from which **emergency** dispatcher received report of assault; although call was somewhat vague and it was not known whether the assault was in progress, caller identified herself when reporting assault, and when police officer arrived at home, it was middle of the night, front door was open, and officer heard noise inside that sounded like person standing up and falling down, so that officer could have reasonably feared for safety of someone inside the home.*

> ***Exigent circumstances** existed to justify **warrantless** search of defendant, in form of involuntary removal by medical personnel in an **emergency** room of a seven inches square plastic bag of cocaine from defendant's stomach, and subsequent seizure of bag by police, where a risk of imminent destruction of evidence existed, and the defendant, by swallowing bag, had placed himself in a potentially life-threatening situation.*

e) **Plain View.** If the police are legally authorized to be where they are, their observation of something in "plain view" does not require a warrant:

> ***Plain view** exception to search warrant requirement did not apply to police officers' discovery of marijuana inside defendant's apartment, as officers could not see inside defendant's apartment before they made their uninvited, **warrantless** entry.*

> *Incriminating nature of alleged drug paraphernalia seized during a warranted search of defendant's home for escaped fugitive known to be his friend was not immediately apparent, so that **warrantless** seizure could not be justified under **"plain view"** exception to warrant requirement, where objects in question, consisting of a twist tie, cigarette filter, spoon with some residue on it and unlabeled prescription bottle containing a water-like substance, were not necessarily indicative of criminal activity, and further testing was required to establish that items were contraband.*

f) **Other Exceptions.** Other exceptions to the warrant requirement include the inventory search exception, the border search exception, and the administrative search exception. Refer to the particular exception in headnotes if one of these exceptions is discussed.

### Self-Incrimination

(U.S. Const. Amend. 5). This provision prohibits the government from compelling an accused to be a witness against himself in state or federal proceedings. Under *Miranda*, someone taken into custody must be warned, before any interrogation, that he has a right to remain silent, that anything he says can be used against him in court, and that he has the right to have an attorney present during questioning. Common issues under *Miranda* include

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040409

whether the defendant was "in custody" at the time of his statement, whether he sufficiently understood the warnings, whether he clearly invoked his rights, or whether he instead waived them:

### a) Was defendant in custody?

Defendant *was in "custody,"* for *Miranda* purposes, at time of police questioning, where, upon leaving premises about to be searched by police in connection with reported break-in, defendant *was* immediately handcuffed and detained as possible burglary suspect, and, while handcuffed, *was* questioned while four officers surrounded him, restraining his freedom of movement to degree associated with formal arrest.

Defendant *was not "in custody,"* for *Miranda* purposes, at the time of his voluntary confession to FBI agent, although defendant had been subpoenaed to FBI for purpose of providing fingerprints and photographs, where agent informed defendant that he had complied, that he *was* free to leave, and that he *was* not under arrest.

### b) Did defendant understand the warnings?

Defendant's initialing and signing of a written waiver form containing the required *Miranda warnings* was sufficient to establish that defendant *understood* his rights and knowingly and intelligently waived them, in light of testimony of two government agents regarding the circumstances under which the waiver was obtained.

Defendant's alleged reading ability impediment did not prevent him from understanding his *Miranda* rights as read to him; defendant attended school through tenth grade, successfully completed diving course which required reading and written test materials, and was able to function in various jobs, was coherent when responding to questions asked of him during interrogation and was read *warnings* and asked after each line if he *understood* what was being read, to which he responded affirmatively.

### c) Did defendant invoke his rights?

Defendant clearly and unequivocally *invoked Miranda right to counsel* after he was arrested on suspicion of murder and attempted murder, when, during police interrogation, defendant stated five times that police should take him upstairs to jail cell and that he wanted a lawyer.

After defendant indicated to police that he did not want to talk to them yet, police officer was not justified in questioning defendant regarding the reason why he did not want to talk, and officer should have instead scrupulously honored defendant's request, though defendant's initial statements to officer regarding whether he was willing to waive his *Miranda* rights may have been ambiguous, where defendant's intent to remain silent became clear through further questioning, with defendant ultimately stating "I don't want to discuss it right now."

### d) Did defendant waive his rights?

Evidence at suppression hearing was sufficient to establish that defendant validly and *voluntarily waived* his *Miranda* rights before he was questioned by

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040410

Summarization Training Materials
November 2020

*police investigator at police station about reported sexual abuse of child, despite evidence that he was mildly mentally retarded; defendant never requested access to his family or an attorney, defendant was cooperative, and was later able to paraphrase each of the rights encompassed by* **Miranda** *when he was examined by psychologist.*

*Defendant* **voluntarily** *and intelligently* **waived** *his* **Miranda** *rights when he admitted during search of residence that drugs and gun found in search were his, despite testimony that police officer threatened to take all occupants of home to jail if no one admitted ownership of drugs and gun; defendant was 21 years-old at time of arrest, he indicated he understood his rights, defendant was not intoxicated or sleep-deprived at time, interrogation took place at home and was brief, and there was no evidence of police misconduct or that admission was coerced.*

## Double Jeopardy

(U.S. Const. Amend. 5). This provision prohibits retrying an accused in the same jurisdiction for the same conduct after a conviction or acquittal. It does not prevent separate prosecutions by multiple jurisdictions, such as a federal civil prosecution following a state prosecution based on the same conduct. Double jeopardy issues include whether subsequent trials are the same offense and whether a mistrial amounts to an acquittal that bars retrial:

*Defendants' re-indictment for same course of conduct, namely, engaging in organized criminal activity resulting in theft, while alleging a different victim, did not constitute prosecution for* **"same offense"** *for* **double jeopardy purposes**, *where evidence that defendants stole money from person would not sustain conviction under original indictment alleging victim to be a city; proof of offense as alleged under one indictment would not prove offense alleged under the other.*

*Crimes of possession of marijuana and conspiracy to possess marijuana in a correctional facility were separate crimes for* **double jeopardy purposes**, *and thus, consecutive sentences for the two convictions did not violate double jeopardy protection against multiple punishments for the* **same offense**; *the conspiracy crime was complete at the moment defendant planned the necessary steps with the other conspirator, and conspiracy was not an essential element of possession offense.*

*The* **Double Jeopardy** *clause did not bar* **retrial** *after the prosecutor's* **misconduct** *during grand jury proceeding caused reversal of the first conviction; although the prosecutor violated statutory procedure by questioning a witness during her grand jury appearance, the* **misconduct** *was not an instance in which the prosecutor believed that he was going to lose the case and intended to goad the defendant into asking for a* **mistrial**.

## Confrontation of Witnesses

(U.S. Const. Amend. 6). Generally, this provision gives a defendant the right to confront and cross-examine witnesses in a criminal case, in either state or federal court. A key issue here is whether the admission of hearsay evidence violates the right to confrontation:

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040411

*Testimony that was properly admitted under medical diagnosis and treatment exception to ==hearsay== rule did not ==violate== defendant's right to ==confrontation== in sexual abuse prosecution.*

*Admission of ==hearsay== testimony of decedent's doctor, attorney, and social worker regarding decedent's repeated statements that he intended to care for his sister after his death did not ==violate== defendant's right of ==confrontation==, in prosecution for theft by deception and theft by unauthorized taking or transfer; decedent's statements possessed sufficient guarantees of trustworthiness, it was highly unlikely that decedent would deliberately misrepresent his estate plans to three different persons attempting to help him carry out his wishes in last months of his life, and defendant had full and fair opportunity to confront these witnesses about their memory, truthfulness, and bias.*

### Effective Assistance of Counsel

(U.S. Const. Amend. 6). Under this provision, an accused has a right to counsel at any criminal proceeding, in state or federal court. Do not confuse this with the Fifth Amendment right to counsel during a custodial interrogation under *Miranda*. For headnoting purposes, several issues may arise, including when the right to counsel attached, whether defendant validly waived that right, whether counsel's performance was deficient, and whether counsel's deficient performance prejudiced the defense:

#### a)When did right attach?

*Defendant's Sixth Amendment ==right== to ==counsel attached when== government filed criminal complaint charging her with unlawful importation of marijuana; even if dismissal of complaint caused any sort of meaningful pause in defendant's invocation of her Sixth Amendment ==right== to ==counsel==, close nexus between focus of pre-indictment investigation and charges for which defendant was eventually re-indicted was sufficient to invoke ==right== to ==counsel==, given that government knew of defendant's ongoing relationship with counsel.*

*Neither right to implied-consent advisory nor ==right== to ==counsel attached when== defendant was given a preliminary breath test (PBT) which showed presence of alcohol after defendant was stopped for speeding, even though defendant had a class B driver's license which had a no-alcohol restriction.*

#### b) Was right validly waived?

*Defendant charged with escape from penitentiary ==waived right== to ==counsel voluntarily==, knowingly, and intelligently, where trial court discussed in depth serious pitfalls of proceeding pro se and need for defendant to follow evidentiary and procedural rules, and defendant was fully aware of nature of offense, possible punishment, and possible defenses.*

*==Waiver== of ==right== to ==counsel== was valid in capital murder prosecution, even though it was not a good idea; the defendant was motivated by desire to examine witnesses, not a desire to ensure the death penalty, and he fully understood and ==voluntarily== and knowingly relinquished his ==right== to ==counsel==.*

*Murder defendant knowingly, ==voluntarily==, and intelligently ==waived right== to ==counsel==, although questioning was done by prosecutor rather than judge,*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040412

*where judge conversed with defendant about ramifications of **waiver**, prosecutor explained to defendant that he had a **right** to **counsel** and fully explained the nature, elements, and possible penalties for all five degrees of homicide, and defendant stated that he understood that he was bound by normal rules of procedure, that an attorney might be more familiar with procedure and might be aware of defenses, and that he could **waive** certain rights and defenses.*

### c) Was counsel's performance deficient?

*Defense **counsel's** failure to move for acquittal at close of state's case, and at close of trial, was not **deficient** performance, and thus could not amount to ineffective **assistance**, in prosecution for trafficking in drugs, where state's case-in-chief linked defendant to charged crimes.*

***Counsel's** performance in stipulating that forensic chemist would have testified that 28 bales recovered from ocean contained 975 grams of cocaine at defendant's trial for aiding and abetting, on board vessel of the United States, possession with intent to distribute cocaine was not **deficient,** as required to support claim of ineffective **assistance**; stipulation spared defendant spectacle of twenty-eight bales of cocaine on parade before jury, and was approach agreed to by five codefendants and their **counsel**.*

### d) Was defense prejudiced by deficient performance?

*Defense **counsel's failure** to call witnesses who could have testified that victim and other members of victim's motorcycle gang advanced on defendant after defendant exited the bar and that defendant was punched was strategic decision, which did not **prejudice** defendant, in murder prosecution, barring ineffective **assistance** of **counsel** claim on that basis; although defendant asserted theory of self-defense, witnesses could have been impeached on one or more grounds, and their testimony would not establish that defendant retreated, as necessary to establish self-defense under relevant state law, so that testimony was unlikely to have altered outcome of trial.*

*Defense **counsel's** alleged **failure** to correctly advise defendant of the possible sentence he would receive if he pled guilty to burglary did not **prejudice** defendant, and thus could not amount to ineffective **assistance** of **counsel**; even if the statement by **counsel** regarding possible sentence was deficient, the trial court properly advised defendant of the maximum possible sentence that could be assessed before defendant entered his plea.*

## Jury Trial

(U.S. Const. Amend. 6). The provision gives a defendant the right to a trial by jury in a criminal case in state or federal court. The right is limited to felony cases – it does not apply to misdemeanors.  Issues encountered by headnoters include whether an offense was sufficiently serious to require a jury trial, whether defendant's jury was impartial and whether defendant validly waived his right to jury trial:

### a) Was offense sufficiently serious?

*Violation of Insurance Fraud Prevention Act was not **serious offense** triggering right to **jury trial** under Sixth Amendment; act was civil statute, which, if*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040413

Summarization Training Materials
November 2020

*violated, resulted in civil penalties, and incarceration was not available remedy under act.*

*Requirement that defendant pay $1,400 for his wife's counseling, as restitution for his ==offense== of assault by striking, beating, or wounding within territorial jurisdiction of United States, did not convert such ==offense== from a petty one to a ==serious== one, so as to entitle defendant to ==jury trial==.*

**b) Was waiver of jury trial valid?**

*==Waiver== by defense counsel in defendant's presence was not a ==valid waiver== of ==right== to ==jury trial==.*

*Defendant ==validly waived right== to ==jury trial== on all issues in case, including prior convictions that allowed indecent exposure to be charged as felony, rather than misdemeanor; after being advised of ==right== to ==jury trial== and of consequences of ==waiving== right, defendant agreed to court trial.*

*Defendant did not ==validly waive right== to ==jury trial== in open court, even though he was present during various hearings when a bench trial was mentioned and acquiesced in his attorney's indication that case should be set for a bench trial, where nothing was said at any of hearings, or on day of trial, which would have indicated to defendant that he had ==right== to ==jury trial==, or that such a right was being ==waived==, and on only two dates when it was certain that defendant was in court no statement regarding jury ==waiver== was made by defendant or his attorney.*

## Speedy Trial

(U.S. Const. Amend. 6). This Sixth Amendment provision gives a defendant a right to a speedy trial in a criminal case. Note, however, that most speedy trial issues are governed by a statute or rule, which typically will be more restrictive than the constitution. When headnotes involve the constitutional protection, the issue is usually whether a delay is long enough to violate a defendant's right to speedy trial:

*==Delay== of 143 days between defendant's indictment for unlawful use of a firearm and trial did not deny violate defendant's ==constitutional== or statutory right to a ==speedy trial==; state was responsible for only 40 days of the total ==delay==, and defendant failed to show that any anxiety that he might have suffered caused actual prejudice, or that his ability to defend himself was impaired.*

*Defendant's ==constitutional== right to a ==speedy trial== was not ==violated==, even though his trial for capital murder started 915 days after he was arrested; the reason for the ==delay== was a crowded court docket, defendant failed to assert his right to a ==speedy trial== until the day before trial when he filed a motion to dismiss based on a violation of his right to a ==speedy trial==, and defendant did not argue or present any evidence that evidence was lost or that a witness was unavailable due to the trial ==delay==.*

## Cruel and Unusual Punishment

(U.S. Const. Amend. 8). Prohibits cruel and unusual punishment by the federal government or the states. In criminal cases, the most common issue is

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040414

whether a sentence is excessive in violation of the prohibition. The prohibition can also be discussed in the context of a civil rights case in which an inmate challenges the conditions of his confinement.

## a) Sentencing

*Consecutive **sentences** of minimum of 168 months and maximum of 211 months on two counts of obtaining property by false pretenses, did not constitute **cruel** and **unusual** punishment, but fell within presumptive range for habitual felon with prior convictions for felonious assault with deadly weapon upon law enforcement officer, feloniously obtaining property by false pretenses, and felony escape from prison.*

*Imposition, under California's three-strikes law, of a 27-year to life imprisonment **sentence** for defendant convicted of receiving stolen property, did not violate the Eighth Amendment prohibition against **cruel** and **unusual** punishment.*

*Defendant in capital murder prosecution did not suffer from any mental retardation that would render imposition of **death sentence** a violation of constitutional prohibition against **cruel** and **unusual** punishment, where defendant received a high school equivalency diploma, attended a community college, and was regularly employed during his adult life prior to committing the murder in question.*

## b) Prison conditions

*State **prison** officials did not subject inmate to **cruel** and **unusual** punishment, in violation of Eighth Amendment, by keeping him in disciplinary segregation after completion of his originally imposed sanctions, absent allegation that inmate was being deprived of anything beyond privilege of being in general **prison** population.*

*Corrections officials were not deliberately indifferent to inmate's exposure to second-hand smoke, and therefore inmate was not subjected to **cruel** and **unusual** punishment; **prison** physicians treated inmate by providing medication for his symptoms and issuing him a medical directive for housing with nonsmokers, and no evidence established that other defendants had any knowledge of inmate's condition or his exposure to second-hand smoke after he was diagnosed with smoking-related ailments.*

*State **prison** inmate's denial of contact visitation, exercise privileges, and religious services for 37 days while he was in segregation did not constitute **cruel** and **unusual** punishment, regardless of whether segregation was ordered without hearing.*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040415

## The 14th Amendment

Due Process

(U.S. Const. Amend. 14). Requires state governments to provide certain basic protections. (The 5th Amendment requires the federal government to provide the same protections.) Included are most of the protections established by the Bill of Rights. The most commonly headnoted issues involve substantive due process and procedural due process.

### Substantive Due Process

This aspect of due process places limits on what the government can do. If legislation impacts a "fundamental right," it generally violates substantive due process:

*Husband's asserted right to equitable division of wife's teacher retirement benefits upon marital dissolution was not a ==fundamental right==, and thus statute which effectively prohibited division of wife's retirement benefits did not violate husband's right to ==substantive due process==, where legislature did not explicitly authorize division of teacher retirement benefits in marital dissolution until 1989, and repealed that authorization two years later; right to acquire retirement benefits was not deeply rooted in history and tradition.*

*City's gun control ordinance forbidding possession of unregistered shotgun within city was not a violation of gun owners' ==substantive due process== rights; right to bear arms was not ==fundamental right==, and ordinance was rationally related to city's legitimate governmental interest in reducing crime and firearm-related deaths and injuries by allowing city to destroy unregistered and unregisterable firearms and encouraging law-abiding firearms owners to register their weapons.*

### Procedural Due Process

This requires the government to use fair procedures before depriving someone of life, liberty, or property. For headnoters, the questions usually addressed are whether there is a life, liberty, or property interest at stake and whether procedures provided are adequate:

a) **Life, liberty, or property interest?**

*At-will employee of city had no ==property interest== in her continued employment ==protected by due process== clause.*

*Any hardship suffered by inmate as a result of his inability to participate in sex offender program by date certain was not atypical or significant in relation to the ordinary incidents of prison ==life== so as to implicate a ==liberty interest protected by due process==; there was no indication that inmate was only sex offender imprisoned at facility who was unable to participate in or complete program, resource limitation affecting program was adversely affecting ability of a number of sex offenders in facility to participate in and complete program, and failure to complete program did not add additional punishment.*

*School district's performance evaluation process did not create a ==property interest== in continued employment as a guidance counselor which was ==protected by due process== clause.*

b) **Were procedures adequate?**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040416

*Prison officials' alleged conduct of breaking inmate's television and losing other items upon inmate's transfer did not violate inmate's* **procedural due process** *rights, given that* **adequate** *post-deprivation remedies were available.*

**Due process procedures** *available to public employee were constitutionally* **adequate** *under Fourteenth Amendment, in connection with her reassignment within and later resignation or discharge from state health department; although employee failed to utilize them, state remedies which employee was entitled to, including appeal mechanism for addressing employee grievances, would have provided her with* **adequate** *notice and opportunity to be heard.*

*Firefighter was not denied* **procedural due process** *when city failed to promote him, where city official had discretion to choose best candidate among those certified to him, and firefighter had ample and* **adequate** *state remedies available but failed to pursue them.*

## Equal Protection

(U.S. Const. Amend. 14). Prohibits state governments from discriminating against similarly situated persons based on race, religion, gender, country of origin, or certain other statuses. (The 5th Amendment implicitly requires the federal government to provide the same protections.) Statutes discriminating on the basis of statuses such as race or religion are subject to "strict scrutiny," requiring the government to show that the classification is necessary to a compelling governmental interest. Statutes discriminating on the basis of sex are subject to intermediate scrutiny, requiring it to be substantially related to an important governmental interest. Other statutes are subject to "rational basis" scrutiny, requiring it to be rationally related to a legitimate government purpose. Statutes subject to strict scrutiny are almost always struck down, while those subject to the "rational basis" test are almost always upheld.

When headnoting equal protection cases, two issues usually arise: what degree of scrutiny applies, and whether the statute satisfies the appropriate test. Equal protection questions may also arise in the criminal context in connection with allegedly discriminatory practices during jury selection – so called "*Batson*" challenges.

1. **What degree of scrutiny applies?**

   **Rational basis** *test, not* **strict scrutiny** *test, was appropriate standard to determine whether statute requiring workers' compensation claimant's total incapacity benefits to be offset by social security old age benefits violated* **equal protection** *guarantees of state and federal constitutions, since there was no evidence that legislature intended to discriminate invidiously on basis of disability.*

   *Police chief's decision to interview African-American officers but not white officers in investigating alleged discrimination within police department would not be subjected to* **strict scrutiny** *in* **equal protection** *action, inasmuch as interviews were not race classifying guidelines, procedures, or laws, but rather initial step to attempt to identify potential areas of discrimination.*

2. **Does the legislation satisfy the appropriate test?**

   *Amendment to Michigan School Reform Act (MSRA) providing for the appointment of school reform board only in Detroit school district was* **rationally related** *to a legitimate* **government interest,** *and therefore did not violate* **Equal Protection** *Clause; size of the*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040417

*Detroit school district as compared to other districts provided a rational basis for adopting a different approach to governance.*

*State university law school's affirmative action admissions program, though needed to achieve **compelling governmental interests** in having diverse student body and remedying effects of past discrimination, **was not narrowly tailored** where it treated minority pool of applicants as separate class; although race or ethnicity could be considered a "plus," **equal protection** required comparative evaluation among all individual applicants in determining which were best qualified.*

3.  **Jury selection under *Batson*.**

    *Batson* applied the equal protection clause to prohibit the use of preemptory challenges during jury selection in a criminal case to exclude potential jurors because of their race. Headnotes usually focus on whether prosecutors had a "race neutral" explanation for their decision to strike a member of a racial minority. It's permissible to mention *Batson* in such headnotes:

    *Prosecution offered legitimate and ==race-neutral reason== sufficient to rebut defendant's prima facie showing of discrimination under ==Batson==; prosecutor stated he struck African-American female from panel because he thought that people in artistic or cosmetic professions have a different slant, and there was no evidence that such reason was not applied to both black and white ==potential jurors==.*

    *Prosecutor's proffered reason for striking African-American from jury pool, which was that he made expressions and gestures during questioning that prosecutor felt indicated that he disagreed with aspects of immigration law and that prosecutor therefore felt he might be a "renegade," was ==race-neutral reason==, and thus, defendant failed to show that prosecutor's peremptory strike of the ==potential juror== was race-based in violation of ==Batson==.*

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040418

Summarization Training Materials
November 2020

## Other Provisions

### State Sovereign Immunity

(U.S. Const. Amend. 11). This amendment has been interpreted broadly to makes states immune from some federal claims. It applies to claims asserted against states in federal court. Usually, the issue addressed in headnotes is whether a state is entitled to 11ᵗʰ Amendment immunity:

*State was not entitled to **Eleventh Amendment immunity** from inmate's suit under Title II of ADA alleging that state failed to accommodate his osteoarthritis and osteoporosis.*

*City University of New York and one of its senior colleges were effectively arms of state, and thus entitled to **Eleventh Amendment immunity** from § 1981 and § 1983 claims by student who was arrested and prosecuted for sexually assaulting classmate; any damage award would be paid out of state treasury, and state exercised significant supervisory functions.*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040419

Summarization Training Materials
November 2020

## Constitutional Law Headnotes Practice Problems

### Problem 1 - Fourth Amendment

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a "seizure" for purposes of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). **An officer may properly stop a vehicle when the driver of the vehicle is observed committing even a traffic infraction.** *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Once a vehicle is stopped for a traffic infraction, any passengers within the vehicle are also effectively "seized" for purposes of the Fourth Amendment. *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).

Write an abstract headnote for the sentence that is in boldface. Include necessary constitutional context in the text of the headnote and cite any necessary constitutional provisions.

### Problem 2 – First Amendment – Free Speech

However, "the fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views whenever and however and wherever they please." Wood v. Moss, —— U.S. ——, 134 S.Ct. 2056, 2066, 188 L.Ed.2d 1039 (2014) (internal quotation marks omitted). "[I]t is well understood that **the right of free speech is not absolute at all times and under all circumstances.**" Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). "**[E]ven in a public forum the [State] may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are** *narrowly tailored* **to serve a** *significant governmental interest***, and that they leave open** *ample alternative channels for communication* **of the information.**" Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (emphasis added) (internal quotation marks omitted).

Do the headnotes for the two boldfaced sentences require a citation for the First Amendment?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040420

Problem 3 - Due Process

The following passage is from a state case.

> As a threshold matter, we note that "[w]e may affirm ... on any grounds supported by the record." Commonwealth v. Bartlett, 465 Mass. 112, 117, 987 N.E.2d 1213 (2013). Due process requires a judge to issue a written statement supporting a probation revocation to help "insure accurate factfinding with respect to any alleged violation and provide[ ] an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence" (emphasis added). Black v. Romano, 471 U.S. 606, 613-614, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). Probation violation hearings do not, however, carry the "full panoply of constitutional protections applicable at a criminal trial." Commonwealth v. Bukin, 467 Mass. 516, 520, 6 N.E.3d 515 (2014) (quotation omitted). "Although a separate written statement of the evidence relied on and the reasons for revocation is one of the probationer's due process rights in such proceedings, it is not an inflexible or invariably mandatory requirement and can be satisfied in other ways." Commonwealth v. Morse, 50 Mass. App. Ct. 582, 592-593, 740 N.E.2d 998 (2000). Transcribed oral findings can satisfy or supplement the judge's requirement to issue written findings. See Fay v. Commonwealth, 379 Mass. 498, 504-505, 399 N.E.2d 11 (1980). Like Morse, supra at 593, 740 N.E.2d 998, "this was a simple, straightforward case, and the entirety of the short transcript ... is [the] inculpatory evidence." Therefore, in this case, the judge's statement that the defendant was in violation "even by the terms of [his] own witness,"[4] coupled with the, albeit *727 incomplete, probation violation finding and disposition form, satisfied the defendant's due process rights and afforded him an adequate basis for review.[5] See Fay, supra; Morse, supra.

Using brackets and notes in the margins or writing them below, set forth the necessary abstract constitutional law headnotes for this paragraph. Include necessary constitutional context and citations.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040421

Summarization Training Materials
November 2020

## Problem 4 – Eighth Amendment – Deliberate Indifference

To show a violation of the Eighth Amendment, the plaintiff must prove: (1) "objective exposure to a substantial risk of serious harm"; and (2) "that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). A prison official violates the Eighth Amendment when he shows deliberate indifference to a prisoner's serious medical needs, which equates to the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). We have defined "a serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. Further, when "balancing the needs of the prisoner against the burden on the penal system, the district court should be mindful that the essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. Unit A 1981).

Using brackets and notes in the margins or writing them below, set forth the necessary headnotes for this paragraph. Include necessary constitutional context and citations.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040422

## Problem 5 - Vagueness

When interpreting a probation condition, we rely on 'context and common sense.' " (🚩 **727** *In re I.S.* (2016) 6 Cal.App.5th 517, 525, 211 Cal.Rptr.3d 462.) Probation terms must be "given 'the meaning[s] that would appear to a reasonable, objective reader' " ( *People v. Olguin* (2008) 45 Cal.4th 375, 382, 87 Cal.Rptr.3d 199, 198 P.3d 1), and interpreted in context and with the use of common sense. ( *In re Ramon M.* (2009) 178 Cal.App.4th 665, 677, 101 Cal.Rptr.3d 158.) **A probation condition "should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language' " ' " or if its terms may be made reasonably certain by reference to " ' "other definable sources." ' "** ( *Hall*, *supra*, 2 Cal.5th at p. 501, 213 Cal.Rptr.3d 561, 388 P.3d 794.)

Question - The headnote for the boldfaced sentence should include: (a) a cite for First Amendment, (b) a cite for Fourteenth Amendment, (c) a cite for both Amendments, or (d) no cite.

## Problem 6 – Vagueness – second example

The Fourteenth Amendment to the United States Constitution along with article I, section 3 of the Washington State Constitution require that citizens be afforded fair warning of proscribed conduct. *Id.* at 752, 193 P.3d 678 (citing *City of Spokane* v. *Douglass,* 115 Wash.2d 171, 178, 795 P.2d 693 (1990)). **To that end, a community custody condition is unconstitutionally vague if it "(1) ... does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) ... does not provide ascertainable standards of guilt to protect against arbitrary enforcement."** **679** *Id.* (alterations in original) (quoting *Douglass,* 115 Wash.2d at 178, 795 P.2d 693 (citing *Kolender* v. *Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983))). Importantly, the disputed terms are considered in the context in which they are used, and "[i]f persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." *Douglass,* 115 Wash.2d at 179, 795 P.2d 693. **A community custody condition "is not unconstitutionally**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040423

Summarization Training Materials
November 2020

**vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct."** *City of Seattle* v. *Eze,* 111 Wash.2d 22, 27, 759 P.2d 366 (1988). However, a stricter standard of definiteness applies where the community custody condition prohibits material protected by the First Amendment. *Bahl,* 164 Wash.2d at 753, 193 P.3d 678.

Using brackets and notes in the margins or writing them below, set forth the necessary headnotes for the two boldfaced sentences.  Include necessary constitutional context and citations. The cited section of the state constitution contains a due-process clause.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040424

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Construction of Instruments

A headnote on the construction or validity of contracts, wills, licenses, charters, leases, city ordinances, etc., should ordinarily contain a brief summary thereof.  Where the particular language of the instrument becomes critical, it should be quoted verbatim. However, avoid long quotations with ellipses and brackets. Focus on the key words at issue.

**EXAMPLES:**

Provisional employees were "temporary employees" for purposes of the notice requirement of city ordinance providing that, if the discharge is not for disciplinary reasons, permanent employees must be given 45 days' notice and temporary employees must be given ten days' notice.  (W & P would be appropriate here.)

Shooting incident, in which campground's caretaker shot camper during altercation at campground, was not an "occurrence" within meaning of bodily injury liability provision of campground owner's property insurance policy, which defined "occurrence" as an accident, where camper's injuries resulted from an intentional assault by caretaker. (W & P would be appropriate here.)

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040425

## Example 1

Slamow v. Delcol, 571 N.Y.S.2d 335

The parties entered into a residential real estate contract of sale containing a mortgage contingency clause wherein the plaintiffs' obligation to purchase was made contingent upon their obtaining, by a specified date, a written commitment from an institutional lender to make a loan to the purchasers "of not less than $201,375". After the purchasers' mortgage application for $241,650 had been rejected and their request pursuant to the terms of the contingency clause for the return of the down payment declined, the plaintiffs brought suit to recover the down payment. The court granted the defendant's motion for summary judgment and denied the plaintiffs' cross motion, finding that, as a matter of law, the plaintiffs breached the contract by applying for a mortgage that was approximately $40,000 more than that "required" under the terms of the contingency clause. The plaintiffs now appeal on the grounds, *inter alia,* that the court ignored the plain meaning of the contract terms and effectively rewrote them in favor of the defendant.

... The defendant here would have this court interpret the contract provision to mean that the plaintiffs were required to apply for a mortgage "not to exceed $201,375" rather than one for the existing provision "not less than $201,375". The interpretation the defendant urges is contrary to the plain words utilized in the contract and language to give effect to that interpretation was readily available had it been the intention of the parties to include such a limitation  ... There can be no doubt that if the defendant had intended a more specific, limited, or narrower meaning for terms used, then the burden was upon him, as drafter of the contract, to so specify, and his failure to do so must not operate to the plaintiffs' detriment.

... Pursuant to the terms of the contract, we find that the plaintiffs had the right to a return of their down payment as of September 1, 1988, since no mortgage commitment had yet been obtained as of that date.

_Thomson Reuters - Proprietary Information_

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040426

Summarization Training Materials
November 2020

## Example 2

City of Lake St. Louis v. Davis, 816 S.W.2d 924

City sought to enjoin Mr. Davis from parking his recreational vehicle in a residential area between 9 p.m. and 9 a.m. "other than [in] an enclosed structure or covered carport." The action was based on LAKE SAINT LOUIS, MO., CODE § 76.730.4: "In areas zoned residential, the parking of commercial vehicles or recreational vehicles any place other than an enclosed structure or covered carport shall be unlawful between the hours of 9:00 p.m. and 9:00 a.m., except in cases of emergencies, or by permit as hereinafter provided."

... Mr. Davis contends, however, that he is not in violation of the ordinance. He argued to the trial court, and before us, that his "unique situation" brings him within the exception "in cases of emergencies."
The "unique situation" involves two components. First, his health. He has "a very bad heart," high blood pressure, diabetes, diverticulitis, and problems with his gall bladder, liver, and spleen. Second, on an average of once or twice a month, the electricity to his house goes off. When the electricity goes off, he uses the motor home. The motor home has a generator which provides electricity for heat or air conditioning.
No physician or medical person ever told Mr. Davis he needed to have a motor home. In fact, no one ever told him he needed a motor home.

... Turning to the ordinance, the restriction is not applicable "in the case of emergencies." The ordinary meaning of "emergency" is "an unforeseen combination of circumstances or the resulting state that calls for immediate action." Webster's Third New International Dictionary 741 (G. & C. Merriam Co. ed. 1976). See also Black's Law Dictionary, which defines "emergency" as "[a] sudden unexpected happening; an unforeseen occurrence or condition; perplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity." BLACK'S LAW DICTIONARY 522-523 (6th ed. 1990).
Here, Mr. Davis' situation is not an emergency. His is not "an unforeseen combination of circumstances." To the contrary, Mr. Davis may not know when his electricity will go out, but he clearly recognizes, anticipates, and foresees his electricity will go out. Thus, this circumstance is not unforeseen.
Nor is the condition of his health unforeseen. He is aware of his health problems.
Thus, in considering both circumstances, Mr. Davis is able to foresee his situation and make plans to accommodate it. Consequently, the parking of the motor home does not fall within the ordinance's emergency exception.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040427

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Error

**BE PRECISE:** It is important to be precise when referring to error. The distinctions between error, harmful error, prejudicial error, reversible error, plain error, invited error, and clear error are very significant to our customers. The precise nature of the error also greatly affects the classification of the headnote.

**TYPES OF ERROR:**

- Plain error (called "fundamental error" in some jurisdictions): An error that is so obvious and prejudicial that an appellate court will address it and grant relief even though the parties failed to preserve the error by raising a proper objection at trial.
- Harmful Error/Reversible Error/Prejudicial Error: A preserved error that affects a party's substantive rights or the case's outcome, providing a basis for reversal.
- Invited Error: An error that a party cannot complain about on appeal because that party's conduct encouraged or prompted the trial court to commit the error.
- Clear Error/Manifest Error: Typically applies to review of the trial court's findings of fact. "Clear error" is frequently defined as occurring when the appellate court is left with a definite and firm conviction that a mistake has been made.

**MULTIPLE CONCRETE HEADNOTES ON ERROR MAY BE REQUIRED:** Often, two headnotes will be required to dispose of an error. The first headnote typically will discuss whether error occurred in the first instance or whether a challenge to the error was preserved, while the second headnote will address whether the error was plain error, reversible error, clear error, prejudicial error, harmful error, etc.

A headnote that there was underlying error should not say "trial court erred..." Instead it should say, for example, that some witness was incompetent, or some evidence was irrelevant, or some sentence was excessive, or some instruction created confusion. A second headnote will say, for example, that the error in admitting the testimony of the incompetent witness was or was not harmful (or prejudicial, or reversible), in light of the other evidence presented or the other actions taken by the trial court.

### *Example: 3 headnotes disposing of a court's error discussion*

**Preservation Headnote:** Defendant preserved for appellate review his argument that trial court erred during murder prosecution in admitting evidence of defendant's past attempt at strangling victim, who was his ex-wife, where defense counsel filed a pretrial motion in limine to exclude the evidence and then renewed objection to admissibility of the evidence during trial.

**Underlying Error Headnote (note: this headnote does not say "trial court erred in admitting" the evidence. Focuses on inadmissibility of the evidence instead):** Evidence of defendant's prior attempted strangulation of victim, his ex-wife, was not admissible as relevant to proving motive, in prosecution for murder and other crimes premised on victim's strangulation death; state asserted that evidence of attempted strangulation was relevant to show reason for pending divorce, but while the divorce might have been relevant to motive, the underlying cause of that divorce was not. Idaho R. Evid. 404(b).

**Harmless Error Headnote:** Trial court's error in admitting evidence of defendant's past attempt at strangling victim, his ex-wife, was harmless, in murder prosecution premised on victim's strangulation death; defendant made a number of incriminating statements to cellmates about victim not coming back and how she was "pushing up daisies," with defendant specifically telling one cellmate that pending strangulation charge was no big deal and that he barely choked victim. Idaho R. Evid. 404(b).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040428

**PLAIN ERROR/FUNDAMENTAL ERROR:** If a challenge to the underlying error was not preserved, the court may discuss whether it was plain or fundamental error. If the court resolves the plain error issue by saying there was no underlying error, just make the underlying point. E.g., the court says there was no plain error in allowing certain argument because the argument represented a proper plea for justice, just make the underlying point that the specified argument was a proper plea for justice.

**Case Example:** Mitchell v. State, 424 P.3d 677

### 1. *Harjo* Hearing

1¶ 8 Mitchell contends his convictions must be reversed because the district court failed to hold an *in camera* hearing, pursuant to *Harjo v. State*, 1990 OK CR 53, 797 P.2d 338, to determine the existence of a conspiracy before admitting his co-conspirator's statements. Review is for plain error only because Mitchell did not request a *Harjo* hearing below or challenge the admission of his co-conspirator's testimony on this basis at trial. This claim is without merit.

