IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
)
)
Plaintiffs and )   C.A. No. 20-613 (SB)
Counterdefendants, )
)
v. )   **REDACTED - PUBLIC VERSION**
)
ROSS INTELLIGENCE INC., )
)
Defendant and )
Counterclaimant. )

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
<u>DIRECT COPYRIGHT INFRINGEMENT AND RELATED DEFENSES</u>**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
Jeremy King
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mflynn@morrisnichols.com

Yungmoon Chang
Allyn Belusko
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(213) 680-8400

*Attorneys for Plaintiffs Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

Original filing date: October 1, 2024
Redacted filing date: October 8, 2024

## CONTENTS

SUMMARY OF THE ARGUMENT ............................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ...................... 9

STATEMENT OF FACTS ............................................................................ 10

    A.    Plaintiffs and Westlaw Content .................................................. 10

    B.    ROSS and Its Copying of Westlaw ............................................. 12

    C.    Despite Repeated Refusals, ROSS Obtained Access to Westlaw Through LegalEase ......................................................... 14

    D.    ROSS's Copying of Westlaw Content .......................................... 16

ARGUMENT .......................................................................................... 17

I.    ROSS IS DIRECTLY LIABLE FOR COPYRIGHT INFRINGEMENT AS A MATTER OF LAW .............................................................................. 17

    A.    Plaintiffs Own a Valid Copyright in Westlaw ............................... 17

    B.    ROSS Copied Undisputedly Original West Headnotes ...................... 18

    1. Actual Copying Is Undisputed ................................................... 18

    2. Substantial Similarity Is Satisfied ............................................. 18

    3. There Is Substantial Similarity Between the Copied Work and Protected Elements ... 25

II.    ROSS'S DEFENSES TO COPYRIGHT INFRINGEMENT FAIL AS A MATTER OF LAW ............................................................................. 27

    A.    Innocent Infringement ............................................................. 27

    B.    Copyright Misuse ................................................................... 30

III.    CONCLUSION ....................................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Computs., Inc. v. Franklin Comput. Corp.*,
714 F.2d 1240 (3d Cir. 1983)................................................................23

*Arista Recs., Inc. v. Flea World, Inc.*,
356 F. Supp. 2d 411 (D.N.J. 2005) ........................................................33

*Ass'n. of Am. Med. Colls. v. Mikaelian*,
No. 83 Civ. 02745, 1986 WL 332 (E.D. Pa. Mar. 18, 1986)...................25

*Broad. Music, Inc. v. Moor-L., Inc.*,
484 F. Supp. 357 (D. Del. 1980)............................................................17

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*,
44 F.3d 61 (2d Cir. 1994)......................................................................20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................17

*ConsultNet Computing, Inc. v. Moore*,
No. 04 Civ. 03485, 2007 WL 2702446 (E.D. Pa. Sept. 12, 2007) .........18

*Dam Things from Den. v. Russ Berrie & Co., Inc.*,
290 F.3d 548 (3d Cir. 2002)............................................................18, 25

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
307 F.3d 197 (3d Cir. 2002)..................................................................31

*Eckes v. Card Prices Update*,
736 F.2d 859 (2d Cir. 1984)..................................................................20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
499 U.S. 340 (1991) ..................................................................... *passim*

*FMC Corp. v. Control Sols., Inc.*,
369 F. Supp. 2d 539 (E.D. Pa. 2005) ....................................................20

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
930 F.2d 277 (3d Cir. 1991)..................................................................17

*In Harper & Row, Publ'rs, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)..............................................................................26

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ...........................................................................................17

*Maverick Recording Co. v. Harper*,
　598 F.3d 193 (5th Cir. 2010) ....................................................................27, 29

*Mercer v. Richmond*,
　152 Va. 736 (1929) ...............................................................................................2

*Mon Cheri Bridals, Inc. v. Wen Wu*,
　383 F. App'x 228 (3d Cir. 2010) .........................................................................18

*Morton Salt Co. v. G. S. Suppiger Co.*,
　314 U.S. 488 (1942) ..............................................................................................9

*In re Napster, Inc. Copyright Litig.*,
　191 F. Supp. 2d 1087 (N.D. Cal. 2002) .............................................................31

*Nielsen Co. (US), LLC v. Truck Ads, LLC*,
　No. 08 Civ. 06446, 2011 WL 221838 (N.D. Ill. Jan. 24, 2011) .....................31, 32

*Open Source Yoga Unity v. Choudhury*,
　No. 03 Civ. 03182, 2005 WL 756558 (N.D. Cal. Apr. 1, 2005) ........................32

*Peer Int'l Corp. v. Pausa Recs.*,
　909 F.2d 1332 (9th Cir. 1990) ...........................................................................28

*Playboy Enters., Inc. v. Starware Publ'g. Corp.*,
　900 F. Supp. 433 (S.D. Fla. 1995) .....................................................................27

*Range Rd. Music, Inc. v. East Coast Foods, Inc.*,
　668 F. 3d 1148 (9th Cir. 2012) ..........................................................................17

*Reed v. Ezelle Inv. Props. Inc.*,
　353 F. Supp. 3d 1025 (D. Or. 2018) ...................................................................30

*Seymour v. Richardson*,
　194 Va. 709 (1953) ...........................................................................................1, 2

*Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*,
　931 F.3d 215 (3d Cir. 2019) ...............................................................................25

*TD Bank N.A. v. Hill*,
　928 F.3d 259 (3d Cir. 2019) ...........................................................17, 22, 24, 26

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
　853 F.3d 980 (9th Cir. 2017) .............................................................................17

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
    342 F.3d 191 (3d Cir. 2003)..................................................................9, 31

*West Publ'g Co. v. Mead Data Ctr., Inc.*,
    799 F.2d 1219 (8th Cir. 1986) ...........................................................20, 21

*Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*,
    797 F.2d 1222 (3d Cir. 1986)...................................................................24

**Statutes**

17 U.S.C. § 101 ...........................................................................................3

17 U.S.C. § 401(d) ..................................................................................8, 27

17 U.S.C. § 410(c) ................................................................................17, 18

17 U.S.C. § 504(c)(2)............................................................................27, 28

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................17

**Other Authorities**

Nimmer on Copyright ............................................................................28, 31

Peter A. Hook & Kurt R. Mattson, *Surprising Differences: An Empirical Analysis*
    *of LexisNexis and West Headnotes in the Written Opinions of the 2009*
    *Supreme Court Term,* 109 LAW LIBR. J. 557, 560 (2017) ........................22

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corp. ("West") (collectively, "Plaintiffs") move for partial summary judgment on their direct copyright infringement claim against Defendant ROSS Intelligence Inc. ("ROSS"), as well as ROSS's merger, scènes à faire, innocent infringement, and copyright misuse defenses.[1]

## SUMMARY OF THE ARGUMENT

Westlaw is a highly creative, complex legal research platform that enables judges, lawyers, and researchers to search, cull, and analyze a massive number of judicial opinions and statutes quickly and effectively.  Westlaw's success is due, in no small part, to the creative contributions of Plaintiffs' highly skilled and trained attorney-editor team.  That team creates "editorial enhancements," *e.g.*, original editorial content, which annotates, summarizes, synthesizes, and organizes the law.  For example, Plaintiffs' attorney-editors consider and make decisions about: a) which judicial opinions to annotate and enhance; b) how many case headnotes ("West Headnotes") to create for a given judicial opinion; c) which legal concepts should be included in the West Headnotes out of the many possible options in the underlying decision; d) the selection and arrangement of Headnotes to underlying case passages; e) how the West Headnotes should be worded; and f) how the West Headnotes should be classified in the West Key Number System (the "WKNS") (together with West Headnotes, original synopses and other editorial enhancements, the "Westlaw Content").