23¶ 9 Under the plain error test, the burden is on Mitchell to show the existence of an actual, obvious error that affected his substantial rights. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. *See also* *682 *Simpson v. State*, 1994 OK CR 40, ¶¶ 10 & 30, 876 P.2d 690, 694 & 700-01. This Court will correct plain error only if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings or otherwise represented a miscarriage of justice. *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

456¶ 10 Mitchell challenges the in-court direct testimony of his co-conspirator, Ramie Brown.[3] Independent evidence establishing the existence of a conspiracy is not necessary where coconspirator statements are admitted through direct trial testimony subject to cross-examination, because the direct testimony of the co-conspirator is not hearsay. *Hackney v. State*, 1994 OK CR 29, ¶ 4, 874 P.2d 810, 813; *Johns v. State*, 1987 OK CR 178, ¶¶ 7-8, 742 P.2d 1142, 1146. Consequently, a co-conspirator may testify concerning his own participation and his observation of other co-conspirators' conduct. *Hackney*, 1994 OK CR 29, ¶ 4, 874 P.2d at 813. The rule in *Harjo*—requiring independent evidence of a conspiracy during an *in camera* hearing prior to the admission of a co-conspirator's statements—applies only to the admission of a co-conspirator's out-of-court statements and does not apply to the direct in-court testimony of a co-conspirator. *Huckaby v. State*, 1990 OK CR 84, ¶ 13, 804 P.2d 447, 451. Under our cases, no independent evidence of a conspiracy was required before Brown took the witness stand and testified against Mitchell. The district court properly admitted Brown's testimony without a *Harjo* hearing because one was not required. *See Hackney*, 1994 OK CR 29, ¶ 4, 874 P.2d at 813. **For these reasons, we find that Mitchell has not shown that error, plain or otherwise, occurred.** This claim is denied.

**Concrete Headnote** (does not mention "plain error" because the Court of Criminal Appeals concluded there was no error at all, i.e., a hearing was not required):

Trial court was not required to conduct in camera hearing to determine the existence of conspiracy prior to admitting co-conspirator's testimony in felony murder trial; co-conspirator directly testified at trial and was subject to cross-examination, and thus no independent evidence of a conspiracy was required before co-conspirator took the witness stand and testified against defendant.

**Wrong:**

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Trial court did not commit plain error in failing to conduct in camera hearing to determine the existence of conspiracy prior to admitting co-conspirator's testimony in felony murder trial; co-conspirator directly testified at trial and was subject to cross-examination, and thus no independent evidence of a conspiracy was required before co-conspirator took the witness stand and testified against defendant.

**CLEAR ERROR/MANIFEST ERROR:** A determination of clear or manifest error strictly applies only to finding of fact. If an appellate court purports to find some conclusion of law "clearly erroneous," the underlying substantive point should ordinarily be picked up.

<u>Wrong:</u>

Labor and Industry Review Commission (LIRC) clearly erred in concluding that workers' compensation statute, providing that commencement of action for review shall not relieve employer from paying compensation as directed when such action involves only question of liability as between employer and one or more insurance companies or as between several insurance companies, could reasonably be interpreted to mean that insurer does not have to pay compensation during review proceedings when one insurer unilaterally raises issue of some unnamed insurer's liability. W.S.A. 102.23(5).

<u>Instead:</u>

Workers' compensation statute, providing that commencement of action for review shall not relieve employer from paying compensation as directed when such action involves only question of liability as between employer and one or more insurance companies or as between several insurance companies, could not be reasonably interpreted to mean that insurer does not have to pay compensation during review proceedings when one insurer unilaterally raises issue of some unnamed insurer's liability. W.S.A. 102.23(5).

**HEADNOTE TEMPLATE FOR INVITED ERROR:** The invited error doctrine precludes a party from obtaining relief based on an error it effectively requested. For example, if a party claims submitting some issue to the jury created confusion, but that party is the one that requested the issue be submitted to the jury, no relief would be available.

<u>Sample headnotes:</u>

Any error in admission of allegedly confusing self-defense instruction to jury was invited error, which provided no basis for relief from murder conviction, where instruction was requested by defendant.

Any error in admission of unqualified testimony as to tool mark identification was invited error, which provided no basis for relief from defendant's convictions for conspiring to commit robbery and first-degree murder, where the only portion of witness's testimony that defendant argued constituted error was elicited by defense counsel on cross-examination.

**HEADNOTE TEMPLATE FOR HARMLESS ERROR WHEN COURT DOES NOT DECIDE UNDERLYING ERROR ISSUE:** On some occasions, the court may not decide whether there was error at all, but will discuss whether it was harmless.  An example of a standard construction for this instance is as follows:

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040430

Trial court's error, if any, in allowing prosecutor to ask murder defendant to comment on credibility of another witness was harmless, where defendant simply reiterated his claim that he did not speak with witness in any depth at all.

<u>Alternative acceptable format:</u>

Any error committed by trial court in admitting "other bad act" evidence of defendant's prior drug-dealing activity was harmless, in prosecution for felony possession of narcotic drug and other drug offenses; State presented evidence of defendant's constructive possession of heroin found in house that he shared with girlfriend, jury was specifically instructed to use evidence of other bad acts only for the purpose of evaluating defendant's intent or knowledge, and nothing in record suggested that jury failed to follow court's instruction. Ind. R. Evid. 404(b).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040431

Summarization Training Materials
November 2020

Example A

State v. Willis, 721 So.2d 103

[**Note:** The "other crimes" evidence at issue is evidence of a prior drug transaction in which the defendant sold methamphetamine]

In this assignment of error, the defendant raises several issues. First, the defendant claims that the trial court should have ruled the "other crimes" evidence inadmissible on the grounds that the prosecution did not present clear and convincing evidence of the crime at the pretrial hearing and that the admission of the evidence created an unfair prejudice for the defendant. He argues that the prejudicial admission of the evidence was compounded by the district attorney's repeated reference to the prior offense in his closing argument.

It is well settled that before "other crimes" evidence can be admitted at trial, the state must: (1) comply with the notice requirement and limiting instructions set out in State v. Prieur, 277 So.2d 126 (La.1973), (2) prove by a preponderance of the evidence evidence that the other bad act occurred and was committed by the defendant, (3) show that the evidence falls within one of the La.Code Evid. art. 404(B)(1) exceptions, and (4) show that the probative value of the evidence outweighs its potential prejudicial value. See State v. Jackson, 625 So.2d 146 (La.1993); see also State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96); 672 So.2d 197, writ denied, 721 So.2d 103) 96-1126 (La.10/4/96); 679 So.2d 1379 (changing the second prong of the test from clear and convincing evidence to preponderance of the evidence).

The defendant argues that the trial court allowed "other crimes" evidence to come in without respecting part (1) and (4) of the test. We reject the defendant's claim without reaching the merits. It is not necessary for this court to determine whether the other crimes evidence was properly admitted if we find that this constituted a harmless error. Crawford, 672 So.2d 197.

In the instant case, we find that, whether or not an error was committed, the error was harmless. It is already established that sufficient evidence existed to prove that the defendant actually or constructively possessed the methamphetamine on the day in question without using the testimony regarding the previous offense. Furthermore, the trial court instructed the jury to consider the evidence only for the purpose of proving the defendant's guilty knowledge. The trial court further instructed the jury that they may not find the defendant guilty for the charged offense just because he may have committed another offense.

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

TR-0040432

Summarization Training Materials
November 2020

## Example B

Newton v. Ryder Transportation Services, Inc., 206 F.3d 772

[Employee (Newton) of truck lessee alleged that he suffered injuries as result of accident because lessor (Ryder) negligently failed to complete certain mechanical repairs and negligently failed to replace truck's defective seat belt.]

Ryder contends that the contents of the accident report were admissible because the information in it qualified as a hearsay exception under Fed.R.Evid. 803(5). That rule permits the admission of a "record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly." If these predicates are satisfied, the record may then be read into evidence, but it is not itself received as an exhibit. ....

The rule makes no attempt to spell out a precise method that courts should use for establishing the witness's initial knowledge or the contemporaneity and accuracy of the record in question, but rather leaves these matters to be "dealt with as the circumstances of the particular case might indicate." See Fed.R.Evid. 803(5), advisory committee notes to 1972 proposed rules. Mr. Newton argues that the accident report is inadmissible because it is unclear whether Sergeant Parker received the information from Mr. Newton or from some other person. We disagree...

Sergeant Parker, an experienced highway patrol officer who routinely prepares reports of this kind, acknowledged that he prepared and signed the report on the day of the accident, that it was accurate to the best of his knowledge, and that the information in it could have come only from Mr. Newton. While it is, of course, the trial court's prerogative to decide whether the necessary factual foundation for the admissibility of evidence has been laid, see Fed.R.Evid. 104(a), the court here gave no indication that it disbelieved Sergeant Parker, and we believe that it implicitly indicated that it did believe him. We conclude, therefore, that Ryder established the necessary predicates for the admission of the report under Fed.R.Evid. 803(5) and that the report was therefore admissible. See Greger, 820 F.2d at 943.

Mr. Newton maintains that if there was error in the exclusion of the report, it was harmless because the contents of the report were merely cumulative, see Porchia v. Design Equipment Co., 113 F.3d 877, 881 (8th Cir.1997). Ryder, on the other hand, contends that the trial court's exclusion of the report was prejudicial because it was "relevant to dispute Newton's contention [at trial] that he was not wearing a seatbelt," and because it was "necessary to refute Newton's contention [at trial] that the accident occurred due to the truck pulling hard to the right." We agree with Ryder.

While there were witnesses who testified at trial that Mr. Newton could have worn the seat belt because it was mechanically sound, the excluded report was the only evidence that Mr. Newton in fact stated that he was wearing the seat belt at the time of the accident. The exclusion of the report was therefore clearly prejudicial on this score. Bobby Rice, the trucking manager of Mr. Newton's employer, and Dr. Jeffrey Hubacek, Mr. Newton's emergency room physician, both testified, moreover, that Mr. Newton admitted to them that he fell asleep at the wheel. Although the report repeats the testimony of Mr. Rice and Dr. Hubacek on this issue, it provides important additional support directly contradicting Mr. Newton's claim that the accident was caused by the truck's mechanical problems. We therefore cannot say that the evidence that the report provided was "merely cumulative" on this point, cf. Johnson v. Richardson, 701 F.2d 753, 756 (8th Cir.1983). We believe that the trial court committed reversible error because the contents of the accident report on both matters was of "a critical nature, so that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted," Adams v. Fuqua Industries, Inc., 820 F.2d 271, 273 (8th Cir.1987).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040433

## Footnotes

\*

Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1 In summarizing his argument, Gonzalez identifies another issue: whether the district court violated his rights to trial, confrontation, and due process with respect to the underlying drug charges. Gonzalez has waived this argument by not supporting it with any authority or including it in the body of his brief. See *United States v. Thames*, 214 F.3d 608, 611 n. 3 (5th Cir.2000) (holding that the appellant waived an argument listed only in his summary of the argument).

2 While the written order identified § 5K2.21 as the basis for the sentence, it also stated that "[t]he defendant absconded from a serious drug offense in which co-defendants received no less than 52 months custody."

3 Recently, in *United States v. Jones*, we noted the tension in our decisions with regard to the third prong of the plain error test. 444 F.3d 430, 437-38 (5th Cir.2006). In the context of a district court misapplying the Guidelines in its written statement of reasons, we have upheld the defendant's sentence because the trial judge *could* reinstate the same sentence. *Id.* (citing *United States v. Ravitch*, 128 F.3d 865, 869 (5th Cir.1997)). In the context of misapplication or misinterpretation of an enhancement under the Guidelines, we inquired whether, but for the district court's misapplication of the Guidelines, it was reasonably probable the defendant *would* have received a lesser sentence. *Id.* (citing *United States v. Villegas*, 404 F.3d 355, 364 (5th Cir.2005) (finding that defendant satisfied the third prong of the plain error test)). In the instant case, the district court could impose the same sentence on remand, and it is not reasonably probable that Gonzalez would receive a lesser sentence on remand; therefore, as in *Jones*, we need not delve into the question whether the two "can be harmonized or which standard governs." *Id.* at 438.

### Error-related concrete headnotes:

1. **Failure to preserve appellate arguments:**

Defendant who pled guilty to failure to appear failed to preserve for appellate review his claims that he was being punished for conduct not found beyond reasonable doubt or in violation of his right to jury trial, and that pre-sentence report had already taken into account underlying drug charge for purposes of determining applicable Guidelines range, where defendant failed to raise such objections before the district court. U.S. Const. Amend. 6

2. **Underlying error in basis for upward departure:**

Sentencing court was required to make findings that defendant who pled guilty to failure to appear engaged in conduct underlying drug charges dismissed as part of plea agreement, prior to imposing upward departure sentence upon defendant based upon dismissed or uncharged conduct, where pre-sentence report (PSR) adopted by court did not describe facts underlying drug offenses and defendant was never sentenced on such charges. U.S.S.G. § 5K2.21.

Sentencing court's statement of reasons was sufficient to support imposition of upward departure sentence upon defendant who pled guilty to failure to appear based upon aggravating facts, where court's statement indicated that it determined that properly calculated advisory Guidelines range did

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040438

not adequately take into account circumstances of defendant's case, and that it considered approved statutory factors, including nature and circumstances of defendant's offense of conviction, and need to provide just punishment and promote adequate deterrence to criminal conduct. 18 U.S.C.A. § 3553; U.S.S.G. § 5K2.20.

3.     **No relief** based on plain error:

**<u>WRONG</u>:**

Error in imposition of upward departure sentence upon defendant who pled guilty to failure to appear, based upon dismissed or uncharged conduct, did not affect defendant's substantial rights **and was harmless**, where upward departure was justified based upon aggravating facts, and nothing in record indicated that district court would have sentenced defendant differently had it applied correct ground for departure. 18 U.S.C.A. § 3553(a)(2); U.S.S.G. §§ 5K2.0, 5K2.21.

**<u>RIGHT</u>:**

Error in imposition of upward departure sentence upon defendant who pled guilty to failure to appear, based upon dismissed or uncharged conduct, did not affect defendant's substantial rights **and, thus, was not plain error,** where upward departure was justified based upon aggravating facts, and nothing in record indicated that district court would have sentenced defendant differently had it applied correct ground for departure. 18 U.S.C.A. § 3553(a)(2); U.S.S.G. §§ 5K2.0, 5K2.21.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040439

Summarization Training Materials
November 2020

# MISCELLANEOUS ISSUES—Words & Phrases

*Words & Phrases* is a print publication which is comprised of headnotes defining legal terms. Westlaw also has a Words and Phrases database, and Words and Phrases (WP) is available as a search field in caselaw databases. These are all useful tools for researchers to find legal definitions for words and phrases. Words and Phrases are particularly useful to contract and insurance practitioners because of the importance of standardized phrases in contracts and policies.

**A page from the Words and Phrases print publication:**

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040440

Summarization Training Materials
November 2020

**Words and Phrases field search in caselaw databases on Westlaw:**



**Search in Words and Phrases database on Westlaw:**



**Words and Phrases display with a headnote in a case reporter:**

## 2. Appeal and Error ⟐854(2)

The "tipsy coachman rule" allows an appellate court to affirm a decision despite a finding of error in the lower court's reasoning as long as there is an alternative basis to justify affirming the decision.

See publication Words and Phrases for other judicial constructions and definitions.

## 3. Courts ⟐91(2)

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040441

Summarization Training Materials
November 2020

Guidelines for creating Words and Phrases

- **W&P candidates include both definitions and examples:** W&P references are not limited to technical legal terms nor to pure definitions. Headnotes which give examples of particular legal terms are also good W&P candidates.

- **Do not make W&P from definitional context added to a headnote on something else:** A W&P headnote should involve a repeatable phrase, usually from a statute or contract, or a legal rule or doctrine. The W&P should not be based on definitional context tacked onto a point about something else.

For example, no W&P should be made for "lodestar" amount in this headnote:

Lodestar amount of attorney fees, that is reasonable hours times a reasonable rate, may be adjusted to account for subjective factors.

- **Principal word should appear first in the W&P:** In making a W&P reference, the leading or principal word must appear first, if possible, and common or unimportant preliminary words, such as prepositions, should be omitted unless they are a part of the word, phrase, or clause construed. A term like "doctrine" would typically be added at the end of the W&P reference, if necessary. For example, say simply "res judicata," not "doctrine of res judicata." Say "law of the case doctrine," not "doctrine of law of the case."

<u>**Examples:**</u>

**WRONG:** "Doctrine of res judicata" provides that final judgment on the merits is conclusive as to rights of parties, creating absolute bar to subsequent action involving same claim, demand, or cause of action.

**RIGHT:** "Res judicata doctrine" provides that final judgment on the merits is conclusive as to rights of parties, creating absolute bar to subsequent action involving same claim, demand, or cause of action.

**RIGHT:** Doctrine of "res judicata" provides that final judgment on the merits is conclusive as to rights of parties, creating absolute bar to subsequent action involving same claim, demand, or cause of action.

In some instances, however, the word doctrine must be included as part of the word and phrase for the entry to make sense, but the word should be included at the end.

**EXAMPLE:** "Avoidable consequences doctrine" allows jury to relieve defendant of responsibility for consequences of injury to the extent that jury finds that plaintiff acted unreasonably and thereby enhanced his or her damages.

- **Include context in the headnote if needed to understand the significance of the W&P:** Context will often be required for a W&P reference. When stating that a certain set of facts constitutes or does not constitute something within a constitutional provision, statute, ordinance, contract, bond, will, etc., that particular constitutional provision, statute, ordinance, contract, bond, will, etc. should be mentioned.

<u>**Examples:**</u>

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040442

**WRONG:** For purposes of Railway Labor Act, "minor disputes" are those growing out of grievances or out of interpretation or application of agreements covering rate of pay, rules, or working conditions and involve controversies over meaning of existing collective bargaining agreement. Railway Labor Act § 2, as amended, 45 U.S.C.A. § 151a.

**RIGHT:** For purposes of Railway Labor Act section making minor disputes subject to binding arbitration before the National Railway Adjustment Board (NRAB), "minor disputes" are those growing out of grievances or out of interpretation or application of agreements covering rate of pay, rules, or working conditions and involve controversies over meaning of existing collective bargaining agreement. Railway Labor Act § 2, as amended, 45 U.S.C.A. § 151a.

**RIGHT:** "Minor disputes," which are subject to binding arbitration before the National Railway Adjustment Board (NRAB) pursuant to the Railway Labor Act, are those growing out of grievances or out of interpretation or application of agreements covering rate of pay, rules, or working conditions and involve controversies over meaning of existing collective bargaining agreement. Railway Labor Act § 2, as amended, 45 U.S.C.A. § 151a.

In the above incorrect example, the reader knows that "minor disputes" has something to do with the Railway Labor Act but does not know specifically what the effect of a minor dispute is. The correct examples make the result clear.

- **Synonymous Words and Phrases:**  Where the court holds that certain words, phrases, or clauses are or are not synonymous, only the word, phrase, or clause the court is purporting to define should be used.

<u>**Example:**</u>

"Territorial jurisdiction" is synonymous with venue; it is the authority over persons, things or occurrences located in a defined geographic area.

(W&P for "territorial jurisdiction," but no W&P for "venue")

- **Make in both abstract and concrete headnotes:**  W&P references may appear in both abstract and concrete headnotes. It is not unusual to have the same term in an abstract headnote setting out the definition, and a concrete headnote applying the definition.

<u>**Example:**</u>

**ABSTRACT:** Police officers are on "emergency call," for purposes of exception to political subdivision's liability for death or injury caused by an employee's negligent operation of motor vehicle, if they witness illegal activity and are pursuing an alleged wrongdoer. Ohio Rev. Code Ann. § 2744.02(B)(1)(a).

**CONCRETE:** Police officers pursuing driver who fled traffic stop were on an "emergency call" for purposes of exception to political subdivision liability for death or injury caused by an employee's negligent operation of motor vehicle, even though police pursuit in such circumstances was prohibited by officers' departmental policies. Ohio Rev. Code Ann. § 2744.02(B)(1)(a).

- **Negative Definitions:**  Make W&P references out of negative definitions (X is not "Y") as well as positive definitions. A word, phrase, or clause may be defined or construed by what it is not, as well by what it is.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040443

**Example:**

Dog which was a family pet was not a "wild animal" for purposes of law making owners of wild animals liable for injuries caused by those animals.

- **Dictionary Definitions:** Do not make W&P references out of dictionary definitions without any legal context.

However, if a court quotes a dictionary definition, and it is clear that the court is accepting that dictionary definition to define, for example, a statutory or contractual term, that definition may be made into a W&P reference. The editor must make sure to include the appropriate legal context.

- **No W&P for examples of common phrases, particularly in concrete headnotes:** Do not make W&P references out of common legal propositions that come up frequently, such as whether certain conduct amounts to "ineffective assistance of counsel," or whether certain actions support a conviction for "murder."

**Examples:** W&P references would <u>not</u> be appropriate for the following headnotes

Mere failure to object is not ineffective assistance of counsel. U.S. Const. Amend. 6.

Substantive due process violations are generally those that are so arbitrary and unreasonable that they lack a substantial relation to the public health, safety and welfare. U.S. Const. Amend. 14.

Trial court's imposition of 25-year sentence for Class B felony of first-degree assault, which was outside the statutorily permissible range of punishment, was plain error, where State neither pled nor proved defendant to be a persistent offender as was necessary for trial court to extend the maximum term of 15 years. Mo. Ann. Stat. § 558.016(7).

Execution of murder defendant who suffered from schizophrenia and paranoia did not constitute cruel and unusual punishment. U.S. Const. Amend. 8.

- **Make W&P in definitional abstract headnotes, even if the word or phrase is common:** W&P references are appropriate for abstract headnotes setting out straightforward definitions of common terms.

**Examples:** W&Ps would be appropriate for the following headnotes:

"Plain error" is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

"Cruel and unusual punishments" under the Eighth Amendment are those that are incompatible with the evolving standards of decency that mark the progress of a maturing society or that involve the unnecessary and wanton infliction of pain on an inmate. U.S. Const. Amend. 8.

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless an exception to the hearsay rule applies. Conn. Code of Evidence, § 8-3.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040444

- **Length Restriction:** Except in unusual cases, the W&P should not exceed four or five words. For example, do not make a W&P that some action constituted "taking of private property for public use without just compensation." However, depending on the issue, it may be appropriate to say that some action involved a "taking" of private property for private use without just compensation, a taking of "private property," etc.

- **Parentheses:** A W&P term should not be in parentheses.

- **Court's use of quotation marks:** Just because a court puts a term in quotation marks does not mean that the term is appropriate for a W&P reference. The quotes may only indicate emphasis, borrowed phrasing, or a term of art. Make a W&P only if the court is defining the term in some fashion. Also, the fact that the court does not put a word, phrase, or clause in quotes does not preclude making a W&P.

- **Headnotes setting forth elements:** Generally, a headnote merely setting forth the elements of a doctrine, cause of action, or offense should not generate a W&P unless the essence of the point is definitional.

**Examples:** W&Ps would not be appropriate for the following headnotes:

To establish fraud, plaintiffs must demonstrate that they justifiably relied on a material misrepresentation knowingly made by defendants and, as a result, suffered some injury.

Requisite elements of criminal conspiracy are intent to commit felony, agreement with another person to commit felony, and overt act in furtherance of agreement. Ind. Code Ann. § 35-41-5-2.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040445

# Material Fact Tagging – Guidelines and Examples

The purpose of this document is to provide guidelines and examples for the Material Fact Tagging project. A critical aspect of this project is that editors share a consistent definition of the types of facts to be tagged. The hope is that this document will provide a clear picture of the types of facts the project is attempting to capture and help to generate consistency between taggers.

Included are definitions of the types of facts that we would like tagged as well as guidelines on the types of facts that should not be tagged. This is followed by examples putting these guidelines into practice on actual cases, showing the facts that would be tagged in the case together with some examples of specific facts that should not be tagged.

## I. What is a Material Fact?

A material fact typically falls into one of these categories:

   1. *Facts that are necessary or critically important to a court's conclusion on a legal issue.*

- ➜ The court is likely to recite these facts directly in support of its decisions. They often appear right after the court states the law to be applied or very close to the point where the court indicates its decision.

- ➜ Facts that a court uses to buttress or provide additional support for a conclusion should be tagged material, even if they are not strictly "necessary" to the ruling.

- ➜ If a court uses a fact to directly respond to a party's argument, it is likely a material fact.

- ➜ In granting summary judgment, a court should highlight material facts not in dispute that support its decision. In denying summary judgment, the fact the court finds in dispute are material.

   2. *Facts that a court uses in a hypothetical to either analogize or distinguish the current case from another*

- ➜ For example, in the following case snippet (from 2017 WL 2189681), some version of the facts "not been read his Miranda rights at all" and "petitioner had invoked his right to counsel" would be tagged, as they are facts that while not present in the case, are facts the court is signaling would have changed the outcome.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040446

> *"Here, if Tacazon's partner had returned the following day and asked the petitioner if he were a member of a gang, Tacazon's partner would not have been required to first re-advise petitioner of his <u>Miranda</u> rights. Of course, **the outcome would be different if** petitioner <mark>had not been read his Miranda rights at all,</mark> as was the case in Elizadale, or United States v. Gonzalez-Sandoval, 894 F.2d 1042, 1046 (9ᵗʰ Cir. 1990), where Gonzalez-Sandoval was not given any <u>Miranda</u> warning while he was detained at the police station. Similarly, **the outcome would be different if** <mark>petitioner had invoked his right to counsel</mark> as the defendant did in <u>United States v. Williams</u>. But here, petitioner waived his <u>Miranda</u> rights and agreed to speak the day before Mays interview."*

Limiting the definition of a material fact to these categories may mean that some interesting or distinguishing facts in a case will not get tagged. However, for the purposes of the ultimate end goal of this project – to create a useable Westlaw filter for customers – consistency among taggers in how we define a material fact is of critical importance.

## II. What are not Material Facts

For the purposes of this project, we would like to try to avoid tagging the following as key facts:

1. *Facts that are not necessary to decide the legal issues of the case:*

   ➔ If you are uncertain whether to tag a fact, ask yourself what legal question the fact is answering. The more a fact answers the question "why did the court rule this way on an issue?" the more likely it is to be a material fact. By comparison, the more a fact answers the question "what is this case generally about?" the more likely it is to be a background fact.

   ➔ The factual background section of an opinion often will include ancillary facts for context that are not material to the legal issues being decided. Be wary of tagging facts in the "Background" sections that just provide useful context for your own reading of the case. To the extent background facts are material, they are likely to be mentioned again somewhere else in the opinion.

2. *Overly specific facts that have a readily available generic term elsewhere in the document.*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040447

➔ For example, 885 F.3d 794 is a case involving a contractual dispute regarding the sale of "full-blood Akaushi cattle." Here, it would be preferable to tag a fact like "specialty breed of cattle."

3. *Legal standards*

➔ Language dealing with specific legal standards, or act and statute names are not material facts. The only exception is if satisfying a specific legal standard becomes a "fact" later in the opinion.

For example, "minimum contacts" will usually not be a material fact because it is mostly a legal standard. However, if a party needs to establish the existence of minimum contacts to satisfy part of a larger argument, then it might be taggable later in an opinion.

4. *Legal terms*

➔ Language dealing with legal terms of art, motion names, causes of action, etc. are not material facts. The only exception, particularly in procedural cases, is if a legal term becomes a "fact" later in the opinion.

For example, a case where the defendant needs to establish equitable title to show that the plaintiff was required to proceed through foreclosure to repossess a property. Typically, "equitable title" would not be tagged because it is a legal term. However, to the extent the defendant establishes they had equitable title, it would then become a material fact.

5. *Offensive terms*

➔ This includes offensive terms like curse words, racial slurs, or sexually explicit language. If such a term is a material fact in a case, tag the characterization of the term instead of the term itself.

For example, tag the phrase "racial slur" instead of the racial slur itself.

➔ References to specific body parts are acceptable when referring to a specially defined condition or procedure.

For example, "breast cancer" or "vaginal delivery" are acceptable to tag as facts.

6. *Proper nouns, unless that proper noun is a sui generis term*

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040448

Summarization Training Materials
November 2020

➜ Proper nouns are often terms so specific to the individual case that they are unlikely to reoccur in additional cases and would lack meaning if displayed in a filter.

For example, you would not tag a term like "Dr. Berger," because it so specific that it would lack meaning if taken out of the case it occurs in. By contrast, you would tag terms like "The Olympics" or "Hurricane Katrina" because those are widely recognized terms that could appear in many cases.

## III. General Tagging Guidelines

For the purposes of this project, we would like editors to share a consistent method of tagging facts. This helps to make the process of tagging facts consistent and efficient. It will also help when we begin to combine and normalize similar facts together. The following general guidelines apply to tagging facts.

1. *Tag the fact in the synopsis or headnotes if possible. This practice should help you decide if a fact is material. (If a fact belongs in the synopsis or features, it is likely material). But you may still tag a fact in the text of the case if you know it is material and that is the best characterization of a fact.*

2. *You may tag facts in dissenting or concurring opinions, but you do not need to review dissenting or concurring opinions specifically for the purpose of tagging facts.*

3. *Each fact needs to be tagged only once. However, there is no need to go back and un-tag facts if you have tagged a duplicate.*

4. *If a fact contains an acronym, tag the full term together with the acronym unless the acronym is so widely recognized that a user would not need additional terminology to understand what the acronym is referring to.*

➜ For example, "Abbreviated New Drug Application (ANDA) would be tagged with both the full term and acronym together because the average user may not know what "ANDA" is without additional context. By contrast, "IRS" can be tagged by itself because the average user would understand the reference without "Internal Revenue Service" in front of it.

5. *In cases where there could be a legitimate debate as to whether a something is a material fact or not, the "thumb on the scale" should be towards tagging the fact.*

6. *Do not include any cardinal numbers, including dollar amounts. For example, struck numbers below should not be included:*

➜ ~~eight-milligram dose of~~ hydromorphone

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040449

Summarization Training Materials
November 2020

➔ ~~$650,000~~ adjustable rate loan

➔ ~~two~~ loan servicer

*You can include ordinal numbers to the extent they have become part of a fact:*

➔ third offense

➔ Form 1040

## IV. Length of Facts

The ultimate goal of collecting material facts is to produce a list of facts that a customer can use to filter a results list. As such, the length of the facts being recorded is a concern. If recorded facts are too long, they will be difficult to fit on screen and hard for a user to read. If they are too short, customers may not have enough context to understand the types of results a fact would generate. The following guidelines apply to the length of tagged facts.

1. *If possible, facts should be between 1 and 5 words, but may be up to 7 words long if absolutely necessary.*

2. *Terms connected by a hyphen (-) or slash (/) count as a single word.*

3. *If you are concerned that a tagged fact may either be too long or too short, the following tips may be helpful:*

➔ Extraneous leading and trailing words can frequently be dropped without losing essential meaning:

Examples(s): ~~improved~~ flow control baffles / ~~unambiguously~~ racial epithets

➔ Verb phrases should be tagged if they help make the associated nouns meaningful. This is especially true if an associated noun is fairly generic:

Example(s): falsified documents / broadcast the interview

➔ Verb phrases should be excluded if the associated noun is already fairly distinctive:

Example(s): ~~enacted a~~ temporary budget / ~~sending~~ collection letters

➔ If you are still uncertain whether or how to tag a fact, imagine how it might look in a filter. Is it phrased in a way that would be most useful to a customer? You may want to rewrite the fact in a headnote and tag it there.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040450

Summarization Training Materials
November 2020

## V. Patent Cases

Patent cases represent a particular challenge because of their high degree of technicality and the number of defined terms with extremely specific meanings. When tagging a patent case, the following guidelines apply:

> 1. *Do not tag Markman construed terms.*
>
> 2. *It is not necessary to tag terms that are relevant to the patent or the underlying technology but that are not relevant to the court's decision.*
>
> 3. *Generally, you should tag the facts that you would include in the headnotes*:
>
> ➔ Example: Genuine issue of material fact existed as to whether patent claim, directed to lawn mower having improved flow control baffles, was invalid as anticipated or obvious, precluding summary judgment of no invalidity in patent infringement action.

## VI. Case Examples

- Below are two examples applying the above guidelines to cases, showing some facts to be tagged, and some not to be tagged. (The lists are not exhaustive of all facts and non-facts).

- The first example applies the above guidelines to *Russell v. Pisana*, 2018 WL 3862947. The case is an appeal of summary judgment in favor of vendors involving a land sale contract.

<u>Examples of Facts That Should Be Tagged</u>

*Note that below facts are illustrative of concepts and sometimes exceed 7-word limit.

| Fact to be Tagged | Comment |
|---|---|
| **Fact 1:** land sale contract | Facts 1 and 2 really refer to the same thing. Preferably, Fact 1 would be tagged both because it occurs in the headnotes and would also make for a better facet due to the length. However, at least one of these should be tagged. |
| **Fact 2:** contract for the purchase of property | |
| **Fact 3:** substantial payments | Facts 3 and 4 should both be tagged. Note that this is something of an edge case - the relevant statutory language in the case is that equitable title is gained upon "partial |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040451

| | |
|---|---|
| | payment," while the court discusses it in terms of "substantial payment."<br><br>It could be argued that those two phrases are really variations of the same thing and therefore only one should be tagged. However, an attorney reading the case could combine the differences in phrasing to construct an argument that in order to gain equitable title "partial payment" is not enough. Instead, it must be "*substantial partial payment.*" |
| **Fact 4**: partial payments | |
| **Fact 5**: equitable title | This fact is necessary for the conclusion the court reaches – the fact the purchaser gained equitable title means the vendor could only proceed via foreclosure, so the lower court's grant of summary judgment on the basis of a contractual rider was not correct. |
| **Fact 6**: uncured default | There is an argument for not tagging this fact as it is not strictly speaking "necessary" to the court's conclusion in this case.<br><br>The argument for tagging this fact is that it is ultimately necessary for this case exist at all. Without the defendant having an uncured default, the plaintiff would have had no basis for pursuing the case. In that sense it is the "ultimate" material fact.<br><br>Both arguments have merit, and different people could look at this fact and disagree about whether to tag it or not. Because this is something of an edge case, the preferred "thumb on the scale" is towards recording the fact. |
| **Fact 7**: rider | The court is rejecting the appellee's argument that the rider to the land sale contract should control. |

<u>Examples of Facts That Should Not Be Tagged</u>

| Fact | Comment |
|---|---|
| | |
| **Fact 1**: liquidated damages | Facts 1 and 2 relate to individual terms of the rider contract. The reason that "rider" would be tagged as a fact while these would not be tagged is that the issue is not whether specific provisions of the rider are valid, it is whether |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040452

Summarization Training Materials
November 2020

| | the plaintiff's claim can be brought on the basis of the rider at all.<br><br>Ultimately, the outcome of the case would remain the same regardless of the specific rider terms – the plaintiff would still be need to pursue their claim through foreclosure. |
|---|---|
| **Fact 2**: premises to be vacated | |
| **Fact 3**: marijuana grow farm | While this fact adds "color" to the opinion and provides one motivation the plaintiff has in attempting to repossess the property, it does not factor into the court's decision, which is based entirely on the issue of whether the plaintiff can pursue the case on the basis of the contractual rider. |

- The second example applies the guidelines to *Taylor v. State*, 2018 WL 3625196. As a brief background, the case involves a criminal appeal from an underlying conviction for sexual assault of a child, online solicitation of a minor, and indecency with a child. The defendant makes three arguments on appeal: (1) That the evidence is legally and factually insufficient to sustain his conviction. (2) That a juror should have been excused due to knowing the victim. (3) The trial court should have granted the defendant an insanity instruction.

Example of Facts That Should Be Tagged

| Fact to be Tagged | Comment |
|---|---|
| | |
| **Fact 1**: fails to include any analysis, argument, or citation | Facts 1 -3 ultimately refer to the same point the court is trying to make – that the appellant forfeited his legal and factual sufficiency argument by failing to brief it correctly.<br><br>The best thing to tag here is probably "inadequately briefed," as that would encompass all of the other similar facts in this group. However, it would be expected that at least one of these would be tagged, and it would also be fine to tag more than one of them. |
| **Fact 2**: conclusory argument | |
| **Fact 3**: inadequately briefed | |
| **Fact 4**: juror who knew the victim | In this case, it is undisputed that the juror knew the victim. However, this is ultimately a fact that the court chooses to discount given other circumstances surrounding the case. |
| **Fact 5**: parties used victim's pseudonym | Facts 6-10 are all things that the court uses to reject the appellant's argument that the juror |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040453

|  | should have been excused. Facts 6, 7 and 8 are specifically directed at the appellant's contention that the juror deliberately lied about her relationship with the victim while Facts 9 and 10 are more general facts the court uses to demonstrate the appellant has not faced any prejudice due to the juror knowing the victim. |
|---|---|
| **Fact 6:** neither party asked the venire whether they knew the victim | That neither party asked the venire whether they knew the victim is a material fact of this case because the court specifically mentions it as a reason for rejecting the appellant's argument that the juror should have been excused.<br><br>However, the case contains no expression of this fact that is less than 7 words, which makes it too long according to the guidelines. This is an example of a fact that might need some rephrasing in a headnote to try and express the concept in a way that meets the length requirements for facts. |
| **Fact 7:** informed the court of the relationship at the earliest opportunity | This is another example of a fact that may need to be rephrased within a headnote. The fact that the juror informed the court as soon as she realized her relationship with the victim is definitely a material fact in the context of the opinion. However, there is no expression of the fact that would meet the length guidelines. |
| **Fact 8:** opportunity to demonstrate bias |  |
| **Fact 9:** failed to demonstrate that she had a bias | This is another example of a material fact this is too long according to the guidelines, but that we would still want to try to tag in some form. |
| **Fact 10:** knowing his conduct was wrong |  |
|  |  |

## Examples of Facts That Should Not Be Tagged

| Fact | Comment |
|---|---|
| **Fact 1:** lewd text-messages | Facts 1-3 are examples of facts describing that is "what the case is about." While they provide useful information to the user about the prior history of the case, the parties ultimately do not use them to advance any of their arguments and the court does not rely on any of them to support its conclusion. |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040454

| | |
|---|---|
| **Fact 2**: improper sexual relationship | |
| **Fact 3**: conversations of a sexual nature | |
| **Fact 4**: third-grade teacher | This fact relates to the juror knowing the victim. However, from a legal perspective, specifically *how* the juror knows the victim is not as relevant to the appellant's argument as the fact that the relationship existed. |
| **Fact 5**: bias or prejudice in the favor or against the defendant | In the context of the case, this is part of the statutory language describing when a juror must be excused. While an important part of the case, it is not necessarily a "fact" as we would consider it. |
| **Fact 6**: special education teacher | Here, the special education teacher testified as to the mental retardation of the appellant. However, the ultimate source of that evidence is irrelevant. |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040455

Summarization Training Materials
November 2020

## JURISDICTIONAL REQUIREMENTS

<u>Available in JWB</u>



Can have these open by default if you Save Layout while the requirements widget is open.