For example, a West Headnote from *Seymour v. Richardson*, 194 Va. 709 (1953) reads:

> A "cause of action" accrues to a person when that person first comes to a right to bring action and consists of act or omission constituting violation of duty but differs from a "right of action" which is the right to bring suit.

This sample West Headnote is the result of a myriad of creative decisions.  Initially, Plaintiffs'

---

[1] Plaintiffs are moving concurrently for summary judgment on ROSS's fair use defense.

attorney-editors analyzed *Seymour* and selected it to receive editorial enhancements.   After analyzing the judicial opinion, Plaintiffs' attorney-editors selected the legal point in the West Headnote as one worthy of being so (and also decided to select nine other legal points for West Headnotes in that case).   Next, Plaintiffs' attorney-editors specifically chose to phrase the above West Headnote using particular language, in lieu of the long, dense paragraph of legal text in the underlying judicial opinion:

| **West Headnote** | **Corresponding passage from original judicial opinion** |
|---|---|
| A 'cause of action' accrues to a person when that person first comes to a right to bring action and consists of act or omission constituting violation of duty but differs from a 'right of action' which is the right to bring suit. | The Anderson case, however, was dealing with the effect of the statutes of limitation on the right of action. 'It is frequently the case that more or less confusion arises from a failure to distinguish between the cause and the right of action. 'A cause of action is said to accrue to any person when that person first comes to a right to bring an action. There is, however, an obvious distinction between a cause of action and a right, though a cause of action generally confers a right. * * *.'' Lewis' Adm'r v. Glenn, Trustee, 84 Va. 947, 979 (1888). *Mercer v. Richmond,* **80 152 Va. 736, 744 (1929). In the latter case the question was whether the sixty-day notice of injury required by city ordinance to be given before a suit could be maintained related to the date of the injury or to the qualification of the personal representative of the injured person whose death resulted from the injury. The court said that it agreed with the principle stated in the Anderson case, and other cases cited, that the right of action which accrued to the administrator upon the death of his intestate was entirely different from the right of action which accrued to the injured party, but that the right of action referred to in those cases 'is entirely different from the cause of action.' |

In other words, Plaintiffs' attorney-editors identified and selected the key legal concepts from across the entire paragraph to form a succinct, coherent takeaway.  Next, Plaintiffs' attorney-editors selected and arranged the West Headnote with the corresponding judicial passage discussing the legal point contained in the West Headnote.  There is a reason Plaintiffs hire attorneys to do this work; the selection of which concepts to headnote, how many headnotes to create, and which case passages to link those concepts to requires judgment, choice, and skill.  It also requires judgment, choice, and skill to decide how to then classify that West Headnote within the West Key Number System.  A single West Headnote could be classified as pertaining to one or more topics in Plaintiffs' complex and ever evolving WKNS.  By classifying the West Headnote in the WKNS, a researcher can easily find myriad other cases discussing a similar point.  Indeed, this selection and arrangement is an integral part of Plaintiffs' copyright in their original selection and arrangement (17 U.S.C. § 101) of West Headnotes with corresponding case passages.  This set of creative choices, reflecting the attorney-editors' judgment, choice, and skill, is *precisely* what make the West Headnotes and West Key Number System so valuable.

Given the value of Plaintiffs' myriad editorial contributions, it is unsurprising that when ROSS decided to bring a legal research platform to market ("ROSS Platform"), it sought—repeatedly—and was denied—repeatedly—access to Westlaw.  ROSS had initially purchased a large collection of judicial opinions from a different vendor.  But merely having those judicial opinions was not enough.  To actually train the artificial intelligence ("AI") it planned to use for the ROSS Platform, ROSS wanted ***selected***, lucid syntheses of legal points, topically arranged and ***connected*** to relevant portions of judicial opinions.  It was as if ROSS had the cases of a law school casebook, but it did not have an outline—ideally from someone on law review—breaking down, synthesizing, and highlighting the cases.  For that content, rather than do the work and analysis

itself, ROSS capitalized on the judgment, choice, and skill of Plaintiffs' attorney-editors to copy Westlaw. ROSS, via third-party LegalEase, copied troves of Plaintiffs' original content, including the proprietary WKNS, West Headnotes, original synopses, and other editorial enhancements to create 25,000 training memoranda (the "Bulk Memos"), which ROSS then copied multiple times to train its AI. As an example, a West Headnote with corresponding Bulk Memo question is shown below:

| **West Headnote** | **Bulk Memo Question** |
|---|---|
| Act of state doctrine requiring courts to avoid inquiries respecting validity of acts executed by foreign sovereign within its territory reflects fundamental notions of separation of powers and urges nation to conduct foreign relations with unified voice of executive branch. | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████ |

Ex. 21[2] (Ex. 21 to Frederiksen-Cross Deposition) at 15. As confirmed by the near perfect overlap between the West Headnote and Bulk Memo question, this Court has found (and ROSS had conceded), there was ***actual*** copying. The remaining narrowed issues of direct copyright infringement, merger, scènes à faire, innocent infringement, and copyright misuse should similarly be found in Plaintiffs' favor for the following reasons.

   ***First***, ROSS is directly liable for copyright infringement as a matter of law, as the undisputed facts satisfy the two elements of a copyright claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). As to the ***first*** element, there is no dispute that

---

[2] All exhibits are attached to the concurrently filed Declaration of Miranda Means, dated October 1, 2024, unless stated otherwise.

Thomson Reuters has been granted numerous copyright registrations in Westlaw by the U.S. Copyright Office.  Thus, its copyrights therein are entitled to a presumption of validity, and Westlaw readily meets (and far exceeds) the low threshold for protection set out in *Feist*.

As to the ***second*** element, it has two subparts: actual copying and substantial similarity. As to actual copying, this Court has already found (and ROSS had admitted) that Westlaw Content was actually copied to create the Bulk Memos, which ROSS further copied to train its AI.  D.I. 547 (the "Opinion" or "Op.").  As to substantial similarity, ROSS admits that it copied *protectible* content, namely, original West Headnotes created within the time period for copyright protection.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████   These admissions alone suffice to find direct copyright infringement as a matter of law, as all three elements of the claim are met and ROSS's copying is more than *de minimis*.  The record also reflects as a matter of law that the entirety of the copied Westlaw Content is protectible, as the West Headnotes, WKNS, and selection and arrangement of West Headnotes to corresponding case passages easily satisfies the low bar for creativity, both as individual elements and as a whole.[3]

---

[3] Though ROSS seeks to focus the substantial similarity analysis on individual Headnotes, such an argument misstates the breadth of Plaintiffs' claim, which goes far beyond individual West Headnotes or synopses to encompass the myriad creative choices and judgment of Plaintiffs' attorney-editors in selecting and arranging the Headnotes, linking them to selected portions of the opinions, and then classifying them.  In other words, ROSS's argument that individual West Headnotes are not protectible because they sometimes have the same language of the judicial opinion fails, because it ignores the protectability of the West Headnote as part of the selection and arrangement at large of the group of West Headnotes ROSS copied.  It is this selection and arrangement of West Headnotes to case passages that was so valuable to ROSS and what it copied

Faced with this undisputed evidence, ROSS asserts two doctrines to avoid liability: merger and scènes à faire:

- As to the <u>merger doctrine</u>, expression cannot be copyrighted when there is only one way of expressing a particular idea.  Here, the undisputed facts show that there were ***multiple*** ways of expressing the Westlaw Content, including by: selecting different judicial opinions to enhance, breaking down and highlighting aspects of a case, including a different number of West Headnotes (as Lexis does), wording the West Headnotes differently, selecting and arranging the West Headnotes to corresponding case passages, and classifying the West Headnotes differently within the West Key Number System.  In other words, there is no one way to choose and design a key takeaway of law.  Plaintiffs' attorney-editors choose which topics and sub-topics to include, and how to organize and classify cases within that structure.  And they constantly update the topics as new cases constantly become available.  The existence of these different ways to express the idea of summarizing key points and classifying legal opinions is confirmed by the fact that other legal research platforms, such as Lexis, have different editorial content and ways of organizing the law.