## Types of Special Requirements

Docket Numbers

<u>Maryland</u>

MD-2. Docket Numbers
Include the lower court docket number in the background section of the synopsis, if it is available in the opinion in JWB or in MMR.


Procedural Mechanisms

<u>Iowa</u>

IA-1. Original Notice
"Original notice," rather than "summons," is the term for the process used to commence an action. That term should be used in the headnotes.

Lower Court Information

<u>Alaska</u>

AK-1. Lower Court Information
Alaska does not have counties. The state is divided into four numbered judicial districts. The synopsis should include a reference to both the judicial district and the city, e.g., "The Superior Court, Third Judicial District, Cicely, John Doe, J."

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040456

<u>New Hampshire</u>

NH-1. Lower Court Information
When only a single word appears on the appeal line to indicate the lower court, it is the name of the county, and the appeal is from the Superior Court of that county.

## Citations and Court Names

<u>Florida</u>
FL-6. Case Citations
Citations to reported decisions of the Supreme Court and the District Court of Appeal consist of only the Southern Reporter citation, e.g., 166 So.3d 508.
Editorial features should <u>not</u> include citations to the Florida Law Weekly, e.g., 35 Fla. L. Weekly D1322.

FL-7. Court Names
Supreme Court (7 justices sit en banc)
District Court of Appeal (57 judges sit in 3-judge panels)
Circuit Court
County Court


## Special Note on Hawaii

We use the spelling "Hawai'i" in our editorial work. The mark, called a glottal stop, is a single open quotation mark, or backward apostrophe. It is recommended to use the acronym expansion file in the Judicial Workbench (JWB) Summary Tool to insert "Hawai'i" in editorial features with the correct open quotation mark character. You can also use the character map in the Summary Tool in order to insert a single open quotation mark, which is found on the character map's "Common" tab. You can add this character to your "Favorites" tab in the character map for easier access in future cases.



*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040457

## Statutes – Citation Order

Citations should be listed in this order: constitutional provisions, statutes (including treaties), court rules (including pattern jury instructions), administrative rules and regulations (including executive orders, sentencing guidelines, and codes of professional responsibility), and Restatements.

Within each category, federal citations should precede state citations.
Within each type, citations should be in numerically ascending order.

## Statutes – Citation Order:  Examples

1. Due process protection provided under the state constitution is identical to the due process guaranteed under the Constitution of the United States. U.S. Const. Amend. 14, § 1; Minn. Const. art. 1, § 7.

2. Family Educational Rights and Privacy Act (FERPA) did not provide university with absolute discretion over whether to release disciplinary records of students found to have violated university's sexual assault policy, which local news organizations sought under North Carolina's Public Records Act; such language did not require educational institutions to exercise discretion before releasing FEPA-exempted student disciplinary records. 20 U.S.C.A. § 1232g(b)(2)(B); § 1232g(b)(6)(B); N.C. Gen. Stat. Ann. § 132-1(b).

3. Defendant did not invite alleged error in trial court's instruction on unindicted first-degree kidnapping elements, and thus was entitled to plain error review, when he did not object to jury instructions. N.C. Gen. Stat. Ann. § 14-39(b); N.C. R. App. P. 10(b)(2), (c)(4).

## Using Appropriate Styles

It is the responsibility of the attorney editors to ensure that citations to statutes, rules, regulations or constitutional provisions in headnotes appear in our editorial style. The copy-to-statute functionality in JWB will insert citations into headnotes in the required style in most instances. If copy-to-statute formatting is not available for a particular cite, consult the Citation Style help files to find the correct style to use or ask a revisor. The copy-to-statute functionality will also generally put formatted citations in the correct citation order, (see Citation Order), but editors should verify that the ordering is correct.

Editors are also responsible for verifying that the citations in the headnotes are accurate, as JWB will occasionally insert an incorrect, or incorrectly formatted, cite.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040458

Summarization Training Materials
November 2020

Repealed and Former Statutes

If an editor wishes to include a citation for a statute which has been repealed, the editor should type "repealed" in parentheses after the cite.

If an editor wishes to cite to a prior version of the statute at issue, a year, placed within parentheses, may be included at the end of the citation. This is true only for citations that follow headnotes, NOT for codenotes. See KeyCite for Statutes - Prior Versions.

Examples

1. Requirement under former disclosure statute, which imposed certain requirements on television ads sponsored by a political action committees, to file notice of complaint with State Board of Elections (SBOE) regarding nonconforming ad no later than three days after election, was statutory condition precedent which could not be waived. N.C. Gen. Stat. Ann. § 163-278.39A(f)(1) (2012).

2. A district court may only exercise jurisdiction in an injured worker's action for bad faith against his or her employer/workers' compensation insurer when that worker has obtained an order of the Workers' Compensation Court certifying that a final workers' compensation award either (1) remains unpaid, or (2) benefits have not been provided as ordered without good cause. 85 Okla. Stat. Ann. § 42(A) (Repealed).

## Federal "Popular Name" Statutes

1. To recover monetary damages under Title II of the Americans with Disabilities Act (ADA) or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant. Rehabilitation Act of 1973 § 504, 29 U.S.C.A. § 794(a); Americans with Disabilities Act of 1990 § 202, 42 U.S.C.A. § 12132.

2. The Court of Appeals lacks jurisdiction to consider any discretionary aspect of the decision of the Board of Immigration Appeals (BIA) to deny an alien's application for adjustment of status and waiver of inadmissibility. Immigration and Nationality Act § 209, 8 U.S.C.A. §§ 1159(b), 1159(c).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040459

## Court Headnotes

Generally , the headnotes for a case must reflect all points made in court headnotes, except for any court headnote that is a recitation of a statute, rule, or regulation.  If the court headnote summarizes the result in the case, that language should be worked into a concrete headnote.

If there is a conflict between the court headnote language and the language in the opinion, use the latter.  The language of the court headnote may be changed or enlarged to provide necessary context or to properly identify the parties, etc.  Some jurisdictions (such as Kansas) may make court headnotes that do not appear verbatim in the language of the opinion.  In that instance, put the headnote number for the headnote in the paragraph that most closely tracks the language set forth in the court headnote.

Your headnotes do not have to track the court headnotes verbatim. You may add context or substance as necessary to satisfy our headnote style.

Court headnotes appear in cases from Hawaii, Kansas, Nebraska, Ohio, Minnesota, and West Virginia. Non-West headnotes that appear in cases from Connecticut, Arkansas, New Jersey and Michigan are copyrighted and should not be copied. (See the Special Requirements for States or your revisor if you have a question about a particular state.)

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040460

EXAMPLE #1

Supreme Court of Ohio.
The STATE of Ohio, Appellee,
v.
FAWCETT, Appellant.
No. 99-2074.
Submitted Nov. 14, 2000.
Decided Dec. 28, 2000.


SYLLABUS OF THE COURT

Courts of appeals have jurisdiction to review judgments entered by those inferior courts located within the territorial boundaries of their appellate districts.


COOK, J.

In 1999, the Fostoria Municipal Court, which is located in Seneca County, Ohio, convicted and sentenced defendant-appellant, Steven A. Fawcett, of a misdemeanor offense. Fawcett timely appealed to the Third District Court of Appeals.

Because the crime of which Fawcett was convicted apparently took place in that portion of Fostoria, Ohio that is located within Wood County, which is not within the Third Appellate District, the court of appeals dismissed Fawcett's appeal without prejudice for a perceived lack of jurisdiction. Fawcett then filed a motion to amend his notice of appeal in the Court of Appeals of the Sixth District, in which Wood County is located. The Sixth District denied the motion and dismissed the appeal for want of jurisdiction, reasoning that although the Fostoria Municipal Court has jurisdiction over a portion of Wood County, the appellate district in which a lower court is located determines jurisdiction over the appeal.

The Sixth District certified that a conflict existed between its judgment and the judgment of the Third District in the same case. The certifying court supported its certification by setting forth the issue of law upon which the two appellate courts differ. It framed the conflict issue as follows: "Is the jurisdiction of an Ohio appellate district contingent upon the county where the trial court is located or upon the county where the incident which is the subject of the case occurred?" This court agreed with the certifying court that a conflict exists and accepted jurisdiction of this appeal on that basis.

This case presents the issue of whether one must look to the geographic location of the trial court or the geographic location of the wrongdoing to determine where to bring an appeal. With this opinion we confirm that it is the geographic location of the trial court that determines the appropriate appellate court to have jurisdiction.

The Ohio Constitution specifically confers appellate jurisdiction over inferior courts of record based upon the location of the lower court, and not upon the situs of the underlying cause of action. Section 3(A), Article IV of the Ohio Constitution provides that "[t]he state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals." The jurisdiction of an appellate district is then described in Section 3(B)(2), Article IV as follows: "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." (Emphasis added.)

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040461

Additionally, R.C. 2501.02 codifies the constitutional declaration that appellate jurisdiction is dependent upon the location of the inferior court of record:

> "In addition to the original jurisdiction conferred by Section 3 of Article IV, Ohio Constitution, the court [of appeals] shall have jurisdiction * * * to review * * * judgments or final orders of courts of record inferior to the court of appeals within the district." (Emphasis added.)

Both the relevant constitutional and statutory provisions describe the jurisdiction of a court of appeals as dependent upon the location of the inferior court of record from which an order is being appealed. Accordingly, we hold that courts of appeals have jurisdiction to review judgments entered by those inferior courts located within the territorial boundaries of their appellate districts. See Heckler Co. v. Napoleon (1937), 56 Ohio App. 110, 118, 10 N.E.2d 32, 35 (holding that, under constitutional and statutory provisions analogous to Section 3, Article IV of the Ohio Constitution and R.C. 2501.02, "the jurisdiction of the Court of Appeals to review * * * judgments of the common pleas court is limited to common pleas courts within the appellate district").

Applying this holding to the instant case, we note that R.C.1901.01(A) established the Fostoria Municipal Court. That court has jurisdiction within the corporate limits of Fostoria, R.C.1901.02(A), as well as "within Loudon and Jackson townships in Seneca county, within Washington township in Hancock county, and within Perry township in Wood county." R.C.1901.02(B). Although the General Assembly has established that Wood County is part of the Sixth Appellate District, R.C. 2501.01(F), the Fostoria Municipal Court itself is located in Seneca County, and Seneca County is part of the Third Appellate District. R.C. 2501.01(C). Therefore, because the Fostoria Municipal Court is an inferior court of record sited in the Third District, we find that appellate jurisdiction properly rested with that district. The judgment of the Sixth District is affirmed.

Judgment affirmed.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040462

Summarization Training Materials
November 2020

EXAMPLE #2

Supreme Court of Nebraska.
In re ADOPTION OF Deborah Jean HEMMER et al.
Diana Jo Rohloff, Appellant,
v.
State of Nebraska, Appellee.
No. S-00-195.
Dec. 8, 2000.

Syllabus by the Court

1. Equity: Courts: Jurisdiction. A county court acquires equity jurisdiction only through legislative action.
2. Adoption: Legislature. In cases of adoption, the Legislature has provided a specific statute, Neb.Rev.Stat. § 43-116 (Cum.Supp.2000), which addresses the finality of all adoption orders.
3. Statutes. Specific statutory provisions relating to a particular subject control over general provisions.
4. Adoption: Statutes. The matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed.

HENDRY, C.J.

[Introduction and Facts omitted.]

ASSIGNMENT OF ERROR

Diana asserts the trial court erred in denying her application to set aside her adoption.

ANALYSIS

Diana asserts that the county court had the authority to set aside her adoption under either (1) "general equity jurisdiction," (2) Neb.Rev.Stat. § 25-2001 et seq. (Reissue 1995 & Cum.Supp.2000), or (3) Neb.Rev.Stat. § 43- 116 (Reissue 1998). Brief for appellant at 4. We will analyze each basis for Diana's claim separately.

Diana's first basis for relief must fail because county courts do not possess general equitable jurisdiction. Scherbak v. Kissler, 245 Neb. 10, 510 N.W.2d 318 (1994). As we have previously stated, a county court "only acquire[s] equity jurisdiction through legislative action." Id. at 12, 510 N.W.2d at 319, citing Iodence v. Potmesil, 239 Neb. 387, 476 N.W.2d 554 (1991). "If the Legislature should choose to grant equity jurisdiction to county courts ... it will do so in a specific mandate." Scherbak v. Kissler, 245 Neb. at 12-13, 510 N.W.2d at 320. There is no specific mandate in the adoption statutes granting a county court equity jurisdiction to set aside an adoption.

Section 25-2001 et seq. also fails to provide a basis upon which to grant Diana's requested relief. This section discusses when a court may modify or set aside its judgments or orders. In particular, § 25-2009 grants a county court the general power to modify or set aside its orders.

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040463

However, the order Diana is seeking to set aside in this case is an adoption order. In cases of adoption, the Legislature has provided a specific statute which addresses the finality of all adoption orders. Section 43- 116(1) states that adoptions, and all proceedings in connection therewith, are "conclusively presumed ... valid in all respects ... unless an action shall be brought within two years ... attacking its validity." "[S]pecific statutory provisions relating to a particular subject control over general provisions." Marks v. Judicial Nominating Comm., 236 Neb. 429, 432, 461 N.W.2d 551, 553 (1990); Reed v. Parratt, 207 Neb. 796, 301 N.W.2d 343 (1981). Accordingly, if the county court is authorized to set aside Diana's adoption, it can do so only under § 43-116.

Section 43-116 fails to provide a basis upon which to grant Diana's requested relief. Diana has neither claimed nor offered evidence of any procedural defect or invalidity which would provide a basis in law under § 43-116 to set aside the adoption. We have recognized that allegations of fraud or estoppel, in an unusual situation, might toll the 2-year time limit in which to bring a legal challenge to an adoption. In re Adoption of Trystyn D., 259 Neb. 539, 611 N.W.2d 112 (2000). We need not address whether the 2-year time limit is tolled in this case, however, because § 43-116 provides no basis for Diana to bring the present action. As a result, the county court correctly determined that it lacked the authority to grant Diana's petition. "[T]he matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed." In re Adoption of Kassandra B. & Nicholas B., 248 Neb. 912, 918, 540 N.W.2d 554, 558 (1995). See, also, Kellie v. Lutheran Family & Social Service, 208 Neb. 767, 305 N.W.2d 874 (1981); In re Petition of Ritchie, 155 Neb. 824, 53 N.W.2d 753 (1952).

In In re Petition of Ritchie, supra, the petitioner sought to adopt an adult. The district court denied the adoption. The petitioner, recognizing that no statutory authority existed which would allow the adoption, urged this court to recognize the adoption as a matter of equity. We declined, concluding that the petitioner was attempting to "extend the rights of adoption beyond the plain terms of the statutes," which could not be done. Id. at 828, 53 N.W.2d at 755. Because the adoption of adults was not included in the plain language of Neb.Rev.Stat. § 43-101 (Reissue 1952), this court determined it could not grant the relief requested.

Diana attempts to distinguish In re Petition of Ritchie on the ground that the petitioner in that case was seeking to adopt, not seeking to set aside an adoption. This distinction is unpersuasive. In either case, this court is being asked to grant relief without the authority to do so under the adoption statutes.

Nebraska's current adoption statutes do not permit Diana's adoption to be set aside. Whether the adoption statutes should allow for the type of relief requested by Diana is a matter best addressed by the Legislature. See Rosse v. Rosse, 244 Neb. 967, 510 N.W.2d 73 (1994).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040464

Summarization Training Materials
November 2020

## Law of Other Jurisdictions

When a court of one state or jurisdiction determines a point that is controlled by another states law, the corresponding headnote should include the phrase "under the law of _____" or "under ___ law."

When a federal court decision is based on the law of a state, such a fact should be disclosed in the headnotes by including the phrase "under the law of _____" or "under ____ law."

If a federal court is basing its decision on a prediction of how state law will evolve, the corresponding headnoets should begin "Under ____ law, as predicted, . . "

A headnote based on local District of Columbia law should disclose that fact if the opinion is not from the District of Columbia.  If the headnote involves a matter unique to the District of Columbia, the digest topic District of Columbia may be used.

EXAMPLE:  To state a cause of action for negligence under Illinois law, a plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040465

## Examples

[A] *Deretich v. City of St. Francis*, 128 F.3d 1209

Appellant Mary Sarazin Timmons appeals from a final order entered in the United States District Court for the District of Minnesota, affirming the order of the United States Magistrate Judge, in favor of Sarazin's judgment creditors (appellees) on their post-judgment motion pursuant to Fed.R.Civ.P. 69(a) for a transfer of Sarazin's rights, title, and interest in employee benefits earned by her former husband, Martin Timmons, which Sarazin received in a property settlement upon the dissolution of their marriage. City of St. Francis v. Deretich, No. 3-83-942 (D.Minn. Dec. 20, 1995) (district court order), aff'g id. (Aug. 11, 1995) (magistrate judge's order). For reversal, Sarazin argues that the district court erred in holding that the employee benefits are not exempt from garnishment under Minnesota state law. ...

We have carefully examined each of the contentions raised by Sarazin on appeal and find them to be without merit. We review the district court's construction of state law de novo. The district court did not err in construing the state statute governing garnishment and attachment to require that assets be directly derived from the debtor's employment in order for the employee benefits exemption to apply. Westinghouse Credit Corp. v. J. Reiter Sales, Inc., 443 N.W.2d 837, 839 (Minn.Ct.App.1989) ("Benefits which are exempt under subdivision 24 are those derived from an employment relationship or from self-employment endeavors."), citing In re Raymond, 71 B.R. at 630. Sarazin's rights, title, and interest in Timmons's disability benefits and life insurance proceeds are not exempt from garnishment under Minn.Stat. § 550.37, subd. 24, because Sarazin obtained an interest in those assets through her divorce settlement and has no employment relationship with CDC. We therefore hold that the district court did not err in concluding that appellees may garnish her entire 40% share of Timmons's disability benefits as well as any death benefits exceeding $32,000.

[B] *McBroom v. Al-Chroma, Inc*, 386 N.W.2d 369  (Minnesota Court of Appeals)

This court must apply Wisconsin law to determine whether the two actions now before this court are barred by the res judicata effect of the Wisconsin judgment. In Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), the United States Supreme Court held that the full faith and credit clause of the United States Constitution (article IV, § 1) generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it. Id. at 109, 84 S.Ct. at 244; see also Matson v. Matson, 333 N.W.2d 862, 867 (Minn.1983) (adopting Durfee rule); Restatement (Second) of Conflict of Laws § 95, comments a & g (1971) ....
The doctrine of res judicata has two aspects. The first, merger and bar, operates to preclude a subsequent suit on the same cause of action which has already been determined by a previous judgment, regardless of what issues were actually raised or litigated in the previous suit. The other aspect of res judicata, the doctrine of collateral estoppel, operates to preclude relitigation of the same issues which were actually litigated and necessary to the determination of a previous judgment, regardless of whether the previous suit was predicated on the same cause of action. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d (1979); Hauser v. Mealey, 263 N.W.2d 803, 806 (Minn.1978). These hornbook principles have been applied by the Wisconsin courts.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040466

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Pleading

Many pleading issues, as raised by a motion to dismiss for failure to state a claim, actually challenge the right of recovery under governing law, even though the court's language may be steeped in the language of pleading. Only if the actual wording of the pleading is at issue, which is usually not the case, would the  language "...failed to state a claim" be appropriate in a headnote. If the point is that plaintiff failed to allege X, as required to state a claim for Y, that will be a pleading point.

If the right of recovery is what is really at issue, the headnote will involve such issues as

> existence of (private) right of action
> existence or scope of right
> possibility of liability
> existence or scope of duty
> requirement(s) for particular entitlement
> what is, or is not, required for a certain cause of action
> whether a requirement of the cause of action is satisfied
> whether some injury would amount to injury required for a particular cause of action
> right to recover for certain injuries
> standing
> immunity or lack thereof

**Tips for Identifying Cases When Pleading Point Is Not Appropriate**

Courts often make statements that a plaintiff failed to plead a fact or element necessary for recovery. Writing the headnote as a pleading point, such as plaintiff failed to allege X, as required to state a claim for Y, is not appropriate if the court's analysis bars the plaintiff from redrafting the complaint and returning to court. Look for indications in the court's opinion that the plaintiff will not be able to plead the missing element or that the law does not allow recovery no matter how the complaint is phrased and base your headnote on that analysis. The goal is to avoid suggesting to customers that they can solve their client's problem by the way they draft the complaint.

Here's an example. In Diesel Barbershop, LLC v. State Farm Lloyds, 479 F.Supp.3d 353 (W.D.Tex., 2020), Texas barbershops lost income due to state and county emergency orders to deal with the COVID-19 pandemic. They sued their insurers to recover this income under policies that provided coverage only if the barbershops sustained "accidental direct physical loss to Covered Property." Although the opinion says, "the Court finds that Plaintiffs fail to plead a direct physical loss," the court notes a split in cases between those finding physical loss even without tangible destruction to the covered property and those requiring tangible injury to the property. The court decides to follow the cases requiring tangible injury. The lack of tangible injury to the barbershops property as a result of the coronavirus knocks the barbershops out of court, and they have no way to return. Other parts of the opinion may also help in deciding how to write the headnote. The court states in its conclusion several paragraphs later: "While there is no doubt that the COVID-19 crisis severely affected Plaintiffs' businesses, State Farm cannot be held liable to pay business interruption insurance on these claims as there was no direct physical loss ..." This indicates that amending the complaint would be futile.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040467

Based on the court's analysis, we would be misleading our customers by writing the following headnote:

> Insureds, operators of barbershop businesses which were deemed non-exempt and non-essential pursuant to state and county emergency orders in connection with COVID-19 pandemic, failed to plead a direct physical loss to properties, as required to state claim under Texas law for insurance coverage for lost use of properties under insurance policies explicitly requiring tangible injury to property.

The barbershops will not be able to state a claim under the court's view of the law.

The court's analysis supports the following headnote:

> Insured barbershops' lost business income as result of government closure orders to deal with COVID-19 pandemic was not covered by policies requiring accidental direct physical loss to property; policies required tangible injury to property.

Another problem area arises when a court makes statements that particular allegations do not state a claim, but the court is actually saying the alleged actions are not actionable or do not meet the definition of a particular term. In that case, state the alleged facts and state the legal principle. Don't say the allegations did or did not state a claim.

Parker v. Bank of America, NA, Not Reported in N.E.2d, 29 Mass.L.Rptr. 194, 2011 WL 6413615, Mass.Super., December 16, 2011 (NO. CIV.A. 11-1838) provides a good example. A mortgagor sued a lender for intentional and negligent infliction of emotional distress.

With respect to the IIED claim, the Court says this:

> The conduct alleged in the Complaint and the affidavit was not, however, so "extreme and outrageous," so "profoundly shocking" ( Conway v. Smerling, 37 Mass.App.Ct. 1, 8, 635 N.E.2d 268 (1994)), as to be actionable as intentional infliction of emotional distress.

This supports a substantive headnote stating:

> Alleged actions of bank, after repeatedly losing mortgagor's paperwork and requiring it to be re-submitted, in informing mortgagor that she qualified for relief under federal Home Affordable Modification Program (HAMP), but then after a lengthy audit, repeating phone calls, and additional lost paperwork, informing mortgagor there was no record of her having qualified for the program, and subsequently placing mortgagor's loan in foreclosure, was not extreme and outrageous or profoundly shocking and, thus, was not actionable as intentional infliction of emotional distress.

With respect to the negligent infliction claim, the Court says recovery was not permitted under the facts alleged. It starts its analysis with a statement: "Nor does the Complaint make out a claim for negligent infliction." Then it discusses the law allowing only certain persons to recover damages in tort for emotional distress resulting from an injury to a third party. The Court then applies this law. The HN should reflect the Court's application of the legal principles. The discussion supports a more substantive headnote stating:

> Alleged actions of bank, after repeatedly losing mortgagor's paperwork and requiring it to be re-submitted, in informing mortgagor that she qualified for relief under federal Home Affordable Modification Program (HAMP), but then after a lengthy audit, repeating phone calls, and additional lost paperwork, informing mortgagor there was no record of her having qualified for the program, and subsequently placing mortgagor's loan in foreclosure, did not

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040468

permit recovery by mortgagor for negligent infliction of emotional distress; recovery for negligent infliction of emotional distress was limited to circumstances in which a plaintiff witnessed an injury to a third party, or came upon the scene of such injury immediately after the infliction of the injury, and the injured party was a parent of or another person closely related to plaintiff.

Don't write like the following two HNs:

Allegations by mortgagor that, after a lengthy period of lost and repeatedly re-submitted paperwork, she was informed by bank that she qualified for relief under federal Home Affordable Modification Program (HAMP), but that after a lengthy audit, repeated phone calls, and additional lost paperwork, was told by bank there was no record of her having qualified for the program, and bank subsequently placed loan in foreclosure, did not state conduct by bank that was "extreme and outrageous" or "profoundly shocking," and therefore, such allegations were insufficient to state a claim for intentional infliction of emotional distress by mortgagor against bank.

Allegations by mortgagor that, after a lengthy period of lost and repeatedly re-submitted paperwork, she was informed by bank that she qualified for relief under federal Home Affordable Modification Program (HAMP), but that after a lengthy audit, repeated phone calls, and additional lost paperwork, was told by bank there was no record of her having qualified for the program, and bank subsequently placed loan in foreclosure, were insufficient to state a claim for negligent infliction of emotional distress by mortgagor against bank, absent allegations that mortgagor witnessed an injury to a third party, or came upon the scene of such injury immediately after the infliction of the injury, and the injured party was a parent of or another person closely related to mortgagor.

Also, avoid the following style:

Allegations by mortgagor that she experienced emotional distress with accompanying physical symptoms as a result of conduct of bank and servicing company were insufficient to state a claim for intentional or negligent infliction of emotional distress, absent allegations of facts suggesting an entitlement to relief under either theory.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040469

## Example 1

Loretta Page appeals the orders of the District Court dismissing as untimely her action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. For the reasons discussed below, we reverse.

In a charge filed with the Equal Employment Opportunity Commission (EEOC), Page contended that her employer, the Arkansas Department of Correction, discriminated against her on the basis of race, sex, and retaliation. The EEOC issued a right-to-sue letter which Page received on April 16, 1999. On July 8, Page wrote a letter to the District Court, requesting assistance in filing a lawsuit. She submitted several documents with this letter, including her right-to-sue letter and EEOC charge. The charge alleged, in pertinent part, that Page had been "subjected to harassment" from her immediate supervisor and the assistant warden; that her supervisor told her she "did not have the authority to tell a white male employee that work[s] in the mailroom what to do"; that she "was written up" for coming to work early and leaving early, although "[a] white male does this all the time but he was not written up"; and that after she filed a grievance complaining about her differential treatment, her position was posted, and she was told the assistant warden "did not want [her] in that position." She stated her belief that she was being discriminated against because of her race and sex, and in retaliation for filing her grievance, in violation of Title VII.

The District Court docketed Page's documents as a Title VII complaint, but informed her in a July 15 letter that the documents were not in proper form. She submitted an amended complaint on a district court form on August 2. The District Court dismissed Page's action, holding that it was not filed within the ninety-day time limit of 42 U.S.C. § 2000e-5(f)(1) (aggrieved person may bring civil action against respondent within 90 days of receipt of notice that EEOC has dismissed charge), as the July 8 letter and attachments were insufficient to constitute a complaint under Federal Rule of Civil Procedure 8(a) (pleading shall contain, inter alia, short and plain statement showing that pleader is entitled to relief).

After de novo review, we conclude that Page's July 8 letter and attachments were sufficient to initiate her Title VII proceeding in a timely manner. See Huston v. General Motors Corp., 477 F.2d 1003, 1008 (8th Cir.1973) (mere presentation of request for appointment of counsel within limitations period constituted bringing of civil action under Title VII); see also Winbush v. State of Iowa, 66 F.3d 1471, 1477-78 (8th Cir.1995) (substantial compliance with filing requirements of § 2000e-5(f)(1)--such as making some effort to initiate action--excuse strict compliance with Title VII procedural requirements). We conclude her filing was the substantial equivalent of a complaint. Specifically, the documents presented to the District Court described the alleged discriminatory conduct and invoked Title VII protection. See McClellon v. Lone Star Gas Co., 66 F.3d 98, 101-03 (5th Cir.1995) (pro se pleadings accorded liberality; Title VII complaint lacking required elements was still considered to be timely filed); Judkins v. Beech Aircraft Corp., 745 F.2d 1330, 1331-32 (11th Cir.1984) (per curiam) (filing of EEOC complaint in district court in conjunction with right-to-sue letter more than adequately complies with complaint requirements); cf. Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) (district court issued order informing plaintiff that filing was not being regarded as complaint; Supreme Court held that filing of right-to-sue letter alone failed to invoke court's jurisdiction because it lacked, inter alia, short and plain statement of plaintiff's claim).

Accordingly, we reverse the dismissal, and remand for further proceedings.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040470

Summarization Training Materials
November 2020

## Example 2

[Parents brought a wrongful death suit against a school district for the death of their son, who fell through a skylight while playing on the roof of an elementary school.]

On July 6, 1995, at about 9:00 P.M., the plaintiff's 13-year-old decedent, James Paul Clifford, and two of his friends were on the grounds of the Gatelot Elementary School in Lake Ronkonkama. One of the three suggested that they climb up to the roof. They climbed to the first level of the roof, using the air conditioner vents and the windows. They then climbed to the second level using a ladder affixed to the building. While on the second level of the roof, the decedent stepped on a plastic skylight and fell 23 feet to the gym floor below. Security reports indicate that the defendants knew that children occasionally played on the roof.

After the plaintiff's attorney set out the afore stated facts in his opening statement, the defendants moved to dismiss the complaint on the ground that the plaintiff failed to state a cause of action. After granting the plaintiff an opportunity to provide additional offers of proof and to reopen his case, the Supreme Court dismissed the complaint.

Contrary to the plaintiff's contention, this action was properly dismissed upon the opening statement. The plaintiff did not assert any claim that the skylight was defective in any way or that it was an unobservable dangerous condition. Even though the defendants knew that children occasionally played on the roof, stepping on a skylight is an extraordinary occurrence which need not have been guarded against (see Kurshals v. Connetquot Cent. School Dist., 227 A.D.2d 593, 643 N.Y.S.2d 622).

"In light of the foregoing there is 'no doubt' that the plaintiff cannot recover" (Sewell v. City of New York, 238 A.D.2d 331, 332, 656 N.Y.S.2d 916, quoting De Vito v. Katsch, 157 A.D.2d 413, 418, 556 N.Y.S.2d 649). Thus, the Supreme Court properly dismissed this action at the completion of the plaintiff's opening statement, having first given the plaintiff an opportunity to present proof subsequent to the defendants' applications to dismiss (see, Sewell v. City of New York, supra; DeVito v. Katsch, supra).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040471

## Example 3

[Investors brought a securities fraud action against various corporate officers and directors.]

Plaintiffs in this case essentially rely on the general inference that, because of their positions with CMI, Defendants "must have known" the statements issued by CMI were false and misleading at the time they were issued. That type of inference, however, is inadequate to withstand the special pleading requirements in securities fraud cases. See Lirette, 27 F.Supp.2d at 283 (quoting Maldonado v. Dominguez, 137 F.3d 1, 10 (1st Cir.1998)). Without more, Plaintiffs' complaint fails to allege sufficient facts to raise a strong inference that Defendants knew, or were reckless in not knowing, that the alleged misleading statements were materially false or misleading when they made them.

## Example 4

[Union members sued union officers for breach of their duty of fair representation under the Labor Management Relations Act.]

The law in this Circuit on whether a union agent may be personally liable under Section 301 of the LMRA is well-settled. Union officers and employees are not individually liable for acts performed as representatives of the union. As such, the plaintiff does not have any recourse against defendants Thompson and Krippa or any other individual union official for her claims for breach of fair representation. The plaintiff's remedy lies only with a suit against the Union. Accordingly, the plaintiff's claims against Thompson and Krippa are legally insufficient and their motion to dismiss the complaint must be granted.

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040472

Summarization Training Materials
November 2020

## Solutions (add available factual context)

Example 1

Public employee's letter to the district court, requesting assistance in filing a lawsuit, along with other documents submitted, including her right-to-sue letter and EEOC charge, which included allegations of discrimination based on race and gender and retaliation, were the substantial equivalent of a complaint, sufficient to institute employee's Title VII action in a timely manner. 42 U.S.C.A. § 2000e-5(f)(1).

Example 2

Minor's act of stepping on a skylight on roof of elementary school was an extraordinary occurrence which need not have been guarded against, and thus, school district was not liable for minor's death, though school district officials knew that children sometimes played on the roof, where there was no suggestion that the skylight was defective in any way or that it was an unobservable dangerous condition.

Example 3

General inference that, because of their positions with corporation, officers and directors "must have known" that statements issued by corporation were false and misleading at the time they were issued was inadequate to withstand the special pleading requirements in securities fraud cases.

Example 4

Union officers were not personally liable on claims of breach of duty of fair representation under the LMRA for acts performed as representatives of the union. [cite]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040473

## TYPES OF HEADNOTES—Admissibility of Evidence

In addressing the admissibility of evidence, the caseheader should note what evidence is involved and why it is admissible. A determination of admissibility will likely involve one of the following issues:

> Is the evidence or testimony relevant?
> Is the probative value of the evidence substantially outweighed by danger of unfair prejudice?
> Does the evidence qualify as evidence of habit or custom or routine practice?
> Is evidence of other crimes or acts proffered for something other than to show propensity to commit a crime?
> Is the evidence hearsay or does it come within a hearsay exception?
> Does the evidence have a proper foundation or is it properly authenticated?
> Is a document the original or does it meet the requirements for admitting a reproduction?
> Is a document a public record?
> Is a witness competent?
> Is testimony based on personal knowledge?
> Is an expert qualified?
> Is an issue appropriate for expert or lay opinion?
> Is testimony privileged?
> Is the evidence appropriate for impeachment?
> May the court take judicial notice?
> Does the evidence relate to a subsequent remedial measure?
> Does it pertain to settlement negotiations or plea negotiations?
> Is it evidence of liability insurance?
> Was a search or arrest valid?
> Was a custodial interrogation proper?
> Is the evidence sufficiently attenuated from any illegality?
> Were identification procedures unduly suggestive or is there an independent basis for an in-court identification?

The propriety of admission of evidence also often depends on the time it is offered. When material, the headnote must disclose whether evidence was offered in chief, rebuttal, in the guilt phase of a capital murder trial or the penalty phase, etc. It may also be necessary to disclose whether testimony was given on direct, cross-examination, or redirect examination.

Rule 403 of the Federal Rules of Evidence deals with the excludability of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Most often the court addresses the issue of whether the probative value of the evidence outweighs its prejudicial effect. It is not enough in such a headnote to merely mention that the admission of the evidence would be prejudicial. The caseheader should include whether the probative value of the evidence outweighs its prejudicial effect.

### Judicial Notice

We make headnotes from a court's statement that it is taking judicial notice of some fact or declining to do so, even when the court does not discuss the judicial notice rule and provides no analysis. Courts often state the decision about taking judicial notice in a footnote.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040474

## EXAMPLE 1

[This is an action by an estate to recover the testator's jewelry from Mr. McGaughey, the present possessor.]

McGaughey states in his first point that the trial court erred in allowing Robert A. Esterly, the personal representative of the estate, to testify because he was also acting as attorney for the estate at the hearing and could not serve both as an advocate and a witness. Esterly testified that McGaughey told him that he had Mrs. Wirth's jewelry and "was going to keep it, that he considered it his." Though the attorney was a party, in his representative capacity, and in a sense was representing himself, it is not necessary to decide whether that changes the result.

 Rule 4, DR 5-102(A), in effect at the time of the hearing, states what an attorney should do when, after being employed, he learns he ought to testify. Under that same rule, EC 5-9 and EC 5-10 discuss the problem further. Rule 4 has been changed effective January 1, 1986. Now, under Rule 4, see Rule 3.7.

 Cases discussing DR 5-102(A) say that it discourages, but does not forbid, an attorney from testifying in a case he is actively trying. The cases state that the better practice is for trial counsel to avoid testifying but that such testimony is not ordinarily reversible error. See Danforth v. Danforth, 663 S.W.2d 288, 297 (Mo.App.1983). See also Menzi v. White, 360 Mo. 319, 228 S.W.2d 700, 706 (1950); Burgdorf v. Keeven, 351 Mo. 1003, 174 S.W.2d 816, 819 (1943).

 Although the testimony may have been prejudicial to appellant, it was relevant and was not erroneous because the witness was an attorney. It is possible that Esterly thought he would not have to testify but decided he should after McGaughey denied that he told Esterly he had the jewelry and was going to keep it. Except where a prosecuting attorney testified, a situation involving additional considerations not ordinarily present in civil cases, see State v. Hayes, 473 S.W.2d 688, 692 (Mo.1971), no Missouri cases are cited to us and we have found none where reversible error occurred because an attorney testified. We see no exceptional circumstances here that would make the testimony reversible error. Point one is denied.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040475

## EXAMPLE 2

[This is a suit for diving injuries sustained by a swim school student. The student, Patrick Kozak, sued his instructor, Wayne Struth.]

For over a century, we have consistently held that an expert's comment on the totality of the evidence, where the evidence is in conflict, improperly impinges upon the jury's exclusive province. In 1885, Mr. Justice Green declared that "[t]he [expert] witness can not be asked to state his opinion upon the whole case, because that necessarily includes the determination of what are the facts, and this can only be done by the jury." Yardley v. Cuthbertson, 108 Pa. 395, 450, 1 A. 765, 773 (1885). Following Yardley, a litany of decisions have reiterated the principle that an expert cannot weigh contradictory evidence and place his imprimatur upon a particular version. [Citations omitted.]

[R]equiring the proponent of an expert opinion to clarify for the jury the assumptions upon which the opinion is based avoids planting in the juror's mind a general statement likely to remain with him in the jury room when the disputed details are lost. Relying on cross-examination to illuminate the underlying assumptions may further confuse jurors already struggling to follow complex testimony. Additionally, total reliance on cross-examination permits the party propounding the expert's evidence to introduce it generally in a conclusory manner without relation to the record and casts the whole burden of disqualifying it on the opponent. This is contrary to the usual practice of allocating to the proponent of evidence, as the party with the laboring oar, the duty of laying a logically understandable foundation.