- As to the <u>scènes à faire doctrine</u>, it provides that incidents, characters, or settings that are indispensable to the treatment of a particular topic cannot be protected.  ROSS argues the West Headnotes recite legal principles mandated and customary to the law,

---

to train its AI how to provide answers.  Ex. 2 (Arruda Tr.) at 275:16–276:12 (Q: "███████████████████████ ████████████████████████████████████████████████████████ A: ████████████ ██████████████████████████████████████████████████████████████████████████ "); Ex. 16 (Van der Heijden Tr.) at 286:9–13 (A: █████████████████████████████████████ Q: ████████████████████████ A: ████ ").  ROSS's defense fundamentally mischaracterizes and ignores Plaintiffs' selection and arrangement argument and thus errs.  At best, ROSS's argument is relevant to damages.

6

and that the key numbers are necessary and customary to the law.  But West Headnotes and key numbers are not mandatory or customary—judicial opinions, when published, do ***not*** include West Headnotes or key numbers.  That editorial content, which results from the creativity and judgment of Plaintiffs' attorney-editors, is wholly Plaintiffs' invention.  ROSS's argument ignores the proper context for the protectability of West Headnotes and the West Key Number System.  The protectability of the West Headnotes does not lie merely in the wording of the West Headnote itself, or the legal principle contained therein.  Instead, the protectability lies in the ***decision*** to select that particular point from a judicial opinion to become a West Headnote (or to combine various points in a case), and how to word the specific West Headnote (including whether to mirror any language from the judicial opinion), as well as how to select and arrange the West Headnote with a case passage from the decision.  Similarly, the West Key Number System classifies over 400 topics and sub-topics into an overall structure, and Plaintiffs' attorney-editors decide how opinions are classified within that structure.  ROSS's myopic view improperly limits the protectability of each by tactically ignoring the scope of West Headnotes and the West Key Number System.  Once put properly in context, it becomes clear that Plaintiffs do not seek protection of legal principles or legal topics.

Thus, neither doctrine applies here as a matter of law.

***Second***, to minimize or escape liability, ROSS asserts it is an innocent infringer, and that Plaintiffs' assertions amount to copyright misuse.  As to ROSS's innocent infringer defense, if ROSS is determined to be an infringer, its innocent infringer defense fails as a matter of law, for three reasons:

- <u>First</u>, innocent infringement is not a defense to liability, as copyright infringement is a strict liability statute.  Rather, lack of willfulness is relevant to damages, as it permits the statutory damages assessed against an infringer to be reduced to $200 per infringed work, if the elements are satisfied.

- <u>Second</u>, 17 U.S.C. § 401(d) precludes an innocent infringer defense "[i]f a notice of copyright … appears on the published copy or copies to which a defendant in a copyright infringement suit had access."  Given a notice of copyright appears on Westlaw, and given the record reflects the notice of copyright was circulated on internal ROSS emails, the defense is unavailable.

- <u>Third</u>, if ROSS is determined to be an infringer, it cannot satisfy its burden of showing: (1) it had a good-faith belief in the innocence of its conduct, and (2) that such a belief was reasonable.  ROSS repeatedly sought access to Westlaw and was repeatedly refused in no uncertain terms, including by Thomson Reuters directly communicating to ROSS that it does not sell its legal research products to direct competitors, yet it decided its surreptitious copying scheme anyway.

For any of these reasons, ROSS's innocent infringer defense should be denied as a matter of law. ROSS is the opposite of innocent.

As to ROSS's copyright misuse defense, ROSS's theory of misuse is unsupported by the law, and undermined by its own admissions.  The Third Circuit has not set forth an element-by-element test for misuse, though it has recognized the doctrine may traditionally apply in the context of anticompetitive conduct, and examined it—but found the doctrine inapplicable—in the context of licenses restricting licensees' ability to derogate a licensor.  In doing so, the Third Circuit recognized that the underlying rationale behind misuse is that the "holder[] of an exclusive

8

privilege … may not claim protection of his grant by the courts where it is being used to subvert that policy," *i.e.*, where a copyright holder seeks to enforce rights outside the scope of copyright protection. *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 204 (3d Cir. 2003) (citing *Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 491 (1942)). Here, ROSS asserts that Plaintiffs prevent the separation of Key Numbers and West Headnotes from government edicts, thereby preventing the public's access to the law. But in depositions, ROSS's witnesses testified that ROSS in fact had obtained judicial opinions from sources **other than Plaintiffs**. Thus, ROSS's assertion that Plaintiffs' Key Numbers and West Headnotes are inextricably intertwined with public judicial opinions, and thereby prevent the public from accessing the underlying judicial opinions, is factually untrue. Moreover, courts across the country have found that there is no copyright misuse when a defendant can freely review public data, or create its own selection and arrangement based on that data, as is the case here. Nor is it copyright misuse for a holder to enforce its copyright rights.

For these reasons, Plaintiffs' direct copyright infringement claims, and ROSS's related defenses, should be decided on summary judgment as a matter of law.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs commenced this lawsuit on May 6, 2020, asserting copyright infringement and tortious interference with contract. D.I. 1 (Compl.). Expert discovery closed on November 11, 2022. Thomson Reuters moved for summary judgment on copyright infringement and the parties cross-filed for summary judgment on tortious interference and fair use. This Court issued an order and opinion granting partial summary judgment on September 25, 2023 (D.I. 547–548). This Court granted summary judgment on actual copying, and granted summary judgment to Plaintiffs on ROSS's defenses other than fair use. D.I. 548. Following this Court's orders and opinions

regarding *Daubert* motions, (D.I. 549–550, 633), the final pretrial conference was held on August 6, 2024, at which this Court issued oral orders regarding motions *in limine*, granting-in-part Plaintiffs' motion to exclude evidence concerning ROSS's antitrust counterclaims, granting Plaintiffs' motion to exclude evidence regarding ROSS purportedly ceasing operations due to this lawsuit, and denying the remaining motions (D.I. 644).

In an August 20, 2024 status conference, this Court addressed the copyrightability of and infringement of West Headnotes on which Plaintiffs had moved for summary judgment. Following another status conference on August 22, 2024, this Court continued trial, permitted Plaintiffs to renew their motions for summary judgment, and Defendant to renew its cross-motion for summary judgment on fair use (D.I. 663). On September 27, 2024, this Court granted summary judgment in Plaintiffs' favor on ROSS's antitrust counterclaims. D.I. 669.