The problems this can create are illustrated by this record to which we now return. The gravamen of appellants' lawsuit is that appellee was negligent in his instruction and supervision of the swim class. Appellant Patrick Kozak testified that he knew he was diving into the shallow end of the swimming pool, that he intended to make a racing dive but altered his diving form so as to avoid hitting students already in the pool. N.T. May 12, 1982 at 41-43. Patrick also testified that he never received any formal instructions on diving techniques. Id. 47, 54, 55. The expert's final opinion that Patrick just did not think directly attacks the credibility of this testimony. Patrick's testimony regarding the improper technique employed to enter the pool was buttressed by a fellow student, Thomas Sabo. N.T. May 13, 1982 at 107-114. Appellee, Wayne Struth, testified that Patrick's dive was "excellent." N.T. May 19, 1982 at 353. Carl Peterson, appellee's expert, was then called upon to render his opinion as to the appellee's standard of care in managing the class. Counsel for the appellee, as quoted supra, asked for his expert to comment on the appellee's conduct based upon the totality of the evidence, even though it was contradictory.

In rendering his opinion that Patrick was careless and did not think, appellee's expert had to assume that Patrick knew the proper technique of entering the pool and that the class was properly supervised before concluding that Mr. Struth exercised a proper standard of care. Counsel's examination of the expert not only required the expert to draw informed inferences from the record, but also [improperly] to reject, without saying so, the credibility of testimony concerning a particular version of the controverted facts.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040476

Summarization Training Materials
November 2020

## EXAMPLE 3

A plaintiff sought damages for a knee injury sustained in an automobile accident. During the trial, evidence was adduced from a Florida doctor to support the theory that the injury was attributable to a prior boating incident. This evidence emanated from the plaintiff's medical history compiled by the treating physician in Massachusetts. The jury returned a verdict for the defendant. The plaintiff believes that the admission of that evidence, to which he objected, was reversible error. We disagree and affirm.

 The principal case on which the injured plaintiff relies is Saul v. John D. and Catherine T. MacArthur Foundation, 499 So.2d 917 (Fla. 4th DCA 1986). In Saul, the plaintiff fell down and injured her shoulder upon exiting an elevator and was thereafter attended to by two sets of physicians to whom she gave conflicting stories as to the cause of her fall. One version was that she tripped over a hallway rug after leaving the elevator. A second version blamed the fall on the failure of the elevator operator to halt the cab level with the floor. The paramount issue in Saul, as it is here, was whether the conflicting evidence of causation was admissible as an exception to the hearsay rule under section 90.803(4), Florida Statutes (1985), which permits such statements given to physicians if they are "reasonably pertinent to diagnosis or treatment." Interpreting this language, the Saul court noted that the key factor was the fall and that whether the plaintiff fell as the result of catching her heel in the carpet or because of an uneven elevator level "was not relevant to the diagnosis and treatment to her shoulder." Id. at 920.

 Sub judice, the question of causation was very much a part of the case history and we distinguish Saul from the case at bar. Whether the plaintiff injured his knee bumping it against the boat dashboard, while off- shore racing, or whether he twisted it in a later automobile accident were reasonably pertinent to both diagnosis and treatment and, therefore, within the parameters of admissible hearsay under section 90.803(4). Moreover, the question of aggravation of a preexisting injury is present in the case now before us, a factor which was not present in the Saul decision. Finally, the court in Saul made a point of the fact that the physician, whose evidence was excluded, had no knowledge as to how the information that the plaintiff had tripped over a rug came to be in his report. That lack of knowledge is not a factor in the instant case.

The foregoing discussion would not be complete without comment on the fact that the Florida doctor [footnote omitted], who testified for the defense in court, was not the original treating physician in Massachusetts to whom, and whereat, the plaintiff ascribed the injury to a prior boating accident. In other words, the local doctor was neither the original examining, nor the original treating, doctor in whose files the statement about the boating accident had been recorded. This being so, the court was obviously faced with a double hearsay problem, which without more, would have rendered the doctor's testimony inadmissible under section 90.803(4). However, there was more and a predicate for the Florida doctor's testimony was laid through the video deposition of the original treating and examining physician in Massachusetts played to the jury. In that deposition, reference to the history of the boating accident contained in his files was also brought up.

 We, therefore, hold that under the totality of the facts and circumstances of this case, the evidence objected to was admissible under section 90.803(4).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040477

## EXAMPLE 4

We begin our analysis with the basic proposition that a witness's opinion as to the guilt or innocence of the accused is not admissible. [Citations omitted.] Section 90.703, Florida Statutes (1997), which provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact," would appear to allow opinion testimony of the defendant's guilt. However, such testimony is precluded on the authority of section 90.403, Florida Statutes (1997), which excludes relevant evidence on the grounds that its probative value is substantially outweighed by unfair prejudice to the defendant. See Glendening, 536 So.2d at 221. "Any probative value such an opinion may possess is clearly outweighed by the danger of unfair prejudice." Id. We find "[i]t is clear that error is occasioned where a witness, including a lay witness, is permitted to offer her opinion about the guilt of the defendant." Zecchino, 691 So.2d at 1198.

\* \* \* \* \*

[T]here is an increased danger of prejudice when the investigating officer is allowed to express his or her opinion about the defendant's guilt. In this situation, an opinion about the ultimate issue of guilt could convey the impression that evidence not presented to the jury, but known to the investigating officer, supports the charges against the defendant. See United States v. Young, 470 U.S. 1, 18-19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). In the context of an improper prosecutorial argument to the jury, the United States Supreme Court in Young explained why it is improper for a representative of the government to express his or her personal opinion concerning the guilt of the accused:

> [S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Id. (emphasis supplied); see also Berger v. United States, 295 U.S. 78, 88-89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (finding prosecutorial argument to be improper because it suggested to the jury that the prosecution had personal knowledge of the defendant's guilt).

Although in a different context, this Court has expressed its concern that error in admitting improper testimony may be exacerbated where the testimony comes from a police officer. See Rodriguez v. State, 609 So.2d 493, 500 (Fla.1992). In Rodriguez, a police officer corroborated a story told by a testifying witness by discussing the witness's prior consistent statements, which were not properly admissible. See id. We cautioned that "[w]hen a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave." Id. (quoting Carroll v. State, 497 So.2d 253, 257 (Fla. 3d DCA 1985)).

In this case, it was ultimately for the jury to decide whether the statements made by Martinez to Sloane established his guilt. The jury heard the audio-video taped conversation and, as the trier of fact, was charged with the responsibility of determining the weight to be given to that evidence. It was an impermissible invasion of the province of the jury for Detective Conigliaro, the lead investigating officer in this case, to express his opinion that after he listened to the conversation as it was occurring he had "no doubt" that Martinez committed the murders. Further, the clear and equally impermissible implication in this case was that Detective Conigliaro obtained some additional knowledge from monitoring the surveillance live that was unavailable to the jury. However, there was no evidence presented to the jury that Detective Conigliaro had heard some other statement by Martinez, not recorded on the video tape, that would lead him to have "no doubt" of Martinez's guilt. Thus, the admission of this opinion of guilt testimony was error.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040478

## EXAMPLE 5

¶ 21 The first issue we address is whether the circuit court properly admitted evidence of the defendant's prior sexual assault of Jason B. We must determine whether the circuit court erroneously exercised its discretion when it admitted the evidence. State v. Pharr, 115 Wis.2d 334, 342, 340 N.W.2d 498 (1983). We uphold a circuit court's discretion if the court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." State v. Wollman, 86 Wis.2d 459, 464, 273 N.W.2d 225 (1979). If there was a reasonable basis for the court's determination, then we will not find an erroneous exercise of discretion. Pharr, 115 Wis.2d at 342, 340 N.W.2d 498 (citing Boodry v. Byrne, 22 Wis.2d 585, 589, 126 N.W.2d 503 (1964)).

¶ 22 We conclude that the evidence of the defendant's prior sexual assault was admissible under the three-step analytical framework set forth in Sullivan, 216 Wis.2d at 772-73, 576 N.W.2d 30. In Sullivan we stated that we ask the following three questions in assessing the admissibility of other acts evidence:

> (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?
> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.
> (3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? See Wis. Stat. § (Rule) 904.03.

Id.

¶ 23 In a sex crime case, the admissibility of other acts evidence must be viewed in light of the greater latitude rule. The greater latitude rule was first stated in 1893 in Proper v. State, 85 Wis. 615, 628- 30, 55 N.W. 1035 (1893). It applies in a sex crime case to admit other acts evidence, particularly when a child victim is involved. State v. Friedrich, 135 Wis.2d 1, 25, 398 N.W.2d 763 (1987) (stating that the rule is especially useful "in both incest cases and cases involving indecent liberties with children.") The rule helps other acts evidence to come in under the exceptions stated in Wis. Stat. § (Rule) 904.04(2). State v. Fishnick, 127 Wis.2d 247, 256, 378 N.W.2d 272 (1985). We have explained the rationale behind the rule in the following manner:

> "A 'greater latitude of proof as to other like occurrences' is clearly evident in Wisconsin cases dealing with sex crimes, particularly those involving incest and indecent liberties with a minor child. This is not so much a matter of relaxing the general rule that it is not competent in a prosecution for one crime to introduce evidence of other offenses as it is a matter of placing testimony concerning other acts or incidents within one of the well established exceptions to such rule...." Hendrickson v. State, 61 Wis.2d 275, 279, 212 N.W.2d 481 (1973). (Footnote omitted).

Id. We reaffirm our earlier decisions that the greater latitude rule facilitates the admissibility of the other acts evidence under the exceptions set forth in § (Rule) 904.04(2). In State v. Davidson, 2000 WI 91, ¶ 51, 236 Wis.2d 537, 613 N.W.2d 606. we concluded that "in sexual assault cases, especially those involving assaults against children, the greater latitude rule applies to the entire analysis of

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040479

whether evidence of a defendant's other crimes was properly admitted at trial." Here, the greater latitude rule facilitates the admission of Jason B.'s testimony.

¶ 24 We first consider whether the evidence of the Jason B. [child molestation] incident is offered for an admissible purpose under Wis. Stat. § (Rule) 904.04(2). [Footnote omitted] The evidence was admissible to show the alleged perpetrator's modus operandi, or mode or method of operation, through which the identity of the person who assaulted Steven D., Mark D. and Josh C. may be proved. Identity is one of the enumerated exceptions under § (Rule) 904.04(2). Method of operation, while not specifically enumerated in § (Rule) 904.04 (2), is one of the factors " 'that tends to establish the identity of the perpetrator.' " State v. Hall, 103 Wis.2d 125, 139 n. 6, 307 N.W.2d 289 (1981) (quoting Francis v. State, 86 Wis.2d 554, 560, 273 N.W.2d 310 (1979)).

¶ 25 The identity of the defendant was among the other elements that the state had to prove. The defendant essentially concedes that because at least some of the victims did not see their perpetrator, "identity provided a facial basis to satisfy the first step of the three-step analytical framework." (Hammer's Br. at 29.) He argues, however, that since the circuit court prohibited testimony relating to the boys' sexual conduct, identity is not an issue in the case; therefore, the probative value of the evidence is greatly reduced and the evidence should be excluded. (Hammer's Br. at 29-30.) In State v. Plymesser, 172 Wis.2d 583, 594-95, 493 N.W.2d 367 (1992), we rejected such an argument. If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element. Id.

¶ 26 The evidence was also admissible to prove mode or method of operation because of the similarity between the Jason B. incident and the case at hand. See Hall, 103 Wis.2d at 139, 144-45, 307 N.W.2d 289 (comparing the similarity in method of operation between two crimes). At trial, Jason B. testified that he awoke late at night to find the defendant masturbating him. (R. at 40:15.) In this case, there was testimony that the defendant also entered into the area where the victims were sleeping and woke them up by trying to improperly touch them. (R. at 33.)

¶ 27 While the acceptable purpose under Wis. Stat. § (Rule) 904.04 (2) that is the clearest--mode or method of operation establishing identity-- certainly justifies the admissibility of the other acts evidence, the circuit court, applying the greater latitude rule, did not err in admitting the evidence to show motive and absence of mistake. Each of the four crimes the defendant was charged with under Wis. Stat. §§ 940.225(2)(d), 940.225 (3m), and 948.02(2) related to "sexual contact." "Sexual contact" for the purpose of this case is defined as

> Intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant.

Wis. Stat. § 948.01(5)(a). Jason B.'s testimony was properly admitted to prove motive because purpose is an element of sexual contact, and motive is relevant to purpose. Plymesser, 172 Wis.2d at 595-96, 493 N.W.2d 367.

¶ 28 Similarly, according to the meaning of "sexual contact" under Wis. Stat. § 948.01(5)(a), the defendant had to intentionally touch the victims. The Jason B. testimony therefore was relevant to show that the defendant did not touch the victims by accident or mistake.

¶ 30 We next address the relevancy of the Jason B. testimony, considering the greater latitude rule as Davidson permits us to do. Evidence is relevant under Wis. Stat. § (Rule) 904.01 if it relates to a fact or proposition that is of consequence to the determination of the action and if it has probative value. [Footnote omitted.] Identity was a fact of consequence to this case because Steven D. did not see who touched him. Identity was also an issue of consequence in the case because the defendant denied

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040480

Summarization Training Materials
November 2020

ever being in the basement that night. Further, he brought in evidence that his mother woke him up in his own bedroom.

¶ 31 The Jason B. testimony also has probative value. "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." State v. Gray, 225 Wis.2d 39, 58, 590 N.W.2d 918 (1999). Similarity is demonstrated by showing the "nearness of time, place, and circumstance" between the other act and the alleged crime. State v. Scheidell, 227 Wis.2d 285, 305, 595 N.W.2d 661 (1999). Here, during each incident, the defendant awakened the victims in the middle of the night by improperly touching them. The victims were all males, and with the exception of the fourteen year-old victim, were approximately the same age.

¶ 32 The defendant argues that the Jason B. evidence is not probative because Jason B. was an adult and the defendant was a child when the incident occurred. In contrast, he argues, the victims in this case were children and the defendant was an adult. We do not find this to be a significant distinction since, in both cases, the ages of the young people involved were somewhat near the age of majority. Jason B. was between 18 and 20 years old when the incident occurred in Ohio, and the defendant was between 16 and 18 years old. Here, the defendant was in his mid-twenties when the incident occurred, and the victims were in their middle to late teens. Moreover, other jurisdictions have found other acts evidence admissible even though the victims were of different ages. State v. Cardell, 132 Idaho 217, 970 P.2d 10, 11 (1998); Rary v. State, 228 Ga.App. 414, 491 S.E.2d 861, 863 (1997); State v. Crocker, 409 N.W.2d 840, 843 (Minn.1987).

¶ 33 The defendant also argues that the other acts evidence is inadmissible because it was too remote in time, place and circumstances. It is within a circuit court's discretion to determine whether other acts evidence is too remote. See Hough v. State, 70 Wis.2d 807, 814, 235 N.W.2d 534 (1975). There is no precise point at which a prior act is considered too remote, and remoteness must be considered on a case-by-case basis. Friedrich, 135 Wis.2d at 25, 398 N.W.2d 763. Even when evidence may be considered too remote, the evidence is not necessarily rendered irrelevant if the remoteness is balanced by the similarity in the two incidents. See State v. Mink, 146 Wis.2d 1, 16, 429 N.W.2d 99 (Ct.App.1988) (citing Sanford v. State, 76 Wis.2d 72, 81, 250 N.W.2d 348 (1977)). This court has in other cases upheld the admission of other acts evidence that was more remote in time than the five to seven year time span in this case. Plymesser, 172 Wis.2d at 596, 493 N.W.2d 367 (upholding the admissibility of thirteen-year-old evidence); State v. Kuntz, 160 Wis.2d 722, 749, 467 N.W.2d 531 (1991) (upholding the admissibility of sixteen-year-old evidence). We conclude that the other acts evidence was not too remote, and certainly is balanced by the similarity between the two events.

¶ 34 We note that the circumstances and place of the two incidents also share common characteristics. While one incident took place in Ohio and the other in Wisconsin, both occurred in a home during an overnight visit. In both instances the defendant knew the victim. In sum, we conclude that the Jason B. incident was relevant evidence, because it related to a fact of consequence in this case and it had probative value.

¶ 35 Finally, we address whether the probative value of the other acts evidence is outweighed by the danger of unfair prejudice under Wis. Stat. § (Rule) 904.03. [Footnote omitted.] Again, we keep in mind the greater latitude rule when balancing probative value against unfair prejudice. The probative value of evidence must not be outweighed by unfair prejudice, which is the "potential harm of a jury reaching the conclusion that because the defendant committed a bad act in the past, the defendant necessarily committed the current crime." Mink, 146 Wis.2d at 17, 429 N.W.2d 99 (citing Fishnick, 127 Wis.2d at 261-62, 378 N.W.2d 272).

¶ 36 The circuit court recognized the danger of prejudice in this case, but concluded that the evidence was not unfairly prejudicial. (R. at 33:22-23.) See Gray, 225 Wis.2d at 64, 590 N.W.2d 918 (requiring that, to prevent admissibility, the probative value of the evidence must be outweighed by unfair prejudice, and not be merely prejudicial). Here, the court offered a cautionary instruction both

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040481

before Jason B. testified and at the close of the case. [Footnote omitted.] Cautionary instructions eliminate or minimize the potential for unfair prejudice. Plymesser, 172 Wis.2d at 596-97, 493 N.W.2d 367. See also State v. Landrum, 191 Wis.2d 107, 122, 528 N.W.2d 36 (Ct.App.1995). Here, the cautionary instruction specifically stated that the jury should not conclude from the evidence that the defendant was a "bad person." This is the type of cautionary instruction that was affirmed in Fishnick, 127 Wis.2d at 262, 378 N.W.2d 272, and Gray, 225 Wis.2d at 65, 590 N.W.2d 918. [Footnote omitted.]

¶ 37 In sum, we affirm the circuit court's decision to admit Jason B.'s testimony because it satisfies the three-part Sullivan test for admissibility of prior acts evidence.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040482

## Solutions

**EXAMPLE 1**

Fact that personal representative of estate was acting as attorney for the estate at hearing did not disqualify him from testifying at hearing, absent any exceptional circumstances. DR 5-102(A).

**OR**

Personal representative of estate was not disqualified from testifying, though he was acting as attorney for estate at hearing, where there were no exceptional circumstances. DR 5-102(A).

WRONG: Attorney's testimony was admissible....

**EXAMPLE 2**

Expert's testimony that student was careless and did not think when he dove into shallow end of pool involved improper comment on conflicting evidence, in negligence action against instructor, where expert assumed in forming his opinion that student knew the proper technique of entering the pool and that the class was properly supervised, which was contrary to student's contentions at trial.

WRONG: Expert's testimony that student was careless and did not think when he dove into shallow end of pool was not admissible....

**EXAMPLE 3**

Motorist's out-of-court statement to physician attributing knee injury to prior boating accident came within hearsay exception for statements reasonably pertinent to diagnosis or treatment, in suit to recover for injuries sustained in automobile accident, where causation was at issue. West's F.S.A. s 90.803(4).

**EXAMPLE 4**

Any probative value of lead detective's testimony expressing his opinion that, when he heard recorded conversation during surveillance, he had "no doubt" that defendant committed the charged murders, was substantially outweighed by danger of unfair prejudice.

**AND**

Lead detective's testimony expressing his opinion that, when he heard recorded conversation during surveillance, he had "no doubt" that defendant committed the charged murders, impermissibly invaded province of jury.

**EXAMPLE 5**

Use as an example of where admissibility determination has many underlying subissues.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040483

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Instruction Issues

### 1. Whether Jury Instructions Correctly State the Law

Where there is no question as to the language of a jury instruction, or its propriety, but merely whether the law stated therein is accurate or erroneous law, the headnote should be a direct statement of the correct principle of law, without any reference to the instruction.

For example, a criminal defendant argues on appeal that an instruction on recklessness was inappropriate in a murder trial. If the appellate court resolves the issue by ruling that the instruction was improper because the state has to prove specific intent to obtain a conviction for murder, the headnote would say, "State was required to prove specific intent to kill, rather than mere recklessness, to obtain conviction for first-degree murder. [cite murder statute]"

### 2. Whether Evidence Warrants Instruction or Whether Issue Should Go to Jury

Sometimes a court addresses whether the evidence warrants the giving of a particular instruction or whether an issue should go to the jury. In that instance, the sufficiency of the evidence either in favor of giving the instruction or not giving the instruction should be mentioned.

For example, a criminal defendant argues on appeal that he was entitled to an instruction on the defense of justification in a bank fraud prosecution. If the appellate court resolves the issue by ruling that he did not sufficiently raise the issue of justification to warrant the instruction, the headnote would say, "Defendant presented insufficient evidence of [some element of justification] to warrant instruction on defense of justification in prosecution for bank fraud, where he showed only [blah blah blah]. [cite]"

If, on the other hand, the appellate court resolves this issue by ruling that no instruction was warranted because justification is not available as a defense to bank fraud, the headnote would fall into category 1 above.

### 3. Propriety of Jury Instruction

When the court determines the propriety of language of a jury instruction, the nature of the action and alleged infirmity, together with the court's conclusion, should appear. It may be appropriate to include specific quoted language from the instruction.

If the court addresses the issue of whether the instruction "invades the province of the jury," that language should appear in the headnote.

The court may also say that the proffered instruction is not necessary because it is "adequately covered by the instructions already given."

The court may bar an instruction because the proffered instruction is never warranted, which is how some courts treat instructions defining "reasonable doubt." E.g., "Meaning of proof beyond a 'reasonable doubt' is within knowledge of reasonable juror and definitional instruction would only create potential for confusion and should not be given."

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040484

## Example 1

[A landowner sued the owners of adjoining property for flooding allegedly caused by landscaping on the adjoining property.]

The submitted instructions essentially defined the issues as an ordinary negligence action. That, however, is not the correct approach in this particular fact pattern. As our Supreme Court made clear in Keys, "the question is not one of strict negligence accountability, ... [t]he question is reasonableness of conduct." (Keys, supra, 64 Cal.2d at p. 409, 50 Cal.Rptr. 273, 412 P.2d 529.)

While reasonableness is also at the heart of a negligence claim, its application to this type of fact pattern yields different results. For instance, in this case were the jury to find that both defendants and plaintiff acted reasonably, defendants would still be liable (assuming a finding they had altered the natural flow of waters). (Keys v. Romley, supra, 64 Cal.2d at pp. 409 & 410, 50 Cal.Rptr. 273, 412 P.2d 529; Burrows v. State of California, supra, 260 Cal.App.2d 29, 33, 66 Cal.Rptr. 868.) This is in marked distinction to a traditional negligence action. If the jury found the defendants had acted reasonably and the plaintiff was free of contributory fault, the defendants would win, notwithstanding the fact defendants' actions had injured the plaintiff. The problem is that the submitted instructions essentially directed the jury to use the latter analysis when, in fact, the former analysis was required. In other words, the instructions improperly absolved defendants of liability if the jury found their actions reasonable, a result inconsistent with precedent.

Plaintiff is also correct that the court erred in submitting a contributory negligence instruction. In Western Salt Co. v. City of Newport Beach (1969) 271 Cal.App.2d 397, 76 Cal.Rptr. 322, the defendant urged contributory negligence because plaintiff failed to take affirmative action prior to the flooding to prevent its property from the potential damage. The trial court submitted instructions on that point. The issue before the Court of Appeal was whether contributory negligence was a viable defense in light of Keys, supra, 64 Cal.2d 396, 50 Cal.Rptr. 273, 412 P.2d 529. The court concluded it was not. It held: "It is not contributory negligence for a landowner or possessor to continue to make use of his property in any lawful manner even though he may know or suspect that such use may be interfered with by water carelessly diverted to his property by a neighbor. [Citation.] He is under no duty to anticipate that his land will be flooded by the negligence of a neighbor; he is not obliged to protect his land by dam, checks or otherwise against such flooding, and failure on plaintiff's part so to do does not constitute contributory negligence." (Western Salt Co., supra, 271 Cal.App.2d at p. 401, 76 Cal.Rptr. 322.) The appellate court then noted a fact pattern in which a plaintiff could be liable for contributory negligence: "[W]here he causes the diversion of water resulting in the inundation of his property [citation]...." (Id. at p. 402, 76 Cal.Rptr. 322.) The court reasoned that the language in Keys about the duty of the lower owner to take reasonable steps to avoid injury applied only to actions involving intentional diversion of surface waters because in Keys the flooding had occurred over a three-year period. (Id. at pp. 403-404, 50 Cal.Rptr. 273, 412 P.2d 529.) A defendant's action causing the flooding can be characterized as intentional " 'when the conduct is continued after the actor knows that the invasion is resulting from it...' [Citation.]" (Id. at p. 403, 50 Cal.Rptr. 273, 412 P.2d 529.) In this case, plaintiff did not rely upon a theory of an intentional invasion. Accordingly, the instruction was error. In sum, "Keys did not change the rule precluding contributory negligence as a defense in surface water cases." (Id. at p. 404, 50 Cal.Rptr. 273, 412 P.2d 529.)

The correct way to focus on a plaintiff's action is in the context of evaluating the reasonableness of that individual's conduct, not by pigeonholing it into the rubric of contributory negligence. "Reasonable conduct may or may not require affirmative action by the lower owner, depending upon all the circumstances. The social utility of the upper owner's conduct must be weighed against the burden that such conduct would impose on the lower owner. More often than not, the lower owner's unreasonable conduct will consist not of his failure to take affirmative steps to protect his property, but of affirmative conduct increasing the danger to his property." (Sheffet v. County of Los Angeles, supra, 3 Cal.App.3d 720, 730, 84 Cal.Rptr. 11.)

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040485

## Example 2

[This case involves a petition for habeas corpus by a homeless person, challenging his conviction under a city ordinance banning sleeping in designated public areas.]

An instruction on the defense of necessity is required where there is evidence "sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency. [Citations]." (People v. Pepper (1996) 41 Cal.App.4th 1029, 1035, 48 Cal.Rptr.2d 877; People v. Pena (1983) 197 Cal.Rptr. 264, 149 Cal.App.3d Supp. 14.)

The defense of necessity is "founded upon public policy and provides a justification distinct from the elements required to prove the crime. [Citation.] The situation presented to the defendant must be of an emergency nature, threatening physical harm, and lacking an alternative, legal course of action. [Citation.] The defense involves a determination that the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged. [Citation.] Necessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime. [¶] An important factor of the necessity defense involves the balancing of the harm to be avoided as opposed to the costs of the criminal conduct. [Citation.] Unlike duress, the threatened harm is in the immediate future, which contemplates the defendant having time to balance alternative courses of conduct. [Citation.] The defendant has the time, however limited, to form the general intent required for the crime, although under some outside pressure. [Citation.] Thus, the defense does not negate the intent element, and the defendant has the burden of proving the defense by a preponderance of the evidence." (People v. Heath (1989) 207 Cal.App.3d 892, 901, 255 Cal.Rptr. 120.) Whether necessity exists is generally a question of fact. (See People v. Lovercamp (1974) 43 Cal.App.3d 823, 832, 118 Cal.Rptr. 110.)

At a minimum, reasonable minds could differ whether defendant acted to prevent a "significant evil." Sleep is a physiological need, not an option for humans. It is common knowledge that loss of sleep produces a host of physical and mental problems (mood irritability, energy drain and low motivation, slow reaction time, inability to concentrate and process information). Certainly, no one would suggest that a groggy truck driver who stops his rig on the side of a road rather than risk falling asleep at the wheel does not act to prevent a significant evil, i.e., harm to himself and others. Indeed, Judge Margines had denied Eichorn's request for funds to hire an expert to testify about the harmful effects of sleep loss: "I mean it doesn't take an expert to tell us that, to convince a person, that there are ill effects that arise from sleep [deprivation]."

The court must instruct if the evidence could result in a finding defendant's criminal act was justified by necessity. (People v. Slack (1989) 210 Cal.App.3d 937, 941, 258 Cal.Rptr. 702.) Eichorn's offer of proof was sufficient. There was substantial if not uncontradicted evidence that defendant slept in the civic center because his alternatives were inadequate  [Footnote omitted] and economic forces were primarily to blame for his predicament. Thus, whether denominated a denial of his right to jury trial [Footnote omitted] or of his due process right to present a defense (see People v. Schroeder (1991) 227 Cal.App.3d 784, 787, 278 Cal.Rptr. 237 [noting the "right of a criminal defendant to present a defense and witnesses on his or her behalf is a fundamental element of due process guaranteed under the Fourteenth Amendment to the United States Constitution"] ), the court's error was clear, fundamental, and struck at the heart of the trial process.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040486

Summarization Training Materials
November 2020

## Example 3

[The wife and the estate of a state employee, who was killed by a driver while helping a towing service remove a crashed vehicle, sued the towing service, which sought contribution from the driver.]

In this case, appellants' proposed points for charge concerned provisions of the Vehicle Code and the concept of negligence per se. Proposed Point for Charge No. 3 stated "[t]he provisions of a statute and of an administrative regulation may establish a standard of conduct whose violation is negligence as a matter of law." Proposed Point for Charge No. 4 then described the laws and regulations which are the subject of this appeal. One portion of the charge addressed section 6123 of the Vehicle Code, Erection of traffic-control devices while working, and its accompanying regulations. Section 6123 states: "Any person performing any work on or near the roadway which may create hazards shall erect traffic-control devices in accordance with the rules and regulations of the department for the maintenance and protection of traffic." The accompanying regulations provide, "Final responsibility for the protection of the public and the employees in work zones shall rest with the contractor or agency performing the work." 67 Pa.Code § 203.7, Application, (d) Final responsibility. The other portion of proposed charge No. 4 dealt with section 3351(a) of the Vehicle Code, Stopping, standing and parking outside business and residence districts, (a) General rule, which states that if a vehicle is stopped on the roadway, "an unobstructed width of the highway opposite the vehicle shall be left for the free passage of other vehicles and the vehicle shall be visible from a distance of 500 feet in each direction."

We find that appellants' proposed jury instructions concern a basic or fundamental aspect of the law about which the jury should have been informed. The above statutes and regulations were intended to prevent the harm of which appellants complain. See Gravlin v. Fredavid Builders & Developers, 450 Pa.Super. 655, 661-63, 677 A.2d 1235, 1239 (1996). The concept of negligence per se does not, of course, establish liability on the part of Works [towing service]. Id. at 659-61, 677 A.2d at 1238. Nevertheless, it is relevant to the facts of this case and possibly could have controlled the case's outcome.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040487

## Example 4

[A shopper brought a negligence action against a department store seeking damages for injuries sustained when she was struck by a toy radio which fell from a display hook.]

A trial court should give a requested instruction on a party's theory of the case only when the theory is supported by competent evidence. Phillips v. Parkside of Fountainbleau Condominium Ass'n, 634 So.2d 1101 (Fla. 3d DCA 1994). In Goodyear Tire & Rubber Co. v. Hughes Supply, Inc. 358 So.2d 1339, 1341-42 (Fla.1978), the court said:

> Res ipsa loquitur--"the thing speaks for itself"--is a doctrine of extremely limited applicability. It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially, the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control.

(Emphasis added and footnotes omitted.) Here, the only evidence was that the radios and the hook from which they hung were not under the exclusive control of Wal-Mart. Rather, they were displayed in the store, accessible to customers. Accordingly, the charge should not have been given. See, e.g., Monforti v. K-Mart, Inc., 690 So.2d 631 (Fla. 5th DCA), review denied, 699 So.2d 1374 (Fla.1997) (holding that the trial court had correctly denied a request for a res ipsa loquitur instruction because a shelf on which boxes of file folders which fell on plaintiff had been stacked was accessible to customers and, therefore, not in the exclusive control of the defendant department store).

By giving the instruction on res ipsa loquitur, the trial court permitted the jury to find that Wal-Mart was negligent even if it did not believe that Mrs. Rogers had proven her case by direct evidence, thereby greatly reducing Mrs. Rogers' burden. See Wolpert v. Washington  Square Office Center, 555 So.2d 382 (Fla. 3d DCA 1989) (res ipsa loquitur eliminates the plaintiff's burden in a tort case to prove the defendant's negligence by direct evidence). Therefore, the error cannot be said to have been harmless.

Because the trial court erroneously instructed the jury on the doctrine of res ipsa loquitur, we reverse and remand for a new trial on liability and damages. In light of this holding, we find it unnecessary to address the remaining issues raised by Wal-Mart.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040488

Summarization Training Materials
November 2020

## Example 5

[The defendant was convicted of one count of indecency with a child.]

Next, we address appellant's complaint that the jury charge erroneously allowed a conviction on less than a unanimous verdict. Contrary to the court of appeals' and the State's assertions, Kitchens [v. State, 823 S.W.2d 256 (Tex.Crim.App.1991)] is inapplicable to the instant case. In Kitchens, the defendant was charged with capital murder and sentenced to death. On appeal, he complained that the trial court erred in submitting alternative theories of committing capital murder in a single application paragraph in the charge. He argued that the verdict was not unanimous since six members of the jury may have found him guilty of murder in the course of sexual assault, while the other six members of the jury may have found him guilty of murder in the course of robbery. See id. at 257. The Court stated that "[i]t is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted." Id. at 258.

Unlike the charge in Kitchens, however, alternate theories of committing the same offense were not submitted to the jury in the instant case. Rather, two separate offenses were submitted to the jury in the disjunctive. The relevant portion of the charge read:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the 1st day of November, 1992, in Tarrant County, Texas, the Defendant, JOSEPH CLAYTON FRANCIS, did ... engage in sexual contact by touching the *breast or genitals* of....

(emphasis added). The State introduced evidence of four separate incidents. In two different incidents, the appellant touched the victim's breasts. In two separate occasions, the appellant touched the victim's genitals. There was never a single incident alleged in which the appellant touched both the breasts and the genitals of the victim.

When appellant requested that the State be asked to elect, the State proceeded on the incident in which the appellant touched the victim's breast and the second incident in which the appellant touched the victim's genitals. These incidents constitute two separate offenses. See Vernon v. State, 841 S.W.2d 407 (Tex.Crim.App.1992) (stating that "those who commit multiple discrete assaults against the same victim are liable for separate prosecution and punishment for every instance of such criminal conduct."). Therefore, Kitchens, which considered one offense with varying theories of commission, is distinguishable from this case.

The United States Supreme Court's holding in Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), also does not control the instant case. Schad examined a similar issue to the one presented in Kitchens. The plurality concluded that a conviction under a jury instruction, which did not require agreement on whether the defendant was guilty of felony murder or premeditated murder, was not unconstitutional. See id. at 627. Portions of the Schad opinion lend guidance, however, in solving appellant's issue. Justice Scalia stated in his concurrence,

> As the plurality observes, it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission. That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her (and caused the fire accidently in his hasty escape), while six others believe he left her unconscious and set fire to kill her. While that seems perfectly obvious, it is also true as the plurality points out, that one can conceive of novel "umbrella" crimes (a felony consisting of either robbery or a failure to file a tax return) where permitting a 6 to 6 verdict would seem contrary to due process.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040489

Id. at 649-50 (Scalia, J., concurring) (citations omitted). Justice Scalia further observed that "[w]e would not permit ... an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the 'moral equivalence' of those two acts." Id. at 651 (Scalia, J., concurring). The plurality in Schad also discussed the "umbrella" crimes stating, "nothing in our history suggests that the Due Process Clause would permit a State to convict anyone under a charge of 'Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction." Id. at 633.

Relying on the preceding language, the Fifth Circuit distinguished Schad from the issue raised in United States v. Holley, 942 F.2d 916 (5th Cir.1991). In Holley, the defendant was charged with two counts of perjury, and each count alleged multiple statements. At trial, the defendant objected to the jury instructions because the court failed to instruct the jury that it must be unanimous as to one particular statement in each count to find the defendant guilty. His objection was overruled. See id. at 920-22.

The Fifth Circuit first examined the importance of an unanimous jury verdict. An unanimous jury verdict ensures that the jury agrees on the factual elements underlying an offense--it is more than mere agreement on a violation of a statute. See id. at 925 (citing McCoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring)). The unanimity requirement is undercut when a jury risks convicting the defendant on different acts, instead of agreeing on the same act for a conviction. See id.

Looking at the Schad opinion, the Holley court noted that the two cases entertained different factual scenarios. In Schad, one single killing occurred. But in Holley, a single count encompassed two or more separate offenses. Because the jury instruction did not require jurors to agree on the falsity of one particular statement, the court concluded that "there was a reasonable possibility that the jury was not unanimous with respect to at least one statement in each count." Id. at 929.

Applying the Holley reasoning to the instant case, the jury charge given in appellant's case created the possibility of a non-unanimous jury verdict. The breast-touching and the genital-touching were two different offenses, and therefore, should not have been charged in the disjunctive. By doing so, it is possible that six members of the jury convicted appellant on the breast-touching offense (while the other six believed he was innocent of the breast-touching) and six members convicted appellant on the genital- touching offense (while the other six believed he was innocent of the genital- touching). Appellant was entitled to an unanimous jury verdict. See Brown v. State, 508 S.W.2d 91 (Tex.Crim.App.1974). Hence, the trial court erred by charging appellant in the disjunctive.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040490

## Solutions

### EXAMPLE 1

The issue in example 1 is not the language of the instructions, but the state of the law.

Even were the jury to find that both landowner and neighbors acted reasonably, in connection with flooding of landowners' property caused by neighbors' landscaping, neighbors would still be liable, assuming a finding they had altered the natural flow of waters.

Contributory negligence, based on landowner's alleged failure to take affirmative action prior to flooding to prevent its property from potential damage, was not available as a defense in landowner's suit against neighbors for flooding caused by neighbors' landscaping.

### EXAMPLE 2

The dispute in example 2 is whether the defendant is entitled to have the defense submitted to the jury.