## STATEMENT OF FACTS

### A.     Plaintiffs and Westlaw Content

Plaintiffs are well-known industry leaders in online legal research. D.I. 256 ("Oliver Decl.," dated December 21, 2022) ¶ 3. As explained by Laurie Oliver, Thomson Reuters' U.S. Cases Editorial Manager, Plaintiffs' online legal research platform, Westlaw, offers subscribers access to a large collection of annotated judicial opinions searchable through keywords, natural language, and/or Boolean queries. *Id.* Westlaw's attorney-editors create helpful "editorial enhancements," including synopses at the beginning of judicial opinions and West Headnotes, which identify and synthesize key issues, and holdings. *Id.* ¶ 4. West's attorney-editors draft the specific wording of the West Headnotes, decide which concepts and key points of law should be included therein, make choices about which judicial opinions to annotate with West Headnotes and other editorial enhancements, how many West Headnotes to create for a given judicial opinion,

and how to select and arrange West Headnotes with case passages, among other choices. *Id.* ¶¶ 4–6; *see also* Second Declaration of Laurie Oliver, dated September 30, 2024, ("2d Oliver Decl.") ¶¶ 3–5.

As discussed by Erik Lindberg, Thomson Reuters' Senior Director, Westlaw Product Management, West's attorney-editors also decide which "Key Numbers"—*i.e.*, more granular legal topics—are assigned to West Headnotes for purposes of integrating the West Headnotes and related judicial opinions into Plaintiffs' classification system, the WKNS.  Ex. 8 (Lindberg Tr.) 74:9–22, 75:21–76:9, 116:14–119:6; Ex. 88 (TR-0179847) (showing WKNS); 2d Oliver Decl. ¶¶ 6–10.  After West's attorney-editors make initial recommendations of where a West Headnote might be placed in the WKNS, it is assigned to one or more "classifiers," attorney-editors who officially assign Key Numbers to the West Headnote.  Oliver Decl. ¶ 10.  ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████  *Id.*

¶ 11.  Once a Key Number is assigned, the West Headnote judicial opinions are added to the WKNS under that Key Number. *Id.* ¶ 8.  ████████████████████████

████████████████████████████████████████████████

Ex. 7 (Leiter Tr.) 38:20–39:16, 97:6–14.  For example, Lexis may choose a different number of headnotes for a given case and may write them differently.  And of course, some companies may simply sell the judicial opinions without headnotes at all, such as Casemaker and Fastcase.  Ex. 2 (Arruda Dep. Tr.) at 274:19–23 ████████████████████████

████████████████████████.

11

Because new judicial opinions are issued every day, and the law is constantly evolving, Plaintiffs' attorney-editors regularly create, revise, and update West Headnotes and the WKNS. Oliver Decl. ¶ 7. ███████████████████████████████████████

████████████ Exs. 10 (Martens Tr.) 274:4–13; 81 (TR-0033982) (Westlaw Copyright Registrations); 80 (TR-0003138) (Westlaw Copyright Deposit Copies). ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ Exs. 82 (TR-0034557) at 558; 89 (TR-0359959) (Business Transfer Agreement); 10 (Martens Tr.) 162:4–17; 202:22–203:4. Plaintiffs expressly do not claim copyrights in material prepared by a United States Government officer or employee as a part of that person's official duties, including government edicts, legislative enactments, judicial opinions, or similar types of official legal materials. Ex. 81 (TR-0033982).

## B.    ROSS and Its Copying of Westlaw

██████████████████████████████ Ex. 2 (Arruda Tr.) 11:18–12:4.  It marketed the platform in part as using AI to allow users to search for legal content by posing questions in natural language.  Ex. 94 (https://blog.rossintelligence.com/post/how-natural-language-search-changing-face-of-legal-research).  As ROSS's Chief Technology Officer and 30(b)(6) witness, Jimoh Ovbiagele, admitted, ██████████████████████████████████████

███████████████████████████████████████████████████

████████████████ Exs. 13 (Ovbiagele Tr.) 48:23–50:9; 73 (ROSS-010271831). ████████

███████████████████████████████████████████████████

████████. Exs. 16 (van der Heijden 30(b)(6) Tr.) 239:17–19; 25 (Krein Op. Rpt.) ¶ 149. ████████

as explained by ROSS's CEO, Andrew Arruda, ███████████████████████████

████████████████████████████████. Ex. 2 (Arruda Tr.) 275:23–276:12.

        Thus, as early as ██████████████████████████████████████

█████████████. Exs. 55 (ROSS-003391075); 13 (Ovbiagele Tr.) 204:3–7 (Q. "████

████████████████████████████████████████ A. █████████████████████

████████████████████████████████████████████████████████"); 

56 (ROSS-003391076). ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████. Exs. 76 (ROSS-023032254) (████████████████

████████████); 54 (ROSS-003390881) (████████████████████████); 16 

(van der Heijden 30(b)(6) Tr.) 101:19–103:5 (████████████████████████

████████████████████).  Nevertheless, on ████████████████████

████████████████████████████████████████. *See* Ex. 53 (ROSS-

003390773). ████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████. *See* Exs. 50 (ROSS-003390233); 52 (ROSS-003390772) (████

███████████████████████████████████). ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Exs. 51 (ROSS-003390563); 31 ████████████████████.

████████████████████████████. Ex. 16 (van der Heijden 30(b)(6) Tr.) 142:9–

143:11 ██████████████████████████).[4]

### C. Despite Repeated Refusals, ROSS Obtained Access to Westlaw Through LegalEase

ROSS continued to seek to access Westlaw, despite having been unsuccessful a number of

times. ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████. Ex. 71 (ROSS-010164290).[5]  From ████████████████████

███████████████████████████████████████. Exs. 18 (Whitehead Tr.) 183:14–19

(██████████████████████████); 6 (Hafeez Tr.) 41:3–17, 188:8–12.

ROSS acknowledged the response and scope of its copying from Westlaw to create the

data set it used to train its AI.  Specifically, ███████████████████████████████

████████████████████████████. Exs. 60 (ROSS-003487472) (████████████

---

[4] In addition to being fully aware that what it was doing was improper with respect to seeking access to Westlaw, ROSS's communications regarding LexisNexis reflect it was aware that it was industry practice to prohibit access to legal research platforms to competitors.  Specifically, on ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████ *See* Ex. 72 (ROSS-010164415) at 416. ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████. *Id.*
████████. *Id.* ████████████████████████████████████████. Ex. 74
(ROSS-010373855). ████████████████████████████████████████████
████████████████████████████████. Ex. 99 (ROSS-010244921).

[5] At the same time, ███████████████████████████████████████████
████████████████████████████████████. Ex. 61 (ROSS-003610162) at 163
████████████████████████████████████████████████████████
████████████████).



(emphasis added)); 13 (Ovbiagele Tr.) 236:9–237:2. ██████████████████

█████████████████████████████████████████. Ex. 45

(ROSS-000304771). ████████████████████████████████████

██████████████████████████████████████████████████

██████. Exs. 44 (ROSS-000304769) (██████████████████); 40 (ROSS-000175054); 38

(LEGALEASE-00171828); 44 (ROSS-000304769); 13 (Ovbiagele Tr.) 75:12–77:23 (██████

█████████████████████████████████████████████████

████████████████).

It is undisputed that, in order to create the Bulk Memos, LegalEase (and subcontractor,

Morae Global) copied Westlaw Content from the Westlaw platform. *See* D.I. 547 at 8–9; *see also*

Exs. 84 (TR-0048632) (██████████████████████████); 6 (Hafeez Tr.)