Homeless person, charged under a city ordinance banning sleeping in designated public areas, made sufficient showing that he acted to prevent a significant evil, he had no alternative, and economic forces were primarily to blame for his predicament to be entitled to instruction on defense of necessity.

### EXAMPLE 3

The issue in example 3 is whether the instruction should be given, although the discussion is pretty ambiguous.

Proposed jury instruction on vehicle code provisions allegedly violated concerned a basic or fundamental aspect of the law about which the jury should have been informed, in suit by wife and estate of a state employee, who was killed by while helping a towing service remove a crashed vehicle.

### EXAMPLE 4

The dispute is the state of the law, whether the doctrine of res ipsa loquitur is available under the circumstances alleged, although you would also get credit if you said the dispute was over whether the theory should be submitted to the jury.

Doctrine of res ipsa loquitur was not available in customer's negligence action against discount store for injuries sustained when she was struck by toy radios that fell from display hook, where radios and hook were not under the exclusive control of store, but rather, were displayed in the store, accessible to customers.

Customer who was injured when she was struck by toy radios that fell from display hook was not entitled to instruction on res ipsa loquitur, in suit against discount store, where only evidence was that radios and hook were not under the exclusive control of store, but rather, were displayed in the store, accessible to customers

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040491

**EXAMPLE 5**

The dispute in example 5 is over the specific language of the instruction.

Instruction charging in the disjunctive that defendant could be convicted of indecency with a child if he touched her "breast or genitals" deprived defendant of his right to unanimous verdict; it was possible that some members of the jury convicted defendant on the breast-touching offense, while the others believed he was innocent of the breast-touching, but convicted on the genital- touching offense.

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

TR-0040492

# PARTY CHARACTERIZATIONS

## In General

The parties must be clearly identified and characterized. The terms used to describe the parties should generally reflect their legal relationship to each other, i.e., landlord and tenant, shipper and carrier. In some cases, notably tort cases, the terms may describe the parties' factual relationship to each other, i.e., motorist and pedestrian, customer and store owner. A party must not change characterizations within a headnote.

## Assuming the Answer

Do not use a term to describe a party which assumes the result of the case. Do not call someone an agent if the issue is whether he was an agent. If the particular point being made is based on the courts resolution of another issue earlier in the opinion, such as when the court discusses duties resulting from the fact that the court has now determined that someone was an agent, the applicable term may be used.

## Procedural Points

The terms plaintiff, defendant, appellee, and appellant may be appropriate in procedural points in which the nature of the suit is unimportant.

## Proper Names

Proper names generally should not be used for parties, except for federal and state government agencies and for organizations which are sui generis. Sui generis organizations are one-of-a-kind entities that can be referred to by name. E,g.:

- YMCA
- Girl Scouts
- National Basketball Association (NBA)

(See other examples in the Editorial Manual.)

## Correlative Terms

Use correlative terms to describe the parties within a feature. Thus, use husband and wife, not husband and mother; landlord and tenant or lessor and lessee, not a mixture of the two.

## Multiple Parties

When there is more than one party to whom a descriptive term is applicable, the parties must be differentiated. This is done by applying an adjective that reflects the action the party took or the party's role in the transaction which is relevant to the point being made, i.e., on-coming motorist and left-turning motorist or payor bank and payee bank. If one such entity is a party to the action and the other is not, it is permissible to refer to, e.g., plaintiff

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040493

seaman and other seaman. Terms such as plaintiff distributor and defendant distributor are also acceptable. The terms first corporation and second corporation and the like should be used only as a last resort.

**EXAMPLE**

Northbound motorist was not liable for injuries sustained by on-coming motorist in collision, where northbound motorist's vehicle was stopped at traffic light when on-coming motorist lost consciousness and crossed over into northbound motorist's lane, causing collision.

## Parties With Multiple Roles

A party may be referred to by different terms in different headnotes as the issues change. Within a single headnote, a party should be referred to by only one term. If absolutely necessary to show a party's relationship to two or more other parties, a hyphenated term, such as husband-maker may be used. This should be done only rarely. Usually, there is an appropriate term which, with proper context, will provide the necessary clarity. In other cases, an adjective may be sufficient, e.g., corporate manufacturer.

## Decedents

Great care should be used when referring to a decedent or deceased person in a headnote. A deceased person cannot drive, attack, purchase, or do any acts done by the living. In other words, do not use decedent or deceased party when referring to something only a live person can do. If absolutely necessary in wrongful death actions, one may speak of plaintiff's decedent.

**EXAMPLE**

WRONG: Emergency exception to Tort Claims Act's waiver of sovereign immunity applied to wrongful death action against city, based on deputy fire chief's alleged failure to adequately warn motorist of flood waters, where deputy fire chief, responding to an emergency situation caused by flood water, parked his vehicle across the road so that cars could not drive past it into the water, activated his emergency lights, honked his horn as each vehicle approached, and decedent drove past, with no acknowledgment of the emergency vehicle, did not slow down, and was swept away by flood water. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.055, 101.060.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040494

## INCLUSIVE LANGUAGE GUIDELINES

The Inclusive Language Guidelines assist editors in selecting inclusive language to use in headnotes, despite a court's use of possibly antiquated and/or offensive terms. One of the primary goals of the Guidelines is to show respect for individuals over their disability/race/sex/ or other characteristics.

Guidelines were developed after work with a consultant and review of Reuters' editorial guidelines. Prior to Inclusive Language Guidelines, the editorial manual only touched on a couple of points, for example, for persons using wheelchairs – do not use term "wheelchair-bound," and for mental disabilities, do not use mentally retarded, but they were not very extensive, so it provided little guidance.

The suggested terms in the guidelines are not static; they are subject to editors' discretion, to a certain degree; some of the favored terms listed in the guidelines may change over time

There will be times when possibly offensive language might be critical to understanding the issue before the court; if this is the case, use quotations around offensive language in your headnote, since we should not sacrifice the accuracy of the legal statements and issues we are reporting.

Language used may vary from headnote to headnote, since language necessary for one concrete point might not be necessary for another.

The full Inclusive Language Guidelines document is available in the Appendix and on the Hub.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040495

## STATUTE AND CASE CHARACTERIZATION

Statutes

Statutes and rules often require some explanation or context. While "summary judgment rule," "rule governing expert testimony," and "adverse possession statute" are generally sufficient, a longer explanation may be required.

Example:

> Under the Illinois statute providing that a plaintiff who voluntarily dismisses a suit may commence a new action within one year or within the remaining period of limitation, whichever is greater, a plaintiff who voluntarily dismisses a suit may commence only one new action.  S.H.A. > 735 ILCS 5/13-217.

The following statutes and rules, and only these, are sufficiently well known to be used in the text of a headnote without further description:  § 1983, § 1988, Title VII, Title IX, Rule 11 (civil cases), § 10(b) and Rule 10b-5 (securities cases), and article 78 (New York).  You may also refer to section 8 housing and Subchapter S corporations.

If a statute has a popular name, it should be used.  For example: Financial Institutions Reform, Recovery and Enforcement Act (FIRREA).  The name itself might be sufficient to characterize the statute, but if you are dealing with a particular provision, you will have to describe the provision.

Editors should not use a court's shorthand name for a statute; the name should be used in full, or the statute should be characterized more generically. For example, if the name of the statute is the Wrongful Death and Punitive Damages Recovery Act, editors should not call the statute the Wrongful Death Act in their headnotes, but calling it a wrongful death statute would be appropriate.

Cases

When the name of a case is the popular name for a rule, use the name as well as a description of the rule.  The detail necessary in the description will depend on how well known the case name is, both nationally and within the jurisdiction, and the context provided by the rest of the headnote.  Some headnotes will provide sufficient context through the facts and holding to make the rule obvious.  A few cases, such as *Miranda, Terry, Batson, Daubert, Frye, Brady, and McDonnell-Douglas,* are so well known as to never require description.

When referring to a case name in a summary, check to see whether the case is on the Popular Cases list in the Summary application.  If the case name is there, it should be

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040496

added to the summary using the Popular Case Name widget. This will ensure that the case name will link on Westlaw. If the case name is not on the Popular Cases list, it may still be included, but the NRS citation for the case should be included as well.

When drafting a headnote that requires mention to a particular case, such as whether a particular decision applies to the case in hand, be sure to refer to the case name and describe what the holding is in that case. Do not refer generally to a decision or Court of Appeals decision.

Examples:

> The *Daubert* factors for determining the reliability of expert witness testimony based on whether reasoning or methodology underlying the testimony is scientifically valid and can be applied to facts in issue are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion. Fed. R. Evid. 702.

> The agency is the decider on issues of fact, and thus, under the standard set forth in *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, a court cannot substitute its judgment on those contested issues of fact but if the appealing party has not met his burden of proof with the fact-finder, the court can properly, and must, consider whether that party's proof was so compelling that no reasonable person could have failed to be persuade.

## Acronyms

If there is a common acronym or an acronym generally used in its field for a term used in the headnote, it should be included in parentheses immediately after the term. Thereafter in the same headnote, only the acronym need be used.

If a case involves a statute which is commonly referred to by its acronym, such as ERISA, and the full name is used in the statute citation at the end of the headnote, it is sufficient to use only the acronym in the headnote.

The following acronyms may be used without their corresponding compound terms: AIDS, ALJ, anti-SLAPP, ATM, CAT scan, CPA, CT-scan, DNA, DVD, FBI, GPS, HIV, IRS, IQ, LSD, MRI, NASDAQ. Please continue to use both the acronym and compound term when they relate to a central issue in the case.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040497

## Examples

**EXAMPLE #1**

An ERISA plan participant may bring suit for breach of fiduciary duty to obtain appropriate equitable relief to redress violations of ERISA. Employee Retirement Income Security Act of 1974, § 2 et seq., as amended, 29 U.S.C.A. § 1001 et seq.

**EXAMPLE #2**

A plaintiff alleging mail or wire fraud as the predicate act for a Racketeer Influenced and Corrupt Organizations Act (RICO) violation must show not only that the mail or wire fraud statutes have been violated but that the plaintiff has suffered injury as a result of the violation. 18 U.S.C.A. §§ 1341, 1343, 1961 et seq.

**EXAMPLE #3**

To validate a claim that posttraumatic stress disorder (**PTSD**) is a serious injury under the No-Fault Law, a plaintiff must present competent medical evidence through an expert's qualitative assessment of a plaintiff's condition, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system. N.Y. Insurance Law § 5102(d).

**EXAMPLE #4**

State unemployment benefits proceedings comported with procedural rigors of federal due process, and, thus, there was no constitutional bar to applying collateral estoppel against employee's subsequent ADA suit, where, pursuant to Georgia's unemployment benefits compensation scheme, employee received administrative hearing that was adversarial in nature and afforded him sufficient opportunity to pursue his positions, and he raised issue of his HIV- positive status during state proceedings, arguing that employer fired him because of his HIV status rather than because of incident with customer. U.S.C.A. Const.Amends. 5, 14; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; O.C.G.A. §§ 34-8-220(a), 34- 8-221(a), 34-8-223.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040498

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Damages

Headnotes dealing with the excessiveness or adequacy of particular awards of damages for personal injury should indicate the general nature of the injuries, whether they are temporary or permanent, and important facts, if available, such as the plaintiffs age, sex, and occupation.  The headnote should also mention the dollar figure awarded if the quantum of damages is at issue.

The factual setting and nature of the action may be disclosed when necessary to ensure a complete understanding of the case.

Undisputed items of special damages, such as hospital expenses, loss of wages, etc., need not be mentioned when there is no dispute as to the recovery for those items.

Care should be taken in using the correct damage terminology in the headnote.  Damages refer to the award.  Hence, a plaintiff is entitled to damages or a damages award, not a damage award.

> EXAMPLE: Injured motorist was entitled to exemplary damages of $10,000 for accident in which her vehicle was struck by off-duty police officer's unmarked police car, given that officer's blood alcohol level four hours after accident was 0.15%, witnesses saw officer driving erratically, evidence supported conclusion that officer's intoxication contributed to his ability to respond appropriately to situation, and officer acted with conscious indifference to the consequences by driving home after consuming at least six drinks in the preceding hours.  LSA-C.C. art. 2315.4.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040499

Summarization Training Materials
November 2020

## Checklist for Damages Headnotes

**What is the specific nature of the injuries—body part?**
**Was the injury permanent or temporary (if known)?**
**What is the specific amount of damages awarded?**
**What is the specific type of damages awarded?**

## Classification of Damages Headnotes

| Headnote | Classification |
|---|---|
| 1. Award of a lot of damages to motorist who was severely injured in collision with drunk driver was not excessive. | 127.9 |
| 2. Award of $1 million in damages to motorist who was severely injured in collision with drunk driver was not excessive. | 127.9 |
| 3. Award of $1 million in damages to motorist who sustained broken leg and other severe injuries in collision with drunk driver was not excessive. | 127.9/127.28 |
| 4. Award of $1 million in damages to motorist who sustained broken leg and spinal injuries in collision with drunk driver was not excessive. | 127.28/127.33 |
| 5. Award of $1 million in damages to motorist who sustained broken leg and spinal injuries in collision with drunk driver, rendering him a paraplegic, was not excessive. | 127.28/127.39 |
| 6. Award of $500,000 in compensatory damages and $500,000 in lost earnings damages to motorist, who sustained broken leg and spinal injuries in collision with drunk driver, rendering him a paraplegic, was not excessive. | 127.28/127.39/127.52/127.54 |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040500

Summarization Training Materials
November 2020

## 115. DAMAGES

### VI. MEASURE OF DAMAGES.

*Measure of exemplary damages, see ⊕94.*

#### (A) INJURIES TO THE PERSON.

95. Mode of estimating damages in general.
96. Discretion as to amount of damages.
97. Physical suffering and inconvenience in general.
98. Permanent injuries.
99. Loss of earnings, services, or consortium.
100. Impairment of earning capacity.
101. Expenses.
102. Mental suffering and emotional distress.

#### (B) INJURIES TO PROPERTY.

103. Mode of estimating damages in general.
104. Discretion as to amount of damages.
105. Destruction or loss of property.
106. Detention or loss of use of property.
107. Injuries to real property.
108. —— In general.
109. —— Temporary injuries.
110. —— Permanent and continuing injuries.
111. —— Buildings or other improvements.
112. —— Growing crops, grass, shrubbery, or trees.
113. Injuries to personal property.
114. Injuries affecting limited or special rights or interests.
115. Injuries affecting rights of action or remedies.
116. Expenses.

#### (C) BREACH OF CONTRACT.

117. Mode of estimating damages in general.
118. Effect of provisions of contract.
119. Discretion as to amount of damages.
120. Failure to perform in general.
  (1). In general.
  (2). Work, labor, and services in general.
  (3). Buildings and other improvements.
  (4). Printing, publishing, and advertising.
  (5). Board, lodging, and support.
  (6). Sharing expenses or profits and losses.

### VI. MEASURE OF DAMAGES.(Cont'd)

  (7). Contracts conferring exclusive privileges or restricting competition.
121. Partial performance.
122. Delay in performance.
123. Defects in performance.
124. Prevention or obstruction of performance.
  (1). In general.
  (2). Value of work performed or materials furnished.
  (3). Loss of profits and expenses incurred.
  (4). Difference between contract price and cost of performance.
125. Failure to pay money.
126. Failure to deliver property.

### VII. AMOUNT AWARDED.

#### (A) IN GENERAL.

127.1. In general.
127.2. Inadequate damages in general.
127.3. Excessive damages in general.
127.4. Statutory limitations on amount.
127.5. —— In general.
127.6. —— Validity.

#### (B) INJURIES TO THE PERSON.

127.7. In general.
127.8. Inadequate damages in general.
127.9. Excessive damages in general.
127.10. Temporary or permanent nature of injury in general.
127.11. Internal injuries in general.
127.12. Head and neck injuries in general; mental impairment.
127.13. —— In general.
127.14. —— Mouth and jaw injuries.
127.15. —— Brain injuries in general; mental impairment.
127.16. Eye injuries and loss of vision.
127.17. Loss of hearing.
127.18. Arm, hand, wrist, and shoulder injuries.
127.19. —— In general.
127.20. —— Loss of function in general.
127.21. —— Fractures, sprains, and connective tissue injuries.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040501

VII. AMOUNT AWARDED.(Cont'd)

127.22. —— Loss of finger.
127.23. —— Loss of hand.
127.24. —— Loss of arm.
127.25. Leg, foot, knee, and hip injuries.
127.26. —— In general.
127.27. —— Loss of function in general.
127.28. —— Fractures, sprains, and connective tissue injuries.
127.29. —— Loss of toe.
127.30. —— Loss of foot.
127.31. —— Loss of leg.
127.32. Back and spinal injuries in general.
127.33. —— In general.
127.34. —— Fractures, sprains, and connective tissue injuries.
127.35. —— Disc injuries.
127.36. Injuries to the nervous system and paralysis.
127.37. —— In general.
127.38. —— Arms and the upper body.
127.39. —— Legs and the lower body.
127.40. —— Quadriplegia and total paralysis.
127.41. Injuries to sexual organs and function.
127.42. Injuries to the fetus and miscarriage.
127.43. Burns, scars, and skin injuries.
127.44. Multiple injuries.
127.45. Loss of earnings.
127.46. —— In general.
127.47. —— Internal injuries in general.
127.48. —— Head and neck injuries in general; mental impairment.
127.49. —— Eye injuries and loss of vision.
127.50. —— Loss of hearing.
127.51. —— Arm, hand, wrist, and shoulder injuries.
127.52. —— Leg, foot, knee, and hip injuries.
127.53. —— Back and spinal injuries in general.
127.54. —— Injuries to the nervous system and paralysis.
127.55. —— Burns, scars, and skin injuries.
127.56. —— Multiple injuries.
127.57. Impairment of earning capacity.
127.58. —— In general.
127.59. —— Internal injuries in general.
127.60. —— Head and neck injuries in general; mental impairment.

VII. AMOUNT AWARDED.(Cont'd)

127.61. —— Eye injuries and loss of vision.
127.62. —— Loss of hearing.
127.63. —— Arm, hand, wrist, and shoulder injuries.
127.64. —— Leg, foot, knee, and hip injuries.
127.65. —— Back and spinal injuries in general.
127.66. —— Injuries to the nervous system and paralysis.
127.67. —— Burns, scars, and skin injuries.
127.68. —— Multiple injuries.
127.69. Expenses of, and loss of services performed by, injured person.
127.70. —— In general.
127.71. —— Medical treatment and custodial care.
　(1). In general.
　(2). Future expenses.
127.72. Loss of consortium, services, or earnings arising out of injury to another.
127.73. —— In general.
127.74. —— Husband and wife.
127.75. —— Parent and child.

(C) INJURIES TO PROPERTY.

137. In general.
138. Real property.
139. Personal property.

(D) BREACH OF CONTRACT.

139.5. In general.
140. Particular cases.

(E) MENTAL SUFFERING AND EMOTIONAL DISTRESS.

140.5. In general.
140.7. Particular cases.

VIII. PLEADING.

141. Allegations as to damage in general.
142. General or special damage.
143. Personal injuries and physical suffering.
144. Loss of earnings, services, or consortium.
145. Impairment of earning capacity.
146. Loss of or damage to property.
147. Loss of profits.
148. Expenses.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040502

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Damages Examples

## Example 1

*McDonough v. Royal Caribbean Cruises, Ltd.,* 48 F.3d 256.

While standing in an elevator in the cruise ship on which she was a passenger, Virginia McDonough had her foot run over by a champagne-laden dolly being pushed by a steward. Ms. McDonough brought suit against Royal Caribbean Cruises, Ltd., the steward's employer. Following a bench trial, the district judge found in Ms. McDonough's favor and awarded her $38,000 in damages. Royal Caribbean appeals, with poor results.

\*\*\*

Finally, Royal Caribbean argues that the damages were excessive. Royal Caribbean notes that no bones were broken and Ms. McDonough resumed her normal activities fairly soon after the injury. Royal Caribbean's argument ignores the trial evidence that the foot injury caused permanent damage. Two years after the injury, a physician diagnosed Ms. McDonough as suffering from peroneal tendinitis of the right foot, attributable to the dolly injury and secondary to Ms. McDonough's abnormal gait used to compensate for her pain. The evidence supports a finding that Ms. McDonough will suffer pain for as long as she lives, even when participating in the normal activities she resumed. We do not believe an award of $38,000 for such an injury is " 'monstrously excessive,' born of passion and prejudice, or not rationally connected to the evidence...." *Pincus v. Pabst Brewing Co.,* 893 F.2d 1544, 1554 (7th Cir.1990) (quotation omitted); *Kwasny v. United States,* 823 F.2d 194, 197 (7th Cir.1987).

Headnote:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040503

## Example 2

*Paschal v. Nixon*, 646 So.2d 110.

Judy Paschal filed this action against Lashana Nixon as a result of an automobile accident that occurred in July 1990. Following a jury trial, a verdict was returned for Paschal in the amount of $2,500. Paschal moved for a new trial, based on inadequacy of damages. The motion was denied. Paschal appeals.

The issue before this court is whether the trial court erred in refusing to grant a new trial for inadequacy of damages. Nixon did not file a cross appeal. Therefore, liability is not at issue.

&ast;&ast;&ast;

Paschal presented uncontroverted evidence that she sustained approximately $2,588 in medical expenses for treatment of injuries resulting from the automobile accident. She testified that she missed approximately nine days of work due to the accident. She stated that she still has pain in her knee every day. She may at some time have to undergo arthroscopy on her knee and possibly have surgery on her nose.

We find the damages awarded to Paschal to be inadequate. The uncontroverted evidence concerning the amount of medical expenses incurred exceeded the amount of damages awarded by the jury. Thus, it is evident that the verdict did not include any compensation for pain and suffering or for lost wages.

The trial court erred in failing to grant Paschal's motion for a new trial based on the inadequacy of damages. Paschal's motion is directed to be granted.

Headnote:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040504

## TYPES OF HEADNOTES—Limitations

### Outline

A. Generally fall into three categories
which statute of limitations applies
when the cause of action accrued or the statute of limitations began running
whether the limitations period has been tolled

B. DO NOT write headnotes saying action was/was not "time-barred" or was/was not "timely"

C. Headnotes on limitation of actions may not be a mere recitation of dates with the conclusion that the statute has run.

D. Consideration of the "Discovery Rule."

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040505

Summarization Training Materials
November 2020

EXAMPLE 1

The plaintiff, N.G., appeals from a final summary judgment entered in favor of the defendants, Arvida Corporation, David B. Mesoroll, Jr., Arvida Management Co., Country Walk Master Association, Inc., Country Walk Estate Homes Association, Inc., Country Walk Patio Homes Association, Inc., and State of Florida Department of Health and Rehabilitative Service [collectively referred to as the Defendants] finding that his cause of action is barred by the statute of limitations. We affirm.

The only issue in this case is whether the plaintiff's action is barred by the four-year statute of limitation governing negligence actions. The plaintiff contends that the statute of limitations was tolled because the plaintiff did not have access to the courts to prosecute his claim for damages. The Defendants, on the other hand, contend that the four-year limitations period had already run as of the date of the July 31, 1991, action.

[1] The record reveals that this cause of action accrued on August 10, 1984, the date on which the plaintiff's abuser was actually arrested on charges of sexual child abuse and the last possible date on which the plaintiff could have been abused. Lindabury v. Lindabury, 552 So.2d 1117 (Fla. 3d DCA 1989), appeal dismissed, 560 So.2d 233 (Fla.1990). This negligence action must have been commenced within four years of the accrual date, or by August 9, 1988. See § 95.11(3)(a), Fla.Stat. (1983).

[2] Rule 1.210, Florida Rules of Civil Procedure (1983), allows an infant to bring an action by next friend or by a guardian ad litem. Anyone who was aware of the plaintiff's predicament had the authority to and could assert the plaintiff's legal rights. No one acted on the plaintiff's behalf. Thus, during the relevant time period of August 10, 1984 through August 9, 1988, the plaintiff had access to the courts. Accordingly, the limitations period was not tolled and the trial court correctly determined that the applicable statute of limitations had run on the plaintiff's action.

**HEADNOTE 1: (When cause of action accrues)**

Child's cause of action in negligence arising from alleged sexual abuse accrued on date on which child's alleged abuser was arrested on charges of sexual child abuse, which was the last possible date on which child could have been abused.  West's F.S.A. § 95.11(3)(a).

**HEADNOTE 2: (Whether statute of limitations is tolled)**

Child's purported lack of access to courts did not toll the four-year statute of limitations for child's negligence action arising from alleged sexual abuse, where anyone who was aware of child's predicament had authority under rule to assert child's legal rights during the four-year period, and no one had acted on child's behalf.  West's F.S.A. § 95.11(3)(a); West's F.S.A. RCP Rule 1.210.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040506

Summarization Training Materials
November 2020

## EXAMPLE 2

Donna Cleaver filed a medical malpractice action against Dr. R. Anthony Marrese and the Wood River Township Hospital (Hospital) on August 23, 1991. The trial court dismissed the Hospital because the plaintiff failed to file her cause of action within the one-year statute of limitation pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 et seq. (West 1992)). Plaintiff appeals. We reverse.

Plaintiff alleges that because Dr. Marrese intentionally misrepresented the need for her to undergo surgery, she permitted him to perform a cervical discectomy and interbody fusion on July 6, 1988, and a lumbar interbody fusion on September 13, 1989. Cleaver's complaint alleges that the Hospital was negligent in granting staff privileges to Dr. Marrese and allowing him to continue to operate on and treat patients, including the plaintiff, when the Hospital knew or should have known that Marrese had previously performed unnecessary surgery on patients and previously had his staff privileges revoked. The trial court granted the Hospital's motion for summary judgment because plaintiff's claim was not filed within one year from the date that the injury was received or the cause of action accrued. Plaintiff contends that her suit was timely filed because the statute of limitations for medical malpractice actions is applicable to this case.

The key issue is whether the two-year medical malpractice statute of limitations or the one-year tort immunity statute of limitations applies to this cause of action. Section 8-101 of the Tort Immunity Act provides:
"No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued. For purposes of this Article, the term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State." (Emphasis added.) (745 ILCS 10/8-101 (West 1992).)
Section 13-212 of the Illinois Code of Civil Procedure provides:
"(a) Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, * of the injury or death * * *." (Emphasis added.) 735 ILCS 5/13-212 (West 1992).

Arguably, either statute could apply to plaintiff's cause. While section 8- 101 of the Tort Immunity Act applies to "civil actions against a local entity," section 13-212 of the Code of Civil Procedure applies to "actions for damages for injury or death against any physician, dentist, registered nurse or hospital." Plaintiff's cause of action for injuries sustained while a patient at Wood River Township Hospital falls within either statute of limitations. However, based upon general rules of statutory construction and our interpretation of the two statutes, we conclude that section 13-212 of the Code governs this case.

**HEADNOTE: (Which statute applies)**

Two-year limitations period for medical malpractice actions, rather than one- year limitations period provided in Local Governmental and Governmental Employees Tort Immunity Act, applied to medical malpractice action against township hospital. S.H.A. 735 ILCS 5/13-212; 745 ILCS 10/8- 101.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040507

Summarization Training Materials
November 2020

## Limitations - Exercise 1

On September 21, 1987, Tammy DeMetz and Jeff DeMetz entered an agreement to purchase a house from Evelyn Lee. Lakeside was the listing and selling broker. The purchase agreement was expressly contingent upon a termite inspection; however, the purchase agreement further provided that the inspection was waived if not obtained by October 21, 1987. No termite inspection was conducted.

During April 1991, DeMetz discovered swarming termites on the property. On July 11, 1991, DeMetz filed a complaint against Lee, alleging breach of the purchase agreement and fraud, and against Lakeside, alleging negligence in the omission of a termite inspection. On September 25, 1992, judgment was entered against Lakeside and Lee; Lakeside appeals.

I.
Statute of Limitations

At the conclusion of DeMetz's case-in-chief, Lakeside moved for judgment on the evidence, alleging that DeMetz's action failed to comply with the statute of limitations regarding negligence. The motion was denied.

Lakeside contends that the statute of limitations applicable to real estate broker malpractice is IND.CODE 34-1-2-2(1), which provides a two year limitation "for injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute." DeMetz argues that the limitation of actions found in IND.CODE 34-1-2-1 applies. I.C. 34-1-2-1 provides that an action "for use, rents, and profits of real property" shall be commenced within six years after the cause of action accrued.

The two year limitations period of I.C. 34-1-2-2(1) has been applied in an action for accountant malpractice, Davis v. Geo. S. Olive & Co. (S.D.Ind.1990), 731 F.Supp. 1380, and in actions for attorney malpractice. See e.g., Lambert v. Stark (1985), Ind.App., 484 N.E.2d 630, reh. denied, trans. denied. In Craig v. ERA Mark Five Realtors (1987), Ind.App., 509 N.E.2d 1144, this court found a claim of real estate broker negligence analogous to claims of attorney negligence and applied the limitations period of I.C. 34-1-2-2(1):

"We are persuaded by these cases that the same statute of limitations should apply to actions against real estate brokers for negligence. Looking at the nature or substance of Craig's allegations under Count II, it is apparent that he is claiming damage from ERA's failure to discover the zoning problem and inform him. He is not attempting to recover rents or profits of the real property which would prompt the application of Ind.Code § 34-1-2-1. Since his action is premised upon negligence, the two year statute of limitations of Ind.Code § 34-1-2-2(1) applies."

Id. at 1149.

Likewise, DeMetz made no attempt to recover rents or profits of the subject real property. The substance of her claim against Lakeside is that Lakeside negligently failed to order a termite inspection. We conclude that I.C. 34-1-2-2(1), rather than I.C. 34-1-2-1, is applicable here.

_____

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040508

Summarization Training Materials
November 2020

## Limitations - Exercise 2

Having concluded that a two year statute of limitations is applicable, our next inquiry concerns when DeMetz's cause of action accrued. A cause of action accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. Madlem v. Arko (1992), Ind., 592 N.E.2d 686, 687; Wehling v. Citizens Nat. Bank (1992), Ind., 586 N.E.2d 840, 843.

In Madlem, supra, relied upon by DeMetz, the court concluded that Madlem had no way to know of a possible improper notarization of a signature until he tried to foreclose on the mortgage and the defense of forgery was presented. Thus, the statute of limitations began to run at that time. DeMetz contends that the statute of limitations did not begin to run in her case when she took possession of a termite-infested house but rather when she actually discovered swarming termites in 1991. She claims that no earlier discovery of Lakeside's omission was feasible.

However, ordinary diligence on the part of DeMetz would have allowed her to discover Lakeside's omission at the subject real estate closing and promptly  obtain a termite inspection. DeMetz testified that she specifically requested a termite inspection and anticipated a charge for the same at closing. However, she did not ascertain at closing whether the inspection had been conducted although she was presented with a closing statement disclosing the omission. DeMetz testified:

Q: At that time did you inquire whether or not a termite inspection had been done on the home?
A: I did not ask about it.
Q: Did that appear on the final settlement papers?
A: As to whether it was paid or not, no.
Q: You were responsible for this payment-wise?
A: Yes.
Q: I show you--this is Petitioner's Exhibit 5.... Could you tell me what that is?
A: It's the closing statement for the house.

* * * * * *
Q: Now, did anything appear there indicating that a termite inspection had been done?
A: No.
Q: You did not make mention of it at that time?
A: No, I did not.

Q: Were you under the assumption that that had been done?
A: Yes, I was told it would be done by closing and that I would have to pay for it and it would come out of my closing costs.

* * * * * *
Q: At the closing did you sign the closing statement which has previously been introduced into evidence?
A: Yes, I did.
*1152
Q: Did you read the second page where it indicated a line item for pest inspections?
A: I read it. I didn't read every single line on it, no.
Q: Did you notice that there was no provision for payment on pest inspections?
A: No, I did not.
Q: Did you inquire as to whether there was a pest inspection at that time?
A: No, I did not.

Record, pp. 90-91, 105.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040509

Thus, a diligent reading of the closing statement would have revealed that no termite inspection was conducted. It was on the date of closing--October 25, 1987--that DeMetz was capable of discovering Lakeside's alleged negligent omission. However, DeMetz's action was commenced almost four years after her cause of action accrued. The action falls outside the applicable two year statute of limitations of I.C. 34-1-2-2(1).

---

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040510

Summarization Training Materials
November 2020

## Limitations - Exercise 3

Facts: Adoptee (Olsen) brought tort action against family members for sexually abusing her while she was a child.

Court's analysis:

Ordinarily, a limitations period begins to run when the cause of action accrues. A cause of action accrues when the last event necessary to complete the legal claim occurs. Myers v. McDonald, 635 P.2d 84, 86 (Utah 1981). With few exceptions, the statute of limitations for a cause of action that accrues during a plaintiff's minority, or incompetency, is tolled until the plaintiff reaches the age of majority or regains competency. Utah Code Ann. § 78-12-36 provides:

 If a person entitled to bring an action, other than for the recovery of real property, is at the time the cause of action accrued, either under the age of majority or mentally incompetent and without a legal guardian, the time of the disability is not a part of the time limited for the commencement of the action.

Olsen argues that the repression of her memory rendered her mentally incompetent as that term is used in § 78-12-36 and that the limitations period was tolled until she recalled the abuse. This Court addressed the meaning of "mentally incompetent" in O'Neal v. Division of Family Services, 821 P.2d 1139 (Utah 1991). There, the Court held that a plaintiff is mentally incompetent for purposes of § 78-12-36 when the mental disability is such that the plaintiff cannot manage his or her business affairs or estate or comprehend his or her legal rights or liabilities. A plaintiff is also mentally incompetent when he or she is incapable of caring for his or her personal safety and providing for basic human needs such as food, shelter, and clothing. Id. at 1142.

 The plaintiff in O'Neal alleged that he had been sexually abused as a child and that although he had not repressed his memory, the effects of the abuse made him incompetent to reveal that fact within the limitations period. We rejected that argument and explained that tolling statutes based on mental incompetency were enacted for the benefit of those " 'who are unable to protect their legal rights because of an overall inability to function in society.' " Id. (quoting McCarthy v. Volkswagen of Am. Inc., 55 N.Y.2d 543, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1982)). Because the plaintiff provided for himself, attended junior college, and had a solid work history, the Court held that he was not mentally incompetent for purposes of the tolling statute. Id.; see also Whatcott v. Whatcott, 790 P.2d 578, 580 (Utah Ct.App.1990).

 Olsen has not alleged any facts demonstrating that she suffered from a disability *1348 preventing her from managing her affairs or providing for her basic needs. Indeed, Olsen admits that in addition to managing her own affairs, she has cared for her children and the children of others, taught crafts to others, and, in her own words, "lived an active and enjoyable life." Although Olsen has alleged that she was severely emotionally and psychologically impaired after she recalled the abuse, this impairment came after the period that Olsen argues should be tolled. In short, nothing indicates that during the time in question, Olsen was "unable to protect [her] legal rights because of an overall inability to function in society." O'Neal, 821 P.2d at 1142; see, e.g., Hildebrand v. Hildebrand, 736 F.Supp. 1512, 1524-25 (S.D.Ind.1990). The statute of limitations, therefore, cannot be tolled due to mental incompetency.

---

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040511

Summarization Training Materials
November 2020

## MISCELLANEOUS ISSUES—Abuse of Discretion

It is generally desirable to say something more substantive than that some action by a trial court was or was not an abuse of discretion.

If it is obvious that the reviewing court regards the trial court's ruling was right or wrong, the corresponding headnote should be written substantively, rather than in terms of abuse of discretion.

If the court states the issue in two ways, one in terms of abuse of discretion and one in substantive terms, write the headnote substantively.

If a reviewing court says that a trial court did not abuse its discretion in admitting evidence, the headnote should reflect that the evidence is admissible. If admitting the evidence was an abuse of discretion, the headnote should reflect that the evidence was not admissible.

In the gray area where the editor is unable to determine whether the court has clearly decided an issue substantively, the editor may use the abuse of discretion language in writing the headnote.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040512

Summarization Training Materials
November 2020

## Examples

[A]  U.S. v. Gray, 152 F.3d 816

Gray argues that the compulsive and emotional manner in which he admitted his guilt during the first day of trial does not indicate a genuine desire to plead guilty. Instead, Gray claims that he proclaimed his guilt in a gallant effort to end the suffering of his paramour while she was being "forced" to testify against him. Gray also contends that the emotional and mental trauma he suffered while incarcerated prior to trial also contributed to his inability to freely decide whether to plead guilty as he observed Bristol testify.

Although it is unusual for a criminal defendant to confess his guilt in open court while a witness is testifying, Gray has failed to show that his decision to formally enter a plea of guilty following a court ordered recess in which he conferred with counsel was anything but a voluntary choice he knowingly made after adequate opportunity for reflection and thought. He has also failed to show any fair and just reason to withdraw his plea. Gray's self-serving, post-plea claims that he was emotionally distraught and unable to voluntarily choose to plead guilty fly directly in the face of his own plea hearing testimony before the district court. Following a recess in which the parties entered into an informal plea bargain, the district court held a plea colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure. Gray stated to the court that his guilty plea was "of my own free will," and that he understood the range of punishment he faced, including the possibility of a mandatory life sentence. (Trial Tr. at 19-23.) Although he admitted that his adrenaline was flowing, Gray said it did not affect his judgment. Gray stated that he was satisfied with his counsel and that he had not been threatened or coerced into pleading guilty. He further told the court that he was not under the influence of any substance. Gray admitted that he was a member of the conspiracy to possess and distribute methamphetamine from 1995 through early 1996 and that the amount of drugs involved during this period was approximately 54 ounces.

The district court, which had observed Gray's behavior during the trial and could evaluate his demeanor at the plea hearing, found Gray's post-plea claims to be "inherently unreliable in light of his plea hearing testimony." (Appellee's Adden. at 5.) This credibility determination is clearly supported by the record, and we will not disturb it on appeal. See Blackledge v.Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). We hold that Gray knowingly and voluntarily chose to plead guilty and that the district court did not abuse its discretion in denying Gray's presentence motions to withdraw his plea.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040513

Summarization Training Materials
November 2020

[B]  U.S. v. Hogan, 121 F.3d 370

Michael Hogan pleaded guilty to making counterfeit securities ...