34:1–3 ("Q. █████████████████████████ A. ███████"),

125:24–126:2 ("Q. ██████████████████████████████████

████████████ A. ██████"); 36 (LEGALEASE-00078065) (████████████████

████████████); 37 (LEGALEASE-00093066) (██████████); 25 (Krein Op. Rpt.) ¶¶ 103–

114; 85 (TR-0055362) (████████████████████); 4 (Cahn Tr.) 195:14–19 ("Q.

████████████████████████████████████████████████

████████████████████████████████████████████████

A. ██ ").

***First***, ████████████████████████████████████████

████████████████████████████████████████████

██████████. *See, e.g.*, Exs. 36 (LEGALEASE-00078065) (████████

██████); 37 (LEGALEASE-00093066) (████████); 25 (Krein Op. Rpt.) ¶¶ 103–114;

85 (TR-0055362) (████████████████); 6 (Hafeez Tr.) 66:4–17. ***Second***, ██

████████████████████████████████████████.

Exs. 37 (LEGALEASE-00093066) (████████); 36 (LEGALEASE-00078065) (██

████████████████); 39 (R-LEGALEASE-00189134); 34 (TR-0076478).

***Third***, ██████████████████████████████████████

████████████████████████████████████

██████. Exs. 37 (LEGALEASE-00093066) (████████); 36 (LEGALEASE-00078065)

(██████████████); 39 (R-LEGALEASE-00189134). ***Finally***, ██

████████████████████████████████████████

██████. Exs. 87 (TR-0178588); 86 (TR-0073545); 4 (Cahn Tr.) 159:25–160:7.

## D.   ROSS's Copying of Westlaw Content

This Court has already found that ROSS copied the Westlaw Content in the Bulk Memos

to create the ROSS Platform. *See* D.I. 547 at 8–9; *see also* Exs. 24 (Frederiksen-Cross Op. Rpt.)

¶¶ 25–27; 22 (Branting Op. Rpt.) ¶¶ 31–36, 38; 62 (ROSS-003658597); 58 (ROSS-003419784);

42 (ROSS-000177723) (████████████████████

████████); 43 (ROSS-000179468) (example of downloaded case); 16 (van der Heijden

30(b)(6) Tr.) 347:13–22; 41 (ROSS-000176438).

## ARGUMENT

Summary judgment is proper where there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant informs the court "of the basis for its motion" and the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must present evidence establishing disputed issues as to material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).[6]

## I.   ROSS IS DIRECTLY LIABLE FOR COPYRIGHT INFRINGEMENT AS A MATTER OF LAW

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361. Courts regularly grant summary judgment on copyright infringement where the material facts are undisputed. *See, e.g.*, *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (affirming finding of infringement on summary judgment); *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) (same); *Range Rd. Music, Inc. v. East Coast Foods, Inc.*, 668 F. 3d 1148, 1155 (9th Cir. 2012) (same).

### A.   Plaintiffs Own a Valid Copyright in Westlaw

As to the first element, copyright registrations "constitute *prima facie* evidence of the validity of the copyright," 17 U.S.C. § 410(c), including "ownership" as well as "originality, authorship, and compliance with statutory formalities." *Broad. Music, Inc. v. Moor-L., Inc.*, 484 F. Supp. 357, 362–63 (D. Del. 1980); *see also Ford Motor Co. v. Summit Motor Prods., Inc.*, 930

---

[6] Plaintiffs allege extensive copying beyond what is moved on herein, however the entirety of the direct copyright infringement claim can be decided based on the issues presented herein, and if found in Plaintiffs' favor, there would be no issues for the jury to decide with respect to liability for direct copyright infringement.

F.2d 277, 291 (3d Cir. 1991).  Here, it is undisputed that Plaintiffs have copyright registrations in Westlaw.  D.I. 1-1 (Copyright Registrations).  Thus, Plaintiffs are entitled to a presumption of validity in Westlaw.  17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright…."); *see also Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 232 (3d Cir. 2010) ("The introduction of a certificate of registration from the Copyright Office is prima facie evidence of validity.").

**B.    ROSS Copied Undisputedly Original West Headnotes**

The second element of copyright infringement, copying, can be broken down into two sub-elements: (1) actual copying and (2) substantial similarity.  *See Dam Things from Den. v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 561–62 (3d Cir. 2002).  Both sub-elements are established here as a matter of law.

**1.    Actual Copying Is Undisputed**

As to the ***first sub-element***, this Court previously found that Plaintiffs satisfied the actual copying element as a matter of law.  D.I. 547 at 9.  In particular, this Court observed that "LegalEase admitted to copying at least portions of the headnotes directly" and, "[a]s for circumstantial evidence, Ross does not dispute that LegalEase had access to Westlaw, which included access to headnotes."  *Id.*  Indeed, as this Court found, "no reasonable jury could say that the similarities [between Plaintiffs' and ROSS's work] are not at least probative of some copying." *Id.*

**2.    Substantial Similarity Is Satisfied**

As to the ***second sub-element***, the Third Circuit considers whether there is "substantial similarity" between the copied work and "protectible elements of the original work."  *Dam Things*, 290 F.3d at 562; *ConsultNet Computing, Inc. v. Moore*, No. 04 Civ. 03485, 2007 WL 2702446, at

* 6 (E.D. Pa. Sept. 12, 2007) (focusing on whether later work was similar because it appropriated "unique expressions of the original author").

a.      The Copied Elements Are Protectible

Here, there is no dispute that ROSS copied more than a *de minimis* number of protectible elements from Westlaw.  Specifically, ROSS does not dispute 5,367 West Headnotes (which is more than *de minimis*), are protectible.  ROSS itself petitioned this Court to hold a filtration hearing for the express purpose of filtering out unprotectible elements of Plaintiffs' copyright claim.  D.I. 603.  This Court explicitly directed ROSS "to submit a list of **all** headnotes it believes are verbatim quotations, or vary trivially from verbatim quotations, of judicial opinions."  D.I. 612 (emphasis added).  In response, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████.  *See* D.I. 617.  Given this Court's instruction that ROSS include "**all**" West Headnotes it maintains are not protectable, ROSS admits that ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████.  *See* Ex. 27 (████████████████████████

████████████████████████████████).  ROSS's own software expert, Ms. Frederiksen-Cross, separately admitted ████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████.[7]  Exs. 24 (Frederiksen-Cross Op. Rpt.) 42–46; 21

---

[7] Ms. Frederiksen-Cross admitted ███████████████████████████████████████

████████████████████████████.  Ex. 24 (Frederiksen-Cross Op. Rpt.) at 42–46; 21 (Exhibit 21 to Frederiksen-Cross Deposition).  Of these, ████████████████████████████████████████████

(Ex. 21 to Frederiksen-Cross Deposition).  Thus, ROSS has admitted multiple times that more than a *de minimis* number of copied elements is protectible.

Ultimately, this Court declined to exclude any of the West Headnotes in ROSS's list, remarking that Plaintiffs "argue[] with some force … that this is not just about the individual pieces but a system or arrangement" and "a reasonable juror on so many of the [West Headnotes] that were proposed could potentially find [that they involved creativity]."  Ex. 32 (August 6, 2024 Hearing Transcript) at 56:25–58:2.