Next, Hogan argues the district court erred in applying a two-level upward departure under Application Note 10(f) of USSG § 2F1.1 (Nov.1995). Application Note 10(f) provides for an upward departure for an offense involving fraud or deceit where the defendant knowingly endangered the solvency of one or more victims. (The language of the application note is the same in both the 1993 and 1995 versions of the Guidelines.) Hogan claims there was no evidence in the record supporting the conclusion that he knew about his clients' potential insolvency.

We find that the district court's upward departure under section 2F1.1 was not an abuse of discretion. See Koon v. United States, 518 U.S. 81, ---- - ----, 116 S.Ct. 2035, 2046-47, 135 L.Ed.2d 392 (1996) (standard of review). In many instances, Hogan defrauded victims whose investments in Hogan's counterfeit CDs seriously endangered their solvency. Some of these people were at or near retirement age, relying on small, fixed incomes in conjunction with their investments to maintain solvency. Others were dealing with serious medical conditions and were depending on their investments to pay medical bills. Still others were depending upon their investments to finance their college education. Hogan knew some of these people quite well, as they were his friends and relatives. The district court could reasonably have inferred Hogan knew his criminal activity endangered the solvency of at least one of his victims. Cf. United States v. Ross, 77 F.3d 1525, 1551 (7th Cir.1996) (affirming upward departure where fraud against students of their student loan money resulted in risk of insolvency and potential loss of educational opportunity).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040514

Summarization Training Materials
November 2020

## TYPES OF HEADNOTES—Miscellaneous

| Type of Headnote | Description | Example |
|---|---|---|
| Burden of Proof or Production | The court notes which party has the burden of proof or production on some issue. | Defendant had burden to produce some evidence of self-defense before being entitled to have defense submitted to jury. |
| | | A defendant seeking a settlement credit has the burden to prove its right to such a credit, and meets that burden by showing, in the settlement agreement or otherwise, the amount of the settlement credit. |
| Judicial Notice | The court takes judicial notice of something or declines to do so. | The Court of Appeals would take judicial notice of when presiding judge took the bench, and that before then he had held the office of county attorney, on appeal of denial of application for writ of habeas corpus. |
| Preferred Practice | The court sets out the proper or preferred practice for doing something, usually after concluding the challenged action was adequate. | Appellant produced adequate record to permit appellate review, although preferred practice would be to submit trial transcript. |
| Presumptions | The court finds that something creates a presumption or concludes that a presumption is mandatory or rebuttable. | Application of the statutory child support guidelines creates a rebuttable presumption that the amount of support indicated by the guidelines is, in fact, the correct amount of support. |
| | | There is a presumption in favor of the honesty and impartiality of administrative decision makers. |
| Purpose of Statute | The court notes the legislative purpose underlying a statute. Not the same as legislative history. | Purpose of the statute governing limitation periods for filing notice of injury and of claim for workers' compensation is to alert the employer to the fact that a person has sustained an injury that may be compensable and that such person is claiming or proposes to claim compensation under the Workers' Compensation Act. |
| Restatement Adoption | The court adopts a restatement section as the law in its jurisdiction. | Restatement (Second) of Torts section, providing that one who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, was adopted. Restatement (Second) of Torts § 652C. |
| | | Restatement (Second) of Torts section, imposing a duty on one who undertakes to render services to another which he should recognize as necessary for the protection of a third person or his things, is adopted. Restatement (Second) of Torts § 324A. |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040515

| Type of Headnote | Description | Example |
|---|---|---|
| Retroactivity of Decision | The court rules that a prior decision or the present decision applies retroactively or prospectively. | Supreme Court decision in *L.B. v. State,* holding that a folding pocketknife with a blade of four inches or less falls within statutory "common pocketknife" exception to definition of a "weapon," was an evolutionary refinement in the law, and would not be applied retroactively; decision was a routine statutory construction case and was a conventional change that afforded new or different guidelines for the courts in applying the law. |
|  |  | United States Supreme Court decision in *Wilson v. Garcia* that Pennsylvania's two-year personal injury statute of limitations, rather than six-year limitation period governing suits for interference with contractual rights, applies to suits under federal civil rights statute guaranteeing each person equal rights under law would be applied retroactively to suit filed at time in which there was no established precedent in the Third Circuit indicating appropriate limitations period. 42 U.S.C.A. § 1981. |
| Standard of Review | Abstract headnotes should be made for general statements as to the standard of review, provided they are not trite.<br>A concrete headnote should be made if the standard is disputed, if a particular standard applies because of a procedural anomaly, or if the court says it will or will not considers an issue that would otherwise not be properly before it. | Appellate court will review a trial court's joinder ruling de novo on an independent determination of the record, and not under either an abuse of discretion or substantial evidence standard. V.T.C.A., Civil Practice & Remedies Code § 15.003(c)(1). |
|  |  | Supreme Court would address merits of appeal from dismissal of negligence action against private, non-profit residential child care facility and its employees by parent of state ward who died while in facility's care, notwithstanding that defendants' motion to dismiss was brought under wrong statute, where parent was not prejudiced by improper designation. S.H.A. 735 ILCS 5/2-615(a), 2-619(a)(2). |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040516

Summarization Training Materials
November 2020

## Plurality Opinions and "Per Legends"

### Per Legends generally

Per legends are used to alert customers that a headnote comes from somewhere other than a lead majority opinion of the court. This applies to a lead opinion that is supported only by a plurality, as well as to a headnote that commands a majority but comes from a concurring or dissenting opinion. The per legend appears after the text of the headnote and before any citations.

Here's an example of a per legend from a five-judge panel with only a plurality for the lead opinion: "(Per Jones, J., with one judge concurring and one judge concurring in the result only.)" In this example, Judge Jones is the authoring judge, but only one other judge agrees in full with Judge Jones' opinion. That's two of five, which isn't a majority. One other judge concurs in the result but not the rationale. Two judges dissent.

### Plurality opinions (counting heads)

If no opinion commands the support of a majority, head the lead opinion, and place a per legend on each headnote. If a portion of the opinion commands a majority, place a per legend only on those headnotes from the part of the opinion that does not command a majority. In counting heads, include the author, any judge who signs the opinion, any judge who is listed as simply concurring (except in Louisiana), any judge who is not listed as joining in any other opinion and who is not listed as not participating, and any judge who states that he joins in or agrees with everything in the opinion or an identifiable portion thereof. If in doubt, make the per legend. See *Bobo v. State* for an example.

### Majority non-lead opinions (this is rare)

Make a headnote from any point determined by a majority of the court, even if it comes from an opinion that is not the lead opinion. The per legend in this situation would read something like: "(Per concurring opinion of Jones, J., for a majority of the court.") Bracketed numbers don't start over at [1] for these subsequent opinions. See *State v. Denery* for an example.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040517

# EXAMPLE

349 S.E.2d 690
**(Cite as: 256 Ga. 357, 349 S.E.2d 690)**

Supreme Court of Georgia.

**BOBO**
**v.**
**The STATE.**

**No. 43237.**

Oct. 29, 1986.

Defendant was convicted in the Superior Court, Fulton County, William W. Daniel and Frank M. Eldridge, JJ., of burglary, felony-murder, and aggravated assault, and defendant appealed. The Supreme Court, 254 Ga. 146, 327 S.E.2d 208, reversed. On remand, defendant moved for disclosure of psychiatric history and examinations of State's main witness. The Superior Court denied request, and defendant appealed. The Supreme Court, Hunt, J., held that defendant failed to show necessity required to overcome psychiatrist- patient privilege with regard to psychiatric examination and history of witness.

Judgment affirmed.

Weltner, J., filed specially concurring opinion in which Marshall, C.J., and Smith, J., joined.

Bell, J., concurred in judgment only.

Gregory, J., filed dissenting opinion.

### West Headnotes

**[1] Witnesses k209**
410k209

Requisite confidential relationship of psychiatrist and patient needed to assert psychiatrist-patient privilege as to psychiatric examinations of police officer who witnessed shooting of another police officer during course of investigation of burglary in process was established, where police officer voluntarily sought assistance from psychiatrist who examined her. (Per Hunt, J., with one Justice concurring, three Justices specially concurring, and one Justice concurring in result only.) O.C.G.A. § 24-9-21.

**[2] Witnesses k219(5)**
410k219(5)

Police officer who witnessed shooting of another officer during course of burglary investigation did not waive psychiatrist-patient privilege by allowing testimony concerning her psychiatric examinations following incident to be made public in her workers' compensation case. (Per Hunt, J., with one Justice concurring, three Justices specially concurring, and one Justice concurring in result only.) O.C.G.A. § 24-9-40.

**[3] Witnesses k219(5)**
410k219(5)

Psychiatrist-patient privilege is not waived when party who claims it is seeking to recover damages for injuries of mental and emotional nature, when third party, who is necessary or customary participant in consultation and treatment, is present, or when person claiming it has made disclosures in separate, unrelated actions. (Per Hunt, J., with one Justice concurring, three Justices specially concurring, and one Justice concurring in result only.)

**[4] Criminal Law k662.1**
110k662.1

While psychiatrist-patient privilege should be given utmost deference, when privilege of witness stands in way of defendant's right to confront witnesses against him, then, upon proper showing by defendant, balance must be tipped in favor of his constitutional rights in search for truth. (Per Hunt, J., with one Justice concurring, three Justices specially concurring, and one Justice concurring in result only.)

**[5] Witnesses k208(1)**
410k208(1)

To abrogate psychiatrist-patient privilege, defendant must make showing of necessity, that is, that evidence in question is critical to his defense and that substantially similar evidence is otherwise unavailable to him. (Per Hunt, J., with one Justice concurring, three Justices specially concurring, and one Justice concurring in result only.)

**[6] Witnesses k209**
410k209

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040518

Psychiatrist-patient privilege does not exist where witness agrees to be interviewed by expert called by State. (Per Hunt, J., with one Justice concurring, three Justices specially concurring, and one Justice concurring in result only.)

**[7] Witnesses k222**
410k222

Defendant failed to show necessity required to overcome psychiatrist-patient privilege with regard to psychiatric examination and history of eyewitness, where gravamen of doctors' testimony was that the witness suffered from posttraumatic stress syndrome which characteristically included memory loss, no evidence was presented which directly showed that witness was unable to identify or unsure of her identification of defendant as assailant, and other impeaching evidence was already available to defendant. (Per Hunt, J., with one Justice concurring, three Justices specially concurring, and one Justice concurring in result only.)

**\*\*691 \*363** Robert Altman, Axam & Altman, P.C., Atlanta, for Thomas Gerald Bobo.

Lewis R. Slaton, Dist. Atty., Atlanta, H. Allen Moye, Asst. Dist. Atty., Michael J. Bowers, Atty. Gen., for the State.

**\*357** HUNT, Justice.

Thomas Jerald Bobo was indicted for burglary, aggravated assault, **\*358** and murder arising from an incident in which the victim, Officer David Hagin, and the witness, Officer Colleen Sullivan, were shot while investigating a burglary in progress. Bobo's original conviction was set aside by this court at 254 Ga. 146, 327 S.E.2d 208 (1985).

Prior to retrial, Bobo moved for the disclosure of the psychiatric history and examinations of Officer Sullivan, the state's main witness. His defense continues to be that he was not the perpetrator. He sought to impeach her eyewitness identification testimony by showing that she suffered from "post- traumatic stress syndrome," which affected her memory and perception. The trial court ruled the communications privileged and denied the motion. We granted Bobo's application for interlocutory appeal.

OCGA § 24-9-21 provides: "There are certain admissions and communications excluded on grounds of public policy. Among these are.... (5)

Communications between psychiatrist and patient."

[1] 1. Bobo contends that no privileged relationship existed between Sullivan and the psychiatrists whom she consulted. The record shows that Sullivan voluntarily sought assistance from the psychiatrists who examined her. The requisite confidential relationship of psychiatrist and patient is thus established. *Kimble v. Kimble,* 240 Ga. 100, 101, 239 S.E.2d 676 (1977).

[2][3] 2. He next contends that Sullivan waived the privilege by allowing psychiatric testimony to be made public in her workers' compensation cases. That is not the law. OCGA § 24-9-40 provides that "the privilege [of confidentiality of medical records] shall be waived to the extent that the patient places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding. This Code section shall not apply to psychiatrists." The psychiatrist-patient privilege is not waived when a party who claims it is seeking to recover damages for injuries of a mental and emotional nature. *Wilson v. Bonner,* 166 Ga.App. 9, 16, 303 S.E.2d 134 (1983). The privilege is not waived when a third party is present, who is a necessary or customary participant in the consultation and treatment. *Sims v. State,* 251 Ga. 877(5), 311 S.E.2d 161 (1984). Nor is the privilege waived when the person claiming it has made disclosures in separate, unrelated actions. See *Associated Grocers Co-op v. Trust Co.,* 158 Ga.App. 115(3), 279 S.E.2d 248 (1981), for the proposition that disclosures that are not made pursuant to litigation do not defeat the attorney-client privilege.

3. Bobo contends that the statutory privilege must yield to his right of confrontation, which he asserts is superior to the statutory privilege and the public policy that it enunciates. [FN1] He relies on **\*359** *United* **\*\*692** *States v. Lindstrom,* 698 F.2d 1154 (11th Cir.1983), which was a federal prosecution in the State of Florida. There the trial court had limited cross- examination of the key government witness about her prior psychiatric treatment, and had denied the defendants access to the witness's psychiatric records. The Court of Appeals ruled that the psychiatric history and records provided critical impeachment evidence.

FN1. *Developments in the Law--Privileged Communications,* 98 Harvard Law Review 1450, 1547 (1985). See generally

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040519

1545-1552. Four privacy interests are discussed as rationales for a physician-patient privilege: (1) control of private information that is disseminated about oneself; (2) the reasonable expectation of privacy in confidential communications; (3) freedom from government intrusion into important personal decisions; and (4) the inviolability of the individual's body, which includes information conveyed during medical treatment. See also *In re B,* 482 Pa. 471, 484, 394 A.2d 419, 425 (1978), and *In re Lifshutz,* 2 Cal.3d 415, 431-2, 85 Cal.Rptr. 829, 467 P.2d 557, 567 (1983).

The state argues strenuously that *United States v. Lindstrom,* supra, is distinguishable because no statutory privilege was involved in that federal prosecution and indeed that court found no such privilege to exist. We note here, however, that the court in making its decision relied upon Fed.R.Evid. § 501: "The privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience [except in civil actions governed by state law]." This so called "rule of reason" is explored fully in *In re Zuniga,* 714 F.2d 632 (6th Cir.1983), where the Sixth Circuit recognized the psychiatrist-patient privilege; then, balanced the interests protected by shielding the evidence with those advanced by disclosure and decided the privilege must yield.

[4] Similarly, in *Lindstrom,* that court recognized all of the policy reasons for the privilege, but held such a "privilege" could not prevail where the privileged information was at the heart of the defendant's case. While the privilege should be given the utmost deference, when the privilege of a witness stands in the way of the defendant's right to confront the witnesses against him, then, upon a proper showing by the defendant, the balance must be tipped in favor of his constitutional rights and the search for the truth. See *Hines v. State,* 249 Ga. 257(2), 290 S.E.2d 911 (1982). Compare *Davis v. Alaska,* 415 U.S. 308, 319, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974) (right of confrontation is paramount to a state policy protecting juvenile offenders); *Greene v. Wainwright,* 634 F.2d 272 (5th Cir.1981) (right of confrontation requires that defendant be allowed to cross- examine the prosecuting police officer about his mental condition and the bizarre criminal actions he was

involved in at the time of an alleged drug sale); *United States v. Society of Independent Gasoline Marketers of America,* 624 F.2d 461 (4th Cir.1979) (error to deny access to hospital records revealing delusional and hallucinatory state of chief witness); *In re Robert *360 H.,* 199 Conn. 693, 509 A.2d 475 (1986) (where defendant makes a proper showing, rape crisis counselor's testimony is admissible) with *Hanlon v. State,* 162 Ga.App. 46(3), 290 S.E.2d 285 (1982), where the evidence was not relevant. [FN2]

> FN2. Compare *People v. Dist. Ct.* 719 P.2d 722 (Colo Sp.Ct., 1986).

Thus, we must also conclude that *in a proper case* a witness' statutory privilege must give way where countervailing interests in the truth-seeking process demand such a result. [FN3]

> FN3. As McCormick has said: "[The] solution is to recognize ... that the privilege is not an absolute, but a qualified one, which must yield if the trial judge finds that the evidence of the communication is required in the due administration of justice." McCormick on Evidence 2d ed. at p. 174.

[5] 4. In order to abrogate the psychiatrist-patient privilege, the defendant must make a showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is otherwise unavailable to him.

The privilege established by OCGA § 24-9-21(5) prohibits the defendant from engaging in a "fishing expedition" regarding a witness's consultations with a psychiatrist. Therefore, a defendant may not explore such evidence unless he makes allegations **693 sufficient to establish a prima facie need for its discovery by a proper motion for a pretrial hearing. At the ensuing inquiry, the psychiatrist would be available to the defendant for discovery of his findings and any statements made by the patient-witness to him material to the issues on trial. The trial court must, consistent with the demands of due process, then delineate those communications available to the defense for use at trial. Conversely, any communications not central to the defense must remain privileged and inadmissible at trial. *State v. Pierson,* 201 Conn. 211, 514 A.2d 724 (Conn.Sup.Ct.1986). [FN4] In the case before us, such a special pretrial hearing was held in which the psychiatrists testified as to

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

what their testimony would be if called as witnesses at the trial.

> FN4. Under the Connecticut procedure, where the patient-witness refuses to waive the privilege as to matters ruled to be central to the defense, then that witness, whom the defendant seeks to impeach, may not testify against him at trial. We need not decide whether such a rule is necessary at this time.

One, Dr. Villaneuva, had treated the witness during her surgical recuperation from the shooting and had diagnosed her as suffering from traumatic depressive reaction. He testified that the dominant characteristic of her mental state at that time was depression and that difficulty in concentrating was also an aspect of this reaction, which could be ongoing.

The other two testifying psychiatrists had treated the witness in relation to her claims for workers' compensation and pension benefits resulting from her disability to work as a police officer after undergoing *361 this stressful experience. Dr. Berry first saw the witness just after the first trial in March, 1982, when she was referred to him by the police department chaplain, and Dr. Rolland examined her in July, 1983. Both psychiatrists testified that their conversations with her did not focus on the details of her ability to identify the perpetrator, but on the experience itself as the stressful event which resulted in her suffering from post-traumatic stress syndrome, the predominating feature of which is extreme anxiety, which in turn prevented her from returning to police work.

Other characteristics of this syndrome include memory loss and constant reliving of the traumatic experience. The defendant urges therefore that her psychiatric condition greatly affects her credibility as the only eyewitness and her resulting identification of the defendant as the perpetrator. Thus, he contends, his constitutional right to explore her mental condition is *central* to his defense that she has mistakenly identified him.

The gravamen of the doctors' testimony is that the witness suffers from post- traumatic stress syndrome which characteristically includes memory loss. No evidence was presented by them which directly shows that she is unable to identify or unsure of her identification of the defendant as

the assailant.

[6] On the other hand, other impeaching evidence is already available to the defendant. At the first trial a hypnotist, who was also a psychiatrist, at the request of the state, had attempted to hypnotize Officer Sullivan in order to enhance her ability to remember the perpetrator. The hypnotist testified that he was unsuccessful in this attempt in part because of her emotional state which he attributed to stress from the trauma of the incident. Because there is no psychiatrist-patient privilege where a witness agrees to be interviewed by an expert called by the state, *Emmett v. Ricketts,* 397 F.Supp. 1025, 1038 (N.D.Ga.1975), the information now sought is and was already available to the defense. [FN5]

> FN5. Since this evidence of the fact that Officer Sullivan was then suffering from post-traumatic stress syndrome is available, the defendant may also offer expert testimony as to the characteristics of that condition.

[7] Likewise, at the first trial, Officer Sullivan was questioned about her statements to other state witnesses concerning her official reports and her lineup identification. Additionally, the trial court admitted **694 the testimony of another psychiatrist who was hired by the police to help Sullivan recall the description of the perpetrator through the use of sodium pentothal. He and the hypnotist were examined concerning what she had disclosed to them. See 254 Ga. at 148(3)(a), 327 S.E.2d 208.

We thus hold that the defendant has failed to show the necessity for the admission of this privileged information and the trial court *362 properly refused to grant his request.

*Judgment affirmed.*

All the Justices concur, except MARSHALL, C.J., and SMITH and WELTNER, JJ., who concur specially, BELL, J., who concurs in the judgment only and GREGORY, J., who dissents.

WELTNER, Justice, concurring specially.

The majority opinion removes the absolute protection of privileges, which our law has recognized for many decades, and casts them upon the doubtful scales of another "balancing" test. By

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040521

thus weakening the patient-psychiatrist privilege, we also diminish other established privileges, notably as to communications between husband and wife, between attorney and client, and among grand jurors.

All of this is done in the name of "confrontation." Yet, it need not be.   "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985).

I would not inflate the concept of "confrontation" to admit of an inquisitorial scrutiny into private concerns that long have been shielded by the statutory law of our state.   See OCGA § 24-9-21. Accord, *Tiller v. State,* 159 Ga.App. 557(1), 284 S.E.2d 63 (1981).

I am authorized to state that Chief Justice Marshall and Justice Smith join in this special concurrence.

GREGORY, Justice, dissenting.

In my view the defendant will be denied the right of confrontation under the majority opinion.   The witness will be allowed to give testimony identifying the defendant as the perpetrator of the crime, but the defendant will be denied what might prove to be critical cross-examination of the witness on that subject because the area he wishes to explore is shrouded in secrecy by the psychiatrist-patient privilege.   A defendant must be afforded the right to confront the witnesses against him.   At the same time there is a very great need in our society for protection of communications between psychiatrists and patients.   There is a way to preserve both and I would follow that way here.

Where a witness testifies on direct examination about a given subject, but on cross-examination refuses to be further examined on that same subject, claiming his constitutional privilege against self-incrimination, the proper remedy is for the court to strike that witness' direct testimony on the given subject. *Smith v. State,* 225 Ga. 328(7), 168 S.E.2d 587 (1969);   *Emmett v. State,* 232 Ga. 110(1), 205 S.E.2d 231 (1974);   *Rasnake v. State,* 164 Ga.App. 765(2), 298 S.E.2d 42 (1982);   *U.S. v. Cardillo,* 316 F.2d 606, 610 (C.A. 2 **363** 1963). While this case does not involve a constitutional

privilege, it nonetheless involves a privilege which I consider essential to the proper rendering of psychiatric treatment.   Thus, I would follow the rule used in cases of the privilege against self-incrimination.   The witness will be protected in that the privilege will prevent exposure of the confidential information.   At the same time the defendant on trial will be protected in his right to be confronted by the witnesses against him because direct testimony which cannot be cross-examined due to the privilege will be eliminated.

I recognize the cases cited above would not follow the rule for eliminating direct testimony where the matter as to which the privilege is claimed is collateral only.   But here the matter goes to the heart of the **695** case and bears directly on the identification testimony given by the witness upon which the State's case must stand or fall.

It is also necessary to provide further limitations on the application of the rule to the psychiatrist-patient privilege.   If a witness claims the right against self-incrimination there is a way around the privilege by granting immunity from prosecution to the witness.   That safety valve is missing in psychiatrist-patient privilege cases. Therefore, the trial judge should conduct an in-camera investigation into the privileged communications to allow disclosure of all relevant information not specifically objected to by the witness.   Beyond that, I would afford the privilege but strike the direct testimony.

END OF DOCUMENT

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040522

## TOPIC SELECTION

### Key Number System Topic Selection

A caseheader must put a preliminary Key Number System topic on every headnote, so it can be routed to the appropriate classifier upon completion of the case. It is important to be as accurate as possible, to expedite classification and to assure Westlaw currency and accuracy. The "Key Topic Selection" tool found in the "Help" menu of IOP will assist that effort.

When you click on the tool you will get a long, scrollable list of keywords linked to suggested Key Number System topics. Above that is a search box, in which you can quickly type a key word or phrase related to the case or headnote at issue. If the search term is in the list, it will automatically scroll up, and hitting "Enter" will bring up the suggested topic or topics.

If the search term is not in the list, it may be because the classification is too obvious (e.g., most workers' comp determinations go to the topic Workers' Compensation), or because the relevant classification scheme is too complicated to try to describe in this limited format. However, it could mean the search term was merely omitted, and might very well be worth adding.  If you suspect that is the case, let the lead classifier know so it can be added when the list is updated.

Examples:

| | |
|---|---|
| **Term – by subject matter:** | **Classification Topic:** |
| letters of credit | Banks and Banking |
| **Term - by statute name:** | |
| Magnuson-Moss Act | Consumer Protection, Arbitration (arbitration issues), or Sales (warranty issues) |
| OSHA | Labor and Employment |
| **Term - by relevant legal term:** | |
| summary judgment (federal) | Judgment (state), or Federal Civil Procedure |
| harmless error | Appeal and Error (state civil), Federal Courts (federal civil),  or Criminal Law (criminal prosecutions) |
| **Term - by seminal case:** | |
| *Miranda* | Criminal Law |
| *McDonnell-Douglas* | Civil Rights |

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040523

## KEYCITE INDIRECT—In General

Indirect history deals with the treatment of a case, or a point therein, in a different case. Negative indirect history, such as when the case being read by the editor overrules or distinguishes a prior case cited by the case being read, needs to be spotted and marked by the editor while headnoting. This responsibility to mark negative indirect history is important for several reasons:

1. If a negative treatment is missed, KeyCite automatically treats the cited case as positive history and programmatically classifies it as examined, discussed, cited, etc.

2. KeyCite generates a large number of customer calls, indicating that our customers rely on KeyCite to give them an accurate report of the status of a particular case.

3. The fact that our references are produced by editors who analyze the entire case gives us a distinct advantage over our main competitor in completeness and accuracy. Also, it gives us a distinct advantage over low-cost and no-cost competitors, which, for the most part, determine indirect case history programatically.

Because of the importance of KeyCite to our customers, editors are urged to freely seek the assistance of a revisor if they are unsure of a treatment.

## KEYCITE INDIRECT—Direct vs. Indirect History

Direct history is the history, or chain, of a particular case. It includes such things as reversals or affirmances on appeal and opinions on remand. The editor is responsible for deciding which, if any, of the direct history events should be included in the synopsis and for verifying the accuracy of the direct history already published on Westlaw.

Indirect history occurs when the case you are headnoting says something negative about a different case that is not in the direct history chain.

Do not mistake direct history for indirect history. No KeyCite reference is made if a court notes that another decision has been reversed or vacated on appeal. No reference would be made for the following example:

Appellant relies primarily on *County of Santa Clara v. Astra USA, Inc.* (9th Cir.2009) 588 F.3d 1237, but that case was reversed by the United States Supreme Court in *Astra USA, Inc. v. Santa Clara County, California* (2011) 131 S.Ct. 1342.

Also, do not be misled simply because the cases in the direct history chain have completely dissimilar titles. Here, the editor mistakenly gave *Anixter* a "recognizing abrogation of" reference in a direct-history situation:

*See Anixter v. Home–Stake Prod. Co.,* 939 F.2d 1420, 1434 (10th Cir.1991), *vacated on other grounds by Dennier v. Trippet,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040524

Sometimes in a parenthetical after a cite, a court will mention that the cited decision has been modified or limited and then will cite the case that is doing the modifying or limiting. If the modifying or limiting case is the same as the modified or limited case, that is direct history.  Example:

*United States v. Fernandez-Angulo*, 863 F.2d 1449 (9th Cir.1988), modified on other grounds, 897 F.2d 1514 (9th Cir.1990) (en banc).

Here it is not possible to be certain from the copy whether this is direct or indirect history, but a very quick look on Westlaw at 897 F.2d 1514 shows that it is the same case, and that no KeyCite should be made.

A court may mischaracterize what it or another court has done. For instance, a court may state that another court "overruled" a case when actually it reversed the case. That is direct history.

Conversely, a court may say that a case or a line of cases was "reversed," when actually the cases were abrogated.  Don't take the bait and dismiss the reference because it is cloaked in the language of direct history.

## KEYCITE INDIRECT—Making references on JWB

The editorial manual contains instructions for making KeyCites on JWB.  The editor right-clicks on the title of the case that is being affected, selects "Indirect History," and chooses a history reference from the pop-up list.

If the case is not linked in the opinion, such that a right-click does not allow an editor to select "Indirect History," send an e-mail to the "Cases-KeyCite Errors" e-mail group, giving them the serial number of the case you're working on, the citation that needs indirect history, and the indirect history phrase you need applied.

## KEYCITE INDIRECT—Terms at a Glance

The following list is a simple summary of the 31 KeyCite indirect history terms editors use, in alphabetical order. The editorial manual has more robust definitions and should be consulted frequently when starting. These quick definitions, however, can provide a useful starting point when working on KeyCite.

ABROGATING—Notwithstanding that the court did not use a form of the word "overrule," it is apparent, upon analysis, that the result of the court's ruling is that the rule of the cited case is no longer good law.

CALLED INTO DOUBT BY CONSTITUTIONAL AMENDMENT, STATUTE, RULE OR REGULATION—Enactment of a constitutional amendment, statute, rule, or regulation may affect the continuing validity of some proposition in the cited case.

CALLING INTO DOUBT—The continuing viability of the cited authority is questionable, or sufficient negativity or possibility of negativity is directed to the cited case that we would want to alert a researcher to it, but no other reference fits.

DECLINING TO EXTEND—The court declines to extend a rule, holding, rationale or comment of the cited case.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040525

**DECLINING TO FOLLOW**—The court does not follow the rule or holding of the cited case, but without providing reasons that would support a more particular treatment.

**DISAGREEING WITH**—The court does not follow the rule, result or reasoning of the cited case, and is critical of the cited case. That the court, faced with a choice of approaches, picks one, may be taken as implicit criticism of the losing approach.

**DISAPPROVING**—The court specifically states it disapproves of the cited case, or disapproves of the case to the extent of any inconsistency. The court must use the word "disapprove."

**DISTINGUISHING**—The court reaches a different result than the cited case on a matter, because there is something different about the two cases.

**FOLLOWING WITH RESERVATIONS**—The court is critical of the holding, reasoning or rule of the cited case, but applies it, or reaches the same result, because of stare decisis or because the cited case is binding authority.

**LIMITING**—The court restricts the rule of the cited case, usually to its facts. This treatment should be used almost exclusively when the court uses the word "limit," or an equivalent like "restrict."

**MODIFYING**—The court modifies the rule, usually a test, of the cited case, while continuing to apply the test.

**NOT FOLLOWING AS DICTA**—The court does not follow a proposition of the cited case, for the single reason that it was not necessary to the disposition.

**NOT FOLLOWING ON STATE LAW GROUNDS**—A state court (or federal court in its shoes) does not follow the rule in the cited federal case because the federal court based its ruling on federal law, while the state court (or federal court in its shoes) is basing its ruling on state law.

**OVERRULING**—The court specifically states it overrules the cited case, or overrules the case to the extent of any inconsistency. The court must use the word "overrule."

**RECEDING FROM**—The court specifically states that it is receding or retreating from the rule of the cited case. The court must use a form of either "recede" or "retreat."

**RECOGNIZING ABROGATION OF**—It is apparent, usually upon analysis, that the rule of the cited case is no longer good law due to an intervening judicial decision, but the citing court does not supply us with the term overruled.

**RECOGNIZING DISAGREEMENT WITH**—The court notes that the cited case has been criticized on result, rationale, or any other aspect, by other courts, including

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040526

concurring or dissenting opinions of those courts, or by other authorities such as law reviews or commentaries.

RECOGNIZING DISAPPROVAL OF—The court notes, often by parenthetical to a cited case, that the decision has been disapproved.  The court must use some form of the word "disapprove."

RECOGNIZING IMPLIED OVERRULING OF—The court notes that the rule of the cited case has been impliedly or effectively overruled by an intervening case. This treatment should be used only when the court uses some form of the word "overrule" and the overruling is characterized as implied.

RECOGNIZING LIMITATION OF—The court notes that the rule of the cited case has been limited by intervening caselaw.

RECOGNIZING MODIFICATION OF—The court notes that the rule of the cited case has been modified by intervening caselaw.

RECOGNIZING OVERRULING OF—The court notes, often by parenthetical to a cited case, that the decision has been overruled.  The court must use some form of the word "overrule."

REJECTING—The court specifically states that it "rejects" the cited case.

SUPERSEDED BY CONSTITUTIONAL AMENDMENT, STATUTE, RULE OR REGULATION—It is apparent, usually upon analysis, that a constitutional amendment, statute, rule or regulation has invalidated a proposition in the cited case (which was decided before the enactment).

## KEYCITE INDIRECT—Whether Negative Treatment is Warranted

Make KeyCites liberally without being indiscriminate.  In a close case, treatment is supportable if you think a researcher interested in the cited case would want to know about it (note that "calling into doubt" can convey a mere possibility of negativity).

Negative treatment only means that there is at least one proposition in the cited case that is treated negatively or recognized as having been treated negatively.  That the cited case is treated positively in all other respects is no reason to forego negative treatment.

## KEYCITE INDIRECT—Multiple Terms

Once a KeyCite reference is made, a flag appears with the case on Westlaw.  A red flag means that some aspect of the case is no longer good law.  A yellow flag means that it has been negatively affected short of that.

It is important to use the strongest reference if more than one reference applies to a single prior case.  You will not be allowed to make multiple, different references to the same case.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040527

Summarization Training Materials
November 2020

In choosing between competing references, generally choose the reference that is the strongest without overstating the negative treatment.  Use the "Hierarchy of Terms," which appears below and in the manual, to determine which treatment is the strongest.

A court may characterize what it is doing in more than one way.  For example, a court might say that it "disagrees with" a case's holding, that "other courts have also declined to follow" the case, and that "in any event, the case is distinguishable." "Disagreeing with," "declining to follow," and "distinguishing" are all initial possibilities, but "disagreeing with" is the correct choice, because it is highest on the hierarchy of terms.

Use the following hierarchy in deciding between competing references.

## CASE-KILLING REFERENCES

- Overruling
- Abrogating
- Receding from
- Disapproving (when citing court has binding precedential authority over cited court)
- Superseded by constitutional amendment, statute, rule or regulation
- Recognizing overruling of, abrogation of, disapproval of (when citing court has binding precedential authority over cited court), implied overruling of

## STRONG NEGATIVE

- Rejecting
- Disagreeing with
- Declining to follow
- Modifying
- Limiting

## WEAK NEGATIVE

- Following with reservations
- Not following as dicta
- Not following on state law grounds
- Declining to extend
- Calling into doubt
- Called into doubt by constitutional amendment, statute, rule or regulation
- Distinguishing
- Recognizing disagreement with, disapproval of (except when citing court has binding precedential authority over cited court), limitation of, modification of

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040528

Summarization Training Materials
November 2020

The KeyCite at a Glance chart indicates which of the treatments always generate a red flag, which treatments may generate either a red flag or a yellow flag depending on the circumstances, and which treatments always generate a yellow flag. The rules for this are arcane and you do not have to know them in detail, so long as you follow the hierarchy of terms above. However, it is a good practice to have a general idea which events always or sometimes generate a red flag, since more time and effort may be appropriate when there is potentially a red-flag event.

## KEYCITE INDIRECT—Which Decisions Receive Treatment

Any case that we have in house can receive KeyCite treatment. Citations to administrative decisions, such as NLRB rulings, can also be treated. Sometimes the court provides only a Lexis or other non-West citation, or only a docket number, suggesting the opinion is not published. This is no reason to decline to make the treatment. E-mail the Cases-KeyCite Errors e-mail group as noted above. However, we do not treat non-U.S. law.

## KEYCITE INDIRECT—Choosing the Right Term

Some treatments are obvious, such as when a court states that a case "is distinguishable" or is "hereby overruled." Implicit criticism is more difficult. Careful attention to the manual is important, since some treatments, such as "overruling," can be used only if the court uses some form of that particular word, and other treatments, such as "not following on state law grounds," can be used only in well-defined, limited circumstances.

Pay attention to court levels. An intermediate appellate court cannot overrule, abrogate, decline to follow, disagree with, modify, or limit a higher court. It may decline to extend, not follow as dicta, call into doubt, or recognize that a third case had negative treatment for a decision of the higher court.

A panel of an appellate court cannot abrogate another panel's opinion (that must be done en banc). Generally, "disagreeing with" or "declining to follow" should be used in this situation. Some courts of appeal allow a mere panel to overrule or abrogate a prior panel if the panel opinion has been circulated among all members of the court without objection. Do not assume this has happened unless it is expressly noted in the opinion (usually in an early footnote).

Jurisdiction is also important. A court cannot overrule, abrogate, recede from, or follow with reservations a court outside its jurisdiction. See "Jurisdictional Considerations" under the various treatments in the manual for details.

A court may say it is doing something that it does not have the power to do. For example, a lower court may say that it is "declining to follow" a decision by a superior court in light of some intervening precedent. What it is really doing is recognizing that the case has been abrogated by the intervening precedent. See the "KeyCite at a Glance" table for information on which terms may be used at different court levels.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040529

Generally, our terms trump the court's terms.  We must make a reference that reflects what the court is really doing according to our standards, and this may differ from what it says it is doing.  For example, we would not make a reference if the court says a case is distinguishable but follows it anyway.  If a court says it is overruling a case but does not have the power to do that, we cannot use "overruling."

Still, the court's language about what it is doing is an important consideration if we are deciding between two or more references.

## KEYCITE INDIRECT—Including KeyCite in Headnotes and Synopses

When a decision overrules, abrogates, or recedes from a prior case, or disapproves of one of its prior cases or a case from an inferior court, that information must be included in the most relevant headnote and synopsis holding.  The manual provides precise guidelines for styling this information, and should be followed carefully.

This is an example of a headnote with a KeyCite reference:

Government may not, under the First Amendment, suppress political speech on the basis of the speaker's corporate identity; overruling _Austin v. Michigan Chamber of Commerce,_ 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652. U.S.C.A. Const.Amend. 1.