Consistent with the Court's statements, and though there is no dispute that the Undisputed Headnotes are protectible,[8] Plaintiffs note the copied Westlaw Content comprises original, protectible elements of Westlaw.  A valid copyright subsists in a work of authorship that is original, *i.e.*, "independently created by the author (as opposed to copied from other works), and … possess[ing] at least some minimal degree of creativity."  *Feist*, 499 U.S. at 345; *West Publ'g Co. v. Mead Data Ctr., Inc.*, 799 F.2d 1219, 1223 (8th Cir. 1986).  The bar for originality is not high, requiring only "some creative spark, 'no matter "how crude, humble or obvious."  *Feist*, 499 U.S. at 345; *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*, 44 F.3d 61, 65–66 (2d Cir. 1994) (compendium of car valuation information was protectible); *Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984) (decision as to which baseball cards to call "premium" was protectible); *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539 (E.D. Pa. 2005) (commercial

---

██████.  Ex. 21 (Excerpted Frederiksen-Cross Exhibit P) (██████████████████████
██████████████).  ████████████████████████████
████████████████████████████████████████████.

[8] Though Plaintiffs contend ***all*** West Headnotes easily satisfy the standard for protectability, its motion is based on the Undisputed Headnotes, which are more than sufficient to establish liability as they establish more than *de minimis* copying.

product labels were protectible); *West Publ'g*, 799 F.2d at 1224 (arrangement of opinions in a case reporter was protectible).

The copied Westlaw Content easily clears the low bar of creativity. ████████████ ███████████████████████████████████████████████████████████. *See, e.g.*, Exs. 79 (TR-0002864) (Editorial Manual); 91 (TR-0532236) (Headnote Creation Manual); 7 (Leiter Tr.) 41:1–22 (admitting West editors "write the headnotes"). Ms. Laurie Oliver, Manager, U.S. Cases Editorial, averred: "Because West Headnotes are written to be understood standing alone, West's attorney-editors write them to summarize only certain, selected facts, and explain the court's holding and parties' contentions in clear language." Dec. 21, 2022 Oliver Decl. ¶ 6; *see also id.* ¶¶ 9–11 (describing the West Key Number System as a "result of Plaintiffs' original editorial choices about how to organize, classify, and structure the voluminous body of American law"); Ex. 12 (Oliver Tr.) 227:23–228:7 (███████████████████████████████████ ████████████████████████).



Ex. 8 (Lindberg Tr.) 117:16–119:6; Ex. 103 (Aug. 11, 2024 Dr. Krein Supp. Rep.) ¶¶ 11–16.

Moreover, the selection and arrangement of West Headnotes to key corresponding case passages is likewise protectable. "These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws." *Feist*, 499 U.S. at 348. To the extent ROSS argues individual West Headnotes are not protectible because they are contained within the body of a judicial opinion, this argument runs contrary to basic copyright

tenets, and ignores the selection and arrangement of the West Headnote to a case passage.  As noted at the pre-trial conference, even if the West Headnote contains the same text as the judicial opinion, that does not matter if the selection and arrangement is original, as the Supreme Court said in *Feist*.  *Feist*, 499 U.S. at 348 ("Thus, even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement.").  Indeed, as this Court noted at the parties' August 22, 2024 hearing, "we would never say the sculpture is uncopyrightable simply because everything in it is an ordinary block of marble."  Ex. 33 (Video Recording of Aug. 22, 2024 Tr.) at 14:24–15:22; *see also* D.I. 633.  Rather, the decision of what to chip away, and what should remain, reflects the type of creativity that more than satisfies the low bar set by *Feist*.  Thus, it is undisputed that more than a *de minimis* number of copied elements is protectible, although Plaintiffs note that all copied elements are also protectible as a matter of law.

b.    Neither Merger Nor Scènes à Faire Doctrines Apply

Nor can ROSS show the copied elements are unprotectable under the merger doctrine or scènes à faire doctrine.  "The merger doctrine prohibits the copyrighting of expression when there are no or few other ways of expressing a particular idea."  *TD Bank*, 928 F.3d at 277 (citations omitted).  ROSS asserts that the West Headnotes are not copyrightable under the merger doctrine because ███████████████████████████████████████████████████████ ██████████████  Ex. 31 (ROSS Supp. Resp. to Interrogatory Nos. 11, 12) at 48.  Not so.  Nothing in the record supports that the argument that the **selection of** and **wording of** Headnotes are the ***only*** or ***one of few ways*** to express the idea of summarizing points that appear in a case.

To the contrary, a legal research platform without any headnotes could be used, such as the original Lexis platform.  *See* Exs. 7 (Leiter Tr.) 46:20–48:14; 101 (Peter A. Hook & Kurt R.

Mattson, *Surprising Differences: An Empirical Analysis of LexisNexis and West Headnotes in the Written Opinions of the 2009 Supreme Court Term,* 109 LAW LIBR. J. 557, 560 (2017)). ████ ████████████████████████████████████████████████████████████████ as ROSS's own expert admits ██████████████████████████████████████. Ex. 7 (Leiter Tr.) 38:20–39:17, 97:6–14.  Moreover, a headnote could be worded in a number of different ways, one possible way of which is reflected in the West Headnotes.  And judicial opinions contain a number of different legal points from which a West Headnote can be created, and to which the West Headnote may be selected and arranged with case passages.  These types of editorial decisions are precisely why Plaintiffs employ and train skilled attorney-editors to make creative decisions about West Headnotes, and why ROSS repeatedly sought to copy content from Westlaw (even when it already had judicial opinions).

Similarly, the West Key Number System is certainly not the only way to express the idea of classifying judicial opinions within a framework, as a number of different topical organizations can be used.  The existence of other legal search platforms, including with their own editorial content, confirms that the idea of summarizing relevant points from a case and organizing cases under different topics can be expressed in many ways, precluding application of the merger doctrine.  Exs. 16 (van der Heijden Tr.) at 122:9-122:14 (Q: ██████████████████ ████████████████████  A. ████████████  Q. ████████████████████████ ████████████  A. ████████████████████████████); 7 (Leiter Tr.) 38:20–39:17, 97:6–14 (████████████████████████████████████████████████); *Apple Computs., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983), *abrogated on other grounds by TD Bank v. Hill*, No. 12 Civ. 7188, 2015 WL 4523570, at *14 (D.N.J. July 27, 2015) ("If other methods of expressing that idea are not foreclosed as a practical matter, then there is no

merger.").

The scènes à faire doctrine is "[a] variation on the merger doctrine [that] leaves unprotected 'incidents, characters or settings which are as a practical matter indispensable in the treatment of a given topic.'" *TD Bank*, 928 F.3d at 278 (*citing Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.,* 797 F.2d 1222, 1236 (3d Cir. 1986)).  ROSS asserts that ███████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████  Ex. 31 (ROSS Supp. Resp. to Interrogatory Nos. 11, 12) at 49, 73.  While ROSS is vague as to what exactly it asserts is scènes à faire, ROSS's argument mischaracterizes what is protectable about the West Headnotes and the West Key Number System.  The protectability of the West Headnotes and the West Key Number System does not lie within the legal principle in a West Headnote or the name of a topic in the WKNS.  Instead, protectability stems not just from the wording and selection of a West Headnote and topic, but in the overall creative choices in the synthesis and summary of the law.  *Feist*, 499 U.S. at 358 ("Originality requires only that the author make the selection or arrangement independently… , and that it display some minimal level of creativity.").