This is an example of a synopsis holding with a KeyCite reference:

[1] government may not, under the First Amendment, suppress political speech on the basis of the speaker's corporate identity, overruling _Austin v. Michigan Chamber of Commerce,_ 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652;

## KEYCITE INDIRECT—Individual Treatments

Much of the following language about individual treatments has been taken from the Editorial Manual.  However, the various treatments have been rearranged to match the hierarchy of terms, instead of following the manual in listing them alphabetically.  Some comments and examples have been added.  Note that the manual contains much more extensive information about each of these treatments, and it should be consulted frequently. Use control-f to search the manual.

Note that the manual includes "Terms at a Glance," which has links to more extensive coverage of the individual treatments, including "Elements/Jurisdictional Considerations" and "Traps for the Unwary."  If you are unsure of which treatment to use, it might be worth your while to start with "Terms at a Glance."

### CASE-KILLING REFERENCES

#### _Overruling_

This term is to be used only when the court uses it. It may be used even if the court appends the apparently qualifying language "to the extent of any inconsistency."  If the effect of the court's decision is the same as an overruling but it does not use a form of the word "overrule," use "abrogating."

_Thomson Reuters - Proprietary Information_

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040530

This is one of the easiest KeyCites to ascertain, because the court has to use the exact term. Just make sure the citing court is capable of overruling the cited court, as explained more fully in the next section.

### Abrogating

The result of the citing court's ruling is that the rule of the cited case is no longer good law, but the court does not expressly use the term "overruling." Courts almost never say they are "abrogating" a case. This treatment is generated by alert editorial analysis. Thus, this treatment is very important, but it may be hard to catch.

Elements:

1. The citing court is one capable of overruling the cited court,
2. A majority of the court agree with the treatment, and
3. The result of the citing court's ruling is that the rule of the cited case is no longer good law.

Words like "disavow," "repudiate," "wrongly decided," "we have previously done X, we shall hereafter do Y," or "case A should no longer be followed" can indicate the cited case is no longer good law. Make sure the citing case is not doing something less, like distinguishing, modifying, or limiting the cited case; essentially, you must be able to say the same result could not now be reached.

The citing court must be capable of overruling the cited court. Thus, the term cannot be applied when the cited court is higher than, or outside the judicial system of, the citing court. Also, a mere panel of an appellate court is generally incapable of overruling a prior panel opinion of the same court. Generally, only the en banc court can overrule a panel opinion.

If a higher court is presented with a choice of two or more lines of lower court authority, and chooses one, the others are effectively abrogated, even if the high court does no more than set up the dichotomy at the beginning of its discussion, and never again revisits or uses negative language toward cases on the losing side. These cases are now "bad law." This is the source of a very common error. Here is an example, from a U.S. Supreme Court case:

We granted certiorari, 549 U.S. 1204, 127 S.Ct. 1251, 167 L.Ed.2d 72 (2007), to resolve a split among the Circuits as to whether § 921(a)(20)'s exception for "civil rights restored" should be interpreted to include civil rights retained at all times. Compare 453 F.3d, at 809 (case below) ("civil rights restored" does not include civil rights never revoked), and McGrath v. United States, 60 F.3d 1005 (C.A.2 1995) (same), with United States v. Indelicato, 97 F.3d 627, 631 (C.A.1 1996) ("civil rights restored" includes civil rights never lost).

Thomson Reuters - Proprietary Information

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040531

The Supreme Court never says that it is abrogating *Indelicato*, but it reaches a result that is the opposite of the result in *Indelicato,* and, thus, an "abrogating" reference must be made.

### Receding From

This term is regarded as case-killing, and should be used only when the court uses a form of either "recede" or "retreat."  It is rarely used.

### Disapproving

This is a potentially case-killing treatment, and should only be used when the court uses some form of the term "disapprove."

This term is commonly used as a case-killing reference in several jurisdictions, including California and Florida. It is case-killing in any jurisdiction when used by a high court with respect to its own decisions or decisions of a lower court within its system. When used by an intermediate appellate court, it should be regarded as case-killing only if the court has precedential authority over the cited court. Ask a revisor for assistance if it is unclear if the court is using the term as a case-killing reference.

This reference is quite rare.  You will want to look at the manual carefully if you are considering this treatment.

### Superseded by Constitutional Amendment, Statute, Rule or Regulation

**Definition of Term/Elements:**

1. The citing case notes that a constitutional amendment (enacted by legislature, possibly a proposition), statute (promulgated by a legislature or by referendum), rule (promulgated by a court) or regulation (promulgated by an agency),
2. Has invalidated a proposition in,
3. The cited case (which was decided before the enactment).

There are no jurisdictional considerations, since the citing case is only recognizing that something else acted negatively on the cited case.

This treatment also applies where the citing court recognizes that another case recognized a superseding event.  This is because we have no reference for "recognizing superseded by constitutional amendment," etc.  This is in contrast to the many references for which we have a corresponding "recognizing" reference."

"Superseded by statute" is one of the most frequently missed KeyCites.  This may be because editors searching for KeyCites focus so much on cases that affect other cases, rather than statutes that affect cases.  Also, courts often do not use the word "superseded."  Here is an example of a "superseded by statute" reference that does not use the word "superseded":

In evident recognition that *Martin* hindered the finality of Title VII dispositions, Congress created a way by which litigants can bind certain nonparties who would otherwise stay on the sidelines. See 42 U.S.C. § 2000e−2(n)(1).

*Thomson Reuters - Proprietary Information*

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

TR-0040532

The following was noted by a customer.  The editor should have made "superseded by statute" for both *Kaiser* and *Zorro*.

The [statutory] section as amended was obviously designed to restrict the trial court's power to relieve from default as interpreted in *Kaiser* and followed in *Zorro* by limiting section 473 relief to a period of 30 days from service of a "deemed admitted" notice.

A discussion of a development of law in an area, through a succession of caselaw and statutory responses, should give the editor pause to consider whether a statute undid a case. Pay particular attention if a court notes that the legislature responded to the cited case by amending or enacting a statute (or that an agency responded by regulation).

### *Recognizing Overruling of*

The citing case notes that the rule of the cited case has been expressly overruled by an intervening case.  The citing case must use some form of the word "overrule."  It is of no consequence that the overruling is said to be partial or on other grounds.

Most such treatments are appended by parentheticals to cites, often in string cites, which can escape notice.

A court may say a statute, rule, regulation, or constitutional provision has "overruled" a decision.  However, this should be treated as "superseded by statute, etc." Only courts "overrule."

### *Recognizing Abrogation of*

It is apparent that the rule of the cited case is no longer good law due to an intervening decision, but the citing court does not supply us with the term "overruled."

Elements/Jurisdictional Considerations:

1. The citing case reveals information allowing you to conclude that
2. The cited case is no longer good law,
3. By virtue of an intervening decision,
4. By a court that is jurisdictionally capable of abrogating the cited case (regardless of whether the cited case had actually been addressed by the intervening decision).

Here is an example of "recognizing abrogation of":

To the extent that *People v. Ybarra,* 652 P.2d 182 (Colo.App.1982), holds to the contrary, it has no vitality after that *Mascarenas.*

### *Recognizing Disapproval of*

This is a case-killing reference when the citing court has binding precedential authority over the cited course, but it is a weak reference when that is not the case.  That is why it appears on this list twice.  This reference occurs rarely; you can look this up each time you come across it.

This term should be used only when some form of the word "disapprove" is associated with the cited case.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040533

### Recognizing Implied Overruling of

The court notes that the rule of the cited case has been impliedly or effectively overruled by an intervening case. This term should be used only when the court uses some form of the word "overrule" and the overruling is characterized as implied.

Note that although we have a reference for "recognizing implied overruling of," we do not have a reference for "impliedly overruling." If a court impliedly overrules a case, we call that "abrogating."

## STRONG NEGATIVE TREATMENTS

### Rejecting

This term should be used only when the citing court says it is "rejecting" some aspect of the cited case. It is rarely used.

### Disagreeing With

The citing case does not follow the rule, result, or reasoning of the cited case, and, by use of some form of the word "disagree" or otherwise, conveys its opinion that the cited case was wrong in that regard.

Elements/Jurisdictional Considerations:

1. The citing case reaches a different result than the cited case, or does not follow its rule or reasoning,
2. There is an indication that the citing case thinks the cited case is wrong or at least suboptimal, conveyed by literal use of the word "disagree," direct criticism, or adoption of a contrary position, and
3. The cited court must be one the citing court is not bound to follow. (A court cannot "disagree with" its own higher court.)

When a court notes a split of authority or approaches, takes a side, and criticizes the holding or reasoning of the rejected line of cases, use this treatment (of course, if the cited court is the same or an inferior court, this is likely an "abrogation"). If the court provides no criticism of the substance of the rejected line of cases, or refuses to follow the rejected case or cases for a nonsubstantive reason, then "declining to follow" would be the appropriate treatment. However, when there is no split of authority noted, adopting a position contrary to the cited case is sufficient implicit criticism to warrant use of "disagreeing with."

The court does not have to use a form of the word "disagree."

### Declining to Follow

The citing case simply does not follow the rule of the cited case. If there is additional criticism of the cited case, "disagreeing with" would be appropriate. These two treatments are very close, but there is a distinct difference. Disagreement indicates that "we think the case is wrong," while "declining to follow" indicates that "we will not express an opinion as to whether the case is right or wrong, but we will not follow it."

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040534

Thus, for the following example, "disagreeing with" would be better than "declining to follow."

In our view, the majority ruling in *Robinson* nullifies a plainly worded statute and is thus legally incorrect.  We will not follow its reasoning.

"Declining to follow" would be appropriate for any cited New Jersey cases in the following instance.  A negative event has occurred, but there is no criticism of the cases.  Since AS 25.24.140(b) independently mentions court authority to order sales, we do not need to follow the New Jersey approach and extrapolate such authority from AS 25.24.140(a).

Note that the manual section "Declining to Follow" should be referred to when a court precedes a case cite with a term such as "contra," "but see," "but cf.," "compare," or "cf."

### *Modifying*

The court modifies the rule, usually a test, of the cited case, while continuing to apply the test.

Elements:

1. The citing court changes or adds elements to some test, while
2. Continuing to apply the test.

Example:

Although the rule in <u>*Williams*</u> *continues to be generally applicable to claims of negligent infliction of emotional distress, the zone of physical danger requirement imposes an unnecessary limitation upon, and is not to be applied indiscriminately in all cases to, claims of emotional distress brought against a defendant who has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, and whose negligence causes serious emotional distress to the plaintiff. We, therefore, adopt a rule—itself a limited one—that supplements the zone of physical danger test.*

### *Limiting*

The court restricts the rule of the cited case. Because this term is such a precise and well-defined judicial tool, it should be used principally when the court uses the term "limit," or an equivalent like "restrict."

The citing and cited court are necessarily in the same system, and the citing court must be equal to or higher than the cited court.  In other words, a court cannot limit a case from a higher court or from a court outside its system.  If the jurisdiction conditions are not present, "declining to extend" may be appropriate instead.

### WEAK NEGATIVE REFERENCES

### *Following with Reservations*

The citing case is critical of the holding, reasoning, or rule of binding caselaw, but applies it, or reaches the same result, because it is binding.  Generally, this treatment is

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040535

used when a court reluctantly reaches its decision because of stare decisis, or when an intermediate appellate court follows its high court, but with reservations or outright criticism.

Elements:

1. The citing case adopts the rule of, or reaches the same result as, the cited case, but
2. The citing case criticizes the rule or reasoning of the cited case, or notes criticism without refuting it.

Because this treatment entails the notion that the citing court is bound to follow the cited court, the cited court must be the same or a higher court in the system.

Example:

> Although we are bound to follow *Gingles, we disagree with that result.*

### Not Following as Dicta

The citing case does not follow the proposition of the cited case because it was not necessary to the disposition in the cited case.

Elements:

1. The proposition of the cited case is one that was not necessary to that court's disposition, or the citing court literally describes the proposition as "dicta,"
2. The citing case does not follow the proposition from cited case, and
3. The citing case does not follow that proposition because the proposition was not necessary to the disposition, rather than for some other reason, like the citing court disagrees with the dicta (which would warrant "disagreeing with" if jurisdictional considerations for that treatment are satisfied).

This is a very weak treatment. Often the citing case will have additional criticism of the cited case, warranting stronger treatment. Sometimes the court will approve of the case even though it is dicta, warranting no treatment. This is an example from the United States District Court for the District of Columbia:

As dicta from another circuit, *Poteet*'s discussion of the first-to-file rule is clearly not binding here. However, even if it was not dicta, the decision primarily rested on the Sixth Circuit's opinion in *Walburn v. Lockheed Martin Corp.,* 431 F.3d 966 (2005)—which is based on a faulty interpretation of *LaCorte,* 149 F.3d 227—and should thus be disregarded, as explained below.

The appropriate reference for Poteet is "disagreeing with." In addition, a "disagreeing with" reference should be made for Walburn.

### Not Following on State Law Grounds

The citing court (a state court or federal court in its shoes) does not follow the rule in the cited federal case because the federal court based its ruling on federal law, while

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040536

the state court (or federal court in its shoes) is basing its ruling on state law. The federal result need not be contrary for this treatment to apply.

This is a very precise treatment, and has no wiggle room. It occurs rarely, but when it does, you must use it; no other treatment covers this situation.

This treatment is not to be used when a *federal court* does not follow the rule in a *state case* because the state case was based on state law while the federal court is basing it ruling on federal law. Use "declining to follow."

Here is an example, from a New York case, of "not following on state law grounds":

The issue of repugnant verdicts has long been grappled with by the courts in our nation (*see e.g. Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 [1932] ). The U.S. Supreme Court settled this question for federal courts when it unanimously held that the Federal Constitution does not prohibit a jury from rendering a verdict that is inherently inconsistent [citing U.S. Supreme Court cases]....New York, in contrast, has chosen a more moderate approach that extends better protection against verdicts that are inherently repugnant on the law.

The court goes on to apply the New York law. Thus, the cited U.S. Supreme Court cases get a "not following on state law grounds" reference.

### Declining to Extend

The citing case declines to extend a rule, holding, rationale, or comment of the cited case.

This is a very common reference. Perhaps 40% of the KeyCites you make will either be "declining to extend" or "distinguishing." These two treatments are similar; the differences between them will be explored below under "Distinguishing."

This treatment is used when the citing case declines to extend a rule, holding, rationale, or even comment of the cited case (e.g., the issue was different, the law should not be so expanded).

Where the court does not favor us with the words "distinguishing" or "declining to extend," and you are undecided between those treatments, "declining to extend" should be generally thought to concern matters of law, while "distinguishing" should be thought to concern matters of fact. Further effort choosing between the two is not time well spent.

Unlike most other treatments, this treatment has no requirement that the citing case reach a result contrary to that of the cited case. So it can be used when the citing case reaches a result consistent with the cited case, but declines to use its doctrine, theory, or reasoning (also consider "following with reservations"). A citing court can decline to extend an abstract principle or a comment in the cited case.

The treatment is also used when the citing case rejects a party's argument that a case should be extended. However, a tricky area is when the court indicates in some fashion

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040537

that counsel has misread the cited case. This can warrant a "declining to extend" if the court treats the offered case as something arguable. But if the court flat-out says that the attorney is wrong, and that the case has nothing to do with this situation, there is no KeyCite event. The deciding factor is this: Is the court's negativity more about the case, or about counsel's misguided attempt to argue it?

### Calling into Doubt

This treatment serves multiple functions, ranging in strength from the "doubtful," to a much weaker "catchall" for uncategorizable negativity, or the mere possibility of some form of negativity. Thus, it is often used.

Elements:

1. The citing court literally says the cited authority is questionable, or
2. The citing case expresses negativity toward the cited case, but there is no good fit among the other treatments, or jurisdictional considerations make them unavailable, or
3. The citing case expresses veiled negativity toward the cited case, leaving uncertainty as to: a) whether there actually is negativity, b) the strength of any negativity, and/or c) the form that negativity should take. Exercising editorial judgment, the editor should treat the case if he believes a researcher should be alerted to the negativity, and allowed to sort out that negativity for himself.

Theoretically, any court, no matter how low, can call any other court into doubt. However, as a practical matter, it should not be resorted to as a "catchall" to express a lower court's negativity toward its high court. "Declining to extend" is likely available.

### Called into Doubt by Constitutional Amendment, Statute, Rule or Regulation

The citing case believes that enactment of a constitutional amendment, statute, rule, or regulation may affect the continuing validity of some proposition in the cited case. This treatment also applies when the citing court recognizes that another case recognized such an event.

### Distinguishing

The nature of a distinguishing event is that there is something different about the two cases that compels the citing court to reach a different result than the cited case did. The court does not have to use the term "distinguish" for this treatment to apply.

Elements:

1. The citing case reaches a different result than the cited case. Generally, you need at least a strong sense from the court's characterization of the case and the context of the discussion that the case reached a contrary result. That the cited case is a familiar one which you happen to know the result of does not, by itself, satisfy the "different result" requirement, though that knowledge would provide sufficient corroboration of an inference that can be taken from the opinion.

Thomson Reuters - Proprietary Information

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040538

2. The citing case reaches its different result because there is something different, usually factually, about the cases (by way of contrast, "declining to extend" should be thought to concern matters of law), and

3. The citing court engages the cited case with respect to the issue, that is, the proposed treatment should arise in the context of a discussion suggesting a "distinguishing" exercise (this is to avoid having to treat a case mentioned in another discussion that happens to have a different result)

Courts actually use the term "distinguish" only about half the time they distinguish a case. Many other distinguishing events can be identified by standard phrases such as "unlike this case," "the cited case is inapposite," or "the cited case does not apply." Some other phrases that may indicate that a case is being distinguished include "the cited case does not control/bind/govern," "the cited case is not similar/relevant," "appellant's reliance on the cited case is misplaced," and "the cited case does not support/aid/inform/persuade/help."

When the citing court recognizes that case X distinguished case Y, this event is too remote to warrant a treatment, unless the citing court indicates that it agrees with how case X distinguished case Y. (That is, we do not have any treatment that covers "recognizing distinguishing of.")

If the citing case notes that the cited case is distinguishable, but then goes on to apply it or reach a consistent position, there is no treatment. This is positive treatment.

Sometimes a court will say that two cases are different, when actually it is using that difference to show that the two cases should come out the same way. Thus, no reference is warranted. For example, a court may say that behavior in another case did not constitute negligence, that such behavior was far more extreme than the behavior in the present case, and that the behavior in the present case thus cannot constitute negligence either.

Similarly, care must be taken when a court acknowledges that another case is different, but then concludes that the difference is not sufficiently significant to warrant a different result in the present case. Example:

The Court understands that the product in *Bard Peripheral* involved "potentially life saving technologies." Here, the consequences of enjoining the ACUVUE®OASYS are not so grave; nevertheless, this Court, sitting in equity, finds those consequences to be sufficiently important and adverse to millions of ACUVUE®OASYS patients that the public interest would be disserved if an injunction were to be entered.

"Distinguishing" and "declining to extend" are very similar, and they are also weak treatments. Thus, it is not worthwhile to agonize over which of these treatments to use. However, it is worthwhile to consider the differences between them so that you can make a quick, informed decision and move on.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040539

"Declining to extend" should generally thought to concern matters of law, while "distinguishing" should be thought to concern matters of fact.
Here is a classic "distinguishing":
In that case, the suspect was not armed, not known to be dangerous, and fleeing. By contrast, the officers in this case confronted the polar opposite set of facts....
Here is a classic "declining to extend":
Plaintiff has not provided any legal authority to show that the test for appeals involving injunctive relief should be applied here, a case for appeal of a monetary judgment.

### Recognizing Disagreement With

The court notes that a case or other authorities expressed disagreement with or criticized the cited case, on result, rationale, or any other aspect of the opinion.
Elements:

1. The citing case notes that
2. The cited case has been disagreed with or criticized by,
3. A subsequent decision or other authority (which include concurring or dissenting opinions in subsequent cases, commentaries, and law reviews).

### Recognizing Disapproval of

This is a case-killing reference when the citing court has binding precedential authority over the cited course, but it is a weak when that is not the case.  "Disapproving" and "recognizing disapproval of" occur rarely; you can look them up each time you come across them.
This term should be used only when some form of the word "disapprove" is associated with the cited case.

### Recognizing Limitation of

The court notes that the rule of the cited case has been limited by an intervening case. Editors often mistakenly use this treatment when a citing case recognizes that the cited case limited itself, or used narrow language. In such a case, because there was no intervening decision doing the "limiting," this treatment is not warranted. Example: The Supreme Court's holding in *Johnson* was limited to the ACCA residual clause and did not address § 924(c).
Another common mistake occurs when editors fail to carry forward the jurisdictional requirements of the "limiting" treatment to the "recognizing limitation of" treatment. Before using "recognizing limitation of" an editor should note whether the intervening case that supposedly "limited" the cited case had the power to do so under our rules. If not, the citing case is likely just recognizing that the intervening case declined to extend the holding, and there is no treatment for recognizing declining to extend.
This treatment may be used when a court recognizes that another court has declined to give the cited case retroactive effect.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040540

*Recognizing Modification of*

The court notes that the rule of the cited case has been modified by an intervening case.

## KEYCITE INDIRECT—Research and Revisor Assistance

New headnoters will want to take special care in considering KeyCite references as they are learning the ropes.  However, as one gains experience, it is important to keep production goals in mind as well.  KeyCites must be accurate, but editors should not spend inordinate amounts of time on them.

Freely seek advice from a revisor when you are uncertain about potential red-flag events.

Generally, Westlaw searches should not be undertaken except to validate decisions regarding red-flag and potentially red-flag treatments.

In a non-red-flag situation, the correct treatment will often be apparent from the face of the case.

When in non-red-flag situations the correct treatment is not apparent, and research is required, in general the editor should do the necessary research.  However, the editor may take an especially time-devouring case to a revisor for assistance with KeyCites.  In deciding whether to do so, ask yourself whether it is a potential case-killing reference or not, and how likely it is that doing the research on your own would quickly resolve the matter.

If you have a strong suspicion of weak treatment (e.g., "distinguishing" or "declining to extend,") it is better to simply make the treatment than to do research for confirmation.  If you have merely a weak suspicion of weak treatment, it is better not to make the reference.

## KEYCITE INDIRECT—Tips for Avoiding "Technical" Errors

Many of the errors in this section were identified by customer complaints.  Such errors are quite damaging, and yet are easily eliminated with a bit of care.

It is surprisingly common to see the reference placed on the wrong case.

> Blue v. Red, abrogated by Green v. Black.  The "recognizing abrogation of" reference goes on Blue, not on Green.

Or sometimes the reference gets placed on an "innocent bystander."

If the plaintiff establishes a *prima facie* case, a rebuttable presumption of retaliation arises, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998) (abrogated on other grounds).

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040541

Here, the editor placed the "recognizing abrogation of" reference on Reeves, when it should have been placed on Gallagher. As a result, a venerable case, which is still good law, was red-flagged until a customer caught the error.

Here is another example of a KeyCite being placed on the wrong decision:

According to LAMMICO, the case of *Rachal v. Tenet Healthcare Systems*, 2003–0630 (La.App.4th Cir.11/12/03), 860 So.2d 1175, *writ denied*, 2004–0205 (La.3/26/04), 871 So.2d 350, supports its position.

The court goes on to distinguish Rachal. But the editor placed the "distinguishing" reference on the cite following "writ denied." This meant that the yellow flag was placed on "writ denied" decision that had no text, as opposed to the actual decision that was being distinguished.

Watch out for parentheticals.

In *Tapscott v. MS Dealer Service Corporation*, the Eleventh Circuit recognized procedural misjoinder as a form of fraudulent joinder, defining it as the "fraudulent joinder of a resident defendant having no real connection with the controversy." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921)), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000).

The editor placed the "recognizing abrogation of" reference on Wilson, when it should have been placed on Tapscott.

Here is a more complex example:

Thus, when a Federal sentence is imposed upon a defendant who is in primary State or local custody, the non-Federal custodian (here, New York State) retains primary jurisdiction over the prisoner. Federal custody may not commence until the non-Federal custodian*201 relinquishes the prisoner upon satisfaction of the prisoner's State obligation. *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir.2000) ("[T]he law on this point is clear: a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner.") (citing *Jake v. Herschberger*, 173 F.3d 1059, 1061 n. 1 (7th Cir.1999); *Chambers v. Holland*, 920 F.Supp. 618, 623 (M.D.Pa.) ("The relief which petitioner seeks, i.e., to be given credit on his federal sentence for time served on [an *ad prosequendum* ] writ issued by the federal court while he remained in the primary custody of the state, is inconsistent with federal law. Section 3585 [of Title 18 U.S.C.] does not permit credit on a federal sentence for time served and credited against another sentence."), *aff'd*, 100 F.3d 946 (3d Cir.1996) (table); (

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040542

_United States v. Smith,_ 812 F.Supp. at 371–72)), *superseded by statute on other grounds as stated in United States v. Saintville* (3d Cir.2001); *see also* _Shumate v. United States,_ _893 F.Supp. 137 (N.D.N.Y.1995)._

Here the editor placed the "superseded by statute" reference on Smith, but if one takes the time to unravel all the parentheticals, it is clear that it is Rios that has been superseded.  A quick look at Saintville would have confirmed this, and it would have been appropriate to do the research, since "superseded by statute" is a potentially case-killing reference.

## KEYCITE INDIRECT—Final Tips

Many KeyCite events are hidden in parts of the case that editors improperly gloss over during headnoting.  These include footnotes and lengthy string cites.

If you suspect a possible KeyCite event, make a note of it, either mentally or in writing.  You can put a blank headnote on the event as a reminder (or a headnote with a spelling error so you won't accidentally submit the case before deleting the note).  The court may not mention the case again by name, but its subsequent discussion may confirm your suspicion.  Examples of clues to potential KeyCite events include when the losing side cites a case, when the court says that there are two lines of authority, when the court talks about the "development" or "evolution" of the law, and when a court mentions a case and then in the same discussion mentions the enactment of a statute.  Finally, remember to take difficult issues to a revisor.


## KEYCITE INDIRECT—Examples

1) [Federal Court of Appeals, 11th Circuit]
The plaintiffs in this case have also asserted claims of fraud against GTE. The Alabama Supreme Court has, on one occasion, recognized an exception to the American Rule where fraud, willful negligence or malice has been practiced.  See Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238, 1242,,43 (Ala.1985). However, the Alabama courts have apparently not extended the application of Reynolds beyond the facts of that case. Notably, the Reynolds court emphasized that case involved fraud on the part of a trustee which caused losses to the individual trusts of the class members, and thus, that the suit was "essentially an equitable proceeding." Id. at 1241. Moreover, the plaintiffs have not cited, and this Court has not found, any decision in the fifteen years since Reynolds where an Alabama appellate court has shifted attorney's fees to a defendant because it had committed fraud. For these reasons, we conclude that application of the "fraud" exception alluded to in Reynolds is too speculative to serve as a basis for including an award of attorney's fees in determining the amount in controversy in this case.

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040543

Summarization Training Materials
November 2020

2) In Jones, this court reversed the district court's conclusion of obviousness because probative facts were not in dispute, no credibility determinations needed to be made, and the litigation had been going on for ten years. ,See id. In this case, however, probative facts are in dispute, and credibility needs to be assessed.

3) The necessity of *Graham* findings is especially important where the invention is less technologically complex, as is the case here. See In re Dembiczak, 175 F.3d 994, 999, 50 USPQ2d 1614, 1617 (Fed.Cir.1999), abrogated on other grounds by In re Gartside, 203 F.3d 1305, 53 USPQ2d 1769 (Fed.Cir.2000).

4) In Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 228 USPQ 90 (Fed.Cir.1985), overruled on other grounds by Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 46 USPQ2d 1097 (Fed.Cir.1998), we said: ...

5) [Federal Court of Appeals, 11th Circuit]
In making this allegation, the plaintiffs appear to have relied on this Court's holding in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir.1996), that a class claim for punitive damages under Alabama law could be viewed in the "aggregate" for amount in controversy purposes, which meant that the amount of punitive damages claimed could be attributed in toto to each member of the class in order to establish diversity jurisdiction over the claims of the entire class. See id. at 1358-59. However, after the district court in this case dismissed the plaintiffs' suit and they appealed, this Court decided Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir.2000) ("Cohen II"). In Cohen II, we held that a prior panel decision by the Former Fifth Circuit, Lindsey v. Alabama Tel. Co., 576 F.2d 593 (5th Cir.1978) precluded aggregating punitive damages to establish diversity jurisdiction over a class action, and that decision is to be followed notwithstanding a contrary holding by the subsequent panel in Tapscott.

6.  [Hawaii Supreme Court]
In Meyer, 78 Hawai'i at 314 n. 6, 893 P.2d at 165 n. 6, we noted that, in Horton,

the United States Supreme Court eliminated inadvertence as a requirement of a plain view sighting. However, because we continue to believe that the factor of inadvertence is necessary for the protection of our citizens in order to foster the objective of preventing pretextual article I, section 7 activity, we decline to follow Horton to the extent it eliminated inadvertence as a requirement of a plain view sighting. As the dissent by Justice Brennan, joined by Justice Marshall, noted,

[t]he rationale behind the inadvertent discovery requirement is simply that we will not excuse officers from the general requirement of a warrant to seize if the officers know the location of evidence, have probable cause to seize it, intend to seize it, and yet do not bother to obtain a warrant particularly describing that evidence. Id., 496 U.S. at 144-45 [110 S.Ct. at 2311-12]....

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040544

Summarization Training Materials
November 2020

Our departure from Horton in Meyer was merely another instance of our longstanding recognition, beginning with State v. Texeira, 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967), that "as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader protection under the Hawai'i Constitution than that given by the federal constitution." State v. Hoey, 77 Hawai'i 17, 36, 881 P.2d 504, 523 (1994) (citation omitted) (declining to follow Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)).

ANSWERS (although some of these aren't necessarily the only term that could be used):

Declining to extend Reynolds
Distinguishing Jones
Recognizing abrogation of In re Dembiczak
Recognizing overruling of Loctite
Recognizing abrogation of Tapscott
Recognizing disagreement with Horton; recognizing disagreement with Davis

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040545

# APPENDIX
Resources & Tip Sheets

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

## CASE ENHANCEMENTS CHECKLIST

✓ **Synopsis -** background section:
  - ➤ Parties and basis for action
  - ➤ Lower court/agency info
  - ➤ Identify ruling appealed, focus on procedural dispositions
  - ➤ Prior direct history/citations
  - ➤ Who appealed

✓ **Procedural posture**

✓ Each **headnote**:
  - ➤ Abstract or concrete – not a hybrid
  - ➤ Text, with enough context to stand on its own
  - ➤ Concretes focus on underlying dispute, not buried after semicolon
  - ➤ Statutory citation, when applicable; verify style
  - ➤ Words and Phrases, when applicable
  - ➤ Per legend, when applicable
  - ➤ Preliminary topic assignment
  - ➤ Selection of required and optional properties, as applicable

✓ **KeyCite treatments -** cases and statutes

✓ **Tag facts** in headnotes, synopsis, or content

✓ **Synopsis -** holdings and mandate
  - ➤ Court line
  - ➤ Create holdings, avoiding excessive reasoning and duplicative context
  - ➤ Link holdings
  - ➤ Create mandate
  - ➤ Identify dissenting or specially concurring judges
  - ➤ Identify other opinions

✓ **Universal Summary Products**
  - ➤ Choose topic and subtopic
  - ➤ Create ITI (a.k.a. "issue slip") for every case
  - ➤ Other slips/summaries (state bulletin, topical highlight, Education Law summary, Federal Case News), when applicable
  - ➤ Copy most important concrete headnote verbatim

✓ **Other possible features**
  - ➤ Patent and Trademark Slips
  - ➤ Markman Construed Terms

✓ Spell check features

✓ Validate features

✓ Query obvious errors in content

*Thomson Reuters - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040547

## KeyCite at a Glance

| | Court cites case from court at same or lower level. | | Court cites case from a higher court. | | Court cites case from outside its jurisdiction. | |
|---|---|---|---|---|---|---|
| | Court must use term. | Term may be inferred. | Court must use term. | Term may be inferred. | Court must use term. | Term may be inferred. |
| **Very Strong Negative** (always red flag --- include in headnote) | Overruling<br>Receding from ('retreating')<br>Disapproving | Abrogating | | | | |
| **Strong Negative** (potentially red Flag if cited case is from same or lower level; always yellow if cited case is from higher court) | Recognizing: Overruling of Implied Overruling of Disapproval of Rejecting | Recognizing: Abrogation of<br>Superseded by Amendment, Statute, Rule, Regulation<br>Disagreeing With<br>Declining to Follow | Recognizing: Overruling of Disapproval of Implied Overruling of | Recognizing Abrogation of<br>Superseded by Amendment, Statute, Rule, Regulation | | Superseded by Amendment, Statute, Rule, Regulation<br>Recognizing: Abrogation of Disagreement With |
| **Other Negative** (always yellow flag) | Recognizing: Limitation of<br>Limiting | Recognizing: Disagreement With<br>Modification of<br>Modifying<br>Calling into Doubt<br>Called into Doubt by: Amendment, Statute, Rule, Regulation<br>Not Following as Dicta<br>Declining to Extend<br>Distinguishing<br>Following with Reservations (but this does not apply if cited court is at lower level) | Recognizing Limitation of | Recognizing: Disagreement With<br>Modification of<br>Modifying<br>Calling into Doubt<br>Called into Doubt by: Amendment, Statute, Rule, Regulation<br>Following with Reservations<br>Not Following as Dicta<br>Declining to Extend<br>Distinguishing | Recognizing: Overruling of Disapproval of Implied Overruling of Limitation of<br>Disapproving<br>Rejecting | Modification of<br>Disagreeing With<br>Declining to Follow<br>Modifying<br>Calling into Doubt<br>Called into Doubt by: Amendment, Statute, Rule, Regulation<br>Not Following as Dicta<br>Not Following on State Law Grounds (state cites federal only)<br>Declining to Extend<br>Distinguishing |

*Thomson Reuters – Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040548

Summarization Training Materials
November 2020

## Top 11 Rules for Headnoting

1. Generally, the editor should follow the court's language when creating headnotes. However, it is important to remember that each headnote must have enough context to stand on its own, and make sense to a reader who doesn't have the opinion.

2. Abstract headnotes should be in present tense, while concretes should be in past tense.

3. Don't make abstract headnotes when the court is quoting a statute.

4. Especially in abstract headnotes, use "a court," or "Court of Appeals," not "The Court."

5. When characterizing parties, describe their relationship to one another, using correlative terms like "employer" and "employee," rather than "employer" and "nurse," but avoid "plaintiff" and "defendant."

6. When possible, write concrete headnotes substantively, not procedurally.

7. Generally, a concrete headnote should start by stating the legal conclusion, followed by a semi-colon and the court's rationale, including facts supporting the conclusion. For example:

   *Terminated female employee was not replaced by someone outside her protected class, nor did she show that a similarly situated male employee was treated more favorably, as required to support her gender discrimination claims under Title VII; while employee sought a promotion that she did not receive, female co-worker was selected for that promotion, and employee pointed to no similarly situated male comparator who was treated more favorably. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.*

8. Headnotes generally should not be more than 800 characters long.

9. Headnotes should include a statutory citation at the end whenever one is available. See example in Rule 7.

10. When choosing a preliminary classification topic, do your best, but do not spend too much time. Consider looking at the JWB help file, or clicking on a cited, published case in your court's opinion, and choosing the topic that appears on the relevant headnotes in that case.

11. An ITI (Universal Summary Headline) can usually be copied from the synopsis holding representing the most important headnote, and a highlight or FCN summary (Universal Summary Paragraph) can be made by turning that headnote into a paragraph, which includes multiple sentences and articles like "the." The ITI should not exceed 150 characters, and the highlight should not typically exceed 1200 characters.