This is precisely what is reflected in Plaintiffs' creative work, as no other platform offers a topical number system like Plaintiffs', such that it is not scènes à faire.  Ex. 7 (Leiter Tr.) at 239:12–15, 240:2–7; 254:18–24.  In other words, there is no one way to organize the law.  Deciding which topics and sub-topics to create requires judgment and decision-making. As an example of the myriad decisions involved in how to classify topics and sub-topics, the West Key Number for Education contains seven sub-topics, which in turn contain further sub-topics. Ex. 102 (*West Key Number System: 141E Education*, Westlaw, https://www.westlaw.com/Browse/Home/

WestKeyNumberSystem?guid=Ia43ebaf03a03b6d9b4950d1f5f15704b&transitionType=Default

&contextData=(sc.Default)&VR=3.0&RS=cblt1.0 (last visited Sept. 30, 2024)).   For example,

within the Education sub-topic Colleges and Universities, there are an additional twelve sub-

topics.  *Id.*  The topic and sub-topic levels could be organized differently to classify these nuanced

areas of the law.  Thus, the scènes à faire doctrine does not apply, because the creative decisions

needed to create the West Headnotes and WKNS confirm these are not essential elements that

must always be used.  *E.g.*, *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 223 (3d

Cir. 2019) (finding scènes à faire did not apply because although a banana costume likely needed

to be yellow, curved, and have natural ends, there were multiple ways to achieve these features).

3.   There Is Substantial Similarity Between the Copied Work and Protected Elements

Finally, there is substantial similarity between the protected elements and the Bulk Memo

questions.  In assessing similarity of the protectible elements of two works, the Third Circuit

considers (1) "the opinions of experts … in determining whether there is sufficient similarity

between the works so as to conclude that the alleged infringer 'copied' the work," and (2) the

position of a "lay observer" in determining whether the observer, "unless he set out to detect the

disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."

*Dam Things,* 290 F.3d at 562 (citations omitted); *see also Ass'n. of Am. Med. Colls. v. Mikaelian*,

No. 83 Civ. 02745, 1986 WL 332, at *10 (E.D. Pa. Mar. 18, 1986).  ███████████████████

████████████████████████████████████ (Ex. 27, ██████████████

██████████████████████████ (Ex. 21)), ██████████████████

████████████████████████████████████████████████

██████████████████████████████████████████ .  *See Ass'n of*

*Am. Medical Colls.*, 1986 WL 332, at *10 (examining the two works at issue and finding that an

ordinary observer viewing them would detect a substantial similarity between the two); *TD Bank,* 2015 WL 4523570, at *17 ("A verbatim reproduction of another work, of course, even in the realm of nonfiction, is actionable as copyright infringement.").

Moreover, ROSS, by its own admission,  which is more than sufficient for this Court to find as a matter of law that ROSS's copying was not *de minimis*. *See, e.g.*, *In Harper & Row, Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 564–66 (1985) (rejecting a claim that copying 300 to 400 words of a copyrighted book was insubstantial and constituted fair use of the material).[9]  Indeed, this Court can find more than *de minimis* copying even if it follows ROSS's expert's methodology.  As Plaintiffs previously explained, ROSS's software expert, Ms. Frederiksen-Cross, admitted that

. *Supra* 19.  As both numbers independently satisfies more than *de minimis* copying, direct copyright infringement is satisfied as a matter of law.[10]

---

[9] To the extent ROSS argues summary judgment regarding liability should be precluded because the protectibility of the remaining Headnotes is disputed, its argument fall short of the mark given more than *de minimis* copying is undisputed.  Instead, ROSS's argument goes to damages, on which Plaintiffs are not moving.

[10] Though the copying of the Undisputed Headnotes alone warrants summary judgment because the copying was more than *de minimis*, the record also supports that the entirety of the Bulk Memos ROSS used to train its AI comprises copying of protectible elements.  As discussed above, *supra* 19–20, all Westlaw Content is protectible as the West Headnotes, WKNS, and selection and arrangement of West Headnotes to case passages satisfies the low bar for creativity set forth by *Feist*.

## II.   ROSS'S DEFENSES TO COPYRIGHT INFRINGEMENT FAIL AS A MATTER OF LAW

### A.   Innocent Infringement

ROSS asserted what it characterizes as an "innocent infringer" defense, but that fails as a matter of law for three reasons. *First*, even if ROSS could satisfy the requirements for innocent infringement, ROSS cannot rely on innocent infringement as a defense to liability—rather, it only limits the statutory damages available. *Playboy Enters., Inc. v. Starware Publ'g. Corp.*, 900 F. Supp. 433, 436 (S.D. Fla. 1995) ("The copyright owner need *not* prove any knowledge or intent on the part of the Defendant to establish liability for copyright infringement.") (emphasis in original); *Maverick Recording Co. v. Harper*, 598 F.3d 193, 198 (5th Cir. 2010) ("The innocent infringer defense gives the district court discretion to reduce the minimum statutory damages from $750 to $200 per infringed work if it finds that the infringer 'was not aware and had no reason to believe that his or her acts constituted an infringement of copyright.'") (citing 17 U.S.C. § 504(c)(2)).

*Second*, ROSS cannot rely on innocent infringement because it does not apply here. 17 U.S.C. § 401(d) precludes an innocent infringer defense where the copyrighted work bears a copyright notice. Specifically, Section 401(d) states:

> If a notice of copyright in the form and position specified by this section appears on the published copy or copies to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages, except as provided in the last sentence of section 504(c)(2).

17 U.S.C. § 401(d).[11] Because Westlaw bears a copyright notice, which was even circulated in internal ROSS emails, the innocent infringer defense is unavailable to ROSS as a matter of law.

---

[11] The last sentence of 17 U.S.C. § 504(c)(2) carves out an exception for libraries and public broadcasting entities, which does not apply here. 17 U.S.C. § 504(c)(2).



Exs. 66 (ROSS-009714800) (███████████████████████████████████████

████████████); 49 (ROSS-003389932) (same); 65 (ROSS-009714799) (██████████████

████████████████████).

     ***Third***, any infringement by ROSS cannot be innocent as a matter of law, in light of its own actions.  Section 504(c)(2) of the Copyright Act provides that a court may reduce an award of statutory damages to a sum of not less than $200 "[i]n a case where the infringer sustains the burden of proving, and the court finds, that such infringer was ***not aware [of] and had no reason to believe*** that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2).  The alleged infringer bears the burden to "prove[] not only that his infringing conduct was made in a ***good faith belief*** of the innocence of his conduct, but also that he was ***reasonable*** in holding that good faith belief."  4 Nimmer on Copyright § 14.04[B][2][a]; *see also Peer Int'l Corp. v. Pausa Recs.*, 909 F.2d 1332, 1336 (9th Cir. 1990), *cert. denied, Vill. Of Los Ranchos de Albuquerque v. Barnhart,* 498 U.S. 1109 (1991).  Here, insufficient evidence exists for ROSS to establish it had a good-faith belief to meet either—much less both—of these requirements as a matter of law.

     Specifically, ROSS's repeated failed attempts to access Westlaw preclude its ability to satisfy its burden of showing that: (1) it had a good-faith belief in the innocence of its conduct, and (2) any good-faith belief was reasonable. █████████████████████████████████

█████████████████████████████████████.  *E.g.*, Exs. 7 (Leiter Dep. Tr.) at 41:1–22 (████████████████████████████); 75  (ROSS-023018710) (████████████

████████████████████████████████████████████████████████

███████████████).  ████████████████████    ███████████████

████████████████████████████████████████████████████████



Ex. 68 (ROSS-009727515) (

).   As another example, at deposition, Mr. van der Heijden admitted

Ex. 16 (Van der Heijden Dep. Tr.) at 157:11–22.

Ex. 67 (ROSS-009727514).