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040549

## Suggested Party Characterizations

| ISSUE | PARTIES |
|---|---|
| Adoption | biological mother and father, birth mother, birth father, birth parent, (prospective) adoptive parents, adoptive child |
| Adverse possession | adverse possessor or claimant, record owner |
| Advertising | advertising agency, advertiser, publisher |
| Annexation | proposed annexation area, annexing (city), objector |
| Annuity | issuer, annuitant |
| Armed Services | serviceman or servicemember |
| Arrest | arrestee, arresting officer |
| Assisted reproduction | sperm donor; biological mother, father, parents; gestational mother; intended mother, intended parents, father, parents, genetic parents, domestic partner |
| Automobile accidents | left-turning/right-turning, leading/following/trailing/oncoming/passing/backing/braking/parked/stopped, overtaking, westbound/eastbound/southbound/northbound (vehicle/driver/motorist) |
| Bankruptcy | debtor (not bankrupt), creditor |
| Boundaries | adjoining landowners, common grantor (possibly) |
| Carriers | carrier, shipper, consignee (possibly) |
| Charter | vessel owner, charterer |
| Child support and custody | mother and father, custodial and non-custodial parent, obligor and obligee parent |
| Cohabitants | (if relevant, lesbian or gay, male or female (possibly)) cohabitants, unmarried couple |
| Commercial paper | drawer, drawee bank, depositary bank, intermediary bank, payor bank, collecting bank, presenting bank |
| Commitment | (involuntary or voluntary) committee, offender or sex offender (for civilly committed sex offenders) |
| Condominium unit | owner, owners' association, property manager |
| Conservatorship | conservator, conservatee or protectee, (alleged) incompetent (possibly) |
| Consignment | consignor, consignee |

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040550

| | |
|---|---|
| Construction | project owner, (construction) lender, developer, construction manager, architect, engineer, (general or prime) contractor, (electrical/plumbing/excavation) subcontractor, subsubcontractor, supplier, materialman, worker, laborer |
| Contempt | contemnor |
| Contract for deed | contract holder, vendor, purchaser |
| Cooperative | conversion sponsor, tenant shareholder, cooperative or tenants corporation (NY) |
| Corporations | corporations: shareholder, director, officer; closely held corporation: principal, (minority or majority) shareholder; related corporations: affiliated, parent, subsidiary, sister, grandparent; merger: surviving or acquiring, and absorbed or acquired; nonprofit corporations: members; proxy contest: (proxy) contestant; successor and predecessor |
| Covenants | covenantee, covenantor |
| Credit cards | issuer or issuing bank, cardholder, retailer |
| Deed of Trust | trustee, grantor, trustor, trust deed beneficiary, grantee, mortgagee, mortgagor (generally use mortgagee/mortgagor only if the court does) |
| Detainer | receiving state, sending state, prisoner |
| Detention | detainee |
| Distributorship | manufacturer or supplier, distributor |
| Easements | servient tenement owner, dominant tenement owner |
| Elections | (successful or defeated) candidate |
| Eminent domain | (land)owner or condemnee, condemner or city, county, etc |
| Employment agency | employment agency, employee or worker, client (company) |
| ERISA | participant or beneficiary, plan, administrator, fiduciary |
| Escrow | depositor, escrow agent, grantee or promisee or obligee |
| Extradition | demanding or receiving state, sending state, accused (possibly fugitive) |
| Factoring | principal, factor |
| Freedom of information | requester, agency |
| Garbage | hauler |
| Garnishment | garnishor, garnishee, debtor |
| Grand jury | witness, target (of investigation) |
| Guaranty | guarantor, (principal) obligor |
| Guardianship | guardian, ward |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040551

| Hotels | innkeeper or hotel or motel, guest |
| Implied consent | motorist or driver (not defendant), arresting officer, testing official |
| Indemnity | indemnitee, indemnitor |
| Insanity | insanity acquittee |
| Insurance | insurer, insured, tortfeasor, excess insurer, primary insurer, automobile insurer, uninsured motorist, underinsured motorist, UM, UIM carrier |
| Interpleader | (adverse) stakeholder, claimants |
| Judgment | judgment creditor, judgment debtor |
| Land sales | vendor, (prospective) purchaser, broker, real estate agent (not realtor) |
| Letter of credit | issuing bank, customer or account party, beneficiary, confirming bank |
| Licensing | licensor, licensee |
| Liens | lienor or lienholder |
| Limited Liability Company | members (usually), managers (usually) |
| Loans | lender, borrower, finance company, credit bureau or credit reporting agency |
| Mechanics lien | materialman, supplier, project owner |
| Medical malpractice | physician (or specialty), patient |
| Medicare/medicaid | provider, (fiscal) intermediary, recipient, claimant |
| Mortgages | mortgagee, mortgagor, mortgage holder, assignee of mortgage |
| Motions | movant, nonmovant |
| Notes | payee, maker, holder |
| Oil lease | operator, lessee, lessor, working interest owner, overriding royalty interest owner, leasehold owner |
| Options | optionor, optionee |
| Partnership | limited partner, general partner, managing partner, funding partner, withdrawing partner, continuing partner |
| Patents | patentee, alleged infringer |
| Paternity | (birth) mother, putative father (thereafter adjudicated father), presumed father |
| Pledges | pledgee, pledgor |
| Pretrial diversion | pretrial divertee |

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040552

| | |
|---|---|
| <u>Products liability</u> | manufacturer, distributor, seller; consumer, user, buyer |
| Public contracts | contractor, government or city, state, etc bidding  successful bidder, unsuccessful or disappointed bidder or protestant |
| Rent control | rent-stabilized tenant, landlord |
| Sales of personalty | buyer, seller |
| Salvage | salvor, vessel, vessel owner |
| Seamen | seaman, vessel, vessel owner |
| <u>Secured transactions</u> | secured party |
| Securities | issuer, shareholder, fraud investor, corporation, broker, brokerage firm, introducing broker, clearing broker, independent auditor, financial advisor, IPO issuer, promoter, broker-dealer, underwriter, tender offer, tender offeror, target corporation |
| Slip and fall (in store) | customer or patron, store, store owner (on sidewalk)  pedestrian |
| Social security | claimant or applicant, widows and children's benefits, widow, surviving child, deceased wage earner |
| Supervised release | supervised releasee (do not use probationer) |
| Suretyship | principal or obligor, surety, obligee (possibly) |
| Travel | passenger, travel agent, tour operator, airline |
| Trusts | settlor (grantor or trustor if used by court), trustee, beneficiary |
| URESA | rendering or initiating state, responding state |
| Viaticals | life insurer, insured/policyholder/viator, viatical settlement company (company enters "viatical contract" whereby it buys viator's rights to his policy which then becomes a "viatical") |
| Waters | (upper or lower) riparian landowner, rights holder |
| Wills | testator, legatee, devisee, beneficiary, proponent, contestant or objector |
| Workers' compensation | employer, workers' compensation carrier, workers' compensation claimant |
| Zoning | developer or applicant or landowner, objector, protestant or neighboring or adjoining landowner (possibly) |

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040553

# INCLUSIVE LANGUAGE GUIDELINES

## I.  IN GENERAL

When writing headnotes and other enhancements, take care to avoid using terms that may be considered offensive, demeaning, outdated, or emotionally charged. To that end:

Do not use language that perpetuates stereotypes about race, ethnicity, sex, gender, religion, class, economic status, ability status, marital status, sexual orientation, nationality, or other statuses.

Social identity or status should not be included in editorial enhancements unless relevant to the cause of action, reasoning, or decision. For example, race, gender, sexual orientation, etc., may be necessary in a civil rights or discrimination action.

Special care should be taken to be neutral and accurate when using words that have emotional resonance or that may be vague or ambiguous. For example, unqualified use of words like extremists, radical, or terrorist. Try to use more neutral or more descriptive words such as: gunman, shooter, bomber, hijacker.

## II. SPECIFIC GUIDELINES

### A.  CHILDREN AND FAMILIES

*Abortion:*
**Acceptable terms:**
- Aborted fetuses
- Abortion rights activist; anti-abortion activist

**Do not use:**
- Unborn babies
- Pro-life; pro-choice; pro-abortion; abortionist

*Adoption:*
Refer to a child's adoptive status only when the fact is clearly significant.
**Acceptable terms:**
- Birth mother; birth father; birth parent; biological parent
- Adoptive parent; adoptive child

**Do not use:**
- Real or natural (to describe parents or child)

*Legitimacy:*
**Acceptable terms:**
- If it is relevant to the case, use an expression such as "whose parents were unmarried."

**Do not use:**

*Thomson West - Proprietary Information*

**HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY**

**TR-0040554**

❌ Illegitimate

## B.  DISABILITIES

Include physical and mental disability information only if relevant to the case.

If a description is necessary, be specific. Example:

- ✅ Patient with multiple sclerosis
- ✅ Claimant diagnosed with schizophrenia

Emphasize personhood over disability by referencing the person before the disability. Examples:

- ✅ Student with disability, instead of disabled student or handicapped student
- ✅ Customer who used wheelchair, instead of wheelchair-bound customer
- ✅ Patient with epilepsy, instead of epileptic patient

Avoid negative terms such as "stricken with" or "victim of." Better choices:

- ✅ Woman living with depression
- ✅ Child with cerebral palsy

**Do not use:**

- ❌ Crippled (when used to describe a person who is disabled)
- ❌ Normal (to describe people without disabilities)
- ❌ Handicapped parking; preferred term is accessible parking

_Note:_ Legislation may use terms listed as unacceptable, e.g., handicapped or mental retardation. If relevant to the case, these terms should be included in quotes.

### SPECIFIC CONDITIONS:

_Vision:_

- ✅ People with almost complete vision loss are described as blind or legally blind.
- ✅ Those with partial sight should be described as visually impaired, or as having low vision or limited vision.

_Hearing:_

- ✅ People with total hearing loss are described as deaf.
- ✅ Those with partial hearing loss should be described as having partial hearing loss or being hard of hearing. Hearing impaired is also acceptable.

**Avoid:**

- ❌ Deaf-mute

**Do not use:**

- ❌ Deaf and dumb

_Thomson West - Proprietary Information_

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040555

Summarization Training Materials
November 2020

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040556

*Speech:*
- ✓ People who cannot speak are described as mute.
- ✓ Others with speaking difficulties should be described as speech impaired.

*Mental Disabilities:*
**Acceptable term:**
- ✓ Inmate with psychiatric disability
**Avoid:**
- ✗ Mentally ill person; person with mental illness

*Intellectual Disabilities:*
**Acceptable term:**
- ✓ Employee with intellectual disability
**Do not use:**
- ✗ Mental retardation; mentally retarded
- ✗ Mongol or mongoloid to refer to someone who has Down Syndrome

*Physical Stature:*
**Preferred terms:**
- ✓ Dwarf; little people (person); people of short stature; dwarfism
**Do not use:**
- ✗ Midget

## C.  ETHNICITY AND RACE

Describe ethnicity or race only when relevant to the case. Where reference is necessary, avoid racial stereotyping and describe groups, ethnicity, or race precisely.

Capitalize the names of races and people: Asian, Black, Jew, Hispanic. Note that white should be lower case.

Where applicable, use the term by which the people of a particular ethnic group describe themselves. Examples:
- ✓ Inuit, not Eskimo
- ✓ Roma, not Gypsy

**Acceptable terms:**
- ✓ People or person of color (umbrella term for anyone who is non-white)
**Do not use:**
- ✗ Colored

*Multi-Racial:*
**Acceptable terms:**
- ✓ Bi-racial; multi-racial

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040557

**Do not use:**

 Mulatto

*African American or Black:*
African American and Black are not always interchangeable because not all Black people descend from Africa. People from Caribbean nations, for example, generally refer to themselves as Caribbean Americans.

Either African American or Black is acceptable, and the court's terminology should generally be followed. However, capitalize the "B" in "Black" when describing people, culture, communities and institutions, even if the court does not do so.

The term "white" is not capitalized.

Do not use a hyphen for dual heritage terms even if the court uses a hyphen.

**Acceptable terms:**
- African American (American black person of African descent)
- Caribbean American
- Black (used as an adjective)
- Black may also be acceptable as a plural noun, e.g., "Doctors found different treatment offered to whites and Blacks."

**Do not use:**
- African-American
- Black as a singular noun **e.g.**, "Barack Obama would be the first Black to become U.S. president."

*Latino American and Hispanic American:*
**Both are acceptable terms.**

Latino and Hispanic are terms used to refer to people living in the United States. Use the country of the person's origin when possible, such as Colombian or Mexican.

- Hispanic: Persons of Spanish speaking origin or ancestry; Hispanic excludes those of Portuguese and Brazilian descent. May include Spanish speaking Latin Americans.
- Latino: Anyone of Latin American origin or ancestry, including Brazilians. Latin America includes South and Central America, Mexico, and some Caribbean countries.

**Acceptable terms:**
Latino American
Hispanic American
Mexican American

*Thomson West - Proprietary Information*

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

TR-0040558

*Indigenous People:*
Indigenous people are the original inhabitants in a region. Native Americans are indigenous to the United States.

**Acceptable terms:**
 Native American; American Indian (for indigenous people of Americas)

Where possible, be more specific and give the name of the tribe, e.g., Navajo, Cherokee.

*Asian American:*
Asian refers to the culture, people, and customs related to the continent of Asia.

**Acceptable terms:**
✅ Asian American
 Chinese American

When possible, refer to the person's country of origin, such as Taiwanese, Korean, Russian, or Indian.

**Do not use:**
❌ Oriental

*White or Caucasian:*
 **Acceptable terms:**
  ✅ White used as an adjective but not capitalized, e.g., "a white inmate"

  ✅ White may also be acceptable as a plural noun, e.g., "Doctors found different treatment offered to whites and Blacks.
  ✅ Caucasian may be used if following copy, but there is no need to change the court's use of "white" to "Caucasian."

**Do not use:**
❌ White (as a singular noun)

## D.  GENDER AND SEXUALITY

*Male/Female:*
Do not use language that perpetuates stereotypes of women. Do not assume police, firefighters, or soldiers are men. Where possible use the same term for men and women, e.g., police officer, not policeman, business executive, not businessman.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040559

A female older than 18 is a woman, not a girl. Use woman, not lady. A male older than 18 is a man.

*Sexual Orientation:*
**Acceptable terms:**
- ✅ Sexual orientation
- ✅ Gay; lesbian
- ✅ Same sex marriage; same sex couple

**Do not use:**
- ❌ Sexual preference
- ❌ Homosexual; homosexuality

Avoid using the abbreviation LGBT or LGBTQ. Use lesbian, gay, bisexual, and transgender to describe groups and issues affecting those communities.

*Gender Identity:*
Transgender is an adjective used to describe people whose gender identity or expression differs from the sex assigned at birth. A transgender man is someone who was assigned female at birth and lives as a male. A transgender woman was assigned male at birth and lives as a female.

Respect a person's chosen personal pronoun.

Do not use the word "chosen" to describe a person's gender identity.

**Acceptable terms:**
- ✅ Transgender (used as an adjective)
- ✅ Transition

**Do not use:**
- ❌ Transgender (used as a noun); transgendered
- ❌ Sex change. Use transition to describe the process of transitioning from male to female or female to male.
- ❌ The terms transsexual man or transsexual woman should be avoided as they are considered outdated. Use transgender instead.

*Other Terms:*
- ℹ️ **Intersex:** A person born with sexual anatomy that does not fit the typical definition of male or female
- ℹ️ **Asexual:** People without sexual feelings or desires
- ℹ️ **Questioning:** People in the process of exploring their gender identity

**Do not use:**
- ❌ Transvestite. Use a simple description, such as "the man was dressed in women's clothing."

*Thomson West - Proprietary Information*

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

**TR-0040560**

### E.   IMMIGRATION STATUS

Migrant usually describes a person moving from one region or country to another to seek employment or residence without implying anything about the legalities of the travel.

Refugee usually refers to a person who is forced to leave his home or country to escape persecution, war or natural disaster.

Illegal immigration refers to entering or residing in a country without authorization in violation of civil or criminal law.  Use illegal only to refer to an action, not a person: illegal immigration, but not illegal immigrant.

You may refer to a person or party living in or entering a country illegally or without legal permission.  Nationality should be included if available. (For example: "Noncitizen, a Mexican national, challenges . . . .")  Whenever possible, it is better to describe a person's individual circumstances or write about them as living in or immigrating to the United States illegally.

Note, however, that people who were brought into the country as children should not be described as having immigrated illegally.  See "temporary resident status" under acceptable terms below.

**Acceptable terms:**

✅ Noncitizen--acceptable to use in situations involving the description of an individual who is not a U.S. citizen

✅ Applicant/petitioner/asylee - acceptable to use for person seeking asylum. (i.e., asylum applicant)

✅ Applicant/petitioner - acceptable to use in cases in which a noncitizen is seeking citizenship (i.e., naturalization applicant)

✅ Immigration detainee - acceptable to use in cases involving a noncitizen who is detained

✅ Arrestee  - acceptable to use in cases involving arrest for immigration violations

✅ Visa applicant/visa beneficiary - acceptable in visa cases (sometimes the applicant and beneficiary are the same person)

✅ Defendant - acceptable in criminal prosecutions for immigration law violations

✅ Lawful permanent resident/permanent resident - should be used to describe a noncitizen who has been granted the right to live in the U.S. indefinitely and is authorized to work, i.e. "green card" holders or alien registration card holders. (Note "green card" was informally used to describe the alien registration card because of its color and is not an official term.)

✅ Naturalized citizen - acceptable in denaturalization proceedings

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0040561

Summarization Training Materials
November 2020

✅ Foreign national/foreign citizen - acceptable in Alien Tort Claims cases

✅ Temporary resident status – use for people granted a temporary right to remain in the U.S. under the Deferred Action for Childhood Arrivals (DACA) program

**Do not use:**
- ❌ Alien
- ❌ Illegal alien
- ❌ Illegal immigrant
- ❌ An illegal
- ❌ Illegals
- ❌ Undocumented

to describe a person or party unless in quotes and essential to the case.

*Note:* Legislation may use terms listed as unacceptable, e.g., alien, illegal immigrant, illegal alien. If relevant to the case, these terms should be included in quotes.

## F.   RELIGION

The word fundamentalist is commonly used to describe extreme political and religious views, but the term is vague and emotive and should be avoided. Use more specific descriptions of the person or group beliefs or practices.

The word Islamic is an adjective to describe the culture, art, architecture, music, or finance associated with the religion of Islam. Adherents to the religion are usually described by the adjective Muslim. An Islamic state is a country ruled by the Islamic law. A Muslim country is one whose population is predominantly Muslim.

Islamist is a person or organization advocating a political ideology of Islam.

Jihad is an Islamic holy war or struggle. It can also refer to an individual's moral struggle. Use the word with care.

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

Summarization Training Materials
November 2020

## Internet Terms

Terms "internet" and "world wide web": Use the terminology used by the court. The terms "internet" and "world wide web" are not the same. The "internet" is a global system of interconnected computer networks. In contrast, the "world wide web" is one of the services transferred over these networks.
Use the term "website" rather than "Web site."

You may use the following suggested terms for internet service providers or popular websites:

internet service provider (ISP): AOL, Comcast
video-sharing website: YouTube
digital content store or digital content service: iTunes Store, Google Play, Amazon (Music and Video Store), Netflix
social networking website: Facebook, Instagram, Google+
professional networking website: LinkedIn
auction website: eBay
travel website: Priceline, Expedia
blog: Huffington Post, SCOTUS blog
microblog: Twitter
internet search engine: Google, Bing, Yahoo
dating website: eHarmony, Match.com
classified advertising website: craigslist
web-based e-mail provider: Gmail/Google, Yahoo Mail, Outlook
web-based conferencing application, video (or audio) conferencing application: WebEx, Skype
online, user-edited encyclopedia:  Wikipedia
ride-sharing service: Uber, Lyft
online payment service:  Paypal
internet-based image publishing service, internet-based file share service: Shutterfly

A website cannot sue or be sued. When referring to one of these internet entities as a party, use a parallel descriptive term. For example, in the case of a suit by or against YouTube, you could say "operator of video-sharing website."

## Technological Devices

You may use the following suggested terms for technological devices, and related platforms and manufacturers:

tablet computer: iPad, Samsung Galaxy
e-book reader: Kindle
smartphone: iPhone, Samsung, Blackberry
cell phone: a "cellular telephone" may be referred to as a "cell phone"
**Note**: smartphones and cell phones are not the same thing, although some courts seem to use the terms interchangeably. Smartphones have a mobile operating system, cell phones do not. If the court is not clear about the type of device, follow copy.
mobile operating system: Android, iOS
software manufacturer: Microsoft, Oracle, Apple

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040563

hardware manufacturer (be specific on type of hardware): Dell, Apple, Samsung
digital storage disc, high definition optical storage disc: Blu-ray
desktop computer
laptop computer
wearable technology:
smartglasses or smart glasses: Google Glass
smartwatch or smart watch: Samsung, Motorola, Apple

## Abbreviations – Judges' Titles

## State Court Cases

(In New Jersey, use the letters appearing after the judge's name.)

Associate Judge--  J.

Associate Chief Justice (Utah)-- Associate C.J.

Associate Presiding Judge--  P.J. (appellate court only)

Chancellor--  Spell out

Chief Judge or Justice--  C.J.

Circuit Judge - J.

Commissioner--  Spell out

District Judge --  J. (except in New Mexico, then use D.J.)

Judge or Justice--  J.

Judicial Hearing Officer (NY only) - J.H.O.

President Judge(Pa.)-- Spell out

Presiding Judge--  P.J. (appellate court only)

Senior Judge--  Spell out

Surrogate--  S.

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040564

Vice Chief Justice (Oklahoma)--  V.C.J.

NOTE: When the judge is an acting judge, such as "Acting Chief Judge," do not abbreviate "Acting" but do use the pertinent abbreviation, if any: "Acting C.J."

## Federal Lower Court Cases

(Use these abbreviations when headnoting a federal lower court opinion.)

Bankruptcy Judge-    J.

Chief Bankruptcy Judge-  Chief Judge

Chief District Judge--  Chief Judge

District Judge--  J.

Magistrate Judge--  United States Magistrate Judge

Senior District Judge--  Spell out

## Federal Courts of Appeals and United States Supreme Court Cases

(Use these abbreviations for authors of opinions at these levels only.)

Bankruptcy Judge--  J.

Chief Bankruptcy Judge--  Chief Judge

Chief Circuit Judge (Justice)--  Chief Judge (Justice)

Circuit Judge (Justice)--  Spell out

District (Chief) Judge--  District Judge

Magistrate Judge--  United States Magistrate Judge

Senior Circuit Judge (Justice)--  Spell out

Senior District Judge--  Senior District Judge

Supreme Court (Chief) Justice--  (Chief) Justice (followed by name)

*Thomson West - Proprietary Information*

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040565

Summarization Training Materials
November 2020

NOTE: The abbreviation for the plural of judge and of justice is JJ., and for presiding judge it is P.JJ.

## JWB Keyboard Shortcuts:

| | |
|---|---|
| **Ctrl+Alt+L** | Assigns the most recently used topic to an open headnote |
| **Ctrl+Alt+N** | Assigns the next most recently used topic to an open headnote |
| **Ctrl+Alt+W** | Run Spellcheck |
| **Ctrl+Alt+V** | Validate contents of the Features widget (runs validations; use when you are done working on the case ... after you run Spellcheck) |
| **Ctrl+Shift+S** | Save contents of an active text editor widget |
| **Ctrl+Alt+X** | Save & close contents of an active text editor widget (not Indirect history editor) |
| **Ctrl+Alt+D** | Delete an open summary/headnote (not Indirect history editor) |
| **Esc** | Close the active widget (but not Cases Metadata widget) |
| **Ctrl+Alt+T** | Opens Topics (classification) widget for a headnote if it is not already open |
| **Ctrl+Alt+H** | Creates headnote and pastes any selected text from the Content Viewer. Can also be used to create a blank headnote |
| **Ctrl+Alt+Y** | Create a synopsis |
| **Ctrl+Alt+P** | Create a prepopulated synopsis |
| **Ctrl+Alt+O** | Copy selected text from Content Viewer directly to an open headnote |
| **Ctrl+C** | Copy selected text to the clipboard |
| **Ctrl+X** | Cut selected text and store it in the clipboard |
| **Ctrl+V** | Paste contents of clipboard at cursor |
| **Ctrl+Z** | Undo last action taken in the summary text of an open editor widget |
| **Ctrl+Y** | Redo last action taken in the summary text of an open editor widget |
| **Ctrl+Alt+S** | Insert section symbol (§) into summary text |
| **Arrows** | Scroll through area in focus |
| **Ctrl+Alt+Z** | Opens Dialog Chooser |
| **Ctrl+Alt+C** | Inserts the most recently used popular case name into the selected headnote or synopsis field |

### Other shortcuts:

Home, End, and Tab keys (and Ctl+Home, Ctrl+End, and Shift+Tab)

Enter key: will open a highlighted summary in the Features widget

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0040566

# EXHIBIT 29

# WestlawNext®

# Searching with Topic and Key Numbers
## Retrieving Cases on WestlawNext

Each legal issue in a case published by Thomson Reuters is identified, summarized in a headnote, and assigned a topic and key number in the West Key Number System®. If you are fortunate enough to find a case on point early in your research, you can use the topic and key numbers in this case to search for other cases discussing the same legal issues. You can also use the West Key Number Digest to search for topic and key numbers and then retrieve headnotes classified under those topic and key numbers.

## Searching with Topic and Key Numbers

If you have already identified a topic and key number associated with a legal issue you are researching, you can retrieve cases or headnotes in the following ways:

- Run a search at the home page using that topic and key number. For example, to search for cases with headnotes classified under topic 115 (Damages) and key number 101 (Expenses), type **115k101** in the search box at the top of the page, change the jurisdiction if necessary, and click **Search**.

- Run a search at the home page using that topic and key number in conjunction with other search terms. For example, to search for cases with headnotes classified under topic 115 and key number 101 that relate to medical expenses, type a search such as **115k101 /p medical** in the search box (Figure 1).

Figure 1. Topic and key number search at the home page

- When you are viewing a headnote in a case, click the topic or keyline above the headnote or click a topic or key number in the classification hierarchy next to the headnote (Figure 2). A list of headnotes classified under that topic or key number—from cases in the same jurisdiction as the case you were viewing—is displayed.

    **Note** If the classification hierarchy is not displayed next to the headnote, click **Change View** at the beginning of the *West Headnotes* section of the opinion (see Figure 2).

WestlawNext is available on the Web at **next.westlaw.com**.

For assistance using WestlawNext, call **1-800-WESTLAW** (1-800-937-8529).

For free reference materials, visit **store.westlaw.com /westlaw/guides.**





Figure 2. Case headnote and West topic and key numbers

## Using the West Key Number Digest

The West Key Number Digest contains the complete topic and key number outline used by our attorney-editors to classify headnotes. The West Key Number Digest helps you identify topic and key numbers related to your issue and to headnotes classified under those topic and key numbers.

To access the West Key Number Digest on WestlawNext, click the **Tools** tab in the *Browse* section of the home page, then click **West Key Number System** (Figure 3). The West Key Number System page, which lists all West topics, is displayed (Figure 4). A list of West topics can be found on pages 5–7 of this guide.



Figure 3. Accessing the West Key Number System

Figure 4. West Key Number System page

Browse the list of topics to find the topic related to your issue. Click the topic, e.g., **Elections**, to display the topic page, which contains the key numbers classified under that topic (Figure 5). If necessary, click the plus (**+**) symbols to display the key numbers.

TR-0179831



Figure 5. Topic page

**Retrieving Case Headnotes**

At a topic page, you can select key numbers and then retrieve case headnotes classified under those key numbers. Complete these steps to retrieve case headnotes:

1. Select **Specify content to search** if it is not already selected. If necessary, click **Expand All** to display all key numbers classified under that topic. Then select the check box next to each key number for which you want to retrieve case headnotes.

2. Change the jurisdiction at the top of the page if necessary.

3. Click **View Headnotes**. The headnotes are displayed in the right column under the key numbers to which they are classified (Figure 6).

To retrieve headnotes from another jurisdiction, click **Change** next to the current jurisdiction. The Jurisdiction selector is displayed. Make your selections and click **Apply**, then click **Search** at the top of the page.



Figure 6. Case headnotes

TR-0179832

To view the full text of a case in the list, click its title. You can also click the KeyCite® status flag, if available, to view the KeyCite result for the case.

**Narrowing Your Result**

You can narrow the list of headnotes to those that contain specific terms. Type a term or a Terms and Connectors search, e.g., **"absentee ballot!"**, in the *Search within results* text box under *Narrow* in the left column and click **Continue** (Figure 7). Click **Apply Filters** to display only those headnotes that contain your terms.



Figure 7. Search within results

## Saving or Printing Case Headnotes

You can save case headnotes in a folder or print, email, or download them.

**Saving Headnotes in Folders**

When you are viewing a list of case headnotes, select the check box next to each headnote you want to save and click the **Save to Folder** icon (⬆) on the toolbar. Select the folder in which you want to save the headnotes and click **Save**.

**Printing Headnotes**

When you are viewing a list of case headnotes, select the check box next to each headnote you want to print or deliver. Then click the **Print** (🖨), **Email** (✉), **Download** (⬇), or **Kindle** (📗) icon on the toolbar, or click the arrow next to the delivery icon and choose **Print**, **Email**, **Download**, or **Kindle** from the menu. In the dialog box that is displayed, you can choose to print or deliver the headnotes or the cases that contain the headnotes.

TR-0179833

## West Digest Topics and Their Numerical Designations

| | | | |
|---|---|---|---|
| 1 Abandoned and Lost Property | 38 Assignments | 76H Children Out-of-Wedlock | 116 Dead Bodies |
| 2 Abatement and Revival | 40 Assistance, Writ of | 78 Civil Rights | 117 Death |
| 4 Abortion and Birth Control | 41 Associations | 79 Clerks of Courts | 117G Debt, Action of |
| 5 Absentees | 42 Assumpsit, Action of | 80 Clubs | 117T Debtor and Creditor |
| 6 Abstracts of Title | 43 Asylums and Assisted Living Facilities | 81 Colleges and Universities | 118A Declaratory Judgment |
| 7 Accession | 44 Attachment | 82 Collision | 119 Dedication |
| 8 Accord and Satisfaction | 45 Attorney and Client | 83 Commerce | 120 Deeds |
| 9 Account | 46 Attorney General | 83H Commodity Futures Trading Regulation | 122A Deposits and Escrows |
| 10 Account, Action on | 47 Auctions and Auctioneers | 83T Common Interest Communities | 123 Deposits in Court |
| 11 Account Stated | 48 Audita Querela | 84 Common Lands | 124 Descent and Distribution |
| 11A Accountants | 48A Automobiles | 85 Common Law | 125 Detectives and Security Guards |
| 12 Acknowledgment | 48B Aviation | 89 Compromise and Settlement | 126 Detinue |
| 13 Action | 49 Bail | 90 Confusion of Goods | 129 Disorderly Conduct |
| 14 Action on the Case | 50 Bailment | 91 Conspiracy | 130 Disorderly House |
| 15 Adjoining Landowners | 51 Bankruptcy | 92 Constitutional Law | 131 District and Prosecuting Attorneys |
| 15A Administrative Law and Procedure | 52 Banks and Banking | 92B Consumer Credit | 132 District of Columbia |
| 16 Admiralty | 54 Beneficial Associations | 93 Contempt | 133 Disturbance of Public Assemblage |
| 17 Adoption | 55 Bigamy | 95 Contracts | 134 Divorce |
| 18 Adulteration | 56 Bills and Notes | 96 Contribution | 135 Domicile |
| 19 Adultery | 58 Bonds | 96H Controlled Substances | 135H Double Jeopardy |
| 20 Adverse Possession | 59 Boundaries | 97C Conversion and Civil Theft | 136 Dower and Curtesy |
| 21 Affidavits | 60 Bounties | 98 Convicts | 141 Easements |
| 23 Agriculture | 61 Breach of Marriage Promise | 99 Copyrights and Intellectual Property | 142 Ejectment |
| 24 Aliens, Immigration, and Citizenship | 63 Bribery | 100 Coroners | 143 Election of Remedies |
| 25 Alteration of Instruments | 64 Bridges | 101 Corporations and Business Organizations | 144 Elections |
| 25T Alternative Dispute Resolution | 65 Brokers | 102 Costs | 145 Electricity |
| 26 Ambassadors and Consuls | 66 Building and Loan Associations | 103 Counterfeiting | 146 Embezzlement |
| 27 Amicus Curiae | 67 Burglary | 104 Counties | 148 Eminent Domain |
| 28 Animals | 69 Cancellation of Instruments | 105 Court Commissioners | 149 Entry, Writ of |
| 29 Annuities | 70 Carriers | 106 Courts | 149E Environmental Law |
| 29T Antitrust and Trade Regulation | 71 Cemeteries | 107 Covenant, Action of | 149T Equitable Conversion |
| 30 Appeal and Error | 72 Census | 108 Covenants | 150 Equity |
| 31 Appearance | 73 Certiorari | 108A Credit Reporting Agencies | 151 Escape |
| 34 Armed Services | 74 Champerty and Maintenance | 110 Criminal Law | 152 Escheat |
| 35 Arrest | 75 Charities | 111 Crops | 154 Estates in Property |
| 36 Arson | 76 Chattel Mortgages | 113 Customs and Usages | 156 Estoppel |
| 37 Assault and Battery | 76A Chemical Dependents | 114 Customs Duties | 157 Evidence |
| | 76D Child Custody | 115 Damages | 158 Exceptions, Bill of |
| | 76E Child Support | | 159 Exchange of Property |

TR-0179834

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 160 | Exchanges | 203 | Homicide | 250 | Mandamus | 302 | Pleading |
| 161 | Execution | 205 | Husband and Wife | 251 | Manufactures | 303 | Pledges |
| 162 | Executors and Administrators | 205H | Implied and Constructive Contracts | 252 | Maritime Liens | 305 | Possessory Warrant |
| 163 | Exemptions | 206 | Improvements | 253 | Marriage | 306 | Postal Service |
| 164 | Explosives | 207 | Incest | 256 | Mayhem | 307 | Powers |
| 165 | Extortion and Threats | 208 | Indemnity | 257 | Mechanics' Liens | 307A | Pretrial Procedure |
| 166 | Extradition and Detainers | 209 | Indians | 257A | Mental Health | 308 | Principal and Agent |
| 167 | Factors | 210 | Indictment and Information | 258A | Military Justice | 309 | Principal and Surety |
| 168 | False Imprisonment | 211 | Infants | 259 | Militia | 310 | Prisons |
| 169 | False Personation | 212 | Injunction | 260 | Mines and Minerals | 311 | Private Roads |
| 170 | False Pretenses | 213 | Innkeepers | 265 | Monopolies | 311H | Privileged Communications and Confidentiality |
| 170A | Federal Civil Procedure | 216 | Inspection | 266 | Mortgages | 313 | Process |
| 170B | Federal Courts | 217 | Insurance | 267 | Motions | 313A | Products Liability |
| 171 | Fences | 218 | Insurrection and Sedition | 268 | Municipal Corporations | 314 | Prohibition |
| 172 | Ferries | 219 | Interest | 269 | Names | 315 | Property |
| 174 | Fines | 220 | Internal Revenue | 271 | Ne Exeat | 315H | Prostitution |
| 175 | Fires | 221 | International Law | 272 | Negligence | 315P | Protection of Endangered Persons |
| 176 | Fish | 222 | Interpleader | 273 | Neutrality Laws | 315T | Public Amusement and Entertainment |
| 177 | Fixtures | 223 | Intoxicating Liquors | 274 | Newspapers | 316E | Public Assistance |
| 178 | Food | 224 | Joint Adventures | 275 | New Trial | 316H | Public Contracts |
| 179 | Forcible Entry and Detainer | 226 | Joint Tenancy | 276 | Notaries | 317 | Public Lands |
| 180 | Forfeitures | 227 | Judges | 277 | Notice | 317A | Public Utilities |
| 181 | Forgery | 228 | Judgment | 278 | Novation | 318 | Quieting Title |
| 183 | Franchises | 229 | Judicial Sales | 279 | Nuisance | 319 | Quo Warranto |
| 184 | Fraud | 230 | Jury | 280 | Oath | 319H | Racketeer Influenced and Corrupt Organizations |
| 185 | Frauds, Statute of | 231 | Justices of the Peace | 281 | Obscenity | 320 | Railroads |
| 186 | Fraudulent Conveyances | 231E | Kidnapping | 282 | Obstructing Justice | 321 | Rape |
| 187 | Game | 231H | Labor and Employment | 283 | Officers and Public Employees | 322 | Real Actions |
| 188 | Gaming | 233 | Landlord and Tenant | 284 | Pardon and Parole | 323 | Receivers |
| 189 | Garnishment | 234 | Larceny | 285 | Parent and Child | 324 | Receiving Stolen Goods |
| 190 | Gas | 237 | Libel and Slander | 286 | Parliamentary Law | 325 | Recognizances |
| 191 | Gifts | 238 | Licenses | 287 | Parties | 326 | Records |
| 192 | Good Will | 239 | Liens | 288 | Partition | 327 | Reference |
| 193 | Grand Jury | 240 | Life Estates | 289 | Partnership | 328 | Reformation of Instruments |
| 195 | Guaranty | 241 | Limitation of Actions | 290 | Party Walls | 330 | Registers of Deeds |
| 196 | Guardian and Ward | 242 | Lis Pendens | 291 | Patents | 331 | Release |
| 197 | Habeas Corpus | 245 | Logs and Logging | 294 | Payment | 332 | Religious Societies |
| 198 | Hawkers and Peddlers | 246 | Lost Instruments | 295 | Penalties | 333 | Remainders |
| 198H | Health | 247 | Lotteries | 296 | Pensions | 334 | Removal of Cases |
| 200 | Highways | 248 | Malicious Mischief | 297 | Perjury | 335 | Replevin |
| 201 | Holidays | 249 | Malicious Prosecution | 298 | Perpetuities | | |
| 202 | Homestead | | | 300 | Pilots | | |

TR-0179835

| | | | | | | |
|---|---|---|---|---|---|---|---|
| 336 | Reports | 353 | Sheriffs and Constables | 372 | Telecommunications | 395 | United States Marshals |
| 337 | Rescue | 354 | Shipping | 373 | Tenancy in Common | 396 | Unlawful Assembly |
| 338 | Reversions | 355 | Signatures | 374 | Tender | 396A | Urban Railroads |
| 339 | Review | 356 | Slaves | 375 | Territories | 398 | Usury |
| 340 | Rewards | 356A | Social Security and Public Welfare | 378 | Time | 399 | Vagrancy |
| 341 | Riot | 357 | Sodomy | 379 | Torts | 400 | Vendor and Purchaser |
| 342 | Robbery | 358 | Specific Performance | 380 | Towage | 401 | Venue |
| 343 | Sales | 359 | Spendthrifts | 381 | Towns | 402 | War and National Emergency |
| 344 | Salvage | 360 | States | 382T | Trademarks | 403 | Warehousemen |
| 345 | Schools | 361 | Statutes | 384 | Treason | 404 | Waste |
| 346 | Scire Facias | 362 | Steam | 385 | Treaties | 405 | Water Law |
| 347 | Seals | 363 | Stipulations | 386 | Trespass | 406 | Weapons |
| 348 | Seamen | 365 | Submission of Controversy | 387 | Trespass to Try Title | 407 | Weights and Measures |
| 349 | Searches and Seizures | 366 | Subrogation | 388 | Trial | 408 | Wharves |
| 349A | Secured Transactions | 367 | Subscriptions | 390 | Trusts | 409 | Wills |
| 349B | Securities Regulation | 368 | Suicide | 391 | Turnpikes and Toll Roads | 410 | Witnesses |
| 350 | Seduction | 369 | Sunday | 392 | Undertakings | 411 | Woods and Forests |
| 350H | Sentencing and Punishment | 370 | Supersedeas | 392T | Unemployment Compensation | 413 | Workers' Compensation |
| 351 | Sequestration | 371 | Taxation | 393 | United States | 414 | Zoning and Planning |
| 352 | Set-Off and Counterclaim | | | 394 | United States Magistrates | 450 | Merit Systems Protection |

TR-0179836

© 2012 Thomson Reuters. All rights reserved. Published 8/12. L-361255.

The trademarks used herein are the trademarks of their respective owners.
West trademarks are owned by West Publishing Corporation.



**TR-0179837**