Moreover, additional evidence confirms ROSS's persistence to get around Plaintiffs' regulations precludes any finding that they acted in good faith—precisely the opposite.  Exs. 100 (ROSS-003390772) (

); 74 (ROSS-010373855) at 855 (

).

To the extent ROSS asserts summary judgment is precluded because its own understanding of whether it could access Westlaw is an issue of fact, caselaw clearly states that one's "own understanding of copyright law—or lack thereof—is irrelevant in the context of § 402(d).  The plain language of the statute shows that the infringer's knowledge or intent does not affect its application." *Maverick Recording Co. v. Harper*, 598 F.3d 193, 199 (5th Cir. 2010) (finding no innocent infringement despite appellant's argument she was "too young and naive to understand that the copyrights on published music applied to downloaded music").

Nor could ROSS show its executives were ignorant of the law, as  ██████████

██████████████████████. *See, e.g.*, Ex. 2 (Arruda Tr.) at 30:23–31:11 (██████

███████████████████████████████████████████);

Ex. 16 (van der Heijden Tr.) at 15:23–16:3 (██████████████████████

██████████████████████); *Reed v. Ezelle Inv. Props. Inc.*, 353 F. Supp.

3d 1025, 1037 (D. Or. 2018) (no innocent infringers where "defendants could have learned about

the copyright through basic online research.").  In light of ROSS's persistent efforts to access

Westlaw, the refusals it was given at every turn, and ROSS's bad-faith acts to skirt Plaintiffs'

regulations, the factual record belies any good-faith belief of innocence in accessing Westlaw,

much less a ***reasonable*** good-faith belief, and summary judgment is warranted.

## B.     Copyright Misuse

ROSS's attempt to assert a copyright misuse defense should also be denied as a matter of

law.  ROSS asserts that Plaintiffs use their copyrights in the Westlaw Content in "an

anticompetitive, wrongful, unfair and exclusionary manner" by: (1) preventing the separation of

the Key Numbers and Headnotes from government edits when viewed online and in print, and

(2) engaging in unfair licensing practices.  D.I. 225, ¶¶141–42; *see also* Ex. 30 (ROSS's Resp. to

Plaintiffs' Fourth Set of Interrogatories) at No. 17 (███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████).

The Copyright Act does not list copyright misuse as a defense; rather it is a judicially

created doctrine.  To be clear, "legitimate invocation of a copyright does not constitute misuse,

even if prompted by an ulterior motive—such as to harass or silence a critic." 4 Nimmer on Copyright § 13.09 n.9.1. The Third Circuit has recognized the copyright misuse doctrine, but has not set forth an element-by-element test. *Video Pipeline,* 342 F.3d at 203-06 (abrogated on other grounds by *TD Bank*, 928 F.3d at 259). Instead, the Third Circuit noted that misuse most commonly applies in the context of "anti-competitive behavior." *Id.* at 206.

For example, a copyright holder may seek "to use its copyright to take and retain control over an ***entirely different market*** than that covered by copyright." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 221 (3d Cir. 2002) (agreeing "with the District Court that the record is simply devoid of any evidence of misuse by [plaintiff]"); *cf. In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1106 (N.D. Cal. 2002) (granting summary judgment of copyright misuse where plaintiff formed a joint venture to distribute digital music, then refused to enter into individual licenses with competitors, effectively rendering plaintiff the sole source for digital licensing). In *Video Pipeline*, the Third Circuit also acknowledged that misuse "might operate beyond its traditional anti-competition context" when it analyzed whether a copyright license's provision that plaintiff could not be disparaged could be misuse. *Video Pipeline*, 342 F.3d at 206 (finding copyright misuse ultimately inapplicable where license provision stated licensees could not derogate Disney, but the licenses did not "interfere with the licensee's opportunity to express such criticism on other web sites or elsewhere").

ROSS asserts Plaintiffs are attempting to extend copyrights in Westlaw to limit access ***to the judicial opinions themselves***. But courts have found that there is no copyright misuse where the public retains access to the underlying, public, uncopyrighted material. For example, in *Nielsen Co. (US), LLC v. Truck Ads, LLC*, the court found there was no copyright misuse, because the defendant was "free to review publicly-available data on its own and then create a map that is

substantially similar to Plaintiff's, or perhaps to review factual material presented in Plaintiff's Maps and reproduce the data using another selection and arrangement," No. 08 Civ. 06446, 2011 WL 221838, at *10 (N.D. Ill. Jan. 24, 2011). Similarly in *Open Source Yoga Unity v. Choudhury*, the court granted plaintiff's summary judgment of no copyright misuse, as a copyrighted sequence of yoga moves did not monopolize yoga poses outside the scope of the copyright, including because it did not restrict competitor yoga instructors' abilities to create different yoga sequences. No. 03 Civ. 03182, 2005 WL 756558, at *9 (N.D. Cal. Apr. 1, 2005).

Here, the undisputed record—by ROSS's own admissions—confirms that Plaintiffs have not sought to improperly expand the scope of their copyright in editorial content. ███████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████. Ex. 2 (Arruda Dep. Tr.) at 274:19–23 ████████████████████████████████████ ████████████████████████); *see also* Ex. 16 (van der Heijden Tr.) at 239:17–240:2 (███████████████████████████████████████████████████████████████████████ ████████████████████████). Thus, ROSS cannot establish as a matter of law that Plaintiffs sought to expand the scope of their copyrights in Westlaw to exert control over the underlying judicial opinions and statutes. In other words, Plaintiffs' copyrights do not prevent ROSS—or anyone else—from accessing the underlying public material, or adding their own content. In fact, the judicial opinions are expressly disclaimed from Plaintiffs' registrations. *See, e.g.*, Ex. 82 (showing Plaintiffs' registration expressly disclaims the judicial opinions themselves); *see also* Ex. 66 (███████████████████████████████████████████████████████████ ████████████████████████). At best, ROSS's misuse defense amounts to nothing

more than Plaintiffs enforcing their valid copyright and must fail.[12]  *E.g.*, *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005) (finding defendant's allegations insufficient as a matter of law to state a copyright misuse claim, as "the fact of enforcing a valid copyright, without more, simply cannot constitute copyright misuse.").

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant summary judgment in their favor on their direct copyright infringement claim, against ROSS's merger, scènes à faire, innocent infringement, and copyright misuse defenses.

---

[12] To the extent ROSS's copyright misuse allegations overlap with allegations in support of its antitrust counterclaims, this Court already granted summary judgment in Plaintiffs' favor on ROSS' antitrust counterclaims.  D.I. 670.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH and*
*West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
Jeremy King
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Yungmoon Chang
Allyn Belusko
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(213) 680-8400

October 1, 2024

34

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 1, 2024, upon the following in the manner indicated:

David E. Moore, Esquire                              *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
Andrew L. Brown, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                              *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
Matthew J. McBurney, Esquire
Keith J. Harrison, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Jacob Canter, Esquire                                *VIA ELECTRONIC MAIL*
Warrington Parker, Esquire
Anna Z. Saber, Esquire
Beatrice B. Nguyen, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

Emily T. Kuwahara, Esquire                          *VIA ELECTRONIC MAIL*
Jordan Ludwig, Esquire
CROWELL & MORING LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
*Attorneys for Defendant and Counterclaimant*

Ryan Henry Seewald, Esquire                         *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
*Attorneys for Defendant and Counterclaimant*


                                  */s/ Michael J. Flynn*
                                  _____
                                  Michael J. Flynn (#5333)